UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: VIOXX | * | MDL NO. 1657 |
| | * | |
| PRODUCTS LIABILITY | * | |
| LITIGATION | * | SECTION  L |
| | * | |
| THIS DOCUMENT RELATES | * | JUDGE FALLON |
| TO ALL CASES | * | MAG. JUDGE KNOWLES |
| | * | |
| FILER: Robert E. Arceneaux/Margaret Woodward | * | February 24, 2011 |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT OR ALTERNATIVELY, MOTION TO STRIKE

MAY IT PLEASE THE COURT:

This memorandum is respectfully submitted by Robert E. Arceneaux and Margaret E. Woodward, co-Lead Counsel for Objectors, in support of their motion for partial summary judgment rejecting the point system, grid, and resulting allocation recommended by the Fee Allocation Committee ("FAC"), or alternatively for the FAC's recommendation to be stricken.

This motion does not advocate for a specific amount to be awarded to any particular claimant based upon an assessment of his, her, or its relative contribution to the common benefit. Rather, it demonstrates that the FAC has proposed an allocation which, **as a matter of law** offers this Court no guidance whatsoever in the fee allocation process, accordingly cannot be "tweaked" into a useful suggestion, and moreover is prejudicial and counterproductive to any legally acceptable allocation. This does not mean that all the work that went into the fee allocation must be discarded, nor that the process must be started over at the beginning.  Movants' complaint is directed only at the last phase of the FAC's work, which created an unworkable and unjust formula for allocation.  The materials

assembled will permit a relatively swift recalculation of the allocations due to all claimants, and prior orders of this Court properly direct how the allocation should be made.   Movants seek the entry of a summary judgment that the revised allocation shall be made under the lodestar analysis dictated by the jurisprudence of this circuit and pursuant to Pre-Trial Order 6(D).   At a minimum, each claimant should receive compensation at a lodestar rate for all of the hours which they reported to and which were audited by Wegmann Dazet, which were submitted by the PSC as hours that were of common benefit in its application for common benefit fees, and which hours were accepted by this Court as "common benefit hours" in its Order of October 19, 2010.   Additional compensation above that lodestar amount will be due to claimants based upon specific showings made by them that are not appropriate for resolution by summary judgment.

The Court has repeatedly stated that the FAC's recommendation is only that- a recommendation- and that the ultimate allocation decision will be made by the Court- and the Court alone- based upon the law, the many submissions by the claimants, and the Court's own far-reaching knowledge of the case, and only after it receives the independent recommendations of the Special Master.   These clear statements, reiterated in the hearing conducted on February 17, 2011, would suggest that a motion to strike the FAC's recommendation is premature or altogether unwarranted.

Yet, there is an inherent conflict between the procedure currently underway and the purportedly advisory nature of the FAC's recommendation.   Undersigned counsel have been instructed to confine their attention to the recommended allocations of the seventeen Objectors.   The FAC has refused to cooperate with discovery challenging the allocation as a whole.   The Special Master has expressed uncertainty whether his charge extends beyond a review of the 17 objections.   The FAC, which claims to represent all of the "Acceptors," emphasizes that the great majority of

claimants to the fund approve of its recommendations, which is why it claims to represent that group whose proposed allocations are under attack by undersigned counsel.

The fallacy in the FAC's reasoning derives from the fact that this Court must allocate fees from a limited fund. Any significant adjustment of the allocations to the 17 Objectors will require an adjustment of the allocations to the "Acceptors." This could be the outcome if there were only *one* objector with a significant enough claim. Entirely apart from the demands imposed on this case by the limited fund, the recommendation of the FAC is pitched upon an illogical and legally unstable methodology which will not offer this Court any assistance in making a proper allocation.

Unless the Special Master discards the FAC's recommendation and expands the purview of his analysis to encompass an appropriate allocation to *all* claimants, his study will not offer this Court meaningful assistance, either. The restriction of the current process to a review of the Objectors' complaints would necessarily accord improper presumptive weight to the FAC's grossly inequitable and fundamentally flawed recommendations.

## FACTS

On November 9, 2007 Merck and the court-appointed Plaintiffs' Negotiating Committee entered into a settlement of the captioned action. The Master Settlement Agreement provided as follows with respect to the allocation of attorneys' fees for common benefit work:

> 9.2.4. The Honorable Eldon E. Fallon will be asked to appoint a committee of eight plaintiffs' counsel which shall include all members of the NPC and two additional plaintiffs' attorneys to be responsible for recommending to the Honorable Eldon E. Fallon the allocation of awards of attorneys' fees from the Settlement Fee and Cost Account. In making its recommendation the "Allocation Committee" is to review the contemporaneous time records, or properly reconstructed time records and expense reports of all plaintiffs' counsel that request compensation for common benefit work, as audited by the CPA firm of Wegman Dazett. The Allocation Committee shall take into consideration the common benefit work of counsel in the MDL, and the work of counsel in the state litigations in Texas, California and New Jersey. The Allocation

Committee shall be guided by these objective measures of common benefit counsel's contributions, in addition to their Subjective understanding of the relative contributions of counsel towards generating the Settlement Fund in accordance with established fee jurisprudence and subject to the approval of the Honorable Eldon E. Fallon in consultation with the Honorable Victoria G. Chaney, the Honorable Carol E. Higbee, and the Honorable Randy Wilson.

On November 20, 2007, the Court issued Pretrial Order No. 32, appointing members of the Fee Allocation Committee ("FAC").  On September 15, 2008, the Court issued Pretrial Order 6(D) establishing the following fee allocation guidelines:

Substantively, the committee should look to general fee jurisprudence to identify the factors that should be applied in making appropriate allocations. The *Johnson* factors are applicable to this litigation and should be considered in addition to other matters considered by the courts to evaluate fee allocations.  (Citation omitted).

At some unknown time, the FAC adopted the Point System Guide attached hereto as Exhibit A. On December 1, 2010, the FAC promulgated a fee allocation grid applying the Point System Guide, a copy of which  attached hereto as Exhibit B.  On January 13, 2011, the FAC promulgated another fee allocation grid, attached hereto as Exhibit C, containing its recommended allocation of fees to certain claimants.  The grids demonstrate the allocation of points from the Point System Guide to specific claimants, and further demonstrate whether, and if so, what "*Johnson* factor" multiplier was applied to a claimant's points.  It is important to note that the multiplier was not applied, as the jurisprudence contemplates, to a lodestar calculation, which apparently was never computed, but instead to the FAC's gestalt point system.

Comparison of the allocations produced by the Point System Guide and the Grids on one hand, and on the other to the lodestar hours audited and approved by this Court in its October 19, 2010 Order (at the request of the PSC), reveals how far apart the two methodologies actually are. Attached as Exhibit D is a chart reflecting the hourly rate yielded by the recommended allocations

-4-

when compared to the hours audited by Wegmann Dazet. That chart reveals an unprecedented range of hourly rates for *audited* hours from $0 to $2205/hr., with a FAC member's paralegal compensated at the $2000/hr. rate while an experienced trial attorney might be awarded $20/hr- or nothing at all. The chart also demonstrates that the FAC has claimed 73% of the total declared common benefit fee fund, or closer to 80% of the actual fund remaining for distribution.[1]  As Kline and Specter note in their objection:

> Through its point system, the FAC recommended no allocation to 23 applicants. To the remaining 82 firms, the FAC recommended allocations ranging from zero to $40,900,000. Using the average billing rate of $443.29, the suggested allocations ranged from reducing a firm's estimated lodestar to .04 of its original number to multiplying the estimated lodestar by 4.97. Thus, the largest estimated multiplier (4.97) was over 124 times larger than the smallest estimated multiplier (.04).

(Record Document ____, Kline Objection, at 8).

Moreover, there were changes between Grid 1 and Grid 2 which apparently have nothing to do with point reevaluation, but more to do with which claimants were unwilling to accept the FAC's recommendation. Attached as Exhibit E is a chart reflecting the reduction in recommended allocations for certain claimants between Allocation Grid B and Allocation Grid C, reflecting the FAC's unexplained elimination of points for certain claimants. For example, the firm of Escobedo Tippitt, awarded 40 points-and $1,200,000.00- for trial work on Grid B, received 0 points and accordingly 0 fees on Grid C. Their trial work, of course, could not be erased, but according to the FAC, their compensation could.

---

[1] According to this Court's October 19, 2010 Order, over $315,200,000 was awarded, with the excess of the fund distributed to its original contributors.. However, it appears that the FAC, without authorization from or notice to this Court, had already disbursed at least some $19,000,000 of the fund. That action will be the subject of another motion.

Because we can find NO legal authority which supports the unprecedented and unorthodox method through which the FAC conducted its purportedly "objective" allocation, movants ask that this Court discard the FAC's recommendation altogether. As this Court has repeatedly stressed, the allocation decision is one that it will make, based upon input from numerous sources, including the recommendation of Master Juneau, the filings of the parties, and its knowledge of the proceedings before it. The purpose of this motion is simply to ask this Court that it exclude from its consideration the FAC's recommended allocation on the ground that is legally unsupportable, and therefore contributes nothing whatsoever to a lawful allocation of the funds at issue. Accordingly, it should be stricken as matter of law.

## DISCUSSION

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the nonmoving party to produce evidence of the existence of a genuine issue for trial. *Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531 (5th Cir. 2002); *Celotex Corp. v. Catrett*, 477 U.S. 317, 321-22, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

"When an action presents more than one claim for relief. . ., the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." FED. R. CIV. P. 54(b). *Kelly v. Lee's Old Fashioned Hamburgers, Inc.*, 908 F.2d 1218, 1222 (5th Cir. 1990) (en banc). The question raised by the instant motion is whether the FAC's recommended allocation presents a "claim for relief."

In claiming for itself almost 80% of the common benefit attorneys' fee fund, the FAC plainly seeks relief– and does so at the expense of Objectors, whose work it has undervalued in order to support the structure by which its own claims have been inflated.  Moreover, because the methodology employed by the FAC is fundamentally flawed, the entire allocation must fall.  And indeed, because the allocation draws from a limited fund, so that any adjustment of one claimant's fees must necessarily affect another claimant's allocation, a radical shift in allocations cannot be accomplished save by complete reformulation.  As demonstrated below, reformulation of the allocation is required as a matter of law.[2]  If, however, the Court finds summary judgment inapposite to the instant allocation dilemna, undersigned counsel ask that the FAC's allocation be stricken.

A       **THE FAC'S METHODOLOGY, AND RESULTING FORMULA, IS UNLAWFUL AND HAS PRODUCED AN INSUPPORTABLE RESULT.**

The FAC proposes a point system for the allocation of fees which departs dramatically from established jurisprudence and the directives of this Court for an objectively-based assessment of counsel's respective contributions to the common benefit.  A substantial body of case law has developed to guide the difficult allocation of attorneys' fees across a large pool of lawyers making different contributions to the common cause.  This Court has repeatedly adverted to the established wisdom, and has repeatedly advised the FAC to draw on its principles in creating a formula for allocation.

---

[2]This is not like the case of *In re Vitamins Antitrust Litigation*, 398 F.Supp.2d 209 (D.D.C., 2005), where the Court found summary judgment inappropriate to adjudicate the issue of the precise allocation any claimant should receive. Here, movers are simply asking for partial summary judgment that the FAC's allocation is invalid as matter of law, and will not be considered by the Court in its ultimate allocation of fees.

-7-

While every common fund case presents unique characteristics which inevitably warrant adjustment of the broad-based criteria and the injection of subjective elements of valuation, the further the departure from the case-tested norm, the greater the risk of unfairness and reversible error. In this case, the FAC (represented by 9 of the 109 firms in the pool) proposes to give itself $230,000,000, or 73% of the total available fund of $312,000,000. While a disproportionate allocation of fees has been approved in cases where a fee allocation committee contributed a disproportionate percentage of the effort, this, respectfully, is not the case here.

As is noted by Kline and Specter in its objection:

[T]the FAC obviously disregarded the fee jurisprudence in forming its recommendations. Initially, the recommendations themselves contain inequities that defy explanation. The FAC recommended that firms receive amounts ranging from .04 of their lodestar to 4.97 times their lodestar. Thus, the largest multiplier (4.97) was over 124 times larger than the smallest multiplier (.04). No known fee allocation jurisprudence supports such a disparity. No known case even considers allocations involving disparities so great as here. These results are also inconsistent with the Fifth Circuit's approach of (1) using the lodestar as a starting point, and (2) modifying the lodestar up or down by Johnson factors. *See In re High Sulfur*, 517 F.3d at 224-27. Neither can they be squared with FPI, which held that individual fee allocations must be based on the "relative" efforts of the various contributing counsel. *See FPI*, 105 F.3d at 474. Nor can they be squared with Vitamins Antitrust, which held that "[a]llocation means proportion," and that a "universally fair standard" must be used when making fee allocations. *See Vitamins Antitrust*, 398 F. Supp.2d at 234.

(Record Document ___, Kline Objection, at 43-44).

The FAC's allocation disregardis the *time* each attorney contributed to the common benefit, notwithstanding that time is the essential controlling variable mandated by the analysis set forth by the Fifth Circuit Court of Appeal. Instead, the FAC employed a more subjective analysis of "contributions" according to a novel, unapproved, and clearly unsustainable point grid, which yields stratospheric hourly rates for some and nominal rates for a great many others. Under the FAC's proposal, some claimants would be paid as little as $0 per hour, and others as

much as $2205 per hour.  As a point of comparison, Phil Garrett, the accountant hired to audit the hours submitted, arrived at a blended hourly rate of $443.23.

While the case law supports a multiplier of as much as five to one among attorneys whose contributions to the common benefit differ in value, the spread proposed by the FAC is beyond any defensible pale.  As shown below, the lopsided allocation recommended by the FAC departs radically from an approved analysis and apportions the fees unjustly.  The case law has paved a clear avenue to a complete reallocation of attorneys' fees in this action.

> 1. **LODESTAR IS THE STARTING POINT OF ANY PROPER ANALYSIS; ADJUSTED LOADSTAR PRODUCES THE FINAL ALLOCATION.**
>
> > a. **OVERWHELMING PRECEDENT REQUIRED THE FAC TO BASE ITS ALLOCATION ON A LODESTAR CALCULATION, WITH APPROPRIATE *JOHNSON* ADJUSTMENTS.**

The process of dividing or allocating common benefit fees among competing counsel, even if a limited fund is to be disbursed, is no different from the process of making any other kind of attorney fee award. In all cases, the district court has discretion subject to a few notable constraints:

> We review the district court's award of attorneys' fees for abuse of discretion. "To constitute an abuse of discretion, the district court's decision must be either premised on an application of the law that is erroneous, or on an assessment of the evidence that is clearly erroneous."  The record must "clearly indicate[ ] that the district court has utilized the *Johnson* framework as the basis of its analysis, has not proceeded in a summary fashion, and has arrived at an amount that can be said to be just compensation."

*In re High Sulfur Content Gasoline Products Liability Litigation*, NO. 09-30313 ,384 Fed.Appx. 299 (5th Cir., 2010) (*"High Sulphur II"*),  citing *In re High Sulfur Content Gasoline Prods. Liab. Litig.* (*"High Sulfur I"*), 517 F.3d 220, 227 (5th Cir.2008), and *Grigson v. Creative Artists Agency L.L.C.*, 210 F.3d 524, 528 (5th Cir.2000). *See also Cobb v. Miller*, 818 F.2d 1227, 1232 (5th Cir.1987)

("[W]hile our cases indicate that the district court must utilize the *Johnson* factors in its analysis on the issue of attorney's fees, we are not required to reverse summarily a district court finding which omits discussion of one of the *Johnson* factors so long as the record clearly indicates that the district court has utilized the *Johnson* framework as the basis of its analysis, has not proceeded in a summary fashion, and has arrived at an amount that can be said to be just compensation.")

In all cases within the Fifth Circuit, including allocation of common fund fees, the starting point of any proper analysis must be a "lodestar" calculation:

> This Circuit utilizes the "lodestar method" to calculate attorneys' fees. Initially, the district court must determine the reasonable number of hours expended on the litigation and the reasonable hourly rate for the participating lawyer. *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir.), *cert. denied*, 516 U.S. 862, 116 S.Ct. 173, 133 L.Ed.2d 113 (1995). The lodestar is then computed by multiplying the number of hours reasonably expended by the reasonable hourly rate. *Id.*

*Forbush v. J.C. Penney Co.*, 98 F.3d 817 (5th Cir. 1996).

While the lodestar calculation is somewhat flexible, it is the fundamental basis of any award of attorneys fees: "The district court may. . . adjust the lodestar upward or downward depending on the respective weights of the twelve [*Johnson*] factors," but failure to base an award (or allocation) of fees upon a lodestar calculation in the first instance is reversible error.  *See Riley v. City of Jackson, Miss.*, 99 F.3d 757, 760 (5th Cir.1996) ("A review of the district court's decision awarding the Appellants a token amount of attorneys' fees discloses that the court bypassed considering each of the factors enunciated in *Johnson*. Nor did the district court make any attempt to determine a reasonable number of hours or a reasonable hourly fee for each of the Appellants' attorneys involved in this case. Consequently, we find the district court erred in avoiding this analysis.").

The *Johnson* factors referred to in *High Sulfur II* and *Forbus*h are those expressed in *Johnson v. Georgia Highway Express, Inc*., 488 F.2d 714, 717-19 (5th Cir.1974), abrogated on other grounds

by *Blanchard v. Bergeron*, 489 U.S. 87, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989):

> (1) the time and labor involved; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the political "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases).

*High Sulfur II*, at *1 n.3.

Since the original formulation, the *Johnson* factors have undergone some adjustment. "The Supreme Court has limited greatly the use of the second, third, eighth, and ninth factors" because these factors are already presumably reflected in the lodestar, either in the hours reported or the rate charged. *Walker v. U.S. Dept. of Housing and Urban Development*, 99 F.3d 761, 771 n. 12 (5th Cir. 1996), citing *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 565, 106 S.Ct. 3088, 3098, 92 L.Ed.2d 439 (1986), quoting *Shipes v. Trinity Indus.*, 987 F.2d 311, 320 (5th Cir.) ( *Shipes II*), *cert. denied*, 510 U.S. 991, 114 S.Ct. 548, 126 L.Ed.2d 450 (1993) (" '[N]ovelty [and] complexity of the issues,' 'the special skill and experience of counsel,' the 'quality of representation,' and the 'results obtained' from the litigation are presumably fully reflected in the lodestar amount, and thus cannot serve as independent bases for increasing the basic fee award."). The lodestar cannot be adjusted due to a consideration that is already reflected in the lodestar itself, because any other result would result in double-dipping.

