UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In re: VIOXX                          *     MDL DOCKET No. 1657
PRODUCTS LIABILITY LITIGATION         *     SECTION L
                                      *     JUDGE FALLON
                                      *     MAGISTRATE JUDGE KNOWLES

## AFFIDAVIT IN SUPPORT OF THE FAC'S
## COMMON BENEFIT AWARD TO MORELLI RATNER

W. MARK LANIER, being duly sworn, deposes and says:

1.  I own The Lanier Law Firm, PC and PLLC (collectively, "LLF") and I submit this Affidavit In Support of the Fee Allocation Committee's Response to Morelli Ratner's Objection to the FAC's Common Benefit Allocation, and in response to certain statements made by Mr. Morelli about his involvement in two of LLF's three Vioxx trials.

2.  Unlike many firms in the Vioxx litigation, including Morelli Ratner ("MR"), LLF was involved in Vioxx beginning in 2002, years before Merck pulled Vioxx from the market. LLF began prosecuting Vioxx-related personal injury actions, including deposing Alise Reicin urging Merck to stop selling Vioxx. LLF continued its leadership role by trying the first Vioxx case, Ernst v. Merck & Co., Inc. resulting in a $253 million verdict. This case took a year to prepare (including multiple mock trials done in house, meaning no expenses for a jury consulting firm were ever charged), 8 weeks to try, cost several million dollars and provided a road map with arguments and testimony used by most every firm that eventually tried a Vioxx case.

3.  LLF incurred significant time, labor and financial risk prosecuting Vioxx cases and beneficially impacting Vioxx claimants nationally. Over five years, LLF expended over $12 million to advance the Vioxx litigation, with approximately $8.5 million approved for common benefit reimbursement. LLF worked 33,598.00 hours attributed to the common benefit of all Vioxx claimants, performing many complex tasks.

4.  The FAC, of which I am a member, has now carefully reviewed MR's Fee Application on not less than three separate occasions. I will let the FAC's filing with the Court respond to the broader issues raised by MR's application and objection. However, I support the FAC's findings and allocated fee award.

5.  There are certain statements that have been made by Mr. Morelli which require a response. As such, I have selected specific quotes and provided the FAC and the Court with my responses herein.

6.  **MR's Statement:** "In the fall of 2004, Mark Lanier requested my assistance in the numerous depositions he was to take of high-ranking Merck executives." (See MR's

Objection dated February 2, 2011 at Exhibit A (a copy of MR's complete objection is annexed hereto at Exhibit 1).

**Response:** Mr. Morelli volunteered his help so he could leap frog into the litigation. Neither I, nor anyone at the Lanier Law Firm asked MR for help.

7. **MR's Statement:** "I also deposed the national sales manager, James Dunn, in New York myself." (See MR's Objection dated February 2, 2011 at Exhibit A).

**Response:** This was a deposition that was never used in any trial and did not inure to the common benefit.

8. **MR's Statement:** Re: *Ernst* – "I was involved in preparing witnesses, reviewing documents, formulating the opening statement, determining which witnesses to call as well as the order of those witnesses." (See MR's Objection dated February 2, 2011 at Exhibit A).

**Response:** MR had a limited involvement in these matters. In *Ernst*, MR was part of the team that watched me give a practice opening. MR was the one that urged me, both directly and through other lawyers and at least one expert, to "drop PowerPoint and speak from the gut." MR's major advice and concern over opening was that I *not use PowerPoint,* which MR later admitted was a mistake. Interestingly, MR later brought my PowerPoint resource into his own firm to teach him how to use it.

9. **MR's Statement:** "During the seven weeks of trial…we regularly worked late into the night reviewing documents, testimony and preparing witnesses and determining their order." (See MR's Objection dated February 2, 2011 at Exhibit A).

**Response:** Each night of the trial, a group of 10 to 15 people would gather into the war room to discuss the next witnesses. MR had one attorney in that group – Mr. Morelli. For 15 minutes this corporate session took place and then MR was through for the evening, barring some unusual assignment. One such assignment involved the preparation of the economist. This was the one witness MR put on in the Ernst trial.

10. **MR's Statement:** "We are entitled to share in the common benefit fund because both my firm and I devoted a substantial amount of time, effort and resources (See MR's Objection dated February 2, 2011 at Exhibit B).

**Response:** MR's hours and small expenses have been addressed by the FAC.

11. **MR's Statement:** "In 2005, Mark Lanier asked me to help him prepare and try the first Vioxx case…I agreed." (See MR's Objection dated February 2, 2011 at Exhibit B).

**Response:** False. Mr Morelli volunteered to come "help" perhaps not realizing the extensive trial experience I had, and my constant insistence on being the only lawyer for Plaintiff's side that takes a speaking role before the jury (save a rare witness or two). Mr Morelli explained his presence right before the start of the trial by saying that I should handle the case,

2

and he would handle the press. I instructed Mr. Morelli that I would handle both the trial and the press. As with the PowerPoint, this became a harsh exchange between us as Mr. Morelli insisted he knew best and as I told Mr. Morelli that I was doing it my way and if he wanted to stay, he could, but that I made all final decisions and would not engage in colloquy once the decision was made.

12. **MR's Statement:** "In March 2006, again on Mark Lanier's request, and with the knowledge and consent of the New Jersey PSC, I became part of the Cona/McDarby trial team.... The trial team recognized early on that we could not win causation in Cona because we had no proof of Vioxx use... Mr. Lanier wanted a mistrial... we made a deal...he would not cause a mistrial and I would do the closing." (See MR's Objection dated February 2, 2011 at Exhibit B).

