Page 1

Anastopoulo and Clore, LLC

| Date | Staff | Description | Time |
|------|-------|-------------|------|
| 11/18/2005 | JSB | CA: Medical Data review for expert literature package | 4.5 |
| 11/22/2005 | JSB | CA: Medical Data review for expert literature package | 3.5 |
| | | TOTAL | 8 |

## MDL 1657
### Vioxx Products Liability Litigation Report of Member Firm Time

Reporting Period:
From: 4-1-2005
To: 4-8-2005

Firm Name: Anastopoulo & Clore, LLC

| Name of Individual | Identity of Attorney (A) Paralegal (P) Law Clerk (L) or Other (O) | Case Assessment, Development and Administration (insert number of hours) | Pre-Trial Litigation (insert number of hours) | Discovery (insert number of hours) | Trial Preparation and Trial (insert number of hours) | Appeals (insert number of hours) | Total Hours Incurred by Individual | Total Hours Incurred by Firm (Last Printed 4/18/2005) |
|---|---|---|---|---|---|---|---|---|
| Crystal Whetz | A _ P _ L _O | 6.5 | | | | | 6.5 | |
| Roy Bilbiner | A _ P _ L _ XO | 26.75 | | | | | 26.75 | |
| Joanna Kletz | A XP _ L _ O | 15 | | | | | 15 | |
| | A _ P _ L _ O | | | | | | | |
| | A _ P _ L _ O | | | | | | | |
| | A _ P _ L _ O | | | | | | | |
| | A _ P _ L _ O | | | | | | | |
| | A _ P _ L _ O | | | | | | | |
| | A _ P _ L _ O | | | | | | | |
| | A _ P _ L _ O | | | | | | | |
| | A _ P _ L _ O | | | | | | | |
| | A _ P _ L _ O | | | | | | | |
| | A _ P _ L _ O | | | | | | | |
| | A _ P _ L _ O | | | | | | | |

**Total Firm Time** ............... 48.25 Hrs.

I certify that the time documented above is accurate and correct and was incurred for the common benefit of claimants in MDL 1657.

Signature: _____

Date: 4/18/2005

Confidential Attorney Work Product

Last Printed: 4/18/2005

Page 1

Anastopoulo and Clore, LLC

| Date | Staff | Description | Time |
|------|-------|-------------|------|
| 12/5/2005 | CW | CA: Binding and creation of CD for expert review | 6.5 |
| 12/9/2005 | JSB | CA: Medical Data review for expert literature package | 3.75 |
| 12/16/2005 | JSB | CA: Medical Data review for expert literature package | 3 |
| 12/17/2005 | JSB | CA: Medical Data review for expert literature package | 6.5 |
| 12/18/2005 | JSB | CA: Medical Data review for expert literature package | 6.5 |
| 12/19/2005 | JSB | CA: Medical Data review for expert literature package | 7 |
| 12/20/2005 | JAK | CA: Update Expert Folders | 7.5 |
| 12/21/2005 | JAK | CA: Update Expert Folders | 7.5 |
| | | TOTAL | 48.25 |

# MDL 1657
## Vioxx Products Liability Litigation Report of Member Firm Time

Reporting Period:
From _____
To _____

Firm Name: _____

| Name of Individual | Identify if Attorney (A), Paralegal (P), Law Clerk (L), or Other (O) | Case Assessment, Development, and Administration (insert number of hours) | Pretrial/Discovery and Motions (insert number of hours) | Discovery (insert number of hours) | Trial and Post-Judgment Time (insert number of hours) | (insert number of hours) | (insert number of hours) | Total Hours by Individual | Total Firm PLC |
|---|---|---|---|---|---|---|---|---|---|
| Jason Kolesk | _A_ ✗P _L_ _O | 1.0 | | | | | | 1.0 | |
| Samuel Allen | ✗A _P _L_ _O | 16.5 | | | | | | 16.5 | |
| Mart Chee | ✗A _P _L_ _O | 16.5 | | | | | | 16.5 | |
| | _A_ _P _L_ _O | | | | | | | | |
| | _A_ _P _L_ _O | | | | | | | | |
| | _A_ _P _L_ _O | | | | | | | | |
| | _A_ _P _L_ _O | | | | | | | | |
| | _A_ _P _L_ _O | | | | | | | | |
| | _A_ _P _L_ _O | | | | | | | | |
| | _A_ _P _L_ _O | | | | | | | | |
| | _A_ _P _L_ _O | | | | | | | | |
| | _A_ _P _L_ _O | | | | | | | | |
| | _A_ _P _L_ _O | | | | | | | | |
| | _A_ _P _L_ _O | | | | | | | | |

Total Firm Time: 34 Hrs.

I certify that the time documented above is accurate and correct and was incurred for the common benefit of claimants in MDL 1657.

Signature: _____     Date: _____

Confidential Attorney Work Product

Last Printed: 4/18/2005

Page 1

Anastopoulo and Clore, LLC

| Date | Staff | Description | Time |
|------|-------|-------------|------|
| 7/21/2006 | JAK | CA: Presentation materials for Press meeting NC | 0.5 |
| 7/21/2006 | JAK | CA: Materials for Tampa Meeting with experts SKA | 0.5 |
| 7/21/2006 | SKA | CA: Expert interview and presentation Tampa FI | 16.5 |
| 7/21/2006 | MDC | CA: Expert interview and presentation Tampa FI | 16.5 |
| | | TOTAL | 34 |

MDL 1657
Vioxx Products Liability Litigation Report of Member Firm Time

Reporting Period:
From: _____ 2004
To: _____

Firm Name: _Ashcraft & Gerel, LLC_

| Name of Timekeeper or Individual | Identity of Attorney [A]=Partner [P]=Of Counsel [L]=Associate [O]=Other | Case Assessment, Development, and Administration (Insert number of Hours) | Trial Package/Trial Science (Insert number of Hours) | Discovery (Insert number of Hours) | Trial Preparation and Trial (Insert number of Hours) | Total (Insert number of Hours) | Total Hrs for Individuals | Total Hrs for Individuals (Insert Number of Common Benefit Hours) |
|---|---|---|---|---|---|---|---|---|
| Diana Kulesz | X A _P _L _O | 3.75 | | | | | 3.75 | |
| Samuel Allen | X A _P _L _O | 24.25 | | | | | 24.25 | |
| Mark Cloe | X A _P _L _O | 24.25 | | | | | 24.25 | |
| | _A _P _L _O | | | | | | | |
| | _A _P _L _O | | | | | | | |
| | _A _P _L _O | | | | | | | |
| | _A _P _L _O | | | | | | | |
| | _A _P _L _O | | | | | | | |
| | _A _P _L _O | | | | | | | |
| | _A _P _L _O | | | | | | | |
| | _A _P _L _O | | | | | | | |
| | _A _P _L _O | | | | | | | |
| | _A _P _L _O | | | | | | | |
| **Total Firm Time** | | | | | | | 52.25 Hrs. | |

I certify that the time documented above is accurate and correct and was incurred for the common benefit of claimants in MDL 1657.

Signature: _____    Date: _____

Confidential Attorney Work Product

Last Printed: 4/18/2005

Page 1

Anastopoulo and Clore, LLC

| Date | Staff | Description | Time |
|------|-------|-------------|------|
| 8/9/2006 | JAK | CA: Meeting arrangments for Motley Meeting NJ update | 2.25 |
| 8/9/2006 | JAK | CA: Meeting arrangements for Dallas meeting update TX | 1.5 |
| 8/9/2006 | SKA | CA: Attorney Meeting Dallas & Travel | .21 |
| 8/9/2006 | MDC | CA: Attorney Meeting Dallas & Travel | .21 |
| 8/28/2006 | SKA | CA: Update NJ & Motley on expert progress on Stroke experts | 3.25 |
| 8/28/2006 | MDC | CA: Update NJ & Motley on expert progress on Stroke experts | 3.25 |
| | | TOTAL | 52.25 |

## MDL 1657
### Vioxx Products Liability Litigation Report of Member Firm Time

Reporting Period:
From _____
To _____
Firm Name: _____

| Name of Firm or Individual | Identity of Attorney (A), Paralegal (P), Law Clerk (L), or Other (O) | Case Management, Preparation, and Implementation (total number of hours) | Pre-Trial Discovery (total number of hours) | Trial Prep (total number of hours) | Total Preparation and Trial (total number of hours) | Total number of hours | Total Fees and/or Costs |
|---|---|---|---|---|---|---|---|
| Samuel Allen | A _P _L _O | | 38 | | | 38 | |
| Mark Close | A _P _L _O | | 39 | | | 39 | |
| Jason Kaiser | A _P _L _O | 5.25 | | | | 5.25 | |
| | A _P _L _O | | | | | | |
| | A _P _L _O | | | | | | |
| | A _P _L _O | | | | | | |
| | A _P _L _O | | | | | | |
| | A _P _L _O | | | | | | |
| | A _P _L _O | | | | | | |
| | A _P _L _O | | | | | | |
| | A _P _L _O | | | | | | |
| | A _P _L _O | | | | | | |
| | A _P _L _O | | | | | | |
| | A _P _L _O | | | | | | |

**Total Firm Time** _____ 82.25 _ Hrs.

I certify that the time documented above is accurate and correct and was incurred for the common benefit of claimants in MDL 1657.

Signature: _____   Date: _____

Confidential Attorney Work Product

Last Printed: 4/18/2005

Page 1

Anastopoulo and Clore, LLC

| Date | Staff | Description | Time |
|------|-------|-------------|------|
| 9/14/2006 | SKA | D: OCR program review and outlining meetings and travel to Houston | 38 |
| 9/14/2006 | MDC | D: OCR program review and outlining meetings and travel to Houston | 38 |
| 9/20/2006 | JAK | CA: ltr Expert payment Abramson | 0.25 |
| 9/21/2006 | MDC | CA: Consult Expert Entman | 1 |
| 9/22/2006 | JAK | CA: Houston Hearing materials packaged and forward ahead of meeting at ABW | 5 |
| | | TOTAL | 82.25 |

**MDL 1657**

**Vioxx Products Liability Litigation Report of Member Firm Time**

Reporting Period:
From 10-1-2004
To 10-3-200

Firm Name: Anastopoulo & Clore LLC

| Name of Individual | Identify if Attorney (A) Paralegal (P) Law Clerk (L) or Other (O) | Case Assessment Development, and Administration (Insert number of hours) | Pre-Trial/Medical and Science (Insert number of hours) | Discovery (Insert number of hours) | Trial Preparation and Trial (Insert number of hours) | (hours) | Total Number of Individuals | From 1-1 |
|---|---|---|---|---|---|---|---|---|
| Juan Kaliski | _A_ X P _ L _ O | 3.75 | | | | | 3.75 | |
| Samuel Allen | X A _ P _ L _ O | | 23 | 47 | | | 70 | |
| Mark Clore | X A _ P _ L _ O | | 23 | 47 | | | 70 | |
| | _A_ P _ L _ O | | | | | | | |
| | _A_ P _ L _ O | | | | | | | |
| | _A_ P _ L _ O | | | | | | | |
| | _A_ P _ L _ O | | | | | | | |
| | _A_ P _ L _ O | | | | | | | |
| | _A_ P _ L _ O | | | | | | | |
| | _A_ P _ L _ O | | | | | | | |
| | _A_ P _ L _ O | | | | | | | |
| | _A_ P _ L _ O | | | | | | | |
| | _A_ P _ L _ O | | | | | | | |
| | _A_ P _ L _ O | | | | | | | |
| Total Firm Time | | | | | | | 143.75 Hrs. | |

I certify that the time documented above is accurate and correct and was incurred for the common benefit of claimants in MDL 1657.

Signature: _____   Date: 12/29/2005

Confidential Attorney Work Product

Last Printed: 4/18/2005

FAC Resp. Exhibit B -- 94

Page 2

Anastopoulo and Clore, LLC

| Date | Staff | Description | Time |
|------|-------|-------------|------|
| 10/10/2006 | JAK | CA: Shipping materials to PSC member for motion support | 1.25 |
| 10/10/2006 | JAK | CA: Expert contact for reports motion support | 2 |
| 10/10/2006 | JAK | CA: MDC phone conference set up | 0.5 |
| 10/10/2006 | SKA | PT: Prepare and Motion in Partial Summary Judgement by Merck TX | 23 |
| 10/10/2006 | MDC | PT: Prepare and Motion in Partial Summary Judgement by Merck TX | 23 |
| 10/11/2006 | SKA | D: Deposition TX | 8 |
| 10/11/2006 | MDC | D: Deposition TX | 8 |
| 10/11-31/200 | SKA | D: Travel to Depos and Hearing TX | 13 |
| 10/11-31/200 | MDC | D: Travel to Depos and Hearing TX | 13 |
| 10/27-29/200 | SKA | D: Deposition TX | 26 |
| 10/27-29/200 | MDC | D: Deposition TX | 26 |
| | | TOTAL | 143.75 |

Reporting Period:
From: 1/1/2008
To: 3/31/2008

Firm Name: Anapol Schwartz & Clore, LLC

## MDL 1657
## Vioxx Products Liability Litigation Report of Member Firm Time

| Name of Individual | Identify if Attorney (A), Paralegal (P), Law Clerk (L), or Other (O) | 1. Case Assessment, Development and Administration (Insert number of hours) | Pre-Trial Discovery and Motions (Insert number of hours) | Discovery (Insert number of hours) | Trial (Insert number of hours) | Appeals (Insert number of hours) | Total time spent by individual | Total time of case totals and disbursement for Claim Fee |
|---|---|---|---|---|---|---|---|---|
| Joann Korlesk | A P L O | 15.75 | | | | | 15.75 | |
| Mark Clore | A P L O | 4 | | | | | 4 | |
| | A P L O | | | | | | | |
| | A P L O | | | | | | | |
| | A P L O | | | | | | | |
| | A P L O | | | | | | | |
| | A P L O | | | | | | | |
| | A P L O | | | | | | | |
| | A P L O | | | | | | | |
| | A P L O | | | | | | | |
| | A P L O | | | | | | | |
| | A P L O | | | | | | | |
| | A P L O | | | | | | | |

**Total Firm Time** ........... 19.75 Hrs.

I certify that the time documented above is accurate and correct and was incurred for the common benefit of claimants in MDL 1657.

