STATE OF TEXAS            *
                         *
COUNT Y OF HARRIS        *                    **AFFIDAVIT**

BEFORE ME, the undersigned authority, on this day personally appeared Kenneth T. Fibich, after being first duly sworn upon oath, deposed and stated as follows:

"My name is Kenneth T. (Tommy) Fibich. I am competent to make this affidavit. The facts stated in this Affidavit are within my personal knowledge and are true and correct.

"I am the founding partner of Fibich, Hampton & Leebron LLP of Houston, Texas and have been actively engaged in trial work for over thirty years. I am certified in Civil Trial Law by the Texas Board of Legal Specialization and am a member of the American Board of Trial Advocates.

I have been actively engaged in mass tort litigation for more that fifteen years and in pharmaceutical litigation on behalf of plaintiffs for more that eleven years. I have served on the Plaintiffs' Steering Committees for FenPhen litigation and Zyprexa litigation.

"I have served as State Liaison for the federal Vioxx MDL 1657 (2:05-md-01657) and as Notice Counsel and a member of the Plaintiffs' Steering Committee for the Texas Vioxx MDL, Master Docket No. 2005-59499. It is my belief that my firm is recognized as one of the leading firms nationally in the pharmaceutical litigation arena.

"I became involved in the representation of Vioxx clients in October 2004. Prior to that time I have invested a good deal of time into researching the effects of Vioxx ingestion, meeting with epidemiologists, cardiologists, and pharmacologists. I also did considerable background research regarding Merck's product development, research, FDA application and marketing of Vioxx.

In addition to participating in discovery in the Federal MDL, I worked closely with other Texas Plaintiffs'counsel and counsel for Merck regarding the set up of the Texas MDL. Subsequently, I was made Notice Counsel for the Texas MDL and my office served in that capacity up to and through the settlement. I also served on the Texas Plaintiffs' Steering committee and in that capacity worked very closely with the other members of the Texas PSC to, among other things, develop litigation strategy, select experts, evaluate cases for trial, and participate in the coordination and conducting of depositions and other discovery. Additionally, I worked with counsel for Merck to develop pretrial orders and case management orders for the Texas MDL under the supervision of Judge Randy Wilson.

At all times I supervised the activity of the members of my firm relating to the Vioxx litigation. During the years 2005 and 2006 I participated as liaison counsel in many of the Federal MDL hearings and I, and other members of my firm, attended hearings of the Texas MDL and participated in considerable motion practice for the benefit of all Texas plaintiffs. During the years 2005 and 2006 my firm provided notice of all motions and orders and other Texas MDL activity, and support to plaintiffs counsel who were not members of the Texas PSC and who were not in a position to participate extensively in MDL hearings and motions.

In 2006 Judge Randy Wilson announced that he would be trying the initial Texas Vioxx cases so that he could make discovery and evidentiary rulings that would follow the rest of the cases back to their local jurisdictions for trial. The Ruby Ledbetter case, one of my cases, was chosen as one of these bellwether trials. Along with the Matthews Law Firm, I developed the Ledbetter case for trial, participating in case specific discovery and working with case specific experts and witnesses. Additionally, my firm was extensively involved in briefing and hearings on limine motions and evidentiary rulings that would apply to all Texas MDL cases. Before the Ledbetter case reached trial, Merck filed a Motion for Summary Judgment based on Section 82.007 of the Texas Civil Practices and Remedies Code (the presumption statute) and based on Federal preemption. Judge Wilson granted the motion. The Motion for Summary Judgment applied to all Texas Vioxx cases and impacted the litigation rights and viability of all Texas Vioxx claimants. Thereafter, I worked with the Texas PSC to determine what course of action should be pursued on behalf of all Texas Vioxx claimants.

From my initial involvement in 2004, I remained committed to pursuing the interests of my Vioxx clients as well and those of Texas Vioxx claimants generally. I and other member of my firm contributed many hours to pursuing and preserving the interests of all Texas Vioxx claimants. Even when a number of verdicts were adverse to Plaintiffs, the commitment of myself and my firm to the Vioxx litigation did not lessen. My firm has funded all of our Vioxx activities as Notice Counsel, as a member of the Texas PSC, and in motion practice, on behalf of all Texas Plaintiffs and, along with the Matthews Law Firm, on behalf of the Ledbetter plaintiff.

Given (i) my experience and reputation, and that of my firm in this arena, (ii) my commitment to the litigation particularly on behalf of Texas Vioxx claimants, and (iii) my financial investment in the Vioxx litigation, I feel confident that my efforts and those of other members of my law firm contributed significantly to the ultimate resolution of the Vioxx litigation. I request that common benefit fees be apportioned to my firm as compensation for that time, commitment and expense. I look forward to addressing the Committee regarding these matters.

Further affiant sayeth not."

Kenneth T. Fibich

SWORN TO AND SUBSCRIBED BEFORE ME on this _31st_ day of _October_, 2008.

Notary Public

RACHEL SOLIS
NOTARY PUBLIC, STATE OF TEXAS
MY COMMISSION EXPIRES
AUG. 24, 2011

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: VIOXX | * | MDL DOCKET NO. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION "L" |
| | * | |
| | * | JUDGE FALLON |
| This document relates to ALL CASES | * | |
| | * | MAGISTRATE JUDGE KNOWLES |
| | * | |

**COMMON BENEFIT FEE AFFIDAVIT OF GERALD E. MEUNIER**

**STATE OF LOUISIANA**
**PARISH/COUNTY OF ORLEANS**

BEFORE ME, the undersigned Notary Public, personally came and appeared:
**GERALD E. MEUNIER**
who, first being sworn, did attest as follows:

I was the sole New Orleans attorney appointed to the PSC, and, working with and under the leadership of Liaison Counsel Russ Herman, I felt a unique responsibility to provide plaintiffs with the benefit of my experience as a trial counsel who began as a law clerk in the E.D.La. and has devoted much of my professional life to E.D.La. practice.

My common benefit service began in the Spring of 2005, with initial emphasis as a member of the Law Subcommittee. I researched a variety of legal issues, e.q., choice of law, preemption, medical monitoring, product liability, and the various theories of recovery to be set forth in the Master Complaint (which I helped draft). I helped research the question whether Merck could meet with treating physicians ex parte when this became an urgent matter for plaintiffs.

I took a lead role in meeting with opposing counsel to confect a CMO for MDL class action proceedings, and attended status conferences with the Court as the principal PSC spokesman on this matter. I arranged a meeting with Dean Ed Sherman to discuss his potential role as an expert witness at the class certification hearing.

After Hurricane Katrina, the presiding District Judge moved to Houston. At a time when my own practice, and that of my law firm, had been significantly disrupted by the hurricane, I traveled to Houston at the end of 2005 to attend a status conference with the Court. I then became involved in responding to defendant's Daubert challenges to various scientific experts retained by plaintiffs for the bellwether trials in the MDL. I helped draft and finalize the PSC motions and memoranda regarding these Daubert issues, and took part in the oral presentation to the Court at the 2005 Daubert hearing.

In late November 2005 I attended the pre-trial conference (in Houston) for the first bellwether trial (Irvin), and conferred more than once with the trial team regarding jury strategy. I returned to

-1-

Houston on December 1, 2005 and thereafter was present for <u>every day</u> of the first Irvin trial. I became acquainted with the Irvin family members, met with the trial team, kept the PSC informed on various developments, and helped analyze and address the Judge's decision to strike one of the key plaintiff experts. I also took a lead role regarding jury charges, spoke for plaintiffs in jury charge meetings with opposing counsel, and attended the charge conference with the Court to help present our positions on the charges.

Following the initial mistrial, Irvin was set for retrial in the E.D.La., and the Court also announced that the bellwether trial after "Irvin II" would be the case of Ellis Diaz, a Merck-selected claimant represented by a local (N.O.) attorney, Bonnie Zobotnick. I knew Ms. Zobotnick and was asked to work with her on the case. In early January 2006, I began a series of meetings with her and the client, and effectively became lead counsel in the matter. I dealt with opposing counsel on various pre-trial issues, (while also taking the time to attend an important "trial school" organized by the PSC in Miami, Florida), and identified and retained a local cardiological expert, Dr. David Elizardi, for the case. I prepared Mr. Diaz for his deposition and defended same (in my office).

During this same time, as a member of the "Irvin II" trial team, I traveled to the Beasley, Allen office in Montgomery for a day-long session of trial preparation. I was asked to be responsible for evidentiary issues and jury charges. The trial began on February 13, 2006. On February 15, 2006, it was interrupted for a status conference with the Court on the Diaz case, which I attended as lead counsel in that case.

After the "Irvin II" trial, my efforts in Diaz intensified. Because of causation issues, it eventually fell to me to persuade Mr. Diaz and Ms. Zobotnick that the case should be voluntarily dismissed. I believe this was a significant development; had the Diaz case gone to trial, a defense verdict was likely.

As counsel practicing in the MDL forum, I was able to attend, and provide trial team input for, the four bellwether trials which occurred during the balance of 2006 (especially in the Barnett and Dedrick cases). In Dedrick specifically, I helped with the juror questionnaire, gave input regarding juror instructions, and met with the trial team prior to closing argument.

In February 2007 I was asked to chair the PSC Trial Package Committee. This assignment required numerous meetings and discussions by telephone as well as the evaluation of substantial material. It was an effort which dominated my time in this case starting in February 2007 and concluding 8-9 months later with a formal presentation of the trial package in open court on October 3, 2007. I believe that my co-chair Pete Kaufman and the other members of this committee deserve enormous credit for the substance of the package. But I also believe that my leadership, oversight, and coordination were critical, and that I helped keep the group focused on "user issues" in a way that makes the package a great tool for trial attorneys who may not be as familiar with this litigation.

In December of 2007, the PSC Stroke Committee merged with the Trial Package Committee, to produce a stoke package adjunct to the original m.i. package. Shelly Sanford and others did excellent substantive work in this regard; but, again, I believe my coordination efforts also were essential. I organized, and led, the formal presentation of the stroke package to Judge Fallon. Since the stroke package was a "work in progress" even at the time it was presented, work on it continued until the summer of 2008, and I continued to review and discuss various materials for inclusion.

With the completion of the stroke package, my main efforts have been to assist various counsel in navigating the settlement program with Merck. I take a number of calls from local

-2-

attorneys who are uncertain about the program and who know me as a "local" on the committee who might be able to help.

In sum, I believe my main efforts have been in the specific areas of legal research and analysis, case management, MDL trials, and the MDL trial/stroke package. More broadly, my presence and activity as a local and experienced attorney in the EDLA have proven uniquely beneficial in numerous interactions with opposing counsel and with the Court.

As to the specific considerations outlined in the Court's Order of 9/15/08 (Document 15954), I close with the following:

1.   I believe my effort has made a substantial contribution to the outcome of the litigation, and that the quality of my work and that of my firm speaks for itself.

2.   I have been constant in my commitment and in the level of my participation as a senior partner in my firm, even when MDL trial verdicts were adverse to plaintiffs.

3.   I have served as an attentive member of the PSC and have been an active participant in virtually all PSC meetings.

4.   M activity in regard to bellwether trials in the MDL has been of particular benefit, to the extent I have served as a resource to trial teams who were engaged (presumably for the first time) in trying cases in the E.D.La., post-Katrina.

I respectfully ask the Allocation Committee to give due consideration to my application for an appropriate share of the common benefit fee in this matter; and I am more than willing to meet with the Committee at any time to discuss these matters in further detail.

This done the 31st day of _Oct._, 2008, New Orleans, Louisiana.

_____, Attorney

Louisiana Bar Roll No. 9471

SWORN TO AND SUBSCRIBED
before me, this 31st day of October, 2008.

Printed Name: _Irving J. Warshauer_
Bar Roll No. _13252_
My Commission Expires: _At Death_

-3-

144 W. Colorado Boulevard
Pasadena, CA 91105

Telephone
(626) 685-9800

Facsimile
(626) 685-9808

www.gancedonieves.com

**GANCEDO**
**& NIEVES**
ATTORNEYS AT LAW

A Limited
Liability
Partnership

October 28, 2008

<u>Via Overnight Delivery</u>

Russ M. Herman
Herman, Herman, Katz & Cotlar, LLP
820 O'Keefe Avenue
New Orleans, LA 70113

      Re:    Vioxx Litigation - Allocation Affidavit

Dear Russ:

      Per Judge Fallon's Order, enclosed please find Gancedo & Nieves' declaration regarding our common benefit contribution to the Vioxx litigation.  Please feel free to contact us if you have any questions or need further information.

      With kind regards,

      GANCEDO & NIEVES
      A Limited Liability Partnership

      Hector G. Gancedo

HGG:st
Enclosure

**DECLARATION OF HECTOR G. GANCEDO IN SUPPORT OF PETITION OF GANCEDO & NIEVES LLP FOR AN AWARD OF COMMON BENEFIT FEES PURSUANT TO PTO NO. 6(D)**

I, Hector G. Gancedo, declare:

I have personal knowledge of the facts set forth herein and if called as a witness could and would so testify.

Gancedo & Nieves LLP made substantial contributions to the MDL and to the California coordinated state litigation.  Through major efforts on the Plaintiffs' Discovery Committee, Science and Experts Committee, Sales and Marketing Subcommittee, and as Chair of the Science, Research, Publications & Society Meetings Subcommittee, Gancedo & Nieves provided substantial and consistent work of the highest quality which contributed to the success of the case.  Gancedo & Nieves became involved in the litigation in 2001, and made significant common benefit contributions through their membership in the California Plaintiff's Executive Committee years before the MDL was established.

## Membership in California Plaintiff's Executive Committee

Gancedo & Nieves first investigated the case and had clients retained in 2001.  Hector Gancedo attended nascent Vioxx meetings in Houston with Girardi Keese, Goforth Lewis and Mark Lanier in March 2002.  We filed our first personal injury case in California in June 2002. We filed the original Petition for Coordination of the California cases and successfully had the California litigation coordinated in the Los Angeles Superior Court.  As an active  member of the Plaintiff's Executive Committee in California, Hector Gancedo and associates of Gancedo & Nieves participated in meetings with defense counsel regarding organization and strategy for the coordinated proceedings.  We attended numerous meetings of the PEC regarding selection of cases for the California trial pool, and we worked up and had set for trial individual cases for the PEC in California including the cases of Allen Duke, Fred Cole, and Eugene Wierzbicki.  We regularly attended all California Coordinated Proceeding hearings.

## Multi-Media Trial Package/Chronology with Documents

As a veteran contributor to common benefit efforts in past pharmaceutical MDL's including Fen-Phen, Rezulin, Propulsid, PPA, and Baycol, in the Vioxx MDL we sought to bridge the gap in case knowledge and understanding between those law firms doing common benefit work and those non-common benefit Plaintiff firms who had filed cases but limited access to information.  In that effort, Gancedo & Nieves distinguished itself through the design, development, creation and implementation of the Multi-Media trial package which became a cornerstone of the overall MDL trial package.

The multi-media trial package is an innovative interactive computer program created to serve as an integral part of the overall trial package, and designed to be a user friendly roadmap of plaintiffs' entire case for plaintiffs' lawyers across the country and an editable

comprehensive PowerPoint presentation to be used at trial. The program, based on a PowerPoint platform, is an interactive timeline from 1981 to 2011 that chronicles 375 key events in the life and death of Vioxx. The events are divided into five color coded themes: 1) Failure to warn/concealment; 2) scientific literature; 3) FDA; 4) Marketing; and 5) Profits over safety. Each event is hyperlinked with the touch of a mouse to the hot trial documents uncovered in the MDL and state court litigations. The trial documents include internal company documents, memos, letters, eMails, scientific studies, clinical trials, FDA and Congressional testimony and hearings, print ads, and video and audio clips from television advertising and hearings. The program was continually updated to ensure the inclusion of documents that were uncovered during or after each trial. The chronology/timeline was utilized by Mark Robinson in the preparation for the Irvin trial and by Girardi Keese in preparation for the Los Angeles trial.

Development of the program took over 2000 hours of partner and associate attorney time and involved several trips to Palo Alto, California to meet with Dr. Girkipal Singh to review Congressional hearing documents including the Waxman and Graham documents, attendance at the FDA hearings held in Washington DC (2/05), meetings with PSC members in New Orleans, a meeting and presentation to Frank Woodson and Rick Meadows in New York regarding chronology and theme grids (9/05), a meeting and presentation to Andy Birchfield in Texas (7/05), attendance at the Ernst Trial opening statements, numerous meetings with the Information Technology team (Executive Presentations) and Mark Robinson, research and voluminous document review for each of the five themes, collection and compilation of complete scientific studies and liability documents, collection and importation of marketing materials and live commercials televised as part of Merck's Vioxx marketing campaign, creation of corporate organizational chart with photos and profiles of executives, analysis of Merck SEC filings for inclusion in Profit Over Safety sub-timeline, and analysis of insider trades surrounding the Vigor and ADAPT studies.

## Active Member of Science and Experts Committee

Gancedo & Nieves, through principally partner Tina Nieves and Chris Taylor, were active and valuable members of the Science and Experts Committee. On instruction from Shelly Sanford, Gancedo & Nieves created a complete Science Theme Grid Database in an MS Access format that summarized, highlighted and hyperlinked all the relevant medical literature in the litigation.

Tina Nieves served as the gatekeeper for consultant Dr. Girkipal Singh of Stanford University. Gancedo & Nieves, and primarily Tina Nieves, worked on developing several experts including epidemiologist Dr. Miriam Sturkenboom (stroke data), Dr. Connie Peachmann (marketing/false advertising), Dr. Gunnar Gislason, Dr. Lemuel Moye, Dr. Francesco Cipollone and Dr. John LaPuma. We traveled to Washington with Shelly Sanford for meetings with expert Dr. Edwards. We attended and participated in the weekly Science Committee teleconference/meetings.

As members of the Science and Experts Committee Gancedo & Nieves attended numerous meeting and conferences throughout the United States over the course of the litigation, to wit: Science Conference in Houston (March 2005), Joint Committee meeting in Miami, Science Committee meetings with Carlene Lewis and Shelly Sanford in New Orleans, and meetings with Drs. Farquar and Singh and Don Arbiblit and Mark Robinson at Stanford University.

Tina Nieves was charged with the task of presenting the Science Committee with an analysis of the Fitzgerald Hypothesis to determine whether or not to depose Dr. Fitzgerald for the MDL. We compiled Pratt-authored articles and other scientific literature from the Dedrick trial to augment the Science Theme Grid database for Messrs. Birchfield, Sanford and O' Dell. In September 2006 we completed the Science Committee assigned task of pulling scientific literature on selectivity, efficacy and other specific categories for MDL trial preparation.

Active Member of Discovery Committee
(Chair - Science, Research, Publications & Society Meetings Subcommittee)

Gancedo & Nieves were active members of the Discovery Committee. Tina Nieves chaired the Science, Research, Publications & Society Meetings subcommittee which was charged with creating the Science Theme Grid and with identifying upcoming Cox-2 Society meetings with an eye toward identifying potential litigation experts from those presenting. In that effort, we attended and reported on the American Heart Association Scientific Conference (11/05), Scientific Meeting Conference of the American College of Rheumatology, International Society of Pharmacolepidemiology in Nashville (08/05), and Science Subcommittee cardiology conference in Salt Lake City, as well as monitored the Annual European Congress of Rheumatology in Amsterdam.

Gancedo & Nieves attended and participated in the weekly Discovery Committee teleconferences/meetings. Partners and associates of Gancedo & Nieves reviewed voluminous documents at the Depositories in Denver and Newport Beach. We analyzed sales and marketing documents, documents for the Barnett trial, as well as Ogilvy and Arcoxia documents. We attended the Discovery Committee meeting in Houston in December 2005, and worked extensively on trial deposition cuts with Pete Kaufman and others. We prepared materials for several depositions including the Silver, Farquar and Krahe depositions.

In addition, Gancedo & Nieves served on the Sales and Marketing Subcommittee of the Discovery Committee and Gancedo & Nieves conducted sales representative depositions and participated in regular teleconference/meetings including the Subcommittee meeting in Las Vegas.

Speaking Engagements on behalf of the MDL

Throughout the litigation partner Tina Nieves attended and presented on various issues of interest to the Plaintiff's Bar. She attended and presented at the West Palm Beach

Conference in April 2005, and moderated the ATLA Vioxx Mock Trial in New Orleans in May 2005. She presented at the Mealy's conference with Mark Robinson on the Irvin trial highlights in December 2005. She was a panelist with Russ Herman and Arnold Levin at the Mealy's Vioxx Conference at Amelia's Island in Florida. In 2006 she participated in the Mealy's Teleconference, and spoke at the Mealy's conference in Washington D.C. regarding the FDA hearings.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 28th day of October, at Pasadena, California.

_____
HECTOR G. GANCEDO

# GIANNI ✦ PETOYAN
## ATTORNEYS AT LAW

17383 Sunset Blvd., Suite A200 • Pacific Palisades, CA 90272
Tel: (310) 230-6767 • Toll Free: (866) 330-6767 • Fax: (310) 230-6051
contact@giannipetoyan.com • www.giannipetoyanlaw.com

*RECEIVED OCT 2 5 2008*

LAURA GIANNI
lag@giannipetoyan.com

October 16, 2008

Via Facsimile: 504/561-6024,
Email: VioxxMDL@hhkc.com,
& First Class U.S. Mail

Russ M. Herman, Esq.
Herman Herman Katz & Cotlar, LLP
820 O'Keefe Ave.
New Orleans, LA 70113

Re:     ***Arrigale v. Merck & Co., Inc.***
        CA State Docket 05cc03136 / JCCP 4032, VIOXX Cases

Dear Mr. Herman:

Please consider this Affidavit in support of Gianni Petoyan's common benefit fee application previously submitted for our work on the California Vioxx trial case <u>Arrigale v. Merck & Co., Inc.</u>, State Docket 05cc03136.

We are submitting this pursuant to MDL 1657 Pre-Trial Order No. 6(D).

Very truly yours,

Laura Gianni
GIANNI ✦ PETOYAN

LG:jr
enclosure as noted

FAC Resp. Exhibit B -- 786

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: VIOXX PRODUCTS LIABILITY LITIGATION | )  MDL Docket No. 1657 )  Section L )  Judge Eldon Fallon )  Magistrate Judge Knowles ) |

## AFFIDAVIT OF LAURA A. GIANNI PURSUANT TO PTO NO. 6(D)

I, Laura A. Gianni, declare and state as follows:

I am a partner at the law firm of Gianni Petoyan.  I have personal knowledge of the facts set forth herein.  If called to testify I could and would do so competently.

On March 3, 2006, the California JCCP case <u>Arrigale v. Merck & Co., Inc., et al.</u>, State Docket No. 05cc03136, was selected by the Merck as a trial case, pursuant to the protocol established by the Hon. Victoria G. Chaney.  It was originally consolidated for trial with <u>Grossberg v. Merck & Co.</u>, Inc., State Docket No. BC327729, then with Appell <u>v. Merck & Co., Inc.</u>, State Docket No. BC328858, and started trial on October 31, 2006.  A mistrial was declared on January 18, 2007 after the jury deliberated for weeks and was unable to reach a verdict.

Following Merck's selection of this case for trial, Laura Gianni and Marcus Petoyan, senior partners of the law firm Gianni - Petoyan, conducted percipient discovery in the matter, including review and analysis of over 10 years of medical records with respect to Plaintiff's medical history; review and analysis of Plaintiff's medical history with expert medical consultants James Mayer, M.D. and Michael Chaikin, M.D.; receipt and review of scientific medical literature regarding Vioxx; multiple meetings with expert Michael Chaikin, M.D. for

review and analysis of scientific medical literature with respect to Plaintiff's event; multiple meetings with Plaintiff; multiple meetings with Plaintiff's treating cardiologist, Jose Caceres, M.D., relative to Plaintiff's medical condition, prognosis and role of Vioxx in causing Mr. Arrigale's heart attack; preparation of the witness and participation in the deposition of Plaintiff's treating physician Jose Caceres, M.D.; preparation for and participation in depositions of Plaintiff's additional treating physicians including Luc Nguyen, M.D.; David Pham, M.D.; Duy Nguyen, M.D.; Lawrence Gorlick, M.D.; Winston Chung, M.D.; and Steven Schiff, M.D., as well as Plaintiff and his family members' depositions. We also reviewed serial angiography with Plaintiff's medical experts Michael Chaikin, M.D., Steven Schiff, M.D., and Mark Haigney, M.D.; had multiple meetings with computer animator IPS/Froelich for the development of computer animation of the Plaintiff's cardiac status for use at trial; preparation and defense of deposition of Plaintiff expert and treating physician Steven Schiff, M.D.; preparation for and deposition of defense expert Richard Friedman, M.D. The effort of counsel during trial included multiple meetings in the preparation of Plaintiff expert witness Steven Schiff, M.D. for trial testimony; attendance throughout trial; and assistance to trial counsel, Tom Brandi, Esq.

Our office focused almost exclusively on this case with paralegal and senior partner attorney time from March 2006 through July 2006 during the pretrial discovery period, and then the time commitment lessened as the case transitioned to lead trial counsel and as Judge Chaney continued the case to be consolidated with the *Appell* case. Our time estimates are extremely conservative as we did not keep contemporaneous time records but tracked our time according to the discovery obligations. Our office spent numerous hours strategizing and analyzing issues, preparing documents, etc. that were not submitted for compensation.

-2-

We believe these efforts were helpful in the settlement of all cases, as it was a case selected by Merck with discovery and trial of issues where Merck believed it would ultimately prevail.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed this ___ day of October, 2008 in Pacific Palisades, county of Los Angeles, State of California.

Laura A. Gianni

-3-

# HEINS MILLS & OLSON, P.L.C.

### ATTORNEYS AT LAW

310 CLIFTON AVENUE
MINNEAPOLIS, MINNESOTA 55403
TEL (612) 338-4605  •  FAX (612) 338-4692
WWW.HEINSMILLS.COM
DYLAN J. MCFARLAND
DMCFARLAND@HEINSMILLS.COM

October 30, 2008

**VIA EMAIL AND U.S. MAIL**
Clifton W. Newlin
Wegmann Dazet & Company
111 Veterans Memorial Blvd., Suite 800
Metairie, LA 70005

     *Re:*   *In Re Vioxx Products Liability Litigation , MDL No. 1657*

Dear Mr. Newlin,

    I write in response to your October 27, 2008 correspondence regarding submission and consideration of time and expenses incurred prior to April 8, 2005. Heins Mills & Olson, P.L.C.'s previous submission, dated July 25, 2008, included time and expenses incurred prior to April 8, 2005 and we would like these to be considered for reimbursement. I am attaching the reports again for your convenience.

    If you have any questions please contact me.

                Sincerely,

                HEINS MILLS & OLSON, P.L.C.

                Dylan J. McFarland

Attachments
c:    Russ M. Herman, Plaintiffs' Liaison Counsel
      Vincent J. Esades

**Vioxx Products Liability Litigation MDL No. 1657**
**Expense Report**

**FIRM NAME: Heins Mills & Olson P.L.C.**
**Reporting Period:  Case Inception through July 24, 2008**

### EXPENSES

| Description | Total Expenses |
|---|---|
| Internal Reproduction/Copies | $102.25 |
| Computer Research | $0.16 |
| Telephone/Fax/E-Mail | $0.53 |
| Postage/ Express Delivery/Courier | $25.97 |
| **TOTAL EXPENSES:** | **$128.91** |

**Detail Transaction File List**

Heins Mills & Olson, P.L.C.

| Client | Trans Date | Tmkr | H P | Tcd | Rate | Amount | | Ref # |
|--------|-----------|------|-----|-----|------|--------|--|-------|
| **Client ID 4433.00 VIOXX** | | | | | | | | |
| 4433.00 | 07/31/2005 | 12 | P | 110 | 0.250 | 43.00 | Jul 2005 Photocopy Charges | 8 |
| 4433.00 | 08/31/2005 | 12 | P | 110 | 0.250 | 13.50 | Aug 2005 Photocopy Charges | 11 |
| 4433.00 | 09/30/2005 | 12 | P | 110 | 0.250 | 10.50 | Sep 2005 Photocopy Charges | 12 |
| 4433.00 | 10/31/2005 | 12 | P | 110 | 0.250 | 1.00 | Oct 2005 Photocopy Charges | 13 |
| 4433.00 | 11/30/2005 | 12 | P | 110 | 0.250 | 2.75 | Nov 2005 Photocopy Charges | 14 |
| 4433.00 | 12/31/2005 | 12 | P | 110 | 0.250 | 3.25 | Dec 2005 Photocopy Charges | 15 |
| 4433.00 | 04/30/2007 | 12 | P | 110 | 0.250 | 28.00 | Apr 2007 Photocopy Charges | 17 |
| 4433.00 | 02/28/2008 | 12 | P | 110 | 0.250 | 0.25 | Feb 2008 Photocopy Charges | 18 |
| | | | | | | | | |
| Subtotal for Tcode 110 | | | | | Billable | 102.25 | Photocopying Expense | |
| | | | | | | | | |
| 4433.00 | 07/22/2005 | 12 | P | 112 | | 12.00 | Delivery/Courier Expense | 7 |
| | | | | | | | MESSENGER CHARGES -- JULY 2005. | |
| 4433.00 | 07/27/2005 | 1 | P | 112 | | 13.97 | Delivery/Courier Expense | 10 |
| | | | | | | | FEDEX - 3-949-86196 | |
| | | | | | | | | |
| Subtotal for Tcode 112 | | | | | Billable | 25.97 | Delivery/Courier Expense | |
| | | | | | | | | |
| 4433.00 | 07/31/2005 | 12 | P | 124 | | 0.53 | Long Distance Telephone -- ESCHELON CHARGES for JULY 2005 | 9 |
| | | | | | | | | |
| Subtotal for Tcode 124 | | | | | Billable | 0.53 | Long Distance Telephone | |
| | | | | | | | | |
| 4433.00 | 12/31/2005 | 12 | P | 126 | | 0.16 | Research Expense | 16 |
| | | | | | | | PACER INVOICE 10/1 - 12/31/05 | |
| | | | | | | | | |
| Subtotal for Tcode 126 | | | | | Billable | 0.16 | Research Expense | |
| | | | | | | | | |
| Total for Client ID 4433.00 | | | | | Billable | 128.91 | VIOXX | |

| | | GRAND TOTALS | | |
|--|--|--------------|--|--|
| | Billable | 128.91 | | |

FAC Resp. Exhibit B -- 792

# PACER SERVICE CENTER

## U.S. COURTS – PACER ● P.O. BOX 277773 ● ATLANTA, GA 30384-7773

| LOGIN ID: | | Cindy Johnson |
|---|---|---|
| BILLING DATE: | 01/06/2006 | Heins, Mills, & Olson, P.L.C. |
| BILLING CYCLE: | 10/01/05-12/31/05 | 612-338-4605 |
| PAGE: | 1 | |

### PAYMENT INSTRUCTIONS

Please do not send cash. We accept checks, money orders, Discover, Visa, Master Card, and American Express. Make checks drawn on a U.S. bank in U.S. dollars payable to: **PACER Service Center** and indicate the login ID on your check. For your information, the PACER Service Center's Federal tax identification number is **74-2747938**. To make payment by credit card, change account information, or view transaction details for this statement, visit the "Account Information" Section of the PACER Service Center web site at http://pacer.psc.uscourts.gov.

If you believe there is an error on your statement or if you have a question concerning a transaction, please write to PACER Service Center, P. O. Box 780549, San Antonio, TX 78278. All credit requests must be submitted in writing. You may fax your request to the PACER Service Center at (210) 301-6441. In your correspondence provide us with your name, login ID, and the dollar amount of the suspected error(s) together with a copy of the transactions in question. Please provide a reason for each credit being requested. When the PACER Service Center receives your request, you will be contacted by a representative.

We must hear from you no later than the due date. If we do not hear from you and your account becomes delinquent, you are subject to having the account disabled. The address below is for payments only. All other correspondence including address changes should be directed to the PACER Service Center, P.O. Box 780549, San Antonio, TX 78278. If you have any questions regarding this statement, you may contact the PACER Service Center at *(800) 676-6856 or (210) 301-6440*.

