*Furman folder*

















**HERMAN, HERMAN, KATZ & COTLAR**
L.L.P.
Attorneys at Law

| | |
|---|---|
| Harry Herman (1914-1987) | Stephen J. Herman |
| Russ M. Herman* | Brian D. Katz |
| Maury A. Herman* | |
| Morton H. Katz* | Soren E. Gisleson |
| Sidney A. Cotlar* | Joseph E. "Jed" Cain |
| Steven J. Lane | |
| Leonard A. Davis* | Joseph A. Kott, M.D. J.D. (Of Counsel) |
| James C. Klick‡ | Offices in New Orleans and Covington, Louisiana |

820 O'Keefe Avenue, New Orleans, Louisiana 70113-1116
Telephone (504) 581-4892    Facsimile (504) 561-6024
Http://www.hhkc.com

\* A Professional Law Corporation
‡ Also Admitted in Texas

This Firm and its Partners Are Also
Partners in Herman, Mathis, Casey,
Kitchens & Gerel, LLP

April 2, 2007

**VIA E-MAIL**

Drew Ranier, Esq.
Ranier, Gayle & Elliot
1419 Ryan Street
Lake Charles, LA 70601

   Re:  **In Re: VIOXX MDL 1657**

Dear Drew:

   As a follow-up to the PSC conference call on December 6, 2006 and Russ Herman's letter of December 12, 2006, I am writing to inform you that the New Orleans Vioxx Depository has only received trial transcripts and deposition designations (hard copy only) from the *Smith* trial. The PSC has requested that trial counsel deliver to the New Orleans depository all demonstratives, trial exhibits, depositions and video cuts and other items used at trial. The delivery can be in paper, but we would prefer receiving it in electronic form so that others will be able to easily utilize the material. Further, with respect to demonstratives and exhibits, if they are in a computer format, this will be acceptable. We would appreciate your prompt delivery of this material at your earliest convenience.

   **Please forward all materials to Penny Herman, New Orleans Depository, 820 O'Keefe Avenue, New Orleans, LA 70113.**

       Sincerely,

       LEONARD A. DAVIS

LAD:lmf
cc: Plaintiffs' Steering Committee
   Penny Herman

## AFFIDAVIT OF STEVEN J. KHERKHER

BEFORE ME, the undersigned authority, on this day personally appeared STEVEN J. KHERKHER, and after having first been duly sworn upon oath, states as follows:

1. My name is Steven J. Kherkher. I am over the age of 18 years, and I am of sound mind, in all respects legally competent to make this affidavit, and I have personal knowledge of the statements made herein. I am an attorney duly licensed in, and in good standing with, the States of Arkansas, New York, Pennsylvania and Texas. My resume is attached as Exhibit A.

2. I submit this affidavit pursuant to PTO 6(D), in support of the allocation of common benefit fees in the Vioxx litigation. In submitting this affidavit, I expressly reserve all, and do not waive any, rights relating to common benefit fees and/or their allocation.

3. Through our dedication to representing people who have been injured or killed by pharmaceutical companies, our firm has established itself as a leader in pharmaceutical litigation. Out of the thousands of cases our firm handles and has handled, I participated in every trial-set case either as lead counsel, co-counsel, mentoring, organizing and discussing the facts and direction of the litigation. I reduced my time managing the day-to-day business of this firm's asbestos docket to focus my time efforts on the Vioxx litigation.

4. John Eddie Williams, my partners and myself have spent the time and effort necessary to acquire and maintain the staff necessary to provide quality work product. We have entire departments dedicated to various aspects of handling litigation and our record speaks for itself through the verdicts we have obtained for our clients throughout the years, including seven pharmaceutical verdicts in Philadelphia in excess of $200,000,000 total. Additional information about our firm's history and long track record of successfully handling major plaintiffs' litigation cases is contained in the Affidavit of our firm's managing partner, John E. Williams, Jr.

5. From the beginning of our involvement in the Vioxx litigation, our firm has had ten lawyers work on this docket and others cross-trained to assist with the Vioxx litigation if needed. The structure and significant contributions of our group of firms is described in more detail in the affidavits of Mr. Grant Kaiser and Mr. Walter Umphrey.

6. I worked with my partner, John Boundas and Mikal Watts' firm to prepare for and try the *Robert "Garry" Smith v. Merck* case. I picked the jury, participated in the opening statement and closing argument. I prepared for and conducted the direct examination of the plaintiff in this case. I also flew to New Jersey sometimes twice a month for hearings. I worked with Chris Seeger and David Buchanan on strategies to increase the overall success of the Vioxx litigation. Although only John Boundas and I had the privilege of trying Vioxx cases, every partner in this firm was continuously aware of the status of this litigation and participated in some level of decision-making.

1

7.     Our firm also was very active in the New Jersey Vioxx litigation.  Armi Easterby and I lead that docket on my firm's behalf.  A call-in option was available, but I knew the significance of participating in the discussions about the litigation and influencing the Court's rulings.  I therefore, insisted that Armi Easterby and/or myself personally be in New Jersey during these times.  I also volunteered extensively to assist other plaintiff firms with the trial and preparation of their cases for trial.  Our firm was the first to raise our hand to get trial settings in Judge Higbee's court.  She complied and complimented me to want to try cases.

8.     Our firm continues to maintain a strong presence in the Vioxx post-litigation process by reviewing and negotiating agreements. We further intend to continue our involvement with settlement processing and release procedures.

9.     From inception, our firm committed to see this litigation through until verdict or settlement. We remained committed to trying each and every case until we had resolution in spite of the adverse verdicts.  We maintained the attorneys and staff needed to ensure we had the resources and manpower to try these cases.  We did not withdraw our efforts after the losses, but instead, pushed harder towards resolution.

_____
STEVEN J. KHERKHER

SUBSCRIBED AND SWORN TO BEFORE ME on the ⎯⎯31st⎯⎯ day of October, 2008

GERILYN GORDON
Notary Public, State of Texas
My Commission Expires
March 14, 2010

_____
NOTARY PUBLIC IN AND FOR
THE STATE OF TEXAS

2

**STEVEN J. KHERKHER**
**Williams Kherkher Hart Boundas, LLP**

Head of the asbestos docket, winning hundreds of millions of dollars in verdicts and settlements over the years. Beginning in 2004, Steve became co-manager of the firm's pharmaceutical docket, which has since represented over 10,000 clients nationwide.

### Education

- Bachelor of Science from the University of Houston
- Master's degree in education from the University of Houston
- Juris Doctorate, graduating *cum laude* from South Texas College of Law
  ○ Member of Phi Delta Phi
  ○ Member of Order of the Lytae
  ○ Assistant Editor of the *South Texas Law Review*
  ○

### Memberships

- Houston and American Bar Associations
- State Bar of Texas
- Houston Young Lawyers Association
- Houston Trial Lawyers Association
- Texas Trial Lawyers Association
- American Association for Justice
-

### Certified by the Texas Board of Legal Specialization

- Personal injury trial law

### Licensed to practice

- Texas
- Pennsylvania
- New York
- Arkansas
- U.S. District Court for the Northern, Southern, Western and Eastern Districts
- U.S. Supreme Court
- U.S. Court of Appeals for the Fifth Circuit

## AFFIDAVIT OF JOHN T. BOUNDAS

BEFORE ME, the undersigned authority, on this day personally appeared JOHN T. BOUNDAS, and after having first been duly sworn upon oath, states as follows:

1.      My name is John T. Boundas.  I am over the age of 18 years, and I am of sound mind, in all respects legally competent to make this affidavit, and I have personal knowledge of the statements made herein.  I am an attorney duly licensed in, and in good standing with, the States of Texas, Pennsylvania and Illinois.

2.      I submit this affidavit pursuant to PTO 6(D), in support of the allocation of common benefit fees in the Vioxx litigation.  In submitting this affidavit, I expressly reserve all, and do not waive any, rights relating to common benefit fees and/or their allocation.

3.      I am a partner with the law firm of Williams, Kherkher, Hart and Boundas, LLP, based in Houston, Texas.  To briefly summarize my professional experience: I graduated first in my class from the University of Iowa College of Law in 1995.  Following law school (after an internship with the U.S. Department of Justice), I clerked for the Honorable Milton I. Shadur in the U.S. District Court for the Northern District of Illinois, in Chicago.  I joined the law firm of Fulbright & Jaworski, LLP, where I worked on a wide variety of cases until 2001, when I left to join my current firm.  Since late 2001, I have spent the vast majority of my time representing individuals injured by prescription drugs.

4.      Additional information about our firm's history and track record of successfully handling major plaintiffs' litigation cases is contained in the Affidavit of our firm's managing partner, John E. Williams, Jr.  I sincerely believe that we are considered one of the nation's leading law firms in the area of litigating cases against prescription drug manufacturers.  Our firm has handled literally thousands of cases against drug manufacturers across the country and I and our attorneys have tried numerous pharmaceutical cases in the past several years, in courts in Texas, California, Pennsylvania and Louisiana.

5.      I believe that my and my firm's involvement in the front lines of the Vioxx litigation, and in particular our well-known reputation (that we again demonstrated in this litigation) for having the resources, expertise, experience and determination to litigate and try cases, contributed substantially to the overall effort, as set forth in more detail below.

6.      Our firm was involved in the Vioxx litigation in a team effort along with several other law firms.  The structure and significant contributions of our group of firms is described in more detail in the affidavits of Grant Kaiser and Walter Umphrey.  At my firm in particular, we had over ten attorneys contribute substantial work to the Vioxx litigation, including work in three separate jury trials, preparing for additional trials, working up and submitting cases for

FAC Resp. Exhibit B -- 1693

pre-trial discovery, and assisting in many other ways that are detailed in the affidavits that are being submitted by our attorneys.

7.      As for my personal involvement, I was selected to be co-lead trial counsel for the bellwether *Robert "Garry" Smith v. Merck* trial in the MDL. The trial started on September 11, 2006, in New Orleans. The Smith case was selected by Merck as one of its trial picks; thus, a case Merck apparently expected it had a substantial chance of winning. (Further demonstrating our efforts to advance the litigation, our group of firms volunteered two plaintiffs' selected cases to try in the first wave of MDL trials as well. Both cases were struck by Merck.)

8.      I tried the Garry Smith case along with my partner Steve Kherkher and also Mikal Watts of the Watts Law Firm. Several attorneys in our firm did substantial work in preparing this case for trial, researching, drafting and responding to legal motions (many of which had general applicability across the Vioxx litigation as a whole), preparing and conducting a jury study, reviewing documents, exhibits and depositions, preparing and deposing fact and expert witnesses and performing all of the other hard work that goes into a trial of this nature.

9.      In the Smith trial, I gave the opening and closing arguments (along with my partner, Steve Kherkher) and handled the direct and cross examinations of most of the expert witnesses. Although we did not win, I believe we put on a strong case, especially in light of the fact that this was a case selected by Merck. I believe that there are many who observed the trial, including defense counsel, who would vouch for the quality of our work.

10.     Obviously, it would have been a major victory if we could have won a case where Merck selected the plaintiff, and we are disappointed we were not able to do so. However, I believe that the willingness and ability of the plaintiffs' bar to put on a formidable case under adverse circumstances persuades a defendant that the strategy of "try every case" (as Merck repeatedly said publicly it would do at the time) may not be a good one in the long term.

11.     In preparing for this trial and continuing through our involvement in the litigation, a large portion of my time was spent reviewing, analyzing and understanding the enormous amount of information, documents, exhibits, trial transcripts, expert reports, liability and expert depositions, legal briefs, and medical and scientific articles necessary to master the complex factual, liability, medical, scientific and legal issues that were involved. The Vioxx case was highly complex, and I worked hard to learn every aspect of the case so that I could handle expert witness and discovery strategy, as well as prepare the case for pre-trial and trial, including handling legal and evidentiary issues, preparing opening and closing arguments and handling examinations of expert witnesses. I previously submitted a very conservative summary of that portion of my time that was spent directly on trial or settlement issues, and have no doubt that it significantly understates all of the hundreds of hours of additional time and effort I spent on the Vioxx litigation.

2

12.     Our firm also was active in the New Jersey Vioxx litigation, where we repeatedly volunteered cases to go into active discovery so that cases could be set for trial and the litigation against Merck could proceed forward.  We had several lawyers, including myself, who spent substantial time working on reviewing case files, discovery and medical records in order to identify cases to put up for discovery and trial.  We even offered to try cases with or for other lawyers who had cases.  Indeed, when the Vioxx settlement was announced, we, along with our co-counsel, had spent months preparing for another trial that was set in the next New Jersey trial setting for two plaintiffs, Billy Romans and Ammie Ray Sanderson.

13.     In connection with preparing for the New Jersey trials, I also worked to develop new experts who had never before testified in the Vioxx litigation, including highly qualified experts in statistics and marketing issues.  Indeed, overall, in the Vioxx litigation, I spent substantial time working on and developing scientific, medical and expert issues and met with expert witnesses across the country (in Texas, California, New York, Pennsylvania, Michigan and Louisiana).

14.     Simply put, our firm demonstrated a major commitment to the Vioxx litigation.  My partner Steve Kherkher and I personally stood up in trial against Merck and were preparing to do so again (and again after that if necessary) very soon when the settlement was announced.  I believe that our commitment was highly beneficial in moving the litigation forward.


JOHN T. BOUNDAS


SUBSCRIBED AND SWORN TO BEFORE ME on the 31st day of October, 2008.


GERILYN GORDON
Notary Public, State of Texas
My Commission Expires
March 14, 2010

NOTARY PUBLIC IN AND FOR
THE STATE OF TEXAS

FAC Resp. Exhibit B -- 1695

## AFFIDAVIT OF COLLYN A. PEDDIE

BEFORE ME, the undersigned authority, on this day personally appeared COLLYN A. PEDDIE, and after having first been duly sworn upon oath, states as follows:

1.     My name is Collyn A. Peddie.  I am over the age of eighteen years, and I am of sound mind, in all respects legally competent and duly authorized to make this affidavit, and I have personal knowledge of the statements made herein.  I am an attorney duly licensed in, and in good standing with, the State of Texas.  My resume is attached as Exhibit A.

2.     I submit this affidavit pursuant to PTO 6(D), in support of allocation of common benefit fees in the Vioxx Litigation. In submitting this affidavit, I expressly reserve all, and do not waive any, rights relating to common benefit fees and/or their allocation.

3.     **Contribution to Outcome.**  My contribution consisted of pre-trial briefing, motion practice and appellate work in the *Robert G. Smith v. Merck* and *Ruby Ledbetter v. Merck* cases. The firm contributed substantially to the litigation in time, effort and expense.  These two Vioxx matters comprised most of my docket from August 2006 to April 2008 and engaged anywhere from 50% to 100% of my time over the course of the litigation.  Customarily an appellate attorney with credentials and experience similar to mine would command $450.00 an hour.

4.     **Quality of Work.**  The quality of work produced by Williams Kherkher Hart Boundas, LLP, and my work in particular, is superior.  The reputation of the firm and its attorneys is acclaimed and well-respected in the legal community.  Our attorneys have many years of experience and many successful verdicts and settlements.  My contribution, specifically, to the Vioxx litigation is my 25 years of experience and expertise in the appellate field and nationally recognized expertise in the preemption area.  The *Ledbetter* matter alone presented novel and difficult appellate issues which required drafting and filing an extensively briefed Motion for New Trial in the trial court and corresponding briefs at the appellate level.

5.     **Litigation Commitment.**  In *Smith*, Harry Potter and I researched and drafted all Motions in Limine, Daubert Motions and responses to Merck's Motions in Limine and Daubert Motions as well as other pre-trial and post-trial motions on an extremely tight schedule. Additionally, I attended and participated in many of the pre-trial hearings in New Orleans.  The entire month of August, 2006, including weekends and late nights, was consumed with meetings, research, writing, filing of pre-trial motions and responses to Merck's motions to the exclusion of all other matters.  Continuing into September, 2006 were miscellaneous pre-trial motions, the trial itself and post-trial motions to which I devoted my time exclusively.  From August 2006 to April 2008 more than 50% of my time, and some months 100% of my time, was engaged in the *Ledbetter* litigation beginning with Merck's Motion for Summary Judgment filed August 2006 and ending in April 2008 with the dismissal of the appeal.  *Ledbetter* alone consumed over 1100 hours of my time in the entire appeal process from drafting portions of the response to Merck's Motion for Summary Judgment and the many supplemental responses that

1

followed, to the filing of a Motion for New Trial in the District Court, to producing all the briefs and responses in the Fourteenth Court of Appeals. Oftentimes I was unable to attend to other non-Vioxx related matters due to my briefing commitments in *Ledbetter*.

6.   **Partnership Participation.** While engaged in the legal briefing and appellate process in the cases I worked closely with several Williams Kherkher partners as reflected in their affidavits and time records.

7.   **Committee Membership.** Neither my level of participation nor my responsibilities included filing of an application for the PSC.

8.   **Non-MDL Jurisdictions.** My participation encompassed litigation occurring in the State of Texas and the Fifth Circuit at the federal level.

9.   **Trials.** As described in item number 5 above, I was heavily involved in the *Robert G. Smith v. Merck* trial in the United States Federal Court for the Eastern District of Louisiana.

10.  **Committee Leadership.** I did not serve on the Committee Leadership.

