entertainment club from communicating with club's former general manager. Rules of Prof.Conduct, Rule 4.2.

"We join with the majority of jurisdictions that have analyzed this issue and hold that Indiana's Rule 4.2 does not prohibit an attorney from contacting the former employee of a party adverse to the attorney's client in litigation. In reaching this decision, we are guided primarily by the text of the Rule, which refers only to communication with "a party." Former employees such as Lobosco are clearly not "parties" to the litigation. The Comment then clarifies who qualifies as a "party" in the case of a corporate party. Like the Committee, we find it persuasive that the Comment delineates certain classes of employees to which the Rule applies. No language in the Comment suggests that the Rule should even be applied to all current employees--much less former employees. In so holding, we recognize the danger that allowing such contacts creates and are mindful of the limitations some courts have imposed to address these dangers. We are particularly troubled by the possibility that ex parte interviews could lead to the disclosure of information protected by the attorney-client privilege. While Rule 4.4 prohibits an attorney from inducing anyone to violate an attorney-client privilege, it does not reach the situation where the disclosure of such privileged communication was inadvertent and unsolicited. However, we find no language in Rule 4.2 suggesting any limitations on contact with former employees. Recognizing the drawbacks of Rule 4.2 as applied in this situation, our supreme court with its rule-making authority may wish to revisit this issue. Until then, we hold that Rule 4.2 contains no limitations on the contacts an attorney may make with the former employee of an adverse party. Accordingly, the trial court did not err in denying the Club's motion to strike the Lobosco affidavit." Id 737

----------

**Brown v. St. Joseph County,**
148 F.R.D. 246, N.D.Ind., Apr 12, 1993

Rule of Professional Conduct and corresponding disciplinary rule pursuant to which lawyer is not to communicate, without consent, about subject of representation with "party" lawyer knows to be represented by another lawyer have no application to former employees who no longer have any relationship with corporate party. ABA Rules of Prof.Conduct, Rule 4.2; ABA Code of Prof.Resp., DR 7-104(A)(1).

"Neither Rule 4.2, nor the official Comment, makes any reference to former employees. If the "party" referred to in Rule 4.2 is a corporation, then a former employee who no longer has any relationship with that corporation cannot be equated with that "party." In this regard, the court in *Valassis* observed:
If one party is an organization, the first level of inquiry is whether the person in question is an agent of that organization. If he is not, then he cannot be a party because he lacks any relevant connection to the organization which could reasonably place him in the role of a party. Only if a person is an agent of the organization need a court advance to the next level to determine whether the agent fits within the specific category of organizational agents to which Rule 4.2 is applicable." Id., at 252

"This court must agree with the majority of courts which have held that Rule 4.2 and its analogue, DR 7-104(A)(1), have no application to former employees who no longer have any relationship with a corporation." Id. at 253

34

///////////////////////////

## Iowa

Iowa Rules of Professional Conduct, Rule 32:4.2: (Eff. 7/1/05)

COMMUNICATION WITH PERSON REPRESENTED BY COUNSEL

In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order.

Comment

...

[7] In the case of a represented organization, this rule prohibits communications with a constituent of the organization who supervises, directs, or regularly consults with the organization's lawyer concerning the matter or has authority to obligate the organization with respect to the matter or whose act or omission in connection with the matter may be imputed to the organization for purposes of civil or criminal liability. Consent of the organization's lawyer is not required for communication with a former constituent. If a constituent of the organization is represented in the matter by his or her own counsel, the consent by that counsel to a communication will be sufficient for purposes of this rule. *Compare* rule 32:3.4(f). In communicating with a current or former constituent of an organization, a lawyer must not use methods of obtaining evidence that violate the legal rights of the organization. *See* rule 32:4.4.
...

----------

**Terra Intern., Inc. v. Mississippi Chemical Corp.,**
913 F.Supp. 1306, N.D.Iowa, Jan 25, 1996

Counsel is not prohibited from communicating ex parte with former employees of opposing party, with exception of former employees who are in fact represented by former employer's counsel. Code of Prof.Resp., DR 7-104(A)(1), 40 I.C.A. Ch. 602 App.

"In *Cram,* after reviewing the case law that has grown up around both ethical rules, I concluded that neither DR 7-104(A)(1) nor Rule 4.2 entirely precludes *ex parte* communications with former employees of an opposing party, although there were some limitations on contact with former employees of managerial status and other limitations resulting from the attorney-client privilege. *Cram,* 148 F.R.D. at 265-66. In particular, I noted that a former employee no longer works on the organization's behalf, is unlikely to be represented by the organization's counsel, and unlikely to be a participant in the process leading to resolution of the dispute, *id.* at 260; requiring formal discovery methods rather than informal *ex parte* contacts as the only means of obtaining information would have a deleterious effect on the time and expense necessary to pursue litigation, or even to decide whether to pursue litigation, *id.* at 261; [FN8] and that former employees do not fit within the definition of a "party" with whom *ex parte* contacts are forbidden. *Id.* at 263. On this last point, I rejected the arguments that former employees are "persons having a managerial responsibility," *id.* at 263 (citing the

35

Comment to Rule 4.2, which identifies this category of persons as ones who must be treated as organizational "parties," and the rule of agency law that a statement of a former agent does not constitute an admission of or bind an organization); and that former employees, even former managerial employees, are not persons whose acts or omissions may be imputed to the organization for purposes of liability or whose statements constitute admissions by the organization. *Id.* at 263-65 (citing, *inter alia,* ABA Committee on Professional Ethics and Professional Responsibility, Formal Opinion 91-359 at 3 (1991), and subsequent cases adopting that opinion)." *Id.,* at 1314

...

"Thus, the court concludes that the ethical canons must be read as permitting *ex parte* communications with former employees of an opposing party, with one limited exception. Former employees who are in fact represented by the former employer's counsel, or any counsel, are plainly off limits under the language of the rules. *See* <u>CPR DR 7-104(A)(1)</u> (prohibiting *ex parte* contact with "a party [an attorney] knows to be represented by a lawyer in that matter"); MRPC Rule 4.2 (prohibiting *ex parte* contact with "a party the lawyer knows to be represented by another lawyer in the matter")." Id., at 1315

"The attorney-client privilege cannot be used to justify an absolute proscription against *ex parte* communications with former employees. Significantly, the attorney-client privilege exists only to the extent attorney-client confidences are implicated. The attorney-client privilege "only protects disclosures of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney." ... [The attorney-client privilege] should restrict only what may be asked during *ex parte* communications. *Hanntz,* 766 F.Supp. at 270-71. Thus, an attorney communicating with a former employee of the opposing party "may not inquire into privileged attorney-client communications because '[a]ny privilege existing between the former employee and the organization's counsel belongs to the organization, and can only be waived by the organization.' " *Cram,* 148 F.R.D. at 266 (quoting *Sequa Corp v. Lititech, Inc.,* 807 F.Supp. 653, 668 (D.Colo.1992)). However, Terra has not identified any attorney-client privileged information to which any former employee was privy, although it has asserted that an attorney-client privilege exists as to representation of Mr. Romig. Until and unless the attorney-client privilege is properly asserted, the court will not restrict *ex parte* communications by MCC with any *unrepresented* former employees of Terra." Id., at 1316

///////////////////////////////

## Kansas

Kansas Judicial Branch Rules Adopted by the Supreme Court, Rule 4.2

Communication with Person Represented by Counsel

In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

Comment

This Rule does not prohibit communication with a party, or an employee or agent of a party, concerning matters outside the representation. For example, the existence of a controversy between a government agency and a private party, or between two organizations, does not

36

prohibit a lawyer for either from communicating with nonlawyer representatives of the other regarding a separate matter. Also, parties to a matter may communicate directly with each other and a lawyer having independent justification for communicating with the other party is permitted to do so. Communications authorized by law include, for example, the right of a party to a controversy with a government agency to speak with government officials about the matter.

In the case of an organization, this Rule prohibits communications by a lawyer for one party concerning the matter of representation with persons having a managerial responsibility on behalf of the organization, and with any other person whose act or omission in connection with that matter may be imputed to the organization for purposes of civil or criminal liability or whose statement may constitute an admission on the part of the organization. If an agent or employee of the organization is represented in the matter by his or her own counsel, the consent by that counsel to a communication will be sufficient for purposes of this Rule. Compare Rule 3.4(f). ...

----------

**Turnbull v. Topeka State Hosp.,**
185 F.R.D. 645, 79 Fair Empl.Prac.Cas. (BNA) 1384, D.Kan., May 11, 1999

Model rule of professional conduct precluding attorney from communicating with party known to be represented by another lawyer does not apply to ban ex parte contact with former employees of an organizational party to the litigation that is represented by counsel. Kan.Sup.Ct.Rules, Rule 226, Rules of Prof.Conduct, Rule 4.2.

"The court finds no occasion, moreover, to expand the application of M.R.P.C. 4.2 to prohibit *ex parte* communications with all former and present employees of a party. The rule does not create a blanket of immunities against interviews with knowledgeable employees, only an ethical mandate that the attorney not interview any employee whose position equates with the employer as a party litigant. Rule 4.2 "does not apply to ban ex parte contact with former employees of an organizational party to the litigation that is represented by counsel." *Aiken,* 885 F.Supp. at 1475. With respect to communications with former employees, *Aiken* provides the following instructive analysis:
The court recognizes that a former employee could possess and reveal information which could potentially result in liability being imposed on an organization. The purpose of Rule 4.2, however, is not to prevent the flow of information, even if damaging to a party to the suit. To enlarge the scope of the rule hampers the broad discovery purposes contained in Federal Rule of Civil Procedure 26. In an era when easing or eliminating the unnecessary burdens and expense of litigation is widely viewed as desirable, this court is loath to create limitations on attorney communications which make the litigation process more difficult while providing little in the way of a corresponding benefit. Cf. *Cram,* 148 F.R.D. at 265 (citing *Goff,* 145 F.R.D. at 356) ("[R]estricting an attorney's ability to communicate with former employees strikes an unreasonable balance between protecting a relationship that does not exist and unduly restricting the need for litigants to have access to all relevant information...."). 
885 F.Supp. at 1479.

Although distinguishable in several respects, *Chancellor v. Boeing Company,* 678 F.Supp. 250 (D.Kan.1988) provides guidance with respect to ethical restraints regarding communications with current employees of a party. It held that [a] corporate employee is a 'party' under DR 7-104(A)(1) [ (the predecessor of M.R.P.C. 4.2) ] if he or she has managerial responsibility, his or her acts or omissions in connection with th[e] matter may be imputed to the corporation for purposes of civil or criminal liability, or his or her statements may be an admission on part of the organization.

37

*Id.* at 253. That definition remains applicable despite the adoption of M.R.P.C. 4.2 as the governing guideline."  Id., at 652

----------

### Biocore Medical Technologies, Inc. v. Khosrowshahi,
181 F.R.D. 660, 42 Fed.R.Serv.3d 581, D.Kan., Sep 04, 1998

Under Kansas law, attorney for defendants did not violate rule of professional conduct regarding communication with another represented represented party without consent of counsel when he contacted former employees of plaintiff to set up deposition dates without consent of plaintiff's attorney, where former employees could not impute liability to plaintiff; moreover, although one former employee, the plaintiff's former counsel had attorney-client information, he asserted the attorney-client privilege and refused to provide privileged information. Kan.Sup.Ct.Rules, Rule 226, Rules of Prof.Conduct, Rule 4.2.

"Plaintiffs have not shown that any of the former employees who were contacted in this case meet the management-speaking test. There is no basis to finds that any of them, as former employees, have the ability to bind plaintiffs in a "legal evidentiary sense." *See* Chancellor, 678 F.Supp. at 253. To be a binding admission under Federal Rule of Evidence 801(d)(2)(D), the employee must make the admission during the employment relationship. Fed.R.Evid. 801(d)(2)(D); *Boren v. Sable,* 887 F.2d 1032, 1032 (10th Cir.1989). Former employees no longer have the authority to speak for the organization. *Miller v. Sirloin Stockade,* 224 Kan. 32, 35, 578 P.2d 247, 249 (1978). Because they are not agents of the employer, former employees cannot make a binding admission for the organization. *See Robinson v. Audi Nsu Auto Union,* 739 F.2d 1481, 1487 (10th Cir.1984) (statement not an admission when no agency relationship existed at time statement was made). Plaintiffs also fail to show that these former employees can impute liability to plaintiffs. While some of them may have been involved in the incidents which led to this litigation, plaintiffs have failed to provide evidence of any such involvement. The KBA approach also prohibits contact with former employees to obtain attorney-client information. Again plaintiffs provide no evidence that any of the contacted persons, with the exception of plaintiffs' former counsel, had attorney-client information. While defendants admit that Butler contacted plaintiffs' former counsel, the Court cannot find a violation of Rule 4.2 in this case, where the former employee, who is an attorney, asserted the attorney-client privilege and refused to provide privileged information. The Court therefore finds that Butler did not violate Rule 4.2 regardless of which approach Kansas would use."  Id., at 672

/////////////////////////////

## Kentucky

Kentucky Rules of Professional Condtuct, Rule 3.130(4.2)

Communication with person represented by counsel

In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

COMMENTARY

FAC Resp. Exhibit B -- 1927

...

[2] In the case of an organization, this Rule prohibits communications by a lawyer for one party concerning the matter in representation with persons having a managerial responsibility on behalf of the organization, and with any other person whose act or omission in connection with that matter may be imputed to the organization for purposes of civil or criminal liability or whose statement may constitute an admission on the part of the organization. Prior to communication with a nonmanagerial employee or agent of an organization, the lawyer should disclose the lawyer's identity and the fact that the lawyer represents a party with a claim against the organization. See Rule 4.3. If an agent or employee of the organization is represented in the matter by his or her own counsel, the consent by that counsel to a communication will be sufficient for purposes of this Rule. Compare Rule 3.4(f).

----------

Kentucky Bar Association Ethics Opinion KBA E-381 (7/95)

Question:      May a lawyer representing a client in a matter adverse to an organizational party that is represented by another lawyer, without violating Rule 4.2, communicate about the subject matter of the representation with an unrepresented former employee of the organizational party without the consent of or notification to the organization's lawyer?

Answer:      Yes.

...

OPINION

This question is coming up with increasing frequency.  The Committee is of the opinion that ABA Formal Op. 91-359 provides the correct answer.  That opinion collects and reviews the authorities and arguments, and we need not recite them at length.  It is sufficient to state that after recognizing that neither Rule 4.2 not [? "nor"] the Comments thereto deal with former employees, the Committee concluded that Rule 4.2 does not bar ex parte contacts with an organization's former employees.  We note that a former employee  is no longer subject to the control of the organization nor in a position to speak for the organization, and cannot make vicarious admissions under the state and federal evidence rules.

A lawyer seeking information from a former employee of an organizational party should disclose the lawyer's identity and the fact that the lawyer represents a party with a claim against the organizational party.  See Rule 4.3 and Comment (2) to Rule 4.2.  It is incumbent on the party who knows that its former employees possess privileged information to utilize confidentiality agreements and/or seek protective orders.  See e.g., Nalian Truck Lines at 472.

We also emphasize that if the former employee is personally represented by counsel in that matter, then counsel may not be bypassed.

-----------

**Humco, Inc. v. Noble,**
31 S.W.3d 916, Ky., Nov 22, 2000

39

Former employee with no present relationship with the organizational party is not a "party," for purposes of the rule against ex parte contact with represented adverse parties to an action, and thus the individual is not "adverse" in the sense that his interests are at stake in the litigation.

"The rule does not distinguish between current and former employees of the organization. As noted by the Court of Appeals, Formal Ethics Opinion KBA E-381 provides guidance in this area. In holding that *ex parte* contact with an organization's former employees is not prohibited, the ethics opinion reasoned, "a former employee is no longer subject to the control of the organization nor in a position to speak for the organization, and cannot make vicarious admissions under the state and federal evidence rules." The opinion refers to a formal opinion issued in 1991 by the American Bar Association Committee on Ethics and Professional Responsibility, which explicitly states that <u>Rule 4.2</u> does not extend to former employees, even if they are former managerial employees or those whose conduct might have been the basis for imputing liability to the employer or whose statements could be admitted in evidence as an admission by the employer. <u>[FN6]</u>
<u>FN6.</u> ABA Committee on Ethics and Professional Responsibility, Formal Op. 91-359, at 6 (March 22, 1991).

We believe this to be the sound approach and observe that it has been adopted by the majority of other jurisdictions. The majority rule is consistent with the purposes and policies of <u>Rule 4.2</u>. The purpose of <u>Rule 4.2</u> is not "to prevent the flow of information, even if damaging to a party in a suit." <u>[FN7]</u> Rather, it is to preserve the positions of the parties in an adversarial system and thereby to maintain the protections obtained by employing counsel and prevent disruption of the attorney-client relationship. A former employee with no present relationship with the organizational party is not a "party" under the rule, and thus the individual is not adverse in the sense that his interests are at stake in the litigation." Id., at 920

//////////////////////////////

# Louisiana

Lousiana Rules of Professional Conduct, Rule 4.2

Communication with Person Represented by Counsel

In representing a client, a lawyer shall not communicate about the subject of the representation with:

(a) a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order.

(b) a person the lawyer knows is presently a director, officer, employee, member, shareholder or other constituent of a represented organization and

(1) who supervises, directs or regularly consults with the organization's lawyer concerning the matter;
(2) who has the authority to obligate the organization with respect to the matter; or
(3) whose act or omission in connection with the matter may be imputed to the organization for purposes of civil or criminal liability.

40

----------

**Schmidt v. Gregorio,**
705 So.2d 742, 25,305 (La.App. 2 Cir. 10/27/93), La.App. 2 Cir., October 27, 1993


Rule of Profession Conduct concerning communication with party represented by attorney does not prohibit counsel from conducting informal ex parte interviews with former employees of adversary; former employees are not "parties" represented by attorney for purposes of rule. Schmidt v. Gregorio, App. 2 Cir.1993, 705 So.2d 742, 25,305 (La.App. 2 Cir. 10/27/93), rehearing denied. Attorney And Client ⬳32(12)


"Although this rule is essentially the same as American Bar Association Model Rule of Professional Conduct 4.2, it lacks the following ABA clarifying comment:
In the case of an organization, this rule prohibits communications by a lawyer for one party concerning the matter in representation with persons having a managerial responsibility on behalf of the organization, and with any other person, whose act or omission in connection with the matter may be imputed to the organization for purposes of civil or criminal liability, or whose statement may constitute an admission on the part of an organization.
As there is no existing jurisprudence in Louisiana providing guidance on this issue, the trial court relied upon the ABA comment, and the federal jurisprudence interpreting it, as persuasive authority. In particular, the trial court found that the decision in *Public Serv. Elec. & Gas v. Associated Elec. & Gas,* 745 F.Supp. 1037 (D.N.J.1990) operated to bar such ex parte contact with former employees. However, a recent ABA opinion interpreting Rule 4.2 and subsequent decisions questioning and rejecting *Public Serv., supra,* reach a different result. *Hanntz v. Shiley, Inc.,* 766 F.Supp. 258 (D.N.J.1991) and *Curley v. Cumberland Farms, Inc.,* 134 F.R.D. 77 (D.N.J.1991).
ABA formal ethical opinion 91-359 issued March 22, 1991, states that ABA Rule 4.2 does not, by its terms, apply to former employees. Although courts have used the rule in various ways, the opinion notes that the rule is **3** limited to present employees. The comment under ABA Rule 4.2 limits even present employees with whom contact is prohibited: Ex parte contact should not be made with present corporate employees (1) who have managerial responsibility on behalf of the defendant corporation, (2) whose act or admission concerning the litigation subject matter may be imputed to the corporation, and (3) whose statement may constitute an admission by the corporation.
Since the ABA comment limits unrepresented corporate employees with whom ex parte communication is prohibited to the above three categories, the ABA 91-359 opinion finds the clear implication that communication with all other employees on the subject matter of the litigation is permissible without consent of the corporate attorney. After reviewing various authorities the opinion concludes that:
A lawyer representing a client in a matter adverse to a corporate party that is represented by another lawyer may, without violating Model Rule 4-2, communicate about the subject of the representation with an unrepresented former employee of the corporate party without the consent of the corporation's lawyer.

We find ABA Formal Op. 91-359 and the cited jurisprudence to be persuasive. Accordingly, we hold that the Schmidts' counsel may contact the unrepresented former employees of HCA about the subject of the representation without violating Louisiana State Bar Association Rule of Professional Conduct 4.2, and is not merely relegated to formal discovery." Id., at 743-744

41

----------

### In re Bank of Louisiana/Kenwin Shops Inc., Contract Litigation,
Not Reported in F.Supp.2d, 1998 WL 788776, E.D.La., Nov 10, 1998

"Most courts have found that Rule 4.2 does not generally bar *ex parte* contacts with former employees; however, it proscribes inquiry by opposing counsel into matters subject to the attorney-client privilege. *Torch*, page 3, *citing Action Air Freight, 769 F.Supp. 899, 903-04 (E.D.Pa.1991); Hantz v. Shiley, Inc., 766 F.Supp. 258, 265-69 (D.N.J.1991). See* Vernia, Benjamin *Right of Attorney to Conduct Ex Parte Interviews With Former Corporate Employees, 57 A.L.R.5th 633 (1998)* (most court have concluded ethical rules do not problem *ex parte* communication so long as interviewing attorney does not inquire into privileged matters). [FN2]

FN2. Other decisions following this approach rendered in Louisiana courts are *Jenkins v. Wal-Mart Stores, Inc., 956 F.Supp. 695 (W.D.La.1997); Lirette v. Delchamps Inc., 1996 WL 267991 (E.D.La.1996); Barron Builders & Management Co. v. J & A Conditioning & Refrigeration, Inc., 1997 WL 685352 (E.D.La.1997); Schmidt v. Gregorio, 25-305 La.App. 2 Cir. 10/27/93, 1993 WL 852155 (La. Ct. App 2d Cir.1993).*

Indeed, as noted in *Valassis v. Samelson, 143 F.R.D. 118 (E.D.Mich.1992)*, the American Bar Association Committee held in its ABA Formal Opinion 91-359 issued in March 1991, that Rule 4.2 does not extend to former employees, including former managerial employees. It stated with respect to Rule 4.2:
While the Committee recognizes that persuasive policy arguments can be and have been made for extending the the ambit of Model Rule 4.2 to cover some former corporate employees, the fact remains that the text of the rule does not do so and the comment gives no basis for concluding that such coverage was intended. Especially where, as here, the effect of the rule is to inhibit the acquisition of information about one's case, the Committee is loath, given the text of the Model Rule 4.2 and its Comment, to expand its coverage to former employees by means of liberal interpretation.

*3* Accordingly, it is the opinion of the committee that a lawyer representing a client in a matter adverse to a corporate party that is represented by another lawyer may, without violating Model Rule 4 .2, communicate about the subject of the representation with an unrepresented former employee of the corporate party without the consent of the corporations's lawyer. *Valassis, 143 F.R.D. at 121.*
Nonetheless, former employees are "barred from discussing privileged information to which they are privy." *Orlowski v. Dominick's Finer Foods, Inc., 937 F.Supp. 723, 728 (N.D.Ill.1996).* Thus, as this Court has stated before, "an attorney can investigate the underlying facts leading up to the disputed matter, but he must forgo inquiry into attorney-client communication during the contact. *Torch*, p.3. Thus, no wrongdoing was committed by BOL's counsels in so far as its counsel having communications with former employees such as Evelyn Kelley, so long as such conversations did not concern attorney-client communications." Id., at *2-3

/////////////////////////////////

## Maine

Maine Code of Professional responsibility, Rule 3.6

Conduct During Representation

42

...

