UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: VIOXX | * | MDL NO. 1657 |
| | * | |
| PRODUCTS LIABILITY | * | |
| LITIGATION | * | SECTION  L |
| | * | |
| THIS DOCUMENT RELATES | * | JUDGE FALLON |
| TO ALL CASES | * | MAG. JUDGE KNOWLES |
| | * | SPECIAL MASTER |
| FILER: Robert E. Arceneaux/Margaret Woodward | * | PATRICK A. JUNEAU |
| Pascal Calogero, Jr. | * | March 11, 2011 |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* **\*\*\***

## CO-LEAD COUNSEL'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION FOR ADDITIONAL DISCOVERY

MAY IT PLEASE THE COURT:

Co-lead counsel for the Objectors respectfully submit this Memorandum in further support of their pending Motion for Additional Discovery Related to the "Stratton" Settlement and any other undisclosed settlements or side deals which may affect the allocation of the fund awarded by this Court's Order of October 19, 2010.

In their original memorandum, undersigned counsel reviewed the disturbing facts of the Stratton agreement, and the suspicious circumstances surrounding the VLC's abandonment of its appeal. All of this, we concluded, suggested that: "The FAC's side-deals, the true extent of which we believe is still largely unknown, raise serious issues. Due process, breach of fiduciary duty, and *ultra vires* acts, might all be implicated." Memorandum, p. 14.

Undersigned counsel have just discovered additional evidence of side deals which further derail this Court's process from the twin tracks of due process and transparency. The evidence

resides in Volume 12, Exhibit K, of the FAC's exhibits to its Response to Objection.  Exhibit K[1] is a compilation of the  forms indicating various claimants' acceptance of the FAC's recommended allocations for them.   The printed forms indicate that acceptance or objection must be signified to the FAC "no later than **December 16, 2010.**" (Emphasis in original).  This was in keeping with the Court's schedule, which permitted a brief period of informal objection and consultation between the FAC and claimants.   This authorized negotiation period occurred in the interim between the announcement of the FAC's preliminary "penciled-in" recommendation in early December and the promulgation of the FAC's "final" grid on January 13, 2011.  The "final" grid was supposedly nailed down when the Court published it on January 20, 2011.   Formal objections to the "final" recommendation were due to be filed by February 4, 2011.

Exhibit K demonstrates, however, that the "final" recommendation was not final at all; the FAC continued negotiating beyond the 24th hour of publication, adjusting its recommendations for ten more claimants substantially upwards, and gathering acceptances even on February 4th, the due-date for objections.   The off-grid dealing solves what was, for undersigned counsel, an intriguing grid mystery: why did several claimants, whose recommended allocations dropped to *zero* in the "final" grid, nevertheless *drop* their objections?  Exhibit K explains that their "real" recommended allocations  in fact *rose* from Grid 1.  What was reflected as a "0" on the "final" Grid 2 wasn't a real "0," in all likelihood, but rather an indication that the FAC had simply not arrived at its real final number.    In each of the five up-from-zero instances reflected on the chart, the FAC's recommendation went substantially up from the "penciled-in" allocation– in one instance by almost

---

[1] The hard copies supplied to undersigned counsel do not contain a complete set of acceptance forms, stopping at p. 55 with the acceptance by Matthews & Associates.  For a complete set of forms, undersigned counsel downloaded the exhibit from File and Serve.

*600%.* This leads us to wonder how many of the other non-objecting, zero-allocated claimants are still in negotiation with the FAC or have received off-grid side deals– or perhaps even payments– which have satisfied their claims.

It is easy enough to understand why the FAC did what it did, given its ongoing emphasis on the large number of acceptors and the correspondingly low number of objectors; the FAC cites these numbers as confirmation of the validity of its process and recommendations.  The argument, as undersigned counsel have repeatedly observed, is specious: a fee allocation committee could limit the objector category to a minority of one, say by taking $20,000,000 due to that claimant and redistributing it amongst the majority, and still fail utterly in its assigned task.  Here, it accomplished the same thing by confining its wrongful "taking" from a larger, but still minority pool of 18.   In the end, adherence to established principles of fairness, not the number of acceptors or objectors, must determine the validity of the allocation.  This is why the Court has an independent duty to examine allocations no matter how few the objectors.  As the court stated in *Vizcaino v. Microsoft Corp.*:"[b]ecause in common fund cases the relationship between plaintiffs and their attorneys turns adversarial at the fee-setting stage, courts have stressed that when awarding attorneys' fees from a common fund, the district court must assume the role of fiduciary for the class plaintiffs. Accordingly, fee applications must be closely scrutinized. Rubber-stamp approval, *even in the absence of objections*, is improper."  290 F.3d 1043, 1052 (9th Cir.(Wash.) May 15, 2002), *cert. denied*, 537 U.S. 1018, 123 S.Ct. 536, 154 L.Ed.2d 425 (2002)(Emphasis added; citation omitted.)

