UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: VIOXX | * | MDL NO. 1657 |
| | * | |
| PRODUCTS LIABILITY | * | |
|  LITIGATION | * | SECTION  L |
| | * | |
| THIS DOCUMENT RELATES | * | JUDGE FALLON |
| TO ALL CASES | * | MAG. JUDGE KNOWLES |
| | * | SPECIAL MASTER |
| FILER: Robert E. Arceneaux/Margaret Woodward | * | PATRICK A. JUNEAU |
| Pascal Calogero, Jr. | * | March 17, 2011 |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**OPPOSITION TO BROWNGREER MOTION  FOR ORDER
SETTING PROCEDURE FOR ACCESS TO PROGRAM INFORMATION**

MAY IT PLEASE THE COURT:

This reply memorandum is respectfully submitted by Robert E. Arceneaux and Margaret E. Woodward, co-Lead Counsel for Objectors, in reply to BrownGreer's Motion for Order Setting Procedure for Access to Program Information.

**I.     OBJECTORS WERE NOT SERVED WITH BROWNGREER'S MOTION**

BrownGreer lists the subpoena served on it by undersigned counsel on February 22, 2011 as one of several inquiries prompting its motion.  At page 4 of its memorandum, it states, "BrownGreer has served its present Motion upon each of the counsel involved in these requests." Undersigned counsel, whose email addresses are well known to BrownGreer and who engaged in an active dialog with Orran Brown concerning Objectors' subpoena during the week of its issuance, were not served with a copy of the motion, nor was the motion served on File and Serve as required by this Court's orders.  Rather, undersigned counsel stumbled upon the motion quite by accident while trolling through Pacer.

Because undersigned counsel have the motion in hand, the lack of proper service is not a

problem for them.  However, it may be for the other parties affected, and therefore the Court may

wish to require proper service before addressing the merits of the motion as it relates to other parties.

## II.   BROWNGREER CALLS FOR A PROCESS THAT WOULD BE REDUNDANT IN THE CASE OF OBJECTORS' SUBPOENA

BrownGreer seeks judicial ratification of any discovery requests propounded to BrownGreer.

Objectors' subpoena has already been submitted to this Court, both by Objector's Motions for

Additional Discovery, and by the FAC's Motion to Quash, both of which are currently pending

before Special Master Juneau and both of which have been extensively briefed.  In seeking a further

"procedure for access," BrownGreer is creating artificial, unnecessary, and redundant obstacles to

Objectors' legitimate discovery requests.

## III.   BROWNGREER'S OBJECTIONS TO THE SUBPOENA LACK MERIT

BrownGreer contends that Objectors have sought the disclosure of private claimant

information whose confidentiality it is bound to protect:

> Each of these requests seeks disclosure of confidential information relating to a particular claimant or on all claimants in the Program. Compliance with these requests would require BrownGreer to reveal private information relating to claimants and details concerning the manner in which claims were presented, evaluated, and paid in the Program. BrownGreer is required by §15.1 of the Settlement Agreement to keep all this information confidential and thus is unable to disclose it without this Court's permission.

BG memorandum, p.6.

This argument, which echoes a similar argument advanced in the FAC's motion to quash,

misreads Objectors' request.  As the pleadings previously directed to this issue make clear, the

BrownGreer subpoena followed hard on the heels of Objectors' discovery that BrownGreer may

have disbursed $18 million dollars from the common benefit fund at the direction of a member of

the FAC, in payment of a side deal the FAC negotiated with the Stratton objectors.  Undersigned

counsel still do not know how such a thing could have occurred, because the FAC and BrownGreer

have vigorously opposed undersigned counsel's efforts at discovery.  However, this Court has

answered the most important question about these transactions, by stating that it was unaware of any

agreement involving the pay-out of funds to the Stratton objectors and *therefore did not issue any*

*orders authorizing such payments.*  Consequently, undersigned counsel have sought discovery from

both BrownGreer and the FAC about payments to the Stratton group and to any other attorneys to

whom the FAC, PLC, NPC, PSC, or other Vioxx leadership might have secretly disbursed common

benefit funds, and their authority for such payments.

Undersigned counsel have no interest in payments made to the "Program Claimants"

BrownGreer allegedly seeks to protect.  Rather, as the subpoena clearly states, they are seeking

information about disbursements to attorneys, not to plaintiffs.

> Copies of all correspondence, letters, e-mails, or other documents, written or electronic,
> including Court orders, or directives of any person or entity, instructing disbursement of any
> funds from any such accounts **to any attorney or law firm**.

Attachment to BrownGreer subpoena (emphasis added).  This language was intended to restrict the

inquiry to fee payments to lawyers, not payments of claims.  To the extent that it overreached the

mark, undersigned counsel are confident they can work out the details of the production.  As

undersigned counsel advised Mr. Brow by email dated February 22, 2011, they have no desire "to

burden you or your firm unnecessarily."

BrownGreer argues that the search through zillions of pages of material that Objectors do

not want will cost zillions of dollars, which expense neither BrownGreer nor the settlement fund

should be forced to bear:

> Compliance with third-party demands for documents and testimony is neither in
> furtherance of the administration of the Program nor to Merck's benefit. Without
> safeguards requiring these third parties to pay for the costs of responding to the
> subpoena, BrownGreer would go uncompensated for its time and unreimbursed for
> its expenses relating to producing this information and materials.

