UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
|  | : | MDL NO. 1657 |
| IN RE: VIOXX | : |  |
| PRODUCTS LIABILITY LITIGATION | : | SECTION: L |
|  | : |  |
|  | : | JUDGE FALLON |
|  | : | MAG. JUDGE KNOWLES |
| ....................................................... : |  |  |

**THIS DOCUMENT RELATES TO:**     *Safdar Lilak v. Merck & Co., Inc.*, **Case No. 06-8318**

## ORDER & REASONS

Currently before the Court is a motion filed by Vioxx Claimant Safdar Lilak seeking relief from the denial of his Extraordinary Injury claim under the Vioxx Settlement Program. (Rec. Doc. 52275). The Court has reviewed the motion, Merck's response (Rec. Doc. 54279), and Mr. Lilak's numerous supplemental filings. For the reasons set forth below, Mr. Lilak's request for relief is DENIED.

### I. FACTUAL BACKGROUND

**A.    General Information About the Vioxx Settlement Agreement**

On November 9, 2007, Merck and the Negotiating Plaintiff's Committee formally announced that they had reached a Settlement Agreement addressing personal injury claims. *See* Settlement Agreement, *In re Vioxx Prods. Liab. Litig.*, MDL 1657 (E.D.La. Nov. 9, 2007) ("Settlement Agreement"), *available at* http://www.browngreer.com/vioxxsettlement. The private Settlement Agreement established a pre-funded program for resolving pending or tolled

state and federal Vioxx claims against Merck as of the date of the settlement, involving claims of heart attack ("MI"), ischemic stroke ("IS"), and sudden cardiac death ("SCD"), for an overall amount of $4.85 billion. *Id.* § "Recitals".[1] The Settlement Agreement also allowed qualified claimants to apply for extraordinary injury ("EI") payments based on a certain threshold points award or documented economic damages of $250,000 or more. *Id.* § 4.2.5.

The Settlement Agreement is a voluntary opt-in agreement. Once a claimant has opted in to the Settlement Program, they are bound to proceed according to the terms and conditions outlined in the Settlement Agreement. The terms of the Settlement Agreement provide that "[s]ubmission of an Enrollment Form is irrevocable. No Program Claimant . . . may under any circumstances or any reason withdraw an Enrollment Form, request the return of his Release of Dismissal With Prejudice Stipulation . . . or otherwise unilaterally exit the Program." *Id.* § 1.2.4.

In order to determine eligibility and valuation of individual claims submitted for enrollment, the Settlement Agreement provides that an independent Claims Administrator will review claims and calculate the total number of points awarded to each claimant during the claims valuation process. *Id.* § 2. Pursuant to the terms of the Settlement Agreement, BrownGreer, PLC was appointed as the Claims Administrator. *Id.* § 6.1.2.[2]

---

[1] For a more detailed factual background of the various mechanics of the Settlement Agreement, including the provisions for the mandatory resolution of governmental liens, *see In re Vioxx Prods. Liab. Litig.*, 2008 WL 3285912 (E.D. La. Aug. 7, 2008) (denying motions to enjoin disbursement of interim settlement payments).

[2] BrownGreer, PLC, is a Virginia-based law firm specializing in multiple claims management and claims administration. The firm has created a comprehensive website containing resources for claimants and attorneys, as well as a limited-access Vioxx Portal by which attorneys may check on the status of their cases. The website can be accessed at http://www.browngreer.com/vioxxsettlement.

In determining whether a claim is eligible for enrollment in the Vioxx Settlement Program, the Claims Administrator must decide whether the claim satisfies certain criteria necessary to pass through each of three "gates": (1) evidence of a qualifying injury, (2) duration of use, and (3) proximity of injury to usage. *Id.* § 2.2. If the Claims Administrator determines that a claim is ineligible for enrollment in the program, the claim is automatically reviewed by an independent Gates Committee, which consists of six members, three of whom are appointed by Merck and three of whom are appointed by the NPC. *Id.* § 2.5. The Gates Committee reviews each claim pursuant to the three gate requirements set forth in the Agreement. *Id.* In reviewing a claim previously deemed ineligible by the Claims Administrator, the Gates Committee has the authority to overrule the initial determination if it finds that the claim is eligible for enrollment. *Id.* If, however, the Gates Committee determines that the claim is ineligible for enrollment, the claimant may still appeal the Committee's decision to a Special Master, who will determine *de novo* whether the claim meets the three eligibility requirements. *Id.* § 2.6.[3] *Id.* If the claimant decides to appeal to the Special Master, the ruling of the Special Master is final and binding. Alternatively, the claimant may choose not to appeal to the Special Master and may instead decide to exit the Settlement Program and reenter the litigation process by filing a future evidence stipulation. In other words, the decision to enroll in the Settlement Program does not foreclose the possibility of a trial for a claimant who is deemed ineligible.

