IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  VIOXX | ) | MDL NO. 1657 |
| PRODUCTS LIABILITY LITIGATION | ) | SECTION: L |
| | ) | JUDGE FALLON |
| THIS DOCUMENT RELATES TO: | ) | |
| ALL PURCHASE CLAIMS CLASS ACTION COMPLAINTS PENDING OR SUBJECT TO TRANSFER TO MDL 1657 | ) | JURY TRIAL DEMANDED<br><br>PURCHASE CLAIMS MASTER CLASS |

### DEFENDANT'S RESPONSE TO PLAINTIFFS' FIFTH NOTICE OF ADDITIONAL SUPPLEMENTAL AUTHORITY

Plaintiffs have submitted the decision in *Fitzpatrick v. General Mills, Inc.*, No. 10-11064, 2011 U.S. App. LEXIS 6047 (11th Cir. Mar. 25, 2011), as supplemental authority in support of their opposition to Merck's Motion For Judgment On The Pleadings Or To Strike Class Allegations In Purchase Claims Master Complaint.  Plaintiffs suggest that *Fitzpatrick* supports their argument that their proposed statewide class of Florida Vioxx users alleging claims under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") is certifiable because the court there found that causation could be proven based on an objective standard and thus did not defeat predominance under Rule 23(b)(3).  But plaintiffs fail to grasp the inherent differences between a yogurt purchase and the decision to prescribe a medication.  While it might reasonably be assumed that yogurt consumers would react to product information in a similar manner, the same cannot be said of prescribing doctors who must balance the risks and benefits of various

drugs – in the context of a patient's unique medical history and needs – every time they prescribe a medication.

In *Fitzpatrick*, the U.S. Court of Appeals for the Eleventh Circuit reviewed a district court order granting certification of a class of YoPlus purchasers who allege that General Mills violated the FDUTPA by falsely advertising the yogurt as having digestive health benefits that other yogurts lack. 2011 U.S. App. LEXIS 6047, at *3-4. In upholding certification of a modified class (after correcting deficiencies in plaintiffs' proposed class definition), the court agreed with the district court's conclusion that common issues predominated because "recovery under the FDUTPA does not hinge on whether a particular plaintiff actually relied on General Mills' claims about YoPlus' alleged digestive health benefits." *Id*. at *8. Instead, the court held that recovery under the FDUTPA requires only proof of causation and, in that case, causation could be proven using evidence that the "allegedly deceptive conduct would deceive an objective reasonable consumer." *Id*.

The Eleventh Circuit's finding that causation could be proven on a classwide basis in a case involving a consumer product like yogurt does not apply in a prescription drug case like this one. After all, the causation ruling in *Fitzpatrick* turns on the assumption that a court or jury could decide whether a "reasonably objective" yogurt purchaser's decision to buy a particular yogurt would have been affected by the manufacturer's assertion that the yogurt had special health benefits other yogurts did not. But there is no one paradigm of the "reasonably objective" Vioxx user. Rather, each Vioxx user's decision to take Vioxx – and his or her physician's decision to prescribe it – turned on his or her unique medical history, experiences with other drugs and the availability of alternative treatments. *See Kleinman v. Merck & Co.*, 8 A.3d 851, 862 (N.J. Super. Ct. Law Div. 2009) (the need to establish causation in Vioxx cases "creates an

