# EXHIBIT A

2005-07-19 Status Conference.txt

1

```
 1                       UNITED STATES DISTRICT COURT
                        EASTERN DISTRICT OF LOUISIANA
 2                         NEW ORLEANS, LOUISIANA

 3

 4

 5
      IN RE:  VIOXX PRODUCTS        *    Docket MDL 1657-L
 6       LIABILITY LITIGATION       *
                                    *    July 19, 2005
 7                                  *
                                    *    9:30 a.m.
 8    * * * * * * * * * * * * * * * *

 9

10

11                      STATUS CONFERENCE BEFORE THE
                        HONORABLE ELDON E. FALLON
12                      UNITED STATES DISTRICT JUDGE

13    APPEARANCES:

14
      For the Plaintiffs:           Herman, Herman, Katz & Cotlar
15                                   BY:  RUSS M. HERMAN, ESQ.
                                     820 O'Keefe Avenue
16                                   New Orleans, Louisiana 70113

17
      For the Defendants:           Stone Pigman Walther Wittmann
18                                   BY:   PHILLIP A. WITTMANN, ESQ.
                                     546 Carondelet Street
19                                   New Orleans, Louisiana 70130

20
      Official Court Reporter:      Toni Doyle Tusa, CCR
21                                   500 Poydras Street, Room B-406
                                     New Orleans, Louisiana 70130
22                                   (504) 589-7778

23

24
      Proceedings recorded by mechanical stenography, transcript
25    produced by computer.
```

2

```
 1                            PROCEEDINGS

 2                           (July 19, 2005)
```

Page 1

2005-07-19 Status Conference.txt

3          THE DEPUTY CLERK:  Everyone rise.

4          THE COURT:  Be seated, please.  Good morning, Ladies

5   and Gentlemen.  Call the case, please.

6          THE DEPUTY CLERK:  In Re: MDL 1657, Vioxx.

7          THE COURT:  Counsel make their appearance for the

8   record, please.

9          MR. HERMAN:  May it please the Court.  Good morning,

10  Judge Fallon.  Russ Herman of Herman, Herman, Katz & Cotlar in

11  New Orleans for the plaintiffs.

12          MR. WITTMANN:  Good morning, Your Honor.

13  Phil Wittmann, liaison counsel for defendants.

14          THE COURT:  I understand we have some people on the

15  phone, also.  Who do I have on the phone?

16          MS. SOTOODEH:  Pamela Sotoodeh with Ken Moll in

17  Chicago.

18          MR. GARRISON:  Paul Garrison with Hollis & Wright in

19  Birmingham.

20          MS. DALL:  Reneé Dall in Birmingham.

21          MS. MISMASH:  Nancy Mismash with Debry & Associates

22  in Salt Lake City, Utah.

23          THE COURT:  We are here today for our monthly status

24  report.  I met with counsel preliminarily and I have an agenda.

25  We will take them in order.  First is LexisNexis File & Serve.

                                                              3


1   I met with those individuals, as I indicated I would the last

2   time, and hopefully the matters have been worked out.  Any

3   report on that?

4          MR. WITTMANN:  Yes, Your Honor.  Before we get to

5   that, if I could just give you the basic case statistics for

6   everyone in attendance today so we will know where we are.  As

7   of July 11 we had 1,005 cases in MDL 1657, although some of

                              Page 2

2005-07-19 Status Conference.txt

8    them haven't been served yet.  That's an increase of about 100

9    since our June status conference.  There are over 800 cases

10   served and pending in federal courts that have not yet made it

11   into the MDL, but are on the way.  That also is an increase of

12   about 100.  So a little over 1,800 cases will be in the MDL.

13              In addition, there are roughly the same number

14   of cases pending in state courts, other than in California and

15   New Jersey, so about 170 pending in other state courts.  There

16   are about 2,100 Vioxx cases pending in the New Jersey

17   coordinated proceeding, which represents an increase of about

18   200 from our June report.  There are about 200 cases pending in

19   California state court involving over 1,200 plaintiffs.  That's

20   an increase of roughly about 20.  There's been one additional

21   class action filed, so now we have 119 pending class actions.

