UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: VIOXX | * | MDL NO. 1657 |
| | * | |
| PRODUCTS LIABILITY | * | |
| LITIGATION | * | SECTION L |
| | * | |
| THIS DOCUMENT RELATES | * | JUDGE FALLON |
| TO ALL CASES | * | MAG. JUDGE KNOWLES |
| | * | |
| FILER: Robert E. Arceneaux/Margaret Woodward | * | April 11, 2011 |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM IN SUPPORT OF**
**MOTION TO LIMIT FEES**

**MAY IT PLEASE THE COURT:**

This memorandum is respectfully submitted by Robert E. Arceneaux and Margaret E. Woodward, co-lead counsel for the Objectors identified in this Court's order of Feb. 2, 2010.[1]

**I.    STATEMENT OF THE FACTS**

The details of the Stratton settlement, or at least what is known by Objectors, have been the subject of numerous briefs, and will not be repeated here. Exhibit A hereto is the secret settlement entered into by Russ Herman, Andy Birchfield and Christohper Seeger; Exhibit B is the letter written by Michael Stratton designed to deceive the Court as to the true nature of the settlement; Exhibit C hereto is this Court's statement that the real details were not known by it, and the settlement was not approved.

---

[1]Several Objectors do not join in this motion: Cohen, Placitella and Roth; Anapol, Swchwatz, *et al*.; Morelli Ratner; Rice Motley; Sheller PC; Bruno and Bruno; and Locks Law Firm

. The Stratton deal may only be the tip of the iceberg. There are almost certainly other secret settlements, such as the Vioxx Litigation Consortium deal, and the horse-trading of recommended allocations in an effort to buy acceptances. These were the subject of discovery requests that have been denied by Master Juneau, in a ruling appealed to this Court.

Given that we know certain troubling facts and  may never have the chance to learn more, it is now time to move to the issue of remedy. We do not, however, abandon our requests to gather additional evidence which might better fit the suggested remedy to the FAC's conduct.

## II.     LAW GOVERNING FEE FORFEITURE OR LIMITATION OF FEES

Section 37 of the Restatement (Third) of Law Governing Law, entitled "Partial Or Complete Forfeiture Of A Lawyer's Compensation," provides as follows:

> A lawyer engaging in clear and serious violation of duty to a client may be required to forfeit some or all of the lawyer's compensation for the matter. Considerations relevant to the question of forfeiture include the gravity and timing of the violation, its willfulness, its effect on the value of the lawyer's work for the client, any other threatened or actual harm to the client, and the adequacy of other remedies.

Restatement (Third) of Law Governing Law. § 37 (2000). The revision comments state that:

> A lawyer's improper conduct can reduce or eliminate the fee that the lawyer may reasonably charge under § 34 (see Comment c thereof). A lawyer is not entitled to be paid for services rendered in violation of the lawyer's duty to a client or for services needed to alleviate the consequences of the lawyer's misconduct. See *Restatement Second, Agency* § 469 (agent entitled to no compensation for conduct which is disobedient or breach of duty of loyalty to principal). A tribunal will also consider misconduct more broadly, as evidence of the lawyer's lack of competence and loyalty, and hence of the value of the lawyer's services.
>
> * * * * *
>
> c. Violation of a duty to a client. This Section provides for forfeiture when a lawyer engages in a clear and serious violation (see Comment d hereto) of a duty to the client. The source of the duty can be civil or criminal law, including, for example, the requirements of an applicable lawyer code or the law of malpractice. The misconduct might have occurred when the lawyer was retained, during the representation, or

-2-

during attempts to collect a fee (see § 41). On improper withdrawal as a ground for forfeiture, see § 40, Comment e.

