1                    UNITED STATES DISTRICT COURT

2                    EASTERN DISTRICT OF LOUISIANA

3

4

5    IN RE:  VIOXX PRODUCTS        *        Docket MDL 1657-L
        LIABILITY LITIGATION        *
6                                   *        April 1, 2011
                                    *
7    This case relates to All Cases  *        9:00 a.m.
     * * * * * * * * * * * * * * * * *
8

9

10                   STATUS CONFERENCE BEFORE THE
                       HONORABLE ELDON E. FALLON
11                   UNITED STATES DISTRICT JUDGE

12
     Appearances:
13

14   For the Plaintiffs:          Herman Herman Katz & Cotlar, LLP
                                   BY:  RUSS M. HERMAN, ESQ.
15                                 820 O'Keefe Avenue
                                   New Orleans, Louisiana 70113
16

17   For the Defendant:           Williams & Connolly, LLP
                                   BY:  DOUGLAS R. MARVIN, ESQ.
18                                 725 Twelfth Street N.W.
                                   Washington, D.C. 20005
19

20   Also Participating:          Thomas Juneau, Esq.
                                   Elizabeth Cabraser, Esq.
21                                 John Beisner, Esq.
                                   Dawn Barrios, Esq.
22                                 Robert Johnston, Esq.
                                   Ann Oldfather, Esq.
23                                 Jack Urquhart, Esq.
                                   Dorothy Wimberly, Esq.
24                                 Leonard Davis, Esq.

25

1    Official Court Reporter:        Toni Doyle Tusa, CCR, FCRR
2                                    500 Poydras Street, Room B-406
                                     New Orleans, Louisiana 70130
3                                    (504) 589-7778
4

5
     Proceedings recorded by mechanical stenography, transcript
6    produced by computer.
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                            __PROCEEDINGS__

2                           **(April 1, 2011)**

3          **THE DEPUTY CLERK:**  Everyone rise.

4                 Be seated, please.

5          **THE COURT:**  Good morning, ladies and gentlemen.

6                 Call the case.

7          **THE DEPUTY CLERK:**  MDL 1657, *In Re: Vioxx*.

8          **THE COURT:**  Counsel make their appearance for the

9    record, please.

10         **MR. MARVIN:**  Good morning, Your Honor.  May it please

11   the Court.  Douglas Marvin for Merck.

12         **MR. HERMAN:**  Good morning, Judge Fallon.  Russ Herman

13   for plaintiffs.

14         **THE COURT:**  We are here today for our monthly status

15   conference.  I received a proposed agenda from the parties.  I

16   met in advance with the lead and liaison counsel and discussed

17   it with them.  I will take it in the order in which they have

18   presented it.

19                Anything on the Settlement Program?

20         **MR. MARVIN:**  Your Honor, all the claims have been

21   processed.  There are some payments that still need to be made,

22   but those are pending appointments of representatives and

23   resolution of lien issues.  Everything is proceeding apace.

24         **THE COURT:**  There are cases outside of the Settlement

25   Program, though, aren't there?

 1          **MR. MARVIN:**  There are, Your Honor.

 2          **THE COURT:**  How many are there, about?  I know

 3   there's the attorney general claims.  What other claims are

 4   still on?

 5          **MR. MARVIN:**  There are personal injury claims that

 6   still remain.  There are about 175 of those cases that fall

 7   into three categories.  The first category are the PTO 28

 8   cases, the cases that were pending at the time of the

 9   settlement and were either ineligible to enroll or chose not to

10   enroll.  The second category are the PTO 43 cases.  Those are

11   the cases that entered the program but did not pass through the

12   gates.  Then there are the PTO 29 cases that were filed after

13   the settlement.  So when you total all three categories, it's

14   approximately 175 cases.

15              At the last conference that we had with the

16   Court, Ms. Oldfather, Mr. Birchfield, and myself, an agreement

17   was reached to lift the stay on the PTO 43 cases and the PTO 29

18   cases.  The stay had already been lifted as to the PTO 28

19   cases.  So all those cases are now subject to discovery, and we

20   will be talking to Ms. Oldfather and to the PSC about a plan

21   forward on those cases.

