UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: VIOXX | * | MDL NO. 1657 |
| | * | |
| PRODUCTS LIABILITY | * | |
| LITIGATION | * | SECTION L |
| | * | |
| THIS DOCUMENT RELATES | * | JUDGE FALLON |
| TO ALL CASES | * | MAG. JUDGE KNOWLES |
| | * | SPECIAL MASTER |
| FILER: Robert E. Arceneaux/Margaret Woodward | * | PATRICK A. JUNEAU |
| | * | April 21, 2011 |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**MEMORANDUM IN SUPPORT OF MOTION FOR
<u>PAYMENT OF ACCOUNTANT'S INVOICES</u>**

MAY IT PLEASE THE COURT:

    This memorandum is respectfully submitted by co-lead counsel for Objectors in support of their Motion for Payment of Accountant's Invoices.

    In Pre-Trial Order 6, the Court approved the employment of Phil Garrett, formerly of Wagmen Dazet. The Court retained Mr. Garrett "to provide accounting services" not only to the PSC but also to "the Court in MDL 1657." Mr. Garrett's work has been of benefit to the Court and to the PSC, in that Mr. Garrett calculated the data that was used by the PSC to justify its request for a common benefit fund based upon an 8% assessment, at cost of over $1,142,000.00. *See* Garrett Affidavit, dated August 4, 2010, Exhibit "C" (filed under seal) to Rec. Doc. 21543. Moreover, Mr. Garrett provided the firm-by-firm lodestar calculation that the FAC allegedly used for its allocation,

and also as a "cross check." *See* Exhibit A hereto.

Objectors are entitled to use the services of Mr. Garrett on the same basis as the PSC and FAC. Special Master Juneau gave Objectors full access to Mr. Garrett, and we have been working with him to verify his data and to recreate the firm by firm lodestar calculations. Mr. Garrett has also been working with the Objectors' IT expert, ironing out the differences in the data in order to eliminate any dispute or controversy about an accurate, reliable, and verified, firm by firm lodestar. *See* Exhibits B and C hereto (analysis of issues of Garrett data to be resolved before it can be verified). Moreover, Mr. Garrett has met with the undersigned, and agreed to provide many items that should have been included in the FAC's discovery – a few of which were, but many of which were not. *See* Exhibit D hereto.

Objectors are not asking this Court to pay the expenses of their own IT expert to verify the Garrett data, but fairness would dictate that Mr. Garrett be available to Objectors on the same basis as he is to the PSC and FAC, namely, that his costs be paid out of the common benefit fee fund. This is especially true since the ongoing work that he is doing, and for which invoices are being generated, is to (1) provide documents and discovery that the FAC did not produce, despite its promise that it had produced all information, and (2) to verify his previous charts and submissions for introduction at trial.

Morever, Pre-Trial Order 6 specifically lists accountants' fees as a "shared cost" (see item 1(f) on page 6). "Shared costs are defined as

> costs incurred for the common benefit of the MDL as a whole. No client-related costs can be considered as Shared Costs. All costs of a substantial nature that meet these requirements and fall under the following categories shall be considered Shared Costs and qualify to be submitted and paid directly from the MDL account. All Shared Costs must be approved by Plaintiffs' Liaison Counsel prior to payment.

PTO 6, at 6. As explained above, the work that Mr. Garrett is doing at the request of Objectors is for the common benefit of all claimants by verifying the data and eliminating certain questions that have arisen concerning how the calculations were made, toward the ultimate goal of a reliable firm-by-firm lodestar. A reliable firm-by-firm lodestar benefits all because it must be the basis of fee allocation.

> We review the district court's award of attorneys' fees for abuse of discretion. "To constitute an abuse of discretion, the district court's decision must be either premised on an application of the law that is erroneous, or on an assessment of the evidence that is clearly erroneous."  The record must "clearly indicate[ ] that the district court has utilized the *Johnson* framework as the basis of its analysis, has not proceeded in a summary fashion, and has arrived at an amount that can be said to be just compensation."

