UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: VIOXX | ) | MDL NO. 1657 |
| | ) | |
| PRODUCTS LIABILITY | ) | SECTION L |
| LITIGATION | ) | |
| | ) | JUDGE FALLON |
| THIS DOCUMENT RELATES | ) | MAG. JUDGE KNOWLES |
| TO ALL CASES | ) | SPECIAL MASTER |
| | ) | PATRICK A. JUNEAU |
| FILER:  JACK E. URQUHART | ) | |
| | ) | April 21, 2011 |

### KATHRYN SNAPKA'S  ADDITIONAL OBJECTIONS TO THE REPORT AND SCHEDULING ORDER OF SPECIAL MASTER

MAY IT PLEASE THE COURT:

Kathryn Snapka files the following additional objections to the report and scheduling order of Special Master dated March 31, 2008 (Master's Report 1), Rec. Doc. No. 62735, and requests review of that report by this Court.

An Appeal of Special Master's Report and Scheduling Order that requested an expedited ruling has been filed on behalf of all Objectors, including Kathryn Snapka.  *See* Rec. Doc. Nos. 62801 and Rec. Doc. 62819.  Kathryn Snapka waives no rights under that appeal, but does raise these additional objections on her own behalf as authorized by the Court in the order appointing the Special Master.  Rec. Doc. No. 62606 at p.3.

### UNSUPPORTED FINDING THAT FAC MEMBERS WERE IN A "UNIQUE" POSITION TO MAKE ALLOCATION RECOMMENDATIONS

Kathryn Snapka objects to this finding of the Special Master: "The members of the FAC had a long history with this litigation and were obviously in a unique position to provide recommendations to the Court." Master's Report 1 at 2.  Evidence has not been offered to establish or support a finding that "members of FAC" had "unique" qualifications as compared

with all other fee applicants to recommend who should get what portion of the common benefit attorneys fees.  This finding, however, erroneously gives the FAC recommendation a legal presumption of validity to which it is not entitled.  The FAC recommendation must be not embraced.  It must be scrutinized.

All FAC members had an undeniable and unavoidable conflict of interest.  In fact, this inherent conflict is "uniquely" acute in this case, because of provisions in the secretly negotiated MSA that directly benefited the majority of the FAC members.  Specifically, this MSA expressly set a size of the common benefit assessment and provided that the plaintiff lawyers who negotiated the MSA in secret would personally comprise 8 of the 10 FAC members.  This "unique" conflict of interest—a conflict resulting from their own secret negotiations—undermines any presumption, much a less finding, that FAC members were uniquely qualified to make fair allocation recommendations that were not directly or indirectly influenced by their own interests in the millions of dollars set aside for common benefit attorney fees.  The facts of this case should result in heightened scrutiny of the FAC recommendation; not deference.

The harm resulting from deference to FAC opinions, rather than heightened scrutiny of those opinions, is made clear in the FAC "justification" for its recommendation of a remarkably small award to Kathryn Snapka despite the fact she was a lead counsel in one of only five bellwether trials that resulted in a plaintiff verdict.  *See* FAC's Reply to the Objectors, March 2, 2011. Rec. Doc. No. 62656 at pages 45-49.  FAC provides no admissible evidence to support its recommendation or its "justification" of that recommendation.  Instead, it makes conclusory statements that are inadmissible and rife with factual inaccuracies.

Specifically, FAC offers the following unsupported and unsupportable conclusory assertions as its foundation for its Kathryn Snapka recommendation:

> The remand and trial of *Garza* case, which resulted in one of the very few plaintiff's verdicts in this litigation, did not inure to the common benefit.

"Since the inception of the MDL, when she was denied a position on the Plaintiffs' Steering Committee, Ms. Snapka's mode of operation has been to work against the common effort, not for it." 46

"Throughout the course of the litigation, Ms. Snapka repeatedly advised the Plaintiffs' Liaison Counsel that she did not want to work cooperatively with the PSC." 46

 "When Merck selected Ms. Snapka's case as one of two cases in which to seek to obtain a statute of limitations ruling with broad application, Ms. Snapka refused to cooperate with the PSC, but rather insisted on presenting the matter herself and in her own way." 46

"Once the global settlement was reached, Ms. Snapka sought to sabotage the entire effort by spearheading an empty ethics challenge. She helped create a significant stir, despite the fact that the agreement had been approved by not one but three prominent experts, who focus on ethical matters related to settlements in complex, mass tort litigation; three distinguished state court judges; and this Court. However, Ms. Snapka did not allow the facts to stand in the way of her protestations. " 47

"Likewise, when the PLC filed its motion seeking an 8% common benefit assessment, Ms. Snapka led the way for objectors claiming that the fund from which she now seeks $12 million dollars should be less than one-third its current size." 47

