UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: VIOXX | : | MDL Docket No. 1657 |
| PRODUCTS LIABILITY LITIGATION | : | |
| | : | SECTION L |
| | : | |
| This document relates to ALL ACTIONS | : | JUDGE FALLON |
| | : | MAG. JUDGE KNOWLES |
| | : | |

# FEE ALLOCATION COMMITTEE'S RESPONSE
# IN OPPOSITION TO THE MOTION TO PRECLUDE
# FAC MEMBERS FROM SERVING AS LITIGATION COUNSEL

## I.   INTRODUCTION

The Fee Allocation Committee ("FAC") hereby responds to the motion of the fragmented Objectors represented by Co-Lead Counsel for Objectors Identified in February 8, 2011 Order ("Objectors") to preclude FAC members from serving as litigation counsel [Rec. Doc. No. 62803].[1]  The Objectors contend that all members of the FAC must be disqualified as litigation counsel based upon a misguided application of the Louisiana Rules of Professional Conduct to the role that FAC members were obliged to fulfill pursuant to Pre-Trial Order Nos. 32 and 6(D). Because the Objectors incorrectly understand the advisory role that FAC members played in making an allocation recommendation, and mistakenly assume themselves to be clients of the FAC, they allege the existence of attorney-client conflicts that are wholly manufactured and imaginary, not real and actual conflicts that would warrant serious consideration of a well founded motion to disqualify.

---

[1] At the onset of their Memorandum, Co-Lead Counsel for the Objectors acknowledge that a conflict exists amongst its ranks as Morelli Ratner, Anapol Schwartz, *et al.*, and Motley Rice refused to join in the instant motion.

As a consequence, the instant motion lacks merit. It should be denied.

## II.  FACTUAL BACKGROUND

After years of intense litigation against Merck over its dangerous pain-reliever, Vioxx, members of the Negotiating Plaintiffs Counsel (NPC) – led by Plaintiffs' Liaison Counsel Russ Herman and Co-Lead Counsel Andy Birchfield and Christopher Seeger[2] – were able to reach a $4.85 Billion settlement for their clients and all others that took the drug. Although the announcement of the Settlement occurred on November 9, 2007, it heralded the beginning of a burgeoning post-settlement phase of the litigation that involved enormous efforts on the part of NPC, PSC and other counsel to finalize the settlement, administer the claims process, and manage the litigation for those clients whose claims involving their use or ingestion of Vioxx are still ongoing within MDL No 1657.

Ancillary to this ongoing litigation, on November 20, 2007, this Court appointed the FAC with Russ Herman as Chairman and Andy D. Birchfield as Secretary to oversee the matter of attorneys' fees arising from the settlement with Merck . *See* PTO No. 32. The FAC was charged with the responsibility of "recommending to the Court the allocation to be made by the Court of awards of attorneys' fees from the Settlement Fee and Cost Account." *Id*. at 1. Therein, the Court expressed that it may issue subsequent orders governing the procedures that would direct the function of the FAC.

Thereafter, on September 8, 2008, the Court issued PTO No. 6(D), which provided the FAC with fee allocation guidelines to consider when evaluating the contributions of each

---

[2]*See* Pretrial Order Nos. 2 and 6 (appointing Liaison counsel and the Plaintiffs' Steering Committee to act as litigation counsel on behalf of all plaintiffs in the litigation).

common benefit attorney to the outcome of the litigation. That Order established, *inter alia*, a process for any attorney seeking an allocation from any common benefit award to submit an affidavit to the FAC; directed the FAC to conduct meetings with participating attorneys to allow them to appear and present the reasons, grounds and explanations for their entitlement to common benefit fees; required the FAC to make a recommendation with notice to all participating attorneys; and set a time for participating attorneys to object to the FAC's recommendation. In ordering the FAC to engage in these activities, at no time, did the Court engage the members of the FAC to act as judges, arbitrators, mediators or other third-party neutrals, nor did it require the FAC to be retained as counsel for those participating lawyers. Rather, the FAC members were recognized to be simply "a committee of plaintiffs' attorneys," responsible for making a recommendation to the Court.   PTO No. 32 at 1.[3]

