UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re:  VIOXX<br><br>**PRODUCTS LIABILITY LITIGATION**<br><br>**This document relates to:**<br><br> ALL COMMON<br>BENEFIT FEE APPLICANTS | MDL Docket No. 1657<br><br>SECTION L<br><br><br><br>JUDGE FALLON<br>MAG. JUDGE KNOWLES |

### FEE ALLOCATION COMMITTEE'S OPPOSITION TO OBJECTORS' MOTION TO LIMIT FEES

Objectors[1] assert that members of the Fee Allocation Committee, Andy Birchfield, Russ Herman and Chris Seeger, should forfeit all or a portion of their firms' common benefit fees for actions that Objectors claim were in breach of their fiduciary duty.

Objectors have accused the Fee Allocation Committee of unethical conduct, breach of fiduciary duty, and fraud on the Court arising out of an agreement with the percentage-fee objectors.[2]  Objectors have repeated the same baseless, offensive accusations in multiple pleadings without once alleging or establishing any harm on behalf of any Objector.  The Fee Allocation Committee has repeatedly addressed the accusations.  The agreement to resolve objections to the common benefit fee percentage was reached and implemented by the Negotiating Plaintiffs' Counsel ("NPC") with

---

[1] Eleven of the eighteen objectors join in this motion:  Becnel Law Firm; Branch Law Firm; Law Firm of Eric H. Weinberg; Cunard Law Firm; Escobedo, Tippet & Cardenas; Jones Swanson; Kline & Specter; Lockridge, Grindal & Nauen; Murray Law Firm; RodaNast; and Snapka Law Firm.
[2] Though Objectors assert that other deals were made "in an effort to buy acceptances," neither the Negotiating Plaintiffs' Counsel nor the Fee Allocation Committee has entered in to any other agreements for the payment of funds.  See Mot. to Limit Fees, at 2.

1

appropriate authority under the Master Settlement Agreement and the Escrow Agreement.

### I. The Agreement with Percentage-Fee Objectors Was Proper

Objectors characterize the agreement with percentage-fee objectors as improper and "secret." In reaching an agreement with percentage-fee objectors the NPC acted appropriately, in the best interests of common benefit fee applicants, and in a manner consistent with its authority under the terms of the Master Settlement Agreement and the Escrow Agreement. The Court and all percentage-fee objectors, including Becnel and Snapka, were aware that an agreement had been reached.

Mr. Becnel received a letter from Mr. Stratton, the Court-appointed liaison to percentage-fee objectors, dated September 2, 2010, which outlined the terms of an agreement resolving all percentage-fee objections, including Mr. Becnel's. Enclosed with the letter was a check in the amount of $440,694.43. Mr. Becnel wrote to Mr. Stratton on September 7, 2010.[3] As his September 7th letter makes clear, Mr. Becnel was aware of the terms of the agreement between the NPC and Stratton on behalf of the percentage-fee objectors yet raised no questions regarding the propriety of the agreement. Mr. Becnel does not state that he had not authorized Mr. Stratton to act on his behalf. Mr. Becnel does not state that he wanted to persist with his objection. Rather, Mr. Becnel acknowledges that a settlement on his behalf has been reached and seeks clarification regarding the accounting of the settlement. Mr. Becnel deposited the settlement check. For more than six months, Mr. Becnel raised no questions regarding the agreement and enjoyed the benefits of the settlement proceeds.

---

[3] See Ex. A (Letter of Daniel E. Becnel, Jr. to Michael Stratton, September 7, 2010). Mr. Becnel sent a copy of the letter to Plaintiffs' Liaison Counsel, Mr. Herman, and the Court.

Ms. Snapka also received Mr. Stratton's letter of September 2, 2010, along with a check in the amount of $336,492.14, representing the return of funds previously withheld from her firm's Vioxx cases in excess of 4%. Ms. Snapka raised no concern nor posed any questions to either Mr. Stratton or the NPC regarding the agreement. Nor did Snapka attempt to reassert her objection to Plaintiffs' Liaison Counsel's motion. Ms. Snapka made no charge that Mr. Stratton was acting without her authority. After approximately six months, on February 17, 2011, after the Fee Allocation Committee had published its Final Recommendation with which Ms. Snapka is dissatisfied, Ms. Snapka presented the matter for the first time in open court.

