UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: VIOXX | * | MDL NO. 1657 |
| | * | |
| PRODUCTS LIABILITY | * | |
| LITIGATION | * | SECTION L |
| | * | |
| THIS DOCUMENT RELATES | * | JUDGE FALLON |
| TO ALL CASES | * | MAG. JUDGE KNOWLES |
| | * | SPECIAL MASTER |
| FILER: Robert E. Arceneaux/Margaret Woodward | * | PATRICK A. JUNEAU |
| | * | April 28, 2011 |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**MEMORANDUM IN SUPPORT OF MOTION TO AMEND SCHEDULING
ORDER AND TO ESTABLISH HEARING PROTOCOL**

MAY IT PLEASE THE COURT:

The FAC has made much of its argument that the setting of attorneys fees should not be "mini-trials." To some extent, this Court has accepted its proposition, stating that at this "late stage," the hearing should not be allowed to "balloon unnecessarily." *See* Order denying Objector's Appeal, Rec. Doc. 62883, at 1-2.[1]

---

[1]The FAC relies upon *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), abrogated on other grounds *Tex. States Teachers Assoc. v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989), as support for this proposition. However,

> The Supreme Court's oft-repeated wish that litigation about fees not turn into a second major lawsuit (e.g., *Hensley*, *supra*, 461 U.S. at 437, 103 S.Ct. at 1941), is an unattainable dream. The computation of hourly fees depends on the number of hours "reasonably" expended, the hourly rate of each, the calculation of the time value of money (to account for delay in payment), potential increases and decreases to account for risk and the results obtained, and a complex of other considerations
>
>                                                                                            (continued...)

-1-

In some cases, there is no legitimate reason for prolonged fee litigation. "[E]videntiary fee hearings are not often held in statutory fee determinations...." 2 Attorney Fee Awards § 6:12, at n. 15 (3d ed.). The author cites two cases from the Fifth Circuit, both of which illustrate why due process does not require extensive hearings in this type of case. In *Associated Builders & Contractors of Louisiana, Inc. v. Orleans Parish School Bd.*, 919 F.2d 374 (5th Cir. 1990), a civil rights/equal protection case, an evidentiary hearing on the motion for attorney's fees was not necessary when the school board failed to indicate what additional evidence it could possibly provide that it had not already presented to the court "in copious documents and evidence appended to them." 919 F.2d 374 at 378. Likewise, in *Watkins v. Fordice*, 7 F.3d 453, 459 (5th Cir. 1993) (voting rights), the court found that a hearing as not required: "The party requesting the hearing has the burden to show this court what additional evidence it could provide in the hearing that the court does not already have."

But, the argument does not obtain in cases such as the instant one, where there is $315,000,000 in attorneys' fees at stake, subject to claims by more than 100 attorneys, the vast majority of whom did work that was totally outside the purview of the court. In fact, most of the

---

[1](...continued)
      under the heading of "billing judgment." The stakes-in this case the request for fees was double the judgment, in others the request for fees may be millions of dollars-ensure that the parties will pursue all available opportunities for litigation. *Cf. Ohio-Sealy Mattress Mfg. Co. v. Sealy Inc.,* 776 F.2d 646 (7th Cir.1985); *In re Fine Paper Antitrust Litigation*, 751 F.2d 562 (3d Cir.1984). The fuzziness of the criteria (what is a "reasonable" number of hours?) ensures that people seeking opportunities to contest the fees will not need to search hard.

*Kirchoff v. Flynn,* 786 F.2d 320, 325 (7th Cir.1986). Moreover, as explained below, *Hensley* was a statutory fee shifting case which has no application here.

hours expended in the Vioxx litigation effort were expended in state courts, not even in this MDL; this Court has not seen what work was done, or the impact it had on the ultimate outcome of the Vioxx dispute.

