U.S. DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

FILED      APR 2 4 2007

LORETTA G. WHYTE
CLERK

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **PATRICK JOSEPH TURNER, ET AL.** | * | **CIVIL ACTION** |
| **VERSUS** | * | **NO. 05-4206**<br>**CONSOLIDATED CASE** |
| **MURPHY OIL USA, INC.** | * | **SECTION "L"(2)** |

*******************************************

**THIS DOCUMENT RELATES TO ALL CASES**


## ORDER APPOINTING SPECIAL MASTER

On April 20, 2007, after due notice, the Court informed the parties in open court and on the record of its intent to appoint Judge Robert Klees as a Special Master in this proceeding under Fed. R. Civ. P. 53. *See* Transcript dated April 20, 2007. Having received no objections, by this Order, the Court now formally appoints Judge Klees as Special Master. This appointment is made pursuant to Rule 53 and the inherent authority of the Court. The Court sets forth below the circumstances giving rise to the appointment, and the duties and terms of the Special Master's appointment.

## I.     BACKGROUND

On January 30, 2007, the Court approved of the settlement of this class action and granted the Plaintiffs' Steering Committee's ("PSC") motion for common benefit fees and expenses. *Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830 (E.D. La. 2007). The Court determined that a common benefit fee award of $33,746,241.88 was appropriate, plus $2,659,043.00 in expenses, with legal interest on these amounts until paid in full. *Id.* at 870. Pursuant to the settlement agreement, the Court ordered Murphy to pay these amounts. *Id.* The parties subsequently agreed

Fee_____
Process_____
X Dktd_____
CtRmDep_____
Doc. No._____

EXHIBIT 1

that Murphy would satisfy this obligation by depositing \$35 million into the registry of the Court.

As is common practice, the Court allowed the PSC an opportunity to apportion the fee award among themselves. However, the Court retained jurisdiction "for purposes of supervising the allocation" and provided that if counsel "are unable to agree upon the apportionment, the Court will appoint a Special Master and his or her fee for services related to this issue will be paid out of the fee award for those who contest their allotment." *Id.* at 869-70.

It now appears that the parties are unable to amicably apportion the fee award among themselves. Accordingly, the Court hereby appoints Judge Robert Klees as Special Master to assist with the apportionment of the \$35 million fee award.

## II.    SPECIAL MASTER'S DUTIES

Rule 53(a)(1)(B) states that the Court may appoint a special master to "hold trial proceedings and make or recommend findings of fact on issues to be decided by the Court without a jury," and Rule 53(a)(1)(C) states that the Court may appoint a special master to address "post-trial matters that cannot be addressed effectively and timely" by the district judge. Accordingly, pursuant to Rule 53 and by Order of the Court, Special Master Klees shall conduct interviews, review any relevant documents, and perhaps take sworn testimony, and then make recommendations with respect to the allocation of the fee award in this case. To assist in these endeavors, the Special Master may, with the consent of the Court, retain any necessary office space, purchase any office supplies and/or equipment, and employ staff and support personnel.

## III.   COMMUNICATIONS WITH THE PARTIES AND THE COURT

Rule 53(b)(2)(B) directs the Court to set forth "the circumstances – if any – in which the master may communicate *ex parte* with the court or a party." The Special Master in this proceeding may communicate *ex parte* with the Court, without notice to the parties, regarding

2

logistics and the status of his activities. The Special Master may also communicate *ex parte* with any party or any party's attorney without notice to the parties or the Court.

## IV.   SPECIAL MASTER'S RECORD

Rule 53(b)(2)(C) states that the Court shall define "the nature of the materials to be preserved and filed as to the record of the master's activities." The Special Master in this proceeding shall maintain normal billing records of costs incurred and time spent on this matter with reasonably detailed descriptions of his activities.

## V.   REVIEW OF SPECIAL MASTER'S ORDERS

Rule 53(b)(2)(D) directs the Court to state "the time limits, method of filing the record, other procedures, and standards for reviewing the master's orders, findings, and recommendations." Pursuant to Rule 53(g)(2), any party may file an objection to any report, ruling, or finding issued by the Special Master in this proceeding within 20 days of the date it was filed. The Court shall, as Rule 53(g) requires, review *de novo* all objections to such reports, rulings, or findings.

## VI.   COMPENSATION

Rule 53(b)(2)(E) states that the Court shall set forth "the basis, terms, and procedure for fixing the master's compensation." Special Master Klees shall be compensated at the rate of $275 per hour. The Court will set aside an initial budget for the Special Master of $3.5 million from the $35 million fund currently in the registry of the Court. The Court will defer making a determination as to the allocation of the Special Master's compensation and expenses among the parties at this time. *See* Transcript dated April 20, 2007 at 15.

The Special Master shall incur only such fees and expenses as may be reasonably necessary to fulfill his duties under this Order or such other Orders as the Court may issue. The Special

3

Master shall submit itemized statements of fees and expenses to the Court on the first Monday of each month. The Court shall review these statements for regularity and reasonableness, and retain them for the record. The Special Master shall attach a summary statement to each of his itemized statements. If the Court determines that an itemized statement is regular and reasonable, the Court shall endorse the summary statement and direct payment from the Special Master's budget. The Special Master may also seek and obtain reimbursement for support personnel or overhead with the Court's approval.

New Orleans, Louisiana, this 24th day of April, 2007.

**UNITED STATES DISTRICT JUDGE**

4

MINUTE ENTRY
FALLON, J.
APRIL 20, 2007

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

PATRICK JOSEPH TURNER, ET AL.        *        CIVIL ACTION

VERSUS        *        NO. 05-4206

MURPHY OIL USA, INC.        *        SECTION "L"(2)
**********************************************************

**THIS DOCUMENT RELATES TO ALL CASES**

    A status conference was held on this date in the Courtroom of Judge Eldon E. Fallon regarding constructing an appropriate process for determining the appropriate allocation of attorneys' fees and the Court's intention to appoint a special master to assist in this process. This conference was transcribed by Jodi Simcox, Official Court Reporter. Counsel may contact Ms. Simcox at (504) 589-7780 to request a copy of the transcript.

    Judge Robert J. Klees, Val Exnicios, Jean Paul Overton, Sal Gutierrez, Madro Bandaries, Dawn Barrios, Scott Bickford, Jack Martzell, Joseph Bruno, Linda Nelson, Gregory DiLeo, Hugh P. Lambert, Gerald Meunier, Ronnie Penton, Micky Landry, Jay Andry, Jr., Michael Hingle, Robert Becnel, Anthony Irpino, Diane Zink, Darleen Jacobs, Roberta L. Burns, Sidney Torres III, Scott Galante, Walter Dumas, Van Robichaux, Rebecca Cunard, Walter Leger, Jr., Walter Leger III, William Bradley, Daniel Becnel, Jr., and Bryan Pfleeger were in attendance.

    At the conference, the Court discussed its view that the three primary factors to be considered in apportioning attorneys' fees are (1) capital contributions, (2) labor, and (3) critical mass.

JS10(0:60)

EXHIBIT 2

With respect to the first factor, the Court noted that capital contributions can be broken down into two sub-categories, assessed costs and held costs, and addressed as an initial matter. The Court stated its intention to return assessed costs paid prior to the settlement of this case on October 9, 2006 to the attorneys plus a like amount (i.e. 100% interest). The Court also stated its intention to return assessed costs paid after the October 9, 2006 settlement to the attorneys who made them. Lastly, the Court stated its intention to return held costs to the attorneys after a review of supporting documentation. The Court directed liaison counsel to submit proposed orders for the Court's consideration directing such payments to be made from the fund currently being held in the registry of the Court.

The Court then proceeded to outline the procedure it envisions for allocating the remaining attorneys' fees in this case. The Court intends to appoint Judge Robert Klees as Special Master to assist with the apportionment. The Court informed the parties that it would set aside an initial budget for the Special Master not to exceed $3.5 million (or 10% of the $35 million fee) and that it would expect that the matter will be resolved not more than three years, at least at the district court level.

Lastly, the parties informed the Court there were some unpaid common-benefit cost invoices. The Court directed the parties to submit a proposed order for the Court's consideration directing a disbursement from the fund currently being held in the registry of the Court for such invoices.

Accordingly, IT IS ORDERED that the following motions filed by Michael G. Stag and Val Patrick Exnicios (members of the Plaintiffs' Steering Committee) are DENIED AS MOOT, reserving the movants' right to re-file should that be necessary: (1) Motion to Set Private

Attorneys' Fees (Rec. Doc. 1381); (2) Motion to Appoint Special Master to Allocate Common

Benefit Fees (Rec. Doc. 1382); and (3) Motion to Define Common Benefit (Rec. Doc. 1383).

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2007 MAY 22 PM 3: 29

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| PATRICK JOSEPH TURNER, ET AL | CIVIL ACTION |
| | NO. 05-4206 |
| VERSUS | CONSOLIDATED CASES |
| MURPHY OIL USA, INC. | SECTION "L" (2) |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## CASE MANAGEMENT ORDER

This Case Management Order will govern these proceedings. No amendments to this Order will be permitted.

1.

All attorneys claiming eligibility for common benefit funds ("applicants") *shall file into* the record of this case and serve upon the Special Master, counsel for the Special Master and all other common benefit fund applicants **on or before July 2, 2007** an affidavit ("common benefit fund affidavit") based upon personal knowledge of the common benefit work for which the affiant seeks payment from the fund. The affidavit shall, with particularity, list the services *performed for the common benefit of the class,* recite a description of the services performed, the number of hours spent in such common benefit service, the number of cases the common benefit counsel applicant contributed to the class action and all reasons that the applicant asserts qualifies the applicant for common benefit funds.

___ Fee_____
___ Process_____
_X_ Dktd_____
___ CtRmDep_____
___ Doc. No._____

# EXHIBIT 3

The affidavit shall include, but is not limited to, a discussion of the following factors:

    a.     A brief resume of counsels' experience pertinent to this matter;

    b.     The time and labor expended; specifically the total number of substantive hours related to assigned/authorized work;

    c.     Preclusion of other employment due to participation in the matter;

    d.     The number of status conferences and meetings attended involving meaningful participation. (Mere attendance at meetings or hearings by lawyers, associates and paralegals who did not advance common benefit efforts should be discounted);

    e.     Direct and meaningful participation in discovery efforts;

    f.     Direct and meaningful participation in retaining and working with experts;

    g.     Direct and meaningful participation in preparing pleadings, handling motion practice and conducting legal research;

    h.     Direct and meaningful participation in committee leadership positions;

    i.     Direct and meaningful participation in committee infrastructure and organizational issues;

    j.     Direct and meaningful participation in developing the litigation strategy and coordinating all litigation efforts;

    k.     Direct and meaningful participation in developing claims that needed to be asserted, developing damages and planning settlement strategy;

    l.     Direct and meaningful participation in consummating, structuring and memorializing the settlement from the initial Memorandum of Understanding to the final judicial approval;

    m.     Hearing presentations;

    n.     Use of firm staff and office facilities in connection with handling common benefit matters;

Counsel shall attach, as numbered exhibits, all documentation necessary to support the requested common benefit fund allocation.

Counsel shall state the amount requested and shall include reasons why such amount is fair and proper in the context of this matter with due reference to the factors recited in this Order and considering the other applicants.

Affidavits made "to the best knowledge and belief" will be rejected.

The submission of a common benefit fund affidavit constitutes agreement that such affidavit is part of the record.

Common benefit fund affidavits are limited to **ten (10)** double spaced pages.

