UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE:  VIOXX PRODUCTS
        LIABILITY LITIGATION

MDL DOCKET NO. 1657

SECTION L

JUDGE FALLON

MAGISTRATE JUDGE KNOWLES

## REPLY TO FAC OPPOSITION TO MURRAY LAW FIRM'S OBJECTION

Abraham Lincoln famously stated, "A lawyer's time is his stock in trade." This observation holds particularly true when attorneys perform common benefit work at the direction of court-appointed counsel. By court order, attorneys in this position can only perform common benefit work that is assigned to them by the court-appointed committee. They do so in the trust that, if the case is successful, they will be fairly compensated for their time. In the instant case, the same court-appointed counsel who instructed the Murray Law Firm what work it could do are now asserting that the work the Murray Law Firm did at their behest should not be adequately compensated because it allegedly did not contribute the result. If the concept of multi-district litigation organizational structure is to work, then attorneys who participate in that structure by performing work directed to them by the court-appointed leadership must be compensated in accordance with the time that they put into the case, and not according to a subjective evaluation of the contributory value of that work by the same people who determined which attorneys would do which work. The Murray Law Firm deserves to receive its lodestar for the work that it did at the behest of the court-appointed leadership, and further deserves some enhancement over its lodestar in light of the fact that the work was

undertaken on contingency with no guarantee of recovery if the case proved unsuccessful.  The Fee Allocation Committee's (FAC) recommendation robs the Murray Law Firm of its due compensation for its "stock in trade" in order to give generous enhancements over the lodestars of its members.

Its unsupported and self-serving denigration of the Murray Law Firm's contribution notwithstanding, the FAC's response to the Murray Law Firm's Objection takes no issue with the key assertions which form the basis of the Murray Law Firm's objection.  The FAC does not contest that the Murray Law Firm performed the work reflected in its time submissions.  The FAC does not contest that the Murray Law Firm performed every assignment that was asked of it by the court-appointed Plaintiffs' Steering Committee (PSC).  The FAC does not contest that the work performed by the Murray Law Firm was performed at the behest and direction of the PSC.  In short, the FAC accepts that the Murray Law Firm's lodestar is an accurate reflection of work that the Murray Law Firm actually performed at the request and direction of the PSC.  Nevertheless, the FAC maintains that is justified in paying the Murray Law Firm a minute fraction of its lodestar (*i.e.* the prevailing rates for attorney work actually performed on the case before the implementation of any type of multiplier), because in the FAC's subjective analysis, the work that the Murray Law Firm did at the PSC's request and direction was not as contributory to the result as the work that the FAC members assigned to themselves.  Such a flawed analysis is contradictory to the established law of this Circuit, and discourages participation and cooperation in Multi-District Litigation common benefit effort.

**I      The FAC does not contest the key facts which form the basis of the Murray Law Firm's objection.**

The Murray Law Firm's primary grounds for objecting to the FAC's recommendation is that it substantially underpays the Murray Law Firm for attorney time worked at the behest of the PSC,

while providing substantial multipliers to members of the PSC who determined how the work would be divided.  Tellingly, the FAC fails to take issue with this argument, much less contest any of the factual assertions that form the basis of this objection.

The FAC does not contest that the work that the Murray Law Firm performed was all done at the direction of the PSC.[1]  Nor does the FAC suggest that the Murray Law Firm ever failed to fulfill a task assigned to it by the PSC.[2]  These concessions are critical, since it was the PSC who assigned common benefit work in the MDL.  Indeed, Pre-Trial Order No. 6 provides that contributing firms were not to perform work that was not assigned to them by the PSC.[3]  It is patently unfair for the FAC, whose members directed the work of law firms participating in the MDL, to suggest that work that they directed was not contributory to the result.  These PSC members, who decided what work the Murray Law Firm would and could perform, cannot now be heard to say that the work they assigned to the Murray Law Firm was not contributory to the result and the Murray Law Firm should not be paid *at least* for its uncontested time in the case at prevailing rates.

