UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: VIOXX : | |
| : | MDL Docket NO. 1657 |
| PRODUCTS LIABILITY LITIGATION : | |
| : | SECTION L |
| : | |
| This document relates to ALL ACTIONS : | JUDGE FALLON |
| : | MAG. JUDGE KNOWLES |
| : | |

## REPLY TO FAC OPPOSITION TO BECNEL LAW FIRM'S OBJECTION

Daniel E. Becnel, Jr. filed *Christina v. Merck,* (docket #04-2726)11 which was the first Vioxx case filed in a Louisiana federal court. At that time, there were only two or three cases filed in Federal Courts nationwide. Daniel E. Becnel, Jr. also filed the moving papers before the MDL Panel to transfer and consolidate MDL 1657 (See attached moving papers marked, Exhibit A). Mr. Becnel was the only lawyer that supported and moved for the Honorable Eldon E. Fallon as the presiding judge for MDL 1657 and previously moved the panel to appoint Judge Eldon E. Fallon in Propulsid, MDL No. 1355, which was Judge Fallon's first MDL. Mr. Herman was not even in the case at that time. Daniel E. Becnel, Jr. and Skip Lambert used his jet plane to fly to Colorado Springs so Becnel could argue the Propulsid case, along with Tom Campion, defense counsel for Jannsen. Subsequently, Mr. Becnel filed moving papers in the Chinese Drywall MDL No. 2047and again asked for Judge Eldon Fallon (see attached marked Exhibit B). In all three instances, the Panel took Daniel E. Becnel, Jr.'s recommendation and appointed Judge Eldon Fallon as the MDL Judge.

Daniel E. Becnel, Jr. set up the first organizational meeting in the Vioxx Litigation at Antoine's Restaurant after JPML established MDL 1657.. Daniel E. Becnel, Jr. paid bill for this

1

meeting and dinner in the amount of $4,269.07. Mr. Herman did not attend the meeting of 50 lawyers who met on leadership. At the meeting he nominated Chris Seeger and Andy Birchfield to be Lead Counsel because he was already reviewing documents produced in the state court litigation in Texas, New Jersey and Alabama preparing his case for trial. At this time, it was Mr. Becnel's understanding that Russ Herman planned to retire so he could teach and travel. For that reason, Mr. Becnel recruited and supported the nomination of Gerald Meunier to serve as Liaison Counsel for MDL 1657, an action he would later pay for in the form of an arbitrary fee recommendation and a time reduction from 16,000 hours to 13,038.25 hours. Phil Garrett and Lenny Davis stated that much of the costs Becnel had incurred should not be paid, to which Mr. Becnel objected and appealed to Mr. Phil Garrett, resulting in all of Becnel's expenses being paid.

In MDL 1657 and the state cases, Daniel E. Becnel, Jr. presided as judge for a mock jury trial with multiple juries at the Westin Hotel in New Orleans which was attended by over 400 lawyers from around the country. Approximately 40 lawyers participated in this mock trials. Seeger, Birchfield and Herman did not even attend this two-day event.

Daniel E. Becnel, Jr. hired Dr. Cyril Wecht, a forensic pathologist for death cases; Dr. John Markis from Harvard, a Cardiologist; Dr. Daniel Acosta and Dr. Augustine Aruna, Pharmacologists and Toxicologists; all of whom attended the mock trial at the Westin and critiqued the arguments, the medical literature and the performance of the lawyers. In fact the night before the mock trial, Daniel E. Becnel, Jr. had dinner with all of these experts, as well as Carlene Lewis and Shelly Sanford. The PSC also requested that Daniel E. Becnel, Jr., retain an FDA expert, Dr. Suzanne Parisian, to fly down to meet with members of the Science Committee. This was requested by John Restaino, the Chairman of the Science Committee and Mr. Becnel complied with this request.

Daniel E. Becnel, Jr. paid for Dr. Cyril Wecht to speak at Mass Torts Made Perfect on the issue of proving death cases without an autopsy. Over 500 lawyers attended this seminar; Herman, Seeger, and Birchfield did not.

Among the physicians attending the dinner meeting was Dr. Augustine Aruna, a Pharmacologist from Xavier; Dr. John Markis, a Cardiologist from Harvard; and Dr. Daniel Acosta, Chairman of the Department of Pharmacology/Toxicology from Houston and Cincinnati. I had previously brought Dr. Cyril Wecht, a Pathologist, to meet many of the lawyers at Mass Torts Made Perfect.

