Exhibit "72"

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: VIOXX<br>    PRODUCTS LIABILITY LITIGATION | MDL NO. 1657<br>SECTION L |
| THIS DOCUMENT RELATES TO:<br>ALL ACTIONS | JUDGE FALLON<br>MAG. JUDGE KNOWLES |

### AFFIDAVIT OF THOMAS R. KLINE

I, Thomas R. Kline, aver as follows:

1.    I am a founding partner, with Shanin Specter, of the law firm of Kline & Specter, P.C. ("Kline & Specter"). I am a member of the Pennsylvania Bar since 1978.

2.    This Affidavit is based upon my personal knowledge and information provided by others in my firm at my request.

3.    On April 8, 2005, the Honorable Eldon Fallon entered an Order appointing me to the Plaintiffs' Steering Committee ("PSC"). The PSC had numerous responsibilities in the Vioxx MDL as set forth in the April 8 Order, a copy of which is attached as Exhibit "A." The Court charged the PSC with managing and overseeing Vioxx litigation for the MDL plaintiffs. Its responsibilities included conducting discovery, examining witness, submitting or opposing motions, entering into stipulations, negotiating settlement with Merck, and maintaining appropriate files of all pretrial matters. *See* Exhibit "A." It was authorized to organize subcommittees of plaintiffs' counsel not on the PSC and to assign them tasks consistent with the PSC's duties. *See id.* The Order appointed Christopher Seeger, Esq. and Andy Birchfield, Esq. as co-lead counsel of the PSC. The Order also appointed Russ Herman, Esq. as Plaintiffs' Liaison Counsel.

4.    I was appointed to be co-chair of the Trial Committee, with Mr. Seeger. In that capacity, I and my firm reviewed and vetted the medical records of available potential cases for trial as bellwether cases in front of the Honorable Eldon Fallon. Unfortunately, as this was early in the litigation and individual case specific discovery had yet to be performed, many of the cases were provided to us with incomplete information, which made the vetting process extremely difficult. Nevertheless, the Irvin trial was ultimately set to be the first bellwether trial in the MDL.

**KS-001252**

5.     I volunteered to be lead trial counsel for Irving case. In August 2005, I began to made preparations and worked with Mr. Birchfield on development of the case.

6.     On August 24, 2005, I attended a meeting at the office of Mr. Herman with Mr. Birchfield. I was informed the Beasley Allen firm would be taking the lead role and that Mr. Beasley had been "knighted" to try the first case. I was very disappointed, and expressed that at the time.

7.     In September 2005, after this Court had been temporarily moved to Houston due to the devastating effects of Hurricane Katrina, I volunteered two potential cases from my own firm for the second bellweather trial—the Abrams case and the Reece case. Merck picked the Abrams case in on or about October 27, 2005.

8.     After consultation with the PSC, particularly those members who were based in New Orleans, in early November 2005, I asked for a change of venue for the trial of this case to Philadelphia. It was the PSC leadership consensus was that the trial of a bellweather case in New Orleans five months after Hurricane Katrina, when potential jurors had recently suffered catastrophic losses, was not in the best interest of either my clients, the Abrams family, or the best interests of the other Vioxx litigants. The Abrams family was also based in Philadelphia and did not want to have the case tried in New Orleans. Many of potential Merck witnesses were based in the Philadelphia or New Jersey area. The Honorable Eldon Fallon, who at this time was still temporarily based in Houston at this time, agreed to this request, and made special arrangements for the case to be heard in front of him in Philadelphia. Meanwhile, discovery continued in the Abrams case. After the case had been selected as a potential bellweather trial, medical records were obtained that indicated that my client's decedent, Dr. Abrams, had been prescribing to himself twice the recommended dose of Vioxx, and that he had been specifically advised by his physicians to discontinue the drug because it was having a deleterious effect on his blood pressure. *See*, relevant medical record attached as Exhibit "B." Unfortunately, he did not follow medical advice, and suffered his fatal heart attack. Upon learning this information, I notified the PSC leadership, including Messers. Seeger, Birchfield, and Herman. They agreed with the decision to withdrawn the case. This was a difficult decision, but in my experience, I felt it was in the best interests of my client and all Vioxx litigants. The Abrams case was withdrawn as a potential bellweather trial on or about November 22, 2005.

