Exhibit "75"

4/13/05 Montgomery Advert. (Ala.) A1
2005 WLNR 27102718

Montgomery Advertiser (AL)
Copyright © 2005 Gannett

April 13, 2005

Section: A

Merck wants Vioxx case dismissed

April 13, 2005

dway@gannett.com

The Vioxx pills that an Alabama widow claims caused her husband's death Sept. 4, 2001, were not on the market until a half year later, attorneys for Merck Pharmaceutical said Tuesday in asking Clay County Circuit Court to dismiss the wrongful death case as bogus.

"This evidence demonstrates, at minimum, that plaintiff's claim is predicated on an impossibility," the motion contends in asking the judge to throw out the first U.S. trial involving the popular arthritis painkiller. Trial is scheduled for next month.

The motion says Cheryl Rogers of Talladega "has given demonstrably false evidence under oath and committed a fraud on both Merck and the court" in written briefs and depositions about events surrounding the death of her husband, Howard Bradley Rogers, a television technician who volunteered as a paramedic in Anniston.

Merck lawyers said company records prove that the lot numbers on the boxes of Vioxx that Rogers presented as the samples taken by her husband were not on the market until six months after his death.

Pre-trial testimony by the Rogers' doctor indicated it was unlikely they would have been given the volume of samples Cheryl Rogers said they obtained.

"Merck has in its possession medical records that show Brad Rogers was prescribed Vioxx within a month of his death and separate medical records showing that he had taken Vioxx within two weeks of his death," said Andy Birchfield of the Beasley Allen law firm in Montgomery, which represents Rogers.

"This is clearly hardball tactics on behalf of Merck," Birchfield said. "I guess it's not surprising considering they have set aside nearly $700 million just to defend the case and what they have at stake here, but nonetheless it's hardball tactics."

James Fitzpatrick of Hughes, Hubbard and Reed, a New York law firm defending Merck, dismissed the allegations.

"Merck intends to vigorously defend these cases," Fitzpatrick said. "The facts that we learned, Merck felt it was necessary to bring those to the attention of the court."

Merck voluntarily recalled the popular arthritis painkiller last September after studies showed it caused elevated risk of strokes and heart attacks. As many as 20 million Americans were prescribed the medication, whose sales tipped $2.5 billion worldwide.

Thousands of Vioxx personal injury cases are expected to go to trial in federal and state courts. Birchfield has been named co-lead counsel for plaintiffs attorneys in litigation that consolidates preliminary matters from all federal court cases nationwide in U.S. District Court in New Orleans.

KS-001257

But even as the court cases proceed, a U.S. Food and Drug Administration panel recommended last week to allow Vioxx sales to resume.

Wilbur Colom, a plaintiffs attorney practicing in Columbus, Miss., who was involved in successful Phen-fen product liability litigation and has several Vioxx cases pending, was interested in the developments of the Clay County case.

"If it's true, if it's manufactured after his death, they face a problem," Colom said.

"The thing about it is Beasley Allen are extremely good lawyers and if they brought that kind of case, that man took the prescription," Colom said. "This is just not the kind of firm to be involved in some kind of irresponsible allegation like that. You're talking about a premier firm."

He said it will be necessary for Beasley Allen to get more information on how Merck identified the batch numbers of the samples in question in the Rogers case. And he questions Merck's legal tactics.
"Do you think if they had something that ironclad they would wait until the weeks before the trial to bring it up? It sounds to me like they're just trying to avoid the day of reckoning," Colom said.

"You can see that's a very legitimate legal argument, but it totally sidesteps the medical and scientific issues," John Lehmann, a pharmacologist of Wayne, Pa., said of Merck's claims about the dates on the Vioxx samples. His company, DrugIntel.com, provides expert testimony at trial.

Lehmann was fired by the French pharmaceutical company Servier after his research showed some of its drugs could cause damage to neurons in the brain. Those drugs were used in the manufacture of the diet pill Phen-fen, which was proven to cause serious health injuries and was subject to massive litigation. He is convinced studies done on Vioxx before it was recalled by Merck proved there were cardiovascular risks but the drugmaker ignored them.

"There's a nod and a wink between the industry and the FDA" in this case and others, he said.

