UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re:  VIOXX<br><br>**PRODUCTS LIABILITY LITIGATION**<br><br>This document relates to:<br><br> ALL COMMON<br>BENEFIT FEE APPLICANTS | MDL Docket No. 1657<br><br>SECTION L<br><br><br><br>JUDGE FALLON<br>MAG. JUDGE KNOWLES |

**AMENDED MEMORANDUM OF LAW IN SUPPORT OF
FAC'S MOTION TO EXCLUDE JOEY MARKOWITZ
FROM TESTIFYING AND TO EXCLUDE THE PIVOT REPORT**

**I.    INTRODUCTION**

The Objectors are attempting to introduce at the 11th hour of these proceedings an expert report prepared by computer programmer Joey Markowitz using "Pivot" software (the "Pivot Report").  Pivot software is utilized in construction projects to "streamline[] critical accounting procedures and provide[] a clear, complete audit trail."[1]  This software integrates "general ledger, accounts payable and receivable (including invoicing and quotations), payroll, job cost, purchase order, inventory management, time and material billing, change order control, work orders and equipment costing."[2]  The Pivot Report that Markowitz created is based on an analysis prepared and filed by the Court-appointed auditor, Phil Garrett, of the time and cost submissions of the fee applicants, but it is not based on any of the underlying data.  The

---

[1] http://findaccountingsoftware.com/directory/explorer-software/pivot/.

[2] *Id*.

Objectors have made no proffer as to Markowitz's credentials as an expert in computer programming or in the creation or interpretation of a Pivot Report. Nor have they made any showing as to the methodology used by Markowitz to create the Pivot Report or its reliability. There has been no opportunity for the parties to test the validity or efficacy of the Pivot Report and there is no way at this juncture to assess its reliability under *Daubert*. For these reasons, the Pivot Report should be excluded.

Moreover, because the Objectors did not properly identify Markowitz as an expert or submit an expert report under Fed. R. Civ. P. 26(a)(2), Markowitz should be precluded from testifying.

**II.     ARGUMENT**

    **A.     The Pivot Report Should Be Excluded Under *Daubert*.**

It is well established in this Circuit based that "District courts have an important role as gatekeepers in determining whether to admit expert testimony." *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 355 (5th Cir. 2007). The objective of this gatekeeping responsibility _is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field._ *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999).

    Rule 702 of the Federal Rules of Evidence provides that:

> If scientific, technical, or other specialized knowledge will assist
> the trier of fact to understand the evidence or to determine a fact in
> issue, a witness qualified as an expert by knowledge, skill,
> experience, training, or education, may testify thereto in the form
> of an opinion or otherwise, if (1) the testimony is based upon

> sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The proposed testimony of Joey Markowitz that relies upon the Pivot Report that Markowitz prepared using Pivot software and analyzing time and cost analyses of the Court-appointed auditor is precisely the type of testimony contemplated by Rule 702. *See Cooper v. Southern Co.*, 390 F.3d 695, 728 (11th Cir. 2004), *cert. denied*, 546 U.S. 960 (2005), *overruled on other grounds*, *Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 457 (2006) (finding that the techniques utilized to "extract[] substantial data from the defendants' databases, perform[] statistical probability calculations, and express[] opinions about the significance of these calculations" "plainly require the kind of technical or specialized knowledge that is the hallmark of expert evidence" under Fed. R. Evid. 702).

This Court has a special obligation to ensure that any and all scientific or technical evidence meets proper standards for admissibility. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589, 596 (1993); *Moore v. Ashland Chemical, Inc.*, 151 F.3d 269, 275 (5th Cir. 1998); MANUAL FOR COMPLEX LITIGATION, 472 (4th ed. 2004). The Court is thus tasked with "ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597; *Newton v. Roche Labs., Inc.*, 243 F. Supp. 2d 672, 676 (W.D. Tex. 2002) ("trial court must consider the validity of the principles applied by the expert, the accuracy of the data relied upon by the expert, and the precision of the application of the principles to the relevant data"). Expert testimony may not be admitted without first making those determinations. *Id.* at 589; *Black v. Food Lion, Inc.*, 171 F.3d 308, 311 (5th Cir. 1999) ("overarching goal of *Daubert*'s gate-keeping requirement ... is to ensure the reliability and

relevancy of expert testimony."); *see also Trollinger v. Tyson Foods, Inc.*, 2008 WL 305032, *2 (E.D. Tenn. Jan. 31, 2008) ("a statistician's testimony would only be reliable if (1) the mathematical formulas and computer programs used to synthesize the data were reliable, (2) the data itself was collected in a reliable manner or taken from a reliable source, and (3) the data was analyzed by the computer programs in a reliable way, *e.g.* the computer technicians double-checked their work, and the statistician's conclusions were reliably based upon the results").

