1                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA

2

3   ***************************************************************

4

   IN RE: VIOXX PRODUCTS
5   LIABILITY LITIGATION

6                            MDL DOCKET NO. 1657
                            SECTION L
7                            NEW ORLEANS, LOUISIANA
                            WEDNESDAY, OCTOBER 27, 2010, 9:00 A.M.

8

9   THIS DOCUMENT RELATES TO:

10  BOB STEPHENS, INDIVIDUALLY, AND
   AS THE ADMINISTRATOR FOR THE
11  ESTATE OF JOHNIE STEPHENS,
   DECEASED

12
                         CIVIL ACTION NO:  E.D. LA 06-CV-1678
13  V                        ARE 4-06-CV-0259 WRW

14

   MERCK & CO., INC.
15

16  ***************************************************************

17               TRANSCRIPT OF HEARING PROCEEDINGS
           HEARD BEFORE SPECIAL MASTER PATRICK A. JUNEAU
18            AT THE UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF LOUISIANA
19

20  APPEARANCES:

21

22  SPECIAL MASTER:        PATRICK A. JUNEAU
                    THE HARDING CENTER
23                  1018 HARDING ST.
                    SUITE 202
24                  P. O. DRAWER 51268
                    LAFAYETTE, LA 70505

25

```
 1   APPEARANCES CONTINUED:

 2

 3   FOR BOB STEPHENS:        POTTER MINTON
                              BY:  E. GLENN THAMES, JR., ESQUIRE
 4                            110 N. COLLEGE, SUITE 500
                              TYLER TX  75702
 5

 6
     FOR GARY HOLT
 7   & ASSOCIATES, P.A.,
     F/K/A GARY EUBANKS
 8   & ASSOCIATES, P.A.,
     AND GARY L. EUBANKS:     GARY HOLT & ASSOCIATES
 9                            BY:  BREEAN WALAS, ESQUIRE
                                   GARY HOLT, ESQUIRE
10                                 GARY L. EUBANKS, ESQUIRE
                              708 WEST SECOND STREET
11                            LITTLE ROCK AR  72201

12

13   ALSO PRESENT:            BOB STEPHENS

14

15   OFFICIAL COURT REPORTER:     CATHY PEPPER, CCR, RMR, CRR
                                  CERTIFIED REALTIME REPORTER
16                                500 POYDRAS STREET, ROOM B406
                                  NEW ORLEANS, LOUISIANA 70130
17                                (504) 589-7779
                                  Cathy_Pepper@laed.uscourts.gov
18

19   PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY.  TRANSCRIPT
     PRODUCED BY COMPUTER.
20

21

22

23

24

25
```

1                          **I N D E X**

2

3    <u>SPEAKERS</u>                                        <u>PAGE</u>

4

5    MR. THAMES..........................................    5

6    MS. WALAS...........................................   13

7    MR. THAMES..........................................   26

8    MS. WALAS...........................................   29

9

10

11                    E X H I B I T S

12   <u>DESCRIPTION</u>                                     <u>PAGE</u>

13

14   STEPHENS #1.........................................    5

15   EUBANKS #1..........................................   13

16   EUBANKS #1A.........................................   17

17   SPECIAL MASTER #1...................................   32

18   SPECIAL MASTER #2...................................   32

19

20

21

22

23

24

25

**P-R-O-C-E-E-D-I-N-G-S**

WEDNESDAY, OCTOBER 27, 2010

M O R N I N G    S E S S I O N

(COURT CALLED TO ORDER)


THE COURT:  On the record, this matter is called for a hearing *In re Vioxx Products Liability* action, MDL Number 1657. This is a scheduled hearing involving a disputed attorney lien claim involving Gary Eubanks and Johnie Stephens.  For the purposes of the record, let me have counsel make their appearances, please.

MR. THAMES:  Glenn Thames.

SPECIAL MASTER JUNEAU:  Use the microphone.

MR. THAMES:  Glenn Thames for Bob Stephens.  We're ready to proceed.

SPECIAL MASTER JUNEAU:  With you is whom?  Mr. Stephens?

MR. THAMES:  Mr. Stephens is with me and we're ready to proceed.

MS. WALAS:  Breean Walas for Gary Holt & Associates, which used to be known as Gary Eubanks & Associates, and Mr. Eubanks is here with me, as well as Gary Holt.

SPECIAL MASTER JUNEAU:  Just for the purposes of the record, I have received from the respective counsel the bench books required by the scheduling order, and I have both of them

08:56AM 1    here.  I will entertain during the course of the proceedings the

08:56AM 2    introduction into evidence by the respective parties those bench

08:56AM 3    books which contain the documents which are required by the Court

08:56AM 4    and any other documents which may be required.

08:56AM 5              Let me start the hearing this way:  We have a claim

08:56AM 6    of Mr. Eubanks and then we have the opposition.  I'm going to

08:56AM 7    start with the opposition first.  Would you come forward, sir,

08:56AM 8    and I'll allow you to introduce and make whatever comments you

08:56AM 9    deem appropriate.

08:56AM 10             MR. THAMES:  Sure.  Thank you.  Just as a housekeeping

08:56AM 11   matter, since you mentioned it, we will offer the exhibits in the

08:56AM 12   notebooks submitted on behalf of Stephens at this time for

08:56AM 13   admission for purposes of the record.

08:56AM 14             SPECIAL MASTER JUNEAU:  You're talking about your bench

08:56AM 15   books that were submitted?

08:56AM 16             MR. THAMES:  Yes.

08:56AM 17             SPECIAL MASTER JUNEAU:  I'm going to mark that as

08:57AM 18   Stephens #1 and let it be received in evidence.

08:57AM 19             MR. THAMES:  Thank you.  If I call you *Your Honor*,

08:57AM 20   Judge, it's a little -- I'm used to --

08:57AM 21             SPECIAL MASTER JUNEAU:  You can be loose with it.

08:57AM 22             MR. THAMES:  -- to doing that with someone sitting up

08:57AM 23   here in front of me.

08:57AM 24             There is only one issue for you to decide in the

08:57AM 25   case, and that is whether there was good cause for Mr. Stephens

08:57AM 1   to terminate the Eubanks Law Firm.  The answer to that is yes,

08:57AM 2   and the reasons are pretty simple.  They did not carry out his

08:57AM 3   reasonable instructions, and they did not take the steps that a

08:57AM 4   reasonable lawyer would have taken to gather the evidence.

08:57AM 5           Mr. Stephens, in his initial meeting with

08:57AM 6   Mr. Roundtree, told Mr. Roundtree that Kroger Pharmacy had paper

08:57AM 7   records going back further than what was on a printout that he

08:58AM 8   obtained from the store and gave to Mr. Roundtree.  He told him

08:58AM 9   that he had tried to get those paper records but that the store

08:58AM 10  refused to give him those without a subpoena, and so he needed

08:58AM 11  Mr. Roundtree to get those paper records.

08:58AM 12          Never in this case was a subpoena ever sent to

08:58AM 13  Kroger, and never was any request for any paper records made or

08:58AM 14  any paper records obtained by the Eubanks Law Firm.  They

08:58AM 15  obtained one piece of paper.  It was another computer printout

08:58AM 16  just like the one Mr. Stephens gave them in the initial interview

08:58AM 17  except that it had fewer prescriptions on it than the one

08:58AM 18  Mr. Stephens gave them.

08:58AM 19          Of course, Mr. Stephens didn't know about any of

08:58AM 20  this for over 2 years.  He, once he learned of this, he started

08:58AM 21  trying to mitigate the harm.  He started doing a lot of work

08:58AM 22  himself trying to figure out if there was another way he could

08:59AM 23  prove up the duration of use.  And he tracked down insurance

08:59AM 24  companies and tried to track down retired doctors, all kind of

08:59AM 25  things like that, and none of it really wound up being all that

08:59AM 1    successful.

08:59AM 2              Ultimately, the case was appealed twice to the

08:59AM 3    second level of review to the Special Master, and some affidavits

08:59AM 4    were presented.  Mr. Stephens talked to the former pharmacist up

08:59AM 5    there and gave some information to Mr. Eubanks, who had come

08:59AM 6    personally into the case by this time, and they obtained an

08:59AM 7    affidavit from him that was submitted, and the Special Master on

08:59AM 8    the second level of review did award the full duration of use.

09:00AM 9              Before any of that occurred, Mr. Stephens was doing

09:00AM 10   this work to try to find anything he could to help his case.  He

09:00AM 11   went back to Kroger Pharmacy during this period of time and

09:00AM 12   learned that they might still have some of those paper records

09:00AM 13   upstairs on the second floor.  He went back to Mr. Eubanks and

09:00AM 14   wanted him to go and try to get those records to see if they

09:00AM 15   would show something, and he again said, no, he wasn't going to

09:00AM 16   do that, and that was when the termination occurred.

09:00AM 17             What's their defense to all of this?  Their defense

09:00AM 18   is that Mr. Stephens ultimately won his appeal and got paid the

09:00AM 19   full duration of use.  They are going to tell you that he filed a

09:00AM 20   civil lawsuit and that he later dismissed after winning that

09:00AM 21   appeal, and those are both true but they are irrelevant.

09:00AM 22             Mr. Stephens filed that lawsuit because he had to

09:00AM 23   because the statute of limitations was going to run before he

09:01AM 24   ever found out from the Special Master whether or not he was

09:01AM 25   going to get an award for the full duration of use.  When he

09:01AM 1    found out that that award, that the master had reversed it and

09:01AM 2    that he had given the full duration of use, he dismissed that

09:01AM 3    lawsuit.  Of course, that wasn't until after he had spent about

09:01AM 4    $10,000 on that case.

09:01AM 5                    What's important --

09:01AM 6                    SPECIAL MASTER JUNEAU:  Let me ask you a couple of

09:01AM 7    questions.

09:01AM 8                    MR. THAMES:  Sure.

09:01AM 9                    SPECIAL MASTER JUNEAU:  Who obtained the affidavit

09:01AM 10   you're talking about from Kroger's?  A minute ago I thought you

09:01AM 11   said Mr. Stephens went back to Kroger's, found out they had some

09:01AM 12   more records, and then he got an affidavit, as I recall?

09:01AM 13                   MR. THAMES:  That's correct.  At one point there was

09:01AM 14   a -- Mr. Stephens talked to a retired pharmacist and communicated

09:01AM 15   the information that he knew about that retired pharmacist to

09:02AM 16   Mr. Eubanks, and Mr. Eubanks obtained an affidavit from that

09:02AM 17   pharmacist.

09:02AM 18                   SPECIAL MASTER JUNEAU:  My question is did Mr. Eubanks

09:02AM 19   obtain that affidavit?

09:02AM 20                   MR. THAMES:  He sent someone to find the man and get him

09:02AM 21   to sign it, yes.

09:02AM 22                   SPECIAL MASTER JUNEAU:  Mr. Eubanks did that.

09:02AM 23                   MR. THAMES:  Mr. Eubanks did that.

09:02AM 24                   SPECIAL MASTER JUNEAU:  That's what I thought you said.

09:02AM 25                   MR. THAMES:  What's important here is what was known at

09:02AM 1  the time the termination occurred, and what was going on at that

09:02AM 2  time was that Mr. Stephens had been awarded fewer points than he

09:02AM 3  should have been because he didn't have the records.  He had lost

09:02AM 4  the first appeal of that.  He appealed that and lost that appeal

09:02AM 5  of that.  The second appeal was still pending.  He didn't know

09:02AM 6  whether he was going to win that or not, and he was out there

09:02AM 7  trying to get more evidence to try to help that appeal, and

09:02AM 8  Mr. Eubanks refused to go and try to get those paper records.

09:02AM 9       Once you determine that there is good cause for

09:03AM 10  this termination, this case is over.  They may claim that they

09:03AM 11  are entitled to *quantum meruit*, but when the Court told them that

09:03AM 12  they had to tell the Court that and ask for it and prove it up,

09:03AM 13  they didn't do it.  That was in, I think, Pretrial Order 47A.

09:03AM 14  There were instructions in there that if you were going to make

09:03AM 15  that claim, you had to do it then.  They didn't do it.

09:03AM 16       They still haven't proven it up.  They have not

09:03AM 17  submitted any time records in this case.  They haven't submitted

09:03AM 18  anything about a reasonable hourly rate to establish a loadstar

09:03AM 19  fee.  The Fifth Circuit requires that you put forth a loadstar

09:03AM 20  fee and then look at the *Johnson v Georgia Highway Express*

09:03AM 21  factors to determine whether you're going to increase or decrease

09:03AM 22  that fee if you're going to look into a reasonable attorney's

09:03AM 23  fee, and they haven't done any of that.  There is no hourly

09:03AM 24  records at all.  There is nothing about any hourly rates in any

09:04AM 25  of their submissions.

09:04AM 1    For these reasons we would ask that you find that

09:04AM 2 there was good cause for the termination and award the funds that

09:04AM 3 are held in trust to Mr. Stephens.

09:04AM 4    SPECIAL MASTER JUNEAU:  Let me ask you a couple

09:04AM 5 questions.  I have read your submission and your memorandum, and

09:04AM 6 in your memorandum you said that the Arkansas lien statute does

09:04AM 7 not apply to cases in which an attorney is terminated for cause.

