UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA


IN RE:  VIOXX

| | |
|---|---|
| PRODUCTS LIABILITY LITIGATION | MDL NO. 1657 |
| | SECTION L |
| THIS DOCUMENT RELATES TO ALL CASES | JUDGE FALLON |
| | MAG. JUDGE KNOWLES |
| FILER:  ROBERT E. ARCENEAUX/MARGARET WOODWARD | SPECIAL MASTER PATRICK A. JUNEAU |


Deposition of ANDY D. BIRCHFIELD, JR., 218
Commerce Street, Montgomery, Alabama  36104,
taken in the offices of Herman, Herman, Katz &
Cotlar, Suite 100, 820 O'Keefe Avenue, New
Orleans, Louisiana  70113, on Friday, the 6th day
of May, 2011, beginning at 9:11 a.m.


BEFORE:

       SPECIAL MASTER PATRICK A. JUNEAU

APPEARANCES:

       ROBERT E. ARCENEAUX
       47 Beverly Garden Drive
       Metairie, Louisiana  70001

              and

       MARGARET E. WOODWARD
       Suite C
       3701 Canal Street
       New Orleans, Louisiana  70119

              CO-LEAD COUNSEL FOR OBJECTORS
              IDENTIFIED IN FEB. 8 ORDER

EXHIBIT 1

```
 1   APPEARANCES CONTINUED:

 2        AJUBITA, LEFTWICH & SALZER
          (Of Counsel)
 3        (BY:  PASCAL F. CALOGERO, JR.)
          Suite 1500
 4        1100 Poydras Street
          New Orleans, Louisiana  70163-1500
 5
                  LIAISON COUNSEL FOR OBJECTORS
 6

 7        HOCKEMA & LONGORIA
          (BY:  DAVID HOCKEMA)
 8        Post Office Box 720540
          McAllen, Texas  78504
 9
                  ATTORNEYS FOR ESCOBEDO, TIPPIT
10                & CARDENAS

11
          BEIRNE, MAYNARD & PARSONS
12        (BY:  JACK E. URQUHART)
          25th Floor
13        1300 Post Oak Boulevard
          Houston, Texas  77056
14
                  ATTORNEYS FOR KATHRYN SNAPKA
15

16        BECNEL LAW FIRM
          (BY:  DANIEL E. BECNEL, JR.)
17        106 West Seventh Street
          Post Office Drawer H
18        Reserve, Louisiana  70084

19                FOR BECNEL LAW FIRM, LLC

20
          HERMAN, HERMAN, KATZ & COTLAR
21        (BY:  RUSS M. HERMAN)
          Suite 100
22        820 O'Keefe Avenue
          New Orleans, Louisiana  70113
23
                  ATTORNEYS FOR THE FEE
24                ALLOCATION COMMITTEE

25
```

```
 1   APPEARANCES CONTINUED:

 2   ALSO PRESENT:

 3           JOE ESCOBEDO, JR.
             ESCOBEDO, TIPPIT & CARDENAS
 4           Suite 950
             3900 North 10th Street
 5           McAllen, Texas  78501

 6           KATHRYN SNAPKA
             (VIA TELEPHONE)
 7
             LISA DAGESTINO
 8           (VIA TELEPHONE)
             KLINE & SPECTER
 9           1525 Locust Street
             Philadelphia, Pennsylvania  19102
10
             ERIC WEINBERG
11           (VIA TELEPHONE)
             LAW OFFICE OF ERIC WEINBERG
12           149 Livingston Avenue
             New Brunswick, New Jersey  08901
13
             CYNTHIA ZEDALIS
14           (VIA TELEPHONE)
             THE BRANCH LAW FIRM
15           2025 Rio Grande Boulevard, Northwest
             Albuquerque, New Mexico  87104
16
             CHRISTOPHER M. PLACITELLA
17           (VIA TELEPHONE)
             COHEN, PLACITELLA & ROTH
18           115 Maple Avenue
             Red Bank, New Jersey  07701
19
             LESLIE B. DOYLE, CCR, RMR, RDR
20           GOLKOW TECHNOLOGIES, INCORPORATED

21

22

23   REPORTED BY:

24           CAROL VALLETTE SLATER
             Certified Court Reporter
25           Registered Professional Reporter
```

```
 1        SPECIAL MASTER JUNEAU:

 2            Okay.  Let me make these two

 3        observations.  I think those

 4        minutes that you're seeking, in

 5        my -- based on everything I've

 6        heard, is going to really lead to

 7        nothing.  I just can't see that as

 8        being productive, but I'm --

 9        I'm -- I'm going to request -- I'm

10        going to order that those minutes

11        be produced and, Mr. Birchfield, I

12        know y'all are heavily, heavily

13        engaged, this is a burden, we're

14        talking about Friday afternoon,

15        the hearings start Monday, I

16        totally understand that.  But I

17        want that produced.  You won't be

18        on the stand until the latter part

19        of next week, as I understand it.

20        So, at least give y'all time

21        within your staff to do that, I

22        would say, by late Tuesday, that

23        those documents be produced.

24        THE WITNESS:

25            Let me ask you to consider
```



