**RICHARD J. ARSENAULT**
**VIOXX MDL 1657 COMMON BENEFIT FUND AFFIDAVIT**

BEFORE ME, the undersigned Notary Public, personally came and appeared **RICHARD J. ARSENAULT**, who, being first duly sworn, did depose and state, based on his personal knowledge:

1. In compliance with PTO Nos. 6 and 6(C), my common benefit time and expenses have been appropriately submitted and currently exceed 300 pages. They describe, with specificity and particularity, a variety of efforts which produced common benefit for this litigation.

2. I was appointed to the Plaintiffs' Steering Committee (PSC)[1] and served on the Administrative Committee, Privilege Log Team, Vice-Chair of the Discovery Committee, Sales & Marketing Committee and Liaison to the Federal/State Committee. Most recently, I agreed to serve on a committee designed to help assist curing deficient claims in the Settlement Program.

3. An integral consideration in the attorney fee allocation process is counsel's qualifications, experience and reputation.[2] A summary of my Curriculum Vitae is attached as **Exhibit A** and the qualifications of others included in this submission are attached, in globo, as **Exhibit B**.

4. Obviously, it is difficult to summarize in three pages common benefit time submissions that occupy over 300 pages and that describe activities over 3 ½ years. As such, I simply note illustrative examples that provide an overview of my role and contribution to the common benefit effort:

    **Privilege Log Team** – At the inception of the MDL, we were advised that the ongoing state court proceedings had not had an opportunity to aggressively explore the defense privilege logs and we sensed that efforts in this area could be an important and fertile source of discovery. Consequently, I worked as a member of the Privilege Log Team and argued the initial motion in Houston when Judge Fallon was holding court there. I traveled to New York pursuant to Russ Herman's request for a "meet and confer" with defense counsel, prepared various reports to the Discovery Committee regarding the privilege log status, compared privilege log descriptions with what the case law required, conducted research regarding inadvertent disclosures of privilege materials, prepared for telephone hearings before Judge Fallon on this issue and worked on various pleadings and briefs associated with what we alleged to be Merck's many improperly claimed privileges.

    **Insurance Coverage Issues** – Early on, we knew that Merck's insurers had denied coverage and we worked hard to discover the basis of those denials in the hope that those would provide support for our case. I helped conduct research, prepare pleadings, discovery and briefs associated with this project which included issues associated with arbitration proceedings in London and reported to the PSC regarding same.

    **Discovery/Depositions** – I prepared for and participated in Discovery Committee meetings and conference

---

[1] Although my appointment to the PSC took place in 2005, my direct involvement with this litigation began well before any MDL proceedings were initiated. I made a variety of presentations, beginning in November 2004 in Pasadena, California. In December 2004, I was part of a panel presentation with Chris Seeger and Andy Birchfield in Washington, D.C. In January 2005, I made a presentation in Palm Springs, California at the Vioxx Litigation Group Symposium with Chris Seeger and other members of the ATLA Vioxx Litigation Group. Lawyers with my firm reviewed documents at Chris Seeger's office in New York and Andy Birchfield's office in Alabama prior to the formation of the MDL. Our lawyers also assisted in outlining depositions and preparing deposition strategy notebooks. I participated in and helped organize a number of Vioxx plaintiff counsel meetings in venues across the country designed to facilitate consensus for leadership roles, coordinate MDL venue selection arguments, consider organizational structure and promote a coordinated litigation effort.

[2] *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d. 714, 717-719 (5th Cir. 1974).

Exhibit J

calls with defense counsel. I reviewed and edited plaintiffs' first set of interrogatories, and worked on the initial proposed Case Management Orders. I was assigned to take sales representative depositions. In order to prepare, I reviewed various marketing related depositions, including those of Jo Jerman and Tom Cannell and the associated documents. I reviewed the custodial file for Jan Nissen (who I deposed) as well as notebooks containing outlines of sales representative depositions, trial clips from previous depositions, hot documents and personnel files. I reviewed three binders containing the proposed excerpts to be used at the trial depositions of Peter Kim, Raymond Gilmartin, and Edward Scolnick and prepared for and participated in conference calls and worked on the organizational protocol for reviewing custodial files associated with depositions. I also reviewed depositions of defense experts in preparation for upcoming depositions. I prepared for and attended the depositions of Diaz, Marilyn Krake and Alan Nies. I helped prepare for the deposition of Thomas Bold. I also prepared for and assisted with the deposition of regional sales representative, Liz Sutherlin.

