UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: VIOXX | MDL Docket No. 1657 |
| PRODUCTS LIABILITY LITIGATION | |
| | SECTION L |
| This document relates to ALL ACTIONS | JUDGE FALLON |
| FILER: Escobedo, Tippit & Cardenas, L.L.P./Hockema & Longoria, LLP | MAG. JUDGE KNOWLES SPECIAL MASTER - PATRICK A. JUNEAU |
| May 29, 2011 | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

## POST HEARING MEMORANDUM OF ESCOBEDO, TIPPIT, & CARDENAS, CLAIMANT OBJECTOR

MAY IT PLEASE THE COURT:

Common benefit fee claimant Escobedo, Tippit & Cardenas, L.L.P. ("ETC") would show the court that the recommendation of the FAC as to ETC is without basis in law and fact. Ignoring the clear directives of the Court, the FAC erroneously seeks to deny compensation to lawyers who developed, filed, prosecuted and won a significant bellwether case.

I.      GARZA WAS A SIGNIFICANT BELLWETHER TRIAL

The testimony of Joe Escobedo, Andy Birchfield's deposition testimony for the FAC and the numerous exhibits introduced before Special Master Juneau establish clearly the quality and quantity of the contribution of *Garza* case to the common benefit.

Prior to its final recommendation of $0 for E.T.C., members of the Fee Allocation Committee had recognized the value of the *Garza* case to the common benefit. In the January

19, 2009 Affidavit of Russ M. Hermann in Support of the Plaintiffs Liaison Counsel's Memorandum in Support of Motion for Award of Plaintiffs Common Benefit Counsel Fees and Reimbursement of Expenses, Mr. Herman referred to the *Garza* $32 million verdict as substantial. Mr. Herman swore to this Court that the *Ernst* and *Garza* verdicts helped to establish that liability could be obtained despite Merck's formidable defenses. According to Mr. Herman's sworn affidavit, "All of these state litigations generated significant discovery, expert development, document production, and motion practice which directly contributed to the global resolution of this case." *See Affidavit of Russ M. Herman at 8.*

Further, Mr. Herman referred to the fact that there were literally thousands of oral and written ruling on issues in this MDL. Mr. Herman decided to refer to 51 opinions that he deemed substantial; one of these opinions was the November 23, 2005 order and reasons granting motion to remand in *Felicia Garza, et. al. v. Michael D. Evans, M.D., et. al. See Affidavit of Russ M. Herman at 18-21.* In our presentation before the Committee, Mr. Herman commented on the remand motion and stated it was important that we were tenacious in getting this case sent back. *See Presentation of Escobedo, Tippit & Cardenas, L.L.P. at page 7.* Further, Mr. Herman admitted that the FAC fully supported the remand. *Id.* This has been corroborated by Andy Birchfield. See deposition of Andy Birchfield at 17-18.

Lastly, in his sworn affidavit, Mr. Herman referred to the *Garza* trial as one of the sixteen bellwether trials. *See Affidavit of Russ M. Herman at 28-31.* It should be noted that of the sixteen bellwether trials, the *Garza* trial was one of only five that resulted in a verdict for the Plaintiffs. As further shown by testimony of Andy Birchfield testimony, he shared Mr. Herman's opinion:

> Q. The result in *Ernst* and *Garza* were both quoted in an affidavit by Mr. Herman in connection with the application for common benefit fees,

>
> correct?
>
> A.   Yes

See deposition of Andy Birchfield at page 20.

> Q.   Okay. And would you agree with me that while, as Judge Fallon says, trials are important in driving the MDL, that winning trials are more important that just trials?
>
> A.   I think that winning trials are more important than - - than losing trials. I also think that there is tremendous value in - - in stepping up to the plate and trying cases, whether - - whether you win or lose. I think that - - that trying a case that presents challenges, even if you lose, has - - has considerable benefit in a mass tort litigation.
>
> Q.   Okay. Trying cases, especially if you win, has considerable benefit in a mass tort litigation, correct?
>
> A.   Yes.

*Id.* at 39-40.

Judge Fallon, in his Monthly Status Conference Proceedings and Motions Dated January 6, 2011, confirmed the importance of trials:

> All of us in this room have done trial work before and we all know that a key part, the most significant is trials. If you participated in a trial, that is a big item; settlement is a big item; organization perhaps is an item; depositions is important; motions are important; briefing is important; client contact is important; all of those things are important, but there are priorities. And so once you get four or five or six of these categories, then you try to prioritize them and you assign numbers. For them; for example, trials, in my opinion, are probably the most significant, trials and settlement, that brings a case to conclusion.

