1                 UNITED STATES DISTRICT COURT
                 EASTERN DISTRICT OF LOUISIANA
2

3   **************************************************************

4

   IN RE: VIOXX PRODUCTS
5   LIABILITY LITIGATION

6                          MDL DOCKET NO. 1657
                          SECTION L
7                          NEW ORLEANS, LOUISIANA
                          WEDNESDAY, OCTOBER 27, 2010, 9:00 A.M.
8

9   THIS DOCUMENT RELATES TO:

10   BOB STEPHENS, INDIVIDUALLY, AND
    AS THE ADMINISTRATOR FOR THE
11   ESTATE OF JOHNIE STEPHENS,
    DECEASED
12
                       CIVIL ACTION NO:  E.D. LA 06-CV-1678
13   V                                ARE 4-06-CV-0259 WRW

14

   MERCK & CO., INC.
15

16   **************************************************************

17               TRANSCRIPT OF HEARING PROCEEDINGS
         HEARD BEFORE SPECIAL MASTER PATRICK A. JUNEAU
18            AT THE UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF LOUISIANA
19

20   <u>APPEARANCES:</u>

21

22   SPECIAL MASTER:           PATRICK A. JUNEAU
                           THE HARDING CENTER
23                           1018 HARDING ST.
                           SUITE 202
24                           P. O. DRAWER 51268
                           LAFAYETTE, LA 70505
25

EXHIBIT

tabbies

1

```
 1   APPEARANCES CONTINUED:

 2

 3   FOR BOB STEPHENS:         POTTER MINTON
                               BY:  E. GLENN THAMES, JR., ESQUIRE
 4                             110 N. COLLEGE, SUITE 500
                               TYLER TX  75702
 5

 6
     FOR GARY HOLT
 7   & ASSOCIATES, P.A.,
     F/K/A GARY EUBANKS
 8   & ASSOCIATES, P.A.,
     AND GARY L. EUBANKS:      GARY HOLT & ASSOCIATES
 9                             BY:  BREEAN WALAS, ESQUIRE
                                    GARY HOLT, ESQUIRE
10                                  GARY L. EUBANKS, ESQUIRE
                               708 WEST SECOND STREET
11                             LITTLE ROCK AR  72201

12

13   ALSO PRESENT:            BOB STEPHENS

14

15   OFFICIAL COURT REPORTER:    CATHY PEPPER, CCR, RMR, CRR
                                 CERTIFIED REALTIME REPORTER
16                               500 POYDRAS STREET, ROOM B406
                                 NEW ORLEANS, LOUISIANA 70130
17                               (504) 589-7779
                                 Cathy_Pepper@laed.uscourts.gov
18

19   PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY.  TRANSCRIPT
     PRODUCED BY COMPUTER.
20

21

22

23

24

25
```

1

2

## I N D E X

3

SPEAKERS                                                        PAGE

4

5    MR. THAMES.............................................     5

6    MS. WALAS.............................................    13

7    MR. THAMES.............................................    26

8    MS. WALAS.............................................    29

9

10

11

## E X H I B I T S

12

DESCRIPTION                                                     PAGE

13

14   STEPHENS #1...........................................     5

15   EUBANKS #1............................................    13

16   EUBANKS #1A...........................................    17

17   SPECIAL MASTER #1.....................................    32

18   SPECIAL MASTER #2.....................................    32

19

20

21

22

23

24

25

P-R-O-C-E-E-D-I-N-G-S

WEDNESDAY, OCTOBER 27, 2010

M O R N I N G   S E S S I O N

(COURT CALLED TO ORDER)

08:54AM    THE COURT:  On the record, this matter is called for a hearing *In re Vioxx Products Liability* action, MDL Number 1657. This is a scheduled hearing involving a disputed attorney lien claim involving Gary Eubanks and Johnie Stephens.  For the purposes of the record, let me have counsel make their appearances, please.

MR. THAMES:  Glenn Thames.

SPECIAL MASTER JUNEAU:  Use the microphone.

MR. THAMES:  Glenn Thames for Bob Stephens.  We're ready to proceed.

SPECIAL MASTER JUNEAU:  With you is whom?  Mr. Stephens?

MR. THAMES:  Mr. Stephens is with me and we're ready to proceed.

MS. WALAS:  Breean Walas for Gary Holt & Associates, which used to be known as Gary Eubanks & Associates, and Mr. Eubanks is here with me, as well as Gary Holt.

SPECIAL MASTER JUNEAU:  Just for the purposes of the record, I have received from the respective counsel the bench books required by the scheduling order, and I have both of them

08:56AM 1  here.  I will entertain during the course of the proceedings the

08:56AM 2  introduction into evidence by the respective parties those bench

08:56AM 3  books which contain the documents which are required by the Court

08:56AM 4  and any other documents which may be required.

08:56AM 5          Let me start the hearing this way:  We have a claim

08:56AM 6  of Mr. Eubanks and then we have the opposition.  I'm going to

08:56AM 7  start with the opposition first.  Would you come forward, sir,

08:56AM 8  and I'll allow you to introduce and make whatever comments you

08:56AM 9  deem appropriate.

08:56AM 10         MR. THAMES:  Sure.  Thank you.  Just as a housekeeping

08:56AM 11 matter, since you mentioned it, we will offer the exhibits in the

08:56AM 12 notebooks submitted on behalf of Stephens at this time for

08:56AM 13 admission for purposes of the record.

08:56AM 14         SPECIAL MASTER JUNEAU:  You're talking about your bench

08:56AM 15 books that were submitted?

08:56AM 16         MR. THAMES:  Yes.

08:56AM 17         SPECIAL MASTER JUNEAU:  I'm going to mark that as

08:57AM 18 Stephens #1 and let it be received in evidence.

08:57AM 19         MR. THAMES:  Thank you.  If I call you *Your Honor*,

08:57AM 20 Judge, it's a little -- I'm used to --

08:57AM 21         SPECIAL MASTER JUNEAU:  You can be loose with it.

08:57AM 22         MR. THAMES:  -- to doing that with someone sitting up

08:57AM 23 here in front of me.

08:57AM 24         There is only one issue for you to decide in the

08:57AM 25 case, and that is whether there was good cause for Mr. Stephens

08:57AM  1   to terminate the Eubanks Law Firm.  The answer to that is yes,
08:57AM  2   and the reasons are pretty simple.  They did not carry out his
08:57AM  3   reasonable instructions, and they did not take the steps that a
08:57AM  4   reasonable lawyer would have taken to gather the evidence.
08:57AM  5           Mr. Stephens, in his initial meeting with
08:57AM  6   Mr. Roundtree, told Mr. Roundtree that Kroger Pharmacy had paper
08:57AM  7   records going back further than what was on a printout that he
08:58AM  8   obtained from the store and gave to Mr. Roundtree.  He told him
08:58AM  9   that he had tried to get those paper records but that the store
08:58AM 10   refused to give him those without a subpoena, and so he needed
08:58AM 11   Mr. Roundtree to get those paper records.
08:58AM 12           Never in this case was a subpoena ever sent to
08:58AM 13   Kroger, and never was any request for any paper records made or
08:58AM 14   any paper records obtained by the Eubanks Law Firm.  They
08:58AM 15   obtained one piece of paper.  It was another computer printout
08:58AM 16   just like the one Mr. Stephens gave them in the initial interview
08:58AM 17   except that it had fewer prescriptions on it than the one
08:58AM 18   Mr. Stephens gave them.
08:58AM 19           Of course, Mr. Stephens didn't know about any of
08:58AM 20   this for over 2 years.  He, once he learned of this, he started
08:58AM 21   trying to mitigate the harm.  He started doing a lot of work
08:58AM 22   himself trying to figure out if there was another way he could
08:59AM 23   prove up the duration of use.  And he tracked down insurance
08:59AM 24   companies and tried to track down retired doctors, all kind of
08:59AM 25   things like that, and none of it really wound up being all that

08:59AM  1   successful.

08:59AM  2          Ultimately, the case was appealed twice to the

08:59AM  3   second level of review to the Special Master, and some affidavits

08:59AM  4   were presented.  Mr. Stephens talked to the former pharmacist up

08:59AM  5   there and gave some information to Mr. Eubanks, who had come

08:59AM  6   personally into the case by this time, and they obtained an

08:59AM  7   affidavit from him that was submitted, and the Special Master on

08:59AM  8   the second level of review did award the full duration of use.

09:00AM  9          Before any of that occurred, Mr. Stephens was doing

09:00AM 10   this work to try to find anything he could to help his case.  He

09:00AM 11   went back to Kroger Pharmacy during this period of time and

09:00AM 12   learned that they might still have some of those paper records

09:00AM 13   upstairs on the second floor.  He went back to Mr. Eubanks and

09:00AM 14   wanted him to go and try to get those records to see if they

09:00AM 15   would show something, and he again said, no, he wasn't going to

09:00AM 16   do that, and that was when the termination occurred.

09:00AM 17          What's their defense to all of this?  Their defense

09:00AM 18   is that Mr. Stephens ultimately won his appeal and got paid the

09:00AM 19   full duration of use.  They are going to tell you that he filed a

09:00AM 20   civil lawsuit and that he later dismissed after winning that

09:00AM 21   appeal, and those are both true but they are irrelevant.

09:00AM 22          Mr. Stephens filed that lawsuit because he had to

09:00AM 23   because the statute of limitations was going to run before he

09:01AM 24   ever found out from the Special Master whether or not he was

09:01AM 25   going to get an award for the full duration of use.  When he

09:01AM 1   found out that that award, that the master had reversed it and

09:01AM 2   that he had given the full duration of use, he dismissed that

09:01AM 3   lawsuit.  Of course, that wasn't until after he had spent about

09:01AM 4   $10,000 on that case.

09:01AM 5           What's important --

09:01AM 6           SPECIAL MASTER JUNEAU:  Let me ask you a couple of

09:01AM 7   questions.

09:01AM 8           MR. THAMES:  Sure.

09:01AM 9           SPECIAL MASTER JUNEAU:  Who obtained the affidavit

09:01AM 10  you're talking about from Kroger's?  A minute ago I thought you

09:01AM 11  said Mr. Stephens went back to Kroger's, found out they had some

09:01AM 12  more records, and then he got an affidavit, as I recall?

09:01AM 13          MR. THAMES:  That's correct.  At one point there was

09:01AM 14  a -- Mr. Stephens talked to a retired pharmacist and communicated

09:01AM 15  the information that he knew about that retired pharmacist to

09:02AM 16  Mr. Eubanks, and Mr. Eubanks obtained an affidavit from that

09:02AM 17  pharmacist.

09:02AM 18          SPECIAL MASTER JUNEAU:  My question is did Mr. Eubanks

09:02AM 19  obtain that affidavit?

09:02AM 20          MR. THAMES:  He sent someone to find the man and get him

09:02AM 21  to sign it, yes.

09:02AM 22          SPECIAL MASTER JUNEAU:  Mr. Eubanks did that.

09:02AM 23          MR. THAMES:  Mr. Eubanks did that.

09:02AM 24          SPECIAL MASTER JUNEAU:  That's what I thought you said.

09:02AM 25          MR. THAMES:  What's important here is what was known at

09:02AM 1   the time the termination occurred, and what was going on at that

09:02AM 2   time was that Mr. Stephens had been awarded fewer points than he

09:02AM 3   should have been because he didn't have the records.  He had lost

09:02AM 4   the first appeal of that.  He appealed that and lost that appeal

09:02AM 5   of that.  The second appeal was still pending.  He didn't know

09:02AM 6   whether he was going to win that or not, and he was out there

09:02AM 7   trying to get more evidence to try to help that appeal, and

09:02AM 8   Mr. Eubanks refused to go and try to get those paper records.

09:02AM 9          Once you determine that there is good cause for

09:03AM 10  this termination, this case is over.  They may claim that they

09:03AM 11  are entitled to *quantum meruit*, but when the Court told them that

09:03AM 12  they had to tell the Court that and ask for it and prove it up,

09:03AM 13  they didn't do it.  That was in, I think, Pretrial Order 47A.

09:03AM 14  There were instructions in there that if you were going to make

09:03AM 15  that claim, you had to do it then.  They didn't do it.

09:03AM 16         They still haven't proven it up.  They have not

09:03AM 17  submitted any time records in this case.  They haven't submitted

09:03AM 18  anything about a reasonable hourly rate to establish a loadstar

09:03AM 19  fee.  The Fifth Circuit requires that you put forth a loadstar

09:03AM 20  fee and then look at the *Johnson v Georgia Highway Express*

09:03AM 21  factors to determine whether you're going to increase or decrease

09:03AM 22  that fee if you're going to look into a reasonable attorney's

09:03AM 23  fee, and they haven't done any of that.  There is no hourly

09:03AM 24  records at all.  There is nothing about any hourly rates in any

09:04AM 25  of their submissions.

09:04AM  1          For these reasons we would ask that you find that

09:04AM  2  there was good cause for the termination and award the funds that

09:04AM  3  are held in trust to Mr. Stephens.

09:04AM  4          SPECIAL MASTER JUNEAU:  Let me ask you a couple

09:04AM  5  questions.  I have read your submission and your memorandum, and

09:04AM  6  in your memorandum you said that the Arkansas lien statute does

09:04AM  7  not apply to cases in which an attorney is terminated for cause.

