UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: VIOXX<br><br>PRODUCTS LIABILITY LITIGATION<br>SECTION L<br><br>This document relates to:<br><br>ALL COMMON<br>BENEFIT FEE APPLICANTS | MDL Docket No. 1657<br><br><br><br><br><br>JUDGE FALLON<br>MAG. JUDGE KNOWLES |

**FEE ALLOCATION COMMITTEE'S
OPPOSITION TO APPEAL OF CERTAIN RULINGS
OF SPECIAL MASTER DURING FEE HEARING**

The Fee Allocation Committee urges the Court to deny the Objectors' Appeal from Certain Rulings of Special Master Juneau Made during the May 9-13, 2011 Hearing. The Special Master's decisions should be affirmed as to each issue.

**I.   Special Master's Decision Regarding Scope of Discovery Should Be Affirmed**

As the Special Master has noted, extensive discovery has taken place in these proceedings. See Tr. of May 9, 2011, at 8-9. In his Order of March 31, 2011, the Special Master ordered the deposition of a Fee Allocation Committee designee. In all other respects, the Special Master denied Objectors' requests for additional discovery, in light of the fact that the Fee Allocation Committee has provided access to claimant affidavits, presentations, and all materials held by Philip Garrett and Wegmann Dazet. Objectors appealed. On April 21, 2011, the Court affirmed the Special Master's order. Specifically, the Court noted that the Special Master in his order had achieved the "appropriate balance between permitting the Objectors reasonable discovery and preventing this fee dispute from ballooning unnecessarily." See Court's Order of

1

April 21, 2011, at 2.

On May 6, 2011, at approximately 6:30 p.m. upon the conclusion of an approximately 8 ½ hour deposition of Andy Birchfield, the Fee Allocation Committee designee, counsel for Objectors renewed their request for the production of the Fee Allocation Committee's meeting minutes. The Special Master heard brief argument and made a preliminary ruling that the minutes should be produced. The Fee Allocation Committee urged the Special Master to reconsider.

On May 9, 2011, the Special Master issued a ruling stating that its Order of March 31, 2011, was controlling, granted the motion to reconsider, and denied Objector's request for the production of the Fee Allocation Committee minutes. The Special Master found, "[a]dditionally the recommendations of the FAC have been produced and those recommendations reflect the decisions of the FAC. The deliberations should not be subject to discovery." See Order of May 9, 2011, at 1.

The Special Master's decision as previously noted by the Court struck the right balance between granting discovery and allowing the fee dispute from ballooning unnecessarily. The minutes were intended to be confidential and constitute privileged attorney work product entitled to an order of protection. *See*, *e.g.*, *In re Adelphia Communications, Corp.*, 348 B.R. 99, 109-10 (S.D.N.Y. Bankr. 2006) (ruling that "care must be taken to protect [court-appointed fee committee's] legitimate rights to the protection of work product, attorney mental impressions, and the attorney client privilege"). Courts have recognized that "much of the work of any fee committee may have most, if not all, of the trappings of work product," and "courts should be wary of efforts to use discovery from fee committees as a tactical measure, or to go 'tit for tat.'" *Id*. at 110.

Objectors have been provided the Fee Allocation Committee's initial and amended recommended allocations. Objectors have been provided all of the information that the Fee Allocation Committee relied upon in making its determinations. Minutes to Fee Allocation Committee proceedings are confidential attorney work product. Now that final recommendations have been published as to all claimants, the minutes serve no credible purpose. The minutes provide no relevant information to the issues before the Court, namely the appropriate common benefit compensation for each remaining Objector.

