# EXHIBIT 1

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| In Re: **VIOXX PRODUCTS LIABILITY LITIGATION** | **MDL No. 1657** |
| | **SECTION: L** |
| **THIS DOCUMENT RELATES TO:** | **JUDGE FALLON** |
| **ALL PURCHASE CLAIMS CLASS ACTION COMPLAINTS PENDING OR SUBJECT TO TRANSFER TO MDL 1657** | **MAGISTRATE JUDGE KNOWLES** |

**PLAINTIFFS' SEVENTH NOTICE OF ADDITIONAL SUPPLEMENTAL AUTHORITY**

Class Plaintiffs in Plaintiffs' Purchase Claims Master Class Action Complaint respectfully submit this Seventh Notice of Additional Supplemental Authority in further support of their opposition to Defendant Merck's Motion for Judgment on the Pleadings or to Strike Class Allegations in the Purchase Claims Master Complaint.

In the underlying briefing, the parties recognized that Vioxx-related state court proceedings have addressed the issue of statewide and nationwide class treatment of consumer claims—with differing results. *See* Memorandum in Support of Merck's Motion For Judgment On The Pleadings Or To Strike Class Allegations In Purchase Claims Master Complaint (Rec. Doc. 45869-3) at 2, n.1; Plaintiffs' Opposition To Defendant's Motion For Judgment On The Pleadings Or To Strike Class Allegations In The Purchase Claims Master Complaint (Rec. Doc. 50122-2) at 1, 6 n.10.  For example, the California state court denied class certification to Vioxx consumer claims, while the Missouri state court granted certification, that decision was affirmed on appeal, and trial of the case (*Plubell*) is presently set to commence on May 4, 2012.

Plaintiffs hereby submit the decision of the United States Supreme Court in *Smith v. Bayer Corp*., No. 09-1205 (U.S. June 16, 2011), which reaffirms the broad discretion of courts to apply their own procedural law to the statewide class certification question—even where a court in another jurisdiction has already denied class certification "of the same class" in a suit alleging "the same legal theories" (*id.* at 4), and there is "near-identity" in the texts of Federal Rule of Civil Procedure 23 and the state's Rule 23 (*id.* at 9).  The Court stated:

> [T]he courts below erred in finding the certification issue precluded … the near-identity of the two Rules' texts … was the right place to start, but not to end.  Federal and state courts, after all, can and do apply identically worded procedural provisions in widely varying ways.  If a State's procedural provision tracks the language of a Federal Rule, but a state court interprets that provision in a manner federal courts have not, the state court is using a different standard and thus deciding a different issue.

*Id.* at 7, 9.

The Supreme Court unanimously held that the federal courts below "erred in finding the class certification was precluded," (*id.* at 7) in another jurisdiction because the district court applied a different standard in declining to certify the class than the state court would apply— despite the "near-identity" in the texts of the two Rules. *Id.* at 9, 11. In reaching this holding, the Supreme Court expressed "no opinion" on the correctness of the federal district court's application of Federal Rule 23. *Id.* at 11 n.8. It noted that the federal district court in *Smith* held that the presence of a single individualized issue prevented class certification under the predominance of common questions prong of Federal Rule of Civil Procedure 23:

> Recall that the federal court held that the presence of a single individualized issue—injury from the use of Baycol—prevented class certification. The court did not identify the common issues in the case; nor did it balance these common issues against the need to prove individual injury to determine which predominated. The court instead applied a strict test barring class treatment when proof of each plaintiff's injury is necessary.

*Id.* (internal citation omitted). By contrast, the Supreme Court noted that the applicable state Supreme Court "adopted an all-things-considered, balancing inquiry" in interpreting the predominance of common questions prong of its Rule 23:

> Rejecting any "rigid test," the state court opined that the predominance requirement "contemplates a review of many factors." Indeed, the court noted, a "'single common issue'" in a case could outweigh "'numerous … individual questions.'" That meant, the court further explained (quoting what it termed the "leading treatise" on the subject), that even objections to certification "'based on … causation, or reliance'" – which typically involve showings of individual injury — "'will not bar predominance satisfaction.'"

*Id.* (internal citations omitted).

Class Plaintiffs respectfully submit that the United States Supreme Court's decision in *Smith v. Bayer* provides further support for Plaintiffs' Opposition to the propriety of an order

striking class allegations in this MDL, or otherwise foreclosing the full consideration of statewide Vioxx consumer classes under applicable federal or state rules and standards. Plaintiffs annex a copy of this decision as Exhibit A.

Dated: June 22, 2011                                   Respectfully Submitted,

/s/ Dawn M Barrios                                    /s/ Elizabeth J. Cabraser
Dawn M. Barrios (#2821)                               Elizabeth J. Cabraser
BARRIOS, KINGSDORF & CASTEIX, LLP                     LIEFF CABRASER HEIMANN &
701 Poydras Street, Suite 3650                        BERNSTEIN, LLP
New Orleans, LA 70139                                 275 Battery Street, 29th Floor
Telephone: (504) 524-3300                             San Francisco, CA 94111-3339
Facsimile: (504) 524-3313                             Telephone: (415) 956-1000
                                                      Facsimile: (415) 956-1008

                                                      Chair, PSC Purchase Claims Committee

                                                      James R. Dugan, II
                                                      THE DUGAN LAW FIRM
                                                      650 Poydras Street, Suite 2150
                                                      New Orleans, LA 70130
                                                      Telephone: (504) 648-0180
                                                      Facsimile: (504) 648-0181


                                                      Dennis Johnson
                                                      Eben F. Duval
                                                      JOHNSON & PERKINSON
                                                      P.O. Box 2305
                                                      1690 Williston Road
                                                      South Burlington, VT 05403
                                                      Telephone: (802) 862-0030
                                                      Facsimile: (802) 862-0060

