UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: VIOXX | * | MDL NO. 1657 |
| | * | |
| PRODUCTS LIABILITY | * | SECTION: L |
| LITIGATION | * | |
| | * | JUDGE FALLON |
| THIS DOCUMENT RELATES | * | MAG. JUDGE KNOWLES |
| TO ALL CASES | * | |
| | * | |
| FILER: Daniel E. Becnel, Jr., | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## REPLY TO REPORT AND RECOMMENDATION OF SPECIAL
## MASTER ON ALLOCATION OF COMMON BENEFIT ATTORNEY FEES

NOW INTO COURT, comes Daniel E. Becnel, Jr. in reference to the Report and Recommendation of Special Master on Allocation of Common Benefit Attorney Fees, who requests a hearing before the Honorable Eldon E. Fallon in connection with the common benefit fee awards.

Daniel E. Becnel, Jr. has practiced law in the State of Louisiana and around the country for 42 years having first been admitted in September of 1969. Daniel E. Becnel, Jr. has never had a partner, although numerous family members have worked with him in his office, including his wife, Mary Hotard Becnel (Judge); his brother, Robert M. Becnel; his son Daniel E. Becnel, III and his wife, Kathryn Becnel; his son Christopher Devon Becnel and his wife Toni Sutton Becnel; and his son, Bradley Douglas Becnel.

Daniel E. Becnel, Jr. offers one of the more lucrative compensation packages of anyone practicing law, which packages have been used for over 40 years. Because he does not have partners, he uses a bonus program based on experience, success of case, and dedication to the practice. This is so because a rural practice is significantly different than a city practice. In the country, lawyers are not specialized; instead they handle everything from divorces to criminal cases, real estate matters, wills and successions, bankruptcy, collection, business litigation, government affairs litigation, and the like.   The Becnel Law Firm has two large offices; one in Reserve, Louisiana and one in LaPlace, Louisiana. There is also a home office located in Aspen, Colorado.

The Special Master refers to "contract" lawyers in his Opinion and Recommendations and specifically to Pretrial Order No. 6 (D). Daniel E. Becnel, Jr. has a unique way of compensating all lawyers who work for him. First, lawyers are not simply paid a contract rate but rather are given a bonus at the end of the case depending on the actual award made by the Court. Second, the Becnel Law Firm provides malpractice insurance, paid vacations, as well as trips throughout the country and throughout the world as part of its pay package, including CLE seminars both in state and out of state. Daniel E. Becnel, Jr. also offers mortgages at low interest rates and vehicles, many of which are Mercedes Benz, as part of the compensation package. He also allows his staff to use his condos in Destin, Florida, Gulf Shores, Alabama and Aspen, Colorado. This is not unlike the way major law firms throughout the country compensate their attorneys. Just a few weeks ago the Wall Street Journal published an article on how the major firms are now compensating their lawyers. A copy of said article is attached hereto and marked "Exhibit 1." This benefit extends not only to lawyers, but to secretaries, receptionists and paralegals. Kay Serven, Rhonda Waguespack and Kerri Smith were provided with low interest home loans, as was my former IT specialist, Abraham Amador.

Rebecca Todd, to whom the Special Master makes reference, was also given one of these loans after having worked as a secretary and paralegal prior to her becoming a lawyer.  See a copy of her loan marked "Exhibit 2."  Most of the details of the compensation package are detailed in my Reply to Fee Allocation Committee Post-Hearing Brief In Support of Proposed Allocation.  See attached marked "Exhibit 3."

Another distinction made by the Special Master and the FAC which unfairly lowers the recommended fee allocation to Becnel is the classification of Becnel's attorneys as "contract" attorneys, for which a lower rate is recommended.  At the outset, it should be noted that the majority of the contract attorneys Becnel provided to work on the Vioxx case were experienced in MDL work, with several having reviewed documents in multiple MDL's.  Moreover, no evidence was ever offered by any member of the FAC, or cited by the Special Master, that the work product of these contract attorneys was any less valuable than that produced by "associate" attorneys at other firms. Finally, and perhaps most importantly, no other firms have produced even a scintilla of evidence that these "associate" attorneys earned more money than the contract attorneys who they argue should be paid significantly less for the same type and quality of work.

