**Other Documents**
2:05-md-01657-EEF-DEK In Re: Vioxx Products Liability Litigation
APPEAL, MASTER, PROTO, VIOXX

## U. S. District Court

### Eastern District of Louisiana

**Notice of Electronic Filing**

The following transaction was entered by Becnel, Daniel on 5/31/2011 at 4:24 PM CDT and filed on 5/31/2011
**Case Name:** In Re: Vioxx Products Liability Litigation
**Case Number:** 2:05-md-01657-EEF-DEK
**Filer:** Plaintiff
**Document Number:** 63002

**Docket Text:**
Response/Reply by Plaintiff *Reply to Feel Allocation Committee Post-Hearing Brief in Support of Proposed Allocation* (Reference: ALL CASES)(Becnel, Daniel)


**2:05-md-01657-EEF-DEK Notice has been electronically mailed to:**

Ann B. Oldfather     aoldfather@oldfather.com, cms@oldfather.com, mas@oldfather.com

Jeanine R. Bermel     jeanine.bermel@huschblackwell.com

Leonard A. Davis     ldavis@hhkc.com, hlaborde@hhkc.com, lflemming@hhkc.com, tvallejos@hhkc.com

Orran L. Brown     obrown@browngreer.com, kcopeland@browngreer.com, tblankenship@browngreer.com

Patrick A. Juneau     paj@juneaudavid.com, propulsid@bellsouth.net

Phillip A. Wittmann     pwittmann@stonepigman.com, btigchelaar@stonepigman.com, cmolony@stonepigman.com, pblackman@stonepigman.com

Robert Murray Johnston     rmj@ahhelaw.com, gwh@ahhelaw.com

Russ M. Herman     rwestenfeld@hhkc.com

**2:05-md-01657-EEF-DEK Notice has been delivered by other means to:**

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1091133085 [Date=5/31/2011] [FileNumber=5071792-0
] [1744d01321d05d9e664f70a1e5681573a3023848ee58a24374764da27027e0f43e6
435d5c50ee7206e637a2e265fc8fe5aad64395a49286615a89b80a9b7daee]]



UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: VIOXX | * | MDL NO. 1657 |
| | * | |
| PRODUCTS LIABILITY | * | SECTION: L |
| LITIGATION | * | |
| | * | JUDGE FALLON |
| THIS DOCUMENT RELATES | * | MAG. JUDGE KNOWLES |
| TO ALL CASES | * | |
| | * | |
| FILER: Daniel E. Becnel, Jr., | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## REPLY TO FEE ALLOCATION COMMITTEE POST-HEARING BRIEF IN SUPPORT OF PROPOSED ALLOCATION

COMES NOW, Daniel E. Becnel, Jr., who takes issue with the facts presented in the Brief filed by the FAC as it relates to Daniel E. Becnel, Jr.; and thus who submits this instant Reply to Fee Allocation Committee Post-Hearing Brief in Support of Proposed Allocation.

1. Daniel E. Becnel, Jr. explained that because Richard Arsenault's office was affected by Hurricane Rita, his office did not function for weeks because of flooding. Because of these problems, it appears that he submitted hours on behalf of four people on whose behalf Daniel E. Becnel, Jr. submitted those same hours. This was a simple mistake caused by the effects of Hurricane Rita and was not intentional. In addition, one of the people submitted by Mr. Arsenault, and not by Mr. Becnel, was someone Mr. Becnel did not even know. This person may have been

1

employed by Mr. Arsenault although I did not supervise this individual. All of the lawyers hired by me were recruited by me, many with whom I had previously worked, doing extensive document reviews in Tobacco and other projects and all of whom I knew personally. When these lawyers were requested by Mr. Seeger and Mr. Birchfield, neither asked when these lawyers were recruited or whether they were independent contractors, associates, partners or the like. They simply asked that the lawyers be immediately assigned to the depositories in Montgomery and New York for the review of documents in preparation of cases getting ready to go to trial. They did not state that these lawyers would be treated differently. In fact, some of the lawyers that I hired, supervised and paid, were having part of those funds shared not only by Mr. Arsenault, but by Dawn Barrios, a member of the PSC and Aylstock, Witkin, Kreis & Overholtz, PLLC from Florida. The FAC did not bother to address these issues in advance of the fee objection hearing. Obviously had that been done, these issues may have been resolved in advance, consistent with notions of judicial economy, instead, I was not made aware of this fact until a few weeks ago. These lawyers were hired and supervised by Daniel E. Becnel, Jr.

Most people did not want to do common benefit work because the common benefit fee was originally 2% for fee and 1% for costs, and this was a disincentive to do common benefit work. The Becnel Law Firm committed these people before there was a PSC and continued to commit these experienced lawyers throughout the existence of the MDL. This put the Becnel Law Firm at substantial financial risk if the case did not prove successful. At the time, I had commitments for over 2,000 cases and, therefore, I wanted the documents reviewed sooner rather than later under the direction of Seeger and Birchfield. I took the risk of recruiting lawyers whom I knew had a great deal of experience, such as Will Percy, who still works for me; Rebecca Todd, who worked for me

2

until she moved to New York and Michael Breinin, who previously worked for the Castano Group, of which I am a member. Darla Sanderson no longer works for me due to the fact that her husband was in the military and was transferred to California. She worked on the Vioxx case while he was stationed in Louisiana. Holly Lamarche returned to the Dominican Republic to teach English, before returning to native Lafayette, Louisiana and now works for one of my referral lawyers in Lafayette, Galloway and Jefcoat, and she also helps manage her father's nursing home business. Mr. Birchfield similarly had a number of his partners leave who were working on the Vioxx case, particularly Paul Sizemore and Mr. Micelli. Chris Seeger, during the Vioxx case, had multiple lawyers from his firm move; Seth Katz, a partner, moved to Burg Simpson in Colorado and Jeff Grand just moved a month ago to another firm. These seem to be no rational basis to conclude that because an attorney changes employment, their work is somehow substandard to those who remain at the same firm. Daniel E. Becnel, Jr. took a significant financial risk as he provided automobiles, insurance, housing accommodations on a weekly basis for this document review. Will Percy worked twenty-three straight months on this project. If this case would have failed, as have other MDL's, Daniel E. Becnel, Jr. would have lost a great deal of money.

