UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: VIOXX | : | |
| | : | MDL Docket NO. 1657 |
| PRODUCTS LIABILITY LITIGATION | : | |
| | : | SECTION L |
| | : | |
| This document relates to ALL ACTIONS | : | JUDGE FALLON |
| | : | MAG. JUDGE KNOWLES |

## REPLY TO FAC OPPOSITION TO BECNEL LAW FIRM'S OBJECTION

Daniel E. Becnel, Jr. filed *Christina v. Merck,* (docket #04-2726) which was the first Vioxx case filed in a Louisiana federal court. At that time, there were only two or three cases filed in Federal Courts nationwide. Daniel E. Becnel, Jr. also filed the moving papers before the MDL Panel to transfer and consolidate MDL 1657 (See attached moving papers marked, Exhibit A). Mr. Becnel was the only lawyer that supported and moved for the Honorable Eldon E. Fallon as the presiding judge for MDL 1657 and previously moved the panel to appoint Judge Eldon E. Fallon in Propulsid, MDL No. 1355, which was Judge Fallon's first MDL. Mr. Herman was not even in the case at that time. Daniel E. Becnel, Jr. and Skip Lambert used his jet plane to fly to Colorado Springs so Becnel could argue the Propulsid case, along with Tom Campion, defense counsel for Jannsen. Subsequently, Mr. Becnel filed moving papers in the Chinese Drywall MDL No. 2047and again asked for Judge Eldon Fallon (see attached marked Exhibit B). In all three instances, the Panel took Daniel E. Becnel, Jr.'s recommendation and appointed Judge Eldon Fallon as the MDL Judge.

Daniel E. Becnel, Jr. set up the first organizational meeting in the Vioxx Litigation at Antoine's Restaurant after JPML established MDL 1657.. Daniel E. Becnel, Jr. paid the bill for this

1



meeting and dinner in the amount of $4,269.07.   Mr. Herman did not attend the meeting of 50 lawyers who met on leadership.  At the meeting he nominated Chris Seeger and Andy Birchfield to be Lead Counsel because he was already reviewing documents produced in the state court litigation in Texas, New Jersey and Alabama preparing his case for trial.  At this time, it was Mr. Becnel's understanding that Russ Herman planned to retire so he could teach and travel.  For that reason, Mr. Becnel recruited and supported the nomination of Gerald Meunier to serve as Liaison Counsel for MDL 1657, an action he would later pay for in the form of an arbitrary fee recommendation and a time reduction from 16,000 hours to 13,038.25 hours.  Phil Garrett and Lenny Davis stated that much of the costs Becnel had incurred should not be paid, to which Mr. Becnel objected and appealed to Mr. Phil Garrett, resulting in all of Becnel's expenses being paid.

In MDL 1657 and the state cases, Daniel E. Becnel, Jr. presided as judge for a mock jury trial with multiple juries at the Westin Hotel in New Orleans which was attended by over 400 lawyers from around the country.   Approximately 40 lawyers participated in this mock trials.   Seeger, Birchfield and Herman did not even attend this two-day event.

Daniel E. Becnel, Jr. hired Dr. Cyril Wecht, a forensic pathologist for death cases; Dr. John Markis from Harvard, a Cardiologist; Dr. Daniel Acosta and Dr. Augustine Aruna, Pharmacologists and Toxicologists; all of whom attended the mock trial at the Westin and critiqued the arguments, the medical literature and the performance of the lawyers.  In fact the night before the mock trial, Daniel E. Becnel, Jr. had dinner with all of these experts, as well as Carlene Lewis and Shelly Sanford.  The PSC also requested that Daniel E. Becnel, Jr., retain an FDA expert, Dr. Suzanne Parisian, to fly down to meet with members of the Science Committee.  This was requested by John Restaino, the Chairman of the Science Committee and Mr. Becnel complied with this request.

Daniel E. Becnel, Jr. paid for Dr. Cyril Wecht to speak at Mass Torts Made Perfect on the issue of proving death cases without an autopsy. Over 500 lawyers attended this seminar; Herman, Seeger, and Birchfield did not.

Among the physicians attending the dinner meeting was Dr. Augustine Aruna, a Pharmacologist from Xavier; Dr. John Markis, a Cardiologist from Harvard; and Dr. Daniel Acosta, Chairman of the Department of Pharmacology/Toxicology from Houston and Cincinnati. I had previously brought Dr. Cyril Wecht, a Pathologist, to meet many of the lawyers at Mass Torts Made Perfect.

Dr. Parisian is a Forensic Pathologist, as well as an FDA Expert who wrote a textbook, FDA Inside and Out. Dr. Daniel Acosta, wrote a chapter in the Cassarett & Doull's textbook on heart related matters from drugs. The chapter is entitled "Toxic Responses of the Heart and Vascular Systems."

Daniel E. Becnel, Jr. advised at almost every status conference that this case was ready for trial and all of the experts were prepared for trial. The experts used by Andy Birchfield resulted in losses in Houston and New Orleans; one case was even tried twice. Chris Seeger had multiple trials with one loss and one win. The only trial that was successful in federal court in the entire MDL was the *Barnett* trial in which the Becnel Law Firm supplied numerous hours of trial preparation and trial attendance by Rebecca Todd.

Rebecca Todd, of the Becnel Law Firm, spent weeks in California working with Mark Robinson to prepare for this trial. Ms. Todd was very familiar with the documents, having worked at document depositories in Montgomery, Alabama in Andy Birchfield's office and in New York at Chris Seeger's office. Daniel E. Becnel, Jr. also participated in the review of documents because

once documents were discovered by his team of lawyers, they would send documents that people thought were "hot" for him to review and for comment and make decisions as to what he thought and whether his experts thought they were hot.  However ,Daniel E. Becnel, Jr. nor anyone from his office was ever asked to take (or even second chair) depositions, despite numerous requests that we be allowed to offer meaningful assistance.

The PSC continually made requests for document reviewers and stated that the only people who reviewed documents would be assigned the task of depositions. As stated above, the entire Becnel team, including Daniel E. Becnel, Jr., reviewed documents.  Mr. Birchfield's office in Montgomery assigned reviewers to certain document productions.  Virtually no one else was doing this labor intensive work (40 hours a week) in the document depository.  For this work in Montgomery, Alabama, no time was billed for travel to this document review, only gasoline bills for the drive from Louisiana to Alabama was submitted, and lawyers doubled up in hotel rooms to keep costs down.  Daniel E. Becnel, Jr. supplied his personal vehicles for his lawyers to use to drive to and from Montgomery.    Many documents were reviewed by Rebecca Todd, who was very experienced in document review.  The only reason she is no longer employed by Daniel E. Becnel, Jr., after having been first employed with him at the age of 21 as a secretary, was because she took over a Technology Company in New York who did work for all of the major law firms throughout the country and she liked city life in New York and had a serious relationship with someone she met there. Judge Ruche Marino (retired) has worked for Daniel E. Becnel, Jr. for eight years since he retired after having over 24 years on the bench and 10 years as a practicing lawyer.  He has done document review in multiple MDL's, as has his daughter, Juanita Marino.

The lawyers employed by Daniel E. Becnel, Jr. were some of the only lawyers available to

work because Hurricane Katrina occurred in August, 2005 and Mr. Herman's office was not operational for a significant period of time.

Daniel E. Becnel, Jr. and his team of lawyers were also asked to do page and line summaries of one-third of all depositions taken in state and federal court. All of the above discussed work was completed by the Becnel law Firm as requested. The Becnel Law Firm's diligence in the work required to successfully litigate MDL 1657 should be compensated as originally requested in their fee allocation, contrary to the FAC's fee allocation recommendation.

Despite the fact that Mr. Russ Herman stated that Mr. Phil Garrett has no business relationship with any law firm in the Vioxx Litigation and/or the Chinese Drywall Litigation, a simple examination of his CV will show that Mr. Garrett was first hired by Lenny Davis of the Herman Law Firm in the year 2000 in the Propulsid Litigation. He was also hired in the year 2000 in the *Brightfield* case; the *LaMoyne Riverside Re M/V Brighton* (Riverwalk) case; the *Virginia Miller* v. *Bob Cournoyer* case in Terrebonne Parish; the *Reynold J. Jennins v. Ramsay Health Care, Inc.* case in U.S. District Court and the *Generation Hall* case in Civil District Court. In addition, Mr. Garrett was hired in the *Louisiana Stadium and Exposition District Arbitration* case and the *Delta Petroleum* case in the Civil District Court. All of theses cases he did for various lawyers in the Herman law firm. Therefore his statement that he had no relationship to any law firm on any PSC member is simply not true. Mr Herman put on the record at various PSC meeting in Chinese Drywall that Mr. Garrett has no relationship and/or has not worked for any of the firms involved in the litigation. This is a classic example of misstatements and untruths. Mr. Garrett, nor the PSC, ever suggested to my firm that we send in hourly rates of lawyers working on the Vioxx case. As a matter of fact, I personally hired Mr. Herman and paid him $100,000 to testify in the *Shell Norco*

5

*Litigation* concerning hourly rates of lawyers in an effort to fulfill the requirement that the Fifth Circuit has set out about market rates in its various decisions. Certainly market rates were not used, nor were experts nor were affidavits submitted concerning market rates to justify the exorbitant lodestar and enhancement given to the FAC. The FAC did not follow any of the most recent decisions of the Fifth Circuit concerning the award of attorney fees.

