UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: VIOXX | * | MDL NO. 1657 |
| | * | |
| PRODUCTS LIABILITY | * | |
| LITIGATION | * | SECTION L |
| | * | |
| THIS DOCUMENT RELATES | * | JUDGE FALLON |
| TO ALL CASES | * | MAG. JUDGE KNOWLES |
| | * | SPECIAL MASTER |
| FILER: Robert E. Arceneaux/Margaret Woodward | * | PATRICK A. JUNEAU |
| | * | July 15, 2011 |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## MEMORANDUM IN SUPPORT OF MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS TO CO-LEAD AND LIAISON COUNSEL FOR OBJECTORS

MAY IT PLEASE THE COURT:

This memorandum is respectfully submitted on behalf of co-lead and liaison counsel for Objectors in support of their motion for the award of fees and costs.

By order dated February 8, 2011, the Court appointed movants as co-lead and liaison counsel for the following 17 Objectors: Anapol, Schwartz, Weiss, Cohan, Feldman & Smalley, P.C. ("Anapol"); Becnel Law Firm, LLC ("Becnel"); Branch law Firm ("Branch"); Bruno & Bruno ("Bruno"); Cohen, Placitella & Roth, PC ("Placitella"); Cunard Law Firm ("Cunard"); Escobedo Tippett ("Escobedo"); Jones, Swanson; Kline & Specter, PC ( "Kline & Specter"); Lockridge, Grindal, Nauen, PLLP ("Lockridge"); Locks law Firm ("Locks"); Morelli Ratner PC ("Morelli"); Motley, Rice LLC ("Motley Rice"); Murray Law Firm ("Murray"); Roda Nast PC ("Nast"); Snapka, Turman, & Waterhouse, LLP ("Snapka"); and Law Firm of Eric Weinberg ("Weinberg"). The Court subsequently allowed Scheller PC to file an objection, and to be represented by undersigned counsel,

-1-

bringing to 18 the number of Objectors represented by undersigned counsel.

At the outset of their representation, undersigned counsel advised the Court that they had reached fee agreements with certain Objectors but not others, and asked that the Court establish a basis for compensation by those Objectors which had not bound themselves to any contractual arrangement. Undersigned counsel also moved for the payment of their fees out of the common benefit fund. In its March 31, 2011 order, the Court ruled that

> Co-Lead and Liaison counsel shall maintain contemporaneous records of all hours and costs expended by them in this matter. At the conclusion of this matter, they shall be entitled to apply to the Court for an award of fees. The Court shall determine the amount of the fee and who shall pay it. Reasonable costs expended by Co-Lead and Liaison Counsel may also be applied for and the Court will determine any amount and who shall pay it.

In a status conference held in chambers on May 23, 2011, the Court indicated that it saw no further need of co-lead and liaison counsel for Objectors, the Special Master's hearing having been concluded and 13 of the 18 Objectors having reached a resolution with the FAC.[1] (Since that time, Anapol, too, has reached a resolution with the FAC, reducing the number of Objectors to 4). The Court directed undersigned counsel to submit a motion for fees and costs. It also indicated that undersigned counsel's fees and costs would not be paid out of the common benefit fund. Undersigned counsel note their objection to the informal ruling, but will rest on their prior argument on this point.

---

[1] The resolutions involve allocation recommendations by the FAC, to which Objectors have agreed. Objectors have preserved all rights asserted in pending motions and all rights of appeal, should the Court not accept the FAC's recommendations, or should the FAC fail to achieve a global settlement.

**1. Fees established by contract**

For those Objectors who entered into fee agreements with undersigned counsel, we ask that those contracts be honored by the Court. Attached as Exhibit A is the letter explaining the two compensation options undersigned counsel proposed to Objectors. The proposed fee arrangements fall into two categories: 1) a contingent fee contract of 4%, to be assessed against the difference between the FAC's latest offer and its final offer, up to the claimant's lodestar[2]; 2) an hourly rate, to be divided pro tanto among the Objectors choosing that option, and subject to a multiplier to be awarded by this Court.

In proposing two different systems of payment, undersigned counsel allowed those Objectors who expected that they had comparatively less to gain from contesting the FAC's recommendations to choose a contingent-fee approach, which would limit their exposure for attorneys' fees.

The following firms chose one of the options, as follows[3]:

---

[2] Of the objectors who chose the contingent fee option, only undersigned counsel's individual clients (Placitella and Weinberg) and Morelli Ratner received a recommendation above lodestar. The cap applies to them alone, as shown *infra*.

