UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: VIOXX | § | MDL NO. 1657 |
| | § | |
| PRODUCTS LIABILITY | § | SECTION L |
| LITIGATION | § | |
| | § | JUDGE FALLON |
| This document relates to all cases | § | MAG. JUDGE KNOWLES |
| | § | SPECIAL MASTER |
| FILER:  JACK E. URQUHART | § | PATRICK A. JUNEAU |
| | § | |
| | § | July 18, 2011 |

**OBJECTIONS OF SNAPKA AND ESCOBEDO, TIPPIT AND
CÁRDENAS TO THE REPORT AND RECOMMENDATIONS
OF THE SPECIAL MASTER ON ALLOCATION
OF COMMON BENEFIT ATTORNEY FEES**

Kathryn Snapka ("Snapka") and Escobedo, Tippit & Cárdenas (referred to in this document by the names of the real parties in interest Joe Escobedo and David Hockema, or, collectively "Escobedo-Hockema") make these objections to the Report and Recommendation of the Special Master.  Snapka and Escobedo-Hockema object because the Special Master's allocations were in error and an abuse of discretion.

**OBJECTIONS**

1.  The Special Master's apportionment of the $315,250,000 common benefit fund is improper because it is not based on an elucidated methodology that is reasonably likely to produce fees for each applicant that fairly represent each applicant's contribution to the creation of the overall result in this litigation.  This is a legal requirement and the failure to meet it is an abuse of discretion.

2.  The Special Master's apportionment of the fund among the 108 applicants has no elucidated basis.  Lodestar is not the basis.  Percentage-of-recovery is not the basis.  A uniform application of the *Johnson* factors or Pretrial Order 6D guidelines are not the bases.  The basis for the apportionment must be elucidated.  It was not.  This is an abuse of discretion.

3.  The "point system" once heralded by FAC does not comport with any recognized apportionment methodology.  The system is subjective and is unfairly weighted in favor of FAC members.  If the point system was the basis for the Special Master's apportionment it

would have been abuse of discretion. In reality, neither the Special Master nor FAC used the point system to apportion fees among the 108 applicants. Assigning any significance to the "point system" is an abuse of discretion.

4.     Side deals predominate in the fee numbers the Special Master assigned. The Special Master did not evaluate the bases of these side deals. The side deals resulted from secret negotiations. The Special Master left these deals unexamined. Instead, he simply adopted the vast majority of numbers yielded by the side deals. Undisclosed, unexplained, and unexamined side deals cannot provide a legal basis for a fair apportionment among 108 attorneys. Adopting the numbers produced by these side deals is an abuse of discretion.

5.     Discovery requests for disclosure of all side deals were denied. This is an abuse of discretion.

6.     Discovery requests for FAC minutes that admittedly shed some light on the thought processes that were used in apportioning the common benefit fund were denied. This is an abuse of discretion.

7.     The fees apportioned to Snapka, Escobedo-Hockema, and all fee applicants were not based on a uniformly applied method, but were determined arbitrarily and capriciously. This is an abuse of discretion and violates due process as required by the United States Constitution.

8.     The Special Master undervalued *Garza*. Based on discredited "facts," FAC allocated $0 for *Garza* when the lawyers who tried that case objected to FAC's preliminary apportionment recommendation. Trials, particularly those like *Garza* that had a proven and substantial positive contribution to this overall litigation merit a substantial portion of the common benefit fund. The Special Master factually and legally erred in his discussion of *Garza*. *Garza* was excluded from the MSA during the NPC-Merck negotiations as were most other tried cases. This point is irrelevant to fee apportionment. So too, the following factors are irrelevant to fee apportionment: the MDL assessment, if any, of a recovery in the *Garza* bellwether trial; the fees that the *Garza* lawyers received or may be entitled to receive from their individual cases. All of these factors are shared by other fee applicants, but the Special Master only mentioned them in connection with Snapka and Escobedo-Hockema. Amazingly, the two cases the Special Master found comparable to *Garza* – *Albright* and *Doherty* – are not comparable. The most glaring distinction is that *Albright* and *Doherty* resulted in defense verdicts -- Merck won. Cases more comparable, like *Ernst* and McDarby were not even mentioned by the Special Master. This "comparable analysis" is factually mistaken and legally irrelevant. The only relevance, in fact, is this arbitrary and capricious selection of comparables proves the arbitrary and capricious nature of the overall apportionment. As objectors, the *Garza* lawyers are subject to criteria and analysis that were not applied to any other fee applicants, particularly other lawyers who won plaintiff verdicts.

