**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE: VIOXX | § | MDL NO. 1657 |
| | § | |
| PRODUCTS LIABILITY | § | SECTION L |
|  LITIGATION | § | |
| | § | JUDGE FALLON |
| THIS DOCUMENT RELATES | § | MAG. JUDGE KNOWLES |
| TO ALL CASES | § | SPECIAL MASTER |
| | § | PATRICK A. JUNEAU |
| | § | |
| FILER:  Jack E. Urquhart | § | July 27, 2011 |

**REPLY TO FEE ALLOCATION COMMITTEE'S RESPONSE TO OBJECTION**
**OF SNAPKA AND ESCOBEDO, TIPPIT AND CÁRDENAS TO**
**THE REPORT AND RECOMMENDATIONS OF THE SPECIAL MASTER**
**ON ALLOCATION OF COMMON BENEFIT ATTORNEY FEES**

Once again, FAC fails to respond to the specific objections raised by Snapka and

Escobedo-Hockema, leaving those objections uncontested.

1.     **FAC's reliance on conclusory statements about general apportionment principles**
       **does not respond to specific objections.  Instead, it supports the objections.**

FAC ignores specific objections, and relies on its oft-repeated rote recitation of general

guidance principles and its ipsa dixit claim that it followed the law.  These generalized

conclusory assertions demonstrate the error that pervades FAC's apportionment process to this

point.

2.     **FAC again fails to elucidate its apportionment methodology.**

Fee apportionment must be supported by a record that demonstrates the use of an

elucidated methodology that is transparent, uniformly applied to all fee applicants, and is

reasonably likely to produce fair compensation for all fee applicants.  FAC does not challenge

this.  Nor does FAC make an attempt to show that it met these requirements.  To the contrary, the

evidence establishes that the apportionment recommendations now before the Court do not meet

these requirements.  The conclusory claims that lodestar, the *Johnson* factors, PTO 6D, etc., were

"considered" is belied by the record.  Where is the explanation for awarding in the now abandoned "point system" FAC members the largest "multipliers" while applying negative multipliers to Snapka and Escobedo-Hockema?  For convenience, the Snapka Post-Hearing Memorandum is attached as Exhibit A.  That memorandum specifies the significant factual "mistakes" FAC used in its personal assault on Snapka.  Illustratively, FAC "mistakenly" stated as a fact that Snapka asked that *Garza* be excluded from the MSA.  FAC remains mute on how such a serious error was made and the effect this and its other unexplained factual errors impact the credibility of all FAC conclusory assertions.

3.      **FAC again fails to explain how a properly applied methodology could produce such wild swings in individual apportionments.**

The proven inconsistencies in the apportionment recommendations demand explanation. FAC provides none.  It is clear that side deals dominate the apportionment recommendations. The relationship between the side deal numbers and a fair apportionment methodology must be explained.  FAC does not do that.  Instead, it simply argues that fee agreements are favored by the court.  This general proposition is irrelevant.  But FAC does not cite a single case to support the indiscriminant use of private side deals as a method likely to result in a fair apportion to all fee applicants in a mater as complex as this.  *Turner v. Murphy Oil*[1], for example, recognizes the reality that unanimous agreement among fee applicants in a case like this is "impossible even in concept."  *Turner,* moreover, is instructive in other important respects.  *Turner* did not endorse or even entertain indiscriminate side deals—it hoped for *unanimous* agreement, because of the "unique circumstances" of that case.[2]  Additionally, *Turner* evaluated all fee applicants—it did not leave its scrutiny to "objectors."

---

[1] 582 F.Supp.2d. 797, 802, fn. 9 (E.D. La. 2008).
[2] *Id*. at 801.

The rationale behind the side deal numbers requires explanation.  This is true if only because many of the numbers increased by huge sums the apportionment to applicants whose work had been severely criticized.  The Special Master adopted the side deal numbers without explanation.  FAC's response leaves the methodology hidden.

