UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: VIOXX | * | MDL NO. 1657 |
| | * | |
| PRODUCTS LIABILITY | * | |
| LITIGATION | * | SECTION L |
| | * | |
| THIS DOCUMENT RELATES | * | JUDGE FALLON |
| TO ALL CASES | * | MAG. JUDGE KNOWLES |
| | * | SPECIAL MASTER |
| FILER: Robert E. Arceneaux/Margaret Woodward | * | PATRICK A. JUNEAU |
| Pascal Calogero | * | August 2, 2011 |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**CONSOLIDATED REPLY MEMORANDUM IN RESPONSE
TO OBJECTIONS TO OBJECTORS' COUNSEL FEE REQUEST**

This consolidated reply memorandum is respectfully submitted by Robert Arceneaux, Margaret Woodward and Pascal Calogero in response to the objections to their motion for fees filed by Motley Rice and the Cunard firm.

**I.   Motley Rice's Objection**

As we understand it, Motley Rice does not object to being assessed a *pro tanto* share of the hourly billings reported by counsel for objectors. It only objects to the application of a multiplier, and to payment for any hours after it settled its case.  Both of these objections are not well founded.

First, it should be noted that counsel for objectors have not asked for a multiplier of two. We have shown that the contract among the parties provides for a multiplier up to two, and have left it to the discretion of this Court to decide what, if any, multiplier should be awarded. Two is the cap. This Court will decide the floor.

That said, it should also be noted that ALL objectors signing the hourly-rate contract agreed

-1-

to allow this Court to determine the applicable multiplier, and to pay the sum awarded by the Court. Also, as clearly reflected in the fee memorandum circulated to all objectors, there was never any contemplation that objector counsel would have to prove that its work benefitted any particular objector in order to collect their fees. It was decided at the outset that the objectors were a committee of the whole, and that all workdone was for everyone's benefit. It is true that Motley Rice dissented from many of the decisions made by the objectors, but this dissent only caused endless additional hours of work for objector's counsel trying to fine tune language to satisfy Motley, who along with Morelli Rattner, were the only two objectors who substantially dissented from the decisions of themajority. If Motley had wanted to withdraw from the joint effort, it was free to do so. It chose to remain part of the group, presumably because it recognized there was strength in numbers and that most, if not all, of the work that was done was beneficial to the objector cause.[1]

Finally, Motley Rice is wrong in its contention that it should not have to pay for objectors' counsel's hours because it settled its own case, and because it settled before trial. It was always contemplated, from day one, that each objector would have to negotiate its own settlements. This Court even entered an order recognizing the conflict of interest objector counsel labored under that prevented them from negotiating on behalf of anyone other than their own personal clients. No one will ever know if the work that was done helped Motley Rice settle its claim. Correlatively, however, Motley Rice cannot prove that undersigned counsel's efforts had no beneficial impact on its settlement. Indeed, the substantial increase in the figures initially recommended and those

---

[1] It is easy for Motley Rice to claim that it dissented from many of the decisions and filings that were made. Yet, it never filed anything on its own making its objections clear. It is entirely possible Motley Rice was perfectly happy to have the tough allegations made, as they were well founded and might contribute to settlement. It simply did not want its name on them to sour its relationships with many FAC members.

ultimately recommended by the FAC, after months of litigation, suggest a benefit. In any case, Motley Rice agreed from the outset to pay its share, and it was always contemplated that it would negotiate any settlement on its own.

As for the time expended after Motley Rice's settlement, the firm is simply wrong in its conclusion that this time, including the hearing, was not for Motley's benefit. Motley has a settlement that as of now means very little. There are still four objectors who have not settled. This will necessitate the Court's making an allocation which may or these settlements, including those of Cunard and Motley Rice. The record that was made at the hearing will be crucial to this Court in its task. More importantly, it will be part of the appellate record should this matter go the Fifth Circuit, which is likely; in that case it is probable that the Fifth Circuit will review all of the allocations, regardless of settlement, including the gross amount awarded by this Court as common benefit fees. While Motley has a "deal" with the FAC, its allocation of the common benefit fund is far from settled, The work that was done making a record directly benefits Motley in the event that this Court must make a complete allocation, of if the case goes to the Fifth Circuit.

**II.     Rebecca Cunard's objection**

Rebecca Cunard questions why she was not allowed to select the contingency contract option with undersigned counsel after she settled her claim; she asserts that there was no deadline for making the election as to which compensation scheme each objector would select. The response to her question is not complicated.

