UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
|  | : | MDL NO. 1657 |
| IN RE: VIOXX | : |  |
|      PRODUCTS LIABILITY LITIGATION | : | SECTION: L |
|  | : |  |
|  | : | JUDGE FALLON |
|  | : | MAG. JUDGE KNOWLES |
| . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | : |  |

**THIS DOCUMENT RELATES TO ALL CASES**

## ORDER & REASONS

The Court is in the process of determining the appropriate allocation of common benefit fees. One portion of that process was the appointment of Special Master Pat Juneau to supervise discovery, conduct appropriate proceedings, and prepare an independent recommendation as to how the common benefit fund should be allocated. On June 27, 2011, Special Master Juneau submitted his Report and Recommendations. (Rec. Doc. 63093). The Court posted the Report and Recommendations on its website. The Court has received a number of objections to the Report and Recommendations, and to certain evidentiary rulings the Special Master made at a hearing he supervised from May 9 to May 13, 2011. Additionally, the Court has received a number of motions to amend the amount of the common benefit fund that is currently being allocated. It is appropriate to resolve these motions before the Court issues its final allocation.

    **A.**    **Motions to Amend the Amount of the Common Benefit Fund**

At an early stage of the MDL proceedings, pursuant to Pretrial Order 19, plaintiffs'

counsel had an opportunity to file cases in the MDL and consent to a fixed common benefit assessment rate. The Master Settlement Agreement ("MSA") superseded those PTO 19 assessment rates for all claims enrolled in the Settlement Program. When Plaintiffs' Liaison Counsel moved for an 8% common benefit assessment, as permitted under the terms of the MSA, a number of attorneys objected and argued that the PTO 19 common benefit fee assessment rates should be enforced. The Court appointed Michael Stratton as Liaison Counsel for those percentage-fee objectors. On behalf of the objectors, Stratton submitted a letter to the Court withdrawing all objections in exchange for a reduction of the requested fee from 8% to 7.5%. The Court addressed the enforceability of those superseded PTO 19 fee assessments in its October 19, 2010 Order and Reasons:

> The Court takes this opportunity to discuss the initial fee assessments set by the Court in Pretrial Order 19, as well as criticism that the [Negotiating Plaintiffs' Counsel] did an end-run around those agreements and "used their control of settlement negotiations to make more money available for themselves." The PTO 19 fee assessment agreements were reasonable and appropriate to create a fund to compensate common benefit attorneys for the consolidated MDL discovery work that was contemplated at that early stage of the litigation. When circumstances changed as a result of the extensive discovery, numerous trials, and through negotiation and implementation of a global opt-in settlement, it became necessary to reevaluate the reasonable compensation for the common benefit attorneys who accomplished those tasks. The claimants and their attorneys acknowledged those changed circumstances when they accepted the terms of the Settlement Agreement which supplanted the PTO 19 assessments. Master Settlement Agreement § 9.2.1. Moreover, the Court's equitable and managerial authority and duty to award fair common benefit fees or to adjust contingent fees exists independent of contractual agreement, and the Court's authority to do justice by reducing attorneys' fees necessarily encompasses the corollary authority to increase fees where appropriate. *See Guidant*, 2008 WL 682174, at *11-12.

*In re Vioxx Prods. Liab. Litig.*, 760 F. Supp. 2d 640, 649 n.15 (E.D. La. 2010) (some citations omitted).

During these fee allocation proceedings, allegations of unauthorized actions regarding the

resolution of the percentage-fee objections have since come to the Court's attention.  It seems that members of the PSC negotiated an agreement with Liaison Counsel for the percentage-fee objectors.  Liaison Counsel and the percentage-fee objectors agreed to withdraw their objections in exchange for the PSC's agreement to a global reduction of the fee application from 8% to 7.5%, and a reduction or refund of each of the percentage-fee objectors' assessments to 4%.  The Court was not made aware of the particulars of the agreement with the objectors, that the objectors would receive a refund, or that payments representing the reduced assessments may have been made out of the common benefit fund without an Order from the Court as required by the MSA.

Now, some common benefit fee applicants who were not percentage-fee objectors seek reconsideration of the Court's October 19, 2010 Order and Reasons.  They contend that they should receive the same "deal" that the percentage-fee objectors received, and should be assessed no more than 4% of their clients' settlement amounts, rather than the 6.5% assessment fixed by the October 19, 2010 Order and Reasons.

This Court has concluded that the sum total of common benefit work done in the Vioxx litigation that produced the Settlement Program and resolved 99.9% of all Vioxx claims deserves reasonable compensation in the amount of 6.5% of the $4.85 billion settlement amount, or $315,250,000.00.  That is the amount that the Court will allocate.  The circumstance that some attorneys may have agreed with the PSC to contribute less than that amount does not diminish the amount the Court will allocate.  Nor does the fact that some portion of the common benefit fund may already have been disbursed in connection with the agreement.  The Court did not order that disbursement.  Questions pertaining to the amount of the fund presently available for

distribution will be addressed at a later date, after an opportunity for all interested parties to be heard. As it pertains to the motions to reconsider the October 19, 2010 Order and Reasons, the agreement does not warrant reconsideration regarding the 6.5% common benefit assessment. Accordingly, those motions are DENIED.

