# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

_____

| | | |
|---|---|---|
| In Re:  VIOXX | : | |
| | : | MDL Docket No. 1657 |
| PRODUCTS LIABILITY LITIGATION | : | |
| | : | SECTION L |
| **THIS DOCUMENT RELATES TO:** | | |
| 2:10 CV 01115 | : | JUDGE FALLON |
| | : | MAG. JUDGE KNOWLES |


## <u>MOTION TO REMAND OF THE COMMONWEALTH OF KENTUCKY</u>


Jack Conway
Attorney General
Commonwealth of Kentucky

Todd E. Leatherman
Executive Director
Elizabeth Ungar Natter
Assistant Attorney General
Office of Consumer Protection
Office of the Attorney General
1024 Capital Center Dr., Suite 200
Frankfort, KY  40601
502-696-5389

William R. Garmer
Garmer & Prather
Opera House Building
141 North Broadway
Lexington, Kentucky 40504
859-254-9351

Scott A. Powell
Don McKenna
Matthew C. Minner
Brian M. Vines
Hare, Wynn, Newell, & Newton
2025 Third Avenue North, Suite 800
Birmingham, AL 35203
205-328-5330

## TABLE OF CONTENTS

INTRODUCTION……………………………………………………..……………1

STATEMENT OF THE CASE…………………………………………..…………2

STANDARD OF REVIEW………………………………………..…………...2

ARGUMENT……………………………………………………….…………..3

    A.      There Is No Issue of Federal Law that Provides a Basis for Federal-Question Jurisdiction…………………………………………………...3

        1.      No Federal Issues are Necessary to the Resolution of the Kentucky CPA Claim……………………………………………………….....4

        2.      According to Supreme Court Precedent, FDCA Issues Cannot Confer Federal-Question Jurisdiction over the Commonwealth's Complaint ………………………………………...6

            a.      Under *Merrell Dow* and *Grable & Sons*, FDCA Issues are Insufficient to Confer Federal Jurisdiction over the Commonwealth's Kentucky CPA Claim……………………...7

            b.      *Grable & Sons* Provides No Support for Federal-Question Jurisdiction......……………………………..8

        3.      District Courts Across the Country Have Rejected Similar Arguments for Federal-Question Jurisdiction………………10

    B.      The Minimal Diversity Requirement of CAFA is Not Met…………….13

        1.      The Commonwealth is the Real-Party-In-Interest for all Relief It Seeks………………………………………………......14

        2.      There is No Basis to Conclude the Commonwealth Seeks Restitution on Behalf of Kentucky Consumers…...…………..18

            a.      On its Face, the Commonwealth's Complaint Does Not Seek Restitution on Behalf of Kentucky Consumers ...……………………………...…………18

            b.      Merck's Proffered Inference is Impermissible………………19

             c.      *Caldwell* Provides No Support for Merck's Proffered Inference ............................................................22

CONCLUSION…..…………………………………………………………24

The Commonwealth of Kentucky ("Commonwealth") files this Motion to Remand its claim under the Kentucky Consumer Protection Act ("Kentucky CPA") to the Circuit Court of Franklin County, Kentucky.  In furtherance thereof, the Commonwealth states as follows:

## INTRODUCTION

Merck's Notice of Removal is nothing less than an attempt to establish federal jurisdiction on an unprecedented basis.  At its core, Merck's Notice of Removal attempts to create federal jurisdiction out of whole cloth with "implicated" federal issues and "inferred" forms of relief. Creating federal jurisdiction on such a tenuous and hypothetical basis would turn Merck's burden for establishing federal jurisdiction on its head.  After reviewing the Commonwealth's complaint, it is clear that there is no basis on which Merck can establish federal jurisdiction.  Given the hesitance with which courts must consider federal jurisdiction over sovereign state's claims, Merck's speculative and inferential argument cannot carry its burden.

## STATEMENT OF THE CASE

The Commonwealth asserted its claim for "Violations of the Kentucky Consumer Protection Act" in the Circuit Court of Franklin County, Kentucky.  (Complaint of the Commonwealth of Kentucky ("Complaint") p. 7-8, attached hereto as Exhibit A). Pursuant to Kentucky Revised Statute ("KRS") section 367.990, Attorney General Jack Conway brought this action "in the name of the Commonwealth" for a declaration that Merck violated section 367.170 and for an injunction enjoining Merck from further violations of KRS 367.170.  (*Id.* at 7-8).  In addition, the Commonwealth has sought attorneys' fees.  Section 367.170 declares "unlawful" any conduct by Merck that was

1

"unfair, false, misleading, and/or deceptive." (*Id.* at ¶ 34); *see also*, KRS §§ 367.170, 367.990(2). Section 367.170 does not require the Commonwealth to establish "actual deception of some person" to establish a violation. *Directories v. Commonwealth*, 833 S.W.2d 848, 850 (Ky. Ct. App. 1991).

In addition to this relief, the Commonwealth seeks "an award of civil penalties . . . pursuant to KRS 367.990" for each violation of section 367.170. (Ex. A, Complaint ¶34). Section 367.990 provides that "the Attorney General . . . may recover, on behalf of the Commonwealth, a civil penalty" for each violation of KRS 367.170. In deference to the inherent power of the Court, the Commonwealth also requested any other relief that the Court "deems just and proper." (*Id.* at p. 8). These are all the forms of relief requested in the Complaint.

## STANDARD OF REVIEW

Merck bears the burden of establishing that federal jurisdiction exists over the Commonwealth's "well-pleaded" complaint. *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). A federal court's jurisdiction is limited to that authorized by the Constitution and federal statutes. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). When considering whether a complaint gives rise to federal jurisdiction, courts must "strictly construe removal jurisdiction." *Willy v. Coastal Corp.*, 855 F.2d 1160, 1164 (5th Cir. 1988). In furtherance of this principle, the Fifth Circuit requires "removal statutes [] to be construed strictly against removal and for remand." *Eastus v. Blue Bell Creameries*, *LP*, 97 F.3d 100, 106 (5th Cir. 1996). The basis for jurisdiction "must affirmatively and distinctly appear and cannot be helped by presumptions or by argumentative inferences drawn from the pleadings." *Norton v.*

*Larney*, 266 U.S. 511, 516 (1925).  Any doubts about this Court's jurisdiction "should be resolved against federal jurisdiction."  *Acuna v. Brown & Root Inc.*, 200 F.3d 335, 339 (5th Cir. 2000).

