# EXHIBIT B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF KENTUCKY
## CENTRAL DIVISION
## AT FRANKFORT

**ELECTRONICALLY FILED**

| | |
|---|---|
| **COMMONWEALTH OF KENTUCKY ex rel. Jack Conway, Attorney General,** | **Civil Action No. _____** |
| **Plaintiff,** | |
| **v.** | |
| **MERCK & CO., INC.,** | |
| **Defendant.** | |

## NOTICE OF REMOVAL

PLEASE TAKE NOTICE that Defendant Merck & Co., Inc. ("Merck"), through undersigned counsel, hereby removes the above-captioned action from the Franklin Circuit Court, Division I, Commonwealth of Kentucky, to the United States District Court for the Eastern District of Kentucky, pursuant to 28 U.S.C. §§ 1331, 1332, 1441, and 1453. In support of its removal, Merck respectfully states as follows:

1.     This action involves allegations regarding Vioxx®, a prescription drug that was withdrawn by Merck from the market in 2004. An MDL proceeding, *In re Vioxx Marketing, Sales Practices and Products Liability Litigation*, MDL No. 1657, has been established in the United States District Court for the Eastern District of Louisiana (Fallon, J.) for coordinated pretrial proceedings of Vioxx-related actions pursuant to 28 U.S.C. § 1407. That MDL proceeding includes fourteen other suits like this one—brought by state

attorneys general, counties and citizens—alleging that they improperly spent money on Vioxx prescriptions due to Merck's allegedly fraudulent representations about the drug.

2. As set forth more fully below, this case is properly removed to this Court pursuant to 28 U.S.C. §§ 1441, 1446 and 1453 because Merck has satisfied the procedural requirements for removal and this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1332.

## I. MERCK HAS SATISFIED THE PROCEDURAL REQUIREMENTS FOR REMOVAL.

3. On September 28, 2009, the Attorney General of Kentucky commenced this action against Merck in Franklin Circuit Court, Division I, Franklin County, Kentucky, captioned *Commonwealth of Kentucky ex rel. Jack Conway, Attorney General v. Merck & Co., Inc.*, No. 09-CI-1671. A true and correct copy of all process, pleadings, and orders served upon or by Merck—including Plaintiff's Complaint and Merck's Answer—is attached as Exhibit A, pursuant to 28 U.S.C. § 1446(a). Merck was served with the Complaint on September 30, 2009. Accordingly, this Notice of Removal is timely filed pursuant to 28 U.S.C. § 1446(b).

4. Venue is proper in this Court pursuant to 28 U.S.C. § 97(a), because it is the "district and division embracing the place where such action is pending." *See* 28 U.S.C. § 1441(a).

5. No previous application has been made for the relief requested herein.

6. Merck will promptly (a) file a true and correct copy of this Notice of Removal with the Clerk of Court for the Franklin Circuit Court, Division One, Franklin County, Kentucky in accordance with 28 U.S.C. § 1446(d); and (b) serve Plaintiff's counsel with a true and correct copy of this Notice of Removal, in accordance with 28 U.S.C. § 1446(d).

## II.   REMOVAL IS PROPER BECAUSE THIS COURT HAS FEDERAL QUESTION JURISDICTION OVER THIS MATTER.

7.     ***First,*** the Court has jurisdiction under the substantial federal question doctrine.  Plaintiff's Complaint alleges that Merck marketed Vioxx "with an aggressive and deceptive promotional campaign directed at both consumers and health care professionals" and made "a concerted effort to obtain approval for both public and private drug plans or formularies across the United States."  (Compl. ¶ 13.)  It also alleges that "[w]hen promoting Vioxx® directly to consumers and health care professionals, Merck materially misrepresented the cardiovascular safety of Vioxx®." (*Id.* ¶ 21; *see also id.* ¶ 28 (alleging that "Merck's advertisements and promotional activities" for Vioxx were deceptive).) Plaintiff's Complaint further alleges that a Merck representative testified at a hearing of the Food and Drug Administration's Arthritis Advisory Committee (*id.* ¶ 19) as part of "an effort to explain away the results" of a clinical trial showing that "cardiovascular events could be a side effect of Vioxx®." (*Id.* ¶ 18.)  Based on these allegations, Plaintiff seeks a judgment that Merck "committed repeated violations of" the Kentucky Consumer Protection Act ("KCPA"), Ky. Rev. Stat. Ann. § 367.170, a permanent injunction, civil penalties, attorneys' fees and costs, and "any and all such other relief" found to be just and proper.  (Compl. ¶ 34; *id.* Prayer for Relief).)

8.     This Court has federal question jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because Plaintiff's claim directly implicates the federal Food, Drug & Cosmetic Act ("FDCA"), 21 U.S.C. § 301 *et seq.*, which regulates prescription drug manufacturers' public and promotional statements about prescription drugs.  Thus, this action may be removed to this Court pursuant to 28 U.S.C. § 1441.

9.     The Supreme Court has recognized that federal question jurisdiction exists over claims that are asserted under state law if the state law claims implicate substantial federal questions.  *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314-15 (2005); *see also In re Zyprexa Prods. Liab. Litig.*, 375 F. Supp. 2d 170, 172-73 (E.D.N.Y. 2005); *West Virginia ex rel. McGraw v. Eli Lilly & Co.*, 476 F. Supp. 2d 230, 234 (E.D.N.Y. 2007); *In re Zyprexa Prods. Liab. Litig.*, No. 04-MD-1596, 07-CV-1933 (JBW), 2008 WL 398378, at *5 (E.D.N.Y. Feb. 12, 2008); *New Mexico v. Eli Lilly & Co.*, 04-MD-1596,07-CV-01749 (JBW/RLM), 2009 WL 691942, at *3 (E.D.N.Y. Mar. 11, 2009).

10.     As the Supreme Court explained in *Grable*, the test for whether a federal court should hear a case under this doctrine is whether the "state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities."  545 U.S. at 314.  In *Grable*, the Supreme Court concluded that federal question jurisdiction existed because the plaintiff's state law claim was premised on the failure of a government agency to fulfill its responsibilities as defined by federal law. Accordingly, the interpretation of federal law was essential to resolving the state law claim. *Id.* at 314-15.  The same is true here.

11.     Plaintiff's claim in this case is implicitly and explicitly premised upon alleged violations of the federal Food, Drug & Cosmetic Act, specifically, that Merck illegally promoted an unsafe drug for public use, failed to disclose information to the FDA that allegedly showed it was associated with an increased risk of cardiovascular side effects, and failed to warn doctors and regulators of risks in violation of FDCA rules and regulations.

12.     Under the FDCA, the FDA is tasked with approving drugs for human use and determining the necessary warning manufacturers must include with their products.  21 U.S.C. § 393(b).  The FDCA charges the FDA to ensure that "drugs are safe and effective" for their intended uses, *id.* § 393(b)(2)(B), in part by "promptly and efficiently reviewing clinical research and taking appropriate action on the marketing of regulated products."  *Id.* § 393(b)(l).  The FDA is vested with the authority to promulgate regulations to enforce the FDCA, which are codified in the Code of Federal Regulations, 21 C.F.R. § 200 *et seq.*; 21 U.S.C. § 371(a).

