# EXHIBIT D

FILED
LUCAS COUNTY

2010 OCT -6 P 2: 14

COMMON PLEAS COURT
BERNIE QUILTER
CLERK OF COURTS

# IN THE COURT OF COMMON PLEAS
## LUCAS COUNTY, OHIO

STATE OF OHIO, ex rel.　　　　　　　)
RICHARD CORDRAY　　　　　　　　)
ATORNEY GENERAL OF OHIO　　　)
30 East Broad Street, 17th Floor　　　)
Columbus, Ohio 423215　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)　　CASE NO. CI0201006984
　　　　PLAINTIFF　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)　　JUDGE
vs.　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
GMAC MORTGAGE, LLC　　　　　　)
c/o Csc-Lawyers Incorporating Service )　　ASSIGNED TO JUDGE FRANKS
50 West Broad St., Suite 1800　　　　)
Columbus, Ohio 43215　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)　　COMPLAINT FOR DECLARATORY
and　　　　　　　　　　　　　　　　　)　　RELIEF, PRELIMINARY AND
　　　　　　　　　　　　　　　　　　　　)　　PERMANENT INJUNCTION,
ALLY FINANCIAL, INC.　　　　　　　)　　DAMAGES, CIVIL PENALTIES
c/o Ct Corporation System　　　　　　)　　AND PUNITIVE DAMAGES
1300 East Ninth Street　　　　　　　　)
Cleveland, Ohio 44114　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)　　JURY DEMAND ENDORSED
　　　　　　　　　　　　　　　　　　　　)　　HEREON
and　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
JEFFREY STEPHAN　　　　　　　　　)
42 Lenape Drive #L35　　　　　　　　)
Sellersville, PA 18960　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
　　　　DEFENDANTS　　　　　　　　)

1

## INTRODUCTION

1.     Plaintiff, State of Ohio, by and through counsel, Ohio Attorney General Richard Cordray (the "Ohio Attorney General"), has reasonable cause to believe Defendants GMAC Mortgage LLC ("GMAC Mortgage"), Ally Financial, Inc ("Ally") and Jeffrey Stephan ("Stephan") (GMAC Mortgage, Ally and Stephan collectively the "Defendants") have committed frauds and unfair, deceptive and unconscionable acts and practices on Ohio consumers and the courts of Ohio through, among other ways, the signing of and causing the filing in Ohio courts of hundreds of false affidavits and assignments of notes. GMAC Mortgage has been the plaintiff and/or servicer in hundreds of Ohio mortgage foreclosure cases in at least the last two years and in those cases used false affidavits, assignments and other documents to increase its profits at the expense of Ohio consumers and Ohio's system of justice.

## PARTIES

2.     The State of Ohio has a sovereign interest in the economic well-being of Ohio residents and in the maintenance of the integrity of Ohio's judicial system. The Ohio Attorney General is the chief law enforcement officer of the State of Ohio. Through the doctrine of *parens patriae* and through statutory and common law, the Ohio Attorney General has the authority to file suits in the courts of Ohio to enforce the right of the public to: (a) prevent and remedy violations of the Ohio Consumer Sales Practices Act, (b) prevent and remedy fraud against the public interest; and (c) prevent violations of the requirement of the Ohio Constitution that Ohio's courts be open and its citizens have remedy in them by due course of law.

2

3.      Plaintiff brings this action on behalf of the State of Ohio in the public interest under the authority vested in him by the Ohio Consumer Sales Practices Act, Ohio Revised Code §1345.01 *et seq.* and under his authority to enforce common law to stop the fraud caused by Defendants.

4.      Defendant GMAC Mortgage is a Delaware limited liability company licensed to do business in Ohio that acts as (a) the note holder in many foreclosure cases in Ohio and (b) the servicer for trusts acting for investors in securitized transactions in many other Ohio foreclosure cases.

5.      Defendant Ally is a Delaware corporation that is the parent of GMAC Mortgage. In its 10Q Quarterly Report for the period ending June 30, 20010, filed with the Securities and Exchange Commission, Ally reported that its "net gain on mortgage loans was $197 million and $348 million for the three months and six months ended June 30, 2010, respectively, compared to $167 million and $347 million for the same periods in 2009."

