UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: VIOXX<br>　　Products Liability Litigation | *<br>*<br>*<br>*   MDL No. 1657<br>* |
| This Document Relates to: | *   SECTION L<br>* |
| *Kentucky ex rel. Conway v. Merck & Co.,*<br>Civil Action No. 2:10-cv-01115 | *   JUDGE ELDON E. FALLON<br>*<br>*   MAGISTRATE JUDGE<br>*   KNOWLES<br>* |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## DEFENDANT'S OPPOSITION TO MOTION TO REMAND

This is a lawsuit brought on behalf of the people of Kentucky against an out-of-state corporation. Far from being a "tenuous" candidate for removal, this case is well within the class of cases that the founders and Congress intended to be within the jurisdiction of federal courts. Stripped of their rhetoric, the Attorney General's contrary arguments amount to little more than an unremarkable observation – no one has brought a case like this before, so by definition none has been brought in federal court before. But the novelty of the case does not itself decide the question of jurisdiction. And as set forth in Merck's removal notice and elaborated in this brief, this case was properly removed. Accordingly, the remand motion should be denied.

## BACKGROUND

This lawsuit was commenced by Jack Conway, the Attorney General of Kentucky, on September 28, 2009. The suit alleges that, over the course of five years (Compl. ¶ 27), Merck failed to disclose studies and other information about Vioxx to the Federal Food and Drug Administration ("FDA") (*see id.* ¶¶ 10, 15, 19), and "engaged in representations and omissions which are material, and which have the tendency or capacity, or which are likely, to mislead

1067468v.1

prescribers, purchasers and recipients of Vioxx" (*id.* ¶ 33).  Under the auspices of the Kentucky Consumer Protection Act, KRS § 367.110 *et seq.* ("KCPA"), the complaint asserts entitlement to various forms of relief, including injunctive and declaratory relief, civil penalties and attorneys' fees.  (Compl. at 7-8.)

Merck timely removed the case, citing two grounds for federal jurisdiction:  (1) federal-question jurisdiction (Notice of Removal ¶¶ 7-15); and (2) the Class Action Fairness Act, Pub. L. No. 109-2, 119 Stat. 4 (2005), *codified in relevant part at* 28 U.S.C. § 1332(d) ("CAFA") (Notice of Removal ¶¶ 16-30).  The case was then transferred to the multidistrict Vioxx proceedings pending in this Court.  (*See* Transfer Order, Apr. 14, 2010.)  On August 4, 2011, this Court authorized the parties to submit briefing on the Attorney General's motion for remand.

Although the KCPA does not empower the AG to outsource his enforcement authority to private lawyers hired pursuant to indeterminate contingency-fee arrangements, he has nonetheless entered into such a contract with respect to this case, thereby granting certain individuals or entities a financial stake in the outcome of this lawsuit.  Specifically, the Garmer & Prather firm of Lexington, Kentucky has agreed to prosecute the Commonwealth's lawsuit in exchange for a percentage of any civil penalties or other amounts recovered from Merck.[1]

## ARGUMENT

The Court has subject-matter jurisdiction over this case under CAFA, which provides for original federal jurisdiction over a class action in which:  (1) there are 100 or more members in the proposed class; (2) at least some members of the proposed class have a different citizenship from the defendant; and (3) the claims of the proposed class members exceed the sum or value of

---

[1]   The contract entered into between the AG and outside counsel was approved pursuant to an executive order signed by the governor.  (*See* Contract (attached as Ex. 1).)  Although the contract describes the representation and
*(cont'd)*

$5,000,000 in the aggregate. 28 U.S.C. § 1332(d). Each of these elements is satisfied. First, this case is the equivalent of a "class action" for purposes of CAFA because it is brought pursuant to a statute authorizing the Commonwealth to bring a representative action. Second, the diversity requirement is satisfied because the real parties in interest are the citizens of Kentucky on whose behalf the suit is brought. And third, the amount sought exceeds $5,000,000 in the aggregate.

### A. This Is A "Class Action" Within The Meaning Of CAFA.

CAFA defines "class action" broadly to include "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B).

