**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | | |
|---|---|---|---|
| IN RE: | **VIOXX** | : | **MDL NO. 1657** |
| | **PRODUCTS LIABILITY LITIGATION** | : | |
| | | : | **SECTION: L** |
| | | : | |
| | | : | **JUDGE FALLON** |
| | | : | **MAG. JUDGE KNOWLES** |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

**REPORT AND RECOMMENDATION OF SPECIAL MASTER**
**ON ALLOCATION OF COMMON BENEFIT ATTORNEY FEES**

**PROCEDURAL AND FACTUAL HISTORY**

A global settlement of $4.85 billion was reached in this matter, and the settlement agreement was executed on November 9, 2007. The Master Settlement Agreement (MSA) provided for the appointment of a Fee Allocation Committee (FAC) to be responsible for recommending to the Court the allocation of awards of attorneys' fees from the Settlement Fee and Cost Account as per Section 9.2.4 of the MSA. On November 20, 2007, the Court issued Pre-Trial Order No. 32, appointing the members of the FAC. The Court thereafter entered Pre-Trial Order 6D which stated that the "Allocation Committee shall evaluate common benefit counsel's contributions, using objective measures and the committee's subjective understanding of the relevant contributions of counsel toward generating the Settlement Fund in accordance with established fee jurisprudence, and make a recommendation to the Court for consideration in consultation with Judges Chaney, Higbee and Wilson." Pre-Trial Order 6D further stated that the Johnson factors are applicable to this litigation and should be considered in addition to other matters considered by the Courts to evaluate fee allocations. Pre-Trial Order 6D also provided guidelines and criteria to be considered by the Allocation Committee. Pre-Trial Order 6D further

1

stated that on or before October 31, 2008, any attorney who wanted his time to be considered for an allocation of any common benefit award had to submit an affidavit describing the firm's common benefit contribution.  It also provided a procedure for submitting attorneys to give an oral presentation to the FAC in various cities.

The FAC thereafter received and reviewed affidavits from a majority of the common benefit fee applications.  The FAC also received and reviewed time submissions (Deposition of Andy Birchfield on May 6, 2011 at p. 89) and reports prepared by Philip Garrett, the Court-Appointed CPA (Deposition of Andy Birchfield on May 6, 2011 at p. 93).

The Court received a monthly report from the Court-Appointed CPA as to time submissions that were being made (Transcript of Monthly Status Conference on January 6, 2011 at p. 13).  The Court also suggested to the FAC that it come up with categories of work so that there would be more objectivity in the process.  The Court further suggested to the FAC that it prioritize the categories and assign points to the various categories (Transcript of Monthly Status Conference on January 6, 2011 at pp. 15-16).  The FAC came up with a point system as suggested by the Court and, that point system was utilized by the FAC in the allocation process (Deposition of Andy Birchfield on May 6, 2011 at pp. 82-86).

The FAC conducted hearings in Atlantic City, New Orleans, Houston and Los Angeles where common benefit applicants were given the opportunity to make oral presentations in support of their applications.   Thereafter, the FAC produced a preliminary allocation recommendation which was presented to Judge Fallon for his review.  Pursuant with the terms of Article 9 of the MSA, the FAC also consulted with Judge Higbee, Judge Chaney and Judge

Case 2:05-md-01657-EEF-DEK   Document 63803   Filed 08/26/11   Page 3 of 22

Wilson regarding the preliminary allocation recommendations (Deposition of Andy Birchfield on May 6, 2011 at pp. 110-111).

The FAC communicated the amount of its preliminary recommendations to each firm. The applicants were then afforded 14 days to object to the preliminary recommendations and to set forth in writing the basis for their objection.  In addition, the applicants who had objections were afforded the opportunity to meet with the FAC.  Many of the objectors did meet with the FAC and expressed their views.   The FAC thereafter made some adjustments in its recommendations and presented its final recommendations to the Court (FAC Exhibit I).  The Court posted these recommendations on its website on January 20, 2011.  The Court then ordered that any objections to the recommendations should be filed on or before February 4, 2011.  Of the 108 applicants for common benefit attorney fees, 18 firms filed objections.

