UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: VIOXX<br><br>PRODUCTS LIABILITY LITIGATION<br>SECTION L<br><br>This document relates to:<br><br>ALL COMMON<br>BENEFIT FEE APPLICANTS | MDL Docket No. 1657<br><br><br><br><br><br>JUDGE FALLON<br>MAG. JUDGE KNOWLES |

### FEE ALLOCATION COMMITTEE'S OPPOSITION
### TO MOTION TO STAY

Kathryn Snapka ("Snapka") and José Escobedo, Jr. and David Hockema ("Escobedo-Hockema") move the Court for an order to stay any disbursement or distribution of common benefit attorneys' fees. They argue that the Court's Order of August 9, 2011 constituted an abuse of discretion and that the Court also erred in numerous other orders, all of which they have appealed. The Fee Allocation Committee urges the Court to deny the motion.

**I.  If Stay Granted in Whole or Part, Snapka and Escobedo-Hockema Should Be Required to Post a Supersedeas Bond**

"[S]tays of money judgments are a matter of right if the appellant posts a supersedeas bond in accordance with the applicable rules."[1] Pursuant to Rule 62(d), "[t]he stay takes effect when the court approves the bond." Absent the posting of a supersedeas bond in the amount of a judgment, however, there is no automatic stay. Snapka and Escobedo-Hockema have not

---

[1] *Matter of Miranne*, 94 B.R. 413, 415 (E.D. La.), *aff'd*, 861 F.2d 1278 (5th Cir. 1988); 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2905, at 326 (citing, among other cases, *American Manufacturers Mutual Insurance Co. v. American Broadcasting–Paramount Theatres, Inc.*, 87 S. Ct. 1, 3, 17 L. Ed. 2d 37 (1966) (Harlan, Cir. J., in chambers); *United States v. Wylie*, 730 F.2d 1401, 1402 n. 2 (11th Cir. 1984)).

objectively demonstrated why the Court should depart from the general standard.[2]

## II. Absent Posting a Bond the Motion to Stay Should Be Denied

If in the Court's discretion it decides not to require the appealing parties to post a bond for the entire amount allocated by the Court's Order of August 9, 2001, the Fee Allocation Committee urges the Court to take into consideration factors applicable to the issuance of a stay: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies."[3]  Snapka and Escobedo-Hockema fail to show why a stay, absent the posting of a supersedeas bond, is warranted as to any of these factors.

*First*, Snapka and Escobedo-Hockema argue that they are likely to prevail on the merits of their appeal, asserting that the Court abused its discretion in failing to apply a methodology that was fair, transparent or uniform in the fee allocation process.[4]

The process undertaken by the Court in this matter has been transparent, thorough, and judicious.  In its Order of August 9, 2011, the Court outlined the process in detail:

> To summarize, all attorneys seeking an award of common benefit fees have now had the opportunity to: submit time records to the Court-appointed CPA documenting their common benefit work; provide a written affidavit and supporting materials to the Court-appointed Fee Allocation committee articulating their common benefit contribution; testify on the record before the FAC regarding their common benefit contribution; comment on the FAC's preliminary recommendation before it was presented to the Court; object to the FAC's recommended allocation after it was

---

[2] See *Almin Corp. Member, Ltd. v. Logistics Group Intl.*, No. H-09-2695, 211 U.S. Dist. LEXIS 82842 (S.D. Tex. July 28, 2011) (finding that monies deposited in registry of the court may not provide adequate security for a judgment).

[3] *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); see Hockerson-Halberstadt, Inc. v. Nike, Inc., 192 F.Supp.2d 627, 634-635 (E.D. La. 2002) (Fallon, J.); see also *ION, Inc. v. Sercel, Inc.*, No. 5:06-CV-236, 2011 U.S. Dist. LEXIS 16914 (E.D. Tex. Feb. 16, 2011).

[4] See Mem. in Supp. of Mot. to Stay, at 2 (August 25, 2011).

2

> presented to the Court; testify and produce evidence at a hearing before Special Master Juneau; depose and cross-examine a member of the FAC regarding that Committee's reasoning and methodology in reaching its proposed recommendation; file a post-hearing brief arguing in support of their requested allocation; and respond to the Special Master's report and recommendation. These proceedings were all recorded and the results posted on the Court's web site. They have been transparent, have provided all common benefit fee applicants fair notice and ample opportunity to be heard, and have created a sufficient factual record for the Court to make an informed allocation of the common benefit fund. The Court has also kept the courts in Texas, New Jersey, and California advised of these developments and has periodically conferred with the Judges of these courts.

