**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **IN RE: VIOXX PRODUCTS** | ) | |
| **LIABILITY LITIGATION** | ) | MDL No. **1657** |
| | ) | Section: L |
| This document applies to: | ) | |
| <u>Poole v. Eichholz Law Firm, P.C. et al</u> | ) | Judge Fallon |
| S.D. Ga., 4:11-cv-00136 | ) | Mag. Judge Knowles |

**<u>RESPONSE TO PACIFIC LEGAL FUNDING, LLC'S MOTION FOR SUGGESTION OF REMAND, TRANSFER OF VENUE, AND TO STAY DISCOVERY</u>**

**COMES NOW** Verie Poole, Plaintiff and putative class representative in the underlying action, by and through her counsel, and files this her Response to Pacific Legal Funding, LLC's Motion for Suggestion of Remand, Transfer of Venue and to Stay Discovery, showing the following:

**I.    STATEMENT OF FACTS**

Plaintiff Verie Poole ("Poole") was the sister of Catherine Hunt, who died in Albany, Georgia on or about September 11, 2001. Ms. Hunt's death was purportedly proximately caused by taking Vioxx. In 2004, Poole retained The Law Office of Benjamin Sheftall Eichholz, P.C., the predecessor of Defendant The Eichholz Law Firm, LLC (hereafter collectively referred to as "Eichholz Law Firm"), to pursue potential claims against the manufacturer of Vioxx related to her sister's death. (Exhibit **"A"**). Pursuant to the legal services contract executed by Poole, Eichholz Law Firm was entitled

to forty-five percent (45%) of any gross amounts recovered.  Poole was subsequently approved as administratrix of Hunt's estate. (Exhibit **"B"**).  Eichholz Law Firm associated the law firm of Gary, Williams, Finney, Lewis, Watson & Sperando, P.L. in Florida to pursue Poole's claims, along with those of a number of other Vioxx claimants.

On February 16, 2005, the Judicial Panel on Multidistrict Litigation conferred multidistrict litigation status on Vioxx lawsuits filed in federal court and transferred all such cases, including those of Poole and many of Eichholz Law Firm's other Vioxx claimants, to this Court ("the MDL Proceeding").  On August 27, 2008, this Court entered an Order & Reasons establishing a cap for individual attorneys' fees of 32% plus reasonable costs for all counsel representing claimants enrolled in the Vioxx settlement program.  A true and correct copy of this Order & Reasons is attached hereto as Exhibit **"C"**.  As stated in the Order, this Court found authority to establish and regulate attorneys' fees from three sources:  "[the] Court's equitable authority over the settlement, its inherent authority to exercise ethical supervision over the parties, and its express authority under the terms off the Settlement Agreement . . ." (Id. at p. 14).  In reaching its decision, this Court noted that "many of the Vioxx claimants are elderly and in poor health, making it more difficult for them to negotiate fair contingent fee contracts." (Id. at p. 12).

Shortly thereafter, in October 2008, Benjamin Eichholz ("Eichholz"), the founder and owner of Eichholz Law Firm, created Defendant Pacific Legal Funding, LLC ("Pacific") for the purpose of providing high-interest loans to clients of Eichholz Law

Firm.  (Exhibit *"D"*; N. Shipley Aff., attached hereto as Exhibit *"E"* at ¶s 8-9).  Upon information and belief, Eichholz's primary reason for creating Pacific was to recoup some or all of the attorneys' fees that Eichholz Law Firm lost as a result of the cap established by this Court.

Thereafter, Eichholz Law Firm began a systematic practice of pressuring its Vioxx clients (and other clients, as well) to obtain loans or advances from Pacific.  With respect to its Vioxx clients, Eichholz Law Firm would contact them and persuade them to take a loan or advance from Pacific until their settlement was finalized.  (N. Shipley Aff. at ¶25).  Such loans presented no risk to Pacific or Eichholz Law Firm, since Eichholz was already aware of what the settlement amounts would be and would have the Vioxx claimants sign authorizations allowing Eichholz Law Firm to directly re-pay Pacific.  (Id. at ¶26, Exhibit *"F"*).

While Eichholz and Eichholz Law Firm represented to their Vioxx clients that the law firm was not involved with Pacific (Exhibit *"G"*), such statements were completely false.  In reality, Pacific operated as an extension of Eichholz Law Firm.  Almost all of the loans or advances from Pacific went to clients of Eichholz Law Firm.  (N. Shipley Aff. at ¶29).  Most of the clerical and managerial functions for Pacific were performed by employees of Eichholz Law Firm.  (Id. at ¶s 13-15).  Loan documents and payments to or from Pacific were generated by Eichholz Law Firm employees.  (Id. at ¶ 20).  Additionally, Eichholz and one or more of his family members had a direct financial interest in Pacific.  (Id. at ¶s 22-23).

