UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  VIOXX® | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| | * | |
| | * | MAG. JUDGE KNOWLES |
| * * * * * * * * * * * * * * * * * * | * | |

THIS DOCUMENT RELATES TO ALL CASES

### MEMORANDUM IN SUPPORT OF MOTION TO REQUIRE COURT APPROVAL OF LIAISON COUNSEL'S FEE OF MICHAEL A. STRATTON

#### Introduction

On September 30, 2009, the Court entered Pretrial Order Number 52, appointing Michael A. Stratton as Liaison Counsel for Common Benefit Fee Application Objectors [Rec.Dec.24522]. The Objectors to the Common Benefit Fee Application objected that the Plaintiffs Steering Committee was seeking an 8% Common Benefit fee rather than the smaller amounts of 2% or 4% for which they had contracted with the PSC.  Mr. Stratton accomplished a settlement with the PSC under which the Objectors were charged a Common Benefit fee on their cases of 4% rather than the 8% sought by the PSC.  It was understood that Mr. Stratton would apply to the Court for a fee for his services, at which time an Objector could determine how much benefit Mr. Stratton had conferred.  No disclosure was made of the method by which the refund to the Objectors would be accomplished.  No disclosure was made of Mr. Stratton and the PSC's agreement that Mr. Stratton would support a common benefit assessment in the other (non-Objectors') cases of 7.5%.  Portions of this information were revealed over time, and after the fact.  To this date, Mr.

Stratton has never sought Court approval of a fee. Funds that belong to the Objectors remain in Mr. Stratton's hands (believed to be in the approximate amount of $1,669,000) for accounting or distribution to the Objectors.

## STATEMENT OF FACTS

The undersigned is one of three attorneys who handled Vioxx cases in the Master Settlement Program as the "KVWG" (the Kentucky Vioxx Working Group). The KVWG was an Objector [Rec. Doc. 18676], *see* Exhibit A. The undersigned is one of the parties for whom Mr. Stratton was appointed as Liaison Counsel by Pretrial Order Number 52 (appointing Liaison Counsel for Common Benefit Fee Application Objectors [Rec.Dec.24522]).

Neither the KVWG nor its clients ever signed any fee agreement with Mr. Stratton. There was no communication from Mr. Stratton after his appointment as Liaison Counsel until July 23, 2010, when Mr. Stratton contacted the KVWG and stated that he had a tentative settlement for which he needed approval in advance of the July 27, 2010, status conference.[1] Mr. Stratton informed the KVWG that he was going to "ask for" a fee to him of 4% to 5% and he asked the KVWG if we would object to such a fee request. After internal conversations, the KVWG members realized that no evaluation could be made of the fairness of any fee to Mr. Stratton, without information as to what Mr. Stratton had done, his time expended and knowledge as to the entire recovery resulting from the common benefit assessment negotiated by Mr. Stratton. Accordingly, and understanding that Mr. Stratton would apply to the Court for

---

[1] This is not meant to imply undue delay by Mr. Stratton; rather, Mr. Stratton's efforts were put on hold for a substantial period of time while the Court addressed issues raised by the Vioxx Litigation Consortium.

approval of a fee <u>and</u> approval of the deal he had made, the KVWG informed Mr. Stratton on July 26, 2010, as follows:

> "We are all in agreement that a reduction from an 8% assessment to a 4% assessment is acceptable to all of us, and we believe that your fee will need to be approved by the Court. If you have any need to discuss further, Ann Oldfather will be in New Orleans tonight and tomorrow for the status conference."

*See* e-mail to Mr. Stratton from Leslie Cronen, dated July 26, 2010, attached as Exhibit B.

The KVWG was not told that Mr. Stratton would write the letter of July 28, 2010, attached as Exhibit C; rather, the KVWG believed that Mr. Stratton and the PSC would seek Court approval of a Common Benefit assessment of 4% for Objectors with prior contracts with the PSC, and a 7.5% assessment for others. It was only after July 27, 2010, that Mr. Stratton disclosed that there would be some things the Court was not told, and it was not until reading the pleading entitled "Motion to Restore Common Benefit Fund," filed on March 21, 2011 [Rec. Doc. 62715] and its supporting Memorandum [Rec. Doc. 62715-1], that the undersigned fully understood the process by which Mr. Stratton was forwarded monies from the Common Benefit Fund, apparently on the authorization of Andy Birchfield (*id.,* Memorandum at 8), from which Mr. Stratton would remit the difference between the 4% and the 8%.

The undersigned indeed attended the July 27, 2010, status conference. Mr. Stratton and the PSC convened privately in chambers after the status conference to memorialize their arrangement.[2] The undersigned sought to attend, but Mr. Herman requested that she leave, which she did. Mr. Herman intended that the settlement agreement with Mr. Stratton was to be confidential ("We entered a settlement negotiation which was supposed to be confidential as regards Mr. Stratton…", lines 14-15, transcript of proceedings of February 17, 2011, attached as

---

[2] The transcript of which was attached to the Motion to Restore Common Benefit Fund and Supporting Memorandum, *supra,* and is attached hereto as Exhibit D.

