IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

---------------------------------------------------------x
: 
:                    MDL NO. 1657
:
IN RE: VIOXX PRODUCTS LIABILITY         :
LITIGATION                                              :       SECTION L
:
THIS DOCUMENT RELATES TO           :       JUDGE FALLON
ALL ACTIONS                                         :       MAG. JUDGE KNOWLES
:
FILER:  Henry A. King/Rebecca Dietz  :
:
:
---------------------------------------------------------x

## MEMORANDUM OF KLINE & SPECTER REGARDING THE SPECIFIC AMOUNT TO BE DISTRIBUTED IN VIEW OF THE "STRATTON DEAL"

Kline & Specter, P.C. ("Kline & Specter") respectfully files this memorandum pursuant to this Court's Order entered Sept. 9, 2011 inviting comments on the proper method for allocating the common benefit fund given the shortfall in the fund.

### Factual Background

The history of Vioxx litigation and the common benefit fund's allocation has been described in many documents.  Rather than restate those facts, Kline & Specter incorporates by reference its Motion to Enforce the Full Participation Option or, in the Alternative, for Leave to File Objection to Mr. Herman's 8% Fee Recommendation (Docket No. 62796), which sets forth the material facts in detail.

{N0509561 -}

Critical for present purposes is that on August 9, 2011, the Court entered an order allocating among various law firms the $315,250,000 that the Court previously awarded for common benefit fees. *See* Docket No. 63195. In that Order, the Court ordered Kline & Specter to be awarded $15 million in common benefit fees. *See id.* at 89-91. This Order was consistent with the recommendation of Special Master Juneau. It also relied on Kline & Specter's agreement to accept $15 million following a lengthy objection process. *See id.*

However, on Sept. 9, 2011, the Court entered a subsequent Order attaching a "Summary of Common Benefit Fee Withholdings" provided by the Claims Administrator. *See* Docket No. 63360. This "Summary" made clear that while the Court ordered an aggregate common benefit fee of $315,250,000, the common benefit fund contains only $302,406,562.50. According to the Summary, $734,915.66 of the shortfall is explained by the fact that common benefit fees were not withheld from disbursements to certain claimants. An additional $72,291.84 is explained by fees paid to Special Master Juneau. However, the bulk of the shortfall – $12,036,230 – was secretly distributed by the Negotiating Plaintiffs' Committee ("NPC") without the Court's authorization or knowledge. This *ultra vires* act presents a serious issue with respect to allocation of common benefit fees.

The facts behind the secret transfer are compelling. In January 2009, Russ Herman, in his capacity as Plaintiffs' Liaison Counsel, moved this Court to award a

common benefit fee of 8% of the $4.85 billion settlement.  *See* PLC's Motion for Award of Common Benefit Counsel Fees and Reimbursement of Expenses, filed Jan. 20, 2009 (Docket No. 17642).  This amount was to come out of the attorneys' fees of the plaintiffs' counsel retained by individual clients, and was to be paid to the firms that performed common benefit work.

On April 16, 2009, the Court invited any interested party to file a Notice of Objection on or before May 8, 2009.  Over 60 objections would be filed.  Among the objectors was the law firm Stratton Faxon, which had signed a Full Participation Option Contract and asked the Court to enforce that Contract such that its contribution to the common benefit fund would be capped at an aggregate of 3%.  *See* Stratton Faxon's Objection, dated May 5, 2009 (Docket No. 18649).  Because of the number of objectors, the Court decided that it would appropriate to appoint a Liaison Counsel for the objector group, and appointed Michael Stratton to this role.

