UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: VIOXX | * | MDL NO. 1657 |
| | * | |
| PRODUCTS LIABILITY | * | |
| LITIGATION | * | SECTION  L |
| | * | |
| THIS DOCUMENT RELATES | * | JUDGE FALLON |
| TO ALL CASES | * | MAG. JUDGE KNOWLES |
| | * | |
| FILER: Robert E. Arceneaux/Margaret Woodward | * | September 16, 2011 |
| Pascal F. Calogero, Jr. | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**ERIC WEINBERG, CHRIS PLACITELLA, AND THE FIRM OF COHEN
PLACITELLA AND ROTH'S MEMORANDUM REGARDING SHORTFALL IN
<u>COMMON BENEFIT FUND</u>**

MAY IT PLEASE THE COURT:

This memorandum is respectfully submitted on behalf of Eric H. Weinberg, Chris Placitella, and Cohen, Placitella and Roth in response to this Court's order of September 9, 2011, inviting comment on the $13,000,000 shortfall in the common benefit fund ("CBF").  (Rec. Doc. 63360).

As a prefatory matter, the BrownGreer report appended to the order is seemingly incomplete. Paragraph 9.2.3 of the Master Settlement Agreement provides that "the attorneys' fees and common benefit expenses deducted by the Claims Administrator shall be deposited into an interest bearing escrow account."  Presumably, this was done; but the Brown Greer report does not account for the moneys earned in interest.  The fund was created pursuant to PTO 49 signed on September 23, 2009. One would expect to see an accounting of the interest earned since that time.  The report also does not account for moneys paid as fees to the accountants, reported to be in excess of $1,000,000.  The interest earned on the CBF should have been enough to absorb such costs, with enough left over also to absorb the lesser reported shortfalls caused by payments to the Special Master and adjustments

for common benefit fees not withheld from fixed payments, special marker, and other payments. Combined, these adjustments total a relatively modest $807,207.50.  Certainly then an accounting as to the interest earned is of significance when considering the amount held in the Common Benefit Fund and any shortfall related thereto.

The real problem arises out of the **$12,036,230.00** "adjustment for payments to Objector firms," -- the Stratton payout.  As counsel for Objectors,[1] undersigned counsel attempted to investigate this.  BrownGreer distributed $19,271,639 to Mr. Stratton, who distributed it to other objectors after retaining a portion for his attorneys fees.  As best as we can determine, this occurred as a result of a simple phone call from Andy Birchfield to BrownGreer, instructing it to wire the money into Mr. Stratton's account.  The objectors directed a number of inquiries to the issue, contending that they had a fundamental right to know how much money resided in the CBF.  Their interrogatories, requests for production, deposition inquiry, and subpoenas were objected to by the FAC and Brown Greer, and it appears as if this Court may not have ever resolved those disputes (Rec. Docs. 57345, 62567, 62693, 62732; Records Subpoena attached hereto as Exhibit 1).  Also still pending are Objectors' Motion to Limit Fees (Rec. Doc. 62805) and Motion to Restore Common Benefit Fund (Rec. Doc. 62715).

What is clear and known to a certainty is that no order authorized the transfer of almost 5% of the fund to parties who were not asked to demonstrate a contribution to the common benefit, and many of whom made no such contribution.  As the Court would say during a hearing on Feb. 17,

---

[1] The Court appointed undersigned counsel as co-lead and liaison counsel for the objectors to the FAC's proposed allocation of the CBF, hereinafter "the Objectors".  This group is to be distinguished from an earlier group of firms which objected to the proposed 8% assessment of common benefit fees from the overall recovery of attorney fees.  The latter objectors, whose lead counsel was Stratton, were the recipients of the subject payment, hereinafter, "the Stratton group." Two firms, Snapka and Becnel, belonged to both groups of objectors.

2011:

> BY THE COURT:  The only thing I know of it is that there was an objection to the total sum of the common benefit fund, that Mr. Stratton represented the objectors, and I . . . gave them the opportunity to do some discovery early on.  They did some discovery.  They had some issues.  I resolved the discovery issues, the evidentiary issues.  They proceeded on with the case.  I was advised that the objectors withdrew the objection.  That's all that I know of it.  I wasn't involved in any discussions or agreements.  That's why I didn't issue any orders.

