**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE:  VIOXX | ) | MDL NO. 1657 |
| PRODUCTS LIABILITY LITIGATION | ) | |
| | ) | Section L |
| | ) | |
| THIS DOCUMENT RELATES | ) | JUDGE FALLON |
| TO ALL CASES | ) | MAGISTRATE KNOWLES |
| | ) | SPECIAL MASTER JUNEAU |
| FILER:  THE BRANCH LAW FIRM | ) | |
| _____ | ) | Submission Date:  September 16, 2011 |

**BRANCH LAW FIRM'S BRIEF IN RESPONSE TO THE COURT'S**
**ORDERS OF SEPTEMBER 9 AND 12, 2011 AND THE**
**CLAIMS ADMINISTRATOR'S COURT REPORT NO. 30**

Common Benefit Attorneys' Fees Claimant and Objector the Branch Law Firm

respectfully submits the following brief in response to the Court's Orders of September 9 and 11,

2011 and the Vioxx Claims Administrator's Court Report No. 30.  As set forth below, the

purported "report" merely indicates the amount remaining in the Vioxx Common Benefit Fee

Fund (*i.e.,* $302,406,562.50) but fails to adequately and completely explain how a shortfall in

excess of $12 million occurred.

Therefore, for the reasons set forth below, the Branch Law Firm requests the following:

(1) That the Court establish procedures for determining the causes of the shortfall in the
Common Benefit Fund (the "Fund") as called for in the Court's August 25, 2010
Order;

(2) That the Court issue an Order to Show Cause to BrownGreer, PLC, the Claims
Administrator, and to the Vioxx Fee Allocation Committee (the "FAC") to ascertain
the circumstances related to the adjustments made to the Fund, especially with respect
to the adjustment for payments to Objector Firms;

1

(3) That the Court grant the Objectors' Motion to Limit Fees dated April 11, 2011 (Docket No. 62805) which is incorporated herein by this reference, which requests, as a sanction, forfeiture of the FAC members' common benefit fee allocation[1] as a result of their apparent *ultra vires* acts in directing the Claims Administrator to disburse held attorneys' fees from the Fund without a Court order, violation of the rules of professional responsibility, violation of their duties owing the Fund, possible breaches of fiduciary duty, and without disclosing the transfer to the Court and to all attorneys who contributed 6.5% of their fees to the Fund for the benefit of common benefit counsel;

(4) That the Court stay the disbursement of any and all funds until the entirety of the shortfall is resolved; by requesting this relief, the Branch Law Firm is not waiving its Motion to Stay disbursements pending the already-filed appeal of the common benefit fee allocation; and

(5) That the Court vacate its August 9, 2011 Order allocating common benefit fees until such time as additional investigation and information regarding the shortfall can be completed and obtained.

## Argument

1.   Pursuant to this Court's August 25, 2011 Order, the Claim Administrator was directed to "provide to the Court a report of the amount it currently holds as common benefit fees derived from the 6.5% assessment on settlement proceeds. The Court will then post that report on its web site and establish appropriate procedures for determining *the cause of any shortfall and how that shortfall shall be addressed.*" *Id.,* emphasis added.  In response to this Order, the Claims Administrator provided its Court Report No. 30, a one-page document labeled "Summary of Common Benefit Fee Withholdings" (the "Summary"), a copy of which is attached to the Court's September 9, 2011 Order.

2.   The Summary reflects four categories of adjustments made to the gross amount of the common benefit fees of $315,250,000.00.  The Branch Law Firm does not quarrel with the

---

[1]   In its August 9, 2011 Order & Reasons, the Court allocated $205,707,063.84, or 65%, of the $315,250,000.00 purportedly remaining in the Fund to the members of the Fee Allocation Committee.

first three adjustments at this point--those for fixed fee payments in the amount of $689,650.00,

for special marker/other payments in the amount of $45,265.66, or for fees paid to Special

Master Juneau pursuant to the Court's April 13, 2011 Order--although reserves the right to object

to these adjustments when additional information become available.  However, the Branch Law

Firm objects to the Claims Administrator's attempt to explain the adjustment for "payments to

objector firms" set forth in footnote 3 of the Summary, an amount that equals 6.1% of the total

Fund.

3.   The Claims Administrator's explanation raises more questions than it attempts to

answer.  For example, in footnote 3 the Claims Administrator states "[p]ursuant to an agreement"

it disbursed "$19,271,639 to 78 Objector Firms" but fails to indicate the nature of the agreement,

when it was made, or the parties to the agreement.  Surely in its August 25, 2011 Order the Court

expected the Claims Administrator to provide more information regarding the multi-million

dollar disbursement than just that the amount was disbursed.

4.   In addition, the Claims Administrator goes on to say in footnote 3 that it distributed

$19,271,639 to 78 objector firms but does not identify those 78 firms, to whom the distribution

was made, or how much each firm received under the undisclosed agreement.

