UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Vioxx | * | **MDL Docket No. 1657** |
| | * | |
| PRODUCTS LIABILITY | * | **SECTION L** |
| LITIGATION | * | |
| | * | **JUDGE FALLON** |
| This document relates to: | * | |
| | * | **MAGISTRATE JUDGE** |
| **Edwin C. Hench and** | * | **KNOWLES** |
| **Maureen O. Hench (h/w)** | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | |
| | * | |
| **Merck & Co., Inc.** | * | |
| Defendant. | * | |
| | * | |
| **Case No. 2:06cv09811** | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**DEFENDANT MERCK & CO., INC.'S MEMORANDUM IN OPPOSITION TO
THE HENCH PLAINTIFFS' AMENDED MOTION FOR A PROTECTIVE ORDER**

The Hench plaintiffs have brought this lawsuit alleging that Merck's medication caused Mr. Hench to experience a pulmonary embolism – a condition typically caused by blood clots in the veins of the legs. Documents previously produced in discovery identify two additional health care providers who may have provided treatment or consultation to Mr. Hench regarding vascular and hematologic issues – specialties that directly relate to any alleged problems with blood clots in the veins or legs. Plaintiffs object to Merck collecting records from these two providers because, in their view, the physicians "have little or no connection to Mr. Hench's care" (Plaintiff's Supporting Brief ("Pl. Br.") at 3) and Merck has not yet shown that these physicians "potentially have relevant information," (*id.* at 2). Rule 26(b) of the Federal Rules of Civil Procedure does not permit plaintiffs to limit discovery that on its face directly relates to the

1069953v.1

claims and defenses at issue in this litigation.  Their motion should be denied.  In support of its position, Merck further states as follows:

      1.  Plaintiff Edward Hench filed this personal injury action against Merck alleging that his ingestion of Vioxx caused him to have a pulmonary embolism in 2000.  *See* Complaint filed 9/15/2006 ("Compl.") ¶ 4.  The Henches assert multiple claims in their complaint, and as to virtually every claim, they assert that Mr. Hench sustained bodily injury and harm as a result of Merck's actions or inactions.  *See, e.g.,* Compl. ¶ 137 ("Plaintiffs sustained serious injury"); ¶ 145 ("suffered serious injuries and damages").  Plaintiffs have asserted not only past injuries but claim that those injuries continue into the future.  *See*, e.g., Compl. ¶ 183 ("Plaintiffs have incurred and will continue to incur:  serious physical injury, pain and suffering, loss of income, loss of opportunity, loss of family and social relationships, and medical and hospital expenses and other expenses related to the diagnosis and treatment thereof"); ¶ 184 ("Plaintiffs ingested Vioxx and suffered serious and permanent injuries"); *id.* ("Plaintiffs have been prevented from pursuing their normal activities and employment, have experienced severe pain and suffering and mental anguish").

      2.   Based on the claims they have asserted and the allegations set forth in their complaint, plaintiffs have unquestionably placed their physical and emotional condition (past and present) at issue in this litigation.

      3.  Pursuant to the framework set out in PTO 18(C), Merck used the general authorization initially provided by Mr. Hench to request medical records from providers identified in Mr. Hench's Plaintiff Profile Form.  Those records revealed additional health care providers relating to Mr. Hench, and pursuant to PTO 18(C), defense counsel notified plaintiffs' counsel of the intent to seek records from the newly identified providers.  Plaintiffs' counsel

objected.  Ultimately, the scope of the dispute was narrowed to two health care providers:  Dr. David Calcagno (of Calcagno and Rossi Vein Center) and Dr. Suzanne Wolanin-Saifi.

4. Plaintiffs appear to take issue with the number of medical providers from whom Merck seeks records.  But concerns about "some other agenda," Pl. Ex. C, are entirely misplaced.  Mr. Hench experienced his pulmonary embolism in calendar year 2000 – almost 11 years ago.  It is not surprising that over a 10-15 year period, someone would be seen by dozens of health care providers practicing across numerous hospitals, clinics, and other facilities – each generating and maintaining their own records.[1]  Although some of these records may be overlapping, experience has shown that these different providers frequently have some amount of non-duplicative records.

