UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: VIOXX * MDL NO. 1657 | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| THIS DOCUMENT RELATES | * | JUDGE FALLON |
| TO ALL CASES | * | MAG. JUDGE KNOWLES |
| | * | |
| FILER: Becnel Law Firm | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**BECNEL LAW FIRM'S MEMORANDUM REGARDING
SHORTFALL IN COMMON BENEFIT FUND**

**MAY IT PLEASE THE COURT**:

This memorandum is respectfully submitted on behalf of the Becnel Law Firm in response to this Court's order of September 9, 2011, inviting comment on the $13,000,000 shortfall in the common benefit fund ("CBF"). (Rec. Doc. 63360).

As a prefatory matter, the BrownGreer report appended to the order is seemingly incomplete. Paragraph 9.2.3 of the Master Settlement Agreement provides that "the attorneys' fees and common benefit expenses deducted by the Claims Administrator shall be deposited into an interest bearing escrow account." Presumably, this was done; but the Brown Greer report does not account for the moneys earned in interest. The fund was created pursuant to PTO 49 signed on September 23, 2009. One would expect to see an accounting of the interest earned since that time. The report also does not account for moneys paid as fees to the accountants, reported to be in excess of $1,000,000. The interest earned on the CBF should have been enough to absorb such costs, with enough left over also to absorb the lesser reported shortfalls caused by payments to the Special Master and adjustments for common benefit fees not withheld from fixed payments, special marker, and other payments. Combined, these adjustments total a relatively modest

$807,207.50. Certainly then an accounting as to the interest earned is of significance when considering the amount held in the Common Benefit Fund and any shortfall related thereto.

The real problem arises out of the **$12,036,230.00** "adjustment for payments to Objector firms," -- the Stratton payout. As counsel for Objectors,[1] the court-appointed co-lead and liaison counsel for objectors attempted to investigate this. BrownGreer distributed $19,271,639 to Mr. Stratton, who distributed it to other objectors after retaining a portion for his attorneys fees. As best as we can determine, this occurred as a result of a simple phone call from Andy Birchfield to BrownGreer, instructing it to wire the money into Mr. Stratton's account. The objectors directed a number of inquiries to the issue, contending that they had a fundamental right to know how much money resided in the CBF. Their interrogatories, requests for production, deposition inquiry, and subpoenas were objected to by the FAC and Brown Greer, and it appears as if this Court may not have ever resolved those disputes (Rec. Docs. 57345, 62567, 62693, 62732; Records Subpoena attached hereto as Exhibit 1). Also still pending are Objectors' Motion to Limit Fees (Rec. Doc. 62805) and Motion to Restore Common Benefit Fund (Rec. Doc. 62715).

What is clear and known to a certainty is that no order authorized the transfer of almost 5% of the fund to parties who were not asked to demonstrate a contribution to the common benefit, and many of whom made no such contribution. As the Court would say during a hearing on Feb. 17, 2011:

BY THE COURT: The only thing I know of it is that there was an objection to the

---

[1] The Court appointed Mr. Arceneaux, Mrs. Woodward, and Mr. Carolgero as co-lead and liaison counsel for the objectors to the FAC's proposed allocation of the CBF, hereinafter "the Objectors". This group is to be distinguished from an earlier group of firms which objected to the proposed 8% assessment of common benefit fees from the overall recovery of attorney fees. The latter objectors, whose lead counsel was Stratton, were the recipients of the subject payment, hereinafter, "the Stratton group." Two firms, Snapka and Becnel, belonged to both groups of objectors.

> total sum of the common benefit fund, that Mr. Stratton represented the objectors, and I . . . gave them the opportunity to do some discovery early on. They did some discovery. They had some issues. I resolved the discovery issues, the evidentiary issues. They proceeded on with the case. I was advised that the objectors withdrew the objection. That's all that I know of it. I wasn't involved in any discussions or agreements. That's why I didn't issue any orders.

Transcript of Feb. 17, 2011 hearing, at 12.

