# ADMINISTRATIVE AGREEMENT

This Administrative Agreement ("Agreement") is by and among: (a) BrownGreer PLC, a professional limited liability corporation located at Canal Crossing I – Suite 400, 115 S. 15th Street, Richmond, VA 23219 ("BrownGreer"); (b) Merck & Co., Inc., a New Jersey corporation (together with its successors and assigns,"Merck"); and (c) certain plaintiffs' counsel appointed to the Executive Committee of the Plaintiffs' Steering Committee in *In re Vioxx Products Liability Litigation*, collectively referred to as the "Negotiating Plaintiffs' Counsel" (the "NPC") (with BrownGreer, Merck and the NPC collectively referred to as the "Parties"). In consideration of the mutual promises and obligations set out in this Agreement, the Parties agree as follows.

## I. BACKGROUND RECITALS

**1.01**  *Settlement Agreement.*  Merck and the NPC entered into a Settlement Agreement on November 9, 2007 (as it may be amended from time to time in accordance with the terms thereof, the "Settlement Agreement"). The Settlement Agreement is attached as **Exhibit A**.

**1.02**  *Purpose of this Agreement.*  Merck and the NPC have determined to retain the services of BrownGreer to perform the role of Claims Administrator under the Settlement Agreement and BrownGreer has agreed to perform those functions.

## II. DEFINITIONS

**2.01**  *Incorporation of Definitions in the Settlement Agreement.*  All capitalized terms used in this Agreement have the meanings ascribed to them in the Settlement Agreement unless a different definition is set forth in this Agreement.

**2.02**  *Agreement* means this Administrative Agreement, as it may be amended from time to time in accordance with the terms hereof.

**2.03**  *BrownGreer Confidential Information* has the meaning given it in Section 4.04(b) of this Agreement.

**2.04**  *Legal Demand* has the meaning given it in Section 4.04(e) of this Agreement.

**2.05**  *Services* has the meaning given it in Section 3.01 of this Agreement.

**2.06**  *Settlement Agreement* has the meaning given it in Section 1.01 of this Agreement.

**2.07**  *Term* has the meaning given it in Section 4.01 of this Agreement.

## III. DUTIES OF BROWNGREER

**3.01** *Services and Compensation.* BrownGreer shall provide all services necessary to perform the role of Claims Administrator under and in accordance with the Settlement Agreement and such other services, if any, as the Parties from time to time mutually agree in writing (collectively, the "Services"). BrownGreer will minimize costs whenever possible and assign appropriate levels of ability and experience for Services performed. For the Services, BrownGreer will be paid for actual time incurred at the rates shown in the attached billing rate schedule (**Exhibit B**), and for the reasonable out of pocket expenses incurred in connection with these Services. Any changes to the hourly rates charged by BrownGreer must be approved in advance by Merck and a majority in number of the NPC.

**3.02** *No Attorney-Client Relationship.* While the principals of BrownGreer and some of its employees are attorneys licensed to practice law in the Commonwealth of Virginia and BrownGreer has legal expertise and experience that improve its ability to provide the Services, BrownGreer shall not have an attorney-client relationship with any of the Parties or with any claimants under the Settlement Agreement. Instead, BrownGreer shall act in a fiduciary capacity as the neutral Claims Administrator.

**3.03** *Billing and Reimbursement of Fees and Expenses.* BrownGreer shall submit Payment Reports in accordance with Section 5.1.6 of the Settlement Agreement. Payments shall be made to BrownGreer pursuant to Section 5.1.8 of the Settlement Agreement. In connection therewith, the following procedures shall govern the billing and reimbursement of BrownGreer's fees and expenses referred to in Section 3.01 of this Agreement:

**(a)** Promptly after the end of each calendar month, BrownGreer shall submit to Merck an invoice for such calendar month (in form reasonably acceptable to Merck), together with documentation evidencing the incurrence of all expenses reflected thereon.

**(b)** If, within 15 Business Days after its receipt of such invoice and documentation, Merck does not deliver to BrownGreer a written objection to such invoice (or any part thereof), then such fees and expenses shall be included as Administrative Expenses Payables in the next Payment Report.

