## Moberg, Sherri

**From:** Urquhart, Jack E.
**Sent:** Tuesday, March 29, 2011 8:58 AM
**To:** Moberg, Sherri
**Subject:** FW: 1099 to Kathryn Snapka

Please print

---

**From:** MStratton@StrattonFaxon.com [mailto:MStratton@StrattonFaxon.com]
**Sent:** Monday, March 28, 2011 10:24 PM
**To:** Urquhart, Jack E.
**Cc:** ksnapka@snapkalaw.com
**Subject:** Re: 1099 to Kathryn Snapka

Jack,

We did not get an award from anyone. We got a rebate for overpayment of cb fee assessment.

I really don't understand the problem here. If we had litigated this issue, and won, the money would have been rebated from that pot, and it would have been a lot more. The psc had fee agreements with the objectors for far less than the 8 percent assessed. It was an improper assessment.

The total was less than 19m-- something in the 18s.

All that ms. Snapka is getting here is a rebate of an overpayment of common benefit assessment. The check we sent her is not an award, and it is not payment for any common benefit fees. It is a rebate for an overcharge. Common benefit fees will be awarded by the court based on merit.

So I don't see how she benefits from your arguments. Under her analysis she should not get the rebate, but rather 19m should be added back into the pool somehow and then that 19m will be divided among all common benefit lawyers like the rest of the pot.

Let's say that somehow the court awards her 1 percent of the total cb pool. 1 percent of 19m is 190,000 which is less than the rebate she received from us. Even if she got 2 percent of total pool it would be 380,000 which is less. And the reality is-- its highly unlikely the judge is going to award more than 2 percent of the total pot to her-- that would be some 6- 7 million dollars.

Best course here is to enjoy the rebate and also push for a cb fee from the pot. That is the most financially prudent thing to do. Right now she is shooting herself in the foot. Arsenault is arguing from a much different place- his clients received no rebate because they didn't object to the cb fee assessment- because they had no contract with psc-- and he is trying to cause enough agita to leverage a settlement for greater portion of cb fees. I think it is transparent, unfair, and unwinnable but that's his agenda. He would not be bitching if his clients had benefitted from the rebate-- but they had no contracts and they filed no objection.
Your client did.

Mike

3/29/2011

Michael A. Stratton
STRATTON FAXON
59 Elm Street
New Haven, CT 06510
T: 203-624-9500
F: 203-624-9100
www.strattonfaxon.com
mstratton@strattonfaxon.com

---

**From:** "Urquhart, Jack E." <jeu@bmpllp.com>
**Date:** Mon, 28 Mar 2011 16:10:12 -0500
**To:** <MStratton@StrattonFaxon.com>
**Cc:** <ksnapka@snapkalaw.com>
**Subject:** RE: 1099 to Kathryn Snapka

Mr. Stratton:

Thanks for this information. I remain concerned though. The Master Settlement Agreement provides rather clearly that the funds transferred to your firm by BrownGreer, like all transfers from that fund, required Court approval. For example, the following seems quite clear:

> 9.2.3. Pursuant to Sections 9.2.1 and 9.2.2, the attorneys' fees and common benefit expenses deducted by the Claims Administrator shall by deposited into an interest bearing escrow account (the Settlement Fee and Cost Account"). The Settlement Fee and Cost Account shall be maintained at a financial institution. Funds within the Settlement Fee and Cost Account shall be administered by the Honorable Eldon E. Fallon and all awards there from will be subject to approval, upon due consideration by him . . . ."

Similar language is found elsewhere in the agreement. I can find no evidence that the funds could have been transferred by BrownGreer without Court approval. Can you offer any further information that would support the transfer? I just don't think the view that "it was a good deal" gets around the requirement for Court approval to transfers funds. Why wasn't this "agreement" presented to the Court in a public filing for approval?

Your email raises an issue about the size of the transfer to your firm. You wrote $20 million. Is that correct? It is different from the figure that is being used in court pleadings; that figure is less than $19 million. How much was it?

All of these questions are at the heart of the legal challenges that have been made about the "agreement" and fund transfer. To the extent you can help resolve or shed more light on these issues; it will help us evaluate our position. We want to proceed correctly. As it stands, Ms. Snapka, I think, sure does not appear to have gotten "a good deal." She, I think, has actually contributed a greater percentage (8%) to the common benefit fund than anyone else. She can not cash the checks you sent because of these questions, nor does she have her contribution reduced to the 6.5% amount of the common benefit fund ordered by the Court in October 2010.

Any help you can provide in getting this basic information is appreciated.

jack

3/29/2011

Beirne, Maynard & Parsons, L.L.P.
1300 Post Oak Boulevard, Suite 2500
Houston, Texas 77056

Main: 713.960.0887
Direct: 713.871.6760
Cell: 832-723-2201
Fax: 713.960.1527

jurquhart@bmpllp.com

---

**From:** MStratton@StrattonFaxon.com [mailto:MStratton@StrattonFaxon.com]
**Sent:** Friday, March 25, 2011 7:28 PM
**To:** Urquhart, Jack E.
**Cc:** ksnapka@snapkalaw.com
**Subject:** Re: 1099 to Kathryn Snapka

Jack,
I know nothing about the authority of brown greer to release funds. This was not directed by me but by ! irchfield, herman, et al.

