UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: VIOXX®PRODUCTS LIABILITY LITIGATION | MDL 1657<br>SECTION L<br>JUDGE FALLON<br>MAG. JUDGE KNOWLES |
| THIS DOCUMENT RELATES TO: | <u>Case Number:<br>2:06cv09811</u> |
| **Edwin C. Hench and<br>Maureen O. Hench(h/w)** | PLAINTIFFS |
| v. | |
| **Merck & Co., Inc.** | DEFENDANT |

### PLAINTIFFS' REPLY MEMORANDUM TO DEFENDANT MERCK & CO., INC.'S MEMORANDUM IN OPPOSITION TO THE HENCH PLAINTIFFS' AMENDED MOTION FOR A PROTECTIVE ORDER

Despite the arsenal of information at its fingertips and that Merck has had since 2006 to collect these records, Merck continues to assert hardship by incorrectly maintaining the relevance of two irrelevant medical providers (out of the approximate 50 record keepers from whom it sought records—since not all are medical providers, no other term is really appropriate). As soon as Plaintiffs filed this Motion for Protective Order (originally filed 9/1/2011, resubmitted with procedural corrections on 9/5/2011), Merck took things to the next level by cancelling the deposition of Mr. Hench *the next day*, despite Plaintiffs' offer that the deponent would be re-presented if other information later made these records relevant.

On August 10, *Merck* suggested that the depositions of Mr. and Mrs. Hench be noticed for September 14 and 15, <u>a little more than a month away</u>. Merck then had over 1,000 pages of medical records available to it on its LMI database. Since common sense suggested that Merck's counsel would be prepared for a deposition they requested, Plaintiffs undertook in good faith to

arrange, and then to prepare for these depositions.  Travel was scheduled, the Henches arranged their schedules and multiple calls and conferences commenced.  Merck sent the deposition notices and then two days later (on August 19), Merck began the unanticipated onslaught of requests for more records, asking for authorizations to *thirty-six (36) more entities.*  The efforts that required are already detailed, but suffice to say that *conservatively*, dozens of emails and dozens of hours were spent to respond to Merck's requests so that this discovery could be kept on track.

Plaintiffs acceded to the vast bulk of Merck's requests, ultimately (the plaintiffs needed to be consulted about who all of these entities might be—and many were completely unrecognized) objecting to only two (2) of the proposed recipients of record requests, Dr. Wolanin-Saifi and Dr. Calcagno.  Plaintiffs nevertheless agreed that any later showing of relevancy, either by deposition testimony or incoming records from other requests, could well make these inquiries relevant in which case authorizations would be provided.

Then, on September 2, counsel for Merck issued a cancellation notice for the deposition of Mr. Hench.  Merck's "justification" in cancelling this deposition was that Merck was unable to obtain the requests in advance of the deposition because an "expedited request…has been delayed" and "Merck has had difficulty procuring records from those facilities."  However, Merck must know from extensive litigation here and in other matters, that it was unlikely to obtain even a fraction of these records prior to the Hench depositions.  Merck also cited the Motion for a Protective Order as justification for the cancellation.  Merck did not, of course, cancel the one deposition that it wanted, the depositions of Dr. Cox scheduled in conjunction with the Hench depositions.  It insisted on going ahead with that discovery, at significant increased costs to counsel to change the travel for a three day trip to a two day trip.  Merck has

not even shown the courtesy of answering counsels request (made twice at this point) that it reimburse counsel for the increased expense.  *See* Exhibit 1.

F. R. Civ. P. 26(c) states that a court must limit discovery if it determines that (i) the discovery is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome or less expensive.'" (ii) the requesting party "has had ample opportunity to obtain this information"; or (iii) "the burden or expense of the proposed discovery outweighs its likely benefit."  *See* F.R.Civ.P. 26(b)(2).

As stated in Plaintiff's original motion, the request for records from Dr. Wolanin-Saifi's *is* duplicative: Merck has already requested records from her practice group, which was identified by Merck as Associated Cardiology.  The same is true for Dr. Calcagno, who was the hospital-provided reader of a venous duplex scan.  Merck treats the medical record recovery as a process that inconveniences no one—when the reverse is true.  These physicians and their staffs can be literally worn out by repeated and baseless demands for paperwork that must be looked up and then reported as non-existent.

Merck is not harmed.  It has asked for every billing record from every insurer.  If these physicians show up there, or if Dr.Wolanin-Saifi's records are not in those from her group, then Plaintiff has no objection to the use of an authorization.

For the foregoing reasons, the Court is respectfully requested to grant Plaintiffs' Motion for a Protective Order.

3

Respectfully submitted,

/s/ Ann B. Oldfather

Ann B. Oldfather
KBA Bar #52553
Liaison Counsel/Lead Counsel
OLDFATHER LAW FIRM
1330 S. Third Street
Louisville, KY   40208
502.637.7200
502.637.3999
aoldfather@oldfather.com

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Motion for a Protective Order has been served upon Liaison Counsels, Phillip Wittmann and Russ Herman, by U.S. mail and email and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8C, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 20th day of September, 2011.

/s/ Ann B. Oldfather

Ann B. Oldfather