UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
|  | : | MDL NO. 1657 |
| IN RE: VIOXX | : |  |
| PRODUCTS LIABILITY LITIGATION | : | SECTION: L |
|  | : |  |
|  | : | JUDGE FALLON |
|  | : | MAG. JUDGE KNOWLES |
| .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. | : |  |

**THIS DOCUMENT RELATES TO ALL CASES**

### ORDER & REASONS

The history of this multi-district products liability litigation is familiar to all involved and is set forth in detail in the Court's prior Orders and Reasons. *See, e.g.*, *In re Vioxx Prods. Liab. Litig.*, 760 F. Supp. 2d 640 (E.D. La. 2010). The Court is nearing the end of the arduous process of determining the appropriate allocation of common benefit fees among the attorneys who did the work that produced the $4.85 billion Master Settlement Agreement ("MSA").

Section 9 of the MSA governed attorneys' fees. Pursuant to the agreement, Plaintiffs' Liaison Counsel (PLC) was authorized to move for an award of common benefit fees in the amount of no more than 8% of the total settlement amount. The PLC filed its motion requesting an 8% common benefit fee assessment on January 20, 2009. (Rec. Doc. 17642). The Court posted that request on its website and invited interested parties to object. Numerous parties objected for various reasons, including that certain fee contracts superseded by the MSA should limit the amount of any common benefit assessment. Because of the number of objectors, the

Court appointed Michael Stratton as Liaison Counsel for the Common Benefit Fee Application Objectors. Numerous status conferences were convened, discovery was taken, briefing was submitted, and arguments were heard. As a result of the process, those Objectors withdrew their objections and the PLC reduced the request to 7.5% of the settlement.

On October 19, 2010, the Court issued an Order and Reasons setting the common benefit fee assessment at 6.5% of the settlement amount, or $315,250,000, and setting forth procedures for a thorough, transparent process to allocate that fund among the attorneys who did the common benefit work. (Rec. Doc. 54040). The Court appointed a Fee Allocation Committee (FAC) to assemble evidence from fee applicants regarding their relative contributions to the common benefit and to prepare a recommended allocation. The Court posted that recommended allocation and invited objections. Numerous parties objected, and the Court then appointed Special Master Patrick A. Juneau to supervise discovery, briefing, and an evidentiary hearing in connection with these objections, and to prepare an independent recommended allocation.

During this allocation process, certain parties raised issues regarding a settlement agreement between the Percentage-Fee Objectors represented by Michael Stratton and Plaintiffs' Counsel, pursuant to which the objectors withdrew their objections in exchange for a reduction in their assessment to 4% of the attorney's fees earned on their individual clients' cases. It also became apparent that the Claims Administrator disbursed some of the money held in escrow as a "refund" of the difference between the 8% withheld, and the 4% agreed upon as part of the deal. Pursuant to section 9.2.3 of the Master Settlement Agreement, "Funds within the Settlement Fee and Cost Account shall be administered by the Honorable Eldon E. Fallon and all awards therefrom will be subject to approval, upon due consideration by him in consultation with the

Honorable Victoria G. Chaney, the Honorable Carol E. Higbee, and the Honorable Randy Wilson." The Court was unaware of the details of the arrangement between Plaintiffs' Counsel and the Percentage-Fee Objectors and did not order any disbursements.

During the long fee allocation process, several motions were filed regarding the Percentage-Fee settlement, including motions seeking discovery on the matter. Special Master Juneau denied discovery into the matter, and the Court denied an appeal from that ruling, stating that "the issue is premature and not within the Special Master's purview.... After making [the] final allocation, the Court will then move on to address whether the fund currently held by the Claims Administrator is sufficient to satisfy the allocation, at which time the Court will reach the questions raised regarding withdrawals from the fund." (Rec. Doc. 62883).

On August 9, 2011, the Court issued its Order and Reasons allocating the common benefit fund of $315,250,000 among the applicants who did the work. (Rec. Doc. 63195). The issue of the amount of the fund available for distribution is now ripe. On August 25, 2011, the Claims Administrator was directed to "provide to the Court a report of the amount it currently holds as common benefit fees derived from the 6.5% assessment on settlement proceeds." (Rec. Doc. 63314). The Court entered that report into the record on September 9, 2011 and published it on the Court's website. (Rec. Doc. 63360). The report disclosed a shortfall of $12,966,634.72 attributable to certain common benefit fees not withheld from fixed payments and special marker cases, Special Master Juneau's fees for his work during the fee allocation process, and a disbursement to the Percentage-Fee objectors.[1] *See id.* The Court scheduled a hearing on

---

[1] The Claims Administrator's report noted a shortfall of $72,291.84 for fees paid to Special Master Juneau, and a total of $302,406,562.50 held in escrow. (Rec. Doc. 63360 at 4). After the Claims Administrator issued its report, the Court ordered a second disbursement for the

-3-

September 21, 2011, and invited additional briefing from the parties to determine who should bear the shortfall between the $315,250,000 which the Court allocated among the common benefit attorneys, and the $302,283,365.28 actually held in escrow by the Claims Administrator.

The matter came on for hearing on September 21, 2011. The Court heard arguments from the parties and an explanation from the FAC, who explained that the shortfalls were attributable to actions of the Plaintiffs' Counsel in reaching a settlement with the Percentage-Fee Objectors, as well as agreeing with Merck not to withhold a common benefit fee assessment from certain settled claims. The representative of the FAC stated that the FAC should bear the shortfall, pro rata, because certain FAC members caused the Percentage-Fee Objector disbursement to be made, and because the a global pro rata sharing of the burden would contradict agreements between fee applicants and the FAC for recommendation of certain allocations to the Court.

The Court has reviewed the briefs and heard the argument of the parties and is satisfied that all shortfalls in the fund have been adequately explained. The Court agrees that the FAC should bear the difference between the amount the Court allocated as common benefit funds and the amount available for disbursement. To the extent that motions remain pending for additional discovery into the matter or suggest an alternative allocation of the shortfall, those motions are DENIED.

Accordingly, for the foregoing reasons, the Common Benefit Fund shortfall will be borne by the members of the Court-appointed Fee Allocation Committee, pro rata. A separate

---

remainder of the Special Master's fees, in the amount of $123,197.22. (Rec. Doc. 63406). Thus, the total shortfall attributable to the Court-ordered disbursements to the Special Master is $195,489.06, and the total held in escrow is $302,283,365.28.

judgment consistent with this Order and Reasons and the Court's Order and Reasons of August 9, 2011, shall issue setting forth the exact amounts to be distributed to each common benefit fee applicant.

New Orleans, Louisiana, this 26th day of September, 2011.

_____
UNITED STATES DISTRICT JUDGE