**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In re: VIOXX | * | |
|     Products Liability Litigation | * | |
| | * | |
| This Document Relates to: | * | MDL No. 1657 |
| | * | |
| COUNTY OF SANTA CLARA, on behalf | * | SECTION L |
| of itself and all others similarly situated, | * | |
| | * | JUDGE ELDON E. FALLON |
|           Plaintiff, | * | |
| | * | MAGISTRATE JUDGE |
|   versus | * | KNOWLES |
| | * | |
| MERCK & CO., INC., | * | |
| | * | |
|           Defendant. | * | |
| | * | |
|   Case No. 2:06-cv-09382 | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * *

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS

## TABLE OF CONTENTS

**Page**

BACKGROUND ..................................................................................................................1

ARGUMENT ......................................................................................................................4

I.      PLAINTIFF'S NJCFA CLAIM FAILS BECAUSE ITS ALLEGATIONS ARE
GOVERNED BY CALIFORNIA LAW ............................................................5

II.     EVEN IF THE NJCFA APPLIED, PLAINTIFF'S CLAIM WOULD FAIL FOR
OTHER REASONS. ............................................................................................8

        A.     Plaintiff Has Not Pled A Viable Theory Of Causation Under Any
Consumer-Fraud Statute. ...........................................................................8

        B.     Plaintiff's NJCFA Claim Would Be Subsumed By The NJPLA If It Were
Otherwise Valid. .......................................................................................15

        C.     The County Lacks Standing Under The NJCFA. ..................................17

III.    PLAINTIFF'S UNJUST-ENRICHMENT CLAIM FAILS FOR MULTIPLE
REASONS AS WELL. ......................................................................................18

        A.     California Does Not Recognize A Claim For Unjust Enrichment...........19

        B.     Even If California Recognized Unjust Enrichment As An Independent
Cause Of Action, Plaintiff's Claim Would Still Fail Because The County
Has Not Alleged That It Lacks An Adequate Remedy At Law.............21

        C.     Plaintiff's Failure To State An Adequate Theory Of Causation Also
Dooms Its Unjust-Enrichment Claim.....................................................22

CONCLUSION...................................................................................................................24

i

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

### FEDERAL CASES

*AIG Retirement Services, Inc. v. Altus Finance S.A.*,
   No. CV 05-1035-JFW (CWx), 2007 U.S. Dist. LEXIS 97652 (C.D. Cal. May 31,
   2007)....................................................................................................................22

*In re Actimmune Marketing Litigation*,
   No. C 08-02376 MHP, 2009 U.S. Dist. LEXIS 103408 (N.D. Cal. Nov. 6, 2009) ...9, 10, 15

*Arlandson v. Hartz Mountain Corp.*,
   No. 10-1050, 2011 U.S. Dist. LEXIS 56462 (D.N.J. May 26, 2011) ................................16

*Ashcroft v. Iqbal*,
   129 S. Ct. 1937 (2009) .............................................................................................4, 10

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) .................................................................................................4, 10

*Benchmark Electrics, Inc. v. J.M. Huber Corp.*,
   343 F.3d 719 (5th Cir. 2003) ..........................................................................................4

*Berry v. Indianapolis Life Insurance Co.*,
   No. 3:08-CV-0248-B, 2011 U.S. Dist. LEXIS 89414 (N.D. Tex. Aug. 11, 2011) ...............5

*Cent. Reg'l Emps. Benefit Fund v. Cephalon, Inc.*,
   No. 09-3418 (MLC), 2009 U.S. Dist. LEXIS 93636 (D.N.J. Oct. 7, 2009) .................17, 18

*Clark v. Prudential Ins. Co. of Am.*,
   No. 08-6197 (DRD), 2009 U.S. Dist. LEXIS 84093 (D.N.J. Sept. 14, 2009) ......................6

*Cooper v. Samsung Electronics America, Inc.*,
   374 F. App'x 250 (3d Cir. 2010).....................................................................................8

*In re Ditech Networks, Inc. Derivative Litigation*,
   No. C 06-5157 JF, 2008 U.S. Dist. LEXIS 119856 (N.D. Cal. Mar. 26, 2008) .................21

*Dorado v. Shea Homes Ltd. P'ship*,
   No. 1:11-cv-01027 OWW SKO, 2011 U.S. Dist. LEXIS 97672 (E.D. Cal. Aug. 30,
   2011)....................................................................................................................20

*Enreach Tech., Inc. v. Embedded Internet Solutions, Inc.*,
   403 F. Supp. 2d 968 (N.D. Cal. 2005) ...........................................................................20

*FDIC v. Bathgate*,
   27 F.3d 850 (3d Cir. 1994).............................................................................................4

*Foster Poultry Farms v. Alkar-Rapidpak-MP Equip., Inc*,
   No. 1:11-CV-00030 AWI SMS, 2011 U.S. Dist. LEXIS 61008 (E.D. Cal. June 8,
   2011)................................................................................................................20, 21

*Gray v. Bayer Corp.*,
   No. 08-4716 (JLL), 2011 U.S. Dist. LEXIS 79498 (D.N.J. July 21, 2011)....................6, 7

*Ironworkers Local Union 68 v. AstraZeneca Pharm., LP,*
    634 F.3d 1352 (11th Cir. 2011) ........................................................9

*In re K-Dur Antitrust Litig.,*
    No. 01-1652 (JAG), 2008 U.S. Dist. LEXIS 113310 (D.N.J. Mar. 19, 2008) ....................19

*Klaxon Co. v. Stentor Electric Manufacturing Co.,*
    313 U.S. 487 (1941) ........................................................6

*Laney v. Am. Standard Cos.,*
    No. 07-3991 (PGS), 2010 U.S. Dist. LEXIS 100129 (D.N.J. Sept. 23, 2010) ................6, 7

*Lum v. Bank of America,*
    361 F.3d 217 (3d Cir. 2004) ........................................................5

*Maniscalco v. Brother Int'l Corp.,*
    No. 3:06-CV-04907(FLW), 2011 U.S. Dist. LEXIS 67772 (D.N.J. June 24, 2011) ............6

*McKinney v. Google, Inc.,*
    No. 5:10-CV-01177 EJD (PSG), 2011 U.S. Dist. LEXIS 97958 (N.D. Cal. Aug. 30, 2011) ........................................................19, 20

*Memry Corp. v. Ky. Oil Tech., N.V.,*
    No. C-04-03843 RMW, 2007 U.S. Dist. LEXIS 82015 (N.D. Cal. Nov. 5, 2007)............22

*Moore v. Dallas Indep. Sch. Dist.,*
    370 F. App'x 455 (5th Cir. 2010) ........................................................4

*In re Neurontin Marketing & Sales Practices Litigation,*
    677 F. Supp. 2d 479 (D. Mass. 2010) ........................................................10, 12

*Nikolin v. Samsung Elecs. Am., Inc.,*
    No. 10-1456 (GEB), 2010 U.S. Dist. LEXIS 110942 (D.N.J. Oct. 18, 2010) ......................7

*O'Shea v. Littleton,*
    414 U.S. 488 (1974) ........................................................5

*In re Philips/Magnavox Television Litig.,*
    No. 09-3072 (PGS), 2010 U.S. Dist. LEXIS 91343 (D.N.J. Sept. 1, 2010) ........................7

*Prohias v. Pfizer, Inc.,*
    485 F. Supp. 2d 1329 (S.D. Fla. 2007)........................................................9

*Repola v. Morbark Industries, Inc.,*
    934 F.2d 483 (3d Cir. 1991)........................................................15

*Reudy v. Clear Channel Outdoors, Inc.,*
    693 F. Supp. 2d 1091 (N.D. Cal. 2010) ........................................................20

*In re Rezulin Products Liability Litigation,*
    392 F. Supp. 2d 597 (S.D.N.Y. 2005)........................................................17, 18

