UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: VIOXX | * | MDL NO. 1657 |
| | * | |
| PRODUCTS LIABILITY | * | |
| LITIGATION | * | SECTION  L |
| | * | |
| THIS DOCUMENT RELATES | * | JUDGE FALLON |
| TO ALL CASES | * | MAG. JUDGE KNOWLES |
| | * | SPECIAL MASTER |
| FILER: Robert E. Arceneaux/Margaret Woodward | * | PATRICK A. JUNEAU |
| Pascal F. Calogero, Jr. | * | October 5, 2011 |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**FORMER CO-LEAD AND LIAISON COUNSEL FOR OBJECTORS'
MEMORANDUM REGARDING ISSUES TO BE RESOLVED AT OCTOBER 12, 2011
HEARING OF PENDING MOTION FOR COSTS AND FEES**

MAY IT PLEASE THE COURT:

This memorandum is respectfully resubmitted on behalf of co-lead and liaison counsel for

Objectors pursuant to this court's order of Sept.30, 2011 with regard to the hearing to be held

October 12, 2011 on the pending Motion for Award of Attorneys' Fees and Costs to Co-Lead and

Liaison Counsel for Objectors.

**I.      History**

By order dated February 8, 2011, the Court appointed  movants as co-lead and liaison

counsel for the following 17 Objectors: Anapol, Schwartz, Weiss, Cohan, Feldman & Smalley, P.C.

("Anapol"); Becnel Law Firm, LLC ("Becnel"); Branch law Firm ("Branch"); Bruno & Bruno

("Bruno"); Cohen, Placitella & Roth, PC ("Placitella"); Cunard Law Firm ("Cunard"); Escobedo

Tippett ("Escobedo"); Jones, Swanson; Kline & Specter, PC ( "Kline & Specter"); Lockridge,

Grindal, Nauen, PLLP ("Lockridge"); Locks law Firm ("Locks"); Morelli Ratner PC ("Morelli");

Motley, Rice LLC ("Motley Rice"); Murray Law Firm ("Murray"); Roda Nast PC ("Nast"); Snapka, Turman, & Waterhouse, LLP ("Snapka"); and Law Firm of Eric Weinberg ("Weinberg"). The Court subsequently allowed Scheller PC to file an objection, and to be represented by undersigned counsel, bringing to 18 the number of Objectors represented by undersigned counsel.

At the outset of their representation, undersigned counsel advised the Court that they had reached fee agreements with certain Objectors but not others. This Court made clear that the issue of fees and costs would be resolved by it, with all objectors contributing, in the event agreement could not be reached.

> THE COURT: Well, from that standpoint, too, I really don't necessarily care whether it's unanimous. When you tell me that you've met and conferred and a majority of the objectors are satisfied with you all, then I'm going to make you –
>
> MR. ARCENEAUX: Thank you. Thank you.
>
> THE COURT: -- the attorneys for everybody. At the end of the day, I would want you to keep your costs and your time and things of that sort. Then, if you can't agree -- or the objectors can't agree on the fee, bring it to my attention, and I'll look it over and set the fee.
>
> MR. ARCENEAUX: 16 of the 17 firms have agreed either on a compensation scheme or quantum meruit. We may have to come to you as to only one.
>
> THE COURT: That's fine. Do that if you need.

Transcript of 2-11-2011, attached hereto as Exhibit A.

Consistent with this statement, in its March 31, 2011 order, the Court ordered that

> Co-Lead and Liaison counsel shall maintain contemporaneous records of all hours and costs expended by them in this matter. At the conclusion of this matter, they shall be entitled to apply to the Court for an award of fees. The Court shall determine the amount of the fee and who shall pay it. Reasonable costs expended by Co-Lead and Liaison Counsel may also be applied for and the Court will determine any amount and who shall pay it.

Rec. Doc. 62738, at 4.

For those Objectors who entered into fee agreements with undersigned counsel, the arrangements fell into two categories: 1) a contingent fee contract of 4%, to be assessed against the difference between the FAC's latest offer and its final offer, up to the claimant's lodestar[1]; and 2) an hourly rate, to be divided *pro tanto* among the Objectors choosing that option, and subject to a multiplier of up to 2, to be determined by this Court.   In proposing two different systems of payment, undersigned counsel allowed those Objectors who expected that they had comparatively less to gain from contesting the FAC's recommendations to choose a contingent-fee approach, which would limit their exposure for attorneys' fees.

