```
                           UNITED STATES DISTRICT COURT
                           EASTERN DISTRICT OF LOUISIANA


    ****************************************************************


    IN RE:  VIOXX PRODUCTS
        LIABILITY LITIGATION

                                       DOCKET NO. 05-MDL-1657
                                       NEW ORLEANS, LOUISIANA
                                       THURSDAY, FEBRUARY 17, 2011, 3:30 A.M.
    THIS DOCUMENT RELATES TO
    ALL CASES


    ****************************************************************


                           TRANSCRIPT OF PROCEEDINGS
                HEARD BEFORE THE HONORABLE ELDON E. FALLON
                         UNITED STATES DISTRICT JUDGE


    APPEARANCES:


    FOR THE PLAINTIFFS:        HERMAN HERMAN KATZ & COTLAR
                               BY:  RUSS M. HERMAN, ESQUIRE
                               820 O'KEEFE AVENUE
                               NEW ORLEANS LA  70113


                               BEASLEY ALLEN CROW METHVIN
                               PORTIS & MILES
                               BY:  ANDY D. BIRCHFIELD, JR., ESQUIRE
                               234 COMMERCE STREET
                               POST OFFICE BOX 4160
                               MONTGOMERY AL  36103


                               SEEGER WEISS
                               BY:  CHRISTOPHER A. SEEGER, ESQUIRE
                               ONE WILLIAM STREET
                               NEW YORK NY  10004
```

EXHIBIT A

```
 1  APPEARANCES CONTINUED:

 2

 3  FOR THE OBJECTORS:        MARGARET E. WOODWARD
                              ATTORNEY AT LAW
 4                            3701 CANAL STREET, SUITE C
                              NEW ORLEANS LA  70119
 5

 6                            ROBERT E. ARCENEAUX
                              ATTORNEY AT LAW
 7                            47 BEVERLY GARDEN DRIVE
                              METAIRIE LA  70001
 8

 9                            AJUBITA LEFTWICH & SALZER
                              PASCAL F. CALOGERO, JR., ESQUIRE
10                            1100 POYDRAS STREET
                              NEW ORLEANS LA  70163
11

12

13  SPECIAL MASTER:           JUNEAU DAVID
                              BY:  PATRICK A. JUNEAU, ESQUIRE
14                            THE HARDING CENTER
                              1018 HARDING STREET, SUITE 202
15                            P.O. DRAWER 51268
                              LAFAYETTE LA  70505
16

17

18  OFFICIAL COURT REPORTER:          CATHY PEPPER, CCR, RMR, CRR
                                      CERTIFIED REALTIME REPORTER
19                                    500 POYDRAS STREET, ROOM B406
                                      NEW ORLEANS, LOUISIANA 70130
20                                    (504) 589-7779

21
    PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY.  TRANSCRIPT
22  PRODUCED BY COMPUTER.

23

24

25
```

