UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: VIOXX | * | MDL NO. 1657 |
| | * | |
| PRODUCTS LIABILITY | * | |
| LITIGATION | * | SECTION  L |
| | * | |
| THIS DOCUMENT RELATES | * | JUDGE FALLON |
| TO ALL CASES | * | MAG. JUDGE KNOWLES |
| | * | SPECIAL MASTER |
| FILER: Robert E. Arceneaux/Margaret Woodward | * | PATRICK A. JUNEAU |
| Pascal F. Calogero, Jr. | * | October 10, 2011 |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**FORMER CO-LEAD AND LIAISON COUNSELS' REPLY TO
MEMORANDUM OF KLINE & SPECTER, P.C. PURSUANT TO ORDER 63457**

MAY IT PLEASE THE COURT:

  This memorandum is respectfully resubmitted on behalf of co-lead and liaison counsel for Objectors in reply to the memorandum filed by Kline & Specter (Rec. Doc. 63467) to their request for an award of fees.

  Kline & Specter claims to be "troubled" by a feature of the contractual arrangement it signed – that the undersigned receive fees from different sources based upon different methodologies: those who agreed to pay contingency fees, its own private clients, and those who are paying by the hour by heads.  It suggests that this Court should toss out the fee agreements with 14 firms, including Kline & Specter, and craft a different fee arrangement. As noted in prior memoranda, Kline & Specter contractually agreed to the hourly-rate contingency option offered by undersigned

counsel.[1] As also noted previously, that arrangement included, in essence, a binding arbitration provision under which the parties agreed to submit to this Court the matter of whether undersigned counsel would be awarded a multiplier of up to two. Kline & Specter does not challenge undersigned counsel's base rates, which were incorporated into the contract. Nor does it contest their recorded hours, which this Court has approved. When Kline and Specter agreed to Option 2, it was well aware of all the circumstances that it now claims are "troubling." Kline and Specter, who is the only firm that has suggested rewriting its signed fee agreement, is hardly the firm to complain, given that it received the highest amount of any of the Objectors in settlement as a result, at least in part, of the work that was done by the undersigned on its behalf (and much of which was at its request and direction).

Kline and Specter further contends that a multiplier would be excessive and unjust Kline & Specter's brief does not address any *Johnson* factors. Instead, it contends that the fee arrangements with Objectors result in duplicative payments to undersigned counsel, and that a multiplier would be excessive.

Kline & Specter's share of undersigned counsel's base hourly rates would come to $31,818. Placed at issue by its objection is whether it might be called upon to pay an additional sum, capped by contract at $31,818. By any measurement, Kline & Specter has received good value for the fee plus full multiplier. Its final common benefit fee award increased from a recommended $4,000,000 to $15,000,000. In terms of either percentage or dollar amount, Kline & Specter received the greatest

---

[1] Attached hereto as Exhibit A is the fee letter in which undersigned counsel set forth the alternative fee arrangements. Attached hereto as Exhibit B is Shanin Specter's acceptance of Option 2 (payment of hourly rates by heads). Therein, he expressly acknowledges that: "At the conclusion of this matter, Judge Fallon will determine if a multiplier is due, using *Johnson* factors, with an agreement to cap the amount of any potential multiplier at 2X."

increase to its award of any Objector. Undersigned counsel filed more than fifty pleadings on Kline & Specter's behalf; a score of those filings were major briefs. Undersigned counsel filed several briefs which, standing alone, might have reasonably been charged at $31,818. Additionally, undersigned counsel conducted discovery and prepared for a week-long hearing in which a last-minute settlement released them from participating. The efficiencies of the combined representation permitted Kline & Specter to share counsel's hourly fees with nine other firms, all of which received lesser returns from the litigation. While Kline & Specter retained separate local counsel, his role was substantially diminished by the contributions of undersigned counsel to the common good of Objectors. The paucity of Kline & Specter's– indeed of all Objectors' individual pleadings– speaks volumes about their satisfaction with undersigned counsel's work.

   Kline & Specter contends, however, that undersigned counsel have already received a multiplier from their contingency fee clients. This is true, but not so consequential as Kline & Specter would make it out to be. First of all, the contingent-fee option was offered as a means of permitting those Objectors who had substantially less at stake than others to reduce their exposure for fees. In practice, it worked out precisely as intended: the smaller stakeholders among Objectors mostly opted for the contingent fee arrangement, and their total fee exposure– once undersigned counsel's individual clients have been backed out– comes to $100,000. (Undersigned counsel's individual clients, Placitella and Weinberg, should be backed out of this calculation because undersigned counsel did substantial additional work for them and expended substantial additional hours which are not included in the hours charged to Objectors.) If this amount is regarded as a "multiplier" at all, it is a multiplier below .3.

