**COORDINAMENTO DI ASSOCIAZIONI PER LA TUTELA DELL'AMBIENTE E DEI DIRITTI DI UTENTI E CONSUMATORI**

CODACONS



**Sede legale ROMA viale G.Mazzini 73 Tel +39 06 3725809 Fax +39 06 3701709 cap 00195 e-mail: codacons.info@tiscalinet.it**
**MILANO via Cusani 5 Tel +39 02 72003831 Fax +39 02 86460518 cap 20121 e-mail: codacons.lombardia@tiscalinet.it**

**www.codacons.it**

STUDIO LEGALE
Avv. Prof. Carlo Rienzi
Viale delle Milizie n. 9
00192 Roma
Tel. 06 62289028 Fax 06 62288993
Email salute@articolo32.net

**US DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**
*Section L Judge Eldon E. Fallon*
500 Poydras Street
Room C-456
New Orleans LA 70130

Racc. a/r

Rome, 5 october 2011

Object : **Case 2:05-md-01657-EEF-DEK Document 6578 Filed 08/30/2006**
**Section L**
**Judge Fallon**
**MDL NO. 1657**
**Calandra et al. V. Merck & Co., Inc., 05-2914**

The undersigned lawyer Carlo Rienzi, president of CODACONS, Italian Consumers Association, member of CNCU National Committee of the Italian Minister of Economic Development, with a law firm in Rome, in collaboration with the law firm Kenneth B Moll & Assiciated, LTD, Three First National Plaza, 50 th Floor, Chicago, Illinois60602, prodece here the instance to the Judge Fallon on the object.

The undersigned, in fact, agreed with the decision of the Judge who believed that Italian citizens (and French) were could be protected and treated fairly and rightly by their legislative system so considering inappropriate the use of American justice , because the order also wrote: .. *(omitted) a foreign forum is adequate When the parties will not be Deprived of all remedies or unfairly treated analysis, even thug They May Not Enjoy The Same Benefits as They Might receive in an American court ( ... omitted) (cftr.pag. 6dell'Order)* However, the undersigned, wish to emphasize the historical fact that unfortunately, despite I did various lawsuits about Vioxx damage in Italy, no one court has found there a causal link between the damages suffered by the patients taking Vioxx.

I invite, for the reasons expressed by the instance attached, Judge Fallon to intervene so that the underwriters of the drug Vioxx Italian citizens can act again through a class action to obtain a compensation for damage suffered (also considering that in America the pharmaceutical company's Vioxx has reached an agreement with the underwriters' legal recognition of adequate compensation to the same product).

I'm looking forward to receiving your kind reply as soon as possible

Mr.CarloRienzi
President of Codacons

*Il CODACONS è associazione di consumatori inscritta nell'elenco delle associazioni dei consumatori e degli utenti rappresentative a livello nazionale ex art.137 del D.Lgs n. 206/05 (Codice del Consumo) con decreto del Ministero dell'Industria 15 maggio 2000 e, come tale, componente del CNCU - Consiglio Nazionale dei Consumatori ed Utenti e legittimata ad agire a tutela degli interessi collettivi in base alla speciale procedura ex artt. 139 e 140 dello stesso decreto.*
*E' altresì O.N.L.U.S. - Organizzazione non lucrativa di utilità sociale ex d.Lgs 460/97, Associazione di Volontariato riconosciuta – ex lege 266/91ed*

**UNITED STATES DISTRICT COURT EASTERN DISTRICT OF LOUISIANA**

***PETITION for the revision of the ORDER & REASONS***

***Case 2:05-md-01657-EEF-DEK Document 6578 Filed 08/30/2006***

***Section L***

***Judge Fallon***

***MDL NO. 1657***

***Calandra et al. V. Merck & Co., Inc., 05-2914***

***Document Relates To: Calandra, et al. v. Merck & Co.,Inc., 05-2914***

***ON BEHALF OF:***

1. ***Aldo Calandra***
2. ***Alessandro Gabriele***
3. ***Enzo Quaglini***
4. ***Dr. Filippo Santangelo***
5. ***Prof. Giovanni Scibilia***
6. ***Marco Ramadori***

