1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF LOUISIANA
2

3    ******************************************************************

4    IN RE:  VIOXX PRODUCTS
     LIABILITY LITIGATION
5                               MDL DOCKET NO. 1657
                                NEW ORLEANS, LOUISIANA
6                               WEDNESDAY, SEPTEMBER 21, 2011, 9:32 A.M.

7    ******************************************************************

8

        TRANSCRIPT OF HEARING INVOLVING THE OBJECTORS PROCEEDINGS
9          HEARD BEFORE THE HONORABLE ELDON E. FALLON
                   UNITED STATES DISTRICT JUDGE
10

11   APPEARANCES:

12

13   FOR THE PLAINTIFFS:     HERMAN HERMAN KATZ & COTLAR
                             BY:  RUSS M. HERMAN, ESQUIRE
14                                LEONARD A. DAVIS, ESQUIRE
                             820 O'KEEFE AVENUE
15                           NEW ORLEANS, LA 70113

16                           BEASLEY ALLEN CROW METHVIN
                             PORTIS & MILES
17                           BY:  ANDY D. BIRCHFIELD, JR., ESQUIRE
                                  P. LEIGH O'DELL, ESQUIRE
18                           234 COMMERCE STREET
                             POST OFFICE BOX 4160
19                           MONTGOMERY, AL 36103

20

                             LEVIN, FISHBEIN, SEDRAN & BERMAN
21                           BY:  FRED S. LONGER, ESQUIRE
                             510 WALNUT STREET, SUITE 500
22                           PHILADELPHIA, PENNSYLVANIA 19106

23

                             SEEGER WEISS
24                           BY:  CHRISTOPHER A. SEEGER, ESQUIRE
                             ONE WILLIAM STREET
25                           NEW YORK, NY 10004

```
 1   APPEARANCES CONTINUED:

 2

 3                          GAINSBURGH BENJAMIN DAVID MEUNIER AND
                            WARSHAUER
 4                          BY:  GERALD E. MEUNIER, ESQUIRE
                            2800 ENERGY CENTRE
 5                          1100 POYDRAS STREET, SUITE 2800
                            NEW ORLEANS, LA  70163
 6

 7                          BARRIOS, KINGSDORF & CASTEIX, L.L.P.
                            BY:  DAWN M. BARRIOS, ESQUIRE
 8                          701 POYDRAS STREET, SUITE 3650
                            NEW ORLEANS LA 70139
 9

10                          LEVIN, PAPANTONIO, THOMAS,
                            MITCHELL, ECHSNER & PROCTOR
11                          BY:  TROY RAFFERTY, ESQUIRE
                            316 SOUTH BAYLEN STREET, SUITE 600
12                          PENSACOLA, FL  32502

13

14                          BLIZZARD MCCARTHY & NABERS
                            BY:  EDWARD BLIZZARD, ESQUIRE
15                          LYRIC CENTRE BUILDING
                            440 LOUISIANA, SUITE 1710
16                          HOUSTON, TX  77002

17                          RANIER LAW FIRM
                            BY:  DREW A. RANIER, ESQUIRE
18                          1419 RYAN STREET
                            POST OFFICE BOX 1890
19                          LAKE CHARLES, LA 70602

20                          OLDFATHER LAW FIRM
21                          BY:  ANN B. OLDFATHER, ESQUIRE
                                 MEGAN J. HASTINGS, ESQUIRE
22                          1330 SOUTH THIRD STREET
                            LOUISVILLE, KY  40208
23

24

25
```

1  APPEARANCES CONTINUED:

2

3                           LIEFF CABRASER HEIMANN & BERNSTEIN
                            BY:  ELIZABETH J. CABRASER, ESQUIRE
4                           EMBARCADERO CENTER WEST
                            275 BATTERY STREET, SUITE 3000
5                           SAN FRANCISCO, CA 94111

6                           DUGAN LAW FIRM
                            BY:  JAMES R. DUGAN, ESQUIRE
7                           ONE CANAL PLACE, SUITE 1000
                            365 CANAL STREET
8                           NEW ORLEANS, LA  70130

9

                            LAW OFFICE OF DANIEL BECNEL, JR.
10                          BY:  DANIEL E. BECNEL, ESQUIRE
                            106 SEVENTH STREET
11                          RESERVE, LA  70084

12

                            SANFORD LAW FIRM
13                          BY:  SHELLY A. SANFORD, ESQUIRE
                            16225 PARK TEN PLACE, SUITE 500
14                          HOUSTON, TX  77084

15

                            BEIRNE MAYNARD & PARSON
16                          BY:  JACK URQUHART, ESQUIRE
                            1300 POST OAK BOULEVARD, SUITE 2500
17                          HOUSTON, TX  77056

18

                            MARGARET E. WOODWARD
19                          ATTORNEY AT LAW
                            3701 CANAL STREET, SUITE C
20                          NEW ORLEANS, LA  70119

21

                            WILLIAMS KHERKHER
22                          BY:  JOHN EDDIE WILLIAMS, JR., ESQUIRE
                            8441 GULF FREEWAY, SUITE 600
23                          HOUSTON, TX 77017-5051

24

25

```
 1  APPEARANCES CONTINUED:

 2

 3                          STRATTON FAXON
                            BY:  MICHAEL A. STRATTON, ESQUIRE
 4                          59 ELM STREET
                            NEW HAVEN, CT  06510
 5

 6

 7  FOR THE DEFENDANT:      WILLIAMS & CONNOLLY
                            BY:  DOUGLAS R. MARVIN, ESQUIRE
 8                               M. ELAINE HORN, ESQUIRE
                            725 TWELFTH STREET, N.W.
 9                          WASHINGTON, DC  20005

10

                            STONE PIGMAN WALTHER WITTMANN
11                          BY:  DOROTHY H. WIMBERLY, ESQUIRE
                            546 CARONDELET STREET
12                          NEW ORLEANS, LA 70130

13

                            SKADDEN ARPS SLATE MEAGHER & FLOM
14                          BY:  JOHN H. BEISNER, ESQUIRE
                            1440 NEW YOUR AVENUE NW
15                          WASHINGTON, DC  20005

16

                            SKADDEN ARPS SLATE MEAGHER & FLOM
17                          BY:  THOMAS E, FOX, ESQUIRE
                            FOUR TIMES SQUARE
18                          NEW YORK, NEW YORK 10036

19

                            HUGHES HUBBARD & REED
20                          BY:  THEODORE V. H. MAYER, ESQUIRE
                            ONE BATTERY PARK PLAZA
21                          NEW YORK, NY 10004

22

23                          KING KREBS & JURGENS
                            BY:  HENRY A. KING, ESQUIRE
24                          PLACE ST. CHARLES
                            201 ST. CHARLES AVENUE
25                          45TH AVENUE
                            NEW ORLEANS, LA  70170
```

```
 1  APPEARANCES CONTINUED:

 2

 3  PRO SE CURATOR:          LAW OFFICES OF ROBERT M. JOHNSTON
                             BY:  HEATHER E. REZNICK, ESQUIRE
 4                           400 POYDRAS STREET, SUITE 2450
                             NEW ORLEANS, LA  70130
 5

 6

 7  SPECIAL MASTER:          JUNEAU DAVID
                             BY:  PATRICK A. JUNEAU, ESQUIRE
 8                           THE HARDING CENTER
                             1018 HARDING STREET, SUITE 202
 9                           P.O. DRAWER 51268
                             LAFAYETTE, LA  70505
10

11

12  OFFICIAL COURT REPORTER:   CATHY PEPPER, CCR, RPR, CRR
                               500 POYDRAS STREET, ROOM B406
13                             NEW ORLEANS, LOUISIANA 70130
                               (504) 589-7779
14
    PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY.   TRANSCRIPT
15  PRODUCED BY COMPUTER.

16

17

18

19

20

21

22

23

24

25
```

1          **P-R-O-C-E-E-D-I-N-G-S**

2          WEDNESDAY, SEPTEMBER 21, 2011

3          M O R N I N G    S E S S I O N

4          (COURT CALLED TO ORDER)

5

6

10:46AM  7          THE DEPUTY CLERK:  All rise.

10:46AM  8          THE COURT:  Be seated please.  We're here today for a

10:46AM  9  hearing on some of the issues that we've discussed involving the

10:47AM  10  objectors.

10:47AM  11          As you heard and as is recorded in the transcript,

10:47AM  12  the objectors, when I set the fee, I set a fee for common

10:47AM  13  benefit, taking into consideration all the factors.  I set a fee

10:47AM  14  of 6.5 percent, and that fee was to come out of the 32 percent

10:47AM  15  which I set for the primary lawyers in the case.  So it would

10:47AM  16  come out of the lawyer's fee and not from the litigants.

10:47AM  17          As I have been doing with all of this material, I

10:47AM  18  posted it and invited any comments or objections.  I received

10:47AM  19  objections.  There are a number of objectors who registered

10:47AM  20  objection to the 6.5 percent, and I felt that I needed to have

10:48AM  21  some structure in that process, and I asked the objectors to get

10:48AM  22  together and pick one or more of their number to be the

10:48AM  23  representatives.

10:48AM  24          Mr. Michael Stratton was picked and he then

10:48AM  25  proceeded to pursue the objectors position.  He took some

10:48AM 1     depositions, as you know, and did some work and had a number of

10:48AM 2     hearings and many conferences.  And then the parties told me that

10:48AM 3     they wanted to discuss an amicable resolution of the matter.

10:48AM 4             Then they told me that it was resolved.  They

10:48AM 5     discussed the fact in Court as well as, I think, maybe even the

10:48AM 6     conference room.  But in any event, I wasn't present because it

10:48AM 7     was a private conference between the parties.  And I wasn't

10:48AM 8     advised of the terms of the settlement.  Nobody sought my

10:49AM 9     approval for the settlement.  And it went forward.

10:49AM 10            Later, I find that the settlement not only involved

10:49AM 11    the settlement but it also involved the distribution of funds in

10:49AM 12    payment of the settlement.

10:49AM 13            I look at the settlement agreement, the basic

10:49AM 14    supplement agreement -- the main supplement agreement I should

10:49AM 15    dub it, indicates that any fees, all fees cannot be set or all

10:49AM 16    fees must be approved by the Court.

10:49AM 17            Well, I didn't know them; I didn't approve them.

10:49AM 18    So the issue is, who pays for the shortfall?  It's approximately

10:49AM 19    $12 million or thereabouts.  And I set a hearing for today to

10:49AM 20    discuss the issue of the shortfall and who is to pay for the

10:50AM 21    shortfall.

10:50AM 22            I'll hear from the plaintiffs' committee first.

10:50AM 23        MR. BIRCHFIELD:  Good morning, Your Honor.  Andy

10:50AM 24    Birchfield on behalf of the fee allocation committee.

10:50AM 25            As I understand it, from what I just heard the

10:50AM 1    Court say, we're here really to examine two issues:  One the size

10:50AM 2    of the funds; and then secondly, how a distribution of the

10:50AM 3    Court's allocation should be handled in light of that -- in light

10:50AM 4    of that shortfall.

10:50AM 5            So I would like to take a few minutes, if I can,

10:50AM 6    Your Honor, to go through the size of the fund.  In response to

10:50AM 7    the Court's order asking BrownGreer for a report, the claims

10:50AM 8    administrator provided a report that the Court has posted.  And

10:50AM 9    we'll take a look at that.  I just want to walk through the items

10:51AM 10   that are listed in that report.

10:51AM 11           We start with an amount of 315,250,000.  That's six

10:51AM 12   and a half percent of the $4.85 billion settlement.

10:51AM 13        THE COURT:  And that was the fee that the Court set, 6.5

10:51AM 14   percent of the 4.85 billion, that came to $315,250,000.  So I

10:51AM 15   decided how that was to be distributed and I then contacted

10:51AM 16   BrownGreer and said, How much is in the fund?  And this is the

10:51AM 17   document that they sent to me, which I put up on the Internet,

10:51AM 18   showing that there was not $315,250,000 in the fund.  There was

10:51AM 19   only the $302,406,562.50.  And the adjustment for the objectors

10:52AM 20   was $12,036,230.

10:52AM 21        MR. BIRCHFIELD:  Yes, Your Honor.  The Court's

10:52AM 22   allocation is based on the full amount, the 315,250,000.  The

10:52AM 23   adjustments that are made here, and the biggest item is at the

10:52AM 24   bottom for the fee percentage objectors.  But I want to walk

10:52AM 25   through.

10:52AM  1          First, there is $689,650 that is -- that the fund

10:52AM  2  is short because of fixed payments.  And those are payments when

10:52AM  3  claimants went through the claims process, if they had an extreme

10:52AM  4  number of risk factors, if there was very short usage, if there

10:52AM  5  was a very slight injury, whatever the reason, the value of their

10:52AM  6  claim was extremely low.  They were given the option of taking a

10:52AM  7  $5,000 fixed payment.  And those payments, you know, went out

10:52AM  8  before the Court had even set a holdback.  We determined, the

10:52AM  9  parties determined that it's a relatively small amount.  We did

10:53AM 10  not need to be withholding common benefit fees.

10:53AM 11          So that is what we have in item number one -- I

10:53AM 12  mean, two.

10:53AM 13          Line three is an adjustment for the special marker

10:53AM 14  or other payments.  And special markers are similar, you know,

10:53AM 15  similar cases, very, very low amount.  Some of those Mr. Juneau

10:53AM 16  reviewed and made a determination, but the average was $5,000.

10:53AM 17  And for most of those cases there was not a common benefit fee

10:53AM 18  withheld.

10:53AM 19          The other payments dealt with a very, very small

10:53AM 20  number of cases, but the settlement program, to make sure that

10:53AM 21  the program operated with integrity, there were random audits

10:53AM 22  done for claims.  And you know, that is where, after they were

10:53AM 23  reviewed initially by the claims administrator, they were pulled

10:53AM 24  out, and they were re-reviewed, they were reviewed by an

10:54AM 25  independent auditor.  And sometimes those amounts or the points

10:54AM 1    evaluation we changed.

10:54AM 2            In a handful of those circumstances, after the

10:54AM 3    initial payment was issued, the 40 percent payment, where there

10:54AM 4    was no with holding of common benefit fees, the final points

10:54AM 5    award reduced it so that the claimant was not getting any

10:54AM 6    additional fees.  So we did not, you know, turn around and try to

10:54AM 7    go and collect a common benefit fee from those claimants.  So for

10:54AM 8    the special markers and the other payments, we have $45,265.66

10:54AM 9    that was withheld.

10:54AM 10           And then, line 4 is the adjustment for the fees

10:54AM 11   paid to the Special Master, and BrownGreer's report has

10:54AM 12   $72,291.81.

10:54AM 13           The Court has just recently entered an order

10:54AM 14   ordering the payment of $123,197.22, I believe.  So now we would

10:55AM 15   have that additional amount as the shortfall.

10:55AM 16           And then, item number five is the adjustment for

10:55AM 17   the payments to the fee objectors.

10:55AM 18           And as the Court noted in describing this process,

10:55AM 19   this began with a -- the master settlement agreement provided

10:55AM 20   that the Court would determine the appropriate amount of

10:55AM 21   percentage of common benefit fees, up to eight percent.

10:55AM 22           So in January, in January of 2009, the plaintiffs'

10:55AM 23   liaison counsel filed a petition seeking eight percent.  The

10:55AM 24   Court entered an order that set a deadline for anyone who

10:55AM 25   objected to that petition to file their objection by May 8th.

10:55AM  1    May 8th of 2009.

10:55AM  2               In response, there were numerous objectors --

10:55AM  3    objections filed.  60 to 70 firms filed objections.  The Court

10:56AM  4    conducted discovery, appointed Michael Stratton as liaison

10:56AM  5    counsel, and there was extensive, not only paper and written

10:56AM  6    discovery, but depositions and briefing as well.  That issue was

10:56AM  7    litigated for over one year before we reached a -- we reached a

10:56AM  8    resolution.

10:56AM  9               When we were looking at these objections, the

10:56AM 10    objections fell into two categories:  And there were -- there was

10:56AM 11    one category of objections that said, eight percent is just too

10:56AM 12    much.  You know, based on the results, based on the work, we

10:56AM 13    think eight percent is too much.

10:56AM 14               There was another category of objectors that

10:56AM 15    said -- of these that timely filed their objections said, We had

10:56AM 16    an agreement for two percent.  We had an agreement with the --

10:56AM 17    under pretrial order 19, we signed a full participation option.

10:56AM 18    It should be two percent.

10:56AM 19               Now, the fee allocation committee, the NPC, we took

10:57AM 20    a different view.  The agreement itself made it clear that if you

10:57AM 21    entered into the settlement agreement, that was superseded and

10:57AM 22    the Court would set the fee.

10:57AM 23               Nonetheless, a two percent fee, to reduce the

10:57AM 24    entire fee to two percent poses significant risk.  But more

10:57AM 25    importantly than that risk, because we felt confident in our

10:57AM 1    position legally.  The even greater risk was the delay.  The

10:57AM 2    Court had made it clear that the, you know, that this issue

10:57AM 3    needed to be resolved, needed to be resolved finally, needed to

10:57AM 4    know the size of the pie before you start looking at the size of

10:57AM 5    each slice.

