UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: VIOXX®PRODUCTS LIABILITY LITIGATION | MDL 1657<br>SECTION L<br>JUDGE FALLON<br>MAG. JUDGE KNOWLES |
| THIS DOCUMENT RELATES TO: | **Case Numbers:**<br>2:05-cv-01011 |
| **Smita Sanjanwala** | PLAINTIFFS |
| v. | |
| **Merck & Co., Inc.** | DEFENDANT |

## RESPONSE TO MERCK'S MOTION TO SHOW CAUSE WHY CASE SHOULD NOT BE DISMISSED

On September 20, 2011 (one day before the most recent status conference), Merck issued four (4) deposition notices throughout the country, with dates unilaterally selected by its counsel, Elaine Horn of Williams & Connolly. Ms. Pistilli of Williams & Connolly had used the same tactic on May 20, 2011, when she issued five (5) deposition notices throughout the summer in New York and Pennsylvania despite knowing that the undersigned would be unavailable on most of the dates arbitrarily selected by her.

Ms. Horn has now filed a Motion for To Show Cause Why Case Should Not Be Dismissed ("Mtn. to Dismiss"). Merck seeks discovery sanctions of the harshest degree after one thwarted deposition, and without once having had a personal conversation with the undersigned about Ms. Sanjanwala's deposition. Had Ms. Horn had that personal conversation, the undersigned would have reminded her that this Court substituted Smita's husband, Ulhas Sanjanwala, as the plaintiff herein, given Smita's death on January 1, 2011. *See* Order of May

19, 2011, attached at Exhibit A and *see also* Affidavit of Ann B. Oldfather, attached at Exhibit B. The Affidavit provides context and specifics beyond those contained in this Response.

Since there can be no failure to prosecute when counsel does not provide dates for her deceased Plaintiff's deposition, particularly when Merck is charged with being fully aware of the record, and ought itself to have included in its chronology of events Smita's unfortunate death, the Motion to issue a Rule ought to be denied. The balance of this Response is addressed to how we have gotten to this point.

In the last four months, the undersigned has worked with Merck to schedule depositions with fifteen (15) witnesses, all but one of which required considerable travel and preparation work with multiple parties and treating physicians. Merck cancelled two of those depositions at the last minute, one was cancelled roughly a month out, one more was cancelled by a subpoenaed physician after counsel were already in Harrisburg, Pennsylvania due to a problem with the doctor's schedule, another subpoenaed physician in Newburgh, New York was cancelled due to a scheduling conflict, rescheduled, and then ultimately cancelled again without explanation right before the deposition, one was cancelled by the physician two days before the deposition date since the physician desired to hire counsel (Merck had the day before indicated it might decide not to take the doctor's deposition, although it is still pending as of now), and one was deferred by Merck at the undersigned's request when the other two depositions scheduled in coordination with it were cancelled. Seven (7) depositions have been taken in the last four months in the undersigned's cases alone.

2

And yet, whenever Merck's counsel feels that their wishes aren't met, they issue Notices with unilaterally selected dates,[1] subpoena the doctor and leave it to plaintiffs' counsel to be responsible for, and to be blamed for, all future changes.[2]

When the most recent set of four Notices throughout the country (Kansas, Nebraska and California) were sent the day before the last status conference, the undersigned brought it up for discussion in chambers on September 21, 2011.  The Court told Ms. Oldfather that she would not get a hiatus from Merck's discovery as she tried to work up her own cases, and said the parties were each entitled to pursue discovery and encouraged them to work together. The undersigned took this to heart (as is obvious from the exhibits filed by Merck with its Motion to Dismiss), and promptly proceeded to set up the depositions requested by Merck, scheduling one after the other as each was confirmed on all necessary calendars.  However, Merck would not retract the Notices for the unilaterally selected dates *despite* the Court-ordered cooperation and *despite* counsel's stated unavailability on those dates.  Merck's counsel apparently preferred to hang a Sword of Damocles over its opponent's head.

To make matters worse, Ms. Horn not once but twice accused the undersigned of being untruthful about her schedule.  *See* Mtn. to Dismiss, Exhibit D.  And after considerable personal and professional rearrangements so that the undersigned could accommodate Ms. Horn's request

---

[1]   When Merck unilaterally issued deposition notices on May 20, 2011, the undersigned asked Merck to retract the notices so that dates could be scheduled cooperatively.  *See* attached Exhibit C.  Merck refused to withdraw the notices even with Plaintiff's promised cooperation, *id.,* so Plaintiff's counsel was forced to file for a protective order.  *See* Mtn. for Prot. Order, Rec. Doc. 62990.  PTO 9(A) at Section I. B. sets out the general rule that "[c]ounsel are expected to cooperate with and be courteous to each other .. in scheduling depositions." Section II. C. directs that [a]bsent extraordinary circumstances, counsel shall consult in advance with opposing counsel … [to] schedule depositions at mutually convenient times…".  *Id.*

[2]   "Blamed for" is not used lightly.  Dr. Burick has expressed considerable aggravation *at Plaintiff's counsel* that her deposition has been repeatedly rescheduled as the parties tried to agree on a date.  She was one of the treating physicians unilaterally noticed and subpoenaed by Merck on May 20, 2011.

3

to provide a date for Ms. Elliott before the end of 2011, the undersigned was also accused of intentionally manipulating the dates to interfere with holiday plans. *See* Mtn. to Dismiss, Exhibit G.

It is undoubtedly true that the undersigned should have reminded Ms. Horn that the record reflects (as recently as May, 2011) that Smita Sanjanwala is deceased and cannot be produced. The intent of the email of October 22, 2011, was exactly that — "we request that you withdraw the unilaterally issued Notice. After that we will be glad to discuss." *See* Mtn. to Dismiss, Exhibit E, E-mail of Oct, 22, 2011. At no time did Ms. Horn, Mr. Marvin or anyone from Williams & Connolly call for a personal conversation.[3]

There has been no showing of any failure to prosecute and a Rule should not issue. Merck was fully aware of the record, and its counsel should not have sought Smita's deposition testimony.

                              Respectfully submitted,

                              /s/ Ann B. Oldfather
_____
Ann B. Oldfather
KBA Bar #52553
Liaison Counsel/Lead Counsel
OLDFATHER LAW FIRM
1330 S. Third Street
Louisville, KY   40208
502.637.7200
502.637.3999  (fax)
aoldfather@oldfather.com

---

[3] The undersigned has *never* refused to discuss any issue personally with Merck's counsel, and has indeed repeatedly sought them out for such discussions on issues of concern to her before filing motions. *See* Affidavit of Ann B. Oldfather, attached as Exhibit B.

4

## **CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Response to Merck's Motion to Show Cause Why Case Should Not Be Dismissed has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 31st day of October, 2011.

/s/Ann B. Oldfather  _____
Ann B. Oldfather