**EXHIBIT B**

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: VIOXX®PRODUCTS LIABILITY LITIGATION | MDL 1657<br>SECTION L<br>JUDGE FALLON<br>MAG. JUDGE KNOWLES |
| THIS DOCUMENT RELATES TO: | **Case Numbers:**<br>2:05-cv-01011 |
| **Smita Sanjanwala** | PLAINTIFFS |
| v. | |
| **Merck & Co., Inc.** | DEFENDANT |

**AFFIDAVIT OF ANN B. OLDFATHER**

Comes the Affiant, Ann B. Oldfather, after first being duly sworn, and states as follows:

1. On September 20, 2011, the day before the previous status conference, and as I was in the process of trying to get everything together to leave the office and catch the plan to New Orleans, I received an e-mail with a letter from Elaine Horn and four attached deposition notices. The deposition notices were all set for dates unilaterally selected by Ms. Horn with absolutely no prior consultation with me.

2. It has been my practice during my career to provide deposition dates in order to clear a scheduling hurdle, even if we need to later debate with a court whether the depositions should take place at all. Had Ms. Horn, or any other attorney from Williams & Connolly, called, I would have discussed my schedule and held available dates even though I had an objection to the depositions taking place at all.

3. The next day, the matter was discussed in chambers with Judge Fallon. It was my understanding from Judge Fallon that my desire to schedule depositions and to, in essence, "catch up" with the depositions Merck had previously taken would not trump Merck's desire to continue with the ongoing taking of depositions selected by it. It was my understanding that counsel were to work together to schedule the discovery sought by both sides.

4. I was not then consciously aware that Merck had noticed Smita's deposition in the Sanjanwala case, although that became obvious later as we attempted to comply with the Court's directive to schedule dates for those depositions requested by Merck.

5. Merck had not included any plaintiff-spouses in any of the three other cases where its counsel had noticed plaintiffs' depositions. I did not know whether Merck would want to depose Ulhas Sanjanwala given that it could not depose Smita due to her death on January 1, 2011. Consequently, we contacted our three other clients, (Ms. Russel, Ms. Elliott, and Mr. Jelden), and began the time consuming process of finding deposition dates that could be provided.

6. The process of producing a plaintiff for an out of town deposition requires at a minimum, two to three full days on my schedule (a combined one day for travel, one-half to one day for prep and a *full* day for Merck's depositions). If travel can be arranged, the process *might* be accomplished in two days, but that is extremely difficult under the best of circumstances. With a California deposition, as was sought here, three days is an absolute minimum.

7. On September 20, 2011, Merck sent these notices, I did not have any of those blocks of time available before year end. October already had four days blocked out for scheduled Merck depositions, which effectively left November and December, both holiday months. I certainly didn't have three such blocks of time.

8. Moreover, as I repeatedly informed Merck, each of these specific times selected by them fell on dates where commitments were previously scheduled, as follows:

| Deponent | Scheduled | Conflict |
|---|---|---|
| Donna Russel | November 1 Louisville, KY | Pretrial Conference in Paducah, KY in case against the Boy Scouts of America, and "hold" for depositions, November 1-2, travel October 31 (scheduled on 9/2/11) |
| Sandra Elliott | November 14 San Francisco, CA | Depositions scheduled in wrongful death medical malpractice case in Somerset, KY November 14 through November 18 (set by agreement on August 18, 2011) |
| Todd Jelden | December 1 Lincoln, Nebraska | Plaintiff's expert to be presented for deposition in a medical malpractice death case on December 1 in Kansas City, MO, with travel and preparation on November 30. (confirmed with opposing counsel on September 7, 2011) |
| Smita Sanjanwala | November 2 Overland Park, KS | *See* conflict for Donna Russel, above. Also, it is impossible to present Donna Russel on November 1 and then travel and present a witness in Overland Park, KS on November 2 |

9. While I am unwilling to provide Merck with a day by day account of my calendar between September 20, 2011 and the end of the year, I will be happy to share that with the Court *in camera* at the November 4, 2011 status conference.

10. Since I had a deposition scheduled in Orange County, California, on December 20, 2011 in another matter after which I intended to fly to Portland, Oregon to

3

spend the Christmas holidays with my family in the Northwest (my mother, my adult son, my sister and her family), accompanied by my husband and our daughter, I rearranged those plans and offered Merck the opportunity to depose Ms. Elliott on December 22, 2011, which would leave me the time to fly up to San Francisco late on the evening of December 20, meet with Ms. Elliott on December 21 and present her on December 22. I knew that Merck had asked that no dates be within two business days of a major holiday, but I figured there was no harm in trying as this was the best I could accomplish (offering any date the next week would result in the exact same "within two days" conflict). When Merck accepted December 22, 2011 as a date for Ms. Elliott's deposition, I assumed that its preference was to take the deposition then rather than a date in 2012. At no time was I intending to frustrate any of Merck's counsel's holiday plans, and I will only point out that I postponed what would have been an earlier trip to the Northwest simply to offer Merck this opportunity.

11. I am not used to opposing counsel expressly stating that my representations regarding when I am and am not available are not believable. Nor am I used to opposing counsel repeatedly selecting dates that meet their calendars and issuing notices, and in other circumstances, subpoenas to witnesses on those dates without even attempting a personal conversation with me.

12. Ms. Horn and I are in the midst of a serious dispute regarding the continued production of Dr. Burick for completion of her deposition as noticed by Merck and as partially conducted on September 30, 2011. Before filing any motions on that issue, I called Mr. Marvin last week to see what solutions could be affected. While that

was not wholly successful, we did make some progress. Merck's counsel, by contrast has not once called me about anything - it is all e-mail or letter.

13. I expected Merck's counsel to figure out at any time that it was attempting to take the deposition of a deceased Smita Sanjanwala. Had I known that Ms. Horn would jump straight to the pursuit of sanctions, I would have pointed this out to her sooner, rather than bring the Court into this rather extended example of left hand not knowing what he right hand is doing.

Further the Affiant sayeth naught.

10-31-11
Date

_____
Ann B. Oldfather, Affiant

COMMONWEALTH OF KENTUCKY   )
                          )SS:
COUNTY OF JEFFERSON        )

I, a notary public within the Commonwealth and County aforesaid, do hereby certify that on this 31st day of October, 2011, personally appeared before me, Ann B. Oldfather, to me personally known, who being by me first duly sworn, signed, acknowledged and delivered the foregoing document, as her voluntary act and deed.

My Commission expires: February 19, 2014.

Michelle L. Chavene
Notary Public,
Kentucky at Large

5