# Exhibit B

```
                                                                      1

 1                    UNITED STATES DISTRICT COURT

 2                    EASTERN DISTRICT OF LOUISIANA

 3


 4     ***********************************
       IN RE:   VIOXX PRODUCTS            *      MDL No. 1657
 5                                        *      SECTION "L"
                                          *
 6     PRODUCTS LIABILITY LITIGATION      *
                                          *
 7                                        *      NEW ORLEANS, LOUISIANA
                                          *      MAY 22, 2008
 8     ***********************************

 9
              TRANSCRIPT OF THE MONTHLY STATUS CONFERENCE PROCEEDINGS
10                HEARD BEFORE THE HONORABLE ELDON E. FALLON
                        UNITED STATES DISTRICT JUDGE
11

12     FOR THE PLAINTIFFS'            Russ Herman, ESQ.
       LIAISON COMMITTEE:             Leonard A. Davis, ESQ.
13                                    Herman, Herman, Katz & Cotlar, LLP
                                      820 O'Keefe Avenue
14                                    New Orleans, LA 70113
                                      (504) 581-4892
15
                                      ANDY BIRCHFIELD, Jr., ESQ.
16                                    BEASLEY ALLEN
                                      218 Commerce Street
17                                    Montgomery, AL 36104
                                      (800) 898-2034
18

19     CURATOR, ROBERT M. JOHNSTON    CLAUDIA SANTOYA, ESQ.
                                      Law Offices of Robert M. Johnston,
20                                    LLC
                                      601 Poydras Street
21                                    Suite 2490
                                      New Orleans, LA 70130
22                                    504-561-7799


23
       FOR THE PLAINTIFFS:            JOE GRINSTEIN, ESQ.
24                                    SUSMAN GODFREY
                                      Houston, Texas
25                                    (713) 653-7824
```

1   highest percentage that have gone into the program?

2              MR. MARVIN:  It looks like there are 95 percent right

3   now who have indicated that they intend to enroll.  We actually

4   think that that number will creep up to 97 percent or more as

5   the additional enrollment come in.

6              THE COURT:  Okay, all right.  Thank you.

7              MR. HERMAN:  Your Honor, Chris Seeger, co-lead

8   counsel, is going to deal with items 13, 14 and 15 on your

9   agenda at page 11 and 12.

10             THE COURT:  With the MDL trial package, I'll do that

11  after this meeting.  One of the advantages, as I've said before,

12  for the litigants of an MDL is that those who are not

13  participating in the settlement program of the MDL have the

14  advantage of a trial package.  So, if they wish to try their

15  case, they can receive from the committees a ready-to-go trial

16  package that generally involves and focuses on general causation

17  and those aspects of the claim.  And then they can put on their

18  individual cases by playing the trial package, utilizing the

19  documents that are attached thereto, or readily accessible to

20  them, and put their own witnesses on to deal with specific

21  causation.  I've looked at one trial package and was very

22  impressed with it on the MI's.  And today I'm going to review

23  the stroke trial package, and that will be ready.

24             MR. SEEGER:  Judge, the only thing I'd add to what you

25  just said is that, for anybody who wants access to a package and

1    going to ask -- that it would not object to the entry of PTO 28,
2    that does not bind Your Honor.  I did not know this until I
3    heard it this morning, but it doesn't surprise me because I was
4    one of the people that tried to dial in on November 9 to listen
5    to what I thought was a regular Status Conference, and I never
6    could get through.  And it was that morning that the Settlement
7    Agreement was announced.  And it was also that morning, Your
8    Honor, that you were presented with, I think four Pretrial
9    Orders that Your Honor did sign because you were requested to do
10   so by both sides.  But those Pretrial Orders were not submitted
11   by motion ahead of time, as the counsel around the country had
12   no idea what they contained.  I certainly didn't know what they
13   contained.
14           I can't imagine that the Court would somehow bound
15   those orders just because Merck had had the Plaintiff Steering
16   Committee, who are a lot of the same people that are on the NPC,
17   agree they would submit it.  And I'm here to ask Your Honor to
18   look at PTO 28 -- not all of it -- because the preservation
19   requirements have been met, the interrogatory requirements have
20   been met by those people that didn't file PPS.  Those are all
21   fine.  I'm here to ask Your Honor to look at the requirement
22   that a 26(a)(2), a 26(a)(2) report be filed by these people who
23   we just learned on May 16 that the Plaintiff Steering Committee
24   is not going to take any further steps to develop their case.
25           Your Honor, I cannot accept that that comports with

