UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re VIOXX PRODUCTS LIABILITY LITIGATION | ) ) ) | MDL No. 1657 |
| | ) | SECTION L |
| This Document Relates To: | ) ) ) | JUDGE ELDON E. FALLON MAG. JUDGE KNOWLES |
| *County of Santa Clara v. Merck & Co., Inc.*, Docket No. 06-09382 | ) ) ) ) | |

PLAINTIFF'S OPPOSITION TO MERCK'S MOTION FOR JUDGMENT
ON THE PLEADINGS

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................1

II.    SUMMARY OF FACTUAL ALLEGATIONS.................................................2

III.    LEGAL STANDARDS ..........................................................................4

    A.    The Complaint Meets the *Twombly/Iqbal* Standard of Pleading ............................4

        1.    Santa Clara's Claims Are Adequately Pleaded Under Federal Rule of Civil Procedure 9(b) ...............................................................5

IV.    ARGUMENT ......................................................................................7

    A.    New Jersey Law Applies Because New Jersey Has the Most Significant Relationship to Merck's Fraudulent Conduct ............................................7

        1.    New Jersey's Choice-of-Law Test Governs the Case...................................7

        2.    The NJCFA and the Applicable California Consumer Protection Statute Are Both Strong Deterrent Consumer Protection Schemes but Only the NJCFA Provides for Mandatory Treble Damages.................7

        3.    The Choice-of-Law Question in Relation to Merck's Misrepresentations of Vioxx Has Already Been Decided by a New Jersey Court ...............................................................................8

        4.    In 2008 the New Jersey Supreme Court Recognized that in Cases Such as these, the New Jersey Courts Had Long Been Implicitly Using the "Most Significant Relationship" Test and Second *Restatement* Factors ...................................................................10

        5.    Applying the Most Significant Relationship Test Reveals New Jersey Law Governs this Action ...............................................................10

    B.    Santa Clara Properly Seeks Relief Pursuant to the NJCFA ...................................14

        1.    A NJCFA Claim Only Requires a Causal Nexus Between Merck's Omission and Plaintiff's Loss.................................................................14

        2.    The Causal Nexus Between Merck's Conduct and Santa Clara's Injury Has Been Sufficiently Plead.........................................................15

        3.    Merck Relies upon Distinguishable Third Party Payor Cases and Cases Not Litigated Under the NJCFA.....................................................17

**Page**

4.      Ascertainable Loss Can Be Proven Since Santa Clara Was
        Damaged by Receiving Something Other than What Was Promised........18

C.      The NJCFA Is Not Subsumed by the NJPLA Where the Harm Is Caused
        by the False Representation Rather than the Product .............................................19

D.      Santa Clara Is a Consumer with Standing Under the NJCFA ..............................21

V.      UNJUST ENRICHMENT IS A CLAIM ANALYZED UNDER NEW JERSEY
        LAW ...........................................................................................................................23

VI.     THE COURT SHOULD GRANT THE COUNTY LEAVE TO FILE AN
        AMENDED COMPLAINT TO CURE ANY DEFICIENCIES.......................................24

VII.    CONCLUSION.............................................................................................................25

664160_1

# TABLE OF AUTHORITIES

**Page**

## CASES

*Ashcroft v. Iqbal,*
    556 U.S. 662, 129 S. Ct. 1937 (2009)................................................................4, 5

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)...........................................................................................4, 5

*Bosland v. Warnock Dodge, Inc.,*
    964 A.2d 741 (N.J. 2009).....................................................................................18

*Boyes v. Greenwhich Boat Works,*
    27 F. Supp. 2d 543 (D.N.J. 1998) ........................................................................13

*Cent. Reg'l Emps. Benefit Fund v. Cephalon, Inc.,*
    No. 09-3418 (MLC), 2009 U.S. Dist. LEXIS 93636
    (D.N.J. Oct. 7, 2009)............................................................................................22

*Chern v. Bank of Am.,*
    544 P.2d 1310 (Cal. 1976) ...................................................................................25

*Clark v. Superior Court,*
    235 P.3d 171 (Cal. 2010) .......................................................................................8

*Conry v. Daugherty,*
    No. 10-4599 Section: R(1), 2011 U.S. Dist. LEXIS 66658
    (E.D. La. June 22, 2011)..........................................................................................5

*Cooper v. Samsung Electronics America, Inc.,*
    374 Fed. Appx. 250 (3d Cir. 2010)......................................................................12

*Cornett v. Johnson & Johnson,*
    998 A.2d 543 (N.J. Super. Ct. App. Div. 2010)...................................................13

*Cox v. Sears Roebuck & Co.,*
    647 A.2d 454 (N.J. 1994)...............................................................................15, 17

*Craftmatic Sec. Litig. v. Kraftsow,*
    890 F.2d 628 (3d Cir. 1989)...................................................................................6

*Dal Ponte v. Am. Mortg. Express Corp.,*
    No. 04-2152 (JEI), 2006 WL 2403982
    (D.N.J. Aug. 17, 2006)..........................................................................................13

**Page**

*Doe v. MySpace Inc.*,
   528 F.3d 413 (5th Cir. 2008) ...................................................................................4

*Dussouy v. Gulf Coast Inv. Corp.*,
   660 F.2d 594 (5th Cir. 1981) .................................................................................24

*Elias v. Ungar's Food Prods., Inc.*,
   No. 06-2448 (KSH), 2009 WL 2581502
   (D.N.J. Aug. 20, 2009).............................................................................10, 12, 13

*FDIC. v. Bathgate*,
   27 F.3d 850 (3d Cir. 1994)......................................................................................6

*Fenwick v. Kay Am. Jeep, Inc.*,
   371 A.2d 13 (N.J. 1977)........................................................................................15

*Foster Poultry Farms v. Alkar-Rapidpak-MP Equip., Inc.*,
   No. 1:11-cv-00030 ANI SMS, 2011 U.S. Dist. LEXIS 61008
   (E.D. Cal. June 8, 2011).........................................................................................23

*Furst v. Einstein Moomjy, Inc.*,
   860 A.2d 435 (N.J. 2004).......................................................................................15

*GE Capital Corp. v. Posey*,
   415 F.3d 391. (5th Cir. 2005) ..................................................................................5

*Houston v. Ferguson*,
   No. C 10-01881 JSW, 2010 WL 4393873
   (N.D. Cal. Oct. 29, 2010)......................................................................................24

*In re Avandia Mktg., Sales Practices and Prods. Liab. Litig.*,
   No. 10-1637, 2011 WL 5105503 (E.D. Pa. Oct. 26, 2011) ...................................25

*In re Burlington Coat Factory Sec. Litig.*,
   114 F.3d 1410 (3d Cir. 1997)...................................................................................5

*In re Lead Paint Litig.*,
   924 A.2d 484 (N.J. 2007).......................................................................................20

*In re Mercedes-Benz Tele Aid Contract Litig.*,
   267 F.R.D. 113 (D.N.J. 2010).....................................................................11, 12, 23

*In re Mercedes-Benz Tele Aid Contract Litig.*,
   257 F.R.D. 46 (D.N.J. 2009)..........................................................................12, 23

**Page**

*In re Neurontin Mktg. & Sales Practices Litig.*,
   677 F. Supp. 2d 479 (D. Mass. 2010) ..................................................................................17

*In re Rezulin Products Liability Litigation*,
   392 F. Supp. 2d 597 (S.D.N.Y. 2005)..................................................................................22

*In re Schering Plough Corp. Intron/Temodar Consumer Class Action*,
   No. 2:06-cv-5774 (SRC), 2010 WL 2346624
   (D.N.J. June 9, 2010) .........................................................................................................17

*In re Vioxx Products Liability Litigation*,
   239 F.R.D. 450 (E.D. La. 2006)..........................................................................................11

*In re Vioxx Products Liability Litigation*,
   No. MDL 1657 SECTION: L(3), Case No. 05-3700,
   2010 U.S. Dist. LEXIS 142767 (E.D. La. Mar. 31, 2010)....................................................18

*In re Zyprexa Prods. Liab. Litig.*,
   671 F. Supp. 2d 397 (E.D.N.Y. 2009) .................................................................................17

*Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund, v. Merck & Co., Inc.*,
   894 A.2d 1136 (N.J. Super. Ct. App. Div. 2006) ("*Local 68 III*") .......................................9, 11

*Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co., Inc.*,
   929 A.2d 1076 (N.J. 2007) ("*Local 68 IV*") .................................................................9, 14, 16

*Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck*,
   No. ATL-L-3015-04-MT, 2004 WL 3767338
   (N.J. Super. Ct. Law Div. July 8, 2004) ("*Local 68 I*")..........................................6, 19, 21, 22

*Int'l Union of Operating Eng's Local 68 Welfare Fund v. Merck & Co., Inc.*,
   No. ATL-L-3015-03-MT, 2005 WL 2205341
   (N.J. Super. Ct. Law Div. July 29, 2005) ("*Local 68 II*")................................................ *passim*

*Jacobsen v. Osborne*,
   133 F.3d 315 (5th Cir. 1998) ..............................................................................................24

*Jankowski v. Sandor*,
   No. A-0770-1012, 2011 N.J. Super. Unpub. LEXIS 2043
   (N.J. Ct. App. Div. July 27, 2011) .......................................................................................13

*Jatras v. Bank of Am. Corp.*,
   No. 09-3707 (RBK/KMW), 2010 U.S. Dist. LEXIS 135815
   (D.N.J. Dec. 23, 2010) ........................................................................................................16

**Page**

*Klaxon Co. v. Sentor Mfg. Co.*,
   313 U.S. 487 (1941)..................................................................................................7

*Lemelledo v. Beneficial Mgmt. Corp. of Am.*,
   696 A.2d 546 (N.J. 1997)......................................................................................14

*Lettenmaier v. Lube Connection, Inc.*,
   741 A.2d 591 (N.J. 1999)...................................................................................8, 13

*Lowrey v. Texas A & M Univ. Sys.*,
   117 F.3d 242 (5th Cir. 1997) ................................................................................24

*McDarby v. Merck & Co., Inc.*,
   949 A.2d 223 (N.J. Super. Ct. App. Div. 2008)....................................................20

*Miller v. Am. Family Publishers*,
   663 A.2d 643 (N.J. Super. Ct. Ch. Div. 1995)......................................................18

*Mktg. W., Inc. v. Sanyo Fisher (USA) Corp.*,
   6 Cal. App. 4th 603 (1992) ...................................................................................24

*N.J. Citizen Action v. Schering-Plough Corp.*,
   842 A.2d 174 (N.J. Super. Ct. App. Div. 2003).....................................................14

*Nafar v. Hollywood Tanning Sys. , Inc.*,
   No. 06-cv-3826 (DMC), 2008 WL 3821776
   (D.N.J. Aug. 12, 2008)..........................................................................................13

*Nafar v. Hollywood Tanning Sys., Inc.*,
   No. 06-CV-3826 (DMC), 2010 WL 2674482
   (D.N.J. June 30, 2010) .....................................................................................19, 21

*Nance v. Gulf Oil Corp.*,
   817 F.2d 1176 (5th Cir. 1987) ..............................................................................24

*New Hope Pipe Liners, LLC v. Composites One, LLC*,
   No. 09-3222, 2009 WL 4282644 (D.N.J. Nov. 30, 2009) ................................20, 21

*Nikolin v. Samsung Electronics America, Inc.*,
   No. 10-1456 (GGB), 2010 U.S. Dist. LEXIS 110942
   (D.N.J. Oct. 18, 2010)...........................................................................................12

*P.V. ex rel. T.V. v. Camp Jaycee*,
   962 A.2d 453 (N.J. 2008) ("*Camp Jaycee*") ............................................... *passim*

- vi -

**Page**

*Papergraphics Int'l, Inc. v. Correa*,
   910 A.2d 625 (N.J. Super. Ct. App. Div. 2006)....................................................................22

*Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter*,
   607 F.3d 1029 (5th Cir. 2010) ...............................................................................................4

*Sinclair v. Merck & Co., Inc.*,
   948 A.2d 587 (N.J. 2008)......................................................................................................20

*Std. Fire Ins. Co. v. MTU Detroit Diesel, Inc.*,
   No. 07-3827 (GEB), 2009 U.S. Dist. LEXIS 72299
   (D.N.J. Aug. 13, 2009).........................................................................................................21

*Thiedemann v. Mercedes-Benz USA*,
   872 A.2d 783 (N.J. 2005)................................................................................................18, 19

*Torres-Hernandez v. CVT Prepaid Solutions, Inc.*,
   No. 3:08-CV-1057-FLW, 2008 WL 5381227
   (D.N.J. Dec. 17, 2008) ...........................................................................................................5

*Union Ink Co. v. AT&T Corp.*,
   801 A.2d 361 (N.J. Super. Ct. App. Div. 2002)............................................................16, 18

*Van Dusen v. Barrasck*,
   376 U.S. 612 (1964)................................................................................................................7

*Varacallo v. Mass. Mut. Life Ins.Co.*,
   752 A.2d 807 (N.J. Super. Ct. App. Div. 2000)...................................................................16

*Wendling v. Pfizer, Inc.*,
   No. A-1807-06T1, 2008 WL 833549 (N.J. Super. Ct. App. Div. Mar. 31, 2008)...................21

*Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Prods. Liab. Litig. v. Bayer
   Healthcare Pharms. Inc.*,
   No. 3:09-md-02100-DRH-PMF, 2010 U.S. Dist. LEXIS 80758
   (S.D. Ill. Aug. 5, 2010) ........................................................................................................17

*Zorba Contractors. Inc. v. Housing Auth., City of Newark*,
   827 A.2d 313 (N.J. Super. Ct. App. Div. 2003)...................................................................17

**STATUTES, RULES AND REGULATIONS**

28 U.S.C.
   §1407...........................................................................................................................................7

**Page**

Fed. R. Civ. P.

    Rule 9(b) ...................................................................................................5, 6

    Rule 12(b)(6) ...................................................................................................4

    Rule 12(c) ...................................................................................................4

    Rule 15 ...................................................................................................24

    Rule 15(a) ...................................................................................................24

    Rule 15(a)(2) ...................................................................................................24

California Business & Professions Code ("B&P Code")

    §17500 ...................................................................................7, 16, 24, 25

    §17536(a) ...................................................................................................25

California Welfare and Institutions Code

    §17000 ...................................................................................................3

New Jersey Statutes Annotated

    §2A:58C-1(b)(2) ...................................................................................20

    §2A:58C-1(b)(3) ...................................................................................19

    §56:8-1 .................................................................................... *passim*

    §56:8-2 ...................................................................................................15

    §56:8-19 ...................................................................................................21

**SECONDARY AUTHORITIES**

*Restatement (Second) of Conflict of Laws*

    §6(2) ...................................................................................................13

    §6(2)(b)-(c) ...................................................................................................10

    §148 ...................................................................................................8

    §148(2) ...................................................................................................11

## I.     INTRODUCTION

In July 2006, the County of Santa Clara ("Santa Clara" or "Plaintiff") filed a two-count complaint[1] against Merck & Co., Inc. ("Merck" or "Defendant") in New Jersey Superior Court. Merck is the New Jersey corporation that manufactured the prescription drug Vioxx.  On behalf of Santa Clara itself, and a class of similarly situated California Counties that also purchased Vioxx, the Complaint alleges that Merck engaged in a fraudulent marketing campaign that hid known risks of Vioxx in order to maximize Merck's own profit.  ¶¶21-22.[2]

In marketing and promoting Vioxx, Merck concealed material information about its safety and efficacy, including serious risks of adverse cardiovascular events - risks that ultimately forced it to pull Vioxx off the market.  Santa Clara, who was among those targeted by Merck in its aggressive promotion of Vioxx, added Vioxx to its formulary without having this information. Merck's material omissions and unconscionable marketing practices caused Santa Clara to suffer substantial economic losses because it purchased and prescribed Vioxx.  Santa Clara would not have purchased Vioxx if a full and fair disclosure of its risks and benefits had been made.  ¶24.

Merck engaged in a well-planned and highly lucrative campaign in the promotion and sale of Vioxx.  Merck's uniform, deceptive and fraudulent marketing campaign was a huge success: Vioxx became a household name and a blockbuster drug.  ¶9.

