**COMMON BENEFIT SETTLEMENT AGREEMENT**

**Between**

**Merck & Co., Inc.**

**And**

**CERTAIN TPP PLAINTIFFS' ATTORNEYS IDENTIFIED HEREIN**

**Dated As Of September 14, 2009**

## SETTLEMENT AGREEMENT

This Settlement Agreement (hereinafter referred to as the "Common Benefit Settlement Agreement" or "Agreement") together with its Exhibits, is made as of September 14, 2009 by and between Merck & Co., Inc., a New Jersey corporation (together with its successors and assigns, "Merck"), and certain Common Benefit Attorneys and their respective third party provider/payor clients, identified in Exhibit A.

## RECITALS

WHEREAS, Merck voluntarily withdrew VIOXX from the market on September 30, 2004,

WHEREAS, Common Benefit Attorneys represent private Third Party Provider/Payors who have made claims, in litigation as well as pre-litigation, against Merck in connection with VIOXX,

WHEREAS, Merck, while not admitting any wrongdoing or conceding that third party provider/payors have suffered any cognizable injury, nonetheless wish to resolve the costs and expenses associated with this litigation in accordance with the Private TPP Settlement Agreement and Release, attached hereto as Exhibit B (heretofore referred to as the "TPP Settlement Agreement."),

WHEREAS, Common Benefit Attorneys and their clients similarly wish to resolve these costs and expenses,

NOW THEREFORE, Merck and Common Benefit Attorneys, on behalf of themselves and their respective third party provider/payor clients, agree as follows:

## I. DEFINITIONS

Terms used in this Common Benefit Settlement Agreement shall have the meanings defined below or as otherwise defined in this Agreement:

1.1     "Bank" means Citibank N.A. or other financial institution agreed upon by Merck and Common Benefit Attorneys.

1.2     "Business Day" means any day other than (i) a Saturday or a Sunday or (ii) a day on which commercial banks in the City of New York, New York are required or

COMMON BENEFIT SETTLEMENT AGREEMENT

authorized to be closed.

1.3     "Honorable Eldon E. Fallon" means "the Honorable Eldon E. Fallon of the United States District Court for the Eastern District of Louisiana.

1.4     "Common Benefit Fees and Expenses" has the meaning given in Article V of the Agreement.

1.5     "Common Benefit Fees and Expenses Payment" shall mean the amount of FIFTEEN MILLION DOLLARS ($15,000,000) that shall be paid by Merck for the resolution of common benefit fees and expenses that are the subject of this agreement.

1.6     "Common Benefit Fees and Expense Fund" is comprised of those funds awarded from the Common Benefit Fees and Expenses Payment, in accordance with the provisions of Article 3 of this Agreement.

1.7     "Date of Execution" shall be considered the date on which Merck executes the Agreement.

1.8     "Effective Date" means the day of the execution of the Agreement by Merck.

1.9     "Escrow" means the escrow established with the Escrow Agent by Merck and Common Benefit Attorneys pursuant to the Escrow Agreement with an account in Citibank N.A. or other financial institution agreed to by the parties ("Escrow Account"), which shall be used to retain the Common Benefit Fees and Expense Fund until disbursed according to the decision of the Honorable Eldon E. Fallon or the Administrator in accordance with the provisions of Article 5 herein.

1.10    "Escrow Agent" shall be Citibank N.A. or such other person or entity agreed to by counsel for the parties or selected under the terms of the Escrow Agreement."

1.11    "Escrow Counsel" shall mean Christopher A. Seeger of Seeger Weiss LLP.

1.12    "Escrow Agreement" is the form of agreement attached as Exhibit C, which Merck and Common Benefit Attorneys expressly authorize the individuals set forth in Exhibit C as the designated authorized representatives of Merck and Common Benefit Attorneys, through escrow counsel, respectively, to enter into together with the Escrow Agent, on behalf of and for the benefit of Merck and Common Benefit Attorneys, respectively,

1.13    "MDL " or "MDL court" means the court and all of the cases before the court in MDL 1657.

COMMON BENEFIT SETTLEMENT AGREEMENT

## II. REPRESENTATIONS, WARRANTIES AND OBLIGATIONS OF COMMON BENEFIT ATTORNEYS

Section 2.1        Representations and Obligations of Common Benefit Attorneys

2.1.1        Common Benefit Attorneys acknowledge and agree that Merck, and its counsel have not participated and will not participate in any way in connection with the process for determining the amount of common benefit fees and expenses or the award of funds among counsel as common benefit fees and expenses undertaken under this Common Benefit Settlement Agreement, and that Merck and its counsel are not in any way responsible these allocations or for any fees, expenses or costs to Common Benefit Attorneys or their respective clients or others, other than the one time payment into escrow of the Aggregate Settlement Payment and the Common Benefit Fees and Expenses Payment following the Effective Date of this Agreement.

2.1.2        Common Benefit Attorneys agree that they will establish a process consistent with Articles V and VI of this Agreement that allows plaintiffs' attorneys to make an application for costs and fees.

2.1.3        Common Benefit Attorneys further agree that based on these applications, reasonable allocations of funds will be dispersed for payment of fees and costs from the Common Benefit Fees and Expense Fund.

## III. REPRESENTATIONS, WARRANTIES AND OBLIGATIONS OF MERCK

Section 3.1        Representations and Obligations of Merck

3.1.1        Merck Co., Inc. represents and warrants that it is a corporation duly organized, validly existing and in good standing under the laws of the State of New Jersey.

3.1.2        Merck represents and warrants that all required corporate approvals have been obtained, permitting Merck's undersigned representative to execute this Agreement and deliver it to Settling Plaintiffs, which will be binding upon Merck.

3.1.3        Merck represents and warrants that its execution, delivery, and performance of this Agreement will not contravene or constitute a default under any provisions of applicable law or regulation or any agreement, judgment, injunction, order, decree, or contractual restriction binding on it.

3.1.4        Within ten (10) Business Days following the execution and delivery of the Agreement and Common Benefit Escrow Agreement by Merck to Common Benefit Attorneys, or on the date identified by Article 6.1.3 of the Private TPP Settlement Agreement and Release provided that the Private TPP Settlement Agreement and Release is executed by all of its parties, whichever date is later, Merck shall cause the

COMMON BENEFIT SETTLEMENT AGREEMENT

Common Benefit Fees and Expenses Payment, a sum in the amount of FIFTEEN MILLION DOLLARS ($15,000,000), to be deposited into the Escrow Account.

       3.1.5    It is the express intention of the parties to this Agreement that the payment of the Common Benefit Fees and Expenses Payment compensates Common Benefit Attorneys and along with the Private TPP Settlement Agreement serves to fully compensate Plaintiffs and Plaintiffs' attorneys for all Released Claims and Liabilities against the Released Parties.

## IV.  ADMINISTRATION

Section 4.1    <u>Authority and Appointment</u>

       4.1.1    This is a private agreement.  At the request of the Parties, The Honorable Eldon E. Fallon has agreed to preside over the award and disbursement of the Common Benefit Fees and Expenses as specified by this agreement.

       4.1.2    In the event that for any reason The Honorable Eldon E. Fallon is unable to preside over the administration of this Agreement as set forth herein, Merck and the Common Benefit Attorneys will agree on the appointment of an Administrator to preside over the administration of this Agreement.  In the event an Administrator is appointed, all provisions pertaining to the authority, capacity and protections of The Honorable Eldon E. Fallon in connection with the administration of this Agreement as set forth herein shall apply with equal force to the Administrator.

       4.1.3    Common Benefit Attorneys and their respective third party provider/payer clients agree that authority over the process for administering the award and disbursement of common benefit fees and common benefit expenses contemplated by the Agreement resides with The Honorable Eldon E. Fallon to exercise that authority, as such authority is specified in this Agreement.

       4.1.4    Any decision of The Honorable Eldon E. Fallon with regard to the award and disbursement of Common Benefit Fees and Expenses shall be final and Non-Appealable and binding on the Parties and (without limitation of the foregoing) the Parties shall take all actions required in order to implement such decision.

       4.1.5    The Honorable Eldon E. Fallon shall have the authority to perform all actions, to the extent not expressly prohibited by, or otherwise inconsistent with, any provision of this Agreement, deemed by the Honorable Eldon E. Fallon to be reasonably necessary for the efficient and timely administration of this Agreement.

       4.1.6    The Honorable Eldon E. Fallon may create administrative procedures, supplementary to (and not inconsistent with) those specified herein, that provide further specific details about how Common Benefit Fees and Expenses are determined and paid; provided, however, that such procedures comply with the terms of

COMMON BENEFIT SETTLEMENT AGREEMENT

this Agreement.

4.1.7    The Honorable Eldon E. Fallon or any agent or employee of The Honorable Eldon E. Fallon, shall not be liable for his acts or omissions, or those of any agent or employee of The Honorable Eldon E. Fallon, in connection with this Agreement except, with respect to each such Person, for such Person's own willful misconduct. Nothing in this Paragraph 4.1.7 confers any privity of contract with, or other right to institute any action against, The Honorable Eldon E. Fallon

## V.  ATTORNEYS' FEES AND EXPENSES

5.1    <u>Individual Counsel Attorneys' Fees</u>

5.1.1    Neither Merck nor any other Released Party, nor any "Settling Party"'or "Releasing Party" as such terms are defined in the TPP Settlement Agreement, shall have any responsibility whatsoever for the payment of Common Benefit Attorneys' fees or expenses, including any  fees and expenses incurred in connection with the administration of the procedures of this Agreement.  Any amounts paid pursuant to the provisions for common benefit fees and the reimbursement of common benefit expenses as set forth in this Article V shall be paid and disbursed from the Common Benefit Settlement Fund Payment and that neither Merck nor any other Released Party will be called upon the make any payments in addition to the Common Benefit Fund Payment for any reason in connection with common benefit fees or expenses or this Agreement.

5.2    <u>Common Benefit Fees and Reimbursement of Common Benefit Litigation Expenses</u>

5.2.1    To ensure that the Common Benefit Attorneys are fairly compensated but that their fees are in conformance with reasonable rates, an amount shall be deducted from the Common Benefit Fee and Expense Fund and utilized for the payment of common benefit fees and common benefit expenses to the Common Benefit Attorneys.  In no event shall the Common Benefit Fee and Expense Fund Payment exceed Fifteen  Million Dollars ($15,000,000.00). The award and payment of Common Benefit Fees and Expenses to the Common Benefit Attorneys from the Common Benefit Fees and Expense Fund shall be referred to the Honorable Eldon E. Fallon for determination and administration upon due consideration by him in accordance with established procedures for notice,  objection and hearing in conformance with Fifth Circuit precedent.  *See, e.g.*, Blum v. Stenson, 465 U.S. 886, 900 (1984); Copper Liquor, Inc. v. Adolph Coors Co., 624 F.2d 575, 583 n. 15 (5th Cir. 1980); Johnson v. Ga. Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974); Strong v. BellSouth Telecomms., Inc., 137 F.3d 844, 851-52 & n. 5 (5th Cir. 1998); Forbush v, J.C. Penney Co., 98 F.3d 817, 823 (5th Cir. 1996); Turner v. Murphy Oil USA, Inc., 472 F.Supp.2d 830 (E.D.La. 2007).

5

COMMON BENEFIT SETTLEMENT AGREEMENT

5.2.2    In connection with the operation of Paragraph 5.2.1, the Common Benefit Attorneys shall propose to the Honorable Eldon E. Fallon that Christopher A. Seeger of Seeger Weiss LLP and Russ M. Herman of Herman, Herman, Katz & Cotler be designated to be responsible for devising and recommending a plan of allocation of awards of Common Benefit Fees and Expenses. Mr. Seeger and Mr. Herman, or any other designee or designees of the Honorable Eldon E. Fallon, shall be guided by objective measures of Common Benefit Attorneys' contributions, in addition to their subjective understanding of the relative contributions of counsel towards generating the Aggregate Settlement Amount in accordance with established fee jurisprudence subject to the approval of the Honorable Eldon E. Fallon. The Honorable Eldon E. Fallon's final determination of Common Benefit Fees and Expenses shall not be subject to any appeal or other appellate review, including mandamus review.

5.2.3    All fees, costs and expenses incurred in connection with the operation of Paragraphs 5.2.1 through 5.2.2, inclusive, shall be the sole responsibility of the Plaintiffs and shall be paid from the Common Benefit Fees and Expenses Fund.

5.2.4    Once the Common Benefit Fees and Expenses are approved by the Honorable Eldon E. Fallon and distributed, any remaining funds shall be transferred to the Aggregate Settlement Fund and distributed to the Settling Plaintiffs as governed by the Private TPP Settlement Agreement and Release.

5.2.5    Merck takes no position regarding, and has no responsibility or Liability for, the amount of the Common Benefit Fees and Expense Fund, the award or any amounts awarded as common benefit fees and expenses under this Article, and waives the right to contest these matters.

## VI.  REPRESENTATIONS AND WARRANTIES OF COMMON BENEFIT ATTORNEYS

6.1    <u>Representations and Warranties of Settling Plaintiffs</u>

6.1.1    Each Settling Plaintiff acknowledges and agrees that Merck, the Released Parties, and their counsel have not participated and will not participate in any way in connection with the allocation of Common Benefit Fees and Expenses Fund, that Merck and its counsel will not participate in connection with the process for determining the amount of common benefit fees and expenses or the award of funds among counsel as common benefit fees and expenses, and that Merck and its counsel are not in any way responsible these allocations or for any fees, expenses or costs to Settling Plaintiffs or their counsel or to any Common Benefit Attorneys, other than the one time payment into escrow of the Common Benefit Fee and Expenses Payment.

COMMON BENEFIT SETTLEMENT AGREEMENT

# VII.  NO ADMISSIONS

Section 7.1.    No Admissions

7.1.1    Neither this Agreement nor any exhibit, document or instrument delivered hereunder nor any statement, transaction or proceeding in connection with the negotiation, execution or implementation of this Agreement, is intended to be or shall be construed as or deemed to be evidence of an admission or concession by Merck of any fault, Liability, wrongdoing, fact, legal position, or damages or of the truth of any allegations asserted by any plaintiff or claimant against it, or as an admission by Settling Plaintiffs of any lack of merit in their claims.

7.1.2    No party to this Agreement or their counsel shall seek to introduce and/or offer the terms of this Agreement, any statement, transaction or proceeding in connection with the negotiation, execution or implementation of this Agreement, or any statements in the documents delivered in connection with this Agreement, or otherwise rely on the terms of this Agreement, in any judicial proceeding, except insofar as it is necessary to enforce the terms of this Agreement (or in connection with the determination of any income tax Liability of a party or any insurance coverage) or any instrument executed and delivered pursuant to this Agreement.  If a Person seeks to introduce and/or offer any of the matters described herein in any proceeding against Merck or any Released Party, the restrictions of this Section 7.1.2 shall not be applicable to Merck with respect to that Person.

7.1.3    Nothing in this Article 7 applies to (i) any action to submit into evidence in any legal proceeding (past, present or future) any Release, any Stipulation of Dismissal With Prejudice or Motion to Dismiss that provided to Merck in accordance with the terms of this Agreement in order to enforce such releases or dismissals, or (ii) any other action by Merck in relation to any of those releases and dismissals.

# VIII.  MISCELLANEOUS

Section 8.1    Notice by Parties

8.1.1    Any notice, request, instruction or other document to be given by Merck to Common Benefit Attorneys, or to be given by Common Benefit Attorneys to Merck, under this Agreement shall be in writing and delivered by mail, by Federal Express, by facsimile or, to the extent specified hereunder, by electronic mail, as follows, or as otherwise instructed by a notice delivered to the other Party pursuant to this subsection:

COMMON BENEFIT SETTLEMENT AGREEMENT

      8.1.1.1     If to Merck:

Bruce N. Kuhlik
Senior Vice President and General Counsel
Merck & Co., Inc.
One Merck Drive
P.O. Box 100 (WS3A-15)
Whitehouse Station, NJ 08889-0100
Telecopier: (908) 735-1244
Email: Bruce_Kuhlik@Merck.com

-and-

John H. Beisner, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
1440 New York Avenue, N.W.
Washington, D.C.  20005
Telecopier: (202) 661-8301
Email: John.Beisner@skadden.com

      8.1.1.2     If to Common Benefit Attorneys:

Christopher A. Seeger
Seeger Weiss LLP
One William Street
New York, NY 10004
Telecopier: (212) 584-0799
Email: cseeger@seegerweiss.com

      8.1.2     Any such notice, request, instruction or other document provided pursuant to this Article shall be deemed to have been given as of the date so transmitted by facsimile or electronic mail, on the next Business Day when sent by Federal Express or five Business Days after the date so mailed, provided that if any such date on which any such notice or other communication shall be deemed to have been given is not a Business Day, then such notice or other communication shall be deemed to have been given as of the next following Business Day.

8.2    <u>Governing Law</u>

      8.2.1    This Agreement shall be governed by and construed in accordance with the law of New York without regard to any choice-of-law rules that would require the application of the law of another jurisdiction.

COMMON BENEFIT SETTLEMENT AGREEMENT

8.3     Waiver of Inconsistent Provisions of Law; Severability

    8.3.1     To the fullest extent permitted by applicable law, Merck and Settling Plaintiffs each waives any provision of law (including the common law), which renders any provision of this Agreement invalid, illegal or unenforceable in any respect.

    8.3.2     Any provision of this Agreement which is prohibited or unenforceable to any extent or in any particular context shall be ineffective, but such ineffectiveness shall be limited as follows: (i) if such provision is prohibited or unenforceable only in or as it relates to a particular jurisdiction, such provision shall be ineffective only in or as it relates to (as the case may be) such jurisdiction and only to the extent of such prohibition or unenforceability, and such prohibition or unenforceability in or as it relates to (as the case may be) such jurisdiction shall not otherwise invalidate or render unenforceable such provision (in such or any other jurisdiction); (ii) if (without limitation of, and after giving effect to, clause (i)) such provision is prohibited or unenforceable only in a particular context (including only as to a particular Settling Plaintiff or under any particular circumstance or circumstances), such provision shall be ineffective, but only in such particular context; and (iii) without limitation of clauses (i) or (ii), such ineffectiveness shall not invalidate any other provision of this Agreement.  In any event, upon any such determination that any term or other provision is invalid, illegal or unenforceable, the Merck and the Settling Plaintiffs shall negotiate in good faith to modify this Agreement so as to effect the original intent of the Parties as closely as possible to the fullest extent permitted by applicable law.

8.4     Facsimile Signatures

    8.4.1     This Agreement and any amendments thereto, to the extent signed and delivered by means of a facsimile machine or electronic scan (including in the form of an Adobe Acrobat PDF file format), shall be treated in all manner and respects as an original agreement and shall be considered to have the same binding legal effect as if it were the original signed version thereof delivered in person.

8.5     Construction

    8.5.1     With regard to each and every term and condition of this Agreement, the parties thereto understand and agree that the same have or has been mutually negotiated, prepared and drafted, and if at any time the parties thereto desire or are required to interpret or construe any such term or condition or any agreement or instrument subject hereto, no consideration shall be given to the issue of which party thereto actually prepared, drafted or requested any term or condition of thereof.

8.6     Entire Agreement

    8.6.1     This Agreement contains the entire agreement between the Parties with respect to the subject matter hereof and supersedes and cancels all previous agreements, negotiations, and commitments in writings between the Parties hereto with respect to the subject matter hereof.

COMMON BENEFIT SETTLEMENT AGREEMENT

8.7     Headings; References

    8.7.1    The headings of the Articles and Sections herein are inserted for convenience of reference only and are not intended to be a part of or to affect the meaning or interpretation of this Agreement.  Any reference to an Exhibit shall be deemed to refer to the applicable Exhibit attached hereto. The words "include" and "including" and words of similar import when used in this Agreement or any Exhibit hereto are not limiting and shall be construed to be followed by the words "without limitation," whether or not they are in fact followed by such words. The definitions contained in this Agreement or any Exhibit hereto are applicable to the singular as well as the plural forms of such terms.  Words of any gender (masculine, feminine, neuter) mean and include correlative words of the other genders.  As used herein or in any Exhibit hereto, the term "dollars" and the symbol "S", shall mean United States dollars. References herein to instruments or documents being submitted "by" any Party include (whether or not so specified) submission of the same on behalf of such Party by its Counsel whether or not so specified, provided that if any particular instrument or document is required herein to be executed by a particular Party, it must (unless otherwise expressly specified herein) be so executed by such Party.  References herein to any particular Section (such as, for example, Section 5.2) shall be deemed to refer to all sub-Sections of such Section (such, as for example, Section 5.2.1, 5.2.2, etc.), all sub-sub-Sections of such sub-Sections, and so on; the corresponding principle applies to all references herein to any particular sub-Section, sub-sub-Section and so on.


8.8     No Third Party Beneficiaries; Assignment

    8.8.1    No provision of this Agreement or any Exhibit thereto is intended to create any third-party beneficiary to this Agreement except that "Settling Plaintiffs" and "Releasing Parties" as such terms are defined in the TPP Settlement Agreement are third party beneficiaries of this Agreement, it being the intention of the Common Benefit Attorneys that the "Settling Plaintiffs" and "Releasing Parties" will be immune from any claims of any attorneys who provided services in connection with Vioxx litigation before the MDL Court or the New Jersey Superior Court for Atlantic County  for compensation or reimbursement of expenses.  For the avoidance of doubt, nothing in this Section limits or modifies the third-party beneficiary provisions of any Release or Stipulation of Dismissal With Prejudice.  This Agreement and all of the provisions hereof shall be binding upon and inure to the benefit of the Parties hereto and their respective successors and permitted assigns; provided, however, that neither this Agreement nor any of the rights, interests, or obligations hereunder may be assigned by Settling Plaintiffs without the prior written consent of Merck.  Any assignment in violation of this Section shall be null and void *ab initio*.


8.9     Amendments; No Implied Waiver

    8.9.1    This Agreement may be amended by (and only by) an instrument signed by Merck, on the one hand, and the Settling Plaintiffs, on the other hand.  Except

COMMON BENEFIT SETTLEMENT AGREEMENT

where a specific period for action or inaction is provided herein, no failure on the part of a Party to exercise, and no delay on the part of either Party in exercising, any right, power or privilege hereunder shall operate as a waiver thereof; nor shall any waiver on the part of either Party of any such right, power or privilege, or any single or partial exercise of any such right, power or privilege, preclude any other or further exercise thereof or the exercise of any other right, power or privilege; nor shall any waiver on the part of a Party, on any particular occasion or in any particular instance, of any particular right, power or privilege operate as a waiver of such right, power or privilege on any other occasion or in any other instance.

8.10    Counterparts

8.10.1    This Agreement may be executed in any number of counterparts, each of which shall be an original and all of which shall together constitute one and the same instrument.  It shall not be necessary for any counterpart to bear the signature of all Parties hereto.

8.10.2    Counsel for any party shall be authorized to assemble a composite counterpart which shall consist of one copy of each page, except the signature pages, together with multiple counterpart signature pages executed on behalf of every party to this Settlement Agreement.  The composite counterpart may then be used by any party for all purposes as the complete signed and executed Settlement Agreement among the parties.

8.11    Tax Matters

8.11.1    The Parties agree to characterize the Escrow Account established under the Escrow Agreement for federal, state and local income tax purposes in such manner as is reasonably determined by Merck, including without limitation as a "qualified settlement fund" within the meaning of Treasury Regulation Section 1.468B-1 or as a grantor trust pursuant to an election under Treasury Regulation Section 1.468B-1(k) or otherwise.  The Escrow Agent and Merck shall timely provide the other with such material and relevant information as and to the extent reasonably requested by the other party in connection with any tax filing or the payment of any taxes or any private letter ruling regarding the tax status of the Funds.

8.12    Further Assurances

8.12.1    From time to time, Merck and each Settling Plaintiff shall take such reasonable actions consistent with the terms of this Agreement as may reasonably be requested by the other Party, and otherwise reasonably cooperate with the other Party in a manner consistent with the terms of this Agreement as reasonably requested by such other Party as may be reasonably necessary in order further to effectuate the intent and purposes of this Agreement and to carry out the terms hereof.

COMMON BENEFIT SETTLEMENT AGREEMENT

8.13    Representation and Voluntary Execution

8.13.1    Each party to this Common Benefit Agreement represents and acknowledges that it has been represented by counsel with respect to this Agreement and any and all matters covered by or related to such Agreement. Each party has been fully advised with respect to all rights which are affected by this Agreement. Each party signing represents and warrants that it read, knows, and understands the contents of this Agreement, has executed this Agreement voluntarily, and has not been influenced by any person or persons or attorney acting on behalf of any other party. It is further represented and warranted that this Agreement is executed by Common Benefit Attorneys with the authority of their respective third party provider/payor clients identified on Exhibit A.

8.14    Survival of Representations and Warranties

8.14.1    All representations and warranties of the parties to this Common Benefit Agreement have been and will be relied on by the other parties to this Agreement notwithstanding any investigation made by them.

IN WITNESS WHEREOF, the parties hereto have duly executed this Common Benefit Settlement Agreement as of August 14, 2009.

