UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In re:  VIOXX
          Products Liability Litigation

This Document Relates to:

*All Government Actions*

MDL NO. 1657

SECTION L

JUDGE ELDON E. FALLON

MAGISTRATE JUDGE KNOWLES

**NEW YORK, FLORIDA, AND SOUTH CAROLINA'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' STEERING COMMITTEE'S MOTION DENOMINATED AS AN EMERGENCY MOTION FOR ORDER ESTABLISHING ESCROW FUND**

## TABLE OF CONTENTS

**Page(s)**

I.  INTRODUCTION ..................................................................................................1

II.  FACTUAL BACKGROUND ..............................................................................4

    A.  DOJ's criminal investigation, plea agreement and the accompanying settlements ..................................................................................................4

    B.  The New York, Florida, and South Carolina Actions ...............................6

        1.  The New York Action ...................................................................6

        2.  The Florida Action .......................................................................7

        3.  The South Carolina action ............................................................8

    C.  The PSC's March 2011 motion to obtain fees from governmental entities and the Emergency Motion. ..........................................................9

III.  ARGUMENT .....................................................................................................11

    A.  The Emergency Motion should be stricken or denied because it does not state with particularity the grounds for the motion or the relief sought and because the PSC failed to submit a memorandum explaining any grounds. ..........................................................................11

    B.  The PSC has not demonstrated that this Court has subject matter jurisdiction over the New York, Florida, and South Carolina actions. ..................12

    C.  The PSC has not met its burden as to any of the four requirements for the issuance of a preliminary injunction. .........................................15

        1.  The PSC has not demonstrated a substantial likelihood that it will prevail on the merits of its request for fees. ...................16

        2.  The PSC has not demonstrated that there is a substantial threat it will suffer an irreparable injury. ..................................20

        3.  The PSC has not demonstrated that any threatened injury to its interests outweighs the certain harm to the States from the issuance of an injunction. ........................................................21

        4.  Granting the preliminary injunction would disserve the public interest. .......................................................................................21

IV.  CONCLUSION ..................................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Allender v. Raytheon Aircraft Co.*,
439 F.3d 1236 (10th Cir. 2006) ...................................................................................11, 12

*Anderson v. Jackson*,
556 F.3d 351 (5th Cir. 2009) ....................................................................................15

*Barton v. Summers*,
293 F.3d 944 (6th Cir. 2002) ...................................................................................17

*BellSouth Telecomms. v. North Carolina Utils. Comm'n*,
240 F.3d 270 (4th Cir. 2001) ...................................................................................17

*Budget Prepay, Inc. v. AT&T Corp.*,
605 F.3d 273, 281 (5th Cir. 2010) ..........................................................................13

*Enterprise Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*,
762 F.2d 464 470-71 (5th Cir. 1985) .......................................................................13

*Hood v. AstraZeneca Pharm., LP*,
744 F. Supp. 2d 590 (N.D. Miss. 2010) ..................................................................14

*In re Showa Denko K.K.*,
953 F.2d 162 (4th Cir. 1992) ...................................................................................19

*In re Vioxx Prods. Liab. Litig.*,
2008 U.S. Dist. LEXIS 60269 (E.D. La. Aug. 7, 2008) ....................................15, 21

*Janvey v. Alguire*,
647 F.3d 585 (5th Cir. 2011) ...................................................................................15

*Kador v. City of New Roads*,
2010 U.S. Dist. LEXIS 52382 (M.D. La. May 27, 2010).........................................12

*Kentucky v. Purdue Pharma, L.P.*,
2011 U.S. Dist. LEXIS 111068 (S.D.N.Y. Sept. 26, 2011)....................................14

*Knight v. United States*,
982 F.2d 1573 (Fed. Cir. 1993).................................................................................19

*New Mexico v. Ortho-McNeil-Janssen Pharm., Inc.*,
2009 U.S. Dist. LEXIS 116524 (D.N.M. Jan. 26, 2009) ........................................14

*Palmer v. Waxahachie Indep. Sch. Dist.*,
  579 F.3d 502 (5th Cir. 2009) .................................................................................15

*Paulsson Geophysical Servs. v. Sigmar*,
  529 F.3d 303 (5th Cir. 2008) .................................................................................20

*PCI Transp. Inc. v. Fort Worth & W. R.R. Co.*,
  418 F.3d 535 (5th Cir. 2005) ...........................................................................16, 20

*Riley v. Northwestern Bell Tel. Co.*,
  1 F.3d 725 (8th Cir. 1993) .....................................................................................12

*Rudolph v. Adamar of N.J., Inc.*,
  153 F. Supp. 2d 528 (D.N.J. 2001) ........................................................................16

*Sossamon v. Texas*,
  131 S. Ct. 1651 (2011) ...........................................................................................17

*South Carolina v. GlaxoSmithKline, LLC*,
  2011 U.S. Dist. LEXIS 80522 (D.S.C. July 22, 2011) ..........................................14

*Texas Med. Ass'n v. Sullivan*,
  875 F.2d 1160 (5th Cir. 1989) ...............................................................................13

*Texas v. Merck & Co.*,
  385 F. Supp. 2d 604 (W.D. Tex. 2005).................................................................13

*Texas v. Merck & Co.*,
  No. 06-232 (W.D. Tex. May 10, 2006), slip op......................................................14

*United States ex rel. Bogart v. King Pharm.*,
  493 F.3d 323 (3d Cir. 2007)..............................................................................18, 19

*United States ex rel. Merena v. SmithKline Beecham Corp.*,
  52 F. Supp. 2d 420 (E.D. Pa. 1998) ..................................................................18, 19

*Visual Sciences, Inc. v. Integrated Commc'ns, Inc.*,
  660 F.2d 56 (2d Cir. 1981)......................................................................................13

## OTHER AUTHORITIES

Fed. R. Civ. P. 7 .......................................................................................................2, 11

Fed. R. Civ. P. 65...........................................................................................3, 12, 15, 16

Local Rule 7.4.............................................................................................................2, 11, 12

# I.    INTRODUCTION

On November 22, 2011, Merck entered into a federal criminal plea and announced its accompanying agreement to enter into settlements with the federal government and multiple states concerning Merck's conduct with respect to Vioxx.  This result grew out of a federal investigation initiated by the United States Attorney's Office for the District of Massachusetts ("USAO") in November 2004, shortly after Merck withdrew Vioxx from the market, and before this MDL or the Plaintiffs' Steering Committee ("PSC") existed.  In October 2010, Merck reserved $950 million to resolve the federal criminal investigation and was subsequently joined in negotiating a resolution by a team for multiple states' Attorneys General acting through the National Association of Medicaid Fraud Control Units ("NAMFCU").

