# Exhibit B

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: VIOXX<br>　　　　Products Liability Litigation<br><br>This Document Relates to:<br><br>*All Government Actions* | MDL NO. 1657<br><br>SECTION L<br><br>JUDGE ELDON E. FALLON<br><br>MAGISTRATE JUDGE KNOWLES |

**DECLARATION OF ROBERT PATTON**

## DECLARATION OF ROBERT PATTEN

I, Robert Patten, declare:

1. I am an Assistant Attorney General in the Medicaid Fraud Control Unit within the Office of the Massachusetts Attorney General. I am also the co-chair of the Global Case Committee of the National Association of Medicaid Fraud Control Units ("NAMFCU"). I submit this declaration based on my personal knowledge and in connection with New York, Florida and South Carolina's opposition to the motion entitled *Plaintiffs' Steering Committee's Emergency Motion for Order Establishing Escrow Fund for Common Benefit Fees.*

2. NAMFCU is a voluntary association that was founded in 1978 and whose members provide a forum for a nationwide sharing of information concerning the problems of Medicaid fraud, to improve the quality of Medicaid prosecutions by conducting training programs, to provide technical assistance to Association members and to provide the public with information about the Medicaid Fraud Control Unit ("MFCU") program. There are MFCUs in 49 states and the District of Columbia. All 50 MFCUs are members of NAMFCU.

3. The state MCFUs have a long history of working with one another and with federal enforcement authorities, and particularly the United States Department of Justice and United States Attorneys' Offices, to pursue recoveries of Medicaid funds based upon claims of fraud, beginning with the first "global" settlement in 1992 and continuing with many other settlements up to the present date.

4. In the long history of Medicaid fraud settlements jointly achieved by the federal Department of Justice and negotiating teams made up of members from NAMFCU states, settlements have typically consisted of agreements under which the federal government and state governments recover funds in direct proportion to the amounts they contributed to funding the

Medicaid program. For example, where a state's Medicaid program is funded 80% by the federal government, a settlement structure typically will direct 80% of the Medicaid recovery for that state to the federal government and 20% to the state government. Among the states, such Medicaid recoveries are typically allocated based upon each state's proportional Medicaid utilization of the drug or other product or service at issue.

5. The state negotiating teams do not have the authority to bind the states. Each state makes an independent decision about entering into settlements negotiated by state teams. When a state agrees to enter into a settlement that was negotiated by a state negotiating team, that state will enter into a separate, state-specific agreement with the defendant. Each state has discretion to decline to participate on the terms presented and to negotiate different terms.

6. I am a member of the state negotiating team that has been participating in negotiating potential settlements between Merck, Sharp, & Dohme, on one hand, and the federal government and the various states concerning the marketing of Vioxx. Neither NAMFCU, nor the state negotiating team, nor any state represented on the state negotiating team is a party to any litigation concerning Vioxx. I have, through a courtesy extended by the Court, been included in conference calls with the Court in this MDL proceeding, but neither my state, nor NAMFCU, nor any other state represented on the state negotiating team is a party to a proceeding before the Court.

7. The state negotiating team was formed in March of 2009 at the request of the United States Attorney's Office for the District of Massachusetts and became actively involved in the settlement process after Merck announced in October 2010 that it was reserving $950 million to resolve a federal investigation into Merck's sales and marketing of Vioxx. The state negotiating team has worked with the United States Attorney's Office in Boston to negotiate the

proposed settlements between Merck and the states. To my knowledge, no settlement agreement with any state has been executed by Merck as of the present time.

8.  I have been asked whether the state negotiating team has worked with the Plaintiffs' Steering Committee ("PSC") in this MDL litigation in the negotiation of potential settlements with Merck concerning Vioxx. The answer is that it has not. The negotiations have involved only representatives of Merck, the federal government and the members of the state negotiating team.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on November 22, 2011.

_____
Robert Patten