> There exists a strong presumption of the reasonableness of the lodestar amount. After calculating the lodestar, the court may decrease or enhance the amount based on the relative weights of the twelve factors set forth in Johnson. "[O]f the Johnson factors, the court should give special heed to the time and labor involved, the customary fee, the amount involved and the result obtained, and the experience, reputation and ability of counsel." The lodestar may not be adjusted due to a Johnson factor, however, if the creation of the lodestar amount already took that factor into account; to do so would

-11-

be impermissible double counting.

*Saizan v. Delta Concrete Products Co., Inc.*, 448 F.3d 795, 800 (5th Cir.2006), citing *Heidtman v. County of El Paso*, 171 F.3d 1038,  1043 (5th Cir.1999), which contains a good summary of the applicable rules:

> This Court uses the "lodestar" method to calculate attorney's fees. *Fender v. Zapata Partnership, Ltd.*, 12 F.3d 480, 487 (5th Cir.1994). A lodestar is calculated by multiplying the number of hours reasonably expended by an appropriate hourly rate in the community for such work. *Shipes v. Trinity Industries*, 987 F.2d 311, 319-20 (5th Cir.1993). After making this calculation, the district court may decrease or enhance the lodestar based on the relative weights of the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir.1974). The lodestar may not be adjusted due to a *Johnson* factor, however, if the creation of the lodestar award already took that factor into account. *Shipes*, 987 F.2d at 319-20. Such reconsideration is impermissible double-counting. *Id.*

171 F.3d at 1043.[3]

b.  **THE MSA AND THIS COURT'S ORDERS CORRECTLY ORDERED THE FAC TO USE THE LODESTAR/*JOHNSON* FACTORS.**

Before the FAC entered the picture, this Court was on track to apply the Fifth Circuit's

_____

[3]One must distinguish between the methodology for determining the amount of common benefit fees that can be assessed against the plaintiffs with an award of fees to the lawyers. The courts, including the Fifth Circuit, are moving to a "percentage of the fund" approach, with a lodestar cross check for the former, which is what the Court  did in its  October 19th order. In this regard, the PLC noted in its Memorandum, at p. 35, criticism of the lodestar methodology for the initial assessment. *In re Educational Testing Service, Etc.,* 447 F.Supp.2d 612, 628 (E.D.La. 2006)("The method has been called difficult to apply, time-consuming to administer, inconsistent in result, and capable of manipulation.") But, we have seen no cases that say in the allocation of  fees among attorneys entitled to share in a fee award, there is any approved methodology other than lodestar tempered by the *Johnson* Factors.  In this case, Phil Garrett has already completed the audit of hours and work submitted by Claimants and counsel seeking common benefit fees.  Thus, the lodestar method can now be employed with relative ease.

-12-

mandatory lodestar/*Johnson* factor method of allocating attorneys fees.  In the Master Settlement

Agreement ("MSA"), the parties provided the following:

> Funds within the Settlement Fee and Cost Account shall be administered by the Honorable Eldon E. Fallon and all awards therefrom will be subject to approval, upon due consideration by him in consultation with the Honorable Victoria G. Chaney, the Honorable Carol E. Higbee, and the Honorable Randy Wilson, and in accordance with established Fifth Circuit precedent, *e.g., Blum v. Stenson*, 465 U.S. 886, 900 (1984); *Copper Liquor, Inc. v. Adolph Coors Co.*, 624 F.2d 575, 583 n. 15 (5th Cir.1980); ***Johnson v. Ga. Highway Express, Inc***., 488 F.2d 714, 717-19 (5th Cir.1974); *Strong v. BellSouth Telecomms., Inc.*, 137 F.3d 844, 851-52 & n. 5 (5th Cir.1998); ***Forbush v. J.C. Penney Co.***, 98 F.3d 817, 823 (5th Cir.1996); *Turner v. Murphy Oil USA, Inc.*, 472 F.Supp.2d 830 (E.D.La. 2007).

Paragraph 9.2.3 9 (emphasis added).  The agreement further provided that

> In making its recommendation **the "Allocation Committee" is to review the contemporaneous time records, or properly reconstructed time records and expense reports of all plaintiffs' counsel that request compensation for common benefit work, as audited by the CPA firm of Wegman Dazett**. The Allocation Committee shall take into consideration the common benefit work of counsel in the MDL, and the work of counsel in the state litigations in Texas, California and New Jersey. **The Allocation Committee shall be guided by these objective measures of common benefit counsel's contributions**, in addition to their subjective understanding of the relative contributions of counsel towards generating the Settlement Fund **in accordance with established fee jurisprudence** and subject to the approval of the Honorable Eldon E. Fallon in consultation with the Honorable Victoria G. Chaney, the Honorable Carol E. Higbee, and the Honorable Randy Wilson.

Paragraph 9.2.4 (emphasis added).

In its Pre-Trial Order 6D, this Court acknowledged these terms by stating the following:

> **The Settlement Agreement contemplates that the Allocation Committee will review the contemporaneous time records or properly reconstructed time records and expense reports of all plaintiffs' counsel that submitted or request compensation for common benefit work and to take into consideration the time and common benefit work of counsel in the MDL and of counsel in the state consolidated litigations in Texas, California, New Jersey, as well as other applicable state courts**. The Settlement Agreement also provides that the Allocation Committee shall evaluate common benefit counsel's contributions, using objective measures and the committee's subjective understanding of the relevant contributions

-13-

of counsel toward generating the Settlement Fund in accordance with established fee jurisprudence, and make a Recommendation to the Court for consideration in consultation with Judges Chaney, Higbee, and Wilson. As the Allocation Committee implements PTO No. 32 and Section 9.2.4 of the Settlement Agreement and makes a Recommendation to the Court regarding allocation of attorneys' fees, the committee's considerations should be governed and guided by this comprehensive statement of general principles. The over-arching guideline that the Allocation Committee is to consider is the contributions of each common benefit attorney to the outcome of the litigation. In addition, **under existing fee jurisprudence, certain procedural as well as substantive factors should be considered in making an allocation recommendation.** The committee shall take into account Pretrial Order No. 6's directives regarding the procedural aspects of the presentations and mechanisms whereby petitioning attorneys may submit written and oral presentations for the committee's consideration. **Substantively, the committee should look to general fee jurisprudence to identify the factors that should be applied in making appropriate allocations. The *Johnson* factors are applicable to this litigation and should be considered in addition to other matters considered by the courts to evaluate fee allocations**.

(emphasis added).

This approach was consistent with that taken by this Court in previous cases. In addressing the related question of the appropriate method to be used to decide the total amount of common benefit fees to be allocated, it previously held that, even though lodestar/*Johnson* is not required, and "percentage of the fund" is acceptable as a sanctioned method, "the application of the *Johnson* factors is helpful to determine whether the benchmark percentage is reasonable given the circumstances of the case (and also necessary according to Fifth Circuit precedent). . .." *Turner v. Murphy Oil USA, Inc.*, ("*Murphy Oil I*") 472 F.Supp.2d 830, 867 (E.D.La. Jan 30, 2007). Subsequently, when allocating the common fund, this Court followed the lodestar/*Johnson* approach, with some minor modifications. Despite those modifications, and its skepticism about a lack of contemporaneously recorded time records, it is clear from the decision that time expended, and the appropriate hourly rate, adjusted by various *Johnson* factors, was at the heart of the court's decision with regard to every claimant's fee award:

-14-

> The work that an attorney devotes to a class action is generally the principal factor by far in determining the attorneys' portion of the common benefit fee. Indeed, in the present case, this is the factor that plays the dominant role in determining the proper allocation of the fee. First, a few general comments are appropriate to frame the discussion. The attorney labor portion of the Court's consideration consists of two sub-parts: time and type of work.

*Turner v. Murphy Oil USA, Inc.*, ("*Murphy Oil II*"), 582 F.Supp.2d 797, 801 n.8 (E.D.La. Oct 06, 2008).

### 2. THE FAC'S METHODOLOGY AND RESULTING FORMULA ARE FAR REMOVED FROM ANY TYPE OF LODESTAR/*JOHNSON* ANALYSIS.

In its memorandum in support of an award of common benefit fees, the PLC assured this Court that:

> [i]n due course, the Allocation Committee's recommendation will be presented that will address the relative input and value of services provided by fellow common benefit attorneys as dictated by existing jurisprudence. *See, e.g., High Sulpher Content Gasoline Products Liability Litigation,* 517 F. 2d 220 (5th Cir. 2008); *Turner v. Murphy Oil USA, Inc.,* 2008 WL 4661806 (E.D.La. Oct. 6, 2008).

Memorandum in Support of Motion for Award of Plaintiffs' Common Benefit Counsel Fees and Reimbursement of Expenses, Record Doc.17642, p.5, n. 4 (hereinafter "Memorandum"). The FAC's flawed methodology, however, reneged on its promise to "address the relative input and value of services provided by fellow common benefit attorneys as dictated by existing jurisprudence." The resulting recommendation is worthless.

### a. A LODESTAR ANALYSIS WAS NOT CONDUCTED OR USED AT ALL.

The FAC seemingly disregarded *Johnson* and the lodestar method, and devised a novel approach to fee allocation. It crafted a point system in which hours expended for the common benefit, and therefore the lodestar methodology, apparently play no role whatsoever. Instead, the

FAC claims to have considered all counsel's relative contributions to the common benefit according to their "worth," regardless of the time it took to create any particular contribution. The point system gives a nod to this Court's requirement of objectivity by listing a long series of ostensibly concrete contributions, in discovery, trial, and settlement negotiation, for example, further broken down into ostensibly logical subcategories, weighted by level of involvement in these activities. As outlined below, however, the weight placed on these activities was anything but objective.

A cross-check against the lodestar method reveals the fundamental inequity of the FAC's methodology. Exhibit D reintroduces the hours audited and reported by Phil Garrett, then compares them to the FAC's recommended allocations. What emerges therefrom is a picture of the gross inequity of the FAC's method: Objector Weinberg, a highly-capable and experienced litigator, who devoted years of intensive, paradigm-shifting effort to the common benefit, would be compensated at $21/hr., less than he earned thirty years ago as a truck driver to help defray the costs of his law school education, while other lawyers are  to be paid more than 100 times that rate; Objector the Murray Firm, was recommended a blended rate of $73.50/hr. for work performed at the behest of and under the direct supervision of lead counsel for the PLC (Murray Objection, Rec. Doc. 61351, pp.1-3); Objector Dianne Nast, nationally recognized as one of the premier class action proceduralists, among other skills, who did extensive briefing work **at the specific request of the PLC**, is to be compensated at $35.50/hr. As noted in the Nast objection:

> Dianne Nast and several senior level RodaNast, P.C. attorneys performed the work specifically assigned by the PSC. The $45,000 proposed fee award for the work performed by RodaNast, P.C. averages out to a rate of about $40 per hour. The proposed fee award is not fair, reasonable or adequate compensation for the quality and quantity of work timely and carefully undertaken by this firm. Not only is it unreasonable for the work performed, it is well below the average approved by this Court as well as the national billing rates established for first year associates.

-16-

(Record Document 60391, Nast Objection, at 7-8).[4]  Even if the FAC disputes these factual assertions of the *value* of the time devoted to the common benefit, it cannot dispute that its recommended allocation falls far below the average rate of compensation for counsel of their experience.

This sort of disparity, replayed in line after line of the FAC's recommendation, might be understandable if it resulted from the disallowance of large chunks of time.  For instance, if the FAC had determined that 95% of Weinberg's time did not in fact serve the common benefit, then it could fairly compensate him for only the remaining 5% of his time, with an allocation that would have at least approached Garrett's blended hourly rate of $443.23.

But the FAC long ago accepted *all* of Objectors' hours as legitimate based upon Mr. Garrett's audit.  Indeed it used those hours in its overall calculation of common benefit time, and then used that time to justify an award of $315,200,000 in common benefit attorneys fees.

This Court, too, expressly approved the hours in making its attorneys fee award.  *See* Order and Reasons, Oct. 19, 2010, at 33 .  Because the hours were decidedly dedicated to the common benefit and because there is no possible justification for paying lawyers $21/hr., what a lodestar cross-check starkly reveals is that the FAC has effectively cancelled out a great many lawyers' time entirely, and severely discounted almost all others outside its membership.  Worse, it has given to others (mostly members of the FAC) the time it took away from the undervalued attorneys, creating ratios of more than 100 to 1 between its most favored recipients and some of the objectors.[5]

---

[4]Roda Nast's treatment is even worse when one looks at the Grid. The firm was given a whopping 3 points for its law and briefing work, and then the FAC reduced its points by a .30 multiplier, giving it very generous 0.9 of a point. This, for work that was specifically assigned to that firm by the PSC precisely because of the firm's legal acumen in briefing weighty legal issues.

[5]In its October 19 Order and Reasons,  this Court stated at note 22  that its approval and acceptance
(continued...)

As Objector the Murray firm declared in its objection, the immediate consequence of the FAC's proposed recommendation would be compensation not only below market rate but also *below cost*, for it was required to pay the salaries and overhead of employees the FAC devalued; thus, it **would lose money in the work it performed for the common benefit**.  (Murray Objection, Rec. Doc. 61351, p. 5).  The ultimate, and even more significant consequence of that injustice, the Murray Firm notes,  is that "No attorneys would be willing to undertake common benefit work, which is necessarily performed on contingency, if even in the event that the case is successful, they will be compensated at less than the prevailing rate for such services when not undertaken with the inherent risks of contingency – just so that others can get more than the prevailing rate."  *Id.,* at p. 4.

The Anapol firm offers another troubling example of the FAC's inequitable recommendation.  At the request of the FAC, that firm submitted more than 4,600 hours, presumably so that those hours could be used to justify a higher "common benefit" pie for the FAC to slice, but when it came time to actually doling out the pieces, Anapol only got compensated for a fraction of the common benefit hours that were submitted, audited, and approved:

> Here, the Fee Allocation Committee found that the hours Anapol submitted from December, 2001 – May, 2008 and in the Hatch matter were clearly for common benefit work and appropriately compensable under the Johnson factors.   The Committee has now recommended an award of $3,400,000.00.
>
> This award is deficient in that failed to account for the supplemental hours Anapol submitted for its work on bellwether trials.  The work Anapol performed on nine (9)

---

[5](...continued)
of Garrett and the FAC's audited lodestars is "sufficient for the purposes of the rough lodestar cross-check. . ., but does not preclude the Allocation Committee or the Court from disallowing any particular submissions of common benefit time when allocating the common benefit fee award." However, Claimants do not read that statement as authorizing the FAC to lop off huge chucks of claimants' hours, reassign them, and claim that *they* should be compensated for work *others* performed

bellwether cases inured to the benefit of all plaintiffs and their firms.  The Fee Allocation Committee recognized as much when it instructed Anapol during its December 1, 2008 presentation that these hours should be submitted.  Following the December, 2008 presentation, Anapol submitted an additional 4,617.5 hours which, according to the Johnson factors, are appropriate.

(Record Document 61320, Anapol Objection, at 10).

In the FAC's recommendation to this Court, dated January 20, 2011, it stated that it did not base its recommendation on hours or lodestar, but professed that it used lodestar as a "cross check."

Therefore, the Committee has given due consideration to the time submitted by each common benefit fee applicant, but **the number of hours submitted was not the dominant factor**. Instead, **hours were used to cross-check** the amount of the recommended allocation.

Recommendation of the Fee Allocation Committee (Rec. Doc. 60391, at 2; emphasis added).  The justification given was that hours were not contemporaneously recorded, and therefore not considered accurate or reliable. Of course, this would be true in many case where plaintiffs' lawyers are awarded fees, whether under a statutorily authorized fee shift, or a "common fund" allocation. Yet, the Fifth Circuit has mandated that the lodestar be the starting point of any such award or allocation.  The lack of contemporaneous time records does not dispense with the need to resort to the lodestar as the starting point of any fee analysis:

The failure to provide contemporaneous time records does not require the district court to deny an award of fees entirely if there was an adequate reconstruction of time spent on the litigation. Yohay v. City of Alexandria Employees Credit Union, Inc., 827 F.2d 967, 974 (4th Cir.1987) ( citing Kennecott Corporation v. Environmental Protection Agency, 804 F.2d 763, 767 (D.C.Cir.1986) (per curiam)). If the Court is satisfied that such non-contemporaneous records were adequately reconstructed, no reduction is warranted. Id. Here, the Court finds that counsel have methodically attempted to reconstruct their expenditures of time in this extended litigation, with the result being a detailed, comprehensive, and reasonable reconstruction of the tasks performed in the case and the hours expended on those delineated functions. If anything, the reconstructed hours claimed are overly conservative.\

-19-

*U.S., ex rel. Abbott-Burdick v. University Medical Associates*, (NO. 2:96-1676-12) 2002 WL 34236885, *17 (D. C. S.C. May 23, 2002).

> Defendants correctly state that the Court should normally rely on contemporaneously-kept time records, but **may also base a fee award on "reconstructed" time records, if such records detail "how the time in fact expended was conservatively reconstructed by reference to pleading files, the time records of other attorneys, and other contemporaneous documents**." *Grinnell II, supra*, 560 F.2d at 1102-03. In short, **if the Court finds the reconstruction to have been carefully done, it may conclude that the hours claimed are fair and reasonable, and proceed to calculate the "lodestar."**

*Bradford v. Blum*, 507 F.Supp. 526, 532 (D.C. N.Y. 1981) (emphasis added).