**Response:** Mr. Morelli again insisted on taking a role in this case. There was considerable discussion (and email traffic) that Mr. Morelli should not be allowed at counsel table because of his disruption. Mr. Morelli took the role of counsel for Mr. Cona when it seemed apparent to me that the jury would not believe that Mr. Cona had actually taken the drug. The fear I had was that my personal credibility before the jury might suffer if the jury had tied me too directly to Mr. Cona. Additionally, I thought that the conduct of the defendant's counsel was such that the judge would allow a mistrial of the Cona case and let the McDarby case go to verdict. Mr. Morelli intervened, explained he had never lost a case, and further that he could win this one for Mr. Cona. Therefore, the decision was made to continue Mr. Cona's case with Mr. Morelli representing Mr. Cona directly while Mr. Lanier continued to represent all parties in the general case and the McDarby plaintiffs in the punitive case.

13. **MR's Statement:** "Indeed, on numerous occasions Mark Lanier told me he could not have won Ernst without me, praised my extraordinary contribution to *Cona/McDarby*, and assured me he would convey his feelings to the committee." (See MR's Objection dated February 2, 2011 at Exhibit D).

**Response:** I gave praise to many people, including Mr. Morelli. I have told the FAC that Mr. Morelli was a help and I continue to say so now. Mr. Morelli gave me many compliments and encouragement in the trials, was willing to help out when asked, and, while his advice was not always followed, offered good advice on many occasions. I have, and will, continue to say these things. That is why MR is entitled to some fee. The assessment of the FAC is a fair number.

14. **MR's Statement:** "Mark Lanier called me out of the blue (I did not know him) in fall 2004 to assist with the Ernst litigation. He did so because he required my expertise." (See MR's Objection dated February 2, 2011 at Exhibit D).

**Response:** False. I did not know Mr. Morelli by name or reputation prior to first being introduced to him by my colleague. I certainly did not seek a New York lawyer's help in *Ernst*, a case in a small town in Texas. This is further attested by MR's lack of any fee interest in *Ernst*. To put this into perspective, Mr. Morelli is expecting the Court and the FAC to believe that at a time when no one had any knowledge there would ever be a common benefit fund, and

3

in a case (*Ernst*) that was not even in the MDL, that to the detriment (we are told) of his own firm, MR gave up substantial time and carried a substantial load in the *Ernst* trial, *at the alleged request of Mark Lanier*, who had no previous experience with Mr. Morelli, and that this was done for *no fee interest whatsoever*? Surely if Mr. Morelli was truly sought out by me, if Mr. Morelli's help was deemed in great need, and if Mr. Morelli was the man behind the curtain for the *Ernst* and *Cona* trials, then Mr. Morelli would have had at least a modicum of a fee interest! The absence of any such interest confirms that this was a gratuitous involvement by MR with the expected pay off being MR would learn how to try the Vioxx case.

15.   **MR's Statement:** "I dissuaded Mr. Lanier from a presenting a closing argument to the jury that failed to include a recommendation of an appropriate award for the family. While Mr. Lanier did not want to make any specific recommendation, I told him to ask for at least $200 million; he ultimately did so." (See MR's Objection dated February 2, 2011 at Exhibit D).

**Response:** I wrote my own closing (with PowerPoint!) and went over one version with a group of 10 to 15 people. Mr. Morelli might have been among the 10-15 people. Many people made suggestions, likely including Mr. Morelli. The actual money I asked for at trial, however, was my personal decision. I decided to ask for "Merck Money" (a phrase that Morelli later called "brilliant" noting, "I wished I had thought of it". In that regard, I thought of asking for the $229 million in punitive damages based on an exhibit that stated that Merck would save $229 million dollars by delaying its warning of heart events. I also thought of asking the jury to award at least 1 million dollars for each year of Mr. Ernst's life expectancy suggesting the jury tell Merck that, "each year is worth at least one Merck party." This argument stemmed from Merck paying 1 million dollars for the launch party for Vioxx. Neither of these winning arguments came from Mr. Morelli.

16.   **MR's Statement:** Re: Committee Hearing- "Mr. Lanier yet again informed me that my contribution had been invaluable and assured me that he would let the committee know this. During the same conversation, Mr. Lanier also asked me to diminish one of the Committee member's contributions to enhance mine. I refused to do so. I therefore understand how the committee arrived at its recommended award. Mr. Lanier never spoke on my behalf during our presentation to the committee and probably did not speak for me when you met behind closed doors." (See MR's Objection dated February 2, 2011 at Exhibit D).

**Response:** The FAC's determination as to how and why it reached its result has been set forth by the FAC. Mr. Morelli makes the mistake of ignoring his limited common benefit proofs with an ill-advised personal attack in which he seeks to speculate and attribute my actions on the FAC with the FAC's determination concerning the propriety of MR's fee award. Additionally, Mr. Morelli sought my help before his presentation to the committee. I suggested to Mr. Morelli that he simply tell the truth and compare MR's work to that of the Weitz team. Instead Morelli came in and made the presentation, which the FAC has addressed and annexed to its opposition. All of the FAC, including me, spoke of MR's positive contributions. That is how MR got a common benefit award. But the FAC did so realistically with a different perspective than MR, as set forth in the FAC's opposition.

4

February 24, 2011

W. Mark Lanier
The Lanier Law Firm
6810 FM 1960 West 77069
Houston, TX 77269