Signature: _____     Date: 10/20/2008

Confidential Attorney Work Product

Last Printed: 4/18/2005

Page 1

Anastopoulo and Clore, LLC

| Date | Staff | Description | Time |
|------|-------|-------------|------|
| 11/7/2006 | JAK | CA: Case materials for TX trial selection | 8 |
| 11/7/2006 | JAK | CA: ltr Expert payment for Zane | 0.25 |
| 11/8/2006 | JAK | CA: Case materials for TX trial selection | 7.5 |
| 11/22/2006 | MDC | CA: Conference Sandleback | 0.5 |
| 11/22/2006 | MDC | CA: Review and consult with Abramson | 3.5 |
| | | TOTAL | 19.75 |

Reporting Period:
From _____
To _____
Firm Name: Apostolopolos & Cole, LLC

# MDL 1657
## Vioxx Products Liability Litigation Report of Member Firm Time

| Name of Individual | Identify if Attorney (A), Paralegal (P), Law Clerk (L), or Other (O) | Case Assessment, Development, and Administration (insert number of hours) | Pre-Trial Discovery and Motions (insert number of hours) | Discovery (insert number of hours) | Total Preparation and Trial by (insert number of hours) | Appeal (insert number of hours) | Total to all (insert number of individual) |
|---|---|---|---|---|---|---|---|
| Law Clerk | _A _P _L _O | 2.5 | | | | | 2.5 |
| | _A _P _L _O | | | | | | |
| | _A _P _L _O | | | | | | |
| | _A _P _L _O | | | | | | |
| | _A _P _L _O | | | | | | |
| | _A _P _L _O | | | | | | |
| | _A _P _L _O | | | | | | |
| | _A _P _L _O | | | | | | |
| | _A _P _L _O | | | | | | |
| | _A _P _L _O | | | | | | |
| | _A _P _L _O | | | | | | |
| | _A _P _L _O | | | | | | |

**Total Firm Time** — 2.5 Hrs.

I certify that the time documented above is accurate and correct and was incurred for the common benefit of claimants in MDL 1657.

Date: _____

Signature: _____

Confidential Attorney Work Product

Last Printed: 4/18/2005

Page 1

Anastopoulo and Clore, LLC

| Date | Staff | Description | Time |
|------|-------|-------------|------|
| 12/29/2006 | MDC | CA: Follow up with Abramson review | 2.5 |
| | | TOTAL | 2.5 |

Reporting Period:
From: 1-1-2007
To: 1-15-2007

Firm Name: Anstedrank & Cole LLC

**MDL 1657**
**Vioxx Products Liability Litigation Report of Member Firm Time**

| Name of Individual | Identify if Attorney (A), Paralegal (P), Law Clerk (L), or Other (O) | Case Assessment, Development and Administration (Insert number of hours) | Pre-Trial Discovery and Motions (Insert number of hours) | Discovery (Insert number of hours) | Total Preparation and Trial (Insert number of hours) | Appeal (Insert number of hours) | Total Hrs per Individual |
|---|---|---|---|---|---|---|---|
| Mark Cole | A _ P _ L _ O | | | | | | |
| Aaron Belzer | A _ P _ L _ O | 3 5 | 6 | | | | 4 |
| | A _ P _ L _ O | | | | | | 3 5 |
| | A _ P _ L _ O | | | | | | |
| | A _ P _ L _ O | | | | | | |
| | A _ P _ L _ O | | | | | | |
| | A _ P _ L _ O | | | | | | |
| | A _ P _ L _ O | | | | | | |
| | A _ P _ L _ O | | | | | | |
| | A _ P _ L _ O | | | | | | |
| | A _ P _ L _ O | | | | | | |
| | A _ P _ L _ O | | | | | | |
| | A _ P _ L _ O | | | | | | |
| | A _ P _ L _ O | | | | | | |

**Total Firm Time**                                                                 9 5 Hrs.

I certify that the time documented above is accurate and correct and was incurred for the common benefit of claimants in MDL 1657.

Signature: _____   Date: _____

Confidential Attorney Work Product

Last Printed: 4/18/2005

Page 1

Anastopoulo and Clore, LLC

| Date | Staff | Description | Time |
|------|-------|-------------|------|
| 1/10/2007 | MDC | PT: Report revisions for TX motion support Abramson | 6 |
| 1/21/2007 | JAK | CA: Update Trial Case materials for 1/22/07 Wilson Hearing | 3.5 |
| | | TOTAL | 9.5 |

## MDL 1657
## Vioxx Products Liability Litigation Report of Member Firm Time

Reporting Period:
From _7-1-200?_
To _7-31-200?_

Firm Name: _Anapol___ ___ & Cohen LLC_

| Name of Individual | Identify if Attorney (A) Paralegal (P) Law Clerk (L), or Other (O) | Case Assessment Development, and Administration (Insert number of hours) | Pre-Trial Motions and Hearings (Insert number of hours) | Discovery (Insert number of hours) | Total Professional and Trial (Insert number of hours) | Other (Insert number of hours) | Total Hours per Individual |
|---|---|---|---|---|---|---|---|
| Sean Knott | X A _ P _ L _ O | 1.75 | | | | | 1.75 |
| Mark Clark | _ A _ P _ L _ O | | 21 | | | | 21 |
| | _ A _ P _ L _ O | | | | | | |
| | _ A _ P _ L _ O | | | | | | |
| | _ A _ P _ L _ O | | | | | | |
| | _ A _ P _ L _ O | | | | | | |
| | _ A _ P _ L _ O | | | | | | |
| | _ A _ P _ L _ O | | | | | | |
| | _ A _ P _ L _ O | | | | | | |
| | _ A _ P _ L _ O | | | | | | |
| | _ A _ P _ L _ O | | | | | | |
| | _ A _ P _ L _ O | | | | | | |
| | _ A _ P _ L _ O | | | | | | |
| **Total Firm Time** | | | | | | | 22.75 Hrs. |

I certify that the time documented above is accurate and correct and was incurred for the common benefit of claimants in MDL 1657.

Signature: _____   Date: _1/17/0? 7-2-0_

Confidential Attorney Work Product

Last Printed: 4/18/2005

Page 1

Anastopoulo and Clore, LLC

| Date | Staff | Description | Time |
|------|-------|-------------|------|
| 2/2/2007 | JAK | CA: Deposition confirmation | 1.25 |
| 2/4/2007 | JAK | CA: Format change video depos | 0.5 |
| 2/28/2007 | MDC | PT: Travel and Meeting with Defense Counsel TX F&J | 21 |
| | | TOTAL | 22.75 |

# ASHCRAFT & GEREL, LLP

### ATTORNEYS AND COUNSELLORS AT LAW
A LIMITED LIABILITY PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS*

SUITE 400
2000 L STREET, N.W.

## WASHINGTON, D.C. 20036

(202) 783-6400
FAX (202) 416-6392

DISTRICT OF COLUMBIA
JAMES A. MANNINO*
MARK L. SCHAFFER*
WAYNE M. MANSULLA
JAMES F. GREEN
ALLEN J. LOWE
MICHAEL H. FELDMAN
JAMES M. HANNY
MICHAEL V. KOWALSKI
H. VINCENT McKNIGHT
MICHELLE A. PARFITT
CHRISTOPHER V. TISI
GEORGE E. SWEGMAN
PETER J. VANGSNES
MICHAEL W. HEAVISIDE
SIDNEY SCHUPAK
MARTIN TRPIS
MICHAEL E. GALLANT
REBEKAH R. ARCH
SOTIRIOS B. YANAKAKIS
JERRY D. SPITZ
KERI A. JONES
SUSAN E. FATTIG
MOHAMMAD A. SYED
DAVID B. VERMONT

MARYLAND
MARTIN E. GEREL*
ROBERT G. SAMET
DAVID M. LaCIVITA
WILLIAM F. MULRONEY
ROBERT P. ENDERLE
ROBERT A. FLACK
JONATHAN S. BEISER
DENISE J. GOTTRON
DAVID M. LAYTON
AMANDA M. FALLON
ANDREW B. CALABRESE
PATRICK M. WYSONG
ALAN J. MENSH
NICHOLAS L. PHUCAS
DOROTHEA R. LEONNIG

VIRGINIA
LAWRENCE J. PASCAL
J. HUNT BRASFIELD
CRAIG A. BROWN
DAVID L. BAYNE

LEE C. ASHCRAFT
1908-1993

OF COUNSEL
LEONARD J. RALSTON, JR.*
ALTOMEASE R. KENNEDY
EDWARD J. PARR, JR.

ROCKVILLE, MD. 20852
SUITE 1002
11300 ROCKVILLE PIKE
(301) 770-3737

ALEXANDRIA VA. 22311
SUITE 650
4900 SEMINARY ROAD
(703) 931-5500

LANDOVER, MD. 20785
SUITE 301
4301 GARDEN CITY DRIVE
(301) 459-8400

BOSTON, MASS. 02109
SUITE 600
440 COMMERCIAL STREET
(617) 723-8544

BALTIMORE, MD. 21202
SUITE 1212
10 EAST BALTIMORE STREET
(410) 539-1122

October 30, 2008

**VIA OVERNIGHT MAIL**

Russ M. Herman, Esquire
Leonard A. Davis, Esquire
Herman, Herman, Katz & Cotlar, LLP
820 O'Keefe Avenue
New Orleans, Louisiana 70113

Re: *In Re Vioxx Product Liability Litigation*, MDL 1657 (E.D. La)

Dear Mr. Herman and Mr. Davis:

Please find attached a document entitled "*Affidavit of Christopher Vincent Tisi, Esquire, in Support of Ashcraft and Gerel, LLP's Application for an Award of Counsel Fees as Required by PTO 6(D) (Fee Application Guidelines)*."

If you have any questions concerning this affidavit or any of Ashcraft and Gerel, LLP's submissions, please feel free to contact me at (307) 733-6028.

Sincerely,

Christopher V. Tisi

cc:   Michelle A. Parfitt, Esquire
Robert P. Enderle, Esquire

# United States District Court
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | MDL Docket No. 1675 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| | * | |
| | * | MAGISTRATE JUDGE KNOWLES |
| | * | |
| | * | |

**AFFIDAVIT OF CHRISTOPHER VINCENT TISI, ESQUIRE
IN SUPPORT OF ASHCRAFT AND GEREL LLP'S APPLICATION FOR AN
AWARD OF COUNSEL FEES AS REQUIRED BY PTO 6 (D) (FEE APPLICAION
GUIDELINES)**

I, CHRISTOPHER V. TISI, make the following sworn statement based on personal knowledge:

1.      I am a Senior Partner in the law firm of Ashcraft and Gerel, LLP (A&G).

2.      During the course of this litigation, A&G dedicated the following Senior Partners to actively and consistently participate in this litigation in the following official MDL capacities:

·       Christopher V, Tisi:  *Plaintiffs' Steering Committee (Judicially Appointed)*; *Discovery Committee (Vice Chair)*; *Science and Expert Committee (Member)*; *Trial Selection Committee (Member)*; *Privilege Committee (Member)*; *Trial Package Committee (Member)*; *Law and Briefing Committee (Member)*.
·       Michelle A. Parfitt:  *Science and Expert Committee* (Co-Chair); *Discovery Committee* (Member).

In addition, A&G assigned one (1) additional Senior Partner, two (2) Associates and numerous Paralegals to work on the PSC committee assignments. See, Exhibit 1—Selected Biographies of A&G Attorneys.

3.      A&G's work in this litigation preceded the withdrawal of Vioxx in September 2004.  It continues through today.  A&G's commitment to Vioxx litigation has been consistent and significant in both the MDL and New Jersey.  Mr. Tisi worked almost exclusively on Vioxx related matters for over three years.

4.      To date, A&G has expended $495,241.24.00 in Vioxx-related Common Benefit MDL costs.

5.      A&G's efforts are described in its MDL time submissions.  However, I offer the following:

    A.   **Plaintiff Steering Committee Activities**:  Mr. Tisi was a judicially appointed member of the PSC.  In this capacity, Mr. Tisi regularly attended and actively participated in PSC weekly meetings, periodic PSC in-person meetings and Monthly Status and Motions hearings before the MDL Court.

    B.   **PSC Discovery Committee (PSCDC) Activities**:  Mr. Tisi was appointed by the PEC as Vice Chair of the Discovery Committee.  Along with the PSCDC co-chairs, he directed the daily activities of the PSCDC, negotiated discovery disputes with Merck and third parties, managed the PSC depositories and coordinated discovery with various state courts.  Additional specific tasks performed:

        i.   "Third Party Consultant" trial depositions:  Mr. Tisi was the primary architect of the "third party-discovery strategy" employed by the PSC.  Through his efforts, the PSC secured important independent fact witness testimony, all of which were central to Federal and State trials:
·       *Eric Topol, MD*– Chair of Cardiology, Cleveland Clinic (Introduced in MDL and state trials)
·       *David Graham, MD* –Current FDA Scientist (Introduced in numerous state trials.)
·       *Steven Nissen, MD* –President if the American College of Cardiology (Introduced in a state trial)
·       *James Fries, MD* –Professor of Medicine, Stanford University (Introduced in state trials)
·       *Jerome Avorn, MD*- Chair of Epidemiology Harvard Univ. (Introduced in MDL and state trials)

        ii   Fact Witness Trial Depositions and Involvement:  In addition to securing the appearance of the third witnesses, Mr. Tisi personally conducted and actively participated in preparation for

1

and depositions of third party and corporate trial depositions as described below:

- *Peter Honing, MD* -Vice President, Merck(Tisi--First Chair)(Aug. 8 & 9, 2005)
- *David Graham, MD* -FDA Scientist (Tisi--Second Chair with Thomas. Kline)(May 9, 2006)
- *Steven Nissen, MD*- President, American College of Cardiology(Tisi-First Chair)(Dec.12, 2006)
- *Gil Block, MD*–Clinical Investigator, Alzheimer's Trials (Tisi–First Chair)(Nov. 2, 2005)
- *Eliev Barr, MD*–Merck Researcher (Tisi–Second Chair)
- *Mal Mixon*--Cleveland Clinic (Tisi–Second Chair)

**iii.** Plaintiff and Merck Profile Forms–Mr. Tisi was the primary author and negotiator of the Plaintiff Profile Form (PPF) and Merck Profile Form (MPF). The MPF was an innovation developed by Mr. Tisi. It had not been employed previously. See PTO 18. Mr. Tisi and Leonard Davis negotiated amendments that were adopted in the MDL and New Jersey See, PTO 18A-D.

**iv.** PSC Master Interrogatories: Mr. Tisi drafted *PSC's First Interrogatories (Master Set)* and negotiated Merck's form of reply and drafted *PSC's Interrogatories Related to "Martin Report"*.

**v.** FDA Documents**:** Mr. Tisi was central to the negotiations with FDA concerning document production. He met with FDA lawyers and authored or co-authored briefs on FDA issues.

**vi.** Document Review: All A&G lawyers performed significant document review. In fact, A&G rented an apartment in New York for attorney review of marketing documents for several months.