### ACCOUNT SUMMARY

| | | |
|---|---|---|
| Number of Dial-Up PACER Transactions: | 0 | |
| Dial-Up PACER Billing Rate | $.60 / Minute | **RECEIVED** |
| Dial-Up PACER Total Time: | 00:00:00 | |
| Dial-Up PACER Charges: | $0.00 | **JAN 2 3 2006** |
| Number of PACER-Net Transactions : | | **HEINS MILLS &** |
| PACER-Net Billing Rate: | $0.08 / Page | **OLSON PLC** |
| PACER-Net Total Web Pages: | | |
| PACER-Net Charges: | | |

*Handwritten notes: 1-Ole-Ole, 2-1-OU, 30, various, 67031*

| | |
|---|---|
| Previous Balance: | $0.00 |
| Current Charges: | |
| Total Amount Due: | |

FAC Resp. Exhibit B -- 793

| ATE | COURT SEARCH CRITERIA | TIME IN | TIME OUT | TIME/PAGE. DESCRIPTION | AMOUNT |
|---|---|---|---|---|---|

*Ref tt*

---

TOTAL FOR CLIENT CODE:

TOTAL FOR CLIENT CODE: 4433 *16*        0.16

MER NUMBER: ___

A_ RANGE:    10/01/2005 - 12/31/2005       PAGE:     2

FAC Resp. Exhibit B -- 794

## Monthly Phone Charges for JULY 2005

8/17/2005

| Client: | Minutes: | Percentage: | Other Charges: | Total: |
|---|---|---|---|---|
| 4433 | 9.2 | 0.219% | 0 | 0.53 |

**eschelon**

Account Name:
Statement Date:
Account Number:

Helns, Mills, & Olson, PLC
08/05/05

Billing Questions: (866) 372-4356

## Account Code Summary Report

| Calls For | No. Of Calls | Minutes | Amount | Allocated Tax | Total |
|-----------|--------------|---------|--------|---------------|-------|
| 00004433 | 1 | 9.2 | $0.00 | $0.00 | $0.00 |

FAC Resp. Exhibit B -- 796

## MESSENGER DELIVERY FORM

| DATE | TIME | LOCATION | DESCRIPTION | FILE # | |
|------|------|----------|-------------|--------|---|
| 22 July | 10.30 | Fed Court | Filing | 4433 | 7 |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

FAC Resp. Exhibit B -- 797

| FedEx |
|---|
| **Invoice #3-949-86196** |
| **7/27/2005** |

| Case # | Case Name | Amount | Reference # |
|---|---|---|---|
| 4433 | VIOXX | 13.97 | 10 |
| | **TOTAL** | **411.44** | |

FAC Resp. Exhibit B -- 798

 **FedEx.**

| | |
|---|---|
| **Invoice Number:** | **3-949-86196** |
| Invoice Date: | Jul 27, 2005 |
| Account Number: | |
| Page: | 9 of 11 |

## FedEx Express Shipment Detail By Payor Type (Original)

**Picked up: Jul 22, 2005**      **Payor: Shipper**      **Reference: 4433** ✓

- The Earned Discount for this ship date has been calculated based on a revenue threshold of $2471.07
- Fuel Surcharge - FedEx has applied a fuel surcharge of 10.50% to this shipment.
- Distance Based Pricing, Zone 5

| | | | |
|---|---|---|---|
| INET | | | |
| Tracking ID | 790094339444 | **Sender** | **Recipient** |
| rvice Type | FedEx Priority Overnight | IRENE M. KOVARIK | MICHAEL M. WEINKOWITZ |
| Package Type | FedEx Envelope | HEINS MILLS & OLSON, P.LC | LEVIN FISHBEIN SEDRAN & BERMAN |
| Zone | 5 | 3550 IDS CENTER | 510 WALNUT STREET, SUITE 500 |
| Packages | 1 | MINNEAPOLIS MN 55402 US | PHILADELPHIA PA 19106 US |
| Weight | N/A | | |
| Delivered | Jul 25, 2005  09:36 | Transportation Charge | 17.55 |
| Svc Area | A1 | Earned Discount | -2.28 |
| Signed by | K.SENTYZ | Automation Bonus Discount | -2.63 |
| FedEx Use | 000000000/0000219/_ | Fuel Surcharge | 1.33 |
| | | **Total Charge**          **USD $** | **13.97** |

FAC Resp. Exhibit B -- 799

**MDL No. 1657**

**Vioxx Products Liability Litigation Report of Member Firm Time**

Reporting Period:  Case Inception through July 24, 2008
Firm Name:  Heins Mills & Olson, P.L.C.

| NAME (Status) | RATE | 1. Case Assmnt., Dvlpmt. & Admin. | 2. Pre-Trial Pleadings & Motions | 3. Discovery | 4. Trial Prep & Trial | 5. Appeal | 6. Settlement | Total Hours | Total Lodestar |
|---|---|---|---|---|---|---|---|---|---|
| Stacey L. Mills (Attorney) | $ 590.00 | 0.25 | | | | | | 0.25 | $147.50 |
| David R. Woodward (Attorney) | $ 575.00 | | 0.25 | | | | | 0.25 | $143.75 |
| Daniel C. Hedlund (Attorney) | $ 440.00 | | 3.50 | | | | | 3.50 | $1,540.00 |
| Jessica N. Servais (Attorney) | $ 325.00 | | 3.00 | | | | | 3.00 | $975.00 |
| Irene M. Kovarik (Paralegal) | $ 175.00 | 1.50 | 3.00 | | | | | 4.50 | $787.50 |
| Katie E. Marshall (O - Doc. Clerk) | $ 135.00 | | 1.00 | | | | | 1.00 | $135.00 |
| TOTAL | | 1.75 | 10.75 | 0.00 | 0.00 | 0.00 | 0.00 | 12.50 | $3,728.75 |

I certify that the time documented above is accurate and was incurred for the common benefit of claimants in MDL 1657.
Signature _____   Date: _7/25/2008_
Dylan J. McFarland

FAC Resp. Exhibit B -- 800

| | Firm Name: Heins Mills | | |
|---|---|---|---|
| | **Name** | **Title/Position with Firm \*** | **Current Hourly Rate** |
| 1 | Stacey Mills | Sr. Partner | $675 |
| 2 | David Woodward | Sr. Partner | $665 |
| 3 | Daniel Hedlund | Jr. Partner | $505 |
| 4 | Jessica Servais | Sr. Associate | $390 |
| 5 | Irene Kovarik | Paralegal | $200 |
| 6 | Katie Marshall \* | Other \* | $150 |
| 7 | *Katie Marshall | | |
| 8 | was a Document | | |
| 9 | Clerk | | |
| 10 | | | |
| 11 | | | |
| 12 | | | |
| 13 | | | |
| 14 | | | |
| 15 | | | |
| 16 | | | |
| 17 | | | |
| 18 | | | |
| 19 | | | |
| 20 | | | |
| | | | |
| \* | **Select from the following titles:** | | |
| | Sr. Partner | | |
| | Jr. Partner | | |
| | Sr. Associate | | |
| | Associate | | |
| | Jr. Associate | | |
| | Lawyer under 5 years | | |
| | Contract Employee | | |
| | Paralegal | | |
| | Law Clerk | | |
| | Secretary | | |
| | Administrative Assistant | | |

FAC Resp. Exhibit B -- 801

# Detail Fee Transaction File List

Heins Mills & Olson, P.L.C.

| Client | Trans Date | Tmkr | H P | Tcd | Rate | Hours to Bill | Amount | | Ref # |
|---|---|---|---|---|---|---|---|---|---|

**Timekeeper 3 STACEY L. MILLS**

| 4433.00 | 10/12/2005 | 3 | P | 1 | 590.00 | 0.25 | 147.50 | REVIEW STATUS UPDATE LETTER SENT TO COUNSEL IN THIS REGION.<br>VIOXX | 21 |
| | | | | | **Subtotal for Tcode 1** | Billable | 0.25 | 147.50 | | |
| | | | | | **Total for Timekeeper 3** | Billable | 0.25 | 147.50 | STACEY L. MILLS | |

**Timekeeper 8 IRENE M. KOVARIK**

| 4433.00 | 09/28/2005 | 8 | P | 1 | 175.00 | 1.50 | 262.50 | ESTABLISH FILE MANAGEMENT SYSTEM; REVIEW, ANALYZE AND INDEX CASE DOCUMENTS.<br>VIOXX | 20 |
| | | | | | **Subtotal for Tcode 1** | Billable | 1.50 | 262.50 | | |
| 4433.00 | 07/19/2005 | 8 | P | 2 | 175.00 | 2.50 | 437.50 | PREPARE COVERSHEET, LETTER TO CLERK AND SUMMONS; EMAILS TO D. HEDLUND REGARDING LETTER AND SUMMONS TO CLERK.<br>VIOXX | 10 |
| 4433.00 | 07/20/2005 | 8 | P | 2 | 175.00 | 0.25 | 43.75 | EMAILS WITH D. HEDLUND REGARDING FILING MATTERS AND RELATED CASES.<br>VIOXX | 11 |
| 4433.00 | 07/21/2005 | 8 | P | 2 | 175.00 | 0.25 | 43.75 | CONFER WITH D. HEDLUND REGARDING FILING PAPERS.<br>VIOXX | 12 |
| | | | | | **Subtotal for Tcode 2** | Billable | 3.00 | 525.00 | | |
| | | | | | **Total for Timekeeper 8** | Billable | 4.50 | 787.50 | IRENE M. KOVARIK | |

**Timekeeper 42 DANIEL C. HEDLUND**

| 4433.00 | 07/18/2005 | 42 | P | 2 | 440.00 | 1.25 | 550.00 | CONFERENCE WITH M. WEINKOWITZ REGARDING FILING OF VIOXX COMPLAINT; REVIEW AND EDIT COMPLAINT; RESEARCH REGARDING APPLICABLE MINNESOTA STATUTES; CONFERENCE WITH J. SERVAIS REGARDING SAME.<br>VIOXX | 16 |
| 4433.00 | 07/19/2005 | 42 | P | 2 | 440.00 | 1.00 | 440.00 | REVIEW AND EDIT COMPLAINTS FOR MINNESOTA AND WISCONSIN; RESEARCH REGARDING APPLICABLE STATE STATUTES; CONFERENCE WITH M. WEINKOWITZ AND J. SERVAIS REGARDING SAME; CONFERENCE WITH I. KOVARIK REGARDING FILING AND SERVICE OF SAME.<br>VIOXX | 17 |
| 4433.00 | 07/20/2005 | 42 | P | 2 | 440.00 | 0.75 | 330.00 | CONFERENCE WITH M. WEINKOWITZ REGARDING VIOXX COMPLAINT; REVIEW AND EDIT SAME.<br>VIOXX | 18 |
| 4433.00 | 07/21/2005 | 42 | P | 2 | 440.00 | 0.50 | 220.00 | FINAL REVIEW AND EDIT TO COMPLAINT; CONFERENCE WITH I. KOVARIK REGARDING FILING DETAILS.<br>VIOXX | 19 |
| | | | | | **Subtotal for Tcode 2** | Billable | 3.50 | 1,540.00 | | |
| | | | | | **Total for Timekeeper 42** | Billable | 3.50 | 1,540.00 | DANIEL C. HEDLUND | |

**Timekeeper 95 JESSICA N. SERVAIS**

| 4433.00 | 07/18/2005 | 95 | P | 2 | 325.00 | 1.50 | 487.50 | DISCUSS VIOXX CASE WITH D. HEDLUND IN PREPARATION FOR FILING MINNESOTA COMPLAINT; REVIEW CASE LAW REGARDING STRICT LIABILITY; REVIEW MINNESOTA STATUTES REGARDING STRICT LIABILITY.<br>VIOXX | 14 |
| 4433.00 | 07/19/2005 | 95 | P | 2 | 325.00 | 1.50 | 487.50 | CONDUCT CASE LAW AND STATUTORY RESEARCH REGARDING STRICT LIABILITY AND COMPARATIVE FAULT IN MINNESOTA IN PREPARATION FOR FILING MINNESOTA COMPLAINT.<br>VIOXX | 15 |
| | | | | | **Subtotal for Tcode 2** | Billable | 3.00 | 975.00 | | |
| | | | | | **Total for Timekeeper 95** | Billable | 3.00 | 975.00 | JESSICA N. SERVAIS | |

**Timekeeper 96 DAVID R. WOODWARD**

| 4433.00 | 07/18/2005 | 96 | P | 2 | 575.00 | 0.25 | 143.75 | RESEARCH PRODUCTS LIABILITY ISSUE.<br>VIOXX | 9 |
| | | | | | **Subtotal for Tcode 2** | Billable | 0.25 | 143.75 | | |
| | | | | | **Total for Timekeeper 96** | Billable | 0.25 | 143.75 | DAVID R. WOODWARD | |

FAC Resp. Exhibit B -- 802

**Detail Fee Transaction File List**
Heins Mills & Olson, P.L.C.

| Client | Trans Date | Tmkr | H P | Tcd | Rate | Hours to Bill | Amount | | Ref # |
|---|---|---|---|---|---|---|---|---|---|
| Timekeeper 120 KATIE E. MARSHALL | | | | | | | | | |
| 4433.00 | 07/22/2005 | 120 | P | 2 | 135.00 | 1.00 | 135.00 | FILE COMPLAINT AND SEND PAPERS TO CO-COUNSEL. VIOXX | 13 |
| Subtotal for Tcode 2 | | | | | Billable | 1.00 | 135.00 | | |
| Total for Timekeeper 120 | | | | | Billable | 1.00 | 135.00 | KATIE E. MARSHALL | |
| GRAND TOTALS | | | | | | | | | |
| | | | | | Billable | 12.50 | 3,728.75 | | |

FAC Resp. Exhibit B -- 803

Thursday 07/24/2008  3:48 pm

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re:  VIOXX | : | |
| | : | MDL Docket NO. 1657 |
| PRODUCTS LIABILITY LITIGATION | : | |
| | : | SECTION "L" |
| | : | |
| This document relates to: ALL CASES | : | JUDGE FALLON |
| | : | MAG. JUDGE KNOWLES |

**AFFIDAVIT OF RUSS M. HERMAN, ESQ.,
IN SUPPORT OF AN ALLOCATION OF
COMMON BENEFIT AWARD BY
HERMAN, HERMAN, KATZ & COTLAR, LLP,
<u>PURSUANT TO PRE-TRIAL ORDER NO. 6(D)</u>**

I, Russ M. Herman, Esq. ("RMH"), being duly sworn, make the following statement from personal knowledge.

1.  I am a partner in the law firm of Herman, Herman, Katz & Cotlar, LLP ("HHKC"), whose address is 820 O'Keefe Avenue, New Orleans, Louisiana, 70113.

2.  This Affidavit is submitted in support of HHKC's's application for an award of attorneys' fees and expenses associated with its common benefit effort in prosecuting the above captioned litigation.

3.  During its participation in this litigation, HHKC had eight (8) attorneys and more than eleven (11) support staff (totaling nineteen (19) individuals who recorded time[1]) working in furtherance of this matter, totaling in excess of approximately 18,883[2] hours.  Some of the major contributions of HHKC's efforts are as follows:

    (a)  HHKC was involved in all aspects of the MDL proceedings and coordinated activities with states handling Vioxx claims.   Pursuant to Pre-Trial Order No. 2, dated February 28, 2005, RMH was appointed Plaintiffs' Liaison Counsel in the MDL.  Pursuant to Pre-Trial Order No. 6, dated April 8, 2005, RMH was appointed a member of the PSC Executive Committee. RMH was

---

[1]  Substantially more than 19 individuals from HHKC worked on the Vioxx litigation.  Additional support staff participated daily in activities such as organization, filing, typing, bookkeeping, and other essential functions required of Plaintiffs' Liaison Counsel.

[2]  Additional time has been submitted to Wegmann Dazet, but has not yet been fully recorded. Furthermore, many time entries by HHKC attorneys and employees for work that involved less than 10 minutes of time was often not recorded. For example, counsel, paralegals and secretaries received daily e-mails, telephone calls, performed routine Liaison Counsel functions and addressed other communications that were frequently responded to quickly and time entries were not recorded.

FAC Resp. Exhibit B -- 804

also appointed by the Court to act as a member and Chairman of the Negotiating Plaintiffs' Counsel ("NPC") (see Pre-Trial Order No. 6(C), entered April 10, 2005); Chairman of the Fee Allocation Committee pursuant to Pre-Trial Order No. 32, entered November 20, 2007; designated as a member of the Gates Committee. These appointments resulted in HHKC actively participating and arguing common benefit motions, appearances at conferences and hearings, attending many of the depositions, leadership of: (i) the Plaintiffs' Steering Committee; (ii) the Plaintiffs' Executive Committee; (iii) the Plaintiffs' Negotiating Committee; (iv) the Gates Committee; (v) the Fee Allocation Committee; and (vi) each standing committee. HHKC drafted motions, responses to discovery, monitored trials, developed strategy, selected and assigned tasks to committees, developed and supervised the depository and coordinated depositories throughout the country, coordinated State appointed liaison counsel, handled internal matters and provided leadership. Leonard A. Davis (LAD), with the approval of the Honorable Eldon E. Fallon, assisted in all matters in which HHKC was involved and regularly participated in duties assigned by RMH and the Court. Stephen J. Herman (SJH) also assisted in many of these matters and was directly involved in both briefing and strategy for the MDL. RMH and/or LAD and/or SJH were involved in each and every aspect of the handling of the litigation, from discovery through preparation for trials, attendance at trials and ultimate settlement. Their activities throughout the litigation included, but were not limited to organization, strategy, tactics, assignments, drafting of pleadings (see Exhibits "A" and "B"), attendance at every hearing, drafting every joint report and attended every status conference (see Exhibit "C"), noticing and/or attendance in taking of depositions (see Exhibit "D"), preparing and filing various discovery pleadings and responses (see Exhibits "E", "F", "G" and "H"), monitoring and attendance at trials in the MDL as well as state trials in New Jersey, developing, organizing and preparing the PSC trial package, attendance at numerous meetings, planning and participating in strategy, settlement negotiations and implementation of the Settlement Agreement. In addition, RMH established a professional working relationship and rapour during negotiations with Merck counsel necessary to resolution of and post settlement issues. HHKC was active in every aspect of the litigation.

4.     HHKC was responsible for keeping the Vioxx MDL litigation up and running throughout the period of post Hurricane Katrina. The entire New Orleans MDL was uprooted and transferred to Houston, Texas, and later back to New Orleans. HHKC coordinated with Merck and the Court to move all files, discovery, etc., so that the MDL continued to work without interruption while temporarily located in Houston. A satellite office of HHKC was established in Houston, Texas[3] primarily for the

---

[3] Additional HHKC offices were established in Atlanta, Georgia and Destin Florida. These offices also assisted in the Vioxx MDL.

FAC Resp. Exhibit B -- 805

purpose of handling the Vioxx MDL. During that period of time, members of HHKC also participated in many days of the MDL trial in Houston, Texas.

5.      HHKC has practiced law in New Orleans, Louisiana, for more than sixty-five (65) years and has extensive experience in class actions, multi-district litigation, complex litigation.

6.      During the course of handling the Vioxx litigation, HHKC committed financial resources to the case in the form of regular assessments thus far totaling $275,000.00, as well as held costs in excess $142,000.00.

7.      HHKC coordinated individual cases, class action cases and tolling agreement claimants, all of which either transferred to the MDL or administered within the MDL. HHKC maintained contact with all plaintiffs' counsel and was successful in promoting cooperation and cohesiveness to the benefit of the plaintiffs' group as a whole. Further, HHKC coordinated the *pro se* claimants matters and upon the curator being appointed in the MDL, continued to liaison with the Court appointed curator. HHKC also coordinated and liaisoned with all counsel for Merck.

8.      Upon being appointed as Plaintiffs' Liaison Counsel, HHKC did not accept any additional Vioxx cases because it perceived a potential conflict with its liaison and executive committee duties, and further refused to become involved in other COX-2 cases, including, Celebrex and Bextra, because of potential conflicts, including "alternative safe design" and other issues. Additionally, HHKC declined involvement in other large complex cases such as Baycol, Zyprexa, and other litigation and referred claimants to other counsel without fee to HHKC.

9.      The work performed by HHKC was for common benefit of all plaintiffs in this MDL proceeding.

RUSS M. HERMAN, ESQ.

SWORN TO AND SUBSCRIBED
BEFORE ME THIS 31ˢᵗ DAY
OF _October_, 2008.

NOTARY PUBLIC
Name: Leonard A Davis
Bar No. 14190

# MOTIONS FILED BY THE PSC
# IN THE VIOXX MDL:

| MOTION FILED | DATE FILED |
|---|---|
| PSC Motion and Order Regarding Local Rule 23.1B | 6/10/2005 |
| Plaintiffs' Steering Committee's (PSC) Motion for Extension of Time in Which to File Common Benefit Time and Expense Records | 6/15/2005 |
| Motion to Modify June 6 2005 Order | 6/17/2005 |
| Plaintiffs' Motion for Protective Order Regarding Unilateral Cross-Noticing of New Jersey Depositions in the MDL and Incorporated Memo in Support | 8/5/2005 |
| Motion to Amend Caption of Plaintiffs' Steering Committee's Ancillary Notice Concerning Master Complaints for Personal Injury and Medical Monitoring | 8/10/2005 |
| Motion to Amend Caption of Plaintiffs' Purchase Claims Master Class Action Complaint | 8/10/2005 |
| Motion to Amend Caption of Plaintiffs' Master Class Action Complaint (Medical Monitoring) | 8/10/2005 |
| Motion to Amend Caption of Plaintiffs' Master Class Action Complaint (Personal Injury and Wrongful Death) | 8/10/2005 |
| Motion to Compel Answers to Master Set of Interrogatories and Responses to Master Set of Request for Production of Documents (Foreign Vioxx Related Activities), with memoranda in support and Notice of Hearing | 8/26/2005 |
| Motion to Compel Answers to Master Set of Interrogatories and Responses to Master Set of Request for Production of Documents (Concerning ARCOXIA), with supporting memoranda and Notice of Hearing | 8/26/2005 |
| Plaintiffs' Steering Committee's Response to Defendants' Motion to Partially Strike Plaintiffs' Personal Injury and Wrongful Death Master Class Action Complaint | 9/28/2005 |
| Plaintiffs' Steering Committee's Motion to Amend the Master Class Action Complaint (Personal Injury and Wrongful Death) to Add by Interlineation Additional Plaintiff Representatives in Newly Filed Class Complaint | 9/28/2005 |



EXHIBIT
A

FAC Resp. Exhibit B -- 8

| | |
|---|---|
| Plaintiffs' Steering Committee's Motion to Amend the Master Class Action Complaint (Medical Monitoring) to Add by Interlineation Additional Plaintiff Representatives in Newly Filed Class Complaint | 9/28/2005 |
| The Plaintiffs' Steering Committee's Motion to Stay Class Briefing and Memorandum of Law in Support of Motion to Stay Class Briefing | 10/1/2005 |
| Motion to Compel Production of Documents Improperly Claimed as Privileged on Merck's Privilege Log, with supporting memoranda and exhibits | 10/7/2005 |
| Plaintiff's Motion to Exclude Opinion Testimony of Dr. Frank Lanza and Dr. Merlin Wilson, with supporting memoranda, exhibits and Notice of Hearing | 10/21/2005 |
| Plaintiff's Motion to Exclude Opinion Testimony of Dr. David Silver, with supporting memoranda, exhibits and Notice of Hearing | 10/21/2005 |
| Plaintiff's Motion to Exclude OpinionTestimony That Merck Could Not Provide Risk Information Through Labeling or Marketing Without Prior Approval of the Federal Food and Drug Administration, with supporting memoranda, exhibits and Notice of Hearing | 10/21/2005 |
| Plaintiff's Motion to Exclude Opinion Testimony That Vioxx is the Same as all NSAIDS Regarding Cardiotoxic Effects, with supporting memoranda, exhibits and Notice of Hearing | 10/21/2005 |
| Plaintiff's Motion to Exclude Opoinion Testimony That Naproxen is Sufficiently Cardioprotective to Explain Excess Cardiac Risk in VIGOR, with supporting memoranda, exhibits and Notice of Hearing | 10/21/2005 |
| Plaintiff's Motion to Exclude Opinion Testimony That Vioxx Cannot Cause Adverse Thrombotic Cardiac Events Unless Ingested Eighteen (18) Months or Longer, with supporting memoranda, exhibits and Notice of Hearing | 10/21/2005 |
| Plaintiff's Motion To Exclude Opinion Testimony of Thomas M. Wheeler, MD | 10/21/2005 |
| Motion for Leave to Attach Exhibit re Plaintiff's Motion to Exclude Opinion Testimony of Dr. Frank Lanza and Dr. Merlin Wilson (attaching Exhibit G) | 10/28/2005 |
| PSC's Motion to Extend Deadline for Submitting Full Participation Option Agreements | 11/2/2005 |

| | |
|---|---|
| Plaintiffs' Steering Committee's Motion for a Suggestion of Remand in Connection With Class Certification Proceedings Pursuant to Plaintiffs' Request in the Alternative for Individual State Class Certifications and for Leave to Seek This MDL Court to Sit by Designation in Each of the Transferor Federal District Court Jurisdictions at Issue, with supporting memoranda, Proposed Pre-Trial Order and Notice of Hearing | 11/4/2005 |
| PSC's Motion for Leave to File Brief in Excess of Page Limits re PSC's Response in Opposition to Merck & Co., Inc.'s Motion to Dismiss Plaintiffs' Medical Monitoring Master Class Action Complaint | 11/8/2005 |
| Plaintiffs' Steering Committee's Motion for Certification of a Nation-wide Class Action for Personal Injury and Wrongful Death, with Supporting Memoranda, Exhibits and Proposed Order | 12/7/2005 |
| Joint Motion to Associate Additional Counsel Per Local Rule 83.2.12 | 12/21/2005 |
| PSC's Motion to Strike and Substitute for Case of Ellis Diaz | 12/30/2005 |
| PSC's Motion for Expedited Hearing on PSC's Motion to Strike and Substitute for Case of Ellis Diaz | 12/30/2005 |
| Motion to Clarify Pre-Trial Order No. 17 Regarding Assembly of Prior Discovery | 1/19/2006 |
| Motion to Quash Deposition of Mal Mixon | 1/20/2006 |
| Motion for Expedited Hearing on PLC's and PSC's Motion to Quash Depo of Mal Mixon | 1/20/2006 |
| PSC's Motion to Amend the First Amended Master Class Action Complaint (Medical Monitoring) to Add by Interlineation Additional Plaintiff Representatives in Newly Filed Class Complaint | 1/23/2006 |
| PSC's Motion to Amend the First Amended Master Class Action Complaint (Personal Injury and Wrongful Death) to Add by Interlineation Additional Plaintiff Representatives in Newly Filed Class Complaints | 1/23/2006 |
| PSC's Reply Memorandum in Support of Motion for Certification of a Nation-Wide Class Action for Personal Injury and Wrongful Death (FILED UNDER SEAL), with Exhibits and Motion for Leave to File Brief in Excess of Page Limits; Motion for Leave to File Brief in Excess of Page Limits | 1/23/2006 |

| | |
|---|---|
| PSC's Substituted Motion to Amend the First Amended Master Class Action Complaint (Medical Monitoring) to Add By Interlineation Additional Plaintiff Representative in Newly Filed Class Complaint | 1/24/2006 |
| PSC's Opposition to the United States Government's Motion to Quash and Cross-Motion to Compel the Deposition of David Graham, M.D., with Exhibits, and Motion for Leave to File Brief in Excess of Page Limits | 1/25/2006 |
| FILED UNDER SEAL - PSC's Motion to Compel the FDA to Produce Documents Withheld in Their Entirety and Unredacted Copies of Other Documents Already Produced | 3/7/2006 |
| PSC's Motion to Implement Procedure for Rapid Remand, with memo in support, and Notice of Hearing | 3/27/2006 |
| The Plaintiffs' Steering Committee's Generic Motion in Limine | 4/19/2006 |
| Plaintiff's Steering Committee's Motion for Rule 37(B)(2)(B) Remedial Relief for Merck's Examination of David Graham, M.D. in Excess of Court Ordered Limitations, with supporting memoranda, exhibits and Notice of Hearing | 5/25/2006 |
| Plaintiffs' Steering Committee's Motion to Compel the Production of Merck Profile Forms and for an Order Compelling Merck to Cease and Desist delaying the production of MPF's based on Unwarranted Grounds with Memorandum in Support of Motion and Notice of Hearing | 8/23/2006 |
| The Plaintiffs' Steering Committee's Motion for Clarification of Pre-Trial Order No. 9 (Re: Cross-Noticing of MDL Expert Depositions) -- with attached Proposed Amended PTO No. 9 | 9/8/2006 |
| Motion for Leave to File Brief in Excess of Page Limits Regarding Plaintiffs Response in Opposition to Merck Motion for Summary Judgment | 9/14/2006 |
| Motion for Leave of Court to File Supplemental Authority in Opposition to Merck Motion for Summary Judgment | 9/28/2006 |
| Motion for Leave of Court to File Second Supplemental Authority in Opposition to Merck Motion for Summary Judgment | 10/4/2006 |
| Motion for Leave of Court to File Third Supplemental Authority in Opposition to Merck Motion for Summary Judgment | 10/11/2006 |

| | |
|---|---|
| Motion for Leave of Court to File Fourth Supplemental Authority in Opposition to Merck Motion for Summary Judgment | 10/17/2006 |
| Motion for Leave of Court to File Fifth Supplemental Authority in Opposition to Merck Motion for Summary Judgment | 10/27/2006 |
| Motion for Order Allowing the Plaintiffs' Steering Committee to File an Amicus Brief in Connection With the Motion for New Trial | 10/30/2006 |
| Motion for Expedited Hearing and Incorporated Memorandum to File an Amicus Brief in Connection With the Motion for New Trial | 10/30/2006 |
| Plaintiff's Motion for Protective Order re Texas Cross-Noticing | 10/30/2006 |
| Motion for Expedited Hearing and Incorporated Memorandum regarding Motion for Protective Order re Texas Cross-Noticing | 10/30/2006 |
| Motion to Compel Responses to Plaintiffs' Steering Committee's Third Set of Interrogatories and Third Set of Requests for Production of Documents Directed to Merck & Co., Inc. | 11/13/2006 |
| Motion for Leave of Court by the Plaintiffs' Steering Committee to File Reply Brief on Behalf of Plaintiffs Lene Arnold and Alicia Gomez Regarding Supplemental Authority | 11/15/2006 |
| Motion to Compel Third-Party Subpoenas re Martin Report | 11/22/2006 |
| Motion for Leave of Court to File Sixth Supplemental Authority in Opposition to Merck Motion for Summary Judgment | 11/30/2006 |
| PSC's Motion for a Protective Order Relative to the Perpetuation Deposition of Dr. Eliav Barr and the Discovery Deposition of Robert Silverman and for Expedited Re-Review and or Release of Certain Documents Previously Found Not to Be Privileged | 12/8/2006 |
| Motion for Expedited Hearing and Incorporated Memorandum regarding PSC's Motion for a Protective Order Relative to the Perpetuation Deposition of Dr. Eliav Barr and the Discovery Deposition of Robert Silverman and for Expedited Re-Review and or Release of Certain Documents Previously Found Not to Be Privileged | 12/8/2006 |
| Motion for Leave to File Seventh Notice of Supplemental Authority in Opposition to Merck Motion for Summary Judgment | 12/22/2006 |

| | |
|---|---|
| Motion for Leave of Court to File Supplemental Authority in opposition to Merck & Co's motion for protective order prohibiting discovery related to the Martin Report, and in support of its motion to compel compliance with third-party subpoenas. | 1/5/2007 |
| Motion for Leave of Court to File Supplemental Authority relating to all medical monitoring class action complaints pending or subject to transfer to MDL | 1/16/2007 |
| Motion for Leave to file Brief in Excess Page Limits Regarding Response to the Joint Motion of Merck & Co, Inc. and Insurers to Quash and/or for Protective Order Preventing Irrelevant and Inappropriate Insurance Related Discovery | 1/22/2007 |
| Plaintiffs' Steering Committee's Motion to Amend the Second Amended Master Class Action Complaint (Personal Injury and Wrongful Death) to Add By Interlineation Additional Plaintiff Representative in Previously Filed Class Complaint | 1/29/2007 |
| The Plaintiffs' Steering Committee's Motion to Alter or Amend the Judgement of this Court's Order of March 5, 2007 (Re: The Martin Report) | 3/12/2007 |
| The Plaintiffs' Steering Committee's Motion to Compel the Return of Attorney Work Product | 3/29/2007 |
| The Plaintiffs' Steering Committee's Motion for Protective Order | 3/30/2007 |
| Motion for Leave of Court to File Second Supplemental Authority Re: Medical Monitoring | 4/12/2007 |
| Motion for Leave of Court to File Eighth Supplemental Authority in Opposition to Merck Motion for Summary Judgment | 5/2/2007 |
| PSC's Renewed Motion to Implement Procedure for Rapid Remand | 5/2/2007 |
| Plaintiffs' Steering Committee's Motion to Conduct Case Specific Discovery | 5/31/2007 |
| Motion for Leave of Court to File Supplemental Authority to the Plaintiffs' Steering Committee's Motion to Conduct Case-Specific Discovery | 6/8/2007 |
| Motion for Leave to File Ninth Notice of Supplemental Authority in Opposition to Merck Motion for Summary Judgment | 6/12/2007 |

| Motion for Leave of Court to File Tenth Notice of Supplemental Authority in Opposition to Merck Motion for Summary Judgment | 6/15/2007 |
|---|---|
| Motion for Leave to File Supplemental Brief in Support of Motion for Protective Order | 6/26/2007 |
| The Plaintiffs' Steering Committee's Motion to Alter or Amend This Court's Minute Entry of June 28, 2007 Re: Motion for Protective Order | 7/9/2007 |
| Motion for Leave to File Third Notice of Supplemental Authority re Medical Monitoring | 8/2/2007 |
| Motion for Leave to File Supplemental Authority Regarding Merck Motion & Memorandum to alter or amend the court's July 3, 2007 Order Denying Merck's Motion for Summary Judgment to Include Certification for Interlocutory Review Pursuant to 28 U.S.C Section 1292(b) | 8/13/2007 |
| Motion for Leave to File Second Supplemental Authority Regarding Merck Motion & Memorandum to alter or amend the court's July 3, 2007 Order Denying Merck's Motion for Summary Judgment to Include Certification for Interlocutory Review Pursuant to 28 U.S.C Section 1292(b) | 8/23/2007 |
| Motion for Leave to File Third Notice of Supplemental Authority Regarding Merck Motion & Memorandum to alter or amend the court's July 3, 2007 Order Denying Merck's Motion for Summary Judgment to Include Certification for Interlocutory Review Pursuant to 28 U.S.C Section 1292(b) | 8/30/2007 |
| The Plaintiffs' Steering Committee's Emergency Motion to Lift Stay for Purposes of Conducting Discovery Regarding the Website Known as "OfficialVioxSettlement.Com" | 12/12/2007 |
| The Plaintiffs' Steering Committee's Emergency Motion to Lift Stay for Purposes of Conducting Discovery Regarding Certain Medical Records in the Possession of Express Scripts, Inc. | 12/12/2007 |
| Motion for Leave to File Sur-Reply to Mr. Stratton's Reply to the PSC's Response to Mr. Stratton's Motion to Release Trial Package | 12/13/2007 |
| The Plaintiffs' Steering Committee's Unopposed Motion to Lift Stay for Purposes of Conducting Discovery Regarding Certain Records in the Possession of the Food and Drug Administration | 1/10/2008 |

| | |
|---|---|
| PSC's Motion to Compel Express Scripts to Comply with the Request Made in Connection with the Vioxx Settlement Program for the Prescription Drug Documents or Data Needed for the Vioxx Settlement Program | 2/8/2008 |
| Motion for Expedited Hearing on PSC's Motion to Compel Express Scripts | 2/8/2008 |
| Plaintiffs' Steering Committee's Motion to Dismiss the Verified Petition of Healthcare Recoveries, Inc. | 3/10/2008 |
| Plaintiffs' Steering Committee's Motion to Extend the Date of Implementation of Pre-Trial Order No. 6C | 5/15/2008 |
| Motion to Dismiss and Strike Class Allegations in the Complaint filed by 1199SEIU Greater New York Benefit Fund and The New York State Teamsters Council Health and Hospital Fund | 6/26/2008 |
| Motion for Leave of Court By the NPC Defendants to File Surreply in Opposition to Plaintiff's Motion for Preliminary Injunction | 7/23/2008 |
| The PSC's Motion to Compel Express Scripts to Comply With the Subpoena Request for Prescription Drug Documents or Data | 8/7/2008 |

## OPPOSITIONS TO MOTIONS FILED BY THE PSC
## IN THE VIOXX MDL:

| OPPOSITION TO MOTION FILED | DATE FILED |
|---|---|
| Plaintiffs' Steering Committee's Response to Defendants' Motion to Partially Strike Plaintiffs' Personal Injury and Wrongful Death Master Class Action Complaint | 9/28/2005 |
| Plaintiff Steering Committee's Response to Defendant Merck & Co., Inc.'s Motion to Dismiss Biondillo and Sheet Metal Workers, et al Complaints | 10/11/2005 |
| The PSC's Response in Opposition to Merck & Co., Inc.'s Motion to Dismiss Plaintiffs' Purchase Claims Master Class Action Complaint, with Exhibits (FILED UNDER SEAL) | 11/8/2005 |
| PSC's Opposition to the United States Government's Motion to Quash and Cross-Motion to Compel the Deposition of David Graham, M.D., with Exhibits, and Motion for Leave to File Brief in Excess of Page Limits | 1/25/2006 |
| PSC's Response in Opposition to Motley Rice LLP's Motion for Clarification of Pre-Trial Order No. 19 | 1/27/2006 |
| Memorandum in Opposition to Merck & Co., Inc.'s Motion for Reconsideration of the Court's April 3, 2006 and April 4, 2006 Minute Entries | 4/10/2006 |
| The Plaintiffs' Steering Committee's Surreply in Opposition to Merck & Co., Inc.'s Motion for Reconsideration of the Court's April 3, 2006 and April 4, 2006 Minute Entries | 4/13/2006 |
| Response by Plaintiffs' Steering Committee to Motion for an Order Directing Lexis-Nexis and Other Vendors to Enable Registration of Pro Se Plaintiffs Who Is Not An Attorney | 5/3/2006 |
| Plaintiffs' Response in Opposition to Merck & Co.'s Motion for Summary Judgment (Arnold, Lene vs Merck & Co Inc et al) | 9/15/2006 |
| Plaintiffs' Response in Opposition to Merck & Co.'s Motion for Summary Judgment. (Gomez, Alicia vs Merck & Co Inc) | 9/15/2006 |