11.  **Ongoing Activities.** *Ledbetter* was a bellwether case in that it was an attempt to preserve a cause of action for plaintiffs injured by Vioxx which in turn inured to the common benefit of our clients' capability to maintain and go forward with their claims. I remain heavily involved in activities intended to preserve pharmaceutical claims for plaintiffs at the state and federal level.

12.  **Involvement Pre-Withdrawal.** I had no involvement in the Vioxx litigation prior to the withdrawal of Vioxx from the market on September 30, 2004.

13.  **Involvement Pre-JPMDL.** My involvement in the litigation occurred subsequent to the JPMDL.

14.  **Funding.** Williams Kherkher Hart Boundas, LLP contributed significantly to the funding of the litigation; however, knowledge of specifics is not within my purview.

15.  **Commitment.** Commitment to litigation on behalf of Mr. Smith and Ms. Ledbetter remained very strong. Mr. Smith's case was tried to a verdict in New Orleans with the cooperation and assistance of numerous attorneys and other law firm staff. Despite the Final Judgment entered against Ms. Ledbetter upon summary judgment at the district court level, the decision was made to vigorously appeal the judgment at the great expense of time, money and other resources. When the global settlement was reached, we dismissed her appeal after full briefing.

FAC Resp. Exhibit B -- 1697

_____

COLLYN A. PEDDIE

SUBSCRIBED AND SWORN TO BEFORE ME on the 31st day of October, 2008.

_____

NOTARY PUBLIC IN AND FOR
THE STATE OF TEXAS

**GERILYN GORDON**
Notary Public, State of Texas
My Commission Expires
**March 14, 2010**

3

# COLLYN A. PEDDIE
5033A TANGLE LANE, HOUSTON, TEXAS 77056
(713) 599-0901 [home] (713) 230-2281 [office]
(713) 643-6226 [facsimile] (713) 598-3247 [cell]
E-MAIL: cpeddie@williamskherkher.com

### PROFESSIONAL EXPERIENCE

**WILLIAMS KHERKHER HART BOUNDAS, LLP**, Houston, Texas  August 2005 to present
Engaged in civil appellate practice with 26-lawyer premier plaintiffs' firm focusing on personal injuries claims. Formulate and implement trial and appellate strategy, write and argue dispositive motions, and handle trials, arbitrations, original actions, interlocutory appeals, post-trial motions and appeals in both state and federal court.

**BEIRNE, MAYNARD & PARSONS, LLP**, Houston, Texas  2001-2005
Engaged in civil litigation and appellate practice as partner with 90-lawyer litigation boutique.

**WEIL, GOTSHAL & MANGES, LLP**, Houston, Texas  1999-2001
Engaged in civil appellate and litigation practice as co-chair of Appellate Advocacy Practice Group of New York-based international law firm with over 750 lawyers with six domestic offices.

**COLLYN A. PEDDIE, P.C.**, Houston, Texas  1993-1999
Engaged in solo practice focused on civil appeals and complex civil litigation in state and federal court.

**MORIARITY & PEDDIE, LLP**, Houston, Texas  1991-1993
Partner in plaintiff's firm focused upon mass torts and class actions in the areas of consumer rights and securities. Significant accomplishments include successful handling of firm's role in groundbreaking securities fraud case in which we represented over 5,000 individual investors.

**JENKINS & GILCHRIST, P.C.**, Houston, Texas  1988-1991
As first woman litigator ever named Shareholder/Vice President of this large Texas firm, successfully handled litigation in both state and federal, trial and appellate courts.

**VINSON & ELKINS, LLP**, Houston, Texas  1983-1988
Handled or participated significantly in complex commercial litigation in state and federal court.

**THE HONORABLE JOHN R. BROWN, JUDGE**
**U.S. COURT OF APPEALS FOR THE FIFTH CIRCUIT**, Houston, Texas  1982-1983
As law clerk to an active judge, personally drafted over 40 opinions, wrote speeches, articles and legal memoranda for the judge, observed over 50 Fifth Circuit arguments and gained critical knowledge of court decision-making process. In 1993, delivered eulogy at the Judge's funeral.

### EDUCATION

**GEORGE WASHINGTON UNIVERSITY**, Washington, D.C.
*Juris Doctor* with honors, 1982
Topics/Notes Editor, 1981-1982, *George Washington Journal of International Law and Economics*
First-year Moot Court Competition, 1980, Top 10 Speakers

**RICE UNIVERSITY**, Houston, Texas
*Bachelor of Arts* with honors, 1979
Majors in History of Art, Legal Studies and Political Science [with departmental honors]
*Phi Beta Kappa*, named 1979
T.C. Edwards Scholarship Award, Spring 1978 [given to the student of American government with the highest grade-point average]
Fellow, Hanszen College, 1978 [based upon scholastic merit]
Honors Program in Political Science, 1978-1979 [completed thesis on cloture]

## REPRESENTATIVE CASES

IN RE BAYER MATERIALSCIENCE, LLC, 2007 WL 3227662 (Tex. App.—Houston [1st Dist.] 2007, orig. proceeding): successfully opposed mandamus of trial judge's favorable decision on alleged mandatory arbitration in large refinery case; 2007 Tex. App. LEXIS 9104 (Tex. App.—Houston [1st. Dist] 2007, orig. proceeding): successfully opposed second mandamus attempt in same lower court matter.

IN RE COLLINS., 242 S.W.3d 837 (Tex. App.—Houston [14th Dist.] 2007, orig. proceeding): successful mandamus of trial judge on question of first impression -- whether amicus statute permits amicus attorney to hire counsel for personal injury lawsuit.

IN RE THE LINCOLN ELECTRIC COMPANY, ET AL, 2005 Tex. App. LEXIS 9755 (Texas App. – Houston [14th Dist.] November 23, 2005, orig. proceeding): successful

SEALIFT, INC. V. SATTERLY, 2003 WL 21664672 (Tex. App.—Houston [14th Dist.] 2003, no pet.): upheld special appearance in case declaring that letters of protection are not contracts.

STANDARD CONSTRUCTORS, INC. V. CHEVRON CHEMICAL CO., INC., 101 S.W.3d 619 (Tex. App.—Houston [1st Dist.] 2003, pet. denied): upheld large jury verdict in favor of refinery.

TEX. ASS'N OF COUNTIES PROPERTY & CASUALTY SELF INSURANCE FUND. V. LIBERTY COUNTY, 2000 WL 1571580 (Tex. App.—Beaumont 2003, no pet): successfully abated ongoing trial on sovereign immunity issues.

WASHINGTON LEGAL FOUNDATION V. TEXAS EQUAL ACCESS TO JUSTICE FOUNDATION, 293 F.3d 242 (5th Cir. 2002), and 270 F.3d 180 (5th Cir. 2001): asked by Chief Justice Tom Phillips to represent the Conference of Chief Justices (comprised of chief justices of all 50 states' highest courts) in filing brief as Amicus Curiae in case involving Texas' IOLTA funding of legal services for the poor.

ERNST & YOUNG V. PACIFIC MUTUAL LIFE INS. CO., 51 S.W.3d 573 (Tex. 2001): overturned summary judgment in case in which the Court redefined fraud in Texas.

IN RE JANE DOE, 19 S.W.3d 249 (Tex. 2000); 19 S.W.3d 346 (Tex. 2000): in the first-ever appeal under Texas' parental notification law, won remand then first and only one of two orders ever granting bypass in case in which the Texas Supreme Court defined standards under that statute.

OPERATION RESCUE-NATIONAL, ET AL V. PLANNED PARENTHOOD OF HOUSTON AND SOUTHEAST TEXAS, ET AL., 937 S.W.2d 60 (Tex. App.—Houston [14th Dist.] 1996), aff'd, 975 S.W.2d 546 (Tex. 1998): successfully upheld in both courts jury verdict/permanent injunction in landmark interference/invasion of privacy/conspiracy lawsuit. Persuaded Texas Supreme Court to change standards for weighing infringement of First Amendment rights. Retained on appeal in both courts landmark million dollar-plus punitive damages award against Operation Rescue and others, one of the few punitive damages awards upheld that term.

KELLEY-COPPEDGE, INC. V. HIGHLANDS INS. CO., 950 S.W.2d 415 (Tex. App.—Fort Worth 1998): successfully overturned summary judgment interpreting industry-wide pollution exclusion clause.

## REPRESENTATIVE PUBLICATIONS AND PRESENTATIONS

"Preemption: The View from the Trenches," AAJ Annual Convention, July 2008
"Screening Pharmaceutical and Medical Device Claims for Preemption," TTLA Advanced Personal Injury Seminar, May 2008
"Deconstructing the U.S. Supreme Court's Decision on Preemption in Riegel v. Medtronic, Inc.," AAJ National TeleSeminar, February 2008
"Medical Device Preemption: The Sky is Not Falling -- Yet," AAJ National TeleSeminar, January 2008

2

U.S. Senate Committee on the Judiciary: Testimony on preemption of pharmaceutical claims [September 12, 2007], *available at* http://judiciary.senate.gov/testimony.cfm

"Brave New World: The Advent of House Bill 4," CLE, 2004

"Appellate Advocacy and Strategic Thought," CLE, annually since 2003

"Lessons from the Master: The Legacy of Judge John R. Brown," *Houston Journal of International Law*, vol. 25, no. 2 (Winter 2003)

"The Ten Commandments of Legal Writing," *The Houston Lawyer* (July/August 1994)

"Improving Legal Writing: The Triumph of Hope Over Experience," *The Review of Litigation*, vol. 13, no. 1 (Winter 1993)

### *REPRESENTATIVE ACTIVITIES AND ASSOCIATIONS*

AMERICAN ASSOCIATION FOR JUSTICE, *Co-Chair, Amicus Curiae Committee and Member, Legal Affairs Committee*, 2008- present

PLANNED PARENTHOOD OF HOUSTON AND SOUTHEAST TEXAS, *Member, Governance Board of Directors*, 1997-2003; *Action Fund Board of Directors*, 2000 to present; *Co-Chair, Legal Response to Parental Notification Statute Task Force*, 2000; *Chair, Judicial Selection Committee*, 2002 (Action Fund)

Actively participated in planning and decision-making with charitable family planning, educational and health care organization with clinics across Southeast Texas. Contributed over 1200 hours in *pro bono* legal services to the organization since 1994, including handling appeal of *Planned Parenthood, et al. v. Operation Rescue, et al.* Formulated and implemented response to Texas Parental Notification Act. Developed materials to train lawyers to handle such cases.

UNIVERSITY OF HOUSTON LAW CENTER, *Adjunct Professor*, 1995-1997

Taught legal writing course. Responsibilities included lecturing, detailed editing, and instructing law students in strategic thinking and oral advocacy.

HOUSTON YOUNG LAWYERS ASSOCIATION, *Member, Hunger Relief Committee*, 1988-1994; *Hunger Relief Advisory Board*, 1994-1997

Participated from its inception in planning, coordinating and conducting yearly drive to raise substantial funds for hunger relief programs from Houston legal community.

INTERFAITH MINISTRIES FOR GREATER HOUSTON, *Member, Executive Committee*, 1987-1996; *Board of Directors*, 1986-1996; *Counsel*, 1990-1996

Actively participated in fund-raising, long-range planning and decision-making with charitable organization overseeing $3 million budget, the equivalent of $5 million in volunteer services, and ten programs. Vice President [1995-1996], Treasurer [1989-1990], and Secretary [1988-1989]. Chaired Youth/Victim Witness Program Advisory Committee, Finance, Search, and Advocacy and Public Policy Committees.

HOUSTON VOLUNTEER LAWYERS, INC., *Member, Board of Directors*, 1987-1989

Participated in planning, implementing and coordinating Houston Bar Association's *pro bono* projects in Harris County.

DEMOCRATIC NATIONAL COMMITTEE, *Trustee*, 1988-1993

One of only a handful of women in the nation to sit on this DNC Council by virtue of having raised over $100,000 for the Presidential Victory Fund as Chair of One Hundred Women. Participated in campaign strategy meetings, issue briefings and Presidential campaign events. Achieved membership again in 1992 by personally raising over $100,000. Based upon my prior work, in 1994, co-chaired Presidential fundraiser that raised over $1 million.

ONE HUNDRED WOMEN, *Chair*, 1988-1992

3

Chaired and helped to found organization comprised of women in business, the arts, civic organizations and the professions, formed to raise the profile and clout of women in politics by raising substantial funds for the Democratic presidential nominee. Organization was forerunner of DNC's Women's Leadership Council. Members included former Texas Governor Ann Richards. Goal for 1988 was $100,000 and seats on the Democratic National Committee's donor councils. These goals were reached and exceeded by 50%, in part, through "sold-out" events. Achievement was recognized on the front page of the *Wall Street Journal.*

**LEADERSHIP HOUSTON,** *Graduate, Class X,* 1991-1992

Actively participated in year-long, nationally-recognized leadership program aimed at familiarizing emerging leaders with all aspects of the city and enhancing their leadership skills. Selection is competitive.

### *REPRESENTATIVE HONORS AND AWARDS*

**PUBLIC AFFAIRS AWARD,** Planned Parenthood of Houston and Southeast Texas, 2001

Received award for "commitment to the young women in Texas and your untiring efforts on their behalf" for legal work on parental notification cases, training lawyers and clinic workers and creating local attorney referral network for these young women. The award is not given every year.

**MA'AT JUSTICE AWARD,** Women and the Law Section, State Bar of Texas, 1999

Received award for "outstanding dedication to equality and justice" given to an individual "who has actively addressed the needs and issues of women both in the legal profession and in the community."

**"WOMEN ON THE MOVE" AWARD,** Texas Executive Women, *The Houston Chronicle,* KHOU-TV and BMC Software, Inc., 1999

One of ten women honored annually in Houston for outstanding professional achievement and dedication to public service. One of the few winners from the private sector. Selection is highly competitive.

**PLANNED PARENTHOOD OF GREATER HOUSTON AND SOUTHEAST TEXAS,** 1996

Honored by Board of Directors for "outstanding legal services protecting women's right to choose" for successfully representing affiliate in injunction hearings and appeal in *Planned Parenthood v. Operation Rescue.*

**MARTINDALE-HUBBELL LAW DIRECTORY,** *"AV" rated,* since 1990

Based upon confidential surveys of Houston legal community, received "very high to preeminent" rating of legal ability ad "very high" rating of ethical standards, the highest ratings given in both categories.

**PRO BONO COLLEGE,** State Bar of Texas, *Member,* since 1996

Membership based upon significant *pro bono* work performed during the prior year.

**HOUSTON BAR FOUNDATION,** *Life Fellow*

Membership by invitation based upon commitment to support *pro bono* programs of the Foundation.

**WHITE HOUSE FELLOWS PROGRAM,** *Regional Finalist,* 1991

Selected as one of 18 regional finalists and of only three women for Southern United States [out of some 1,600 applicants nationwide] for the most prestigious civilian fellowship given by the United States government. Open to members of all professions and the military and to members of both political parties since it was founded in the mid-sixties, the program identifies the "best and the brightest" and allows them to spend one year at the very top level of government. Former fellows include General Colin Powell, Former Cabinet Secretary Henry Cisneros, and Historian Doris Kearns Goodwin.

**CENTER FOR THE STUDY OF THE PRESIDENCY,** *Wallace Fellow,* 1979-1980

Selected out of 1,500 participants in Annual Student Symposium (I was Rice University representative) to serve as one of two special fellows of a total of 15 Center Fellows of organization of political, academic and military leaders.  Responsibilities included speaking at center conferences, drafting article analyzing White House Staff models, and chairing an economic panel at the Student Symposium, the first fellow ever to do so.

5

**STATE OF TEXAS** §
§
**COUNTY OF HARRIS** §

## AFFIDAVIT OF HARRY GRANT POTTER III

BEFORE ME, the undersigned authority, on this day personally appeared Harry G. Potter III, and after having first been duly sworn upon oath, states as follows:

1.     My name is Harry G. Potter III. I am over the age of eighteen years, and I am of sound mind, in all respects legally competent and duly authorized to make this affidavit, and I have personal knowledge of the statements made herein. I am an attorney duly licensed in, and in good standing with, the State of Texas. My resume is attached as Exhibit A.

2.     I submit this affidavit pursuant to PTO 6(D), in support of allocation of common benefit fees in the Vioxx Litigation. In submitting this affidavit, I expressly reserve all, and do not waive any, rights relating to common benefit fees and/or their allocation.

3.     I am General Counsel to Williams Kherkher Hart Boundas, L.L.P. in Houston, Texas. In addition to my individual case load, I have substantial involvement in the firm's practice and risk management, including compliance with all applicable rules of legal ethics. I am a member of the Texas Professional Ethics Committee, a nine-member body appointed by the Texas Supreme Court to issue advisory opinions on compliance with the Texas Disciplinary Rules of Professional Conduct. I am also a former Special Assistant Attorney General for the State of Texas, former Chairman of the Texas State Bar Grievance Committee for District 9A, and I have taught professional responsibility as a Visiting Professor at the University of Texas School of Law.

4.     My common-benefit work in the Vioxx litigation was two-fold. First, I was extensively involved in the pretrial briefing of the *Gary Smith* MDL bellwether case, and second, I was significantly involved in addressing the ethical issues raised by the global settlement agreement.

6.     My colleague Collyn Peddie and I handled all of the pretrial motions and briefing in the *Gary Smith* MDL bellwether case tried in September of 2006. Most of my time in the month of August was spent researching, writing and filing pretrial motions in the *Smith* case. This included drafting numerous motions in limine and *Daubert* motions and responding to Merck's motions in limine and *Daubert* motions.