(f) Communicating With Adverse Party. During the course of representation of a client, a lawyer shall not communicate or cause another to communicate on the subject of the representation with a party the lawyer knows to be represented by another lawyer in that matter unless the lawyer has the prior consent of the lawyer representing such other party or is authorized by law to do so. An otherwise unrepresented party to whom limited representation is being provided or has been provided in accordance with Rule 3.4(i) is considered to be unrepresented for purposes of this rule, except to the extent the limited representation attorney provides other counsel written notice of a time period within which other counsel shall communicate only with the limited representation attorney.

----------

**Frank v. L.L. Bean, Inc.,**
--- F.Supp.2d ----, --- F.Supp.2d ----, 2005 WL 1125653, D.Me., May 11, 2005
Ex parte contact by employment discrimination plaintiff's attorney with plaintiff's former supervisor did not warrant disqualification of or imposition of sanctions against counsel, absent showing that former supervisor was within scope of defense counsel's representation of its client.


"It is self-evident that a former employee is entirely outside the scope of representation suggested by the commission. A former employee cannot be characterized as "a member of management," and certainly has no responsibilities or duties to the corporation regarding the litigation. Nor can he or she be deemed in any way to represent the corporation or be capable of making any admissions or "major capitulations" on behalf of the corporation....

Finally, and perhaps most importantly, it is unclear how the rule adopted in *Kaiser* and *Armsey,* however wise, can be justified in the face of the plain text of the Maine Bar Rule 3.6(f), which prohibits ex parte communication only when the witness is represented by counsel. These cases do not explain how a former employee--who has presumably severed all other ties with his former employer--could nonetheless be considered to be represented by counsel for that employer."


----------

**Crowley v. L.L. Bean, Inc.,**
143 F.Supp.2d 38, 85 Fair Empl.Prac.Cas. (BNA) 1193, D.Me., May 08, 2001

"L.L. Bean objects to Crowley's reliance on the affidavits of current and former L.L. Bean employees, arguing that Crowley's communications with them violated Maine Bar Rule 3.6(f). Defendant L.L. Bean's Reply Statement of Facts (Docket No. 46) at 2. Defendant specifically objects to the use of the affidavits of John Andretta, Tammy Bickford, James M. Campbell, Michael T. Crossman, Kenneth R. Libby, Steve McCourt, Keith Menard, Bennett Schlaack, and George F. Weekes. *Id.* Plaintiff strenuously disputes that she violated the Maine Bar Rules.

The United States District Court for the District of Maine has adopted the Code of Professional Responsibility of the Maine Supreme Judicial Court. *See* LOCAL RULE 83.3(d). Maine Bar Rule 3.6(f) prohibits communications between an attorney and an adverse party that is represented by counsel. Two of the affidavits at issue were given by individuals who were no longer employed by L.L. Bean at the time of their interview. *See* Affidavits of John Andretta and Keith Menard. There is certainly no violation of the rule with respect to Crowley securing the statement of those former L.L. Bean employees."

43

Id., at FN. 3

/////////////////////////

## Maryland

Maryland Rules of Professional Conduct, Rule 4.2

Communication With Person Represented by Counsel

(a) Except as provided in paragraph (b), in representing a client, a lawyer shall not communicate about the subject of the representation with a person who the lawyer knows is represented in the matter by another lawyer unless the lawyer has the consent of the other lawyer or is authorized by law or court order to do so. If the person represented by another lawyer is an organization, the prohibition extends to each of the organization's (1) current officers, directors, and managing agents and (2) current agents or employees who supervise, direct, or regularly communicate with the organization's lawyers concerning the matter or whose acts or omissions in the matter may bind the organization for civil or criminal liability. The lawyer may not communicate with a current agent or employee of the organization unless the lawyer first has made inquiry to ensure that the agent or employee is not an individual with whom communication is prohibited by this paragraph and has disclosed to the individual the lawyer's identity and the fact that the lawyer represents a client who has an interest adverse to the organization.

...

COMMENT

...

If an agent or employee of a represented person that is an organization is represented in the matter by his or her own counsel, the consent by that counsel to a communication will be sufficient for purposes of this Rule. Compare Rule 3.4 (f). In communicating with a current agent or employee of an organization, a lawyer must not seek to obtain information that the lawyer knows or reasonably should know is subject to an evidentiary or other privilege of the organization. Regarding communications with former employees, see Rule 4.4 (b).

Rule 4.4 Respect for Rights of Third Persons

(a) In representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person, or use methods of obtaining evidence that violate the legal rights of such a person.

(b) In communicating with third persons, a lawyer representing a client in a matter shall not seek information relating to the matter that the lawyer knows or reasonable should know is protected from disclosure by statute or by an established evidentiary privilege, unless the protection has been waived. The lawyer who recieves information that is protected from disclosure shall (1) terminate the communication immediately and (2) give notice of the disclosure to any tribunal in which the matter is pending and to the person entitled to enforce the protection against disclosure.

----------

44

**Sharpe v. Leonard Stulman Enterprises Ltd. Partnership,**
12 F.Supp.2d 502, D.Md., July 21, 1998

Maryland Rule of Professional Conduct prohibiting attorney representing client from communicating about subject of representation with party attorney knows to be represented by another attorney in matter without consent did not prohibit attorneys, who represented former apartment tenants in Fair Housing Act (FHA) suit against landlord, from interviewing individuals formerly employed by landlord as rental agents; former employees did not play any role in alleged "steering" or hold type of position that would permit their acts to be imputed to landlord, and Rule does not prohibit investigation into unprivileged matters. Md.Rule 16-812, <u>Rules of Prof.Conduct, Rule 4.2</u>.

"Having reviewed these opinions, it is clear that the contact in this case has not, and will not, violate <u>Rule 4.2</u>. First, the language of the Rule on its face does not prohibit such contact. Even considering the Comment's extension of the Rule to "any other person whose act or omission in connection with that matter may be imputed to the organization for purposes of civil or criminal liability or whose statement may constitute an admission on the part of the organization," such a prohibition does not encompass the former employees in this case. None of the three former employees here played any role in the alleged "steering" of the plaintiffs in this case; nor did these employees hold the type of position that would otherwise permit their statements or actions to be imputed to the defendants. On its face, then, the scope of the Rule, even considering its Comment, does not extend to such former employees." Id., at 507

----------

**Camden v. State of Md.,**
910 F.Supp. 1115, 106 Ed. Law Rep. 571, D.Md., January 24, 1996

Lawyer representing client in matter generally may not have ex parte contact with former employee of another party interested in matter, including corporations and other organizations, when lawyer knows or should know that former employee has been extensively exposed to confidential client information of other interested party; so long as privileged matters are respected, all other former employees remain fair game. Md.Rules of <u>Prof.Conduct, Rule 4.2</u>.

"The rule of the draft Restatement is not merely the product of the draftsman's imagination nor does it require an interpretation of <u>Rule 4.2</u> that strains to find that a former employee is a represented "party." Ample case authority supports limitations on contact with former employees who have had extensive exposure to privileged information. *See, e.g.,* <u>*Rentclub, Inc. v. Transamerica Rental Fin. Corp.,* 811 F.Supp. 651</u> <u>(M.D.Fla.1992)</u>; <u>*MMR/Wallace Power & Indus., Inc. v. Thames Assocs.,* 764 F.Supp. 712</u> <u>(D.Conn.1991)</u>; <u>*Chancellor v. Boeing Co.,* 678 F.Supp. 250 (D.Kan.1988)</u>; <u>*Williams v.*</u> <u>*Trans World Airlines, Inc.,* 588 F.Supp. 1037 (W.D.Mo.1984)</u>; Hazard & Hodes, *supra,* at § 4.2:107 (<u>Rule 4.2</u> violated where there is high risk former employee will disclose confidential information); *cf.* <u>*Lang v. Superior Court,* 170 Ariz. 602, 826 P.2d 1228</u> <u>(App.1992)</u>.
In addition, a separate source for the no-contact rule is the law of agency which prohibits an agent acquiring confidential information from a principal from sharing it with someone outside the principal-agent relationship when disclosure would impair substantial interests of the principal, a prohibition which holds both during employment, <u>Restatement</u> <u>(Second) of Agency § 395 (1958)</u>, and after, *id.* at § 396.
What the proposed Restatement does, however, is to extract the organizing principle from these various authorities. Only insofar as a former employee has been *extensively* exposed to confidential information and only insofar as an adversary attorney knows (or,

45

it must be added, should reasonably know) of that fact, will *ex parte* contact be precluded. So long as privileged matters are respected, all other former employees remain fair game. This balancing of interests, in the Court's view, is both fair and reasonable." Id., at 1122

////////////////////////////

## Massachusetts

Massachusetts Rules of Prof.Conduct and Comments, Rule 4.2

COMMUNICATION WITH PERSON REPRESENTED BY COUNSEL

In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

...

Comment

...

[4] In the case of an organization, this Rule prohibits communications by a lawyer for another person or entity concerning the matter in representation only with those agents or employees who exercise managerial responsibility in the matter, who are alleged to have committed the wrongful acts at issue in the litigation, or who have authority on behalf of the organization to make decisions about the course of the litigation. If an agent or employee of the organization is represented in the matter by his or her own counsel, the consent by that counsel to a communication will be sufficient for purposes of this Rule. Compare Rule 3.4(f).

----------

Massachusetts bar Association Ethics Opinion No. 82-7 (6/23/82)

Summary: A lawyer may not interview current employees of a corporate defendant without the consent of opposing counsel under DR 7-104(A)(1) when the proposed interview concerns matters within the scope of the employee's employment but may interview current employees about other matters.

....

Recently, however, the Committee on Professional Ethics of the Association of the Bar of the City of New York has canvassed the whole subject in an exhaustive opinion. See Inquiry Reference No. 80-46. Overruling a prior opinion, the opinion concluded that "the principal interest reflected in DR 7-104(A)(1) is the party's right to effective representation of counsel" and "that the corporation's right to effective representation can be guarded adequately only by viewing all present employees of a corporation as 'parties' for purposes of DR 7-104 where the proposed interview concerns matters within the scope of the employee's employment."

46

...

Support for the notion that effective representation of counsel is the touchstone for interpreting DR 7-104(A)(1) is derived from the fact that all who have considered the matter appear to agree that the prohibition of the rule applies only to present, not former, employees of the corporation. The reason is that former employees enjoy no present agency relationship that is being served by the representation of corporate counsel. Even more important, the position we are adopting is also in accord with the law of evidence as exemplified in Federal Rule 801(d)(2)(D), which recognizes an exception to the hearsay rule as to "a statement by his agent or servant concerning the matter within the scope of his agency or employment, made during the existence of the relationship." This rule binds the corporation with respect to admissions by employees far beyond the "control group" of the corporation. Thus for example, in litigation arising out of motor vehicle accidents it is not uncommon that the corporate defendant has only one agent involved, the driver, who will usually not be a management employee. Rule 801(d)(2)(D) permits the driver's admissions about the accident to be introduced against the defendant corporation, and it seems quite in line with the consequences to the corporation to include the driver within the group to be covered by the prohibitions of DR 7-104(A)(1).

...

----------

### Clark v. Beverly Health and Rehabilitation Services, Inc.,
440 Mass. 270, 797 N.E.2d 905, Mass., Oct 29, 2003

Although "no-contact" rule of professional conduct does not prohibit a lawyer from making contact with former employees of a represented corporation, counsel must be assiduous in meeting other ethical and professional standards found outside rule. S.J.C.Rule 3:07, Rules of Prof.Conduct, Rule 4.2.

" While the rule prohibits a lawyer from making ex parte contact with a former employee whom counsel knows to be represented, see _Patriarca, supra,_ at 136 n. 6, 778 N.E.2d 877, it neither prohibits, nor purports to regulate, private contacts between an adverse attorney and the organization's former employees as such.
Beverly Health's attempt to bring former employees within the ambit of the no-contact rule by way of comment [4] is unpersuasive. [FN6] If anything, comment [4] emphasizes that only current employees, and only certain kinds of current employees, properly fall within the prohibitions of the no-contact rule." Id., at274

" By definition, _former_ agents or employees at one time were, but no longer are, "agents or employees." To conclude otherwise would fold former constituents of the organization into its current composition; an illogical result. Second, the use of the past tense in category (2) merely reflects the common assumption that the current agent or employee's allegedly wrongful conduct will have occurred prior to the filing of the complaint ("alleged to have committed")." Id., at 275

"Without limitation, counsel conducting the ex parte interview must pay particular attention to avoid transgressing Mass. R. Prof. C. 4.1, 426 Mass. 1401 (1998), governing a lawyer's duty of truthfulness to a third party; Mass. R. Prof. C. 4.3, 426 Mass. 1404 (1998), governing a lawyer's dealings with unrepresented persons; and Mass. R. Prof. C. 4.4, 426 Mass. 1405 (1998), requiring the lawyer to refrain from using unfair *279 or illegal tactics to obtain evidence. See _Patriarca, supra_ at 139- 141 & nn. 9, 10, 778

47

N.E.2d 877. Further, counsel must also be careful to avoid violating applicable privileges or matters subject to appropriate confidences or protections. [FN10] Existing attorney disciplinary**912 procedures should adequately address any less than scrupulous professional conduct."  Id., at 278-279

----------

**Patriarca v. Center for Living & Working, Inc.,**
438 Mass. 132, 778 N.E.2d 877, 19 IER Cases 453, Mass., Nov 14, 2002
Employer corporation could not invoke rule of professional conduct prohibiting lawyer from communicating with represented party in absence of that party's counsel to claim that all current and former employees were represented, and thus could not be contacted by attorney for former employee who brought wrongful termination action, where there was no factual showing that former employees, who attorney for former employee sought to contact, were actually represented by employer's, or their own personal, counsel. S.J.C.Rule 3:07, Rules of Prof.Conduct, Rule 4.2.

"These four former employees of the center do not come within any category of employee covered by rule 4.2. See *Messing, supra* at 357, 764 N.E.2d 825. None of them is alleged to have committed the wrongful acts at issue in the litigation. There is no evidence, under their job descriptions or otherwise, that any of them had authority on behalf of the corporation to make decisions about the course of the litigation. The question whether any of them exercised managerial responsibility in the matter, however, is less obvious. We said in *Messing* that employees with managerial responsibility in the matter "include[ ] only those employees who have supervisory authority over the events at issue in the litigation." *Id.* at 361, 764 N.E.2d 825. Patriarca alleges that Bailey pressured her to evaluate individuals who were not eligible for personal care services, to falsify documents to make it appear that certain individuals were eligible for personal care services, and finally to present false information to the Department of Medical Assistance by recommending more services for clients than was required. Her surviving claims against the center allege breach of contract and wrongful termination in violation of public policy.

Thus, to find that the former employees in question exercised managerial responsibility in the matter, we must determine either that they were in a position to direct Bailey to conduct himself as alleged, or to cause the center to respond as alleged. The center makes no claim that the occupational therapists and the skills trainer had any such managerial responsibility.
The fourth employee, described by the center as "Director of PCA/Fiscal Intermediary Services and former Business *139 Manager," was allegedly "a 'management' witness to the [p]laintiff's separation which ultimately led to this [c]omplaint," and "was a central part of [the center's] management team." Being a "witness" to the plaintiff's separation does not establish that the fourth employee was involved in supervising, planning, or directing the events and practices that led to this litigation. Based on the record before the motion judge, there is no basis to conclude that the fourth employee "exercise [d] managerial responsibility *in the matter*""  Id., at 138-139

----------

**Amarin Plastics, Inc. v. Maryland Cup Corp.,**
116 F.R.D. 36, D.Mass., Apr 28, 1987

Attorney's ex parte contact with former corporate officer of corporation involved in litigation did not violate Disciplinary Rule prohibiting contact by attorney of opponent who is represented by attorney, where corporation failed to demonstrate that former officer had ongoing agency or fiduciary relationship with corporation, or that his acts or

48

omissions could be imputed to corporation for purposes of its civil liability; mere fact that former officer may be prospective witness did not trigger prohibitions of rule.

//////////////////////////////////

## Michigan

Michigan Rules of Professional Conduct RULE 4.2

COMMUNICATION WITH A PERSON REPRESENTED BY COUNSEL

In representing a client, a lawyer shall not communicate about the subject of the representation with a party whom the lawyer knows to be represented in the matter by another lawyer, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

Comment

....

In the case of an organization, this rule prohibits communications by a lawyer for one party concerning the matter in representation with persons having a managerial responsibility on behalf of the organization, and with any other person whose act or omission in connection with that matter may be imputed to the organization for purposes of civil or criminal liability or whose statement may constitute an admission on the part of the organization. If an agent or employee of the organization is represented in the matter by separate counsel, the consent by that counsel to a communication will be sufficient for purposes of this rule. Compare Rule 3.4(f).

-----------

State Bar of Michigan Standing Committee On Professional and Judicial Ethics

Opinion Number R-2 (4/21/89)

Once suit has been filed, plaintiff's counsel may not communicate with nurses who cared for the client at the time the alleged malpractice occurred and who are currently employed by defendant corporation, unless hospital counsel consents.

Nurses who cared for the client at the time the alleged malpractice occurred and who are not currently employed by defendant hospital, who owe no continuing duty to the corporation, who are not privy to privileged information of the corporation, and who have no ongoing relationship to the corporation, are not "parties" within the provisions of MRPC 4.2 and may be contacted by plaintiff's counsel without the consent of hospital counsel.

...

2. MAY PLAINTIFF'S COUNSEL COMMUNICATE WITH PRESENT AND FORMER EMPLOYEES OF DEFENDANT CORPORATION?

..

49

The inquiry before us states that plaintiff's counsel wants to interview "nurses who cared for my client at the time the alleged malpractice occurred." All the nurses were employees of the hospital at the time of the incident, although some are no longer employees. Under the rationale of Upjohn and Wright, nurses currently employed at the hospital and who cared for the plaintiff at the time of the alleged malpractice are persons whose acts or omissions may be imputed to the organization, or whose statement may constitute an admission. Plaintiff's counsel should not communicate with those nurses without consent of hospital counsel.

With regard to former employees of an organization, in The Law of Lawyering, Prentice-Hall, I988 Supplement, pp. 436-436.1, authors Hazard and Hodes state:

"[4.2 and Comment do] not address communications with former agents and employees, and technically these should be no bar, since former employees cannot bind the organization, and their statements cannot be introduced as admissions of the organization. Speaking with a former employee therefore does not do damage to the policy underlying Rule 4.2 -- undercutting or 'end-running' an on- going lawyer relationship. See Bar Association of the City of New York, Inquiry Ref. No. 80-46 (1980).

*5 "Yet it seems clear that some former employees continue to personify the organization even after they have terminated their employment relationship. . ."

Two jurisdictions which follow the ABA Model Code of Professional Responsibility, Colorado and California, appear to follow that rationale for former employees. The Colorado Ethics Committee determined that a lawyer may not interview a present or former employee of an adverse party organization without the prior consent of opposing counsel if the employee has or had the legal authority to commit the organization to a position regarding the subject matter of the litigation. Colorado Op 69. Where an employee still owes a duty to the organization, is privy to privileged information, entitled to attend meetings, or has an active ongoing relationship with the entity, it is improper for opposing counsel to contact the employee. Mills Land and Water Co. v. Golden West Refining Co., 186 Cal App 3d 116 (Cal App Ct I986); Hewlett-Packard Co v. Superior Court, 252 Cal Rptr 14 (1988). See also, Florida Op 88- 14 (3/7/89), stating that a former employee who has not maintained ties to the corporation, is not subject to the control or authority of the corporate lawyer, and is no longer in a position to speak for the corporation, is not covered under Rule 4.2. None of these factors are present in this inquiry regarding contact with former employee nurses.

". . . lower level and uninvolved former employees are properly analyzed as free witnesses who may be interviewed by a lawyer opposing the organization. . . As for intermediate and higher level former employees, it would seem that they should be allowed to decide for themselves whether they are still so attached to the organization as to refuse to give statements except in the presence of the organization's lawyer." Hazard and Hodes, p 436.1

Although former employees who cared for plaintiff at the time of the alleged malpractice are not "uninvolved" in the matter, sufficient protection is provided under MRPC 4.3:

"Rule 4.3 Dealing With an Unrepresented Person

"In dealing on behalf of a client with a person who is not represented by counsel, a lawyer shall not state or imply that the lawyer is disinterested. When the lawyer knows or reasonably should know that the unrepresented person misunderstands the lawyer's role in the matter, the lawyer shall make reasonable efforts to correct the misunderstanding."

50

Thus, pursuant to MRPC 4.3 plaintiff's counsel may communicate with nurses who are former employees of the hospital corporation without consent from hospital counsel.

----------

### Smith v. Kalamazoo Ophthalmology,
322 F.Supp.2d 883, W.D.Mich., Apr 21, 2004

Plaintiff's counsel's ex parte contacts with unrepresented former employee of defendant did not violate Michigan's ethical proscription against communications with person represented by counsel, since former employee had no agency relationship with defendant at the time and her interests were even adverse to defendant's.

"Having considered the reasons advanced by the majority of courts, which conclude that Rule 4.2 does not apply to ex parte contacts with former employees, and the minority of courts, which hold that Rule 4.2 applies to former employees at least in some limited circumstances, this Court concludes that the majority view is more persuasive. Specifically, a situation involving a former employee does not implicate the underlying policies behind Rule 4.2, and neither Rule 4.2 nor the comment to the rule can be reasonably interpreted to refer to former employees, who cannot bind the employer by their statements. Cram v. Lamson & Sessions Co., 148 F.R.D. 259, 265 (S.D.Iowa 1993). As the court in Valassis v. Samelson, 143 F.R.D. 118 (E.D.Mich.1992), observed, under Rule 4.2 and the comment,
If one party is an organization, the first level of inquiry is whether the person in question is an agent of that organization. If he is not, then he cannot be a party because he lacks any relevant connection to the organization which could reasonably place him in the role of a party.
Id. at 123. Under this commonsense analysis of Rule 4.2, the Court concludes that Piper's contact with Salliotte was not improper because Defendant has not shown that Salliotte was in some type of an agency relationship with Defendant at the time she contacted Piper. At the time of the contact, Salliotte was not employed by Defendant and, in fact, her interests were even adverse to Defendant's interests. [FN1]

FN1. Defendant cites Formal Ethics Opinion R-2 (Apr. 21, 1989) by the professional and judicial ethics committee of the State Bar of Michigan which states that Rule 4.2 prohibits ex parte contact where the former employee "is privy to privileged information." Mich. Prof'l & Judicial Ethics Comm. Informal Op. R-2 (1989). As Defendant notes, such opinions are not binding upon this Court, City of Kalamazoo, 125 F.Supp.2d at 232 n. 4. The Court has reviewed that opinion and, in light of other authorities that the Court finds more persuasive in light of the plain language of Rule 4.2 and the comment, the Court declines to follow that opinion. Furthermore, the Michigan opinion is at odds with and pre-dates the ABA opinion, which presents a more thorough analysis of the issue.

The Court notes that although ex parte contact with former employees is not subject to Rule 4.2, former employees "are 'barred from discussing privileged information to which they are privy.' " In re Bank of La./Kenwin Shops Inc., Contract Litig., No. CIV.A.97MDL No. 1193, 1998 WL 788776, at *3 (E.D.La. Nov. 10, 1998) (quoting Orlowski v. Dominick's Finer Foods, Inc., 937 F.Supp. 723, 728 (N.D.Ill.1996)). Attorneys also have a responsibility to refrain from inquiring into areas that may be subject to the attorney-client privilege or the work product doctrine. Cram, 148 F.R.D. at 266. Therefore, an attorney may have ex parte contact with an unrepresented former employee of an organizational party, subject to the limitation that the attorney may not inquire into areas *891 subject to the attorney-client privilege or work product doctrine. See Palmer v. Pioneer Hotel & Casino, 19 F.Supp.2d 1157, 1167 (D.Nev.1998); Breedlove v. Tele-Trip

51

<u>Co.,</u> No. 91 C 5702, 1992 WL 202147, at *2 (N.D.Ill. Aug. 14, 1992)." Id., at 890-891

///////////////////////////////////

## Minnesota

Minnesota Rules of Professional Conduct, Rule 4.2

Communication with Person Represented by Counsel

In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so. A party who is a lawyer may communicate directly with another party unless expressly instructed to avoid communication by the lawyer for the other party, or unless the other party manifests a desire to communicate only through counsel.