Nonetheless, the FAC is at least consistent in its argument that the number of objectors matters.  Therefore, it was willing to commit another $2.2 million dollars to post-"final" grid side deals that moved another ten claimants from the "objectors" to the "acceptors" column.  Attached as Exhibit A is a chart prepared by undersigned counsel, showing the adjustment in recommended

allocations from December's Grid 1, to January's "final" Grid 2, and then to the off-grid deals reflected in the FAC's Exhibit K.

These late-breaking side deals, like so many of the FAC's activities, completely undercut its claimed adherence to "openness and objectivity" and to "rigorous" application of the *Johnson* factors. FAC Response, pp. 1-2.   In their original memorandum in support of additional discovery, undersigned counsel noted that:

> The extraordinary mutability of the FAC's recommendations can only be explained in one of two ways: either the FAC was awfully careless in its original calculations, which it touts as the culmination of years of work in adherence to strict objective guidelines; or its numbers were easily susceptible to deal-making, with adjustments upwards for those willing to withdraw their objections and downward for those who refused to accept the FAC's recommendations.   Neither possibility accords with the meticulous application of objective allocation criteria, as required by the Fifth Circuit and this Court.

Memorandum, p. 23 (fn. omitted).  That argument was supported by the observed changes between Grid 1 and Grid 2, which adjusted more than 1/4 of the claimants' recommendations upwards by more than 30% and some by as much as 300%.  We now know that the FAC's adjustments went well beyond the published shift:  *more than 1/3 of the claimants' recommendations moved up by more than 30%, some by as much as* **600%.**  This wild swing in the numbers eliminates any pretense of *Johnson* factoring.  The FAC's adjustments derived from horse-trading for acceptances, pure and simple.  Not only did the FAC bypass *Johnson*, it yielded to certain claimants the authority to make their own recommendations.  Raul Bencomo, for example, accepted a *blank* recommendation  from the FAC, writing in his own "recommendation" of $327,500, the number which then appeared on the "final" grid.  *See,* FAC Exhibit K, p. 14.  The "final" grid, however, does not contain the smiley face Mr. Bencomo noted on his recommended allocation, nor does it contain the intriguing addendum that this award is to be "net."  *Id.*   Another horse-trade is revealed on p. 9 of Exhibit K, in the mistaken inclusion of Brian Balser's initial *Objection* form.  Grid 1 recommended an award

of $29,000 to Mr. Balser. On December 15th, before the FAC's December 16th due date, Mr. Balser

objected to that award and said he wanted $148,812.50. Two weeks later, on December 28, 2010,

Mr. Balser accepted the FAC's revised recommendation of $130,000, *Id.,* at 7, the figure reflected

in the "final" allocation.

These shifting awards show, better than any argument could, why Objectors propounded the

following discovery requests to the FAC, and why they are entitled to receive responses:

**Request for Production No. 2**

Identify and produce each and every document received from any claimant in response to
any recommended allocation of common benefit fees, including acceptances, objections, or
other reply.

**Interrogatory No. 2**

Identify each and every claimant with whom any member of the FAC (regardless of title)
met informally (outside of the transcribed hearings) to discuss the claimant's allocation, and
for each such meeting, identify the dates, participants, and substance of the discussion.

**Interrogatory No. 8**

State whether any member of the FAC at any time analyzed the considerations outlined by
*Johnson v. Georgia Highway Express, Inc.* in calculating the fees it proposed to allocate to
any claimant; and if so, identify each.

As the secret Stratton agreement indicates, the FAC has long been off the rails of openness

and objectivity, but in departing from its own "final" grid, it has apparently moved into uncharted

territory beyond the Court's compass. Once again, in making deals behind the Court's back, the

FAC has triggered the concerns expressed in *Chambers v. NASCO, Inc*., 501 U.S. 32, 111 S.Ct.