Memorandum, p. 7.

Undersigned counsel submit that its limited subpoena requests are very much "in furtherance of the administration of the Program."  BrownGreer contracted in the Administrative Agreement, under which it assumed control over the common benefit fund, that "all Services performed by it under the terms of this Agreement shall. . .be performed in a diligent, professional, and commercially reasonable manner (and in any event using not less than the same degree of skill and care as BrownGreer exercises with respect to its other clients in rendering comparable services); and be in compliance with all applicable laws, rules, and regulations."  Agreement, ¶4.03, Attached as Exhibit C to FAC Opposition to objectors' Motion for Partial Summary Judgment.

The Master Settlement Agreement was attached as Exhibit A to the BrownGreer Administrative Agreement, and "[b]y signing this Agreement, BrownGreer agree[d] to be bound by, perform and comply with all of the terms of the Settlement Agreement applicable to the Claims Administrator under the Program."  *Id.,* at ¶ 3.07.  The Master Settlement Agreement, provides, in turn that

> Pursuant to Sections 9.2.1 and 9.2.2, the attorneys' fees and common  benefit expenses deducted by the Claims Administrator shall be deposited into an interest  <u>bearing escrow account (the "Settlement Fee and Cost Account"</u>). The Settlement Fee and  Cost Account shall be maintained at a financial institution.  Funds within the Settlement  Fee and Cost Account *shall be administered by the Honorable Eldon E. Fallon and all  awards therefrom will be subject to approval . . .*

§9..2.3 (emphasis added).  Leaving entirely aside  the fiduciary obligations imposed by law on the administrator of a trust account, undersigned counsel note that BrownGreer bound itself by contract to secure judicial approval before disbursing common benefit funds.

Among the few facts known to undersigned counsel are that the FAC entered into a secret arrangement with the Stratton objectors, the FAC instructed BrownGreer to disburse some $18 million dollars in common benefit funds for that purpose, the funds were in fact distributed, and *the Court did not authorize any such disbursement.*  We have yet to discover by whom the funds were

disbursed, under what authority, and whether this was a unique or repeated occurrence.

When undersigned counsel first submitted the subpoena to BrownGreer, they considered the possibility that the payments to StrattonFaxon might have come from some unknown source other than the common benefit fund. The FAC, however, has acknowledged in brief that it did in fact invade the common benefit fund. *See,* FAC opposition, pp. 19-20. The FAC also disclosed that "[o]n August 26, 2010, the parties [to the Stratton agreement] conveyed to BrownGreer their request to direct the payment of monies to the trust account of StrattonFaxon. . ." *Id.,* at 19. This action, the FAC contends, "was appropriate and in keeping with the parties' authority and discretion afforded not only by the Settlement Agreement, but also by the Escrow Agreement and the Administrative Agreement with BrownGreer." *Id.*

As noted above, the Settlement agreement plainly requires judicial authorization for the disbursement of funds. Like the Administrative Agreement, the Escrow Agreement refers to the Master Settlement Agreement, and the "Escrow Agent hereby accepts the payment, contribution, transfer, and assignment of all assets, whether heretofore or hereafter received from Merck or the Claims Administrator *and agrees to receive, hold, settle, invest, liquidate, and **distribute** such assets in accordance with the provisions of this Agreement and the Settlement Agreement."* Exh. B to FAC Opposition, ¶ 1.1.4 (emphasis added). Thus, the Escrow Agent, like the Claims Administrator, bound itself to retain and safeguard the funds absent *judicial* authorization for disbursement. Unlike the Administrative Agreement, however, Exhibit B is a blank form. It is unsigned and does not identify the Escrow Agent. Regardless of who, if anyone, served as Escrow Agent, however, none of the agreements cited by the FAC conferred upon it authority to distribute $18,000,000 from the common benefit fund to StrattonFaxon.

Objectors, fiduciaries of BrownGreer, are entitled to the information requested, as is the Court and every other claimant to the fund. Undersigned counsel are astonished that BrownGreer,

-6-

charged with a substantial and fundamental breach of its fiduciary obligations, has chosen to quibble

over "the procedure for access" to an explanation for its actions, and the cost of making copies.

Respectfully submitted:


/s/ Robert E. Arceneaux                                    /s/ Margaret E. Woodward

_____          _____

Robert E. Arceneaux, La Bar No. 01199          MARGARET E. WOODWARD, La. Bar
ROBERT E. ARCENEAUX LLC                      No.13677
47 Beverly Garden Drive                              3701 Canal Street, Suite C
Metairie, LA 70001                                      New Orleans, Louisiana  70119
(504) 833-7533 office                                 (504) 301-4333 office
(504) 833-7612 fax                                    (504) 301-4365 fax
rea7001@cox.net                                       mewno@aol.com



**CO-LEAD COUNSEL FOR OBJECTORS IDENTIFIED IN FEB. 8 ORDER**

-7-

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Opposition to BrownGreer Motion has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail, and by upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre Trial Order No.8, on this date, March 17, 2011.

/s/ Robert Arceneaux

_____