The final claims valuation process involves an objective, numerical determination that

---

[3]On January 14, 2008, the Court formally appointed Mr. Patrick A. Juneau to serve as Special Master under the terms of the Settlement Agreement. On January 16, 2008, the Court appointed Justice John Trotter (Ret.) and Judge Marina Corodemus (Ret.) to serve as Deputy Special Masters to assist Special Master Juneau.

takes into consideration such individual factors as: age, injury, duration of usage, consistency of use, whether the claimant used Vioxx pre- or post-label adjustment, and the claimant's general health and medical history. *Id.* § 3.2. Factors in the claimant's medical history that might affect the points award include smoking, cholesterol levels, and whether the claimant or the claimant's family has a history of heart attacks or ischemic strokes. *Id.* A claimant could seek multiple steps of review of an award of points for an MI or IS claim, as well as a denial or award of EI payment. However, there is no provision for judicial review of points awards or a determination of ineligibility for EI payments. Thus, "[a]ll determinations concerning a Qualifying Program Claimant's eligibility for an EI Payment, and the amount thereof, shall be made by the Claims Administrator. . . . All EI Payment determinations of the Claims Administrator shall be made according to guidelines to be established by the Claims Administrator in consultation with Merck and the NPC, and (in any event) shall be final, binding an Non-Appealable." *Id.* § 4.2.7.

### B. The history of Mr. Lilak's claim

Mr. Lilak suffered a Vioxx-related stroke on June 19, 2004. He subsequently enrolled in the Vioxx Settlement Program and agreed to be bound by the terms of the Master Settlement Agreement. It appears that Mr. Lilak has never been represented by an attorney and filed his lawsuit and entered into the Settlement program *pro se*. He received a points award for his ischemic stroke (IS) claim and exercised his appeal rights under the Settlement Program by appealing first to the Claims Administrator and then to the Special Master. Both appeals upheld the points determination. The Plaintiff also submitted an Extraordinary Injury (EI) claim seeking medical expenses and lost wages. The Claims Administrator denied that claim due to insufficient documentation. Mr. Lilak requested a second review, which was denied, and then

appealed to the Special Master, which upheld the denial for lack of documentation.

## II.   Law & Analysis

Mr. Lilak now files what he styles a "motion for summary judgment" against Merck and BrownGreer, as well as other supplemental documents pursuing various forms of judicial review of the outcome of his involvement in the Vioxx Settlement Program.  He alleges "Fraud, Misconduct, Malicious Litigation, Wonton [sic] and Bad Faith Conduct, SCIENTER and Dishonest Services" have denied him EI compensation for wage loss through the Settlement Program.  Mr. Lilak frames the issue in terms of the Federal Rules of Civil Procedure and claims that he is owed $3.2 million for disability and lost wages.

The precise way in which Mr. Lilak believes he has been wronged is not entirely clear from his filings.  He makes a number of wholly conclusory assertions that BrownGreer or the Court-appointed pro se curator are "cozy with big corporation defense, and perhaps in their pockets."  He also contends that "The Defense MERCK/CA-BROWNGREER team against 'Pro Se' Plaintiff by exploiting the situation and due to under or lack of legal representation and was denied the fairness of justice and law for his claims."  Finally, Mr. Lilak states that "Special Master conspired with CA-BROWNGREER to write an incorrect and invalid & mistaken assessment and review of the EI claim is invalid" and that the "Special Master, just played a trick on Plaintiff by filing the incorrect, invalid assessment for EI Claim of Lilak."

Merck responds that Mr. Lilak voluntarily entered into the Settlement Program and proceeded through all review of his claims to which he is contractually entitled.  Thus, Merck argues that "[t]he fact that he is unsatisfied with the final amount of settlement payments he received under the Program does not permit him to unilaterally exit the Program and revive his

claims against Merck in this Court."

Merck is correct. Mr. Lilak voluntarily entered into a contractual settlement agreement with Merck. The consequence of that agreement is that he exited the tort system irrevocably (subject to exceptions in the Master Settlement Agreement not applicable to his circumstances), in exchange for participating in a private settlement program with multiple levels of review. Mr. Lilak availed himself of all of the review to which he was entitled under the Program. He is now dissatisfied with the outcome, but that is not grounds for now evading his contractual obligations. The Court can identify no basis why Mr. Lilak should now be permitted to revive his tort claim against Merck. There is no evidence to support any of Mr. Lilak's allegations of any improper conduct on the part of the Claims Administrator or the Defendant. There is no active case in which Mr. Lilak can file a motion for summary judgment and no grounds for the relief he seeks.

### III. Conclusion

For the foregoing reasons, IT IS ORDERED that Mr. Lilak's motion (Rec. Doc. 52775) and related materials are DENIED.

New Orleans, Louisiana, this 22nd day of March, 2011.

_____
United States District Judge