2

insurmountable barrier to a class action," because "[t]he decision of whether to prescribe a medication is made upon a host of individualized factors, including other risk factors plaintiffs possessed and whether other drugs were effective in relieving plaintiffs' pain"). Similarly, each Vioxx user's reaction to more information about the drug's alleged risks would have varied based on his or her physician's assessment of the risks and benefits posed by Vioxx for that individual – and the user's willingness to accept certain risks for the level of pain relief Vioxx provided him or her. *Id*. This is all the more true because Vioxx provided gastrointestinal benefits to some users that they could not obtain from other pain medications, as this Court has previously found. *See In re Vioxx Prods. Liab. Litig.*, MDL No. 1657, 2010 U.S. Dist. LEXIS 64388, at *10-15 (E.D. La. June 29, 2010) (finding that "Vioxx's gastrointestinal safety is superior to other NSAIDS"). As a result, an objectively reasonable patient with gastrointestinal symptoms could easily have decided to continue to take Vioxx regardless of its alleged cardiovascular safety issues. Thus, in contrast to *Fitzpatrick*, there is no way to determine – on a classwide basis – whether Merck's alleged misstatements would have affected a "reasonably objective" Vioxx purchaser's decision to use the drug. *See In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 134 (2d Dist. 2009) (because "physicians consider many patient-specific factors in determining which drug to prescribe, including the patient's history and drug allergies, the condition being treated, and the potential for adverse reactions with the patient's other medications . . . in addition to the risks and benefits associated with the drug," the "materiality of any statements made by Merck to any particular prescribing decision cannot be presumed").

    *Fitzpatrick* is also inapposite because of the changing nature of public information regarding Vioxx over the time the product was on the market. In *Fitzpatrick*, plaintiffs alleged that General Mills' nationwide marketing campaign and product packaging for YoPlus uniformly

3

misrepresented the product as having digestive health benefits that normal yogurt did not.  2011 U.S. App. LEXIS 6047, at *3-5.  By contrast, this Court has already held that there was no one uniform statement (or alleged misstatement) made to Vioxx purchasers about the drug's alleged risks.  *See In re Vioxx Prods. Liab. Litig.*, 239 F.R.D. 450, 461 (E.D. La. 2006).  Instead, Merck's statements about Vioxx – including its warning labels, advertisements, package inserts and statements to physicians – were constantly evolving over the five years the drug was available on the market.  *Id*.  As a result, there is no one misstatement on which plaintiffs base their FDUTPA claims – and that a fact finder could evaluate to determine if it would have affected a "reasonably objective" consumer's product purchase.[1]

## CONCLUSION

For the foregoing reasons, the Court should find that plaintiffs' supplemental authority is inapposite and unpersuasive and grant Merck's motion for judgment on the pleadings or to strike plaintiffs' class allegations.

Dated:  April 5, 2011                               Respectfully submitted,


/s/ *Dorothy H Wimberly*

Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER

---

[1]  In any event, even if plaintiffs could prove causation on a classwide basis, they still could not prove the loss element of their claims based on common evidence.  *See Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. Dist. Ct. App. 2006) (FDUTPA only allows a private action for damages for consumers who suffered a ***loss*** as a result of the defendant's alleged misconduct).  In *Fitzpatrick*, the court suggested that the proposed class members could prove that they were damaged based on common evidence that they "paid a premium for YoPlus" yogurt as a result of General Mills' alleged misrepresentations.  2011 U.S. App. LEXIS 6047, at *9.  But such a "price inflation" theory is not viable in prescription drug cases like this one because drug prices do not rise and fall based on alleged risks – and because patients cannot shift at will among different drugs based on comparative pricing.  (*See* Merck's Reply Mem. at 20-21); *Heindel v. Pfizer Inc*., 381 F. Supp. 2d 364, 380 (D.N.J. 2004) (rejecting theory that Vioxx and Celebrex users paid more for those drugs than they would have if risk information had been disclosed as "patently absurd," because there is no "perfect market" for prescription drugs whereby "adverse information is . . . quickly absorbed by the market, thus causing the price of [a drug] to fluctuate").

4

WITTMANN L.L.C.
546 Carondelet Street
New Orleans, LA 70130

Douglas R. Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth St., N.W.
Washington, DC 20005

John H. Beisner
Jessica Davidson Miller
Nina Ramos Rose
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
1440 New York Avenue, N.W.
Washington, DC 20005

ATTORNEYS FOR MERCK SHARP &
DOHME CORP.

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing *Defendant's Response to Plaintiff's Fifth Notice of Additional Supplemental Authority* has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 5th of April 2011.

/s/ Dorothy H. Wimberly
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361
dwimberly@stonepigman.com

Defendants' Liaison Counsel