22   The class action master complaints in the MDL are due to be

23   filed on August 1.

24              Your Honor, on the first item on the agenda,

25   LexisNexis, I asked Dorothy Wimberly of our firm to give a

                                                                  4


1    report to the Court and the people in attendance because she

2    has been working more closely with the LexisNexis people than

3    anybody on our side of the case.  She is prepared to do that,

4    if I may introduce her to the Court.

5              THE COURT:  Yes.

6              MS. WIMBERLY:  Good morning, Your Honor.

7              THE COURT:  Good morning.

8              MS. WIMBERLY:  Since Your Honor met with counsel and

9    the representatives of LexisNexis, at least from the defense

10   perspective, we have seen a great improvement.  We have had a

11   much quicker turnaround by LexisNexis on loading the cases as

                              Page 3

2005-07-19 Status Conference.txt

12   we have sent them to them.  Effective last Friday, LexisNexis

13   turned on a feature called Case and Party Management, which we

14   are very hopeful will assist all of the attorneys in being able

15   to manage their cases.  It will enable any registered attorney

16   to go in and make a change within their case, for example, if

17   another attorney enrolls as counsel or additional counsel of

18   record, if there's a substitution, if there's a withdrawal.  In

19   order to do that, they have got to provide the supporting

20   documentation to LexisNexis in order to keep the record correct

21   and clear.  We would encourage all counsel who are in that

22   situation, who have had any sort of substitution, enrollment,

23   or withdrawal, to please go in and check their cases with

24   LexisNexis on line and go into Case and Party Management.

25                We are also hopeful that in the very near future

                                                              5


1    this will allow registered users to add a new case.  Thus, if a

2    registered plaintiffs' counsel files a new case, they would

3    have the ability to upload that case in the first instance

4    without it having to go through liaison counsel.  It would

5    provide a quicker turnaround on everything.  We feel this will

6    also be very helpful to defense counsel because at the point in

7    time that many of the cases are actually uploaded to LexisNexis

8    there is no defense counsel of record, which has made it

9    impossible for defense counsel to upload their answer.  We are

10   quite hopeful on that.

11                We have asked LexisNexis to draft up a one-page

12   tip sheet, which they would first share with liaison counsel to

13   make certain that we all agree on its terms and then to post

14   that and circulate that to everyone.  From a defense

15   perspective, we have definitely had a timing improvement and we

16   are hopeful this new feature will make it more manageable.

                                Page 4

2005-07-19 Status Conference.txt

17          THE COURT:  How about from the plaintiffs'
18     standpoint, any input?
19          MR. HERMAN:  We are in good shape, Your Honor.
20          THE COURT:  Keep me posted.  If you have any
21     difficulty on that, I want to get involved in it because it's
22     critical that everybody have notice and we keep things moving.
23     That's an important part of the case.  The next item is trial
24     settings.
25          MR. HERMAN:  Your Honor, we have a number of cases

                                                                    6

1      set.  The jury has been selected and opening statements have
2      been given in Texas in the Ernst case and the case is
3      proceeding.  The Humeston case is set for trial in New Jersey
4      on September 12, the Guerra case in Texas on September 19, the
5      Zajicek case in Texas on September 26 -- although there's been
6      an agreement to continue this trial date until 2006 -- and the
7      Tomlin case is set for trial in Florida.  We'll defer any other
8      comments.  There's a remand issue about a Texas case further on
9      in the report, Your Honor.
10          THE COURT:  Selection of early trial dates.  I met
11     with counsel.  The Court is available the week of November 28
12     to begin trying cases in this litigation.  Counsel are to give
13     me some input as to which cases are to be tried.  I'm looking
14     for heart attack cases and perhaps stroke cases.  The parties
15     will pick the cases.  If necessary, I'll get involved and pick
16     the cases, but hopefully they will do so, keeping an eye on
17     cases that are ready for trial and that are instructive and
18     will help guide the litigation.  These early cases won't be the
19     final word on this type of litigation because it is moving and
20     it is developing and more material is coming in.  Hopefully,

2005-07-19 Status Conference.txt

21   those early trials will be helpful for counsel in at least

22   getting a fix on issues and also will help them in future

23   trials.  The next item is the class actions.  Any report on

24   that?