\* \* \* \* \*

In approaching the ultimate issue of whether violation of duty warrants fee forfeiture, several factors are relevant. The extent of the misconduct is one factor. Normally, forfeiture is more appropriate for repeated or continuing violations than for a single incident. Whether the breach involved knowing violation or conscious disloyalty to a client is also relevant. See *Restatement Second, Agency* § 469 (forfeiture for willful and deliberate breach). Forfeiture is generally inappropriate when the lawyer has not done anything willfully blameworthy, for example, when a conflict of interest arises during a representation because of the unexpected act of a client or third person.

Forfeiture should be proportionate to the seriousness of the offense. For example, **a lawyer's failure to keep a client's funds segregated in a separate account (see § 44) should not result in forfeiture if the funds are preserved undiminished for the client**. **But forfeiture is justified for a flagrant violation even though no harm can be proved**.

(Emphasis added).

The comments to the Restatement give several examples of instances where forfeiture or fee reduction was deemed appropriate.[2] But the lead case on the issue is  from the Supreme Court of

---

[2]For examples of breaches justifying fee forfeiture, *see, e.g., Silbiger v. Prudence Bonds Corp.*, 180 F.2d 917 (2d Cir.), *cert. denied*, 340 U.S. 813, 71 S.Ct. 40, 95 L.Ed. 597 (1950) ("Certainly by the beginning of the Seventeenth Century it had become a common-place that an attorney must not represent opposed interests, and the usual consequence has been that he is debarred from receiving any fee from either, no matter how successful his labors."); *Crawford & Lewis v. Boatmen's Trust Co.*, 1 S.W.3d 417 (Ark.1999) (conflict of interests); *Jeffry v. Pounds*, 136 Cal.Rptr. 373 (Cal.Ct.App.1977) (forfeiture for agreeing to represent client's wife in divorce); *Jackson v. Griffith*, 421 So.2d 677 (Fla.Dist.Ct.App.1982) (coercing client into contract); Sanders v. Townsend, 509 N.E.2d 860 (Ind.Ct.App.1987), aff'd in part, vacated in part, 582 N.E.2d 355 (Ind.1991) (coercing client to accept poor settlement); *Rice v. Perl*, 320 N.W.2d 407 (Minn.1982) (not disclosing to client that lawyer's firm employs opposing party's adjuster in other matters); *Ranta v. McCarney*, 391 N.W.2d 161 (N.D.1986) (practicing in state where not admitted); Crawford v. Logan, 656 S.W.2d 360 (Tenn.1983) (failing to return former client's papers); *Burrow v. Arce*, 997S.W. 2d229 ( Tex. 1999) (following Restatement approach). Compare *In re Rosenman & Colin*, 850 F.2d 57 (2d Cir.1988) (breach of contract barred recovery on contract, but did not forfeit all compensation); *Searcy, Denney, Scarola, Barnhart & Shipley, P.A. v. Scheller*, 629 So.2d 947

(continued...)

Texas. "In 1999, in *Burrow v. Arce*, 997 S.W. 2d 229 (Tx 1999), a shot heard around the bar, the Texas Supreme Court held that lawyers who breach their fiduciary duties to their clients can be required to forfeit their fees even if the clients cannot show that they have suffered any actual damages." Brickman, *Anatomy of an Aggregate Settlement: the Triumph of Temptation over Ethics*, 79 Geo. Wash. L. Rev. 700, 714 (2011). After explosions at a chemical plant killed 23 workers and injured hundreds of others, plaintiffs received $190 million in a settlement, out of which the attorneys received a contingent fee of over $60 million. The clients then sued their attorneys for breach of fiduciary duty, fraud, breach of contract, and forfeiture of all fees the attorneys received, among other claims. The trial court granted the attorneys summary judgment. The appellate court reversed in part, and remanded, holding, *inter alia,* that a client need not prove actual damages in order to obtain forfeiture of an attorney's fee for the attorney's breach of fiduciary duty to the client. Affirming as modified and remanding, the Supreme Court of Texas held that whether an attorney must forfeit any or all of his fee for a breach of fiduciary duty to his client must be determined by applying the rule in § 49 of the proposed Restatement and other equitable factors, and that actual damages by the client are not a necessary element of fee forfeiture. *See Burrow v. Arce*, *supra*.