22          **THE COURT:**  That's my concern because I do want to

23   move forward in the cases.  We just had a conference with the

24   respective parties.  I need to put some structure into the

25   remaining cases, so I have asked the parties to get together

1    and give me some sort of a breakdown on how many fall into each
2    category.  We will see where we are, and then I'm going to deal
3    with putting some structure into it so that we can proceed to
4    trial in those particular cases.  There's resource problems,
5    there's "person power" problems, and a lot of other things that
6    have to be resolved, but I will be on that quickly.
7                        Anything from the lien administrator?
8                   **MR. HERMAN:**  Nothing new, Your Honor.
9                   **THE COURT:**  What about the special master?
10                  **MR. HERMAN:**  Tom Juneau is here.
11                  **MR. JUNEAU:**  Good morning, Your Honor.  Thomas
12   Juneau.  I'm here for the special master, Patrick Juneau.  I
13   will just report very briefly on the four tasks, as I
14   appreciate, that he is working on, Judge.  One is the basic
15   Vioxx litigation, two is the lien dispute matter, three is the
16   attorney general matters, and four is the attorney fee
17   disputes.  I will address each of those individually very
18   briefly, Judge.
19                       First, with regard to the basic Vioxx
20   litigation, those tasks have essentially been completed.  All
21   the work has been completed in that matter.
22                       Second, with regard to the lien disputes, the
23   work is completed in that matter as well and the report has
24   been submitted.
25                       Third, with regard to the attorney general

1   matters, Your Honor, the special master, Mr. Juneau, spoke on

2   Wednesday with a representative of the U.S. Department of

3   Justice.  By next week, we expect the Department of Justice to

4   have a final determination with regard to what they will

5   require, what language in the settlement release.  Once that

6   determination is made, Judge, the special master should be in a

7   position to reinstitute the discussions between Merck and the

8   attorney general.

9                   The fourth and final matter, Judge, is with

10  regard to the attorney fee disputes.  Yesterday, the special

11  master filed his formal report with the Court.  All parties

12  have been so notified.  The report contains the special

13  master's recommendations and rulings on discovery issues and

14  the allocation process.  The report also sets forth a

15  scheduling order with deadlines with regard to the fee

16  allocation disputes.  The report also did set a hearing date,

17  Judge, and that hearing is set for May 9, 2011.

18            THE COURT:  Fine.  With regard to that, as I

19  announced on a number of occasions, what I'm doing is

20  collecting facts, collecting information, collecting data,

21  collecting opinions from various sources.

22                  I received fee applications from all of the

23  individuals.  The first thing I did was to create a fee

24  allocation committee and empowered them to discuss with the

25  parties who submitted fee applications their position, put it

1   on the record, take whatever testimony or record their

2   discussions, then come up with a proposed allocation, discuss

3   it further with the individuals to get their input, and then

4   give me a final proposed allocation according to their vantage

5   point.

6            I felt that having people who had done the work

7   both on the committee and not on the committee was valuable

8   input.  I wanted to tap that input, so that's the way I tapped

9   that input.  When I got their proposal, which is only a

10  proposal, I then posted it on the Web site for everybody to

11  see.

12           There were some 17 out of 100, or thereabouts,

13  applications that objected.  I gave them an opportunity to

14  object, express their objection, and then I appointed a special

15  master, somebody who had not worked on the case, a fresh pair

16  of eyes, as it were, to look at the matter, take whatever

17  testimony he felt was appropriate, still necessary, and allow

18  some discovery to the extent he felt was necessary, and then

19  for him to give me a proposal.