*In re High Sulfur Content Gasoline Products Liability Litigation*, NO. 09-30313 ,384 Fed.Appx. 299 (5th Cir., 2010) (*"High Sulphur II"*), citing *In re High Sulfur Content Gasoline Prods. Liab. Litig. ("High Sulfur I"*), 517 F.3d 220, 227 (5th Cir.2008), and *Grigson v. Creative Artists Agency L.L.C.*, 210 F.3d 524, 528 (5th Cir.2000).  In all cases within the Fifth Circuit, including allocation of common fund fees, the starting point of any proper analysis must be a "lodestar" calculation:

> This Circuit utilizes the "lodestar method" to calculate attorneys' fees. Initially, the district court must determine the reasonable number of hours expended on the litigation and the reasonable hourly rate for the participating lawyer. *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir.), *cert. denied*, 516 U.S. 862, 116 S.Ct. 173, 133 L.Ed.2d 113 (1995). The lodestar is then computed by multiplying the number of hours reasonably expended by the reasonable hourly rate. *Id*.

*Forbush v. J.C. Penney Co.*, 98 F.3d 817 (5th Cir. 1996). *See also Cobb v. Miller*, 818 F.2d 1227, 1232 (5th Cir.1987) (emphasis added) ("[W]hile our cases indicate that the district court must utilize the *Johnson* factors in its analysis on the issue of attorney's fees, we are not required to reverse summarily a district court finding which omits discussion of one of the *Johnson* factors **so long as**

**the record clearly indicates that the district court has utilized the *Johnson* framework as the basis of its analysis**, has not proceeded in a summary fashion, and has arrived at an amount that can be said to be just compensation."). While the lodestar calculation is somewhat flexible, it is the fundamental basis of any award of attorneys fees: "The district court may. . . adjust the lodestar upward or downward depending on the respective weights of the twelve [*Johnson*] factors," but **failure to base an award (or allocation) of fees upon a lodestar calculation in the first instance is reversible error**. *See Riley v. City of Jackson, Miss.*, 99 F.3d 757, 760 (5th Cir.1996) ("A review of the district court's decision awarding the Appellants a token amount of attorneys' fees discloses that the court bypassed considering each of the factors enunciated in *Johnson*. Nor did the district court make any attempt to determine a reasonable number of hours or a reasonable hourly fee for each of the Appellants' attorneys involved in this case. Consequently, we find the district court erred in avoiding this analysis.").

For these reasons, Objectors are entitled to direct payment of the invoice received from Mr. Garrett, and any future invoices as the work continues to conclusion. While "shared costs" are normally to be approved by Plaintiff's Liaison Counsel before payment, obviously in this circumstance, that rule is impractical. BrownGreer should be directed to pay any such invoices directly from the common benefit fund.

/s/ Robert E. Arceneaux                    /s/ Margaret E. Woodward

_____     _____

Robert E. Arceneaux, La Bar No. 01199     MARGARET E. WOODWARD, La. Bar
ROBERT E. ARCENEAUX LLC            No.13677
47 Beverly Garden Drive                     3701 Canal Street, Suite C
Metairie, LA 70001                           New Orleans, Louisiana  70119
(504) 833-7533 office                        (504) 301-4333 office
(504) 833-7612 fax                           (504) 301-4365 fax
rea7001@cox.net                              mewno@aol.com

CO-LEAD COUNSEL FOR OBJECTORS IDENTIFIED IN FEB. 8 ORDER

-5-

## CERTIFICATE OF SERVICE

      I hereby certify that the above and foregoing pleading has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail, and by upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre Trial Order No.8, on this date, April 21, 2011

                                        /s/ Robert Arceneaux

_____

**Subject:** Lodestar report in 7-2010  
**From:** Philip Garrett <pgarrett@garrettco.com>  
**Date:** Mon, 11 Apr 2011 17:04:30 -0700 (PDT)  
**To:** Robert Arcenaux <rea7001@cox.net>  
**CC:** Russ Herman <RHERMAN@hhkc.com>, "Thomas R. Juneau, Sr." <TRJ@juneaudavid.com>, "Patrick A. Juneau" <PAJ@juneaudavid.com>

Robert, per our discussion I was sure I would have printed and distributed the lodestar report with values in 7-2010. I found in my email where Christin McGhee under my direction actually sent it out. Attached is the email and the spreadsheet that was attached.

As you can see from the email the report went to; Lenny Davis,Arnold Levin, and Sandra Dugan who is with Mr. Levin's firm. They were the people working with me and fee alloc comm.

If you wish I will look for the 2009 report as well but again I am sure it was sent out to the parties I was working with at the time.