"At every step of this litigation, Ms. Snapka has objected vociferously in an effort to improve her own lot. Such efforts should not be rewarded, particularly at the expense of firms who strove mightily to work cooperatively for the common good." 47

"Perhaps the clearest demonstration of Ms. Snapka's mode of operation is on display now as part of the common benefit fee objection process. Feigning confusion and alarm, Ms. Snapka has accused the FAC of malfeasance. Again, Ms. Snapka is not allowing the facts, or her lack of knowledge, to temper her accusations or criticisms. A close look at her allegations is illuminating…Rather, on February 17, 2011, after the fee allocation Committee had published its Final Recommendation with which Ms. Snapka is dissatisfied, Ms. Snapka presents the matter for the first time and does so in open court." 47-48

"The Fee allocation Committee's decision was based upon the fact that the Garza case did not contribute to the Common Benefit Fund and that the only common  applicants, except Becnel, contributed to the common benefit fund at 6.5%, Snapka contributed at only 4%." 48-49

These conclusory assertions are not supported with admissible evidence.  They rest on FAC's

bare say so.  If any of these conclusory attacks on Kathryn Snapka were truly justifiable, FAC is

required to support them with admissible evidence.   FAC can not base its recommendation on

mere unsubstantiated opinion.

Nor did FAC even bother to address many of Kathryn Snapka's common benefit activities, including that she was a pioneer of this litigation, from 2003 until 2010 she devoted much of her practice to Vioxx at the expense of other opportunities, she was a significant participant in the defeat of the defense MDL preemptions motion, she made substantial contributions to making the MSA successful—particularly noteworthy was her contribution to the Extraordinary Injury Fund, and she consistently attended and participated in MDL status conferences.

<u>**UNSUPPORTED LIMITATIONS ON DISCOVERY AND WITNESSES**</u>

Kathryn Snapka objects to the limitations on discovery ordered in Master's Report 1. The Special Master has found that no Objector discovery is permissible with the exception of a single deposition of a FAC member of FAC's choosing. Master's Report 1 at 8. Even that one deposition will be time limited, and only co-lead counsel can question this one witness. Moreover, even that limited discovery will not occur until a week before the "hearing."

This limited discovery prevents the development of a record upon which the Special Master or the Court can make an independent allocation determination. The discovery limitation deprives Kathryn Snapka of her right to use appropriate discovery to insist on the evidence, if any, that supports the generalities, conclusory statements, and selectively produced documents that are the only foundation for the FAC recommendations. This discovery right is so fundamental that its denial violates constitutional due process. Without the ability to insist through reasonable discovery that FAC disclose the information it has, if any, to support its conclusory accusations against Kathryn Snapka, "transparency" is a legally meaningless term. The unavoidable result is a record dominated by information selected by FAC that has not been exposed to reasonable discovery. By way of example only, how is it possible that *Garza,* which was repeatedly applauded by FAC members, and originally treated by FAC as inuring to the

common benefit, suddenly became completely worthless in the final FAC recommendation? The limitation on discovery arbitrarily truncates the record in an important legal proceeding involving hundreds of millions of dollars.

## UNSUPPORTED FINDING THAT FAC ALLOCATION PROCESS WAS TRANSPARENT

Kathryn Snapka objects to this finding of the Special Master: "With regard to the requirement that such proceedings not be handled in a summary fashion, the procedural history of this case should set the standard for transparency and due process.  Frankly, it is difficult to imagine how more transparency on [sic] due process could be afforded."  Master's Report 1 at 7.  Once again, FAC's "process" for reaching its allocation for Kathryn Snapka is anything but transparent.  She was recommended only $75,000 even though she was a lead trial lawyer in a successfully tried case and made numerous other valuable contributions to the common benefit.  The "process" by which this is justified is hidden, but for limited information FAC chose to make available.  On its face, the FAC explanation for Kathryn Snapka's award reveals the absence of transparency in the "process."  FAC invokes generalities, conclusions and opinions. Its actual methods remain secret.

## UNSUPPORTED FINDING THAT LODESTAR IS THE "ESSENCE" OF FAILINGS IN THE FAC ALLOCATION PROCESS

Kathryn Snapka objects to this finding of the Special Master: "In essence, the objectors are contending that a lodestar analysis was not made by FAC in the allocation process." Master's Report 1 at p.2.  Kathryn Snapka objects that this mischaracterizes the multiple errors in the FAC allocation recommendation and the methodology, or lack of methodology, used by FAC in arriving at that recommendation.  FAC's misuse of lodestar is an error, but the finding that this error is the  "essence" of Kathryn Snapka' opposition is incorrect.