Now, having made an allocation recommendation with which the Objectors disagree, the FAC members are impugned by the instant motion seeking their disqualification from the entirety of the litigation. As demonstrated below, the Objectors' contrived basis for seeking the entire FAC's disqualification is specious. FAC members were never acting in a governmental capacity when making their allocation recommendation. Nor were any of the objectors in an attorney-client relationship with any member of the FAC in the committee's capacity of making an allocation recommendation to the Court. Thus, the ethical constraints that the Objectors find disqualifying are inapposite.

---

[3] *See also* PTO No. 6(D) at 1-2 ("The Settlement Agreement also provides that the Allocation Committee shall evaluate common benefit counsel's contributions, using objective measures and the committee's subjective understanding of the relevant contributions of counsel toward generating the Settlement Fund in accordance with established fee jurisprudence, and make a Recommendation to the Court for consideration in consultation with Judges Chaney, Higbee, and Wilson.").

### III.     ARGUMENT

#### A.     OBJECTORS HAVE A HIGH EVIDENTIARY BURDEN TO JUSTIFY DISQUALIFICATION OF THE FAC

Motions to disqualify are considered "drastic" measures since they run contrary to the rights of litigants to freely choose their counsel.  *See Shaffer v. Farm Fresh, Inc.*, 966 F.2d 142, 146 (4th Cir. 1992).   "Motions for disqualification should be reviewed carefully to ensure that they are not being used merely to harass, and disqualification should be ordered only when the motion demonstrates a reasonable likelihood of a prohibited conflict."  Herr, *Annotated Manual for Complex Litigation (Fourth)* §10.23 at 47 (West 2010)[hereafter "AMCL"].  The Objectors recognize the Fifth Circuit's finding that motions to disqualify may be employed as "procedural weapons" and advanced for purely tactical purposes.  Objectors' Memorandum at 3, *citing, In re American Airlines, Inc.*, 972 F.2d 605, 611 (5th Cir. 1992), *cert. denied*, 507 U.S. 912 (1993).  In such cases, where "a disqualification motion is filed in order to harass, delay, or deprive a party of chosen counsel, sanctions may be appropriate under 28 U.S.C. §1927 or Federal Rule of Civil Procedure 11."  AMCL at 48.

The Court should further be mindful of practical considerations and approach disqualification motions on a case-by-case basis so as to avoid mechanical and didactic application of the Rules of Professional Conduct.   This is especially the case when attempting to apply the Rules of Professional Conduct in the class action or the quasi-class action context applicable here.  *See In re Vioxx Products Liability Litigation*, 574 F.Supp.2d 606, 612 (E.D.La. 2008)("the Court finds that the Vioxx global settlement may properly be analyzed as occurring in a quasi-class action").  As Judge Adams noted in his seminal concurrence in *In re Corn*

4

*Derivatives Antitrust Litigation*, 758 F.2d 157, 163 (3d Cir. 1984), "courts cannot mechanically transpose to class actions the rule developed in the traditional lawyer-client setting context." Continuing this line of reasoning, Judge Adams found:

> Class action litigation frequently promotes and protects the legal interests of those whose rights might not be protected at all without the class action device.  Any approach resembling a per se disqualification of an attorney who represents multiple parties in a class, or the entire class, when any member disagrees, might well undermine the attractiveness and utility of the class action device by discouraging multiple representation.

*Id.* at 164.  As a result, the concurrence suggested that a "balancing process" should be undertaken.