Merck & Co. ("Merck") and the NPC reached a global settlement and entered into a private agreement on November 9, 2007. In conjunction with the Master Settlement Agreement ("MSA"), the parties (Merck and the NPC) entered into an escrow agreement. The Escrow Agreement established an escrow account into which Merck would make payments and out of which US Bank, the escrow agent, would make certain payments. Payments under the Escrow Agreement are to be made pursuant to directions delivered to them from time to time by the Claims Administrator.[4]

Shortly thereafter Merck and the NPC entered into an agreement with BrownGreer to serve as the Claims Administrator for the settlement program. The agreement with BrownGreer provides that BrownGreer shall provide all services necessary to fulfill its role as Claims Administrator under and in accordance with the Settlement Agreement and such other services as the parties from time to time mutually agreed upon in writing. See BrownGreer Administrative Agreement § 3.01.[5]

---

[4] See MSA Ex. 17.1.29, at § 4.1.6 (Ex. B of the FAC's Opp. to Mot. Part. Summ. J.).
[5] See BrownGreer Administrative Agreement, at § 3.01 (Ex. C of the FAC's Opp. to Mot. Part. Summ. J).

Certain primary counsel, among who are Becnel and Snapka, objected to the Plaintiffs' Liaison Counsel's motion for a common benefit assessment of 8%. Though variously stated the objections encompassed two main arguments: one, an 8% assessment is too much; and two, for those firms that had previously signed a Full Participation Agreement,[6] the assessment should be only 2%. Had the objections been sustained and a 2% fee been awarded, all common benefit counsel would have been sorely undercompensated for their contributions. Efforts of percentage-fee objectors were an overt assault on the common benefit fee process and the potential fund.

After discovery, briefing and discussions with Mr. Stratton, liaison counsel for percentage-fee objectors, a compromise was reached that resolved both groups of objections. The objection that asserted 8% was too much was an argument with universal application. That objection was withdrawn after both parties agreed to suggest to the Court that a 7.5% common benefit fee assessment would be appropriate. The other objection, applied to a subset of applicants that had signed a Full Participation Agreement and had timely objected. Objectors who urged Judge Fallon to order that only a 2% assessment be paid sought a reduction of 75% in the common benefit fee. If this objection was sustained, the size of the common benefit fund would be substantially diminished. This objection was withdrawn in exchange for a refund of half of the monies that had been held in escrow for payment of common benefit fees on these objectors' individual cases. This subset of objectors by agreement would pay in only a 4% assessment. And, they received a refund of the amount above 4% that had been withheld. On August 26, 2010, the parties conveyed to BrownGreer their request to direct the

---

[6] Full Participation Agreements pursuant to Pretrial Order 19 provided for an assessment of 2% for common benefit fees. Counsel entered into these agreements at the beginning of the MDL. These agreements were expressly superseded by the terms of the MSA.

payment of monies to the trust account of Stratton Faxon for payment to the primary counsel who had entered into Full Participation Agreements and objected to an 8% assessment. The request was appropriate and in keeping with the parties' authority and discretion afforded not only by the Settlement Agreement, but also the Escrow Agreement and the Administrative Agreement with BrownGreer.

The withdrawal of the objections was reported to the Court in a letter from Michael Stratton to the Court, dated July 28, 2010. The letter stated that the joint recommendation of 7.5% was supported by his "investigation, precedent and the academic writing in the field" was accurate and not misleading.

The agreement with objectors and resulting payment was in the best interest of all common benefit counsel. First, it ensured that the fee process would not be significantly delayed as a result of further litigation of the appropriate assessment percentage before Judge Fallon and the Circuit Court of Appeals for the Fifth Circuit. At the time this agreement was reached, many common benefit counsel had been working on and investing in the Vioxx litigation for nearly 10 years. Appeal of the common benefit fee percentage could have resulted in a delay of one or more years. Such a delay would only have served to penalize many deserving counsel who had worked tirelessly for the common good. Second, the resolution resulted in the preservation of the res of the fund.