The Manual for Complex Litigation recognizes the distinction between the setting of a statutory fee, such as in a civil rights action, on the one hand, where the court has witnessed the entire performance of the attorney during the course of the trial, and the allocating of common benefit fees, on the other:

> Rule 54(d)(2)(c) requires the court, on request of a party or class member, to "afford an opportunity for adversary submissions with respect to [a] motion" for attorney fees. An evidentiary hearing may be required in some cases, but Rule 54(d)(2)(D) permits the court to "establish special procedures by which issues relating to such fees may be resolved without extensive evidentiary hearings." **Due process may require affording claimants a meaningful opportunity to be heard concerning competing applications for fees payable from a common fund.**

*Manual for Complex Litigation* (4th) § 14.232, (emphasis added, citing *In re Nineteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig.*, 982 F.2d 603, 616 (1st Cir. 1992)). See also *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 472–73 (2d Cir. 1974) (abrogated on other grounds by, *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43 (2d Cir. 2000) (where facts are disputed, an evidentiary hearing is required before a district court determines a proper attorney's fee award; *Grinnell* was cited in *Blum v. Stenson*, 465 U.S. 886, 892 n. 5, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984).

The due process clause requires a meaningful opportunity to be heard in this case. To be "meaningful," that opportunity must include full and fair discovery, notice, and a full hearing, with the attendant rights to call witnesses necessary to establish one's case, to adduce the testimony probative of one's claims, to cross-examine sufficiently, and to have counsel of one's choice. This

is NOT a statutory fee setting case, like a civil rights action. It is major litigation in and of itself about conduct and activities that did not, in the vast majority of cases, occur before this Court.

And, while the Court has noted that this case is "near its end," that is true only as to the injured Vioxx plaintiffs. THAT portion of this case is almost over, but the MSA has given rise to an entirely new dispute concerning attorneys' fees. Issue has only been joined for a few months, after the FAC filed its recommended allocation and certain claimants filed objections. That litigation is entirely distinct from the client portion of the Vioxx MDL, and it is a major piece of litigation involving a significant amount of money to be divided among persons who are entitled to the same due process rights as anyone else when it comes to their livelihood.

>As the *Dupont Hotel* Court noted:
>
>> The Supreme Court "consistently has held that some form of hearing is required before an individual is finally deprived of a property interest." *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976); accord *Wolff v. McDonnell*, 418 U.S. 539, 557-58, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974). Perfunctory gestures will not suffice. At bedrock, "[t]he fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews*, 424 U.S. at 333, 96 S.Ct. at 902 (citation and internal quotation marks omitted).
>
>> The Court has not forged a boilerplate standard for determining what process is due in all circumstances, but, instead, has articulated three areas of particular importance:
>
>>> [T]he specific dictates of due process generally require[ ] consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.
>
>> *Id*. at 335, 96 S.Ct. at 903; see also *Connecticut v. Doehr*, 501 U.S. 1, ----, 111 S.Ct. 2105, 2112, 115 L.Ed.2d 1 (1991); *Reardon v. United States*, 947 F.2d 1509, 1518