2.

No later than **thirty (30)** days after the service of the common benefit fund affidavits, common benefit fund applicants may file into the record of this case, and serve upon the Special Master, counsel for the Special Master and each common benefit fund applicant, any challenges in the form of an affidavit ("challenge affidavits") to any common benefit fund affidavit. Such challenge affidavits must state the substance and the specific grounds for the challenge and the facts upon which the challenge is made.

If a challenger requires additional information to complete a challenge, the challenger must state with specificity what information is needed and the reason(s) such information is needed.

The submission of a challenge affidavit constitutes agreement that such affidavits are part of the record.

Costs will be assessed against any common benefit or challenge affiant whose claim or challenge is determined to be without merit.

Challenges are limited to **five (5)** double spaced pages.

-3-

3.

No later than **five (5)** days after the service of the challenge affidavits, any party may serve written discovery permitted by this Order. The failure to request discovery within the time period constitutes a waiver of written discovery.

4.

Any common benefit applicant or challenger may serve upon any other applicant written discovery in the form of **five (5)** written interrogatories (including sub-parts) and **two (2)** requests for production of documents. All document requests are limited to the time period of the Murphy Oil Litigation and **six (6)** months prior to September 1, 2005 for comparison.

The Special Master and counsel for the Special Master shall be served with all discovery.

Such written discovery must be answered without objection within **fourteen (14)** days of service.

5.

Any applicant may request depositions by letter directed to the Special Master, counsel for the Special Master and all applicants no later than **five (5)** days from the completion of written discovery. No formal notice is necessary. **One (1)** deposition of each applicant is permitted. Each such deposition shall be attended by either the Special Master or counsel for the Special Master. The Special Master shall publish a schedule of the dates of such depositions after review of the number of depositions requested.

At such depositions, there shall be appointed **one (1)** principal questioner selected by the attorneys (or the Special Master or counsel for the Special Master if counsel cannot agree on the choice of the questioner) who elect to take a particular deposition. Only non-duplicative follow-

-4-

up questions are permitted.  The Special Master and/or the attorney for the Special Master are permitted to ask questions.

Depositions are limited to **two (2)** hours, including breaks, unless good cause is shown at the deposition to extend the deposition.  Deponent, if unrepresented by counsel, may make a short statement in response to the questions, but such statement is limited to **fifteen (15)** minutes. If deponent has counsel present, questioning of the deponent by deponent's counsel is limited to **fifteen (15)** minutes, unless good cause is shown to extend such time.

All objections, except to the form of the question, are reserved until the deposition is sought to be used at a trial/hearing.  Only **one (1)** applicant/counsel designated by those attending shall make objections.  Objections made by one counsel are considered to have been made by all.

All deposition discovery must be completed **ninety (90) days** from the end of the written discovery period.  No extensions will be permitted.

Applicants and challengers may submit a supplemental common benefit fund affidavit and supplemental challenge affidavit within **ten (10)** days of the date of the last deposition. Supplemental affidavits are limited to **three (3)** double spaced pages.

6.

The Special Master may schedule a mediation at any point in these proceedings.

7.

After the conclusion of discovery, the Special Master will file a Preliminary Report containing proposed allocations, reasons for those allocations and appropriate findings of fact and conclusions of law.

The Special Master will notify applicants and challengers of the need for additional information or records prior to the issuance of the Preliminary Report.

8.

Objections to the Special Master's Preliminary Report shall be made within **ten (10)** days of the date of the Special Master's Preliminary Report. Such objections shall state the objections to the Preliminary Report with specificity, including the reasons and the grounds for the objection and the facts supporting the objections.

Such objection documents are limited to **six (6)** pages double spaced.

Objections to the Special Master's Preliminary Report shall be filed into the record, served upon the Special Master and counsel for the Special Master and all other applicants and challengers.

Submission of objections to the Preliminary Report constitutes agreement that such objections are part of the record.

9.

After receipt of the objections to the Special Master's Preliminary Report, the Special Master shall conduct a hearing, if necessary, to include testimony and argument on the applications, objections and challenges. The purpose of the hearing is to fully develop the record in preparation for the issuance of the Special Master's Final Report and appeal to the district judge and the U.S. Court of Appeals for the Fifth Circuit.

All applicants shall have the right to representation by counsel and to call and question witnesses. Applicants or their counsel shall be permitted to present testimony in support of an application and in support of challenges to applications. Applicants may present testimony

directly either in narrative form, or if an applicant has retained counsel, by question and answer method. Cross-examination shall be permitted, but **one (1)** cross-examiner shall be selected by the participants for cross-examination in chief. Only follow-up cross-examination will be permitted at the discretion of the Special Master. All testimony will be given under oath.

The Special Master and counsel for the Special Master are permitted to question any witness and to call witnesses.

10.

After the hearing on the Preliminary Report, the Special Master will issue a Final Report to include final allocations, reasons for allocations and appropriate findings of fact and conclusions of law.

New Orleans, Louisiana, this _22nd_ day of _May_, 2007.

_____
Hon. Robert J. Klees, Special Master
*Chief Judge Court of Appeal, 4th Circuit (Ret.)*

ND: 4832-7279-2065, v. 1

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **PATRICK JOSEPH TURNER, ET AL.** | * | **CIVIL ACTION** |
| **VERSUS** | * | **NO. 05-4206**<br>**CONSOLIDATED CASE** |
| **MURPHY OIL USA, INC.** | * | **SECTION "L" (2)** |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## ORDER & REASONS

Through Special Master Judge Robert Klees, the Court has been made aware of Michael G. Stag's Motion to Refer Common Benefit Attorneys Fee Allocation to Mediation Pursuant to Authority Granted In the Case Management Order (Rec. Doc. No. 2114) (the "Motion"),[1] as well as Michael G. Stag's Motion to Expedite Hearing (Rec. Doc. No. 2117).

The Court awarded common benefit fees and expenses of $33,746,241.88 in this case. (Rec. Doc. No. 1072). The Court appointed Special Master Klees to determine the apportionment of the common benefit fund fees among the attorneys claiming eligibility for such funds and Special Master Klees issued a case management order which laid out the process by which such determinations would be made. (Rec. Doc. No. 1667) The Case Management Order states that "[t]he Special Master *may* schedule a mediation at any point in these proceedings." *See* Rec. Doc. No. 1667, p.5 ¶ 6 (emphasis added).

Special Master Klees filed the Case Management Order on May 22, 2007. To date, all common benefit fund applicants have filed their common benefit fund affidavits, as defined in the Case Management Order, all challenge affidavits have been filed, discovery has been

---

[1] Val P. Exnicios and the law firm of St. Martin, Williams & Bourque have filed notices of joinder to the Motion. *See* Rec. Doc. Nos. 2122 & 2123.

EXHIBIT 4

propounded on the common benefit fund applicants, and depositions have been taken. Pursuant to the Case Management Order, the next step is for Special Master Klees to issue his Preliminary Report. After close to six months, and considering the fact that the discovery in this matter is complete, the Court will deny Mr. Stag's motions. There has been sufficient time for the common benefit fund applicants to resolve the fee allocation matter, and the Court will not allow the applicants to circumvent the Special Master's process at the 11th hour.

Accordingly, Michael G. Stag's Motion to Refer Common Benefit Attorneys Fee Allocation to Mediation Pursuant to Authority Granted In the Case Management Order (Rec. Doc. No. 2114) as well as Michael G. Stag's Motion to Expedite Hearing (Rec. Doc. No. 2117) are DENIED.

New Orleans, Louisiana, this 28th day of November, 2007.

UNITED STATES DISTRICT JUDGE

MINUTE ENTRY
FALLON, J.
APRIL 11, 2008

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| PATRICK JOSEPH TURNER, ET AL. | * | CIVIL ACTION |
| VERSUS | * | NO. 05-4206 |
| | | CONSOLIDATED CASE |
| MURPHY OIL USA, INC. | * | SECTION "L" (2) |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**THIS DOCUMENT RELATES TO ALL CASES**

     A status conference was held on this date in the Chambers of Judge Eldon E. Fallon. The Court met with Special Master Judge Robert Klees to discuss the Special Master's Preliminary Report regarding the allocation of the common benefit fund. Special Master Klees delivered to the Court a copy of his Preliminary Report.

     IT IS ORDERED that Special Master Judge Robert Klees' Preliminary Report be entered into the record. All counsel are reminded that pursuant to Special Master Klees' Case Management Order, any objection to the Preliminary Report must be made within ten (10) days of the date of the report. These objections are to be served upon the Special Master and counsel to the Special Master. After receipt of any objections, Special Master Klees shall hold a hearing, if necessary, and the Special Master shall issue a Final Report. Upon the issuance of the Special Master's Final Report, the Court will enter the Final Report onto the record and will set a period for parties to object to the Special Master's Final Report pursuant to Federal Rule of Civil Procedure 53(f).

JS10(00:20)

-1-

___ Fee_____
___ Process_____
_X_ Dktd_____
___ CtRmDep_____
___ Doc. No._____

EXHIBIT 5

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

PATRICK JOSEPH TURNER, ET AL           CIVIL ACTION

                                       NO. 05-4206

VERSUS                                 CONSOLIDATED CASES

MURPHY OIL USA, INC.                   SECTION "L" (2)

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## PRELIMINARY REPORT OF THE SPECIAL MASTER

*Background*

On January 30, 2007, the District Court approved the settlement of this class action and granted the Plaintiffs' Steering Committee (PSC)'s Motion for Common Benefit Fees and Expenses. *Turner v. Murphy Oil USA, Inc.*, 472 F.Supp.2d 830 (E.D. La. 2007). The court determined that a common benefit fee award of $33,746,241.88 was appropriate, plus $2,659.043.00 in expenses with legal interest on these amounts until paid in full. The parties subsequently agreed that Murphy would satisfy this obligation by depositing $35 million into the registry of the Court. This was done.

The court allowed the PSC an opportunity to apportion the fee award among themselves. After receiving communication from some of the PSC members, the Court, on April 24, 2007, appointed Retired Judge Robert J. Klees as Special Master to assist with the apportionment of the $35 million fee award.

On May 2, 2007 the Special Master issued an order for a meeting on Monday, May 14, 2007 to all counsel who had a claim to the common benefit fund. The purpose of the meeting was to discuss the factors that counsel suggest the Special Master consider in allocating common benefit funds and the formulation of a Case Management Order. Counsel were invited to submit written proposals prior to the meeting.

The meeting was held and the Special Master heard comments from the various PSC claimants.

### The Case Management Order

On May 22, 2007 a Case Management Order was issued. (Exhibit "A" attached.) It specifically ordered that all attorneys claiming eligibility for common benefit funds file into the record with service on the Special Master, counsel for the Special Master and all other common benefit fund applicants on or before July 2, 2007, an affidavit based upon personal knowledge of the common benefit work for which the claimant seeks payment from the fund. It ordered that the affiant list with particularity the services performed for the common benefit of the class, recite a description of the services performed, number of hours spent in such common benefit services, the number of cases the common benefit counsel contributed to the class action and all reasons the applicant qualified for common benefit funds.

The CMO included, but did not limit, common benefit applicants from addressing the factors recited in *Johnson v. Georgia Highway Express, Inc.,* 88 F.2d 714, 717-719 (5th Cir. 1974).

Sworn challenges to the affidavit submissions were allowed no later than 30 days after service of the common benefit fund affidavits.

Five days after service of the challenge affidavits, all parties were permitted to serve written discovery, which was to be answered within 14 days of service.