Among other noteworthy concessions in the PSC's response is its apparent acceptance that Mr. Justin Bloom of the Murray Law Firm worked in a supervisory capacity at the document depository under the direct supervision of co-lead counsel and FAC member, Chris Seeger.[4]  The FAC does not contest that Mr. Bloom is an attorney of ten years' valuable experience in complex

---

[1]  See October 30, 2008 Affidavit of Stephen B. Murray, attached hereto as Exhibit A.

[2]  *Id.*

[3]  See Pre-Trial Order No. 6, attached hereto as Exhibit B.

[4]  See Exhibit A.

litigation with senior attorney responsibilities in the PSC effort.[5]  Nor does the FAC contest that the Murray Law Firm provided Mr. Bloom to work full time at the document depository at a time when the PSC was having difficulty finding attorneys willing to work on the common benefit effort.[6]

Similarly, the FAC has not refuted the assertion that the work Stephen B. Murray, Sr. and Stephen B. Murray, Jr. performed in connection with the briefing effort was performed at the direction of the PSC, and in particular, PSC member Jerry Meunier who expressed satisfaction with their work at all times.[7]  Nor has the FAC contested the Murray Law Firm's statement that the work that they performed was all that was asked of them, or that they were not assigned additional work in spite of having been available to do so.[8]  Just as importantly, the FAC has not contested that the work the Murray Law Firm performed per assignments by the PSC was performed to the full satisfaction of the PSC.

Moreover, the PSC has not suggested that the Murray Law Firm billed too much time for the work that it did perform, nor could it.  While the FAC attempts to justify its derivation from the mandated lodestar methodology by citing to certain anecdotal examples of some firms billing inordinate hours for given tasks, the FAC has made no such suggestion with respect to the Murray Law Firm, nor can it.  With respect to the bulk of the Murray Law Firm's time, the work was performed by Murray Law Firm attorneys working at the PSC document depository under the direct

---

[5]  *Id.*

[6]  *Id.*

[7]  *Id.*

[8]  *Id.*

supervision of PSC members.[9]  These attorneys were required to clock in every day.  They were assigned tasks that the PSC members determined were necessary to prepare the case for trial.  Hence, there can be no question that the hours that they billed for this work are appropriate to the work performed.

With respect to the work performed on tasks other than document review, the FAC has made no suggestion that the Murray Law Firm billed more than was appropriate.  Indeed, the Murray Law Firm's billing for briefing and research tasks in connection with its role on the Law and Briefing Committee was so conservative as to prompt the FAC to suggest that Murray Law Firm attorneys Stephen B. Murray, Sr. and Stephen B. Murray, Jr. did not play a significant role in the briefing effort.  While perhaps it would be appropriate to adjust the lodestar of certain firms for over-billing or performing superfluous work not at the direction of the PSC, it is not appropriate to pay the Murray Law Firm a fraction of its uncontested billed time for work that it performed at the request and to the satisfaction of the PSC.

## II.    The FAC's factual assertions are either unsubstantiated or fail to support its position.

The FAC's sole offered justification for its gross under-payment to the Murray Law Firm is that, with the exception of so-called "routine document review", the Murray Law Firm "abandoned" the litigation.  This self-serving assertion is not only entirely without support in the record, but is also contrary to the facts.  The record does not demonstrate that any attorney of the Murray Law Firm abandoned the litigation effort.  Rather, the record demonstrates that the Murray Law continued to provide staffing and perform tasks as requested, and the PSC effectively excluded the Murray Law

---

[9]  See time submissions of Murray Law Firm attorneys, attached hereto as Exhibit C.

-5-

Firm from the briefing effort.[10]  The PSC's assertions that the Murray Law Firm abandoned the litigation and only performed "routine document review" are inaccurate and in any event do not warrant under-paying the Murray Law Firm for work that it is undisputed the Murray Law Firm performed at the direction of the PSC.