Dr. Parisian is a Forensic Pathologist, as well as an FDA Expert who wrote a textbook, FDA Inside and Out. Dr. Daniel Acosta, wrote a chapter in the Cassarett & Doull's textbook on heart related matters from drugs. The chapter is entitled "Toxic Responses of the Heart and Vascular Systems."

Daniel E. Becnel, Jr. advised at almost every status conference that this case was ready for trial and all of the experts were prepared for trial. The experts used by Andy Birchfield resulted in losses in Houston and New Orleans; one case was even tried twice. Chris Seeger had multiple trials with one loss and one win. The only trial that was successful in federal court in the entire MDL was the *Barnett* trial in which the Becnel Law Firm supplied numerous hours of trial preparation and trial attendance by Rebecca Todd.

Rebecca Todd, of the Becnel Law Firm, spent weeks in California working with Mark Robinson to prepare for this trial. Ms. Todd was very familiar with the documents, having worked at document depositories in Montgomery, Alabama in Andy Birchfield's office and in New York at Chris Seeger's office. Daniel E. Becnel, Jr. also participated in the review of documents because

once documents were discovered by his team of lawyers, they would send documents that people thought were "hot" for him to review and for comment and make decisions as to what he thought and whether his experts thought they were hot. However ,Daniel E. Becnel, Jr. nor anyone from his office was ever asked to take (or even second chair) depositions, despite numerous requests that we be allowed to offer meaningful assistance.

The PSC continually made requests for document reviewers and stated that the only people who reviewed documents would be assigned the task of depositions. As stated above, the entire Becnel team, including Daniel E. Becnel, Jr., reviewed documents. Mr. Birchfield's office in Montgomery assigned reviewers to certain document productions. Virtually no one else was doing this labor intensive work (40 hours a week) in the document depository. For this work in Montgomery, Alabama, no time was billed for travel to this document review, only gasoline bills for the drive from Louisiana to Alabama was submitted, and lawyers doubled up in hotel rooms to keep costs down. Daniel E. Becnel, Jr. supplied his personal vehicles for his lawyers to use to drive to and from Montgomery. Many documents were reviewed by Rebecca Todd, who was very experienced in document review. The only reason she is no longer employed by Daniel E. Becnel, Jr., after having been first employed with him at the age of 21 as a secretary, was because she took over a Technology Company in New York who did work for all of the major law firms throughout the country and she liked city life in New York and had a serious relationship with someone she met there. Judge Ruche Marino (retired) has worked for Daniel E. Becnel, Jr. for eight years since he retired after having over 24 years on the bench and 10 years as a practicing lawyer. He has done document review in multiple MDL's, as has his daughter, Juanita Marino.

The lawyers employed by Daniel E. Becnel, Jr. were some of the only lawyers available to

work because Hurricane Katrina occurred in August, 2005 and Mr. Herman's office was not operational for a significant period of time.

Daniel E. Becnel, Jr. and his team of lawyers were also asked to do page and line summaries of one-third of all depositions taken in state and federal court. All of the above discussed work was completed by the Becnel law Firm as requested. The Becnel Law Firm's diligence in the work required to successfully litigate MDL 1657 should be compensated as originally requested in their fee allocation, contrary to the FAC's fee allocation recommendation.

Despite the fact that Mr. Russ Herman stated that Mr. Phil Garrett has no business relationship with any law firm in the Vioxx Litigation and/or the Chinese Drywall Litigation, a simple examination of his CV will show that Mr. Garrett was first hired by Lenny Davis of the Herman Law Firm in the year 2000 in the Propulsid Litigation. He was also hired in the year 2000 in the *Brightfield* case; the *LaMoyne Riverside Re M/V Brighton* (Riverwalk) case; the *Virginia Miller* v. *Bob Cournoyer* case in Terrebonne Parish; the *Reynold J. Jennins v. Ramsay Health Care, Inc.* case in U.S. District Court and the *Generation Hall* case in Civil District Court. In addition, Mr. Garrett was hired in the *Louisiana Stadium and Exposition District Arbitration* case and the *Delta Petroleum* case in the Civil District Court. All of theses cases he did for various lawyers in the Herman law firm. Therefore his statement that he had no relationship to any law firm on any PSC member is simply not true. Mr Herman put on the record at various PSC meeting in Chinese Drywall that Mr. Garrett has no relationship and/or has not worked for any of the firms involved in the litigation. This is a classic example of misstatements and untruths. Mr. Garrett, nor the PSC, ever suggested to my firm that we send in hourly rates of lawyers working on the Vioxx case. As a matter of fact, I personally hired Mr. Herman and paid him $100,000 to testify in the *Shell Norco*