9.     I continued to extensively work on Vioxx matters following the November 22, 2005 withdrawal of the Abrams case. I deposed three key third party witnesses for the MDL, Dr.

2                                        **KS-001253**

Eric Topol, Mr. Mal Mixon, Dr. David Graham, and Dr. Gregory Curfman. I assisted counsel that was at trial with strategy advice and crafted cross examinations. I worked on the teams that deposed third parties Dr. Steve Nissen and Dr. Jerome Avorn. I was asked by both co-leads, Mr. Birchfield and Mr. Seeger to come down to New Orleans and argue motions in front of Judge Fallon regarding the admissibility of the Topol and Graham depositions for an upcoming MDL trial during the July 4th week of 2006. Mr. Herman asked me to defer the argument of the Graham motion to him, so I did so. The argument for the Topol deposition, as I understand it, happened on a future date.

10.     Kline & Specter was named liaison counsel in the Philadelphia Coordinated Litigation, and deadlines and trial dates were established for a number of cases. The first case involved the death of a man named Joel McCool. As discovery proceeded in this case, it more and more became apparent that trial of this case would be damaging to the litigation. Mr. McCool had multiple risk factors for a heart attack outside of Vioxx, including high blood pressure, a caloric intake of 8-10,000 calories a day, along with an excessive caffeine intake and morbid obesity. *See*, relevant medical record attached as Exhibit "C." During discovery, his treating physician told us that he intended to testify in a way that would be fatal to the case-that the risk to Mr. McCool of a heart attack was outweighed by the therapeutic benefits of the drug. As a matter of law and fact, the case could not be won and in order not to damage the litigation by trial of a case that had no merit, so it was properly dismissed.

11.     Following the withdrawal of the McCool case, my firm specifically requested that a number of cases be consolidated for trial. This process was ongoing when the litigation settled in November 2007.

Dated: May __5__ , 2011

_____
**THOMAS R. KLINE**

Sworn to and subscribed before
me this _____5ᵗʰ_____ day
of ___May___ , 2011.

_____
Notary Public

My commission expires on:

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
KATHLEEN M. SPURKA, Notary Public
City of Philadelphia, Phila. County
My Commission Expires January 8, 2012

3

**KS-001254**

# EXHIBIT "A"

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

|                                  |   |                         |
|----------------------------------|---|-------------------------|
|                                  | : | MDL NO. 1657            |
| IN RE: VIOXX                     | : |                         |
|     PRODUCTS LIABILITY LITIGATION| : | SECTION:  L             |
|                                  | : |                         |
|                                  | : | JUDGE FALLON            |
|                                  | : | MAG. JUDGE KNOWLES      |

.. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. :

**THIS DOCUMENT RELATES TO ALL CASES**

**PRETRIAL ORDER #6**

Numerous applications/nominations for the Plaintiffs' Steering Committee (PSC)

positions have been filed in accordance with the procedures set forth in Pretrial Order #1. The

Court, after having reviewed the applications and carefully considered the matter, hereby

appoints the following members to the PSC:

Andy D. Birchfield, Jr.  (Co-Lead Counsel)
Post Office Box 4160
Montgomery, AL  36103

Christopher A. Seeger  (Co-Lead Counsel)
One William Street
New York, NY 10004

Richard J. Arsenault
P.O. Box 1190
Alexandria, LA 71309

Elizabeth J. Cabraser
Embarcadero Center West
275 Battery St., 30th Floor
San Francisco, CA 94111