"It is a real shame that the way that we have to recover from ultimately what is bad regulation of drugs getting on the market is this terrible dogfight between attorneys, because what's going to court is not at all the medical or scientific merits of the case," Lehmann said.

In the motion filed Tuesday, Merck lawyers said Cheryl Rogers changed her responses several times to pretrial questions about the sequence of events related to her husband's use of Vioxx.

Rogers gave different answers at different times about the length of time her husband had taken Vioxx and how many samples were given to him by Dr. William Clancy, according to the motion.

At one point, the motion states, she said additional boxes of Vioxx she was asked to produce for the Merck lawyers to examine were at home in a safe. When she returned a few days later, she said she had placed the boxes in a book bag, which she left in a car in Duluth, Ga., while she was there purchasing a new vehicle. When her old car was returned, she said, the boxes were missing.

In his deposition, Clancy said normal procedure in his office is to note when and how many samples are given to a patient. No such notations existed for Rogers' husband, according to the Merck motion.

Clancy said his office didn't keep large volumes of the samples on hand, and doubted that anyone in his office would give 96 sample tablets to Rogers, as his widow claimed, when that was three times the amount written on his prescription.

---- Index References ----

Company: US FOOD AND DRUG ADMINISTRATION

**KS-001258**

News Subject: (Legal (1LE33); Products Liability (1PR53); Major Corporations (1MA93); Liability (1LI55); Health & Family (1HE30))

Industry: (Pharmaceuticals & Biotechnology (1PH13); Pain Management (1PA72); Analgesics (1AN10); Arthritis (1AR77); Pharmaceuticals Research & Development (1PH57))

Region: (Alabama (1AL90); North America (1NO39); USA (1US73); Americas (1AM92))

Language: EN

Other Indexing: (BEASLEY ALLEN; CLAY COUNTY; CLAY COUNTY CIRCUIT COURT; FDA; MERCK; MERCK PHARMACEUTICAL; US DISTRICT COURT; US FOOD AND DRUG ADMINISTRATION; VIOXX) (Andy Birchfield; Birchfield; Brad Rogers; Cheryl Rogers; Clancy; Colom; Fitzpatrick; Howard Bradley Rogers; James Fitzpatrick; John Lehmann; Lehmann; Pre; Reed; Rogers; Wilbur Colom; William Clancy)

Edition: 01

Word Count: 1205

**End of Document**                                          © 2011 Thomson Reuters. No claim to original U.S. Government Works.

**KS-001259**

4/22/05 Oster Dow Jones Select 02:03:02

OsterDowJones Select
Copyright © 2005 Comtex News Network, Inc. All Rights Reserved.

April 22, 2005

WSJ(4/22) Merck Vows To Fight Each Vioxx Case

```
(From THE WALL STREET JOURNAL) By Barbara Martinez
```
Apr 21, 2005 (Dow Jones Commodities News Select via Comtex) --ASHLAND, Ala. -- Merck & Co. calls 33-year-old widow Cheryl Rogers a liar.

At a deposition, Mrs. Rogers presented packages of the Merck painkiller Vioxx that she said her late husband used just before dying suddenly of a heart attack. Merck says those packages left the factory six months after Mr. Rogers died. The widow "has given demonstrably false evidence under oath and committed a fraud on both Merck and the court," said a Merck filing last week in the Circuit Court of Clay County here.

As Merck faces Vioxx liability that some analysts have estimated could top $20 billion, it says it is committed to fighting every case against it with a legal war chest of $675 million. That includes the case filed by Mrs. Rogers, which next month has a good chance of becoming the first in the nation to go to trial. Mrs. Rogers says she made an honest mistake mixing up her husband's package with one used by another family member.

Vioxx was withdrawn from the market last Sept. 30 after a Merck study suggested it doubled the risk of heart attack and stroke in those taking the drug for more than 18 months. In the lawsuits, Merck is now combing patients' pasts for evidence that their unhealthy habits, not the drug, caused heart problems. And its lawyers have won some important procedural victories, driving up the costs for plaintiffs' lawyers.