Factors to consider in determining reliability include, but are not limited to: (1) whether the theory or technique can be or has been tested; (2) whether the theory or technique has been subject to peer review and publication; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the operation of the technique; and (5) the "general acceptance" of the methodology in the relevant community. *Daubert*, 509 U.S. at 592-94. Whether some or all of these factors apply in any particular case depends on the facts, the expert's particular expertise and the subject of his or her testimony. *Kumho Tire*, 526 U.S. at 138.

After considering the above "*Daubert*" factors, a trial court may then consider "whether other factors, not mentioned in *Daubert*, are relevant to the case at hand." *Black*, 171 F.3d at 312. Some of these factors include: (1) whether the expert has adequately accounted for alternative explanations; (2) whether the expert proposes to testify about matters growing directly out of research he or she has conducted independent of the litigation; (3) whether the expert's opinion is based on incomplete or inaccurate data; and (4) whether the expert unjustifiably has extrapolated from an accepted premise to an unfounded conclusion. *See*, *e.g.*,

4

*id*. at 313; *Christophersen v. Allied-Signal Corp.*, 939 F.2d 1106, 1114 (5th Cir. 1991); *Lauzon v. Senco Prods., Inc.*, 270 F.3d 681, 692 (8th Cir. 2001); *Cooper v. Brown*, 510 F.3d 870, 946 (9th Cir. 2007); *Newton v. Roche Labs., Inc.*, 243 F. Supp. 2d 672, 678 (W.D. Tex. 2002); Advisory Comm. Notes to FRE 702 (2000 amendments).

"Additionally, in cases involving technical subjects ... trial courts may consider relevant literature, evidence of industry practice, product design ... in evaluating reliability." *Meadows v. Anchor Longwall and Rebuild, Inc.*, 306 Fed.Appx. 781, 788, 2009 WL 74399, **7 (3rd Cir. Jan. 13, 2009); *see also Cochran v. Brinkmann Corp.*, 2009 WL 4823858, *8 (N.D. Ga. Dec. 9, 2009) ("the accepted methodology, characterizing the practice of an expert ... simply does not involve guesswork or even conjecture; rather, accepted methodology more often involves some inquiry into industry standards, practices, or publications and results in conclusions based upon concrete data, testing, measurements, or calculations._).

Courts have made clear that _[t]he reliability analysis applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion, et alia._ *Id*. (quotation omitted). In the final analysis, under *Daubert*, "the expert's testimony must be reliable at each and every step or else it is inadmissible." *Knight*, 482 F.3d at 355. And, _any step that renders the analysis unreliable ... renders the expert testimony inadmissible._ *Curtis v. M&S Petroleum, Inc.*, 174 F.3d 661, 670-71 (5th Cir. 1999) (citation omitted). "This is true whether the step completely changes a reliable methodology or merely misapplies that methodology._ *In re Paoli R.R. Yard PCB Litigation*, 35 F.3d 717, 745 (3rd Cir. 1994). Thus, any false assumptions or "guesstimates" along the way will preclude admissibility of expert testimony. *See Coffey v. Dowley Mfg.*, 89 Fed.Appx. 927, 931 (6th Cir.

5

2003) ("The lack of grounds for these estimates, especially when viewed in light of [the expert's] complete failure to test his predictions, casts doubt on his results."); *Paz*, 555 F.3d at 388 (district court found expert's conclusion to be "unreliable because she had based it on a false assumption"); *Seaman v. Seacor Marine, LLC*, 326 Fed.Appx. 721, 726, 2009 WL 1158799, **3 (5th Cir. Apr. 30, 2009) (assumptions of expert "rendered her causation opinion mere guesswork"; expert "testimony relie[d] on no scholarly studies and merely recite[d] her opinion.").

For the second prong of the test determining admissibility of expert testimony, *i.e.*, whether the proffered opinion is "relevant to the task at hand," the Supreme Court has held that this requirement is met only if the expert's "reasoning or methodology can be applied to the facts in issue." *Daubert*, 509 U.S. at 593. In other words, the testimony is relevant only if there is an appropriate "fit" between the expert testimony and the facts of the case. *Id*. at 591. Technical evidence is considered irrelevant, and therefore inadmissible, when there is too great an analytical gap between the data and the opinion proffered. *General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997) (holding that it was not an abuse of discretion to conclude that the studies experts relied on did not individually or in combination support their conclusions); *Knight*, 482 F.3d at 355 (upholding district court's decision to exclude an expert's testimony on the grounds that "the analytical gap between the studies on which he relied and his conclusions was simply too great and that his opinions were thus unreliable.").