09:04AM 8    MR. THAMES:  That's correct.

09:04AM 9    SPECIAL MASTER JUNEAU:  I reviewed those cases and one

09:04AM 10 of the cited cases was *Wren v DeQueen Sand and Gravel*, and in

09:04AM 11 that case it said, "Attorneys who are discharged with cause

09:04AM 12 retain attorney's lien for fees, but the amount of compensation

09:04AM 13 is determined on a *quantum meruit* basis."

09:04AM 14    What I'm asking you, you're not saying that someone

09:04AM 15 cannot claim *quantum meruit* or are you?

09:04AM 16    MR. THAMES:  No, Your Honor.  I'm saying that you're not

09:05AM 17 entitled -- and I believe it's undisputed between the parties as

09:05AM 18 to what the law is, that an attorney fired for cause is not

09:05AM 19 entitled to his contractual fee.

09:05AM 20    SPECIAL MASTER JUNEAU:  Contractual.  I'm not talking

09:05AM 21 about that.

09:05AM 22    MR. THAMES:  That's right.  He can still --

09:05AM 23    SPECIAL MASTER JUNEAU:  That is what I read the case to

09:05AM 24 say, but it does say that you can claim *quantum meruit*.

09:05AM 25    MR. THAMES:  He can claim *quantum meruit* and my point on

09:05AM 1    that is that in this case, they have not claimed *quantum meruit*.

09:05AM 2    They did not claim *quantum meruit* until their reply brief in the

09:05AM 3    submissions of these notebooks, not even in the opening brief, in

09:05AM 4    the reply brief, and then they've never submitted any hourly --

09:05AM 5    proof about hours and rate in order to prove up the value of the

09:05AM 6    services.  *Quantum meruit* is regarding to the value of the

09:05AM 7    services rendered.

09:05AM 8             SPECIAL MASTER JUNEAU:  We'll have to get to that

09:05AM 9    evidence, if any, in a minute, but I noticed in the notice of

09:06AM 10   lien that was filed by Mr. Eubanks, or on his behalf, after

09:06AM 11   talking about the contractual arrangement that was entered into

09:06AM 12   between the parties and what he did and so forth, in paragraph 7

09:06AM 13   he says, "The firm is entitled to a reasonable value of its

09:06AM 14   services to the date of discharge because the discharge attorney

09:06AM 15   may be paid for a reasonable value of his or her services," and

09:06AM 16   then they cite the case of *Salmon v. Atkinson*.  Isn't that claim

09:06AM 17   *quantum meruit*?

09:06AM 18             MR. THAMES:  I don't think it's proving up *quantum*

09:06AM 19   *meruit*, number one.

09:06AM 20             SPECIAL MASTER JUNEAU:  There is a difference between

09:06AM 21   claiming it and proving it up.

09:06AM 22             MR. THAMES:  That was filed a couple of years ago,

09:06AM 23   Your Honor.  There was an order signed by Judge Fallon.  I think

09:06AM 24   it's 47A --

09:06AM 25             SPECIAL MASTER JUNEAU:  Yes, I have that.

09:06AM 1      MR. THAMES:  -- that required that if there was going to

09:06AM 2  be a claim of *quantum meruit* presented, that it had to be stated

09:07AM 3  as to whether it was exclusive or in the alternative and put the

09:07AM 4  Court on notice of that claim and presumably submit the evidence

09:07AM 5  to support it.

09:07AM 6      SPECIAL MASTER JUNEAU:  The activity or the nonactivity

09:07AM 7  of which you complain has to do with not subpoenaing or not

09:07AM 8  obtaining the written documents from Kroger's or the drug

09:07AM 9  pharmacy facility; is that correct?

09:07AM 10      MR. THAMES:  That's primarily it.  Not following the

09:07AM 11  instructions of the -- reasonable instructions of the client to

09:07AM 12  do that on two occasions.

09:07AM 13      SPECIAL MASTER JUNEAU:  All right.  My next question is

09:07AM 14  after the discharge what, if anything, was submitted?  What

09:07AM 15  additional information was submitted that would have had a

09:07AM 16  bearing on the appeal?  We know ultimately that they were given

09:08AM 17  the full duration by the ruling of the Special Master, right?

09:08AM 18      MR. THAMES:  Nothing else was submitted to the

09:08AM 19  Special Master.  The appeal was closed, and nothing else was

09:08AM 20  submitted.  No request was made for those records.

09:08AM 21      SPECIAL MASTER JUNEAU:  Okay.  I didn't mean to

09:08AM 22  terminate your discussion.  Anything else you want to add?

09:08AM 23      MR. THAMES:  No, I'm happy to entertain any other

09:08AM 24  questions you may have, though.

09:08AM 25      SPECIAL MASTER JUNEAU:  Well, I may have some additional

09:08AM 1    questions but thank you very much.

09:08AM 2          MR. THAMES:  Thank you.

09:08AM 3          SPECIAL MASTER JUNEAU:  Just identify yourself for the

09:08AM 4    record.

09:08AM 5          MS. WALAS:  Breean Walas on behalf of Eubanks and Holt,

09:08AM 6    et cetera.

09:08AM 7          SPECIAL MASTER JUNEAU:  You represent Mr. Eubanks?

09:08AM 8          MS. WALAS:  I represent Mr. Eubanks.  When we filed the

09:08AM 9    notice of lien, it was filed by Mr. Eubanks on behalf of

09:08AM 10   Gary Eubanks & Associates.  Subsequent to that we had a firm name

09:08AM 11   change to Gary Holt & Associates, so while Mr. Eubanks was the

09:08AM 12   primary attorney handling the case at the time it was filed, it

09:09AM 13   was actually the entire firm contract that it's being pursued

09:09AM 14   under, but Mr. Eubanks was the primary attorney.

09:09AM 15         SPECIAL MASTER JUNEAU:  Okay.

09:09AM 16         MS. WALAS:  I would like to respond, if I may.  First

09:09AM 17   I'll introduce our bench book and the exhibits that were included

09:09AM 18   with that as our first exhibit.

09:09AM 19         SPECIAL MASTER JUNEAU:  I will mark that as Eubanks #1.

09:09AM 20   Let it be received in evidence.

09:09AM 21         MS. WALAS:  Thank you.

09:09AM 22             Also, I believe that many of the arguments are

09:09AM 23   contained in those books and our briefs that were submitted, so

09:09AM 24   rather than rehash all of that, I would just like to respond to a

09:09AM 25   few things that Mr. Thames said.

09:09AM  1          The first is that Mr. Stephens claims that he told

09:09AM  2     Mr. Roundtree at that initial meeting, "You have to go get these.

09:09AM  3     You have to go do this.  I couldn't get them all."

09:09AM  4     Mr. Roundtree, in his response to admissions -- request for

09:09AM  5     admissions in the lawsuit, which are verified and included with

09:10AM  6     our bench brief towards the end as other relevant evidence,

09:10AM  7     denies that that happened.

09:10AM  8          In fact, he stated in that that Mr. Stephens told

09:10AM  9     him that Kroger had given him copies of all prescription records

09:10AM 10     that it had for Johnie Stephens, the deceased.  He said that he

09:10AM 11     still sent the preservation letter because Mr. Stephens indicated

09:10AM 12     that there may have been more.  It's this preservation letter

09:10AM 13     that actually asked Kroger to preserve all records, electronic,

09:10AM 14     digital, paper, everything.  Mr. Roundtree was very thorough in

09:10AM 15     what he asked Kroger to preserve.  So to say that we never

09:10AM 16     requested that those were preserved or anything of that matter is

09:10AM 17     incorrect.

09:10AM 18          The second thing is that when those records were

09:10AM 19     requested, it was a request for all prescription records for

09:10AM 20     Johnie Stephens for the period of time.  I believe it was 1993 to

09:11AM 21     2003, but that also is contained in our exhibits.  I believe it's

09:11AM 22     Exhibit E.

09:11AM 23          In response to that letter, Susan Clayton from

09:11AM 24     Kroger called and said, "We cannot give you those until we get

09:11AM 25     the administrator records," and that was on April, I believe,

09:11AM 1    21st of 2006.   In response, Ms. Oldie (spelled phonetically) sent

09:11AM 2    back the administrator records, and we received a printout both

09:11AM 3    by fax and mail that said these are all the records for '93 to

09:11AM 4    2003.

09:11AM 5              Now, interestingly, they claim that we told Kroger

09:11AM 6    they can destroy the records.  Ms. Oldie denies that.

09:11AM 7    Mr. Roundtree denies that.  The only information comes from

09:11AM 8    Kroger itself, who had been -- who had received a preservation

09:11AM 9    letter, Ms. Clayton's e-mail, who has a timeline that's very

09:12AM 10   specific of when she spoke to Ms. Oldie, but interestingly she

09:12AM 11   left out the April 21st conversation where she spoke to Ms. Oldie

09:12AM 12   about the records and about before we can send you these records

09:12AM 13   you need to send us this information.

09:12AM 14             Now --

09:12AM 15             SPECIAL MASTER JUNEAU:  Let me ask you a question.

09:12AM 16             MS. WALAS:  Yes.

09:12AM 17             SPECIAL MASTER JUNEAU:  You're talking about an e-mail

09:12AM 18   dated 1/10/2008 from Susan Clayton to someone named Angi?

09:12AM 19             MS. WALAS:  Yes, sir.

09:12AM 20             SPECIAL MASTER JUNEAU:  It says about the middle part of

09:12AM 21   that e-mail, "I contacted Ashley at Robert Roundtree's office to

09:12AM 22   confirm the ability to begin the purging process and was told all

09:12AM 23   motions had been" -- I'm not sure what the word was -- "and could

09:12AM 24   reinstate the purge process, which we did immediately."  That's

09:13AM 25   what you're talking about?

09:13AM  1          MS. WALAS:  Yes, sir.

09:13AM  2          SPECIAL MASTER JUNEAU:  I'm not sure that I have full

09:13AM  3  comprehension.  You're saying that report is not accurate?

09:13AM  4          MS. WALAS:  Yes, sir.  That is what Ms. Clayton says.

09:13AM  5  Ms. Oldie, whose requests for admissions are attached as well

09:13AM  6  what she verified, she denies that that conversation ever took

09:13AM  7  place.

09:13AM  8          SPECIAL MASTER JUNEAU:  What do we have that says that?

09:13AM  9          MS. WALAS:  Ms. Oldie's request for admissions that are

09:13AM 10  attached as other relevant evidence.

09:13AM 11          SPECIAL MASTER JUNEAU:  I'm asking to you point that

09:13AM 12  out.

09:13AM 13          MS. WALAS:  Let me grab it.  It would be in our

09:13AM 14  pleadings, response to first request for admission, Oldie.

09:13AM 15          SPECIAL MASTER JUNEAU:  Let me put it to you simply.  I

09:13AM 16  have a lot of papers.  It sure would help if you tell me --

09:13AM 17          MS. WALAS:  It's not an exhibit.  It's in the other

09:13AM 18  relevant evidence at the back of the pleadings that we submitted.

09:13AM 19  We submitted an exhibits binder as well as our pleadings binder.

09:14AM 20          SPECIAL MASTER JUNEAU:  I'm looking now at the exhibit

09:14AM 21  binder.  It's in the exhibit binder?

09:14AM 22          MS. WALAS:  No, sir, it's in the other one.

09:14AM 23          SPECIAL MASTER JUNEAU:  Whereas, I have the other

09:14AM 24  binder.  By the way, I've received into evidence your bench book.

09:14AM 25  I had marked that as Eubanks #1.  There are actually two volumes

09:14AM  1    so I've marked one Eubanks #1 and one Eubanks #1A.

09:14AM  2              I'm looking at Eubanks #1 now, which is the

09:14AM  3    document you submitted.  Where is this document?

09:14AM  4         MS. WALAS:  It will be towards the back, under, I

09:14AM  5    believe, other relevant evidence that should say, "Oldie response

09:14AM  6    to first request for admission."  I may have different tabs than

09:14AM  7    you, so I apologize.

09:14AM  8              SPECIAL MASTER JUNEAU:  I see other relevant documents,

09:14AM  9    okay.  What pleading is it, now?

09:14AM 10         MS. WALAS:  It would be A, the separate defendant

09:15AM 11    Ashley Oldie's response to plaintiff's first set of request for

09:15AM 12    admissions propounded to defendant Ashley Oldie.

09:15AM 13              SPECIAL MASTER JUNEAU:  I have that document.

09:15AM 14         MS. WALAS:  And number -- on page 5, it would be request

09:15AM 15    for admission number 14.  It asks Ms. Oldie to admit that on

09:15AM 16    February 7, 2006, Susan Clayton of Kroger Division Office

09:15AM 17    contacted your superior, Robert L. Roundtree's office and spoke

09:16AM 18    to you about the letter that was dated October 3, 2005,

09:16AM 19    concerning the preservation of pharmaceutical records for

09:16AM 20    Johnie Stephens.  Answer of Ms. Oldie is denied.

09:16AM 21              She also, in the next request for admission, denies

09:16AM 22    that she told Clayton anything about a period of time that Kroger

09:16AM 23    could wait for their -- could disregard the preservation letter

09:16AM 24    and begin the purge process.