**HERMAN HERMAN KATZ & COTLAR**
L.L.P.
ATTORNEYS AT LAW
Est. 1942

820 O'Keefe Avenue,
New Orleans, Louisiana
70113-1116

p: (504) 581-4892
F: (504) 561-6024
e: info@hhkc.com

hhkc.com

Harry Herman (1914-1987)
Russ M. Herman*
Maury A. Herman*
Morton H. Katz*
Sidney A. Cotlar*
Steven J. Lane
Leonard A. Davis*
James C. Klick†
Stephen J. Herman
Brian D. Katz

Soren E. Gisleson
Joseph E. Cain
_____
Jennifer J. Greene‡
John S. Creevy
Jeremy S. Epstein†
Aaron Z. Ahlquist
Craig M. Robinson
Joseph A. Kott, M.D.,
J.D. (Of Counsel)

Offices in New Orleans and
Covington, Louisiana

This Firm and its Partners Are Also
Partners in Herman Gerel, LLP (Formerly
Herman, Mathis, Casey, Kitchens & Gerel, LLP)

* A Professional Law Corporation
† Also Admitted in Texas
‡ Also Admitted in Arkansas

May 8, 2011

Special Master Pat Juneau                    *Via E-Mail*
1018 Harding Street, Suite 202
P.O. Drawer 51268
Lafayette, LA  70505-1268

Dear Special Master Juneau:

On Friday, Objectors were afforded the opportunity to depose Andy Birchfield not for the 7 hours as provided by the Federal Rules of Civil Procedure, but for 8 ½ hours. At the conclusion of the deposition at approximately 6:30 p.m., after a very long day, Objectors renewed their request for the discovery of minutes of Fee Allocation Committee meetings. You granted their request. The Fee Allocation Committee urges you to reconsider.

In your order of March 31, 2011, you noted the extent of the discovery that had already taken place in this proceeding and in particular, the expansive materials that had previously been produced. In light of the discovery that had already taken place, you granted Objectors' request to depose a member of the Fee Allocation Committee, but in all other respects denied further discovery, including Objectors' request for production of minutes of Fee Allocation Committee meetings. Objectors appealed, challenging the limitation on discovery among other things. On April 21, 2011, the Court affirmed the Special Master's order and denied the appeal. Specifically, the Court noted that the Special Master in his order had achieved the "appropriate balance between permitting the Objectors reasonable discovery and preventing this fee dispute from ballooning unnecessarily." See Court's Order of April 21, 2011, at 2.