**Trial/Case Selection** – Russ Herman requested that Gerry Meunier and I provide trial support in Houston for the Irvin trial. Pursuant to that request, we provided support to the Beasley firm throughout the trial. (See e-mail dated November 18, 2005 attached as **Exhibit C**). I was assigned by Andy Birchfield to work on securing all motions in limine from the Ernst trial and to summarize the motions, responses and rulings and prepare similar motions and responses for the Irvin trial. I worked on research regarding learned intermediary. I participated in reviewing the prima facie case before the plaintiffs rested. I assisted with expert qualification issues, worked on the jury charges and verdict form, conferred with trial team members regarding closing strategy and reported to PSC members. I reviewed and graded jury questionnaires. I helped with the jury selection process and provided assistance, including research regarding bifurcation issues, sequestration issues and punitive damages. I conducted research regarding Daubert issues, Rule 702 expert issues and worked on a proffer associated with a physician whose testimony was limited. I worked with the Trial Team regarding rebuttal issues and conducted research regarding the court's discretion on this issue. I conducted research associated with post verdict and post judgment dynamics as well as research regarding mistrial versus new trial. I participated in subsequent case selection meetings and reviewed medical records for cases provided as candidates for upcoming trials. I attended meetings with Russ Herman regarding the selection of additional trial cases.

**Research** – I conducted research regarding Louisiana Class Action provisions (procedural versus substantive issues); the discretion an MDL Judge has regarding class certification motions; Daubert issues; Rule 702 expert issues; whether Louisiana recognizes tolling agreements and the associated emergency powers clause of the Constitution and issues related to which branch of government, i.e. Executive, Legislative and/or Judicial has authority to extend the statute of limitations under emergency circumstances; ethics in Louisiana regarding contacting former employees; LPLA and alternative design issues; the Pipitone decision and the availability of differential diagnosis to survive case specific causal connection attacks; Louisiana Direct Action Statute and associated discovery options; alternative design issue; privilege issues; learned intermediary; and the law regarding ex part communications with treating physicians (edited motion and supporting memorandum; worked on memorandum in support of motion to modify the June 6, 2005 order).

**Science Committee Work** – I prepared for and attended Science Committee meetings; helped prepare for Daubert hearing; helped research, draft, and edit the related motion and memorandum in support.

**Stroke Committee Work** – I prepared for and attended conference calls and meetings regarding stroke trial candidates; helped draft and edit stroke screening form; worked on mandatory criteria list and questionnaire form for stroke trial candidates.

**Sales & Marketing Committee** – I helped develop deposition outlines, participated in a key meeting in Las Vegas and reviewed general sales representative relevance backgrounder in anticipation of and preparation for depositions I would later be assigned.

Exhibit J

**Assessment** – I worked on a proposed order, supporting memoranda and agreement exhibits and prepared for and participated in telephone conferences and meeting with Judge Fallon regarding assessment issues.

**PSC Liaison to Federal/State Committee** – Helped the PSC interface with the Fed/State Committee; assisted in preparing informational newsletters.

**PSC Member** – I did whatever I was asked to do and made myself, along with my firm's resources, available to the PSC. I met the various financial obligations. Court appointed PSC members must necessarily understand and be familiar with the litigation, in part, so they are prepared to complete assignments when called upon to do so or, for example, be prepared to vote on matters when the need arises. As such, they must obviously review all the materials they are sent; of course, being mindful to appropriately focus in more detail on items which directly involve tasks to which they are assigned or for which they are otherwise responsible. Everything needs at least some reasonable review. I complied with this obligation.

5. In addition to my common benefit efforts, other members of my law firm provided common benefit services as described in our regular monthly submissions. These partner-level lawyers helped prepare the documents and exhibits for the depositions of Jan Nissen and Liz Sutherlin; assisted with the aforementioned research assignments; reviewed documents in preparation for depositions of Merck employees and former employees; conducted document review and coding in Montgomery, Alabama and the MDL depository in New Orleans, Louisiana; were involved in discussions with experts concerning Merck's London arbitrations; helped with the Memorandum in Opposition to Merck's challenge to Plaintiffs' Ex Parte Communication with Treating Physicians, prepared a position paper for an ATLA Vioxx Mock Trial, reviewed non-party document production, reviewed and analyzed privilege logs to determine objections; and helped prepare Vioxx stroke candidate screening form and trial candidates risk factor analysis form.

6. In addition to the above described common efforts, and in response to specific and repeated PSC requests for assistance at various document depositories, we made arrangements for 6 contract lawyers to become involved in that process. They provided valuable services at a time when they were sorely needed. We understand that the compensation for these contract lawyers will be treated differently than associates or partners. We therefore ask that in whatever allocation is made, that there be a specific and segregated monetary allocation for the contract attorney time. The reason for this is that the funding for these contract lawyers was shared with other lawyers involved in the Vioxx litigation that have an interest in this specific portion of any common benefit award. Additionally, as required by PTO 6(D), we take this opportunity to disclose the monthly compensation rate for these contract attorneys: M. Parker (4-yr lawyer) $3,000, M. Lorenz (4-yr lawyer) $3,000, M. Breinin (12-yr lawyer) $3,333.33, H. Lamarche (4-yr lawyer) $3,000, W. Percy (26-yr lawyer) $3,750, and D. Sanderson (4-yr lawyer) $3,333.33.

7. I have attached a common benefit time summary associated with this submission. See chart attached as **Exhibit D**.

SWORN TO AND SUBSCRIBED before me, Notary, this

the 31st day of October, 2008, in Alexandria, Louisiana.

_____  
NOTARY PUBLIC

_____  
RICHARD J. ARSENAULT

Exhibit J