*Id.* at pages 15-16.

As this Court further noted,

> 3. Determining reasonable fees in the context of the Vioxx global settlement. As an initial matter, the Court notes that this is essentially a products liability case, and all products liability cases pose significant challenges to plaintiffs' counsel. The risk of loss for plaintiffs' counsel in these cases is considerable. In addition, the basic challenges inherent in any products liability case were compounded in this case by a host of complex legal issues *617 unique to the instant litigation,

including (to name only a few) the learned intermediary doctrine, contributory negligence, causation, federal preemption laws, and Merck's assertion of attorney-client privilege with respect to thousands of documents in its possession. The risks associated with pursuing these cases became even more daunting in light of the verdicts returned by juries in this Court's bellwether trials-only one of the six trials resulted in a verdict for the plaintiff.

In Re: VIOXX PRODUCTS LIABILITY LITIGATION NO. MDL 1657, Order and Reasons (October 19, 2010).

II.    <u>PRE-TRIAL ORDER NO. 6(d)</u>

Pursuant to the following factors listed by the Court in Pretrial Order No. 6(D), it is clear that the Committee has vastly undervalued the impact of the *Garza* case.

(A)   Activities surrounding trials of individual Vioxx claimants, including bellwether trials and non-MDL trials that impacted proceedings on a common benefit level;

(B)   Whether counsel was already involved in the Vioxx litigation prior to the withdrawal of Vioxx from the market on September 30, 2004;

(C)   Whether counsel was involved in the Vioxx litigation prior to the JPMDL, and the time and expense incurred during such time that was for the common benefit; and

(D)   Whether counsel made significant contributions to the funding of the litigation.

A.    EARLY INVOLVEMENT IN THE VIOXX LITIGATION.

The *Garza* case clearly made a substantial contribution to the outcome of this litigation. A substantial portion of the smoking gun documents that received media attention had been used by Joe Escobedo in the depositions of the Merck Corporate Representative that were taken prior to the drug being taken off the market and prior to the formation of the MDL. *See Deposition of A. Birchfield, FAC Representaitve.* As shown by the uncontroverted testimony of Joe Escobedo, the Firm, was able to prosecute the case against an army of defense lawyers by having all the firm's lawyers commit themselves to the case and trial. E.T.C was clearly already involved in

the Vioxx litigation prior to the withdrawal of Vioxx from the market on September 30, 2004. Similarly, E.T.C. was clearly involved in the Vioxx litigation prior to the JPMDL and incurred substantial time and expense during such time that was for the common benefit.

*Garza* was "trial ready" before the MDL and removal of Vioxx from the market. During an appeal from the trial court's ruling in *Garza,* the San Antonio Court of Appeals noted the following:

> "The underlying lawsuit is a products liability case where Plaintiffs allege that Leonel Garza, Sr., suffered a heart attack and died as a result of ingesting the prescription medication VIOXX, which is manufactured and distributed by Merck. **Apparently, significant discovery has already occurred in the underlying case, and we commend all the parties on the professional and courteous manner in which they have handled the discovery requests and challenges.** Because of the parties' agreements limiting the scope of the disputed discovery, the focus of this mandamus proceeding is narrowed to two orders signed by the trial court on May 20, 2004."

In Re: Merck, Inc., 150 S.W.3rd 747, 749 (Tex. App. – San Antonio, 2004).

This Court's opinion remanding the *Garza* case for trial further documents the early extensive involvement of Escobedo, Tippit, & Cardenas, L.L.P.:

> As an MDL Court, this Court has been charged with the task of presiding over thousands of cases involving hundreds of thousands of litigants. To promote the just and efficient conduct of these actions, the Court has previously indicated that it would deal with remand motions as a group in accordance with procedures to be determined at a future date. The Court is still committed to this plan. **The facts of the present case, however, were so exceptional that they justified the Court's taking earlier action. Merck's conduct in postponing the trial of this action can be classified as peculiar, at best.** Regardless of the classification, the facts of the present case, unlike those of other cases pending before the Court, necessitate that the Court take action.