09:04AM  8          MR. THAMES:  That's correct.

09:04AM  9          SPECIAL MASTER JUNEAU:  I reviewed those cases and one

09:04AM 10  of the cited cases was *Wren v DeQueen Sand and Gravel*, and in

09:04AM 11  that case it said, "Attorneys who are discharged with cause

09:04AM 12  retain attorney's lien for fees, but the amount of compensation

09:04AM 13  is determined on a *quantum meruit* basis."

09:04AM 14          What I'm asking you, you're not saying that someone

09:04AM 15  cannot claim *quantum meruit* or are you?

09:04AM 16          MR. THAMES:  No, Your Honor.  I'm saying that you're not

09:05AM 17  entitled -- and I believe it's undisputed between the parties as

09:05AM 18  to what the law is, that an attorney fired for cause is not

09:05AM 19  entitled to his contractual fee.

09:05AM 20          SPECIAL MASTER JUNEAU:  Contractual.  I'm not talking

09:05AM 21  about that.

09:05AM 22          MR. THAMES:  That's right.  He can still --

09:05AM 23          SPECIAL MASTER JUNEAU:  That is what I read the case to

09:05AM 24  say, but it does say that you can claim *quantum meruit*.

09:05AM 25          MR. THAMES:  He can claim *quantum meruit* and my point on

09:05AM  1  that is that in this case, they have not claimed *quantum meruit*.

09:05AM  2  They did not claim *quantum meruit* until their reply brief in the

09:05AM  3  submissions of these notebooks, not even in the opening brief, in

09:05AM  4  the reply brief, and then they've never submitted any hourly --

09:05AM  5  proof about hours and rate in order to prove up the value of the

09:05AM  6  services.  *Quantum meruit* is regarding to the value of the

09:05AM  7  services rendered.

09:05AM  8          SPECIAL MASTER JUNEAU:  We'll have to get to that

09:05AM  9  evidence, if any, in a minute, but I noticed in the notice of

09:06AM  10  lien that was filed by Mr. Eubanks, or on his behalf, after

09:06AM  11  talking about the contractual arrangement that was entered into

09:06AM  12  between the parties and what he did and so forth, in paragraph 7

09:06AM  13  he says, "The firm is entitled to a reasonable value of its

09:06AM  14  services to the date of discharge because the discharge attorney

09:06AM  15  may be paid for a reasonable value of his or her services," and

09:06AM  16  then they cite the case of *Salmon v. Atkinson*.  Isn't that claim

09:06AM  17  *quantum meruit*?

09:06AM  18          MR. THAMES:  I don't think it's proving up *quantum*

09:06AM  19  *meruit*, number one.

09:06AM  20          SPECIAL MASTER JUNEAU:  There is a difference between

09:06AM  21  claiming it and proving it up.

09:06AM  22          MR. THAMES:  That was filed a couple of years ago,

09:06AM  23  Your Honor.  There was an order signed by Judge Fallon.  I think

09:06AM  24  it's 47A --

09:06AM  25          SPECIAL MASTER JUNEAU:  Yes, I have that.

09:06AM 1       MR. THAMES:  -- that required that if there was going to

09:06AM 2   be a claim of *quantum meruit* presented, that it had to be stated

09:07AM 3   as to whether it was exclusive or in the alternative and put the

09:07AM 4   Court on notice of that claim and presumably submit the evidence

09:07AM 5   to support it.

09:07AM 6       SPECIAL MASTER JUNEAU:  The activity or the nonactivity

09:07AM 7   of which you complain has to do with not subpoenaing or not

09:07AM 8   obtaining the written documents from Kroger's or the drug

09:07AM 9   pharmacy facility; is that correct?

09:07AM 10      MR. THAMES:  That's primarily it.  Not following the

09:07AM 11  instructions of the -- reasonable instructions of the client to

09:07AM 12  do that on two occasions.

09:07AM 13      SPECIAL MASTER JUNEAU:  All right.  My next question is

09:07AM 14  after the discharge what, if anything, was submitted?  What

09:07AM 15  additional information was submitted that would have had a

09:07AM 16  bearing on the appeal?  We know ultimately that they were given

09:08AM 17  the full duration by the ruling of the Special Master, right?

09:08AM 18      MR. THAMES:  Nothing else was submitted to the

09:08AM 19  Special Master.  The appeal was closed, and nothing else was

09:08AM 20  submitted.  No request was made for those records.

09:08AM 21      SPECIAL MASTER JUNEAU:  Okay.  I didn't mean to

09:08AM 22  terminate your discussion.  Anything else you want to add?

09:08AM 23      MR. THAMES:  No, I'm happy to entertain any other

09:08AM 24  questions you may have, though.

09:08AM 25      SPECIAL MASTER JUNEAU:  Well, I may have some additional

09:08AM 1  questions but thank you very much.

09:08AM 2          MR. THAMES:  Thank you.

09:08AM 3          SPECIAL MASTER JUNEAU:  Just identify yourself for the

09:08AM 4  record.

09:08AM 5          MS. WALAS:  Breean Walas on behalf of Eubanks and Holt,

09:08AM 6  et cetera.

09:08AM 7          SPECIAL MASTER JUNEAU:  You represent Mr. Eubanks?

09:08AM 8          MS. WALAS:  I represent Mr. Eubanks.  When we filed the

09:08AM 9  notice of lien, it was filed by Mr. Eubanks on behalf of

09:08AM 10 Gary Eubanks & Associates.  Subsequent to that we had a firm name

09:08AM 11 change to Gary Holt & Associates, so while Mr. Eubanks was the

09:08AM 12 primary attorney handling the case at the time it was filed, it

09:09AM 13 was actually the entire firm contract that it's being pursued

09:09AM 14 under, but Mr. Eubanks was the primary attorney.

09:09AM 15         SPECIAL MASTER JUNEAU:  Okay.

09:09AM 16         MS. WALAS:  I would like to respond, if I may.  First

09:09AM 17 I'll introduce our bench book and the exhibits that were included

09:09AM 18 with that as our first exhibit.

09:09AM 19         SPECIAL MASTER JUNEAU:  I will mark that as Eubanks #1.

09:09AM 20 Let it be received in evidence.

09:09AM 21         MS. WALAS:  Thank you.

09:09AM 22             Also, I believe that many of the arguments are

09:09AM 23 contained in those books and our briefs that were submitted, so

09:09AM 24 rather than rehash all of that, I would just like to respond to a

09:09AM 25 few things that Mr. Thames said.

09:09AM 1          The first is that Mr. Stephens claims that he told

09:09AM 2  Mr. Roundtree at that initial meeting, "You have to go get these.

09:09AM 3  You have to go do this. I couldn't get them all."

09:09AM 4  Mr. Roundtree, in his response to admissions -- request for

09:09AM 5  admissions in the lawsuit, which are verified and included with

09:10AM 6  our bench brief towards the end as other relevant evidence,

09:10AM 7  denies that that happened.

09:10AM 8          In fact, he stated in that that Mr. Stephens told

09:10AM 9  him that Kroger had given him copies of all prescription records

09:10AM 10  that it had for Johnie Stephens, the deceased. He said that he

09:10AM 11  still sent the preservation letter because Mr. Stephens indicated

09:10AM 12  that there may have been more. It's this preservation letter

09:10AM 13  that actually asked Kroger to preserve all records, electronic,

09:10AM 14  digital, paper, everything. Mr. Roundtree was very thorough in

09:10AM 15  what he asked Kroger to preserve. So to say that we never

09:10AM 16  requested that those were preserved or anything of that matter is

09:10AM 17  incorrect.

09:10AM 18          The second thing is that when those records were

09:10AM 19  requested, it was a request for all prescription records for

09:10AM 20  Johnie Stephens for the period of time. I believe it was 1993 to

09:11AM 21  2003, but that also is contained in our exhibits. I believe it's

09:11AM 22  Exhibit E.

09:11AM 23          In response to that letter, Susan Clayton from

09:11AM 24  Kroger called and said, "We cannot give you those until we get

09:11AM 25  the administrator records," and that was on April, I believe,

09:11AM  1  21st of 2006.  In response, Ms. Oldie (spelled phonetically) sent

09:11AM  2  back the administrator records, and we received a printout both

09:11AM  3  by fax and mail that said these are all the records for '93 to

09:11AM  4  2003.

09:11AM  5          Now, interestingly, they claim that we told Kroger

09:11AM  6  they can destroy the records.  Ms. Oldie denies that.

09:11AM  7  Mr. Roundtree denies that.  The only information comes from

09:11AM  8  Kroger itself, who had been -- who had received a preservation

09:11AM  9  letter, Ms. Clayton's e-mail, who has a timeline that's very

09:12AM 10  specific of when she spoke to Ms. Oldie, but interestingly she

09:12AM 11  left out the April 21st conversation where she spoke to Ms. Oldie

09:12AM 12  about the records and about before we can send you these records

09:12AM 13  you need to send us this information.

09:12AM 14          Now --

09:12AM 15          SPECIAL MASTER JUNEAU:  Let me ask you a question.

09:12AM 16          MS. WALAS:  Yes.

09:12AM 17          SPECIAL MASTER JUNEAU:  You're talking about an e-mail

09:12AM 18  dated 1/10/2008 from Susan Clayton to someone named Angi?

09:12AM 19          MS. WALAS:  Yes, sir.

09:12AM 20          SPECIAL MASTER JUNEAU:  It says about the middle part of

09:12AM 21  that e-mail, "I contacted Ashley at Robert Roundtree's office to

09:12AM 22  confirm the ability to begin the purging process and was told all

09:12AM 23  motions had been" -- I'm not sure what the word was -- "and could

09:12AM 24  reinstate the purge process, which we did immediately."  That's

09:13AM 25  what you're talking about?

09:13AM 1    MS. WALAS:  Yes, sir.

09:13AM 2    SPECIAL MASTER JUNEAU:  I'm not sure that I have full

09:13AM 3 comprehension.  You're saying that report is not accurate?

09:13AM 4    MS. WALAS:  Yes, sir.  That is what Ms. Clayton says.

09:13AM 5 Ms. Oldie, whose requests for admissions are attached as well

09:13AM 6 what she verified, she denies that that conversation ever took

09:13AM 7 place.

09:13AM 8    SPECIAL MASTER JUNEAU:  What do we have that says that?

09:13AM 9    MS. WALAS:  Ms. Oldie's request for admissions that are

09:13AM 10 attached as other relevant evidence.

09:13AM 11    SPECIAL MASTER JUNEAU:  I'm asking to you point that

09:13AM 12 out.

09:13AM 13    MS. WALAS:  Let me grab it.  It would be in our

09:13AM 14 pleadings, response to first request for admission, Oldie.

09:13AM 15    SPECIAL MASTER JUNEAU:  Let me put it to you simply.  I

09:13AM 16 have a lot of papers.  It sure would help if you tell me --

09:13AM 17    MS. WALAS:  It's not an exhibit.  It's in the other

09:13AM 18 relevant evidence at the back of the pleadings that we submitted.

09:13AM 19 We submitted an exhibits binder as well as our pleadings binder.

09:14AM 20    SPECIAL MASTER JUNEAU:  I'm looking now at the exhibit

09:14AM 21 binder.  It's in the exhibit binder?

09:14AM 22    MS. WALAS:  No, sir, it's in the other one.

09:14AM 23    SPECIAL MASTER JUNEAU:  Whereas, I have the other

09:14AM 24 binder.  By the way, I've received into evidence your bench book.

09:14AM 25 I had marked that as Eubanks #1.  There are actually two volumes

09:14AM  1   so I've marked one Eubanks #1 and one Eubanks #1A.

09:14AM  2            I'm looking at Eubanks #1 now, which is the

09:14AM  3   document you submitted.  Where is this document?

09:14AM  4            MS. WALAS:  It will be towards the back, under, I

09:14AM  5   believe, other relevant evidence that should say, "Oldie response

09:14AM  6   to first request for admission."  I may have different tabs than

09:14AM  7   you, so I apologize.

09:14AM  8            SPECIAL MASTER JUNEAU:  I see other relevant documents,

09:14AM  9   okay.  What pleading is it, now?

09:14AM 10            MS. WALAS:  It would be A, the separate defendant

09:15AM 11   Ashley Oldie's response to plaintiff's first set of request for

09:15AM 12   admissions propounded to defendant Ashley Oldie.

09:15AM 13            SPECIAL MASTER JUNEAU:  I have that document.

09:15AM 14            MS. WALAS:  And number -- on page 5, it would be request

09:15AM 15   for admission number 14.  It asks Ms. Oldie to admit that on

09:15AM 16   February 7, 2006, Susan Clayton of Kroger Division Office

09:15AM 17   contacted your superior, Robert L. Roundtree's office and spoke

09:16AM 18   to you about the letter that was dated October 3, 2005,

09:16AM 19   concerning the preservation of pharmaceutical records for

09:16AM 20   Johnie Stephens.  Answer of Ms. Oldie is denied.