Objectors argue that the production of minutes was "in keeping the Fifth Circuit's requirement of 'transparency' expressed in the *In re Sulfur* line of cases." App., at 3. Under any reading no matter how expansive, neither *High Sulfur I* nor *High Sulfur II* can be accurately cited for the proposition that the Fee Allocation Committee minutes should be produced. *High Sulfur I* stands for the proposition that fee dispute proceedings should be marked by minima due process: notice and the opportunity to be heard. Similarly, *High Sulfur II* stands for the proposition that a hearing is not required where claimants have had opportunity to advocate their positions through a 3-page affidavit and 25-page memorandum. For Objectors to assert that these cases, and those that follow them, support a conclusion that the minutes should be produced is misleading.

Objectors also urge the Court to order the production of the minutes stating that the Fee Allocation Committee's agreement with the Vioxx Litigation Consortium supports such a production. Objectors misconstrue Mr. Birchfield's testimony as to the agreement. The agreement with the Vioxx Litigation Consortium is no different than other agreements entered into with claimants—i.e., an agreement to recommend to the Court a particular allocation. No commitment of the Common Benefit Fund was made. This effort toward resolution and

compromise is consistent with the Court's directives to the Committee and prevailing jurisprudence.[1]

The Court has previously affirmed the balance achieved by Special Master in regard to discovery. The Fee Allocation Committee urges the Court not to upset that balance at this late date.

## II. Objectors Failed to Question Birchfield about Contributions to the Common Benefit Fund

On May 10, 2011, the second day of the fee-related hearing, the Special Master ordered that Objectors could examine Mr. Birchfield about contributions to the Common Benefit Fund. On May 13, 2011, in accordance with the Hearing Protocol, counsel for Objectors was allowed to question Mr. Birchfield. Counsel was well aware that Mr. Birchfield's examination was to be limited to one hour. See Order on Hearing Protocol (April 29, 2011). As the protocol makes clear this time period was for all Objectors, not only Ms. Woodward.

At page 44 of the transcript of May 13, 2011, it was noted that Ms. Woodward had been cross-examining Mr. Birchfield for more than one hour, despite the Special Master's initial ruling limiting the entire examination to one hour. See Tr. of March 13, 2011, at 44. Ms. Woodward objected to the time limitation, stating she had "a great deal of additional questioning that I think is pertinent and which I believe that I should be entitled to." *Id* at 44-45. Master Juneau at that time stated the following:

---

[1] The only agreements reached by the Fee Allocation Committee regarding common benefit fee awards pertain to amounts to be **recommended** to Judge Fallon. Such efforts are in keeping with well-established jurisprudence. See *Johnson v. Georgia Highway Express,* 488 F.2d 714, 720 (5th Cir. 1974) ("[W]e encourage counsel on both sides to utilize their best efforts to understandingly, sympathetically, and professionally arrive at a settlement as to attorney's fees"); see also *Blum v. Stenson,* 465 U.S. 886, 904 (1984) ("Parties . . . should make a conscientious effort, where a fee award is to be made, to resolve any differences."); *Forbush v. J.C. Penny Co., et al.*, 98 F.3d 817, 821 (5th Cir. 1996) ("The Court had hoped that counsel could work this out amongst themselves."); *Turner v. Murphy Oil*, 582 F.Supp.2d 797, 802 (E.D. La. 2008) (Fallon, J.) ("attorneys were unable to agree on a proposed allocation").

4

> Just so the record will be abundantly clear. I've done that, I've given additional time here to you, I want to make it very clear, not only to you but to all parties, that I've allowed and permitted into evidence the extensive deposition was taken last Friday which counsel were afforded an opportunity to question the witness and the same applies to Mr. Birchfield whatever his responses were to that. . . . So there's been plenty, plenty of opportunity to explore things. I just want to get that clear on the record. But I've noted your objection.

*Id.* at 45.  With knowledge that she had already exceeded the allowed time, Ms. Woodward continued her cross-examination for another 5 pages, during which she asked such irrelevant questions as "Would it be fair to say that things got pretty hot in those discussions about what members of the Fee Allocation Committee would recommend as allocations to one another?." *Id* at 46.  And, "And wouldn't it be fair to say that debate was extremely heated from time to time?" *Id* at 48.  At page 49, Master Juneau told Ms. Woodward that he had granted extended time but urged her to conclude her examination:  "Why don't you wrap up and afford the other people here the opportunity to question the witness." *Id* at 49.  At page 50, Master Juneau told Ms. Woodward she had three more questions. *Id* at 50.  Ms. Woodward's cross-examination lasted until p.53.