Amy N. L. Hanson
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA  98101-3052
Telephone:  (206) 623-1900
Facsimile:  (206) 623-3384

Lance A. Harke, P.A.
Howard M. Bushman, Esq.
HARKE CLASBY & BUSHMAN LLP
9699 NE Second Avenue
Miami, FL  33138
Telephone:  (305) 536-8220
Facsimile:  (305) 536-8229

Ben Barnow
BARNOW AND ASSOCIATES, P.C.
One North LaSalle Street, Suite 4600
Chicago, IL  60602
Telephone:  (312) 621-2000
Facsimile:  (312) 641-5504

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Plaintiffs' Seventh Notice of Additional Supplemental Authority has been served on Liaison Counsel, Russ Herman and Philip Wittmann, by U.S. Mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pretrial Order No. 8(B), and that the foregoing was electronically filed with Clerk of Court for the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 22nd day of June, 2011.

*/s/ Dawn M. Barrios*

# EXHIBIT A

OCTOBER TERM, 2010 1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## SMITH ET AL. *v.* BAYER CORP.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE EIGHTH CIRCUIT

No. 09–1205.   Argued January 18, 2011—Decided June 16, 2011

Respondent (Bayer) moved in Federal District Court for an injunction ordering a West Virginia state court not to consider a motion for class certification filed by petitioners (Smith), who were plaintiffs in the state-court action.  Bayer thought such an injunction warranted because, in a separate case, Bayer had persuaded the same Federal District Court to deny a similar class-certification motion that had been filed against Bayer by a different plaintiff, George McCollins.  The District Court had denied McCollins' certification motion under Fed. Rule Civ. Proc. 23.

 The court granted Bayer's requested injunction against the state court proceedings, holding that its denial of certification in McCollins' case precluded litigation of the certification issue in Smith's case.  The Court of Appeals for the Eighth Circuit affirmed.  It first noted that the Anti-Injunction Act (Act) generally prohibits federal courts from enjoining state court proceedings.  But it found that the Act's relitigation exception authorized this injunction because ordinary rules of issue preclusion barred Smith from seeking certification of his proposed class.  In so doing, the court concluded that Smith was invoking a State Rule, W. Va. Rule Civ. Proc. 23, that was sufficiently similar to the Federal Rule McCollins had invoked, such that the certification issues presented in the two cases were the same.  The court further held that Smith, as an unnamed member of McCollins' putative class action, could be bound by the judgment in McCollins' case.

*Held:* In enjoining the state court from considering Smith's class certification request, the federal court exceeded its authority under the "relitigation exception" to the Act.  Pp. 5–18.

 (a) Under that Act, a federal court "may not grant an injunction to stay proceedings in a State court except" in rare cases, when neces-

2                    SMITH *v.* BAYER CORP.

sary to "protect or effectuate [the federal court's] judgments."   28
U. S. C. §2283.   The Act's "specifically defined exceptions," *Atlantic
Coast Line R. Co.* v. *Locomotive Engineers*, 398 U. S. 281, 286, "are
narrow and are 'not [to] be enlarged by loose statutory construction,'"
*Chick Kam Choo* v. *Exxon Corp.*, 486 U. S. 140, 146.   Indeed, "[a]ny
doubts as to the propriety of a federal injunction against state court
proceedings should be resolved in favor of permitting the state courts
to proceed."   *Atlantic Coast Line R. Co.,* 398 U. S., at 297.   The excep-
tion at issue in this case, known as the "relitigation exception," au-
thorizes an injunction to prevent state litigation of a claim or issue
"that previously was presented to and decided by the federal court."
*Chick Kam Choo,* 486 U. S., at 147.   This exception is designed to im-
plement "well-recognized concepts" of claim and issue preclusion.
*Ibid.*   Because deciding whether and how prior litigation has preclu-
sive effect is usually the bailiwick of the *second* court—here, the West
Virginia court—every benefit of the doubt goes toward the state
court, see *Atlantic Coast Line*, 398 U. S., at 287, 297; an injunction
can issue only if preclusion is clear beyond peradventure.   For the
federal court's class-action determination to preclude the state court's
adjudication of Smith's motion, at least two conditions must be met.
First, the issue the federal court decided must be the same as the one
presented in the state tribunal.   And second, Smith must have been a
party to the federal suit or must fall within one of a few discrete ex-
ceptions to the general rule against binding nonparties.   Pp. 5–7.

   (b) The issue the federal court decided was not the same as the one
presented in the state tribunal.   This case is little more than a rerun
of *Chick Kam Choo.*   There, a federal court dismissed a suit involving
Singapore law on *forum non conveniens* grounds and then enjoined
the plaintiff from pursuing the "same" claim in Texas state court.
However, because the legal standards for *forum non conveniens* dif-
fered in the two courts, the issues before those courts differed, mak-
ing an injunction unwarranted.   Here, Smith's proposed class mir-
rored McCollins', and the two suits' substantive claims broadly
overlapped.   But the federal court adjudicated McCollins' certification
motion under Federal Rule 23, whereas the state court was poised to
consider Smith's proposed class under W. Va. Rule 23.   And the State
Supreme Court has generally stated that it will not necessarily inter-
pret its Rule 23 as coterminous with the Federal Rule.   Absent clear
evidence that the state courts had adopted an approach to State Rule
23 tracking the federal court's analysis in McCollins' case, this Court
could not conclude that they would interpret their Rule the same way
and, thus, could not tell whether the certification issues in the two
courts were the same.   That uncertainty would preclude an injunc-
tion.   And indeed, the case against an injunction here is even

Syllabus

stronger, because the State Supreme Court has expressly disapproved the approach to Rule 23(b)(3)'s predominance requirement embraced by the Federal District Court. Pp. 8–12.