The stated purpose of compensating contract attorneys at a lower rate is to dissuade firms from hiring attorneys for a limited term, at a reduced rate, and then to realize a windfall once common benefit fees are awarded (presumably at a significantly higher rate).  While this rubric may be applicable to situations in which the contract attorney received a fixed rate of compensation, and nothing more, the Becnel Law Firm's compensation package is substantially more complex than that. As described above, the contract attorneys who worked on the Vioxx MDL have expectations of a bonus on their common benefit awards, which is presumably the same manner of compensation

3

utilized by firms who have "associate" attorneys. Stated differently, it is highly unlikely that the "associate" attorneys for whom the Special Master and the FAC suggested awards of $200 and more per hour are *actually paid* that amount by their employer firms in advance of a common benefit fee being awarded. This would result in a part-time attorney with no experience receiving gross wages of approximately $208,000 annually. It is respectfully suggested that a law firm who advanced a salary this large to part-time attorneys with minimal experience who worked on risky cases would not be in business very long and certainly would eventually lack the resources to fund these cases.

It is suggested that the foregoing assumptions regarding the compensation methods of the Becnel Law Firm have resulted in a substantially lower fee recommendation to that firm as compared to firms who provided a lesser benefit to the plaintiffs in this matter. If the Special Master and the FAC desire to distinguish between "associate" and "contract" attorneys, this Honorable Court should require that the fee recommendations be made taking into account the specific compensation packages each firm offers to the "associate" attorneys under their charge rather than making blanket assumptions based on nothing more than a label which in and of itself bears no relationship to the actual compensation received, or the quality of work product produced. To do anything less than to fully consider all of these facts could result in the very injustice the FAC and Special Master purportedly seek to avoid. That is, by looking only at the general, undefined label of contract and associate, a firm which employs an "associate" could pay that associate less than the Becnel Law Firm pays its "contract" attorneys and offer no bonus based on the common benefit award. Once that firm receives a common benefit award for the work product of that "associate," a significant windfall is obviously realized by that firm. This is precisely what the FAC and this Honorable Court seeks to avoid based on its earlier order (PTO 6(D)). Because the procedure thus far followed by the FAC

4

and the Special Master does nothing to ensure this result is not reached, it is respectfully suggested that additional information should be submitted by those firms for which fee recommendations have been made for "associate" attorneys.

Daniel E. Becnel, Jr. personally recruited excellent lawyers throughout his career. Examples are Matt Moreland who is a fourteen year lawyer; Sal Christina and Kevin Klibert who are both eleven year lawyers. The lawyers in my practice are required to travel a great deal. For example, Matt Moreland and Jennifer Crose are presently in Phoenix, Arizona managing a claims office for a large chlorine accident and settlement. Sal Christina is working four days each week evaluating individual cases (approximately 15,000) for a $240 million settlement in the Medtronics Fidelis Leads MDL in Minneapolis, Minnesota. Will Percy is reviewing documents and summarizing depositions on multiple MDL's. Judge Ruche Marino has been reviewing documents in the Heparin case for one and one half years. Marisha Fraaza has been reviewing documents and drafting motions in reference to the Trasylol MDL. My son and daughter-in-law have been working with clients in the PILOT Program in Chinese Drywall. Daniel E. Becnel, Jr. has been negotiating the Sean Payton settlement in Chinese Drywall, working on the Kaba Lock MDL and the Navistar 6.0 L Diesel Engine MDL, while listening to every Chinese Drywall deposition via the Internet.

In Vioxx, most people did not want to do common benefit work because the common benefit fee was originally 2% fee and 1% for costs and this was a disincentive to do common benefit work. See also the Reply to FAC Opposition to Becnel Law Firm's Objection, see "Exhibit 4." The Becnel Firm, however, never reduced its commitment to this case, despite these disincentive. The Special Master omitted some of the most important common benefit work Daniel E. Becnel, Jr. did in connection with this litigation; namely, hiring numerous experts before there was an MDL. Becnel

worked on this case for over one and one half years prior to filing the first federal lawsuit, having accumulated over 2000 cases prior to the PSC being appointed and paying for experts to educate lawyers at Mass Torts Made  Perfect and other seminars concerning the effects of Vioxx.  See attached marked "Exhibit 5."  Becnel retained some of the only experts who had actual experience doing clinical trials on Phase I to IV compounds and other Cox-II drugs.  See Exhibit 31 of the Exhibit Book for the list of all of the experts supplied by Daniel E. Becnel, Jr. as a member of the Science Committee.  Although this information was submitted to the Special Master, he makes no reference to this fact.  The Special Master also fails to mention the fact that many of the experts were hired at Becnel's expense, such as Dr. Augustine Aruna, a pharmacologist  from New Orleans, Louisiana, Dr. John Markis, a cardiologist from Boston, Massachusetts, Dr. Daniel Acosta, a pharmacologist from Cincinnati, Oho and Dr. Cyril Wecht, a pathologist from Pittsburgh, Pennsylvania.  These experts were brought to New Orleans by Becnel to comment on the mock trial and give assistance to all of the trial lawyers for both plaintiffs and defendants who were making presentations to help develop a winning strategy in "real world" trials.