2. No other lawyer/law firm had their time scrutinized more than Daniel E. Becnel, Jr. Immediately prior to the hearing not one person brought up this issue until the fee dispute. In fact, Mr. Herman, Mr. Seeger and Mr. Birchfield employed a team of lawyers and paralegals to go through time records. However, Mr. Birchfield admitted he never looked at the sign-in and sign-out sheets which were required of all document reviewers. Becnel readily acknowledged that any time spent on individual cases should be deducted from a common benefit submission; however, Becnel submitted 16,167.50 hours which the FAC admitted was approximately 13,000 hours. One must

3

remember that Daniel E. Becnel, Jr., who for the two years prior to the MDL helped in developing experts and the science related to heart attacks and strokes, did not keep hours for that two year period which probably resulted in a loss of 1,500 hours. However, it is nearly impossible to reconstruct these hours while you are developing a case which may or may not turn into something productive.

Also, in broadly classifying Becnel associates as "contract attorneys," the Fee Committee fails to take into consideration the fact that Daniel E. Becnel, Jr. provides the following for lawyers under his employ: malpractice insurance, paid vacations, as well as providing his homes for their use in Destin, Aspen and Gulf Shores, bonuses, trips and automobiles, including insurance. In fact, many of Becnel's associates earn more than many associates and/or limited partners in other law firms. Moreover, their classification as "contract attorneys" does not make their work any less productive or valuable in a common benefit effort. The FAC valued all of the work produced by Becnel at $97,000. It is thus obvious that the FAC valued the hours submitted by Becnel in its Fee Application. Notably, only the FAC had access to the submission of all other firms- - -Becnel did not. Therefore, this should have been caught by the FAC prior to the allocation of $97,000 or by Phil Garrett prior to the hearing.

Another example of a recommendation being made with no regard for the *Johnson Factors* is Gerald Meunier, with whom I have cooperatively worked for years in multiple jury trials and other MDL's. He is one of my closest friends; however, Mr. Meunier had approximately 1,000 hours and was recommended to receive $2,690,000. Mr. Meunier had very few cases, was not involved in Vioxx prior to the MDL, developed no experts and did virtually no document review. He did participate as local counsel in many of the trials and is an excellent, fine lawyer, however,

4

most of his time was spent preparing a trial package, which occurred after the settlement and which has been used by no one in any trial. Another example is Mr. Herman's partner, Ashcraft & Gerel (Mr. Gerel's name appears as a partner on Mr. Herman's law office in New Orleans, Louisiana). If you add the $9,000,000 from Ashcraft and Gerel with Mr. Herman's $29,567,284, it is almost $40,000,000. It is unbelievable that Liaison Counsel can earn $38,567,284, though he was not involved in Vioxx for the two years that Mr. Seeger and Mr. Birchfield were in state courts preparing cases for trial.

It is also impossible that the final recommendation of the FAC are round numbers for each and every FAC member whose time they evaluated. For example, Mark Robinson, who tried a case, is recommended to receive $6,000,000 and Elizabeth Cabraser, who tried no case, is suggested to get $6,000,000. It appears that what they did is divide the fee, rather than based a fee award on any method used by any Court in the history of multidistrict litigation or complex litigation.

Mr. Herman, because of his position as Liaison Counsel, hired lawyer after lawyer to work on Vioxx and he simply names them associates. He also hired his son and his daughter not only in the Vioxx case, but in the Propulsid case and the Chinese Drywall case. Although Daniel E. Becnel, Jr. has three sons and two daughters-in-law who are lawyers, he decided not to use them in the Vioxx case for fear that he might be criticized. He has done this repeatedly in the Propulsid case, the Vioxx case and the Chinese Drywall case. In fact, the only reason Mr. Herman is in the Chinese Drywall case is because he was invited into the case by Daniel E. Becnel, Jr. because he had the largest inventory of cases in Louisiana. Mr. Herman is recommended to receive the same fee as Birchfield and Seeger, but Birchfield tried five cases and Seeger tried multiple cases. Herman never tried a case.

5

An example of how Mr. Herman unilaterally assigned tasks in this case is the fact that Mr. Chris Seeger, Mr. Andrew Lemmon and Mr. Anthony Irpino, all of whom have very few Chinese Drywall cases, are taking most of the depositions throughout the country, as well as outside the country. Mr. Jerry Parker, who has the single largest inventory of cases (almost 1,000) has been assigned no depositions and Mr. Becnel, who has the largest inventory of cases in Louisiana has been assigned no depositions or any work in the Chinese Drywall litigation other than inspecting houses and putting his clients in the PILOT Program. This is exactly what was done in Vioxx and it all stems back to Mr. Herman's anger that I supported Mr. Meunier as Liaison Counsel, rather than him, when organizing the Vioxx Litigation.

Respectfully submitted,

BECNEL LAW FIRM, LLC
106 West Seventh Street
P. O. Drawer H
Reserve, Louisiana 70084
Telephone No. (985) 536-1186
Fax No. (985) 536-6445


/s/Daniel E. Becnel, Jr.
DANIEL E. BECNEL, JR. (#2926)
TRIAL ATTORNEY