Despite the fact that the FAC Response to the Becnel Law Firm's common benefit compensation request resulted in a total compensation being recommended to him of $97,076.50, less than $6.00 per hour, not even the minimum wage. In addition, it did not count ever the ten hours of travel to and from Montgomery, Alabama which was not charged. It is amazing, despite the fact that many of the lawyers on the Committee had suites at major hotels, flew on private planes and had limousines taking them around. Being frugal and holding down client costs apparently does not count in an MDL.

Becnel indeed takes credit for filing the first case in the Eastern District of Louisiana. A member of the PSC, Carlene Lewis, says it best "You clearly have extraordinary insight into the process." (See attached marked Exhibit C). Ms. Lewis filed one of the first cases in the country and asked Becnel to get involved in the Vioxx Litigation prior to the MDL.

Becnel Law Firm was indeed one of the leaders in the formation of the MDL and the selection of experts for Vioxx related injuries. Mr. Becnel shared this information with lawyers across the country and made his experts available in order to help these attorneys screen their cases. Becnel had his experts speak at seminars and asked them to provide research which was transmitted via email and/or fax to this networking of lawyers.

Among the physicians attending the dinner meeting with Carlene Lewis and Shelly Sanford were Dr. Augustine Aruna, Dr. John Markis, and Dr. Daniel Acosta. Daniel E. Becnel, Jr. paid for their flights, hotel accommodations and fees for providing this critical information to the lawyers attending and participating in the mock trial. This was critical for both state and federal trials which were pending.

Just this past month, Dr. Cyril Wecht, a Forensic Pathologist and Dr. Ira Gelb, who were both involved in the Fen-Phen Litigation and the Vioxx Litigation, testified for Daniel E. Becnel, Jr. in a case involving *Jacob v. the VA.* See attached hereto Judge Barbier's Opinion on this case which resulted in a plaintiffs verdict in the amount of $933,384.93, marked Exhibit D.

The PSC reimbursed Becnel for costs of all of these experts without objection and now the FAC takes the position that because these experts were not used or provided an expert report, Becnel's office is not allowed to claim common benefit time for all the work performed as a member of the Science Committee in Vioxx. This is absurd. Numerous calls were conducted by John Restaino, almost on a weekly basis. Daniel E. Becnel, Jr. personally attended almost every status conference and urged Judge Fallon to allow the *Christina* case or any of the cases that he filed to be set for trial. Certainly, you do not start looking for experts at the last minute. Many of the experts involved in this case where hired prior to the MDL when Vioxx was being investigated by firms such as Parker, Waichman; Carlene Lewis and Shelly Sanford; and Beasley Allen to name a few. Expert reports were provided as called for under the Case Management Order. Daniel E. Becnel, Jr. and Richard Arsenault collaborated in making presentations concerning Vioxx at seminars, as they had done for years in Propulsid, Guidant and Medtronics MDL's, to name a few. These experts met with

7

members of the PSC, such as Carlene Lewis, Shelly Sanford, John Restaino and other to help with the understanding of heart attacks and strokes from the drug, Vioxx.

At no time did anyone object to Becnel presiding over the entire mock trial as the judge and critiquing all of the participants, including some of the best lawyers in the country. Certainly Mark Lanier, Paul Sizemore and Mark Robinson were at the head of the lawyers rated by Daniel E. Becnel, Jr. among all those making presentations. The jury was extensively debriefed not only on rating the lawyers but rating theme grids, damages and the like.

The PSC recruited the Becnel firm to provide lawyers to do document review, a task that Daniel E. Becnel, Jr. was first asked to do by Wendell Gauthier, Stan Chesley and others in the Breast Implant case. Wendell knew that I had received a million dollar verdict in Jefferson Parish for a breast implant victim in State Court. He asked Becnel to assemble a team of lawyers and paralegals, which ultimately totaled 35, and he supervised this team in the Breast Implant Litigation. During that early MDL, the lawyers Becnel assembled realized it was important to work together in a depository to "cross pollinate" document reviews while seated together each and every day, not in one's own law firm while cell phones, clients and disturbances occurred on a regular basis. It was also as a result of this litigation that the documents were sent to Becnel and the PSC requested that he take many of the major depositions in Breast Implant. Becnel also personally took many of the major depositions in both the Breast Implant MDL and the Tobacco Litigation, including Toxicologists, Economist, Sales and Marketing personnel, as well as CEO's and the like.

It was also as a result of the Breast Implant Litigation and the Pedicle Screw Litigation that many of the lawyers around the country knew that Becnel not only would produce numerous lawyers to review all of the documents, but would advance significant money, often in the millions of dollars,

8

when members of the PSC could no longer fund the litigation. This was done in Pedicle Screw, whose Liaison Counsel was Arnold Levin and John Cummings (Becnel funded approximately one-third of the millions of dollars spent in this litigation). This was also done in the Shell Norco Litigation (Becnel funded 80% of the $4 million spent in that litigation). He also supplied numerous lawyers in Pedicle Screw to the document depository in Philadelphia. In fact, Tom Byrne, one of his lawyers, stayed in Philadelphia almost three years.

Daniel E. Becnel, Jr. was requested by Mark Robinson to send the best lawyer he had on documents to California to work with him in preparing for his trial. Rebecca Todd was sent. Rebecca Todd spent weeks at Mark Robinon's home and office bringing him up to speed on the documents she thought could help in the trial. During what was the only successful MDL trial, she was asked to prepare the plaintiff and assist with the debriefings each night. Mark and Rebecca, as well as numerous members of Mark's firm, were working 15 to 18 hours per day during the entire trial. While I personally did not participate in the trial, Rebecca Todd was there every day and every night and worked on the Trial Team that Mark Robinson put together. Rebecca would call me on a daily basis and asked for my input and we discussed what was going on in the trial and Becnel offered his advice. Because Rebecca was paid by Becnel her time falls under the Becnel Law firm submissions. Rebecca worked at the New Jersey depository, the Beasley Allen depository, the New Orleans depository and at the law office and residence of Mark Robinson at the California depository. Because of her extraordinary talents and because she was assigned to Chris Seeger's office in New York for months reviewing documents, she worked with a number of technology companies and was recruited to become the Head of Sales and Marketing in one of the major

technology companies. She did not take this job until after the Barnett trial was concluded and a settlement in Vioxx was announced.

Despite Becnel's vast trial experience and his reputation for assembling experts of the highest quality, Mr. Herman chose to exclude me from any meaningful role in the Vioxx Litigation due to the fact that I supported Gerald Meunier for Liaison Counsel. Because Richard Arsenault and I promoted Gerald Meunier, we were both "black listed" from any meaningful role in the MDL.

When no other firm would send people to do document review, they became desperate and begged our office to do this task. Our office had also done this task in cases such as Fen-Phen, Welding Rods, Propulsid, Baycol, Rezulin, PPA and Sulzer, as well as numerous other non-drug cases, such as train derailments, plant explosions, admiralty cases, etc. In fact, many of the depositions taken by Becnel were used in the Tobacco Litigation by Mark Robinson in his class certification hearing and briefs before the California Supreme Court.

Mark Robinson and I spent months in Philadelphia doing the depositions in the Pennsylvania Tobacco case. It was during our work together there that I told him about Fen-Phen which is another case that I pioneered in starting, including moving for the MDL and becoming Co-Chair of the State/Federal Litigation before Judge Bechtle.

Carlis Griffin worked for Daniel E. Becnel, Jr. for years in numerous cases as a paralegal, secretary and an administrative assistant. She was assigned to the Propulsid Depository where she worked for Daniel E. Becnel, Jr. for two years and was requested to be "loaned" to the PSC in Propulsid as a Committee employee, to which Daniel E. Becnel, Jr. agreed. At the conclusion of the Propulsid case, she was again requested to be "loaned" to the PSC for the Vioxx depository. Becnel again agreed to allow this to occur assuming he would have some meaningful role in the MDL in

which he was one of the major movers of the litigation.   See the letter from Penny Herman Grisamore concerning her performance in Vioxx until Hurricane Katrina, and thereafter (Exhibit E). See also her Affidavit about sign in and sign out sheets and who reported to the depository and who did not (See attached marked Exhibit F ). As you can see from her Affidavit, the Becnel Law Firm supplied more people to the depository than any other firm in the country.   Most of the time there were just a few people from throughout the country in the depository.   The Becnel Law Firm had people there working eight to ten hours a day, Monday through Friday, and on an as needed basis on weekends and at night.   See Affidavit of William Percy, marked Exhibit G.