[3] Their choices are reflected in the forms attached hereto as Exhibit B, in globo. Escobodo and Snapka orally opted for the hourly rate. Jones, Swanson did not decide which approach it wanted until after it had settled, and did not return a signed form indicating its choice. For this reason, and because it was counted as a an hourly rate firm in fixing the number of "heads" for the *pro tanto* division, it is listed as a hourly rate firm.

| **Contingent fee** | **Hourly rate** |
|---|---|
| Bruno | Branch |
| Lockridge | Kline & Specter |
| Morelli | Locks |
| Murray | Snapka |
| Nast | Escobedo |
| Placitella[4] | Jones, Swanson |
| Scheller | |
| Weinberg | |

Not surprisingly, those who opted for the contingent-fee approach tended to receive smaller increases in their awards.

### a. contingent fee option

Each of the firms selecting the contingent fee option reached an agreement with the FAC. This makes calculation of the fees owed by them relatively easy, assuming that the agreed-upon allocation is actually entered by this Court:

| **Firm** | **Last Offer** | **Accepted Rec.** | **Difference** | **Fee** |
|---|---|---|---|---|
| Bruno | 0 | $75,000 | $75,000 | $3,000 |
| Lockridge | 350,000 | 1,100,000 | 750,000 | 30,000 |
| Morelli | 750,000 | 1,302,193.75[5] | 552,193.75 | 22,087 |
| Murray | 162,000 | 850,000 | 688,000 | 27,520 |
| Nast | 45,000 | 300,000 | 255,000 | 10,200 |

---

[4] Placitella and Weinberg, whom undersigned counsel represent individually, are subject to a higher contingent fee arrangement, a portion of which applies to undersigned counsel's leadership role.

[5] Morelli's actual accepted recommendation was 2,500,000. However, their actual lodestar was the cited figure, and the contract caps the contingency fee at that rate.

| | | | | |
|---|---|---|---|---|
| Placitella[6] | 500,000 | 2,062,087 | 1,562,087 | 62,483 |
| Sheller | 65,000 | 325,000 | 260,000 | 10,400 |
| Weinberg | 220,000 | 3,440,826 | 3,280,000 | <u>128,833</u> |

                                                           Total Contingent fee    $ 294,524.27

Undersigned counsel ask that the Court direct BrownGreer to withhold the sums shown above from each of the listed Objectors' attorneys' fee allocation, and pay that amount to undersigned counsel.

**b. hourly rate option**

In accordance with this Court's order, undersigned counsel maintained contemporaneous records of the time they spent on this matter. Their time records are attached hereto as Exhibit C, in globo, and total $318,183.04.[7]

In their time entries, undersigned counsel entered their rates in the amounts set forth in their contracts with Objectors: $550/hr. for retired Chief Justice Calogero, $300/hr. for Arceneaux, and $200/hr. for Woodward. Each of these attorneys has more than 25 years' experience, and Justice (ret.) Calogero's extraordinary background needs no recitation.

---

[6] Placitella and Weinberg, whom undersigned counsel represent individually, are subject to a higher contingent fee arrangement, a portion of which applies to undersigned counsel's leadership role. Additionally, the amounts recommended for each of them are greater than lodestar, triggering the contractual cap. It should be noted that the $294,524.27 listed for contingency fees is an overstatement, because the Placitella and Weinberg portions will not be collected twice – once as a contingency fee and once under their personal individual contracts with the undersigned. They will be given credit for the contingency fee against the amount due under their individual contracts.

[7] As indicated in the affidavit accompanying the Arceneaux time records, the database files for his billing software for two months became corrupted, necessitating him to reconstruct time for those periods. He did so in the most conservative manner possible, only recording items that were backed up with a paper trail.

Undersigned counsel ask that the Court apply a multiplier to their rates, for several reasons. First of all, the contracts with Objectors allow for the application of a multiplier of up to 2; the amount of the multiplier (up to 2) is to be determined by this Court within its discretion. As this Court is aware, undersigned counsel were chosen by Objectors as their leadership from a number of competing firms. They were chosen principally on the basis of the particular skills they had to offer. With the exception of Justice (ret.) Calogero's rates, the rates charged are substantially below the hourly rates charged by most Objectors of equivalent experience. Objectors' top rates ranged from $850 to $625/hr. (Comparatively, the FAC leadership charged Russ Herman's time at $850/hr., Andy Birchfield at $700/hr., and Chris Seeger at $685/hr., before applying multipliers that raised the rates to over $2000/hr.; these comparisons, however, are offered for informational purposes only, as the FAC's unjustifiable recommendations for themselves lie at the heart of the allocation dispute.) This Court's blended average rate for Vioxx counsel was $443/hr. Fairness dictates that co-lead counsel receive rates comparable to their clients', and that Justice Calogero, by virtue of his unique stature and experience, receive a higher rate.