9.      The Special Master's allocation improperly undervalued the contributions Snapka and Escobedo-Hockema made to the creation of the common benefit fund. The contribution of *Garza* was undervalued as were their other contributions to the common benefit. A uniform application of any elucidated methodology would have produced a higher percentage apportionment. The evidence merits an allocation to these attorneys of 10% of the fund.

10.     The Court tasked the Special Master with apportioning the $315,250,000 common benefit fund among the 108 fee applicants independently of FAC.  He was tasked to stand apart from FAC, whose members had an inherent conflict of interest.  Instead, the Special Master deferred to FAC.  He adopted, with virtually no variance, the allocation made by FAC in June 2011.  He did so even though the Court did not request or authorize this "second-final" Allocation. He did so even though, while the three FAC apportionments varied greatly from one another, they all allocated most of the $315,250,000 fund to FAC or PSC members—the MDL Control Group.  He did so even though many of the "second-final" recommendations were in direct conflict with positions FAC took in its only written attempt to elucidate its allocation methodology, the positions Birchfield took in his deposition, and the positions FAC took during the Special Master's hearing of May 9-13, 2011.  The Special Master improperly deferred to FAC, despite FAC members inherent conflict of interest.  This is an abuse of discretion.

11.     The Special Master improperly did not give equal treatment to Snapka, the law firm of Escobedo-Hockema, the Branch Firm and the Becnel Firm as compared with the other common benefit fee applicants.  These four applicants were scrutinized and critiqued and the other 104 applicants were given a pass.

12.     The Special Master improperly deferred to FAC even though FAC members have received substantial fee awards from their individual cases and have claimed interest in other common benefit funds related to this litigation, e.g., a common benefit fund for Third Party Payer cases and a common benefit fund for governmental claims.

13.     The Special Master improperly did not scrutinize any of the side deals that were the sole bases for many of the FAC apportionment recommendation.

14.     The Special Master improperly allowed FAC to maintain the secrecy of its minutes despite FAC's admission that the minutes exist and would shed some light on the bases for FAC's having timely criticized the objection.

15.     The Special Master should have admitted the emails that were critical of the handling of the bellwether trials. The excluded emails evidence criticism of FAC members' work.

16.     The fee allocation process as applied has failed to produce a sufficient record to enable this Court or the Court of Appeals to evaluate whether the fund has been apportioned with reasonable fairness.

17. The Special Master essentially adopted the "second-final" recommendation as his recommendation for all fee applicants except the four "objectors." The Special Master did, however, make a few adjustments, but improperly failed to elucidate the bases for any of these adjustments.

18. The Special Master did not scrutinize or mention the VLC side deal. This side deal is incontrovertible evidence that the "point system" was not used as represented by FAC. The failure to scrutinize this side deal is an abuse of discretion.

19. The Special Master erred in failing to consider the multiple errors in FAC's attack on Snapka and Escobedo-Hockema. These errors raise significant questions about all FAC conclusory statements and the overall credibility of FAC. Failure to address these false statements, and failure to demand an explanation for them is an abuse of discretion.

20. The Special Master erred in failing to demand an accounting of the common benefit funds. Birchfield admitted that $315,250,000 is not in the common benefit fund account. It is uncontroverted that more than $18 million was distributed from the fund without the knowledge of the Court. While the Court must remedy this issue, the fact of its occurrence, particularly given FAC's inherent conflict of interest, is of concern. The Special Master was required to closely review the evidence before he simply deferred to FAC's apportionment recommendations, or before he simply relied on FAC's conclusory statements about its handling of the fee allocation process. It is an issue that goes to FAC's credibility.

21. The Special Master erred in failing to apportion the interest that has accrued on the common benefit fund.

22. The Special Master improperly failed to inquire or permit inquiry about other common benefit funds that may or might exist in this litigation.

23. The Special Master erred in denying the motion to make FAC produce records relating to contributions made by all applicants to the common benefit fund.

24. The Special Master erred in failing to elucidate the bases of his fee apportionments.
    A. He did not use the guidelines of Pre-Trial Order 6D.
    B. He did not use the *Johnson* factors.
    C. He did not use lodestar.
    D. He did not use percentage-of-recovery.
    E. He did not use a "point system."
    F. He did not use any elucidated objective measures in the evaluation of the 108 common benefit fund applicant's contributions in accordance with established fee jurisprudence.

25. The Special Master improperly deferred to and failed to evaluate FAC's failure to elucidate the bases of its apportionment recommendation.

    A.    He failed to acknowledge the evidence that disproves that FAC followed Pre-Trial Order 6D.

    B.    He failed to acknowledge that the evidence disproves that FAC used the *Johnson* factors.

    C.    He failed to acknowledge the evidence that disproves that FAC used a firm-by-firm Lodestar as a cross check.

    D.    He failed to acknowledge that FAC did not use percentage-of-recovery as a methodology.

    E.    He failed to acknowledge that FAC introduced no evidence to support its assertion that it reviewed all time submissions as closely as it did the submissions of objectors.