4.    **FAC does not defend the failure of the Special Master to require disclosure of FAC minutes.**

The apportionment methodology used to this point in time is hidden.  Non-specific references to the "considerations" of various factors and data does not elucidate a method.  FAC successfully fought the production of its minutes, because they revealed the mental processes assocoiated with their apportionment decision.  This is exactly what is required for transparency.  The apportionment discernments are not state secrets.  In this case, the minutes are the only documents identified that shed light on how apportionment recommendations in this case were actually made.  FAC did not respond to this objection.

5.    **FAC ignores all specific objections to the apportionment process except due process.**

Curiously, FAC devotes its response to due process, and anchors that response on an unpublished opinion that was not a due process case.  *High Sulfur II* is unpublished and should be cited as unpublished.  More importantly, *High Sulfur II* is not a due process opinion.

What explains FAC's failure to address the *High Sulfur I*[3] requirements that it failed to meet? *High Sulfur I,* a published opinion, made clear fee apportionments must conform to requirements over and above the obvious need to avoid violating the Constitution.  The many errors in this apportionment process do violate the Constitution, but long before that it failed to meet more basic requirements.  Pointing to general procedural "opportunities" afforded the

---

[3] 517 F.3d 220, 227 (5th Cir. 2008).

"objectors" does not respond to specific failings in this apportionment process that rendered a hearing, etc., ineffective due process protections.

Superficially, *High Sulfur I* appears a more egregious fact pattern than presented here. Practically, the errors in the apportionment process in the two cases are very similar. A Fee Committee with an inherent conflict of interest remains in control of the process. The Fee Committee apportioned the lion's share of a fixed fund to a small group of lawyers. The Fee Committee has not explained its method. It has scrutinized and critiqued objectors, but offered no evidence that it similarly scrutinized itself. The Special Master reported scrutiny of only the "objectors," and adopted the vast majority of FAC's recommendations without comment. Snapka and Escobedo-Hockema have been held to standards not applied to others. A dramatic example, Escobedo and his firm were critiqued for thoroughly reviewing a transcript of the *Ernst* trial. How is this criticism reasonable or fair? Snapka and Escobedo-Hockema were preparing for a trial in the very early stages of the Vioxx litigation—a trial that achieved one of the best results in this entire litigation. They have "shown their work" and identified the contributions that entitle them under any elucidated methodology a larger apportionment than they have thus far received.

BEIRNE, MAYNARD & PARSONS, L.L.P.


  /s/ Jack E. Urquhart
Jack E. Urquhart
State Bar No. 20415600
1300 Post Oak Blvd., Suite 2400
Houston, Texas 77056
Telephone:  (713) 871-6760
Facsimile:   (713) 960-1527

ATTORNEYS FOR PLAINTIFFS
KATHRYN SNAPKA, JOSÉ ESCOBEDO, JR.
AND DAVID HOCKEMA

6

Of Counsel:

Gary Alfred
Texas Bar No. 24011214
Terry Adams
Texas Bar No. 00874010
Charles T. Miers
Texas Bar No. 00784600
BEIRNE, MAYNARD & PARSONS, L.L.P.
1300 Post Oak Blvd., Suite 2400
Houston, Texas 77056
Telephone:  (713) 871-6760
Facsimile:   (713) 960-1527

Paul M. Lavelle
Louisiana Bar Number is 08134
BEIRNE, MAYNARD & PARSONS, L.L.P.
110 Poydras Street, Suite 2900
New Orleans, LA 70163
Telephone: (504) 799-2223
Facsimile:  (504) 799-2224

## CERTIFICATE OF SERVICE

I hereby certify that the above and forgoing document has been served upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8, and that the foregoing was electronically filed with the Clerk of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system, which will send a Notice of Electronic Filing, and that the forgoing was sent via email to:

Russ Herman, rherman@hhkc.com

Andy Birchfield, andy.birchfield@beasleyallen.com

Special Master Patrick Juneau, PAJ@juneaudavid.com

This 27th day of July, 2011.

    /s/ Jack E. Urquhart
Jack E. Urquhart