Notes reflect that Ms. Cunard did not participate in the conference call where each firm made its oral selection, subsequently memorialized in the memorandum,, and so no vote was recorded for her.  An e-mail was sent out asking for her decision. *See* Exhibit A. She did not respond. Then, a

formal memorandum was sent out with a form for her to complete. *See* Exhibit B. Again, she did not respond. In each of these communications, objectors' counsel stressed the need for each firm who had yet to register a preference to do so expeditiously. Ms. Cunard ignored these requests. Now, she wishes the benefit of hindsight, having evaluated that the contingency fee approach is a better deal for her. But, it would be unfair to the other objectors, who were asked to and did choose in advance which option they preferred, and, in so doing, considered the number of firms which would share the hourly billings. We all would like the benefit of hindsight, but Ms. Cunard's request that she be afforded the chance now, after all risk is resolved and she did not do so well in her settlement as she anticipated, to opt for the contingency approach would simply be unfair.

Cunard's other objections are likewise meritless:

*Cunard was represented by private counsel and her fee allocation objection was resolved without the direct efforts of co-lead and liaison counsel.*

Ms.Cunard's decision to be represented by private counsel was her own choice. Several other objector's likewise had private counsel, presumably in order to handle the negotiations since objectors' counsel could not perform this task due to conflict of interest. Henry King represented Kline and Specter; Jack Urquhart represents Kathy Snapka and Escobedo Tippet; the undersigned represent Chris Placitella and Eric Weinberg. That Ms. Cunard chose to retain independent counsel is a decision of her own making, and she could have raised this objection when the compensation scheme was decided upon by the majority vote of the objectors. She did not.

*Their fee application seeks to double dip in that Co-Lead and Liaison counsel claims $294,000 in contingent fees from seven of seventeen (7/17) objectors representing 41.2% of their clients and seeks their full 100% hourly rate for representation from the remaining ten client firms which represent only 58.8% of their client burden.*

There is no double dipping. The objectors agreed that there would be two compensation

schemes. The contingency option was offered for people who did not anticipate recovery significantly more than the recommended allocation. Everyone agreed to the dual approach, and not a single objector raised the issue of a"double dipping" or that the contingency fees should be deducted from the hourly rates. Had someone raised this issue, objectors' counsel would have structured the hourly rate option differently.

Also, as previously explained, the vast majority of the continency fee recovery is from Chris Placitella and Eric Weinberg, and is due pursuant to the terms of their private representation agreement with the undersigned. Cunard would have this Court vitiate the terms for that private representation contract by deducting fees due to the undersigned from the fees due by other objectors, thereby giving them the benefit of the private representation agreement between the undersigned and Placitella and Weinberg. This would, of course, be unfair because undersigned counsel did substantial additional work for Placitella and Weinberg, and Cunard is not entitled to a credit for work performed and paid for by other clients.

> *Not only do co-lead and liaison counsel seek 100% of their labor from 58.8% of the objectors, they argue for a multiplier as high as 2 to be added to only a portion of their client burden. Yet there was never any real doubt about recovery of a reasonable fee – attorneys fees must be reasonable – nor any real risk of recovery. The attorneys' fee for this litigation had already been fixed. The principal issue was how to divide the existing fee, not recovery of the settlement corpus nor the amount of the total fee.*

We have previously briefed the issue of why the undersigned believes it is entitled to a multiplier. The objectors who opted for the hourly option agreed to have your Honor decide the amount of that multiplier, thereby impliedly admitting that a multiplier would probably be due. It is for your Honor to decide the amount, if any, up to a maximum of 2.

As for Cunard's argument that there never was any risk of recovery, that is simply wrong,

and also irrelevant. *Johnson* factors include much more than simply risk. Here, there was risk because it is possible that the FAC's recommendation could have been affirmed *in toto*.

> *Lastly, Movers not only want 100% of their labor paid by 58.8% of the client burden and **doubled** (plus the contingent fee portion), they want a "kicker" added to the rate of one of their number!*

The so-called "kicker" relates only to the work of Margaret Woodward. Woodward billed her time at a rate of $200/hr. Even if a multiplier of two were applied, Woodward's rate would not equal the $443/hr. blended average rate determined reasonable by this Court in its October 17, 2010 ruling. For those who signed a contract, Woodward is bound to the contractual multiplier of 2. Payment of a higher multiplier has been recommended by objectors' counsel only for those few objectors, including Cunard, who did not sign a contract. Their payment obligations are being determined under principles of *quantum meruit*, which, for the reasons assigned in the original memorandum, warrant a higher award.