### B. Objections to Special Master's Evidentiary Rulings

On March 31, 2011, Special Master Juneau issued a Report and Scheduling Order (Rec. Doc. 62735) ruling on requests for discovery by Objectors and setting a schedule for an evidentiary hearing. Objections to that Report and Scheduling Order were filed, and on April 21, 2011 the Court denied the objections and affirmed the Special Master's Report and Scheduling Order in all respects. (Rec. Doc. 62883).

At the evidentiary hearing conducted during the week of May 9 through May 13, 2011, the Special Master ruled on a number of evidentiary matters. Some of those evidentiary rulings and some aspects of the Special Master's Report and Recommendation have been objected to.

### 1) FAC Minutes

Special Master Juneau initially denied discovery of minutes of FAC meetings. (Rec. Doc. 62735 at 8). At the deposition of the FAC representative on May 6, 2011, the Special Master ordered production of FAC meeting minutes, but stated that "based on everything I''ve heard [it] is going to really lead to nothing." (Transcript of May 6, 2011 deposition at 369). The FAC and Objectors filed letters with the Special Master respectively challenging and supporting that ruling. On May 9, after the first day of the hearing, the Special Master confirmed his original ruling of March 31 and denied discovery of the FAC meeting minutes, concluding that "deliberations should not be subject to discovery." (Rec. Doc. 62947).

Pretrial Order 32 required the FAC "to keep minutes of all meetings of the Allocation Committee and to collect appropriate documents to support the Committee's ultimate recommendations." (Rec. Doc. 13007 at 2-3). But PTO 32 did not require that the FAC later disclose those minutes. The FAC has adequately supported its recommendations, which are the output of its deliberations; if minutes of meetings that may have contributed to that ultimate recommendation are produced, it would confuse matters, chill those deliberations, and undermine the purpose of a Court-appointed allocation committee. The Court affirms the Special Master's ruling and denies the objection.

### 2) Discovery Regarding Common Benefit Assessments

The Objectors initially sought discovery relating to each firm's relative contribution to the Common Benefit Fund through assessments on the recoveries of their individual clients, which the Special Master denied. (Rec. Doc. 62735 at 8). The subject arose during the hearing, and the Objectors renewed their request for that material. Special Master Juneau ordered the FAC to be prepared to produce related materials during cross-examination of the FAC representative. However, the FAC representative was not cross-examined on that subject. Accordingly, the Special Master held that the request for production was waived. The Court affirms the Special Master's ruling on that basis and denies the objection.

### 3) Proposed Testimony of Joey Markowitz

Co-Lead and Liaison Counsel for the Objectors proffered expert testimony from Joey Markowitz, a software engineer. Mr. Markowitz would have testified regarding his work formatting and adapting the CPA's data into a modifiable chart using "Pivot" software.

Special Master Juneau's Report and Scheduling Order did not permit testimony at the

hearing by witnesses other than the Objectors, Phillip Garrett, and an FAC member.  (Rec. Doc. 62735 at 8).  On April 29, the Special Master issued a Hearing Protocol revising that and permitting the Objectors and the FAC to call one expert each.  (Rec. Doc. 62914).

On May 11, 2011, the FAC moved to exclude Mr. Markowitz from testifying and to exclude the chart he prepared, on the basis of the Objectors' failure to provide a Rule 26 expert report outlining Mr. Markowitz's methodology or qualifications.  (Rec. Doc. 62953).  The Special Master heard argument and excluded Mr. Markowitz's testimony, on the basis that the parties agreed that Mr. Markowitz was not being called as an expert and that his testimony would necessarily involve technical expertise beyond the scope of any testimony a non-expert could offer.  The Special Master also concluded that Mr. Markowitz's testimony and chart merely adapted the CPA's data, at the risk of distorting or confusing that data, and was redundant of material already in the record.  The Objectors object to that ruling.

Special Master Juneau properly excluded Mr. Markowitz's testimony and materials.  The Hearing Protocol permitted Objectors to call an expert witness.  The hearing record reflects that the Objectors purported to call Mr. Markowitz strictly as a non-expert, "clerical" witness.  The Special Master correctly concluded that Mr. Markowitz's proposed testimony necessarily involved special technical expertise regarding how he programmed his modifiable chart and how that chart could be reliably counted on to display accurate information.  The Court affirms the ruling of the Special Master.

### 4) PSC Emails

Objectors Kathryn Snapka and Joe Escobedo also object to the Special Master's exclusion of emails generated around the trial of the *Irvin* MDL bellwether.  The emails were

critical of some aspects of the trial strategy. Special Master Juneau excluded those emails as hearsay. The emails are hearsay and irrelevant, and the Court affirms the Special Master's ruling.

### C.  Objections to the Special Master's Findings

To the extent that parties object to the Special Master's reasoning or the substance of his recommended allocation, the Court will take those objections into consideration as it exercises its independent judgment and allocates the common benefit fees in this matter.

### IV.  CONCLUSION

For the foregoing reasons, the objections and motions are DENIED as set forth herein.

New Orleans, Louisiana, this 5th day of August, 2011.

*[signature: Eldon E. Fallon]*

UNITED STATES DISTRICT JUDGE