Finally, in cases such as this one, a federal court should be "reluctant to snatch cases which a State has brought from the courts of that State, unless some clear rule demands it."  *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for So. Cal.*, 463 US 1, 22 (1983).  As many courts have recognized, "[r]emoval jurisdiction raises significant federalism concerns."  *Willy v. Coastal Corp.*, 855 F.2d 1160, 1164 (5th Cir. 1988).  "Due regard for the rightful independence of state governments . . . requires that [federal courts] scrupulously confine their own jurisdiction to the precise limits which the statute has defined."  *Healy v. Ratta*, 292 U.S. 263, 270 (1934).

## ARGUMENT

Merck's Notice of Removal requires imagining "implicit" causes of action to establish federal-question jurisdiction and "inferred" forms of relief to establish diversity for purposes of the Class Action Fairness Act ("CAFA").  Such a fanciful reading of the Commonwealth's complaint cannot establish federal jurisdiction. Taken at face value, a fair reading of the actual claims set forth in the Commonwealth's "well-pled" complaint reveal that the Commonwealth has asserted only state-law claims on behalf of only the Commonwealth.  *See e.g.*, *Howery*, 243 F.3d at 916.  There is simply no basis for jurisdiction over such claims.

A.   There Is No Issue of Federal Law that Provides a Basis for Federal Question Jurisdiction.

Because the Commonwealth does not allege any violations of federal law and the Commonwealth need not establish any violations of federal law for its Kentucky CPA

claim, Merck's assertion of federal-question jurisdiction fails.    Instead of federal law, Merck's "liability will depend [only] upon its breach of duties as defined and created by state law." *Mississippi ex rel. Hood v. Astrazeneca*, 744 F. Supp. 2d 590, 601 (N.D. Miss. 2010).   In the Fifth Circuit, four factors must be satisfied for federal-question jurisdiction to exist: "(1) resolving a federal issue is necessary to resolution of the state law claim; (2) the federal issue is actually disputed; (3) the federal issue is substantial; and (4) federal jurisdiction will not disturb the balance of federal and state judicial responsibilities." *Singh v. Duane Morris, LLP*, 538 F.3d 334, 338 (5th Cir. 2008).   As explained below, decisions from the Supreme Court, including *Grable & Sons Metal Products v. Darue Engineering*, 545 U.S. 308 (2005), the Fifth Circuit, and district courts around the county confirm that Merck cannot satisfy one, much less all four, of these requirements for federal-question jurisdiction.

1.    *No Federal Issues are Necessary to the Resolution of the Kentucky CPA Claim.*

Merck does not and cannot provide any support for its assertion that the Commonwealth's claim "is implicitly and explicitly premised upon alleged violations of the [FDCA]."[1]  (Merck Notice of Removal, ¶ 11) (attached hereto as Exhibit B).  Not a single paragraph in the Commonwealth's complaint alleges a violation of the FDCA. Further, the Kentucky CPA requires no FDCA violations.  The only issue "necessary to resolution" of this lawsuit is whether Merck's conduct was "unfair, false, misleading, and/or deceptive" as defined by Kentucky law.   KRS §§ 367.170, 367.990(2). Accordingly, on the face of the Commonwealth's well-pled complaint, no federal issue is

---

[1]The Commonwealth is puzzled by Merck's assertion in its notice of removal that the Kentucky CPA claim is "*explicitly* premised upon alleged violations of the" FDCA.  (Ex. B, Notice of Removal ¶ 11).  The Commonwealth has reviewed the complaint it drafted and filed and has yet to find any place where it alleged a violation of the FDCA.

4

"necessary to resolution" of the Kentucky CPA claim, and, therefore, no basis for federal-question jurisdiction exists. *Singh*, 538 F.3d at 338. This basis alone is sufficient to reject federal-question jurisdiction.

Faced with the reality of the Commonwealth's complaint, Merck's argument depends on its assertion that the FDCA is merely "implicate[d]" by the Commonwealth's claim. (Ex. B, Notice of Removal ¶ 8). The Commonwealth disputes this assertion, but for the sake of argument, even if the FDCA were merely "implicated," that falls far short of the Fifth Circuit's requirement that the issue be "necessary" to the resolution of the claim. *Singh*, 538 F.3d at 338. Merck's attempt to proffer an "implicated" issue as "necessary" is foreclosed under the Fifth Circuit's opinion in *Howery*.

In *Howery*, the Fifth Circuit held that an explicit allegation of violations of federal law did not create a "necessary" federal issue for purposes of federal question jurisdiction. *Howery*, 243 F.3d at 918. The plaintiff alleged that the defendant's conduct violated "the Federal Trade Commission rules, regulations, and statutes" in support of his claim under Texas law. *Id.* at 915. The Texas law in *Howery*, like the Kentucky CPA, "forbid[] a wide range of conduct, prohibiting '[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce.'" *Id.* at 918 (quoting Tex. Bus. & Com. Code § 17.46(a)).

The Court refused to rely on the allegation of federal violations to support federal jurisdiction. First, the Court held that the federal violation allegation "merely served to describe types of conduct that violated [Texas law]," it did not "allege a separate cause of action under" federal law. *Id.* at 918. Next, the Court noted that even if the alleged violations of federal law "could possibly fall within the broad scope of" the Texas law,

5

the federal violations were not "an element of the [state law claim]." *Id.*  Finally, the Court explained that "the interpretation of a federal right was not necessary" to the resolution of the state-law claim.  *Id.*  "As an alternate theory supporting a single-claim, the federal question [was] not a *necessary* element of the state claim, and thus [did] not create federal question jurisdiction*." Id.* (emphasis in original)*.*

Even more so, the Commonwealth's state-law claim, which makes no explicit (or implicit) allegation of violations of federal law, does not involve a federal issue "necessary to [its] resolution" as required by *Singh*.  538 F.3d at 338.  Even if Merck's conduct also happens to be a "violation of the FDCA rules and regulations," (Notice of Removal ¶¶ 11-14), the Commonwealth need not establish a violation of the FDCA to establish a violation of the Kentucky CPA—a violation of the FDCA is not an element of the Kentucky CPA.  *See Howery*, 243 F.3d at 918.  Finally, even if one accepted Merck's attempt to read violations of the FDCA into the Commonwealth's complaint, that issue would, at most, be an alternate theory that does not give rise to federal jurisdiction.  *See id*.  Again, the application of *Howery* alone is sufficient to reject federal-question jurisdiction.