13.     To accomplish this mandate, the FDA maintains a Center for Drug Evaluation and Research ("CDER").  The CDER oversees the drug companies' development, testing and research, and manufacture of drugs.  The staff of approximately 1,800 examines clinical and other testing data generated by drug companies to assess a drug's benefits against its risks and to make an approval decision.  In addition to regulating prescription drug advertising generally, the CDER also oversees the Package Inserts that outline benefit and risk information, and monitors marketed drugs for unexpected health risks that may require public notification, a change in labeling, or removal of the product from the market.  Indeed, under federal law, even claims in promotional labeling or advertising must be consistent with approved labeling.  21 C.F.R. § 202.1(e)(4).

14.     The centrality of federal food and drug law to the allegations at issue in this matter are evidenced by Plaintiff's own Complaint, which alleges that Merck withheld information about the safety of Vioxx from the FDA.  (*See, e.g.*, Compl. ¶ 15 (alleging that "Merck was aware of the potential for dangerous cardiovascular side effects associated with Vioxx® through internal studies including Study 090 which . . . were not disclosed to the

FDA").)  Plaintiff's Complaint also cites the FDA's oversight of the highly-regulated representations at issue in this case.  (*See, e.g.*, Compl. ¶ 19 (alleging that the FDA convened an Advisory Committee to consider "Merck's request to include the positive [gastrointestinal] results from the VIGOR study in its Vioxx® labeling").)  Plaintiff's Complaint further alleges that "[w]hen promoting Vioxx® directly to consumers and health care professionals, Merck materially misrepresented the cardiovascular safety of Vioxx®." (Compl. ¶ 21.)

15.    For this reason, the Court has substantial federal question jurisdiction over Plaintiff's claims.  *See In re Zyprexa Prods. Liab. Litig.*, 2008 WL 398378, at *1 (asserting federal question jurisdiction over state-law claims brought by Montana's attorney general in part because "[t]he resolution of Montana's claims necessarily depend[s] on . . . the construction and application of the federal Food, Drug, and Cosmetic Act").

## III.    REMOVAL IS ALSO PROPER BECAUSE THIS COURT HAS SUBJECT MATTER JURISDICTION PURSUANT TO THE CLASS ACTION FAIRNESS ACT.

16.    ***Second***, this case is also subject to removal pursuant to the Class Action Fairness Act ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (2005).

17.    As set forth below, Plaintiff's claims are the functional equivalent of a putative class action in which:  (1) there are 100 or more members in the Plaintiff's proposed class; (2) at least some members of the proposed class have a different citizenship from Merck; and (3) the claims of the proposed class members exceed the sum or value of $5,000,000 in the aggregate.  Thus, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d).

A.    **Class Action Consisting Of More Than 100 Members**

18.    Plaintiff's Complaint satisfies the definition of a class action under CAFA because it is a civil action brought under a "statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action."  28 U.S.C. § 1332(d)(1)(B); *see also* 28 U.S.C. § 1453(a) ("Definitions. . . .  In this section, the terms 'class', 'class action', 'class certification order', and 'class member' shall have the meanings given such terms under section 1332(d)(1).").

19.    The Attorney General "brings this action pursuant to the authority granted under the Consumer Protection Act KRS 367.110 *et seq*."  (Compl. ¶ 3.)  This statute authorizes the Attorney General to bring a representative action.  *See* Ky. Rev. Stat. Ann. § 367.200 ("The court may make such additional orders or judgments as may be necessary to restore to any person in interest any moneys or property, real or personal, which may have been paid out as a result  of any practice declared to be unlawful by KRS 367.130 to 367.300. . . ."); *see also Commonwealth of Kentucky ex rel. Beshear v. ABAC Pest Control, Inc.*, 621 S.W.2d 705, 706-07 (Ky. Ct. App. 1981) (holding that in enacting KRS § 200, the legislature "intended to vest the Attorney General with the authority to seek restitution on behalf of defrauded consumers").  Under the plain language of CAFA, such cases may be removed to federal court.  28 U.S.C. § 1332(d)(1)(B).

20.    Plaintiff's Complaint, therefore, qualifies as a "class action" under CAFA for two independent reasons.  ***First***, the State makes allegations from which it can be inferred that the Attorney General intends to seek restitution on behalf of similarly-situated consumers in Kentucky who purchased Vioxx.  (*See* Compl. ¶ 2 ("Merck [engaged in] advertising, soliciting, selling, promoting and distributing prescription drugs, including Vioxx®, to health care providers, pharmacies and ultimately consumers in the

7

Commonwealth of Kentucky"); *id.* ¶ 13 (alleging that Merck's promotional campaign for

Vioxx was "directed at both consumers and health care professionals"); *id.* Preface (stating

that Plaintiff "seeks injunctive relief, civil penalties, ***and other equitable relief*** ) (emphasis

added); *id.* Prayer for Relief, subpoint F (praying for "any and all such other relief").)  Those

individual purchasers of Vioxx are the real parties in interest in this action.  *See Louisiana ex*

*rel. Caldwell v. Allstate Ins. Co.*, 536 F.3d 418, 429 (5th Cir. 2008) (holding that, in *parens*

*patriae* action brought on behalf of Louisiana citizens, the citizens—and not the State—were

the real parties in interest).

     21.    ***Second***, even if Plaintiff is not seeking restitution for individual citizens, the

Complaint is still functionally a class action because it lodges allegations that require the use

of common evidence of those citizens' transactions with Merck and seeks relief equally

applicable to them all.  Plaintiff's Complaint alleges that Merck's promotional activity

commonly caused consumers to purchase Vioxx through prescriptions written by their

physicians.  (*See* Compl. ¶ 8 ("Merck repeatedly touted the safety profile . . . of the drug in

press releases, public statements, and marketing materials"); *id.* ¶ 13, 21 (alleging that Merck

promoted Vioxx directly to consumers and health care professionals); *id.* ¶ 28 ("For the

entire period of time Vioxx® was on the market, Merck's advertisements and promotional

activities misrepresented Vioxx®'s cardiovascular safety and failed to include information

then known to Merck.").)  These are classic "class action" allegations, further warranting

removal under CAFA.  *See College Of Dental Surgeons Of Puerto Rico v. Conn. Gen'l Life*

*Ins. Co.*, No. 09-2201, --- F.3d ----, 2009 WL 3384807, at *6 (1st Cir. Oct. 22, 2009) (finding

removal under CAFA proper where, *inter alia*, "[t]he complaint alleges that the defendants'

pernicious practices harm all affected dentists in the same way. . . .  [and] this [injunctive and

declaratory] relief, if granted, would inure to the benefit of all the affected dentists equally, regardless of their individual circumstances.").