6.      Defendant Stephan is an individual employee of GMAC Mortgage and a team leader of mortgage foreclosures for GMAC Mortgage.

## JURISDICTION AND VENUE

7.      The actions of Defendants, hereinafter described, have occurred in Lucas County and other counties in the State of Ohio and, as set forth below, are in violation of the Ohio Consumer Sales Practices Act, R.C. 1345.01 et seq. ("CSPA") and the common law.

8.      Jurisdiction over the subject matter of this action lies with this Court pursuant to R.C. 1345.04 of the CSPA and the common law.

9.      This Court has venue to hear this case pursuant to Ohio Civ. R. 3(B)(3) - in that the Defendants conducted activity which gave rise to the claims for relief in several counties in

the State of Ohio, including Lucas County - and pursuant to Ohio Civ. R. 3(B)(6) - in that some of the transactions complained of herein, and out of which the claims for relief arose, occurred in Lucas County.

## STATEMENT OF FACTS

10.    In many mortgage foreclosure cases filed in Ohio, GMAC Mortgage claimed and claims to be the holder of the promissory note and mortgage that form the basis for the foreclosure action, and in these cases GMAC Mortgage is the plaintiff.  Attached as **Exhibit A** are examples of affidavits signed by Defendant Stephan in Ohio foreclosure cases in which GMAC Mortgage is or was the plaintiff (names of borrowers redacted, and any exhibits omitted).

11.    In many other Ohio cases, GMAC Mortgage is not the named plaintiff but is the servicer or sub-servicer for a trustee holding in a "pool" hundreds or even thousands of mortgages for investors in certificates evidencing ownership interests in the securitized mortgage loans (the "trust").  As a servicer for the trust, GMAC Mortgage is responsible for: collecting payments on the mortgage loans from borrowers and applying them as required by the applicable documents; communicating with the borrowers about insurance and tax payments the borrowers allegedly owe; negotiating with the borrowers over late fees, other fees and loan modifications; initiating and pursuing foreclosure proceedings against borrowers; obtaining affidavits and assignments of mortgage to pursue; and selling properties of the borrowers that have been foreclosed upon.  Attached as **Exhibit B** are examples of affidavits signed by Defendant Stephan in Ohio foreclosure cases in which GMAC Mortgage is or was the servicer or sub-servicer (names of borrowers redacted, and any exhibits omitted).

4

12.     GMAC Mortgage acted, and is still acting, as a sub-servicer for trustees in securitized transactions in many Ohio foreclosure cases.  In a securitized transaction with a master servicer and sub-servicer, the sub-servicer has primary responsibility for communications with the borrowers and actions taken against the borrower, as the following excerpt from a Prospectus Supplement for a securitized transaction in which GMAC Mortgage acted as a sub-servicer shows:

> Sub-servicers are generally responsible for the following duties:
>
> - communicating with borrowers;
> - sending monthly remittance statements to borrowers;
> - collecting payments from borrowers;
> - recommending a loss mitigation strategy for borrowers who have defaulted on their loans (i.e. repayment plan, modification, foreclosure, etc.);
> - accurate and timely accounting, reporting and remittance of the principal and interest portions of monthly installment payments to the master servicer, together with any other sums paid by borrowers that are required to be remitted;
> - accurate and timely accounting and administration of escrow and impound accounts, if applicable;
> - accurate and timely reporting of negative amortization amounts, if any;
> - paying escrows for borrowers, if applicable;
> - calculating and reporting payoffs and liquidations;
> - maintaining an individual file for each loan; and
> - maintaining primary mortgage insurance commitments or certificates if required, and filing any primary mortgage insurance claims.

See Prospectus Supplement dated December 6, 2007 (to prospectus dated April 9, 2007) $2,538,093 RALI Series 2006-QS6 Trust Mortgage Asset-Backed Pass-Through Certificates, Series 2006-QS6, at http://www.secinfo.com/d1zj61.u1Da.htm#5npc.