Plaintiff does not dispute that a representative suit initiated by a state attorney general is a "class action" for purposes of CAFA under binding Fifth Circuit precedent. (*See* Mot. at 13 & n.4 (citing *La. ex rel. Caldwell v. Allstate Ins. Co.*, 536 F.3d 418, 428 (5th Cir. 2008)).) As *Caldwell* explained, this provision of CAFA is satisfied by a representative action because CAFA's jurisdictional provisions focus on the substance of a case, rather than the use of magic words in the pertinent complaint. 536 F.3d at 427-28. In *Caldwell*, the Louisiana Attorney General brought suit against Allstate Insurance Co. ("Allstate"), alleging that Allstate had engaged in a price-fixing scheme that violated the Louisiana Monopolies Act. *Id.* at 422. Among other relief, the Attorney General sought treble damages under its *parens patriae* authority on behalf of individual Louisiana policyholders. The defendants removed the case

---
*(cont'd from previous page)*
makes clear that the retention is a contingency-fee arrangement, it does not specify the percentage of the recovery that counsel would receive under the contingency-fee arrangement.

1067468v.1

under CAFA, arguing that the Attorney General's suit was a representative action, making it a "class action" within the meaning of CAFA. *See id.* at 423.

The district court agreed, and so did the Fifth Circuit on appeal. In its ruling, the Fifth Circuit explained that CAFA intended the term "'class action' . . . to be interpreted liberally." *Id.* at 424 (quoting S. Rep. No. 109-14, at 35 (2005)). The court further explained that, in drafting CAFA, Congress specifically "considered and rejected an amendment that would have exempted class actions filed by state attorneys general from removal under CAFA." *Id.* (citing 151 Cong. Rec. S1157, 1163-64 (daily ed. Feb. 9, 2005)). With this background in mind, the court considered the substance of the Attorney General's action and concluded that "the policyholders are the real part[y] in interest" as to the claims for treble damages. *Id.* at 429. Notably, it did not matter that the state was the real party in interest as to other relief sought in the case; CAFA jurisdiction over some of the claims was a sufficient basis for exercising supplemental jurisdiction over any remaining claims. *See id.* at 430.[2]

As set forth in Merck's notice of removal, this case too is a "class action" within the meaning of CAFA because it is a "representative" action – i.e., Kentucky consumers (in addition to the Commonwealth itself) are the real parties in interest. Plaintiff argues they are not, pointing to a difference between this case and *Caldwell* that he thinks is dispositive: the lack of a claim for restitution or other compensation on behalf of Kentucky consumers in this case. (*See*

---

[2] Plaintiff apparently believes that *Caldwell* is wrongly decided, but he does not explain why; instead, he simply cites (without as much as a parenthetical) to W*est Virginia ex rel. McGraw v. CVS Pharmacy, Inc.*, No. 11-1251, 2011 WL 1902678 (4th Cir. May 20, 2011), a 2-1 decision of the Fourth Circuit that created a circuit split over the question whether state attorney-general actions should be considered "class actions" for purposes of CAFA. In truth, *CVS* was wrongly decided – not *Caldwell* – because it was based on an extremely formalistic assumption – that the state rule authorizing the representative action must be "similar" to Rule 23 of the Federal Rules of Civil Procedure. Thus, the Fourth Circuit held that "West Virginia Civil Rule of Procedure 23 would satisfy the 'similarity' requirement," but state attorney-general actions do not because the plaintiffs in such actions need not demonstrate numerosity, typicality, and the like. *Id.* at *4. Nothing in CAFA requires this.

4

*generally* Mot. at 14-24.)  But Plaintiff's promise not to seek restitution (*see id.* at 19) is not dispositive.

At bottom, the identity of the real party in interest is a function of substantive state law and the relief it defines.  *See, e.g.*, *Wynn ex rel. Ala. v. Philip Morris, Inc.*, 51 F. Supp. 2d 1232, 1235 (N.D. Ala. 1999) ("Federal courts look to the substantive law of the state . . . to determine whether an individual, although a party to the lawsuit, is a real and substantial party to the litigation.") (citing *Jones v. Griffith*, 688 F. Supp. 446, 450 (N.D. Ind. 1988), and Charles Alan Wright & Arthur Miller, *Fed. Practice & Procedure* § 1544, at 340-42 (1971)).  In particular, "[t]he real party in interest is the person holding the substantive right sought to be enforced, and not necessarily the person who will ultimately benefit from the recovery."  *Farrell Constr. Co. v. Jefferson Parish*, 896 F.2d 136, 140 (5th Cir. 1990).