In an Order dated February 28, 2011, the Court expanded the duties of the Special Master to perform services in connection with allocating common benefit attorneys' fees.  In that Order, the Court stated "The Court now refers the recommended allocations and objections to the Special Master, who will consider the materials and the objections in accordance with the Court's procedures and prepare an impartial second recommended allocation to the Court."  In that same Order, Judge Fallon directed the Special Master to make recommendations to the Court as to the allocation of the common benefit award of $315,250,000[1].

The Special Master scheduled and held an in-person conference with counsel to discuss a procedure to be instituted in the Special Master proceedings.  At that conference, liaison counsel

---

[1] An issue has been raised as to a deduction from the $315,250,000.  This issue is not before the Special Master and is to be considered by the Court.

3

for the objectors requested permission to meet with the Court-Appointed CPA. The Special
Master granted the requested permission and the liaison counsel subsequently met with Mr.
Garrett. At that same conference, the Special Master was advised that the FAC had already
produced or given access to the following documents:

a)     MDL trial package;

b)     Depositions as reflected in trial package;

c)     Accountings of Court-Appointed CPA, including the compilation by category and
time keeper prepared by Court-Appointed CPA Philip Garrett, of the hours
reviewed by Mr. Garrett for the time period of January 1, 2009 through July 31,
2009.

d)     Written presentations of common benefit fee applicants;

e)     Transcripts of oral presentations of common benefit fee applicants;

f)     Court filings and order, including pre-trial order 6(D);

g)     Transcript of January 6, 2011 Status Conference;

h)     Grid and point system utilized by Fee Committee;

i)     Affidavits of Phil Garrett, Court-Appointed CPA;

j)     Transcription of private proceedings on July 27, 2010 between counsel;

k)     Preliminary List of Recommended common benefit fee allocations;

l)     FAC Recommendations on common benefit fee allocations to the Court which
was posted on the Court's website on January 20, 2011;

m)     FAC Recommended Modification on common benefit fee allocations; and

n)     Acceptance and objection forms to common benefit fee applicants.

On March 31, 2011, the Special Master issued a Report and Scheduling Order (See
attached Exhibit SM 1) on jurisdictional, process, and discovery issues. In that same report, the

Case 2:05-md-01657-EEF-DEK   Document 63093   Filed 08/26/11   Page 5 of 22

Special Master set out a scheduling order and established hearing dates of May 9-13, 2011.  The report permitted the objectors to depose a designated member of the FAC.  The Order further provided that post-hearing the Special Master would determine if additional testimony or production of documents was necessary.  Pursuant to the requests of the parties, the Special Master issued a Hearing Protocol (Exhibit SM 2).

On May 6, 2011, a nine hour deposition of Andy Birchfield, the FAC designee, was taken by the objectors.  The actual hearings were commenced on May 9, 2011 and continued each day thereafter until completed on May 13, 2011.  At the conclusion of the hearings, there were only 4 objections, out of the 18 objections filed, left to be considered by the Special Master.  At that time, it was the conclusion of the Special Master that based on the record, additional testimony and production of documents was not necessary.

### ROLE AND INVOLVEMENT OF COURT-APPOINTED CPA

In Pre-Trial Order No. 6, the Court approved the retention of Philip Garrett, CPA of the accounting firm of Wegmann-Dazet to assist and provide accounting services to Plaintiffs' Liaison Counsel, the Plaintiffs' Steering Committee, and the Court.  The Plaintiffs' Steering Committee and other attorneys were to submit their time and expenses on a monthly basis to the Wegmann Firm in accordance with the requirements of that Order.  On April 10, 2008, the Court entered Pre-Trial Order No. 6(C).  That Order was directed to the law firm members of the Negotiating Plaintiffs' Counsel (NPC) and common benefit counsel representing plaintiffs in state court Vioxx matters who were seeking an award of common benefit fees from the proceeds of the MSA, other than those attorneys who were already subject to Pre-Trial Order No. 6.

Those attorneys covered by the Order were also to report their time and expenses to the Wegmann Firm in accordance with the requirements of Pre-Trial Order No. 6.  Mr. Garrett made no subjective judgment regarding the value of any submitted time (Transcript of Hearing on May 12, 2011 at pp. 176-177).