*In re Vioxx Prod. Liab. Litig.*, MDL No. 1657, Order of August 9, 2011, at 20-21 (E.D. La.). It is hard to envision a process that could have been more transparent. The procedures instituted by the Court here far exceed those utilized in *High Sulfur II.* [5] Moreover, Snapka and Escobedo-Hockema point to no case law requiring elements of transparency and due process not included in the process undertaken by the Court here. Moreover, though they charge lack of uniformity, they list no examples. Snapka and Escobedo-Hockema argue that they are likely to prevail on appeal but have pointed to no case law, arising from the Fifth Circuit or any other circuit, which would suggest that the Court erred in any way, much less abused its discretion. Snapka and Escobedo-Hockema fail to show that they are likely to prevail on appeal.[6]

***Second***, Snapka and Escobedo-Hockema argue that they will suffer irreparable harm if common benefit fees are disbursed. They argue that if funds are disbursed that the damage is irreparable because if they are successful on appeal, moneys cannot be re-allocated. This is not

---

[5] *In re High Sulfur Content Gasoline Prod. Liab. Litig*, No. 09-30313 (5th Cir. June 21, 2010) (High Sulfur II).

[6] Snapka and Escobedo-Hockema also argue that the "law on allocation of Common Benefit Funds in MDLs is sparse, at best, and is in need of clarification." *Id.* This argument undercuts any assertion by Snapka and Escobedo-Hockema that they are likely to prevail on appeal. It is a tacit admission that the positions that they have taken in their pleadings to date contravene current precedent and suggest in fact that they are likely to be unsuccessful on appeal.

true. Funds may be returned on a pro rata basis by common benefit firm in the unlikely event that a re-allocation is necessary. This situation has arisen before and has been dealt with without difficulty in prior cases. For example, in *High Sulfur*, common benefit fees were disbursed by the district court and then the order allocating fees was appealed. Following the Fifth Circuit's decision in *High Sulfur I*[7] reversing the allocation made by Judge Lemelle, Judge Zainey issued an order to common benefit counsel to return a portion of the monies previously received.[8] The money was deposited into the registry of the court and held until a second allocation process was concluded. Snapka and Escobedo-Hockema will not suffer irreparable harm upon the distribution of the full common benefit allocation. They are free to pursue an appeal. In the improbable event that the Circuit Court disturbs the Court's findings, monies distributed to common benefit counsel may be returned to the Court.

*Thirdly,* Snapka and Escobedo-Hockema argue that non-appealing common benefit fee applicants will not suffer any hardship as a result of a stay. As noted in the Fee Allocation Committee's opposition to Branch's motion to stay, non-appealing common benefit lawyers would suffer substantial harm if the common benefit fees allocated to them are held indefinitely during the pendency of an appeal. This MDL was formed in April 2005. During 2005 and 2006 in this Court, extensive discovery and motion practice took place, as well as six bellwether trials. In addition, litigation which began as early as 2001 proceeded in coordinated state venues. On November 9, 2007, a global settlement was reached. In 2009, final payments to heart attack and sudden cardiac death claimants were issued, and in 2010, final payments to stroke claimants were made.

---

[7] *In re High Sulfur Content Gasoline Prod. Liab. Litig,* 517 F.3d 220 (5th Cir. 2008) (High Sulfur I).

[8] See *In re: High Sulfu Content Gasoline Prod. Liab. Litig.,* MDL No. 1632, Order of April 29, 2008 (E.D. La. April 29, 2008) (Zainey, J.) (Ex. A).

Over the course of nearly a decade, numerous firms committed substantial time and resources to common benefit work for which they have not been compensated. The delay in the issuance of common benefit fees has caused substantial hardship to the firms who made valuable contributions to the litigation over the course of years. If a stay is issued for the pendency of an appeal, rightful payments to common benefit counsel will be delayed for months if not years. Such an outcome would be unfair in this situation where an appeal urges arguments that go against the great weight of the evidence and current case law. In light of the stellar contributions of these firms and the substantial harm that would be incurred by common benefit fee counsel if the payment of fees is further delayed, the Fee Allocation Committee urges the Court to deny the motion.

***Fourth*,** Snapka and Escobedo-Hockema also argue that attorneys' fees "by their very nature are of public interest" and that an "open and fair process is necessary to the public confidence in the judicial system."[9] In support, they cite *High Sulfur I* in which the Circuit Court reversed the district court for among other things sealing the order allocating fees so that fee awards would not be disclosed to the public. Specifically, the Fifth Circuit noted that fee disputes ought to be litigated openly.[10] The present situation is far different than the one facing the Circuit Court in *In re High Sulfur I*. As noted above, the entire fee allocation process has been litigated openly. All papers filed by the parties have been available to all parties. Hearings have been recorded and recordings made available. The Court has posted all recommendations on its website. In light of the complete transparency of the fee allocation process, the Circuit Court's comments regarding transparency in *High Sulfur I* are inapposite. The interests of the

---

[9] See Mem. in Supp. of Mot. to Stay, at 3.

[10] *In re High Sulfur Content Gasoline Prods. Liab. Litig.*, 517 F.3d 220, 230 (5th Cir. 2008) (High Sulfur I).

public in open litigation of fee matters have been protected through this process; this factor does not mitigate in favor of a stay.

Snapka and Escobedo-Hockema have failed to show why a departure is warranted from the general rule that in order for a stay to be granted a bond in the amount of the judgment should be posted. The Fee Allocation Committee, therefore, urges the Court to deny the motion in its entirety.