Unaware of the true situation involving her settlement or the close connection between Eichholz Law Firm and Pacific, Poole was persuaded to receive an advance from Pacific in March 2009. Approximately one month later, Pacific was paid $47,000 from settlement proceeds Poole received related to Vioxx. (Exhibit *"H"*). Upon information and belief, similar loans were made to several dozen other of Eichholz Law Firm's other Vioxx clients. As a result of these short-term, zero-risk loans to their Vioxx clients, Eichholz and his firm were able to recover amounts in excess of the 32% cap placed by this Court on attorneys' fees.

Plaintiff filed the present putative class action in the United States District Court for the Southern District of Georgia on June 6, 2011. Recognizing this Court's interest in protecting the interests of the Vioxx claimants in the MDL Proceeding, as well as ensuring compliance with its orders, Plaintiff filed a Notice of Potential Tag-Along in this Court on June 16, 2011. Plaintiff also filed a motion to transfer in the Southern District of Georgia on June 17, 2011. Neither the conditional transfer order nor the motion to transfer were opposed and this action was formally transferred to this Court on June 29, 2011.

Retention of this action by this Court is appropriate. This Court is familiar with the underlying litigation and, more importantly, the reasons why it issued its limitation on attorneys' fees in 2008. This forum is not new to Eichholz Law Firm, as it was involved in litigation here with numerous clients for several years. Given its close ties with Eichholz Law Firm, Pacific legal should also not be heard to complain of winding up in

this Court.  Eichholz Law Firm and Pacific knowingly participated in a concerted scheme to defraud their clients and evade this Court's cap on attorneys' fees – a cap that was imposed to protect vulnerable claimants.  Accordingly, Pacific's request to remand or transfer this action and to stay discovery should be Denied.

## II. ARGUMENT AND CITATION OF AUTHORITY

### A. This Action Concerns Issues Specifically Addressed by This MDL Proceeding and Therefore, a Suggestion of Remand Would Be Improper

The power to remand a case to the transferor court lies solely with the JPML.  See 28 U.S.C. § 1407(a).  The role of the transferee court in reviewing a motion for remand is to provide a suggestion or recommendation to the Panel.  "[I]n considering remand of this action, the Panel is greatly influenced by the transferee judge's suggestion that remand of the action is appropriate."  In re Evergreen Valley Project Litigation, 435 F. Supp. 923, 924 (J.P.M.L. 1977).  "In determining whether to issue a suggestion for remand to the Panel, [the district court] will therefore be guided by the standards for remand employed by the Panel."  McKinney v. Bridgestone/Firestone, Inc., 128 F. Supp. 2d 1196, 1197 (S.D. Ind. 2001).   Generally, the decision to remand turns on the question of "whether the case will benefit from further coordinated proceedings as part of the MDL."  Id.  "Remand is appropriate when the discrete function performed by the transferee court has been completed."  In re Baycol Prods. Litig. v. Bayer Corp., 2008 U.S. Dist. LEXIS 109172, 32-33 (D. Minn. Sept. 9, 2008).

In the present case, this Court recognized that judicial oversight of attorneys' fees

is particularly appropriate in high profile, quasi-class action cases, where both public scrutiny and the potential for abuse are heightened.  The authority to modify the amount of fees recoverable by an attorney was based, in part, upon this Court's inherent authority to oversee administration of the Vioxx settlement and also to exercise ethical supervision over the parties and counsel in that proceeding.  This Court's actions in this regard are not unprecedented.  See Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 395 (1990) ("It is well established that a federal court may consider collateral issues after an action is no longer pending. For example, district courts may award costs after an action is dismissed for want of jurisdiction."); Moore v. Permanente Med. Group, Inc., 981 F.2d 443, 445 (9th Cir. 2003) ("It is clear that an award of attorney's fees is a collateral matter over which a court normally retains jurisdiction even after being divested of jurisdiction on the merits.");