3

Exhibit 6 to Motion to Restore Common Benefit Fund, *supra*.) The entire sequence of events is described more particularly on pages 5 through 9 of the Motion to Restore Common Benefit Fund, *supra*.

Mr. Stratton apparently retained 9% (0.36/4.00) of all of the monies that passed through his hands, for a total "fee" (as now seems to be claimed) in excess of $1,669,000. At no time did the undersigned counsel agree to either the process or the self-determined fee. Mr. Stratton has remitted monies to the KVWG, but he kept 9% from the refund due the KVWG once its assessment was reduced from 8% to 4%.[3] Up through today's date, Mr. Stratton has not sought Court approval of his fee as a special Liaison Counsel, and it now seems clear that no such approval will be requested.

## ARGUMENT

Mr. Stratton occupied his position due solely to appointment as Liaison Counsel by PTO 52. He continued in that position solely at the pleasure of the Court.

At no time did he have a written agreement with any of the plaintiffs represented by Objectors that would allow him to collect a contingent fee, a requisite under Kentucky law as far as the undersigned's clients were concerned, nor did he have any written co-counsel agreement with the undersigned, or (to the knowledge of the undersigned) with the undersigned's colleagues, allowing him to share in a portion of the attorneys fees applied to the clients' recovery. Under Kentucky ethical requirements, the client must have knowledge of any fee sharing arrangements. The self assessed collection by Mr. Stratton of a 9% fee from a portion of

---

[3] Subsequent to, and as a result of the filing in March, 2011, of the Motion to Restore the Common Benefit Fund, the undersigned learned that Mr. Stratton had sent a cover letter to another member of the KVWG with the refund check to the KVWG, and that letter is attached as Exhibit E. Neither the undersigned, nor to the undersigned's knowledge, the other members of the KVWG, have any knowledge of a "joint prosecution agreement" as referenced by Mr. Stratton in that letter.

4

the attorney fees on these clients' gross settlements is in violation of Kentucky ethical requirements.

On a personal note, the undersigned has hoped for several months that someone else would bring these issues to the Court's attention, but that is apparently not going to happen. The undersigned has been told that her self-interest is not served by bringing this Motion. While that may or may not play out in the end, it is not, and should never be, a factor when, as here, there are the larger obligations of counsel to the Court. The Court has a right to expect that its Liaison Counsel avoid self-help and conduct themselves with full transparency. The Court also has a right to expect that the officers of the Court will make it aware of these private transactions, which cannot be left private and unaddressed judicially, particularly when the Court has invested so much effort in the allocation issues of the Common Benefit Fee as finally assessed.[4]

The Court's Order of August 25, 2011 [Rec.Doc.63314] directing the Claims Administrator to provide the Court with a report on the amount it currently holds as Common Benefit Fees derived from the 6.5% assessment could in and of itself bring these matters to the fore. And it may be that Mr. Stratton does plan on seeking Court approval of a fee equal to the monies he has not disbursed. Presumably, Mr. Stratton holds all funds not disbursed to the Objectors in escrow. The undersigned submits that it is time for the Court to determine whether Mr. Stratton should disburse the monies he retained to the Objectors, or perhaps elsewhere as the

---

[4] The extensive, transparent and fully-of-record process utilized by the Court in determining the allocation of the Common Benefit Fee stands in stark contrast to the transactions described herein. Neither the Court nor the parties have any information of the amount of actual work done by Mr. Stratton, the hours expended, an appropriate hourly rate or the costs he incurred. Although not meant as a comment on the appropriate fee to be paid to Mr. Stratton, if things remain as they are, he has collected a fee which exceeds the Common Benefit Fee allocation awarded by the Court to 75 of the 100 plus potential recipients addressed in the Court's Order and reasons of August 9, 2011. Indeed, Mr. Stratton's fee is in excess of that awarded to attorneys who actually tried Vioxx cases to a jury verdict (Ms. Snapka and Mr. Escobedo).

5

facts direct, and to set any fee that ought to be paid to Mr. Stratton for his efforts as Liaison Counsel for the Common Benefit Fee Objectors.

The Court, and the Court alone, should determine the appropriate fee for the services provided to the Common Benefit Fee Objectors by Mr. Stratton. Accordingly, the Court is respectfully requested to establish the appropriate procedures to address these matters.

Respectfully submitted,

/s/ Ann B. Oldfather

Ann B. Oldfather
KBA Bar #52553
Liaison Counsel/Lead Counsel
OLDFATHER LAW FIRM
1330 S. Third Street
Louisville, KY  40208
502.637.7200
502.637.3999
aoldfather@oldfather.com

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Motion to Require Court Approval of Liaison Counsel's Fee for Michael Stratton has been served upon Liaison Counsels, Phillip Wittmann and Russ Herman, and upon Michael A. Stratton, by U.S. mail and email and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 15th day of September, 2011.

/s/ Ann B. Oldfather

Ann B. Oldfather