Thereafter, numerous status conferences were convened, discovery was taken, briefing was submitted, and arguments were heard.  While the matter was pending before the Court, Mr. Herman reduced his recommendation to 7.5%.  Mr. Stratton agreed that 7.5% was appropriate.  In October 2010, relying in part on Mr. Herman's reduction in the recommended assessment, the Court entered its decision allocating 6.5% of the settlement fund to compensate for common benefit work, mathematically

producing a common benefit fund of $315,250,000.  *See* Order, entered Oct. 19, 2010 (Docket No. 54040)

Concealed from the Court was the existence of a private deal between (1) Russ Herman, purportedly on behalf of the NPC, and Chris Seeger and Andy Birchfield purportedly on behalf of the PSC, and (2) Mr. Stratton, purporting to represent the objectors to the 8% assessment.  The deal was consummated on July 27, 2010 in the Court's chambers, though outside the Court's presence.  Messrs. Herman, Seeger and Birchfield committed that the objectors would pay a net assessment of 4% toward the common benefit fund.  In exchange, the objectors committed to withdraw their objections and recommend to the Court that a 7.5% assessment was appropriate.  This deal was memorialized in a transcript attached hereto as Exhibit "A".  The critical passage is as follows:

> MR. BIRCHFIELD:  Here in the conference room we have Michael Stratton, who serves as the liaison for the objectors; Russ Herman, who is plaintiff liaison counsel; co-lead counsel Chris Seeger and Andy Birchfield.  This is in MDL Docket 1657.
>
> We have entered into a private agreement where Mr. Stratton is speaking on behalf of all of the objectors to the plaintiff liaison counsel's petition for assessment and Russ Herman is speaking on behalf of the NPC.
>
> The parties have agreed that each side will recommend to the Court that there be a global assessment in the amount of 7.5 percent.  For each of the objectors who timely filed an objection to the plaintiff liaison counsel's petition, they will pay a total of a 4 percent assessment, and the difference will be disbursed from the account that's held in escrow now by BrownGreer.

The aggregate amount for that list of objectors is $18,549,236.85. That amount will be transferred to the trust account of Mr. Stratton. Any common benefit fees or costs will be a matter of agreement between Mr. Stratton and the individual objectors.

The parties will prepare a list of objectors that will be submitted to BrownGreer for the amount of the funds to be released for each of those individual accounts. Again, the aggregate, that total sum, will be wired to the trust account of Stratton Faxon.

MR. SEEGER. I would just like, for the record, for Mike to acknowledge the reasonableness of the 7.5 percent.

MR. STRATTON: Yes. As liaison counsel for the objectors, we have gotten well through discovery. We have spoken to experts. We have taken depositions, had depositions taken of us, and done the research. At the end of the day, on behalf of all the objectors, I can say that we all feel 7.5 percent is a reasonable fee for the common benefit attorneys in this case.

I would also add that any future cases that result in some sort of recovery brought by anybody who was a timely objector to this fee petition will be treated at the 4 percent level.

Further, it's our understanding that BrownGreer will be instructed as soon as possible to make this disbursement to the objectors via the Stratton Faxon trustee account.

. . . .

MR. STRATTON. Liaison counsel for the objectors, being me, on behalf of all of the objectors in this case to the fee petition, withdraw all of those objections. We no longer have any objection to the fee petition filed by the NPC to the extent that our recommendation is that it ought to be reduced to 7.5 percent. We'll be putting that on the record.

Exhibit A.

The following day, on July 28, 2010, Mr. Stratton sent a letter to the Court recommending a global assessment of 7.5%. This letter only recommended a 7.5% assessment. It did not disclose that Messrs. Herman, Birchfield and Seeger agreed to reimburse Mr. Stratton's group from the settlement fund such that Mr. Stratton's group of objectors would only pay a 4% assessment. *See* Correspondence from Mr. Stratton to Judge Fallon, attached hereto as Exhibit "B". BrownGreer distributed the agreed amount to Mr. Stratton, who distributed it to others.

This deal was remarkable for many reasons beyond its unwarranted secrecy. *First*, the objectors agreed to advise the Court that 7.5% was a reasonable amount for other law firms to pay for common benefit fees, when they themselves agreed to pay no more than 4%.

*Second*, Mr. Herman purported to speak for the NPC, when the Court created that body only to negotiate with Merck and had no authority over the distribution of settlement funds.

*Third*, the PSC never conducted a meeting (telephonic or in-person) where the deal was discussed or voted upon. The deal was consummated by Messrs. Seeger and Birchfield, acting as the PSC's co-lead counsel, without authorization by the PSC as a whole. *See* Affidavit of Thomas R. Kline, attached hereto as Exhibit "C".