Transcript of Feb. 17, 2011 hearing, at 12.

Despite the absence of the required court order, BrownGreer notes in the report appended to the Court's September 9th order that on September 2, 2010 it disbursed settlement checks to the Stratton group, or $19,271,639.  Footnote 3 claims that the disbursement was made "as directed." The preceding discussion establishes, however, that the directions did not come from this Court.

As obliquely noted in note 3 of the BrownGreer report, by Order rendered on October 19, 2010, this Court ruled that the attorneys' fee assessment would be 6.5%.  Thus, all contributors to the fund were due a 1.5% refund from the 8% that had been held back by BrownGreer.  In the case of the Stratton group, this *Court-authorized* refund, although already paid without authorization, amounted to $7,235,409.  Thus, BrownGreer notes in carefully-chosen words, "the $19,271,639 disbursed to the Objector Firms was $12,036,230 greater than the applicable 1.5% rebate amount of $7,235,409."[2]

The shortfall at issue in this memorandum is the $12,036,230 paid out to the Stratton group. These facts are referred to as clear evidence that when the FAC entered into its compromise agreement with both Placitella and Weinberg, the FAC did so with full knowledge of the shortfall

---

[2] Unfortunately for Snapka and Becnel, members of the Stratton group who sought to distance themselves from the unauthorized settlement by depositing their Stratton payments into the registry of the Court, the 1.5% authorized rebate went unnoticed, and they returned the *full* amounts without holding back the rebate to which they were entitled.

created by the settlement with the Stratton objectors; they had no reason to expect that any shortfall was to be shouldered by anyone other than members of the FAC.

## DISCUSSION

**1.      Motions already pending before the Court resolve the shortfall.**

Pending before this Court are Objectors' Motion to Limit Fees (Rec. Doc. 62805) and Motion to Restore Common Benefit Fund (Rec. Doc. 62715). Placitella and Weinberg adopt the substance of those arguments, and reurge and incorporate them herein.  Also pending is a motion for additional discovery, which movants also adopt.  Included among the discovery requests are inquiries into the interest earned on the account and all charges against that interest. Movants cannot properly address the handling of the shortfall without knowing what funds are in the CBF.

**2.      Any shortfall must come from the FAC's share of the CBF because it negotiated, and recommended an allocation, without disclosing the shortfall that it created.**

Aside from the violations of this Court's orders and its conduct discussed in prior motions, there is an additional reason why the FAC should bear the cost of the shortfall. When the FAC negotiated with all of the claimants, both objectors and non-objectors, it knew there was a shortfall in the fund – no one else did. Objectors tried to discover that information from BrownGreer, and the FAC vehemently opposed transparency.  Accordingly, non-objectors and objectors who settled accepted the FAC's offers, which have largely been approved by this Court, on the supposition that the amount they accepted was available to be paid. The FAC, however, knew otherwise. In this circumstance, the shortfall must come from the FAC's share of the CBF. It negotiated with knowledge that there was not enough money to pay the allocation it recommended to this Court, and told no one, maybe not even this Court, that this was the case. Since there is not enough money to

pay the recommended allocation, the shortfall must come from the FAC's share.

This is especially true since this problem would never have occurred if the FAC had notified this Court, and all of the claimants, that there was in fact a shortfall in the CBF, and that its recommended allocation was limited to available funds. Then, everyone would have been on notice, and this Court would have, assuming it approves of the Stratton distribution, allocated what was available, presumably awarding to the non-objectors and the settling objectors the amount they agreed to take, and making up the shortfall from the firms that caused it, or who accepted the risk of it by PROMISING recommendations of certain amounts to all the non-objecting firms and settling firms, without ever mentioning that the recommendation might in fact be something less because the money to fund the recommended allocation was not available.