5.   The Claims Administrator further states it "distributed" $19 million from the Fund

"as directed" on September 2, 2010 but does not state pursuant to whose direction it acted.  This

Court did not enter any Order directing the Claims Administrator to disburse 6.1% of the total

Fund to any firm on September 2, 2010.  As the Court stated in its August 5, 2011 Order, "the

Court was _not made aware_ of the particulars of the agreement with the objectors, that the

objectors would receive a refund, or that payments representing the reduced assessments may

have been made out of the common benefit fund without an Order from the Court as required by

3

the MSA."  In fact, the Court "did not order that disbursement."  (Emphasis added.)

6.  At the deposition of Andy Birchfield taken May 6, 2011 in connection with the dispute concerning the Fee Allocation Committee's proposed allocation of common benefit fees, Mr. Birchfield testified that he directed BrownGreer, the Claims Administrator, to transfer the amount of $18,549,236.85 to Michael Stratton, who represented the objectors, as follows:

Q.    And who authorized the transfer by BrownGreer to Michael Stratton of *$18,549,236.85*?

A.    The NPC and Merck.

Q.    *Who made the call to BrownGreer or wrote the letter to BrownGreer or issued the instructions for that transfer?*

A.    *I did.*

Q.    *Anybody at BrownGreer question you on whether you had a court order for that?*

A.    *Not that I recall.*

Q.    Okay.  Who on the FAC was aware of the Stratton agreement?

A.    I think all of the members of the Fee Allocation Committee were aware.

Q.    Did all of them approve that agreement?

A.    As far as I know, yes.

. . . .

Q.    So, *everybody on the FAC knew about it*?

A.    *Yes.*

Q.    *What about the PSC, did everybody on the PSC know about it*?

A.    *No.*

4

Deposition of Andy D. Birchfield, Jr. taken May 6, 2011, at 73:21-75:2, cited copies of which are attached hereto as Exhibit A (emphasis added).

7.   Mr. Birchfield's deposition testimony raises more questions regarding the Claims Administrator's Summary.  First, Mr. Birchfield testified that he authorized the Claims Administrator to transfer *$18,549,236.85* to Mr. Stratton.  However, the Summary states that $19,271,639 was distributed.  Therefore, information is needed to explain the difference between what Mr. Birchfield apparently authorized to be transferred from the Fund and why the Claims Administrator actually disbursed more than that sum.  Second, Mr. Birchfield's testimony raises the alarming issue of why the Claims Administrator disbursed fees from the Fund simply after receiving a phone call from Mr. Birchfield rather than pursuant to a Court Order requiring such disbursement.  Third, even more alarming is Mr. Birchfield's admission that he requested the transfer of funds--and his fellow committee members were aware of it--even though the Court "did not order that disbursement" and "was not made aware of the particulars of the agreement with the objectors, that the objectors would receive a refund, or that payments representing the reduced assessments may have been made out of the common benefit fund without an Order from the Court as required by the MSA."  *See* August 5, 2011 Order.

8.   In light of the glaring examples of apparent misconduct by both the Claims Administrator and the Fee Allocation Committee regarding the distribution of more than $19 million in fees held in trust for the common benefit attorneys, the Court's August 9, 2011 Order allocating common benefit fees was premature because the allocations were made prior to the Summary being posted and without consideration of the facts and circumstances surrounding the distribution of 6% of the Fund.  Thus, the Order should be vacated so that additional information regarding the September 2010 disbursement can be obtained.  That a distribution of this size was

made *without court authorization* is highly irregular and is yet further proof of what has already been raised: that the allocation process fell far short of transparency and fairness to the detriment of those attorneys who contributed 6.5% of their fees to the Fund.

### Conclusion

WHEREFORE, for the reasons set forth above, the Branch Law Firm respectfully requests that the Court (1) establish procedures for determining the cause of the shortfall in the Fund identified in the Summary; (2) issue an Order to Show Cause to the FAC and to the Claims Administrator to disclose the circumstances relating to the adjustments made to the Fund; (3) grant the Objectors' April 11, 2011 Motion to Limit Fees, and for such other and further relief as the Court may deem just and proper; and (4) stay the disbursement of any and all funds until the entirety of the shortfall of common benefit fees in the Fund is resolved; and (5) vacate its August 9, 2011 Order allocating common benefit fees until such time as additional investigation and information regarding the shortfall can be completed and obtained; as (6) for such other and further relief as this Court deems just and proper.

Respectfully submitted,

Dated:  September 16, 2011                                    **THE BRANCH LAW FIRM**

Turner W. Branch
tbranch@branchlawfirm.com
2025 Rio Grande Blvd. NW
Albuquerque, New Mexico 87104
(505) 243-3500 (telephone)
(505) 243 - 3354 (telefax)

## **CERTIFICATE OF SERVICE**

I hereby certify that the above and forgoing document has been served upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8, and that the foregoing was electronically filed with the Clerk of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system, which will send a Notice of Electronic Filing

_____
Turner W. Branch