5. Rule 26(b)(1) establishes an extremely broad scope of discovery, and permits parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."  *See Carolyn And Edward Myers, Jr. V. State Farm Fire & Casualty Company*, 2009 WL 3353223 (E.D.La.) at *3 (Rule "26(b)(1) provides for a broad definition of relevant information.").  The key issue is whether the discovery sought relates to the claims and defenses of either party.  The medical records here clearly do.

6. "Where compensation is sought for personal injury the health of the Plaintiff both before and after the accident may be inquired into."  *Miller v. Colonial Refrigerated Transp. Inc.*, 81 F.R.D. 741 (M.D. Pa. 1979) (citing 4 Moore's Federal Practice P 26.56(1)).  In such

---

[1] For example, a relatively common procedure such as an arthroscopic knee surgery can generate records from a half-dozen or more separate entities:  the primary care doctor who makes the referral, an orthopedic surgeon who conducts the procedure, a cardiologist who consults in advance to assess the risks of the surgery as to a particular patient, the facility whether the cardiologist and/orthopedist conducts pre-surgical testing, the lab which performs blood work prior to and after the surgery, the hospital where the surgery takes place, the rehab facility where the patient may be discharged to for additional recuperation, and/or the physical therapist who provides post-surgical care.

circumstances "there can be no dispute as to the relevancy of the material sought." *Id.* (denying motion to quash subpoena for psychiatric records).

    *7. **Dr. Wolanin-Saifi.*** Dr. Wolanin-Saifi is a hematology-oncology consultant in the Harrisburg, Pennsylvania metropolitan area. According to records obtained from Associated Cardiology, Dr. Wolanin-Saifi referred Mr. Hench to that practice group for treatment. Because Dr. Wolanin-Saifi was a health care provider who referred Mr. Hench to that practice, it is reasonable to conclude that Mr. Hench consulted with Dr. Wolanin-Saifi at some point prior to that referral. Moreover, given that internet research shows that Dr. Wolanin-Saifi holds herself out as a hematology-oncology consultant (in addition to being a family practitioner), Dr. Wolanin-Saifi may have information particularly relevant to Mr. Hench's medical condition. *See* Exhibit 1 (attached hereto) (collection of screenshots taken on 9/15/2011). For instance, pulmonary emboli are frequently caused by blood clots in the veins, and persons experiencing such clots are frequently referred to a hematologist for assessment. Since Mr. Hench has alleged that his Vioxx consumption caused him to suffer a pulmonary embolism, any hematology consults that he may have had would be highly relevant.[2]

    *8.* The precise basis of plaintiffs' objection to collecting records from Dr. Wolanin-Saifi is unclear. They seem to suggest that because at one time Dr. Wolanin-Saifi has or has had a relationship with Harrisburg Hospital and/or Pinnacle Health, a records request to those facilities should be sufficient. However, Dr. Wolanin-Saifi appears to have her own private practice and would likely have her own notes and records. Moreover, even if those institutions would have records relating to Dr. Wolanin-Saifi (e.g., Dr. Wolanin-Saifi happened to have

---

[2]    Plaintiffs' brief asserts that Merck would request records from Associated Cardiology "in Dr. Wolanin-Saifi's name." Pls. Br. at 2. This assertion is incorrect.

treated Mr. Hench at Harrisburg Hospital), Merck has had difficulty procuring records from those facilities.[3]