Despite the absence of the required court order, BrownGreer notes in the report appended to the Court's September 9th order that on September 2, 2010 it disbursed settlement checks to the Stratton group, or $19,271,639. Footnote 3 claims that the disbursement was made "as directed." The preceding discussion establishes, however, that the directions did not come from this Court.

As obliquely noted in note 3 of the BrownGreer report, by Order rendered on October 19, 2010, this Court ruled that the attorneys' fee assessment would be 6.5%. Thus, all contributors to the fund were due a 1.5% refund from the 8% that had been held back by BrownGreer. In the case of the Stratton group, this *Court-authorized* refund, although already paid without authorization, amounted to $7,235,409. Thus, BrownGreer notes in carefully-chosen words, "the $19,271,639 disbursed to the Objector Firms was $12,036,230 greater than the applicable 1.5% rebate amount of $7,235,409."[2]

The shortfall at issue in this memorandum is the $12,036,230 paid out to the Stratton group. These facts are referred to as clear evidence that when the FAC entered into its compromise agreement with both Placitella and Weinberg, the FAC did so with full knowledge of the shortfall created by the settlement with the Stratton objectors; they had no reason to expect that any shortfall was to be shouldered by anyone other than members of the FAC.

---

[2] Unfortunately for Snapka and Becnel 2 Unfortunately for Snapka and Becnel, members of the Stratton group who sought to distance themselves from the unauthorized settlement by depositing their Stratton payments into the registry of the Court, the 1.5% authorized rebate went unnoticed, and they returned the *full* amounts without holding back the rebate to which they were entitled.

**DISCUSSION**

**1.     Motions already pending before the Court resolve the shortfall.**

Pending before this Court are Objectors' Motion to Limit Fees (Rec. Doc. 62805) and Motion to Restore Common Benefit Fund (Rec. Doc. 62715). Placitella and Weinberg adopt the substance of those arguments, and reurge and incorporate them herein. Also pending is a motion for additional discovery, which movants also adopt. Included among the discovery requests are inquiries into the interest earned on the account and all charges against that interest. Movants cannot properly address the handling of the shortfall without knowing what funds are in the CBF.

**2.     Any shortfall must come from the FAC's share of the CBF because it negotiated, andrecommended an allocation, without disclosing the shortfall that it created.**

Aside from the violations of this Court's orders and its conduct discussed in prior motions, there is an additional reason why the FAC should bear the cost of the shortfall. When the FAC negotiated with all of the claimants, both objectors and non-objectors, it knew there was a shortfall in the fund – no one else did. Objectors tried to discover that information from BrownGreer, and the FAC vehemently opposed transparency. Accordingly, non-objectors and objectors who settled accepted the FAC's offers, which have largely been approved by this Court, on the supposition that the amount they accepted was available to be paid. The FAC, however, knew otherwise. In this circumstance, the shortfall must come from the FAC's share of the CBF. It negotiated with knowledge that there was not enough money to pay the allocation it recommended to this Court, and told no one, maybe not even this Court, that this was the case. Since there is not enough money to pay the recommended allocation, the shortfall must come from the FAC's share.

This is especially true since this problem would never have occurred if the FAC had notified this Court, and all of the claimants, that there was in fact a shortfall in the CBF, and that

its recommended allocation was limited to available funds. Then, everyone would have been on notice, and this Court would have, assuming it approves of the Stratton distribution, allocated what was available, presumably awarding to the non-objectors and the settling objectors the amount they agreed to take, and making up the shortfall from the firms that caused it, or who accepted the riskof it by PROMISING recommendations of certain amounts to all the non-objecting firms and settling firms, without ever mentioning that the recommendation might in fact be something less because the money to fund the recommended allocation was not available.

/s/ Daniel E. Becnel, Jr.
_____
Daniel E. Becnel, Jr. (La Bar Roll 2926)
P.O. Drawer H,
Reserve, LA 70084
Phone: 985.536.1186
Fax:    985.536.6445
dbecnel@becnellaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Memorandum has been served on Liaison Counsel, Russ, and by upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre Trial Order No. 8, on this 16th day of September, 2011.

s//Daniel E. Becnel, Jr.