**(c)** If, within the 15 Business Day period referred to in Section 3.03(b), Merck delivers to BrownGreer a written objection to such invoice (or any part thereof), then Merck and BrownGreer shall use reasonable efforts to resolve the dispute and, unless and until the dispute is resolved, the fees and expenses reflected on such invoice shall not be included in a Payment Report; provided, however, that if Merck objects to a portion, but not all, of the amounts so invoiced, then the amounts not in dispute shall be included as Administrative Expenses Payables in the next Payment Report.

**(d)** In the event that BrownGreer claims indemnification for any amounts pursuant to Section 4.06 of this Agreement, BrownGreer shall include such amounts on an invoice submitted pursuant to Section 3.03(a) of this Agreement, together with documentation evidencing the

2

incurrence thereof, and the procedures set forth above in this Section 3.03 shall similarly apply to such amounts.

**3.04** *Services for Other Clients*. BrownGreer shall allocate sufficient resources to fulfill the requirements of this Agreement. BrownGreer's obligations under this Agreement, however, shall not prevent or prohibit BrownGreer from providing services to other clients provided, that BrownGreer agrees that none of its other obligations shall interfere in any way with, or pose any conflict to its ability to discharge any of its obligations set forth in, this Agreement.

**3.05** *Access to Records and Facilities*. Upon reasonable notice, BrownGreer shall permit reasonable access to Merck and its authorized agents, attorneys and/or representatives and to the NPC during normal working hours to the records and facilities used to provide the Services for the purpose of reviewing and/or auditing BrownGreer's processes, procedures and work; provided, however, that nothing in this Agreement is intended to or shall expand Merck's access to PME Records beyond what is expressly permitted by the Settlement Agreement. Such access shall include, without limitation, access to any and all of the original, executed Releases and Dismissal With Prejudice Stipulations, for the purpose of verifying the receipt of such documents and confirming that they have been properly executed and are in proper form. BrownGreer shall also (i) give Merck and its authorized agents, attorneys and/or representatives online access to any and all Enrollment Forms, for the purpose of verifying the receipt of such Enrollment Forms and confirming that they have been properly completed and properly executed by the various person specified therein and (ii) coordinate and cooperate with Merck and its authorized agents, attorneys and/or representatives for the electronic transfer of any and all data to reconcile the completed Claimant Spreadsheets at registration and enrollment (and any changes thereto) filed and served in accordance with the Registration Orders and the Settlement Agreement. It is understood and agreed that this Section 3.05 is without limitation of the respective audit rights of Merck and the NPC, and the audit obligations of BrownGreer, set forth in the Settlement Agreement.

**3.06** *Disaster Recovery Plan.* BrownGreer shall maintain in effect (and keep current) a written disaster recovery plan to protect the data, records and files it receives or generates in performing the Services and to permit the prompt resumption of Services in the event of a disaster. The disaster recovery plan (and any updates thereto) shall be reasonably satisfactory to Merck and a majority in number of the NPC and shall provide, without limitation, for a "hot" backup site (with computer systems and backups of data), incremental backups of data (daily and weekly), and storage of original documents in secure locations.

**3.07** *Settlement Agreement.* By signing this Agreement, BrownGreer agrees to be bound by, perform and comply with all the terms of the Settlement Agreement applicable to the Claims Administrator under the Program. In connection therewith (and without limitation thereof):

**(a)** In the event that BrownGreer creates any administrative procedures in accordance with Section 6.2.2 of the Settlement Agreement, or modifies any documents in accordance with Section 6.2.3 of the Settlement Agreement, BrownGreer shall promptly provide Merck and the NPC with copies thereof.

    **(b)**    BrownGreer shall keep the liaison committee referred to in Section 6.2.4 of the Settlement Agreement apprised of BrownGreer's activities under this Agreement, and shall meet with the committee from time to time, through procedures to be mutually developed by BrownGreer and such committee.

    **(c)**    In the event that BrownGreer is at any time provided with a Letter of Credit, BrownGreer shall not draw on such Letter of Credit except as expressly authorized in, and otherwise in compliance with, the terms of the Settlement Agreement.

    **(d)**    In the event that there is a shortfall in a Settlement Fund at any time the Escrow Agent is required, in accordance with the Escrow Agreement and the Settlement Agreement, to make payment of MI QPC Payables or IS QPC Payables, as the case may be, BrownGreer shall direct the Escrow Agent in writing on the manner in which the Escrow Agent shall make full payment of such MI QPC Payables or IS QPC Payables, as the case may be, as the Escrow Agent has the funds in such Settlement Fund to pay (as opposed to making pro rata Settlement Payments).