This settlement occurred when we were on the cusp of a hearing that would have been potentially disastrous for common benefit lawyers. We had an excellent professor at harvard who was about to testify that 4 percent total for all common benefit lawyers was more than adequate. This testimony if accepted by judge fallon would have severely diminished the pot available to cb lawyers. So in an effort to avoid that testimony and get rid of pending claims by folks who had objected to the cb fee petition, the psc settled. This was a very good deal for the objectors but it was also good for all cb lawyers in that they paid 20m to get rid of a threat that could cut the pot in half by 150m or more. This is because if the hearing went forward the fee order would apply to all not just the objectors. It was much wiser to resolve with the objectors only as they were the only ones with standing to demand a hearing.

The settlement resolves ms. Snapka's rights as an individual who objected to the fee petition it does not resolve any rights she has as a cb lawyer. Nothing was waived on her behalf. Now of course if she takes money from the pot to reduce her cb fee contribution she also obviously reduces the money available for distribution to cb lawyers. But that was the very basis of her objection to the fee petition- she said it was too much going to cb lawyers and she wanted it reduced-- which is exactly what her publicly appointed liaison counsel (yours truly) did for her. There were very few cb lawyers who objected-- I think snapka, and becnel are the only 2 out of the 60 objectors I represented who also had cb claims against the remaining pot.

The fac cannot argue with any basis that snapka's cb fee should be reduced because her irpa fee was reduces-- obviously all cb allocations fell by 4-5 percent when the deal was struck but that should be equally borne by all cb lawyers not just by those who happened to get a reduced fee on their individual cases-- the basis for that reduction was a valid objection and contract that was breached not any contribution to cb work. The agreement is very clear that no rights were ever waived as to her right to a cb fee. Its a baseless argument for them to make.

I will say that all involved should be very pleased the liaison made this deal. Much was at stake and I believe the cb fee pool would be much lower for all cb lawyers if they had allowed us to present testimony at a hearing.

3/29/2011

Finally, I do apologize for my lack of restraint in pen. I was unnecessarily disrespectful to your client. I would hope however that you understand the context. I have watched from the sidelines this fee allocation fight and have witnessed libelous attacks on my character. I have been accused of all sorts of wrongs including secret deals and theft from brown greer. This may explain in a small way my rather piqued attitude.

All I did was vigorously represent objectors who wanted to reduce the cb fee pool because they believed the fee application filed by herman was too large. I did that and caused enough consternation that the matter was settled to the distinct benefit of your client. I have no idea how the deal was agreed to on the other side of the aisle. I took care of our end. The only rights we released were the rights of objectors to continue to object to the fee application filed by the cb lawyers. Your client is on both sides of this fight. We take no position on how much should be allocated to snapka aas part of this cb allocation battle, and for anyone to say that snapka's rights to a cb fee should be reduced because of her earlier objection to the overall fee is nonsense. She wears two hats and one does not impact the other. I would be more than happy to assist on any pushback needed on that claim-- but I really would appreciate it if the misinformed attacks on our role would end. We are not cb lawyers--made no claim in this battle-- amd just want our peace.

Mike

Michael A. Stratton
STRATTON FAXON
59 Elm Street
New Haven, CT 06510
T: 203-624-9500
F: 203-624-9100
www.strattonfaxon.com
mstratton@strattonfaxon.com

---

**From:** "Urquhart, Jack E." <jeu@bmpllp.com>
**Date:** Fri, 25 Mar 2011 16:55:20 -0500
**To:** <Mstratton@StrattonFaxon.com>
**Cc:** <ksnapka@snapkalaw.com>
**Subject:** 1099 to Kathryn Snapka

Mr. Stratton.

Thank you for your email. I will evaluate it.

I do have two pressing questions that are made more pressing by your email.

You do not address the issue of the authority, if any, that allowed funds to be transferred to your firm from BrownGreer. Would you please do that. You are correct that I was not "privy to the details." However, I am not aware of any source of authority other than Judge Fallon for BrownGreer to release funds. Judge Fallon, as I understand it, did not authorize this this transfer. By what authority, as you understand it, were the funds released to your firm?

You say that accepting these funds would "in no way effect her rights as a common benefit lawyer to a common benefit deal." This, at least to me, contradicts a position FAC has taken in written pleadings. They, as I understand it, take the position that a reduced assessment resulting from the arrangement they made with you does support a downward adjustment of the amount of her common benefit allocation. Could you explain in more

3/29/2011

detail why you feel so strongly to the contrary.

I regret you found it necessary describe Ms. Snapka in unflattering terms, and hope our discussions remain professional. In truth, I think there is much about this in which many are "confused." If you can address the issues raised in this email, it would be very helpful.

Thank you,

jack

Beirne, Maynard & Parsons, L.L.P.
1300 Post Oak Boulevard, Suite 2500
Houston, Texas 77056

Main: 713.960.0887
Direct: 713.871.6760
Cell: 832-723-2201
Fax: 713.960.1527

jurquhart@bmpllp.com

3/29/2011