*S. Ill. Laborers' & Emp'rs Health and Welfare Fund v. Pfizer, Inc.,*
    No. 08 CV 5175 (KMW), 2009 U.S. Dist. LEXIS 91414 (S.D.N.Y. Sept. 30, 2009)........23

1070817v.1

*In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*,
No. 2:06-cv-5774 (SRC), 2009 U.S. Dist. LEXIS 58900 (D.N.J. July 10, 2009) .............5, 9

*In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*,
No. 2:06-cv-5774, 2010 WL 2346624 (D.N.J. June 9, 2010).......................................11, 13

*Se. Laborers Health & Welfare Fund v. Bayer Corp.*,
655 F. Supp. 2d 1270 (S.D. Fla. 2009)..................................................................24

*Smith v. Merial Ltd.*,
No. 10-439, 2011 U.S. Dist. LEXIS 56461 (D.N.J. May 26, 2011) ...................................19

*Stanislaus Food Products Co. v. USS-POSCO Industries*,
No. CV F 09-0560 LJO SMS, 2010 U.S. Dist. LEXIS 92236 (E.D. Cal. Sept. 3,
2010)...........................................................................................................21

*Stationary Eng'rs Local 39 Health & Welfare Trust Fund v. Philip Morris, Inc.*,
No. C-97-01519 DLJ, 1998 U.S. Dist. LEXIS 8302 (N.D. Cal. Apr. 30, 1998) ................21

*UFCW Local 1776 v. Eli Lilly & Co.*,
620 F.3d 121 (2d Cir. 2010)..............................................................................11

*United Food & Commercial Workers Cent. Pa. & Reg'l Health & Welfare Fund v.
Amgen, Inc.*,
400 F. App'x 255 (9th Cir. 2010)....................................................11, 13, 15

*Van Dusen v. Barrack*,
376 U.S. 612 (1964) .........................................................................................6

*In re Vioxx Products Liability Litigation*,
522 F. Supp. 2d 799 (E.D. La. 2007) ...................................................................5

*Warma Witter Kreisler, Inc. v. Samsung Electrics America, Inc.*,
No. 08-5380, 2009 WL 4730187 (D.N.J. Dec. 3, 2009) .......................................4

*In re Yasmin & Yaz (Drospirenone) Marketing, Sales Practices & Products Liability
Litigation*,
No. 3:09-md-02100, 2010 U.S. Dist. LEXIS 80758 (S.D. Ill. Aug. 5, 2010)...............12, 13

*Yates v. Aurora Loan Servs., LLC*,
No. C-11-00695 EDL, 2011 U.S. Dist. LEXIS 62644 (N.D. Cal. June 13, 2011) .............20

*Yocham v. Novartis Pharm. Corp.*,
736 F. Supp. 2d 875 (D.N.J. 2010) ...............................................................7, 19

*In re Zyprexa Products Liability Litigation*,
671 F. Supp. 2d 397 (E.D.N.Y. 2009)........................................................11, 13, 14, 23

## STATE CASES

*Castro v. NYT Television*,
851 A.2d 88 (N.J. Super. Ct. App. Div. 2004)....................................................23

*De Bouse v. Bayer*,
922 N.E.2d 309 (Ill. 2009) ..............................................................................9

*International Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co.*,
   929 A.2d 1076 (N.J. 2007) ................................................................................9

*In re Lead Paint Litigation*,
   924 A.2d 484 (N.J. 2007) ........................................................................... 15-16

*Levine v. Blue Shield of California*,
   189 Cal. App. 4th 1117 (2010) ..............................................................19, 20

*McDarby v. Merck & Co.*,
   949 A.2d 223 (N.J. Super. Ct. App. Div. 2008) ......................................16, 17

*Melchior v. New Line Products, Inc.*,
   106 Cal. App. 4th 779 (2003) ................................................................19, 20

*P.V. ex rel. T.V. v. Camp Jaycee*,
   962 A.2d 453 (N.J. 2008) .................................................................................6

*Papergraphics International, Inc. v. Correa*,
   910 A.2d 625 (N.J. Super. Ct. App. Div. 2006) .............................................17

*Sinclair v. Merck & Co.*,
   948 A.2d 587 (N.J. 2008) ......................................................................16, 23

**FEDERAL RULE**

Fed. R. Civ. P. 12(c) ....................................................................................................4

**STATE STATUTE**

N.J. Stat. Ann. §  2A:58C-1(b)(3) ...........................................................................15

1070817v.1

## <u>DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF</u>
## <u>MOTION FOR JUDGMENT ON THE PLEADINGS</u>

Plaintiff, the County of Santa Clara, has brought a putative class action against Merck, alleging that the Company misrepresented the safety of Vioxx, causing the County and its citizens to pay for Vioxx it would not otherwise have purchased.  The County seeks to certify a proposed class of similarly situated counties in California that paid for Vioxx through public hospitals and community health centers.  Plaintiff asserts that it is entitled to compensatory damages, treble damages, restitution and an award of attorneys' fees under two causes of action: alleged violations of the New Jersey Consumer Fraud Act ("NJCFA") and unjust enrichment.

As set forth below, Merck should be granted judgment on the pleadings with regard to each of Plaintiff's claims for multiple reasons.  Most obviously, the NJCFA does not cover transactions that take place in California.  In addition, Santa Clara has not pled a viable theory of causation under the NJCFA (or any of California's consumer-fraud statutes); its claim would be subsumed by the New Jersey Product Liability Act ("NJPLA"); and the County lacks standing to sue under the NJCFA because it did not engage in a "consumer transaction" with Merck. Plaintiff's claim for unjust enrichment similarly fails on the pleadings because:  (1) most courts have held that California law does not recognize a cause of action for unjust enrichment; (2) the County has affirmatively pled that it has an adequate remedy at law through the NJCFA; and (3) the unjust-enrichment claim is barred under the individualized-proof rule, embraced by this Court in the Louisiana Attorney General action.

## <u>BACKGROUND</u>

Vioxx is a prescription nonsteroidal anti-inflammatory and pain-relief drug ("NSAID") manufactured by Merck.  (*See* Compl. ¶ 2.)  The United States Food & Drug Administration

1

("FDA") approved the sale and distribution of Vioxx in 1999.  (*See id.*)  Vioxx was available in the U.S. from May 1999 until it was voluntarily withdrawn from the market in September 2004. (*See id.* ¶ 10.)

This action was brought by the County of Santa Clara on behalf of itself and "all other similarly situated California Counties" to recover funds that Santa Clara and the other counties spent on Vioxx "for the homeless, the disabled, children, and the poor through the Public Health Service Act of 1992."  (Compl. ¶ 1.)  According to the Complaint, the County "fund[s] the costs for prescription drugs, including Vioxx, for the homeless, the disabled, children, and the poor through the Public Health Service Act of 1992."  (*Id.*)  Plaintiff alleges that Santa Clara and other California counties incurred losses by paying for Vioxx they would not otherwise have paid for and by paying a premium price for Vioxx.  (*See, e.g.*, Compl. ¶ 18 (alleging that Merck's "deceptive conduct allowed it to market Vioxx at a premium price, forcing Santa Clara and the Counties to pay far in excess of what they should have"); *id.* ¶ 24 ("the Counties would not have purchased Vioxx if a full and fair disclosure of its risks and benefits had been made").)