The following firms chose one of the options, as follows:

| **Contingent fee** | **Hourly rate** |
|---|---|
| Bruno | Branch |
| Lockridge | Kline & Specter |
| Morelli | Locks |
| Murray | Escobedo[2] |
| Nast | Jones, Swanson[2] |
| Placitella[3] | Snapka[2] |
| Scheller | |
| Weinberg[3] | |

Four firms did not orally or in writing agree to either option: Anapol Schwarz, Daniel Becnel, Motley Rice, and Cunard Law firm.

In a status conference held in chambers on May 23, 2011, the Court indicated that it saw no

---

[1] Of the objectors who chose the contingent fee option, only undersigned counsel's individual clients (Placitella and Weinberg)  received a recommendation above lodestar.  Therefore, the cap does not apply.

[2] These firms orally opted for the hourly rate.

[3] Placitella and Weinberg, whom undersigned counsel represent individually, are subject to a higher contingent fee arrangement, a portion of which applies to undersigned counsel's leadership role; they are not subject to the cap.

further need of co-lead and liaison counsel for Objectors, the Special Master's hearing having been concluded and 13 of the 18 Objectors having reached a resolution with the FAC..  (Since that time, all Objectors reached a resolution with the FAC, and their allocations have been confirmed by this Court).  The Court directed undersigned counsel to submit a motion for fees and costs within thirty days.

The undersigned filed their Motion for Costs and Fees on July 15, 2011 (Rec. Doc 63120).  Attached thereto were time records showing that their lodestar in the aggregate was $318,183.04.

Only two objections were received:one from Motley Rice (Lexis File and Serve 38935029, July 27, 2011),[4] and one from Cunard law Firm (Rec. Doc. 63150).  The undersigned filed a consolidated reply to these objections (Rec. Doc. 63174), and the matter was submitted.

By Order of September 29, 2011, this Court resolved some of the issues involved in the pending Motion for Fees and Costs.

> The Court has reviewed the motion and exhibits and finds that the hourly rates cited are appropriate and the hours worked are sufficiently documented. The fees should be paid forthwith according to the agreements.

Rec. Doc.63448, at 1.  The Court further reserved two issues for resolution at a later date, and presumably these are the issues that are to be heard on October 12:

> With reference to any outstanding matters, such as fees owed by objectors who did not enter into a written agreement or the calculation of a lodestar multiplier, if Objectors' Counsel and the objectors cannot amicably agree, the Court will schedule a hearing in the near future to address the matter. The Court will retain jurisdiction

---

[4]The undersigned could not find where this objection, while served, was actually filed into the court record, and thus was unable to supply a record document number. Accordingly, in order to ensure that the Court has access to it, we attach a copy as Exhibit B.  As the Court will see, Motley Rice does does not object to paying its pro tanto share of the lodestar, which is $31,818. It only resists payment of a multiplier.

over this issue.

*Id.*, at 1-2.


## II.   DISCUSSION OF ISSUES TO BE RESOLVED

### A.   Release of funds due under contractual arrangement

None of the Objectors with contractual arrangements have, to date, filed an objection to the undersigned's Motion for Fees and Costs. Accordingly, since this Court has found the lodestar reasonable, calculation of the amount of fees owed by them is straightforward.

#### 1.   Contingency Fee Option

The calculation of fees owed by the contingent-fee group is uncontested:

| Firm | Last Offer | Accepted Rec. | Difference | Fee |
|------|-----------|---------------|-----------|-----|
| Bruno | 0 | $75,000 | $75,000 | $3,000 |
| Lockridge | 350,000 | 1,100,000 | 750,000 | 30,000 |
| Morelli | 750,000 | 1,302,193.75[5] | 552,193.75 | 22,087 |
| Murray | 162,000 | 850,000 | 688,000 | 27,520 |
| Nast | 45,000 | 300,000 | 255,000 | 10,200 |
| Sheller | 65,000 | 325,000 | 260,000 | 10,400 |


#### 2.   Hourly Rate Option

In accordance with this Court's order, undersigned counsel maintained contemporaneous

---

[5] Morelli's actual accepted recommendation was 2,500,000. However, their actual lodestar was the cited figure, and the contract caps the contingency fee at that rate.