03:47PM  1  were directed to meet with Mr. Stratton and attempt to resolve
03:47PM  2  this matter.
03:47PM  3       As far as notice is concerned, every single attorney who
03:47PM  4  claimed common benefit, including attorneys represented by
03:47PM  5  learned counsel, had due notice of the issue, and of those there
03:47PM  6  were a handful that objected.  We believe, after the matter is
03:47PM  7  discovered, it will show that we didn't act *ultra vires*, and we
03:47PM  8  acted quite properly on behalf of everyone.
03:47PM  9       We do have some issues to bring before Your Honor.  I don't
03:47PM 10  know whether Your Honor wants to entertain those at this point or
03:48PM 11  later.
03:48PM 12       Number one, we don't know at this point who learned counsel
03:48PM 13  represents.  Learned counsel has indicated that a majority of
03:48PM 14  individuals, objectors, have chosen learned counsel to be lead
03:48PM 15  counsel, liaison counsel.  We don't want to be faced with a
03:48PM 16  multiplicity of issues or cross appeals later, and we think there
03:48PM 17  ought to be some disclosure as to whom, most respectfully,
03:48PM 18  counsel opposite represents and who --
03:48PM 19           THE COURT:  Let me make this clear.  I expect and I
03:48PM 20  appointed three counsel to represent all of the objectors.
03:48PM 21  That's who I assume you're representing, all of the objectors.
03:48PM 22           MS. WOODWARD:  That's what we assume, as well.
03:48PM 23           THE COURT:  So just make a list of all of the objectors,
03:49PM 24  because I appointed you to represent all of the objectors, and
03:49PM 25  that's the way it is.

```
03:49PM  1              MS. WOODWARD:  Thank you, Your Honor.  That's our
03:49PM  2   understanding from the order, too, and the objectors are listed
03:49PM  3   in your order of February 8th.
03:49PM  4              THE COURT:  Right, okay.  That's consistent with your
03:49PM  5   records; I mean, that's who the objectors are, as you understand
03:49PM  6   it?
03:49PM  7              MR. ARCENEAUX:  Perhaps, I should address that.
03:49PM  8              THE COURT:  Yes, sure.
03:49PM  9              MR. ARCENEAUX:  Your Honor, we didn't want to list the
03:49PM 10   people that didn't agree to everything because we felt it was --
03:49PM 11   we didn't want to prejudice anybody by putting them on the
03:49PM 12   record --
03:49PM 13              THE COURT:  Yes.
03:49PM 14              MR. ARCENEAUX:  -- so we didn't list any names.  But I
03:49PM 15   will report to the Court that there was only one -- out of all
03:49PM 16   the objectors, there was only one person who had a problem.  It
03:49PM 17   wasn't with our appointment; it was with whether or not that
03:49PM 18   person would owe us any fees.
03:49PM 19              THE COURT:  Yes.
03:49PM 20              MR. ARCENEAUX:  So we have placed the fee issue on the
03:49PM 21   table for another discussion and another day.  If we can't
03:49PM 22   negotiate fees, we will come to Your Honor with a request.
03:49PM 23              THE COURT:  Let's do that.
03:49PM 24              MR. ARCENEAUX:  But the appointment of us is unanimous.
03:50PM 25   The only thing that was not unanimous was the question how we
```

|          |    |                                                                        |
|----------|----|------------------------------------------------------------------------|
| 03:50PM  | 1  | would be paid.                                                         |
| 03:50PM  | 2  | THE COURT: Well, from that standpoint, too, I really                   |
| 03:50PM  | 3  | don't necessarily care whether it's unanimous. When you tell me        |
| 03:50PM  | 4  | that you've met and conferred and a majority of the objectors are      |
| 03:50PM  | 5  | satisfied with you all, then I'm going to make you --                  |
| 03:50PM  | 6  | MR. ARCENEAUX: Thank you. Thank you.                                   |
| 03:50PM  | 7  | THE COURT: -- the attorneys for everybody.                             |
| 03:50PM  | 8  | At the end of the day, I would want you to keep your costs             |
| 03:50PM  | 9  | and your time and things of that sort. Then, if you can't agree        |
| 03:50PM  | 10 | -- or the objectors can't agree on the fee, bring it to my             |
| 03:50PM  | 11 | attention, and I'll look it over and set the fee.                      |
| 03:50PM  | 12 | MR. ARCENEAUX: 16 of the 17 firms have agreed either on                |
| 03:50PM  | 13 | a compensation scheme or quantum meruit. We may have to come to        |
| 03:50PM  | 14 | you as to only one.                                                    |
| 03:50PM  | 15 | THE COURT: That's fine. Do that if you need.                           |
| 03:50PM  | 16 | MR. ARCENEAUX: On that same note, perhaps just to                      |
| 03:50PM  | 17 | clarify the record, if we could get Mr. Herman to state what           |
| 03:50PM  | 18 | basis he has to represent the 80 people who are not on the FAC,        |
| 03:50PM  | 19 | but that -- his letter to the Court says the FAC voted that he         |
| 03:51PM  | 20 | would be their counsel. Was there a vote of all the other              |
| 03:51PM  | 21 | people, and did they also elect you? If that's true, I think it        |
| 03:51PM  | 22 | just should be so stated on the report.                                |
| 03:51PM  | 23 | MR. HERMAN: I don't mean -- you may cross-examine me on                |
| 03:51PM  | 24 | that point --                                                          |
| 03:51PM  | 25 | MR. ARCENEAUX: I'm not cross-examining you.                            |



UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: VIOXX | * | MDL NO. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | JUDGE FALLON TO ALL |
| THIS DOCUMENT RELATES | * | CASES |
| TO MOTLEY RICE | * | MAG. JUDGE KNOWLES |
| | * | SPECIAL MASTER |
| FILER: MOTLEY RICE, LLC | * | PATRICK A. JUNEAU |
| | * | Date: July 26, 2011 |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### MEMORANDUM IN OPPOSITION TO MOTION FOR AWARD OF ATTORNEY'S FEES AND COSTS FOR CO-LEAD AND LIAISON COUNSEL FOR OBJECTORS

MAY IT PLEASE THE COURT:

This memorandum is respectfully submitted on behalf of Motley Rice, LLC ("Motley Rice"), an Objector to the recommendations of the Fee Allocation Committee ("FAC"), in opposition to the motion of Co-Lead and Liaison Counsel, comprised of Robert Arceneaux, Margaret Woodward and Pascal Calogero, ("Objectors' Counsel"), for the award of a multiplier in excess of costs and hourly fees.

On February 8, 2011 this Court appointed Objectors' Counsel as Co-lead and Liaison counsel for seventeen objecting firms ("Objectors"), including Motley Rice, in order to challenge the award of attorney's fees from the FAC. Motley Rice did not enter into an attorney fee agreement with Objectors' Counsel and therefore Counsel argues Motley Rice must accept Objectors' Counsel's fees at their hourly rate. See Motion for Award of Attorneys' Fees and Costs to Co-Lead and Liaison Counsel for Objectors, at 9.

This Court entered an order on June 1, 2011 that Objectors' Counsel's services were no longer needed as the majority of Objectors had reached settlements and ruled that Objectors'

EEXHIBIT B

1

Counsel may submit a motion for an award of fees. In Objectors' Counsel's Motion for Award of Attorney's Fees and Costs to Co-Lead and Liaison Counsel for Objectors, filed July 15, 2011, Objectors' Counsel asserted that the Court should (1) honor contracts with those Objectors who entered into fee agreements and (2) require that the non-contracting firms, including Motley Rice, under principles of *quantum meruit* and the lodestar method, be held to an hourly rate, increased by a multiplier up to two times their hourly billable rate. See Motion for Award of Attorney's Fees, at 6. Objectors' Counsel request of a multiplier is unacceptable for several reasons.

### 1. Motley Rice Obtained its Desired Result Without the Aid of Objectors' Counsel

Objectors' Counsel credit themselves with achieving "unquestionably dramatic" results for the fourteen (14) objectors that settled, even though these counsel were not even in the room when the settlements were achieved. Through direct contact with the FAC, Motley Rice was able to challenge the FAC's formula and secure a modified fee award recommendation of more than six (6) times the original number. Motley Rice independently planned and administered this negotiation process on May 3, 2011. Objectors' Counsel were neither present nor did they prepare or provide any materials for these meetings. Motley Rice promptly notified Objectors' Counsel of the resolution. Nonetheless, Objectors' Counsel continued to bill the group, including Motley Rice – one day for 23 hours between the three counsel for a total of $7800 - from May 5 until June 7 a total of $99,606.25. These fees objectively were not spent on behalf of or for the benefit of Motley Rice.