   Regardless, the additional payment by the contingent-fee payers was *contemplated* by

contract, and figured prominently in undersigned counsel's agreement to cap the potential multiplier at two. Mr. Specter's letter demonstrates that he was fully aware of the terms of the contract and of his firm's exposure under it. By the time that letter was penned, in March, 2011, undersigned counsel had already been hard at work for more than a month. Mr. Specter acknowledges their "hard work", "particularly that of Peggy Woodward." Ms. Woodward, an attorney of more than 30 years' experience, charged Objectors at her ususal billing rate of $200, trusting in this Court to award a multiplier if warranted. Kline & Specter's brief essentially argues that Woodward's praiseworthy work should be held to a rate less than half of the blended hourly rate approved by this Court, and one-fourth Kline& Specter's own hourly billings. Without a multiplier, the rates for Robert Arceneaux, also an attorney of more than thirty years' experience, would be less than half of Kline& Specter's. Without a multiplier, the rates for Pascal Calogero, Jr., former Chief Justice of the Louisiana Supreme Court, would also be less than Kline & Specter's. All for doing work Kline & Specter requested of them.

The matter of a multiplier has been contractually committed to this Court's discretion, and there is no basis for arguing that the discretion Objectors accorded to this Court should now be withdrawn. Nor is there a reason to deem, automatically, that the lodestar is all that any of the parties, including Kline and Specter, ever expected the undersigned would receive. Everyone always contemplated submission of the fees to this Court for a determination of a multiplier, a fact reflected in the fee agreements, and the lower rates that the undersigned agree to charge in exchange as part of the multiplier plan.

Respectfully submitted,

/s/ Robert E. Arceneaux
_____

| | |
|---|---|
| Robert E. Arceneaux, La Bar No. 01199 | Margaret E. Woodward, La. Bar No.13677 |
| ROBERT E. ARCENEAUX LLC | 3701 Canal Street, Suite C |
| 47 Beverly Garden Drive | New Orleans, Louisiana  70119 |
| Metairie, LA 70001 | (504) 301-4333 office |
| (504) 833-7533 office | (504) 301-4365 fax |
| (504) 833-7612 fax | mewno@aol.com |
| rea7001@cox.net | |

FORMER CO-LEAD COUNSEL FOR OBJECTORS IDENTIFIED IN FEB. 8, 2011 ORDER

Pascal F. Calogero, Jr., La. Bar No. 03802
AJUBITA, LEFTWICH & SALZER, L.L.C.
1100 Poydras Street
New Orleans LA 70163-1950
(504) 582-2300 office
(504) 582-2310 fax
pcalogero@alsfirm.com

FORMER LIAISON COUNSEL FOR OBJECTORS IDENTIFIED IN FEB. 8, 2011 ORDER

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing pleading has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail, and by upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre Trial Order No.8, on this date, October 10, 2011

/s/ Robert Arceneaux
_____

Monday, March 07, 2011

**To:   Counselors who are identified as "objectors" in
the court's Feb 8 order, or any others that
become objectors by virtue of subsequent orders:**

This letter memorializes the terms of representation that we discussed in our telephone conference wherein Margaret Woodward and I were elected co-Lead, and Pascal Calogero was elected Liaison counsel. Two different compensation schemes were proposed and various firms have selected different options.

The first arrangement is a 4% contingency fee calculated on lodestar less present allocation. This means that we would only collect a fee on any recovery achieved by you- as a result of reduction of assessment, common benefit fee award, or otherwise- in excess of the allocation proposed by the FAC on Jan 20, 2011 up to a limit of your properly-calculated lodestar. By properly-calculated lodestar, we mean to distinguish a lodestar taking into account actual rates for attorneys and staff in your firms from the blended average rate we used in preparing our preliminary objection charts. Anything in excess of that would not be subject to our contingency fee. The cap reflects our agreement that we are working toward a lodestar-based recovery for the entire group, and that beyond that point, we are conflicted and therefore will leave to each objector the argument for recovery above lodestar.

The second alternative would be the method used by Courts, and which we are advocating for ourselves, in awarding attorneys fees to court appointed lawyers – lodestar plus *Johnson* factors. Pascal Calogero's hourly rate is $550.00; my rate is $300 per hour, and Margaret's rate is $200 per hour. We would submit monthly reports of the hours recorded, in quarter hour units, but these reports would not be invoices. At the conclusion of this matter, Judge Fallon would determine if a multiplier is due, using *Johnson* factors. We agree to cap the amount of any potential multiplier at 2. Obviously, some sort of set aside would have to be created to escrow funds from those settling their claims, as compensation would have to await conclusion of the litigation.