***And for all the other persons who were damaged by the drug Vioxx, and are therefore part of the class who has sued*** to obtain compensation for damages suffered as a result of taking it – for the purposes of the present petition, represented and defended by the attorney Carlo Rienzi and domiciled at his law office in Rome, Viale delle Milizie n. 9, 00192, phone number +39 06 62289027, fax +39 06 62288993, email salute@articolo32.net

AGAINST

**The order by Judge Fallon which on the 30th of August, 2006, did not certify the class of persons damaged by the drug Vioxx, upon declaration of *forum non conveniens.***

The Judge did not certify any class of persons in that they were Italian and French citizens who had already suffered well-known damages to their health as a result of taking the drug, or that, not yet having suffered damage to their health, were seeking reimbursement for the continuous and repeated medical treatment that they were undergoing, or who were simply seeking reimbursement for the cost of the drug. Essentially the Judge believed that Italian (and French) citizens had a judicial-legislative system available to them in their own countries which was able to protect them and treat them in a fair and equitable manner, and therefore believed that it was in opportune for them to turn to the American justice system; indeed, in the order he wrote . . . *a foreign forum is*

*adequate when the parties will not be deprived of all remedies or treated unfairly, even though they may not enjoy the same benefits as they might receive in an American court (page 6 of the Order).*

IT IS BELIEVED INSTEAD THAT

Following this pronouncement the named plaintiffs have unfortunately been forced to act autonomously in Italy, together with the others who have also acted with individual lawsuits, but have unfortunately run into innumerable difficulties in their proceedings. To this day, no one whose health has been damaged after taking the drug Vioxx has obtained justice.

On the other hand, in America, the access to justice and underlying that, the concept of "justice" are more highly guaranteed: in the Preamble to the Constitution, the State … establish[es] Justice, insure[s] domestic Tranquility, provide[s] for the common defence, *promote[s] the general Welfare* … in America, also, the principle of just and correct information, especially in the pharmaceutical industry, has long been established, as relates to the so-called "failure to warn": in this case the behavior which has prompted this lawsuit is the lack of a warning from a drug manufacturer suitable for guaranteeing an acceptable degree of safety in the use of a product, which would have effectively warned the consumer of the hazards linked to it. Indeed, a class action like the one for the damages caused by the drug Vioxx would also be based on the lack of information on the part of its manufacturer concerning risks connected to its use, and would therefore certainly be successful in the US: the FDA highlighted in a few documents, as early as 2001, how Merck & Co. was conducting "…a promotional campaign for Vioxx (….) [which] minimizes the potentially serious cardiovascular findings that were observed in the Vioxx Gastrointestinal Outcomes Research (VIGOR) study , and as such, misrepresents the safety profile for Vioxx." The VIGOR study, the FDA continued, highlighted how "patients on Vioxx were observed to have a four to five fold increase in myocardical infarctions (MIs) compared to patients on the comparator non-steroidal anti-inflammatory drug (NSAID), Naprossin (naproxen)" (from the warning letter by the FDA dated September 17, 2001). Therefore, **afterwards, on April 11, 2002, the FDA ordered Merck to include in Vioxx's packaging the updates that had emerged from the VIGOR study regarding the severe cardiovascular events caused by the drug.**

Overall, it must also be considered how in America, beyond the compensatory function, there is an overlapping punitive function, i.e., sanctions imposed by courts for the commission of civil torts, recognized by judges as "punitive damages"; therefore, it is obvious that in that country, the pharmaceutical companies, in order to not risk having to pay compensation to persons damaged by their drugs, often manage to reach settlements through alternative dispute resolution, without arriving at a court judgment.