10:57AM 6           And so we knew that we needed to, we needed to

10:57AM 7    resolve this issue with finality.  So we entered into an

10:57AM 8    agreement with the fee percentage objectors to deal with the

10:57AM 9    group that raised the objection about eight is too much.  We

10:57AM 10   reached an agreement where we would lower the amount that we were

10:58AM 11   seeking to seven and a half percent.  Michael Stratton, on behalf

10:58AM 12   of the objectors and with the support of his experts, said that

10:58AM 13   would be a reasonable amount.  And so we entered into that

10:58AM 14   agreement to resolve category 1 of the objectors.

10:58AM 15          In regards to category 2, we had 60 to 70 objectors

10:58AM 16   that we were dealing with.  That is approximately six or seven

10:58AM 17   percent of the number of lawyers that were involved in this

10:58AM 18   litigation.

10:58AM 19          So it was a manageable amount for us to deal with

10:58AM 20   that had timely filed an objection, so we entered into an

10:58AM 21   agreement where they would pay, you know, a four-percent fee.

10:58AM 22   They would only have four percent withheld, as opposed to the

10:58AM 23   eight, and that they would ultimately await the Court's

10:58AM 24   determination of the appropriate amount.  So a refund was issued

10:59AM 25   of four percent to those fee percentage objectors.

10:59AM 1      And Michael Stratton distributed those funds to the

10:59AM 2 fee percentage objectors.

10:59AM 3      In regards to, in regards to us entering into that

10:59AM 4 agreement, some issues have been raised as to the authority of

10:59AM 5 the NPC, or the fee allocation committee to do so.  And I want to

10:59AM 6 take just a moment, you know, to look at that, Your Honor.

10:59AM 7      If you go to the master settlement agreement, and

10:59AM 8 in article 9 is the -- article 9 is the section that deals with

10:59AM 9 attorneys' fees.  And we see in 9.2.1 that the maximum percent

10:59AM 10 would be eight percent.  And then we see in 9.2.3 that this

11:00AM 11 section deals with interest.  It says that the funds will be

11:00AM 12 deposited into an interest-bearing account.  And questions have

11:00AM 13 been raised about, Okay, where is the interest here?  And we will

11:00AM 14 see that the funds were placed in an interest-bearing account.

11:00AM 15 But in just a moment we'll also look at the escrow agreement that

11:00AM 16 describes how the interest was to be used, because as we

11:00AM 17 negotiated this settlement agreement, the escrow agreement is

11:00AM 18 part of the master settlement agreement, and it provides that the

11:00AM 19 interest would be used to cover the administrative costs.

11:00AM 20      Merck, under the terms of the master settlement

11:00AM 21 agreement, bears the responsibility for administrative costs.

11:00AM 22 But the interest that is earned is to be used by Merck for that

11:00AM 23 purpose.  If is there a shortfall, then Merck would be

11:00AM 24 responsible.

11:00AM 25      So the funds were placed in an interest-bearing

11:00AM 1    account.  We'll look at the escrow agreement in just one moment.

11:01AM 2             But also in 9.2.3 -- well, let me back up.  This

11:01AM 3    settlement agreement is a private agreement between Merck and the

11:01AM 4    NPC.  And then it is offered to all other counsel.  If they want

11:01AM 5    to participate, they could do so by accepting all the terms,

11:01AM 6    including article 9 of this section.

11:01AM 7             As the Court is well aware, we had 99.9 percent

11:01AM 8    participation.  Nearly everyone accepted the terms of this

11:01AM 9    agreement and entered into it.

11:01AM 10            In regards to the settlement agreement, we, as a

11:01AM 11   party, you know, to this agreement, felt that we had the ability

11:01AM 12   to enter into this agreement to resolve these percentage fee

11:01AM 13   objectors that would serve in the best interest of the common

11:01AM 14   benefit attorneys as a whole.  One issue is, in the middle of

11:02AM 15   9.2.3, it says that, "All awards therefrom will be subject to

11:02AM 16   approval upon consideration by him," that's you, "in consultation

11:02AM 17   with Judges Chaney, Higbee and Randy Wilson."

11:02AM 18            And as we entered into this settlement agreement,

11:02AM 19   we did not view -- I mean, at this point, at the point that we

11:02AM 20   entered into this agreement, the common benefit fee amount

11:02AM 21   percentage had not been decided by the Court.

11:02AM 22            We were looking at a percentage that had been

11:02AM 23   withheld from the firms, so we were not, in our view, we were not

11:02AM 24   making an award.  We were not evaluating someone's claim and

11:02AM 25   saying, you know, Based on the amount of work you're due to, you

11:02AM  1    know, this amount of work.  This was a matter of refunding a

11:02AM  2    portion of the amount that that firm had paid in.  We were not

11:03AM  3    shifting fees from one to the other.

11:03AM  4             So we did not view this as, you know, a violation

11:03AM  5    of this agreement.

11:03AM  6             In retrospect, should we have obtained a court

11:03AM  7    order?  Perhaps so, Your Honor.  But we did not view that this

11:03AM  8    was a violation of the agreement or outside our authority under

11:03AM  9    the terms of the master settlement agreement.

11:03AM 10             So we entered into the agreement.  And that

11:03AM 11    agreement was entered into in July, July 27th, I believe, of

11:03AM 12    2010.  And that hearing, I mean, that agreement was placed on the

11:03AM 13    record, outside the presence of the Court, in the Court's

11:03AM 14    conference room.  That was transcribed, and in that transcript it

11:03AM 15    describes that the -- that we will compile a list.  It sets out

11:04AM 16    18 million, roughly $18 million that would be paid to resolve

11:04AM 17    this issue.  It also says that we will reconcile a list of all

11:04AM 18    the objectors.

11:04AM 19             So for the next month -- and one of the issues, you

11:04AM 20    know, there is that we had, we had objections that were filed,

11:04AM 21    but we did not have -- but they were not all filed by primary

11:04AM 22    counsel.  So tracking who paid what through BrownGreer proved to

11:04AM 23    be challenging.  We worked with Michael Stratton, and he worked

11:04AM 24    the objectors, we got the list reconciled, and so in August, that

11:04AM 25    distribution was made.  It was not the 18, it was the 19.2.

11:04AM   1          Issues have been raised about why that discrepancy,

11:04AM   2     and that was solely through the reconciliation of the list of

11:04AM   3     those who had filed a timely objection.   That explains why we

11:04AM   4     went from 18 to 19.2.

11:05AM   5          Once that issue was resolved and the Court was

11:05AM   6     informed that we were recommending changing our request to seven

11:05AM   7     and a half percent, the objectors were withdrawing all of their

11:05AM   8     objections.   Then the Court -- with that issue resolved, the

11:05AM   9     Court then moved to deciding the appropriate amount of the

11:05AM  10     allocation.

11:05AM  11          We entered into that agreement in July.   The Court

11:05AM  12     did not enter its order until October 19th of 2010.   So we have,

11:05AM  13     we've got this issue, you know, now finally resolved.

11:05AM  14          And I think that it is important to note,

11:05AM  15     Your Honor, that once we entered into that agreement and Michael

11:05AM  16     Stratton sent out the letters, and the letters are now -- some of

11:05AM  17     those letters are now in the record, form letters that he sent to

11:05AM  18     each of those fee percentage objectors.   And it set out, you

11:05AM  19     know, that it was clear to the fee percentage objectors, as you

11:06AM  20     heard Ms. Oldfather say, that all of the objections were

11:06AM  21     withdrawn at that point.

11:06AM  22          They had been withdrawn for well over two months

11:06AM  23     before the Court enters its order setting the assessment at six

11:06AM  24     and a half percent.

11:06AM  25          So when the Court enters its order on six and a

11:06AM 1    half percent, the Court expressly states in that order that --

11:06AM 2    that describes this process and that all objections have been

11:06AM 3    withdrawn.  Notes that on two separate occasions.

11:06AM 4              As we can see very quickly on page 10 of the

11:06AM 5    Court's order of October 19th, while the matter was pending

11:06AM 6    before this Court, the PLC reduced its request for a common

11:06AM 7    benefit fee award to seven and a half percent and the objectors

11:06AM 8    withdrew their objections.

11:06AM 9              And then again, on page 14, the Court notes that

11:07AM 10   although the objectors have now withdrawn their objections, this

11:07AM 11   fee request -- the Court then goes on to consider the issue of

11:07AM 12   the contract and notes that the master settlement agreement

11:07AM 13   supercedes it.  But the Court expressly notes that all objections

11:07AM 14   have been withdrawn.  That's October 19th.  28 days pass.  The

11:07AM 15   time period for filing a Rule 59 motion to say, Judge, you got it

11:07AM 16   wrong.  You know, I didn't withdraw my objection.  That passes.

11:07AM 17   There is no motion filed in that regard.

11:07AM 18             The time for filing appeal to say the Court got it

11:07AM 19   wrong, we didn't withdraw our objection, that passes, there is no

11:07AM 20   issue there.

11:07AM 21             The Court has -- in October, it has a status

11:07AM 22   conference.  In November, the Court has a status conference.  No

11:07AM 23   issue is raised to the Court, even informally, to say, Judge, I

11:08AM 24   didn't withdraw my objection.  That issue -- that issue is

11:08AM 25   resolved with finality at that point.

11:08AM 1          And the Court had instructed the fee allocation

11:08AM 2    committee to put on hold its deliberations regarding allocation

11:08AM 3    until that issue was finally resolved.  And so when that issue

11:08AM 4    was resolved, then we moved to the allocation process.

11:08AM 5          After that order was final, then the amount, the

11:08AM 6    one-and-a-half percent difference between the eight that had

11:08AM 7    initially been withheld pursuant to the Court's order to the six

11:08AM 8    and a half percent that the Court finally determined appropriate,

11:08AM 9    that was refunded to the -- to the firms.

11:08AM 10         That is where we see, that's where the difference

11:08AM 11   between the 19.2 and the 12 million that is the shortfall between

11:08AM 12   these firms.  Because the firms that had already received a

11:09AM 13   refund, you know, to four percent, they were not entitled -- they

11:09AM 14   did not -- they were not entitled to an additional refund.  So

11:09AM 15   the net -- the net to those firms was not the 19, it was the 12.

11:09AM 16   That's where we see the amount that's listed in line 5 there.

11:09AM 17         So once that -- once the Court issued that order,

11:09AM 18   then the fee allocation committee entered -- we resumed our

11:09AM 19   deliberations.  Pursuant to the Court's order, we did a

11:09AM 20   preliminary recommendation that was made to the individual firms.

11:09AM 21   We met with individual firms who had questions or who had

11:09AM 22   objections before a deadline of December 16th to file a response

11:09AM 23   to whether they accepted or rejected that amount.  The fee

11:09AM 24   committee deliberated.  We made a determination.  We reconsidered

11:10AM 25   every firm that filed an issue or raised questions.  And we made

11:10AM  1   adjustments.  Some firms went up, other firms went down.

11:10AM  2           And then we presented to the Court our final

11:10AM  3   recommendation in January 2011, and the Court entered an order

11:10AM  4   and published that recommendation and invited firms who had an

11:10AM  5   objection to file an objection.  And the deadline for that was

11:10AM  6   February 4th.

11:10AM  7           It was not until February 17th that any issue about

11:10AM  8   the matter or our agreement with the fee percentage objectors was

11:10AM  9   raised.  And, you know, at that point, you know, the Court said,

11:10AM 10   You do an allocation.  You instructed us, you instructed the

11:10AM 11   Special Master to enter an allocation or make our recommendation

11:10AM 12   based on the full $315,250,000.  That is what the Special Master

11:11AM 13   did.  His allocation is done as if there is no shortfall.  The

11:11AM 14   Court's order is done as if there is no shortfall.

11:11AM 15           So now the question here before the Court is how do

11:11AM 16   we address that shortfall?  The shortfall resulted from an

11:11AM 17   agreement that was reached by the fee allocation committee to

11:11AM 18   resolve these objections.  And so the shortfall, while -- the

11:11AM 19   shortfall for the fee percentage objectors should come from the

11:11AM 20   fee allocation committee on a pro rata basis.  That was our

11:11AM 21   agreement and we contemplated that that would be the result.

11:11AM 22           In regards to the other items, the items for the

11:11AM 23   common benefit fees that were not withheld from the fixed

11:11AM 24   payments and the other adjustments that were made.

11:11AM 25           Your Honor, it's our position that those likewise

11:12AM 1    should be withheld on a pro rata basis from the fee allocation

11:12AM 2    committee, but for a different reason.  As we appreciate it, the

11:12AM 3    case law, the Court strongly urged lawyers to work out agreements

11:12AM 4    amongst themselves.  And we have litigated -- we have litigated

11:12AM 5    this issue.  We have had -- we've had tremendous opportunities

11:12AM 6    for every firm to be heard.  They filed affidavits, they filed

11:12AM 7    time records.  Those were reviewed.  We entered preliminary

11:12AM 8    recommendations.  We met with lawyers.  We entered our final

11:12AM 9    recommendation.  They were given an opportunity to object to

11:12AM 10   that.  The Court appointed a special master, Mr. Juneau.

11:12AM 11   Mr. Juneau conducted discovery.  He conducted a full evidentiary

11:12AM 12   hearing.  There has been extensive briefing done on this.  And as

11:12AM 13   a result of -- through that process, the fee allocation agreement

11:12AM 14   reached agreements with 104 of the 108 firms.

11:13AM 15           And as a result, we're not in a position where we

11:13AM 16   would reduce the amount that we agreed to.  So the fee allocation

11:13AM 17   committee's position is that we -- that we should absorb the full

11:13AM 18   shortfall on a pro rata basis.

11:13AM 19           And at this point, the -- there is one exception to

11:13AM 20   that, Your Honor, that I'll address in one moment.  But at this

11:13AM 21   point, with the fee allocation addressing the shortfall, it's our

11:13AM 22   position that a distribution order should be -- should be

11:13AM 23   entered, reflecting that reduction from the fee allocation

11:13AM 24   committee, but allowing these funds to be distributed

11:13AM 25   immediately.

11:13AM 1      In addition, all the fee -- as I mentioned before,

11:13AM 2  there were, as we came through the process of objections to the

11:13AM 3  Special Master, there are only four remaining firms that have

11:14AM 4  objected to that amount, and to the amount that was recommended

11:14AM 5  or the amount that's -- and now the amount has been allocated by

11:14AM 6  the Court.

11:14AM 7      And we have continued to try to resolve our

11:14AM 8  differences, and the fee allocation committee has now reached an

11:14AM 9  agreement with Danny Becnel and the Branch Law Firm to resolve

11:14AM 10 theirs again.  That resolution should be borne, you know, on a

11:14AM 11 pro rata basis from the members of the fee allocation committee.

11:14AM 12     We are now at a place where 106 of the 108 firms

11:14AM 13 have been resolved.  The award -- the award by the Court, the

11:14AM 14 allocation by the Court to those two firms in aggregate is

11:14AM 15 $2.7 million.  The fee committee's position is that the Court

11:15AM 16 should do a distribution, pro rata reduction from the fee

11:15AM 17 committee, and then order a distribution, an interim distribution

11:15AM 18 of 95 percent of the funds.  That would hold -- that would hold

11:15AM 19 in reserve more than enough to address any issues with the

11:15AM 20 remaining two objectors.

11:15AM 21     But the litigation, the fee litigation has gone on

11:15AM 22 for an extensive period of time.  The Court has -- the Court has

11:15AM 23 provided due process on steroids, and we think that it's time for

11:15AM 24 the common benefit fee firms to receive their fees.

11:15AM 25     The only exception, Your Honor, to the pro rata

11:15AM 1  reduction, and relatively speaking it would be a minor reduction,

11:15AM 2  and that is in terms of Kathy Snapka's award.  And we think that

11:15AM 3  that allocation -- there are only two firms, two firms that filed

11:16AM 4  an objection, you know, seeking to reduce the size of the overall

11:16AM 5  fund and also sought funds from that common benefit fund:  And

11:16AM 6  that was Danny Becnel and Kathy Snapka.

11:16AM 7          And as I just mentioned, we've reached a resolution

11:16AM 8  in regards to Danny Becnel's firm.  So that leaves Kathy Snapka.

11:16AM 9  And our position is that Ms. Snapka should not receive the

11:16AM 10 benefit of the $448,000 refund of fees that she received as a

11:16AM 11 result of our agreement that diminished the fund and receive an

11:16AM 12 award based on an allocation of 315,000,000.  She should also

11:16AM 13 share in that reduction.

11:16AM 14         Our position is that she contributed to the fund

11:16AM 15 four percent will -- all other common benefit fee firms

11:16AM 16 contributed at six and a half.  That's 61.5 percent.  So our

11:17AM 17 position is that her allocation by the Court should be reduced to

11:17AM 18 61.5 percent.  And then all other shortfall be handled, absorbed

11:17AM 19 by the fee allocation committee.

11:17AM 20         Your Honor, one issue that could arise in regards

11:17AM 21 to a distribution at this point, and that is the Court's

11:17AM 22 allocation differed from the recommendation of the fee allocation

11:17AM 23 committee and the allocation of the special masters -- by the

11:17AM 24 Special Master.