1   these cases have been going on seven years in the states; four
2   years in the MDL.  We've had discovery.  Thousands of
3   depositions have taken place.  To ask a claimant to submit a
4   report that says they have a condition, and the condition is
5   caused by Vioxx -- I'm not asking for a Daubert report; I'm not
6   asking for even a witness report; I'm not asking for someone to
7   come forward and say, we're going to call this doctor as a
8   witness.  But, for a plaintiff lawyer to have a case for four
9   years and not have any access to a report that says this
10  claimant's injury results from the taking of Vioxx, after seven
11  years if you don't have that in your file, it's a problem, I
12  think.
13          Now, you only had nine cases.  You're very fortunate.
14  I really feel sorry for the individual who has a thousand cases
15  from a lawyer's standpoint, or 2000 cases from a lawyer's
16  standpoint.  What do they do with the cases?  They've had them
17  now for seven years.  They haven't done any work.  They don't
18  have any proof.  They don't have any letter from somebody.  It's
19  difficult for me to understand the difficulty that a lawyer has
20  in getting such a report.  I'm not saying -- I'm not looking for
21  a report from somebody who the lawyer is going to call as a
22  witness, I'm just trying to find out what a viable case is.  And
23  you know and I know that in MDL's there are a lot of cases
24  filed.  Many of them are viable, but a lot of them just are not,
25  and there has to be some way of culling them out, some way that

64

1    but it's not going to -- as a practical matter, some of these
2    matters don't want to go to court.  They don't want a trial.
3    They don't have a case.  And how do I get to the bottom it?
4    How do I separate the wheat from the chaff in these matters
5    other than to say, get me a report from somebody who says,
6    assuming all of this to be true, I think my patient's problem is
7    due to Vioxx?  That might past muster.
8              MS. OLDFATHER:  Well, Judge, I think you've given us a
9    template to answer your question.  You've shown us exactly how
10   to get to the bottom of it, exactly what you did with the MI and
11   the IS.  Appoint a subcommittee.  If it has to be me as a
12   subcommittee of one, I'll work with Merck to try to identify how
13   many people we're talking about.  Am I a lone voice crying in
14   the wilderness, or does anyone else care about this?  I mean, I
15   think that's all that I would ask the Court to determine.  Are
16   there people with other claims who would like to see the general
17   causation developed?  And the Fifth Circuit has told us in the
18   <u>Knight</u> case that the general causation has to come first.
19             THE COURT:  But the general causation has been
20   developed now for four years.
21             MS. OLDFATHER:  Not on --
22             THE COURT:  The problem that you have is that you're
23   going to get -- you're going to get "Daubertized.  You're not
24   going to have a case.
25             MS. OLDFATHER:  Well, Judge, don't we owe them the

1               THE COURT:  The Fifth Circuit has supported Lone Pine
2    through a number of cases, particularly in a proceeding that has
3    been going on this long.
4               MS. OLDFATHER:  Judge, the part about this is -- and I
5    know it's been going on for a long time, long before Your Honor
6    got it.  The part about it is, the Plaintiff's Steering work has
7    done work on 80 percent of the claimants.  They were going to,
8    as far as all of us know, get to the other 20 percent later.
9    They have decided -- communicated to us last week that they are
10   not going to take that on.
11              THE COURT:  Well.
12              MS. OLDFATHER:   How can we then just step back and
13   say, now all the rest of you are on your own when we've been
14   brought to this court by Merck.  I mean, I filed my cases in
15   State Court.  My obligation is to a allege a prima facie case.
16              THE COURT:  I understand your argument, but let me
17   hear from the Plaintiff Steering Committee then, because you've
18   said something that they should be able to respond to.  But, I
19   do understand your argument.  I'll give you an opportunity to
20   rebut after Merck has had an opportunity.
21              MS. OLDFATHER:  Thank you, Judge.
22              THE COURT:  Thank you very much.
23              MR. BIRCHFIELD:  Your Honor, I understand that you
24   have a firm grasp with issue.  You had a hearing by conference
25   call, so I'm going to limit my comments this morning to the role