The arguments asserted by Merck in its Motion for Judgment on the Pleadings are unavailing.  In a prior case against Merck, the New Jersey Superior Court rejected the very same choice-of-law arguments and standing arguments that Merck now reasserts in this action. *Int'l Union*

---

[1]     Count 1: Violation of the New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§56:8-1, *et seq.* ("NJCFA") and Count 2: Unjust Enrichment.

[2]     Unless otherwise noted, "¶_" references are to Santa Clara's Class Action Complaint and Demand for Jury Trial, filed July 21, 2006.

*of Operating Eng's Local 68 Welfare Fund v. Merck & Co., Inc.*, No. ATL-L-3015-03-MT, 2005 WL 2205341 (N.J. Super. Ct. Law Div. July 29, 2005) ("*Local 68 II*"). Contrary to Merck's arguments, the choice-of-law analysis in this action establishes that New Jersey law, rather than California law, governs this action and thus, Santa Clara has standing to sue there under. Should the Court grant Defendant's motion, Santa Clara requests leave to amend the complaint.

Merck's other arguments fare no better. It is well-established law that the NJCFA does not contain a reliance element. Thus, the core liability question will focus on Merck's conduct. Merck misleadingly claims there are "causation" questions relating to Santa Clara's determination to place Vioxx on its formulary. This argument is a red herring. The true nexus of this case is the uniform material omissions in the information that Santa Clara received from Merck that because of which Santa Clara placed Vioxx on the formulary and prescribed and paid for prescriptions of the drug. Likewise, Merck's arguments regarding New Jersey Products Liability Act ("NJPLA") fail because the complaint centers on Merck's fraudulent conduct and does not seek redress for the physical harms caused by Merck's defective product.

Plaintiff has identified the particular false statements and the specific material omissions that fraudulently induced Plaintiff into purchasing Vioxx, something it would not have done had the adverse effects of Vioxx been known. ¶¶13, 24, 220, 229. Plaintiff has provided more than sufficient notice to Merck of the nature of the fraud claims that Plaintiff is pursuing, and has plead such facts with sufficient particularity that Merck's request for judgment on the pleadings must be denied.

## II.   SUMMARY OF FACTUAL ALLEGATIONS

Santa Clara has the responsibility for funding and operating a public hospital, affiliated pharmacies, community health centers and/or other public healthcare delivery sites. The County-run Health and Hospital System directly funds the costs for prescription drugs, including Vioxx, for the

homeless, the disabled, children, and the poor through the Public Health Service Act of 1992.  ¶1. Under California's Welfare and Institutions Code §17000, Santa Clara is required to provide healthcare to its residents as the "provider of last resort" and to ensure that residents who cannot get care elsewhere have at least their basic healthcare needs met.  ¶23.

Merck initially misrepresented the safety of Vioxx so Merck could get a large share of the market for these types of drugs.  ¶¶45,47, 49. In the year 2000, sales of Vioxx exceeded two billion dollars and Vioxx acquired 23% of the NSAIDs market despite the significantly higher cost of the drug.  ¶9.

Merck's representations that Vioxx was safer than traditional NSAIDs were false. ¶61-62. Despite Merck's marketing and promotion of the drug's safety, Vioxx posed a risk of ulcers and gastrointestinal side effects.  ¶¶42, 174, 180.  Moreover, Vioxx produced a high rate of cardiovascular events, including heart attacks. Merck intentionally failed to disclose the level of risk of cardiovascular events caused by the drug. ¶¶6, 10, 50, 53, 56-57, 74, 78, 87, 110, 111, 115-117, 121, 152-170, 189-191.

The FDA sent specific FDA warning letters to Merck including a July 16, 1999 letter warning Merck that its advertisements failed to provide adequate risk information and a December 1999 letter warning Merck that some of its promotional pieces were "false & misleading." ¶¶173-174.  Further, a September 17, 2001 warning letter from the FDA demanded Merck correct the false and misleading statements made in the course of its Vioxx promotional campaign, stating that Merck's promotional activities and materials were false, were lacking in fair balance, and were otherwise misleading.   The letter stated that Merck had minimized "potentially serious cardiovascular findings" from a Vioxx study, failed to present significant risks associated with Vioxx, and made several unsubstantiated superiority claims with regard to other NSAIDS. ¶¶177, 178.

- 3 -

The Complaint seeks economic damages because Santa Clara was misled into believing Vioxx was safe and then paying higher prices for Vioxx than for traditional NSAIDs. ¶¶13, 20, 21, 229, 235.  Merck initially sold Vioxx at a cost of $72.00 for a monthly supply.  In contrast, NSAIDs on the market already sold for $9.00 or less for the same supply. ¶48.  Traditional NSAIDs were known to pose a risk of ulcer and other gastrointestinal problems.  Merck misrepresented that Vioxx had a significantly reduced risk of these side effects.  ¶¶42, 56, 174, 180.  Merck fraudulently promoted and marketed Vioxx as much safer and more effective than the much cheaper NSAIDs already on the market.  ¶¶5, 8, 43, 47-53.

Merck's false statements and suppression of information led Santa Clara to approve Vioxx as a preferred drug for its formulary because it was advertised as having more benefits and less risks than much cheaper NSAIDs on the market.  ¶59.  As the Complaint makes clear, Vioxx would not have been purchased or placed on the approved list of drugs had Santa Clara received a full and fair disclosure of the risks and benefits from Merck.  ¶¶13, 24, 220.

## III.    LEGAL STANDARDS

### A.    The Complaint Meets the *Twombly/Iqbal* Standard of Pleading

A motion for judgment on the pleadings is subject to the same standard as a motion to dismiss under Rule 12(b)(6). *Doe v. MySpace Inc.*, 528 F.3d 413, 418 (5th Cir. 2008). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts "'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1960 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, (2007).  A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949.

When considering a Rule 12(c) motion, the court must construe the allegations in the complaint in the light most favorable to the non-moving party. *Shandong Yinguang Chem. Indus.*

*Joint Stock Co. v. Potter*, 607 F.3d 1029, 1032 (5th Cir. 2010) ("[A]ll well-pleaded facts are assumed true and are viewed in the light most favorable to the plaintiff."); *Conry v. Daugherty*, No. 10-4599 Section: R(1), 2011 U.S. Dist. LEXIS 66658, at *9-*10 (E.D. La. June 22, 2011).

Plaintiff's claims fully meet the legal standard set forth in *Twombly* and *Iqbal*. Santa Clara's Complaint is replete with "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949; *see also Twombly*, 550 U.S. at 555 (the complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests").

### 1. Santa Clara's Claims Are Adequately Pleaded Under Federal Rule of Civil Procedure 9(b)

Merck argues that because the Complaint includes a claim for violation of the NJCFA, it must meet the heightened pleading standard of Rule 9(b). *See Torres-Hernandez v. CVT Prepaid Solutions, Inc.*, No. 3:08-CV-1057-FLW, 2008 WL 5381227, at *5 (D.N.J. Dec. 17, 2008). Even if this heightened standard applies, the allegations in the Complaint suffice to meet the Rule 9(b) pleading requirement.

Rule 9(b) requires a plaintiff to plead with particularity "the circumstances constituting the fraud or mistake." Fed. R. Civ. P. 9(b). Rule 9(b) should be applied sensibly so as not to allow "defrauders" to hide behind procedure. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1418 (3d Cir. 1997). "Indeed, under rule 9(b), even for allegations of fraud, 'not every alleged misrepresentation need appear in the pleadings.'" *GE Capital Corp. v. Posey*, 415 F.3d 391, 397 n.7. (5th Cir. 2005).[3]

---

[3]   Here and elsewhere throughout Plaintiff's Opposition citations are omitted and emphasis is added.

The fraud allegations should be sufficiently particular "to place the defendant on notice of the precise misconduct with which it is charged.  However, courts have acknowledged that where a plaintiff alleges corporate fraud, they "cannot be expected to have personal knowledge of the details of corporate internal affairs." *FDIC. v. Bathgate*, 27 F.3d 850, 876 (3d Cir. 1994) (citing *Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 645 (3d Cir. 1989)).