**COMMON BENEFIT
ATTORNEYS:**                    By: _____
                                     Christopher A. Seeger
                                     SEEGER WEISS LLP
                                     One William Street
                                     New York, NY 10004
                                     Telephone: (212) 584-0700


                                For SETTLING PLAINTIFFS




**MERCK & CO., INC.:**          By: _____  9/14/09
                                     Bruce N. Kuhlik
                                     Senior Vice President and General Counsel
                                     Merck & Co., Inc.
                                     One Merck Drive
                                     P.O. Box 100 (WS3A-15)
                                     Whitehouse Station, NJ 08889-0100
                                     Telecopier: (908) 735-1244
                                     Email: Bruce_Kuhlik@Merck.com

12

COMMON BENEFIT SETTLEMENT AGREEMENT

## <u>LIST OF EXHIBITS</u>

**EXHIBIT A – LIST OF SETTLING PLAINTIFFS**

**EXHIBIT B – PRIVATE TPP SETTLEMENT AGREEMENT AND RELEASE**

**EXHIBIT C – COMMON BENEFIT ESCROW AGREEMENT**

[EXHIBITS FOLLOW THIS PAGE]

EXHIBIT A – COMMON BENEFIT SETTLEMENT AGREEMENT

## LIST OF SETTLING PLAINTIFFS

| |
|---|
| Aetna, Inc |
| AFTRA Health Fund |
| Allied Services Division Welfare Fund |
| Amalgamated Workers Union Local 88 Welfare Fund |
| American Community Mutual Insurance Company |
| American Family Group |
| AMERIGROUP Corporation |
| AmGUARD Insurance Company |
| Arkansas Blue Cross and Blue Shield, A Mutual Insurance Company |
| Asbestos Workers Local 42 Welfare Fund |
| Assurant |
| Asuris Northwest Health |
| Atlantic Mutual Insurance Group |
| AvMed, Inc. |
| Bay Area Delivery Drivers |
| BCBSD, Inc. d/b/a Blue Cross Blue Shield of Delaware |
| Blue Cross Blue Shield of Alabama |

**EXHIBIT A – COMMON BENEFIT SETTLEMENT AGREEMENT**

## <u>LIST OF SETTLING PLAINTIFFS</u>

| |
|---|
| Blasters, Drillrunners and Miners Union Local |
| Blue Cross & Blue Shield of Mississippi |
| Blue Cross & Blue Shield of Rhode Island |
| Blue Cross and Blue Shield of Arizona, Inc. |
| BlueCross and BlueShield of Florida, Inc. |
| Blue Cross and Blue Shield of Kansas City |
| Blue Cross and Blue Shield of Kansas, Inc. |
| Blue Cross and Blue Shield of Massachusetts, Inc. |
| Blue Cross and Blue Shield of North Carolina |
| Blue Cross and Blue Shield of Vermont |
| Blue Cross Blue Shield Association |
| BlueCross BlueShield of Tennessee |
| Blue Cross of Michigan |
| Blue Cross of Minnesota |
| Blue Cross of Nebraska |
| Blue Shield of California |
| Bricklayers of Indiana Welfare Fund |

**EXHIBIT A – COMMON BENEFIT SETTLEMENT AGREEMENT**

## LIST OF SETTLING PLAINTIFFS

| |
|---|
| Brotherhood of Firemen & Oilers Local 1201 Health & Welfare Fund |
| CareFirst, Inc. |
| Cavalier Homes, Inc |
| Cement Masons Local 592 |
| Centene |
| Central Pennsylvania Teamsters Health Welfare and Pension Fund |
| Central States, Southeast and Southwest Areas Health and Welfare Fund |
| CIGNA |
| Commonwealth Care Alliance |
| Connecticut General Life Insurance Company |
| Coventry Health Care |
| Dealers-Unions Insurance Fund |
| EastGUARD Insurance Company |
| Engineers |
| Engineers Local 137 |
| Engineers Local 14 |
| Engineers Local 15 |
| Excellus Health Plan, Inc. |
| Frankenmuth Financial Group |

**EXHIBIT A – COMMON BENEFIT SETTLEMENT AGREEMENT**

## LIST OF SETTLING PLAINTIFFS

| |
|---|
| Golden Rule Insurance Company |
| Government Employee's Health Association, Inc. |
| Great West Life & Annuity Insurance Company |
| Greater New York Benefit Fund (1199SEIU) |
| Group Health Incorporated |
| GUARD Insurance Company |
| The Guardian Life Insurance Company of America |
| Harleysville Insurance Co |
| Harvard Pilgrim Health Care, Inc. |
| Hawaii Medical Service Association |
| Health and Welfare Fund of the Detectives Endowment Association Inc |
| Health Care Service Corporation |
| Health Net, Inc. |
| Health Plan of San Mateo |

EXHIBIT A – COMMON BENEFIT SETTLEMENT AGREEMENT

## <u>LIST OF SETTLING PLAINTIFFS</u>

| |
|---|
| Health Plus of Louisiana Inc |
| HealthNow NY |
| Highmark West Virginia Inc. d/b/a Mountain State Blue Cross and Blue Shield |
| Highmark, Inc. |
| HIP Health Plan of New York |
| Health Partners, Inc. |
| HMO Partners, Inc. d/b/a Health Advantage |
| Horizon Blue Cross of New Jersey |
| Humana, Inc. |
| IBEW 673 Fringe Benefit Funds |
| IBEW Local 129 Fringe Benefit Funds |
| IBEW Local 32 Health and Welfare Fund |
| IBEW Local 683 Fringe Benefit Funds |
| Independence Blue Cross |
| Independent Health Association, Inc. |
| Independent Health Corporation, Inc. |
| Independent Heath Benefits Corporation, Inc. |
| Indiana Bricklayers Local No. 6 Welfare Trust Fund |
| Indiana Carpenters Health and Welfare Fund |

**EXHIBIT A – COMMON BENEFIT SETTLEMENT AGREEMENT**

## LIST OF SETTLING PLAINTIFFS

| |
|---|
| Indiana Electrical Workers Benefit Trust |
| Indiana Laborers Welfare Fund |
| Indiana State Council of Carpenters Health and Welfare Fund |
| Indiana State Council of Roofers Health and Welfare Fund |
| Indiana State District Council of Laborers and Hod Carriers Welfare Fund |
| International Association of Firefighters Local 22 Health & Welfare Fund |
| International Brotherhood of Electrical Workers 43 and Electrical Contractors Health and Welfare Fund |
| International Brotherhood of Teamsters |
| International Union of Operating Engineers Local 825 Welfare Fund |
| International Union of Painters and Allied Trades District Council 21 Fund |
| Iron Workers Locals 40, 361 and 417 Health and Vacation Fund |
| Ironworkers Local 580 Insurance Fund |

**EXHIBIT A – COMMON BENEFIT SETTLEMENT AGREEMENT**

## <u>LIST OF SETTLING PLAINTIFFS</u>

| |
|---|
| Johns Hopkins Health Care LLC |
| Kaiser Foundation Health Plan |
| KPS Health Plans |
| Local 237 Teamsters Brentwood School District Health & Welfare Trust Fund |
| Local 237 Teamsters North Babylon School District Health & Welfare Trust Fund |
| Local 237 Teamsters Plainview Old Bethpage Central School District Health & Welfare Trust Fund |
| Local 237 Teamsters Retirees Benefit Fund |
| Local 237 Teamsters Suffolk Regional Off Track Betting Corporation Health & Welfare Trust Fund |
| Local 282 Welfare Fund |
| Local 400 Welfare Fund |
| Local 522 Welfare Fund of New York and New Jersey |
| Local 7 Tile Industry Welfare Fund |
| Louisiana Health Service Indemnity Company |
| The Mail Handlers Benefit Plan |

**EXHIBIT A – COMMON BENEFIT SETTLEMENT AGREEMENT**

## LIST OF SETTLING PLAINTIFFS

| |
|---|
| Marble Industry Trust Fund |
| Medical Mutual of Ohio |
| Michiana Area Electrical Workers Health and Welfare Fund |
| Michigan Health Maintenance Organization Plans, Inc., f/k/a Omnicare Health Plan, Inc. (Ken Ross) |
| Midwest Operating Engineers Health & Welfare Fund |
| Molina Health Care |
| Motion Picture Laboratory Technicians and Film Editors Local 780 Welfare Fund |
| Mutual of Omaha Insurance Company |
| MVP Health Care, Inc |
| MVP Health Insurance Company, Inc |
| MVP Health Plan, Inc |
| MVP Select Care, Inc |
| NALC Health Benefit Plan |
| NALC Health Benefit Plan for Employees and Staff |
| National Benefit Fund |

EXHIBIT A – COMMON BENEFIT SETTLEMENT AGREEMENT

## LIST OF SETTLING PLAINTIFFS

| |
|---|
| National Benefit Fund (Home Care Employees) |
| National Elevator Industry Benefits |
| New York City District Council of Carpenters Welfare Fund |
| NorGUARD Insurance Company |
| Noridian Mutual Insurance Company |
| NOVA Healthcare Administrators |
| NY State Teamsters Council Health and Hospital Fund |
| Office of Financial and Insurance Services for the State of Michigan, Wellness Plan (Ken Ross) |
| Ohio Carpenters Health Fund |
| Ohio State IBEW Health & Welfare Fund |
| Oxford Health Plans, LLC |
| Painters District Council No 30 Health and Welfare, |
| Painters Local No. 469 Health and Welfard Fund |
| Painting Industry Insurance and Annuity Funds |

EXHIBIT A – COMMON BENEFIT SETTLEMENT AGREEMENT

## LIST OF SETTLING PLAINTIFFS

| |
|---|
| Pennsylvania Employees Benefit Trust Fund |
| Pension, Hospitalization and Benefit Plan of the Electrical Industry |
| Philadelphia Federation of Teachers Health and Welfare Fund |
| Pipe Trades Industry Health and Welfare Plan |
| Plasterers Local 8 Health & Welfare Fund |
| Plumbers and Steamfitters Local 42 Health and Welfare Plan |
| Plumbers and Steamfitters Local 440 Health and Welfare Plan |
| Plumbers and Steamfitters Local No. 166 Health and Welfare Plan |
| Plumbers Local No. 210 Health and Welfare Fund |
| PMA Insurance Group |
| Preferred Administrative Services, Inc |
| Preferred Assurance Company, Inc |
| Premera Blue Cross |
| Priority Health |

**EXHIBIT A – COMMON BENEFIT SETTLEMENT AGREEMENT**

## LIST OF SETTLING PLAINTIFFS

| |
|---|
| Professional Benefit Administrators, Inc |
| QCA Health Plan |
| Regence BlueCross BlueShield of Oregon |
| Regence BlueCross BlueShield of Utah |
| Regence BlueShield |
| Regence BlueShield of Idaho |
| Regence Life and Health Insurance Company |
| Retiree Health and Welfare Fund of the Detectives Endowment Association Inc |
| Rochester Area Health Maintenance Organization, Inc |
| Roofers Local 30 Health |
| Sergeants Benevolent Assn Health and Welfare Fund |
| Service Employee International Union Local No. 3 Health and Welfare Fund |
| Service Employees International Union (1199P) |
| SFM Mutual Insurance Company |

**EXHIBIT A – COMMON BENEFIT SETTLEMENT AGREEMENT**

## <u>LIST OF SETTLING PLAINTIFFS</u>

| |
|---|
| Sheet Metal Workers Local No 19 Fund |
| Sheet Metal Workers Local No. 20 Welfare and Benefit Fund |
| Southern California Permanente Medical Group |
| Southern Ohio Painters Health and Welfare Fund |
| Steamfitters Local 420 Welfare Fund |
| Teamsters Benefit Trust |
| Teamsters Local 1205 Welfare Fund |
| Teamsters Local 175 505 Health and Welfare Trust Fund |
| Teamsters Local 20 Insurance Fund |
| Teamsters Local 237 Welfare Fund |
| Teamsters Local 804 Welfare Fund |
| Teamsters Local 830 Health & Welfare Fund |
| The Steamfitters' Industry Welfare Fund |
| Trustmark Life Insurance Company and Trustmark Insurance Company |
| Tufts Associated Health Maintenance Organization, Inc. |

**EXHIBIT A – COMMON BENEFIT SETTLEMENT AGREEMENT**

## <u>LIST OF SETTLING PLAINTIFFS</u>

| |
|---|
| UFCW Local 1776 |
| Uniformed Sanitationmens Assn Retirees Welfare And Security Benefits Funds |
| United Food and Commercial Workers Union-Employer Health and Welfare Fund |
| United HealthCare Services, Inc. |
| United Independent Union Health & Welfare Fund |
| UnitedHealth Group Incorporated |
| Universal American Corp. |
| Upstate Administrative Services, Inc |
| USAble Life |
| Vista Healthplan, Inc. |
| Welfare Fund of Heat and Frost Insulators Local 12 |
| WellCare Health Plans, Inc. |
| Wellmark Health Plan of Iowa, Inc. |
| Wellmark, Inc. d/b/a Wellmark Blue Cross and Blue Shield of Iowa |
| Wellmark of South Dakota, Inc. d/b/a Wellmark Blue Cross and Blue Shield of South Dakota |
| WellPoint, Inc. |
| WestGUARD Insurance Company |

**EXHIBIT A – COMMON BENEFIT SETTLEMENT**

## LIST OF SETTLING PLAINTIFFS

| |
|---|
| County of Suffolk, NY |
| Blue Cross of Idaho Health Service, Inc. |
| Oklahoma State and Education Employees Group Insurance Board |
| Oklahoma Public Employees Health and Welfare Trust |

**EXHIBIT B TO THE COMMON BENEFIT SETTLEMENT AGREEMENT**
**PRIVATE TPP SETTLEMENT AGREEMENT AND RELEASE**

**PRIVATE TPP SETTLEMENT AGREEMENT AND RELEASE**

**Between**

**Merck & Co., Inc.**

**And**

**CERTAIN PRIVATE THIRD PARTY PAYORS IDENTIFIED HEREIN**

**Dated As Of September 14, 2009**

PRIVATE TPP SETTLEMENT AGREEMENT AND RELEASE

# SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release, together with its Exhibits, is made as of September 14, 2009 by and between Merck & Co., Inc., a New Jersey corporation (together with its successors and assigns, "Merck"), and certain private Third Party Provider/Payors as listed on the attached Exhibit A and identified below (together with their successors and assigns, "TPPs" or "Settling Plaintiffs") regarding the settlement of all Released Claims and Liabilities (as hereinafter defined) against Merck and the Released Parties (as hereinafter defined) (collectively referred to as the "Private TPP Settlement Agreement and Release" or "Agreement").

# RECITALS

WHEREAS, Merck voluntarily withdrew VIOXX from the market on September 30, 2004;

WHEREAS, Settling Plaintiffs are private Third Party Provider/Payors who have made claims, in litigation as well as pre-litigation, against Merck in connection with VIOXX and who are identified on Exhibit A;

WHEREAS, Merck, while not admitting any wrongdoing or liability to Settling Plaintiffs whatsoever, nonetheless wishes to resolve these lawsuits and claims to avoid the costs, expense, and uncertainty inherent in the litigation;

WHEREAS, Settling Plaintiffs also wish to avoid the costs, expense, and the uncertainty inherent in litigation and in making these claims,

NOW THEREFORE, Merck and Settling Plaintiffs agree as follows:

# I.  DEFINITIONS

Terms used in this Private TPP Settlement Agreement and Release shall have the meanings defined below or as otherwise defined in this Agreement:

1.1     "Acknowledgement and Acceptance Form" is the form attached hereto as Exhibit B by which when executed by a Settling Plaintiff that Settling Plaintiff is agreeing to, and becoming bound by, all of the terms of this Private TPP Settlement Agreement and Release (hereinafter may be referred to as "Consent").

1.2     "Aggregate Settlement Payment" means the amount of SIXTY-FIVE MILLION DOLLARS ($65,000,000.00) that shall be paid by Merck in the aggregate to the Settling Plaintiffs

PRIVATE TPP SETTLEMENT AGREEMENT AND RELEASE

identified on Exhibit A pursuant to the terms of this Agreement.  This amount is exclusive of any payment by Merck of Common Benefit Fees and Expenses Payments" (as defined below), which are the subject of a separate "Common Benefit Settlement Agreement" (as defined below).

              1.2.1     The Aggregate Settlement Payment is the cumulative maximum total amount to be paid in settlement by Merck pursuant to this Agreement and neither Merck nor any Released Party shall ever be responsible or obligated to pay to any of the Settling Plaintiffs identified on Exhibit A or any others any further sums pursuant to this Agreement or to Settling Plaintiffs or any Releasing Parties due to the Released Claims and Liabilities.

       1.3     "Allocation Amount" means the amount of the Aggregate Settlement Payment allocated to each Settling Plaintiff based on the formula agreed to by the Settling Plaintiffs after full disclosure.

       1.4     "Bank" means Citibank N.A. or, if unavailable, other financial institution agreed upon by Settling Plaintiffs and Settling Defendants.

       1.5     "Business Day" means any day other than (i) a Saturday or a Sunday or (ii) a day on which commercial banks in the City of New York, New York are required or authorized to be closed.

       1.6     "Claims" has the meaning given in Paragraph 4.1.1.

       1.7     "Claims Administrator" shall be Rust Consulting, Inc., formerly known as Complete Claims Solutions, Inc.

       1.8     "Common Benefit Settlement Agreement" means the separate agreement addressing common benefit fees and expenses, to which Settling Plaintiffs are third party beneficiaries but not parties, and which only becomes effective if this Agreement becomes effective.

       1.9     "Effective Date" means the day following the occurrence of the last of each and every one of the following events:  (1) the execution and delivery to Merck of this Private TPP Settlement Agreement and Release from all Settling Plaintiffs, (2) the payment into Escrow of $65,000,000.00  pursuant to the terms of this Agreement by Merck, and (3) the execution and delivery, if necessary, of Stipulations of Dismissal by Merck and Settling Plaintiffs with pending actions.

       1.10    "Escrow" means the escrow account ("Escrow Account") established with the Escrow Agent by Merck and Settling Plaintiffs pursuant to the Escrow Agreement with Citibank N.A. or, such other financial institution agreed to by Merck and Settling Plaintiffs' Counsel, which shall be used to:  (i) accept and hold on behalf of the Settling Plaintiffs collectively, the Aggregate Settlement Payment made by Merck pursuant to the terms of this Agreement; and (ii) disburse funds to the Settling Plaintiffs pursuant to the terms of this Agreement.

PRIVATE TPP SETTLEMENT AGREEMENT AND RELEASE

1.11    "Escrow Agent" shall be Citibank N.A. or, if unavailable, such other financial institution(s) selected jointly by the Settling Plaintiffs' Counsel and Merck.

1.12    "Escrow Agreement" is the form of agreement attached as Exhibit D, which Merck and Settling Plaintiffs authorize the signatories identified in Exhibit D to execute and enter into on their respective behalfs.

1.13    "Honorable Eldon E. Fallon" means the Honorable Eldon E. Fallon of the United States District Court for the Eastern District of Louisiana.

1.14    "Liabilities" has the meaning given in Paragraph 4.1.1.

1.15    "Lien" means any lien, pledge, charge, security interest, assignment, encumbrance, subrogation right, third-party interest or other adverse claim of any nature whatsoever pursuant to any applicable statute or contract with respect to any payment made pursuant to this Agreement (and/or the right to receive such payment under this Agreement).

1.16    "MDL court" means the court of the Honorable Eldon E. Fallon of the  United States District Court for the Eastern District of Louisiana.

1.17    "MDL" means all of the cases before the MDL court in MDL 1657.

1.18    "Merck Released Parties" has the meaning given it in Paragraph 4.1.1.1.

1.19    "Non-Merck Released Parties" has the meaning given it in Paragraph 4.1.1.1.

1.20    "Released Claims and Liabilities" has the meaning given it in Paragraph 4.1.1.

1.21    "Released Parties"  has the meaning given it in Paragraph 4.1.1.1.

1.22    "Releasing Parties" has the meaning given it in Paragraph 4.1.1.2.

1.23    "Settling Plaintiffs" means (i) those entities identified on the attached Exhibit A and each of them, (ii) their respective, direct and indirect, parents, subsidiaries, divisions, partners, and affiliates in their capacities as such, (ii)  their future operating entities they may create, (iv)  the predecessors, successors, heirs, executors, trustees, administrators, and assigns of each of the foregoing,  in their capacities as such, and (iv) any entities or persons on whose behalf Settling Plaintiffs are authorized to act for purposes of this Agreement; and (v) their respective past and present stockholders, officers, directors, employees, managers, agents, attorneys or other legal representatives, in their capacities as such.

1.24    "Stipulation of Dismissal" means the stipulation to be provided by each of the Settling Plaintiffs who has litigation currently pending against Merck or any Released Party for any Released Claims and Liabilities, which stipulation shall dismiss with prejudice Merck and the Released Parties from any and all such litigation for any and all Released Claims and Liabilities

PRIVATE TPP SETTLEMENT AGREEMENT AND RELEASE

with each party to bear its own costs, and which shall be in a form substantially similar to the form attached as Exhibit C or other appropriate form for the applicable court in which it is to be filed.

## II.   REPRESENTATIONS, WARRANTIES,  COVENANTS AND ACKNOWLEDGMENTS

2.1     Each Settling Plaintiff represents, warrants, covenants, and acknowledges as follows:

2.1.1     The Allocation Amount allotted to each Settling Plaintiff  shall be based upon its actual Net Vioxx Payments (as hereinafter defined), as filed with and accepted by the Claims Administrator ("accepted Vioxx expenditures") divided by the aggregate accepted Vioxx expenditures of all Settling Plaintiffs, with the resulting fraction multiplied by the Aggregate Settlement Amount.  Each Settling Plaintiff agrees with the method by which the Allocation Amount will be determined under this Agreement.  Each Settling Plaintiff further acknowledges and agrees that Merck, the Released Parties, and their counsel, have not participated and will not participate in any way in connection with the determination or disbursement of any Settling Plaintiff's Allocation Amount.

2.1.2     Each Settling Plaintiff acknowledges and agrees that the Agreement and the settlement amount paid or to be paid to each Settling Plaintiff is part of the settlement of a larger number of cases, that the terms of the aggregate Private TPP Settlement Agreement, including the amount of the Aggregate Settlement Payment, the process for determining the Allocation Amount of each Settling Plaintiff, and all other required disclosures, have been disclosed to the Settling Plaintiffs.

2.1.3     Each respective Settling Plaintiff has the legal right and authority to enter into this Agreement, deliver all consideration, including but not limited to, the Acknowledgement and Acceptance Forms and Stipulations, if any, required of it, and receive its respective Allocation Amount, and that its acceptance, agreement, and performance of this Agreement will not contravene or constitute a default under any provisions of applicable law or regulation or any agreement, judgment, injunction, order, decree, or contractual restriction binding on such Settling Plaintiff or require any further approval, authorization, consent, order, notice to, or filing or registration with, any corporate or governmental authority.  Further, each respective Settling Plaintiff represents and warrants that all required corporate or other approvals have been obtained, permitting such Settling Plaintiff representative to execute and deliver this Agreement or to execute and deliver an Acknowledgement and Acceptance in the Form of the attached Exhibit B in lieu of executing the Agreement, which will make this Agreement binding upon such Settling Plaintiff.

2.1.4     This Agreement will not result in any lien, security interest, or other charge or encumbrance in favor of a third party upon or with respect to such Settling Plaintiff's claim or right to receive funds under this Agreement, except to the extent that any Settling Plaintiff is entering into this Agreement not only on its own behalf but also on

5

PRIVATE TPP SETTLEMENT AGREEMENT AND RELEASE

behalf of health benefit plans the Settling Plaintiff administers and to which the Settling Plaintiff may be obligated with respect to its Allocation Amount.  Each Settling Plaintiff will indemnify and hold the Released Parties harmless with respect to any such claim or right asserted by any health benefit plans administered by the Settling Plaintiff or other third parties, to the extent the Settling Plaintiff is claiming for such health benefit plan's Vioxx purchases and the claim or right asserted concerns Vioxx purchases administered by such Settling Plaintiff (it being recognized that some health benefit plans are covered by more than one third party administrator), with respect to such Settling Plaintiff's receipt of its respective Allocation Amount.

      2.1.5    Each respective Settling Plaintiff further represents and warrants that this Agreement and any other paper required to be executed pursuant to this Agreement have been or will be duly executed and delivered by an authorized representative of each Settling Plaintiff and are, or upon execution will be, the valid and legally binding obligations of such Settling Plaintiff, enforceable against the respective Settling Plaintiff in accordance with their respective terms.

### III.   OBLIGATIONS OF SETTLING PLAINTIFFS

Section 3.1    <u>Obligations of Settling Plaintiffs</u>

      3.1.1    Within ten (10) Business Days of execution of this Agreement by the Settling Plaintiffs' Counsel and Merck (or within such other time period as agreed to in writing by Merck), each respective Settling Plaintiff identified on Exhibit A shall cause to be delivered to Merck at the location set forth in the Notice provisions herein, from each Settling Plaintiff the following  materials:

      3.1.1.1    this Private TPP Settlement Agreement and Release validly executed by undersigned counsel on their behalf;

      3.1.1.2    the Acknowledgement and Acceptance Form in the form of Exhibit B hereto (or "Consent"), duly executed by an authorized representative of each Settling Plaintiff, agreeing to and accepting the terms of this Settlement Agreement and Release as binding upon such Settling Plaintiff;

      3.1.1.3    for those Settling Plaintiffs with currently pending litigation against Merck or any Released Parties for any of the Released Claims, a validly executed Stipulation of Dismissal with Prejudice substantially in the form of the attached Exhibit C.

      3.1.2    This Agreement shall not become binding on any Settling Plaintiff or the Releasing Parties attributable to such Settling Plaintiff, unless and until that Settling Plaintiff has signed and delivered the Acknowledgement and Acceptance Form and Merck has signed this Agreement and the Escrow Agreement and deposited the Aggregate Settlement Amount with the Escrow Agent.

      3.1.3    Contemporaneously with the execution of this Agreement, Settling Plaintiffs' Counsel, on behalf of Settling Plaintiffs shall execute the Escrow Agreement.

PRIVATE TPP SETTLEMENT AGREEMENT AND RELEASE

        3.1.4     By September 30, 2009, unless another later date is specified by Settling Plaintiffs' Counsel (as such Term is defined in the Escrow Agreement), each respective Settling Plaintiff identified on Exhibit A shall cause to be delivered to the Claims Administrator claims expenditure data in a form and in a manner satisfactory to the Claims Administrator, all as set forth in Article VII below.

        3.1.5     Each Settling Plaintiff shall execute and/or provide any additional documentation that may be required under applicable state or federal law in order to give effect to this Agreement and the Release, including Form W-9s. Settling Plaintiffs shall use their reasonable best efforts to effectuate the terms of this Agreement including providing such cooperation of their undersigned counsel, if necessary, to support any provisions thereof; provided however that this cooperation covenant is made without any concession or acknowledgment of any party that this Agreement, which is a private agreement among private parties, requires any review or approval by any court.

### IV.  RELEASE AND INDEMNITY BY SETTLING PLAINTIFFS

Section 4.1    <u>Release</u>

        4.1.1     In consideration for this Agreement and the monetary payment made by Merck pursuant to the Agreement, and the share of that payment that will be allocated to each of the undersigned Settling Plaintiffs pursuant to the criteria agreed among Settling Plaintiffs set forth in this Agreement, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, each undersigned Settling Plaintiff hereby gives and makes the following releases, waivers, acknowledgements and agreements for the benefit of the Merck and all of the Released Parties.

Each Settling Plaintiff hereby knowingly and voluntarily RELEASES, REMISES, ACQUITS and FOREVER DISCHARGES the Released Parties from the "Released Claims and Liabilities," which shall mean (i) any and all rights, remedies, actions, claims, demands, causes of action, suits at law or in equity, verdicts, suits of judgments and/or liens of any kind whatsoever, which Settling Plaintiff and any other person or entity which is defined in Section 4.1.1.2 below as a "Releasing Party" by virtue and to the extent of such person's or entity's relationship with such Settling Plaintiff with respect to VIOXX Claims or Liabilities, may have ever had, may now have or at any time hereafter may have against any Released Party including but not limited to any direct claims, third-party claims, and/or assigned claims, including without limitation, any and all claims for negligence, gross negligence, strict product liability, strict liability, breach of express or implied warranty, breach of contract, fraud, unfair business practices, deceptive trade practices (including but not limited to any and all claims under §17200, et seq., of the California Business and Professions Code or similar statutes of the same or other jurisdictions), conspiracy, concert of action, violations of any statute or regulation, whether known or unknown, past, present or future, accrued or which may accrue in the future, asserted or unasserted, latent or patent, that is, has been or could have been or in the future might be asserted by Settling Plaintiff against Released Parties, or any of them for actual damages, exemplary and punitive damages, statutory damages, penalties

PRIVATE TPP SETTLEMENT AGREEMENT AND RELEASE

of any kind, economic or business losses or other costs, prejudgment or post-judgment interest, attorneys' fees, injunctive or declaratory relief, and/or any other losses or detriment of any kind, past, present or future ("Claims"), and (ii) any and all debts, liabilities, obligations, covenants, promises, contracts, agreements and/or obligations, of any kind whatsoever ("Liabilities"), which any Released Party may have ever had, may now have or at any time hereafter may have to Settling Plaintiff or any other Releasing Party, in the case of clause (i) and clause (ii), to any extent, or in any way, arising out of, relating to, resulting from and/or connected with VIOXX and/or with any claim or loss Settling Plaintiff(and/or any other Releasing Party) have ever claimed, or may at any time hereafter claim, arising out of, relating to, resulting from and/or connected with VIOXX in whole or in part, including but not limited to, any conduct, events, or transactions relating to the research, development, design, formulation, testing, study, manufacture, regulatory submission, distribution, supply, sale, promotion, marketing, advertising, prescription, labeling, use, and purchase of VIOXX and/or reimbursement for VIOXX; provided however that (i) the obligations of Settling Plaintiffs under this Agreement are several and not joint, and are limited with respect to each Settling Plaintiff to the claims it is releasing on its and its covered plans' behalf in consideration of its respective Allocation Amount; (ii) this Settlement Agreement and Release shall have no effect on any Releasing Party's claims in the Private Lien Settlement Program relating to VIOXX, nor shall it be construed to release or impair any Releasing Party's contractual or equitable claims to collect or be paid reimbursement from recoveries of covered or insured individuals or their spouses, estates or beneficiaries who recover money from Merck or other Released Parties with respect to the covered or insured party's claims arising out of his or her ingestion of VIOXX; and provided further, that this Settlement Agreement and Release shall have no effect on any individual's claims against Merck or other Released Parties to recover for personal injury or illness allegedly arising from the ingestion of VIOXX, nor the subrogation claims of any person or entity to recover payments for medical coverage, which were not paid for or administered by the Releasor, and which allegedly resulted from the individual's ingestion of VIOXX.