The federal criminal plea and associated USAO/NAMFCU settlements are separate and apart from this MDL.  The PSC has not alleged, nor could it, that it played any part of the negotiations leading to the USAO/NAMFCU settlements, nor has it alleged that it caused this result.  As Susan Winkler, who negotiated the settlements on behalf of the USAO, explains in an email dated November 22, 2011, "The PSC had no involvement in the investigation or the negotiations that resulted in this resolution,"[1] and the point has been reiterated by a member of the NAMFCU team.[2]

New York, Florida, and South Carolina (the "States"), through their own Medicaid Fraud Control Units, have each agreed to participate in the USAO/NAMFCU resolution, without modification.

---

[1] Email dated 11/22/11 from Susan Winkler, attached as Exhibit A to Declaration of Craig R. Spiegel ("Spiegel Decl."), submitted herewith.

[2] Declaration of Robert Patten dated November 22, 2011 ("Patten Decl.") (Exh. B to Spiegel Decl.).

Efforts in this MDL to obtain additional settlement proceeds beyond those available through the USAO/NAMFCU settlements were unsuccessful.  Proceeds from the USAO/NAMFCU settlements will go to Medicaid programs, which are jointly funded by federal, state and local governments, to provide essential medical services for the indigent – services that are of particular importance at a time when the economy is suffering and governmental budgets are especially tight.

Now, the PSC is asking this Court to award the drastic and extraordinary relief of enjoining full payment of settlement proceeds resulting from the USAO/NAMFCU work and the federal criminal plea so that funds can be reserved for payment to the PSC rather than going back into the Medicaid programs.  The PSC's motion, denominated as *Plaintiffs' Steering Committee's Emergency Motion for Order Establishing Escrow Fund for Common Benefit Fees* (the "Emergency Motion") [Dkt. # 63560], must be denied for at least the following reasons.

*First*, the Emergency Motion is fatally deficient because it fails to specify *any* basis for the motion, fails to specify against whom relief is sought, and is unaccompanied by a memorandum of law, all of which are required by the Fed. R. Civ. P. 7 and Local Rule 7.4.  The PSC has known of the legal and factual issues raised by its effort to obtain a fee from the States at least since last March, when the States responded to its original "Motion for an Order Imposing Common Benefit Obligation Upon the Recoveries of Government Action Participants in the Government Action Third Party Payor Settlement Program" (the "March 16, 2011 Motion") by a letter that pointed out those issues.  There is no valid reason for the rushed determination that the PSC would now impose on the States and this Court.

*Second*, because this Court does not have subject matter jurisdiction over the States' actions, it is without power to grant an injunction that would affect their substantive rights to

- 2 -

receive and budget these settlement funds and would trench on their sovereignty.  At the present time, each of these sovereigns has a jurisdictional remand motion pending based on the improper removal of their state-filed cases to federal court.  These issues of subject matter jurisdiction must be resolved before substantive rights can be determined.

*Third*, even if this Court had jurisdiction to issue an injunction impounding the States' funds – which it does not – the PSC would still have to meet its burden of establishing entitle-ment to a preliminary injunction under Fed. R. Civ. P. 65.  It has not even attempted to do so, and thus must fail for that reason alone.  Had it attempted, it would have failed in any event.  Under Rule 65, there are four requirements before an injunction can issue.  The PSC could not establish the first, a likelihood of success on the merits, because:  (1) the Court lacks subject matter jurisdiction, which is necessary before injunctive relief can issue; (2) an injunction would violate the States' sovereignty; (3) the USAO/NAMFCU resolution is not a "common fund" against which the PSC can be awarded fees; and (4) the PSC has been unable to point to any evidence that it caused the federal plea agreement and accompanying settlements.

The PSC would also have been unable to meet the other requirements for a preliminary injunction.  Because only money is at issue, it cannot demonstrate that there is no remedy at law available, thus making an injunction inappropriate.  The PSC cannot establish that it is threatened with an injury that outweighs the injury to the States if an injunction issues, for the PSC has not suggested that it will face any injury at all.  Finally, where the injunction would be directly contrary to the public interest in providing essential healthcare services to the needy, the PCS cannot establish that the grant of an injunction will not disserve the public interest.

Given that the PSC has not pointed to any participation in the settlement process, nor noted any work that caused the federal plea agreement and associated settlements, and given that

the Assistant United States Attorney and a NAMFCU team member have represented that the

PSC was not involved, its motion must fail.  Even if the PSC had supported its argument, which

it has not, an evidentiary hearing would be required before any preliminary injunction could

issue.

## II.      FACTUAL BACKGROUND

**A.      DOJ's criminal investigation, plea agreement and the accompanying settlements.**

The U.S. Department of Justice ("DOJ"), through the United States Attorney's Office for

the District of Massachusetts, began investigating Merck's conduct with respect to Vioxx before

there was an MDL or a PSC.  On November 8, 2004, only 39 days after it withdrew Vioxx from

the market, Merck publicly disclosed that it was under a DOJ investigation and had received a

subpoena requesting information "related to the Company's research, marketing and selling

activities with respect to Vioxx."[3]  On February 1, 2008, based on Merck's additional

disclosures, the Wall Street Journal reported that the USAO was conducting a grand jury investi-

gation into whether Merck promoted Vioxx to healthcare professionals for uses other than those

approved by government regulators.[4]  On March 23, 2009, Merck announced that it had been

notified by the USAO that it was the target of a criminal grand jury investigation.[5]  On October

29, 2010, Merck announced in its financial disclosures that it had reserved $950 million to

resolve the federal investigation.[6]  After the October 29, 2010 announcement of Merck's reserve,

a team of attorneys from the offices of various states' Attorneys General, under the auspices of

---

[3] Merck Form 10-Q for third quarter of 2004, at p. 9 (Spiegel Decl., Exh. C).