Like the *Bradford* court, this Court carefully scrutinized any reconstructed time records, and concluded they are fair and reasonable; thus, they can properly be used to make a lodestar calculation. The hours reported in this case were audited by Phil Garrett, who took his job very seriously (the audit cost more than $700,000 according to the affidavit he submitted when he presented it to the Court). The Court accepted those hours as accurate in its Order and Reasons of October 19, 2010, at 33.[6]

At this late juncture, perceived inflation or deflation of a given attorney's hours cannot justify a wholesale rejection of the lodestar methodology.  The United States Fifth Circuit has held that, under the lodestar method required in this Circuit, when determining appropriate common benefit awards the Court is bound to center its inquiry on the number of hours reasonably expended by the attorneys and the reasonable rates charged for such services. *Strong v. Bellsouth Telecommunications, Inc.*, 137 F.3d 844 at 850. Only *after* the Court has determined a reasonable fee based on the hours

---

[6] If the PSC disbelieved any of the hours claimed, it should have excluded them from the collective lodestar it offered to this Court as justification for its request of more than $370,000,000 in aggregate common benefit fees.

billed and the customary rates for such services does the Court then consider whether to adjust the lodestar upwards or downwards based on the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir.1974) . *Id.*  Importantly, however,  "[t]he lodestar may be adjusted according to a *Johnson* factor only if that factor is not already taken into account by the lodestar." *Transamerican Natural Gas Corp. v. Zapata Partnership, Ltd. ( In re Fender)*, 12 F.3d 480, 487 (5th Cir.1994).  Nothing in this analysis suggests that where a court has decided to award an enhancement under the *Johnson* factors, it may do so by applying a discount to the award to other attorneys whose hours and fees are deemed reasonable under the lodestar analysis.

If hours were in fact used as a "cross-check," as the FAC purports to have done, then it must have seen the error of its allocation, but failed to correct it. "The purpose of a lodestar cross-check of the results of a percentage fee award is to avoid windfall fees, i.e., to 'ensure that the percentage approach does not lead to a fee that represents an extraordinary lodestar multiple.'" *In re Enron Corp. Securities, Derivative & ERISA Litigation*, 586 F.Supp.2d 732, 751-752 (D.C. Tex. 2008), citing *In re Cendant Corp. Sec. Litig.*, 264 F.3d 201, 285 (3d Cir.2001). Thus, "[t]he lodestar cross-check serves the purpose of alerting the trial judge . . . when the multiplier is too great...." *Id.*, at 752. Given the incredible multiplier range embedded in the FAC's recommended allocation, the cross-check should have caused it to go back to the drawing board, rather than proceed to recommend its insupportable division to this Court.

> **b.**    **THE POINT SYSTEM DOES NOT EVEN REMOTELY REFLECT A CORRECT APPLICATION OF THE *JOHNSON* FACTORS.**

The FAC claims that it gave a  nod to various *Johnson* factors, *see* Recommendation, at 1, and it even includes a column on the grid for application of a *Johnson* multiplier to the *points* it assigned to each claimant, rather than to the lodestar contemplated by the caselaw. However, when one digs

deeper into the FAC's contention, it is obvious that the *Johnson* factors were NEVER considered or applied, and that the multiplier used to adjust the points awarded was nothing more than a second subjective  readjustment of the already subjectively-awarded  points based upon considerations and factors that are completely undisclosed.

The Point System Guide, which was the foundation of the FAC's analysis, does not contain a single category that reflects any one of the *Johnson* factors. The Guide lists the following categories as the only basis for compensation under the FAC's formula:

– Key Leadership -125 maximum points

– Trials -150 maximum points

– Settlement Negotiations -100 maximum points

– Law and Briefing -100 maximum points

– Settlement Implementation and Post-Settlement Issues -100 maximum points

– Discovery, Science and Experts - 50 maximum points

– Committee Leadership and Participation - 50 maximum points

– Funding -75 maximum points (PSC assessment and case contributions)

– Case Management - 25 maximum points

These categories serve as a substitute for the 12 *Johnson* Factors, which are (1) the time and labor involved; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the

experience, reputation, and ability of the attorneys; (10) the political "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

It should be noted that *Johnson* factor number one is "time and labor involved," which is of course the basis of any lodestar- and which is completely missing from the FAC's formula.  If the FAC's delineations represent its conception of the *Johnson* categories, then double dipping occurred when it awarded points under its categories, and then additionally applied a *Johnso*n-like multiplier to adjust the points awarded in these categories.

The reality is that  when the FAC tossed out the hours, it also tossed out many of the *Johnson* factors which are supposed to weigh into the lodestar that attaches to those hours, such as, "the customary hourly rate," and "the experience, reputation, and ability of the attorneys" logging the hours.  Undersigned counsel's lodestar cross-check did not even attempt to reintroduce the other factors, however, because the FAC made it impossible.[7]  The attached time chart, therefore, mashes together the times of top-level lawyers with those of paralegals and law clerks.

What this means is that the ratio of disparity may be *significantly higher from top to bottom than 100 to 1*.  In the Cohen Placitella firm, for example, the great majority of hours, 3682.4, were entered by high-level attorneys performing demanding tasks.  In Eric Weinberg's case, 6,150 of his

---

[7] Ordered by the Court to produce Garrett's time records, the FAC delivered the hours in a devilishly unusable format: on a chart that listed each worker *alphabetically*- not even sorted by firm.  The material was also saved into pdf, so that it could not be rearranged into a sensible list.  Undersigned counsel requested the information in workable form but have not yet received it.  (The production provided by the FAC at the hearing conducted on February 17, 2011 contains the same unusable Garrett materials, and undersigned counsel have filed a motion to compel production in usable format.)  Therefore, to construct their time chart accompanying this motion, they had to reenter the original data.  They were unwilling to reenter every piece of data previously entered by Garrett, a task for which Garrett charged $700,000, simply because the FAC has not yet deigned to produce it.

10,361.75 hours were entered by him personally. The contributions of these lawyers cannot fairly be compared to the administrative efforts of staff.

Yet the FAC's allocation assigns points for categories of *work* without any consideration of categories of *worker*.   When undersigned counsel performed their lodestar cross-check, they could differentiate discovery hours, for example; but according to the FAC's calculus, a paralegal sorting discovery documents was no less valuable than a seasoned trial attorney taking an expert deposition. Indeed, in the case of Placitella and Weinberg, most of their work was *already* valued at considerably less than the efforts of most paralegals.  For example, the Herman firm logged in nearly 30,000 hours, much of it likely performed by administrative staff[8], who earned an average of $1102/hr. for their efforts, an exponentially higher rate than the work of these highly experienced and qualified lawyers.  Assuming, as seems likely, that the FAC's top-earning firms did not *pay* their paralegals $1100 or $2200 an hour, the attorneys' rates were probably considerably higher than the blended rates reported.  For example, if half of the Gainsberg firm's work was performed by paralegals and law clerks earning $50/hr., that would amount to only $30,500 of the recommended allocation of $2,690,000; the remaining 610 hours of lawyer time would then be compensated not at the already whopping blended rate of $2200, but instead at a rate of $4,360/hr.,  or 208 times the rate allocated for Eric Weinberg's work.

Another good example would be the firm of Motley Rice:

In its appointment of the FAC, this Honorable Court obligated the Committee to engage equity in providing economic recognition for "a common benefit attorney who expended considerable time, resources, and took significant economic risks to produce the fee .... " *See* October 19,2010 Order, J. Fallon, at 22. That Motley Rice's

---

[8] *See,* n. 6, *supra.* The  alphabetical listings provided by the FAC, not arranged by firm, do not lend themselves to an identification of staff.

substantial and valuable work was awarded at only $58 per hour can only be interpreted as punitive. Based on the award recommended and hours submitted, some firms were awarded $2,000.00 per hour for *every hour* submitted. Surely, these firms' staff member's contributions cannot be *thirty-five times* more valuable than that of a senior partner at this firm who conducted highly strategic corporate depositions, or an associate at this firm that wrote legal briefs that generated positive results to advanced this litigation.

Rec. Doc. 61458, p. 4.

We will not reprise the entire PLC *Johnson* analysis here. but note its  final observation about

the last *Johnson* criterion:

12. Awards in Similar Cases.

All but two of the *Johnson* fee adjudication factors are abstract in that they do not purport to have any mathematical correlation to the computation of an appropriate percentage award. The final *Johnson* factor provides guidance as to how to concretize abstract consideration of the other factors into a definitive percentage award. That factor prescribes consideration of "awards in similar cases." *Johnson.* 448 F.2d at 719. Such consideration is a dominant feature of contemporary percentage-of-the-fund fee adjudication. *See, e.g., Enron, supra; Murphy Oil, supra.*

Memorandum, p. 65.

Consideration of "awards in similar cases" is supposed to be a dominant feature of

contemporary fee allocation.  We challenge the FAC to show the Court an approved allocation based

on multipliers of 100 to 1 or, in the case of Escobedo Tippett, infinity to 1.

The failure of the FAC's categories to represent any *Johnson* factors is best proved by the

result achieved.  No proper application of the *Johnson* criteria could support the multipliers of 100

and greater applied by the FAC.  Multipliers of 2 and 3 appear commonplace in the case law, and

have been approved up to 5.  The FAC was well aware of the acceptable range because it charted a

number of cases with a multipliers ranging from 2 to 5.  *See* Memorandum,  at  34-35, There has

never been a case that used the *Johnson* factors to produce a range of multipliers that is more than

100:1.[9] In fact, in its request for common benefit fees, the PLC contemplated a tight range of multipliers:

> This [claimed 8%] percentage represents a multiple of 1.21 to 1.79 times the composite lodestars of the several common benefit counsel participating in this petition (using the highest billing rate standard and actual billing rate standards, respectively).

Memorandum, at 51. How this narrow range moved to the a range of .04 for Johnson and Perkins to 4.9 for Gainsburg, Benjamin (this excludes the 24 firms that received a multiplier of "0" because they received no recommended award at all) remains something of a mystery, but the discussion below attempts to shed some light on the FAC's astonishing departure from the established norm.

### 3. UNDER THE PRETENSE OF OBJECTIVITY, THE FAC'S UTTERLY SUBJECTIVE FORMULA WEIGHS CATEGORIES OF PARTICIPATION IN MEASURES CONTRARY TO *JOHNSON*, AND ALSO OUT OF BALANCE WITH PREVAILING LAW.

Not every hour of attorney time, it goes without saying, is the same. Courts have struggled mightily with the difficult task of determining how to compensate time in complex litigation involving hundreds of lawyers and staff performing different tasks in different places. The *Johnson* factors developed over years of fee-allocating experience, and have maintained their credibility for the simple reason that they reflect a certain time-tested wisdom about how lawyers work and how their efforts should be comparatively valued.

---

[9]*Murphy Oil II, supra,* approved a high to low ratio of 5 to 1 for an excellent result achieved by a small core of laboring oarsmen. This case, as will be discussed below, was not *Turner*, and nothing warrants the yawning gulf the FAC has established between its members and Claimants.

The FAC determined to chart a different course.  In disregarding the collective wisdom of the case law, it fails to achieve the type of fair, objective division of fees that is the goal of every accepted methodology.  Like any new invention, the FAC's untested model shows some significant design flaws.  These will surely multiply as discovery progresses.  For brevity's sake, only a few significant  inequities are illustrated here.

To start, the FAC's point system is seemingly keyed to the efforts of the FAC's members.  The point  rating system awarded the highest points to leadership roles, settlement participation, and trials.  On its face, this appears to be an objective allocation.  In fact, all of the categories represented in the point system appear reasonably objective.

Subjectiveness, however, creeps in when one considers the *number* of points awarded to the various categories.  For instance, a top "leader" might earn a maximum of 150 points for his role, while  the highest level of contribution in "discovery, science, and experts," *combined,* could only earn a maximum of 50 points.  Lumping together into a single low-rated category all work on discovery, all on science, and all on experts- which many would place at the heart of a pharmaceutical liability action-  is a highly subjective judgment about the worth of those tasks.  At the same time, it is a highly questionable judgment because the attorneys who developed and refined the evidence establishing the basis for Merck's liability could only hope to receive 1/3 the amount awarded to the administrative "leaders."   There would need to be much more, in our view, to justify relegating the work that exposed Merck's liability in this case to the lowest-valued tier of effort.

Compounding the disparity is the fact that "leaders" participated in multiple categories of effort, racking up top points for leadership, more top points for trial participation, more top points for settlement, and perhaps a smattering of points in every other category as well.  Those who "only"

-27-

prepared the evidence that went to trial and drove the settlement, however, could earn only 50 points

for their efforts, no matter how much "discovery/science and experts" they did.   This resulted, in

some cases, of "triple-dipping":

> By way of example, FAC members can, and based on recommended awards clearly
> did, award themselves three times over for exact same functions. Awards under the
> points allocation scheme include the following:
>
> > Settlement Negotiations - 100 points
> > Post-Settlement with Brown Greer - 100 points
> > Key Leadership - 125 points
> > Total: 325 points
>
> Each of these duties is the same task wearing a different hat. By this methodology,
> only those who played a role in the settlement - the same individuals who created this
> points system - are those who can be awarded richly under this allocation scheme.
> Certainly this Court did not intend that triple-dipping for the same common benefit
> service be the manner by which this fee is awarded.

(Rec. Doc. 61458 Motley Rice Objection,, pp. 2-3).[10]

Of further concern are the numerical allocations themselves. When undersigned counsel began

examining the FAC's recommendation in a (failed)  effort to decode it, one of the first things to leap

from the page was the odd roundness of the numbers in the recommended allocations.   One would

---

[10]While not an issue appropriately resolved in this motion for summary judgment, movers must point
out that the disparity would not be so dramatic if, as often occurs in MDL cases, the "leaders" were
also the attorneys developing the discovery, science, and experts.   But in this case, the contributions
to those categories were made by entirely different ranks of lawyers.   Moreover, as a corollary to
this circumstance, "leadership" roles in many instances consisted of low-stress and low-risk
administrative work, while  the most demanding and riskiest work was performed by those in the
trenches. Objectors who contributed most heavily to the lowly-ranked (in the FAC's analysis)
discovery/science/expert category  worked diligently, doggedly, and unceasingly, over a period of
years, to develop large segments of the case that drove the settlement.  Claimants' witnesses became
MDL witnesses.  Their exhibits became MDL exhibits.  In some instances, it appears that MDL
counsel have sought credit for the work done by Objectors.  But there was no "leadership" category
for  "discovery, science and experts."  Therefore the sweat  that generated their highly-regarded
work product now beads the brows of the FAC's members, along with the fees those Objectors'
efforts earned.

expect an objective point system, composed of many categories and dispersed across a large number of people, to produce uneven numbers. And that is true of the allocations for some, especially those at the bottom. But the members of the FAC and those in other key positions are slated to receive tidy sums like $6,000,000, $9,000,00, or $20,000,000. Exactly. One might expect some rounding to avoid messy math in the small change. A certain amount of rounding could be simply and unobjectionably achieved by the push of a button. But to the ninth and tenth decimal? Mathematically, how did it work out that way? The tidiness of the amounts awarded to those at the top strongly suggests some sort of predetermination, a fact likely to be proved during upcoming discovery. Perhaps this is how the FAC used its *Johnson* multiplier: as a reverse-engineered means of making the numbers come out "right." The gross size of the amounts recommended to those at the top, and the paltry sums for those at the bottom, are explained, in part, by errors such as the ones discussed below.

### a. COMMITTEE MEMBERSHIP AND "LEADERSHIP" ARE GROSSLY OVERVALUED.

Perhaps the leading case on common benefit fee division, and certainly the most cited, is the First Circuit's decision in *In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litigation*, 56 F.3d 295 (1st Cir. 1995), a mass-disaster case arising from a hotel fire when it awarded 70% of the fees to members of the plaintiffs' steering committee (PSC) and 30% to the individually retained plaintiffs' attorneys (IRPAs). The court of appeals was uneasy with the way in which the lower court "cut the fee pie, and the size and shape of the resultant wedges":

> First, we are troubled by the implications of a scheme in which the trial judge selects a chosen few from many lawyers who volunteer, assigns legal tasks to those few (thereby dictating, albeit indirectly, the scope of the work remaining to be done by the many), and then, in awarding fees, heavily penalizes the very lawyers to whom he has relegated the "lesser" duties. Courts must recognize that while such an arrangement

may be a necessary concomitant to skillful case management of mass tort suits, it nevertheless significantly interferes with an attorney's expectations regarding the fees that his or her client has agreed to pay. Conversely, lead counsel are typically volunteers, as in this case, and, as such, they have no right to harbor any expectation beyond a fair day's pay for a fair day's work if a fee fund develops … . We believe a trial court should take these differing expectations into account in allocating fees. Here, the judge's rescript does not suggest that he factored these expectations into the decisional calculus.

Courts must also be sensitive to a second facet of economic reality: the power to appoint lead counsel gives the trial judge an unusual degree of control over the livelihood of the lawyers who practice before the court. Though such appointments are often an administrative necessity in complex litigation, and disproportionate fees are at times an unavoidable consequence of the classic common fund "free rider" problem, … the judge must attempt to avoid any perception of favoritism.

56 F.3d 295 at 309–12 (footnotes omitted).[11]

No one disputes that committee service is deserving of compensation – committees are necessary to the efficient function of the MDL and coordinated litigation model, and attorneys cannot be expected to serve unless they are paid. Moreover, for those on committees who use their seats as an opportunity to do substantial and meaningful work, significant compensation is no doubt due. But, the formula used by the FAC herein rewards committee membership, in some cases more than once,

---

[11]The perfidy of committee assignments, and how they can be and perhaps were, used as a method of rewarding favored persons with the possibility of higher fees, or punishing those in disfavor, is illustrated by an example: Claimant Harry Roth *was slated for a seat on the AG litigation negotiating committee,* which presumably would have earned him some points for both committee membership and settlement work (and more importantly assured that his client's unique claims would be given voice); but he was summarily evicted from the proposed committee post because his firm hired the undersigned, who filed the first request for information that was granted by this Court pursuant to *In re High Sulfur I.* In fact, he was told in writing that his "objection" to the allocation had caused "problems" that cost him his seat, even though no allocation had yet been made that could be the subject of an objection. All that had been done was to request information. As an aside, after the preliminary allocation was released, and Mr. Roth's firm did object, his allocation decreased from $533,920.74 to $500,000 in the final allocation that was submitted to the Court. As of this point a committee has not yet been assigned given the pending stay.

and subjectively decides how much of a reward is due based upon its own personal evaluation of the merit of their own contributions. Out of a maximum of 775 points which might be awarded to a claimant, 450 were reserved to those who served a leadership role or on committees. And, a large number of points could be awarded merely for service, completely unrelated to whether any work was done or the quality of that work  Given the massive weight assigned to committee work and leadership, it is hardly surprising that the FAC's aggregate recommended allocation to its members is so high.  Allocation Grid C reveals that the firms of Beasley Allen and Seeger Weiss *each received 675 of the total of 775 points available.*  On top of this, each received a so-called "Johnson" multiplier of 1.25, *resulting in a final allocation of 848 points each, more than the total points available to all other claimants.*

While human nature may lead a member of the FAC to value the work he painfully experienced above the unfelt struggles of his comrades-at-arms, the use of objective criteria is meant to moderate this inbred bias.  The FAC's return to a largely subjective analysis explains how it, like the *Dupont Hotel Fire* lawyers, gave itself much too big a slice of the pie.  Those appointed by this Court to serve in committee and leadership roles can be adequately compensated without pillaging the fund – the fund is large enough for all to have their fair share.