C.   **PSC Briefing Committee**: Mr. Tisi authored /co-authored/argued at least ten (10) MDL motions and two (3) New Jersey Motions *In Limine*. Examples of briefing are as follows:

i.   *PSC Opposition to FDA Motion to Quash Subpoena to David Graham*. (MDL) (Tisi Co-authored with Michael Weinkowitz) (Tisi Argued) (Graham deposition ordered)

ii.   *Motion to Compel FDA to Produce Documents withheld and for Unredacted Documents already produced* (Tisi with Michael Weikowitz) (MDL)(Granted and denied in part)

iii.   *Memorandum in Support of Plaintiffs' Motion For Leave to Use the deposition of Eric Topol*, MD (Irvin-MDL) (Co-Authored with Leigh O'Dell) (Motion Granted)

iv.   *PSC Opposition to Merck's Motion Under Daubert to Strike the Testimony of Jerome Avorn, MD (*Tisi Authored and Argued)(Merck Motion Denied)

v.   *Memorandum in Opposition to Merck's Motion for a Protective Order relating to Dr. Farquhar-*(Tisi Briefed and Argued) (Granted in part)

vi.   *PSC Motion for Rule 37(B) (2) Remedial Relief for Merck's Examination of David Graham in Excess of the Court's Limitations* (Tisi Briefed) (Denied)

vii.   *Plaintiffs' Opposition to Merck Motion to Exclude Testimony that APPROVe Extension Data Confers Latent Cardiovascular Effect* (Tisi brief) (NJ-Hummeston-Hermans)

viii.   *Plaintiffs' Opposition to Merck Motion to exclude 1. Subgroup Analysis from VIGOR and 2. Subgroup analysis from APPROVe on Diabetics* (Tisi Brief)(NJ-Hummeston-Hermans)

D.   **Privilege Committee**: Mr. Tisi was one of several PSC lawyers to regularly appear and brief issues before Special Master Rice. These intensive efforts led to the release of previously withheld documents.

2

E    **PSC Trial Package Committee**: As a member of this committee, Mr. Tisi participated in the development of the PSC trial packages. He developed numerous cross-examination "modules" and the "Science Compendium." He co-presented these to the MDL Court twice, in 2007 and 2008.

F:    **PSC Science and Expert Committee (PSCSEC)**: Ms. Parfitt was appointed Co-Chair of the PSCSEC. With her co-chairs, she directed the PSCSEC. A&G attorneys also performed the following:

- i.    <u>Interviewed Multiple Potential Generic Experts for PSC</u>: Drs. Brown, Schang, Singh, Zipes, Lipicky, Rice, Simon (Parfitt, Green and Tisi)
- ii.    <u>Worked with PSC/ New Jersey Retained Expert Witnesses to Develop Expert Reports</u>;
  - ·    Jerome Avorn, MD–Epidemiologist (Tisi and Orendi with Jeff Grand)
  - ·    John Gueriguian, MD, FDA Expert (Tisi, Parfitt with Grand and Buchanan)
  - ·    Richard Kronmal, Ph.D–Biostatistician (David Buchanan with Chris Tisi)
  - ·    Scott Rice, MD–Biochemist (Parfitt and Tisi)
  - ·    Edward Feldman, MD–Stroke Expert (Weikowitz with Dagostino, Tisi and Parfitt)
- iii.    <u>Defended PSC/New Jersey Generic Experts Depositions</u>:
  - ·    Jerome Avorn, MD–Tisi (with Lisa Dagositio and Jeff Grand)
  - ·    Richard Kronmal, PhD (with David Buchanan)
  - ·    Richard Kapit, MD (Michelle Parfitt)
- iv.    <u>Provided Important Trial Preservation Testimony for PSC/ New Jersey Generic Experts</u>
  - ·    Jerome Avorn, M.D. –Trial Preservation Deposition (June 29 and 30, 2006)
  - ·    Wayne Ray, PhD–(prepared for, but interrupted by, announcement of settlement)

G.    **Vioxx Jury Trials:** Through Mr. Tisi, A&G actively participated in numerous Vioxx trials in both the MDL and State Courts. These activities are briefly described below:

- i.    <u>Hummeston I (NJ)</u>: Mr. Tisi spent a week in Atlantic City assisting the *Hummeston* Team. He prepared oppositions to Merck's Motions *in Limine*, assisted in preparation of cross-examination of Briggs Morrison and prepared trial video testimony of Merck witnesses.
- ii.    <u>Irvin I (MDL)</u>: Mr. Tisi (with L. Dagostino) prepared trial designations for Eric Topol. Mr. Tisi also prepared Wayne Ray, PhD, an MDL Generic Expert, for cross-examination.
- iii.    <u>Barnett (MDL)</u>: Mr. Tisi (with L. Dagostino) prepared the trial designations/ counter-designations and objections for the Avorn Deposition.
- iv.    <u>Mason (MDL)</u>: Mr. Tisi argued Merck's Motion to Strike Avorn opinions. (Sept. 7, 2006)
- v.    <u>Irvin II (MDL)</u>: Mr. Tisi spent a week with and assisted the *Irvin II* trial team. He assisted Troy Rafferty in the preparation of PSC generic FDA expert Dr. Kapit and in the cross-examination of Briggs Morrison. He also helped prepare the Reicin cross-examination for Andy Birchfield on FDA Advisory Committee findings.
- vi.    <u>Hummeston-Hermans (NJ)</u>: <u>Hummeston-Hermans</u> was initially a four-plaintiff consolidated trial. <u>Carver v. Merck</u>, an A&G case, was severed from the consolidated case a week before jury selection. Despite this, A&G continued to contribute to this trial. For example, Mr. Tisi drafted numerous Oppositions to Merck Motions *in Limine,* including those identified in ¶ 4(C) (vi) (vii) above] and spent a week in Atlantic City assisting in, among other things, preparation of Jerome Avorn, M.D. for his live testimony.

3

I, CHRISTOPHER VINCENT TISI, declare under penalty of perjury under the laws of the United States of America that the foregoing AFFIDAVIT is true and correct.

Christopher V. Tisi, Senior Partner
Ashcraft and Gerel, LLP


### NOTARIZATION OF SIGNATURE

STATE OF _Wyoming_, COUNTY OF _Teton_ SS.:
I hereby certify that on _October 30_, 200_8_, _Christopher V Tisi_ personally came before me and acknowledged under oath to my satisfaction that this person: (a) is named and personally signed this document; and (b) signed, sealed and deliver this document as his or her act and deed.

Notary Public

KATIE TOOLSON   NOTARY PUBLIC
COUNTY OF       STATE OF
LINCOLN         WYOMING
MY COMMISSION EXPIRES SEPTEMBER 3, 2012

4

**Christopher V. Tisi, Esq.**

Christopher V. Tisi is a partner in the law firm of Ashcraft and Gerel, LLP. He graduated from the State University of New York at Albany, *Cum Laude*, in 1982 and from Wake Forest School of Law in 1986. He has specialized in all areas of personal injury litigation, including product liability law, pharmaceutical liability and medical malpractice. Mr. Tisi has been admitted to practice law in federal and local courts in the District of Columbia and Maryland. He is a member of the bars of The United States Court of Appeals for the District of Columbia Circuit, The United States Court of Appeals for the Fourth Circuit and the United States Supreme Court.

Mr. Tisi has been at the forefront of major pharmaceutical litigation. Most recently, Mr Tisi was judicially appointed to the Plaintiff's Steering Committee for the proceedings entitled **In Re Vioxx product Liability Litigation**, MDL 1657 (E.D.La). In that capacity, Mr. Tisi served as Co-Chair of the Vioxx Plaintiff's Discovery Committee which oversaw all Vioxx-related discovery conducted in the federal Courts. In November 2007, the Plaintiff's Steering Committee negotiated a settlement on Vioxx cases totaling 4.85 Billion dollars.

Recently, Mr. Tisi was appointed to serve as co-chair of the Plaintiff's Discovery Committee for In **Re: Gadolinium Based Contrast Agent Litigation**, MDL 1909 (N.D.OH). In this role, he is directing master discovery against four (4) manufacturers of MRI contrast dye that caused a debilitating disease, Nephrogenic Systemic Fibrosis (NSF) in patients with kidney impairment.

Previously, Mr. Tisi was appointed to serve as a member of the Discovery and Science Committees for other large pharmaceutical mass tort cases including **In Re: Drug Pharmaceutical Litigation (Fenfluramine/Dexfenfluramine/Phentermine) Product Liability Litigation**, MDL 1203 (E.D. Pa), **In Re: Rezulin Product Liability Litigation**, MDL 1348 (S.D. N.Y.), **In Re: Phenylpropanolamine Product Liability Litigation**, MDL 1407 (D. Wash) and **In re Zyprexa Products Liability Litigation**, MDL 1596 (E.D.N.Y.). .

In addition to his Mass Tort experience, Mr. Tisi has achieved significant jury verdicts and settlements on behalf of his clients. In 2003, Mr. Tisi was co-trial counsel in a landmark case in which a jury returned a 2 million dollar ($2,000,000) compensatory and punitive damage award against the manufacturer of Rezulin, a diabetes drug. In addition, Mr. Tisi argued and won an appeal affirming the right of plaintiff's to proceed to trial in a case where his client received a transfusion of AIDS-tainted blood. He has won numerous trials and appeals in a wide variety of cases, including medical malpractice and products liability cases.

Mr. Tisi has frequently lectured to trial lawyers throughout the country on mass tort litigation and general trial practice issues. He has lectured on topics such as the use of scientific and medical evidence in a pharmaceutical case, how to try a failure to warn case, how to rebut defenses in a pharmaceutical case, how to review raw clinical trail data and the ethics of mass tort settlements.

Mr. Tisi has been active in the D.C. Bar/Trial Lawyers joint *pro bono* program and through that program provides legal representation to patients who have been denied insurance treatments related to their cancer treatment. He is a member of the District of Columbia Bar, the Maryland Bar, the American Bar Association, the American Association for Justice (AAJ), and the District of Columbia Trial Lawyers Association (DCTLA).

Mr. Tisi has been selected by his peers and listed for multiple years in the "Best Lawyers in America" legal directory. He is "AV" rated by Martindale Hubbell.

Mr. Tisi practices out of the District of Columbia office.

**Michelle A. Parfitt, Esq.**


Michelle Parfitt is a Senior Partner in the law firm of Ashcraft & Gerel, L.L.P.  Ashcraft & Gerel, L.L.P. was founded in 1953 and since that time the law firm has developed a reputation for excellence in the area of mass tort, particularly pharmaceutical, medical device and product liability litigation.  The firm of Ashcraft & Gerel, L.L.P. is one of the nations largest plaintiffs' firms operating five offices in Washington, DC, Maryland and Virginia and employing approximately 40 attorneys.  Ashcraft & Gerel, L.L.P. is also part of a consortium of firms that have partnered together to form the national consumer law firm of Herman Gerel, L.L.P.  This partnership specializes in complex consumer litigation committed to representing plaintiffs across the nation.

Over the last twenty-seven years of Michelle's professional career, she has sought to distinguish herself as a champion of individual rights as well as a leader before the bar in the area of mass torts specializing in pharmaceutical, medical device and product liability cases.  She currently heads the Mass Tort practice section of Ashcraft & Gerel, L.L.P. and has had the privilege of representing thousands of individuals in various state and federal courts across the country who have filed suit against pharmaceutical and medical device manufacturers.

Michelle received her undergraduate degree from Northeastern University and masters degree from Michigan State University where she graduated Magna Cum Laude.  She was later awarded her Juris Doctor from Hofstra Law School in 1980.  Michelle is a past president of the Trial Lawyers Association of Metropolitan Washington, D.C. having previously served as an officer and member of the Board of Governors for that association since 1998.  She is also a past committee member for the TLA-DC's Women's Trial Education programs.  Currently she sits as a Board member on The Council for Court Excellence located in Washington, D.C., which is a nonpartisan, civic organization that works to improve the administration of justice in local and federal courts.  This Council also works with related organizations nationwide.  Additionally, Michelle has been selected by her peers to be included in The Best Lawyers of America publications and the Super Lawyers publications.

Michelle has also had the opportunity to serve in numerous leadership and committee positions for the Association of Trial Lawyers of America (ATLA), the District of Columbia Bar and the Women's Bar Association of the District of Columbia (WBA).  She has been an active lecturer and author for the American Trial Lawyers Association, State Bar Associations and numerous national continuing legal education programs.

As a member of ATLA, Michelle has served as Co-Chair of its Diet Drug Litigation Group.  As a member of the District of Columbia Bar, she has served as a trial mediator appointed by the District of Columbia Court in complex personal injury matters.

With regard to the Women's Bar Association, Michelle has Co-Chaired its Sections on Litigation, Immigration and Naturalization and Executive Endorsements.  She has an AV Martindale-Hubbel rating and is licensed to practice law in the District of Columbia and the

Commonwealth of Virginia.  She is a member of the District of Columbia Bar, Virginia State Bar, The Trial Lawyers Association of Metropolitan Washington, D.C. and the Virginia Trial Lawyers Association.

Within Michelle's practice concentration in the area of pharmaceutical litigation, she has earned a reputation as one of the most knowledgeable attorneys in the areas of medical science and expert testimony preparation.  Her reputation in this area is perhaps best evidenced by the fact that she has been appointed by Judges of Federal District Courts in several jurisdictions to serve either as a member of the Steering Committee, Discovery Committee, Chair or Co-Chair of the Science and Expert Committees in a number of complex mass pharmaceutical litigations.

Michelle has been appointed to serve in various capacities in Federal Multi-District Litigations on behalf of the plaintiffs.  Some of Michelle's appointments are:

- Gadolinium MDL No. 1909, Plaintiff's Steering Committee; Science, Discovery and Expert Committee

- Fosamax MDL No. 1789, Plaintiff's Steering Committee

- Ortho Evra MDL No. 1742,  Plaintiff's Steering Committee, Science and Discovery Committee

- PPA MDL No. 1407, Plaintiff's Steering Committee, Science and Discovery Committee

- Vioxx MDL No. 1657, Science and Discovery Committee

- Zyprexa MDL No. 1596, Science and Discovery Committee

- Rezulin MDL No. 1348, Science and Discovery Committee

- Propulsid MDL No. 1355, Science and Discovery Committee

- Diet Drug MDL 1203, Science and Discovery Committee

Commonwealth of Virginia.  She is a member of the District of Columbia Bar, Virginia State Bar, The Trial Lawyers Association of Metropolitan Washington, D.C. and the Virginia Trial Lawyers Association.

Within Michelle's practice concentration in the area of pharmaceutical litigation, she has earned a reputation as one of the most knowledgeable attorneys in the areas of medical science and expert testimony preparation.  Her reputation in this area is perhaps best evidenced by the fact that she has been appointed by Judges of Federal District Courts in several jurisdictions to serve either as a member of the Steering Committee, Discovery Committee, Chair or Co-Chair of the Science and Expert Committees in a number of complex mass pharmaceutical litigations.

Michelle has been appointed to serve in various capacities in Federal Multi-District Litigations on behalf of the plaintiffs.  Some of Michelle's appointments are:

- Gadolinium MDL No. 1909, Plaintiff's Steering Committee; Science, Discovery and Expert Committee

- Fosamax MDL No. 1789, Plaintiff's Steering Committee

- Ortho Evra MDL No. 1742,  Plaintiff's Steering Committee, Science and Discovery Committee

- PPA MDL No. 1407, Plaintiff's Steering Committee, Science and Discovery Committee

- Vioxx MDL No. 1657, Science and Discovery Committee

- Zyprexa MDL No. 1596, Science and Discovery Committee

- Rezulin MDL No. 1348, Science and Discovery Committee

- Propulsid MDL No. 1355, Science and Discovery Committee

- Diet Drug MDL 1203, Science and Discovery Committee

**James F. Green, Esq.**

James F. Green, Esquire is a senior partner of Ashcraft & Gerel, L.L.P. and the national law firm of Herman Gerel, L.L.P.  Ashcraft & Gerel, L.L.P. is headquartered in Washington, D.C. and operates five offices throughout the District of Columbia, Virginia and Maryland employing approximately 45 attorneys and 125 other professionals.  Ashcraft & Gerel, L.L.P. represents plaintiffs throughout the United States in individual, group and class cases including a substantial practice area concentration in mass-tort.  Indeed, Ashcraft & Gerel, L.L.P. has represented thousands of victims of mass torts including litigation involving Asbestos, Agent Orange, Breast Implants, Norplant, Dalkon Shield, DPT Vaccine, Hard Metals Poisoning, Diet Drugs, Aviation Accidents, Transfusion-associated Aids, Vioxx, Zyprexa, PPA, Propulsid, Baycol, Fosamax and Gadolinium.