EXHIBIT
B

| | |
|---|---|
| Plaintiffs' Steering Committee's Opposition to the Motion of Merck & Co ("Merck") For a Protective Order Regarding the Trial Preservation Deposition of John W. Farquhar | 10/30/2006 |
| Plaintiffs' Memorandum of Law in Opposition of Merck & Co., Inc.'s Motion for a Protective Order Prohibiting Discovery of Attorney Work Product Relating to the Martin Report | 11/1/2006 |
| Plaintiffs' Surreply in Opposition to Merck & Co., Inc.'s Motion for Protective Order Prohibiting Discovery of Attorney Work Product Relating to the Martin Report | 11/7/2006 |
| Plaintiffs' Steering Committee as Amicus Curiae in Response to the Motion of Merck & Co., Inc. for a New Trial On All Issues | 11/10/2006 |
| Plaintiffs' Opposition to Merck's Motion for a Protective Order Regarding the Trial Preservation Deposition of Steven Nissen, MD | 11/29/2006 |
| Plaintiffs' Memorandum of Law in Opposition to Merck's Motion for Summary Judgment (Edmonds, Boyd et al vs Merck & Co Inc) | 1/4/2007 |
| Plaintiffs' Memorandum of Law in Opposition to Merck's Motion for Summary Judgment; (Stinson, Donald vs Merck & Co Inc et al) | 1/4/2007 |
| Plaintiffs' Memorandum of Law in Opposition to Merck's Motion for Summary Judgment; (Watson, Timothy R vs Merck & Co Inc) | 1/4/2007 |
| PSC's Response to the Joint Motion of Merck and Co, Inc. and Insurers to Quash and or for Protective Order Preventing Irrelevant and Inappropriate Insurance Related Discovery | 1/22/2007 |
| PSC's Surreply in Opposition to Merck and Insurers Motion for Protective Order Regarding Insurance Discovery | 2/8/2007 |
| Response of the PSC to Merck's Notice of Supplemental Authority in Support of Merck's Motion for a Protective Order Prohibiting Discovery of Attorney Work Product and Privileged Communications Related to the Martin Report | 2/27/2007 |
| The PSC's Response in Opposition to Merck's Motion to Strike Class Action Allegations in Plaintiff's Medical Monitoring Master Class Action Complaint | 3/19/2007 |

| | |
|---|---|
| The PSC's Surreply in Opposition to Merck's Motion to Strike Class Action Allegations in Plaintiff's Medical Monitoring Master Class Action Complaint | 4/9/2007 |
| The Plaintiffs' Steering Committee's Memorandum in Opposition to Defendants Lifetime Medical Center's and Lifetime Healthcare, Inc.'s Rule and Incoporated Memorandum to Show Cause Why Cases Should Not Be Dismissed With Prejudice For Failure to Provide Any Response to the Plaintiff Profile Form As Required by Pre-Trial Order No. 18C | 6/18/2007 |
| The Plaintiffs' Steering Committee, as Amicus Curiae, Brief in Opposition to Defendant Merck & Co., Inc.'s Rule to Show Cause Why Cases Should Not Be Dismissed for Providing Grossly Deficient Plaintiff Profile Forms in Contravention of Pretrial Order 18(C) | 7/25/2007 |
| The Plaintiffs' Steering Committee's Memorandum of Law in Opposition to Merck's Motion and Memorandum to Alter or Amend the Court's July 3, 2007 Order Denying Merck's Motion for Summary Judgment to Include Certification for Interlocutory Review Pursuant to 28 U.S.C. Sec. 1292(b) | 7/26/2007 |
| Plaintiffs' Steering Committee as Amicus Curiae in Response to the [Renewed] Motion of Merck & Co., Inc. for a New Trial | 8/10/2007 |
| PSC's Response to Merck's Notice of Supplemental Authority in Support of Merck's Motion to Alter or Amend Preemption Ruling | 8/29/2007 |
| Plaintiffs' Steering Committee's ("PSC") Omnibus Memorandum of Law in Opposition to Merck's Motions for Summary Judgment; (Alvarado, Ramon et al vs Merck & Co Inc) | 11/1/2007 |
| Plaintiffs' Steering Committee's ("PSC") Omnibus Memorandum of Law in Opposition to Merck's Motions for Summary Judgment; (Dawson, Marilyn et al vs Merck & Co Inc) | 11/1/2007 |
| Plaintiffs' Steering Committee's ("PSC") Omnibus Memorandum of Law in Opposition to Mercks's Motions for Summary Judgment; (Devito, Matthew et al vs Merck & Co Inc) | 11/1/2007 |
| Plaintiffs' Steering Committee's ("PSC") Omnibus Memorandum of Law in Opposition to Merck's Motions for Summary Judgment; (Durbin, Diane vs Merck & Co Inc) | 11/1/2007 |

| | |
|---|---|
| Plaintiffs' Steering Committee's ("PSC") Omnibus Memorandum of Law in Opposition to Merck's Motion for Summary Judgment; (McKeal, Barbara J vs Merck & Co Inc) | 11/1/2007 |
| Plaintiffs' Steering Committee's ("PSC") Omnibus Memorandum of Law in Opposition to Merck's Motions for Summary Judgment; (Noe, Arlene et al vs Merck & Co Inc et al) | 11/1/2007 |
| Plaintiffs' Steering Committee's ("PSC") Omnibus Memorandum of Law in Opposition to Merck's Motions for Summary Judgment; (Pales, Ronald E vs Merck & Co Inc) | 11/1/2007 |
| Plaintiffs' Steering Committee's ("PSC") Omnibus Memorandum of Law in Opposition to Merck's Motions for Summary Judgment; (Preuninger, Donald R et al vs Merck & Co Inc) | 11/1/2007 |
| Plaintiffs' Steering Committee's ("PSC") Omnibus Memorandum of Law in Opposition to Merck's Motions for Summary Judgment; (Ridinger, Jack vs Merck & Co Inc) | 11/1/2007 |
| Plaintiffs' Steering Committee's ("PSC") Omnibus Memorandum of Law in Opposition to Merck's Motions for Summary Judgment; (Tran, Viet vs Merck & Co Inc et al) | 11/1/2007 |
| Plaintiffs' Steering Committee's ("PSC") Omnibus Memorandum of Law in Opposition to Merck's Motions for Summary Judgment; (Tribby, Pamela et al vs Merck & Co Inc) | 11/1/2007 |
| Plaintiffs' Steering Committee's ("PSC") Omnibus Memorandum of Law in Opposition to Merck's Motions for Summary Judgment; (Watson, Timothy R vs Merck & Co Inc) | 11/1/2007 |
| Plaintiffs' Steering Committee's ("PSC") Omnibus Memorandum of Law in Opposition to Merck's Motions for Summary Judgment; (Wyser, David vs Merck & Co Inc) | 11/1/2007 |
| Plaintiffs' Steering Committee's Joint Response to Merck's Motions for Entry of Pretrial Order Re: ("Case Administration Motion") and ("Late Comers Motion") | 11/7/2007 |
| The Plaintiffs' Steering Committee's Response to Mr. Stratton's Motion for Release of Trial Package | 12/10/2007 |
| PSC Response to Amended Motion of Certain Florida Claimants to be Included in the Vioxx MDL Settlement Agreement | 2/14/2008 |

| | |
|---|---|
| Plaintiffs' Steering Committee's REsponse to Certain Plaintiffs' and Their Counsel's Emergency Motion for Modification and or Suspension of Pretrial Order No. 28 | 5/20/2008 |
| The Plaintiff's Steering Committee's and the Negotiating Plaintiff's Counsel's, Each as Amicus Curiae, Memorandum of Law in Opposition to the Motion for Temporary Restraining Order and Preliminary Injunction | 6/20/2008 |
| The NPC Defendant's Response in Opposition to Plaintiffs' Motion for Preliminary Injunction | 7/10/2008 |
| The PSC's and PNC's Counsel's Amicus Curiae Response to the Emergency Motion to Reinstate Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction | 7/16/2008 |
| The NPC Defendants' Surreply in Opposition to Plaintiff's Motion for Preliminary Injunction | 7/23/2008 |

# MONTHLY STATUS CONFERENCES
## IN THE VIOXX MDL:

1.     March 18, 2005
2.     April 28, 2005
3.     May 23, 2005
4.     June 23, 2005
5.     July 19, 2005
6.     August 25, 2005
7.     September 29, 2005
8.     October 27, 2005
9.     December 1, 2005
10.    January 3, 2006
11.    February 2, 2006
12.    March 23, 2006
13.    April 27, 2006
14.    May 18, 2006
15.    June 16, 2006
16.    July 13, 2006
17.    August 24, 2006
18.    September 28, 2006
19.    November 2, 2006
20.    December 14, 2006
21.    January 25, 2007
22.    March 1, 2007
23.    April 12, 2007
24.    May 31, 2007
25.    June 28, 2007
26.    July 27, 2007
27.    September 6, 2007
28.    October 11, 2007
29.    November 9, 2007
30.    December 14, 2007
31.    January 18, 2008
32.    February 21, 2008
33.    March 25, 2008
34.    April 17, 2008
35.    May 22, 2008
36.    June 27, 2008
37.    July 17, 2008
38.    August 20, 2008



FAC Re... Exhibit ... - 82...

EXHIBIT
C

# VIOXX DEPOSITIONS TAKEN IN THE MDL:

| Last Name | First Name | Depo Date | SpecificCase |
|---|---|---|---|
| Abramson, | John D. | 8 /3 /2006 | Smith, Robert G. |
| Alberti, | Peter | 4 /26/2006 | |
| Arnett, | Donna | 10/20/2006 | Dedrick, Anthony Wayne Inc. |
| Arrowsmith - Lowe, | Janet, MD | 10/28/2005 | Plunkett, Evelyn Irvin |
| Arrowsmith - Lowe, | Janet, MD | 6 /7 /2006 | Barnett, Gerald |
| Avorn, | Jerome | 6 /15/2006 | Barnett, Gerald |
| Avorn, | Jerome | 6 /16/2006 | Barnett, Gerald |
| Avorn, | Jerome | 6 /29/2006 | |
| Avorn, | Jerome | 6 /30/2006 | |
| Aycock, | Richard | 9 /28/2005 | Plunkett, Evelyn Irvin |
| Baker, | Darrell | 11/15/2006 | Dedrick, Anthony Wayne |
| Baldwin, | Thomas, MD | 10/6 /2005 | Plunkett, Evelyn Irvin |
| Baldwin, | Thomas, MD | 1 /23/2006 | Plunkett, Evelyn Irvin |
| Barnett, | Gerald D. | 4 /20/2006 | Barnett, Gerald |
| Barnett, | Corinne | 5 /4 /2006 | Barnett, Gerald |
| Barnett, | Gerald D. | 6 /6 /2006 | Barnett, Gerald |
| Barnett, | John | 7 /18/2006 | Barnett, Gerald |
| Barnett, | Corinne | 7 /29/2006 | Barnett, Gerald |
| Barr, | Eliav | 9 /21/2005 | |
| Bartiss, | Dr. Mark | 1 /3 /2006 | |
| Baumgartner, | Susan | 9 /30/2005 | Plunkett, Evelyn Irvin |
| Beach, | Russell | 9 /20/2006 | Beach, Russell and Helen |
| Bella, | Timothy M.D. | 9 /7 /2006 | Persica, Camellia R. |



## VIOXX DEPOSITIONS TAKEN IN THE MDL:

*Assigned to Various BC and Conductee members by the PEC.*

| | | | |
|---|---|---|---|
| Block, | Gilbert | 11/2/2005 | |
| Block, | Gilbert | 8/7/2007 | |
| Bloor, | Colin | 10/5/2005 | Plunkett, Evelyn Irvin |
| Bloor, | Colin | 11/23/2005 | Plunkett, Evelyn Irvin |
| Boykin-McLean, | Kesha | 3/22/2006 | |
| Braunstein, | Ned | 7/18/2006 | |
| Braunstein, | Ned | 7/19/2006 | |
| Bryan, | Foster Curtis | 6/6/2006 | Barnett, Gerald |
| Buchholz, | Molly | 3/14/2006 | |
| Burton, | Joseph | 10/4/2005 | Plunkett, Evelyn Irvin |
| Butler, | James C., MD | 2/8/2006 | Diaz, Ellis Maximo |
| Cannell, | Tom | 12/15/2005 | |
| Carroll, | Martin | 10/27/2005 | |
| Celermajer, | David S. M.D. | 5/20/2007 | |
| Celermajer, | David S. MD | 5/20/2007 | |
| Cleland, | Leslie G. | 5/31/2006 | Barnett, Gerald |
| Cleland, | Leslie G. | 5/10/2007 | |
| Cohen, | Jerome | 8/17/2006 | Smith, Robert G. |
| Coltharp, | William | 9/13/2006 | Dedrick, Anthony Wayne. |
| Courtade, | Daniel J., MD | 6/22/2006 | Smith, Robert G. |
| Curfman, | Gregory | 11/21/2005 | |
| Curfman, | Gregory | 1/24/2006 | Plunkett, Evelyn Irvin |
| Curtis, | Sherry | 9/26/2006 | Dedrick, Anthony Wayne |

FAC Resp. Exhibit B -- 822

# VIOXX DEPOSITIONS TAKEN IN THE MDL:

| | | | |
|---|---|---|---|
| David, | Donald S. | 9 /15/2006 | Mason, Charles Laron |
| DeBauche, | Thomas | 6 /20/2006 | Barnett, Gerald |
| Dedrick, | Anthony Wayne | 9 /7 /2006 | Dedrick, Anthony Wayne |
| Dedrick, | Kenny | 9 /26/2006 | Dedrick, Anthony Wayne |
| Dedrick, | Phil | 9 /26/2006 | Dedrick, Anthony Wayne |
| Dedrick, | Anthony Wayne | 11/24/2006 | Dedrick, Anthony Wayne |
| Diaz, | Ellis | 1 /20/2006 | Diaz, Ellis Maximo |
| Dunn, | James | 10/7 /2005 | Plunkett, Evelyn Irvin |
| Epstein, | Stephen | 5 /30/2006 | Barnett, Gerald |
| Farquhar, | John | 10/10/2005 | |
| Farquhar, | John | 6 /8 /2006 | Barnett, Gerald |
| Farquhar, | John | 7 /19/2006 | Barnett, Gerald |
| Farquhar, | John W. M.D. | 3 /7 /2007 | |
| Farquhar, | John W. M.D. | 3 /8 /2007 | |
| Farquhar, | John W. M.D. | 3 /9 /2007 | |
| Fletcher, | Robert, MD | 1 /20/2006 | |
| Fosslien, | Egil, MD | 6 /8 /2006 | Barnett, Gerald |
| Fries, | James | 6 /16/2006 | |
| Funk, | Colin | 10/2 /2006 | Dedrick, Anthony Wayne |
| Furman, | Mark I. | 11/6 /2006 | Dedrick, Anthony Wayne |
| Gandy, | Whinston H. | 10/10/2005 | Plunkett, Evelyn Irvin |
| Ganellen, | Edward W. MD | 7 /25/2006 | Mason, Charles Laron |
| Gelb, | Ira | 10/12/2006 | Dedrick, Anthony Wayne |

## VIOXX DEPOSITIONS TAKEN IN THE MDL:

| | | | |
|---|---|---|---|
| Gibney, | Raymond | 1 /4 /2006 | |
| Glover, | Anita | 11/7 /2006 | Dedrick, Anthony Wayne |
| Goldstein, | Leslie | 9 /23/2005 | Evelyn Irvin Plunkett |
| Graham, | Michael | 1 /25/2006 | Plunkett, Evelyn Irvin |
| Graham, | David | 5 /9 /2006 | |
| Grefer, | Michael A., MD | 6 /29/2006 | Smith, Robert G. |
| Grefer, | Michael | 6 /29/2006 | Smith, Robert G. |
| Grefer, | Michael | 7 /27/2006 | Smith, Robert G. |
| Grove, | Jay | 7 /26/2006 | Mason, Charles Laron |
| Harding, | Constance | 12/16/2005 | |
| Heintz, | Anna Belle | 12/1 /2006 | Heintz, Susan |
| Herrera, | Esmeraldo | 9 /14/2006 | Dedrick, Anthony Wayne |
| Hillis, | Rodney | 9 /13/2006 | Persica, Camellia R. |
| Irvin, | Ashley | 8 /26/2005 | Plunkett, Evelyn Irvin |
| Isaacs, | Emily | 4 /20/2006 | |
| Jacklin, | Terry | 7 /29/2005 | |
| Jacob, | Saji | 11/7 /2006 | Dedrick, Anthony Wayne |
| Jacobs, | Aaron Aaron Curtis Bowe | 8 /25/2006 | Mason, Charles Laron |
| Jerman, | Jo | 1 /25/2006 | |
| Kapit, | Richard | 9 /30/2005 | |
| Kapit, | Richard | 2 /3 /2006 | |
| Kapit, | Richard | 6 /19/2006 | Barnett, Gerald |
| Karavan, | Mark, MD | 5 /4 /2006 | Barnett, Gerald |

FAC Resp. Exhibit B -- 824

# VIOXX DEPOSITIONS TAKEN IN THE MDL:

| | | | |
|---|---|---|---|
| Karavan, | Mark | 7 /17/2006 | Barnett, Gerald |
| Karavan, | Mark | 7 /17/2006 | Barnett, Gerald |
| Kass, | Barry | 9 /28/2005 | Plunkett, Evelyn Irvin |
| Keep, | Mark M.D. | 8 /17/2006 | Mason, Charles Laron |
| Kim, | KyungMann | 6 /12/2006 | Barnett, Gerald |
| Koenig, | Mark | 9 /12/2006 | Dedrick, Anthony Wayne |
| Labrador, | Larry | 12/16/2005 | |
| Lanza, | Frank | 10/13/2005 | Plunkett, Evelyn Irvin |
| Lawrence, | Rosemary | 12/19/2005 | |
| Lucchesi, | Benedict | 10/18/2005 | Plunkett, Evelyn Irvin |
| Lucchesi, | Benedict | 10/26/2005 | Plunkett, Evelyn Irvin |
| Lucchesi, | Benedict | 9 /7 /2006 | Mason, Charles Laron |
| Madsen, | Bard | 7 /12/2006 | Mason, Charles Laron |
| Marks, | Ronald | 8 /9 /2006 | Smith, Robert G. |
| Mason, | Charles L | 6 /28/2006 | Mason, Charles Laron |
| Mason, | Linda Kaye | 8 /29/2006 | Mason, Charles Laron |
| McAllister, | Melissa | 9 /27/2006 | Dedrick, Anthony Wayne |
| McCaffrey, | Michael, MD | 5 /3 /2006 | Barnett, Gerald |
| McKines, | Charlotte | 4 /20/2006 | |
| McPherson, | John | 9 /12/2006 | Dedrick, Anthony Wayne |
| Mikola, | Michael, MD | 4 /25/2006 | Barnett, Gerald |
| Mixon, | Malachi | 1 /25/2006 | |
| Moye, | Lemuel A. MD | 6 /2 /2006 | Barnett, Gerald |
| Moye, | Lemuel A. MD | 6 /16/2006 | Barnett, Gerald |

# VIOXX DEPOSITIONS TAKEN IN THE MDL:

| | | | |
|---|---|---|---|
| Moye, | Lemuel A. MD | 9 /5 /2006 | Mason, Charles Laron |
| Nissen, | Janice M. | 12/8 /2006 | |
| Nissen, | Steven E. | 12/12/2006 | |
| Olinde, | Andrew MD | 9 /13/2006 | Persica, Camellia R. |
| Olson-Fields, | Karen | 7 /27/2006 | Mason, Charles Laron |
| Pacetti, | Daniel | 9 /28/2005 | Plunkett, Evelyn Irvin |
| Pechmann, | Cornelia | 5 /26/2006 | Barnett, Gerald |
| Pechmann, | Cornelia | 9 /14/2006 | Mason, Charles Laron |
| Pechmann, | Cornelia | 3 /13/2007 | |
| Pechmann, | Cornelia | 3 /13/2007 | |
| Persica, | Cameliia | 7 /17/2006 | Persica, Camellia R. |
| Plunkett, | Evelyn Irvin | 9 /13/2005 | Plunkett, Evelyn Irvin |
| Popma, | Jeffrey John, MD | 6 /13/2006 | Barnett, Gerald |
| Popma, | Jeffrey John | 7 /22/2006 | Barnett, Gerald |
| Popma, | Jeffrey John | 7 /29/2006 | Barnett, Gerald |
| Pratt, | Craig | 10/14/2005 | Plunkett, Evelyn Irvin |
| Pratt, | Craig | 11/2 /2005 | Plunkett, Evelyn Irvin |
| Pratt, | Craig | 1 /31/2006 | Plunkett, Evelyn Irvin |
| Pratt, | Craig | 8 /18/2006 | Smith, Robert G. |
| Pratt, | Craig M. | 10/3 /2006 | Mason, Charles Laron |
| Pratt, | Craig | 10/26/2006 | Dedrick, Anthony Wayne |
| Propper, | Stephen C. | 5 /23/2007 | |
| Raffa, | Frederick | 10/4 /2005 | Plunkett, Evelyn Irvin |

FAC Resp. Exhibit B -- 826

# VIOXX DEPOSITIONS TAKEN IN THE MDL:

| | | | |
|---|---|---|---|
| Rardin, | Charles | 8 /30/2006 | Mason, Charles Laron |
| Ray, | Wayne | 1 /19/2006 | Plunkett, Evelyn Irvin |
| Rayburn, | Barry | 10/12/2005 | Plunkett, Evelyn Irvin |
| Rayburn, | Barry | 2 /1 /2006 | Plunkett, Evelyn Irvin |
| Rivas, | Carol Ann | 1 /26/2006 | McDarby, John |
| Roach, | Paul | 6 /13/2006 | Barnett, Gerald |
| Roach, | Paul | 7 /27/2006 | Barnett, Gerald |
| Roach, | Paul | 8 /22/2006 | Smith, Robert G. |
| Roach, | Paul | 10/24/2006 | Dedrick, Anthony Wayne |
| Rothkopf, | Michael | 9 /20/2006 | Mason, Charles Laron |
| Sander, | Gary | 8 /15/2006 | Smith, Robert G. |
| Sander, | Gary | 9 /5 /2006 | Mason, Charles Laron |
| Schirmer, | Christopher | 9 /6 /2005 | Plunkett, Evelyn Irvin |
| Schirmer, | Allesha | 10/4 /2005 | Plunkett, Evelyn Irvin |
| Silver, | David S., MD | 10/10/2005 | Plunkett, Evelyn Irvin |
| Smith, | Robert G. | 6 /15/2006 | Smith, Robert G. |
| Smith, | Arthur | 9 /11/2006 | Persica, Camellia R. |
| Stanley, | Alfred | 11/7 /2006 | Dedrick, Anthony Wayne |
| Sutherlin, | Elizabeth | 12/1 /2006 | |
| Symkoviak, | Gary | 7 /10/2006 | Mason, Charles Laron |
| Terrell, M.D. | Paul | 1 /5 /2006 | |
| Topol, | Eric | 11/22/2005 | |
| Vogeler, | Douglas | 7 /26/2006 | Mason, Charles Laron |
| Vogeler, | Douglas | 8 /30/2006 | Mason, Charles Laron |

# VIOXX DEPOSITIONS TAKEN IN THE MDL:

| | | | |
|---|---|---|---|
| Weeks, | Mary L. | 9 /29/2005 | Plunkett, Evelyn Irvin |
| Weeks, | John | 9 /29/2005 | Plunkett, Evelyn Irvin |
| Weiner, | Isaac | 8 /24/2006 | Mason, Charles Laron |
| Wheeler, | Thomas M., MD | 10/13/2005 | Plunkett, Evelyn Irvin |
| Zebrack, | James | 8 /30/2006 | Mason, Charles Laron |
| Zipes, | Douglas | 6 /9 /2006 | Barnett, Gerald |
| Zipes, | Douglas | 7 /19/2006 | Barnett, Gerald |

# INTERROGATORIES ISSUED BY THE PSC
# IN THE VIOXX MDL:

| INTERROGATORY REQUEST | DATE REQUESTED |
|---|---|
| Plaintiff Steering Committee's First Set Of Interrogatories to Defendant Merck & Co | 6/7/2005 |
| Plaintiff Steering Committee's Second Set of Interrogatories and Requests for Production of Documents Directed to Defendant, Merck & Co., Inc. | 11/22/2005 |
| Plaintiff Steering Committee's Third Set of Interrogatories and Requests for Production of Documents Directed to Defendant, Merck & Co., Inc. | 9/21/2006 |



FAC Res    Exhibit B    329

# REQUESTS FOR PRODUCTION BY THE PSC
# IN THE VIOXX MDL:

| REQUESTS FOR PRODUCTION | DATE REQUESTED |
|---|---|
| Plaintiff Steering Committee's First Request for Production of Documents to Defendant Merck & Co | 6/7/2005 |
| Plaintiff Steering Committee's Second Set of Interrogatories and Requests for Production of Documents Directed to Defendant, Merck & Co., Inc. | 11/22/2005 |
| Plaintiff Steering Committee's Third Set of Interrogatories and Requests for Production of Documents Directed to Defendant, Merck & Co., Inc. | 9/21/2006 |

**EXHIBIT**

**F**

FAC Resp. Exhibit 5 -- 830

## SUBPOENAS ISSUED BY THE PSC
## IN THE VIOXX MDL:

| THIRD PARTY | DATE REQUESTED |
|---|---|
| About Domain Dotcom Solutions | 12/20/07 |
| Adams, Harold P. Jr., M.D. | 10/08/07 |
| American Alternative Insurance Company | 11/22/06 |
| American Legislative Exchange Council | 7/25/07 |
| Governor Haley Barbour | 7/24/07 |
| Baron, John, MD | Received Documents on 8/16/05 and 8/25/05 |
| Bjorkman, David, MD | 7/09/05 |
| Bresalier, Robert S. , M.D. | Received Documents on 10/25/05 and 9/18/06 |
| Burrelle's Information Services, LLP LLC | |
| Burson-Marsteller | 9/15/06 |
| Califf, Robert, MD | 7/09/05 |
| CNA Casualty of California | 11/21/06 |
| Collagenex Pharmaceuticals | 3/01/06 |
| Columbia Casualty Company | 11/21/06 |
| Continental Casualty Company | 11/21/06 |
| Continental Insurance Company | 11/21/06 |
| The Council of State Governors | 7/25/07 |
| Covance Inc | 9/30/05 and 10/03/05 |
| Governor Mitchell E Daniels Jr. | 7/24/07 |
| DDB Needham Worldwide, Inc. | 2/07/06 |
| Debevoise and Plimpton, LLP (Evans, Martin F.) | 9/15/06 |
| Ebarb, Danny Vincent - New | 11/03/05 |



| | |
|---|---|
| FDA<br>Blumberg, Eric M., Deputy Associate General<br>Counsel | 12/02/04 (FOIA); 12-22-04;<br>10/19/07; and 10/23/07 |
| Federal Insurance Company | 11/21/06 |
| Eichel, Lana | 10/05/05 |
| Express Scripts, Inc. | 12/21/07 and 6/25/08 |
| FitzGerald, Garrett, | 7/09/05 |
| Foote, Cone and Belding Inc. | 10/26/05 |
| Fries, James, MD | 7/09/05 and 1/13/06 |
| Gilmore, Steven Benjamin - New | 11/03/05 and 1/06/06 |
| Gomez, Jennifer R Dean - New | 11/03/05 |
| Graham, David MD - New | 1/18/06 |
| IMS Inc. | 7/09/05 |
| Invacare Corporation | 1/20/06 |
| Isaacs, Emily MD - New | 3/02/06 and 3/15/06 - amended notice |
| Harding, Constance - New | 10/05/05 |
| Kahn, Melissa - New | 10/12/05 |
| Konstam, Marvin | 7/09/05 |
| Kurkowski Market Research, Formerly known<br>as Kurkowski & Associates | 8/16/06 |
| Labrador, Larry | 10/05/05 |
| Lexington Insurance Company | 11/22/06 |
| Lipsky, Peter M.D. | 8/23/05 |
| Mariacher, Han Vo | 11/03/05; 11/11/05 Re Notice;<br>12/12/05 Re Notice |
| Martin, Hon. Judge John S. Jr.; Debevoise and<br>Plimpton, LLP | 9/15/06 |
| Massechussettes Medical Society | 8/19/05 and 11/11/05 |
| McCaffrey, Michael MD | 4/12/06 |

| | |
|---|---|
| McLean, Yokeshia Boykin | 11/03/05 and 2/16/06 |
| Medco Health Solutions Inc. | 10/26/05 |
| Merial Inc. | 8/15/06 |
| Messam, Wayne - New | 10/05/05 |
| Michael Mikolacyzk, M.D. | 4/12/06 |
| Millward Brown, Inc. | 2/07/06 |
| Mindshare Interactive Campaigns, LLC | 2/07/06 |
| Mixon, Malachi | 1/20/06 |
| Mohr, Jay P., M.D., Ph.D | 10/08/07 |
| National Conference of State Legislators | 7/25/07 |
| National Governors Association, Hall of the States | 7/25/07 |
| Neaton, James, PhD | 7/09/05 |
| Nissen, Steven, MD | 7/09/05 |
| NitroMed Inc. | 8/19/05 |
| North Rock Insurance Company Limited | 11/22/06 |
| Oates, John, MD | 7/09/05 |
| Ogilvy Public Relations Worldwide, Inc. | 2/07/06 and 9/15/06 |
| Per-Se Technologies Inc. | 8/16/06 |
| Petri, Michelle M.D., M.P.H. | 8/24/05 |
| Rarick, Lisa F. MD | 7/06/07 |
| Rosenthal, Leigh | 10/05/05 |
| Shepherd, Mecole L. | 11/03/05 and 2/16/06 |
| Simon, Lee S., M.D | 8/19/05 |
| Steadfast Insurance Company | 11/22/06 |
| Strategyx Inc.; Formerly known as E.M.A. Health | 8/16/06 |
| Strom, Brian, MD, MPH | 7/09/05 |

| | |
|---|---|
| Taylor, Mary | 10/05/05 |
| Topol, Eric, M.D | 7/09/05 |
| Weinblatt, Michael, MD | 7/09/05 |
| Weisfeldt, Myron, MD | 7/07/05 |
| Yocum, David MD | 10/01/05 |
| Zivin, Justin A., M.D., Ph.D. | 10/08/07 |

# LIST OF THIRD PARTY REQUESTS BY THE PSC
# IN THE VIOXX MDL:

| THIRD PARTY | DATE REQUESTED | DOCUMENTS PRODUCED |
|---|---|---|
| About Domain Dotcom Solutions | 12/20/07 | None Producced to the Depository |
| Adams, Harold P. Jr., M.D. | 10/08/07 | None Producced to the Depository |
| American Alternative Insurance Company | 11/22/06 | None Producced to the Depository |
| American Legislative Exchange Council | 7/25/07 | None Producced to the Depository |
| Governor Haley Barbour | 7/24/07 | 0001-0087 |
| Baron, John, MD | Received Documents on 8/16/05 and 8/25/05 | JAB00001-03254; JAB 03721 - 08106 |
| Bjorkman, David, MD | 7/09/05 | DJB00001-04214 |
| Bresalier, Robert S. , M.D. | Received Documents on 10/25/05 and 9/18/06 | BRES000001-002235 |
| Burrelle's Information Services, LLP LLC | | None Produced to the Depository |
| Burson-Marsteller | 9/15/06 | None Produced to the Depository |
| Califf, Robert, MD | 7/09/05 | CAL0000001-0000860 |
| CNA Casualty of California | 11/21/06 | None Producced to the Depository |
| Collagenex Pharmaceuticals | 3/01/06 | COL0000001-0019113 (Gaps = 0007704; 0007855-7856; 0008323-8326; 0015711-0017714); COL0019115-0039746 (there is no 0019114); COL0039747 - 0042757 |
| Columbia Casualty Company | 11/21/06 | None Producced to the Depository |



FAC Resp Exhibit B -- 1

EXHIBIT
A

| | | |
|---|---|---|
| Continental Casualty Company | 11/21/06 | None Produced to the Depository |
| Continental Insurance Company | 11/21/06 | None Produced to the Depository |
| The Council of State Governors | 7/25/07 | None Produced to the Depository |
| Covance Inc | 9/30/05 and 10/03/05 | None Produced to the Depository |
| Governor Mitchell E Daniels Jr. | 7/24/07 | No bates numbers (Just 3 email communications) |
| DDB Needham Worldwide, Inc. | 2/07/06 | received by email a list of electronic file folders for DDB employees with words "Vioxx" and "Merck" in the title; Also includes outlook folders and a folder list for Vioxx Network Shared Z drive = 4.8 gigs; Seeger Weiss received Docs - DDBP0000001-0063418; 7/21/06 NO received a box of media production from Mike Wagner |
| Debevoise and Plimpton, LLP (Evans, Martin F.) | 9/15/06 | None Producced to the Depository |

| FDA- | SDT for FOIA on 12-02-04; 9/22/04 | Wave 1 - 6 regarding Congressional Hearings; FDACDER 000006-034587; FDACDER-OL 000001-000335; FDAWEB 000001-002532; FDACDER-OL 000058- 000325; and FDACDER 001961.01 -002354; FDACDER-OL002387-033770; 1 CDROM - Marketing and Advertising Documents; FDACDER-DDMAC 000001-008260.01; Email of documents from Lenny (Partial waiver of Privilege Docs); FDACDER 001962; 002364-2385; 002474-2479; 008250; 009462-9464; 010352-10353; 011031-11034; 011041; 011048-011049; 018291-18293; 018642; 018673-18675; 023003; 032054-32060; FDCDER 001931-1935; 002387-2405; 002417-2418; 002443-2444; 002450-2452; 002457-2458; 002460-2463; 002469-2470;  002716-2718; 002723-2724; 002734-2736; 002886-2887; 003726-3730; 004755-4761;  010036-10038;  010499-10500; 010989-10990;  011125-11127; 011975; 017228; 018900; 018994-18995; 019199-19205; 021815-21817; 022056-22062; |
| FDA-<br>Blumberg, Eric M., Deputy Associate General Counsel | 10/19/07 and 10/23/07 | Documents regarding Preemption; FDA000001 -FDA000571; Privilege Log |
| Federal Insurance Company | 11/21/06 | None Produced to the Depository |

| | | |
|---|---|---|
| Express Scripts, Inc. - new | 12/21/07 and 6/25/08 | None Produced to the Depository |
| FitzGerald, Garrett, | 7/09/05 | FITZG 000001-002573 |
| Foote, Cone and Belding Inc. | 10/26/05 | None Produced to the Depository |
| Fries, James, MD | 7/09/05 and 1/13/06 | FRI 00000001-00000100 |
| Graham, David MD | 1/18/06 | None Producced to the Depository |
| IMS Inc. | 7/09/05 | IMS 00001-00117 |
| Invacare Corporation | 1/20/06 | None Producced to the Depository |
| Kahn, Melissa - New | 10/12/05 | None Producced to the Depository |
| Konstam, Marvin | 7/09/05 | MAK 00001-01577 |
| Kurkowski Market Research, Formerly known as Kurkowski & Associates | 8/16/06 | 9/07/06 - by email to Chris Tisi and the email was sent to Mike Wagner |
| Lexington Insurance Company | 11/22/06 | None Produced to the Depository |
| Lipsky, Peter M.D. | 8/23/05 | None Producced to the Depository |
| Martin, Hon. Judge John S. Jr.; Debevoise and Plimpton, LLP | 9/15/06 | None Producced to the Depository |

| | | |
|---|---|---|
| Massechussettes Medical Society | 8/19/05 and 11/11/05 | 2000 NEJM 000001-000139 (Bombardier Article); 2005 NEJM 000001-000262; 000270-000285 (Bresalier Article); 2005 NEJM 000286 - 000318; 2000 NEJMDISK000001-000296; 2000NEMJ000032A; 2000NEJM000283-2000NEJM000289; 8/30/06 Merck sent CD of doucments to NO depository:2000NEJM 000001-000336; 2000NEJMDISK 000001-000296; 2005NEJM000001-000367; NEJM 000001-001157 & 005127-005133 (covers Curfman, Drazen & Steinbrook) |
| Medco Health Solutions Inc. | 10/26/05 | MHS-MDL000001-002684; |
| Merial Inc. | 8/15/06 | None Producced to the Depository |
| Millward Brown, Inc. | 2/07/06 | MWB0000001 - 0079549 |
| Mindshare Interactive Campaigns, LLC | 2/07/06 | None Producced to the Depository |
| Mohr, Jay P., M.D., Ph.D | 10/08/07 | None Producced to the Depository |
| National Conference of State Legislators | 7/25/07 | None Producced to the Depository |
| National Governors Association, Hall of the States | 7/25/07 | 2 documents without bates numbers |
| Neaton, James, PhD | 7/09/05 | JDN 00001-05010 |
| Nissen, Steven, MD | 7/09/05 | NISSEN 0000001-0000777 |
| NitroMed Inc. | 8/19/05 | NM00001-09545 |
| North Rock Insurance Company Limited | 11/22/06 | None Producced to the Depository |
| Oates, John, MD | 7/09/05 | OATES 000001-001630 |

| Ogilvy Public Relations Worldwide, Inc. | 2/07/06 and 9/15/06 | received by email a list of electronic file folders for DDB employees with words "Vioxx" and "Merck" in the title; Also includes outlook folders and a folder list for Vioxx Network Shared Z drive = 4.8 gigs; Seeger Weiss received Docs; Mike Received DDBP0000001-0063418; Received 5 CD's and 1 DVD ?? (sent to us on 3/07/06); Received DDBP docs 6/05/06 |
|---|---|---|
| Per-Se Technologies Inc. | 8/16/06 | None Producced to the Depository |
| Petri, Michelle M.D., M.P.H. | 8/24/05 | Produced only her draft CV and final CV |
| Steadfast Insurance Company | 11/22/06 | None Producced to the Depository |
| Strategyx Inc.; Formerly known as E.M.A. Health | 8/16/06 | STRX000001-0000094 |
| Strom, Brian, MD, MPH | 7/09/05 | STROM 000001-001510 |
| Topol, Eric, M.D | 7/09/05 | TOPOLE 0000001-0000618; |
| Weinblatt, Michael, MD | 7/09/05 | MEW 00001-00133 |
| Weisfeldt, Myron, MD | 7/07/05 | WEIS 000001-000112 |
| Zivin, Justin A., M.D., Ph.D. | 10/08/07 | None Producced to the Depository |



TRIAL ATTORNEYS

F. BOYD HOVDE
FREDERICK R. HOVDE
ROBERT T. DASSOW
NICHOLAS C. DEETS

October 31, 2008

**_Via Federal Express_**

Russ M. Herman
HERMAN HERMAN KATZ & COTLAR, LLP
820 O'Keefe Avenue
New Orleans, LA 70113

RE:   *Common Benefit Fund*

Dear Mr. Herman:

Enclosed please find my Fee Allocation Affidavit pursuant to Pre-Trial Order No. 6(D) that was previously submitted via email to VioxxMDL@hhkc.com on October 31, 2008.