1

7.      Following the proposed global settlement of the Vioxx cases, I worked with nationally known ethics expert Charlie Silver on various ethical aspects of the settlement agreement.  The issues we analyzed included the "all or none" recommendation in the original Registration Affidavit, which was quickly corrected by the Court, as well as issues surrounding Model Rule 2.1 on independent professional judgment and Model Rule 5.6 on restrictions on the right to practice law.  I worked with Professor Silver in researching and drafting the motion filed with the MDL Court raising these concerns.  I also attended two hearings related to these issues, and I was involved in negotiations with representatives of the Plaintiffs' Negotiating Committee and its ethics advisor, Professor Lynn Baker.  These efforts led to modifications to the settlement agreement that significantly improved the agreement and removed any potential impediment to its acceptance.


Harry G. Potter III


SUBSCRIBED AND SWORN TO BEFORE ME on the 31 day of October, 2008.


NOTARY PUBLIC IN AND FOR
THE STATE OF TEXAS

DAVID ALVARADO
Notary Public, State of Texas
My Commission Expires
May 05, 2009

2

**Harry Grant Potter III**
8441 Gulf Freeway, Suite 600
Houston, Texas 77017
(713) 230-2251 (phone)
(713) 643-6226 (fax)

## Legal Experience

*Private Law Practice*
*General Counsel to Williams Kherkher Hart Boundas, L.L.P.* (June 1999 – Present; General
Counsel since May of 2007)

> As General Counsel, I am responsible for the overall practice management of the firm. I
> also represent plaintiffs in complex civil litigation in state and federal court. Caseload
> includes personal injury cases and multi-district litigation.

*Visiting Professor* (January 1999 – June 1999)
The University of Texas School of Law
727 E. Dean Keeton Street
Austin, Texas 78705
        Courses Taught:      Professional Responsibility
                                Tobacco Litigation: Selected Topics (Writing Seminar)

*Special Assistant Attorney General* (May 1995 – January 1999)
Office of the Attorney General
P. O. Box 12548, Capitol Station
Austin, Texas 78711

> Handled a select number of litigation matters most of which involved state policy,
> including the constitutional challenges to the Workers Compensation Act, the dissolution
> of the State Treasurer's office, the state's anti-sodomy statute, the state's lawsuit against
> the tobacco industry, a landmark case involving a constitutional challenge to legislation
> creating the Edwards Aquifer Authority, and voting rights litigation. I have extensive
> experience trying jury and bench trials in state and federal court. I have argued before
> the Texas Supreme Court, the Fifth Circuit Court of Appeals, and numerous state courts
> of appeals.

*Attorney Ombudsman* (July 1997 – January 1999)
> Served as ombudsman for the more than 500 lawyers employed by the Texas Attorney
> General's Office. I resolved complaints and decided appeals of disciplinary action.

*Deputy Division Chief* (December 1993 – May 1995)
General Litigation Division
> I supervised 30 attorneys and 55 support staff while maintaining a caseload of more than
> 30 cases.

*Assistant Deputy Division Chief* (October 1993 – December 1993)
General Litigation Division
*Senior Attorney* (September 1992 – October 1993)
General Litigation Division

*Assistant Attorney General* (August 1988 – May 1995)
General Litigation Division
> I maintained caseload of approximately 35 cases, primarily defending the state, its agencies, offices and employees in constitutional law, civil rights and employment law cases.

*Law Clerk* (September 1986 – August 1988)
State & County Affairs/General Litigation Division
Administrative Law Section

## Education

*University of Texas School of Law*
Doctor of Jurisprudence (December 1987)

*University of Texas at Austin*
Bachelor of Arts-Government (May 1985)

## Licenses

United States Supreme Court
United States Court of Appeals for the Fifth Circuit
Federal District Courts:
> Western District of Texas
> Eastern District of Texas
> Northern District of Texas
> Southern District of Texas

Texas State Courts

## Professional Memberships

State Bar of Texas (May 6, 1988)
> Professional Ethics Committee (October 1, 2005 - present)
> Chairman, District 9A Grievance Committee (July 1, 1999 – June 30, 2001)
> Panel Chairman, District 9A Grievance Committee (July 1, 1997 – July 1, 2002)
> Committee on Child Abuse and Neglect (1988 – 1991)
> Committee on Legal Services to the Poor in Civil Matters (1988 – 1991)
> Sections: Litigation, Appellate Practice and Advocacy

American Bar Association
> Sections: Litigation, Center for Professional Responsibility, Law Practice Management

American Association for Justice

Texas Trial Lawyers Association
Austin Bar Association
Houston Bar Association
Houston Trial Lawyers Association

## Published Opinions

*American Tobacco Co. v. Grinnell,* 951 S.W.2d 420 (Tex. 1997);

*Atteberry v. Memorial-Hermann Healthcare Sys.*, 405 F.3d 344 (5th Cir. 2005), cert. denied 546 U.S. 936 (2005);

*Barshop v. Medina Co. Underground Water Cons. Dist.,* 925 S.W.2d 618 (Tex. 1996);

*Corporate Health Ins., Inc. v. Texas Dept. of Ins.*, 12 F.Supp. 597 (S.D. Tex. 1998);

*McDuffie v. Blassingame,* 883 S.W.2d 329 (Tex. App.-Amarillo 1994, writ denied);

*Randall v. Jefferson Co.,* 771 F.Supp. 173 (E.D. Tex. 1990), *aff'd in part* 966 F.2d 1449 (5th Cir. 1992);

*Rea v. Cofer,* 879 S.W.2d 224 (Tex. App.-Houston [14[th] Dist.] 1994, no writ);

*Sierra Club v. Glickman*, 82 F.3d 106 (5th Cir. 1996);

*Sierra Club v. City of San Antonio*, 115 F.3d 311 (5th Cir. 1997);

*State of Texas v. Morales,* 826 S.W.2d 201 (Tex. App.-Austin 1992), *rev'd,* 869 S.W.2d 941 (Tex. 1994);

*Texas v. American Tobacco Co.*, 14 F.Supp.2d 956 (E.D. Tex. 1997);

*Texas Workers' Compensation Comm. v. Garcia*, 817 S.W.2d 60 (Tex. 1991);

*Texas Workers' Compensation Comm. v. Garcia*, 862 S.W.2d 61 (Tex. App. – San Antonio 1993), *rev'd,* 893 S.W.2d 504 (Tex. 1995);

*Washington Legal Foundation v. Texas Equal Access to Justice Foundation*, 873 F.Supp. 1 (W.D. Tex. 1995), *aff'd in part, vacated in part, rev'd in part,* 94 F.3d 996 (5th Cir. 1996), *aff'd* 524 U.S. 156 (1998);

*Witt v. Whitehead,* 900 S.W.2d 374 (Tex. App. – Austin 1995, writ denied).

## References

Available upon request

## AFFIDAVIT OF AMY M. CARTER

BEFORE ME, the undersigned authority, on this day personally appeared AMY M. CARTER, and after having first been duly sworn upon oath, states as follows:

1.      My name is Amy M. Carter. I am over the age of eighteen years, and I am of sound mind, in all respects legally competent and duly authorized to make this affidavit, and I have personal knowledge of the statements made herein. I am an attorney duly licensed in, and in good standing with, the States of Texas, Pennsylvania and California.

2.      I graduated with honors from the University of Texas School of Law in December, 1997. I am admitted to practice before the United States District Courts for the Northern and Eastern Districts of Texas. I currently serve on the Plaintiffs' Steering Committee for the Kugel® Hernia Mesh Patch litigation in Rhode Island. My practice is primarily devoted to representing victims harmed by pharmaceutical companies and other large corporations.

3.      I submit this affidavit pursuant to PTO 6(D), in support of allocation of common benefit fees in the Vioxx Litigation. In submitting this affidavit, I expressly reserve all, and do not waive any, rights relating to common benefit fees and/or their allocation.

4.      I was part of the team who tried the Robert "Garry" Smith case. Smith was the case chosen for trial by Merck so had more factual challenges for the plaintiff than the other cases tried before Judge Fallon. My role on the trial team included designating and objecting to the depositions selections shown to the jury during the trial. I also argued the objections for depositions selections to the court. During Smith, I also authored and argued numerous pretrial motions and trial briefs and argued the charge to the jury.   Additionally, I was responsible for the hundreds of trial exhibits used during the cross-examinations of Alise Reicin and Briggs Morrison.

5.      Handling depositions designations and the corresponding exhibits is extremely time intensive. Counsel on both sides spent hours negotiating designations for each deposition. Dozens of depositions were prepared for use during trial. For those designations where the parties could not reach agreement, counsel then argued objections before the court.   After receiving rulings, the parties then had to edit, review, and exchange video – sometimes multiple times.   Many times, changes in designations also changed the exhibits to be entered into evidence. This process frequently lasted throughout the night so that video would be ready for trial the next day.

6.      I also was part of the trial team for the Mason case. Because my firm did not have a fee interest in this case, I volunteered my time during this trial. For the most part my duties were the same as during the Smith trial. Again, I spent a large portion of my time negotiating,

1

editing, reviewing and arguing deposition designations.  I also worked on pretrial motions, witness preparation, trial briefs and exhibits.

7.      After the Mason trial, I participated in the Schwaller trial in Illinois.  During that trial, my primary responsibility was the trial exhibits used during the cross of Merck's corporate representatives.   Again, hundreds of documents were used during the cross of Merck's witnesses.

8.      My firm also participated in the final group of cases selected for trial by Judge Higby. Before the settlement, we had done much of the trial preparation for these cases.  During this preparation, I repeatedly travelled to North Carolina, the home state of the plaintiffs, to meet with fact witnesses and treating physicians.  I drafted pretrial motions, responded to and argued motions regarding the evidence on use for one plaintiff, and worked with case-specific experts in anticipation of trial.

9.      Including time reviewing the Barnett trial in preparation for Smith and pre-trial for both Smith and Mason, I spent approximately nine (9) weeks in New Orleans during the fall of 2006. From August of 2006 until the settlement, my time was almost exclusively devoted to Vioxx, and I spent in excess of 1,000 hours representing the interests of Vioxx plaintiffs.


AMY M. CARTER


SUBSCRIBED AND SWORN TO BEFORE ME on the 31st day of October, 2008.


GERILYN GORDON
Notary Public, State of Texas
My Commission Expires
March 14, 2010

NOTARY PUBLIC IN AND FOR
THE STATE OF TEXAS


2

## AFFIDAVIT OF JAMES L. DOYLE

BEFORE ME, the undersigned authority, on this day personally appeared JAMES L. DOYLE, and after having first been duly sworn upon oath, states as follows:

1.      My name is James L. Doyle. I am over the age of eighteen years, and I am of sound mind, in all respects legally competent and duly authorized to make this affidavit, and I have personal knowledge of the statements made herein. I am an attorney duly licensed in, and in good standing with, the State of Texas and the State of Oklahoma. My resume is attached as Exhibit A.

2.      I submit this affidavit pursuant to PTO 6(D), in support of allocation of common benefit fees in the Vioxx Litigation. In submitting this affidavit, I expressly reserve all, and do not waive any, rights relating to common benefit fees and/or their allocation.

3.      I began my employment with Williams Kherkher Hart Boundas L.L.P., formerly known as Williams Bailey Law Firm in July of 2006. Prior to that time I worked extensively in pharmaceutical litigation. I was extensively involved in fenphen litigation and was responsible for the scientific aspect of the case including but not limited to the study of cardiology and the association of fenfluramine and dexfenfluramine and valvular heart disease. My resume and biography are attached as Exhibits A and B.

4.      When I arrived at the Williams Bailey Law Firm, John Boundas, Steve Kherkher and other members of the firm were extensively involved it the Vioxx litigation. One of the firm's cases had been selected by Merck as a bellwether trial case. Because of my familiarity with cardiovascular issues in pharmaceutical cases, I was asked to prepare and take the depositions of the expert cardiologist for the defendants. I was also asked to assist with the preparation of the expert witnesses for the plaintiff. This required extensive review of the literature relevant not only to Vioxx and its association with cardiovascular events, it required a review of cardiovascular risks in general.   For example, the *Smith* bellwether case involved a cardiovascular event that occurred after the plaintiff had been shoveling snow from the walkway of his home.   I was surprised at the volume of literature and scientific studies regarding the association of cardiovascular events and shoveling snow.  The plaintiff in the *Smith* bellwether case also took a hot shower shortly after he finished shoveling snow.  I also found extensive literature regarding the association of cardiovascular event that occur in the presence of rapid temperature changes.   Factors like these mentioned and others had to be thoroughly investigated in preparation for the deposition of the defendant's experts. I also attended hearings in courts where cardiological aspects were at issue.

5.      During this time period, I worked extensively on the Vioxx litigation.  While I was involved in the Vioxx litigation, it consumed nearly all of my professional time.  I devoted literally hundreds of hours of time to develop my understanding of the cardiovascular issues relevant to the Vioxx litigation. I have been very conservative in billing time for my work on the Vioxx litigation. The amount of hours billed by me is substantially underestimated.

1

6.      One of my other passions is jury science.  I was also involved in with a focus group session that studied various issues relevant to the Vioxx litigation.  This focus group session was held in New Orleans in anticipation of the *Smith* bellwether trial. The information gleaned from this focus group contributed greatly to both the *Barnett* and *Smith* trial strategy.

7.      I was also involved in the jury selection process for the *Smith* and *Barnett* bellwether cases.  I conducted jury research in the form of background checks and internet analysis of potential jurors in both cases.

8.      During the time I was associated with the Vioxx litigation I found the quality of work by my colleagues at the Williams Bailey Law Firm, the Kaiser Firm, the Watts Firm, the Umphrey firm and Drew Ranier's firm to be very high.  The level of resources including time, money and commitment to the Voixx litigation was exactly what one would expect from firms like these who have a history of aggressive prosecution of cases that involve complex issues and hundreds of victims.


JAMES L. DOYLE


SUBSCRIBED AND SWORN TO BEFORE ME on the 31st day of October, 2008.


GERILYN GORDON
Notary Public, State of Texas
My Commission Expires
March 14, 2010

NOTARY PUBLIC IN AND FOR
THE STATE OF TEXAS


2

**James L. Doyle**
**8441 Gulf Freeway**
**Houston, Texas  77017**
**(713) 230-2200**

## CAREER HIGHLIGHTS

Skilled Mass Tort and Personal Injury litigator with 18 years experience for plaintiffs and defendants

A-V Rated, Martindale-Hubbell Law Directory's highest rating

Acquired and screened over 80,000 diet drug users for heart damage
Managed over 9000 diet drug cases for plaintiffs and 168 referral attorneys nationwide. Developed litigation plan, consisting of over 100 support staff and 5 trial teams

Member of the 7th Amendment Liaison Committee. The committee modified the national diet drug litigation between Wyeth and plaintiffs, and administers and additional 1.25 billion dollar fund to compensate Fen-Phen victims.

Successfully defended Vanguard Plastics Inc., in the polybutylene litigation. Managed over 60,000 claims, tried several cases to a favorable result.

## PROFESSIONAL EXPERIENCE:

Williams Kherkher Hart Boundas, L.L.P.,         Houston, Texas          July 2006 to present
formerly Williams Bailey Law Firm L.L.P.

Fleming & Associates, L.L.P.            Houston, Texas          August 1997 to June 2006

Weitinger & Tucker, later known as Tucker, Hendryx, Snyder & Slade
August 1988 to August 1997

First National Bank                     Bethany, Oklahoma      June 1882 to August 1984

## EDUCATION and PROFESSIONAL AFFILIATIONS

Juris Doctor      Oklahoma City University        1988

Bachelor of Science in Business Administration  Oklahoma State University        1982

State Bar of Texas        1989         United States Courts of Appeals for the Third, Fifth,
State Bar of Oklahoma  1988         and Seventh Circuits
Federal District Courts in Texas, Oklahoma and Pennsylvania

### JIM DOYLE Bio 2006 and 2007

Jim is an experienced mass tort and personal injury litigator with over 18 years experience. Jim has successfully represented thousands of plaintiffs – most notably, those injured by Sulzer Hip Implants and the diet drug combination known as fenphen.

Jim is a member of the Seventh Amendment Liaison Committee, a group that administers an additional 1.25 Billion fund to compensate diet drug victims.

Currently, Jim is working in the Vioxx litigation, Ortho Evra litigation and the 9343 North Loop Fire Litigation.

Jim is "AV" rated by Martindale-Hubbell Law Directory. He received the "very high to preeminent" rating of legal ability and the "very high" rating of ethical standards, the highest ratings given in both categories.

## EDUCATION

Graduated with a Bachelor of Science in Business Administration from Oklahoma State University in 1982

Earned a Juris Doctorate from Oklahoma City University in 1988

## MEMBERSHIPS

- State Bar of Texas
- State Bar of Oklahoma
- Houston Bar Association
- Houston Trial Lawyers Association
- Texas Trial Lawyers Association
- Association of Trial Lawyers of America

### Licensed to practice:

- U.S. District Court, Northern, Eastern, Western and Southern Districts of Texas
- U.S. District Court, Southern and Eastern Districts of Texas
- U.S. District Court, Eastern Districts of Pennsylvania
- United States Courts of Appeals for the Third, Fifth and Seventh Circuits

### Representative cases:

- Successfully handled a radioactive scrap iron case that halted trade between the United States and China for several days.
- Successfully managed the plastic pipe litigation involving over 60,000 plaintiffs and seven jury trials.
- Successfully handled over 9000 clients in the diet drug litigation.