COMMENT

...

In the case of an organization, this Rule prohibits communications by a lawyer for one party concerning the matter in representation with persons having a managerial responsibility on behalf of the organization, and with any other person whose act or omission in connection with that matter may be imputed to the organization for purposes of civil or criminal liability or whose statement may constitute an admission on the part of the organization. If an agent or employee of the organization is represented in the matter by counsel, the consent by that counsel to a communication will be sufficient for purposes of this Rule. Compare Rule 3.4(f).

...

----------

### Olson v. Snap Products, Inc.,
183 F.R.D. 539, D.Minn., Oct 19, 1998

Contacts by plaintiff's attorney with former managerial employees of corporate defendant did not violate rule prohibiting ex parte contacts, where attorney informed former employees of his representation of the plaintiff, did not ask either of them to discuss matters that would be privileged. <u>Olson v. Snap Products, Inc.,</u> D.Minn.1998, 183 F.R.D. 539. Attorney And Client ⊙—32(12)

"Some Courts, however, have recognized circumstances in which the concerns reflected in the comment to <u>Rule 4.2</u> survive the termination of the employment relationship, and these Courts employ a flexible approach when applying the Rule to former employees, "calling for an assessment of the likelihood that the contact in question has actually impaired the policy underlying <u>Rule 4.2,</u> of protecting privileged information from being disclosed to an opponent in litigation." <u>Spencer v. Steinman, 179 F.R.D. 484, 491 (E.D.Pa.1998);</u> see also, <u>Orlowski v. Dominick's Finer Foods, Inc.,</u> supra at 728 (although <u>Rule 4.2</u> does not apply to former **\*545** employees, former employees would be barred

52

from divulging any privileged information).

In our view, this latter, flexible approach stakes out a sensible and policy-oriented middle ground worthy of adherence. While matters of this sort may warrant "bright-line" rules, seldom do such categorical pronouncements survive variant factual applications. This pliant rule gives recognition to the underlying policy of Rules 4.3 and 4.4 of the Minnesota Rules of Professional Conduct, by prohibiting an attorney from unfairly taking advantage of unrepresented parties when acting on behalf of a client, while still allowing leeway for the proper search for the truth. Therefore, the pivotal question, in evaluating the propriety of Dolven's contacts with Snap's former employees, is the likelihood that any information gathered by Dolven actually intruded upon any legally privileged matters."   Id., at 544-545

----------

**Paulson v. Plainfield Trucking, Inc.,**
210 F.R.D. 654, D.Minn., Apr 29, 2002

In conducting proposed ex parte contacts with corporate defendant's current or former employees, plaintiff's attorney or investigator for plaintiff would be required on pain of sanctions to: fully disclose his or her representative capacity to the employee; state the reason for seeking the interview; and inform the employee or former employee of his or her right to refuse to be interviewed. 52 M.S.A., Rules of Prof.Conduct, Rule 4.2.

"Rule 4.2 clearly does not limit Paulson's access to Plainfield's **former** employees. Unlike current employees, their statements cannot be construed as admissions, as the statements would not be made during the course and scope of their employment. See, _Rule 801, Federal Rules of Evidence_. Moreover, there is no indication that these individuals were officials of the organization, or were responsible for implementing the advice of the corporation, and there is no contention, other than as to Utley, that the acts or omissions could be imputed to the organization. We, therefore, conclude that Paulson can conduct ex parte interviews of those **former** employees, excluding Utley, assuming that those individuals are not represented by counsel.
In order to ensure the dictates and purpose of the Rule are carried out, we will impose certain limitations on Paulson's contacts with Jankowski and Plainfield's current or former employees. Thus, in conducting the proposed ex parte contacts, we direct the attorney or the investigator for Paulson to fully disclose his or her representative capacity to the employee; state the reason for seeking the interview as it concerns Paulson and Plainfield; and inform the employee of his or her right to refuse to be interviewed, and his or her right to have their own counsel present. See, _Midwest Motor Sports, Inc. v. Arctic Cat Sales, Inc.,_ supra at 1157; _Cole v. Appalachian Power Co.,_ supra at 980. "The attorney or investigator shall not, under any circumstances, seek to obtain attorney-client or work product information from the employee." _Midwest Motor Sports, Inc. v. Arctic Cat Sales, Inc.,_ supra at 1157; see also, _Cole v. Appalachian Power Co.,_ supra at 980. Failure to abide by these directions will result in the imposition of appropriate sanctions."
Id., at 659

///////////////////////////////

## Mississippi

Mississippi Rules of Prof.Conduct, Rule 4.2

53

## COMMUNICATION WITH PERSON REPRESENTED BY COUNSEL

In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

Comment

...

In the case of an organization, this rule prohibits communications by a lawyer for one party concerning the matter in representation with persons having a managerial responsibility on behalf of the organization, and with any other person whose act or omission in connection with that matter may be imputed to the organization for purposes of civil or criminal liability or whose statement may constitute an admission on the part of the organization. If an agent or employee of the organization is represented in the matter by his or her own counsel, the consent by that counsel to a communication will be sufficient for purposes of this Rule. Compare Rule 3.4(f). ....

----------

Mississippi Bar Ethics Opinion No. FIO #215 (3/4/94)

### EX PARTE CONTACT WITH FORMER EMPLOYEES OF A REPRESENTED PARTY

IN REPRESENTING A CLIENT, A LAWYER MAY ETHICALLY COMMUNICATE, EX PARTE, WITH AN UNREPRESENTED INDIVIDUAL THAT WAS FORMERLY EMPLOYED BY A REPRESENTED PARTY. NEITHER THE TEXT NOR THE COMMENTS TO RULE 4.2 PROHIBITS SUCH CONTACTS; HOWEVER, OTHER PROFESSIONAL RULES OF CONDUCT PROSCRIBE THE ATTORNEY'S CONDUCT IN DEALING WITH UNREPRESENTED INDIVIDUALS.... 

### PRIOR OPINIONS

...

In Opinion No. 192, rendered less than three months after Opinion No. 189, it was opined that it was improper, under Rule 4.2, for a lawyer to conduct an ex parte interview of a former employee of a represented party if the former employee's actions could be imputed to the corporation for the purposes of civil liability or whose statements might constitute an admission on the part of the corporation. This conclusion was reached, in part, because the former employee possessed testimony that could either exonerate or implicate his former employer.

Although not withdrawn and not addressed by the ad hoc committee, Ethics Opinion No. 141 allows a lawyer representing a personal injury claimant to communicate with an unrepresented party concerning the facts of the claim and the availability of liability coverage. The Opinion noted that Rule 4.2 was inapplicable to the situation presented because, at the time of the contact, the adverse party was not actually represented by a lawyer in the matter.

...

54

As stated above, Rule 4.2's proscription is clear in the context of private parties. The analysis becomes more complicated when one of the parties is a corporate enterprise or other organization. The identification of who is a "party" represented by counsel is less than clear. In this regard, the comment to Rule 4.2 states:

In the case of an organization, this rule prohibits communications by a lawyer for one party concerning the matter in representation with persons having a managerial responsibility on behalf of the organization, and with any other person whose act or omission in connection with that matter may be imputed to the organization for purposes of civil or criminal liability or whose statement may constitute an admission on the part of the organization. (emphasis added)

The issue, then, is whether the above comments to Rule 4.2 could be interpreted broadly enough to include some, all, or none of the former employees of the represented organization.

The Committee finds it significant that the above comment is identical to the comment to ABA Model Rule 4.2 and that the ABA Professional Responsibility Committee, in Formal Opinion No. 91359, declined to expand the application of Rule 4.2 to prohibit ex parte contact with all former employees. The ABA Committee noted:

...the fact remains that the text of the rules does not do so and the comment gives no basis for concluding that such coverage was intended. Especially where, as here, the effect of the rule is to inhibit the acquisition of information about one's case, the committee is loathe, given the text of Model Rule 4.2 and its comments, to expand its coverage to former employees by means of liberal interpretation.

...

There is a valid concern in preventing former corporate employees from inadvertently disclosing to an interviewing attorney privileged material obtained or given by them during the course and scope of their employment. This interest does not, however, justify a blanket ban on communications and can be guarded by less stringent measures. See Polycast Technology Corp. v. Uniroyal Inc., 129 F.R.D. at 627-28; Alaska Ethics Opinion No. 91-1 (Jan. 1991). This approach is further supported by the fact that the attorney/client privilege only protects disclosure of communications not underlying facts. In other words, a former employee should not be asked what they said or communicated to the corporate attorney but, rather, inquiries should be limited to what the witness saw or knows about the matter being investigated. Any concern about the likelihood that some former employees will reveal privileged information can best be addressed on a case-by-case basis. It seems clear that counsel for the corporation would be aware of the former employees that possess such information and, in those circumstances, could seek court protection.

CONCLUSION

It is the Committee's opinion, after thorough review of the varying analysis and approaches, that no former employees are "off limits" under Rule 4.2, unless, of course, they are known to be represented by counsel concerning the matter at issue. As noted in Opinion No. 141, the lawyer, in conducting such an interview, must not knowingly make a false statement of material fact or law (Rule 4.1), must not state or imply that the lawyer is disinterested and must never give advice to the unrepresented person other than the advice to obtain counsel (Rule 4.3). Of course, the interviewing lawyer has an affirmative duty under Rule 4.3 to clear up any misunderstanding by the unrepresented

55

party about the lawyer's role. The lawyer must make clear that he is not disinterested and must stick to facts.

----------

**White v. Illinois Cent. R. Co.,**
162 F.R.D. 118, S.D.Miss., Jun 23, 1995

Railroad accident victim's attorney did not have to obtain permission from attorney for railroad prior to having his investigator interview a former railroad employee, particularly where ex-employee had shouldered no managerial responsibilities, and ex-employee's statements could not be imputed to railroad. Miss.Rules of Prof.Conduct, Rule 4.2.

"Ronald Long was the foreman of the crew on which the Plaintiff was working at the time he was injured. His act or omission, if any, might be imputed to the Defendant and his statement might constitute an admission on the part of the Defendant. Thus, it was improper under Rule 4.2 for the investigator hired by Plaintiff's attorney to have any communication with Long.

The other witness in question, Sammy Weaver, was a fellow employee of the Plaintiff at the time of the accident, but is no longer employed with Defendant. Since Mr. Weaver was not employed with the Defendant at the time of the interview, it was not improper to interview him. Even if Mr. Weaver had still been employed by Defendant at the time of the interview, it would not have been improper under Rule 4.2 for the ***120** investigator to communicate with this witness unless Weaver had managerial responsibility (which he did not), unless his act or omission may be imputed to the Defendant (which under the circumstances it may not) or unless his statement would constitute an admission on the part of the Defendant (which it does not.)" Id., at 119-120

////////////////////////////

## Missouri

Missouri Rules of Prof.Conduct, Rule 4.2

COMMUNICATION WITH PERSON REPRESENTED BY COUNSEL

In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

Comment

...

In the case of an organization, this rule prohibits communications by a lawyer for one party concerning the matter in representation with persons having a managerial responsibility on behalf of the organization, and with any other person whose act or omission in connection with that matter may be imputed to the organization for purposes of civil or criminal liability or whose statement may constitute an admission on the part of

56

the organization. If an agent or employee of the organization is represented in the matter by his or her own counsel, the consent by that counsel to a communication will be sufficient for purposes of this Rule. Compare Rule 3.4(f). ...

----------

Missouri Bar Informal Advisory Opinion Number: 20030098

QUESTION: Attorney is counsel for parties in several lawsuits and desires to contact former employees of adverse corporate defendants. Two cases are in federal court and one is in state court. The employees were mid-level managerial employees or territorial representatives, but Attorney does not believe any of them would be directly involved in the defense of any of the lawsuits. May Attorney contact these former employees?

ANSWER: For cases already filed in federal court, Attorney may follow the interpretations of Rule 4-4.2, officially expressed by that federal court or superior courts in that circuit. The Missouri federal courts have taken the position that it is permissible to contact former employees. If the case is not yet filed in federal court, but anticipated to be filed in federal court, the state court interpretation applies until it is actually filed in federal court. For a case in state court, Attorney may not contact former employees if they fall within the three categories listed in the second paragraph of the comment to Rule 4-4.2. The category most likely to apply to Attorney's case is "persons having managerial responsibility on behalf of the organization." If the employee had management responsibility, Attorney may not make direct contact.

----------

Missouri Bar Informal Advisory Opinion Number: 990129

QUESTION: Attorney's firm represents individuals who are suing a company as a result of an auto accident. Attorney has taken the deposition of the driver involved in the collision and learned that the company may have not always done all of the preventive maintenance required by law. This is an issue in the lawsuit. Attorney would like to speak with former employees. Attorney has the names of employees who were drivers and mechanics, not managerial employees. May Attorney contact the above described former employees without the knowledge or consent of the defendant's attorney?

ANSWER: Under the second paragraph of the comment to Rule 4-4.2, Attorney may not directly contact current or former employees if they fit within any of these categories: "persons having the managerial responsibility on behalf of the organization, and with any other person whose act or omission in connection with that matter may be imputed to the organization for purposes of civil or criminal liability or whose statement may constitute an admission on the part of the organization." It appears that some of the employees whom Attorney would like to contact may fall within one of these categories. However, it is possible that some of the employees described do not fall within any of these categories. If any of the three categories apply to an individual, Attorney may not contact that individual without going through the employer's counsel, unless the individual has his or her own counsel related to this matter.

----------

**Smith v. Kansas City Southern Ry. Co.,**
87 S.W.3d 266, Mo.App. W.D., Jun 28, 2002

57

Rule governing ex parte contacts with represented parties did not prohibit contact between counsel of employee, who was injured while working as trackman and who brought action against railroad for personal injuries under the Federal Employers Liability Act (FELA), and former field supervisor of railroad; rule and its respective counterparts did not apply to former employees who were not expressly represented by their own counsel or counsel for organization, and even if rule applied to former managerial employees, supervisor did not fit within classification.

"There is, again, nothing in the Rule or Comment suggesting, by the words chosen, any intent to cover former employees. There is substantial merit in reasonably consistent rules regulating professional conduct throughout the states. This is true particularly when lawyers, organizations and their employees (current and former) may operate or be located in various states. No persuasive argument is *275 made that Missouri should stand virtually alone in applying Rule 4-4.2 to former employees.
Even assuming that _Pitts_ indicates some intent to apply Rule 4-4.2 to former employees, the only basis for KCS' argument and the trial court's ruling was that House was a "managerial employee" under the Rule. Id., at 274-275

"The common thread of the majority of these cases is the view that managers are not protected by the anticontact rule merely because they have some supervisory responsibility in the organization. In particular, low level supervisors are not protected simply because they are managers unless their acts are imputable to the organization or they can make admissions that are binding on the organization. This approach is quite consistent with the Court's explanation in _Pitts_ that it did not wish to employ a strictly hierarchical test.
There is no indication in the record that House's position would satisfy any of these tests. He was not Smith's supervisor at the time of the accident nor was he responsible for the maintenance of the equipment that Smith contended to be unsafe. Nor did House have management control over any litigation, let alone the litigation at hand. Nor did he consult with the organization's attorney while in its employment about litigation matters or have any responsibility for creating company policy.
Finally, this limited approach to who constitutes a manager under Rule 4- 4.2 is consistent with the draft proposed revisions by the ABA to Model Rule 4.2. Acknowledging criticism of the phrase in the current comment to Rule 4.2 of "persons having a managerial responsibility on behalf of the organization" as vague and overly broad, the proposed new comment to Rule 4.2 states, in part: "[t]his Rule prohibits communications with a constituent of an organization who supervises, directs or regularly consults with the organization's lawyer concerning the matter or has authority to obligate the organization with respect to the matter...." A restrictive view of the term "managerial responsibility" is consistent, as well, with the twin objectives of the ethics rule to protect the rights of a represented litigant from unfair dealing and, at the same time, not to unduly restrict informal fact investigation. Such a view also discourages improper use of the ethics rules by an organization in an attempt to hide or conceal information."
Id., at 276

----------

**Tipton v. Sonitrol Sec. Systems, Inc.,**
958 F.Supp. 447, 70 Empl. Prac. Dec. P 44,583, 83 Fair Empl.Prac.Cas. (BNA) 1811, E.D.Mo., November 27, 1996

Missouri Supreme Court rule governing attorney's communications with persons represented by counsel did not prohibit discrimination plaintiff's counsel from communicating about the subject of the representation with unrepresented former managerial employee of defendant corporation without consent of corporation's attorney. V.A.M.R. 4, Rules of Prof.Conduct, Rule 4.2.

58

"Risk Control argues that *State ex rel. Pitts v. Roberts,* 857 S.W.2d 200 (Mo.1993), should be read to bar *ex parte* contact with former managerial employees of a company when the company is represented by counsel. However, this Court finds that neither *Pitts* nor any other case applying Missouri law has directly addressed this question. Further, the advisory committee rulings cited by Risk Control do not bind this Court because these informal opinions are expressly non-binding. *See* Missouri Supreme Court Rule 5.30(b). The language of Rule 4.2 does not on its face involve, or in any way prohibit, *ex parte* contact with former managerial employees. *See* Aiken v. Bus. and Indus. Health Group, Inc., 885 F.Supp. 1474, 1476 (D.Kan.1995) (interpreting Kansas Supreme Court Rule 4.2, which is identical to Missouri's Rule 4.2); *see also* Lirette v. Delchamps Inc., 1996 WL 267991, at *1 (E.D.La. May 20, 1996). There is no indication in the text of Rule 4.2 or its ***452** comment that the construction urged by Risk Control is warranted. Indeed, ABA Model Rule 4.2 and its comment are identical to Missouri Rule 4.2 and its comment, and the ABA Committee on Ethics and Professional Responsibility issued a formal opinion in 1991 which determined that "the text of the Rule does not [cover former employees] and the comment gives no basis for concluding that such coverage was intended." ABA Comm. on Ethics and Professional Responsibility, Formal Op. 91-359 (1991). The opinion concludes that a lawyer may without violating Model Rule 4.2 communicate about the subject of the representation with an unrepresented former employee of the corporate party without the consent of the corporation's lawyer. *Id.; see also* Aiken, 885 F.Supp. at 1477 (providing comprehensive discussion of Rule 4.2 and noting that a "clear majority" of the courts interpreting Rule 4.2 concur with the conclusion reached in the ABA's formal opinion). This Court agrees with this reasoning, and declines Risk Control's invitation to extend Rule 4.2's meaning of "party" beyond its textual moorings. Risk Control's motion for a protective order will therefore be denied." Id., at 452-453

////////////////////////////////

## Montana

Rule Rule of Professional Conduct 4.2

Communication with Person Represented by Counsel

In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

----------

### Porter v. Arco Metals Co., Div. of Atlantic Richfield Corp.,
642 F.Supp. 1116, D.Mont., Sep 04, 1986

Employee's counsel in suit based on alleged wrongful demotion was not precluded from conducting ex parte interviews of employees present at time of events in question, so long as he did not attempt to interview present or former employees with managerial responsibilities concerning matter involved in litigation and did not inquire into privileged areas of communication. ABA Rules of Prof.Conduct, Rule 4.2; ABA Code of Prof.Resp., DR7-104(A)(1).

59

"It is apparent from the *Upjohn* decision that while the attorney-client privilege may extend to Arco's former employees, it applies only to communications between those employees and the company's counsel. Moreover, *Upjohn* must be considered in its context--as a case concerned with what information may be protected from disclosure under the attorney-client privilege.

This case presents a different issue. It does not involve a question of whether confidential communication have been made between counsel for Arco and its present or former employees. Plaintiff's counsel has interviewed former employees of defendant as prospective witnesses. This presents no question of privilege unless counsel asks the employees to divulge confidential communications. More importantly, Rule 4.2 does not prohibit this type of conduct by a party's attorney. The comment makes clear that even current employees may be contacted *ex parte* so long as they do not have significant managerial responsibility in the matter in question.

This conclusion finds support from other courts interpreting similar situations. Under the ABA's former Code of Professional Responsibility, [FN2] the Supreme Court of the State of Washington held that the plaintiff's counsel was entitled to initiate *ex parte* contacts with the defendant's employees. *Wright by Wright v. Group Health Hospital*, 103 Wash.2d 192, 691 P.2d 564 (1984). In a thorough and well-reasoned opinion, the court held that the term "party" as used in the Code of Professional Responsibility encompasses "only those employees who have the legal authority to 'bind' the corporation in a legal evidentiary sense, i.e., those employees who have 'speaking authority' for the corporation." *Id.*, 691 P.2d at 569. *See also Frey v. Dept. of Health and Human Services*, 106 F.R.D. 32 (E.D.N.Y.1985).

The Court agrees with the reasoning set forth in *Wright* and *Frey* and concludes that plaintiff's *ex parte* conduct is prohibited neither by Rule 4.2 nor by the attorney-client privilege, so long as plaintiff does not attempt to interview present or former employees with managerial responsibilities concerning the matter in litigation, and does not inquire into privileged areas of communication. This conclusion is consistent with the Model Rules, [FN3] with the *Upjohn* decision, and with the Federal Rules of Civil Procedure regarding discovery practices." Id., at 1118

//////////////////////////////

## Nebraska

Nebraska Rules of Professional Conduct, Rule 4.2 (effective 9/1/05)

COMMUNICATION WITH PERSON REPRESENTED BY COUNSEL

In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order.

COMMENT

...

[7]  In the case of a represented organization, this Rule prohibits communications with a constituent of the organization who supervises, directs, or regularly consults with the organization's lawyer concerning the matter or has authority to obligate the organization with respect to the matter or whose act or omission in connection with the matter may be imputed to the organization for purposes of civil or criminal liability.  Consent of the organization's lawyer is not required for communication with a former constituent.  If a constituent of the organization is

60

represented in the matter by his or her own counsel, the consent by that counsel to a communication will be sufficient for purposes of this Rule.  Compare Rule 3.4(f).  In communicating with a current or former constituent of an organization, a lawyer must not use methods of obtaining evidence that violate the legal rights of the organization.  See Rule 4.4.

...

----------

Nebraska State Bar Opinion 94-5

FORMER EMPLOYEES OF A CORPORATE PARTY MAY BE INTERVIEWED BY ADVERSE COUNSEL WITHOUT THE PERMISSION OF CORPORATE COUNSEL IF THE FORMER EMPLOYEES ARE NOT INDIVIDUALLY REPRESENTED. ANY SUCH INTERVIEWS SHOULD NOT INQUIRE AS TO PRIVILEGED ATTORNEY-CLIENT COMMUNICATIONS.

FACTS

In Opinion 91-3 the Committee addressed the issue of whether a plaintiffs attorney may ethically interview present or former employees of a defendant corporation. The Committee has been requested to clarify its position regarding interviews of former employees of a corporation by adverse counsel.

....

In recent years a number of advisory opinions have been rendered indicating that an attorney for a plaintiff may ethically interview former employees of a defendant corporation without the permission of the corporate counsel.

...