2123, 15 L.Ed.2d (1991), which called for independent judicial scrutiny to ensure that cases are not

resolved with the real facts unknown to the court, or with the court laboring under

misrepresentations arising from conduct that skirts legal obligations to fairness, honesty, and

openness.

Like the Stratton deal, Exhibit K's side deals raise more questions than they answer. Note, for example, that the ten agreements in question produced acceptances of "recommended award[s]" *after the preparation of the "final" grid published by the Court on January 20, 2011.* To whom, then, were the new "recommendations" being made? *Was the Court to be told of the new recommendations?* If so, when? Were the other claimants to be told, and if so, when? *What is the source of the additional $2,230,000 funding the new recommendations?* Is the common benefit fund the pitcher that always pours, capable of paying out $19,000,000 to the Stratton objectors, with enough left over for more and more and more side deals? If so, aren't the other claimants entitled to know how much is *really* in the common benefit fund? Or are the members of the FAC surrendering a portion of "their" fees to other claimants to build a more solid majority of acceptors? And if that's the case, what will happen to these new "recommendations" if the Court does not make the lavish awards the FAC has recommended for itself, and promised to the firms it has induced to accept? And *if the FAC reneges on its "private" recommendations, would the newly-dispossessed "acceptors" be permitted to file untimely objections?* What, in the case of the Bencomo– and possibly other deals– is a "net" award?

The new facts disclosed by Exhibit K and the new questions they raise lend added urgency to Objectors' outstanding interrogatories, requests for production, and subpoena to Brown and Greer. Objectors- indeed all claimants- are entitled to know how much is in the common benefit fund and what commitments to, demands against, and disbursements from that fund have been made by the FAC. As the record mounts of behind-the-scenes dealing, including trading and disbursements beyond the purview of this Court, so does the need for judicial intervention and restraint of the FAC.

Respectfully submitted:

/s/ Robert E. Arceneaux
_____

Robert E. Arceneaux, La Bar No. 01199
ROBERT E. ARCENEAUX LLC
47 Beverly Garden Drive
Metairie, LA 70001
(504) 833-7533 office
(504) 833-7612 fax
rea7001@cox.net

/s/ Margaret E. Woodward
_____

MARGARET E. WOODWARD, La. Bar
No.13677
3701 Canal Street, Suite C
New Orleans, Louisiana  70119
(504) 301-4333 office
(504) 301-4365 fax
mewno@aol.com

**CO-LEAD COUNSEL FOR OBJECTORS IDENTIFIED IN FEB. 8 ORDER**

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Supplemental Memorandum in Support of Additional Discovery has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail, and by upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre Trial Order No.8, on this date, March 11, 2011.