25            MR. HERMAN:  The class action committee of the PSC

7

1   has continued to meet.  Master complaints are being formulated.

2   We have given advance notice to Your Honor and to defense

3   counsel that certain issues will not be included in the class

4   complaints.  We'll be able to make a further report at the next

5   scheduled conference, Your Honor.

6            THE COURT:  Master discovery directed to Merck is the

7   next item.

8            MR. WITTMANN:  Yes, Your Honor.  Since our last

9   status conference with Your Honor, we have been trying to do

10  what the Court said we should do, which is to trim the

11  discovery requests to get it down to nonduplicative document

12  requests.  There's been ongoing negotiations between

13  Mr. Barnett on behalf of the defendants' steering committee and

14  David Buchanan meeting on behalf of the plaintiffs' steering

15  committee.  I think they have achieved a lot already.  They

16  continue to work together to try and get this to a point where

17  there will be a fixed set of master requests that we can deal

18  with, eliminating any duplicative requests.

19            The production of documents by Merck is going to

20  be ongoing and starting on a rolling basis.  We are not waiting

21  to get the final piece in place before we start producing

22  documents.  We are going to produce them on a rolling basis.

23  We are trying to prioritize the documents produced in

24  accordance with what the plaintiffs tell us they need to get

25  produced first.  I would just tell the Court I think we are

2005-07-19 Status Conference.txt

8

1   working well with the defense steering committee in trying to
2   accomplish what they are trying to accomplish with the document
3   production.  So far, it's going very smoothly.
4          THE COURT:  Give me some input from the plaintiffs'
5   standpoint.  Anything from plaintiffs?
6          MR. HERMAN:  No.  The parties have been talking and
7   we are waiting to receive some final document that could be
8   submitted to the Court.
9          THE COURT:  When can that be done?  Give me some
10  input there.  Can you do that in 10 days?
11         MR. HERMAN:  Yes.  We have provided the defense with
12  our position and they will respond, and that certainly ought to
13  be able to be done within 10 days.
14         THE COURT:  Get with me within 10 days and let me
15  know what the situation is.
16         MR. WITTMANN:  Just so I'm clear, do you want a
17  report within 10 days as to where we are?
18         THE COURT:  Right.  Also, if there's any document
19  that needs to be signed or finalized, I want that taken care
20  of.
21         MR. WITTMANN:  Would you also want to know if there
22  are any disputes outstanding at that point, as well?
23         THE COURT:  That's exactly right.
24         MR. HERMAN:  We do need the specific objections of
25  defendants and specific requests, as well as the agreement as

9

1   to what they are going to produce.
2          THE COURT:  If you have that, then I will resolve

Page 7

2005-07-19 Status Conference.txt

3   them.  I will be ruling on an objections, so we will have all

4   that taken care of before the next meeting.  The Vioxx

5   professional representatives.  I talked with the parties on

6   this issue.  It seems to me that there are two issues involved.

7   One issue is the numbers of people.  The second issue is the

8   concern that the defendants raise with regard to the potential

9   for having the remand issues more complicated by the production

10  of this material.

11              With regard to defendants providing the names

12  and addresses of the individuals, I don't see where that is a

13  burdensome aspect to the defendants.  They should be able to

14  produce that with computers very quickly.  It seems to me it's

15  relevant, because of the issues of learned intermediary and

16  other issues that are legitimate defenses in a case of this

17  sort, and the plaintiffs have to have an opportunity to know

18  who the representatives are and take their depositions, if need

19  be, and so forth.  With the issue of complication of remand, I

20  will be considering that and looking at how that can be done.

21              My first suggestion to the parties today was to

22  see if it can be trimmed down to Vioxx issues and Vioxx

23  representatives, whether that would trim it down in any way.

24  If a shorter list can't be gotten together, I will be

25  considering the production of the longer list and a method of

                                                              10


1   producing it so that remand issues will not be complicated.

2   I'll get with the parties again within 10 days.  Let me hear

3   from you on that and I'll deal with that.