**III. HERMAN, BIRCHFIELD, AND SEEGER (AND ANY OTHER PARTICIPANT IN THE STRATTON AND ANY OTHER SECRET AND UNAPPROVED SIDE DEAL) MUST FORFEIT AT LEAST A SIGNIFICANT PORTION OF THEIR COMMON BENEFIT FEES.**

While one could certainly make a case of breach of fiduciary duty by Herman, Birchfield, and Seeger, fee limitation here is justified by a the violation of obligations of a higher order.

---

[2](...continued)
 (Fla.Dist.Ct.App.1993) (court has discretion as to forfeiture when lawyer pressured client to change fee contract).

Notwithstanding the FAC's argument that the common benefit fund was collected pursuant to a private agreement (the MSA) and is being administered under a private escrow agreement, *see,* FAC Opposition to Motion to Restore, it is evident that under those "private" arrangements were – and could only have been – confected under the aegis of this Court and the expectation of all parties concerned (save possibly the FAC) that the fund was to be held in trust for the common benefit claimants. The FAC removed funds from that trust account to secretly settle a claim and eliminate a controversy that threatened the amount of fees the FAC might ultimately anticipate recovering; in other words, it used the claimants' funds, held in trust, to resolve a claim that tangentially benefitted the claimants, but largely benefitted the FAC itself, without the claimants' knowledge, much less their consent. Would any court, anywhere, permit an attorney to use client funds in his trust account in such a way? And, what if the deposit into that account had been the product of a court order, and was protected by court orders that expressly stated that no funds could be withdrawn from the account without judicial approval? While no case with such facts has been found, this is most probably due to the fact that there have not been lawyers brazen enough to proceed with such a course of conduct, in the face of the obvious breach of client obligations and more seriously, the breach of duties owed to the court.

Comment (e) to the Restatement states that fee forfeiture is "[u]ltimately [a] question ... of fairness in view of the seriousness of the lawyer's violation and considering the special duties imposed on lawyers, the gravity, timing, and likely consequences to the client of the lawyer's misbehavior, and the connection between the various services performed by the lawyer."

The allegations here are harsh. The remedies sought are severe. The task of submitting them to this Court is unpleasant and regrettable. But, it is co-lead counsels' duty, as officers of the court

and as attorneys charged with zealously representing their clients' interests, to ask that attorneys charged with quasi-judicial functions by the Court be held to the highest standards of care both under the rules that govern the practice of law and the orders of the Court – particularly in dealing with trust funds. Fee forfeiture is appropriate both to penalize the FAC and to deter others from pursuing a course of reckless disregard for the rules of professional conduct and the orders of the Court.

If there is any legitimate defense for the FAC's conduct, it has yet to offer it. First, Mr. Herman asserted that the common benefit fund was "no one's" money, and so he could deal with as he saw fit. Then, he asserted that this Court "did not want to know" how he was using those funds to settle objections such as Stratton's. Then, he argued that the settlement was acceptable because the result he achieved was good. Finally, the FAC's co-lead and liaison counsel argued that the fund was "private," and that somehow the trust documents gave them authority to use the funds as if they were their own, even though this Court had firmly asserted jurisdiction over the fund, and the fund documents affirmed that authority. Moreover, none of the defenses offered attempt to explain how the settling parties may appropriately confect a secret settlement, and then deceive the Court as to its terms. The July 28 letter published to the world suggested that the settlement was really a 7.5% agreement, not the 4% agreement actually struck the previous day. That letter misled the Court, all claimants, and the world, about the parties' positions with respect to the assessment then under the Court's consideration, and misled the claimants about the respective contributions of claimants to the common benefit fund, a matter clearly pertinent to the fee allocation.