20           That way I have suggestions from people who have

21  done the work, have been familiar with the case for a number of

22  years; another person who hasn't done the work, looked at it

23  fresh; and then I'm going to take all of that information and

24  apply what knowledge I have of this particular case and the

25  work done, and then I will come out with a final fee

1    allocation.  That's what I'm doing in this process.  Thank you
2    very much for your help.
3                MR. JUNEAU:  Thank you, Judge.
4                THE COURT:  Class actions, anything?
5                MR. HERMAN:  Nothing new, Your Honor.
6                THE COURT:  State/federal coordination?
7                MR. HERMAN:  Ms. Barrios is here.
8                THE COURT:  Wait.  You said nothing new.
9                MR. HERMAN:  I'm sorry.  Excuse me, Elizabeth.
10               MS. CABRASER:  Your Honor, Elizabeth Cabraser from
11   the PSC, just to report in on the status of the consumer cases.
12   Your Honor has under submission Merck's motion to strike and
13   the plaintiffs' opposition to that.  We submitted recently
14   supplemental authority from the Eleventh Circuit upholding
15   class certification under the Florida consumer statute, which
16   is one of the statutes at issue in this case.
17               I'm also informed that last week the Kentucky
18   Supreme Court issued an order upholding the *Ratliff v. Merck*
19   state court Vioxx class action under Kentucky Rule 23 and
20   affirming the denial of summary judgment in that case.  We'll
21   submit that decision to Your Honor in due course.
22               Other than that, we understand that we are in
23   line after the AG cases in terms of further action by this
24   Court.  We recommended to the Court, if we ever get to that
25   point, consideration of the Florida statewide claim as a

1   potential bellwether claim for a common fact trial when we

2   submitted the Eleventh Circuit authority.

3           **THE COURT:**  How do you see that unfolding, Elizabeth,

4   from that standpoint?  It would be tried here, in Florida, or

5   what?

6           **MS. CABRASER:**  It could be tried here, Your Honor, or

7   it could be tried in Florida.  Frankly, we would need a

8   substantial meet-and-confer with Merck to fully develop their

9   opinion on it.  We would submit some sort of plan to this

10  Court, assuming the claims survive the motion to strike class

11  allegations, and we would take it from there.

12          **THE COURT:**  Thank you very much.

13          **MS. CABRASER:**  Thank you.

14          **THE COURT:**  John, do you have anything?

15          **MR. BEISNER:**  Your Honor, if I may, first of all, let

16  me address the Kentucky order because the order from the

17  Kentucky Supreme Court is different than my esteemed counsel

18  indicated.

19          We had filed in Kentucky a petition for writ of

20  mandamus, which at the time we filed it was the only appellate

21  mechanism available in Kentucky for review of a class

22  certification order.  Since that time, the state has adopted a

23  rule comparable to Rule 23(f) that permits interlocutory

24  appellate review.  The trial court there, after it issued its

25  initial order, issued a second class certification order from

 1   which we have taken an appeal under that new Kentucky

 2   procedure.

 3              All that the Supreme Court did was to say, "We

 4   are denying the writ of mandamus," but they were explicit that

 5   they were not addressing the merits of the class certification

 6   order issued by the trial court and explicitly acknowledged

 7   that that would be considered by the Kentucky Court of Appeals

 8   through the new process that's been invoked.  So, in short,

 9   there's been no determination made by the Kentucky

10   Supreme Court as to the appropriateness of class certification

11   in that case.

12              Your Honor, with respect to the road ahead in

13   this proceeding -- and I'm not sure counsel is disagreeing with

14   this -- I think the first step is resolving the threshold

15   motions that we have made here.  I'm not sure that much purpose

16   is served, in terms of talking about trials and other things,

17   until we know if there's to be a class of any sort.

18              Of course, this was a motion to strike, so there

19   would still need to be an affirmative motion for class

20   certification the Court would need to grant before we can talk

21   about trial, so just note that.  Thank you, Your Honor.

22              **THE COURT:**  Thank you.

23              **MR. HERMAN:**  Your Honor, Ms. Barrios is here on

24   Item V.

25              **MS. BARRIOS:**  Thank you, Mr. Herman.