Thanks


Philip A. Garrett, CPA  
117 Fairgrounds Blvd

Bush, La 70431

office - 985-746-9165  
Cell - 985-635-1500  
pgarrett@garrettco.com

| 7-30-2010 email from Christin to PG,LD,SD,AL.pdf | **Content-Type:** application/pdf |
| --- | --- |
| | **Content-Encoding:** base64 |

VioxxMDLBillingRatesasofJuly302010 sent on 7-31-2010.xlsx

| **VioxxMDLBillingRatesasofJuly302010 sent on 7-31-2010.xlsx** | **Content-Type:** | application/vnd.openxmlformats-officedocument.spreadsheetml.sheet |
| --- | --- | --- |
| | **Content-Encoding:** base64 | |

EXHIBIT A

**EXPLANATION OF ISSUE**
-----

**OBJECTIVE**
we are recreating the pivot chart provided to the court on 7/31/2010 using the data we have acquired from the access database and web database.

**PROBLEM**
The court report was generated using some subset of the entries we have in the access database.  The assumption is that some entries were approved at the time the court report was generated and others were not.  In addition some entries appear to have been corrected after the court report was generated.

**ANALYSIS**
We looked into backing into a subset of entries that sum to the aggregate total specified in the court report but found many solutions or no solution at all.  Where we found no solution, this leads us to believe some entries were corrected after the court report was generated and its difficult or impossible for us to back into the original values.

**WHAT IS NEEDED**
We need visibility into the exact entries used to generate the court report.  If this is not possible, visibility into when each entry was approved or modified and what the values were before modification.  Enough such that we can reproduce and verify the court report with our database with certainty.


**Term Definitions**
   **Access Database -** any data stored in the access database file [vioxx_time.accdb].  this database contains hours billed on a monthly reporting period.

   **Web Database -** any data stored on the [www.garrettco-ccms.com/vioxx] website.  this database contains summary entries of the access database under the reporting date 7/1/2009 (see reporting date definition bellow).  the effective switch from access to the web database occurred on and including reporting entries dated 8/1/2009

   **Court Report** - a pivot chart summarizing the billing hours summarized by FIRM and EMPLOYEE as of 7/31/2010.  This report was provided in the [VioxxMDLBillingRatesasofJuly302010 sent on 7-31-2010.xlsx] file.

   **Posting date -** date an entry was placed in the web or access database.
      **Example**: a lawyer worked 300 hours from 7/1/2009 to 7/31/2009 and did not report their hours until 9/8/2009.  in access no posting date would be recorded, and on the web the posting date would be 9/8/2009.

   **Reporting date -** date representing the billing time period.  both the web and access database used monthly time periods for reporting hours.
      **Example**: a lawyer worked 300 hours from 7/1/2009 to 7/31/2009 and did not report their hours until 9/8/2009.  an entry from the access database would have a reporting date of 7/31/2009, and an entry from the web would have a reporting date of 7/1/2009.  The web entry differs from access as the dates in access were explicitly set to the end of the billing time period where as the web database only stores the month and year, when importing this data into access its automatically converted into a date and the default in access is to use the first of the month for the missing day.

```
                                                            EXHIBIT B
```

**Subject:** Re: Today's conference call -- Tuesday April 19
**From:** Philip Garrett <pgarrett@garrettco.com>
**Date:** Wed, 20 Apr 2011 14:08:37 -0700 (PDT)
**To:** rea7001@cox.net, Joey Markowitz <joey.markowitz@gmail.com>
**CC:** Russ Herman <RHERMAN@hhkc.com>, "Patrick A. Juneau" <PAJ@juneaudavid.com>, "Thomas R. Juneau, Sr." <TRJ@juneaudavid.com>

Attached are 2 excel files. The "worksheet for Robert Arceneaux" will tie the submissions to the 7-2009 (557,586.30 hrs) and 7-2010 (562,943.55 hours)reports we discussed. Joey, it looks like the major part of the hours were put in on 2-4-2010 for 7-2009 but 7 were put in a little later 5 within the next month. 2 of those 5 were HHKC with approx 28,016.30 hours were put in on 2-4-2010 but not posted till the next month probably a programming question, but this could help you sort out the reports you are working on.

The second worksheet ties the hours for the 7-31-2010 report to the web hourly report.

Just as an aside if you are just trying to recreate a report for your clients to analyze with the billing rates you may want to consider using this second spreadsheets with billing rates added. Also the lodestar report that did not tie to the court's report by approx. $250.00 was due to a minor change in billing rates for one of Daniel Becnel's people.

Any questions please call.