## UNSUPPORTED FINDING THAT *JOHNSON* FACTORS WERE PROPERLY CONSIDERED

Objection to this finding of the Special Master: "Implicit in the evaluation of the categories established by the Point system as it applies to individual applicants is a consideration of the *Johnson* factors.  The designated categories cover the full gambit of effort, risk, and skill that is required in complex litigation and an evaluation of each of these categories by their very definition require consideration of the *Johnson* factors."  Master's Report 1 at 6.  No evidence whatever supports this finding.  The finding in fact is in apparent conflict with FAC's position. Rather than argue that the point grid is its *Johnson* factor analysis, FAC takes the position that that the mysterious "multiplier" represents the *Johnson* factor analysis.  Rec. Doc. No. 62656 at page 49.  Factually, FAC has completely failed to coherently express and prove how, if at all, it used the *Johnson* factors in arriving at its recommendations.

## UNSUPPORTABLE FINDING THAT THE FEE ALLOCATION PROCESS COMPLIED WITH DUE PROCESS REQUIREMENTS

Kathryn Snapka objects to the Special Master's finding that: "It is my finding that the fee allocation process was proper and afforded full due process." Master's Report 1 at 6.  Kathryn Snapka objects that this finding is not established by the law or the facts.  At the very least, it is a premature finding on which discovery should be allowed and a full record established.  A process that accepts without challenge the validity of the FAC allocation as a starting point is fundamentally flawed and violates Due Process as protected by the United States Constitution. The limitations on discovery and "trial" build upon and compound the due process violations.

**UNSUPPORTED FINDING THAT A PROPER ACCOUNTING OF FUND TRANSFERS INVOLVING THE COMMON BENEFIT FUND CAN BE DEFERRED BEFORE THE SPECIAL MASTER CAN CONDUCT HEARINGS OR MAKE ALLOCATION RECOMMENDATIONS**

Objection to the finding of the Special Master: "An issue has been raised as to the deduction from the $315,250,000. This issue is not before the Special Master and is to be considered by the Court." The Court correctly asserts its jurisdiction over matters relating to the handling of Common Benefit Funds. However, an accounting for these funds in general and the transfer of funds to Mr. Stratton's firm in particular, must be completed before the Special Master limits discovery, conducts hearings or makes allocation recommendations. FAC has alleged, without evidence, that Kathryn Snapka paid an assessment of only 4%. This was specifically listed as a factor that "justified" the FAC recommendation for Kathryn Snapka. However, FAC is surely aware that this argument is incorrect. As matters now stand, Kathryn Snapka has had 8% held back from her fees—a greater percentage, not a lesser percentage—than FAC members.

**INADEQUATE NOTICE OF PRE-HEARING AND HEARING DEADLINES**

Kathryn Snapka objects to the finding that "the only witnesses needed and allowed to testify at the hearing will be the objectors and the designated member of the PAC [sic]. The nature and purpose of the hearing is not set out and therefore the participants have insufficient notice and information with which to prepare for this "hearing." For example, what issue[s] are being addressed at the hearing, who has the burden of proof, and what basic procedures will be followed? Kathryn Snapka, as has been the case throughout this allocation process, can prepare only by guessing at the nature and purpose of the proceeding.

Kathryn Snapka objects to the "Pre-Hearing Deadlines" set by the Special Master. The same objections made to the hearing deadlines apply to these deadlines. This is emphasized by

an exhibit list requirement.  The nature of the hearing has not been defined.  The only deposition permitted by the discovery limitations will take place after the current exhibit list deadline. Requiring an exhibit list under these circumstances, does not comport with the most basic requirements of due process.  Procedural and substantive constitutional due process is clearly violated when, as here, the issues being "tried" are not even identified.

## CONCLUSION

For the reasons set out above and for the reasons set out in the Objectors' Appeal, Kathryn Snapka asks that this Court immediately suspend the Special Master's Scheduling order, and revise that order consistent with the stated objections and as required by the demands of governing case law and constitutional due process.

Respectfully submitted,

BEIRNE, MAYNARD & PARSONS, L.L.P.


    /s/ Jack E. Urquhart
Jack E. Urquhart
State Bar No. 20415600
1300 Post Oak Blvd., Suite 2400
Houston, Texas 77056
Telephone:  (713) 871-6760
Facsimile:   (713) 960-1527

**ATTORNEYS FOR PLAINTIFF
KATHRYN SNAPKA**

## CERTIFICATE OF SERVICE

I hereby certify that the above document has been served upon all parties by electronically uploading it to LexisNexis File & Serve Advanced on April 21, 2011.


   /s/ Jack E. Urquhart
Jack E. Urquhart