Indeed, following the reasoning of Judge Adams, Chief Judge Becker in *Lazy Oil Co. v. Witco Corp.*, 166 F.3d 581 (3d Cir. 1999), permitted class counsel to continue to pursue a class settlement despite the objection of their client, the class representative plaintiff.  Pertinent to the present motion, the court noted that strict application of the traditional rules on attorney-client relations provides too much "leverage" to those seeking disqualification for strategic reasons:

> If, by applying the usual rules on attorney-client relations, class counsel could easily be disqualified in these cases, not only would the objectors enjoy great "leverage," but many fair and reasonable settlements would be undermined by the need to find substitute counsel after months or even years of fruitful settlement negotiations.  "Moreover, the conflict rules do not appear to be drafted with class action procedures in mind and may be at odds with the policies underlying the class action rules."  Bruce A. Green, *Conflicts of Interest in Litigation: The Judicial Role,* 65 Fordham L.Rev. 71, 127 (1996).

Id. at 589.  The court went on to hold that class counsel were not disqualified from multiple representation of other individual representative plaintiffs and the class even when their class

5

representative plaintiff objects to the class settlement, "as long as the interest of the class in continued representation by experienced counsel is not outweighed by the actual prejudice to the objectors of being opposed by their former counsel." *Id*. at 590.  This reasoning is even more apt in this MDL context where FAC members have been designated by the Court solely to facilitate a recommendation of fee allocation amongst disparate, common benefit lawyers, a situation pregnant with the potential for disagreements, disputes and objections.

Accepting the high standard of proof applicable to motions to disqualify, it is plain that movants have failed to satisfy their burden of passing the "substantial relationship" test that is applicable when prior relationships are the asserted basis for having counsel disqualified, as is the case here. *American Airlines*, 972 F.2d at 614.

### B. OBJECTORS FAIL THE "SUBSTANTIAL RELATIONSHIP" TEST BECAUSE THE FAC NEVER REPRESENTED THEM IN AN ATTORNEY-CLIENT RELATIONSHIP

In *American Airlines*, the Fifth Circuit summarized the "substantial relationship" test applicable to challenges, like that of the Objectors, that are based upon former representation, as follows:

> A party seeking to disqualify opposing counsel on the ground of a former representation must establish two elements: 1) an actual attorney-client relationship between the moving party and the attorney he seeks to disqualify and 2) a substantial relationship between the subject matter of the former and present representations.

*American Airlines*,  972 F.2d at 614.  This two-part test requires that an actual attorney-client relationship must have existed between the movant and the targeted counsel, and that a substantial relationship exists between the past and present representations.    Objectors have not,

nor can they, satisfy either prong.

First, the Objectors can not and do not assert in their motion that any of the FAC members undertook to represent any of attorneys seeking an allocation from the common benefit award in the capacity of an attorney-client relationship. This is an essential element of the applicable test. It does not exist. The Objectors only advert to the transcript of the February 17, 2011 Hearing and correspondence referenced in the Court's Order of February 16, 2011 to suggest that the FAC acted in a <u>representative</u> capacity. Neither, however, can be construed as directing the establishment of an attorney-client relationship between the FAC and objectors. To the contrary, at the April 11, 2011 Hearing, the Court acknowledged that it was merely looking to the FAC and Mr. Herman to "designate the individuals [to act as Liaison counsel] so that we can deal with that." Hearing Transcript of February 17, 2011 at 18 (attached as Exhibit A to Objectors' Motion). Never was the notion of an attorney-client relationship demonstrated by the Objectors.

Having failed to establish the first prong of the substantial representation test, no further analysis is required. But if the Court were to evaluate the second prong of the substantial representation test, it too has not been met.

To meet the second prong of the test, Objectors contend that the substantial relationship is met by the members of the FAC acting as "quasi-judicial officers" and that they therefore ran afoul of Louisiana Rule of Professional Conduct 1.12 ("LARPC").[4] This assertion stretches

---

[4] The FAC acknowledges that the Eastern District of Louisiana Rules for Lawyer Disciplinary Enforcement, Rule 1.2, adopts the Louisiana Rules of Professional Conduct. Even though the LARPC are adopted as the ethical standards, "whether and how these rules are to be applied are questions of federal law." *American Airlines*, 972 F.2d at 610.