Objectors assert that the payment to Stratton and other percentage-fee objectors largely benefitted members of the Fee Allocation Committee. Nothing could be farther from the truth. The Fee Allocation Committee and the NPC's agreement to enter into the compromise did not benefit their members apart from the benefit experienced by all

common benefit applicants. The Committee members received no pecuniary benefit from the agreement.

And, lastly, the current Objectors who now raise questions about the transaction (though Snapka, Becnel and others have known about it for more than 6 months) were not prejudiced by the payment. There is no basis to suggest that the Objectors would have been entitled to a greater amount based on the work the firms performed.

## II. Authority Cited by Objectors Is Not Applicable

The members of the Fee Allocation Committee, the NPC, and Mr. Birchfield, Mr. Herman, and Mr. Seeger have at all times fulfilled their duties as established by the Court and have acted in the best interests of both Vioxx claimants and their counsel. Objectors do not state otherwise. Rather, Objectors cite with abandon authority that is not applicable to the present circumstances – cases that deal solely with disputes that have arisen within an attorney-client relationship. As Objectors are well aware, neither members of the Fee Allocation Committee nor members of the NPC have entered into an attorney-client relationship with either the Objectors or any other common benefit fee applicant.

Objectors cite Section 37 of the Restatement (Third) of Law Governing Lawyers for the proposition that a lawyers' improper conduct can reduce or eliminate the fee that the lawyer may reasonably charge." The rationale of the section is as follows: "The remedy of fee forfeiture presupposes that a lawyer's clear and serious violation of a duty to a <u>client</u> destroys or severely impairs the <u>client-lawyer relationship</u>." Restatement (Third) of Law Governing Lawyers §37 cmt. b (2000) (emphasis added). Section 37 is not applicable.

The cases cited in footnote 2 of Objectors' motion are allegedly offered as "examples of breaches justifying fee forfeiture." The cases address the forfeiture or limiting of attorney's fees in a traditional attorney-client relationship and also are not applicable to the present circumstances.[7] As noted above, Mr. Birchfield, Mr. Herman, and Mr. Seeger do not represent either any Objectors or other common benefit fee applicants.

Objectors also cite the case of *Burrow v. Arce,* 997 S.W.2d 229 (Tex. 1999). The *Burrow* case is yet another case which is not applicable. In *Burrow*, 126 plaintiffs brought suit jointly for injuries and deaths that occurred as a result of a 1989 explosion at a Phillips 66 chemical plant. The case settled. Forty-nine plaintiffs filed suit against their attorneys alleging "that the attorneys, in violation of rules governing their professional conduct, solicited business through a lay intermediary, failed to fully investigate and assess individual claims, failed to communicate offers received and demands made, entered into an aggregate settlement with Phillips of all plaintiffs' claims