> (1st Cir.1991) (en banc). The Court's language in *Mathews* explicates what is essentially a constitutional balancing test. See *Amsden v. Moran*, 904 F.2d 748, 753 (1st Cir.1990), *cert. denied*, 498 U.S. 1041, 111 S.Ct. 713, 112 L.Ed.2d 702 (1991); *Needleman v. Bohlen*, 602 F.2d 1, 5 (1st Cir.1979).
>
> We do not approach the *Mathews* factors in a vacuum. Rather, we sally forth mindful that, in many, if not most, instances, due process does not require a full-scale trial, or even a hearing strictly conforming to the rules of evidence. See *Mathews*, 424 U.S. at 348, 96 S.Ct. at 909; *Doyle v. Secretary of HHS*, 848 F.2d 296, 301 (1st Cir.1988). Due process is malleable, calling "for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). A court may hand-tailor procedures to account for the nature of *the affected interests and the circumstances of the threatened deprivation. See Neron* v. Tierney, 841 F.2d 1197, 1201 (1st Cir.1988), cert. denied, 488 U.S. 832, 109 S.Ct. 90, 102 L.Ed.2d 66 (1988).
>
> "As the rubric itself implies, `procedural due process' is simply `a guarantee of fair procedure.' " *Amsden*, 904 F.2d at 753 (quoting *Zinermon v. Burch*, 494 U.S. 113, 125, 110 S.Ct. 975, 983, 108 L.Ed.2d 100 (1990)); see also *Newman v. Burgin*, 930 F.2d 955, 961 (1st Cir.1991). **Hence, we review cases involving adversarial hearings to determine whether, under the specific facts and circumstances of a given situation, the** affected individual has had a fundamentally fair chance to present his or her side of the story. *Gorman v. University of R.I.*, 837 F.2d 7, 14 (1st Cir.1988). Throughout, we resist bright line rules and mechanical tests, mindful that *a nisi prius* court may use its sound discretion to assemble an appropriate process by choosing from among a multitude of available methods, **so long as the end product stays within the four corners of that discretion and satisfies the rigors of the Due Process Clause**.

982 F.2d at 611. The *Dupont Fire* Court went on to examine the process that had been used by the district court in that case:

> **[T]the protocol that governed the hearing hogtied the IRPAs, severely restricting their ability to participate in the fee-determination process**. The court summarily abrogated the PSC's "majority decision" rule without prior notice, allowing the insurgents' proposal to go forward. The court then stated, in Order 310, that "[t]he role of [the IRPAs] at the hearing will be limited to that of spectators, that is, they may not interrogate the witnesses, raise objections or otherwise address the Court." Even the PSC members were admonished to testify only as to their participation as PSC members and not to recount their services in their dual capacity as IRPAs. As a final indignity, the court limited the IRPAs' posthearing objections to matters which could not have been foreseen prior to the hearing and confined them

> to the same tourniqueted form used for prehearing objections.
>
> Such miserly process is certainly not sufficient to meet constitutional minima. While "[n]otice and an opportunity to be heard have traditionally and consistently been held to be the essential requisites of procedural due process," Gorman, 837 F.2d at 12, a last-minute warning of a fundamental change in the fee structure is not constitutionally adequate notice and **a rigid limitation of one affected group's input into the hearing while giving members of the other affected group a much broader array of participatory rights does not comprise a constitutionally adequate chance to be heard**. **Appellants were entitled to reasonable forewarning and an opportunity to present their side of the controversy in a meaningful manner. They received neither**. Hence, the risk that appellants would be erroneously deprived of their property was intolerably great.

Id, at 613. The Court concluded with this holding:

> Let us be perfectly clear. We do not hold today that the Due Process Clause requires the district court to convene an evidentiary hearing for all attorneys' fee disputes. See *Weinberger v. Great N. Nekoosa Corp.*, 925 F.2d 518, 528 (1st Cir.1991) (stating that hearings are not always obligatory in connection with fee awards). Nor do we hold that a district court must always take live testimony or afford adversarial discovery in such matters. **We do rule, however, that, once Judge Acosta elected to convene a fee-determination hearing, the hearing format itself had to be fair. In other words, when a judge constructs a process for setting fees, the process must contain at least the procedural minima that the Due Process Clause requires; and, moreover, those procedures must apply in a fair and evenhanded manner to the parties in interest, without preferring one group of disputants over another.**
>
> In this instance, **we cannot see how the court could fairly adjudicate this dispute unless it afforded the IRPAs a viable means (comparable to the means afforded the PSC) of describing their contribution to the litigation, contrasting their contribution with the PSC's contribution, and questioning the PSC members regarding their work**. *See Briscoe v. LaHue*, 460 U.S. 325, 333-34, 103 S.Ct. 1108, 1114-15, 75 L.Ed.2d 96 (1983); *California v. Green*, 399 U.S. 149, 158, 90 S.Ct. 1930, 1935, 26 L.Ed.2d 489 (1970); Kennerly v. United States, 721 F.2d 1252, 1257-58 (9th Cir.1983) (reversing district court award of funds where interested party did not receive a hearing); see also *Weinberger*, 925 F.2d at 525 ("The court's role as the guarantor of fairness obligates it not to accept uncritically what lawyers self-servingly suggest is reasonable compensation for their services."); *In re Air Crash Disaster at Fla. Everglades*, 549 F.2d 1006, 1021 (5th Cir.1977) (requiring plaintiffs' committee and counsel to offer evidence and submit to cross-examination at fee-determination hearing). **Although using such a model would have prolonged the hearing, it would not have created an unreasonable or intolerable burden**