Any applicant was permitted to request depositions as was the Special Master and/or his counsel. Twenty-two depositions were noticed and taken, at which all applicants were given the opportunity to question the deponents. The deponents were given the opportunity to make a short statement in response to the deposition questions. Thereafter, applicants and challengers were permitted to file supplemental common benefit fund affidavits and supplemental challenge affidavits.

The Special Master, in accordance with the District Court's instructions, provided the applicants and any challengers to the applicants ample opportunity to present any issues and to raise objections.

The Special Master was at all times cognizant of counsels' due process rights. No applicant or challenger has raised due process issues to date.

***Methodology and Allocations***

Attached as Exhibit "B" are the Special Master's recommended preliminary allocations. The Special Master reviewed each and every common benefit fund affidavit, each and every challenge affidavit, each and every written discovery request and response, each and every deposition and each and every supplemental common benefit affidavit and supplemental challenge affidavit. The Special Master, after considering all of the evidence, recommends that the Court adopt the allocation schedule attached as Exhibit "B."

The Special Master is well aware of the criteria set forth by the United States Court of Appeals for the Fifth Circuit, in particular, in ***Johnson v. Georgia Highway Express, Inc.***, 448

F.2d 714 (5th Cir. 1974) and the considerations set forth in Rule 1.5 of the Louisiana Code of Professional Responsibility.  In the CMO, the Special Master set out the factors that would guide the allocation process.  See p. 2 of the CMO attached as Exhibit "A."  The Special Master focused on whether an applicant's work directly and meaningfully contributed to the common benefit of the class and ultimate resolution of this case and whether an applicant's direct and meaningful contribution yielded positive results.  This matter, of enormous importance not only to the plaintiffs in this case, but to their counsel and to this Court, required an enormous contribution of time, energy and talent.  It is clear from reviewing the evidence submitted that all counsel involved in this process, from the members of the Executive Committee, the Plaintiffs' Steering Committee and counsel who participated in the sub-committees, used their very best efforts.  Consequently, the allocations that constitute the findings of the Special Master should be viewed as essentially a forced ranking for purposes of allocating fees fairly and adequately.  The Special Master used both objective and subjective factors to come to a fair allocation of the fees.  In doing so, it became obvious that there were levels of contribution to the common benefit.  Consequently, the Special Master created levels of relative contribution and, then, reviewed the contributions of each member included in the various levels.  The classification levels and the allocation amounts reflect a part objective, part subjective process of fee allocation.

Considerable efforts were taken to reward counsel whose contributions might not have been reflected by hours expended in the pursuit of this matter, as was considerable effort to discount, appropriately, hours spent reviewing emails, pleadings and correspondence that were simply duplicative and that did not substantially contribute to the common benefit and resolution

of the case. Consequently, the hours submitted by the common benefit applicants may not reflect the true contribution of those individuals.

In summary, considering all of the *Johnson* factors, the considerations set forth in the CMO, the knowledge gleaned from the Common Benefit Affidavits, the deposition testimony of the applicants, the Challenge Affidavits and the Special Master's twenty years of experience on the bench, were all utilized in reaching a just conclusion.

### The Challenge Affidavit of Val P. Exnicios

Val P. Exnicios submitted a challenge affidavit in which he claims that Dominic J. Gianna, counsel for the Special Master, was biased and prejudiced apparently because of the questioning of Mr. Exnicios in his deposition.

The Special Master has carefully reviewed the deposition of Mr. Exnicios taken by Mr. Gianna and finds that the claims in Mr. Exnicios' Challenge Affidavit are without foundation. Mr. Exnicios, during the meetings with the Special Master and counsel for the Special Master, expressed concern over whether the common benefit applicants and challengers would be afforded due process rights. As a result, counsel for the Special Master asked Mr. Exnicios whether, indeed, he believed he had been afforded due process. That question was not improper in any way. Likewise, the remainder of the deposition questions asked by counsel for the Special Master were appropriate, especially in light of the tendency of Mr. Exnicios to provide answers well beyond the scope of the questions. Counsel for the Special Master was at all times respectful and courteous to all deponents, including Mr. Exnicios.

If Mr. Exnicios had objections to any of Mr. Gianna's questions, he could have made those objections at the deposition. He failed to do so. The depositions were taken in the

courtroom of United States District Judge Eldon E. Fallon. At any time during the deposition questioning, Mr. Exnicios could have requested a hearing by a Magistrate Judge, the Special Master or the District Judge. Mr. Exnicios failed to do so. Consequently, the claims made in Mr. Exnicios' Challenge Affidavit, are without any foundation and are untimely.

Because of the nature of the allegations and the fact that the allegations are without any basis, the Special Master recommends that the District Court strike Mr. Exnicios' Challenge Affidavit from the record.

### Level 1

### Mr. Sidney D. Torres, III

Mr. Sidney D. Torres, III served as Liaison Counsel and was a member of the Executive Committee. Mr. Torres was the key factor in the amazingly fast resolution of this case. He deserves the praise and thanks of the Court, counsel and the members of the class. Without Mr. Torres, this matter would not have been resolved the way it was and when it was. He provided the motivation, enthusiasm and knowledge based upon his many years of participation as a member of various Executive Committees and Plaintiffs' Steering Committees in matters such as this one. His involvement from filing of the cases through resolution was invaluable. He worked extensively with all of the experts and contributed over 750 cases to the common benefit class. He was involved in each and every aspect of the case from filing to settlement. Mr. Torres participated in every substantive meeting and conference, reviewed most every document, helped to develop the litigation and settlement strategies, coordinated litigation and settlement efforts, assisted in settling the case and, in short, was the driving force behind this litigation.

Mr. Torres also managed the Executive Committee and the very large PSC effectively. A review of his time sheets shows that he personally logged 3,102 hours of time in this matter. His co-counsel, Ms. Roberta Burns, logged 1,933 hours. His staff also contributed 2,820 hours to this effort.

The Special Master finds that a fee allocation of $4,730,000 will fairly compensate Mr. Torres for his remarkable efforts.

### Level 2

### *Gerald P. Meunier, Hugh P. Lambert, Joseph M. Bruno*

The evidence submitted to the Special Master shows that three counsel contributed significantly to the common benefit of the class and the prompt resolution of the matter. As a result, counsel in the second level have been allocated the second highest fees. Their contributions were exceeded only those of Mr. Torres.

#### *Gerald P. Meunier*

Mr. Meunier was a member of the PSC and head of the Law Committee. He worked with Mr. Kilpatrick on property evaluation issues and contributed approximately 2,797 cases to the common benefit, along with Mr. Torres and Mr. Jay Andry.

As Chair of the Law Committee, he prepared and argued all motions before the court on behalf of the class. Mr. Meunier and his firm did the research behind most of the pleadings filed in the case, attended every conference and meeting with Judge Fallon and presented the plaintiffs' case at the focus groups and at the mediation focus group presentation.

Mr. Meunier's contributions were all direct and meaningful and encompassed every aspect of this case. His contribution, like the contributions of all of the members allocated fees

in this matter, fit squarely within the *Johnson* factors and the other considerations set forth in the CMO. Mr. Meunier's contributions were exceeded only by those of Mr. Torres' contributions to the prompt resolution of this matter.

Mr. Meunier's hours are all related to the common benefit. As the face of the PSC in court, as the developer of major strategies that were converted into causes of action, it is clear that Mr. Meunier's contribution was enormously important and deserves a fee allocation of $2,910,000 as a fair and appropriate sum.

The Special Master finds that a fee allocation of $2,910,000 is fair and appropriate.

### Hugh P. "Skip" Lambert

Mr. Lambert was a member of the PSC and the Science and Expert Committee. He worked with over 25 experts in various fields and prepared these experts to testify at deposition and if a trial had been needed.

He also contributed approximately 39 cases to the common benefit class.

Mr. Lambert was designated lead counsel in 31 depositions and was actively present at 13 others. His partner, Linda Nelson, attended two depositions. Mr. Lambert devoted his entire law firm to this case. His firm reviewed 23,000 documents, donated his law offices to this case, dealt with the experts in the science of oil fingerprinting, assisted in developing the litigation strategy, prepared to examine witnesses at the Class Certification Hearing, coordinated the sampling of soils in the St. Bernard area affected by the spill, used his staff and office for over 55 meetings, gathered data from Impact Weather, inspected the tank involved in this case on 12 occasions, drew maps of the affected areas, proposed the class boundaries, worked with surveyors, functioned as a second document depository, worked on remediation plans, assisted

with video clips for the production of a DVD and developed metallurgical assessment of failure analysis protocols. Mr. Lambert also offered the PSC the use of his private aircraft.

Mr. Lambert's law firm's timesheets are exceptionally well described. He devoted over 2,040 hours to the matter and his firm contributed an additional 2,289 hours to this case. 179 hours of staff time were also clearly related to this case.

Mr. Lambert was no doubt a major contributor to the success of this litigation and his common benefit work was outstanding. Mr. Lambert's contribution was exceeded only by those of Mr. Torres and Mr. Meunier.

The Special Master finds that a fee allocation of $2,700,000 is fair and appropriate based upon the evidence submitted.

### *Joseph M. Bruno*

Mr. Bruno was a member of the PSC and the Discovery and Trial Committees. Mr. Bruno first chaired 20 critical depositions and second chaired 10 others. Mr. Bruno had a large role in deposing the defense experts. He guided the direction of the case and assisted in the development of the litigation strategy. He also coordinated the litigation efforts of the PSC.

Mr. Bruno received and coordinated thousands of pages of documents from Murphy Oil Company, took the corporate deposition of Murphy Oil and developed a strategy to defeat Murphy's "empty chair" defense. Mr. Bruno also deposed the Army Corps of Engineers and the Murphy experts on the MRGO failure. He deposed the Murphy executives and established, through them, that Murphy might not have been forthright about the size of the spill.

Mr. Bruno's time sheets indicate that he worked 2,088 hours and his firm associates worked 701 hours. His paralegals contributed 229 hours to the common benefit.

It is clear from the evidence that Mr. Bruno was in charge of the discovery efforts and guided the deposition process. The Special Master finds that his work with the depositions of the defendant was a key to attacking the Murphy defenses and pushing the defendant to a settlement.

Mr. Bruno's contributions contributed directly to the prompt resolution of this case and his contributions are exceeded only by those of Mr. Torres, Mr. Meunier and Mr. Lambert.

The Special Master finds that a fee allocation of $2,520,000 will fairly compensate Mr. Bruno for his outstanding efforts.

### *Level 3*

### *Jerald N. (Jay) Andry, Jr., Mickey P. Landry, Salvador E. Gutierrez, Jr.,*

### *Scott R. Bickford, Ronnie G. Penton*

The Level 3 counsels' contributions substantially contributed to the common benefit and were exceeded only by the contributions of the Level 1 and Level 2 counsel.

### *Jerald N. (Jay) Andry, Jr.*

Jay Andry was the co-chair of the Proof of Claims Committee. He worked with experts Todd Hilsee and Danny Clavier.

Mr. Andry contributed approximately 900 cases to the critical mass with Mr. Torres and Mr. Meunier.

Mr. Andry headed the claims office. He worked to develop the proof of claim forms, worked with the individual plaintiffs to translate their claims into something that could be included in the class. Mr. Andry supervised the other attorneys who assisted at the claims office, worked with Global Risk Solutions, the court's dispersing agent and participated in the notice hearing. Mr. Andry defended approximately 12 depositions of his own clients, prepared his

clients for depositions, acted as lead counsel in one deposition and participated as second chair in five depositions. Mr. Andry also trained attorneys to work in the claims office.