**A.      The Murray Law Firm did not abandon the litigation.**

The FAC notes that although "hundred if not thousands" of motions were filed in the MDL, the Murray Law Firm senior attorneys, Stephen B. Murray, Sr. and Stephen B. Murray, Jr. devoted only seventy hours of time the briefing effort.[11]  Tellingly, however, the FAC does not cite to a *single* example where the Murray Law Firm was asked to draft or respond to a motion and failed to do so. They do not cite to a single instance where Mr. Murray Sr. or Jr. was asked to attend a briefing meeting to discuss assignments and declined to attend.  There is no support for the contention that the Murray Law Firm abandoned the litigation.  Rather, the record demonstrates that the PSC largely excluded the Murray Law Firm from the briefing effort, keeping the lion's share of the briefing effort to itself.

Indeed, the record belies any assertion that the Murray Law Firm abandoned the litigation in any way, shape or form.  The Murray Law Firm participated in the litigation from beginning to end, and made itself available whenever the PSC asked for its participation.  Contradicting the PSC's assertion that Stephen Murray abandoned the litigation is the fact that Mr. Murray attended most

---

[10]  See Supplemental Affidavit of Stephen B. Murray, attached hereto as Exhibit D.

[11]  The Murray Law Firm takes issue with this calculation of its contribution to the briefing effort.  Messrs. Murray Sr. and Jr. collectively contributed more than twice this time (none of which has been contested by the FAC) to the litigation effort, predominantly in the area of briefing, See Ex. B.

status conferences throughout the litigation.[12]  When Mr. Murray, Sr. was unable to attend, he sent senior attorneys from his firm.  Mr. Murray's continued participation in status conferences demonstrates a commitment to the litigation.  He kept himself abreast of developments and was prepared to participate in any effort in which the leadership asked him to participate.  Unlike the FAC's assertion that Mr. Murray abandoned the litigation, for which there is no factual support, Mr. Murray's continued interest in the litigation can be verified by reference to the Court's sign-in sheets for the status conferences.

It is true that in the latter phases of the litigation, the Murray Law Firm shifted its focus from the personal injury cases to the third party payor and governmental action portions of the MDL effort.  However, this shift of focus cannot be considered as having abandoned the litigation, particularly since it was lead counsel who asked the Murray Law Firm to focus on these aspects of the case.[13]  It was at the behest of lead counsel Chris Seeger that the Murray Law Firm devoted its senior attorneys to work on the third party payor and government action portions of the case.[14]  While the Murray Law Firms has not submitted that time in connection with the personal injury common benefit effort, the fact that the Murray Law Firm undertook such work, and did so at the instruction of lead counsel – who declined to assign work in the personal injury cases to Murray Law Firm senior attorneys – belies the self-serving contention that the Murray Law Firm "abandoned" the litigation.

The PSC, which not only assigned all common benefit work, but also admonished attorneys

---

[12]  See Exhibit D.

[13]  *Id.*

[14]  *Id.*

not to undertake work except at the direction of the PSC, cannot say that an attorney who performed every task asked of him, and who continued to make his presence known in the litigation, "abandoned the litigation," when in fact the PSC declined to assign him any work other than the work that it now contends was not contributory to the result.

> **B.**   **"Routine document review" at the behest of the PSC is work contributory to the result.**

The FAC also offers as justification for its gross underpayment to the Murray Law Firm the fact that the majority of the work it performed was for so-called "routine document review."  The FAC has failed to explain how document review is not contributory to the result, or how document review deserves to be compensated at a rate less than the prevailing rate for attorneys of the experience required to perform the work. Tellingly, the FAC was not so critical of document review when it submitted thousands of hours of document review as support for the common benefit award. Judge Fallon was likewise impressed by the importance of document review, noting that the review of hundreds of thousands of documents was a substantial part of the justification for the common benefit award.  Indeed, while document review may be less glamorous than taking depositions, arguing motions, or appearing at trial, without experienced, knowledgeable attorneys reviewing the documents, the depositions, motion practice, and trial work would all be for naught.