*Litigation* concerning hourly rates of lawyers in an effort to fulfill the requirement that the Fifth Circuit has set out about market rates in its various decisions. Certainly market rates were not used, nor were experts nor were affidavits submitted concerning market rates to justify the exorbitant lodestar and enhancement given to the FAC. The FAC did not follow any of the most recent decisions of the Fifth Circuit concerning the award of attorney fees.

Despite the fact that the FAC Response to the Becnel Law Firm's common benefit compensation request resulted in a total compensation being recommended to him of $97,076.50, less than $6.00 per hour, not even the minimum wage. In addition, it did not count ever the ten hours of travel to and from Montgomery, Alabama which was not charged. It is amazing, despite the fact that many of the lawyers on the Committee had suites at major hotels, flew on private planes and had limousines taking them around. Being frugal and holding down client costs apparently does not count in an MDL.

Becnel indeed takes credit for filing the first case in the Eastern District of Louisiana. A member of the PSC, Carlene Lewis, says it best "You clearly have extraordinary insight into the process." (See attached marked Exhibit C). Ms. Lewis filed one of the first cases in the country and asked Becnel to get involved in the Vioxx Litigation prior to the MDL.

Becnel Law Firm was indeed one of the leaders in the formation of the MDL and the selection of experts for Vioxx related injuries. Mr. Becnel shared this information with lawyers across the country and made his experts available in order to help these attorneys screen their cases. Becnel had his experts speak at seminars and asked them to provide research which was transmitted via email and/or fax to this networking of lawyers.

Among the physicians attending the dinner meeting with Carlene Lewis and Shelly Sanford were Dr. Augustine Aruna, Dr. John Markis, and Dr. Daniel Acosta. Daniel E. Becnel, Jr. paid for their flights, hotel accommodations and fees for providing this critical information to the lawyers attending and participating in the mock trial. This was critical for both state and federal trials which were pending.

Just this past month, Dr. Cyril Wecht, a Forensic Pathologist and Dr. Ira Gelb, who were both involved in the Fen-Phen Litigation and the Vioxx Litigation, testified for Daniel E. Becnel, Jr. in a case involving *Jacob v. the VA*. See attached hereto Judge Barbier's Opinion on this case which resulted in a plaintiffs verdict in the amount of $933,384.93, marked Exhibit D.

The PSC reimbursed Becnel for costs of all of these experts without objection and now the FAC takes the position that because these experts were not used or provided an expert report, Becnel's office is not allowed to claim common benefit time for all the work performed as a member of the Science Committee in Vioxx. This is absurd. Numerous calls were conducted by John Restaino, almost on a weekly basis. Daniel E. Becnel, Jr. personally attended almost every status conference and urged Judge Fallon to allow the *Christina* case or any of the cases that he filed to be set for trial. Certainly, you do not start looking for experts at the last minute. Many of the experts involved in this case where hired prior to the MDL when Vioxx was being investigated by firms such as Parker, Waichman; Carlene Lewis and Shelly Sanford; and Beasley Allen to name a few. Expert reports were provided as called for under the Case Management Order. Daniel E. Becnel, Jr. and Richard Arsenault collaborated in making presentations concerning Vioxx at seminars, as they had done for years in Propulsid, Guidant and Medtronics MDL's, to name a few. These experts met with

members of the PSC, such as Carlene Lewis, Shelly Sanford, John Restaino and other to help with the understanding of heart attacks and strokes from the drug, Vioxx.

At no time did anyone object to Becnel presiding over the entire mock trial as the judge and critiquing all of the participants, including some of the best lawyers in the country. Certainly Mark Lanier, Paul Sizemore and Mark Robinson were at the head of the lawyers rated by Daniel E. Becnel, Jr. among all those making presentations. The jury was extensively debriefed not only on rating the lawyers but rating theme grids, damages and the like.