Thomas R. Kline
1525 Locust St., Suite 1900
Philadelphia, PA 19102

Arnold Levin
510 Walnut Street, Suite 500
Philadelphia, PA 19106-3875

Carlene Rhodes Lewis
1111 Bagby, Suite 2200
Houston, TX 77002

Gerald E. Meunier
2800 Energy Centre
1100 Poydras St.
New Orleans, LA 70163

**KS-001419**

Troy A. Rafferty                                    Mark P. Robinson, Jr.
P.O. Box 12308                                      620 Newport Center Dr., 7th Floor
Pensacola, FL 32591                                 Newport Beach, CA 92660

Drew Ranier                                         Christopher V. Tisi
1419 Ryan St.                                       2000 L St. NW, Suite 400
Lake Charles, LA 70601                              Washington, DC 20036

Additionally, the Court appoints Plaintiff's Liaison Counsel, Russ Herman, and Co-Lead

Counsel, Christopher Seeger and Andy Birchfield, to comprise the PSC Executive Committee. It

shall be the Executive Committee's duty to coordinate the responsibilities of the PSC, schedule

PSC meetings, keep minutes or transcripts of these meetings, appear at periodic court noticed

status conferences, perform other necessary administrative or logistic functions of the PSC and

carry out any other duty as the Court may order.

The appointment to the PSC is of a personal nature. Accordingly, the above appointees

cannot be substituted by other attorneys, including members of the appointee's law firm, to

perform the PSC's exclusive functions, such as committee meetings and court appearances,

except with prior approval of the Court.

The PSC will have the following responsibilities:

Discovery

(1)     Initiate, coordinate, and conduct all pretrial discovery on behalf of
        plaintiffs in all actions which are consolidated with the instant multi
        district litigation.

(2)     Develop and propose to the Court schedules for the commencement,
        execution, and completion of all discovery on behalf of all plaintiffs.

(3)     Cause to be issued in the name of all plaintiffs the necessary discovery
        requests, motions, and subpoenas pertaining to any witnesses and
        documents needed to properly prepare for the pretrial of relevant issues
        found in the pleadings of this litigation. Similar requests, notices, and
        subpoenas may be caused to be issued by the PSC upon written request

-2-                                    **KS-001420**

by an individual attorney in order to assist him/her in the preparation of the pretrial stages of his/her client's particular claims.

(4)     Conduct all discovery in a coordinated and consolidated manner on behalf and for the benefit of all plaintiffs.

Hearings and Meetings

(1)     Call meetings of counsel for plaintiffs for any appropriate purpose, including coordinating responses to questions of other parties or of the Court. Initiate proposals, suggestions, schedules, or joint briefs, and any other appropriate matter(s) pertaining to pretrial proceedings.

(2)     Examine witnesses and introduce evidence at hearings on behalf of plaintiffs.

(3)     Act as spokesperson for all plaintiffs at pretrial proceedings and in response to any inquiries by the Court, subject of course to the right of any plaintiff's counsel to present non-repetitive individual or different positions.

Miscellaneous

(1)     Submit and argue any verbal or written motions presented to the Court or Magistrate on behalf of the PSC as well as oppose when necessary any motions submitted by the defendant or other parties which involve matters within the sphere of the responsibilities of the PSC.

(2)     Negotiate and enter into stipulations with Defendants regarding this litigation. All stipulations entered into by the PSC, except for strictly administrative details such as scheduling, must be submitted for Court approval and will not be binding until the Court has ratified the stipulation. Any attorney not in agreement with a non-administrative stipulation shall file with the Court a written objection thereto within five (5) days after he/she knows or should have reasonably become aware of the stipulation. Failure to object within the term allowed shall be deemed a waiver and the stipulation will automatically be binding on that party.

(3)     Explore, develop, and pursue all settlement options pertaining to any claim or portion thereof of any case filed in this litigation.

(4)     Maintain adequate files of all pretrial matters, including establishing and maintaining a document or exhibit depository, in either real or virtual format, and having those documents available, under reasonable terms and

**KS-001421**

conditions, for examination by all MDL Plaintiffs or their attorneys.