Merck still faces a daunting task in winning over juries. Plaintiff lawyers plan to stress how multiple studies suggested Vioxx was a problem years before the withdrawal. Many experts who raised questions have said Merck tried to squash their views. At one point, the Food and Drug Administration sent a warning letter telling Merck to stop making unsupported claims about Vioxx's cardiovascular safety.

Merck is hoping for better results than some other corporations that have faced mass litigation. Drug maker Wyeth originally allotted $3.75 billion in 1999 to settle a class-action case involving its "fen-phen" diet pills but costs have spiraled to $21.1 billion as new claims emerged and tens of thousands of plaintiffs opted out of the agreement.

Bayer Corp. took another approach, settling claims from those who suffered serious harm from its anticholesterol drug Baycol but aggressively contesting others. Its settlement payments totaled $1.11 billion as of this February.

Merck has a third way: "We intend to defend each case one at a time," says its general counsel, Kenneth Frazier. Unlike Wyeth's case, the Vioxx plaintiffs may not gain class status. At the same time, Merck faces a much larger group of potential plaintiffs: More than 20 million Americans are thought to have taken Vioxx. James Tyrrell, a defense lawyer at Latham & Watkins, says Merck had little choice but to fight because setting up a settlement fund now "would attract so many more plaintiffs."

"Some companies try to enter into early global settlements in hopes that will bring an end to the controversy," said Mr. Tyrrell, who isn't involved in Vioxx litigation. "The problem with that is like in asbestos -- you were never able to settle your way into a final resolution."

**KS-001260**

Many lawyers agree that the first five or 10 cases of the nearly 2,500 that have been filed are crucial. If Merck scores consecutive victories, it could scare off other plaintiffs and limit its financial damage. That would do wonders for Merck's stock price, which is already up more than 20% since the beginning of February but is still well below its level prior to Merck's withdrawal of Vioxx. But a few losses could embolden thousands of other plaintiffs to sue, and the result could be a broad and costly settlement. The uncertainty has been a factor in slowing Merck's search for a successor to Chief Executive Raymond Gilmartin, who is scheduled to retire in March 2006. One of several internal candidates to succeed Mr. Gilmartin is Mr. Frazier, Merck's general counsel, who declined to discuss the company's Vioxx strategy in detail.

One of Merck's legal defenses will be that it is extremely difficult to know in any individual case whether Vioxx caused a heart attack or stroke because the diseases are so common. Many patients took the drug for only a few months, and the Merck study that led to the withdrawal suggested that the damage only starts after 18 months. Even if patients took the drug for longer than 18 months, Merck intends to fight by showing that other factors could have been responsible.

Merck has hired some of the best-known defense lawyers in the country including the powerhouse Washington firm of Williams & Connolly. Also on the team is John Beisner, a Washington-based partner at O'Melveny & Myers. In 2002, Mr. Beisner helped Ford Motor Co. block a class-action suit involving Ford Explorers that rolled over.

The cases coming up this summer were already in the works before Merck withdrew Vioxx, a $2.5 billion-a-year drug. Starting in 2001, several doctors raised questions about the drug's effect on the heart. But the company continued advertising Vioxx heavily as a first-line treatment for pain until the trial results last year precipitated the drug's removal.

The first test may come in Alabama, where Cheryl Rogers is suing over her husband's death in 2001. A trial is set for May 23 -- the earliest trial date of any Vioxx case. If the verdict is also the first, it is likely to receive nationwide attention and could set the tone for future litigation.

Brad Rogers was a 42-year-old ambulance dispatcher who collapsed and died after finishing a night shift. Both sides agree Mr. Rogers had risk factors for a heart attack. He was overweight and had high blood pressure and high cholesterol. That's why he shouldn't have been taking Vioxx, says Mrs. Rogers's lawyer, who adds that he only has to prove Vioxx was a contributing factor in Mr. Rogers's death to win his case.

Mrs. Rogers says her husband was taking Vioxx from a package of samples he got from his doctor. At a deposition, she brought the sample package she said her husband was taking. But Merck analyzed the serial number on the package and said in a court filing last week that it left the factory six months after Mr. Rogers died.