The moving party bears the burden of demonstrating that the testimony is both reliable and relevant. *Moore*, 151 F.3d at 275-76; *United States v. Baines*, 573 F.3d 979, 985 (10th Cir. 2009); *Newton*, 243 F. Supp. 2d at 677. The focus in assessing admissibility of expert testimony

is not on the result or conclusion of the expert, but, rather, on the methodology that the expert used to arrive at his or her opinion. *Moore*, 151 F.3d at 276.  Accordingly, the proponent need not prove that the expert's testimony is correct, but the party must prove by a preponderance of the evidence that the methodology used by the expert is proper. *Id.*; *Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 388 (5th Cir. 2009); *In re Propulsid Prods. Liab. Litig.*, 261 F. Supp. 2d 603, 615 (E.D. La. 2003); *Newton*, 243 F. Supp. 2d at 677.

In this instance, the Objectors never even acknowledged any need to demonstrate the reliability of Markowitz's testimony or Pivot Report under *Daubert*, because they did not list him as an expert or submit a proper expert report under Fed. R. Civ. P. 26(a)(2).  Their failure to comply with the Rules speaks volumes.  Markowitz has taken analyses of the Court-appointed auditor and without the underlying data, Markowitz has used computer programming software to manipulate those reports and create a Pivot Report.  The Objectors have not met their burden of showing this report is reliable under the law, and it must be excluded.

    **B.** **<u>Markowitz Should Not Be Permitted To Testify Under Fed. R. Civ. P. 37.</u>**

Under Rule 26 of the Federal Rules of Civil Procedure, parties must timely disclose expert opinion reports that provide:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; (iii) any exhibits that will be used to summarize or support them; (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years; (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and (vi) a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B).  "Formal disclosure of experts is not pointless." *Musser v. Gentiva*

*Health Svcs.*, 356 F.3d 751, 756 (7th Cir. 2004).  It allows parties to properly prepare for trial.  Rule 37 provides teeth to the disclosure obligations of Rule 26, stating:  "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), <u>the party is not allowed to use that information or witness . . . at a trial</u>, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1) (emphasis added).

Rule 37 sanctions are mandatory unless one of the two exceptions is met, and a court "need not find bad faith before imposing sanctions for violations of Rule 37."  *Oracle USA, Inc. v. SAP AG*, 246 F.R.D. 541, 544-45 (N.D. Cal. 2009).  Indeed, the Advisory Committee Notes describe the Rule as "a self-executing sanction for failure to make a disclosure required by Rule 26(a), without the need for a motion under subdivision (a)(2)(A)," and an "automatic sanction" that "provides a strong inducement for disclosure of material that the disclosing party would expect to use as evidence."  Fed. R. Civ. P. 37 Advis. Comm. Notes.  The Rule "is a recognized broadening of the sanctioning power," and courts "have upheld the use of the sanction even when a litigant's entire cause of action or defense has been precluded."  *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F. 3d 1101, 1106 (9th Cir. 2001).  "[T]he burden is on the party who failed to comply to demonstrate that it meets one of the two exceptions to mandatory sanctions," *i.e.*, that the failure to timely disclose or supplement was either (1) substantially justified, or (2) harmless.  *Oracle*, 264 F.R.D. at 545; *Yeti*, 259 F.3d at 1107 ("[T]he burden is on the party facing sanctions to prove harmlessness.").

Under Fifth Circuit law, the trial court may exercise its discretion to exclude experts not properly designated by considering four factors:  "(1) the explanation for the failure to identify the witness; (2) the importance of the testimony; (3) potential prejudice in allowing the

testimony; and (4) the availability of a continuance to cure such prejudice." *Hamburger v. State Farm Mut. Auto. Ins. Co.*, 361 F.3d 875, 883 (5th Cir. 2004); *Geiserman v. MacDonald*, 893 F.2d 787, 791 (5th Cir. 1990). The Fifth Circuit has cautioned that "[b]ecause of a trial court's need to control its docket, a party's violation of the court's scheduling order should not routinely justify a continuance." *Hamburger*, 361 F.3d at 884.

In this case, Markowitz was never properly identified as an expert. This Court has already determined that "the Vioxx litigation is at a late stage." *See* Court Order dated 4/21/2011, at 1 (Rec. Doc. No. 62883). The MDL was formed more than six years ago and the global Settlement was inked more than three years ago. The Court found that "[n]ow is not the time to rehash the entire litigation or to permit unlimited discovery allowing every participating attorney the chance to second-guess the work done by every other attorney. *Id*. at 1-2. Therefore, a continuance is certainly not warranted.