09:16AM 25              She also denies that on -- that she told them

09:16AM 1  anything about motions being filed by May 1st of 2006, and that

09:16AM 2  would be her response to request for admission 16.

09:16AM 3          She also denies -- just let me find it.  She also

09:17AM 4  denies on page 7, request for admission number 22, that on

09:17AM 5  May 1st, she spoke with Susan Clayton and told her that all

09:17AM 6  motions had been filed and that Kroger Pharmacy could reinstate

09:17AM 7  the purge process.

09:17AM 8          Now, Ms. Oldie has denied that that ever

09:17AM 9  occurred -- and that that conversation occurred.  She denied

09:17AM 10 telling them that they could begin the purge process.  Also, in

09:17AM 11 Ms. Clayton's note, which is very detailed, it's interesting that

09:17AM 12 she left out the conversation she had on April 21, 2006,

09:17AM 13 discussing those prescription records where we followed up, sent

09:17AM 14 the administrator records, and got the prescription records.

09:17AM 15 Those records that we received stated '93 to 2003 and included --

09:17AM 16 and said that they included all of those records.

09:18AM 17         Now, they've made a big deal with paper records.

09:18AM 18 For the purposes of the settlement, the printout records from

09:18AM 19 Kroger Pharmacy were sufficient to submit as proof of ingestion

09:18AM 20 under what was needed to be submitted.  So there was no

09:18AM 21 additional need to go get paper records when the Kroger had

09:18AM 22 indicated that they had provided us with copies of all of those

09:18AM 23 records.

09:18AM 24         With respect to a subpoena, in Arkansas we

09:18AM 25 generally do not issue a subpoena to a pharmacy if they are

09:18AM 1  complying with the preservation letter, if they are responding to

09:18AM 2  medical records.  Really, the only time that a subpoena is issued

09:18AM 3  generally as a practice is when a medical facility or pharmacy is

09:18AM 4  refusing to provide those documents in response to an

09:18AM 5  authorization and a request.  So to say that we were required to

09:19AM 6  is not the general practice of attorneys in Arkansas.

09:19AM 7          Now, Mr. Thames also interestingly used the word

09:19AM 8  that Bob Stephens wanted to prove up the duration of use, which

09:19AM 9  is exactly what Mr. Roundtree says in his response to request for

09:19AM 10 admission number 3, is that at that first meeting, Mr. Stephens

09:19AM 11 indicated, well, maybe if I can prove more -- a longer use we can

09:19AM 12 get more money.

09:19AM 13         He was interested in getting more money, and we

09:19AM 14 were doing everything that we did for all of our Vioxx clients.

09:19AM 15 We were obtaining medical records.  We were getting pharmacy

09:19AM 16 records.  We actually went above and beyond with Mr. Stephens'

09:19AM 17 case after it came up that Kroger didn't have these things, and

09:19AM 18 he swore that his dad took it for this period of time, so we

09:19AM 19 submitted it.  We got the affidavit.  We got --

09:20AM 20         SPECIAL MASTER JUNEAU:  Mr. Eubanks' office got that

09:20AM 21 affidavit?

09:20AM 22         MS. WALAS:  Yes, Your Honor, we got that affidavit from

09:20AM 23 Mr. Hill, the pharmacy (sic) who retired.  He actually was

09:20AM 24 hunting, and Ms. Flournoya drove up to meet him at a gas station

09:20AM 25 so he could go over that.

09:20AM 1          Mr. Stephens.  We submitted an affidavit from

09:20AM 2  Mr. Stephens that we went over.  He signed it and he was part of

09:20AM 3  the process of his case throughout the whole thing.  He called

09:20AM 4  the office numerous times.  We spoke to him about things.  He

09:20AM 5  reviewed his plaintiff profile forms.  He reviewed everything

09:20AM 6  throughout the case, and he was kept apprised of everything going

09:20AM 7  on throughout the case.  We sought to obtain everything that we

09:20AM 8  could to prove the duration of use for the Vioxx.

09:20AM 9          Whatever he may have been doing at the outside was

09:20AM 10 helpful, but we followed up with Caremark.  When he first

09:20AM 11 informed us about what pharmacies were used, there was no

09:20AM 12 indication about Caremark being involved or anything like that.

09:21AM 13 We followed up.

09:21AM 14         I think the most important thing about these

09:21AM 15 records is that Ms. Clayton's January e-mail says, "Even though I

09:21AM 16 couldn't find any records, I went back to our signature logs for

09:21AM 17 that time," which they were required by law to keep for a period

09:21AM 18 of time, and she said, "I couldn't find any signatures that

09:21AM 19 showed it was picked up for that time."

09:21AM 20         So even the signature logs, if they had had them,

09:21AM 21 we would have obtained copies of them, with the appropriate other

09:21AM 22 clients of the pharmacy obviously redacted but for our use, but

09:21AM 23 they could have produced that to us, and that was in January of

09:21AM 24 '06 when we were speaking to her.  She said that there were not

09:21AM 25 any signature logs showing that, when they were required to have

09:21AM 1    those.

09:21AM 2         We attempted from Caremark who also said, "Yes, we

09:21AM 3    found this guy.  We didn't keep records for that far back," but

09:22AM 4    they didn't have the records when we were hired, that Caremark

09:22AM 5    pharmacy didn't keep the records for that period of time.  They

09:22AM 6    had already been destroyed at the point we were hired by

09:22AM 7    Caremark, who apparently was the backup for the insurance that

09:22AM 8    kept all of the prescriptions.

09:22AM 9         "Yes, we have a record of Johnie Stephens."  We

09:22AM 10   didn't have those records.  When we look at the dates they showed

09:22AM 11   us, they didn't have the records when we were hired, and they

09:22AM 12   said, "Nonetheless, we don't see anything for prescriptions

09:22AM 13   during that time period that it was noted."  That would be the

09:22AM 14   Caremark affidavits.  I believe they are Exhibit F or around that

09:22AM 15   area.

09:22AM 16        Now, even with all of this difficulty we were

09:22AM 17   having in obtaining the records, Mr. Stephens said that he had

09:22AM 18   them, that that's when his dad took the prescription, and we --

09:22AM 19        SPECIAL MASTER JUNEAU:  Excuse me, he said what?

09:22AM 20        MS. WALAS:  He said that his dad took the Vioxx during

09:22AM 21   that time period.  So we prepared and he reviewed and he went

09:22AM 22   through all of the exhibits, and he signed his affidavit, which

09:23AM 23   we submitted with our appeal to the Special Master, or, I'm

09:23AM 24   sorry, we had submitted it with the first appeal because the

09:23AM 25   first appeal, my understanding was that you couldn't -- you could

09:23AM 1   submit something further than.  We even made a note in the

09:23AM 2   comment section that says, "This is to show the proof."  We have

09:23AM 3   the prescription -- the pharmacy's affidavit.  We have

09:23AM 4   Mr. Stephens's affidavit.

09:23AM 5              Bless you.

09:23AM 6              Those were submitted on the appeal.  It was

09:23AM 7   unsuccessful.  We felt that the affidavits would have been

09:23AM 8   successful, and with Mr. Stephens' consent, we appealed to the

09:23AM 9   Special Master, which was a *de novo* review.  We could not submit

09:23AM 10  anything further.  It was to review the entire record in total.

09:23AM 11             As part of that, we indicated to Mr. Stephens that

09:23AM 12  it may go down as a part of the entire review because there may

09:23AM 13  be some things that they see that they didn't see before.  At the

09:24AM 14  time that it was submitted to the Special Master, everything that

09:24AM 15  could be done in the case had been done, and we had done it and

09:24AM 16  done the work on it.

09:24AM 17             Then Mr. Stephens, who had, for the period about a

09:24AM 18  year before roughly, who had been saying, "Well, I'll just take

09:24AM 19  the money and sue you for the difference," or, "I'll just sue

09:24AM 20  you," decided to fire the firm and pursue a lawsuit against us.

09:24AM 21             Interestingly, his letter terminating the

09:24AM 22  relationship said, "I am firing you as my lawyer so that I can

09:24AM 23  sue you based upon these pharmacy records."  He did, in fact,

09:24AM 24  file suit against the firm.  To say that he filed it because the

09:24AM 25  statute was about to run, it's true.  It was about to run but it

09:24AM 1    actually had already run based upon Arkansas law probably.  At

09:24AM 2    the time that he learned that we had been successful in obtaining

09:25AM 3    him the duration of use that was requested -- that he said his

09:25AM 4    father took, it was 2 days before a hearing on our motion to

09:25AM 5    dismiss the lawsuit as under Arkansas law.

09:25AM 6            Now, to say he spent $10,000 on that case,

09:25AM 7    Your Honor, I can't say what he spent, but I can say that it was

09:25AM 8    all at his own desire because he propounded so much discovery and

09:25AM 9    all of these other things that it was his decision to spend all

09:25AM 10   of that money pursuing something that, you know, he knew he was

09:25AM 11   going to do all along, from looking at his letters and those sort

09:25AM 12   of things, all because he felt that he wasn't going to get the

09:25AM 13   duration of use that he said existed, and we attempted to obtain

09:25AM 14   all of those pharmacy records.

09:25AM 15           Now, looking at Arkansas law, which is what must be

09:26AM 16   applied in federal court in an attorney's lien situation or

09:26AM 17   attorney fee situation, you apply the state law of what -- where

09:26AM 18   the contract was done in a what would be proceeding.

09:26AM 19           Now, Mr. Thames has been citing Fifth Circuit

09:26AM 20   Louisiana law as to you have to prove time; you to prove this.

09:26AM 21   Well, cases you cited and other Arkansas law shows that you can

09:26AM 22   get *quantum meruit* on the contingency fee contract.

09:26AM 23           But the thing is here --

09:26AM 24           SPECIAL MASTER JUNEAU:  Repeat that.  You can get...

09:26AM 25           MS. WALAS:  You can, if you have a contingency fee

09:26AM 1    agreement, you can still get the *quantum meruit* if there was good

09:26AM 2    cause, which I'm not conceding there was good cause, but I am

09:26AM 3    saying that if you find that there was good cause, you can still

09:26AM 4    get that.  It's not a time -- we have to give you an hourly time.

09:26AM 5    Obviously firms that do contingency fees do not keep hourly time.

09:27AM 6    Most do that.

09:27AM 7          Now, Arkansas has set forth factors that you can

09:27AM 8    look at, which we've included in our brief, and I can rattle some

09:27AM 9    of them off the top of my head and some of them I don't know, but

09:27AM 10   it's just the general reasonable thing that you can look at that

09:27AM 11   an attorney does -- Did they pursue records?  How much time did

09:27AM 12   they do?  What did they do to work on the case?  What had they

09:27AM 13   done at the point they were terminated?

09:27AM 14         Now, without conceding the good cause, at the time

09:27AM 15   we were terminated, all of the work was done.  Nothing further

09:27AM 16   could be done; in fact, they've conceded that.  Nothing further

09:27AM 17   was done in this case having to do with that.

09:27AM 18         Your Honor, the final fact is with the -- their

09:27AM 19   argument that, PTO 47A, we were required to say we were pursuing

09:27AM 20   the *quantum meruit* part of our claim, we had filed a notice of

09:28AM 21   lien.  This is the second time we have actually briefed all of

09:28AM 22   these issues because when we filed our notice, we followed it up

09:28AM 23   with a motion because Judge Fallon hadn't yet come up with a

09:28AM 24   plan, and the claims administrator, they hadn't come up with a

09:28AM 25   plan yet.

09:28AM 1         So all of our arguments all along which were

09:28AM 2  included as, I believe, Exhibit L to our brief, we've always said

09:28AM 3  this -- reasonable value of our services.  If it's not under the

09:28AM 4  lien statute where we get our contractual fee, then we get the

09:28AM 5  reasonable value of our services.  When we received notification

09:28AM 6  after 47A, we received a notification telling us that our notice

09:28AM 7  and our claim was sufficient.  It had everything that it needed.

09:28AM 8         Now, with that, there was -- it wasn't that we had

09:28AM 9  to go back and redo it, because it said, if you've already

09:29AM 10  submitted a notice or a claim for your fee, this will tell you if

09:29AM 11  it's sufficient or if more needs to be done.  When we received

09:29AM 12  the sufficiency notice based upon everything else we had

09:29AM 13  previously filed, which included the statute for our full

09:29AM 14  contractual fee, or if there was found to not be good faith, the

09:29AM 15  *quantum meruit*, the reasonable value of our services, to us, that

09:29AM 16  was sufficient.

09:29AM 17         I believe that we have sufficiently established a

09:29AM 18  record that both sides have been argued, and it is not just an

09:29AM 19  issue of good cause, and if you find no good cause it stops

09:29AM 20  there.  I believe it goes further into what Arkansas law

09:29AM 21  requires.

09:29AM 22         If you don't have any further questions for me,

09:29AM 23  Your Honor, I will sit down.

09:29AM 24      SPECIAL MASTER JUNEAU:  No.  I'm going to give

09:29AM 25  Mr. Thames an opportunity to rebut.