The minutes of meetings of the Court-appointed Fee Allocation Committee ("FAC") memorialize their internal deliberations and analyses conducted prior to reaching recommended fee award allocations in this litigation. Said minutes were intended to be confidential and constitute privileged attorney work product entitled to an order of protection. *See, e.g., In re Adelphia Communications, Corp.,* 348 B.R. 99, 109-10 (S.D.N.Y. Bankr. 2006) (ruling that "care must be taken to protect [court-appointed fee committee's] legitimate rights to the protection of work product, attorney mental impressions, and the attorney-client privilege"). Courts have recognized that "much of the work of any fee committee may have most, if not all, of the trappings of work product," and "courts should be wary of efforts to use discovery from fee committees as a tactical measure, or to go 'tit for tat.'" *Id.* at 110.

EXHIBIT 2

The Court has affirmed that you have achieved the proper balance in regard to discovery. The Fee Allocation Committee urges you not to upset that balance at this late date.

Sincerely,

RUSS M. HERMAN
Chairman, Vioxx Fee Allocation Committee

RMH/rw

cc:     Robert Arcenaux
        Margaret Woodward
        Pascal Calogero, Jr.
        Fee Allocation Committee

MARGARET E. WOODWARD
3701 Canal Street, Suite C
New Orleans, Louisiana 70119
(504) 301-4333 office
(504) 301-4365 fax
mewno@aol.com

April 21, 2011

VIA E-MAIL

Patrick A. Juneau
JUNEAU DAVID, APLC
Post Office Drawer 51268
Lafayette, LA 70505-1268

Re: *In re Vioxx Products Liability Litigation*, MDL 1657

Dear Special Master Juneau:

This court ruled on Friday evening that we were entitled to production of the FAC's minutes. Mr. Herman wrote this evening urging that you reconsider that ruling to beat back the specter of a mini-trial and to protest attorney work product. Neither objection is valid.

In accordance with your Scheduling Order, the hearing commences tomorrow and will conclude on Friday. Providing access to relevant documents will not expand the length or scope of the proceeding, or convert it into the dreaded mini-trial.

The work product exception has no application to the requested documents. As the Fifth Circuit has observed, not every document prepared by a lawyer is attorney work product. *Kent Corporation v. NLRB,* 530 F. 2d 612, 623 (5th Cir. 1976). The work product document was developed by the United States Supreme Court in *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), to protect against unwarranted intrusion into the private processes by which he *prepares a case for litigation:*

> Historically, a lawyer is an officer of the court and is bound to work for the advancement of justice while faithfully protecting the rightful interests of his clients. In performing his various duties, however, it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests. This work is reflected, of course, in interviews, statements,

EXHIBIT 3

Mr. Patrick Juneau
April 21, 2011
Page 2

memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways—aptly though roughly termed by the Circuit Court of Appeals in this case, 153 F.2d 212, 223, as the 'Work product of the lawyer.' Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served.

Soon after *Hickman* announced this doctrine, FRCP 26 (b)(3) was amended to provide that "[o]rdinarily. . . documents. . . prepared *in anticipation of litigation or for trial **by or for another party***" are not discoverable.  (Emphasis supplied.)

Mr. Herman's invocation of the doctrine fails on both counts.  The FAC's minutes were not "prepared in anticipation of litigation or for trial."  Instead, they recorded the FAC's operations under the court's charge to prepare a recommended allocation of fees.  Correlatively, the FAC was not representing another party; it was acting solely pursuant to its charge from the court, and doing work *for the court*.  The Objectors are now seeking that information so that they (and the court) may evaluate whether the FAC fairly and adequately adhered to their charge.

Perhaps because the Rule and Supreme Court precedent so clearly do not apply, the FAC has reached to a bankruptcy decision from the Southern District of New York to argue that its minutes are protected.  The cited case, although it contains the words "fee committee," "work product," and "immunity" has no other commonality with the FAC's argument here, because the court neither considered nor decided any issue related to work product doctrine.  In *In re Adelphia Communications, Corp*., 348 B.R. 99 (NY. 2006),  a bankruptcy fee committee had been granted the following status and immunity:

The Fee Committee and each member thereof are hereby appointed officers of the Court with respect to the performance of their duties on the Fee Committee and provided the maximum immunity permitted by law from civil actions for all acts taken or omitted in the performance of their duties and powers on the Fee Committee.