2005 WL 352885, In re: VIOXX PRODUCTS LIAILITY LITIGATION No. MDL 1657. Nov. 23, 2005.

III. <u>E.T.C. LODESTAR AMOUNT WITH THE JOHNSON FACTORS</u>

E.T.C. submitted 14,886.75 hours in common benefit work. These hours were audited by Mr. Garrett and accepted by the FAC and this Court in determining the total amount of the common benefit fund. As detailed herein, the application of the *Johnson* factors justify this amount. *See Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974). The evidence on the relevant *Johnson* factors as they relate to E.T.C. is as follows:

- (A) <u>The time and labor required</u>. The time and labor, as detailed in Paragraph 3 and 4 above, required in prosecuting the *Garza* case were substantial;

- (B) <u>The novelty and difficulty of the questions</u>. The novelty and difficulty of the issues cannot be disputed. As detailed above, E.T.C. began prosecuting the *Garza* case years before the withdrawal of the drug from the market and the formation of this MDL;

- (C) <u>The skill requisite to perform the legal service properly</u>. The skill required to perform the legal service properly was very high as indicated by the quality of lawyers involved in this litigation;

- (D) <u>The preclusion of other employment by the attorney due to acceptance of the case</u>. There is substantial evidence in this objection and E.T.C.'s affidavit and testimony to support the preclusion of other employment by the the firm due to acceptance of the case;

- (E) <u>The amount involved and the results obtained</u>. As detailed above, E.T.C. was responsible for all the funding of the *Garza* case and the results obtained were excellent;

- (F) <u>The experience, reputation and ability of the attorneys</u>. E.T.C.'s lawyers have extensive experience in products liability litigation. This verdict was one of numerous verdicts obtained by the firm's lawyers in excess of $10 million; and

- (G) <u>The 'undesirability" of the case</u>. At the time E.T.C. began working on the *Garza* case, very few lawyers across the country were willing to take a Vioxx case against Merck.

ETC has 14,000+ hours expended in developing and trying the *Garza* case. See E.T.C.'s Exhibits 18 and 19. The rates assigned were not suggested by E.T.C. In fact, the testimony of Joe Escobedo is that he was told NOT to submit rates for his lawyers and staff. As a result,

E.T.C. was assigned rates, some of which are much lower than the rates that the FAC members assigned to themselves. Even at the rates assigned, however, a fee of over $6 million is warranted. With correct assignment of "points" or "multipliers" "percentages" or whatever blended methodology can be applied, a minimum fair and equitable fee for ETC would be $9 million under this methodology.

IV. IN THE ALTERNATIVE, E.T.C. ENTITLED TO CONSIDERABLE COMPENSATON UNDER FAC'S POINT SYSTEM

While E.T.C. agrees with the argument made in Objector's Post-Hearing Memorandum that the FAC's point system is, as a matter of law, unusable in the fee allocation process, E.T.C. would alternatively show that even under the FAC's flawed point systems, it is entitled to considerable compensation.

A. E.T.C. Entitled to Points, For Prosecuting a Winning Bellwether Trial.

Mr. Herman has admitted that the *Garza* trial was a bellwether trial. While E.T.C. disputes that its contribution to the common benefit is limited to maximum points allowed for trials (150 points), there is absolutely no justification by the Committee for the fact that E.T.C. has been awarded **$0** despite being responsible for a bellwether trial with excellent results.

B. E.T.C. Entitled to Additional Points For Participating In the Discovery Committee.

As shown by the testimony of Andy Birchfield, Mr. Escobedo participated in the MDL's Discovery Committee and shared his extensive experience with the MDL.

> Q. Okay. Do you recall that Mr. Escobedo, when he got on the Discovery Committee, had already supplied all of the documents that we had received in three rounds of corporate depositions and requests for productions to Mr. Miceli and to Shelly Sanford and Merck had made an effort to give us all the same documents so they wouldn't be caught with different responses in discovery? You recall that?
>
> A. I mean, it's my understanding that -- I mean, that very -- in those very

> early, early days, you know, of this litigation we had obtained extensive documents, you had obtained extensive documents, Shelly Sanford had obtained extensive documents and we were sharing, we were working, yes.

*See* deposition of Andy Birchfield at pages 10-11.

  C. <u>The *Garza* Transcript and Discovery was Included In the MDL Trial Packet.</u>

E.T.C. should be entitled for points under the "Law and Briefing" category and the "Discovery, Science and Experts" category as a result of its work product being included in the MDL trial package. Mr. Birchfield further admitted that that the *Garza* case materials were included in the MDL trial package. Mr. Birchfield testified as follows:

> Q. Okay. Mr. Birchfield, the trial package that was done eventually, and Mr. Wodward – Miss. Woodward asked some questions about that -- did the trial package contain exhibits and testimony from the Garza case?
>
> A. I think - it I did.

See deposition of Andy Birchfield at page 15.