09:16AM 21            She also, in the next request for admission, denies

09:16AM 22   that she told Clayton anything about a period of time that Kroger

09:16AM 23   could wait for their -- could disregard the preservation letter

09:16AM 24   and begin the purge process.

09:16AM 25            She also denies that on -- that she told them

09:16AM 1 | anything about motions being filed by May 1st of 2006, and that

09:16AM 2 | would be her response to request for admission 16.

09:16AM 3 | She also denies -- just let me find it.  She also

09:17AM 4 | denies on page 7, request for admission number 22, that on

09:17AM 5 | May 1st, she spoke with Susan Clayton and told her that all

09:17AM 6 | motions had been filed and that Kroger Pharmacy could reinstate

09:17AM 7 | the purge process.

09:17AM 8 | Now, Ms. Oldie has denied that that ever

09:17AM 9 | occurred -- and that that conversation occurred.  She denied

09:17AM 10 | telling them that they could begin the purge process.  Also, in

09:17AM 11 | Ms. Clayton's note, which is very detailed, it's interesting that

09:17AM 12 | she left out the conversation she had on April 21, 2006,

09:17AM 13 | discussing those prescription records where we followed up, sent

09:17AM 14 | the administrator records, and got the prescription records.

09:17AM 15 | Those records that we received stated '93 to 2003 and included --

09:17AM 16 | and said that they included all of those records.

09:18AM 17 | Now, they've made a big deal with paper records.

09:18AM 18 | For the purposes of the settlement, the printout records from

09:18AM 19 | Kroger Pharmacy were sufficient to submit as proof of ingestion

09:18AM 20 | under what was needed to be submitted.  So there was no

09:18AM 21 | additional need to go get paper records when the Kroger had

09:18AM 22 | indicated that they had provided us with copies of all of those

09:18AM 23 | records.

09:18AM 24 | With respect to a subpoena, in Arkansas we

09:18AM 25 | generally do not issue a subpoena to a pharmacy if they are

09:18AM 1   complying with the preservation letter, if they are responding to

09:18AM 2   medical records.  Really, the only time that a subpoena is issued

09:18AM 3   generally as a practice is when a medical facility or pharmacy is

09:18AM 4   refusing to provide those documents in response to an

09:18AM 5   authorization and a request.  So to say that we were required to

09:19AM 6   is not the general practice of attorneys in Arkansas.

09:19AM 7          Now, Mr. Thames also interestingly used the word

09:19AM 8   that Bob Stephens wanted to prove up the duration of use, which

09:19AM 9   is exactly what Mr. Roundtree says in his response to request for

09:19AM 10  admission number 3, is that at that first meeting, Mr. Stephens

09:19AM 11  indicated, well, maybe if I can prove more -- a longer use we can

09:19AM 12  get more money.

09:19AM 13         He was interested in getting more money, and we

09:19AM 14  were doing everything that we did for all of our Vioxx clients.

09:19AM 15  We were obtaining medical records.  We were getting pharmacy

09:19AM 16  records.  We actually went above and beyond with Mr. Stephens'

09:19AM 17  case after it came up that Kroger didn't have these things, and

09:19AM 18  he swore that his dad took it for this period of time, so we

09:19AM 19  submitted it.  We got the affidavit.  We got --

09:20AM 20         SPECIAL MASTER JUNEAU:  Mr. Eubanks' office got that

09:20AM 21  affidavit?

09:20AM 22         MS. WALAS:  Yes, Your Honor, we got that affidavit from

09:20AM 23  Mr. Hill, the pharmacy (sic) who retired.  He actually was

09:20AM 24  hunting, and Ms. Flournoya drove up to meet him at a gas station

09:20AM 25  so he could go over that.

| | | |
|---|---|---|
| 09:20AM | 1 | Mr. Stephens.  We submitted an affidavit from |
| 09:20AM | 2 | Mr. Stephens that we went over.  He signed it and he was part of |
| 09:20AM | 3 | the process of his case throughout the whole thing.  He called |
| 09:20AM | 4 | the office numerous times.  We spoke to him about things.  He |
| 09:20AM | 5 | reviewed his plaintiff profile forms.  He reviewed everything |
| 09:20AM | 6 | throughout the case, and he was kept apprised of everything going |
| 09:20AM | 7 | on throughout the case.  We sought to obtain everything that we |
| 09:20AM | 8 | could to prove the duration of use for the Vioxx. |
| 09:20AM | 9 | Whatever he may have been doing at the outside was |
| 09:20AM | 10 | helpful, but we followed up with Caremark.  When he first |
| 09:20AM | 11 | informed us about what pharmacies were used, there was no |
| 09:20AM | 12 | indication about Caremark being involved or anything like that. |
| 09:21AM | 13 | We followed up. |
| 09:21AM | 14 | I think the most important thing about these |
| 09:21AM | 15 | records is that Ms. Clayton's January e-mail says, "Even though I |
| 09:21AM | 16 | couldn't find any records, I went back to our signature logs for |
| 09:21AM | 17 | that time," which they were required by law to keep for a period |
| 09:21AM | 18 | of time, and she said, "I couldn't find any signatures that |
| 09:21AM | 19 | showed it was picked up for that time." |
| 09:21AM | 20 | So even the signature logs, if they had had them, |
| 09:21AM | 21 | we would have obtained copies of them, with the appropriate other |
| 09:21AM | 22 | clients of the pharmacy obviously redacted but for our use, but |
| 09:21AM | 23 | they could have produced that to us, and that was in January of |
| 09:21AM | 24 | '06 when we were speaking to her.  She said that there were not |
| 09:21AM | 25 | any signature logs showing that, when they were required to have |

09:21AM 1   those.

09:21AM 2        We attempted from Caremark who also said, "Yes, we

09:21AM 3   found this guy.  We didn't keep records for that far back," but

09:22AM 4   they didn't have the records when we were hired, that Caremark

09:22AM 5   pharmacy didn't keep the records for that period of time.  They

09:22AM 6   had already been destroyed at the point we were hired by

09:22AM 7   Caremark, who apparently was the backup for the insurance that

09:22AM 8   kept all of the prescriptions.

09:22AM 9        "Yes, we have a record of Johnie Stephens."  We

09:22AM 10  didn't have those records.  When we look at the dates they showed

09:22AM 11  us, they didn't have the records when we were hired, and they

09:22AM 12  said, "Nonetheless, we don't see anything for prescriptions

09:22AM 13  during that time period that it was noted."  That would be the

09:22AM 14  Caremark affidavits.  I believe they are Exhibit F or around that

09:22AM 15  area.

09:22AM 16       Now, even with all of this difficulty we were

09:22AM 17  having in obtaining the records, Mr. Stephens said that he had

09:22AM 18  them, that that's when his dad took the prescription, and we --

09:22AM 19       SPECIAL MASTER JUNEAU:  Excuse me, he said what?

09:22AM 20       MS. WALAS:  He said that his dad took the Vioxx during

09:22AM 21  that time period.  So we prepared and he reviewed and he went

09:22AM 22  through all of the exhibits, and he signed his affidavit, which

09:23AM 23  we submitted with our appeal to the Special Master, or, I'm

09:23AM 24  sorry, we had submitted it with the first appeal because the

09:23AM 25  first appeal, my understanding was that you couldn't -- you could

09:23AM 1 submit something further than.  We even made a note in the

09:23AM 2 comment section that says, "This is to show the proof."  We have

09:23AM 3 the prescription -- the pharmacy's affidavit.  We have

09:23AM 4 Mr. Stephens's affidavit.

09:23AM 5         Bless you.

09:23AM 6         Those were submitted on the appeal.  It was

09:23AM 7 unsuccessful.  We felt that the affidavits would have been

09:23AM 8 successful, and with Mr. Stephens' consent, we appealed to the

09:23AM 9 Special Master, which was a *de novo* review.  We could not submit

09:23AM 10 anything further.  It was to review the entire record in total.

09:23AM 11        As part of that, we indicated to Mr. Stephens that

09:23AM 12 it may go down as a part of the entire review because there may

09:23AM 13 be some things that they see that they didn't see before.  At the

09:24AM 14 time that it was submitted to the Special Master, everything that

09:24AM 15 could be done in the case had been done, and we had done it and

09:24AM 16 done the work on it.

09:24AM 17        Then Mr. Stephens, who had, for the period about a

09:24AM 18 year before roughly, who had been saying, "Well, I'll just take

09:24AM 19 the money and sue you for the difference," or, "I'll just sue

09:24AM 20 you," decided to fire the firm and pursue a lawsuit against us.

09:24AM 21        Interestingly, his letter terminating the

09:24AM 22 relationship said, "I am firing you as my lawyer so that I can

09:24AM 23 sue you based upon these pharmacy records."  He did, in fact,

09:24AM 24 file suit against the firm.  To say that he filed it because the

09:24AM 25 statute was about to run, it's true.  It was about to run but it

09:24AM 1  actually had already run based upon Arkansas law probably.  At

09:24AM 2  the time that he learned that we had been successful in obtaining

09:25AM 3  him the duration of use that was requested -- that he said his

09:25AM 4  father took, it was 2 days before a hearing on our motion to

09:25AM 5  dismiss the lawsuit as under Arkansas law.

09:25AM 6      Now, to say he spent $10,000 on that case,

09:25AM 7  Your Honor, I can't say what he spent, but I can say that it was

09:25AM 8  all at his own desire because he propounded so much discovery and

09:25AM 9  all of these other things that it was his decision to spend all

09:25AM 10  of that money pursuing something that, you know, he knew he was

09:25AM 11  going to do all along, from looking at his letters and those sort

09:25AM 12  of things, all because he felt that he wasn't going to get the

09:25AM 13  duration of use that he said existed, and we attempted to obtain

09:25AM 14  all of those pharmacy records.

09:25AM 15      Now, looking at Arkansas law, which is what must be

09:26AM 16  applied in federal court in an attorney's lien situation or

09:26AM 17  attorney fee situation, you apply the state law of what -- where

09:26AM 18  the contract was done in a what would be proceeding.

09:26AM 19      Now, Mr. Thames has been citing Fifth Circuit

09:26AM 20  Louisiana law as to you have to prove time; you to prove this.

09:26AM 21  Well, cases you cited and other Arkansas law shows that you can

09:26AM 22  get *quantum meruit* on the contingency fee contract.

09:26AM 23      But the thing is here --

09:26AM 24      SPECIAL MASTER JUNEAU:  Repeat that.  You can get...

09:26AM 25      MS. WALAS:  You can, if you have a contingency fee

09:26AM  1   agreement, you can still get the *quantum meruit* if there was good
09:26AM  2   cause, which I'm not conceding there was good cause, but I am
09:26AM  3   saying that if you find that there was good cause, you can still
09:26AM  4   get that.  It's not a time -- we have to give you an hourly time.
09:26AM  5   Obviously firms that do contingency fees do not keep hourly time.
09:27AM  6   Most do that.

09:27AM  7          Now, Arkansas has set forth factors that you can
09:27AM  8   look at, which we've included in our brief, and I can rattle some
09:27AM  9   of them off the top of my head and some of them I don't know, but
09:27AM 10   it's just the general reasonable thing that you can look at that
09:27AM 11   an attorney does -- Did they pursue records?  How much time did
09:27AM 12   they do?  What did they do to work on the case?  What had they
09:27AM 13   done at the point they were terminated?

09:27AM 14          Now, without conceding the good cause, at the time
09:27AM 15   we were terminated, all of the work was done.  Nothing further
09:27AM 16   could be done; in fact, they've conceded that.  Nothing further
09:27AM 17   was done in this case having to do with that.

09:27AM 18          Your Honor, the final fact is with the -- their
09:27AM 19   argument that, PTO 47A, we were required to say we were pursuing
09:27AM 20   the *quantum meruit* part of our claim, we had filed a notice of
09:28AM 21   lien.  This is the second time we have actually briefed all of
09:28AM 22   these issues because when we filed our notice, we followed it up
09:28AM 23   with a motion because Judge Fallon hadn't yet come up with a
09:28AM 24   plan, and the claims administrator, they hadn't come up with a
09:28AM 25   plan yet.

09:28AM 1          So all of our arguments all along which were

09:28AM 2 included as, I believe, Exhibit L to our brief, we've always said

09:28AM 3 this -- reasonable value of our services.  If it's not under the

09:28AM 4 lien statute where we get our contractual fee, then we get the

09:28AM 5 reasonable value of our services.  When we received notification

09:28AM 6 after 47A, we received a notification telling us that our notice

09:28AM 7 and our claim was sufficient.  It had everything that it needed.

09:28AM 8          Now, with that, there was -- it wasn't that we had

09:28AM 9 to go back and redo it, because it said, if you've already

09:29AM 10 submitted a notice or a claim for your fee, this will tell you if

09:29AM 11 it's sufficient or if more needs to be done.  When we received

09:29AM 12 the sufficiency notice based upon everything else we had

09:29AM 13 previously filed, which included the statute for our full

09:29AM 14 contractual fee, or if there was found to not be good faith, the

09:29AM 15 *quantum meruit*, the reasonable value of our services, to us, that

09:29AM 16 was sufficient.

09:29AM 17          I believe that we have sufficiently established a

09:29AM 18 record that both sides have been argued, and it is not just an

09:29AM 19 issue of good cause, and if you find no good cause it stops

09:29AM 20 there.  I believe it goes further into what Arkansas law

09:29AM 21 requires.