During this extended time of cross-examination – far longer than the Special Master had originally ordered, Ms. Woodward never asked Mr. Birchfield about contributions to the Common Benefit Fund.  Not one question.

Mr. Birchfield was also cross-examined by Mr. Becnel for another thirty-seven pages and was never asked one question about contributions made to the Common Benefit Fund.  In total, Mr. Birchfield was cross-examined for nearly three hours.

Now, Objectors in the appeal argue that "curtailment of Mr. Birchfield's examination prohibited the promised production." App., at 5.  Such assertion is patently false.  As the record makes abundantly clear, the Special Master gave extended time to Ms. Woodward to examine

Mr. Birchfield. The Special Master reminded Ms. Woodward of the time limitations and then gave warning prior to the time expiring. Ms. Woodward, despite the warnings, never posed the question. Mr. Becnel never posed the question. Objectors cannot now credibly argue that they did not have opportunity to glean information regarding contributions to the Common Benefit Fund. The record makes clear that this was not the case.

The Special Master gave clearance for Ms. Woodward and other counsel for Objectors to ask Mr. Birchfield about contributions to the Common Benefit Fund. They failed to do so. To the degree this is a difficulty, it is one of their own making. The appeal should be denied.

### III. The Special Master Properly Excluded Markowitz As Undisclosed Expert

In its order of April 29th outlining the Hearing Protocol, the Special Master ruled that Objectors would be allowed to call an expert. The Special Master confirmed in an email on May 3rd that Objectors could call an expert. Objectors had ample notice that they could call an expert.

At the hearing, Objectors sought to call Joey Markowitz to testify not as an expert witness but as a "fact witness." See Tr. of May 12, 2011, at 229. Counsel for Objectors stated, "Yes, the fact witness. . . . Mr. Markowitz, if called at all, will be called only to testify on subjects of data analysis and without offering an opinion." See Tr. of May 9, 2011, at 14. The Fee Allocation Committee moved to exclude Mr. Markowitz because his testimony was not proper fact testimony, not proper under Rule 701, and had not been properly disclosed under Rule 702. The Special Master granted the motion, and Mr. Markowitz was not allowed to testify.

#### A. Mr. Markowitz's Testimony Not Proper Rule 701 Lay Opinion

The Special Master correctly ruled that Mr. Markowitz could not properly give testimony under Rule 701. Federal Rule of Evidence 701 allows a lay witness to offer testimony in the

form of opinions or inferences except in those circumstances where the opinion is based on "scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701.

Markowitz, a computer engineer, was proffered to offer testimony about the creation of a pivot table or report. Pivot tables are created using "Pivot" software. Pivot software is utilized in construction projects to "streamline[] critical accounting procedures and provide[] a clear, complete audit trail."[2] This software integrates "general ledger, accounts payable and receivable (including invoicing and quotations), payroll, job cost, purchase order, inventory management, time and material billing, change order control, work orders and equipment costing."[3] The pivot table that Markowitz created was based on an analysis prepared by the Court-appointed auditor, Phil Garrett, of the time and cost submissions of the fee applicants, but it is not based on any of the underlying data. Markowitz's proposed testimony as proffered by Objectors was clearly composed of opinion based on technical knowledge.

Though counsel for Objectors argues differently on the appeal, counsel in response to Special Master Juneau's questions admitted that Markowitz's testimony was expert testimony.