(c) The District Court's injunction was independently improper because Smith was not a party to the federal suit and was not covered by any exception to the rule against nonparty preclusion. Generally, a party "is '[o]ne by or against whom a lawsuit is brought,' " *United States ex rel. Eisenstein* v. *City of New York*, 556 U. S. ___, ___, or who "become[s] a party by intervention, substitution, or third-party practice," *Karcher* v. *May*, 484 U. S. 72, 77. The definition of "party" cannot be stretched so far as to cover a person like Smith, whom McCollins was denied leave to represent. The only exception to the rule against nonparty preclusion potentially relevant here is the exception that binds non-named members of "properly conducted class actions" to judgments entered in such proceedings. *Taylor* v. *Sturgell*, 553 U. S. 880, 894. But McCollins' suit was not a proper class action. Indeed, the very ruling that Bayer argues should have preclusive effect is the District Court's decision not to certify a class. Absent certification of a class under Federal Rule 23, the precondition for binding Smith was not met. Neither a proposed, nor a rejected, class action may bind nonparties. See *id.,* at 901. Bayer claims that this Court's approach to class actions would permit class counsel to try repeatedly to certify the same class simply by changing plaintiffs. But principles of *stare decisis* and comity among courts generally suffice to mitigate the sometimes substantial costs of similar litigation brought by different plaintiffs. The right approach does not lie in binding nonparties to a judgment. And to the extent class actions raise special relitigation problems, the federal Class Action Fairness Act of 2005 provides a remedy that does not involve departing from the usual preclusion rules. Pp. 12–18.

593 F. 3d 716, reversed.

KAGAN, J., delivered the opinion of the Court, in which ROBERTS, C. J., and SCALIA, KENNEDY, GINSBURG, BREYER, ALITO, and SOTOMAYOR, JJ., joined, and in which THOMAS, J., joined as to Parts I and II–A.

Cite as: 564 U. S. ____ (2011)                    1

Opinion of the Court

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

_____

No. 09–1205

_____

## KEITH SMITH, ET AL., PETITIONERS v. BAYER CORPORATION

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE EIGHTH CIRCUIT

[June 16, 2011]

JUSTICE KAGAN delivered the opinion of the Court.*

In this case, a Federal District Court enjoined a state court from considering a plaintiff's request to approve a class action. The District Court did so because it had earlier denied a motion to certify a class in a related case, brought by a different plaintiff against the same defendant alleging similar claims. The federal court thought its injunction appropriate to prevent relitigation of the issue it had decided.

We hold to the contrary. In issuing this order to a state court, the federal court exceeded its authority under the "relitigation exception" to the Anti-Injunction Act. That statutory provision permits a federal court to enjoin a state proceeding only in rare cases, when necessary to "protect or effectuate [the federal court's] judgments." 28 U. S. C. §2283. Here, that standard was not met for two reasons. First, the issue presented in the state court was not identical to the one decided in the federal tribunal. And second, the plaintiff in the state court did not have the requisite connection to the federal suit to be bound by

——————

*JUSTICE THOMAS joins Parts I and II–A of this opinion.

Opinion of the Court

the District Court's judgment.

## I

Because the question before us involves the effect of a former adjudication on this case, we begin our statement of the facts not with this lawsuit, but with another. In August 2001, George McCollins sued respondent Bayer Corporation in the Circuit Court of Cabell County, West Virginia, asserting various state-law claims arising from Bayer's sale of an allegedly hazardous prescription drug called Baycol (which Bayer withdrew from the market that same month). McCollins contended that Bayer had violated West Virginia's consumer-protection statute and the company's express and implied warranties by selling him a defective product. And pursuant to West Virginia Rule of Civil Procedure 23 (2011), McCollins asked the state court to certify a class of West Virginia residents who had also purchased Baycol, so that the case could proceed as a class action.

Approximately one month later, the suit now before us began in a different part of West Virginia. Petitioners Keith Smith and Shirley Sperlazza (Smith for short) filed state-law claims against Bayer, similar to those raised in McCollins' suit, in the Circuit Court of Brooke County, West Virginia. And like McCollins, Smith asked the court to certify under West Virginia's Rule 23 a class of Baycol purchasers residing in the State. Neither Smith nor McCollins knew about the other's suit.

In January 2002, Bayer removed McCollins' case to the United States District Court for the Southern District of West Virginia on the basis of diversity jurisdiction. See 28 U. S. C. §§1332, 1441. The case was then transferred to the District of Minnesota pursuant to a preexisting order of the Judicial Panel on Multi-District Litigation, which had consolidated all federal suits involving Baycol (numbering in the tens of thousands) before a single District

Opinion of the Court

Court Judge.  See §1407.  Bayer, however, could not remove Smith's case to federal court because Smith had sued several West Virginia defendants in addition to Bayer, and so the suit lacked complete diversity.  See §1441(b).[1]  Smith's suit thus remained in the state courthouse in Brooke County.

Over the next six years, the two cases proceeded along their separate pretrial paths at roughly the same pace.  By 2008, both courts were preparing to turn to their respective plaintiffs' motions for class certification.  The Federal District Court was the first to reach a decision.