The Special Master also references Becnel's not remembering Margaret Parker.  It should be noted that Margaret Parker did all of her work at the Montgomery depository in Alabama and he did not come into contact with her, as he did with every other attorney the Becnel Law Firm provided.  All of her 501.50 hours were performed in Montgomery.  The Court should remember that the Becnel Law Firm submitted time for 18 people.  As the Court is well aware, every few weeks for the past year, Becnel has undergone chemotherapy treatments for leukemia, the side effects of which are, *inter alia,* memory loss.  In addition, Becnel is required to take an experimental drug daily, Revlimid, which cannot even be purchased through a pharmacy and must be ordered from

BioChem. It's side effects include drowsiness, memory loss and nausea, to name a few. In fact, all side effects of this drug are not fully known.

The names of all of the people who worked on this case on behalf of the Becnel Law Firm were submitted to the PSC as well as the document depository staff. Copies of their resumes and their experience reviewing documents was also provided because very few people wanted to review documents. Becnel supervised this type of work for more than 25 years. In addition, every one of the people that worked for the Becnel Law Firm had a great deal of experience reviewing documents in the past. In addition, they were required to sign in and sign out at each depository. These attorneys, arguably, have the most detailed, accurate time records of anyone in this litigation.

In addition, Daniel E. Becnel, Jr. provided housing for Rebecca Todd while she worked in the document depository in New Orleans, therefore eliminating the need for hotel accommodations or other related expenses. Daniel E. Becnel, Jr. provided her meals, utilities and a credit card for parking in New Orleans after he recruited her from the Third Circuit Court of Appeals in Lake Charles specifically for the Vioxx case. Ms. Todd had previously worked with the Becnel Law Firm for years; first as a secretary, then a paralegal, and ultimately as an attorney. Daniel E. Becnel, Jr. also provided housing for other lawyers after Hurricane Katrina - - - including their pets, so they could continue working at the Montgomery depository reviewing documents.

The Special Master also failed to reference all of the work Becnel did coordinating the document reviewers who were sent to Montgomery, Alabama from the Metro New Orleans area; using Becnel's personal cars to drive to and from Montgomery, Alabama; providing hotel accommodations and airfare for these reviewers doing work in Montgomery, New York and New Orleans; and sending Rebecca Todd to Orange County, California, for weeks while assisting Mark

Robinson with the only successful Vioxx trial in federal court.   In addition, Daniel E. Becnel, Jr.
provided one of his employees, Carlis Griffin, to the PSC to help run the depository, as she had done
in the Propulsid MDL.                                                                                  .

No time was billed for all of the logistics in moving these people around to review
documents.  The PSC repeatedly requested that firms provide attorneys to review documents, but
few, if any would show up.  See Affidavit of Carlis Griffin marked "Exhibit 6."  Very little time was
billed for the constant reviewing of hot documents provided to Becnel by the lawyers reviewing
documents in New York, Montgomery and New Orleans.

Will Percy, a 25 year lawyer, who had previously worked for Russ Herman as a contract
lawyer in the Tobacco case and also for other firms in the Levee Failure case, was recruited by
Becnel because of his experience.  Will Percy still works for the Becnel Law Firm.  See Affidavit
of Will Percy marked
"Exhibit 7."

Every one of the people who were recruited by Becnel for this litigation were extensively
interviewed and had top computer skills and virtually all had reviewed documents in the past, having
worked for various law firms and/or companies.  An example of my personal relationship with these
lawyers is evidenced by the fact that after Hurricane Katrina, when people could not live in New
Orleans, one of the lawyers Becnel hired, Darla Sanderson, stayed at his home on weekends and he
took care of her dog so she could continue going to Montgomery, Alabama to review documents.
She was a respiratory therapist, as well as an attorney, living in this area because her husband was
stationed in New Orleans.

Additionally, no firms took on more *pro bono* cases than the Becnel Law Firm, representing 96,000 people in the Levee Failure case. The Becnel office completed Form 95's for each person, created files on each claimant and have been constantly answering questions by the hundreds each week since Hurricane Katrina. We also reviewed documents and performed other litigation related tasks in this important litigation, all at no cost or fee to the client.