An additional task required of the Becnel Law Firm was the summary of depositions, (page and line), in preparation for various trials.   Despite the advances of technology, the people doing the depositions did not have the foresight to utilize the highlighted feature of Realtime depositions and this task would have been eliminated.   Since no one performed this task, the Becnel Law Firm was requested to do page and line summaries on an expedited basis.   Becnel Law Firm brought other attorneys from other projects to do this top priority tasks, which costs the Becnel Law Firm money because of ongoing other MDL's, such as Guidant, Medtronics, Viagra, Welding Rods, and the like.

As a result of previous experience in those cases and many others, the Becnel Law Firm made a commitment, not only to play a major role in the case, but to obtain referrals from throughout the country because of pioneering effort in Vioxx.   When he was not put on the PSC, he lost most of his referrals and a great deal of money that those referrals would have generated in cases.   Becnel immediately assembled a team of lawyers to review documents, similar to the team he organized in the Castano Litigation.   At one time, Becnel had seven lawyers working full time in Tobacco; some in New Orleans, and others in Philadelphia, South Carolina and wherever else needed.   As a result

11

of his ability to fund these cases, as well as supplying lawyers to prepare the cases for trial, Daniel E. Becnel, Jr. and his lawyers were asked to take many of the major depositions in all of the above. A good example is Joe Hassinger, who worked for Becnel for years and now is a defense lawyer in the Chinese Drywall case representing Interior Exterior.  All of the lawyers who work for Becnel have excellent computer skills, excellent research skills and would not have been asked to participate in depositions, as was Becnel, not only in the United States, but in Europe in cases involving Sulzer Orthopedics (depositions took place in Vienna, Austria), in Pedicle Screw (depositions took place in Paris, France), in Baycol (depositions took place in Amsterdam).

For example, Daniel E. Becnel, Jr. was appointed Co-Chair with Stan Chesley and Will Kemp for the Deposition Discovery Committee.  He was also Co-Chair, along with Don Barrett and Stan Chesley of the Experts Committee.  These appointments were made in 1994 at the very beginning of the Castano Tobacco Litigation (See Exhibit H).  In fact, the method for document review, originally designed and implemented by Daniel E. Becnel, Jr., in the Breast Implant Litigation, was used in the Tobacco Litigation.

Daniel E. Becnel, Jr. had lawyers who spoke French and German working for him.  Again to show the pattern of being "black listed" the two lawyers who were volunteered to translate and review documents in the Chinese Drywall case were never utilized despite the fact that they both lived, worked and were educated in Germany and France and were doing the majority of the translation of German documents in the Trasylol MDL.

The hourly rate charged for Daniel E. Becnel, Jr. is $550.00.  The hourly rate for Rebecca Todd is $500.00.  The hourly rates for Judge Ruche Marino and Will Percy is $475.00 (he also worked one week in New York at the New York/New Jersey depository at Chris Seeger's office).

12

The hourly rate for Michael Breinin is $425.00. The hourly rate for Matt Moreland, Kevin Klibert and Sal Christina is $400.00 per hour. The hourly rate for Holly Lamarche, Mary Lorenz, Deanne Sirmon, Margaret Parker, Kelly Morton, Meghan Becnel, Barbara Harris and Juanita Marino is $350.00. The hourly rate for Darla Sanderson, a nurse and attorney is $450.00. There were no charges made for Kay Serven who administered and kept time and charges, payroll and all of the administrative tasks since most lawyers used this type of person in their fee rather then as a separate fee and charge. She sent hundreds of emails throughout the country on a weekly basis especially during the first six months of the Vioxx Litigation in both state and federal court.

Daniel E. Becnel, Jr., adopts by reference the excellent brief filed by The Murray Law Firm.

Respectfully submitted,


_s/Daniel E. Becnel, Jr._____
DANIEL E. BECNEL, JR.
Becnel Law Firm, LLC
P. O. Drawer H
Reserve, Louisiana 70084
Phone: (985) 536-1186
Fax: (985) 536-6445
Email: dbecnel@becnellaw.com

**MDL 1657**

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

OCT - 8 2004

FILED
CLERK'S OFFICE

PLEADING NO. 1

BEFORE THE JUDICIAL PANEL

ON MULTIDISTRICT LITIGATION

IN RE VIOXX LITIGATION MDL DOCKET NO: _____

## MOTION TO TRANSFER AND CONSOLIDATE
## PURSUANT TO 28 U.S.C. Sec. 1407

Daniel E. Becnel, Jr.
106 West Seventh Street
P.O. Drawer H
Reserve, Louisiana 70084
Telephone: 985-536-1186
Facsimile: 985-539-6445

Counsel for Plaintiffs, Salvadore Christina, Sr. individually and on behalf of others similarly situated, C.A. 04-2726, U.S.D.C., Eastern District of Louisiana, New Orleans Division



OFFICIAL FILE COPY

IMAGED OCT - 8 '04

EXHIBIT
A

Now into Court, through undersigned counsel, come the plaintiffs in the case entitled *Salvadore Christina, Sr. individually and on behalf of others similarly situated, Plaintiff/Class Representative v. Merck and Company, Inc., Defendants, U.S.D.C., Eastern District of Louisiana, New Orleans Division, C.A. 04-2726, Sect. A, Mag. 3,* who, through their undersigned counsel, move the Judicial Panel on Multidistrict Litigation (the "Panel") for an Order pursuant to 28 U.S.C. Sec. 1407, to transfer and consolidate the cases listed in the attached Schedule of Actions Involved, such actions concerning consumer claims and personal injury claims stemming from the prescription drug Vioxx (rofecoxib).

1.

Movants are consumers who sustained economic damages and/or personal injuries as a result of the ingestion of Vioxx taking for medical conditions.

2.

Vioxx was launched in the United States in 1999. Subsequently, Vioxx was removed from the market resulting from the overwhelming undisclosed negative reactions from ingestion of the drug.

3.

Because of these failures to disclose such risks, Vioxx was prescribed to consumers for medical purposes for which it greatly increased the risk and resulting effects of strokes and heart attacks. In such circumstances, consumers were unwittingly made to pay for Vioxx, and go to the time and expense of obtaining Vioxx, while not being informed of the elevated risks of such injury and suffered from such injuries.

-2-

4.

The transfer and consolidation of these suits is appropriate, and will serve the purpose of judicial economy, national coordination of discovery and other pre-trial efforts, will prevent duplicative and potentially conflicting pretrial rulings, will reduce the costs of litigation and allow cases to proceed more efficiently to trial.

WHEREFORE, Plaintiffs pray that the Panel transfer and consolidate the cases referenced in the attached Schedule of Actions Involved to a single district for coordinated and/or consolidated pre-trial proceedings.

Respectfully submitted,

Daniel E. Becnel, Jr. T.A. (La. Bar 2926)
Matthew B. Moreland (La. Bar 24567)
P.O. Drawer H
106 West Seventh Street
Reserve, LA 70084
Telephone: (985)536-1186
Facsimile: (985)536-6445
Plaintiffs counsel in *Christina v. Merck and Company, Inc.*, U.S.D.C., Eastern District of Louisiana, C.A. 04-2726

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

OCT - 8 2004

FILED
CLERK'S OFFICE

BEFORE THE JUDICIAL PANEL

ON MULTIDISTRICT LITIGATION

_____

IN RE VIOXX LITIGATIONMDL DOCKET NO: _____

_____

**MEMORANDUM IN SUPPORT OF MOTION
TO TRANSFER AND CONSOLIDATE
PURSUANT TO 28 U.S.C. Sec. 1407**

Daniel E. Becnel, Jr.
106 West Seventh Street
P.O. Drawer H
Reserve, Louisiana 70084
Telephone: 985-536-1186
Facsimile: 985-539-6445

Counsel for Plaintiffs, Salvadore Christina, Jr. individually and on behalf of others similarly
situated, C.A. 04-2726, U.S.D.C., Eastern District of Louisiana, New Orleans Division
[Additional Counsel Listed on Signature Page]

RECEIVED
CLERK'S OFFICE

PANEL ON
MULTIDISTRICT
LITIGATION

2004 OCT -6 A 11: 54

MAY IT PLEASE THE COURT:

Now into Court, through undersigned counsel, come the plaintiffs in the case entitled *Salvadore Christina, Sr. individually and on behalf of others similarly situated, Plaintiff/Class Representative v. Merck and Company, Inc., Defendants, U.S.D.C., Eastern District of Louisiana, New Orleans Division, C.A. 04-2726, Sect. A, Mag. 3,* who, through their undersigned counsel, move the Judicial Panel on Multidistrict Litigation (the "Panel") for an Order pursuant to 28 U.S.C. Sec. 1407, to transfer and consolidate the cases listed in the attached Schedule of Actions Involved, such actions concerning consumer claims and personal injury claims stemming from the prescription drug Vioxx (rofecoxib).