A multiplier is also warranted by the unusual circumstances and demands of this litigation. By the time undersigned counsel entered into the case, the Court had already developed an extensive record of documents, presentations, and rulings on the issue of allocation alone, which had to be read and studied at an accelerated pace. Additionally, the novel issues raised by the FAC's choice of a novel approach to fee allocation required extensive research, analysis, and writing. Furthermore, undersigned counsel's representation of eighteen firms who had occupied different positions in different jurisdictions, and who took different approaches to fee allocation added considerably to the complexity of the matter. As the Court is well aware, a number of difficult issues arose that were

tangentially related to the administration of the common benefit fund and the FAC's overall authority. The length and number of motions, memoranda, and discovery requests filed in this matter speaks to the novelty and complexity of the representation.

Finally, this Court's expedited time frame for allocation, which resulted in a week-long hearing within three months of undersigned counsel's appointment, placed enormous pressures on their work. For the duration of their service, each of them had to forego other work, any semblance of a social life, and, all too often, sleep, in order to maintain the pace of research and writing, discovery, consultation with Objectors, and court appearances necessary to a diligent representation of Objectors' interests.

Whether we demonstrated any skill in the performance of our tasks, we leave to this Court to determine. However, Objectors repeatedly expressed admiration and gratitude for the pace and quality of our work, and the results achieved were unquestionably dramatic. Attached as Exhibit D is a chart showing the differences between the FAC's recommendations for Objectors at the time the objections were filed and the final recommendations, which 13 of 18 Objectors have accepted. Overall, Objectors recommended allocations have risen by over $23,000,000, more than triple the amount formerly recommended by the FAC.

These factors, we believe, warrant the assessment of a multiplier to undersigned counsel's lodestars. In our contracts with Objectors, we agreed to cap the multiplier at 2. The precise amount is to be determined by this Court within its sole discretion, and is not subject to dispute. Because the hourly-rate fees are to be shared equally among ten firms, none of them will suffer a burden disproportionate to the returns received.

It should be noted that several firms, Cunard, Escobedo, Kline & Specter, and Snapka, each

employed independent counsel. (Placitella and Weinberg employed undersigned counsel as their individual counsel.) Presumably, however, undersigned counsel's efforts reduced the burden on Objectors and their individual counsel. Another factor bearing upon the appropriate application of a multiplier is the amount of the final recommended award. While all Objectors whose claims have been resolved stand to receive substantially more than the FAC last recommended, for some the returns were substantially higher than others. As Exhibit D shows, Cunard and Nast received an additional $275,000 and $255,000 respectively, while Kline & Specter received an additional $11,000,000. It should be borne in mind that each of the lower-recovering firms had the option of limiting its fees by choosing the contingency fee option, but chose the hourly basis.

Additionally, another multiplier inheres in the separate recovery of contingency rates, which amounts to 92% of undersigned counsel's hourly billings. However, that "bonus" was contemplated in the contract, which provided for separate and duplicative payments under contingency fee and hourly rate contracts. Significantly, almost 2/3 of the contingency fees are being contributed by Placitella and Weinberg, who were obligated to pay them to undersigned counsel regardless of the work as co-lead and liaison counsel. Undersigned counsel performed substantial additional work for the individual claims of Placitella and Weinberg, none of which is included in the hourly charges submitted to Objectors. For the $191,000 contributed to undersigned counsel's contingency recovery by Placitella and Weinberg, then, there has been no double-billing. When their fees are backed out of the contingency column, as they should be because they compensate separate work, the contractually built-in contingency "multiplier" comes to a modest .32.

Regardless of the fee arrangement, undersigned counsel did not stint in their efforts on behalf of any Objector, and submit that the work performed warrants the application of a multiplier.

### 2. *quantum meruit*

At the time of this writing, four Objectors– Becnel, Branch, Escobedo, and Snapka– have yet to resolve their differences with the FAC.  (The Branch firm signed an hourly rate contract with undersigned counsel; three of the other four firms orally committed to the hourly rate arrangement; and Becnel is in the *quantum meruit* group.)  It is too soon to tell whether undersigned counsel's efforts have benefitted these Objectors, and whether any fees will be due.  If they do not receive a satisfactory resolution, however, it is likely that the entire matter will be taken up on appeal, in which case nobody will receive either a recommended or allocated award, and the matter of undersigned counsel's compensation will be tabled for another day.