    F.    He failed to acknowledge that the FAC "point system" was flawed and designed to favor FAC members and other members of the MDL Control Group.

    G.    He failed to acknowledge the evidence that contradicts FAC's assertion that it "utilized" the "point system" in a uniform or meaningful way.

    H.    He failed to acknowledge evidence that proves that FAC abandoned the "point system," if it ever utilized it.

    I.    He failed to acknowledge the dominance of side deals in the FAC fee apportionment.

    J.    He failed to acknowledge that the statements made by FAC members in the transcribed interviews of fee applicants contradicted the "factual" statements FAC made in its reply to objectors.

    K.    He failed to acknowledge that, during the 14 day period to object to FAC's preliminary allocation, the fee applicants were provided no meaningful information to evaluate FAC's work.

    L.    He failed to acknowledge that side deals were made to reduce the number of "objectors."

    M.    He failed to acknowledge the evidence that proves that FAC did not use objective measures to evaluate common benefit counsel's contribution in accordance with established fee jurisprudence.

26.     The Special Master erred in failing, as required by the Court, to "prepare an impartial recommendation to the Court" for the full amount of the $315,250,000 common benefit fund.

27.     The Special Master erred in finding and concluding that "the fee allocation processes were fully transparent and proper."

28.     The Special Master erred in the analysis he used to evaluate Ms. Snapka's work in the *Garza* case.

29.     The Special Master erred in assigning any negative meaning to the time Escobedo submitted for review of the *Ernst* transcript. These lawyers were preparing for a trial. Examining the record of tried cases in those circumstances is at the very least prudent.

30.     The Special Master erred in failing to consider why three of the four objectors' allocations were reduced after they objected to FAC's preliminary recommendations.

31.     The Fee Allocation process as applied in this case violates the requirements of the Due Process Clause of the United States Constitution.  Specifically, the Special Master erred in limiting depositions to one FAC representative of FAC's choice.  Additionally, the Special Master erred in denying Snapka and Escobedo-Hockema the right to depose a single witness of its choosing.  The Special Master erred in excluding Snapka and Escobedo-Hockema from meetings it limited to lead and liaison counsel.

32.     The Special Master improperly failed to address any aspect of the fiduciary duties owed by FAC members to all 108 fee applicants and whether or not FAC breached those fiduciary duties.

33.     The Special Master erred in failing to include all applicants in an appropriate fee apportionment allocation.

## RELIEF REQUESTED

Snapka and Escobedo-Hockema respectfully request the Court sustain their objections.  Snapka and Escobedo-Hockema further request the Court elucidate and apply a fair and reasonable methodology to allocate common benefit attorney fees to all common benefit attorneys and award Snapka and Escobedo-Hockema 10% of the common benefit fund.

                          **BEIRNE, MAYNARD & PARSONS, L.L.P.**

                           /s/ Jack E. Urquhart
                          Jack E. Urquhart
                          State Bar No. 20415600
                          1300 Post Oak Blvd., Suite 2400
                          Houston, Texas 77056
                          Telephone:  (713) 871-6760
                          Facsimile:   (713) 960-1527

                          **ATTORNEYS FOR PLAINTIFF**
                          **KATHRYN SNAPKA**

Of Counsel:

Gary Alfred
Texas Bar No. 24011214

Terry Adams
Texas Bar No. 00874010
Charles T. Miers
Texas Bar No. 00784600
BEIRNE, MAYNARD & PARSONS, L.L.P.
1300 Post Oak Blvd., Suite 2400
Houston, Texas 77056
Telephone:  (713) 871-6760
Facsimile:   (713) 960-1527

Paul M. Lavelle
Louisiana Bar Number is 08134
BEIRNE, MAYNARD & PARSONS, L.L.P.
110 Poydres Street, Suite 2900
New Orleans, LA 70163
Telephone: (504) 799-2223
Facsimile:  (504) 799-2224

## CERTIFICATE OF SERVICE

I hereby certify that the above and forgoing document has been served upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8, and that the foregoing was electronically filed with the Clerk of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system, which will send a Notice of Electronic Filing, and that the forgoing was sent via email to:

Russ Herman, rherman@hhkc.com

Andy Birchfield, andy.birchfield@beasleyallen.com

Special Master Patrick Juneau, PAJ@juneaudavid.com

This 18th day of July, 2011.

                                                                               /s/ Jack E. Urquhart
                                                                                Jack E. Urquhart