## III.     Conclusion

This Court announced when it appointed undersigned counsel as co-lead and liaison counsel for the objectors that it would determine the appropriate rate of their compensation at an appropriate time. For the most part, undersigned counsel and the objectors resolved the fee issues themselves in a manner that proved agreeable to all but two. Undersigned counsel worked diligently on behalf of all the objectors and are entitled to be paid by all of them in either the amounts agreed upon by contract, or in a comparable amount determined by this Court. Undersigned counsel believe the difficulties and exigencies of the representation warrant application of a multiplier, but have left the amount, if any, to the discretion of this Court.

Respectfully submitted,

/s/ Robert E. Arceneux                                    /s/ Margaret E. Woodward
_____       _____
Robert E. Arceneaux, La Bar No. 01199        Margaret E. Woodward, La. Bar No. #13677
ROBERT E. ARCENEAUX LLC                       3701 Canal Street, Suite C
47 Beverly Garden Drive                                 New Orleans, Louisiana  70119
Metairie, LA 70001                                          (504) 301-4333 office
(504) 833-7533 office                                       (504) 301-4365 fax
(504) 833-7612 fax                                          mewno@aol.com
rea7001@cox.net

**CO-LEAD COUNSEL FOR OBJECTORS IDENTIFIED IN FEB. 8, 2011 ORDER**

/s/ Pascal F. Calogero, Jr.
_____
Pascal F. Calogero, Jr., La. Bar No. 03802
AJUBITA, LEFTWICH & SALZER, L.L.C.
1100 Poydras Street
New Orleans LA 70163-1950
(504) 582-2300 office
(504) 582-2310 fax
pcalogero@alsfirm.com

**LIAISON COUNSEL FOR OBJECTORS IDENTIFIED IN FEB. 8, 2011 ORDER**

**CERTIFICATE OF SERVICE**

   I hereby certify that the above and foregoing pleading has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail, and by upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre Trial Order No.8, on this date, August 2, 2011

      /s/ Robert Arceneaux

**Subject:** Vioxx - Objectors - Report of Today's conference call.
**From:** robert <rea7001@cox.net>
**Date:** Fri, 11 Feb 2011 16:26:57 -0600
**To:** "Weiss, Sol" <sweiss@anapolschwartz.com>, Daniel Becnel <dbecnel@becnellaw.com>, mattmoreland@cox.net, "Turner W. Branch" <tbranch@branchlawfirm.com>, mbranch@branchlawfirm.com, czedalis@branchlawfirm.com, jbruno@brunobrunolaw.com, Rebecca@CunardLaw.com, Luis Cardenas <lcardenas@ETCLaw.com>, jescobedo@etclaw.com, gjones@jonesswanson.com, lswanson@jonesswanson.com, EGarrison@jonesswanson.com, "Specter, Shanin" <Shanin.Specter@KlineSpecter.com>, "Kline, Thomas R." <Tom.Kline@KlineSpecter.com>, "Becker, Chip" <Chip.Becker@KlineSpecter.com>, "Lockridge, Richard A." <ralockridge@locklaw.com>, rkshelquist@locklaw.com, ymflaherty@locklaw.com, James Petit <jpettit@lockslaw.com>, bpmorelli@morellilaw.com, Martha McBrayer <MMcBrayer@morellilaw.com>, "Rice, Joe" <jrice@motleyrice.com>, "Scott, Carmen" <cscott@motleyrice.com>, "Thompson, Fred" <fthompson@motleyrice.com>, Steve Murray <smurray@murray-lawfirm.com>, "Stephen Murray, Jr." <smurrayjr@murray-lawfirm.com>, Dianne Nast <dnast@rodanast.com>, JEU@CTW.COM, Kathy Snapka <ksnapka@snapkalaw.com>, Peggy Woodward <mewno@aol.com>, Pascal Calogero <pcalogero@alsfirm.com>, "King, Henry" <hking@kingkrebs.com>, David Scalia <dscalia@scalialaw.net>
**BCC:** "Eric H. Weinberg" <ehw@erichweinberg.com>, Chris Placitella <cplacitella@cprlaw.com>, Harry Roth <hroth@cprlaw.com>

```
PRIVILEGED AND CONFIDENTIAL AS JOINT DEFENSE COMMUNICATIONS RESULTING FROM A JOINT
DEFENSE ESTABLISHED BY COURT ORDER

Counselors:

This is to confirm the issues resolved at this afternoon's conference call.

By majority vote of all Objectors, Pascal Calogero was elected to serve as Liaison
Counsel, and Robert Arceneaux and Margaret Woodward were elected to serve as Co-Lead
Counsel.

For those of you who were not able to participate in the call, please e-mail with a note
indicating whether you ratify this selection, or oppose it. If you oppose it, we will
notify the Court of the fact that the decision was not unanimous when we file our motion
seeking confirmation of the appointment. We will not mention any names, or in any way
prejudice any persons or firms that exercise their right to dissent.

Compensation was also discussed.

Prior to the meeting, we had proposed to the objectors to possible basis of
compensation, which are outlined in my earlier e-mail today.

The following firms have selected the contingency option;

Roda Nast
Morelli Rattner

The following firms have selected the quantum meruit (lodestar + multiplier to be fixed
the Court) option, with one alternation which was acceptable to Calogero, Woodward and
Arceneaux -- Judge Fallon will set the multiplier in his capacity as an Article III
judge, and not as an arbitrator, although it may be that we all agree to abide by his
decision and not appeal -- this litigation must come to an end someday.

Branch Law Firm
Escobedo, Tippet and Cardenas
Kline and Specter
Lockridge, Grindal and Nauen
Locks Law Firm
Snapka Law Firm
```