> 2.   *According to Supreme Court Precedent, FDCA Issues Cannot Confer Federal-Question Jurisdiction over the Commonwealth's Complaint*.

Setting aside the fact that the Commonwealth has neither alleged violations of the FDCA nor is a violation of the FDCA necessary to the Kentucky CPA claim, any possible FDCA issue would not be "substantial" enough to confer federal-question jurisdiction.  *Singh*, 538 F.3d at 338.  Contrary to Merck's repeated reliance on *Grable & Sons* in support of federal-question jurisdiction, (Merck Notice of Removal ¶¶ 9-10), that opinion and others confirm the opposite.  As held in *Merrell Dow Pharmaceuticals v.*

6

*Thompson*, 478 U.S. 804 (1986), and affirmed in *Grable & Sons*, state-law claims that <u>depend</u> on violations of the FDCA are insufficient to confer federal jurisdiction.  478 US 804, 814 (1986); 545 U.S. at 318-19.  Even more so, the Commonwealth's complaint that, at most, "implicates" the FDCA is far short of the Supreme Court's requirements for federal-question jurisdiction.

> a.      Under *Merrell Dow* and *Grable & Sons*, FDCA Issues are Insufficient to Confer Federal Jurisdiction over the Commonwealth's Kentucky CPA Claim.

In *Merrell Dow*, the Supreme Court held that a state-law claim that actually depended on violations of the FDCA did not support federal-question jurisdiction.  478 U.S. at 805-06.  The defendants argued that because the plaintiff needed to establish a violation of the FDCA to succeed on his state-law claim, federal jurisdiction was appropriate.  *Id.* at 813.  The Supreme Court rejected that argument, holding that any federal issues related to violations of the FDCA "as an element of a state cause of action [was] insufficiently 'substantial' to confer federal question jurisdiction."  *Id.* at 814.

*Grable & Sons,* relied on by Merck, reaffirmed *Merrell Dow's* conclusion regarding the FDCA.  545 U.S. at 318-19.  The Court affirmed *Merrell Dow's* conclusion that Congress did not intend to confer federal jurisdiction over state-law claims "solely because the violation" of the federal statute was an element to the state law claim.  *Id.* at 320 (quoting *Merrell Dow*, 478 U.S. at 811-12).  Significant to this conclusion was the Court's recognition of the enormous effect conferring jurisdiction in *Merrell Dow* would have had on the balance between federal and state judicial responsibilities.  The Court recognized that "if the federal labeling standard without a federal cause of action could get a state claim into federal court, so could any other federal standard without a federal

cause of action." *Id.* at 318.  "Such a standard would . . . herald[] a potentially enormous shift of traditionally state cases into federal court" and frustrate the  policy of federal courts being courts of limited jurisdiction.  *Id.* at 319.[2]

Quite simply, *Merrell Dow* as affirmed in *Grable & Sons,* applies in spades to the Commonwealth's Kentucky CPA claim.  Unlike the state-law claim in *Merrell Dow*, a violation of the FDCA is not even an element of liability under the Kentucky CPA. Furthermore, the Commonwealth has made no allegation of violations of the FDCA.  At most the FDCA is "implicated" in the Commonwealth's complaint and that is insufficient to establish federal-question jurisdiction under Supreme Court precedent.

> b.    *Grable & Sons* Provides No Support for Federal-Question Jurisdiction.

In addition to confirming the reasoning of *Merrell Dow*, a brief review of the facts of *Grable & Sons* confirms that there is no federal question jurisdiction over the Commonwealth's claim.  In a subsequent opinion, the Court clarified that *Grable & Sons* created a "special and small category" of federal-question jurisdiction of state-law claims that exists when a federal issue is "both dispositive of the case and would be controlling in numerous other cases."  *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699-700 (2006).  In *Grable & Sons* federal jurisdiction was appropriate where the meaning of the federal statute was "an essential element" of the state law claim, it involved an important interest of the federal government (tax collection), and federal jurisdiction would have a "microscopic effect on the federal-state division of labor." 545

---

[2] Importantly, the federal issue alleged by Merck could not overcome the federalism concerns which are expressed in *Grable & Sons.*  Jurisdiction in cases such as the Commonwealth's would open up federal courts to "a horde of original filings and removal cases raising other state claims with embedded federal issues."  545 U.S. at 318; *see also, Missouri ex rel. Nixon v. Mylan Laboratories, Inc.*, 2006 WL 145772 (E.D. Mo. 2006) (noting the states interest "heavily tilts the balance in favor of state adjudication").

U.S. at 315.  As discussed above, the Court reached a very different conclusion when the federal issue was the FDCA.

*Empire* confirms jurisdiction under *Grable & Sons* is not appropriate when federal law is simply implicated and the state law at issue depends heavily on factual issues.  547 U.S. at 699-700.  In *Empire*, the Supreme Court refused to extend jurisdiction over a state-law claim where a federal issue was merely tangential and fact-bound.  *Id.* at 700-01.  The plaintiff, a provider of health benefits for federal employees, sued in federal court on a subrogation interest it had in a state-law tort settlement.  *Id.* at 687-88.  The United States' argued that federal-question jurisdiction was appropriate under *Grable & Sons* because of the broad statutory and regulatory scheme that governed the insurance of federal employees.  *Id.* at 682-87, 699.  The Supreme Court quickly rejected the comparison.  *Id.* at 699-700.