22.     Congress intended such actions to be removable to federal court under the provisions of CAFA even if they are not labeled "class actions" by the named plaintiff.  S. Rep. 109-14, at 35 (2005) ("the definition of 'class action' is to be interpreted liberally [and] should not be confined solely to lawsuits that are labeled 'class actions' by the named Plaintiff. . . .  Generally speaking, lawsuits that resemble a purported class action should be considered class actions for the purposes of applying these provisions.").  *See also Caldwell*, 536 F.3d at 429 (holding case removable under CAFA because "as far as the State's request for treble damages is concerned, the policyholders are the real parties in interest"); *College of Dental Surgeons*, 2009 WL 3384807, at *5 ("A complaint that contains class-type allegations historically has been assumed to assert a class action before formal class certification. . . . CAFA embraces this principle.") (internal citation omitted).

23.     Based on these and other allegations, the number of individuals that Plaintiff purports to represent is greater than 100 for purposes of 28 U.S.C. § 1332(d)(5)(B).

   **B.     Diversity Of Citizenship**

24.     Plaintiff purports to bring this action on behalf of consumers in Kentucky. (Compl. ¶¶ 2, 13.)  By definition, consumers in Kentucky who purchased Vioxx are citizens of Kentucky.  Accordingly, upon information and belief, Kentucky is the state of which those consumers are citizens.

25.     As shown *supra* the Attorney General is merely their advocate and a formal party to this litigation whose non-citizen status does not defeat diversity; Kentucky consumers who purchased Vioxx are the real parties in interest, not the state.  *Caldwell*, 536 F.3d at 429.  They are the real parties in interest because they hold the substantive right

sought to be enforced, even if they are not the ones that will ultimately benefit from any recovery. *See Farrell Constr. Co. v. Jefferson Parish, Louisiana*, 896 F.2d 136 (5th Cir. 1990).

26.     Merck is, and was at the time Plaintiff commenced this action, a corporation organized under the laws of the State of New Jersey with its principal place of business at One Merck Drive, Whitehouse Station, New Jersey, and therefore, is a citizen of New Jersey for purposes of determining diversity.  28 U.S.C. § 1332(c)(1).

27.     Thus, at least one proposed class member and one defendant are diverse.  *See* 28 U.S.C. § 1332(d)(2)(A) (defining diversity of citizenship under CAFA as including situations where "any member of a class of plaintiffs is a citizen of a state different from any defendant").

**C.     The Amount-In-Controversy Requirement Is Satisfied.**

28.     The claims of the individual class members in a class action are aggregated to determine if the amount in controversy exceeds the sum or value of $5,000,000.  *See* 28 U.S.C. 1332(d)(6).  Under this standard, Plaintiff's claims easily meet the jurisdictional threshold.

29.     Based on the allegations in the Complaint that Merck misrepresented the risks of Vioxx, Plaintiff asserts claims under the KCPA seeking injunctive relief, a judgment that Merck committed "repeated violations" of the KCPA, civil penalties, attorneys' fees and costs, and any and all such other relief, including equitable relief.  (Compl., Prayer for Relief, subpoints A-F; *id.* Preface.)

30.     Plaintiff contends that Merck's alleged repeated violations of the KCPA persisted for "over five years."  (*Id.* ¶ 27.)  Plaintiff seeks to recover a penalty ranging between $2,000 and $10,000 for each and every such violation.  More than 2 million

prescriptions for Vioxx were written by physicians in Kentucky during the time that the drug was on the market. (Decl. of Susan Brunstetter ¶ 4 (Exhibit B).) Thus, Plaintiff's attempt to recover civil penalties alone satisfies the amount-in-controversy requirement. In addition, Plaintiff also seeks an award of attorneys' fees, which are properly included in calculating the aggregate amount in controversy. *See Hollon v. Consumer Plumbing Recovery Ctr.*, 417 F. Supp. 2d 849, 851-52 (E.D. Ky. 2006). Thus, given the breadth of the class and the nature and variety of the relief sought, the aggregate value of Plaintiff's claims would obviously far exceed $5,000,000. Accordingly, CAFA's amount-in-controversy requirement is satisfied in this case.

WHEREFORE, Merck respectfully removes this action from the Franklin Circuit Court, Division I, Commonwealth of Kentucky to this Court pursuant to 28 U.S.C. §§ 1331, 1332, 1441, 1446 and 1453.

Dated this 30th day of October, 2009.

Respectfully submitted,

**FROST BROWN TODD LLC**

/s/ Susan J. Pope
Susan J. Pope
250 West Main Street, Suite 2800
Lexington, Kentucky 40507-1749
(859) 231-0000 Telephone
(859) 231-0011 Facsimile

-and-

Winston E. Miller
400 West Market Street, 32nd Floor
Louisville, Kentucky 40202
(502) 589-5400 Telephone
(502) 581-1087 Facsimile
*Attorneys for Defendant Merck & Co., Inc.*

11

OF COUNSEL:

Brian C. Anderson, Esq.
O'Melveny & Myers LLP
1625 Eye Street, NW
Washington, DC 20006-4001
(202) 383-5300

John H. Beisner, Esq.
Skadden, Arps, Slate
 Meagher & Flom LLP
1440 New York Avenue, NW
Washington, DC  20005-2111
(202) 371-7000

<u>**CERTIFICATE OF SERVICE**</u>

  I hereby certify that the foregoing was electronically filed with the clerk of the court on this the 30th day of October, 2009, and a copy was mailed, first class, postage prepaid, to the following:

Attorney General Jack Conway
Office of Attorney General
700 Capitol Avenue, Suite 118
Frankfort, KY 40601

Tad Thomas
Assistant Deputy Attorney General
Office of Attorney General
700 Capitol Avenue, Suite 118
Frankfort, KY 40601

Todd E. Leatherman
Maryellen B. Mynear
Elizabeth Ungar Natter
Office of Consumer Protection
Office of the Attorney General
1024 Capital Center Dr., Suite 200
Frankfort, KY 40601

        /s/ Susan J. Pope
        *Counsel for Defendant Merck & Co., Inc.*

LEXLibrary 0106603.0568643 409058v1

# *Civil*
# *Case Assignment*

Case number **3:09CV-54**

Assigned : Judge Danny Reeves
Judge Code : 4314

Assigned on 10/30/2009

Request New Judge .....