13.     In order to facilitate the mortgage securitization process, when a borrower executes a mortgage, typically that mortgage is either (a) granted to Mortgage Electronic Registration Systems, Inc. ("MERS") or (b) the original mortgage is assigned to MERS. MERS is a corporation created by the mortgage banking industry whose shareholders

consist of banks and other financial institutions, including GMAC Residential Funding Corp., a subsidiary of Defendant Ally.

14. MERS was created by the mortgage banking industry to streamline the mortgage process and save money by using electronic commerce to eliminate paper and the need to file assignments of mortgage every time a mortgage was transferred in the securitization process or subsequent changes in servicing. MERS claims, "Our mission is to register every mortgage loan in the United States on the MERS® System. Beneficiaries of MERS include mortgage originators, servicers, warehouse lenders, wholesale lenders, retail lenders, document custodians, settlement agents, title companies, insurers, investors, county recorders and consumers. MERS acts as nominee in the county land records for the lender and servicer. Any loan registered on the MERS® System is inoculated against future assignments because MERS remains the nominal mortgagee no matter how many times servicing is traded."

15. Unless MERS is the plaintiff in a foreclosure case, MERS does not hold the note of a borrower and is not named in the note or any transfer of the note, but simply is named the secured party in the mortgage filed in the local real estate records as the nominee of the note holder.

16. When a trustee of a securitized transaction initiates a foreclosure action as a plaintiff, the servicer, sub-servicer or its agent is responsible for the preparation of the papers filed in the Ohio foreclosure action. In the many securitized transactions in which GMAC Mortgage was or is the servicer or sub-servicer of Ohio mortgage loans, GMAC Mortgage has been responsible for the preparation of the necessary documents, including an Assignment of Mortgage assigning the mortgage from MERS to the trustee. In some

cases MERS gives servicers and sub-servicers the authority to execute Assignments of Mortgages from MERS to the trustee. However, MERS never authorizes services or sub-servicers to execute an Assignment of Mortgage that includes an assignment of a note.

17.     In spite of this lack of authority, GMAC Mortgage has caused Assignments of Mortgage to be prepared and executed by agents of GMAC Mortgage that improperly purport to assign the note from MERS to the trustee and falsely claim that the GMAC Mortgage employee executing the Assignment has authority to assign the note on behalf of MERS. Stephan has executed many such improper and false Assignments (see an example attached as **Exhibit C**) that have been filed in Ohio foreclosure cases and that have the purpose of trying to deceive the borrower and courts as to who is the note holder.

## GMAC Mortgage Signed and Filed False Affidavits in 2006

18.     In May of 2006, the Circuit Court of the Fourth Judicial Circuit in and for Duvall County Florida sanctioned the plaintiff in a mortgage foreclosure case (the "Florida Foreclosure Decision") because an employee of GMAC Mortgage Corporation (a predecessor of GMAC Mortgage) had signed a false affidavit on behalf of the plaintiff. The court said, "Plaintiff, through its servicing entity, GMAC Mortgage Corporation, submitted false testimony to the Court in the form of Affidavits of Indebtedness signed and subscribed by a....'Limited Signing Officer' with GMAC Mortgage Corporation....[who] would attest to review of the relevant loan documents...when in fact...she neither reviewed the referenced records nor was familiar with the manner in which the records were created by GMAC on behalf of Plaintiff....none of the Affidavits were signed before a Notary." (see attached **Exhibit D**). The court sanctioned plaintiff in the Florida Foreclosure Decision and ordered GMAC Mortgage Corporation to provide a written confirmation that

"affidavits filed in future foreclosure actions in Florida accurately memorialize the actions and conduct of the affiants."

## GMAC Mortgage Continued to File False Affidavits in 2009 and 2010

19.     Stephan has been a team leader in the foreclosure department of GMAC Mortgage for years, including through at least August 2, 2010. Stephan has been an employee of GMAC Mortgage, or affiliates, for approximately 5 years.

20.     In a December 10, 2009 deposition (the "2009 Deposition") in a Florida state court foreclosure case (the "2009 Florida Case"), Stephan testified that his team brought to him approximately 10,000 affidavits and assignments in a month for him to sign ( 2009 Deposition, p.7, ls 18-20).