Under the terms of the KCPA, the people of Kentucky are the real parties in interest as to the declaratory and injunctive relief sought in this case.  There is no question that it is Kentucky consumers who "hold[] the substantive right sought to be enforced," *id.*, and the Kentucky Legislature has expressly stated that the intended beneficiaries of the KCPA's provisions are "the consumer public and the ethical sellers of goods and services," KRS § 367.120(1).

The fact that Plaintiff is not seeking restitution does not change the analysis.  As other courts have explained, a representative party seeking declaratory and injunctive relief may be only a nominal party, acting to vindicate the rights of its members, who are the real parties in interest.  In *Nevada v. Bank of America Corp.*, for example, the State of Nevada brought suit against Bank of America and its subsidiaries (collectively, "Bank of America"), alleging that Bank of America had misrepresented the availability of mortgage modifications to its customers, and seeking relief for "potentially thousands of individual Nevadans on a single cause of action

under Nevada's Deceptive Trade Practices Act ('DTPA')." No. 3:11-cv-00135, 2011 U.S. Dist. LEXIS 72601, at *2 (D. Nev. July 5, 2011). The State sought a broad range of relief: an injunction, a declaration, civil penalties, restitution, investigation costs, and attorneys' fees. *Id.*

Bank of America removed under CAFA, invoking *Caldwell* and similar cases – and arguing that the suit was a de facto class action brought on behalf of Nevada consumers as to all aspects of relief. *Id.* The State moved to remand on grounds similar to those urged here, but the district court denied the motion. In its ruling, the court explained that, "when a state sues on behalf of individuals to obtain relief that the individuals **could have** obtained on their own, the state is not the real party in interest, regardless of whether, and in fact especially where, the state sues to further the public welfare." *Id.* at *10 (citing *Dep't of Fair Emp't and Hous. v. Lucent Techs., Inc.*, 642 F.3d 728, 738-39 (9th Cir. 2011) (holding that a state's interest in an enforcement suit is too "generalized" and that the aggrieved citizens who will benefit from the relief have the more concrete interests that matter for diversity purposes)). Moreover, although the State's allegations included claims for restitution, the court expressly rejected any distinction between "monetary or equitable" relief, explaining that "a state does not become a real party in interest for the purposes of diversity simply because it seeks equitable remedies applicable to unnamed persons, so long as those persons could obtain such relief on their own if they were to seek it." *Id.* at *12. Thus, "[b]ecause the persons on whose behalf the State seeks ***declaratory, injunctive***, and monetary relief in this case could bring their own actions to obtain such relief . . . the consumers are the real parties in interest." *Id.* at *13-14 (emphasis added).

Similarly, in *College of Dental Surgeons v. Connecticut General Life Insurance Co.*, the U.S. Court of Appeals for the First Circuit addressed the question whether an action brought by an entity suing on behalf of its members should be considered a "class action" for CAFA

purposes. 585 F.3d 33 (1st Cir. 2009). The suit was brought by the College of Dental Surgeons of Puerto Rico – an entity created by the Puerto Rico Legislature and to which nearly all licensed dentists in Puerto Rico must belong. *Id.* at 36. By statute, the College was authorized to sue and was required to "'protect' its members' interests as those interests relate to the practice of dentistry." *Id.* The College's complaint alleged that the two insurance-company defendants "engage[d] in questionable and sometimes fraudulent practices . . . to the dentists' economic detriment." *Id.* It sought a declaratory judgment, injunctive relief, and damages. *Id.* at 36-37. The district court remanded the case, holding that any purported "class" was "not sufficiently define[d]" by the complaint. *Id.* at 39.

The First Circuit granted the defendants' petition for interlocutory appeal and reversed. In defending the remand order, the College argued that the district court had concluded that a class could never be certified because the College, "as an association of dentists rather than an individual dentist, cannot itself be a member of a certifiable class." *Id.* at 40. The First Circuit rejected this contention, holding that the College could sue in a representative capacity. *See id.* The only requirement for such a representative role was that the College invoke the rights of its members in such a manner that their intervention was not required. *Id.* And the court held that the College's claims for "injunctive and declaratory relief" satisfied this requirement – noting, as relevant here, that such relief "would inure to the benefit of all the affected dentists." *Id.* at 41.