As part of his duties, Mr. Garrett calculated and provided the FAC with a firm by firm lodestar calculation (Transcript of Hearing on May 12, 2011 at pp. 159, 163).  The FAC confirmed that they considered these calculations (Deposition of Andy Birchfield on May 6, 2011 at pp. 91-94) and the Special Master confirms that he has reviewed these calculations.

The reports of Mr. Garrett were given to Judge Fallon on a monthly basis and the Court was continuously kept abreast of the submissions during the entire course of the proceedings.

## GOVERNING LAW AND PRINCIPLES

In a class action settlement, the District Court has an independent duty under Federal Rule of Civil Procedure 23 to the class and the public to assure that attorneys' fees are reasonable and divided fairly among plaintiffs' counsel.  Strong v. Bellsouth Telecommunications, Inc., 137 F.3d 844 (5th Cir. 1998).  The Court must distribute the fee award among the various plaintiffs' attorneys, which may include class counsel, court designated lead and liaison counsel, and individual plaintiffs' counsel (Manual for Complex Litigation, Sec. 14.211 [4th ed.2004]).  The Court's duty to review attorney fees is no less compelling in common fund cases.  In Re: General Motor Corp. Pick-Up Truck Fuel Tank Products Liability Litigation, 55 F.3d 768, 820N. 39 (3d.Cir. 1995) and In Re: High Sulfur Content Gasoline Products Liability Litigation, 517 F.3d 220 (5th Cir. 2008, 17N9).

6

Case 2:05-md-01657-EEF-DEK   Document 63393   Filed 08/27/11   Page 7 of 22

The Fifth Circuit utilizes the "lodestar method" to calculate attorneys' fees.  Cooper Liquor, Inc. v. Adolph Coors Co., 684 F.2d 1087, 1092 (5th Cir. 1982).   The lodestar is then computed by multiplying the number of hours reasonably expended by the reasonable hourly rate.  The Court may then adjust the lodestar upward or downward depending on the respective weights of the 12 factors set forth in Johnson v. Georiga Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974).

Also instructive is the following reasoning of the Court in Turner v. Murphy Oil USA, Inc., 472 F.Supp.2d 830 (ED La. 2007):

> "In recognition of the noted disadvantages of the lodestar method as the principle means for determining attorneys' fees, such as the taxing of judicial resources by examining every time entry and billing rate for each attorney, a lodestar analysis is rough and more abbreviated is appropriate for a cross-check.
>
> > The lodestar cross-check calculation need entail neither mathematical precision nor bean counting.  For example, a lodestar cross-check need not scrutinize each time entry; reliance on representation by class counsel as to class counsel may be sufficient…Furthermore, the lodestar cross-check can be simplified by use of a blended hourly rate…"

It is clearly within the Court's discretion to appoint a committee of attorneys to propose a fee allocation to the Court for its consideration.  In Re: Copley Pharmaceutical, Inc., 50 F.Supp

Case 2:05-md-01657-EEF-DEK   Document 63309-1   Filed 08/26/11   Page 8 of 22

2d 1141 CD.Wyo. 199, aff'd 232 F.3d 906 (10th Cir. 2000) and <u>In Re: High Sulfur</u>, supra. It is also clear that the Court must maintain judicial standards of transparency, impartiality, procedural fairness, and ultimate judicial oversight.  <u>In Re: High Sulfur</u>, supra.


## <u>IMPLEMENTATION OF LAW AND PRINCIPLES</u>

In Pre-Trial Order No. 6(D) (See attached Exhibit SM 3), the Court provided a very detailed procedure that was to be followed with regard to the allocation of common benefit attorneys' fees.  In that Order, the Court specifically noted that existing fee jurisprudence and in particular the <u>Johnson</u> factors were to be considered.  The Order also stated "The above guidelines provided direction, but do not create entitlements and do not override the independent judgment and discretion of the Allocation Committee and the Court."