In the event, however, that the Court determines that the motion should be granted, just as it argued in its opposition to Branch's Motion to Stay, the Fee Allocation Committee urges the Court to grant the motion in part, issuing a stay in the amount of 8% of the common benefit fund, and denying the motion as to the remaining 92% of the common benefit fund. The aggregate amount awarded by the Court to Snapka, Escobedo-Hockema, Becnel, and Branch is $3,700,000. A stay as to 8% of the common benefit fund would result in $25,220,000 being held in the fund during the pendency of an appeal. This amount is more than 6.8 times the amount currently allocated to Snapka, Escobedo-Hockema, Becnel, and Branch, providing ample funds to address any decision arising from an appeal should it become necessary.

In sum, the Fee Allocation Committee urges the Court to deny Snapka and Escobedo-Hockema's Motion for Stay in full. In the alternative, if the Court determines that the stay should be granted, the Fee Allocation Committee urges the Court to grant the motion to stay as to 8% of the common benefit fund and to deny the motion as to 92% of the common benefit fund. And, lastly, to the degree, if any, that the Court determines that a stay should issue, the Committee urges the Court to require that Branch, Escobedo-Hockema, and Snapka post a bond for the entire amount at issue, including costs.

Respectfully submitted,

Date: August 31, 2011

By: /s/ Russ M. Herman

**Russ M. Herman (Bar No. 6819)**
Leonard A. Davis (Bar No. 14190)
Stephen J. Herman (Bar No. 23129)
*Herman, Herman, Katz & Cotlar, L.L.P.*
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Telephone: (504) 581-4892

**PLAINTIFFS' LIAISON COUNSEL, CHAIR OF THE FEE ALLOCATION COMMITTEE, AND LIAISON COUNSEL FOR COMMON BENEFIT COUNSEL**

By: /s/ Andy D. Birchfield, Jr.,

**Andy D. Birchfield, Jr**.
*Beasley, Allen, Crow, Methvin, Portis & Miles, P.C.*
P. O. Box 4160
Montgomery, AL 36103-4160
Telephone: (334) 369-2343

**PLAINTIFFS' CO-LEAD COUNSEL, SECRETARY OF THE FEE ALLOCATION COMMITTEE, AND CO-LEAD COUNSEL FOR COMMON BENEFIT COUNSEL**

By: /s/ Christopher A. Seeger

**Christopher A. Seeger**
*Seeger Weiss*
One William Street
New York, NY 10004
Telephone: (212) 584-0700

**PLAINTIFFS' CO-LEAD COUNSEL AND CO-LEAD COUNSEL FOR COMMON BENEFIT COUNSEL**

Russ M. Herman, Esq.
HERMAN, HERMAN, KATZ & COTLAR, LLP
820 O'Keefe Avenue
New Orleans, LA 70113
(504) 581-4892 (telephone)
(504) 561-6024 (telecopier)

Andy D. Birchfield, Jr., Esquire
BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P.C.
P.O. Box 4160
234 Commerce Street
Montgomery, AL 36103-4160
(800) 898-2034 (telephone)
(334) 954-7555 (telecopier)

Christopher A. Seeger, Esquire
SEEGER WEISS
One William Street
New York, NY 10004
(212) 584-0700 (telephone)
(212) 584-0799 (telecopier)

Troy Rafferty, Esquire
LEVIN, PAPANTONIO, THOMAS, MITCHELL,
ECHSNER & PROCTOR, PA
316 S. Baylen Street, Suite 400
Pensacola, FL 32502
(850) 435-7000 (telephone)
(850) 497-7059 (telecopier)

Arnold Levin, Esquire
LEVIN, FISHBEIN, SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
(215) 592-1500 (telephone)
(215) 592-4663 (telecopier)

Thomas V. Girardi, Esq.
GIRARDI & KEESE
1126 Wilshire Blvd.
Los Angeles, CA 90017-1904
(213) 977-0211 (telephone)

Mark Lanier, Esq.
LANIER LAW FIRM, PC
6810 FM 1960 West
Houston, TX 77069
(713) 659-5200 (telephone)
(713) 659-2204 (telecopier)

Edward F. Blizzard, Esq.
BLIZZARD, MCCARTHY & NABERS, LLP
Lyric Centre, 440 Louisiana
Suite 1710
Houston, TX 77002-1689
(713) 844-3750 (telephone)
(713) 844-3755 (telecopier)

Perry Weitz, Esq.
WEITZ & LUXENBERG
180 Maiden Lane
New York, NY 10038
(212) 558-5500 (telephone)
(212) 344-5461 (telecopier)

**FEE ALLOCATION COMMITTEE**

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Motion has been served on Liaison Counsel, Phillip Wittmann, and Ann B. Oldfather, by U.S. Mail and e-mail or by hand delivery and email, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL No. 1657, on this 31st day of August, 2011.

    /s/ Andy D. Birchfield, Jr.
**Andy D. Birchfield, Jr**.
*Beasley, Allen, Crow, Methvin,*
*Portis & Miles, P.C.*
P. O. Box 4160
Montgomery, AL  36103-4160
Telephone: (334) 369-2343
Facsimile: (334) 954-7555