In the case of In re: Sulzer Hip Prosthesis Liability Litigation, 290 F. Supp. 2d 840 (N.D. Ohio 2003), the court exercised similar oversight over the conduct of plaintiffs' attorneys related to contingency fees.  The Sulzer case was a large MDL proceeding comprised of several class actions concerning allegedly defective orthopedic implants.  The matter continued for several years until a settlement was reached on February 1, 2002 and formally announced the following day.  Thereafter, Judge Kathleen O'Malley issued several orders clarifying the process by which attorneys' fees would be calculated for those attorneys who entered into fee contracts with clients before the announcement of the settlement.  The court further explained that, pursuant to the settlement agreement,

attorneys who were retained by clients after the settlement announcement date would receive compensation based upon their reasonable hourly rate, up to a maximum of $10,000.  Several attorneys who entered into fee contracts after February 2, 2002 disregarded this instruction and sought to collect contingency fees from their clients based upon their private fee contracts.  This situation was soon brought to the court's attention.

In response, Judge O'Malley noted that "questions regarding the interpretation and enforcement of contingency fee contracts are normally questions of state law." Id. at 848. The court also recognized that the plaintiff class members were free to bring their complaints about their attorneys and fees to the courts or disciplinary bodies located in the States where they live.  Id.  Nonetheless, the court felt compelled to involve itself in the dispute in order to protect the interests of the class members, for whose benefit the settlement fund was created.  The court based its power to do so upon its "authority to supervise members of the bar, its inherent powers to regulate attorney-client relations and compliance with ethical standards by attorneys, the equitable powers of the court under 11 U.S.C. § 105(a), and the inherent equitable powers of the court." Id. at 849, quoting In re A.H. Robins Co., Inc., 86 F.3d 364, 370 (4th Cir. 1996).

After determining that it was vested with the power to supervise and regulate the amount of attorneys' fees recoverable by counsel for class members, the court found that the attorneys at issue were "being greedy" and had "probably violated the rules of ethics" by "insist[ing] on receiving excessive compensation at the expense of their own clients." Id. at 855.  As a remedy, the court voided all contingency fee contracts that were entered

into after February 2, 2002. The rationale for this ruling was based largely upon the fact that no "contingency" existed after February 2, 2002, since a settlement fund had already been established.

In the present case, Eichholz Law Firm did not complain when this Court previously exercised its authority to limit attorneys' fees, regardless of whatever percentage the clients had already agreed to. Only now, when Eichholz Law Firm and its alter-ego, Pacific, have been caught ignoring this Court's Order, do they contend that issues concerning attorneys' fees should be removed from this Court's purview. In short, Defendants' conduct in this case is directly related to an issue that this Court has already thoroughly examined and ruled upon. It is only fitting and proper that Defendants' violation of this Court's order be addressed here.

### B.   Transfer of This Action is Not Warranted Under the Doctrine of *Forum Non Conveniens*

"[T]he plaintiff's privilege of choosing venue places the burden on the defendant to demonstrate why the [venue] should be changed." Time, Inc. v. Manning, 366 F.2d 690, 698 (5th Cir. 1966). "A defendant invoking forum non conveniens ordinarily bears a heavy burden in opposing the plaintiff's chosen forum." Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp., 549 U.S. 422 (2007). In deciding whether an action should be transferred under the doctrine of forum non conveniens, the court must weigh a number of private and public interest factors. "[W]hen the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be

respected." In re Volkswagen of Am., Inc., 545 F.3d 304, 315 (5th Cir. 2008).  As none of the private or public interest factors weigh in favor of transfer, the Southern District of Georgia is not clearly more convenient than this Court, and Pacific's alternative motion to transfer venue should be denied.

### 1. Relative Ease of Access to Sources of Proof

While it may be true that many of the documents relevant to Plaintiff's individual claims may be found in Georgia, this fact does not weigh in favor of transfer to the Southern District of Georgia.  Plaintiff Poole is a resident of the Middle District of Georgia.  Plaintiff's lawyers and Defendant Eichholz Law Firm are all located in the same city.  Although Pacific is registered as a Colorado company, as shown by the testimony of Nikki Shipley, it is chiefly operated out of Savannah as well.  The parties' access to sources of proof is the same, regardless of whether this case was in Georgia or New Orleans.  The pendency of this action in New Orleans would not prevent the parties from otherwise engaging in typical discovery efforts.  Indeed, the "sources of proof" in the underlying MDL Proceeding were located in various places around the country, yet meaningful discovery was not hampered by this Court's oversight of the litigation.