*Fourth*, Messrs. Herman, Seeger, and Birchfield purported to commit $18,549,236.85 of the common benefit fund for reasons having nothing to do with the

performance of common benefit work. The Stratton objectors disputed only the percentage of the assessment for the common benefit work.

*Fifth*, to the extent that the NPC contends that the money was never part of the common benefit fund, that averment is transparently false. Andrew Birchfield took this position when he stated that the NPC's agreement with the Stratton Objectors did not deplete the common benefit fund: "It didn't drop below its current level; it was never there." *See* Deposition of Andrew Birchfield, dated May 6, 2011, pp. 77, attached hereto as Exhibit "D". However, the Claims Administrator's own "Summary" accounts for the payments to the Stratton Objectors as a charge against the common benefit fund. The NPC's apparent position that "there was no money withheld" mocks the obvious truth and ignores the Claims Administrator's own accounting.[1] *Id.* at 78.

*Sixth*, Messrs. Herman, Seeger, and Birchfield made no claim to the fund on grounds of their common benefit work product. They made this commitment without a Court Order, without the Court's knowledge, before the Court had determined the exact size of the common benefit fund or the percentage assessment it believed was appropriate. As the Court would say during a hearing on Feb. 17, 2011:

---

[1] If the payments to the Stratton Objectors were charged against the overall settlement fund, with the 6.5% holdback charged against the net amount ($4.85 billion minus the amount paid to the Stratton Objectors), the common benefit fund would have contained $314,044,300 at the start. Clearly that was not the Court's expectation when it ordered a common benefit fund equaling $315,250,000. Of course, the dissipation was done secretly, so the Court had no opportunity to consider its implications.

> BY THE COURT:  The only thing I know of it is that there was an objection to the total sum of the common benefit fund, that Mr. Stratton represented the objectors, and I presided – or I gave them the opportunity to do some discovery early on.  They did some discovery.  They had some issues.  I resolved the discovery issues, the evidentiary issues.  They proceeded on with the case.  I was advised that the objectors withdrew the objection.  That's all that I know of it.  I wasn't involved in any discussions or agreements.  That's why I didn't issue any orders.

Transcript of Feb. 17, 2011 hearing at 12, attached hereto as Exhibit "E".

*Seventh*, Messrs Herman, Seeger, and Birchfield instructed BrownGreer to pay the money without a Court Order and without the Court's knowledge that this commitment had been made.

*Eighth*, BrownGreer paid the money without a Court Order and without the Court's knowledge.

*Ninth*, Messrs Herman, Seeger, and Birchfield entered into an agreement with Mr. Stratton purportedly for all objectors.  Yet some objectors – notably Kathy Snapka and Daniel Becnel – had no idea that negotiations were ongoing and never gave authority to Mr. Stratton to settle or withdraw their objections.  Indeed, Mr. Stratton was appointed only to the post of liaison counsel, not lead counsel.  *See* Kline Affidavit (Exhibit C) at 10-12; Notice to the Court of Daniel Becnel, filed March 9, 2011 (Docket No. 62671).

*Tenth*, Messrs Herman, Seeger, and Birchfield directed that the $18,549,236.85 be deducted from monies withheld by BrownGreer -- nearly 6% of the fund – *before* the size of the common benefit fund had been determined by the Court.  At that time, the

Court was still considering Mr. Herman's Motion for an Award of Plaintiffs' Common Benefit Fees and Reimbursement of Expenses. The Court would not rule until October 19, 2010, nearly three months after the deal had been made.

In sum, because Messrs. Herman, Segar and Birchfield directed BrownGreer to pay $18,549,236.85 to Mr. Stratton, the common benefit fund never attained its full expected value of $315,250,000 notwithstanding its deposit in an interest-bearing escrow account. Instead, the fund contains only $302,507,562.60, with over $12 million of that shortfall due to the NPC's unauthorized and secret payments to the Stratton Objectors. The fund lacks sufficient money to pay the fees awarded by the Court.