/s/ Robert E. Arceneaux
_____
Robert E. Arceneaux, La Bar No. 01199
ROBERT E. ARCENEAUX LLC
47 Beverly Garden Drive
Metairie, LA 70001
(504) 833-7533 office
(504) 833-7612 fax
rea7001@cox.net

MARGARET E. WOODWARD, La. Bar
No.13677
3701 Canal Street, Suite C
New Orleans, Louisiana  70119
(504) 301-4333 office
(504) 301-4365 fax
mewno@aol.com

Pascal F. Calogero, Jr., La. Bar No. 03802
AJUBITA, LEFTWICH & SALZER, L.L.C.
1100 Poydras Street
New Orleans LA 70163-1950
(504) 582-2300 office
(504) 582-2310 fax
pcalogero@alsfirm.com

Attorneys for Eric H. Weinberg, Chris Placitella, and Cohen, Placitella and Roth

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Memorandum has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail, and by upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre Trial Order No. 8, on this 16th day of September, 2011.

_Robert E. Arceneaux_

_____

AO 88B  (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Eastern District of Louisiana

| | |
|---|---|
| IN RE: VIOXX | ) |
| *Plaintiff* | ) |
| v. | )   Civil Action No.   MDL NO. 1657 |
| PRODUCTS LIABILITY LITIGATION | ) |
| | )   (If the action is pending in another district, state where: |
| *Defendant* | )   ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:  BROWN GREER, PC

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material:   SEE ATTACHMENT

| Place: Margaret E. Woodward, 3701 Canal St., Ste. C, New Orleans, LA., or via email mewno@aol.com | Date and Time:<br><br>02/28/2011 1:00 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date:   02/18/2011

|  *CLERK OF COURT* | |
|---|---|
| | OR |
| _____ | _____ |
| *Signature of Clerk or Deputy Clerk* | s/ Margaret Woodward<br>*Attorney's signature* |

The name, address, e-mail, and telephone number of the attorney representing *(name of party)*   those persons identified as Objectors in Feb. 8, 2011 Court Order                                     , who issues or requests this subpoena, are:

Margaret E. Woodward, 3701 Canal St., Suite C, New Orleans, LA. 70119, (504) 301-4333, mewno@aol.com,  co-lead counsel for Objectors

EXHIBIT 1

AO 88B  (Rev.  06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   MDL NO. 1657

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏  I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

❏  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

 **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

 **(2)** *Command to Produce Materials or Permit Inspection.*

 **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

 **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

 **(i)** At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

 **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

 **(3)** *Quashing or Modifying a Subpoena.*

 **(A)** *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

 **(i)** fails to allow a reasonable time to comply;

 **(ii)** requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

 **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

 **(iv)** subjects a person to undue burden.

 **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

 **(i)** disclosing a trade secret or other confidential research, development, or commercial information;

 **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

 **(iii)** a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

 **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

 **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

 **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

 **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

 **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

 **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

 **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

 **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

 **(2)** *Claiming Privilege or Protection.*

 **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

 **(i)** expressly make the claim; and

 **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

 **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: VIOXX | * | MDL NO. 1657 |
| | * | |
| PRODUCTS LIABILITY | * | |
| LITIGATION | * | SECTION  L |
| | * | |
| THIS DOCUMENT RELATES | * | JUDGE FALLON |
| TO ALL CASES | * | MAG. JUDGE KNOWLES |
| | * | |
| FILER: Robert E. Arceneaux/Margaret Woodward | * | February 21, 2011 |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

### ATTACHMENT A TO BROWN GREER PC SUBPOENA DUCES TECUM

1.  Copies of all bank statements of all accounts established by you, under your control, or for which you serve any administrative or clerical function, in connection with the duties and responsibilities given to you by court order in MDL 1657, *In re Vioxx Products Liability Litigation*;

2.  Copies of all correspondence, letters, e-mails, or other documents, written or electronic, including Court orders , or directives of any person or entity, instructing disbursement of any funds from any such accounts to any attorney or law firm;

3.  Copies of any and all documents or work papers or spreadsheets, written or electronic, which show the amount of money that has been paid to any individual or firm, or any tabulation of the total thereof,  from any fund that is under your control or administration which was established for the payment of fees or costs to those individuals or firms who have made or will make a claim for entitlement to "common benefit" fees and expenses, including funds established by Court order or by Chapter 9 of the Master Settlement Agreement;

4.  Copies of any and all documents or work papers or spreadsheets, written or electronic, which show the amount of money any individual or firm has contributed to the fund that has been awarded to the claimants for common benefit fees in the order of the Court dated October 19, 2010.