9. **Dr. David Calcagno.** Dr. David Calcagno is a vascular surgeon in private practice in Mechanicsburg, Pennsylvania at the Calcagno & Rossi Vein Treatment Center. It was revealed through other medical records that Dr. Calcagno conducted a vascular study of Mr. Hench in 2001. *See* Plaintiffs' Exhibit C at 4 (4/5/2001 Vascular Study).[4] Any examination and/or treatment of a patient's arteries and veins is clearly relevant in a case where a plaintiff is alleging that clots in those same arteries and veins were caused by Vioxx. Because the medical procedure performed by Dr. Calcagno occurred at Harrisburg Hospital, plaintiffs' counsel assumed that such a procedure took place while Dr. Calcagno "was on duty at Harrisburg Hospital" and that he was "merely reading and signing off on an image during a hospital rotation." *See* Plaintiffs' Exhibit C at 2 (8/31/2011 Letter of Megan Hastings). Even if Dr. Cox's treatment of Mr. Hench was limited to that 2001 vascular study, Dr. Cox may have his own relevant notes and records relating to Mr. Hench arising from that study, and that alone would warrant procuring such material. However, it is also possible that Dr. Cox has other records relating to Mr. Hench from treatment before or after that 2001 study, and those would likewise clearly be relevant.[5] If he has no such records, then his staff will inform us of that fact.

---

[3]  Pinnacle Health is a very large regional healthcare and hospital system comprised of numerous different facilities including, *inter alia,* three hospitals, two cancer centers, ten cardiovascular facilities, and scores of specialty care clinics. *See* http://www.pinnaclehealth.org/facilities-locations/.

[4]  This exhibit was attached to Plaintiffs' Memorandum in Support of Amended Motion Pursuant To PTO 18(C) and F.R. Civ. P. 26(C) for a Protective Order.

[5]  For instance, there is nothing in the existing records suggesting that Dr. Calcagno, who has his own stand along practice in a separate facility, would generically be "on duty" at Harrisburg Hospital. It is highly plausible that Dr. Cox went to see one of his patients who had been admitted to the hospital.

10. Counsel speculates at to what role these physicians may or may not have played in Mr. Hench's care. But Merck is not required to rely on such speculation or rely solely on plaintiff's memory. Merck can seek the potential evidence directly from the source. As the court is aware, it is a fundamental fact of litigation that memories are imperfect, and they also tend to fade over time. Merck should not be restricted in its discovery efforts based solely on whether or not Mr. Hench can recall a particular consultation that may have taken place more than 10 years ago.

11. The threshold for establishing relevance at the discovery state is a low one. *Rangel v. Mascorro*, 274 F.R.D. 585 (S.D. Tex 2011) (collecting cases). Where relevance is in doubt "the court should be permissive in allowing discovery." *Id.* (internal quotations omitted). In short, "a request for discovery should be allowed unless it is clear that the information sought can have ***no possible bearing*** on the claim or defense of a party." *Id.* (emphasis added) (citations omitted). It is possible that these two physicians may have no records at all for Mr. Hench. But it is also possible that they do. And if such records exist, they would be relevant to this litigation for the reasons explained above.

12. Plaintiffs have the burden of establishing that the discovery sought here is improper. Thus, they "have the burden of clarifying, explaining, and supporting [their] objections." *Bible v. Rio Properties, Inc.*, 246 F.R.D. 614 (C.D.Cal. 2007). Plaintiffs have failed to meet their burden.

13. Federal Rule of Civil Procedure 26(c) sets forth limitations on the scope of discovery. A court must limit the otherwise broad scope of discovery if it determines that (i) the discovery is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome or less expensive."; (ii) the requesting party "has had

ample opportunity to obtain the information"; or (iii) "the burden or expense of the proposed discovery outweighs its likely benefit" when considered in light of a variety of factors involving the size and needs of the case, the parties' resources and the importance of the issues. *See* F.R.C.P. 26(b)(2).

14. None of the concerns set forth in Rule 26(b)(2) are implicated here. These two health care providers have been directly linked to the plaintiff and they potentially have records that have not previously been produced by and/or could not be procured from other sources. Plaintiffs bear no burden or expense in complying with these requests since they are not being asked to search for or pay for the requested records. Any such production would be performed entirely at Merck's expense. Nor is there any undue burden or expense imposed on the healthcare providers. It is not "burdensome" for a member of a physician's staff to check whether someone was actually a patient and whether they still have records. If they do not, they check a box on a simple form stating that they do not have any records – a form provided by the record collection service and transmitted along with the request for records. If they do have such records, then Merck will pay the associated costs of producing them.