    **3.08.**  *Reports*.  BrownGreer shall develop standard periodic reports to apprise Merck, the NPC and the courts in the Coordinated Proceedings of the progress of the administration of the Settlement Agreement and shall provide *ad hoc* reports as reasonably requested by either the NPC or Merck.

## IV.  GENERAL PROVISIONS

    **4.01**  *Term of Agreement*.  The term of this Agreement ("Term") commenced on November 9, 2007, and shall continue until the Services have been concluded, unless previously terminated pursuant to Section 4.05 of this Agreement.

    **4.02**  *Independent Contractor*.  Nothing contained in this Agreement or in the Settlement Agreement shall be deemed or construed to create any partnership, joint venture, employment or agency relationship between BrownGreer, on the one hand, and Merck and/or the NPC, on the other hand, it being understood and agreed that, in performing the Services, BrownGreer is and shall be an independent contractor.  BrownGreer shall be solely responsible for filing all tax returns and paying any income, government required pension scheme contributions, or other tax levied upon or determined with respect to the payments made to BrownGreer pursuant to this Agreement.  Without limitation of the foregoing, BrownGreer shall not hold itself out as having any authority to enter into any contract or create any obligation or liability on behalf of, in the name of, or binding upon, Merck and/or the NPC.

    **4.03**  *Standard of Work Product and Services*.  BrownGreer agrees that all Services performed by it under the terms of this Agreement shall:  (i) not infringe any copyright, patent, trade secret, or other proprietary right held by any third party; (ii) be performed and completed in a diligent, professional and commercially reasonable manner (and in any event using not less than the same degree of skill and care as BrownGreer exercises with respect to its other clients in

rendering comparable services); and (iii) be in compliance with all applicable laws, rules and regulations.

      **4.04**    *Confidentiality.*

      **(a)**    *Settlement Agreement.* BrownGreer agrees to comply with the confidentiality obligations set forth in Section 15.1 of the Settlement Agreement, as though it were a party to the Settlement Agreement.

      **(b)**    *BrownGreer Confidential Information.* In the course of the administration of the Program, Merck and the NPC may gain access to confidential and proprietary information relating to the business, business practices and operations of BrownGreer. This confidential and proprietary information is referred to as "BrownGreer Confidential Information."

      **(c)**    *Non-Disclosure of BrownGreer Confidential Information.* With respect to any BrownGreer Confidential Information, whether furnished before or after the date of this Agreement, each of Merck and the NPC (i) shall hold and treat such BrownGreer Confidential Information in full confidence and (ii) subject to Section 4.04(e), shall not use or disclose such BrownGreer Confidential Information except as necessary in connection with the administration of the Program, as required by law or listing agreements, or as may be necessary to enforce, or exercise their respective rights under, this Agreement and/or the Settlement Agreement.

      **(d)**    *Precautionary Measures.* Merck and the NPC shall take reasonably necessary measures to protect the confidentiality of the BrownGreer Confidential Information.

      **(e)**    *Legal Demand for Disclosure.* If a Party other than BrownGreer receives a subpoena or other legal demand for disclosure of any of the BrownGreer Confidential Information (a "Legal Demand"), it shall promptly notify the other Parties of the Legal Demand in writing and inform the requesting party that the information can only be disclosed with the approval of a court with applicable jurisdiction. If the Parties do not obtain: (i) the withdrawal of the Legal Demand; or (ii) a court order precluding the effectiveness of the Legal Demand, then such Party may comply with the Legal Demand.

      **4.05**    *Termination.*

      **(a)**    *Provisions for Termination.* Prior to the completion of the Services, this Agreement may be terminated by Merck and a majority in number of the NPC, acting together, (i) upon not less than three months' written notice to BrownGreer or (ii) immediately upon written notice to BrownGreer, if BrownGreer has breached any of the terms of this Agreement and such breach is not cured within 30 days after receipt by BrownGreer of written notice of such breach.