Almost all of Plaintiff's 235-paragraph Complaint focuses on Merck's allegedly misleading statements to physicians and the scientific community generally.  (*See, e.g.*, *id.* ¶ 53 ("none of the materials provided to any target audience, whether consumers, doctors or third-party payors or PBMs discussed [Vioxx's] potentially devastating cardiovascular effects"); *id.* ¶ 79 ("From 1996 through 1998, Merck issued dozens of public statements that touted the efficacy and gastrointestinal safety of Vioxx.  Not one of these statements mentioned cardiovascular safety issues or revealed any 'mechanism based' problems with Vioxx."); *id.* ¶ 125 ("Despite the results of the VIGOR study, AERS, and other published scientific materials, Vioxx was widely advertised and marketed in a way that created the image, impression, and belief by conscientious

physicians that the use of Vioxx was safe."); *id.* ¶ 151 ("Merck further prepared for the expected backlash of its VIGOR results by preemptively issuing false and misleading information through promotional lectures."); *id.* ¶ 181 (alleging that as a result of an FDA warning letter, Merck "pull[ed] or revis[ed] the complained-of promotional materials, but persisted in refusing to include a cardiovascular warning in any of its direct-to-consumer advertisements" and that "Merck's misleading statements were already in the market and influencing the demand for its products."); *id.* ¶ 191 ("Merck's most egregious attempt to deceive physicians was through a pamphlet called the 'Cardiovascular Card,' which was also given to sales representatives to convince physicians that Vioxx did not pose any health risks.").)  By contrast, the only allegation regarding Merck's alleged interaction with Santa Clara states merely that "Vioxx was selected to be included on VMC's formulary by VMC's Pharmacy and Therapeutics Committee . . . pursuant to a 'formulary addition request' submitted by physicians that were targets of Merck representatives' sales pitch and had received promotional materials published by Merck in connection with its sales campaign, touting Vioxx's efficacy and safety," and that the formulary committee that "voted to include Vioxx on its formulary, did so because of Merck's representations regarding its purported efficacy and safety."  (*Id.* ¶ 59.)

Based on these allegations, Plaintiff asserts two causes of action:  (1) alleged violations of the New Jersey Consumer Fraud Act; and (2) unjust enrichment.  (*Id.* ¶¶ 227-35.)  Plaintiff purports to bring these claims on behalf of a proposed class composed of "[a]ll California Counties who expended funds to pay some or all of the purchase price for the prescription drug Vioxx manufactured by Merck from June 1, 1999 to October 1, 2004."  (*Id.* ¶ 218.)  Plaintiff seeks class certification, compensatory and treble damages, restitution and attorneys' fees.  (*See id.*, Prayer for Relief.)

3

**ARGUMENT**

Rule 12(c) provides that "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).

Where, as here, a Rule 12(c) motion is premised on a plaintiff's failure to state a claim for which relief can be granted, a court should analyze the motion under the same standard as a Rule 12(b)(6) motion to dismiss.  *Moore v. Dallas Indep. Sch. Dist.*, 370 F. App'x 455, 457 (5th Cir. 2010).  In order to survive a motion for judgment on the pleadings, "a plaintiff must plead enough facts to state a claim to relief that is plausible on its face."  *Id.* (internal quotation marks and citation omitted).  The "plausibility standard" requires "more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  Rather, a complaint must contain "[f]actual allegations . . . [that] raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Here, Plaintiff's claims are subject to an even higher standard than Rule 8 – the particularized pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure.  Specifically, under Federal Rule of Civil Procedure 9(b), Plaintiff was required to allege with specificity "the who, what, when, where, and how" of Merck's allegedly fraudulent misstatements and how they allegedly caused Plaintiff to suffer a loss.  *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003) (citation omitted); *see also FDIC v. Bathgate*, 27 F.3d 850, 876 (3d Cir. 1994) (applying Rule 9(b) to state law claims, including the NJCFA).  Notably, "a plaintiff cannot escape Rule 9(b) by alleging claims that do not traditionally involve fraud; rather, the test is whether the particular claim alleged in this matter sounds in fraud."  *Warma Witter Kreisler, Inc. v. Samsung Elecs. Am., Inc.*, No. 08-5380, 2009 WL 4730187, at *5 n.12 (D.N.J. Dec. 3, 2009).  Thus, Rule 9(b) applies to claims for violations

of the NJCFA and unjust enrichment where allegations of fraud underlie those allegations.  *See Berry v. Indianapolis Life Ins. Co.*, No. 3:08-CV-0248-B, 2011 U.S. Dist. LEXIS 89414, at *39 n.13 (N.D. Tex. Aug. 11, 2011) (unjust-enrichment claim was "subject to Rule 9(b)" where it was "grounded in fraud" since it was based on "misrepresentations and omissions"); *Lum v. Bank of Am.*, 361 F.3d 217, 228 (3d Cir. 2004) ("Because plaintiffs allege that the defendants accomplished the goal of their conspiracy through fraud, the Amended Complaint is subject to Rule 9(b)."); *see also In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*, No. 2:06-cv-5774 (SRC), 2009 U.S. Dist. LEXIS 58900, at *115 (D.N.J. July 10, 2009) ("*Schering-Plough I*") (dismissing, *inter alia*, New Jersey Consumer Fraud Act claims under Rule 9(b) where the plaintiffs did "not plead a single instance in which they, themselves, or any of their prescribing doctors received a misrepresentation of fact from Defendants and relied upon that misrepresentation in deciding to prescribe one of the Subject Drugs to Plaintiffs").

Plaintiff's claims fall short of both Rule 8 and Rule 9(b) for multiple reasons and must therefore be dismissed.[1]

## I.    PLAINTIFF'S NJCFA CLAIM FAILS BECAUSE ITS ALLEGATIONS ARE GOVERNED BY CALIFORNIA LAW.

This "Court has previously concluded on numerous occasions that the substantive law of the plaintiffs' home states will govern their respective claims against Merck."  *In re Vioxx Prods. Liab. Litig.*, 522 F. Supp. 2d 799, 807 (E.D. La. 2007).  Nothing about this case merits a different result.

---

[1]    Although Santa Clara seeks to assert its claims on behalf of a putative class, the only question before the Court in this motion is whether the County can plead valid causes of action against Merck.  If Santa Clara has failed this initial hurdle, further proceedings on class certification and other issues will be unnecessary because the case must be dismissed.  *See, e.g.*, *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974).

Federal courts exercising diversity jurisdiction must apply state choice-of-law rules. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941).  In cases transferred pursuant to 28 U.S.C. § 1407, the transferee court must apply the substantive state law, including the choice-of-law rules that would have applied in the transferor court.  *See Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964).  Because this suit was originally filed in New Jersey state court, the Court must apply New Jersey's choice-of-law rules.

New Jersey applies the Second Restatement's "most significant relationship" test for claims sounding in tort.  *See P.V. ex rel. T.V. v. Camp Jaycee*, 962 A.2d 453 (N.J. 2008) (abandoning "governmental-interest" test in favor of "most significant relationship" test).[2] Under this test, "§ 148 of the Second Restatement provides the relevant guidance as to which state has the 'most significant relationship' to a plaintiff's [consumer] fraud claims."  *Gray v. Bayer Corp.*, No. 08-4716 (JLL), 2011 U.S. Dist. LEXIS 79498, at *6 (D.N.J. July 21, 2011). Applying the Second Restatement test, courts should consider the following factors:  "(1) interstate comity, (2) the interests of the parties, (3) the interests underlying the substantive body of law, (4) the interests of judicial administration, and (5) the competing interests of the states." *Laney v. Am. Standard Cos.*, No. 07-3991 (PGS), 2010 U.S. Dist. LEXIS 100129, at *58 (D.N.J. Sept. 23, 2010) (internal quotation marks and citation omitted).

---

[2]       The first prong of this test "is to examine the substance of the potentially applicable laws to determine whether an actual conflict exists."  *Clark v. Prudential Ins. Co. of Am.*, No. 08-6197 (DRD), 2009 U.S. Dist. LEXIS 84093, at *15 (D.N.J. Sept. 14, 2009).  Only if the court finds that a conflict exists does the court determine which jurisdiction has the "most significant relationship" to the claim.  *Id.*  Here, as courts consistently recognize, "actual conflict exists between the potentially applicable consumer protection statutes of New Jersey [and] California," including differences in statutes of limitations, *id.* at *16, and standing requirements, *see Maniscalco v. Brother Int'l Corp.*, No. 3:06-CV-04907(FLW), 2011 U.S. Dist. LEXIS 67772, at *20-21 (D.N.J. June 24, 2011).  Thus, the Court must proceed to the "second step of the most significant relationship test . . . to weigh the factors enumerated in the section of the Restatement that corresponds to the cause of action."  *Clark*, 2009 U.S. Dist. LEXIS 84093, at *15.