records of the time they spent on Objectors' representation– as opposed to their representation of Placitella and Weinberg, for which separate records were kept, not at issue here.  Thei ime records for Objectors' representation were previously submitted, and their hours and rates have been approved.  The aggregate lodestar is $318,183.04.  There are ten firms subject  to payment of a *pro tanto* share of this amount – six by contractual agreement (Branch, Escobedo Tippet, Jones Swanson, Kline and Specter, Locks, and Snapka), and four (Anapol Schwarz, Becnel, Cunard, and Rice Motley) by *quantum meruit*.  Accordingly, each of Objectors who agreed to pay by hourly rate owe, at a minimum (before consideration of a multiplier), 1/10 of the lodestar, or $31,818.

### B.      Amount due by Objectors who did not enter into a contractual arrangement.

Of the four firms that did not enter into a contractual arrangement, only three have expressed an issue with regard to the fees they owe. Anapol Schwartz has not, to date, questioned its liability for a 1/10 share of the lodestar (or the potential application of a multiplier of up to 2). Motley Rice and the Cunard Law firm have filed objections, which have already been briefed. Daniel Becnel has raised an oral objection, raising two issues (1) that he did not agree to the appointment of the undersigned as exclusively lead counsel due to his view that there was a conflict of interest between those Objectors with only federal cases and those with state cases, and (2) that the undersigned's efforts did not add any benefit to his ultimate allocation, which he contends was due to his own independent efforts and also as a result of much information he supplied to undersigned for the benefit of all Objectors. As a result, Becnel is of the view that he in actuality represented himself, and accordingly, his share of the fee due the undersigned should reflect that.

With regard to the firms that did not enter into a fee agreement with the undersigned, there

is an issue to be resolved with regard to three of the four. This Court must determine whether the three Objecting firms that do not consent to the pending Motion for Fees and Costs should be liable for a full 1/10 share of the lodestar, or something else.

### C.      Amount of Multiplier, if any

Under contract for the six firms with hourly fee agreements, and under *Johnson v. Georgia Highway Express, Inc*., 488 F.2d 714, 717-19 (5th Cir.1974),  for those firms without contracts, this Court is permitted, within its discretion, to award a multiplier. By contract the undersigned agreed to cap it at 2. The award of a multiplier is an issue for this Court to resolve , as the parties have already negotiated a resolution to the question - submission of the issue to your Honor for binding decision.

Undersigned counsel ask that the Court grant them a multiplier for several reasons.  First of all, parity demands it.  Objectors' top rates ranged from $850 to $625/hr.  (Comparatively, the FAC leadership charged Russ Herman's time at $850/hr., Andy Birchfield at $700/hr., and Chris Seeger at $685/hr., before applying multipliers that raised the rates to over $2000/hr.; these comparisons are offered for informational purposes only, as the FAC's unjustifiable recommendations for themselves lay at the heart of the allocation dispute.).   This Court's blended average rate for Vioxx counsel was $443/hr. Mr. Arceneaux, an accomplished and experienced appellate advocate with 25 years experience, who was responsible for the briefing, as well as accounting issues at trial, only charged $300 per hour, well belong the blended average. Justice Calogero, by virtue of his unique stature and experience, should be compensated at an effective rate well above the blended average, which includes numerous associate attorneys.  Margaret Woodward's rate of $200 an hour is hardly

more than most firms charged for law clerk time, and yet she carried the lion's share of the trial work at the hearing before Special Master Juneau, and is an accomplished trial attorney with over 30 years' experience.  As this Court is aware, undersigned counsel were chosen by Objectors as their leadership from a number of competing firms.  They were chosen principally on the basis of the particular skills they had to offer.  With the exception of Justice (ret.) Calogero's rates, the rates charged are substantially below the hourly rates charged by most Objectors of equivalent experience.  A fair multiplier would rectify the lack of parity, and was contemplated by the parties who entered into a fee agreement – that is one of the reasons the undersigned did not simply charge higher rates.