Motley Rice's successful settlement occurred despite Objectors' Counsel's consistent efforts to thwart the negotiations through spectacular allegations of ethical violations and breaches of duty, none of which Motley Rice authorized. In their briefs, Objectors' Counsel

attacked members of the FAC for improper conduct and breach of fiduciary duties to a client and asserted that the FAC's unethical conduct should result in a forfeiture of its fees.[1] Motley Rice was vocal about its opposition to these filings, and in fact demanded that their opposition be noted in these briefs.[2] Motley Rice contends that any and all of Objectors' Counsel's work including but not limited to telephone calls, drafting, research, review of emails, and review of any issues related to this motion did not assist the resolution of monetary disputes between the FAC and objecting firms was not conducted for the benefit of Motley Rice and in fact slowed the resolution process.

### 2. The Hourly Rate Charged More Than Sufficiently Compensates Objectors' Counsel for Their Work

Motley Rice does not suggest that all of Objectors' Counsel's work was in vain and accepts that it owes Objectors' Counsel for a pro rata hourly fee up to the date of Motley Rice's settlement. Even this results in a remarkable windfall for petitioners who will collect a contingency fee and an hourly fee – duplicate payments for the same work. However, Objectors' Counsel's suggestion that the Court award a multiplier of up to two times that hourly rate has no place in this small dispute.

Objectors' Counsel relies on *quantum meruit* to set a reasonable value for their services. When calculating attorney's fees, the district court must make sure that that the fees are reasonable under the circumstances of the particular litigation at issue. Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 716-717 (5th Cir. Ga. 1974). Objectors' Counsel contends that the rates they charged are substantially below the "top rates" charged by most Objectors of

---

[1] See Memorandum in Support of Motion to Limit Fees, at pg. 4-6.
[2] Id., fn. 1.

3

equivalent experience.[3] Certainly, Counsel had a right to negotiate a higher rate at the time of hire. Absent individual and unique demands, there is no reason why Motley Rice, or other Objectors, should compensate Counsel above its hourly rate. Based on the work performed and outcome achieved, the reasonable value of Counsel's service for Motley Rice is at best the hourly rate charged – no more.

### 3. No Work Performed is Deserving of a Multiplier

The lodestar method is inapplicable to the work performed in this matter. As the Court is aware, a lodestar multiplier is only applicable where counsel proves exception above the reasonable hourly rate based on the twelve Johnson factors:

> The time and labor involved; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the political "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Johnson, 488 F.2d at 717-719. None of these factors apply in this matter, and Objectors' Counsel are undeserving of any lodestar multiplier in excess of their billable rate.

Objectors' Counsel cites the "complexity" of representing eighteen firms "who had occupied different positions in different jurisdictions, and who took different approaches to fee allocation" as a basis for multiplying their already healthy fee. Motion for Award of Attorneys' Fees and Costs, at 6. These issues allegedly justified the "length and number of motions, memoranda, and discovery requests" filed. Yet, Objectors' Counsel fail to consider two critical elements: (1) This discovery and motion practice was over the objection of Motley Rice; and (2)

---

[3] See In re: Vioxx Products Liability Litigation, Memorandum in Support of Motion to Limit Fees, pg. 6.

4

Counsel's efforts did not inure to the benefit of Motley Rice. This firm neither requested nor approved of several of the motions filed, and believe in fact that Objectors' Counsel's specious arguments served only to delay the ultimate settlement of the individual objectors' claims. Notably, those firms that did not independently settle claims with the FAC and relied on Objectors' Counsel's representation were awarded fees not substantially greater – and in some cases less – than the original recommendation.

Objectors' Counsel also cite an "expedited time frame" and "enormous pressures" related to their short three month appointment as counsel as support for a lodestar multiplier. Fee disputes are not novel to mass tort litigation, and a body of law exists to assist in resolving those disputes. The work performed by Objectors' Counsel, while agreeably at a rapid pace, was not unique or requiring of extraordinary skill. Most importantly, the work performed for which counsel argues they passed over other work, social endeavors and sleep was not for the benefit of Motley Rice. Indeed, Motley Rice achieved resolution with the FAC before the week-long hearing.