The third alternative is to agree to nothing amongst ourselves, as several firms have done. We have notified Judge Fallon of this, and he has indicated to us that we should keep our hourly rates and that he would make an award for fees to us in according with *Johnson*. To us, this means that those who agree to nothing will be ordered by the Court to participate in option two.

As for option two, there was some discussion about a "pro rata" sharing of the fee to be determined by the Court, however, there was an attempt to count the number of participating firms. To us, this means, a "pro tanto" sharing, not a "pro rata sharing," and so we are suggesting that it was the consensus of those in the group, and more importantly, of those that are electing option two, to share by heads, meaning one share due by each of the objecting firms or individuals identified in the Court's Feb. 8 order, or any others that become objectors by virtue of subsequent orders..

Last, we explained to you that we must have a fundamental understanding of the delineation of authority among the committee and its counsel. We believe the legal action the leadership proposes

EXHIBIT A

to take should, at any time, be subject to veto by a majority of the objectors who are still in active litigation at the time the issue must be decided, that is, by a majority of those who haven't settled with the FAC.  Further to this point, we contemplate that leadership will be fighting for any item of discovery any member of the committee reasonably wants to obtain.  As we discussed at some length, we envision the role of lead and liaison counsel as challenging the FAC's formula and process, and advocating for, at a minimum, a recovery of each objector's lodestar. Beyond that, conflicts of interest in our respective claims to a limited fund would constrain joint representation efforts.  Each objector will retain responsibility for advocating any higher recovery.  Lead and liaison counsel will have no authority to negotiate beyond this minimum recovery, or to suggest any other figure that might be acceptable to any objector.   Should a conflict develop between the will of the group majority and our obligations to our clients Placitella, Roth, and Weinberg, we would be forced to withdraw as lead and liaison counsel.

We need each individual or firm to execute the form below and return it to us ASAP. Fax is acceptable, to (504) 833-7612, and then mail the original Robert Arceneaux, 47 Beverly Garden Drive, Metairie, LA 70001.

We will prepare a pre-trial order for the judge to sign, outlining the limits of our duties, and also the terms of compensation. The firms or individuals agreeing to the various options will be filed under seal.

Please attend to this right away. We have been working very hard, and want to get this issue resolved now, before we continue with any more heavy effort. Furthermore, there are still many of you that, despite several requests, have yet to send your cost reimbursement.

We appreciate the confidence you have placed in us, and look forward to working with you toward a satisfactory resolution of this interesting and challenging litigation.

Robert E. Arceneaux
Margaret E. Woodward
Pascal F. Calogero, Jr.

## ELECTION OF COMPENSATION SCHEME

_____ has agreed to the terms as outlined above, and has selected the following option as the basis for compensation for leadership in this matter:

_____   Option 1 (contingency fee)

_____   Option 2 (hours plus *Johnson* factors, divided by heads)

_____   Option 3 no agreement, leaving it to Court to assess a fee, subject to right to contest court action.

_____
On behalf of the above identified firm or individual,
 this \_\_\_\_\_ day of \_\_\_\_\_, 2011.

**KLINE & SPECTER**
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
THE NINETEENTH FLOOR
1525 LOCUST STREET
PHILADELPHIA, PENNSYLVANIA 19102
WWW.KLINESPECTER.COM

SHANIN SPECTER

215-772-1000
FAX: 215-772-1359

SHANIN.SPECTER@KLINESPECTER.COM

March 8, 2011

via Email: rea7001@cox.net
Robert E. Arceneaux, Esquire
Robert E. Arceneaux LLC
47 Beverly Garden Drive
Metairie, LA 70001

RE: MDL 1657 – *In re: Vioxx Products Liability Litigation*

Dear Robert:

Thank you for your letter, by email, of March 6, 2011.

As we discussed by telephone, Kline & Specter chooses option 2. That is, we agree to pay you and your colleagues the hourly rate stated. At the conclusion of this matter, Judge Fallon will determine if a multiplier is due, using Johnson factors, with an agreement to cap the amount of any potential multiplier at 2X.

With respect to your proposal that this be divided by heads, that is agreeable. In order to fulfill that, it may be necessary for you to seek to enforce this agreement through court action.

Thank you for all your hard work and that of your colleagues, particularly, Peggy Woodward.

Sincerely,

SHANIN SPECTER

SS/dg
cc: Thomas R. Kline, Esquire
Lisa D'Agostino, Esquire

EXHIBIT B