*******

To furnish some examples, the difficulties met in Italy by individuals who were damaged, which in fact have rendered it impossible even for a single one to obtain justice, or an order to the pharmaceutical company to pay for damages to patients whose health suffered by taking Vioxx, have been the following:

1 – every consumer has been practically forced to sue individually, not only because at the time of the filing of the Italian lawsuits, the law concerning "class actions" had not yet been approved (it came into effect on January 1, 2010), but also, and more importantly, because the specific damages to prove required the admission of an expert medical investigation;

2 – in Italy, up until now, all of the expert medical investigations conducted during the case proceedings, as based on the APPROVE study conducted by Merck Sharp & Dohme itself, **specifically require and expect that the consumer used the drug Vioxx daily for at least 18 months** (the length time that the study says is necessary to establish that the patient's health could have been damaged as a result of having taken it.)

The proof that one has taken Vioxx for at least 18 months continually is impossible to furnish.

Additionally, **proof that one has taken Vioxx for any particular period is impossible to furnish to a judge**: the Italians who were damaged, in not being able to fathom that Vioxx would be recalled from the world market one day by its manufacturer and that it could cause harm to their health, did not save all their prescriptions for it.

The drug Vioxx was also paid for by the National Health Service, but for various reasons, the patients often paid for it themselves without keeping any sort of proof of purchase.

Then, in any case, the drug Vioxx was taken for the treatment of pain and osteoarthritic diseases, and therefore a use of it that was daily or for long periods could not have been foreseen; instead, it is logical to assume that the drug was taken as needed for long periods in weekly or monthly therapy cycles.

3 – Additionally, as the attorney and professor Claudio Consolo has argued intelligently in depth, in his writings supporting the class action for the persons damaged by Vioxx in America, the Italian trial is based on a strict and rigorous system of individual proof of the link of causality: in the cases filed in Italy, it was necessary to furnish strict proof of the causal link between the taking of Vioxx and damages to the patients' health. It is therefore difficult, if not impossible in Italy to prove the correlation between the health damages suffered by the patient and the fact that he or she had previously taken Vioxx.

In addition to this fact, unfortunately, the concomitant and inevitable risk factors that each patient presented (including age, gender, the fact of being a smoker or not, the fact of having had previous heart disease or family members with it) did not allow for identifying this causal link;

4 – In Italy it was possible to act only on behalf of persons who took Vioxx and who were able to complain or show concrete damage to his or her health as a result of having taken the defective drug, and not for all those persons who, instead, were not able to prove damage to his or her health, but who would have requested compensation only for having been exposed to a future risk.

The Italian justice system, even in recognizing that persons in this last category have suffered a non-material damage consisting of limits to their freedom of life and action because of the need for check-ups, and for the stress and fear of being afflicted in the future by health problems, has rarely granted protection or even a minimum of relief for these damages.

Already with the sadly famous case of "Seveso," the Italian judiciary system did not recognize forms of responsibility and/or compensation from risk. The environmental accident at Seveso on July 10, 1976, in which a factory explosion occurred, with the resultant spreading of dioxin and environmental pollution to the surrounding areas <u>did not allow for the connection with certainty of a few cancerous diseases which concretely developed in particular individuals to the exposure to dioxin</u>. The citizens who were afflicted by this catastrophe and exposed to an enormous health risk did not receive any form of protection from the justice system: any attempt to connect an ailment to the exposure to dioxin did not appear credible and worthy of protection because of the obstacle represented by the strict requirement for individual proof of the *link of causality*. The only damage that was recognized after many years, even if it was minimal, was the damage caused by severe emotional distress for the lack of information on what had happened, and the risks connected to the exposure to dioxin, as well as the limitations to victims' lives for the need to undergo continuous medical check-ups, and the imposition of conditions on choices in life like not procreating, or the need to move elsewhere; and in any case, in order to receive compensation for these damages in a way that was personalized and best suited to the individual, the claim and rigorous proof of the psychophysical damage that one had suffered was expected.