11:17AM 25         Some firms -- some firms went up, some firms went

11:17AM  1    down.  Before the Court entered into its allocation
11:17AM  2    deliberations, we had reached agreements, you know, with firms.
11:17AM  3    Firms had accepted a certain amount.  And all of the firms
11:17AM  4    that -- all of the firms that accepted that amount, that's fine
11:17AM  5    if they went up or if they stayed the same.
11:17AM  6             But there were some firms that went down, and I
11:18AM  7    want to apprise the Court that following the Court's order, we
11:18AM  8    asked firms, all of the firms that had accepted the -- had
11:18AM  9    originally accepted the amount, if they would sign a statement
11:18AM 10    saying that they accept the fee allocation amount of the Court.
11:18AM 11    Irrespective of any issues on appeal, you know, we will accept
11:18AM 12    this amount.  All of the firms, all of the firms who had
11:18AM 13    originally accepted the amount and then their allocation was
11:18AM 14    lower, all of those firms have signed -- have signed that form.
11:18AM 15             In addition, just on a voluntary basis, 80 firms
11:18AM 16    have signed those forms as well.  And that's just on a voluntary
11:18AM 17    basis, circulating and asking for those.
11:18AM 18             There is a tremendous number of firms that have
11:18AM 19    labored for an extensive period of time in this litigation, and
11:18AM 20    they have expended resources and that have been outstanding for
11:19AM 21    quite some time.  We think that based on the expensive process
11:19AM 22    this Court has put in place and implemented, now is the time for
11:19AM 23    a distribution order.  Thank you, Your Honor.
11:19AM 24             I would like to offer as an exhibit the agreements
11:19AM 25    that we had signed.

11:19AM 1        THE COURT:  Okay, fine.  I'll hear a response.  Let me
11:19AM 2   mention that I've got a matter with the attorneys general in this
11:19AM 3   case.  It's a telephone conference, and I'm going to have to meet
11:19AM 4   with them maybe in about 15 minutes or so.  But it starts at
11:19AM 5   11:30, so if you can keep that in mind.  I'll either break now if
11:19AM 6   you would like and come back after the conference or let you
11:19AM 7   start.
11:19AM 8        MR. BECNEL:  Your Honor, I have just a brief.
11:19AM 9        THE COURT:  Okay.
11:19AM 10        MR. BECNEL:  May it please the Court --
11:20AM 11        THE COURT:  You should mention your name.
11:20AM 12        MR. BECNEL:  Daniel E. Becnel, Junior.  I think I'm kind
11:20AM 13   of responsible for having brought this MDL to this Court and then
11:20AM 14   nominated Andy Birchfield and Chris Seeger to be lead counsel.
11:20AM 15        I didn't know at the beginning whether it was the
11:20AM 16   right or the wrong thing to do, but now at the end, I know it's
11:20AM 17   the right thing to do.  There is two or three things I want to
11:20AM 18   say:  First, that all of the lawyers have done an outstanding
11:20AM 19   job.  Every single one has worked toward this resolution, but not
11:20AM 20   anybody more so than this Court.  Without this Court, none of us
11:20AM 21   would even be standing here today.  And having practiced law for
11:20AM 22   44 years now, all over this country, I realize how important the
11:20AM 23   Court really is.
11:20AM 24        Russ and I just spent six days in a jury trial in
11:20AM 25   San Francisco, and we didn't mention this one time.  We didn't

11:21AM  1   discuss it.  I came here yesterday to deal with an appeals record
11:21AM  2   and talked to Andy, and we started discussing it yesterday.
11:21AM  3   There was no overture made by him, there was really no overture
11:21AM  4   made by me.  I said, This is crazy, because I know some law firms
11:21AM  5   on the verge of bankruptcy or dissolving because they don't have
11:21AM  6   that common benefit fee.  And I said, That's not right for us
11:21AM  7   that might have a little bit money and don't have to face those
11:21AM  8   prospects.  We ought to do something to try to resolve this.  And
11:21AM  9   he and I did.  And we tried to reduce it for everybody for the
11:21AM  10  last four objectors.  We were able to do it for Mr. Branch's law
11:21AM  11  firm, who I've worked with for 20 years, and my law firm.  So
11:21AM  12  we're done, and I would like at this time to withdraw all of the
11:21AM  13  pleadings I filed in connection with this fee dispute and ask the
11:22AM  14  Court to grant that motion.

11:22AM  15          Secondly, it is urgent that this Court do a
11:22AM  16  distribution to all of the firms with a holdback.  I didn't know
11:22AM  17  that Andy would ask for a holdback.  I was going to just throw a
11:22AM  18  number that the Court could come up with.  But, Judge, this
11:22AM  19  economy not only affects people without jobs, it affects lawyers
11:22AM  20  and the lawyers who are trying to run law firms and pay other
11:22AM  21  people who, if they don't get this distribution, will have to
11:22AM  22  start laying off lawyers.  And I don't want to see that happen.
11:22AM  23  I know it's been the Full Employment Act for special masters and
11:22AM  24  BrownGreer and the defense bar because they get paid as they go.
11:22AM  25  Plaintiff lawyers don't.  And with the number of cases we lose,

11:22AM 1   almost on a yearly basis, that help fund -- the successful ones

11:22AM 2   help fund the ones we lose, I think that it's urgent that you

11:22AM 3   distribute this money immediately.  Thank you very much.

11:23AM 4          THE COURT:  Thank you very much.

11:23AM 5          MS. WOODWARD:  Margaret Woodward on behalf of

11:23AM 6   Chris Placitella and Eric Weinberg, and I rise for the pleasure

11:23AM 7   of thanking the FAC, commending them for their actions here today

11:23AM 8   and withdrawing on behalf of Placitella and Weinberg our request

11:23AM 9   for any disgorgement of fees because they have fallen on their

11:23AM 10  swords voluntarily.  We appreciate that very much.

11:23AM 11         I have some questions about the justifications that

11:23AM 12  were offered.  I certainly have some questions about the Stratton

11:23AM 13  letter of July 28th because there was no statement in that letter

11:23AM 14  that it was written on behalf of category 1 Stratton claimants,

11:24AM 15  and it was somewhat deceptive to the rest of us who did not know

11:24AM 16  anything about this agreement until that letter came across the

11:24AM 17  wire.

11:24AM 18         But with respect to the fact, we are satisfied.  On

11:24AM 19  behalf of Placitella and Weinberg, we withdraw our motions.

11:24AM 20         I will say I can only withdraw it on behalf of my

11:24AM 21  current clients.  We've filed on behalf of the objectors, but I

11:24AM 22  no longer represent the objectors.  And so I want to be clear

11:24AM 23  about that, say thank you again, and how pleased I am to be able

11:24AM 24  to offer my thanks.

11:24AM 25         THE COURT:  Okay.  Thank you very much.

11:24AM 1      MR. KING:  Good morning, Judge Fallon.  Henry King on

11:24AM 2   behalf of Kline and Specter.  As we said in our papers, Kline and

11:24AM 3   Specter, like many other similarly situated firms had no role or

11:25AM 4   involvement in the secret Stratton deal and therefore feel like

11:25AM 5   we should not bear any shortfall.

11:25AM 6      We still believe that also the secret Stratton deal

11:25AM 7   was not done appropriately.  Despite the explanation given today,

11:25AM 8   I think the Court's approval was required for that deal, and it

11:25AM 9   was not obtained.

11:25AM 10      But we concur and we do appreciate the fee

11:25AM 11   allocation committee and the NPC for stepping up and assuming the

11:25AM 12   shortfall, and we appreciate that.  That's all I have.  Thank

11:25AM 13   you.

11:25AM 14      THE COURT:  Thank you very much.  I'm going to take a

11:25AM 15   break now, and I'll hear from you.  Okay.  Fine, we'll take a

11:25AM 16   break at this time for 15 minutes.  Court stands in recess.

11:30AM 17      (WHEREUPON, at this point in the proceedings, a brief

18   recess was taken.)

19                          *    *    *

20

21

22

23

24

25

1                          **P-R-O-C-E-E-D-I-N-G-S**

2                    WEDNESDAY, SEPTEMBER 21, 2011

3                   A F T E R N O O N   S E S S I O N

4                        (COURT CALLED TO ORDER)

5

11:56AM 6

11:56AM 7        THE DEPUTY CLERK:  All rise.

11:56AM 8        THE COURT:  Be seated, please, okay.  We were in the

11:57AM 9  middle of an argument on this matter.  I'll hear from the

11:57AM 10 respondents.

11:57AM 11            Yes, sir.

11:57AM 12       MR. URQUHART:  Jack Urquhart again, Your Honor, for

11:57AM 13 Kathryn Snapka and Joe Escobedo and David Hockema.

11:57AM 14            Your Honor, we have filed a couple of things in

11:57AM 15 response to your orders.  One of them is entitled, Objections

11:58AM 16 Motion Brief, and is Record Document Number 63397.  And we also

11:58AM 17 filed a reply, Document 63415.

11:58AM 18            As I understand the issue that we were asked to

11:58AM 19 address by the Court, the issue is this:  It begins with the

11:58AM 20 Court's request to determine whether or not there was a

11:58AM 21 shortfall, and if there was a shortfall, the Court said it would

11:58AM 22 determine the reason for that shortfall and how the shortfall

11:59AM 23 should be borne.

11:59AM 24       THE COURT:  Now, I understand there are two, that that's

11:59AM 25 been, at least some of it has been resolved.  The plaintiffs'

11:59AM 1    committee said that they would eat the shortfall, all of it on

11:59AM 2    that list.

11:59AM 3         MR. URQUHART:  Well, Your Honor, I don't believe that

11:59AM 4    the plaintiffs' committee said that they would eat all of the

11:59AM 5    shortfall specifically.  I know that one of the things is they

11:59AM 6    expect my client to bear a substantial part, given her allocation

11:59AM 7    in particular of the shortfall.

11:59AM 8         So I don't think they have resolved that.

11:59AM 9         Moreover, I might just mention, with regard to the

11:59AM 10   issue of FAC resolving the shortfall, I want to do a brief

12:00PM 11   history of my own, and I apologize for taking people through

12:00PM 12   things that they are well aware of.

12:00PM 13        But the master settlement agreement had this

12:00PM 14   section 9 that apparently was inserted at the NPC's request.

12:00PM 15   Section 9 specifically says that Merck had no interest in that

12:00PM 16   issue.  Section 9 deals specifically with creating a common

12:00PM 17   benefit fund.  And in Section 9, they specifically name the

12:00PM 18   common benefit fund.  They give it a name.  They say it will be

12:00PM 19   in an interest-bearing account.  And they say it will be

12:00PM 20   eight percent, and they say it will override the agreement that a

12:00PM 21   number of people, including Kathryn Snapka, signed, that would

12:01PM 22   have limited her assessment to two percent.

12:01PM 23        They go further in that section and say that

12:01PM 24   Your Honor would be responsible for administering that specific

12:01PM 25   fund and that money should not go out of that fund without the

12:01PM 1    Court's approval.

12:01PM 2              Now, I begin there because section 9 also says that

12:01PM 3    a significant role in deciding how to divvy up this fund, which

12:01PM 4    they set at eight percent, would be assigned to the very people

12:01PM 5    who were negotiating the agreement with Merck:  NPC.  They would

12:01PM 6    make up the vast majority of the people on a FAC which would be

12:02PM 7    established.  And there would then be two other attorneys added

12:02PM 8    to that.  But in the negotiations with Merck, we have this

12:02PM 9    seemingly gratuitous provision that deals with the creation of a

12:02PM 10   common benefit fund by the same group of people who then become

12:02PM 11   FAC.

12:02PM 12             I will then jump fast forward to FAC now says that

12:02PM 13   it will, from its share, heal whatever harm may have been caused

12:02PM 14   by the agreement that I will talk about that they had with

12:02PM 15   Mr. Stratton in just a moment.  But when they are giving back

12:03PM 16   money, they are actually giving back money that they gave to

12:03PM 17   themselves through an allocation process and through a number of

12:03PM 18   side deal-making processes, very few of which were disclosed.

12:03PM 19             The Court had the final say.  The Court made its

12:03PM 20   allocation.  But all decisions are informed by information that

12:03PM 21   is available to the decision maker.

12:03PM 22             So I want to now turn to what I think is the focus

12:03PM 23   of this shortfall, because it's certainly the largest part of the

12:03PM 24   shortfall, because I think it is illustrative of decision-making

12:04PM 25   done without full informed information.

12:04PM  1          I'm referring of course to the agreement between

12:04PM  2   Mr. Seeger, Mr. Herman, Mr. Birchfield, and Mr. Stratton that

12:04PM  3   took place in July 2010, while this Court had pending before it

12:04PM  4   the issue of establishing the size of the common benefit fund.

12:04PM  5   The Court had that issue in front of it.  How large is the common

12:04PM  6   benefit fund going to be?

12:04PM  7          These gentlemen get together and they enter into an

12:04PM  8   agreement.  Question one is, what was the agreement?  I'm asking

12:05PM  9   that the Court do as it suggested and I think is required here,

12:05PM 10   and that is to investigate what exactly was the agreement.

12:05PM 11          Let me start with one comment.  The evidence does

12:05PM 12   not support that Kathryn Snapka was contacted by Michael Stratton

12:05PM 13   prior to reaching this July agreement.  That fact alone is a

12:05PM 14   disturbing fact.  He was liaison counsel.  He was not lead

12:05PM 15   counsel.  He was liaison counsel.  He had defined

12:05PM 16   responsibilities.  He did not speak, at least, with Kathryn

12:06PM 17   Snapka prior to entering into this so-called agreement.

12:06PM 18          Then several things happened that are of critical

12:06PM 19   importance as far as an issue that is extremely important to all

12:06PM 20   of us and certainly to the judiciary and to the Fifth Circuit.

12:06PM 21   And that is the issue of transparency.  Why was this agreement,

12:07PM 22   if there was an agreement, kept secret?  Mr. Birchfield, I do not

12:07PM 23   believe addressed that specifically in his discussion that he

12:07PM 24   just had with the Court.

12:07PM 25          But in the final papers, they say it was kept

12:07PM 1    secret for practical and strategic reasons.  It was kept secret

12:07PM 2    from the Court.  It was kept secret from Kathryn Snapka.  And in

12:07PM 3    the filed papers, one of the reasons for the secrecy was that

12:07PM 4    there was concern that the objectors may actually have had a good

12:08PM 5    point and that that point, if it was not resolved in a secret

12:08PM 6    agreement, might have actually influenced this Court in its

12:08PM 7    decision about the size of the common benefit fund.

12:08PM 8            In our reply, we have included an e-mail exchange

12:08PM 9    between myself and Mr. Stratton in which I was trying to get some

12:08PM 10   answers about specific things about this agreement, and one of

12:08PM 11   those is directly related to this issue of Kathryn Snapka's

12:09PM 12   money.  Kathryn Snapka was sent checks by Michael Stratton.  She

12:09PM 13   did not cash those checks.

12:09PM 14           Mr. Birchfield said that the first notice that

12:09PM 15   Kathryn Snapka gave of any disagreement with or problem with the

12:09PM 16   Stratton agreement was when she asked the Court on February 17th

12:09PM 17   whether the Court had knowledge of the Stratton agreement.

12:09PM 18           This agreement that took place in secret while the

12:10PM 19   Court had pending before it a motion raises serious procedural

12:10PM 20   questions that we have tried to approach and continue to try to

12:10PM 21   approach in a measured fashion, which is the reason that our

12:10PM 22   primary request for relief at this point in time is that the

12:10PM 23   Court conduct an investigation into what that agreement actually

12:10PM 24   was, why it was kept secret.

12:10PM 25           Here is a critical issue about things we don't know

12:10PM  1    about the Stratton agreement.  In the communication that is

12:10PM  2    attached to our reply brief, Mr. Stratton explains that one of

12:10PM  3    the reasons that the agreement took place is because their expert

12:11PM  4    was prepared to testify in this Court to the Judge, Your Honor,

12:11PM  5    that the common benefit fund should not be greater than four

12:11PM  6    percent.

12:11PM  7         And it was because of that expert, according to

12:11PM  8    Mr. Stratton, that there was leverage to reach an agreement that

12:11PM  9    he regards as a good deal.  So he says in this communication that

12:11PM 10    his expert, who was from Harvard, he didn't capitalize Harvard,

12:11PM 11    which I can understand that, but that his expert from Harvard was

12:12PM 12    going to say that four percent was the maximum that this Court

12:12PM 13    should set for the common benefit fund.

12:12PM 14         And yet this agreement resulted in a letter sent to

12:12PM 15    this Court by Mr. Stratton that said that his experts were

12:12PM 16    comfortable with a 7.5 percent.  So this is, at least from an

12:12PM 17    evidentiary point of view, from an apparent point of view, a

12:12PM 18    situation in which a part of the consideration for the agreement

12:12PM 19    was an expert who would have informed the Court that the common

12:12PM 20    benefit fund should have been four percent, and instead the Court

12:12PM 21    receiving a letter saying that 7.5 percent would be correct.

12:13PM 22         And it was on that information, and other

12:13PM 23    information, but it was on that information that the Court went

12:13PM 24    forward.  And that was the information that Kathryn Snapka had,

12:13PM 25    and the only information that she had at that particular point in

12:13PM 1   time that there had been some withdrawal of the objection and an

12:13PM 2   agreement that the size of the common benefit fund should be

12:13PM 3   7.5 percent.

12:13PM 4         THE COURT:  But you see, I didn't agree with that.  I

12:13PM 5   didn't agree with that expert.  I didn't agree 7.5 percent was

12:13PM 6   appropriate.  The way that I analyzed it, if you read my opinion,

12:13PM 7   I showed the analysis of it.  I thought 7.5 percent was too high.