Here, as in *Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck*, No. ATL-L-3015-04-MT, 2004 WL 3767338 (N.J. Super. Ct. Law Div. July 8, 2004) ("*Local 68 I*"), the claims against Merck are well pled and sufficiently meet Rule 9(b).  *Id.* at *3 (complaint against Merck under NJCFA for Vioxx misrepresentations met Rule 9(b)).  The FDA warning letters referenced in the Complaint add both more precision and some measure of substantiation to the allegations.  *Id.*

*Local 68 I* is akin to Santa Clara for the reason that, in a case such as this, it is not practicable to allege each and every specific statement made, including date and place, in the complaint.  "There has to be a balance between the need for specificity so that the defendant understands exactly what is being alleged as fraud and the practical ability of the plaintiff to specify each individual misstatement before discovery is completed in a case that involves billions of dollars of sales." *Local 68 I*, 2004 WL 3767338, at *2.  Applying the foregoing legal standard to this case, Santa Clara's Complaint presents sufficient details of the fraud perpetrated by Merck to satisfy Rule 9(b).  Here, as in *Local 68*, the allegations are pled with sufficient particularity to allow Merck to understand what it must defend against, and thus fulfills the purpose of the Rules. *Id.*

## IV.    ARGUMENT

### A.    New Jersey Law Applies Because New Jersey Has the Most Significant Relationship to Merck's Fraudulent Conduct

#### 1.    New Jersey's Choice-of-Law Test Governs the Case

A federal court sitting in diversity jurisdiction must apply the forum state's choice-of-law rules. *Klaxon Co. v. Sentor Mfg. Co.*, 313 U.S. 487, 496-97 (1941). In cases transferred pursuant to 28 U.S.C. §1407, the transferee court applies the substantive law, including the choice-of-law rules, that would have applied in the transferor court. *See Van Dusen v. Barrasck*, 376 U.S. 612, 639 (1964). Because this suit was originally filed in New Jersey State Court, the Court must apply New Jersey's choice-of-law rules.

New Jersey's choice-of-law analysis is a two-step process. First, a court must determine if an actual conflict of law exists. *See P.V. ex rel. T.V. v. Camp Jaycee*, 962 A.2d 453, 455-56 (N.J. 2008) ("*Camp Jaycee*"). If so, the Court must then determine which state has the most significant relationship to the claim at issue as analyzed under the *Restatement (Second). Id.* at 460. This test is applied on an "issue-by-issue basis" and "is qualitative, not quantitative." *Id.*

#### 2.    The NJCFA and the Applicable California Consumer Protection Statute Are Both Strong Deterrent Consumer Protection Schemes but Only the NJCFA Provides for Mandatory Treble Damages

The first question under a New Jersey choice-of-law analysis is whether there is an actual conflict in the laws of the interested states. *Camp Jaycee*, 962 A.2d at 460. This analysis examines the substance of the potentially applicable laws to determine whether "there is a distinction" between them. *Id.* Absent a conflict, there is no choice-of-law analysis to apply. *Id.*

Here, the applicable California consumer protection statute is California Business & Professions Code ("B&P Code") §17500, *et. seq.* the False Advertising Law ("FAL"), which prohibits deceptive advertising. There are minor differences between the states' laws, particularly in

their respective remedial schemes. Whereas the NJCFA creates its deterrent structure by allowing for treble damages, the FAL does not provide the same harsh penalties. *Lettenmaier v. Lube Connection, Inc.*, 741 A.2d 591, 593-94 (N.J. 1999) (NJCFA provides for mandatory treble damages); *Clark v. Superior Court*, 235 P.3d 171, 176 (Cal. 2010) ("[R]estitution is the only monetary remedy authorized in a private action brought under the [UCL].  Restitution is not a punitive remedy.").  While both state statutes are broad consumer protection schemes that do not require proving Plaintiff's reliance on the fraudulent information disseminated by Merck, the NJCFA's stricter punitive remedy warrants application of a choice-of-law analysis in favor of the NJCFA, analyzed further in §III.A.5 *infra*.

### 3.   The Choice-of-Law Question in Relation to Merck's Misrepresentations of Vioxx Has Already Been Decided by a New Jersey Court

In 2005, in another case, *Local 68 II*, which was also brought under the NJCFA arising from Merck's misrepresentations regarding Vioxx.  Merck unsuccessfully argued the same choice-of-law issue that it now puts before this Court.  The Honorable Carol E. Higbee of the New Jersey Superior Court rejected Merck's argument that New Jersey law should not be applied to class plaintiff entities from other jurisdictions that paid for Vioxx manufactured by Merck.  *Local 68 II*, 2005 WL 2205341, at *20 ("there does not appear to be any state with stronger ties to this litigation than New Jersey").  The Court determined New Jersey had the most significant relationship to the occurrence and the parties in light of the factors enumerated by *Restatement (Second) of Conflict of Laws* §148. *Local 68 II*, 2005 WL 2205431, at *18, *19, *21.[4]

---

[4]       As further explained in §III.A.4 *infra*, although this case was decided prior to the New Jersey Supreme Court's 2008 *Camp Jaycee* decision, the court's analysis in *Local No. 68 II* is consistent with current New Jersey "significant relationship" choice-of-law test, derived from the *Restatement (Second)* §148 factors, which would yield the same result if the case were decided today.

The Court found the following facts weighed in favor of New Jersey's stronger factual connection to the litigation: Merck is a New Jersey corporation headquartered in New Jersey; development of Vioxx was "largely completed" at Merck's facility in New Jersey; Merck had monthly approval committee meetings that gave final approval to products, including Vioxx, and several of these meetings where held in New Jersey; Merck issued press releases from its New Jersey headquarters about Vioxx related developments; Merck made many of its decisions about Vioxx's marketing and testing in New Jersey; and communications regarding the labeling of Vioxx took place between the FDA and Merck employees based in New Jersey. *Id.* at *20. Those same factors exist in the action Santa Clara filed against Merck.

The court also focused on the public policy behind the NJCFA:

[T]he key questions are does New Jersey have a compelling public policy interest in applying New Jersey's very strict consumer fraud law under the circumstances that exist in this case? The answer clearly is, yes. Merck is a New Jersey corporation and New Jersey has the most interest in policing and protecting its own corporations. Does New Jersey have any reason not to protect consumers (third party payors) from other states from fraud committed by a New Jersey corporation? The answer is clearly no. The [NJCFA] itself does not limit protection to New Jersey residents.

*Id*. at *21.

Affirming the lower court's decision, the New Jersey Appellate Division, held: "we agree with Judge Higbee that, based upon the evidence she had before her, New Jersey law may properly be applied to the entire plaintiff class, as this state has the most significant relationship to the alleged fraud and the parties." *Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund, v. Merck & Co., Inc.*, 894 A.2d 1136, 1153 (N.J. Super. Ct. App. Div. 2006) ("*Local 68 III*") (holding that applying New Jersey law would not undermine any other states' interest in compensating their injured residents); *rev'd*, *remanded on class certification issues*, *Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co., Inc.*, 929 A.2d 1076 (N.J. 2007) ("*Local 68 IV*").

### 4.     In 2008 the New Jersey Supreme Court Recognized that in Cases Such as these, the New Jersey Courts Had Long Been Implicitly Using the "Most Significant Relationship" Test and Second *Restatement* Factors

Although New Jersey traditionally denominated its conflicts approach as a flexible "governmental interest" analysis, since 1999 New Jersey courts have continuously resorted to the *Restatement* Second in resolving conflict disputes out of tort.  *Camp Jaycee*, 962 A.2d at 455-56, 459-60.  The New Jersey Supreme Court in *Camp Jaycee* made express what had long been implicit in New Jersey choice-of-law decisions: though New Jersey had continued to refer to its choice-of-law approach as a "governmental interest" test, the New Jersey approach is more properly characterized as a "'most significant relationship'" test.  *Id.* at 459.  Thus, whether it had been decided before or after *Camp Jaycee*, the choice-of-law analysis in *Local 68 II* would have yielded the same result because it utilized the Second *Restatement* factors the New Jersey Supreme Court titled the "significant relationship" test.  In fact, "the most significant relationship test embodies all of the elements of the governmental interest test ***plus*** a series of other factors deemed worthy of consideration." *Camp Jaycee* 962 A.2d at 459 n.4 (citing *Restatement (Second) of Conflict of Laws* §6(2)(b)-(c)).