    4.1.1.1  The term "Released Parties" means  (i) Merck, and (ii) in their capacities as such, Merck's past, present and/or future parents, subsidiaries, divisions, affiliates and joint venturers; the respective past, present and/or future predecessors, successors, assigns and transferees of the parties referred to in this paragraph; and the respective past, present and/or future insurers, shareholders (or the equivalent thereto), directors (or the equivalent thereto), officers (or the equivalent thereto), managers, principals, employees, consultants, advisors, attorneys, agents, servants, representatives, heirs, trustees, executors, estate administrators and personal representatives (or the equivalent thereto) of the parties referred to in this paragraph (clauses (i) and (ii) above also collectively referred to as "Merck Released Parties"), and (iii) all persons or entities, past, present and/or future, in any way and/or at any time connected with any claim or loss Settling Plaintiff (or any other Releasing Party) have ever claimed, or hereafter claim, in connection with VIOXX (but not claims described in Section 13.16 below) in whole or in part, including, but not limited to, manufacturers; suppliers of materials; distributors; or other persons or entities involved in the development, design, manufacture, formulation, testing, distribution, marketing, labeling, regulatory submissions, advertising and/or sale of VIOXX and, in their respective capacities as such, the respective past, present, and/or future parents, subsidiaries, divisions, affiliates, joint venturers, predecessors, successors, assigns, and transferees of the parties referred to in this paragraph; and the respective past, present and/or future shareholders (or

PRIVATE TPP SETTLEMENT AGREEMENT AND RELEASE

the equivalent thereto), directors (or the equivalent thereto), officers (or the equivalent thereto), managers, principals, employees, consultants, advisors, attorneys, agents, servants, representatives, heirs, trustees, executors, estate administrators and personal representatives (or the equivalent thereto) of the parties referred to in this paragraph (clause (iii) also referred to as "Non-Merck Released Parties").

        4.1.1.2    The term "Releasing Parties" means (i) each Settling Plaintiff, and (ii) any and all persons or entities, whether now in existence or which may exist in the future who or which had or has asserted, or might in the future assert, the right to sue Merck or any other Released Party, independently, derivatively or otherwise, by reason of their relationship with such Settling Plaintiff with respect to VIOXX Claims or Liabilities, and any person or entity which is participating in this Agreement through such Settling Plaintiff, and solely to the extent it is participating in this Agreement through such Settling Plaintiff. Each Settling Plaintiff's obligations, covenants, warranties, representations, releases and indemnities agreed to herein, when and to the extent made on behalf of other "Releasing Parties" is limited by the definition above. By illustration, if a Releasing Party's health benefits plan is insured or administered by three unrelated health benefits providers, only two of whom are Settling Plaintiffs, then the provisions of this Agreement applicable to "Releasing Parties" shall apply to any such Releasing Party only to the extent that the Claims and Liabilities arise out of VIOXX purchases or medical treatments paid for or administered by the two Settling Plaintiffs, and shall not extend to claims which might arise out of VIOXX purchases or medical treatment payments made by the third, non-participating health benefits provider. Further, except as set forth in Paragraph 4.1.8, the indemnity provisions set forth herein are limited to the extent of a Settling Plaintiff's Allocation Amount recovered by such Settling Plaintiff.

        4.1.2    Each Settling Plaintiff acknowledges that it (and/or any other Releasing Party) may in the future learn of additional and/or different facts as they relate to VIOXX, the Released Parties' activities as they relate to VIOXX, and/or any claim or loss Settling Plaintiff(and/or any other Releasing Party) have ever claimed, or may at any time in the future claim, VIOXX caused in whole or in part. Each Settling Plaintiff understands and acknowledges the significance and consequences of releasing all of the Released Claims and Liabilities and Settling Plaintiff hereby (on Settling Plaintiff's own behalf and on behalf of each other Releasing Party) assumes full risk and responsibility for any and all such additional and/or different facts and any and all Released Claims and Liabilities that Settling Plaintiff(and/or any other Releasing Party) may hereinafter incur or discover. To the extent that any law, statute, ordinance, rule, regulation, case or other legal provision or authority (each, a "Law") may at any time purport to preserve Settling Plaintiff's and/or any other Releasing Party's right to hereinafter assert any such unknown and/or unanticipated Claims and/or Liabilities, Settling Plaintiff hereby (on its own behalf and on behalf of each other Releasing Party) specifically and expressly waive (to the fullest extent permitted by applicable Law) each Releasing Party's rights under such Law. Each Settling Plaintiff further acknowledges having had an opportunity to obtain advice of counsel of Settling Plaintiff's choosing regarding this waiver, and having discussed it with such counsel to Settling Plaintiff's satisfaction.

PRIVATE TPP SETTLEMENT AGREEMENT AND RELEASE

     4.1.3     Each Settling Plaintiff, on its own behalf and on behalf of the other Releasing Parties, acknowledges and agrees that the releases set forth in this Agreement are irrevocable and unconditional, inure to the benefit of each Released Party, and are intended to be as broad as can possibly be created.

     **WITHOUT LIMITATION OF THE FOREGOING, THIS RELEASE IS SPECIFICALLY INTENDED TO OPERATE AND BE APPLICABLE EVEN IF IT IS ALLEGED, CHARGED OR PROVED THAT SOME OR ALL OF THE RELEASED CLAIMS AND LIABILITIES ARE CAUSED IN WHOLE OR IN PART BY THE NEGLIGENCE, NEGLIGENCE PER SE, GROSS NEGLIGENCE, BREACH OF WARRANTY, VIOLATION OF LAW, DEFECTIVE PRODUCT, MALICE, AND/OR CONDUCT OF ANY TYPE BY MERCK, ANY OF THE OTHER RELEASED PARTIES, ANY RELEASING PARTY AND/OR ANY OTHER PERSON. THIS RELEASE IS SPECIFICALLY INTENDED TO AND DOES INCLUDE, BUT IS NOT LIMITED TO, A RELEASE OF, AND COVENANT NOT TO SUE FOR, ANY WRONGFUL DEATH CLAIM THAT MAY BE BROUGHT AT ANY TIME BY OR ON BEHALF OF ANY OF THE RELEASING PARTIES IN CONNECTION WITH ANY OF THE FACTS, EVENTS AND/OR INCIDENTS THAT GAVE RISE TO ANY OF THE RELEASED CLAIMS AND LIABILITIES.**

     4.1.4     Each Settling Plaintiff understands that the Released Parties are not responsible for any attorneys' fees or costs that Settling Plaintiff has incurred or may at any time incur, including, but not limited to, in connection with this Agreement, this Release and any other documents. Each Settling Plaintiff understands that, with respect to any payment made to or for the benefit of, in whole or in part, Settling Plaintiff under the Agreement, (a "Settlement Payment"), any division of such Settlement Payment between Settling Plaintiff and other Settling Plaintiffs and their respective counsel, whether by agreement or by operation of the provisions of the Agreement, and such division, or any dispute in relation to such division, shall in no way affect the validity of this Release.

     4.1.5     Each Settling Plaintiff agrees that it will never (i) take any legal or other action to initiate, pursue or maintain, or otherwise attempt to execute upon, collect or otherwise enforce, any of the Released Claims and Liabilities of or against any Released Party, or (ii) institute or participate in any new legal action against any Released Party to any extent, or in any way, arising out of relating to, resulting from and/or connected with or for any of the Released Claims and Liabilities.

     4.1.6     Each Settling Plaintiff understands and acknowledges the discharge and satisfaction of any and all liens, pledges, charges, security interests, assignments, encumbrances, subrogation rights, third-party interests or other adverse claim of any nature whatsoever ("Lien") pursuant to any applicable statute or contract with respect to any payment under or pursuant to the Agreement (and/or the right to receive such Settlement Payment), is the sole responsibility of Releasor.

     4.1.7     In addition to and without limitation of the foregoing, each Settling Plaintiff hereby agrees to indemnify and hold harmless against any Claims, Liabilities, damages, losses, costs and expenses incurred by the following categories of persons under the following circumstances (and for which Merck shall tender such Claims and Liabilities for defense and indemnity to such Settling Plaintiff):

PRIVATE TPP SETTLEMENT AGREEMENT AND RELEASE

4.1.7.1   Merck Released Parties due the assertion of any Lien or Claim against all or any part of such Settling Plaintiff's Allocated Amount (including any amount paid in satisfaction of any such Claim) with respect to any Claim released by such Settling Plaintiff;

4.1.7.2   Released Parties from and against any and all Claims that may be asserted, made or maintained at any time against any Released Party by, on behalf of or for the benefit of, any Releasing Party, or otherwise by any person or entity claiming by, through or under, any Releasing Party with respect to any of the Released Claims and Liabilities released by such Settling Plaintiff;

4.1.7.3   Merck Released Parties from and against any and all Claims made or asserted by any Non-Merck Released Party arising out of any Claim released by such Settling Plaintiff under this Agreement which is subsequently made, asserted or prosecuted at any time by a Settling Plaintiff and/or any other Releasing Party against any Non - Merck Released Party with respect to any of the Released Claims and Liabilities released by such Settling Plaintiff.

4.1.8     Each Settling Plaintiff further agrees to reduce any judgment for any of the Released Claims and Liabilities that they might recover against any entity other than Merck and the Merck Released Parties by release and discharge in an amount, fraction, portion, or percentage necessary under applicable state or federal law to bar, eliminate, relieve, or satisfy claims against Merck and the Merck Released Parties for contribution and/or indemnity to the fullest extent permitted by applicable state or federal law arising from any Released Claims and Liabilities, including any amount reallocated by applicable state or federal statute or common law due to uncollectibility and/or insolvency of other persons or entities determined to be at fault.  Notwithstanding the foregoing, this provision shall not affect the Settling Plaintiffs' claims for reimbursement as described in Section 13.16 of this Agreement.

4.1.9     If any Settling Plaintiff has any civil action pending in any jurisdiction that has enacted, promulgated or otherwise adopted any Law containing provisions that establish specific time periods within which settlement funds, if any, must be paid to Settling Plaintiff in connection with the settlement of such civil action and/or impose sanctions, penalties or other similar obligations against the paying party if the settlement funds are not paid within such time periods and/or invalidate or otherwise affect the terms of the settlement of such civil action (including, but not limited to, Pennsylvania Rule of Civil Procedure 229.1), Settling Plaintiff hereby (i) specifically and expressly waives (to the fullest extent permitted by applicable Law) all rights under any such provisions and (ii) agrees that payment of any Settlement Payment shall be made solely in accordance with the terms and conditions of the Agreement.

PRIVATE TPP SETTLEMENT AGREEMENT AND RELEASE

## V.  REPRESENTATIONS AND WARRANTIES OF MERCK

Section 5.1     Representations and Warranties of Merck

5.1.1     Merck & Co., Inc. represents and warrants that it is a corporation duly organized, validly existing and in good standing under the laws of the State of New Jersey.

5.1.2     Merck represents and warrants that all required corporate approvals have been obtained, permitting Merck's undersigned representative to execute this Agreement and deliver it to Settling Plaintiffs, which will be binding upon Merck.

5.1.3     Merck represents and warrants that its execution, delivery, and performance of this Agreement will not contravene or constitute a default under any provisions of applicable law or regulation or any agreement, judgment, injunction, order, decree, or contractual restriction binding on it.

## VI.  OBLIGATIONS OF MERCK

Section 6.1     Obligations of Merck

6.1.1     Merck will execute and deliver this Agreement contemporaneously with Merck's receipt of the executed Agreement by the undersigned Settling Plaintiffs' Counsel, which Agreements shall be held in escrow by counsel for Settling Plaintiffs and counsel for Merck, respectively, pending receipt by Merck of the documentation required pursuant to Section 3.1 from all Settling Plaintiffs listed on Exhibit A.

6.1.2     Within fourteen (14) days of the date set forth in paragraph 3.1.1 (unless otherwise agreed to in writing by Merck and the Settling Plaintiffs' Counsel identified in the Notice provisions herein), all executed Settlement Agreements, Releases and Stipulations received by Merck pursuant to Section 3.1 above, shall be inspected and reviewed by Merck for any ministerial defects.

6.1.2.1     Any Settling Plaintiff whose documentation submitted under Section 3.1 appears to have ministerial deficiencies shall be notified by Merck of those deficiencies by giving notice pursuant to the Notice provisions herein within ten (10) Business Days following receipt by Merck of that settlement documentation.  All documentation submitted under Section 3.1 for which Merck does not submit a timely notice of deficiency under this paragraph, shall be conclusively deemed free of ministerial defects for purposes of this Agreement. Any such Settling Plaintiff shall cure such ministerial deficiencies within ten (10) Business Days following receipt of such notification under this Section 6.1.2.1.  The deadlines under this Section may be extended by written agreement by counsel for Merck and Settling Plaintiffs.

12

PRIVATE TPP SETTLEMENT AGREEMENT AND RELEASE

6.1.3     In the event that less than all Settling Plaintiffs submit the required documentation pursuant to Section 3.1, Merck, in its sole discretion, may elect to proceed with the settlement by so advising Settling Plaintiffs' Counsel, or Merck may elect not to proceed with the settlement in which case the Agreement and Escrow Agreement shall be deemed null and void for any and all purposes upon Merck giving notice of its decision to Settling Plaintiffs' Counsel identified in the Notice provisions of this Agreement within ten (10) Business Days following the occurrence of the last deadline described in Paragraph 6.1.2.1.

6.1.4     If, for any reason, Merck does not elect to proceed with the settlement pursuant to Section 6.1.3, the settlement documentation provided to Merck pursuant to Section 3.1 shall be null and void and shall either be returned to the respective Settling Plaintiffs or destroyed.

6.1.5     In the event that Merck does not provide the notice set forth in Section 6.1.3 that it is terminating the Agreement, Merck shall execute the Escrow Agreement and cause it to be delivered to Settling Plaintiffs Counsel and the Escrow Agent within five (5) Business Days of the occurrence of the last deadline described in Paragraph 6.1.3, or by September 15, 2009, whichever date is later.

6.1.6     Within five (5) Business Days following the execution and delivery of the Escrow Agreement by Merck,  Merck shall cause the Aggregate Settlement Payment to be deposited into the Escrow Account.

6.1.7     At any time following the payment into the Escrow Account pursuant to Section 6.1.6, Merck may file the Stipulations of Dismissal provided to it pursuant to Section 3.1 or otherwise cause Settling Plaintiffs to seek the entry of Orders of Dismissal, dismissing Merck and any Released Parties with prejudice, where motions are necessary.  In no event shall Merck file any Stipulations of Dismissal until payment is made into the Escrow Account pursuant to Section 6.1.6.  However, Settling Plaintiffs agree to extend any and all litigation and discovery deadlines pending completion of this settlement and the entry of dismissals.

6.1.8     The payment made by Merck pursuant to this Article is in consideration of: (i) the representations and warranties of Settling Plaintiffs, (ii) the delivery to Merck by Settling Plaintiffs of valid and binding settlement documentation , and (iii) compliance with the other provisions of this Agreement.

## VII.   CLAIMS ADMINISTRATION

7.1     Allocation of Settlement Proceeds Among Settling Plaintiffs

7.1.1     Settling Plaintiffs agree among themselves that the Allocation Amount for each Settling Plaintiff herein shall be determined as follows:

7.1.1.1     Each Settling Plaintiff shall file a proof of claim on a standardized form provided by the Claims Administrator, which will show its aggregate Vioxx

PRIVATE TPP SETTLEMENT AGREEMENT AND RELEASE

paid pharmacy claims for dates of fill from May 21, 1999 through September 30, 2004, plus such standard supporting evidence as the Claims Administrator shall require, which shall include transaction level data for all Vioxx purchases claimed.  By October 14, 2009, the Claims Administrator may provide a deficiency notice to any Settling Plaintiff which shall, in turn, have twenty (20) Business Days to cure such deficiency (the "Deficiency Cure Period").  For the sake of clarity, "Vioxx paid pharmacy claims" refers to pharmacy claims paid by Settling Plaintiffs for the ingredient cost and dispensing fee(s) for VIOXX.  For the further sake of clarity, each Settling Plaintiff shall submit a proof of claim which subtracts from its aggregate Vioxx paid pharmacy any amounts refunded to it by Merck for unused Vioxx dosages following Merck's voluntary withdrawal of Vioxx in September 2004, and the resulting difference shall be called the Settling Plaintiff's "Net Vioxx Payments."

7.1.1.2    The Allocation Amount for each Settling Plaintiff shall be the product of multiplying (a) the Aggregate Settlement Amount by (b) a percentage determined by dividing (i) that Settling Plaintiff's Net Vioxx Payments accepted by the Claims Administrator ("accepted Vioxx Expenditures") by (ii)  the aggregate accepted Net Vioxx Payments of all Settling Plaintiffs.

7.1.1.3    The Claims Administrator shall report the allocation results to all Settling Plaintiffs' Counsel no later than ten (10) business days following the expiration of the Deficiency Cure Period.  Each Settling Plaintiff may object to the Allocation Amounts determination in writing and such objections shall be timely if received by the Claims Administrator within ten (10) business days following the Claims Administrator's reporting of the Allocation Amounts.  Objections not timely received shall be null and void and deemed waived.

7.1.1.4    If no timely objections are received by the Claims Administrator, the Allocation Amount will become final at the expiration of the Deficiency Cure Period.

7.1.1.5    If timely objections regarding the claims administration or allocation are submitted, the Claims Administrator, Settling Plaintiffs and Claims Administrator shall use their best efforts to resolve such questions or objections.  If the Parties cannot resolve such questions or objections within ten (10) Business Days (the "Objections Period") following timely submission of the question or objection, the objecting Settling Plaintiff's sole recourse shall be to submit the dispute to binding arbitration within ten (10) Business Days of the expiration of the Objections Period for resolution by a single arbitrator of the American Arbitration Association in New York City, with each interested party permitted to submit, simultaneously, a single brief, in addition to exhibits, of not more than 10 pages, and simultaneous replies of not more than 5 pages, without oral argument.  The arbitrator's award shall be final, binding, nonappealable, and without right of any aggrieved party to seek court vacatur of the award, and without any need for confirmation of the arbitrator's award by any court to become final binding and enforceable.  The Claims Administrator shall thereupon adopt the arbitrator's award(s) and make its final determination of allocation amounts, and the Escrow Agent shall be entitled to disburse Allocation Amounts wholly in reliance upon the determinations of the Claims Administrator, and the Claims Administrator and Escrow Agent shall have no liability to any party aggrieved thereby.  The objecting Settling Plaintiff shall bear all costs of the AAA with respect to such arbitration.

PRIVATE TPP SETTLEMENT AGREEMENT AND RELEASE

7.1.1.6    Neither Merck nor any Released Parties has any role or responsibility whatsoever in connection with the Claims Administrator, the administration of claims under this Agreement, any arbitration or other dispute resolution of a claim under this Article, or any costs or expenses incurred in connection the operation of this Article.

7.1.1.7    The costs of the Claims Administrator and Escrow Agent shall be the responsibility of the Settling Plaintiffs and shall be paid from the Aggregate Settlement Payment.

## VIII.  ADMINISTRATION

Section 8.1    Authority and Appointment

8.1.1    This is a private agreement.  To the extent the parties have disagreement with respect to this Agreement (except for disputes whose resolution is provided for otherwise in Section 7.1.1 above), the parties agree to submit such disputes to The Honorable Eldon E. Fallon.

8.1.2    In the event that for any reason the Honorable Eldon E. Fallon is unable or unwilling to preside over such disputes, Merck, on the one hand, and the Settling Plaintiffs, on the other hand, through their respective counsel, will appoint an Administrator to preside over such disputes concerning the Agreement.  In the event an Administrator is appointed all provisions pertaining to the authority, capacity and protections of the Honorable Eldon E. Fallon in connection with the administration of this Agreement as set forth herein shall apply with equal force to the Administrator.  The costs of the Administrator shall be the exclusive responsibility of Settling Plaintiffs and shall be paid from the Aggregate Settlement Payment.

8.1.3    The Honorable Eldon E. Fallon, or any agent or employee of The Honorable Eldon E. Fallon, shall not be liable for his acts or omissions, in connection with obligations assumed affecting the administration of this Agreement except, with respect to each such person, for such person's own willful misconduct.  Nothing in this Agreement confers any privity of contract with, or other right to institute any action against, the Honorable Eldon E. Fallon.

## IX.  NO ADMISSIONS

Section 9.1.    No Admissions

9.1.1    Neither this Agreement nor any exhibit, document or instrument delivered hereunder nor any statement, transaction or proceeding in connection with the negotiation, execution or implementation of this Agreement, is intended to be or shall be construed as or deemed to be evidence of an admission or concession by any party of any fault, liability, wrongdoing, fact, legal position, or damages or of the truth of any allegations or defenses asserted by any party or the strength or infirmity of any claim of defense of any

PRIVATE TPP SETTLEMENT AGREEMENT AND RELEASE

party.

    9.1.2  No party to this Agreement or its counsel shall seek to introduce and/or offer the terms of this Agreement, any statement, transaction or proceeding in connection with the negotiation, execution or implementation of this Agreement, or any statements in the documents delivered in connection with this Agreement, or otherwise rely on the terms of this Agreement, in any judicial proceeding, except insofar as it is necessary to enforce the terms of this Agreement and/or its release and indemnity provisions (or in connection with the determination of any income tax Liability of a party or any insurance coverage) or any instrument executed and delivered pursuant to this Agreement.

    9.1.3  Nothing in this Article IX applies to (i) any action after the Effective Date to submit into evidence in any legal proceeding (past, present or future) the Agreement and any Acknowledgement and Acceptance, or any Stipulation of Dismissal With Prejudice or Motion to Dismiss that were provided to Merck in accordance with the terms of this Agreement in order to enforce such release or dismissal, or (ii) any other action after the Effective Date by Merck in furtherance of any of those release and indemnity provisions and dismissals.

## X.  CONFIDENTIALITY PROVISIONS

Section 10.1. Confidentiality of Negotiations; Admissibility of Agreement

    **10.1.1**  The parties to this Agreement shall keep confidential the content of the negotiations, points of discussion, documents, communications, and supporting data or presentations exchanged as part of the negotiations, as well as all other negotiations and settlement discussions taking place, as contemplated by Federal Rule of Evidence 408 and its state law analogues and protections of common law provided to settlement negotiations, except as otherwise required by law; provided however that Settling Plaintiffs are permitted to disclose the terms of the Agreement to other potential Releasing Parties on whose behalf the Settling Plaintiffs would be providing the Release pursuant to § 4.1.

    **10.1.2**  The parties expressly agree that this Agreement is a protected communication under Federal Rule of Evidence 408 and any equivalent code or common law rule of evidence of any state; however, the same shall be admissible in (i) a proceeding the sole purpose of which is to enforce the terms of this Agreement, (ii) any proceeding to establish an insurance or reinsurance claim by any party to this Agreement or a Released Party, (iii) any proceeding to establish an appropriate set-off or credit to a judgment entered or to be entered in favor of a Settling Plaintiff against an entity other than any Released Parties, or (iv) other proceeding where such admission is necessary to effectuate the terms of this Agreement.

PRIVATE TPP SETTLEMENT AGREEMENT AND RELEASE

## XI.  WAIVER

Section 11.1.   <u>Waiver of Certain Statutory Provisions</u>

        11.1.1   With respect to the release of the Released Claims and Liabilities, Settling Plaintiffs expressly waive any rights or benefits available under section 1542 of the California Civil Code, which provides as follows, or any other similar statute or law in any jurisdiction:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MIGHT HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

The parties understand and acknowledge the significance and consequence of the specific waiver of California Civil Code section 1542 described above and of any similar statute or law of another jurisdiction.

## XII.  LIENS

12.1   <u>Liens</u>

        12.1.1   In any event and any term of this Agreement to the contrary notwithstanding, satisfaction and discharge of any and all Liens, whether past, present or future, whether known or unknown or asserted or unasserted, with respect to the Aggregate Settlement Payment (and/or the right to receive any portion of the Aggregate Settlement Payment) are the sole responsibility of the relevant Settling Plaintiffs and their respective counsel.

        12.1.2   The provisions of this Article XII are solely for the several benefit of (a) Merck, and (b) the Released Parties.

## XIII.  MISCELLANEOUS

Section 13.1   <u>Notice by Parties</u>

        13.1.1   Any notice, request, instruction or other document to be given by Merck to Settling Plaintiffs, or to be given by Settling Plaintiffs to Merck, under this Agreement shall be in writing and delivered by mail, by Federal Express, by facsimile or, to the extent specified hereunder, by electronic mail, as follows, or as otherwise instructed by a notice delivered to the other Party pursuant to this subsection:

PRIVATE TPP SETTLEMENT AGREEMENT AND RELEASE

          13.1.1.1    If to Merck:

Bruce N. Kuhlik
Senior Vice President and General Counsel
Merck & Co., Inc.
One Merck Drive
P.O. Box 100 (WS3A-15)
Whitehouse Station, NJ 08889-0100
Telecopier: (908) 735-1244
Email: Bruce_Kuhlik@Merck.com

-and-

John H. Beisner, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
1440 New York Avenue, N.W.
Washington, D.C.  20005
Telecopier: (202) 661-8301
Email: John.Beisner@skadden.com

          13.1.1.2    If to Settling Plaintiffs' Counsel or to Settling Plaintiffs collectively for a non client-specific reason, to the undersigned counsel who have executed this Agreement.

          13.1.1.3    If to any one or more Settling Plaintiff(s), to the counsel identified at the end of this Agreement underneath the signature of such Settling Plaintiff(s) as the counsel for such Settling Plaintiff(s) entitled to such notice.

          13.1.2    Any such notice, request, instruction or other document provided pursuant to this Article shall be deemed to have been given as of the date so transmitted by facsimile or electronic mail, on the next Business Day when sent by Federal Express or five Business Days after the date so mailed, provided that if any such date on which any such notice or other communication shall be deemed to have been given is not a Business Day, then such notice or other communication shall be deemed to have been given as of the next following Business Day.