[4] Wall Street Journal article dated Feb. 1, 2008 (Spiegel Decl., Exh. D).

[5] Merck press release dated March 3, 2009 (Spiegel Decl., Exh. E); *see also* Merck Form 10-Q for first quarter of 2009, at p. 25 ("In March 2009, Merck received a letter from the U.S. Attorney's Office for the District of Massachusetts identifying it as a target of the grand jury investigation regarding *Vioxx*.") (Spiegel Decl., Exh. F).

[6] Merck Form 10-Q for third quarter of 2010, at p. 22 (Spiegel Decl., Exh. G).

NAMFCU, joined in the USAO's settlement negotiations with Merck.[7]  NAMFCU is an association of the fifty federally-certified state Medicaid Fraud Control Units, most of which reside within the various State Attorneys General's offices.  NAMFCU has a long history of working with the member states and with federal enforcement authorities to pursue Medicaid fraud claims, beginning with the first "global" settlement in 1992 and continuing until today.[8]

The NAMFCU team that has been involved in the Vioxx settlement negotiations consists of governmental attorneys from states that do not have matters pending in this MDL.  NAMFCU does not have the authority to bind its members.  Each state makes its own independent decision about whether to enter into a settlement negotiated through a NAMFCU team, and if it does so, it enters into a separate, state-specific agreement with the defendant.  Each state has discretion to decline to participate on the terms presented and to negotiate different terms.[9]

On November 22, 2011, DOJ announced that Merck had agreed to a criminal plea in connection with its marketing of Vioxx and that Merck and the USAO and a NAMFCU team had reached agreement on accompanying civil settlements.  The total value of the criminal penalty and civil settlements is $950 million, as reserved.  *See, e.g.*, DOJ Press Release, Nov. 22, 2011 (Spiegel Decl., Exh. P).

New York, Florida, and South Carolina have agreed to join in the USAO/NAMFCU resolution without modification.  Other states whose cases are currently pending in this MDL have announced that they will not participate in any settlements accompanying the federal plea agreement.  Many of those other states have agreed to purchase the PSC's trial package for the

---

[7] Patten Decl., ¶ 6.

[8] *Id.*, ¶¶ 2-3.

[9] *Id.*, ¶ 5.

same amount the PSC now seeks from New York, Florida, and South Carolina, all of whom chose not to purchase the trial package.

**B.      The New York, Florida, and South Carolina Actions**

     **1.      The New York Action**

On September 17, 2007, the State of New York, in its sovereign capacity, joined by the City of New York, brought suit against Merck in state court in New York to enforce state and local laws.  New York's complaint asserts entitlement to recovery of funds in its sovereign capacity through claims under New York state and New York City statutory law, including the New York State False Claims Act, the New York City False Claims Act, the New York State Social Services Law and the New York State Executive Law.  New York's complaint does not raise any claims under federal law or any claims that necessarily require resolution of federal law issues.

New York's complaint focuses specifically on claims that Merck improperly influenced doctors to write Vioxx prescriptions for patients who had pre-existing cardiovascular risk factors that were paid for by the New York Medicaid Program and the New York Elderly Pharmaceutical Insurance Coverage Program.[10]  These patients would not have received the drug had Merck honestly informed physicians of the heart risks of Vioxx.

On September 28, 2007, Merck removed New York's action to the United States District Court for the Southern District of New York on the sole ground that unspecified issues of federal law must necessarily be decided for New York to prove its claims.  New York filed a timely remand motion in which it explained that there is no basis for federal subject matter jurisdiction

---

[10] A copy of the New York complaint is attached to the Spiegel Declaration at Exh. H.

because the bases for its claims were state law theories, none of which required resolution of federal issues.[11]

The Judicial Panel on Multidistrict Litigation issued its Conditional Transfer Order on October 10, 2007. New York then moved to vacate the Conditional Transfer Order. By order of February 11, 2008, the Panel denied that motion and transferred the New York action to this MDL over New York's objection.

New York's jurisdictional remand motion has been fully briefed and is still pending.

### 2.      The Florida Action

On September 24, 2008, the State of Florida, through its Attorney General, brought suit against Merck in state court in Florida to enforce violations of Florida consumer protection laws. Florida's Complaint only asserts violations of state consumer protection laws on behalf of four state agencies. Florida's Complaint does not raise any claims under federal law or any claims that necessarily require resolution of federal law issues.

Florida's Complaint focuses specifically on claims that Merck improperly influenced doctors to write Vioxx prescriptions paid for or reimbursed by the Department of Health, Department of Management Services, Department of Corrections, and the Agency for Health Care Administration.[12] The Complaint alleges that patients or beneficiaries of these agencies would not have received the drug had Merck honestly informed physicians of the risks of Vioxx.

On October 17, 2008, Merck removed Florida's action to the United States District Court for the Northern District of Florida, alleging subject matter jurisdiction over the matter due to the extent of purchases under the Medicaid program as well as due to the oversight over the alleged

---

[11] Copies of New York's remand papers and Merck's opposition are attached to the Spiegel Declaration at Exh. I.

[12] A copy of the Florida complaint is attached to the Spiegel Declaration at Exh. J.

violative activity by the U.S. Food and Drug Administration.  Florida filed a timely remand motion in which it explained that there is no basis for federal subject matter jurisdiction because the sole bases for its claims were state law theories, none of which required resolution of federal issues.[13]  Florida's jurisdictional remand motion has been fully briefed and is still pending in this Court.