> **b.    DISCOVERY, PROCUREMENT OF EXPERTS, AND THE DEVELOPMENT OF THE SCIENTIFIC CASE, WAS GROSSLY UNDERVALUED**.

The MDL system is designed to coordinate the work of readying cases for trial, not merely to combine cases for settlement.  Indeed, one of the potential abuses of class actions is that a certain breed of lawyer may attempt to move directly from the assertion of a claim to a demand for settlement, using  the threat of multiple claims to advance that unsavory objective. As *High Sulfur*

observed, "the most commonly feared abuse [in class action litigation] is the possibility that Rule 23 encourages strike suits promoted by attorneys who are simply seeking fat fees." 517 F.3d at 228 (citation omitted).   The MDL  procedures are designed to aid legitimate trial preparation, not add another arrow to the quiver of a potential strike suit.

> Title 28 U.S.C. § 1407(a) provides in relevant part:
>
> When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district **for coordinated or consolidated pretrial proceedings**. Such transfers shall be made by the judicial panel on multidistrict litigation authorized by this section upon its determination that transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions. **Each action so transferred shall be remanded by the panel at or before the conclusion of such pretrial proceedings to the district from which it was transferred** unless it shall have been previously terminated ....

(Emphasis added). While it is true that the Supreme Court has stated that the phrase "coordinated or consolidated pretrial proceedings" is to be interpreted broadly, it is not so broad as to allow a transferee court to ignore the rules of venue or remand, and simply assign cases to itself for trial; trial and ultimate case resolution is not necessarily the purpose the MDL procedure and is not inherent in it.  *See Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 118 S.Ct. 956, 140 L.Ed.2d 62 (1998) (federal district court conducting pretrial proceedings pursuant to multidistrict litigation statute has no authority to invoke change-of-venue statute to assign transferred case to itself for trial).

It is impossible to reconcile the FAC's Point Guide with this view of the proper role of MDLs to facilitate pre-trial work, such as discovery and case preparation. While it is now commonplace that cases pending in an MDL get resolved through a global settlement of some sort, to ignore the fact that the *purpose* of MDL work is to prepare cases for trial, not to try bellwether cases for settlement

purposes, or to engage in settlement discussions, is to pervert their purpose. To reward those latter types of work more than the former suggests that the real purpose of coordination of cases and the MDL procedure is not to prepare cases to be returned to transferor courts for trial, but instead simply to amass cases in one place in order to promote settlement. *Lexecon* tells us differently, when it states that the proper "venue [for expanding the power or focus of an MDL court] remains the floor of Congress." 523 U.S. at 40, , 118 S.Ct. 964.

Moreover, despite the fact that most MDLs do in fact end in global settlements, they would not do so without the discovery and case preparation necessary for plaintiffs' counsel to build their cases. And, in drug pharmaceutical litigation, the development of the scientific case, the procurement of and preparation of expert witnesses, and the development of evidence of the company's marketing fraud is not only important, but is key. For example, in *Murphy Oil II*, this Court awarded the second highest fee allocation to the attorney who "was in charge of the discovery efforts and guided the deposition process," work which was "a key to attacking the Murphy defenses and pushing the defendant to a settlement." *Turner v. Murphy Oil USA, Inc*., 582 F.Supp.2d 797, 813 (E.D.La. Oct 06, 2008).

The PSC echoed these sentiments when it made these statements in its application for common benefit fees:

> As Merck strenuously defended the safety profile of Vioxx based upon published medical literature in highly regarded medical journals, the common benefit attorneys were confronted with a strong adversary that was well entrenched with powerful defenses. Undaunted by their adversary, **common benefit counsel carefully dissected the clinical trial data and developed the complex scientific arguments necessary to controvert Merck's medical arguments. These arguments were highly technical and difficult,** yet due to the perseverance of common benefit counsel corrections to the public's knowledge of the flawed science created by Merck was accomplished. *See Correction,* N Engl J Med 2006; 355(2): 221.

Memorandum, at 55 (emphasis added).

Given the purpose of the MDL procedure, the relevance and importance of discovery and development of the technical case in complex drug products liability litigation, and the PSC's own statements that its greatest work was in rebutting Merck's attempt to play a scientific shell game and hide the grave risk of Vioxx, it is shocking that the maximum points that any lawyer could get for such critical work is 50, or 6% of the total points available.  The lawyers who engaged in such labors – frequently tedious and always demanding – should not be penalized because they did not insinuate themselves into leadership positions that provided a platform for touting their self-worth. These lawyers did their work largely outside the purview of the court and public, plowing through mountains of records and data sets, studying volumes of scientific and medical texts, and locating and working with experts to build the best case to put before the jury. Their unsung work is and was essential to driving Merck to the settlement table despite its public avowal to try each and every case. One would hope that such efforts would be well rewarded when they bore fruit, as they did here. Certainly, this Court contemplated that they would be, when it repeatedly advised that any attorneys who wanted to work in the case and who coordinated their efforts with the PLC would be compensated for doing so.  But the FAC appears to have taken a different view.

To be sure, many of the hours of the up-front lawyers in this litigation contributed significantly to the scientific case.  But this Court should not be deceived into thinking that the huge sums they are slated to receive are solely for that work, or that they performed that work in a vacuum. Rather, the recommended rewards are a consequence of the FAC's creation and weighting of categories in which they received massive points.

The lion's share of common benefit work was done in the area of "discovery, science and experts." But to compensate fairly the crucial work that undermined Merck's defenses would have cut into the huge bonuses the MDL elite propose for themselves. The shifting of invaluable work into the column of case leaders is unconscionable, and will not withstand even cursory review.

c. **TRIAL PARTICIPATION AND SUCCESS WAS VALUED ONLY WHEN IT SUITED THE FAC.**

The FAC gives much credit for its own trial work, but completely ignores or substantially devalues the work of others. For example, Allocation Grid C awards Beasley Allen the maximum of 150 points for participation in a losing trial, and awards Seeger Weiss 120 points for trying a losing case alone and a winning case with the help of Lanier. By contrast, the FAC awards Objectors Kathryn Snapka and Escobedo Tippitt *no points for trying one of the few winning cases.*

Interestingly, Allocation Grid B, prepared a month before the final recommendation contained in Grid C, initially awarded each of Snapka and Escobedo 40 points for their trial work. In the final recommendation, however, those points and the more than $1,000,000 in fees represented by those points simply disappeared. Exhibit E shows that several Objectors' recommended fees dropped substantially between the drafting of Grid B and final Grid C. Whatever might be said of the rationale for such a shift, it cannot be explained by reference to established fee allocation procedures.[12]

---

[12] Escobedo Tippitt infers that it was being punished by the FAC for objecting to the preliminary allocation: "The only thing that changed during that time frame was that E.T.C. objected to the preliminary award." (Record Document 61363, p. 3). Such a factual inference, although quite possibly
(continued...)

### d. SETTLEMENT WORK WAS OVERVALUED

The FAC gives great weight (up to 100 points) to the time spent settling the case, an endeavor that was virtually risk-free.   As Judge John Grady has observed, "[m]any of the cases resulting in the largest settlements are undertaken on the assumption that there will be a settlement rather than a trial."  In these instances, he concludes, "actual risk of nonpayment for the attorney's services is minimal or entirely absent."  John F. Grady, "Reasonable Fees: A suggested Value-Based Analysis for Judges," 84 F.R.D. 131, 136 (1999).  That is not to say that settlement work was not difficult or time consuming, only that it did not merit compensation at a rate exceeding the more difficult and riskier work of discovery and expert witness development that brought Merck to the table.

Settlement administration, which is less onerous than settlement itself, could earn the taskmasters *another* 100 points.  As this Court observed in *Turner*, such efforts are not of equal value to settlement work: "the hours spent by counsel after the approval of the settlement agreement did not aid in the creation of the settlement fund, and, as a result, this Court concludes it cannot treat the hours spent by those administering the settlement program on a par with the hours spent by counsel who helped create the settlement and the Common Benefit Fund." *Turner*, 582 F. Supp.2d at 811.

Under the FAC's approach, however, such work was worth fully twice the entire "Discovery/Science/Expert" category, which it valued at a maximum of 50 points.  And someone who participated in settlement negotiations *and* implementation could earn 200 points, four times the

---

[12](...continued)
true, is not appropriate to this  motion for summary judgment.  However, as a matter of law, the FAC's many downward adjustments of its recommendations for Objectors' fees are legally indefensible.

foundational work on "Discovery/Science/and Experts." This sort of subjective aggrandizement of relatively undemanding work helps explain the inequities of the proposed allocation.

> **e.    CLIENT REPRESENTATION WAS IGNORED; FINANCIAL RISK WAS MISEVALUATED**.

In the *Dupont Hotel Fire Litigaion*, one of the factors that troubled the First Circuit greatly was the apparently slim credit accorded to bringing in and managing the clients, whose claims after all are what actually drive a settlement. No amount of good committee work will cause a settlement unless some lawyers take on the significant financial risks of signing up clients and agreeing to try their cases if no global settlement occurs. Of course, committee members do not incur this risk. Their financial contribution is limited to the amount they pay to a cost fund to seed the litigation.  As the First Circuit stated:

> Last—but far from least—we are persuaded, on whole-record review, that it is simply unreasonable to award 70% of the aggregate fees to the attorneys who managed the litigation, leaving only 30% of the Fund to those who brought in the clients and worked hand-in-hand with them throughout the pendency of this long safari of a case. Because mass tort cases are a breed apart, it is difficult to envision situations in which, if fees are divided between lead counsel and individually retained counsel under a POF formula, the latter will not be entitled to at least half the fees.

56 F.3d 295 at 309–12 (footnotes omitted).

The only consideration for "risk" in the FAC's formula is the one that was exclusively borne by it – the financial risk of funding the PSC's work. The other part of the risk equation, the much greater, both in terms of potential exposure and in terms of uncertainty – was borne by the lawyers who actually signed up clients and agreed to try their cases if no settlement were reached. Yet, no points were awarded for the value of this financial commitment to the global settlement, a contribution which seems likely to have been as substantial as all the litigation effort given the losses; it is entirely possible that it was not Merck' fear of losing cases alone that drove the settlement, as

much as its actuaries' desires to clear a large potential liability from its books arising from the

number of cases pending.[13]

In Pre-Trial Order 6(D), this Court clearly contemplated that the FAC would consider risk

factors in its allocation.  The Court directed all counsel to address in their affidavits, *inter alia*:

–       The consistency, quantum, duration, and intensity of each firm's commitment to the litigation;

–       Whether counsel was already involved in the Vioxx litigation prior to the withdrawal of Vioxx from the market;

–       Whether counsel was involved in the litigation prior to the JPMDL, and the time and expense incurred during such time that was for the common benefit; and

–       Any other relevant factors.

Order, 9/15/08, pp. 4-5.  The FAC's recommendations appear to have ignored the  risks this Court

properly identified as relevant.

**4.      THE FAC HAS USED THE COMMON BENEFIT FUND AND FORMULA TO SETTLE CLAIMS BY VARIOUS ATTORNEYS WITHOUT COURT AUTHORITY.**

---

[13]One of the considerations that the FAC has advanced for their disproportionate share of the fees is the sacrifice of client representation so that they could serve the needs of the PLC.  This consideration would be less compelling if it is revealed through discovery that, through side deals, these firms  retained an interest in the fees generated by those surrendered clients, such as with his other related or partner firms.  Moreover, lack of representation of clients is a negative factor, and might even have been a ground upon which attorneys should not have been given leadership responsibility. *See* C. Darby, *Trends and Problems in the Appointment and Compensation of Common Benefit Counsel in Complex Multi-district Litigation: an Empirical Study of Ten Mega MDLs* (July 2010) (cited by this Court in is October 19, 2010 Orders and Reasons at 18 n.4), at 37 ("Although not indicated in the MCL4th, an important qualification for service in the leadership of the MOL was the representation of active plaintiffs in the federal cases. This was required specifically in Vioxx, Baycol and Bextra, but not PPA, Prempro or Zyprexa.").

-38-

Another serious flaw with the FAC's allocation is its apparent use of the common fee fund to resolve disputes with previous objectors. This disturbing conduct, confirmed in the February 17, 2011 hearing, will be the subject of another motion.

>   **5.     THE FAC FORMULA DOES NOT ACCOUNT FOR OR DISCLOSE PRIVATE FEE-SHARING AGREEMENTS., WHICH CHANGE THE AMOUNT OF THE ACTUAL ALLOCATION MANY CLAIMANTS WILL ULTIMATELY RECEIVE.**

Hidden within the FAC's fee allocation are multiple fee sharing arrangements that bear significantly on the fairness of the allocation.  For example, the firm that received the third-highest hourly rate, Ashcraft & Gerel, LLP ($1325/hr.) is in partnership with FAC member Russ Herman, seventh-rated at $1102/hr.   The partnership raises an important question to be raised in discovery: what fee-sharing agreements existed between these and other firms.

>   **6.     THE RECOMMENDED ALLOCATIONS DEMONSTRATE HOW THE FAC'S INSUPPORTABLE METHODOLOGY AND FORMULA HAVE PRODUCED AN UNSUSTAINABLE RESULT.**

The Objections made significant contributions to the common benefit, which were  heavily relied upon by the very lawyers who stand to receive top compensation from the common fee fund. Nonetheless, the FAC proposes to reward Objectors' efforts by capturing an enormous share of their time and reapportioning it among its members, partners, and friends.  The FAC (represented by 9 of the 109 firms in the pool) proposes to give itself a stunning $230,000,000 of the total declared available fund of $312,000,000.[14]   This represents fully 73% of the total declared attorneys' fee

---

[14] The allocation of $312,000,000 does not square with the removal of $19,000,000 to settle the Stratton group's objections. *See* fn. 1

award, distributed among less the 10% of the pool of lawyers, who contributed less than 43% of the

common benefit hours.[15]

### 7.   THE FAC'S RECOMMENDED ALLOCATION IS NOT ENTITLED TO ANY PRESUMPTIVE WEIGHT OR DEFERENCE, AND IN FACT, DUE TO ITS FUNDAMENTAL FLAWS, IS ESSENTIALLY MEANINGLESS.

In *Murphy Oil II*, this Court approved the use of the allocation committee approach to

recommend division of fees, but noted the following:

> The Fifth Circuit has approved of the appointment of such a fee committee. However, when a fee committee is appointed, the Court must maintain close supervision of the committee and "closely scrutinize" any recommendation from the committee. *In re High Sulfur Content Gasoline Products Liab. Litig.*, 517 F.3d 220, 235 (5th Cir.2008). This is so because there are conflicts of interest inherent in appointing a fee committee: the members of the committee suggest to the court a division of a limited fund among themselves and other firms. *In re High Sulfur Content*, 517 F.3d at 235 (citing *In re Diet Drugs Products Liab. Litig.*, 401 F.3d 143, 173 (3d Cir.2005) (Ambro, J., concurring)).

582 F.Supp.2d at, 801 n.8. Indeed, as the Fifth Circuit also stated in the quoted case:

> [O]ur precedents do not permit courts simply to defer to a fee allocation proposed by a select committee of attorneys, in no small part, because *235 "counsel have inherent conflicts." *In re Diet Drugs Products Liab. Litig.*, 401 F.3d 143, 173 (3d Cir.2005) (Ambro, J., concurring). As Judge Ambro noted, "They make recommendations on their own fees and thus have a financial interest in the outcome. **How much deference is due the fox who recommends how to divvy up the chickens**?"

*In re High Sulfur Content* II , 517 F.3d at 234-35 (emphasis added).

---

[15]In *In re: High Sulfur Content Gasoline Products Liability Litigation, supra*, the Court's indignation was aroused by "an order that awarded *almost half* of the $6.85 million fee to the five members of the fee committee and their law firms." (Emphasis supplied).  It is not  difficult to anticipate how the Fifth Circuit might react to the FAC's allocation of 73-80% of the award here to themselves and their favored firms.

In conclusion, the *High Sulfur* court declared that "[s]uch a direct conflict of interest [created by an allocating committee's 'dividing a limited fund among themselves and other firms] strongly suggests that affording substantial deference is inappropriate." 517 F.3d at 235, quoting *In re Diet Drugs,* 401 F. 3d at 173-174 (Ambro, J., concurring).

Deference is particularly unwarranted here. The Fifth Circuit attaches "a strong presumption [to] the reasonableness of the lodestar amount," *Saizan v. Delta Concrete Products Co., Inc.,* 448 F.3d 795, 800, which the FAC has removed from its equation. Because the methodology employed by the FAC is fundamentally flawed, and because the errors thus created in a limited-fund allocation cannot be repaired without adjusting the awards to objectors and acceptors alike, the FAC's recommended allocation is due to be discarded in its entirety.