Mr. Green is a member of the Massachusetts, District of Columbia and Virginia Bars.  He is also a member of the Bar of the Supreme Court of the United States where he has had the privilege of arguing cases on behalf of plaintiffs.  He was educated at St. Anselm College where he was a member of the honor societies *Delta Sigma Rho*, *Tau Kappa Alpha*, and graduated with a Bachelor of Arts degree in 1970.  He received his Juris Doctor from Suffolk University School of Law in 1973, where he was a member of *Phi Alpha Delta*.  During his professional career, he has specialized in representing plaintiffs in workplace injury and mass toxic torts.  In 1978 he helped found the Asbestos Litigation Group.  Since that time, he has served on various State and Federal Plaintiff Committees regarding consolidated Asbestos litigation in the several state and federal districts in which Ashcraft & Gerel, L.L.P. practices.  He is one of the principal senior partners responsible for mass tort work.  He is a member of the American Bar Association and the American Association for Justice (formerly the Association of Trial Lawyers of America).  He has served as past National Chairman and Vice Chairman of committees of these associations.  He has been both an active lecturer, writer and has served on the faculty of several National Continuing Legal Education Programs.

He has been selected by his peers and listed for multiple years in the "Best Lawyers in America" legal directory.  He is "AV" rated by Martindale Hubbell.

Mr. Green has been appointed to serve in various capacities in Federal Multi-District Litigations on behalf of plaintiffs.  Some of Mr. Green's appointments are:

- Agent Orange MDL No. 381, Briefing and Discovery Committees

- Rezulin MDL No. 1348, Plaintiff's Steering Committee and Discovery Committee

- Propulsid MDL No. 1355, Discovery Committee

- PPA MDL No. 1407, Discovery Committee and Settlement Subcommittee Dexatrim

- Zyprexa MDL No. 1596, Discovery Committee

- Vioxx MDL No. 1657, Discovery and Science Committees

- Accutane MDL No. 1626, Plaintiff's Steering Committee and Discovery Committee

- Fosamax MDL No. 1789, Co-Chair Discovery Committee

- Gadolinium MDL No. 1909, Discovery Committee

**David M. Layton, Esq.**

David M. Layton was born in Wheeling, West Virginia. He attended the University of Baltimore, where he received a Bachelor of Science Degree in 1974 and John Hopkins University, where he received a Master of Administrative Science degree in 1976. After receiving his Juris Doctor degree from the University of Baltimore in 1979, Mr. Layton was admitted to the Maryland Bar in 1980 and the Bar of the United States District Court for the District of Maryland in 1983. Mr. Layton is a member of the Bar Association of Baltimore City, the Maryland State Bar Association and The Maryland Trial Lawyers Association. Before joining Ashcraft & Gerel, Mr. Layton served as an attorney with the Interstate Commerce Commission in Washington, D.C

**Jennifer L. Orendi, Esq.**

Ms. Orendi focused her undergraduate research on the neurobiological aspects of human cognition and emotion. Prior to attending law school, she was a research specialist in a neuroscience laboratory at the University of Wisconsin-Madison, where she designed and implemented functional neuroimaging studies of the neurobiological systems underlying psychiatric illnesses in children. While Ms. Orendi was employed as a clerk at a boutique firm specializing in patent and trademark prosecution, she attended the evening program at Illinois Institute of Technology's Chicago-Kent College of Law, from which she earned her Juris Doctor degree with a certificate in Intellectual Property Law in 2001.

In addition to her background in the neurosciences, Ms. Orendi contributes to her practice group over five years of experience as a litigator in the pharmaceutical and medical device fields. She has a working knowledge of FDA's regulations pertaining to the safety and efficacy of products that affect public health, including claims contained on product labeling and packaging.

**Education:** Carnegie Mellon University (B.A., 1996); Chicago-Kent College Of Law (J.D.,2001).

**Admissions:** Supreme Court of Illinois (September 2002); United States District Court for the Northern District of Illinois (October 2002); U.S. Court of Appeals for the Seventh Circuit (October 2002); District of Columbia Court of Appeals (November 2004).

**Memberships:** American Bar Association; Illinois State Bar Association; Chicago Bar Association; Food and Drug Law Institute.

**Amy C. Ishizawar, Esq.**

Amy C. Ishizawar was born in Petersburg, Virginia. She attended Wellesley College where she received her Bachelor of Arts degree, *cum laude*, in 2001. She received her Juris Doctor degree from the Washington College of Law of American University in 2004. While at the Washington College of Law, Ms. Ishizawar was a member of the Journal of Gender, Social Policy & the Law and participated in the Civil Practice clinic. Ms. Ishizawar is admitted to the Virginia State Bar, the District of Columbia Bar, and the United States District Court for the Eastern District of Virginia. She is also a member of the Virginia Bar Association and Asian Pacific American Bar Association.

# Audet & Partners, LLP

### Attorneys - at - Law

221 MAIN STREET, SUITE 1460
SAN FRANCISCO, CA 94105
TELEPHONE: 415.568.2555
FACSIMILE: 415.568.2556
www.audetlaw.com

---

## CONFIDENTIAL COMMUNICATION

---

October 30, 2008

**Via FedEx**

Russ M. Herman
Herman, Herman, Katz & Cotlar, LLP
820 O'Keefe Ave.
New Orleans, LA 70113

Re: _Audet & Partners Vioxx Common Fund Attorneys' Fee Application -- New Jersey_

Dear Mr. Herman:

Pursuant to Pre-Trial Order No. 6(D) of the Honorable Fallon, please find the enclosed Declaration of Susanne N. Scovern in support of Audet & Partners' application for an award of common benefit attorneys' fees and expenses for work performed in the New Jersey Vioxx Litigation.

If you have any questions, or should require any additional information, please do not hesitate to contact me. Thank you in advance for your consideration.

Very truly yours,

Susanne N. Scovern, Esq.
AUDET & PARTNERS, LLP

Enclosures

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

|  |  |
|---|---|
| In re: VIOXX<br><br>**PRODUCTS LIABILITY LITIGATION** | **MDL Docket No. 1657**<br><br>**JUDGE FALLON**<br><br>**DECLARATION OF SUSANNE N. SCOVERN IN SUPPORT OF AUDET & PARTNERS, LLP'S REQUEST FOR COMMON FUND ATTORNEY FEES AND REIMBURSEMENT OF EXPENSES**<br><br>**(New Jersey Common Benefit Application)** |

I, Susanne N. Scovern, declare under penalty of perjury that the following is true and correct:

1.      I am an associate at the law firm of Audet & Partners, LLP.  I make this declaration in compliance with Pre-Trial Order No. 6-D of the Honorable Eldon E. Fallon pertaining to the application for an award of common benefit attorneys' fees and reimbursement of expenses ("fee application") from the allocation fund that has been set aside for such purposes, pursuant to Orders of this Court.

2.      My firm, Audet & Partners, LLP, made a substantial contribution to the prosecution and ultimate settlement of the Vioxx litigation as outlined in the previously submitted declarations of William Audet and myself on June 27, 2008. (*Attached hereto as Exhibits "A" and "B" respectively*).

3.      William Audet, the senior partner of my firm, headed up an informal Vioxx litigation "working group" consisting of several law firms and was instrumental in establishing a number of in-person Vioxx "mini-seminars" in which our firm brought in medical and trial experts to speak about relevant Vioxx topics to the Vioxx group.

4.     I have essentially worked full-time on the Vioxx litigation from October 2004 to November 2007.  I was supported within my firm by several attorneys and paralegals.  My common benefit work occurred exclusively through the New Jersey Vioxx Litigation.  I worked in concert with and reported to the New Jersey Plaintiffs Liaison Committee (primarily David Buchanan and Jeff Grand of Seeger Weiss, as well as various attorneys at Anapol Schwartz).

5.     In furtherance of the common benefit to all Vioxx clients, my firm working with Robert Dassow (Hovde Dassow & Deets, LLP) prosecuted several New Jersey Vioxx trial pool cases and litigated specific issues for the common benefit of all plaintiffs including but not limited to the following activities:

(i) Expedited discovery and trial preparation of *Benjamin C. LoPresti v. Merck & Co., Inc*, a New Jersey bellwether trial selected by Judge Higbee for trial in April 2006;

(ii) Extensively worked on discovery related to the production of Merck sales representatives' monthly American Express statements and expense reports which exposed the strong financial support and gifting relationship between the Merck and Merck sales representatives with Vioxx prescribers (Ken Soh of the Lanier Law Firm provided critical supportive documentation which assisted in a series of motions before the Court on this issue);

(iii) Organized, subsidized and participated with members of the New Jersey liaison counsel (Chris Seeger, David Buchanan, Sol Weiss and David Jacoby and others) in two week-long Vioxx trial strategy seminars presented by Rodney Jew of CDS, a well-respected trial preparation and consulting firm in Palo Alto, California;

(iv) Participated in the expedited discovery of several cases for New Jersey trial consideration, *Jennie Tena (Administrator) v. Merck*, (ATL-1690-05 MT) and *Richard Allen v. Merck*, (ATL-162-05MT);

(v) Raised to the Court and aggressively pursued discovery relating to a series of inconsistent physician compensation Merck MPF responses - this was ultimately traced to the faulty methodology utilized by Merck/Dechert to "mine" physician compensation data;

(vi) Uncovered Merck's failure to generate 1099s to their network of physicians' professional corporations for compensation they received from Merck for "clinical research" from 2000 to 2004.

(vii) On October 29, 2007, just days before the announced settlement, I along with Jeff Grand, Jerry Kristal and Mike Weinkowitz representing New Jersey plaintiffs participated in a special hearing called by Judge Higbee concerning the deficient and incomplete production of the sales representatives' custodial and personnel files—the result of which certainly would have effected production for all future cases in the litigation.

6.    My firm made significant payments to the New Jersey Vioxx Litigation Fund whenever requested by the New Jersey Plaintiffs Liaison Committee.  Additionally, my firm contributed significantly to common benefit expenses as detailed in our June 2008 submission to Wegmann Dazet.

7.    Despite adverse jury verdicts in New Jersey and elsewhere in the country during the course of the Vioxx litigation, my firm's and my personal and professional commitment to aggressively prosecute Vioxx cases and bring Merck to trial never waned.  For example, at the

3

time of the settlement in November 2007, we were preparing for additional depositions of Merck

Company representatives responsible for the generation of 1099s to prescribers.

I declare, under penalty of perjury, that the above is true and correct on this day,

October 30th, 2008, in San Francisco, California.

_____

Susanne N. Scovern

# EXHIBIT A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: VIOXX | MDL Docket No. 1657 (JBW) |
| PRODUCTS LIABILITY LITIGATION | SECTION L |
| THIS DOCUMENT RELATES TO: | JUDGE FALLON<br>MAG. JUDGE KNOWLES |
| ALL ACTIONS | DECLARATION OF WILLIAM M.<br>AUDET IN SUPPORT OF AUDET &<br>PARTNERS, LLP'S REQUEST FOR<br>COMMON FUND ATTORNEY FEES<br>AND REIMBURSEMENT OF<br>EXPENSES |

I, William M. Audet, declare under penalty of perjury that the following is true and correct:

1.        I am the founding partner of Audet & Partners, LLP (p/k/a Alexander Hawes & Audet, LLP).  Under my direction, members of my firm have committed substantial attorney and paralegal time and incurred significant out-of-pocket expenses, including common fund/assessment payments to the "New Jersey Litigation Fund," in litigation against Merck & Co. relating to the Vioxx litigation.  In addition to providing daily assistance to our clients, my firm's efforts have been geared toward pre-trial activities for the 'common' benefit of all Plaintiffs and in assisting lead and other counsel in the New Jersey State Vioxx litigation (before the Honorable Judge Carol E. Higbee) and California State Vioxx litigation (before the Honorable Victoria Chaney).

2.      Since late 2004, my firm has incurred significant attorney and paralegal time and out-of-pocket expenses in "common benefit" lodestar and in "common benefit" unreimbursed costs. The time and expense reports submitted with this declaration exclude any time or costs associated with any "marketing" and individual case costs. We had two cases on trial track in New Jersey (*LoPresti v. Merck & Tena v. Merck*) and one case on the trial track in California (*Andreasen v. Merck*). My firm currently represents approximately one-hundred clients, with the great majority of cases filed in the New Jersey State Court.

3.      My declaration is submitted to provide this Honorable Court (and any Court appointed Fee Committee) an overview of my firm's "common" benefit work and efforts to assist other firms with Vioxx cases.

4.      Early on in the Vioxx litigation, I and other attorneys at my firm, established and lead an informal Vioxx litigation "working group" of at least two dozen law firms for the specific purpose of sharing information regarding the Vioxx litigation and working directly with consultants and experts to assist in the Vioxx litigation.

5.      Among other activities, I initiated weekly conference calls with other plaintiffs' counsel in this working group with cases pending in state and federal court. During these conference calls, I (or a member of my firm or any other attorney in the working group) would provide important updates to other lawyers with pending cases, provide information regarding upcoming court deadlines and hearings, and share any discovery issues that had recently developed in the case. I also paid for and shared expert work product with members of my Vioxx litigation group. In so doing, others firms and I reduced cost and inefficiencies with respect to the Vioxx litigation as whole.

6.      In addition to the weekly conference calls, I convened a number of in-person Vioxx "mini-seminars" in which my firm brought in medical and trial experts to speak about

2

relevant Vioxx topics to the Vioxx group. The meetings were usually convened at a time and place of other Vioxx-related plaintiffs' meetings and generally supplemented information provided at the other meetings. During the course of the litigation, my firm paid for the costs associated with the attendance at the conference by these medical and trial experts.

7.      In addition to heading up this small plaintiffs working group, my firm was fortunate to be allowed the opportunity by the New Jersey counsel, including Seeger Weiss, LLP, and other lead New Jersey attorneys to participate in common benefit work and to pursue important discovery issues before Judge Higbee. As outlined in the accompanying Declaration of Susanne Scovern, the attorney in my firm assigned essentially full time to the New Jersey Vioxx litigation, both Chris Seeger and David Buchanan provided my firm with opportunities to assist in the overall prosecution of the Vioxx litigation. Among other issues, my firm, with certain co-counsel (Robert Dassow of Hovde, Dassow & Deets, LLC in particular), aggressively prosecuted issues related to, among other important topics, sales representatives' scripts, bonuses, physician benefits, bonus payments and IRS reporting relating to physician "payments" by Merck.