Please feel free to contact me with any questions or concerns.

Yours Very Truly,

HOVDE DASSOW & DEETS, LLC

Robert T. Dassow

RTD:ane
*Enclosure*

**HOVDE DASSOW _&_ DEETS LLC**

MERIDIAN TOWER • SUITE 500 • 201 WEST 103RD STREET • INDIANAPOLIS, INDIANA 46290
PHONE 317-818-3100 • FAX 317-818-3111 • WWW.HOVDELAW.COM

FAC Resp. Exhibit B -- 841



TRIAL ATTORNEYS

F. BOYD HOVDE
FREDERICK R. HOVDE
ROBERT T. DASSOW
NICHOLAS C. DEETS

October 31, 2008

***Via Federal Express and Email***

Russ M. Herman
HERMAN HERMAN KATZ & COTLAR, LLP
820 O'Keefe Avenue
New Orleans, LA 70113

    RE:  *Common Benefit Fund*

Dear Mr. Herman:

  Attached please find my Fee Allocation Affidavit pursuant to Pre-Trial Order No. 6(D). I hereby request an Allocation Meeting/Presentation in Atlantic City, New Jersey between December 1-5, 2008. I intend to appear and present reasoning, grounds and explanation for our entitlement to common benefit fees and reimbursement of expenses. All of my firm's work occurred before the Honorable Carol Higbee in New Jersey.

  Please feel free to contact me with any questions or concerns.

    Yours Very Truly,

    HOVDE DASSOW & DEETS, LLC

    Robert T. Dassow

RTD:ane
*Attachment*

**HOVDE DASSOW & DEETS LLC**

MERIDIAN TOWER • SUITE 500 • 201 WEST 103RD STREET • INDIANAPOLIS, INDIANA 46290
PHONE 317-818-3100 • FAX 317-818-3111 • WWW.HOVDELAW.COM   FAC Resp. Exhibit B -- 842

**HOVDE DASSOW & DEETS, LLC**
Robert T. Dassow, Esq.
201 W. 103rd Street, Suite 500
Indianapolis, IN 46290
Telephone: 317-818-3100
Facsimile: 317-818-3111
rdassow@hovdelaw.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE VIOXX LITIGATION ) | MDL Docket No. 1657 |
| ) | Section L |
| This Document Relates to All Cases ) | |
| ) | Judge Fallon |
| ) | Magistrate Judge Knowles |
| ) | |
| ) | **AFFIDAVIT IN SUPPORT OF HOVDE** |
| ) | **DASSOW & DEETS, LLC'S REQUEST** |
| ) | **FOR COMMON FUND ATTORNEY** |
| ) | **FEES AND REIMBURSEMENT OF** |
| ) | **EXPENSES** |
| ) | |
| ) | **New Jersey Common Benefit Application** |

Pursuant to Judge Fallon's Pretrial Order 6(D) Fee Allocation Guidelines, the undersigned submits the following Affidavit in Support of Common Benefit Fees and Expenses.

1.      I, and my firm, made a substantial contribution to Vioxx litigation and was committed to the litigation from November 2004 through November 9, 2007. I believe that my firm made a substantial contribution to the outcome of the litigation.

2.      I worked with and reported to the New Jersey Plaintiff's Liaison Committee (Seeger Weiss) as well as to Judge Higbee on specific issues.

3.      All of our work was performed in New Jersey. For an overview of our work, please see Exhibit "A", my original affidavit submitted in support of my Application for Common Benefit Fees and Expenses in compliance with Pre-Trial Order 6(D).

4.      With regard to activities surrounding Non-MDL trials that impacted proceedings on a common benefit level and the work performed therewith, please see Exhibit "A."

My firm, working with Susanne Scovern of Audet & Partners, prosecuted several New Jersey Vioxx trial pool cases in furtherance of the common benefit for all Plaintiffs as outlined in my Exhibit A.   Together, we performed the following common benefit activities:

a.      In November 2005, The Honorable Carol E. Higbee scheduled, among six other cases, *Benjamin C. LoPresti v. Merck & Co.*, Inc., for trial on April 24, 2006.

b.      Ms. Scovern and I also participated in the expedited discovery of several additional cases for New Jersey trial consideration, including (among others) the following:

| | |
|---|---|
| Allen, Richard L & Sharon S vs Merck & Co Inc | ATL-L-0162-05-MT |
| Beers, Annette vs Merck & Co Inc | ATL-L-1367-05-MT |
| Cochran, Ronald D vs Merck & Co Inc | ATL-L-8115-05-MT |
| Fagel, Cindy J et al vs Merck & Co Inc | ATL-L-1472-05-MT |
| Fink, Michael B vs Merck & Co Inc | ATL-L-1750-05-MT |
| Gish, James vs Merck & Co Inc | ATL-L-1361-05-MT |
| Long, JoAnn Vice vs Merck & Co Inc | ATL-L-6260-05-MT |
| Miller, Richard L vs Merck & Co Inc | ATL-L-0613-05-MT |
| Mills, Zelma vs Merck & Co Inc | ATL-L-5962-05-MT |
| Olinger, Sharon v. Merck & Co., Inc. | ATL-L-6586-05-MT |
| Schnarr, Albert vs Merck & Co Inc | ATL-L-1320-05-MT |
| Shanks, Delfred W & Dorothy vs Merck & Co Inc | ATL-L-0185-05-MT |
| Tena, Jennie v. Merck & Co., Inc. | ATL-L-1690-05-MT |

c.      The *Allen, Tena, Fagel, Gish*, and *Olinger* cases stand out as they involved particular issues of common benefit to the Vioxx litigation as a whole.  In August 2006, the *Allen* case was among a pool of 39 cases selected by Judge Higbee in which the parties completed expedited discovery and from which trial cases were selected for a January 2007 trial.  In *Allen*, we again participated in numerous fact witness depositions involving sales representatives, prescribing physicians, treating physicians, plaintiff as well as family member depositions.

d.      The *Tena, Fagel, Gish* and *Olinger* cases also involved particular issues of common benefit to the Vioxx Litigation.  Namely Merck's deficient and inconsistent Merck Profile Form responses/issues, physician payments, 1099 and tax issues.  The glaring deficiency in Merck's MPF production lead our firms to conduct discovery and depositions of Janet Scott and Janet Heins, signatures and point persons on the MPFs.  In conducting our MPF discovery, we discovered that

multiple databases were used but not effectively searched by the Merck Profile Form Recovery Team. We found widespread discrepancies in Merck's MPF responsive documents and inadequate production of the same. Judge Higbee charged us with litigating the issues related to, among other important topics, sales representatives' scripts, bonuses, physician benefits, bonus payments and IRS 1099 reporting relating to physician "payments" by Merck.

5.      Our firm became involved in this litigation prior to the JPMDL. We have submitted common benefit time and expense records incurred prior to April 2005.

6.      Our firm made consistent payments to the New Jersey Vioxx Litigation Fund. Additionally, my firm expended hundreds of thousands of dollars in Common Benefit Litigation costs.

7.      My firm's commitment to the common benefit of all Vioxx Plaintiffs never ebbed regardless of the adverse verdicts anywhere in the country.

I AFFIRM UNDER THE PENALTIES OF PERJURY THAT THE FOREGOING STATEMENTS ARE TRUE AND CORRECT.


Dated: 10/31/08                        _____
                                                  Robert T. Dassow


STATE OF INDIANA           )
                                          ) SS:
COUNTY OF Marion          )


       Subscribed and sworn to before me, a Notary Public, in and for said County and State, this 31st day of October, 2008.
My Commission Expires:
5·26·2016                              _____
                                         Notary Public

County of Residence:                   April N. Eisele
Hamilton                               Printed Name


APRIL N. EISELE
Hamilton County
My Commission Expires
May 26, 2016

**HOVDE DASSOW & DEETS, LLC**
Robert T. Dassow, Esq.
201 W. 103rd Street, Suite 500
Indianapolis, IN 46290
Telephone:  317-818-3100
Facsimile:  317-818-3111
rdassow@hovdelaw.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE VIOXX LITIGATION ) | MDL Docket No. 1657 |
| ) | |
| ) | |
| This Document Relates to All Cases ) | Section L |
| ) | |
| ) | Judge Fallon |
| ) | |
| ) | Magistrate Judge Knowles |

---

| | |
|---|---|
| IN RE THE VIOXX LITIGATION | SUPERIOR COURT OF NEW JERSEY LAW DIVISION- ATLANTIC COUNTY |
| This Document Relates to All Cases | CASE 619 |
| | CIVIL ACTION |
| | **AFFIDAVIT OF ROBERT T. DASSOW** |

---

Robert T. Dassow, being duly sworn, deposes and says:

1.      I am a member of the law firm of Hovde Dassow & Deets, LLC ("HDD"). I make

this affidavit in compliance with the Pre-Trial Order 6-C of the Honorable Judge Fallon and The

1

**EXHIBIT A**

Honorable Judge Higbee and the Common Benefit Fund pertaining to the application for an award of attorneys' fees and reimbursement of expenses ("fee application") from the fund that has been set aside for such purposes, pursuant to the Orders of this Court.  Such fees and expenses have been accrued in connection with substantial efforts rendered by this law firm's common benefits conferred on all of the plaintiffs who settled their claims as part of the common settlement of the Vioxx Litigation in the MDL and New Jersey.  The matters set forth in this affidavit are based upon my personal knowledge and upon my review of the files maintained by HDD with respect to the New Jersey Vioxx Litigation.

2.      As it relates to HDD, the fee and expense application seeks compensation for work performed by the following members or employees of the firm: Robert T. Dassow, F. Boyd Hovde, Frederick R. Hovde, Nicholas C. Deets, Melissa Coffman, Nickie Eisele, and Angela Conn.

3.      I am one of the four partners of HDD, an Indianapolis based law firm.  Previously, I was a partner of the law firm of Siegel Carter & Dassow, and prior to that an associate at the law firm of Locke Reynolds.  I received a Bachelors of Arts degree from Beloit College in Beloit, Wisconsin and a Juris Doctor degree from Valparaiso University in 1990, where I was Editor of the Valparaiso Law Review.  Also, I was an Adjunct Professor of Business Law at Valparaiso University.  I am currently a Fellow of the American Bar Association, Indiana Bar Foundation, and I am a Board Member of the Indiana Trial Lawyers Association.

4.      I have litigated pharmaceutical and complex business litigation since the start of my practice in 1990.  I have had leadership roles in various class actions.

5.      My partner, F. Boyd Hovde, received an undergraduate degree from Princeton

2

University and graduated from the University of Michigan law school in 1959 with a J.D. degree and was admitted to practice before the Indiana Supreme Court in the same year. He is also admitted to practice in both United States Courts in Indiana (Northern and Southern Districts), the United States Court of Appeals for the Seventh Circuit and the Supreme Court of the United States of America. He is a fellow of the International Academy of Trial Lawyers, a Fellow of the American College of Trial Lawyers and a Fellow of the Indiana College of Trial Lawyers. He has served on the Indiana Supreme Court Committee of Rules of Practice and Procedure and on its Committee on Character and Fitness.

He started his practice as an Associate with the Indianapolis firm of Ice Miller (then known as Ross, McCord, Ice and Miller) becoming partner in 1967. While there, he specialized in the defense of personal injury and wrongful death claims on behalf of major national insurance clients such as Aetna Casualty and Surety and Liberty Mutual Company. He left that firm in 1969 to join two plaintiff's attorneys to form the firm of Townsend Hovde & Townsend. With evolving firm names, he has been a plaintiff's personal injury attorney ever since and is now the senior partner of Hovde Dassow & Deets, LLC in Indianapolis.

6.     My partner, Frederick R. Hovde, who has practiced in the areas of personal injury, wrongful death, and medical practice, was admitted to the Indiana bar in 1980. He is a Fellow of the International Academy of Trial Lawyers, American College of Trial Lawyers, Indiana College of Trial Lawyers, and the Indianapolis Bar Foundation. He was President of the Indiana Trial Lawyers Association during the 2002-2003 term and has served on the Board of Directors since 1990. He is a member of the Indianapolis (Direct, Young Lawyers, 1986-1989), Indiana State (Director, Young Lawyers, 1982-1986), and the American Bar Association, the Association of

3

the Trial Lawyers of America, and The American Board of Trial Advocates.

7.     My partner, Nicholas C. Deets, is graduate of Purdue University (B.S.I.M., with honors, 1989) and the Indiana University School of Law, Bloomington (J.D., with distinction, 1993). He was admitted to the Indiana State Bar Association in 1993 and is admitted to practice before the Northern and Southern Federal District Courts of Indiana, the United States Court of Appeals for the Seventh Circuit, and the United States Supreme Court.

While in law school, Nick clerked for the Honorable Michael S. Kanne of the United States Court of Appeals for the Seventh Circuit and the prominent Chicago law firm of Coffield, Ungaretti & Harris. Upon graduating from law school, he accepted a position with Ice Miller, the largest law firm in Indianapolis, Indiana. In 1995, Nick left Ice Miller and returned to his hometown of Lafayette, Indiana to practice law with his father, Charles R. Deets, III. In 2000, Nick returned to Indianapolis and joined the Hovde Law Firm. He was made partner in 2001.

Nick was recognized as an Indiana Super Lawyer by Indianapolis Magazine in 2006, 2007 and 2008. He is an office of the Indiana Chapter of the American Board of Trial Advocates and is a Fellow of the Indiana Bar Foundation. His principle practice areas are personal injury, medical malpractice and wrongful death. He has tried more than 75 jury trials to verdict.

8.     My paralegal, Nickie Eisele, has been employed with HDD since September 28, 1998. She received her Bachelor of Science degree in Legal Studies/Public Law from Ball State University in 1996. She became a Registered Paralegal in April 2008 and is a member of the National Federation of Paralegals Association, Indiana Paralegal Association, and the Indianapolis Bar Association.   Prior to her employment at HDD, she was a paralegal for Mitchell P. Chabraja in Anderson, Indiana.

4

9.     My legal nurse consultant, Melissa Coffman, has been employed with HDD since November 22, 2004. She received her Bachelor of Science degree in nursing from Ball State University in 1990, where she graduated as a member of Sigma Theta Tau, Honor Society of Nursing. She has completed (15) hours towards a dual Masters degree in Nursing and Business Administration. She served in active duty from August 1989-December 1997 in the United States Navy Nurse Corp, where she received a Navy Achievement Medal, Navy and Marine Corp Commendation Medal, and a Meritorious Unit Commendation. She has had past memberships with the Greater Indianapolis Chapter of American Association of Legal Nurse Consultants (AALNC), and the American Association of Legal Nurse Consultants (AALNC). Prior to her employment at HDD, she worked in several clinical settings with particular focus on cardiology nursing over the past 14 years.

10.    My legal nurse consultant, Angela Coffman, was employed from November 21, 2005 to January 31, 2007. She received her Bachelor of Science Degree from Indiana University in 2002. She is CPR-BLS certified, ACLS certified, Venous Access Device, 12-Lead ECG Interpretation. Prior to joining HDD, she was a Cardiac Catheterization Nurse Specialist from 2002 until November 2005 at The Indiana Heart Hospital. She was responsible for all procedural support related diagnostic and interventional catheterizations. She was also responsible for Emergency Management of Cardiogenic Shock, Myocardial Infarction, Sick Sinus syndrome, and all arrythmias.

11.    My time is currently billed at $450.00 per hour. Mr. F. Boyd Hovde's time at $550.00 per hour, Mr. Frederick R. Hovde's time at $500.00 and Nicholas Deets' time at $450.00. These rates are reasonable and appropriate when compared to other rates billed for the

5

time of similarly-experienced attorneys and paraprofessionals in the country for matters of similar complexity, and, upon information and belief, below that of lawyers and professionals of comparable experience at large defense firms.

12.    In addition, Nickie Eisele's time is billed at $125.00 per hour, Missy Coffman's time at $180.00 per hour, and Angela Conn's time at $140.00 per hour.  The rate billed for Ms. Eisele, Ms. Coffman and Ms. Conn was based on a combination of their professional experience and salary at a rate of compensation from the firm, as well as on comparable defense rates for professionals at their level.

13.    Ms. Eisele, Ms. Coffman, and Ms. Conn's efforts enabled our firm to manage the tremendous number of document productions, complicated medical/cardiac issues, and trial preparation.

14.    With the ample aid of everyone involved at HDD, we prosecuted several trial cases and litigated numerous issues at Judge Higbee's request.

15.    In November 2005, The Honorable Carol E. Higbee scheduled, among six other cases, *Benjamin C. LoPresti v. Merck & Co., Inc.*, for trial on April 24, 2006.  My firm, with certain co-counsel (Susanne Scovern of Audet and Partners, LLC and Michael Ferrara of Ferrara Law Offices) participated in the expedited discovery and trial preparation of the *LoPresti v. Merck,* which was set for trial on April 2006.  We reviewed thousands of documents associated with the custodial and personnel files of over a dozen detail representatives and took their depositions.  We also took/defended the depositions of approximately a dozen fact witnesses. We were involved in numerous law and motion discovery hearings related to the *LoPresti* case. We retained and utilized experts in preparation for trial.

6

16.     Ms. Scovern and I also participated in the expedited discovery of several additional cases for New Jersey trial consideration, including (among others) the following:

| | |
|---|---|
| Allen, Richard L & Sharon S vs Merck & Co Inc | ATL-L-0162-05-MT |
| Beers, Annette vs Merck & Co Inc | ATL-L-1367-05-MT |
| Cochran, Ronald D vs Merck & Co Inc | ATL-L-8115-05-MT |
| Fagel, Cindy J et al vs Merck & Co Inc | ATL-L-1472-05-MT |
| Fink, Michael B vs Merck & Co Inc | ATL-L-1750-05-MT |
| Gish, James vs Merck & Co Inc | ATL-L-1361-05-MT |
| Long, JoAnn Vice vs Merck & Co Inc | ATL-L-6260-05-MT |
| Miller, Richard L vs Merck & Co Inc | ATL-L-0613-05-MT |
| Mills, Zelma vs Merck & Co Inc | ATL-L-5962-05-MT |
| Olinger, Sharon v. Merck & Co., Inc. | ATL-L-6586-05-MT |
| Schnarr, Albert vs Merck & Co Inc | ATL-L-1320-05-MT |
| Shanks, Delfred W & Dorothy vs Merck & Co Inc | ATL-L-0185-05-MT |
| Tena, Jennie v. Merck & Co., Inc. | ATL-L-1690-05 |

17.     The *Allen, Tena, Fagel, Gish,* and *Olinger* cases stand out as they involved particular issues of common benefit to the Vioxx litigation asa whole.  In August 2006, the *Allen* case was among a pool of 39 cases selected by Judge Higbee in which the parties completed expedited discovery and from which trial cases were selected for a January 2007 trial.  In *Allen*, we again participated in numerous fact witness depositions involving sales representatives, prescribing physicians, treating physicians, plaintiff as well as family member depositions.

The *Tena, Fagel, Gish* and *Olinger* cases also involved particulate issues of common benefit to the Vioxx Litigation.  Namely Merck's deficient and inconsistent Merck Profile Form

7

responses/issues, physician payments, 1099 and tax issues.  The glaring deficiency in Merck's MPF production lead our firms to conduct discovery and depositions of Janet Scott and Janet Heins, signatures and point persons on the MPFs.  In conducting our MPF discovery, we discovered that multiple databases were used but not effectively searched by the Merck Profile Form Recovery Team.  We found widespread discrepancies in Merck's MPF responsive documents and inadequate production of the same.  Judge Higbee charged us with litigating the issues related to, among other important topics, sales representatives' scripts, bonuses, physician benefits, bonus payments and IRS 1099 reporting relating to physician "payments" by Merck.

At the outset of the Vioxx litigation, I also participated in the weekly Vioxx conference calls with several other plaintiffs' law firms during which we participated in roundtable discussions regarding the Vioxx litigation, shared discovery developments, and spoke with leading consultants and experts who provided advice and guidance to our Vioxx group.  I also attended and actively participated in in-person Vioxx "mini-seminars" (one in Los Angeles and one in Las Vegas, among others)  in which medical and trial experts made presentations and spoke about relevant Vioxx topics to our consortium of plaintiffs attorneys.

18.     Finally, attached as Exhibit "A" is the Vioxx Products Liability Litigation Report of Member Firm Time.

19.     Attached as Exhibit "B" is the breakdown of time of the above referenced individuals.

20.     Attached as Exhibit "C" are the expenses related to Vioxx trial cases and common benefit litigated issues.

21.     Attached as Exhibit "D" are the copies made by my firm related to trial cases and

8

common benefit issues litigated by my firm.

I AFFIRM UNDER THE PENALTIES OF PERJURY THAT THE FOREGOING STATEMENTS ARE TRUE AND CORRECT.

Dated: _____ June 27, 208 _____          _____
                                            Robert T. Dassow


STATE OF INDIANA        )
                        ) SS:
COUNTY OF Hamilton      )

    Subscribed and sworn to before me, a Notary Public, in and for said County and State, this ___ day of June , 2008.
My Commission Expires:
    5-26-2016

County of Residence:
    Hamilton

_____
Notary Public

April N. Eisele
_____
Printed Name

APRIL N. EISELE
Hamilton County
My Commission Expires
May 26, 2016

9

Case 2:05-md-01657-EEF-DEK   Document 62659-13   Filed 03/04/11   Page 80 of 158

# IRPINO LAW FIRM
## ATTORNEYS AT LAW

**NEW ORLEANS OFFICE:**
One Canal Place
365 Canal Street
Suite 2290
New Orleans, LA 70130
Phone: (504) 525-1500
Fax: (504) 525-1501

PLEASE REPLY TO: <u>NEW ORLEANS OFFICE</u>

**CHICAGO OFFICE:**
THE HUTCHINSON
931 West Collom Ave.
1st Floor
Chicago, IL 60613
Phone: (312) 330-0776
Fax: (773) 525-7345

Anthony Irpino
Licensed in Louisiana

October 31, 2008

**VIA E-MAIL & FAX (504) 561-6024**
Plaintiffs' Liaison Counsel
Russ M. Herman, Esq.
HERMAN, HERMAN,
KATZ & COTLAR, LLP
820 O'Keef Avenue
New Orleans, LA 70113

RE:   ***IN RE: VIOXX PRODUCTS LIABILITY LITIGATION***
USDC-EDLA, MDL NO. 1657, Section "L"
**Anthony Irpino's Affidavit Submission to Fee Allocation Committee**

Dear Mr. Herman:

Pursuant to Pre-Trial Order #6(D) in connection with the above captioned litigation, I am attaching one copy of my 3 page affidavit submission to the Allocation Committee. If anything further is required, please contact me immediately and let me know what if anything else is required. Thank you.

With kindest regards, I remain:

Very truly yours,

Anthony D. Irpino

ADI/bcz
Attachments

FAC Resp. Exhibit B -- 855

# A F F I D A V I T

**STATE OF LOUISIANA**
**PARISH OF ORLEANS**

**BEFORE ME**, the undersigned Notary Public, personally came and appeared

**ANTHONY D. IRPINO**

who after first being sworn did depose and state:

My roles in the Vioxx MDL included the following: 1) Chairman of the Privilege Log Team; 2) Chairman of the Document Depository Committee; and 3) Discovery Committee Member. My Senior Associate, Amy Stoken Dunn, also did work as a member of the Privilege Log Team.

## I.    CHAIRMAN OF PRIVILEGE LOG TEAM

### A.    Anthony Irpino's Role As Chairman of the Privilege Log Team

I was the Chairman of our 18 member Privilege Log Team ("PLT"). My work as Chairman of the PLT, all of which was authorized/approved by the Discovery Chairmen and/or Liaison Counsel, was hands-on and included: organizing the team, devising an overall strategy of attack on Merck's privilege claims, hosting and presiding over weekly team conference calls, setting agendas and keeping minutes for weekly calls, drafting and implementing privilege log review protocols, assigning tasks to team members, supervising and coordinating  team members' work and progress, keeping team members engaged in the work and the litigation, reviewing and analyzing Merck's privilege logs, the FDA privilege log and 3rd party privilege logs, drafting letters to the Court and defense counsel, legal research, drafting motions and oppositions, arguing motions and oppositions, handling 5th Circuit appellate work, drafting regular status reports to Liaison Counsel/ Discovery Chairmen, attending status conferences, attending some PSC meetings, communicating with the Special Master, handling hearings and meetings with the Special Master and the Court, meeting with defense counsel, drafting and implementing "de-privileged" document review protocols, reviewing "de-privileged" documents, coordinating with committee chairs on privilege issues, and other tasks.

The above work was extensive and time consuming. The following facts illustrate the extent and devotion of my work and that of the PLT: a) we held more than 20 team conference calls (I drafted an agenda, kept minutes and led discussion on each of these calls); b) we reviewed, analyzed and categorized approximately 60,000 privilege log entries (I reviewed/analyzed many of these myself and coordinated the overall effort); c) we reviewed, categorized and preliminarily coded approximately 500,000 pages of de-privileged documents (I reviewed/preliminary coded many of these myself and coordinated the overall effort); d) We filed and/or responded to approximately 100 pleadings and orders addressing the privilege log issue; and e) I drafted more than 50 briefs, letters and memos to the Court, Special Master and/or Liaison Counsel regarding privilege log issues.

B.    Anthony Irpino's & The Privilege Log Team's Contribution to the Litigation

Our PLT took on the task of challenging and/or "de-privileging" approximately one million pages of Merck's privileged documents. We fought Merck continuously and vigorously over two years. Based upon my experience and statements from many involved, our privilege log effort was the most successful in any MDL case. We also successfully handled FDA and 3rd party vendor privilege claims.

My work and that of our PLT contributed significantly to the prosecution of the litigation. Among other things, we obtained very favorable rulings from the Court and dealt Merck crushing blows regarding many documents they did not want us or the Court to have (resulting in the production of many "hot" documents).[1] We forced Merck to expend tremendous amounts of time, energy and money dealing with the privilege log issues. We helped send a clear message to Merck that plaintiffs were going to remain engaged in the litigation and fight for as long as it took.

## II.    CHAIRMAN OF THE DOCUMENT DEPOSITORY COMMITTEE

I was also Chairman of our 10 person Document Depository Committee ("DDC"). It is noteworthy that I originated the DDC. I did so because we had a unique and difficult situation where 4 different document depositories were running at the same time, and we needed an organized structure to address various issues. Some pre-DDC problems included: overstaffing/understaffing, coordinating and prioritizing work assignments, lack of supervision, lack of uniform procedures, and coordinating 3rd party subpoenas and productions. We fixed these problems, and addressed many others that arose.

My work as Chairman of the DDC, all of which was authorized/approved by the Discovery Chairmen/Liaison Counsel, included: forming the committee, hosting and presiding over weekly conference calls, setting agendas and keeping minutes of calls, staffing the depositories, traveling to the various depositories, conducting document review/coding at the depositories, implementing uniform procedures (e.g., prioritizing and assigning document review/coding responsibilities, uploading of documents, compiling the "cast of characters" list, etc.), drafting regular progress/status reports to Liaison Counsel/Discovery Chairmen, assisting with the coordination and tracking of subpoenas and 3rd Party & FDA document productions, producing deposition preparation packets (hot docs for plaintiff attorneys taking depositions), coordinating with other committee chairs on document review needs, and troubleshooting and solving various problems which would arise at the different depositories.

My work as Chairman of the DDC and the work done by the DDC significantly contributed to the case inasmuch as we kept the depositories, document production, subpoena process, document review/coding and deposition preparation processes running smoothly and efficiently.

---

[1] Successes included: a) forcing Merck to produce all of its privileged documents to Judge Fallon for review, b) Judge Fallon ruling that 98.5% of Merck's privileged documents had to be produced, c) successfully "de-privileging" approximately 500,000 pages of documents, and d) obtaining several Special Master rulings which resulted in Merck having to produce many more previously privileged documents.

### III.    MEMBER OF THE DISCOVERY COMMITTEE & MISCELLANEOUS WORK

My work as a member of the Discovery Committee was minor compared to my contributions as Chairman of the Privilege Log Team and Document Depository Committee. With that said, I did do some Discovery Committee member work, and that included: document review/coding and assisting the discovery chairs with some random assignments (e.g., FDA document review, Marty Carrol depo prep).

My other miscellaneous work included: a) assisting Andy Birchfield/Leigh O'Dell with in depth jury research for the *Dedrick* trial, b) drafting motions to quash the perpetuation depositions of Barr and Silverman, and c) assisting with project to identify deficiencies in Merck's written discovery responses.

### IV.    FACTORS OUTLINED IN PRE-TRIAL ORDER NO. 6(D)

• <u>Substantial contribution to the outcome of the litigation</u> - The Privilege Log Team and the Document Depository Committee significantly contributed to the outcome of the Vioxx litigation. These contributions and my roles as Chairman of both are outlined above.

• <u>Quality of firm's work</u> - My/my firm's work in Vioxx was of a very high quality. The Privilege Log Team had tremendous successes in an area of litigation, that, in past MDL's, has seen very little success for plaintiffs. The Document Depository Committee dealt with several important and novel issues which arose from handling a huge case with 4 different depositories. We met all challenges, solved all major problems and kept the depositories and review/coding process operating very efficiently and effectively.

• <u>Consistency, quantum, duration, and intensity of firm's commitment to the litigation</u> - My firm got involved at the beginning of the MDL, and our work remained consistent throughout. Over a period of approximately 2 years, my firm spent 3,000+ attorney hours working on Vioxx (most of which were my own hours). For the majority of the litigation, we worked primarily on Vioxx and one other case.

• <u>Level of partner participation by firm</u> - As lead partner of the Irpino Law Firm, I did the vast majority of our firm's work on Vioxx. Approximately 98% of my firm's attorney time on Vioxx was mine.

• <u>Activities surrounding trials of individual Vioxx claimants</u> - Not much, however, I and my firm's trial consultant (Southern Trial Consultants) did spend one week assisting Andy Birchfield and Leigh O'Dell with jury research for the *Dedrick* trial. This was done even though the case was a "no win" case.

• <u>Leadership positions on regular committees engaged</u> - I was Chairman of the Privilege Log Team and Chairman of the Document Depository. These roles and responsibilities are outlined above.

• <u>Continued commitment even after verdicts adverse to plaintiffs</u> - My commitment to the litigation never ebbed. I worked hard throughout the litigation, even after adverse verdicts. My time records back this up and the fact that each of my Chairman roles required consistent and continued work/dedication. The statements herein are true and correct, and are made of my own personal knowledge.

Anthony Irpino

W. PATRICK KLOTZ, Esq.
Notary Public, Louisiana
La. Bar #17877
Term is for Life

Sworn to and Subscribed before me this 31st day of October, 2008.

W. Patrick Klotz, LA BAR #17877

FAC Resp. Exhibit B -- 858



**KHORRAMI POLLARD & ABIR LLP**

Attorneys At Law

Shawn Khorrami
Dylan Pollard
Danny Abir
Matt Bailey
Bahar Dejban
Nancy Gardner
Deborah Gutierrez
Becki Kammerling
James Kenna
Galorah Keshavarz
Scott Leviant
Louis Pacella
Mark Ravis
Sonia Tandon
Karen Travis
Annalissa Ward
*Of Counsel*
Payum Banafshe
Mikel Jones
David Mallen

October 30, 2008

**_Via Federal Express Mail_**

Plaintiffs' Liaison Counsel

Russ M. Herman, Esq.
Herman, Herman, Katz & Cotlar, LLP
820 O'Keefe Avenue,
New Orleans, LA 70113

> Re:  *Application for and award of attorney's fees and costs incurred for common benefit work on Vioxx MDL 1657/ JCCP4247*

Dear Mr. Herman:

Enclosed please find the Khorrami Pollard & Abir, LLP submission to the Allocation Committee for common benefit work in the Vioxx Litigation.

Khorrami Pollard & Abir, LLP's request for compensation in the amount of $66,940.05 is supported by an affidavit from James M. Kenna, Esq, (attached as Exhibit A), true and correct copies of receipts and invoices substantiating litigation costs (attached as Exhibit B), and Certification of Senior Partner Dylan F. Pollard (attached as Exhibit C.)

Respectfully submitted,

James M. Kenna, Esq.

JMK/wb
Enclosure

FAC Resp. Exhibit B -- 859

AFFIDAVIT OF JAMES M. KENNA, ESQ. IN SUPPORT OF APPLICATION FOR COMMON BENEFIT AWARD FOR COMPENSABLE TIME SPENT BY KHORRAMI POLLARD & ABIR, LLP ON VIOXX MDL 1657/JCCP 4247 RELATED WORK

1.      I, James M. Kenna, Esq., do hereby submit this affidavit to describe the common benefit work performed by myself and my firm (Khorrami Pollard & Abir, LLP).  While the work described herein was performed solely in the Judicial Council Coordinated Proceeding in California (JCCP 4247), it was instrumental in moving the Vioxx litigation closer to the settlement achieved by the Negotiating Plaintiffs' Counsel and Merck on November 9, 2007.