## **AFFIDAVIT OF BRETT M. POWERS**

BEFORE ME, the undersigned authority being duly authorized for and in the State of Louisiana, on this day personally came and appeared BRETT M. POWERS, and after having first been duly sworn upon oath, states as follows:

1. My name is BRETT M. POWERS. I am over the age of eighteen years, and I am of sound mind, in all respects legally competent and duly authorized to make this affidavit, and I have personal knowledge of the statements made herein. I am an attorney duly licensed in, and in good standing with, the State of Louisiana. My resume is attached as Exhibit A.

2. I submit this affidavit pursuant to PTO 6(D), in support of allocation of common benefit fees in the Vioxx Litigation. In submitting this affidavit, I expressly reserve all, and do not waive any, rights relating to common benefit fees and/or their allocation.

3. I received my B.A. from Louisiana State University in 1994 and graduated from the Paul M. Hebert Law Center in 1998 with a Juris Doctorate. I have been a practicing attorney with the law firm of Ranier, Gayle & Elliot, LLC (RGE), since 1999. I am admitted to practice in all State and Federal Courts in the State of Louisiana. I am also a member of the Judge Albert Tate, Jr. American Inn of Court.

4. For about 10 years, my practice has been almost exclusively dedicated to representing victims of corporate misconduct in the form of cases involving occupational chemical exposures, labor law, environmental cleanup, mass torts, class actions, products liability, pharmaceutical and hurricane litigation. RGE has developed a reputation of working on difficult litigation often dealing with complex scientific and medical aspects of causation.

5. **Contribution to Outcome**. Drew Ranier, the senior partner in the law firm of Ranier, Gayle & Elliot, LLC, was appointed to the Plaintiffs' Steering Committee by Judge Eldon Fallon at the creation of the Vioxx MDL. I have assisted Mr. Ranier in his leadership role since the inception of the Vioxx MDL. My work included personally attending and participating in Vioxx Status Conferences and PSC meetings and conference calls. My work on the Vioxx MDL is reflected in my approximate 1,200 hours of recorded work.

6. **Quality of Work**. RGE was a partner in the Vioxx Center (VC), a small group of nationally prominent law firms dedicated to victims of Vioxx. The VC was comprised of RGE, Williams Kherkher, Provost Umphrey, Mikal Watts Law Firm and The Kaiser Firm. The VC contributed to the national Vioxx litigation effort by helping to assemble potential Vioxx claimants into one of the country's most advanced and thorough client databases, trial and expert preparation, and important insurance discovery.

7. Of the 17 Vioxx trials, the VC tried two cases to verdict: the Robert "Garry" Smith case in the Eastern District of New Orleans and the Patricia Schwaller case in Illinois State Court. Additionally, I worked with other members of the VC in providing trial assistance

1

and support in other trials as well. The efforts and resources invested by our team contributed substantially to the resolution of the litigation and the settlement agreement that was eventually achieved.

8. **Litigation Commitment**. I was actively involved with the VC and its members in the trial of Mr. Robert "Garry" Smith, a Merck defense picked case. My work on the *Smith* trial in the Eastern District of New Orleans is reflected in the over 700 hours I recorded during the trial of this matter. My trial efforts included assistance with jury venire analysis, jury selection, witness selection and preparation, order of proof, development of jury themes, pre-trial focus groups, discovery, exhibits and the presentation of evidence at trial. I was involved in the editing of deposition cuts and the preparation of live witness for their testimony at trial. All in all, nearly 20 live and video witnesses were called at trial during the *Smith* case. Much of this work would eventually become part of the MDL trial package for the common benefit of all cases.

9. The *Smith* trial lasted for 15 days, but the preparation began long before the jury was ever seated. Over 200 exhibits were eventually admitted at trial after many hours of detailed work in advance of the presentation of evidence. Tens of thousands of pages of documents had to be culled and countless deposition transcripts had to be reviewed and edited. The mechanics of presenting the order of proof were just one part of the equation; we were also tasked with crafting the most persuasive arguments for the citizens of the 13 parishes that comprised the jury venire of the Eastern District of New Orleans. A prime example of this was the work my firm and I did in developing the trial case and in particular, the jury research involving over a dozen focus groups in the jury venire of the Eastern District of New Orleans.

10. RGE was part of the group that helped develop the trial case for the Vioxx MDL. Working closely with DecisionQuest, I participated in several focus groups and mock trials involving a significant number of demographically matched jurors which resulted in witnesses, evidence, themes and likely juror profiles. This work was done for the common benefit of all Vioxx cases and our efforts were shared with other attorneys trying Vioxx cases in both Federal and State courts.

11. As a total, RGE contributed over 1,500 hours to the trial of the *Smith* matter. And although the *Smith* trial resulted in a defense verdict, the trial work we performed and compiled would add to the mounting effort that would eventually bring the Vioxx case to resolution. I, along with other members of RGE and the VC also assisted in other MDL bellwether trials, including *Irvin*, *Barnett* and *Mason*.

12. RGE, along with our partners in the VC, participated in common benefit work outside of the federal MDL including New Jersey, California, Illinois and Texas. Additionally, time and money were expended to develop cases for trial in other states including Wisconsin, Maryland, Florida, Illinois and in other venues as well in order to be ready for state trials when the cases in the MDL were remanded.

13. **Funding**. My firm made significant financial commitments to the Vioxx Litigation from 2004 to 2008, including $300,000 in contributions to the MDL PSC capital fund, $100,000 in MDL PSC expenses, $100,000 in lawyer travel and trial expenses, and over

2

$3 million to the VC, which included significant litigation costs. The large sums of capital dedicated to the representation of thousands of injured victims of Vioxx along with the enormous financial burdens of bringing both MDL and State Vioxx claims to trial are proof positive of RGE's commitment to the success of the litigation.

14. **Insurance Case.** Drew Ranier chaired the PSC Insurance Committee and I assisted him in preparing the written Insurance discovery, and questions for the deposition of the Merck Insurance Vice President. I also assisted in the drafting of the brief in support of the Insurance Motion to Compel. Additionally, I assisted in the preparation of the Merck Insurance Coverage Chart which was designed to illustrate in a graphic manner Merck's complex insurance scheme, which included hundreds of policies spanning a decade.

15. With respect to the Insurance case against Merck for the sale of Vioxx, I was involved in the analysis of various Merck insurance policies, which included a detailed review of Merck's various coverage options. I also assisted in the preparation and eventual service of discovery such as subpoenas for additional insurance documentation. My work on the insurance issues dealt with coverage and the discoverability of important related material, including the arbitration proceedings in London and SEC investigations.

16. **Ethics Resolution.** I worked with RGE and other members of the VC in helping to secure an ethically viable master settlement for the benefit of all attorneys and claimants alike. As the settlement documents were initially published, they contained a requirement for total participation, which raised troubling ethical issues. RGE, along with other members of the VC worked intimately with members of the Plaintiffs' Negotiating Committee in order to resolve these potential ethical issues. Eventually, this led to changes in the settlement requirements that would allow for a wider and more complete participation.

SUBSCRIBED AND SWORN TO BEFORE ME in the City of New Orleans, Orleans

Parish, State of Louisiana on the 28th day of October, 2008.

WITNESSES:

_Carla Valaske_
Carla Valaske

_Judy Heinrich_
Judy Heinrich

**BRETT M. POWERS**
ATTORNEY AT LAW
RANIER, GAYLE & ELLIOT, LLC

NOTARY PUBLIC

**SCOTT R. BICKFORD**
Notary Public LSBA #1165
State of Louisiana
My Commission is Issued For Life

3

**BRETT M. POWERS**
Ranier, Gayle & Elliot, L.L.C.
1419 Ryan Street
Lake Charles, Louisiana 70601
Telephone: 337-494-7171; 1-877-450-7171
Facsimile: 337-494-7218
Email: bp@brettpowers.com

**EDUCATION:**

Paul M. Hebert Law Center, Louisiana State University, J.D., 1998
Louisiana State University, B.S., 1994

**WORK HISTORY:**

**Admitted:** 1999, Louisiana; 2000 U.S. District Court, Eastern, Middle and Western Districts of
Louisiana U.S.

**Ranier, Gayle & Elliot, LLC;** 2000- present; Environmental law, complex litigation; labor and
employment law; personal injury

**PROFESSIONAL MEMBERSHIPS:**

Louisiana State Bar Association
American Bar Associations;
Southwest Louisiana Bar Association;
American Association for Justice
Louisiana Association for Justice
The Judge Albert Tate, Jr. American Inn of Court

**LITIGATION:**

*Richard Ieyoub, Attorney General, ex rel State of Louisiana v. W. R. Grace & Co.-Conn, et al,* 95-
3722 and 95-3722(A), Calcasieu Parish, State of Louisiana, 14th JDC.

*Richard Ieyoub, Attorney General, ex rel State of Louisiana v. The American Tobacco Company,
et al,* CA No. 96-1209, Calcasieu Parish, State of Louisiana, 14th JDC; *Ieyoub ex rel. State of La. v.
American Tobacco Co.,* 1996 WL 544210 (W.D.La., Jul 16, 1996) (NO. CIV. A. 96-0908)

*Charles James Myer et Al V. U.S. Trust Company of California, N.A.,* NO. 00-147-D-M3, US
District Court, Middle District of Louisiana.

September 2008



EXHIBIT
*A*

tabbies®

*Pugh Hart v. Exxon Mobil et al,* No. 2001-2629, Calcasieu Parish, State of Louisiana, 14th JDC.

*PPG Industries, Inc V. International Association of Machinist District 161,,* FMCS No. 02-0318-06981-3; Grievance No. 02-06-MB Mediation

*PPG Industries, Inc V. International Association of Machinist District 161 and Terrell Broussard,* FMCS Case No. 030123-05015-3, Grievance 02-33-M, Mediation
*Thomas v. Conoco, Inc.,* et al, No. 99-5078, Calcasieu Parish, State of Louisiana.

*In Re: Welding Fume Products Liability Litigation,* MDL No. 1535, Northern District of Ohio.

*Ronald Presler v. The Lincoln Electric Company, et al.,* Cause No. 23472-BH03, Brazoria County, State of Texas, 23rd JDC.

*In Re: Welding Fume Products Liability Litigation, as related to Solis v. Lincoln Electric Company, et al, 1:04-CV-17363,* MDL No. 1535, Northern District of Ohio

*Noah J. Andre, et al. v. A.O. Smith Corporation, et al.,* No. 2003-11573, Parish of Orleans, State of Louisiana.

*In Re: Vioxx Products Litigation,* MDL No. 1657, Eastern District of Louisiana

September 2008

## AFFIDAVIT OF RUSSELL T. ABNEY

BEFORE ME, the undersigned authority being duly authorized for and in the State of Georgia, on this day personally came and appeared Russell T. Abney, and after having first been duly sworn upon oath, states as follows:

1. My name is Russell T. Abney. I am over the age of eighteen years, I am of sound mind, and I am in all respects legally competent and duly authorized to make this affidavit, and I have personal knowledge of the statements made herein. I am an attorney duly licensed in, and in good standing with the state bars of Texas and Georgia. I sat for and passed the Georgia bar examination while a third year law student at the University of Georgia. I sat for and passed the Texas bar exam in July of 1989 immediately after graduation from law school.

2. I received my B.A. from the University of California, Berkeley in 1986 with a double major in economics and political science and my J.D. *cum laude* from the University of Georgia School of Law in Athens, GA. I spent the first ten years of my career representing corporations, from family owned businesses to Fortune 500 companies. In 1998, I became employed by a large plaintiffs firm in Houston, Texas. From that point until the present day I have represented plaintiffs involved in either catastrophic personal injury cases (ranging from plant explosions to aircraft accidents) or those injured by pharmaceuticals/medical devices.

3. Between 2002 and 2007 I was a partner at the Watts Law Firm in Corpus Christi, TX. During that time I was actively involved in the prosecution of the *Smith* case which was tried to verdict in the MDL before this Court and the *Schwaller* case tried to verdict in the state district court of Illinois.

4. I have devoted significant time prosecuting several mass torts including: Diet Drugs (fen-phen and Meridia); Sulzer hip implants; Rezulin; Lead Paint; Welding Fume; and Guidant cardiac devices. In the past fifteen years, my role in these cases has been largely focused on medical and scientific issues including development and cross-examination of witnesses. I have developed leading plaintiff's experts both individually and as part of MDL committees.

5. The Watts Law Firm at all relevant times has been a partner in the Vioxx Litigations Consortium (VLC), a small group of nationally prominent law firms dedicated to victims of Vioxx. The VLC is comprised of Ranier, Gale & Elliott, Williams Kherkher, Provost Umphrey, Watts Law Firm, LLP and The Kaiser Firm. The VLC contributed to the national Vioxx litigation effort by developing and trying cases in both the MDL and in state courts. Additionally, the VLC assisted greatly in the development of expert witnesses for the benefit of all plaintiffs. I was actively involved with the VLC and its members in the trial of both the *Smith* case and in the *Schwaller* case.

FAC Resp. Exhibit B -- 1720

6. My work on the *Smith* trial in the Eastern District of New Orleans is reflected in the over 700 hours I recorded during the preparation and trial that case. My efforts included deposing various defense expert witnesses, assistance with jury venire analysis, jury selection, witness selection and preparation, order of proof, development of jury themes, pre-trial focus groups, discovery, exhibits and the presentation of evidence at trial. I was involved in the editing of deposition cuts and the preparation of live witness for their testimony at trial.[1] Approximately 20 witnesses were called at trial during the *Smith* case.

7. The *Smith* trial lasted for 15 days, but the preparation began long before the jury was ever seated. Over 200 exhibits were eventually admitted at trial after many hours of detailed work in advance of the presentation of evidence. Tens of thousands of pages of documents had to be culled and countless deposition transcripts had to be reviewed and edited.

8. The *Schwaller* trial lasted a little more than three weeks. I was primarily responsible in this case for the development of case specific expert witnesses and for deposing all of defendant's designated medical experts. Additionally, I assisted in every aspect of the pretrial development of the case, including but not limited to: drafting and responding to pre-trial motions; witness selection and preparation; preparation of direct and cross-examination outlines; identifying and summarizing all relevant medical literature; designing trial graphics to explain the plaintiff's numerous medical conditions and Vioxx's mechanism of action; and review of custodial files, transcripts and medical articles to build effective cross-examinations of defense witnesses.

SUBSCRIBED AND SWORN TO BEFORE ME in Fulton County, GEORGIA

on the 30th day of October, 2008.

WITNESSES:

_____

                                                RUSSELL T. ABNEY
                                                ATTORNEY AT LAW

_____

_____
          NOTARY PUBLIC

---

[1] A significant portion of this time is not reflected in my request for common benefit fees as a result of my computer being stolen at the end of the Schwaller trial. My request for common benefit fees is based upon information that was archived before my computer was stolen.

FAC Resp. Exhibit B -- 1721

## AFFIDAVIT OF BRANDON STEFFEY

BEFORE ME, the undersigned authority, on this day personally appeared BRANDON STEFFEY, and after having first been duly sworn upon oath, states as follows:

1.      My name is Brandon Steffey.  I am over the age of eighteen years, and I am of sound mind, in all respects legally competent and duly authorized to make this affidavit, and I have personal knowledge of the statements made herein.  I am an attorney duly licensed in, and in good standing with, the State of Texas.  My resume is attached as Exhibit A.

2.      I submit this affidavit pursuant to PTO 6(D), in support of allocation of common benefit fees in the Vioxx Litigation. In submitting this affidavit, I expressly reserve all, and do not waive any, rights relating to common benefit fees and/or their allocation.

3.      **Contribution to Outcome.**    From the fall of 2004, when Vioxx was withdrawn from the market, until the fall of 2007, when Vioxx cases were settled, my time, energies, and efforts were almost exclusively devoted to Vioxx litigation; because of my focus and commitment to Vioxx litigation, my capacity to work on other cases was severely limited.  My most significant and time consuming work that contributed to the outcome of the litigation was the time I spent working on the Robert Garry Smith trial.  I was extensively involved in the pre-trial preparation and in the day-to-day trial related work and activities.  Tasks I was assigned on the Smith case included, but were not limited to, performing legal research, propounding and responding to discovery, reviewing medical literature, reviewing medical records of the client, drafting motions in limine, reviewing deposition designations and counter-designations, reviewing deposition and trial transcripts, participation in mock trial presentation, attending and participating in numerous trial meetings, and attending all pre-trial conferences and hearings, and attending and monitoring the trial on a day-to-day basis, as well as tracking admission of exhibits throughout trial.  I can conservatively estimate I worked an excess of 860 hours on the *Smith* case alone.  In addition to MDL and *Smith* related work, I worked extensively on Texas and New Jersey state cases.  For New Jersey state cases I reviewed numerous client files and medical records and was actively involved in selection of trial cases and was part of a concerted effort to procure trial settings.  Our efforts to procure multiple New Jersey trial settings proved fruitful.   I prepared for and attended depositions in our New Jersey state cases that were subsequently selected for trial.  These cases were subsequently stayed pursuant to the Master Settlement Agreement and heavily contributed to the outcome of this litigation.