ABA Formal Opinion 91-359, 901:140 ABA/BNA Lawyers Manual on Professional Conduct also addressed this issue and concluded that the prohibition does not extend to former employees of an opposing corporate party. The opinion stated the following in regard to pertinent case law [Model Rule of Professional Conduct 4.2 is substantially identical to DR 7-104 (A)]:

Most recently, in an aside in a case dealing with current employees under DR 7-104 (A) (1), the New Yorke Court of Appeals noted its agreement with the Appellate Division that the rule applies "only to current employees, not to former employees." Niesig v. Team I et al, 76 N.Y.2d 363, 558 N.E.2d 1030 (1990). See also Wright by Wright v. Group Health Hosp. 103 Wash. 2d 192, 691 P.2d 564 (1984) (reasoning that former employees could not possibly speak for or bind the corporation, and therefore interpreting DR 7-104 (A) (1) as not applying to them); and Polycast Technology Corp. v. Uniroyal, Inc., 129 F.R.D. 621 (S.D.N.Y. 1990) (holding that DR 7-104 does not bar contacts with former corporate employees, at least in absence of a showing that the employees possessed privileged information).

On the other hand, other courts have held that former employees are covered (it is usually phrased that they will be considered "parties" for ex parte contact purposes) under certain circumstances. Thus, Rule 4.2 has been held to bar ex parte contacts with former employees who, while employed, had "managerial responsibilities concerning the matter in litigation." Porter v. Arco Metals, 642 F.Supp. 1116, 1118 (D.Mont. 1988). In Amarin Plastics v. Maryland Cup Corp., 116 F.R.D. 36 (D.Mass. 1987) the Court, while recognizing the possible applicability of Rule 4.2 to former employees, declined to apply it on the facts of that case. It noted, however, the additional possibility that communications between a former employee and his former corporate

61

employer's counsel may be privileged. Id., at 41. See also In re Coordinated Pre-Trial Proceedings in Petroleum Products Antitrust Litigation, 658 F.2d 1355, 1361 n.7 (9th Cir. 1981), cert. denied, 455 U.S. 99 (1982) (noting that the rational of Upjohn v. United States, 449 U.S. 383 (1981), with respect to corporate attorney-client privileges applies to former as well as current corporate employees. In Public Service Electric and Gas Company v. Associated Electric and Gas Ins. Services, Ltd., 745 F.Supp. 1037 (D.N.J. 1990) the court interpreted Rule 4.2 to cover all former employees.

The ABA opinion concluded by stating:

Accordingly, it is the opinion of the Committee that a lawyer representing a client in a matter adverse to a corporate party that is represented by another lawyer may, without violating Model Rule 4.2 communicate about the subject of the representation with an unrepresented former employee of the corporate party without the consent of the corporation's lawyer.

With respect to any unrepresented former employee, of course, the potentially-communicating adversary attorney must be careful not to seek to induce the former employee to violate the privilege attaching to attorney-client communications to the extent his or her communications as former employee with his or her former employees counsel are protected by the privilege (a privilege not belonging to or for the benefit of the former employee, by the former employer). Such an attempt could violate Rule 4.4 (requiring respect for the rights of third persons).

CONCLUSION

The Committee is in substantial agreement with ABA Formal Opinion 91-359 and is of the opinion that former employees of a corporate party may be interviewed by adverse counsel without the permission of the corporate counsel if the former employees are not individually represented in the same matter. Any such interviews should not inquire as to privileged attorney-client communications.

/////////////////////////////

## Nevada

Nevada Supreme Court Rules, Rule 182

Communication with person represented by counsel

In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

----------

State Bar of Nevada Formal Opinion No. 27  (9/10/01; revised and reissued 5/25/05)

QUESTION

    May opposing counsel make ex parte contact with lower level employees of a corporate defendant where the corporation is represented by counsel?

ANSWER

62

Yes, within limits.  In Palmer v. Pioneer Inn Associates, Ltd., 59 P.3d 1237 (Nev. 2002), the Nevada Supreme Court engaged in an extensive interpretation of Nevada SCR 182 and determined to apply it to organizational entities according to a "managing-speaking agent" test, in which an attorney is precluded from ex parte contact with a person affiliated with the adverse entity only if the person qualifies as a managing-speaking agent (defined by the Court as someone with supervisory control or authorization to speak for the entity as to the matter that is the subject of the conflict). See 59 P.3d at 1238, 1244-45 and 1248 (test applies to "those representatives who are in a position to speak for and bind the organization during the course of litigation").

...

The federal trial court in Palmer v. Pioneer Hotel had adopted the party-opponent test, essentially holding that if a statement from a company employee would be admissible under Fed. R. Evid. 801(d)(2)(the party-opponent exception to the hearsay rule) and its state counterparts, opposing counsel should not have ex parte contact with the employee.  In addition to the federal court in Palmer, this test has support from some influential commentators.  See Vol. II Geoffrey C. Hazard, Jr. & W. William Hodes, The Law of Lawyering § 38:6 at p. 38-9 (3d ed. 2001).  But, as the Nevada Supreme Court observed in Palmer:

The drawback of this test is that it essentially covers all or almost all employees, since any employee could make statements concerning a matter within the scope of his or her employment, and thus could potentially be included within the rule.  Thus, the party-opponent admission test can effectively serve as a blanket test, thus frustrating the search for truth.  An attorney attempting to comply with Rule 11's requirements would be faced with two unenviable choices.  The first option would be not to contact a person who might be the best, if not the only, source of corroborating information.  This option would ensure that the attorney complies with SCR 182's prohibitions, but would result in the attorney's failure to comply with Rule 11.  The second option would be for the attorney to second-guess what an employee might say, in an attempt to determine whether contact might be permissible, which would result in the attorney risking an SCR 182 violation. See 59 P.3d at 1243-44 (footnotes omitted).

...

After the Palmer v. Pioneer Inn decision, it is now clear that Nevada SCR 182 utilizes a "managing-speaking agent" test for determining which adverse entity employees are off limits to counsel and that neither the Restatement-Niesig "ability to bind the company" test nor the "admission by a party-opponent" test applies to Nevada SCR 182.  Despite the pedigree supporting the party-opponent and New York-Niesig tests, the Nevada Supreme Court rejected them in favor of the managing-speaking agent test because it best balances the policies at stake when considering what contact with an organization's representatives is appropriate.  The test protects from overbearance by opposing counsel those representatives who are in a position to speak for and bind the organization during the course of litigation, while still providing ample opportunity for an adequate Rule 11 investigation.

In particular, the managing-speaking agent test best fulfills this purpose by not being over-inclusive.  In particular, the managing-speaking agent test adopted by this court does not protect the organization at the expense of the justice system's truth-finding function by including employees whose conduct could be imputed to the organization based simply on the doctrine of respondeat superior.  Finally, while any non-blanket rule has some uncertainty, we conclude that the test is sufficiently clear to provide significant guidance to counsel. See 59 P.3d at 1248 (footnotes omitted).  The Court also noted that

63

it was not adopting ABA Model Rule 4.2's comment and was not adopting the ABA's 2002 comment, "which essentially tracks the New York test. Rather, SCR 182 should be interpreted according to the managing-speaking agent test as set forth by the Washington Supreme Court in Wright by Wright v. Group Health Hospital." See 59 P.3d at 1248 (footnotes omitted). See also Wright v. Group Health Hosp., 691 P.2d at 569 (Wash. 1984):

[The function of anti-contact rule] is to preclude the interviewing of those corporate employees who have the authority to bind the corporation. [Employees should be viewed as within the anti-contact rule where they have] managing authority sufficient to give them the right to speak for, and bind, the corporation. . . . an employee does not "speak for" the organization simply because his or her statement may be admissible as a party-opponent admission. Rather, the inquiry is whether the employee can bind the organization with his or her statement.

...

## CONCLUSION

The approach of the Nevada Supreme Court in Palmer v. Pioneer Inn strikes a balance allowing informal and inexpensive discovery while providing a represented party with the advice and protection of counsel. An employee of an organization may be interviewed by counsel for an adverse party unless the employee is a managing-speaking agent of the organization.

This opinion is issued by the Standing Committee on Ethics and Professional Responsibility of the State Bar of Nevada, pursuant to SCR 225. It is advisory only. It is not binding upon the courts, the State Bar of Nevada, its Board of Governors, any person or tribunal charged with regulatory responsibilities, or any member of the State Bar.

[1] The Committee first considered this issue prior to the Nevada Supreme Court's decision in Palmer v. Pioneer Inn Assocs., 59 P.3d 1237 (Nev. 2002) and based much of the Committee's analysis on a federal trial court opinion in the matter, Palmer v. Pioneer Hotel & Casino, 19 F. Supp. 2d 1157 (D. Nev. 1998). The Nevada Supreme Court, the decisions of which clearly bind members of the State Bar of Nevada, took a significantly different approach to the application of Nevada SCR 182 than did the federal trial court. Consequently, the Committee has revised Opinion No. 27 significantly in light of the Nevada Supreme Court's Palmer v. Pioneer Inn analysis.

----------

**Palmer v. Pioneer Hotel & Casino,**
19 F.Supp.2d 1157, 86 Fair Empl.Prac.Cas. (BNA) 897, D.Nev., Aug 28, 1998

Attorney may make ex parte contact with former employee of employer which was adverse party to attorney's client, provided communication does not cover areas subject to attorney-client and work product privileges. Nev.Sup.Ct.Rules, Rule 182; ABA Rules of Prof.Conduct, Rule 4.2; Fed.Rules Evid.Rule 801(d)(2)(D), 28 U.S.C.A.

"At the time Silverberg communicated with Lorentz, she was no longer employed by Pioneer. During her employment, however, she occupied a supervisory position and apparently witnessed discriminatory practices used by agents of Pioneer. Nevertheless, "the clear majority of courts interpreting Rule 4.2 have held, consistent with [American Bar Association Formal Opinion 91-359 (issued March 22, 1991) ], that Rule 4.2 does not

64

apply to communication[s] with former employees of an organizational party who no longer have any relationship with the organization." *Aiken v. Business & Indus. Health Group, Inc., 885 F.Supp. 1474, 1477 (D.Kan.1995)* (collecting cases). The rationale underlying the inapplicability of Model Rule 4.2 to former employees was aptly summarized in *Terra Int'l, Inc.*:

a former employee no longer works on the organization's behalf, is unlikely to be represented by the organization's counsel, and unlikely to be a participant in the process leading to resolution of the dispute; ... [and] do [es] not fit within the definition of a 'party' with whom ex parte contacts are forbidden.

913 F.Supp. at 1314 (citations omitted). The Court finds this rationale persuasive and adopts it, as well as the majority rule, for application in this district. The Court will also adopt, however, a common-sense qualification on the application of the majority rule that has been advanced by courts and commentators alike: when communicating with a former employee of an organization, the adverse attorney may not inquire into areas subject to the attorney-client or work product privileges." Id., at 1167

----------

**Palmer v. Pioneer Inn Associates, Ltd.,**
118 Nev. 943, 59 P.3d 1237, 90 Fair Empl.Prac.Cas. (BNA) 1042, Nev., Dec 27, 2002

Managing-speaking agent test applies to rule providing that in representing a client, a lawyer shall not communicate about subject of representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has consent of other lawyer or is authorized by law to do so, and under that test, a party is an employee who has legal authority to bind the corporation in a legal evidentiary sense. Sup.Ct. Rules, Rule 182.

"FN5. Palmer's counsel also contacted one other current employee and two former employees. Jennifer Walker, the current employee, was a telephone operator, a non-supervisory position. The two former employees were Sarah Favero, an "on-call" banquet worker, and Donna Lorenz, who was Food and Beverage Director before Zamora. The federal district court found that counsel's contact with these individuals was not a violation of SCR 182, and so they are not discussed in the Ninth Circuit's order or this opinion."

"[E]mployees should be considered "parties" for the purposes of the disciplinary rule if, under applicable [state] law, they have managing authority sufficient to give them the right to speak for, and bind, the corporation.

In applying this test, we specifically note that an employee does not "speak for" the organization simply because his or her statement may be admissible as a party-opponent admission. Rather, the inquiry is whether the employee can bind the organization with his or her statement. Also, an employee for whom counsel has not been retained does not become a "represented party" simply because his or her conduct may be imputed to the organization; while any confidential communications between such an employee and the organization's counsel would be protected by the attorney-client privilege, the facts within that employee's knowledge are generally not protected from revelation through ex parte interviews by opposing counsel. [FN65]

FN65. See Upjohn, 449 U.S. at 395-96, 101 S.Ct. 677. We note that an attorney who abuses the interview process by inquiring into privileged matters, or even by permitting an employee to refer to confidential communications without immediately warning the

65

employee that such communications are protected and should not be disclosed, is subject to appropriate sanctions.

A lawyer must have a reasonable opportunity to conduct an investigation under Rule 11. This investigation would be unduly hampered by an over-inclusive test, such as the party-opponent admission test adopted by the federal district court in this case. Such a test essentially bars contact with all employees, because any employee could make a statement concerning a matter within the scope of his or her employment, which would then be admissible under FRE 801(d)(2)(D) **1249 or a state equivalent. A lawyer contacting the employee could not know in advance whether the employee might make such a statement, and so would be forced to choose between foregoing information that could be useful and even necessary to a proper investigation, or risking sanctions for an SCR 182 violation. Without doubt, an organization is entitled to the protections afforded by SCR 182, but just as for individuals, this protection is not unlimited. The managing-speaking agent test most appropriately balances these competing interests, and so it is the test we adopt.

*CONCLUSION*

Nevada does not follow the portion of the ABA Model Rule 4.2's former comment providing that contact is barred with an organization's employee whose admission may constitute an admission on the part of the organization, nor does it follow the 2002 version of the comment. Rather, in interpreting SCR 182 as *962 applied to employees of an organization, we adopt the managing-speaking agent test. This test preserves the protection afforded by SCR 182 to an organization, while permitting sufficient flexibility to conduct an adequate pre-litigation investigation."   Id., at 1248-1249

//////////////////////////////

## New Hampshire

Rules of Prof.Conduct, Rule 4.2

COMMUNICATION WITH PERSON REPRESENTED BY COUNSEL

In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

...

New Hampshire Comments

The New Hampshire Committee has modified the official comment to Rule **4.2** by eliminating the following language from the comment thoughts by the ABA in August of 1983: "This Rule prohibits communications by a lawyer ... with any other person whose act or omission in connection with that matter may be imputed to the organization for purposes of civil or criminal liability or whose statement may constitute an admission on the part of the organization." Instead the New Hampshire Committee decided to adopt the comments originally proposed by the Kutak Commission in May of 1981. Using the example of taking a statement from the driver of a Titanic Oil gasoline truck involved in an accident, the committee felt there was nothing improper or unethical for plaintiff's counsel to take a statement from the driver even though counsel knew that Titanic Oil was represented by retained counsel.

----------

66

New Hampshire Bar Ethics Committee Advisory Opinion #1984-85/4 (11/13/84)

Taking Statements From An Opposing Party

...

FACTS AND QUESTIONS:A lawyer representing one party in a lawsuit wishes to interview or take the statement of an opposing party. The lawyer has posed three queries: a) Whether it is proper to take the statement of the opposing party before suit is filed and that party has obtained counsel; and b) Whether it is proper to take the statement of a former agent or employee of the opposing party after suit has been filed and counsel has been retained (assuming that the former agent or employee whose statement is sought was an agent or employee of the opposing party at the time of the incident giving rise to the suit); and c) Whether it is proper to take the statement of a present agent or employee of the opposing party either (i) before suit has been filed, or (ii) after suit has been filed. For purposes of this question, the Committee is to assume that the agent or employee from whom a statement is sought, was an agent or employee of the opposing party at the time of the incident giving rise to the lawsuit, and continues in that relationship at the time the statement is sought, but the agent or employee is not the named defendant in the lawsuit.

RESPONSE: With regard to the first inquiry, DR 7-104(A)(1) directly addresses the subject of communications by an attorney with a party, whether or not that party's interests are adverse, instating that: "During the course of his representation of a client, a lawyer shall not:(1) Communicate or cause another to communicate on the subject of the representation with a party he knows to be represented by a lawyer in that matter unless he has the prior consent of the lawyer representing such other party or is authorized by law to do so."  Accordingly, if the party is not represented "in that matter", there would be no ethical bar to either the taking of a statement or other communication by a lawyer with the adverse party, regardless of whether suit has or has not been filed, so long as the constraints set forth in DR 7-104(A) (2) are observed. A lawyer is duty bound to represent his or her clients zealously within the bounds of the law. EC 7-1; DR 7-101(A) (1). This duty includes a duty to investigate thoroughly facts related to the subject matter in litigation. In carrying out this duty, an attorney should avoid conduct that may tend to mislead a party not represented by counsel and should identify himself or herself and whom he or she represents. DR 1-102.With regard to the second and third inquiries, DR 7-104 prohibits a lawyer from communicating with a party, adverse or otherwise, whom he or she knows is represented by counsel in the matter, in the absence of that counsel's consent. Assuming proper resolution of the knowledge requirements of DR 7-104, the key question is whether the former or present agent or employee is to be considered the equivalent of the "party" for purposes of DR 7-104. Resolution of that question will be heavily dependent upon the facts and circumstances of each case. The Committee is unable to resolve it in this particular case, because the information provided is not sufficiently detailed.

SUMMARY: If a lawyer has knowledge that a party involved in the lawyer's subject of representation is represented by counsel, he/she may not communicate with or cause another to communicate with that party without the prior consent of that party's attorney, unless otherwise authorized bylaw to do so. Former or present agents or employees of a party may be the equivalent of a "party", for purposes of the Disciplinary Rules, depending on the facts and circumstances of each case.

/////////////////////////////

## New Jersey

New Jersey Rules of Professional Conduct, Rule 4.2

67

COMMUNICATION WITH PERSON REPRESENTED BY COUNSEL

In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows, or by the exercise of reasonable diligence should know, to be represented by another lawyer in the matter, including members of an organization's litigation control group as defined by RPC 1.13, unless the lawyer has the consent of the other lawyer, or is authorized by law or court order to do so, or unless the sole purpose of the communication is to ascertain whether the person is in fact represented. Reasonable diligence shall include, but not be limited to, a specific inquiry of the person as to whether that person is represented by counsel. Nothing in this rule shall, however, preclude a lawyer from counseling or representing a member or former member of an organization's litigation control group who seeks independent legal advice.

Official Comment by Supreme Court (November 17, 2003)

Concerning organizations, RPC 4.2 addresses the issue of who is represented under the rule by precluding a lawyer from communicating with members of the organization's litigation control group. The term "litigation control group" is not intended to limit application of the rule to matters in litigation. As the Report of the Special Committee on RPC 4.2 states, "... the 'matter' has been defined as a 'matter whether or not in litigation.'" The primary determinant of membership in the litigation control group is the person's role in determining the organization's legal position. See _Michaels v. Woodland, 988 F.Supp. 468, 472 (D.N.J. 1997)_.

...

----------

### Klier v. Sordoni Skanska Const. Co.,
337 N.J.Super. 76, 766 A.2d 761, N.J.Super.A.D., January 26, 2001

Nothing in the rules of professional conduct prohibits an attorney's ex parte communication with a former employee of an adversary who was not within that adversary's litigation control group and who was not otherwise represented by counsel. RPC 4.2.

"The current rules prohibit communication only with employees who are members of the organization's litigation control group, or are represented by another lawyer in the matter. _R.P.C. 4.2_. This is in accord with the Committee's recommendation that the prohibition against _ex parte_ communication should not extend to employees who were only fact witnesses or involved with the subject matter of the litigation. Committee Rep., _supra_, 139 _N.J.L.J._ at 1195-96. The Committee explained that extending the prohibition against _ex parte_ communication to employees who were only involved in the subject matter of the litigation would include too many people "whose interests are most likely not only not congruent with the organization's but also, in many cases, in conflict with it." _Ibid._ (quoted in _Michaels, supra, 988 F.Supp. at 471)._ The Committee determined that the bar against _ex parte_ communications should only apply in those situations where the employee is not only a fact witness, but also is significantly involved in determining the organization's legal position as opposed to merely supplying information. Committee Rep., _supra_, 139 _N.J.L.J._ at 1195-96. In its recommendation, the Committee specifically provided that "[s]ignificant involvement requires involvement greater than merely supplying factual information regarding *90 the matter in question." _Id._ at 1195. Moreover, in its comment on proposed _R.P.C._ 1:13, the Committee specifically noted that the bar "does not include persons whose actions bind the organization or are imputable to the organization or who are responsible for other aspects of organizational policy unless

68

they meet the 'legal position' test." Committee Rep., *supra*, 139 *N.J.L.J.* at 1196.

Thus, the first determination that must be made by a court in considering whether to allow *ex parte* interviews of current and former employees of an organization **769** is whether the witness is a current or former employee. *R.P.C.* 1:13(a); *Michaels, supra,* 988 *F.Supp.* at 472. If the witness is a current employee, the judge must determine whether the person is within the litigation control group as defined by *R.P.C.* 1:13(a), and, if not, whether the person has obtained other representation. *R.P.C.* 4.2; *Michaels, supra,* 988 *F.Supp.* at 472. *R.P.C.* 4.2 prohibits an adverse attorney from having *ex parte* contact with any current employee who is within the litigation control group. *Ibid.* On the other hand, if the current employee is not within the litigation control group and has not obtained other representation, *ex parte* contact is permitted consistent with *R.P.C.* 4.2 and *R.P.C.* 4.3. In addition, a former employee who was within the litigation control group is presumptively represented by the organization. *R.P.C.* 1:13(a); *Michaels, supra,* 988 *F.Supp.* at 472. However, pursuant to *R.P.C.* 1.13(a) and *R.P.C.* 4.2, the lawyer may interview a former employee who was within the litigation control group, if he or she disavows that representation. Hence, nothing in the Rules prohibits *ex parte* communication with a former employee who was not within the litigation control group and who was not otherwise represented by counsel. *Michaels, supra, 988 F.Supp.* at 472."
  Id., at 89-90

----------

### Andrews v. Goodyear Tire & Rubber Co., Inc.,
191 F.R.D. 59, D.N.J., Feb 14, 2000

Pursuant to rules of professional conduct governing ex parte contacts, plaintiffs' attorney in employment discrimination suit was not obligated to determine if managerial employee was in employer's litigation control group or otherwise represented by counsel "before" making contact" with employee; rather, attorney was only required to make such determination prior to engaging in any substantive ex parte communications.

"Upon publication of the initial report by the Special Committee on *RPC* 4.2, the Court received an abundance of comments. As a result of those comments, the Committee reconvened and filed a Supplemental Report on May 6, 1996. *See Notice to the Bar,* 145 N.J.L.J. 318 (July 15, 1996). Therein, the Committee noted that it was adhering to the **76** reasoning set forth in the initial report with the exception of minimalmodifications to RPCs 4.2 and 1.13 as set forth in the supplemental report. *See id.*
The first modification to the original report involved "former" employees of a corporation and their recommended status as members of the litigation control group. *See id.* The Committee reaffirmed its initial position that former employees of a corporation presumptively should be deemed members of the litigation control group. The Committee added, however, that, because both current and former employees of a corporation do not lose their right to seek independent legal advice as a result of their current or former employment, *RPC* 4.2 should be amended to reflect that option.
The second modification to the initial report also involved former employees of a corporation. The Committee recognized that because the interests of a former employee may become adverse to the present interests of a corporation, an approaching attorney making communications pursuant to *RPC* 4.3 "may inquire as to whether the former employee disavows organizational representation or not." *Id.* Thus, the Committee recommended amending *RPC* 1.13 to reflect such "disavowing" language.
In conclusion, the Committee suggested that, if the recommended amendments to the

69

*RPCs* caused any confusion for an attorney seeking to inquire about representation pursuant to *RPC 4.2*, the attorney could consult the scripts set forth in *In re Prudential Insurance Company of America Sales Practices Litigation*, 911 F.Supp. 148, 152 n. 5 (D.N.J.1995) and *In re Environmental Insurance Declaratory Judgment Actions*, 252 N.J.Super. 510, 523, 600 A.2d 165 (1991).