/s/ Robert Arceneaux
_____

| Firm | OBJ | First Grid 12/10/2010 | Second Grid 1/13/2011 | Difference | Percent "+" or "-" | Off Grid Increases | Date of Acceptance | Increase above "Final" Grid |
|---|---|---|---|---|---|---|---|---|
| Alley, Clark, Greiwe & Fulmer | | $364,037.00 | $365,000.00 | 963.00 | 0.26% | | | |
| Alvarez Law Firm | | $14,561.00 | $15,000.00 | 439.00 | 3.01% | | | |
| Anapol, Schwartz, Weiss, Cohan, Feldman & Smalley,  P.C. | x | $3,349,139.00 | $3,400,000.00 | 50,861.00 | 1.52% | | | |
| Anastopoulo & Clore LLC | | $14,561.00 | $15,000.00 | 439.00 | 3.01% | | | |
| Andrews & Thornton | | $291,229.00 | $600,000.00 | 308,771.00 | 106.02% | | | |
| Ashcraft & Gerel LLP | | $8,979,576.00 | $9,000,000.00 | 20,424.00 | 0.23% | | | |
| Audet & Partners  LLP | ✳ | $1,164,918.00 | $1,165,000.00 | 82.00 | 0.01% | $1,415,000.00 | 1/27/2011 | $250,000.00 |
| Aylstock, Witkin, Kreis & Overholtz  LLC | x | $94,650.00 | $225,000.00 | 130,350.00 | 137.72% | | | |
| Balkin & Eisbrouch | | $14,561.00 | $15,000.00 | 439.00 | 3.01% | | | |
| Balser,  Brian K . Co ., LPA | | $29,123.00 | $130,000.00 | 100,877.00 | 346.38% | | | |
| Barnow | | $14,561.00 | $15,000.00 | 439.00 | 3.01% | | | |
| Barrios. Kingsdorf & Casteix, LLP | | $1,698,839.00 | $1,700,000.00 | 1,161.00 | 0.07% | | | |
| Bartimus, Frickleton. Robertson & Gorny | | $14,561.00 | $15,000.00 | 439.00 | 3.01% | | | |
| Beasley, Allen, Crow, Methvin, Portis & Miles, P.C. | | $40,954,148.00 | $40,900,000.00 | (54,148.00) | -0.13% | | | |
| Becnel Law Firm, LLC | x | $97,067.00 | $455,000.00 | 357,933.00 | 368.75% | | | |
| Bencomo | | $58,246.00 | $327,500.00 | 269,254.00 | 462.27% | | | |
| Blizzard. McCarthy & Nabers, LLP | | $11,649,180.00 | $11,600,000.00 | (49,180.00) | -0.42% | | | |
| Bossier & Associates. PLLC | | $14,561.00 | $20,000.00 | 5,439.00 | 37.35% | | | |
| Branch Law Firm | x | $281,229.00 | $0.00 | (281,229.00) | -100.00% | | | |
| Brandi Law Firm | | $970,765.00 | $970,000.00 | (765.00) | -0.08% | | | |
| Brown & Crouppen, PC | | $72,807.00 | $73,000.00 | 193.00 | 0.27% | | | |
| Bruce E. Dean | | $0.00 | $0.00 | 0.00 | 0.00% | | | |
| Burg, Simpson, Eldredge, Hersh & Jardine, PC | | $218,422.00 | $500,000.00 | 281,578.00 | 128.91% | | | |
| Cafferty Faucher | | $29,123.00 | $30,000.00 | 877.00 | 3.01% | | | |
| Capshaw Goss | | $14,561.00 | $0.00 | (14,561.00) | -100.00% | | | |
| Carey & Danis, LLC | ✳ | $60,673.00 | $0.00 | (60,673.00) | -100.00% | $350,000.00 | 2/3/2011 | $350,000.00 |
| Charfoos | | $0.00 | $0.00 | 0.00 | 0.00% | | | |
| Childers, Buck & Schlueter | | $0.00 | $0.00 | 0.00 | 0.00% | | | |
| Cohen Milstein | | $364,037.00 | $750,000.00 | 385,963.00 | 106.02% | | | |
| Cohen, Placitella & Roth. PC | x | $533,921.00 | $500,000.00 | (33,921.00) | -6.35% | | | |
| Cunard law Firm | x | $43,684.00 | $100,000.00 | 56,316.00 | 128.92% | | | |
| Cuneo, Gilbert & LaDuca LLP | | $0.00 | $0.00 | 0.00 | 0.00% | | | |
| Dugan & Browne | | $0.00 | $0.00 | 0.00 | 0.00% | | | |
| Engstrom, Lipscomb & Lack | | $388,306.00 | $390,000.00 | 1,694.00 | 0.44% | | | |
| Escobedo Tippet | x | $1,164,918.00 | $0.00 | (1,164,918.00) | -100.00% | | | |
| Fayard and Honeycutt | | $14,561.00 | $15,000.00 | 439.00 | 3.01% | | | |
| Fibich, Hampton & Leebron, LLP | | $606,728.00 | $610,000.00 | 3,272.00 | 0.54% | | | |
| Freese & Goss, PLLC | ✳ | $14,561.00 | $0.00 | (14,561.00) | -100.00% | $25,000.00 | 2/4/2011 | $25,000.00 |