4        MR. HERMAN:  Your Honor, since discussing this

5   matter, I have an immediate suggestion.  I would ask that the

6   defendants produce that list with names and addresses and the

7   dates of employment immediately in camera under seal, then

                              Page 8

2005-07-19 Status Conference.txt

8   lawyers may apply, upon notice and for good cause, to access

9   those materials.  I'm particularly concerned about class action

10  issues in cases that have been removed here where that

11  information is going to be fundamental in discovery,

12  particularly as to the learned intermediary issue, et cetera.

13  There's no reason that we can think of why a button can't be

14  pressed and the list, at least, provided immediately under

15  seal.

16          THE COURT:  I'll take that into consideration.  I'll

17  talk with the defendants and you tomorrow on a conference call.

18  We will discuss that and I will resolve that issue.  Deposition

19  scheduling is the next item.

20          MR. HERMAN:  Yes.  The PSC requested production of

21  the FACTS database.  Your Honor set that matter for hearing on

22  August 2 at 1:30.  The defendants have an expert and a

23  representative.  They will be taken in New Orleans on July 29

24  in the afternoon and the day of July 30.  Plaintiffs' expert

25  has been named and plaintiffs' expert will be taken in

                                                          11


1   New Orleans on August 1.

2           THE COURT:  Plaintiff profile form and Merck profile

3   form.

4           MR. HERMAN:  We have agreed, Your Honor, on the two

5   forms.  Mr. Wittmann and I will be jointly providing you --

6   hopefully this afternoon -- with the timing issue as to when

7   the defendants have to respond to plaintiff profile forms and a

8   new schedule for production of plaintiff profile forms.  We

9   have advised the Court that we have a disagreement, which

10  Your Honor will resolve, as regards the sharing of plaintiff

11  profile forms by Merck with other defendants named in the MDL.

2005-07-19 Status Conference.txt

12          THE COURT:  Each of you give me a very short letter

13    stating your positions and I will resolve that issue.

14          MR. WITTMANN:  Well, I think we can give you one

15    letter with respect to the order itself.  The only issue is

16    whether there would be a provision in the order that Mr. Herman

17    referred to as to the use of the profile forms by Merck, but

18    the order itself would be an agreed-on order with that one

19    exception.

20          THE COURT:  Just give me a very short letter telling

21    me each of your positions on that and I will resolve it.  The

22    medical records from healthcare providers.

23          MR. HERMAN:  There's no controversy as regards that

24    issue and a Pretrial Order has already been issued governing

25    the provision for medical records.

                                                            12


1           THE COURT:  The next item is contact with plaintiffs'

2     healthcare providers.  I did a minute entry.  I have an opinion

3     coming out hopefully today or tomorrow.  Plaintiffs'

4     depository.

5           MR. HERMAN:  It's up and running, Your Honor.  For

6     example, we have received from the FDA at least two of their

7     first page of production documents.  I've been able to review

8     them and turn them around within very short periods of time.

9     We do have reviewers and coders who are actively participating

10    in the depository.

11          THE COURT:  An item I didn't cover was the Pretrial

12    Order governing individual cases.

13          MR. WITTMANN:  That's in place.

14          MR. HERMAN:  It's VI.

15          THE COURT:  Right.  The PSC request for production of

16    FACTS database, we talked about that.  Discovery directed to

                              Page 10

2005-07-19 Status Conference.txt

17   the FDA.

18        MR. HERMAN:  Yes.  The discovery with respect to the

19   FDA, Your Honor, Mr. Wittmann and I have signed off on a

20   confidentiality order.  That was negotiated by Mr. Rafferty of

21   the PSC and representatives of the U.S. Attorney's Office.  The

22   FDA has proceeded to copy the documents we want.  They are

23   awaiting the confidentiality order, which we jointly presented

24   to Your Honor this morning.

25        THE COURT:  As I said last time, I appreciate the

                                                            13


 1   FDA's cooperation.  It makes it easier to handle a case of this

 2   sort if they do what they have done in this particular case.  I

 3   commend them on that.

 4        MR. HERMAN:  The U.S. Attorney's Office from the

 5   Eastern District has also been most helpful in facilitating

 6   these matters, Your Honor.