## IV.   CONCLUSION

The FAC has claimed for itself $230,000,000 of the $315,000,000 common benefit fund.

Somewhere along the way, it appears to have lost sight of the fact that its claim had yet to be ratified by this Court. It has treated the fund as its own, and expects to be handsomely rewarded for doing so. It should not be paid for its *ultra vires* acts and it should further forfeit fees for its continuing violations of its duties to the claimants and this Court.

Respectfully submitted:

/s/ Robert E. Arceneaux

_____
Robert E. Arceneaux, La Bar No. 01199
ROBERT E. ARCENEAUX LLC
47 Beverly Garden Drive
Metairie, LA 70001
(504) 833-7533 office
(504) 833-7612 fax
rea7001@cox.net

/s/ Margaret E. Woodward

_____
MARGARET E. WOODWARD, La. Bar No.13677
3701 Canal Street, Suite C
New Orleans, Louisiana  70119
(504) 301-4333 office
(504) 301-4365 fax
mewno@aol.com

**CO-LEAD COUNSEL FOR OBJECTORS IDENTIFIED IN FEB. 8 ORDER**

**CERTIFICATE OF SERVICE**

    I hereby certify that the above and foregoing Memorandum has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail, and by upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre Trial Order No.8, on this date, April 11, 2011.