1          Good morning, Your Honor.  Dawn Barrios for the

2   federal/state committee.  We continue to whittle down the cases

3   before you that have remand motions.  I have some statistics

4   that would be a subset of what Mr. Marvin had reported.  There

5   are 114 cases open with pending remands, which is a reduction

6   from last month.  Of those 114 cases, we have 171 plaintiffs in

7   those.  Again, that would be a subset of Mr. Marvin's.

8          With regard to attempting to help clean up the

9   docket, I have a chart that I provided to both Ms. Wimberly and

10  Mr. Birchfield yesterday that needs attention.  There are six

11  cases, four of which deal with estate issues and two of which

12  deal with derivative claimants.  The case is closed, but one

13  party is still hanging there.  With your permission, I will

14  give that to your law clerk for administrative dismissal.

15  Thank you, Your Honor.

16          **THE COURT:**  Thank you.

17          What about *pro se* claimants?  Anything on *pro se*

18  claimants?

19          **MR. HERMAN:**  I saw Mr. Johnston earlier.

20          **MR. JOHNSTON:**  Your Honor, Bob Johnston, curator for

21  the *pro se* claimants.  As I have reported to the Court in the

22  most recent status conferences, we continue to see the expected

23  decline in the number of calls.  We continue to get calls, but

24  I really think the only thing I have to communicate to the

25  Court is, as has happened over the last several months, things

 1   are going very smoothly.

 2          **THE COURT:**  Good.

 3          **MR. JOHNSTON:**  We assist the individuals, trying to

 4   explain the circumstances of their particular situation, and I

 5   think we generally get through to them.  Thank you.

 6          **THE COURT:**  Thank you very much.

 7                 For those on the phone who may be *pro se*

 8   claimants, please check the Web site.  You'll get

 9   Mr. Johnston's name and telephone number.  If you need to call

10   him, he is available to answer questions that you might have.

11                 Governmental actions, anything?

12          **MR. HERMAN:**  Thank you, Bob.

13                 May it please the Court.  Judge Fallon, with

14   regard to the Louisiana attorney general action, the PSC papers

15   are of record.  I do want to clarify one issue, and that is

16   that the PSC does not request in any way that the Justice

17   Department and its representatives are subject to common

18   benefit in this forum.  I want to make that clear.  Our

19   position as to attorneys general, however, remains the same.

20                 I do want to thank Ms. Barrios, who continues to

21   monitor this matter for the PSC; Mr. Dugan, who tried the

22   Louisiana AG case and who has been involved in this issue for

23   some time; Mr. Seeger for his advice; and Ms. Cabraser for her

24   interests and advices.

25          **THE COURT:**  Pending personal injury cases, we talked

1    about that already.  Ann, anything from you?

2           MS. OLDFATHER:  No, Your Honor.  Mr. Marvin

3    summarized where we were.

4           THE COURT:  Thank you.

5              The fee allocation committee, we talked about

6    that.  Do you need to discuss it?

7           MR. HERMAN:  Your Honor, Ms. Snapka's attorney has

8    requested that he be allowed to address the Court.

9           MR. URQUHART:  Let me introduce myself, Your Honor.

10   My name is Jack Urquhart and I represent Kathryn Snapka.  We

11   have filed as recently as yesterday a motion that addresses the

12   transfer of funds from BrownGreer to Michael Stratton and have

13   raised an issue specific to Ms. Snapka.  It's not my intention

14   to take the Court's time to deal with that except to draw the

15   Court's attention to the fact that we have asked for an

16   expedited submission date because of the circumstances that we

17   have described in our motion.

18          THE COURT:  Any comments on that?

19          MR. HERMAN:  Yes, Your Honor.  We should be able to

20   respond to those papers by next Friday, which I believe would

21   be the 8th.