Philip A. Garrett, CPA
117 Fairgrounds Blvd

Bush, La 70431

office - 985-746-9165
Cell - 985-635-1500
pgarrett@garrettco.com

---

**From:** robert <rea7001@cox.net>
**To:** Philip Garrett <pgarrett@garrettco.com>; Joey Markowitz <joey.markowitz@gmail.com>
**Sent:** Tue, April 19, 2011 3:33:44 PM
**Subject:** Today's conference call -- Tuesday April 19

```
Thank you both for trying to work through this.  It sounds like some progress is being made, however, and we
may end up with our own worksheet that Mr. Garrett will be able to verify as an accurate reflection of his
data, only presented in a different format.

Once Joey receives the new worksheet, I will work with him to see how close we are, and if we need Mr.
Garrett's, or ultimately, the programmers' assistance, we hopefully can conclude the analytical portion of
this project.

Again, thank you both.

Robert Arceneaux
```

| Worksheets for Robert Arceneaux.xlsx | **Content-Type:** application/vnd.openxmlformats-officedocument.spreadsheetml.sheet<br>**Content-Encoding:** base64 |
|---|---|

~~Web time report that ties to Ct report.xls~~

| Web time report that ties to Ct report.xls | **Content-Type:** application/vnd.ms-excel<br>**Content-Encoding:** base64 |
|---|---|

EXHIBIT C



Clifton W. Newlin
Robert D. Watkins
Edward G. Berbuesse, Jr.
Jon S. Folse

**WEGMANN DAZET & COMPANY**
A PROFESSIONAL CORPORATION
CERTIFIED PUBLIC ACCOUNTANTS

Mark D. Bohnet

Lisa D. Englade
Kerney F. Craft, Jr.

Philip A. Garrett

March 24, 2011

Mr. Robert E. Arceneaux, Esq.
Robert E. Arceneaux LLC
47 Beverly Garden Drive
Metairie, LA 70001

Re: Response to Arceneaux Letter dated March 17, 2011

Mr. Arceneaux:

In response to your letter dated March 17, 2011, please see my comments below addressing the eight items you requested:

1. *Vioxx data*: As you stated in your letter dated March 17, 2011, the Microsoft Access database, as well as username and password for the CCMS (Case Cost Management System), was provided to you at our meeting on Friday, March 11, 2011.

2. *Copies of all letters disallowing time*: Many of the submissions that either had no backup or had incorrect time logs were deleted as they were either corrected and resubmitted or withdrawn. Copies of letters that were sent disallowing time are in the raw data which was previously provided to you electronically on a DVD.

3. *Summary of time disallowed and not reported to Judge Fallon*: Time that was rejected and ultimately not resubmitted totals 4,549.65 hours. Again, I would reiterate that time that was objected to and later corrected or withdrawn were deleted from the rejected time reports. Please see the attached data.

4. *Copies of actual Loadstar rates*: Please see the attached 237 pages of data that was submitted. There is a possibility that some of the data may have been transmitted to us by email but may not have been copied into this file. We believe that this is as much information that is available.

5. *Common benefit trials*: We are unable to locate a list of the common benefit trials, as we have not relied on that document in quite some time. We will continue to search for the listing and will provide to you if and when we find it.

`EXHIBIT D`

WEGMANN DAZET & COMPANY | A PROFESSIONAL CORPORATION | CERTIFIED PUBLIC ACCOUNTANTS
MEMBERS: AICPA PRIVATE COMPANIES PRACTICE SECTION | AN INDEPENDENT MEMBER OF THE BDO SEIDMAN ALLIANCE
NEW ORLEANS OFFICE | 111 VETERANS BLVD. | SUITE 800 | METAIRIE | LA 70005
NORTHSHORE OFFICE | 109 NEW CAMELLIA BLVD. | SUITE 106 | COVINGTON | LA 70433
(504) 837-8844 | FAX (504) 837-0856 | WWW.WDCO.BIZ

Mr. Robert E. Arceneaux, Esq.
Robert E. Arceneaux LLC
March 24, 2011
Page 2

6. *Copies of draft affidavits:* Any drafts of affidavits would have been overwritten by subsequent changes. I do not have any of the original drafts before the issuance of the final affidavits.

7. *Copies of Timesheets per PTO 6C:* That information would be with the actual submissions, which is contained electronically on the DVD that was provided to you previously.

8. *Averaged hourly rate:* In the Court Order, the Court recited the total hours, total fees and the averaged hourly rate, by dividing the value by the hours. The below calculation reconstructs that average.

$$(\$249,546,751.20 / 562,943.55 \text{ hours} = \$443.29 \text{ per hour})$$

If there are any questions, please do not hesitate to give me a call.

Sincerely,

WEGMANN DAZET & COMPANY

Philip A. Garrett, CPA