7

credulity.

    LARPC Rule 1.12 states:

> [A] lawyer shall not represent anyone in connection with a matter in which the lawyer participated personally and substantially as a judge or other adjudicative officer or law clerk to such a person or as an arbitrator, mediator or other third-party neutral, unless all parties to the proceeding give informed consent, confirmed in writing.

LARPC Rule 1.12 addresses potential conflicts arising from "lawyers mov[ing] back and forth between private practice and government service," the proverbial revolving door. *See* Maraist, et al., 21 La.Civ.L.Treatise §8.14 *Louisiana Lawyering, The Revolving Door* (2010). On its face, the rule only applies to judges or other adjudicative officers, their law clerks, arbitrators, mediators, or third-party neutrals; it does not apply to counsel appointed in an MDL proceeding to make an allocation recommendation to an Article III judge who is solely responsible for actually making the allocation.

    The Objectors' efforts to fit the square peg of the FAC members into the round hole of being former adjudicative officers is ill-conceived. It is now a well established practice for federal district courts to seek recommendations from lead counsel on matters involving fee allocation without any fear of ethical reprisals. *See In re Diet Drugs Products Liability Litigation*, 2002 WL 32154197, *23 (E.D.Pa. Oct. 23, 2002), where Chief Judge Bartle capably summarized this area of the law, as follows:

> There is ample authority for a court making an award of attorneys' fees out of a common fund to permit lead counsel to allocate fees among all counsel entitled to share in the award. *Bowling v. Pfizer, Inc.*, 102 F.3d 777, 781 (6th Cir. 1996); *Longden v. Sunderman*, 979 F.2d 1095, 1101 (5th Cir. 1992); *In re Conley Pharm., Inc.*, 50 F. Supp. 2d 1141, 1148 (D. Wyo. 1999); *In re Indigo Sec. Litig.*,

> 995 F. Supp. 233, 235 (D. Mass. 1998). Such a procedure makes sense because it relieves the court of the "difficult task of assessing counsels' relative contributions," *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283, 329 n.96 (3d Cir. 1988). Moreover, lead/class counsel are generally "better able to decide the weight and merit of each other's contributions." *Copley*, 50 F. Supp. 2d at 1148. As one court pointed out when dealing with a situation similar to the one here:
>
>> [I]t is recognized that the allocation among counsel must depend at least in part upon the more subjective factors of the relative contributions of the attorneys to the group effort. In the context of this litigation, which has extended over an eight-year period, it is virtually impossible for the Court to determine as accurately as can the attorneys themselves the internal distribution of work, responsibility and risk.
>
> *In re Ampicillin Antitrust Litig.*, 81 F.R.D. 395, 400 (D.D.C, 1978). Of course, it is never a given that all counsel will agree with lead counsel's allocation. In such a case, the ultimate allocation must be made by the court. *See Copley*, 50 F. Supp. 2d at 1148; *Indiqo*, 995 F. Supp. at 235.

Disqualification under the present circumstances – where counsel are acting at the direction of the Court and the Court is reserving unto itself the final allocation ruling – would have a perverse effect. Those counsel deemed most qualified to lead the litigation and who have comported themselves completely within the ambit of this Court's directives would be incapable of maintaining their role simply because of a dispute within the ranks of the multitude of counsel involved in large MDL cases. As demonstrated above, that is not an ethical lapse.[5]

---

[5] The Objectors' argument based upon LARPC 1.7 fails for the same reason as their earlier argument: no attorney-client relationship exists between FAC members and the Objectors. Ironically, were the Objectors' argument to have any merit, Liaison and Co-Lead Counsel for the Objectors Identified in the February 8 Order would be also subject to disqualification as they lack unanimous written approval of all their so-called clients to make the specious assertions contained within their moving papers.

## IV. CONCLUSION

WHEREFORE, the FAC respectfully submits that the instant motion should be denied.