---

[7] *In re Rosenman & Colin*, 850 F.2d 57, 63 (2d Cir.1988) (court held where attorney breached the retainer agreement by not sending monthly billing statements that forfeiture was not appropriate but that attorney was entitled to fees under a theory of quantum meruit); *Silbiger v. Prudence Bonds Corp.*, 180 F.2d 917 (2d Cir. 1950) (failure to disclose conflict should warrant penalty but not forfeiture); *Crawford & Lewis v. Boatmen's Trust Co.,* 1 S.W.3d 417 (Ark.1999) (ordering disgorgement of fees where attorneys represented both a trust as well as a co-trustee in the purchase of a house with trust funds for the purchase and the sale of the house where the trustee pocketed the funds rather than return them to the trust); *Sanders v. Townsend*, 582 N.E.2d 355, 359 (Ind. 1991) (holding that dispute between attorney and client where clients felt attorney coerced them into settling their claim was more appropriately addressed by a disciplinary committee than in a civil case exposing attorneys to civil liability); *Ranta v. McCarney*, 391 N.W.2d 161, 166 (N.D. 1986) (holding that out of state lawyer prohibited from recovering fees relating to practice conducted in North Dakota). *Crawford v. Logan*, 656 S.W.2d 360 (Tenn. 1983) (holding that attorney violated ethical rule by withholding from his client in a divorce proceeding the tape of the husband's paramour); *Rice v. Perl*, 320 N.W.2d 407 (Minn. 1982) (finding conflict of interest where attorney representing victim and claims adjuster representing the insurer were employed by the same law firm); *Searcy, Denney, Scarola, Barnhart & Shipley, P.A. v. Scheller*, 629 So. 2d 947 (Fla. Dist. Ct. App. 1993) (forfeiture was not warranted where lawyer breached duty by seeking a higher fee after successfully securing judgment of $26 million); *Jackson v. Griffith*, 421 So.2d 677 (Fla. Dist. Ct. App. 1982) (fee agreement unenforceable where client forced to sign through coercion, duress, and threats); *Jeffry v. Pounds*, 136 Cal. Rptr. 373 (Cal.Ct.App.1977) (finding conflict of interest where law firm attempted to represent plaintiff in a personal injury action and plaintiff's wife in a divorce action).

without plaintiffs' authority or approval, agreed to limit their law practice by not representing others involved in the same incident, and intimidated and coerced their clients into accepting the settlement." *Id.* at 232. The attorneys argued that the plaintiffs were "disgruntled by rumors of settlements paid [to] co-workers represented by different attorneys in other suits." *Id.* at 233. The *Burrow* Court did not address the issue of whether there was a breach that justified fee forfeiture. *Id.* The issues of whether there was a breach of fiduciary duties and, if so, whether they justified a forfeiting or limiting of fees were remanded to the trial court. *Id.* The case has no applicability to the present circumstances.

Mr. Birchfield, Mr. Herman, and Mr. Seeger do not represent either any Objectors or other common benefit fee applicants. The authority cited by Objectors is inapposite.

### III. Objectors' Specious Claims Warrant Rule 11 Sanctions

Objectors cite without reference or evidence statements of Russ Herman. Objectors state that "Mr. Herman asserted that the common benefit fund was 'no one's' money, and so he could deal with [sic] as he saw fit." See Mot. to Limit Fees, at 6. Objectors state that "he asserted that this Court 'did not want to know' how he was using those funds to settle objections such as Stratton's." *Id.* These statements are patently false. See Ex. B (Aff. of Russ Herman). For counsel for Objectors to make such false, unfounded assertions without reference to a transcript or any other evidence is improper and warrants Rule 11 sanctions.

"Rule 11 permits sanctions where the factual allegations are unsupported or are not likely to be supported after a reasonable opportunity for further discovery." *Health Net, Inc. v. Wooley*, 534 F.3d 487, 497 (5th Cir. 2008) (internal citations omitted). "In

8

determining compliance with Rule 11, 'the standard under which an attorney is measured is an objective, not subjective, standard of reasonableness under the circumstances.'" *Worrell v. Houston Can! Acad.*, 287 Fed. Appx. 320, 325 (5th Cir. 2008) (quoting *Whitehead v. Food Max of Miss., Inc.*, 332 F.3d 796, 802 (5th Cir. 2003). Under no objective standard can counsel for Objectors' conduct be considered reasonable. Counsel for Objectors have repeatedly made false accusations of misconduct, fraud, and *ultra vires* acts against Mr. Birchfield, Mr. Herman, and Mr. Seeger, along with members of the NPC and the Fee Allocation Committee, without any factual basis. The quoting of Russ Herman without evidence is yet another example of counsels' propensity not to allow either the facts or the law to stand in the way of any scurrilous claim they decide to assert. Such conduct is unprofessional, burdensome to the Court and the type of conduct that Rule 11 was adopted to address.

In sum, the Fee Allocation Committee acted in good faith and with appropriate authority at all times in regard to the common benefit fund. Objectors' motion should be denied.