> **on the district court. Given the panoply of available alternatives, the public interest in the integrity of court proceedings demanded considerably more**.
>
> * * * * *
>
> The short of it is that **the hearing procedures devised by the district court deprived the individual plaintiffs of meaningful input into the decisionmaking process by which the court decided what costs were properly to be charged against the plaintiffs' fund**. Hence, because the plaintiffs, like the IRPAs, did not receive due process of law, the costs, as well as the fees, must be determined afresh.

*Id.*, at 614-15, 616 (emphasis added).

The *Dupont Hotel* fire decision was relied upon by the Fifth Circuit to reach the same conclusion – while a hearing is not always required, in some instances, when it is required, it must afford the litigants full due process rights:

> If a court chooses to hold a "fee-determination hearing, the hearing format itself ha[s] to be fair. In other words, **when a judge constructs a process for setting fees, the process must contain at least the procedural minima" of due process**: notice and an opportunity to be heard. *In re Nineteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*, 982 F.2d 603, 614 (1st Cir.1992) (reversing fee award in large-scale consolidated case in which lawyers from steering committee were permitted to testify, examine witnesses, and offer oral argument at evidentiary hearing, but other lawyers representing individual clients were not); see also *In re Fine Paper Antitrust Litig.*, 751 F.2d 562, 584 (3d Cir.1984) (stating that "the hearing on a fee application in an equitable fund case requires compliance with those procedural rules which assure fair notice and an adequate opportunity to be heard. Equally plainly, the requirement of an evidentiary hearing demands the application in that hearing of the Federal Rules of Evidence"); Alan Hirsch & Diane Sheehey, Fed. Judicial Ctr., *Awarding Attorneys' Fees and Managing Fee Litigation* 81 (2d ed. 2005) ("**If a hearing is held, the court should ensure that all attorneys staking a claim to fees are given a reasonable opportunity to be heard.**").

*In re High Sulfur Content Gasoline Products Liability Litigation*, 517 F.3d 220, 231 (5th Cir.(La.) Feb 04, 2008).

In the instant case, the process to date has limited claimants to a three-page affidavit and a thirty-minute presentation, woefully inadequate to the explanation of contributions often totaling

thousands of hours of time, made in most instances by multiple lawyers whose efforts were divided across multiple tasks over a period of years. This severely curtailed process cannot be made "meaningful" by denying most discovery, then limiting these claimants to only one witness each, restricted to a brief additional period of testimony whose length is, so far as we know[2], to be limited to a time period unrelated to the work performed or the fee claimed.

This Court in *Turner v. Murphy Oil USA, Inc*, 2:05-cv-04206 (E.D. La.), recognized as much when it appointed retired Judge Klees to serve as special master. *See* Exhibit 1. Prior to this appointment, it issued an order outlining the considerations that would govern fee allocation, and noted that it was allowing three years for the litigation of the attorney fee allocation. *See* Exhibit 2, at 2. Master Klees announced a case management plan that afforded FULL discovery, and had few restrictions on the rights of the parties to have a full and fair hearing, with the right to call any necessary witnesses and full cross-examination. *See* Exhibit 3 hereto. It is to Master Klees' credit that discovery in that case was completed in 6 months, see Exhibit 4 hereto, at 1-2, instead of the three years allotted. After that, It took more than a year to finish up the case. Here is the sequence of events:

1. Klees appointed 4-24-07 (Rec. Doc. 1501), Exhibit 1 hereto.

2. CMO 5-22-07 (Rec. Doc 1667), Exhibit 3 hereto.

3. Judge Fallon indicates discovery complete 11-28-07 (Rec. Doc. 2130), Exhibit 4 hereto.

4. Master Klees' Preliminary Report 4-11-08 (Rec. Doc. 2260), Exhibit 5 hereto.

---

[2] By letter dated April 19, 2011 undersigned counsel asked how long each Objector would be allowed for his presentation. Mr. Herman declared that to fit within the allotted hearing length, the presentations should be restricted to one hour. The Special Master has not yet weighed in on the matter.

      5.       Master Klees' Final Report 8-22-08 (Rec. Doc. 2457), Exhibit 6 hereto.

      6.       Judge Fallon's decision allocating fund -- Oct 4, 2088, *Turner v. Murphy Oil USA, Inc*, 582 F.Supp.2d 797 (E. D La . Oct. 6, 2008)

      7.       Final Settlement -- case over 11-24-08 (Rec. Doc. 2700), Exhibit 7 hereto.

Accordingly, (1) after his appointment, Judge Klees did not issue his CMO until one month later; (2) it took 7 months to complete discovery from the date of his appointment; (3) it was one year before his preliminary report issued; (4) it was 1 year and 4 months before his final report issued; (5) Judge Fallon did not issue his allocation until 1 and ½ years after the commencement of the fee allocation; and, (6) it was 1 year and 7 months from beginning to end for the fee allocation, a long time but still well under the three years that Judge Fallon had allotted. There as no attempt to compromise due process for the sake of expediency. AND, in *Murphy Oil*, less than $34,000,000 as at stake and there were only 44 claimants!

At issue before the Court are the claims of more than 100 individual law firms all of whom contributed with varying effort, in different venues, under different management committees, to a common cause that ultimately is reflected in the MSA. All of this work was not done in front of any single judge – there was one federal judge and several state judges who presided over the thousands of cases. More than $315,000,000 is at issue.  The FAC was given the task of recommending an allocation, and we believe they failed so miserably that their allocation is utterly worthless and should be stricken from the record. Judge Fallon has held that it is entitled to no presumptive weight whatsoever, and he will determine whether it is of any benefit in a proper fee allocation only AFTER the hearing before Special Master Juneau, who is to craft his own independent allocation.  At the same time, presumably, Master Juneau will be making the record that Judge Fallon will ultimately rely upon in making the final allocation. In these circumstances,  full discovery, followed by a real

trial – not an abbreviated hearing – is required. Otherwise, there is simply no way that Master Juneau and Judge Fallon will have a record upon which they can reach a fully informed decision. Equally importantly, trials are also about making a record for the reviewing court , and the present scheduling order will afford the Court of Appeal nothing upon which to determine a proper allocation.

We have requested the following procedures are minimally necessary to satisfy due process:

(1) The Witness List of the Scheduling Order should be amended to, at a minimum, allow Objectors to call an expert in rebuttal to Phil Garrett.  We hope this will not be necessary.  At present, our expert, even with Mr. Garrett's direction and using only his data, , has not been able to recreate the firm-b-firm lodestar basis that was the foundation of Mr. Garrett's report to Judge Fallon and that was purportedly the basis of the FAC's allocation.  The experts continue to work together toward trying to resolve the discrepancies, and we are hopeful that this can be achieved. But, if it cannot, Objectors have a right to call their own expert to introduce a verifiable firm-by-firm lodestar, because this crucial piece of information is the foundation upon which the allocation must be based.  "The district court may. . . adjust the lodestar upward or downward depending on the respective weights of the twelve [*Johnson*] factors," but failure to base an award (or allocation) of fees upon a lodestar calculation in the first instance is reversible error.  *Riley v. City of Jackson*, Miss., 99 F.3d 757, 760 (5th Cir.1996).