Mr. Andry submitted 2,518 hours for the attorneys of his firm who worked on the case.

Mr. Andry's work for the common benefit was extraordinarily valuable. Without the claims of the class members, there would have been no class.

The Special Master allocates a fee of $1,920,000 to Mr. Andry as fair and appropriate.

### *Mickey P. Landry*

Mr. Landry was a member of the PSC and the Settlement Committee.

Mr. Landry contributed 44 cases to the critical mass.

Mr. Landry filed the first class action against Murphy. He worked on insurance and fault allocation issues, but his work on the settlement process almost from inception contributed enormously to the common benefit. Mr. Landry determined Murphy's excess liability coverage, devised a motion to exclude evidence of the fault of the Corps of Engineers after a previous motion had failed, worked on the settlement order and, most significantly, worked with mortgage lenders regarding liens on settlement funds for the benefit of the class.

Mr. Landry worked approximately 1,546 hours. Although some of the time entries are not described with particularity, the Special Master is convinced that all of the hours were for the common benefit. Mr. Landry's work in helping to create the zones of the affected areas and negotiating with the defendant and the mortgage lenders was of significant benefit to the class. Mr. Landry continues to work with members of the class.

The Special Master allocates a fee of $1,840,000 to Mr. Landry as fair and appropriate.

### *Salvador E. Gutierrez, Jr.*

Mr. Gutierrez was a member of the PSC.

Mr. Gutierrez contributed 110 cases to the critical mass.

His work involved interviewing eyewitnesses for the class certification hearing.  He also performed factual investigation of the oil spill, worked to resolve interventions filed by the mortgage lenders, determined the proper clean-up protocol for the properties and worked out the demolition and debris removal issues with St. Bernard Parish authorities.  Mr. Gutierrez worked in and supervised the claims office.  His work furthered the settlement of this case by assisting in the establishment of the settlement zones.  He also worked to develop the proof of claim forms, helped with the mediation process and overall, provided a voice to and for the residents of St. Bernard Parish.  He attended two important depositions.

Mr. Gutierrez's hours approximated 775 for himself and his law partner.

The Special Master finds that Mr. Gutierrez's work was directly and meaningfully beneficial to the common benefit and, in fact, was vital to keeping the class together.

The Special Master allocates a fee of $1,770,000 to Mr. Gutierrez as fair and appropriate.

### *Scott R. Bickford*

Scott Bickford was a member of the PSC and the Trial and Settlement Committees.  Mr. Bickford acted as lead counsel in 8 depositions and attended 10 other depositions.

Mr. Bickford contributed approximately 182 cases to the critical mass.

Mr. Bickford's work on the trial committee was exceptional.  The contributions of Mr. Bickford and Mr. Penton toward the creation and the implementation of the trial strategy in this case were enormous.  Mr. Bickford is an accomplished trial lawyer and the evidence of trial

preparation can be seen in the mediation jury presentation prepared by the trial and settlement teams presented by Mr. Meunier, Mr. Penton and Mr. Bickford. Mr. Bickford's contribution to the strategy and ultimately the settlement of this case deserves special consideration and clearly benefited the class.

Mr. Bickford took photos and videos of the Murphy property, did FOIA requests, worked on public information websites, coded discovery documents, and filmed, edited, directed and produced the video used at the mediation presentation. Mr. Bickford prepared for the mock trial and participated in the mock trial. He also performed legal briefing on the Army Corps of Engineers fault issue, drafted motions in limine and prepared an exhibit list for trial.

Mr. Bickford's office coded and maintained a 67,000 plus page document database. He worked hand and hand with Mr. Penton on the final trial strategy and helped draft the pre-trial order.

Many attorneys in Mr. Bickford's firm assisted him with these tasks. In general, the timesheets submitted were very well described. Mr. Bickford's firm contributed 3,406 hours to the common benefit, of which 1,328 were for paralegal or staff time.

In view of Mr. Bickford's major contribution to the settlement of the case, the Special Master allocates a fee of $1,590,000 to Mr. Bickford as fair and appropriate.

### *Ronnie G. Penton*

Mr. Penton's contribution to the common benefit mirrored Mr. Bickford's. As a member of the PSC and the Trial Team, Mr. Penton co-chaired the Trial Team and was responsible for the creation of the trial strategy, a strategy that ultimately led to the settlement of this matter. Mr. Penton is an accomplished trial lawyer and the evidence of his preparation can be seen in the

mediation jury presentation prepared by the trial and settlement teams and presented by Mr. Penton and other members of his team.  Mr. Penton's contribution to the common benefit is therefore very significant.

Mr. Penton contributed 10 cases to the common benefit class.

He participated in four plant inspections, investigated plant policies and procedures, crude oil supplies, the design and maintenance of the tank in question, Murphy hurricane procedures and storm surge flooding procedures.  He co-authored many important pleadings and, in effect, coordinated the entire litigation so that the case was ready for trial in a very short period of time.  He did this along with Mr. Bickford and the other members of the trial team. Mr. Penton acted as lead counsel in 8 depositions and attended 10 other depositions.

Mr. Penton presented the plaintiffs' case for the focus groups and created the visual aids for the mediation presentations.   He worked with Mr. Bickford on the mediation video presentation that directly led to the settlement of this matter.

Mr. Penton's time sheets are well described and show approximately 1,750 hours worked by Mr. Penton.

Mr. Penton's contribution to the common benefit of the class was significant.

The Special Master allocates a fee of $1,523,000 to Mr. Penton as fair and appropriate.

### Level 4

### Daniel E. Becnel, Jr., Richard J. Arsenault, Anthony D. Irpino

The contributions of counsel in Level 4 also directly and meaningfully contributed to the settlement of the case; these contributions, however, were less significant when compared to the contributions of the Level 1, 2 and 3 counsel.

*Daniel E. Becnel, Jr.*

Mr. Becnel was a member of the Executive and the Expert Committees. He retained and worked with Drs. Fthenakis, Sago, Cone, Brautbar, Ginzberg, Kilpatrick, Jacobus, Wilson and Templet, and with Mr. Lieberman, Mr. Miller, Professor Ciolino, Mr. Stan Guidry, Mr. Charles Duhon, Mr. Frank Willis, Mr. Alan Schuete, Mr. Pat Sellars and Mr. Dave Barnes, a meteorologist.

Mr. Becnel contributed 47 cases to the class.

Mr. Becnel took a helicopter tour of Murphy Oil with Messrs. Lambert, Penton, Torres and Bruno. His office performed legal research and Mr. Becnel's attorneys assisted attorneys who were displaced with office space and equipment. He helped formulate the PSC, filed a Motion to Consolidate and, during the important first phase of the case, inspected the tank with his experts. Mr. Becnel also handled the accounting and levied assessments during the case.

Mr. Becnel worked on the litigation strategy, pleadings, experts' depositions, finances, and formulated the logistics for the selection of experts and participated in settlement negotiations. He also worked on the video used at the mediation presentation, attended status conferences and met regularly with the Executive Committee. He provided employees to the claims office.

Mr. Becnel's time sheets totaled 816 hours. He also submitted time sheets for his son, Mr. Darryl Becnel, in the amount of 457 hours. Other members of his staff worked for the common benefit. In total, Mr. Becnel's office submitted time in the amount of 3,464.

Mr. Becnel was a major contributor to the settlement of this case.

The Special Master allocates a fee of $1,220,000 to Mr. Becnel as fair and appropriate.

*Richard J. Arsenault*

Mr. Arsenault was a member of the Executive Committee and also worked with the Damages, Trial, Expert and Settlement Committees.

Mr. Arsenault hired expert Frank Willis and worked with experts Arthur Miller, John Kilpatrick, Charles Duhon, Jack Pardue, Dr. Bea and Mr. Todd Hilsee.

Mr. Arsenault's firm contributed 61 cases to the critical mass.

Mr. Arsenault's common benefit work amounted to legal research regarding discovery from class members, the Act of God defense, *Daubert* standards and comparative fault. He drafted Motions for Summary Judgment, *Daubert* motions and motions in limine. At the class certification hearing, Judge Fallon adopted his argument regarding proper *Daubert* standards. Mr. Arsenault took part in discovery and assisted in formulating a trial strategy. He assisted in drafting the Memo of Understanding concerning the settlement of this case and worked on the mediation and settlement of the matter.

Mr. Arsenault's time sheets are well described; however, a large part of the time logged was devoted to email review that did not meaningfully contribute to the settlement. Mr. Arsenault submitted 2,827 hours for his entire office. 1,512 hours of that time was time logged by his associates.

The Special Master finds that Mr. Arsenault's role in this litigation was more of a supervisory one than an active role when compared to the other members of the Executive Committee and the PSC. Mr. Arsenault's work, as evidenced by his Affidavits, however, convinces the Special Master that a fee allocation of $950,000 for Mr. Arsenault as fair and appropriate.

*Anthony J. Irpino*

Mr. Irpino is a member of the PSC, a Chair of the Class Action and Class Representation Committee and a member of the Damages Committee.

Mr. Irpino contributed 9 cases to the critical mass.

He helped to locate and retain the property diminution experts.

He oversaw and handled matters relating to class membership and the 26 named plaintiffs. He performed legal research for the Law Committee, worked on the Damages Committee and worked in the claims office. He also worked on the Class Communication Committee.

Mr. Irpino's hours, after revision subsequent to his deposition, amount to approximately 1,900 hours spent. Although much of the time is for reviewing emails and pleadings, his descriptions of the tasks are well described and his work, as evidenced by his affidavit and his deposition, convinces the Special Master that his contribution was significant.

The Special Master also finds that Mr. Irpino was an active member of the PSC. Although he did not perform a leadership role, contributions to the common benefit were important.

The Special Master allocates a fee of $680,000 to Mr. Irpino as fair and appropriate.

### Level 5

### Robert Becnel, E. Carroll Rogers,

### Val P. Exnicios, Walter Leger

The Level 5 counsel made important contributions to its settlement of this case, but to a degree less than the Level 1 through 4 counsel.

### Robert M. Becnel

Mr. Robert Becnel was co-chair of the Proof of Claims Committee and a member of the PSC.

Mr. Becnel contributed 7 cases to the class.

Mr. Becnel worked with experts Drs. Sajo, Kilpatrick, Templet, Wilson and Messrs. Duhon and Kaltofen.

Mr. Becnel also worked with class representatives and fact witnesses. He participated at most of the 87 depositions taken of the class members and assisted Mr. Andry in the organization of the claims office. He supervised 18 attorneys and 12 staff members at the claims office and met with many of the claimants. He also helped many of the St. Bernard residents to file their claims.

Mr. Becnel also worked on complicated issues regarding land ownership and determining exactly who the claimant was. He notarized claim forms and advised Global Risk. He participated in all court proceedings, PSC meetings and focus groups. He also worked with Governor Blanco to make sure the Road Home money would not be offset by any settlement with Murphy Oil Company.

Mr. Becnel submitted only time summary sheets. His time amounts to approximately 621 hours. Mr. Jay Andry testified about Mr. Becnel's involvement in the claims office and his work there and his testimony assisted the Special Master in understanding Mr. Becnel's role.