Moreover, to the extent that "routine document review" is somehow less compensable than work that is more in the line of leadership activity, much of the Murray Law Firm's document review time was not for "routine" document review. Rather, most of the Murray Law Firm's attorneys assigned to the document depository were senior attorneys with ten or more years of experience.[15]

---

[15]  As will be discussed *infra*, Mr. Garrett erroneously set the rate for Mr. Bloom's time at the rate he established for first year attorneys.  Mr. Bloom was an attorney with ten years'

They were not just engaged in "routine" document review, but fulfilled senior positions with respect to the document review effort.  Most notably, the FAC does not contest that Justin Bloom worked in the document depository in a supervisory capacity.[16]

The PSC not only asked for attorneys to perform document review, but it also asked for experienced attorneys to perform this work.  The PSC frequently admonished firms not to send inexperienced attorneys to perform document review.   The Murray Law Firm heeded this admonition, sending Justin Bloom, an attorney with extensive experience in complex litigation to serve in a supervisory capacity, as well as attorneys Robert Diliberto and Julie Jacobs, both with over ten years' experience.

While the FAC denigrates the contribution of document review, it does not refute that it specifically asked the Murray Law Firm to provide attorneys to perform document review.  Nor does the FAC contest Murray's contention that at the time that it asked the Murray Law Firm to provide attorneys to the document depository, the PSC was having difficulty getting qualified attorneys to contribute to this effort.   While the FAC belittles the contribution of document review now, it apparently considered that effort import enough to devote experienced attorneys to document review at a time when the PSC was having difficulty finding attorneys to participate in the litigation effort.

**IV.    Nearly 800 hours of attorney time were erroneously omitted from the lodestar analysis considered by the FAC.**

While the FAC notes a discrepancy between the Murray Law Firm's reported hours and Mr. Garrett's lodestar analysis, the FAC does not suggest that the Murray Law Firm did not perform the

_____

experience when he worked as a supervisor at the PSC document depository.

    [16]  See Exhibit A.

work claimed in its submission at the PSC's behest, nor can it.

The chief reason for the discrepancy between the Murray Law Firm's submission and Mr. Garrett's analysis is the absence of some 733 hours of Justin Bloom's time from Mr. Garrett's records. This time was not submitted timely due to a clerical oversight.[17] However, this time was submitted to liaison counsel Russ Herman as soon as the clerical error was discovered.[18] By letter dated May 15, 2008, Mr. Murray forwarded the time sheets to Russ Herman, explaining the clerical oversight.[19] Apparently, Mr. Herman did not forward these additional time submissions to Mr. Garrett, even though Pre-Trial Order No. 6 provided that time was to be submitted to liaison counsel Russ Herman, who was in turn to provide submitted time records to Mr. Garrett.[20] Regardless of whether these hours were reported timely, the facts that Mr. Bloom performed this work, and that this work was performed at the direction of the PSC at the document depository, are uncontested. Moreover, that Mr. Bloom worked these hours can be confirmed by reference to the document depository records, since attorneys working in the depository were required to clock in and out. The additional, confirmable hours billed by Mr. Bloom bring his total hours from 1381.25 hours to 2114.25 hours.

In addition to Mr. Bloom's late-submitted time records, there are additional hours worked by Mr. Murray, Sr. and Mr. Murray, Jr. which likewise can be confirmed by PSC records. In the period after Hurricane Katrina, the Murray Law Firm was closed, but attorneys Stephen Murray, Sr.

---

[17] See Supplemental Affidavit of Stephen B. Murray, attached hereto as Exhibit D.

[18] *Id.*

[19] See Ex. D, tab 1.