The PSC recruited the Becnel firm to provide lawyers to do document review, a task that Daniel E. Becnel, Jr. was first asked to do by Wendell Gauthier, Stan Chesley and others in the Breast Implant case. Wendell knew that I had received a million dollar verdict in Jefferson Parish for a breast implant victim in State Court. He asked Becnel to assemble a team of lawyers and paralegals, which ultimately totaled 35, and he supervised this team in the Breast Implant Litigation. During that early MDL, the lawyers Becnel assembled realized it was important to work together in a depository to "cross pollinate" document reviews while seated together each and every day, not in one's own law firm while cell phones, clients and disturbances occurred on a regular basis. It was also as a result of this litigation that the documents were sent to Becnel and the PSC requested that he take many of the major depositions in Breast Implant. Becnel also personally took many of the major depositions in both the Breast Implant MDL and the Tobacco Litigation, including Toxicologists, Economist, Sales and Marketing personnel, as well as CEO's and the like.

It was also as a result of the Breast Implant Litigation and the Pedicle Screw Litigation that many of the lawyers around the country knew that Becnel not only would produce numerous lawyers to review all of the documents, but would advance significant money, often in the millions of dollars,

when members of the PSC could no longer fund the litigation. This was done in Pedicle Screw, whose Liaison Counsel was Arnold Levin and John Cummings (Becnel funded approximately one-third of the millions of dollars spent in this litigation). This was also done in the Shell Norco Litigation (Becnel funded 80% of the $4 million spent in that litigation). He also supplied numerous lawyers in Pedicle Screw to the document depository in Philadelphia. In fact, Tom Byrne, one of his lawyers, stayed in Philadelphia almost three years.

Daniel E. Becnel, Jr. was requested by Mark Robinson to send the best lawyer he had on documents to California to work with him in preparing for his trial. Rebecca Todd was sent. Rebecca Todd spent weeks at Mark Robinon's home and office bringing him up to speed on the documents she thought could help in the trial. During what was the only successful MDL trial, she was asked to prepare the plaintiff and assist with the debriefings each night. Mark and Rebecca, as well as numerous members of Mark's firm, were working 15 to 18 hours per day during the entire trial. While I personally did not participate in the trial, Rebecca Todd was there every day and every night and worked on the Trial Team that Mark Robinson put together. Rebecca would call me on a daily basis and asked for my input and we discussed what was going on in the trial and Becnel offered his advice. Because Rebecca was paid by Becnel her time falls under the Becnel Law firm submissions. Rebecca worked at the New Jersey depository, the Beasley Allen depository, the New Orleans depository and at the law office and residence of Mark Robinson at the California depository. Because of her extraordinary talents and because she was assigned to Chris Seeger's office in New York for months reviewing documents, she worked with a number of technology companies and was recruited to become the Head of Sales and Marketing in one of the major

technology companies. She did not take this job until after the Barnett trial was concluded and a settlement in Vioxx was announced.

Despite Becnel's vast trial experience and his reputation for assembling experts of the highest quality, Mr. Herman chose to exclude me from any meaningful role in the Vioxx Litigation due to the fact that I supported Gerald Meunier for Liaison Counsel. Because Richard Arsenault and I promoted Gerald Meunier, we were both "black listed" from any meaningful role in the MDL.

When no other firm would send people to do document review, they became desperate and begged our office to do this task. Our office had also done this task in cases such as Fen-Phen, Welding Rods, Propulsid, Baycol, Rezulin, PPA and Sulzer, as well as numerous other non-drug cases, such as train derailments, plant explosions, admiralty cases, etc. In fact, many of the depositions taken by Becnel were used in the Tobacco Litigation by Mark Robinson in his class certification hearing and briefs before the California Supreme Court.

Mark Robinson and I spent months in Philadelphia doing the depositions in the Pennsylvania Tobacco case. It was during our work together there that I told him about Fen-Phen which is another case that I pioneered in starting, including moving for the MDL and becoming Co-Chair of the State/Federal Litigation before Judge Bechtle.

Carlis Griffin worked for Daniel E. Becnel, Jr. for years in numerous cases as a paralegal, secretary and an administrative assistant. She was assigned to the Propulsid Depository where she worked for Daniel E. Becnel, Jr. for two years and was requested to be "loaned" to the PSC in Propulsid as a Committee employee, to which Daniel E. Becnel, Jr. agreed. At the conclusion of the Propulsid case, she was again requested to be "loaned" to the PSC for the Vioxx depository. Becnel again agreed to allow this to occur assuming he would have some meaningful role in the MDL in

which he was one of the major movers of the litigation. See the letter from Penny Herman Grisamore concerning her performance in Vioxx until Hurricane Katrina, and thereafter (Exhibit E). See also her Affidavit about sign in and sign out sheets and who reported to the depository and who did not (See attached marked Exhibit F ). As you can see from her Affidavit, the Becnel Law Firm supplied more people to the depository than any other firm in the country. Most of the time there were just a few people from throughout the country in the depository. The Becnel Law Firm had people there working eight to ten hours a day, Monday through Friday, and on an as needed basis on weekends and at night. See Affidavit of William Percy, marked Exhibit G.