(5)   Perform any task necessary and proper for the PSC to accomplish its responsibilities as defined by the Court's orders., including organizing sub-committees comprised of plaintiffs' attorneys not on the PSC and assigning them tasks consistent with the duties of the PSC.

(6)   Perform such other functions as may be expressly authorized by further orders of this Court.

**Plaintiffs' Counsel's Time and Expense Submissions**

Reimbursement for costs and/or fees for services of all plaintiff s' counsel performing functions in accordance with this order will be set at a time and in a manner established by the Court after due notice to all counsel and after a hearing. The following standards and procedures are to be utilized by any counsel seeking fees and/or expense reimbursement.

General Standards

(1)   All time and expenses submitted must be incurred only for work authorized by the Plaintiffs' Steering Committee.

(2)   These Time and Expense Guidelines are intended for all activities performed and expenses incurred by counsel that relate to matters common to all claimants in MDL 1657.

(3)   Time and expense submissions must be submitted on the forms prepared by Plaintiffs' Liaison Counsel (PLC) and approved by the Court. The forms may be obtained from PLC or from the Court's website.

(4)   Plaintiffs' Liaison Counsel has retained and the Court approves the retention of Philip Garrett, CPA, of the accounting firm of Wegmann-Dazet to assist and provide accounting services to Plaintiffs' Liaison Counsel, the Plaintiff's Steering Committee, and the Court in MDL 1657. Wegmann-Dazet will be assisting in compiling submissions and will provide reports to Plaintiff's Liaison Counsel who shall file them with the Court on a monthly basis. These reports will include both time and expenses and will summarize, with back-up detail, the submissions of all firms. Submission of time and expense records to Wegmann-Dazet and the Court shall be considered as if filed under seal.

(5)   Time and expense submissions must be submitted timely, on a monthly basis, to Plaintiffs' Liaison Counsel, Russ M. Herman, c/o Herman, Herman, Katz & Cotlar, L.L.P., 820 O'Keefe Avenue, New Orleans,

-4-                                              **KS-001422**

Louisiana 70113, (504) 581-4892, Fax: (504) 561-6024, e-mail: VioxxMDL@hhkc.com so they can be compiled and submitted to Wegmann-Dazet and the Court. It is therefore essential that each firm, on a monthly basis, timely submit its records for the preceding month.

(6)    All submissions shall be transmitted electronically or in hard copy to Plaintiffs' Liaison Counsel. If hard copy submissions are made, an original and one duplicate copy must be provided.

(7)    The first submission is due on June 15, 2005 and should include all time through May 31, 2005. Thereafter, time records shall be submitted on the 15th of each month and shall cover the time period through the end of the preceding month.

## Time Reporting

(1)    Only time spent on matters common to all claimants in MDL 1657 will be considered in determining fees. <u>No time spent on developing or processing any case for an individual client (claimant) will be considered or should be submitted</u>.

(2)    All time must be accurately and contemporaneously maintained. Time shall be kept according to these guidelines and specifically in accordance with the Litigation Task Definitions as outlined in Attachment "A". All counsel shall keep a daily record of their time spent in connection with this litigation, indicating with specificity the hours, location and particular activity (such as "conduct of deposition of A.B."). The failure to maintain such records, as well as insufficient description of the activity may result in a forfeiture of fees.

(3)    All time for each firm shall be maintained in quarter-of-an-hour increments. Failure to do so may result in time being disallowed.

(4)    All time records shall be submitted together with a form summarizing the total of member firm time broken down by each separate name of time keeper and Litigation Task Definition the time spent during the preceding month and the accumulated total of all time incurred by the firm during the particular reporting period. The summary report form may be obtained from Plaintiffs' Liaison Counsel or from the Court's website.

(5)    The summary report form shall be certified by a senior partner each month attesting to the accuracy and correctness of the monthly submission.