Mrs. Rogers's lawyer, Andy Birchfield, was taken off guard. He learned about the Merck filing from a reporter's call. Minutes later, as he fidgeted with a rubber band, Mr. Birchfield called a colleague at his firm and asked: "Do we have a copy of the original prescription? What do we have?"

It turns out that Mr. Rogers received a prescription for Vioxx a few weeks before his death, but never filled it. Nonetheless, Mr. Birchfield says there's plenty of evidence that Mr. Rogers was taking Vioxx. His widow, sister-in-law and son have stated that they witnessed him swallowing the drug. Two weeks before he died, Mr. Rogers saw a doctor and said he was taking Vioxx, according to the doctor's notes.

Mr. Birchfield describes Mrs. Rogers as a "poor country girl" and says she made an honest mistake in assuming the samples she found had been her husband's instead of those used by another relative. The Rogers family lives in a trailer next to the house of Mrs. Rogers's parents.

In February, Mr. Rogers's body was exhumed for an autopsy by medical examiners from both sides. The plaintiff's examiner said Vioxx likely caused Mr. Rogers's death by causing a fatal blood clot to form. Merck's examiner said Mr. Rogers showed evidence of longstanding cardiovascular problems.

**KS-001261**

Merck argues that Mrs. Rogers's credibility has been so damaged that the case should be dismissed. But Mrs. Rogers isn't about to give up. Merck's criticism, says the widow, "makes me more determined. I want to fight them worse now than I did." She prides herself on her toughness and carries a gun in her car. When she was younger, Mrs. Rogers killed rattlesnakes and sold the skins to a trader in town who would make boots with them. "I used to cut their heads off and let them bleed," she said. Now, she kills rattlesnakes "just for fun."

If the case goes to trial, Mr. Birchfield says he'll likely call the Rogers's 9-year-old son, Kyle, as a witness. A judge is scheduled to decide on Merck's motion to dismiss next Tuesday.

One factor likely to weigh heavily in the Alabama trial and others is whether juries are allowed to hear evidence submitted to show that even short-term use of Vioxx could lead to cardiovascular problems. Some states allow judges to block questionable science from being presented in courtrooms. Several of the studies that cast doubt on Vioxx were retrospective analyses of large databases, not placebo-controlled clinical trials, and Merck will argue that experts shouldn't be allowed to cite these studies in court. Plaintiffs say these studies were conducted by respected scientists and are significant.

In at least one case, plaintiffs' lawyers see evidence of another Merck tactic: delaying trials to increase the pressure on plaintiffs' lawyers who work on contingency fees and must foot all their costs up front. In Texas, Merck has hired a local attorney, Rene Oliveira, who is also a state legislator. A Texas state law allows a defendant to postpone a case for several months if a state legislator is involved. Merck asked for a delay in the trial, originally set to start Feb. 14 in a district court in Rio Grande City, Texas. Before that could be decided, a separate Merck move to get the trial transferred to federal court succeeded. A new trial date hasn't been set.

Kathryn Snapka, the plaintiff's lawyer in that case, calls the Merck move a "sham." Ms. Snapka won a $56.5 million award against Wyeth in south Texas over its diet drugs in 2001; the judge reduced the judgment to about $9 million. Merck denies that it hired Mr. Oliveira as a delaying tactic or that it has a policy of trying to delay trials. "I have extensive experience in these kinds of cases," Mr. Oliveira says.

(MORE) Dow Jones Newswires

04-21-05 2303ET

---- Index References ----

Company: LATHAM AND WATKINS; FORD MOTOR CO; WYETH; MERCK AND CO INC; BAYER CORP

News Subject: (Crime (1CR87); Legal (1LE33); Social Issues (1SO05); Criminal Law (1CR79); Liability (1LI55); Health & Family (1HE30); Major Corporations (1MA93))

Industry: (Analgesics (1AN10); Pharmaceuticals & Biotechnology (1PH13); Manufacturing (1MA74))

Region: (USA (1US73); Americas (1AM92); Alabama (1AL90); North America (1NO39); Texas (1TE14))