The Court has ruled that "the hearing set by the Special Master is more than adequate, particularly in light of the many opportunities every common benefit fee applicant has had to submit written statements of the nature, quality, and value of their contributions to the common benefit." Order at 2-3 (Rec. Doc. No. 62883. The Objectors are attempting to introduce expert testimony from a computer programmer who has not been qualified to opine on a Pivot Report he prepared. There has been no proper *Daubert* analysis of Markowitz's credentials and qualifications or any assessment of the Pivot Report's reliability or validity.

There can be no doubt that the Objectors must be sanctioned under Rule 37. They failed to disclose Markowitz as an expert or provide a proper expert report. This failure is not justified. And, it cannot be said that the failure to disclose was harmless. At this juncture, there is no time

to properly analyze the report, test its validity or determine whether Markowitz is qualified to opine on the Pivot Report. As the Court ruled in *Musser*, "[t]he failure to disclose experts prejudiced [the other party] because there are countermeasures that could have been taken that are not applicable to fact witnesses, such as attempting to disqualify the expert testimony on grounds set forth in *Daubert* ..., retaining rebuttal experts, and holding additional depositions to retrieve the information not available because of the absence of a report." *Musser*, 356 F.3d at 757-58.

Rule 37 therefore mandates that the Objectors be precluded from introducing Markowitz or his report at the hearing. *See Hamburger*; *Oracle* (precluding plaintiffs from introducing any evidence of the categories of damages that had not been properly disclosed to defendants in the course of discovery); *Cooper v. Southern*, 390 F.3d at 728 (Because the expert witness discovery rules are designed to allow both sides in a case to prepare their cases adequately and to prevent surprise, ... compliance with the requirements of Rule 26 is not merely aspirational.").

### III.    CONCLUSION

For the reasons set forth above, Markowitz should not be permitted to testify in these proceedings and the Pivot Report should be excluded.

Respectfully submitted,

Date: May 11, 2011						By: /s/ Russ M. Herman
**Russ M. Herman (Bar No. 6819)**
Leonard A. Davis (Bar No. 14190)
Stephen J. Herman (Bar No. 23129)
***Herman, Herman, Katz & Cotlar, L.L.P.***
820 O'Keefe Avenue
New Orleans, Louisiana  70113
Telephone: (504) 581-4892
Facsimile: (504) 561-6024

**CHAIRMAN OF THE FEE ALLOCATION COMMITTEE**

Andy D. Birchfield, Jr., Esquire
Leigh O'Dell, Esquire
BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P.C.
P.O. Box 4160
234 Commerce Street
Montgomery, AL 36103-4160
(800) 898-2034 (telephone)
(334) 954-7555 (telecopier)
**Secretary of FAC**

Christopher A. Seeger, Esquire
SEEGER WEISS
One William Street
New York, NY 10004
(212) 584-0700 (telephone)
(212) 584-0799 (telecopier)

Edward F. Blizzard, Esquire
BLIZZARD, MCCARTHY & NABERS, L.L.P
Lyric Centre, 400 Louisiana
Suite 1710
Houston, TX 77002-1689
(713) 581-8451 (telephone)
(713) 844-3755 (telecopier)

Thomas V. Girardi, Esquire
GIRARDI & KEESE
1126 Wilshire Blvd.
Los Angeles, CA 90017
(213) 977-0211 (telephone)
(213) 481-1554 (telecopier)

W. Mark Lanier, Esquire
THE LANIER LAW FIRM
6810 FM 1960 West
Houston, TX 77069
(713) 659-2500 (telephone)
(713) 659-2204 (telecopier)

Arnold Levin, Esquire **(on brief)**
Fred S. Longer, Esquire **(on brief)**
LEVIN, FISHBEIN, SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA  19106
(215) 592-1500 (telephone)
(215) 592-4663  (telecopier)

Troy Rafferty, Esquire
LEVIN, PAPANTONIO, THOMAS, MITCHELL,
ECHSNER & PROCTOR, PA
316 S. Baylen Street, Suite 400
Pensacola, FL  32502
(850) 435-7000 (telephone)
(850) 497-7059 (telecopier)

Perry Weitz, Esquire
WEITZ & LUXENBERG
180 Maiden Lane
New York, NY 10038
(212) 558-5500 (telephone)
(212) 344-5461 (telecopier)

## **CERTIFICATE OF SERVICE**

       I hereby certify that the above and foregoing has been served on Liaison Counsel, Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with PreTrial Order No. 8(B), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 11th day of May, 2011.

    /s/ Leonard A. Davis
Leonard A. Davis (Bar No. 14190)
***Herman, Herman, Katz & Cotlar, LLP***
820 O'Keefe Avenue
New Orleans, LA  70113
PH:   (504) 581-4892
FAX:  (504) 561-6024
ldavis@hhkc.com