09:29AM 1          MR. THAMES:  Just a few kind of things I want to say in

09:29AM 2     response.  First of all, I think it's pretty hornbook law that

09:29AM 3     request for admission responses that are in the form of denials

09:29AM 4     are not evidence.  Admissions are evidence but denials to request

09:30AM 5     for admissions are nothing.  Interrogatory answers are evidence

09:30AM 6     but not admission denials.

09:30AM 7          Also, I don't think there is any question that a

09:30AM 8     disinterested Kroger Pharmacy's e-mail happening at the time is

09:30AM 9     pretty reliable evidence of what was going on.

09:30AM 10          Some of your questions indicate that you have an

09:30AM 11     interest with harm, and harm is not an issue in a good cause

09:30AM 12     analysis.  What has to be looked at is at the time of the

09:30AM 13     termination, not what ultimately happened many months afterwards

09:30AM 14     down the road.  At the time of the termination, what was going

09:30AM 15     on?  What was the outlook at that time?  That outlook was very

09:30AM 16     bleak.  There was a lower award given, and appeal of that lower

09:31AM 17     award had upheld the lower award.  There was another appeal

09:31AM 18     pending that Mr. Eubanks had initially advised not to pursue

09:31AM 19     because he didn't think it was going to be worthwhile.

09:31AM 20          There was a lot of work being done to try to repair

09:31AM 21     this damage, and when Mr. Stephens was working that hard to do

09:31AM 22     some of that work to repair this damage, he went to Kroger and

09:31AM 23     found out, well, maybe they do have some more records, and asked

09:31AM 24     Mr. Eubanks, "Could you try to get those records again," even

09:31AM 25     though they -- you know, it's several years later, and he said

09:31AM 1   no.

09:31AM 2              Now, there were some paper records there.

09:31AM 3   Mr. Stephens was able to get a couple of them.  They didn't

09:31AM 4   necessarily improve his case, but they were there.  The Eubanks

09:32AM 5   firm had never gotten any of those records.

09:32AM 6              I'm not concerned or complaining about the

09:32AM 7   preservation activity.  My concern, where it gives Mr. Stephens

09:32AM 8   good cause for the termination here, is what they did in the

09:32AM 9   requesting activity because they made a request, but what they

09:32AM 10  got was a printout just like the one he already gave them, except

09:32AM 11  it showed less than the one he already gave them.

09:32AM 12             He told them there were paper records, and they

09:32AM 13  didn't do anything.  They got that printout, they threw in it a

09:32AM 14  file, and it was over.  They waited two plus -- about 2 years

09:32AM 15  after that before he noticed this was an issue.

09:32AM 16             When they got that printout back from Kroger that

09:32AM 17  showed less than what he already gave them, that should have sent

09:32AM 18  up some red flags.  They should have said, Well, Mr. Stephens,

09:33AM 19  Kroger is showing us less than what you've already got.  What

09:33AM 20  else can we do?  You know, they should have gone back to Kroger

09:33AM 21  and said, "Kroger, this isn't right.  We've got other evidence

09:33AM 22  already in our hands that shows more than this.  What about your

09:33AM 23  paper records?  Do we need to send you a subpoena?  Because we

09:33AM 24  will if we have to."  There is a lot they could have done at that

09:33AM 25  time that they didn't do.  They knew.

09:33AM 1       Mr. Stephens had brought them -- and it's not just

09:33AM 2  him telling them that his father had been taking Vioxx this

09:33AM 3  entire time period.  He brought them the medical records from the

09:33AM 4  ER visit when his father was very first prescribed Vioxx back in

09:33AM 5  November of 2000.  The records from the printout of the pharmacy

09:33AM 6  don't start until July of 2002.  He started November of 2000.  He

09:33AM 7  gave them that ER record and told them, "This is the only

09:33AM 8  pharmacy that he got his records from.  They have to have

09:33AM 9  something here."

09:33AM 10       Also, from the initial interview all the way until,

09:34AM 11  which was in August of '05, all the way until June of '07,

09:34AM 12  Mr. Johnie Stephens, the decedent, his wife, Rosie Stephens, was

09:34AM 13  still alive.  She gave him those pills every day.  She could talk

09:34AM 14  to someone.  She could help build this case.  She could have

09:34AM 15  given them some insight, but no mention was ever made that, hey,

09:34AM 16  we're having problems proving this additional duration of use

09:34AM 17  until Mr. Stephens stumbled upon it himself and got suspicious in

09:34AM 18  December of '07 -- about 6 months after she had died; 2 years

09:34AM 19  after he first hired them -- when, during an interview regarding

09:34AM 20  one of the forms to be submitted, they had the question on

09:34AM 21  duration marked wrong.  Then when he -- he had some questions

09:35AM 22  about that, they came -- he came back later and signed a form

09:35AM 23  that they had then corrected and submitted.  So that does go to

09:35AM 24  the factors that you should look at is at the time of the

09:35AM 25  termination to determine good cause.

09:35AM 1        SPECIAL MASTER JUNEAU:  Let me ask you a question.

09:35AM 2   There has been a reference made earlier to a subsequent affidavit

09:35AM 3   that Mr. Eubanks obtained.  That was before the discharge?

09:35AM 4        MR. THAMES:  Yes, a few days before the discharge.  With

09:35AM 5   regard to the *quantum meruit* claim, the question there is not a

09:35AM 6   contractual fee.  The question there is the value, the reasonable

09:35AM 7   value of services.  There is no way you can determine the value

09:35AM 8   of services without knowing how much time and effort was spent.

09:36AM 9        Do you have any further questions?

09:36AM 10       SPECIAL MASTER JUNEAU:  I don't have any further

09:36AM 11  questions.

09:36AM 12       MS. WALAS:  May I just briefly respond to a few things

09:36AM 13  he said?

09:36AM 14       SPECIAL MASTER JUNEAU:  Okay.

09:36AM 15       MS. WALAS:  First, the affidavits that the firm obtained

09:36AM 16  were in January -- months before we were terminated.  I believe

09:36AM 17  they were in January, and the termination was in March, so it was

09:36AM 18  not a few days.  It was months.  It was -- the termination was

09:36AM 19  after we had already submitted to the Special Master.

09:36AM 20       I'm sure you'll ask Mr. Eubanks about this further,

09:36AM 21  but it was my understanding that one of the original concerns

09:36AM 22  about appealing to the Special Master was that Johnie Stephens

09:36AM 23  had also begun taking another prescription during the time prior

09:37AM 24  to his death, which, upon looking up some things, that also was

09:37AM 25  linked to some heart problems and heart attacks, and that was

09:37AM 1    what the concern was.  The concern was not the lack of records

09:37AM 2    but in a *de novo* review, the review of everything in seeing the

09:37AM 3    taking of that medication may have also contributed to his death

09:37AM 4    and that was the concern.

09:37AM 5            With respect to Arkansas law on good faith, there

09:37AM 6    is no bright-line rule.  The *Mobley* case which we have cited goes

09:37AM 7    through times when good cause has been found.  Those instances

09:37AM 8    usually have been where attorneys don't communicate, where, you

09:37AM 9    know, the -- it was -- one of them was fired for cause when

09:37AM 10   payment of the attorneys during the litigation became an

09:37AM 11   acrimonious issue.

09:37AM 12           There was no fight over a payment during this time.

09:37AM 13   We have a slogan, "If we don't win your case for you, you don't

09:38AM 14   owe us a dime," so we are not going to fight about the fee during

09:38AM 15   the litigation; however, when we've been fired for no good cause,

09:38AM 16   you know, we are going to try to assert our lien, which we have a

09:38AM 17   right to, under the law.

09:38AM 18           The statement that there is no way to determine a

09:38AM 19   reasonable value of services -- as I stated earlier, there is a

09:38AM 20   case that goes through factors.  I went and grabbed that, and

09:38AM 21   that would be the *Crockett* and *Brown* case.

09:38AM 22           (Addressing the court reporter) I will try to speak

09:38AM 23   slowly for you.

09:38AM 24           It says, "In measuring the reasonable value of an

09:38AM 25   attorney's services, i.e., the *quantum meruit* fee, the following

09:38AM 1  factors should be considered:  One, the attorney's judgment,

09:38AM 2  learning ability, skill, experience, professional standing and

09:38AM 3  advice.  Two, the relationship between the parties.  Three, the

09:38AM 4  amount or importance of the subject matter of the case.  Four,

09:38AM 5  the nature, extent, and difficulty of services and research.

09:39AM 6  Five, the preparation of pleadings.  Six, the proceedings

09:39AM 7  actually taken and the nature and extent of the litigation.

09:39AM 8  Seven, the time and labor devoted to the client's cause.  Eight,

09:39AM 9  the difficulties presented during the course of the litigation

09:39AM 10  and the results obtained.  And in making these determinations,

09:39AM 11  the Court is permitted to use its own experience and knowledge of

09:39AM 12  the character of such services as a guide."

09:39AM 13       Those are how you value reasonable value of

09:39AM 14  services if you happen to find a good cause.  That is under the

09:39AM 15  *Crockett* case under Arkansas law.

09:39AM 16       Now, as part of our briefs and our exhibits, we

09:39AM 17  submitted a timeline of all of the work that's been performed.

09:39AM 18  There is no doubt that at the time that we were fired all the

09:39AM 19  work had been performed.  It was -- essentially the case was

09:39AM 20  complete, and all we were doing was waiting for a response from

09:40AM 21  the Special Master on what the award would be.

09:40AM 22       With that, I'll allow to you ask any further

09:40AM 23  questions of me or if you have anything further of Mr. Eubanks.

09:40AM 24    SPECIAL MASTER JUNEAU:  I have no further questions.

09:40AM 25  I'm going to take this matter under advisement, and I will issue

09:40AM 1    a formal report and recommendation to the Court pursuant to the

09:40AM 2    Federal Rules.  I will, in the next 5 days, allow both parties,

09:40AM 3    if they elect, simultaneously, if they want to submit a brief or

09:40AM 4    just citations -- I understand you referred to the *Crockett* case

09:40AM 5    but I'm saying from both sides -- on the precise issue of what

09:40AM 6    proof under Arkansas law is necessary in proving up the *quantum*

09:40AM 7    *meruit* claim.  It's something you don't have to do but if you

09:40AM 8    want to do it, I would request that y'all send me that within the

09:40AM 9    next 5 days.  It doesn't have to be a lengthy thesis but very

09:40AM 10   focused on that precise issue.

09:40AM 11           Just with that being said, I'm going to put into

09:41AM 12   evidence one or two last items.  Special Master #1 is the actual

09:41AM 13   scheduling order which was issued to the party, which, I will

09:41AM 14   note, has been complied with by both sides.  The second is

09:41AM 15   Special Master #2, which is just the administrator's file in this

09:41AM 16   case.  That will then give a complete record in addition to the

09:41AM 17   exhibits that have already been introduced into evidence.

09:41AM 18           With that, the matter will be adjourned.  Thank you

09:41AM 19   very much.

09:41AM 20           MR. THAMES:  Thank you, Your Honor.

09:41AM 21           MS. WALAS:  Thank you.

22           (WHEREUPON, at 9:41 a.m., the proceedings were

23   concluded.)

24                              *    *    *

25

REPORTER'S CERTIFICATE

      I, Cathy Pepper, Certified Realtime Reporter, Registered
Merit Reporter, Certified Court Reporter of the State of
Louisiana, Official Court Reporter for the United States District
Court, Eastern District of Louisiana, do hereby certify that the
foregoing is a true and correct transcript, to the best of my
ability and understanding, from the record of the proceedings in
the above-entitled and numbered matter.