The Fee committee was composed of the debtor, creditor's representatives, and the trustee, who were charged with trying to ensure that fees that were being charged the debtor for professional services were within reason. When one of those vendors of services sought discovery of information relating

Mr. Patrick Juneau
April 21, 2011
Page 3

to how the Fee Committee had considered its request to be paid, the Court entered the following rulings:

> (1) The "maximum immunity permitted by law from civil actions" that was afforded to the Fee Committee under the Protocol—and separately, the nature of a fee committee's appointment and responsibilities—provides immunity from suit. But neither additionally provides immunity from otherwise proper discovery requests;

> (2) I do not need to decide whether the Fee Committee is a "party" to the contested matter, because the Fee Committee would be subject to otherwise appropriate discovery requests whether or not it is a party;

> (3) *Matters as to the applicability of other potential discovery exceptions—work product, attorney mental impressions and attorney-client privilege—are not yet ripe for decision.* Determinations as to such matters should await other events, efforts to get the information from other sources, and more extensive factual presentations.

> For these reasons, I am determining that while discovery of the Fee Committee is not prohibited as a matter of law, it should await the filing of an objection to the BSF fee application (by the Fee Committee or anyone else), and should await resort to other sources from which the relevant information might be obtained.

348 B.R. at 102 (emphasis supplied). This immunity decision, of course, has no bearing upon the issue presented.

Because the FAC did not prepare its minutes in anticipation of litigation nor in the representation of a party whose case was headed toward litigation, the claim of "work product" cannot stand.

The applicable principle here is transparency, which Judge Fallon has repeatedly invoked. The FAC's attempt to preserve the secrecy of its deliberations stands in conflict with the court's directive. Moreover, the minutes were requested after Mr. Birchfield disclosed that yet another secret side deal, this one in the range of $20,000,000-$25,000,000, was struck with yet another group of claimants. You will recall that the FAC initially– and vehemently– claimed that it had made no side deals. There is ample reason to inquire into the FAC's process, and nothing to justify its concealment. The ruling that the minutes should be produced by Tuesday was correct and does not warrant review.

Mr. Patrick Juneau
April 21, 2011
Page 4


       Thanking you for your consideration, I am,


                                       Respectfully,


                                       S/ MEW


                                       Margaret E. Woodward


cc via e-mail:

Russ Herman, Esq.

Andy Birchfield, Esq.

Christopher Seeger, Esq.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **IN RE: VIOXX** | : | **MDL NO. 1657** |
| **PRODUCTS LIABILITY** | : | **SECTION: L** |
| **LITIGATION** | | |
| | : | **JUDGE FALLON** |
| | : | **MAG. JUDGE KNOWLES** |

## RULING OF SPECIAL MASTER

At the deposition on May 2, 2011 of Andy Birchfield of the Fee Allocation Committee (FAC), counsel for some of objections, Margaret Woodward, requested that the FAC produce the minutes of the FAC meetings.  Pursuant to that request, I ordered that the FAC produce the minutes by May 10, 2011.  Subsequent to the completion of the deposition, I received a letter memorandum dated May 8, 2011 from Russ Herman, Chairman of the Fee Allocation Committee, objecting to the production for the reasons stated in the letter.  I also received a letter memorandum from Margaret Woodward dated April 21, 2011 (error in date) objecting to the position of the FAC for the reasons stated.  Copies of both letters are attached as Exhibits 1 and 2.

After considering the positions of the parties, it is the ruling of the Special Master that the Report and Scheduling Order of the Special Master dated March 31, 2011 is controlling and the request for production of the FAC minutes is denied.  Additionally, the recommendations of the FAC have been produced and those recommendations reflect the decisions of the FAC.  The deliberations should not be subject to discovery.