  D. <u>E.T.C. Entitled to Additional Points for its Leadership in the Organization of Cooperative Plaintiff Lawyer Efforts.</u>

In addition to the prosecution of a bellwether trial, Joe Escobedo was involved in the organization of cooperative efforts among plaintiffs lawyers involved in the Vioxx litigation. Mr. Escobedo spoke at meetings of plaintiff attorneys designed to begin a cooperative effort to pursue Vioxx litigation. Mr. Escobedo spoke at an early meeting of Plaintiffs attorneys in 2004 to discuss his experience in the Vioxx litigation. Mr. Escobedo spoke about Vioxx litigation at the Advanced Personal Injury Seminar in Corpus Christi. Mr. Escobedo further spoke about winning trial strategies in Vioxx litigation at Mealey's Vioxx Litigation Conference in Florida in 2006 and at the AAJ national convention.

V.   FAC'S ARGUMENT THAT E.T.C. CHOSE TO EXCLUDE GARZA FROM THE MSA IS GROUNDLESS.

The FAC's only explanation for its decision to award E.T.C. $0 is its groundless allegation that E.T.C. chose to exclude *Garza* from the MSA. *See* E.T.C. Exhibit 16. This allegation is completely conclusory and it has been disproved by the evidence. In its Response to Objections to Recommended Common Benefit Fee Allocation, the FAC merely states that E.T.C. chose to exclude *Garza* from the MSA without providing any supporting basis for the allegation. In his deposition, Andy Birchfield testified that it was actually Kathy Snapka who asked that the *Garza* trial be excluded from the MSA; Mr. Birchfield testified that while he did not hear the conversation, Mr. Blizzard recounted it to him. *See* deposition of Andy Birchfield at 238-239. After Ms. Snapka produced her phone records at this trial and specifically testified that she made no such request, the FAC failed to produce any testimony to contradict Ms. Snapka. Further, the FAC did not contradict the sworn testimony of Joe Escobedo that no one associated with trying the *Garza* case requested that the *Garza* case be excluded from the MSA.

In the FAC's Post Hearing Brief, the FAC now makes the baseless assertion that E.T.C. chose to exclude the *Garza* case from the MSA during a mediation required by the Court of Appeals. Again, this is not correct. Furthermore, the mediation that the FAC is referring to occurred <u>after</u> the MSA was finalized. Again, the FAC's allegation relating to its only argument to exclude the *Garza* case is completely false and groundless.

E.T.C.'s Exhibit 5 is the part of the MSA that lists the cases that are excluded from the agreement. This exhibit lists other tried cases as excluded as well, but all the trial lawyers in those cases were given credit for the trials in their fee allocation. In his deposition, Mr. Birchfield admits that *Garza* was the only tried Vioxx case in which the trial lawyers were not given fee allocation credit. *Id.*

VI.  CONFLICT OF INTEREST

*Nemo Iudex In Causa Sua*

No Man Should Be A Judge In His Cause

The almost universal maxim prohibiting self interested tribunals from acting in their own self interest has remained undisturbed since Roman law, included in the Magna Carta and our common law. The shocking, unjustified disparity between the amounts awarded by the FAC to its own members and not awarded to the *Garza* trial team begs for correction by an independent tribunal, the Court, pursuant to a recommendation from the special master. Indeed, this situation requiring evaluation by the court independently was cautioned against on p. 60 of *Trends and Problems in the Appointment and Compensation of Common Benefit Counsel in Complex Multi District Litigation* by Carolyn A. Dubay.

## CONCLUSION

If the lawyers who developed and tried *Garza* had been members of a "committee" in addition to being experienced hardworking extremely successful product liability trial lawyers, they would have been rewarded rather then lavishly praised, used shamelessly and conveniently ignored by a FAC blinded by self-interest. Correction by the Court of the obvious inequity in the FAC's recommendation and an award of fees equal to others who have performed the same work for the same benefit is respectfully requested.

Respectfully submitted,

**HOCKEMA & LONGORIA, L.L.P.**
600 E. Nolana, Suite 202
McAllen, Texas 78504
*Mailing address:*
P.O. Box 720540
McAllen, TX 78504-0540
Telephone:    (956) 631-9112
Telecopier:    (956) 630-9472

_____/s/_____
David H. Hockema
State Bar No. 09747500
Federal ID No. 1204

**AND**

**ESCOBEDO, TIPPIT, & CARDENAS, L.L.P.**
3900 N. 10TH St., Ste. 950
McAllen, Texas 78504
Telephone:    (956) 618-3357
Telecopier:    (956) 618-3361

_____/s/_____
Joe Escobedo
State Bar No. 06665850

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Brief has been served on Liaison Counsel, Russ Herman and Phillip Witmann, by U.S. Mail and e-mail or by had delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with PreTrial Order NO. 8(B), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accordance with the procedures established in MDL 1657 on this 27th day of May, 2011.

_____/s/_____
David H. Hockema