09:29AM 22          If you don't have any further questions for me,

09:29AM 23 Your Honor, I will sit down.

09:29AM 24          SPECIAL MASTER JUNEAU:  No.  I'm going to give

09:29AM 25 Mr. Thames an opportunity to rebut.

09:29AM  1       MR. THAMES:  Just a few kind of things I want to say in

09:29AM  2  response.  First of all, I think it's pretty hornbook law that

09:29AM  3  request for admission responses that are in the form of denials

09:29AM  4  are not evidence.  Admissions are evidence but denials to request

09:30AM  5  for admissions are nothing.  Interrogatory answers are evidence

09:30AM  6  but not admission denials.

09:30AM  7       Also, I don't think there is any question that a

09:30AM  8  disinterested Kroger Pharmacy's e-mail happening at the time is

09:30AM  9  pretty reliable evidence of what was going on.

09:30AM 10       Some of your questions indicate that you have an

09:30AM 11  interest with harm, and harm is not an issue in a good cause

09:30AM 12  analysis.  What has to be looked at is at the time of the

09:30AM 13  termination, not what ultimately happened many months afterwards

09:30AM 14  down the road.  At the time of the termination, what was going

09:30AM 15  on?  What was the outlook at that time?  That outlook was very

09:30AM 16  bleak.  There was a lower award given, and appeal of that lower

09:31AM 17  award had upheld the lower award.  There was another appeal

09:31AM 18  pending that Mr. Eubanks had initially advised not to pursue

09:31AM 19  because he didn't think it was going to be worthwhile.

09:31AM 20       There was a lot of work being done to try to repair

09:31AM 21  this damage, and when Mr. Stephens was working that hard to do

09:31AM 22  some of that work to repair this damage, he went to Kroger and

09:31AM 23  found out, well, maybe they do have some more records, and asked

09:31AM 24  Mr. Eubanks, "Could you try to get those records again," even

09:31AM 25  though they -- you know, it's several years later, and he said

09:31AM 1   no.

09:31AM 2           Now, there were some paper records there.
09:31AM 3   Mr. Stephens was able to get a couple of them.  They didn't
09:31AM 4   necessarily improve his case, but they were there.  The Eubanks
09:32AM 5   firm had never gotten any of those records.

09:32AM 6           I'm not concerned or complaining about the
09:32AM 7   preservation activity.  My concern, where it gives Mr. Stephens
09:32AM 8   good cause for the termination here, is what they did in the
09:32AM 9   requesting activity because they made a request, but what they
09:32AM 10  got was a printout just like the one he already gave them, except
09:32AM 11  it showed less than the one he already gave them.

09:32AM 12          He told them there were paper records, and they
09:32AM 13  didn't do anything.  They got that printout, they threw in it a
09:32AM 14  file, and it was over.  They waited two plus -- about 2 years
09:32AM 15  after that before he noticed this was an issue.

09:32AM 16          When they got that printout back from Kroger that
09:32AM 17  showed less than what he already gave them, that should have sent
09:32AM 18  up some red flags.  They should have said, Well, Mr. Stephens,
09:33AM 19  Kroger is showing us less than what you've already got.  What
09:33AM 20  else can we do?  You know, they should have gone back to Kroger
09:33AM 21  and said, "Kroger, this isn't right.  We've got other evidence
09:33AM 22  already in our hands that shows more than this.  What about your
09:33AM 23  paper records?  Do we need to send you a subpoena?  Because we
09:33AM 24  will if we have to."  There is a lot they could have done at that
09:33AM 25  time that they didn't do.  They knew.

09:33AM 1        Mr. Stephens had brought them -- and it's not just

09:33AM 2  him telling them that his father had been taking Vioxx this

09:33AM 3  entire time period.  He brought them the medical records from the

09:33AM 4  ER visit when his father was very first prescribed Vioxx back in

09:33AM 5  November of 2000.  The records from the printout of the pharmacy

09:33AM 6  don't start until July of 2002.  He started November of 2000.  He

09:33AM 7  gave them that ER record and told them, "This is the only

09:33AM 8  pharmacy that he got his records from.  They have to have

09:33AM 9  something here."

09:33AM 10        Also, from the initial interview all the way until,

09:34AM 11  which was in August of '05, all the way until June of '07,

09:34AM 12  Mr. Johnie Stephens, the decedent, his wife, Rosie Stephens, was

09:34AM 13  still alive.  She gave him those pills every day.  She could talk

09:34AM 14  to someone.  She could help build this case.  She could have

09:34AM 15  given them some insight, but no mention was ever made that, hey,

09:34AM 16  we're having problems proving this additional duration of use

09:34AM 17  until Mr. Stephens stumbled upon it himself and got suspicious in

09:34AM 18  December of '07 -- about 6 months after she had died; 2 years

09:34AM 19  after he first hired them -- when, during an interview regarding

09:34AM 20  one of the forms to be submitted, they had the question on

09:34AM 21  duration marked wrong.  Then when he -- he had some questions

09:35AM 22  about that, they came -- he came back later and signed a form

09:35AM 23  that they had then corrected and submitted.  So that does go to

09:35AM 24  the factors that you should look at is at the time of the

09:35AM 25  termination to determine good cause.

09:35AM  1          SPECIAL MASTER JUNEAU:  Let me ask you a question.

09:35AM  2  There has been a reference made earlier to a subsequent affidavit

09:35AM  3  that Mr. Eubanks obtained.  That was before the discharge?

09:35AM  4          MR. THAMES:  Yes, a few days before the discharge.  With

09:35AM  5  regard to the *quantum meruit* claim, the question there is not a

09:35AM  6  contractual fee.  The question there is the value, the reasonable

09:35AM  7  value of services.  There is no way you can determine the value

09:35AM  8  of services without knowing how much time and effort was spent.

09:36AM  9          Do you have any further questions?

09:36AM 10          SPECIAL MASTER JUNEAU:  I don't have any further

09:36AM 11  questions.

09:36AM 12          MS. WALAS:  May I just briefly respond to a few things

09:36AM 13  he said?

09:36AM 14          SPECIAL MASTER JUNEAU:  Okay.

09:36AM 15          MS. WALAS:  First, the affidavits that the firm obtained

09:36AM 16  were in January -- months before we were terminated.  I believe

09:36AM 17  they were in January, and the termination was in March, so it was

09:36AM 18  not a few days.  It was months.  It was -- the termination was

09:36AM 19  after we had already submitted to the Special Master.

09:36AM 20          I'm sure you'll ask Mr. Eubanks about this further,

09:36AM 21  but it was my understanding that one of the original concerns

09:36AM 22  about appealing to the Special Master was that Johnie Stephens

09:36AM 23  had also begun taking another prescription during the time prior

09:37AM 24  to his death, which, upon looking up some things, that also was

09:37AM 25  linked to some heart problems and heart attacks, and that was

09:37AM 1    what the concern was.  The concern was not the lack of records

09:37AM 2    but in a *de novo* review, the review of everything in seeing the

09:37AM 3    taking of that medication may have also contributed to his death

09:37AM 4    and that was the concern.

09:37AM 5             With respect to Arkansas law on good faith, there

09:37AM 6    is no bright-line rule.  The *Mobley* case which we have cited goes

09:37AM 7    through times when good cause has been found.  Those instances

09:37AM 8    usually have been where attorneys don't communicate, where, you

09:37AM 9    know, the -- it was -- one of them was fired for cause when

09:37AM 10   payment of the attorneys during the litigation became an

09:37AM 11   acrimonious issue.

09:37AM 12            There was no fight over a payment during this time.

09:37AM 13   We have a slogan, "If we don't win your case for you, you don't

09:38AM 14   owe us a dime," so we are not going to fight about the fee during

09:38AM 15   the litigation; however, when we've been fired for no good cause,

09:38AM 16   you know, we are going to try to assert our lien, which we have a

09:38AM 17   right to, under the law.

09:38AM 18            The statement that there is no way to determine a

09:38AM 19   reasonable value of services -- as I stated earlier, there is a

09:38AM 20   case that goes through factors.  I went and grabbed that, and

09:38AM 21   that would be the *Crockett* and *Brown* case.

09:38AM 22            (Addressing the court reporter) I will try to speak

09:38AM 23   slowly for you.

09:38AM 24            It says, "In measuring the reasonable value of an

09:38AM 25   attorney's services, i.e., the *quantum meruit* fee, the following

09:38AM  1  factors should be considered:  One, the attorney's judgment,

09:38AM  2  learning ability, skill, experience, professional standing and

09:38AM  3  advice.  Two, the relationship between the parties.  Three, the

09:38AM  4  amount or importance of the subject matter of the case.  Four,

09:38AM  5  the nature, extent, and difficulty of services and research.

09:39AM  6  Five, the preparation of pleadings.  Six, the proceedings

09:39AM  7  actually taken and the nature and extent of the litigation.

09:39AM  8  Seven, the time and labor devoted to the client's cause.  Eight,

09:39AM  9  the difficulties presented during the course of the litigation

09:39AM 10  and the results obtained.  And in making these determinations,

09:39AM 11  the Court is permitted to use its own experience and knowledge of

09:39AM 12  the character of such services as a guide."

09:39AM 13        Those are how you value reasonable value of

09:39AM 14  services if you happen to find a good cause.  That is under the

09:39AM 15  Crockett case under Arkansas law.

09:39AM 16        Now, as part of our briefs and our exhibits, we

09:39AM 17  submitted a timeline of all of the work that's been performed.

09:39AM 18  There is no doubt that at the time that we were fired all the

09:39AM 19  work had been performed.  It was -- essentially the case was

09:39AM 20  complete, and all we were doing was waiting for a response from

09:40AM 21  the Special Master on what the award would be.

09:40AM 22        With that, I'll allow to you ask any further

09:40AM 23  questions of me or if you have anything further of Mr. Eubanks.

09:40AM 24        SPECIAL MASTER JUNEAU:  I have no further questions.

09:40AM 25  I'm going to take this matter under advisement, and I will issue

09:40AM   1   a formal report and recommendation to the Court pursuant to the

09:40AM   2   Federal Rules.  I will, in the next 5 days, allow both parties,

09:40AM   3   if they elect, simultaneously, if they want to submit a brief or

09:40AM   4   just citations -- I understand you referred to the *Crockett* case

09:40AM   5   but I'm saying from both sides -- on the precise issue of what

09:40AM   6   proof under Arkansas law is necessary in proving up the *quantum*

09:40AM   7   *meruit* claim.  It's something you don't have to do but if you

09:40AM   8   want to do it, I would request that y'all send me that within the

09:40AM   9   next 5 days.  It doesn't have to be a lengthy thesis but very

09:40AM   10  focused on that precise issue.

09:40AM   11              Just with that being said, I'm going to put into

09:41AM   12  evidence one or two last items.  Special Master #1 is the actual

09:41AM   13  scheduling order which was issued to the party, which, I will

09:41AM   14  note, has been complied with by both sides.  The second is

09:41AM   15  Special Master #2, which is just the administrator's file in this

09:41AM   16  case.  That will then give a complete record in addition to the

09:41AM   17  exhibits that have already been introduced into evidence.

09:41AM   18              With that, the matter will be adjourned.  Thank you

09:41AM   19  very much.

09:41AM   20              MR. THAMES:  Thank you, Your Honor.

09:41AM   21              MS. WALAS:  Thank you.

          22              (WHEREUPON, at 9:41 a.m., the proceedings were

          23  concluded.)

          24                          *    *    *

          25

1

2

3                          REPORTER'S CERTIFICATE

4

5       I, Cathy Pepper, Certified Realtime Reporter, Registered

6   Merit Reporter, Certified Court Reporter of the State of

7   Louisiana, Official Court Reporter for the United States District

8   Court, Eastern District of Louisiana, do hereby certify that the

9   foregoing is a true and correct transcript, to the best of my

10  ability and understanding, from the record of the proceedings in

11  the above-entitled and numbered matter.