> SPECIAL MASTER JUNEAU: Now, in the brief that was submitted to me from your side, you say that Mr. Markowitz is a data miner analyst with a degree in both hardware and computer software and so forth and experience working with programming. Programs would be necessary to produce a chart that's necessary for this court. The point I am making about that sentence is, obviously there is an educational level of experience that kind of goes beyond what I anticipated to be fact material.
> Let me go further. The second thing it says is that in order to understand and work with Mr. Garrett's program in the last week when the hearing is fast approaching, Mr. Markowitz determined, made it, he

---

[2] http://findaccountingsoftware.com/directory/explorer-software/pivot/.

[3] *Id*.

>made a determination based on your brief on the experience and education that he has, he made that decision -- to me that's opinion -- that the best solution to work with, he made the decision what this court thinks is the best way to handle the evidence here. Why isn't that -- if it looks like a duck, sounds like a duck, isn't it a duck, isn't that what you're saying?
>
>MS. WOODWARD:  It took expertise to import Mr. Garrett's data into a new shell, that's all this Excel program is, it's simply a shell. However, Mr. Garrett himself confirmed from the stand that those, what is in Mr. Markowitz's shell is entirely Mr. Garrett's data. So all he's done is created a new shell to put the data into. And now all it is is an Excel program.
>
>SPECIAL MASTER JUNEAU:  Doesn't he have to have the expertise to determine whether what he is using, the pivot program, whatever you call it, he has made and has to have expertise and opinion that that program or that system accomplishes what you say it ultimately will result. How can you avoid that?
>
>MS. WOODWARD:  I can't avoid that.

*Id.* at 229-230. The Special Master correctly excluded Mr. Markowitz's testimony as a Rule 701 lay witness.

### B. Mr. Markowitz's Expert Opinion Was Not Properly Disclosed

Because the Objectors did not properly identify Markowitz as an expert or submit an expert report as provided by Federal Rule of Civil Procedure 26(a)(2), the Special Master properly excluded Markowitz's testimony. Under Rule 26 of the Federal Rules of Civil Procedure, parties must timely disclose expert opinion reports that provide:

>(i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; (iii) any exhibits that will be used to summarize or support them; (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years; (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and (vi) a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B).  "Formal disclosure of experts is not pointless."  *Musser v. Gentiva Health Svcs.*, 356 F.3d 751, 756 (7th Cir. 2004).  It allows parties to properly prepare for trial.  Rule 37 provides teeth to the disclosure obligations of Rule 26, stating:  "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), <u>the party is not allowed to use that information or witness . . . at a trial</u>, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1) (emphasis added).

Rule 37 sanctions are mandatory unless one of the two exceptions is met, and a court "need not find bad faith before imposing sanctions for violations of Rule 37."  *Oracle USA, Inc. v. SAP AG*, 246 F.R.D. 541, 544-45 (N.D. Cal. 2009).  Indeed, the Advisory Committee Notes describe the Rule as "a self-executing sanction for failure to make a disclosure required by Rule 26(a), without the need for a motion under subdivision (a)(2)(A)," and an "automatic sanction" that "provides a strong inducement for disclosure of material that the disclosing party would expect to use as evidence."  Fed. R. Civ. P. 37 Advis. Comm. Notes.  The Rule "is a recognized broadening of the sanctioning power," and courts "have upheld the use of the sanction even when a litigant's entire cause of action or defense has been precluded."  *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F. 3d 1101, 1106 (9th Cir. 2001).  "[T]he burden is on the party who failed to comply to demonstrate that it meets one of the two exceptions to mandatory sanctions," *i.e.*, that the failure to timely disclose or supplement was either (1) substantially justified, or (2) harmless.  *Oracle*, 264 F.R.D. at 545; *Yeti*, 259 F.3d at 1107 ("[T]he burden is on the party facing sanctions to prove harmlessness.").