Applying Federal Rule of Civil Procedure 23,[2] the District Court declined to certify McCollins' proposed class of West Virginia Baycol purchasers.  The District Court's reasoning proceeded in two steps.  The court first ruled that, under West Virginia law, each plaintiff would have to prove "actual injury" from his use of Baycol to recover.  App. to Pet. for Cert. 44a.  The court then held that because the necessary showing of harm would vary from plaintiff to plaintiff, "individual issues of fact predominate[d]" over issues common to all members of the proposed class, and so the case was not suitable for class treatment.  *Id.,* at 45a.  In the same order, the District Court also dismissed McCollins' claims on the merits in light of his failure to demonstrate physical injury from his use of Baycol.  McCollins chose not to appeal.

Although McCollins' suit was now concluded, Bayer asked the District Court for another order based upon it,

------

[1] The Class Action Fairness Act of 2005, 119 Stat. 4, which postdates and therefore does not govern this lawsuit, now enables a defendant to remove to federal court certain class actions involving nondiverse parties.  See 28 U. S. C. §§1332(d), 1453(b); see also *infra,* at 17.

[2] Although McCollins had originally sought certification under West Virginia Rule of Civil Procedure 23 (2011), federal procedural rules govern a case that has been removed to federal court.  See *Shady Grove Orthopedic Associates, P. A.* v. *Allstate Ins. Co.,* 559 U. S. ___ (2010).

4                          SMITH *v.* BAYER CORP.

Opinion of the Court

this one affecting Smith's case in West Virginia.   In a
motion—receipt of which first apprised Smith of McCol-
lins' suit—Bayer explained that the proposed class in
Smith's case was identical to the one the federal court had
just rejected.   Bayer therefore requested that the federal
court enjoin the West Virginia state court from hearing
Smith's motion to certify a class.   According to Bayer, that
order was appropriate to protect the District Court's
judgment in McCollins' suit denying class certification.
The District Court agreed and granted the injunction.

The Court of Appeals for the Eighth Circuit affirmed.
*In re Baycol Prods. Litigation,* 593 F. 3d 716 (2010).   The
court noted that the Anti-Injunction Act generally prohib-
its federal courts from enjoining state court proceedings.
But the court held that the Act's relitigation exception
authorized the injunction here because ordinary rules of
issue preclusion barred Smith from seeking certification of
his proposed class.   According to the court, Smith was
invoking a similar class action rule as McCollins had used
to seek certification "of the same class" in a suit alleging
"the same legal theories," *id.,* at 724; the issue in the state
court therefore was "sufficiently identical" to the one the
federal court had decided to warrant preclusion, *ibid.*   In
addition, the court held, the parties in the two proceedings
were sufficiently alike: Because Smith was an unnamed
member of the class McCollins had proposed, and because
their "interests were aligned," Smith was appropriately
bound by the federal court's judgment.   *Ibid.*

We granted certiorari, 561 U. S. __ (2010), because the
order issued here implicates two circuit splits arising from
application of the Anti-Injunction Act's relitigation excep-
tion.   The first involves the requirement of preclusion law
that a subsequent suit raise the "same issue" as a previous
case.[3]   The second concerns the scope of the rule that a

_____

[3]Compare *In re Baycol Prods. Litigation,* 593 F. 3d 716, 723 (CA8

Opinion of the Court

court's judgment cannot bind nonparties.[4]  We think the District Court erred on both grounds when it granted the injunction, and we now reverse.

## II

The Anti-Injunction Act, first enacted in 1793, provides that

> "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."  28 U. S. C. §2283.

The statute, we have recognized, "is a necessary concomitant of the Framers' decision to authorize, and Congress' decision to implement, a dual system of federal and state courts."  *Chick Kam Choo* v. *Exxon Corp.*, 486 U. S. 140, 146 (1988).  And the Act's core message is one of respect for state courts.  The Act broadly commands that those tribunals "shall remain free from interference by federal courts."  *Atlantic Coast Line R. Co.* v. *Locomotive Engi-*

---

2010) (case below) (holding that two cases involve the same issue when "[t]he state and federal [class] certification rules . . . are not significantly different"), with *J. R. Clearwater Inc.* v. *Ashland Chemical Co.,* 93 F. 3d 176, 180 (CA5 1996) (holding that two cases implicate different issues even when "[the state rule] is modeled on . . . the Federal Rules" because a "[state] court might well exercise [its] discretion in a different manner").

[4]Compare 593 F. 3d, at 724 ("[T]he denial of class certification is binding on unnamed [putative] class members" because they are "in privity to [the parties] in the prior action") and *In re Bridgestone/Firestone, Inc., Tires Prods. Liability Litigation,* 333 F. 3d 763, 768–769 (CA7 2003) (same), with *In re Ford Motor Co.,* 471 F. 3d 1233, 1245 (CA11 2006) (holding that "[t]he denial of class certification" prevents a court from "binding" anyone other than "the parties appearing before it") and *In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liability Litigation,* 134 F. 3d 133, 141 (CA3 1998) (holding that putative "class members are not parties" and so cannot be bound by a court's ruling when "there is no class pending").

Opinion of the Court

*neers,* 398 U. S. 281, 282 (1970).  That edict is subject to
only "three specifically defined exceptions."  *Id.,* at 286.
And those exceptions, though designed for important
purposes, "are narrow and are 'not [to] be enlarged by
loose statutory construction.'"  *Chick Kam Choo,* 486 U. S.,
at 146 (quoting *Atlantic Coast Line,* 398 U. S., at 287;
alteration in original).  Indeed, "[a]ny doubts as to the
propriety of a federal injunction against state court pro-
ceedings should be resolved in favor of permitting the
state courts to proceed."  *Id.,* at 297.