The Court should also consider that the Vioxx case was not a "slam dunk." Had this case not gone well, the Becnel Law Firm was at substantial financial risk of losing not only the money invested, but the payments to attorneys for wages, travel, hotels, meals and transportation. Many MDL's do not result in a successful conclusion. An example is the Welding Rod Litigation, the Viagra Litigation, the Ford Paint Litigation, the FEMA Litigation, and the Levee Failure Litigation in which millions were lost by various firms who take on these difficult cases on a contingent basis, including the Becnel firm.

There is no question that Daniel E. Becnel, Jr. was one of the leaders of this litigation before the MDL, along with Chris Seeger, Andy Birchfield, Mark Robinson, Carlene Lewis and Mark Lanier, but yet he was not given any major assignments even though he was appointed to the Science Committee. No other lawyer devotes as much time to working on these cases as Daniel E. Becnel, Jr. as his office opens at 7:30 a.m. every morning and does not close until after 5:00 p.m., including Saturdays. The reason Daniel E. Becnel, Jr. was not given any assignments was because the litigation was controlled by Mr. Herman who became angry with Becnel because the latter supported Gerald Meunier for Liaison Counsel.

The Special Master also references Becnel's request for $4 million. This amount was reached simply by calculating the hourly rate submitted by the FAC to the Court in calculating

common benefit fees. The Court should note that the FAC came up with a figure of $97,000 without even looking at all of the time submitted at the various depositories by the Becnel Law Firm. When negotiations were ongoing, Daniel E. Becnel, Jr. was the only objector who was not approached about settlement.

The Special Master also erroneously concluded that Becnel was part of a group of lawyers who made arrangements to have contract lawyers perform document review in Alabama. This assertion is incorrect. Daniel E. Becnel, Jr. recruited, interviewed and paid each and every lawyer who worked for his firm. He also reviewed their time sheets, provided transportation, hotel accommodations, credit cards and expenses for each and every lawyer. Richard Arsenault expressed an interest in the Vioxx Litigation, and therefore Daniel E. Becnel, Jr. asked if he wanted to participate with him because he had some of the first filed cases in New Orleans and usually, those are some of the first tried cases in an MDL. Daniel E. Becnel, Jr. proposed to Richard Arsenault, as he was also accumulating Vioxx cases from across the country from his referral counsels, that they needed to move forward with document review. Arsenault and Becnel agreed to share the costs of hiring additional people to handle this project. Becnel was never aware, until a few weeks ago, that Arsenault decided, because of the risks involved in Vioxx, to share his costs with four additional lawyers: Dawn Barrios, Matt Lundy, Justin Witkin and Vance Andrus. Becnel would not have approved this arrangement had he known, and he was not told of this arrangement until after Mr. Arsenault received his fee recommendation from the FAC. Over the course of this litigation, Becnel dealt only with Mr. Arsenault and had no idea that these other lawyers were involved in this project. It was Becnel's understanding that Arsenault would pay one-half of the document reviewer's compensation packages. The Special Master did not take into consideration the bonus program that

10

these lawyers were promised.  For example, Carlis Griffin was earning approximately $1,800.00 per month working for the PSC as the document depository manager.  Had Becnel not lent her to the PSC, she would have worked for the Becnel Law Firm on an hourly basis for almost the same rate earned by Penny Herman and other people who managed document depositories.  This was all calculated so that the Becnel Law Firm would be penalized.

The Court should also be advised that often no one would show up at the depository to review documents.  The Becnel Law Firm was recruited to do this with the promise that depositions would be assigned only to people who supplied document reviewers.  When the depositions were assigned, the Becnel Law Firm, which had done most of the document review, was not even considered for a second chair.  The Special Master did not take into consideration that prior to the trial, there was an immediate rush to have page and line summaries of all of the depositions taken.  The Becnel Law Firm was recruited to do page and line summaries of well over 30% of all depositions taken, but was given no credit for this.

Among the exhibits sought to be introduced will be the Becnel Exhibit Book given to the Special Master with exhibits numbered from 1 to 32.

Based on all of the above,  a hearing before the Court is requested as soon as possible, although it would be appreciated if the Court scheduled the hearing for when Becnel is not required to be in Houston, Texas for chemotherapy.  Becnel's next scheduled chemotherapy treatment is July 15, 2011 and at that appointment he will receive a schedule for additional dates for treatment at MD Anderson in Houston, Texas.

Respectfully submitted,

BECNEL LAW FIRM, LLC
106 West Seventh Street
P. O. Drawer H
Reserve, Louisiana  70084
Telephone No. (985) 536-1186
Fax No. (985) 536-6445


 /s/Daniel E. Becnel, Jr.
DANIEL E. BECNEL, JR. (#2926)
TRIAL ATTORNEY

12