## A.    BACKGROUND OF THE LITIGATION

Vioxx was launched in the United States in 1999. Subsequently, Vioxx was removed from the market resulting from the overwhelming undisclosed negative reactions from ingestion of the drug. Because of these failures to disclose such risks, Vioxx was prescribed to consumers for medical purposes for which it greatly increased the risks and resulting effects of strokes and heart attacks. In such circumstances, consumers were unwittingly made to pay for Vioxx, and go to the time and expense of obtaining Vioxx, while not being informed of the elevated risks of such injury and suffering such injuries.

The transfer and consolidation of these suits is appropriate, and will serve the purpose of judicial economy, national coordination of discovery and other pre-trial efforts, will prevent duplicative and potentially conflicting pretrial rulings, will reduce the costs of litigation and allow cases to proceed more efficiently to trial.

## D.   TRANSFER AND CONSOLIDATION INTO A MDL WILL PROMOTE THE JUST AND EFFICIENT CONDUCT OF THE LISTED ACTIONS

Transfer, coordination, and/or consolidation of actions is appropriate when (1) the actions involve one or more common questions of fact; (2) the transfer would serve the convenience of the parties and witnesses; and (3) the transfer would promote the just and efficient conduct of the actions. 28 U.S.C. Sec. 1407.

Review of the listed Complaints above clearly demonstrates common questions between the suits. Because of the similarity in allegations and prayers for relief, consolidation for pretrial purposes will foster judicial economy within the federal system, would prevent duplicative discovery by various plaintiffs against the same or similar defendants, will prevent the possibility of inconsistent discovery and pretrial rulings by various federal courts, therefore promoting the just and efficient conduct of the actions.

WHEREFORE, plaintiffs respectfully request that all genuinely related matters be consolidated for pretrial proceedings and be transferred to the Eastern District of Louisiana. .

Respectfully submitted,

Daniel E. Becnel, Jr. T.A. (La. Bar 2926)
Matthew B. Moreland (La. Bar 24567)
P.O. Drawer H
106 West Seventh Street
Reserve, LA 70084
Telephone: (985)536-1186
Facsimile: (985)536-6445
Plaintiffs counsel in Christina v. Pfizer, Inc.,
U.S.D.C., Eastern District of Louisiana, C.A. 04-2726

-4-

Case MDL-57 No. 1657 Document 1 Filed 10/08/04 Page 3 of 3

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

OCT - 8 2004

FILED
CLERK'S OFFICE

## BEFORE THE JUDICIAL PANEL

## ON MULTIDISTRICT LITIGATION

IN RE VIOXX LITIGATION MDL DOCKET NO: _____

## SCHEDULE OF ACTIONS INVOLVED
## PURSUANT TO 28 U.S.C. Sec. 1407

**NOW INTO COURT,** through undersigned counsel comes the plaintiff, *Salvadore Christina, Sr. individually and on behalf of others similarly situated, Plaintiff/Class Representative v. Merck and Company, Inc., Defendants, U.S.D.C., Eastern District of Louisiana, New Orleans Division, C.A. 04-2726, Sect. A, Mag. 3,* who respectfully submit this Schedule of Actions Involved:

**Eastern District of Louisiana**

*\*Salvadore Christina, Sr. individually and on behalf of others similarly situated, Plaintiff/Class Representative v. Merck and Company, Inc., Defendant,* C.A. 04-2627, Judge Jay C. Zainey, filed October 1, 2004;

**District of Minnesota**

*\*Carolyn Glover, Plaintiff/Class Representative v. Merck and Company, Inc., U.S.D.C.,*

District of Minnesota, 03-CV-5166, Chief Judge James M. Rosenbaum, filed September 3, 2003;

**District of South Carolina**

  *Bridget Elaine Michaud, Plaintiffs/Class Representatives v. Merck and Company, Inc.,*

*Defendant,* U.S.D.C., District of South Carolina, C.A. 03-3083, Judge Terry Wooten, filed

September 26, 2003;

**District of Missouri**

  *Deyonne E. Whitmore, Plaintiff/Class Representative v. Merck and Company, Inc.,*

*Defendant,* U.S.D.C., Eastern District of Missouri, C.A. 03-1354, Judge E. Richard Webber, filed

September 19, 2003;

**District of Ohio**

  Complaint cover page of action *Janet Dauterman, Ryan Dauterman, Brock Dauterman and*

*Holly Dauterman, Plaintiff/Class Representative v. Merck and Company, Inc.,* U.S.D.C., Northern

District of Ohio, C.A. 03CV7623, Judge James G. Carr, filed October 23, 2002.

        Respectfully submitted,


        Daniel E. Becnel, Jr. T.A. (La. Bar 2926)
        Matthew B. Moreland (La. Bar 24567)
        P.O. Drawer H
        106 West Seventh Street
        Reserve, LA 70084
        Telephone: (985)536-1186
        Facsimile: (985)536-6445
        Plaintiffs counsel in Christina v. Pfizer, Inc.,
        U.S.D.C., Eastern District of Louisiana, C.A. 04-2726

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

OCT - 8 2004

FILED
CLERK'S OFFICE

# BEFORE THE JUDICIAL PANEL

# ON MULTIDISTRICT LITIGATION

IN RE VIOXX LITIGATION          MDL DOCKET NO: _____

## EXHIBITS IN SUPPORT OF
## MEMORANDUM IN SUPPORT OF
## MOTION FOR TRANSFER AND CONSOLIDATION
## PURSUANT TO 28 U.S.C. Sec. 1407

**NOW INTO COURT,** through undersigned counsel come the plaintiffs, *Salvadore Christina, Sr., individually and on behalf of others similarly situated, Plaintiff/Class Representative v. Merck and Company, Inc., Defendants, U.S.D.C., Eastern District of Louisiana, New Orleans Division, C.A. 04-2726, Sect. A, Mag. 3,* who respectfully submit this list of exhibits in support of their Motion to Transfer and Consolidate:

A.   Complaint filed in *Salvadore Christina, Sr. individually and on behalf of others similarly situated, Plaintiff/Class Representative v. Merck and Company, Inc., Defendants,* U.S.D.C., Eastern District of Louisiana, C.A. 04-2726, Sect. A, Mag. 3, filed October 1, 2004;

B.   Complaint cover page of action *Carolyn Glover, Plaintiff/Class Representative v. Merck and*

*Company, Inc.,* U.S.D.C., District of Minnesota, filed September 3, 2003;

C.    Complaint filed in *Bridget Elaine Michaud, Plaintiffs/Class Representatives v. Merck and Company, Inc., Defendant*, U.S.D.C., District of South Carolina, C.A. 03-3083 filed September 26, 2003;

D.    Complaint cover page of action *Deyonne E. Whitmore, Plaintiff/Class Representative v. Merck and Company, Inc., Defendant*, U.S.D.C., Eastern District of Missouri, C.A. 03-1354, filed September 19, 2003;

E.    Complaint cover page of action *Janet Dauterman, et al, Plaintiff/Class Representative v. Merck and Company, Inc.,* U.S.D.C., Northern District of Ohio, C.A. 03CV7623 filed October 23, 2002.

Respectfully submitted,

Daniel E. Becnel, Jr. T.A. (La. Bar 2926)
Matthew B. Moreland (La. Bar 24567)
P.O. Drawer H
106 West Seventh Street
Reserve, LA  70084
Telephone: (985)536-1186
Facsimile: (985)536-6445
Plaintiffs counsel in Christina v. Pfizer, Inc.,
U.S.D.C., Eastern District of Louisiana, C.A. 04-1450



THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | |
|---|---|
| SALVADORE CHRISTINA, SR., individually and on behalf of all others similarly situated, | Civil No. 04 2726 |
| | Jury Trial Demanded |
| Plaintiff/Class Representative, | Class Action Complaint |
| vs. | SECT. A MAG. 3 |
| MERCK & CO, INC., a New Jersey Corporation | |
| Defendant. | |

## CLASS ACTION COMPLAINT

NOW INTO COURT comes Plaintiff SALVADORE CHRISTINA, individually and on behalf of all others similarly situated, and hereby alleges as follows based upon public documents and information and belief against Merck & Co., Inc. (hereinafter "Defendant").

### PARTIES

1.     Plaintiff SALVADORE CHRISTINA, SR. is a resident citizen of Louisiana, Parish of Jefferson. Plaintiff was prescribed and purchased the drug Vioxx for treatment of nerve pain and gout. Plaintiff brings this action to recover damages for personal injuries sustained after taking Vioxx.

2.     Defendant Merck & Company, Incorporated is a New Jersey corporation with its principal place of business in New Jersey. Merck describes itself as a global research-driven pharmaceutical products company.