Assuming that all Objectors receive satisfactory compensation, we submit that those firms which did not enter into a contractual relationship with undersigned counsel should be held to the same hourly rates as those who accepted that option, because that calculus adheres to the law of *quantum meruit* awards of attorneys' fees.  The noncontracting firms are Anapol, Becnel, Cunard, and Motley Rice.

As we have stated repeatedly, in all cases within the Fifth Circuit, including allocation of common fund fees, the starting point of any proper analysis must be a "lodestar" calculation:

> *This Circuit utilizes the "lodestar method" to calculate attorneys' fees. Initially,* the district court must determine the reasonable number of hours expended on the litigation and the reasonable hourly rate for the participating lawyer. *Louisiana Power & Light Co. v. Kellstrom, 50 F.3d 319, 324 (5th Cir.), cert. denied, 516 U.S. 862, 116 S.Ct. 173, 133 L.Ed.2d 113 (1995).* The lodestar is then computed by multiplying *the number of hours reasonably expended by the reasonable hourly rate*. *Id*.

*Forbush v. J.C. Penney Co.*, 98 F.3d 817 (5th Cir. 1996).  The district court may then adjust the lodestar upward or downward depending on the respective weights of the twelve factors expressed

in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir.1974), abrogated on other grounds by *Blanchard v. Bergeron*, 489 U.S. 87, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989):

> (1) the time and labor involved; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the political "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases).

As discussed in the preceding section, the accelerated pace of the work, its difficulty, novelty, and complexity, and the fees charged by Objectors all warrant the application of a multiplier. With respect to the *quantum meruit* awards, which are not bound by the contractual cap of 2, undersigned counsel submit that a higher multiplier may be applied to Woodward's rate of $200/hr., for that rate is so far below Objectors' mean that a multiplier of 2 does not suffice even to bring it to the average blended rate of $443/hr.

### 3. Costs

The undersigned are not asking for a cost reimbursement at this time. All costs, with the exception of the accountant's invoices that are presently the subject of a separate motion, have been paid by assessments levied by the objectors themselves. If this Court denies the pending Motion to Pay Accountant's Invoices from the common benefit fund, and the undersigned are required to pay the accountant's bill, they will ask for reimbursement. If the Court orders BrownGreer to pay the bill, but determines that the costs should be borne by Objectors instead of the common benefit fund, then presumably BrownGreer will withhold each Objectors' portion from the final distribution. Accordingly, at this time the undersigned's out of pocket costs have been satisfied and there is no relief to request.

**CONCLUSION**

Undersigned counsel ask that this Court enforce their fee contracts with those Objectors who entered into them, and that it assess fees against the remaining Objectors on a *quantum meruit* basis. Under both the contracts and *quantum meruit*, counsel are entitled to the addition of a modest multiplier. The sums awarded should be withheld by BrownGreer for payment to undersigned counsel out of Objectors' fee recoveries.

Respectfully Submitted:


/s/ Robert E. Arceneaux                                 /s/ Margaret E. Woodward
_____        _____
Robert E. Arceneaux, La Bar No. 01199         Margaret E. Woodward, La. Bar No. #13677
ROBERT E. ARCENEAUX LLC                       3701 Canal Street, Suite C
47 Beverly Garden Drive                                  New Orleans, Louisiana  70119
Metairie, LA 70001                                           (504) 301-4333 office
(504) 833-7533 office                                        (504) 301-4365 fax
(504) 833-7612 fax                                           mewno@aol.com
rea7001@cox.net


CO-LEAD COUNSEL FOR OBJECTORS IDENTIFIED IN FEB. 8, 2011 ORDER

/s/ Pascal F. Calogero
_____
Pascal F. Calogero, Jr., La. Bar No. 03802
AJUBITA, LEFTWICH & SALZER, L.L.C.
1100 Poydras Street
New Orleans LA 70163-1950
(504) 582-2300 office
(504) 582-2310 fax
pcalogero@alsfirm.com

LIAISON COUNSEL FOR OBJECTORS IDENTIFIED IN FEB. 8, 2011 ORDER

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing pleading has been served on Objectors listed in the Feb. 8 order plus Sheler PC, Russ Herman and Phillip Wittmann, by e-mail, and by upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre Trial Order No.8, on this date, July 15, 2011

              /s/ Robert Arceneaux