# EXHIBIT A

The following firms were not present at the conference, and so did not express a preference:

Anapol Schwartz
Cunard Law Firm
Motley Rice

the following firms already have in place a compensation agreement which exceeds either the contingency fee or quantum meruit agreement:

Cohen Placitella and Roth
Eric Weinberg

the following firm has asked to negotiate a different fee arrangement:
Jones, Swanson, et al.

Lead and Liaison Counsel are open to this, provided that once all Objectors have reached terms on representation, the details of all compensation agreements must be disclosed to the whole -- everything will be done transparently. Also, such disclosure is necessary to allow all objectors to determine if the total compensation that appointed counsel will receive is excessive, which of course it cannot be.

Two of the objectors have indicated that they will not agree to pay Liaison or Lead Counsel any fees. Liaison and Lead indicated they reserve the right to ask the court for an order assessing these individuals or firms with whatever fees the court thinks is appropriate.

For those firms not participating in the call, if you elect to ratify the appointment of Calogero, Arceneaux, and Woodward, you should notify me if you agree to (1) the contingency option, (2) the quantum meruit option, (3) some separately negotiated arrangement that would be reported to the group once concluded, or that you will not agree to any fee arrangement.

For all those participating in the quantum meruit option, the objectors have decided to share the fee pro tanto( by heads), although it was referred to as a pro rata sharing at the meeting.

Also, all quantum meruit acceptors understood and agreed that the payment of a fee would have to await the conclusion of all litigation, so that Judge Fallon can assess the multiplier to be applied, if any. Each firms liability for hour fees will cease when and if their individual claims are resolved, and appointed counsel is no longer working for their benefit.

As part our of quantum meruit proposal, we will be asking the Court to set aside a percentage of funds from any settling objector to satisfy the ultimate quantum meruit fee. We anticipate that the majority of the withheld funds will be returned to the Objectors.

Also, as part of our fee proposal, which was unanimously agreed to by all present, each firm has agreed to provide $2000 to seed a cost account. Please send your checks to me at 47 Beverly Garden Drive, Metairie, LA 70001.

We will provide monthly cost accountings, as well as monthly time reports These time reports will not be invoices, but will merely be records so that the quantum meruit firms can keep abreast of the hours incurred as they are recorded.

There was much discovery of to proceed, and the topics to be covered at Thursday meeting with the Court. I will write on these subjects more in the days to come.

For now, I want to remind all of you to send me you written discovery requests as soon as possible, so that I can compile a combined list and circulate it to the group.

We have scheduled a conference call on Wednesday, Feb. 16, at 1:00 CST, for all those who wish to discuss final plans for Thursday's meeting with the Court. We have scheduled

another call for Friday, Feb. 18, at 1:00 CST, for a report on what happened, although I will send an e-mail giving a written report soon after the meeting concludes.

On behalf of Peggy and the Chief and myself, I want to thank you all for the trust and confidence you have placed in us (I think. lol). We pledge to represent you all to the very best of our abilities, with a conscience reference being the limited role that we all agreed we should serve, and ethics and transparency being our guiding light. If we take the high road, but fight hard, we can all be proud of our conduct in this when we achieve the victories that I hope we all obtain against the injustice of the FAC recommended allocation.