The Supreme Court's application of *Grable & Sons* in *Empire* precludes the extension of federal-question jurisdiction under *Grable & Sons* to the Commonwealth's claim in this case.  Unlike Merck's allegation of an "implicated" FDCA issue, the federal issue in *Grable & Sons* was "an essential element" of the state-law claim and "appear[ed] to be the only . . . issue contested in the case."  *Empire*, 547 U.S. at 700.  Furthermore, the issue in *Grable & Sons* was a "pure issue of law" that was "both dispositive of the case and would be controlling in numerous other cases."  *Id.*  "In contrast," the state-law claim at issue in *Empire,* like the Kentucky CPA claim, was "fact-bound and situation-specific."  *Id.*

3.  *District Courts Across the Country Have Rejected Similar Arguments for Federal-Question Jurisdiction.*

The lack of federal-question jurisdiction over the Commonwealth's claim is confirmed by opinions across the country.  Pharmaceutical companies' attempts to remove complaints filed by states that implicated the federal Medicaid statute and the FDCA have been routinely rejected.  *See e.g.*, *Mississippi*, 744 F. Supp. 2d at 601-02 (remanding Medicaid fraud, consumer protection, and common law tort claims related to the sale of Seroquel)[3]; *New Mexico ex rel. King v. Ortho-McNeil-Janssen*, No. Civ. 08-0779 (Remand Order, Jan. 26, 2009) (remanding states Medicaid fraud and misrepresentation claims related to Risperdal and rejecting argument that Medicaid statute or FDCA created federal jurisdiction); *Utah v. Eli Lilly & Co.*, 509 F. Supp. 2d 1016, 1022-25 (D. Utah 2007) (relying on *Grable*, *Merrell Dow*, and *Empire* to remand state's Medicaid fraud claims related to Zyprexa); *South Carolina v. Eli Lilly & Co.*, 2007 WL 2261693, at *3 (D.S.C. 2007) (remanding state's Medicaid fraud and consumer protection claims related to Zyprexa); *Pennsylvania v. Eli Lilly & Co.*, 511 F. Supp. 2d 576, 584-86 (E.D. Pa. 2007) (relying on *Grable*, *Merrell Dow*, and *Empire* to remand state Medicaid fraud claims related to Zyprexa); *Alaska v. Eli Lilly & Co.*, 2006 WL 2168831, *2-3 (D. Ak. 2006) (remanding state's claims for Medicaid reimbursement, misrepresentations, and restitution related to Zyprexa). In the Commonwealth's case, where there is no issue related to the Medicaid statute, the argument against federal jurisdiction is even more compelling.

---

[3] The *Mississippi* opinion includes a string-cite of ten additional cases where federal courts remanded a state's claim against pharmaceutical manufactures for Medicaid fraud and other misrepresentations.  744 F. Supp. 2d at 602.

*Mississippi v. Astrazeneca* provides a good example of the application of the principles of *Singh*, *Empire, Grable & Sons*, and *Merrell Dow* to the Commonwealth's claims.  Mississippi alleged violations of its Medicaid statute and consumer protection statute based on misrepresentations made about a drug.  744 F. Supp. 2d at 594. Astrazeneca attempted to remove Mississippi's complaint on a theory of federal question jurisdiction arguing that issues related to the FDCA and the Medicaid statute were implied.  *Id.* at 599.  The Court granted Mississippi's motion to remand based on the factors articulated in *Singh*.  *Id.*

First, the Court rejected the notion that a federal issue was even present in the state's claim.  *Id.* at 601; *see* (supra pp. 4-6) (arguing that there is no federal issue "necessary" to the Commonwealth's claim). Describing as "gestalt" the notion that a federal issue was present simply because "Medicaid is largely a complex federal program," the Court recognized that the "defendants' liability will depend upon its breach of duties as defined and created by state law."  *Id*.  The Court concluded that Mississippi's claim more closely resembled the claims at issue in *Empire* as compared to the claim at issue in *Grable & Sons*.  *Id.* at 601.  Finally, the Court held that "[e]ven if Defendants could demonstrate the existence of a federal question," federal jurisdiction in the instant case would not be "consistent with congressional judgment about the sound division of labor between state and federal courts."  *Id.*

The only cases cited by Merck in support of federal-question jurisdiction under *Grable & Sons* are four opinions from Judge Weinstein in the *Zyprexa* MDL.  (Ex. B, Notice of Removal ¶ 9).  The Commonwealth's claims are easily distinguishable from Judge Weinstein's reasoning.  Unlike all of those cases, the Commonwealth's claim in no

11

way implicates the Medicaid statute and does not involve allegations of off-label use which were central to Judge Weinstein's reasoning. *New Mexico ex rel. Madrid v. Eli Lilly & Co.*, 2009 WL 69142, at *3 (E.D.N.Y. 2009); *Montana ex rel. McGrath v. Eli Lilly & Co.*, 2008 WL 398378, at *1 (E.D.N.Y. 2008); *West Virginia ex rel. McGraw v. Eli Lilly & Co.*, 476 F. Supp. 2d 230, 233 (E.D.N.Y. 2007); *Louisiana ex rel. Foti v. Eli Lilly & Co.*, 375 F. Supp. 2d 170, 172-73 (E.D.N.Y. 2005).   In fact, Judge Weinstein relied on the existence of issues related to the Medicaid statute to distinguish those cases from *Merrell Dow*.  *McGraw*, 476 F. Supp. 2d at 233 ("Medicaid aspects of the case provide a factor supporting federal jurisdiction in an FDCA-based dispute that was absent in *Merrell Dow*.").   There is no dispute on this point—the Commonwealth has not asserted a Medicaid claim.  However, even when Medicaid claims were present, Judge Weinstein recognized that there was a "split of authority on the matter."  *Montana ex rel. McGrath v. Eli Lilly & Co.*, 2008 WL 398378, at *4 (E.D.N.Y. 2008) (recognizing that "[t]he federal district courts in *Utah, South Carolina, Alaska,* and *Pennsylvania* have remanded virtually identical cases to the respective state courts where they were originally filed.")