FILED
SEP 2 8 2009
FRANKLIN CIRCUIT COURT
SALLY JUMP, CLERK

**COMMONWEALTH OF KENTUCKY
FRANKLIN CIRCUIT COURT
DIVISION I
CIVIL ACTION NO. 09-CI-1171**



RECEIVED
SEP 2 8 2009
FRANKLIN CIRCUIT COURT
SALLY JUMP, CLERK

**COMMONWEALTH OF KENTUCKY, EX REL.
JACK CONWAY, ATTORNEY GENERAL**            **PLAINTIFF**

**v.**

**MERCK & CO., INC.**            **DEFENDANT**

**SERVE:**      C T CORPORATION SYSTEM
4169 WESTPORT ROAD
LOUISVILLE, KY 40207
Registered Agent

\*\*\*   \*\*\*   \*\*\*   \*\*\*   \*\*\*   \*\*\*   \*\*\*   \*\*\*

<u>**COMPLAINT**</u>

Comes the Plaintiff, Commonwealth of Kentucky ex rel. Attorney General Jack Conway, and brings this cause of action for violation of the Kentucky Consumer Protection Act and seeks injunctive relief, civil penalties and other equitable relief against the Defendant, MERCK & CO., INC., a New Jersey corporation (hereinafter referred to as "Merck") and further states as follows:

WCSR
OCT 0 1 2009
R E C E I V E D

1

M014300000

## JURISDICTION AND VENUE

1.  This Court has jurisdiction over the subject matter of this action pursuant to KRS 367.190 and over Merck pursuant to KRS 454.210. Venue in this Court is proper under KRS 367.190.

2.  At all times material to this complaint, Merck transacted business within the Commonwealth of Kentucky and in Franklin County by advertising, soliciting, selling, promoting and distributing prescription drugs, including Vioxx®, to health care providers, pharmacies and ultimately consumers in the Commonwealth of Kentucky.

## PARTIES

3.  Plaintiff, the Commonwealth of Kentucky, *ex rel.* Attorney General Jack Conway, brings this action pursuant to the authority granted under the Consumer Protection Act KRS 367.110 *et seq.*

4.  Merck is a global pharmaceutical company incorporated under the laws and statutes of the State of New Jersey with its principal place of business being One Merck Drive, WS3 AB-05, Whitehouse Station, New Jersey. Merck is licensed to and does conduct business in the Commonwealth of Kentucky.

## BACKGROUND

5.  Vioxx® is the brand name of rofecoxib, a nonsteroidal anti-inflammatory drug ("NSAID") used in the treatment of arthritis and other acute pain.

6.  At all times relevant herein, Merck tested, marketed, distributed, promoted and sold Vioxx®.

M01430000I

7.  Most NSAIDs, such as aspirin, ibuprofen, and naproxen, function by inhibiting two enzymes: cyclooxygenase-1 ("COX-1"), which is associated with the maintenance of gastrointestinal ("GI") mucus and platelet aggregation, and cyclooxygenase-2 ("COX-2"), which is associated with the response to pain and inflammation. The inhibition of COX-1 leads to harmful GI side effects.

8.  Because Vioxx® was designed to suppress COX-2 without affecting COX-1, Merck marketed Vioxx® as possessing the beneficial effects of traditional NSAIDs, but without the harmful GI side effects associated with those drugs. Merck repeatedly touted the safety profile, sales, and commercial prospects of the drug in press releases, public statements, and marketing materials throughout the time Vioxx® was on the market.

9.  Prior to the FDA's approval of Vioxx®, officials at Merck were aware that Vioxx® could cause harmful cardiovascular events, such as heart attacks. In 1998, an unpublished internal Merck clinical trial entitled Study 090 revealed that Vioxx® caused a greater incidence of cardiovascular events than a placebo or a different arthritis drug.

10. In January 1999, Merck commenced the Vioxx® Gastrointestinal Outcomes Research ("VIGOR") study, which compared Vioxx® to naproxen, the active ingredient in brand-name pain relievers such as Aleve and Naprosyn. Although the study showed that Vioxx® had a GI safety profile superior to that of naproxen, it also showed that Vioxx® users had a higher incidence of cardiovascular events than naproxen users.

11. In January 1999, before the approval and launch of Vioxx®, Merck's marketing division conceived the ADVANTAGE clinical trial. Physician-investigators, participants, and institutional review board members were told that the purpose of the ADVANTAGE trial was to measure the gastrointestinal safety of Vioxx®.

M01430002

12.     Merck's actual goal of ADVANTAGE appears to have been for investigators to gain experience with Vioxx® prior to and during the critical launch phase in order to seed the industry with the use of Vioxx® in lieu of other treatments or drugs.

13.     Merck began marketing Vioxx® in May of 1999 with an aggressive and deceptive promotional campaign directed at both consumers and health care professionals. This campaign included a concerted effort to obtain approval for both public and private drug plans or formularies across the United States.

14.     On May 21, 1999, Merck issued a press release which announced that the United States Food and Drug Administration (FDA) had approved Vioxx® for the relief of osteoarthritis, menstrual pain, and other forms of acute pain. The press release included a list of common side effects, but failed to include any reference to cardiovascular side effects.

15.     Merck was aware of the potential for dangerous cardiovascular side effects associated with Vioxx® through internal studies including Study 090 which was conducted in 1998. The results of Study 090 were not disclosed to the FDA or the public at the time of the product launch. Study 090 concluded that Vioxx® users were six times more likely to suffer severe cardiovascular events than Non-Vioxx® users.

16.     In a March 9, 2000 email, Edward Scolnick, then President of Merck Research Laboratories, acknowledged the existence of cardiovascular events, commenting, "it is a shame but it is a low incidence and it is mechanism based as we worried it was."

17.     In a press release on March 27, 2000, Merck emphasized Vioxx®'s superior GI safety profile but explained away the results of the VIGOR study:

>       "[S]ignificantly fewer thromboembolic events were observed in patients taking naproxen in this GI outcomes study, which is consistent with

M01430003

naproxen's ability to block platelet aggregation. This effect on these events had not been observed previously in any clinical studies for naproxen. Vioxx®, like all COX-2 selective medicines, does not block platelet aggregation and therefore would not be expected to have similar effects." -Merck Press Release Dated March 27, 2000

and

"[a]n extensive review of safety data from all other completed and ongoing clinical trials, as well as the post-marketing experience with Vioxx®, showed no indication of a difference in the incidence of thromboembolic events between Vioxx®, placebo and comparator NSAIDs." -Merck Press Release Dated March 27, 2000

18.     The VIGOR study results were widely reported in the press, medical journals, and marketing materials distributed by Merck. To the extent that VIGOR results showed cardiovascular events could be a side effect of Vioxx®, Merck undertook an effort to explain away the results by attributing the findings to the beneficial effects of naproxen's blocking of platelet aggregation rather than to the harmful effects of Vioxx® in causing thromboembolic events. Through other tests, studies and trials, Merck already knew that Vioxx® presented additional dangerous cardiovascular side effects.

19.     On February 8, 2001, the FDA's Arthritis Advisory Committee ("AAC") held a public hearing to consider Merck's request to include the positive GI results from the VIGOR study in its Vioxx® labeling. During the AAC hearing, Alise Reicin, Executive Director of Clinical Research at Merck Research Laboratories, explained to the panel, "when you review the results of VIGOR in isolation you don't know whether the imbalance of cardiovascular events was caused by a decrease in events on a platelet-inhibiting NSAID, naproxen, or an increase in events on a COX-2 selective inhibitor." She suggested that naproxen was likely responsible for the difference in cardiovascular events observed in users of the two drugs.