21.     In spite of the Florida Foreclosure Decision, Stephan testified that he did not sign the affidavits based on his personal knowledge and that he relied on others (2009 Deposition, p. 10, ls 6-15). However, he also testified that his team did not verify the accuracy of the information: "They do not go into the system and verify the information as accurate. We are relying on our attorney network to ensure that they are asking for the correct information." (2009 Deposition, pp. 12-13, ls 16-25 and 1-4). Stephan knew or should have known that these hundreds of affidavits would be filed in Ohio courts and relied upon by Ohio Common Pleas Judges in deciding whether the plaintiff in the particular case had a right to foreclose on Ohio residents.

22.     When Stephan executed an affidavit, he testified he did not ascertain who the current promissory note-holder was (2009 Deposition, p. 31, ls. 12-14), even though his affidavits always stated or implied that plaintiff was the holder of the note. The agents of GMAC Mortgage prepared these affidavits to mislead the courts in Ohio on such matters as

who kept the applicable records, who the holder of the note was, the amount due to whoever the holder of the note was, and whether proper notice alleging default had been sent to the borrower.

23.     In spite of his lack of personal knowledge, Stephan swore in the hundreds of affidavits he signed for Ohio courts that "I have personal knowledge of the facts contained in this affidavit," or equivalent words (see as examples **Exhibits A and B).** Stephan signed hundreds of these false affidavits, and Defendants caused hundreds of these false affidavits to be filed in hundreds of mortgage foreclosure cases in Ohio.

24.     Stephan – claiming to be an officer of MERS – signed for many Ohio foreclosure cases Assignments of Mortgage falsely claiming that he assigned a borrower's mortgage and note from MERS to the plaintiff (see attached **Exhibit C**), even though he did not have the authority of MERS to assign a note to any party.

25.     Stephan signed hundreds of affidavits outside of the presence of a notary public (2009 Deposition, p. 13, ls. 10-17) that were filed in Ohio foreclosure cases.

26.     Stephan was acting within the scope of his employment with GMAC Mortgage when he executed the false affidavits, when he executed the affidavits outside the presence of notaries public and when he executed the false assignments of note from MERS to plaintiffs in Ohio mortgage foreclosure cases.

27.     Ally and GMAC Mortgage had authority over and the right to control the actions of Stephan and benefited financially from the actions of Stephan.  The actions of Stephan were part of the business plans of Ally and GMAC mortgage.

28.     GMAC Mortgage has outsourced various pieces of the foreclosure process.  For instance, GMAC Mortgage contracts with Fiserv, Inc. ("Fiserv") to provide such computer

services as recording payments received from, and amounts allegedly due, lenders. Fiserv advertises that it is a "leading global provider of information management and electronic commerce services" which provides "solutions for optimizing all aspects of the payments mix to help create efficiency and growth."

29.   GMAC Mortgage employees executed thousands of false affidavits and purported to enter payments, failures to pay, and other information into computers for the Fiserv system.

30.   It is Fiserv that creates and maintains the records and calculates the amounts allegedly due from borrowers.

31.   In a June 7, 2010 deposition (the "2010 Deposition") in a Maine mortgage foreclosure case (the "Maine Mortgage Foreclosure Case"), Stephan testified that he did not have "any knowledge about how GMAC ensures the accuracy of the data entered into the system" (2010 Deposition, p. 30, ls. 10-13).

32.   Lender Processing Services, Inc. ("LPS") provides a separate system that creates documents for GMAC Mortgage in the foreclosure process and acts as an intermediary between attorneys for GMAC Mortgage and GMAC Mortgage in the foreclosure process (2010 Deposition, pp. 35-42 and 56-57).

33.   As part of GMAC Mortgage policy, Stephan did not read every paragraph of the summary judgment affidavits he signed (2010 Deposition, pp. 61-64) that were prepared by LPS. The summary judgment affidavits signed by Stephan contained inaccuracies.

34.   GMAC Mortgage knew or should have known that failure to supervise the accuracy of the input of information into, maintenance of information in, and calculations provided by, the outsourced computer systems and document preparation would lead to errors and