Here too, Plaintiff seeks relief that "would inure to the benefit of" consumers and prescribers of prescription medicine, *id.* – not himself. Indeed, the complaint is bereft of any allegation that the Commonwealth or its Attorney General was injured by Merck's alleged conduct. Instead, it repeatedly alleges that Merck's conduct affected "***both consumers and healthcare professionals***." (Compl. ¶ 13 (emphasis added); *see also id.* ¶ 21 ("When promoting

Vioxx® directly to **consumers and health care professionals**, Merck materially misrepresented the cardiovascular safety of Vioxx®") (emphasis added); *id.* ¶ 33 (alleging Merck's conduct had "the tendency or capacity, or . . . [was] likely, to mislead **prescribers, purchasers, and recipients** of Vioxx") (emphasis added).)

Plaintiff seeks to distinguish *College of Dental Surgeons* on the asserted ground that "the Commonwealth need not prove that any Kentucky consumer was actually misled by Merck's conduct to succeed on its Kentucky CPA claim." (Mot. at 17.) But that is not relevant. It was enough in *College of Dental Surgeons* that the College's members "could assert individual claims for injunctive and declaratory relief arising out of the challenged" practices. 585 F.3d at 41; *accord Bank of Am.*, 2011 U.S. Dist. LEXIS 72601, at *13-14 ("Because the persons on whose behalf the State seeks ***declaratory, injunctive***, and monetary relief in this case could bring their own actions to obtain such relief . . . the consumers are the real parties in interest") (emphasis added). That is certainly the case here. After all, the rights that the Attorney General seeks to enforce – set forth in KRS § 367.170 – are the same rights that consumers enforce when they bring their own KCPA claims. *Compare* KRS § 367.190 (authorizing Attorney General suits to enjoin "any method, act or practice declared by KRS 367.170 to be unlawful") *with id.* § 367.220 (authorizing consumer suits to recover money or property obtained as a result of use "of a method, act or practice declared unlawful by KRS 367.170"). And there is no question that a consumer can seek the same relief sought by the Attorney General here – at least with respect to declaratory relief and attorneys' fees. *See id.* § 367.220(3) (authorizing consumers to seek attorneys' fees); *id.* § 418.040 (authorizing suit for "declaration of rights, either alone or with other relief"); *Corder v. Ford Motor Co.*, 285 F. App'x 226, 227 (6th Cir. 2008) (reversing summary judgment for defendant in KCPA suit in which plaintiffs sought declaratory relief,

among other remedies). In fact, the Attorney General is not authorized to seek attorneys' fees under the KCPA at all.[3] Consumers may also be able to seek injunctive relief, and some purported consumers have attempted to do so. *See Spencer v. Ky. Tax Bill Servicing, Inc.*, No. 2009-CA-000792-MR, 2010 Ky. App. Unpub. LEXIS 496, at *4 (Ky. Ct. App. June 18, 2010).

Plaintiff broadly asserts that "[n]o provision of Kentucky law permits individuals to seek the relief sought by the Commonwealth" (Mot. at 16 n.6), but the only provision cited to support that blanket statement relates to penalties. Merck agrees that consumers cannot seek penalties on their own under the KCPA, but they *can* seek other forms of relief sought here by Plaintiff.

Plaintiff also contends that *Commonwealth ex rel. Stumbo v. Marathon Petroleum Co.*, No. 3:07-cv-30, 2007 WL 2900461 (E.D. Ky. Oct. 3, 2007), establishes that the Commonwealth is the real party in interest when bringing claims for declaratory and injunctive relief under the KCPA. (Mot. at 15-16.) But *Marathon* applied a different standard from the one adopted by the Fifth Circuit. As Plaintiff acknowledges, *Marathon* looked at the "'complaint as a whole'" rather than determining whether Kentucky consumers were the real parties in interest as to at least one of the theories of relief, as required under *Caldwell*. (Mot. at 16 n.5 (acknowledging *Marathon*'s approach); *id.* at 13-14 n.4 (acknowledging that the Fifth Circuit takes a different approach).) Had *Marathon* been decided under the Fifth Circuit approach, federal jurisdiction would have been proper because, as the *Marathon* court acknowledged, Kentucky consumers were the real parties in interest as to the claims for restitution in that case. 2007 WL 2900461, at *5.

---

[3] The viability of the Attorney General's claim for those fees is irrelevant to identifying the real party in interest. *See Caldwell*, 536 F.3d at 429 ("assuming arguendo" that Louisiana had authority to assert claims for treble damages to decide the "narrow issue" of "who are the real parties in interest" for purposes of diversity jurisdiction).