At the Monthly Status Conference held by the Court on January 6, 2011, Judge Fallon laid out the procedure that had been instituted and the guidance he had given to the FAC in an effort to provide as much objectivity as possible (Transcript of Monthly Status Conference on January 6, 2011 at pp. 12-20).  In that same conference, he noted that he had suggested to the FAC that it try to come up with categories of work, prioritize them and assign points for the categories.  The result of his input and suggestion was the point system that was created and used by the FAC (Deposition of Andy Birchfield on May 6, 2011 at pp. 82-86).  At that same conference, Judge Fallon stated that he would appoint a Special Master to make a separate recommendation to the Court on the fee allocation (Transcript of Monthly Status Conference on January 6, 2011 at p. 17).  He further stated "I will then have the insiders recommendation, meaning the Fee Allocation Committee, the people who know who did what and what the

significance is, and their suggestion based on objective criteria, I will then have a Special Master who has no dog in that hunt to give me his recommendation and I will look at that material and I'll make my own judgment and I'll express myself" (Transcript of Monthly Status Conference on January 6, 2011 at pp. 17-18).

The Court expanded the duties of the Special Master on February 28, 2011 and directed the Special Master to make recommendations to the Court as to the allocation of the common benefit award of $315,250,000.  The Special Master thereafter instituted and proceeded with the process that is set forth in the above Procedural and Factual History.

## FACTORS CONSIDERED BY THE FAC

All of the time submissions of those attorneys who sought common benefit attorney fees were maintained and are part of the record in this matter (FAC Exhibit 4).  In making those submissions, the submitting attorney certified "I certify that the time documented is accurate and correct and was incurred for the common benefit of claimants in MDL 1657" (Transcript of Hearing on May 13, 2011 at pp. 10-11).  In evaluating these hours, the FAC found that there was a wide gap as to what it considered as common benefit hours and what was certified as common benefit hours (Transcript of Hearing on May 13, 2011 at p. 11).  As a result of this difference, the FAC concluded that it could rely on the records to get an idea of what the firm was working on, but it was not a reliable document alone to make an allocation (Transcript of Hearing on May 13, 2011 at p. 12).

Pursuant to the suggestion of Judge Fallon, the FAC developed and implemented a Point System Grid, categories of work, prioritized those categories and established a points system

Case 2:05-md-01657-EEF-DEK   Document 63821   Filed 08/26/11   Page 10 of 22

(Deposition of Andy Birchfield on May 6, 2011 at pp. 82-86).  In applying this points system, consideration was given to submitted hours, Pre-Trial Order No. 6 criteria and the Johnson factors (Deposition of Andy Birchfield on May 6, 2011 at pp. 114-119).

The FAC also received CPA Garrett's report that contained a firm by firm lodestar calculation and it utilized these calculations as a lodestar cross-check (Deposition of Andy Birchfield on May 6, 2011 at pp. 90-97).

The FAC also considered the affidavits and conferences with the common benefit applicants in making its recommendations (Transcript of Hearing on May 13, 2011 at p. 14).

## FACTORS CONSIDERED BY THE SPECIAL MASTER

The Special Master has reviewed the court record in this case, including the numerous pre-trial orders that have been entered by the Court.  The Special Master also reviewed the voluminous time records that were introduced into evidence, along with affidavits of common benefit applicants, transcripts of conferences with applicants and the transcripts of monthly status conferences held by the Court.  In addition, the Special Master has reviewed the deposition of Andy Birchfield taken on May 6, 2011, the transcripts of the Special Master hearings held May 9-13, 2011 and the exhibits that were admitted into evidence.

The Special Master has also reviewed and considered the briefs and arguments that have been submitted.

In submitting recommendations to the Court, the Special Master has considered and evaluated all of the above, the Johnson factors and the lodestar calculations as they relate to all applicants, the acceptance of the recommended final awards of the FAC by each of the 104 of the

108 common benefit applicants (See attached Exhibit SM 4), the governing law and principles, and his extensive knowledge of the legal work that was done in this case.

## ALLOCATION PROCESS

As reflected in the Special Master's Report of March 31, 2011, I concluded that the fee allocation process was fully transparent and proper.  The testimony and evidence at the Special Master hearings confirms that initial finding and report.  As indicated in my earlier report, the issue is whether or not the process was fairly and properly applied.