### 2. Availability of Compulsory Process to Secure Witness Attendance

Pacific simply misstates the law with respect to subpoena power under Rule 45(c)(3)(A)(II).  Correctly stated, this provision prevents a nonparty witness from being required to attend a deposition or trial "more than 100 miles from *where that person*

*resides, is employed, or regularly transacts business in person . . .*" Furthermore, under Rule 45(a)(3)(B) counsel in this case will be permitted to issue and sign subpoenas to conduct the depositions of any witnesses in any district. Thus, none of the witnesses Pacific believes might be relevant to this action would be "outside of this Court's subpoena power." (Pacific Brf. at p. 10).[1]

### 3. Cost of Attendance of Willing Witnesses

This factor appears to only be relevant with respect to the attendance of live witnesses at a hearing or trial. As an initial matter, it is expected that many witnesses who might be called for trial will likely have their trial deposition taken by video. "[W]ith modern conveniences of electronic filing and videoconferencing, '[a] plaintiff may have his 'day in court' without ever setting foot in a courtroom.'" Calix-Chacon v. Global Int'l Marine, Inc., 493 F.3d 507, 515 (5th Cir. 2007), quoting Effron v. Sun Line Cruises, Inc., 67 F.3d 7, 11 (2d Cir. 1995). Furthermore, Plaintiff and several key witnesses, including Nikki Shipley, are willing to travel to New Orleans, if necessary to attend trial or a hearing. Again, Defendants cannot say that they are surprised or inconvenienced by possibly traveling to New Orleans when they should have expected to be brought before this Court for violation of its Order. For Pacific, which (according to Defendants) is supposedly operated out of New York City, New Orleans will likely be easier to travel to than Savannah. Finally, while Plaintiff may reside in Georgia, it is

---

[1] The only possible exception might be Benjamin Eichholz, who is believed to have been re-incarcerated in McIntosh County, Georgia.

believed that a significant number of putative class members live in other states.  Thus, there is likely little difference to these class members whether the case is pending in Louisiana or Georgia.

### 4. Administrative Difficulties

There is no evidence that this case will languish under this Court's supervision, as Pacific suggests.  Over the past several years, this Court has efficiently, effectively and expeditiously administered the MDL Proceeding – one of the largest in the country.  Plaintiff does not anticipate that this Court will be unwilling or unable to swiftly address conduct involving a violation of its Order regarding attorneys' fees.

### 5. Local Interests

As this Court made clear in its August 27, 2008 capping attorneys' fees, cases such as the MDL Proceeding involving large numbers of claimants and attorneys create "potential harm to the public's perception of the judicial process." (Order at p. 11).  The large amounts of money and plaintiffs involved "have captured the public's attention" and "[d]isproportionate results and inconsistent standards threaten to damage the public's faith in the judicial resolution of mass tort litigation by creating an impression of inherent unfairness." (Id. at pp. 10-11).  The attention that the MDL proceeding has captured is not just local, but nationwide.  Not allowing Defendants' violation of this Court's order to be dealt with by this Court will substantially erode the public's faith in the judicial process.  Any local interest Georgia citizens and residents would have in the fate of Defendants is far outweighed by the interest the general public has in seeing that judicial

orders in this high profile case are upheld.

### 6. Familiarity with Governing Law and Potential Conflicts of Law

Plaintiff does not anticipate any conflicts of law applicable to the claims and issues in this case. Pacific has not argued that Georgia's law related to common law fraud, breach of fiduciary duty by an attorney, or usury is substantially different from that of Louisiana. Additionally, Plaintiff's RICO claim is federal in nature and based upon violation of federal law.

### C. A Stay of This Action is Not Warranted

As discussed above, this action has been properly transferred to this Court and Pacific's motion to remand or transfer should be denied. However, even if this Court was inclined to transfer this case back to Georgia, a stay of discovery would not be proper. Regardless of where this case ultimately proceeds, the same discovery will have to be conducted. Defendants will not waste time or money engaging in discovery while this Court rules on Pacific's motion, since such efforts will not need to be duplicated in the event this case is transferred to Georgia. Wherefore, Pacific's request for a stay of discovery should be denied and Plaintiff permitted to proceed with discovery as intended.

### CONCLUSION

For the foregoing reasons, Pacific's motion to remand or transfer venue and for a stay of discovery should be Denied.

This 6th day of September, 2011.

TATE LAW GROUP, LLC


/s/ Mark A. Tate
Mark A. Tate
Georgia Bar No. 698820
C. Dorian Britt
Georgia Bar No. 083259

2 East Bryan Street, Suite 600
Post Office Box 9060
Savannah, Georgia 31401
912.234.3030