## Legal Argument

This Court must determine how to distribute the shortfall in the common benefit fund among the law firms awarded common benefit fees. At a minimum, Kline & Specter should not have its award reduced. Kline & Specter was not a member of the NPC. It did not participate in the secret meeting in which the NPC made its secret deal with the Stratton Objectors. The firm did not authorize the *ultra vires* payment of over $18 million in settlement funds without Court knowledge or approval. Further, Mr. Kline, a PSC member, had no knowledge of the deal and did not authorize it personally or through the PSC. Accordingly, Kline & Specter should bear *no* reduction in its Court-ordered common benefit fee on account of that payment. Instead, the shortfall should be absorbed by the firms comprising the NPC. They dissipated the money. They

should bear full responsibility for their *ultra vires* acts. Any other result is grossly unfair to common benefit workers who bear no responsibility for the fund's dissipation.

The Summary presented by the Claims Administrator raises several additional questions. First, footnote 3 states that $19,271,639 was disbursed by agreement to the Stratton Objectors. However, the deal memorialized in the transcript quoted above described a payment $18,549,236.85 to the Stratton Objectors. This suggests that $722,402.15 was paid by the Claims Administrator beyond the agreed amount. Was an additional secret deal struck that has not yet been disclosed? To who was the additional $722,402.15 paid? This matter should be investigated. At a minimum, only those firms responsible for the dissipation should have their allocations reduced.

Second, footnote 3 also states that when the Claims Administrator disbursed the 1.5% Common Benefit Fee Refund (following the Court's decision to award a 6.5% common benefit fee, less than the 8% initially withheld), that rebate equaled $7,235,409. Perhaps $7,235,409 represents the amount rebated to the Objector firms only. But the Summary does not say that. Nor does it explain how the number was generated.

Third, the Master Settlement Agreement requires the common benefit fund to be deposited in an interest bearing account. Paragraph 9.2.3 provides:

> Pursuant to Sections 9.2.1 and 9.2.2, the attorneys' fees and common benefit expenses deducted by the Claims Administrator shall be deposited into an interest bearing escrow account (the "Settlement Fee and Cost Account").

Master Settlement Agreement at ¶ 9.2.3.  However, the Summary provides no accounting of the interest earned by the account since its inception.  Nor does it make clear that interest was earned at all.  If the common benefit fund was improperly invested, that mistake should be borne by those who made it – the firms comprising the NPC, not firms like Kline & Specter that had no control over the fund.

This Court's allocation of the common benefit fund has been undermined by the NPC's actions.  Kline & Specter did not authorize or have knowledge of these actions.  Its Court-ordered fee absolutely should not be reduced because of the NPC's bad conduct.  (Nor should the fee be reduced in deference to other common benefit workers who object to their allocation.)  Instead, Kline & Specter should receive the $15 million fee it agreed to receive, that the Special Master recommended it receive, and that the Court ordered it to receive.

## CONCLUSION

For the foregoing reasons, Kline & Specter respectfully requests that this Court award Kline & Specter the $15 million common benefit fee awarded in the Order entered August 9, 2011.

             Respectfully submitted,

             /s/ Henry A. King
             HENRY A. KING (#7393)
             REBECCA H. DIETZ (#28842)
             KING, KREBS & JURGENS, P.L.L.C.
             201 St. Charles Avenue, 45th Floor
             New Orleans, Louisiana  70170

            Telephone: (504) 582-3800
            Facsimile:  (504) 582-1233
            hking@kingkrebs.com
            rdietz@kingkrebs.com

Dated:  September 16, 2011    *Attorneys for Kline & Specter, P.C.*

{N0509561 -}          12

## **CERTIFICATION OF SERVICE**

The undersigned hereby certifies that on this date he caused the Memorandum of Kline & Specter Regarding The Specific Amount To Be Distributed In View of the "Stratton Deal" to be served on Russ Herman and Phillips Wittman, by U.S. Mail and e-mail, and on all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre Trial Order No. 8.

/s/ Henry A. King

Dated: September 16, 2011