15. Plaintiffs assert that Merck "exhausts providers and claimants alike with repeated and never-ending records requests, re-issuance of authorizations, and execution of specific forms." Pl. Br. at 3. Aside from lacking any merit or foundation, that assertion, has no applicability to healthcare providers generally, or to the two specific physicians at issue here. These two physicians have never been the recipients of prior records request for Mr. Hench. And as for plaintiffs, these are personal injury actions where plaintiffs assert past, present and future injuries and where they continue to receive medical care. Moreover, this litigation has been proceeding for many years. It is reasonable to update collections to account for subsequent

care, to seek valid authorizations where prior ones have expired, and to attempt to comply with requests from specific facilities who require their own authorizations. There is nothing abusive about such a process.

16. Because they bear the burden of establishing that these records fall outside the broad scope of Rule 26(b)(1), plaintiffs must establish either "that there [is] *no possibility* that the requested records may be relevant to the claim or defense of any party," or they must show that the requested records are "of such marginal relevance that *the potential harm occasioned by the discovery would outweigh the ordinary presumption*" in favor of broad discovery. *Merrill v. Waffle House*, 227 F.R.D. 467, 473-74 (N.D. Tex. 2005) (emphasis added). Plaintiffs have made no showing that the records of Dr. Calcagno (a vascular surgeon) or Dr. Wolanin-Saifi (a hematology-oncology consultant) have "no possibility" of being relevant to the claims and defenses asserted in Mr. Hench's case – a case premised on allegations concerning venous blood clots. Nor have plaintiffs articulated a single harm that would result from these two physicians producing records regarding Mr. Hench, if they have them to produce. Vague assertions about a speculative burden that may be imposed on the healthcare providers cannot outweigh the presumption in favor of broad discovery.

17. Mr. Hench's medical condition (past, present, and future) is clearly at issue in this case. These two health care providers treated Mr. Hench in some relevant capacity. A request for medical records from those providers clearly falls within the scope of permissible discovery, and imposes no burden or potential harm of any kind on plaintiff. The motion should be denied.

## **CONCLUSION**

      Merck respectfully requests that the Court deny Plaintiffs' Motion.

Dated:  September 16, 2011

                                          Respectfully submitted,

                                          */s/ Dorothy H. Wimberly*
                                          Phillip A. Wittmann, 13625
                                          Dorothy H. Wimberly, 18509
                                          STONE PIGMAN WALTHER
                                          WITTMANN L.L.C.
                                          546 Carondelet Street
                                          New Orleans, Louisiana 70130
                                          Phone: 504-581-3200
                                          Fax:    504-581-3361

                                          Defendants' Liaison Counsel

                                           —and—

                                          Douglas R. Marvin
                                          Eva Petko Esber
                                          M. Elaine Horn
                                          WILLIAMS & CONNOLLY LLP
                                          725 Twelfth Street, N.W.
                                          Washington, D.C. 20005
                                          Phone: 202-434-5000
                                          Fax:    202-434-5029

                                          Attorneys for Merck & Co., Inc.

1069953v.1

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Merck's Opposition to the Hench Plaintiffs' Amended Motion for Protective Order has been served on Liaison Counsel, Russ Herman, Phillip Wittmann and Ann Oldfather, by U.S. Mail and e-mail or by hand delivery and e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8C, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 16th day of September, 2011.

>  /s/ Dorothy H. Wimberly
> Dorothy H. Wimberly, 18509
> STONE PIGMAN WALTHER
> WITTMANN L.L.C.
> 546 Carondelet Street
> New Orleans, Louisiana  70130
> Phone:  504-581-3200
> Fax:     504-581-3361
> dwimberly@stonepigman.com
>
> Defendants' Liaison Counsel

1069953v.1