      **(b)**    *Delivery upon Termination.* Upon a termination of this Agreement pursuant to this Section 4.05, BrownGreer shall deliver to the successor Claims Administrator (or, if a successor Claims Administrator has not yet been named, to the Special Master), all data, records, and files obtained by BrownGreer incident to this Agreement, and BrownGreer shall not retain any copies thereof or extracts therefrom. In addition, BrownGreer shall cooperate with Merck, the NPC and the successor Claims Administrator to provide an orderly transition of the Services

to the successor Claims Administrator.  If this Agreement is not terminated pursuant to this Section 4.05, then, at the end of the Term, BrownGreer shall handle such data, records and files as directed by Merck and the NPC.

**(c)** *Effect of Termination*.  The following provisions of this Agreement shall survive the expiration or termination of this Agreement: Section 3.03 (with respect to any outstanding invoices or Payment Reports), Section 3.05 (for one year following termination pursuant to Section 4.05(a)), Section 4.02, Section 4.04, Section 4.05(b) and this Section 4.05(c), Section 4.06, and Sections 4.08 through 4.18 (to the extent applicable to the foregoing provisions).  Furthermore, upon the expiration or termination of this Agreement, none of the Parties shall be relieved or released from liability for any breach of any representation or agreement contained herein.

**4.06** *Indemnification of BrownGreer.*  BrownGreer shall be indemnified from the Administrative Expenses Fund for all costs, expenses, fees (including reasonable attorneys' fees), and damages paid or payable to third parties that it incurs as the result of any action, suit or proceeding against BrownGreer arising out of the provision of the Services pursuant to this Agreement, but only to the extent such costs, expenses, fees and damages are not attributable to a breach by BrownGreer of any of the terms of this Agreement (including, without limitation, the standard of care set forth in Section 4.03 of this Agreement).  Notwithstanding anything herein to the contrary, in no event shall BrownGreer be indemnified for any such amounts it incurs (i) arising out of or with respect to any liability excepted from the first sentence of Section 6.3 of the Settlement Agreement or (ii) in connection with the settlement of any action, suit or proceeding referred to above, or as the result of BrownGreer ceasing to defend against any such action, suit or proceeding, in each case without the prior written consent of Merck.  In addition, reasonable fees or costs of BrownGreer personnel incurred in connection with any matter for which BrownGreer is indemnified under this Section are deemed to be within the definition of Services in Section 3.01.

**4.07** *BrownGreer's Representations and Warranties.*  BrownGreer represents and warrants that:

**(a)** *Valid Corporation.*  BrownGreer is a Professional Limited Liability Corporation organized under the laws of the Commonwealth of Virginia.

**(b)** *Authorization.*  The execution, delivery and performance of this Agreement has been duly authorized by all necessary corporate action on the part of BrownGreer, and this Agreement is a valid and binding obligation of BrownGreer, enforceable in accordance with its terms.

**(c)** *No Default or Violation.*  The execution, delivery and performance of this Agreement by BrownGreer does not and shall not breach or constitute a default under or result in a violation of any agreement, any applicable law, rule or regulation, or any court or governmental order binding upon BrownGreer.  All approvals, permits and licenses, if any, that are required to be obtained by BrownGreer for the provision of the Services under this Agreement have been so obtained and are in full force and effect.

6

**(d)** *No Disqualification.* BrownGreer is not disqualified from providing the Services under this Agreement.

**4.08** *Entire Agreement.* This Agreement contains all of the agreements of the Parties with respect to the subject matter of the Agreement. No prior or contemporaneous agreement pertaining to such matter shall be effective for any purpose.

**4.09** *Headings.* The headings used in this Agreement are inserted for convenience only and shall not affect the construction or interpretation of any provisions of this Agreement.

**4.10** *Applicable Law.* This Agreement shall be governed by the laws of New York without regard to any choice of law rules that would require the application of the laws of another jurisdiction.

**4.11** *Waiver.* The failure of any Party to insist, in any one or more instances, upon performance of any of the terms or conditions of this Agreement shall not be construed as a waiver or a relinquishment of any right granted under this Agreement.

**4.12** *Amendment.* No modification or amendment of this Agreement shall be effective unless in writing and signed by the authorized representatives of the Parties.

**4.13** *Severability.* If any portion of this Agreement is determined by a court of competent jurisdiction to be invalid or unenforceable, such determination will not invalidate or render the remainder of the Agreement unenforceable. Rather, the relevant provision shall be deemed modified to the extent necessary to render it enforceable and, if it cannot be so modified, this Agreement shall be construed as though it never contained the portion that is invalid or unenforceable.