6

Courts applying New Jersey's "most significant relationship" test have held that consumer-fraud claims involving allegedly defective products are generally governed by the law of the plaintiff's home state, even if the plaintiff brings its suit in New Jersey against a New Jersey manufacturer.  *See, e.g.*, *Gray*, 2011 U.S. Dist. LEXIS 79498, at *19 ("the Court concludes that the states where the putative class members purchased One-A-Day WeightSmart have the most significant relationship to Plaintiff's [consumer fraud] claims"); *In re Philips/Magnavox Television Litig.*, No. 09-3072 (PGS), 2010 U.S. Dist. LEXIS 91343, at *27-28 (D.N.J. Sept. 1, 2010) ("Montana, not New Jersey, has the 'most significant relationship' to Marshall's [consumer-fraud] claim" because that is where she "purchased her television" and "received Defendants' representations"); *Laney*, 2010 U.S. Dist. LEXIS 100129, at *72 (applying New Jersey's choice-of-law rules and concluding that "the Court would need to apply the laws of each class member's home state to the consumer fraud claims" even though defendant was headquartered in New Jersey); *Nikolin v. Samsung Elecs. Am., Inc.*, No. 10-1456 (GEB), 2010 U.S. Dist. LEXIS 110942, at *14 (D.N.J. Oct. 18, 2010) ("Because of the numerous contacts with Texas in this case – Plaintiff resides in Texas, she purchased and used the television in Texas, she was exposed to the allegedly deceptive conduct in Texas, and the television seemingly still remains in Texas – this Court finds that Texas has the most significant relationship with the instant litigation."); *Yocham v. Novartis Pharm. Corp.*, 736 F. Supp. 2d 875, 882 (D.N.J. 2010) (finding that Texas law applied to product-liability claims; "In addition to the injury having occurred in Texas, the conduct causing injury in a prescription drug products liability case, including failure to warn and warranty cases, occurs primarily where the injured party was prescribed and ingested the drug.").

For example, in *Cooper v. Samsung Electronics America, Inc*., 374 F. App'x 250 (3d Cir. 2010), the plaintiff, a resident of Arizona, filed a putative class action against an in-state manufacturer, alleging that certain of its televisions were defective.  The plaintiff asserted multiple causes of action, including a claim under the NJCFA.  *Id.* at 252.  According to plaintiff, the defendant manufacturer misrepresented the capacity of its televisions to accept a 1080p signal via their HDMI inputs.  *Id.*  The U.S. Court of Appeals for the Third Circuit agreed with the lower court that Arizona law governed plaintiff's consumer fraud claim.  Thus, the plaintiff, "who purchased the television in his home state of Arizona, is not entitled to sue under the New Jersey consumer fraud statute."  *Id.* at 255.  In so ruling, the court explained that "[t]he transaction in question bears no relationship to New Jersey other than the location of Samsung's headquarters."  *Id.*  Because Arizona had the "most significant relationship" to plaintiff's claim, Arizona law – not New Jersey law – governed.  *Id.*

This case is no different.  As in *Cooper*, Plaintiff is domiciled in California, not New Jersey.  And the only real connection between New Jersey and Plaintiff's claim is Merck's presence in the state.  But as explained in *Cooper*, a plaintiff "is not entitled to sue under the New Jersey consumer fraud statute" where "[t]he transaction in questions bears no relationship to New Jersey other than the location of [the defendant's] headquarters."  Accordingly, it is clear that California law governs Santa Clara's consumer-protection claim.  For this reason alone, its NJCFA claim fails.

## II.   EVEN IF THE NJCFA APPLIED, PLAINTIFF'S CLAIM WOULD FAIL FOR OTHER REASONS.

### A.   Plaintiff Has Not Pled A Viable Theory Of Causation Under Any Consumer-Fraud Statute.

Even if New Jersey law governed Santa Clara's consumer-fraud claim – or Santa Clara had properly sued under California's consumer-protection statutes – its consumer-fraud claim

8

would still fail because the County's allegations concerning causation, an essential element of the NJCFA, *see Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co.*, 929 A.2d 1076, 1086 (N.J. 2007), and California's various consumer-fraud statutes, *see In re Actimmune Mktg. Litig.*, No. C 08-02376 MHP, 2009 U.S. Dist. LEXIS 103408, at *37-38 (N.D. Cal. Nov. 6, 2009), are woefully deficient.[3]

Plaintiff offers no real theory of causation in its Complaint; instead, it merely alleges that it would have refused to pay for Vioxx or paid less for the drug but for Merck's alleged misconduct. (*See* Compl. ¶¶ 24, 58, 59, 229.) This perfunctory allegation appears to be based on one of two alternative theories: (1) the County would have refused to cover Vioxx for services rendered under the Public Health Services Act; or (2) fewer doctors would have prescribed Vioxx but for Merck's alleged misrepresentations. Either theory is doomed.[4]

---

[3]      In fact, Plaintiff does not even allege a cognizable theory of ascertainable loss. As the U.S. Court of Appeals for the Eleventh Circuit has explained, "the scope of potential economic injury arising from" a third-party payor's "purchases of prescription drugs is limited," and a claim for such injury is viable only where a plaintiff can allege "not only [that it] paid for the drug, but also that its prescription was medically unnecessary or inappropriate" – i.e., that each physician, "would not have prescribed the drug under the standards of sound medical practice because the drug actually was unsafe or ineffective in treating the plaintiff's condition." *Ironworkers Local Union 68 v. AstraZeneca Pharm., LP*, 634 F.3d 1352, 1362-63 (11th Cir. 2011). In other words, a third-party payor "suffers no economic injury merely" because a drug is "prescribed" and the payor pays "for a more expensive drug." *Id.* at 1363. But that is all that is alleged here. Plaintiff has made no effort to show that each and every physician "would not have prescribed [Vioxx] under the standards of sound medical practice because the drug actually was unsafe or ineffective." *Id.* Instead, the gravamen of Plaintiff's claims is that other medications were cheaper, which does not state a cognizable economic injury.

[4]      To the extent Plaintiff also alleges that Merck's alleged misrepresentations caused it to pay too much for Vioxx, as some of its allegations suggest, that theory fails too. A claim that a plaintiff "suffered economic loss where the price of [a medication] increased as a result of misrepresentations made by [a defendant]" fails because it "is, by definition, a fraud-on-the-market theory." *Schering-Plough I*, 2009 U.S. Dist. LEXIS 58900, at *78 (D. N.J. June 10, 2009); *De Bouse v. Bayer*, 922 N.E.2d 309, 316 (Ill. 2009) (rejecting price-inflation theory of recovery in case involving medicine withdrawn from the market). "[P]roof of any such 'price inflation' injury would depend on evidence that the pharmaceutical market is 'efficient' such that information about [a medicine's] efficacy results in changes in its price." *Prohias v. Pfizer, Inc.*, 485 F. Supp. 2d 1329, 1336 (S.D. Fla. 2007). However, "'such a theory is patently absurd'" because it "depend[s] on the faulty premise that the price of [a medicine] fluctuates based on the public's knowledge of [the medicine's] benefits, even though drug prices (unlike stock prices which are necessarily set by the price at which buyers are willing to buy, or sellers willing to sell) are fixed by the product's manufacturer." *Id.* at 1337 (quoting *Heindel v. Pfizer, Inc.*, 381 F. Supp. 2d 364, 380 (D.N.J. 2004)).