A multiplier is also warranted by the unusual circumstances and demands of this litigation.  By the time undersigned counsel entered into the case, the Court had already developed an extensive record of documents, presentations, and rulings on the issue of allocation alone, which had to be read and studied at an accelerated pace.  Additionally, the novel issues raised by the FAC's choice of a novel approach to fee allocation required extensive research, analysis, and writing.  Furthermore, undersigned counsel's representation of eighteen firms who had occupied different positions in different jurisdictions, and who took different approaches to fee allocation added considerably to the complexity of the matter.  As the Court is well aware, a number of difficult issues arose that were tangentially related to the administration of the common benefit fund and the FAC's overall authority.  The length and number of motions, memoranda, and discovery requests filed in this matter speaks to the novelty and complexity of the representation.

Further, this Court's expedited time frame for allocation, which resulted in a week-long hearing within three months of undersigned counsel's appointment, placed enormous pressures on their work.  For the duration of their service, each of them had to forego other work, any semblance

8

of a social life, and, all too often, sleep, in order to maintain the pace of research and writing, discovery, consultation with Objectors, and court appearances necessary to a diligent representation of Objectors' interests.[6]

Another factor bearing upon the appropriate application of a multiplier is the amount of the final recommended award.  While all Objectors whose claims have been resolved stand to receive substantially more than the FAC last recommended, for some the returns were substantially higher than others.  Cunard and Nast received an additional $275,000[7] and $255,000 respectively, while Kline & Specter received an additional $11,000,000.  It should be borne in mind that each of the lower-recovering firms had the option of limiting its fees by choosing the contingency fee option, but chose the hourly basis.

Whether the undersigned demonstrated any skill in the performance of our tasks, we leave to this Court to determine.  However, Objectors repeatedly expressed admiration and gratitude for the pace and quality of the work produced, and the results achieved were unquestionably dramatic.  Overall, Objectors' recommended allocations have risen by more than triple the amount formerly recommended by the FAC.

### D.      Reimbursement of Costs

---

[6]It should be noted that several firms, Cunard, Escobedo, Kline & Specter, and Snapka, each employed independent counsel.  (Placitella and Weinberg employed undersigned counsel as their individual counsel.)  Presumably, however, undersigned counsel's efforts reduced the burden on Objectors and their individual counsel.

[7] Cunard has suggested that the additional recovery was only $175,000, because the FAC initially offered to recommend an extra $100,000; it retracted that offer, however, when Cunard refused to accept it.

Up until now, the undersigned did not ask for cost reimbursement, because all costs have been paid by Objectors themselves from an assessment that all 18 firms agree to pay. However, in its September 29th order, the Court ordered Objector's Counsel to pay one half of the only outstanding cost item – Wegmann Dazet's Bill. According, the undersigned has remitted to Wegmann Dazet $9,188.65, which is its one-half share of the bill. The undersigned ask this Court to reimburse them for that expense, by taxing each of th 18 objectors with 1/18 share of the expense, or 510.48  Considering that all Objectors, including those who did not sign fee agreements, have equally paid for all other costs through their self-assessment, there should be no dispute that the Wegmann Dazet expense should be borne by them as well.[8]

---

[8]This is in contrast to the FAC, who agreed to finance its own litigation expenses. *See* Exhibit C hererto.

Respectfully submitted,


/s/ Robert E. Arceneaux                          /s/ Margaret E. Woodward
_____                        _____
Robert E. Arceneaux, La Bar No. 01199            MARGARET E. WOODWARD, La. Bar
ROBERT E. ARCENEAUX LLC                          No.13677
47 Beverly Garden Drive                          3701 Canal Street, Suite C
Metairie, LA 70001                               New Orleans, Louisiana  70119
(504) 833-7533 office                            (504) 301-4333 office
(504) 833-7612 fax                               (504) 301-4365 fax
rea7001@cox.net                                  mewno@aol.com


FORMER CO-LEAD COUNSEL FOR OBJECTORS IDENTIFIED IN FEB. 8, 2011 ORDER

Pascal F. Calogero, Jr., La. Bar No. 03802
AJUBITA, LEFTWICH & SALZER, L.L.C.
1100 Poydras Street
New Orleans LA 70163-1950
(504) 582-2300 office
(504) 582-2310 fax
pcalogero@alsfirm.com


FORMER LIAISON COUNSEL FOR OBJECTORS IDENTIFIED IN FEB. 8, 2011 ORDER


CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail, and by upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre Trial Order No.8, on this date, October 4, 2011


/s/ Robert Arceneaux
_____