## CONCLUSION

Motley Rice respectfully requests that this Court deny Objectors' Counsel's motion for fees in excess of their hourly fees. Counsel did not confer benefit to Motley Rice, or other Objectors, beyond the hourly fee charged. Application of the <u>Johnson</u> factors only reinforces that Counsel's work does not warrant a multiplier.

Respectfully submitted,

Fred Thompson, Esq. (Fed ID 4081)
Carmen Scott, Esq. (Fed ID 7513)
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mt. Pleasant SC 29464
(843) 216-9000; Fax: (843) 216-9430

5

## **CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Memorandum In Opposition To Motion For Award Of Attorney's Fees And Costs For Co-Lead And Liaison Counsel For Objectors has been served upon Liaison Counsels, Phillip Wittman and Russ Herman by e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8, on this 27th day of July, 2011.

/s/ Fred Thompson, III

_____

Fred Thompson, III

Russ Herman

**From:** Kline, Thomas R. [Tom.Kline@KlineSpecter.com]
**Sent:** Wednesday, March 16, 2011 5:29 AM
**To:** Lillian Flemming; Russ Herman
**Subject:** Re: Vioxx MDL 1657 re Assessment

Russ- A check will go out to you tomorrow in the amount of $15K requested from PSC members. This contribution is paid on the basis of the representations of you made in your March 2 email to me and is not authorized in any way to further the goals or the business of the FAC, which is separate from the work of the PSC, of which I am a member and to which I and my firm, as part of the PSC, are entitled to a portion of the fee for the work you describe in your March 2 email. I'll expect an accounting of this money and other PSC expenditures at the appropriate time. Tom

**From:** Lillian Flemming [mailto:LFLEMMING@hhkc.com]
**Sent:** Tuesday, March 15, 2011 05:45 PM
**To:** Kline, Thomas R.
**Cc:** Herman, Russ; Davis, Lenny; Regina Valenti <regina@hhkc.com>
**Subject:** FW: Vioxx MDL 1657 re Assessment

From: Russ M. Herman

Just a reminder that we have not received the March 1 2011 assessment payment of $15,000 from your firm. Please advise of the status.

**From:** Lillian Flemming
**Sent:** Thursday, February 24, 2011 3:35 PM
**To:** 'yarsenault@nbalawfirm.com'; 'andy.birchfield@beasleyallen.com'; 'Cabraser, Elizabeth J.'; 'tom.kline@klinespecter.com'; 'Arnold Levin'; 'Gerald E. Meunier (PSC) (gmeunier@gainsben.com)'; 'trafferty@levinlaw.com'; 'dranker@rgelaw.com'; 'mrobinson@rcrlaw.net'; 'cseeger@seegerweiss.com'; 'cvtisi@aol.com'; Shelly A. Sanford (sanford@sanfordpllc.com)
**Cc:** Lenny Davis; Regina Valenti; Andy D. Birchfield Jr. (PSC) (E-mail); Christopher Seeger (PSC) (E-mail 2); Christopher Seeger (PSC) (E-mail 3); Christopher Seeger (PSC) (E-mail); Russ Herman; ZVioxx Archive
**Subject:** Vioxx MDL 1657 re Assessment

From: RUSS M. HERMAN

The Executive Committee has met and recommended a PSC assessment of $25,000 per firm, to be broken down into two payments, $15,000 due March 1, 2011, and $10,000 due September 1, 2011. If there is any opposition, please advise prior to Friday, February 25, 2011, at 5:00 p.m. (central), or we will trust that it is acceptable.

Lillian M. Flemming
Legal Assistant to Leonard A. Davis
*Herman, Herman, Katz & Cotlar, LLP*
*Herman, Gerel, LLP*
820 O'Keefe Avenue
New Orleans, Louisiana 70113
PH: (504) 581-4892
FAX: (504) 561-6024
<http://www.hhkc.com/>

This e-mail message contains confidential, privileged information intended solely for the addressee. Please do not read, copy, or disseminate it unless you are the addressee. If you have received it in error, please call us

EXHIBIT C