5 – At the time of the filing of the cases in Italy for the damages caused by taking Vioxx, the law on "class action" lawsuits had not yet been approved. It came into effect on January 1, 2010, and was a necessary legal instrument for the class of consumers who wanted to request compensation for damages for all the irregularities that took place from August 16, 2009 onwards. The Italian class action in America had been proposed in May 2005, and on August 30, 2006, was dismissed by Judge Fallon for the presupposition of *forum non convienens,* and consequently in 2006, 2007, and 2008, all of the individual lawsuits in Italy were filed in the Italian civil courts. Therefore, with the

law on class action lawsuits not yet being in effect, the individuals damaged by Vioxx filed individual and autonomous lawsuits, sustaining the pertinent costs, in order to request compensation for the damages caused by the dangerous drug, with each one paying the relative legal fees. Even when the above-mentioned law was approved and went into effect on January 1, 2010, the same individuals were not able to use it legally, both for the expiration of the right to sue, which had occurred in the meantime (Vioxx was recalled from the world market on September 30, 2004 by decision of its manufacturer, and because of its imputabilty for extracontractual responsibility the right to sue expired in September 2009) as well as for the fact that the same law allowed more than one citizen to sue for the protection of homogenous rights only for irregularities that took place after August 16, 2009 (while the events attributable to the action of the drug Vioxx occurred between 2000 and September 30, 2004.)

6 – In Italy, the justice system allows for the damages requested by the plaintiffs to be liquidated when they are specifically suffered and proven in observance of the principle of "material damage," with the "punitive damages" of the American justice system not being admitted or recognized. The idea that compensation for damage could have a punishing effect on the damaging party remains foreign to Italian law.

CONSIDERING THAT SPECIFICALLY

in the civil cases filed in Italy by individuals damaged by Vioxx or by their estates against Merck Sharp & Dohme Spa (the manufacturer of the drug), the Italian Health Ministry, and the AIFA (the Italian Phamaceutical Agency), the former of whom put the drug on the market, and the latter two who authorized its doing so, the following occurred (and in furnishing these examples, we refer to only a few proceedings):

- In a first-level civil lawsuit, cause number RG 64313/2007, in the Civil Court of Rome, by the plaintiff GABRIELE, the judge, in not believing that he had furnished *any indication sufficient to prove that he had taken the drug continuously for at least 18 months, the amount of time necessary for there to be an increased risk of heart disease, according to the studies done,* <u>rejected Mr. Gabriele's request</u>. In this proceeding, the plaintiff furnished proof of having taken the drug Vioxx, also through his clinical file from the Hospital of San Eugenio in Rome, in which it showed that he had been given the drug during his stay there and upon release, but he was not able to furnish the strict proof that the judge required of the drug having been taken continuously for 18 months. ***<u>SEE ADDENDUM N. 1</u>*** **<u>The proof required by the Judge of having taken Vioxx continuously for at least 18 months is extremely difficult, both for the difficulty of saving medical documents, as well as for the fact that the drug was prescribed by doctors for its analgesic effect as needed or at regular intervals, also for long periods of time, but certainly not daily for 18 months.</u>**
- In a first-level civil lawsuit, cause number RG 64295, in the Civil Court of Rome, by the plaintiff FORTUNATI, the judge, not believing that the plaintiff's proof was sufficient of his prescription for Vioxx and his subsequent taking of it "daily" for 18 consecutive months (as was said in the preceding point *probatio diabolica*) and notwithstanding his doctor's specific certification that he had been prescribed the drug for approximately two years (***<u>SEE ADDENDUM N. 2</u>)*** <u>rejected Mr. Fortunati's request and even ordered him to pay legal fees</u> in the amount of € 8,550.00, in addition to other fees to both defendants **<u>SEE ADDENDUM N. 3;</u>**
- In a first-level civil lawsuit, cause number RG 64239/2007, in the Civil Court of Rome, by the plaintiff ANTONIO CARNEVALE, the judge admitted medical expert testimony to verify if he had taken the drug Vioxx, on the basis of the documentation produced, and in which quantities, and whether or not the plaintiff presented risk factors such as could rule out that the heart attack he suffered in 2002 was actually caused by Vioxx. However, contrary to what the plaintiff maintained, the expert testimony maintained that *Mr. Carnevale took Vioxx 25 mg tablets in a manner that was inconstant and discontinuous between March 14, 2001 and September 16, 2001, as was prescribed to him, and without the*