12:13PM 8   I went to 6.5 percent.  I actually went to 6 percent, and then I

12:13PM 9   increased it because of the analysis of the factors.  So I put no

12:14PM 10  stock in that expert's report.  I didn't consider it.  It wasn't

12:14PM 11  helpful to me.

12:14PM 12        MR. URQUHART:  Your Honor, I understand that, but the

12:14PM 13  parties to this agreement didn't know that.  And the parties to

12:14PM 14  this agreement is what I'm suggesting entered into the agreement

12:14PM 15  in part to make sure that --

12:14PM 16        THE COURT:  I guess it's hard for me to understand,

12:14PM 17  though, if you've got the benefits of the agreement and you're

12:14PM 18  not paying for it, I don't know what the problem is.  If that's

12:14PM 19  the situation with you.  Now, I can understand you say, well, you

12:14PM 20  didn't benefit from it because the money is in the registry of

12:14PM 21  the Court.  But if that's the only thing, then that's one thing,

12:14PM 22  but I'm trying to follow you.

12:14PM 23        MR. URQUHART:  There are a couple of things.  First of

12:14PM 24  all, Your Honor, you don't accept money that just arrives in the

12:14PM 25  -- or you should not, or there are is certainly reason not to

12:15PM 1   just accept money that comes in the form of a check that says,

12:15PM 2   "Full and final release" about something that you don't have any

12:15PM 3   idea about that conflicts with the master settlement agreement,

12:15PM 4   which says that only Your Honor has the right to distribute money

12:15PM 5   from the common benefit fund.

12:15PM 6           And where this money was coming from was also very

12:15PM 7   unclear.  It was not established until the very recent Stratton

12:15PM 8   chart came out that the money indeed did come from the common

12:15PM 9   benefit fund.

12:15PM 10          So that alone is a problem.  But there is an

12:15PM 11  economic harm to Kathryn Snapka as well.

12:16PM 12          First of all, there is a -- as mentioned, things

12:16PM 13  are fraught with contradictions.  The sum of money that

12:16PM 14  Mr. Birchfield said that Ms. Snapka received was $448,642.85.

12:16PM 15  Well, if you take the checks that she received, it's $370,130.36.

12:16PM 16  What's the explanation for the difference?  I don't know.

12:16PM 17          THE COURT:  Your disagreement is with whom?  The

12:17PM 18  plaintiffs' committee or is your disagreement with your liaison

12:17PM 19  counsel?  Do you sue him?

12:17PM 20          MR. URQUHART:  My disagreement, Your Honor, is with the

12:17PM 21  process, which would include everyone involved in that process.

12:17PM 22  It includes the fact members, it includes Mr. Stratton, and it

12:17PM 23  includes Brown and Greer.

12:17PM 24          THE COURT:  Okay.  Let's move on.  I've got that point.

12:17PM 25          MR. URQUHART:  But on the economic issue, another point

12:17PM 1   is that, was this money a rebate or was this money an advance

12:17PM 2   against Ms. Snapka's common benefit funds?  Clearly FAC is

12:17PM 3   treating it as an advance on the common benefit funds because

12:18PM 4   that would be the only basis for their argument that she should

12:18PM 5   have money deducted from her common benefit funds.

12:18PM 6           We asked that question of Mr. Stratton, and

12:18PM 7   Mr. Stratton said, That was a rebate and should have had

12:18PM 8   absolutely no effect on her common benefit funds.

12:18PM 9           But the contradictions flying back and forth

12:18PM 10  between what the actual terms of the agreement were, the known

12:18PM 11  fact that one of the reasons that the agreement was entered into

12:18PM 12  was to prevent information from getting to the Court, regardless

12:18PM 13  of how the Court might have accepted that information, left

12:18PM 14  Kathryn Snapka with no alternative other than to put the money in

12:19PM 15  the registry of the Court.

12:19PM 16          And to turn that on her, and to say that she should

12:19PM 17  have talked about an agreement that still, to this day, has not

12:19PM 18  been explained to her or to anyone else what all of the terms of

12:19PM 19  that agreement was --

12:19PM 20      THE COURT:  I do understand that position.  You've made

12:19PM 21  it.  I got it.  I understand.  Is there another issue that you

12:19PM 22  want to cover?

12:19PM 23      MR. URQUHART:  Well, Your Honor, let me ask this:  We

12:19PM 24  have listed those things that we would request of the Court in

12:19PM 25  our motion.

| | |
|---|---|
| 12:19PM 1 | THE COURT:  Okay. |
| 12:19PM 2 | MR. URQUHART:  And we are requesting that the Court |
| 12:19PM 3 | actually investigate the nature of the agreement.  Let's have |
| 12:19PM 4 | people under oath say what the agreement was, why the agreement |
| 12:19PM 5 | was reached.  What the terms of the agreement were.  Let's have a |
| 12:20PM 6 | true accounting from Brown and Greer.  And let's get this |
| 12:20PM 7 | interest thing explained because section 9 talks about an |
| 12:20PM 8 | interest-bearing account.  It doesn't link up to the escrow |
| 12:20PM 9 | account.  Mr. Birchfield is making a legal argument, a legal |
| 12:20PM 10 | judgment of some sort which requires resolution. |
| 12:20PM 11 | THE COURT:  Okay. |
| 12:20PM 12 | MR. URQUHART:  Now, you ask if there is anything else. |
| 12:20PM 13 | THE COURT:  I have read the briefs, and they are very |
| 12:20PM 14 | important, and I understand them.  We do have to move on.  I got |
| 12:20PM 15 | the point that you've been making.  And I appreciate it. |
| 12:20PM 16 | MR. URQUHART:  The only other thing I would say, because |
| 12:21PM 17 | disbursements have been mentioned, a Motion to Stay is -- has |
| 12:21PM 18 | been requested.  A Notice of Appeal, Your Honor, has been filed. |
| 12:21PM 19 | And I understand that the narrow issue that I think the Court is |
| 12:21PM 20 | dealing with here is the reason for the shortfall, and we are |
| 12:21PM 21 | asking for that to be investigated, but to the extent that there |
| 12:21PM 22 | is any attempt to move beyond finding out what the reason is and |
| 12:21PM 23 | moving to issues like disbursement, what the remedy should be, |
| 12:21PM 24 | and particularly trying to put any of the remedy on our client is |
| 12:21PM 25 | at best premature at this point. |

12:21PM 1          And I'm prepared to discuss that, but that actually

12:22PM 2  bleeds into the allocation issue, and I'll leave it to the Court.

12:22PM 3          THE COURT:  Okay.  All right.  Any response to what's

12:22PM 4  been said?

12:22PM 5          MR. BIRCHFIELD:  Just very briefly, Your Honor, on the

12:22PM 6  one point in regards to Kathy Snapka.  The fee allocation

12:22PM 7  committee, we followed the jurisprudence as best we could.

12:22PM 8  *Murphy Oil* takes into consideration the amount that you

12:22PM 9  contribute to the fund.  We did that.  And Kathy Snapka

12:22PM 10 contributed to the fund at a lesser rate.  It is not an offset.

12:22PM 11 And Mr. Urquhart said that she's -- we're asking her to bear a

12:22PM 12 substantial portion of the shortfall that's -- there is just shy

12:22PM 13 of a $13 million shortfall when you consider the additional fees

12:22PM 14 to Mr. Juneau.  And we're asking that she absorb 423,500 of that.

12:23PM 15 But she also has the 448,000 that she received through the fund

12:23PM 16 and that's it.

12:23PM 17         I mean, otherwise, otherwise, Your Honor, I think

12:23PM 18 I've addressed the issues.  And if you have any questions, I'll

12:23PM 19 be glad to address them.

12:23PM 20         THE COURT:  No, I don't.

12:23PM 21         MR. URQUHART:  Your Honor, may ask one quick indulgence?

12:23PM 22         THE COURT:  Sure.

12:23PM 23         MR. URQUHART:  Again, a response that proves our point.

12:23PM 24 She didn't get four hundred-something thousand dollars.  That's

12:23PM 25 just wrong.

12:23PM  1          THE COURT:  Yeah.

12:23PM  2          MR. URQUHART:  And these sorts of comments are not a

12:23PM  3  resolution, not a determination of what actually was done.  And I

12:23PM  4  will make one point that is just crystal clear.  What

12:23PM  5  Mr. Birchfield said, that they didn't take into account the fact

12:23PM  6  that she supposedly received some sort of rebate.  They have

12:24PM  7  repeatedly said, in virtually everything they have filed, that

12:24PM  8  she only paid four percent.  That is not correct.  She is the

12:24PM  9  only one that is still in for eight percent, because she has had

12:24PM 10  the temerity to raise an issue about the propriety of an

12:24PM 11  agreement that is very unclear, but it is clear was reached in

12:24PM 12  part to keep information from the Court when it was making a

12:24PM 13  decision about the size of the common benefit fund.

12:24PM 14          THE COURT:  Okay.  Thank you very much, both of you.

12:24PM 15  I'm going to mark this as submitted.  I'll look it over and come

12:24PM 16  up with something.

12:24PM 17              Let me say something about, just from the

12:24PM 18  standpoint of the appeal.  Take a close look as to whether or not

12:24PM 19  appealing the order and reasons is an appeal.  You just need to

12:25PM 20  focus on that.  What I felt was appropriate is that I would issue

12:25PM 21  an order and reasons and then I would have this hearing, and

12:25PM 22  then, depending upon the situation, issue my ruling on this, and

12:25PM 23  then issue a judgment.  Because I think you can appeal from a

12:25PM 24  judgment.  If I do issue a judgment, make sure or least think

12:25PM 25  about whether you should appeal from that judgment.  Because an

12:25PM 1   appeal from an order and reasons might not be a valid appeal.  I

12:25PM 2   make no comment about it for sure one way or the other, but I

12:25PM 3   just highlight that for you.  Don't feel that since you've

12:25PM 4   appealed from the order and reasons you don't need to appeal from

12:25PM 5   the judgment, because that may not be the situation.

12:26PM 6           MR. URQUHART:  Thank you very much, Your Honor.

12:26PM 7           THE COURT:  Sure.

12:26PM 8           MR. WILLIAMS:  Your Honor, may I?

12:26PM 9           THE COURT:  Yes.

12:26PM 10          MR. WILLIAMS:  John Eddie Williams.  Judge, can I

12:26PM 11  implore you to consider forcing these people to go to mediation

12:26PM 12  and make it one mediator after another, lock them in a room for

12:26PM 13  72 hours, put them in that thunder dome cage, two people walk in,

12:26PM 14  one walks out.  You've done an amazing job.  Things have been

12:26PM 15  resolved.  This comes down to money.  I would ask you to consider

12:26PM 16  that.  I don't have a dog in this hunt, but --

12:26PM 17          THE COURT:  Yes, I know.  Okay.

12:26PM 18              The Court will stand in recess.

19              (WHEREUPON, at 12:26 p.m., the proceedings were

20  concluded.)

21                         *    *    *

22

23

24

25

REPORTER'S CERTIFICATE


     I, Cathy Pepper, Certified Realtime Reporter, Registered

Merit Reporter, Certified Court Reporter of the State of

Louisiana, Official Court Reporter for the United States District

Court, Eastern District of Louisiana, do hereby certify that the

foregoing is a true and correct transcript, to the best of my

ability and understanding, from the record of the proceedings in

the above-entitled and numbered matter.



                              _s/Cathy Pepper_____

                              Cathy Pepper, CRR, RMR, CCR
                              Certified Realtime Reporter
                              Official Court Reporter
                              United States District Court
                              Cathy_Pepper@laed.uscourts.gov

## $

**$12** [1] - 7:19
**$12,036,230** [1] - 8:20
**$123,197.22** [1] - 10:14
**$13** [1] - 38:13
**$18** [1] - 15:16
**$302,406,562.50** [1] - 8:19
**$315,250,000** [3] - 8:14, 8:18, 19:12
**$370,130.36** [1] - 35:15
**$4.85** [1] - 8:12
**$448,000** [1] - 22:10
**$448,642.85** [1] - 35:14
**$45,265.66** [1] - 10:8
**$5,000** [2] - 9:7, 9:12
**$689,650** [1] - 9:1
**$72,291.81** [1] - 10:12

## 0

**06510** [1] - 4:4

## 1

**1** [2] - 12:14, 26:14
**10** [1] - 17:4
**1000** [1] - 3:7
**10004** [2] - 1:25, 4:21
**10036** [1] - 4:18
**1018** [1] - 5:8
**104** [1] - 20:14
**106** [2] - 3:10, 21:12
**108** [2] - 20:14, 21:12
**1100** [1] - 2:5
**11:30** [1] - 24:5
**12** [2] - 18:11, 18:15
**12:26** [1] - 40:19
**1300** [1] - 3:16
**1330** [1] - 2:22
**14** [1] - 17:9
**1419** [1] - 2:18
**1440** [1] - 4:14
**15** [2] - 24:4, 27:16
**16225** [1] - 3:13
**1657** [1] - 1:5
**16th** [1] - 18:22
**1710** [1] - 2:15
**17th** [2] - 19:7, 32:16
**18** [3] - 15:16, 15:25, 16:4
**1890** [1] - 2:18
**19** [2] - 11:17, 18:15

**19.2** [3] - 15:25, 16:4, 18:11
**19106** [1] - 1:22
**19th** [3] - 16:12, 17:5, 17:14

## 2

**2** [1] - 12:15
**2.7** [1] - 21:15
**20** [1] - 25:11
**20005** [2] - 4:9, 4:15
**2009** [2] - 10:22, 11:1
**201** [1] - 4:24
**2010** [3] - 15:12, 16:12, 31:3
**2011** [4] - 1:6, 6:2, 19:3, 28:2
**202** [1] - 5:8
**21** [3] - 1:6, 6:2, 28:2
**234** [1] - 1:18
**2450** [1] - 5:4
**2500** [1] - 3:16
**275** [1] - 3:4
**27th** [1] - 15:11
**28** [1] - 17:14
**2800** [2] - 2:4, 2:5
**28th** [1] - 26:13

## 3

**3000** [1] - 3:4
**315,000,000** [1] - 22:12
**315,250,000** [2] - 8:11, 8:22
**316** [1] - 2:11
**32** [1] - 6:14
**32502** [1] - 2:12
**36103** [1] - 1:19
**365** [1] - 3:7
**3650** [1] - 2:8
**3701** [1] - 3:19

## 4

**4** [1] - 10:10
**4.85** [1] - 8:14
**40** [1] - 10:3
**400** [1] - 5:4
**40208** [1] - 2:22
**4160** [1] - 1:18
**423,500** [1] - 38:14
**44** [1] - 24:22
**440** [1] - 2:15
**448,000** [1] - 38:15
**45TH** [1] - 4:25

**4th** [1] - 19:6

## 5

**5** [1] - 18:16
**500** [3] - 1:21, 3:13, 5:12
**504** [1] - 5:13
**510** [1] - 1:21
**51268** [1] - 5:9
**546** [1] - 4:11
**589-7779** [1] - 5:13
**59** [2] - 4:4, 17:15

## 6

**6** [1] - 34:8
**6.5** [4] - 6:14, 6:20, 8:13, 34:8
**60** [2] - 11:3, 12:15
**600** [2] - 2:11, 3:22
**61.5** [2] - 22:16, 22:18
**63397** [1] - 28:14
**63415** [1] - 28:17

## 7

**7.5** [5] - 33:16, 33:21, 34:3, 34:5, 34:7
**70** [2] - 11:3, 12:15
**70084** [1] - 3:11
**701** [1] - 2:8
**70113** [1] - 1:14
**70119** [1] - 3:20
**70130** [4] - 3:8, 4:12, 5:4, 5:13
**70139** [1] - 2:8
**70163** [1] - 2:5
**70170** [1] - 4:25
**70505** [1] - 5:9
**70602** [1] - 2:19
**72** [1] - 40:13
**725** [1] - 4:8
**77002** [1] - 2:15
**77017-5051** [1] - 3:23
**77056** [1] - 3:17
**77084** [1] - 3:14

## 8

**80** [1] - 23:15
**820** [1] - 1:14
**8441** [1] - 3:22
**8th** [2] - 10:25, 11:1

## 9

**9** [9] - 13:8, 14:6, 29:14, 29:15, 29:16, 29:17, 30:2, 37:7
**9.2.1** [1] - 13:9
**9.2.3** [3] - 13:10, 14:2, 14:15
**94111** [1] - 3:5
**95** [1] - 21:18
**99.9** [1] - 14:7
**9:32** [1] - 1:6

## A

**A.M** [1] - 1:6
**ability** [2] - 14:11, 41:9
**able** [2] - 25:10, 26:23
**above-entitled** [1] - 41:10
**absolutely** [1] - 36:8
**absorb** [1] - 20:17, 38:14
**absorbed** [1] - 22:18
**accept** [4] - 23:10, 23:11, 34:24, 35:1
**accepted** [8] - 14:8, 18:23, 23:3, 23:4, 23:8, 23:9, 23:13, 36:13
**accepting** [1] - 14:5
**according** [1] - 33:7
**account** [7] - 13:12, 13:14, 14:1, 29:19, 37:8, 37:9, 39:5
**accounting** [1] - 37:6
**Act** [1] - 25:23
**actions** [1] - 26:7
**actual** [1] - 36:10
**added** [1] - 30:7
**addition** [2] - 21:1, 23:15
**additional** [4] - 10:6, 10:15, 18:14, 38:13
**address** [5] - 19:16, 20:20, 21:19, 28:19, 38:19
**addressed** [2] - 31:23, 38:18
**addressing** [1] - 20:21
**adjustment** [4] - 8:19, 9:13, 10:10, 10:16
**adjustments** [3] - 8:23, 19:1, 19:24
**administering** [1] - 29:24
**administrative** [2] - 13:19, 13:21