Indeed, the decision in *Elias*, decided prior to 2008,  was upheld because the court's earlier analysis included consideration of the *Camp Jaycee* factors and was consistent with the *Camp Jaycee* test.  *Elias v. Ungar's Food Prods., Inc*., No. 06-2448 (KSH), 2009 WL 2581502, at *1 (D.N.J. Aug. 20, 2009).

### 5.     Applying the Most Significant Relationship Test Reveals New Jersey Law Governs this Action

Assuming the Court determines that there is a conflict between New Jersey and California law, the Court must analyze the *Restatement (Second)* factors to determine which state law should govern the case.  *Camp Jaycee*, 962 A.2d at 460.  An assessment under the *Restatement (Second)* is

- 10 -

issue-by-issue and qualitative, not quantitative; this analysis is not focused solely on the number of contacts with each state, but rather focuses on the significance of those contacts. *Id.* The *Restatement* provides a non-exclusive list of factors to weigh.[5]

In particular, the *Restatement* emphasizes "the purpose sought to be achieved by the relevant tort rules of the potentially interested states, the particular issue and the tort involved." *In re Mercedes-Benz Tele Aid Contract Litig.*, 267 F.R.D. 113, 126 (D.N.J. 2010) (citing *Restatement (Second) of Conflict Laws* §148 comment e). In light of the extent of contacts with the state of New Jersey and New Jersey's interest in holding its corporations accountable for wrongdoings, the factors favor application of the NJCFA.

As this Court recognized in *Vioxx* the place of injury in a consumer fraud case, such as this, is not significant. In *In re Vioxx Products Liability Litigation*, 239 F.R.D. 450 (E.D. La. 2006), this Court expressly recognized that while the law of the plaintiff's home state would apply in bodily injury cases, the choice-of-law analysis is different with respect to purchase claim cases. *Id*. at 456. This Court noted, in *Local 68 III*, the Appellate Division reasoned that in consumer fraud cases "the primary purpose of the tort rule involved is to deter or punish misconduct." *Vioxx*, 239 F.R.D. at 456. Santa Clara's claims are based on the NJCFA, just as in the *Local 68* litigation. Because this action focuses on Merck's fraud and involves no physical injury to Plaintiff, the home state of Santa Clara is a less relevant factor. Here, "the primary purpose involved is to deter or punish misconduct" and New Jersey law applies. *Id*.

---

[5] "(a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations, (b) the place where the plaintiff received the representations, (c) the place where the defendant made the representations, (d) the domicile, residence, nationality, place of incorporation and place of business of the parties, (e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and (f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant." *Restatement (Second) of Conflict of Laws* §148(2).

The stronger factual connection here is in New Jersey.  Merck is domiciled in New Jersey and the conduct at issue in this lawsuit is also centered in New Jersey, where the materials and misrepresentations on Vioxx were created.  *See Elias*, 2009 WL 2581502, at *4 (finding New Jersey law applies as New Jersey had the most significant relationship with claims because it is where defendant was based, the locale where it planned, conducted product development, arranged advertising, created marketing strategies and the state where products were manufactured and shipped); *see also In re Mercedes-Benz Tele Aid Contract Litig.*, 257 F.R.D. 46, 67 (D.N.J. 2009) ("consideration of 'the ***place where the defendant made the representation***,' strongly supports applying the NJCFA to Plaintiffs' claims"); *Local 68* factors discussed in §III.A.3 *supra*.

Merck tries to draw an inaccurate analogy between this action and *Cooper v. Samsung Electronics America, Inc*., 374 Fed. Appx. 250, 255 (3d Cir. 2010), and *Nikolin v. Samsung Electronics America, Inc*., No. 10-1456 (GGB), 2010 U.S. Dist. LEXIS 110942, at *14 (D.N.J. Oct. 18, 2010), cases holding that the location of a company's headquarters alone is insufficient to apply that state's laws.  While *Cooper* and *Nikolin* involved individual consumers purchasing products at local stores, the instant action has its nexus in New Jersey where the misrepresentations and materials on Vioxx were developed. *See Mercedes-Benz*, 257 F.R.D. at 69 (New Jersey law applied when alleged misrepresentations that formed the basis of plaintiffs' consumer fraud claim were made by the company's team in New Jersey that oversaw the marketing and promotion).  Santa Clara's Complaint focuses on purchases of Vioxx made by a County-run Health and Hospital system to treat its patients.  The County decided to place Vioxx on its drug formulary due to Merck's fraudulent misrepresentations regarding the drug's safety and efficacy and incurred the costs of prescribing the drug to its public patients.  The activity at issue, Merck's fraudulent actions, are centralized in New Jersey.  In any case, "the New Jersey Legislature intended the [NJ]CFA to apply to sales made by New Jersey sellers even if the buyer is an out-of-state resident and some aspect of the transaction

- 12 -

took place outside of New Jersey." *Dal Ponte v. Am. Mortg. Express Corp.*, No. 04-2152 (JEI), 2006 WL 2403982, at *6 (D.N.J. Aug. 17, 2006).

The choice-of-law inquiry also looks to the §6[6] factors to ascertain which state has the strongest interest in having their law applied. Here, there is no conflict with interstate comity because the NJCFA, one of the strongest consumer protection statutes in the nation, certainly "does not trample upon other states' interest in protecting their consumers from fraud." *Elias*, 2009 WL 2581502, at *4.

Public policy also strongly favors the application of the NJCFA here. The NJCFA, not the FAL, provides for mandatory treble damages. *Lettenmaier*, 741 A.2d at 593-94. "When one state's laws are stricter than the other state's, applying the more relaxed law interferes with the policies of the stricter state, and undermines the uniformity and predictability of judicial administration." *Jankowski v. Sandor*, No. A-0770-1012, 2011 N.J. Super. Unpub. LEXIS 2043, at *15 (N.J. Ct. App. Div. July 27, 2011) (citing *Cornett v. Johnson & Johnson*, 998 A.2d 543, 552-53 (N.J. Super. Ct. App. Div. 2010). The underlying interests of deterrence are also accomplished in applying New Jersey law, since New Jersey "has a powerful incentive to insure that local merchants deal fairly with citizens of other states and countries." *Boyes v. Greenwhich Boat Works*, 27 F. Supp. 2d 543, 547 (D.N.J. 1998).[7] With such a strong New Jersey state policy to punish a New Jersey-based corporate

---

[6]     Section 6 factors relevant to the choice of applicable rule of law include: "(a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied." *Restatement (Second) of Conflict of Laws* §6(2).

[7]     New Jersey has a strong interest in having its law applied when a New Jersey based company's behavior outside of New Jersey will be affected by a court ruling. *Nafar v. Hollywood Tanning Sys. , Inc.*, No. 06-cv-3826 (DMC), 2008 WL 3821776, at *6 (D.N.J. Aug. 12, 2008).

wrongdoer, forgoing application of the NJCFA would frustrate uniformity and predictability of judicial administration.

New Jersey clearly has the most significant relationship to the facts alleged in Santa Clara's complaint.  In light of the Restatement Second factors and the strong policy reasons to apply the NJCFA to Santa Clara's claim, New Jersey law should govern.

  **B.  Santa Clara Properly Seeks Relief Pursuant to the NJCFA**

Merck attacks the Complaint by arguing that factual support for causation and ascertainable loss are missing.  To do this, Merck attempts to re-define what is required to prove causation and ascertainable loss under the NJCFA.  Merck's view both ignores settled law favoring liberal construction of the NJCFA and runs contrary to the language of the NJCFA itself, which focuses the liability question on the defendant's conduct, not on the internal thought processes or decision-making of aggrieved consumers.

  **1.  A NJCFA Claim Only Requires a Causal Nexus Between
     Merck's Omission and Plaintiff's Loss**

The New Jersey Supreme Court has recognized that the NJCFA's language "evinces a clear legislative intent that its provisions be applied broadly in order to accomplish its remedial purpose, namely, to root out consumer fraud."  *Lemelledo v. Beneficial Mgmt. Corp. of Am.*, 696 A.2d 546, 551 (N.J. 1997).  To state a claim under the NJCFA, a plaintiff must show "three elements: (1) unlawful conduct by the defendants; (2) an ascertainable loss on the part of the plaintiff; and (3) a causal relationship between the defendants' unlawful conduct and the plaintiff's ascertainable loss." *N.J. Citizen Action v. Schering-Plough Corp.*, 842 A.2d 174, 176 (N.J. Super. Ct. App. Div. 2003); *Local 68 IV*, 929 A.2d at 1086 (explaining that the traditional fraud element of reliance is replaced by the requirement that the plaintiff prove ascertainable loss).