13.2    Receipt of Documentation

          13.2.1    Any form or other documentation required to be sent under this Agreement shall be deemed timely (i) if delivered by mail (and not required to be delivered in some other fashion), if postmarked (or, in the absence of a postmark or if such postmark is illegible, if received) on or before the date by which it is required to be submitted under this Agreement or (ii) if delivered (and expressly permitted or required to be delivered) by electronic mail, when it is capable of being accessed from such electronic mail address.

PRIVATE TPP SETTLEMENT AGREEMENT AND RELEASE

13.3    Governing Law

  13.3.1    This Agreement shall be governed by and construed in accordance with the law of New York governing agreements negotiated, executed and to be performed within the State of New York without regard to any choice-of-law rules that would require the application of the law of another jurisdiction.

13.4    Waiver of Inconsistent Provisions of Law; Severability

  13.4.1    To the fullest extent permitted by applicable law, Merck and Settling Plaintiffs each waives its rights under any provision of law (including the common law), which would otherwise render any provision of this Agreement invalid, illegal or unenforceable in any respect.

  13.4.2    Any provision of this Agreement which is prohibited or unenforceable to any extent or in any particular context shall be ineffective, but such ineffectiveness shall be limited as follows: (i) if such provision is prohibited or unenforceable only in or as it relates to a particular jurisdiction, such provision shall be ineffective only in or as it relates to (as the case may be) such jurisdiction and only to the extent of such prohibition or unenforceability, and such prohibition or unenforceability in or as it relates to (as the case may be) such jurisdiction shall not otherwise invalidate or render unenforceable such provision (in such or any other jurisdiction); (ii) if (without limitation of, and after giving effect to, clause (i)) such provision is prohibited or unenforceable only in a particular context (including only as to a particular Settling Plaintiff or under any particular circumstance or circumstances), such provision shall be ineffective, but only in such particular context; and (iii) without limitation of clauses (i) or (ii), such ineffectiveness shall not invalidate any other provision of this Agreement.  In any event, upon any such determination that any term or other provision is invalid, illegal or unenforceable, the Merck and the Settling Plaintiffs shall negotiate in good faith to modify this Agreement so as to effect the original intent of the Parties as closely as possible to the fullest extent permitted by applicable law.

13.5    Facsimile Signatures

  13.5.1    This Agreement and any amendments thereto, to the extent signed and delivered by means of a facsimile machine or electronic scan (including in the form of an Adobe Acrobat PDF file format), shall be treated in all manner and respects as an original agreement and shall be considered to have the same binding legal effect as if it were the original signed version thereof delivered in person.

13.6    Construction

  13.6.1    With regard to each and every term and condition of this Agreement, the parties thereto understand and agree that the same have or has been mutually negotiated, prepared and drafted, and if at any time the parties thereto desire or are required to interpret or construe any such term or condition or any agreement or instrument

PRIVATE TPP SETTLEMENT AGREEMENT AND RELEASE

subject hereto, no consideration shall be given to the issue of which party thereto actually prepared, drafted or requested any term or condition of thereof.

13.7    Entire Agreement

13.7.1    This Agreement, including the agreements which constitute Exhibits to this Agreement, contain the entire agreement between the Parties with respect to the subject matter hereof and supersede and cancels all previous agreements, negotiations, and commitments in writings between the Parties hereto with respect to the subject matter hereof.

13.8    Headings; References

13.8.1    The headings of the Articles and Sections herein are inserted for convenience of reference only and are not intended to be a part of or to affect the meaning or interpretation of this Agreement.  Any reference to an Exhibit shall be deemed to refer to the applicable Exhibit attached hereto. The words "include" and "including" and words of similar import when used in this Agreement or any Exhibit hereto are not limiting and shall be construed to be followed by the words "without limitation," whether or not they are in fact followed by such words. The definitions contained in this Agreement or any Exhibit hereto are applicable to the singular as well as the plural forms of such terms.  Words of any gender (masculine, feminine, neuter) mean and include correlative words of the other genders.  As used herein or in any Exhibit hereto, the term "dollars" and the symbol "S", shall mean United States dollars.  References herein to instruments or documents being submitted "by" any Party include (whether or not so specified) submission of the same on behalf of such Party by its Counsel whether or not so specified, provided that if any particular instrument or document is required herein to be executed by a particular Party, it must (unless otherwise expressly specified herein) be so executed by such Party. References herein to any particular Section (such as, for example, Section 3.1) shall be deemed to refer to all sub-Sections of such Section (such, as for example, Section 3.1.1, 3.1.2, etc.), all sub-sub-Sections of such sub-Sections, and so on; the corresponding principle applies to all references herein to any particular sub-Section, sub-sub-Section and so on.

13.9    No Third Party Beneficiaries; Assignment

13.9.1    No provision of this Agreement or any Exhibit thereto is intended to create any third-party beneficiary to this Agreement.  For the avoidance of doubt, nothing in this Section limits or modifies the third-party beneficiary provisions of any Release or Stipulation of Dismissal With Prejudice.  This Agreement and all of the provisions hereof shall be binding upon and inure to the benefit of the Parties hereto and their respective successors and permitted assigns; provided, however, that neither this Agreement nor any of the rights, interests, or obligations hereunder may be assigned by Settling Plaintiffs without the prior written consent of Merck.  Any assignment in violation of this Section shall be null and void *ab initio*.

PRIVATE TPP SETTLEMENT AGREEMENT AND RELEASE

13.10   Amendments; No Implied Waiver

       13.10.1   This Agreement may be amended by (and only by) an instrument signed by Merck, on the one hand, and the Settling Plaintiffs, on the other hand.  Except where a specific period for action or inaction is provided herein, no failure on the part of a Party to exercise, and no delay on the part of either Party in exercising, any right, power or privilege hereunder shall operate as a waiver thereof; nor shall any waiver on the part of either Party of any such right, power or privilege, or any single or partial exercise of any such right, power or privilege, preclude any other or further exercise thereof or the exercise of any other right, power or privilege; nor shall any waiver on the part of a Party, on any particular occasion or in any particular instance, of any particular right, power or privilege operate as a waiver of such right, power or privilege on any other occasion or in any other instance.

13.11   Counterparts

       13.11.1   This Agreement may be executed in any number of counterparts, each of which shall be an original and all of which shall together constitute one and the same instrument.  It shall not be necessary for any counterpart to bear the signature of all Parties hereto.

       13.11.2   Counsel for any party shall be authorized to assemble a composite counterpart which shall consist of one copy of each page, except the signature pages, together with multiple counterpart signature pages executed on behalf of every party to this Settlement Agreement.  The composite counterpart may then be used by any party for all purposes as the complete signed and executed Settlement Agreement among the parties.

13.12   Tax Matters

       13.12.1   The Parties agree that, in the event interest is to be earned or is earned on any funds placed into escrow under this Agreement, to characterize the Escrow Account established under the Escrow Agreement for federal, state and local income tax purposes in such manner as is reasonably determined by Merck, including without limitation as a "qualified settlement fund" within the meaning of Treasury Regulation Section 1.468B-1 or as a grantor trust pursuant to an election under Treasury Regulation Section 1.468B-1(k) or otherwise.  The Escrow Agent and Merck shall timely provide the other with such material and relevant information as and to the extent reasonably requested by the other party in connection with any tax filing or the payment of any taxes or any private letter ruling regarding the tax status of the Funds.

13.13   Further Assurances

       13.13.1   From time to time, Merck and each Settling Plaintiff shall take such reasonable actions consistent with the terms of this Agreement as may reasonably be requested by the other Party, and otherwise reasonably cooperate with the other Party in a manner consistent with the terms of this Agreement as reasonably requested by such other

PRIVATE TPP SETTLEMENT AGREEMENT AND RELEASE

Party as may be reasonably necessary in order further to effectuate the intent and purposes of this Agreement and to carry out the terms hereof.

13.14   Representation and Voluntary Execution

13.14.1   Each party to this Private TPP Settlement Agreement and Release represents and acknowledges that it has been represented by counsel with respect to this Agreement and any and all matters covered by or related to such Agreement. Each party has been fully advised with respect to all rights which are affected by this Agreement. Each party signing represents and warrants that it read, knows, and understands the contents of this Agreement, has executed this Agreement voluntarily, and has not been influenced by any person or persons or attorney acting on behalf of any other party.

13.15   Survival of Representations and Warranties

13.15.1   All representations and warranties of the parties to this Private TPP Settlement Agreement have been and will be relied on by the other parties to this Agreement notwithstanding any investigation made by them.

13.16   No Effect on Settling Plaintiffs' Reimbursement

13.16.1   This private TPP Settlement Agreement shall have no effect on any Settling Plaintiffs' or Releasing Parties' claims in the Private Lien Settlement Program relating to Vioxx, nor shall it be construed to release or impair any Settling Plaintiff's or Releasing Parties' contractual or equitable claims to collect or be paid reimbursement from recoveries of covered or insured individuals or employers who or which recover money from Merck or another Released Party with respect to that party's use of Vioxx.

IN WITNESS WHEREOF, the parties hereto have duly executed this Settlement Agreement as of September 14, 2009.

**COUNSEL OF RECORD FOR VARIOUS SETTLING PLAINTIFFS**
**For: Aetna Inc, Amerigroup Corporation, Arkansas Blue Cross and Blue Shield, A Mutual Insurance Company, Asuris NW (Regence), AvMed, Inc., Blue Cross Blue Shield Association, BlueCross BlueShield of Arizona, BCBSD, Inc. d/b/a Blue Cross Blue Shield of Delaware, BlueCross BlueShield of Florida, Inc. Blue Cross and Blue Shield of Kansas City, Blue Cross and Blue Shield of Massachusetts, Inc., Blue , Blue Cross & Blue Shield of Mississippi, Blue Cross and Blue Shield of North Carolina, Blue Cross & Blue Shield of Rhode Island, BlueCross BlueShield of Tennessee, Inc., Blue Cross and Blue Shield of Vermont,  Blue Shield of California, CareFirst, Inc., CIGNA HealthCare, Inc. (including Great-West), Coventry Health Care Inc., EmblemHealth Services Company, LLC, on behalf of its licensed affiliates, HIP Health Plan of New York and Group Health Inc. and their licensed subsidiaries,  HMO Partners d/b/a/ Health Advantage (BCBS Arkansas), Golden Rule Insurance Company, Government Employees Health Association, Inc., Guardian Life Insurance Company of America (The), Harvard Pilgrim Health Care, Inc., Hawaii Medical Service Association,  Health Net, Inc., HealthNow NY, HealthPartners Inc.,**

PRIVATE TPP SETTLEMENT AGREEMENT AND RELEASE

Highmark West Virginia d/b/a/ Mountain States Blue Cross and Blue Shield, Horizon Blue Cross and Blue Shield, Humana Inc., Johns Hopkins, KPS Health Plans, Mailhandlers Health Benefit Plan, Medica Health Plans Inc., Medical Mutual of Ohio, Mutual of Omaha Insurance Company, Noridian Mutual Insurance Company, Oxford Health Plans LLC, Premera Blue Cross, Priority Health, Regence Blue Cross Blue Shield, Regence Blue Cross Blue Shield of Oregon, Regence Blue Cross Blue Shield of Utah, Regence Life & Health, Trustmark Insurance Company, Trustmark Life Insurance Company, Tufts Asocated Health Maintenance Organization, Inc., United HealthCare Services, Inc., USAble Life (BCBS Arkansas), Verizon Communications Inc., Vista Health Plan, Wellcare Health Plans, Inc., Wellmark Inc. d/b/a/ Wellmark Blue Cross Blue Shield of Iowa, Wellmark Health Plan of Iowa, Wellmark South Dakota, WellPoint, Inc.

By:

Mark D. Fischer
RAWLINGS & ASSOCIATES, PLLC
325 West Main Street
Suite 1700
Louisville, KY 40202
Telephone: (502) 814-2139

By:

Bill Carmody
SUSMAN GODFREY LLP
5th Floor
654 Madison Avenue
New York, NY 10065
Telephone: (212) 336-8330

For International Union of Operating Engineers Local No. 68 Welfare Fund and other Settling Plaintiffs not identified above:

Christopher A. Seeger
SEEGER WEISS LLP
One William Street
New York, NY 10004
Telephone: (212) 584-0700

By:

Richard W. Cohen
LOWEY DANNENBERG COHEN &
HART, P.C.
White Plains Plaza – 5th Floor
One North Broadway
White Plains, NY 10601
Telephone: (914) 997-0500

For Health Plan of San Mateo and other Settling Plaintiffs not identified above:

Thomas M. Sobol
HAGENS BERMAN SOBOL SHAPIRO
LLP
55 Cambridge Parkway
Suite 301
Cambridge, MA 02142
Telephone: (617) 482-3700

23

PRIVATE TPP SETTLEMENT AGREEMENT AND RELEASE

**Rust Consulting, Inc.,**
solely as to Article VII

By _____

Thomas R. Glenn
Executive Vice President
5210 Hood Road
Palm Beach Gardens, Florida 33418

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK

MERCK'S SIGNATURE PAGE, EXHIBIT LIST AND EXHIBITS FOLLOW THIS PAGE]

24

PRIVATE TPP SETTLEMENT AGREEMENT AND RELEASE

**MERCK & CO., INC.**

By: _Bruce Kuhlik_          9/14/09

Bruce N. Kuhlik
~~Senior~~ Vice President and General Counsel
Merck & Co., Inc.
One Merck Drive
P.O. Box 100 (WS3A-15)
Whitehouse Station, NJ 08889-0100
Telecopier: (908) 735-1244
Email: Bruce_Kuhlik@Merck.com

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK

EXHIBIT LIST AND EXHIBITS FOLLOW THIS PAGE.]

25

PRIVATE TPP SETTLEMENT AGREEMENT AND RELEASE

**LIST OF EXHIBITS**

**EXHIBIT A – LIST OF SETTLING PLAINTIFFS**

**EXHIBIT B – FORM FOR THE ACKNOWLEDGMENT AND ACCEPTANCE OF THE PRIVATE TPP SETTLEMENT AGREEMENT AND RELEASE BY SETTLING PLAINTIFFS**

**EXHIBIT C – FORM OF STIPULATION OF DISMISSAL WITH PREJUDICE**

**EXHIBIT D – FORM OF ESCROW AGREEMENT**

[EXHIBITS FOLLOW THIS PAGE]

**EXHIBIT A – PRIVATE TPP SETTLEMENT AGREEMENT AND RELEASE**

## <u>LIST OF SETTLING PLAINTIFFS</u>

| |
|---|
| Aetna, Inc |
| AFTRA Health Fund |
| Allied Services Division Welfare Fund |
| Amalgamated Workers Union Local 88 Welfare Fund |
| American Community Mutual Insurance Company |
| American Family Group |
| AMERIGROUP Corporation |
| AmGUARD Insurance Company |
| Arkansas Blue Cross and Blue Shield, A Mutual Insurance Company |
| Asbestos Workers Local 42 Welfare Fund |
| Assurant |
| Asuris Northwest Health |
| Atlantic Mutual Insurance Group |
| AvMed, Inc. |
| Bay Area Delivery Drivers |
| BCBSD, Inc. d/b/a Blue Cross Blue Shield of Delaware |
| Blue Cross Blue Shield of Alabama |

**EXHIBIT A – PRIVATE TPP SETTLEMENT AGREEMENT AND RELEASE**

## LIST OF SETTLING PLAINTIFFS

| |
|---|
| Blasters, Drillrunners and Miners Union Local |
| Blue Cross & Blue Shield of Mississippi |
| Blue Cross & Blue Shield of Rhode Island |
| Blue Cross and Blue Shield of Arizona, Inc. |
| BlueCross and BlueShield of Florida, Inc. |
| Blue Cross and Blue Shield of Kansas City |
| Blue Cross and Blue Shield of Kansas, Inc. |
| Blue Cross and Blue Shield of Massachusetts, Inc. |
| Blue Cross and Blue Shield of North Carolina |
| Blue Cross and Blue Shield of Vermont |
| Blue Cross Blue Shield Association |
| BlueCross BlueShield of Tennessee |
| Blue Cross of Michigan |
| Blue Cross of Minnesota |
| Blue Cross of Nebraska |
| Blue Shield of California |
| Bricklayers of Indiana Welfare Fund |

**EXHIBIT A – PRIVATE TPP SETTLEMENT AGREEMENT AND RELEASE**

## LIST OF SETTLING PLAINTIFFS

| |
|---|
| Brotherhood of Firemen & Oilers Local 1201 Health & Welfare Fund |
| CareFirst, Inc. |
| Cavalier Homes, Inc |
| Cement Masons Local 592 |
| Centene |
| Central Pennsylvania Teamsters Health Welfare and Pension Fund |
| Central States, Southeast and Southwest Areas Health and Welfare Fund |
| CIGNA |
| Commonwealth Care Alliance |
| Connecticut General Life Insurance Company |
| Coventry Health Care |
| Dealers-Unions Insurance Fund |
| EastGUARD Insurance Company |
| Engineers |
| Engineers Local 137 |
| Engineers Local 14 |
| Engineers Local 15 |
| Excellus Health Plan, Inc. |
| Frankenmuth Financial Group |

**EXHIBIT A – PRIVATE TPP SETTLEMENT AGREEMENT AND RELEASE**

## <u>LIST OF SETTLING PLAINTIFFS</u>

| |
|---|
| Golden Rule Insurance Company |
| Government Employee's Health Association, Inc. |
| Great West Life & Annuity Insurance Company |
| Greater New York Benefit Fund (1199SEIU) |
| Group Health Incorporated |
| GUARD Insurance Company |
| The Guardian Life Insurance Company of America |
| Harleysville Insurance Co |
| Harvard Pilgrim Health Care, Inc. |
| Hawaii Medical Service Association |
| Health and Welfare Fund of the Detectives Endowment Association Inc |
| Health Care Service Corporation |
| Health Net, Inc. |
| Health Plan of San Mateo |

**EXHIBIT A – PRIVATE TPP SETTLEMENT AGREEMENT AND RELEASE**

## <u>LIST OF SETTLING PLAINTIFFS</u>

| |
|---|
| Health Plus of Louisiana Inc |
| HealthNow NY |
| Highmark West Virginia Inc. d/b/a Mountain State Blue Cross and Blue Shield |
| Highmark, Inc. |
| HIP Health Plan of New York |
| Health Partners, Inc. |
| HMO Partners, Inc. d/b/a Health Advantage |
| Horizon Blue Cross of New Jersey |
| Humana, Inc. |
| IBEW 673 Fringe Benefit Funds |
| IBEW Local 129 Fringe Benefit Funds |
| IBEW Local 32 Health and Welfare Fund |
| IBEW Local 683 Fringe Benefit Funds |
| Independence Blue Cross |
| Independent Health Association, Inc. |
| Independent Health Corporation, Inc. |
| Independent Heath Benefits Corporation, Inc. |
| Indiana Bricklayers Local No. 6 Welfare Trust Fund |
| Indiana Carpenters Health and Welfare Fund |

**EXHIBIT A – PRIVATE TPP SETTLEMENT AGREEMENT AND RELEASE**

## LIST OF SETTLING PLAINTIFFS

| |
|---|
| Indiana Electrical Workers Benefit Trust |
| Indiana Laborers Welfare Fund |
| Indiana State Council of Carpenters Health and Welfare Fund |
| Indiana State Council of Roofers Health and Welfare Fund |
| Indiana State District Council of Laborers and Hod Carriers Welfare Fund |
| International Association of Firefighters Local 22 Health & Welfare Fund |
| International Brotherhood of Electrical Workers 43 and Electrical Contractors Health and Welfare Fund |
| International Brotherhood of Teamsters |
| International Union of Operating Engineers Local 825 Welfare Fund |
| International Union of Painters and Allied Trades District Council 21 Fund |
| Iron Workers Locals 40, 361 and 417 Health and Vacation Fund |
| Ironworkers Local 580 Insurance Fund |

EXHIBIT A – PRIVATE TPP SETTLEMENT AGREEMENT AND RELEASE

## LIST OF SETTLING PLAINTIFFS

| |
|---|
| Johns Hopkins Health Care LLC |
| Kaiser Foundation Health Plan |
| KPS Health Plans |
| Local 237 Teamsters Brentwood School District Health & Welfare Trust Fund |
| Local 237 Teamsters North Babylon School District Health & Welfare Trust Fund |
| Local 237 Teamsters Plainview Old Bethpage Central School District Health & Welfare Trust Fund |
| Local 237 Teamsters Retirees Benefit Fund |
| Local 237 Teamsters Suffolk Regional Off Track Betting Corporation Health & Welfare Trust Fund |
| Local 282 Welfare Fund |
| Local 400 Welfare Fund |
| Local 522 Welfare Fund of New York and New Jersey |
| Local 7 Tile Industry Welfare Fund |
| Louisiana Health Service Indemnity Company |
| The Mail Handlers Benefit Plan |

**EXHIBIT A – PRIVATE TPP SETTLEMENT AGREEMENT AND RELEASE**

## LIST OF SETTLING PLAINTIFFS

| |
|---|
| Marble Industry Trust Fund |
| Medical Mutual of Ohio |
| Michiana Area Electrical Workers Health and Welfare Fund |
| Michigan Health Maintenance Organization Plans, Inc., f/k/a Omnicare Health Plan, Inc. (Ken Ross) |
| Midwest Operating Engineers Health & Welfare Fund |
| Molina Health Care |
| Motion Picture Laboratory Technicians and Film Editors Local 780 Welfare Fund |
| Mutual of Omaha Insurance Company |
| MVP Health Care, Inc |
| MVP Health Insurance Company, Inc |
| MVP Health Plan, Inc |
| MVP Select Care, Inc |
| NALC Health Benefit Plan |
| NALC Health Benefit Plan for Employees and Staff |
| National Benefit Fund |

**EXHIBIT A – PRIVATE TPP SETTLEMENT AGREEMENT AND RELEASE**

## LIST OF SETTLING PLAINTIFFS

| |
|---|
| National Benefit Fund (Home Care Employees) |
| National Elevator Industry Benefits |
| New York City District Council of Carpenters Welfare Fund |
| NorGUARD Insurance Company |
| Noridian Mutual Insurance Company |
| NOVA Healthcare Administrators |
| NY State Teamsters Council Health and Hospital Fund |
| Office of Financial and Insurance Services for the State of Michigan, Wellness Plan (Ken Ross) |
| Ohio Carpenters Health Fund |
| Ohio State IBEW Health & Welfare Fund |
| Oxford Health Plans, LLC |
| Painters District Council No 30 Health and Welfare, |
| Painters Local No. 469 Health and Welfard Fund |
| Painting Industry Insurance and Annuity Funds |

**EXHIBIT A – PRIVATE TPP SETTLEMENT AGREEMENT AND RELEASE**

## <u>LIST OF SETTLING PLAINTIFFS</u>

| |
|---|
| Pennsylvania Employees Benefit Trust Fund |
| Pension, Hospitalization and Benefit Plan of the Electrical Industry |
| Philadelphia Federation of Teachers Health and Welfare Fund |
| Pipe Trades Industry Health and Welfare Plan |
| Plasterers Local 8 Health & Welfare Fund |
| Plumbers and Steamfitters Local 42 Health and Welfare Plan |
| Plumbers and Steamfitters Local 440 Health and Welfare Plan |
| Plumbers and Steamfitters Local No. 166 Health and Welfare Plan |
| Plumbers Local No. 210 Health and Welfare Fund |
| PMA Insurance Group |
| Preferred Administrative Services, Inc |
| Preferred Assurance Company, Inc |
| Premera Blue Cross |
| Priority Health |

**EXHIBIT A – PRIVATE TPP SETTLEMENT AGREEMENT AND RELEASE**

## LIST OF SETTLING PLAINTIFFS

| |
|---|
| Professional Benefit Administrators, Inc |
| QCA Health Plan |
| Regence BlueCross BlueShield of Oregon |
| Regence BlueCross BlueShield of Utah |
| Regence BlueShield |
| Regence BlueShield of Idaho |
| Regence Life and Health Insurance Company |
| Retiree Health and Welfare Fund of the Detectives Endowment Association Inc |
| Rochester Area Health Maintenance Organization, Inc |
| Roofers Local 30 Health |
| Sergeants Benevolent Assn Health and Welfare Fund |
| Service Employee International Union Local No. 3 Health and Welfare Fund |
| Service Employees International Union (1199P) |
| SFM Mutual Insurance Company |

**EXHIBIT A – PRIVATE TPP SETTLEMENT AGREEMENT AND RELEASE**

## LIST OF SETTLING PLAINTIFFS

| |
|---|
| Sheet Metal Workers Local No 19 Fund |
| Sheet Metal Workers Local No. 20 Welfare and Benefit Fund |
| Southern California Permanente Medical Group |
| Southern Ohio Painters Health and Welfare Fund |
| Steamfitters Local 420 Welfare Fund |
| Teamsters Benefit Trust |
| Teamsters Local 1205 Welfare Fund |
| Teamsters Local 175 505 Health and Welfare Trust Fund |
| Teamsters Local 20 Insurance Fund |
| Teamsters Local 237 Welfare Fund |
| Teamsters Local 804 Welfare Fund |
| Teamsters Local 830 Health & Welfare Fund |
| The Steamfitters' Industry Welfare Fund |
| Trustmark Life Insurance Company and Trustmark Insurance Company |
| Tufts Associated Health Maintenance Organization, Inc. |

**EXHIBIT A – PRIVATE TPP SETTLEMENT AGREEMENT AND RELEASE**

## LIST OF SETTLING PLAINTIFFS

| |
|---|
| UFCW Local 1776 |
| Uniformed Sanitationmens Assn Retirees Welfare And Security Benefits Funds |
| United Food and Commercial Workers Union-Employer Health and Welfare Fund |
| United HealthCare Services, Inc. |
| United Independent Union Health & Welfare Fund |
| UnitedHealth Group Incorporated |
| Universal American Corp. |
| Upstate Administrative Services, Inc |
| USAble Life |
| Vista Healthplan, Inc. |
| Welfare Fund of Heat and Frost Insulators Local 12 |
| WellCare Health Plans, Inc. |
| Wellmark Health Plan of Iowa, Inc. |
| Wellmark, Inc. d/b/a Wellmark Blue Cross and Blue Shield of Iowa |
| Wellmark of South Dakota, Inc. d/b/a Wellmark Blue Cross and Blue Shield of South Dakota |
| WellPoint, Inc. |
| WestGUARD Insurance Company |

**EXHIBIT A – PRIVATE TPP SETTLEMENT AGREEMENT AND RELEASE**

## LIST OF SETTLING PLAINTIFFS

| |
|---|
| County of Suffolk, NY |
| Blue Cross of Idaho Health Service, Inc. |
| Oklahoma State and Education Employees Group Insurance Board |
| Oklahoma Public Employees Health and Welfare Trust |

## EXHIBIT B – FORM OF ACKNOWLEDGEMENT AND ACCEPTANCE OF PRIVATE TPP SETTLEMENT AGREEMENT AND RELEASE

I, the undersigned, on behalf of the Participating Health Plan identified below, do hereby certify under penalty of perjury that I, on behalf of this Participating Health Plan, have read, understand, accept and agree to the Private TPP Agreement and Release dated as of July__, 2009 by and among Merck & Co., Inc. and the Settling Plaintiffs (the "Agreement").