### 3.     The South Carolina action

On August 25, 2009, the State of South Carolina, through its Attorney General, brought suit against Merck in state court in South Carolina.[14]  South Carolina's Complaint asserts violations of the South Carolina Unfair Trade Practices Act, fraudulent misrepresentation or suppression, recision/unjust enrichment, and submission of false and fraudulent claims under the Medicaid program.  South Carolina's Complaint asserts these violations on behalf of the South Carolina Medicaid and the State Employee Insurance Program.  South Carolina's Complaint does not raise any claims under federal law or any claims that necessarily require resolution of federal law issues.  South Carolina's Complaint focuses specifically on claims that Merck misrepresented and concealed material safety information from third-party payors concerning the cardiovascular and gastrointestinal risks associated with Vioxx, and that Merck made false and intentionally misleading representations regarding the comparative safety and efficacy of Vioxx as compared to traditional non-steroidal anti-inflammatory drugs.

On September 24, 2009, Merck removed South Carolina's action to the United States District Court for the District of South Carolina on the grounds that the Medicaid program and the Federal Food and Cosmetic Act were implicated.

---

[13] Copies of Florida's remand papers and Merck's opposition are attached to the Spiegel Declaration at Exh. K.

[14] A copy of the South Carolina complaint is attached to the Spiegel Declaration at Exh. L.

South Carolina filed a timely remand motion in which it asserted that neither the substantial federal question doctrine nor the Class Action Fairness Act conferred federal jurisdiction.[15]  South Carolina's jurisdictional remand motion has been fully briefed and is still pending in this Court.

New York, Florida, and South Carolina have not agreed to any participation agreements in this MDL.  None of them have agreed to purchase the PSC's trial package.

Alaska, Kentucky, Mississippi, Montana, Oklahoma, and Utah, in contrast, have agreed to purchase the trial package offered to them by the PSC, promising to pay up to 6.5% of their recoveries (up to certain caps), with the agreement that the PSC will seek no further compensation from such states.[16]  Accordingly, those states are not affected by the Emergency Motion.  The PSC has given no explanation of why, if it set the price for its trial package at 6.5%, it seeks to charge the same amount against the states that have chosen not to purchase it.[17]

**C.    The PSC's March 2011 motion to obtain fees from governmental entities and the Emergency Motion.**

The PSC filed the instant Emergency Motion some eight months after filing its March 16, 2011 Motion, in which it also sought an Order imposing a supposed "common benefit" fee from the settlements accompanying Merck's federal plea agreement.

---

[15] Copies of South Carolina's remand papers and Merck's opposition are attached to the Spiegel Declaration at Exh. M.

[16] In the private personal injury litigation, private plaintiffs agreed to have 6.5% withheld to pay for "common benefit" fees.  The PSC justified that level of fees in substantial part by pointing to the detailed and resource-intensive claims process established by the private personal injury settlement.  In those cases, the 6.5% was taken from attorneys' fees only, and not from the client recoveries.

[17] In the Emergency Motion, the PSC refers to these other states as having agreed to pay 6.5% of their recoveries, but it fails to inform the Court that these agreements were for purchase of the trial package.

In moving for fees, the PSC never mentioned that the federal investigation of Merck began before this MDL existed and before there was a PSC.  The PSC has yet to point to any participation in the USAO and NAMFCU negotiations with Merck or to any communication with the USAO or NAMFCU that affected the federal investigation or the settlement negotiations.  Nor could the PSC point to any work it had done that caused the federal plea agreement or accompanying settlements.  The PSC's repeated references, in its memorandum of law in support of its March 16, 2011 Motion, to a supposed "Government Action Third Party Payor Settlement Program" concern a fictional notion, not any real, existing program or effort.  The only known settlement discussions concerning the governmental actions that have taken place in the MDL were the failed efforts, after announcement of the USAO/NAMFCU resolution, to obtain additional relief from Merck.  No benefit was gained from such discussions.

Two days after the March 16, 2011 Motion was filed, counsel for the State of Florida, on behalf of Florida, New York, and Pennsylvania, wrote a letter to the Court to state that they believed the motion to be premature, that it would require factual development, and that the motion would be opposed.  The March 18, 2011 letter further informed the Court that the PSC's effort to obtain funds from settlements obtained by the USAO and NAMFCU team must necessarily raise "substantial issues of jurisdiction, sovereignty, separation of powers, and other policy and legal issues that, if and when ripe, will require substantial input and consideration based upon the legal issues and a well-developed record."  The letter states:

> [T]he PSC Motion does not include discussion of the relevant legal issues, and no such record presently exists.  The PSC Motion makes numerous factual assertions that we believe are unsupported and erroneous.  The PSC Motion even purports to seek relief on behalf of the Government Action Case Management Committee, though no consultation was had with that Committee.  These issues can all be addressed at the proper time and on the proper record without prejudice to the PSC.

On April 1, 2011, the Court, in response to the March 18, 2011 letter, stayed the March 16, 2011 Motion by entering an Order noting "the Court will confer with the parties to set a briefing schedule to permit all parties an opportunity to be heard on the motion." [Dkt. # 62788.] On June 2, 2011, the PSC filed an affidavit that purported to set forth the actions it has taken in the governmental actions. Nothing in that submission refers to any work on the federal criminal investigation or the USAO/NAMFCU resolution, nor does it point to any positive result for the States from the work that was done. Other than that, the PSC chose to not take any action on its fee demand for almost eight months.

When the PSC filed its Emergency Motion, it unilaterally set a hearing for less than three weeks later, in disregard of the April 1, 2011 Order. It did not address any of the matters raised in the March 18, 2011 letter, nor describe any emergency that could not have been forestalled by earlier action.

## III.    ARGUMENT

### A.    The Emergency Motion should be stricken or denied because it does not state with particularity the grounds for the motion or the relief sought and because the PSC failed to submit a memorandum explaining any grounds.