In place of the FAC's recommendation, Movants seek the entry of a judgment directing that each claimant to the common benefit fund shall receive an allocation based upon its lodestar rate, as determined through discovery, and subject to a multiplier in accordance with the *Johnson* factors. Respectfully submitted:

/s/ Robert E. Arceneux                                    /s/ Margaret E. Woodward

_____          _____
Robert E. Arceneaux, La Bar No. 01199        _
ROBERT E. ARCENEAUX LLC                      Margaret E. Woodward, La. Bar No. #13677
47 Beverly Garden Drive                              3701 Canal Street, Suite C
Metairie, LA 70001                                      New Orleans, Louisiana  70119
(504) 833-7533 office                                  (504) 301-4333 office
(504) 833-7612 fax                                      (504) 301-4365 fax
rea7001@cox.net                                        mewno@aol.com

CO-LEAD COUNSEL FOR OBJECTORS IDENTIFIED IN FEB. 8, 2011 ORDER

Pascal F. Calogero, Jr., La. Bar No. 03802

AJUBITA, LEFTWICH & SALZER, L.L.C.
1100 Poydras Street
New Orleans LA 70163-1950
(504) 582-2300 office
(504) 582-2310 fax
pcalogero@alsfirm.com

LIAISON COUNSEL FOR OBJECTORS IDENTIFIED IN FEB. 8, 2011 ORDER

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Memorandum in Support has been served on Liaison

Counsel, Russ Herman, Co-Lead counsel Andy Birchfield and Christohper Seeer,  and Defendant's

Liaison counsel Phillip Wittmann, by U.S. Mail and e-mail, and by upon all parties by electronically

uploading the same to LexisNexis File & Serve Advanced in accordance with Pre Trial Order No.8,

on this 24 day of February, 2011.

_Robert E Arceneaux_

_____

# POINT SYSTEM GUIDE

## Key Leadership – 125 maximum points

- High level positions and responsibilities in overall litigation
- 125 points – MDL PEC (Co-leads and Liaison)
- 75 points – exemplary leadership of key coordinated venue; key guidance to PEC
- 50 points – substantial leadership and advancement of litigation in key coordinated venue
- 25 points – PEC member; key leadership position in key coordinated venue
- 15 points – co-leadership role in Texas coordinated litigation
- 10 points – MDL-Texas coordination

## Trials – 150 maximum points

- 150 points – 5 trials; 3 trials with exceptional results
- 120 points – 2 trials, one with good plaintiff verdict
- 80 points – 2 trials; one trial with excellent result at trial level and appellate level
- 60 points – 1 bellwether trial with excellent result
- 40 points – one trial
- 5-10 points – local counsel or similar role

## Settlement Negotiations – 100 maximum points

- 100 points – highest level of contribution
- 95 points – very high level of contribution
- 90 points – high level of contribution
- 85 points – substantial contribution

## Law and Briefing – 100 maximum points

- 100 points – highest level of overall contribution
- 90 points – very high level of contribution on most significant issues
- 75 points – high level of contribution on significant issues at trial and appellate levels
- 70 points and less – weighted based on significance of issues and time expended

<u>**Settlement Implementation and Post-Settlement Issues – 100 maximum points**</u>

- ○ 100 points – highest level of contribution
- ○ 90 points – very high level of contribution
- ○ 85 points – high level of contribution
- ○ 80 points and less – weighted based on significance of issues and time expended

<u>**Discovery, Science and Experts – 50 maximum points**</u>

- ○ 50 points – highest level of contribution
- ○ 40 points – very high level of contribution (substantial and significant work relating to discovery, scientific issues and/or experts)
- ○ 35 points – high level of contribution (substantial time and resources expended doing discovery and advancing the docket)
- ○ 30 points and less – substantial contribution (weighted based on significance of issue and amount of time expended)

<u>**Committee Leadership and Participation - 50 maximum points**</u>

- ○ 50 points – highest level of contribution
- ○ 40 points – very high level of contribution (Chairs of key committees) *Restaino is split between Lopez Hodes and Burg Simpson.
- ○ 35 points and less – high level of contribution (weighted by significance of committee; degree of leadership and participation; amount of time expended)

<u>**Funding – 75 maximum points (PSC assessment and case contributions)**</u>

- ○ Up to 75 points for Case Contribution
- ○ 25 points for PSC Assessment
- ○ Points added for exceptional trial costs borne by firm

<u>**Case Management – 25 maximum points**</u>

- ○ Attending Status Conferences, hearings, meetings, etc.
- ○ Reviewing email, pleadings, etc.
- ○ Case administration

| Firm | Key Leadership Roles (125) | Trials (150) | Settle-ment (100) | Law & Briefing (100) | Settlement Implemen-tation / Post Settlement Matters (100) | Discovery / Science (50) | Committee Leadership and Participation (50) | Funding (75) | Case Manage-ment (25) | Net Points | Factor for Johnson and PTO 6D criteria (.01-1.25) | Total Points | Allocation based on Points Calculation |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Alley, Clark, Greiwe & Fulmer | | | | | | | | | | | | | |
| Alvarez Law Firm | | | | | | | | | | | | | |
| Anapol, Schwartz, Weiss, Cohan, Feldman & Smalley, P.C. | | | | | | | | | | | | | |
| Anastopoulo & Clore, LLC | | | | | | | | | | | | | |
| Andrews & Thornton | | | | | | | | | | | | | |
| Ashcraft & Gerel LLP | | | | | | | | | | | | | |
| Audet & Partners, LLP | | | | | | | | | | | | | |
| Aylstock, Witkin, Kreis & Overholtz, LLC | | | | | | | | | | | | | |
| Balkin & Eisbrouch | | | | | | | | | | | | | |
| Balser, Brian K., Co., LPA | | | | | | | | | | | | | |
| Barnow | | | | | | | | | | | | | |
| Barrios, Kingsdorf & Casteix, LLP | | | | | | | | | | | | | |
| Bartimus, Frickleton, Robertson & Gorny | | | | | | | | | | | | | |
| Beasley, Allen, Crow, Methvin, Portis & Miles, P.C. | | | | | | | | | | | | | |
| Becnel Law Firm, LLC | | | | | | | | | | | | | |
| Bencomo | | | | | | | | | | | | | |
| Blizzard, McCarthy & Nabers, LLP | | | | | | | | | | | | | |
| Bossier & Associates, PLLC | | | | | | | | | | | | | |
| Branch Law Firm | | | | | | | | | | | | | |
| Brandi Law Firm | | | | | | | | | | | | | |
| Brown & Crouppen, PC | | | | | | | | | | | | | |
| Bruce C. Dean | | | | | | | | | | | | | |
| Burg, Simpson, Eldredge, Hersh & Jardine, PC | | | | | | | | | | | | | |
| Cafferty Faucher | | | | | | | | | | | | | |
| Capshaw Goss | | | | | | | | | | | | | |
| Carey & Danis, LLC | | | | | | | | | | | | | |
| Charfoos | | | | | | | | | | | | | |
| Childers, Buck & Schlueter | | | | | | | | | | | | | |
| Cohen Milstein | | | | | | | | | | | | | |
| Cohen, Placitella & Roth, PC | | | | | | | | | | | | | |
| Cunard Law Firm | | | | | | | | | | | | | |
| Cuneo, Gilbert & LaDuca LLP | | | | | | | | | | | | | |
| Davis, Champ & Associates, Inc. | | | | | | | | | | | | | |
| Dugan & Browne | | | | | | | | | | | | | |

| Firm | Key Leadership Roles (125) | Trials (150) | Settle-ment (100) | Law & Briefing (100) | Settlement Implemen-tation / Post Settlement Matters (100) | Discovery / Science (50) | Committee Leadership and Participation (50) | Funding (75) | Case Manage-ment (25) | Net Points | Factor for Johnson and PTO 6D criteria (.01-1.25) | Total Points | Allocation based on Points Calculation |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Matthews & Associates | | | | | | | | | | | | | |
| Milhoff Law Firm | | | | | | | | | | | | | |
| Morelli Ratner PC | | | | | | | | | | | | | |
| Motley, Rice LLC | | | | | | | | | | | | | |
| Murray Law Firm 1 | | | | | | | | | | | | | |
| Neblett, Beard & Arsenault | | | | | | | | | | | | | |
| Panish & Shea | | | | | | | | | | | | | |
| Price Waicukauski & Riley, LLC | | | | | | | | | | | | | |
| Richardson, Patrick, Westbrook & Brickman | | | | | | | | | | | | | |
| Robert J. DeBry | | | | | | | | | | | | | |
| Robert M. Becnel | | | | | | | | | | | | | |
| Robins, Kaplan, Miller & Ciresi L.L.P. | | | | | | | | | | | | | |
| Robinson, Calcagnie & Robinson | | | | | | | | | | | | | |
| Roda Nast, P.C. | | | | | | | | | | | | | |
| Sanders Viener Grossman, LLP | | | | | | | | | | | | | |
| Sanford, Shelly A., PLLC | | | | | | | | | | | | | |
| Seeger Weiss LLP | | | | | | | | | | | | | |
| Sheller, P.C. | | | | | | | | | | | | | |
| Silverman & Fodera | | | | | | | | | | | | | |
| Singleton Law Firm | | | | | | | | | | | | | |
| Snapka, Turman & Waterhouse, L.L.P | | | | | | | | | | | | | |
| Ted Kanner | | | | | | | | | | | | | |
| Texas Consortium (Ranier, Gayle & Elliot, L.L.C.; Williams Kherkher; Provost Umphrey; Watts Law Firm: Grant Kaiser) | | | | | | | | | | | | | |
| The Holman Law Firm | | | | | | | | | | | | | |
| Ury & Moskow LLC | | | | | | | | | | | | | |
| Weinberg, Eric H., Law Firm of | | | | | | | | | | | | | |
| Weitz & Luxenberg, P.C. | | | | | | | | | | | | | |
| White Meany & Wetherall | | | | | | | | | | | | | |
| Whitehead Law Firm | | | | | | | | | | | | | |
| Williamson & Williams | | | | | | | | | | | | | |
| Wold | | | | | | | | | | | | | |
| Zimmerman, Reed PLLP | | | | | | | | | | | | | |
| Zink, Diane K. | | | | | | | | | | | | | |

| Firm | Key Leadership Roles (125) | Trials (150) | Settle-ment (100) | Law & Briefing (100) | Settlement Implemen-tation / Post Settlement Matters (100) | Discovery / Science (50) | Committee Leadership and Participation (50) | Funding (75) | Case Manage-ment (25) | Net Points | Factor for Johnson and PTO 6D criteria (.01-1.25) | Total Points | Allocation based on Points Calculation |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Engstrom, Lipscomb & Lack | | | | | | | | | | | | | |
| Escobedo Tippet | | | | | | | | | | | | | |
| Fayard & Honeycutt | | | | | | | | | | | | | |
| Fibich, Hampton & Leebron, LLP | | | | | | | | | | | | | |
| Freese & Goss, PLLC | | | | | | | | | | | | | |
| Gainsburgh, Benjamin, Davis, Meunier & Warshauer, LLC | | | | | | | | | | | | | |
| Gallagher Law Firm (TX) | | | | | | | | | | | | | |
| Gancedo & Nieves LLP | | | | | | | | | | | | | |
| Gianni-Petoyan, Attorneys at Law | | | | | | | | | | | | | |
| Girardi & Keese | | | | | | | | | | | | | |
| Goldenberg Heller | | | | | | | | | | | | | |
| Hagens Berman | | | | | | | | | | | | | |
| Heninger Garrison Davis, LLC | | | | | | | | | | | | | |
| Herman, Herman, Katz & Cotler, LLP | | | | | | | | | | | | | |
| Hovde Dassow & Deets, LLC | | | | | | | | | | | | | |
| Irpino | | | | | | | | | | | | | |
| Jacobs Burns | | | | | | | | | | | | | |
| John Hornbeck | | | | | | | | | | | | | |
| Johnson & Perkinson | | | | | | | | | | | | | |
| Jones Verras | | | | | | | | | | | | | |
| Kasowitz, Benson, Torres & Friedman LLP | | | | | | | | | | | | | |
| Kline & Specter, PC | | | | | | | | | | | | | |
| Labaton Sucharow | | | | | | | | | | | | | |
| Lanier Law Firm, PC | | | | | | | | | | | | | |
| Levin Fishbein Sedran & Berman | | | | | | | | | | | | | |
| Levin Simes Kaiser & Gornick, LLP | | | | | | | | | | | | | |
| Levin, Papantonio, Thomas, Mitchell, Eshner & Proctor P.A. | | | | | | | | | | | | | |
| Lewis & Roberts, PLLC | | | | | | | | | | | | | |
| Lieff, Cabraser, Heimann & Bernstein, LLP | | | | | | | | | | | | | |
| Lockridge, Grindal, Nauen PLLP | | | | | | | | | | | | | |
| Locks Law Firm, LLC | | | | | | | | | | | | | |
| Lopez, Hodes, Restaino, Milman & Skikos | | | | | | | | | | | | | |
| Lundy & Davis | | | | | | | | | | | | | |
| Martin & Jones | | | | | | | | | | | | | |

| Firm | Key Leadership Roles (125) | Trials (150) | Settle-ment (100) | Law & Briefing (100) | Settlement Implementation / Post Settlement Matters (100) | Discovery / Science (50) | Committee Leadership and Participation (50) | Funding (75) | Case Manage-ment (25) | Net Points | Factor for Johnson and PTO 6D criteria (.01-1.25) | Total Points | Allocation based on Points Calculation |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Beasley, Allen, Crow, Methvin, Portis & Miles, P.C. | 125 | 150 | 100 | 25 | 100 | 35 | 40 | 75 | 25 | 675 | 1.25 | 843.75 | $40,954,148 |
| Seeger Weiss LLP | 125 | 120 | 95 | 60 | 90 | 45 | 40 | 75 | 25 | 675 | 1.25 | 843.75 | $40,954,148 |
| Herman, Herman, Katz & Cotler, LLP | 125 | 10 | 100 | 90 | 85 | 40 | 45 | 25 | 25 | 545 | 1.23 | 670.35 | $32,537,615 |
| Lanier Law Firm, PC | 50 | 150 | 0 | 75 | 0 | 42 | 40 | 75 | 25 | 457 | 1.22 | 557.54 | $27,062,015 |
| Levin Fishbein Sedran & Berman | 50 | 0 | 90 | 100 | 80 | 10 | 15 | 25 | 25 | 395 | 1.12 | 442.40 | $21,473,321 |
| Texas Consortium (Ranier, Gayle & Elliot, L.L.C.; Williams Kherkher; Provost Umphrey; Watts Law Firm; Grant Kaiser) | 25 | 80 | 0 | 55 | 0 | 45 | 40 | 75 | 25 | 345 | 1.20 | 414.00 | $20,094,835 |
| Girardi & Keese | 75 | 40 | 85 | 35 | 20 | 25 | 20 | 35 | 25 | 360 | 1.15 | 414.00 | $20,094,835 |
| Weitz & Luxenberg, P.C. | 50 | 80 | 0 | 70 | 0 | 40 | 35 | 75 | 25 | 375 | 1.10 | 412.50 | $20,022,028 |
| Levin, Papantonio, Thomas, Mitchell, Eshner & Proctor P.A. | 25 | 100 | 0 | 10 | 0 | 50 | 45 | 25 | 25 | 280 | 1.15 | 322.00 | $15,629,316 |
| Blizzard, McCarthy & Nabers, LLP | 10 | 40 | 100 | 0 | 80 | 0 | 0 | 0 | 10 | 240 | 1.00 | 240.00 | $11,649,180 |
| Ashcraft & Gerel LLP | 25 | 0 | 0 | 20 | 0 | 50 | 40 | 25 | 25 | 185 | 1.00 | 185.00 | $8,979,576 |
| Sanford, Shelly A., PLLC | 25 | 5 | 0 | 0 | 0 | 40 | 30 | 25 | 15 | 140 | 1.00 | 140.00 | $6,795,355 |
| Lieff, Cabraser, Heimann & Bernstein, LLP | 25 | 10 | 0 | 20 | 0 | 25 | 25 | 25 | 15 | 145 | 0.70 | 101.50 | $4,926,632 |
| Robinson, Calcagnie & Robinson | 25 | 60 | 0 | 0 | 0 | 10 | 10 | 25 | 15 | 145 | 0.70 | 101.50 | $4,926,632 |
| Kline & Specter, PC | 25 | 0 | 0 | 20 | 0 | 40 | 20 | 35 | 15 | 155 | 0.60 | 93.00 | $4,514,057 |
| Anapol, Schwartz, Weiss, Cohan, Feldman & Smalley, P.C. | 25 | 0 | 0 | 20 | 0 | 10 | 10 | 25 | 25 | 115 | 0.60 | 69.00 | $3,349,139 |
| Gainsburgh, Benjamin, Davis, Meunier & Warshauer, LLC | 25 | 5 | 0 | 0 | 0 | 0 | 10 | 25 | 5 | 70 | 0.60 | 42.00 | $2,038,606 |
| Barrios, Kingsdorf & Casteix, LLP | 0 | 5 | 0 | 0 | 0 | 0 | 20 | 0 | 10 | 35 | 1.00 | 35.00 | $1,698,839 |
| Panish & Shea | 0 | 40 | 0 | 0 | 0 | 0 | 5 | 0 | 0 | 45 | 0.75 | 33.75 | $1,638,166 |
| Matthews & Associates | 15 | 10 | 0 | 0 | 0 | 5 | 0 | 25 | 5 | 60 | 0.50 | 30.00 | $1,456,147 |
| Morelli Ratner PC | 0 | 25 | 0 | 0 | 0 | 10 | 0 | 0 | 0 | 35 | 0.75 | 26.25 | $1,274,129 |
| Lopez, Hodes, Restaino, Milman & Skikos | 0 | 0 | 0 | 0 | 0 | 30 | 25 | 0 | 0 | 55 | 0.45 | 24.75 | $1,201,322 |
| Escobedo Tippet | 0 | 40 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 40 | 0.60 | 24.00 | $1,164,918 |
| Audet & Partners, LLP | 0 | 0 | 0 | 5 | 0 | 25 | 0 | 0 | 10 | 40 | 0.60 | 24.00 | $1,164,918 |
| Hovde Dassow & Deets, LLC | 0 | 0 | 0 | 5 | 0 | 25 | 0 | 0 | 10 | 40 | 0.60 | 24.00 | $1,164,918 |
| Heninger Garrison Davis, LLC | 0 | 40 | 0 | 0 | 0 | 5 | 0 | 0 | 0 | 45 | 0.50 | 22.50 | $1,092,111 |
| Brandi Law Firm | 0 | 30 | 0 | 0 | 0 | 5 | 0 | 0 | 5 | 40 | 0.50 | 20.00 | $970,765 |
| Irpino | 0 | 0 | 0 | 0 | 0 | 20 | 10 | 0 | 2 | 32 | 0.50 | 16.00 | $776,612 |
| Neblett, Beard & Arsenault | 25 | 0 | 0 | 0 | 0 | 5 | 5 | 35 | 5 | 75 | 0.20 | 15.00 | $728,074 |
| Kasowitz, Benson, Torres & Friedman LLP | 0 | 0 | 0 | 0 | 0 | 20 | 0 | 0 | | 20 | 0.75 | 15.00 | $728,074 |
| Robins, Kaplan, Miller & Ciresi L.L.P. | 0 | 0 | 0 | 10 | 0 | 10 | 5 | 0 | 0 | 25 | 0.50 | 12.50 | $606,728 |
| Fibich, Hampton & Leebron, LLP | 15 | 0 | 0 | 5 | 0 | 5 | 0 | 0 | 0 | 25 | 0.50 | 12.50 | $606,728 |
| Snapka, Turman & Waterhouse, L.L.P | 0 | 40 | 0 | 0 | 0 | 5 | 0 | 0 | 3 | 48 | 0.25 | 12.00 | $582,459 |
| Locks Law Firm, LLC | 0 | 40 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 40 | 0.30 | 12.00 | $582,459 |