8.      In addition, my firm set up a number of plaintiffs-only trial strategy seminars presented by Rodney Jew of CDS, a well-respected trial preparation and consulting firm. My firm invited a number of firms to participate in the trial strategy sessions. In order to induce firms to come to the seminar, my firm arranged and paid for the initial costs associated with the trial preparation programs in Palo Alto, California. Among other attendees included Chris Seeger, David Buchanan, Sol Weiss, and David Jacoby — attorneys with early trial cases in New Jersey.

9.      In addition to providing common benefit assistance in the New Jersey litigation, my firm also had a total of three cases selected for potential early trial before Judge Higbee and

before Judge Chaney. Under the trial selection plan implemented by Judge Chaney, one of my firm's cases (Andreasen) was selected for early trial. The Andreasen case was subject to extensive pretrial discovery and motion practice. One unique issue related to marketing activities by Merck directed at military hospitals and medical facilities, on base. Unfortunately, despite our efforts and a number of pretrial motions held before Judge Chaney, the case turned out not to be suitable for trial due to heavily disputed "usage" issues. Another, more suitable case was finally selected for trial by the parties with the approval of the California Court.

10.    In addition to the Andreasen case, as detailed in the accompanying declaration of firm attorney Susanne Scovern, our firm was involved in two early trial cases in the New Jersey Vioxx Litigation before Judge Higbee.

11.    Although no specific guidelines for submission of attorneys' fees or reimbursement of expenses were implemented by the State Courts, to the best of our ability, members of my firm that have submitted time to the Court utilizing the guidelines outlined by the MDL Court in PTO No. 6C (and any supplemental instructions provided to us).

12.    To the extent practical, the time and expenses submitted by my firm has only included attorney and paralegal "common benefit" efforts. Attorneys Chris Seeger and David Buchanan, as well as Sol Weiss's office, Mark Lanier's office and Weitz & Luxenberg's offices, provided solid leadership to the New Jersey plaintiffs' counsel, along with access to critical work product and guidance on pre-trial issues relevant to our cases and the Vioxx litigation as a whole.

13.    With limited exception, since our first filing in the Vioxx litigation, a representative of my firm attended every conference before Judge Higbee and every plaintiff's conference convened by the New Jersey lead counsel.

14.    With respect to the California Vioxx litigation, Tom Girardi's firm provided us with significant assistance and guidance in the Andreasen case, as well as in the California

litigation as a whole. In addition, the firm provided us with access to critical work product and also provided guidance with respect to our firm's depositions in the Andreasen case.

15.     My firm's hourly rates are as follows: Partner William M. Audet ($550.00); Attorney Susanne Scovern ($450.00); Attorney Joshua Ezrin ($375.00); Attorney Adel Nadji ($290.00); Attorney Kevin Thomason ($295.00); Paralegal/Medical Intern Steve Garratt ($110.00); Paralegal/IT Specialist Byron Barrett ($95.00).

I declare, under penalty of perjury, that the above is true and correct on this day, June 27, 2008.

_____
William M. Audet

# EXHIBIT B

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **In re: VIOXX** | **MDL Docket No. 1657 (JBW)** |
| **PRODUCTS LIABILITY LITIGATION** | **SECTION L** |
| **THIS DOCUMENT RELATES TO:** | **JUDGE FALLON** |
| **ALL ACTIONS** | **MAG. JUDGE KNOWLES** |
| | **DECLARATION OF SUSANNE N. SCOVERN IN SUPPORT OF AUDET & PARTNERS, LLP'S REQUEST FOR COMMON FUND ATTORNEY FEES AND REIMBURSEMENT OF EXPENSES** |

I, Susanne N. Scovern, declare under penalty of perjury that the following is true and correct:

1.      I am an associate at the law firm of Audet & Partners, LLP ("Audet").  I make this declaration in compliance with Pre-Trial Order 6-C of the Honorable Fallon pertaining to the application for an award of attorneys' fees and reimbursement of expenses ("fee application") from the fund that has been set aside for such purposes, pursuant to Orders of this Court.  Such fees and expenses have accrued in connection with the substantial efforts rendered by this law firm on behalf of the common benefit of all plaintiffs who settled their claims as part of the Vioxx Litigation.  The matters set forth in this declaration are based upon my personal knowledge.

2.      I attended Tulane University and the University of Michigan as an undergraduate. I received a Bachelor of Arts with highest honors and distinction in 1985 from the University of Michigan. I received a Juris Doctor degree from the University of Iowa in 1991, where I was member of the Iowa Law Review. I have been an associate with Audet & Partners, LLP (f/k/a Alexander, Hawes & Audet, LLP) since 2002. Previously, I was an associate at the law offices of Wotman, Kors and Cloutier, LLP, and an associate at Robins, Kaplan, Miller & Ciresi in San Francisco, California. I am responsible for the day-to-day management of the Vioxx litigation at Audet & Partners, LLP.

3.      I participated in the weekly Audet & Partners sponsored Vioxx conference calls with several plaintiffs' law firms during which our firm led roundtable discussions regarding the Vioxx litigation, shared discovery developments, and spoke with leading consultants and experts who provided advice and guidance to our Vioxx group. I also attended and actively participated in our firm's in-person Vioxx "mini-seminars" in which medical and trial experts made presentations and spoke about relevant Vioxx topics to our group.

4.      Under my direction and supervision, working with other attorneys and staff at Audet & Partners, LLP, we prosecuted several New Jersey Vioxx trial cases and litigated specific issues for the common benefit of all plaintiffs in the Vioxx litigation as described in more detail below.

5.      In November 2005, The Honorable Carol E. Higbee scheduled, among six other cases, *Benjamin C. LoPresti v. Merck & Co., Inc.*, for trial on April 24, 2006. My firm, with co-counsel Robert Dassow of Hovde, Dassow & Deets, LLC, and Michael Ferrara of The Ferrara Law Offices, participated in the expedited discovery and trial preparation of *LoPresti v. Merck*, which was set for trial in April 2006. To that end, we reviewed thousands of documents associated with the custodial and personnel files of over a dozen detail

representatives and took their depositions. We were able to successfully compel the

production of sales representatives' monthly American Express statements and expense reports

which further confirmed the true monetary and "gifting" relationship between the Merck sales

representatives and Vioxx prescribers. We initiated several meet and confer teleconferences

regarding improper trade secret redactions, "other product" redactions, and redactions without

explanation. At Judge Higbee's request, we submitted several examples of improper

redactions for her in camera review. As part of the *LoPresti* trial work-up, we also took and

defended the depositions of approximately ten (10) fact witnesses. We met with and prepared

both general and specific causation experts for deposition and trial, and were involved in

numerous law and motion discovery hearings related to the *LoPresti* case.

      6.     In addition to working up *LoPresti* case specific discovery, I participated with

members of the New Jersey liaison counsel in two week-long Vioxx trial strategy seminars

presented by Rodney Jew of CDS, a well-respected trial preparation and consulting firm. Other

attendees included Chris Seeger, David Buchanan (lead counsel in *Robert McFarland v. Merck*

*& Co., Inc.*) and Sol Weiss and David Jacoby (lead counsel for *Patricia Hatch, Administrator*

*v. Merck & Co., Inc.*). Judge Higbee had originally scheduled both *McFarland* and *Hatch* to

be tried with *LoPresti* in April 2006.

      7.     During the course of the New Jersey Vioxx litigation, Mr. Dassow and I

participated in the expedited discovery of several cases for New Jersey trial consideration,

including following: *Jennie Tena (Administrator) v. Merck*, (ATL-1690-05 MT) and *Richard*

*Allen v. Merck*, (ATL-162-05MT). The *Tena* and *Allen* cases stand out as they involved

particular issues of common benefit to the Vioxx litigation as a whole.

FAC Resp. Exhibit B -- 134

i)  *Jennie Tena (Administrator) v. Merck*, (ATL-1690-05 MT)

The *Tena* case also involved critical issues relevant to plaintiffs' common benefit in the

Vioxx litigation--namely Merck's severely deficient and inconsistent Merck Profile Form

("MPFs", a/k/a Defendant Fact Sheets or "DFS") responses relating to prescriber compensation

payment data, honorariums, and consulting agreements with Merck.  Utilizing the *Tena* MPF and

Supplemental MPFs as an exemplar, and comparing those compensation responses to the

prescriber's 1099s (certified by Bernard Wisniewski, Director of Merck's Procure to Pay Service

Center, on three separate occasions in an attempt to explain away repeated inconsistencies) for

the relevant years at issue, we were able to illustrate the blatant inconsistencies of Merck MPFs

responses regarding physician compensation.  After comparing over fifty (50) MPF responses

from cases within our firm and cases from other NJ Vioxx plaintiffs firms (including Kline &

Specter and Martin Jones among others), we argued to the Court that the inconsistencies we

found permeated all Merck MPF responses and production relating to physician compensation.

We were then permitted by Judge Higbee to take the depositions of two Merck officials, Janet

Heins and Janet Scott, who were both, at separate times, responsible for compilation of the

physician compensation data in the MPF responses and who were both signatories to all MPF

produced in the Vioxx litigation.  In conducting our MPF physician compensation discovery, Mr.

Dassow and I discovered that although multiple databases and data sources were available to

search compensation information, the searches by Merck were not effectively performed.  Merck

relied on the names of physicians or their entities as entered by the plaintiff of their PFS, instead

of relying on the EIN or Social Security number of the physician prescriber.  If the plaintiff did

not list the prescriber's associated entity, compensation for that entity was excluded from the

MPF.  If the Plaintiff misspelled the prescriber's name, compensation for that prescriber was

listed as not available.  The flawed methodology that Merck/Dechert implemented to mine

physician compensation data accounted for the widespread discrepancies in Merck's MPF physician compensation responses and accompanying productions. We were preparing for our second day of deposition with Ms. Scott when the Settlement was announced.

Importantly, in the process of investigating the discrepant MPF compensation issues, we uncovered that Merck failed to generate 1099s to physicians' professional corporations for compensation they received as a result of clinical research. Merck's failure to report physician compensation to the IRS and issue the requisite 1099s added to the inconsistent and discrepant physician compensation reporting in the MPFs. This issue was addressed at the July 2007 Case Management Conference by Judge Higbee. Our efforts in this regard assisted the common benefit in that we successfully shed light on the deficiencies of the MPF responses relating to physician compensation in pursuit of our goal to have those served responses in the Vioxx litigation stricken and supplemented with more credible data.

At the time of the settlement, Mr. Dassow and I were actively investigating several avenues associated with the physician compensation issue, including Merck's failure to disclose compensation data payments to physicians from (1) the Arcoxia clinical studies; (2) third-party affiliated entities such as universities, private pharmaceutical systems "rebates", Merck-Medco; and, (3) the Merck Foundation grants program – all monetary sources that should have been mined for data and disclosed pursuant to the request language in the MPF.

ii)    *Richard Allen v. Merck,* (ATL-162-05MT)

In August 2006, the *Allen* case was a among a pool of 39 cases selected by Judge Higbee in which the parties completed expedited discovery and from which trial cases were selected for a January 2007 trial. In the *Allen* case, Mr. Dassow and I prepared and took numerous fact witness depositions involving sales representatives, prescribing physicians, treating physicians, plaintiff as well as family member depositions. Although the *Allen* case was not immediately

selected for the January 2007 trial setting, Mr. Dassow and I continued with the prosecution of the case. We focused our attention on the upper level sales management or Regional Business Managers ("RBM"), who were responsible for the day to day management of dozens of sales representatives and the regional operations of Merck's Vioxx sales.  In February 2007, after several failed meet and confers with Dechert attorney Ben Barnett, Judge Higbee ordered the first RBM deposition to be taken in the New Jersey Vioxx litigation.  Mr. Dassow and I reviewed over 75,000 documents relating to Richard Brown, the RBM in the *Allen* case.  We participated in numerous teleconferences with Merck attorneys regarding issues that constantly plagued production of the sales representative custodial files in the New Jersey Vioxx litigation: redactions, missing documents (emails/WAR reports), and the sporadic rolling (ie "supplemental") production of custodial files oftentimes produced subsequent to the witness' deposition.  On October 29, 2007, just days before the announced settlement, I along with Jeff Grand, Jerry Kristal and Mike Weinkowitz representing New Jersey plaintiffs participated in a special hearing called by Judge Higbee concerning the deficient and incomplete production of the sales representatives custodial files—the result of which certainly would have effected production for all future cases in the New Jersey Vioxx litigation. (At that time, Judge Higbee took the matter under submission.  Ten days later the settlement was announced.)

I declare, under penalty of perjury, that the above is true and correct on this day, June _27_, 2008, in San Francisco, California.

Susanne N. Scovern

# Audet & Partners, LLP

### Attorneys-at-Law

221 MAIN STREET, SUITE 1460
SAN FRANCISCO, CA 94105
TELEPHONE: 415.568.2555
FACSIMILE: 415.568.2556
www.audetlaw.com

---

## CONFIDENTIAL COMMUNICATION

---

October 30, 2008

**Via FedEx and Email (VioxxMDL@hhke.com)**

Russ M. Herman
Herman, Herman, Katz & Cotlar, LLP
820 O'Keefe Ave.
New Orleans, LA 70113

Re:  *Audet & Partners, LLP's Vioxx Common Fund Attorneys' Fee Application*

Dear Mr. Herman:

Pursuant to Pre-Trial Order No. 6(D) of the Honorable Fallon, please find the enclosed Declaration of Joshua C. Ezrin in support of Audet & Partners, LLP's application for an award of common benefit attorneys' fees and reimbursement of expenses for work in the California state Vioxx cases (JCCP No. 4247).

If you have any questions, or should require any additional information, please do not hesitate to contact me.  Thank you in advance for your consideration.

Very truly yours,

Joshua Ezrin, Esq.
AUDET & PARTNERS, LLP

cc:     Thomas V. Girardi
        James O'Callahan

Enclosures

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

In re: VIOXX

PRODUCTS LIABILITY LITIGATION

MDL Docket No. 1657

JUDGE FALLON
MAG. JUDGE KNOWLES

DECLARATION OF JOSHUA C.
EZRIN IN SUPPORT OF AUDET &
PARTNERS, LLP'S REQUEST FOR
COMMON FUND ATTORNEYS'
FEES AND REIMBURSEMENT OF
EXPENSES FOR CALIFORNIA
COMMON BENEFIT

I, Joshua C. Ezrin, declare under penalty of perjury that the following is true and correct:

1.      I am an Associate Attorney at the law firm of Audet & Partners, LLP.  I make this Declaration in compliance with Pre-Trial Order No. 6(D) of the Hon. Eldon Fallon pertaining to the application for an award of common benefit attorneys' fees and reimbursement of expenses ("fee application") for common benefit and trial work in the California state Vioxx cases (JCCP No. 4247) .