2.      I personally have been involved in the Vioxx litigation for over six years and filed some of the first personal injury cases in California in early 2002.  In June 2002, I petitioned the Judicial Council in California to coordinate the Vioxx litigation. I was successful at oral argument in securing Los Angeles County as the venue over defendant Merck's choice of Contra Costa County.  I was a member of the California Plaintiff's Steering Committee and was actively involved with the Girardi | Keese law firm, and later the Robinson Calcagnie & Robinson law firm in the organization of the California proceeding.  As a member of the MDL Science Committee, I performed numerous approved assignments including monitoring scientific conferences in California, Utah, and Tennessee.  I performed extensive document review at the offices of Robinson Calcagnie & Robinson in preparation for the MDL trial in 2006.  These common benefit contributions will be compensated to my previous employer and are not the subject of this submission.

3.      In May 2007, I accepted a position with Khorrami Pollard & Abir, LLP, to work in their pharmaceutical division, and *exclusively* on the Vioxx litigation.  At that time, Judge Victoria Chaney had set in motion procedures for trial selection for the California JCCP.  I was contacted by liaison counsel (Girardi | Keese) and asked to

AFFIDAVIT OF JAMES M. KENNA, ESQ. IN SUPPORT OF APPLICATION FOR COMMON BENEFIT AWARD FOR WORK PERFORMED BY KHORRAMI POLLARD & ABIR, LLP FOR COMPENSABLE TIME SPENT ON VIOXX MDL 1657/JCCP 4247 RELATED WORK

FAC Resp. Exhibit B -- 860

1  submit cases for trial selection.  I conducted an extensive analysis of the firm's

2  inventory which included reviewing medical and pharmacy records and researching and

3  consulting with potential experts.  The final list submitted as Plaintiffs' Designation of

4  Trial Cases contained four Khorrami Pollard & Abir, LLP clients, while the

5  Defendants' Designation of Trial cases contained an additional six, for a total of ten

6  Khorrami Pollard & Abir, LLP clients.

7       4.     On June 6, 2007, Defendants designated four cases for trial which

8  included two from liaison counsel (Girardi |Keese) and one from Khorrami Pollard &

9  Abir, LLP.[1]  As part of our preparation for trial, I met with our plaintiff to prepare him

10  for his deposition and trial testimony.  I met with his treating and prescribing doctors

11  and reviewed his extensive medical and pharmacy records.  I then consulted with our

12  expert, nurse consultant and other firm attorneys to develop a particular trial strategy

13  for this client.

14       5.     By the fall of 2007 there had been a number of verdicts that were adverse

15  to plaintiffs.  And even though other firms had dismissed their cases rather than

16  undergo the cost of preparation for trial in November 2007, this firm was committed to

17  trying our case in November 2007, as part of the overall strategy to keep pressure on

18  defendant Merck.   I was unaware of any negotiations between the PNC and Merck that

19  were taking place at this time, and I believed that the time I spent in preparing our case

20  for trial would ultimately benefit all plaintiffs (and counsel) involved in the Vioxx

21  litigation.

22       6.     The work collectively performed by my firm in the aforementioned areas

23  is itemized collectively in **EXHIBIT "A"** (which consists of certified copy of a

24  summary sheet plus itemized billing records for the four KPA lawyers who contributed

25  to this work: Partners Shawn Khorrami, Esq. and Dylan Pollard, Esq. and Senior

26  Associates James M. Kenna, Esq. and Nancy Gardner, Esq.) hereto and accounts for

27
    [1] Plaintiff's counsel representing the fourth designated case immediately
28  dismissed, leaving three set for trial starting November 26, 2007.

2

**AFFIDAVIT OF JAMES M. KENNA, ESQ. IN SUPPORT OF APPLICATION FOR COMMON BENEFIT AWARD FOR WORK PERFORMED BY KHORRAMI POLLARD & ABIR, LLP FOR COMPENSABLE TIME SPENT ON VIOXX MDL 1657/JCCP 4247 RELATED WORK**

.P&A

ORRAMI POLLARD & ABIR LLP

1  128.25 hours of attorney time which translates to **$56,112.50** at KPA's 2007 billing

2  rates.

3  7.  Attached hereto as **EXHIBIT "B"** are true and correct copies of receipts

4  and invoices substantiating litigation costs totaling **$10,827.55**, for which KPA now

5  seeks reimbursement.

6  8.  Attached hereto as **EXHIBIT "C"** is the "Certification of Senior Partner

7  Dylan F. Pollard to KPA Billing Records and Summary Thereof" as is

8  suggested/required by Pretrial Order No. 6 when submitting fees for consideration to

9  the Allocation Committee.

10  Executed under penalty of perjury under the laws of the State of California, this

11  30th day of October, 2008.

12

13

14  _____
   James M. Kenna, Esq., "Declarant"

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3

**AFFIDAVIT OF JAMES M. KENNA, ESQ. IN SUPPORT OF APPLICATION FOR COMMON
BENEFIT AWARD FOR WORK PERFORMED BY KHORRAMI POLLARD & ABIR, LLP FOR
COMPENSABLE TIME SPENT ON VIOXX MDL 1657/JCCP 4247 RELATED WORK**

FAC Resp. Exhibit B -- 862

### Summary of Khorrami Pollard & Abir LLP

## COMPENSABLE TIME SPENT ON VIOXX MDL /JCCP 4247 RELATED COMMON BENEFIT WORK

| Attorney | Hours Expended | Rate | Total |
|---|---|---|---|
| Shawn Khorrami, Esq. | 10.5 hours | $600 | $6300.00 |
| Dylan Pollard, Esq. | 7.75 hours | $550 | $4262.50 |
| James Kenna, Esq | 79 Hours | $400 | $31,600.00 |
| Nancy Gardner, Esq. | 31 hours | $450 | $13,950.00 |
| Expenses as itemized below | | | $10,827.55 |
| **TOTAL HOURS** | **128.25 hours** | | $56,112.50 |
| **TOTAL TIME + EXPENSES** | | | $66,940.05 |

| Description of Expense (Dates) | Amount Expended |
|---|---|
| Airfare/Travel for Jim Kenna to San Jose, CA from LAX to consult with Joe Klapper, M.D. (8/31/07) | $268.80 |
| Retainer Fee for Joseph Lee Klapper, M.D. for consultation on Bryson Bellweather Trial Case | $5000.00 |
| Retainer/Invoice for Helen P. McDaniel R.N, for work performed on preparing Bryson Bellweather case for trial | $5378.75 |
| Misc. Travel expenses/mileage for client prep, expert prep, taxi | $180.00 |

**COMPENSABLE TIME SPENT ON VIOXX MDL /JCCP 4247 RELATED WORK**

**Shawn Khorrami, Esq.**
**Khorrami, Pollard & Abir, LLP**
**444 South Flower Street, Ste. 3300**
**Los Angeles, CA 90071**

1.  **SELECTION OF POTENTIAL TRIAL CASES**
    a.  June 6, 2007 - Conference with James Kenna (JK) to discuss game plan for analysis of case inventory for selection of bellweather cases for trial; review of Bryson designation (D's 4th Supp Designation of Potential Trial Cases); Conference at Girardi|Keese re: bellweather trials.. . . .   **4.25 hrs**
    b.  June 8, 2007 - Conference with JK re: Selection of Bryson, et al., for trial; further vetting of case; draft/respond to multiple emails with co-counsel re: trial selection/preparation   **1.75 hrs**
    
    SUBTOTAL: . . .   **6.0 hrs**

2.  **PREPARATION OF ACTUAL TRIAL CASE IN JCCP 4247**
    a.  July 5, 2007–Review Nancy Gardner memo re: Klapper expert opinions   **1.0 hr**
    b .  July 20, 2007 - Conference with JK and Dylan Pollard (DP) re: case experts, medical records, trial plan, discovery . . .   **1.0 hr**
    c.  August 9, 2007 - Conference with JK and DP re clients preparedness for trial, meeting with client on 8/8/07, review detailed memorandum from JK re Client meeting . . .   **1.5 hr**
    d.  August 14, 2007--Review General Trial Deadlines Chart; Specific Memorandum Re: Bryson Trial Prep Prepared by JK; conference with DP re: same   **.75 hrs**
    e.  August 15, 2007–Multiple email correspondence with JK, Richard Kellner re: general causation   **.25 hrs**
    
    SUBTOTAL:   **4.5 hrs**

**TOTAL HRS (for SK):   10.5 hrs X $600.00/hr =$6300.00**

## COMPENSABLE TIME SPENT ON VIOXX MDL /JCCP 4247 RELATED WORK

**Dylan F. Pollard, Esq.**
**Khorrami, Pollard & Abir, LLP**
**444 South Flower Street, Ste. 3300**
**Los Angeles, CA 90071**

1.  SELECTION OF POTENTIAL TRIAL CASES
    a.  June 6, 2007 - Conference with James Kenna (JK) to discuss game plan for analysis of case inventory for selection of bellweather cases for trial.. . . .                                                            **1.25 hrs**
    b.  June 8, 2007 - Conference with JK re: Selection of Bryson, et al., for trial; further vetting of case                                      **1.0 hr**
        SUBTOTAL: . . .      **2.25 hrs**

2.  PREPARATION OF ACTUAL TRIAL CASE IN JCCP 4247
    a.  July 5, 2007–Review Nancy Gardner memo re: Klapper expert opinions                                                                            **1.0 hr**
    b .  July 20, 2007 - Conference with JK and Shawn Khorrami (SK) re: case experts, medical records, trial plan, discovery . . .           **1.0 hr**
    c.  August 9, 2007 - Conference with JK and SK re clients preparedness for trial, meeting with client on 8/8/07, review detailed memorandum from JK re Client meeting . . .                                                   **1.5 hr**
    d.  August 14, 2007--Review General Trial Deadlines Chart; Specific Memorandum Re: Bryson Trial Prep Preparaed by JK               **1.5 hrs**
    e.  August 15, 2007–Multiple email correspondence with JK, Richard Kellner re: general causation                                                  **.5 hrs**
        SUBTOTAL:      **5.5 hrs**

**TOTAL HRS (for DP):  7.75 hrs X $550.00/hr =$4262.50**

## COMPENSABLE TIME SPENT ON VIOXX MDL /JCCP 4247 RELATED WORK
### James M. Kenna, Esq.
### Khorrami, Pollard & Abir, LLP
### 444 South Flower Street, Ste. 3300
### Los Angeles, CA 90071

1.    <u>SELECTION OF POTENTIAL TRIAL CASES</u>
   a.    June 4, 2007 - At the request of liaison counsel (Girardi | Keese), conducted an analysis of our inventory to select trial cases for submission as part of Plaintiff's Fifth Designation of Potential Trial Cases. . . .   **8 hrs**
   b.    June 5, 2007 - Analysis of medical and pharmacy records of potential cases for trial - Brett Gipson, Betty Nulton, Carl Oehring, and Margo Smith. . . . . . .   **8 hrs**
   c.    June 6, 2007 - Researched potential experts to testify at trial; Conference with liaison counsel (Girardi | Keese) ) re same. . . . .   **6.5 hrs**
   d.    June 7, 2007 - Telephonic conferences with expert - Dr. Joseph Klapper - regarding selected trial cases, Gipson, Nulton, Oehring, and Smith... **2 hrs**
   e.    June 8, 2007 - Conference with liaison counsel and submission of Gipson, Nulton, Oehring and Smith cases as part of Plaintiff's Fifth Designation of Potential Trial Cases. . . . . . . . . . . . .   **1.5 hr**

   **SUBTOTAL: . . .26.00 hrs**

2.    <u>PREPARATION OF ACTUAL TRIAL CASE IN JCCP 4247</u>
   a.    June 6, 2007 - Review of defendants' filing - Fourth Supplemental Designation of Potential Trial Cases - which included this firm's case involving plaintiff Raymond Bryson; Conference with Dylan Pollard and Shawn Khorrami re same; Conference with liaison counsel (Girardi | Keese) re same. . . . .   **2 hrs**
   b.    June 8, 2007 - Placed requests for all pharmacy and medical records pertaining to trial case - Raymond Bryson; review case file   **1 hr**
   c.    July 18, 2007 - Review of medical records for trial case (Raymond Bryson) received from Scripps Clinic, Hemet Valley, Fallbrook Hospital, and Veterans Home of California in Yountville, CA. . . . . .   **8 hrs**
   d.    July 20, 2007 - Review of medical records for trial case (Raymond Bryson) received from prescribers and treaters - Dr. Mamring, Dr. Treister, Dr. Oslund and Dr. Brooks; Telephonic conference with expert Dr. Joseph Klapper re same; Conference with Dylan Pollard and Shawn Khorrami re same; Conference with liaison counsel (Girardi |Keese) re same. . . .   **8 hrs**
   e.    August 8, 2007 - Travel to/from client's residence in Fallbrook, California to do initial trial and deposition preparation . . .   **8 hrs**
   f.    August 9, 2007 - Conference with Dylan Pollard and Shawn Khorrami re clients preparedness for trial; Conference with liaison counsel (Girardi | Keese) re same; . . .   **1 hr**

g.     August 15, 2007 - Telephonic conference with nurse consultant Helen McDaniel regarding issues related to plaintiff Raymond Bryson. . .   **1 hr**

g.     August 29, 2007 - Conference with attorney Nancy Gardner re causation issues related to Raymond Bryson; Review of medical records. . . .   **3 hrs**

h.     August 30, 2007 - Drove to prescribing doctor's residence (Manring) in Fallbrook, California to review client's medical history and records prior to prescriber's deposition, . . . .   **10 hrs**

i.     August 31, 2007 - Conference with liaison counsel re meeting with expert - Dr. Joseph Klapper; Telephonic conference with Dr. Klapper regarding Bryson case and setting up meeting. . .   **1 hr**

j.     September 3, 2007 - Conference call with nurse consultant Helen McDaniel re plaintiff Raymond Bryson's medical records. . . .   **1.5 hr**

j.     September 5, 2007 - Drive to LAX, flight to San Jose for meeting with liaison counsel(Jim O'Callahan of Girardi | Keese) and Dr. Joseph Klapper regarding Klapper's preparedness for trial. . . .   **8.5 hrs**

                                                        **SUBTOTAL:  53.00 hrs**

**TOTAL HRS (for JMK):   79.00 hrs X $400.00/hr =$31,600.00**

**COMPENSABLE TIME SPENT ON VIOXX MDL/JCCP 4247 RELATED WORK**

**Nancy L. Gardner, Esq.**
**Khorrami, Pollard & Abir**
**444 South Flower Street, 33rd Floor**
**Los Angeles, CA 90071**

1.   PREPARATION OF TRIAL CASE IN JCCP 4247

    A.   June 18, 2007 -Review medical records for trial case of Raymond Bryson from Scripps Clinic, Hemet Valley, Fallbrook Hospital and Veterans Home of California in Yountville, CA, in preparation for telephonic conference with cardiology expert Dr. Joseph Klapper re opinion as to specific causation

                    8.0 hrs

    B.   June 19, 2007 - Review medical records for trial case of Raymond Bryson from prescribers and treaters from Dr. Manring, Dr. Treister, Dr. Oslund and Dr. Brooks in preparation for telephonic conference with cardiology expert Dr. Joseph Klapper re opinions as to specific causation

                    8.0 hrs

    C.   June 20, 2007 - telephonic conference with Dr. Klapper re findings and opinions

                    .75 hr

    D.   June 22, 2007- telephonic conference with Dr. Klapper re findings and opinons.

                    .75 hr

    E.   June 25, 2007 - telephonic conference with Dr. Trapper re findings and opinions.

                    .75 hr

    F.   July 2, 2007 - telephonic conference with Dr. Trapper re findings and opinions regarding specific Vioxx causation as to myocardial infarction suffered by Raymond Bryson

                    1.0 hr

G.    July 2, 2007 - Draft of memorandum to Dylan Pollard, Shawn Khorrami regarding findings and opinions of retained cardiology expert, Dr. Joseph Klapper.

1.75 hrs

H.    Travel to residence of treating physician Dr. Manring in Fallbrook, CA to review client's medical history, care and treatment, prescribing patterns and opinions re Vioxx as causative agent in myocardial infarction suffered by client Bryson

<u>10 hrs</u>

**Subtotal:**  31 hrs.

**TOTAL FEES: 31 hours X 450.00/hr = $13,950.00**

FAC Resp. Exhibit B -- 869

KHORRAMI POLLARD & ABIR LLP
JV COSTS ACT
14550 HAYNES STREET, 3RD FLOOR
VAN NUYS, CALIFORNIA  91411
(818) 947-5111

WELLS FARGO BANK, N.A.
CALIFORNIA

16-24/1220

2007

6/15/2007

PAY TO THE
ORDER OF      Joseph Lee Klapper

$ **5,000.00

Five Thousand and 00/100**************************************************

DOLLARS

Joseph Lee Klapper

MEMO      Retainer

⑈00 200 7⑈  ⑆1 2 2000 24 7⑆  688 58 54 6 19⑈

KHORRAMI POLLARD & ABIR LLP

Joseph Lee Klapper                                                    2007

                         per Jim's request              6/15/2007

                                                                  5,000.00



WF Khorr Poll & Abi   Retainer                                      5,000.00

KHORRAMI POLLARD & ABIR LLP

Joseph Lee Klapper                                                   2007

             per Jim's request                    6/15/2007

                                                                  5,000.00

WF Khorr Poll & Abi   Retainer                                      5,000.00

SFMS001NL-1

AFEGUARD

REORDER FROM YOUR LOCAL SAFEGUARD DISTRIBUTOR. IF UNKNOWN, CALL 800-523-2422

FAC Resp. Exhibit B -- 870
GJPJD00020000    V07SF004118

Joseph Lee Klapper, MD
Cardiovascular Diseases
8631 West Third Street
Suite #1110-E
Los Angeles, California 90048
(310)289-5944
cell phone: (310)467-0412
info@stopheartattacks.com

Mailing address for records:
25381 Alicia Parkway
Suite G, #2
Laguna Hills, CA  92653

## FEE SCHEDULE:

## MEDICAL RECORDS REVIEW:

Review of medical records with subsequent consultation to discuss patient health, medical care, treatment history and appropriateness of care

Fee: $500.00/1st inch of medical records; $275.00/subsequent inch of medical records

## DEPOSITIONS:

### NON-VIDEOTAPED
$750.00/hr with 3 hour minimum

### VIDEO-TAPED
$1000.00/hour with 3 hour minimum

## COURT AND ARBITRATION FEES

½ day: $2500.00
1 day:  $4500.00

## CONSULTATIONS/CONFERENCES/DEPOSITION REVIEW

$375.00/hour

## RETAINER

$5000.00

Retainer agreement available under separate cover

*V/ clk*

**KHORRAMI POLLARD & ABIR LLP**
JV COSTS ACT
14550 HAYNES STREET, 3RD FLOOR
VAN NUYS, CALIFORNIA 91411
(818) 947-5111

WELLS FARGO BANK, N.A.
CALIFORNIA
16-24/1220

2070

10/12/2007

PAY TO THE
ORDER OF     Helen Mc Daniel                                              $ **5,378.75

Five Thousand Three Hundred Seventy-Eight and 75/100************************************   DOLLARS

Helen Mc Daniel, RN
129 Harvard Lane
Seal Beach, CA 90740

MEMO
S/A dtd 10/4/07  Vioxx litigation - Bryson

⑈00 20 70⑈ ⑆1 2 2000 24 7⑆ 6 88 58 54 6 19⑈

KHORRAMI POLLARD & ABIR LLP

Helen Mc Daniel                                                                    2070

                    S/A dtd 10/4/07  Vioxx litigation - Bryson          10/12/2007
                    S/A dtd 10/4/07  Vioxx litigation - Bryson   kbk sh              2,689.38
                                                                                    2,689.37



WF Khorr Poll & Abir J   S/A dtd 10/4/07  Vioxx litigation - Bryson

                                                                                    5,378.75

KHORRAMI POLLARD & ABIR LLP

Helen Mc Daniel                                                                    2070

                    S/A dtd 10/4/07  Vioxx litigation - Bryson          10/12/2007
                    S/A dtd 10/4/07  Vioxx litigation - Bryson   kbk sh              2,689.38
                                                                                    2,689.37

WF Khorr Poll & Abir J   S/A dtd 10/4/07  Vioxx litigation - Bryson

                                                                                    5,378.75

SFMS5001NL-1                    REORDER FROM YOUR LOCAL SAFEGUARD DISTRIBUTOR, IF UNKNOWN, CALL 800-523-2422        FAC Resp. Exhibit B -- 872

FROM :   PHONE NO. : 562 598 0035   Oct. 03 2007 10:21PM P2

Submitted on:
**9/20/2007 Revised 10/4/2007**

By Helen P Mc Daniel, RN

Helen P. McDaniel RN,LNCC,CNLCP,CNOR
Legal Nurse Consultant Certified
129 Harvard Lane
Seal Beach, CA 90740
Ph 562-598-9443
Fax. 562-598-0035

**Attorney/Client Name:**
Khorrami Pollard & Abir
**Case Number:**
(enter here)

**Case Name:**
**Vioxx Litigation -BRYSON**
**Rate/Hr:**
$125.00

| Activity | Date | Hours | Cost |
|---|---|---|---|
| Van Nuys Office Meet w/Attorneys & Travel | 7/9/07 | 2.00 | N/C |
| Indexing and Tabbing Medical Records | 9/2/07 | 1.75 | $218.75 |
| Inputting Data Chronologically, Analysis, Research | 9/3-9/4/07 | 9.50 | $1,187.50 |
| L.A. Meeting with N. Garner & LNC Renee | 9/5/07 | 1.50 | $187.50 |
| Inputting Data Chronologically, Analysis, Research | 9/6-9/19/07 | 30.00 | $3,750.00 |
| | | | $0.00 |
| | | | $0.00 |
| | | | $0.00 |
| | | | $0.00 |
| | | | $0.00 |
| | | | $0.00 |
| | | | $0.00 |
| | | | $0.00 |
| | | | $0.00 |
| | | | $0.00 |
| | | | $0.00 |
| | | | $0.00 |
| | | | $0.00 |
| | | | $0.00 |
| | | | $0.00 |
| | | | $0.00 |
| | | | $0.00 |
| | | | $0.00 |
| | | | $0.00 |
| Additional Expenses: | | | |
| 9/5/07 Parking | | | $35.00 |
| | | | |
| Less Retainer: (enter Below) | | | |
| | Totals: | | **$5,378.75** |

FAC Resp. Exhibit B -- 873

ORIGINAL DOCUMENT PRINTED ON CHEMICAL REACTIVE PAPER WITH MICROPRINTED BORDER

**KHORRAMI POLLARD & ABIR LLP**
JV COSTS ACT
14550 HAYNES STREET, 3RD FLOOR
VAN NUYS, CALIFORNIA 91411
(818) 947-5111

WELLS FARGO BANK, N.A.
CALIFORNIA

2051

16-24/1220

9/27/2007

PAY TO THE
ORDER OF    James Kenna

$ **180.00

One Hundred Eighty and 00/100******************************************************************DOLLARS

James Kenna

MEMO

reimbursement of expenses - Raymond Bryson/pati

⑈00 2051⑈ ⑆1 22000 247⑈ 688 58 54 61 9⑈

---

KHORRAMI POLLARD & ABIR LLP

James Kenna

2051

9/27/2007

| | |
|---|---|
| 8/30 drive to Dr Manning - client Raymond Bryson | 50.00 |
| 8/30 drive to Dr Manning - client Raymond Bryson - | 50.00 |
| 9/5 drive to airport for sanjose | 20.00 |
| 9/5 drive to airport for sanjose - kbk sh | 20.00 |
| 9/5 cab fare to airport | 20.00 |
| 9/5 cab fare to airport - kbk sh | 20.00 |
| reimbursement of expenses - Raymond Bryson/pati | |

WF Khorr Poll & Abir J   reimbursement of expenses - Raymond Bryson/

180.00

KHORRAMI POLLARD & ABIR LLP

James Kenna

2051

9/27/2007

| | |
|---|---|
| 8/30 drive to Dr Manning - client Raymond Bryson | 50.00 |
| 8/30 drive to Dr Manning - client Raymond Bryson - | 50.00 |
| 9/5 drive to airport for sanjose | 20.00 |
| 9/5 drive to airport for sanjose - kbk sh | 20.00 |
| 9/5 cab fare to airport | 20.00 |
| 9/5 cab fare to airport - kbk sh | 20.00 |
| reimbursement of expenses - Raymond Bryson/pati | |

FAC Resp. Exhibit B -- 874

WF Khorr Poll & Abir J   reimbursement of expenses - Raymond Bryson/

180.00

Prepared For
**FARSHID ABIR
KHORRAMI & ABIR**

Account Number
**XXXX-XXXXX8-51001**

Closing Date
09/30/07

---

**e in Full continued**                                                          Amount $

08/31/07     SOUTHWEST AIRLINES   DALLAS      TX                                    266.30
             SOUTHWEST AIRLINES
             From:               To:                    Carrier:      Class:
             LOS ANGELES CA      SAN JOSE CA            WN            Y
                                 LOS ANGELES CA         WN            Y
             Ticket Number: 52623327998219             Date of Departure: 09/05
             Passenger Name: KENNA/JAMES
             Document Type: PASSENGER TICKET

                                                                                236.30

## Certification of Senior Partner Dylan F. Pollard to KPA Billing Records and Summary Thereof

I, DYLAN POLLARD, declare:

1.      I am an attorney licensed to practice law in the State of California. I am a partner at Khorrami Pollard & Abir LLP ("KAP"), Plaintiff's counsel for the Raymond Bryson matter (among many other active Vioxx cases). I have personal knowledge of the matters stated herein and if so called upon as a witness, could testify completely thereto.

2.      This declaration is submitted in support of KPA's Application for and award of attorneys fees and costs incurred for common benefit work on the Vioxx MDL/JCCP 4247 matter.

## KPA'S ATTORNEYS FEES AND COSTS

3.      I do hereby certify that the attached summary form (attached as **Exhibit A** to the Affidavit of James Kenna) , which is supported by the actual time records of the KPA attorneys involved in this matter is accurate and correct, and reflects an accounting of contemporaneously-kept time records.

4.      The hourly rates charged by KPA, as set forth in KPA's Billing Summary are well with the range of rates deemed reasonable considering the complexity of the issues present in this action, KPA's experience in litigating such matters, and the standard rates charged by similar class action/mass tort firms within the State of California.  As set forth therein, the range of hourly KPA is seeking on this case for the 2007 is $550-$600 for senior partners Shawn Khorrami and Dylan Pollard, and $400-450 for senior associates James Kenna and Nancy Gardner.

5.      As an initial point, KPA's hourly rates are commensurate with KPA's experience

in litigating class action/mass tort cases.  KPA has been lead and co-lead counsel in numerous class action cases, including the following which were successfully litigated on behalf of the respective classes:

- *Checkmate v. Yahoo*, Central District of California Case No. CV 05-4588 CAS (Hon. Christina A. Snyder) (nationwide class settlement in case alleging that defendant charged advertising clients for fraudulent pay-per-click internet advertising).

- *Hurtado v. TEG/LVI, Environmental Services Inc.*, LASC Case No. BC276468 (Hon. Carl J. West) (trail verdict on behalf of class for failure to pay prevailing wages; settlement on claims that defendant failed to pay employees prevailing wages, overtime, and rest breaks).

- *The Great Escape Promotion Cases*, California Superior Court, JCCP No. 4343 (Hon. Carl J. West) (Settlement of claims alleging that supermarket failed to honor promotion).

- *Ho v. Samsung*, Sacramento County Superior Court Case No. 03AS03429 (no trial court assigned) (settlement in case alleging that defendant failed to honor its consumer rebates).

- *Cornwell v. Platinum Auto Haus*, LASC Case No. BC318495 (Hon. Maureen Duffy-Lewis) (settlement on claims alleging that defendant overcharged consumers for State Auto Licensing fees and Smog testing).

- *Becker v. Bally Total Fitness*, LASC Case No. BC 277 804 (Hon. John P. Shook) (settlement of claims alleging that defendant overcharged members for health club contracts).

- *Dennis v. Travelocity*, LASC Case No. BC273172 (Hon. Victoria Chaney) (settlement of claims alleging that defendants failed to honor travel benefit promotion).

- *Cossey v. BCI Coca-Cola Bottling Co. of Los Angeles*, LASC Case No BC367978 (Hon. Anthony J. Mohr) (Class Settlement pending on claims alleging employer failed to pay overtime and meal and rest periods).

- *Lockette v. Ross Stores, Inc*, Northern District of California Case No. CV 03430 MMC (Hon. Maxine M. Chesney) (Settlement pending in nation-wide FLSA collective action case alleging claims for unpaid overtime based on misclassification of assistant managers as exempt).

6.      Moreover, the hourly rates billed by KPA in this action are commensurate with the hourly rates billed by other plaintiff firms that practice complex class and mass tort litigation in the State of California.

7.      In addition to professional time expended in this case for common benefit work, my firm incurred litigation costs in the prosecution of this common benefit time in the amount of $10,827.55.

I declare under penalty of perjury under the laws of the State of California and that the foregoing is true and correct. Executed this 30th Day of October, 2008.

Dated: October 30, 2008

DYLAN POLLARD, ESQ

**AFFIDAVIT OF THOMAS R. KLINE, ESQUIRE IN SUPPORT OF
APPROVAL OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES**

I, Thomas R. Kline, aver:

1.    I am a founding partner, with Shanin Specter, of the law firm of Kline & Specter, P.C. ("Kline & Specter").  I am a member of the Pennsylvania Bar since 1978.

2.    This Affidavit is based upon personal knowledge and information provided by others in our firm at my request.

3.    Kline & Specter has been involved in the Vioxx litigation since 2003.  We have helped to fund this litigation through federal MDL assessments, assessments in the NJ Consolidated Litigation ("NJCL"), and by other advancements of common benefit costs.

4.    While acting through the NJCL, the MDL, and the Philadelphia Coordinated Litigation ("PCL"), our firm has provided extensive services for the common benefit of all Vioxx litigants as follows: participation on multiple committees, including the following MDL Committees: Plaintiffs' Steering Committee ("PSC"), the Science Committee, the Discovery Committee, the Trial Package Committee, and the Trial Committee; factual discovery including extensive review of documents and depositions; legal research, briefing, drafting and argument; deposition cuts; email, telephone and in person conferences with co-counsel regarding the discovery, legal, and trial strategy; expert preparation, reports and presentation for deposition; medical and scientific research; medical review of cases for bellwether trials; preparation of the trial package; and service as liaison counsel for the PCL.  Either I or Mr. Balefsky attended nearly every Status Conference and pre-meeting along with MDL Plaintiffs Executive Committee ("PEC") members.

5.    I personally served on the Plaintiff's Steering Committee in the MDL, and co-chaired the Trial Committee.  Lee Balefsky, the head of our Pharmaceutical Litigation department, served on the Discovery Committee, and along with Michelle Tiger, served as Liaison Counsel in the Philadelphia Coordinated Vioxx Litigation.  Two physician-attorneys in our office, Mark Hoffman, M.D., J.D. and Lisa Dagostino, M.D., J.D. served on the Science Committee.  Dr. Dagostino also served on the Trial Package Committee and the Discovery Committee.  Dr. Dagostino and Mr. Balefsky also served on the Stroke Sub-Committee, and Mr. Balefsky was the head of the Stroke Committee in the NJ Consolidated Litigation.

6.    The most difficult and central issue in Vioxx litigation was causation.  Because of our experience with discovery and trial of complex cases, including pharmaceutical cases, we were

assigned a substantial role in the development of the causation case. We deposed many of the key Merck officers and scientists, including trial witnesses, namely: Raymond Gilmartin (CEO), Edward Scolnick, M.D. (Former President, Merck Research Laboratories), Peter Kim, Ph.D. (President, Merck Research Laboratories), Alise Reicin, M.D. (Senior Director), Alan Nies, M.D., Ph.D. (Senior VP, Clinical Sciences), David Anstice (President of Human Health), Peter DiBattise, M.D. (Merck Research Labs cardiologist), Barry Gertz, M.D., Ph.D. (Executive Vice President), Joseph Lynch, Ph.D. (Senior Director, Pharmacology), Kathleen Metters, Ph.D. (Head of Basic Research, Merck Frosst), Thomas Simon, M.D. (Senior Director, Clinical Research), and Deborah Shapiro, Ph.D. (Director of Clinical Biostatistics). We also prepared to take the cancelled depositions of Gregory Geba, M.D. (Senior Director of Clinical Development) and Robert Silverman, M.D. (Senior Director, Regulatory Affairs). I was preparing to take the de bene esse deposition of Alise Reicin on behalf of the MDL when the litigation settled. Reicin was a key Merck witness at every Vioxx trial.

7.    At the request of lead and liaison counsel, I took deposition testimony of three prominent third party figures in the Merck litigation -- Eric Topol, M.D. (Cleveland Clinic Chair of Cardiology); David Graham, M.D., M.P.H. (FDA pharmacoepidemiologist) and Gregory Curfman, M.D. (Editor of THE NEW ENGLAND JOURNAL OF MEDICINE).

8.    Kline & Specter-led depositions were played during all Vioxx trials after the Texas Ernst trial. Accordingly, every juror who sat on any Vioxx trial during the pendency of the NJCL and MDL and every judge who presided heard testimony elicited by me and lawyers in our firm. The Topol deposition was one of the most challenging and important in the litigation.

9.    The testimony of Dr. Shapiro elicited by Mr. Specter on the fourth day of deposition testimony was held by New Jersey Superior Court Judge Carol Higbee to be the only evidence sufficient to support a punitive damages verdict against Merck. The underlying document upon which this testimony was based was discovered by Dr. Dagostino.

10.    Utilizing their medical, scientific and bioethics training, our physician-attorneys committed extensive time to this litigation developing the causation theories of liability, as well as working with experts, performing extensive document review, and developing the liability portion of the case. Dr. Dagostino was relieved of her full-time medical malpractice work so that she could assist with these common benefit efforts full-time, to the near exclusion of all other work within our firm up until the time the settlement was announced in November 2007. Dr. Dagostino performed extensive research, document review, and preparation for all of the above named depositions, and

also assisted non-Kline & Specter counsel in their preparations for the depositions of Ned Braunstein, M.D. (Merck Senior Director - Regulatory), and Steven Nissen, M.D. (cardiologist at the Cleveland Clinic and noted Merck critic).  She also provided assistance during the Irvin, Cona/McDarby, and Humeston trials.  Dr. Dagostino prepared and developed reports and testimony with experts Cecil Pace-Asiak, Ph.D. (Pharmacology, University of Toronto), Jerry Avorn, M.D. (pharmacoepidemiology, Harvard), Wayne Ray, M.D. (pharmacoepidemiology, Vanderbilt), Suzanne Parisian, M.D. (former FDA Medical Officer), Stephen Schondelmeyer, Pharm.D., Ph.D. (University of Minnesota - Health Systems), Steven Levine, M.D. (Mt. Sinai - Stroke Neurology) and Edward Feldmann, M.D. (Brown - Stroke Neurology).  In her role as a member of the Science Committee and the Trial Package Committee, Dr. Dagostino researched, digested, and indexed over 3,000 articles from the medical literature, produced the Vioxx Litigation "Cast of Characters" (a comprehensive guide to the over 700 Merck employees, third parties, and experts involved in the litigation) and a "Dictionary" (a comprehensive guide to over 500 scientific terms and the alphabet soup of the Merck corporate structure), and assisted with the development of the Vioxx Theme Grid.  Dr. Dagostino also undertook a systematic review of the underlying medical records of all the cardiovascular adverse events in the Merck clinical trials; this extensive project was underway at the time the settlement was announced and was therefore halted.  I also participated in the Nissen and Avorn preparation.  I was also active in handling press and media at various times.