4.      **Quality of Work.** I am employed by Williams Kherkher L.L.P., one of the largest mass-tort litigation firms in the country.  Williams Kherkher combined its resources with The Kaiser Firm L.L.P., Ranier, Gayle & Elliot, LLC, Provost Umphrey L.L.P., and the Watts Law Firm L.L.P.  Together these firms formed the Vioxx Litigation Consortium; collectively these firms have prosecuted mass-tort claims for over a century.  These firms simultaneously represent thousands of individuals across the country on a single docket, and Vioxx was no different.  The Vioxx Litigation Consortium represented over 2,000 Vioxx users that sustained injury as a result

1

of such usage. Few firms or groups of firms are capable of representing so many clients because of the level of expertise, heightened level of risk, vast resources and top quality work product required to prosecute mass-tort claims.

5.      **Litigation Commitment.** During the three year period discussed above, I worked on Vioxx approximately 75% of my working hours; approximately 6,000 hours over the course of this period. In the months leading up to and during the *Smith* trial, I exclusively worked on Vioxx litigation. I, along with numerous other attorneys employed by and affiliated with the Vioxx Litigation Consortium, were fully committed to the prosecution of Vioxx claims; countless man-hours and resources were invested in these cases.

6.      **Non-MDL Jurisdictions.** As stated above, I was actively involved in the prosecution of claims in both Texas and New Jersey. I was closely involved the selection and procurement of multiple trial settings in New Jersey state cases that no doubt impacted the outcome of this litigation. I propounded and responded to written discovery, participated in an extensive review of medical records, prepared for and participated in development of fact witnesses, expert witnesses, and participated in the deposition of witnesses for these New Jersey state cases. With respect to the Texas cases, I attended multiple status conferences before Judge Randy Wilson. I invested a large amount of time reviewing documents in the Texas document depository.

7.      **Trials.** I attended a nd monitored portions of the b ellwether trials of both *Irvin* i n Houston, Texas and *Barnett* in New Orleans, Louisiana. As discussed above, I worked exclusively on the *Smith* case for months prior to trial, attended all pre-trial hearings and was in the courtroom every day throughout the duration of the trial.

8.      **Commitment.** Our firms' commitment to this litigation was second to none. In addition to the case-specific work discussed above, we participated in the development of a searchable Vioxx documents database to assist in the prosecution of all our Vioxx cases. We participated in focus groups which, while case specific, were ultimately for the benefit of all Vioxx claimants. The time, energy, effort, commitment and resources invested by the Vioxx Litigation Consortium played a pivotal role in the settlement and outcome of these cases.

BRANDON STEFFEY

SUBSCRIBED AND SWORN TO BEFORE ME on the 31st day of October, 2008.

NOTARY PUBLIC IN AND FOR
THE STATE OF TEXAS

GERILYN GORDON
Notary Public, State of Texas
My Commission Expires
March 14, 2010

2

**BRANDON STEFFEY**
8441 Gulf Freeway, Suite 600
Houston, Texas 77017
Telephone – 713-230-2200
Facsimile – 713-643-6226
Email – bsteffey@williamskherkher.com

## PROFESSIONAL EXPERIENCE

**WILLIAMS KHERKHER HART & BOUNDAS, L.L.P. – July 2004 – Present**
Engaged in civil litigation focused on pharmaceutical litigation and in representing welders for neurological injuries suffered as a result of their exposure to manganese from welding fumes. Prepared cases for trial. Tasks included legal research, propounding and responding to discovery, drafting motions, preparing fact witnesses and expert witnesses for depositions, participating in mock trial presentations, attendance at pre-trial hearings and attendance at trials.

**BURCK, LAPIDUS, & LANZA, P.C. – July 2003 – May 2004**
Law clerk for firm engaged in insurance litigation. Drafted pleadings, motions and orders. Performed legal research and drafted memorandums concerning procedural and substantive issues of law regarding insurance law, insurance litigation, personal injury, errors and omissions and primary and excess insurance. Assisted attorneys in preparation for mediation and trial.

## LICENSES & MEMBERSHIPS

Licensed in the Southern District of Texas

## EDUCATION

SOUTH TEXAS COLLEGE OF LAW, Houston, Texas
*Juris Doctor*, May 2004
Membership in Phi Delta Phi

TEXAS A&M UNIVERSITY AT COMMERCE, Commerce, Texas
*Bachelor of Business Administration*, May 1999

## AFFIDAVIT OF N. FRANK ELLIOT III

BEFORE ME, the undersigned authority, on this day personally appeared N. FRANK

ELLIOT III, and after having first been duly sworn upon oath, states as follows:

1. My name is N. FRANK ELLIOT III. I am over the age of eighteen years, and I am of sound mind, in all respects legally competent and duly authorized to make this affidavit, and I have personal knowledge of the statements made herein. I am an attorney duly licensed in, and in good standing with, the State of Louisiana. My biographical statement and curriculum vitae are attached as Exhibit A.

2. I submit this affidavit pursuant to PTO 6(D), in support of allocation of common benefit fees in the Vioxx Litigation. In submitting this affidavit, I expressly reserve all, and do not waive any, rights relating to common benefit fees and/or their allocation.

3. I received my B.A. from Southwestern University in 1988 and graduated from the Loyola University College of Business and School of Law in 1994 with a Master of Business Administration and Juris Doctorate. I am a member/partner of the law firm of Ranier, Gayle & Elliot, LLC ("RGE"). I am admitted to practice in all State and Federal Courts in the State of Louisiana, and in the State of Texas.

4. ***Johnson* Factors and High-Risk Effort.** For the past thirteen years, my practice has been almost exclusively dedicated to representing seriously injured individuals in substantial personal injury claims and representing victims of corporate misconduct in the form of cases involving occupational chemical exposures, labor and insurance law, employee benefit plans, environmental cleanup, mass torts, class actions, products liability, pharmaceutical and hurricane litigation.

5. RGE has historically always been a small firm. There are three members/partners and generally no more than two associates. Despite our firm's small size and limited resources, RGE has developed a reputation of working on difficult litigation often dealing with complex legal, economic, scientific and medical aspects of causation. RGE also has a reputation of taking on high risk and cost intensive cases for its clients which most other firms of its comparable size will not or cannot handle. RGE's employment and retention is based primarily on contingency fees, and RGE has performed very limited services for clients on a retainer or hourly basis. The act of producing contemporaneous billable hours is not a practice commonly or regularly performed by RGE.

6. I am involved in the daily operations of RGE, and I have responsibility for supervising and directing associates and staff. I have knowledge of the cases handled by RGE since its inception in 2000. Additionally, I am aware of the cases and projects which the firm has declined to participate in since 2000. Moreover, I have knowledge of the funds expended and required to pursue cases and projects which the firm has undertaken, including Vioxx, and those which the firm has declined.

FAC Resp. Exhibit B -- 1725

7. I am aware of potential cases and claims which RGE has specifically declined to accept or pursue since undertaking to represent clients injured by Vioxx and Merck's misdeeds. RGE was forced to decline representation in other matters due to RGE's limited resources, both financial and staffing. Furthermore, I am aware that RGE has incurred thousands of hours, as reported to the Vioxx MDL, and over three million dollars in costs and potentially thousands of additional hours incurred in handling, administering and overseeing RGE Vioxx clients.

8. **Quality of Work.** RGE is a partner in the Vioxx Center (VC), a small group of nationally prominent law firms dedicated to victims of Vioxx and to hold Merck accountable. The VC is comprised of RGE, Williams Kherkher, Provost Umphrey, Mikal Watts Law Firm and The Kaiser Firm. The VC contributed to the national Vioxx litigation effort by helping to assemble potential Vioxx claimants into one of the country's most advanced and thorough client databases, trial and expert preparation, and important insurance discovery. I have been directly involved with the VC and its members in the administration and oversight of the VC's representation of clients, including direct client contact.

9. **Funding.** RGE made significant financial commitments to the Vioxx Litigation from 2004 to 2008, including $300,000 in contributions to the MDL PSC capital fund, $100,000 in MDL PSC expenses, $100,000 in lawyer travel and trial expenses, and over $3 million to the VC, which included significant litigation costs. The large sums of capital dedicated to the representation of thousands of injured victims of Vioxx along with the enormous financial burdens of bringing both MDL and State Vioxx claims to trial are proof positive of RGE's commitment to the success of the litigation.

10. **Leadership.** Drew Ranier ("Ranier"), a member/partner of RGE, was appointed to the Plaintiffs' Steering Committee by Judge Eldon Fallon at the creation of the Vioxx MDL. I have assisted Ranier in his leadership role since the inception of the Vioxx MDL. My work included personally participating in PSC conference calls for Ranier. I have submitted limited hours to the Vioxx MDL, over 65 hours, but have performed additional time, especially in administration, not reflected in my hours.

11. **Insurance and Economics Case.** Ranier chaired the PSC Insurance Committee and I assisted him in preparing the written Insurance discovery, and specifically in researching and briefing questions of insurance law arising from Merck's efforts to arbitrate its insurance claims in London to the detriment and/or exclusion of the Vioxx MDL and all claimants. I am also knowledgeable of the efforts performed by other attorneys, as part of RGE's common benefit application, including but not limited to, Larry Dyess, who has served as "Of Counsel" to RGE on a number of projects, and John Ellison, a partner at Reed Smith, LLP, in Philadelphia, Pennsylvania, and a leading attorney in matters relating to corporate insurance coverage, who worked with RGE to revise and accurately correct and state the true extent of insurance coverage available to Merck and all Vioxx claimants.

2

12. As a supervising attorney of RGE, I have direct knowledge of the efforts undertaken and performed by Andy P. Hill ("Hill"), a former associate of RGE. Hill worked extensively on insurance matters for Ranier and the PSC Insurance Committee. He researched, drafted and edited insurance-related discovery and briefs. He participated extensively in the deposition of Merck representatives on insurance matters. It is my understanding that he did not maintain contemporaneous hours, but RGE has submitted to the Vioxx MDL approximately 100 hours for Hill.

13. I was directly involved in the retention of renowned financial and economics experts, including members of LECG, L.L.C., in Cambridge, Massachusetts, and former senior level economist at the S.E.C. I worked directly with and supervised the efforts of these experts to unravel Merck's financial statements and reasons for placing and removing Vioxx from the marketplace. I was further involved in these experts' efforts to determine Merck's ability to pay claims brought by claimants in the MDL and of the VC.

14. **Ethics Resolution.** I worked with RGE and other members of the VC in helping to redraft provisions of master settlement to comply with ethics rules and standards. As the settlement documents were initially published, they contained provisions which violated ethics rules. I am aware of the VC's efforts to resolve these potential ethical issues, including communications with ethics counsel and briefing.

SUBSCRIBED AND SWORN TO BEFORE ME in the City of Lake Charles, Calcasieu

Parish, State of Louisiana on the 28 day of October, 2008.

WITNESSES:

_____

_____

_____
N. FRANK ELLIOT III
ATTORNEY AT LAW
RANIER, GAYLE & ELLIOT, LLC

_____
NOTARY PUBLIC

3

insurance claims in London to the detriment and/or exclusion of the Vioxx MDL and all claimants. I am also knowledgeable of the efforts performed by other attorneys, as part of RGE's common benefit application, including but not limited to, Larry Dyess, who has served as "Of Counsel" to RGE on a number of projects, and John Ellison, a partner at Reed Smith, LLP, in Philadelphia, Pennsylvania, and a leading attorney in matters relating to corporate insurance coverage, who worked with RGE to revise and accurately correct and state the true extent of insurance coverage available to Merck and all Vioxx claimants.

12. As a supervising attorney of RGE, I have direct knowledge of the efforts undertaken and performed by Andy P. Hill ("Hill"), a former associate of RGE. Hill worked extensively on insurance matters for Ranier and the PSC Insurance Committee. He researched, drafted and edited insurance-related discovery and briefs. He participated extensively in the deposition of Merck representatives on insurance matters. It is my understanding that he did not maintain contemporaneous hours, but RGE has submitted to the Vioxx MDL approximately 100 hours for Hill.

13. I was directly involved in the retention of renowned financial and economics experts, including members of LECG, L.L.C., in Cambridge, Massachusetts, and former senior level economist at the S.E.C. I worked directly with and supervised the efforts of these experts to unravel Merck's financial statements and reasons for placing and removing Vioxx from the marketplace. I was further involved in these experts' efforts to determine Merck's ability to pay claims brought by claimants in the MDL and of the VC.

14. **Ethics Resolution.** I worked with RGE and other members of the VC in helping to redraft provisions of master settlement to comply with ethics rules and standards. As the settlement documents were initially published, they contained provisions which violated ethics rules. I am aware of the VC's efforts to resolve these potential ethical issues, including communications with ethics counsel and briefing.

SUBSCRIBED AND SWORN TO BEFORE ME in the City of Lake Charles, Calcasieu

Parish, State of Louisiana on the ᒿᏸ day of October, 2008.

WITNESSES:

_N. FRANK ELLIOT III_
ATTORNEY AT LAW
RANIER, GAYLE & ELLIOT, LLC

NOTARY PUBLIC

3

FAC Resp. Exhibit B -- 1728

## EXHIBIT A

## N. FRANK ELLIOT III
## BIOGRAPHY AND CURRICULUM VITAE

N. Frank Elliot III is a member and partner in the firm of Ranier, Gayle and Elliot, L.L.C. He is an experienced attorney who has been successful in representing clients in a wide variety of cases, including financial transactions, contracts, securities, environmental claims and international law. His dedication, knowledge, and creativity make him an invaluable resource to both individual and business clients.

Mr. Elliot is well-educated. He holds a B.A. from Southwestern University (1988), a French language certificate from the Université Catholique de L'Ouest, and both a Master of Business Administration Degree and Juris Doctor Degree from Loyola University College of Business and School of Law (1994). He was also an overseas high school exchange student to Sweden.

Mr. Elliot is admitted to practice law in the State of Louisiana, the State of Texas, the U.S. District Court, Eastern, Middle and Western Districts of Louisiana, the U.S. Court of Appeals, Fifth Circuit, and the United States Supreme Court. Mr. Elliot has also been admitted as a *pro hac vice* attorney in the State of Hawaii.

Mr. Elliot is a consistent contributor to the fields of law and business. He is also a frequent speaker at continuing legal education conferences, seminars, and programs. He has spoken on various topics including recent developments in the law, class actions and complex litigation, and political and business trends.

Since 1995, Mr. Elliot has served as a special assistant attorney general and as a senior legal advisor to the State of Louisiana in matters relating to the State's claims concerning asbestos-containing building materials in state buildings. He has worked extensively with the Division of Administration, and particularly, the Office of Facility Planning and Control, and most of the State's colleges, universities, and agencies.

Additionally, Mr. Elliot has represented the State in matters relating to taxation and revenue, including assessment, valuation and collection. Mr. Elliot currently serves as a private independent attorney for the State's Attorney General's Office, and particularly, as the State's designated representative for maintaining and disseminating protected documents in the *In re Katrina Canal Breaches Consolidated Litigation*, Master Case No. 05-4182, pertaining to *The Road Home.*

**1**

Mr. Elliot is experienced in working with the Legislature and the legislative process, including testifying before legislative committees. He has also assisted in drafting legislation, including *The Louisiana Asbestos Detection and Abatement Act* (La. Rev. Stat. § 39:97.1 *et seq.*) and *The Louisiana Groundwater Remediation Statute* (La. Rev. Stat. § 30:2015.1 *et seq.*). Additionally, Mr. Elliot was appointed by Governor Kathleen Blanco in 2004, to serve on the State's Judicial Compensation Commission.

**POSITION**: Member/Partner, Ranier, Gayle and Elliot, L.L.C.

**ADMITTED**: 1994, Louisiana; 2003, Texas; U.S. District Court, Eastern, Middle and Western Districts of Louisiana; U.S. Court of Appeals, Fifth Circuit; and the United States Supreme Court.

**GRADUATE AND LAW SCHOOL**: Loyola University College of Business (M.B.A., 1994); and Loyola University School of Law (J.D., 1994).

**COLLEGE**: Southwestern University (B.A., 1988); and Université Catholique de L'Ouest (Certificat de Langue Française, 1989).

**MISC.**: Graduate Intern, The Louisiana International Trade Center, 1990-1992; Member, Loyola Moot Court, 1992-1994; Semi-Finalist, Philip C. Jessup International Law Moot Court Competition, 1994; and Judicial Law Clerk, Fourteenth Judicial District Court, Louisiana, 1994-1995.

**MEMBER**: Louisiana State, Texas State and American Bar Associations; Southwest Louisiana Bar Association; Louisiana Association for Justice (Board of Governors, 2001-2003, and Executive Committee, 2003-2007, Council of Directors, 2007-Present); The American Association for Justice (1995-2008); The Judge Albert Tate, Jr. American Inns of Court (2000-2004); Southwest Louisiana Chamber of Commerce; and State of Louisiana, Judicial Compensation Commission (2004-Present).

**AWARDS:** Recipient of the President's Award from the Louisiana Association for Justice for the years 2003-2004, for outstanding and highly dedicated service to the legal profession and the Association.

**LANGUAGES**: French and German (not fluent); sponsor and student of the Lake Area Chinese School (Mandarin Chinese), 2006-Present.