...On June 28, 1996, the New Jersey Supreme Court adopted the amendment to *RPC 4.3* as proposed by the Committee in the initial report and also adopted those amendments to *RPCs* 4.2 and 1.13 as proposed in both the initial and supplemental reports. *See id.* The amendments to *RPCs* 4.2, 4.3 and 1.13 became effective on September 1, 1996." Id., at 75-76

"Finally, the Court amended *RPC 1.13*. The pertinent language is as follows:
(a) A lawyer employed or retained to represent an organization represents the organization as distinct from its directors, officers, employees, members, shareholders or other constituents. For the purposes of *RPC 4.2* or *4.3*, however, the organization's lawyer shall be deemed to represent not only the organizational entity but also the members of its litigation control group. Members of the litigation control group shall be deemed to include current agents and employees responsible for, or significantly involved in, the determination of the organization's legal position in the matter whether or not in the litigation, provided, however, that "significant involvement" requires involvement greater, and other than, the supplying of factual information or data respecting the matter. Former agents and employees who were members of the litigation control group shall presumptively be deemed to be represented in the matter by the organization's lawyer but may at any time disavow said representation."   Id., at 77

//////////////////////////////

## New Mexico

New Mexico State Court Rules, Rule 16-402

COMMUNICATION WITH PERSON REPRESENTED BY COUNSEL

In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so. Except for persons having a managerial responsibility on behalf of the organization, an attorney is not prohibited from communicating directly with employees of a corporation, partnership or other entity about the subject matter of the representation even though the corporation, partnership or entity itself is represented by counsel.

ABA COMMENT TO MODEL RULES

This Rule does not prohibit communication with a party, or an employee or agent of a party, concerning matters outside the representation. For example, the existence of a controversy between a government agency and a private party, or between two organizations, does not prohibit a lawyer for either from communicating with nonlawyer representatives of the other regarding a separate matter. Also, parties to a matter may communicate directly with each other and a lawyer having independent justification for communicating with the other party is permitted to do so. Communications authorized by law include, for example, the right of a party to a controversy with a government agency to speak with government officials about the matter.

70

In the case of an organization, this Rule prohibits communications by a lawyer for one party concerning the matter in representation with persons having a managerial responsibility on behalf of the organization, and with any other person whose act or omission in connection with that matter may be imputed to the organization for purposes of civil or criminal liability or whose statement may constitute an admission on the part of the organization. If an agent or employee of the organization is represented in the matter by his or her own counsel, the consent by that counsel to a communication will be sufficient for purposes of this Rule. Compare Rule 3.4(f).

This Rule also covers any person, whether or not a party to a formal proceeding, who is represented by counsel concerning the matter in question.


/////////////////////////////

## New York

Code of Professional Responsibility DR 7-104 [22 NYCRR § 1200.35]

Communicating with Represented and Unrepresented Persons

A. During the course of the representation of a client a lawyer shall not:

1. Communicate or cause another to communicate on the subject of the representation with a party the lawyer knows to be represented by a lawyer in that matter unless the lawyer has the prior consent of the lawyer representing such other party or is authorized by law to do so.

2. Give advice to a person who is not represented by a lawyer, other than the advice to secure counsel, if the interests of such person are or have a reasonable possibility of being in conflict with the interests of the lawyer's client.

B. Notwithstanding the prohibitions of DR 7-101 [1200.35] (A), and unless prohibited by law, a lawyer may cause a client to communicate with a represented person, if that person is legally competent, and counsel the client with respect to those communications, provided the lawyer gives reasonable advance notice to the represented person's counsel that such communications will be taking place.

----------

New York County Lawyers' Association Committee on Professional Ethics
Amended Opinion No. 729 (3/1/00)
March 1, 2000

DIGEST: A LAWYER ETHICALLLY MAY ADVANCE COUNSEL FEES TO A THIRD PARTY WITNESS UNDER DR7-109

QUESTION:

A lawyer proposes to obtain testimony and/or evidence through an informal interview of a former employee of a corporate adversary. The former employee has agreed to the interview, but has requested that she be represented by counsel of her choice, and that the costs of counsel be advanced by the inquirer. Assuming the consent of inquirer's client (who will remain ultimately liable for such expenses), may the lawyer advance the costs of counsel to the witness? Alternatively, assuming that the witness has made no

71

such request, may the lawyer suggest to the witness that she be represented by counsel, and offer to advance the costs of such counsel?

OPINION

As a preliminary matter, we note that DR 7-104(A) prohibits communication by a lawyer with any person the lawyer knows to be represented by counsel in the matter. The rule applies to all parties represented by counsel in a matter, including witnesses. Assuming the witness here is not already represented by a lawyer, the contact by the inquirer with a former employee of a corporate adversary would not be prohibited. See Niesig v. Team I, 76 N.Y.2d 363, 558 N.E.2d 1030, 559 N.Y.S.2d 493 (1990) (DR 7-104(A)(1) applies only to current employees, not to former employees). The inquirer may not, however, seek to discover privileged communications of the corporate adversary to which the former employee was privy through the interview of the former employee. See N.Y. State 700 (1998) (attorney engaged in ex parte contacts with former employees of corporate adversary may not seek to obtain from former employees information that might be protected under the attorney-client privilege or the work product doctrine).

...

CONCLUSION:

*4 The fees of counsel to a witness -- both for preparation of and in attending testimony -- are "expenses reasonably incurred by a witness in attending or testifying" within the meaning of DR 7-109(C)(1). Accordingly, with client consent, a lawyer may ethically advance or acquiesce in the payment of such fees to a witness, whether at the request of the witness or at the suggestion of the lawyer.

----------

New York State Bar Association Ethics Opinion 700, (5/7/98)

Digest: Lawyer who receives unsolicited communication from former employee of adversary's law firm regarding alteration of documents may not communicate further with employee and should seek judicial guidance as to use of the unauthorized communication.

QUESTIONS

An attorney for a government agency responsible for prosecuting an administrative proceeding received an unsolicited telephone call from a person who identified himself as a former non-lawyer employee of a law firm that represents the respondent in the proceeding. In substance, the former employee told the attorney that certain key records submitted to the government agency in connection with its investigation of respondent had been materially altered prior to submission. Aware of the sensitive ethical issues raised by this communication, the attorney refrained from asking the former employee any questions, such as whether the law firm is aware of the alleged alteration of documents.

This opinion addresses three questions arising from this set of facts:

1. Whether the attorney may seek further information from the former employee regarding the allegedly altered documents;

2. Whether the attorney must inform the respondent's law firm of the communication from its former employee; and

3. Whether the attorney must inform the hearing officer presiding over the administrative proceeding of the communication and, if so, whether that may be done ex parte.

72

OPINION

...

Just as a lawyer should never initiate contact with a former employee of an adversary's law firm for the purpose of obtaining confidential information of the adversary, neither may a lawyer take advantage of a former employee's willingness to violate the duty of confidentiality to the former employer's client.

The cases and ethics opinions permitting ex parte contacts with unrepresented former employees of a corporate adversary are not to the contrary. These opinions hold that the prohibition on such contact applies only to current employees, not to former employees. See, e.g., Dubois v. Gradco Sys., Inc., 136 F.R.D. 341 (D. Conn. 1991); Neisig v. Team I et al., 76 N.Y.2d 363, 558 N.E.2d 1030 (1990); ABA 359 (1991), but they are also uniform in holding that an attorney engaged in such ex parte contacts may not seek to obtain from former employees information that might be protected under the attorney-client privilege or the work product doctrine. As one court has observed:

"[I]t goes without saying that, with respect to any unrepresented former employee, plaintiff's counsel must take care not to seek to induce or listen to disclosures by the former employees of any privileged attorney-client communications to which the employee was privy. After all, the privilege does not belong to, and is not for the benefit of, the former employee; rather, it belongs to, and is for the benefit of, [the former employer]." Dubois, 136 F.R.D. at 347.

Similarly, the inquirer here may not seek to cause the former employee of his adversary's counsel to reveal the confidences or secrets of the former employer's client.

...

CONCLUSION

*5 A lawyer who receives an unsolicited and unauthorized communication from a former employee of an adversary's law firm may not seek information from that person if the communication would exploit the adversary's confidences or secrets. Where the information communicated involves alleged criminal or fraudulent conduct in which opposing counsel may be assisting, the receiving lawyer should communicate with a tribunal or other appropriate authority to get further direction as to the use of the information.

----------

**Lyondell-Citgo Refining, LP v. Petroleos de Venezuela, S.A.,**
Not Reported in F.Supp.2d, 2003 WL 22990099, S.D.N.Y., Dec 19, 2003

Oil supplier was not entitled to protective order in refiner's breach of contract action barring ex parte contact with its former employees, even if employees had been exposed to privileged or confidential information, or had been privy to business proprietary information and/or trade secrets, where refiner had stipulated that all interviews would be conducted by attorneys, and that questions would be targeted so as to avoid any discussion of privileged information.

"A party seeking a protective order precluding disclosure of certain communications with a former employee on grounds of attorney-client privilege has been found to have failed to carry its burden when it fails to identify any privileged information to which the former employee was privy. See Stratagem Dev. Corp. v. Heron Int'l N.V., 1992 WL 276844 at *9 (S.D.N.Y.1992); see also Polycast Tech. Corp. v. Uniroyal, Inc., 129 F.R.D. 621, 629 (S.D.N.Y.1990) (noting that if the party seeking a bar on ex parte communications with a former employee were to "come forward with evidence that privileged communications

73

might be in jeopardy, a narrowly-tailored order might be appropriate," but denying the motion for a protective order, since the party had "failed to identify any specific privileged information to which [the former employee] was privy").

Defendants seek this protective order on the grounds that the individuals in question are likely to have been exposed to privileged or confidential information, or to have been privy to business proprietary information and/or trade secrets. However, we find that the circumstances of this case do not warrant the imposition of a bar on *ex parte* communications. As regards privileged material, we find that defendants' interests will be sufficiently protected by two stipulations made by plaintiff, in its response to defendants' motion. First, plaintiff has stipulated that all interviews will be conducted by attorneys, thus avoiding the hazard noted in *G-I Holdings,* where "[t]he danger of inadvertent disclosure is compounded by the fact that the investigators are themselves lay persons and, thus, are in little better position than the interviewees to assess whether privileged material is being disclosed." *G-I Holdings, Inc. v. Baron & Budd,* 199 F.R.D. 529, 535 (S.D.N.Y.2001). Second, plaintiff has stipulated that the questions will be targeted so as to avoid any discussion of privileged information. As regards confidential material, proprietary information and trade secrets, we agree with plaintiff that defendants' interests will be sufficiently protected by the confidentiality agreement signed by the parties subsequent to this court's order of October 30, 2003, regarding *ex parte* contacts.

IV. CONCLUSION

For the reasons stated above, defendants' motion is denied, and plaintiff may proceed to contact the former employees at issue." Id., at *3

----------

### Niesig v. Team I,
76 N.Y.2d 363, 558 N.E.2d 1030, 559 N.Y.S.2d 493, 59 USLW 2041, N.Y., Jul 05, 1990

Disciplinary rule prohibiting lawyer from communicating directly with "party" known to have counsel did not preclude lawyer who represented injured employee from conducting ex parte interviews of employees of corporate employer who witnessed accident underlying employee's personal injury action against employer.

"The court further *369 noted that the information sought from employee witnesses could instead be obtained through their depositions.

In the main we disagree with the Appellate Division's conclusions. However, because we agree with the holding that DR 7-104(A)(1) applies only to current employees, not to former employees, we modify rather than reverse its order, and grant plaintiff's motion to allow the interviews." Id., at 368-369

----------

### Polycast Technology Corp. v. Uniroyal, Inc.,
129 F.R.D. 621, S.D.N.Y., Feb 13, 1990

In the absence of showing that former employee of corporate litigant was privy to any privileged information during his employment, ex parte contact with him by attorneys for the opposing party would not be barred in order to preserve the privilege.

"The expanded comments to Rule 4.2, then, were not designed to make former employees adjuncts of the corporate "party." Rather, they were intended to insure that current employees--whether participants or witnesses-- would not be subject to interrogation by an adversary's attorney except through formal discovery.
4. *The Definition of "Party"*

74

The traditional interpretation of DR 7-104(A)(1) did not include former employees within the definition of the corporate "party." The text of Model Rule 4.2 did not deviate in substance from the earlier rule, and the comments, while more expansively worded, do not clearly indicate a departure. We must return then, to the policies underlying the proscription against communication with a represented party to determine if those principles require that the rule apply to former employees.

The interest in preventing inadvertent disclosure of privileged material does not justify a blanket ban on communication *628 with the opposing party's former employees. In most situations a former employee will not be privy to the corporation's legal strategies after his employment has terminated. Similarly, many employees will have no access to privileged information even while employed. Accordingly, the problem of protecting privileged material is best dealt with on a case-by-case basis. Where there is a strong likelihood that a former employee does possess such information, an appropriately tailored order can be issued.

The corporation's interest in counseling a former employee whose acts may lead to imputed liability is likewise an insufficient basis for extending the definition of "party" to such persons. While such a participant's statements to opposing counsel may be damaging to the corporation, they are no more so than the statements of a former employee who merely witnessed the liability-creating acts but did not commit them. Yet there is no dispute that the opposing attorney may interview the latter witness freely. And, of course, counsel for the corporation may depose its own former employee to learn facts and to lock in his testimony." Id., at 627-628

"In this Court, then, the Code of Professional Responsibility currently prescribes the ethical conduct of attorneys, and the Code may be interpreted in light of judicial decisions and commentary from other sources. In this case, DR 7-104 does not require a ban on ex parte communications with a former employee, even if it is interpreted in light of the comments to Model Rule 4.2. Nor has there been a sufficient showing that contacts with the former employee would jeopardize privileged communications. Accordingly, Uniroyal's motion for a protective order is denied." Id., at 629

/////////////////////////////////

## North Carolina

North Carolina Revised Rules of Professional Conduct, Rule 4.2

Communication with Person Represented by Counsel

(a) During the representation of a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order. It is not a violation of this rule for a lawyer to encourage his or her client to discuss the subject of the representation with the opposing party in a good-faith attempt to resolve the controversy.

(b) Notwithstanding section (a) above, in representing a client who has a dispute with a government agency or body, a lawyer may communicate about the subject of the representation with the elected officials who have authority over such government agency or body even if the lawyer knows that the government agency or body is represented by another lawyer in the matter, but such communications may only occur under the following circumstances:

(1) in writing, if a copy of the writing is promptly delivered to opposing counsel;

75

(2) orally, upon adequate notice to opposing counsel; or

(3) in the course of official proceedings.

Comment

…

 [9] In the case of a represented organization, this Rule prohibits communications with a constituent of the organization who supervises, directs or consults with the organization's lawyer concerning the matter or has authority to obligate the organization with respect to the matter or whose act or omission in connection with the matter may be imputed to the organization for purposes of civil or criminal liability. It also prohibits communications with any constituent of the organization, regardless of position or level of authority, who is participating or participated substantially in the legal representation of the organization in a particular matter. Consent of the organization's lawyer is not required for communication with a former constituent unless the former constituent participated substantially in the legal representation of the organization in the matter. If an employee or agent of the organization is represented in the matter by his or her own counsel, the consent by that counsel to a communication would be sufficient for purposes of this Rule. Compare Rule 3.4(f). In communicating with a current or former constituent of an organization, a lawyer must not use methods of obtaining evidence that violate the legal rights of the organization. See Rule 4.4, Comment [2].…

----------

North Carolina State Bar  97 Formal Ethics Opinion 2 (1/16/98)

Communications with Unrepresented Former Employees of Represented Organizations

Opinion rules that a lawyer may interview an unrepresented former employee of an adverse represented organization about the subject of the representation unless the former employee participated substantially in the legal representation of the organization in the matter.

…

Inquiry #3:

[The facts of this inquiry are unrelated to the preceding inquiries.]

Employee X is no longer employed by Corporation. While an employee of Corporation, however, Employee X may have engaged in activities that would constitute the sexual harassment of other employees of Corporation. An action alleging sexual harassment based on Employee X's conduct was brought against Corporation. Although he is not a named defendant in the action, Employee X's acts, while an employee, may be imputed to the organization. When he was employed, Employee X did not discuss the corporation's representation in this matter with Corporation's lawyer. Employee X is unrepresented. May the lawyer for the plaintiffs in the sexual harassment action interview Employee X without the consent of the lawyer for Corporation?

Opinion #3:

Yes. Unlike the adjuster in the two prior inquiries, Employee X was not an active participant in the legal representation of his former employer in the sexual harassment action. It does not appear that he was involved in any decision making relative to the representation of Corporation nor was

76

he privy to privileged client-lawyer communications relative to the representation. Rather, Employee X is a fact witness and a potential defendant in his own right. Permitting ex parte contact with Employee X by the plaintiff's counsel will not interfere with Corporation's relationship with its lawyer nor will it result in the disclosure of privileged client-lawyer communications regarding the representation. Comment [5] to Rule 4.2, which indicates that the rule prohibits communications with any employee "… whose act or omission in connection with the matter may be imputed to the organization for purposes of civil or criminal liability or whose statement may constitute an admission on the part of the organization, " should be applicable only to current employees. The purpose of Rule 4.2 is not enhanced by extending the prohibition to former employees who, during the time of their employment, did not participate substantively in the representation of the organization.

Although the plaintiff's lawyer may communicate directly with the Employee X, the lawyer's communications are subject to the protections for unrepresented persons set fourth in Rule 4.3. Rule 4.3(a) prohibits a lawyer from giving advice to an unrepresented person, other than the advice to secure legal counsel, if the interests of the person are in conflict with the interests of the lawyer's client. Similarly, Rule 4.3(b) requires the lawyer to make known to the unrepresented person that the lawyer is not disinterested.

----------

### Houck v. Hardee's Food Systems, Inc.,
Not Reported in F.Supp.2d, 1999 WL 1939988, E.D.N.C., Mar 23, 1999

"In general, a lawyer may interview a former employee of a represented corporate party without the permission of the corporation's lawyer. *See* N.C. RPC 81 (Jan. 12, 1990). An exception exists, however, when "the former employee participated substantially in the legal representation of the organization in the matter." 97 N.C. Formal Ethics Op. 2 (Jan. 16, 1998). Therefore, although a lawyer may interview a former employee of a represented corporation regarding "factual information willingly shared by [the] former employee," he may not interview the former employee regarding matters that may be protected by the attorney-client privilege. N.C. RPC 81 (Jan. 12, 1990). Rule 4.2 of the North Carolina Revised Rules of Professional Conduct prohibits a lawyer from communicating ex parte with a represented corporate party's employees who have "managerial responsibility." N.C. Revised Rules of Professional Conduct Rule 4.2 cmt. 5 (1998). Defendants contend that Rule 4.2 prohibits ex parte communication not only with current managerial employees, but also with *former* managerial employees. However, in a formal opinion, the American Bar Association Committee on Ethics and Professional Responsibility stated:
While the Committee recognizes that persuasive policy arguments can be and have been made for extending the ambit of Model Rule 4.2 to cover some former employees, the fact remains that the text of the Rule does not do so and the comment gives no basis for concluding that such coverage was intended…. Accordingly, it is the opinion of the Committee that a lawyer representing a client in a matter adverse to a corporate party that is represented by another lawyer may, without violating Model Rule 4.2, communicate about the subject of the representation with an unrepresented former employee of the corporate party without the consent of the corporation's lawyer.
**\*2** ABA Comm. on Ethics and Professional Responsibility Formal Op. 95-396 (1991); *see also* ABA Comm. on Ethics and Professional Responsibility Formal Op. 95-396 n. 47 (1995) ("Rule 4.2 does not prohibit contacts with former officers or employees of a represented corporation, even if they were in one of the categories with which communication was prohibited while they were employed."). However, the committee cautioned that "the potentially-communicating adversary attorney must be careful not to seek to induce the former employee to violate the privilege attached to attorney-client communications." *Id.*

77

The undersigned concludes that Rule 4.2 does not prohibit ex parte contact with former managerial employees of a represented corporation. Therefore, Plaintiff's motion to compel is ALLOWED as to Interrogatory Number 2 and to the extent that they have not done so already, Defendants are ORDERED to provide the addresses and telephone numbers of all Hardee's employees who were terminated on July 15, 1997. However, counsel for Plaintiff are cautioned that they may not communicate ex parte with any employee regarding matters protected by the attorney-client privilege." Id., at *1-2

/////////////////////////////

## North Dakota

North Dakota Rules of Professional Conduct, Rule 4.2

Communication with person represented by counsel

In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

COMMENT

...

In the case of an organization, this Rule prohibits communications by a lawyer for another person or entity concerning the matter in representation with persons having a managerial responsibility on behalf of the organization, and with any other person whose act or omission in connection with that matter may be imputed to the organization for purposes of civil or criminal liability or whose statements may constitute an admission on the part of the organization. If an agent or employee of the organization is represented in the matter by his or her own counsel, the consent by that counsel to a communication will be sufficient for purposes of this Rule. Compare Rule 3.4(f). The prohibition of this Rule does not apply to contact with unrepresented former agents or employees of the represented organization (although Rule 4.3 does then apply); however, the lawyer making the contact must take care not to seek to induce the former agent/employee to reveal information that may be protected by the privilege attached to attorney/client communications to the extent of the person's contacts, while an agent or employee, with her or his former employer's counsel.

...

----------

State Bar of North Dakota Ethics Committee Opinion No. 92-12 (10/15/92)

The Ethics Committee received a request for an opinion from Mr. _____, Attorney at Law, _____ North Dakota, regarding the following inquiry:

Does the prohibition of Rule 4.2 with respect to contracts by a lawyer with employees of an opposing corporate party extend to former employees of that party?

The analysis logically begins with the text of Rule 4.2, which provides that a lawyer shall not communicate about the subject matter of representation with a party he/she knows to be represented by another lawyer without the consent of the other

78

lawyer or authorization by law to do so.  North Dakota Rule of Professional Conduct 4.2. The comment to Rule 4.2 notes that the Rule applies to corporate parties and further clarifies the application of the Rule as to current employees or agents of the corporate party.  The comment explains the Rule as prohibiting communications with (1) persons having a managerial responsibility on behalf of the organization; (2) anyone whose acts or omissions could be imputed to the organization; and (3) anyone whose statements may constitute an admission on the part of the organization.

However, Rule 4.2 is silent as to former employees.

As noted in ABA Formal Opinion 91-359 dated 3/22/91 in dealing with the same issue, there are persuasive policy arguments for extending Rule 4.2 to cover certain classifications of former corporate employees.  However, neither Rule 4.2 nor its comment provide a basis for extending the coverage to such former employees.  Just as the ABA Committee was not willing to do, this Committee is not willing to issue an opinion expanding the literal scope of Rule 4.2 to include such former corporate employees.

Accordingly, the Committee's opinion is that the prohibition of Rule 4.2 with respect to contact by an attorney with employees of an opposing corporate party does not extend to former employees of such a party.

The Committee reiterates the cautions of the ABA Formal Opinion 91-359 pertaining to Rule 4.4. and 4.3.  Specifically, the Committee cautions that an attorney contacting any unrepresented former employee must take care not to seek to induce the former employee to violate the privilege attached to attorney/client communications to the extent of his or her communications as a former employee with his or her former employer's counsel in which the privilege would belong to the former employer.  In regard to Rule 4.3, the Committee would caution an attorney when contacting former employees to make clear the attorney's position in the action giving rise to the contact, including the identity of the lawyer's client and the fact that the person's former employer is the adverse party.