| Firm | Mark | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Friedman Law Offices | | | $6,500.00 | 6,500.00 | 0.00% | | | |
| Gainsburgh, Benjamin, Davis, Meunier & Warshauer, LLC | | $2,038,606.00 | $2,690,000.00 | 651,394.00 | 31.95% | | | |
| Gallagher law Firm (TX) | | $38,831.00 | $40,000.00 | 1,169.00 | 3.01% | | | |
| Gancedo & Nieves LLP | ✱ | $364,037.00 | $600,000.00 | 235,963.00 | 64.82% | $700,000.00 | 2/1/2011 | $100,000.00 |
| Gianni-Petoyan, Attorneys at Law | | $29,123.00 | $30,000.00 | 877.00 | 3.01% | | | |
| Girardi & Keese | | $20,094,835.00 | $20,100,000.00 | 5,165.00 | 0.03% | | | |
| Goldenberg Heller | | $0.00 | $0.00 | 0.00 | 0.00% | | | |
| Goza & Honnold | | | | | | $70,000.00 | 2/4/2011 | $70,000.00 |
| Grant Kaiser | | | | 0.00 | 0.00% | | | |
| Hagens Berman | | $0.00 | $0.00 | 0.00 | 0.00% | | | |
| Heins Mills | | | $4,000.00 | 4,000.00 | 0.00% | | | |
| Heninger, Garrison, Davis LLC | ✱ | $1,092,111.00 | $1,000,000.00 | (92,111.00) | -8.43% | $1,300,000.00 | 1/31/2011 | $300,000.00 |
| Herman, Herman, Katz & Cotler, LLP | | $32,537,615.00 | $32,500,000.00 | (37,615.00) | -0.12% | | | |
| Hovde Dassow & Deets, LLC | ✱ | $1,164,918.00 | $1,165,000.00 | 82.00 | 0.01% | $1,415,000.00 | 1/28/2011 | $250,000.00 |
| Irpino | | $776,612.00 | $877,000.00 | 100,388.00 | 12.93% | | | |
| Jacobs Burns | | $0.00 | $0.00 | 0.00 | 0.00% | | | |
| John Hornbeck | | $194,153.00 | $300,000.00 | 105,847.00 | 54.52% | | | |
| Johnson & Perkinson | | $14,561.00 | $15,000.00 | 439.00 | 3.01% | | | |
| Jones Verras | | $29,123.00 | $30,000.00 | 877.00 | 3.01% | | | |
| Kasowitz, Benson, Torres & Friedman llP | | $728,074.00 | $1,100,000.00 | 371,926.00 | 51.08% | | | |
| Keller Rohrback | | | $0.00 | 0.00 | 0.00% | | | |
| Kerpsack | | | $10,000.00 | 10,000.00 | 0.00% | | | |
| Kline & Specter, PC | x | $4,514,057.00 | $4,000,000.00 | (514,057.00) | -11.39% | | | |
| Labaton Sucharow | | $0.00 | $0.00 | 0.00 | 0.00% | | | |
| Langston Law Firm | | | $0.00 | 0.00 | 0.00% | | | |
| Lanier law Firm, PC | | $27,062,015.00 | $27,000,000.00 | (62,015.00) | -0.23% | | | |
| Levin Fishbein Sedran & Berman | | $21,473,321.00 | $21,400,000.00 | (73,321.00) | -0.34% | | | |
| Levin, Papantonio. Thomas, Mitchell. Eshner & Proctor P.A. | | $15,629,316.00 | $15,600,000.00 | (29,316.00) | -0.19% | | | |
| Levin, Simes, Kaiser & Gornick, LLP | | $14,561.00 | $15,000.00 | 439.00 | 3.01% | | | |
| Lewis & Roberts, PLLC | ✱ | $194,153.00 | $0.00 | (194,153.00) | -100.00% | $225,000.00 | 1/31/2011 | $225,000.00 |
| Lieff, Cabraser, Heimann & Bernstein, LLP | | $4,926,362.00 | $6,000,000.00 | 1,073,638.00 | 21.79% | | | |
| Lockridge, Grindal, Nauen PLLP | x | $364,037.00 | $350,000.00 | (14,037.00) | -3.86% | | | |
| Locks Law Firm, LLC | x | $582,459.00 | $585,000.00 | 2,541.00 | 0.44% | | | |
| Lopez, Hodes, Restaino, Milman & Skikos | | $1,201,322.00 | $1,500,000.00 | 298,678.00 | 24.86% | | | |
| Lundy & Davis | | $72,807.00 | $100,000.00 | 27,193.00 | 37.35% | | | |
| Martin & Jones | ✱ | $94,650.00 | $0.00 | (94,650.00) | -100.00% | $150,000.00 | 1/28/2011 | $150,000.00 |
| Matthews & Associates | ✱ | $1,456,147.00 | $1,400,000.00 | (56,147.00) | -3.86% | $1,750,000.00 | 2/1/2011 | $350,000.00 |
| Mithoff Law Firm | | $14,561.00 | $15,000.00 | 439.00 | 3.01% | | | |
| Morelli Ratner PC | x | $1,274,129.00 | $750,000.00 | (524,129.00) | -41.14% | | | |
| Motley Rice LLC | x | $194,153.00 | $195,000.00 | 847.00 | 0.44% | | | |
| Murray Law Firm | x | $72,807.00 | $162,000.00 | 89,193.00 | 122.51% | | | |