 7        THE COURT:  I do recognize them.  They have been a

 8   key element in this case, as well as other cases that I have

 9   handled.  Discovery directed to third parties.

10        MR. HERMAN:  We have issued 13 subpoenas to

11   nonparties and notices.  Mr. Tisi of the PSC has been in charge

12   of this particular issue, and we expect to issue additional

13   discovery very shortly.

14        THE COURT:  Now we can go back to XVI and that's the

15   remand issue.

16        MR. HERMAN:  I have one comment about that from the

17   PSC's point of view that I want to make very clear to the Court

18   and on the record.  The PSC should not be understood to have

19   taken a position that physicians should not be joined as

20   defendants.  In fact, our position is that where there is

                              Page 11

2005-07-19 Status Conference.txt

21    evidence that the physician was misled, the physician probably

22    should not be joined.  Where there is evidence that a physician

23    has committed medical negligence, then a physician should be

24    joined.  It's up to each individual lawyer to make that

25    investigation and that determination.  There seems to have been

14

1    some misunderstanding that the PSC has advocated not joining

2    healthcare providers or others who may be at fault and that

3    certainly isn't our position, nor is it our prerogative to give

4    that type of recommendation.  As to remand issues, the Garza

5    case representatives are here in the courtroom, and I

6    understand Your Honor will be taking that matter up.

7              THE COURT:  Right.  I'll be meeting with the

8    attorneys in the Garza case, together with the defendants, to

9    discuss the status of that particular case.  On remand issues,

10   also, last time I asked the state liaison committee to get

11   together a list so I could look at them.  Ms. Barrios, do you

12   have any report?

13             MS. BARRIOS:  Yes, Your Honor.  We received a copy of

14   your order on Friday.  Friday afternoon I was in communication

15   with Mr. Wittmann and Mr. Marvin.  They said they would

16   cooperate with us by providing us with a master list of the

17   motions to remand that they had.  We reached out to our fellow

18   plaintiffs' attorneys through the Cox-2 inhibitor list server

19   on ATLA.  That went out broadcast yesterday.  My office has

20   been bombarded with people who have written in to tell me about

21   their motions to remand.  I have two of my staff in the

22   courtroom who would like to meet with the Clerk's Office to

23   review the capability of PACER to be able to provide this

24   information to us, as well.  There seem to be, Your Honor,

25   several sources and we are trying to give you the most

Page 12

2005-07-19 Status Conference.txt

15

1  comprehensive list available.  We think by the time of the next
2  status conference we should have that for you.  We will group
3  it by state, as you requested.
4          THE COURT:  Gene, can you get together with
5  Ms. Barrios?
6          MR. SMITH:  Yes.
7          MR. HERMAN:  The PSC has requested if there are any
8  meetings or communications as between the state liaison
9  committee and the defense that the PSC be advised.
10         THE COURT:  Yes.  I would like the PSC to have a
11  representatives so we can coordinate this matter.  It's
12  significant and important that everybody know what's going on.
13  Mr. Becnel.
14         MR. BECNEL:  Yes, Your Honor.  Last week one of my
15  cases from Oregon filed in state court under a deadline by that
16  state's law and was removed to federal court.  Do I file the
17  remand motion directly with you now on that case?
18         THE COURT:  Sure.
19         MR. BECNEL:  It's in the pipeline.  Can I just file
20  it when it gets here?
21         THE COURT:  Yes.  When it gets here, just do that.
22  That's fine.  Tolling agreements.
23         MR. WITTMANN:  Yes, Your Honor.  Tolling agreements
24  are alive and well.  My partner, Tony DiLeo, has been handling
25  those in our firm and can give you a complete report where we

16

1  stand with that.
2          MR. DILEO:  Good morning, Judge.  Tony DiLeo on

Page 13

2005-07-19 Status Conference.txt
3  behalf of Merck.  On June 9 the plaintiffs' liaison counsel and

4  defense liaison counsel jointly submitted to the Court the

5  notice of the tolling agreement and the tolling agreement

6  itself with the forms, Exhibits A, B, and C.  These were also

7  served via LexisNexis and are available on the Court's web

8  site.