/s/ Robert Arceneaux

```
 1                    UNITED STATES DISTRICT COURT

 2                    EASTERN DISTRICT OF LOUISIANA

 3

 4

 5
    IN RE:  VIOXX PRODUCTS              *    Docket 05-MD-1657-L
 6          LIABILITY LITIGATION        *
                                        *    July 27, 2010
 7                                      *
    This Document Relates to All Cases  *    1:00 p.m.
 8  * * * * * * * * * * * * * * * * * * *

 9

10
                 PRIVATE PROCEEDINGS BETWEEN COUNSEL
11                  HELD IN THE CONFERENCE ROOM OF
                     THE HONORABLE ELDON E. FALLON
12                    UNITED STATES DISTRICT JUDGE

13

14  Appearances:

15
    For the Plaintiffs:          Herman Herman Katz & Cotlar
16                               BY:  RUSS M. HERMAN, ESQ.
                                 820 O'Keefe Avenue
17                               New Orleans, Louisiana 70113

18
    For the Plaintiffs:          Beasley Allen
19                               BY:  ANDY D. BIRCHFIELD JR., ESQ.
                                 218 Commerce Street
20                               Montgomery, Alabama 36104

21
    For the Plaintiffs:          Seeger Weiss
22                               BY:  CHRISTOPHER A. SEEGER, ESQ.
                                 One William Street
23                               New York, New York 10004

24

25

                                              EXHIBIT A
```

```
 1   Appearances:

 2
     For the Objectors:              Stratton Faxon
 3                                   BY:  MICHAEL STRATTON, ESQ.
                                     59 Elm Street
 4                                   New Haven, Connecticut 06510

 5
     Official Court Reporter:        Toni Doyle Tusa, CCR, FCRR
 6                                   500 Poydras Street, Room B-406
                                     New Orleans, Louisiana 70130
 7                                   (504) 589-7778

 8

 9

10
     Proceedings recorded by mechanical stenography; transcript
11   produced by computer.

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Case 2:05-md-01657-EEF-DEK   Document 62805-1   Filed 04/11/11   Page 9 of 18

2

## PROCEEDINGS

### (July 27, 2010)

(WHEREUPON the following proceedings were held in chambers outside the presence of the Court.)

**MR. BIRCHFIELD:** Here in the conference room we have Michael Stratton, who serves as the liaison for the objectors; Russ Herman, who is plaintiff liaison counsel; co-lead counsel Chris Seeger and Andy Birchfield. This is in MDL Docket 1657.

We have entered into a private agreement where Mr. Stratton is speaking on behalf of all of the objectors to the plaintiff liaison counsel's petition for assessment and Russ Herman is speaking on behalf of the NPC.

The parties have agreed that each side will recommend to the Court that there be a global assessment in the amount of 7.5 percent. For each of the objectors who timely filed an objection to the plaintiff liaison counsel's petition, they will pay a total of a 4 percent assessment, and the difference will be disbursed from the account that's held in escrow now by BrownGreer.

The aggregate amount for that list of objectors is $18,539,236.85. That amount will be transferred to the trust account at Stratton Faxon to be disbursed to the objectors by Mr. Stratton. Any common benefit fees or costs will be a matter of agreement between Mr. Stratton and the individual objectors.

1            The parties will prepare a list of objectors
2    that will be submitted to BrownGreer for the amount of the
3    funds to be released for each of those individual accounts.
4    Again, the aggregate, that total sum, will be wired to the
5    trust account of Stratton Faxon.
6            **MR. SEEGER:**  I would just like, for the record, for
7    Mike to acknowledge the reasonableness of the 7.5 percent.
8            **MR. STRATTON:**  Yes.  As the liaison counsel for the
9    objectors, we have gotten well through discovery.  We have
10   spoken to experts.  We have taken depositions, had depositions
11   taken of us, and done the research.  At the end of the day, on
12   behalf of all the objectors, I can say that we all feel
13   7.5 percent is a reasonable fee for the common benefit
14   attorneys in this case.
15           I would also add that any future cases that
16   result in some sort of recovery brought by anybody who was a
17   timely objector to this fee petition will be treated at the
18   4 percent level.
19           Further, it's our understanding that BrownGreer
20   will be instructed as soon as possible to make this
21   disbursement to the objectors via the Stratton Faxon trustee
22   account.
23           **MR. BIRCHFIELD:**  I will transmit a list to you of the
24   objectors and the amount for you to verify that each of the
25   objectors is listed and the amount is correct.  Once you give

1   that to us, then we will act promptly to instruct BrownGreer to
2   release the funds.
3         **MR. STRATTON:**  Liaison counsel for the objectors,
4   being me, on behalf of all of the objectors in this case to the
5   fee petition, withdraw all of those objections.  We no longer
6   have any objection to the fee petition filed by the NPC to the
7   extent that our recommendation is that it ought to be reduced
8   to 7.5 percent.  We'll be putting that on the record.
9         **MR. HERMAN:**  One other issue.  We all recognize that
10  Judge Fallon, as the MDL judge in this matter, has the
11  authority and power to reduce the 7.5 percent that we have
12  recommended but will not increase the fund beyond 7.5 percent.
13        **MR. SEEGER:**  Correct.
14        **MR. STRATTON:**  Correct.  It's also understood by
15  everybody here, Mr. Herman, I'm assuming, that in no case will
16  any of the objectors ever pay more than 4 percent of their
17  aggregate settlements for the fees of common benefit lawyers in
18  this case.  I just want to make that crystal clear.  That's
19  true?  4 percent is it.  That's what they are paying into the
20  quantum.
21        **MR. HERMAN:**  Correct.
22                                 * * *
23
24
25

**CERTIFICATE**

     I, Toni Doyle Tusa, CCR, FCRR, Official Court Reporter for the United States District Court, Eastern District of Louisiana, do hereby certify that the foregoing is a true and correct transcript, to the best of my ability and understanding, from the record of the proceedings in the above-entitled and numbered matter.

                                      s/ Toni Doyle Tusa
                                      Toni Doyle Tusa, CCR, FCRR
                                      Official Court Reporter



# Stratton Faxon
Connecticut's Firm for Trial Law

Michael A. Stratton
mstratton@strattonfaxon.com

July 28, 2010

**VIA FACSIMILE**

Honorable Eldon E. Fallon
U.S. District Court
Eastern District of Louisiana
500 Poydras Street
Room C456
New Orleans, LA 70130
(504) 589-6966

    Re:    **MDL No. 1657**
            **Section L**
            **In Re Vioxx Products Liability Litigation**

            **Common Benefit Fees**

Dear Judge Fallon:

    As you know, the objectors through undersigned examined 500,000 hours submitted by common benefit lawyers, took depositions, briefed several issues, and consulted with mass tort class action fee experts in academia. The 7.5 percent joint recommendation made yesterday is well supported by our investigation, precedent, and the academic writings in this field. Moreover, our experts agreed that 7.5 percent was a fair fee award for the common benefit lawyers given precedent and the work done in this case.

    Thank you for allowing us to clarify the basis for our asking for a reduction of the fee to 7.5 percent.

                                            Very truly yours,

                                           Michael A. Stratton

59 Elm Street, New Haven, CT 06510 • Telephone: 203.624.9500 Fax: 203.624.9100 Toll-free: 866.351.9500 • www.strattonfaxon.com

                                                                            EXHIBIT B