22          THE COURT:  Is that okay with you?  I can do it on

23   the phone.  I don't want you to fly in or be imposed upon.  My

24   thinking on it is that the way to do it may well be to deposit

25   the funds in the registry of the Court.  I will rule that you

1    don't have possession of them, the Court has possession of
2    them, and we'll deal with that later on.
3                  Let's just cut through that right now.  I will
4    put out that order that allows you to deposit the money into
5    the registry of the Court.  That will indicate that you don't
6    have possession of it and that will take off the slack from the
7    income tax.  It will be in the registry of the Court, and I
8    will just deal with that when it's appropriate.
9              **MR. HERMAN:**  Your Honor, in light of those comments,
10   if counsel agrees, it won't be necessary for us to file papers.
11             **THE COURT:**  I understand the issues and I think you
12   have a valid point.  I don't want you to have to worry about
13   what to do with the money or what to do with the income tax or
14   anything of that sort, so I'll put out an order to that effect.
15             **MR. URQUHART:**  Thank you very much, Your Honor.
16             **MR. HERMAN:**  Your Honor, as a matter of professional
17   courtesy, I don't think Mr. Becnel is here today, Daniel
18   Becnel.  He may have the same problem.  He is represented by
19   other counsel.
20             **THE COURT:**  Communicate what my feeling is to
21   Mr. Becnel.  If he wishes to do the same thing, I will do the
22   same thing for him.  Thank you very much for bringing it to my
23   attention.
24                  Merck's motions, anything on that?
25             **MR. HERMAN:**  Ms. Wimberly is here, Your Honor.

 1          **THE COURT:**  We will do that afterwards.  Anything on
 2    appeals?
 3          **MR. HERMAN:**  No, Your Honor.
 4          **THE COURT:**  I have a meeting with the attorneys
 5    general.  That's next, Jim.
 6                The next status conference is June 1.  I'll meet
 7    with the lead and liaison counsel at 8:30, and I'll have an
 8    open court and telephone availability at 9:00.
 9                Anything that I haven't covered?
10          **MS. WIMBERLY:**  Your Honor, Mr. Davis just requested,
11    because of their meeting that they have immediately after this,
12    if we could just go ahead and take up the motions now.  It will
13    just take a couple minutes.
14          **THE COURT:**  Sure.  That's fine.
15          **MR. HERMAN:**  Your Honor, while that's going on, I
16    would like to speak with Mr. Juneau one moment regarding the AG
17    matter.
18          **THE COURT:**  Okay.
19          **MS. WIMBERLY:**  Your Honor, we have three motions on
20    the docket today, all of which were continued from the status
21    conference and hearing date of February 24.  Let me take them
22    up in the order which will be the easiest to resolve.
23                The first is the motion to dismiss the claims of
24    *pro se* plaintiff Mark Henrichs under Rule 25(a)(1) for failure
25    to substitute a proper party.  That is Record Document 61281.

1              As the Court may recall, at the February 24

2 hearing, we were instructed to attempt to contact the heirs of

3 Mr. Henrichs and to advertise to do that.  We subsequently

4 obtained, with the assistance of the *pro se* curator's office,

5 the addresses of the four heirs and received the Court's

6 permission to contact them at those addresses.

7              On March 9, we sent via FedEx correspondence to

8 each of the four heirs:  Scott Henrichs, who is the brother of

9 the decedent, Mr. Henrichs; John Henrichs, another brother;

10 Margaret Henrichs, the mother of the deceased; and Martha

11 Henrichs Head, the sister of the deceased.

12              We received signed confirmations of delivery to

13 all four of these heirs and we have received nothing further;

14 no contact whatsoever, no indication that anyone desires to

15 substitute and carry on the litigation.  We would ask that the

16 Court grant our motion and dismiss the claims of Mr. Henrichs

17 with prejudice.

18        **THE COURT:**  Anything?

19        **MR. DAVIS:**  Your Honor, Leonard Davis on behalf of

20 the plaintiffs' steering committee.  We reurge our same

21 objection that this not be dismissed with prejudice if there's

22 to be a dismissal.

23        **THE COURT:**  Anything from you, Ann?