Respectfully submitted,

Date: April 25, 2011

By: /s/ Russ M. Herman
**Russ M. Herman (Bar No. 6819)**
Leonard A. Davis (Bar No. 14190)
Stephen J. Herman (Bar No. 23129)
*Herman, Herman, Katz & Cotlar, L.L.P.*
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Telephone: (504) 581-4892

**PLAINTIFFS' LIAISON COUNSEL, CHAIR OF THE FEE ALLOCATION COMMITTEE, AND LIAISON COUNSEL FOR COMMON BENEFIT COUNSEL**

By: /s/ Andy D. Birchfield, Jr.,
**Andy D. Birchfield, Jr.**
*Beasley, Allen, Crow, Methvin, Portis & Miles, P.C.*
P. O. Box 4160
Montgomery, AL  36103-4160
Telephone: (334) 369-2343

**PLAINTIFFS' CO-LEAD COUNSEL, SECRETARY OF THE FEE ALLOCATION COMMITTEE, AND CO-LEAD COUNSEL FOR COMMON BENEFIT COUNSEL**

By: /s/ Christopher A. Seeger
**Christopher A. Seeger**
*Seeger Weiss*
One William Street
New York, NY 10004
Telephone: (212) 584-0700
**PLAINTIFFS' CO-LEAD COUNSEL AND CO-LEAD COUNSEL FOR COMMON BENEFIT COUNSEL**

Russ M. Herman (Bar No. 6819)
Leonard A. Davis (Bar No. 14190)
Stephen J. Herman (Bar No. 23129)
*Herman, Herman, Katz & Cotlar, L.L.P.*
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Telephone: (504) 581-4892

Andy D. Birchfield, Jr., Esquire
Leigh O'Dell, Esquire
BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P.C.
P.O. Box 4160
234 Commerce Street
Montgomery, AL 36103-4160
(800) 898-2034 (telephone)
(334) 954-7555 (telecopier)

Christopher A. Seeger, Esquire
SEEGER WEISS
One William Street
New York, NY 10004
(212) 584-0700 (telephone)
(212) 584-0799 (telecopier)

Edward F. Blizzard, Esquire
BLIZZARD, MCCARTHY & NABERS, L.L.P
Lyric Centre, 400 Louisiana
Suite 1710
Houston, TX 77002-1689
(713) 581-8451 (telephone)
(713) 844-3755 (telecopier)

Thomas V. Girardi, Esquire
GIRARDI & KEESE
1126 Wilshire Blvd.
Los Angeles, CA 90017
(213) 977-0211 (telephone)
(213) 481-1554 (telecopier)

W. Mark Lanier, Esquire
THE LANIER LAW FIRM
6810 FM 1960 West
Houston, TX 77069
(713) 659-2500 (telephone)
(713) 659-2204 (telecopier)

Arnold Levin, Esquire
Fred S. Longer, Esquire
LEVIN, FISHBEIN, SEDRAN &
BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
(215) 592-1500 (telephone)
(215) 592-4663 (telecopier)

Troy Rafferty, Esquire
LEVIN, PAPANTONIO, THOMAS,
MITCHELL,
ECHSNER & PROCTOR, PA
316 S. Baylen Street, Suite 400
Pensacola, FL 32502
(850) 435-7000 (telephone)
(850) 497-7059 (telecopier)

Perry Weitz, Esquire
WEITZ & LUXENBERG
180 Maiden Lane
New York, NY 10038
(212) 558-5500 (telephone)
(212) 344-5461 (telecopier)

**FEE ALLOCATION COMMITTEE**

**CERTIFICATE OF SERVICE**

    I hereby certify that the above and foregoing Motion has been served on Liaison Counsel, Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and email, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 25th day of April, 2011.

                /s/ Leonard A. Davis
                Leonard A. Davis (Bar No. 14190)
                ***Herman, Herman, Katz & Cotlar, LLP***
                820 O'Keefe Avenue
                New Orleans, LA  70113
                PH:    (504) 581-4892
                FAX:  (504) 561-6024
                ldavis@hhkc.com