                                                Respectfully submitted,

Date:   April 26, 2011        By:     /s/ Russ M. Herman
                                                  **Russ M. Herman (Bar No. 6819)**
                                                  Leonard A. Davis (Bar No. 14190)
                                                  Stephen J. Herman (Bar No. 23129)
                                                  ***Herman, Herman, Katz & Cotlar, L.L.P.***
                                                  820 O'Keefe Avenue
                                                  New Orleans, Louisiana 70113
                                                  Telephone: (504) 581-4892

                                                  **PLAINTIFFS' LIAISON COUNSEL, CHAIR OF THE FEE ALLOCATION COMMITTEE, AND LIAISON COUNSEL FOR COMMON BENEFIT COUNSEL**

By:    /s/ Andy D. Birchfield, Jr.,
       **Andy D. Birchfield, Jr**.
       *Beasley, Allen, Crow, Methvin,*
       *Portis & Miles, P.C.*
       P. O. Box 4160
       Montgomery, AL 36103-4160
       Telephone: (334) 369-2343

       **PLAINTIFFS' CO-LEAD COUNSEL, SECRETARY OF THE FEE ALLOCATION COMMITTEE, AND CO-LEAD COUNSEL FOR COMMON BENEFIT COUNSEL**

By:    /s/ Christopher A. Seeger
       **Christopher A. Seeger**
       *Seeger Weiss*
       One William Street
       New York, NY 10004
       Telephone: (212) 584-0700

       **PLAINTIFFS' CO-LEAD COUNSEL AND CO-LEAD COUNSEL FOR COMMON BENEFIT COUNSEL**

Russ M. Herman, Esq.
HERMAN, HERMAN, KATZ & COTLAR, LLP
820 O'Keefe Avenue
New Orleans, LA 70113
(504) 581-4892 (telephone)
(504) 561-6024 (telecopier)

Andy D. Birchfield, Jr., Esquire
BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P.C.
P.O. Box 4160
234 Commerce Street
Montgomery, AL 36103-4160
(800) 898-2034 (telephone)
(334) 954-7555 (telecopier)

Christopher A. Seeger, Esquire
SEEGER WEISS
One William Street
New York, NY 10004
(212) 584-0700 (telephone)
(212) 584-0799 (telecopier)

Troy Rafferty, Esquire
LEVIN, PAPANTONIO, THOMAS, MITCHELL,
ECHSNER & PROCTOR, PA
316 S. Baylen Street, Suite 400
Pensacola, FL 32502
(850) 435-7000 (telephone)
(850) 497-7059 (telecopier)

Thomas V. Girardi, Esq.
GIRARDI & KEESE
1126 Wilshire Blvd.
Los Angeles, CA 90017-1904
(213) 977-0211 (telephone)

Mark Lanier, Esq.
LANIER LAW FIRM, PC
6810 FM 1960 West
Houston, TX 77069
(713) 659-5200 (telephone)
(713) 659-2204 (telecopier)

Edward F. Blizzard, Esq.
BLIZZARD, MCCARTHY & NABERS, LLP
Lyric Centre, 440 Louisiana
Suite 1710
Houston, TX 77002-1689
(713) 844-3750 (telephone)
(713) 844-3755 (telecopier)

Perry Weitz, Esq.
WEITZ & LUXENBERG
180 Maiden Lane
New York, NY 10038
(212) 558-5500 (telephone)
(212) 344-5461 (telecopier)

Arnold Levin, Esquire
LEVIN, FISHBEIN, SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
(215) 592-1500 (telephone)
(215) 592-4663 (telecopier)

**FEE ALLOCATION COMMITTEE**

11

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Motion has been served on Liaison Counsel, Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and email, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 26th day of April, 2011.

        /s/ Andy D. Birchfield, Jr.
**Andy D. Birchfield, Jr**.

*Beasley, Allen, Crow, Methvin,*
*Portis & Miles, P.C.*
P. O. Box 4160
Montgomery, AL  36103-4160
Telephone: (334) 369-2343
Facsimile: (334) 954-7555