(2) The FAC should be required to present its case first, as it has burden of proof. It has offered an allocation which has NO presumptive validity, as is clear from the case law and from Judge Fallon's ruling in his denial of the Motion for Summary Judgment. *See* Rec. Doc. 62716 ("The FAC's allocation is simply one piece of evidence, not a target that the Objectors must demolish before the Court can blindly approve it. The Court will not "abdicate[] its responsibility" to make a thorough independent allocation of all common benefit fees, nor will the Court make only a "perfunctory review" of the FAC's recommendation, the Special Master's recommendations, or the Objectors' position."). Accordingly, the FAC must justify what it has recommended before the Objectors' have any obligation to put on any case. Objectors are the defendants who are opposing the "case" offered by the FAC.  Under the scheduling order as drafted, they will have no opportunity of rebuttal unless Mr. Birchfield testifies first.

(3) Each objector must be allowed an opportunity to cross-examine Mr. Birchfield, as lead counsel cannot ethically do so for multiple clients who have an actual conflict of interest in that they are competing for dollars from a limited fund.

(4) Each Objector should be allowed a minimum of eight  hours to put on his case, consisting

    of such witnesses as he wishes to call, under examination by counsel of his choosing. Included among these witnesses might be, for example, an expert to testify whether the rates reported by the attorneys to Mr. Garrett for his use in calculating lodestars are reasonable, not excessive, and consistent with the typical rates charged in the applicable area. See *Islamic Center of Mississippi, Inc. v. City of Starkville*, Miss., 876 F.2d 465, 468-699 (5th Cir.1989), citing *Blum v. Stenson*, 465 U.S. 886, 895 n. 11, 104 S.Ct. 1541, 1547 n. 11 79 L.Ed.2d 891 (1984) ("To "inform and assist" the district court in ascertaining the hourly rate at which attorneys are remunerated in the prevailing market, the Court required fee applicants to produce satisfactory evidence-in addition to the attorney's own affidavits-that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." If an attorney wishes to contest the rate, "that party should at least adduce some evidence to support its position that, under the circumstances, the requested rate is not reasonable.")

(5)  Each Objector should be allowed a minimum of one hour of cross examination of Andy Birchfield, and Objectors' co-lead should be allowed a minimum of four hours of cross-examination on issues common to the group.

  While we continue to believe that the May 9th trial in this matter is grossly premature given the erroneous denial of relevant and critical discovery, we acknowledge that further discussion of that issue will be for the Court of Appeal, as Judge Fallon has held that no further discovery should be allowed except as authorized by the Special Master. Given that, there is even more reason to ensure that the hearing in this matter be full and fair, without undue restrictions upon the parties' rights to call the witnesses they need to make their cases, to put on all the evidence that is necessary, and to be represented by their own, unconflicted counsel. The limited amendments to the Scheduling Order we propose, and the trial protocol we have set forth in the accompanying motion are the minimum required by due process under the circumstances.

Respectfully Submitted,

/s/ Robert E. Arceneaux                                   /s/ Margaret E. Woodward
_____      _____
Robert E. Arceneaux, La Bar No. 01199      MARGARET E. WOODWARD, La. Bar
ROBERT E. ARCENEAUX LLC                      No.13677
47 Beverly Garden Drive                                3701 Canal Street, Suite C
Metairie, LA 70001                                         New Orleans, Louisiana 70119
(504) 833-7533 office                                    (504) 301-4333 office
(504) 833-7612 fax                                        (504) 301-4365 fax
rea7001@cox.net                                          mewno@aol.com

**CO-LEAD COUNSEL FOR OBJECTORS IDENTIFIED IN FEB. 8 ORDER**

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Memorandum has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail, and by upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre Trial Order No.8, on this date, April 28, 2011.

/s/ Robert Arceneaux