Mr. Becnel, along with Mr. Jay Andry, was involved in a very critical part of the litigation, the claims process. The work of Mr. Becnel and Mr. Andry at the claims office was vital in keeping the settlement in place because only 360 opt out claims were permitted by the

Court.  The work at the claims office was difficult because everyone who came there to make a claim had a different situation that needed sorting out.  Therefore, Mr. Becnel's contribution to the settlement effort was substantial.

The Special Master allocates a fee of $600,000 to Mr. Becnel as fair and appropriate.

### E. Carroll Rogers

Ms. Rogers was a member of the PSC and the Damages Committee.

Ms. Rogers contributed 30 cases to the common benefit.

Ms. Rogers worked with damages experts Drs. Bianchini, Giuvier, Greve, Ginsburg, Shwery and Kilpatrick.

As a member of the Damages Committee, Ms. Rogers researched damage issues and worked with others on the committee to come up with a damages plan.  She also worked on locating a witness to be in the mediation video.  Ms. Rogers took many photos of the affected area that were to be used at the damages portion of the trial.  She also worked in the claims center assisting them with claims forms and answering questions posed to her regarding the litigation.  Ms. Rogers also worked in the call center answering calls from potential claimants.

Ms. Rogers' time is exceptionally well-described and includes time submitted by her office staff.  Ms. Rogers' time amounted to 534 hours.  The Special Master finds that Ms. Rogers' contributions were important and contributed to the resolution of the case.

The Special Master allocates a fee in the amount of $580,000 to Ms. Rogers as fair and appropriate.

### Val P. Exnicios

Mr. Exnicios was a member of the Executive Committee.

Mr. Exnicios contributed no cases to the critical mass.

Mr. Exnicios worked with experts Drs. Penland, Bianchini and Kilpatrick.

Mr. Exnicios organized the first list of plaintiff attorneys that were interested in suing Murphy and organized the first teleconference with the Court regarding formation of the PSC. He worked on drafting of pleadings, approving discovery efforts, retaining and working with experts, developing litigation strategy, approving common benefit assignments and working on s settlement strategy. He supervised the Damages Committee and the Class Action Committee, as well as the Law Committee when Donnie Young was in charge of the Law Committee.

Mr. Exnicios submitted 1,826 hours as time expended on this case and 40 hours submitted for his associates' time.

Mr. Exnicios' time is well-described, but the time spent is primarily for review of emails and pleadings.

The Special Master finds that Mr. Exnicios' role in the litigation was much less than the other members of the Executive Committee and the PSC and was mainly supervisory in nature. It is obvious from his time sheets and his deposition testimony that his participation was not on the level of either the other Executive Committee members or the members of the PSC. Mr. Exnicios made no significant contributions to the resolution of the matter not made by other counsel and his contribution did not differ from those made by other counsel. He monitored the case much more than he participated in it.

The Special Master allocates a fee of $558,000 to Mr. Exnicios as fair and appropriate.

***Walter J. Leger, Jr.***

Mr. Leger was a member of the PSC.

Mr. Leger contributed 88 cases to the critical mass.

Mr. Leger's common benefit work amounted to legal research, investigation, site inspection and work at the claims office.  Mr. Leger submitted in his affidavit 398 hours of time expended in prosecution of this matter.  His work was important in moving the matter to trial and, ultimately, settlement.

The Special Master allocates a fee of $525,000 to Mr. Leger as fair and appropriate.

### Level 6

### Michael G. Stag, Darlene M. Jacobs, Conrad S. P. (Duke) Williams, III,

### Diane K. Zink, Gregory P. DiLeo, Dawn M. Barrios, Madro Bandaries

The Level 6 counsels' work contributed to the resolution of the case; however, the contributions of counsel at this level were degrees less than Levels 1 through 5.  Some of the work of counsel in Level 6 was duplicative and supervisory in nature rather than the kind of original work that characterized Level 1 through 5 counsels' efforts.

### Michael G. Stag

Mr. Stag was a member of the Executive Committee.

Mr. Stag contributed 53 cases to the critical mass.

Mr. Stag retained Mason Stevenson to do a soil sampling and also retained Dr. Pardue. He worked with Dr. Kaczmar.

Mr. Stag attended committee meetings and conferences and worked on drafts of discovery to Murphy Oil Company.  He was lead attorney in one deposition and attended a small number of others.  He interviewed first responders, following the incident, to develop the facts of

the case.  He also researched topics for the common benefit and worked with the expert committee.  He produced a damage model and worked on settlement of the case.

Mr. Stag's time is very poorly reported.  His associate's time is also poorly reported.  Mr. Stag submits 905 hours as the time expended on this matter.

The Special Master finds that Mr. Stag's involvement in the case was not in any way equal to the involvement of either the other members of the Executive Committee or the members of the PSC.  It is clear that he monitored the case much more than he participated in it; as such, his contributions to the common benefit were relatively small and those contributions did not differ from those made by other counsel.

The Special Master allocates a fee of $400,000 to Mr. Stag as fair and appropriate.

### Darlene M. Jacobs

Ms. Darlene Jacobs chaired the Damages Committee.

Ms. Jacobs contributed 13 cases to the critical mass.

As Chair of the Damages Committee, she developed 30 areas of potential damages and worked with the plaintiffs' damage experts.  Ms. Jacobs submitted 381 hours of time expended on this matter.

Ms. Jacobs' contribution to the settlement of the case was important, but was of a magnitude less than counsel in Levels 1 through 4.

The Special Master allocates a fee of $375,000 to Ms. Jacobs as fair and appropriate.

### Conrad S. P. (Duke) Williams, III

Mr. Williams was a member of the Trial Committee.

Mr. Williams contributed 15 cases to the critical mass.

Mr. Williams helped to prepare class counsel to take and defend depositions of the senior officers and managers of Murphy Oil Company.  He worked with Mr. Martzell in developing the motion in limine to exclude the fault of the United States Army Corps of Engineers.  Associates of his firm spent many hours working at the claims office.

Mr. Williams submitted 365 hours as time expended on this matter.  154 hours were submitted for his associate spent on this matter.

The Special Master allocates a fee of $350,000 to Mr. Williams as fair and appropriate.

### Diane K. Zink

Ms. Zink was a member of the Proof of Claims Committee.

Ms. Zink contributed no cases to the critical mass.

Ms. Zink worked at the claims office and advised class members of their rights and responsibilities.  She assisted in getting the claims filed, and summarized 15 depositions and participated in some court hearings.

Ms. Zink submitted approximately 505 hours as time expended for the common benefit of the class.  That time was well-described.  The other time submitted is poorly documented and poorly described.

Ms. Zink worked at the claims office and did good work there.  However, she was not in a leadership role in this position.

The Special Master allocates a fee of $310,000 to Ms. Zink as fair and appropriate.

### Gregory P. DiLeo

Mr. DiLeo served on the Discovery Committee.

Mr. DiLeo contributed no cases to the critical mass.  When potential clients called his office, he referred them directly to Mr. Torres.

As a member of the Discovery Committee, he put together plaintiff deposition packets. These packets included information needed by the plaintiffs to be prepared for their depositions. He wrote all the instructions for the packets and, along with Jay Andry, met with clients to prepare them for their depositions.  He tracked the depositions and coordinated the appearances of counsel.  Mr. DiLeo also worked in the phone center answering calls from clients.  He reviewed CD's of documents and coded the documents into a spread sheet.

Mr. DiLeo submitted 500 hours as time expended for the common benefit.  Most of his time is well described.

Mr. DiLeo's work aided the common benefit, but he was not in a leadership position.

The Special Master allocates a fee of $300,000 to Mr. DiLeo as fair and appropriate.

### Dawn M. Barrios

Ms. Barrios participated as a member of the Settlement and Damages Committees.

Ms. Barrios' firm contributed 48 class members to the critical mass.

Ms. Barrios was involved with experts Drs. Bianchini, Ginsberg, Giuvier, Greve, Kilpatrick, Mulhern, Penlend, Shwery, Thrupe and Messrs. Krouse and Spiess.

Ms. Barrios worked on the preparation of the Master Complaint and toured the Murphy site with remediation experts.  She researched and prepared pleadings regarding the defendant's contact with class members, and researched matters concerning the class certification case management order.  Ms. Barrios worked with Mickey Landry to create maps of the contaminated areas and her work on the Damage Committee resulted in the identification of over 30 areas of

potential damages. Ms. Barrios also researched the damage issues and did quantum work for those damages. She also coordinated efforts for a meeting of the class plaintiffs to prepare before their depositions. Ms. Barrios also worked with focus groups in various states.

Ms. Barrios submitted approximately 257 hours of time expended on this matter. Her time is well documented and all time appears to be for the common benefit. However, Ms. Barrios' work, although it contributed to the common benefit, was not as critical as the work contributed by members of the PSC.

The Special Master allocates a fee of $258,750 to Ms. Barrios as fair and appropriate.

### Madro Bandaries

Mr. Bandaries was a member of the PSC and the Discovery Committee.

Mr. Bandaries contributed 3 cases to the critical mass.

Mr. Bandaries gathered evidence for filing the initial suit and consulted with some original plaintiffs.

Mr. Bandaries submitted 927 hours of time as time expended for the common benefit. 497 hours are for Mr. Banderies himself. It appears of the 927 total hours submitted, 597.5 hours are not for the common benefit. Of Mr. Bandaries' 497 hours, 193 hours are not for the common benefit.

Mr. Bandaries' work on the Discovery Committee was not extensive. Most of his work involved reviewing pleadings.

The Special Master allocates a fee of $223,650 to Mr. Bandaries as fair and appropriate.

### Level 7

### J. Van Robichaux, Jr., Mark P. Glago, Jessie L. Wimberly, IV,

### Rebecca A. Cunard, William E. Bradley, Benjamin D. Beychock,

### Walter C. Dumas, Bruce C. Betzer

The Level 7 counsels' contributions consisted of work necessary to prepare the case but that work was not as critical as the work performed by Level 5 and 6 counsel.

#### J. Van Robichaux, Jr.

Mr. Robichaux had no committee assignments.

Mr. Robichaux contributed 45 cases to the critical mass.

Mr. Robichaux submitted 22.5 hours as work done for the common benefit through his affidavit.

The Special Master allocates a fee of $165,000 to Mr. Robichaux as fair and appropriate.

#### Mark P. Glago

Mr. Glago was not appointed to any committee.

Mr. Glago submitted 9 cases with Mr. Irpino to the critical mass.

Mr. Glago's work consisted of fact gathering, assisting in the preparation of the overall litigation strategy, analysis of claims and research regarding discovery issues.

Mr. Glago submitted only a summary time sheet that suggests that 465 hours of his time were expended for the common benefit.

Mr. Glago did some work for the common benefit, but, because of the failure to describe his time, the Special Master is unable to determine the exact level of his participation.

The Special Master allocates a fee of $162,750 to Mr. Glago is fair and appropriate.

*Jessie L. Wimberly, IV*

Mr. Wimberly was a member of the Trial Committee.

Mr. Wimberly contributed no cases to the critical mass.

Mr. Wimberly met with the weather expert on meteorological issues and his participation involved trial preparation matters.  He organized discovery materials and prepared them for use at trial.  Mr. Wimberly helped create exhibit lists and helped prepare exhibits for trial

Mr. Wimberly's time amounts to 335 hours, but this time was not submitted to Bourgeois Bennett as per Judge Fallon's orders.

The Special Master allocates a fee of $116,000 to Mr. Wimberly as fair and appropriate.

*Rebecca A. Cunard*

Ms. Cunard was co-chair of the Class Communications Committee.

Ms. Cunard contributed 9 cases to the critical mass.