[20] See Lodestar Analysis provided by Garrett, attached hereto as Exhibit E.

and Stephen Murray, Jr. continued to participate in the Vioxx effort, attending a PSC-sponsored discovery conference in Las Vegas, Nevada. The Murray's were asked to participate in order to assist in a PSC effort to take depositions of sales representatives. Upon returning to New Orleans, Mr. Murray, Jr. continued to assist the PSC in locating and preparing for sales representative depositions. In the disruption following Hurricane Katrina, the records for this time were lost. Stephen Murray attested to these hours by affidavit, and very conservatively estimated the time committed to that particular project at 10 hours for Mr. Murray, Sr. and 40 hours for Mr. Murray, Jr.[21] The Murray Law Firm attorneys' participation in this effort can be confirmed by reference to the sign-in sheets from the September 2005 conference in Las Vegas.

Taking into consideration these easily confirmed hours, the discrepancy between Mr. Garrett's records and the Murray Law Firm's claimed time is easily resolved. Moreover, even without verifiable time missing from the Garrett lodestar reports, the FAC's allocation is still grossly underpaying the Murray Law Firm for hours worked at the express direction of the PSC. Even using Mr. Garrett's incomplete records of the Murray Law Firm time, the FAC's recommended allocation to the Murray Law Firm works out to an average rate of $73 per hour. Taking into account the additional, substantiated attorney time of the Murray Law Firm, the actual average rate suggested by the FAC is $52 per hour. FAC members bill their *paralegals* at nearly four times that amount.[22]

Incredibly, the FAC suggests that it conducted a cross-check of its recommendations against the lodestar analysis, and found that only a "modest upward adjustment was warranted" in light of the lodestar. Apparently, the FAC considers it appropriate for law firms to lose money on time that

---

[21]  See Exhibit A.

[22]  See Exhibit E.

they worked at the direction of the PSC, getting paid hourly rates that are a fraction of what PSC members consider appropriate for their clerical staff, while members of the PSC receive significant enhancements of their billable time. This approach is not only contrary to the common benefit rules which prevail in this Circuit, but also acts as a strong deterrent to cooperation with and participation in common benefit efforts in MDL litigation. If attorneys run the risk that they will lose money on their time, even in cases such as the instant suit where a favorable outcome was reached, just so that a handful of attorneys can receive significant enhancements, they will not wish to cooperate with court-appointed leadership.

## V.   Errors in Mr. Garrett's lodestar analysis.

Finally, since discovery of the FAC's process was undertaken, the Murray Law Firm has discovered certain errors in Mr. Garrett's lodestar analysis that should be brought to the attention of the Court. In addition to the omission of 733 hours of Justin Bloom's time, 10 hours of Stephen Murray, Sr.'s time, and 40 hours or Stephen Murray, Jr.'s time, Mr. Garrett's analysis provides erroneous rates for certain Murray Law Firm attorneys.

It appears that in instances where attorneys did not provide a rate for their time, Mr. Garrett arbitrarily assigned rates based on the experience of the attorney.[23] Where attorneys provided a rate, Mr. Garrett simply accepted the rate provided.[24] The time sheets created by the PSC for submission of common benefit time did not provide a place to indicate the attorney's regular rate, nor, to the best of undersigned counsel's knowledge, was the Murray Law Firm ever requested to submit hourly rates for its attorneys. It was assumed that uniform rates would be provided and applied. However,

---

[23] See Exhibit E.

[24] *Id.*

members of the FAC all submitted hourly rates for their attorneys and clerical staff, which rates were accepted by Mr. Garrett.  Not having been afforded the opportunity to submit hourly rates, the Murray Law Firm takes issue with Mr. Garrett's arbitrary determination of hourly rates to certain attorneys and takes this opportunity to submit appropriate hourly rates for consideration with Mr. Garrett's analysis.