An additional task required of the Becnel Law Firm was the summary of depositions, (page and line), in preparation for various trials. Despite the advances of technology, the people doing the depositions did not have the foresight to utilize the highlighted feature of Realtime depositions and this task would have been eliminated. Since no one performed this task, the Becnel Law Firm was requested to do page and line summaries on an expedited basis. Becnel Law Firm brought other attorneys from other projects to do this top priority tasks, which costs the Becnel Law Firm money because of ongoing other MDL's, such as Guidant, Medtronics, Viagra, Welding Rods, and the like.

As a result of previous experience in those cases and many others, the Becnel Law Firm made a commitment, not only to play a major role in the case, but to obtain referrals from throughout the country because of pioneering effort in Vioxx. When he was not put on the PSC, he lost most of his referrals and a great deal of money that those referrals would have generated in cases. Becnel immediately assembled a team of lawyers to review documents, similar to the team he organized in the Castano Litigation. At one time, Becnel had seven lawyers working full time in Tobacco; some in New Orleans, and others in Philadelphia, South Carolina and wherever else needed. As a result

11

of his ability to fund these cases, as well as supplying lawyers to prepare the cases for trial, Daniel E. Becnel, Jr. and his lawyers were asked to take many of the major depositions in all of the above. A good example is Joe Hassinger, who worked for Becnel for years and now is a defense lawyer in the Chinese Drywall case representing Interior Exterior. All of the lawyers who work for Becnel have excellent computer skills, excellent research skills and would not have been asked to participate in depositions, as was Becnel, not only in the United States, but in Europe in cases involving Sulzer Orthopedics (depositions took place in Vienna, Austria), in Pedicle Screw (depositions took place in Paris, France), in Baycol (depositions took place in Amsterdam).

For example, Daniel E. Becnel, Jr. was appointed Co-Chair with Stan Chesley and Will Kemp for the Deposition Discovery Committee. He was also Co-Chair, along with Don Barrett and Stan Chesley of the Experts Committee. These appointments were made in 1994 at the very beginning of the Castano Tobacco Litigation (See Exhibit H). In fact, the method for document review, originally designed and implemented by Daniel E. Becnel, Jr., in the Breast Implant Litigation, was used in the Tobacco Litigation.

Daniel E. Becnel, Jr. had lawyers who spoke French and German working for him. Again to show the pattern of being "black listed" the two lawyers who were volunteered to translate and review documents in the Chinese Drywall case were never utilized despite the fact that they both lived, worked and were educated in Germany and France and were doing the majority of the translation of German documents in the Trasylol MDL.

The hourly rate charged for Daniel E. Becnel, Jr. is $550.00. The hourly rate for Rebecca Todd is $500.00. The hourly rates for Judge Ruche Marino and Will Percy is $475.00 (he also worked one week in New York at the New York/New Jersey depository at Chris Seeger's office).

The hourly rate for Michael Breinin is $425.00. The hourly rate for Matt Moreland, Kevin Klibert and Sal Christina is $400.00 per hour. The hourly rate for Holly Lamarche, Mary Lorenz, Deanne Sirmon, Margaret Parker, Kelly Morton, Meghan Becnel, Barbara Harris and Juanita Marino is $350.00. The hourly rate for Darla Sanderson, a nurse and attorney is $450.00. There were no charges made for Kay Serven who administered and kept time and charges, payroll and all of the administrative tasks since most lawyers used this type of person in their fee rather then as a separate fee and charge. She sent hundreds of emails throughout the country on a weekly basis especially during the first six months of the Vioxx Litigation in both state and federal court.

Daniel E. Becnel, Jr., adopts by reference the excellent brief filed by The Murray Law Firm.

Respectfully submitted,

s/Daniel E. Becnel, Jr.
DANIEL E. BECNEL, JR.
Becnel Law Firm, LLC
P. O. Drawer H
Reserve, Louisiana 70084
Phone: (985) 536-1186
Fax: (985) 536-6445
Email: dbecnel@becnellaw.com