KS-001423

Expense Reporting

    (1)    Advanced costs will be deemed as either "Shared" or "Held."

          a.    Shared Costs are costs that will be paid out of a separate Plaintiffs' Steering Committee MDL 1657 Fund account to be established by Plaintiffs' Liaison Counsel and to be funded by all members of the PSC and others as determined by the PSC. The PSC MDL 1657 Fund account will be administered by Herman, Herman, Katz & Cotlar, L.L.P.

          b.    Held Costs are those that will be carried by each attorney in MDL 1657 and reimbursed as and when determined by the PSC.

    (2)    Each member of the PSC and any others as set forth in section (1) above will contribute to the Plaintiffs' Steering Committee MDL 1657 Fund at times and in amounts sufficient to cover the administration of the MDL. The timing and amount of each assessment will be determined by the PSC.

Shared Costs

    (1)    Shared Costs are costs incurred for the common benefit of the MDL as a whole. No client-related costs can be considered as Shared Costs. All costs of a substantial nature that meet these requirements and fall under the following categories shall be considered Shared Costs and qualify to be submitted and paid directly from the MDL account. All Shared Costs must be approved by Plaintiffs' Liaison Counsel prior to payment. Shared Costs include:

          a.    Court, filing and service costs
          b.    Deposition and court reporter costs
          c.    Document Depository: creation, operation, staffing, equipment and administration
          d.    Plaintiffs' Liaison Counsel administrative matters (e.g., expenses for equipment, technology, courier services, long distance, telecopier, electronic service, photocopy and printing, secretarial/temporary staff, etc.)
          e.    PSC group administration matters such as meetings and conference calls
          f.    Legal and accountant fees
          g.    Expert witness and consultant fees and expenses
          h.    Printing, copying, coding, scanning (out of house or extraordinary firm cost)
          I.    Research by outside third party vendors/consultants/attorneys
          j.    Common witness expenses including travel
          k.    Translation costs
          l.    Bank or financial institution charges

**KS-001424**

        m.     Investigative services

(2)     Plaintiffs' Liaison Counsel shall prepare and be responsible for distributing to the appropriate plaintiffs' counsel and the PSC reimbursement procedures and the forms associated therewith. Request for payments should include sufficient information to allow Plaintiffs' Liaison Counsel and the CPA to account properly for costs and to provide adequate detail to the Court. All requests shall be subject to review and approval by Plaintiffs' Liaison Counsel.

## Held Costs

(1)     Held Costs are costs incurred for the global benefit of the MDL. Held costs are those that do not fall into the above Shared Costs categories but are incurred for the benefit of all plaintiffs in general. No specific client-related costs can be considered as Held Costs. All costs of a substantial nature that meet these requirements and fall under the following categories shall be considered Held Costs and qualify to be submitted for consideration by the PSC and the Court for future reimbursement.

        a.     Telefax charges
        b.     Postage, shipping, courier, certified mail
        c.     Printing and photocopying (in-house)
        d.     Computerized research - Lexis/Westlaw
        e.     Telephone - long distance (actual charges only)
        f.     Travel - (following the travel expense guidelines set forth in Section 5)
              - for attorney for deposition, court or legislative including:
             i.     Airfare
             ii.     Reasonable ground transportation
             iii.     Hotel
             iv.     Reasonable meals and entertainment
             v.     Reasonable other (parking)
             vi.     Car rental, cabs, etc.
        g.     Secretarial and clerical overtime

(2)     Held Cost records shall be submitted to Plaintiffs' Liaison Counsel on a monthly basis.

## Travel Limitations

Except in extraordinary circumstances approved by Plaintiffs' Liaison Counsel or the PSC, all travel reimbursements are subject to the following limitations:

(1)     <u>Airfare.</u> Only the lowest-priced available coach airfare at time of booking (either at restricted coach rates or rates which allow the reservation to rebooked without surcharge and other agency fees) for a reasonable itinerary will be reimbursed.

**KS-001425**

Notwithstanding the foregoing, first class airfare shall be allowed for cross-country flights that are in excess of four hours non-stop flight time or international flights.