Language: EN

Other Indexing: (BAYER CORP; CIRCUIT COURT; COMMODITIES NEWS SELECT; FOOD AND DRUG ADMINISTRATION; FORD MOTOR CO; LATHAM WATKINS; MERCK; MERCK CO; WILLIAMS CONNOLLY; WYETH) (21.; Andy Birchfield; Apr 21; Barbara Martinez; Beisner; Birchfield; Brad Rogers; Cheryl Rogers; Ford Explorers; Frazier; Gilmartin; James Tyrrell; John Beisner; Kathryn Snapka; Kenneth Frazier; Kyle; Nonetheless; Oliveira; Raymond Gilmartin; Rene Oliveira; Rogers; Snapka; Tyrrell; Vioxx) (R/AL; R/EC; R/EU; R/GE; R/NJ; R/NME; R/TX; R/US; R/USE; R/USS; R/WEU; UNITED STATES)

**KS-001262**

Case 2:05-md-01657-EEF-DEK   Document 62932-87   Filed 05/06/11   Page 8 of 13

Keywords: advertising; alabama; cardiovascular; clinical; defense; doctors; dow+jones; drugs; family; federal; health; high +blood+pressure; legal; local; medical; policy; rubber; science; texas; trial; war; washington (I/CHM); (I/CHS); (I/DRG); (I/XDAX); (I/XDJGI); (I/XDJI); (I/XFFX); (I/XGTI); (I/XISL); (I/XNYA); (I/XSP5); (N/DJAG); (N/DJCS); (N/DJOS); (N/OSAG); (N/OSCM); (N/OSFF); (N/OSTR); (N/ADR); (N/CMD); (N/CNW); (N/DJSS); (N/DJWI); (N/FRT); (N/GEN); (N/HLT); (N/JNL); (N/LWS); (N/PAG); (N/RBR); (N/WEI); (N/WLS); (Pharmaceuticals); (Medical-Drugs); (Consumer, Non-cyclical)

Company Terms: MERCK AND CO INC

Product: Pharmaceuticals

Sic: 2834

Ticker Symbol: BAY; BAY.XE; MRK; WYE; New York:MRK

Word Count: 1998

**End of Document**                                 © 2011 Thomson Reuters. No claim to original U.S. Government Works.

KS-001263

4/24/05 AP General Fin./Bus. News 19:55:00

AP General Financial/ Business News
Copyright © 2005 The Associated Press. All rights reserved. This
material may not be published, broadcast, rewritten or redistributed.

April 24, 2005

Vioxx Trials May Clear Up Merck Picture

By THERESA AGOVINO

AP Business Writer

NEW YORK_The financial future of Merck & Co. should start to become clearer in the coming weeks as the first of what promises to be hundreds of trials begins over claims that the drug maker's Vioxx pain medication contributed to patient' death or disability.

Vioxx was pulled from the market last Sept. 30. Analysts have estimated that Merck's potential liability could soar to as high as $18 billion if plaintiff lawyers can successfully prove Vioxx caused their client's death or injury and that Merck knew about the drug's potentially lethal side effects and sold it anyway.

But before the first trial can start, Clay County Circuit Court Judge John Rochester in Ashland, Ala., 90 miles northeast of the Alabama state capital, must decide whether Cheryl Rogers' claim can proceed.

Rogers insists the Vioxx her 42-year old husband took caused his death. Merck says Rogers is a liar, arguing in court documents that the pills she claimed he took didn't leave the company until six months after he died.

Rogers' lawyer, Andy Birchfield, can't explain the pill issue, but said numerous witnesses, including a pastor's wife, will testify her husband was taking Vioxx when he died.

A hearing is scheduled for Tuesday on Merck's request that Rogers' wrongful death case be dismissed. If Rochester rules the trial should proceed, it is slated to begin on May 23.

Merck removed Vioxx from the market after a study found it doubled the risk of heart attack and strokes in patients taking it for more than 18 months. That opened the lawsuit floodgates; more than 2,400 have been filed so far.

Merck says it has done nothing wrong and has no intention of settling the cases. It has set aside $675 million to fight the lawsuits and has hired some of the country's top law firms to defend it.

Whether the Alabama case or another set for Texas later in May is the first to go before a jury, Wall Street analysts and other plaintiff lawyers will be paying close attention to the flood of documents expected to be entered into evidence. "The first trials set the stage for the litigation," said Howard Erichson, a professor at Seton Hall Law School in Newark, N.J.