                              *s/Cathy Pepper*
                              _____

                              Cathy Pepper, CRR, RMR, CCR
                              Certified Realtime Reporter
                              Official Court Reporter
                              United States District Court
                              Cathy_Pepper@laed.uscourts.gov

## #

**#1** [2] - 13:19, 16:25

## $

**$10,000** [2] - 8:4, 23:6

## '

**'05** [1] - 28:11
**'06** [1] - 20:24
**'07** [2] - 28:11, 28:18
**'93** [2] - 15:3, 18:15

## 0

**06-CV-1678** [1] - 1:12

## 1

**1** [4] - 5:18, 17:1, 17:2, 32:12
**1.................................**
**......** [1] - 3:17
**1.................................**
**...........** [1] - 3:14
**1.................................**
**.................** [1] - 3:15
**1/10/2008** [1] - 15:18
**1018** [1] - 1:23
**110** [1] - 2:4
**13** [2] - 3:6, 3:15
**14** [1] - 17:15
**16** [1] - 18:2
**1657** [2] - 1:6, 4:8
**17** [1] - 3:16
**1993** [1] - 14:20
**1A** [1] - 17:1
**1A.................................**
**.................** [1] - 3:16
**1st** [2] - 18:1, 18:5

## 2

**2** [5] - 6:20, 23:4, 27:14, 28:18, 32:15
**2.................................**
**......** [1] - 3:18
**2000** [2] - 28:5, 28:6
**2002** [1] - 28:6
**2003** [3] - 14:21, 15:4, 18:15
**2005** [1] - 17:18
**2006** [4] - 15:1, 17:16,

18:1, 18:12
**2010** [2] - 1:7, 4:2
**202** [1] - 1:23
**21** [1] - 18:12
**21st** [2] - 15:1, 15:11
**22** [1] - 18:4
**26** [1] - 3:7
**27** [2] - 1:7, 4:2
**29** [1] - 3:8

## 3

**3** [2] - 17:18, 19:10
**32** [2] - 3:17, 3:18

## 4

**4-06-CV-0259** [1] - 1:13
**47A** [4] - 9:13, 11:24, 24:19, 25:6

## 5

**5** [5] - 3:5, 3:14, 17:14, 32:2, 32:9
**500** [2] - 2:4, 2:16
**504** [1] - 2:17
**51268** [1] - 1:24
**589-7779** [1] - 2:17

## 6

**6** [1] - 28:18

## 7

**7** [3] - 11:12, 17:16, 18:4
**70130** [1] - 2:16
**70505** [1] - 1:24
**708** [1] - 2:10
**72201** [1] - 2:11
**75702** [1] - 2:4

## 9

**9:00** [1] - 1:7
**9:41** [1] - 32:22

## A

**A.M** [1] - 1:7
**a.m** [1] - 32:22
**ability** [3] - 15:22,

31:2, 33:10
**able** [1] - 27:3
**above-entitled** [1] - 33:11
**accurate** [1] - 16:3
**acrimonious** [1] - 30:11
**action** [1] - 4:8
**ACTION** [1] - 1:12
**activity** [3] - 12:6, 27:7, 27:9
**actual** [1] - 32:12
**add** [1] - 12:22
**addition** [1] - 32:16
**additional** [4] - 12:15, 12:25, 18:21, 28:16
**Addressing** [1] - 30:22
**adjourned** [1] - 32:18
**ADMINISTRATOR** [1] - 1:10
**administrator** [4] - 14:25, 15:2, 18:14, 24:24
**administrator's** [1] - 32:15
**admission** [10] - 5:13, 16:14, 17:6, 17:15, 17:21, 18:2, 18:4, 19:10, 26:3, 26:6
**admissions** [7] - 14:4, 14:5, 16:5, 16:9, 17:12, 26:4, 26:5
**admit** [1] - 17:15
**advice** [1] - 31:3
**advised** [1] - 26:18
**advisement** [1] - 31:25
**affidavit** [13] - 7:7, 8:9, 8:12, 8:16, 8:19, 19:19, 19:21, 19:22, 20:1, 21:22, 22:3, 22:4, 29:2
**affidavits** [4] - 7:3, 21:14, 22:7, 29:15
**afterwards** [1] - 26:13
**ago** [2] - 8:10, 11:22
**agreement** [1] - 24:1
**alive** [1] - 28:13
**allow** [3] - 5:8, 31:22, 32:2
**ALSO** [1] - 2:13
**alternative** [1] - 12:3
**amount** [2] - 10:12, 31:4
**analysis** [1] - 26:12
**AND** [2] - 1:10, 2:8
**Angi** [1] - 15:18
**answer** [2] - 6:1, 17:20
**answers** [1] - 26:5

**apologize** [1] - 17:7
**appeal** [14] - 7:18, 7:21, 9:4, 9:5, 9:7, 12:16, 12:19, 21:23, 21:24, 21:25, 22:6, 26:16, 26:17
**appealed** [3] - 7:2, 9:4, 22:8
**appealing** [1] - 29:22
**appearances** [1] - 4:12
**APPEARANCES** [2] - 1:20, 2:1
**applied** [1] - 23:16
**apply** [2] - 10:7, 23:17
**apprised** [1] - 20:6
**appropriate** [2] - 5:9, 20:21
**April** [3] - 14:25, 15:11, 18:12
**AR** [1] - 2:10
**ARE** [1] - 1:13
**area** [1] - 21:15
**argued** [1] - 25:18
**argument** [1] - 24:19
**arguments** [2] - 13:22, 25:1
**Arkansas** [12] - 10:6, 18:24, 19:6, 23:1, 23:5, 23:15, 23:21, 24:7, 25:20, 30:5, 31:15, 32:6
**arrangement** [1] - 11:11
**AS** [1] - 1:10
**Ashley** [3] - 15:21, 17:11, 17:12
**assert** [1] - 30:16
**ASSOCIATES** [3] - 2:7, 2:8, 2:8
**Associates** [4] - 4:20, 4:21, 13:10, 13:11
**AT** [1] - 1:18
**Atkinson** [1] - 11:16
**attached** [2] - 16:5, 16:10
**attacks** [1] - 29:25
**attempted** [2] - 21:2, 23:13
**attorney** [8] - 4:9, 10:7, 10:18, 11:14, 13:12, 13:14, 23:17, 24:11
**attorney's** [5] - 9:22, 10:12, 23:16, 30:25, 31:1
**attorneys** [3] - 19:6, 30:8, 30:10
**Attorneys** [1] - 10:11
**August** [1] - 28:11

**authorization** [1] - 19:5
**award** [8] - 7:8, 7:25, 8:1, 10:2, 26:16, 26:17, 31:21
**awarded** [1] - 9:2

## B

**B406** [1] - 2:16
**backup** [1] - 21:7
**based** [3] - 22:23, 23:1, 25:12
**basis** [1] - 10:13
**bearing** [1] - 12:16
**became** [1] - 30:10
**BEFORE** [1] - 1:17
**begin** [3] - 15:22, 17:24, 18:10
**begun** [1] - 29:23
**behalf** [4] - 5:12, 11:10, 13:5, 13:9
**bench** [6] - 4:24, 5:2, 5:14, 13:17, 14:6, 16:24
**best** [1] - 33:9
**between** [4] - 10:17, 11:12, 11:20, 31:3
**beyond** [1] - 19:16
**big** [1] - 18:17
**binder** [5] - 16:19, 16:21, 16:24
**bleak** [1] - 26:16
**bless** [1] - 22:5
**BOB** [3] - 1:10, 2:3, 2:13
**Bob** [2] - 4:15, 19:8
**book** [2] - 13:17, 16:24
**books** [4] - 4:25, 5:3, 5:15, 13:23
**BREEAN** [1] - 2:9
**Breean** [2] - 4:20, 13:5
**brief** [7] - 11:2, 11:3, 11:4, 14:6, 24:8, 25:2, 32:3
**briefed** [1] - 24:21
**briefly** [1] - 29:12
**briefs** [2] - 13:23, 31:16
**bright** [1] - 30:6
**bright-line** [1] - 30:6
**brought** [2] - 28:1, 28:3
**Brown** [1] - 30:21
**build** [1] - 28:14
**BY** [4] - 2:3, 2:9, 2:19, 2:19

**C**

**CALLED** [1] - 4:4
**cannot** [2] - 10:15, 14:24
**Caremark** [6] - 20:10, 20:12, 21:2, 21:4, 21:7, 21:14
**carry** [1] - 6:2
**case** [32] - 5:25, 6:12, 7:2, 7:6, 7:10, 8:4, 9:10, 9:17, 10:11, 10:23, 11:1, 11:16, 13:12, 19:17, 20:3, 20:6, 20:7, 22:15, 23:6, 24:12, 24:17, 27:4, 28:14, 30:6, 30:13, 30:20, 30:21, 31:4, 31:15, 31:19, 32:4, 32:16
**cases** [4] - 10:7, 10:9, 10:10, 23:21
**CATHY** [1] - 2:15
**Cathy** [2] - 33:5, 33:15
**Cathy_Pepper@laed .uscourts.gov** [2] - 2:17, 33:17
**CCR** [2] - 2:15, 33:15
**CENTER** [1] - 1:22
**CERTIFICATE** [1] - 33:3
**CERTIFIED** [1] - 2:15
**Certified** [3] - 33:5, 33:6, 33:15
**certify** [1] - 33:8
**cetera** [1] - 13:6
**change** [1] - 13:11
**character** [1] - 31:12
**Circuit** [2] - 9:19, 23:19
**citations** [1] - 32:4
**cite** [1] - 11:16
**cited** [3] - 10:10, 23:21, 30:6
**citing** [1] - 23:19
**CIVIL** [1] - 1:12
**civil** [1] - 7:20
**claim** [17] - 4:10, 5:5, 9:10, 9:15, 10:15, 10:24, 10:25, 11:2, 11:16, 12:2, 12:4, 15:5, 24:20, 25:7, 25:10, 29:5, 32:7
**claimed** [1] - 11:1
**claiming** [1] - 11:21
**claims** [2] - 14:1, 24:24
**Clayton** [6] - 14:23, 15:18, 16:4, 17:16,

17:22, 18:5
**Clayton's** [3] - 15:9, 18:11, 20:15
**client** [1] - 12:11
**client's** [1] - 31:8
**clients** [2] - 19:14, 20:22
**closed** [1] - 12:19
**CO** [1] - 1:14
**COLLEGE** [1] - 2:4
**comment** [1] - 22:2
**comments** [1] - 5:8
**communicate** [1] - 30:8
**communicated** [1] - 8:14
**companies** [1] - 6:24
**compensation** [1] - 10:12
**complain** [1] - 12:7
**complaining** [1] - 27:6
**complete** [2] - 31:20, 32:16
**complied** [1] - 32:14
**complying** [1] - 19:1
**comprehension** [1] - 16:3
**computer** [1] - 6:15
**COMPUTER** [1] - 2:1
**conceded** [1] - 24:16
**conceding** [1] - 24:2, 24:14
**concern** [4] - 27:7, 30:1, 30:4
**concerned** [1] - 27:6
**concerning** [1] - 17:19
**concerns** [1] - 29:21
**concluded** [1] - 32:23
**confirm** [1] - 15:22
**consent** [1] - 22:8
**considered** [1] - 31:1
**contacted** [2] - 15:21, 17:17
**contain** [1] - 5:3
**contained** [2] - 13:23, 14:21
**contingency** [3] - 23:22, 23:25, 24:5
**CONTINUED** [1] - 2:1
**contract** [3] - 13:13, 23:18, 23:22
**contractual** [6] - 10:19, 10:20, 11:11, 25:4, 25:14, 29:6
**contributed** [1] - 30:3
**conversation** [4] - 15:11, 16:6, 18:9, 18:12
**copies** [1] - 14:9,

18:22, 20:21
**correct** [4] - 8:13, 10:8, 12:9, 33:9
**corrected** [1] - 28:23
**counsel** [2] - 4:11, 4:24
**couple** [4] - 8:6, 10:4, 11:22, 27:3
**course** [4] - 5:1, 6:19, 8:3, 31:9
**COURT** [5] - 1:1, 1:18, 2:15, 4:4, 4:7
**court** [2] - 23:16, 30:22
**Court** [11] - 5:3, 9:11, 9:12, 12:4, 31:11, 32:1, 33:6, 33:7, 33:8, 33:16, 33:16
**Crockett** [3] - 30:21, 31:15, 32:4
**CRR** [2] - 2:15, 33:15

**D**

**dad** [3] - 19:18, 21:18, 21:20
**damage** [2] - 26:21, 26:22
**date** [1] - 11:14
**dated** [2] - 15:18, 17:18
**dates** [1] - 21:10
**days** [5] - 23:4, 29:4, 29:18, 32:2, 32:9
**de** [2] - 22:9, 30:2
**deal** [1] - 18:17
**death** [2] - 29:24, 30:3
**DECEASED** [1] - 1:11
**deceased** [1] - 14:10
**decedent** [1] - 28:12
**December** [1] - 28:18
**decide** [1] - 5:24
**decided** [1] - 22:20
**decision** [1] - 23:9
**decrease** [1] - 9:21
**deem** [1] - 5:9
**defendant** [2] - 17:10, 17:12
**defense** [2] - 7:17
**denials** [3] - 26:3, 26:4, 26:6
**denied** [3] - 17:20, 18:8, 18:9
**denies** [8] - 14:7, 15:6, 15:7, 16:6, 17:21, 17:25, 18:3, 18:4
**DeQueen** [1] - 10:10
**DESCRIPTION** [1] - 3:12

**desire** [1] - 23:8
**destroy** [1] - 15:6
**destroyed** [1] - 21:6
**detailed** [1] - 18:11
**determinations** [1] - 31:10
**determine** [5] - 9:9, 9:21, 28:25, 29:7, 30:18
**determined** [1] - 10:13
**devoted** [1] - 31:8
**died** [1] - 28:18
**difference** [2] - 11:20, 22:19
**different** [1] - 17:6
**difficulties** [1] - 31:9
**difficulty** [2] - 21:16, 31:5
**digital** [1] - 14:14
**dime** [1] - 30:14
**discharge** [5] - 11:14, 12:14, 29:3, 29:4
**discharged** [1] - 10:11
**discovery** [1] - 23:8
**discussing** [1] - 18:13
**discussion** [1] - 12:22
**disinterested** [1] - 26:8
**dismiss** [1] - 23:5
**dismissed** [2] - 7:20, 8:2
**disputed** [1] - 4:9
**disregard** [1] - 17:23
**District** [3] - 33:7, 33:8, 33:16
**DISTRICT** [4] - 1:1, 1:1, 1:18, 1:18
**Division** [1] - 17:16
**DOCKET** [1] - 1:6
**doctors** [1] - 6:24
**document** [3] - 17:3, 17:13
**DOCUMENT** [1] - 1:9
**documents** [5] - 5:3, 5:4, 12:8, 17:8, 19:4
**done** [9] - 9:23, 22:15, 22:16, 23:18, 24:13, 24:15, 24:16, 24:17, 25:11, 26:20, 27:24
**doubt** [1] - 31:18
**down** [5] - 6:23, 6:24, 22:12, 25:23, 26:14
**DRAWER** [1] - 1:24
**drove** [1] - 19:24
**drug** [1] - 12:8
**duration** [12] - 6:23, 7:8, 7:19, 7:25, 8:2, 12:17, 19:8, 20:8, 23:3, 23:13, 28:16,