The other issue that was presented at the hearing on May 9, 2011 was a request by the objectors to the FAC committee to produce the recommended allocations for those objectors who

EXHIBIT 4

had filed an objection, and who had agreed to withdraw their objection.  The initial impression of the Special Master was that this request should be denied unless the requesting party obtain the consent of those objectors who had withdrawn their objection.      On reflection and reconsideration, the Special Master is of the opinion that since the allocations are recommendations that will have to be made to the court, the objectors are entitled to this information.  Accordingly, it is the ruling of the Special Master that the FAC is to provide the recommended allocations on those objectors who have withdrawn their objections to the present objectors by 9:00 a.m. on May 10, 2011.

New Orleans, Louisiana, this the 9th May, 2011

/s/ PATRICK A. JUNEAU
PATRICK A. JUNEAU, Bar # 07594
Special Master
1018 Harding Street, Suite 202
Lafayette, LA 70503
Telephone: (337) 269-0052
Facsimile: (337) 269-0061
Email: paj@juneaudavid.com

## CERTIFICATE OF SERVICE

I hereby certify that, on May 9, 2011, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all known counsel of record who are participants. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the following non-CM/ECF participants:

Russ M. Herman
Herman, Herman, Katz & Cotlar
820 O'Keefe Avenue
New Orleans, LA   70113

Jack Urquhart
Beirne, Maynard & Parson, L.L.P.
1300 Post Oak Blvd., Suite 2500
Houston, TX 77056

Margaret E. Woodward
Attorney at Law
3701 Canal Street, Suite C
New Orleans, LA 70119

Henry King
King, Krebs & Jurgens, PLLC
45th Floor, 201 St. Charles Ave.
New Orleans, LA 70170

David Hockema
Hockema & Longoria, LLP
600 E. Nolana Ave.
McAllen, TX 78504

Lafayette, Louisiana, this 9th day of May, 2011.

/s/ PATRICK A. JUNEAU
PATRICK A. JUNEAU
Special Master
1018 Harding Street, Suite 202
Lafayette, LA 70503
Telephone: (337) 269-0052
Facsimile: (337) 269-0061
Email: paj@juneaudavid.com

**HERMAN HERMAN**
**KATZ & COTLAR**
—— L.L.P. ——
ATTORNEYS AT LAW
Est. 1942

820 O'Keefe Avenue,
New Orleans, Louisiana
70113-1116

p: (504) 581-4892
F: (504) 561-6024
e: info@hhkc.com

hhkc.com

Harry Herman (1914-1987)
Russ M. Herman*
Maury A. Herman*
Morton H. Katz*
Sidney A. Collar*
Steven J. Lane
Leonard A. Davis*
James C. Klick†
Stephen J. Herman
Brian D. Katz

Soren E. Gisleson
Joseph E. Cain

Jennifer J. Greene‡
John S. Creevy
Jeremy S. Epstein†
Aaron Z. Ahlquist
Craig M. Robinson
Joseph A. Kott, M.D.,
J.D. (Of Counsel)

Offices in New Orleans and
Covington, Louisiana

This Firm and its Partners Are Also
Partners in Herman Gerel, LLP (Formerly
Herman, Mathis, Casey, Kitchens & Gerel, LLP)

* A Professional Law Corporation
† Also Admitted in Texas
‡ Also Admitted in Arkansas

May 8, 2011

Special Master Pat Juneau                          *Via E-Mail*
1018 Harding Street, Suite 202
P.O. Drawer 51268
Lafayette, LA 70505-1268

Dear Special Master Juneau:

On Friday, Objectors were afforded the opportunity to depose Andy Birchfield not for the 7 hours as provided by the Federal Rules of Civil Procedure, but for 8 ½ hours. At the conclusion of the deposition at approximately 6:30 p.m., after a very long day, Objectors renewed their request for the discovery of minutes of Fee Allocation Committee meetings. You granted their request. The Fee Allocation Committee urges you to reconsider.