12

13

14                         *s/Cathy Pepper*

15                         Cathy Pepper, CRR, RMR, CCR
                           Certified Realtime Reporter
16                         Official Court Reporter
                           United States District Court
17                         Cathy_Pepper@laed.uscourts.gov

18

19

20

21

22

23

24

25

## #

**#1** [2] - 13:19, 16:25

## $

**$10,000** [2] - 8:4, 23:6

**'**

**'05** [1] - 28:11
**'06** [1] - 20:24
**'07** [2] - 28:11, 28:18
**'93** [2] - 15:3, 18:15

## 0

**06-CV-1678** [1] - 1:12

## 1

**1** [4] - 5:18, 17:1, 17:2,
32:12
**1.**............................
..... [1] - 3:17
**1.**............................
.......... [1] - 3:14
**1.**............................
.......... [1] - 3:15
**1/10/2008** [1] - 15:18
**1018** [1] - 1:23
**110** [1] - 2:4
**13** [2] - 3:6, 3:15
**14** [1] - 17:15
**16** [1] - 18:2
**1657** [2] - 1:6, 4:8
**17** [1] - 3:16
**1993** [1] - 14:20
**1A** [1] - 17:1
**1A.**............................
.......... [1] - 3:16
**1st** [2] - 18:1, 18:5

## 2

**2** [5] - 6:20, 23:4,
27:14, 28:18, 32:15
**2.**............................
..... [1] - 3:18
**2000** [2] - 28:5, 28:6
**2002** [1] - 28:6
**2003** [3] - 14:21, 15:4,
18:15
**2005** [1] - 17:18
**2006** [2] - 15:1, 17:16,

18:1, 18:12
**2010** [2] - 1:7, 4:2
**202** [1] - 1:23
**21** [1] - 18:12
**21st** [2] - 15:1, 15:11
**22** [1] - 18:4
**26** [1] - 3:7
**27** [2] - 1:7, 4:2
**29** [1] - 3:8

## 3

**3** [2] - 17:18, 19:10
**32** [2] - 3:17, 3:18

## 4

**4-06-CV-0259** [1] -
1:13
**47A** [4] - 9:13, 11:24,
24:19, 25:6

## 5

**5** [5] - 3:5, 3:14, 17:14,
32:2, 32:9
**500** [2] - 2:4, 2:16
**504** [1] - 2:17
**51268** [1] - 1:24
**589-7779** [1] - 2:17

## 6

**6** [1] - 28:18

## 7

**7** [3] - 11:12, 17:16,
18:4
**70130** [1] - 2:16
**70505** [1] - 1:24
**708** [1] - 2:10
**72201** [1] - 2:11
**75702** [1] - 2:4

## 9

**9:00** [1] - 1:7
**9:41** [1] - 32:22

## A

**A.M** [1] - 1:7
**a.m** [1] - 32:22
**ability** [3] - 15:22,

31:2, 33:10
**able** [1] - 27:3
**above-entitled** [1] -
33:11
**accurate** [1] - 16:3
**acrimonious** [1] -
30:11
**action** [1] - 4:8
**ACTION** [1] - 1:12
**activity** [3] - 12:6,
27:7, 27:9
**actual** [1] - 32:12
**add** [1] - 12:22
**addition** [1] - 32:16
**additional** [4] - 12:15,
12:25, 18:21, 28:16
**Addressing** [1] -
30:22
**adjourned** [1] - 32:18
**ADMINISTRATOR** [1]
- 1:10
**administrator** [4] -
14:25, 15:2, 18:14,
24:24
**administrator's** [1] -
32:15
**admission** [10] - 5:13,
16:14, 17:6, 17:15,
17:21, 18:2, 18:4,
19:10, 26:3, 26:6
**admissions** [7] - 14:4,
14:5, 16:5, 16:9,
17:12, 26:4, 26:5
**admit** [1] - 17:15
**advice** [1] - 31:3
**advised** [1] - 26:18
**advisement** [1] -
31:25
**affidavit** [13] - 7:7, 8:9,
8:12, 8:16, 8:19,
19:19, 19:21, 19:22,
20:1, 21:22, 22:3,
22:4, 29:2
**affidavits** [4] - 7:3,
21:14, 22:7, 29:15
**afterwards** [1] - 26:13
**ago** [2] - 8:10, 11:22
**agreement** [1] - 24:1
**alive** [1] - 28:13
**allow** [3] - 5:8, 31:22,
32:2
**ALSO** [1] - 2:13
**alternative** [1] - 12:3
**amount** [2] - 10:12,
31:4
**analysis** [1] - 26:12
**AND** [2] - 1:10, 2:8
**Angi** [1] - 15:18
**answer** [2] - 6:1, 17:20
**answers** [1] - 26:5

31:2, 33:10
**apologize** [1] - 17:7
**appeal** [14] - 7:18,
7:21, 9:4, 9:5, 9:7,
12:16, 12:19, 21:23,
21:24, 21:25, 22:6,
26:16, 26:17
**appealed** [3] - 7:2,
9:4, 22:8
**appealing** [1] - 29:22
**appearances** [1] -
4:12
**APPEARANCES** [2] -
1:20, 2:1
**applied** [1] - 23:16
**apply** [2] - 10:7, 23:17
**apprised** [1] - 20:6
**appropriate** [2] - 5:9,
20:21
**April** [3] - 14:25,
15:11, 18:12
**AR** [1] - 2:11
**ARE** [1] - 1:13
**area** [1] - 21:15
**argued** [1] - 25:18
**argument** [1] - 24:19
**arguments** [2] - 13:22,
25:1
**Arkansas** [12] - 10:6,
18:24, 19:6, 23:1,
23:5, 23:15, 23:21,
24:7, 25:20, 30:5,
31:15, 32:6
**arrangement** [1] -
11:11
**AS** [1] - 1:10
**Ashley** [3] - 15:21,
17:11, 17:12
**assert** [1] - 30:16
**ASSOCIATES** [3] -
2:7, 2:8, 2:8
**Associates** [4] - 4:20,
4:21, 13:10, 13:11
**AT** [1] - 1:18
**Atkinson** [1] - 11:16
**attached** [2] - 16:5,
16:10
**attacks** [1] - 29:25
**attempted** [2] - 21:2,
23:13
**attorney** [8] - 4:9,
10:7, 10:18, 11:14,
13:12, 13:14, 23:17,
24:11
**attorney's** [5] - 9:22,
10:12, 23:16, 30:25,
31:1
**attorneys** [2] - 19:6,
30:8, 30:10
**Attorneys** [1] - 10:11
**August** [1] - 28:11

**authorization** [1] -
19:5
**award** [8] - 7:8, 7:25,
8:1, 10:2, 26:16,
26:17, 31:21
**awarded** [1] - 9:2

## B

**B406** [1] - 2:16
**backup** [1] - 21:7
**based** [3] - 22:23,
23:1, 25:12
**basis** [1] - 10:13
**bearing** [1] - 12:16
**became** [1] - 30:10
**BEFORE** [1] - 1:17
**begin** [3] - 15:22,
17:24, 18:10
**begun** [1] - 29:23
**behalf** [4] - 5:12,
11:10, 13:5, 13:9
**bench** [6] - 4:24, 5:2,
5:14, 13:17, 14:6,
16:24
**best** [1] - 33:9
**between** [4] - 10:17,
11:12, 11:20, 31:3
**beyond** [1] - 19:16
**big** [1] - 18:17
**binder** [5] - 16:19,
16:21, 16:24
**bleak** [1] - 26:16
**bless** [1] - 22:5
**BOB** [3] - 1:10, 2:3,
2:13
**Bob** [2] - 4:15, 19:8
**book** [2] - 13:17,
16:24
**books** [4] - 4:25, 5:3,
5:15, 13:23
**BREEAN** [1] - 2:9
**Breean** [2] - 4:20, 13:5
**brief** [7] - 11:2, 11:3,
11:4, 14:6, 24:8,
25:2, 32:3
**briefed** [1] - 24:21
**briefly** [1] - 29:12
**briefs** [2] - 13:23,
31:16
**bright** [1] - 30:6
**bright-line** [1] - 30:6
**brought** [2] - 28:1,
28:3
**Brown** [1] - 30:21
**build** [1] - 28:14
**BY** [4] - 2:3, 2:9, 2:19,
2:19

## C

CALLED [1] - 4:4
cannot [2] - 10:15, 14:24
Caremark [6] - 20:10, 20:12, 21:2, 21:4, 21:7, 21:14
carry [1] - 6:2
case [32] - 5:25, 6:12, 7:2, 7:6, 7:10, 8:4, 9:10, 9:17, 10:11, 10:23, 11:1, 11:16, 13:12, 19:17, 20:3, 20:6, 20:7, 22:15, 23:6, 24:12, 24:17, 27:4, 28:14, 30:6, 30:13, 30:20, 30:21, 31:4, 31:15, 31:19, 32:4, 32:16
cases [4] - 10:7, 10:9, 10:10, 23:21
CATHY [1] - 2:15
Cathy [2] - 33:5, 33:15
Cathy_Pepper@laed.uscourts.gov [2] - 2:17, 33:17
CCR [2] - 2:15, 33:15
CENTER [1] - 1:22
CERTIFICATE [1] - 33:3
CERTIFIED [1] - 2:15
Certified [1] - 33:5, 33:6, 33:15
certify [1] - 33:8
cetera [1] - 13:6
change [1] - 13:11
character [1] - 31:12
Circuit [2] - 9:19, 23:19
citations [1] - 32:4
cite [1] - 11:16
cited [3] - 10:10, 23:21, 30:6
citing [1] - 23:19
CIVIL [1] - 1:12
civil [1] - 7:20
claim [17] - 4:10, 5:5, 9:10, 9:15, 10:15, 10:24, 10:25, 11:2, 11:16, 12:2, 12:4, 15:5, 24:20, 25:7, 25:10, 29:5, 32:7
claimed [1] - 11:1
claiming [1] - 11:21
claims [2] - 14:1, 24:24
Clayton [6] - 14:23, 15:18, 16:4, 17:16,

17:22, 18:5
Clayton's [3] - 15:9, 18:11, 20:15
client [1] - 12:11
client's [1] - 31:8
clients [2] - 19:14, 20:22
closed [1] - 12:19
CO [1] - 1:14
COLLEGE [1] - 2:4
comment [1] - 22:2
comments [1] - 5:8
communicate [1] - 30:8
communicated [1] - 8:14
companies [1] - 6:24
compensation [1] - 10:12
complain [1] - 12:7
complaining [1] - 27:6
complete [2] - 31:20, 32:16
complied [1] - 32:14
complying [1] - 19:1
comprehension [1] - 16:3
computer [1] - 6:15
COMPUTER [1] - 2:19
conceded [1] - 24:16
conceding [2] - 24:2, 24:14
concern [4] - 27:7, 30:1, 30:4
concerned [1] - 27:6
concerning [1] - 17:19
concerns [1] - 29:21
concluded [1] - 32:23
confirm [1] - 15:22
consent [1] - 22:8
considered [1] - 31:1
contacted [2] - 15:21, 17:17
contain [1] - 5:3
contained [2] - 13:23, 14:21
contingency [3] - 23:22, 23:25, 24:5
CONTINUED [1] - 2:1
contract [3] - 13:13, 23:18, 23:22
contractual [6] - 10:19, 10:20, 11:11, 25:4, 25:14, 29:6
contributed [1] - 30:3
conversation [4] - 15:11, 16:6, 18:9, 18:12
copies [3] - 14:9,

18:22, 20:21
correct [4] - 8:13, 10:8, 12:9, 33:9
corrected [1] - 28:23
counsel [2] - 4:11, 4:24
couple [4] - 8:6, 10:4, 11:22, 27:3
course [4] - 5:1, 6:19, 8:3, 31:9
COURT [5] - 1:1, 1:18, 2:15, 4:4, 4:7
court [2] - 23:16, 30:22
Court [11] - 5:3, 9:11, 9:12, 12:4, 31:11, 32:1, 33:6, 33:7, 33:8, 33:16, 33:16
Crockett [3] - 30:21, 31:15, 32:4
CRR [2] - 2:15, 33:15

## D

dad [3] - 19:18, 21:18, 21:20
damage [2] - 26:21, 26:22
date [1] - 11:14
dated [2] - 15:18, 17:18
dates [1] - 21:10
days [5] - 23:4, 29:4, 29:18, 32:2, 32:9
de [2] - 22:9, 30:2
deal [1] - 18:17
death [2] - 29:24, 30:3
DECEASED [1] - 1:11
deceased [1] - 14:10
decedent [1] - 28:12
December [1] - 28:18
decide [1] - 5:24
decided [1] - 22:20
decision [1] - 23:9
decrease [1] - 9:21
deem [1] - 5:9
defendant [2] - 17:10, 17:12
defense [2] - 7:17
denials [3] - 26:3, 26:4, 26:6
denied [2] - 17:20, 18:8, 18:9
denies [8] - 14:7, 15:6, 15:7, 16:6, 17:21, 17:25, 18:3, 18:4
DeQueen [1] - 10:10
DESCRIPTION [1] - 3:12

desire [1] - 23:8
destroy [1] - 15:6
destroyed [1] - 21:6
detailed [1] - 18:11
determinations [1] - 31:10
determine [5] - 9:9, 9:21, 28:25, 29:7, 30:18
determined [1] - 10:13
devoted [1] - 31:8
died [1] - 28:18
difference [2] - 11:20, 22:19
different [1] - 17:6
difficulties [1] - 31:9
difficulty [2] - 21:16, 31:5
digital [1] - 14:14
dime [1] - 30:14
discharge [5] - 11:14, 12:14, 29:3, 29:4
discharged [1] - 10:11
discovery [1] - 23:8
discussing [1] - 18:13
discussion [1] - 12:22
disinterested [1] - 26:8
dismiss [1] - 23:5
dismissed [2] - 7:20, 8:2
disputed [1] - 4:9
disregard [1] - 17:23
District [3] - 33:7, 33:8, 33:16
DISTRICT [4] - 1:1, 1:1, 1:18, 1:18
Division [1] - 17:16
DOCKET [1] - 1:6
doctors [1] - 6:24
document [2] - 17:3, 17:13
DOCUMENT [1] - 1:9
documents [5] - 5:3, 5:4, 12:8, 17:8, 19:4
done [13] - 9:23, 22:15, 22:16, 23:18, 24:13, 24:15, 24:16, 24:17, 25:11, 26:20, 27:24
doubt [1] - 31:18
down [5] - 6:23, 6:24, 22:12, 25:23, 26:14
DRAWER [1] - 1:24
drove [1] - 19:24
drug [1] - 12:8
duration [12] - 6:23, 7:8, 7:19, 7:25, 8:2, 12:17, 19:8, 20:8, 23:3, 23:13, 28:16,