Under Fifth Circuit law, the trial court may exercise its discretion to exclude experts not properly designated by considering four factors:  "(1) the explanation for the failure to identify the witness; (2) the importance of the testimony; (3) potential prejudice in allowing the

9

testimony; and (4) the availability of a continuance to cure such prejudice." *Hamburger v. State Farm Mut. Auto. Ins. Co.*, 361 F.3d 875, 883 (5th Cir. 2004); *Geiserman v. MacDonald*, 893 F.2d 787, 791 (5th Cir. 1990).

Objectors' attempts to explain the failure to disclose Markowitz and provide an expert report fail. First, Objectors argue that they "could not determine which [expert] they would choose until after they concluded the deposition of Mr. Birchfield." App., at 5. Objectors' argument is without merit. Experts are often disclosed prior to a trial or proceeding without ultimately providing testimony. Nothing prohibited Objectors from disclosing experts shortly after the Special Master's order of April 29th. Secondly, Objectors assert that the Special Master's order did not require the filing of an expert report. *Id.* at 6. This argument is also without merit as Rule 26 requires the filing of a report. Thirdly, Objectors argue that Rule 24 contemplates a situation where expert reports are not required. Maybe Objectors are referring to another rule but Federal Rule of Civil Procedure 24 deals with intervention in a proceeding by a non-party, which is not at issue.

Further, Objectors argue that the pivot table proffered through Markowitz's testimony was important because Mr. Garrett's "work was not entirely adequate to the lodestar calculation." App, at 7; *id.* at 5. Lodestar is product of hours multiplied times an hourly rate, hardly a complex calculation. Objectors do not dispute the number of hours reported by Mr. Garrett. Rather, they object to the rate used. To the degree Objectors assert that their work necessitated a higher rate, they should provide the rate. Neither a pivot table nor Markowitz's expertise were necessary to bring a disagreement regarding an hourly rate to the Special Master's attention.

As Mr. Garrett testified, all of the relevant data has been provided to the Court, the

Special Master, and Objectors. See Tr. of May 12, 2011, at 202. Objectors agree that all data has been provided by Mr. Garrett. *Id.* at 231. There was no need for the expert opinion proffered by Markowitz but there was substantial risk of prejudice since the opinions (or reports) were not disclosed to the Fee Allocation Committee prior to the hearing. In addition, this potential for prejudice was greatly increased because as Mr. Garrett testified, pivot tables can be unreliable and produce reports that are misleading. *Id.* at 197.

The Special Master correctly ruled that Markowitz's testimony be excluded.

> SPECIAL MASTER JUNEAU: And he developed the data and court appointed expert -- whatever I would do if I changed one penny, I would use the court appointed CPA to do that calculation, I am not a mathematical genius, but I am at least intelligent enough to know that I can call on people under court appointment who can do it. It's not really a question of whether we can do it or not, it's an interpretation of whether it's easier or not or in another format.
> My ruling is that, first of all, it is virtually impossible for Mr. Markowitz to testify in this case and give testimony based on the comments made in his brief and the oral presentation that he wouldn't have to voice expert opinions about the underlying data.
> Additionally, I want the record to reflect that it is my finding and conclusions that we have and are going to have the data in the record of sufficient reliability, at least to my satisfaction, to make the ultimate decisions that will have to be made in this case based on the arguments that are made. Accordingly, I am going to grant the motion and not permit Mr. Markowitz to testify.

*Id.* at 232-233.

Because the Special Master properly concluded that Markowitz should not be allowed to testify, the Court should deny Objectors' appeal on this issue.

## IV.   CONCLUSION

For the reasons set forth above, Objectors' Appeal from Certain Rulings of Special Master Juneau Made during the May 9-13, 2011 Hearing should be denied.