   This case involves the last of the Act's three exceptions,
known as the relitigation exception.  That exception is de-
signed to implement "well-recognized concepts" of claim
and issue preclusion.  *Chick Kam Choo,* 486 U. S., at 147.
The provision authorizes an injunction to prevent state
litigation of a claim or issue "that previously was pre-
sented to and decided by the federal court."  *Ibid.*  But in
applying this exception, we have taken special care to
keep it "strict and narrow."  *Id.,* at 148.  After all, a court
does not usually "get to dictate to other courts the preclu-
sion consequences of its own judgment."  18 C. Wright,
A. Miller, & E. Cooper, Federal Practice and Procedure
§4405, p. 82 (2d ed. 2002) (hereinafter Wright & Miller).
Deciding whether and how prior litigation has preclusive
effect is usually the bailiwick of the *second* court (here, the
one in West Virginia).  So issuing an injunction under the
relitigation exception is resorting to heavy artillery.[5]  For
that reason, every benefit of the doubt goes toward the
state court, see *Atlantic Coast Line,* 398 U. S., at 287, 297;
an injunction can issue only if preclusion is clear beyond

---

   [5] That is especially so because an injunction is not the only way to
correct a state trial court's erroneous refusal to give preclusive effect to
a federal judgment.  As we have noted before, "the state appellate
courts and ultimately this Court" can review and reverse such a ruling.
See *Atlantic Coast Line R. Co.* v. *Locomotive Engineers,* 398 U. S. 281,
287 (1970).

Opinion of the Court

peradventure.

The question here is whether the federal court's rejection of McCollins' proposed class precluded a later adjudication in state court of Smith's certification motion. For the federal court's determination of the class issue to have this preclusive effect, at least two conditions must be met.[6] First, the issue the federal court decided must be the same as the one presented in the state tribunal. See 18 Wright & Miller §4417, at 412. And second, Smith must have been a party to the federal suit, or else must fall within one of a few discrete exceptions to the general rule against binding nonparties. See 18A *id.,* §4449, at 330. In fact, as we will explain, the issues before the two courts were not the same, and Smith was neither a party nor the exceptional kind of nonparty who can be bound. So the courts below erred in finding the certification issue precluded, and erred all the more in thinking an injunction appropriate.[7]

_____

[6] We have held that federal common law governs the preclusive effect of a decision of a federal court sitting in diversity. See *Semtek Int'l Inc.* v. *Lockheed Martin Corp.,* 531 U. S. 497, 508 (2001). Smith assumes that federal common law should here incorporate West Virginia's preclusion law, see Brief for Petitioners 15–16, whereas Bayer favors looking only to federal rules of preclusion because of the federal interests at stake in this case, see Brief for Respondent 18. We do not think the question matters here. Neither party identifies any way in which federal and state principles of preclusion law differ in any relevant respect. Nor have we found any such divergence. Compare, *e.g.,* *Montana* v. *United States*, 440 U. S. 147, 153–154 (1979) (describing elements of issue preclusion), with *State* v. *Miller,* 194 W. Va. 3, 9, 459 S. E. 2d 114, 120 (1995) (same). We therefore need not decide whether, in general, federal common law ought to incorporate state law in situations such as this.

[7] Because we rest our decision on the Anti-Injunction Act and the principles of issue preclusion that inform it, we do not consider Smith's argument, based on *Phillips Petroleum Co.* v. *Shutts,* 472 U. S. 797 (1985), that the District Court's action violated the Due Process Clause.

### A

In our most recent case on the relitigation exception, *Chick Kam Choo* v. *Exxon*, we applied the "same issue" requirement of preclusion law to invalidate a federal court's injunction. 486 U. S., at 151. The federal court had dismissed a suit involving Singapore law on grounds of *forum non conveniens*. After the plaintiff brought the same claim in Texas state court, the federal court issued an injunction barring the plaintiff from pursuing relief in that alternate forum. We held that the District Court had gone too far. "[A]n essential prerequisite for applying the relitigation exception," we explained, "is that the . . . issues which the federal injunction insulates from litigation in state proceedings actually have been decided by the federal court." *Id.*, at 148. That prerequisite, we thought, was not satisfied because the issue to be adjudicated in state court was not the one the federal court had resolved. The federal court had considered the permissibility of the claim under federal *forum non conveniens* principles. But the Texas courts, we thought, "would apply a significantly different *forum non conveniens* analysis," *id.*, at 149; they had in prior cases rejected the strictness of the federal doctrine. Our conclusion followed: "[W]hether the Texas *state* courts are an appropriate forum for [the plaintiff's] Singapore law claims has not yet been litigated." *Ibid.* Because the legal standards in the two courts differed, the issues before the courts differed, and an injunction was unwarranted.

The question here closely resembles the one in *Chick Kam Choo.* The class Smith proposed in state court mirrored the class McCollins sought to certify in federal court: Both included all Baycol purchasers resident in West Virginia. Moreover, the substantive claims in the two suits broadly overlapped: Both complaints alleged that Bayer had sold a defective product in violation of the State's consumer protection law and the company's war-

ranties.  So far, so good for preclusion.  But not so fast: a critical question—the question of the applicable legal standard—remains.  The District Court ruled that the proposed class did not meet the requirements of Federal Rule 23 (because individualized issues would predominate over common ones).  But the state court was poised to consider whether the proposed class satisfied *West Virginia* Rule 23.  If those two legal standards differ (as federal and state *forum non conveniens* law differed in *Chick Kam Choo*)—then the federal court resolved an issue not before the state court.  In that event, much like in *Chick Kam Choo*, "whether the [West Virginia] *state* cour[t]" should certify the proposed class action "has not yet been litigated." 486 U. S., at 149.