LITIGATION
JUDICIAL PANEL ON
MULTIDISTRICT

2004 OCT -8 A 11: 21

CLERK'S OFFICE
RECEIVED

EXHIBIT

A

## JURISDICTION AND VENUE

3.    This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000.

4.    This Court has supplemental jurisdiction over the remaining common law and state claims pursuant to 28 U.S.C. § 1367.

5.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to Plaintiff's claims occurred, in part, in the Eastern District of Louisiana.

## FACTUAL ALLEGATIONS

6.    Plaintiff brings this action to recover damages for personal injury, restitution, refund and/or for equitable, injunctive relief against Merck, who tested, marketed, distributed, promoted, sold, prescribed and filled Vioxx, which the Plaintiff took after it was prescribed to him, and, as a result thereof, suffered damages.

7.    This case involves the Plaintiff's use of a drug called Vioxx (rofecoxib). It was designed to treat osteoarthritis, rheumatoid arthritis, acute pain, and migraines.

8.    It was designed, formulated, patented, marketed, sold, and ultimately distributed by the Defendant as Vioxx.

9.    Osteoarthritis, or degenerative joint disease, is characterized by the breakdown of the joint's cartilage (which cushions the ends of bones). Cartilage breakdown causes bones to rub against each other, leading to pain and loss of movement.

10.     Rheumatoid arthritis is a chronic syndrome characterized by inflammation in the lining of the joints, causing pain, stiffness, warmth, redness and swelling, leading to pain and loss of movement.

11.     Vioxx is in a class of drugs called non-steroidal anti-inflammatory drugs ("NSAIDs"). It works by reducing substances that cause inflammation, pain and fever.

12.     Prostaglandins are chemicals that are important in promoting inflammation and its symptoms (pain, fever, swelling and tenderness). Vioxx blocks the enzyme that makes prostaglandins thereby reducing the amounts of prostaglandins, and reducing inflammation and its symptoms.

13.     The United States Food and Drug Administration ("FDA") first approved Vioxx in 1999 for the reduction of pain and inflammation caused by osteoarthritis, acute pain and menstrual pain. It was subsequently approved to treat rheumatoid arthritis in adults and children.

14.     In June 2000, Merck submitted a safety study to the FDA entitled "Vioxx Gastrointestinal Outcomes Research" that found an increased risk of serious cardiovascular events, including heart attacks and strokes in patients taking Vioxx.

15.     In February, 2001, the FDA consulted its Arthritis Advisory Committee regarding the clinical interpretation of this new safety information.

16.     In April, 2001, the FDA implemented labeling changes which included information about the increase in risk of cardiovascular events, including heart attacks and stroke.

17.     Other studies recently suggested an increased risk of cardiovascular events, and the FDA was in the process of reviewing these studies to determine if further labeling changes were needed.

- 3 -

18.     On September 30, 2004, Merck voluntarily withdrew Vioxx from the market after the data safety monitoring board overseeing a long-term study of the drug recommended that the study be halted because of an increased risk of serious cardiac events, including heart attack and strokes. The risk was approximately twice that of individuals taking a placebo.

19.     Annual sales of Vioxx total approximately $2.5 billion.

20.     Defendant had an obligation not to violate the law in the manufacture, design, and sale of Vioxx.

21.     Defendant violated the Federal Food, Drug and Cosmetic Act, 21 U.S.C. §301, et seq.

22.     Defendant failed to meet the standard of care set by the above statutes and regulations, which were intended for the benefit of individual consumers such as the Plaintiff, making the Defendant negligent per se.

**COUNT I**
**Breach of Express Warranty**

23.     Plaintiff restates and realleges all paragraphs above and in addition, states matters as set forth below.

24.     Defendant expressly warranted to the market, including the Plaintiff, by and through statements made by Defendant or its authorized agents or sales representatives, orally and in publications, package inserts and other written materials to the health care community, that Vioxx was safe, effective, fit and proper for its intended use.

25.     In using Vioxx, the Plaintiff relied on the skill, judgment, representations, and foregoing express warranties of the Defendant. These warranties and representations proved to be false because the product was not safe and was unfit for the uses for which it was intended.

- 4 -

26. As a direct and proximate result of Defendant's breaches of warranties, Plaintiff was injured and suffered special and compensatory damages to be proven at trial.

## COUNT II
## Violation Of Warranty Of Redhibition

27. Defendant was aware that there was no evidence to suggest that Vioxx had any measurable efficacy to treat these off-label uses and thus it was not fit for its intended uses.

29. Also, because Defendant was also the manufacturer of Vioxx, Defendant is deemed to be aware of Vioxx's redhibitory defects pursuant to LSA-C.C. art. 2545.

30. Because there was no clinically significant evidence providing that Vioxx had any effect on the treatment of Plaintiff's illness, and Plaintiff avers that Plaintiff would not have purchased Vioxx had Plaintiff known of these defects.

31. Defendant is thus liable to each of the proposed class members under the theory of redhibition.

32. Thus, each class member is entitled to a return of any purchase price paid, including but not limited to insurance co-payments, interest on these amounts from the date of purchase, attorneys' fees and costs, non-pecuniary damages, as well as any other legal or equitable relief to which Plaintiff may be entitled.

## COUNT III
## Breach Of The Implied Warranty

33. Plaintiff incorporates the allegations contained in the preceding paragraphs.

34. Defendant has breached the implied warranty of merchantability in that Vioxx was not reasonably fit for the off label purposes for which it was sold, intended, or reasonably foreseen, to be used. Moreover, the Vioxx manufactured and sold by Defendant was defective on the date of its delivery to Plaintiff and the Class.

- 5 -

35.     Defendant has also breached the implied warranty of fitness for a particular purpose. Vioxx is not reasonably fit for the specific off label purposes for which Defendant knowingly sold it and for which the Plaintiff and Class bought Vioxx in reliance on Defendant.

36.     Plaintiff and the Class have suffered damages as a result of Defendant's breach of warranty.

### COUNT IV
### Unjust Enrichment

37.     Plaintiff incorporates the allegations contained in the preceding paragraphs.

38.     Defendant has knowingly received, and continues to receive, a substantial benefit at the expense of Plaintiff and Class members.

39.     It would be unjust and unconscionable to permit Defendant to enrich themselves at the expense of Plaintiff and Class members and to retain the funds that Defendant wrongfully obtained from Plaintiff and Class members.

### COUNT V
### Negligence

40.     Plaintiff incorporates the allegations contained in the preceding paragraphs.

41.     Defendant has a duty to exercise the necessary degree of care expected and required of manufacturers of health care products. Defendant deviated from that duty by promoting the off-label uses of Vioxx.

42.     As a result of Defendant's negligence, Plaintiff and the Class have been injured. These damages are the actual and proximate result of Defendant's breach of this duty of care.

### CLASS ACTION

43.     This action is appropriate for determination through the Class Action Procedure for the following reasons:

- 6 -

A.     The large number of potential claimants present a level of numerosity better handled through the class action procedure as opposed to a mass joinder of individual claims;

B.     The common issues of law and fact pertaining to the determination of fault and the liability for compensatory and exemplary damages predominate over the individual issue of quantum, and such issues are typical of similar claims;

C.     The determination of fault and the basis for assessment of compensatory and exemplary damage may be made in the class action without the necessity of proof at that time as to the amount of those damages, thereby establishing guidelines for settlement and/or subsequent trials in individual cases if necessary;

D.     Petitioners herein have sustained damages of the nature described hereinabove and are suitable representatives of the class;

E.     The Plaintiffs herein are represented by skilled attorneys who are experienced in handling mass torts and class actions, and who can be expected to handle this matter in an expeditious and economical matter to the best interests of the class membership;

F.     The class action procedure is the superior vehicle for the efficient disposition of the issues and claims herein presented.

**WHEREFORE**, Plaintiffs pray:

1.     that defendant be required to answer this class action complaint after all legal delays have run, all in accordance with law;

2.     that after due proceedings had, that this action be certified as a class action, as alleged above, for the purposes of determining the common issue of liability for appropriate damages;

3.     that upon certification of the class action, the Court call for the formulation of a suitable management plan;

4.     that after due proceedings had, and a trial by jury, there be judgment herein in favor of Plaintiffs and against defendant, for all damages which are reasonable in the premises, together with legal interest thereon from the date of judicial demand until paid, and for all costs of these proceedings;

5.     that the rights of the Plaintiffs and the members of the class to establish their entitlement to compensatory damages, and the amounts thereof, be reserved for determination in their individual actions when appropriate;

6.     that Plaintiffs recover their costs for the prosecution of this class action;

7.     that a medical monitoring class be certified, and the court award appropriate damages sufficient to establish a medical monitoring program as deemed effective by Plaintiffs' medical experts; and

8.      that the Court render judgment in favor of the Plaintiffs' class awarding all

damages as prayed for herein, including attorneys' fees, with all costs assessed

against Defendant.