Robert Arceneaux
(504) 833-7533 office
(504) 220-1585 cell

btw, please excuse typos and grammatical errors in my e-mails. I am too fast a typist, which means I make many mistakes. I am told it is okay to have such errors in e-mails by my General Y friends and relations, as it is a sign of being "cool" and "with it." I assure you I am neither. I simply would rather pass information on to you as soon as possible, without having to have every e-mail proofread by the person who does so for all my briefs and filings.

**Subject:** Vioxx - Objectors - - status and request for fee arrangement form
**From:** robert <rea7001@cox.net>
**Date:** Mon, 07 Mar 2011 07:42:28 -0600
**To:** "Weiss, Sol" <sweiss@anapolschwartz.com>, Daniel Becnel <dbecnel@becnellaw.com>, mattmoreland@cox.net, "Turner W. Branch" <tbranch@branchlawfirm.com>, mbranch@branchlawfirm.com, czedalis@branchlawfirm.com, jbruno@brunobrunolaw.com, Rebecca@CunardLaw.com, Luis Cardenas <lcardenas@ETCLaw.com>, jescobedo@etclaw.com, gjones@jonesswanson.com, lswanson@jonesswanson.com, EGarrison@jonesswanson.com, "Specter, Shanin" <Shanin.Specter@KlineSpecter.com>, "Kline, Thomas R." <Tom.Kline@KlineSpecter.com>, "Becker, Chip" <Chip.Becker@KlineSpecter.com>, "Lockridge, Richard A." <ralockridge@locklaw.com>, rkshelquist@locklaw.com, ymflaherty@locklaw.com, James Petit <jpettit@lockslaw.com>, bpmorelli@morellilaw.com, Martha McBrayer <MMcBrayer@morellilaw.com>, "Rice, Joe" <jrice@motleyrice.com>, "Scott, Carmen" <cscott@motleyrice.com>, "Thompson, Fred" <fthompson@motleyrice.com>, Steve Murray <smurray@murray-lawfirm.com>, "Stephen Murray, Jr." <smurrayjr@murray-lawfirm.com>, Dianne Nast <dnast@rodanast.com>, jurquhart@bmpllp.com, Kathy Snapka <ksnapka@snapkalaw.com>, Peggy Woodward <mewno@aol.com>, Pascal Calogero <pcalogero@alsfirm.com>, "King, Henry" <hking@kingkrebs.com>, David Scalia <dscalia@scalialaw.net>, "DRatner@morellilaw.com >> David Ratner" <DRatner@morellilaw.com>, "Dagostino, Lisa S." <Lisa.Dagostino@KlineSpecter.com>, psanchez@branchlawfirm.com, Michelle.Tiger@KlineSpecter.com, Lee.Balefsky@KlineSpecter.com, PWELKER@LOCKSLAW.COM
**CC:** gspizer@anapolschwartz.com, tbartlett@jonesswanson.com, David Hockema <dhockema@hockemalongoria.com>
**BCC:** "Eric H. Weinberg" <ehw@erichweinberg.com>, Chris Placitella <cplacitella@cprlaw.com>, Harry Roth <hroth@cprlaw.com>, Michael Coren <MCoren@cprlaw.com>

```
PRIVILEGED AND CONFIDENTIAL AS JOINT DEFENSE COMMUNICATIONS RESULTING FROM A JOINT
DEFENSE ESTABLISHED BY COURT ORDER

Counselors:

Nothing from Master Juneau yet. I suspect that once he began reading, he realized that
this was going to be a big more complicated than he thought, and it is taking him time.
In any event, its Mardi Gras season here, and everything shuts down.

Attached is a letter outlining the various fee proposals we discussed and agreed to.
Please complete the attached form and send it in, so we can get that issue out the way
and focus all of our energy on the battle ahead.

Finally, attached is a letter I have sent to Master Juneau, in response to the requests
I have received from many of you regarding Birchfield's Memorandum.

Happy Mardi Gras!

robert
```

| leadership fee agreement letter final.pdf | **Content-Type:** application/pdf |
|---|---|
| | **Content-Encoding:** base64 |

juneau 3.pdf

EXHIBIT B

Monday, March 07, 2011

**To:   Counselors who are identified as "objectors" in
       the court's Feb 8 order, or any others that
       become objectors by virtue of subsequent orders:**

This letter memorializes the terms of representation that we discussed in our telephone conference wherein Margaret Woodward and I were elected co-Lead, and Pascal Calogero was elected Liaison counsel. Two different compensation schemes were proposed and various firms have selected different options.