At its best, Merck's argument is that federal question jurisdiction exists because facts alleged by the Commonwealth could possibly support a violation of the FDCA. Quite simply, this attenuated argument is insufficient to carry Merck's burden.  It takes much more than "a federal element 'to open the 'arising under' door.'"  *Empire*, 547 U.S. at 701 (quoting *Grable & Sons*, 545 U.S. at 313).  Cases from the Supreme Court, Fifth Circuit, and District Courts across the country confirm no federal-question jurisdiction

exists in this case.  Try as it might, Merck "cannot [] squeeze [the Commonwealth's case] into the slim category *Grable* [*& Sons*] exemplifies."  *Id.*

B.    The Minimal Diversity Requirement of CAFA is Not Met

The Commonwealth's claim is also not subject to federal jurisdiction under the Class Action Fairness Act ("CAFA").  Under CAFA, removal is appropriate only if a member of the "class of plaintiffs is a citizen of a State different from any defendant."  28 U.S.C. § 1332(d)(2)(A).  This minimal diversity requirement is not satisfied "where the only plaintiff in an action is a state because, for the purposes of diversity, a state has no citizenship."  *West Virginia ex rel. McGraw v. Comcast Corp.*, 705 F. Supp. 2d 441, 445 (E.D. Pa. 2010); *see also, e.g. Texas v. Merck & Co., Inc.*, 385 F. Supp. 2d 604, 607 (W.D. Tex. 2005) ("It is well-settled law that a state is not a citizen for purposes of diversity jurisdiction.") (citing *Texas Dep't of Hous. & Cmty. Affairs v. Verex Assurance, Inc.*, 68 F.3d 922, 926 (5th Cir. 1995)).  Merck does not contend otherwise.

In an attempt to circumvent CAFA's diversity requirement, Merck argues that Kentucky consumers, not the Commonwealth, are the real-parties-in-interest for purposes of diversity citizenship.  Under the unique approach of the Fifth Circuit, the real-party-in-interest analysis is done on a claim-by-claim basis.  *Louisiana ex rel. Caldwell v. Allstate Ins. Co. et al.*, 536 F.3d 418, 428 (5th Cir. 2008).  That is, if a party, other than the Commonwealth, is the real-party-in-interest for any form of relief sought by the Commonwealth, that party's citizenship must be considered for purposes of CAFA's diversity requirement.[4]  Merck's argument attempts to substitute the citizenship of Kentucky consumers for the non-citizenship of the Commonwealth.

---

[4] This section of the Commonwealth's brief demonstrates that even under the Fifth Circuit's analysis in *Caldwell*, the minimal diversity requirement of CAFA cannot be satisfied because the Commonwealth is

13

However, Merck cannot make this argument based solely on the Complaint because the Commonwealth is the real-party-in-interest for all forms of relief requested. Instead, Merck argues that based on a proffered "infer[ence]" the Commonwealth "intends" to seek restitution on behalf of Kentucky consumers.   (Ex. B, Notice of Removal ¶ 20).  For numerous reasons, this argument fails.

Before addressing Merck's proffered inference, the Commonwealth will establish that, based on the four corners of the complaint, the Commonwealth is the real-party-in-interest for all relief requested.   Then, the Commonwealth will show that neither its complaint, its discovery responses, nor case law support the inference Merck requests this Court to make.   Absent Merck's tenuous contention that the Commonwealth seeks restitution on behalf of Kentucky consumers, there can be no dispute that CAFA jurisdiction is inappropriate.

1.   *The Commonwealth is the Real-Party-In-Interest for All Relief It Seeks.*

The Commonwealth's complaint seeks four forms of relief: injunctive, declarative, civil penalties, and attorney's fees.  *See* (supra pp. 1-2).  Although Merck bears the burden of establishing federal jurisdiction and does not appear to challenge that

---

the real-party-in-interest for every form of relief it has sought.  However, it should be noted there is a split in authority on two aspects of the reasoning in *Caldwell* and the Commonwealth specifically reserves these arguments.   First, because the Commonwealth's claim was not filed under CAFA or a similar state procedure, Merck cannot establish any of CAFA's removal requirements.  28 U.S.C. § 1332(d)(1)(B); *see West Virginia ex rel. McGraw v. CVS Pharmacy, Inc.*, __ F.3d __, 2011 WL 1902678, at *7 (4th Cir. May 20, 2011). Also, the Fifth Circuit's claim-by-claim analysis is a decidedly minority position.  "[A] majority of jurisdictions, including several district courts in the Sixth Circuit, and courts in the First, Second, Fourth, Seventh, Eighth and Eleventh Circuits, have looked at a state's complaint as a whole to determine whether the state is the real-party-in-interest."  *Ohio v. GMAC Mortgage LLC*, 760 F.Supp.2d 741, 745 (N.D. Ohio Jan. 14, 2011); *see also*, *Commonwealth ex rel. Stumbo v. Marathon Petroleum Co., LLC*, 2007 WL 2900461, at *5 (E.D. Ky. 2007).  Under the majority approach, even if the Commonwealth sought restitution on behalf of consumers, which it does not, the Commonwealth would be the real-party-in-interest because the majority of the relief would benefit the state as a whole.  *See e.g. Marathon*, 2007 WL 2900461 at *5.

the Commonwealth is the real-party-in-interest for these forms of relief, the Commonwealth will quickly provide support for that contention.

First, the Commonwealth is the real-party-in-interest for injunctive relief, declarative relief, and attorney's fees.   Injunctive relief under consumer protection statutes is "clearly on behalf of the State."  *See e.g.*, *Caldwell*, 536 F.3d at 430 (noting that injunctive relief "is clearly on behalf of the State."); *McGraw*, 705 F. Supp. 2d at 447 ("Courts have universally accepted the notion that a state is the real party in interest when it brings a claim for injunctive relief.").  By the same token, the Commonwealth is the real-party-in-interest for declarative relief.  After all, declaratory relief is not for "the particular benefit of a limited number of citizens," but is relief sought "to further the 'well-being of its populace.'"  *Caldwell*, 537 F.3d at 428.  Finally, a claim for attorney's fees in litigation brought by the state would inure only to the benefit of the state.

The Commonwealth is also the real-party-in-interest for its request for civil penalties.  In *Caldwell*, the Court held that a state is the real-party-in-interest if it can "show a direct interest of its own," as opposed to "sue[ing] for the particular benefit of a limited number of citizens."  *Id.* (quoting *Land O'Lakes Creameris v. La. State Bd. of Health*, 160 F. Supp. 387, 388 (E.D. La. 1958)).  That, of course, is exactly what civil penalties are—a direct interest of the Commonwealth.  Numerous courts have reached the same conclusion with regard to the relief sought by the Commonwealth.