M014300004

20.     Numerous additional press releases were issued by Merck in order to further promote and market Vioxx®.    None of the press releases sufficiently referenced the adverse cardiovascular events that Merck knew of or made reference to internal study 090.

21.     When promoting Vioxx® directly to consumers and health care professionals, Merck materially misrepresented the cardiovascular safety of Vioxx®.

22.     Merck also misstated, overstated or exaggerated the efficacy of Vioxx® in comparison to similar medications.

23.     Merck utilized internal studies, including but not limited to the VIGOR and ADVANTAGE studies, to further promote and support its representations made in regard to Vioxx®.

24.     The ADVANTAGE study was designed to appear as if it answered scientific questions, but was designed by the marketing division to fulfill marketing objectives.

25.     In addition to the above actions undertaken by Merck, Merck also engaged in an elaborate scheme to create or publish scholarly articles under fake or ghost authors in order to further develop support for Vioxx®.  These articles appeared in medical journals and other industry publications including the Journal of the American Medical Association.

26.     Merck's representations that Vioxx® was a safer alternative to traditional NSAIDS was false in that Vioxx® also posed a risk of ulcers and gastrointestinal side effects.  More importantly, Vioxx® produced a high rate of cardiovascular events including heart attacks and strokes.

27.     For over five years Merck continued to market and promote Vioxx® within the Commonwealth of Kentucky without adequately disclosing the dangerous side effects and true comparative safety profile.

28.     For the entire period of time Vioxx® was on the market, Merck's advertisements and promotional activities misrepresented Vioxx®'s cardiovascular safety and failed to include information then known to Merck.

M014300005

29. All practices, acts, and omissions alleged herein were committed by Merck's officers, directors, employees, or agents who at all times acted on behalf of Merck and whose practices, acts, or omissions were authorized or ratified by Merck.

30. All practices, acts, and omissions alleged herein were committed within the applicable statute of limitations.

## VIOLATIONS OF THE KENTUCKY
## CONSUMER PROTECTION ACT

31. Each of the aforementioned allegations are hereby incorporated by reference as if fully restated herein.

32. KRS 367.170 prohibits unfair, false, misleading or deceptive acts or practices in trade or commerce.

33. As set forth above, Merck has engaged in representations and omissions which are material, and which have the tendency or capacity, or which are likely, to mislead prescribers, purchasers and recipients of Vioxx.

34. Merck has willfully engaged in acts and practices which are unfair, false, misleading and/or deceptive and has committed acts or practices in trade or commerce in violation of KRS 367.170.

WHEREFORE, Plaintiff, Commonwealth of Kentucky, *ex rel.* Attorney General Jack Conway, respectfully request the following:

  A. For the entry of a judgment against the Defendant, Merck, finding that it committed repeated violations of KRS 367.170;

M01430006

B.  For an Order permanently enjoining Merck from further acts in violation of KRS 367.170;

C.  For an award of civil penalties in the amount of two thousand dollars ($2,000) for each violation of KRS 367.170, and ten thousand dollars ($10,000) for each violation targeted to consumers over the age of 65, pursuant to KRS 367.990;

D.  For an award reasonable attorney's fees and costs to Plaintiff;

E.  For a trial by jury; and

F.  For any and all such other relief as this Honorable Court deems just and proper.

Respectfully submitted,

JACK CONWAY
ATTORNEY GENERAL

**TAD THOMAS**
**Assistant Deputy Attorney General**
Office of Attorney General
700 Capitol Avenue, Suite 118
Frankfort, Kentucky 40601

**TODD E. LEATHERMAN**
**MARYELLEN B. MYNEAR**
**ELIZABETH UNGAR NATTER**
**Office of Consumer Protection**
Office of the Attorney General
1024 Capital Center Dr., Suite 200
Frankfort, KY 40601

M01430007

| AOC-105 Doc. Code: CI<br>Rev. 1-07  09/25/2009 11:50 am<br>Page 1 of 1  Ver. 1.02<br>Commonwealth of Kentucky<br>Court of Justice  www.courts.ky.gov<br>CR 4.02; CR Official Form 1 | **CIVIL SUMMONS** | Case No. 09-CI-1071 |
|---|---|---|
| | | Court ☑ Circuit ☐ District |
| | | County  Franklin |

**PLAINTIFF**

Commonwealth of Kentucky, ex rel.

Attorney General Jack Conway

700 Capitol Avenue, Suite 118

Frankfort          Kentucky          40601

**VS.**

**DEFENDANT**

Merck & Co., Inc.

One Merck Drive

P.O. Box 100

Whitehouse Station          New Jersey          08889    0100

**Service of Process Agent for Defendant:**

C.T. Corporation System

4169 Westport Road

Louisville                              Kentucky          40207

**THE COMMONWEALTH OF KENTUCKY**
**TO THE ABOVE-NAMED DEFENDANT(S):**

You are hereby notified a **legal action has been filed against you** in this Court demanding relief as shown on the document delivered to you with this Summons. **Unless a written defense is made by you or** by **an attorney on your behalf** within **20 days** following the day this paper is delivered to you, judgment by default may be taken against you for the relief demanded in the attached Complaint.

The name(s) and address(es) of the party or parties demanding relief against you are shown on the document delivered to you with this Summons.

Date: Sept 28, 2009          Sally Jump          Clerk

By:                                                  CH          D.C.

---

**Proof of Service**

This Summons was served by delivering a true copy and the Complaint (or other initiating document) to:

_____

this _____ day of _____, 2_____.

Served by: _____

_____ Title

M014300008

| AOC-105 | Doc. Code: CI | | Case No. | OCI-1071 | |
|---|---|---|---|---|---|
| Rev. 1-07 | 09/25/2009 11:50 am | | | | |
| Page 1 of 1 | Ver. 1.02 | | Court | ☑ Circuit ☐ District | |
| Commonwealth of Kentucky | | | | | |
| Court of Justice   www.courts.ky.gov | | **CIVIL SUMMONS** | County | Franklin | |
| CR 4.02; CR Official Form 1 | | | | | |

**PLAINTIFF**

Commonwealth of Kentucky, ex rel.

Attorney General Jack Conway

700 Capitol Avenue, Suite 118

Frankfort                           Kentucky                    40601

**VS.**

**DEFENDANT**

Merck & Co., Inc.

One Merck Drive

P.O. Box 100

Whitehouse Station              New Jersey                08889   0100

**Service of Process Agent for Defendant:**

C.T. Corporation System

4169 Westport Road

Louisville                                        Kentucky                40207

**THE COMMONWEALTH OF KENTUCKY**
**TO THE ABOVE-NAMED DEFENDANT(S):**

        You are hereby notified a **legal action has been filed against you** in this Court demanding relief as shown on
the document delivered to you with this Summons. **Unless a written defense is made by you** or **by an attorney on
your behalf** within **20 days** following the day this paper is delivered to you, judgment by default may be taken against you
for the relief demanded in the attached Complaint.