*Marathon* did hold that the Commonwealth was the real party in interest as to declaratory and injunctive relief, but it was wrong in this respect as well.[4]  The court reasoned that the Commonwealth must be the real party in interest as to such relief because it would benefit all consumers, rather than a particular group of them.  But as the *Bank of America* and *Lucent Technologies* decisions demonstrate, this type of reasoning fundamentally confuses the interests that are necessary to give a State ***standing*** with those that are necessary to make it the ***real party in interest*** for diversity purposes.  As the Ninth Circuit explained in *Lucent Technologies*, "although 'the State has a governmental interest in the welfare of all its citizens . . . ,' these 'general governmental interest[s]' will not satisfy the real party to the controversy requirement for the purposes of defeating diversity because 'if that were so the state would be a party in interest in all litigation.'"  642 F.3d at 737 (quoting *Mo., Kan. & Tex. Ry. Co. v. Mo. R.R. & Warehouse Comm'rs*, 183 U.S. 53, 60 (1901)).  The same is true here.  Under Plaintiff's reasoning and that of *Marathon*, the Commonwealth would be the real party in interest in every consumer suit brought to enforce the KCPA – which is clearly not the case.  And in any event, *Marathon* said nothing at all about attorneys' fees, which are only recoverable by individual consumers, making them the real parties in interest as to that relief.

In short, Kentucky consumers are the real parties in interest as to Plaintiff's claims for declaratory relief and for attorneys' fees.  Accordingly, this suit qualifies as a "class action" for CAFA purposes and remand should be denied.

---

[4]    In reality, *Marathon* relied on authority discussing ***injunctive*** relief only, citing cases in which courts held that consumers' interests in injunctive relief is too attenuated because it "'goes beyond addressing the claims of previously injured organizations or individuals.'"  2007 WL 2900461, at *3 (quoting *Wis. v. Abbott Labs.*, 341 F. Supp. 2d 1057, 1063 (W.D. Wis. 2004)).  Even if that reasoning makes sense as to ***injunctive*** relief – and it is expressly rejected in the better-reasoned decisions of *Bank of America* and *Lucent Technologies* – it nonetheless ***does not*** make sense as to ***declaratory*** relief, at least the sort sought here, which looks retrospectively and thus could only pertain to alleged misconduct aimed at a discrete group of identifiable consumers.  (*See* Compl. at 7 (seeking a
*(cont'd)*

B.       **The Minimal-Diversity And Amount-In-Controversy Requirements Are Satisfied.**

CAFA's remaining elements – minimal diversity and an aggregate amount in controversy exceeding $5,000,000 – are also satisfied. Minimal diversity exists because Merck is a citizen of New Jersey, while the Kentucky consumers, i.e., the real parties in interest, are citizens of Kentucky. *See, e.g.*, *Caldwell*, 536 F.3d at 430. Accordingly, at least one proposed class member and one defendant are diverse, as required under 28 U.S.C. § 1332(d)(2)(A).

The amount-in-controversy requirement is also satisfied. CAFA extends jurisdiction to class actions "in which the matter in controversy exceeds the sum or value of $5,000,000." 28 U.S.C. § 1332(d)(2). Plaintiff has not denied that his suit seeks sums in excess of $5,000,000. As set forth in the notice of removal – and not denied by Plaintiff – the requested penalties alone could well exceed $5,000,000, inasmuch as Plaintiff seeks to penalize Merck for each of the more than 2 million prescriptions for Vioxx written by physicians in Kentucky. (Notice of Removal ¶ 30.)

But even apart from penalties, the requests for attorneys' fees and declaratory relief themselves satisfy the amount-in-controversy requirement. It is well established that "'attorneys' fees, penalties, statutory damages and punitive damages' [are included] in the amount-in-controversy calculation." *Dow v. AgroSciencies LLC v. Bates*, 332 F.3d 323, 326 (5th Cir. 2003) (quoting *Hartford Ins. Grp. v. Lou-Con, Inc.*, 293 F.3d 908, 912 (5th Cir. 2002)). Similarly, "the amount in controversy in an action for declaratory judgment is 'the value of the right to be protected or the extent of the injury to be prevented.'" *Hartford Ins. Grp.*, 293 F.3d at 911 (quoting *St. Paul Reinsurance Co. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998)). In