## ESCOBEDO, TIPPIT & CARDENAS
## AND KATHRYN SNAPKA OBJECTIONS

Since both submissions rely very heavily on their work in the Garza case that was tried in a Texas State Court and which resulted in a verdict of $32,000,000 that was reduced to $7,000,000, the Escobedo and Snapka objections were considered together.  Escobedo submitted 14,866.75 hours in support of his common benefit submission.  Snapka submitted 2,926.5 hours in support of her common benefit submission[2].  The FAC initially recommended an award of $1,164,918 to Escobedo and $582,458.99 to Snapka.  Escobedo and Snapka claimed that they were entitled to an award of $31,000,000.  After further consideration, the FAC recommended an award of $0 to Escobedo and $75,000 to Snapka.  The FAC had rejected the work that was done on the Garza case.

---

[2] Snapka testified that a pure lodestar analysis is not appropriate for attorneys who tried and won cases (Transcript of Hearing on May 11, 2011 at p. 191).

Escobedo claimed no common benefit contribution apart from his work in the <u>Garza</u> case (Deposition of Andy Birchfield on May 6, 2011 at p. 199). Escobedo claims his firm is entitled to $20,000,000 for the work his firm did in the <u>Garza</u> case (Transcript of Hearing on May 9, 2011 at p. 64). Snapka claims she is entitled to $12,000,000 for her work which included the <u>Garza</u> case (Transcript of Hearing on May 11, 2011 at p. 221).

One contention of the FAC was that Escobedo and Snapka had opted the <u>Garza</u> case out of the settlement program and, therefore, there should be no credit given for their work in that case. The testimony at the hearing does not support the FAC's contention that Escobedo and Snapka opted the <u>Garza</u> case out of the settlement with Merck. On the other hand, the settlement agreement clearly provides that the <u>Garza</u> case is not part of the settlement program. The end result is that the <u>Garza</u> attorneys would be entitled to whatever attorney fees are generated in the <u>Garza</u> case and they would not be obligated to pay any common benefit assessment in the present action. At the Special Master hearing, Escobedo testified that if they were ultimately successful and were paid in the <u>Garza</u> case, they were willing to pay the common benefit assessment (Transcript of the Hearing on May 11, 2011 at p. 46). Since the <u>Garza</u> case is excluded from the settlement agreement, the assessment is not an obligation they would owe. This circumstance must also be considered with the fact that the <u>Garza</u> attorneys elected to remand the case to state court and that Snapka had sought exemption from the common benefit assessment (Transcript of Hearing on May 11, 2011 at pp. 180-182). With these set of facts, the issue before the Special Master is what credit, if any, should be given to the work performed in the <u>Garza</u> case.

A review of the record, exhibits and transcripts of meetings with the FAC reveals that two other law firms who actually tried cases in state courts that were excluded from the

12

settlement agreement received recommended awards. The Locks Firm received a recommended award of $1,700,000 and the Heninger, Garrison & Davis Firm received a recommended award of $1,300,000 (See attached Exhibit SM 4). It is the finding and recommendation of the Special Master that these two firms represent comparable situations and serve as a reasonable and just basis for a recommended award to Escobedo and Snapka for their work in the <u>Garza</u> case.

It is the finding and recommendation of the Special Master that a total of $1,450,000 should be awarded for the work performed by Escobedo and Snapka in the <u>Garza</u> case. As between Escobedo and Snapka, an analysis of the testimony demonstrates that a division of the recommended award between the attorneys for work in the <u>Garza</u> case is required.

Snapka prepared and handled the direct testimony of Dr. Simonini in the <u>Garza</u> trial. Mr. Hockema did the general voir dire and Snapka did the specific voir dire. Snapka also did the direct examination of two sons. She also cross-examined Dr. Wheeler and prepared for the anticipated testimony of Dr. Alise Reicin. Snapka was also involved in the remand proceedings of the <u>Garza</u> case (Transcript of Hearing on May 11, 2011 at p. 110). In describing her involvement in the case as compared to Hockema and Escobedo, Snapka said they "were leaps and bounds ahead of me" (Transcript of Hearing on May 11, 2011 at p. 118). Hockema stated that Snapka had a limited role in the case (Deposition of Andy Birchfield on May 6, 2011 at p. 183). Without question, the bulk of the work in the <u>Garza</u> case was done by the Escobedo interest.

It is the finding and recommendation of the Special Master that an appropriate and just division of the $1,450,000 recommended award for work in the <u>Garza</u> case is $1,087,500 to Escobedo[3] and $362,500 to Snapka.