**4.14** *Binding Obligation; Assignment.* This Agreement shall be binding upon and will inure to the benefit of the Parties, their successors and permitted assigns; ~~provided~~ however, that neither this Agreement nor any of the rights, interests or obligations hereunder may be assigned or delegated by BrownGreer without the prior written consent of Merck and a majority in number of the NPC. Any assignment in violation of this Section 4.14 shall be null and void ab initio.

**4.15** *No Third Party Beneficiaries.* No provision of this Agreement is intended to create any third party beneficiary to this Agreement. Without limitation of the foregoing, nothing in this Agreement confers on any Program Claimant or Enrolling Counsel (other than the NPC) any privity of contract with, or other right to institute any action against, BrownGreer.

**4.16** *Counterparts.* This Agreement may be executed in any number of counterparts, each of which shall be an original and all of which shall together constitute one and the same instrument.

**4.17** *Force Majeure.* No Party shall be liable for failure to perform any of the terms of this Agreement if and to the extent such failure has been caused solely by fire, war, insurrection, government restrictions, act of God, disaster, civil disorders, curtailment of transportation facilities or other emergency beyond the control of the nonperforming Party making it illegal or

impossible to perform, provided that: (a) the effects of any such cause could not have been reasonably avoided or circumvented by the nonperforming Party; (b) the nonperforming Party promptly gives notice to the other Parties and makes all reasonable efforts to resume performance as promptly as possible and to mitigate the effects of such force majeure; and (c) if BrownGreer is the nonperforming Party, it has complied with its obligations pursuant to Section 3.06 of this Agreement.

**4.18** *Notices*. All notices, requests, demands, or communications required or permitted under this Agreement shall be in writing and transmitted to the following:

**(a)** *Recipients*.

**(1)** *If to BrownGreer:*

Orran L. Brown
BrownGreer PLC
115 S. 15th Street, Suite 400
Richmond, Virginia  23219
E-mail: obrown@browngreer.com
Fax:  (804) 521-7299

**(2)** *If to Merck:*

Bruce N. Kuhlik
Senior Vice President and General Counsel
Merck & Co., Inc.
One Merck Drive
P.O. Box 100 (WS3A-15)
Whitehouse Station, New Jersey  08889-0100
E-mail: Bruce_Kuhlik@merck.com
Fax:  (908) 735-1244

**(3)** *If to the NPC:*

Andy D. Birchfield, Jr.
Beasley, Allen, Crow, Methvin, Portis & Miles, P.C.
218 Commerce Street
Montgomery, Alabama  36104
E-mail: andy.birchfield@beasleyallen.com
Fax:  (334) 954-7555

Russ M. Herman
Herman, Herman, Katz & Cotlar, LLP
820 O'Keefe Avenue
New Orleans, Louisiana  70113-1116
E-mail: rherman@hhkc.com
Fax:  (504) 561-6024

>Christopher A. Seeger
>Seeger Weiss LLP
>One William Street
>New York, New York  10004
>E-mail: cseeger@seegerweiss.com
>Fax:  (212) 584-0799

**(b)**     *Method of Transmission.*  Section 16.1.4 of the Settlement Agreement shall govern the method of transmission of notices under this Agreement.

**(c)**     *Change.*  Any Party may change the address or number for receipt of notices by written notice to the other Parties given in conformity with this Section 4.16.

[THIS SPACE LEFT INTENTIONALLY BLANK.  SIGNATURE PAGES TO FOLLOW.]

IN WITNESS WHEREOF, a duly authorized representative of BrownGreer, Merck and the NPC have executed this Agreement on the dates shown below:

**BROWNGREER PLC**
(as Claims Administrator)

By: _____
         (signature)

Name:   Orran L. Brown   
         (printed or typed)

Title:      Partner      
         (office or position)

Date: _____

**MERCK & CO., INC.**

By: _____
         (Signature)

Name:   Bruce N. Kuhlik   
         (printed or typed)

Title:   Senior Vice President and General Counsel   
         (Office or position)

Date: _____

**NEGOTIATING PLAINTIFFS' COUNSEL**

By: _____
         (signature)

Name: _____
         (printed or typed)

Date: _____