*First*, to the extent Plaintiff alleges that it would have refused to pay for Vioxx but for Merck's allegedly fraudulent conduct (Compl. ¶¶ 24, 59, 229), Plaintiff's Complaint does not include any facts to support such a theory.  As set forth above, in order to satisfy Rule 8's pleading requirements, Plaintiff must offer more than "'naked assertion[s]' devoid of 'further factual enhancement.'"  *Iqbal*, 129 S. Ct. at 1949 (citation omitted).  Rather, Plaintiff's complaint must "possess enough heft to 'sho[w] that the pleader is entitled to relief.'"  *Twombly*, 550 U.S. at 557 (citation omitted).  In addition, in order to meet the heightened pleading requirements of Rule 9(b), Plaintiff "'must explicitly aver the who, what, when, where, and how' of the alleged fraudulent conduct.'"  *In re Actimmune*, 2009 U.S. Dist. LEXIS 103408, at *18 (citation omitted). Plaintiff's complaint falls far short of either standard.

In its nearly sixty-page complaint, Plaintiff does not offer a single allegation to support a claim that Merck directly misled Plaintiff into covering Vioxx on its formulary.  *See In re Neurontin Mktg. & Sales Practices Litig.*, 677 F. Supp. 2d 479, 497 (D. Mass. 2010) (plaintiff TPPs' claims failed as a matter of law because there was no evidence "suggesting that [they] had direct communications with Pfizer" or "that [they] at any point directly relied on Pfizer's 'half truths'").  Instead, the best Plaintiff offers is an allegation that Merck deceived doctors about Vioxx's efficacy and safety, and that those doctors then lobbied the formulary committee to cover Vioxx.  (*See* Compl. ¶ 59.)  But this tenuous theory of causation is insufficiently supported too:  Plaintiff has not alleged which doctors pushed for Vioxx's addition to the formulary and/or that their alleged endorsement of Vioxx was based on any of Merck's alleged misrepresentations. Moreover, there is no allegation that a different decision would have been made had the doctors passed along different information.  As a result, Plaintiff's allegations that it would not have paid for Vioxx but for Merck's alleged misrepresentations are not "plausible" under *Iqbal* and

*Twombly* – let alone sufficient under Rule 9(b).  *See, e.g.*, *United Food & Commercial Workers Cent. Pa. & Reg'l Health & Welfare Fund v. Amgen, Inc.*, 400 F. App'x 255, 257 (9th Cir. 2010) (affirming district court's dismissal of TPP claims because there were too many independent links in the attenuated causal theory); *UFCW Local 1776 v. Eli Lilly & Co.*, 620 F.3d 121, 134 (2d Cir. 2010) (plaintiffs' theory of liability fails because it "rests on the independent actions of third and even fourth parties, as physicians, PBMs, and PBM Pharmacy and Therapeutics Committees all play a role in the chain between Lilly and TPPs") (internal quotation marks and citation omitted), *cert. denied*, 131 S. Ct. 3062 (2011).

**Second**, to the extent Santa Clara alleges that it suffered a loss because physicians would have written fewer Vioxx prescriptions but for Merck's alleged fraudulent conduct (*see* Compl. ¶¶ 46, 58), such a causal theory is barred under the so-called "individualized-proof rule" because the County cannot prove which Vioxx prescriptions paid for by Santa Clara would not have occurred but for Merck's conduct.  Numerous courts have so held.  *See, e.g.*, *In re Zyprexa Prods. Liab. Litig.*, 671 F. Supp. 2d 397, 453 (E.D.N.Y. 2009); *see also* Order & Reasons at 14, D.38,797, *In re Vioxx Prods. Liab. Litig.*, No. 05-md-1657 (Mar. 31, 2010) ("Louisiana AG Order") (claims based on a theory that a drug manufacturer's alleged misrepresentations generally caused more doctors to prescribe the drug are barred under the "individualized proof rule" because "[e]ach decision by each doctor and each patient was different," and it would be "simply impossible, or close to it, to determine the individual thought process of each of the thousands of doctors and patients involved"); *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, No. 2:06-cv-5774, 2010 WL 2346624, at *9 (D.N.J. June 9, 2010) ("*Schering-Plough II*") (dismissing claims because there was "insufficient information to support the conclusion that some portion of the prescriptions paid for by Named Plaintiffs have anything

11

to do with any alleged misrepresentations about off-label indications for the Subject Drugs”); *In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Prods. Liab. Litig.*, No. 3:09-md-02100, 2010 U.S. Dist. LEXIS 80758, at *23 (S.D. Ill. Aug. 5, 2010) (“multiple steps separate the alleged wrongful conduct (the fraudulent advertising campaign and/or the alleged bribery) and the alleged injuries (paying ‘too much’ for ‘too many’) YAZ prescriptions, including patient preference [and] the independent judgment of the prescribing physician”).

As this Court recognized in the Louisiana AG action, government entities cannot pursue claims against Merck based on the general theory that “Merck’s misrepresentations led to the prescription of Vioxx.”  Louisiana AG Order at 14; *see also In re Neurontin*, 677 F. Supp. 2d at 494-95 (granting defendant’s motion for summary judgment with respect to TPP claims because, *inter alia*, “a plaintiff TPP or class must prove through individualized evidence that the misrepresentation caused specific physicians, TPPs, or consumers to rely on the fraud, and cannot rely on aggregate or statistical proof”).  In *Caldwell*, the Louisiana Attorney General brought economic-loss claims very similar to those alleged in this case.  One of the Louisiana Attorney General’s causation theories was that fewer Vioxx prescriptions would have been written – and thus fewer Medicaid dollars spent – but for Merck’s alleged misrepresentations and omissions about Vioxx.  *See* Louisiana Att’y Gen.’s Mem. of Law in Opp’n to Merck’s Mot. to Dismiss Pl.’s Am. Compl. at 16 (attached as Ex. 1).  The Court held that such a theory of causation was barred as a matter of law because of the highly individualized evidence that would be necessary to prove such a claim.  According to the Court, “[e]ach decision by each doctor and each patient was different,” and therefore, the “effect that any alleged misrepresentations had on each [prescribing] decision is unique.”  Louisiana AG Order at 14.  For instance, “[m]any patients may have chosen to use Vioxx even if they had been fully informed of the risks

12

associated with it," and "many doctors may have weighed the risks and benefits of the drug and felt that in a specific case, prescribing Vioxx was an acceptable risk." *Id.* As a result, it would be "simply impossible, or close to it, to determine the individual thought process of each of the thousands of doctors and patients involved" in a single trial. *Id.* Accordingly, the Court held that the Louisiana AG could not go forward with claims based on this theory of recovery.[5]

This Court's ruling in the Louisiana AG action was based in large part on Judge Weinstein's rejection of consumer-fraud claims arising from the State of Mississippi's Medicaid payments for the prescription drug Zyprexa. *See In re Zyprexa*, 671 F. Supp. 2d at 453. In that case, the State of Mississippi asserted claims under Mississippi's Medicaid fraud statute, the Mississippi Product Liability Act, the Mississippi Consumer Protection Act, and for common-law fraud, negligence and unjust enrichment. One of the State's theories of causation was that the defendant's alleged misconduct caused more Zyprexa to be prescribed to Medicaid beneficiaries, either because doctors prescribed Zyprexa for off-label use more than they otherwise would have, or because doctors would have been more hesitant to prescribe the drug if it had come with a stronger warning. *Id.* at 454. Judge Weinstein granted the defendant's motion for summary judgment on this theory, holding that the State could not prove its theory of causation on an aggregate basis. Judge Weinstein began by explaining that, as a practical matter, Mississippi's theories of relief turned the suit into a functional class action, even though the State

---

[5]      Although the Court reached this conclusion on Merck's motion for summary judgment in the Louisiana AG case, it should reach the same conclusion here on the pleadings because, as the Court recognized in the Louisiana AG case, it would be "simply impossible, or close to it" for a court to assess individualized facts even if a plaintiff third-party payor attempted to proffer them. Thus, the Court need not await factual development to rule. *See, e.g.*, *United Food & Commercial Workers*, 400 F. App'x at 257 (dismissing TPP complaint for "fail[ing] to plead a cognizable theory of proximate causation" on a motion to dismiss); *Schering-Plough II*, 2010 WL 2346624, at *7 ("Despite the unquestionable detail in the Amended Complaint concerning the tactics employed by Schering in marketing the Subject Drugs, the allegations still fail to establish that Named Plaintiffs suffered injury fairly traceable to the misconduct at issue."); *In re Yasmin & Yaz*, 2010 U.S. Dist. LEXIS 80758, at *23, *29 (granting motion to dismiss TPP complaint because "the remoteness of the alleged injury" indicated that plaintiffs could not "meet the direct proximate cause requirement").

itself was a single party and Rule 23 had not been invoked.  The court reasoned that "[c]onceptually and structurally," "the State's suit is predicated on numerous acts of fraud . . . alleged to have individually affected a statewide population of prescribing physicians and patients."  *Id.* at 433.  Judge Weinstein went on to hold that an individualized-proof rule applies in a structural class action just as it does in a traditional class action under Rule 23.  Such a rule requires plaintiffs to prove causation on an individual basis and thus bars aggregate adjudication of claims that include a causation element.  *Id.* at 434.