*specification of a precise pathology. In total there were 238 tablets over the course of 587 days instead of the 540 tablets over the course of 540 days, consistent with one tablet per day, as recommended, and in the space of 18 months, the minimum time identified by the APPROVE study for demonstrating an increased risk of non-fatal cardiovascular events,* as well as the fact that the plaintiff had other risk factors including ischemic heart disease in his family (his brothers), his age and gender, arterial hypertension, etc. Therefore, the judge concluded, the cardiovascular pathology COULD NOT be causally linked, with the preponderance of probability, to the taking of Vioxx. The case is still pending but the expert report did not recognize a causal link between the problems that the plaintiff had and the taking of Vioxx **SEE ADDENDUM N. 4, the judge required the plaintiff to furnish rigorous proof of the causal link between taking the drug and the subsequent damage to his health that he reported, but the presence of other risk factors (age, gender, hypertension) led him exclude this link *sic et simpliciter!***

- In a first-level civil lawsuit, cause number RG 64245/2007, in the Civil Court of Rome, by the plaintiff NADIA GIULIANI, the judge believed her request to be unfounded and rejected it, but compensated her litigation fees. The plaintiff was able to produce only a prescription by Dr. Ricciuti to take Vioxx for about 30 days: in fact, the plaintiff had not kept all the prescriptions for the medication, nor had she always purchased it with a prescription, which would have allowed her to ask her local National Health Service bureau for a copy of the prescriptions, since it paid for the drug. Unfortunately, however, the judge would not even recognize that the certificate produced by Dr. Ricciuti was attributable to the plaintiff in that it did not have her name on it. **SEE ADDENDUM N. 5, the proof furnished by the plaintiffs that they took the drug were not believed to be sufficient by the Italian judges!**
- In a first-level civil lawsuit, cause number RG 8068/2009, in the Civil Court of Torino, the damaged party REMO DEL CORSO, deceased, filed by his estate, consisting of his wife Ms. GIUSEPPINA GALBIATI and his children LUCA DEL CORSO and MARCO DEL CORSO, the judge rejected the claim with the order to pay legal expenses, not believing it proven that the drug had been taken by the plaintiff, nor was the proof regarding the prescriptions for Vioxx by Dr. Spinelli sufficient; the judge explained that if it is true that the prescriptions on paper for the drug demonstrate an effective prescription for the medicine, they still do not necessarily prove that the drug was taken. The same judge did not even admit expert medical testimony to evaluate the causal link between the taking of the drug, as the plaintiffs maintained, and the damages suffered by the deceased party, considering that he had not taken Vioxx for more than 18 months. The judge also believed that there was no proof that the drug was dangerous, even in the case of taking it sporadically, and that it is not even possible to cite, in support of the dangerousness of the drug, the American cases, which as was written in his opinion, are characterized *by a completely different approach to the foundation of the damage, based on the principle of punitive damage* ***SEE ADDENDUM N. 6.***

all of which believed and further considered, given the extreme difficulty of suing for reimbursement of the damages caused to consumers in Italy by the dangerous drug Vioxx produced by Merck Sharp & Dohme

IT IS REQUESTED

That the American Class Action be recognized as admissible as presented *illo tempore*.

Rome, 5 | October | 2011

AVV. CARLO RIENZI