**administrator** [2] - 8:8, 9:23
**advance** [2] - 36:1, 36:3
**advised** [1] - 7:8
**affects** [1] - 25:19
**affidavits** [1] - 20:6
**aggregate** [1] - 21:14
**agree** [3] - 34:4, 34:5
**agreed** [1] - 20:16
**agreement** [82] - 7:13, 7:14, 10:19, 11:16, 11:20, 11:21, 12:8, 12:10, 12:14, 12:21, 13:4, 13:7, 13:15, 13:17, 13:18, 13:21, 14:1, 14:3, 14:9, 14:10, 14:11, 14:12, 14:18, 14:20, 15:5, 15:8, 15:9, 15:10, 15:11, 15:12, 16:11, 16:15, 17:12, 19:8, 19:17, 19:21, 20:13, 21:9, 22:11, 26:16, 29:13, 29:20, 30:5, 30:14, 31:1, 31:8, 31:10, 31:13, 31:17, 31:21, 31:22, 32:6, 32:10, 32:16, 32:17, 32:18, 32:23, 33:1, 33:3, 33:8, 33:14, 33:18, 34:2, 34:13, 34:14, 34:17, 35:3, 36:10, 36:11, 36:17, 36:19, 37:3, 37:4, 37:5, 39:11
**agreements** [4] - 20:3, 20:14, 23:2, 23:24
**AL** [1] - 1:19
**ALLEN** [1] - 1:16
**allocated** [1] - 21:5
**allocation** [39] - 7:24, 8:3, 8:22, 11:19, 13:5, 16:10, 18:1, 18:2, 18:4, 18:18, 19:10, 19:11, 19:13, 19:17, 19:20, 20:1, 20:13, 20:16, 20:21, 20:23, 21:8, 21:11, 21:14, 22:3, 22:12, 22:17, 22:19, 22:22, 22:23, 23:1, 23:10, 23:13, 27:11, 29:6, 30:17, 30:20, 38:2, 38:6
**allowing** [1] - 20:24
**almost** [1] - 26:1
**alone** [2] - 31:13, 35:10
**alternative** [1] - 36:14

**amazing** [1] - 40:14
**amicable** [1] - 7:3
**amount** [30] - 8:11, 8:22, 9:9, 9:15, 10:15, 10:20, 12:10, 12:13, 12:19, 12:24, 14:20, 14:25, 15:1, 15:2, 16:9, 18:5, 18:16, 18:23, 20:16, 21:4, 21:5, 23:3, 23:4, 23:9, 23:10, 23:12, 23:13, 38:8
**amounts** [1] - 9:25
**analysis** [2] - 34:7, 34:9
**analyzed** [1] - 34:6
**AND** [1] - 2:3
**ANDY** [1] - 1:17
**Andy** [4] - 7:23, 24:14, 25:2, 25:17
**ANN** [1] - 2:21
**answers** [1] - 32:10
**apologize** [1] - 29:11
**apparent** [1] - 33:17
**appeal** [9] - 17:18, 23:11, 39:18, 39:19, 39:23, 39:25, 40:1, 40:4
**Appeal** [1] - 37:18
**appealed** [1] - 40:4
**appealing** [1] - 39:19
**appeals** [1] - 25:1
**APPEARANCES** [5] - 1:11, 2:1, 3:1, 4:1, 5:1
**appointed** [2] - 11:4, 20:10
**appreciate** [5] - 20:2, 26:10, 27:10, 27:12, 37:15
**apprise** [1] - 23:7
**approach** [2] - 32:20, 32:21
**appropriate** [6] - 10:20, 12:24, 16:9, 18:8, 34:6, 39:20
**appropriately** [1] - 27:7
**approval** [4] - 7:9, 14:16, 27:8, 30:1
**approve** [1] - 7:17
**approved** [1] - 7:16
**argument** [3] - 28:9, 36:4, 37:9
**arise** [1] - 22:20
**ARPS** [2] - 4:13, 4:16
**arrives** [1] - 34:24
**article** [2] - 13:8, 14:6
**assessment** [2] - 16:23, 29:22

**assigned** [1] - 30:4
**assuming** [1] - 27:11
**AT** [1] - 3:19
**attached** [1] - 33:2
**attempt** [1] - 37:22
**ATTORNEY** [1] - 3:19
**attorneys** [3] - 14:14, 24:2, 30:7
**attorneys'** [1] - 13:9
**auditor** [1] - 9:25
**audits** [1] - 9:21
**August** [1] - 15:24
**authority** [2] - 13:4, 15:8
**available** [1] - 30:21
**AVENUE** [4] - 1:14, 4:14, 4:24, 4:25
**average** [1] - 9:16
**await** [1] - 12:23
**award** [7] - 10:5, 14:24, 17:7, 21:13, 22:2, 22:12
**awards** [1] - 14:15
**aware** [2] - 14:7, 29:12

# B

**B406** [1] - 5:12
**bankruptcy** [1] - 25:5
**bar** [1] - 25:24
**BARRIOS** [2] - 2:7, 2:7
**based** [6] - 8:22, 11:12, 19:12, 22:12, 23:21
**Based** [1] - 14:25
**basic** [1] - 7:13
**basis** [8] - 19:20, 20:1, 20:18, 21:11, 23:15, 23:17, 26:11, 36:4
**BATTERY** [2] - 3:4, 4:20
**BAYLEN** [1] - 2:11
**bear** [3] - 27:5, 29:6, 38:11
**bearing** [5] - 13:12, 13:14, 13:25, 29:19, 37:8
**bears** [1] - 13:21
**BEASLEY** [1] - 1:16
**Becnel** [3] - 21:9, 22:6, 24:12
**BECNEL** [5] - 3:9, 3:10, 24:8, 24:10, 24:12
**Becnel's** [1] - 22:8
**become** [1] - 30:10
**BEFORE** [1] - 1:9
**began** [1] - 10:19

**begin** [1] - 30:2
**beginning** [1] - 24:15
**begins** [1] - 28:19
**behalf** [7] - 7:24, 12:11, 26:5, 26:8, 26:14, 26:19, 26:20, 26:21, 27:2
**BEIRNE** [1] - 3:15
**BEISNER** [1] - 4:14
**benefit** [33] - 6:13, 9:10, 9:17, 10:4, 10:7, 10:21, 14:14, 14:20, 17:7, 19:23, 21:24, 22:5, 22:10, 22:15, 25:6, 29:17, 29:18, 30:10, 31:4, 31:6, 32:7, 33:5, 33:13, 33:20, 34:2, 34:20, 35:5, 35:9, 36:2, 36:3, 36:5, 36:8, 39:13
**benefits** [1] - 34:17
**BENJAMIN** [1] - 2:3
**BERMAN** [1] - 1:20
**BERNSTEIN** [1] - 3:3
**best** [4] - 14:13, 37:25, 38:7, 41:8
**between** [8] - 7:7, 14:3, 18:6, 18:11, 31:1, 32:9, 36:10
**beyond** [1] - 37:22
**biggest** [1] - 8:23
**billion** [2] - 8:12, 8:14
**BIRCHFIELD** [4] - 1:17, 7:23, 8:21, 38:5
**Birchfield** [8] - 7:24, 24:14, 31:2, 31:22, 32:14, 35:14, 37:9, 39:5
**bit** [1] - 25:7
**bleeds** [1] - 38:2
**BLIZZARD** [2] - 2:13, 2:14
**borne** [2] - 21:10, 28:23
**bottom** [1] - 8:24
**BOULEVARD** [1] - 3:16
**BOX** [2] - 1:18, 2:18
**Branch** [1] - 21:9
**branch's** [1] - 25:10
**break** [3] - 24:5, 27:15, 27:16
**Brief** [1] - 28:16
**brief** [4] - 24:8, 27:17, 29:10, 33:2
**briefing** [2] - 11:6, 20:12
**briefly** [1] - 38:5

**briefs** [1] - 37:13
**brought** [1] - 24:13
**Brown** [2] - 35:23, 37:6
**BrownGreer** [4] - 8:7, 8:16, 15:22, 25:24
**BrownGreer's** [1] - 10:11
**BUILDING** [1] - 2:14
**BY** [27] - 1:13, 1:17, 1:21, 1:24, 2:4, 2:7, 2:11, 2:14, 2:17, 2:21, 3:3, 3:6, 3:10, 3:13, 3:16, 3:22, 4:3, 4:7, 4:11, 4:14, 4:17, 4:20, 4:23, 5:3, 5:7, 5:14, 5:15

# C

**CA** [1] - 3:5
**CABRASER** [2] - 3:3, 3:3
**cage** [1] - 40:13
**CALLED** [2] - 6:4, 28:4
**CANAL** [3] - 3:7, 3:7, 3:19
**cannot** [1] - 7:15
**capitalize** [1] - 33:10
**CARONDELET** [1] - 4:11
**case** [3] - 6:15, 20:3, 24:3
**cases** [4] - 9:15, 9:17, 9:20, 25:25
**cash** [1] - 32:13
**CASTEIX** [1] - 2:7
**categories** [1] - 11:10
**category** [5] - 11:11, 11:14, 12:14, 12:15, 26:14
**Cathy** [2] - 41:4, 41:14
**CATHY** [1] - 5:12
**Cathy_Pepper@laed .uscourts.gov** [1] - 41:16
**caused** [1] - 30:13
**CCR** [2] - 5:12, 41:14
**CENTER** [2] - 3:4, 5:8
**CENTRE** [2] - 2:4, 2:14
**certain** [1] - 23:3
**certainly** [4] - 26:12, 30:23, 31:20, 34:25
**CERTIFICATE** [1] - 41:1
**Certified** [3] - 41:4, 41:5, 41:14
**certify** [1] - 41:7

**challenging** [1] - 15:23
**Chaney** [1] - 14:17
**changed** [1] - 10:1
**changing** [1] - 16:6
**CHARLES** [3] - 2:19, 4:24, 4:24
**chart** [1] - 35:8
**check** [1] - 35:1
**checks** [2] - 32:12, 32:13, 35:15
**Chris** [2] - 24:14, 26:6
**CHRISTOPHER** [1] - 1:24
**Circuit** [1] - 31:20
**circulating** [1] - 23:17
**circumstances** [1] - 10:2
**claim** [2] - 9:6, 14:24
**claimant** [1] - 10:5
**claimants** [3] - 9:3, 10:7, 26:14
**claims** [4] - 8:7, 9:3, 9:22, 9:23
**clear** [6] - 11:20, 12:2, 16:19, 26:22, 39:4, 39:11
**clearly** [1] - 36:2
**CLERK** [2] - 6:7, 28:7
**client** [2] - 29:6, 37:24
**clients** [1] - 26:21
**close** [1] - 39:18
**collect** [1] - 10:7
**comfortable** [1] - 33:16
**coming** [1] - 35:6
**commending** [1] - 26:7
**comment** [2] - 31:11, 40:2
**comments** [2] - 6:18, 39:2
**COMMERCE** [1] - 1:18
**committee** [21] - 7:22, 7:24, 11:19, 13:5, 18:2, 18:18, 18:24, 19:17, 19:20, 20:2, 20:24, 21:8, 21:11, 21:17, 22:19, 22:23, 27:11, 29:1, 29:4, 35:18, 38:7
**committee's** [2] - 20:17, 21:15
**common** [31] - 6:12, 9:10, 9:17, 10:4, 10:7, 10:21, 14:13, 14:20, 17:6, 19:23, 21:24, 22:5, 22:15, 25:6, 29:16, 29:18, 30:10, 31:4, 31:5,

32:7, 33:5, 33:13, 33:19, 34:2, 35:5, 35:8, 36:2, 36:3, 36:5, 36:8, 39:13
**communication** [2] - 33:1, 33:9
**compile** [1] - 15:15
**COMPUTER** [1] - 5:15
**concern** [1] - 32:4
**concluded** [1] - 40:20
**concur** [1] - 27:10
**conduct** [1] - 32:23
**conducted** [3] - 11:4, 20:11
**conference** [7] - 7:6, 7:7, 15:14, 17:22, 24:3, 24:6
**conferences** [1] - 7:2
**confident** [1] - 11:25
**conflicts** [1] - 35:3
**connection** [1] - 25:13
**CONNOLLY** [1] - 4:7
**consider** [5] - 17:11, 34:10, 38:13, 40:11, 40:15
**consideration** [4] - 6:13, 14:16, 33:18, 38:8
**consultation** [1] - 14:16
**contacted** [2] - 8:15, 31:12
**contemplated** [1] - 19:21
**continue** [1] - 32:20
**CONTINUED** [4] - 2:1, 3:1, 4:1, 5:1
**continued** [1] - 21:7
**contract** [1] - 17:12
**contradictions** [2] - 35:13, 36:9
**contribute** [1] - 38:9
**contributed** [3] - 22:14, 22:16, 38:10
**correct** [3] - 33:21, 39:8, 41:8
**costs** [2] - 13:19, 13:21
**COTLAR** [1] - 1:12
**counsel** [9] - 10:23, 11:5, 14:4, 15:22, 24:14, 31:14, 31:15, 35:19
**country** [1] - 24:22
**couple** [2] - 28:14, 34:23
**course** [1] - 31:1
**Court** [94] - 7:5, 7:16, 8:1, 8:8, 8:13, 9:8, 10:13, 10:18, 10:20,

10:24, 11:3, 11:22, 12:2, 14:7, 14:21, 15:13, 16:5, 16:8, 16:9, 16:11, 16:23, 16:25, 17:1, 17:6, 17:9, 17:11, 17:13, 17:18, 17:21, 17:22, 17:23, 18:1, 18:8, 18:17, 19:2, 19:3, 19:9, 19:15, 20:3, 20:10, 21:6, 21:13, 21:14, 21:15, 21:22, 22:17, 23:1, 23:7, 23:10, 23:22, 24:10, 24:13, 24:20, 24:23, 25:14, 25:15, 25:18, 28:19, 28:21, 30:19, 31:3, 31:5, 31:9, 31:24, 32:2, 32:6, 32:16, 32:17, 32:19, 32:23, 33:4, 33:12, 33:15, 33:19, 33:20, 33:23, 34:21, 36:12, 36:13, 36:15, 36:24, 37:2, 37:19, 38:2, 39:12, 40:18, 41:5, 41:6, 41:7, 41:15, 41:15
**court** [2] - 15:6, 27:16
**COURT** [30] - 1:1, 5:12, 6:4, 6:8, 8:13, 24:1, 24:9, 24:11, 26:4, 26:25, 27:14, 28:4, 28:8, 28:24, 34:4, 34:16, 35:17, 35:24, 36:20, 37:1, 37:11, 37:13, 38:3, 38:20, 38:22, 39:1, 39:14, 40:7, 40:9, 40:17
**Court's** [14] - 8:3, 8:7, 8:21, 12:23, 15:13, 17:5, 18:7, 18:19, 19:14, 22:21, 23:7, 27:8, 28:20, 30:1
**cover** [2] - 13:19, 36:22
**crazy** [1] - 25:4
**creating** [1] - 29:16
**creation** [1] - 30:9
**critical** [2] - 31:18, 32:25
**CROW** [1] - 1:16
**CRR** [2] - 5:12, 41:14
**crystal** [1] - 39:4
**CT** [1] - 4:4
**CURATOR** [1] - 5:3
**current** [1] - 26:21

# D

**DANIEL** [2] - 3:9, 3:10
**Daniel** [1] - 24:12
**Danny** [3] - 21:9, 22:6, 22:8
**David** [1] - 28:13
**DAVID** [2] - 2:3, 5:7
**DAVIS** [1] - 1:13
**DAWN** [1] - 2:7
**days** [2] - 17:14, 24:24
**DC** [2] - 4:9, 4:15
**deadline** [2] - 10:24, 18:22, 19:5
**deal** [8] - 12:8, 12:19, 25:1, 27:4, 27:6, 27:8, 30:18, 33:9
**deal-making** [1] - 30:18
**dealing** [2] - 12:16, 37:20
**deals** [4] - 13:8, 13:11, 29:16, 30:9
**dealt** [1] - 9:19
**December** [1] - 18:22
**deceptive** [1] - 26:15
**decided** [2] - 8:15, 14:21
**deciding** [2] - 16:9, 30:3
**decision** [4] - 30:21, 30:24, 32:7, 39:13
**decision-making** [1] - 30:24
**decisions** [1] - 30:20
**deducted** [1] - 36:5
**DEFENDANT** [1] - 4:7
**defense** [1] - 25:24
**defined** [1] - 31:15
**delay** [1] - 12:1
**deliberated** [1] - 18:24
**deliberations** [3] - 18:2, 18:19, 23:2
**deposited** [1] - 13:12
**depositions** [2] - 7:1, 11:6
**DEPUTY** [2] - 6:7, 28:7
**describes** [3] - 13:16, 15:15, 17:2
**describing** [1] - 10:18
**despite** [1] - 27:7
**determination** [4] - 9:16, 12:24, 18:24, 39:3
**determine** [3] - 10:20, 28:20, 28:22
**determined** [3] - 9:8, 9:9, 18:8
**differed** [1] - 22:22