- 14 -

The NJCFA makes it unlawful for a person to use "any unconscionable commercial practice, deception, fraud, false pretense, false promise, [or] misrepresentation . . . in connection with the sale or advertisement of any merchandise." N.J. Stat. Ann. §56:8-2; *see Furst v. Einstein Moomjy, Inc.*, 860 A.2d 435, 440-41 (N.J. 2004).   Unlawful acts under the NJCFA "fall into three general categories: affirmative acts, knowing omissions, and regulation violations." *Cox v. Sears Roebuck & Co.*, 647 A.2d 454, 462 (N.J. 1994). If the alleged violation is an affirmative act, intent is not an element.  *See Fenwick v. Kay Am. Jeep, Inc.*, 371 A.2d 13, 15-16 (N.J. 1977) (knowledge or intent not required where defendant affirmatively fails to disclose information as required by statute).  If the alleged violation involves an omission, then plaintiff must show that the defendant acted with knowledge.  *Cox*, 647 A.2d at 461-62.  A violation of consumer protection regulations does not require a showing of intent; the regulations "impose strict liability for such violations." *Id.* at 462.

The essence of Santa Clara's Complaint is that Merck knowingly marketed a defective drug through omissions and misrepresentations of fact, thus allowing the company to make sales that would otherwise have been foreclosed.  Santa Clara would not have placed Vioxx on the formulary, paid for Vioxx, or allowed its doctors to prescribe the drug had Santa Clara known the truth from the onset.  Proving causation under the NJCFA does not require specific proof that Santa Clara relied upon or was influenced by the omissions or misrepresentations of Merck.  Moreover, Merck's arguments relying on third-party payor and class action suits simply have no bearing on Santa Clara's claim.

### 2. The Causal Nexus Between Merck's Conduct and Santa Clara's Injury Has Been Sufficiently Plead

The Complaint is replete with evidence of Merck's broad, systematic campaign of omissions, misrepresentations and aggression to promote Vioxx and to squelch any evidence calling into question its safety and efficacy. ¶¶6,178, 208.  Merck engaged in a long-term, widespread, uniform

- 15 -

pattern of deception to cover up known adverse side effects of Vioxx in order to gain a profit. ¶¶87,116, 142-145. This was accomplished by various methods, including avoiding studies that would highlight the drug's adverse effects, (¶¶41,42) heavy-handed negotiating tactics with the FDA in order to get approval for Vioxx, (¶¶155, 159-163) and even using threats and intimidation tactics to silence critics in the medical profession. ¶¶195-204.  Fraud pervaded every aspect of Merck's actions in developing and marketing Vioxx.  Given Merck's broad, uniform campaign to promote Vioxx, the inclusion of Vioxx on the formulary by Santa Clara and its purchase of the drug constitutes prima facie proof of causation.  *See Varacallo v. Mass. Mut. Life Ins.Co.*, 752 A.2d 807, 817 (N.J. Super. Ct. App. Div. 2000) (where defendant "withheld material information with the intent that consumers would rely on it in purchasing [its product], the purchase of the [product] by a person who was shown the literature would be sufficient to establish *prima facie* proof of causation").

Merck tries to inject reliance into this case under the name of "causation."  Defendant's Memorandum of Law in Support of Motion for Judgment on the Pleadings, filed September 26, 2010 ("Def. Mem.") at 11.  However, to prove causation, "the [CFA] requires merely a causal nexus between the 'method, act, or practice declared unlawful' and the consumer's 'ascertainable loss.'" *Jatras v. Bank of Am. Corp.*, No. 09-3707 (RBK/KMW), 2010 U.S. Dist. LEXIS 135815, at *21 (D.N.J. Dec. 23, 2010).  Merck incorrectly tries to inject reliance into this case under the name of "causation" by arguing that Santa Clara's claim requires individualized proof.  However, such individualized proof goes to "reliance" and the NJCFA does not require a showing of reliance. *Local 68 IV*, 929 A.2d at 1087 ("Our CFA does not require proof that a consumer has actually relied on a prohibited act in order to recover."); *Union Ink Co. v. AT&T Corp.*, 801 A.2d 361, 379-80 (N.J. Super. Ct. App. Div. 2002) (no reliance requirement for NJCFA liability).  In fact, under the NJCFA, much like B&P Code §17500, Merck's misrepresentations of material facts are "unlawful even if no

- 16 -

person was in fact misled or deceived thereby." *Cox*, 647 A.2d at 462; *Zorba Contractors. Inc. v. Housing Auth., City of Newark*, 827 A.2d 313, 322-23 (N.J. Super. Ct. App. Div. 2003).

### 3.   Merck Relies upon Distinguishable Third Party Payor Cases and Cases Not Litigated Under the NJCFA

The cases cited by Merck are readily distinguished because they involve third-party payors *and* are not brought under the NJCFA. *In re Zyprexa Prods. Liab. Litig.*, 671 F. Supp. 2d 397, 433 (E.D.N.Y. 2009) (third-party payor claims brought under Mississippi Medicaid Fraud Control Act, Mississippi Products Liability Act, Mississippi Consumer Protection Act).

Merck primarily relies on cases brought under the Racketeer Influenced and Corrupt Organizations Act ("RICO"). Def. Mem. at 11-13. But, Santa Clara alleges no RICO violations. RICO requires heightened standing requirements: in a RICO case, the plaintiff must show that defendant's mail or wire fraud in violation of RICO was a "'but for' cause" of plaintiff's injury as well as his proximate cause. *In re Neurontin Mktg. & Sales Practices Litig.*, 677 F. Supp. 2d 479, 493, 495 (D. Mass. 2010) ("in a misrepresentation action involving fraudulent marketing of direct claims to doctors, a plaintiff [***third party payor***] or class must prove through individualized evidence"); *see also In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, No. 2:06-cv-5774 (SRC), 2010 WL 2346624, at *11 (D.N.J. June 9, 2010) (third party payor's RICO claims dismissed under a 12(b)(6) motion for lack of jurisdiction and court notes that at this stage of litigation, evidence of injury, causation and wrongdoing is not demanded); *Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Prods. Liab. Litig. v. Bayer Healthcare Pharms. Inc.*, No. 3:09-md-02100-DRH-PMF, 2010 U.S. Dist. LEXIS 80758, at *23 (S.D. Ill. Aug. 5, 2010) (third party payor's RICO claims dismissed because they were too attenuated and direct proximate cause was lacking).

- 17 -

Finally, Merck's reliance on *In re Vioxx Products Liability Litigation*, No. MDL 1657 SECTION: L(3), Case No. 05-3700, 2010 U.S. Dist. LEXIS 142767 (E.D. La. Mar. 31, 2010), is misguided as that case involved claims brought under the Louisiana Unfair Trade Practices Act. The Louisiana Attorney General brought suit through the State's Medicaid program under which Louisiana doctors operated pursuant to a prior authorization system that required each doctor prescribing Vioxx to get prior authorization, thus rendering individualized analysis necessary. Here, this case does not involve Medicaid or the use of a prior authorization system.

### 4. Ascertainable Loss Can Be Proven Since Santa Clara Was Damaged by Receiving Something Other than What Was Promised

Courts have defined the NJCFA's "ascertainable loss" component broadly. *See Thiedemann v. Mercedes-Benz USA*, 872 A.2d 783, 792 (N.J. 2005) ("either out-of-pocket loss or a demonstration of loss in value will suffice to meet the ascertainable loss hurdle"); *Union Ink*, 801 A.2d at 379 ("ascertainable loss occurs when a consumer receives less than what was promised"); *see also Miller v. Am. Family Publishers*, 663 A.2d 643, 655 (N.J. Super. Ct. Ch. Div. 1995) (ascertainable loss established where plaintiffs show that "[f]or their money, they received something less than, and different from, what they reasonably expected in view of defendant's presentations"). The New Jersey Supreme Court has held that "ascertainable loss" means that the plaintiff "must suffer a definite, certain and measurable loss rather than one that is merely theoretical." *Bosland v. Warnock Dodge, Inc.*, 964 A.2d 741, 749 (N.J. 2009).