I further certify that I have been authorized by this Participating Health Plan to accept and sign the Agreement on its behalf and to do so in the manner set forth herein.  My execution of this Acknowledgement and Acceptance constitutes this Participating Health Plan's participation in the Agreement as a "Settling Plaintiff" (as that term is defined in the Agreement) in lieu of executing the Agreement itself, and constitutes its agreement to, and acceptance of, every benefit, obligation, term, condition and representation set forth in the Agreement referable to Settling Plaintiffs, including but not limited to the release and indemnity provisions set out in Article IV of the Agreement, the terms of which Agreement are incorporated herein by reference.

**[Entity Name]**                                By:    _____

                                                 Signature

                                                 _____

                                                 Print Name

                                                 _____

                                                 Title

                                                 _____

                                                 Date Executed

## NOTARIZATION OF RELEASOR'S SIGNATURE

STATE OF _____

COUNTY OF _____

Personally appeared before me, the undersigned Notary Public, on this the _____ day of _____, 2009, _____, to me known, or proved to me on the basis of satisfactory evidence, to be the person who executed the foregoing instrument and who acknowledged to me that he/she executed the same in their authorized capacity identified above on behalf of the entity set forth above and that he/she did so with full authority, and he/she/they acknowledged that he/she/they executed the same as a free act and deed.

                                                 _____

                                                 Notary Public

Counsel Name:_____

Firm:_____

Address:_____

City/State:_____

Tel._____

Fax_____

**EXHIBIT C – PRIVATE TPP SETTLEMENT AGREEMENT AND RELEASE
FORM OF STIPULATION OF DISMISSAL**

[COURT]

```
-------------------------------------------------------------------  X
  [insert name]_____,                          :
                                                         :         Index No. _____
                                Plaintiff,               :
v.                                                       X
                                                         :
Merck & Co., Inc.                                        :      STIPULATION OF DISMISSAL
                                                         :      WITH PREJUDICE
                                Defendant.               :
-------------------------------------------------------------------  X
```

**IT IS STIPULATED AND AGREED** by Plaintiff_____, and Defendant Merck &

Co., Inc., through authorized counsel below, that pursuant to FRCP 41(a)(1)(A)(ii) [*or equivalent*

*state court rule*], the above captioned action, is hereby dismissed by Plaintiff above with

prejudice and with each party to bear its own costs and attorneys' fees.

Dated:  [*insert locale*]
        August __, 2009

PLAINTIFFS                                  DEFENDANTS
By authorized counsel:                      By authorized counsel:


_____           _____
[name]                                      [name]
[firm]                                      [firm]
[address]                                   [address]
[phone]                                     [phone]

*Counsel for Plaintiff*                     *Counsel for Defendant* Merck & Co., Inc.

**EXHIBIT D – PRIVATE TPP SETTLEMENT AGREEMENT AND RELEASE**
**FORM OF PRIVATE TPP ESCROW AGREEMENT**

## ESCROW AGREEMENT TO THE PRIVATE TPP SETTLEMENT

      This Escrow Agreement (this Escrow Agreement, including all exhibits attached hereto, all of the terms and conditions which are incorporated herein by reference, in each case as amended and/or supplemented from time to time in accordance with the terms hereof, this "Escrow Agreement") is entered into as of September___, 2009 by Merck & Co., Inc., a corporation of the State of New Jersey, ("Merck"), acting through its designated representative, Bruce N. Kuhlik, solely in his capacity as Senior Vice President and General Counsel of Merck, or such successor or other individual designated by Merck to act in such capacity (the "Defendant Representative"), the Settling Plaintiffs listed on the attached Exhibit 1, acting through their undersigned counsel (the "Settling Plaintiffs' Counsel"), Rust Consulting, Inc., as "Claims Administrator" (the "Settling Plaintiffs' Representatives") and Citibank, N.A., a national banking association organized and existing under the laws of the United States of America and acting solely in its capacity as escrow agent under this Escrow Agreement (the "Escrow Agent").

WITNESSETH:

      WHEREAS, the Settling Plaintiffs and Merck have entered into a Private TPP Settlement Agreement and Release dated as of August___, 2009 (the "Agreement");

      WHEREAS, the Agreement requires the Settling Plaintiffs and Merck to authorize and cause this Escrow Agreement to be entered;

      WHEREAS, Rust Consulting, Inc. has been authorized by the Settling Plaintiffs to jointly enter into this Escrow Agreement on behalf of and for the benefit of Settling Plaintiffs; and

      WHEREAS, Bruce N. Kuhlik, Senior Vice President and General Counsel, Merck & Co., Inc. has been authorized by Merck to jointly enter into this Escrow Agreement on behalf of and for the benefit of Merck and all Released Parties.

      NOW, THEREFORE, the Settling Plaintiffs' Representatives and the Defendant Representative, on behalf of the Settling Plaintiffs and Merck, respectively, the Settling Plaintiffs' Counsel, and the Escrow Agent hereto agree as follows:

**EXHIBIT D – PRIVATE TPP SETTLEMENT AGREEMENT AND RELEASE**
**FORM OF PRIVATE TPP ESCROW AGREEMENT**

Section 1.    *Appointment of Escrow Agent.*

The Settling Plaintiffs' Representatives and the Defendant Representative on behalf of the Settling Plaintiffs and Merck, respectively, hereby appoint Citibank, N.A., to serve as Escrow Agent and to open and maintain a separate escrow account, which shall be titled "VIOXX PRIVATE TPP Escrow Account" (hereinafter the "Escrow Account"), solely upon the terms and conditions set forth in this Escrow Agreement.  The Escrow Agent, by its execution hereof, hereby accepts such appointment and agrees to establish and maintain the Escrow Account and to perform the duties and obligations of the Escrow Agent set forth herein.

Section 2.    *Definitions.*

(a)    "Business Day" means any day other than (i) a Saturday or a Sunday or (ii) a day on which commercial banks in New York, New York are closed.

(b)    "Claims Administrator" shall mean Rust Consulting, Inc., acting as the claims administrator pursuant to the Agreement.

(c)    "Settling Plaintiffs' Representatives" shall mean  Rust Consulting Inc.'s executives Thomas Glenn, Paul Vogel and Galen Vetter, acting jointly and not severally, and who may take any act permitted of the Settling Plaintiffs' Representatives under this Escrow Agreement, only by signatures of two of these three designated individuals.  Any writing signed by less than two of these three designated individuals shall have no effect whatsoever and shall not operate to create any obligation or potential liability upon the Escrow Agent.  However, such writing may be signed and delivered in counterparts.

(d)    "Settling Plaintiffs' Counsel" shall mean Mark D. Fischer of the law firm Rawlings & Associates PLLC, Richard W. Cohen of the law firm Lowey Dannenberg Cohen & Hart, P.C., and Christopher Seeger of the law firm Seeger Weiss, acting jointly and not severally, and who make take any action permitted of Settling Plaintiffs' Counsel under this Escrow Agreement only by a writing signed by all three Settling Plaintiffs' Counsel, except as provided in Section 5(b); otherwise any writing signed by less than all three of these designated individuals shall have no effect whatsoever and shall not operate to create any obligation or potential liability upon the Escrow Agent or Settling Plaintiffs' Representatives.  However, such writing may be signed and delivered in counterparts.

**EXHIBIT D – PRIVATE TPP SETTLEMENT AGREEMENT AND RELEASE**
**FORM OF PRIVATE TPP ESCROW AGREEMENT**

Section 3.      *Escrow and Escrow Account.*

(a)      Any and all funds to be deposited into the Escrow Account shall be electronically delivered to the Escrow Agent via wire transfer of immediately available funds or by check deposited sufficiently in advance that the funds clear and are available within the time required under the Agreement.  All such funds shall be held and disbursed solely in accordance with the terms of this Escrow Agreement.  All such funds (the "Escrow Deposit") and any interest thereon minus any distributions made therefrom from time to time in accordance with the terms of this Escrow Agreement shall constitute the "Escrow Property" and shall be held by the Escrow Agent in the Escrow Account separate and apart from all other funds and accounts of the Escrow Agent, the Settling Plaintiffs, the Settling Plaintiffs' Representatives, the Settling Plaintiffs' Counsel, the Defendant's Representative and Merck. The Escrow Agent shall have no duty to solicit the delivery of any Escrow Property into the Escrow Account.

(b)      The Escrow Deposit held in the Escrow Account shall be invested in a fully-insured non-interest bearing deposit account at Citibank, N.A., unless otherwise instructed in writing by Settling Plaintiffs' Counsel.  It is the intent of this Escrow Agreement that the Escrow Account not be an account under any IOLTA statute or regulation.

(c)      All Escrow Property credited to the Escrow Account shall be retained in such Escrow Account until disbursed therefrom in accordance with the provisions of this Escrow Agreement and the Escrow Agent's receipt of the written instructions from either (i) Settling Plaintiffs' Representatives or (ii) Settling Plaintiffs' Counsel.

(d)      To the extent the Escrow Property does earn interest (by virtue of superseding written instruction of Settling Plaintiffs' Counsel to the Escrow Agent to transfer all or any part of the Escrow Property in the Escrow Account into an interest-bearing account or other interest-bearing security of the United States Government), it is the intent of the Settling Plaintiffs, the Settling Plaintiffs' Representatives, the Settling Plaintiffs' Counsel, the Defendant's Representative and Merck that the Escrow Account be treated as a qualified settlement fund as set forth in Section 9 below.  The Settling Plaintiffs' Representatives and the Defendant's Representative on behalf of the Settling Plaintiffs and Merck, respectively, agree to take such steps as are reasonable and necessary to accomplish the foregoing, including seeking court approval of the Escrow Account as a qualified settlement fund.

(e)      To the extent the Escrow Property earns interest, the interest earned will be used for the following purposes and in the following order to:  (i) pay any tax liabilities due to the generation of the interest by the Escrow Property, (ii) pay any administrative fees, legal fees, and costs incurred by the Escrow Agent in the creation and maintenance of the Escrow Account, (iii) pay the reasonable fees and expenses in connection with the preparation of the

**EXHIBIT D – PRIVATE TPP SETTLEMENT AGREEMENT AND RELEASE**
**FORM OF PRIVATE TPP ESCROW AGREEMENT**

tax filings on behalf of the qualified settlement fund and/or Escrow Account; (iv) pay the costs and expenses of the Claim Administrator in connection with the administration of the Agreement, (v) be disbursed from the Escrow Account pursuant to the terms of this Escrow Agreement. To the extent no interest is earned by the Escrow Property, or not sufficient interest is earned, to pay the costs and expenses identified in this section, these costs and expenses shall be the sole and exclusive responsibility of the Settling Plaintiffs.

Section 4.     *Transfer of Funds into the Escrow Account.*

(a)     Within ten (10) Business Days following the execution of this Escrow Agreement by the last of all of the signatories to this Escrow Agreement, Merck shall electronically deposit, either via wire transfer of immediately available funds or by check deposited sufficiently in advance that the funds clear and are available within three (3) Business Days following the deposit into the Escrow Account, the amount of the Aggregate Settlement Payment under the terms of the Agreement, which is the sum of SIXTY FIVE MILLION DOLLARS ($65,000,000.00).

(b)     Wire transfers into the Escrow Account or checks deposited with the Escrow Agent must identify that the Escrow Deposit is being made on behalf of Merck.

(c)     On the Business Day following the day on which a wire transfer deposit is made to the Escrow Account or, in the case of a check deposit on the Business Day following the day on which the funds clear, the Escrow Agent shall deliver by facsimile to Settling Plaintiffs' Counsel, Merck, and the Settling Plaintiffs' Representatives, a written notice confirming the amount of funds received into the Escrow Account, the date such funds were received, and on whose behalf the Escrow Deposit was made.

Section 5.     *Disbursement of Funds from the Escrow Account.*

(a)     Under no circumstances shall the Escrow Agent disburse any Escrow Property from the Escrow Account pursuant to the provisions of this section prior to the receipt of written notice (the "Stipulation Confirmation Notice") from the Defendant's Representative confirming that all required stipulations of dismissal under the Agreement have been entered in the appropriate courts. Defendant's Representative shall deliver to the Escrow Agent the Stipulation Confirmation Notice not later than three (3) Business Days following the last entry of all of the stipulations of dismissal under the Agreement. Following the Escrow Agent's receipt of the Stipulation Confirmation Notice, neither Merck or the Defendant's Representative shall have any further right to issue instructions to the Escrow Agent pursuant to this Escrow Agreement.

**EXHIBIT D – PRIVATE TPP SETTLEMENT AGREEMENT AND RELEASE**
**FORM OF PRIVATE TPP ESCROW AGREEMENT**

   (b) Pursuant to the terms of the Agreement and this Escrow Agreement, the Claims Administrator shall give written notice (the "Administrator's Notice") to the Settling Plaintiffs' Counsel, with a simultaneous copy of such Administrator's Notice to each of the parties to this Escrow Agreement, setting forth the allocable amounts of the Escrow Property owed to each of the Settling Plaintiffs as soon as it has completed its duties under the Agreement to compute such amounts. Within 5 Business Days following the Escrow Agent's receipt of the Administrator's Notice (the "Notice Deadline"), the Settling Plaintiffs' Counsel shall have the right to distribute written notice ("Counsel's Disbursement Instruction"), provided such notice is unanimous among the Settling Plaintiffs' Counsel, to the Escrow Agent, with a simultaneous copy of such Counsel's Disbursement Instruction to each of the parties to this Escrow Agreement, (i) either confirming or objecting to the allocable amounts of the Escrow Property owed to each of the Settling Plaintiffs, and, (ii) in any event, providing the Escrow Agent with instructions to distribute the Escrow Property, which instructions shall include the amount of Escrow Property to be distributed promptly after the Notice Deadline to the Settling Plaintiffs' Representatives on behalf of the Settling Plaintiffs. In the event the Escrow Agent receives Counsel's Disbursement Instruction prior to the Notice Deadline, the Escrow Agent shall act in accordance with such Counsel's Disbursement Instruction promptly following the Notice Deadline, provided the Escrow Agent has not received a final, non-appealable order from a court of competent jurisdiction barring the payment of any portion of the Escrow Property from the Escrow Account. In the event the Escrow Agent does not receive Counsel's Disbursement Instruction prior to the Notice Deadline, the Escrow Agent shall not take any action on behalf of Settling Plaintiffs' Counsel, provided, however, that, in such event and after the Notice Deadline, the Settling Plaintiffs' Representatives shall promptly provide the Escrow Agent with written instruction of at least two of the individual Settling Plaintiffs' Representatives identified in Section 2(c) ("Representatives' Instruction"), with a simultaneous copy of such Representatives' Instruction to each of the parties to this Escrow Agreement, to distribute the Escrow Property, which instructions shall include the amount of Escrow Property to be promptly distributed to the Settling Plaintiffs' Representatives on behalf of the Settling Plaintiffs.

   (c) The Settling Plaintiffs have vested the Settling Plaintiffs' Representatives with the powers under Section 5(b) of this Escrow Agreement solely to avoid delay of payment to Settling Plaintiffs of the Escrow Property to or for the benefit of the Settling Plaintiffs for whom the Escrow Account is established, solely in the event that Settling Plaintiffs' Counsel do not themselves unanimously instruct the Escrow Agent to distribute the Escrow Property prior to the Notice Deadline.

   (d) On the first Business Day after disbursing Escrow Property from the Escrow Account pursuant to Section 5 above, the Escrow Agent shall deliver to the parties hereto, a written statement showing the amount disbursed, the date of such disbursement, the payee(s) of the disbursed funds, and the amount of Escrow Property remaining in the Escrow Account.

**EXHIBIT D – PRIVATE TPP SETTLEMENT AGREEMENT AND RELEASE**
**FORM OF PRIVATE TPP ESCROW AGREEMENT**

(e)     Upon the distribution of all Escrow Property in the Escrow Account pursuant to this section, the Escrow Account shall be closed and this Escrow Agreement shall be terminated.

(f)     In the event funds are deposited into the Escrow Account and the Agreement is terminated prior to the disbursement of any Escrow Property, the Settling Plaintiffs' Counsel and the Defendant's Representative shall provide joint written notice to each of the parties hereto that the Agreement has been terminated.

(g)     Within five (5) Business Days following receipt of notice that the Agreement has been terminated, the Escrow Agent shall disburse the entire Escrow Property by wire transfer in accordance with the account details set forth in the written instructions received from the Settling Plaintiffs' Counsel and the Defendant's Representative.

Section 6.     *Failure of Escrow Agent to Receive Notices or Instructions.*

In the event that the Escrow Agent fails to receive any signed instructions contemplated by this Escrow Agreement or there is ambiguity as to its duties or instructions, the Escrow Agent shall be fully protected in refraining from taking any action required under any section of this Escrow Agreement other than Section 7, its sole obligation shall be to keep safely the Escrow Account until such required signed instructions are received by the Escrow Agent.

Section 7.     *Investment of Funds by Escrow Agent.*

(a)     The Escrow Property shall be invested and reinvested in the Citibank Non-interest Bearing Cash Deposit Account ("CDA"), a fully FDIC (as hereinafter defined) insured non-interest bearing deposit account, unless otherwise directed in writing by the Settling Plaintiffs' Counsel to invest and reinvest all or any part of the Escrow Property in (i) United States Treasury securities having a maturity of not more than 365 days,or (ii) the Citibank Institutional Market Deposit Account, a dollar-for-dollar interest-bearing deposit obligation of Citibank, N.A., Federal Deposit Insurance Corporation ("FDIC") insured to the applicable limits.  Settling Plaintiffs' Counsel acknowledge that cash balances held in the CDA are fully guaranteed by the FDIC for the entire deposit balance through December 31, 2009, or any applicable extended date.  Should the Escrow Property remain on deposit after December 31, 2009 (or the applicable extended date for which balances in the CDA are fully insured by the FDIC), Settling Plaintiffs' Counsel will provide revised investment instructions in writing to the Escrow Agent.

(b)     The Escrow Agent is authorized to liquidate in accordance with its customary procedures any portion of the Escrow Property consisting of investments to provide

**EXHIBIT D – PRIVATE TPP SETTLEMENT AGREEMENT AND RELEASE**
**FORM OF PRIVATE TPP ESCROW AGREEMENT**

for payments required to be made under this Escrow Agreement. All interest shall be credited to, and become a part of, the Escrow Property, and any losses on any such investments shall be debited from the Escrow Account.

(c)     The Escrow Agent shall have no duty, responsibility or obligation to invest any funds or cash held in the Escrow Account other than in accordance with this Section 7. The Escrow Agent shall have no liability or responsibility for any investment losses, including without limitation any market loss on any investment liquidated (whether at or prior to maturity) in accordance with the terms of this Escrow Agreement.

(d)     The Escrow Agent may, in making or disposing of any investment permitted by this Escrow Agreement, deal with itself, in its individual capacity, or any of its affiliates, whether or not it or such affiliate is acting as a subagent of the Escrow Agent or for any third person or dealing as principal for its own account.

(e)     The Escrow Agent shall have no obligation to invest or reinvest the Escrow Property if all or a portion of the Escrow Property is deposited with the Escrow Agent after 11:00 a.m., New York City time, on the day of deposit. Instructions to invest or reinvest that are received after 11:00 a.m., New York City time, will be treated as if received on the following Business Day.

(f)     It is agreed and understood that the Escrow Agent may earn fees associated with the investments outlined above.

(g)     Neither the Escrow Agent nor any of its affiliates assume any duty or liability for monitoring any investment rating.

(h)     The Escrow Agent shall not be called upon to advise any party as to the wisdom in selling or retaining or taking or refraining from any action with respect to any property deposited or held hereunder. The parties to this Escrow Agreement acknowledge that non-deposit investment products are not obligations of, or guaranteed, by Citibank, N.A., nor any of its affiliates; are not FDIC insured; and are subject to investment risks, including the possible loss of principal amount invested. Only deposits in the United States are subject to FDIC insurance.

**EXHIBIT D – PRIVATE TPP SETTLEMENT AGREEMENT AND RELEASE**
**FORM OF PRIVATE TPP ESCROW AGREEMENT**

Section 8.     *Patriot Act Requirements.*

Pursuant to Section 326 of the USA PATRIOT Act and the Escrow Agent's identity verification procedures, each of the parties to this Escrow Agreement agrees to provide the Escrow Agent with, and consents to the Escrow Agent obtaining from third parties, any such identifying information required as a condition to opening an account with or using any service provided by the Escrow Agent, including, without limitation, its name, address and organizational documents.

Section 9.     *Substitute Form W-9, Qualified Settlement Fund.*

The Settling Plaintiffs' Representatives shall provide the Escrow Agent with a correct taxpayer identification number on a substitute Form W-9. To the extent the Escrow Account is transferred to an interest-bearing account, it is the intent that such Escrow Account at that time be qualified to be treated as a qualified settlement fund for federal, state, and local tax purposes pursuant to Treas. Reg. § 1.468B-1. It is the responsibility of the Settling Plaintiffs' Representatives to provide the Escrow Agent with a correct, taxpayer identification number on a substitute Form W-9 for the qualified settlement fund and to ensure compliance with all applicable tax filing and tax payment obligations, and any other payment and reporting requirements, arising from the Escrow Account, including, without limitation, those imposed under Treas. Reg. § 1.468B, and if necessary, the making of the relation-back election under such regulation. In the event it is necessary, the Settling Plaintiffs' Counsel are authorized and instructed to engage an accounting firm or make other suitable arrangements to fulfill the requirements of this section on behalf of the Settling Plaintiffs and for the benefit of Merck. The Escrow Agent has no responsibility to comply with the provisions of Treas. Reg. § 1.468B-1, nor shall it be deemed to have knowledge concerning the applicability of such regulation to this Escrow Agreement. The Escrow Agent shall be responsible only for income reporting to the Internal Revenue Service with respect to interest, if any, earned on the Escrow Property. This Section 9 shall survive the termination of this Escrow Agreement and the resignation or removal of the Escrow Agent.

Section 10.     *Duties and Liabilities of Escrow Agent.*

(a)     The Escrow Agent shall have no duty or obligation hereunder other than to take such specific actions as are required of it from time to time under the provisions of this Escrow Agreement, and it shall incur no liability hereunder or in connection herewith for anything whatsoever other than any liability resulting from its own gross negligence or willful misconduct, as adjudicated by a court of competent jurisdiction. The Escrow Agent shall not be charged with any knowledge of, or be bound in any way by, any agreements or contracts between or among any of the Settling Plaintiffs' Counsel, the Defendant's Representative, Merck, the Settling Plaintiffs' Representatives and the Settling Plaintiffs (whether or not the

**EXHIBIT D – PRIVATE TPP SETTLEMENT AGREEMENT AND RELEASE**
**FORM OF PRIVATE TPP ESCROW AGREEMENT**

Escrow Agent has knowledge thereof) other than this Escrow Agreement, and the only duties and responsibilities of the Escrow Agent shall be the duties and obligations specifically set forth in this Escrow Agreement.

(b)     The Escrow Agent shall provide to Merck its correct taxpayer identification number on a substitute Form W-9 upon execution of this Escrow Agreement.

(c)     The Escrow Agent is hereby expressly authorized, in its sole discretion, to obey and comply with all court orders or writs entered or issued, which it is advised by legal counsel of its own choosing is binding upon it, whether with or without jurisdiction, directed at the Escrow Property.  In the event that the Escrow Agent obeys or complies with any court order or writ directed at the Escrow Property, it shall not be liable to any of the parties hereto or to any other person, entity, firm or corporation, by reason of such compliance notwithstanding the fact that such court order or writ is subsequently reversed, modified, set aside or vacated.

(d)     The Escrow Agent shall be under no duty to afford the Escrow Property any greater degree of care than it gives its own similar property.  The Escrow Agent is authorized to act, and shall not be liable for acting, in reliance upon any judgment, order, instruction, notice, certification, demand, consent, authorization, receipt, power of attorney or other writing delivered to it by any other party to this Escrow Agreement without being required to determine the authenticity or validity thereof, the correctness of any fact stated therein, the propriety or validity of the service thereof, or the jurisdiction of the court issuing any judgement or order. The Escrow Agent may act in reliance upon any signature believed by it to be genuine and may assume that such person has been properly authorized to do so.  The Escrow Agent shall not be liable (i) for any indirect, consequential, punitive or special damages, regardless of the form of action and whether or not any such damages were foreseeable or contemplated, (ii) for the acts or omissions of any nominees, correspondents, designees, agents, subagents or subcustodians, (iii) for the investment or reinvestment of any Escrow Property held by it hereunder, in each case in good faith, in accordance with the terms hereof, including without limitation any liability for any delays (not resulting from its gross negligence or willful misconduct as adjudicated by a court of competent jurisdiction) in the investment or reinvestment of the Escrow Property, or any loss of interest incident to any such delays, or (iv) for an amount in excess of the value of the Escrow Property, valued as of the date of deposit, but only to the extent of direct monetary damages.

(e)     In the event of any disagreement among any of the parties to this Escrow Agreement, or between any of them and any other person, resulting in adverse claims or demands being made with respect to the subject matter of this Escrow Agreement, or in the event that the Escrow Agent, in good faith, is in doubt as to any action it should take hereunder, the Escrow Agent may, at its option, refuse to comply with any claims or demands and refuse to take any other action hereunder, so long as such disagreement continues or such doubt exists, and in any such event, the Escrow Agent shall not be liable in any way or to any person for its failure or refusal to act, and the Escrow Agent shall be entitled to continue to so refuse to act and refrain

**EXHIBIT D – PRIVATE TPP SETTLEMENT AGREEMENT AND RELEASE**
**FORM OF PRIVATE TPP ESCROW AGREEMENT**

from acting until (i) the rights of all parties having or claiming an interest in the Escrow Property or the Escrow Account shall have been fully and finally adjudicated by a court of competent jurisdiction, or all differences and doubts shall have been resolved by agreement among all of the interested parties, and (ii) the Escrow Agent shall, in the case of adjudication by a court of competent jurisdiction, have received a final order, judgment or decree by such court of competent jurisdiction, which order, judgment or decree is not subject to appeal, and in the case of resolution of differences and doubts by agreement, have received a notice in writing signed by an authorized person of each of the interested parties setting forth in detail the agreement.  The Escrow Agent shall have the option, after 30 calendar days' notice to the other parties of its intention to do so, to file an action in interpleader requiring the parties hereto to answer and litigate any claims and rights among themselves.  The reasonable costs and expenses (including reasonable attorneys' fees and expenses) incurred by the Escrow Agent in connection with such proceeding shall be paid by, and be the obligation of, the Settling Plaintiffs.  The rights of the Escrow Agent under this section are cumulative of all other rights which it may have by law or otherwise.

      (f)      The Escrow Agent may consult with legal counsel of its selection in the event of any dispute or question among the Defendant's Representative and Settling Plaintiffs' Counsel as to the meaning or construction of any of the provisions hereof or the Escrow Agent's duties hereunder, and shall incur no liability and shall be fully protected in acting in accordance with the opinion and instructions of such counsel.  The Settling Plaintiffs agree to reimburse the Escrow Agent on demand for the reasonable legal fees, disbursements and expenses incurred by the Escrow Agent in connection with reasonable and necessary consultation with legal counsel in response to a question or dispute referred to above.