As the States argue in detail in their separate memorandum of law in support of their motion to strike [Docket # 63571], which is incorporated herein by reference, the PSC's Emergency Motion should be stricken or denied because it violates Fed. R. Civ. P. 7(b)(1) and Local Rule 7.4, which require that every motion "state with particularity the grounds for seeking the order; and . . . state the relief sought," Fed. R. Civ. P. 7(b)(1), and be accompanied by a supporting memorandum, Local Rule 7.4. Courts frequently strike or deny motions that fail to comply with Rule 7(b)(1) or Local Rule 7.4.[18]

_____

[18]   For Rule 7, *see*, *e.g.*, *Allender v. Raytheon Aircraft Co.*, 439 F.3d 1236, 1240 (10th Cir. 2006) ("This motion did not meet the requirements of Rule 7(b)(1). It did not provide a

Although the PSC seeks preliminary injunctive relief, the Emergency Motion does not address the standards for a preliminary injunction under Fed. R. Civ. P. 65, let alone satisfy the burden of proof under that rule.  The PSC does not cite any legal authority that would permit this Court to grant the injunction it seeks, does not explain why there is only now a supposed emergency, does not specify what party is supposed to pay money into an escrow fund, and does not specify which sovereigns it is seeking to affect. The failure of the PSC to offer any argument or evidence in support of its motion for a preliminary injunction requires that the Emergency Motion be stricken as defective, or denied.

An additional defect is that the proposed order submitted by the PSC fails to satisfy the dictates of Rule 65 (d)(1), which states that every order granting an injunction must:  "(A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail-- and not by referring to the complaint or other document--the act or acts restrained or required." The PSC's proposed order, in failing to specify against whom it is directed and which governmental entities it seeks to reach, does not meet the requirements of this rule.

**B.**      **The PSC has not demonstrated that this Court has subject matter jurisdiction over the New York, Florida, and South Carolina actions.**

A "'district court has no power to grant an interlocutory or final injunction against a party over whom it has not acquired valid jurisdiction,' and an order granting an interlocutory injunc-

---

single ground for relief, let alone state the grounds for relief with 'reasonable specification.'"); *Riley v. Northwestern Bell Tel. Co.*, 1 F.3d 725, 726-727 (8th Cir. 1993) ("post-trial document did not constitute a motion because the notice of motion did not 'state with particularity the grounds therefor' as required by Fed. R. Civ. P. 7(b)(1)").

For Rule 7.4, *see*, *e.g., Kador v. City of New Roads*, 2010 U.S. Dist. LEXIS 52382, at *16-17 (M.D. La. May 27, 2010) ("[D]efendants' present motion should be denied because it is procedurally deficient…. [T]he motion does not include a Memorandum in Support, containing a concise statement of the reasons in support of the motion and citations to the legal authorities upon which defendants rely, as required by Local Rule 7.4.").

tion in these circumstances 'is erroneous as a matter of law.'" *Enterprise Int'l, Inc. v. Corpora-cion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 470-71 (5th Cir. 1985) (citations omitted); *Budget Prepay, Inc. v. AT&T Corp.*, 605 F.3d 273, 281 (5th Cir. 2010) (vacating preliminary injunction, because "the district court was without subject matter jurisdiction to entertain the claims"); *Texas Med. Ass'n v. Sullivan*, 875 F.2d 1160 (5th Cir. 1989) (same); *Visual Sciences, Inc. v. Integrated Commc'ns, Inc.*, 660 F.2d 56, 59 (2d Cir. 1981) ("A prima facie showing of jurisdiction will not suffice . . . where a plaintiff seeks preliminary injunctive relief.").

Although the States explained in their separate jurisdictional remand motions why subject matter jurisdiction is lacking here, a point reiterated in the March 18, 2011 letter to the Court, the PSC ignores this fundamental issue. The States respectfully refer the Court to their remand motions for a full statement of their arguments as to why this Court lacks subject matter jurisdiction. Many courts have held that there is no federal jurisdiction over similar cases.

Indeed, a case by the State of Texas against Merck seeking to recover Medicaid funds spent on Vioxx has been removed and remanded to state court twice. First, the district court remanded because the state's claims did not depend upon disputed, substantial federal questions under the FDCA and federal Medicaid laws,[19] Merck removed the case again when Texas conceded in a discovery response that its Medicaid funding "is contingent upon the State's compliance with the federal laws, rules and regulations pertaining to Medicaid and is calculated according to federal law." The court again remanded the case, because the "crux of Texas's action is what Merck said and did in order to convince Texas to add Vioxx to Texas's Medicaid Program" and because even with partial federal funding of the state's Medicaid program, the

---

[19] *Texas v. Merck & Co.*, 385 F. Supp. 2d 604 (W.D. Tex. 2005).

claims did not require resolution of disputed federal questions.[20]  Overwhelmingly, other district courts in governmental lawsuits for the deceptive marketing of drugs have rejected drug companies' arguments that federal jurisdiction rested on the FDCA or federal Medicaid laws and granted remand motions.[21]

Despite the States' consistent challenge to this Court's jurisdiction, a challenge amply supported by the cited authorities, the PSC has not addressed the jurisdictional issue in seeking emergency relief.  It is the States' position that this Court is without power to grant the preliminary injunction sought by the PSC.

---

[20] *Texas v. Merck & Co.*, No. 06-232 (W.D. Tex. May 10, 2006), slip opinion at 3-4. (Spiegel Decl., Exh. N.)