| Firm | Key Leadership Roles (125) | Trials (150) | Settle-ment (100) | Law & Briefing (100) | Settlement Implementation / Post Settlement Matters (100) | Discovery / Science (50) | Committee Leadership and Participation (50) | Funding (75) | Case Manage-ment (25) | Net Points | Factor for Johnson and PTO 6D criteria (.01-1.25) | Total Points | Allocation based on Points Calculation |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Cohen, Placitella & Roth, PC | 0 | 0 | 0 | 0 | 0 | 20 | 0 | 0 | 2 | 22 | 0.50 | 11.00 | $533,921 |
| Engstrom, Lipscomb & Lack | 0 | 0 | 0 | 0 | 0 | 20 | 0 | 0 | 0 | 20 | 0.40 | 8.00 | $388,306 |
| Alley, Clark, Greiwe & Fulmer | 0 | 10 | 0 | 0 | 0 | 5 | 0 | 0 | 0 | 15 | 0.50 | 7.50 | $364,037 |
| Lockridge, Grindal, Nauen PLLP | 0 | 0 | 0 | 0 | 0 | 15 | 0 | 0 | 0 | 15 | 0.50 | 7.50 | $364,037 |
| Cohen Milstein | 0 | 0 | 0 | 0 | 0 | 10 | 0 | 0 | 0 | 10 | 0.75 | 7.50 | $364,037 |
| Gancedo & Nieves LLP | 0 | 0 | 0 | 0 | 0 | 10 | 2 | 0 | 0 | 12 | 0.60 | 7.20 | $349,475 |
| Andrews & Thornton | 0 | 0 | 0 | 0 | 0 | 10 | 0 | 0 | 0 | 10 | 0.60 | 6.00 | $291,229 |
| Branch Law Firm | 0 | 0 | 0 | 0 | 0 | 2 | 0 | 25 | 2 | 29 | 0.20 | 5.80 | $281,522 |
| Weinberg, Eric H., Law Firm of | 0 | 0 | 0 | 0 | 0 | 7 | 0 | 0 | 0 | 7 | 0.65 | 4.55 | $220,849 |
| Burg, Simpson, Eldredge, Hersh & Jardine, PC | 0 | 0 | 0 | 0 | 0 | 5 | 5 | 0 | 0 | 10 | 0.45 | 4.50 | $218,422 |
| Motley, Rice LLC | 0 | 0 | 0 | 0 | 0 | 10 | 0 | 0 | 0 | 10 | 0.40 | 4.00 | $194,153 |
| Lewis & Roberts, PLLC | 0 | 0 | 0 | 0 | 0 | 10 | 0 | 0 | 0 | 10 | 0.40 | 4.00 | $194,153 |
| John Hornbeck | 0 | 0 | 0 | 0 | 0 | 8 | 0 | 0 | 0 | 8 | 0.50 | 4.00 | $194,153 |
| Singleton Law Firm | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 5 | 5 | 0.65 | 3.25 | $157,749 |
| White Meany & Wetherall | 0 | 0 | 0 | 0 | 0 | 5 | 0 | 0 | 0 | 5 | 0.65 | 3.25 | $157,749 |
| Becnel Law Firm, LLC | 0 | 0 | 0 | 0 | 0 | 2 | 0 | 0 | 2 | 4 | 0.50 | 2.00 | $97,076 |
| Martin & Jones | 0 | 0 | 0 | 0 | 0 | 3 | 0 | 0 | 0 | 3 | 0.65 | 1.95 | $94,650 |
| Aylstock, Witkin, Kreis & Overholtz, LLC | 0 | 0 | 0 | 0 | 0 | 3 | 0 | 0 | 0 | 3 | 0.65 | 1.95 | $94,650 |
| Lundy & Davis | 0 | 0 | 0 | 0 | 0 | 3 | 2 | 0 | 0 | 5 | 0.30 | 1.50 | $72,807 |
| Silverman & Fodera | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 5 | 5 | 0.30 | 1.50 | $72,807 |
| Murray Law Firm 1 | 0 | 0 | 0 | 1 | 0 | 2 | 0 | 0 | 0 | 3 | 0.50 | 1.50 | $72,807 |
| Brown & Crouppen, PC | 0 | 10 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 10 | 0.15 | 1.50 | $72,807 |
| Carey & Danis, LLC | 0 | 0 | 0 | 0 | 0 | 5 | 0 | 0 | 0 | 5 | 0.25 | 1.25 | $60,673 |
| Bencomo | 0 | 0 | 0 | 0 | 0 | 3 | 0 | 0 | 0 | 3 | 0.40 | 1.20 | $58,246 |
| Roda Nast, P.C. | 0 | 0 | 0 | 3 | 0 | 0 | 0 | 0 | 0 | 3 | 0.30 | 0.90 | $43,684 |
| Whitehead Law Firm | 0 | 0 | 0 | 0 | 0 | 3 | 0 | 0 | 0 | 3 | 0.30 | 0.90 | $43,684 |
| Cunard Law Firm | 0 | 0 | 0 | 0 | 0 | 3 | 0 | 0 | 0 | 3 | 0.30 | 0.90 | $43,684 |
| Sheller, P.C. | 0 | 0 | 0 | 0 | 0 | 0 | 3 | 0 | 0 | 3 | 0.30 | 0.90 | $43,684 |
| Gallagher Law Firm (TX) | 0 | 0 | 0 | 0 | 0 | 2 | 0 | 0 | 0 | 2 | 0.40 | 0.80 | $38,831 |
| Gianni-Petoyan, Attorneys at Law | 0 | 0 | 0 | 0 | 0 | 2 | 0 | 0 | 0 | 2 | 0.30 | 0.60 | $29,123 |
| Balser, Brian K., Co., LPA | 0 | 0 | 0 | 0 | 0 | 2 | 0 | 0 | 0 | 2 | 0.30 | 0.60 | $29,123 |
| Jones Verras | 0 | 0 | 0 | 0 | 0 | 2 | 0 | 0 | 0 | 2 | 0.30 | 0.60 | $29,123 |
| Robert M. Becnel | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 1 | 2 | 0.30 | 0.60 | $29,123 |
| Cafferty Faucher | 0 | 0 | 0 | 0 | 0 | 2 | 0 | 0 | 0 | 2 | 0.30 | 0.60 | $29,123 |
| Freese & Goss, PLLC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 0.30 | 0.30 | $14,561 |
| Anastopoulo & Clore, LLC | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 1 | 0.30 | 0.30 | $14,561 |
| Johnson & Perkinson | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 0.30 | 0.30 | $14,561 |
| Fayard & Honeycutt | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 0.30 | 0.30 | $14,561 |

| Firm | Key Leadership Roles (125) | Trials (150) | Settle-ment (100) | Law & Briefing (100) | Settlement Implementation / Post Settlement Matters (100) | Discovery / Science (50) | Committee Leadership and Participation (50) | Funding (75) | Case Manage-ment (25) | Net Points | Factor for Johnson and PTO 6D criteria (.01-1.25) | Total Points | Allocation based on Points Calculation |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Price Waicukauski & Riley, LLC | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 1 | 0.30 | 0.30 | $14,561 |
| Capshaw Goss | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 0.30 | 0.30 | $14,561 |
| Levin Simes Kaiser & Gornick, LLP | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 1 | 0.30 | 0.30 | $14,561 |
| Richardson, Patrick, Westbrook & Brickman | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 1 | 0.30 | 0.30 | $14,561 |
| Sanders Viener Grossman, LLP | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 1 | 0.30 | 0.30 | $14,561 |
| Bossier & Associates, PLLC | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 1 | 0.30 | 0.30 | $14,561 |
| Alvarez Law Firm | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 1 | 0.30 | 0.30 | $14,561 |
| Balkin & Eisbrouch | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 0.30 | 0.30 | $14,561 |
| Barnow | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 1 | 0.30 | 0.30 | $14,561 |
| Bartimus, Frickleton, Robertson & Gorny | | | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 1 | 0.30 | 0.30 | $14,561 |
| Davis, Champ & Associates, Inc. | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 0.30 | 0.30 | $14,561 |
| Mithoff Law Firm | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 0.30 | 0.30 | $14,561 |
| Robert J. DeBry | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 1 | 0.30 | 0.30 | $14,561 |
| Williamson & Williams | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 0.30 | 0.30 | $14,561 |
| Childers, Buck & Schlueter | 0 | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0.00 | 0.00 | $0 |
| Cuneo, Gilbert & LaDuca LLP | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | | 0 | 0.00 | 0.00 | $0 |
| Zimmerman, Reed PLLP | | | | | | | | | | 0 | 0.00 | 0.00 | $0 |
| Ury & Moskow LLC | | | | | | | | | | 0 | 0.00 | 0.00 | $0 |
| Bruce C. Dean | | | | | | | | | | 0 | 0.00 | 0.00 | $0 |
| Charfoos | | | | | | | | | | 0 | 0.00 | 0.00 | $0 |
| Dugan & Browne | | | | | | | | | | 0 | 0.00 | 0.00 | $0 |
| Goldenberg Heller | | | | | | | | | | 0 | 0.00 | 0.00 | $0 |
| Hagens Berman | | | | | | | | | | 0 | 0.00 | 0.00 | $0 |
| Jacobs Burns | | | | | | | | | | 0 | 0.00 | 0.00 | $0 |
| Labaton Sucharow | | | | | | | | | | 0 | 0.00 | 0.00 | $0 |
| Ted Kanner | | | | | | | | | | 0 | 0.00 | 0.00 | $0 |
| The Holman Law Firm | | | | | | | | | | 0 | 0.00 | 0.00 | $0 |
| Wold | | | | | | | | | | 0 | 0.00 | 0.00 | $0 |
| Zink, Diane K. | | | | | | | | | | 0 | 0.30 | 0.00 | $0 |
| | 890 | 1140 | 570 | 629 | 455 | 861 | 548 | 755 | 425 | 6273 | | 6366.74 | $309,030,411 |
| | 14.2% | 18.2% | 9.1% | 10.0% | 7.3% | 13.7% | 8.7% | 12.0% | 6.8% | | | | |
| | | | | | | | | | | | | Pt Value | $48,538.25 |
| | | | | | | | | | | | | Pot Size | $312,530,411 |
| | | | | | | | | | | | | Res Fund | $3,500,000 |

| Firm | Key Leadership Roles (125) | Trials (150) | Settlement (100) | Law & Briefing (100) | Settlement Implementation / Post Settlement Matters (100) | Discovery / Science (50) | Committee Leadership and Participation (50) | Funding (75) | Case Management (25) | Net Points | Factor for Johnson and PTO 6D criteria (.01-1.25) | Total Points | Allocation based on Points Calculation | Final Allocation |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Beasley, Allen, Crow, Methvin, Portis & Miles, P.C. | 125 | 150 | 100 | 25 | 100 | 35 | 40 | 75 | 25 | 675 | 1.25 | 843.75 | $41,093,649 | $40,900,000 |
| Seeger Weiss LLP | 125 | 120 | 95 | 60 | 90 | 45 | 40 | 75 | 25 | 675 | 1.25 | 843.75 | $41,093,649 | $40,900,000 |
| Herman, Herman, Katz & Cotler, LLP | 125 | 10 | 100 | 90 | 85 | 40 | 45 | 25 | 25 | 545 | 1.23 | 670.35 | $32,648,447 | $32,500,000 |
| Lanier Law Firm, PC | 50 | 150 | 0 | 75 | 0 | 42 | 40 | 75 | 25 | 457 | 1.22 | 557.54 | $27,154,196 | $27,000,000 |
| Levin Fishbein Sedran & Berman | 50 | 0 | 90 | 100 | 80 | 10 | 15 | 25 | 25 | 395 | 1.12 | 442.40 | $21,546,466 | $21,400,000 |
| Girardi & Keese | 75 | 40 | 85 | 35 | 20 | 25 | 20 | 35 | 25 | 360 | 1.15 | 414.00 | $20,163,284 | $20,100,000 |
| Texas Consortium (Ranier, Gayle & Elliot, L.L.C.; Williams Kherkher; Provost Umphrey; Watts Law Firm; Grant Kaiser) | 25 | 80 | 0 | 55 | 0 | 45 | 40 | 75 | 25 | 345 | 1.20 | 414.00 | $20,163,284 | $20,095,000 |
| Weitz & Luxenberg, P.C. | 50 | 80 | 0 | 70 | 0 | 40 | 35 | 75 | 25 | 375 | 1.10 | 412.50 | $20,090,228 | $20,000,000 |
| Levin, Papantonio, Thomas, Mitchell, Eshner & Proctor P.A. | 25 | 100 | 0 | 10 | 0 | 50 | 45 | 25 | 25 | 280 | 1.15 | 322.00 | $15,682,554 | $15,600,000 |
| Blizzard, McCarthy & Nabers, LLP | 10 | 40 | 100 | 0 | 80 | 0 | 0 | 0 | 10 | 240 | 1.00 | 240.00 | $11,688,860 | $11,600,000 |
| Ashcraft & Gerel LLP | 25 | 0 | 0 | 20 | 0 | 50 | 40 | 25 | 25 | 185 | 1.00 | 185.00 | $9,010,163 | $9,000,000 |
| Sanford, Shelly A., PLLC | 25 | 5 | 0 | 0 | 0 | 40 | 30 | 25 | 15 | 140 | 1.00 | 140.00 | $6,818,502 | $6,800,000 |
| Lieff, Cabraser, Heimann & Bernstein, LLP | 25 | 10 | 0 | 25 | 0 | 30 | 25 | 25 | 15 | 155 | 0.80 | 124.00 | $6,039,244 | $6,000,000 |
| Robinson, Calcagnie & Robinson | 25 | 60 | 0 | 5 | 0 | 10 | 20 | 25 | 15 | 160 | 0.75 | 120.00 | $5,844,430 | $6,000,000 |
| Kline & Specter, PC | 25 | 0 | 0 | 20 | 0 | 40 | 20 | 35 | 15 | 155 | 0.50 | 77.50 | $3,774,528 | $4,000,000 |
| Anapol, Schwartz, Weiss, Cohan, Feldman & Smalley, P.C. | 25 | 0 | 0 | 20 | 0 | 10 | 10 | 25 | 25 | 115 | 0.60 | 69.00 | $3,360,547 | $3,400,000 |

| Firm | Key Leadership Roles (125) | Trials (150) | Settlement (100) | Law & Briefing (100) | Settlement Implementation / Post Settlement Matters (100) | Discovery / Science (50) | Committee Leadership and Participation (50) | Funding (75) | Case Management (25) | Net Points | Factor for Johnson and PTO 6D criteria (.01-1.25) | Total Points | Allocation based on Points Calculation | Final Allocation |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Gainsburgh, Benjamin, Davis, Meunier & Warshauer, LLC | 25 | 10 | 0 | 10 | 0 | 0 | 10 | 25 | 10 | 90 | 0.60 | 54.00 | $2,629,994 | $2,690,000 |
| Barrios, Kingsdorf & Casteix, LLP | 0 | 5 | 0 | 0 | 0 | 0 | 20 | 0 | 10 | 35 | 1.00 | 35.00 | $1,704,625 | $1,700,000 |
| Panish & Shea | 0 | 40 | 0 | 0 | 0 | 0 | 5 | 0 | 0 | 45 | 0.75 | 33.75 | $1,643,746 | $1,640,000 |
| Lopez, Hodes, Restaino, Milman & Skikos | 0 | 0 | 0 | 0 | 0 | 30 | 30 | 0 | 0 | 60 | 0.50 | 30.00 | $1,461,108 | $1,500,000 |
| Neblett, Beard & Arsenault | 25 | 0 | 0 | 0 | 0 | 5 | 10 | 35 | 10 | 85 | 0.35 | 29.75 | $1,448,932 | $1,450,000 |
| Matthews & Associates | 15 | 10 | 0 | 0 | 0 | 5 | 0 | 25 | 5 | 60 | 0.50 | 30.00 | $1,461,108 | $1,400,000 |
| Audet & Partners, LLP | 0 | 0 | 0 | 5 | 0 | 25 | 0 | 0 | 10 | 40 | 0.60 | 24.00 | $1,168,886 | $1,165,000 |
| Hovde Dassow & Deets, LLC | 0 | 0 | 0 | 5 | 0 | 25 | 0 | 0 | 10 | 40 | 0.60 | 24.00 | $1,168,886 | $1,165,000 |
| Kasowitz, Benson, Torres & Friedman LLP | 0 | 0 | 0 | 0 | 0 | 25 | 10 | 0 | 0 | 35 | 0.60 | 21.00 | $1,022,775 | $1,100,000 |
| Heninger Garrison Davis, LLC | 0 | 40 | 0 | 0 | 0 | 5 | 0 | 0 | 0 | 45 | 0.50 | 22.50 | $1,095,831 | $1,000,000 |
| Brandi Law Firm | 0 | 30 | 0 | 0 | 0 | 5 | 0 | 0 | 5 | 40 | 0.50 | 20.00 | $974,072 | $970,000 |
| Irpino | 0 | 0 | 0 | 0 | 0 | 20 | 10 | 0 | 5 | 35 | 0.50 | 17.50 | $852,313 | $877,000 |
| Robins, Kaplan, Miller & Ciresi L.L.P. | 0 | 0 | 0 | 10 | 0 | 20 | 5 | 0 | 0 | 35 | 0.50 | 17.50 | $852,313 | $850,000 |
| Morelli Ratner PC | 0 | 25 | 0 | 0 | 0 | 0 | 10 | 0 | 0 | 35 | 0.40 | 14.00 | $681,850 | $750,000 |
| Cohen Milstein | 0 | 0 | 0 | 0 | 0 | 25 | 0 | 0 | 0 | 25 | 0.60 | 15.00 | $730,554 | $750,000 |
| Fibich, Hampton & Leebron, LLP | 15 | 0 | 0 | 5 | 0 | 5 | 0 | 0 | 0 | 25 | 0.50 | 12.50 | $608,795 | $610,000 |
| Gancedo & Nieves LLP | 0 | 0 | 0 | 0 | 0 | 10 | 10 | 0 | 0 | 20 | 0.60 | 12.00 | $584,443 | $600,000 |
| Andrews & Thornton | 0 | 0 | 0 | 0 | 0 | 20 | 0 | 0 | 0 | 20 | 0.60 | 12.00 | $584,443 | $600,000 |
| Locks Law Firm, LLC | 0 | 40 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 40 | 0.25 | 10.00 | $487,036 | $585,000 |
| Cohen, Placitella & Roth, PC | 0 | 0 | 0 | 0 | 0 | 20 | 0 | 0 | 2 | 22 | 0.50 | 11.00 | $535,739 | $500,000 |