2.      With limited exception, I worked almost exclusively on the Vioxx litigation from October 2004 to November 2007 (though not all such work was performed on the common benefit work that is the subject of this Declaration).  Although our firm only had six (6) cases filed in JCCP No. 4247, Audet & Partners consistently volunteered for, and performed common benefit work at the request of and in conjunction with California Plaintiffs' Liaison Counsel.

3.      At the request of Jim O'Callahan at Girardi & Keese, I spent significant time and expense screening our California cases to propose a suitable case for a bellwether trial. The *Paul Andreasen v. Merck & Co., Inc.*, case was ultimately proposed by Plaintiff's Liaison Counsel for trial, and was selected by Judge Chaney as one of only three cases in the California Vioxx trial pool.

4.      The *Andreasen* case (set for trial on September 17, 2007), was subject to expedited discovery, deposition coordination, motion practice, and expert witness preparation, such that I was working on that bellwether case virtually full-time from approximately March to July 2007.

5.      As part of the *Andreasen* pre-trial work, with the assistance of Tom Girardi and Jim O'Callahan of Girardi & Keese, and in coordination with the Judge Chaney, William Audet and I worked on compelling documents relating to Merck's marketing of Vioxx to military and VA medical facilities. I was advised by Plaintiffs' Liaison Counsel that, regardless of the

2

outcome of the *Andreasen* case, the discovery we generated with respect to Merck's military marketing would provide a potential benefit to other similar cases in which the plaintiff was prescribed Vioxx by a VA or military physician.

6.  At the request of Mr. O'Callahan, and in furtherance of our efforts to determine the methodology employed by Merck to market Vioxx to the VA/military, I engaged in informal discovery and multiple meet-and-confers and almost daily calls and emails with defense counsel. In addition, Mr. Audet and I conducted extensive document review of Merck-produced documents, drafted and prepared for a deposition undertaken by William Audet, the founding partner of this firm (the deposition was also attended by Jim O'Callahan in his capacity as Plaintiffs' Liaison Counsel). We also conducted a telephonic deposition of Captain Patrick O'Shea, a prescribing physician regarding among other issues, Merck's marketing to the Vandenberg Air Force Base, wherein Mr. Andreasen was prescribed Vioxx.

8.  Throughout the preparation of the *Andreasen* trial, and the discovery conducted by my firm, I and William Audet were in constant contact with Plaintiffs' Liaison Counsel Jim O'Callahan and participated in multiple informal hearings and case management conferences with Judge Chaney limited to counsel with cases in the California Vioxx trial pool. Moreover, I assisted Mr. Audet it providing advice, counsel, and feedback to Liaison Counsel with respect to discovery scheduling and a host of other pre-trial matters.

9.  After expending significant time and resources in preparing for a bellwether trial, in consultation with Jim O'Callahan (and the other attorneys with cases in the California Vioxx trial pool) we reluctantly pulled the *Andreasen* case from the trial pool due to the incomplete records from the military base which did not reflect the full scope of Mr. Andreasen's Vioxx exposure and would have resulted in a "mini-trial" on usage. Otherwise, my firm was fully

FAC Resp. Exhibit B -- 141

prepared to expend whatever further time and resources were necessary to take the *Andreasen* case to trial.

10.     Throughout the Vioxx litigation, I worked directly with the senior partner of my firm, William M. Audet, and the other primary Vioxx associate at our firm, Susanne Scovern, in aggressively prosecuting the general liability case against Merck in the California coordinated action. In spite of the adverse jury verdicts in California, New Jersey and elsewhere, our firm continued to fund the litigation and offer new cases for trial, as well as work on a host of other general liability issues (see the Declarations of William Audet attached hereto as Exhibit A). Indeed, at one point, our firm had cases set for trial in both California and New Jersey. In sum, Audet & Partners consistently produced outstanding common benefit work-product throughout the pendency of the litigation.

I declare, under penalty of perjury, that the above is true and correct on this day, October _31_ , 2008, in San Francisco, California.

Joshua C. Ezrin

4

# EXHIBIT A

**EXHIBIT A**

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

In re: VIOXX

PRODUCTS LIABILITY LITIGATION

THIS DOCUMENT RELATES TO:

ALL ACTIONS

MDL Docket No. 1657 (JBW)

SECTION L

JUDGE FALLON
MAG. JUDGE KNOWLES

DECLARATION OF WILLIAM M. AUDET IN SUPPORT OF AUDET & PARTNERS, LLP'S REQUEST FOR COMMON FUND ATTORNEY FEES AND REIMBURSEMENT OF EXPENSES

I, William M. Audet, declare under penalty of perjury that the following is true and correct:

1.     I am the founding partner of Audet & Partners, LLP (p/k/a Alexander Hawes & Audet, LLP). Under my direction, members of my firm have committed substantial attorney and paralegal time and incurred significant out-of-pocket expenses, including common fund/assessment payments to the "New Jersey Litigation Fund," in litigation against Merck & Co. relating to the Vioxx litigation. In addition to providing daily assistance to our clients, my firm's efforts have been geared toward pre-trial activities for the 'common' benefit of all Plaintiffs and in assisting lead and other counsel in the New Jersey State Vioxx litigation (before the Honorable Judge Carol E. Higbee) and California State Vioxx litigation (before the Honorable Victoria Chaney).

2.    Since late 2004, my firm has incurred significant attorney and paralegal time and out-of-pocket expenses in "common benefit" lodestar and in "common benefit" unreimbursed costs.  The time and expense reports submitted with this declaration exclude any time or costs associated with any "marketing" and individual case costs.  We had two cases on trial track in New Jersey (*LoPresti v. Merck & Tena v. Merck*) and one case on the trial track in California (*Andreasen v. Merck*).  My firm currently represents approximately one-hundred clients, with the great majority of cases filed in the New Jersey State Court.

3.    My declaration is submitted to provide this Honorable Court (and any Court appointed Fee Committee) an overview of my firm's "common" benefit work and efforts to assist other firms with Vioxx cases.

4.    Early on in the Vioxx litigation,  I and other attorneys at my firm,  established and lead an informal Vioxx litigation "working group" of at least two dozen law firms for the specific purpose of sharing information regarding the Vioxx litigation and working directly with consultants and experts to assist in the Vioxx litigation.

5.    Among other activities, I initiated weekly conference calls with other plaintiffs' counsel in this working group with cases pending in state and federal court.  During these conference calls, I (or a member of my firm or any other attorney in the working group) would provide important updates to other lawyers with pending cases, provide information regarding upcoming court deadlines and hearings, and share any discovery issues that had recently developed in the case.  I also paid for and shared expert work product with members of my Vioxx litigation group.  In so doing, others firms and I reduced cost and inefficiencies with respect to the Vioxx litigation as whole.

6.    In addition to the weekly conference calls, I convened a number of in-person Vioxx "mini-seminars" in which my firm brought in medical and trial experts to speak about

2

relevant Vioxx topics to the Vioxx group.  The meetings were usually convened at a time and place of other Vioxx-related plaintiffs' meetings and generally supplemented information provided at the other meetings.  During the course of the litigation, my firm paid for the costs associated with the attendance at the conference by these medical and trial experts.

7.      In addition to heading up this small plaintiffs working group, my firm was fortunate to be allowed the opportunity by the New Jersey counsel, including Seeger Weiss, LLP, and other lead New Jersey attorneys to participate in common benefit work and to pursue important discovery issues before Judge Higbee.  As outlined in the accompanying Declaration of Susanne Scovern, the attorney in my firm assigned essentially full time to the New Jersey Vioxx litigation, both Chris Seeger and David Buchanan provided my firm with opportunities to assist in the overall prosecution of the Vioxx litigation.  Among other issues, my firm, with certain co-counsel (Robert Dassow of Hovde, Dassow & Deets, LLC  in particular), aggressively prosecuted issues related to, among other important topics, sales representatives' scripts, bonuses, physician benefits, bonus payments and IRS reporting relating to physician "payments" by Merck.

8.      In addition, my firm set up a number of plaintiffs-only trial strategy seminars presented by Rodney Jew of CDS, a well-respected trial preparation and consulting firm.  My firm invited a number of firms to participate in the trial strategy sessions.  In order to induce firms to come to the seminar, my firm arranged and paid for the initial costs associated with the trial preparation programs in Palo Alto, California.  Among other attendees included Chris Seeger, David Buchanan, Sol Weiss, and David Jacoby — attorneys with early trial cases in New Jersey.

9.      In addition to providing common benefit assistance in the New Jersey litigation, my firm also had a total of three cases selected for potential early trial before Judge Higbee and

3

before Judge Chaney. Under the trial selection plan implemented by Judge Chaney, one of my firm's cases (Andreasen) was selected for early trial. The Andreasen case was subject to extensive pretrial discovery and motion practice. One unique issue related to marketing activities by Merck directed at military hospitals and medical facilities, on base. Unfortunately, despite our efforts and a number of pretrial motions held before Judge Chaney, the case turned out not to be suitable for trial due to heavily disputed "usage" issues. Another, more suitable case was finally selected for trial by the parties with the approval of the California Court.

10. In addition to the Andreasen case, as detailed in the accompanying declaration of firm attorney Susanne Scovern, our firm was involved in two early trial cases in the New Jersey Vioxx Litigation before Judge Higbee.

11. Although no specific guidelines for submission of attorneys' fees or reimbursement of expenses were implemented by the State Courts, to the best of our ability, members of my firm that have submitted time to the Court utilizing the guidelines outlined by the MDL Court in PTO No. 6C (and any supplemental instructions provided to us).

12. To the extent practical, the time and expenses submitted by my firm has only included attorney and paralegal "common benefit" efforts. Attorneys Chris Seeger and David Buchanan, as well as Sol Weiss's office, Mark Lanier's office and Weitz & Luxenberg's offices, provided solid leadership to the New Jersey plaintiffs' counsel, along with access to critical work product and guidance on pre-trial issues relevant to our cases and the Vioxx litigation as a whole.

13. With limited exception, since our first filing in the Vioxx litigation, a representative of my firm attended every conference before Judge Higbee and every plaintiff's conference convened by the New Jersey lead counsel.

14. With respect to the California Vioxx litigation, Tom Girardi's firm provided us with significant assistance and guidance in the Andreasen case, as well as in the California

4

litigation as a whole.  In addition, the firm provided us with access to critical work product and also provided guidance with respect to our firm's depositions in the Andreasen case.

15.     My firm's hourly rates are as follows:  Partner William M. Audet ($550.00); Attorney Susanne Scovern ($450.00); Attorney Joshua Ezrin ($375.00); Attorney Adel Nadji ($290.00); Attorney Kevin Thomason ($295.00); Paralegal/Medical Intern Steve Garratt ($110.00); Paralegal/IT Specialist Byron Barrett ($95.00).

I declare, under penalty of perjury, that the above is true and correct on this day, June 27, 2008.

_____
William M. Audet

## AFFIDAVIT IN SUPPORT OF COMMON BENEFIT FEE APPLICATION

Pursuant to PTO 6(d), Justin Witkin, on behalf of the law firm of Aylstock, Witkin, Kreis & Overholtz, P.L.L.C. ("AWKO"), submits this affidavit to the Vioxx Allocation Committee in support of AWKO's common benefit fee application. Mr. Witkin is the managing partner of AWKO and has personal knowledge of the facts supporting the assertions contained herein.

1.   **The Extent to Which AWKO Made a Substantial Contribution to the Outcome of the Litigation.** AWKO attorneys filed their first Vioxx case in 2002 and have been involved in the litigation ever since. During that long period of time, AWKO attorneys have worn many hats - participating in administrative work, document review, discovery, depositions, drafting, trial preparation, trial package creation and strategic consultation. Critically, for purposes of this inquiry, **AWKO's participation in these areas has come at the request of the PSC and/or the Court.** AWKO's time submission is not filled with make-work, collateral "review time" and/or unauthorized hours.[1] Rather, its time submission is an extremely conservative estimate of the hours expended at the direct request of the PSC or Court and exclusively for the common benefit of the litigation.  AWKO's work in multiple important aspects of this litigation, as more fully described below, directly contributed to the successful resolution in this litigation.

AWKO's Roles in the Vioxx Litigation

a.   **State Liaison Committee.** Justin Witkin was appointed by the Court to serve on the State Liaison Committee ("SLC"). In that capacity, Mr. Witkin's duties included communicating with vioxx litigation attorneys from around the country regarding the MDL proceedings and facilitating their participation in the MDL or access to MDL resources where appropriate.[2]  That duty was carried out through the drafting of a regular newsletter, frequent phone calls and in person meetings at Vioxx status conferences and attorney conferences.  Beyond his communication duties, Mr. Witkin's duties as a member of the SLC included completing various tasks assigned the SLC by the Court and/or the PSC. Among the projects Mr. Witkin worked on as an SLC member was drafting the state court litigants' sales representative discovery brief and litigation of that issue. Together with his partner, Neil Overholtz, Mr. Witkin took the lead on this very important and highly contested issue.  Mr. Witkin also assumed a primary role in organizing the Court's remand research project wherein the SLC collected state Vioxx cases with pending motions to remand, categorized the same and presented the Court with a monthly report, and the PSC's Rapid Remand Project which sought to identify cases and attorneys who would be good candidates for immediate remand as part of the overall effort to increase trial pressure on Merck.

b.   **Trial Preparation and Strategy.** Multiple AWKO attorneys, at the request of the Andy Birchfield with the Beasley Allen firm, assisted in the trial preparation for the *Irvin v. Merck* case that was tried before Judge Fallon. Their work included research for and drafting motion in limines on a wide assortment of trial issues, performance of deposition cuts, strategic consultation with Beasley Allen attorneys on a variety of FL law issues, and the maintenance of an on-call status for issues that arose throughout the trial of that case.  Because of the unique aspects of Florida law that applied in the Irvin case, AWKO's work on that case was a very important part of the trial preparation and trial thereof.[3]

c.   **Sales and Marketing Committee Work.** Neil Overholtz and Justin Witkin served on the Sales and Marketing Committee.  Mr. Overholtz, at the request of PSC member Mark Robinson, performed numerous critical tasks on that committee including, but not limited to, drafting the Rule 45 Third Party Subpoenas and Supoenas Duces

---

[1] In an abundance of caution, we note that one time submission – 14 hours for Bryan Aylstock's work on a focus group in Aurora, Colorado, was not pre-authorized by the PSC.  That work was done in response to the PSC's call for trial-ready stroke cases. AWKO focus grouped one of its stroke client cases to determine whether it would be a good candidate for early trial selection. AWKO made that work product available to the PSC.

[2] Effectively carrying out this duty required Mr. Witkin to stay abreast of the entirety of the proceedings in the MDL. That in turn, required Mr. Witkin to read and review voluminous Vioxx pleadings, correspondence and reports as well as talking with PSC members.  The conservative nature of AWKO's time submission is reflected in the fact that Mr. Witkin submitted very few hours for this necessary "background" work.

[3] As one of the early cases tried in the MDL, AWKOs assistance in the trial of the Irvin case inured to the common benefit of all Vioxx claimants.