11.    Our firm, at the direction of Lead and Liaison Counsel, also played a major role in the preparation of the MDL response to Merck's preemption brief.  Partners Mr. Specter and David Caputo provided legal briefing, and Dr. Dagostino also prepared a detailed factual response and presented the factual background at oral argument.

12.    Based upon our contribution to the success of this litigation, the compensation of our firm should be at the same multiplier as all others in top leadership in this litigation.

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
KATHLEEN M. SPURKA, Notary Public
City of Philadelphia, Phila. County
My Commission Expires January 8, 2012

Dated:  October 30, 2008

_____
Thomas R. Kline

Sworn to and subscribed before me
this ____ day of October, 2008.

_____
Notary Public

3



**T H E**
**LANIER**
**LAW FIRM**

**HOUSTON**
The Lanier Law Firm, PC
6810 FM 1960 West 77069
Post Office Box 691448
Houston, TX 77269
(713) 659-5200
Fax (713) 659-2204

**NEW YORK**
The Lanier Law Firm, PC
Tower 56
126 East 56th Street
6th Floor
New York, NY 10022
(212) 421-2800
Fax (212) 421-2878

**LOS ANGELES**
The Lanier Law Firm, PC
2029 Century Park East
Suite 1400
Los Angeles, CA 90067
(310) 277-5100
Fax (310) 277-5103

**PALO ALTO**
The Lanier Law Firm, PC
530 Lytton Ave., 2nd Floor
Palo Alto, CA 94301
(650) 322-9100
Fax (650) 322-9103

October 30, 2008

Plaintiffs' Liaison Counsel
**Russ M Herman**
C/o Herman, Herman, Katz & Cotlar, LLP
820 O'Keefe Ave.
New Orleans, LA 70113

Re:    Affidavit of W. Mark Lanier In Support of Common Benefit Application

Dear Mr. Herman:

Enclosed please find the Affidavit of W. Mark Lanier In Support of an Award of Attorneys' Fees, Reimbursement of Litigation Costs and Expenses.

If you have any questions about this submittal please contact me or Arlene Nixon our Administrator.

Sincerely,

Richard D Meadow

The Lanier Law Firm
New York

**lanierlawfirm.com**

FAC Resp. Exhibit B -- 882

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | MDL DOCKET No. 1657 |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | JUDGE FALLON |
| | * | MAGISTRATE JUDGE KNOWLES |

## AFFIDAVIT IN SUPPORT OF AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION COSTS AND EXPENSES

W. MARK LANIER, being duly sworn, deposes and says:

1.      I own The Lanier Law Firm, PC and PLLC (collectively, "LLF") and I submit this affidavit pursuant to PTO 6, 6c, the Plaintiffs' Steering Committee Vioxx Time and Expense Guidelines, and the factors emanating from Johnson v. Georgia Highway Express, Inc., in support of LLF's application for an award of common benefit fees, costs and expenses.

2.      In 2002, years before Merck pulled Vioxx from the market, LLF began prosecuting Vioxx-related personal injury actions, including deposing Alise Reicin urging Merck to stop selling Vioxx. LLF continued its leadership role by trying the first Vioxx case, Ernst v. Merck & Co., Inc. resulting in a $253 million verdict. This case took a year to prepare (including multiple mock trials done in house, meaning no expenses for a jury consulting firm were ever charged), 8 weeks to try, cost several million dollars and provided a road map with arguments and testimony used by most every firm that eventually tried a Vioxx case. The momentum and press attention against Merck as a result was huge.

3.      LLF was a leader amongst plaintiffs' firms within the New Jersey coordinated Vioxx litigation supervised by Judge Carol E. Higbee, trying two of her four Vioxx trials. In Cona & McDarby v. Merck & Co., Inc. LLF met on multiple occasions to teach the case to the McDarby firm of Weitz & Luxenberg, ran the mock trials (internally without consulting charges) tried the liability case for both plaintiffs resulting in fraud findings and then tried the punitive case for McDarby resulting in a punitive finding. This was the first win against Merck outside of Texas and broke Merck's win streak increasing media and economic pressure. In Hermans & Humeston v. Merck & Co., Inc., LLF served as the co-lead trial counsel responsible for presenting the liability case. This marked the third victory, each with punitive findings.

4.      LLF incurred significant time, labor and financial risk prosecuting Vioxx cases and beneficially impacting Vioxx claimants nationally. Over five years, LLF expended over $12 million to advance the Vioxx litigation, with approximately $7.5 million submitted for common benefit reimbursement. LLF worked 33,598.00 hours, amounting to nearly $13 million in billable time attributed to the common benefit of all Vioxx claimants, performing many complex, including: (a) prosecuting three trials with national implications; (b) engaging in extensive discovery including the review and analysis countless pages of discovery and the creation of trial exhibit lists which served as an outline for future trials; (c) retaining and collaborating with significant experts in cardiology, pharmacology, general medicine, and biostatisticians; (d)

taking eight key depositions of Merck's senior management who were involved in the production, marketing and labeling associated with Vioxx, and three depositions of other integral witnesses (portions of these LLF depositions were used in most every trial) and provided critical assistance with the Topal deposition taken by the PSC[1]; (e) conducting trial science work for the Beasley Allen firm in the Federal Case that was tried to a hung jury in Houston; (f) creating a sophisticated databases to analyze and retrieve information relevant to class proof in the litigation; (g) briefing countless motion oppositions; and (h) corresponding and meeting with counsel and with the Court.

5.      LLF's most significant contributions in the Vioxx litigation are associated with our lead and co-lead role in three trials in which we incurred substantial time (a total of almost 6 months in court trial time for 7 lawyers and 4 support staff – time spent away from family and the practice of law), labor and financial risk that collectively benefited claimants nationwide. In devoting such resources, LLF spent millions of dollars to prosecute each trial at a time where there was no assurance of a settlement, because the trials would impact both LLF's clients and all claimants throughout the nation. LLF's three trial wins, two of which were achieved with Seeger Weiss LLP and Weitz & Luxenberg, P.C., were significant in obtaining compensation for Vioxx plaintiffs nationwide.

6.      Vioxx personal injury actions are extremely complex and difficult to win at trial. Plaintiffs required the best and most sought-after experts, significant capital expenditures, and tremendous commitment.  Yet even with those components in place, plaintiffs lost eleven of the sixteen Vioxx trials. However, LLF was the lead trial counsel responsible for trying the liability case against Merck in three of the five trials in which juries found for plaintiffs. Had Merck continued to win every trial, the existing national settlement would either not exist or would have been far less favorable to plaintiffs.

7.      In order to be successful at trial against Merck, significant litigation skills and experience were required to establish, formulate and present the general liability case against Merck. LLF was also instrumental in obtaining preeminent experts, such as Dr. Harlan Krumholz, who played a significant role in demonstrating Merck's culpability.  LLF experts (Krumholz and Dr. Egilman) also published significant scientific literature to educate the public regarding Vioxx, adding to the pressure on Merck to resolve the litigation.

8.      Being a leader in this litigation did not come without sacrifice. Throughout the Vioxx litigation, LLF was comprised of between 5 and 25 lawyers. After LLF became entrenched in the Vioxx litigation, the firm devoted not less than 7 attorneys and numerous staff members to the litigation.  Inherently, LLF passed on taking other employment because of LLF's commitment and expenses undertaken in Vioxx litigation. As the principle trial lawyer in the

---

[1] (1) Peter Kim – the President of Merck Research Labs who succeeded Dr. Edward Scolnick; (2) Raymond Gilmartin – Merck's former C.E.O.; (3) David Anstice – Merck's President of Human Health; (4) Edward Scolnick – Merck's former President of Merck Research Labs; (5) Alise Reicin – Senior Merck Scientist; (6) Louis Sherwood – Senior V.P. for Medical and Scientific Affairs; (7) James Fries, M.D. – Stanford University Medical School Professor; and (8) Nancy Santanello  – Executive Director, Epidemiology Department of Merck Research Labs. Additionally, Richard D. Meadow, the managing attorney of LLF's New York office, personally participated in the taking of the following depositions: (9) Peter Kim (day 2); (10) Raymond Gilmartin (day 2); (11) Wendy Dixon – former Merck Vice President of Marketing; (12) Wayne Ray – Vanderbilt University Professor and Epidemiologist; and (13) Benedict Lucchesi – University of Michigan Researcher, Professor and Pharmacologist.

firm, I was dedicated solely to trying Vioxx for over two years, spending 6 months away from my family and in trial. Although The Lanier Law Firm maintains records of litigation opportunities for which the firm has declined representation, it would be extremely difficult to quantify the lost potential opportunities as a result of our commitment to the Vioxx litigation.

9.      As a leading firm in the Vioxx litigation, LLF also faced significant time constraints and worked under tremendous pressure to try the Ernst case in July of 2005, less than one year after Vioxx was withdrawn from the market. After achieving the Ernst verdict, LLF was urged to not risk its reputation by trying any other Vioxx cases. Instead LLF risked reputation and money trying 2 more cases, and went further working to educate the Weitz firm in the Vioxx trial mechanics bringing another powerful force into the trial arena.

10.     Vioxx cases were largely regarded as undesirable due to the complex nature of these actions involving voluminous discovery, complex scientific issues, potential difficulties demonstrating causation, and extremely significant financial burdens. A significant amount of those attorneys who filed Vioxx personal injury actions were often unwilling to dedicate the necessary resources to engage in this litigation. Such demonstrated lack of desire became more pronounced as Merck began to defeat plaintiffs in costly and risky trials. Nevertheless, LLF never waned in its desire to dedicate resources and incur substantial financial risks to move the Vioxx litigation forward.

11.     Although not a class action settlement, the unprecedented Vioxx mass tort settlement should properly be placed in history against the most historical class action settlements. As such, the Vioxx settlement should be viewed against the In re: Tyco Int'l. Ltd. Securities Litigation settlement in which 3.2 billion dollars was recovered for the class members. In Tyco, the court awarded the three claimant law firms with $464 million in fees ($154.6 million per firm), plus another $29 million to cover expenses. Tyco represents the largest fee award earned by plaintiffs' attorneys in a common fund context – and that action settled without the three awarded law firms ever going to trial. Before Tyco, the largest fee award was $366 million, plus $10 million in expenses awarded to the plaintiffs' attorneys in the WorldCom litigation who achieved a $6.1 billion class settlement.

12.     As one of the leading national law firms within the Vioxx litigation, LLF is properly due a significant common benefit award that rewards the firm for undertaking a lead role in an extremely difficult litigation with attendant financial risks and expenses, and which accounts for the results achieved by LLF, and its co-counsel, who collectively acted to benefit Vioxx claimants across the nation.

October 30, 2008

_____
W. Mark Lanier
The Lanier Law Firm
6810 FM 1960 West 77069
Houston, TX 77269

3

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **In re: VIOXX** | * **MDL Docket No. 1657** |
| | * |
| **PRODUCTS LIABILITY LITIGATION** | * **SECTION L** |
| | * |
| | * **JUDGE FALLON** |
| | * |
| **This document relates to** | * **MAGISTRATE JUDGE KNOWLES** |
| | * |
| | * |
| **ALL CASES** | * **CASE NO. 06-0485** |

---

### AFFIDAVIT OF ELIZABETH J. CABRASER AND DONALD C. ARBITBLIT IN SUPPORT OF LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP'S COMMON BENEFIT FEE APPLICATION (PTO 6D)

---

We, Elizabeth J. Cabraser and Donald C. Arbitblit, swear and affirm as follows:

1.     We are partners at common benefit applicant Lieff, Cabraser, Heimann & Bernstein, LLP ("LCHB") with personal knowledge of the matters set forth herein.

2.     Between September 30, 2004 and the present, LCHB has worked 18,789 hours on Vioxx common benefit matters with a total lodestar value of $9,770,558. Mr. Arbitblit worked over 5,000 of those hours, and Ms. Cabraser worked approximately 1,659 of those hours.

3.     LCHB participated in all aspects of the case and made a substantial contribution to the outcome of the litigation. LCHB's commitment was consistent throughout, including full-time work at the senior partner level, as well as substantial work at all levels of the firm. Other cases were turned away to work on Vioxx. Given the nature of MDL No. 1657 PSC-authorized assignments, experienced partner participation on these common benefit efforts was necessary and appropriate. Partner time accounted for 9,980 hours (53% of LCHB's total hours), and $6.6 million in lodestar value (67% of LCHB's total lodestar).

4.     Elizabeth J. Cabraser was appointed to the MDL No. 1657 Plaintiffs' Steering Committee ("PSC") by Judge Fallon; chaired the PSC's Purchase Claims Committee, and co-chaired its Law and Briefing Committee with Arnold Levin. LCHB partners served on numerous major committees, including Purchase Claims; Discovery; Law & Briefing; Science and Experts; Document Review and Selection; Trial; and Trial Package.

5.     LCHB had investigated Vioxx litigation before September 30, 2004, but had not filed cases before that date. LCHB committed completely to the litigation in October 2004, and actively supported MDL centralization. Before April 8, 2005, the starting date for prior submission of MDL time and costs, LCHB had worked 3,965 common benefit hours (lodestar $1,921,905) and incurred $210,332 in common benefit costs.

- 1 -

FAC Resp. Exhibit B -- 886

6.     LCHB maintained its full commitment to common benefit work throughout the bellwether trials phase, despite adverse verdicts.  This commitment included extensive review of supplemental document productions, de-privileged documents, and new scientific articles; preparation for *de benne esse* depositions of Merck witnesses; submission and development of bellwether/early trial candidates in the summer and fall of 2007 in the New Jersey litigation; and preparation of expert reports for the MDL trial package even after settlement.

7.     From inception to present, LCHB has contributed $352,000 in MDL assessments and $930,920 in common benefit costs.  Contract attorneys employed by LCHB contributed 1,031 hours, or 5.5% of LCHB's total common benefit time.  Contract attorneys' lodestar was $334,862.  Contract attorneys were paid $50,288 for this work.

8.     Elizabeth J. Cabraser served throughout as an active PSC member, specifically on the preparation of the personal injury, medical monitoring, and purchase claims master class complaints; on class certification briefing; and on the opposition to dismiss the purchase claims master complaint.  She presented oral argument in opposition to purchase claims dismissal; conducted the regular purchase claims committee meetings and coordinated the MDL purchase claims committee work with that of the New Jersey litigation (including support of and participation in defending Local 68 class certification at the New Jersey appellate/Supreme Court levels); researched and briefed key discovery motions; and participated in the (anti)preemption briefing in opposition to summary judgment.  She and others at LCHB defended the New Jersey medical monitoring claims (Sinclair v. Merck) at the New Jersey trial, appellate, and Supreme Court levels.

9.     Donald C. Arbitblit's work included:

•     Full-time commitment to the litigation from October 1, 2004 through settlement date (approximately 5,000 hours).

•     Full-time trial co-counsel in Barnett v. Merck, the only plaintiffs' victory in the MDL.

•     Chair of PSC Subcommittee on Epidemiology and Causation; Member of PSC Executive Committee of the Science Committee.  Substantial prior MDL Science Committee experience (Diet Drugs, Rezulin, Baycol).

•     Review and analysis of thousands of documents and hundreds of articles to present scientific case, and to link causation to liability issues.

•     Preparation of expert witnesses for bellwether trials and depositions, including key witness Douglas Zipes, M.D., in the Barnett trial; John MacGregor, M.D., in California cases; and assisted in preparation of Richard Kronmal, Ph.D., in New Jersey cases.

•     Briefing and arguing plaintiffs' position on central Daubert causation motions in November 2005, leading to published decision favoring plaintiffs.  451 F.Supp.2d 565 (E.D. La. 2005).

•     Consultations with plaintiffs' counsel before and during numerous Vioxx trials, *e.g.*, Irvin, Ernst, Humeston, Kozic, regarding key documents, evolving trial issues, and expert testimony.

•     Conception and implementation of the strategy to subpoena and depose editor of New England Journal of Medicine ("NEJM") regarding incomplete data submitted for

- 2 -

VIGOR and APPROVe articles; this resulted in NEJM's "Expression of Concern," which, in turn, resulted in Judge Higbee's Order granting a new trial motion in <u>Humeston v. Merck</u>.  On new trial, plaintiffs won a $47 million verdict.[1]

- Development of first expert analysis of (a) Merck osteoarthritis clinical trial data showing statistically significant, 3-fold excess risk of Vioxx v. placebo; (b) greater excess risk of Vioxx for patients with Stage 2 hypertension, a key causation factor cited by Dr. Zipes at the <u>Barnett</u> trial; (c) excess Vioxx risk in the VICTOR study and Merck's "Protocol 203" pooled analysis; and (d) significant excess risk as to stroke alone (Luepker Report, 2/20/08).

- Successful briefing of June 2005 motion to reconsider order regarding physician contacts, which encouraged greater plaintiffs' participation in the MDL.  230 F.R.D. 473 (E.D. La. 2005); followed, <u>In re Kugel Mesh Hernia Repair Patch Litigation</u>, MDL Docket No. 07-1482 ML, Memorandum and Order, 1/22/08, at 2.

- Comprehensive analysis of causation and liability issues regarding hypertension, at request of PSC Science Chair, Shelly Sanford.

- Conduct of depositions of Merck scientists (Watson and Bold), and experts (Pratt and Kim).

10.   Numerous comments from lead counsel have attested to the quality and significance of work contributed by Mr. Arbitblit, including: (a) Carlene Lewis, 7/23/05, during <u>Ernst v. Merck</u> trial: "You've been invaluable this trial.  I owe you big time;" (b) Dave Buchanan, 9/3/05, during prep for <u>Humeston v. Merck</u> trial:  analysis of clinical trials was "very, very significant to our trial case"; he was "following all of your excellent leads" regarding the APPROVe safety report; and (c) Andy Birchfield, 11/16/07:  "You have been an integral part of this litigation and I appreciate your excellent work."

We declare under penalty of perjury that the foregoing is true and correct, and that this affidavit was executed on October 30, 2008.

Elizabeth J. Cabraser
New York, New York

Donald C. Arbitblit
San Francisco, California

---

[1] As Judge Higbee observed, "This is a challenge to what Merck itself did in the critical time period for Humeston between 2000 and 2001.  It goes to the heart of the failure to warn issue.  It is Merck's whole defense, basically, in this trial on the failure to warn issue, and it is substantially – <u>very substantially undermined by the New England Journal of Medicine's expression of concern</u>, which comes after the trial.  <u>Based on that alone I feel that there probably would have been a different result in this case, and I will, in fact, grant a new trial</u>."

(<u>Humeston v. Merck</u>, Hearing Tr., 8/17/06 at p. 50; emphasis added).

# LEVIN, FISHBEIN, SEDRAN & BERMAN

*Counsellors at Law and Proctors in Admiralty*

ARNOLD LEVIN
MICHAEL D. FISHBEIN
HOWARD J. SEDRAN
LAURENCE S. BERMAN
FRED S. LONGER *
DANIEL C. LEVIN
CHARLES E. SCHAFFER
AUSTIN B. COHEN
MICHAEL M. WEINKOWITZ *
CHARLES C. SWEEDLER *
MATTHEW C. GAUGHAN * †

* also admitted in New Jersey
† also admitted in New York

510 WALNUT STREET
SUITE 500
PHILADELPHIA, PA 19106-3697

TELEPHONE (215) 592-1500
FACSIMILE (215) 592-4663

October 30, 2008

**VIA FEDERAL EXPRESS MAIL**

Leonard A. Davis, Esquire
HERMAN, HERMAN, KATZ & COTLAR LLP
820 O'Keefe Avenue
New Orleans, Louisiana 70113

     **Re:**    *Vioxx MDL Products Liability Litigation, MDL No. 1657*

Dear Len:

    Enclosed is the original Affidavit of Arnold Levin Pursuant to Pretrial Order No. 6(D)

                Very truly yours,

                **FRED S. LONGER**

/mmh

Enc.

## AFFIDAVIT OF ARNOLD LEVIN
## PURSUANT TO PRETRIAL ORDER NO. 6(D)

Arnold Levin, being duly sworn according to law deposes and says:

1. I am an attorney licensed to practice law in Pennsylvania. I make this affidavit on behalf of Levin, Fishbein, Sedran & Berman ("LFSB") based upon my intense personal involvement in virtually all aspects of the Vioxx litigation and my thorough familiarity with the record in MDL No. 1657. I have previously been lead counsel or a member of the executive committee in numerous MDLs, which experience has given me the capacity to participate with both the Plaintiffs' Executive Committee and Plaintiffs' Steering Committee ("PSC") in MDL No. 1657.

2. Through PTO No. 6, I was appointed by the Honorable Eldon E. Fallon to the PSC in MDL No. 1657. I have been ably assisted by my partner, Fred S. Longer, and the many other associates and staff in my office. From the onset, my office became thoroughly enmeshed in coordinating and administering the many facets of the litigation. This responsibility placed such rigorous demands on myself and my office that we worked on Vioxx-related matters to the exclusion of other cases, particularly other Cox-2 cases which we perceived to conflict with our litigation strategy. Collectively, LFSB has expended over 19,500 hours to date on this litigation. I alone have expended over 4,300 hours devoted exclusively to this litigation. Because the Court's appointment was personal in nature, I have at all times endeavored to meet and exceed the Court's expectations during the several years of my involvement in this litigation. By way of example, of the 41 Status conferences and pre-hearing conferences conducted by the Court, I have personally appeared at all but one, but at that one missed conference my firm was represented. By way of further example, the Fee Allocation Guidelines that define the purpose and scope of this and every other affidavit submitted for review by the Fee Allocation Committee were largely drafted by me and my partner and adopted by the Court in PTO No. 6(D). My firm's devotion to this litigation has never waivered nor lagged, but has consistently adhered to the expectation of success. And without doubt, my firm's contributions factored significantly into the success of this litigation.

3. At the onset of this MDL, I was appointed as Chairman to the Class Action, Law and Briefing Committee. This committee was responsible for preparing and overseeing all of the PSC's pleadings, motion, briefs and other written papers. My obligation involved not only drafting and overseeing the drafting of any papers responsive to our adversaries' motions, but also included developing the legal theorems and practice stratagems for advancing the claims of all plaintiffs coordinated with the PSC. In this regard, through my efforts, we contributed to or prepared for the PSC over 150 papers (pleadings, motions, responsive briefs, proposed orders, etc.) in this and other related, coordinated state venues determined to be of strategic interest for all plaintiffs. My associate, Michael Weinkowitz, has worked with our MDL experts to develop the stroke trial package and obtain their advise during settlement negotiations. In addition to our written product, I, as well as other LFSB attorneys, personally presented oral argument on behalf of the PSC's interests on numerous occasions throughout the course of the litigation.

1

4.   At my direction, participation and/or supervision in over 50 of the most significant substantive motions in the MDL and the bellwether trial cases, papers were exceptionally crafted in a manner best designed to further the interests of the all coordinated plaintiffs in this litigation. These papers were also filed in our public capacity as officers of the Court, acting for the benefit of the court.  The following are a representative sampling of the significant papers we prepared:[1]

MDL-wide Papers

a)      The Master Class Action Complaints, Motion for class certification and responses to Merck's motions to dismiss the class actions - These papers required intensive factual investigations and presented a novel innovation in pleading collective, personal injury and medical monitoring claims.

b)      The PSC's Petition for an Order Securing an Equitable Allocation of Counsel Fees and Costs for MDL Administration and Common Benefit Work - This motion laid the groundwork for Pretrial Order No. 19.

c)      Plaintiffs' Memorandum of Law in Opposition to Merck's Motion for Summary Judgment regarding 1 year statute of limitations - Merck's efforts to cull the docket by eliminating cases with short statutes of limitations was defeated.  *In re Vioxx Products Liability Litigation*, 478 F.Supp.2d 897 (E.D.La. March 22, 2007).

d)      The PSC's Response in Opposition to Merck's Motion for Summary Judgment regarding Preemption -- Faced with the death-knell defense of immunity from prosecution, LFSB marshalled the extensive factual and legal arguments necessary to defeat the motion.  *In re Vioxx Products Liability Litigation*, 501 F.Supp.2d 776 (E.D.La. July 3, 2007).

e)      The PSC's  Response to Merck & Co., Inc.'s Objections to the Special Master's Second Report and Recommendations – LFSB was actively involved in challenging the privilege designations of Merck and worked extensively with Special Master Paul Rice to contest Merck's over-broad privilege assertions.

Bellwether Trial Support

e)      The PSC's Motion to Compel Appearance of Corporate Representative and Renewed Motion to Compel the Appearance of David Anstice - LFSB presented compelling legal reasoning for interpreting Fed.R.Civ.P. 45 to require the live attendance of Mr. Anstice at distant trials, which inured to the benefit of all MDL plaintiffs. *See In re Vioxx Products Liability Litigation*, 438 F.Supp.2d 664 (E.D.La. 2006).

f)      Humeston's Supplemental Motion for Relief from Final Judgment and for a New Trial Pursuant to New Jersey Rule 4:49-1(a) and 4:50-1(b) and (c) –  LFSB prepared the papers

---

[1]An extended listing of the various motions and other papers prepared by my office are presented in the accompanying Chart of LFSB activities, attached hereto as Exhibit A.

2

that assisted in winning a new trial for Mr. Humeston in New Jersey.

g)       LFSB prepared numerous other motions in limine, responses to in limine motions, post-trial motions and participated in appellate briefing in the bellwether trials of Irvin/Plunkett, Barnett and Humeston.

Post-Settlement Support

h)       Following the announcement of the Settlement Agreement, numerous attempts to challenge the settlement were made by individual counsel and subrogated insurers.  LFSB prepared all of the PEC's or NPC's papers filed in this Court, other district courts and the Fifth Circuit responsive to these efforts to derail the settlement, including:  the Plaintiffs' Steering Committee's Response to Mr. Stratton's Motion for Release of Trial Package;  Motion to Dismiss the Verified Petition of Healthcare Recoveries, Inc.; the Amicus Curiae Brief in Opposition  to the Motion for Temporary Restraining Order and Preliminary  Injunction of Avmed, Inc.; the PSC's Motion to Dismiss and to Strike Class Allegations in the Amended Class Action Complaint of Greater New York Benefit Fund.

I)       LFSB has unfalteringly fought for Vioxx Settlement Claimants to obtain their complete medical records by filing two Motions to Compel Express Scripts to Comply  with the Subpoena Request for Prescription  Drug Documents or Data.

4.  I am also a member of the Plaintiffs Negotiating Counsel, which committee was responsible for achieving the global settlement with Merck.  The committee labored to obtain this landmark settlement by meeting over 50 times and participating in over 500 telephone calls, then negotiating and drafting the 65 page Settlement Agreement, exclusive of over 100 pages of exhibits, in addition to extensive revisions to the proposed pretrial orders accompanying the Settlement Agreement that became Pretrial Order Nos. 28, 29, 30 & 31.

5.  Since the announcement of the Settlement Agreement, LFSB has continued to participate in the ongoing settlement process, including staffing of the Gates Committee, to insure that claimants within the settlement are properly compensated; and participation in the Allocation Committee, to insure that common benefit counsel are reasonably compensated. LFSB is also the major architect of the joint fee petition that it is being preparing for all coordinated counsel.  We have been engaged in extensive legal analysis of applicable Fifth Circuit law and gathering the large quantum of factual information necessary to present the motion, affidavits and supporting material in a precise and cogent manner.

FURTHER AFFIANT SAYETH NOT.

_____
ARNOLD LEVIN

Dated: October 30, 2008

Subscribed and sworn to before me this
_30th_ day of _October_____ , 2008.
Notary Public

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Krystyna Longacre, Notary Public
City of Philadelphia, Philadelphia County
My Commission Expires Aug. 13, 2012
Member, Pennsylvania Association of Notaries

3

# EXHIBIT A

## EXPANDED LISTING OF LFSB'S SIGNIFICANT VIOXX PLEADINGS

| | DESCRIPTION | DATE |
|---|---|---|
| 1. | PSC'S Petition for an Order Securing An Equitable Allocation of Counsel Fees and Costs for MDL Administration and Common Benefit Work | 7/12/2005 |
| 2. | Ancillary Notice Concerning Master Complaints | 8/1/2005 |
| 3. | Master Class Action Complaint (Medical Monitoring) | 8/5/2005 |
| 4. | Master Class Action Complaint (Personal Injury and Wrongful Death) | 8/5/2005 |
| 5. | First Amended Master Class Action Complaint (Medical Monitoring) | 9/20/2005 |
| 6. | First Amended Master Class Action Complaint (Personal Injury and Wrongful Death) | 9/20/2005 |
| 7. | Plaintiffs' Motion to Stay Class Briefing and Plaintiffs' Steering Committee's Memorandum of Law in Support of Plaintiffs' Motion to Stay Class Briefing | 9/23/2005 |
| 8. | Plaintiffs' Steering Committee's Response to Defendants' Motion to Partially Strike Plaintiffs' Personal Injury and Wrongful Death Master Class Action Complaint | 9/23/2005 |
| 9. | Plaintiffs' Steering Committee's Reply to Merck's Response to Motion to Amend the Master Class Action Complaint (Medical Monitoring) to Add by Interlineation Additional Plaintiff Representatives in Newly Filed Class Complaints | 10/12/2005 |
| 10. | Plaintiffs' Steering Committee's Motion to Amend The Master Class Action Complaint (Medical Monitoring) to Add by Interlineation Additional Plaintiff Representatives In Newly Filed Class Complaints | 10/12/2005 |
| 11. | Second Amended Master Class Action Complaint (Medical Monitoring) | 1/23/2006 |

1

| 12. | Plaintiffs' Steering Committee's Motion to Amend the First Amended Master Class Action Complaint (Medical Monitoring) to Add by Interlineation Additional Plaintiff Representative in Newly Filed Class Complaint | 1/23/2006 |
|-----|---|---|
| 13. | Plaintiffs' Steering Committee's Motion to Amend the First Amended Master Class Action Complaint (Personal Injury and Wrongful Death) to Add By Interlineation Additional Plaintiff Representatives in Newly Filed Class Complaints | 1/23/2006 |
| 14. | Plaintiffs' Steering Committee's Substituted Motion to Amend the First Amended Master Class Action Complaint (Medical Monitoring) to Add by Interlineation Additional Plaintiff Representative in Newly Filed Class Complaint | 1/24/2006 |
| 15. | The Plaintiffs' Steering Committee's Motion to Compel the FDA to Produce Documents Withheld in Their Entirety and Unredacted Copies of Other Documents Already Produced | 3/3/2006 |
| 16. | Plaintiff Steering Committee's Reply to the United States' Opposition to the PSC's Motion to Compel | 4/7/2006 |
| 17. | Second Amended Master Class Action Complaint (Personal Injury and Wrongful Death) | 12/11/2006 |
| 18. | Motion and Memorandum of Law in Support of the PSC's Motion to Amend the Master Class Action Complaint (Personal Injury and Wrongful Death) to Add By Interlineation Plaintiff Representatives | 1/25/2007 |
| 19. | Plaintiffs' Steering Committee's Motion to Amend the Second Amended Master Class Action Complaint (Personal Injury and Wrongful Death) to Add by Interlineation Additional Plaintiff Representative in Previously Filed Class Complaint | 2/19/2007 |
| 20. | Plaintiffs' Steering Committee's Reply in Support of Motion to Amend The Second Amended Master Class Action Complaint (Personal Injury and Wrongful Death) to Add By Interlineation Additional Plaintiff Representative in Previously Filed Class Complaint | 3/19/2007 |
| 21. | Third Amended Master Class Action Complaint (Personal Injury and Wrongful Death) | 5/1/2007 |

FAC Resp. Exhibit B -- 894

| 22. | Plaintiff's Memorandum of Law in Opposition to Bifurcation of Trial Between Compensatory and Punitive Damages | 10/10/2005 |
|---|---|---|
| 23. | The PSC's Response in Opposition to Merck & Co., Inc.'s Motion to Dismiss Plaintiffs' Medical Monitoring Master Class Action Complaint | 11/8/2005 |
| 24. | Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion to Compel Appearance of David Anstice at Trial | 11/10/2005 |
| 25. | Reply Memorandum in Support of Plaintiffs' Steering Committee's Motion for a Suggestion of Remand of Class Proceedings | 12/5/2005 |
| 26. | Plaintiffs' Steering Committee's Motion and Memorandum for Certification of a Nation-Wide Class Action for Personal Injury and Wrongful Death | 12/7/2005 |
| 27. | Plaintiffs' Steering Committee's Preliminary Trial Plan for the Nationwide Personal Injury and Wrongful Death Class Action | 12/7/2005 |
| 28. | Plaintiffs Steering Committee's Objections to the Notice of Deposition and Request for Documents of Rosemary Lawrence | 12/16/2005 |
| 29. | Plaintiffs' Steering Committee's Reply Memorandum in Support of Motion for Certification of a Nation-wide Class Action for Personal Injury and Wrongful Death | 1/23/2006 |
| 30. | Plaintiffs' Steering Committee's Response in Opposition to Motley Rice, LLP's Motion for Clarification of Pretrial Order No. 19 | 1/27/2006 |
| 31. | The Plaintiffs' Steering Committee's Opposition to the United States Government's Motion to Quash and Cross-Motion to Compel the Deposition of David Graham, M.D. | 1/27/2006 |
| 32. | Notice of Current Status of Individual State Class Representative Plaintiffs | 2/1/2006 |
| 33. | The Plaintiffs' Steering Committee's Notice of Supplemental Authority | 3/10/200 |
| 34. | Plaintiffs' Steering Committee's Memorandum of Law in Support of Motion to Implement Procedure For Rapid Remand | 3/15/2006 |

3

| 35. | The Plaintiffs' Steering Committee's Reply to Defendant Merck & Co., Inc.'s Response to Plaintiffs' Steering Committee's Notice of Supplemental Authority | 3/22/2006 |
|---|---|---|
| 36. | Plaintiffs' Steering Committee's Memorandum of Law in Support of Motion to Implement Procedure for Rapid Remand | 3/24/2006 |
| 37. | Plaintiffs' Steering Committee's Reply Brief to Merck's Response to Quash Discovery | 3/27/2006 |
| 38. | The Plaintiffs' Steering Committee's Notice of Supplemental Authority | 4/3/2006 |
| 39. | Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion to Compel Appearance of Corporate Representative | 4/4/2006 |
| 40. | Memorandum in Support of Plaintiffs' Steering Committee's Omnibus Motion *in Limine* | 4/5/2006 |
| 41. | Memorandum of Law in Support of The Plaintiffs' Steering Committee's Generic Motion *In Limine* | 4/11/2006 |
| 42. | Plaintiffs' Steering Committee's Rely Brief in Support of Motion to Implement Procedure for Rapid Remand | 4/24/2006 |
| 43. | Plaintiffs' Steering Committee's Joinder in and Memorandum in Support of Third Party David Graham's Emergency Motion to Quash Subpoena | 5/2/2006 |
| 44. | Joint Response to Pretrial Order No. 413 (Joint Status Report: PSC, Warner-Lambert Defendants: Status of Settlement Discussions) | 5/4/2006 |
| 45. | The Plaintiffs' Steering Committee's Memorandum of Law Regarding Administration of the Purchase Claims Class Action | 5/11/2006 |
| 46. | Plaintiff's Steering Committee's Supplemental Brief Pursuant to Minute Entry Dated May 12, 2006 Re: Pennsylvania Attorney-Client Privilege | 5/22/2006 |
| 47. | Plaintiff's Motion to Compel Appearance of A Merck Corporate Representative. | 5/31/2006 |