**BORN**: July 29, 1966 (New Orleans, Louisiana)

**2**

**PERSONAL:** Married to Michelle M. Elliot

3 children: Michel Étienne Elliot, Norval "Val" Francis Elliot IV, and Joseph Joachim Elliot

**3**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| In re: VIOXX | * * * * | MDL Docket No. 1657 |
| PRODUCTS LIABILITY LITIGATION | * * | SECTION L |
|  | * * | JUDGE FALLON |
|  | * * | MAGISTRATE JUDGE KNOWLES |
|  | * |  |

## AFFIDAVIT OF SARAH RANIER KEARNEY

BEFORE ME, the undersigned authority, on this day personally appeared SARAH RANIER KEARNEY, and after having first been duly sworn upon oath, states as follows:

1. I received my Juris Doctorate from Paul M. Hebert Law Center in 1998. I have been with the law firm of Ranier, Gayle & Elliot, LLC (RGE), since 2001. I am admitted to practice in Louisiana State Court and the U.S. Eastern District of Louisiana.

2. I have been practicing plaintiff law for nearly ten years. My experience is in multi-plaintiff litigation including whistleblower cases, environmental toxic torts, and personal injury toxic torts (malathion, phen-phen, welding fumes, Vioxx). I have developed scientific expert witnesses for MDL litigations, designed medical and legal screening processes for 1,000s of injured persons, and participated in the metamorphosis of multi-plaintiff suits into an MDL.

3. Drew Ranier, the senior partner in the law firm of Ranier, Gayle & Elliot, LLC, was appointed to the Vioxx MDL Plaintiffs' Steering Committee by Judge Fallon. I have worked on the Vioxx litigation for Mr. Ranier since August 2007. I have submitted 194.25 hours of PSC work.

1

4. Ranier, Gayle & Elliot partnered with four other well-established plaintiffs firms (Williams-Kherkher, Provost-Umphrey, The Watts Firm, and The Kaiser Firm) for the purpose of trying Vioxx cases (The Vioxx Center).

5. My firm made significant financial commitments to the Vioxx Litigation from 2004 to 2008, including over $300,000 in contributions to the MDL PSC capital fund, over $100,000 in MDL PSC expenses, and over $3.1 million to the Vioxx Center, which included the cost of screening 30,000 people who had taken Vioxx to approximately 2,000 seriously injured plaintiffs who enrolled in the MDL; MDL bellwether litigation costs; costs for preparing more clients for trial; epidemiology and other expert costs to improve the science behind the plaintiffs' case.

6. To assist Mr. Ranier in his PSC work, I attended Vioxx Status Conferences and many PSC weekly conference calls, I researched and prepared responses on legal issues related to the MDL de bene esse depositions, probate law, statutes of limitation law, and other issues related to Merck's Motions for Summary Judgment.

7. I worked with Mr. Ranier to study the settlement and researched ethics and practice rules for several states and met with other plaintiff attorneys from across the country representing people in the MDL regarding these complex issues. I reviewed the enrollment, registration and claim forms and the Rules of Professional conduct. For Mr. Ranier and his co-counsel, I consulted with experts on ethics regarding the 100% enrollment requirement which ultimately resulted in the modification of the settlement agreement so that lawyers from every state could participate.

8. I worked for Drew Ranier on Motions to Compel third party providers and updated the Court regarding these issues that were repeatedly happening in many plaintiffs' cases. I also worked on the continuing deficiency problems with co-counsel. I worked for Drew Ranier and other plaintiff attorneys to address problems with enrollment requirements and extensions. I researched the common benefit percentage change and its implications for the settlement participation and lawyers who had previously signed the Full Participation Agreement.

FAC Resp. Exhibit B -- 1733

9.   I submit this affidavit pursuant to PTO 6(D), in support of allocation of common benefit fees in the Vioxx Litigation.  In submitting this affidavit, I expressly reserve all, and do not waive any, rights relating to common benefit fees and/or their allocation.



SARAH RANIER KEARNEY

SUBSCRIBED AND SWORN TO BEFORE ME in the City of Lake Charles, Calcasieu Parish, State of Louisiana on the 28 day of October , 2008.

*Clara M. Miller*

NOTARY PUBLIC

**Clara M. Miller**
Notary Public ID# 78227
CALCASIEU PARISH
State of Louisiana
My Commission Expires At Death

3

FAC Resp. Exhibit B -- 1734

STATE OF LOUISIANA

PARISH OF EAST BATON ROUGE

## AFFIDAVIT OF LARRY D. DYESS IN COMPLIANCE WITH PRE-TRIAL ORDER 6(D) (FEE ALLOCATION GUIDELINES)

On this 28th day of October, 2008, before me, the undersigned authority, duly commissioned and qualified and sworn in and for the state and parish aforesaid, personally came and appeared:

### LARRY D. DYESS

who, after being duly sworn, did depose and say as follows:

1.      My name is Larry D. Dyess. I am over eighteen years of age. I am of sound mind, in all respects legally competent and duly authorized to make this affidavit. I have personal knowledge of the statements made herein. I am an attorney duly licensed in, and in good standing with, the State of Louisiana. My resume is attached as Exhibit 1. I am Of Counsel with the law firm of Ranier, Gayle & Elliott, LLC in regards to work performed on the In re Vioxx Products Liability Litigation. I received my B.A. in 1986 and J.D. in 1989 from Louisiana State University. I have been licensed to and practicing law since 1989. I am admitted to practice in all State and Federal Courts in the State of Louisiana, United States Fifth Circuit Court of Appeals, Temporary Emergency Court Of Appeals, and United States Supreme Court. Ranier, Gayle & Elliot, L.L.C., along with Provost Umphrey, Williams Kherkher, Watts Law Firm and the Kaiser firm, formed the Vioxx Litigation Consortium ("VLC") in effort to jointly prosecute cases of Vioxx victims against Merck of which I have been involved.

2.      I submit this affidavit pursuant to PTO 6(D), in support of allocation of common benefit fees in the In re Vioxx Products Liability Litigation. In submitting this affidavit, I expressly reserve all, and do not waive any, rights relating to common benefit fees and/or their allocation.

3.      **Contribution to Outcome**. In addition to the common benefit contributions made by Ranier, Gayle & Elliot, L.L.C., independently and as part of the Plaintiffs Steering Committee and the Vioxx Consortium referenced in the affidavit of Drew Ranier, I have contributed time and effort toward the common benefit. I have worked a minimum of 180 hours toward the common benefit of those involved in this litigation with Merck. This time includes work done in trial case selection, development, and preparation for trials. I was involved in the review, analysis, and discovery processes relating to the various insurance policies that were available to Merck & Co., Inc. on behalf of the PSC. These included a review of the policies in question and discovery such as subpoenas for additional insurance documentation for such insurance companies as Continental Casualty Company, Continental Insurance Company, Columbia Casualty Company, CNA Casualty Of California, Chubb Group Of Insurance Companies, Federal Insurance Company, SR International Business Insurance Company Limited, Gerling-Konzern Allgemeine Versicherungs A.G., London, United Kingdom, Lexington Insurance Company, North Rock Insurance Company Limited, Steadfast Insurance Company, XL Insurance Ltd., American Alternative Insurance Company and Winterthur Swiss Insurance

Company and various list of producers/brokers for subpoenas relating to insurance. This work involved unique issues of insurance coverage and the discoverability of related documents relevant to the issues of insurance coverage including the arbitration proceedings in London, SEC investigations, and unique issues such as the application of Louisiana's Direct Action Statute. This work included extensive legal research including research of various insurance and evidence treatises and research related to Merck & Co, Inc.'s Motion For Protective Order and objections to 30(B)(6) topics and document production. I also attended discovery hearing before Judge Fallon and attended some of two trials. In preparation for trial I reviewed documents at the Central Repository and also reviewed and analyzed documents as requested by the Plaintiffs Steering Committee.

4.     **Quality of Work.** Ranier, Gayle & Elliot, L.L.C. is held in high regard in the legal community with a reputation for quality work and for investing the time and resources necessary to win cases. Along with others, Ranier, Gayle & Elliot, L.L.C. represented the State of Louisiana in the tobacco litigation and achieved one of the largest legal recoveries for the State of Louisiana in history. It is this reputation for success that made the Vioxx Consortium a huge threat to Merck and along with a large case load, was a substantial factor in bringing about the settlement agreement with Merck. The Vioxx Consortium contributed to the national VIOXX litigation effort by helping to assemble potential VIOXX claimants into one of the country's most advanced and thorough client databases, trial and expert preparation, and important insurance discovery.

5.     **Litigation Commitment.** Of the 17 Vioxx trials, the Vioxx Consortium tried two (2) cases to verdict: the Robert "Garry" Smith case in the Eastern District of New Orleans and the Patricia Schwaller case in Illinois State Court, and provided trial assistance and support in other trials as well. The efforts and resources invested by our team contributed substantially to the resolution of the litigation and the settlement agreement that was achieved. As a united consortium, Merck was fully aware that our team had the quality talent and funds to try our cases against it, despite the substantial costs and time involved in each trial. In addition, Ranier, Gayle & Elliot, L.L.C. was part of the group that helped develop the trial case for the VIOXX MDL. I, along with other members of RGE and the VC also assisted in other MDL bellwether trials.

6.     **Partnership Participation.** I am Of Counsel with the law firm of Ranier, Gayle & Elliot, L.L.C. I reported directly to Drew Ranier, the Senior Managing Partner of the firm who was also intimately involved with the management of these cases and a member of the Plaintiffs Steering Committee for the In re Vioxx Products Liability Litigation.

7.     **Non MDL Jurisdictions.** Our consortium participated in common benefit work outside of the federal MDL including New Jersey, California, Illinois and Texas. Additionally, time and money were expended to develop cases for trial in other states including Wisconsin, Maryland, Florida, Illinois and in other venues as well in order to be ready for state trials when the cases in the MDL were sent back.

8.     **Trials.** Our team tried two (2) Vioxx cases to verdict: Robert "Garry" Smith (federal MDL) and Patricia Schwaller, Deceased (Madison County, Illinois). Trial strategy and decisions

relating thereto were discussed and decided at the regular meetings among the Vioxx Consortium.

9.     **Funding.** Ranier, Gayle & Elliot, L.L.C. made significant financial commitments to the VIOXX Litigation from 2004 to 2008, including $300,000.00 in contributions to the MDL PSC capital fund, $100,000.00 in MDL PSC expenses, $100,000.00 in lawyer travel and trial expenses, and over $3,000,000.00 to the VIOXX Consortium, which included significant litigation expenses. The large sums of capital dedicated to the representation of thousands of injured victims of VIOXX along with the enormous financial burdens bringing both MDL and State VIOXX claims to trial are proof positive of RGE's commitment to the success of the litigation. Our VIOXX consortium made significant contributions in terms of funding this litigation which benefited all Vioxx Plaintiffs and their counsel. The VLC put over 11 million dollars of its money at risk. In particular, our team invested approximately $147,390 in the trial of the Robert Garry Smith case, a Merck picked case as the second case tried in the federal MDL. Our group expended over $145,000 in the Patricia Schwaller case in Illinois. We spent hundreds of thousands in selecting cases to try in New Jersey and California and in other state venues and selecting and/or working those cases up for trial. While these cases did not ultimately proceed to trial, the efforts and funds invested no doubt contributed substantially to Merck's desire and decision to negotiate and settle this litigation.

10.     **Other.** Drew Ranier, senior managing partner of Ranier, Gayle & Elliot, L.L.C., chaired the PSC Insurance Committee and I assisted him as set forth in paragraph 3.

      THUS DONE AND PASSED at Baton Rouge, East Baton Rouge Parish, State of Louisiana, the parties having affixed their signatures in the presence of me, Notary, and the undersigned witnesses after due reading of the whole.

WITNESSES:

_VALERIE BERRYHILL_

_Rebeca Serrano_

_____
LARRY D. DYESS

_____
      MARVIC G. THOMPSON, NOTARY PUBLIC
                  Bar Roll Number 25903

# Larry Dewayne Dyess

4637 Jamestown Ave., Suite C
Baton Rouge, Louisiana  70808
(225) 928-0019 office
(225) 810-7859 cellular

## EDUCATION

Juris Doctorate – Louisiana State University Law School – 1989
Bachelor of Arts – Louisiana State University – 1986
High School – H.L. Bourgeois High School – 1982

## BUSINESS CAREER

| | |
|---|---|
| 1999 to present | Larry D. Dyess, A Professional Law Corporation.  Attorney practicing in the following areas of law:  Oil and gas contract disputes, environmental, government representation, class action litigation, federal and state court litigation, and corporate. |
| 1997 to 1999 | Cossich, Martin, Sumich & Parsiola.  Attorney practicing in the following areas of law: maritime (defense and plaintiff), class action litigation, federal and state court litigation, local government representation. |
| 1988 to 1997 | Eldred, Clauer & Davis.  Attorney practicing in the following areas of law: Oil and gas contract disputes, federal and state court litigation, banking, bankruptcy, corporate, general business, sales taxation, state and local government representation, personal injury and general practice. |
| 1987 | Hunter & Plattsmire.  Law Clerk in the areas of personal injury and criminal law. |

## PERSONAL HISTORY

Born in Alexandria, Louisiana, 1964.  Married.

## AFFILIATIONS

Admitted to practice law before the Louisiana State Bar (1989), Western, Middle, and Eastern Federal District Courts of Louisiana, United States Fifth Circuit Court of Appeals, the Temporary Emergency Court of Appeals; and United States Supreme Court; Appointed Special Assistant Attorney General by the Louisiana Department of Justice (1990); and a member of the Louisiana State Bar Association and Louisiana Association For Justice.  I currently serve as a member of the Advisory Council for the Louisiana Mineral Law Institute.



EXHIBIT

*1*

## TYPES OF CASES WORKED ON OR WORKING ON

### Mineral

I have represented numerous parties in contract dispute cases including outside counsel for the State of Louisiana in State of Louisiana v. Texaco, Inc. (M.D. La.) by way of example, and outside counsel for the Plaquemines Parish Government.   I have represented numerous landowner/mineral owner contract disputes.  I have represented landowner environmental damage claims.  I currently serve as a member of the Advisory Council for the Louisiana Mineral Law Institute.

### State and Local Government Representation

State of Louisiana.   Appointed Special Assistant Attorney General to represent the Louisiana Department of Natural Resources, Louisiana State Mineral Board, Louisiana Department of Revenue and Taxation, Louisiana Department of Wildlife & Fisheries, and the Louisiana Attorney Generals Office.
Plaquemines Parish Government
East Baton Rouge Parish
St. Charles Parish School Board
St. John The Baptist Parish
Ascension Parish
West Baton Rouge Parish

### Class Actions

I have been involved in a number of class actions including work for the PSLC in Vioxx, insurance dispute class actions, MRGO, oil spill class action and oyster damage class action.

### Maritime

Have represented maritime defendants and plaintiffs in numerous personal injury, property damage, allision, collision and contract dispute cases.  My duties included developing cases from the accident investigation phase to jury and judge trials.

### Sales and Use Taxation

I have represented the Parishes of Ascension, East Baton Rouge, Plaquemines, St. Charles Parish School Board, West Baton Rouge and the State of Louisiana in sales and use tax litigation.

2

### Corporate

Representation of corporate clients in contract drafting, contract disputes, incorporation and related documentation, shareholder liability, unemployment compensation, construction contract disputes, personal injury, employment disputes, and employment contracts by way of example.

### Banking

Suits on promissory notes and recognition of mortgages, foreclosure, sheriffs' sales, suit on intentional interference with contract and fraud.

### Bankruptcy

Representation of corporate and individual chapters 7, 11, and 13 debtors and creditors including adversarial proceeding litigation.

FAC Resp. Exhibit B -- 1740

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

|                                   |   |                           |
|-----------------------------------|---|---------------------------|
| In re:  VIOXX                     | * | MDL Docket No. 1657       |
| PRODUCTS LIABILITY LITIGATION     | * | SECTION L                 |
|                                   | * | JUDGE FALLON              |
|                                   | * | MAGISTRATE JUDGE KNOWLES  |

---

## AFFIDAVIT OF JOHN N. ELLISON

BEFORE ME, the undersigned authority, on this day personally appeared JOHN N. ELLISON, and after having first been duly sworn upon oath, states as follows:

1.  My name is JOHN N. ELLISON.  I am over the age of eighteen years, and I am of sound mind, in all respects legally competent and duly authorized to make this affidavit, and I have personal knowledge of the statements made herein.  I am an attorney duly licensed in, and in good standing with, the Commonwealth of Pennsylvania.  My biographical statement and curriculum vitae are attached as Exhibit A.

2.  I submit this affidavit pursuant to PTO 6(D), in support of allocation of common benefit fees in the Vioxx Litigation.  In submitting this affidavit, I expressly reserve all, and do not waive any, rights relating to common benefit fees and/or their allocation.

3.  I received my B.A. from Ohio State University and graduated from the Dickinson School of Law of Pennsylvania State University in 1987 with a Juris Doctorate.  I am a partner in the law firm of Reed Smith.  I am also admitted to practice in the State of New York and the District of Columbia.  Additionally, I am admitted to practice in a number of federal courts, including having been admitted to practice law in the U.S. District Court, Eastern District of Louisiana and the U.S. Fifth Circuit Court of Appeals.