/////////////////////////////

## Ohio

Ohio Code of Professional Responsibility, DR 7-104

Communicating with one of adverse interest

(A) During the course of his representation of a client a lawyer shall not:

(1) Communicate or cause another to communicate on the subject of the representation with a party he knows to be represented by a lawyer in that matter unless he has the prior consent of the lawyer representing such other party or is authorized by law to do so.

(2) Give advice to a person who is not represented by a lawyer, other than the advice to secure counsel, if the interests of such person are or have a reasonable possibility of being in conflict with the interests of his client.

----------

79

The Supreme Court of Ohio Board of Commissioners on Grievances and Discipline
Opinion Number 2005-3 (2/4/05)

SYLLABUS:  Counsel representing an interest adverse to a corporation may communicate
without the consent of a corporation's lawyer with certain current employees and former
employees of the corporation, even when corporate counsel asserts blanket
representation of the corporation and all its current and former employees.

...

As to communication with former employees of a corporation, these guidelines apply.
While representing a client in a matter adverse to a corporation, an attorney may
communicate on the subject matter of the representation with former employees of the
corporation without notification or consent of corporate counsel.  Such communication
would not violate DR 7-104(A)(1) when conducted within the following boundaries.  An
attorney may not communicate ex parte if a former employee is represented by his or
her own counsel in the matter, unless that counsel consents.  An attorney may not
communicate ex parte if a former employee has asked the corporation's counsel to
provide representation in the matter, unless that counsel consents.  An attorney must
obtain the consent of the former employee to the interview.  An attorney must inform the
former employee not to divulge any communications that the former employee may have
had with corporate or other counsel.  An attorney must fully explain to the former
employee that he or she represents a client adverse to the corporation.  Under DR 7-
104(A)(2), an attorney must not give advice to the unrepresented former employee other
than advice to seek counsel in the matter.

OPINION:  This opinion addresses an attorney's communication, without the consent of a
corporation's lawyer, with current and former employees of a corporation when opposing
corporate counsel asserts blanket representation of the employees and the corporation.

Is it proper for counsel who represents an interest adverse to a corporation to
communicate without consent of the corporation's counsel with certain current and
former employees of the corporation, when the corporate counsel asserts blanket
representation of the corporation and all current and former employees?

...

Blanket representation

Corporate counsel's assertion of blanket representation of the corporation and all its
corporate employees is bluster.  It is inappropriate.  First, a unilateral declaration by a
corporation's counsel that he or she represents all current and former employees does
not make it so.  Second, such blanket representation of a corporation and all its current
and former employees would in many instances be fraught with impermissible conflicts of
interest for the corporate lawyer.

The Board's view is that a lawyer representing a corporation may not prohibit contact
with all employees by asserting blanket representation of the corporation and all its
current and former employees.  A similar view is expressed by the ABA, Committee on
Ethics and Professional Responsibility:  "[A] lawyer representing the organization cannot
insulate all employees from contacts with opposing lawyers by asserting a blanket
representation of the organization."  ABA, Formal Op. 95-396 (1995).

...

80

Former employees

Former employees, who have not obtained counsel in a matter, may be interviewed without consent of the corporation's counsel.

In Opinion 96-1 (1996), this Board advised:

While representing a client in a matter adverse to a corporation, an attorney may communicate on the subject matter of the representation with former employees of the corporation without notification or consent of corporate counsel. Such communication would not violate DR 7-104(A)(1) when conducted within the boundaries set forth. An attorney may not communicate ex parte if a former employee is represented by his or her own counsel in the matter, unless that counsel consents. An attorney may not communicate ex parte if a former employee has asked the corporation's counsel to provide representation in the matter, unless that counsel consents. An attorney must obtain the consent of the former employee to the interview. An attorney must inform the former employee not to divulge any communications that the former employee may have had with corporate or other counsel. An attorney must fully explain to the former employee that he or she represents a client adverse to the corporation. Under DR 7-104(A)(2), an attorney must not give advice to the unrepresented former employee other than advice to seek counsel in the matter.

...

Conclusion

Counsel representing an interest adverse to a corporation may communicate without the consent of a corporation's lawyer with certain current employees and former employees of the corporation, even when corporate counsel asserts blanket representation of the corporation and all its current and former employees.

...

As to communication with former employees of a corporation, these guidelines apply. While representing a client in a matter adverse to a corporation, an attorney may communicate on the subject matter of the representation with former employees of the corporation without notification or consent of corporate counsel. Such communication would not violate DR 7-104(A)(1) when conducted within the following boundaries. An attorney may not communicate ex parte if a former employee is represented by his or her own counsel in the matter, unless that counsel consents. An attorney may not communicate ex parte if a former employee has asked the corporation's counsel to provide representation in the matter, unless that counsel consents. An attorney must obtain the consent of the former employee to the interview. An attorney must inform the former employee not to divulge any communications that the former employee may have had with corporate or other counsel. An attorney must fully explain to the former employee that he or she represents a client adverse to the corporation. Under DR 7-104(A)(2), an attorney must not give advice to the unrepresented former employee other than advice to seek counsel in the matter.

----------

The Supreme Court of Ohio Board of Commissioners on Grievances and Discipline

Opinion Number 96-1 (2/2/96)

81

FAC Resp. Exhibit B -- 1970

This opinion addresses ex parte communications between attorneys and former employees of a corporation.

While representing a client in matters adverse to a corporation, is it proper for an attorney to communicate on the subject matter of representation with former employees of the corporation without notification or consent of corporate counsel?

...

In conclusion, this Board advises that while representing a client in a matter adverse to a corporation, an attorney may communicate on the subject matter of the representation with former employees of the corporation without notification or consent of corporate counsel. Such communication would not violate DR 7-104(A)(1) when conducted within the boundaries set forth. An attorney may not communicate ex parte if a former employee is represented by his or her own counsel in the matter, unless that counsel consents. An attorney may not communicate ex parte if a former employee has asked the corporation's counsel to provide representation in the matter, unless that counsel consents. An attorney must obtain the consent of the former employee to the interview. An attorney must inform the former employee not to divulge any communications that the former employee may have had with corporate or other counsel. An attorney must fully explain to the former employee that he or she represents a client adverse to the corporation. Under DR 7-104(A)(2), an attorney must not give advice to the unrepresented former employee other than advice to seek counsel in the matter.

Advisory Opinions of the Board of Commissioners on Grievances and Discipline are informal, nonbinding opinions in response to prospective or hypothetical questions regarding the application of the Supreme Court Rules for the Government of the Bar of Ohio, the Supreme Court Rules for the Government of the Judiciary, the Code of Professional Responsibility, the Code of Judicial Conduct, and the Attorney's Oath of Office.

----------

### Johnson v. Ohio Dept. of Youth Services,
231 F.Supp.2d 690, N.D.Ohio, Dec 03, 2002

Disciplinary rule under Ohio Code of Professional Responsibility barring communication with represented party does not prohibit ex parte contact with a former employee of represented government department. Code of Prof.Resp., DR 7-104(A)(1).

"Ex parte contact with a former employee is not, however, prohibited. *United States v. Beiersdorf-Jobst, Inc.,* 980 F.Supp. 257, 260- 61 (N.D.Ohio 1997). The issue raised by defendants' motion to strike is, accordingly, whether Mr. Parrish is affiliated with the Department and remains such that he should be deemed to be a "party ... represented by a lawyer in [this] matter," as those terms are used in D.R. 7-104(A)(1). I conclude that he is not; therefore, the motion to strike shall be overruled because it was not improper for plaintiff's attorney to have contacted Mr. Parrish or to have secured his affidavit.
Mr. Parrish is not on a leave of absence: he his retired due to disability. Though Ohio law may give him a right to return when and if his health is restored, there is nothing in the record that would indicate that either he or the Department has any present expectation, or is likely to develop a future expectation, that he will, in fact, someday be back at work. Even if Mr. Parrish's continuing relationship were such that he could be viewed as a current employee (i.e., his absence from the office was temporary, and he and the

82

Department expected that he would be returning in due course), <u>D.R. 7-104(A)(1)</u> does not prohibit plaintiff's counsel's contact with him. The Rule bars ex parte contact only with employees with "authority to bind the government [or] to settle a litigable matter" or whose "act or omission gave rise to the matter."
None of these circumstances exists. Nothing Mr. Parrish may say can bind the Department. He cannot settle this case. Nothing he did or failed to do is alleged to give rise to plaintiff's complaint. As in *Beiersdorf-Jobst,* "the underlying rationale behind the rule, *i.e.,* maintaining the integrity of the attorney-client relationship, is not undermined by allowing uncounseled interviews with former employees who have no existing relationship with, and therefore cannot bind, a represented corporation." <u>980 F.Supp. at 261</u>."  Id., at 692

----------

**<u>U.S. v. Beiersdorf-Jobst, Inc.,</u>**
980 F.Supp. 257, N.D.Ohio, Sep 26, 1997

Proscription against communications with represented parties created by Ohio Code of Professional Responsibility does not extend to bar ex parte communications with former employees of represented corporation. <u>Ohio Code of Prof.Resp., DR 7-104(A)(1).</u>

"My review of case law and opinions from both the state and national ethics committees convinces me that the proscription against communications with represented parties does not extend to former employees of a represented corporation. Nothing in the text of <u>DR 7-104(A)(1)</u> indicates that it was meant to forbid *ex parte* communications with ex-employees. Moreover, the underlying ***262** rationale behind the rule, *i.e.,* maintaining the integrity of the attorney-client relationship, is not undermined by allowing uncounseled interviews with former employees who have no existing relationship with, and therefore cannot bind, a represented corporation.
Furthermore, policy considerations militate against restricting communications with former employees. A basic cornerstone of our judicial system is the unimpeded flow of information between adversaries to encourage the early detection and elimination of both undisputed and meritless claims. Requiring the approval and the presence of corporate counsel would have the inevitable effect of chilling the exchange of information, because former employees would most likely be hesitant about speaking freely in the presence of their former employer's attorney. *See <u>Polycast,</u> <u>129 F.R.D. at 627</u>* ("former employees often have emotional or economic ties to their former employer and would sometimes be reluctant to come forward with potentially damaging information if they could only do so in the presence of the corporation's attorney").

After considering the case law construing <u>DR 7-104(A)(1)</u> and its counterpart, Model Rules Rule 4.2, the purposes of these ethical standards, and the policies of modern-day adversarial litigation, I hold that attorneys practicing in the Northern District of Ohio are not barred from *ex parte* communications with former employees of adverse corporations. In so holding, I recognize that at the heart of Jobst's argument is its concern that statements made by former employees will be admissible against it as party admissions. I have already found that such statements cannot be party admissions if made by an employee who is no longer employed by and has no continuing relationship with Jobst. However, should the government attempt to admit such statements against Jobst as party admissions, Jobst can then move for exclusion of such statements."
Id., at 261-262

/////////////////////////////

## Oklahoma

Oklahoma Rules of Professional Conduct, Rule 4.2

Communication with Person Represented by Counsel

In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

COMMITTEE COMMENT

...

In the case of an organization, this Rule prohibits communications by a lawyer for another person or entity concerning the matter in representation with persons having managerial responsibility on behalf of the organization, and with any other person whose act or omission in connection with that matter may be imputed to the organization for purposes of civil or criminal liability or whose statement may constitute an admission on the part of the organization. If an agent or employee of the organization is represented in the matter by his or her own counsel, the consent by that counsel to a communication will be sufficient for purposes of this Rule. Compare Rule 3.4(f).

...

----------

Oklahoma Bar Association Articles by the Ethics Counsel
http://www.okbar.org/members/ethicscounsel/articles/051504.htm

Hendryx, G., (OBAEthics Counsel), Can I Communicate with Another Lawyer's Client? Compliance with Rule 4.2

Oklahoma Rules of Professional Conduct 4.2 (O.R.P.C. 4.2) prohibits a lawyer from communicating about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so. By restricting lawyers from communicating directly with persons who are represented, Rule 4.2 preserves the attorney-client relationship, protects clients against overreaching by other lawyers, and reduces the likelihood that clients will disclose confidential or damaging information (ABA Formal Ethics Op. 95-396, 1995)

....

These are only but a few of the dilemmas faced by attorneys when complying with Rule 4.2 communications. Much more complex issues are raised when the represented party is an organization with current and former employees. Care should be taken to review the applicable case law before contacting persons who may be represented in a matter. Violation of the rule may result in suppression of the evidence, return of documents, monetary sanctions, disqualification and discipline.

----------

**Fulton v. Lane,**
829 P.2d 959, 1992 OK 25, Okla., Feb 14, 1992

84

After attorney for plaintiff whose husband allegedly received negligent care and maintenance at defendant corporation's nursing home conducted ex parte interviews with nursing home employees, nursing home obtained court order prohibiting all ex parte communications with any employee or former employee of nursing home, and plaintiff petitioned for writ of mandamus. The Supreme Court held that rule concerning ex parte communications with party represented by counsel barred plaintiff's attorney only from speaking with those employees with authority to bind the corporation.
Writ granted.

"Rule 4.2, 5 O.S.Supp.1988, Ch. 1, App. 3-A, prohibits ex parte communications about the subject of representation with a party the lawyer knows to be represented by counsel without the consent of the opposing attorney. However, the Committee Comments to Rule 4.2 indicate that not all communication with the employees of an organization represented by counsel are prohibited. The Committee Comment provides in pertinent part:
"... In the case of an organization, this Rule prohibits communications by a lawyer for one party concerning the matter in representation with persons having a managerial responsibility on behalf of the organization, and with any other persons whose act or omission in connection with that matter may be imputed to the organization for purposes of civil or criminal liability or whose statement may constitute an admission on the part of the organization...."
4) Rule 4.2 does not prohibit communications with all of St. Simeon's employees and former employees. However, its application may extend beyond those employees controlling the corporation. _Upjohn Co. v. United States_, 449 U.S. 383, 390, 101 S.Ct. 677, 683, 66 L.Ed.2d 584, 591-92 (1981). In litigation involving corporations, Rule 4.2 applies to only those employees who have the legal authority to bind a corporation in a legal evidentiary sense, i.e., those employees who have "speaking authority" for the corporation. _Chancellor v. Boeing Co._, 678 F.Supp. 250, 252-53 (D.Kan.1988); _Wright_, supra; Annot., "Right of Attorney to Conduct Ex Parte Interviews with Corporate Party's Nonmanagement Employees," 50 A.L.R.4th 652, 657-58 (1986).
5) Fulton is prohibited from conducting ex parte interviews with St. Simeon employees if they have managing authority sufficient to give them the right to speak for, and bind, the corporation. Because former employees may not speak for or bind the corporation, ex parte communications with former employees are not prohibited."   Id., at 960


//////////////////////////////

## Oregon

Oregon Rules of Professional Conduct. Rule 4.2

Communication with Person Represented by Counsel

In representing a client or the lawyer's own interests, a lawyer shall not communicate or cause another to communicate on the subject of the representation with a person the lawyer knows to be represented by a lawyer on that subject unless:

(a) the lawyer has the prior consent of a lawyer representing such other person;

(b) the lawyer is authorized by law or by court order to do so; or

(c) a written agreement requires a written notice or demand to be sent to such other person, in which case a copy of such notice or demand shall also be sent to such other

85

person's lawyer.

----------

Oregon State Bar Formal Ethics Opinon No. 1991-80

Communicating with Represented Persons:

Current and Former Employees of Entities Represented by Counsel, Attorney-Client Privilege

Facts:

      Plaintiff's Attorney represents Plaintiff in litigation against Corporate Defendant. Corporate Defendant is represented by Defense Attorney. Current Employee is a current employee of Corporate Defendant. Former Employee is a former employee of Corporate Defendant. Current Employee and Former Employee are not separately represented by Defense Attorney or by other counsel.

Questions:

      1.    May Plaintiff's Attorney talk to Current Employee about the facts of the underlying dispute without the permission of Defense Attorney?

      2.    May Plaintiff's Attorney talk to Former Employee about the facts of the underlying dispute without the permission of Defense Attorney?

      3.    May Plaintiff's Attorney discuss with Current Employee or Former Employee communications between Current Employee or Former Employee on the one hand and Defense Attorney on the other?

Conclusions:

      1.    See discussion.

      2.    Yes.

      3.    No, qualified.

Discussion:

      …

      With respect to Former Employee, the simple answer is that former employees and former officers and directors who are not in fact represented by counsel are not represented parties within the meaning of DR 7-104(A)(1). See, e.g., Wright v. Group Health Hosp., supra; Triple A Machine Shop, Inc. v. State, 213 Cal.App3d 131, 261 Cal Rptr 493 (1989). See also ABA Formal Ethics Op No 91-359. Consequently, DR 7-104(A)(1) does not prevent Plaintiff's Attorney from contacting Former Employee without Defense Attorney's permission.

      Plaintiff's Attorney may not, however, use any conversations with Current Employee or Former Employee to invade Corporate Defendant's attorney-client privilege. Thus, Plaintiff's Attorney may not ask or permit Current Employee or Former Employee to disclose to Plaintiff's

86

Attorney any communications that Current Employee or Former Employee had with Defense Attorney pertaining to their employment. Cf. ORS 9.460(3); DR 4-101; Amarin Plastics, Inc. v. Maryland Cup Corp., 116 FRD 36, 42 (D Mass 1987); Porter v. Arco Metals Div., supra, 642 F Supp at 1118. See also OSB Legal Ethics Op Nos 1991-50, 1991-44.

This limitation applies to Plaintiff's Attorney's conversations with Current Employee even if Current Employee is not a represented party within the meaning of DR 7-104(A)(1). This is due, inter alia, to the 1987 amendment to the definition of "representative of the client" in OEC 503(1)(d), which eliminated the control group test for attorney-client privilege and provided, in effect, that all employees could have conversations with corporate counsel that would be subject to the corporation's attorney-client privilege. CF. Upjohn Co. v. United States, 449 US 383, 394, 101 S Ct 677, 66 L Ed2d 584 (1981).

This prohibition also applies to Plaintiff's Attorney's conversations with Former Employee about communications that Former Employee may have had with Corporate Counsel either before or after Former Employee left Corporate Defendant's employment. Communications by Corporate Counsel with a former corporate employee about the subject of that former employee's employment are subject to attorney-client privilege. See, e.g., Upjohn Co. v. United States, supra, 449 US at 402-403 (Burger, C.J., concurring); Admiral Ins. v. U.S. Dist. Court for Dist. of Ariz., 881 F2d 1486, 1493 (9th Cir 1989); Command Transp., Inc. v. Y.S. Line (USA) Corp., 116 FRD 94, 97 (D Mass 1987); Amarin Plastics, Inc. v. Maryland Cup Corp., supra, 116 FRD at 42.

It follows that unless Corporate Defendant has waived its attorney-client privilege or the conversations between Defense Attorney on the one hand and Current Employee or Former Employee on the other are not privileged for some other reason (because, for example, third parties unrelated to Corporate Defendant were present), Plaintiff's Attorney may not discuss with Current Employee or Former Employee any communications that they may have had with Defense Attorney.

Approved by Board of Governors, July 1991.

----------

**Brown v. State of Or., Dept. of Corrections,**
173 F.R.D. 265, 73 Fair Empl.Prac.Cas. (BNA) 1852, D.Or., May 02, 1997

Former public employee bringing race discrimination claim against his former employer could informally contact former employees of his former employer, even those whose conduct when employed at former employer is now at issue or those who were formerly in management positions, and employees who were transferred to another state agency were treated as former employees. Or.Code of Prof.Resp., DR 7-104.

"Relying again on Opinion No.1991-80, the court finds that all former employees, even those whose conduct when employed at the Department of Corrections is now at issue or those who were formerly in management positions, are not represented parties within the meaning of DR 7-104 and may be contacted *ex parte* by Brown's attorney.
3. *Employees Now Working at a Different State Agency*
Brown questions whether an employee who formerly worked at the Department of Corrections, but is now working for another agency of the State of Oregon, should be treated as a current employee or a former employee. The defendants contend that transferred employees should be classified as former employees when analyzing these issues because, although the Attorney General's office represents all agencies of the

87

State of Oregon, it does not do so until asked.

Agencies of the State of Oregon are treated as separate entities by the court. Conduct occurring in one agency is not imputed to another agency; knowledge of one agency is not imputed to another agency. An employee **\*269** who is transferred from the Department of Corrections to another agency of the State of Oregon shall be treated as a former employee of the Department of Corrections when analyzing these issues.

4. *Attorney-Client Privilege*

In Opinion No.1991-80, the Oregon State Bar states that an attorney making *ex parte* contacts with either current or former employees must be extremely cautious to avoid invading the attorney-client privilege claimed by the opposing party. Brown's attorney shall abide by this restriction. In particular, he may neither ask nor permit a current or former employee to disclose privileged communications. If counsel for Brown recognizes that an interviewee is disclosing privileged communications, he shall stop the interviewee from continuing to speak and explain the restriction to that person.

5. *Required Disclosures*

Counsel for Brown has offered to advise all current and former employees being interviewed *ex parte* of the following information:

(1) counsel's representative capacity;

(2) counsel's reason for seeking the interview;

(3) the right of the current or former employee to refuse to be interviewed; and

(4) the right of the current or former employee to have his or her own counsel present during the *ex parte* contact.

The defendants have also asked for these disclosures, along with the advance notice which the court determined above was unnecessary. In <u>Carter-Herman</u> <u>v. City of Philadelphia, 897 F.Supp. 899, 904 (E.D.Pa.1995)</u>, the court required these four pieces of information to be disclosed prior to *ex parte* interviews concerning sex discrimination within a police department. This court believes that this limited disclosure is in the spirit of another ethical rule, <u>DR 1- 102(A)(3)</u>, which considers it professional misconduct for a lawyer to "[e]ngage in conduct involving dishonesty, fraud, deceit or misrepresentation." Accordingly, counsel for Brown, or counsel's agents, shall disclose these four pieces of information at the beginning of any *ex parte* contact so that the person will be fully informed before agreeing to talk. If the person declines to be interviewed, the contact shall end.   Id., at 268-269

///////////////////////////

## Pennsylvania

Pennsylvania Rules of Professional Conduct, Rule 4,2

Communication with Person Represented by Counsel

In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order.

COMMENT

...

 [7] In the case of a represented organization, this Rule prohibits communications with a constituent of the organization who supervises, directs or regularly consults with the organization's lawyer concerning the matter or has authority to obligate the organization with respect to the matter or whose act or omission in connection with the matter may be

88

imputed to the organization for purposes of civil or criminal liability. Consent of the organization's lawyer is not required for communication with a former constituent. If a constituent of the organization is represented in the matter by his or her own counsel, the consent by that counsel to a communication will be sufficient for purposes of this Rule. Compare Rule 3.4(f). In communicating with a current or former constituent of an organization, a lawyer must not use methods of obtaining evidence that violate the legal rights of the organization. See Rule 4.4.

...

----------

Pennsylvania Ethics Opinion 90-142, 1990 WL 678969 (12/7/90)

Pennsylvania Bar Association Committee on Legal Ethics and Professional Responsibility

**\*1** COMMUNICATING WITH EMPLOYEES AND FORMER EMPLOYEES OF ADVERSE PARTY

   The Legal Ethics and Professional Responsibility Committee of the Pennsylvania Bar Association has received numerous inquiries concerning the extent to which lawyers may contact existing and former employees of opposing corporate plaintiffs or defendants. The Committee has evaluated the applicable Rules of Professional Conduct, existing case law, and related ethics opinions in order to develop guidelines to govern attorney conduct. The conclusions and supporting rationale of the Committee appear as follows.