| Firm | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Neblett, Beard & Arsenault | | $728,074.00 | $1,450,000.00 | 721,926.00 | 99.16% | | | | |
| Panish & Shea | | $1,638,166.00 | $1,640,000.00 | 1,834.00 | 0.11% | | | | |
| Price, Waicukauski & Riley, LLCC | | $14,561.00 | $15,000.00 | 439.00 | 3.01% | | | | |
| Richardson, Patrick, Westbrook & Brickman | | $14,561.00 | $15,000.00 | 439.00 | 3.01% | | | | |
| Robert J. DeBry | | $14,561.00 | $15,000.00 | 439.00 | 3.01% | | | | |
| Robert M. Becnel | | $29,123.00 | $30,000.00 | 877.00 | 3.01% | | | | |
| Robins, Kaplan, Miller & Ciresi LLP | | $606,728.00 | $850,000.00 | 243,272.00 | 40.10% | | | | |
| Robinson, Catcagnie & Robinson | | $4,926,632.00 | $6,000,000.00 | 1,073,368.00 | 21.79% | | | | |
| Roda Nast, P.C. | x | $43,685.00 | $45,000.00 | 1,315.00 | 3.01% | | | | |
| Sanders, Viener, Grossman, LLP | | $14,561.00 | $15,000.00 | 439.00 | 3.01% | | | | |
| Sanford, Shelly A., PLLC (predecessor was PSC member until 6/8/06) | | $6,795,355.00 | $6,800,000.00 | 4,645.00 | 0.07% | | | | |
| Seeger Weiss LLP | | $40,954,148.00 | $40,900,000.00 | (54,148.00) | -0.13% | | | | |
| Sheller, P.C. | x | $43,684.00 | $65,000.00 | 21,316.00 | 48.80% | | | | |
| Silverman & Fodera | | $72,807.00 | $73,000.00 | 193.00 | 0.27% | | | | |
| Singleton Law Firm | | $157,749.00 | $180,000.00 | 22,251.00 | 14.11% | | | | |
| Snapka, Turman & Waterhouse, LLP | x | $582,459.00 | $75,000.00 | (507,459.00) | -87.12% | | | | |
| Ted Kanner | | $0.00 | $1,350.00 | 1,350.00 | 0.00% | | | | |
| Texas Consortium | | $20,094,835.00 | $20,095,000.00 | 165.00 | 0.00% | | | | |
| Watts Law Firm | | | | 0.00 | 0.00% | | | | |
| Williams Kherkher | | | | 0.00 | 0.00% | | | | |
| Provost Umphrey | | | | 0.00 | 0.00% | | | | |
| Ranier, Gayle & Elliot, LLC | | | | 0.00 | 0.00% | | | | |
| The Holman law Firm | | $0.00 | $0.00 | 0.00 | 0.00% | | | | |
| Ury & Moskow LLC | | $0.00 | $0.00 | 0.00 | 0.00% | | | | |
| Weinberg, Eric H., law Firm of | x | $220,849.00 | $220,000.00 | (849.00) | -0.38% | | | | |
| Weitz & Luxenberg, P.C. | | $20,022,028.00 | $20,000,000.00 | (22,028.00) | -0.11% | | | | |
| White, Meany & Wetherall | ✱ | $157,749.00 | $0.00 | (157,749.00) | -100.00% | $160,000.00 | 1/28/2011 | $160,000.00 | |
| Whitehead law Firm | | $43,684.00 | $45,000.00 | 1,316.00 | 3.01% | | | | |
| Williamson & Williams | | $14,561.00 | $15,000.00 | 439.00 | 3.01% | | | | |
| Wold | | $0.00 | $580.00 | 580.00 | 0.00% | | | | |
| Zimmerman, Reed PLLP | | $0.00 | $0.00 | 0.00 | 0.00% | | | | |
| Zink, Diane K. | | $0.00 | $0.00 | 0.00 | 0.00% | | | | |
| | | | | | | | | | |
| TOTALS | | $309,029,830.00 | $311,984,930.00 | | | | | $2,230,000.00 | |
| | | | | | | | | | |
| oranges indicates both committee memberships | | | | | | | | | |
| yellow indicates PSC committee membership | | | | | | | | | |
| red indicates FAC committee membership | | | | | | | | | |