9            Pursuant to the tolling agreement protocol,

10 Mr. Wittmann, as defense liaison counsel, is to receive a

11 one-page form called Exhibit C, which provides very basic

12 information.  As of last night, we have received 422 of those

13 Exhibit C forms.  Most of these have been submitted fairly

14 recently.  I would say within the past three weeks or so.  Once

15 we receive those Exhibit C forms, we confirm to plaintiffs'

16 counsel by letter that we do have them and we notify them of

17 the 30-day time limit for them to provide Exhibits A and B.

18            Exhibit A, of course, is the plaintiffs' profile

19 form.  Exhibit B are the authorizations for release of

20 documents.  Exhibits A and B are due within 30 days after

21 Exhibit C arrives, and as of this time we received seven of the

22 Exhibits A and B.  Within three business days after we get

23 those exhibits, defense liaison counsel, Mr. Wittmann, is

24 required to confirm receipt, which we have done.

25            The only issue that we have had has been minor.
                                                           17


1  Where documents have been voluminous, because the tolling

2  agreement requires fax or e-mail, we have been asked, "Will you

3  accept FederalExpress," and we have agreed to that.  All and

4  all, I would say that the tolling agreement process is

5  proceeding very smoothly.  That is my report, unless the Court

6  has questions.

7            THE COURT:  That's fine.  There are some states --
                        Page 14

2005-07-19 Status Conference.txt

8   Louisiana being the only one that I know of -- where tolling

9   agreements may be problematic.  It's a question in civil law

10  whether or not you can toll a statute of limitations or

11  prescription, but that's the second issue.  Tolling agreements

12  make sense to me from both sides.  I do appreciate both sides

13  looking at this.  It makes it easier on the litigant and also

14  easier on the lawyer.  They don't have to put up funds.  At the

15  same time, the defendant gets some benefit out of it, also.  I

16  think it's a win for both sides to have tolling agreements

17  whenever possible.  Louisiana master complaint.

18          MR. HERMAN:  Mr. Meunier for the PSC and Mr. Wittmann

19  have been discussing a Louisiana master complaint.  They are

20  very close to agreement to a master complaint similar to

21  Achord, but not identical, with a short-form plaintiff profile

22  form.  Mr. Meunier and Mr. Arceneaux, on behalf of the PSC,

23  will be drafting the master complaint and then coordinating

24  with Ms. Cabraser and Mr. Levin, who have the responsibility

25  for the class action master complaint.

                                                          18


1           THE COURT:  Fine.  That's the Louisiana answer to

2   tolling agreements.

3           MR. WITTMANN:  Yes, Your Honor.  The efforts that

4   Mr. Meunier and I have been working on is to get an order in

5   place from the Court that will permit the naming of multiple

6   plaintiffs in one complaint, whether it's a master complaint or

7   whether it's simply a joinder.  We haven't really firmed that

8   up yet.  The idea is to allow Louisiana plaintiffs to be put in

9   the same position as non-Louisiana plaintiffs with respect to

10  tolling agreement.  We are tracking exactly the same provisions

11  in the tolling agreement and will put those in place in these

Page 15

2005-07-19 Status Conference.txt

12  joint Louisiana actions so that we can have the Louisiana

13  people get the same benefit that the tolling agreement provides

14  for people in other states, Your Honor.

15         THE COURT:  All right.  I talked to state liaison

16  counsel already on the issue of the grouping of the remand

17  matters.  Direct filing into the MDL.

18         MR. HERMAN:  Yes.  That process, Your Honor, is on

19  track and a number of cases are filed.  We have had

20  communications that other attorneys throughout the country want

21  to file direct.  They have been given access, of course, to the

22  web site, which tells them how to do it.  We have made

23  ourselves available to discuss with them any problems they have

24  about understanding the service waiver in filing in the MDL.

25         THE COURT:  I understand from the Clerk's Office that
                                                              19


1   we have been getting a number of filings directly.  Several

2   hundred of them have come in so far.

3          MR. RADOSTA:  We are averaging about 7 or 10, Judge,

4   in the last three weeks.