```
 1                    UNITED STATES DISTRICT COURT
                      EASTERN DISTRICT OF LOUISIANA
 2

 3     ****************************************************************

 4
       IN RE:  VIOXX PRODUCTS
 5         LIABILITY LITIGATION

 6                                    DOCKET NO. 05-MDL-1657
                                      NEW ORLEANS, LOUISIANA
 7                                    THURSDAY, FEBRUARY 17, 2011, 3:30 A.M.

 8     THIS DOCUMENT RELATES TO
       ALL CASES
 9

10     ****************************************************************

11
                            TRANSCRIPT OF PROCEEDINGS
12              HEARD BEFORE THE HONORABLE ELDON E. FALLON
                       UNITED STATES DISTRICT JUDGE
13

14     APPEARANCES:

15

16     FOR THE PLAINTIFFS:        HERMAN HERMAN KATZ & COTLAR
                                  BY:  RUSS M. HERMAN, ESQUIRE
17                                820 O'KEEFE AVENUE
                                  NEW ORLEANS LA  70113
18

19                                BEASLEY ALLEN CROW METHVIN
                                  PORTIS & MILES
20                                BY:  ANDY D. BIRCHFIELD, JR., ESQUIRE
                                  234 COMMERCE STREET
21                                POST OFFICE BOX 4160
                                  MONTGOMERY AL  36103
22

23                                SEEGER WEISS
                                  BY:  CHRISTOPHER A. SEEGER, ESQUIRE
24                                ONE WILLIAM STREET
                                  NEW YORK NY  10004
25
```

(Timestamps in left margin: 08:50AM on lines 7, 8, 9)

EXHIBIT C

```
 1  APPEARANCES CONTINUED:

 2

 3  FOR THE OBJECTORS:        MARGARET E. WOODWARD
                              ATTORNEY AT LAW
 4                            3701 CANAL STREET, SUITE C
                              NEW ORLEANS LA   70119
 5

 6                            ROBERT E. ARCENEAUX
                              ATTORNEY AT LAW
 7                            47 BEVERLY GARDEN DRIVE
                              METAIRIE LA   70001
 8

 9                            AJUBITA LEFTWICH & SALZER
                              PASCAL F. CALOGERO, JR., ESQUIRE
10                            1100 POYDRAS STREET
                              NEW ORLEANS LA   70163
11

12

13  SPECIAL MASTER:           JUNEAU DAVID
                              BY:  PATRICK A. JUNEAU, ESQUIRE
14                            THE HARDING CENTER
                              1018 HARDING STREET, SUITE 202
15                            P.O. DRAWER 51268
                              LAFAYETTE LA   70505
16

17

18  OFFICIAL COURT REPORTER:      CATHY PEPPER, CCR, RMR, CRR
                                  CERTIFIED REALTIME REPORTER
19                                500 POYDRAS STREET, ROOM B406
                                  NEW ORLEANS, LOUISIANA 70130
20                                (504) 589-7779