24        **MS. OLDFATHER:**  No, Your Honor.

25        **THE COURT:**  As I mentioned, I don't do these matters

 1   willy-nilly.  I do everything I can to notify everybody

 2   concerned.  I think we have done that in this case.  It's over

 3   five years now.  There are people who move on with their lives.

 4   There are people who have changed their mind.  They don't wish

 5   to pursue the case.  If they don't wish to pursue the case,

 6   they have that right.  They have by their silence indicated

 7   they do not wish to pursue the case.  I will grant the motion.

 8   I overrule the opposition of the plaintiffs' committee and

 9   grant the motion with prejudice.

10           **MS. WIMBERLY:**  The second motion that was also

11   continued from February 24 is the motion to dismiss the claims

12   of Pedro Gonzalez with prejudice pursuant to Rule 25(a)(1).

13   That is Record Document 61280.

14           We have received nothing from anyone related to

15   Mr. Gonzalez' estate.  The only contact has come from his

16   counsel, one of whom is Ms. Oldfather, who indicated that they

17   have not been able to get any sort of response from

18   Mr. Gonzalez' heirs and they intend to move to withdraw.

19           Your Honor, while we certainly can understand

20   their desire to withdraw, we don't want to be left hanging,

21   having to try to search and find this plaintiff.  I don't know

22   whether Ms. Oldfather knows whether, in fact, her address is a

23   good address or have they had any problems with deliveries, but

24   we don't want to be on the hook to have to search this

25   plaintiff down whose family is not even communicating with

1    their own counsel.

2         **MS. OLDFATHER:**  I apologize, Your Honor, for having

3    to discuss this now.  I think it's a victim of Dorothy's

4    traveling yesterday because usually we would have sorted this

5    out.

6              Mr. Gonzalez is in a completely different

7    situation than Mr. Henrichs, who is *pro se*, which is why the

8    Court required Merck to make an effort to find his heirs.

9    Mr. Gonzalez was represented by Mr. Feathers and I am

10   co-counsel in that case.  We are in direct contact with his

11   wife.  It's just that she is not responding to our advice that

12   she go ahead and open up the estate.  For that reason, we are

13   going to withdraw as counsel.

14             I had thought we had agreed that this motion

15   would be passed to give us time to file that withdrawal within

16   the next week or two and give the Court time to rule, but maybe

17   I misunderstood our conversation.

18        **MS. WIMBERLY:**  No, we don't have any objection to

19   that, Your Honor, but we would like the matter to be reset for

20   the June 1 conference.

21        **THE COURT:**  Let's do that.  I will pass it until the

22   June conference.

23        **MS. OLDFATHER:**  I have no objection to that.

24        **MS. WIMBERLY:**  But also to require that any motion to

25   withdraw be filed within the next 10 days.

 1              **MS. OLDFATHER:**  Agreed.

 2              **THE COURT:**  That's fine.

 3              **MS. WIMBERLY:**  That brings us to the last motion,

 4    Your Honor, which is the motion relating to Mr. Harrison.  We

 5    did discuss this briefly in chambers.  This is the motion to

 6    dismiss his case for failure to comply with the discovery

 7    requirements of Pretrial Order 28.

 8                   This motion is somewhat unusual in that

 9    Mr. Harrison did, after several hearings and the Court's order,

10    finally provide his case-specific expert report a year and a

11    half or so ago, but what he has flat-out refused to do until

12    this time is to provide his signed authorizations and medical

13    records and list of providers.

14                   We had reached an agreement with Mr. Harrison to

15    continue our motion to this hearing date and he had agreed that

16    he would either comply or provide an opposition by March 14.

17    That date came and he indicated he was going to comply.  We did

18    not receive anything.

19                   I was contacted by Ms. Oldfather Wednesday

20    evening.  She indicated that Mr. Harrison had contacted her and

21    indicated that he was hospitalized due to complications from an

22    infection with a knee replacement, and she asked that we agree

23    to pass the motion for 60 days.