Ms. Cunard worked on tasks assigned from Joseph Bruno, worked on proof of claims, as well as interviewing class members.  She attended some court conferences and meetings.

Her time submitted as common benefit work is well-described.  It appears that most of the work was for the common benefit, but Ms. Cunard did not act in a leadership role.

The Special Master allocates a fee of $113,050 to Ms. Cunard as fair and appropriate.

*William E. Bradley*

Mr. Bradley was a member of the PSC.

Mr. Bradley contributed 11 cases to the critical mass.

Mr. Bradley gathered evidence, participated in meetings of the PSC, researched legal issues, summarized depositions, monitored the litigation and submitted claims forms for his clients.

He has submitted 184.75 hours as hours worked for the common benefit.

The Special Master finds that Mr. Bradley did common benefit work, but he was not a major contributor to the litigation and his role was, primarily, not one of leadership.

The Special Master allocates a fee of $108,500 to Mr. Bradley as fair and appropriate.

### *Benjamin D. Beychock*

Mr. Beychock was a member of the Proof of Claims Committee.

Mr. Beychock contributed no cases to the critical mass.

Mr. Beychock worked in the claims office and worked on a coding project for the Discovery Committee. Much of Mr. Beychock's time entries consisted of reviewing emails and pleadings that were sent to the entire group. He billed time for email review if the email related to something that was substantive. Mr. Beychock submitted 294.5 hours. 50 hours of time were recorded for review of emails and review of pleadings that are either not properly described or for work that was duplicative.

Mr. Beychock did not have a leadership role in this matter and much of his work was duplicative.

The Special Master allocates a fee of $103,950 to Mr. Beychock as fair and appropriate.

### *Walter C. Dumas*

Mr. Dumas was a member of the Discovery Committee.

Mr. Dumas contributed 2 cases to the class.

Mr. Dumas' common benefit work amounted to summarizing and participating in minor depositions and attending meetings and court conferences.

The vast majority of the 560 hours of time submitted is for review of email and review of court documents.

Mr. Dumas did not have a leadership role in this case.  Additionally, his involvement mainly involved reviewing work done by other counsel.

The Special Master allocates a fee of $84,000 to Mr. Dumas as fair and appropriate.

### Bruce C. Betzer

Mr. Betzer held no committee assignments.

Mr. Betzer contributed 35 cases to the critical mass.

He submitted no time sheets for review by the Special Master, but claims to have worked 150 hours on behalf of his clients.  This time, however, was not for the common benefit of the class.

The Special Master allocates a fee of $67,500 to Mr. Betzer as fair and appropriate.

### Level 8

### Lance V. Licciardi, Keith Couture, Jonathan B. Andry, Michael Calogero, Scott M. Galante, Ronald J. Favre, Jessee L. Wimberly III, Stephen J. Herman

The Level 8 counsels' contribution to the common benefit were relatively minor but did further the resolution of the case in one way or another.

### Lance V. Licciardi

Mr. Licciardi was not assigned to any committee.

The Special Master cannot determine if Mr. Licciardi contributed any clients to the critical mass.

He submitted no time sheets.  In his deposition, he testified that he was contacted by the PSC and asked to contribute his clients to the class action.  He testified that he advised his clients to become part of the class.  In exchange, he was to get a percentage of what his clients collected in settlement.  He did no common benefit work.

Considering the agreement to compensate him for his clients, the Special Master allocates a fee of $60,000 to Mr. Licciardi as fair and appropriate.

### Keith Couture

Mr. Couture had no committee assignments.

Mr. Couture contributed 17 cases to the critical mass.

Mr. Couture submitted no time sheets to the Special Master.  He testified in his deposition that he only submitted cases to the common benefit class.  He also testified that he was contacted by members of the PSC seeking his clients for the class and was told he would be compensated on that basis.

The Special Master allocates a fee of $60,000 to Mr. Couture as fair and appropriate.

### Jonathan B. Andry

Mr. Andry had no committee assignments.

Mr. Andry contributed 20-25 cases to the critical mass.

Mr. Andry did not undertake any common benefit work and no time sheets were submitted.  He testified in his deposition that he was contacted by members of the PSC and asked to contribute his clients to the class action.  He testified that he was told his fees would come

from a separate fund and he testified that this arrangement was approved by the Executive Committee.

The Special Master allocates a fee of $50,000 to Mr. Andry as fair and appropriate.

### Michael G. Calogero

Mr. Calogero was a member of the Law Committee.

Mr. Calogero contributed 6 cases to the critical mass.

Mr. Calogero did legal research and wrote memos to the Law Committee on various issues regarding the Oil Pollution Act.  He attended meetings and conferences, but research and writing was his primary focus.

No time sheets were submitted to the Special Master or to Bourgeois Bennett.  Mr. Calogero states that 75 hours were expended for the common benefit, but these hours are not verifiable.

The Special Master allocates a fee of $47,500 to Mr. Calogero as fair and appropriate.

### Scott M. Galante

Mr. Galante was not assigned to a committee.

Mr. Galante contributed 6 cases to the critical mass.

Mr. Galante submitted no time sheets to the Special Master, nor to Bourgeois Bennett. He submitted 68 hours as time spent for the common benefit.  Although the Special Master finds that this time was primarily devoted to helping his own clients and not for the common benefit, some of the work did benefit the class.

The Special Master allocates a fee of $47,500 to Mr. Galante as fair and appropriate.

*Ronald J. Favre*

Mr. Favre had no committee assignments.

Mr. Favre contributed 2 cases to the critical mass with Mr. Michael Hingle.

His submission was mainly for staff attorneys and paralegal hours at Mr. Hingle's office. Mr. Favre also submitted time in his affidavit. The work of the staff attorneys was mostly work done in the claims office.

The 166.25 hours for staff attorneys and for paralegals is claimed by Mr. Favre to be work for the common benefit. Mr. Favre was the supervising attorney, but his actual work for the common benefit was minimal.

The Special Master allocates a fee of $45,000 to Mr. Favre as fair and appropriate.

*Jessie L. Wimberly, III*

Mr. Wimberly had no committee assignments.

Mr. Wimberly contributed 10 cases to the critical mass.

Mr. Wimberly worked on some discovery issues with the LADEQ and obtained some television coverage from the media. He prepared witnesses for depositions.

Mr. Wimberly submitted time sheets to the Special Master, but not to Bourgeois Bennett. In the time sheets, Mr. Wimberly claims 66 hours were expended for the common benefit.

The Special Master allocates a fee of $40,000 to Mr. Wimberly as fair and appropriate.

*Stephen J. Herman*

Mr. Herman had no committee assignments.

Mr. Herman contributed no cases to the critical mass.

Mr. Herman provided overall litigation strategy, participated in fact gathering, analysis of claims and performed some legal research on class issues. His firm also provided capital contributions to the class.

Timesheets consisted of summary of the time spent for the common benefit. The Herman firm submitted 75.75 hours as common benefit hours.

The Special Master allocates a fee of $35,000 to Mr. Herman as fair and appropriate.

### Level 9

### Les A. Martin, Michael Hingle, Lewis O. Unglesby, Shirin E. Harrell

Level 9 counsels' contributions were minor compared to contributions made to the common benefit by other levels. Nevertheless, counsel proves that part of their work did benefit the common benefit or that the Executive Committee agreed to compensate counsel for submitting their individual cases to the class.

### Les A. Martin

Mr. Martin had no committee assignments.

Mr. Martin contributed 5 cases to the class.

Mr. Martin submitted no timesheets to the Special Master, but requests 10% of his opt-in clients as a fee.

The Special Master allocates a fee of $28,000 to Mr. Martin as fair and appropriate.

### Michael Hingle

Mr. Hingle had no committee assignments.

Mr. Hingle contributed 2 cases to the class.

He bases his claim for common benefit fee on the basis of the advertising he did on television for the Murphy case. Mr. Hingle also claims to have signed up 200 clients for the Murphy case, but only 2 of those stayed in the class. He expended costs in buying television time.

The bulk of Mr. Hingle's 56.25 hours are for the review of pleadings and for attendance at hearings. The Special Master determines that Mr. Hingle's work was only minimally for the common benefit. No other counsel testified that either the Executive Committee or the PSC requested Mr. Hingle to buy television advertising time.

The Special Master allocates a fee of $25,000 to Mr. Hingle as fair and appropriate.

### *Lewis O. Unglesby*

Mr. Unglesby had no committee assignments.

Mr. Unglesby contributed no cases to the class.

Mr. Unglesby submitted time sheets totaling 33.5 hours for the common benefit. These hours were never submitted to Bourgeois Bennett.

The Special Master determines that Mr. Unglesby's role in this litigation was minimal. Mr. Unglesby, himself, believes that the fee should benefit the attorneys that were affected by Hurricane Katrina.

The Special Master allocates a fee of $15,000 to Mr. Unglesby as fair and appropriate.

### *Shirin E. Harrell*

Ms. Harrell had no committee assignments.

Ms. Harrell contributed 6 cases to the critical mass.

Ms. Harrell performed work only for her own clients and this work was not for the common benefit. Time sheets were not submitted to Bourgeois Bennett. She claims, however, that 21.7 hours of attorney time and 35.5 hours of paralegal time were for the common benefit.

The Special Master allocates a fee of $15,000 to Ms. Harrell as fair and appropriate.

### *Level 10*

### *Wiley J. Beevers, Sean D. Alfortish*

#### *Wiley J. Beevers*

Mr. Beevers had no committee assignments.

Mr. Beevers referred 3 cases to the critical mass, shared with Madro Bandaries.

Mr. Beevers submitted no time sheets.

At his deposition, Mr. Beevers waived any claim for common benefit fees.

The Special Master allocates no fee to Mr. Beevers.

#### *Sean D. Alfortish*

Mr. Alfortish had no committee assignments.

Mr. Alfortish contributed no cases to the critical mass.

Mr. Alfortish claims to have worked with Madro Bandaries on meeting with potential clients in St. Bernard Parish, including phone conversations and reviewed pleadings. None of this is common benefit work. None of his time is properly described.

The Special Master determines that no work was done for the common benefit and therefore the Special Master allocates no fee to Mr. Alfortish.

The Special Master refers counsel to the Case Management Order for procedures to be followed after the filing of this Report.


New Orleans, Louisiana, this 14th day of April, 2008.

                                    _____

                                    Hon. Robert J. Klees, Special Master
                                    *Chief Judge, Louisiana Court of Appeal, 4th Circuit (Ret.)*

# Exhibit "A"

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

PATRICK JOSEPH TURNER, ET AL        CIVIL ACTION

       NO. 05-4206

VERSUS        CONSOLIDATED CASES

MURPHY OIL USA, INC.        SECTION "L" (2)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## CASE MANAGEMENT ORDER

This Case Management Order will govern these proceedings. No amendments to this Order will be permitted.

1.

All attorneys claiming eligibility for common benefit funds ("applicants") shall file into the record of this case and serve upon the Special Master, counsel for the Special Master and all other common benefit fund applicants **on or before July 2, 2007** an affidavit ("common benefit fund affidavit") based upon personal knowledge of the common benefit work for which the affiant seeks payment from the fund. The affidavit shall, with particularity, list the services performed for the common benefit of the class, recite a description of the services performed, the number of hours spent in such common benefit service, the number of cases the common benefit counsel applicant contributed to the class action and all reasons that the applicant asserts qualifies the applicant for common benefit funds.