Most significant among Mr. Garrett's errors with respect to hourly rates is the rate he assigned to Justin Bloom.  Although Justin Bloom had nearly ten year's experience and worked in a supervisory capacity, Mr. Garrett set his rate at the same amount he used for first year attorneys. The Murray Law Firm submits that an appropriate hourly rate for Mr. Bloom is $400.00 per hour. This is the same rate that FAC member firms have submitted for attorneys with fewer year's experience than Mr. Bloom.  Substitution of this appropriate rate produces a lodestar much higher than that provided by Mr. Garrett, with or without consideration of the additional, confirmable hours submitted by Mr. Bloom which were not included in Garrett's analysis.

Mr. Garrett also assigned arbitrary hourly rates to Stephen Murray, Sr. and Stephen Murray, Jr. without affording them the opportunity to submit their own rates.  Mr. Stephen Murray, Sr. has more than forty years experience as a trial lawyer, and has been a pioneer in complex litigation. Multiple FAC members with similar levels of experience in the same legal markets have submitted hourly rates of $850.00 or higher.  An appropriate hourly rate for Mr. Murray is $850 per hour. However, Mr. Garrett arbitrarily assigned him an hourly rate of $559.70, less than FAC member firms in the same market bill for attorneys of ten to fifteen years' experience.

Mr. Stephen Murray, Jr. is an attorney of fifteen years' experience, with credentials that many attorneys with more years of practice lack.  He is rated AV Preeminent by Martindale-Hubbell and

-13-

has served on numerous plaintiffs' steering committees and sub-committees throughout his career. Attorneys in FAC member firms with similar experience in the same legal markets have submitted hourly rates of $650 per hour and higher.  An appropriate hourly rate for Mr. Murray, Jr. is $650 per hour.  Mr. Garrett erroneously assigned an hourly rate of $419.85 per hour, a rate equivalent to that which FAC member firms in the same market charge for attorneys with only five years' experience.

Taking into account the correct hourly rates and the confirmable hours not included in Mr. Garrett's analysis, the Murray Law Firm lodestar, which is comprised entirely of hours worked at the behest of the PSC and to which the PSC has raised no objection, comes to $1,247,146.66.  Just as other firms are entitled to an enhancement in light of the contingent nature of the work and the favorable outcome achieved, so is the Murray Law Firm entitled to an enhancement over this lodestar amount.

## CONCLUSION

The Murray Law Firm respectfully submits that the FAC's recommended fee allocation, which compensates attorneys with decades of combined experience at rates one quarter of that which the FAC members consider appropriate for their law clerks and paralegals, is woefully inadequate. The suggestion that attorneys who only performed work at the direction of the PSC and who did everything that the PSC ever asked of them should actually *lose* money in a case with as favorable an outcome as this one is absurd.  The FAC has utterly failed to support its assertion that the Murray Law Firm's allocation of $162,000 for roughly three thousand hours of attorney time is appropriate. In light of the uncontested facts that the Murray Law Firm only did work which the PSC asked of it, and that the Murray Law Firm's attorneys' billed hours are appropriate for the work actually performed by them, an appropriate allocation to the Murray Law Firm would be ten times what the

-14-

FAC has recommended.  The Murray Law Firm is every bit as entitled to share in the favorable results of this litigation as those firms at whose direction the Murray Law Firm provided its valuable contribution to the outcome.


Respectfully Submitted:

BY:    MURRAY LAW FIRM

 *s/ Stephen B. Murray*
Stephen B. Murray  (9858)
Stephen B. Murray, Jr. (23877)
650 Poydras Street, Suite 2150
New Orleans, Louisiana 70130
T:     504.525.8100
F:     504.584.5249


## CERTIFICATE OF SERVICE

        I hereby certify that the above and foregoing has been served on Liaison Counsel, Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with PreTrial Order No. 8(B), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the *CM/ECF* system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 28th day of April, 2011.


 *s/ Stephen B. Murray*
Stephen B. Murray  (9858)
MURRAY LAW FIRM
650 Poydras Street, Suite 2150
New Orleans, Louisiana 70130
T:     504.525.8100
F:     504.584.5249