(2)   <u>Hotel</u>.  Hotel room charges will be reimbursed up to the greater of (a) $250 per night excluding taxes, or (b) the average available room rate of the Hyatt, Hilton, and Marriott hotels in that city.

(3)   <u>Meals</u>.  Meal expenses must be reasonable.

(4)   <u>Cash Expenses</u>.  Miscellaneous cash expenses for which receipts generally are not available (tips, luggage handling, pay telephone, etc.) will be reimbursed up to $50.00 per trip, as long as the expenses are properly itemized.

(5)   <u>Rental Automobiles</u>.  Luxury automobile rentals will not be fully reimbursed, unless only luxury automobiles were available.  If luxury automobiles are selected when non-luxury vehicles are available, then the difference between the luxury and non-luxury vehicle rates must be shown on the travel reimbursement form, and only the non-luxury rate may be claimed.

(6)   <u>Mileage</u>.  Mileage claims must be documented by stating origination point, destination, total actual miles for each trip, and the rate per mile paid by the member's firm. The maximum allowable rate will be the maximum rate allowed by the IRS (currently 40.5 cents per mile).

<u>Non-Travel Limitations</u>

The following apply:

(1)   <u>Long Distance and Cellular Telephone</u>:  Long distance and cellular telephone charges must be documented.  Copies of the telephone bills must be submitted with notations as to which charges relate to the Vioxx litigation.

(2)   <u>Shipping, Courier, and Delivery Charges</u>:  All claimed expenses must be documented with bills showing the sender, origin of the package, recipient, and destination of the package.

(3)   <u>Postage Charges</u>:  A contemporaneous postage log or other supporting documentation must be maintained and submitted.  Postage charges are to be reported at actual cost.

(4)   <u>Telefax Charges</u>: Contemporaneous records should be maintained and submitted showing faxes sent and received.  The per-fax charge shall not exceed $1.00 per page.

-8-

**KS-001426**

(5)     In-House Photocopy: A contemporaneous photocopy log or other supporting documentation must be maintained and submitted. The maximum copy charge is 25¢ per page.

(6)     Secretarial and Clerical Overtime: An itemized description of the task and time spent must be submitted for secretarial and clerical time. All such overtime must be approved before submission by Plaintiffs' Liaison Counsel or the PSC.

(7)     Computerized Research - Lexis/Westlaw: Claims for Lexis, Westlaw, and other computerized legal research expenses should be in the exact amount charged to the firm for these research services.

Procedures To Be Established by Plaintiffs' Liaison Counsel

Plaintiffs' Liaison Counsel shall establish forms and procedures to implement and carry out the time and expense submissions required by the Court and necessary to compile and maintain the records. These forms may be obtained from Plaintiff's Liaison Counsel or from the Court's website. The forms shall be certified by a senior partner in each firm attesting to the accuracy and correctness fo the submissions.

Questions regarding the guidelines or procedures or the completion of any forms should be directed to Plaintiffs' Liaison Counsel, Russ M. Herman, or Philip Garrett, CPA, or the Court.

New Orleans, Louisiana, this _8ᵗʰ_ day of April, 2005.

          /s/ Eldon E. Fallon
          ELDON E. FALLON
          UNITED STATES DISTRICT JUDGE

**KS-001427**

Attachment "A"

## Litigation Task Code Definitions

The Litigation Code Set is intended for use in all adversarial matters including litigation, binding arbitrations, and regulatory/administrative proceedings. The following definitions elaborate on the intended scope of each phase and task and should guide attorneys in coding time.

### Case Assessment, Development and Administration

Focuses on the case as a whole, the "forest" rather than the "trees".

**Fact Investigation/Development.** All actions to investigate and understand the facts of a matter. Covers interviews of client personnel and potential witnesses, review of documents to learn the facts of the case (but not for document production), work with an investigator, and all related communications and correspondence.

**Analysis/Strategy.** The thinking, strategizing, and planning for a case, including discussions, writing, and meetings on case strategy. Also includes initial legal research for case assessment purposes and legal research for developing a basic case strategy. Most legal research will be under the primary task for which the research is conducted. Once concrete trial preparation begins, use "Other Trial Preparation and Support."