A string of plaintiff victories could push Merck into an expensive settlement and act as a magnet for additional cases. Plaintiff triumphs could also set precedents establishing that Vioxx causes cardiovascular problems and that Merck acted recklessly in promoting it, lawyers said.

Decisive victories by Merck, on the other hand, could cause plaintiffs to reconsider their cases, limit its financial damages and prevent the setting of potentially damaging precedents.

**KS-001264**

Plaintiff lawyers claim there is ample evidence Merck ignored early signs of Vioxx's side effects and sold it anyway _ much of it still under seal. Included in their public arsenal: numerous studies showing that Vioxx increases heart attacks and strokes and a Food and Drug Administration letter warning Merck about its characterizations of Vioxx's cardiovascular safety.

Vioxx accounted for $2.5 billion of Merck's 2003 sales, and analysts estimate the drug provided 15 percent of Merck's profit that year.

Merck's shares lost $28 billion of their market value the day the recall was announced and since then, Merck earnings and revenue have slumped. That forced the company to slash spending and increase planned job cuts by 700 to 5,100.
Merck has said documents that have surfaced which suggest it ignored Vioxx's side effects have been taken out of context and that it always acted responsibly. It also maintains that proving Vioxx caused an individual's heart attack or stroke will be very difficult, as such ailments are not uncommon and are caused by a variety of factors.

For example, Rogers' husband had high blood pressure, high cholesterol and was overweight _ all considered risks for heart attacks.

"It is going to be very interesting to see if the plaintiffs can prove causality," said Merrill Lynch analyst David Risinger. "And we'll see what evidence there really is to suggest that Merck had concerns about cardiovascular safety and if Merck can be held liable for punitive damages."

Alabama ranks 48th in a ranking of states with the worst litigation environments for defendants, according to a survey of corporate lawyers conducted for the U.S. Chamber Institute for Legal Reform. The state is among the bottom five in every measure ranked by the survey, including jury fairness, judge's competence and judge's impartiality.

And Clay County, located near the Georgia state line, is hardly a defendant's paradise. The median income is roughly $29,000 and only 8 percent of its residents have a college education.

Rural counties comprised of poor and uneducated residents create a "friendly environment" for plaintiffs, according to Leonard Nelson, a professor at Cumberland Law School at Samford University, in Birmingham, Ala.

An Associated Press review of campaign finance reports showed that Judge Rochester, a Democrat, received $60,000 in contributions last year from political action committees funded by Birchfield's law firm for his failed bid to become a state supreme court judge.

Rochester, in an interview Friday with the AP, said donations from any source do not influence him. "If it had any influence, I would violate my oath of office, and I'd be removed from office," he said.

The judge also said state judicial rules prohibit him from talking about a pending case, so it's unclear whether he will turn aside Merck's request to throw out Rogers case. But what is sure: Wall Street and the other plaintiffs lawyers will be watching if his case wins the race to be first out of the gate.

#### ---- Index References ----

Company: MERCK AND CO INC

News Subject: (Legal (1LE33); Liability (1LI55); Health & Family (1HE30); Major Corporations (1MA93))

Industry: (Analgesics (1AN10); Pharmaceuticals & Biotechnology (1PH13); Manufacturing (1MA74))

Region: (USA (1US73); Americas (1AM92); Alabama (1AL90); New York (1NE72); North America (1NO39))

Language: EN

**KS-001265**

Vioxx Trials May Clear Up Merck Picture

Other Indexing: (ALABAMA; AP; CLAY COUNTY; CLAY COUNTY CIRCUIT COURT; CUMBERLAND LAW SCHOOL; MERCK; MERCK CO; MERRILL LYNCH; SAMFORD UNIVERSITY; SETON HALL LAW SCHOOL; US CHAMBER INSTITUTE FOR LEGAL REFORM) (Andy Birchfield; Birchfield; Cheryl Rogers; David Risinger; Decisive; Howard Erichson; Leonard Nelson; Rogers; Rural; Vioxx; Vioxx Trials; Wall Street) (United States; USA; NorthAmerica)

Keywords: (FDA); (Lawsuits); (Product); (f); (HCR)

Company Terms: MERCK AND CO

Ticker Symbol: MRK

Word Count: 1124

**End of Document**                                        © 2011 Thomson Reuters. No claim to original U.S. Government Works.