28:21
**during** [10] - 5:1, 7:11, 21:13, 21:20, 28:19, 29:23, 30:10, 30:12, 30:14, 31:9

**E**

**e-mail** [5] - 15:9, 15:17, 15:21, 20:15, 26:8
**E.D** [1] - 1:12
**Eastern** [1] - 33:8
**EASTERN** [2] - 1:1, 1:18
**effort** [1] - 29:8
**eight** [1] - 31:8
**elect** [1] - 32:3
**electronic** [1] - 14:13
**end** [1] - 14:6
**entered** [1] - 11:11
**entertain** [2] - 5:1, 12:23
**entire** [4] - 13:13, 22:10, 22:12, 28:3
**entitled** [5] - 9:11, 10:17, 10:19, 11:13, 33:11
**ER** [2] - 28:4, 28:7
**ESQUIRE** [4] - 2:3, 2:9, 2:9, 2:10
**essentially** [1] - 31:19
**establish** [1] - 9:18
**established** [1] - 25:17
**ESTATE** [1] - 1:11
**et** [1] - 13:6
**Eubanks** [33] - 4:10, 4:21, 4:22, 5:6, 6:1, 6:14, 7:5, 7:13, 8:16, 8:18, 8:22, 8:23, 9:8, 11:10, 13:5, 13:7, 13:8, 13:9, 13:10, 13:11, 13:14, 13:19, 16:25, 17:1, 17:2, 26:18, 26:24, 27:4, 29:3, 29:20, 31:23
**EUBANKS** [5] - 2:7, 2:8, 2:10, 3:15, 3:16
**Eubanks'** [1] - 19:20
**evidence** [19] - 5:2, 5:18, 6:4, 9:7, 11:9, 12:4, 13:20, 14:6, 16:10, 16:18, 16:24, 17:5, 26:4, 26:5, 26:9, 27:21, 32:12, 32:17
**exactly** [1] - 19:9
**except** [2] - 6:17,

27:10
**exclusive** [1] - 12:3
**excuse** [1] - 21:19
**exhibit** [4] - 13:18, 16:17, 16:20, 16:21
**Exhibit** [3] - 14:22, 21:14, 25:2
**exhibits** [7] - 5:11, 13:17, 14:21, 16:19, 21:22, 31:16, 32:17
**existed** [1] - 23:13
**experience** [2] - 31:2, 31:11
**Express** [1] - 9:20
**extent** [2] - 31:5, 31:7

## F

**F/K/A** [1] - 2:7
**facility** [2] - 12:9, 19:3
**fact** [4] - 14:8, 22:23, 24:16, 24:18
**factors** [5] - 9:21, 24:7, 28:24, 30:20, 31:1
**faith** [2] - 25:14, 30:5
**Fallon** [2] - 11:23, 24:23
**far** [1] - 21:3
**father** [3] - 23:4, 28:2, 28:4
**fax** [1] - 15:3
**February** [1] - 17:16
**federal** [1] - 23:16
**Federal** [1] - 32:2
**fee** [14] - 9:19, 9:20, 9:22, 9:23, 10:19, 23:17, 23:22, 23:25, 25:4, 25:10, 25:14, 29:6, 30:14, 30:25
**fees** [2] - 10:12, 24:5
**felt** [2] - 22:7, 23:12
**few** [5] - 13:25, 26:1, 29:4, 29:12, 29:18
**fewer** [2] - 6:17, 9:2
**Fifth** [2] - 9:19, 23:19
**fight** [2] - 30:12, 30:14
**figure** [1] - 6:22
**file** [3] - 22:24, 27:14, 32:15
**filed** [13] - 7:19, 7:22, 11:10, 11:22, 13:8, 13:9, 13:12, 18:1, 18:6, 22:24, 24:20, 24:22, 25:13
**final** [1] - 24:18
**fire** [1] - 22:20
**fired** [4] - 10:18, 30:9, 30:15, 31:18

**firing** [1] - 22:22
**Firm** [2] - 6:1, 6:14
**firm** [7] - 11:13, 13:10, 13:13, 22:20, 22:24, 27:5, 29:15
**firms** [1] - 24:5
**first** [16] - 5:7, 9:4, 13:16, 13:18, 14:1, 16:14, 17:6, 17:11, 19:10, 20:10, 21:24, 21:25, 26:2, 28:4, 28:19, 29:15
**five** [1] - 31:6
**flags** [1] - 27:18
**floor** [1] - 7:13
**Flournoya** [1] - 19:24
**focused** [1] - 32:10
**followed** [4] - 18:13, 20:10, 20:13, 24:22
**following** [2] - 12:10, 30:25
**FOR** [3] - 1:10, 2:3, 2:6
**foregoing** [1] - 33:9
**form** [2] - 26:3, 28:22
**formal** [1] - 32:1
**former** [1] - 7:4
**forms** [2] - 20:5, 28:20
**forth** [3] - 9:19, 11:12, 24:7
**forward** [1] - 5:7
**four** [1] - 31:4
**front** [1] - 5:23
**full** [7] - 7:8, 7:19, 7:25, 8:2, 12:17, 16:2, 25:13
**funds** [1] - 10:2

## G

**Gary** [6] - 4:10, 4:20, 4:21, 4:22, 13:10, 13:11
**GARY** [6] - 2:6, 2:7, 2:8, 2:9, 2:10
**gas** [1] - 19:24
**gather** [1] - 6:4
**general** [2] - 19:6, 24:10
**generally** [2] - 18:25, 19:3
**Georgia** [1] - 9:20
**get..** [1] - 23:24
**given** [5] - 8:2, 12:16, 14:9, 26:16, 28:15
**Glenn** [2] - 4:13, 4:15
**GLENN** [1] - 2:3
**grab** [1] - 16:13
**grabbed** [1] - 30:20

**Gravel** [1] - 10:10
**guide** [1] - 31:12
**guy** [1] - 21:3

## H

**handling** [1] - 13:12
**hands** [1] - 27:22
**happy** [1] - 12:23
**hard** [1] - 26:21
**HARDING** [2] - 1:22, 1:23
**harm** [3] - 6:21, 26:11
**head** [1] - 24:9
**HEARD** [1] - 1:17
**hearing** [4] - 4:8, 4:9, 5:5, 23:4
**HEARING** [1] - 1:17
**heart** [2] - 29:25
**held** [1] - 10:3
**help** [4] - 7:10, 9:7, 16:16, 28:14
**helpful** [1] - 20:10
**hereby** [1] - 33:8
**Highway** [1] - 9:20
**hill** [1] - 19:23
**himself** [2] - 6:22, 28:17
**hired** [4] - 21:4, 21:6, 21:11, 28:19
**HOLT** [3] - 2:6, 2:8, 2:9
**Holt** [4] - 4:20, 4:22, 13:5, 13:11
**Honor** [8] - 5:19, 10:16, 11:23, 19:22, 23:7, 24:18, 25:23, 32:20
**hornbook** [1] - 26:2
**hourly** [6] - 9:18, 9:23, 9:24, 11:4, 24:4, 24:5
**hours** [1] - 11:5
**housekeeping** [1] - 5:10
**hunting** [1] - 19:24

## I

**i.e** [1] - 30:25
**identify** [1] - 13:3
**immediately** [1] - 15:24
**importance** [1] - 31:4
**important** [2] - 8:5, 8:25, 20:14
**improve** [1] - 27:4
**IN** [1] - 1:4

**INC** [1] - 1:14
**included** [7] - 13:17, 14:5, 18:15, 18:16, 24:8, 25:2, 25:13
**incorrect** [1] - 14:17
**increase** [1] - 9:21
**indicate** [1] - 26:10
**indicated** [4] - 14:11, 18:22, 19:11, 22:11
**indication** [1] - 20:12
**INDIVIDUALLY** [1] - 1:10
**information** [5] - 7:5, 8:15, 12:15, 15:7, 15:13
**informed** [1] - 20:11
**ingestion** [1] - 18:19
**initial** [4] - 6:5, 6:16, 14:2, 28:10
**insight** [1] - 28:15
**instances** [1] - 30:7
**instructions** [4] - 6:3, 9:14, 12:11
**insurance** [2] - 6:23, 21:7
**interest** [1] - 26:11
**interested** [1] - 19:13
**interesting** [1] - 18:11
**interestingly** [4] - 15:5, 15:10, 19:7, 22:21
**interrogatory** [1] - 26:5
**interview** [3] - 6:16, 28:10, 28:19
**introduce** [2] - 5:8, 13:17
**introduced** [1] - 32:17
**introduction** [1] - 5:8
**involved** [1] - 20:12
**involving** [2] - 4:9, 4:10
**irrelevant** [1] - 7:21
**issue** [9] - 5:24, 18:25, 25:19, 26:11, 27:15, 30:11, 31:25, 32:5, 32:10
**issued** [2] - 19:2, 32:13
**issues** [1] - 24:22
**items** [1] - 32:12
**itself** [1] - 15:8

## J

**January** [4] - 20:15, 20:23, 29:16, 29:17
**Johnie** [7] - 4:10, 14:10, 14:20, 17:20,

21:9, 28:12, 29:22
**JOHNIE** [1] - 1:11
**Johnson** [1] - 9:20
**JR** [1] - 2:3
**Judge** [3] - 5:20, 11:23, 24:23
**judgment** [1] - 31:1
**July** [1] - 28:6
**June** [1] - 28:11
**JUNEAU** [47] - 1:17, 1:22, 4:14, 4:17, 4:23, 5:14, 5:17, 5:21, 8:6, 8:9, 8:18, 8:22, 8:24, 10:4, 10:9, 10:20, 10:23, 11:8, 11:20, 11:25, 12:6, 12:13, 12:21, 12:25, 13:3, 13:7, 13:15, 13:19, 15:15, 15:17, 15:20, 16:2, 16:8, 16:11, 16:15, 16:20, 16:23, 17:8, 17:13, 19:20, 21:19, 23:24, 25:24, 29:1, 29:10, 29:14, 31:24

## K

**keep** [4] - 20:17, 21:3, 21:5, 24:5
**kept** [2] - 20:6, 21:8
**kind** [2] - 6:24, 26:1
**knowing** [1] - 29:8
**knowledge** [1] - 31:11
**known** [2] - 4:21, 8:25
**Kroger** [21] - 6:6, 6:13, 7:11, 14:9, 14:13, 14:15, 14:24, 15:5, 15:8, 17:16, 17:22, 18:6, 18:19, 18:21, 19:17, 26:8, 26:22, 27:16, 27:19, 27:20, 27:21
**Kroger's** [3] - 8:10, 8:11, 12:8

## L

**LA** [2] - 1:12, 1:24
**labor** [1] - 31:8
**lack** [1] - 30:1
**LAFAYETTE** [1] - 1:24
**last** [1] - 32:12
**law** [14] - 10:18, 20:17, 23:1, 23:5, 23:15, 23:17, 23:20, 23:21, 25:20, 26:2, 30:5, 30:17, 31:15, 32:6
**Law** [2] - 6:1, 6:14

**lawsuit** [6] - 7:20, 7:22, 8:3, 14:5, 22:20, 23:5
**lawyer** [2] - 6:4, 22:22
**learned** [3] - 6:20, 7:12, 23:2
**learning** [1] - 31:2
**left** [2] - 15:11, 18:12
**lengthy** [1] - 32:9
**less** [3] - 27:11, 27:17, 27:19
**letter** [8] - 14:11, 14:12, 14:23, 15:9, 17:18, 17:23, 19:1, 22:21
**letters** [1] - 23:11
**level** [2] - 7:3, 7:8
**Liability** [1] - 4:8
**LIABILITY** [1] - 1:5
**lien** [9] - 4:9, 10:6, 10:12, 11:10, 13:9, 23:16, 24:21, 25:4, 30:16
**limitations** [1] - 7:23
**line** [1] - 30:6
**linked** [1] - 29:25
**LITIGATION** [1] - 1:5
**litigation** [4] - 30:10, 30:15, 31:7, 31:9
**LITTLE** [1] - 2:11
**loadstar** [2] - 9:18, 9:19
**logs** [3] - 20:16, 20:20, 20:25
**look** [6] - 9:20, 9:22, 21:10, 24:8, 24:10, 28:24
**looked** [1] - 26:12
**looking** [5] - 16:20, 17:2, 23:11, 23:15, 29:24
**loose** [1] - 5:21
**lost** [2] - 9:3, 9:4
**Louisiana** [3] - 23:20, 33:7, 33:8
**LOUISIANA** [4] - 1:1, 1:7, 1:18, 2:16
**lower** [3] - 26:16, 26:17

**M**

**mail** [6] - 15:3, 15:9, 15:17, 15:21, 20:15, 26:8
**man** [1] - 8:20
**March** [1] - 29:17
**mark** [2] - 5:17, 13:19
**marked** [3] - 16:25,