In your order of March 31, 2011, you noted the extent of the discovery that had already taken place in this proceeding and in particular, the expansive materials that had previously been produced. In light of the discovery that had already taken place, you granted Objectors' request to depose a member of the Fee Allocation Committee, but in all other respects denied further discovery, including Objectors' request for production of minutes of Fee Allocation Committee meetings. Objectors appealed, challenging the limitation on discovery among other things. On April 21, 2011, the Court affirmed the Special Master's order and denied the appeal. Specifically, the Court noted that the Special Master in his order had achieved the "appropriate balance between permitting the Objectors reasonable discovery and preventing this fee dispute from ballooning unnecessarily." See Court's Order of April 21, 2011, at 2.

The minutes of meetings of the Court-appointed Fee Allocation Committee ("FAC") memorialize their internal deliberations and analyses conducted prior to reaching recommended fee award allocations in this litigation. Said minutes were intended to be confidential and constitute privileged attorney work product entitled to an order of protection. See, e.g., In re Adelphia Communications, Corp.; 348 B.R. 99, 109-10 (S.D.N.Y. Bankr. 2006) (ruling that "care must be taken to protect [court-appointed fee committee's] legitimate rights to the protection of work product, attorney mental impressions, and the attorney-client privilege"). Courts have recognized that "much of the work of any fee committee may have most, if not all, of the trappings of work product," and "courts should be wary of efforts to use discovery from fee committees as a tactical measure, or to go 'tit for tat.'" Id. at 110.

EXHIBIT
1
tabbies®

The Court has affirmed that you have achieved the proper balance in regard to discovery. The Fee Allocation Committee urges you not to upset that balance at this late date.

Sincerely,

RUSS M. HERMAN
Chairman, Vioxx Fee Allocation Committee

RMH/rw

cc:     Robert Arcenaux
        Margaret Woodward
        Pascal Calogero, Jr.
        Fee Allocation Committee

MARGARET E. WOODWARD
3701 Canal Street, Suite C
New Orleans, Louisiana 70119
(504) 301-4333 office
(504) 301-4365 fax
mewno@aol.com


April 21, 2011


VIA E-MAIL

Patrick A. Juneau
JUNEAU DAVID, APLC
Post Office Drawer 51268
Lafayette, LA 70505-1268

     Re:   *In re Vioxx Products Liability Litigation*, MDL 1657

Dear Special Master Juneau:

     This court ruled on Friday evening that we were entitled to production of the FAC's minutes. Mr. Herman wrote this evening urging that you reconsider that ruling to beat back the specter of a mini-trial and to protest attorney work product. Neither objection is valid.

In accordance with your Scheduling Order, the hearing commences tomorrow and will conclude on Friday. Providing access to relevant documents will not expand the length or scope of the proceeding, or convert it into the dreaded mini-trial.

The work product exception has no application to the requested documents. As the Fifth Circuit has observed, not every document prepared by a lawyer is attorney work product. *Kent Corporation v. NLRB*, 530 F. 2d 612, 623 (5th Cir. 1976). The work product document was developed by the United States Supreme Court in *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), to protect against unwarranted intrusion into the private processes by which he *prepares a case for litigation:*

> Historically, a lawyer is an officer of the court and is bound to work for the advancement of justice while faithfully protecting the rightful interests of his clients. In performing his various duties, however, it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests. This work is reflected, of course, in interviews, statements,



EXHIBIT
2

Mr. Patrick Juneau
April 21, 2011
Page 2

memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways—aptly though roughly termed by the Circuit Court of Appeals in this case, 153 F.2d 212, 223, the 'Work product of the lawyer.' Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served.

Soon after *Hickman* announced this doctrine, FRCP 26 (b)(3) was amended to provide that "[o]rdinarily. . . documents. . . prepared *in anticipation of litigation or for trial by or for another party"* are not discoverable. (Emphasis supplied.)

Mr. Herman's invocation of the doctrine fails on both counts. The FAC's minutes were not "prepared in anticipation of litigation or for trial." Instead, they recorded the FAC's operations under the court's charge to prepare a recommended allocation of fees. Correlatively, the FAC was not representing another party; it was acting solely pursuant to its charge from the court, and doing work *for the court.* The Objectors are now seeking that information so that they (and the court) may evaluate whether the FAC fairly and adequately adhered to their charge.