28:21
during [10] - 5:1, 7:11, 21:13, 21:20, 28:19, 29:23, 30:10, 30:12, 30:14, 31:9

## E

e-mail [5] - 15:9, 15:17, 15:21, 20:15, 26:8
E.D [1] - 1:12
Eastern [1] - 33:8
EASTERN [2] - 1:1, 1:18
effort [1] - 29:8
eight [1] - 31:8
elect [1] - 32:3
electronic [1] - 14:13
end [1] - 14:6
entered [1] - 11:11
entertain [2] - 5:1, 12:23
entire [4] - 13:13, 22:10, 22:12, 28:3
entitled [5] - 9:11, 10:17, 10:19, 11:13, 33:11
ER [2] - 28:4, 28:7
ESQUIRE [4] - 2:3, 2:9, 2:9, 2:10
essentially [1] - 31:19
establish [1] - 9:18
established [1] - 25:17
ESTATE [1] - 1:11
et [1] - 13:6
Eubanks [33] - 4:10, 4:21, 4:22, 5:6, 6:1, 6:14, 7:5, 7:13, 8:16, 8:18, 8:22, 8:23, 9:8, 11:10, 13:5, 13:7, 13:8, 13:9, 13:10, 13:11, 13:14, 13:19, 16:25, 17:1, 17:2, 26:18, 26:24, 27:4, 29:3, 29:20, 31:23
EUBANKS [5] - 2:7, 2:8, 2:10, 3:15, 3:16
Eubanks' [1] - 19:20
evidence [19] - 5:2, 5:18, 6:4, 9:7, 11:9, 12:4, 13:20, 14:6, 16:10, 16:18, 16:24, 17:5, 26:4, 26:5, 26:9, 27:21, 32:12, 32:17
exactly [1] - 19:9
except [2] - 6:17,

27:10
**exclusive** [1] - 12:3
**excuse** [1] - 21:19
**exhibit** [4] - 13:18, 16:17, 16:20, 16:21
**Exhibit** [3] - 14:22, 21:14, 25:2
**exhibits** [7] - 5:11, 13:17, 14:21, 16:19, 21:22, 31:16, 32:17
**existed** [1] - 23:13
**experience** [2] - 31:2, 31:11
**Express** [1] - 9:20
**extent** [2] - 31:5, 31:7

**F**

**F/K/A** [1] - 2:7
**facility** [2] - 12:9, 19:3
**fact** [4] - 14:8, 22:23, 24:16, 24:18
**factors** [5] - 9:21, 24:7, 28:24, 30:20, 31:1
**faith** [2] - 25:14, 30:5
**Fallon** [2] - 11:23, 24:23
**far** [1] - 21:3
**father** [3] - 23:4, 28:2, 28:4
**fax** [1] - 15:3
**February** [1] - 17:16
**federal** [1] - 23:16
**Federal** [1] - 32:2
**fee** [14] - 9:19, 9:20, 9:22, 9:23, 10:19, 23:17, 23:22, 23:25, 25:4, 25:10, 25:14, 29:6, 30:14, 30:25
**fees** [2] - 10:12, 24:5
**felt** [2] - 22:7, 23:12
**few** [5] - 13:25, 26:1, 29:4, 29:12, 29:18
**fewer** [2] - 6:17, 9:2
**Fifth** [2] - 9:19, 23:19
**fight** [2] - 30:12, 30:14
**figure** [1] - 6:22
**file** [3] - 22:24, 27:14, 32:15
**filed** [13] - 7:19, 7:22, 11:10, 11:22, 13:8, 13:9, 13:12, 18:1, 18:6, 22:24, 24:20, 24:22, 25:13
**final** [1] - 24:18
**fire** [1] - 22:20
**fired** [4] - 10:18, 30:9, 30:15, 31:18

**firing** [1] - 22:22
**Firm** [2] - 6:1, 6:14
**firm** [7] - 11:13, 13:10, 13:13, 22:20, 22:24, 27:5, 29:15
**firms** [1] - 24:5
**first** [16] - 5:7, 9:4, 13:16, 13:18, 14:1, 16:14, 17:6, 17:11, 19:10, 20:10, 21:24, 21:25, 26:2, 28:4, 28:19, 29:15
**five** [1] - 31:6
**flags** [1] - 27:18
**floor** [1] - 7:13
**Flournoya** [1] - 19:24
**focused** [1] - 32:10
**followed** [4] - 18:13, 20:10, 20:13, 24:22
**following** [2] - 12:10, 30:25
**FOR** [3] - 1:10, 2:3, 2:6
**foregoing** [1] - 33:9
**form** [2] - 26:3, 28:22
**formal** [1] - 32:1
**former** [1] - 7:4
**forms** [2] - 20:5, 28:20
**forth** [3] - 9:19, 11:12, 24:7
**forward** [1] - 5:7
**four** [1] - 31:4
**front** [1] - 5:23
**full** [7] - 7:8, 7:19, 7:25, 8:2, 12:17, 16:2, 25:13
**funds** [1] - 10:2

**G**

**Gary** [6] - 4:10, 4:20, 4:21, 4:22, 13:10, 13:11
**GARY** [6] - 2:6, 2:7, 2:8, 2:9, 2:10
**gas** [1] - 19:24
**gather** [1] - 6:4
**general** [2] - 19:6, 24:10
**generally** [2] - 18:25, 19:3
**Georgia** [1] - 9:20
**get..** [1] - 23:24
**given** [5] - 8:2, 12:16, 14:9, 26:16, 28:15
**Glenn** [2] - 4:13, 4:15
**GLENN** [1] - 2:3
**grab** [1] - 16:13
**grabbed** [1] - 30:20

**Gravel** [1] - 10:10
**guide** [1] - 31:12
**guy** [1] - 21:3

**H**

**handling** [1] - 13:12
**hands** [1] - 27:22
**happy** [1] - 12:23
**hard** [1] - 26:21
**HARDING** [2] - 1:22, 1:23
**harm** [3] - 6:21, 26:11
**head** [1] - 24:9
**HEARD** [1] - 1:17
**hearing** [4] - 4:8, 4:9, 5:5, 23:4
**HEARING** [1] - 1:17
**heart** [2] - 29:25
**held** [1] - 10:3
**help** [4] - 7:10, 9:7, 16:16, 28:14
**helpful** [1] - 20:10
**hereby** [1] - 33:8
**Highway** [1] - 9:20
**hill** [1] - 19:23
**himself** [2] - 6:22, 28:17
**hired** [4] - 21:4, 21:6, 21:11, 28:19
**HOLT** [3] - 2:6, 2:8, 2:9
**Holt** [4] - 4:20, 4:22, 13:5, 13:11
**Honor** [8] - 5:19, 10:16, 11:23, 19:22, 23:7, 24:18, 25:23, 32:20
**hornbook** [1] - 26:2
**hourly** [6] - 9:18, 9:23, 9:24, 11:4, 24:4, 24:5
**hours** [1] - 11:5
**housekeeping** [1] - 5:10
**hunting** [1] - 19:24

**I**

**i.e** [1] - 30:25
**identify** [1] - 13:3
**immediately** [1] - 15:24
**importance** [1] - 31:4
**important** [3] - 8:5, 8:25, 20:14
**improve** [1] - 27:4
**IN** [1] - 1:4

**INC** [1] - 1:14
**included** [7] - 13:17, 14:5, 18:15, 18:16, 24:8, 25:2, 25:13
**incorrect** [1] - 14:17
**increase** [1] - 9:21
**indicate** [1] - 26:10
**indicated** [4] - 14:11, 18:22, 19:11, 22:11
**indication** [1] - 20:12
**INDIVIDUALLY** [1] - 1:10
**information** [5] - 7:5, 8:15, 12:15, 15:7, 15:13
**informed** [1] - 20:11
**ingestion** [1] - 18:19
**initial** [4] - 6:5, 6:16, 14:2, 28:10
**insight** [1] - 28:15
**instances** [1] - 30:7
**instructions** [4] - 6:3, 9:14, 12:11
**insurance** [2] - 6:23, 21:7
**interest** [1] - 26:11
**interested** [1] - 19:13
**interesting** [1] - 18:11
**interestingly** [4] - 15:5, 15:10, 19:7, 22:21
**interrogatory** [1] - 26:5
**interview** [3] - 6:16, 28:10, 28:19
**introduce** [2] - 5:8, 13:17
**introduced** [1] - 32:17
**introduction** [1] - 5:2
**involved** [1] - 20:12
**involving** [2] - 4:9, 4:10
**irrelevant** [1] - 7:21
**issue** [9] - 5:24, 18:25, 25:19, 26:11, 27:15, 30:11, 31:25, 32:5, 32:10
**issued** [2] - 19:2, 32:13
**issues** [1] - 24:22
**items** [1] - 32:12
**itself** [1] - 15:8

**J**

**January** [4] - 20:15, 20:23, 29:16, 29:17
**Johnie** [7] - 4:10, 14:10, 14:20, 17:20,

21:9, 28:12, 29:22
**JOHNIE** [1] - 1:11
**Johnson** [1] - 9:20
**JR** [1] - 2:3
**Judge** [3] - 5:20, 11:23, 24:23
**judgment** [1] - 31:1
**July** [1] - 28:6
**June** [1] - 28:11
**JUNEAU** [47] - 1:17, 1:22, 4:14, 4:17, 4:23, 5:14, 5:17, 5:21, 8:6, 8:9, 8:18, 8:22, 8:24, 10:4, 10:9, 10:20, 10:23, 11:8, 11:20, 11:25, 12:6, 12:13, 12:21, 12:25, 13:3, 13:7, 13:15, 13:19, 15:15, 15:17, 15:20, 16:2, 16:8, 16:11, 16:15, 16:20, 16:23, 17:8, 17:13, 19:20, 21:19, 23:24, 25:24, 29:1, 29:10, 29:14, 31:24

**K**

**keep** [4] - 20:17, 21:3, 21:5, 24:5
**kept** [2] - 20:6, 21:8
**kind** [2] - 6:24, 26:1
**knowing** [1] - 29:8
**knowledge** [1] - 31:11
**known** [2] - 4:21, 8:25
**Kroger** [21] - 6:6, 6:13, 7:11, 14:9, 14:13, 14:15, 14:24, 15:5, 15:8, 17:16, 17:22, 18:6, 18:19, 18:21, 19:17, 26:8, 26:22, 27:16, 27:19, 27:20, 27:21
**Kroger's** [3] - 8:10, 8:11, 12:8

**L**

**LA** [2] - 1:12, 1:24
**labor** [1] - 31:8
**lack** [1] - 30:1
**LAFAYETTE** [1] - 1:24
**last** [1] - 32:12
**law** [14] - 10:18, 20:17, 23:1, 23:5, 23:15, 23:17, 23:20, 23:21, 25:20, 26:2, 30:5, 30:17, 31:15, 32:6
**Law** [2] - 6:1, 6:14

**lawsuit** [6] - 7:20, 7:22, 8:3, 14:5, 22:20, 23:5
**lawyer** [2] - 6:4, 22:22
**learned** [3] - 6:20, 7:12, 23:2
**learning** [1] - 31:2
**left** [2] - 15:11, 18:12
**lengthy** [1] - 32:9
**less** [3] - 27:11, 27:17, 27:19
**letter** [8] - 14:11, 14:12, 14:23, 15:9, 17:18, 17:23, 19:1, 22:21
**letters** [1] - 23:11
**level** [2] - 7:3, 7:8
**Liability** [1] - 4:8
**LIABILITY** [1] - 1:5
**lien** [9] - 4:9, 10:6, 10:12, 11:10, 13:9, 23:16, 24:21, 25:4, 30:16
**limitations** [1] - 7:23
**line** [1] - 30:6
**linked** [1] - 29:25
**LITIGATION** [1] - 1:5
**litigation** [4] - 30:10, 30:15, 31:7, 31:9
**LITTLE** [1] - 2:11
**loadstar** [2] - 9:18, 9:19
**logs** [3] - 20:16, 20:20, 20:25
**look** [6] - 9:20, 9:22, 21:10, 24:8, 24:10, 28:24
**looked** [1] - 26:12
**looking** [5] - 16:20, 17:2, 23:11, 23:15, 29:24
**loose** [1] - 5:21
**lost** [2] - 9:3, 9:4
**Louisiana** [3] - 23:20, 33:7, 33:8
**LOUISIANA** [4] - 1:1, 1:7, 1:18, 2:16
**lower** [2] - 26:16, 26:17

**M**

**mail** [6] - 15:3, 15:9, 15:17, 15:21, 20:15, 26:8
**man** [1] - 8:20
**March** [1] - 29:17
**mark** [2] - 5:17, 13:19
**marked** [3] - 16:25,