Respectfully submitted,

Date: June 3, 2011           By:   /s/ Russ M. Herman
                                  **Russ M. Herman (Bar No. 6819)**
                                  Leonard A. Davis (Bar No. 14190)
                                  Stephen J. Herman (Bar No. 23129)
                                  *Herman, Herman, Katz & Cotlar, L.L.P.*
                                  820 O'Keefe Avenue
                                  New Orleans, Louisiana 70113
                                  Telephone: (504) 581-4892

**PLAINTIFFS' LIAISON COUNSEL, CHAIR OF THE FEE ALLOCATION COMMITTEE, AND LIAISON COUNSEL FOR COMMON BENEFIT COUNSEL**

By:   /s/ Andy D. Birchfield, Jr.,
**Andy D. Birchfield, Jr**.
*Beasley, Allen, Crow, Methvin, Portis & Miles, P.C.*
P. O. Box 4160
Montgomery, AL 36103-4160
Telephone: (334) 369-2343

**PLAINTIFFS' CO-LEAD COUNSEL, SECRETARY OF THE FEE ALLOCATION COMMITTEE, AND CO-LEAD COUNSEL FOR COMMON BENEFIT COUNSEL**

By:   /s/ Christopher A. Seeger
**Christopher A. Seeger**
*Seeger Weiss*
One William Street
New York, NY 10004
Telephone: (212) 584-0700

**PLAINTIFFS' CO-LEAD COUNSEL AND CO-LEAD COUNSEL FOR COMMON BENEFIT COUNSEL**

12

Russ M. Herman, Esq.  
HERMAN, HERMAN, KATZ & COTLAR, LLP  
820 O'Keefe Avenue  
New Orleans, LA 70113  
(504) 581-4892 (telephone)  
(504) 561-6024 (telecopier)  

Andy D. Birchfield, Jr., Esquire  
BEASLEY, ALLEN, CROW, METHVIN,  
PORTIS & MILES, P.C.  
P.O. Box 4160  
234 Commerce Street  
Montgomery, AL 36103-4160  
(800) 898-2034 (telephone)  
(334) 954-7555 (telecopier)  

Christopher A. Seeger, Esquire  
SEEGER WEISS  
One William Street  
New York, NY 10004  
(212) 584-0700 (telephone)  
(212) 584-0799 (telecopier)  

Troy Rafferty, Esquire  
LEVIN, PAPANTONIO, THOMAS, MITCHELL,  
ECHSNER & PROCTOR, PA  
316 S. Baylen Street, Suite 400  
Pensacola, FL 32502  
(850) 435-7000 (telephone)  
(850) 497-7059 (telecopier)  

Thomas V. Girardi, Esq.  
GIRARDI & KEESE  
1126 Wilshire Blvd.  
Los Angeles, CA 90017-1904  
(213) 977-0211 (telephone)  

Mark Lanier, Esq.  
LANIER LAW FIRM, PC  
6810 FM 1960 West  
Houston, TX 77069  
(713) 659-5200 (telephone)  
(713) 659-2204 (telecopier)  

Edward F. Blizzard, Esq.  
BLIZZARD, MCCARTHY & NABERS, LLP  
Lyric Centre, 440 Louisiana  
Suite 1710  
Houston, TX 77002-1689  
(713) 844-3750 (telephone)  
(713) 844-3755 (telecopier)  

Perry Weitz, Esq.  
WEITZ & LUXENBERG  
180 Maiden Lane  
New York, NY 10038  
(212) 558-5500 (telephone)  
(212) 344-5461 (telecopier)  

Arnold Levin, Esquire  
LEVIN, FISHBEIN, SEDRAN & BERMAN  
510 Walnut Street, Suite 500  
Philadelphia, PA 19106  
(215) 592-1500 (telephone)  
(215) 592-4663 (telecopier)  

**FEE ALLOCATION COMMITTEE**

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Motion has been served on Liaison Counsel, Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and email, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 3rd day of June, 2011.

 /s/ Andy D. Birchfield, Jr.,
**Andy D. Birchfield, Jr**.
*Beasley, Allen, Crow, Methvin,*
*Portis & Miles, P.C.*
P. O. Box 4160
Montgomery, AL  36103-4160
Telephone: (334) 369-2343
Facsimile: (334) 954-7555