The Court of Appeals and Smith offer us two competing ways of deciding whether the West Virginia and Federal Rules differ, but we think the right path lies somewhere in the middle.  The Eighth Circuit relied almost exclusively on the near-identity of the two Rules' texts.  See 593 F. 3d, at 723.  That was the right place to start, but not to end. Federal and state courts, after all, can and do apply identically worded procedural provisions in widely varying ways.  If a State's procedural provision tracks the language of a Federal Rule, but a state court interprets that provision in a manner federal courts have not, then the state court is using a different standard and thus deciding a different issue.  See 18 Wright & Miller §4417, at 454 (stating that preclusion is "inappropriate" when "different legal standards . . . masquerad[e] behind similar legal labels").  At the other extreme, Smith contends that the source of law is all that matters: a different sovereign must in each and every case "have the opportunity, if it chooses, to construe its procedural rule differently."  Brief for Petitioners 22 (quoting ALI, Principles of the Law, Aggregate Litigation §2.11, Reporters' Notes, *cmt. b*, p. 181 (2010)).  But if state courts have made crystal clear

that they follow the same approach as the federal court applied, we see no need to ignore that determination; in that event, the issues in the two cases would indeed be the same.  So a federal court considering whether the relitigation exception applies should examine whether state law parallels its federal counterpart.  But as suggested earlier, see *supra*, at 6, the federal court must resolve any uncertainty on that score by leaving the question of preclusion to the state courts.

Under this approach, the West Virginia Supreme Court has gone some way toward resolving the matter before us by declaring its independence from federal courts' interpretation of the Federal Rules—and particularly of Rule 23.  In *In re W. Va. Rezulin Litigation,* 214 W. Va. 52, 585 S. E. 2d 52 (2003) *(In re Rezulin)*, the West Virginia high court considered a plaintiff's motion to certify a class—coincidentally enough, in a suit about an allegedly defective pharmaceutical product.  The court made a point of complaining about the parties' and lower court's near-exclusive reliance on federal cases about Federal Rule 23 to decide the certification question.  Such cases, the court cautioned, "'may be persuasive, but [they are] not binding or controlling.'"  *Id.,* at 61, 585 S. E. 2d, at 61.  And lest anyone mistake the import of this message, the court went on: The aim of "this rule is to avoid having our legal analysis of our Rules 'amount to nothing more than Pavlovian responses to federal decisional law.'"  *Ibid.* (italics omitted).  Of course, the state courts might still have adopted an approach to their Rule 23 that tracked the analysis the federal court used in McCollins' case.  But absent clear evidence that the state courts had done so, we could not conclude that they would interpret their Rule in the same way.  And if that is so, we could not tell whether the certification issues in the state and federal courts were the same.  That uncertainty would preclude an injunction.

But here the case against an injunction is even stronger,

Opinion of the Court

because the West Virginia Supreme Court has *disapproved* the approach to Rule 23(b)(3)'s predominance requirement that the Federal District Court embraced. Recall that the federal court held that the presence of a single individualized issue—injury from the use of Baycol—prevented class certification. See *supra*, at 3. The court did not identify the common issues in the case; nor did it balance these common issues against the need to prove individual injury to determine which predominated. The court instead applied a strict test barring class treatment when proof of each plaintiff's injury is necessary.[8] By contrast, the West Virginia Supreme Court in *In re Rezulin* adopted an all-things-considered, balancing inquiry in interpreting its Rule 23.  Rejecting any "rigid test," the state court opined that the predominance requirement "contemplates a review of many factors." 214 W. Va., at 72, 585 S. E. 2d, at 72.  Indeed, the court noted, a "'single common issue'" in a case could outweigh "'numerous . . . individual questions.'"  *Ibid.*  That meant, the court further explained (quoting what it termed the "leading treatise" on the subject), that even objections to certification "'based on . . . causation, or reliance'"—which typically involve showings of individual injury—"'will not bar predominance satisfaction.'"  *Ibid.* (quoting 2 A. Conte & H. Newberg, Newberg on Class Actions §4.26, p. 241 (4th ed. 2002)).  So point for point, the analysis set out in *In re Rezulin* diverged from the District Court's interpretation of Federal Rule 23.  A state court using the *In re Rezulin* standard would decide a different question than the one

—————

[8]The District Court's approach to the predominance inquiry is consistent with the approach employed by the Eighth Circuit.  See *In re St. Jude Medical, Inc.*, 522 F. 3d 836, 837–840 (2008) (holding that most commercial misrepresentation cases are "unsuitable for class treatment" because individual issues of reliance necessarily predominate). We express no opinion as to the correctness of this approach.

the federal court had earlier resolved.[9]

This case, indeed, is little more than a rerun of *Chick Kam Choo*. A federal court and a state court apply different law. That means they decide distinct questions. The federal court's resolution of one issue does not preclude the state court's determination of another. It then goes without saying that the federal court may not issue an injunction. The *Anti*-Injunction Act's *re*-litigation exception does not extend nearly so far.

## B

The injunction issued here runs into another basic premise of preclusion law: A court's judgment binds only the parties to a suit, subject to a handful of discrete and limited exceptions. See, *e.g.*, 18A Wright & Miller §4449, at 330. The importance of this rule and the narrowness of its exceptions go hand in hand. We have repeatedly "emphasize[d] the fundamental nature of the general rule" that only parties can be bound by prior judgments; accordingly, we have taken a "constrained approach to nonparty preclusion." *Taylor* v. *Sturgell*, 553 U. S. 880, 898 (2008). Against this backdrop, Bayer defends the decision below by arguing that Smith—an unnamed member of a pro-