RESPECTFULLY SUBMITTED,

LAW OFFICES OF DANIEL E. BECNEL, JR.
Daniel E. Becnel, Jr. (T.A., La.Bar 2926)
Matthew B. Moreland (La.Bar 24567)
106 West Seventh Street
P.O. Drawer H
Reserve, LA   70084
Telephone: (985) 536-1186
Facsimile: (985) 536-6445

UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

CAROLYN Y. GLOVER          No.
            Plaintiffs,

v.                      COMPLAINT

MERCK & CO., INC., a New Jersey     JURY TRIAL DEMANDED
corporation,

           Defendants.

Plaintiff Carolyn Y. Glover, by and through counsel undersigned, alleges as their Complaint

against Defendant as follows:

## PARTIES, JURISDICTION AND VENUE

     1.     Carolyn Y. Glover, at all times relevant hereto, has resided in St. Clair County,

Illinois. As used herein, "Plaintiff" shall refer to Carolyn Y. Glover unless specifically noted

otherwise.

     2.     At all times relevant herein, Defendant Merck & Co., Inc. (Merck), was and is an

American pharmaceutical company incorporated under the laws of the State of New Jersey with its

principal place of business at One Merck Drive, P. O. Box 100, Whitehouse Station, New Jersey.

Defendant was and is in the business of profiting from the design, manufacture, marketing,

distribution and/or sales of the brand-name prescription drug Vioxx (rofecoxib).

     3.     This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 (diversity

1



EXHIBIT

B

**FILED**

SEP 2 6 2003

LARRY W. PROPES, CLERK
FLORENCE, SC

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF SOUTH CAROLINA
### FLORENCE DIVISION

|  |  |
|---|---|
| **BRIDGET ELAINE MICHAUD,** | : File No. 4-03-3083-12 |
| **Individually and as Personal Representative** | : |
| **on behalf of the Estate of ANDRE ADRIAN** | : **COMPLAINT** |
| **MICHAUD, DECEDENT,** | : Negligence |
|  | : Strict Liability |
| **Plaintiffs,** | : Misrepresentation and Suppression of Defendant |
| **v.** | : Breach of Warranty |
|  | : Fraud |
| **MERCK & CO., INC., a New Jersey** | : Violation of Unfair Trade Practices Act |
| **corporation,** | : Survival |
|  | : Wrongful Death |
| **Defendants.** | : Loss of Consortium |
|  | : |
|  | : **JURY TRIAL DEMANDED** |

Plaintiff Bridget Elaine Michaud, by and through counsel undersigned, alleges as her complaint against Defendant as follows:

#### PARTIES, JURISDICTION AND VENUE

1.     Plaintiff Bridget Elaine Michaud and decedent Andre Adrian Michaud, at all times relevant hereto, have resided in Horry County, South Carolina and until decedent's death have been lawfully married to one another as husband and wife.    Hereinafter, all references to "Plaintiff" refer to Plaintiff's decedent unless specifically noted otherwise.

2.     At all times relevant herein, Defendant Merck & Co., Inc. (Merck) was and is an American pharmaceutical company incorporated under the laws of the State of New Jersey with its principal place of business at One Merck Drive, P. O. Box 100, Whitehouse Station, New Jersey. Defendant was and is in the business of profiting from the design, manufacture, marketing, distribution and/or sales of the brand-name prescription drug Vioxx (rofecoxib).

1



EXHIBIT
C

3.     This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 (diversity jurisdiction) because the amount in controversy exceeds $75,000.00 exclusive of interest and costs, and because this is an action by an individual Plaintiff who is a citizen of a different state from the Defendants.

4.     Venue is proper in this District pursuant to 28 U.S.C. § 1391. The drug Vioxx was prescribed for, purchased by and ingested by Plaintiff in the District of South Carolina. Defendant advertised in this District, received substantial compensation and profits from sales of the drug in this District, and made material omissions and misrepresentations and breached warranties in this District.

## FACTUAL ALLEGATIONS

5.     This action arises from the sales and efficacy of Vioxx, a pain-relief drug containing rofecoxib. Vioxx is a selective COX-2 inhibitor marketed by Defendant as an anti-inflammatory analgesic.

6.     Defendant, Merck & Co., Inc. ("Merck") obtained FDA approval on Vioxx in approximately May of 1999 and began its distribution and sale throughout the United States in approximately May of 1999. Vioxx is a brand name used by Merck to market and distribute rofecoxib.

7.     Plaintiff, Andre Adrian Michaud, at age 55, received a prescription for Vioxx on or about June 13, 2001. Plaintiff took the drug as prescribed by a medical professional. Plaintiff died on September 4, 2001 from cardiac arrest.

8.     Vioxx was a proximate and legal cause of Plaintiff's cardiac arrest.

9.     Plaintiff Bridget Elaine Michaud is the heir and personal representative of Plaintiff Andre Adrian Michaud. She brings a claim in her own name and on behalf of the estate

2

of her husband to recover damages and compensation for legal claims arising from her husband's death and injuries leading to his death. Where claims herein are asserted on behalf of Plaintiff Bridget Elaine Michaud, she is specifically identified by name; references to "Plaintiff" without a specific identification of Bridget Elaine Michaud shall be deemed to refer to Andre Adrian Michaud.

10.     Defendant Merck distributed and sold Vioxx to consumers such as Plaintiff. Vioxx was approved for marketing based on information in the New Drug Application, which was on a fast-track, 6-month approval process to FDA.

11.     Despite knowledge in its clinical trials and post-marketing reports, studies and information relating to cardiovascular-related adverse health effects, Defendant promoted and marketed Vioxx as safe and effective for persons such as Plaintiff.

12.     Defendant concealed the serious cardiovascular risks associated with Vioxx because a successful launch of Vioxx was viewed as critical for Merck and safety concerns over hypertension, thrombosis, edema and/or cardiovascular events would have drastically impacted Merck's positioning in the market as compared to its competition drug, Celebrex (celecoxib), which had been placed into the market by Merck competitors Pharmacia and Pfizer some three (3) months prior to the launch of Vioxx.

13.     Merck knowingly chose to market this product, despite its knowledge at product launch and in post-marketing data thereafter that use of Vioxx carried significant risk factors. These adverse effects were realized in adverse event reports, in clinical trials where such events were adjudicated by primary investigators with Merck's assistance, and in one or more studies shortly after market launch which showed statistically significant increases in adverse cardiovascular events among Vioxx users.

3

14.     In industry sponsored studies presented at the European United League Against Rheumatism (EULAR), an organization in which Merck is a member and corporate sponsor, in June of 2000, it was shown that Vioxx use resulted in a statistically significant increase in hypertension and myocardial infarction. Merck did nothing to publish these studies, which were again reported and denied by Merck as to the hypertension problems in the official publication of the American Pharmaceutical Association, Pharmacy Today, Spin War Aside, Lessons Emerge From COX-2 Trials, in August 2000, page 3.

15.     Merck continued to deny the ill health effects associated with Vioxx while at the same time reaping the profits obtained through their non-disclosure. Merck engaged in an aggressive and expansive advertising and sampling program and gained continued increases in market share, which enhanced Merck's financial stability to the detriment of its consumers. The resultant effect to Merck in concealing and failing to reveal and warn of the risks was a more than $2 billion profit in 2000 alone to Merck and an approximately 23 percent share of the market.

16.     The profits to Merck were realized as it continued to withhold relevant data from Plaintiffs and the health care industry generally. For example, in November of 2000, Merck caused the publication of a study in the NEW ENGLAND JOURNAL OF MEDICINE and knowingly downplayed and/or withheld from this publication the severity of cardiovascular risks associated with Vioxx consumption over naproxen consumption.