The first arrangement is a 4% contingency fee calculated on lodestar less present allocation. This means that we would only collect a fee on any recovery achieved by you- as a result of reduction of assessment, common benefit fee award, or otherwise- in excess of the allocation proposed by the FAC on Jan 20, 2011 up to a limit of your properly-calculated lodestar. By properly-calculated lodestar, we mean to distinguish a lodestar taking into account actual rates for attorneys and staff in your firms from the blended average rate we used in preparing our preliminary objection charts. Anything in excess of that would not be subject to our contingency fee. The cap reflects our agreement that we are working toward a lodestar-based recovery for the entire group, and that beyond that point, we are conflicted and therefore will leave to each objector the argument for recovery above lodestar.

The second alternative would be the method used by Courts, and which we are advocating for ourselves, in awarding attorneys fees to court appointed lawyers – lodestar plus *Johnson* factors. Pascal Calogero's hourly rate is $550.00; my rate is $300 per hour, and Margaret's rate is $200 per hour. We would submit monthly reports of the hours recorded, in quarter hour units, but these reports would not be invoices. At the conclusion of this matter, Judge Fallon would determine if a multiplier is due, using *Johnson* factors. We agree to cap the amount of any potential multiplier at 2. Obviously, some sort of set aside would have to be created to escrow funds from those settling their claims, as compensation would have to await conclusion of the litigation.

The third alternative is to agree to nothing amongst ourselves, as several firms have done. We have notified Judge Fallon of this, and he has indicated to us that we should keep our hourly rates and that he would make an award for fees to us in according with *Johnson*. To us, this means that those who agree to nothing will be ordered by the Court to participate in option two.

As for option two, there was some discussion about a "pro rata" sharing of the fee to be determined by the Court, however, there was an attempt to count the number of participating firms. To us, this means, a "pro tanto" sharing, not a "pro rata sharing," and so we are suggesting that it was the consensus of those in the group, and more importantly, of those that are electing option two, to share by heads, meaning one share due by each of the objecting firms or individuals identified in the Court's Feb. 8 order, or any others that become objectors by virtue of subsequent orders..

Last, we explained to you that we must have a fundamental understanding of the delineation of authority among the committee and its counsel. We believe the legal action the leadership proposes

-1-

to take should, at any time, be subject to veto by a majority of the objectors who are still in active litigation at the time the issue must be decided, that is, by a majority of those who haven't settled with the FAC. Further to this point, we contemplate that leadership will be fighting for any item of discovery any member of the committee reasonably wants to obtain. As we discussed at some length, we envision the role of lead and liaison counsel as challenging the FAC's formula and process, and advocating for, at a minimum, a recovery of each objector's lodestar. Beyond that, conflicts of interest in our respective claims to a limited fund would constrain joint representation efforts. Each objector will retain responsibility for advocating any higher recovery. Lead and liaison counsel will have no authority to negotiate beyond this minimum recovery, or to suggest any other figure that might be acceptable to any objector. Should a conflict develop between the will of the group majority and our obligations to our clients Placitella, Roth, and Weinberg, we would be forced to withdraw as lead and liaison counsel.

We need each individual or firm to execute the form below and return it to us ASAP. Fax is acceptable, to (504) 833-7612, and then mail the original Robert Arceneaux, 47 Beverly Garden Drive, Metairie, LA 70001.

We will prepare a pre-trial order for the judge to sign, outlining the limits of our duties, and also the terms of compensation. The firms or individuals agreeing to the various options will be filed under seal.

Please attend to this right away. We have been working very hard, and want to get this issue resolved now, before we continue with any more heavy effort. Furthermore, there are still many of you that, despite several requests, have yet to send your cost reimbursement.

We appreciate the confidence you have placed in us, and look forward to working with you toward a satisfactory resolution of this interesting and challenging litigation.

Robert E. Arceneaux
Margaret E. Woodward
Pascal F. Calogero, Jr.

## ELECTION OF COMPENSATION SCHEME

_____ has agreed to the terms as outlined above, and has selected the following option as the basis for compensation for leadership in this matter:

_____   Option 1 (contingency fee)

_____   Option 2 (hours plus *Johnson* factors, divided by heads)

_____   Option 3 no agreement, leaving it to Court to assess a fee, subject to right to contest court action.

_____
On behalf of the above identified firm or individual,
 this \_\_\_\_\_ day of \_\_\_\_\_, 2011.