A Kentucky District Court held that the Commonwealth, rather than individual citizens, is the real-party-in-interest for claims seeking declaratory relief, injunctive relief, and statutory penalties under the Kentucky CPA—the same relief the Commonwealth is seeking in this case.  *Marathon*, 2007 WL 2900461, at *5.  At issue in *Marathon* was

whether the Commonwealth, who brought claims under the Kentucky CPA, was the real-party-in-interest for purposes of diversity jurisdiction. *Id.* at *1. The Court reviewed cases from across the country considering whether actions brought by states created diversity of citizenship. *Id.* at *2-4. Because "[t]he declaration, injunction, and civil penalties will benefit all Kentucky consumers not just a particular set of consumers," the Court concluded that the state was the "real party in interest."[5] *Id.* at *5. Needless to say, this opinion applies jot for jot to the Commonwealth's claim in this litigation.

In *Texas v. Merck*, a case involving the same issues as many states in this MDL, the Western District of Texas relied on the statutory structure of Texas' claim to conclude that Texas was the real-party-in-interest. 385 F. Supp. 2d 604, 607 (W.D. Tx. 2005). Merck argued otherwise, but because the "wrongdoer [was] liable to Texas" under Texas law, the Court held Texas was the real-party-in-interest and therefore diversity did not exist. *Id.* at 607. This reasoning also applies to the Commonwealth's claim. Under Kentucky law, the Commonwealth is the only party that can bring and the only party that benefits from a claim for statutory penalties.[6]

Finally, in *Harvey v. Blockbuster, Inc.*, the court remanded New Jersey's claims for an injunction and statutory penalties under New Jersey's consumer protection statute because it was "abundantly clear" that New Jersey "brought [that] action 'in [their]

---

[5] In *Marathon Petroleum*, the Commonwealth also sought restitution for Kentucky consumers. 2007 WL 2900461, at *5. However, that relief "was only one aspect of the wide-ranging relief sought, the substantial portion of which will benefit all Kentucky consumers." *Id.* "Viewing the complaint as a whole," the court concluded that "the state is the real party in interest in this matter." *Id.* This fact, of course, does not change the relevancy of the court's holding with respect to the state's claims for declarative relief, injunctive relief, and statutory penalties.

[6] Merck's suggestion that Kentucky Consumers "hold the substantive right sought to be enforced" is simply wrong. (Ex. B, Notice of Removal ¶ 25). No provision of Kentucky law permits individuals to seek the relief sought by the Commonwealth. Sections 367.190 and 367.990 permit only the Attorney General to bring an action "in the name of the Commonwealth" to recover statutory penalties "on behalf of the Commonwealth." KRS §§ 367.190, 367.990.

official capacity[ies] on behalf of the State of [New Jersey].'"  384 F. Supp. 2d 749, 751,

755 (D.N.J. 2005) (quoting *Nuclear Eng'g Co. v. Scott*, 660 F.2d 241, 250 (7th Cir.

1981)).  "'It [was] obvious that the State's interest in [that] lawsuit extend[ed] beyond

vindicating the rights of one individual,'" where the remedies sought by New Jersey, an

injunction and statutory damages, "would directly benefit all New Jersey consumers." *Id.*

at 756 (quoting *Brooks v. Tyger Constr. Co.*, 1990 WL 488977 at *2 (M.D.N.C. 1990)).

It is "well accepted that a state is the real party in interest when it brings a claim

for civil penalties because such awards add only to the state's coffers rather than any

individual's bank account." *McGraw*, 705 F. Supp. 2d at 447.  Merck has yet to dispute

this fact.  Because the Commonwealth is the real-party-in-interest for all of its requested

relief, there is no diversity and therefore the requirements for CAFA removal are not met.

It should also quickly be noted that Merck's reliance on *College of Dental

Surgeons of Puerto Rico v. Conn. Gen'l Life Ins.*, 585 F.3d 33 (1st Cir. 2009), cannot

overcome the lack of minimal diversity for purposes of CAFA jurisdiction.  Merck

appears to argue that the Commonwealth's claims are subject to CAFA jurisdiction

because it will require evidence common to the claim of individual consumers.  (Ex. B,

Notice of Removal ¶ 21).  First, Merck's assertion is, again, false.  As noted above, the

Commonwealth need not prove that any Kentucky consumer was actually misled by

Merck's conduct to succeed on its Kentucky CPA claim.  (Supra p.2).  However, even if

Merck's evidentiary assertion was true, that fact would in no way satisfy the minimal

diversity requirement of CAFA.

2.      *There is No Basis to Conclude the Commonwealth Seeks Restitution on Behalf of Kentucky Consumers.*

Because the specified forms of relief requested by the Commonwealth in its well-pled complaint would not subject it to federal jurisdiction under *Caldwell*, Merck's entire argument hinges on its proffered "inference" about the Commonwealth's "intentions." There is no basis in fact and no support in law for the Court to entertain that proffered inference as the basis for federal jurisdiction.

a.      On its Face, the Commonwealth's Complaint Does Not Seek Restitution on Behalf of Kentucky Consumers.

First, Merck's "inference" argument depends on a false assertion. The Commonwealth's complaint simply does not ask for restitution on behalf of Kentucky consumers. (Ex. A, Complaint pp. 7-8). Merck's Notice of Removal admits as much. Merck contends that the Commonwealth only "intends" to seek such relief, not that the Commonwealth has. Based on the Notice of Removal, Merck's purported basis for CAFA jurisdiction has not occurred. Accordingly, this case is not yet removable.[7] *See Federal Savings & Loan Ins. Corp. v. Griffin*, 935 F.2d 691, 696 (5th Cir. 1991) ("The power to remove is evaluated at the time of removal.").

In addition, the Commonwealth has not surreptitiously sought restitution on behalf of Kentucky consumers after the Complaint was filed. In fact, the Commonwealth has explicitly disclaimed such relief. When asked whether the Commonwealth sought restitution, the Commonwealth unequivocally responded that "it is not seeking restitution." (Response to Interrogatory No. #22 (p. 17)). (Attached hereto as Exhibit C).