        The name(s) and address(es) of the party or parties demanding relief against you are shown on the document
delivered to you with this Summons.

Date: _Sept 28, 2009_                 ___Sally Jump___ Clerk

                                    By: _____ D.C.

+-------------------------------------------------------------------------+
|                         **Proof of Service**                            |
| This Summons was served by delivering a true copy and the Complaint (or other initiating document) to: |
| _____   |
| this _____ day of _____, 2_____.                            |
|                          Served by: _____     |
|                          _____ Title    |
+-------------------------------------------------------------------------+

M01430009

 CT Corporation

**Service of Process Transmittal**
09/30/2009
CT Log Number 515500758

|||||||||||||||||||||||||||||||||||||||||||||

TO:   Ellen Gregg
      Womble Carlyle Sandridge & Rice, PLLC
      301 North Main Street, Suite 300
      Winston-Salem, NC 27101

RE:   **Process Served in Kentucky**

FOR:  Merck & Co., Inc. (Domestic State: NJ)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Commonwealth of Kentucky, EX REL. Jack Conway, Attorney General, Pltf. vs. Merck & Co., Inc., Dft. |
| **DOCUMENT(S) SERVED:** | Summons, Complaint |
| **COURT/AGENCY:** | Franklin Circuit Court, KY<br>Case # 09-CI-11671 |
| **NATURE OF ACTION:** | Product Liability Litigation - Drug Litigation - Action claims violation of Kentucky Consumer Protection Act with respect to Vioxx; seeking Order permanently enjoining Merck from further violations; seeking $2,000 for each violation of Consumer Protection Act and $10,000 for each violation targeted to consumers over the age of 65 |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Louisville, KY |
| **DATE AND HOUR OF SERVICE:** | By Certified Mail on 09/30/2009 postmarked on 09/29/2009 |
| **APPEARANCE OR ANSWER DUE:** | Within 20 days |
| **ATTORNEY(S) / SENDER(S):** | Tad Thomas<br>Assistant Deputy Attorney General<br>Office of Attorney General<br>700 Capitol Avenue, Ste. 118<br>Frankfort, KY 40601 |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via Fed Ex Priority Overnight , 791242014892<br>Email Notification, Debra A Bollwage DEBRA_BOLLWAGE@MERCK.COM<br>Email Notification, Tobi Loy Tobi_Loy@merck.com |
| **SIGNED:** | C T Corporation System |
| **ADDRESS:** | 4169 Westport Road<br>Louisville, KY 40207 |
| **TELEPHONE:** | 502-721-0133 |

WCSR
OCT 01 2009
**RECEIVED**

Page 1 of 1 / PF

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

M014300010

COMMONWEALTH OF KENTUCKY
FRANKLIN CIRCUIT COURT
DIVISION I
CIVIL ACTION NO. 09-CI-1671

**FILED**

OCT 20 2009

FRANKLIN CIRCUIT COURT
SALLY JUMP, CLERK

- - - - - - - - - - - - - - - - - - - x
                             :

COMMONWEALTH OF KENTUCKY, EX REL. :
JACK CONWAY, ATTORNEY GENERAL
                             :

                 Plaintiff, :

   v.                        :

MERCK & CO., INC.,
                           :

              Defendant. :

                           :
- - - - - - - - - - - - - - - - - - - x

**ANSWER AND JURY DEMAND
OF DEFENDANT MERCK &
CO., INC.**

**JURY TRIAL DEMANDED**

Defendant Merck & Co., Inc. ("Merck"), by its undersigned attorneys, answers Plaintiff's

Complaint ("Complaint") herein as follows:

**RESPONSE TO "JURISDICTION AND VENUE"**

1. The allegations contained in paragraph 1 of the Complaint are legal conclusions as to

which no responsive pleading is required. Should a response be deemed required, Merck denies

each and every allegation contained in paragraph 1 of the Complaint.

2. Merck denies each and every allegation contained in paragraph 2 of the Complaint

except admits that Merck manufactured, marketed, and distributed the prescription medicine

Vioxx® until Merck voluntarily withdrew Vioxx from the worldwide marked on September 30,

2004. Merck further admits that it is authorized to do business in Kentucky.

## RESPONSE TO "PARTIES"

3.    With respect to the allegations contained in paragraph 3 of the Complaint, Merck admits that Plaintiff purports to bring the referenced action but denies that there is any legal or factual basis for same.

4.    Denies each and every allegation contained in paragraph 4 of the Complaint except admits that Merck is a leading research-driven pharmaceutical products and services company that researches, discovers, develops, manufactures and markets a broad range of innovative pharmaceutical products to improve human health.  Merck further admits that Merck is a New Jersey corporation with its principal place of business at One Merck Drive, Whitehouse Station, New Jersey.

## RESPONSE TO "BACKGROUND"

5.    Merck denies each and every allegation contained in paragraph 5 of the Complaint except admits that in May 1999 Merck received FDA approval to manufacture and market the prescription medicine Vioxx in a manner consistent with the information contained in the FDA-approved prescribing information for Vioxx and respectfully refers the Court to said prescribing information for its actual language and full text.  Merck further admits that Vioxx is the brand name for rofecoxib.

6.    Merck denies each and every allegation contained in paragraph 6 of the Complaint, except admits that Merck manufactured, marketed, and distributed the prescription medicine Vioxx, until Merck voluntarily withdrew Vioxx from the worldwide market on September 30, 2004.

7.    The allegations in paragraph 7 of the Complaint are not directed at Merck and therefore no responsive pleading is required.

2

8.    Merck denies each and every allegation contained in paragraph 8 of the Complaint, except admits that Vioxx is a selective NSAID and that the inhibition of cyclooxygenase-1 (COX-1) in patients taking traditional non-selective NSAIDs such as naproxen is believed to be associated with gastric damage and increased bleeding among patients taking such traditional non-selective NSAIDs.

9.    Denies each and every allegation contained in paragraph 9 of the Complaint, except admits that the referenced study exists and respectfully refers the Court to the referenced study for its actual conclusions and full context.

10.    Denies each and every allegation contained in paragraph 10 of the Complaint except admits that the VIGOR study involving Vioxx exists and respectfully refers the Court to the referenced study for its actual conclusions and full text.

11.    Denies each and every allegation contained in paragraph 11 of the Complaint except admits that the referenced study exists and respectfully refers the Court to said study for its actual conclusions and full text.

12.    Denies each and every allegation contained in paragraph 12 of the Complaint except admits that the referenced study exists and respectfully refers the Court to said study for its actual conclusions and full text.

13.    Denies each and every allegation set forth in paragraph 13 of the Complaint, except admits that Merck sought and, in May 1999, received FDA approval to manufacture and market the prescription medicine Vioxx in a manner consistent with the information contained in the FDA-approved prescribing information for Vioxx and respectfully refers the Court to the relevant prescribing information for its actual language and full text.