---

*(cont'd from previous page)*
declaration that Merck "committed repeated violations of KRS 367.170).") Accordingly, *Marathon* erred in treating
*(cont'd)*

11

measuring the "value of the right to be protected," the Court must consider the "'pecuniary consequences to those involved in the litigation.'" *Kirby v. Bank of Am.*, No. 2:09cv182-DCB-JMR, 2009 U.S. Dist. LEXIS 124229, at *12 (S.D. Miss. Jan. 6, 2009) (citing *Duberwicz v. Sweetwater Sav. Ass'n*, 595 F.2d 1008, 1014 (5th Cir. 1979)).  Thus, even if the judgment will be of no value to one of the parties in interest, it may yet have "value" for purposes of calculating the amount in controversy if it has a "pecuniary consequence" for the other parties.  *Id.*  In *Kirby*, for example, the plaintiffs sought a declaratory judgment invalidating a Note and Deed of Trust valued at $200,000.  *Id.* at *10-11.  Defendants held the note but were not entitled to any payment under it; thus, plaintiffs argued the amount in controversy was essentially nothing.  The court rejected this argument, explaining that "[w]hether the defendants are servicers of the Note or holders in due course is of no consequence to the amount in controversy determination" because the plaintiffs would "avoid a 'pecuniary consequence'" equal to the value of the note if they prevailed.  *Id.* at *12.

       The same is true here.  Although the Commonwealth is the real party in interest as to the penalties it seeks, those penalties are only available to the extent it prevails on its theory that Merck violated the KCPA – which is the premise of the claim for declaratory relief.  Thus, because Kentucky consumers are the real parties in interest with respect to the claim for declaratory relief, the "value of the right" in controversy is equal to the value of the penalties sought, even though that value will not be enjoyed by the consumers.  After all, if Merck prevails on the declaratory claims, it will "avoid a 'pecuniary consequence'" in the form of the penalties

---

*(cont'd from previous page)*
these forms of relief as interchangeable for purposes of determining the real parties in interest.

sought by the Commonwealth.  That benefit – plus the attorneys' fees at issue – far exceed $5,000,000.[5]

## CONCLUSION

For the foregoing reasons, the Court should deny the motion to remand.

Dated:  August 22, 2011

Respectfully submitted,

/s/ Dorothy H. Wimberly
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, LA 70130

Douglas R. Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth St., N.W.
Washington, DC 20005

---

[5]  Alternatively, removal is also justified on federal-question grounds.  As Merck set forth in its removal notice, 28 U.S.C. § 1331 establishes original federal jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States."  This includes jurisdiction over state-law claims that "necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities."  *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005).  Here, Plaintiff's allegations rest in part on claims that Merck failed to disclose studies to, and misled, the FDA.  (Compl. ¶¶ 10, 15, 19.)  Plaintiff argues that KCPA claims as a general matter need not prove an FDA violation, but here Plaintiff expressly links his KCPA claims in part to Merck's alleged failure to disclose "the results of Study 090 . . . to the FDA." (*Id.* ¶ 15.)  The question whether this could be a basis for liability under the KCPA turns on whether Merck was obligated to disclose Study 090 to the FDA – which is clearly a question of federal law.  Moreover, unlike the authority cited by Plaintiff – which arose in the context of claims that certain acts violated both Texas law and Federal Trade Commission rules (Mot. at 5 (citing *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 918 (5th Cir. 2001))) – the resolution of the federal question here is indeed "necessary" to Plaintiff's claims; if Merck was not obligated to disclose certain studies to the FDA, Kentucky **cannot** subject Merck to liability under the KCPA for doing so.  *See generally Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341 (2001).  For this reason too, the motion should be denied.

13

John H. Beisner
Jessica Davidson Miller
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
1440 New York Avenue, N.W.
Washington, DC 20005

ATTORNEYS FOR MERCK SHARP & DOHME CORP.

1067468v.1

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Defendant's Opposition to Motion to Remand has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 22nd day of August, 2011.

        */s/ Dorothy H. Wimberly*
        Dorothy H. Wimberly, 18509
        STONE PIGMAN WALTHER
        WITTMANN L.L.C.
        546 Carondelet Street
        New Orleans, Louisiana  70130
        Phone:  504-581-3200
        Fax:     504-581-3361
        dwimberly@stonepigman.com

        Defendants' Liaison Counsel

1067468v.1