Snapka performed common benefit work that was beyond the work she did in the <u>Garza</u> case. This work included her efforts for a period of time in her role as Notice Counsel in Texas, appearances and input at MDL status conferences, her efforts on use of retained blood and limited briefing and participation in the preemption-related issues. For her work on these matters Snapka should receive an additional compensation. It is the finding and recommendation of the Special Master that an appropriate and just award for this additional common benefit work is $150,000 for a total award of $512,500.

It should also be noted that under the Order and Reasons of Judge Fallon dated August 27, 2008, Escobedo and Snapka received the benefit of the 80% set-aside of attorney fees for the work they performed in advocating the claims of their individual clients who were part of the settlement program.

## BRANCH OBJECTION

The Branch Firm submitted 7,087.5 hours in common benefit time (Transcript of Hearing on May 11, 2011 at p. 32). The Firm contends that since a total of 562,943.55 common benefit hours was submitted and its submission amounted to 1.2523% of the total hours, the Firm should be awarded 1.2523% ($1,394,875.75) of the common benefit fund (Transcript of Hearing on

---

[3] Evaluation was made of Escobedo's submitted time of 250 hours for reviewing the transcript in the <u>Ernest</u> case (Transcript of Hearing on May 9, 2011 at pp. 60-61, 77) and multiple entries for review of same documents by multiple attorneys (Transcript of Hearing on May 9, 2011 at pp. 68-73).

May 11, 2011 at p. 32). The FAC initially recommended an award of $281,251.84 to the Branch Firm and after a subsequent presentation to the FAC, the recommended award to Branch was reduced to $0.

On May 16, 2005, Branch was appointed in the MDL as a member of the MDL State Liaison Committee to facilitate the coordination of MDL 1657 with State Vioxx cases (Pre-Trial Order No. 10 dated May 16, 2005). In October of 2005, Branch resigned his position as a member of the MDL State Liaison Committee (Transcript of Hearing on May 11, 2011 at p. 16). During the interim period of April 2005 to October 2005, the Branch Firm time submissions reflect that Branch attended some status conferences and reviewed pre-trial orders (FAC Exhibit 4 and Transcript of Hearing on May 11, 2011 at p. 46). In the fall of 2005, the Branch Firm worked on the 11 individual cases that the firm filed in New Jersey. The Branch Firm participated in depositions of the plaintiffs and family members of plaintiffs. There were no corporate, expert or marketing depositions taken and the Branch Firm did not try a case (Transcript of Hearing on May 11, 2011 at pp. 46, 72). The time entries clearly demonstrate that the bulk of the time that was submitted was for work expended on the firm's individual cases in New Jersey. Examples of such entries are "Pleadings – draft and review 9 N.J. complaints;" "Analysis/Strategy – Attend Vioxx litigation team meeting re: status of N.J. litigation;" "Research pro hac vice rules in N.J.;" and "Analysis/Strategy – Attend Vioxx Litigation team meeting re: status of N.J. Litigation" (FAC Exhibit 4).

In his Order and Reasons of August 27, 2008, Judge Fallon set the overall attorney fee at $1,552,000,000. In his Order and Reasons of October 19, 2010, he set the common benefit fee at $315,250,000, the result being that 80% of the total attorney fee was for handling individual

15

client matters and 20% was for common benefit work.  It is precisely this set-aside of 80% that compensates the Branch Firm for the work it performed in the New Jersey litigation.

It is the finding of the Special Master that the Branch Firm did do some common benefit work and for the amount and type of common benefit work the Branch Firm performed, it is the finding and recommendation of the Special Master that an appropriate and just award for the Branch Firm is $190,000.


## BECNEL OBJECTION

Becnel submitted 16,167 hours in common benefit time.  Of those hours, there were approximately 404 hours that are attributable to Becnel personally and 15,763 hours for other attorneys.  For this work, he advised the Fee Allocation Committee (FAC) that he should be awarded $4,041,875.  The FAC initially recommended an award of $97,076.50.  Subsequently, the Becnel recommended award was increased to $455,000.

A review of his time submissions, the transcript of the meetings with the FAC, the testimony at the hearing before the Special Master and consideration of the briefs that were filed reveal many undisputed facts and questionable time entries.