Applying the individualized-proof rule to Mississippi's theories of relief, Judge Weinstein held that the State could not prevail on any theory of causation that depended on individualized showings, including the State's theory that it had spent money on prescriptions that were made as a result of the defendant's representations or warnings.  *Id.* at 454-55.  In so holding, Judge Weinstein reasoned that "[i]ndividualized proof is needed . . . to overcome the possibility that a Mississippi patient was prescribed Zyprexa for some reason other than belief in the accuracy of Lilly's warnings or representations.  Whether a more adequate warning by Lilly would have prevented any particular patient's injuries requires consideration of what the prescribing physician knew and the cost-benefit analysis that applied to the individual patient suffering from a variety of serious mental problems."  *Id.*

Here, just as in the Louisiana AG case and *Zyprexa*, any theory that physicians would have prescribed less Vioxx will turn on each doctor's decision to prescribe – and each patient's decision to take – Vioxx.  As a result, Plaintiff will need to make thousands of individualized showings on causation, entailing an inquiry that "is impractical and beyond the resources of [this] [C]ourt."  *In re Zyprexa*, 671 F. Supp. 2d at 459.

1070817v.1

For this reason too, Plaintiff's consumer-fraud claim is doomed to fail either under the NJCFA or under California's consumer-fraud statutes.  *See, e.g.*, *In re Actimmune*, 2009 U.S. Dist. LEXIS 103408, at *37-38 (dismissing with prejudice claims under three California statutes – the Unfair Competition Law ("UCL"), the False Advertising Law and the Consumer Legal Remedies Act – where the plaintiff TPP could not specify "the content of the representations conveyed by [defendant] to the prescribing doctors" and could not allege "that the doctors believed that Actimmune was an effective treatment for" idiopathic pulmonary fibrosis); *United Food & Commercial Workers*, 400 F. App'x at 257 (dismissing UCL claims where TPP failed to allege an "adequate theory of causation" that linked the alleged misconduct to the TPP's injury).

### B.     Plaintiff's NJCFA Claim Would Be Subsumed By The NJPLA If It Were Otherwise Valid.

Plaintiff's claim under the NJCFA also fails because the NJPLA provides the exclusive avenue for pursuing claims based on allegations that a manufacturer misrepresented the risk of harm posed by a product.

The NJPLA applies to any "product liability action," which is defined as "any claim or action brought by a claimant for harm caused by a product, ***irrespective*** of the theory underlying the claim, except actions for harm caused by breach of an express warranty."  N.J. Stat. Ann. § 2A:58C-1(b)(3) (emphasis added).  Applying this statute, the U.S. Court of Appeals for the Third Circuit has declared that the NJPLA "effectively creates an exclusive statutory cause of action for claims falling within its purview."  *Repola v. Morbark Indus., Inc.*, 934 F.2d 483, 492 (3d Cir. 1991) (holding that failure-to-warn product-liability claims were barred under the NJPLA).  This determination was later confirmed by the New Jersey Supreme Court, which held that the NJPLA replaced all pre-existing product-liability claims with "one unified statutorily defined theory of recovery for harm caused by a product."  *In re Lead Paint Litig.*, 924 A.2d 484, 503

15

(N.J. 2007) (internal quotation marks and citation omitted) (concluding that nuisance claims were subsumed by NJPLA).  In light of this holding, court after court has determined that claims arising out of misrepresentations concerning a product must be brought under the NJPLA.  *See, e.g.*, *Arlandson v. Hartz Mountain Corp.*, No. 10-1050, 2011 U.S. Dist. LEXIS 56462, at *27 (D.N.J. May 26, 2011) (dismissing plaintiff's "breach of implied warranty, unjust enrichment and consumer fraud claims" because they were "subsumed under the NJPLA"); *Sinclair v. Merck & Co.*, 948 A.2d 587, 596 (N.J. 2008) (NJCFA claim barred where "[t]he heart of plaintiffs' case [was] the potential for harm caused by Merck's drug," even though an NJPLA claim would not have been viable because plaintiffs did not allege injury); *McDarby v. Merck & Co.*, 949 A.2d 223, 278 (N.J. Super. Ct. App. Div. 2008) (reversing NJCFA verdicts for plaintiffs because they were based on the underlying allegation that Merck failed to disclose a risk of physical harm posed by Vioxx and plaintiffs' claims were thus "encompassed within the definition of harm set forth in the PLA").

For example, in *McDarby*, the plaintiffs asserted claims under the NJCFA, alleging that Merck failed to disclose the cardiovascular risks posed by Vioxx.  949 A.2d at 276.  The jury awarded damages in favor of plaintiffs, and Merck appealed.  *Id.*  The appellate court found in favor of Merck, holding that the claim for consumer fraud alleging economic losses was "encompassed within the definition of harm set forth in the PLA."  *Id.* at 278.  According to the court, it was "clear that what [plaintiffs] are asserting is, at its core, that Merck failed to warn of dangers from a product of which it had knowledge, resulting in alleged economic harm to them." *Id.*  The court relied on the New Jersey Supreme Court's previous characterization of the NJPLA as "'expansive and inclusive' . . . 'encompassing virtually all possible causes of action relating to harms caused by consumer and other products.'"  *Id.* at 277 (quoting *In re Lead Paint*, 924 A.2d

16

at 503)).  Because plaintiffs' claims were premised on Merck's alleged failure to disclose additional information concerning Vioxx, the court reversed the award of damages under the NJCFA, "determining that plaintiffs' CFA claims are subsumed within the PLA."  *Id.* at 279.

*McDarby* compels the same result here.  As in *McDarby*, the County's allegations center on Merck's alleged failure to warn about the alleged risks of Vioxx.  (*See* Compl. ¶ 228.)  Thus, Plaintiff cannot circumvent the NJPLA by styling "what, in essence, is a claim of failure to warn of dangers inherent in Vioxx cognizable under the PLA" as a claim "for economic loss pursuant to [the NJCFA]."  *McDarby*, 949 A.2d at 277.  For this reason too, Plaintiff's NJCFA claim fails.

### C.        The County Lacks Standing Under The NJCFA.

Finally, the County lacks standing to bring a claim under the NJCFA because it did not engage in a "consumer transaction" under that statute.  New Jersey courts have routinely held that a plaintiff suing under the NJCFA must be a consumer – i.e., a user of the product at issue. Consistent with this principle, courts have dismissed claims like this one where the plaintiffs did "not use or consume prescription medications themselves."  *See, e.g.*, *Cent. Reg'l Emps. Benefit Fund v. Cephalon, Inc.*, No. 09-3418 (MLC), 2009 U.S. Dist. LEXIS 93636, at *8 (D.N.J. Oct. 7, 2009); *see also Papergraphics Int'l, Inc. v. Correa*, 910 A.2d 625, 629 (N.J. Super. Ct. App. Div. 2006) (holding that trial court erred in applying NJCFA to sale of ink cartridges because "[p]laintiff's total purchase of 9,714 printer ink cartridges was for resale at a significant profit, not for its individual use"); *In re Rezulin Prods. Liab. Litig.*, 392 F. Supp. 2d 597, 617 (S.D.N.Y. 2005) (dismissing NJCFA claim brought by private insurer for alleged overpayment for prescription drug because the plaintiff in an NJCFA case "must be the one who in some sense benefits from the use of the good or service in question").