**difference** [3] - 18:6, 18:10, 35:16
**differences** [1] - 21:8
**different** [2] - 11:20, 20:2
**diminished** [1] - 22:11
**directly** [1] - 32:11
**disagreement** [4] - 32:15, 35:17, 35:18, 35:20
**disbursement** [1] - 37:23
**disbursements** [1] - 37:17
**disclosed** [1] - 30:18
**discovery** [3] - 11:4, 11:6, 20:11
**discrepancy** [1] - 16:1
**discuss** [4] - 7:3, 7:20, 25:1, 38:1
**discussed** [2] - 6:9, 7:5
**discussing** [1] - 25:2
**discussion** [1] - 31:23
**disgorgement** [1] - 26:9
**dispute** [1] - 25:13
**dissolving** [1] - 25:5
**distribute** [2] - 26:3, 35:4
**distributed** [3] - 8:15, 13:1, 20:24
**distribution** [11] - 7:11, 8:2, 15:25, 20:22, 21:16, 21:17, 22:21, 23:23, 25:16, 25:21
**DISTRICT** [3] - 1:1, 1:1, 1:9
**District** [3] - 41:6, 41:7, 41:15
**disturbing** [1] - 31:14
**divvy** [1] - 30:3
**DOCKET** [1] - 1:5
**Document** [2] - 28:16, 28:17
**document** [1] - 8:17
**dog** [1] - 40:16
**dollars** [1] - 38:24
**dome** [1] - 40:13
**done** [10] - 9:22, 19:13, 19:14, 20:12, 24:18, 25:12, 27:7, 30:25, 39:3, 40:14
**DOROTHY** [1] - 4:11
**DOUGLAS** [1] - 4:7
**down** [4] - 19:1, 23:1, 23:6, 40:15
**DRAWER** [1] - 5:9
**DREW** [1] - 2:17

**dub** [1] - 7:15
**due** [2] - 14:25, 21:23
**DUGAN** [2] - 3:6, 3:6

# E

**e-mail** [1] - 32:8
**earned** [1] - 13:22
**EASTERN** [1] - 1:1
**Eastern** [1] - 41:7
**eat** [2] - 29:1, 29:4
**ECHSNER** [1] - 2:10
**economic** [2] - 35:11, 35:25
**economy** [1] - 25:19
**Eddie** [1] - 40:10
**EDDIE** [1] - 3:22
**EDWARD** [1] - 2:14
**effect** [1] - 36:8
**eight** [11] - 10:21, 10:23, 11:11, 11:13, 12:9, 12:23, 13:10, 18:6, 29:20, 30:4, 39:9
**either** [1] - 24:5
**ELAINE** [1] - 4:8
**ELDON** [1] - 1:9
**ELIZABETH** [1] - 3:3
**ELM** [1] - 4:4
**EMBARCADERO** [1] - 3:4
**Employment** [1] - 25:23
**end** [1] - 24:16
**ENERGY** [1] - 2:4
**enter** [4] - 14:12, 16:12, 19:11, 31:7
**entered** [21] - 10:13, 10:24, 11:21, 12:7, 12:13, 12:20, 14:9, 14:18, 14:20, 15:10, 15:11, 16:11, 16:15, 18:18, 19:3, 20:7, 20:8, 20:23, 23:1, 34:14, 36:11
**entering** [2] - 13:3, 31:17
**enters** [2] - 16:23, 16:25
**entire** [1] - 11:24
**entitled** [4] - 18:13, 18:14, 28:15, 41:10
**Eric** [1] - 26:6
**Escobedo** [1] - 28:13
**escrow** [4] - 13:15, 13:17, 14:1, 37:8
**ESQUIRE** [29] - 1:13, 1:13, 1:17, 1:17, 1:21, 1:24, 2:4, 2:7,

2:11, 2:14, 2:17,
2:21, 2:21, 3:3, 3:6,
3:10, 3:13, 3:16,
3:22, 4:3, 4:7, 4:8,
4:11, 4:14, 4:17,
4:20, 4:23, 5:3, 5:7
**established** [2] - 30:7,
35:7
**establishing** [1] - 31:4
**evaluating** [1] - 14:24
**evaluation** [1] - 10:1
**event** [1] - 7:6
**evidence** [1] - 31:11
**evidentiary** [2] -
20:11, 33:17
**exactly** [1] - 31:10
**examine** [1] - 8:1
**exception** [2] - 20:19,
21:25
**exchange** [1] - 32:8
**exhibit** [1] - 23:16
**expect** [1] - 29:6
**expended** [1] - 23:20
**expensive** [1] - 23:21
**expert** [6] - 33:3, 33:7,
33:10, 33:11, 33:19,
34:5
**expert's** [1] - 34:10
**experts** [2] - 12:12,
33:15
**explained** [2] - 36:18,
37:7
**explains** [2] - 16:3,
33:2
**explanation** [2] - 27:7,
35:16
**expressly** [2] - 17:1,
17:13
**extensive** [4] - 11:5,
20:12, 21:22, 23:19
**extent** [1] - 37:21
**extreme** [1] - 9:3
**extremely** [2] - 9:6,
31:19

# F

**FAC** [6] - 26:7, 29:10,
30:6, 30:11, 30:12,
36:2
**face** [1] - 25:7
**fact** [7] - 7:5, 26:18,
31:13, 31:14, 35:22,
36:11, 39:5
**factors** [3] - 6:13, 9:4,
34:9
**fallen** [1] - 26:9
**Fallon** [1] - 27:1
**FALLON** [1] - 1:9

**far** [1] - 31:19
**fashion** [1] - 32:21
**fast** [1] - 30:12
**FAXON** [1] - 4:3
**February** [3] - 19:6,
19:7, 32:16
**fee** [53] - 6:12, 6:13,
6:14, 6:16, 7:24,
8:13, 8:24, 9:17,
10:7, 10:17, 11:19,
11:22, 11:23, 11:24,
12:8, 12:21, 12:25,
13:2, 13:5, 14:12,
14:20, 16:18, 16:19,
17:7, 17:11, 18:1,
18:18, 18:23, 19:8,
19:17, 19:19, 19:20,
20:1, 20:13, 20:16,
20:21, 20:23, 21:1,
21:8, 21:11, 21:15,
21:16, 21:21, 21:24,
22:15, 22:19, 22:22,
23:10, 25:6, 25:13,
27:10, 38:6
**fees** [15] - 7:15, 7:16,
9:10, 10:4, 10:6,
10:10, 10:21, 13:9,
15:3, 19:23, 21:24,
22:10, 26:9, 38:13
**fell** [1] - 11:10
**felt** [4] - 6:20, 11:25,
14:11, 39:20
**few** [2] - 8:5, 30:18
**Fifth** [1] - 31:20
**file** [3] - 10:25, 18:22,
19:5
**filed** [20] - 10:23, 11:3,
11:15, 12:20, 15:20,
15:21, 16:3, 17:17,
18:25, 20:6, 22:3,
25:13, 26:21, 28:14,
28:17, 32:3, 37:18,
39:7
**filing** [2] - 17:15,
17:18
**final** [7] - 10:4, 18:5,
19:2, 20:8, 30:19,
31:25, 35:2
**finality** [2] - 12:7,
17:25
**finally** [4] - 12:3,
16:13, 18:3, 18:8
**fine** [3] - 23:4, 24:1,
27:15
**firm** [6] - 15:2, 18:25,
20:6, 22:8, 25:11
**Firm** [1] - 21:9
**FIRM** [4] - 2:17, 2:20,
3:6, 3:12
**firms** [38] - 11:3,

14:23, 18:9, 18:12,
18:15, 18:20, 18:21,
19:1, 19:4, 20:14,
21:3, 21:12, 21:14,
21:24, 22:3, 22:15,
22:25, 23:2, 23:3,
23:4, 23:6, 23:8,
23:12, 23:14, 23:15,
23:18, 25:4, 25:16,
25:20, 27:3
**first** [6] - 7:22, 9:1,
24:18, 32:14, 34:23,
35:12
**FISHBEIN** [1] - 1:20
**five** [1] - 10:16
**fixed** [3] - 9:2, 9:7,
19:23
**FL** [1] - 2:12
**FLOM** [2] - 4:13, 4:16
**flying** [1] - 36:9
**focus** [2] - 30:22,
39:20
**follow** [1] - 34:22
**followed** [1] - 38:7
**following** [1] - 23:7
**FOR** [2] - 1:12, 4:7
**forcing** [1] - 40:11
**foregoing** [1] - 41:8
**form** [3] - 16:17,
23:14, 35:1
**forms** [1] - 23:16
**forth** [1] - 36:9
**forward** [3] - 7:9,
30:12, 33:24
**four** [12] - 12:21,
12:22, 12:25, 18:13,
21:3, 22:15, 25:10,
33:5, 33:12, 33:20,
38:24, 39:8
**FOUR** [1] - 4:17
**four-percent** [1] -
12:21
**FOX** [1] - 4:17
**FRANCISCO** [1] - 3:5
**Francisco** [1] - 24:25
**fraught** [1] - 35:13
**FRED** [1] - 1:21
**FREEWAY** [1] - 3:22
**front** [1] - 31:5
**full** [6] - 8:22, 11:17,
19:12, 20:11, 20:17,
20:25
**Full** [2] - 25:23, 35:2
**fund** [29] - 8:6, 8:16,
8:18, 9:1, 22:5,
22:11, 22:14, 26:1,
26:2, 29:17, 29:18,
29:25, 30:3, 30:10,
31:4, 31:6, 32:7,
33:5, 33:13, 33:20,

34:2, 35:5, 35:9,
38:9, 38:10, 38:15,
39:13
**funds** [13] - 7:11, 8:2,
13:1, 13:11, 13:14,
13:25, 20:24, 21:18,
22:5, 36:2, 36:3,
36:5, 36:8

# G

**GAINSBURGH** [1] -
2:3
**general** [1] - 24:2
**gentlemen** [1] - 31:7
**GERALD** [1] - 2:4
**given** [4] - 9:6, 20:9,
27:7, 29:6
**glad** [1] - 38:19
**grant** [1] - 25:14
**gratuitous** [1] - 30:9
**greater** [2] - 12:1, 33:5
**Greer** [2] - 35:23, 37:6
**group** [2] - 12:9, 30:10
**guess** [1] - 34:16
**GULF** [1] - 3:22

# H

**half** [9] - 8:12, 12:11,
16:7, 16:24, 17:1,
17:7, 18:6, 18:8,
22:16
**handful** [1] - 10:2
**handled** [2] - 8:3,
22:18
**hard** [1] - 34:16
**HARDING** [2] - 5:8,
5:8
**harm** [2] - 30:13,
35:11
**Harvard** [3] - 33:10,
33:11
**HASTINGS** [1] - 2:21
**HAVEN** [1] - 4:4
**heal** [1] - 30:13
**hear** [4] - 7:22, 24:1,
27:15, 28:9
**heard** [4] - 6:11, 7:25,
16:20, 20:6
**HEARD** [1] - 1:9
**hearing** [5] - 6:9, 7:19,
15:12, 20:12, 39:21
**HEARING** [1] - 1:8
**hearings** [1] - 7:2
**HEATHER** [1] - 5:3
**HEIMANN** [1] - 3:3
**help** [2] - 26:1, 26:2

**helpful** [1] - 34:11
**HENRY** [1] - 4:23
**Henry** [1] - 27:1
**hereby** [1] - 41:7
**Herman** [1] - 31:2
**HERMAN** [3] - 1:12,
1:13
**Higbee** [1] - 14:17
**high** [1] - 34:7
**highlight** [1] - 40:3
**history** [1] - 29:11
**Hockema** [1] - 28:13
**hold** [3] - 18:2, 21:18
**holdback** [3] - 9:8,
25:16, 25:17
**holding** [1] - 10:4
**Honor** [28] - 7:23, 8:6,
8:21, 13:6, 15:7,
16:15, 19:25, 20:20,
21:25, 22:20, 23:23,
24:8, 28:12, 28:14,
29:3, 29:24, 33:4,
34:12, 34:24, 35:4,
35:20, 36:23, 37:18,
38:5, 38:17, 38:21,
40:6, 40:8
**HONORABLE** [1] - 1:9
**HORN** [1] - 4:8
**hours** [1] - 40:13
**HOUSTON** [4] - 2:15,
3:14, 3:17, 3:23
**HUBBARD** [1] - 4:19
**HUGHES** [1] - 4:19
**hundred** [1] - 38:24
**hundred-something**
[1] - 38:24
**hunt** [1] - 40:16

# I

**idea** [1] - 35:3
**illustrative** [1] - 30:24
**immediately** [2] -
20:25, 26:3
**implemented** [1] -
23:22
**implore** [1] - 40:11
**importance** [1] - 31:19
**important** [4] - 16:14,
24:22, 31:19, 37:14
**importantly** [1] - 11:25
**IN** [1] - 1:4
**include** [1] - 35:21
**included** [1] - 32:8
**includes** [2] - 35:22,
35:23
**including** [2] - 14:6,
29:21
**increased** [1] - 34:9

**indeed** [1] - 35:8
**independent** [1] - 9:25
**indicates** [1] - 7:15
**individual** [2] - 18:20, 18:21
**indulgence** [1] - 38:21
**influenced** [1] - 32:6
**informally** [1] - 17:23
**information** [10] - 30:20, 30:25, 33:22, 33:23, 33:24, 33:25, 36:12, 36:13, 39:12
**informed** [4] - 16:6, 30:20, 30:25, 33:19
**initial** [1] - 10:3
**injury** [1] - 9:5
**inserted** [1] - 29:14
**instead** [1] - 33:20
**instructed** [3] - 18:1, 19:10
**integrity** [1] - 9:21
**interest** [13] - 13:11, 13:12, 13:13, 13:14, 13:16, 13:19, 13:22, 13:25, 14:13, 29:15, 29:19, 37:7, 37:8
**interest-bearing** [5] - 13:12, 13:14, 13:25, 29:19, 37:8
**interim** [1] - 21:17
**Internet** [1] - 8:17
**investigate** [2] - 31:10, 37:3
**investigated** [1] - 37:21
**investigation** [1] - 32:23
**invited** [2] - 6:18, 19:4
**involved** [4] - 7:10, 7:11, 12:17, 35:21
**involvement** [1] - 27:4
**involving** [1] - 6:9
**INVOLVING** [1] - 1:8
**irrespective** [1] - 23:11
**issue** [40] - 7:18, 7:20, 11:6, 12:2, 12:7, 14:14, 15:17, 16:5, 16:8, 16:13, 17:11, 17:20, 17:23, 17:24, 18:3, 18:25, 19:7, 20:5, 22:20, 28:18, 28:19, 29:10, 29:16, 31:4, 31:5, 31:19, 31:21, 32:11, 32:25, 35:25, 36:21, 37:19, 38:2, 39:10, 39:20, 39:22, 39:23, 39:24
**issued** [3] - 10:3, 12:24, 18:17

**issues** [9] - 6:9, 8:1, 13:4, 15:19, 16:1, 21:19, 23:11, 37:23, 38:18
**item** [3] - 8:23, 9:11, 10:16
**items** [3] - 8:9, 19:22
**itself** [1] - 11:20

## J

**JACK** [1] - 3:16
**Jack** [1] - 28:12
**JAMES** [1] - 3:6
**January** [3] - 10:22, 19:3
**job** [2] - 24:19, 40:14
**jobs** [1] - 25:19
**Joe** [1] - 28:13
**JOHN** [3] - 3:22, 4:14
**John** [1] - 40:10
**JOHNSTON** [1] - 5:3
**JR** [3] - 1:17, 3:9, 3:22
**Judge** [5] - 17:15, 17:23, 25:18, 27:1, 33:4
**judge** [1] - 40:10
**JUDGE** [1] - 1:9
**Judges** [1] - 14:17
**judgment** [6] - 37:10, 39:23, 39:24, 39:25, 40:5
**judiciary** [1] - 31:20
**July** [6] - 15:11, 16:11, 26:13, 31:3, 31:13
**jump** [1] - 30:12
**Juneau** [4] - 9:15, 20:10, 20:11, 38:14
**JUNEAU** [2] - 5:7, 5:7
**Junior** [1] - 24:12
**JURGENS** [1] - 4:23
**jurisprudence** [1] - 38:7
**jury** [1] - 24:24
**justifications** [1] - 26:11

## K

**Kathryn** [11] - 28:13, 29:21, 31:12, 31:16, 32:2, 32:11, 32:12, 32:15, 33:24, 35:11, 36:14
**Kathy** [5] - 22:2, 22:6, 22:8, 38:6, 38:9
**KATZ** [1] - 1:12
**keep** [2] - 24:5, 39:12

**kept** [5] - 31:22, 31:25, 32:1, 32:2, 32:24
**KHERKHER** [1] - 3:21
**kind** [1] - 24:12
**KING** [3] - 4:23, 4:23, 27:1
**King** [1] - 27:1
**KINGSDORF** [1] - 2:7
**Kline** [1] - 27:2
**knowledge** [1] - 32:17
**known** [1] - 36:10
**KREBS** [1] - 4:23
**KY** [1] - 2:22