Here, Plaintiff clearly alleges "out-of-pocket" loss by purchasing Vioxx and receiving less than what was "promised." ¶¶24, 208. Merck conveniently sidesteps the salient fact that it voluntarily pulled Vioxx from the market due to the dangers associated with the drug. To the extent that Santa Clara paid for Vioxx after it was placed on its formulary, it incurred an ascertainable loss because this decision was made without having full knowledge of Vioxx's true risks and benefits,

- 18 -

especially in comparison to alternative, less expensive NSAIDs. ¶¶8, 9, 48, 50, 213.  Had Merck not suppressed the truth about Vioxx, Santa Clara would not have placed it on its formulary in the first place. ¶¶13, 24, 42, 59, 208.

Clearly then, Santa Clara suffered a "loss in value" when it purchased a drug with serious health risks that Merck did not disclose. *See Theidemann*, 872 A.2d at 792-93.  In weighing in on this issue, the trial court in *Local 68* reasoned, "plaintiff has suffered an ascertainable loss by paying for a retail product based on false advertising and 'sharp practices' of the defendant. Certainly, they should be covered by the statute." *Local 68 I*, 2004 WL 3767338, at *5.

Santa Clara does not have to show that indigents, homeless or poor patients failed to benefit from Vioxx or that they suffered cardiovascular injury from taking the drug.  This is not a personal injury claim.  Santa Clara only needs to demonstrate: (i) Merck's material omissions or unconscionable marketing practices; (ii) Santa Clara's ensuing inclusion of Vioxx on its formulary; and (iii) Santa Clara's payment for Vioxx.  The Complaint sufficiently pleads these facts to show ascertainable loss.

## C. The NJCFA Is Not Subsumed by the NJPLA Where the Harm Is Caused by the False Representation Rather than the Product

As a New Jersey District Court recently noted, "the line between consumer fraud and failure to warn (i.e., a sub-type of products liability) claims is not always a clear one."  *Nafar v. Hollywood Tanning Sys., Inc.*, No. 06-CV-3826 (DMC), 2010 WL 2674482, at *8 (D.N.J. June 30, 2010).  Nevertheless, Santa Clara's NJCFA claim clearly falls on the fraud side of the line.

The NJPLA controls "any claim or action brought by a claimant for harm caused by a product." N.J. Stat. Ann. §2A:58C-1(b)(3).  "Harm" is defined in the statute as "(a) physical damage to property, other than to the product itself; (b) personal physical illness, injury or death; (c) pain and suffering, mental anguish or emotional harm; and (d) any loss of consortium or services or other loss

- 19 -

deriving from any type of harm described in subparagraphs (a) through (c) of this paragraph."  N.J. Stat. Ann. §2A:58C-1(b)(2).  This case involves none of these harms.

Merck, in order to support its assertion that Santa Clara's claim should be "subsumed" by the NJPLA, erroneously cites to cases involving *physical* harm to the consumer by the product.  For example, in *McDarby*, the plaintiffs alleged suffering from heart attacks caused by Vioxx. *McDarby v. Merck & Co., Inc.*, 949 A.2d 223, 248 & 276 (N.J. Super. Ct. App. Div. 2008).  Thus, although the court ruled that the NJPLA applied, it was because the economic "harm" on which plaintiffs based their NJCFA claims, "consisted of a loss 'deriving from' personal illness, injury or death, pain and suffering, mental anguish or emotional harm, and loss of consortium," which are all "encompassed within the definition of harm set forth in the PLA."  *Id.* at 278.

Similarly, the New Jersey Supreme Court denied a NJCFA claim because it fell within the NJPLA's scope.  *Sinclair v. Merck & Co., Inc.*, 948 A.2d 587, 596 (N.J. 2008). There, the class plaintiffs sought recovery for the costs of medical monitoring after having taken Vioxx.  *Id*.  The court explained: "despite the broad reach we give to the CFA, the PLA is paramount when the underlying claim is one for harm caused by a product." *Id.*

Nor can Merck gain traction by muddying the distinction between "failure to warn" and "fraudulent representation or omission."  Courts look to the "essential nature of the claims asserted by plaintiffs" to determine whether a claim brought under the NJCFA is disguising a case that should have been brought under the NJPLA.  *New Hope Pipe Liners, LLC v. Composites One, LLC*, No. 09-3222, 2009 WL 4282644, at *2 (D.N.J. Nov. 30, 2009) (citing *In re Lead Paint Litig.*, 924 A.2d 484 (N.J. 2007)).  Claims regarding "design defects, manufacturing defects, or warning defects" are in their "essential nature" products liability actions.  *Id.* at *3.  The New Jersey District Court explains:

> Traditional products liability claims arise out of the situation where a product fails to
> perform as would ordinarily be expected in the absence of any specific promises
> made by the seller or manufacturer.  Representation based claims, by contrast deal

with the situation where a product does not conform to specific representations made directly to the buyer.

*Id.* The court concluded that representation-based harms are distinct from products liability-type harms, and so the NJPLA does not subsume those claims. *Id.*; *see also Nafar*, 2010 WL 2674482, at *11. A New Jersey appellate court made the same distinction stating: "allegations of a misleading advertisement clearly fall within a covered practice of the CFA." *Wendling v. Pfizer, Inc.*, No. A-1807-06T1, 2008 WL 833549, at *7 (N.J. Super. Ct. App. Div. Mar. 31, 2008). Santa Clara's case is governed by the NJCFA, not the NJPLA, because it is based on Merck's misrepresentations and not on damages caused by Vioxx.

### D.  Santa Clara Is a Consumer with Standing Under the NJCFA

The NJCFA provides a private right of action for "[a]ny person who suffers any ascertainable loss of moneys or property, real or personal, as a result of the use or employment by another person of any method, act, or practice declared unlawful" by the Act.  N.J. Stat. Ann. §56:8-19. "Consumer" is not defined in the NJCFA, but the NJCFA limits applicability of the Act to consumer transactions, which are defined by the status of the parties and the nature of the transaction. *Std. Fire Ins. Co. v. MTU Detroit Diesel, Inc*., No. 07-3827 (GEB), 2009 U.S. Dist. LEXIS 72299, at *14-*15 (D.N.J. Aug. 13, 2009).  For a business entity to have standing to sue under the NJCFA, "the business entity must be one who uses (economic) goods." *Id.* at *16.  The New Jersey Supreme Court found that "the limit []that a person under the Act must be the one who actually takes the medication or uses the product is too simplistic." *Local 68 I*, 2004 WL 3767338, at *6 (denying Merck's motion to dismiss the claim under the CFA).

Merck is incorrect in labeling Santa Clara a third-party payor. *See* Def. Mem. at 18.  Santa Clara is a "consumer" who directly purchased Vioxx and provided the drug to indigent residents of Santa Clara County.  Plaintiff runs and is fiscally responsible for the Santa Clara County Valley

- 21 -

Health & Hospital System, which includes a major public hospital, affiliated pharmacies, community health centers and other public healthcare providers within the County. ¶¶1, 22-23.  It funds the costs for prescription drugs, including Vioxx, for the indigent.  ¶23.  Santa Clara directly used Vioxx, purchasing the drug with public funds for use in the pharmacies it runs.  Doctors employed by Santa Clara then prescribed Vioxx to patients.  ¶59.

Because Santa Clara is a direct consumer, the third-party payor cases relied upon by Merck are inapposite. Def. Mem. at 17-18.  Unlike the plaintiff in *Papergraphics*, Santa Clara is not a wholesaler that sold Vioxx for a profit; in fact, Santa Clara made no profit off of Vioxx.  *See Papergraphics Int'l, Inc. v. Correa*, 910 A.2d 625, 629 (N.J. Super. Ct. App. Div. 2006) (wholesale buyer of goods, intending resale is not a consumer; "printer ink cartridges was for resale at a significant profit").  Unlike *In re Rezulin Products Liability Litigation*, wherein the plaintiff was a private insurer that simply paid for the prescription drug, Santa Clara operates its own hospital system, placed Vioxx on its formulary, and used Vioxx to treat the needy and indigent Santa Clara County residents who sought treatment at it's medical facilities.[8]  *See* 392 F. Supp. 2d 597 (S.D.N.Y. 2005).