Section 11.   *Indemnification of Escrow Agent.*

The Settling Plaintiffs and Merck, jointly and severally, shall indemnify, hold harmless and defend the Escrow Agent and its employees, officers and directors (each, an "Indemnified Party"), from and against any and all losses, claims, liabilities and reasonable expenses, including the reasonable fees of its counsel, which it or they may suffer or incur in connection with the performance of its duties and obligations under this Escrow Agreement, except for those losses, claims, liabilities and expenses resulting solely and directly from an Indemnified Party's own gross negligence or willful misconduct as adjudicated by a court of competent jurisdiction.  This Section 11 shall survive the termination of this Escrow Agreement and the resignation or removal of the Escrow Agent.

Section 12.   *Indemnification of Designated Representatives.*

The Settling Plaintiffs, jointly and severally, shall indemnify, hold harmless and defend their own respective designated authorized representatives identified above, from and

**EXHIBIT D – PRIVATE TPP SETTLEMENT AGREEMENT AND RELEASE**
**FORM OF PRIVATE TPP ESCROW AGREEMENT**

against any and all losses, claims, liabilities and reasonable expenses, including the reasonable fees of its counsel, which it or they may suffer or incur in connection with the performance of its duties and obligations under this Escrow Agreement, except for those losses, claims, liabilities and expenses resulting solely and directly from its or their own gross negligence or willful misconduct as adjudicated by a court of competent jurisdiction.  This Section 12 shall survive the termination of this Escrow Agreement.

Section 13.   *Resignation or Removal of Escrow Agent.*

(a)   The Settling Plaintiffs' Counsel and the Defendant's Representative may remove the Escrow Agent at any time by giving to the Escrow Agent fifteen (15) calendar days' prior joint signed notice of removal.  The Escrow Agent may resign at any time by giving to the Settling Plaintiffs' Counsel, the Settling Plaintiffs' Representatives, and Defendant's Representative fifteen (15) calendar days' prior written notice of resignation.

(b)   Within fifteen (15) calendar days after giving the foregoing notice of removal to the Escrow Agent or within fifteen (15) calendar days after receiving the foregoing notice of resignation from the Escrow Agent, the Settling Plaintiffs' Counsel and Defendant's Representative, shall appoint a successor escrow agent and give notice of such successor escrow agent to the Escrow Agent.  If a successor escrow agent has not accepted such appointment by the end of such (i) 15-day period, in the case of the Escrow Agent's removal, or (ii) 15-day period, in the case of the Escrow Agent's resignation, the Escrow Agent may, in its sole discretion, deposit the Escrow Property with the registry of the court in an interpleader action in the United States District Court for the Southern District of New York.

(c)   Upon receipt of notice of the identity of the successor escrow agent, the Escrow Agent shall either deliver the Escrow Property then held hereunder to the successor escrow agent, less the Escrow Agent's fees, costs, expenses and the value of other obligations owed to the Escrow Agent hereunder, or hold such Escrow Property (or any portion thereof) pending distribution, until all such fees, costs and expenses or the value of other obligations are paid to it.

(d)   Upon delivery of the Escrow Property to the successor escrow agent or pursuant to Section 13(b), the Escrow Agent shall have no further duties, responsibilities or obligations hereunder.

Section 14.   *Escrow Agent Fees and Expenses.*

To the extent that there is interest earned by the Escrow Property, and it is insufficient to pay the reasonable fees and expenses incurred in connection with the Escrow

**EXHIBIT D – PRIVATE TPP SETTLEMENT AGREEMENT AND RELEASE
FORM OF PRIVATE TPP ESCROW AGREEMENT**

Account, including but not limited to the reasonable fees and expenses of the Escrow Agent or any accounting or law firm performing services required under the terms of this Escrow Agreement, or other expenses set forth in Section [3(e)], the Settling Plaintiffs shall be responsible for paying 100% of the remaining unpaid fees and expenses out of funds held in Escrow Account.  For purposes of Section [3(e)] and this Section [14], the Escrow Agent's reasonable fees and expenses include all reasonable expenses, charges, counsel fees, and other disbursements incurred by it or by its attorneys, agents and employees in the performance of its duties and obligations under this Escrow Agreement.  This Section [14] shall survive the termination of this Escrow Agreement and the resignation or removal of the Escrow Agent.

Section 15.   *Notice.*

All notices, requests, demands, claims, and other communications that are required or may be given pursuant to this Escrow Agreement must be in writing, in English and delivered personally against written receipt, by a recognized overnight delivery service, or by facsimile, to the parties at the addresses below (or to the attention of such other person or such other address as any party may provide to the other party by notice in accordance with this paragraph).  Any such notice or other communication will be deemed to have been given (i) if personally delivered, when so delivered, against written receipt, (ii) if sent by a nationally recognized overnight delivery service which guarantees next day delivery, one Business Day after being so sent, or (iii) if given by facsimile, once such notice or other communication is transmitted to the facsimile number specified below and electronic confirmation of receipt is received, provided that such notice or other communication is promptly thereafter delivered in accordance with the provisions of clauses (i) or (ii) hereof, in each case addressed to the intended recipient as set forth below.

FOR SETTLING PLAINTIFFS' COUNSEL:
Richard W. Cohen
Lowey Dannenberg Cohen & Hart, P.C.
One North Broadway
White Plains, NY 10601
Telephone:  (914) 997-0500
Facsimile: (914) 997-0035

Mark D. Fischer
Rawlings & Associates, PLLP
One Eden Parkway
LaGrange, KY 40031
Telephone:  (502) 814-2139
Facsimile: (502) 584-8580

**EXHIBIT D – PRIVATE TPP SETTLEMENT AGREEMENT AND RELEASE**
**FORM OF PRIVATE TPP ESCROW AGREEMENT**

Christopher A. Seeger
Seeger Weiss LLP
One William Street
New York, NY 10004
Telephone:  (212) 584-0700
Facsimile:  (212) 584-0799


FOR DEFENDANT'S REPRESENTATIVE:
Bruce N. Kuhlik
Senior Vice President and General Counsel
Merck & Co., Inc.
One Merck Drive
P.O. Box 100 (WS3A-15)
Whitehouse Station, NJ 08889-0100
Telephone: (908) 423-1000
Facsimile: (908) 735-1244


-and-

John H. Beisner, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
1440 New York Avenue, N.W.
Washington, D.C.  20005
Telephone: (202) 371-7410
Facsimile: (202) 661-8301


FOR SETTLING PLAINTIFFS' REPRESENTATIVES:

| Thomas R. Glenn | Paul Vogel | Galen Vetter |
|---|---|---|
| Executive Vice President | Senior Vice President | President |
| Rust Consulting, Inc. | Rust Consulting, Inc. | Rust Consulting, Inc. |
| 5210 Hood Road | 5210 Hood Road | 5210 Hood Road |
| Palm Beach Gardens, FL 33418 | Palm Beach Gardens, FL 33418 | Palm Beach Gardens, FL 33418 |
| Tel.:   (561) 651-7777 | Tel.:   (561) 651-7777 | Tel.:   (561) 651-7777 |
| Fax:   (561) 651-7788 | Fax:   (561) 651-7788 | Fax:   (561) 651-7788 |

**EXHIBIT D – PRIVATE TPP SETTLEMENT AGREEMENT AND RELEASE**
**FORM OF PRIVATE TPP ESCROW AGREEMENT**

FOR THE ESCROW AGENT:

        Citi Private Bank
        Kerry McDonough
        485 Lexington Avenue, 10th Floor
        New York, NY 10017
        Telephone:  (212) 783-3762
        Facsimile: (212) 783-3785

Section 16.   *Setoff; Reimbursement.*

The Escrow Agent acknowledges that it shall not be entitled to set off against any funds in, or payable from, the Escrow Account to satisfy any liability of any Settling Plaintiff, Settling Plaintiffs' Counsel, Settling Plaintiffs' Representative, Defendant's Representative or Merck.

Section 17.   *Intended Beneficiaries: Successors.*

No persons or entities other than the Escrow Agent, the Settling Plaintiffs' Counsel on behalf of the Settling Plaintiffs, the Settling Plaintiffs' Representatives, and Defendant's Representative on behalf of Merck, severally, are intended beneficiaries of this Escrow Agreement, and only they shall be entitled to enforce the terms of this Escrow Agreement.  The provisions of this Escrow Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors.

Section 18.   *Force Majeure.*

Neither the Escrow Agent nor any party to this Escrow Agreement shall be liable to any other party for losses due to, or if it is unable to perform its obligations under the terms of this Escrow Agreement because of, acts of God, fire, war, terrorism, electrical outages, equipment or transmission failure, or other causes reasonably beyond its control.

Section 19.   *Use of Citibank Name.*

No printed or other material in any language, including prospectuses, notices, reports, and promotional material which mentions "Citibank" by name or the rights, powers, or duties of the Escrow Agent under this Escrow Agreement shall be issued by any other parties hereto, or on such party's behalf, without the prior written consent of the Escrow Agent.

**EXHIBIT D – PRIVATE TPP SETTLEMENT AGREEMENT AND RELEASE**
**FORM OF PRIVATE TPP ESCROW AGREEMENT**

Section 20.   *Governing Law.*

This Escrow Agreement shall be construed in accordance with and governed by the laws of the State of New York governing agreements negotiated, executed and to be performed within the State of New York, without regard to the conflicts of law rules of such state.

Section 21.   *Jurisdiction and Venue.*

The parties hereto irrevocably and unconditionally submit to the exclusive jurisdiction of the United States District Court for the Southern District of New York, or if such court lacks subject matter jurisdiction, the Supreme Court for the State and County of New York (the "Escrow Court") for purpose of any suit, action or proceeding seeking to interpret or enforce any provision of, or based on any right arising out of, this Escrow Agreement, and the parties hereto agree not to commence any such suit, action or proceeding except in the Escrow Court. The parties hereto hereby irrevocably and unconditionally waive any objection to the laying of venue of any such suit, action or proceeding in the Escrow Court and hereby further irrevocably waive and agree not to plead or claim in the Escrow Court that any such suit, action or proceeding has been brought in an inconvenient forum.  However, to the extent an application must be made to a court for approval of the Escrow Account as a qualified settlement fund pursuant to Section 9, the application shall be made to the court of MDL 1657 presided over by the Honorable Eldon E. Fallon in the United States District Court, Eastern District of Louisiana.

Section 22.   *Amendments*

This Escrow Agreement may be amended only by written instrument executed by all of the parties hereto.  The waiver of any rights conferred hereunder shall be effective only if made in a written instrument executed by the waiving party.  The waiver by any party of any breach of this Escrow Agreement shall not be deemed to be or construed as a waiver of any other breach, whether prior, subsequent or contemporaneous, of this Escrow Agreement, nor shall such waiver be deemed to be or construed as a waiver by any other party.

Section 23.   *Counterparts.*

This Escrow Agreement may be signed in any number of counterparts, each of which shall be an original, with the same effect as if the signatures thereto and hereto were upon the same instrument.  Delivery by facsimile or electronic mail of a signed counterpart (including as a pdf document) shall be deemed delivery for purposes of acknowledging acceptance hereof; however, an original executed Escrow Agreement must promptly thereafter be delivered to each party.

**EXHIBIT D – PRIVATE TPP SETTLEMENT AGREEMENT AND RELEASE
FORM OF PRIVATE TPP ESCROW AGREEMENT**

Section 24.    *Captions.*

The captions herein are included for convenience of reference only and shall be ignored in the construction and interpretation hereof.

Section 25.    *Conditions to Effectiveness.*

This Escrow Agreement shall become effective when each party hereto shall have signed a counterpart hereof.  If deemed necessary or desirable by the Settling Plaintiffs' Representatives and Defendant Representative, the Escrow Parties (as hereinafter defined) agree to use their best efforts to seek an order of the Escrow Court approving, and retaining continuing jurisdiction over, the Escrow Agreement as soon as possible, and agree that such order shall relate back to, and be deemed effective as of, the date this Escrow Agreement became effective.

Section 26.    *Assignment.*

Except as provided in Section 13, neither this Escrow Agreement nor any right or interest hereunder may be assigned in whole or in part by the Escrow Agent or any party without the prior written consent of the Escrow Agent and all of the other parties.

Section 27.    *Reporting.*

The Escrow Agent shall provide account statements to the Settling Plaintiffs' Counsel, the Settling Plaintiffs' Representative  and to Defendant's Representative on a monthly basis.  All other reports or information shall be provided upon the joint written request of the Settling Plaintiffs' Counsel and the Defendant's Representative.

Section 28.    *Authority.*

Each person who executes this Escrow Agreement on behalf of a corporation, partnership, joint venture, unincorporated association, public authority, municipal corporation, government, other entity, represents and warrants to each party that he or she has the authority to do so on behalf of the respective settling person or entity indicated.

**EXHIBIT D – PRIVATE TPP SETTLEMENT AGREEMENT AND RELEASE**
**FORM OF PRIVATE TPP ESCROW AGREEMENT**

Section 29.   *Severability.*

The invalidity, illegality or unenforceability of any provision of this Escrow Agreement shall in no way affect the validity, legality or enforceability of any other provision.  If any provision of this Escrow Agreement is held to be unenforceable as a matter of law, the other provisions shall not be affected thereby and shall remain in full force and effect.

Section 30.   *Conflict.*

The Settling Plaintiffs, Merck, the Settling Plaintiffs' Counsel, the Settling Plaintiffs' Representatives and the Defendant Representative (each, an "Escrow Party" and together, the "Escrow Parties") each recognize that the Escrow Agent and its affiliates may engage in transactions and/or businesses adverse to an Escrow Party or in which parties adverse to an Escrow Party may have interests.  Nothing in this Escrow Agreement shall (i) preclude the Escrow Agent and any of its affiliates from engaging in such transactions or businesses, or (ii) obligate the Escrow Agent and any of its affiliates to (a) disclose such transactions and/or businesses to the Escrow Parties, or (b) account for any profit made or payment received in, or as a part of, such transactions and/or businesses.  Nothing herein shall be deemed to (i) give rise to a partnership or joint venture or (ii) establish a fiduciary or similar relationship, among the parties hereto.

**EXHIBIT D – PRIVATE TPP SETTLEMENT AGREEMENT AND RELEASE**
**FORM OF PRIVATE TPP ESCROW AGREEMENT**

*IN WITNESS WHEREOF; the parties have executed this Escrow Agreement as of the last date indicated below.*

**SETTLING PLAINTIFFS' COUNSEL**


_____          _____
Mark D. Fischer                          Richard W. Cohen
RAWLINGS & ASSOCIATES, PLLC              LOWEY DANNENBERG COHEN & HART, P.C.


_____
Christopher A. Seeger
SEEGER WEISS LLP


**DEFENDANT'S REPRESENTATIVE**


By: _____Date _____
Bruce N. Kuhlik
Senior Vice President and General Counsel
Merck & Co., Inc.


**CITIBANK, N.A.**, as Escrow Agent


By: _____ Date _____
John Howard
Director, Citi Private Bank


**SETTLING PLAINTIFFS' REPRESENTATIVES**

**RUST CONSULTING, INC.**, as Claims Administrator


By_____
Thomas R. Glenn

D-18

**EXHIBIT D – PRIVATE TPP SETTLEMENT AGREEMENT AND RELEASE**
**FORM OF PRIVATE TPP ESCROW AGREEMENT**

**EXHIBIT 1 TO THE ESCROW AGREEMENT**

**List of Settling Plaintiffs**

| |
|---|
| Aetna, Inc |
| AFTRA Health Fund |
| Allied Services Division Welfare Fund |
| Amalgamated Workers Union Local 88 Welfare Fund |
| American Community Mutual Insurance Company |
| American Family Group |
| AMERIGROUP Corporation |
| AmGUARD Insurance Company |
| Arkansas Blue Cross and Blue Shield, A Mutual Insurance Company |
| Asbestos Workers Local 42 Welfare Fund |
| Assurant |
| Asuris Northwest Health |
| Atlantic Mutual Insurance Group |
| AvMed, Inc. |
| Bay Area Delivery Drivers |
| BCBSD, Inc. d/b/a Blue Cross Blue Shield of Delaware |
| Blue Cross Blue Shield of Alabama |
| Blasters, Drillrunners and Miners Union Local |

**EXHIBIT D – PRIVATE TPP SETTLEMENT AGREEMENT AND RELEASE
FORM OF PRIVATE TPP ESCROW AGREEMENT**

| |
|---|
| Blue Cross & Blue Shield of Mississippi |
| Blue Cross & Blue Shield of Rhode Island |
| Blue Cross and Blue Shield of Arizona, Inc. |
| BlueCross and BlueShield of Florida, Inc. |
| Blue Cross and Blue Shield of Kansas City |
| Blue Cross and Blue Shield of Kansas, Inc. |
| Blue Cross and Blue Shield of Massachusetts, Inc. |
| Blue Cross and Blue Shield of North Carolina |
| Blue Cross and Blue Shield of Vermont |
| Blue Cross Blue Shield Association |
| BlueCross BlueShield of Tennessee |
| Blue Cross of Michigan |
| Blue Cross of Minnesota |
| Blue Cross of Nebraska |
| Blue Shield of California |
| Bricklayers of Indiana Welfare Fund |
| Brotherhood of Firemen & Oilers Local 1201 Health & Welfare Fund |
| CareFirst, Inc. |
| Cavalier Homes, Inc |
| Cement Masons Local 592 |
| Centene |
| Central Pennsylvania Teamsters Health Welfare and Pension Fund |
| Central States, Southeast and Southwest Areas Health and Welfare Fund |
| CIGNA |
| Commonwealth Care Alliance |
| Connecticut General Life Insurance Company |
| Coventry Health Care |
| Dealers-Unions Insurance Fund |
| EastGUARD Insurance Company |

**EXHIBIT D – PRIVATE TPP SETTLEMENT AGREEMENT AND RELEASE
FORM OF PRIVATE TPP ESCROW AGREEMENT**

| |
|---|
| Engineers |
| Engineers Local 137 |
| Engineers Local 14 |
| Engineers Local 15 |
| Excellus Health Plan, Inc. |
| Frankenmuth Financial Group |
| Golden Rule Insurance Company |
| Government Employee's Health Association, Inc. |
| Great West Life & Annuity Insurance Company |
| Greater New York Benefit Fund (1199SEIU) |
| Group Health Incorporated |
| GUARD Insurance Company |
| The Guardian Life Insurance Company of America |
| Harleysville Insurance Co |
| Harvard Pilgrim Health Care, Inc. |
| Hawaii Medical Service Association |
| Health and Welfare Fund of the Detectives Endowment Association Inc |
| Health Care Service Corporation |
| Health Net, Inc. |
| Health Plan of San Mateo |
| Health Plus of Louisiana Inc |

**EXHIBIT D – PRIVATE TPP SETTLEMENT AGREEMENT AND RELEASE**
**FORM OF PRIVATE TPP ESCROW AGREEMENT**

| |
|---|
| HealthNow NY |
| Highmark West Virginia Inc. d/b/a Mountain State Blue Cross and Blue Shield |
| Highmark, Inc. |
| HIP Health Plan of New York |
| Health Partners, Inc. |
| HMO Partners, Inc. d/b/a Health Advantage |
| Horizon Blue Cross of New Jersey |
| Humana, Inc. |
| IBEW 673 Fringe Benefit Funds |
| IBEW Local 129 Fringe Benefit Funds |
| IBEW Local 32 Health and Welfare Fund |
| IBEW Local 683 Fringe Benefit Funds |
| Independence Blue Cross |
| Independent Health Association, Inc. |
| Independent Health Corporation, Inc. |
| Independent Heath Benefits Corporation, Inc. |
| Indiana Bricklayers Local No. 6 Welfare Trust Fund |
| Indiana Carpenters Health and Welfare Fund |
| Indiana Electrical Workers Benefit Trust |
| Indiana Laborers Welfare Fund |
| Indiana State Council of Carpenters Health and Welfare Fund |
| Indiana State Council of Roofers Health and Welfare Fund |
| Indiana State District Council of Laborers and Hod Carriers Welfare Fund |
| International Association of Firefighters Local 22 Health & Welfare Fund |

**EXHIBIT D – PRIVATE TPP SETTLEMENT AGREEMENT AND RELEASE**
**FORM OF PRIVATE TPP ESCROW AGREEMENT**

| |
|---|
| International Brotherhood of Electrical Workers 43 and Electrical Contractors Health and Welfare Fund |
| International Brotherhood of Teamsters |
| International Union of Operating Engineers Local 825 Welfare Fund |
| International Union of Painters and Allied Trades District Council 21 Fund |
| Iron Workers Locals 40, 361 and 417 Health and Vacation Fund |
| Ironworkers Local 580 Insurance Fund |
| Johns Hopkins Health Care LLC |
| Kaiser Foundation Health Plan |
| KPS Health Plans |
| Local 237 Teamsters Brentwood School District Health & Welfare Trust Fund |
| Local 237 Teamsters North Babylon School District Health & Welfare Trust Fund |
| Local 237 Teamsters Plainview Old Bethpage Central School District Health & Welfare Trust Fund |
| Local 237 Teamsters Retirees Benefit Fund |
| Local 237 Teamsters Suffolk Regional Off Track Betting Corporation Health & Welfare Trust Fund |

**EXHIBIT D – PRIVATE TPP SETTLEMENT AGREEMENT AND RELEASE**
**FORM OF PRIVATE TPP ESCROW AGREEMENT**

| |
|---|
| Local 282 Welfare Fund |
| Local 400 Welfare Fund |
| Local 522 Welfare Fund of New York and New Jersey |
| Local 7 Tile Industry Welfare Fund |
| Louisiana Health Service Indemnity Company |
| The Mail Handlers Benefit Plan |
| Marble Industry Trust Fund |
| Medical Mutual of Ohio |
| Michiana Area Electrical Workers Health and Welfare Fund |
| Michigan Health Maintenance Organization Plans, Inc., f/k/a Omnicare Health Plan, Inc. (Ken Ross) |
| Midwest Operating Engineers Health & Welfare Fund |
| Molina Health Care |
| Motion Picture Laboratory Technicians and Film Editors Local 780 Welfare Fund |
| Mutual of Omaha Insurance Company |
| MVP Health Care, Inc |
| MVP Health Insurance Company, Inc |
| MVP Health Plan, Inc |
| MVP Select Care, Inc |

**EXHIBIT D – PRIVATE TPP SETTLEMENT AGREEMENT AND RELEASE**
**FORM OF PRIVATE TPP ESCROW AGREEMENT**

| |
|---|
| NALC Health Benefit Plan |
| NALC Health Benefit Plan for Employees and Staff |
| National Benefit Fund |
| National Benefit Fund (Home Care Employees) |
| National Elevator Industry Benefits |
| New York City District Council of Carpenters Welfare Fund |
| NorGUARD Insurance Company |
| Noridian Mutual Insurance Company |
| NOVA Healthcare Administrators |
| NY State Teamsters Council Health and Hospital Fund |
| Office of Financial and Insurance Services for the State of Michigan, Wellness Plan (Ken Ross) |
| Ohio Carpenters Health Fund |
| Ohio State IBEW Health & Welfare Fund |
| Oxford Health Plans, LLC |
| Painters District Council No 30 Health and Welfare, |
| Painters Local No. 469 Health and Welfard Fund |
| Painting Industry Insurance and Annuity Funds |
| Pennsylvania Employees Benefit Trust Fund |

**EXHIBIT D – PRIVATE TPP SETTLEMENT AGREEMENT AND RELEASE**
**FORM OF PRIVATE TPP ESCROW AGREEMENT**

| |
|---|
| Pension, Hospitalization and Benefit Plan of the Electrical Industry |
| Philadelphia Federation of Teachers Health and Welfare Fund |
| Pipe Trades Industry Health and Welfare Plan |
| Plasterers Local 8 Health & Welfare Fund |
| Plumbers and Steamfitters Local 42 Health and Welfare Plan |
| Plumbers and Steamfitters Local 440 Health and Welfare Plan |
| Plumbers and Steamfitters Local No. 166 Health and Welfare Plan |
| Plumbers Local No. 210 Health and Welfare Fund |
| PMA Insurance Group |
| Preferred Administrative Services, Inc |
| Preferred Assurance Company, Inc |
| Premera Blue Cross |
| Priority Health |
| Professional Benefit Administrators, Inc |
| QCA Health Plan |
| Regence BlueCross BlueShield of Oregon |
| Regence BlueCross BlueShield of Utah |
| Regence BlueShield |
| Regence BlueShield of Idaho |
| Regence Life and Health Insurance Company |

**EXHIBIT D – PRIVATE TPP SETTLEMENT AGREEMENT AND RELEASE**
**FORM OF PRIVATE TPP ESCROW AGREEMENT**

| |
|---|
| Retiree Health and Welfare Fund of the Detectives Endowment Association Inc |
| Rochester Area Health Maintenance Organization, Inc |
| Roofers Local 30 Health |
| Sergeants Benevolent Assn Health and Welfare Fund |
| Service Employee International Union Local No. 3 Health and Welfare Fund |
| Service Employees International Union (1199P) |
| SFM Mutual Insurance Company |
| Sheet Metal Workers Local No 19 Fund |
| Sheet Metal Workers Local No. 20 Welfare and Benefit Fund |
| Southern California Permanente Medical Group |
| Southern Ohio Painters Health and Welfare Fund |
| Steamfitters Local 420 Welfare Fund |
| Teamsters Benefit Trust |
| Teamsters Local 1205 Welfare Fund |
| Teamsters Local 175 505 Health and Welfare Trust Fund |
| Teamsters Local 20 Insurance Fund |
| Teamsters Local 237 Welfare Fund |
| Teamsters Local 804 Welfare Fund |

**EXHIBIT D – PRIVATE TPP SETTLEMENT AGREEMENT AND RELEASE**
**FORM OF PRIVATE TPP ESCROW AGREEMENT**

| |
|---|
| Teamsters Local 830 Health & Welfare Fund |
| The Steamfitters' Industry Welfare Fund |
| Trustmark Life Insurance Company and Trustmark Insurance Company |
| Tufts Associated Health Maintenance Organization, Inc. |
| UFCW Local 1776 |
| Uniformed Sanitationmens Assn Retirees Welfare And Security Benefits Funds |
| United Food and Commercial Workers Union-Employer Health and Welfare Fund |
| United HealthCare Services, Inc. |
| United Independent Union Health & Welfare Fund |
| UnitedHealth Group Incorporated |
| Universal American Corp. |
| Upstate Administrative Services, Inc |
| USAble Life |
| Vista Healthplan, Inc. |
| Welfare Fund of Heat and Frost Insulators Local 12 |
| WellCare Health Plans, Inc. |
| Wellmark Health Plan of Iowa, Inc. |

**EXHIBIT D – PRIVATE TPP SETTLEMENT AGREEMENT AND RELEASE**
**FORM OF PRIVATE TPP ESCROW AGREEMENT**

| |
|---|
| Wellmark, Inc. d/b/a Wellmark Blue Cross and Blue Shield of Iowa |
| Wellmark of South Dakota, Inc. d/b/a Wellmark Blue Cross and Blue Shield of South Dakota |
| WellPoint, Inc. |
| WestGUARD Insurance Company |
| County of Suffolk, NY |
| Blue Cross of Idaho Health Service, Inc. |
| Oklahoma State and Education Employees Group Insurance Board |
| Oklahoma Public Employees Health and Welfare Trust |

**EXHIBIT D – PRIVATE TPP SETTLEMENT AGREEMENT AND RELEASE**
**FORM OF PRIVATE TPP ESCROW AGREEMENT**

**EXHIBIT 2 TO THE ESCROW AGREEMENT**

**Escrow Agent Fee Schedule**

**Prepared for Vioxx Private TPP Escrow Account**
**Citibank, N.A., as Escrow Agent[1]**

**Acceptance Fee**
To cover the acceptance of the Escrow Agency appointment, the study of the Escrow Agreement, and supporting documents submitted in connection with the execution and delivery thereof, and communication with other members of the working group:  **WAIVED**

**Administration Fee**
To cover maintenance of the Escrow Account including safekeeping of assets in the escrow account, normal administrative functions of the Escrow Agent, including maintenance of the Escrow Agent's records, follow-up of the Escrow Agreement's provisions, and any other safekeeping duties required by the Escrow Agent under the terms of the Escrow Agreement.