[21] Plaintiffs cited numerous such cases in their remand papers.  Since that time, courts have remanded more such cases against pharmaceutical companies.  *See Kentucky v. Purdue Pharma, L.P.*, 2011 U.S. Dist. LEXIS 111068, at *11 (S.D.N.Y. Sept. 26, 2011) (remanding case on stating that "the vast majority of federal district courts that have considered this question – in analogous cases brought by attorneys general against pharmaceutical companies for reimbursement of Medicaid-related expenses – have found that they lacked federal question jurisdiction under *Grable* and have remanded the actions to state court"); *South Carolina v. GlaxoSmithKline, LLC*, 2011 U.S. Dist. LEXIS 80522, at *11 (D.S.C. July 22, 2011) ("GSK's failure to satisfy the first prong of *Grable* warrants remand for lack of subject matter jurisdiction [where plaintiff alleged deceptive marketing of drug Avandia].  GSK also fails to prove that exercising federal question jurisdiction over this case would comport with congressional judgment on balances of state and federal power."); *Hood v. AstraZeneca Pharm., LP*, 744 F. Supp. 2d 590, 601 (N.D. Miss. 2010) ("Defendants proceed under the gestalt notion that, since Medicaid is largely a complex federal program, federal issues must somehow come into play.  However, Plaintiff's claims in this case do not focus on the federal aspects of the Medicaid scheme. Rather, Defendants' liability will depend upon its breach of duties as defined and created by state law."); *New Mexico v. Ortho-McNeil-Janssen Pharm., Inc.*, 2009 U.S. Dist. LEXIS 116524, at *10-11 (D.N.M. Jan. 26, 2009) ("[T]his is not a case that will require construction of any provision of federal Medicaid law or of the FDCA.  Instead, it is a fact-intensive inquiry into the efficacy of Risperdal as well as Defendants' actions in testing and marketing….").

C.    **The PSC has not met its burden as to any of the four requirements for the issuance of a preliminary injunction.**

An order requiring payment of money into an escrow account must satisfy the dictates of Fed. R. Civ. P. 65. Courts consistently apply Rule 65 in assessing motions to place funds into escrow accounts or to otherwise freeze assets.[22]

The PSC has the burden of establishing a right to injunctive relief. "Injunctive relief is 'an extraordinary and drastic remedy,' and should only be granted when the movant has clearly carried the burden of persuasion." *Anderson v. Jackson*, 556 F.3d 351, 360 (5th Cir. 2009); *In re Vioxx Prods. Liab. Litig.*, 2008 U.S. Dist. LEXIS 60269, at *70 (E.D. La. Aug. 7, 2008) (denying motion for preliminary injunction because "Plaintiffs have failed to carry their burden of persuasion as to any of the requirements for a preliminary injunction").

> A district court should issue a preliminary injunction only if the plaintiff establishes "(1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest."

*Palmer v. Waxahachie Indep. Sch. Dist.*, 579 F.3d 502, 506 (5th Cir. 2009) (citation omitted).

The PSC's failure even to address the requirements of Rule 65 necessitates denial of the Emergency Motion. No further inquiry is necessary and the Emergency Motion must be denied.

Moreover, had the PSC addressed the requirements of Rule 65, the Emergency Motion would still have to be denied. And in any event, given the factual dispute that would have arisen concerning whether the PSC conferred any benefit whatsoever on the States, no preliminary

---

[22] *See*, *e.g.*, *Janvey v. Alguire*, 647 F.3d 585, 600 n.9 (5th Cir. 2011) (motion to freeze assets must satisfy "the usual elements necessary to obtain a preliminary injunction"); *In re Vioxx Prods. Liab. Litig.*, 2008 U.S. Dist. LEXIS 60269, at *27 (E.D. La. Aug. 7, 2008) (denying motion for preliminary injunction, which sought in part to prevent the "distribution of interim payments" to claimants).

injunction could have issued without an evidentiary hearing.  *See PCI Transp. Inc. v. Fort Worth & W. R.R. Co.*, 418 F.3d 535, 546 (5th Cir. 2005) (notice requirement of Rule 65(a)(1) means that "where factual disputes are presented, the parties must be given a fair opportunity and a meaningful hearing to present their differing versions of those facts before a preliminary injunction may be granted.") (citation and internal quotation marks omitted).  At present, however, the PSC has not even placed facts before the Court that could form the basis for a hearing.

1.      **The PSC has not demonstrated a substantial likelihood that it will prevail on the merits of its request for fees.**

The PSC has not even tried to establish the first of the Rule 65 requirements – a substantial likelihood that it will prevail on the merits of its underlying motion to require States to pay a fee to the PSC out of their recoveries from the USAO/NAMFCU settlements accompanying the federal plea agreement.  As stated in Florida's letter dated March 18, 2011, and repeatedly raised by the States, there are substantial barriers to any such result, yet the PSC has not addressed them.  The PSC cannot salvage its Emergency Motion by raising these numerous issues for the first time on reply.  The PSC has no likelihood of success for at least the following reasons.

*First*, as explained above, there is no subject matter jurisdiction and, as a result, there is no authority to impose preliminary injunctive relief.

*Second*, ordering payment out of the State's settlements funds to private counsel would violate state sovereignty.  The PSC's claim here is like that advanced by a third-party plaintiff against the State of New Jersey in *Rudolph v. Adamar of N.J., Inc.*, 153 F. Supp. 2d 528 (D.N.J. 2001), where the court held that a claim for indemnification for attorneys' fees under federal common law was "in actuality a claim for damages against the State Defendants" that was barred by the Eleventh Amendment.  *Id.* at 537-539.  The PSC's claim is similarly barred.