| Firm | Key Leadership Roles (125) | Trials (150) | Settle-ment (100) | Law & Briefing (100) | Settlement Implementation / Post Settlement Matters (100) | Discovery / Science (50) | Committee Leadership and Participation (50) | Funding (75) | Case Manage-ment (25) | Net Points | Factor for Johnson and PTO 6D criteria (.01-1.25) | Total Points | Allocation based on Points Calculation | Final Allocation |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Burg, Simpson, Eldredge, Hersh & Jardine, PC | 0 | 0 | 0 | 0 | 0 | 10 | 10 | 0 | 0 | 20 | 0.50 | 10.00 | $487,036 | $500,000 |
| Becnel Law Firm, LLC | 0 | 0 | 0 | 0 | 0 | 20 | 0 | 0 | 5 | 25 | 0.35 | 8.75 | $426,156 | $455,000 |
| Engstrom, Lipscomb & Lack | 0 | 0 | 0 | 0 | 0 | 20 | 0 | 0 | 0 | 20 | 0.40 | 8.00 | $389,629 | $390,000 |
| Alley, Clark, Greiwe & Fulmer | 0 | 10 | 0 | 0 | 0 | 5 | 0 | 0 | 0 | 15 | 0.50 | 7.50 | $365,277 | $365,000 |
| Lockridge, Grindal, Nauen PLLP | 0 | 0 | 0 | 0 | 0 | 15 | 0 | 0 | 0 | 15 | 0.50 | 7.50 | $365,277 | $350,000 |
| Bencomo | 0 | 0 | 0 | 0 | 0 | 10 | 0 | 0 | 1 | 11 | 0.60 | 6.60 | $321,444 | $327,500 |
| John Hornbeck | 0 | 0 | 0 | 0 | 0 | 10 | 0 | 0 | 0 | 10 | 0.60 | 6.00 | $292,222 | $300,000 |
| Aylstock, Witkin, Kreis & Overholtz, LLC | 0 | 0 | 0 | 0 | 0 | 5 | 0 | 0 | 2 | 7 | 0.60 | 4.20 | $204,555 | $225,000 |
| Weinberg, Eric H., Law Firm of | 0 | 0 | 0 | 0 | 0 | 7 | 0 | 0 | 0 | 7 | 0.65 | 4.55 | $221,601 | $220,000 |
| Motley, Rice LLC | 0 | 0 | 0 | 0 | 0 | 10 | 0 | 0 | 0 | 10 | 0.40 | 4.00 | $194,814 | $195,000 |
| Singleton Law Firm | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 7 | 7 | 0.50 | 3.50 | $170,463 | $180,000 |
| Murray Law Firm 1 | 0 | 0 | 0 | 1 | 0 | 3 | 0 | 0 | 1 | 5 | 0.60 | 3.00 | $146,111 | $162,000 |
| Balser, Brian K., Co., LPA | 0 | 0 | 0 | 0 | 0 | 5 | 0 | 0 | 0 | 5 | 0.50 | 2.50 | $121,759 | $130,000 |
| Lundy & Davis | 0 | 0 | 0 | 0 | 0 | 3 | 2 | 0 | 0 | 5 | 0.40 | 2.00 | $97,407 | $100,000 |
| Cunard Law Firm | 0 | 0 | 0 | 0 | 0 | 5 | 0 | 0 | 0 | 5 | 0.30 | 1.50 | $73,055 | $100,000 |
| Snapka, Turman & Waterhouse, L.L.P | 0 | 0 | 0 | 0 | 0 | 5 | 0 | 0 | 1 | 6 | 0.25 | 1.50 | $73,055 | $75,000 |
| Silverman & Fodera | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 5 | 5 | 0.30 | 1.50 | $73,055 | $73,000 |
| Brown & Crouppen, PC | 0 | 10 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 10 | 0.15 | 1.50 | $73,055 | $73,000 |
| Sheller, P.C. | 0 | 0 | 0 | 0 | 0 | 5 | 0 | 0 | 0 | 5 | 0.30 | 1.50 | $73,055 | $65,000 |
| Roda Nast, P.C. | 0 | 0 | 0 | 3 | 0 | 0 | 0 | 0 | 0 | 3 | 0.30 | 0.90 | $43,833 | $45,000 |
| Whitehead Law Firm | 0 | 0 | 0 | 0 | 0 | 3 | 0 | 0 | 0 | 3 | 0.30 | 0.90 | $43,833 | $45,000 |
| Gallagher Law Firm (TX) | 0 | 0 | 0 | 0 | 0 | 2 | 0 | 0 | 0 | 2 | 0.40 | 0.80 | $38,963 | $40,000 |
| Gianni-Petoyan, Attorneys at Law | 0 | 0 | 0 | 0 | 0 | 2 | 0 | 0 | 0 | 2 | 0.30 | 0.60 | $29,222 | $30,000 |

| Firm | Key Leader-ship Roles (125) | Trials (150) | Settle-ment (100) | Law & Briefing (100) | Settlement Implementa tion / Post Settlement Matters (100) | Discovery / Science (50) | Committee Leadership and Participation (50) | Funding (75) | Case Manage-ment (25) | Net Points | Factor for Johnson and PTO 6D criteria (.01-1.25) | Total Points | Allocation based on Points Calculation | Final Allocation |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Jones Verras | 0 | 0 | 0 | 0 | 0 | 2 | 0 | 0 | 0 | 2 | 0.30 | 0.60 | $29,222 | $30,000 |
| Robert M. Becnel | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 1 | 2 | 0.30 | 0.60 | $29,222 | $30,000 |
| Cafferty Faucher | 0 | 0 | 0 | 0 | 0 | 2 | 0 | 0 | 0 | 2 | 0.30 | 0.60 | $29,222 | $30,000 |
| Bossier & Associates, PLLC | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 1 | 0.30 | 0.30 | $14,611 | $20,000 |
| Anastopoulo & Clore, LLC | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 1 | 0.30 | 0.30 | $14,611 | $15,000 |
| Johnson & Perkinson | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 0.30 | 0.30 | $14,611 | $15,000 |
| Fayard & Honeycutt | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 0.30 | 0.30 | $14,611 | $15,000 |
| Price Waicukauski & Riley, LLC | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 1 | 0.30 | 0.30 | $14,611 | $15,000 |
| Levin Simes Kaiser & Gornick, LLP | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 1 | 0.30 | 0.30 | $14,611 | $15,000 |
| Richardson, Patrick, Westbrook & Brickman | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 1 | 0.30 | 0.30 | $14,611 | $15,000 |
| Sanders Viener Grossman, LLP | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 1 | 0.30 | 0.30 | $14,611 | $15,000 |
| Alvarez Law Firm | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 1 | 0.30 | 0.30 | $14,611 | $15,000 |
| Balkin & Eisbrouch | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 0.30 | 0.30 | $14,611 | $15,000 |
| Barnow | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 1 | 0.30 | 0.30 | $14,611 | $15,000 |
| Bartimus, Frickleton, Robertson & Gorny | | | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 1 | 0.30 | 0.30 | $14,611 | $15,000 |
| Mithoff Law Firm | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 0.30 | 0.30 | $14,611 | $15,000 |
| Robert J. DeBry | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 1 | 0.30 | 0.30 | $14,611 | $15,000 |
| Williamson & Williams | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 0.30 | 0.30 | $14,611 | $15,000 |
| Kerpsack | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0.00 | 0.00 | $0 | $10,000 |
| Friedman Law Offices | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 1 | 0.20 | 0.20 | $9,741 | $6,500 |
| Heins Mills | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 1 | 0.20 | 0.20 | $9,741 | $4,000 |
| Ted Kanner | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0.00 | 0.00 | $0 | $1,350 |
| Wold | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0.00 | 0.00 | $0 | $580 |
| Escobedo Tippet | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0.00 | 0.00 | $0 | $0 |

| Firm | Key Leader-ship Roles (125) | Trials (150) | Settle-ment (100) | Law & Briefing (100) | Settlement Implementation / Post Settlement Matters (100) | Discovery / Science (50) | Committee Leadership and Participation (50) | Funding (75) | Case Manage-ment (25) | Net Points | Factor for Johnson and PTO 6D criteria (.01-1.25) | Total Points | Allocation based on Points Calculation | Final Allocation |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Branch Law Firm | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0.00 | 0.00 | $0 | $0 |
| Lewis & Roberts, PLLC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0.00 | 0.00 | $0 | $0 |
| White Meany & Wetherall | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0.00 | 0.00 | $0 | $0 |
| Martin & Jones | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0.00 | 0.00 | $0 | $0 |
| Carey & Danis, LLC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0.00 | 0.00 | $0 | $0 |
| Freese & Goss, PLLC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0.00 | 0.00 | $0 | $0 |
| Capshaw Goss | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0.00 | 0.00 | $0 | $0 |
| Childers, Buck & Schlueter | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0.00 | 0.00 | $0 | $0 |
| Cuneo, Gilbert & LaDuca LLP | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0.00 | 0.00 | $0 | $0 |
| Zimmerman, Reed PLLP | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0.00 | 0.00 | $0 | $0 |
| Ury & Moskow LLC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0.00 | 0.00 | $0 | $0 |
| Bruce C. Dean | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0.00 | 0.00 | $0 | $0 |
| Charfoos | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0.00 | 0.00 | $0 | $0 |
| Dugan & Browne | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0.00 | 0.00 | $0 | $0 |
| Goldenberg Heller | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0.00 | 0.00 | $0 | $0 |
| Hagens Berman | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0.00 | 0.00 | $0 | $0 |
| Jacobs Burns | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0.00 | 0.00 | $0 | $0 |
| Labaton Sucharow | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0.00 | 0.00 | $0 | $0 |
| The Holman Law Firm | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0.00 | 0.00 | $0 | $0 |
| Zink, Diane K. | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0.30 | 0.00 | $0 | $0 |
| Keller Rohrback | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 1 | 0.20 | 0.20 | $9,741 | $0 |
| Langston Law Firm | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0.00 | 0.00 | $0 | $0 |

| Firm | Allocation | Hours | Hourly Rate | Multiplier of Ave. Rate |
|---|---|---|---|---|
| Alley, Clark, Greiwe & Fulmer | $365,000.00 | 1,611.25 | $226.53 | 0.511 |
| Calvarez Law Firm | $15,000.00 | 30.00 | $500.00 | 1.128 |
| Anapol, Schwartz, Weiss, Cohan, Feldman & Smalley, P.C. | $3,400,000.00 | 8,430.00 | $403.32 | 0.910 |
| Anastopoulo & Clore LLC | $15,000.00 | 607.75 | $24.68 | 0.056 |
| Andrews & Thornton | $600,000.00 | 2,005.00 | $299.25 | 0.675 |
| Ashcraft & Gerel LLP | $9,000,000.00 | 6,791.50 | $1,325.19 | 2.989 |
| Audet & Partners  LLP | $1,165,000.00 | 7,666.00 | $151.97 | 0.343 |
| Aylstock, Witkin, Kreis & Overholtz LLC | $225,000.00 | 841.50 | $267.38 | 0.603 |
| Balkin & Eisbrouch | $15,000.00 | 25.75 | $582.52 | 1.314 |
| Balser, Brian K . Co ., LPA | $130,000.00 | 592.25 | $219.50 | 0.495 |
| Barnow | $15,000.00 | 67.25 | $223.05 | 0.503 |
| Barrios, Kingsdorf & Casteix, LLP | $1,700,000.00 | 3,439.25 | $494.29 | 1.115 |
| Bartimus, Frickleton, Robertson & Gorny | $15,000.00 | 30.00 | $500.00 | 1.128 |
| Beasley, Allen, Crow, Methvin, Portis & Miles, P.C. | $40,900,000.00 | 36,747.75 | $1,112.99 | 2.511 |
| Becnel Law Firm, LLC | $455,000.00 | 13,038.25 | $34.90 | 0.079 |
| Bencomo | $327,500.00 | 1,513.50 | $216.39 | 0.488 |
| Blizzard, McCarthy & Nabers, LLP | $11,600,000.00 | 9,173.25 | $1,264.55 | 2.853 |
| Bossier & Associates, PLLC | $20,000.00 | 102.50 | $195.12 | 0.440 |
| Branch Law Firm | $0.00 | 7,087.50 | $0.00 | 0.000 |
| Brandi Law Firm | $970,000.00 | 5,214.95 | $186.00 | 0.420 |
| Brown & Crouppen, PC | $73,000.00 | 783.75 | $93.14 | 0.210 |
| Bruce E. Dean | $0.00 | 10.50 | $0.00 | 0.000 |
| Burg, Simpson, Eldredge, Hersh & Jardine, PC | $500,000.00 | 2,599.75 | $192.33 | 0.434 |
| Cafferty Faucher | $30,000.00 | 207.50 | $144.58 | 0.326 |
| Capshaw Goss | $0.00 | 152.50 | $0.00 | 0.000 |
| Carey & Danis, LLC | $0.00 | 5,518.25 | $0.00 | 0.000 |
| Charfoos | $0.00 | 396.75 | $0.00 | 0.000 |
| Childers, Buck & Schlueter | $0.00 | | | 0.000 |
| Cohen Milstein | $750,000.00 | 2,003.75 | $374.30 | 0.844 |
| Cohen, Placitella & Roth, PC | $500,000.00 | 4,964.00 | $100.73 | 0.227 |
| Cunard Law Firm | $100.00 | 2,790.75 | $0.04 | 0.000 |
| Cuneo, Gilbert & LaDuca LLP | $0.00 | 1,321.00 | $0.00 | 0.000 |
| Dugan & Browne | $0.00 | 114.25 | $0.00 | 0.000 |

| Firm | | | | |
|---|---|---|---|---|
| Engstrom, Lipscomb & Lack | $390,000.00 | 6,866.95 | $56.79 | 0.128 |
| Escobedo Tippet | $0.00 | 14,886.75 | $0.00 | 0.000 |
| Fayard and Honeycutt | $15,000.00 | 416.00 | $36.06 | 0.081 |
| Fibich, Hampton & Leebron, LLP | $610,000.00 | 2,021.25 | $301.79 | 0.681 |
| Freese & Goss, PLLC | $0.00 | 794.00 | $0.00 | 0.000 |
| Friedman Law Offices | $6,500.00 | 20.50 | $317.07 | 0.715 |
| Gainsburgh, Benjamin, Davis, Meunier & Warshauer, LLC | $2,690,000.00 | 1,220.00 | $2,204.92 | 4.974 |
| Gallagher law Firm (TX) | $40,000.00 | 1,219.50 | $32.80 | 0.074 |
| Gancedo & Nieves LLP | $600,000.00 | 3,649.25 | $164.42 | 0.371 |
| Gianni-Petoyan, Attorneys at Law | $30,000.00 | 314.75 | $95.31 | 0.215 |
| Girardi & Keese | $20,100,000.00 | 20,469.50 | $981.95 | 2.215 |
| Goldenberg Heller | $0.00 | | | 0.000 |
| Hagens Berman | $0.00 | 236.00 | $0.00 | 0.000 |
| Heins Mills | $4,000.00 | 12.50 | $320.00 | 0.722 |
| Heninger, Garrison, Davis LLC | $1,000,000.00 | 5,044.00 | $198.26 | 0.447 |
| Herman, Herman, Katz & Cotler, LLP | $32,500,000.00 | 29,483.50 | $1,102.31 | 2.487 |
| Hovde Dassow & Deets, LLC | $1,165,000.00 | 8,546.50 | $136.31 | 0.308 |
| Irpino | $877,000.00 | 2,920.00 | $300.34 | 0.678 |
| Jacobs Burns | $0.00 | | | 0.000 |
| John Hornbeck | $300,000.00 | 1,390.00 | $215.83 | 0.487 |
| Johnson & Perkinson | $15,000.00 | 847.00 | $17.71 | 0.040 |
| Jones Verras | $30,000.00 | 841.00 | $35.67 | 0.080 |
| Kasowitz, Benson, Torres & Friedman lIP | $1,100,000.00 | 4,395.40 | $250.26 | 0.565 |
| Keller Rohrback | $0.00 | 323.00 | $0.00 | 0.000 |
| Kerpsack | $10,000.00 | 54.50 | $183.49 | 0.414 |
| Kline & Specter, PC | $4,000,000.00 | 25,391.25 | $157.53 | 0.355 |
| Labaton Sucharow | $0.00 | 389.00 | $0.00 | 0.000 |
| Langston Law Firm | $0.00 | 597.50 | $0.00 | 0.000 |
| Lanier law Firm, PC | $27,000,000.00 | 33,574.50 | $804.18 | 1.814 |
| Levin Fishbein Sedran & Berman | $21,400,000.00 | 27,282.75 | $784.38 | 1.769 |
| Levin, Simes, Kaiser & Gornick, LLP | $15,000.00 | 90.00 | $166.67 | 0.376 |
| Levin, Papantonio, Thomas, Mitchell, Eshner & Proctor P.A. | $15,600,000.00 | 8,191.75 | $1,904.35 | 4.296 |
| Lewis & Roberts, PLLC | $0.00 | 3,208.00 | $0.00 | 0.000 |
| Lieff, Cabraser, Heimann & Bernstein, LLP | $6,000,000.00 | 24,391.00 | $245.99 | 0.555 |