Tecum which were used to compel the testimony of Merck sales representatives in Florida and other states, developing the PSCs sales representative deposition outline, scheduling the PSCs initial Merck sales representative depositions and serving subpoenas for the same, deposing, along with Leonard Davis with Lead Counsel's office, the person most knowledgeable regarding the format, type, storage, and retention of the field sales force automation database used by Merck to track the activities of the sales representatives detailing Vioxx, and the negotiation and drafting of the agreement with Merck that called for the rolling production of the Electronically Stored Information from the sales call database in an electronic and searchable format.  Because of his extensive experience with the sales and marketing discovery issues, Mr. Overholtz was asked to speak at seminars and provide educational materials to other lawyers about the sales and marketing aspects of the case, including Ms. O'Dell with the Beasley Allen firm.  Mr. Witkin's contributions in this area included work on the sales representative deposition outline, the sales representative interview project (a PSC investigation into the possibility of interviewing former Merck sales representatives) where he researched numerous states' laws and ethical rules and coordination of sales representative depositions.

d.   **Science Committee Work**.  Bryan Aylstock served on the Science Committee at the outset of this litigation.  In his role on that committee, Mr. Aylstock familiarized himself with the causation issues faced by the plaintiffs in the litigation and worked to identify and develop experts for the PSC on those issues.  Such experts included a Harvard and Cleveland Clinic trained cardiothoracic surgeon who had published multiple papers on issues involving the heart.  Mr. Aylstock also facilitated meetings between experts and members of the various trial teams in the run-up to trial in both the MDL and the New Jersey litigation.

e.   **Stroke Trial Package**.  AWKO attorneys led by Bryan Aylstock, senior attorney Benjamin Anderson and associate Paula Bruner, in response to a request from the PSC, have played an important role in the development of a PSC trial package for stroke victims.  At a time when the situation looked bleak for the plaintiffs' attorneys – particularly with regard to stroke cases, AWKO stepped up and attended multiple in person and telephone meetings to assist the PSC in creating the scientific and liability package that ultimately helped to ensure that Merck resolved the stroke cases.  AWKO attorneys worked with Penny Hermann and others at the PSC to create the stroke case document coding form, and to review and code documents related to the stroke case.

f.   **Document Review**.   AWKO attorneys repeatedly responded to the call for attorneys to review and code documents at both the New York and New Orleans depositories.  Senior attorneys Ken Smith and Benjamin Anderson spent many hours reviewing documents on a variety of scientific issues and custodial files.  Similarly, associate Paula Bruner spent extensive time reviewing and coding documents on topics including sales and marketing, stroke issues, clinical trial data, and medical and scientific studies.  Finally, Mr. Overholtz, in his role on the Sales and Marketing committee reviewed key sales and marketing documents to assist in preparation of the sales and marketing deposition outlines for use by the PSC.

2.   The Quality of AWKO's Common Benefit Work.  As reflected in the previously submitted resumes of the AWKO common benefit attorneys, AWKO's attorneys are all experienced product liability litigators.  The fact that key members of the PSC and PEC – Andy Birchfield, Chris Seeger, Mark Robinson and Richard Arsenault[4] – and the Court, in and through its appointment to requests of the SLC, repeatedly requested AWKO attorney assistance in multiple phases of this litigation is a testament to the quality of common benefit work performed by AWKO.

3.   The Consistency, Quantum, Duration and Intensity of AWKO's Commitment to the Litigation.  A review of the hours submitted by AWKO reveals that AWKO contributed to this litigation consistently from its inception through the point of settlement.  Whenever called upon by the PSC or the Court to assist on a project, AWKO committed all available resources to that project – typically to the exclusion of all other work for a period of time – until the task was complete.

4.   AWKO's Level of Partner Participation.  The vast majority of the common benefit hours submitted by AWKO were performed by AWKO partners and senior attorneys.[5]  The contributions made by AWKO associate attorneys were a small percentage of the total AWKO common benefit time.

---

[4] Some of those PSC and PEC members sit on this Allocation Committee.

[5] AWKO senior attorneys, Kenneth Smith and Ben Anderson, each have over twenty years of product liability litigation experience.  During the period in which they performed common benefit work, these attorneys held the official title of "of-counsel" to AWKO.

5.  <u>AWKO's Membership in the PEC, the PSC, or the NPC</u>.  AWKO attorneys were not named to any of these committees.  Justin Witkin was appointed by the Court to serve on the State Liaison Committee.

6.  <u>The Jurisdiction in which AWKO's non-MDL Common benefit Work Occurred</u>.  AWKO has not submitted time for non-MDL common benefit work.

7.  <u>AWKO's Activities Surrounding Trials of Individual Vioxx Claimants that Impacted Proceedings on a Common Benefit Level</u>.  As detailed above, AWKO provided significant assistance on the *Irvin* trial and its work product in the expert and sales and marketing committees was used by trial counsel in other Vioxx cases taken to trial.

8.  <u>AWKO's Leadership Positions on Regular Committees Involved in Common Benefit Work</u>.  While the SLC had no official leadership structure, Justin Witkin assumed a vice-chair role to Dawn Barrios on that committee, making presentations to the Court in her absence and generally working with her to coordinate the activities on the SLC.  As noted above, AWKO attorneys took leadership roles on critical issues in work performed by the Sales and Marketing Committee, and the Stroke Trial Package development.

9.  <u>AWKO's Participation in Ongoing Activities that are Intended to Provide Common Benefits</u>.  AWKO stands ready to perform additional work as called upon by the PSC, PEC or the Court.

10.  <u>Whether AWKO was involved in Vioxx Litigation Prior to its Withdrawal from the Market on September 30, 2004</u>.  AWKO filed its first Vioxx case on December 30, 2002.[6]  It would litigate that case and others it filed, throughout 2003 and 2004 leading up to the withdrawal of Vioxx from the US market.  AWKO later began working with Seeger Weiss, filing additional Vioxx cases prior to the withdrawal of Vioxx from the market.[7]  Notably, AWKO has submitted none of its extensive 2002-2004 Vioxx litigation time for compensation as common benefit work.

11.  <u>AWKO's Involvement in Vioxx Litigation Prior to the JPMDL and how such Involvement Inured to the Common Benefit</u>.  Despite AWKO's involvement in the Vioxx litigation prior to the JPMDL, it has not submitted common benefit time for that work.

12.  <u>AWKO's Contribution to the Funding of the Litigation</u>.  While AWKO was not assessed as a member of the SLC, it has incurred $31,962.43 in MDL work related costs.

13.  <u>AWKO's Commitment to the Litigation in the Face of Multiple Adverse Verdicts</u>.  A review of AWKO's time submission reflects the fact that it never waivered in its commitment to this litigation.  On the contrary, it made a substantial commitment to the development of the Stroke trial package after the majority of the adverse verdicts had occurred and at a time when many were questioning whether the stroke case could be viable.

14.  <u>Other Relevant Factors</u>.  As noted above, AWKO has been very conservative in the submission of its common benefit time, omitting many hours that could reasonably be claimed as common benefit time.  AWKO stands ready to address any other matter that the Allocation Committee may deem relevant to the evaluation of its common benefit time submission.

**Submitted this 31st Day of October, 2008.**

_____
Justin G. Witkin
Aylstock, Witkin, Kreis & Overholtz, PLLC

---

For all purposes relevant to this submission, however, they were employees of AWKO as they worked exclusively for AWKO and AWKO bore all financial responsibility for their work.

[6] *Smith et al. v. Merck et al.*, Case No. 2002-566-KS (Cir. Ct of Lincoln County, MS, Dec. 30, 2002).

[7] *Price v. Merck & Co., Inc.*, Case No. 2004-0408 (Cir. Ct. of Copiah County, MS, May 2004).

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

|  |  |
|---|---|
| IN RE: VIOXX | *     MDL Docket No. 1657 |
|       PRODUCTS LIABILITY LITGATION | * |
|  | *     SECTION: L (3) |
|  | * |
|  | *     JUDGE FALLON |
|  | *     MAG. JUDGE KNOWLES |
|  | * |
|  | * |

** \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \***

# AFFIDAVIT OF DAWN M. BARRIOS
# SUBMITTED PURSUANT TO PRE-TRIAL ORDER NO. 6(D)

STATE OF LOUISIANA
PARISH OF ORLEANS

BEFORE ME, the undersigned authority, personally came and appeared:

## DAWN M. BARRIOS

who, after being duly sworn, did depose and state the following, based on personal knowledge:

1. Affiant's and her law partner, Bruce S. Kingsdorf's, qualifications are in their Curricula Vitae, attached as Exhibits "A" and "B", respectively, which vitae support the caliber of their firm, Barrios, Kingsdorf & Casteix ("BKC"). BKC submitted all common benefit time and expenses in accord with PTO Nos. 6 and 6C.[1]

2. BKC's named partners did all attorney work. It has no associate attorneys, only the 3 named partners. To devote as much time to Vioxx as BKC did oftentimes was a hardship as other projects had to be re-assigned or delayed while Affiant attended to Vioxx related work.[2]

3. Affiant substantially contributed to the success of the Vioxx MDL as she held a leadership role in the MDL as the Chair of the State Liaison Committee ("SLC") [3](Exhibit "C"); as Judge Fallon charged the SLC with the responsibility for all pending remands (Exhibit "D"); as the PSC put her on several strategic committees[4] and assigned her important work; as the Court appointed Affiant as liaison between the Attorneys General cases, the PSC and Merck (Exhibit "E"); as Ed Blizzard chose her as trial counsel in *Mason* (MDL trial 11/06); and in executing the Court's mandate to the SLC by coordinating state cases with the MDL, as needed and requested, and as described below.

4. Besides Misters Herman, Seeger and Birchfield, Affiant, as Chair of the SLC, is the only other plaintiffs' counsel who routinely reports to the Court at each status conference. Of the 40 status conferences held in the MDL, Affiant personally appeared at 38.[5]

5. Affiant's commitment to the MDL was constant, consistent, and never waned, despite defense verdicts. In fact, adverse verdicts were a catalyst for Affiant working with even more fervor. Recognizing that remand orders would create stress for Merck, Affiant began a concerted effort to emphasize the remands in the SLC's monthly report to the Court, which prompted several judicial pronouncements regarding remands.[6]

6. Another of Affiant's contribution to the MDL was on the trial selection committee. When that committee asked Affiant to search for and identify quality cases to try in the MDL, she turned to seasoned Texas litigators who generally litigate outside of an MDL.[7] As a result, Ed Blizzard submitted several cases, and his *Mason* case was ultimately selected for trial. Mr. Blizzard's involvement in the MDL was as a direct consequence of Affiant's efforts to attract quality cases into the MDL.[8]

7. Affiant was on the *Mason* trial team, and served as Mr. Blizzard's local counsel for the 2 week plus trial. Affiant undertook tasks necessary to prepare *Mason* for trial in the MDL, particularly concentrating on Motions in Limine, jury selection, preparing plaintiff and his wife for their direct and cross-examination testimony, coordinating between the trial team and the PSC so the trial team had access to all information beneficial to it within the PSC's control, and participating in trial.

---

[1] No time was recorded for receipt and review of correspondence, emails or pleadings unless Affiant was intimately involved in the project. And, as Affiant's office is on Poydras Street, Affiant has no travel time billed for New Orleans based activities or Court.
[2] Although Affiant functioned as the state-federal liaison counsel in the Bextra-Celebrex MDL, the level of commitment to the Vioxx MDL necessarily precluded Affiant from as active participation in the Bextra-Celebrex MDL as in Vioxx. Unlike other counsel who are involved in virtually every MDL, Affiant selected Vioxx as one to which she dedicated substantial time.
[3] Judge Fallon appointed the SLC, and the SLC voted Affiant as Chair.
[4] Affiant served on the following committees: discovery, timeline, warnings, sales and marketing, law and briefing, science and experts (stroke committee), third party payor, and trial selection.
[5] For the other 2 conferences which Affiant was unable to attend, Affiant nonetheless prepared materials for the Court and briefed the appearing attorney on the information to report to the Court.
[6] In one instance, the *Garza* case was remanded; the jury returned a plaintiff's verdict of $32,000,000.
[7] Affiant attended several PSC meetings to discuss case selection, and after the *Mason* trial date was set, to help prepare for trial.
[8] Mr. Blizzard's talent, experience, and work ethic were recognized by the leadership in the MDL, and he was chosen to negotiate the personal injury settlement.

8. Affiant was proud to be appointed to the SLC by Judge Fallon as an MDL Court relies heavily on the coordination and cooperation between the MDL and state court litigants and judges.[9] Since a hallmark of coordination is communication, the SLC periodically circulated newsletters to all Vioxx plaintiffs' attorneys informing them of MDL trials, rulings and orders, and seeking information for the PSC. Obtaining the names and contact information for each Vioxx plaintiffs' counsel for the newsletters was extremely time consuming and tedious, and electronically forwarding each of the approximately 1,000 newsletters tied up BKC servers for hours. [10] To disseminate MDL information as widely as possible, Affiant also gave periodic MDL updates at Vioxx or mass tort national seminars.[11]

9. Affiant met with Texas' Judge Wilson and provided him with requested MDL information, trial dates, orders, and status; and on several occasions, Affiant met with Judge Higbee regarding same.

10. As Chair of the SLC, Affiant worked with Doug Marvin and Ted Mayer on depositions cross-noticed to clear dates for each deposition with all counsel, and with these gentlemen and the PSC on the state attorneys' participation in those depositions. Affiant also assisted with the master deposition calendar, and helped with the issue of whether the Texas MDL could use the MDL experts, issues relating to PTO No. 9.[12]

11. One of the SLC's first acts was granted it by Judge Fallon- to file a Memorandum in Support of Unrestricted Discovery Related to Merck's Sales Representatives.[13] When Merck strenuously sought to block all access to information on its sales representatives, the SLC had the opportunity to do a memo on the need for such information since that issue was critical for both state court and MDL litigants. The result was Merck having to defend against 2 separate committees of the MDL, the PSC and SLC.

12. The most time consuming task of Affiant's was the remand project assigned by the Court. The detail oriented and lengthy process must be described to be understood. In order to identify all pending remands, each case's name and counsel had to be determined, and then copies of all relevant remand pleadings had to be obtained. (The record sent to the MDL Court often did not contain these pleadings.) To obtain the information, Affiant pled with Merck (to no avail), met with representatives of the Eastern District's Clerk's office, searched Pacer and the master docket, reviewed thousands of pleadings, and contacted plaintiffs' counsel and/or the transferor courts. Collecting these cases and copies of the pleadings took Affiant and others in her office 3 years, with the project still not being complete. A database of cases with remand motions was created, hyperlinking the name of each pleading with a copy of the pleading, grouping cases by state, describing the legal grounds for removal and remand, and providing a remand order (if any). (This process was done for more than 900 cases. Judge Fallon later requested the SLC to identify and collect all cases removed twice.) Once the master remand database was created, Pacer, the MDL docket, Transfer Orders and CTOs were checked and re-checked.[14] As a result of this work, Judge Fallon was given discs of approximately 955 cases with remands and orders.