FAC Resp. Exhibit B -- 896

| 48. | The Plaintiffs' Steering Committee's Reply to Merck & Co. Inc.'s Brief Regarding the PSC's Renewed Motion to Compel David Anstice to Testify Either at Trial or By Live Transmission from Another Location | 6/15/2006 |
|---|---|---|
| 49. | Plaintiffs Supplemental Motion for Relief from Final Judgment and for a New Trial Pursuant to New Jersey Rule 4:49-1(a) and 4:50-1(b) and (c) | 7/6/2006 |
| 50. | The Plaintiffs' Steering Committee's Motion for Clarification of Pretrial Order No. 9 (Re:  Cross-Noticing of MDL Expert Depositions) | 7/14/2006 |
| 51. | The Plaintiffs' Steering Committee's Response in Opposition to the Motion for Reconsideration of This Court's  June 28, 2006 Order Misnamed and Mischaracterized as Motion and Incorporated Memorandum of Mr. David Anstice and Merck & Co., Inc. ("Merck") to Quash Subpoena | 7/14/2006 |
| 52. | The Plaintiffs' Steering Committee's Counter-Statement of Material Facts to Which There is no Genuine to be Tried | 7/28/2006 |
| 53. | Rule 56(f) Affidavit of Liaison Counsel, Russ Herman, in Opposition to Merck & Co.'s Motion for Summary Judgment | 9/13/2006 |
| 54. | Plaintiffs' Response to Merck's Statement of Material Facts as to Which There is no Genuine Issue to be Tried and Plaintiffs' Counter-Statement of Material Facts as to Which There is no Genuine Issue to be Tried | 9/14/2006 |
| 55. | Plaintiffs' Response in Opposition to Merck & Co.'s Motion for Summary Judgment | 9/15/2006 |
| 56. | Notice of Supplemental Authority of Plaintiffs Lene Arnold and Alicia Gomez | 9/27/2006 |
| 57. | Second Notice of Supplemental Authority of Plaintiffs Lene Arnold and Alicia Gomez | 10/4/2006 |
| 58. | Third Notice of Supplemental Authority of Plaintiffs Lene Arnold and Alicia Gomez | 10/10/2006 |
| 59. | Fourth Notice of Supplemental Authority of Plaintiffs Lene Arnold and Alicia Gomez | 10/17/2006 |

FAC Resp. Exhibit B -- 897

| 60. | Fifth Notice of Supplemental Authority of Plaintiffs Lene Arnold and Alicia Gomez | 10/27/2006 |
|---|---|---|
| 61. | Plaintiffs' Memorandum of Law in Opposition of Merck & Co., Inc's Motion for a Protective Order Prohibiting Discovery of Attorney Work Product Relating to the Martin Report | 11/1/2006 |
| 62. | Respondent Anthony Wayne Dedrick's Answer in Opposition to Petition for Writ of Mandamus | 11/2/2006 |
| 63. | Plaintiffs' Surreply in Opposition to Merck & Co., Inc's Motion for a Protective Order Prohibiting Discovery of Attorney Work Product Relating to the Martin Report | 11/6/2006 |
| 64. | Plaintiffs' Motion to Compel Compliance with Third-Party Subpoenas | 11/14/2006 |
| 65. | Reply Brief of Plaintiffs Lene Arnold and Alicia Gomez Regarding Supplemental Authority | 11/15/2006 |
| 66. | Plaintiffs' Memorandum of Law in Support of Motion to Compel Compliance with Third-Party Subpoenas | 11/20/2006 |
| 67. | Sixth Notice of Supplemental Authority of Plaintiffs Lene Arnold and Alicia Gomez | 11/30/2006 |
| 68. | Seventh Notice of Supplemental Authority of Plaintiffs Lene Arnold and Alicia Gomez | 12/22/2006 |
| 69. | Plaintiffs' Reply in Support of Motion to Compel Compliance with Third-Party Subpoenas | 12/26/2006 |
| 70. | Plaintiffs' Response to Merck's Statement of Material Facts as to Which There is no Genuine Issue to be Tried and Plaintiffs' Counter-Statement of Material Facts as to Which There is no Genuine Issue to be Tried | 1/4/2007 |
| 71. | Plaintiffs' Memorandum of Law in Opposition to Merck's Motion for Summary Judgment | 1/4/2007 |
| 72. | The Plaintiffs' Steering Committee's Notice of Supplemental Authority | 1/5/007 |
| 73. | Stipulation | 1/11/2007 |
| 74. | Notice of Supplemental Authority | 1/12/2007 |

FAC Resp. Exhibit B -- 898

| 75. | Response of the PSC to Merck's Notice of Supplemental Authority in Support of Merck's Motion for a Protective Order prohibiting Discovery of Attorney Work Product and Privileged Communications related to the Martin Report | 2/26/2007 |
| 76. | The PSC's Response in Opposition to Merck's Motion to Strike Class Action Allegations in Plaintiff's Medical Monitoring Master Class Action Complaint | 3/19/2007 |
| 77. | The Plaintiffs Steering Committee's Motion to Compel The Return of Attorney Work Product | 3/28/2007 |
| 78. | The Plaintiffs' Steering Committee's Motion for a Protective Order and Memorandum in Support thereof | 3/29/2007 |
| 79. | The Plaintiffs' Steering Committee's Reply in Support of Motion to Alter or Amend the Judgment of This Court's Order of March 5, 2007 (re:  The Martin Report) | 4/5/2007 |
| 80. | The PSC's Surreply in Opposition to Merck's Motion to Strike Class Action Allegations in Plaintiff's Medical Monitoring Master Class Action Complaint | 4/9/2007 |
| 81. | First Notice of Supplemental Authority | 4/10/2007 |
| 82. | The Plaintiffs' Steering Committee's Reply in Support of Motion to Compel the Return of Attorney Work Product | 4/11/2007 |
| 83. | Second Notice of Supplemental Authority Re: Motion to Dismiss Medical Monitoring Master Class Action Complaint | 4/12/2007 |
| 84. | Eighth Notice of Supplemental Authority of Plaintiffs Lene Arnold and Alicia Gomez | 4/30/2007 |
| 85. | Plaintiffs' Steering Committee's Renewed Motion to Implement Procedure for Rapid Remand | 4/30/2007 |
| 86. | Notice of Filing | 5/1/2007 |
| 87. | Plaintiffs' Motion to Substitute Defendant | 5/2/2007 |
| 88. | Special Master's Procedural Guidelines for the Submission of Privilege Claims | 5/10/2007 |
| 89. | Plaintiffs' Steering Committee's Motion and Incorporated Memorandum to Conduct Case-Specific Discovery | 5/21/2007 |

FAC Resp. Exhibit B -- 899

| 90. | Reply in Support of Eighth Notice of Supplemental Authority of Plaintiffs Lene Arnold and Alicia Gomez | 5/23/2007 |
|---|---|---|
| 91. | Brief *Amicus Curiae* of Curt D. Furberg, M.D., Ph.D., *et alia*, in Support of Reversal | 5/31/2007 |
| 92. | Unopposed Motion of Curt D. Furberg, M.D., Ph.D., *et alia*, for Leave to File Brief *Amicus Curiae* in Support of Appellant | 6/5/2007 |
| 93. | Notice of Supplemental Authority to the Plaintiffs' Steering Committee's Motion to Conduct Case-Specific Discovery | 6/7/2007 |
| 94. | Ninth Notice of Supplemental Authority of Plaintiffs Lene Arnold and Alicia Gomez | 6/12/2007 |
| 95. | Tenth Notice of Supplemental Authority Of Plaintiffs Lene Arnold and Alicia Gomez | 6/15/2007 |
| 96. | The Plaintiffs' Steering Committee's Supplemental Brief in Support of Motion for a Protective Order | 6/26/2007 |
| 97. | The Plaintiffs' Steering Committee's Motion to Alter or Amend this Court's Minute Entry of June 28, 2007 re: Motion for a Protective Order and Memorandum in Support thereof | 7/6/2007 |
| 98. | The Plaintiff's Steering Committee's Notice of Deposition of the Honorable Mitchell E. Daniels, Jr. | 7/18/2007 |
| 99. | The Plaintiff's Steering Committee's Notice of Deposition of the Honorable Haley Barbour | 7/18/2007 |
| 100. | The Plaintiffs' Steering Committee, As *Amicus Curiae*, Brief in Opposition to Defendant Merck & Co., Inc.'s Rule to Show Cause Why Cases Should Not be Dismissed for Providing Grossly Deficient Plaintiff Profile Form In Contravention of Pretrial Order No. 18(C) | 7/25/2007 |
| 101. | Plaintiffs' Steering Committee as *Amicus Curiae* in Response to the Motion of Merck & Co., Inc. for a New Trial on All Issues | 8/1/2007 |
| 102. | Third Notice of Supplemental Authority re: Motion to Dismiss Medical Monitoring Master Class Action Complaint | 8/1/2007 |

FAC Resp. Exhibit B -- 900

| | | |
|---|---|---|
| 103. | Plaintiffs' Steering Committee as *AMICUS CURIAE* in Response to the [Renewed] Motion of MERCK & CO., Inc. For A New Trial | 8/8/2007 |
| 104. | Notice of Supplemental Authority re: Merck's Motion and Memorandum to Alter or Amend the Court's July 3, 2007 Order Denying Merck's Motion for Summary Judgment to Include Certification for Interlocutory Review Pursuant to 28 U.S.C. § 1292(b) | 8/13/2007 |
| 105. | The PSC's Second Notice of Supplemental Authority Re: Merck's Motion and Memorandum to Alter or Amend the Court's July 3, 2007 Order Denying Merck's Motion for Summary Judgment to Include Certification for Interlocutory Review Pursuant to 28 U.S.C. § 1292(b) | 8/23/2007 |
| 106. | The PSC'S Response to Merck's Notice of Supplemental Authority in Support of Merck's Motion to Alter or Amend Preemption Ruling | 8/28/2007 |
| 107. | The PSC's Third Notice of Supplemental Authority Re: Merck's Motion and Memorandum to Alter or Amend the Court's July 3, 2007 Order Denying Merck's Motion for Summary Judgment to Include Certification for Interlocutory Review Pursuant to 28 U.S.C. § 1292(b) | 8/30/2007 |
| 108. | The PSC'S Reply in Support of First and Second Notice Of Supplemental Authority re: Merck's Motion and Memorandum to Alter or Amend the Court's July 3, 2007 Order Denying Merck's Motion for Summary Judgment To Include Certification for Interlocutory Review Pursuant to 28 U.S.C. § 1292(b) | 8/30/2007 |
| 109. | Plaintiff's Steering Committee's Response to Merck & Co., Inc.'s Objections to the Special Master's Second Report and Recommendations | 9/5/2007 |
| 110. | [Proposed] Pre-Trial Order No. ___ (In Camera Inspection of the PSC Trial Package) | 9/25/2007 |
| 111. | Plaintiffs' Brief in Support of the Full, Complete and Timely Production of Merck Professional Representative Custodial Files with Limited Redactions | 10/1/2007 |
| 112. | Plaintiff's Steering Committee's Response to Defendant's Notice of Supplemental Authority and Status Report on Pending MDL Class Actions | 10/5/2007 |

FAC Resp. Exhibit B -- 901

| 113. | The Plaintiff's Steering Committee's Notice of Deposition of Fed.R.Civ.P 30(b)(6) Designee of the United States Food and Drug Administration | 10/12/2007 |
|------|------|------|
| 114. | The Plaintiff's Steering Committee's Notice Of Deposition of Eric M. Blumberg, Esquire | 10/12/2007 |
| 115. | The Plaintiff's Steering Committee's Notice Of Deposition of Randall Lutter | 10/12/2007 |
| 116. | Subpoena Fed. R.Civ.P. 30(b)(6) Designee of FDA familiar with subjects set forth in Schedule A | 10/12/2007 |
| 117. | Plaintiff's Steering Committee's Response to Merck & Co., Inc's Supplemental Memorandum in Support of The Application of Privilege to Third Party Consultants DDB And Ogilvy | 10/16/2007 |
| 118. | Stipulation Regarding Preemption | 10/23/2007 |
| 119. | Plaintiff's Steering Committee's Response to Merck & Co., Inc's Response to Special Master's Initial Rulings | 10/26/2007 |
| 120. | Pretrial Order No. _____ (Prima Facie Evidence of Usage, Injury and Causation) | 10/30/2007 |
| 121. | Pretrial Order No. _____ Rules and Procedures Relating to All Cases Filed or Transferred After [Date] | 10/30/2007 |
| 122. | Plaintiffs Steering Committee's ("PSC") Omnibus Memorandum of Law in Opposition to Merck's Motions for Summary Judgment | 11/1/2007 |
| 123. | The Plaintiffs' Steering Committee's Reply to Merck & Co., Inc.'s Response to Proposed Stroke Trial Plan | 11/5/2007 |
| 124. | Plaintiff's Steering Committee's Joint Response to Merck's Motions for Entry of Pretrial Order Re: ("Case Administration Motion") AND ("Late Comers Motion") | 11/6/2007 |
| 125. | Pre-Trial Order No. ___ (Appointment of Allocation Committee) | 11/13/2007 |

10

| 126. | The Plaintiffs' Steering Committee's Memorandum of Law in Opposition to Merck's Motion and Memorandum to Alter or Amend the Court's July 3, 2007 Order Denying Merck's Motion for Summary Judgment to Include Certification for Interlocutory Review Pursuant to 28 U.S.C. § 1292(b) | 11/20/2007 |
|------|------|------|
| 127. | Subpoena About Domain DotCom Solutions Pvt. Ltd. | 12/4/2007 |
| 128. | Pretrial Order No. ___ (Reporting of Common Benefit Time by NPC and Others | 12/6/2007 |
| 129. | Negotiating Plaintiff Counsel's Motion for Expedited Consideration of Notice of Tag-Along Action | 12/7/2007 |
| 130. | Motion for Stay of Proceedings Pending Transfer of Case to MDL 1657 for Consolidation as a Tag-Along Action | 12/7/2007 |
| 131. | Notice of Tag-Along Action | 12/7/2007 |
| 132. | The Plaintiffs' Steering Committee's Emergency Motion to Lift Stay for Purposes of Conducting Discovery Regarding the Website Known as "OFFICIALVIOXSETTLEMENT.COM | 12/7/2007 |
| 133. | The Plaintiffs' Steering Committee's Response to Mr. Stratton's Motion for Release of Trial Package | 12/10/2007 |
| 134. | Motion and Memorandum in Support thereof to Transfer Venue Pursuant to 28 U.S.C.A. § 1404 (a) | 12/15/2007 |
| 135. | Response to Plaintiff's Motion Requesting Deferral of Further Action Until Motion Before MDL is Resolved | 12/17/2007 |
| 136. | The Plaintiffs' Steering Committee's Response to Emergency Motion for Clarification and/or Modification of Pretrial Order No. 31 | 12/20/2007 |
| 137. | Negotiating Plaintiffs' Counsel's Response to Emergency Motion for Clarification and/or Modification of Pretrial Order No. 31 | 12/21/2007 |
| 138. | Plaintiff's Liaison Counsel's Motion to Dismiss Appeal on Behalf of Plaintiffs' Steering Committee's ("PSC") | 1/2/2008 |
| 139. | Plaintiffs' Steering Committee's Reply in Support of Motion to Dismiss Appeal | 1/22/2008 |

11

| 140. | The PSC's Motion to Compel Express Scripts to Comply with the Request Made in Connection with the Vioxx Settlement Program for the Prescription Drug Documents or Data Needed to the Vioxx Settlement Program | 2/8/2008 |
|---|---|---|
| 141. | The Plaintiffs' Steering Committee's Response to the Amended Motion of Certain Florida Claimants to be Included in the Vioxx MDL Settlement Agreement | 2/14/2008 |
| 142. | Plaintiff's Steering Committee's Reply Brief in Support of its Motion to Dismiss the Verified Petition of Healthcare Recoveries, Inc. | 3/17/2008 |
| 143. | [PROPOSED] PRE-TRIAL ORDER NO. ___ (Assessment for Use of PSC Trial Package) | 4/18/2008 |
| 144. | Plaintiffs Steering Committee's Response in Opposition to Certain Plaintiffs' and Their Counsel's Emergency Motion for Modification and/or Suspension of Pretrial Order No. 28 and Request for Expedited Telephonic Hearing | 4/29/2008 |
| 145. | Reply Memorandum in Support of Motion to Compel Production of Documents Improperly Claimed as Privileged on Merck's Privilege Log | 5/13/2008 |
| 146. | Pretrial Order No. _____ re: requests for the award of attorneys' fees and reimbursement of litigation expenses in MDL 1657 pursuant to the Master Settlement | 6/10/2008 |
| 147. | The Plaintiff's Steering Committee's and the Negotiating Plaintiff's Counsel's, Each as Amicus Curiae, Memorandum of Law in Opposition to the Motion for Temporary Restraining Order and Preliminary Injunction | 6/20/2008 |
| 148. | The NPC Defendants' Response in Opposition to Plaintiffs' Motion for Preliminary Injunction | 7/8/2008 |
| 149. | The Plaintiff's Steering Committee's and the Negotiating Plaintiff's Counsel's, Amicus Curiae Response to the Emergency Motion to Reinstate Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction | 7/16/2008 |
| 150. | The NPC Defendants' Motion and Memorandum of Law In Support of Their Motion to Dismiss and to Strike Class Allegations in the Amended Class Action Complaint | 7/21/2008 |

12

FAC Resp. Exhibit B -- 904

13



| SCOTT C. BARNES | MARTIN H. LEVIN | MIKE PAPANTONIO | DAVID H. LEVIN |
|---|---|---|---|
| BRIAN H. BARR | STANLEY B. LEVIN | MARK J. PROCTOR | (1928-2002) |
| M. ROBERT BLANCHARD | ROBERT M. LOEHR | TROY A. RAFFERTY | |
| VIRGINIA M. BUCHANAN | NEIL E. McWILLIAMS, JR. | AMANDA SLEVINSKI | OF COUNSEL: |
| STEPHEN H. ECHSNER | Wm. JEMISON MIMS | MEGHAN M. TANS | ROBERT F. KENNEDY, JR. |
| RACHAEL R. GILMER | CLAY MITCHELL | LEO A. THOMAS | (LICENSED ONLY IN NEW YORK) |
| PETER L. KAUFMAN | R. LARRY MORRIS | LEA MORRIS TURTLE | |
| KIMBERLY R. LAMBERT | PETER J. MOUGEY | BRETT VIGODSKY | W. STEVE BOZEMAN |
| FREDRIC G. LEVIN | TIMOTHY M. O'BRIEN | CHRISTOPHER M. VLACHOS | (LICENSED ONLY IN MISSISSIPPI) |

# LEVIN · PAPANTONIO
# THOMAS · MITCHELL
# ECHSNER & PROCTOR · P.A.
PROFESSIONAL CORPORATION    ATTORNEYS AT LAW

October 30, 2008

Plaintiffs' Liaison Counsel
Russ Herman
c/o Herman, Herman, Katz & Cotlar, LLP
820 O'Keefe Avenue
New Orleans, LA 70113

Dear Mr. Herman:

Enclosed please find Levin Papantonio's fee affidavit and three page memorandum.

Truly,

RACHAEL RAYMON GILMER

RRG/mw

OFFICE  316 S. BAYLEN STREET • SUITE 600 • PENSACOLA, FL 32502
CORRESPONDENCE: P.O. BOX 12308 • PENSACOLA, FL 32591 CONTACT: (850) 435-7000 • (850) 435-7020 FAX • WWW.LEVINLAW.COM

Vioxx Fee Memorandum

Given the vast amount of work done by Levin, Papantonio in the Vioxx litigation, it is difficult to condense it down to three pages. However, this summary will list some of the major contributions with the understanding that much detail is left out due to the restrictions on length.

Beginning with the withdrawal of Vioxx in September 2004 and continuing to the present, Levin Papantonio's commitment to the Vioxx litigation has been steadfast and characterized by work vital to the prosecution of the case. In early 2005, prior to the assignment of the Vioxx MDL to Judge Eldon Fallon, senior partner Mike Papantonio helped organize the plaintiffs' bar, to bring focus and unity to the large and diverse group of attorneys which ultimately directed the litigation nationally. Levin Papantonio partners Troy Rafferty and Pete Kaufman, along with other attorneys at the firm, immediately began work vital to the evolution of the plaintiffs' case by developing theories of liability.

Following organization of the MDL, Levin, Papantonio attorneys promptly took up critical roles in the MDL. Mr. Rafferty was appointed to the Plaintiffs Steering Committee and served as co-chairperson of the Discovery Committee as well as a member of the Trial Package Committee. His work began immediately including the negotiation of early case management orders and the plaintiff and defense fact sheets. Mr. Kaufman was co-chair of the Trial Package Committee, a member of the Discovery and Science Committees, and a member of the Sales and Marketing Subcommittee. Firm associates Rachael Gilmer and Kristian Rasmussen were members of the Discovery Committee. Mrs. Gilmer was also a member of the Sales and Marketing Subcommittee. Partner Virginia Buchanan was a member of the Science Committee.

In August 2005, Mr. Kaufman helped to develop the earliest iteration of the Vioxx "theme grid," by which the massive liability discovery was organized into usable and intuitive themes and subthemes. Throughout the litigation, Mr. Papantonio, Mr. Rafferty and Mr. Kaufman took critical depositions which were played in nearly every Vioxx case tried. Mr. Rafferty and Mr. Kaufman tried or participated in five Vioxx trials in the MDL and three states. They, along with senior partner Fredric Levin, also tried the last Vioxx case (Kozic v. Merck), just weeks before the announcement of the national settlement program. The firm's commitment to the litigation has continued even after the settlement was announced with Mr. Rafferty's work on the Plaintiff's Steering Committee and Allocation Committee and Mr. Kaufman's continued work on the Trial Package Committee. After the settlement was announced, Mr. Rafferty and Mr. Kaufman participated in meetings with plaintiffs' counsel to help explain the settlement agreement and procedure.

As in most large pharmaceutical cases, numerous depositions were taken in the Vioxx litigation. Those taken by Levin Papantonio are notable by the extent to which they materially advanced the plaintiffs' case. This is demonstrated by the fact that these depositions were played in nearly every Vioxx case tried. Mr. Rafferty took the deposition of Dr. James Fries, the Stanford University rheumatologist who was pressured by Merck executive Lou Sherwood to stifle dissent about Vioxx. Mr. Kaufman deposed Charlotte McKines, Executive Director of Marketing for Vioxx who put Johns Hopkins researcher and Vioxx critic Dr. Andrew Welton on a "bad guys" list. Mr. Papantonio took the deposition of Susan Baumgartner, the sales executive charged with investigating Stanford researcher and Vioxx critic Dr. Gurkipal Singh; He also deposed J. Martin Carroll, Executive Vice President for Sales; and national sales executives James Dunn and Jo Jerman. These depositions provided the framework for the sales and marketing liability case and enabled trial counsel to present large portions of the liability case

using videotaped testimony.

Mr. Kaufman and Mr. Rafferty also played key roles in the development of the MDL trial package. Both were members of the Trial Package committee, with Mr. Kaufman serving as co-chairperson. They spent scores of hours helping to develop the Vioxx liability "theme grid," which was used to organize millions of Merck documents into a cohesive, workable universe of material. The theme grid narrows millions of pages of document discovery into a searchable database of approximately fifteen-hundred documents, readily usable by attorneys who have not spent years on the case. The theme grid became the centerpiece of the Vioxx trial package. The MDL trial package makes available on a single hard drive the material necessary for conducting an entire trial from pretrial motions, through the liability and science cases, including model direct and cross examinations of witnesses, through post-trial motions. In December 2005, Mr. Papantonio, Mr. Rafferty and Mr. Kaufman presented an overview of the first iteration of the trial package at a PSC "trial" seminar. The seminar was critical to mobilizing the plaintiff's bar for upcoming Vioxx trials. Mr. Rafferty and Mr. Kaufman continued to spend countless hours reviewing, updating and perfecting the trial package over the next three years.

Another key litigation advance was provided by Mr. Rafferty and Mr. Kaufman prior to the retrial of the Plunkett v. Merck case in the MDL. In an effort to streamline the pretrial process, these attorneys devised a novel method for presenting proposed videotaped deposition testimony and evidence to the Court, by preparing deposition notebooks. Each notebook provided plaintiff's designations, defendant's objections with plaintiff's response, all exhibits offered through the witness, and a thumbnail sketch introducing the witness, in a simple, usable format. The notebooks permitted the Court to make rulings on hours and hours of testimony prior to the beginning of trial, without the need for argument from counsel. Ultimately, rulings on deposition testimony from more than a dozen trials were incorporated into the notebooks, providing subsequent trial judges with the benefit of the work of previous courts. Because mass tort pharmaceutical trials are largely dependant upon videotaped deposition testimony, these deposition notebooks became the core of the trial package, enabling subsequent trial teams to prosecute cases efficiently and at substantially decreased cost.

The truest measure of firm's commitment to the litigation may be in the consistent work performed in trial, both in the MDL and in various state courts. In all, Levin, Papantonio attorneys participated in five Vioxx trials:

In Kozic v. Merck (September-October 2007, Florida circuit court), the final Vioxx case tried, Mr. Levin, Mr. Rafferty, Mr. Kaufman and Ms. Gilmer handled virtually every aspect of trial, including key depositions of treating and prescribing physicians, expert witnesses, extensive pretrial motions, deposition designations, and opening and closing statements;

In Plunkett v. Merck (January-February 2006, MDL), Levin Papantonio attorneys handled much of the motion practice, deposition cuts, and several significant witnesses including: plaintiff's FDA expert (Richard Kapit); plaintiff's treating physician; defendants FDA expert (Dr. Arrowsmith-Lowe) and Dr. Briggs Morrison. The firm was represented by Mr. Rafferty, Mr. Kaufman and trial paralegal Dana Vigodsky. Although this was a retrial of the Plunkett case, it required significant reworking of plaintiff's case and was not simply a repeat of the first trial;

In Humeston v. Merck (October 2005, New Jersey state court), Mr. Rafferty and Mr. Kaufman assisted with pretrial work, including preparation of deposition cuts, expert witness preparation and motion practice. Both were present for much of the trial in New Jersey to assist with all the above;

In Arrigale/Appell v. Merck (October 2006 - January 2007, California state court), the

firm acted as co-counsel, with lead counsel Brian Panish, for plaintiff Larry Appell. Mr. Rafferty and Mr. Kaufman deposed critical witnesses, including plaintiff's treating cardiologists and the prescribing physician, longtime Merck speaker and advocate, Dr. Lawrence McAdams. Mr. Rafferty and Mr. Kaufman were actively involved in the strategy decisions, pre-trial work, exhibits, work up of expert witnesses, motion practice and deposition cuts;

Mr. Kaufman and Mr. Rafferty assisted in the first MDL trial, Irvin v. Merck.  Mr. Kaufman worked extensively with expert witness Dr. Benedict Luchessi, preparing for his trial testimony. He and Mr. Rafferty also assisted with development of cross-examinations of Merck employee and expert witnesses. The firm handled a number of motions in limine and assisted with deposition designations and objections.

The Record v. Merck case (Florida circuit court) was set for trial in December 2007, but was stayed following the announcement of the national settlement. Prior to the stay, Mr. Kaufman prepared plaintiff's case specific expert for trial, deposed the Merck sales person and prepared a comprehensive motion for punitive damages, which later was incorporated into the Vioxx trial package.

Mr. Rafferty and Mr. Kaufman worked with a number of plaintiff expert witnesses, helping prepare for deposition and trial testimony, including: Dr. Richard Kapit, FDA/regulatory; Dr. Jerry Avorn, epidemiology and drug safety; Dr. Lemuel Moye, epidemiology, drug safety and FDA/regulatory; Dr. Ira Gelb, cardiology; Dr. Rico Simonini, cardiology; Dr. Robert Fletcher epidemiologist (peer reviewed publication)(with Bert Black); and Dr. Benedict Luchessi, pharmacology. Mr. Raffery and Mr. Kaufman also developed a number of key trial cross examinations, including: Dr. Alice Reicin (cross-examined in Kozic v. Merck by Mr. Rafferty); Dr. Briggs Morrison, (cross-examined in Plunkett v. Merck (II) trial by Mr. Rafferty and in Kozic v. Merck by Mr. Kaufman); Dr. Janet Arrowsmith-Lowe, Merck regulatory expert (cross-examined in Plunkett v. Merck (II) by Mr. Rafferty); Dr. Lisa Rarick, Merck regulatory expert (for Kozic v. Merck); Dr. David Silver, Merck rheumatologist (for Plunkett v. Merck(II)); Dr. Eliav Barr, Merck scientist (for preservation deposition ultimately cancelled by Merck); Dr. Richard Friedman, Merck expert witness, cardiologist (for Appell v. Merck); Dr. Nicholas Flavahan, Merck expert witness, pharmacologist (for Appell v. Merck); Dr. John Keaney, Merck expert witness, cardiologist and pharmacologist (for Appell v. Merck); Dr. Douglas Vaughn, Merck expert witness, pharmacologist (for Kozic v. Merck); Dr. Kim Klancke, Merck expert witness, cardiologist (for Kozic v. Merck).

Mr. Rafferty was active in all phases of discovery including drafting of interrogatories; requests for production; negotiating early case management orders, foreign discovery, plaintiff and defense fact sheets, and third party discovery including the detailed and contentious FDA negotiation and production of documents.

As a member of the Sales and Marketing Subcommittee, Mr. Kaufman worked with other attorneys to develop a model cross-examination for Merck sales representatives. The outline contains a comprehensive guide to the sales and marketing liability case, focused on misrepresentations aimed at prescribing physicians. The outline incorporates a wide variety of liability documents, enabling attorneys to make the larger liability case relevant to an individual plaintiff.

To date, the Levin, Papantonio firm has provided $300,000 in funding to the Vioxx MDL and has submitted over 7600 hours for MDL time worked.  Less than ten hours of Levin Papantonio's submitted time is for read and receipt of email.  99.9% of the hours submitted are for work that materially advanced the litigation.

## AFFIDAVIT OF PETER L. KAUFMAN

BEFORE ME, the undersigned authority, this day personally appeared PETER L. KAUFMAN, and after being duly sworn, deposes and says under oath as follows:

1.      My name is Peter L. Kaufman, and I am a shareholder at the law firm of Levin, Papantonio, Thomas, Mitchell, Echsner & Proctor, P.A.

2.      I have been a member of the Vioxx ligitation group since its inception in 2004.

3.      I have reviewed the Vioxx fee memorandum, and it is truthful and accurate to the best of my knowledge.

4.      The above is true and correct to the best of my knowledge and belief.

FURTHER AFFIANT SAYETH NOT.

_____
PETER L. KAUFMAN

SWORN TO AND SUBSCRIBED TO before me this __30th__ day of __October__, 2008, by PETER L. KAUFMAN who is personally known by me.

NOTARY PUBLIC-STATE OF FLORIDA
Angelene Thane
Commission #DD568160
Expires: JULY 04, 2010
BONDED THRU ATLANTIC BONDING CO., INC.

_____
Notary Public

_Angelene Thane_
Printed name

(Notary Seal)

Commission Expiration: _7-4-2010_

1

UNITED STATES DISTRICT COURT
2       EASTERN DISTRICT OF LOUISIANA

3   IN RE: VIOXX                          )    MDL Docket No. 1657
                                          )
4   PRODUCTS LIABILITY LITIGATION         )    SECTION L
                                          )
5                                         )    JUDGE FALLON
                                          )
6                                         )    MAGISTRATE JUDGE KNOWLES
                                          )
7   ─────────────────────────────────────

**AFFIDAVIT OF LYNN LINCOLN SARKO**
8   **IN SUPPORT OF KELLER ROHRBACK'S COMMON BENEFIT AWARD**

9

10  Lynn Lincoln Sarko, being first duly sworn on oath deposes and says:

11          1.      I am the managing partner of the law firm of Keller Rohrback L.L.P.  This affidavit is

12  based on personal knowledge in support of the common benefit time and expense reports submitted

13  for Keller Rohrback.

14          2.      Keller Rohrback submitted its common benefit time and expense reports in this action

15  in response to a letter our firm received from Fred S. Longer of Levin, Fishbein, Sedran & Berman,

16  which encouraged our firm to make this submission due to our firm's assistance in common benefit

17  work in connection with our representation of clients on the Master Class Action Complaint

18  involving medical monitoring.

19          3.      Keller Rohrback's involvement in the medical monitoring portion of this litigation

20  began immediately after Vioxx was withdrawn from the market in September 2004.  We received

21  calls from Washington residents who wished to pursue a class action.  We immediately engaged in

22  legal, medical, and factual research and investigation that ultimately resulted in our filing a medical

23  monitoring class action case in the Superior Court of Washington in and for King County, which

24  Merck removed to the Western District of Washington.  Our research included issues such as

25  potential causes of action under the Washington Product Liability Act, the validity of a medical

26

AFFIDAVIT OF LYNN LINCOLN SARKO - 1

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FAX: (206) 623-3384

N:\CLIENTS\26640\1\PLEADINGS\LLSDEC.102808.DOC

1    monitoring cause of action under Washington law, and the forms of relief available to Washington

2    residents. Upon receipt of the defendants' answers, additional research was done pertaining to issues

3    such as the federal preemption defenses and the learned intermediary doctrine.

4        4.     Upon filing the medical monitoring class action, our office was inundated with

5    telephone calls from potential class members. We assembled a team of paralegals and set up a toll-

6    free number for prospective class members. We also prepared information packets and

7    questionnaires to send to prospective class members to give them information about the case and to

8    obtain information from the prospective class members to determine whether they might be entitled

9    to relief. Through today, we have been contacted by over 900 potential class members. To this day

10    we have maintained our 1-800 number and have somebody available to take any calls from class

11    members, but the number of callers has dramatically declined. We anticipate, however, that

12    additional work will be required once Judge Fallon rules on Defendants' motions to strike the class

13    action allegations and to dismiss the Master Class Action Complaint involving medical monitoring.

14        5.     We also set about to review and analyze the various scientific and medical studies and

15    retain expert witnesses such as cardiologists. In order for our paralegals to keep updated with

16    events, we prepared factual outlines and summaries of medical terminology and held meetings with

17    our paralegals to keep them updated as events unfolded.

18        6.     Meetings and telephone calls with other counsel around the country occurred to

19    assess the likelihood of whether the litigation was destined for MDL proceedings. Once the MDL

20    was established in this Court and assigned to Judge Fallon, we followed the minutes of the status

21    conferences and attended a number of seminars, by telephone and/or in person, some sponsored by

22    the PSC.

23        7.     We also investigated and eventually filed additional medical monitoring class actions

24    case in Tennessee, Idaho, and Arizona. Those cases, along with the case we filed in Washington

25

26

AFFIDAVIT OF LYNN LINCOLN SARKO - 2

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FAX: (206) 623-3384

PAC Resp. Exhibit 3-3912

1  were ultimately transferred to the MDL and consolidated into the Master Class Action Complaint

2  involving medical monitoring.