4.  For the past two decades, my practice has been exclusively dedicated to representing policyholders with insurance coverage issues, first as a partner with Anderson Kill & Olick, P.C. and now with Reed Smith LLP.  My practice has focused on securing coverage for policyholders in a wide variety of insurance claims including environmental liabilities, asbestos claims and toxic torts.  My practice includes extensive work in international courts and tribunals, especially in London, England.  I have assisted clients in recovering in excess of $2 billion in coverage against various insurance companies for claims that were being disputed.

5.  Over the past several years and through the end of last year, I have worked extensively with the law firm of Ranier, Gayle and Elliot, L.L.C. ("RGE").  I also understand RGE is

1

a partner in the Vioxx Center (VC), a small group of nationally prominent law firms dedicated to victims of Vioxx and to hold Merck accountable. The VC is comprised of RGE, Williams Kherkher, Provost Umphrey, Mikal Watts Law Firm and The Kaiser Firm. I believe the firms comprising the VC to be highly skilled and competent law firms, and I know these firms have reputations for possessing a heightened level of expertise in the practice of law.

6. I know Drew Ranier ("Ranier"), a member/partner of RGE, was appointed to the Plaintiffs' Steering Committee by Judge Eldon Fallon at the creation of the Vioxx MDL. Ranier chaired the PSC Insurance Committee and I assisted him in revising and accurately stating the true extent of insurance coverage available to Merck and all Vioxx claimants. I met and consulted with Ranier and other members of RGE in preparation of written Insurance discovery, noticing and preparing for insurance coverage deposition testimony, and specifically in advising and aiding in directing strategic and tactical decision-making matters related to Merck's London insurance arbitrations. Due to the complexity and scope of the issues raised by the underlying Vioxx coverage litigation, there were substantial and unique coverage issues with respect to Merck that were made even more so by the non-traiditonal insurance coverage Merck purchased.

7. I believe, as Ranier has reported, Merck has substantially more insurance coverage available for Vioxx claims than previously reported by Merck. My efforts to evaluate and state the true extent of Merck's available coverage for Vioxx claims is visually demonstrated on the revised coverage chart I helped develop, with assistants from others in my office, and in conjunction with Ranier and members of RGE.

SUBSCRIBED AND SWORN TO BEFORE ME in the City of Philadelphia, Commonwealth of Pennsylvania on the 27th day of October, 2008.

WITNESSES:

_____

_____                              **JOHN N. ELLISON**
                                                     **ATTORNEY AT LAW**
                                                     **REED SMITH**


                                                     NOTARY PUBLIC

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Lorraine A. Kane, Notary Public
City Of Philadelphia, Philadelphia County
My Commission Expires May 28, 2009
Member, Pennsylvania Association of Notaries

2



**ReedSmith**
The business of relationships.

# Our people

**John N. Ellison**



- Email: jellison@reedsmith.com

- Tel: +1 215 241 1210

- Fax: +1 215 851 1420

## Available bios

### General bio

John's practice concentrates in the insurance coverage area exclusively on behalf of policyholders. John's clients range from Fortune 50 companies to small closely-held companies. He has been recognized by *Chambers USA 2007: America's Leading Lawyers for Business* as an "analytical and upbeat litigator with a great presence in the courtroom" and "first-class trial attorney."

John has a wide variety of experience in the insurance coverage field including coverage for environmental liabilities, asbestos-related claims and other toxic torts. He has also handled claims under directors and officers policies, fidelity bonds, first-party property policies and other liability insurance products, as well as prosecuting successfully bad faith claims against many of the large insurance organizations. In addition, he also regularly counsels his clients on insurance-related issues, spanning from structuring insurance programs to reviewing policy wording and related documentation. Over the past couple of years, John's clients have recovered in excess of $1.5 billion in insurance coverage for matters that were being contested by their insurance companies.

John's international practice involves appearing in courts and tribunals throughout the United States and in Europe. He has been lead counsel in some of the largest insurance disputes over the last decade. He also serves as a party-nominated arbitrator in many insurance arbitrations. He currently sits on the National Advisory Board for Mealey's Conferences and the Insurance Law Teleconference Advisory Board for Strafford.

In addition to his active practice on behalf of policyholders, John regularly lectures around the world on insurance coverage topics and has published numerous articles in national journals and periodicals. John has been rated "AV" by Martindale Hubbell.

## Export bio

Attorney Advertising. This Web site may be considered advertising under the rules of some states. Prior results described on this site cannot and do not guarantee or predict a similar outcome with respect to any future matter that we or any lawyer may be retained to handle.

In Hong Kong, Richards Butler in Association with Reed Smith LLP.

Pending name change approval by Chinese Regulatory Authorities in Beijing, Richards Butler LLP.

© Copyright 2008 Reed Smith. All rights reserved.

FAC Resp. Exhibit B -- 1743

## AFFIDAVIT OF DARREN BROWN

BEFORE ME, the undersigned authority, on this day personally appeared DARREN BROWN, and after having first been duly sworn upon oath, states as follows:

1.      My name is Darren Brown. I am over eighteen years of age. I am of sound mind, in all respects legally competent and duly authorized to make this affidavit. I have personal knowledge of the statements herein. I am an attorney duly licensed in, and in good standing with, the State of Texas. My resume is attached as Exhibit 1. I am a non-equity partner in the Provost ✦ Umphrey Law Firm, LLP. I have been licensed to practice law and employed by the firm as an attorney since 1991. I am Board Certified in Personal Injury Trial Law. Provost ✦ Umphrey, along with Williams Kherkher, Watts Law Firm, Ranier & Elliot and the Kaiser firm, formed the Vioxx Litigation Consortium ("VLC") in effort to jointly prosecute cases of Vioxx victims against Merck. I began handling Provost ✦ Umphrey's day-to-day responsibilities with VLC Vioxx files in July, 2006. Prior to my involvement, these matters were handled at our firm by Jim Morris, an equity partner, under the direct supervision of Walter Umphrey.

2.      I submit this affidavit pursuant to PTO 6(D), in support of allocation of common benefit fees in the Vioxx Litigation. In submitting this affidavit, I expressly reserve all, and do not waive any, rights relating to common benefit fees and/or their allocation.

3.      **Contribution to Outcome**. In addition to the common benefit contributions made by the Provost ✦ Umphrey Law Firm, independently and as part of the Vioxx Litigation Consortium referenced in the affidavit of Walter Umphrey, I have contributed time and effort toward the common benefit. Since taking over the day-to-day handling of the Provost ✦ Umphrey Vioxx responsibilities. I have worked a minimum of 225 hours toward the common benefit of those involved in this litigation with Merck. This time includes work done in trial case selection, development, and preparation for trials in California, work in the Gary Smith case that went to trial in New Orleans in September, 2006, and work done in the Patricia Schwaller case that was tried in Madison County, Illinois in March, 2007, as well as work done regarding the ethics issue that arose after the settlement agreement was announced. I was responsible for case development and trial case selection for the VLC's California Vioxx docket. In this regard, I along with my staff of paralegals, as well as the medical staff employed by the VLC, reviewed approximately seventy (70) potential files in effort to choose the best trial candidates for trials against Merck in Judge Chaney's Court in Los Angeles, California. This review required a detailed analysis of each Plaintiff's case including analysis of age, dosage, usage history, injury classification and risk factors. I conferenced with Plaintiff's Liaison Counsel and other Plaintiff's counsel regarding Plaintiff trial picks and strategy in conversations and conferences that took place over the course of April-September, 2007. As a result of this process, the *Bernard Feldman* case was selected and calendared as one of the four trial cases set for November, 2007. This case was worked up for trial in terms of medical and wage records review, consultations with Feldman's prescribing physician and cardiologist as well as medical

1

cardiologist experts who were going to testify in his case. In addition to the Bernard Feldman, Katherine Frazier and Gene Cook were two other cases submitted as trial cases by Plaintiff. I was responsible for the case development for the trials of the Vioxx Consortium Plaintiffs whose cases that Merck picked and set for trial including: Gary Lynn, Robert Espinoza and Hector Lativio, where discovery and trial preparation/strategy was conducted.

Additionally, I assisted the VLC trial team in preparation of and the trial of the Gary Smith case which was tried in the federal MDL in New Orleans before Judge Fallon. This amounted to a minimum of 52 hours in July, August and September, 2006.

I also assisted our trial team in the trial of Patricia Schwaller v. Merck which was tried in Madison County Illinois in March, 2007. My work in this regard consisted of reviewing, summarizing and analyzing testimony of expert witness from prior cases. I also assisted with aspects of jury selection and voir dire. This work amounted to 56 hours during the period of October 2006 – March, 2007.

4.     **Quality of Work.** The Provost ✦ Umphrey Law Firm is held in high regard in the legal community with a reputation for quality work and for investing the time and resources necessary to win cases. Along with Williams Kherkher and others who are part of the Vioxx Consortium, Provost ✦ Umphrey represented the State of Texas in the tobacco litigation and achieved one of the largest legal recoveries for the State of Texas in history. It is this reputation for success that made the Vioxx Consortium a huge threat to Merck and along with a large case load, was a substantial factor in bringing about the settlement agreement with Merck.

5.     **Litigation Commitment.** Of the 17 Vioxx trials, the Vioxx Consortium tried two (2) cases to verdict: the Gary Smith case in New Orleans and the Patricia Schwaller case in Illinois, and provided trial assistance and support in other trials as well. The efforts and resources invested by our team contributed substantially to the resolution of the litigation and the settlement agreement that was achieved. As a united consortium, Merck was fully aware that our team had the quality talent and funds to try our cases against it, despite the substantial costs and time involved in each trial.

6.     **Partnership Participation.** I am a partner in the Provost ✦ Umphrey Law Firm. Prior to my involvement, the Provost ✦ Umphrey Vioxx responsibilities were handled by Jim Morris, also a partner. We both reported directly to Walter Umphrey, the Senior Managing Partner of the firm who was also intimately involved with the management of these cases.

7.     **Non MDL Jurisdictions.** Our consortium participated in common benefit work outside of the federal MDL including New Jersey, California, Illinois and Texas. Additionally, time and money were expended to develop cases for trial in other states including Wisconsin, Maryland, Florida, Illinois and in other venues as well in order to be ready for state trials when the cases in the MDL were sent back.

8.    **Trials**. Our team tried two (2) Vioxx cases to verdict:  Gary Smith (federal MDL) and Patricia Schwaller, Deceased (Madison County, Illinois).  Trial strategy and decisions relating thereto were discussed and decided at the regular meetings among the Vioxx Consortium in which I participated.

9.    **Funding**.  Our consortium made significant contributions in terms of funding this litigation which benefited all Vioxx Plaintiffs and their counsel.  The VLC put over 11 million dollars of its money at risk.  In particular, our team expended approximately $147,390 in the trial of the Gary Smith case, a Merck picked case as the second case tried in the federal MDL.  Our group expended over $145,000 in the Patricia Schwaller case in Illinois.  We invested substantial monetary resources in selecting cases to try in New Jersey and California and in other state venues and selecting and/or working those cases up for trial.  While these cases did not ultimately proceed to trial, the efforts and funds invested no doubt contributed substantially to Merck's desire and decision to negotiate and settle this litigation.

10.    **Other**.  After the Vioxx settlement was announced, because of certain language in the agreement, ethical issues arose that threatened the success of the Vioxx Settlement Plan, our team conferenced numerous times in an attempt to resolve the ethical problems that existed.  These issues caused many Plaintiffs' attorneys in Texas and elsewhere huge concerns.  Failure to achieve a resolution on them could have caused the Vioxx settlement program to fail.  As a result of these efforts of John Eddie Williams and others on our team, the ethical issues were resolved and numerous Plaintiffs' attorneys who would not have otherwise agreed to participate, decided to register and enroll their clients in the settlement program.  In all, I spent a minimum ten (10) hours participating in efforts to resolve these issues consisting of numerous meetings and telephone conference with our team and ethics advisor, Charlie Silver.

_(signature)_

DARREN BROWN

SBUSCRIBED AND SWORN TO BEFORE ME on the 29th day of October, 2008.

_(signature)_

NOTARY PUBLIC IN AND FOR
THE STATE OF TEXAS

**MARY GONZALEZ**
Notary Public, State Of Texas
My Commission Expires
09-22-2011

## AFFIDAVIT OF AVRAM BLAIR

BEFORE ME, the undersigned authority, on this day personally appeared Avram Bliar, and after having first been duly sworn upon oath, states as follows:

1. My name is Avram Blair. I am over the age of eighteen years, and I am of sound mind, in all respects legally competent and duly authorized to make this affidavit, and I have personal knowledge of the statements made herein. I am an attorney duly licensed in, and in good standing with the State of Texas. My resume is attached as Exhibit 1.

2. I submit this affidavit pursuant to PTO 6(D), in support of allocation of common benefit fees in the Vioxx Litigation. In submitting this affidavit, I expressly reserve all, and do not waive any, rights relating to common benefit fees and/or their allocation.

3. I actively worked on all pretrial materials in the Vioxx litigation. I along with several other attorneys have contributed a great amount of work to this litigation including but not limited to the research for mock trial, jury and focus groups. I prepared for additional trials by working up and submitting cases for the pretrial discovery which took place in New Orleans while presenting the Plaintiffs case at a mock trial/focus group meeting. This project was directly related to the relevant issues in the bellwether cases. While prepping for my case, I was responsible for the issues on damages and liability and how they were relevant to the Vioxx litigation and to the Smith case. It is my assessment that the Mock trial was an accomplishment because it helped with defining the pertinent issues to a juror residing in New Orleans and the surrounding communities.

4. In regards to the specific trial preparation, I was involved with our experts in the field of cardiology. I assisted with their trial testimony of our designated experts.

SUBSCRIBED AND SWORN TO BEFORE ME on the ____ day of _____ 2008.

NOTARY PUBLIC IN AND FOR
THE STATE OF TEXAS

DONNA G. TRAHAN
Notary Public, State of Texas
My Commission Expires
August 26, 2011

1

FAC Resp. Exhibit B -- 1747

# Report of Vioxx Hours

Individual Name: __Avrum Blair__          For the Month of: __Aug-06__

THIS SPREADSHEET IS FOR TRIAL SPECIFIC WORK ONLY. PLEASE USE THE CORRECT SPREADSHEET FOR PSC WORK, APPC WORK, STATE WORK, OR COMMON FEE APPLICATION WORK

SPECIFY TRIAL: __Smith Trial__

| Date (MM/DD/YY) | Hours (X.XX) | Location | Description of Work | Total Preparation And Trial (hours) | Total Preparation and Trial if none entered, DO NOT ENTER, CALCULATED (hours) | Grand Total Hours (calc) |
|---|---|---|---|---|---|---|
| 08/24/06 | 10.00 | New Orleans, La. | Travel to and from New Orleans for preparing Plaintiffs case in the Mock Trial | 10.00 | 10.00 | 0.00 |
| 08/23/06 | 11.00 | Houston, Texas | Mock Trial Preparation (Review scientific articles and client information) | 11.00 | 11.00 | 0.00 |
| 08/22/06 | 9.00 | Houston, Texas | Mock Trial Preparation (Prepare presentation) | 9.00 | 9.00 | 0.00 |
| 08/21/06 | 9.00 | Houston, Texas | Mock Trial Preparation ( Extensive review of evidence and depositions) | 9.00 | 9.00 | 0.00 |
| 08/19/06 | 7.00 | Houston, Texas | Mock Trial Preparation (Review expert reports and scientific studies) | 7.00 | 7.00 | 0.00 |
| 08/18/06 | 7.00 | Houston, Texas | Mock Trial Preparation (Review Vigor and other scientific studies) | 7.00 | 7.00 | 0.00 |
| 08/17/06 | 6.50 | Houston, Texas | Mock Trial Preparation (Review Client files and depositions ) | 6.50 | 6.50 | 0.00 |
| 08/16/06 | 6.75 | Houston, Texas | Mock Trial Preparation (Review and discuss Mock Trial tactics and strategy) | 6.75 | 6.75 | 0.00 |
| 08/15/06 | 7.00 | Houston, Texas | Mock Trial Preparation (Review and research defense experts) | 7.00 | 7.00 | 0.00 |
| 8/14/2006 | 6.50 | Houston, Texas | Mock Trial Preparation (Review and discuss Mock Trial issues and strategy) | 6.50 | 6.50 | 0.00 |

**Total Hours**   79.75        79.75        79.75

Verification: By signing this document, I hereby verify that the information contained

in this document is true and correct.

Signed: _____

Date: __10-20-08__

# Avram Josef Blair, Attorney

**Education:**
Studied economics and mathematics at the
University of Texas at Austin
Graduated *cum laude* from South Texas College of
Law
Studied international law at the University of Århus
in Denmark
While attending law school, Avram also assisted in
the management of his family's manufacturing
business.

**Memberships:**
State Bar of Texas
State Bar of New York
Houston Bar Association
Houston Trial Lawyers Association
Texas Trial Lawyers Association
Association of Trial Lawyers of America

**Licensed to practice:**
U.S. District Court, Southern District of Texas
U.S. District Court, Southern District of New York

**Past experience:**
Avram joined our firm in 2002 after clerking for Justices Guzman and
Wittig at the Fourteenth Court of Appeals for the State of Texas.

Avram speaks Spanish and Danish.

## AFFIDAVIT OF SEJAL K. BRAHMBHATT

BEFORE ME, the undersigned authority, on this day personally appeared SEJAL K. BRAHMBHATT, and after having first been duly sworn upon oath, states as follows:

1.     My name is Sejal K. Brahmbhatt. I am over the age of eighteen years, and I am of sound mind, in all respects legally competent and duly authorized to make this affidavit, and I have personal knowledge of the statements made herein. I am an attorney duly licensed in, and in good standing with, the State of Texas. My resume is attached as Exhibit A.