I. CONCLUSIONS OF THE COMMITTEE

   The Committee concludes as follows:
   1. Unless a lawyer has the consent of opposing counsel or is authorized by law to do so, in representing a client, a lawyer shall not conduct ex parte communications about the matter of the representation with:
   a. present managerial employees of an opposing party, and with any other employee whose acts or omissions may be imputed to the corporation for purposes of civil or criminal liability;
   b. present employees of an opposing party whose statements may constitute admissions on the part of the corporation; and
   c. present or former employees of an opposing party when there is a substantial likelihood that the communication will cause or elicit the disclosure of confidential information subject to the attorney-client privilege.
   2. A lawyer representing a client may conduct ex parte communications about the matter of the representation with:
   a. present and former employees of an opposing party if such party's counsel consents;
   b. present and former employees of an opposing corporation if ex parte communication is specially authorized by law;
   c. present nonmanagerial employees of an opposing party who have not made acts or omissions in connection with the matter in issue that may be imputed to the party for purposes of its liability and whose statements will not constitute admissions on the part of the corporation; and
   d. former employees of an opposing party under the conditions set forth in Part V of this Opinion.
   3. A lawyer may not under any circumstances contact an existing or former employee of the opposing party that she knows to be represented by separate counsel without the consent of that counsel.

...

V. FORMER EMPLOYEES

89

We also are of the view that an organization's asserted proprietary interest in controlling the testimony of former employees is less significant and may be counterbalanced by the opposing party's discovery rights. [FN12] Cf. Amarin Plastics, Inc. v. Maryland Cup Corp., 116 F.R.D. 36, 41 (D.Mass.1987) (permitting informal contacts with company's ex-president only because he had left its employ before the contract dispute giving rise to suit); Neisig v. Team I, 76 N.Y.2d 363, 558 N.E.2d 1030, 1032 (1990) (holding that DR 7-104(A)(1) applies only to current employees, not to former employees); see also Law of Lawyering § 4.2:107, at 738-39 (Former intermediate and higher level employees "should be allowed to decide for themselves whether they are still so attached to the organization as to refuse to give statements except in the presence of the organization's lawyer.").

While the Committee believes that its approach to the former employee issue reflects the prevailing sentiment, attorneys should be cognizant of a recent federal court decision in New Jersey construing the Comment to preclude virtually any ex parte contact with former employees of an organization. In Public Service Electric and Gas Company v. AEGIS, 745 F.Supp. 1037 (D.N.J.1990) ("PSE & G"), [FN13] Judge Politan interpreted the "any other person" phrase in the Comment to Rule 4.2 to apply to former employees. He further concluded that, wherever there is the "possibility" that the statement of a witness will be imputed [FN14] to the organization, ex parte contact must be prohibited. [FN15] Id. at 1042. The PSE & G court's "understandable bright line test" admittedly "has the decided benefit of simplicity." At the same time, however, it forecloses certain avenues of informal discovery and virtually mandates the need for costly formal depositions of even tangential witnesses.

**\*10** The Committee concludes, contrary to the PSE & G ruling, that the theory that former employees are impliedly represented by their former employers is a fiction which operates to preclude legitimate fact gathering efforts by opposing counsel. With appropriate safeguards, the risk of overreaching by the investigating party should be minimized, while at the same time protecting an attorney's right to learn and assemble information off-the-record without fear of facing disciplinary action or disqualification. Therefore, the Committee concludes that Rules 4.2 and 4.3 permit an attorney to communicate with an organization's unrepresented former employees under the following conditions:

(1) the attorney (or anyone under her direction) is prohibited from eliciting or using information that may be protected by the attorney-client privilege;

(2) the attorney immediately must disclose her capacity to the former employee;

(3) if the person contacted requests that her personal attorney or the company's attorney be present for the interview, the request must be honored; and

(4) the attorney should advise such persons that they have the right to refuse to be interviewed or, if they wish, to be interviewed with the company's counsel present.

Where an attorney is in doubt about whether she is authorized to pursue informal discovery of current or former employees, it is sound practice to seek consent of opposing counsel or advance court approval to interview them. See University Patents. Inc. v. Kligman, C.A. No. 89-3525, slip op. at 4 (E.D.Pa. May 7, 1990); Cagguila v. Wyeth Laboratories Inc., 127 F.R.D. 653, 654 (E.D.Pa.1989); Neisig v. Team I, 149 A.D.2d 94, 545 N.Y.S.2d 153 (1989); Wyeth, "Talking to the Other Side's Employees and Ex-Employees," Litigation, Vol. 15, No. 4, at 59 (Summer 1989).

VI. SUMMARY

Under Rule 4.2, absent the consent of opposing counsel or authorization by law, an attorney is prohibited from interviewing a current managerial employee and any other employee whose actions or omissions in connection with the matter in issue may be imputed to the corporation for purposes of civil or criminal liability or when an employee's statement may constitute an admission on the part of the organization. However, the fact that a former employee had managerial authority while employed is not sufficient to prevent ex parte communication.

90

Moreover, even where ex parte communication with either a current or former employee of an organization is authorized, an attorney is precluded from eliciting the disclosure of information subject to the attorney-client privilege.

----------

**Pritts v. Wendy's of Greater Pittsburgh, Inc.,**
1998 WL 1004930, 37 Pa. D. & C.4th 158, Pa.Com.Pl., Jun 23, 1998

Defendant was not entitled to a protective order precluding plaintiffs' counsel from interviewing former employers of defendant who were not represented by counsel.

"Most of the persons whom plaintiffs' seeks to interview are former employees. Neither the text of Rule 4.2 nor its comments specifically refer to former employees. Rule 4.2 does not cover communications with unrepresented persons. While certain persons who are connected with an organization that is represented by counsel should be covered by the representation by virtue of their relationship with that organization, a person who no longer has any relationship with the organization cannot be considered a client. Rule 4.2 bars a lawyer from communicating with "a party the lawyer knows to be represented by another lawyer in the matter." A former employee who has no existing relationship with a corporate party is not a "party." Therefore, the language of Rule 4.2 does not reach communications with former employees who have not retained counsel.
This ruling that Rule 4.2 does not prohibit ex parte communications with any former employees of an opposing party is consistent with formal opinion 91- 359 issued by the American Bar Association Committee on Ethics and Professional Responsibility which considered the prohibitions of Rule 4.2 with respect to contacts with a former employee of an opposing party."   Id., at 164

"On December 7, 1990, the Pennsylvania Bar Association's Committee on Legal Ethics and Professional Responsibility issued formal opinion no. 90-142 which addressed the issue of the extent to which lawyers may contact existing and former employees of opposing corporate plaintiffs or defendants. With respect to former employees, the committee concluded that Disciplinary Rules 4.2 and 4.3 allow an attorney to communicate with an organization's unrepresented former employees under the following circumstances:
"(1) The attorney is prohibited from eliciting or using information that may be protected by the attorney-client privilege;
"(2) The attorney must immediately disclose his or her capacity to the former employee;
"(3) If the person contacted requests personal counsel or the company's counsel to be present for the interview, the request must be honored;
"(4) The attorney should advise former employees that they have the right to refuse to be interviewed **167 or, if they wish, to be interviewed with the company's counsel present;
"(5) The lawyer may not contact a former employee of the opposing party that the lawyer knows to be represented by separate counsel without the consent of that counsel."
In his brief, plaintiffs' counsel recognizes that any ex parte communications with former employees are subject to the constraints of the attorney-client privilege. Under Disciplinary Rule 4.3, plaintiffs' counsel is required to disclose his capacity to former employees; I have no reason to believe that plaintiffs' counsel does not intend to do so. Under Rule 4.2, plaintiffs' counsel cannot contact a former employee who has retained counsel; I have no reason to believe that plaintiffs' counsel intends to do so.
*7 As to the remaining two requirements, it appears from plaintiffs' brief that plaintiffs' counsel intends to follow ABA formal opinion 91-359 which does not impose requirements that the attorney advise former employees that they have the right to refuse to be

91

interviewed or, if they wish, to be interviewed with the company's counsel present. Obviously, an attorney violates Rule 4.3 if the attorney causes an unrepresented person to believe that he or she has an obligation to submit to an interview or if the attorney disregards the request of an unrepresented person that the interview be terminated. However, Rule 4.3 does not impose a "Miranda" requirement that unrepresented persons be advised that they have the right to refuse to be interviewed or to be interviewed only with the company's attorney present. Furthermore, since Rule 4.2 does not extend to former employees, this rule cannot be the source of any "Miranda" requirement. Consequently, there is no source for this "Miranda" requirement in the Rules of Professional Conduct."   Id., at 166-167

----------

### Spencer v. Steinman,
179 F.R.D. 484, 41 Fed.R.Serv.3d 398, E.D.Pa., Jun 01, 1998

Even assuming that "no contact" rule precluding contact between a lawyer and an opposing party was applicable to defendant's former counsel, rule did not prohibit contact with defendant's former counsel in which he was asked by counsel for plaintiff for his personal recollection about an event he allegedly witnessed; plaintiff's counsel was not seeking disclosure of information which would either bind defendant or constitute an admission by an agent of defendant, and inquiry did not tread upon communication protected by the attorney-client privilege. Rules of Prof.Conduct, Rule 4.2, 42 Pa.C.S.A.

"In general terms, Rule 4.2 prohibits contacts between a lawyer and a party who is represented by a lawyer concerning the matter in controversy. Pa. Rule of Professional Conduct 4.2 cmt. Even assuming that former counsel could be deemed a "former employee" for purposes of the reach of Rule 4.2, there is substantial controversy as to whether this "no contact" rule applies at all to contacts with former employees. See Action Air Freight, Inc. v. Pilot Air Freight Corp., 769 F.Supp. 899, 902 (E.D.Pa.1991) (collecting cases). In fact, neither the text nor the accompanying commentary to Rule 4.2 expressly refer to "former employees." Moreover, even assuming that Rule 4.2 applies to contacts between counsel and former employees, the courts are in disagreement as to the type and nature of the contacts prohibited by the Rule.
Some courts have agreed that permitting ex parte contacts by opposing counsel with former employees does not impinge upon the attorney-client relationship and, therefore, have concluded that there is no general bar against such contacts. .....Yet, at least one court has staked a middle ground, calling for an assessment of the likelihood that the contact in question has actually impaired the policy underlying Rule 4.2, of protecting privileged information from being disclosed to an opponent in litigation. Under this approach:
That assessment would depend upon weighing such factors as the positions of the former employees in relation to the issues in the suit; whether they were privy to communications between the former employer and its counsel concerning the subject matter of the litigation, or otherwise; the nature of the inquiry by opposing counsel; and how much time had elapsed between the end of the employment relationship and the questioning by opposing counsel. When such factors point to the conclusion that there is a substantial risk of disclosure of privileged matters, as opposed to the risk of the adverse party learning information which might be damaging to the former employer's litigation position, then appropriate notice should be given to the former employees concerning the prohibition against disclosing attorney-client confidences of the former employer and, perhaps, the former employer's counsel should be notified prior to any ex parte interview. Any question concerning the appropriateness of the adversary's decision to proceed with ex parte contact with specific former employees can be resolved by determining whether any information gathered by the opponent actually intrudes upon

92

privileged matters. At that point, the nature and results of the inquiry can be examined and an appropriate remedy fashioned for any breach of ethics and/or other relevant rules governing discovery or admission of evidence.
*Dillon Companies, Inc. v. Sico Co.*, No. 92-1512, 1993 WL 492746, at *5 (E.D.Pa. Nov. 24, 1993).
The Court is persuaded that the *Dillon* factors reflect a sensible and policy-oriented middle ground and, in the absence of a bright-line test adopted by either the Pennsylvania Supreme Court or the Third Circuit, will apply them to inform its judgment in this case."   Id., at 490-491

///////////////////////////

## Rhode Island

Rhode Island Rules of Professional Conduct, Rule 4.2

Communication with person represented by counsel.

In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

COMMENTARY

...

In the case of an organization, this Rule prohibits communications by a lawyer for one party concerning the matter in representation with persons having a managerial responsibility on behalf of the organization, and with any other person whose act or omission in connection with that matter may be imputed to the organization for purposes of civil or criminal liability or whose statement may constitute an admission on the part of the organization. If an agent or employee of the organization is represented in the matter by his or her own counsel, the consent by that counsel to a communication will be sufficient for purposes of this Rule. Compare Rule 3.4(f)....

----------

Ethics Advisory Panel of Rhode Island SupCt, Opinion 91-74 (10/30/91)

Digest of Ethics Advisory Panel

An attorney seeks Panel advice as to permissible conduct by attorneys when performing discovery involving former employees of parties in litigation.

The Panel takes the position that the Rhode Island Rules of Professional Conduct do not prohibit attorneys and their agents from conducting ex parte interviews of former employees of an adverse corporate party.  Also, the ABA Standing Committee on Ethics and Professional Responsibility issued Formal Opinion 91-359 entitled "Contact with Former Employee of Adverse Corporate Party" which concludes that Rule 4.2 does not prohibit ex parte interviews of former employees of an adverse corporate party.  Courts have recognized that Rule 4.2 was not meant to cover a corporate party's former employees, but is applicable only when a "party" witness is involved.  Polycast

93

Technology Corp. v. Uniroyal, Inc., 129 F.R.D. 621, 625 (S.D.N.Y.) 1990), Amland Properties v. Alcoa, et al., Civ. No. 86-1830 (D.N.J. January 28, 1991).

Rule 4.3, entitled "Dealing with Unrepresented Person" requires only that when dealing with a person who is not represented by counsel, the lawyer shall 1) make no misrepresentation of disinterest and 2) if the lawyer becomes aware that there is a misunderstanding, then the lawyer shall make reasonable efforts to correct the misunderstanding.

//////////////////////////////

## South Carolina

South Carolina Rules of Professional Conduct, Rule 4.2

COMMUNICATION WITH PERSON REPRESENTED BY COUNSEL

In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

COMMENT:

...

In the case of an organization, this Rule prohibits communications by a lawyer for one party concerning the matter in representation with persons having a managerial responsibility on behalf of the organization, and with any other person whose act or omission in connection with that matter may be imputed to the organization for purposes of civil or criminal liability or whose statement may constitute an admission on the part of the organization. If an agent or employee of the organization is represented in the matter by his or her own counsel, the consent by that counsel to a communication will be sufficient for purposes of this Rule. Compare Rule 3.4(f).

...

----------

South Carolina Bar Ethics Advisory Opinion 01-01

Upon the request of a member of the South Carolina Bar, the Ethics Advisory Committee has rendered this opinion on the ethical propriety of the inquirer's contemplated conduct. This Committee has no disciplinary authority. Lawyer discipline is administered solely by the South Carolina Supreme Court through its Commission on Lawyer Conduct. ...

FACTS:

Attorney wishes to investigate a possible suit against Corporation X in a premises liability case. One theory of liability is that corporation's Former Employee was negligent in failing to adequately clean the floor. Another theory is that the corporation was negligent in failing to provide Former Employee with enough assistance or supplies to adequately clean the floor. Former Employee no longer works for Corporation X.

94

Prior to filing suit, Attorney would like to contact Former Employee of Corporation X to investigate the claim. No suit has been filed, and Corporation X has not been put on notice of the claim.

QUESTIONS:

1. May Attorney contact Corporation X's Former Employee to investigate the claim prior to filing suit?

2. Are there any limitations on Attorney's ability to interview Corporation X's Former Employee?

3. If an interview provides favorable information, may Attorney obtain an affidavit from Former Employee prior to filing suit?

SUMMARY:

Under the Rules of Professional Conduct, Attorney may contact Former Employee of Corporation X so long as Former Employee is not represented by counsel and Attorney fully discloses the nature of the matter and purpose of the contact. Attorney must be acutely aware of his obligations under rule 4.4, and be careful not to elicit the privileged or confidential information of Corporation X.

OPINION:

...

Although not expressly asked, it is important to address the question of whether Former Employee may be contacted when Attorney has knowledge that Corporation X is represented by counsel. Application of Rule 4.2 to these facts, again, allows contact with Former Employee. Former Employee is not a party in the matter because he or she no longer works for Corporation X. Former Employee may once have been a "party" under this Rule, but he or she no longer is when the employment ceases. Termination of the employment relationship precludes the ability of Corporation X to be bound by anything Former Employee says or does. See, South Carolina and Federal Rule of Evidence 801(d)(2)(D) (admission by Party-Opponent is "a statement made by the party's agent, or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship." (emphasis added)). Former Employee is not represented by counsel for Corporation X for purposes of Rule 4.2. To the extent our Ethics Advisory Opinion 97-36 is inconsistent with this opinion, it is hereby expressly overruled. See generally, ABA Formal Opinions 91-359 (1991) ("prohibition of Rule 4.2 with respect to contacts by a lawyer with employees of an opposing corporate party does not extend to former employees of that party") and 95-396 (1995) ("It should be noted that Rule 4.2 does not prohibit contacts with former officers or employees of a represented corporation, even if they were in one of the categories with which communication was prohibited while they were employed.")

With respect to the second question posed regarding limitations on Attorney's ability to interview Former Employee, it is helpful to review the requirements of Rule 4.3. This rule states:

In dealing on behalf of a client with a person who is not represented by counsel, a lawyer shall not state or imply that the lawyer is disinterested. When the lawyer knows or reasonably should know that the unrepresented person misunderstands the lawyer's role in the matter, the lawyer shall make reasonable efforts to correct the misunderstanding.

Attorney must inform Former Employee of his or her role, the identity of Attorney's client, the fact that former employer is an adverse party, and why Attorney seeks to interview Former Employee.

95

It is also extremely important to review Rule 4.4 which states:

In representing a client, a lawyer shall not use means that have no purpose other than to embarrass, delay, or burden a third person, or use methods of obtaining evidence that violate the legal rights of such a person. (emphasis added).

Attorney must be careful when delving into confidential or privileged areas in the interview with Former Employee. Attorney must be careful, however, not to seek to induce Former Employee to violate the privilege attaching to attorney-client communications to the extent his or her communications as a former employee with his or her former employer's counsel are protected by the privilege. Such an attempt would violate Rule 4.4. Likewise, it may be improper to induce a former employee to divulge other types of confidential or proprietary material under Rule 4.4. See Camden v. State of Maryland, 910 F.Supp. 1115, 1116 (D. Md. 1996) ("a lawyer representing a client in a matter may not, subject to a few exceptions, have ex parte contact with the former employee of another party interested in the matter when the lawyer knows or should know that the former employee has been extensively exposed to confidential client information of the other interested party.").

With respect to the last inquiry posed, Attorney may obtain an affidavit from Former Employee prior to filing suit, as long as none of the rules above are violated.

The Committee admonishes the Bar to be careful when contemplating contact with former employees. "The attorney who seeks [prior] court approval does not risk an ethical violation, but one who does not acts at his or her own peril." In re Aircrash Disaster, 909 F.Supp. 1116 (N. D. Ill. 1995). Such an interview is "a veritable minefield in which. . . . short and tentative steps are the most appropriate." Driggs Reorg. Corp. v. Driggs, 217 B.R. 67 (D. Md. 1988). Because the American Bar Association Standing Committee on Ethics and Professional Responsibility or the South Carolina Ethics Advisory Committee provides a particular analysis and interpretation of Rule of Professional Conduct 4.2, does not mean that a particular court in or outside the State of South Carolina will draw the same conclusions. Of particular note is that federal law governs the conduct of attorneys in federal courts. In re Snyder, 472 U.S. 634, 645 n.6 (1985).

...

In Florida, some courts draw the line not on the nature of the prior employment, but rather on the former employee's knowledge. Contact may be had with any ex-employee, but no confidential information may be elicited. Rent Club Inc. v. TransAmerica Rental Finance Corp., 811 F.Supp. 651 (M.D. Fla. 1992). In another case, however, a Florida court decided that ex-employees can be freely interviewed ex parte, but only subject to a series of guidelines that range from counsel identifying him or herself as adverse to the former employer to counsel delivering all of his or her work product to the other side, listing the employees contacted and all interview notes. Lang v. Reedy Creek Improvement District, 888 F.Supp. 1143 (M.D. Fla. 1995).

Without being mindful of the views of various courts and jurisdictions on this subject, attorneys may find their evidence excluded and themselves disqualified from further representation. See, Zachair Ltd. v. Driggs, 965 F.Supp. 741 (D. Md. 1997). It is the interpretation of this Committee, however, that Rule 4.2 does not, at present, preclude ex parte communications with former employees. Any other interpretation "should be made by a duly promulgated amendment to the rule itself, rather than by the gloss of caselaw." Davidson Supply Co., Inc. v. P.P.E., Inc., 986 F.Supp. 956, 958 (D. Md. 1997) (disagreeing with the Zachair opinion and relying upon the interpretation of Rule 4.2 given by the Maryland State Bar Association).

/////////////////////////

96

## South Dakota

South Dakota Codified Laws Rules of Professional Conduct, Rule 4.2

Communication with Person Represented by Counsel

In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order.

COMMENT:

...

[7] In the case of a represented organization, this Rule prohibits communications with a constituent of the organization who supervises, directs or regularly consults with the organization's lawyer concerning the matter or has authority to obligate the organization with respect to the matter or whose act or omission in connection with the matter may be imputed to the organization for purposes of civil or criminal liability. Consent of the organization's lawyer is not required for communication with a former constituent. If a constituent of the organization is represented in the matter by his or her own counsel, the consent by that counsel to a communication will be sufficient for purposes of this Rule. Compare Rule 3.4(f). In communicating with a current or former constituent of an organization, a lawyer must not use methods of obtaining evidence that violate the legal rights of the organization. See Rule 4.4.

**Midwest Motor Sports, Inc. v. Arctic Cat Sales, Inc.,**
144 F.Supp.2d 1147, D.S.D., Apr 23, 2001

"The Court is not here concerned with the voluminous number of cases addressing whether former employees of an organization may be contacted, because the investigator here contacted one current employee of Elliott Power Sports and Jon Becker, current owner of A-Tech...."

"However, like the district court in *Terra Int'l, Inc.,* the Court rejects a total ban on *ex parte* contacts with current employees of an organization or corporation, and the Court rejects as well unrestricted *ex parte* contacts with current employees of an organization or corporation. *Terra Int'l, Inc.,* 913 F.Supp. at 1320. Any current corporate or organization employee who is represented by counsel may not be contacted *ex parte* by opposing counsel. *Hill v. St. Louis Univ.,* 123 F.3d 1114, 1117 (8th Cir.1997). Additionally, the Court adopts the *Cole* holding, 903 F.Supp. at 979, that counsel or counsel's agent may not conduct *ex parte* interviews with five classes of an adversary corporation's or organization's current employees under Rule 4.2, unless counsel has the consent of the opposing attorney or is otherwise authorized by law to make such *ex parte* contact:
1. Current officials of the corporation or organization who have managerial responsibility;
2. Other current corporate or organizational employees whose act or omission in connection with the matter may be imputed to the corporation or organization for

97

purposes of civil or criminal liability;

3. Those who are responsible for implementing the advice of the corporation's or organization's lawyers;

4. Any members of the corporation or organization whose own interests are directly at stake in a representation; and

5. An agent or servant of the corporation or organization whose statement **1157** concerns a matter within the scope of the agency or employment, which statement was made during the existence of the relationship and which is offered against the corporation or organization as an admission. However, *ex parte* interviews of employees who are "mere witnesses" to an event for which the corporation or organization is sued (i.e., holders of factual information), are permitted. Depending upon the information sought, *ex parte* questioning could be done under the fifth category."   Id., at 1156-1157

//////////////////////////////

## Tennessee

Tennesse Rules of Professional Conduct, Rule 4.2

Communication With a Person Represented by Counsel

In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

Comments

...