5          THE COURT:  Pro se claimants.

6          MR. HERMAN:  We have provided Your Honor with a

7   memoranda of four pro se claimants who have attempted to retain

8   counsel and have been unable to.  Your Honor preliminarily has,

9   I think, determined that the PSC should provide plaintiffs

10  assistance.  Mr. Seeger and Mr. Birchfield, who are the co-lead

11  counsel, will undertake to determine who on the PSC will be in

12  charge of that.

13         THE COURT:  These are the individuals who are

14  presently incarcerated in various prisons in the United States

15  and not able to be present here today.  They need

16  representation and do not have it.  The easiest way of my
                                Page 16

2005-07-19 Status Conference.txt

17   keeping in touch with that aspect of the case is to have

18   plaintiffs' liaison counsel represent those individuals so I

19   can have them before the Court in that fashion.

20          MR. HERMAN:  There are a much larger number of

21   individuals who are out there who have indicated they are

22   pro se who have not responded back to us that they have been

23   unable to get counsel.

24          THE COURT:  I have the MDL assessment before me.  Is

25   there any discussion on that, any problems?

                                                         20


1          MR. BIRCHFIELD:  Your Honor, good morning.  In

2   Pretrial Order 6 the Court created the PSC and you charged us

3   with the duties and responsibilities for managing and advancing

4   this litigation.  Since that time, we have made great strides

5   in that direction.  We have established subcommittees that are

6   very active now and working on various aspects of the

7   litigation.  We have established a depository here in

8   New Orleans, as well as the one in New York and in Montgomery.

9          We have undertaken additional discovery,

10   including third-party discovery that has been outlined for you

11   this morning.  We have also taken depositions.  Before this

12   litigation was started in the MDL, several members of the PSC

13   had spent several years involved in this litigation.  We have

14   taken those depositions, the discovery has been completed, and

15   we are building on that foundation in order to move this

16   litigation forward in the most efficient manner possible.

17          A tremendous amount of work has been done, but a

18   lot remains to be done.  We are doing a tremendous amount of

19   work to move it forward expeditiously.  In Pretrial Order 6,

20   the mechanism that you outlined called for the attorneys

Page 17

2005-07-19 Status Conference.txt

21  working with the PSC and at the PSC's direction to submit their

22  time records with the expectation they would be compensated for

23  that time and for the expenses that inure to the benefit of all

24  the plaintiffs.  We think now is the appropriate time for the

25  Court to establish that fund.

21

1           The proposal that we have filed with the Court

2  includes three options.  The first option we call the full

3  participation option, and it calls for a two percent assessment

4  for attorney's fees plus one percent for costs.  This option is

5  designed to foster cooperation and coordination between the

6  lawyers that are litigating cases in the MDL in federal courts

7  and those that are in state court litigation.  I'm not aware of

8  any pharmaceutical MDLs with an assessment that low, but that's

9  designed to foster that cooperation.

10           We are committed to producing an excellent work

11  product here, and to show that commitment we think that it's

12  imperative that those that are doing the work -- the PSC

13  members, the members of the committees that we have set up, the

14  state liaison committee -- all show their commitment by

15  participating in this full participation option.  We think by

16  doing that it fosters coordination and cooperation and not

17  competition among the various jurisdictions.

18           THE COURT:  It's your intent that all of the cases,

19  including those held by the PSC, will be assessed that amount?

20           MR. BIRCHFIELD:  Yes, Your Honor.  That's our

21  proposal, that it is voluntary, only by agreement.  Attorneys

22  that will sign this agreement, they agree to participate with

23  the MDL regardless of whether they are litigating in state

24  court or they have unfiled cases or case on the tolling

25  agreement.  We want to have this proposal available for a

2005-07-19 Status Conference.txt

1    limited period.  We want to encourage participation and

2    cooperation early in this litigation.  We want to make this

3    option available for 90 days from the time the Court enters

4    that order.

5              The second option is a traditional assessment

6    option and, really, we envision that applying to lawyers who

7    get cases late.  They would receive the MDL work product.  The

8    assessment for those cases that are pending in federal court

9    would be six percent and four percent for those that are in

10   state court.