21
    PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY.   TRANSCRIPT
22  PRODUCED BY COMPUTER.

23

24

25
```

| | | |
|---|---|---|
| 03:40PM | 1 | comfortable with where they came from.  Also, on October 19th, |
| 03:40PM | 2 | this Court issued an order which went through the Stratton |
| 03:41PM | 3 | objection and made no mention of any sort of deal or payment of |
| 03:41PM | 4 | money or anything like that. |
| 03:41PM | 5 | On January 21st, when the total amounts came out, I was |
| 03:41PM | 6 | again concerned because, instead of 315,250,000, I expected there |
| 03:41PM | 7 | to be 18.5 million or $19.2 million less than that; but, instead, |
| 03:41PM | 8 | the total added up to 311 million. |
| 03:41PM | 9 | I wanted to bring this to the Court's attention because now |
| 03:41PM | 10 | my attorney is in possession of these checks, and I'm concerned |
| 03:41PM | 11 | about this, wanted to bring this to the Court's attention.  I |
| 03:41PM | 12 | know this Court values transparency above all, and I'm confused |
| 03:41PM | 13 | by the issue.  I thank the Court for allowing me to address this |
| 03:41PM | 14 | issue. |
| 03:41PM | 15 | THE COURT:  Fine.  The only thing I know of it is that |
| 03:41PM | 16 | there was an objection to the total sum of the common benefit |
| 03:42PM | 17 | fund, that Mr. Stratton represented the objectors, and I presided |
| 03:42PM | 18 | -- or I gave them an opportunity to do some discovery early on. |
| 03:42PM | 19 | They did some discovery.  They had some issues.  I resolved the |
| 03:42PM | 20 | discovery issues, the evidentiary issues.  They proceeded on with |
| 03:42PM | 21 | the case. |
| 03:42PM | 22 | I was advised that the objectors withdrew the objection. |
| 03:42PM | 23 | That's all that I know of it.  I wasn't involved in any |
| 03:42PM | 24 | discussions or agreements.  That's why I didn't issue any orders. |
| 03:42PM | 25 | It didn't come to my attention in that form or fashion.  If any |

```
03:42PM  1  of the --
03:42PM  2           MR. HERMAN:  I'll be happy to respond, Your Honor.
03:42PM  3           THE COURT:  Sure.
03:42PM  4           MR. HERMAN:  Mr. Stratton, on behalf of a number of
03:42PM  5  objectors who had objected to the 8 percent withdrawal from -- in
03:43PM  6  order to fund common benefit fees, filed, actually, an action
03:43PM  7  within the MDL to have those -- that 8 percent judgment set
03:43PM  8  aside, at least for those objectors.
03:43PM  9      If Ms. Snapka received a check, she was an objector.
03:43PM 10  Mr. Stratton then affirmed on the record in writing and before
03:43PM 11  Your Honor that he had unanimous consent to negotiate and resolve
03:43PM 12  all the objections.
03:43PM 13      We entered negotiation after, and Mr. Stratton took my
03:43PM 14  deposition and I took his deposition.  We entered a settlement
03:44PM 15  negotiation which was supposed to be confidential as regards
03:44PM 16  Mr. Stratton, which obviously is not confidential, and settlement
03:44PM 17  resolutions are not necessarily published.
03:44PM 18      The return of funds to the various objectors resolved their
03:44PM 19  objections as regards deductions from them of common benefit
03:44PM 20  fees.  The common benefit fund, therefore, was reduced by the
03:44PM 21  objectors receiving back funds which they had contended were not
03:44PM 22  due to be placed in the common fund.
03:44PM 23      As regards any communications between Mr. Stratton and
03:44PM 24  Ms. Snapka or Mr. Stratton and any other objector who received
03:45PM 25  their monies back, we have no knowledge.  We certainly don't know
```