24                   While ordinarily we would agree, what we are

25    asking for, as we indicated in chambers, is signed

1    authorizations.  We have reached an agreement whereby I am

2    going to FedEx those authorizations to Mr. Harrison at his

3    hospital location, where he has agreed to execute them within

4    48 hours.  Included in my FedEx to him, which I am going to

5    have for Saturday delivery, tomorrow, will be a return FedEx

6    envelope and label so that he can send those back to us.  So

7    what we had previously agreed is that we would like to have

8    these executed within -- was it 10 days?

9           **MS. OLDFATHER:**  48 hours.

10          **MS. WIMBERLY:**  He has agreed to do so within 48

11   hours.

12                Your Honor, what was brought to my attention

13   this morning is that while that's going to be great, it's also

14   going to be somewhat worthless because he has never told us who

15   his providers are.  I realize that he may not have access to

16   all of his records at this point in time since he is

17   hospitalized.  We would ask that within 30 days, sooner if

18   possible, that he also be required to provide us with the names

19   of his providers, and that within 30 days after his release

20   from the hospital that he complete the plaintiff profile form

21   that would have that information in more detail so that we can

22   act on those records.

23          **THE COURT:**  Let's take it a step at a time, Ann.

24   Let's get the signed documentation first and coordinate getting

25   this information --

1      **MS. OLDFATHER:**  Yes, Your Honor.

2      **THE COURT:**  -- and we'll see where we are.

3      **MS. OLDFATHER:**  Your Honor, just for Mr. Harrison's

4  benefit, I will repeat what I told the Court in chambers, which

5  is Mr. Harrison's refusal to sign the authorizations was not

6  arbitrary.  As an attorney, I can say it was misinformed.  But

7  at least from his perspective, it was a principled but

8  misinformed stand on what he thought was his need to insist on

9  reciprocal discovery from Merck.  He has assured me that he

10 will comply promptly with all the requirements of the pretrial

11 orders that apply to him.

12      So at this point, Your Honor, if I understand

13 the Court's ruling, we are going to get the authorizations.  I

14 will facilitate the back-and-forth between Ms. Wimberly and

15 Mr. Harrison, to the extent that it's necessary, to get as

16 prompt compliance as we can with the providers and the

17 plaintiff profile form, but I'm not in a position to agree to

18 the time limits because I don't know -- we didn't think about

19 that to discuss it is the problem.

20      **THE COURT:**  I understand.  At this point, let's focus

21 on getting the material.

22      Mr. Harrison, I need you to cooperate.  I'm

23 trying to focus on your case, but I need the information

24 distributed so that I can properly focus on your case.  I am

25 urging and instructing you to comply with that and to provide

1    that information.  If you don't comply, I'm going to entertain

2    a motion to dismiss your case, so you need to know that.

3            **MS. WIMBERLY:**  So, Your Honor, could we reset this

4    for the June 1 hearing?

5            **THE COURT:**  Okay.  I'll reset it.

6            **MR. HERMAN:**  May it please the Court.  Your Honor,

7    Ms. Barrios will be the PSC's designated representative at the

8    attorneys general conference.

9            **THE COURT:**  Anything else on this other than the

10   attorneys general?  Thank you very much.  We will meet in a

11   moment on the attorneys general.  The Court will stand in

12   recess.

13           **THE DEPUTY CLERK:**  Everyone rise.

14           (WHEREUPON the Court was in recess.)

15                              * * *

16                         <u>**CERTIFICATE**</u>

17           I, Toni Doyle Tusa, CCR, FCRR, Official Court

18   Reporter for the United States District Court, Eastern District

19   of Louisiana, do hereby certify that the foregoing is a true

20   and correct transcript, to the best of my ability and

21   understanding, from the record of the proceedings in the

22   above-entitled and numbered matter.

23

24                          <u>s/ Toni Doyle Tusa</u>
                             Toni Doyle Tusa, CCR, FCRR
25                           Official Court Reporter