The affidavit shall include, but is not limited to, a discussion of the following factors:

    a.    A brief resume of counsels' experience pertinent to this matter;

    b.    The time and labor expended; specifically the total number of substantive hours related to assigned/authorized work;

    c.    Preclusion of other employment due to participation in the matter;

    d.    The number of status conferences and meetings attended involving meaningful participation. (Mere attendance at meetings or hearings by lawyers, associates and paralegals who did not advance common benefit efforts should be discounted);

    e.    Direct and meaningful participation in discovery efforts;

    f.    Direct and meaningful participation in retaining and working with experts;

    g.    Direct and meaningful participation in preparing pleadings, handling motion practice and conducting legal research;

    h.    Direct and meaningful participation in committee leadership positions;

    i.    Direct and meaningful participation in committee infrastructure and organizational issues;

    j.    Direct and meaningful participation in developing the litigation strategy and coordinating all litigation efforts;

    k.    Direct and meaningful participation in developing claims that needed to be asserted, developing damages and planning settlement strategy;

    l.    Direct and meaningful participation in consummating, structuring and memorializing the settlement from the initial Memorandum of Understanding to the final judicial approval;

    m.    Hearing presentations;

    n.    Use of firm staff and office facilities in connection with handling common benefit matters;

Counsel shall attach, as numbered exhibits, all documentation necessary to support the requested common benefit fund allocation.

Counsel shall state the amount requested and shall include reasons why such amount is fair and proper in the context of this matter with due reference to the factors recited in this Order and considering the other applicants.

Affidavits made "to the best knowledge and belief" will be rejected.

The submission of a common benefit fund affidavit constitutes agreement that such affidavit is part of the record.

Common benefit fund affidavits are limited to **ten (10)** double spaced pages.

2.

No later than **thirty (30)** days after the service of the common benefit fund affidavits, common benefit fund applicants may file into the record of this case, and serve upon the Special Master, counsel for the Special Master and each common benefit fund applicant, any challenges in the form of an affidavit ("challenge affidavits") to any common benefit fund affidavit. Such challenge affidavits must state the substance and the specific grounds for the challenge and the facts upon which the challenge is made.

If a challenger requires additional information to complete a challenge, the challenger must state with specificity what information is needed and the reason(s) such information is needed.

The submission of a challenge affidavit constitutes agreement that such affidavits are part of the record.

Costs will be assessed against any common benefit or challenge affiant whose claim or challenge is determined to be without merit.

Challenges are limited to **five (5)** double spaced pages.

3.

No later than **five (5)** days after the service of the challenge affidavits, any party may serve written discovery permitted by this Order. The failure to request discovery within the time period constitutes a waiver of written discovery.

4.

Any common benefit applicant or challenger may serve upon any other applicant written discovery in the form of **five (5)** written interrogatories (including sub-parts) and **two (2)** requests for production of documents. All document requests are limited to the time period of the Murphy Oil Litigation and **six (6)** months prior to September 1, 2005 for comparison.

The Special Master and counsel for the Special Master shall be served with all discovery.

Such written discovery must be answered without objection within **fourteen (14)** days of service.

5.

Any applicant may request depositions by letter directed to the Special Master, counsel for the Special Master and all applicants no later than **five (5)** days from the completion of written discovery. No formal notice is necessary. **One (1)** deposition of each applicant is permitted. Each such deposition shall be attended by either the Special Master or counsel for the Special Master. The Special Master shall publish a schedule of the dates of such depositions after review of the number of depositions requested.

At such depositions, there shall be appointed **one (1)** principal questioner selected by the attorneys (or the Special Master or counsel for the Special Master if counsel cannot agree on the choice of the questioner) who elect to take a particular deposition. Only non-duplicative follow-

up questions are permitted. The Special Master and/or the attorney for the Special Master are permitted to ask questions.

Depositions are limited to **two (2)** hours, including breaks, unless good cause is shown at the deposition to extend the deposition. Deponent, if unrepresented by counsel, may make a short statement in response to the questions, but such statement is limited to **fifteen (15)** minutes. If deponent has counsel present, questioning of the deponent by deponent's counsel is limited to **fifteen (15)** minutes, unless good cause is shown to extend such time.

All objections, except to the form of the question, are reserved until the deposition is sought to be used at a trial/hearing. Only **one (1)** applicant/counsel designated by those attending shall make objections. Objections made by one counsel are considered to have been made by all.

All deposition discovery must be completed **ninety (90) days** from the end of the written discovery period. No extensions will be permitted.

Applicants and challengers may submit a supplemental common benefit fund affidavit and supplemental challenge affidavit within **ten (10)** days of the date of the last deposition. Supplemental affidavits are limited to **three (3)** double spaced pages.

6.

The Special Master may schedule a mediation at any point in these proceedings.

7.

After the conclusion of discovery, the Special Master will file a Preliminary Report containing proposed allocations, reasons for those allocations and appropriate findings of fact and conclusions of law.

The Special Master will notify applicants and challengers of the need for additional information or records prior to the issuance of the Preliminary Report.

8.

Objections to the Special Master's Preliminary Report shall be made within **ten (10)** days of the date of the Special Master's Preliminary Report. Such objections shall state the objections to the Preliminary Report with specificity, including the reasons and the grounds for the objection and the facts supporting the objections.

Such objection documents are limited to **six (6)** pages double spaced.

Objections to the Special Master's Preliminary Report shall be filed into the record, served upon the Special Master and counsel for the Special Master and all other applicants and challengers.

Submission of objections to the Preliminary Report constitutes agreement that such objections are part of the record.

9.

After receipt of the objections to the Special Master's Preliminary Report, the Special Master shall conduct a hearing, if necessary, to include testimony and argument on the applications, objections and challenges. The purpose of the hearing is to fully develop the record in preparation for the issuance of the Special Master's Final Report and appeal to the district judge and the U.S. Court of Appeals for the Fifth Circuit.

All applicants shall have the right to representation by counsel and to call and question witnesses. Applicants or their counsel shall be permitted to present testimony in support of an application and in support of challenges to applications. Applicants may present testimony

directly either in narrative form, or if an applicant has retained counsel, by question and answer method.  Cross-examination shall be permitted, but **one (1)** cross-examiner shall be selected by the participants for cross-examination in chief.  Only follow-up cross-examination will be permitted at the discretion of the Special Master.  All testimony will be given under oath.

The Special Master and counsel for the Special Master are permitted to question any witness and to call witnesses.

10.

After the hearing on the Preliminary Report, the Special Master will issue a Final Report to include final allocations, reasons for allocations and appropriate findings of fact and conclusions of law.

New Orleans, Louisiana, this 22nd day of May, 2007.

_____
Hon. Robert J. Klees, Special Master
*Chief Judge Court of Appeal, 4th Circuit (Ret.)*

ND: 4832-7279-2065, v. 1

# Exhibit "B"

### Preliminary Fee Awards
### *Turner v. Murphy Oil*
### USDC No. 05-4206

| Attorney Name | Ranking | Fee Awarded |
|---|---|---|
| Sidney D. Torres, III | 1st Level | $4,730,000 |
| | | |
| Gerald E. Meunier | 2nd Level | $2,910,000 |
| Hugh P. "Skip" Lambert | 2nd Level | $2,700,000 |
| Joseph M. Bruno | 2nd Level | $2,520,000 |
| | | |
| Jerald N. "Jay" Andry, Jr. | 3rd Level | $1,920,000 |
| Mickey P. Landry | 3rd Level | $1,840,000 |
| Salvador E. Gutierrez, Jr. | 3rd Level | $1,770,000 |
| Scott R. Bickford | 3rd Level | $1,590,000 |
| Ronnie G. Penton | 3rd Level | $1,523,000 |
| | | |
| Daniel E. Becnel, Jr. | 4th Level | $1,220,000 |
| Richard J. Arsenault | 4th Level | $950,000 |
| Anthony D. Irpino | 4th Level | $680,000 |
| | | |
| Robert M. Becnel | 5th Level | $600,000 |
| E. Carroll Rogers | 5th Level | $580,000 |
| Val P. Exnicios | 5th Level | $558,000 |
| Walter J. Leger, Jr. | 5th Level | $525,000 |
| | | |
| Michael G. Stag | 6th Level | $400,000 |
| Darleen M. Jacobs | 6th Level | $375,000 |
| Conrad S.P. "Duke" Williams, III | 6th Level | $350,000 |
| Diane K. Zink | 6th Level | $310,000 |
| Gregory P. DiLeo | 6th Level | $300,000 |
| Dawn M. Barrios | 6th Level | $258,750 |
| Madro Bandaries | 6th Level | $223,650 |
| | | |
| J. Van Robichaux, Jr. | 7th Level | $165,000 |
| Mark P. Glago | 7th Level | $162,750 |
| Jessie L. Wimberly, IV | 7th Level | $116,000 |
| Rebecca A. Cunard | 7th Level | $113,050 |
| William E. Bradley | 7th Level | $108,500 |
| Benjamin D. Beychock | 7th Level | $103,950 |
| Walter C. Dumas | 7th Level | $84,000 |
| Bruce C. Betzer | 7th Level | $67,500 |
| | | |

| Attorney Name | Ranking | Fee Awarded |
|---|---|---|
| Lance V. Licciardi | 8th Level | $60,000 |
| Keith Couture | 8th Level | $60,000 |
| Jonathan B. Andry | 8th Level | $50,000 |
| Michael G. Calogero | 8th Level | $47,500 |
| Scott M. Galante | 8th Level | $47,500 |
| Ronald J. Favre | 8th Level | $45,000 |
| Jessie L. Wimberly, III | 8th Level | $40,000 |
| Stephen J. Herman | 8th Level | $35,000 |
| | | |
| Les A. Martin | 9th Level | $28,000 |
| Michael Hingle | 9th Level | $25,000 |
| Lewis O. Unglesby | 9th Level | $15,000 |
| Shirin E. Harrell | 9th Level | $15,000 |
| | | |
| Wiley J. Beevers | 10th Level | $0 |
| Sean D. Alfortish | 10th Level | $0 |

ND: 4811-9679-7186, v. 1

FILED '08 AUG 22 15:37 USDC-LAE

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **PATRICK JOSEPH TURNER, ET AL.** | * | **CIVIL ACTION** |
| | * | |
| **VERSUS** | * | **NO. 05-4206** |
| | * | **CONSOLIDATED CASE** |
| **MURPHY OIL USA, INC.** | * | **SECTION "L" (2)** |

## ORDER

Pursuant to Rule 53 of the Federal Rules of Civil Procedure, the Court received the attached final report from the Special Master recommending various allocations of the Common Benefit fees in this matter.

A hearing is set for 9:00 a.m. on October 1, 2008 in open court to afford counsel an opportunity to be heard. Any objections or motions or modifications of the Special Master's report should be filed on or before September 15, 2008.

New Orleans, Louisiana, this 22nd day of August, 2008.

UNITED STATES DISTRICT JUDGE

___ Fee _____
___ Process _____
_X_ Dktd _____
___ CtRmDep _____
___ Doc. No _____

EXHIBIT 6

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| PATRICK JOSEPH TURNER, ET AL | CIVIL ACTION |
| | NO. 05-4206 |
| VERSUS | CONSOLIDATED CASES |
| MURPHY OIL USA, INC. | SECTION "L" (2) |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## FINAL FEE ALLOCATION RECOMMENDATION
## OF THE SPECIAL MASTER

In accordance with paragraph 9 of the Case Management Order of May 22, 2007, the Special Master hereby submits the attached Fee Allocations as his Final Fee Allocation Recommendation to this Honorable Court.