**Experts/Consultants.** Identifying and interviewing experts and consultants (testifying or non-testifying), working with them, and developing expert reports. Does not include preparing for expert depositions, see "Expert Discovery" or time spent with experts/consultants during trial preparation and trial, see "Expert Witnesses."

**Document/File Management.** A narrowly defined task that comprises only the processes of creating and populating document and other databases or filing systems. Includes the planning, design, and overall management of this process. Work of outside vendors in building litigation support databases should be an Expense.

**Budgeting.** Covers developing, negotiating, and revising the budget for a matter.

**Settlement/Non-Binding ADR** All activities directed specifically to settlement. Encompasses planning for and participating in settlement discussions, conferences, and hearings and implementing a settlement. Covers pursuing and participating in mediation and other non-binding Alternative Dispute Resolution (ADR) procedures. Also includes pre-litigation demand letters and ensuing discussions.

**CLE.** Continuing Legal Education related specifically to this matter.

Page 1 of 4

KS-001428

**Other Case Assessment, Development and Administration.** Time not attributable to any other overall task. Specific use in a given matter often may be pre-determined jointly by the client and law firm.

## Pre-Trial Pleadings and Motions

Covers all pleadings and all pretrial motions and procedures other than discovery.

**Pleadings.** Developing (researching, drafting, editing, filing) and reviewing complaints, answers, counter-claims and third party complaints. Also embraces motions directed at pleadings such as motions to dismiss, motions to strike, and jurisdictional motions.

**Preliminary Injunctions/Provisional Remedies.** Developing and discussing strategy for these remedies, preparing motions, affidavits and briefs, reviewing opponent's papers, preparing for and attending court hearing, preparing witnesses for the hearing, and effectuating the remedy.

**Court Mandated Conferences.** Preparing for and attending hearings and conferences required by court order or procedural rules (including Rule 16 sessions) other than settlement conferences. Dispositive Motions. Developing and discussing strategy for or opposing motions for judgment on the pleadings and motions for complete or partial summary judgment, preparing papers, reviewing opponent's papers, defensive motions (e.g., motion to strike affidavit testimony, Rule 56(f) motion), and preparing for and attending the hearing.

**Other Written Motions/Submissions.** Developing, responding to, and arguing all motions other than dispositive motions, pleadings, and discovery, such as motions to consolidate, to bifurcate, to remand, to stay, to compel arbitration, for MDL treatment and for change of venue.

**Class Action Certification and Notice.** Proceedings unique to class action litigation and derivative suits such as class certification and notice.

## Discovery

Includes all work pertaining to discovery according to court or agency rules.

**Written Discovery.** Developing, responding to, objecting to, and negotiating interrogatories and requests to admit. Includes mandatory meet-and-confer sessions. Also covers mandatory written disclosures as under Rule 26(a).

**Document Production.** Developing, responding to, objecting to, and negotiating document requests, including the mandatory meet-and-confer sessions to resolve objections. Includes identifying documents for production, reviewing documents for privilege, effecting production, and preparing requested privilege lists. (While a general review of documents produced by other parties falls under this task, coding and entering produced documents into a data base is "Document/File Management"

Page 2 of 4

**KS-001429**

and reviewing documents primarily to understand the facts is "Fact Investigation/Development."

**Depositions.** All work concerning depositions, including determining the deponents and the timing and sequence of depositions, preparing deposition notices and subpoenas, communicating with opposing or other party's counsel on scheduling and logistics, planning for and preparing to take the depositions, discussing deposition strategy, preparing witnesses, reviewing documents for deposition preparation, attending depositions, and drafting any deposition summaries.

**Expert Discovery.** Same as "Depositions," but for expert witnesses.

**Discovery Motions.** Developing, responding to, and arguing all motions that arise out of the discovery process. Includes the protective order process.