**KS-001266**

4/30/05 Mobile Reg. (AL) B5
2005 WLNR 24000215

Mobile Register (AL)
Copyright © 2005 Mobile Register. All Rights Reserved. Used by NewsBank with Permission.

April 30, 2005

Section: B

Alabama judge refuses to dismiss Vioxx wrongful death suit

SAMIRA JAFARI

Alabama judge refuses to dismiss Vioxx wrongful death suit By SAMIRA JAFARI Associated Press Writer

MONTGOMERY - An Alabama judge Friday refused to dismiss a wrongful death suit filed against Merck & Co. by a woman who said its painkiller Vioxx caused her husband's death.

Circuit Judge John Rochester rejected the dismissal motion by Merck but will hold a hearing Tuesday on motions by both sides to postpone the scheduled start of the trial.

In calling for dismissal, Merck argued that the Vioxx samples Cheryl Rogers claims killed her husband, Brad, did not even leave the company until six months after he died.

But Rochester said in his order Friday that while there were discrepancies in Rogers' testimony, they did not "merit a dismissal of her claim." He said it's up to the jury to determine Rogers' credibility.

Rogers has told The Associated Press that she got confused and wasn't sure if the Vioxx samples she presented to the court belonged to her husband or her mother. Her attorney, Jere Beasley, said the origin of the samples is irrelevant.

"The medical records show he was taking Vioxx. That was just a straw man they threw up," Beasley said Friday after receiving the order.

Merck attorney Mike Brock said the defense will still argue the merits of the Rogers case and whether Vioxx directly contributed to Brad Rogers' death.

"The Court's order notes the existence of important questions, including questions about Mr. Rogers' ingestion of Vioxx and the source of that Vioxx," Brock said in a statement Friday afternoon. "Merck will present the evidence that has been uncovered to date to a jury and looks forward to that opportunity."

Rochester said he received motions Thursday for continuance of the Rogers case from both Merck and the plaintiff's attorneys, who were acting in response to a request by U.S. District Judge Eldon E. Fallon, based in New Orleans.

The federal judge asked that the case scheduled for May 23 in Alabama be postponed so it wouldn't interfere with federal litigation.

Merck, based in Whitehouse Station, N.J., pulled Vioxx off the market last September after a study showed it doubled the risk of heart attacks and strokes in patients taking the drug for more than 18 months. So far, more than 2,400 lawsuits have been filed involving Vioxx.

**KS-001267**

Earlier this year, Fallon was selected to handle all pretrial proceedings such as gathering evidence and interviewing witnesses in the federal cases. The cases will be returned to their original jurisdictions after the pretrial proceedings.

There are 477 cases in the multi-district federal litigation, and an additional 382 are being moved to Fallon's court.

Although the Alabama trial is a state case, plaintiff attorney Paul Sizemore said his firm complied with the judge's request out of respect for the federal court. Sizemore added that his partner, Andy Birchfield, is co-lead counsel on a federal plaintiff steering committee so it would have been awkward to refuse the judge's request.

Copyright © 2005 Mobile Register. All Rights Reserved. Used by NewsBank with Permission.

**---- Index References ----**

Company: MERCK AND CO INC

News Subject: (Legal (1LE33); Health & Family (1HE30); Major Corporations (1MA93))

Industry: (Analgesics (1AN10); Pharmaceuticals & Biotechnology (1PH13); Pain Management (1PA72); Manufacturing (1MA74))

Region: (USA (1US73); Americas (1AM92); Alabama (1AL90); North America (1NO39))

Language: EN

Other Indexing: (ALABAMA; MERCK; MERCK CO; MONTGOMERY; VIOXX) (Andy Birchfield; Beasley; Brad; Brad Rogers; Brock; Cheryl Rogers; Circuit; Eldon E. Fallon; Fallon; Jere Beasley; Mike Brock; Paul Sizemore; Rogers; SAMIRA JAFARI; Sizemore)

Edition: 01

Word Count: 612

**KS-001268**