17:1, 28:21
**MASTER** [49] - 1:17, 1:22, 3:17, 3:18, 4:14, 4:17, 4:23, 5:14, 5:17, 5:21, 8:6, 8:9, 8:18, 8:22, 8:24, 10:4, 10:9, 10:20, 10:23, 11:8, 11:20, 11:25, 12:6, 12:13, 12:21, 12:25, 13:3, 13:7, 13:15, 13:19, 15:15, 15:17, 15:20, 16:2, 16:8, 16:11, 16:15, 16:20, 16:23, 17:8, 17:13, 19:20, 21:19, 23:24, 25:24, 29:1, 29:10, 29:14, 31:24
**Master** [13] - 7:3, 7:7, 7:24, 12:17, 12:19, 21:23, 22:9, 22:14, 29:19, 29:22, 31:21, 32:12, 32:15
**master** [1] - 8:1
**matter** [7] - 4:7, 5:11, 14:16, 31:4, 31:25, 32:18, 33:11
**MDL** [2] - 1:6, 4:8
**mean** [1] - 12:21
**measuring** [1] - 30:24
**MECHANICAL** [1] - 2:19
**medical** [4] - 19:2, 19:3, 19:15, 28:3
**medication** [1] - 30:3
**meet** [1] - 19:24
**meeting** [3] - 6:5, 14:2, 19:10
**memorandum** [2] - 10:5, 10:6
**mention** [1] - 28:15
**mentioned** [1] - 5:11
**MERCK** [1] - 1:14
**Merit** [1] - 33:6
**meruit** [18] - 9:11, 10:13, 10:15, 10:24, 10:25, 11:1, 11:2, 11:6, 11:17, 11:19, 12:2, 23:22, 24:1, 24:20, 25:15, 29:5, 30:25, 32:7
**microphone** [1] - 4:14
**middle** [1] - 15:20
**might** [1] - 7:12
**MINTON** [1] - 2:3
**minute** [2] - 8:10, 11:9
**mitigate** [1] - 6:21
**Mobley** [1] - 30:6
**money** [4] - 19:12, 19:13, 22:19, 23:10

**months** [4] - 26:13, 28:18, 29:16, 29:18
**most** [2] - 20:14, 24:6
**motion** [2] - 23:4, 24:23
**motions** [3] - 15:23, 18:1, 18:6
**MR** [28] - 3:5, 3:7, 4:13, 4:15, 4:18, 5:10, 5:16, 5:19, 5:22, 8:8, 8:13, 8:20, 8:23, 8:25, 10:8, 10:16, 10:22, 10:25, 11:18, 11:22, 12:1, 12:10, 12:18, 12:23, 13:2, 26:1, 29:4, 32:20
**MS** [24] - 3:6, 3:8, 4:20, 13:5, 13:8, 13:16, 13:21, 15:16, 15:19, 16:1, 16:4, 16:9, 16:13, 16:17, 16:22, 17:4, 17:10, 17:14, 19:22, 21:20, 23:25, 29:12, 29:15, 32:21
**must** [1] - 23:15

**N**

**name** [1] - 13:10
**named** [1] - 15:18
**nature** [2] - 31:5, 31:7
**necessarily** [1] - 27:4
**necessary** [1] - 32:6
**need** [3] - 15:13, 18:21, 27:23
**needed** [2] - 6:10, 18:20, 25:7
**needs** [1] - 25:11
**never** [5] - 6:12, 6:13, 11:4, 14:15, 27:5
**NEW** [2] - 1:7, 2:16
**next** [4] - 12:13, 17:21, 32:2, 32:9
**NO** [2] - 1:6, 1:12
**nonactivity** [1] - 12:6
**none** [1] - 6:25
**Nonetheless** [1] - 21:12
**note** [3] - 18:11, 22:1, 32:14
**notebooks** [2] - 5:12, 11:3
**noted** [1] - 21:13
**nothing** [6] - 9:24, 12:18, 12:19, 24:15, 24:16, 26:5
**notice** [8] - 11:9, 12:4,

13:9, 24:20, 24:22, 25:6, 25:10, 25:12
**noticed** [2] - 11:9, 27:15
**notification** [2] - 25:5, 25:6
**November** [2] - 28:5, 28:6
**novo** [2] - 22:9, 30:2
**Number** [1] - 4:8
**number** [5] - 11:19, 17:14, 17:15, 18:4, 19:10
**numbered** [1] - 33:11
**numerous** [1] - 20:4

**O**

**obtain** [3] - 8:19, 20:7, 23:13
**obtained** [10] - 6:8, 6:14, 6:15, 7:6, 8:9, 8:16, 20:21, 29:3, 29:15, 31:10
**obtaining** [4] - 12:8, 19:15, 21:17, 23:2
**obviously** [2] - 20:22, 24:5
**occasions** [1] - 12:12
**occurred** [5] - 7:9, 7:16, 9:1, 18:9
**OCTOBER** [2] - 1:7, 4:2
**October** [1] - 17:18
**OF** [4] - 1:1, 1:11, 1:17, 1:18
**offer** [1] - 5:11
**office** [4] - 15:21, 17:17, 19:20, 20:4
**Office** [1] - 17:16
**Official** [2] - 33:7, 33:16
**OFFICIAL** [1] - 2:15
**Oldie** [11] - 15:1, 15:6, 15:10, 15:11, 16:5, 16:14, 17:5, 17:12, 17:15, 17:20, 18:8
**Oldie's** [2] - 16:9, 17:11
**once** [2] - 6:20, 9:9
**one** [17] - 5:24, 6:15, 6:16, 6:17, 8:13, 10:9, 11:19, 16:22, 17:1, 27:10, 27:11, 28:20, 29:21, 30:9, 31:1, 32:12
**opening** [1] - 11:3
**opportunity** [1] - 25:25

**opposition** [2] - 5:6, 5:7
**Order** [1] - 9:13
**ORDER** [1] - 4:4
**order** [4] - 4:25, 11:5, 11:23, 32:13
**original** [1] - 29:21
**ORLEANS** [2] - 1:7, 2:16
**outlook** [1] - 26:15
**outside** [1] - 20:9
**owe** [1] - 30:14
**own** [2] - 23:8, 31:11

**P**

**P.A** [2] - 2:7, 2:8
**page** [2] - 17:14, 18:4
**PAGE** [2] - 3:3, 3:12
**paid** [2] - 7:18, 11:15
**paper** [14] - 6:6, 6:9, 6:11, 6:13, 6:14, 6:15, 7:12, 9:8, 14:14, 18:17, 18:21, 27:2, 27:12, 27:23
**papers** [1] - 16:16
**paragraph** [1] - 11:12
**part** [6] - 15:20, 20:2, 22:11, 22:12, 24:20, 31:16
**parties** [5] - 5:2, 10:17, 11:12, 31:3, 32:2
**party** [1] - 32:13
**PATRICK** [2] - 1:17, 1:22
**payment** [2] - 30:10, 30:12
**pending** [2] - 9:5, 26:18
**Pepper** [3] - 33:5, 33:14, 33:15
**PEPPER** [1] - 2:15
**performed** [2] - 31:17, 31:19
**period** [10] - 7:11, 14:20, 17:22, 19:18, 20:17, 21:5, 21:13, 21:21, 22:17, 28:3
**permitted** [1] - 31:11
**personally** [1] - 7:6
**pharmaceutical** [1] - 17:19
**pharmacies** [1] - 20:11
**pharmacist** [4] - 7:4, 8:14, 8:15, 8:17
**Pharmacy** [4] - 6:6, 7:11, 18:6, 18:19

**pharmacy** [11] - 12:9, 18:25, 19:3, 19:15, 19:23, 20:22, 21:5, 22:23, 23:14, 28:5, 28:8
**pharmacy's** [1] - 22:3
**Pharmacy's** [1] - 26:8
**phonetically** [1] - 15:1
**picked** [1] - 20:19
**piece** [1] - 6:15
**pills** [1] - 28:13
**place** [1] - 16:7
**plaintiff** [1] - 20:5
**plaintiff's** [1] - 17:11
**plan** [2] - 24:24, 24:25
**pleading** [1] - 17:9
**pleadings** [4] - 16:14, 16:18, 16:19, 31:6
**plus** [1] - 27:14
**point** [5] - 8:13, 10:25, 16:11, 21:6, 24:13
**points** [1] - 9:2
**POTTER** [1] - 2:3
**POYDRAS** [1] - 2:16
**practice** [2] - 19:3, 19:6
**precise** [2] - 32:5, 32:10
**preparation** [1] - 31:6
**prepared** [1] - 21:21
**prescribed** [1] - 28:4
**prescription** [7] - 14:9, 14:19, 18:13, 18:14, 21:18, 22:3, 29:23
**prescriptions** [3] - 6:17, 21:8, 21:12
**PRESENT** [1] - 2:13
**presented** [3] - 7:4, 12:2, 31:9
**preservation** [7] - 14:11, 14:12, 15:8, 17:19, 17:23, 19:1, 27:7
**preserve** [2] - 14:13, 14:15
**preserved** [1] - 14:16
**presumably** [1] - 12:4
**Pretrial** [1] - 9:13
**pretty** [3] - 6:2, 26:2, 26:9
**previously** [1] - 25:13
**primarily** [1] - 12:10
**primary** [2] - 12:12, 13:14
**printout** [8] - 6:7, 6:15, 15:2, 18:18, 27:10, 27:13, 27:16, 28:5
**problems** [2] - 28:16,

29:25
**proceed** [2] - 4:16, 4:19
**proceeding** [1] - 23:18
**proceedings** [4] - 5:1, 31:6, 32:22, 33:10
**PROCEEDINGS** [3] - 1:17, 2:19, 4:1
**process** [6] - 15:22, 15:24, 17:24, 18:7, 18:10, 20:3
**produced** [1] - 20:23
**PRODUCED** [1] - 2:19
**PRODUCTS** [1] - 1:4
**Products** [1] - 4:8
**professional** [1] - 31:2
**profile** [1] - 20:5
**proof** [4] - 11:5, 18:19, 22:2, 32:6
**propounded** [2] - 17:12, 23:8
**prove** [6] - 6:23, 9:12, 11:5, 19:8, 19:11, 20:8, 23:20
**proven** [1] - 9:16
**provide** [1] - 19:4
**provided** [1] - 18:22
**proving** [4] - 11:18, 11:21, 28:16, 32:6
**PTO** [1] - 24:19
**purge** [4] - 15:24, 17:24, 18:7, 18:10
**purging** [1] - 15:22
**purposes** [4] - 4:11, 4:23, 5:13, 18:18
**pursuant** [1] - 32:1
**pursue** [3] - 22:20, 24:11, 26:18
**pursued** [1] - 13:13
**pursuing** [2] - 23:10, 24:19
**put** [4] - 9:19, 12:3, 16:15, 32:11

## Q

**quantum** [18] - 9:11, 10:13, 10:15, 10:24, 10:25, 11:1, 11:2, 11:6, 11:17, 11:18, 12:2, 23:22, 24:1, 24:20, 25:15, 29:5, 30:25, 32:6
**questions** [11] - 8:7, 10:5, 12:24, 13:1, 25:22, 26:10, 28:21, 29:9, 29:11, 31:23, 31:24

## R

**rate** [2] - 9:18, 11:5
**rates** [1] - 9:24
**rather** [1] - 13:24
**rattle** [1] - 24:8
**RE** [1] - 1:4
**re** [1] - 4:8
**read** [2] - 10:5, 10:23
**ready** [2] - 4:15, 4:18
**really** [2] - 6:25, 19:2
**Realtime** [2] - 33:5, 33:15
**REALTIME** [1] - 2:15
**reasonable** [15] - 6:3, 6:4, 9:18, 9:22, 11:13, 11:15, 12:11, 24:10, 25:3, 25:5, 25:15, 29:6, 30:19, 30:24, 31:13
**reasons** [2] - 6:2, 10:1
**rebut** [1] - 25:25
**received** [10] - 4:24, 5:18, 13:20, 15:2, 15:8, 16:24, 18:15, 25:5, 25:6, 25:11
**recommendation** [1] - 32:1
**record** [11] - 4:7, 4:11, 4:24, 5:13, 13:4, 21:9, 22:10, 25:18, 28:7, 32:16, 33:10
**RECORDED** [1] - 2:19
**records** [57] - 6:7, 6:9, 6:11, 6:13, 6:14, 7:12, 7:14, 8:12, 9:3, 9:8, 9:17, 9:24, 12:20, 14:9, 14:13, 14:18, 14:19, 14:25, 15:2, 15:3, 15:6, 15:12, 17:19, 18:13, 18:14, 18:15, 18:16, 18:17, 18:18, 18:21, 18:23, 19:2, 19:15, 19:16, 20:15, 20:16, 21:3, 21:4, 21:5, 21:10, 21:11, 21:17, 22:23, 23:14, 24:11, 26:23, 26:24, 27:2, 27:5, 27:12, 27:23, 28:3, 28:5, 28:8, 30:1
**red** [1] - 27:18
**redacted** [1] - 20:22
**redo** [1] - 25:9
**reference** [1] - 29:2
**referred** [1] - 32:4
**refused** [2] - 6:10, 9:8
**refusing** [1] - 19:4