Perhaps because the Rule and Supreme Court precedent so clearly do not apply, the FAC has reached to a bankruptcy decision from the Southern District of New York to argue that its minutes are protected. The cited case, although it contains the words "fee committee," "work product," and "immunity" has no other commonality with the FAC's argument here, because the court neither considered nor decided any issue related to work product doctrine. In *In re Adelphia Communications, Corp.*, 348 B.R. 99 (NY. 2006), a bankruptcy fee committee had been granted the following status and immunity:

The Fee Committee and each member thereof are hereby appointed officers of the Court with respect to the performance of their duties on the Fee Committee and provided the maximum immunity permitted by law from civil actions for all acts taken or omitted in the performance of their duties and powers on the Fee Committee.

The Fee committee was composed of the debtor, creditor's representatives, and the trustee, who were charged with trying to ensure that fees that were being charged the debtor for professional services were within reason. When one of those vendors of services sought discovery of information relating

Mr. Patrick Juneau
April 21, 2011
Page 3

to how the Fee Committee had considered its request to be paid, the Court entered the following rulings:

> (1) The "maximum immunity permitted by law from civil actions" that was afforded to the Fee Committee under the Protocol—and separately, the nature of a fee committee's appointment and responsibilities—provides immunity from suit. But neither additionally provides immunity from otherwise proper discovery requests;

> (2) I do not need to decide whether the Fee Committee is a "party" to the contested matter, because the Fee Committee would be subject to otherwise appropriate discovery requests whether or not it is a party;

> (3) *Matters as to the applicability of other potential discovery exceptions—work product, attorney mental impressions and attorney-client privilege—are not yet ripe for decision.* Determinations as to such matters should await other events, efforts to get the information from other sources, and more extensive factual presentations.

> For these reasons, I am determining that while discovery of the Fee Committee is not prohibited as a matter of law, it should await the filing of an objection to the BSF fee application (by the Fee Committee or anyone else), and should await resort to other sources from which the relevant information might be obtained.

348 B.R. at 102 (emphasis supplied). This immunity decision, of course, has no bearing upon the issue presented.

Because the FAC did not prepare its minutes in anticipation of litigation nor in the representation of a party whose case was headed toward litigation, the claim of "work product" cannot stand.

The applicable principle here is transparency, which Judge Fallon has repeatedly invoked. The FAC's attempt to preserve the secrecy of its deliberations stands in conflict with the court's directive. Moreover, the minutes were requested after Mr. Birchfield disclosed that yet another secret side deal, this one in the range of $20,000,000-$25,000,000, was struck with yet another group of claimants. You will recall that the FAC initially– and vehemently– claimed that it had made no side deals. There is ample reason to inquire into the FAC's process, and nothing to justify its concealment. The ruling that the minutes should be produced by Tuesday was correct and does not warrant review.

Mr. Patrick Juneau
April 21, 2011
Page 4

Thanking you for your consideration, I am,

Respectfully,

S/ MEW

Margaret E. Woodward

cc via e-mail:
Russ Herman, Esq.
Andy Birchfield, Esq.
Christopher Seeger, Esq.

| FIRM | PAID CLAIMS | FEES PAID BY CONTRACT CLIENTS |
|---|---|---|
| Kline & Specter, PC | 605 | $ 27,888,303.86 |
| Anapol Schwartz, Weiss, Cohyan, Feldman & Smalley, PC | 712 | $ 28,546,122.56 |
| Escobedo Tippet | 3 | $ 23,337.43 |
| Snapka, Turman & Waterhouse, LLP | 57 | $ 2,695,457.09 |
| Branch Law Firm | 982 | $ 28,150,395.53 |
| Cohen, Placitella & Roth, PC | 217 | $ 7,544,953.55 |
| Weinberg, Eric H., Law Firm of | 231 | $ 10,230,418.91 |
| Becnel Law Firm, LLC | 144 | $ 3,536,195.16 |
| Murray Law Firm | 55 | $ 1,390,641.95 |