17:1, 28:21
**MASTER** [49] - 1:17, 1:22, 3:17, 3:18, 4:14, 4:17, 4:23, 5:14, 5:17, 5:21, 8:6, 8:9, 8:18, 8:22, 8:24, 10:4, 10:9, 10:20, 10:23, 11:8, 11:20, 11:25, 12:6, 12:13, 12:21, 12:25, 13:3, 13:7, 13:15, 13:19, 15:15, 15:17, 15:20, 16:2, 16:8, 16:11, 16:15, 16:20, 16:23, 17:8, 17:13, 19:20, 21:19, 23:24, 25:24, 29:1, 29:10, 29:14, 31:24
**Master** [13] - 7:3, 7:7, 7:24, 12:17, 12:19, 21:23, 22:9, 22:14, 29:19, 29:22, 31:21, 32:12, 32:15
**master** [1] - 8:1
**matter** [7] - 4:7, 5:11, 14:16, 31:4, 31:25, 32:18, 33:11
**MDL** [2] - 1:6, 4:8
**mean** [1] - 12:21
**measuring** [1] - 30:24
**MECHANICAL** [1] - 2:19
**medical** [4] - 19:2, 19:3, 19:15, 28:3
**medication** [1] - 30:3
**meet** [1] - 19:24
**meeting** [3] - 6:5, 14:2, 19:10
**memorandum** [2] - 10:5, 10:6
**mention** [1] - 28:15
**mentioned** [1] - 5:11
**MERCK** [1] - 1:14
**Merit** [1] - 33:6
**meruit** [18] - 9:11, 10:13, 10:15, 10:24, 10:25, 11:1, 11:2, 11:6, 11:17, 11:19, 12:2, 23:22, 24:1, 24:20, 25:15, 29:5, 30:25, 32:7
**microphone** [1] - 4:14
**middle** [1] - 15:20
**might** [1] - 7:12
**MINTON** [1] - 2:3
**minute** [2] - 8:10, 11:9
**mitigate** [1] - 6:21
**Mobley** [1] - 30:6
**money** [4] - 19:12, 19:13, 22:19, 23:10

**months** [4] - 26:13, 28:18, 29:16, 29:18
**most** [2] - 20:14, 24:6
**motion** [2] - 23:4, 24:23
**motions** [3] - 15:23, 18:1, 18:6
**MR** [28] - 3:5, 3:7, 4:13, 4:15, 4:18, 5:10, 5:16, 5:19, 5:22, 8:8, 8:13, 8:20, 8:23, 8:25, 10:8, 10:16, 10:22, 10:25, 11:18, 11:22, 12:1, 12:10, 12:18, 12:23, 13:2, 26:1, 29:4, 32:20
**MS** [24] - 3:6, 3:8, 4:20, 13:5, 13:8, 13:16, 13:21, 15:16, 15:19, 16:1, 16:4, 16:9, 16:13, 16:17, 16:22, 17:4, 17:10, 17:14, 19:22, 21:20, 23:25, 29:12, 29:15, 32:21
**must** [1] - 23:15

**N**

**name** [1] - 13:10
**named** [1] - 15:18
**nature** [2] - 31:5, 31:7
**necessarily** [1] - 27:4
**necessary** [1] - 32:6
**need** [3] - 15:13, 18:21, 27:23
**needed** [3] - 4:10, 18:20, 25:7
**needs** [1] - 25:11
**never** [5] - 6:12, 6:13, 11:4, 14:15, 27:5
**NEW** [2] - 1:7, 2:16
**next** [4] - 12:13, 17:21, 32:2, 32:9
**NO** [2] - 1:6, 1:12
**nonactivity** [1] - 12:6
**none** [1] - 6:25
**Nonetheless** [1] - 21:12
**note** [3] - 18:11, 22:1, 32:14
**notebooks** [2] - 5:12, 11:3
**noted** [1] - 21:13
**nothing** [6] - 9:24, 12:18, 12:19, 24:15, 24:16, 26:5
**notice** [8] - 11:9, 12:4,

13:9, 24:20, 24:22, 25:6, 25:10, 25:12
**noticed** [2] - 11:9, 27:15
**notification** [2] - 25:5, 25:6
**November** [2] - 28:5, 28:6
**novo** [2] - 22:9, 30:2
**Number** [1] - 4:8
**number** [5] - 11:19, 17:14, 17:15, 18:4, 19:10
**numbered** [1] - 33:11
**numerous** [1] - 20:4

**O**

**obtain** [3] - 8:19, 20:7, 23:13
**obtained** [10] - 6:8, 6:14, 6:15, 7:6, 8:9, 8:16, 20:21, 29:3, 29:15, 31:10
**obtaining** [4] - 12:8, 19:15, 21:17, 23:2
**obviously** [2] - 20:22, 24:5
**occasions** [1] - 12:12
**occurred** [5] - 7:9, 7:16, 9:1, 18:9
**OCTOBER** [2] - 1:7, 4:2
**October** [1] - 17:18
**OF** [4] - 1:1, 1:11, 1:17, 1:18
**offer** [1] - 5:11
**office** [4] - 15:21, 17:17, 19:20, 20:4
**Office** [1] - 17:16
**Official** [2] - 33:7, 33:16
**OFFICIAL** [1] - 2:15
**Oldie** [11] - 15:1, 15:6, 15:10, 15:11, 16:5, 16:14, 17:5, 17:12, 17:15, 17:20, 18:8
**Oldie's** [2] - 16:9, 17:11
**once** [2] - 6:20, 9:9
**one** [17] - 5:24, 6:15, 6:16, 6:17, 8:13, 10:9, 11:19, 16:22, 17:1, 27:10, 27:11, 28:20, 29:21, 30:9, 31:1, 32:12
**opening** [1] - 11:3
**opportunity** [1] - 25:25

**opposition** [2] - 5:6, 5:7
**Order** [1] - 9:13
**ORDER** [1] - 4:4
**order** [4] - 4:25, 11:5, 11:23, 32:13
**original** [1] - 29:21
**ORLEANS** [2] - 1:7, 2:16
**outlook** [2] - 26:15
**outside** [1] - 20:9
**owe** [1] - 30:14
**own** [2] - 23:8, 31:11

**P**

**P.A** [2] - 2:7, 2:8
**page** [2] - 17:14, 18:4
**PAGE** [2] - 3:3, 3:12
**paid** [2] - 7:18, 11:15
**paper** [14] - 6:6, 6:9, 6:11, 6:13, 6:14, 6:15, 7:12, 9:8, 14:14, 18:17, 18:21, 27:2, 27:12, 27:23
**papers** [1] - 16:16
**paragraph** [1] - 11:12
**part** [6] - 15:20, 20:2, 22:11, 22:12, 24:20, 31:16
**parties** [5] - 5:2, 10:17, 11:12, 31:3, 32:2
**party** [1] - 32:13
**PATRICK** [2] - 1:17, 1:22
**payment** [2] - 30:10, 30:12
**pending** [2] - 9:5, 26:18
**Pepper** [3] - 33:5, 33:14, 33:15
**PEPPER** [1] - 2:15
**performed** [2] - 31:17, 31:19
**period** [10] - 7:11, 14:20, 17:22, 19:18, 20:17, 21:5, 21:13, 21:21, 22:17, 28:3
**permitted** [1] - 31:11
**personally** [1] - 7:6
**pharmaceutical** [1] - 17:19
**pharmacies** [1] - 20:11
**pharmacist** [4] - 7:4, 8:14, 8:15, 8:17
**Pharmacy** [4] - 6:6, 7:11, 18:6, 18:19

**pharmacy** [11] - 12:9, 18:25, 19:3, 19:15, 19:23, 20:22, 21:5, 22:23, 23:14, 28:5, 28:8
**pharmacy's** [1] - 22:3
**Pharmacy's** [1] - 26:8
**phonetically** [1] - 15:1
**picked** [1] - 20:19
**piece** [1] - 6:15
**pills** [1] - 28:13
**place** [1] - 16:7
**plaintiff** [1] - 20:5
**plaintiff's** [1] - 17:11
**plan** [2] - 24:24, 24:25
**pleading** [1] - 17:9
**pleadings** [4] - 16:14, 16:18, 16:19, 31:6
**plus** [1] - 27:14
**point** [5] - 8:13, 10:25, 16:11, 21:6, 24:13
**points** [1] - 9:2
**POTTER** [1] - 2:3
**POYDRAS** [1] - 2:16
**practice** [2] - 19:3, 19:6
**precise** [2] - 32:5, 32:10
**preparation** [1] - 31:6
**prepared** [1] - 21:21
**prescribed** [1] - 28:4
**prescription** [7] - 14:9, 14:19, 18:13, 18:14, 21:18, 22:3, 29:23
**prescriptions** [3] - 6:17, 21:8, 21:12
**PRESENT** [1] - 2:13
**presented** [3] - 7:4, 12:2, 31:9
**preservation** [7] - 14:11, 14:12, 15:8, 17:19, 17:23, 19:1, 27:7
**preserve** [2] - 14:13, 14:15
**preserved** [1] - 14:16
**presumably** [1] - 12:4
**Pretrial** [1] - 9:13
**pretty** [3] - 6:2, 26:2, 26:9
**previously** [1] - 25:13
**primarily** [1] - 12:10
**primary** [2] - 13:12, 13:14
**printout** [6] - 6:7, 6:15, 15:2, 18:18, 27:10, 27:13, 27:16, 28:5
**problems** [2] - 28:16,

29:25
**proceed** [2] - 4:16, 4:19
**proceeding** [1] - 23:18
**proceedings** [4] - 5:1, 31:6, 32:22, 33:10
**PROCEEDINGS** [3] - 1:17, 2:19, 4:1
**process** [6] - 15:22, 15:24, 17:24, 18:7, 18:10, 20:3
**produced** [1] - 20:23
**PRODUCED** [1] - 2:19
**PRODUCTS** [1] - 1:4
**Products** [1] - 4:8
**professional** [1] - 31:2
**profile** [1] - 20:5
**proof** [4] - 11:5, 18:19, 22:2, 32:6
**propounded** [2] - 17:12, 23:8
**prove** [8] - 6:23, 9:12, 11:5, 19:8, 19:11, 20:8, 23:20
**proven** [1] - 9:16
**provide** [1] - 19:4
**provided** [1] - 18:22
**proving** [4] - 11:18, 11:21, 28:16, 32:6
**PTO** [1] - 24:19
**purge** [4] - 15:24, 17:24, 18:7, 18:10
**purging** [1] - 15:22
**purposes** [4] - 4:11, 4:23, 5:13, 18:18
**pursuant** [1] - 32:1
**pursue** [3] - 22:20, 24:11, 26:18
**pursued** [1] - 13:13
**pursuing** [2] - 23:10, 24:19
**put** [4] - 9:19, 12:3, 16:15, 32:11

## Q

**quantum** [18] - 9:11, 10:13, 10:15, 10:24, 10:25, 11:1, 11:2, 11:6, 11:17, 11:18, 12:2, 23:22, 24:1, 24:20, 25:15, 29:5, 30:25, 32:6
**questions** [11] - 8:7, 10:5, 12:24, 13:1, 25:22, 26:10, 28:21, 29:9, 29:11, 31:23, 31:24

## R

**rate** [2] - 9:18, 11:5
**rates** [1] - 9:24
**rather** [1] - 13:24
**rattle** [1] - 24:8
**RE** [1] - 1:4
**re** [1] - 4:8
**read** [2] - 10:5, 10:23
**ready** [2] - 4:15, 4:18
**really** [2] - 6:25, 19:2
**Realtime** [2] - 33:5, 33:15
**REALTIME** [1] - 2:15
**reasonable** [15] - 6:3, 6:4, 9:18, 9:22, 11:13, 11:15, 12:11, 24:10, 25:3, 25:5, 25:15, 29:6, 30:19, 30:24, 31:13
**reasons** [2] - 6:2, 10:1
**rebut** [1] - 25:25
**received** [10] - 4:24, 5:18, 13:20, 15:2, 15:8, 16:24, 18:15, 25:5, 25:6, 25:11
**recommendation** [1] - 32:1
**record** [11] - 4:7, 4:11, 4:24, 5:13, 13:4, 21:9, 22:10, 25:18, 28:7, 32:16, 33:10
**RECORDED** [1] - 2:19
**records** [57] - 6:7, 6:9, 6:11, 6:13, 6:14, 7:12, 7:14, 8:12, 9:3, 9:8, 9:17, 9:24, 12:20, 14:9, 14:13, 14:18, 14:19, 14:25, 15:2, 15:3, 15:6, 15:12, 17:19, 18:13, 18:14, 18:15, 18:16, 18:17, 18:18, 18:21, 18:23, 19:2, 19:15, 19:16, 20:15, 20:16, 21:3, 21:4, 21:5, 21:10, 21:11, 21:17, 22:23, 23:14, 24:11, 26:23, 26:24, 27:2, 27:5, 27:12, 27:23, 28:3, 28:5, 28:8, 30:1
**red** [1] - 27:18
**redacted** [1] - 20:22
**redo** [1] - 25:9
**reference** [1] - 29:2
**referred** [1] - 32:4
**refused** [2] - 6:10, 9:8
**refusing** [1] - 19:4