_____

[9]Bayer argues that *In re Rezulin* does not preclude an injunction in this case because the West Virginia court there decided that common issues predominated over individual issues of damages, not over individual issues of liability (as exist here). See Brief for Respondent 25–26. We think Bayer is right about this distinction, but wrong about its consequence. Our point is not that *In re Rezulin* dictates the answer to the class certification question here; the two cases are indeed too dissimilar for that to be true. The point instead is that *In re Rezulin* articulated a general approach to the predominance requirement that differs markedly from the one the federal court used. Minor variations in the application of what is in essence the same legal standard do not defeat preclusion; but where, as here, the State's courts "would apply a significantly different . . . analysis," *Chick Kam Choo* v. *Exxon Corp.*, 486 U. S. 140, 149 (1988), the federal and state courts decide different issues.

posed but uncertified class—qualifies as a party to the McCollins litigation. See Brief for Respondent 32–34. Alternatively, Bayer claims that the District Court's judgment binds Smith under the recognized exception to the rule against nonparty preclusion for members of class actions. See *id.*, at 34–39. We think neither contention has merit.

Bayer's first claim ill-comports with any proper understanding of what a "party" is. In general, "[a] 'party' to litigation is '[o]ne by or against whom a lawsuit is brought,'" *United States ex rel. Eisenstein* v. *City of New York*, 556 U. S. ___, ___ (2009) (slip op., at 4), or one who "become[s] a party by intervention, substitution, or third-party practice," *Karcher* v. *May*, 484 U. S. 72, 77 (1987). And we have further held that an unnamed member of a *certified* class may be "considered a 'party' for the [particular] purpos[e] of appealing" an adverse judgment. *Devlin* v. *Scardelletti*, 536 U. S. 1, 7 (2002). But as the dissent in *Devlin* noted, no one in that case was "willing to advance the novel and surely erroneous argument that a non-named class member is a party to the class-action litigation *before the class is certified.*" *Id.*, at 16, n. 1 (opinion of SCALIA, J.). Still less does that argument make sense *once certification is denied.* The definition of the term "party" can on no account be stretched so far as to cover a person like Smith, whom the plaintiff in a lawsuit was denied leave to represent.[10] If the judgment in the McCollins

_____

[10] In support of its claim that Smith counts as a party, Bayer cites two cases in which we held that a putative member of an uncertified class may wait until after the court rules on the certification motion to file an individual claim or move to intervene in the suit. See Brief for Respondent 32–33 (citing *United Airlines, Inc.* v. *McDonald*, 432 U. S. 385 (1977); *American Pipe & Constr. Co.* v. *Utah*, 414 U. S. 538 (1974)). But these cases, which were specifically grounded in policies of judicial administration, demonstrate only that a person not a party to a class suit may receive certain benefits (such as the tolling of a limitations period) related to that proceeding. See *id.,* at 553; *McDonald*, 432

litigation can indeed bind Smith, it must do so under principles of *non*party preclusion.

As Bayer notes, see Brief for Respondent 37, one such principle allows unnamed members of a class action to be bound, even though they are not parties to the suit. See *Cooper* v. *Federal Reserve Bank of Richmond*, 467 U. S. 867, 874 (1984) ("[U]nder elementary principles of prior adjudication a judgment in a properly entertained class action is binding on class members in any subsequent litigation"); see also *Taylor*, 553 U. S., at 894 (stating that nonparties can be bound in "properly conducted class actions"). But here Bayer faces a conundrum. If we know one thing about the McCollins suit, we know that it was *not* a class action. Indeed, the very ruling that Bayer argues ought to be given preclusive effect is the District Court's decision that a class could not properly be certi-fied. So Bayer wants to bind Smith as a member of a class action (because it is only as such that a nonparty in Smith's situation can be bound) to a determination that there could not be a class action. And if the logic of that position is not immediately transparent, here is Bayer's attempt to clarify: "[U]ntil the moment when class certi-fication was denied, the *McCollins* case *was* a properly conducted class action." Brief for Respondent 37. That is true, according to Bayer, because McCollins' interests were aligned with the members of the class he proposed and he "act[ed] in a representative capacity when he sought class certification." *Id.,* at 36.

But wishing does not make it so. McCollins sought class certification, but he failed to obtain that result. Because the District Court found that individual issues predomi-

––––––––
U. S., at 394, n. 15. That result is consistent with a commonplace of preclusion law—that nonparties sometimes may benefit from, even though they cannot be bound by, former litigation. See *Parklane Ho-siery Co.* v. *Shore*, 439 U. S. 322, 326–333 (1979); *Blonder-Tongue Laboratories, Inc.* v. *University of Ill. Foundation*, 402 U. S. 313 (1971).

nated, it held that the action did not satisfy Federal Rule 23's requirements for class proceedings.  In these circumstances, we cannot say that a properly conducted class action existed at any time in the litigation.  Federal Rule 23 determines what is and is not a class action in federal court, where McCollins brought his suit.  So in the absence of a certification under that Rule, the precondition for binding Smith was not met.  Neither a proposed class action nor a rejected class action may bind nonparties.  What does have this effect is a class action approved under Rule 23.  But McCollins' lawsuit was never that.