17.     On or about August 29, 2001, the JOURNAL OF THE AMERICAN MEDICAL ASSOCIATION published a peer-reviewed human epidemiologic study by the Cleveland Clinic Foundation, Cleveland, Ohio, Dr. D. Mukhisjee, *et al.*, showing what Merck had concealed -- that the relative risk of developing a "confirmed adjudicated thrombotic cardiovascular event

4

(defined in the article as "myocardial infarction, unstable angina, cardiac thrombus, resuscitated cardiac arrest, sudden or unexplained death, ischemic stroke, and transient ischemic attacks") among Vioxx users in Merck's trials at a 95% confidence interval ranged from 2.2 for event-free survival analysis, 2.38 compared to naproxen users, and 4.89 for developing serious cardiovascular events among aspirin-indicated patients. *See* Mukhisjee, D., *et al.*, *Risk of Cardiovascular Events Associated With Selective Cox-2 Inhibitors*, JAMA. 286:8, 954-959, Aug. 22/29, 2001. In addition, the annualized myocardial infarction rates for Vioxx users compared to placebo revealed a statistically significant increase among Vioxx users. *Id.*

18.    In the JAMA study, the authors set forth the theory that "by decreasing PGI2 production [Vioxx] may tip the natural balance between prothrombotic thromboxane A2 and antithrombotic PGI2, potentially leading to an increase in thrombotic cardiovascular events." *Id.* at 957. In a follow-up peer-reviewed study reported in the JOURNAL OF THE AMERICAN COLLEGE OF CARDIOLOGY on or about February 6, 2002, Dr. Richard J. Bing conducted scientific testing and confirmed that the Cox-2 inhibitor "tips the balance of prostacyclin/thromboxane in favor of thromboxane, leading to increased vascular and thrombotic events." Bing, R., & Lomnicka, M., *Why Do Cyclo-Oxygenase-2 Inhibitors Cause Cardiovascular Events?*, J.A.C.C., 39:3, Feb. 6, 2002. This biological plausibility is further supported by studies completed at the University of Pennsylvania. Cheng, Y., *et al.*, *Role of Prostacyclin in the Cardiovascular Response to Thromboxane A2*, JOURNAL OF SCIENCE, V. 296:539-541, Apr. 19, 2002.

19.    In responsive, Merck-authored and sponsored reviews, Merck set forth the theory that naproxen had a cardio-protective effect and therefore accounted for the cardiovascular risks among its Vioxx users. However, this theory was debunked in approximately January of 2002, by a Vanderbilt University School of Medicine human epidemiologic peer-reviewed study

5

published in THE LANCET, concluding that based upon information previously available, this is an absence of a protective effect of naproxen or other non-aspirin non-steroidal anti-inflammatory drugs on risk of coronary heart disease. Ray, W., *et al.*, *Non-Steroidal Anti-inflammatory Drugs and Risk of Serious Coronary Heart Disease: An Observational Cohort Study*, THE LANCET, 359:118-123, Jan. 12, 2002.

20.    In mid-September, 2001, Merck received a *third* Warning Letter from FDA stating in part that Defendant's promotional activities and materials are "false, lacking in fair balance, or otherwise misleading in violation of the Federal Food, Drug, and Cosmetic Act (the Act) and applicable regulations."   The FDA stated that Defendant's promotional campaign "minimizes the potentially serious cardiovascular findings" from a Vioxx study and "misrepresents the safety profile for Vioxx."   As to Merck's May 22, 2001 press release, the FDA wrote "your claim in the press release that Vioxx has a 'favorable safety profile' is simply incomprehensible, given the rate of MI [myocardial infarction] and serious cardiovascular events compared to naproxen.   The implication that Vioxx's cardiovascular profile is superior to other NSAIDs is misleading; in fact, serious cardiovascular events were twice as frequent in the VIOXX treatment group ... as in the naproxen treatment group...."

21.    In approximately April of 2002, Merck was required to place cardiovascular warnings on its Vioxx labeling based on the results of the VIGOR study. In addition, Merck was required to place new label warnings relaying that Vioxx 50 mg per day is not recommended for chronic use. These warnings were based on information that had been in Merck's possession by approximately January of 2000 at the latest and, as such, Merck did not meet its obligation to provide adequate "direction or warnings" as to the use of Vioxx within the meaning of Section 402 of the Restatement (Second) of Torts or otherwise.  Neither did Merck fulfill its obligation to

6

warn the prescribing health care provider of these risks.

22.     At all times relevant to this litigation, Defendant Merck had a significant market share based upon claims of Vioxx's efficacy, a very aggressive marketing program which included financial incentives to sales teams, infusion of some 700 new sales representatives, and a massive direct-to-consumer advertising and physician sampling program.

23.     As a result of such marketing, Vioxx gained a significant market share in competition with Celebrex, that Merck would not have gained if Merck had not suppressed information about Vioxx and/or made false representations of Vioxx's superiority and efficacy.

24.     If Defendant had not engaged in this conduct, prescribers such as Plaintiff's prescriber would not have prescribed Vioxx and patients, such as the Plaintiff, would have switched from Vioxx to safer products or would have refrained wholly from any use of Vioxx.

25.     From approximately 1999 through present, Defendant has continued to engage in a common scheme of marketing, distributing and/or selling Vioxx under the guise that it was safe and efficacious for persons such as Plaintiff before, during and after Plaintiff experienced this confirmed adverse event resulting in his permanent disability.

26.     Plaintiff alleges that the suppression of this information constituted a common scheme by Defendant to conceal material information from Plaintiff.

27.     Plaintiff alleges that the marketing strategies, including without limitation the detail and sampling programs and direct-to-consumer advertising, of the Defendant targeted Plaintiff to induce Plaintiff to purchase Vioxx. At the time the Defendant distributed, manufactured and marketed Vioxx, Defendant intended that Plaintiff would rely on the marketing, advertisements and product information propounded by Defendant.

28.     The actions of Defendant, in failing to warn of the clear and present danger posed

7

UNITED STATES DISTRICT COURT

FILED

EASTERN DISTRICT OF MISSOURI

SEP 19 2003

U. S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

DEYONNE E. WHITMORE,

4 : 03CV0 1354 DDN

Civil Action No.

Plaintiff,

COMPLAINT

v.

JURY TRIAL DEMANDED

MERCK & CO., INC., a New Jersey
corporation,

Defendant.

---

Plaintiff Deyonne E. Whitmore, by and through counsel undersigned,
alleges as their complaint against Defendant as follows:

## PARTIES, JURISDICTION AND VENUE

1.      Deyonne E. Whitmore, at all times relevant hereto, has resided in Jackson
County, Missouri.

2.      At all times relevant herein, Defendant Merck & Co., Inc. (Merck), was
and is an American pharmaceutical company incorporated under the laws of the State
of New Jersey with its principal place of business at One Merck Drive, P. O. Box 100,
Whitehouse Station, New Jersey. Defendant was and is in the business of profiting
from the design, manufacture, marketing, distribution and/or sales of the brand-name
prescription drug Vioxx (rofecoxib).

1


EXHIBIT

D



## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT
### WESTERN DIVISION

**3:03CV7623**

Case No.

Janet Dauterman
9478 Huffman Rd
Portage, OH 43451

Rod Dauterman
9478 Huffman Rd
Portage, OH 43451

Ryan Dauterman (DOB 6-3-66)
306 Vine Street
Bloomdale, OH 44817

Brock Dauterman (DOB 11-12-76)
26817 Lakeblue Dr., Apt. 5
Perrysburg, OH 43551

Holly Dauterman (DOB 1-18-79)
535 W. Gypsy Lane, Lot 5
Bowling Green, OH 43402

    Plaintiffs,

 -vs-

Merck & Co., Inc.
c/o CT Corporation System
1300 E. Ninth Street
Cleveland, OH 44114

    Defendant.

COMPLAINT with JURY DEMAND
ENDORSED HEREON

Judge **JUDGE JAMES G. CARR**



EXHIBIT

*E*

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

OCT - 8 2004

FILED
CLERK'S OFFICE

BEFORE THE JUDICIAL PANEL

ON MULTIDISTRICT LITIGATION

IN RE VIOXX LITIGATION MDL DOCKET NO: _____

**SERVICE LIST AND PROOF OF SERVICE BY MAIL**

I do hereby certify that on this 5th day of October, 2004, I served true and correct copies of

the following documents via U.S. Mail:

1.  **MOTION TO TRANSFER AND CONSOLIDATE PURSUANT TO 28 U.S.C. Sec. 1407**

2.  **MEMORANDUM IN SUPPORT OF MOTION TO TRANSFER AND CONSOLIDATE PURSUANT TO 28 U.S.C. Sec. 1407**

3.  **SCHEDULE OF ACTIONS INVOLVED PURSUANT TO 28 U.S.C. Sec. 1407**

4.  **EXHIBITS IN SUPPORT OF MEMORANDUM IN SUPPORT OF MOTION TO TRANSFER AND CONSOLIDATE PURSUANT TO 28 U.S.C. Sec. 1407**

5.  **PROOF OF SERVICE BY MAIL**

on the following parties, addressed as indicated:

RECEIVED CLERK'S OFFICE
PANEL ON MULTIDISTRICT LITIGATION
2004 OCT -6 A 11: 55

Ronald S. Goldser
Zimmerman Reed
651 Nicolet Mall
Suite 501
Minneapolis, MN 55402
**Attorneys for Plaintiffs in the following cases**
*Carolyn Glover, Plaintiff/Class Representative v. Merck and Company, Inc.,* U.S.D.C., District of Minnesota, *Bridget Elaine Michaud, Plaintiffs/Class Representatives v. Merck and Company, Inc., Defendant,* U.S.D.C., District of South Carolina, C.A. 03-3083, *Deyonne E. Whitmore, Plaintiff/Class Representative v. Merck and Company, Inc., Defendant,* U.S.D.C., Eastern District of Missouri, C.A. 03-1354; and *Janet Dauterman, et al, Plaintiff/Class Representative v. Merck and Company, Inc.,* U.S.D.C., Northern District of Ohio, C.A. 03CV7623