---

[7] Under the second paragraph of 28 U.S.C. § 1446(b), Merck would be free to remove this case if at any point the Commonwealth sought the relief on behalf of Kentucky consumers that Merck argues the Commonwealth "intends" to seek. Unlike removal under 28 U.S.C. § 1332(b), CAFA removal is not limited to one year from when the complaint was filed. *See* 28 U.S.C. § 1453(b); *Guglielmino v. McKee Foods Corp.*,506 F.3d 696, 699 n. 3 (9th Cir. 2007).

Although the basis of federal jurisdiction is typically considered at the time of removal, this Court may consider the statements of the Commonwealth to rebut the "bare allegations by the removing party" which are typically "insufficient to invest a federal court with jurisdiction." *Asociacion Nacional de Pescadores v. Dow Quimica de Colombia*, 988 F.2d 559, 566 (5th Cir. 1993).

The Commonwealth does not question the legal acumen of Merck's counsel, but must respectfully disagree with their asserted clairvoyance regarding relief to be sought by the Commonwealth. Restitution on behalf of Kentucky consumers is simply not the intention of the Commonwealth—no matter how much Merck may speculate to the contrary.   As officers of the Court, the authors of this brief represent that the Commonwealth has not, is not, and will not seek restitution on behalf of Kentucky consumers.  Accordingly, Kentucky is the only real-party-in-interest.

b.   Merck's Proffered Inference is Impermissible.

Setting aside the prospective and hypothetical nature of Merck's argument regarding the Commonwealth's intentions, the argument ultimately depends on an impermissible inference.   Merck must argue that it should be "inferred" that the Commonwealth "intends" to seek restitution on behalf of Kentucky consumers.  Only after the inference is made can Merck argue that Kentucky consumers are the real-party-in-interest under *Caldwell*.[8]  Without that inference, the argument fails.  However, when considering motions to remand, Courts must resolve all inferences in favor of the plaintiff and against federal jurisdiction.

---

[8]Also, Merck's reliance on *Caldwell* is inconsistent with its position that the Commonwealth's case should be transferred to the MDL.  In *Caldwell*, the Court held that Louisiana's action was a "mass action."  536 F.3d at 431.  However, "mass actions" may not be transferred to an MDL.  28 U.S.C. § 1332(d)(11)(C)(i).

19

In essence, Merck is arguing that the Commonwealth fraudulently pled its complaint by hiding relief in an attempt to avoid federal jurisdiction.  Although Merck's general burden for removal was discussed above (see supra pp. 2-3), Merck carries a significantly higher burden when it asserts this type of argument in support of federal jurisdiction.  The Fifth Circuit is clear that when a defendant argues that a complaint is fraudulent, all inferences must be taken in "a light most favorable to the Plaintiff."  *Hart v. Bayer Corp.*, 199 F.3d 239, 248 (5th Cir. 2000); *see also*, *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 311-12 (5th Cir. 2002) (describing the demanding standard for the establishment of fraudulent pleadings). "[T]he mere assertion of fraud is not sufficient to warrant removing [a] case to federal court."  *Lackey v. Atlantic Richfield Co.*, 990 F.2d 202, 207 (5th Cir. 1993) (quoting *Yawn v. Southern Ry.*, 591 F.2d 312, 316 (5th Cir. 1979)).  Instead, Merck "must prove that the allegations of the complaint were fraudulently made." *Id.*

Merck cannot carry that burden.  Merck's proffered inference is impermissible because it is decidedly against, not in favor, of the plaintiff.  Merck relies on broad language in the Commonwealth's complaint regarding remedies and two plain vanilla factual allegations to argue that one should "infer" that the Commonwealth "intends" to seek restitution on behalf of Kentucky consumers.  Although no inference regarding hidden relief is needed to understand the Commonwealth's complaint, Merck asks this Court to make the one inference, out of many possible inferences, that could create federal jurisdiction.  In other words, Merck wants all inferences resolved in the defendant's, not plaintiff's, favor.

20

If one were determined to infer some hidden meaning from the remedial phrases relied on by Merck, one could just as easily infer other forms of relief—none of which create federal jurisdiction.  First, Merck argues that the the Commonwealth's statement that it seeks "other equitable relief" in the introduction to the Complaint supports the proffered inference.  (Ex. B, Notice of Removal, ¶ 20).  Of course, another reasonable inference based on this phrase is that it describes other specific relief the Commonwealth seeks.  Besides its request for an injunction, the Commonwealth has explicitly sought "other equitable relief" in the form of a declaration that Merck violated the Kentucky CPA.   (Ex. A, Complaint p. 7); *U.S. v. Holy Land Foundation for Relief and Development*, 624 F.3d 685, 687 (5th Cir. 2010) (recognizing declarative relief is a form of equitable relief).

The other remedial phrase Merck relied on, the Commonwealth's request for "any and all such other relief as this Honorable Court deems just and proper," also has an innocuous explanation. (Ex. B, Notice of Removal ¶ 20); (Ex. A, Complaint p. 8).  This phrase, which is included in almost every complaint filed in the United States, simply recognizes a Court's "inherent power," to enforce its orders and judgments.[9] *See e.g.*, *U.S. v. Alcoa, Inc.*, 533 F.3d 278, 284 (5th Cir. 2008).  If a Court grants the Commonwealth's request for an injunction and civil penalties, this request simply asks the Court to enforce those orders through whatever means it deems necessary.

"Whether jurisdiction is based on diversity of citizenship or upon a federal question. . . it is generally agreed that 'the basis upon which jurisdiction depends must be

---

[9] In *Ohio v. GMAC Mortgage, LLC*, 760 F. Supp. 2d 741 (N.D. Ohio Jan. 14, 2011), the Court ignored the Attorney General's request in Ohio's Complaint for "such other relief as the court deems to be just, equitable and appropriate," when analyzing the "pertinent requests" for relief for purposes of determining who was the real-party-in-interest. 760 F. Supp. 2d at 747; (Ohio Complaint p. 19) (attached hereto as Exhibit D).

21

alleged affirmatively and distinctly and cannot be established argumentatively or by mere inference.'" *Illinois Central Gulf Railroad Co. v. Pargas, Inc.*, 706 F.2d 633, 636 (5th Cir. 1983) (quoting 5 C Wright & Miller, *Federal Practice and Procedure* § 1206, at 78-79 (1969 & Supp. 1983); *see also*, *Norton*, 266 U.S. at 516 ("[T]he jurisdiction of a federal court must affirmatively and distinctly appear and cannot be helped by presumptions or by argumentative inferences drawn from the pleadings."). Yet that is exactly what Merck's argument depends on—"presumptions and argumentative inferences."