14.   Denies each and every allegation set forth in paragraph 14 of the Complaint except admits the referenced press release exists, and respectfully refers the Court to the referenced press release for its actual language and full text.

15.   Denies each and every allegation contained in paragraph 15 of the Complaint except admits that the referenced study exists and respectfully refers the Court to said study for its actual conclusions and full text.

16.   Denies each and every allegation contained in paragraph 16 of the Complaint except admits that Plaintiff purports to quote the referenced email, but Merck avers that said quote is taken out of context.

17.   Denies each and every allegation contained in paragraph 17 of the Complaint, except admits the referenced press release and study exist, and respectfully refers the Court to the referenced press release and study for their actual language and full text.

18.   Denies each and every allegation contained in paragraph 18 of the Complaint except admits that the VIGOR study involving Vioxx exists and respectfully refers the Court to the referenced study for its actual conclusions and full text.

19.   Denies each and every allegation contained in paragraph 19 of the Complaint, except admits that on February 8, 2001, the FDA's Arthritis Advisory Committee met and that the Vioxx label was discussed. Merck respectfully refers the court to the transcript of the meeting for the actual language and full text of any recommendations.

20.   Denies each and every allegation contained in paragraph 20 of the Complaint.

21.   Denies each and every allegation contained in paragraph 21 of the Complaint.

22.   Denies each and every allegation contained in paragraph 22 of the Complaint.

23.   Denies each and every allegation contained in paragraph 23 of the Complaint.

4

24.  Denies each and every allegation contained in paragraph 24 of the Complaint.

25.  Denies each and every allegation contained in paragraph 25 of the Complaint.

26.  Denies each and every allegation contained in paragraph 26 of the Complaint.

27.  Denies each and every allegation contained in paragraph 27 of the Complaint.

28.  Denies each and every allegation contained in paragraph 28 of the Complaint.

29.  Denies each and every allegation contained in paragraph 29 of the Complaint.

30.  Denies each and every allegation contained in paragraph 30 of the Complaint.

## RESPONSE TO "VIOLATIONS OF THE KENTUCKY CONSUMER PROTECTION ACT"

31.  With respect to the allegations contained in paragraph 31 of the Complaint, Merck repeats and realleges each and every admission, denial, averment, and statement contained in paragraphs 1 through 30 of this Answer with the same force and effect as though set forth here in full.

32.  The allegations contained in paragraph 32 of the Complaint are legal conclusions as to which no responsive pleading is required.

33.  Denies each and every allegation contained in paragraph 33 of the Complaint.

34.  Denies each and every allegation contained in paragraph 34 of the Complaint.

The "Wherefore" paragraph following paragraph 34 of the Complaint is not an allegation and therefore no responsive pleading is required. Should a response be deemed required, Merck denies each and every allegation in said paragraph, including subparagraphs A. through F., except admits that Plaintiff purports to demand judgment and certain forms of relief, but denies there is any legal or factual basis for awarding same.

## AFFIRMATIVE DEFENSES

35.    Each and every claim asserted or raised in the Complaint is barred by the applicable statute of limitations and statutes of repose and is otherwise untimely.

36.    The Plaintiff fails to state a claim under the Kentucky Consumer Protection Act because it is not part of the protected class, and the prescription medicine Vioxx is not a consumer product.

37.    The claims of the Plaintiff may be barred, in whole or in part, from recovery because it has made statements or taken actions that preclude it from asserting claims or constitute a waiver of its claims.

38.    Lack of privity between the Plaintiff on one hand and Merck on the other bars any claims based on alleged warranty theories and under the Kentucky Consumer Protection Act.

39.    The claims of the Plaintiff may be barred, in whole or in part, from recovery because of the *res judicata* effect of prior judgments.

40.    Each and every claim asserted or raised in the Complaint is barred by the doctrines of estoppel, waiver or statutory and regulatory compliance.

41.    Plaintiff's claims are barred by K.R.S. § 367.176(2) because Merck's activities that form the basis for Plaintiff's claims were authorized and approved under federal statutes and regulations.

42.    If Plaintiff has sustained injuries or losses as alleged in the Complaint, upon information and belief, such injuries or losses were caused in whole or in part through the operation of nature or other intervening cause or causes.

6

43. To the extent that Plaintiff asserts claims based on Merck's adherence to and compliance with applicable federal laws, regulations and rules, such claims are preempted by federal law under the Supremacy Clause of the United States Constitution.

44. To the extent that Plaintiff asserts claims based upon an alleged failure by Merck to warn Plaintiff directly of alleged dangers associated with the use of Vioxx, such claims are barred under the learned intermediary doctrine because Merck has discharged its duty to warn in its warnings to the prescribing physicians.

45. If Plaintiff has sustained injuries or losses as alleged in the Complaint, such injuries or losses were only so sustained after Plaintiff knowingly, voluntarily, and willfully assumed the risk of any injury as the result of the consumption of, administration of, or exposure to any drug or pharmaceutical preparation manufactured or distributed by Merck or other manufacturer.

46. If Plaintiff has sustained injuries or losses as alleged in the Complaint, upon information and belief, such injuries and losses were caused by the actions of persons not having real or apparent authority to take said actions on behalf of Merck and over whom Merck had no control and for whom Merck may not be held accountable.

47. If Plaintiff has sustained injuries or losses as alleged in the Complaint, upon information and belief, such injuries and losses were proximately caused by Plaintiff's misuse or abuse of Vioxx.

48. To the extent Plaintiff settled or will in the future settle with any person or entity with respect to the injuries asserted in the Complaint, Merck's liability, if any, should be reduced accordingly.

49.  To the extent Plaintiff is seeking recovery for benefits entitled to be received or actually received from any other source for injuries alleged in the Complaint, such benefits are not recoverable in this action.

50.  Plaintiff's claims of fraud are barred by reason of Plaintiff's failure to allege the circumstances constituting fraud with particularity, Rule 9.02 of the Kentucky Rules of Civil Procedure.

51.  Plaintiff's claims are barred, in whole or in part, under the applicable state law because Vioxx was subject to and received pre-market approval by the Food and Drug Administration under 52 Stat. 1040, 21 U.S.C. § 301.

52.  To the extent that Plaintiff relies upon any theory of breach of warranty, such claims are also barred for lack of timely notice of breach and/or lack of privity and/or because the alleged warranties were disclaimed.

53.  Plaintiff's claims are barred in whole or in part by the First Amendment.

54.  Plaintiff's claims are barred in whole or in part because the product at issue was made in accordance with the state of the art at the time it was manufactured.

55.  There is no practical or technically feasible alternative design that would have reduced the alleged risk without substantially impairing the reasonably anticipated and intended function of Vioxx.

56.  This case is more appropriately brought in a different venue.

57.  Venue in this case is improper.

58.  The claims of Plaintiff may be barred, in whole or in part, from recovery because, in this or other courts, it has brought actions and have received judgments on parts of some or all claims asserted herein.