Becnel filed the first Vioxx case in a Louisiana Federal Court.  He also appeared before the Judicial Panel and argued for the assignment of the Multidistrict Litigation to Judge Fallon in the Eastern District of Louisiana.  He also on his own initiative and direction contacted and retained some experts.  He also organized a dinner at Antoine's Restaurant in New Orleans and invited attorneys who had expressed an interest in the Vioxx litigation.  Becnel also served as a judge for a mock jury trial in New Orleans.  Becnel also attended numerous status conferences.

16

Becnel also assigned attorney Rebecca Todd to work with Mark Robinson in California.  Mr. Robinson was a very active and effective participant in the Vioxx proceedings.  Becnel also was part of a group of attorneys who made arrangements to have contract attorneys perform document reviews in Alabama and New York.  Becnel took no depositions, tried no cases and was not involved in any leadership or trial role in this litigation.

An analysis of the Becnel time submissions, Pre-Trial Order 6D, and the testimony at Special Master hearing on May 12, 2011 result in the following conclusions:

1) Pre-Trial Order 6D states:  "Where work was performed by contract lawyers, those counsel are required to disclose the salary/wage of such contract lawyers to avoid paying windfall profits to such counsel."

2) The submission of Becnel did not disclose that the attorneys whose time he submitted were actually contract lawyers.  At the Special Master hearings Becnel testified that those attorneys were paid monthly ranging from $3,000 to $3,750 per month.  Assuming an average work week, $3,750 monthly would convert to $22.50 per hour (Transcript of Hearing on May 12, 2011 at p. 103).

3) There were 3,054.75 duplicate hours that there were submitted by Becnel and another attorney for the same work.  Compare FAC Exhibit 4 (Becnel time submissions for period January 2005 until May 2005) and FAC Exhibit 4 (Neblett, Beard and Arsenault time submission for the same time period) and see also (Transcript of Hearing on May 12, 2011 at pp. 104-111).   The other submitting attorney did make the disclosures required by Pre-Trial Order 6D and those hours were considered in recommending an award for common benefit

Case 2:05-md-01657-EEF-DEK Document 63893 Filed 08/26/11 Page 18 of 22

compensation. Becnel claims that a mistake was made in two different submissions being made for the same work. It is the finding of the Special Master that a mistake was made, but the fact remains that errors were made and that Becnel did not make the disclosures as required by Pre-Trial Order 6.

4) Becnel submitted over 500 hours for time expended by Margaret Parker (FAC Exhibit 4). At the Special Master hearing, Becnel admitted that he did not know Margaret Parker (Transcript of Hearing on May 12, 2011 at pp. 111-112, 127).

5) At the Special Master hearing, Becnel admitted that there were numerous entries that were submitted as common benefit time that were actually for work on individual cases and that this work should not be given common benefit consideration (Transcript of Hearing on May 12, 2011 at pp. 113-116, 123).

Based on the actual amount and type of common benefit work performed by Becnel, it is the finding and recommendation of the Special Master that an appropriate and just award for the Becnel Firm is $270,000.

## RECOMMENDATION

After due consideration of the above, I submit the following separate and independent recommendation to the Court, as set forth in the attached Exhibit SM 5, for the allocation of the common benefit attorney fees in the total amount of $315,250,000.

Lafayette, Louisiana, this 27th day of June, 2011.

/s/ PATRICK A. JUNEAU
PATRICK A. JUNEAU
Special Master
1018 Harding Street, Suite 202
Lafayette, LA 70503
Telephone: (337) 269-0052
Facsimile: (337) 269-0061
Email: paj@juneaudavid.com

Case 2:05-md-01657-EEF-DEK Document 63293-1 Filed 08/26/11 Page 20 of 22

## CERTIFICATE OF SERVICE

I hereby certify that, on June 27, 2011, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all known counsel of record who are participants.  I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the following non-CM/ECF participants:

Russ M. Herman
Herman, Herman, Katz & Cotlar
820 O'Keefe Avenue
New Orleans, LA  70113

Phillip A. Wittmann
Stone, Pigman, Walther & Wittmann
546 Carondelet Street
New Orleans, LA 70130