*Central Regional Employees* is directly on point.  There, plaintiffs, third-party payors who covered an allegedly defective prescription medication, brought a purported class action

against the defendant manufacturer.  2009 U.S. Dist. LEXIS 93636, at *3.  Plaintiffs asserted

claims for, *inter alia*, consumer fraud, alleging that the defendant "promote[d] the[] drugs for

uses other than those approved by the FDA, and that as part of its 'off label' marketing efforts,

'[defendant] made false representations regarding the use and application of [the drugs].'"  *Id.*

(quoting complaint).  The defendant moved to dismiss the consumer-fraud claim, arguing that

the plaintiffs were not "consumers" under the NJCFA.  *Id.* at *7.  The court agreed with the

defendant, reasoning that "third-party payors 'essentially serve as middlemen or insurers, paying

all or part of the cost of a beneficiary's drugs in return for a stream of payments from the

beneficiary.'"  *Id.* at *7-8 (quoting *Schering-Plough I*, 2009 U.S. Dist. LEXIS 58900, at *31-32).

The court further explained that "[b]ecause third-party payors do not use or consume prescription

medications themselves, they are not 'consumers' within the meaning of the NJCFA, and that

statute is therefore inapplicable to the circumstances alleged in the Complaint."  *Id.* at *8.

Accordingly, the court dismissed the consumer-fraud claim with prejudice.  *Id.*

The same is true here.  As in *Central Regional Employees*, Plaintiff here did not pay the

cost of Vioxx for individual use.  Instead, the County functioned as a third-party payor by paying

the cost of covered patients' prescription drugs, including Vioxx.  Thus, because the only ones

who "benefit[ted] from the use of the [drug]" were the citizens of the County – and not the

County itself – Santa Clara did not engage in a consumer transaction with Merck for purposes of

the NJCFA.  *In re Rezulin*, 392 F. Supp. 2d at 617.  Plaintiff's claim thus fails on this ground as

well.

## III.   PLAINTIFF'S UNJUST-ENRICHMENT CLAIM FAILS FOR MULTIPLE REASONS AS WELL.

Plaintiff does not identify in the Complaint what state's unjust-enrichment law it seeks to

invoke, but choice-of-law principles make it clear that this claim too is governed by California

18

law.  *See, e.g.*, *Yocham*, 736 F. Supp. 2d at 882 (holding that Texas law applied to product-liability claims, including unjust enrichment, because plaintiff was domiciled in Texas, ingested the disputed drug in that state, and received alleged misrepresentations there); *In re K-Dur Antitrust Litig.*, No. 01-1652 (JAG), 2008 U.S. Dist. LEXIS 113310, at *28 (D.N.J. Mar. 19, 2008) (holding that New York and Michigan law applied to unjust-enrichment claims of plaintiff third-party payors because those were their respective domiciliary states); *Smith v. Merial Ltd.*, No. 10-439, 2011 U.S. Dist. LEXIS 56461, at *10 (D.N.J. May 26, 2011) (applying the law of each plaintiff's home state to unjust-enrichment claims; "under the applicable Restatement provision, the [law of the] state where the injury occurs is presumed to govern").

As set forth below, however, Plaintiff cannot proceed with an unjust-enrichment claim under California law for multiple reasons:  (1) California does not recognize unjust enrichment as an independent cause of action; (2) even if such a claim could be asserted under California law, it would still fail because Santa Clara has not alleged that it lacks an adequate remedy at law; and (3) the County once again fails to plead a viable causal link in support of its claim.

A.      **California Does Not Recognize A Claim For Unjust Enrichment.**

*First*, Plaintiff's unjust-enrichment claim fails under California law because "no such cause of action exists in California."  *McKinney v. Google, Inc.*, No. 5:10-CV-01177 EJD (PSG), 2011 U.S. Dist. LEXIS 97958, at *24 (N.D. Cal. Aug. 30, 2011) (dismissing claim for unjust enrichment in case involving connectivity problems related to mobile phone on this basis); *see also, e.g.*, *Levine v. Blue Shield of Cal.*, 189 Cal. App. 4th 1117, 1138 (2010) (affirming lower court's dismissal of unjust-enrichment claim because "'[t]here is no cause of action in California for unjust enrichment'") (citation omitted); *Melchior v. New Line Prods., Inc.*, 106 Cal. App. 4th 779, 786, 793 (2003) (affirming grant of summary judgment because, *inter alia*, there is "no cause of action for unjust enrichment under California law"); *Yates v. Aurora Loan Servs., LLC*,

19

No. C-11-00695 EDL, 2011 U.S. Dist. LEXIS 62644, at *23 (N.D. Cal. June 13, 2011) ("There is no claim for unjust enrichment in California[.]"); *Reudy v. Clear Channel Outdoors, Inc.*, 693 F. Supp. 2d 1091, 1120 (N.D. Cal. 2010) ("Plaintiffs cannot state a claim for unjust enrichment because no such cause of action exists in California."), *aff'd*, 2011 WL 1594650; *Enreach Tech., Inc. v. Embedded Internet Solutions, Inc.*, 403 F. Supp. 2d 968, 976 (N.D. Cal. 2005) (granting summary judgment for defendants because "unjust enrichment is not a valid cause of action in California"). Rather, unjust enrichment is merely "a general principle, underlying various legal doctrines and remedies." *Melchior*, 106 Cal. App. 4th at 793 (internal quotation marks and citation omitted). Thus, a plaintiff attempting to bring a claim for unjust enrichment in California "must rely on some other claim that is cognizable." *Dorado v. Shea Homes Ltd. P'ship*, No. 1:11-cv-01027 OWW SKO, 2011 U.S. Dist. LEXIS 97672, at *50 (E.D. Cal. Aug. 30, 2011); *see McKinney*, 2011 U.S. Dist. LEXIS 97958, at *24 ("Unjust enrichment is not a separate cause of action but is tied to other causes of action that give rise to a right to restitution."); *Melchior*, 106 Cal. App. 4th at 793 ("The phrase 'Unjust Enrichment' does not describe a theory of recovery, but an effect:  the result of a failure to make restitution under circumstances where it is equitable to do so.") (internal quotation marks and citation omitted). Because Plaintiff has no other cognizable claims, his "claim" for unjust enrichment must be dismissed. *See, e.g.*, *Dorado*, 2011 U.S. Dist. LEXIS 97672, at *50; *Levine*, 189 Cal. App. 4th at 1138; *McKinney*, 2011 U.S. Dist. LEXIS 97958, at *24; *Enreach Tech, Inc.*, 403 F. Supp. 2d at 976; *Melchior*, 106 Cal. App. 4th at 793.[6]

---

[6]       Merck acknowledges that some courts have recognized unjust enrichment as a viable cause of action.  *See Foster Poultry Farms v. Alkar-Rapidpak-MP Equip., Inc*, No. 1:11-CV-00030 AWI SMS, 2011 U.S. Dist. LEXIS 61008, at *16-17 (E.D. Cal. June 8, 2011) (stating that "other California courts have recognized an independent cause of action for unjust enrichment" and collecting cases).  However, the better rule is "that unjust enrichment is not an independent cause of action because it is duplicative of relief already available under various legal doctrines." *Id.*; *see Reudy*, 693 F. Supp. 2d at 1120 (in California, unjust enrichment "is synonymous with restitution").  "This
*(cont'd)*

**B.**     **Even If California Recognized Unjust Enrichment As An Independent Cause Of Action, Plaintiff's Claim Would Still Fail Because The County Has Not Alleged That It Lacks An Adequate Remedy At Law.**