## L

**L.L.P** [1] - 2:7
**LA** [11] - 1:14, 2:5, 2:8, 2:19, 3:8, 3:11, 3:20, 4:12, 4:25, 5:4, 5:9
**labored** [1] - 23:19
**LAFAYETTE** [1] - 5:9
**LAKE** [1] - 2:19
**large** [1] - 31:5
**largest** [1] - 30:23
**last** [1] - 25:10
**law** [6] - 20:3, 24:21, 25:4, 25:10, 25:11, 25:20
**Law** [1] - 21:9
**LAW** [7] - 2:17, 2:20, 3:6, 3:9, 3:12, 3:19, 5:3
**lawyer's** [1] - 6:16
**lawyers** [9] - 6:15, 12:17, 20:3, 20:8, 24:18, 25:19, 25:20, 25:22, 25:25
**laying** [1] - 25:22
**lead** [2] - 24:14, 31:14
**least** [4] - 28:25, 31:16, 33:16, 39:24
**leave** [1] - 38:2
**leaves** [1] - 22:8
**left** [1] - 36:13
**legal** [2] - 37:9
**legally** [1] - 12:1
**LEIGH** [1] - 1:17
**LEONARD** [1] - 1:13
**lesser** [1] - 38:10
**letter** [5] - 26:13, 26:16, 33:14, 33:21
**letters** [4] - 16:16, 16:17
**leverage** [1] - 33:8
**LEVIN** [2] - 1:20, 2:10
**LIABILITY** [1] - 1:4
**liaison** [5] - 10:23, 11:4, 31:14, 31:15,

35:18
**LIEFF** [1] - 3:3
**light** [2] - 8:3
**likewise** [1] - 19:25
**limited** [1] - 29:22
**line** [3] - 9:13, 10:10, 18:16
**link** [1] - 37:8
**list** [5] - 15:15, 15:17, 15:24, 16:2, 29:2
**listed** [3] - 8:10, 18:16, 36:24
**litigants** [1] - 6:16
**litigated** [3] - 11:7, 20:4
**LITIGATION** [1] - 1:4
**litigation** [4] - 12:18, 21:21, 23:19
**lock** [1] - 40:12
**LONGER** [1] - 1:21
**look** [7] - 7:13, 8:9, 13:6, 13:15, 14:1, 39:15, 39:18
**looking** [3] - 11:9, 12:4, 14:22
**lose** [2] - 25:25, 26:2
**LOUISIANA** [4] - 1:1, 1:5, 2:15, 5:13
**Louisiana** [2] - 41:6, 41:7
**LOUISVILLE** [1] - 2:22
**low** [2] - 9:6, 9:15
**lower** [2] - 12:10, 23:14
**LYRIC** [1] - 2:14

## M

**mail** [1] - 32:8
**main** [1] - 7:14
**majority** [1] - 30:6
**maker** [1] - 30:21
**manageable** [1] - 12:19
**MARGARET** [1] - 3:18
**Margaret** [1] - 26:5
**mark** [1] - 39:15
**marker** [1] - 9:13
**markers** [2] - 9:14, 10:8
**MARVIN** [1] - 4:7
**Master** [5] - 10:11, 19:11, 19:12, 21:3, 22:24
**MASTER** [1] - 5:7
**master** [9] - 10:19, 13:7, 13:18, 13:20, 15:9, 17:12, 20:10, 29:13, 35:3

**masters** [2] - 22:23, 25:23
**material** [1] - 6:17
**matter** [7] - 7:3, 15:1, 17:5, 19:8, 24:2, 28:9, 41:10
**maximum** [2] - 13:9, 33:12
**MAYER** [1] - 4:20
**MAYNARD** [1] - 3:15
**MCCARTHY** [1] - 2:13
**MDL** [2] - 1:5, 24:13
**MEAGHER** [2] - 4:13, 4:16
**mean** [4] - 9:12, 14:19, 15:12, 38:17
**measured** [1] - 32:21
**MECHANICAL** [1] - 5:14
**mediation** [1] - 40:11
**mediator** [1] - 40:12
**meet** [1] - 24:3
**MEGAN** [1] - 2:21
**members** [2] - 21:11, 35:22
**mention** [4] - 24:2, 24:11, 24:25, 29:9
**mentioned** [4] - 21:1, 22:7, 35:12, 37:17
**Merck** [7] - 13:20, 13:22, 13:23, 14:3, 29:15, 30:5, 30:8
**Merit** [1] - 41:5
**met** [2] - 18:21, 20:8
**METHVIN** [1] - 1:16
**MEUNIER** [2] - 2:3, 2:4
**Michael** [8] - 6:24, 11:4, 12:11, 13:1, 15:23, 16:15, 31:12, 32:12
**MICHAEL** [1] - 4:3
**middle** [2] - 14:14, 28:9
**might** [5] - 25:7, 29:9, 32:6, 36:13, 40:1
**MILES** [1] - 1:16
**million** [6] - 7:19, 15:16, 18:11, 21:15, 38:13
**mind** [1] - 24:5
**minor** [1] - 22:1
**minutes** [3] - 8:5, 24:4, 27:16
**MITCHELL** [1] - 2:10
**moment** [3] - 13:6, 13:15, 14:1, 20:20, 30:15
**money** [18] - 25:7, 26:3, 29:25, 30:16,

32:12, 34:20, 34:24, 35:1, 35:4, 35:6, 35:8, 35:13, 36:1, 36:5, 36:14, 40:15
**MONTGOMERY** [1] - 1:19
**month** [1] - 15:19
**months** [1] - 16:22
**moreover** [1] - 29:9
**morning** [2] - 7:23, 27:1
**most** [1] - 9:17
**Motion** [2] - 28:16, 37:17
**motion** [5] - 17:15, 17:17, 25:14, 32:19, 36:25
**motions** [1] - 26:19
**move** [3] - 35:24, 37:14, 37:22
**moved** [2] - 16:9, 18:4
**moving** [1] - 37:23
**MR** [23] - 7:23, 8:21, 24:8, 24:10, 24:12, 27:1, 28:12, 29:3, 34:12, 34:23, 35:20, 35:25, 36:23, 37:2, 37:12, 37:16, 38:5, 38:21, 38:23, 39:2, 40:6, 40:8, 40:10
**MS** [1] - 26:5
**Murphy** [1] - 38:8
**must** [1] - 7:16

## N

**N.W** [1] - 4:8
**NABERS** [1] - 2:13
**name** [3] - 24:11, 29:17, 29:18
**narrow** [1] - 37:19
**nature** [1] - 37:3
**nearly** [1] - 14:8
**need** [3] - 9:10, 39:19, 40:4
**needed** [6] - 6:20, 12:3, 12:6
**negotiated** [1] - 13:17
**negotiating** [1] - 30:5
**negotiations** [1] - 30:8
**net** [2] - 18:15
**NEW** [16] - 1:5, 1:14, 1:25, 2:5, 2:8, 3:8, 3:20, 4:4, 4:12, 4:14, 4:18, 4:21, 4:25, 5:4, 5:13
**next** [1] - 15:19
**NO** [1] - 1:5
**nobody** [1] - 7:8

**nominated** [1] - 24:14
**none** [1] - 24:20
**nonetheless** [1] - 11:23
**note** [1] - 16:14
**noted** [1] - 10:18
**notes** [4] - 17:3, 17:9, 17:12, 17:13
**notice** [1] - 32:14
**Notice** [1] - 37:18
**November** [1] - 17:22
**NPC** [5] - 11:19, 13:5, 14:4, 27:11, 30:5
**NPC's** [1] - 29:14
**number** [13] - 6:19, 6:22, 7:1, 9:4, 9:11, 9:20, 10:16, 12:17, 23:18, 25:18, 25:25, 29:21, 30:17
**Number** [1] - 28:16
**numbered** [1] - 41:10
**numerous** [1] - 11:2
**NW** [1] - 4:14
**NY** [2] - 1:25, 4:21

## O

**O'DELL** [1] - 1:17
**O'KEEFE** [1] - 1:14
**OAK** [1] - 3:16
**oath** [1] - 37:4
**object** [1] - 20:9
**objected** [2] - 10:25, 21:4
**objection** [12] - 6:20, 10:25, 12:9, 12:20, 16:3, 17:16, 17:19, 17:24, 19:5, 22:4, 34:1
**Objections** [1] - 28:15
**objections** [18] - 6:18, 6:19, 11:3, 11:9, 11:10, 11:11, 11:15, 15:20, 16:8, 16:20, 17:2, 17:8, 17:10, 17:13, 18:22, 19:18, 21:2
**OBJECTORS** [1] - 1:8
**objectors** [31] - 6:10, 6:12, 6:19, 6:21, 6:25, 8:19, 8:24, 10:17, 11:2, 11:14, 12:8, 12:12, 12:14, 12:15, 12:25, 13:2, 14:13, 15:18, 15:24, 16:7, 16:18, 16:19, 17:7, 17:10, 19:8, 19:19, 21:20, 25:10, 26:21, 26:22, 32:4

**obtained** [2] - 15:6, 27:9
**occasions** [1] - 17:3
**October** [4] - 16:12, 17:5, 17:14, 17:21
**OF** [4] - 1:1, 1:8, 3:9, 5:3
**offer** [2] - 23:24, 26:24
**offered** [2] - 14:4, 26:12
**OFFICE** [3] - 1:18, 2:18, 3:9
**OFFICES** [1] - 5:3
**Official** [2] - 41:6, 41:15
**OFFICIAL** [1] - 5:12
**offset** [1] - 38:10
**Oil** [1] - 38:8
**OLDFATHER** [2] - 2:20, 2:21
**Oldfather** [1] - 16:20
**once** [4] - 16:5, 16:15, 18:17
**ONE** [3] - 1:24, 3:7, 4:20
**one** [31] - 6:22, 8:1, 9:11, 11:7, 11:11, 14:1, 14:14, 15:3, 15:19, 18:6, 20:19, 20:20, 22:20, 24:19, 24:25, 28:15, 29:5, 31:8, 31:11, 32:3, 32:10, 33:2, 34:21, 36:11, 38:6, 38:21, 39:4, 39:9, 40:2, 40:12, 40:14
**one-and-a-half** [1] - 18:6
**ones** [2] - 26:1, 26:2
**operated** [1] - 9:21
**opinion** [1] - 34:6
**opportunities** [1] - 20:5
**opportunity** [1] - 20:9
**opposed** [1] - 12:22
**option** [2] - 9:6, 11:17
**ORDER** [2] - 6:4, 28:4
**order** [24] - 8:7, 10:13, 10:24, 11:17, 15:7, 16:12, 16:23, 16:25, 17:1, 17:5, 18:5, 18:7, 18:17, 18:19, 19:3, 19:14, 20:22, 21:17, 23:7, 23:23, 39:19, 39:21, 40:1, 40:4
**ordering** [1] - 10:14
**orders** [1] - 28:15
**originally** [2] - 23:9, 23:13

**ORLEANS** [10] - 1:5, 1:14, 2:5, 2:8, 3:8, 3:20, 4:12, 4:25, 5:4, 5:13
**otherwise** [2] - 38:17
**ought** [1] - 25:8
**outside** [2] - 15:8, 15:13
**outstanding** [2] - 23:20, 24:18
**overall** [1] - 22:4
**override** [1] - 29:20
**overture** [1] - 25:3
**own** [1] - 29:11

## P

**p.m** [1] - 40:19
**P.O** [1] - 5:9
**page** [2] - 17:4, 17:9
**paid** [6] - 10:11, 15:2, 15:16, 15:22, 25:24, 39:8
**PAPANTONIO** [1] - 2:10
**paper** [1] - 11:5
**papers** [3] - 27:2, 31:25, 32:3
**PARK** [2] - 3:13, 4:20
**PARSON** [1] - 3:15
**part** [6] - 13:18, 29:6, 30:23, 33:18, 34:15, 39:12
**participate** [1] - 14:5
**participation** [2] - 11:17, 14:8
**particular** [2] - 29:7, 33:25
**particularly** [1] - 37:24
**parties** [5] - 7:2, 7:7, 9:9, 34:13
**party** [1] - 14:11
**pass** [1] - 17:14
**passes** [2] - 17:16, 17:19
**PATRICK** [1] - 5:7
**pay** [3] - 7:20, 12:21, 25:20
**paying** [1] - 34:18
**payment** [5] - 7:12, 9:7, 10:3, 10:14
**payments** [8] - 9:2, 9:7, 9:14, 9:19, 10:8, 10:17, 19:24
**pays** [1] - 7:18
**pending** [3] - 17:5, 31:3, 32:19
**PENNSYLVANIA** [1] - 1:22

**PENSACOLA** [1] - 2:12
**people** [10] - 25:19, 25:21, 29:11, 29:21, 30:4, 30:6, 30:10, 37:4, 40:11, 40:13
**Pepper** [3] - 41:4, 41:13, 41:14
**PEPPER** [1] - 5:12
**percent** [48] - 6:14, 6:20, 8:12, 8:14, 10:3, 10:21, 10:23, 11:11, 11:13, 11:16, 11:18, 11:23, 11:24, 12:11, 12:17, 12:21, 12:22, 12:25, 13:9, 13:10, 14:7, 16:7, 16:24, 17:1, 17:7, 18:6, 18:8, 18:13, 21:18, 22:15, 22:16, 22:18, 29:20, 29:22, 30:4, 33:6, 33:12, 33:16, 33:20, 33:21, 34:3, 34:5, 34:7, 34:8, 39:8, 39:9
**percentage** [12] - 8:24, 10:21, 12:8, 12:25, 13:2, 14:12, 14:21, 14:22, 16:18, 16:19, 19:8, 19:19
**perhaps** [1] - 15:7
**period** [3] - 17:15, 21:22, 23:19
**petition** [1] - 10:23, 10:25
**PHILADELPHIA** [1] - 1:22
**pick** [1] - 6:22
**picked** [1] - 6:24
**pie** [1] - 12:4
**PIGMAN** [1] - 4:10
**place** [5] - 21:12, 23:22, 31:3, 32:18, 33:3
**PLACE** [3] - 3:7, 3:13, 4:24
**placed** [3] - 13:14, 13:25, 15:12
**Placitella** [3] - 26:6, 26:8, 26:19
**plaintiff** [1] - 25:25
**PLAINTIFFS** [1] - 1:12
**plaintiffs'** [5] - 7:22, 10:22, 28:25, 29:4, 35:18
**PLAZA** [1] - 4:20
**PLC** [1] - 17:6
**pleadings** [1] - 25:13
**pleased** [1] - 26:23
**pleasure** [1] - 26:6

**point** [22] - 14:19, 16:21, 17:25, 19:9, 20:19, 20:21, 22:1, 27:17, 32:5, 32:22, 33:17, 33:25, 35:24, 35:25, 37:15, 37:25, 38:6, 38:23, 39:4
**points** [2] - 9:25, 10:4
**portion** [2] - 15:2, 38:12
**PORTIS** [1] - 1:16
**poses** [1] - 11:24
**position** [11] - 6:25, 12:1, 19:25, 20:15, 20:17, 20:22, 21:15, 22:9, 22:14, 22:17, 36:20
**POST** [3] - 1:18, 2:18, 3:16
**posted** [2] - 6:18, 8:8
**POYDRAS** [4] - 2:5, 2:8, 5:4, 5:12
**practical** [1] - 32:1
**practiced** [1] - 24:21
**preliminary** [2] - 18:20, 20:7
**premature** [1] - 37:25
**prepared** [2] - 33:4, 38:1
**presence** [1] - 15:13
**present** [1] - 7:6
**presented** [1] - 19:2
**pretrial** [1] - 11:17
**prevent** [1] - 36:12
**primary** [3] - 6:15, 15:21, 32:22
**private** [2] - 7:7, 14:3
**pro** [6] - 19:20, 20:1, 20:18, 21:11, 21:16, 21:25
**PRO** [1] - 5:3
**problem** [3] - 32:15, 34:18, 35:10
**procedural** [1] - 32:19
**proceeded** [1] - 6:25
**proceedings** [3] - 27:17, 40:19, 41:9
**PROCEEDINGS** [4] - 1:8, 5:14, 6:1, 28:1
**process** [12] - 6:21, 9:3, 10:18, 17:2, 18:4, 20:13, 21:2, 21:23, 23:21, 30:17, 35:21
**processes** [1] - 30:18
**PROCTOR** [1] - 2:10
**PRODUCED** [1] - 5:15
**PRODUCTS** [1] - 1:4
**program** [2] - 9:20, 9:21

**propriety** [1] - 39:10
**prospects** [1] - 25:8
**proved** [1] - 15:22
**proves** [1] - 38:23
**provided** [3] - 8:8, 10:19, 21:23
**provides** [1] - 13:18
**provision** [1] - 30:9
**published** [1] - 19:4
**pulled** [1] - 9:23
**purpose** [1] - 13:23
**pursuant** [2] - 18:7, 18:19
**pursue** [1] - 6:25
**put** [7] - 8:17, 18:2, 23:22, 34:9, 36:14, 37:24, 40:13

# Q

**questions** [7] - 13:12, 18:21, 18:25, 26:11, 26:12, 32:20, 38:18
**quick** [1] - 38:21
**quickly** [1] - 17:4
**quite** [1] - 23:21