Finally, *Central Regional* is not on point because unlike the plaintiffs in that case, Santa Clara is not a third-party payor, middleman, or insurer, that simply provides financial assistance for a beneficiary's drug purchase.  *Cent. Reg'l Emps. Benefit Fund v. Cephalon, Inc.*, No. 09-3418 (MLC), 2009 U.S. Dist. LEXIS 93636, at *7-*8 (D.N.J. Oct. 7, 2009) ("third-party payors essentially serve as middlemen or insurers, paying all or part of the cost of a beneficiary's drug in return for a stream of payments from the beneficiary").

---

[8]    Note, a New Jersey superior court has permitted a union health plan to sue Merck for Vioxx under the CFA.  *Local 68 I*, 2004 WL 3767338.

V.    **UNJUST ENRICHMENT IS A CLAIM ANALYZED UNDER NEW JERSEY LAW**

Courts conduct a separate choice-of-law analysis for each claim in a complaint.  *See, e.g.*, *Mercedes*, 257 F.R.D. at 58, 63 (analyzing the unjust enrichment claim separately from the consumer fraud act claim).  Instead of conducting a proper choice-of-law analysis, Merck simply claims that unjust enrichment does not exist in California as an independent cause of action. Def. Mem. at 19.  However, California courts do recognize unjust enrichment if it is not an independent cause of action.  *Foster Poultry Farms v. Alkar-Rapidpak-MP Equip., Inc.*, No. 1:11-cv-00030 ANI SMS, 2011 U.S. Dist. LEXIS 61008 (E.D. Cal. June 8, 2011).

In a choice-of-law analysis under the significant relationship test the Court would first look to whether there is an actual conflict in the laws of the interested states. *Camp Jaycee*, 962 A.2d at 46.  Here, unjust enrichment is not an independent cause of action.  So, the court would determine if there are differences between the elements of unjust enrichment between California and New Jersey.  As explained by the court in *Mercedes-Benz*, New Jersey law would apply to an unjust enrichment claim like Santa Clara's because there are only minor variations in the elements of unjust enrichment under the laws of the various states and these differences are neither material nor create an actual conflict. *Mercedes-Benz*, 257 F.R.D. at 58 (applying New Jersey law to the unjust enrichment claim because there are no material conflicts relating the elements of unjust enrichment between New Jersey and California and the remaining states).  Because Merck was clearly unjustly enriched by their fraudulent marketing of Vioxx (¶¶6, 53, 86-88, 116-117, 143-145), and their concealment of the drug's known risks (¶¶8-9, 20, 58-59), and Santa has adequately plead unjust enrichment, this claim should stand.

## VI.    THE COURT SHOULD GRANT THE COUNTY LEAVE TO FILE AN AMENDED COMPLAINT TO CURE ANY DEFICIENCIES.

If the Court finds that the allegations in the complaint are not sufficient to state a claim, Santa Clara respectfully requests leave to amend. Though the granting of leave to amend is at the sound discretion of the court, "there is a policy of liberality behind Rule 15(a)." *Lowrey v. Texas A & M Univ. Sys.*, 117 F.3d 242, 245 (5th Cir. 1997); *Nance v. Gulf Oil Corp.*, 817 F.2d 1176, 1180 (5th Cir. 1987) ("Federal Rule 15(a) counsels a liberal amendment policy").  Generally, a "court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). In fact, the Fifth Circuit has held that Rule 15 "evinces a bias in favor of granting leave to amend.  The policy of the federal rules is to permit liberal amendment to facilitate determination of claims on the merits and to prevent litigation from becoming a technical exercise in the fine points of pleading." *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981).  Indeed, a motion to amend the pleadings should not be denied "unless there is a substantial reason to do so." *Jacobsen v. Osborne*, 133 F.3d 315, 318 (5th Cir. 1998).

Santa Clara believes it has stated its allegations with sufficient particularity, but, should the Court disagree, justice will best be served by granting leave to amend to include any additional facts necessary to vindicate the rights at stake.  Merck would not suffer any prejudice should the Court grant such leave because the amended complaint would relate to the same set of facts as the original claims.  Further, based on the facts alleged in Santa Clara's Complaint, if this Court were to hold the California law applies, then Santa Clara can seek redress and state a claim pursuant to the California common law claim of fraudulent concealment.  Fraudulent concealment "requires just that – active concealment, or "willful suppression of material fact." *Houston v. Ferguson*, No. C 10-01881 JSW, 2010 WL 4393873, at *5 (N.D. Cal. Oct. 29, 2010); *Mktg. W., Inc. v. Sanyo Fisher (USA) Corp.*, 6 Cal. App. 4th 603, 612-13 (1992).

- 24 -

664160_1

In addition, Santa Clara could pursue claims against Merck for its false and misleading advertising of Vioxx pursuant to California's Deceptive Advertising Statute (B&P Code §17500, *et seq.*). The County Counsel for Santa Clara may bring suit against Merck "in the name of the people" of California and thereby has prosecutorial authority to litigate on behalf of the entire state of California. B&P Code §17536(a); *see also In re Avandia Mktg., Sales Practices and Prods. Liab. Litig.*, No. 10-1637, 2011 WL 5105503 (E.D. Pa. Oct. 26, 2011) (denying GlaxoSmithKline's motion to dismiss Santa Clara County's B&P Code §17500 claim on behalf of the people of California). Merck could then face the imposition of up to a $2,500.00 civil penalty for "each violation" found. B&P Code §17536(a). "Under this section, a statement is false or misleading if members of the public are likely to be deceived. Intent of the disseminator and knowledge of the customer are both irrelevant. . . . The statute affords protection against the probability or likelihood as well as the actuality of deception or confusion." *Chern v. Bank of Am.*, 544 P.2d 1310, 1315 (Cal. 1976). In other words, all that is needed to establish that Merck violated the false advertising statute is to show that the public was "likely to be deceived" about the safety of Vioxx. As alleged in Santa Clara's Complaint, Merck actively engaged in unconscionable and deceptive advertising regarding the safety of Vioxx. Therefore, if the Court holds that California law governs this action, the Complaint could be amended to assert Santa Clara's claim under California law.

## VII.   CONCLUSION

Based upon the foregoing, Plaintiff respectfully submits that Defendant is not entitled to judgment on the pleadings and the motion should be denied.

DATED:  November 7, 2011                  Respectfully submitted,


                                          s/ SETH R. LESSER
                                          SETH R. LESSER

- 25 -

664160_1

KLAFTER OLSEN & LESSER LLP
Two International Drive, Suite 350
Rye Brook, NY 10573
Telephone:  914/934-9200
914-934-9220 (fax)

ROBBINS GELLER RUDMAN
   & DOWD LLP
PATRICK J. COUGHLIN
FRANK J. JANECEK, JR.
CHRISTOPHER COLLINS
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

OFFICE OF SANTA CLARA COUNTY
   COUNSEL
MIGUEL MARQUEZ, County Counsel
WINIFRED BOTHA, Assistant County Counsel
MARCY L. BERKMAN, Deputy County Counsel
JUNIPER L. DOWNS, Lead Deputy County Counsel
JAMES WILLIAMS, Deputy County Counsel
70 West Heading Street
9th Floor East Wing
San Jose, CA  95111
Telephone:  408/299-5900
408/292-7240 (fax)

Attorneys for County of Santa Clara

664160_1

<u>DECLARATION OF SERVICE BY LEXISNEXIS FILE & SERVE</u>

I, the undersigned, declare:

1.      That declarant is and was, at all times herein mentioned, a citizen of the United States and a resident of the County of San Diego, over the age of 18 years, and not a party to or interested party in the within action; that declarant's business address is 655 West Broadway, Suite 1900, San Diego, California 92101.

2.      That on November 7, 2011, declarant served by LexisNexis File & Serve the PLAINTIFF'S OPPOSITION TO MERCK'S MOTION FOR JUDGMENT ON THE PLEADINGS to the parties listed thereon.

3.      I declare under penalty of perjury that the foregoing is true and correct.  Executed this 7th day of November, 2011, at San Diego, California.

s/ Diana L. Houck
DIANA L. HOUCK

664160_1