Fee:  $10,000  (Waived if Escrow Property held in Escrow Account for at least 30 calendar days).

(Conditional upon escrowed funds invested in a FDIC insured non-interest bearing deposit account providing daily liquidity) Fee referenced above is per annum or any portion of a year thereof, payable initially upon account funding and annually on the anniversary date of the Escrow Agreement thereafter, if applicable.

**1099 Tax Preparation Fee**
To cover preparation of Forms 1099-INT for either escrow party for each calendar year:  **WAIVED  (Conditional upon one (1) 1099 rendered to one of the escrow parties)**

**Transaction Fees**
To cover all required disbursements from the escrow account, including disbursements via checks and/or wire transfers, payments to the escrow parties, fees associated with postage and overnight delivery charges incurred by the Escrow Agent as required under the terms and conditions of the Escrow Agreement.  WAIVED

**Legal Fees**

**At cost, if applicable.**

**Other Fees**
**$2,500** per amendment, when necessary

**Date Submitted**:  31 August 2009

---

[1] **TERMS AND CONDITIONS**: The above schedule of fees does not include charges for out-of-pocket expenses or for any services of an extraordinary nature that we or our legal counsel may be called upon from time to time to perform in either an agency or fiduciary capacity, nor does it include the fees of our legal counsel.  Fees are also subject to satisfactory review of the documentation, and we reserve the right to modify them should the characteristics of the transaction change.  Our participation in this program is subject to internal approval of the third party depositing monies into the escrow account.  The Acceptance Fee, if any, is payable upon execution of the documents.  Should this schedule of fees be accepted and agreed upon and work commenced on this program but subsequently halted and the program is not brought to market, the Acceptance Fee and legal fees incurred, if any, will still be payable in full.

**EXHIBIT C -- COMMON BENEFIT SETTLEMENT AGREEMENT
FORM OF COMMON BENEFIT ESCROW AGREEMENT**

## COMMON BENEFIT ESCROW AGREEMENT

This Escrow Agreement (this Escrow Agreement, including all exhibits attached hereto, all of the terms and conditions which are incorporated herein by reference, in each case as amended and/or supplemented from time to time in accordance with the terms hereof, this "Common Benefit Escrow Agreement") is entered into as of September ___, 2009 by Merck & Co., Inc., a corporation of the State of New Jersey, ("Merck"), acting through its designated representative Bruce N. Kuhlik, solely in his capacity as Senior Vice President and General Counsel of Merck, or such successor or other individual designated by Merck to act in such capacity ("Defendant's Representative"), and certain Common Benefit Attorneys as identified in the Common Benefit Settlement Agreement and their respective clients from among the Settling Plaintiffs, identified in Exhibit 1 (the "Common Benefit Plaintiffs"), acting through their designated representative, Christopher A. Seeger, Esq. of the firm of Seeger Weiss LLP (the "Common Benefit Attorneys' Representative"), and Citibank, N.A., a national banking association organized and existing under the laws of the United States of America and acting solely in its capacity as escrow agent under this Escrow Agreement (the "Escrow Agent").

WITNESSETH:

WHEREAS, the Settling Plaintiffs and Merck have entered into a Settlement Agreement dated as of August ___, 2009 (the "Private TPP Settlement Agreement");

WHEREAS, certain Common Benefit Attorneys and their respective Common Benefit Plaintiff  clients from among the Settling Plaintiffs and Merck, in conjunction with the Private TPP Settlement Agreement, have entered into a separate Common Benefit Settlement Agreement dated as of August___, 2009 (the "Common Benefit Settlement Agreement");

WHEREAS, the Common Benefit Settlement Agreement requires certain Common Benefit Attorneys and Merck to authorize and cause this Common Benefit Escrow Agreement ("Common Benefit Escrow Agreement") to be entered;

WHEREAS, Christopher A. Seeger, Esq. of the firm of Seeger Weiss LLP has been authorized by the Common Benefit Attorneys and their respective Common Benefit Plaintiff clients to enter into this Common Benefit Escrow Agreement on behalf of and for the benefit of the Common Benefit Attorneys and Settling Plaintiffs; and

WHEREAS, Bruce N. Kuhlik, Senior Vice President and General Counsel of Merck, has been authorized by Merck to enter into this Common Benefit Escrow Agreement on behalf of and for the benefit of Merck and all Released Parties as defined in the Private TPP Settlement Agreement and Release.

**EXHIBIT C -- COMMON BENEFIT SETTLEMENT AGREEMENT**
**FORM OF COMMON BENEFIT ESCROW AGREEMENT**

NOW, THEREFORE, the Common Benefit Attorneys' Representative, on behalf of the Common Benefit Attorneys and their respective Common Benefit Plaintiff clients , and the Defendant's Representative, on behalf of Merck, and the Escrow Agent, hereto agree as follows:

Section 1.    *Appointment of Escrow Agent.*

The Common Benefit Attorneys' Representative on behalf of the Common Benefit Attorneys and their respective Common Benefit Plaintiff clients, and the Defendant's Representative on behalf of Merck, hereby jointly appoint Citibank, N.A. to serve as escrow agent and to open and maintain a separate escrow account, which shall be titled "VIOXX PRIVATE TPP COMMON BENEFIT ESCROW ACCOUNT" (hereinafter the "Common Benefit Escrow Account"), upon the terms and conditions set forth in this Common Benefit Escrow Agreement. The Escrow Agent, by its execution hereof, hereby accepts such appointment and agrees to establish and maintain the Common Benefit Escrow Account and to perform the duties and obligations of the Escrow Agent set forth herein.

Section 2.    *Definitions.*

(a)    "Business Day" means any day other than (i) a Saturday or a Sunday or (ii) a day on which commercial banks in New York, New York are closed.

(b)    "MDL " or "MDL Court" means the court and all of the cases before the court in MDL 1657.

(c)    "Honorable Eldon E. Fallon" means the Honorable Eldon E. Fallon of the United States District Court for the Eastern District of Louisiana.

Section 3.    *Escrow and Escrow Account.*

(a)    Any and all funds to be deposited into the Common Benefit Escrow Account shall be electronically delivered to the Escrow Agent via wire transfer of immediately available funds or by check deposited sufficiently in advance that the funds clear and are available within the time required under the Private TPP Settlement Agreement and Common Benefit Settlement Agreement. All such funds (the "Escrow Deposit") shall be held and disbursed solely in accordance with the terms of this Common Benefit Escrow Agreement. The Escrow Deposit and any interest thereon minus any distributions made therefrom from time to time in accordance with the terms of this Common Benefit Escrow Agreement shall constitute the "Escrow Property" and shall be held by the Escrow Agent in the Escrow Account separate and apart from all other funds and accounts of the Escrow Agent, the Common Benefit Attorneys' Representative, the Common Benefit Attorneys, the Settling Plaintiffs, the

**EXHIBIT C -- COMMON BENEFIT SETTLEMENT AGREEMENT**
**FORM OF COMMON BENEFIT ESCROW AGREEMENT**

Defendant's Representative, and Merck.  The Escrow Agent shall have no duty to solicit the delivery of any Escrow Property into the Common Benefit Escrow Account.

       (b)     The Escrow Deposit held in the Common Benefit Escrow Account shall be invested in a fully-insured non-interest bearing deposit account at Citibank, N.A., unless otherwise instructed in writing by the Honorable Eldon E. Fallon and Common Benefit Attorneys' Representative.  It is the intent of this Common Benefit Escrow Agreement that the Common Benefit Escrow Account not be an account under any IOLTA statute or regulation.

       (c)     All Escrow Property credited to the Common Benefit Escrow Account shall be retained in such Common Benefit Escrow Account until disbursed therefrom in accordance with the provisions of this Common Benefit Escrow Agreement and the Escrow Agent's receipt of (i) the joint written instructions by the Honorable Eldon E. Fallon or any subsequently appointed Administrator pursuant to the provisions of the Common Benefit Settlement Agreement, and the Common Benefit Attorneys' Representative, or (ii) the joint written instructions signed by the Common Benefit Attorneys' Representative and the Defendant's Representative.  In the event of conflicting instructions from the individuals identified above, instructions provided pursuant to (i) above shall take precedence.  Joint written instructions may be signed and delivered in counterparts.

       (d)     The Common Benefit Attorneys and their respective Common Benefit Plaintiff clients have vested the Honorable Eldon E. Fallon with the powers under this Common Benefit Escrow Agreement in order that he may fulfill his role under the Common Benefit Settlement Agreement.

       (e)     The Honorable Eldon E. Fallon shall give notice to the Common Benefit Attorneys' Representative, the Defendant's Representative, and the Escrow Agent of the proposed distribution of common benefit fees and expenses from this Common Benefit Escrow Account as soon as practicable pursuant to his duties under the separate Common Benefit Settlement Agreement, dated as of August __, 2009, to consider, award and compute such distributions.  Thereupon, the Honorable Eldon E. Fallon and Common Benefit Attorneys' Representative shall wait at least five (5) Business Days but no more than thirty (30) Business Days prior to issuing written instructions to the Escrow Agent to disburse such funds from the Common Benefit Escrow Account in accordance with the award of such common benefit fees and expenses.

       (f)     To the extent the Escrow Deposit does earn interest (by virtue of instruction of the Honorable Eldon E. Fallon and Common Benefit Attorneys' Representative to transfer all or any part of the funds in the Escrow Account into an interest-bearing account or other interest-bearing instrument or security of the United States Government), it is the intent of the Common Benefit Attorneys' Representative, the Common Benefit Attorneys, Common Benefit Plaintiffs, Defendant's Representative, and Merck that the Common Benefit Escrow Account be treated as a qualified settlement fund as set forth in Section 9 below.  The Common

## EXHIBIT C -- COMMON BENEFIT SETTLEMENT AGREEMENT
## FORM OF COMMON BENEFIT ESCROW AGREEMENT

Benefit Attorneys' Representative and the Defendant's Representative agree to take such steps as are reasonable and necessary to accomplish the foregoing, including seeking court approval of the Common Benefit Escrow Account as a qualified settlement fund from the MDL court.

      (g)      To the extent the Escrow Property earns interest, the interest earned will be used for the following purposes and in the following order to: (i) pay any tax liabilities due to the generation of interest by the Escrow Property, (ii) pay any administrative fees, legal fees, and costs incurred by the Escrow Agent in the creation and maintenance of the Common Benefit Escrow Account, (iii) pay the reasonable fees and expenses in connection with the preparation of the tax filings on behalf of the qualified settlement fund and/or Escrow Account; (iv) pay the reasonable fees and expenses of the administration of the Common Benefit Settlement Agreement, and (v) be disbursed from the Common Benefit Escrow Account pursuant to the terms of this Common Benefit Escrow Agreement.  To the extent no interest is earned by the Escrow Property, or not insufficient interest is earned, to pay the costs and expenses identified in this section, these costs and expenses shall be the sole and exclusive responsibility of the Common Benefit Attorneys and their Common Benefit Plaintiff clients and shall be paid from funds in the Common Benefit Escrow Account pursuant to written instruction.

      Section 4.      *Transfer of Funds into the Escrow Account.*

      (a)      Within ten (10) Business Days following the execution of this Common Benefit Escrow Agreement on behalf of Merck, provided that this Common Benefit Escrow Agreement has also been executed by the Common Benefit Attorneys' Representative, the Honorable Eldon E. Fallon, and the Escrow Agent, Merck shall electronically deposit, either via wire transfer of immediately available funds or by check deposited sufficiently in advance that the funds clear and are available within three (3) Business Days following the deposit into the Common Benefit Escrow Account, the amount of the Common Benefit Fee and Expense Payment under the terms of the Common Benefit Settlement Agreement, which is the sum of FIFTEEN MILLION DOLLARS ($15,000,000.00).

      (b)      Wire transfers into the Common Benefit Escrow Account or checks deposited must identify that the deposit is being made on behalf of Merck.

      (c)      On the Business Day following the day on which a wire transfer deposit is made to the Common Benefit Escrow Account or, in the case of a check deposit on the Business Day following the day on which the funds clear, the Escrow Agent shall deliver by facsimile to Common Benefit Attorneys' Representative, the Honorable Eldon E. Fallon,  and the Defendant's Representative, a written notice confirming the amount of funds received into the Common Benefit Escrow Account and the date such funds were received.

**EXHIBIT C -- COMMON BENEFIT SETTLEMENT AGREEMENT**
**FORM OF COMMON BENEFIT ESCROW AGREEMENT**

Section 5.    *Disbursement of Funds from the Common Benefit Escrow Account.*

(a)    Under no circumstances shall the Escrow Agent disburse any Escrow Property from the Common Benefit Escrow Account prior to the receipt of written notice from the Defendant's Representative confirming that all required stipulations of dismissal under the Private TPP Settlement Agreement have been entered in the appropriate courts (the "Stipulation Confirmation Notice").  Defendant's Representative shall deliver to the Escrow Agent the Stipulation Confirmation Notice not later than three (3) Business Days following the last entry of all of the stipulations of dismissal under the Agreement.

(b)    In addition to the limitation set forth in Section 5(a) above, under no circumstances shall the Escrow Agent disburse any Escrow Property from the Common Benefit Escrow Account prior to the receipt of (i) the joint written instructions by the Honorable Eldon E. Fallon, or any subsequently appointed Administrator pursuant to the provisions of the Common Benefit Settlement Agreement, and the Common Benefit Attorneys' Representative, pursuant to the provisions of Section 3(f) above, or (ii) the joint written instructions signed by the Common Benefit Attorneys' Representative and the Defendant's Representative.  In the event of conflicting instructions from the individuals identified above, instructions provided pursuant to (i) above shall take precedence.  Joint written instructions may be signed and delivered in counterparts.

(c)    On the first Business Day after disbursing funds from the Escrow Account pursuant to Section 3(f) above, the Escrow Agent shall deliver to each of the parties to this Common Benefit Escrow Agreement a written statement showing the amount of Escrow Property disbursed, the date of such disbursement, the payee(s) of the disbursed Escrow Property, and the amount of Escrow Property remaining in the Common Benefit Escrow Account.

(d)    In the event Escrow Property remains in the Common Benefit Escrow Account following the awarding and payment of all common benefit fees and expenses and the payment of all costs and expenses incurred in the administration of the Private TPP Settlement Agreement and/or the Common Benefit Settlement Agreement, including the costs and expenses identified in Section 3(h) above, the Honorable Eldon E. Fallon and the Common Benefit Attorneys' Representative shall issue written instructions to the Escrow Agent that the remaining Escrow Property in the Common Benefit Escrow Account be transferred to the escrow account established under the Private TPP Settlement Agreement for the benefit of all Settling Plaintiffs under the Private TPP Settlement Agreement.

(e)    Once all of the Escrow Property in the Common Benefit Escrow Account has been disbursed pursuant to this Section 5, the Common Benefit Escrow Account shall be closed.

**EXHIBIT C -- COMMON BENEFIT SETTLEMENT AGREEMENT**
**FORM OF COMMON BENEFIT ESCROW AGREEMENT**

(f)      In the event funds are deposited into the Common Benefit Escrow Account and the Common Benefit Settlement Agreement is terminated prior to the disbursement of any Escrow Property, the Common Benefit Attorneys' Representative and the Defendant's Representative shall provide signed joint written notice to the Escrow Agent that the Common Benefit Escrow Agreement has been terminated.

(g)      Within three (3) Business Days following receipt of notice that the Common Benefit Escrow Agreement has been terminated, the Escrow Agent shall disburse the entire Escrow Property by wire transfer to Merck in accordance with account details provided by the Defendant's Representative in the notice provided pursuant to Section 5(f) above.

Section 6.      *Failure of Escrow Agent to Receive Notices or Instructions.*

In the event that the Escrow Agent fails to receive any signed instructions contemplated by this Common Benefit Escrow Agreement or there is ambiguity as to its duties or instructions, the Escrow Agent shall be fully protected in refraining from taking any action required under any section of this Common Benefit Escrow Agreement other than Section 7, its sole obligation shall be to keep safely the Common Benefit Escrow Account until such required signed instructions are received by the Escrow Agent.

Section 7.      *Investment of Funds by Escrow Agent.*

(a)      The Escrow Property shall be invested and reinvested in the Citibank Non-interest Bearing Cash Deposit Account ("CDA"), a fully FDIC (as hereinafter defined) insured non-interest bearing deposit account, unless otherwise directed in writing by the Honorable Eldon E. Fallon and Common Benefit Attorneys' Representative to invest and reinvest all or any part of the Escrow Property in (i) United States Treasury securities having a maturity of not more than 365 days, or (ii) the Citibank Institutional Market Deposit Account, a dollar-for-dollar interest-bearing deposit obligation of Citibank, N.A., Federal Deposit Insurance Corporation ("FDIC") insured to the applicable limits.  Common Benefit Attorneys' Representative acknowledges that cash balances held in the CDA are fully guaranteed by the FDIC for the entire deposit balance through December 31, 2009, or any applicable extended date.  Should the Escrow Property remain on deposit after December 31, 2009 (or the applicable extended date for which balances in the CDA are fully insured by the FDIC), Common Benefit Attorneys' Representative and the Honorable Eldon E. Fallon will provide revised investment instructions in writing to the Escrow Agent.

(b)      The Escrow Agent is authorized to liquidate in accordance with its customary procedures any portion of the Escrow Property consisting of investments to provide for payments required to be made under this Common Benefit Escrow Agreement.  All interest shall be credited to, and become a part of, the Escrow Property, and any losses on any such investments shall be debited from the Common Benefit Escrow Account.

EXHIBIT C -- COMMON BENEFIT SETTLEMENT AGREEMENT
FORM OF COMMON BENEFIT ESCROW AGREEMENT

(c)     The Escrow Agent shall have no duty, responsibility or obligation to invest any funds or cash held in the Common Benefit Escrow Account other than in accordance with this Section 7.  The Escrow Agent shall have no liability or responsibility for any investment losses, including without limitation any market loss on any investment liquidated (whether at or prior to maturity) in accordance with the terms of this Common Benefit Escrow Agreement.

(d)     The Escrow Agent may, in making or disposing of any investment permitted by this Common Benefit Escrow Agreement, deal with itself, in its individual capacity, or any of its affiliates, whether or not it or such affiliate is acting as a subagent of the Escrow Agent or for any third person or dealing as principal for its own account.

(e)     The Escrow Agent shall have no obligation to invest or reinvest the Escrow Property if all or a portion of the Escrow Property is deposited with the Escrow Agent after 11:00 a.m., New York City time, on the day of deposit.  Instructions to invest or reinvest that are received after 11:00 a.m., New York City time, will be treated as if received on the following Business Day.

(f)     It is agreed and understood that the Escrow Agent may earn fees associated with the investments outlined above.

(g)     Neither the Escrow Agent nor any of its affiliates assume any duty or liability for monitoring any investment rating.

(h)     The Escrow Agent shall not be called upon to advise any party as to the wisdom in selling or retaining or taking or refraining from any action with respect to any property deposited or held hereunder.  The parties to this Common Benefit Escrow Agreement acknowledge that non-deposit investment products are not obligations of, or guaranteed, by Citibank, N.A., nor any of its affiliates; are not FDIC insured; and are subject to investment risks, including the possible loss of principal amount invested.  Only deposits in the United States are subject to FDIC insurance.

EXHIBIT C -- COMMON BENEFIT SETTLEMENT AGREEMENT
FORM OF COMMON BENEFIT ESCROW AGREEMENT

Section 8.    *Patriot Act Requirements.*

Pursuant to Section 326 of the USA PATRIOT Act and the Escrow Agent's identity verification procedures, each of the parties to this Common Benefit Escrow Agreement agrees to provide the Escrow Agent with, and consents to, the Escrow Agent obtaining from third parties any such identifying information required as a condition of opening an account with or using any service provided by the Escrow Agent, including, without limitation, name, address and organizational documents.

Section 9.    *Substitute Form W-9, Qualified Settlement Fund.*

The Common Benefit Attorneys' Representative shall provide the Escrow Agent with a correct taxpayer identification number on substitute Form W-9.  To the extent the Common Benefit Escrow Account is transferred to an interest-bearing account, it is the intent that such Common Benefit Escrow Account at that time be qualified to be treated as a qualified settlement fund for federal, state, and local tax purposes pursuant to Treas. Reg. § 1.468B-1.  It is the responsibility of the Common Benefit Attorneys' Representative to provide the Escrow Agent with a correct, taxpayer identification number on a substitute Form W-9 for the qualified settlement fund and to ensure compliance with all applicable tax filing and tax payment obligations, and any other payment and reporting requirements, arising from the Common Benefit Escrow Account, including, without limitation, those imposed under Treas. Reg. § 1.468B, and if necessary, the making of the relation-back election under such regulation.  In the event it is necessary, the Honorable Eldon E. Fallon and Common Benefit Attorneys' Representative are authorized and instructed to engage an accounting firm or make other suitable arrangements to fulfill the requirements of this section on behalf of the Common Benefit Attorneys and their respective third party provider/payor clients from among the Settling Plaintiffs and for the benefit of Merck.  The Escrow Agent has no responsibility to comply with the provisions of Treas. Reg. § 1.468B-1, nor shall it be deemed to have knowledge concerning the applicability of such regulation to this Common Benefit Escrow Agreement.  The Escrow Agent shall be responsible only for income reporting to the Internal Revenue Service with respect to interest, if any, earned on the Escrow Property.  This Section 9 shall survive the termination of this Common Benefit Escrow Agreement and the resignation or removal of the Escrow Agent.

Section 10.   *Duties and Liabilities of Escrow Agent.*

(a)    The Escrow Agent shall have no duty or obligation hereunder other than to take such specific actions as are required of it from time to time under the provisions of this Common Benefit Escrow Agreement, and it shall incur no liability hereunder or in connection herewith for anything whatsoever other than any liability resulting from its own gross negligence or willful misconduct, as adjudicated by a court of competent jurisdiction.  The Escrow Agent shall not be charged with knowledge of, or be bound in any way by, any agreements or contracts between or among any of the Common Benefit Attorneys or their

C-8

## EXHIBIT C -- COMMON BENEFIT SETTLEMENT AGREEMENT
## FORM OF COMMON BENEFIT ESCROW AGREEMENT

clients, the Common Benefit Attorneys' Representative, the Defendant's Representative, Merck, the Honorable Eldon E. Fallon and the Settling Plaintiffs (whether or not the Escrow Agent has knowledge thereof) other than this Common Benefit Escrow Agreement, and the only duties and responsibilities of the Escrow Agent shall be the duties and obligations specifically set forth in this Common Benefit Escrow Agreement.

(b)      The Escrow Agent shall provide to Merck its correct taxpayer identification number on a substitute Form W-9 upon execution of this Common Benefit Escrow Agreement.

(c)      The Escrow Agent is hereby expressly authorized, in its sole discretion, to obey and comply with all court orders or writs entered or issued, which it is advised by legal counsel of its own choosing is binding upon it, whether with or without jurisdiction, directed at the Escrow Property.  In the event that the Escrow Agent obeys or complies with any court order or writ directed at the Escrow Property, it shall not be liable to any of the parties hereto or to any other person, entity, firm or corporation, by reason of such compliance notwithstanding the fact that such court order or writ is subsequently reversed, modified, set aside or vacated.

(d)      The Escrow Agent shall be under no duty to afford the Escrow Property any greater degree of care than it gives its own similar property.  The Escrow Agent is authorized to act, and shall not be liable for acting, in reliance upon any judgment, order, instruction, notice, certification, demand, consent, authorization, receipt, power of attorney or other writing delivered to it by any other party to this Common Benefit Escrow Agreement without being required to determine the authenticity or validity thereof, the correctness of any fact stated therein, the propriety or validity of the service thereof, or the jurisdiction of the court issuing any judgment or order.  The Escrow Agent may act in reliance upon any signature believed by it to be genuine and may assume that such person has been properly authorized to do so.  The Escrow Agent shall not be liable (i) for any indirect, consequential, punitive or special damages, regardless of the form of action and whether or not any such damages were foreseeable or contemplated, (ii) for the acts or omissions of any nominees, correspondents, designees, agents, subagents or subcustodians, (iii) for the investment or reinvestment of any Escrow Property held by it hereunder, in each case in good faith, in accordance with the terms hereof, including without limitation any liability for any delays (not resulting from its gross negligence or willful misconduct as adjudicated by a court of competent jurisdiction) in the investment or reinvestment of the Escrow Property, or any loss of interest incident to any such delays, or (iv) for an amount in excess of the value of the Escrow Property, valued as of the date of deposit, but only to the extent of direct monetary damages.

(e)      In the event of any disagreement among any of the parties to this Common Benefit Escrow Agreement, or between any of them and any other person, resulting in adverse claims or demands being made with respect to the subject matter of this Common Benefit Escrow Agreement, or in the event that the Escrow Agent, in good faith, is in doubt as to any action it should take hereunder, the Escrow Agent may, at its option, refuse to comply with any claims or demands and refuse to take any other action hereunder, so long as such disagreement

EXHIBIT C -- COMMON BENEFIT SETTLEMENT AGREEMENT
FORM OF COMMON BENEFIT ESCROW AGREEMENT

continues or such doubt exists, and in any such event, the Escrow Agent shall not be liable in any way or to any person for its failure or refusal to act, and the Escrow Agent shall be entitled to continue to so refuse to act and refrain from acting until (i) the rights of all parties having or claiming an interest in the Escrow Property or the Escrow Account shall have been fully and finally adjudicated by the MDL Court, or all differences and doubts shall have been resolved by agreement among all of the interested parties, and (ii) the Escrow Agent shall, in the case of adjudication by a court of competent jurisdiction, have received a final order, judgment or decree by such court of competent jurisdiction, which order, judgment or decree is not subject to appeal, and in the case of resolution of differences and doubts by agreement, have received a notice in writing signed by an authorized person of each of the interested parties setting forth in detail the agreement.  The Escrow Agent shall have the option, after 30 calendar days' notice to the other parties of its intention to do so, to file an action in interpleader in the MDL Court requiring the parties hereto to answer and litigate any claims and rights among themselves.  The reasonable costs and expenses (including reasonable attorneys' fees and expenses) incurred by the Escrow Agent in connection with such proceeding shall be paid by, and be the obligation of, the Common Benefit Plaintiffs.  The rights of the Escrow Agent under this section are cumulative of all other rights which it may have by law or otherwise.