Also on point is *Barton v. Summers*, 293 F.3d 944 (6th Cir. 2002), a case very similar to this one.  In *Barton*, Medicaid recipients sued Kentucky and Tennessee to intercept tobacco settlement money that had been placed in escrow pending finalization of the agreement.  The *Barton* plaintiffs argued that they came within an exception to the Eleventh Amendment's protection of sovereign immunity for injunctions ordering prospective relief against state officials.  The court disagreed, holding that "an attempt to force the allocation of state funds implicates core sovereign interests," *id.* at 951, and that the states were immune.  This was so, the court held, even though the funds in question were to be paid in future installments, and were not yet in the states' possession, because "the States here have a present and settled interest in payments that happen to be made in installments."  *Id.* at 950.  In fact, the court concluded that because core sovereign interests were implicated, even if it had deemed the payments in question to be prospective, relief would have been barred by sovereign immunity.  *Id.* at 951.  Numerous other courts dismissed identical claims concerning the tobacco settlement.  *See citations at id.* 947-48.  Similarly here, the injunction sought by the PSC would constitute an impoundment of state funds that would violate the States' sovereignty.[23]

Sovereign immunity is jurisdictional and must be addressed at the outset.  *See BellSouth Telecomms. v. North Carolina Utils. Comm'n*, 240 F.3d 270, 276-77 (4th Cir. 2001) (trial court's "refusal to address the Eleventh Amendment issue at the outset . . . interfered with [the state's] sovereignty as protected by the Constitutional structure").  Moreover, any "waiver of sovereign immunity 'will be strictly construed, in terms of its scope, in favor of the sovereign.'"  *Sossamon v. Texas*, 131 S. Ct. 1651, 1658 (2011) (citation omitted).  The States have not waived their

---

[23] Nor can it be argued that by bringing suit against Merck the States have waived their immunity as against the PSC.  The States have not voluntarily availed themselves of the jurisdiction of this Court, and even had they done so, they would not have waived their immunity vis-à-vis the PSC.

immunity and have not agreed to pay the PSC or give up any proceeds from the

USAO/NAMFCU settlements.

Third, the PSC has not shown, and cannot show, that proceeds from a USAO/NAMFCU

resolution constitute a "common fund" under the control of this Court and within its jurisdiction

such that this Court could award part of such monies to the PSC.  The factual situation here is

essentially identical to the one in *United States ex rel. Bogart v. King Pharm.*, 493 F.3d 323 (3d

Cir. 2007).  There, plaintiff had successfully brought *qui tam* Medicaid claims on behalf of the

United States and ten states that had *qui tam* statutes, and had received the corresponding fees

and relator shares of nearly $10 million.  By means of negotiations with NAMFCU, the

defendant had entered into settlement agreements with nearly forty other states that did not have

*qui tam* statutes and thus lacked a statutory basis for rewarding a whistleblower.  Bogart argued

that he was entitled to fees from those other states under a common fund theory.  The Court

disagreed.

Holding that there was no common fund over which the district court could exercise

jurisdiction, the Third Circuit affirmed the order denying Bogart's claim for fees:

> In this matter, there was no pool of money generated to which the
> non-qui tam States had a claim.  Instead, each non-qui tam State
> separately negotiated a settlement agreement with King. . . . As the
> District Court observed, "[t]he mere fact that a large number of
> parties has reached such settlements does not mean that the sum of
> the settlement amounts somehow constitutes a common fund in the
> manner of a class action award."

*Id.* at 329-30 (citation omitted); *see also United States ex rel. Merena v. SmithKline Beecham

Corp.*, 52 F. Supp. 2d 420, 440 (E.D. Pa. 1998) (*rev'd, but not in relevant part,* 205 F.3d 97 (3d

Cir. 2000)) (*qui tam* relators not entitled to shares from settlements of states without false claims

acts because those settlements were separate).  As in *Bogart* and *Merena*, so too here individual

settlement amounts negotiated by NAMFCU do not create a common fund.

In *Bogart*, the Third Circuit also rejected the plaintiff's argument that the district court's jurisdiction over the defendant in some cases empowered it to order that states over which it lacked jurisdiction pay fees to the plaintiff:

> Bogart [contends] that the District Court's jurisdiction over King allowed it to award common fund relief, even though the *non-qui tam* States were not participants in this litigation, because King was the party responsible for making payments to the *non-qui tam* States.  Bogart, however, has not cited any authority that holds that jurisdiction over the defendant, alone, is sufficient to confer authority to grant common fund relief.  Consequently, because the District Court did not have jurisdiction over the fund or the non-qui tam States, it lacked the authority to award common fund relief from the *non-qui tam* States' settlement proceeds.

493 F.3d at 329; *see also Knight v. United States*, 982 F.2d 1573, 1581 (Fed. Cir. 1993) (rejecting attorneys' argument that "the court's jurisdiction over the government gave it power to charge [the] 'fund' [in the government's possession] with its attorney fees without the non-client employees being brought into the case"); *In re Showa Denko K.K.*, 953 F.2d 162 (4th Cir. 1992) (reversing district court's order that non-litigating parties and parties litigating in state courts contribute to an MDL common fee fund to reimburse PSC for discovery costs as beyond court's power).

*Fourth*, the PSC has not adduced any evidence that it caused the federal plea agreement or the accompanying USAO/NAMFCU civil settlements.  All the evidence is to the contrary and is undisputed.  The federal investigation began before there was an MDL or a PSC.  It used the criminal grand jury process, a tool that was unavailable to the PSC or other private litigants, and, in fact, the USAO has now obtained a federal criminal plea from Merck.  Merck had determined how much to reserve for a resolution encompassing the federal and state shares of Medicaid money at issue when it was faced with only the federal investigation, and before any states acting through the NAMFCU team became involved.  Representatives of the USAO and the NAMFCU

team represent that the PSC was not involved in the investigation and negotiations that led to the result announced on November 22, 2011.  Even though the course of the USAO resolution was set by the time Merck announced its reserves, and that course resulted from the actions in the federal investigation, the PSC does not seek any fees from the federal share of the Medicaid moneys at issue, nor could it.  Subsequent efforts by the PSC (and the participants in this MDL) were unable to augment the settlements following from that federal investigation and plea, and thus did not result in any benefit.  If the federal share of the Medicaid money is not subject to a claim for fees, then there is no reason why the state shares of such money should be, when they resulted from the same process.