| Firm | | Amount | Hours | Rate | Percent |
|---|---|---|---|---|---|
| Lockridge, Grindal, Nauen PLLP | | $350,000.00 | 4,712.50 | $74.27 | 0.168 |
| Locks Law Firm, LLC | | $585,000.00 | 8,881.50 | $65.87 | 0.149 |
| Lopez, Hodes, Restaino, Milman & Skikos | | $1,500,000.00 | 5,104.25 | $293.87 | 0.663 |
| Lundy & Davis | | $100,000.00 | 550.00 | $181.82 | 0.410 |
| Martin & Jones | | $0.00 | 1,943.00 | $0.00 | 0.000 |
| Matthews & Associates | | $1,400,000.00 | 10,668.50 | $131.23 | 0.296 |
| Mithoff Law Firm | | $15,000.00 | 16.00 | $937.50 | 2.115 |
| Morelli Ratner PC | | $750,000.00 | 1,833.50 | $409.05 | 0.923 |
| Motley Rice LLC | | $195,000.00 | 3,289.50 | $59.28 | 0.134 |
| Murray Law Firm | | $162,000.00 | 2,203.50 | $73.52 | 0.166 |
| Neblett, Beard & Arsenault | | $1,450,000.00 | 7,396.50 | $196.04 | 0.442 |
| Danish & Shea | | $1,640,000.00 | 3,975.75 | $412.50 | 0.931 |
| Price, Waicukauski & Riley, LLCC | | $15,000.00 | 756.00 | $19.84 | 0.045 |
| Richardson, Patrick, Westbrook & Brickman | | $15,000.00 | 111.50 | $134.53 | 0.303 |
| Robert J. DeBry | | $15,000.00 | 31.00 | $483.87 | 1.092 |
| Robert M. Becnel | | $30,000.00 | 924.25 | $32.46 | 0.073 |
| Robins, Kaplan, Miller & Ciresi LLP | | $850,000.00 | 2,400.75 | $354.06 | 0.799 |
| Robinson, Catcagnie & Robinson | | $6,000,000.00 | 21,840.25 | $274.72 | 0.620 |
| Roda Nast, P.C. | | $45,000.00 | 1,267.75 | $35.50 | 0.080 |
| Sanders, Viener, Grossman, LLP | | $15,000.00 | 112.50 | $133.33 | 0.301 |
| Sanford, Shelly A., PLLC (predecessor was PSC member until 6/8/06) | | $6,800,000.00 | 13,946.00 | $487.60 | 1.100 |
| Seeger Weiss LLP | | $40,900,000.00 | 57,693.50 | $708.92 | 1.599 |
| Sheller, P.C. | | $65,000.00 | 1,824.25 | $35.63 | 0.080 |
| Silverman & Fodera | | $73,000.00 | 327.00 | $223.24 | 0.504 |
| Singleton Law Firm | | $180,000.00 | 2,388.75 | $75.35 | 0.170 |
| Snapka, Turman & Waterhouse, LLP | | $75,000.00 | 2,926.50 | $25.63 | 0.058 |
| Ted Kanner | | $1,350.00 | 6.75 | $200.00 | 0.451 |
| Texas Consortium | | $20,095,000.00 | 21,002.25 | $956.80 | 2.158 |
| | Ranier, Gayle & Elliot, LLC | | 5,576.50 | | |
| | Williams Kherkher | | 9,032.00 | | |
| | Provost Umphrey | | 274.25 | | |
| | Watts Law Firm | | 3,530.50 | | |
| | Grant Kaiser | | 2,589.00 | | |
| The Holman law firm | | $0.00 | 212.50 | $0.00 | 0.000 |

v

| Firm | | | | |
|---|---|---|---|---|
| Ury & Moskow LLC | $0.00 | 3.00 | $0.00 | 0.000 |
| Weinberg, Eric H., law Firm of | $220,000.00 | 10,361.75 | $21.23 | 0.048 |
| Weitz & Luxenberg, P.C. | $20,000,000.00 | 17,402.75 | $1,149.24 | 2.593 |
| White, Meany & Wetherall | $0.00 | 1,412.75 | $0.00 | 0.000 |
| Whitehead law Firm | $45,000.00 | 504.75 | $89.15 | 0.201 |
| Williamson & Williams | $15,000.00 | 84.25 | $178.04 | 0.402 |
| Wold | $580.00 | 4.25 | $136.47 | 0.308 |
| Zimmerman, Reed PLLP | $0.00 | 204.75 | $0.00 | 0.000 |
| Zink, Diane K. | $0.00 | | | 0.000 |
| TOTALS | $311,885,030.00 | 563,289.80 | | |
| members of FAC (9 of 109 firms) | $230,000,000.00 | 240,019.25 | $958.26 | 2.162 |

red indicates FAC committee membership

yellow indicates PSC committee membership

oranges indicates both committee memberships

| Firm | OBI | First Grid 12-10-10 | Second Grid 1-13-11 | Difference | Percentage increase or decrease |
|---|---|---|---|---|---|
| Alley, Clark, Greiwe & Fulmer | | $364,037.00 | $365,000.00 | 963.00 | 0.26% |
| Alvarez Law Firm | | $14,561.00 | $15,000.00 | 439.00 | 3.01% |
| Onapol, Schwartz, Weiss, Cohan, Feldman & Smalley, P.C. | x | $3,349,139.00 | $3,400,000.00 | 50,861.00 | 1.52% |
| Anastopoulo & Clore LLC | | $14,561.00 | $15,000.00 | 439.00 | 3.01% |
| Andrews & Thornton | | $291,229.00 | $600,000.00 | 308,771.00 | 106.02% |
| Ashcraft & Gerel LLP | x | $8,979,576.00 | $9,000,000.00 | 20,424.00 | 0.23% |
| Audet & Partners LLP | x | $1,164,918.00 | $1,165,000.00 | 82.00 | 0.01% |
| Baylstock, Witkin, Kreis & Overholtz LLC | x | $94,650.00 | $225,000.00 | 130,350.00 | 137.72% |
| Balkin & Eisbrouch | | $14,561.00 | $15,000.00 | 439.00 | 3.01% |
| Balser, Brian K. Co., LPA | | $29,123.00 | $130,000.00 | 100,877.00 | 346.38% |
| Barrow | | $14,561.00 | $15,000.00 | 439.00 | 3.01% |
| Barrios, Kingsdorf & Casteix, LLP | | $1,698,839.00 | $1,700,000.00 | 1,161.00 | 0.07% |
| Bossier & Associates, PLLC | x | $14,561.00 | $20,000.00 | 5,439.00 | 37.35% |
| Branch Law Firm | | $281,229.00 | $0.00 | (281,229.00) | -100.00% |
| Brandi Law Firm | | $970,765.00 | $970,000.00 | (765.00) | -0.08% |
| Beasley, Allen, Crow, Methvin, Portis & Miles, P.C. | x | $40,954,148.00 | $40,900,000.00 | (54,148.00) | -0.13% |
| Becnel Law Firm, LLC | | $97,067.00 | $455,000.00 | 357,933.00 | 368.75% |
| Bencomo | | $58,246.00 | $327,500.00 | 269,254.00 | 462.27% |
| Blizzard, McCarthy & Nabers, LLP | x | $11,649,180.00 | $11,600,000.00 | (49,180.00) | -0.42% |
| Brown & Crouppen, PC | | $72,807.00 | $73,000.00 | 193.00 | 0.27% |
| Bruce E. Dean | | $0.00 | $0.00 | 0.00 | 0.00% |
| Burg, Simpson, Eldredge, Hersh & Jardine, PC | | $218,422.00 | $500,000.00 | 281,578.00 | 128.91% |
| Cafferty Faucher | | $29,123.00 | $30,000.00 | 877.00 | 3.01% |
| Capshaw Goss | | $14,561.00 | $0.00 | (14,561.00) | -100.00% |
| Carey & Danis, LLC | x | $60,673.00 | $0.00 | (60,673.00) | -100.00% |
| Charfoos | | $0.00 | $0.00 | 0.00 | 0.00% |
| Childers, Buck & Schlueter | | $0.00 | $0.00 | 0.00 | 0.00% |
| Cohen Milstein | x | $364,037.00 | $750,000.00 | 385,963.00 | 106.02% |
| Cohen, Placitella & Roth, PC | x | $533,921.00 | $500,000.00 | (33,921.00) | -6.35% |
| Cunard law firm | x | $43,684.00 | $100,000.00 | 56,316.00 | 128.92% |
| Cuneo, Gilbert & LaDuca LLP | x | $14,561.00 | $0.00 | (14,561.00) | -100.00% |
| Dugan & Browne | | $0.00 | $0.00 | 0.00 | 0.00% |
| Engstrom, Lipscomb & Lack | | $388,306.00 | $390,000.00 | 1,694.00 | 0.44% |
| Escobedo Tippett | x | $0.00 | $0.00 | 0.00 | 0.00% |
| Fayard and Honeycutt | | $1,164,918.00 | $0.00 | (1,164,918.00) | -100.00% |
| Fibich, Hampton & Leebron, LLP | | $14,561.00 | $15,000.00 | 439.00 | 3.01% |
| Freese & Goss, PLLC | x | $606,728.00 | $610,000.00 | 3,272.00 | 0.54% |
| Friedman Law Offices | | $14,561.00 | $0.00 | (14,561.00) | -100.00% |
| Gainsburgh, Benjamin, Davis, Meunier & Warshauer, LLC | | $2,038,606.00 | $2,690,000.00 | 651,394.00 | 31.95% |
| Gallagher Law Firm (TX) | | $38,831.00 | $40,000.00 | 1,169.00 | 3.01% |
| Gancedo & Nieves LLP | x | $364,037.00 | $600,000.00 | 235,963.00 | 64.82% |
| Girardi-Petoyan, Attorneys at Law | | $29,123.00 | $30,000.00 | 877.00 | 3.01% |
| Girardi & Keese | | $20,094,835.00 | $20,100,000.00 | 5,165.00 | 0.03% |
| Goldenberg Heller | | $0.00 | $0.00 | 0.00 | 0.00% |
| Grant Kaiser | | $0.00 | $0.00 | 0.00 | 0.00% |

1

EXHIBIT E

| Firm | | Amount | Amount | Adjustment | Percent |
|---|:---:|---|---|---|---|
| Hagens Berman | | $0.00 | $4,000.00 | 0.00 | 0.00% |
| Heins Mills | | | | | 0.00% |
| Heninger, Garrison, Davis LLC | × | $1,092,111.00 | $1,000,000.00 | (92,111.00) | -8.43% |
| Herman, Herman, Katz & Cotler, LLP | × | $32,537,615.00 | $32,500,000.00 | (37,615.00) | -0.12% |
| Hovde Dassow & Deets, LLC | × | $1,164,918.00 | $1,165,000.00 | 82.00 | 0.01% |
| Irpino | | $776,612.00 | $877,000.00 | 100,388.00 | 12.93% |
| Jacobs Burns | | | $0.00 | 0.00 | 0.00% |
| John Hornbeck | | $194,153.00 | $300,000.00 | 105,847.00 | 54.52% |
| Johnson & Perkinson | | $14,561.00 | $15,000.00 | 439.00 | 3.01% |
| Jones Verras | | $29,123.00 | $30,000.00 | 877.00 | 3.01% |
| Kasowitz, Benson, Torres & Friedman IIP | | $728,074.00 | $1,100,000.00 | 371,926.00 | 51.08% |
| Keller Rohrback | | | $0.00 | 0.00 | 0.00% |
| Kerpsack | | | $10,000.00 | 10,000.00 | 0.00% |
| Kline & Specter, PC | × | $4,514,057.00 | $4,000,000.00 | (514,057.00) | -11.39% |
| Langston Law Firm | | | $0.00 | 0.00 | 0.00% |
| Lanier Law Firm, PC | | $15,629,316.00 | $15,600,000.00 | (29,316.00) | -0.19% |
| Cabaton Sucharow | | $0.00 | $0.00 | 0.00 | 0.00% |
| Levin Fishbein Sedran & Berman | | $21,473,321.00 | $21,400,000.00 | (73,321.00) | -0.34% |
| Levin Papantonio Thomas Mitchell Eshner & Proctor P.A. | | $27,062,015.00 | $27,000,000.00 | (62,015.00) | -0.23% |
| Levin, Simes, Kaiser & Gornick, LLP | × | $14,561.00 | $15,000.00 | 439.00 | 3.01% |
| Lewis & Roberts, PLLC | | $194,153.00 | $0.00 | (194,153.00) | -100.00% |
| Lieff, Cabraser, Heimann & Bernstein, LLP | | $4,926,362.00 | $6,000,000.00 | 1,073,638.00 | 21.79% |
| Lockridge, Grindal, Nauen PLLP | | $364,037.00 | $350,000.00 | (14,037.00) | -3.86% |
| Locks Law Firm, LLC | × | $582,459.00 | $585,000.00 | 2,541.00 | 0.44% |
| Lopez, Hodes, Restaino, Milman & Skikos | × | $1,201,322.00 | $1,500,000.00 | 298,678.00 | 24.86% |
| Lundy & Davis | | $72,807.00 | $100,000.00 | 27,193.00 | 37.35% |
| Martin & Jones | | $94,650.00 | $0.00 | (94,650.00) | -100.00% |
| Matthews & Associates | | $1,456,147.00 | $1,400,000.00 | (56,147.00) | -3.86% |
| Mithoff Law Firm | | $14,561.00 | $15,000.00 | 439.00 | 3.01% |
| Morelli Ratner PC | × | $1,274,129.00 | $750,000.00 | (524,129.00) | -41.14% |
| Motley Rice LLC | × | $194,153.00 | $195,000.00 | 847.00 | 0.44% |
| Murray Law Firm | × | $72,807.00 | $162,000.00 | 89,193.00 | 122.51% |
| Naebelt, Beard & Arsenault | × | $728,074.00 | $1,450,000.00 | 721,926.00 | 99.16% |
| Pranish & Shea | | $1,638,166.00 | $1,640,000.00 | 1,834.00 | 0.11% |
| Price, Waicukauski & Riley, LLCC | | $14,561.00 | $15,000.00 | 439.00 | 3.01% |
| Richardson, Patrick, Westbrook & Brickman | | $14,561.00 | $15,000.00 | 439.00 | 3.01% |
| Robert J. DeBry | | $14,561.00 | $15,000.00 | 439.00 | 3.01% |
| Robert M. Becnel | | $29,123.00 | $30,000.00 | 877.00 | 3.01% |
| Robins, Kaplan, Miller & Ciresi LLP | | $606,728.00 | $850,000.00 | 243,272.00 | 40.10% |
| Robinson, Catcagnie & Robinson | | $4,926,632.00 | $6,000,000.00 | 1,073,368.00 | 21.79% |
| Roda Nast, P.C. | × | $43,685.00 | $45,000.00 | 1,315.00 | 3.01% |
| Sanders, Viener, Grossman, LLP | | $14,561.00 | $15,000.00 | 439.00 | 3.01% |
| Sanford, Shelly A., PLLC (predecessor was PSC member until 6/8/06) | | $6,795,355.00 | $6,800,000.00 | 4,645.00 | 0.07% |
| Seeger Weiss LLP | | $40,954,148.00 | $40,900,000.00 | (54,148.00) | -0.13% |
| Sheller, P.C. | | $43,684.00 | $65,000.00 | 21,316.00 | 48.80% |
| Silverman & Fodera | × | $72,807.00 | $73,000.00 | 193.00 | 0.27% |
| Singleton Law Firm | | $157,749.00 | $180,000.00 | 22,251.00 | 14.11% |

2

| Firm | | | | Amount 1 | Amount 2 | Difference | % |
|---|---|---|---|---|---|---|---|
| Snapka, Turman & Waterhouse, LLP | x | | | $582,459.00 | $75,000.00 | (507,459.00) | -87.12% |
| Ted Kamer | | | | $0.00 | $1,350.00 | 1,350.00 | 0.00% |
| Texas Consortium | | | | $20,094,835.00 | $20,095,000.00 | 165.00 | 0.00% |
| Watts Law Firm | | | | | | | |
| Williams Kherkher | | | | | | | |
| Provost Umphrey | | | | | | | |
| Ranier, Gayle & Elliot, LLC | | | | | | | |
| The Holman law Firm | | | | $0.00 | $0.00 | 0.00 | 0.00% |
| Cury & Moskow LLC | | | | $0.00 | $0.00 | 0.00 | 0.00% |
| Weinberg, Eric H., law Firm of | | x | | $220,849.00 | $220,000.00 | (849.00) | -0.38% |
| Weitz & Luxenberg, P.C. | | | | $20,022,028.00 | $20,000,000.00 | (22,028.00) | -0.11% |
| White, Meany & Wetherall | | | x | $157,749.00 | $0.00 | (157,749.00) | -100.00% |
| Whitehead law Firm | | | | $43,684.00 | $45,000.00 | 1,316.00 | 3.01% |
| Williamson & Williams | | | | $14,561.00 | $15,000.00 | 439.00 | 3.01% |
| Gold | | | | $0.00 | $580.00 | 580.00 | 0.00% |
| Zimmerman, Reed PLLP | | | | $0.00 | $0.00 | 0.00 | 0.00% |
| Zink, Diane K. | | | | $0.00 | $0.00 | 0.00 | 0.00% |
| TOTALS | | | | $309,029,830.00 | $311,984,930.00 | | |

Orange indicates both committee memberships
Yellow indicates PSC committee membership
Red indicates PAC committee membership

3