13. An adjunct to the remand project was for the SLC to determine what pending remands will be made moot by registration in the settlement. Several times monthly BKC submit all plaintiffs with pending remands to Brown Greer ("BG") to determine the individual claimant's status in the settlement program (many cases have multiple plaintiffs/claimants). This process includes researching and providing to BG the MDL docket number, all plaintiff's counsel listed on remand, and transferor court information. Affiant is presently working on this and will be unable to do the final report for several months.

14. Affiant's willingness to do any job asked competently and efficiently became well known. The PSC or PEC assigned Affiant numerous tasks over the course of the last 3 1/2 years, such as securing additional plaintiffs for the personal injury and medical monitoring state wide classes urged in the Motion for Class Certification and screening their records ("finding heads for headless classes"); identifying competent litigators with good cases with pending remands for the Rapid Remand project; hosting committee meetings; researching Fifth Circuit

---

[9] Affiant is also on the Propulsid MDL's SLC and used the contacts made there and throughout her career to establish the cooperation.
[10] Given the limitations of a small firm, the newsletters on several occasions had every staff member involved.
[11] Affiant quickly became the attorney non-MDL counsel called for information on the MDL, and approximates receiving more than 100 inquiries. Examples of questions regard the applicability of MDL assessments to cases in which a cross notice of deposition was filed, the participation agreement, when a case would be remanded, the status of MDL orders, getting access to the depository and trial package.
[12] PTO No. 9 concerns the right of a state court litigant to cross notice expert depositions.
[13] Of course, the PSC filed the master memo.
[14] Remand orders made outside the MDL were included for Judge Fallon's convenience.

law on class certification of multiple states; working on a mass Motion in Limine database containing all motions, replies, and rulings for all trials to use; obtaining jury charges and interrogatories for the *Irwin* trial team; assisting with deposition of plaintiff Diaz who was scheduled for trial in the MDL and coordinating with Diaz's counsel[15]; creating jury charges for *Diaz*; screening plaintiffs nominated for trial; collecting all class actions; gathering consistent complaints about Merck Profile Form responses; searching for stroke documents in the depository, and attempting to identify 250 cases for case specific discovery (motion filed by PSC, but never argued).

15. The settlement raised the question of which cases were still viable in the MDL. Using the remand database as a foundation, Affiant compiled a list of all cases seeking non- PI or "economic" relief[16] for presentation to the Court. From this list Judge Fallon extracted the Attorneys General suits, and has directed Affiant to coordinate the common discovery.[17]

16. Affiant's dedicated work for the MDL is far from complete. Affiant has just begun the task of coordinating the common discovery on Attorneys General cases ("AG") with Merck, and is discussing the Joint Motion to Lift the Stay with Merck in order to proceed with discovery. Working with Mr. Seeger and Mr. Davis, Affiant will obtain all AG counsel's signatures on a confidentiality agreement, and will thereafter continue to coordinate a master set of common discovery. At the Court's suggestion to determine if there are common issues to try, Affiant has researched the causes of action and damages in the AG cases, and prepared a chart on the similarities and differences between each case.

17. As Judge Fallon recognized in *Murphy Oil*, the number of hours submitted by a firm for common benefit is merely an approximation.[18] For several reasons, Affiant's common benefit hours submitted are less than the number of hours of actual common benefit work performed. Due to Hurricane Katrina in August 2005 and the resulting inability to return to her office until November 2005, Affiant believes that much common benefit time went unrecorded, even though substantial common benefit work was done during the time evacuated, particularly on the remand project.[19] Moreover, Affiant was a member of the *Mason vs. Merck* trial team in the MDL in November 2006. As Affiant did not at the time envision *Mason* work being MDL work, many hours and tasks apparently went unrecorded. Affiant also failed to report all hours worked on the remand project and the SLC newsletters as the practicalities of establishing a remand information database and the creation and dissemination of approximately 1,000 electronic newsletters was so incredibly time consuming Affiant chose not to record hours on many occasions. And finally, Affiant will next week submit pre-April 8, 2005 hours to Wegmann Dazet.

18. BKC has previously submitted 2,085.25 hours for common benefit recognition, 1,373.50 of which were spent by Affiant and Kingsdorf. Affiant submits that a truly accurate reflection of actual common benefit attorney time to date is closer to 1,600 hours.

19. BKC has submitted $16,677.66 in held expenses and $972.70 in shared expenses, all of which remain outstanding.

DAWN M. BARRIOS

**SWORN TO AND SUBSCRIBED
BEFORE ME, THIS 31st DAY
OF OCTOBER, 2008.**

NOTARY PUBLIC

**MARIA H. ROMANO**
Notary Public - Orleans Parish, LA
Notary ID No. 12380
Commissioned For Life

[15] Prior to trial plaintiff's counsel dismissed the Diez case.

[16] Consumer, third party payor, governmental actions, and medical monitoring cases are the non- PI cases still viable.

[17] In July 2008 Judge Fallon's law clerk requested a spreadsheet with all AG cases be specially created and sent to the Court.

[18] See *Turner v. Murphy Oil USA, Inc.*, 472 F.2d 830,872(E.D. La. 2007)(wherein Judge Fallon concluded that the common benefit hours submitted by the PSC were only a rough estimate of the actual time spent and were probably under-reported)

[19] In order that the SLC fulfill its mission to keep the Court apprised of pending remands at the status conference held in Houston after Katrina, Affiant worked with a firm in Houston to collect and burn all the information to CDs.

# CURRICULUM VITAE
# DAWN M. BARRIOS

*Barrios, Kingsdorf & Casteix, L.L.P. • 701 Poydras Street, Suite 3650 • New Orleans, Louisiana 70139-3650*
*Telephone: 504-524-3300 • Facsimile: 504-524-3313 • Email: barrios@bkc-law.com*

## PERSONAL

Born December 6, 1952, New Orleans, Louisiana
Three sons

## EDUCATION

JURIS DOCTOR DEGREE                                      1973-76
*Tulane Law School*                              *New Orleans, Louisiana*

    Honors:    The Admiralty Law Institute Prize, 1974-75.
                The American Jurisprudence Prize for Louisiana Civil Procedure, 1975-76.

BACHELOR OF ARTS DEGREE                                  1970-74
*Newcomb College*                               *New Orleans, Louisiana*

    English major.

## LEGAL EXPERIENCE

PARTNER                                                  1995-Present
*Barrios, Kingsdorf & Casteix, L.L.P.*          *New Orleans, Louisiana*

PARTNER                                                  1980-95
*Cleveland, Barrios, Kingsdorf & Casteix, L.L.P.*   *New Orleans, Louisiana*

ASSOCIATE ATTORNEY                                       1979-80
*Carl W. Cleveland & Associates*                *New Orleans, Louisiana*

LAW CLERK                                                1976-79
*Chief Justice, Joe W. Sanders*                 *New Orleans, Louisiana*
*Louisiana Supreme Court*

## COURT APPOINTMENTS IN COMPLEX LITIGATION

- MDL-1657 Vioxx Products Liability Litigation, United States District Court, Eastern District of Louisiana, State Liaison Committee (2005)

- MDL-1643 Educational Testing Service Litigation, United States District Court, Eastern District of Louisiana, Lead Counsel (2005)

- MDL-1632 In Re High Sulfur Content Gasoline Products Liability Litigation, United States District Court, Eastern District of Louisiana, Class Counsel (2004)

- MDL-1431 Baycol Products Litigation, United States District Court, District of Minnesota, Liaison Advisory Committee (2002)

EXHIBIT
A

Curriculum Vitae - Dawn M. Barrios
Page 2

- <u>MDL-1355 Propulsid Product Liability</u>, United States District Court, Eastern District of Louisiana, State Liaison Committee (2000)

- <u>West, et al v. G & H Seed Company, et al</u>, 27TH JDC, St. Landry Parish, Docket No. 99-C-4984-C, Plaintiffs' Steering Committee (Toxic Exposure) (2000)

- <u>Parrish, et al v. Tennessee Gas Pipeline Company, Inc., et al</u>, 10th JDC, Natchitoches Parish, Docket No. 64,527-A, Plaintiffs' Steering Committee (Toxic Exposure) (1996)

- <u>Spitzfaden et al v. The Dow Chemical Company, et al</u>, Civil District Court, Parish of Orleans, Docket No. 92-2589-F, Plaintiffs' Steering Committee (Breast Implants) (1994)

## LEGAL WRITING

- Elizabeth Cabraser, William Bernstein, and Dawn Barrios, "New Issues and Key Rulings in the Certification, Trial, Settlement and Appeal of Class Actions" Class Actions, American Bar Association, (2001).

- Lori Andrus and Dawn Barrios, "Absent Class Members - - Drivers or Passengers on the Highway of Discovery" Class/Action Mass Torts Symposium 2001, Louisiana State Bar Association (2001).

- Dawn Barrios, "The Long and Winding Road for Spitzfaden, Louisiana's Breast Implant Class Action: 'Ad Astra Per Aspera'" 74 Tulane Law Review 1941 (2000).

- Dawn Barrios, Note "A Quantum Service: Maritime Personal Injury and Death Awards From the Fifth Circuit Court of Appeal and the Federal District Courts in Louisiana, 1970-1975." Maritime Law Journal (1976).

## LEGAL PRESENTATIONS

- Invited Speaker- BVR Legal/ Mealey's Litigation and Trial Strategies SuperConference, October 2008, Topic- State and Federal Courts: Which Court Will Hear the Case?
- Invited Speaker- Mealey's VIOXX® Settlement Conference: A Plaintiff Bar Discussion & Roundtable, December 2007, Topic- Liability and Risk Factor Adjustments
- Invited Speaker- Louisiana Bar Association, New York, New York, A Multi- Topic Seminar, November 2007, Topic- Navigating Complex Litigation, Class Case Action, and MDLs.. An Overview from Inception to Exit Strategies (and the chaos in between)
- Invited Speaker- Louisiana Bar Association, 7th Annual Class Action-Mass Tort Symposium, October 2007, Topic – Class Notice
- Invited Panel Member – LSU Trial Advocacy Program - August 7-9, 2006
- Invited Co-Chair - Mealey's Vioxx Litigation Conference - May 8-9, 2006 and Moderator of the Judicial Panel Topic: Perspectives from the Bench. Panelists Hon. Wilson, Hon. Duval & Patrick Juneau
- Invited Panel Member- Mealey's Vioxx Litigation Conference, December 2005, Topic - MDL Update
- Invited Speaker- American Bar Association- "The Future of Class Action Litigation in America," November 2005, Topic - Notice Issues, Opt Ins & Outs, Class Management
- Invited Speaker- Vioxx Litigation Conference, Mealey's, June 2005, Topic - Convincing the Jury of Your Case

Curriculum Vitae - Dawn M. Barrios
Page 3

- Invited Mock Trial Litigator- American Trial Lawyers Association, "The Case Against Vioxx: An ATLA Mock Trial," May 2005, Topic

- Invited Speaker- American Bar Association, National Institute on Class Actions, October 2004, Topic – Notice

- Invited Speaker- Louisiana Bar Association, 5th Annual Class Action-Mass Tort Symposium, October 2004, Topic – Class Notice

- Invited Speaker- Louisiana Trial Lawyers' Association, Mass Tort/Class Action CLE Program, April 2004, Topic – Class Notice

- Invited Speaker- Louisiana State Bar Association, 4th Annual Class Action-Mass Tort Symposium, October 2003, Topic – Notices

- Invited Speaker- Mealey's Baycol Litigation Conference – June 2003, Topic – Current Status of Discovery – State Court Versus MDL

- Invited Speaker- Tulane Law School, 14th Annual CLE By the Hour, December 2002, Topic - Complex Litigation

- Invited Speaker- Mass Torts Made Perfect Seminar, Baycol Litigation, September 2002

- Invited Speaker- Mealey's, Conference on Baycol Litigation, May 2002

- Invited Speaker- Louisiana State Bar Association, 2nd Annual Class Action/Mass Torts Symposium, October 2001, Topic – Discovery to and of Putative Class Members

- Invited Speaker- American Bar Association, Class Actions, October 2001, Topics – Mock Class Certification Hearing and Medical Monitoring

- Invited Speaker- Louisiana State Bar Association, 1st Annual Class Action/Mass Torts Symposium, October 2000, Topic – Strategies & Tactics for Today's Litigation

- Invited Speaker- Tulane Law School and the Tulane Law Review, Class Actions In the Gulf South Symposium, March 2000, Topic – Trickle Dow Effects of Federal Class Action Jurisprudence on the Gulf South

- Invited Speaker- Mealey's Breast Implant Litigation Group, Judges and Lawyers in Complex Litigation, November 1999

## GOVERNMENT APPOINTMENT

- Louisiana Commission on Medical Professional Liability (2002)

## PROFESSIONAL MEMBERSHIPS

- Louisiana Bar Association
- Louisiana Association for Justice
- American Association for Justice
- Association for Women Attorneys

# CURRICULUM VITAE OF BRUCE S. KINGSDORF

Barrios, Kingsdorf & Casteix, L.L.P.
701 Poydras Street, Suite 3650
New Orleans, Louisiana 70139-3650
Telephone:    504-524-3300
Facsimile: 504-524-3313
Email:      kingsdorf@bkc-law.com

## EDUCATION:

**Legal**:          Tulane Law School.  Juris Doctor Degree, 1974.

**Undergraduate**: Tulane University. Bachelor of Arts Degree, 1971.

## LEGAL EXPERIENCE:

Partner, Barrios, Kingsdorf & Casteix, L.L.P., 1995 to present.
Partner, Cleveland, Barrios, Kingsdorf & Casteix, L.L.P., 1980 to 1995.
Associate Attorney, Carl W. Cleveland & Associates, 1978-1980.
Law Clerk to Justice Albert Tate, Louisiana Supreme Court, 1977 to 1978; Judges
Beer and Morial, Louisiana Fourth Circuit Court of Appeal, 1974 to 1976.

## TEACHING SEMINARS:

- 14th Annual CLE By the Hour, Tulane Law School, December 2002, Topic - Complex Litigation
- Federal Bar Association, Removal and Remand, December, 2004, Topic-Plaintiff's Perspective on Removal and Remand
- Tulane Environmental Law Symposium, Tulane Law School, May 2005, Topic - The Crawfish Case
- Mass Torts and Complex Litigation, Louisiana State Bar Association, October, 2006, Topic - Multi-District Litigation
-

## COURT APPOINTMENT IN MASS TORTS:

Harrison, et al v. Sewell Cadillac-Chevrolet, Inc., Civil District Court for the Parish of Orleans, Docket No. 2002-9074 c/w No. 2001-12445, Lead Counsel (Consumer Claim) (2006)

West, et al v. G & H Seed Company, et al, 27TH JDC, St. Landry Parish, Docket No. 99-C-4984-C, Plaintiffs' Steering Committee (Toxic Exposure) (2000)

Parrish, et al v. Tennessee Gas Pipeline Company, Inc., et al, 10th JDC, Natchitoches Parish, Docket No. 64,527-A, Plaintiffs' Steering Committee (Toxic Exposure) (1996)

## PROFESSIONAL MEMBERSHIP:

Louisiana State and Federal Bar Associations


EXHIBIT
B