3

4  DATED this ___ day of October, 2008.

5

6  KELLER ROHRBACK L.L.P.

7

8

9  By _____
   Lynn Lincoln Sarko

10  1201 Third Ave., Suite 3200
    Seattle, WA 98101

11  Attorneys for Plaintiffs Ken Yohe,
    Calvin Kinghorn, Wayne Young, and

12  Barbara Cathey on the MDL Master Class
    Action Complaint

13

14  SUBSCRIBED AND SWORN TO before me this ___ day of October, 2008.

15

16  MARY K MONTGOMERY

17  Print Name: Mary K Montgomery
    NOTARY PUBLIC in and for the State of

18  Washington; residing at Seattle WA
    My commission expires: 06/29/2012

19

20

21

22

23

24

25

26

AFFIDAVIT OF LYNN LINCOLN SARKO - 3

N:\CLIENTS\26640\1\PLEADINGS\LLSDEC.102808.DOC                    FAC Resp. Exhibit B - 913

# LEWIS & ROBERTS

PROFESSIONAL LIMITED LIABILITY COMPANY

**ATTORNEYS AT LAW**

3700 Glenwood Avenue, Suite 410
Raleigh, North Carolina 27612
Mailing Address
Post Office Box 17529
Raleigh, NC 27619-7529

(888) 981-0939
Telephone (919) 981-0191
Facsimile (919) 981-0199

Richard M. Lewis
James A. Roberts, III
Winston L. Page, Jr.
Timothy S. Riordan
Daniel K. Bryson
John D. Elvers
Brian D. Lake
John H. Ruocchio
Gary V. Mauney
Kimberly R. Wilson *

Jeffrey A. Misenheimer
Paul R. Dickinson, Jr.
Matthew C. Bouchard **
Paul C. McCoy
Sarah C. Blair
Scott C. Harris
Melissa K. Walker
William J. Blakemore
J. Timothy Wilson

**Charlotte Office**
5960 Fairview Road, Suite 102
Charlotte, NC 28210-3102
Telephone (704) 347-8990
Facsimile (704) 347-8929

Kimberly R. Wilson
Direct Dial: (919) 719-8562
Email: krw@lewis-roberts.com

<u>Of Counsel</u>
John S. Austin

* Also Admitted in W. VA
** Also Admitted in MA

October 27, 2008

***VIA FEDERAL EXPRESS***
Russ M. Herman, Esq.
Plaintiffs' Liaison Counsel
Herman, Herman, Katz & Cotlar, L.L.P.
820 O'Keefe Ave.
New Orleans, LA 70113

Dear Russ:

Enclosed herewith please find an Affidavit in support of Lewis & Roberts, PLLC's Application for Common Benefit Attorney Fees and Expense Reimbursement. Please be advised, an Affidavit was submitted on June 2, 2008 along with our Application for Common Benefit Attorney Fees and Expense Reimbursement pursuant to Pre-trial Orders No. 6, No. 6C and Article IX of the Vioxx Settlement Agreement. Per your paralegal's e-mail dated September 22, 2008, attached hereto, I edited the original Affidavit so it would not exceed three pages. However, everything submitted in the original Affidavit dated June 2, 2008, along with the exhibits attached thereto, is true and accurate and should also be considered.

If you have any questions or comments in regard to the same, please do not hesitate to contact me at my office.

With every good wish, I remain

Very truly yours,

Kimberly R. Wilson

KRW/sph
Enclosures
Cc: Allocation Committee Members

{00332909.DOC}

FAC Resp. Exhibit B -- 914

**Kimberly Wilson - Vioxx MDL #1657 - Pre-Trial Order 6 (D)**

| | |
|---|---|
| **From:** | "Regina Valenti" <regina@hhkc.com> |
| **To:** | "Regina Valenti" <regina@hhkc.com> |
| **Date:** | 9/22/2008 5:27 PM |
| **Subject:** | Vioxx MDL #1657 - Pre-Trial Order 6 (D) |
| **Attachments:** | Pre-Trial Order 6D -.pdf |

Under the terms of the Settlement Agreement, the Court issued Pre-Trial Order No. 32 appointing the Allocation Committee. The Allocation Committee is charged with the responsibility of evaluating common benefit counsel's contributions.

On September 15, 2008, the Court issued Pre-Trial Order No. 6(D) (copy attached), which sets forth additional fee allocation guidelines. In keeping with the over-arching guideline that the Allocation Committee is to consider the contributions of each common benefit attorney to the outcome of the litigation, the Court has ordered that on or before October 31, 2008, any attorney who has timely submitted common benefit time or expense in accordance with the deadlines set forth in Pre-Trial Order 6(C) may submit an affidavit not to exceed three (3) pages describing what they believe best describes their firm's common benefit contribution.

Please review PTO 6(D). Please note that all notices or submissions to be made to the Allocation Committee are to be made to Plaintiffs' Liaison Counsel, Russ M. Herman, c/o Herman, Herman, Katz & Cotlar, LLP, 820 O'Keefe Avenue, New Orleans, LA 70113, PH: (504) 581-4892, FAX: (504) 561-6024, E-Mail: vioxxmdl@hhkc.com.

*Regina L. Valenti*
Paralegal To Russ M. Herman
Herman, Herman, Katz & Cotlar, L.L.P.
820 O'Keefe Avenue, New Orleans, LA 70113
Direct Line: (504) 680-0555 / Phone: (504) 581-4892 / Fax: (504) 561-6024

<<http://www.hhkc.com/>>
This Firm and its Partners are also Partners in Herman, Gerel, LLP
*This e-mail message contains confidential, privileged information intended solely for the addressee. Please do not read, copy, or disseminate it unless you are the addressee. If you have received it in error, please call us (collect) immediately at (504) 581-4892 and ask to speak with the message sender. Also, we would appreciate your forwarding the message back to us and deleting it from your system. Thank you.*

CONFIDENTIAL ATTORNEY WORK PRODUCT

<table>
<tr><td>

In Re:  VIOXX® LITIGATION

</td><td>

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION: ATLANTIC COUNTY

Case Code No. 619

**Affidavit In Support of Application for
Common Benefit Fees and Reimbursement of
Litigation Costs**

Kimberly R. Wilson

</td></tr>
</table>

Kimberly R. Wilson, being duly sworn, deposes and says as follows:

1.      I am a partner with the law firm Lewis & Roberts, PLLC (hereinafter "L&R") in Raleigh, North Carolina.

2.      From May 18, 2005 to August 31, 2006, L&R filed 34 cases in the coordinated Vioxx® litigation in Atlantic City, New Jersey; and, one case in the Vioxx® MDL in Louisiana.

3.      Per the Hon. Judge Carole E. Higbee's request in May of 2006, I voluntarily identified 10 cases that my firm was prepared to work up for January 2007 trial settings. By Order dated August 9, 2006, Judge Higbee chose *Black v. Merck & Company, Inc.*, ATL-L-5200-05-MT and *Smith v. Merck & Company, Inc.*, ATL-L-4049-05-MT into expedited fact discovery and the trial pool.

4.      On October 5, 2006, Judge Higbee advised counsel for plaintiffs that they had to submit a list of proposed cases to be tried out of the 39 she had identified in her August 9, 2006 Order.

5.      Per the request of the law firm Seeger Weiss, a "Vioxx® Case Summary" was prepared by each law firm in regard to each case in the trial pool in which extensive discovery had taken place.

6.      After submission of the "Vioxx® Case Summaries," the case selections for the January 2007 trials were made by the Plaintiffs' Liaison Counsel and the Court with the input of law firms directly involved in the work up of cases for trial.

7.      *Black* and *Smith* were two of the first 39 cases worked up for trial in the New Jersey coordinated litigation.

8.      Early in the Vioxx® coordinated litigation in New Jersey, L&R incurred the following time and expenses for *Black*:  439.4 hours of attorney time; 273.0 hours of paralegal

{00319931.DOC}

time; and, $39,051.56 in claimed costs & expenses; and, for *Smith*: 248.5 hours of attorney time; 179.4 hours of paralegal time; and, $35,966.09 costs and expenses.

9.      On January 3, 2007, in an effort to accelerate the rate of case specific discovery, a collective group of plaintiffs' counsel submitted its first "mass" grouping of cases to Judge Higbee to initiate the first wave of discovery in a large number of Vioxx® cases. There were only 16 firms on that date willing to expedite the discovery of their cases for trial.  L&R submitted eight more cases in addition to *Black* and *Smith*.   Further, on February 16, 2007, at the urging of Plaintiffs' Liaison Counsel for the coordinated New Jersey litigation, L&R submitted another eight cases for a total of 18 out of 34 of its filed cases.  After multiple email communications and phone conferences with Plaintiffs' Liaison Counsel, by this date, the PLC had received submissions from a total of 28 firms nationwide with filed cases.  This was the finalized list of Wave 1 mass discovery cases.

10.      These cases were worked up in expedited discovery per the Order entered June 6, 2007 by Judge Higbee.[1]

11.      As of February 16, 2007, there were only three (3) law firms in the country with more cases being worked up in expedited discovery.  As of this date, L&R had over 50% of its inventory in expedited discovery.

12.      Again, at the urging of the Plaintiffs' Liaison Counsel, on September 6, 2007, Lewis & Roberts submitted another case to be worked up for expedited discovery*:  Hill v. Merck & Company, Inc.,* ATL-L-12653-06-MT (Wave 2).

13.      Lewis & Roberts, PLLC either conducted or attended a total of 56 Vioxx® depositions from summer of 2006 through announcement of the settlement on November 9, 2007. Out of those 56 depositions, 18 of Lewis & Roberts' plaintiffs were deposed; 10 spouses; four (4) Merck sales representatives; 18 physicians; three (3) family and/or friends; and three (3) trial depositions (in *Black* and *Smith*) were conducted.

14.      Based upon information and knowledge, L&R had amongst the *highest percentage* of their filed cases in expedited discovery—possibly the highest.

15.      L&R directly, or its local counsel, at the expense of Lewis &Roberts, PLLC,

_____

[1] By this date, two other law firms submitted cases for expedited discovery for at total of 30 law

2

attended eight (8) Vioxx Case Management Conferences.

16. Further, on April 18, 2007, L&R attended a strategy meeting in New York, New York hosted by Seeger Weiss with a small number of other plaintiffs' lawyers for the purpose of determining which of the plaintiffs' cases should receive the next trial settings.

17. Also, immediately after the global settlement was announced November 9, 2007, Lewis & Roberts, PLLC endorsed the settlement agreement in the *Wall Street Journal, The Raleigh News & Observer* and other local news programs in North Carolina.

18. Further, because of our direct involvement and commitment to the Vioxx® litigation, after *Black* and *Smith* were ordered into expedited discovery, L&R hired a medical records clerk and an in-house nurse paralegal. As of late summer 2007, we hired an additional associate to assist in the work up of all 19 cases in expedited discovery.

19. As communicated by Seeger Weiss, it was crucial for plaintiffs' counsel to actively work up their cases for trial in order for a fair resolution of this litigation to be consummated. It is my understanding that of the approximately 40,000 Vioxx® cases and/or claims, a very small percentage were designated for expedited discovery.

20. The small minority of expedited discovery cases and cases designated for trial were a substantial and significant factor, catalyst and in essence the driving force behind the Vioxx® settlement.

21. Accordingly, I request L&R receive Common Benefit Fees for the following hours previously submitted to the Allocation Committee; as well as reimbursement of litigation expenses as previously submitted.

Kimberly R. Wilson

Sworn to and subscribed before me
this 27 day of October, 2008.

Notary Public
My commission expires: 1-17-2010

BUFFY L. JOHNSON
NOTARY
Comm. Exp.
Jan 17, 2010
PUBLIC
PITT COUNTY, NC

firms nationwide.

3



# LOCKRIDGE GRINDAL NAUEN
**P.L.L.P.**
Attorneys at Law

*www.locklaw.com*

MINNEAPOLIS
Suite 2200
100 Washington Avenue South
Minneapolis, MN 55401-2179
T 612.339.6900
F 612.339.0981

WASHINGTON, D.C.
Suite 210
415 Second Street, N.E.
Washington, DC 20002-4900
T 202.544.9840
F 202.544.9850

**Richard A. Lockridge**
Phone: 612-339-6900
ralockridge@locklaw.com
REPLY TO MINNEAPOLIS

October 28, 2008

**VIA E-MAIL ONLY**
Russ Herman
Herman, Herman, Katz & Cotlar LLP
820 O'Keefe Avenue
New Orleans, LA 70113

Re:     In re Vioxx Products Liability Litigation

Dear Russ:

Pursuant to Pretrial Order No. 6(D) Fee Allocation Guidelines, enclosed is the Affidavit of Richard A. Lockridge submitted on behalf of Lockridge Grindal Nauen P.L.L.P. in the above-referenced matter.

I look forward to making a presentation in December.

Very truly yours,

LOCKRIDGE GRINDAL NAUEN P.L.L.P.

Richard A. Lockridge

RAL/brg
Enclosure

387474.1

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE VIOXX PRODUCTS LIABILITY LITIGATION | MDL DOCKET NO. 1657 |
| | SECTION L |
| This Document Relates To: All Actions | JUDGE FALLON |
| | MAGISTRATE JUDGE KNOWLES |
| | **AFFIDAVIT OF RICHARD A. LOCKRIDGE** |

Richard A. Lockridge, being duly sworn, states and deposes as follows:

1.   I am a partner at Lockridge Grindal Nauen P.L.L.P ("LGN").  In the Vioxx MDL, LGN attorneys took on all tasks assigned to them from the beginning of discovery through several trials.

2.   Former Partner Bert Black spent over 3,000 hours working on this case.  Mr. Black, who has a national reputation for expertise on scientific evidence, became well-versed on the particular science and statistics of Vioxx injuries by:

   - reviewing extensive scientific literature;
   - reviewing documents relevant to the expert reports;
   - participating on committees to help develop the factual underpinnings of the reports and supporting testimony;
   - identifying and helping to retain experts (at least two of whom would not have been available but for Mr. Black's contacts and efforts);
   - conferring directly with several MDL experts to aid in the drafting of reports and indirectly with other counsel with regard to other experts;
   - defending against Daubert motions and drafting plaintiffs' Daubert motions;
   - preparing experts for their depositions and defending depositions; and
   - working with the trial teams for three trials and with the experts who testified at those trials.

3.   Mr. Black made himself and his expertise extensively available to other Plaintiffs' counsel in the MDL by serving on the Science Committee, the Epidemiology Subcommitee, and the Daubert Committee.  In addition, Mr. Black conducted specific research projects for this litigation.  For example, he drafted an outline or Powerpoint presentation of the Plaintiffs' "science story" for the Science Committee.  Mr. Black argued several Daubert motions (both plaintiffs' and opposition to defendant's) before Judge Fallon prior to the New Orleans/Irvin Plunkett trial.  Mr. Black prepared for and also presented on experts Dr. Richard Kapit, Dr. Janet Arrowsmith-Lowe, Dr. Silver and Dr. Lanza at these Daubert hearings.  Other, specific examples of Mr. Black's contributions include:

   - completion of a project analyzing adverse event reporting by healthcare providers related to cerebrovascular events and the response by Merck;
   - extensive research into the avenues to defeat the hypertension defense;

386856-3

- establishing causation and defeating individualized causation defenses;
- exploring the role of aspirin as a justification for using COX-2 inhibitors and its role in preventing or lessening the impact of myocardial infarctions;
- exploring the Fitzgerald hypothesis and the manner in which it could be used to bolster Plaintiffs' claims;
- developing the distinction between the different types of plaque and how differing stabilities might play into proving or disproving causation;
- becoming well-versed in the COX-1 endothelium issue;
- developing a chronology of labeling and labeling changes together with the timing and sufficiency of each warning, a major project not undertaken by other lawyers working on the case;
- helping to develop baselines and models addressing the percentage of cardiovascular events in the general population verses Vioxx population issue; and
- exploring fraud in clinical trials and related publication of literature together with an analysis of the trials that were prematurely stopped for marketing reasons or information was not shared with the FDA.

4. Mr. Black contributed substantial work in preparing Plaintiffs' expert reports, and preparing experts for deposition and trial testimony. Plaintiffs' experts whose reports, depositions or testimony he directly worked on include, for example, Dr. Colin Funk, Dr. Richard Kapit, Dr. Robert Fletcher, Dr. Benedict Lucchesi (response to Daubert motion), and Dr. Lemual Moye.

5. Mr. Black also worked on Defendants' expert depositions, preparing information and cross-examination questions, including experts Dr. Janet Arrowsmith-Lowe (for both the Irvin Plunkett and Barnett cases), Dr. Alise Reicin, Dr. Barry Rayburn and Dr. Nicholas Flavahan.

6. In addition, Mr. Black provided scientific and strategic work for three important bellwether trials. At the request of Andy Birchfield, he went to Houston to assist in the Irvin Plunkett trial. His work included preparing expert direct and cross-examination questions, providing strategic input, preparing experts to testify, and assisting with other trial preparation.

7. At the request of Mark Robinson and Andy Birchfield, Mr. Black assisted in the Barnett trial. He participated in telephone conferences with Mark Robinson and Ted Wacker, and a meeting with Ted Wacker, regarding expert and trial preparation. He researched statistics, including significance testing for potential cross-examination of expert Dr. Alise Reicin. He worked on atherogenesis issues, and the cross-examination of defense expert Nicholas Flavahan.

8. At the request of Mark Robinson, Mr. Black also assisted in developing strategy for the Berwick case. He researched and wrote a memorandum on labeling, participated in numerous conference calls about trial preparation issues, and circulated a draft memorandum to Ted Wacker, Dan Sigelman, Don Arbitblit and Mark Robinson, and provided a final memorandum to co-counsel. At Mr. Robinson's request he worked directly with expert Dr. Suzanne Parisian.

9. Partner Robert Shelquist consulted on MDL and science issues with Mr. Black. He reviewed medical journal articles and analyzed scientific articles. When asked, he

2

conferred with other lawyers regarding scientific issues, MDL trial issues, expert issues, the Plaintiffs' science story, deposition strategy, and trial strategy.

10. Partner (then associate) Yvonne Flaherty consulted with Mr. Black on MDL expert, science, Daubert, deposition and trial strategies. She attended the New Orleans MDL organizational meeting, and assisted Mr. Black with his numerous committee assignments. She reviewed and analyzed MDL pre-trial orders, status conference reports, and other MDL submissions, and provided Mr. Black with insight and analysis on the Plaintiffs' Science memos, strategies regarding experts and motions.

11. Associate Elizabeth R. Odette, provided over 500 hours of research work and trial and deposition assistance. Her research for Mr. Black included issues surrounding the FDA, as well as FDA labeling issues, for the trial teams identified above. Her work included:

- researching the International Conference on Harmonization and FDA guidelines for Population Size of Safety Studies;
- researching and drafting motions to exclude defendants' trial experts, including Drs. Arrowsmith-Lowe, Lucchesi and Kapit;
- researching the FDA "controlling science" principles, data on the VIGOR and approve studies,
- cataloguing and characterizing FDA and Merck correspondence; and
- analyzing the sufficiency of FDA notice to physicians about label warning changes.

Ms. Odette also prepared exhibits for the Arrowsmith-Lowe deposition and second chaired that deposition in New Mexico in October 2005 prior to the Irvin Plunkett trial. She assisted in researching for and drafting a motion to exclude the testimony of Dr. Arrowsmith-Lowe.

12. Ms. Odette prepared direct examination questions and anticipated cross-examination questions for Plaintiffs' expert Dr. Kapit. She prepared cross-examination questions for defense expert Dr. Arrowsmith-Lowe for the Irvin Plunkett case. She researched all Plaintiffs' expert witnesses to determine defense strategies. She attended the Irvin Plunkett trial, in Houston, where she prepared motions and submissions for the trial team, including assistance in drafting a motion to reconsider Dr. Baldwin's causation testimony and researching Rules 59 and 60 for the benefits of filing a motion following a trial verdict. She researched potential exhibits and documents to be reviewed for experts Drs. Fletcher and Reicin. She also reviewed the deposition of expert Dr. G. Curfman and prepared responses to defense objections.

13. Paralegal Tinzing Artmann prepared Plaintiff expert report notebooks, gathered, organized and reviewed defense expert reports, organized deposition exhibits, organized medical journal articles, prepared a chronological report of hypertension related documents, and prepared CDs of documents concerning hypertension, FDA concealment, as well as expert documents, and provided them to co-counsel. In addition, she attended the deposition of expert Dr. Arrowsmith-Lowe in June 2006 in New Mexico prior to the Barnett trial identified above.

14. LGN was never asked to pay any assessments. However, LGN expended $69,817.00 solely attributable to its MDL work and was not reimbursed for those expenses.

FURTHER YOUR AFFIANT SAYETH NAUGHT.

Richard A. Lockridge

Subscribed and sworn before me this 28th
day of October 2008

Notary Public

BARBARA R. GILLES
Notary Public-Minnesota
My Commission Expires Jan 31, 2010

4

FAC Resp. Exhibit B -- 923

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: VIOXX                                    :          MDL NO. 1657
      PRODUCTS LIABILITY LITIGATION :
                                            :          SECTION: L
                                            :
                                            :          JUDGE FALLON
                                            :          MAG. JUDGE KNOWLES
                                            :
                                            :
.. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. :

# VIOXX COMMON BENEFIT FEE ALLOCATION AFFIDAVITS – VOLUME 3

# **CONFIDENTIAL**

FAC Resp. Exhibit B -- 924

# VIOXX COMMON BENEFIT
# FEE ALLOCATION AFFIDAVITS

## Table of Contents

1.  Alley Clark Greiwe & Fulmer

2.  Anastopoulo & Clore

3.  Ashcraft & Gerel

4.  Audet & Partners

5.  Aylstock Witkin Kreis & Overholtz

6.  Barrios Kingsdorf & Casteix

7.  Beasley Allen Crow Methvin Portis & Miles

8.  Becnel Law Firm

9.  Robert M. Becnel

10. Bencomo & Associates

11. Blizzard McCarthy & Nabers

12. Brown & Crouppen

13. Law Office of Joseph M. Bruno

14. Burg Simpson Eldredge Hersh & Jardine

15. Rebecca Ann Cunard

16. Douglas & London

17. Escobedo Tippit & Cardenas

18. Fibich Hampton & Leebron

19. Gainsburgh Benjamin

20. Gancedo & Nieves

21. Gianni Petoyan

22. Heins Mills & Olson

23. Herman Herman Katz & Cotlar

24. Hovde Dassow & Deets

25. Irpino Law Firm

26. Khorrami Pollard & Abir

27. Kline & Specter

28. Lanier Law Firm

29. Lieff Cabraser Heimann & Bernstein

30. Levin Fishbein Sedran & Berman

31. Levin Papantonio Thomas Mitchell Echsner & Proctor

32. Lewis & Roberts

33. Lockridge Grindal Nauen

34. Lopez Hodes Restaino Milman & Skikos

FAC Resp. Exhibit B -- 925

| | | | | |
|---|---|---|---|---|
| 35. | Lowe Law Firm | | 45. | Shelly A. Sanford / Carlene Lewis |
| 36. | Lundy & Davis | | 46. | Seeger Weiss |
| 37. | Martin & Jones | | 47. | Sheller Law Offices |
| 38. | Matthews & Associates | | 48. | Snapka Law Firm |
| 39. | Morelli Ratner | | 49. | Vioxx Litigation Consortium |
| 40. | Motley Rice | | 50. | Weitz & Luxemberg |
| 41. | Murray Lw Firm | | 51. | Williamson & Williams |
| 42. | Neblett Beard & Arsenault | | 52. | White Meany & Wetherall |
| 43. | Panish Shea & Boyle | | 53. | Zimmerman & Reed |
| 44. | Roda Nast | | 54. | Robinson Calcagnie & Robinson |

2

FAC Resp. Exhibit B -- 926

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | MDL Docket No. 1675 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| | * | |
| | * | MAGISTRATE JUDGE KNOWLES |
| | * | |
| | * | |

## CO-AFFIDAVIT OF JOHN M. RESTAINO and STEVEN J. SKIKOS
## ON BEHALF OF LOPEZ, HODES, RESTAINO, MILMAN & SKIKOS (LHRMS) FOR
## ALLOCATION OF ATTORNEY'S FEES AND EXPENSES

FAC Resp. Exhibit B -- 927

I, JOHN M. RESTAINO and STEVEN J. SKIKOS, being duly sworn depose and say:

**1.     John Restaino, DPM, JD, MPH.**   John Restaino is the *MDL Co-Chair of the Science and Expert Committee*.  John has been co-responsible for the development of the Vioxx science and the experts in the MDL.  John also participated in preparing for many of the MDL trials, including the study, research and drafting of MDL expert reports.  He took and defended expert depositions, and helped prepare many experts for trial.  John attended the entire *Irvin I* and *Irvin II* trials.

        a.     Commitment to the Vioxx MDL.   Prior to the MDL's formation, Chris Seeger and Dave Buchanan invited John and others to meet in New York City.  At their request, John agreed to be Co-Chair of the Vioxx MDL Science and Expert Committee.  John signed the Vioxx MDL Co-Counsel Agreement for LHRMS.  He committed the firm's substantial resources to this case and the MDL.

        b.     MDL Science and Expert Committee.  The management of the 74 member committee required extensive organization and administration.  John served as the principal gate-keeper for time authorization on behalf of the committee.  With Carlene Lewis, John established and supervised various sub-committees, including: an Executive Committee, Benefits/Indications/ Labeling & International Issues, Epidemiology, Proof of Causation, Clinical Trials, Mechanism of Action, Pharmacology, Defense Issues, Medical Communications, Marketing, Daubert, Expert Witness Development, Medical Literature, Naproxen Committee, Scientific Research, Publications and Society Meetings.  Under John's supervision, the Vioxx medical articles database swelled to over 1,000 articles. The great majority of which John studied and used in expert development.

        c.     Expert Development, Rule 26 Report and MDL Depositions.   The experts developed and/or vetted by the committee and the Expert Witness Development Subcommittee included: Dr. Benedict Luchessi, Dr. Colin Bloor, Dr. Wayne Ray, Dr. John Farquhar, Dr. Richard Kapit, Dr. John Gueriguian, Dr. Jerry Avorn, Dr. Muhammad Mandami, Dr. George H. Ohye, Dr. Stephen King, Dr. Cecil Pace-Asciak, Dr. Michael Snapes, Dr. Egil Fosslien, Dr. Les Cleland, Dr. Michael James, Dr. Colin Funk, Dr. Preston-Mason, Dr. Douglas Zipes, and Dr. Jeffrey Popma.  John played important role in writing/developing the Rule 26 Reports for Drs. Fosslien, Cleland, James, Ray, Avorn, and Farquhar.

        d.     Trials.   John was drawn into many of the MDL trials.  John assisted Andy Birchfield in the preparation and trial of both *Irvin* matters.  Along with Paul Sizemore, John worked up Dr. Colin Bloor and prepared him for his trial testimony.  John also took the deposition of the defense cardiopathology expert, Thomas Wheeler in November 2005.  John assisted Paul Sizemore in the preparation of Dr. Wheeler's trial cross-examination, also in November 2005 and worked extensively with in preparing Dr. Benedict Lucchesi for his direct examination.  John met with Dr. Wayne Ray in Vanderbilt and worked extensively with him on the pharmacoepidemiology of this litigation.  John also assisted, in Houston and New Orleans, in the preparation of him for both his direct and cross-examination in both *Irvin I* and *Irvin II*.

        Further, John was instrumental in obtaining David Graham, MD, MPH for deposition as well as intervening with Jerome Avorn, MD in order to persuade him to testify in the *Hummeston* trial.

In *Barnett*, John provided substantial scientific information to Steve Skikos to help prepare the medical experts, Drs. Zipes and Popma, for their MDL trial testimony. He prepared for depositions in the *Barnett* case and reviewed the expert reports. Dr. Fosslien, who John found and developed, was in New Orleans during the trial to testify as the cardio pathology expert. He also assisted Dr. Zipes who did testify at trial.

**2.     Steven J. Skikos.**  Steve is a member of the California Plaintiffs' Steering Committee. In addition to the obligations on the California PSC, Steve worked with several MDL and California experts. He also worked on and the MDL *Barnett* Trial.

   a.     Commitment to the Vioxx MDL and the California JCCP.  Despite a number of results adverse to the plaintiffs, and appreciative of the need for an MDL win, Steve **increased** the firm's role in Vioxx. Specifically, Mark Crawford devoted himself to the marketing case and Cynthia Garber worked full time on the MDL trial case, *Barnett,* on general and case specific causation. In addition to expert development, Steve became more deeply involved in the Merck marketing case, general causation issues, and trial. Steve worked on the *Barnett* case in the MDL.

   b.     Expert Development.  Steve developed an expertise of case-specific and general causation, sales & marketing, and was able to successfully help develop experts in these areas. Most significantly, Steve commenced work with Dr. Zipes along with other experts, including Dr. Popma on both general and case specific causation. With John Thornton, Esq. of Andrews and Thornton, Steve was physically present at every Vioxx meeting with Dr. Zipes. Dr. Zipes' MDL expert report was expansive and with Robinson's office and Thornton, Steve worked with Zipes on this report. Steve participated in a number of depositions in *Barnett* including Dr. Zipes and marketing expert Dr. Connie Pechman. Steve conducted the direct examination of Dr. Pechman for the MDL relating to Daubert issues. She passed Daubert and Dr. Pechman testified for the MDL and in California.

   c.     Trials.  Steve attended a portion of Tom Giradi and Paul Sizemore's trial case in Los Angeles to assist in preparing Dr. Pechman to testify in that case. Most of Steve's time was devoted to the *Barnett* MDL case. While in New Orleans, Steve prepared Dr. Pechman to testify in *Barnett* and was going to conduct the direct exam, however, Judge Fallon cut off the trial testimony the day before she was supposed to testify. Steve also helped prepare Dr. Zipes for his testimony and was present for the examination. In March 2007, Steve assisted in the preparation and argument of the pre-trial motions (in limine) in the *Berwick* matter in California. With Robinson's office, Steve continued to work up Vioxx cases for trial in California (*Berwick*), Nevada, and New Jersey. The individual case work up was completed at a critical time when increased pressure on Merck was necessary to facilitate other's settlement discussions.

   d.     Settlement.  Following the notice of the MDL settlement, Steve worked with Mark Robinson, and Merck's counsel to settle the *Barnett* case. Mark Robinson, Steve, Judge Fallon, Merck's counsel and Mr. Barnett held a meeting in court in New Orleans. The *Barnett* case resolved at that meeting. Merck's counsel very specifically recognized the outstanding work of Robinson's trial team and its importance in relation to the overall Vioxx MDL settlement. In addition to the vast participation of Robinson's office, the Robinson trial team included John Thornton, Steve Skikos, and Cynthia Garber.

**3.    Mark G. Crawford.**  Mark is a partner at LHRMS.

      a.    <u>Commitment</u>.  Since the pre-MDL meetings commenced, the firm has expended over 5,000 common benefit hours, almost all of which are devoted to complex expert work, trial preparation and to actual trial.  This does not include paralegal or staff time.  LHRMS' time records were timely submitted and reviewed by Wegmann-Dazet.  They are attached as Exhibit A.  LHRMS has expended over $500,000 in hard costs toward the Vioxx litigation, the submitted and approved shared and held costs are attached as Exhibits B and C.   The notice of approval of all submissions is attached as Exhibit D.

      b.    <u>Depositions and Trials</u>.  Mark worked on the Merck marketing case.  Mark worked with Robinson's office in developing marketing expert Dr. Pechman.  He reviewed thousands of documents and prepared several motions including the motions in limine in the California Coordinated Litigation.   Mark also took and attended depositions in *Barnett*.

**4.    Cynthia Garber, R.N., J.D.**  In addition to being an attorney, Cynthia is a registered nurse with specialty in cardiac issues.  Her unique experience made her valuable in the preparation and trial of the Barnett MDL trial.

      a.    <u>Barnett-Pre Trial Discovery</u>.  Cynthia was involved in working on this case from pre-trial discovery through verdict.  She attended at least ten depositions in the case, including the depositions of plaintiffs, defense and plaintiff medical experts, and all treating physicians.  Cynthia reviewed and analyzed Mr. Barnett's medical records and catheterization films.  She reviewed Merck documents, and medical research and literature.  Additionally, she met with expert witnesses and assisted in drafting expert disclosure statements and reports.  In working with expert cardiology witnesses, she assisted with the development of plaintiff's causation theory.  Further, in developing plaintiff's contention that Vioxx caused or accelerated his atherosclerosis, Cynthia reviewed internal Merck documents, medical literature, and met with expert witnesses.  During pre-trial discovery, she assisted in preparing plaintiff's experts for deposition and attended their depositions.  In preparing for Defendant's medical experts' depositions, she reviewed and compiled exhibits, consulted with plaintiffs' experts, created outlines, and attended the depositions.  Cynthia also met with the Plaintiffs' treating physicians, located and compiled exhibits for their depositions, created outlines for, and attended the depositions.

      b.    <u>Barnett Trial</u>.  A single mother with two children in California, Cynthia lived in New Orleans during the entire *Barnett* trial and worked tirelessly with Robinson's trial team.  Cynthia assisted in preparing for direct and cross examination of medical experts which included compiling exhibits and demonstrative evidence.  She also assisted in review and selection of deposition designations for trial testimony, with briefing, preparation of trial exhibits, and the opening and closing arguments.

Lopez, Hodes, Restaino, Milman & Skikos respectfully requests to make a presentation to the Allocation Committee between December 1, 2008 and December 5, 2008 in Los Angeles, California.

John M. Restaino

Sworn to before me this 24 day
of October 2008

Notary Public

Steven J. Skikos

Sworn to before me this __ day
of October 2008

Notary Public

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California

County of _San Francisco_ }

On _October 29, 2008_ before me, _Marco Montoya, Notary Public_,
       Date                              Here Insert Name and Title of the Officer

personally appeared _Steven J. Skikos_
                                    Name(s) of Signer(s)

_____,

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____
                         Signature of Notary Public

*(Notary seal: MARCO A. MONTOYA, Commission # 1670542, Notary Public - California, Contra Costa County, My Comm. Expires May 27, 2010)*

Place Notary Seal Above

## OPTIONAL

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

**Description of Attached Document**

Title or Type of Document: _Co-Affidavit of John Restaino ; Steven Skikos on behalf of Lopez Hodes Restaino Milman ; Skikos for allocation of Attorneys Fees ; Costs_

Document Date: _10-29-08_ _____ Number of Pages: _6 including Acknowledgment_

Signer(s) Other Than Named Above: _____

## Capacity(ies) Claimed by Signer(s)

Signer's Name: _Steven J. Skikos_
☑ Individual
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer Is Representing: _____

RIGHT THUMBPRINT OF SIGNER
Top of thumb here

Signer's Name: _____
☐ Individual
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer Is Representing: _____

RIGHT THUMBPRINT OF SIGNER
Top of thumb here

©2007 National Notary Association • 9350 De Soto Ave., P.O. Box 2402 • Chatsworth, CA 91313-2402 • www.NationalNotary.org   Item #5907 Reorder: Call Toll-Free 1-800-876-6827

MDL 1657

Vioxx Products Liability Litigation Report of Member Firm Time

Reporting Period: APRIL, 2005 - MARCH, 2008 (ALL MONTHS COMBINED)

Firm Name: **Lopez, Hodes, Restaino, Milman & Skikos**

| Name of Individual | Identify if Attorney (A), Paralegal (P), Law Clerk (L), or Other (O) | Case Assessment Development, and Administration (insert number of hours) | Pre-Trial Pleadings and Motions (insert number of hours) | Discovery (insert number of hours) | Trial Preparation and Trial (insert number of hours) | Appeal (insert number of hours) | Settlement (insert number of hours) | Total Hours by Individual | Summary Total Hours of All Firm Person |
|---|---|---|---|---|---|---|---|---|---|
| Mark Crawford | A | | 40 | 374.75 | 134.5 | | | 549.25 | |
| Cynthia Garber | A | 4.5 | 11.5 | 278 | 452 | | | 746 | |
| John Restaino | A | 1486.35 | 455.85 | 577.65 | 443.61 | | | 2963.46 | |
| Steven Skikos | A | 31.05 | 14.65 | 299.95 | 488.05 | | 12 | 845.7 | |
| **Total Firm Time** | | | | | | | | | **5104.41** |

I certify that the time documented above is accurate and correct and was incurred for the common benefit of claimants in MDL 1657.

Signature: _____     Date: _____

FAC Resp. Exhibit B -- 933