2.     I submit this affidavit pursuant to PTO 6(D), in support of allocation of common benefit fees in the Vioxx Litigation. In submitting this affidavit, I expressly reserve all, and do not waive any, rights relating to common benefit fees and/or their allocation.

3.     I worked extensively on the prosecution of Vioxx claims in New Jersey. Not only was I heavily involved in New Jersey case selection, but I also led efforts to develop cases picked for trial. I reviewed client files, medical records, had extensive client contact, took depositions, reviewed expert reports, attended status conferences, prepared fact witnesses for depositions, and reviewed medical literature. Our time and efforts in selecting cases, procuring trial settings and developing our trial cases directly contributed to the outcome of the Vioxx litigation.

4.     Williams Kherkher Hart Boundas, LLP, in a consortium with four other law firms, was one of a handful firms that participated in a Vioxx trial. I was on the trial team assigned to the *Robert Garry Smith v. Merck* case filed in New Orleans, LA. This case went to trial in September 2006. My tasks were time-consuming and of a wide-range. They included but were not limited to: performing legal research, reviewing medical literature, assembling our trial exhibit list, propounding discovery, reviewing discovery, reviewing Mr. Smith's medical records, reviewing expert reports, reviewing past trial transcripts, attending status conferences, organizing and summarizing prior witness testimony, participating in trial strategy meetings and conference calls,  reviewing and summarizing deposition transcripts, creating trial demonstratives, organizing and coding exhibits for use with trial witnesses, helping prepare trial witnesses for testimony, attending the trial, working with opposing counsel on negotiating video deposition cuts and also ensuring our exhibit list was current throughout trial, reviewing documents to put on exhibit list, medical research, assembling and identifying liability documents to be used at trial, preparing for pre-trial hearing, preparing trial notebooks, and formulating strategy and exhibits to be used with Defense trial witnesses.

5.     Williams Kherkher is a nationally recognized Plaintiff, mass-tort litigation law firm. We take pride in the work we do and the commitment we have to each and every one of our clients. We were one of the few firms that undertook the enormous task of going to trial against Merck. We developed trial strategies, took the lead at status conferences, pushed the need for litigation in various jurisdictions, shared our knowledge and work product with our peers and cultivated long-lasting relationships with counsel around the country.  Without a doubt, Williams

1

Kherkher was present every step of the way and was committed to helping those injured by Vioxx.

_____

SEJAL K. BRAHMBHATT

SUBSCRIBED AND SWORN TO BEFORE ME on the 30th day of October, 2008.

GERILYN GORDON
Notary Public, State of Texas
My Commission Expires
March 14, 2010

_____

NOTARY PUBLIC IN AND FOR
THE STATE OF TEXAS

2

SEJAL KUMAR BRASPENHATEL
1012 Van Buren • Houston, TX 77019 • (281) 639-1880 • sejal_kb@yahoo.com

| | |
|---|---|
| **EDUCATION** | **South Texas College Of Law,** Houston, Texas |

Juris Doctor, May 2000
Licensed to practice in Texas, Southern District of Texas, Western
District of Texas and Pennsylvania

| | |
|---|---|
| *Honors:* | Dean's Fellowship Scholarship Recipient |
| *Activities:* | Student Bar Association Representative, Student Mentor |
| | International Law Society – President |
| | Women's Legal Forum – Secretary |
| | South Asian Law Students Association – Treasurer |
| | Asian Pacific American Law Students Association – Publicist |
| *Advocacy:* | Mock Trial / Moot Court Experience |
| *Internships:* | American Civil Liberties Union, May 1998-Sept 1998 |
| | Texas Attorney General's Office – Child Support Division |

**University Of Houston**, Houston, Texas
Bachelor of Arts - Double Major in Psychology and Political Science,
Minor in Radio / Television  Communications (degrees obtained in 3.5 years)
December 1996

**EXPERIENCE**
*Legal*

**Williams Kherkher Hart Boundas, LLP** Houston, Texas
(formerly Williams Bailey Law Firm LLP)
 Associate Attorney, Dec 05- Present
Staff Attorney Mar 03 – Dec 05
- Trial experience – personal injury case, July 2008, Vioxx Trial, Sept. 2006, Fen-Phen Trial, Nov. 2005
- Part of the Pharmaceutical Litigation Team
- Involved in Fen-Phen,  Vioxx, and Paxil drug litigations
- Lead associate attorney on Paxil docket
- Research and brief issues for use in evaluating cases and for use in trial
- Draft discovery requests, including interrogatories, requests for admissions and requests for production
- Conduct depositions, attend client meetings, and appear in court
- Draft numerous pleadings, motions, and briefs for submission to the courts including but not limited to motions for continuance, motions to compel, motions for summary judgment, motions for default judgment, and post-arbitration briefs.
- Attend and represent clients at pre-trial conferences and hearings
- Participate in litigation strategy development and implementation
- Propound discovery requests and responses
- Represent local unions at arbitrations for grievances related to violations of labor and employment provisions in contracts
- Represent clients in personal injury lawsuits related to collisions, slip and falls, and on the job injuries
- Represent clients exposed to Asbestos
- Represent clients involved in contract disputes
- Attend and resolve cases at mediations

**Hocker, Morrow & Mathews**, Spring, Texas
Law Clerk, July 99- Apr 00
- Draft documents, petitions, affidavits and discovery for filing in local courts
- Write memos on various family law issues related to divorce, child custody, settlement agreements, and best interest of the child conflicts
- Extensive client contact and interaction ranging from interviewing potential clients to working cases through trial or mediation
- Exposure to different aspects of the law such as stock options and enforcement of acceleration clauses, and mediation and arbitration proceedings

**Harris County Attorney's Office**, Houston, Texas
*Law Clerk*, Sep 98 - Jun 99
- Draft various memos addressing such issues such as Qualified Immunity and Special Defects
- Conduct legal research on issues ranging from appeal procedural matters to the "Whistleblower" Act

FAC Resp. Exhibit B -- 1752

*Teaching, ELS Language Center, Houston, Texas*
*English Teacher*, Sep 00 – Mar 03
- Teach English as a second language to foreign students and professionals

**MEMBERSHIPS**    **American Association of Justice** (formerly known as ATLA)
- Faculty member at the 2008 Annual Convention in Philadelphia, PA, topic: <u>Paxil, Pregnancy and Birth Defects</u>

**Texas Trial Lawyers Association**

**Houston Trial Lawyers Association**

**Houston Bar Association**

**AFFILIATIONS**    **Child Advocates - Young Professional Division**, Houston Texas, March 02 – present
- Mentor abused and under-privileged children through various activities

**LANGUAGES**    **Fluent in Gujarati**
**Conversational Spanish**

## AFFIDAVIT OF EDWIN ARMISTEAD EASTERBY

BEFORE ME, the undersigned authority on this day personally appeared EDWIN ARMISTEAD EASTERBY, and after having first been duly sworn upon oath, states as follows:

1.      My name is Edwin Armistead Easterby.  I am over the age of 18 years, and I am of sound mind, in all respects legally competent to make this affidavit, and I have personal knowledge of the statements made herein.  I am an attorney duly licensed in, and in good standing with, the State of Texas.

2.      I submit this affidavit pursuant to PTO 6(D), in support of the allocation of common benefit fees in the Vioxx litigation.  In submitting this affidavit, I expressly reserve all, and do not waive any, rights relating to common benefit fees and/or their allocation.

3.      I am an associate with the law firm of Williams, Kherkher, Hart and Boundas, LLP, based in Houston, Texas.  To briefly summarize my professional experience: I graduated from the University of Houston Law Center in 1996.  Following law school I joined the law firm of Looper, Reed & McGraw, P.C., where I worked on a wide variety of cases until 2004, when I left to join my current firm.  Since late 2004, I have spent much of my time representing individuals injured by prescription drugs.

4.      Our firm was involved in the Vioxx litigation in a team effort along with several other law firms.  The structure and significant contributions of our group of firms is described in more detail in the affidavits of Grant Kaiser and Walter Umphrey.  At my firm in particular, we had over ten attorneys contribute substantial work to the Vioxx litigation, including work in three separate jury trials, preparing for additional trials, working up and submitting cases for pre-trial discovery, and assisting in many other ways that are detailed in the affidavits that are being submitted by our attorneys.

5.      As for my personal involvement in the Vioxx litigation, I worked on cases filed in state court in Atlantic City, New Jersey.  I attended multiple hearings and met on several occasions with the Plaintiffs' Steering Committee to discuss various matters, including trial strategy, discovery, and selection of cases for trial.  I was also involved in detailed review of various medical records and files associated with cases selected for trial in Atlantic City, New Jersey in front of the Honorable Carol Higbee.

6.      In continuing through our involvement in the litigation, I spent many hours reviewing, analyzing and understanding the documents, exhibits, trial transcripts, expert reports, liability and expert depositions, legal briefs, and medical and scientific articles necessary to become conversant with the complex factual, liability, medical, scientific and legal issues that were involved.  I have not included any billing for this review and study, and include it merely to demonstrate the amount of time that was necessary to become ready to appear in Court and

1

speak to issues germane to selecting cases for trial.

7.     We had several lawyers, including myself, who spent substantial time working on reviewing case files, discovery and medical records in order to identify cases to put up for discovery and trial in New Jersey.  We even offered to try cases with or for other lawyers who had cases.

8.     Simply put, our firm demonstrated a major commitment to the Vioxx litigation.  I believe the efforts of our firm helped to advance the litigation, and were instrumental in helping to achieve the global settlement.


EDWIN ARMISTEAD EASTERBY


SUBSCRIBED AND SWORN TO BEFORE ME on the 31st day of October, 2008.


GERILYN GORDON
Notary Public, State of Texas
My Commission Expires
March 14, 2010

Gerilyn Gordon
NOTARY PUBLIC IN AND FOR
THE STATE OF TEXAS

2

## AFFIDAVIT OF MARGRET E. LECOCKE

BEFORE ME, the undersigned authority, on this day personally appeared MARGRET E. LECOCKE, and after having first been duly sworn upon oath, states as follows:

1.      My name is Margret E. Lecocke.  I am over the age of eighteen years, and I am of sound mind, in all respects legally competent and duly authorized to make this affidavit, and I have personal knowledge of the statements made herein.  I am an attorney duly licensed in, and in good standing with, the State of Texas.

2.      My education and experience are summarized as follows: I graduated from Barnard College, Columbia University in May 2004. In August 2004, I entered the University of Houston Law Center. During my second year at the Law Center, I began clerking for Williams Bailey Law Firm. Upon graduation and after passing the Texas Bar Exam, I became an associate for Williams Bailey, now Williams Kherkher Hart Boundas, LLP. My practice areas at Williams Kherkher are pharmaceutical and personal injury litigation.

3.      I submit this affidavit pursuant to PTO 6(D), in support of allocation of common benefit fees in the Vioxx Litigation. In submitting this affidavit, I expressly reserve all, and do not waive any, rights relating to common benefit fees and/or their allocation.

4.      I began my employment with Williams Kherkher Hart Boundas L.L.P., formerly know as Williams Bailey Law Firm, in December of 2005.  As a clerk for John Boundas, head of the pharmaceutical docket, I worked extensively in pharmaceutical litigation. During my first 2 years at the firm, I worked exclusively on the firm's fenphen litigation.

5.      In April 2006, Williams Bailey came to an agreement with Wyeth regarding the fenphen litigation. I then transitioned into working on our Vioxx docket. One of our cases had been selected by Merck as a bellwether trial case. Because I had been assigned to many of our firm's trial fenphen cases, I was familiar with the pre-trial process and the factors that our trial lawyers need to know before trial. I therefore assumed the same role in preparing this case for trial. I focused my time on learning the case-specific facts and ascertaining that all medical and proof was in our possession. I also coordinated with treating physicians on the scheduling of their depositions.

6.      During this time period, I was also asked to review the thousands of cases that our consortium of law firms had consolidated. Part of my task was to review the case-specific information such as plaintiff's background information, proof of Vioxx use, and medical records. My ultimate goal, however, was to pick cases that the consortium would nominate as trial cases. I spent months working on this project, both weekends and weekdays.

1

7.      During the time I was associated with the Vioxx litigation I found the quality of work by my colleagues at the Williams Bailey Law Firm, the Kaiser Firm, the Watts Firm, the Umphrey firm and Drew Ranier's firm to be very high.  The level of resources including time, money and commitment to the Vioxx litigation was exactly what one would expect from firms like these who have a history of aggressive prosecution of cases that involve complex issues and hundreds of victims.

MARGRET E. LECOCKE

SUBSCRIBED AND SWORN TO BEFORE ME on the 31st day of October, 2008.

GERILYN GORDON
Notary Public, State of Texas
My Commission Expires
March 14, 2010

NOTARY PUBLIC IN AND FOR
THE STATE OF TEXAS

2

## AFFIDAVIT OF G. ERICK ROSEMOND

BEFORE ME, the undersigned authority, on this day personally appeared James L. Doyle, and after having first been duly sworn upon oath, states as follows:

1. My name is G. Erick Rosemond. I am over the age of eighteen years, and I am of sound mind, in all respects legally competent and duly authorized to make this affidavit, and I have personal knowledge of the statements made herein. I am an attorney duly licensed in, and in good standing with, the State of Texas and the state of California. My resume is attached as Exhibit 1.

2. I submit this affidavit pursuant to PTO 6(D), in support of allocation of common benefit fees in the Vioxx Litigation. In submitting this affidavit, I expressly reserve all, and do not waive any, rights relating to common benefit fees and/or their allocation.

3. I was actively involved in pretrial matters in the Vioxx litigation. I was one of at least ten attorneys who contributed substantial work to the Vioxx litigation, including jury research, mock trial/focus group research, work in three separate jury trials, preparing for additional trials, working up and submitting cases for pre-trial discovery. In particular, I presented the plaintiff's case at a mock trial/focus group session in New Orleans. This task was directly related to issues we relevant to the Barnett and Smith bellwether cases. In preparation for my case presentation, I was responsible for learning the liability and damage issues relevant too the Vioxx litigation and to the individual Smith case. In my opinion, the Mock trial was a success, in that it help define the issues important to a typical juror from New Orleans and the surrounding communities.

4. Regarding specific trail preparation, I was also involved with out experts in the field of cardiology. I interviewed cardiologists and aided in decisions regarding their trial testimony.

SUBSCRIBED AND SWORN TO BEFORE ME on the 30 day of October, 2008.

NOTARY PUBLIC IN AND FOR
THE STATE OF TEXAS

DONNA G. TRAHAN
Notary Public, State of Texas
My Commission Expires
August 26, 2011

1

# Report of Vioxx Hours

Individual Name: G. Erick Rosemond

For the Month of: Aug-06

THIS SPREADSHEET IS FOR TRIAL SPECIFIC WORK ONLY, PLEASE USE THE CORRECT SPREADSHEET FOR PSC WORK, NPC WORK, STATE WORK, OR COMMON FEE APPLICATION WORK

SPECIFIC TRIAL: Smith Trial

| Date (MM/DD/YY) | Hours (e.g. 7.25) | Location | Description of Work | Case Assessment Development, and Administration (Hours) | Pre-Trial Pleadings and Motions (Hours) | Discovery (Hours) | Trial Preparation & Trial Time (Hours) | Appeal (Hours) | Settlement (Hours) | Total Hours by Activity (should equal total in "Hours" field) |
|---|---|---|---|---|---|---|---|---|---|---|
| 08/24/06 | 10.00 | New Orleans, La. | Presentation of Plaintiff's Case in Meck Trial Focus Group and travel from New Orleans to Houston | | | | 10.00 | | | 10.00 |
| 08/23/06 | 10.50 | Houston, Texas | Preparation for mock trial (preparing statement, compilation of demonstrative exhibits) | | | | 10.50 | | | 10.50 |
| 08/22/06 | 7.50 | Houston, Texas | Preparation for mock trial (preparing statement/compilation of demonstrative exhibits) | | | | 7.50 | | | 7.50 |
| 08/21/06 | 8.50 | Houston, Texas | Preparation for mock trial (document/deposition review) | | | | 8.50 | | | 8.50 |
| 08/19/06 | 5.00 | Houston, Texas | Preparation for mock trial (document/deposition review) | | | | 5.00 | | | 5.00 |
| 08/18/06 | 6.00 | Houston, Texas | Preparation for mock trial (document/deposition review) | | | | 6.00 | | | 6.00 |
| 08/17/06 | 4.50 | Houston, Texas | Preparation for mock trial (document/deposition review) | | | | 4.50 | | | 4.50 |
| 08/16/06 | 7.50 | Houston, Texas | Preparation for mock trial (document/deposition review) | | | | 7.50 | | | 7.50 |
| 08/15/06 | 6.50 | Houston, Texas | Preparation for mock trial (review of expert reports) | | | | 6.50 | | | 6.50 |
| 08/14/06 | 6.75 | Houston, Texas | Preparation for mock trial (review of expert reports) | | | | 6.75 | | | 6.75 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| Total Hours | 72.75 | | | | | | 72.75 | | | 72.75 |

Verification: By signing this document, I hereby verify that the information contained in this document is true and correct.

Signed: _____

Date: _____