(4) If an agent or employee of an organization is represented in the matter by his or her own counsel, consent by that counsel will be sufficient for purposes of this Rule. Consent of the organization's lawyer is not required for communication with a former agent or employee. See Rule 4.4 regarding the lawyer's duty not to violate the organization's legal rights by inquiring about information protected by the organization's attorney-client privilege or as work-product of the organization's lawyer. In communicating with a current or former agent or employee of an organization, a lawyer shall not solicit or assist in the breach of any duty of confidentiality owed by the agent to the organization. See RPC 4.4.

...

----------

Board of Professional Responsibility of the Supreme Court of Tennessee, Formal Ethics Opinion 83-F-46

Inquiry is made by the plaintiff's attorney concerning the propriety of interviewing non-management or non-administrative level employees of a corporate defendant, to determine the facts of a disputed matter, without the knowledge or consent of the corporation or its attorney.

...

Generally, a lawyer may interview witnesses or prospective witnesses for opposing sides without the prior consent of opposing counsel.

98

Non-management and non-administrative level employees of an adverse party are to be considered as witnesses. The provisions of DR 7-104(A)(1) do not apply to witnesses. However, the management or administrative level employees of an adverse party are to be considered and treated as adverse parties. The provisions of DR 7-104(A)(1) fully apply to management and administrative level employees. See ABA Informal Opinion 1377.

There is no impropriety in the plaintiff's attorney interviewing non-management or non-administrative level employees of a corporate defendant without the knowledge or consent of the corporation or its attorney, provided the attorney identifies himself and informs the employee of the controversy and the reason for the inquiry prior to the interview.

----------

**Sherrod v. Furniture Center,**
769 F.Supp. 1021, 56 Fair Empl.Prac.Cas. (BNA) 1039, W.D.Tenn., Jan 10, 1991

Sexual harassment plaintiff's counsel's ex parte contact with former employee of corporate defendant did not violate rule prohibiting ex parte contacts with represented parties, in that defendant was not bound by former employee's statements. Tenn.Sup.Ct.Rules, Rule 8, Code of Prof.Resp., DR 7-104(A)(1).

"This court's local rules adopt the American Bar Association's Code of Professional Responsibility as its standards of professional conduct. That code provides at DR 7-104(A)(1):
(A) During the course of his representation of a client a lawyer shall not:
(1) Communicate or cause another to communicate on the subject of the representation with a party he knows to be represented by a lawyer in that matter unless he has the prior consent of the lawyer representing such other party or is authorized by law to do so.
The purpose of this ethical restraint is "to prevent situations in which a represented party may be taken advantage of by adverse counsel; the presence of the party's attorney theoretically neutralizes the contact." _Wright v. Group Health Hospital,_ 103 Wash.2d 192, 691 P.2d 564, 567 (1984). At the same time the rule should not be interpreted to preclude a lawyer from carrying on ex parte informal investigations with corporate employees if the goals of the rule are not at risk.
A corporation, acting through its individual employees, has some need for the protections of DR 7-104 as do individual clients. The question, of course, is which, if not all, corporate employees will adverse counsel be restricted from having ex parte contact. There are varying decisions but the rule that best supplies the intended protection of DR 7-104 without unnecessarily precluding the less expensive informal investigations and discovery of underlying facts from corporate witnesses is one that precludes contact only with corporate employees whose position gives them the legal authority to bind the employer in a legal evidentiary sense. By adopting this interpretation of the rule, the represented corporation cannot be bound by statements made in ex parte interviews and all parties are afforded broad latitude to otherwise investigate the case.
Former corporate employees have no authority under law to bind the corporation by their current deeds and statements. Only certain current employees can speak for the corporation. Therefore, DR 7-104(A)(1) does not apply to former employees and the plaintiff's counsel's ex parte contact with defendant's former employee is not in violation of DR 7-104(A)(1)."

99

///////////////////////////

**Texas**

Texas Disciplinary Rules of Professional Conduct, Rule 4.2

Communication with One Represented by Counsel

(a) In representing a client, a lawyer shall not communicate or cause or encourage another to communicate about the subject of the representation with a person, organization or entity of government the lawyer knows to be represented by another lawyer regarding that subject, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

(b) In representing a client a lawyer shall not communicate or cause another to communicate about the subject of representation with a person or organization a lawyer knows to be employed or retained for the purpose of conferring with or advising another lawyer about the subject of the representation, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

(c) For the purpose of this rule, "organization or entity of government" includes: (1) those persons presently having a managerial responsibility with an organization or entity of government that relates to the subject of the representation, or (2) those persons presently employed by such organization or entity and whose act or omission in connection with the subject of representation may make the organization or entity of government vicariously liable for such act or omission.

...

COMMENT:

...

4. In the case of an organization or entity of government, this Rule prohibits communications by a lawyer for one party concerning the subject of the representation with persons having a managerial responsibility on behalf of the organization that relates to the subject of the representation and with those persons presently employed by such organization or entity whose act or omission may make the organization or entity vicariously liable for the matter at issue, without the consent of the lawyer for the organization or entity of government involved. This Rule is based on the presumption that such persons are so closely identified with the interests of the organization or entity of government that its lawyers will represent them as well. If, however, such an agent or employee is represented in the matter by his or her own counsel that presumption is inapplicable. In such cases, the consent by that counsel to communicate will be sufficient for purposes of this Rule. Compare Rule 3.04(f). Moreover, this Rule does not prohibit a lawyer from contacting a former employee of a represented organization or entity of a government, nor from contacting a person presently employed by such an organization or entity whose conduct is not a matter at issue but who might possess knowledge concerning the matter at issue.

...

----------

Texas Professional Ethics Opinion No. 461 (10/88)

100

QUESTION PRESENTED

Does the Texas Code of Professional Responsibility prohibit the plaintiff's attorney from questioning present employees of a corporate defendant concerning matters within the scope of their employment that are the subject of the pending litigation?

FACTUAL BACKGROUND

The plaintiff brought suit in a state court in Texas against a defendant corporation, seeking damages for personal injury alleged to have been caused by negligent acts committed by employees of the defendant in the course and scope of their employment. No individual employee was named as a defendant.

After the defendant appeared and answered through its attorney, the plaintiff's attorney, personally or through his employees or agents, contacted present employees of the defendant to question them concerning matters within the course and scope of their employment which are the subject of the suit.

DISCUSSION

Answer to the question presented is governed by DR 7104, the pertinent portion of which reads as follows: "DR 7104. Communicating With One of Adverse Interest. (A) During the course of his representation of a client a lawyer shall not: (1) Communicate or cause another to communicate on the subject of the representation with a party he knows to be represented by a lawyer in that matter unless he has the prior consent of the lawyer representing such other party or is authorized by law to do so."

Opinion 17 (December, 1948) held that Canon 9 then in effect did not preclude an attorney from interviewing a potential witness, other than a party to the suit, even though the witness may be an employee of a party to the suit, if the attorney makes a full disclosure of his connection with the litigation and explains the purpose of the interview. That opinion was qualified, however, by Opinion 342 (March, 1968) with the following modification: (1) If the employee being interviewed is the person for whose acts or omissions the defendant is sought to be held liable, such employee should be considered as a party and he should not be interviewed without the consent of the attorney for the corporate defendant by whom he was employed. (2) If the employee being interviewed is an officer or managing employee with authority to bind the corporate defendant, he should likewise be considered a party within the meaning of Canon 9.

We do not read prior Opinion 342 as prohibiting communication by a lawyer with the employee of a corporate defendant who is represented by an attorney if, and only if, both conditions set out in Opinion 342 are met. If either condition exists, the prohibition applies.

CONCLUSION

During the course of his representation of a client, a lawyer shall not communicate or cause another to communicate on the subject of the representation with the employee of an adverse party without consent of opposing counsel if (1) the employee is an officer or managing employee or (2) the conduct (act or omission) of the employee is the basis of the litigation. If the employee with whom communication is made is not an officer or managing employee of the corporate defendant and the conduct by the employee is not the subject of the controversy, he may be interviewed by an attorney or a party opposing the corporation provided the attorney makes a full disclosure of his connection with the suit and explains the purpose of the interview.

101

----------

Texas Professional Ethics Opinion No.342 (3/68)

COMMUNICATIONS WITH ADVERSE PARTY - INTERVIEWING WITNESSES AND OBTAINING STATEMENTS

It is not unethical for an attorney to interview and take statements from employees of an adverse party without consent of opposing counsel provided a full disclosure is made and provided further that the employee is not an officer or managing employee of the party and is not the person whose conduct gives rise to the controversy.

QUESTION

Plaintiff files a damage suit against defendant corporation. Thereafter plaintiff's attorney, or his investigator, interviews and obtains a statement from defendant's employee without consent of defendant or defendant's counsel. Is such conduct a violation of Canon 9?

OPINION

...

These Canons, however, do not prohibit communications with employees of an adverse party and this Committee held, in Opinion 17 (December, 1948), that an attorney may interview an employee of a party provided the attorney makes a full disclosure of his connection with the suit and explains the purpose of the interview. To the same effect is ABA Opinion 117 (August, 1934). We approve those opinions with the following modifications: (1) If the employee being interviewed is the person for whose acts or omissions the defendant is sought of be held liable, such employee should be considered as a party within the meaning of Canon 9. (2) If the employee being interviewed is an officer or managing employee with authority to bind the corporate defendant he should likewise be considered a party within the meaning of Canon 9. See Drinker, Legal Ethics, pages 85 and 201.

...

/////////////////////////////

## Utah

Utah Rules of Professional Conduct, Rule 4.2

COMMUNICATION WITH PERSONS REPRESENTED BY COUNSEL

(a) General Rule. A lawyer who is representing a client in a matter shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by:

(1) constitutional law or statute;

102

(2) decision or a rule of a court of competent jurisdiction;

(3) a prior written authorization by a court of competent jurisdiction obtained by the lawyer in good faith; or

(4) paragraph (b) of this rule.

(b) Rules Relating to Government Lawyers Engaged in Civil or Criminal Law Enforcement. A government lawyer engaged in a criminal or civil law enforcement matter, or a person acting under the lawyer's direction in the matter, may communicate with a person known to be represented by a lawyer if:

(1) the communication is in the course of, and limited to, an investigation of a different matter unrelated to the representation or any ongoing, unlawful conduct; or

(2) the communication is made to protect against an imminent risk of death or serious bodily harm or substantial property damage that the government lawyer reasonably believes may occur and the communication is limited to those matters necessary to protect against the imminent risk; or

(3) the communication is made at the time of the arrest of the represented person and after he or she is advised of his or her rights to remain silent and to counsel and voluntarily and knowingly waives these rights; or

(4) the communication is initiated by the represented person, directly or through an intermediary, if prior to the communication the represented person has given a written or recorded voluntary and informed waiver of counsel, including the right to have substitute counsel, for that communication.

(c) Organizations as Represented Persons.

(1) When the represented "person" is an organization, an individual is "represented" by counsel for the organization if the individual is not separately represented with respect to the subject matter of the communication, and
(A) with respect to a communication by a government lawyer in a civil or criminal law enforcement matter, is known by the government lawyer to be a current member of the control group of the represented organization; or
(B) with respect to a communication by a lawyer in any other matter, is known by the lawyer to be
(i) a current member of the control group of the represented organization; or
(ii) a representative of the organization whose acts or omissions in the matter may be imputed to the organization under applicable law; or
(iii) a representative of the organization whose statements under applicable rules of evidence would have the effect of binding the organization with respect to proof of the matter.

(2) The term "control group" means the following persons: (A) the chief executive officer, chief operating officer, chief financial officer, and chief legal officer of the organization; and (B) to the extent not encompassed by the foregoing, the chair of the organization's governing body, president, treasurer, and secretary, and a vice-president or vice-chair who is in charge of a principal business unit, division, or function (such as sales, administration, or finance) or performs a major policy making function for the organization; and (C) any other current employee or official who is known to be participating as a principal decision maker in the determination of the organization's legal position in the matter.

(3) This rule does not apply to communications with government parties, employees, or officials unless litigation about the subject of the representation is pending or imminent. Communications with elected officials on policy matters are permissible when litigation is pending or imminent after disclosure of the representation to the official.

(d) Limitations on Communications. When communicating with a represented person pursuant to this Rule, no lawyer may

(1) inquire about privileged communications between the person and counsel or about information regarding litigation strategy or legal arguments of counsel, or seek to induce the person to forgo representation or disregard the advice of the person's counsel; or

(2) engage in negotiations of a plea agreement, settlement, statutory or non-statutory immunity agreement, or other disposition of actual or potential criminal charges or civil enforcement claims, or sentences or penalties with respect to the matter in which the person is represented by counsel unless such negotiations are permitted by paragraphs (a)(1), (2) or (3), or (b)(4).

COMMENT

...

Organizational clients are entitled to the protections of this Rule. Paragraph (c) specifies which individuals will be deemed for purposes of this Rule to be represented by the lawyer who is representing the organization in a matter. Included within the control group of an organizational client, for example, would be the designated high level officials identified in subparagraphs (2)(A) and (B). Whether an officer performs a major policy function is to be determined by reference to the organization's business as a whole. Therefore, a vice-president who has policy making functions in connection with only a unit or division would not be a major policy maker for that reason alone, unless that unit or division represents a substantial part of the organization's total business. A staff member who gives advice on policy but does not have authority, alone or in combination with others, to make policy does not perform a major policy making function.
Also included in the control group are other current employees known to be "participating as principal decision makers' in the determination of the organization's legal position in the proceeding or investigation of the matter. In this context, "employee" could also encompass former employees who return to the company's payroll or are specifically retained for compensation by the organization to participate as principal decisionmakers for a particular matter. In general, however, a lawyer may, consistent with this Rule, interview a former employee of an organization without consent of the organization's lawyer.
...

----------

Utah State Bar Ethics Advisory Opinion Committee Opinion No. 04-04 (8/25/04)

   1 Issue: In litigation to enforce an oral contract allegedly made by a corporate defendant's former employee on behalf of the corporation, where the former employee was not a member of the control group, may the plaintiff's attorney contact the ex-employee without the consent of the corporate defendant's attorney?
   ¶ 2 Answer: The contact with the former employee is not unethical. Utah Rules of Professional Conduct 4.2 (2004) does not bar a lawyer's unauthorized contact with

104

former employees of a represented corporate defendant except in very limited circumstances not applicable to this opinion.

...

¶ 8 The language of Rule 4.2 (c)(1)(B)(i) specifically pertains only to a "current member of the control group" (emphasis added). While Rules 4.2 (c)(1)(B)(ii) and 4.2 (c)(1)(B)(iii) do not specifically reference a current" representative of the organization", the Committee concludes that this is the proper interpretation of Rule 4.2. The Comment to Rule 4.2 removes any doubt about the intent of the revision on this issue. The Comment provides:

"The purpose of this Rule is to foster and protect legitimate attorney-client relationships. It seeks to guard against inequities that exist when a lawyer speaks to an untrained lay person. The Rule should not, however, be used as a vehicle to thwart appropriate contact between lawyers and lay persons."

"In general, however, a lawyer may, consistent with this Rule, interview a former employee of an organization without consent of the organization." [FN2]

¶ 9 The Comments to the Rules of Professional Conduct carry considerable weight. The Utah Supreme Court adopted the Comment when it adopted Rule 4.2, most recently when Rule 4.2 was amended on September 3, 1999. Further, the Preamble to the Rules states: "The Comment accompanying each Rule explains and illustrates the meaning and purpose of the Rule.... The Comments are intended as guides to interpretation, but the text of the Rule is authoritative."

*3 ¶ 10 The "control group" for purposes of Rule 4.2.(c)(1)(B)(i) includes any "current employee or official who is known to be participating as a principal decision maker in the determination of the organization's legal position in the matter" (emphasis added). The Comment to Rule 4.2 explains that "current employee" in the context of Rule 4.2(c)(1)(B)(i) includes those "who return to the company's payroll or are specifically retained for compensation by the organization to participate as principal decisionmakers for a particular matter." [FN3] The Committee finds this Comment to be equally applicable to Rules 4.2(c)(1)(B)(ii) and 4.2(c)(1)(B)(iii). The former employee described in the request for opinion does not fall within this interpretative guide. Accordingly, we conclude that Rule 4.2 does not bar the unauthorized contact by plaintiff's counsel with the former employee. Of course, nothing in this opinion relieves an attorney of the duty to comply with other ethical rules governing contact with unrepresented persons and potential witnesses. See, e.g., Rules 3.4 (fairness to opposing party and counsel); 4.1 (truthfulness in statements to others); Rule 4.3 (dealing with unrepresented person); Rule 4.4 (respect for rights of third persons); Rule 8.4 (misconduct).

FN1. The "control group" is defined in Utah Rules of Professional Conduct 4.2 (c)(2), as follows:

The term "control group" means the following persons: (A) the chief executive officer, chief operating officer, chief financial officer, and chief legal officer of the organization; and (B) to the extent not encompassed by the following, the chair of the organization's governing body, president, treasurer, and secretary, and a vice-president or vice-chair who is in charge of a principle business unit, division, or function (such as sales administration, or finance) or performs a major policy-making function for the organization and (C) any other current employee or officer who is known to be participating as a principal decision maker in the determination of the organization's legal position in the matter.

----------

**Shearson Lehman Bros., Inc. v. Wasatch Bank,**
139 F.R.D. 412, D.Utah, Oct 25, 1991

105

Rules of Professional Conduct and ABA model rule does not prohibit counsel's ex parte contact with former employees of opposing organizational party, which is represented by counsel, although full spectrum of ethical requirements which bind attorney in any other situation are equally binding when attorney engages in ex parte contact with unrepresented former employee of opposing organizational party. ABA Rules of Prof.Conduct, Rules 4.2, 4.3; Utah Rules of Prof.Conduct, Rules 4.2, 4.3.

"Today this court joins the ranks of those which have construed Rule 4.2 consistently with the position taken by the ABA Committee on Ethics and Professional Responsibility. Under this court's rules of practice, Utah Rule of Professional Conduct 4.2 as well as ABA Model Rule 4.2 do not prohibit ex parte contact with the former employees of an organizational party that is represented by counsel. Consistent with the ABA position, however, the court recognizes that other rules govern and limit the scope and method of ex parte informal communication with such former employees. Specifically mentioned by the ABA Committee on Ethics and Professional Conduct were the ethical rules regarding the attorney-client privilege and Rule 4.3 which governs an attorney's dealings with an unrepresented party. It should be noted, however, that these two ethical restraints do not exhaust the list of potential rules which may apply to ex parte contact with former employees of a corporate party. Fortunately, the court is not called upon to compile such a list. Suffice it to say that the full spectrum of ethical requirements that bind the attorney in any other situation is equally binding when the attorney engages in ex parte contact with an unrepresented former employee of an opposing organizational party. Accordingly, Shearson's motion for authority to conduct ex parte interviews with persons formerly employed as tellers for Wasatch is granted. Shearson's counsel is once again cautioned that strict compliance with all applicable ethical guidelines will be required and any evidence obtained in violation thereof will be subject to suppression." Id., at 418

//////////////////////////////////

## Vermont

Vermont Rules of Professional Conduct, Rule 4.2

COMMUNICATION WITH PERSON REPRESENTED BY COUNSEL

In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

Comment:

...

In the case of an organization, this rule prohibits communications by a lawyer for another person or entity concerning the matter in representation with persons having a managerial responsibility on behalf of the organization, and with any other person whose act or omission in connection with that matter may be imputed to the organization for purposes of civil or criminal liability or whose statement may constitute an admission on the part of the organization. If an agent or employee of the organization is represented in the matter by his or her own counsel, the consent by that counsel to a communication will be sufficient for purposes of this rule. Compare Rule 3.4(f).

106

...

----------

Vermont Bar Association Advisory Ethics Opinion 96-07

SYNOPSIS:

An attorney representing a client in a matter in which an adverse party is a corporation represented by counsel may communicate with a former employee of the corporation about the matter without the consent of the corporation's counsel.

FACTS:

The requesting attorney represents the plaintiff in a contract action against a corporation which is represented by counsel in the matter. The requesting attorney wishes to question a former employee of the corporation regarding the issues raised in the complaint without the consent of the corporation's counsel. The former employee is the individual who, during her employment with the corporation, signed the contract at issue on behalf of the corporation and managed the corporation's performance thereunder. The former employee is not represented by counsel with respect to the matter.

QUESTION:

The requesting attorney seeks the opinion of this Committee as to whether the proposed *ex parte* communication with the defendant corporation's former employee would violate DR 7-104(A)(1).

DISCUSSION:

...

As noted above, the clear text of our anti-contact rule extends only to those "parties" or "persons" who are adversely positioned in the matter. Where the one adverse is a business organization, we find nothing in our law or rules which creates a direct, current nexus between a business organization and its former employees. Such employees would, in our view, stand in the same shoes as a potential witness, or, at most a "party" in his or her own right. Current counsel in the matter for the organization would not, by virtue thereof, be counsel for the former employee. Therefore, in our opinion, our anti-contact rule, as currently framed, does not extend to former employees of an adverse business organization. This is so, whether or not the former employee was a manager of the organization. Like the ABA Committee, we decline to extend or modify the Rule through interpretation or analysis, no matter how persuasive or compelling. This is especially so where, as here, there is clear and unequivocal direction on the issue which has existed, unchanged, for five years. The answer to the question presented is, No.

Notwithstanding this Opinion, the Requesting Attorney is required to adhere to the proscriptions contained in DR 7-104(A)(2) relating to unrepresented persons.

In the State Bar of Wisconsin Ethics Opinion E-82-10 (1982), *supra*, a duty of the attorney contacting an unrepresented former employee of an adverse organization was stated as follows:

> [T]he attorney should first apprise the former employee that he or she may have a continuing duty to the corporation not to reveal any confidential information which he or she may have acquired during the course of his or her employment by the corporation.

In the ABA Committee Formal Opinion 91-359 (1991), *supra*, duties to the unrepresented former employee under the Model Rules include the following:

107

[The] attorney must be careful not to seek to induce the former employee to violate the privilege attaching to attorney-client communications to the extent his or her communications as a former employee with his or her former employer's counsel are protected by the privilege....

[The lawyer should] make clear the nature of the lawyer's role in the matter giving occasion for the contact, including the identity of the lawyer's client and the fact that the witness's former employer is an adverse party.

<u>CONCLUSION:</u>

These directions appear to come from Model Rules 4.4 ("burden a third person") and 4.3, respectively, which have no substantially equivalent counterpart under our Code.  However, this Committee views any compliance with these Rules to be well within the recognized qualifications upon a lawyer's duty to represent a client zealously, and therefore would be permissible.  DR 7-101(A)(1) (last sentence).

////////////////////////////

## Virginia

Virginina Rules of Prof.Conduct, Rule 4.2

Communication With Persons Represented by Counsel

In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

COMMENT

...

[4] In the case of an organization, this Rule prohibits communications by a lawyer for one party concerning the matter in representation with persons in the organization's "control group" as defined in <u>Upjohn v. United States</u>, 449 U.S. 383 (1981) or persons who may be regarded as the "alter ego" of the organization. The "control group" test prohibits *ex parte* communications with any employee of an organization who, because of their status or position, have the authority to bind the corporation. Such employees may only be contacted with the consent of the organization's counsel, through formal discovery or as authorized by law. An officer or director of an organization is likely a member of that organization's "control group." The prohibition does not apply to former employees or agents of the organization, and an attorney may communicate *ex parte* with such former employee or agent even if he or she was a member of the organization's "control group." If an agent or employee of the organization is represented in the matter by separate counsel, the consent by that counsel to a communication will be sufficient for purposes of this Rule.

----------

Virginia State Bar Committee on Legal Ethics Opinion No. 1670  (4/1/96)

CONTACT WITH FORMER EMPLOYEE OF ADVERSE PARTY

108