11             The third option is what we call the limited

12   waiver option, and that is for lawyers who have cases both in

13   federal court and in state court and they wish to use the MDL

14   work product only for their federal court cases and not in

15   their state court cases.  The assessment there would be six

16   percent.

17             Your Honor, as was mentioned earlier, the first

18   Vioxx case is under way right now in Texas.  There are a number

19   of additional cases that are set for trial in the upcoming

20   months, including one hopefully here in the MDL within the next

21   four to five months, so we think that the time is appropriate

22   for the Court to establish a fund.  We would ask that you enter

23   an order establishing a fund and employing the proposal that we

24   submitted to the Court.

25             THE COURT:  Any comments?

1              MR. HILL:  Does the order apply to a member of the

2    state liaison committee who does not expect to share in common

2005-07-19 Status Conference.txt

3   benefit, is not intended to submit time or expense records for

4   reimbursement?

5          MR. BIRCHFIELD:  The proposal that we have submitted

6   would apply to all members of the state liaison committee, the

7   PSC, all committee members that are working in the litigation,

8   and the idea is to show our commitment to the work product and

9   to create a situation where there's not competition among the

10  jurisdictions, but a spirit of cooperation.  We think this

11  proposal achieves that objective.

12         THE COURT:  All right.

13         MR. BECNEL:  Your Honor, I would like to commend the

14  plaintiffs' committee on this because it will definitely bring

15  all of the cases with full cooperation.  The only request I

16  make of the Court is if I sign on -- which I will -- for me and

17  all of my referral lawyers from around the country -- and some

18  of them are still getting cases in, as I'm sure everybody in

19  the PLC is still getting cases in.  If I don't do it within 90

20  days, am I out, or if I can sign a general that everything I

21  get from here until the end of the case is under this two

22  percent, one percent -- I would like to have the Court enter an

23  order that you can put it all in now and not have to be worried

24  about whether it's a six-month-down-the-road case or a

25  two-year-down-the-road case.

                                              24


1          MR. BIRCHFIELD:  Your Honor, there's no objection.

2          THE COURT:  I see the point.  That's what I would

3   anticipate.  Also, there's got to be some flexibility in the

4   90-day situation.  There's got to be some situations where

5   people either didn't get notice or a case didn't come in or

6   something of that sort that they ought to be grandfathered in

7   in some way, but I will be looking at that.

2005-07-19 Status Conference.txt

8           MR. BIRCHFIELD:  Thank you.

9           THE COURT:  Thank you.  Anything further from

10   anybody?

11          MR. HERMAN:  Just a comment.  Mr. Ranier is chair of

12   our insurance committee.  We anticipate by the next meeting to

13   have made a determination as to whether to join or not join

14   insurers under the direct action statute, Louisiana cases, and

15   what additional discovery we would request.  We have asked the

16   defense to provide us some additional copies of some of the

17   dec. sheets that they have previously provided because they are

18   not legible.  Our marketing discovery committee Mark Robinson

19   chairs is ready to go as soon as the FACTS issue and the

20   detailer issues are determined.

21          THE COURT:  Any other issues that we need to focus

22   on?

23          MR. WITTMANN:  Not from our side, Your Honor.

24          THE COURT:  The next status conference will be

25   August 25 at 9:30 a.m.  I will meet with liaison counsel at

                                                          25


1    8:00 in the morning.  Thank you very much.  Court will stand in

2    recess.

3           THE DEPUTY CLERK:  Everyone rise.

4           (WHEREUPON, the Court was in recess.)

5                           *  *  *

6                         CERTIFICATE

7           I, Toni Doyle Tusa, CCR, Official Court Reporter,

8    United States District Court, Eastern District of Louisiana, do

9    hereby certify that the foregoing is a true and correct

10   transcript, to the best of my ability and understanding, from

11   the record of the proceedings in the above-entitled and

                          Page 21

2005-07-19 Status Conference.txt
12  numbered matter.

13

14

15                                          _____
                                            Toni Doyle Tusa, CCR
16                                          Official Court Reporter

17

18

19

20

21

22

23

24

25