A Final Report to include Reasons for Allocations, Findings of Fact and Conclusions of Law will follow.

New Orleans, Louisiana, this 22nd day of _August_, 2008.

Hon. Robert J. Klees, Special Master
*Chief Judge, Louisiana Court of Appeal, 4th Circuit (Ret.)*

ND: 4811-8844-1346, v. 1

Fee Allocations

## *Turner v. Murphy Oil*
### USDC No. 05-4206

| Attorney Name | Fee Allocations |
|---|---|
| Sidney D. Torres, III | $4,257,000 |
| Gerald E. Meunier | $2,800,000 |
| Hugh P. "Skip" Lambert | $2,800,000 |
| Joseph M. Bruno | $2,800,000 |
| Scott R. Bickford | $2,200,000 |
| Ronnie G. Penton | $2,200,000 |
| Daniel E. Becnel, Jr. | $2,000,000 |
| Jerald N. "Jay" Andry, Jr. | $1,100,000 |
| Mickey P. Landry | $1,100,000 |
| Salvador E. Gutierrez, Jr. | $1,100,000 |
| Darleen M. Jacobs | $1,000,000 |
| Richard J. Arsenault | $950,000 |
| Robert M. Becnel | $700,000 |
| Anthony D. Irpino | $600,000 |
| E. Carroll Rogers | $580,000 |
| Val P. Exnicios | $558,000 |
| Walter J. Leger, Jr. | $500,000 |
| Michael G. Stag | $400,000 |
| Conrad S.P. "Duke" Williams, III | $350,000 |
| Diane K. Zink | $310,000 |
| Gregory P. DiLeo | $300,000 |
| Lance V. Licciardi | $260,000 |
| Dawn M. Barrios | $258,000 |
| Madro Bandaries | $223,650 |
| J. Van Robichaux, Jr. | $115,000 |
| Mark P. Glago | $112,750 |
| Rebecca A. Cunard | $103,050 |
| Benjamin D. Beychock | $100,950 |
| William E. Bradley | $100,500 |
| Jessie L. Wimberly, IV | $100,000 |
| Walter C. Dumas | $84,000 |
| Bruce C. Betzer | $67,500 |
| Keith Couture | $60,000 |
| Jonathan B. Andry | $50,000 |
| Michael G. Calogero | $47,500 |
| Scott M. Galante | $47,500 |
| Ronald J. Favre | $45,000 |
| Jessie L. Wimberly, III | $40,000 |
| Stephen J. Herman | $35,000 |
| Les A. Martin | $28,000 |

| Michael Hingle | $25,000 |
| Lewis O. Unglesby | $15,000 |
| Shirin E. Harrell | $15,000 |
| Wiley J. Beevers | $0 |
| Sean D. Alfortish | $0 |

ND: 4817-2511-5650, v. 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| PATRICK JOSEPH TURNER, ET AL. | * | CIVIL NO. 05-4206 |
| | * | OS-4206 |
| VERSUS | * | ALL CASES |
| | * | |
| MURPHY OIL USA, INC. | * | SECTION "L" (2) |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * *

## O R D E R

Considering the foregoing motion,

IT IS ORDERED that the Clerk of Court shall draw on the deposited common benefit

fund herein and disburse in the following specified amounts of principal, plus accrued interest:

1.     The amount of $17,491.22 shall be paid out of principal to satisfy the remaining

invoices of Special Master Robert Klees and his counsel, Dominic Gianna;

2.     The total amount of $3,600 shall be paid out of principal to satisfy the invoices of

Zymax Forensics, as approved by the Court's Order of 3/11/08 (Doc. 2216);

3.     The total amount of $289,451.97 shall remain in the registry of the Court pending

resolution of the dispute between and among Madro Bandaries, Wiley Beevers,

and Sean Alfortish regarding the common benefit fee allocation ($209,451.97 per

Attachment I) and cost enhancement payment ($80,000) claimed by Madro

Bandaries.

4.     The total remaining principal amount of $29,439,746.96 shall be disbursed to

Bourgeois Bennett, LLC along with all applicable accrued interest for payment

and distribution as follows:

-1-

EXHIBIT 7

a.    $20,000 paid from principal in cost enhancement reimbursement to Brent
      Coon & Associates;

b.    $17,000 paid from principal to Bourgeois Bennett, LLC for their past-due
      and projected charges in full and final payment of its administrative and
      disbursement services herein;

c.    $29,402,746.96 from principal plus all applicable accrued interest (interest
      less Adm Fee) to be paid in the same percentages as the amounts specified
      for all common benefit counsel (except Madro Bandaries) by the Court on
      Attachment I.

IT IS FINALLY ORDERED that, upon entry of this Order, all pending motions for
common benefit cost reimbursement and any and all actual or potential claims between and
among the common fund applicants for fee allocation and/or the taxation of costs (except those
relating to the fee and cost dispute between and among Madro Bandaries, Wiley Beevers, and
Sean Alfortish), shall be considered withdrawn and dismissed with prejudice, by agreement.

THIS DONE the 24th day of November, 2008.

_____
HONORABLE ELDON E. FALLON

cc:  Financial Unit

-2-

**Murphy Oil**
**Common Benefit Fees 11/2008**

| Attorneys | J. Fallon Award | Adjustment | Total | Percent of Total | Estimated Administrative Assessment Fee | Estimated Final Total |
|---|---|---|---|---|---|---|
| STorres/RBurns | $4,257,000 | ($255,420) | $4,001,580 | 12.9882% | (14,827.68) | $ 3,986,752.32 |
| Jerry Meunier | $2,800,000 | ($198,000) | $2,602,000 | 8.4454% | (9,641.49) | $ 2,592,358.51 |
| HLambert/LNelson | $2,800,000 | ($198,000) | $2,602,000 | 8.4454% | (9,641.49) | $ 2,592,358.51 |
| Joe Bruno | $2,800,000 | ($198,000) | $2,602,000 | 8.4454% | (9,641.49) | $ 2,592,358.51 |
| Scott Bickford | $2,200,000 | ($152,000) | $2,048,000 | 6.6473% | (7,588.73) | $ 2,040,411.27 |
| Ronnie Penton | $2,200,000 | ($152,000) | $2,048,000 | 6.6473% | (7,588.73) | $ 2,040,411.27 |
| Walter Leger | $400,000 | ($24,000) | $376,000 | 1.2204% | (1,393.22) | $ 374,606.78 |
| Duke Williams | $350,000 | ($21,000) | $329,000 | 1.0679% | (1,219.12) | $ 327,780.88 |
| Greg DiLeo | $300,000 | ($18,000) | $282,000 | 0.9153% | (1,044.91) | $ 280,955.09 |
| Dawn Barrios | $258,000 | ($15,480) | $242,520 | 0.7872% | (898.67) | $ 241,621.33 |
| Madro Banderies | $223,650 | ($13,419) | $210,231 | 0.6824% | (779.03) | $ 209,451.97 |
| Van Robichaux | $115,000 | ($6,900) | $108,100 | 0.3509% | (400.58) | $ 107,699.42 |
| Mark Glago | $112,750 | ($6,765) | $105,985 | 0.3440% | (392.70) | $ 105,592.30 |
| Rebecca Cunard | $103,050 | ($6,183) | $96,867 | 0.3144% | (358.91) | $ 96,508.09 |
| Ben Beychok | $100,950 | ($6,057) | $94,893 | 0.3080% | (351.60) | $ 94,541.40 |
| Bill Bradley | $100,500 | ($6,030) | $94,470 | 0.3066% | (350.00) | $ 94,120.00 |
| Jesse Wimberly, IV | $100,000 | ($6,000) | $94,000 | 0.3051% | (348.29) | $ 93,651.71 |
| Walter Dumas | $84,000 | ($5,040) | $78,960 | 0.2563% | (292.58) | $ 78,667.42 |
| Bruce Betzer | $67,500 | ($4,050) | $63,450 | 0.2059% | (235.04) | $ 63,214.96 |
| Keith Couture | $60,000 | ($3,600) | $56,400 | 0.1831% | (209.01) | $ 56,190.99 |
| Jonathan B. Andry | $50,000 | ($3,000) | $47,000 | 0.1526% | (174.19) | $ 46,825.81 |
| Michael Calogero | $47,500 | ($2,850) | $44,650 | 0.1449% | (165.40) | $ 44,484.60 |
| Scott M. Galante | $47,500 | ($2,850) | $44,650 | 0.1449% | (165.40) | $ 44,484.60 |
| Ronald Favre | $45,000 | ($2,700) | $42,300 | 0.1373% | (156.73) | $ 42,143.27 |
| Jesse Wimberly, III | $40,000 | ($2,400) | $37,600 | 0.1220% | (139.26) | $ 37,460.74 |
| Stephen J. Herman | $35,000 | ($2,100) | $32,900 | 0.1068% | (121.91) | $ 32,778.09 |
| Les Martin | $28,000 | ($1,680) | $26,320 | 0.0854% | (97.48) | $ 26,222.52 |
| Michael Hingle | $25,000 | ($1,500) | $23,500 | 0.0763% | (87.09) | $ 23,412.91 |
| Lewis Unglesby | $15,000 | ($900) | $14,100 | 0.0458% | (52.27) | $ 14,047.73 |
| Shrin Harrell | $15,000 | ($900) | $14,100 | 0.0458% | (52.27) | $ 14,047.73 |
| Brent Coon | $8,277 | ($497) | $7,780 | 0.0253% | (28.86) | $ 7,751.14 |
| Danny Becnel, Jr | $2,000,000 | $0 | $2,000,000 | 6.4915% | (7,410.86) | $ 1,992,589.14 |
| Darleen Jacobs | $1,100,000 | $0 | $1,100,000 | 3.5703% | (4,075.94) | $ 1,095,924.06 |
| Richard Arsenault | $1,000,000 | $0 | $1,000,000 | 3.2458% | (3,705.48) | $ 996,294.52 |
| Sal Gutierrez | $1,000,000 | $0 | $1,000,000 | 3.2458% | (3,705.48) | $ 996,294.52 |
| Robert Becnel | $700,000 | $0 | $700,000 | 2.2720% | (2,593.76) | $ 697,406.24 |
| Anthony Irpino | $600,000 | $0 | $600,000 | 1.9475% | (2,223.30) | $ 597,776.70 |
| Carroll Rogers | $550,000 | $0 | $550,000 | 1.7852% | (2,038.02) | $ 547,961.98 |
| Dianne Zink | $310,000 | $0 | $310,000 | 1.0062% | (1,148.69) | $ 308,851.31 |
| Lance Licciardi | $260,000 | $0 | $260,000 | 0.8439% | (963.40) | $ 259,036.60 |
| Mickey Landry | $1,200,000 | $300,000 | $1,500,000 | 4.8687% | (5,558.23) | $ 1,494,441.77 |
| Jerald N. "Jay" Andry, Jr. | $1,200,000 | $300,000 | $1,500,000 | 4.8687% | (5,558.23) | $ 1,494,441.77 |
| Mike Stag | $400,000 | $400,000 | $800,000 | 2.5966% | (2,964.33) | $ 797,035.67 |
| Val Exnicios | $558,000 | $460,000 | $1,018,000 | 3.3042% | (3,772.15) | $ 1,014,227.85 |
| | $30,666,677 | $142,679 | $30,809,356 | 100.0000% | (114,162.00) | $ 30,695,194.00 |
| Waived Cost | | | ($142,679) | | | |
| | | | $30,666,677 | | | |