**Other Discovery.** Less frequently used forms of discovery, such as medical examinations and on-site inspections.

## Trial Preparation and Trial

Commences when lawyer and client determine that trial is sufficiently likely and imminent so that the process of actually preparing for trial begins. It continues through the trial and post-trial proceedings in the trial court. Once trial begins, lawyers who appear in court presumptively should bill their court time to "Trial and Hearing Attendance." Litigation work outside the courtroom during this phase (e.g., evenings, weekends and the time of other attorneys and support personnel), should continue to be classified using "Other Trial Preparation and Support."

**Fact Witnesses.** Preparing for examination and cross-examination of non-expert witnesses.

**Expert Witnesses.** Preparing for examination and cross-examination of expert witnesses.

**Written Motions/Submissions.** Developing, responding to and arguing written motions during preparation for trial and trial, such as motions in limine and motions to strike proposed evidence. Also includes developing other written pre-trial and trial filings, such as jury instructions, witness lists, proposed findings of fact and conclusions of law, and trial briefs.

**Other Trial Preparation and Support.** All other time spent in preparing for and supporting a trial, including developing overall trial strategy, preparing opening and closing arguments, establishing an off-site support office, identifying documents for use at trial, preparing demonstrative materials, etc.

**Trial and Hearing Attendance.** Appearing at trial, at hearings and at court-mandated conferences, including the pre-trial conferences to prepare for trial. For scheduling conferences that are denominated as "Pre-Trial Conferences", but not directed toward conduct of the trial, use "Court Mandated Conferences."

Page 3 of 4

**Post-Trial Motions and Submissions.** Developing, responding to and arguing all post-verdict matters in the trial court, such as motions for new trial or j.n.o.v., for stay pending appeal, bills of costs, and requests for attorney's fees.

**Enforcement.** All work performed in enforcing and collecting judgments and asserting or. addressing defenses thereto.

## Appeal

Covers all work on appeal or before a reviewing body.

**Appellate Motions and Submissions.** Developing, responding to and arguing motions and other filings before a reviewing body, such as motions and other filings for stay pending appeal.

**Appellate Briefs.** Preparing and reviewing appellate briefs.

**Oral Argument.** Preparing for and arguing an appeal before a reviewing body.

**KS-001431**

# EXHIBIT "B"

RE: PATIENT: _Abrams, Leonard_

BELOW IS A BRIEF IMPRESSION AND RECOMMENDATIONS FOR YOUR PATIENT

SERVICE PROVIDED:   CONSULT   FOLLOW UP   PROCEDURE

IMPRESSION:

. PLS → much impru.

Spinal stenosis

Vioxx → ↑ BC, edema

RECOMMMENDATIONS:

① Cont ketamine TX - 26 wk

② Trial of WTRAN

③ Taper NTN

④ D/C Vioxx

**KS-001255**

# EXHIBIT "C"

Joel McCool

5/22/98  First visit for this gentleman who is an exterminator, a hard working guy, probably works 18 hrs. a day, sleeps 3 to 4 hrs. and I don't know how he does it but he works 7 days a week.  He says he feels fine except for some aches and pains in some joints.  Denies chest pain, shortness of breath.  He does drink all day long, something like 25 mugs of tea with caffeine and feels he has to do that to keep him going.  He eats probably 8-10,000 calories a day too. He is a heavy guy, his BP is 130/94, taken twice. Eyes ears nose and throat are normal other than this red raised lesion on the left side of his face, to me it looks like an actinic keratoses, it is rough. We cryosurgerized it.  His heart, lungs, abdomen normal. External genitalia and rectal examination are normal. He just is very solid, a lot of fluid and fat in his abdominal wall.   We suggested blood studies to re-evaluate for diabetes and that we wanted to have him get blood work and check back with us after the blood work is done and we may need to do a stress test, we may need to do another group of tests. We did send him to the G.I. guy because he was told he has some pre-malignant lesion in his stomach and he has a strong family history of cancer. We will see him back in a month.  He will lose 25 lbs.  RS ps

KS-001432