**regard** [1] - 29:5
**regarding** [2] - 11:6, 28:19
**Registered** [1] - 33:5
**rehash** [1] - 13:24
**reinstate** [2] - 15:24, 18:6
**RELATES** [1] - 1:9
**relationship** [2] - 22:22, 31:3
**relevant** [4] - 14:6, 16:10, 16:18, 17:5, 17:8
**reliable** [1] - 26:9
**rendered** [1] - 11:7
**repair** [2] - 26:20, 26:22
**repeat** [1] - 23:24
**reply** [2] - 11:2, 11:4
**report** [2] - 16:3, 32:1
**REPORTER** [2] - 2:15, 2:15
**reporter** [1] - 30:22
**Reporter** [4] - 33:5, 33:6, 33:7, 33:15, 33:16
**REPORTER'S** [1] - 33:3
**represent** [2] - 13:7, 13:8
**request** [18] - 6:13, 12:20, 14:4, 14:19, 16:9, 16:14, 17:6, 17:11, 17:14, 17:21, 18:2, 18:4, 19:5, 19:9, 26:3, 26:4, 27:9, 32:8
**requested** [3] - 14:16, 14:19, 23:3
**requesting** [1] - 27:9
**requests** [1] - 16:5
**required** [8] - 4:25, 5:3, 5:4, 12:1, 19:5, 20:17, 20:25, 24:19
**requires** [2] - 9:19, 25:21
**research** [1] - 31:5
**respect** [2] - 18:24, 30:5
**respective** [2] - 4:24, 5:2
**respond** [3] - 13:16, 13:24, 29:12
**responding** [1] - 19:1
**response** [11] - 14:4, 14:23, 15:1, 16:14, 17:5, 17:11, 18:2, 19:4, 19:9, 26:2, 31:20
**responses** [1] - 26:3

**results** [1] - 31:10
**retain** [1] - 10:12
**retired** [4] - 6:24, 8:14, 8:15, 19:23
**reversed** [1] - 8:1
**review** [7] - 7:3, 7:8, 22:9, 22:10, 22:12, 30:2
**reviewed** [4] - 10:9, 20:5, 21:21
**RMR** [2] - 2:15, 33:15
**road** [1] - 26:14
**Robert** [2] - 15:21, 17:17
**ROCK** [1] - 2:11
**ROOM** [1] - 2:16
**Rosie** [1] - 28:12
**roughly** [1] - 22:18
**Roundtree** [9] - 6:6, 6:8, 6:11, 14:2, 14:4, 14:14, 15:7, 19:9
**Roundtree's** [2] - 15:21, 17:17
**rule** [1] - 30:6
**Rules** [1] - 32:2
**ruling** [1] - 12:17
**run** [4] - 7:23, 22:25, 23:1

## S

**s/Cathy** [1] - 33:14
**Salmon** [1] - 11:16
**Sand** [1] - 10:10
**scheduled** [1] - 4:9
**scheduling** [2] - 4:25, 32:13
**SECOND** [1] - 2:10
**second** [7] - 7:3, 7:8, 7:13, 9:5, 14:18, 24:21, 32:14
**SECTION** [1] - 1:6
**section** [1] - 22:2
**see** [5] - 7:14, 17:8, 21:12, 22:13
**seeing** [1] - 30:2
**send** [4] - 15:12, 15:13, 27:23, 32:8
**sent** [6] - 6:12, 8:20, 14:11, 15:1, 18:13, 27:17
**separate** [1] - 17:10
**services** [14] - 11:6, 11:7, 11:14, 11:15, 15:3, 25:5, 25:15, 29:7, 29:8, 30:19, 30:25, 31:5, 31:12, 31:14
**set** [2] - 17:11, 24:7

**settlement** [1] - 18:18
**seven** [1] - 31:8
**several** [1] - 26:25
**show** [2] - 7:15, 22:2
**showed** [4] - 20:19, 21:10, 27:11, 27:17
**showing** [2] - 20:25, 27:19
**shows** [2] - 23:21, 27:22
**sic** [1] - 19:23
**sides** [3] - 25:18, 32:5, 32:14
**sign** [1] - 8:21
**signature** [3] - 20:16, 20:20, 20:25
**signatures** [1] - 20:18
**signed** [4] - 11:23, 20:2, 21:22, 28:22
**simple** [1] - 6:2
**simply** [1] - 16:15
**simultaneously** [1] - 32:3
**sit** [1] - 25:23
**sitting** [1] - 5:22
**situation** [2] - 23:16, 23:17
**six** [1] - 31:6
**skill** [1] - 31:2
**slogan** [1] - 30:13
**slowly** [1] - 30:23
**someone** [5] - 5:22, 8:20, 10:14, 15:18, 28:14
**sorry** [1] - 21:24
**sort** [1] - 23:11
**sought** [1] - 20:7
**SPEAKERS** [1] - 3:3
**speaking** [1] - 20:24
**Special** [13] - 7:3, 7:7, 7:24, 12:17, 12:19, 21:23, 22:9, 22:14, 29:19, 29:22, 31:21, 32:12, 32:15
**SPECIAL** [49] - 1:17, 1:22, 3:17, 3:18, 4:14, 4:17, 4:23, 5:14, 5:17, 5:21, 8:6, 8:9, 8:18, 8:22, 8:24, 10:4, 10:9, 10:20, 10:23, 11:8, 11:20, 11:25, 12:6, 12:13, 12:21, 12:25, 13:3, 13:7, 13:15, 13:19, 15:15, 15:17, 15:20, 16:2, 16:8, 16:11, 16:15, 16:20, 16:23, 17:8, 17:13, 19:20, 21:19, 23:24, 25:24, 29:1, 29:10, 29:14,

31:24
**specific** [1] - 15:10
**spelled** [1] - 15:1
**spend** [1] - 23:9
**spent** [4] - 8:3, 23:6, 23:7, 29:8
**ST** [1] - 1:23
**standing** [1] - 31:2
**start** [3] - 5:5, 5:7, 28:6
**started** [3] - 6:20, 6:21, 28:6
**State** [1] - 33:6
**state** [1] - 23:17
**statement** [1] - 30:18
**States** [2] - 33:7, 33:16
**STATES** [2] - 1:1, 1:18
**station** [1] - 19:24
**statute** [5] - 7:23, 10:6, 22:25, 25:4, 25:13
**STENOGRAPHY** [1] - 2:19
**STEPHENS** [5] - 1:10, 1:11, 2:3, 2:13, 3:14
**Stephens** [42] - 4:10, 4:15, 4:17, 4:18, 5:12, 5:18, 5:25, 6:5, 6:16, 6:18, 6:19, 7:4, 7:9, 7:18, 7:22, 8:11, 8:14, 9:2, 10:3, 14:1, 14:8, 14:10, 14:11, 14:20, 17:20, 19:8, 19:10, 20:1, 20:2, 21:9, 21:17, 22:11, 22:17, 26:21, 27:3, 27:7, 27:18, 28:1, 28:12, 28:17, 29:22
**Stephens'** [2] - 19:16, 22:8
**Stephens's** [1] - 22:4
**steps** [1] - 6:3
**still** [8] - 7:12, 9:5, 9:16, 10:22, 14:11, 24:1, 24:3, 28:13
**stops** [1] - 25:19
**store** [2] - 6:8, 6:9
**STREET** [2] - 2:10, 2:16
**stumbled** [1] - 28:17
**subject** [1] - 31:4
**submission** [1] - 10:5
**submissions** [2] - 9:25, 11:3
**submit** [5] - 12:4, 18:19, 22:1, 22:9, 32:3
**submitted** [26] - 5:12, 5:15, 7:7, 9:17, 11:4,

12:14, 12:15, 12:18, 12:20, 13:23, 16:18, 16:19, 17:3, 18:20, 19:19, 20:1, 21:23, 21:24, 22:6, 22:14, 25:10, 28:20, 28:23, 29:19, 31:17
**subpoena** [6] - 6:10, 6:12, 18:24, 18:25, 19:2, 27:23
**subpoenaing** [1] - 12:7
**subsequent** [2] - 13:10, 29:2
**successful** [3] - 7:1, 22:8, 23:2
**sue** [3] - 22:19, 22:23
**sufficiency** [1] - 25:12
**sufficient** [4] - 18:19, 25:7, 25:11, 25:16
**sufficiently** [1] - 25:17
**suit** [1] - 22:24
**SUITE** [2] - 1:23, 2:4
**superior** [1] - 17:17
**support** [1] - 12:5
**Susan** [4] - 14:23, 15:18, 17:16, 18:5
**suspicious** [1] - 28:17
**swore** [1] - 19:18

**T**

**tabs** [1] - 17:6
**terminate** [2] - 6:1, 12:22
**terminated** [4] - 10:7, 24:13, 24:15, 29:16
**terminating** [1] - 22:21
**termination** [10] - 7:16, 9:1, 9:10, 10:2, 26:13, 26:14, 27:8, 28:25, 29:17, 29:18
**Thames** [6] - 4:13, 4:15, 13:25, 19:7, 23:19, 25:25
**THAMES** [27] - 2:3, 4:13, 4:15, 4:18, 5:10, 5:16, 5:19, 5:22, 8:8, 8:13, 8:20, 8:23, 8:25, 10:8, 10:16, 10:22, 10:25, 11:18, 11:22, 12:1, 12:10, 12:18, 12:23, 13:2, 26:1, 29:4, 32:20
**THAMES** ....................
 ..................... [2] -
 3:5, 3:7

**THE** [5] - 1:10, 1:18, 1:22, 4:7
**thesis** [1] - 32:9
**they've** [1] - 11:4, 18:17, 24:16
**THIS** [1] - 1:9
**thorough** [1] - 14:14
**three** [1] - 31:3
**threw** [1] - 27:13
**throughout** [3] - 20:3, 20:6, 20:7
**timeline** [2] - 15:9, 31:17
**TO** [2] - 1:9, 4:4
**took** [5] - 16:6, 19:18, 21:18, 21:20, 23:4
**top** [1] - 24:9
**total** [1] - 22:10
**towards** [2] - 14:6, 17:4
**track** [1] - 6:24
**tracked** [1] - 6:23
**transcript** [1] - 33:9
**TRANSCRIPT** [2] -
 1:17, 2:19
**tried** [2] - 6:9, 6:24
**true** [3] - 7:21, 22:25, 33:9
**trust** [1] - 10:3
**try** [8] - 7:10, 7:14, 9:7, 9:8, 26:20, 26:24, 30:16, 30:22
**trying** [3] - 6:21, 6:22, 9:7
**twice** [1] - 7:2
**two** [5] - 12:12, 16:25, 27:14, 31:3, 32:12
**TX** [1] - 2:4
**TYLER** [1] - 2:4

**U**

**ultimately** [4] - 7:2, 7:18, 12:16, 26:13
**under** [10] - 13:14, 17:4, 18:20, 23:5, 25:3, 30:17, 31:14, 31:15, 31:25, 32:6
**undisputed** [1] - 10:17
**UNITED** [2] - 1:1, 1:18
**United** [2] - 33:7, 33:16
**unsuccessful** [1] - 22:7
**up** [22] - 5:22, 6:23, 6:25, 7:4, 9:12, 9:16, 11:5, 11:15, 11:21, 18:13, 19:8, 19:17, 19:24, 20:10, 20:13,

20:19, 24:22, 24:23, 24:24, 27:18, 29:24, 32:6
**upheld** [1] - 26:17
**upstairs** [1] - 7:13

**V**

**value** [14] - 11:5, 11:6, 11:13, 11:15, 25:3, 25:5, 25:15, 29:6, 29:7, 30:19, 30:24, 31:13
**verified** [2] - 14:5, 16:6
**Vioxx** [6] - 4:8, 19:14, 20:8, 21:20, 28:2, 28:4
**VIOXX** [1] - 1:4
**visit** [1] - 28:4
**volumes** [1] - 16:25

**W**

**wait** [1] - 17:23
**waited** [1] - 27:14
**waiting** [1] - 31:20
**WALAS** [23] - 2:9, 4:20, 13:5, 13:8, 13:16, 13:21, 15:16, 15:19, 16:1, 16:4, 16:9, 16:13, 16:17, 16:22, 17:4, 17:10, 17:14, 19:22, 21:20, 23:25, 29:12, 29:15, 32:21
**Walas** [2] - 4:20, 13:5
**WALAS** ....................
 ..................... [2] -
 3:6, 3:8
**WEDNESDAY** [2] -
 1:7, 4:2
**WEST** [1] - 2:10
**whereas** [1] - 16:23
**WHEREUPON** [1] -
 32:22
**whole** [1] - 20:3
**wife** [1] - 28:12
**win** [2] - 9:6, 30:13
**winning** [1] - 7:20
**won** [1] - 7:18
**word** [2] - 15:23, 19:7
**worthwhile** [1] - 26:19
**wound** [1] - 6:25
**Wren** [1] - 10:10
**written** [1] - 12:8
**WRW** [1] - 1:13

## Y

**y'all** [1] - 32:8
**year** [1] - 22:18
**years** [5] - 6:20, 11:22, 26:25, 27:14, 28:18
**yourself** [1] - 13:3