EXHIBIT 5

# Joey Markowitz

Joey.Markowitz@gmail.com                          (518) 339-3242                          New York, NY 10036

**SKILLS/TECHNOLOGY**
- **SKILLS**: Data Mining, Database Analysis and Management, Machine Learning, Statistics, Probability, Finance, Analytics, Management
- **LANGUAGES**: Python, SQL, VBA, AJAX, JavaScript, XML, C, C++, XSLT, XPath, MDX, Perl, PHP
- **SOFTWARE**: Visual Studio, Excel 2000-2007, R, Bloomberg, Apache, Matlab, IIS, Reuters, Maple
- **DATABASES**: MS SQL Server & Analytics Server 2000-2008, PostgresSQL, MySQL
- **PLATFORMS**: Windows, Gentoo Linux, Unix, Mac OS

**EDUCATION**

### Rensselaer Polytechnic Institute, Troy, NY                          1999-2003
B.S. Computer & Systems Engineering          (Minor in Computer Science)
Awarded entry into *The National Dean's List* publication of distinguished students, Rensselaer Polytechnic Institute
- **Machine Learning:** Unsupervised, supervised, and reinforced learning. Developed Neural Network models, analyzed implementation constraints, and optimization opportunities.
- **Data Mining:** Classification, clustering, association discovery, and sequence mining. Implemented CloSpan, sequential pattern mining algorithm.
- **Robotic Algorithms:** Uncertainty modeling, localization and environment mapping. Implemented algorithms for motion planning, probabilistic sonar mapping, and object avoidance.
- **Computer Vision:** Edge detection, stereopsis, and segmentation. Demonstrated and compared algorithms in Matlab.

**EXPERIENCE**

### Risk Resources LLC, Lead Engineer / Principle Project Manager, New York, NY          2009-2010
*Provides customized risk management advisory and reporting services for over $32 Billion in assets*
- **Analytics System:** Designed and built end-to-end reporting analytics solution integrating Bloomberg, security master, Advent Geneva, Excel, and Matlab/R/Python into a scalable customizable platform.
- **Principal Project Lead:** Managed client relations, development, and strategy for largest client with over $800 Million of mixed financial instruments. Responsible for client relations, automation, quality control, feature enhancements as well as improving data integration with various banks.
- **Strategy:** Created long-term technical vision and strategy focused on leveraging technology to reduce reporting time, simplify management, automate data processing, and streamline manual tasks.

### Home Teams Online, Consultant, New York, NY                          2008-2009
*Provides template-based professional sports websites featuring rosters, schedules, statistics and photos*
- **SQL Training:** Responsible for teaching advanced use of SQL and SQL server tools for query optimization and improving general coding practices.
- **Algorithm Tuning:** Reviewed core algorithm implementations and worked closely with senior developer to improve performance and scaling restrictions.
- **BCP:** Improved information retention and workflow by establishing a MediaWiki documentation repository. Created semantic tagging and dynamic pages to facilitate self documentation.

### Bridgewater Associates, Data Analyst / Software Developer, Westport, CT          2004-2008
*Over $260 Billion in assets under management, about $10 Billion in a multi-strategy hedge fund*
- **Market Data System:** Responsible for data collection automation, statistical quality checks, configuration and setup of all data feeds used in daily trade generation.
- **Dashboard:** Created quantitative analytics to identify problematic areas, systematically prioritize improvements, and manage development initiatives resulting in a 600% increase in capacity.
- **Management:** Lead development and operational execution of trade generation QA system. Tasked senior developers with system improvements, developed documentation and training material.
- **Continuing Education:** Macro/Micro market mechanics, linkages and instrument mathematics including equities, options, bonds, currency forwards, spot FX, inflation linked bonds

```
EXHIBIT 6
```