**regard** [1] - 29:5
**regarding** [2] - 11:6, 28:19
**Registered** [1] - 33:5
**rehash** [1] - 13:24
**reinstate** [2] - 15:24, 18:6
**RELATES** [1] - 1:9
**relationship** [2] - 22:22, 31:3
**relevant** [5] - 14:6, 16:10, 16:18, 17:5, 17:8
**reliable** [1] - 26:9
**rendered** [1] - 11:7
**repair** [2] - 26:20, 26:22
**repeat** [1] - 23:24
**reply** [2] - 11:2, 11:4
**report** [2] - 16:3, 32:11
**REPORTER** [2] - 2:15, 2:15
**reporter** [1] - 30:22
**Reporter** [6] - 33:5, 33:6, 33:7, 33:15, 33:16
**REPORTER'S** [1] - 33:3
**represent** [2] - 13:7, 13:8
**request** [18] - 6:13, 12:20, 14:4, 14:19, 16:9, 16:14, 17:6, 17:11, 17:14, 17:21, 18:2, 18:4, 19:5, 19:9, 26:3, 26:4, 27:9, 32:8
**requested** [3] - 14:16, 14:19, 23:3
**requesting** [1] - 27:9
**requests** [1] - 16:5
**required** [8] - 4:25, 5:3, 5:4, 12:1, 19:5, 20:17, 20:25, 24:19
**requires** [2] - 9:19, 25:21
**research** [1] - 31:5
**respect** [2] - 18:24, 30:5
**respective** [2] - 4:24, 5:2
**respond** [3] - 13:16, 13:24, 29:12
**responding** [1] - 19:1
**response** [11] - 14:4, 14:23, 15:1, 16:14, 17:5, 17:11, 18:2, 19:4, 19:9, 26:2, 31:20
**responses** [1] - 26:3

**results** [1] - 31:10
**retain** [1] - 10:12
**retired** [4] - 6:24, 8:14, 8:15, 19:23
**reversed** [1] - 8:1
**review** [7] - 7:3, 7:8, 22:9, 22:10, 22:12, 30:2
**reviewed** [4] - 10:9, 20:5, 21:21
**RMR** [2] - 2:15, 33:15
**road** [1] - 26:14
**Robert** [2] - 15:21, 17:17
**ROCK** [1] - 2:11
**ROOM** [1] - 2:16
**Rosie** [1] - 28:12
**roughly** [1] - 22:18
**Roundtree** [9] - 6:6, 6:8, 6:11, 14:2, 14:4, 14:14, 15:7, 19:9
**Roundtree's** [2] - 15:21, 17:17
**rule** [1] - 30:6
**Rules** [1] - 32:2
**ruling** [1] - 12:17
**run** [4] - 7:23, 22:25, 23:1

## S

**s/Cathy** [1] - 33:14
**Salmon** [1] - 11:16
**Sand** [1] - 10:10
**scheduled** [1] - 4:9
**scheduling** [2] - 4:25, 32:13
**SECOND** [1] - 2:10
**second** [7] - 7:3, 7:8, 7:13, 9:5, 14:18, 24:21, 32:14
**SECTION** [1] - 1:6
**section** [1] - 22:2
**see** [5] - 7:14, 17:8, 21:12, 22:13
**seeing** [1] - 30:2
**send** [4] - 15:12, 15:13, 27:23, 32:8
**sent** [6] - 6:12, 8:20, 14:11, 15:1, 18:13, 27:17
**separate** [1] - 17:10
**services** [14] - 11:6, 11:7, 11:14, 11:15, 25:3, 25:5, 25:15, 29:7, 29:8, 30:19, 30:25, 31:5, 31:12, 31:14
**set** [2] - 17:11, 24:7

**settlement** [1] - 18:18
**seven** [1] - 31:8
**several** [1] - 26:25
**show** [2] - 7:15, 22:2
**showed** [4] - 20:19, 21:10, 27:11, 27:17
**showing** [2] - 20:25, 27:19
**shows** [2] - 23:21, 27:22
**sic** [1] - 19:23
**sides** [3] - 25:18, 32:5, 32:14
**sign** [1] - 8:21
**signature** [3] - 20:16, 20:20, 20:25
**signatures** [1] - 20:22
**signed** [4] - 11:23, 20:2, 21:22, 28:22
**simple** [1] - 6:2
**simply** [1] - 16:15
**simultaneously** [1] - 32:3
**sit** [1] - 25:23
**sitting** [1] - 5:22
**situation** [2] - 23:16, 23:17
**six** [1] - 31:6
**skill** [1] - 31:2
**slogan** [1] - 30:13
**slowly** [1] - 30:23
**someone** [5] - 5:22, 8:20, 10:14, 15:18, 28:14
**sorry** [1] - 21:24
**sort** [1] - 23:11
**sought** [1] - 20:7
**SPEAKERS** [1] - 3:3
**speaking** [1] - 20:24
**Special** [13] - 7:3, 7:7, 7:24, 12:17, 12:19, 21:23, 22:9, 22:14, 29:19, 29:22, 31:21, 32:12, 32:15
**SPECIAL** [49] - 1:17, 1:22, 3:17, 3:18, 4:14, 4:17, 4:23, 5:14, 5:17, 5:21, 8:6, 8:9, 8:18, 8:22, 8:24, 10:4, 10:9, 10:20, 10:23, 11:8, 11:20, 11:25, 12:6, 12:13, 12:21, 12:25, 13:3, 13:7, 13:15, 13:19, 15:15, 15:17, 15:20, 16:2, 16:8, 16:11, 16:15, 16:20, 16:23, 17:8, 17:13, 19:20, 21:19, 23:24, 25:24, 29:1, 29:10, 29:14,

31:24
**specific** [1] - 15:10
**spelled** [1] - 15:1
**spend** [1] - 23:9
**spent** [4] - 8:3, 23:6, 23:7, 29:8
**ST** [1] - 1:23
**standing** [1] - 31:2
**start** [3] - 5:5, 5:7, 28:6
**started** [3] - 6:20, 6:21, 28:6
**State** [1] - 33:6
**state** [1] - 23:17
**statement** [1] - 30:18
**States** [2] - 33:7, 33:16
**STATES** [2] - 1:1, 1:18
**station** [1] - 19:24
**statute** [5] - 7:23, 10:6, 22:25, 25:4, 25:13
**STENOGRAPHY** [1] - 2:19
**STEPHENS** [5] - 1:10, 1:11, 2:3, 2:13, 3:14
**Stephens** [42] - 4:10, 4:15, 4:17, 4:18, 5:12, 5:18, 5:25, 6:5, 6:16, 6:18, 6:19, 7:4, 7:9, 7:18, 7:22, 8:11, 8:14, 9:2, 10:3, 14:1, 14:8, 14:10, 14:11, 14:20, 17:20, 19:8, 19:10, 20:1, 20:2, 21:9, 21:17, 22:11, 22:17, 26:21, 27:3, 27:7, 27:18, 28:1, 28:12, 28:17, 29:22
**Stephens'** [2] - 19:16, 22:8
**Stephens's** [1] - 22:4
**steps** [1] - 6:3
**still** [8] - 7:12, 9:5, 9:16, 10:22, 14:11, 24:1, 24:3, 28:13
**stops** [1] - 25:19
**store** [2] - 6:8, 6:9
**STREET** [2] - 2:10, 2:16
**stumbled** [1] - 28:17
**subject** [1] - 31:4
**submission** [1] - 10:5
**submissions** [2] - 9:25, 11:3
**submit** [5] - 12:4, 18:19, 22:1, 22:9, 32:3
**submitted** [26] - 5:12, 5:15, 7:7, 9:17, 11:4,

12:14, 12:15, 12:18, 12:20, 13:23, 16:18, 16:19, 17:3, 18:20, 19:19, 20:1, 21:23, 21:24, 22:6, 22:14, 25:10, 28:20, 28:23, 29:19, 31:17
**subpoena** [6] - 6:10, 6:12, 18:24, 18:25, 19:2, 27:23
**subpoenaing** [1] - 12:7
**subsequent** [2] - 13:10, 29:2
**successful** [3] - 7:1, 22:8, 23:2
**sue** [3] - 22:19, 22:23
**sufficiency** [1] - 25:12
**sufficient** [4] - 18:19, 25:7, 25:11, 25:16
**sufficiently** [1] - 25:17
**suit** [1] - 22:24
**SUITE** [2] - 1:23, 2:4
**superior** [1] - 17:17
**support** [1] - 12:5
**Susan** [4] - 14:23, 15:18, 17:16, 18:5
**suspicious** [1] - 28:17
**swore** [1] - 19:18

**T**

**tabs** [1] - 17:6
**terminate** [2] - 6:1, 12:22
**terminated** [4] - 10:7, 24:13, 24:15, 29:16
**terminating** [1] - 22:21
**termination** [10] - 7:16, 9:1, 9:10, 10:2, 26:13, 26:14, 27:8, 28:25, 29:17, 29:18
**Thames** [6] - 4:13, 4:15, 13:25, 19:7, 23:19, 25:25
**THAMES** [27] - 2:3, 4:13, 4:15, 4:18, 5:10, 5:16, 5:19, 5:22, 8:8, 8:13, 8:20, 8:23, 8:25, 10:8, 10:16, 10:22, 10:25, 11:18, 11:22, 12:1, 12:10, 12:18, 12:23, 13:2, 26:1, 29:4, 32:20
**THAMES.....................
.......................... [2] -
3:5, 3:7**

**THE** [5] - 1:10, 1:18, 1:22, 4:7
**thesis** [1] - 32:9
**they've** [3] - 11:4, 18:17, 24:16
**THIS** [1] - 1:9
**thorough** [1] - 14:14
**three** [1] - 31:3
**threw** [1] - 27:13
**throughout** [3] - 20:3, 20:6, 20:7
**timeline** [2] - 15:9, 31:17
**TO** [2] - 1:9, 4:4
**took** [5] - 16:6, 19:18, 21:18, 21:20, 23:4
**top** [1] - 24:9
**total** [1] - 22:10
**towards** [2] - 14:6, 17:4
**track** [1] - 6:24
**tracked** [1] - 6:23
**transcript** [1] - 33:9
**TRANSCRIPT** [2] - 1:17, 2:19
**tried** [2] - 6:9, 6:24
**true** [3] - 7:21, 22:25, 33:9
**trust** [1] - 10:3
**try** [8] - 7:10, 7:14, 9:7, 9:8, 26:20, 26:24, 30:16, 30:22
**trying** [3] - 6:21, 6:22, 9:7
**twice** [1] - 7:2
**two** [5] - 12:12, 16:25, 27:14, 31:3, 32:12
**TX** [1] - 2:4
**TYLER** [1] - 2:4

**U**

**ultimately** [4] - 7:2, 7:18, 12:16, 26:13
**under** [10] - 13:14, 17:4, 18:20, 23:5, 25:3, 30:17, 31:14, 31:15, 31:25, 32:6
**undisputed** [1] - 10:17
**UNITED** [2] - 1:1, 1:18
**United** [2] - 33:7, 33:16
**unsuccessful** [1] - 22:7
**up** [22] - 5:22, 6:23, 6:25, 7:4, 9:12, 9:16, 11:5, 11:18, 11:21, 18:13, 19:8, 19:17, 19:24, 20:10, 20:13,

20:19, 24:22, 24:23, 24:24, 27:18, 29:24, 32:6
**upheld** [1] - 26:17
**upstairs** [1] - 7:13

**V**

**value** [14] - 11:5, 11:6, 11:13, 11:15, 25:3, 25:5, 25:15, 29:6, 29:7, 30:19, 30:24, 31:13
**verified** [2] - 14:5, 16:6
**Vioxx** [6] - 4:8, 19:14, 20:8, 21:20, 28:2, 28:4
**VIOXX** [1] - 1:4
**visit** [1] - 28:4
**volumes** [1] - 16:25

**W**

**wait** [1] - 17:23
**waited** [1] - 27:14
**waiting** [1] - 31:20
**WALAS** [23] - 2:9, 4:20, 13:5, 13:8, 13:16, 13:21, 15:16, 15:19, 16:1, 16:4, 16:9, 16:13, 16:17, 16:22, 17:4, 17:10, 17:14, 19:22, 21:20, 23:25, 29:12, 29:15, 32:21
**Walas** [2] - 4:20, 13:5
**WALAS......................
............................ [2] -
3:6, 3:8**
**WEDNESDAY** [2] - 1:7, 4:2
**WEST** [1] - 2:10
**whereas** [1] - 16:23
**WHEREUPON** [1] - 32:22
**whole** [1] - 20:3
**wife** [1] - 28:12
**win** [2] - 9:6, 30:13
**winning** [1] - 7:20
**won** [1] - 7:18
**word** [2] - 15:23, 19:7
**worthwhile** [1] - 26:19
**wound** [1] - 6:25
**Wren** [1] - 10:10
**written** [1] - 12:8
**WRW** [1] - 1:13

## Y

y'all [1] - 32:8
year [1] - 22:18
years [5] - 6:20, 11:22,
   26:25, 27:14, 28:18
yourself [1] - 13:3