We made essentially these same points in *Taylor* v. *Sturgell* just a few Terms ago.  The question there concerned the propriety of binding nonparties under a theory of "virtual representation" based on "identity of interests and some kind of relationship between parties and nonparties."  553 U. S., at 901.  We rejected the theory unanimously, explaining that it "would 'recogniz[e], in effect, a common-law kind of class action.'"  *Ibid.*  Such a device, we objected, would authorize preclusion "shorn of [Rule 23's] procedural protections."  *Ibid.*  Or as otherwise stated in the opinion: We could not allow "circumvent[ion]" of Rule 23's protections through a "virtual representation doctrine that allowed courts to 'create *de facto* class actions at will.'"  *Ibid.*  We could hardly have been more clear that a "properly conducted class action," with binding effect on nonparties, can come about in federal courts in just one way—through the procedure set out in Rule 23.  Bayer attempts to distinguish *Taylor* by noting that the party in the prior litigation there did not propose a class action.  But we do not see why that difference matters.  Yes, McCollins wished to represent a class, and made a motion to that effect.  But it did not come to pass.  To allow McCollins' suit to bind nonparties would be to adopt

the very theory *Taylor* rejected.[11]

Bayer's strongest argument comes not from established principles of preclusion, but instead from policy concerns relating to use of the class action device. Bayer warns that under our approach class counsel can repeatedly try to certify the same class "by the simple expedient of changing the named plaintiff in the caption of the complaint." Brief for Respondent 47–48. And in this world of "serial relitigation of class certification," Bayer contends, defendants "would be forced in effect to buy litigation peace by settling." *Id.*, at 2, 12; see also *In re Bridgestone/Firestone, Inc., Tires Prods. Liability Litigation,* 333 F. 3d 763, 767 (CA7 2003) (objecting to an "an asymmetric system in which class counsel can win but never lose" because of their ability to relitigate the issue of certification).

But this form of argument flies in the face of the rule against nonparty preclusion. That rule perforce leads to relitigation of many issues, as plaintiff after plaintiff after plaintiff (none precluded by the last judgment because none a party to the last suit) tries his hand at establishing some legal principle or obtaining some grant of relief. We confronted a similar policy concern in *Taylor*, which involved litigation brought under the Freedom of Infor-

---

[11] The great weight of scholarly authority—from the Restatement of Judgments to the American Law Institute to Wright and Miller—agrees that an uncertified class action cannot bind proposed class members. See Restatement (Second) of Judgments §41(1), p. 393 (1980) (A nonparty may be bound only when his interests are adequately represented by "[t]he representative of a class of persons similarly situated, designated as such with the approval of the court"); ALI, Principles of the Law Aggregate Litigation §2.11, Reporters' Notes, *cmt. b*, p. 181 (2010) ("[N]one of [the exceptions to the rule against nonparty preclusion] extend generally to the situation of a would-be-absent class member with respect to a denial of class certification"); 18A Wright & Miller §4455, at 457–458 ("[A]bsent certification there is no basis for precluding a nonparty" under the class-action exception).

mation Act (FOIA).  The Government there cautioned
that unless we bound nonparties a "'potentially limitless'"
number of plaintiffs, perhaps coordinating with each
other, could "mount a series of repetitive lawsuits" de-
manding the selfsame documents.  553 U. S., at 903.  But
we rejected this argument, even though the payoff in a
single successful FOIA suit—disclosure of documents to
the public—could "trum[p]" or "subsum[e]" all prior losses,
just as a single successful class certification motion could
do.  *In re Bridgestone/Firestone*, 333 F. 3d, at 766, 767.  As
that response suggests, our legal system generally relies
on principles of *stare decisis* and comity among courts to
mitigate the sometimes substantial costs of similar litiga-
tion brought by different plaintiffs.  We have not thought
that the right approach (except in the discrete categories
of cases we have recognized) lies in binding nonparties to a
judgment.

And to the extent class actions raise special problems of
relitigation, Congress has provided a remedy that does not
involve departing from the usual rules of preclusion.  In
the Class Action Fairness Act of 2005 (CAFA), 28 U. S. C.
§§1332(d), 1453 (2006 ed. and Supp. III), Congress enabled
defendants to remove to federal court any sizable class
action involving minimal diversity of citizenship.  Once
removal takes place, Federal Rule 23 governs certification.
And federal courts may consolidate multiple overlapping
suits against a single defendant in one court (as the Judi-
cial Panel on Multi-District Litigation did for the many
actions involving Baycol).  See §1407.  Finally, we would
expect federal courts to apply principles of comity to each
other's class certification decisions when addressing a
common dispute.  See, *e.g., Cortez Byrd Chips, Inc.* v. *Bill
Harbert Constr. Co.*, 529 U. S. 193, 198 (2000) (citing
*Landis* v. *North American Co.*, 299 U. S. 248, 254 (1936)).
CAFA may be cold comfort to Bayer with respect to suits
like this one beginning before its enactment.  But Con-

18          SMITH *v.* BAYER CORP.

Opinion of the Court

gress's decision to address the relitigation concerns associated with class actions through the mechanism of removal provides yet another reason for federal courts to adhere in this context to longstanding principles of preclusion.[12] And once again, that is especially so when the federal court is deciding whether to go so far as to enjoin a state proceeding.

*          *          *

The Anti-Injunction Act prohibits the order the District Court entered here.  The Act's relitigation exception authorizes injunctions only when a former federal adjudication clearly precludes a state-court decision.  As we said more than 40 years ago, and have consistently maintained since that time, "[a]ny doubts . . . should be resolved in favor of permitting the state courts to proceed."  *Atlantic Coast Line*, 398 U. S., at 297.  Under this approach, close cases have easy answers: The federal court should not issue an injunction, and the state court should decide the preclusion question.  But this case does not even strike us as close.  The issues in the federal and state lawsuits differed because the relevant legal standards differed.  And the mere proposal of a class in the federal action could not bind persons who were not parties there.  For these reasons, the judgment of the Court of Appeals is

*Reversed.*

---

[12] By the same token, nothing in our holding today forecloses legislation to modify established principles of preclusion should Congress decide that CAFA does not sufficiently prevent relitigation of class certification motions.  Nor does this opinion at all address the permissibility of a change in the Federal Rules of Civil Procedure pertaining to this question.  Cf. n. 7, *supra* (declining to reach Smith's due process claim).