Daniel E. Becnel, Jr.
Law Office of Daniel E. Becnel, Jr.
P.O. Drawer H
Reserve, LA 70084
Attorney's for Plaintiff in the following case
*Salvadore Christina, Sr. individually and on behalf of others similarly situated, Plaintiff/Class Representative v. Merck and Company, Inc., Defendants, U.S.D.C., Eastern District of Louisiana, New Orleans Division, C.A. 04-2726, Sect. A, Mag. 3,*

Charles W. Cohen
Norman C. Klienberg
Robb W. Patryk
Theodore V. H. Mayer
of Hughes, Hubbard & Reed
One Battery Park Plaza
New York, NY 10004-1482
**Attorneys for Defendant Merck and Company, Inc. In the following cases:**
*Carolyn Glover, Plaintiff/Class Representative v. Merck and Company, Inc.,* U.S.D.C., District of Minnesota, C.A. 03-5166, *Deyonne E. Whitmore, Plaintiff/Class Representative v. Merck and Company, Inc., Defendant,* U.S.D.C., Eastern District of Missouri, C.A. 03-1354; and *Janet Dauterman, et al, Plaintiff/Class Representative v. Merck and Company, Inc.,* U.S.D.C., Northern District of Ohio, C.A. 03CV7623, *Salvadore Christina, Sr. individually and on behalf of others similarly situated, Plaintiff/Class Representative v. Merck and Company, Inc., Defendants, U.S.D.C., Eastern District of Louisiana, New Orleans Division, C.A. 04-2726, Sect. A, Mag. 3,*

Charles Avrith
of Hughes, Hubbard & Reed
350 South Grand Avenue
Los Angeles, CA 90071-3442
**Attorneys for Defendant Merck and Company, Inc. In the following cases:**
*Carolyn Glover, Plaintiff/Class Representative v. Merck and Company, Inc.,* U.S.D.C., District of Minnesota, C.A.03-5166, *Deyonne E. Whitmore, Plaintiff/Class Representative v. Merck and Company, Inc., Defendant,* U.S.D.C., Eastern District of Missouri, C.A. 03-1354; and *Janet Dauterman, et al, Plaintiff/Class Representative v. Merck and Company, Inc.,* U.S.D.C., Northern District of Ohio, C.A. 03CV7623

Amanda M. Cialkowski
Scott A. Smith
Halleland, Lewis, Nilan, Simpkins & Johnson
220 6th St. S Suite 600
Minneapolis, MN 55402
**Attorneys for Defendant Merck and Company, Inc. in the following case:**
*Carolyn Glover, Plaintiff/Class Representative v. Merck and Company, Inc.,* U.S.D.C., District
of Minnesota, **C.A. 03-5166**

William Thomas Causby
Robert Bruce Shaw
Nelson Mullins Riley and Scarborough
P.O. Box 11070
Columbia , SC 29211
**Attorneys for Defendant Merck and Company, Inc. in the following case:**
*Bridget Elaine Michaud, Plaintiffs/Class Representatives v. Merck and Company, Inc.,
Defendant,* U.S.D.C., District of South Carolina, C.A. 03-3083,

Clerk of Court
Eastern District of Louisiana
500 Camp St.
New Orleans, LA. 70130
*Salvadore Christina, Sr. individually and on behalf of others similarly situated, Plaintiff/Class
Representative v. Merck and Company, Inc., Defendants, U.S.D.C.,* Eastern District of Louisiana,
New Orleans Division*, C.A. 04-2726;*

Clerk of Court
District of Minnesota
202 U.S. Courthouse
300 S. Fourth Street
Minneapolis, MN 55415
*Carolyn Glover, Plaintiff/Class Representative v. Merck and Company, Inc.,* U.S.D.C., District of
Minnesota, *C.A. 03-5166;*

Clerk of Court
District of South Carolina
401 W. Evans St.
Florence, SC 29501
*Bridget Elaine Michaud, Plaintiffs/Class Representatives v. Merck and Company, Inc., Defendant,*
U.S.D.C., District of South Carolina, *C.A. 03-3083;*

Clerk of Court
District of Ohio, Northern District
114 U.S. Courthouse
1716 Speilbusch Ave
Toledo, OH 43624
*Janet Dauterman, et al, Plaintiff/Class Representative v. Merck and Company, Inc.,* U.S.D.C.,
Northern District of Ohio, *C.A. 03CV7623;*

Clerk of Court
Eastern District of Missouri
111 S. Tenth St,
Suite 3.300
St. Louis, MO 63102
*Deyonne E. Whitmore, Plaintiff/Class Representative v. Merck and Company, Inc., Defendant*,
U.S.D.C., Eastern District of Missouri, *C.A. 03-1354*;

    I declare under penalty of perjury under the laws of the State of Louisiana that the
above is true and correct. Executed on October   __5__  , 2004

                    Respectfully submitted,

                    Daniel E. Becnel, Jr. T.A. (La. Bar 2926)
                    Matthew B. Moreland (La. Bar 24567)
                    P.O. Drawer H
                    106 West Seventh Street
                    Reserve, LA  70084
                    Telephone: (985)536-1186
                    Facsimile: (985)536-6445
                    Plaintiffs counsel in Christina v. Pfizer, Inc.,
                    U.S.D.C., Eastern District of Louisiana, C.A. 04-2726

BEFORE THE JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

|  |  |
| :--- | :--- |
|                                              : | MDL DOCKET NO.- |
|                                              : |  |
| In Re:  Chinese Drywall Litigation          : |  |

### MOTION OF PLAINTIFFS FOR TRANSFER OFACTIONS TO THE EASTERN DISTRICT OF LOUISIANA PURSUANT TO US 28 U.S.C. §1407 FOR COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS

Daniel E. Becnel, Jr.
Matthew B. Moreland
Becnel Law Firm
P.O. Drawer H
106 West 7th Street
Reserve, LA 70084

Pursuant to 28 U.S.C. §1407 and Rule 7.2 of the Rules of Procedure of the Judicial

Panel on MultiDistrict Litigation, plaintiffs in the action captioned Jill M. Donaldson, wife

of/and John "Jared" Oertling, behalf of themselves and all others similarly situated, v.

Knauf Gips KG, Knauf Plasterboard Tianjin Co., Ltd., Taishan Gypsum Co. Ltd. F/K/A

Shandong Taihe Dongxin Co. Ltd., USG Corporation, L&W Supply Corporation D/B/A

Seacoast Supply, Interior Exterior Building Supply, Independent Builders Supply

Association, Inc. and Rothchilt International Limited and any and all additional related

actions that may be brought to the attention of the Panel against similar defendants, to

the United States District Court for the Eastern District of Louisiana before the

Honorable Jay C. Zainey or in the alternative to the United States District Court for the

Middle District of Florida before Judge John E. Steele.



EXHIBIT
B

As set forth below and in the accompanying Memorandum, Movants believe the actions listed on the accompanying Schedule of Action (attached as Exhibit "A" to Plaintiff's Memorandum of Law in Support of Motion for Transfer and Coordination or Consolidation under 28 U.S.C. §1407) satisfy the requirements for consolidation and coordination because they concern common questions of fact and law and consolidation or coordination will serve be interest of efficiency and convenience.

In support of this Motion, Movants state as follows:

Movants are the named plaintiff in the following action:

Jill M. Donaldson, wife of/and John "Jared" Oertling, behalf of themselves and all others similarly situated, v. Knauf Gips KG, Knauf Plasterboard Tianjin Co., Ltd., Taishan Gypsum Co. Ltd. F/K/A Shandong Taihe Dongxin Co. Ltd., USG Corporation, L&W Supply Corporation D/B/A Seacoast Supply, Interior Exterior Building Supply, Independent Builders Supply Association, Inc. And Rothchilt International Limited

Movants bring this action against defendants based on the defendants' design, manufacture, promotion, selling and putting into the stream of commerce defective drywall.

Counsel for Movants are aware of the following other federal action containing virtually identical allegations and seeking similar relief against similar defendants. See Schedule of Actions.

For the foregoing reasons, Movants respectfully move this Panel for an order transferring all pending actions against defendants and any other additional related actions that may be brought to the attention of the Panel, to the United States District Court for the Eastern

District of Louisiana before the Honorable Jay C. Zainey or in the alternative to the United

States District Court for the Middle District of Florida before Judge John E. Steele.

Date:  March 13, 2009

Respectfully submitted,

Daniel E. Becnel, Jr.
Matthew B. Moreland
Becnel Law Firm LLC
P.O. Drawer H
106 W. 7th Street
Reserve, LA 70084
Telephone: 985-536-1186
Facsimile: 985-536-6445