There is no reason to conclude that those phrases represent a clandestine attempt by the Commonwealth to sneak in restitution on behalf of Kentucky consumers.[10] "Other equitable relief" and "any and all such other relief as this Honorable Court deems just and proper" simply do not mean "restitution on behalf of Kentucky consumers." After all, these phrases could just as easily be used to argue that the Commonwealth is seeking restitution on behalf of the Commonwealth itself—relief that would not create federal jurisdiction. Merck's argument that the Commonwealth seeks restitution on behalf of Kentucky consumers is nothing more than an "argumentative inference" that is insufficient to establish federal jurisdiction. *Norton*, 266 U.S. at 516.

      c.    *Caldwell* Provides No Support for Merck's Proffered Inference

Besides irrelevant allegations, Merck's "inference" argument relies on *Caldwell*, but that case, and others, provides no support for inferring disputed forms of relief to

---

[10] Merck also relies on the Commonwealth's allegations that Merck promoted and sold Vioxx to consumers in Kentucky. (Ex. B, Notice of Removal ¶ 20). These statements do not support Merck's proffered inference. The Commonwealth's Kentucky CPA claim is based on Merck's "[u]nfair, false, misleading, [and] deceptive" marketing practices towards consumers, government entities, and health care providers. KRS § 367.170(1). Accordingly, the Commonwealth alleged that Merck completed such acts.

establish federal jurisdiction.  Rather, in those cases the Courts evaluated forms of relief explicitly sought by the states to determine who was the real-party-in-interest.  Federal jurisdiction was not based on predictions about relief the states might, at some point in the future, seek.

In *Caldwell* jurisdiction was based on a form of relief explicitly sought by Louisiana and not disputed in the litigation.  Louisiana brought a *parens patria* action seeking "forfeiture of illegal profits, treble damages, and injunctive relief" based on an alleged conspiracy in the insurance market that harmed individual policyholders in Louisiana.  *Caldwell*, 536 F.3d at 422-23.

On appeal, the defendants argued that even though Louisiana was "not proceeding under Federal Rule of Civil Procedure 23 or the analogous state rule," CAFA was applicable "because the petition is seeking treble damages on behalf of Louisiana insurance policy-holders."  *Id.* at 423.  Louisiana argued that because the Attorney General brought the suit in his *parens patria* capacity, it was not subject to CAFA removal.  *Id.* at 424.  At no point does the opinion suggest that Louisiana shied away from its request for treble damages.

Under the unique approach of the Fifth Circuit, the Court evaluated who was the real-party-in-interest for purposes of the requirement for treble damages.  *Caldwell*, 536 F.3d at 429.  The Court concluded that, regardless of whether Louisiana was suing as *parens patriae*, to establish itself as the real-party-in-interest, Louisiana "must show a direct interest of its own," it cannot "sue for the particular benefit of a limited number of citizens."  *Id.* at 428 (quoting *Land O'Lakes*, 160 F. Supp. at 388).  Importantly, treble damages were available only to "any person" that had been injured by the alleged

conduct.  LA Rev. Stat. § 51:137; *Caldwell*, 536 F.3d at 429.  That Louisiana was seeking to recover treble damages for the individual policyholders was confirmed by the complaint's repeated references to damages suffered by individual policyholders.  *Id.* at 429 n.9.  Accordingly, "the policyholders," not Louisiana, were "the real parties in interest" for the "State's request for treble damages." *Id.* at 429.  Because the policyholders were the real party in interest, the court concluded that the minimal diversity requirements of CAFA had been met.  *Id.* at 430.

The few cases that have followed the reasoning of *Caldwell* also involved explicit, undisputed forms of relief.  *See e.g.*, *Nevada v. Bank of America Corp.*, No. 3:11-CV-00135, 2011 WL 2633641, at *1 (D. Nev. July 5, 2011) (noting that Nevada explicitly sought restitution on behalf of any person who suffered damages); *Ohio v. GMAC Mortgage, LLC*, 760 F. Supp. 2d 741, 747-51 (N.D. Ohio Jan. 14, 2011) (walking through the specific requests for relief that were in favor of specific Ohio consumers); *Comcast Corp.*, 705 F. Supp. 2d at 444 (noting that West Virginia explicitly sought restitution for consumers).  Neither *Caldwell* nor any case applying *Caldwell* even remotely suggests that a court should "infer" a particular form of relief, and then, determine who the real-party-in-interest is for purposes of federal jurisdiction.

## CONCLUSION

If Merck's argument for removal under CAFA is successful, it will herald an unprecedented expansion of federal jurisdiction over sovereign state claims.  For the first time, a sovereign state, pursuing a state law claim, would be subject to federal jurisdiction, not based on anything it alleged or any relief it actually sought, but because of implications and inferences.  Such a result would hardly be consistent with the

important federalism concerns that govern a federal court's exercise of jurisdiction over sovereign states' claims.  In short, jurisdiction in this case would "trampl[e] on the sovereign dignity of the State and inappropriately transform[] what is essentially a [state] matter into a federal case." *CVS Pharmacy*, 2011 WL 1902678, at *7.

Based on the forgoing arguments, the Commonwealth respectfully requests this Court grant its motion to remand its Kentucky CPA claim back to the Circuit Court of Franklin County, Kentucky.

Respectfully submitted this 8th day of August, 2011.

                                                            ___/s William R. Garmer_____
                                                            William R. Garmer
                                                            Garmer & Prather

Garmer & Prather
Opera House Building
141 North Broadway
Lexington, Kentucky 40504
859-254-9351

Scott A. Powell
Don McKenna
Matthew C. Minner
Brian M. Vines
Hare, Wynn, Newell, & Newton
2025 Third Avenue North, Suite 800
Birmingham, AL 35203
205-328-5330

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Motion to Remand has been served on Liaison Counsel, Russ Herman, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis & Serve Advanced in accordance with PreTrial Order No. 8, on this 8th day of August, 2011.