59. The claims of Plaintiff may be barred, in whole or in part, from recovery, on the ground that the claims asserted herein have been submitted to arbitration, and a binding decision has been rendered.

60. The claims of Plaintiff may be barred, in whole or in part, from recovery by release as to its claims.

61. The claims of Plaintiff may be barred, in whole and in part, by the doctrine of laches.

62. The claims of Plaintiff are barred, in whole or in part, by its failure to mitigate damages.

63. To the extent there were any risks associated with the use of the product which is the subject matter of this action that Merck knew or should have known and which gave rise to a duty to warn, Merck at all times discharged such duty through appropriate and adequate warnings in accordance with federal and governing state laws.

64. The claims of Plaintiff may be barred, in whole or in part, from recovery, due to spoliation of evidence.

65. The claims of Plaintiff may be barred, in whole or in part, by the governing state laws.

66. Any conduct allegedly causing liability on the part of Merck is not a substantial cause or factor of any potential or actual injury or damage, if any.

67. Plaintiff has not sustained any injury or damages compensable at law.

68. Plaintiff's claims are barred in whole or in part under comment k to Section 402A of the Restatement (Second) of Torts.

69.    Plaintiff's claims are barred in whole or in part because Merck provided adequate "directions or warnings" as to the use of Vioxx and any other drug or pharmaceutical preparation Plaintiff alleges to have taken within the meaning of comment j to Section 402A of the Restatement (Second) of Torts.

70.    Plaintiff's claims are barred under Section 4, et. seq., of the Restatement (Third) of Torts:  Products Liability.

71.    Plaintiff's claims are barred in whole or in part because Vioxx "provides net benefits for a class of patients" within the meaning of comment f to Section 6 of the Restatement (Third) of Torts:  Product Liability.

72.    With respect to each of Plaintiff's claims, all product(s) which are the subject matter of this action were prepared by Merck and provided by Merck, including their labels and packaging, pursuant to the approval of the appropriate federal agencies and applicable statues and regulations; approval of preparation of said product(s) was obtained in compliance with all requirements pertaining to the preparation and/or distribution of such product(s) and was accomplished pursuant to acceptable standards of conduct.

73.    Plaintiff may be barred, in whole or in part, from pursuing this action because of the existence of a prior pending action in another court.

74.    Plaintiff's tort-based claims are barred by the economic loss doctrine.

75.    Plaintiff's claims are barred in whole or in part because Merck's conduct conforms with medical knowledge.

76.    Plaintiff cannot recover in the capacity in which it has sued because it is not the real-party-in-interest with respect to Plaintiff's claims.

77. The federal FDA has implemented a comprehensive regulatory scheme governing the safety and efficacy of prescription drugs. Vioxx, the drug at issue in this case, was approved by the FDA pursuant to the applicable statutes and regulations. The labeling for Vioxx was also approved by the FDA, and the marketing was conducted in conformity with the FDA's rules and regulations. Such actions and federal statutes and regulations bar and preempt all of Plaintiff's claims under state law.

78. Plaintiff's claims are barred by federal Medicaid law which determines both which drugs a state must cover under its Medicaid program and the limited circumstances under which it can decline to pay for such drugs. *See* 42 U.S.C. § 1396r-8.

79. Merck relies upon every defense set forth in Kentucky's Product Liability Act, KRS § 411.300-411.350.

80. Merck relies upon every defense set forth in Kentucky's Consumer Protection Act, KRS § 367.110-367.360.

Inasmuch as the Complaint does not describe the alleged underlying claims with sufficient particularity to enable Merck to determine all of its legal, contractual and equitable rights, Merck reserves the right to amend and supplement the averments of its answer to assert any and all pertinent liability defenses ascertained through further investigation and discovery of this action.

Merck will rely on all defenses that may become available during discovery or trial.

81. WHEREFORE, Merck respectfully demands judgment dismissing Plaintiff's Complaint with prejudice and awarding Merck its reasonable costs and disbursements, together with such and other and further relief that the Court may deem just and proper.

## JURY DEMAND

Merck demands a trial by jury.

Respectfully submitted,

**FROST BROWN TODD LLC**

By: *Susan J. Pope*

Susan J. Pope
250 West Main Street, Suite 2800
Lexington, Kentucky 40507-1749
(859) 231-0000 Telephone
(859) 231-0011 Facsimile

-and-

Winston E. Miller
400 West Market Street, 32nd Floor
Louisville, Kentucky 40202
(502) 589-5400 Telephone
(502) 581-1087 Facsimile
*Attorneys for Defendant Merck & Co., Inc.*

OF COUNSEL:

Brian C. Anderson, Esq.
O'Melveny & Myers LLP
1625 Eye Street, NW
Washington, DC 20006-4001
(202) 383-5300

John H. Beisner, Esq.
Skadden, Arps, Slate
  Meagher & Flom LLP
1440 New York Avenue, NW
Washington, DC 20005-2111
(202) 371-7000

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Answer and Jury Demand of

Defendant Merck & Co., Inc. was mailed, first-class mail, postage pre-paid, to the following on

this the 20th day of _October_, 2009.

Attorney General Jack Conway
Office of Attorney General
700 Capitol Avenue, Suite 118
Frankfort, KY 40601

Tad Thomas
Assistant Deputy Attorney General
Office of Attorney General
700 Capitol Avenue, Suite 118
Frankfort, KY 40601

Todd E. Leatherman
Maryellen B. Mynear
Elizabeth Ungar Natter
Office of Consumer Protection
Office of the Attorney General
1024 Capital Center Dr., Suite 200
Frankfort, KY 40601

_Susan Pope_

*Counsel for Defendant Merck & Co., Inc.*

LEXLibrary 0106603.0568643 407451v1

13

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF KENTUCKY

| | |
|---|---|
| COMMONWEALTH OF KENTUCKY ex rel. Jack Conway, Attorney General, | Civil Action No. _____ |
| Plaintiff, | |
| v. | |
| MERCK & CO., INC., | |
| Defendant. | |

## DECLARATION OF SUSAN BRUNSTETTER

Susan J. Brunstetter, being first duly sworn, deposes and says:

1.    I am over the age of 18 and legally competent to provide this declaration.

2.    I am Project Leader, Merck eDiscovery Services, and have been in this position for the past four years.  As part of my job, I regularly report and query prescription data held in structured database format by Merck & Co., Inc. ("Merck").  I have personal knowledge of the information contained in this declaration.

3.    During the regular course of business, Merck licenses from IMS Health Incorporated ("IMS") certain prescription data.  These data are statistical estimates of retail prescriptions, and may be tabulated on a geographic basis.  Among other things, these data track new and total prescriptions per doctor for a given drug.

4.    According to the IMS prescription data within Merck's possession, there were 2,089,015 total prescriptions for Vioxx® dispensed at retail outlets within the state of Kentucky from 1999 through 2004.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on _Oct 28 200.9_

By: _____

Susan J. Brunstetter