Christopher A. Seeger
Seeger Weiss
One William Street
New York, NY 10004

Daniel E. Becnel, Jr.
Becnel Law Firm
Post Office Drawer H
Reserve, LA 70084

Robert E. Arceneaux
Robert E. Arceneaux, LLC
47 Beverly Garden Drive
Metairie, LA 70001

Turner W. Branch
The Branch Law Firm
2025 Rio Grande Blvd. NW
Albuquerque, New Mexico 87104

Margaret E. Woodward
Attorney at Law
3701 Canal Street, Suite C
New Orleans, LA 70119

Joseph M. Bruno
Bruno & Bruno, LLP
855 Baronne Street
New Orleans, LA 70113

Hon. Pascal F. Calogero, Jr.
Ajubita, Leftwich & Salzer, LLC
1100 Poydras Street, Suite 1500
New Orleans, LA 70163-1950

Cohen, Placitella and Roth
c/o Mr. Robert E. Arceneaux
47 Beverly Garden Drive
Metairie, LA 70001

Sol H. Weiss
Gregory S. Spizer
Anapol, Schwartz, Weiss, Cohan,
Feldman and Smalley, PC
1710 Spruce Street
Philadelphia, PA 19103

Rebecca A. Cunard
Cunard Law Firm
9214 Interline Avenue
Baton Rouge, LA 70809-1907

Andy Birchfield
Beasley, Allen, Crow, Methvin,
     Portis & Miles
218 Commerce Street
Montgomery, AL 36104

Brian J. McCormick, Jr.
Claudine Q. Homolash
Sheller, PC
1528 Walnut Street, 3rd Floor
Philadelphia, PA 19102

James J. Pettit
Locks Law Firm, LLC
457 Haddonfield Rd., Suite 500
Cherry Hill, NJ 08002

Benedict P. Morelli
Morelli Ratner, PC
950 Third Avenue, 11th Floor
New York, New York 10022

Dianne M. Nast
RodaNast, P.C.
801 Estelle Drive
Lancaster, PA 17601

Gladstone N. Jones, III
Lynn S. Swanson
Eberhard D. Garrison
Jones, Swanson, Huddell & Garrison, LLC
601 Poydras Street, Suite 2655
New Orleans, LA 70130

Douglas R. Marvin
Williams & Connolly
725 Twelfth Street, NW
Washington, DC 20005

Stephen B. Murray
Stephen B. Murray, Jr.
Murray Law Firm
650 Poydras Street, Suite 2150
New Orleans, LA 70130

Joe Escobedo, Jr.
Lusi Cardenas
Escobedo, Tippit & Cardenas, LLC
3900 N. 10th Street, Suite 950
McAllen, TX 78501

Kathryn Snapka
The Snapka Law Firm
Post Office Drawer 23017
Corpus Christi, TX 78403

Eric H. Weinberg
c/o Robert E. Arceneaux
47 Beverly Garden Drive
Metairie, LA 70001

David Hockema
Hockema & Longoria, LLP
600 E. Nolana Ave.
McAllen, TX 78504

Richard A. Lockridge
Robert K. Shelquist
Yvonne M. Flaherty
Lockridge Grindal Nauen, PLLP
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401

Jack Urquhart
Beirne, Maynard & Parson, LLP
1300 Post Oak Blvd., Suite 2500
Houston, TX 77056

Thomas R. Kline                                Joseph F. Rice
Shanin Specter                                 Fred Thompson
Lee B. Balefsky                                Carmen S. Scott
Michelle L. Tiger                              Motley Rice, LLC
Mark H. Hoffman                                28 Bridgeside Boulevard
Lisa S. Dagostino                              Mt. Pleasant, SC 29464
David J. Caputo
Charles L. Becker
Kline & Specter, APLC
1525 Locust Street, 19th Floor
Philadelphia, PA 19102


        Lafayette, Louisiana, this 27th day of June, 2011.


                                        /s/ PATRICK A. JUNEAU
                                        PATRICK A. JUNEAU
                                        Special Master
                                        1018 Harding Street, Suite 202
                                        Lafayette, LA 70503
                                        Telephone: (337) 269-0052
                                        Facsimile: (337) 269-0061
                                        Email: paj@juneaudavid.com