*Second*, even if the Court finds that California law recognizes a claim for unjust enrichment – which it should not – Plaintiff's claim would nonetheless fail for the additional reason that it has affirmatively pled that it has an adequate remedy at law:  the claim under the NJCFA.  Even among those California courts that have recognized unjust enrichment as a cause of action, there is still a requirement that the plaintiff not claim entitlement to a legal remedy. *See, e.g.*, *In re Ditech Networks, Inc. Derivative Litig.*, No. C 06-5157 JF, 2008 U.S. Dist. LEXIS 119856, at *23 (N.D. Cal. Mar. 26, 2008) (agreeing with defendant that the "Complaint fails to state a claim for unjust enrichment because Plaintiffs have not alleged that other adequate remedies are not provided by law"); *Stationary Eng'rs Local 39 Health & Welfare Trust Fund v. Philip Morris, Inc.*, No. C-97-01519 DLJ, 1998 U.S. Dist. LEXIS 8302, at *54-56 (N.D. Cal. Apr. 30, 1998) (dismissing plaintiffs' claims for "restitution to prevent unjust enrichment" because, *inter alia,* plaintiffs "may be able to state claims for fraud and misrepresentation and negligent breach of intentional duty [and therefore] cannot show that there is no adequate remedy at law").

As Plaintiff admits (Compl. ¶¶ 227-231), it has asserted entitlement to a legal remedy under the NJCFA.  Although that claim is not viable, Plaintiff's assertion of a "statutory violation[] which protect[s] it from the same alleged harm as contained in plaintiff's unjust enrichment claim" means the claim for unjust enrichment must be dismissed.  *Stanislaus Food Prods. Co. v. USS-POSCO Indus.*, No. CV F 09-0560 LJO SMS, 2010 U.S. Dist. LEXIS 92236,

_____
*(cont'd from previous page)*
conclusion is in accordance with . . . cases from other federal district courts in California."  *Foster Poultry Farms*, 2011 U.S. Dist. LEXIS 61008, at *17.

21

at *95-96 (E.D. Cal. Sept. 3, 2010).  Because the County has pled an alternative legal theory of relief, its claim for unjust enrichment fails for this reason too.

C. **Plaintiff's Failure To State An Adequate Theory Of Causation Also Dooms Its Unjust-Enrichment Claim.**

*Finally*, Plaintiff's unjust-enrichment claim fails – like its consumer-fraud claim – for lack of a viable theory of causation.  Courts have recognized that unjust-enrichment claims like Santa Clara's raise the same concerns with respect to causation as consumer-fraud claims because a plaintiff alleging unjust enrichment must show that the defendant was unjustly enriched as a result of its conduct.  *See, e.g.*, *Memry Corp. v. Ky. Oil Tech., N.V.*, No. C-04-03843 RMW, 2007 U.S. Dist. LEXIS 82015, at *25 (N.D. Cal. Nov. 5, 2007) ("Because KOT has failed to adduce any evidence that any act of STC *caused* the alleged decline in value for the rights sold to Paragon, STC is entitled to summary judgment on KOT's . . . unjust enrichment claims.") (emphasis added); *AIG Ret. Servs., Inc. v. Altus Fin. S.A.*, No. CV 05-1035-JFW (CWx), 2007 U.S. Dist. LEXIS 97652, at *74 (C.D. Cal. May 31, 2007) ("Since the Court has already found as a matter of law that Plaintiff has failed to establish any *causal connection* between Defendants' alleged fraud and Plaintiff's failure to acquire 100 percent of the ELIC insurance assets, the Court also finds as a matter of law that Defendants have not been unjustly enriched at Plaintiff's expense.") (emphasis added), *rev'd in part on other grounds*, 365 F. App'x 756 (9th Cir. 2010).  Here, the gravamen of Santa Clara's claim is that Merck was unjustly enriched because of its supposedly "unlawful" conduct with respect to Vioxx.  (*See* Compl. ¶ 234.)  Accordingly, Plaintiff must demonstrate that Merck would not have been enriched if it had not engaged in that conduct.

Plaintiff offers no explanation of how it intends to prove this claim at trial.  Instead, it merely "realleges" all of its allegations in "paragraphs 1-231," regarding Merck's allegedly

improper marketing of Vioxx and supposed attempts to "deceive physicians."  (*Id.* ¶¶ 191, 232; *see also id.* ¶¶ 6, 46, 54, 87.)  Accordingly, Plaintiff appears to hinge its unjust-enrichment claim on the theory that Merck was unjustly enriched because the County would not have covered Vioxx – or physicians would not have prescribed Vioxx – but for Merck's conduct.  As set forth above, however, the first theory of causation finds no support in the Complaint because Santa Clara does not offer any factual support for the naked claim that it would have avoided paying for Vioxx if more information had been available about the drug's risks.  And the second theory of causation is barred by the individualized-proof rule, which applies to unjust-enrichment claims with the same force that it applies to consumer-fraud and other allegations.  *See, e.g.*, *In re Zyprexa*, 671 F. Supp. 2d at 453 (applying individualized-proof rule to unjust-enrichment claim premised "on the theory that Lilly's misconduct resulted in medically unnecessary Zyprexa prescriptions that would not otherwise have been made"); *see also S. Ill. Laborers' & Emp'rs Health and Welfare Fund v. Pfizer, Inc.*, No. 08 CV 5175 (KMW), 2009 U.S. Dist. LEXIS 91414, at *25-26 (S.D.N.Y. Sept. 30, 2009) (dismissing unjust-enrichment and other claims because, *inter alia*, "Plaintiffs fail to allege the necessary causal connection between their alleged overpayment for Lipitor and Defendant's alleged misrepresentations").

Accordingly, even assuming California courts recognized a claim for unjust enrichment, and even assuming Santa Clara had properly pled that it lacks an adequate remedy at law, the unjust-enrichment claim would still fail as a matter of law.[7]

---

[7]        Plaintiff's unjust-enrichment claim would fail under New Jersey law for the same reasons:  (1) there is no independent cause of action in tort for unjust enrichment, *see Castro v. NYT Television*, 851 A.2d 88, 98 (N.J. Super. Ct. App. Div. 2004) (New Jersey "does not recognize unjust enrichment as an independent tort cause of action"); (2) even if there were, it would be subsumed by the NJPLA, *see Sinclair*, 948 A.2d at 596 (remanding for dismissal of both NJCFA and unjust-enrichment claims after determining that the plaintiffs' claims were claims for "harm" under the NJPLA, even though the NJPLA claim itself was not viable); and (3) even if not subsumed, it would fail for lack of a viable theory of causation as set forth above, *see Se. Laborers Health & Welfare Fund v. Bayer Corp.*, 655 F.

*(cont'd)*

## CONCLUSION

For the foregoing reasons, Merck respectfully requests that the Court grant it judgment on the pleadings.

Dated:  September 26, 2011

Respectfully submitted,

/s/ Dorothy H. Wimberly
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, LA 70130

Douglas R. Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth St., N.W.
Washington, DC 20005

John H. Beisner
Jessica Davidson Miller
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
1440 New York Avenue, N.W.
Washington, DC 20005

ATTORNEYS FOR MERCK SHARP &
DOHME CORP.

_____
(cont'd from previous page)
Supp. 2d 1270, 1289 (S.D. Fla. 2009) (dismissing unjust-enrichment claims under New Jersey law "because of the remoteness of [the] plaintiff's injuries from [the] defendant's wrongdoing").

1070817v.1

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing has been served on Liaison Counsel, Russ Herman, Phillip Wittmann and Ann Oldfather, by U.S. Mail and e-mail or by hand delivery and e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8C, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 26th day of September, 2011.

/s/ Dorothy H. Wimberly
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:      504-581-3361
dwimberly@stonepigman.com

Defendants' Liaison Counsel

25

1070817v.1