# R

**RAFFERTY** [1] - 2:11
**raise** [1] - 39:10
**raised** [7] - 12:9, 13:4, 13:13, 16:1, 17:23, 18:25, 19:9
**raises** [1] - 32:19
**random** [1] - 9:21
**Randy** [1] - 14:17
**RANIER** [2] - 2:17, 2:17
**rata** [6] - 19:20, 20:1, 20:18, 21:11, 21:16, 21:25
**rate** [1] - 38:10
**RE** [1] - 1:4
**re** [1] - 9:24
**re-reviewed** [1] - 9:24
**reach** [1] - 33:8
**reached** [10] - 11:7, 12:10, 19:17, 20:14, 21:8, 22:7, 23:2, 37:5, 39:11
**reaching** [1] - 31:13
**read** [2] - 34:6, 37:13
**realize** [1] - 24:22
**really** [3] - 8:1, 24:23, 25:3
**Realtime** [2] - 41:4, 41:14

**reason** [7] - 9:5, 20:2, 28:22, 32:21, 34:25, 37:20, 37:22
**reasonable** [1] - 12:13
**reasons** [8] - 32:1, 32:3, 33:3, 36:11, 39:19, 39:21, 40:1, 40:4
**rebate** [3] - 36:1, 36:7, 39:6
**receive** [3] - 21:24, 22:9, 22:11
**received** [7] - 6:18, 18:12, 22:10, 35:14, 35:15, 38:15, 39:6
**receiving** [1] - 33:21
**recent** [1] - 35:7
**recently** [1] - 10:13
**recess** [3] - 27:16, 27:18, 40:18
**recommendation** [6] - 18:20, 19:3, 19:4, 19:11, 20:9, 22:22
**recommendations** [1] - 20:8
**recommended** [1] - 21:4
**recommending** [1] - 16:6
**reconcile** [1] - 15:17
**reconciled** [1] - 15:24
**reconciliation** [1] - 16:2
**reconsidered** [1] - 18:24
**Record** [1] - 28:16
**record** [4] - 15:13, 16:17, 25:1, 41:9
**RECORDED** [1] - 5:14
**recorded** [1] - 6:11
**records** [1] - 20:7
**reduce** [4] - 11:23, 20:16, 22:4, 25:9
**reduced** [3] - 10:5, 17:6, 22:17
**reduction** [5] - 20:23, 21:16, 22:1, 22:13
**REED** [1] - 4:19
**referring** [1] - 31:1
**reflecting** [1] - 20:23
**refund** [4] - 12:24, 18:13, 18:14, 22:10
**refunded** [1] - 18:9
**refunding** [1] - 15:1
**regard** [2] - 17:17, 29:9
**regarding** [1] - 18:2
**regardless** [1] - 36:12
**regards** [2] - 12:15, 13:3, 14:10, 19:22,

22:8, 22:20, 33:9, 38:6
**registered** [1] - 6:19
**Registered** [1] - 41:4
**registry** [2] - 34:20, 36:15
**rejected** [1] - 18:23
**related** [1] - 32:11
**relatively** [2] - 9:9, 22:1
**release** [1] - 35:2
**relief** [1] - 32:22
**remaining** [2] - 21:3, 21:20
**remedy** [2] - 37:23, 37:24
**repeatedly** [1] - 39:7
**reply** [3] - 28:17, 32:8, 33:2
**report** [5] - 8:7, 8:8, 8:10, 10:11, 34:10
**Reporter** [6] - 41:4, 41:5, 41:6, 41:14, 41:15
**REPORTER** [1] - 5:12
**REPORTER'S** [1] - 41:1
**represent** [1] - 26:22
**representatives** [1] - 6:23
**request** [8] - 16:6, 17:6, 17:11, 26:8, 28:20, 29:14, 32:22, 36:24
**requested** [1] - 37:18
**requesting** [1] - 37:2
**required** [2] - 27:8, 31:9
**requires** [1] - 37:10
**reserve** [1] - 21:19
**RESERVE** [1] - 3:11
**resolution** [7] - 7:3, 11:8, 21:10, 22:7, 24:19, 37:10, 39:3
**resolve** [8] - 12:7, 12:14, 14:12, 15:16, 19:18, 21:7, 21:9, 25:8
**resolved** [14] - 7:4, 12:3, 16:5, 16:8, 16:13, 17:25, 18:3, 18:4, 21:13, 28:25, 29:8, 32:5, 40:15
**resolving** [1] - 29:10
**resources** [1] - 23:20
**respect** [1] - 26:18
**respondents** [1] - 28:10
**response** [7] - 8:6, 11:2, 18:22, 24:1,

28:15, 38:3, 38:23
**responsibilities** [1] - 31:16
**responsibility** [1] - 13:21
**responsible** [3] - 13:24, 24:13, 29:24
**rest** [1] - 26:15
**result** [4] - 19:21, 20:13, 20:15, 22:11
**resulted** [2] - 19:16, 33:14
**results** [1] - 11:12
**resumed** [1] - 18:18
**retrospect** [1] - 15:6
**reviewed** [5] - 9:16, 9:23, 9:24, 20:7
**REZNICK** [1] - 5:3
**rise** [3] - 6:7, 26:6, 28:7
**risk** [4] - 9:4, 11:24, 11:25, 12:1
**RMR** [1] - 41:14
**ROBERT** [1] - 5:3
**role** [2] - 27:3, 30:3
**ROOM** [1] - 5:12
**room** [3] - 7:6, 15:14, 40:12
**roughly** [1] - 15:16
**RPR** [1] - 5:12
**Rule** [1] - 17:15
**ruling** [1] - 39:22
**run** [1] - 25:20
**RUSS** [1] - 1:13
**Russ** [1] - 24:24
**RYAN** [1] - 2:18

# S

**s/Cathy** [1] - 41:13
**San** [1] - 24:25
**SAN** [1] - 3:5
**SANFORD** [2] - 3:12, 3:13
**satisfied** [1] - 26:18
**SE** [1] - 5:3
**seated** [2] - 6:8, 28:8
**secondly** [2] - 8:2, 25:15
**secrecy** [1] - 32:3
**secret** [9] - 27:4, 27:6, 31:22, 32:1, 32:2, 32:5, 32:18, 32:24
**section** [9] - 13:8, 13:11, 14:6, 29:14, 29:15, 29:16, 29:23, 30:2, 37:7
**Section** [1] - 29:17
**SEDRAN** [1] - 1:20

**see** [8] - 13:9, 13:10, 13:14, 17:4, 18:10, 18:16, 25:22, 34:4
**Seeger** [2] - 24:14, 31:2
**SEEGER** [2] - 1:23, 1:24
**seeking** [3] - 10:23, 12:11, 22:4
**seemingly** [1] - 30:9
**sent** [5] - 8:17, 16:16, 16:17, 32:12, 33:14
**separate** [1] - 17:3
**SEPTEMBER** [3] - 1:6, 6:2, 28:2
**serious** [1] - 32:19
**serve** [1] - 14:13
**set** [13] - 6:12, 6:13, 6:15, 7:15, 7:19, 8:13, 9:8, 10:24, 11:22, 16:18, 30:4, 33:13
**sets** [1] - 15:15
**setting** [1] - 16:23
**settlement** [21] - 7:8, 7:9, 7:10, 7:11, 7:12, 7:13, 8:12, 9:20, 10:19, 11:21, 13:7, 13:17, 13:18, 13:20, 14:3, 14:10, 14:18, 15:9, 17:12, 29:13, 35:3
**seven** [4] - 12:11, 12:16, 16:6, 17:7
**SEVENTH** [1] - 3:10
**several** [1] - 31:18
**share** [2] - 22:13, 30:13
**SHELLY** [1] - 3:13
**shifting** [1] - 15:3
**short** [2] - 9:2, 9:4
**shortfall** [31] - 7:18, 7:20, 7:21, 8:4, 10:15, 13:23, 18:11, 19:13, 19:14, 19:16, 19:18, 19:19, 20:18, 20:21, 22:18, 27:5, 27:12, 28:21, 28:22, 29:1, 29:5, 29:7, 29:10, 30:23, 30:24, 37:20, 38:12, 38:13
**showed** [1] - 34:7
**showing** [1] - 8:18
**shy** [1] - 38:12
**side** [1] - 30:18
**sign** [1] - 23:9
**signed** [6] - 11:17, 23:14, 23:16, 23:25, 29:21
**significant** [2] - 11:24,

30:3
**similar** [2] - 9:14, 9:15
**similarly** [1] - 27:3
**single** [1] - 24:19
**situated** [1] - 27:3
**situation** [4] - 33:18, 34:19, 39:22, 40:5
**six** [7] - 8:11, 12:16, 16:23, 16:25, 18:7, 22:16, 24:24
**size** [9] - 8:1, 8:6, 12:4, 22:4, 31:4, 32:7, 34:2, 39:13
**SKADDEN** [4] - 4:13, 4:16
**SLATE** [2] - 4:13, 4:16
**slice** [1] - 12:5
**slight** [1] - 9:5
**small** [2] - 9:9, 9:19
**Snapka** [16] - 22:6, 22:8, 22:9, 28:13, 29:21, 31:12, 31:17, 32:2, 32:12, 32:15, 33:24, 35:11, 35:14, 36:14, 38:6, 38:9
**Snapka's** [3] - 22:2, 32:11, 36:2
**so-called** [1] - 31:17
**solely** [1] - 16:2
**sometimes** [1] - 9:25
**somewhat** [1] - 26:15
**sort** [2] - 37:10, 39:6
**sorts** [1] - 39:2
**sought** [2] - 7:8, 22:5
**SOUTH** [2] - 2:11, 2:22
**speaking** [1] - 22:1
**special** [6] - 9:13, 9:14, 10:8, 20:10, 22:23, 25:23
**Special** [5] - 10:11, 19:11, 19:12, 21:3, 22:24
**SPECIAL** [1] - 5:7
**specific** [2] - 29:24, 32:10
**specifically** [5] - 29:5, 29:15, 29:16, 29:17, 31:23
**Specter** [2] - 27:2, 27:3
**spent** [1] - 24:24
**SQUARE** [1] - 4:17
**ST** [2] - 4:24, 4:24
**stand** [1] - 40:18
**standing** [1] - 24:21
**standpoint** [1] - 39:18
**stands** [1] - 27:16
**start** [5] - 8:11, 12:4, 24:7, 25:22, 31:11

**started** [1] - 25:2
**starts** [1] - 24:4
**State** [1] - 41:5
**statement** [2] - 23:9, 26:13
**STATES** [2] - 1:1, 1:9
**States** [2] - 41:6, 41:15
**states** [1] - 17:1
**status** [2] - 17:21, 17:22
**Stay** [1] - 37:17
**stayed** [1] - 23:5
**STENOGRAPHY** [1] - 5:14
**stepping** [1] - 27:11
**steroids** [1] - 21:23
**still** [3] - 27:6, 36:17, 39:9
**stock** [1] - 34:10
**STONE** [1] - 4:10
**strategic** [1] - 32:1
**STRATTON** [2] - 4:3, 4:3
**Stratton** [25] - 6:24, 11:4, 12:11, 13:1, 15:23, 16:16, 26:12, 26:14, 27:4, 27:6, 30:15, 31:2, 31:12, 32:9, 32:12, 32:16, 32:17, 33:1, 33:2, 33:8, 33:15, 35:7, 35:22, 36:6, 36:7
**STREET** [18] - 1:18, 1:21, 1:24, 2:5, 2:8, 2:11, 2:18, 2:22, 3:4, 3:7, 3:10, 3:19, 4:4, 4:8, 4:11, 5:4, 5:8, 5:12
**strongly** [1] - 20:3
**structure** [1] - 6:21
**subject** [1] - 14:15
**submitted** [1] - 39:15
**substantial** [2] - 29:6, 38:12
**successful** [1] - 26:1
**sue** [1] - 35:19
**suggested** [1] - 31:9
**suggesting** [1] - 34:14
**SUITE** [13] - 1:21, 2:5, 2:8, 2:11, 2:15, 3:4, 3:7, 3:13, 3:16, 3:19, 3:22, 5:4, 5:8
**sum** [1] - 35:13
**supercedes** [1] - 17:13
**superseded** [1] - 11:21
**supplement** [2] - 7:14
**support** [2] - 12:12,

31:12
**supposedly** [1] - 39:6
**swords** [1] - 26:10

## T

**talks** [1] - 37:7
**telephone** [1] - 24:3
**temerity** [1] - 39:10
**TEN** [1] - 3:13
**terms** [9] - 7:8, 13:20, 14:5, 14:8, 15:9, 22:2, 36:10, 36:18, 37:5
**testify** [1] - 33:4
**thanking** [1] - 26:7
**THE** [18] - 1:8, 1:9, 1:12, 4:7, 5:8, 6:7, 6:8, 8:13, 24:1, 24:9, 24:11, 26:4, 26:25, 27:14, 28:7, 28:8, 28:24, 34:4, 34:16, 35:17, 35:24, 36:20, 37:1, 37:11, 37:13, 38:3, 38:20, 38:22, 39:1, 39:14, 40:7, 40:9, 40:17
**theirs** [1] - 21:10
**themselves** [2] - 20:4, 30:17
**THEODORE** [1] - 4:20
**thereabouts** [1] - 7:19
**therefore** [1] - 27:4
**therefrom** [1] - 14:15
**THIRD** [1] - 2:22
**THOMAS** [2] - 2:10, 4:17
**thousand** [1] - 38:24
**three** [2] - 9:13, 24:17
**throw** [1] - 25:17
**thunder** [1] - 40:13
**timely** [3] - 11:15, 12:20, 16:3
**TIMES** [1] - 4:17
**TO** [2] - 6:4, 28:4
**today** [5] - 6:8, 7:19, 24:21, 26:7, 27:7
**together** [2] - 6:22, 31:7
**took** [5] - 6:25, 11:19, 31:3, 32:18, 33:3
**toward** [1] - 12:22
**tracking** [1] - 15:22
**transcribed** [1] - 15:14
**transcript** [3] - 6:11, 15:14, 41:8
**TRANSCRIPT** [2] - 1:8, 5:14
**transparency** [1] -

31:21
**treating** [1] - 36:3
**tremendous** [2] - 20:5, 23:18
**trial** [1] - 24:24
**tried** [2] - 25:9, 32:20
**tROY** [1] - 2:11
**true** [2] - 37:6, 41:8
**try** [4] - 10:6, 21:7, 25:8, 32:20
**trying** [4] - 25:20, 32:9, 34:22, 37:24
**turn** [3] - 10:6, 30:22, 36:16
**TWELFTH** [1] - 4:8
**two** [18] - 8:1, 9:12, 11:10, 11:16, 11:18, 11:23, 11:24, 16:22, 17:3, 21:14, 21:20, 22:3, 24:17, 28:24, 29:22, 30:7, 40:13
**TX** [4] - 2:15, 3:14, 3:17, 3:23

## U

**ultimately** [1] - 12:23
**unclear** [2] - 35:7, 39:11
**under** [4] - 11:17, 13:20, 15:8, 37:4
**United** [2] - 41:6, 41:15
**UNITED** [2] - 1:1, 1:9
**up** [12] - 8:17, 10:21, 14:2, 19:1, 22:25, 23:5, 25:18, 27:11, 30:3, 30:6, 37:8, 39:16
**urged** [1] - 20:3
**urgent** [2] - 25:15, 26:2
**URQUHART** [15] - 3:16, 28:12, 29:3, 34:12, 34:23, 35:20, 35:25, 36:23, 37:2, 37:12, 37:16, 38:21, 38:23, 39:2, 40:6
**Urquhart** [2] - 28:12, 38:11
**usage** [1] - 9:4

## V

**valid** [1] - 40:1
**value** [1] - 9:5
**vast** [1] - 30:6
**verge** [1] - 25:5
**view** [7] - 11:20,

14:19, 14:23, 15:4,
15:7, 33:17
**violation** [2] - 15:4,
15:8
**VIOXX** [1] - 1:4
**virtually** [1] - 39:7
**voluntarily** [1] - 26:10
**voluntary** [2] - 23:15,
23:16

## W

**walk** [3] - 8:9, 8:24,
40:13
**walks** [1] - 40:14
**WALNUT** [1] - 1:21
**WALTHER** [1] - 4:10
**WARSHAUER** [1] -
2:3
**WASHINGTON** [2] -
4:9, 4:15
**WEDNESDAY** [3] -
1:6, 6:2, 28:2
**Weinberg** [3] - 26:6,
26:8, 26:19
**WEISS** [1] - 1:23
**WEST** [1] - 3:4
**WHEREUPON** [2] -
27:17, 40:19
**whole** [1] - 14:14
**WILLIAM** [1] - 1:24
**WILLIAMS** [5] - 3:21,
3:22, 4:7, 40:8,
40:10
**Williams** [1] - 40:10
**Wilson** [1] - 14:17
**WIMBERLY** [1] - 4:11
**wire** [1] - 26:17
**withdraw** [6] - 17:16,
17:19, 17:24, 25:12,
26:19, 26:20
**withdrawal** [1] - 34:1
**withdrawing** [2] -
16:7, 26:8
**withdrawn** [5] - 16:21,
16:22, 17:3, 17:10,
17:14
**withdrew** [1] - 17:8
**withheld** [7] - 9:18,
10:9, 12:22, 14:23,
18:7, 19:23, 20:1
**withholding** [1] - 9:10
**WITTMANN** [1] - 4:10
**Woodward** [1] - 26:5
**WOODWARD** [2] -
3:18, 26:5
**written** [2] - 11:5,
26:14

## Y

**year** [1] - 11:7
**yearly** [1] - 26:1
**years** [2] - 24:22,
25:11
**yesterday** [2] - 25:1,
25:2
**YORK** [4] - 1:25, 4:18,
4:21
**YOUR** [1] - 4:14