(f)       The Escrow Agent may consult with legal counsel of its selection in the event of any dispute or question among the Honorable Eldon E. Fallon and Common Benefit Attorneys' Representative as to the meaning or construction of any of the provisions hereof or the Escrow Agent's duties hereunder, and shall incur no liability and shall be fully protected in acting in accordance with the opinion and instructions of such counsel.  The Common Benefit Attorneys agree to reimburse the Escrow Agent on demand for the reasonable legal fees, disbursements and expenses incurred by the Escrow Agent in connection with reasonable and necessary consultation with legal counsel in response to a question or dispute referred to above.

Section 11.   *Indemnification of Escrow Agent and Designated Representatives.*

The Common Benefit Plaintiffs and Merck, jointly and severally, shall indemnify, hold harmless and defend the Escrow Agent and its employees, officers, and directors (each, an "Indemnified Party")from and against any and all losses, claims, liabilities and reasonable expenses, including the reasonable fees of its counsel, which it or they may suffer or incur in connection with the performance of its duties and obligations under this Common Benefit Escrow Agreement, except for those losses, claims, liabilities and expenses resulting solely and directly from an Indemnified Party's own gross negligence or willful misconduct as adjudicated by a court of competent jurisdiction.  This Section 11 shall survive the termination of this Common Benefit Escrow Agreement and the resignation or removal of the Escrow Agent.

Section 12.   *Indemnification of Designated Representatives.*

The Common Benefit Attorneys, jointly and severally, shall indemnify, hold harmless and defend their own respective designated authorized representative identified above,

C-10

## EXHIBIT C -- COMMON BENEFIT SETTLEMENT AGREEMENT
## FORM OF COMMON BENEFIT ESCROW AGREEMENT

from and against any and all losses, claims, liabilities and reasonable expenses, including the reasonable fees of its counsel, which it or they may suffer or incur in connection with the performance of its duties and obligations under this Common Benefit Escrow Agreement, except for those losses, claims, liabilities and expenses resulting solely and directly from its or their own gross negligence or willful misconduct as adjudicated by a court of competent jurisdiction.  This Section [12] shall survive the termination of this Common Benefit Escrow Agreement.

Section 13.   *Resignation or Removal of Escrow Agent.*

(a)   The Common Benefit Attorneys' Representative and the Honorable Eldon E. Fallon may remove the Escrow Agent at any time by giving to the Escrow Agent fifteen (15) calendar days' prior joint signed notice of removal.  The Escrow Agent may resign at any time by giving to the Common Benefit Attorneys' Representative, the Honorable Eldon E. Fallon, and Defendant's Representative fifteen (15) calendar days' prior written notice of resignation.

(b)   Within fifteen (15) calendar days after giving the foregoing notice of removal to the Escrow Agent or within fifteen (15) calendar days after receiving the foregoing notice of resignation from the Escrow Agent, the Common Benefit Attorneys' Representative and Defendant's Representative, shall appoint a successor escrow agent and give notice of such successor escrow agent to the Escrow Agent.  If a successor escrow agent has not accepted such appointment by the end of such (i) 15-day period, in the case of the Escrow Agent's removal, or (ii) 15-day period, in the case of the Escrow Agent's resignation, the Escrow Agent may, in its sole discretion, deposit the Escrow Property with the registry of the MDL Court in an interpleader action in the MDL Court.

(c)   Upon receipt of notice of the identity of the successor escrow agent, the Escrow Agent shall either deliver the Escrow Property then held hereunder to the successor escrow agent, less the Escrow Agent's fees, costs, expenses and the value of other obligations owed to the Escrow Agent hereunder, or hold such Escrow Property (or any portion thereof) pending distribution, until all such fees, costs and expenses or the value of other obligations are paid to it.

(d)   Upon delivery of the Escrow Property to the successor escrow agent or pursuant to Paragraph 13(b), the Escrow Agent shall have no further duties, responsibilities or obligations hereunder.

Section 14.   *Escrow Agent Fees and Expenses.*

To the extent that there is interest earned by the Escrow Property, and it is insufficient to pay the reasonable fees and expenses incurred in connection with the Common

**EXHIBIT C -- COMMON BENEFIT SETTLEMENT AGREEMENT**
**FORM OF COMMON BENEFIT ESCROW AGREEMENT**

Benefit Escrow Account, including but not limited to the reasonable fees and expenses of the Escrow Agent or any accounting or law firm performing services required under the terms of this Common Benefit Escrow Agreement, or other expenses set forth in Section 3(h), the Common Benefit Attorneys and their respective third party provider/payor clients from among the Settling Plaintiffs shall be responsible for paying 100% of the remaining unpaid fees and expenses out of funds held in the Common Benefit Escrow Account.  For purposes of Section 3(h) and this Section 14, the Escrow Agent's reasonable fees and expenses include all reasonable expenses, charges, counsel fees, and other disbursements incurred by it or by its attorneys, agents and employees in the performance of its duties and obligations under this Common Benefit Escrow Agreement as set forth on the attached Exhibit 2.  This Section 14 shall survive the termination of this Common Benefit Escrow Agreement and the resignation or removal of the Escrow Agent.

Section 15.   *Notice.*

All notices, requests, demands, claims, and other communications that are required or may be given pursuant to this Common Benefit Escrow Agreement must be in writing, in English and delivered personally against written receipt, by a recognized overnight delivery service, or by facsimile, to the parties at the addresses below (or to the attention of such other person or such other address as any party may provide to the other party by notice in accordance with this paragraph).  Any such notice or other communication will be deemed to have been given (i) if personally delivered, when so delivered, against written receipt, (ii) if sent by a nationally recognized overnight delivery service which guarantees next day delivery, one Business Day after being so sent, or (iii) if given by facsimile, once such notice or other communication is transmitted to the facsimile number specified below and electronic confirmation of receipt is received, provided that such notice or other communication is promptly thereafter delivered in accordance with the provisions of clauses (i) or (ii) hereof, in each case addressed to the intended recipient as set forth below.

FOR COMMON BENEFIT ATTORNEYS:

Christopher A. Seeger
Seeger Weiss LLP
One William Street
New York, NY 10004
Telephone:  (212) 584-0700
Facsimile: (212) 584-0799

C-12

**EXHIBIT C -- COMMON BENEFIT SETTLEMENT AGREEMENT**
**FORM OF COMMON BENEFIT ESCROW AGREEMENT**

FOR THE HONORABLE ELDON E. FALLON

    Honorable Eldon E. Fallon
    United States District Court
    500 Poydras Street, Room C-456
    New Orleans, LA 70130
    Telephone: (504) 7545
    Facsimile: (504) 6966

FOR DEFENDANT'S REPRESENTATIVE:

    Bruce N. Kuhlik
    Senior Vice President and General Counsel
    Merck & Co., Inc.
    One Merck Drive
    P.O. Box 100 (WS3A-15)
    Whitehouse Station, NJ 08889-0100
    Telephone: (908) 423-1000
    Facsimile: (908) 735-1244

    -and-

    John H. Beisner, Esq.
    Skadden, Arps, Slate, Meagher & Flom LLP
    1440 New York Avenue, N.W.
    Washington, D.C.  20005
    Telephone: (202) 371-7410
    Facsimile: (202) 661-8301

FOR THE ESCROW AGENT
    Citi Private Bank
    Kerry McDonough
    485 Lexington Avenue, 10th Floor
    New York, NY 10017
    Telephone:  (212) 783-3762
    Facsimile: (212) 783-3785

Section 16.   *Setoff; Reimbursement.*

    The Escrow Agent acknowledges that it shall not be entitled to set off against any funds in, or payable from, the Common Benefit Escrow Account to satisfy any liability to the Escrow Agent.

**EXHIBIT C -- COMMON BENEFIT SETTLEMENT AGREEMENT**
**FORM OF COMMON BENEFIT ESCROW AGREEMENT**

Section 17.   *Intended Beneficiaries: Successors.*

No persons or entities other than the Escrow Agent, the Common Benefit Attorneys' Representative on behalf of the Common Benefit Attorneys and their respective third party provider/payor clients from among the Settling Plaintiffs, Settling Plaintiffs, the Honorable Eldon E. Fallon, Defendant's Representative on behalf of Merck, and Merck severally, are intended beneficiaries of this Common Benefit Escrow Agreement, and only they shall be entitled to enforce the terms of this Common Benefit Escrow Agreement. The provisions of this Common Benefit Escrow Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors.

Section 18.   *Force Majeure.*

Neither the Escrow Agent nor any party to this Common Benefit Escrow Agreement shall be liable to any other party for losses due to, or if it is unable to perform its obligations under the terms of this Common Benefit Escrow Agreement because of, acts of God, fire, war, terrorism, electrical outages, equipment or transmission failure, or other causes reasonably beyond its control.

Section 19.   *Use of Citibank Name.*

No printed or other material in any language, including prospectuses, notices, reports, and promotional material which mentions "Citibank" by name or the rights, powers, or duties of the Escrow Agent under this Common Benefit Escrow Agreement shall be issued by any other parties hereto, or on such party's behalf, without the prior written consent of the Escrow Agent.

Section 20.   *Governing Law.*

This Common Benefit Escrow Agreement shall be construed in accordance with and governed by the laws of the State of New York governing agreements negotiated, executed and to be performed within the State of New York, without regard to the conflicts of law rules of such state.

Section 21.   *Jurisdiction and Venue.*

(a)   Unless otherwise expressly provided, the parties hereto irrevocably and unconditionally submit to the exclusive jurisdiction of the MDL Court for purpose of any suit, action or proceeding seeking to interpret or enforce any provision of, or based on any right arising out of, this Common Benefit Escrow Agreement, and the parties hereto agree not to

C-14

**EXHIBIT C -- COMMON BENEFIT SETTLEMENT AGREEMENT**
**FORM OF COMMON BENEFIT ESCROW AGREEMENT**

commence any such suit, action or proceeding except in the MDL Court.  The parties hereto hereby irrevocably and unconditionally waive any objection to the laying of venue of any such suit, action or proceeding in the MDL Court and hereby further irrevocably waive and agree not to plead or claim in the MDL Court that any such suit, action or proceeding has been brought in an inconvenient forum.

Section 22.  *Amendments.*

This Common Benefit Escrow Agreement may be amended only by written instrument executed by all of the parties hereto.  The waiver of any rights conferred hereunder shall be effective only if made in a written instrument executed by the waiving party.  The waiver by any party of any breach of this Common Benefit Escrow Agreement shall not be deemed to be or construed as a waiver of any other breach, whether prior, subsequent or contemporaneous, of this Common Benefit Escrow Agreement, nor shall such waiver be deemed to be or construed as a waiver by any other party.

Section 23.  *Counterparts.*

This Common Benefit Escrow Agreement or any notice or instruction hereto may be signed in any number of counterparts, each of which shall be an original, with the same effect as if the signatures thereto and hereto were upon the same instrument.  Delivery by facsimile or electronic mail of a signed counterpart (including as a pdf document) shall be deemed delivery for purposes of acknowledging acceptance hereof; however, an original executed Common Benefit Escrow Agreement must promptly thereafter be delivered to each party.

Section 24.  *Captions.*

The captions herein are included for convenience of reference only and shall be ignored in the construction and interpretation hereof.

Section 25.  *Conditions to Effectiveness.*

This Common Benefit Escrow Agreement shall become effective when each party hereto shall have signed a counterpart hereof.  If deemed necessary or desirable by the Common Benefit Attorneys' Representative and Defendant's Representative, the Escrow Parties (as hereinafter defined) agree to use their best efforts to seek an order of the MDL Court approving, and retaining continuing jurisdiction over, the Common Benefit Escrow Account as soon as possible, and agree that such order shall relate back to, and be deemed effective as of, the date this Common Benefit Escrow Agreement became effective.

**EXHIBIT C -- COMMON BENEFIT SETTLEMENT AGREEMENT**
**FORM OF COMMON BENEFIT ESCROW AGREEMENT**

Section 26.   *Assignment.*

Except as provided in Section 13, neither this Common Benefit Escrow Agreement nor any right or interest hereunder may be assigned in whole or in part by the Escrow Agent or any party without the prior written consent of the Escrow Agent and all of the other parties.

Section 27.   *Reporting.*

The Escrow Agent shall provide account statements to the Common Benefit Attorneys' Representative, the Honorable Eldon E. Fallon, and to Defendant's Representative on a monthly basis.  All other reports or information shall be provided upon the written request of the Common Benefit Attorneys' Representative or the Honorable Eldon E. Fallon with notice to the other parties.

Section 28.   *Authority.*

Each person who executes this Common Benefit Escrow Agreement on behalf of a corporation, partnership, joint venture, unincorporated association, public authority, municipal corporation, government, other entity, represents and warrants to each party that he or she has the authority to do so on behalf of the respective settling person or entity indicated.

Section 29.   *Severability.*

The invalidity, illegality or unenforceability of any provision of this Common Benefit Escrow Agreement shall in no way affect the validity, legality or enforceability of any other provision.  If any provision of this Common Benefit Escrow Agreement is held to be unenforceable as a matter of law, the other provisions shall not be affected thereby and shall remain in full force and effect.

**EXHIBIT C -- COMMON BENEFIT SETTLEMENT AGREEMENT**
**FORM OF COMMON BENEFIT ESCROW AGREEMENT**

Section 30.   *Conflict.*

The Common Benefit Attorneys, the Common Benefit Attorneys' Representative, Common Benefit Plaintiffs, Plaintiffs, Merck, Defendant's Representative and the Honorable Eldon E. Fallon (each an "Escrow Party" and together the "Escrow Parties") each recognize that the Escrow Agent and its affiliates may engage in transactions and/or businesses adverse to an Escrow Party or in which parties adverse to an Escrow Party may have interests.  Nothing in this Common Benefit Escrow Agreement shall (i) preclude the Escrow Agent and any of its affiliates from engaging in such transactions or businesses, or (ii) obligate the Escrow Agent and any of its affiliates to (a) disclose such transactions and/or businesses to the Escrow Parties, or (b) account for any profit made or payment received in, or as a part of, such transactions and/or businesses. Nothing herein shall be deemed to (i) give rise to a partnership or joint venture or (ii) establish a fiduciary or similar relationship, among the parties hereto.

*IN WITNESS WHEREOF; the parties have executed this Common Benefit Escrow Agreement as of the last date indicated below.*

**On behalf of Common Benefit Attorneys for the benefit of their respective Common Benefit Plaintiff clients identified on Exhibit 1 of this Common Benefit Escrow Agreement**

_____

Christopher A. Seeger
SEEGER WEISS LLP

For Common Benefit Plaintiffs

**EXHIBIT C -- COMMON BENEFIT SETTLEMENT AGREEMENT**
**FORM OF COMMON BENEFIT ESCROW AGREEMENT**

**On behalf of Merck**

_____

Bruce N. Kuhlik
Senior Vice President and General Counsel
Merck & Co., Inc.

Date:_____

**Citibank, N.A., as Escrow Agent**

By:   _____
          John Howard
          Director, Citi Private Bank

          Date:_____

**Honorable Eldon E. Fallon**

_____

Date:_____

**EXHIBIT C -- COMMON BENEFIT SETTLEMENT AGREEMENT**
**FORM OF COMMON BENEFIT ESCROW AGREEMENT**

**EXHIBIT 1 TO THE COMMON BENEFIT ESCROW AGREEMENT**

<u>List of Common Benefit Plaintiffs</u>

| |
|---|
| AFTRA Health Fund |
| Allied Services Division Welfare Fund |
| Amalgamated Workers Union Local 88 Welfare Fund |
| American Community Mutual Insurance Company |
| American Family Group |
| AmGUARD Insurance Company |
| Asbestos Workers Local 42 Welfare Fund |
| Assurant |
| Atlantic Mutual Insurance Group |
| Bay Area Delivery Drivers |

**EXHIBIT C -- COMMON BENEFIT SETTLEMENT AGREEMENT**
**FORM OF COMMON BENEFIT ESCROW AGREEMENT**

| |
|---|
| |
| Blasters, Drillrunners and Miners Union Local |
| |
| |
| |
| |
| |
| |
| |
| |
| |
| |
| |
| |
| |
| |

**EXHIBIT C -- COMMON BENEFIT SETTLEMENT AGREEMENT**
**FORM OF COMMON BENEFIT ESCROW AGREEMENT**

| |
|---|
| Bricklayers of Indiana Welfare Fund |
| Brotherhood of Firemen & Oilers Local 1201 Health & Welfare Fund |
| |
| Cavalier Homes, Inc |
| Cement Masons Local 592 |
| Centene |
| Central Pennsylvania Teamsters Health Welfare and Pension Fund |
| Central States, Southeast and Southwest Areas Health and Welfare Fund |
| |
| Commonwealth Care Alliance |
| |
| |
| Dealers-Unions Insurance Fund |
| EastGUARD Insurance Company |
| Engineers |
| Engineers Local 137 |
| Engineers Local 14 |
| Engineers Local 15 |
| |
| Frankenmuth Financial Group |

**EXHIBIT C -- COMMON BENEFIT SETTLEMENT AGREEMENT**
**FORM OF COMMON BENEFIT ESCROW AGREEMENT**

| |
|---|
| |
| |
| |
| Greater New York Benefit Fund (1199SEIU) |
| |
| GUARD Insurance Company |
| |
| Harleysville Insurance Co |
| |
| |
| Health and Welfare Fund of the Detectives Endowment Association Inc |
| |
| |
| Health Plan of San Mateo |

**EXHIBIT C -- COMMON BENEFIT SETTLEMENT AGREEMENT**
**FORM OF COMMON BENEFIT ESCROW AGREEMENT**

|  |
| --- |
|  |
|  |
|  |
|  |
|  |
|  |
|  |
|  |
|  |
| IBEW 673 Fringe Benefit Funds |
| IBEW Local 129 Fringe Benefit Funds |
| IBEW Local 32 Health and Welfare Fund |
| IBEW Local 683 Fringe Benefit Funds |
|  |
| Independent Health Association, Inc. |
| Independent Health Corporation, Inc. |
| Independent Heath Benefits Corporation, Inc. |
| Indiana Bricklayers Local No. 6 Welfare Trust Fund |
| Indiana Carpenters Health and Welfare Fund |

EXHIBIT C -- COMMON BENEFIT SETTLEMENT AGREEMENT
FORM OF COMMON BENEFIT ESCROW AGREEMENT

| |
|---|
| Indiana Electrical Workers Benefit Trust |
| Indiana Laborers Welfare Fund |
| Indiana State Council of Carpenters Health and Welfare Fund |
| Indiana State Council of Roofers Health and Welfare Fund |
| Indiana State District Council of Laborers and Hod Carriers Welfare Fund |
| International Association of Firefighters Local 22 Health & Welfare Fund |
| International Brotherhood of Electrical Workers 43 and Electrical Contractors Health and Welfare Fund |
| International Brotherhood of Teamsters |
| International Union of Operating Engineers Local 825 Welfare Fund |
| International Union of Painters and Allied Trades District Council 21 Fund |
| Iron Workers Locals 40, 361 and 417 Health and Vacation Fund |
| Ironworkers Local 580 Insurance Fund |

**EXHIBIT C -- COMMON BENEFIT SETTLEMENT AGREEMENT**
**FORM OF COMMON BENEFIT ESCROW AGREEMENT**

|  |
| --- |
|  |
|  |
|  |
| Local 237 Teamsters Brentwood School District Health & Welfare Trust Fund |
| Local 237 Teamsters North Babylon School District Health & Welfare Trust Fund |
| Local 237 Teamsters Plainview Old Bethpage Central School District Health & Welfare Trust Fund |
| Local 237 Teamsters Retirees Benefit Fund |
| Local 237 Teamsters Suffolk Regional Off Track Betting Corporation Health & Welfare Trust Fund |
| Local 282 Welfare Fund |
| Local 400 Welfare Fund |
| Local 522 Welfare Fund of New York and New Jersey |
| Local 7 Tile Industry Welfare Fund |
|  |
|  |

**EXHIBIT C -- COMMON BENEFIT SETTLEMENT AGREEMENT**
**FORM OF COMMON BENEFIT ESCROW AGREEMENT**

| |
|---|
| Marble Industry Trust Fund |
| |
| Michiana Area Electrical Workers Health and Welfare Fund |
| Michigan Health Maintenance Organization Plans, Inc., f/k/a Omnicare Health Plan, Inc. (Ken Ross) |
| Midwest Operating Engineers Health & Welfare Fund |
| |
| Motion Picture Laboratory Technicians and Film Editors Local 780 Welfare Fund |
| |
| |
| |
| |
| |
| NALC Health Benefit Plan |
| NALC Health Benefit Plan for Employees and Staff |
| National Benefit Fund |
| National Benefit Fund (Home Care Employees) |

**EXHIBIT C -- COMMON BENEFIT SETTLEMENT AGREEMENT**
**FORM OF COMMON BENEFIT ESCROW AGREEMENT**

| |
|---|
| National Elevator Industry Benefits |
| New York City District Council of Carpenters Welfare Fund |
| NorGUARD Insurance Company |
| |
| NOVA Healthcare Administrators |
| NY State Teamsters Council Health and Hospital Fund |
| Office of Financial and Insurance Services for the State of Michigan, Wellness Plan (Ken Ross) |
| Ohio Carpenters Health Fund |
| Ohio State IBEW Health & Welfare Fund |
| |
| Painters District Council No 30 Health and Welfare, |
| Painters Local No. 469 Health and Welfard Fund |
| Painting Industry Insurance and Annuity Funds |
| Pennsylvania Employees Benefit Trust Fund |
| Pension, Hospitalization and Benefit Plan of the Electrical Industry |

**EXHIBIT C -- COMMON BENEFIT SETTLEMENT AGREEMENT**
**FORM OF COMMON BENEFIT ESCROW AGREEMENT**

| |
|---|
| Philadelphia Federation of Teachers Health and Welfare Fund |
| Pipe Trades Industry Health and Welfare Plan |
| Plasterers Local 8 Health & Welfare Fund |
| Plumbers and Steamfitters Local 42 Health and Welfare Plan |
| Plumbers and Steamfitters Local 440 Health and Welfare Plan |
| Plumbers and Steamfitters Local No. 166 Health and Welfare Plan |
| Plumbers Local No. 210 Health and Welfare Fund |
| PMA Insurance Group |
| Preferred Administrative Services, Inc |
| Preferred Assurance Company, Inc |
| |
| |
| Professional Benefit Administrators, Inc |
| QCA Health Plan |
| |
| |
| |

**EXHIBIT C -- COMMON BENEFIT SETTLEMENT AGREEMENT**
**FORM OF COMMON BENEFIT ESCROW AGREEMENT**

| |
|---|
| |
| |
| Retiree Health and Welfare Fund of the Detectives Endowment Association Inc |
| Rochester Area Health Maintenance Organization, Inc |
| Roofers Local 30 Health |
| Sergeants Benevolent Assn Health and Welfare Fund |
| Service Employee International Union Local No. 3 Health and Welfare Fund |
| Service Employees International Union (1199P) |
| SFM Mutual Insurance Company |
| Sheet Metal Workers Local No 19 Fund |
| Sheet Metal Workers Local No. 20 Welfare and Benefit Fund |
| Southern California Permanente Medical Group |
| Southern Ohio Painters Health and Welfare Fund |

**EXHIBIT C -- COMMON BENEFIT SETTLEMENT AGREEMENT**
**FORM OF COMMON BENEFIT ESCROW AGREEMENT**

| |
|---|
| Steamfitters Local 420 Welfare Fund |
| Teamsters Benefit Trust |
| Teamsters Local 1205 Welfare Fund |
| Teamsters Local 175 505 Health and Welfare Trust Fund |
| Teamsters Local 20 Insurance Fund |
| Teamsters Local 237 Welfare Fund |
| Teamsters Local 804 Welfare Fund |
| Teamsters Local 830 Health & Welfare Fund |
| The Steamfitters' Industry Welfare Fund |
| |
| UFCW Local 1776 |
| Uniformed Sanitationmens Assn Retirees Welfare And Security Benefits Funds |
| United Food and Commercial Workers Union-Employer Health and Welfare Fund |
| |

**EXHIBIT C -- COMMON BENEFIT SETTLEMENT AGREEMENT**
**FORM OF COMMON BENEFIT ESCROW AGREEMENT**

| |
|---|
| United Independent Union Health & Welfare Fund |
| |
| Universal American Corp. |
| Upstate Administrative Services, Inc |
| |
| |
| Welfare Fund of Heat and Frost Insulators Local 12 |
| WestGUARD Insurance Company |
| County of Suffolk, NY |
| |
| Blue Cross of Idaho Health Service, Inc. |
| |
| Oklahoma State and Education Employees Group Insurance Board |
| Oklahoma Public Employees Health and Welfare Trust |
| |

# EXHIBIT C -- COMMON BENEFIT SETTLEMENT AGREEMENT
# FORM OF COMMON BENEFIT ESCROW AGREEMENT

### EXHIBIT 2 TO COMMON BENEFIT ESCROW AGREEMENT -- ESCROW AGENT FEE SCHEDULE

**Prepared for Vioxx Private TPP Common Benefit Escrow Agreement
Citibank, N. A., Escrow Agent[1]**

**Acceptance Fee**
To cover the acceptance of the Escrow Agency appointment, the study of the Escrow Agreement, and supporting documents submitted in connection with the execution and delivery thereof, and communication with other members of the working group:
> **WAIVED**

**Administration Fee**
To cover maintenance of the Escrow Account including safekeeping of assets in the escrow account, normal administrative functions of the Escrow Agent, including maintenance of the Escrow Agent's records, follow-up of the Escrow Agreement's provisions, and any other safekeeping duties required by the Escrow Agent under the terms of the Escrow Agreement.

> Fee: $10,000 (Waived if Escrow Property held in Escrow Account for at least 30 calendar days).

> (Conditional upon escrowed funds invested in a FDIC insured non-interest bearing checking account providing daily liquidity)

> Fee referenced above is per annum or any portion of a year thereof, payable initially upon account funding and annually on the anniversary date of the Escrow Agreement thereafter, if applicable.

**1099 Tax Preparation Fee**
To cover preparation of Forms 1099-INT for either escrow party for each calendar year:

> **WAIVED  (Conditional upon one (1) 1099 rendered to one of the escrow parties)**

**Transaction Fees**
To cover all required disbursements from the escrow account, including disbursements via checks and/or wire transfers, payments to the escrow parties, fees associated with postage and overnight delivery charges incurred by the Escrow Agent as required under the terms and conditions of the Escrow Agreement.

> WAIVED

**Legal Fees**

> **At cost, if applicable.**

**Other Fees**
> **$2,500** per amendment, when necessary

**Date Submitted:** [02 Sept. 2009]

---

[1] **TERMS AND CONDITIONS**: The above schedule of fees does not include charges for out-of-pocket expenses or for any services of an extraordinary nature that we or our legal counsel may be called upon from time to time to perform in either an agency or fiduciary capacity, nor does it include the fees of our legal counsel. Fees are also subject to satisfactory review of the documentation, and we reserve the right to modify them should the characteristics of the transaction change. Our participation in this program is subject to internal approval of the third party depositing monies into the escrow account. The Acceptance Fee, if any, is payable upon execution of the documents. Should this schedule of fees be accepted and agreed upon and work commenced on this program but subsequently halted and the program is not brought to market, the Acceptance Fee and legal fees incurred, if any, will still be payable in full.