The only facts the PSC has submitted (in its June 2, 2011 affidavit) are that some of its members have spent time, not on the federal government's investigation or USAO/NAMFCU settlement negotiations, but on the separate governmental actions pending in this MDL. However, regardless of the amount of hours allegedly spent on MDL matters, such work cannot establish that the PSC caused the federal plea agreement and accompanying settlements, and thus cannot establish that it created any benefit for the States.[24]

### 2.    The PSC has not demonstrated that there is a substantial threat it will suffer an irreparable injury.

The PSC has made no attempt to establish that there is a substantial threat it will suffer an irreparable injury if the injunction is not granted.  For purposes of a preliminary injunction, an "'injury is irreparable only if it cannot be undone through monetary remedies.'"  *Paulsson Geophysical Servs. v. Sigmar*, 529 F.3d 303, 312 (5th Cir. 2008) (citation omitted).  Here, the PSC

---

[24] Even if the PSC had been able to point to any evidence that it somehow enhanced the USAO/NAMFCU settlements, such facts would be disputed by the States, and therefore no preliminary injunction could issue without an evidentiary hearing, as previously noted.  *PCI Transp. v. Fort Worth & W. R.R. Co.*, 418 F.3d 535.

has not even tried to meet its burden of showing that it lacks monetary remedies that require granting of the Emergency Motion.  *See Vioxx*, 2008 U.S. Dist. LEXIS 60269, at *59 ("Plaintiffs' potential rights to reimbursement will not be impacted when interim payments are made to claimants and their attorneys.  This determination alone weighs heavily against a finding of irreparable injury.").  Rather, it seeks only a monetary remedy.  Injunctive relief is simply not available.

### 3.    The PSC has not demonstrated that any threatened injury to its interests outweighs the certain harm to the States from the issuance of an injunction.

The PSC has made no effort to establish that a threatened injury to its interests outweighs the certain harm the issuance of an injunction would cause the States.  Particularly at a time when states are being forced to cut their Medicaid programs, taking governmental funds from these programs will have real consequences for the indigent who rely on Medicaid to meet their essential healthcare needs.[25]  The PSC, in contrast, has stated no claim of injury at all and, again, no injunctive relief is available.

### 4.    Granting the preliminary injunction would disserve the public interest.

Finally, the PSC has failed to discuss or establish that granting the preliminary injunction would not disserve the public interest.  In fact, it is clear that taking money away from the States will deprive them of urgently needed funds for their Medicaid programs and thus will quite clearly disserve the public interest.

## IV.    CONCLUSION

The motion is procedurally improper and asks for relief that this Court is without power to award due to the lack of subject matter jurisdiction.  The PSC has failed to carry its burden of

---

[25] The difficult financial situation of state governments in the current economic environment cannot be gainsaid.  For example, on November 14, 2011, the New York Governor announced that the state is facing a $350 million shortfall in the current fiscal year.  (Spiegel Decl., Exh. O.)

establishing any right to withhold money from the settlements negotiated by the USAO and the

NAMFCU team in conjunction with the federal plea agreement.  Therefore, this Court should

deny the Emergency Motion and cancel the November 30 hearing on that motion.


Dated:  November 22, 2011

                    ERIC T. SCHNEIDERMAN
                    Attorney General of the State of New York
                    Attorney for the State of New York

                     /s/ Randall M. Fox
                    RANDALL M. FOX
                    Bureau Chief, Taxpayer Protection Bureau
                    120 Broadway – 25th Floor
                    New York, New York  10271-0007
                    (212) 416-6199

                    MICHAEL A. CARDOZO
                    Corporation Counsel of the City of New York
                    Attorney for the City of New York

                     /s/ John R. Low-Beer
                    JOHN R. LOW-BEER
                    New York City Senior Assistant Corporation
                    Counsel
                    100 Church Street
                    New York, New York  10007
                    (212) 788-1007

                     /s/ Steve W. Berman
                    STEVE W. BERMAN
                    CRAIG R. SPIEGEL
                    Hagens Berman Sobol Shapiro LLP
                    1918 Eighth Ave., Suite 3300
                    Seattle, WA  98101
                    (206) 623-7292
                    Attorneys for New York and the City of New York

**STATE OF SOUTH CAROLINA**
**OFFICE OF THE ATTORNEY GENERAL**

Alan M. Wilson
Attorney General
JOHN W. McINTOSH
Chief Deputy Attorney General
C. HAVIRD JONES, JR.
Senior Assistant Attorney General
Post Office Box 11549
Columbia, South Carolina 29211
(803) 734-3970
(803) 734-3677 Fax
**SCHULTZ LAW LLC**

 /s/ Mark C. Schultz
MARK C. SCHULTZ
161 Washington Street, Suite 400
Conshohocken, PA. 19428
(610) 828-0700
Attorneys for South Carolina

**COVINGTON, PATRICK, HAGINS,**
**STERN & LEWIS, P.A.**

 /s/ Eugene C. Covington, Jr.
EUGENE C. COVINGTON, JR.
State Bar No. 1422
Post Office Box 2343
Greenville, South Carolina 29602
(864) 240-5502
(864) 240-5533 Fax
Attorneys for South Carolina

**ROE, CASSIDY, COATES & PRICE, P.A.**

 /s/ William A. Coates
WILLIAM A. COATES
State Bar No. 1289
Post Office Box 10529
Greenville, South Carolina 29603
(864) 349-2600
(864) 349-0303 Fax
Attorneys for South Carolina

**STATE OF FLORIDA**
**PAMELA JO BONDI**
**ATTORNEY GENERAL FOR FLORIDA**

 /s/ James D. Young
JAMES D. YOUNG
Special Counsel
Florida Bar No. 567507
Office of the Attorney General
1300 Riverplace Blvd., Suite 405
Jacksonville, Florida  32207
(904) 348-2720

010214-11  487070 V1

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing document has been served on Liaison Counsel, Phillip Wittmann, and Ann B. Oldfather, by U.S. Mail and e-mail or by hand delivery and email, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL No. 1657, on this 22nd day of November, 2011.

/s/ Steve W. Berman
STEVE W. BERMAN
CRAIG R. SPIEGEL
Hagens Berman Sobol Shapiro LLP
1918 Eighth Ave., Suite 3300
Seattle, WA  98101
(206) 623-7292