# Exhibit I

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
### TALLAHASSEE DIVISION

STATE OF FLORIDA
by BILL McCOLLUM,
Attorney General of the State of Florida

       Plaintiff,

   v.

MERCK & CO., INC.,

       Defendant.

Case No. 4:08-CV-00459-RH-WCS

## MOTION TO REMAND AND INCORPORATED MEMORANDUM OF LAW

Plaintiff, STATE OF FLORIDA, DEPARTMENT OF LEGAL AFFAIRS, OFFICE OF THE ATTORNEY GENERAL, BILL McCOLLUM, respectfully submits this Motion to Remand and Incorporated Memorandum of Law and further states as follows:

1.     This lawsuit was originally filed by Plaintiff in the Second Judicial Circuit Court in and for Leon County, Florida (Case number 08-CA 3204) seeking damages, penalties, and attorney's fees from Defendant Merck & Company, Inc. for violations of Florida's Deceptive and Unfair Trade Practices Act, Chapter 501 Part II, Florida Statutes.

2.     Defendant removed the lawsuit to the United States District Court for the Northern District of Florida by filing a Notice of Removal on October 17, 2008.

3.      Subsequent to removal, the Defendant filed a motion to stay proceedings pending a transfer decision by the Judicial Panel on Multidistrict Litigation.

4.      Defendant has asserted that this case presents a federal question and is therefore subject to federal jurisdiction pursuant to 28 U.S.C. 1441.

5.      Plaintiff moves that this action be remanded to State court because, as more fully explained below, there is no federal question presented by this lawsuit.

6.      Plaintiff's allegations in the lawsuit arise from the Defendant's misrepresentations of the risks and other actions associated with the drug Vioxx, which violate Florida's Deceptive and Unfair Trade Practices Act, Chapter 501 Part II, Florida Statutes (hereinafter referred to as FDUTPA)

7.      There are no allegations of violations of federal law or regulations nor is any claim being asserted under any provision of federal Medicaid law or the federal Food, Drug and Cosmetic Act.  Rather the Plaintiff's complaint is based exclusively on Florida statutes.

8.      Pursuant to Local Rule 7.1(B), the undersigned conferred with opposing counsel in a good faith effort to resolve by agreement the issues raised herein.  The opposing party is in opposition.

        THEREFORE, Plaintiff requests that this Honorable Court remand this case back to its proper location, the Second Judicial Circuit Court in and for Leon County, Florida.

## MEMORANDUM OF LAW

### I.      INTRODUCTION

The State of Florida filed a complaint against Defendant Merck and Co., Inc. on September 29, 2008. The complaint contains a single count which alleges a violation of Florida law, specifically Florida's Deceptive and Unfair Trade Practices Act, Chapter 501 Part II, Florida Statutes (hereinafter referred to as FDUTPA). The complaint does not allege or implicate any federal law. Defendants filed a timely Notice of Removal (NOR) to the United States District Court for the Northern District of Florida pursuant to 28 U.S.C. §§1331, 1441, and 1446. Defendants also filed a Motion to Stay Proceedings pending consideration by the Judicial Panel on Multidistrict Litigation.

### II.     ARGUMENT

The Notice of Removal filed by Defendants relies upon two distinct theories to confer federal question jurisdiction. Defendants first argue that "Florida's claim for relief based on monies spent implicates federal laws and depends on the interpretation and application of federal statutory provisions that govern what can be included in or rejected from state Medicaid formularies." (NOR pg. 4-5.) Defendants also argue that federal question jurisdiction exists because "[p]laintiff's claims are implicitly and explicitly premised on allegations that Merck violated Federal Food and Drug laws." (NOR pg 9.) As more fully detailed below, Defendant's theories fail to confer federal question jurisdiction and this matter is appropriate for remand to state court.

A.      **Standard for Removal**

   The United States Supreme Court has consistently held that the district courts of the
United States are "courts of limited jurisdiction. They possess only that power authorized
by Constitution and statute." *Exxon Mobil Corp. v. Allapattah Serv's,* 545 U.S. 546, 552
(2005); quoting *Kokkonen v. Guardian Life Ins. Co. of America,* 511 U.S. 375, 377
(1994).  On motion for remand, the removing party bears the burden of demonstrating
federal subject matter jurisdiction. *McNutt v. General Motors Acceptance Corp. of
Indiana,* 298 U.S. 178, 189, 56 S. Ct. 780, 80 L. Ed. 1135 (1936).  A party who removes
a case to federal court pursuant to 28 U.S.C. § 1441 must prove that the federal district
court possesses "original jurisdiction," which exists when the plaintiff's claims arise
under the Constitution, laws, or treaties of the United States pursuant to 28 U.S.C. §
1331.  Removal jurisdiction is construed narrowly with all doubts resolved in favor of
remand. See *Pacheco de Perez v. AT&T Co.,* 139 F.3d 1368, 1373 (11th Cir.1998) and
*Moll v. Allstate Floridian Ins. Co.,* 2005 U.S. Dist. LEXIS 24609 (N.D. Fla. Aug. 16,
2005)

   Under the general federal removal statute, *28 U.S.C. § 1441 (a)*, unless otherwise
provided by Congress, a defendant may only remove a "civil action brought in a State
court of which the district courts of the United States have original jurisdiction." Absent
diversity jurisdiction[1], a civil action filed in state court may only be removed if the claim
"arises under" federal law. *Sullivan v. American Airlines, Inc.,* 424 F.3d 267, 276 (2d Cir.

---

[1] The State of Florida is not considered a citizen for purposes of diversity jurisdiction. *Moor v. County of
Alameda*, 411 U.S. 693 (U.S. 1973).

2005).  The statutory requirement that there be original jurisdiction means that a question of federal law "must be disclosed upon the face of the complaint, unaided by the answer or by the petition for removal." *Gully v. First National Bank,* 299 U.S. 109, 113 (1936). Whether the claim arises under federal law must be determined by applying this "well-pleaded complaint" rule. *Caterpillar Inc. v. Williams,* 482 U.S. 386, 392 (1987). The well-pleaded complaint rule "makes the plaintiff the master of the claim, he or she may avoid federal jurisdiction by exclusive reliance on state law." *Id.* Unless a federal question is presented on the face of the complaint, the case does not arise under federal law. *Kemp v. International Business Machines Corp.,* 109 F.3d 708, 712 (11th Cir. 1997).

**B.**     <u>**The Complaint Does Not Implicate a Substantial, Contested Federal Issue.**</u>

Defendant's Notice of Removal relies upon the rare form of "arising under" jurisdiction which was addressed by the United States Supreme Court in  *Grable and Sons Metal Prods., Inc. v. Dante Eng'g & Mfg.,* 545 U.S. 308 (2005). The Supreme Court found that federal question jurisdiction is created if the complaint raises a stated federal issue, which is actually disputed and substantial and which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities.  *Grable* at 314.  However, Defendants' removal is improper under the exception recognized by *Grable* as Florida's state law claims simply do not involve a contested federal issue.

In order for a federal question to be significant or substantial, the federal issue "must be actually disputed, and essential to the adjudication of the plaintiff's claim." *State of*

*Utah v. Eli Lilly & Co,* 2007 U.S. Dist. LEXIS 65571 (D. Utah 2007); quoting *Commonwealth of Pennsylvania v. Eli Lilly & Co. Inc.,* 2007 U.S. Dist. LEXIS 46946 (E.D. Pa. 2007) (citing *Grable,* 545 U.S. at 313*)*. Under the substantial federal question doctrine, a state law cause of action actually arises under federal law, even though Congress has not provided a federal private right of action, "where the vindication of a right under state law necessarily turn[s] on some construction of federal law." *Franchise Tax Board v. Constr. Laborers Vacation Trust for S. Calif.,* 463 U.S. 1, 9 (1983). However, the mere incorporation of a federal standard in a state law action does not implicate the substantial federal question doctrine. *Merrell Dow Pharm., Inc. v. Thompson,* 478 U.S. 804 (1986)*; Merrell Dow* involved allegations both that inadequate warnings on a drug's label and promotion of that drug were in violation of the Federal Food, Drug & Cosmetic Act. *Id.* at 806. The FDCA does not create a private right of action for violation of the misbranding provision. The Court found that the mere presence of a federal standard embedded in a state law cause of action is not enough to warrant federal question jurisdiction. *Id.* at 810-12*.* The Court noted the "significance of the necessary assumption that there is no federal private cause of action... cannot be overstated. *Id.* at 812. Further, the Court concluded that "we simply conclude that the congressional determination that there should be no federal remedy for the violation of this federal statute is tantamount to a congressional conclusion that the presence of a claimed violation of the statute as an element of a state cause of action is insufficiently 'substantial' to confer federal question jurisdiction." *Id.* at 814.

The *Merrell Dow* opinion was further clarified by the Court in *Grable*. The Court held that federal jurisdiction will lie over state law claims that "implicate significant federal issues." *Grable*, 545 U.S. 312. In order to justify this type of jurisdiction there must be a real and substantial dispute respecting the validity, construction or effect of federal law "indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum." *Id.* at 313. The necessity of adjudicating a contested issue of federal law was a critical factor in the Supreme Court's determination that "arising under" jurisdiction was present in *Grable*. *Id.*

*Grable* does not overrule *Merrell Dow*. *Merrell Dow* found that it would undermine congressional intent to find federal jurisdiction "solely because the violation [of federal law] is said to be a proximate cause under state law." *Id. at 316.* In *Grable*, the Court found federal jurisdiction was appropriate, but only because the *sole* question concerned the meaning of the federal tax statute. (emphasis added) The United States District Court for the Southern District in Florida recently considered similar arguments in a shareholder derivative suit which balanced *Grable* and *Merrell Dow*. *Ekas v. Burris*, 2007 U.S. Dist. LEXIS 84340 (S.D. Fla. Nov. 13, 2007). The Court in *Ekas* held that:

> "In discussing Merrell Dow, the *Grable* court stated that Merrell Dow 'assumed that federal law would have to be applied to resolve the claim, but after closely examining the strength of the federal interest at stake and the implications of opening the federal forum, held federal jurisdiction unavailable.' Id. at 316. The *Grable* discussion of Merrell Dow does not alter this Court's finding that federal law would not have be resolved to address Plaintiffs' claims. Since that threshold is not met under *Grable*, there is no reason to weigh "the strength of the federal interest at stake and the implications of opening the federal forum." *Id*.

This case is clearly distinguishable from *Grable* and more in line with *Merrell Dow* and *Ekas,* in which only state law claims are presented in the Complaint. Liability may proceed on entirely non-federal grounds. The Attorney General of Florida, acting as the enforcing authority under State consumer protection laws has sued the Defendants for their deceptive and unfair conduct. Liability under the state law claims presented here does not depend on the violation of any federal standard or statute therefore no federal law or issue is in dispute.

According to the complaint, in order to prevail in this matter the State must show "Defendant Merck has engaged in representations and omissions which are material, and which have the tendency or capacity, or which are likely, to mislead consumers acting reasonably under the circumstances. Defendant Merck has engaged in unfair competition and acts and practices which are unconscionable, unfair or deceptive and has committed acts or practices in trade or commerce which offend established public policy and are unethical, oppressive, unscrupulous or substantially injurious to consumers. The aforesaid acts and practices of Merck were and are to the injury and prejudice of the public." (Compl. ¶¶42-44).

*Grable* has been considered by this court in *Callahan v. Countrywide Home Loans, Inc*., 2006 U.S. Dist. LEXIS 42860, 5-9 (N.D. Fla. June 26, 2006), *McCarty v. Precision Airmotive Corp.,* 2006 U.S. Dist. LEXIS 65770, 4-5 (M.D. Fla. Sept. 14, 2006) and *State ex rel. Dep't of Fin. Servs. of Fla. v. Universal Health Care Ins. Co.,* 2007 U.S. Dist. LEXIS 89827, 7-12 (N.D. Fla. Dec. 5, 2007).

In Callahan**,** the Court opined that allowing federal question jurisdiction over all state law negligence claims that incorporate a federal duty could potentially flood the federal docket with cases based on a violation of a federal statute, even where Congress has decided that there should be no private right of action under the statute. *Id.* The Middle District of Florida also considered *Grable* in *McCarty, a* wrongful death suit associated with an airplane crash. Defendants attempted to support removal by reference to the Federal Aviation Act and FAA regulations. In an analogous consideration of a federal regulatory framework, the Court found:

> "[t]he "arising under" jurisdiction addressed in *Grable* has been recognized for those very limited situations in which federal issues are "substantial . . ., indicating a serious federal interest in claiming advantages thought to be inherent in a federal forum." *Grable* at 2367. The Supreme Court cautions, however, that "the possibility of upsetting the state-federal line drawn (or at least assumed) by Congress" warrants "an assessment of any disruptive portent in exercising federal jurisdiction." *Grable* at 2368. To that end, the Supreme Court articulates the test as whether "a state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable* at 2368. Plaintiff argues that this case should be remanded because the scenario does not fit within the limited exception espoused in *Grable*, citing other federal district court opinions that have held that state tort law claims in aviation accident cases do not fall within the dictates of *Grable*. These cases, although not binding in the Eleventh Circuit, lend support to Plaintiff's position that cases involving state law tort claims arising from airplane accidents do not contain "substantial" or "significant" federal issues triggering resort to exercising subject matter jurisdiction under the auspices of federal question. The courts in these cited cases recognize that the Federal Aviation Act, along with the regulations of the FAA, set the guidelines and standards for aviation safety. The fact that FAA rules and regulations may be relevant to defining the duty of care in a negligence case or the standard in a products liability case, however, does not elevate a typical state-law tort claim to one requiring resolution in a federal forum. In any event, neither side has cited a case in the Eleventh Circuit on point,

9

and independent research has not revealed any." *McCarty v. Precision Airmotive Corp.,* 2006 U.S. Dist. LEXIS 65770, 4-5 (M.D. Fla. Sept. 14, 2006)

**C.**    **Removal is Inappropriate in State Payor Cases**

Attempts by Merck and other pharmaceutical companies to remove State payor actions to federal court is neither novel nor without mixed results. Defendant's focus in their argument in favor or removal is the "implication of Medicaid laws." The Plaintiff's complaint clearly states that Medicaid is but one, admittedly large, part of the total universe of State payor victims. In addition to Medicaid payments, there are other agencies and subdivisions of the State of Florida which have expended money or been otherwise damaged or affected by the violative activity of Defendants. Merck presented identical arguments in an attempt to remove a Vioxx action brought by the State of Texas, to no avail. *Texas v. Merck & Co.,* 385 F. Supp. 2d 604 (W.D. Tex. 2005). The Western District of Texas found that:

> "Merck has not carried its burden of proving the existence of federal-question jurisdiction. A determination that a cause of action presents a federal question depends upon the allegations of the plaintiffs well-pleaded complaint. *Carpenter, 44 F.3d at 366.* Generally, a suit arises under federal law if there appears on the face of the complaint some substantial, disputed question of federal law. *Id.* Here, based on Texas's state-court petition, Texas clearly has asserted against Merck only Texas state-law claims under a Texas statute…they are not focused on or concerned with any regulations promulgated or enforced by the Food and Drug Administration, despite Merck's suggestion in its Notice of Removal. Rather, that state-law provisions, as well as Texas's allegations in its petition, involve Merck's conduct toward and with Texas in requesting and receiving approval from Texas to add VIOXX to Texas's Medicaid program, Further, the "Medicaid program" referred to in these provisions is Texas's Medicaid program, not the federal medicaid program. *See TEX. HUM. RES. CODE § 36.001(6).* The Court concludes that there are no federal questions involved in Texas's lawsuit against Merck." Id. at 607.

In *Pennsylvania v. TAP Pharmaceutical Products, Inc.,* 415 F. Supp. 2d 516 (E.D. Pa. 2005), Pennsylvania's Medicaid recovery action based on alleged fraudulent price setting involved a federal standard, but the implicated term "average wholesale price" was not actually disputed. The Eastern District of Pennsylvania found that a court would not need to ascribe any meaning to the words "average wholesale price"' for the plaintiff to prevail. *Id. at 524-525*. The court in *TAP* declined to exercise federal jurisdiction because the term "was no more than a federal standard," and thus did not present a disputed issue of federal law. *Id*. at 525.

The result was identical in another Pennsylvania case where the complaint brought by the Attorney General of Pennsylvania against Eli Lilly asserted claims under Pennsylvania statutory and common law including; recovery by the Commonwealth as *parens patriae* of treatment costs for Medicaid participants injured by Eli Lilly's drug Zyprexa due to a failure to warn. *Commonwealth of Pennsylvania v. Eli Lilly & Co. Inc.,* 2007 U.S. Dist. LEXIS 46946. The court concluded that the complaint "does not raise a sufficiently substantial and disputed issue of federal law and... the exercise of federal jurisdiction would upset the 'congressionally approved balance of federal and state judicial responsibilities.'" *Id.* at 9. The court reasoned that "the central disputes in the case are factual... and the allegations presented do not turn on the interpretation of federal law." *Id* at 15. The fact that Medicaid "serves as the initial source of funds the Commonwealth seeks to recover does not, without more, confer federal jurisdiction." *Id.* at 23. The court concluded that "the federal court would be engaged in the interpretation and application of state law, a task better left to state courts, particularly when there is no

indication that Congress intended to confer federal court jurisdiction." *Id.* at 29. Thus, the court declined to squeeze the case into the 'special and small category' of cases that *Grable* exemplifies. *Id.* at 29.

The decision in *Commonwealth of Pennsylvania v. Eli Lilly,* was followed by the District of South Carolina in granting the State's motion to remand for claims asserting violations of the state Medicaid program and South Carolina's Unfair Trade Practices Act. *State of South Carolina v. Eli Lilly & Company,* 2007 U.S. Dist. LEXIS 56847 at 2 (D.S.C. 2007). The court found that "Lilly's liability will solely depend upon its breach of duties as defined and created by state law" and thus no federal question exists to support a finding of jurisdiction. *Id.* at 5. The "incidental federal issues that may arise in this case do not rise to the level of substantiality required for a finding of federal jurisdiction." *Id.* at 7. In addition, the court concluded that "the fact that Congress provided no private right of action in the Federal Medicaid Act presents compelling evidence that a finding of federal jurisdiction in the instant case would not be consistent with congressional judgment about the sound division of labor between state and federal courts." *Id.* at 8. While the absence of a federal cause of action is not dispositive under *Grable*, it is an "important clue." *Grable* at 318.

The District Court of Utah relied on similar reasoning in *Utah v. Eli Lilly & Co., 509 F. Supp. 2d 1016, 1021 (D. Utah 2007).* The Court found that:

> "the Plaintiff's Complaint did not raise significant federal issues or turn on substantial questions of federal law and to the extent a federal issue exists, it is not essential to the adjudication of the plaintiff's claims, particularly those focused upon by Defendant.

Second, and relevant to all of the claims which Defendant addresses, the mere presence of a federal standard embedded in a state law cause of action is not sufficient to warrant federal subject matter jurisdiction where there is no federal remedy for a violation of the federal statute. The law set forth by the Merrell Dow case in this respect was specifically affirmed by the Supreme Court in the *Grable* case. Id. (citing *Grable*, 545 U.S. at 318 ("Merrell Dow should be read in its entirety as treating the absence of a federal private right of action as evidence relevant to, but not dispositive of, the "sensitive judgments about congressional intent" that § 1331 requires. . . . The Court saw the missing cause of action not as a missing federal door key, always required, but as a missing welcome mat, required in the circumstances, when exercising federal jurisdiction over a state misbranding action would have attracted a horde of original filings and removal cases raising other state claims with embedded federal issues. For if the federal labeling standard without a federal cause of action could get a state claim into federal court, so could any other federal standard without a federal cause of action.")).

Third, the Court finds that congressional intent as to the relevant statutes is important here, and indicates that an exercise of federal jurisdiction would not be proper in this action. 35 The *Grable* case clarified that the absence of a federal remedy was relevant evidence as to, but not dispositive of, judgments of congressional intent relevant to ascertaining jurisdiction, especially where a the state law cause of action was unlikely to find its way to the federal courts in the future, and where there was precedent for the exercise of federal jurisdiction over the specific claim. 36 The *Empire* case, declining to extend *Grable*, reaffirmed the importance of a federal court's responsibility to look for some indication that Congress intended the exercise of federal jurisdiction over claims "ordinarily resolved in state courts," and specifically noted that the category established by *Grable* was "slim."

As the Supreme Court emphasized in Empire, "[f]ederal courts should await a clear signal from Congress before treating such auxiliary claims as 'arising under' the laws of the United States." There is no meaningful indication that Congress intended to confer federal jurisdiction over state law causes of actions implicating the federal statutes involved here, namely, the FDCA and Title XIX of the Social Security Act . . . which is the federal legislation establishing the Medicaid program. The absence of any signal by Congress is especially important here where Congress has specifically required states to seek reimbursement from legally liable third parties, but has provided no federal cause of action to do so." *Id.*

In *Commonwealth of Massachusetts v. Philip Morris, Inc.,* 942 F. Supp 690, 694 (D. Mass. 1996), the United States District Court for the District of Massachusetts considered the Commonwealth's motion to remand its causes of action seeking to recover Medicaid funds paid on behalf of Massachusetts citizens suffering from diseases caused by smoking. *Id.* The state law based causes of action were asserted against the backdrop of Title XIX of the Social Security Act, *42 U.S.C. § 1396*, et seq. *Id.* Title XIX is the federal legislation establishing the Medicaid program. Under Title XIX, the federal government "shares the costs of Medicaid with the States that elect to participate in the program." *Id.* In return, participating States are to comply with requirements imposed by the Act and by the Secretary of Health and Human Services." *Atkins v. Rivera,* 477 U.S. 154, 156-57 (1986). The District Court of Massachusetts rejected defendants' assertion of federal jurisdiction and ordered the case to be remanded to state court. According to the court:

> "vindication of the rights that Massachusetts claims under its own statutory and common law will not turn on any construction of federal law. Nor is any proposition of federal law an essential element of any of Massachusetts' claims. Whether the defendants, as 'third parties' are liable to Massachusetts for costs expended under Medicaid... will be judged by reference to Massachusetts law." *Id.* at 694.

In contrast to the case cited by Defendant *In re Zyprexa Products Liability Litigation,* 375 F.Supp.2d 170 (E.D.N.Y 2005), the overwhelming majority of courts discussing the federal role in the administration of Medicaid have held that any federal issues raised by such a role are insufficient to confer federal jurisdiction.[2] Accepting Defendant's

---

[2] *See Texas v. Merck & Co.,* 385 F. Supp. 2d 604 (W.D. Tex. 2005); *State of Utah v. Eli Lilly & Company,* 2007 U.S. Dist. LEXIS 65571 (D. Utah 2007); *State of Carolina v. Eli Lilly & Company,* 2007

argument to its logical conclusion, any state law claim which remotely relates to any federal program, law or rule would also give rise to federal question jurisdiction. For example, a retailer who knowingly sells toys or other products containing lead paint could rely upon the lead safety standards set by the Consumer Products Safety Commission to support removal to federal court. An enforcement action under the Florida Consumer Collections Practices Act, a state consumer protection law which is based upon the Federal Debt Collection Practices Act would similarly warrant removal based upon an implication of or relation to similar Federal laws.

This Court should grant the State's motion to remand as any federal interest implicated by the Complaint is not sufficiently substantial to confer federal jurisdiction. Defendants have failed to satisfy the first prong established by *Grable.* The Complaint neither contains nor implicates any disputed issue of federal law. Complete adjudication of the claims in the Complaint will not require a construction or application of federal law. With no contested federal issue and no basis for jurisdiction under § 1331, this Court should grant the State of Florida's motion to remand.

### D.  Application of Federal Law Is Not Necessary To Resolve Plaintiff's Claims

---

U.S. Dist. LEXIS 56847 (D.S.C. 2007); *Commonwealth of Pennsylvania v. Eli Lilly & Co. Inc.,* 2007 U.S. Dist. LEXIS 46946 (E.D. Pa. 2007); *Alaska v. Eli Lilly & Co.,* 2006 U.S. Dist. LEXIS 52783 (D. Alaska 2006); *Maryland v. Philip Morris,* 934 F. Supp. 173 (D.Md. 1996); *Commonwealth of Massachusetts v. Philip Morris,* 942 F. Supp. 690 (D.Mass. 1996); *Minnesota v. Pharmacia Corp.,* 2005 U.S. Dist. LEXIS 27638 (D. Minn 2005); *Missouri v. Mylan Laboratories, Inc.,* 2006 U.S. Dist. LEXIS 32570 (E.D. Mo. 2006); *Hawaii v. Abbott Laboratories, Inc.,* 469 F. Supp. 2d 842 (D. Haw. 2006); *New York v. Lutheran Center for the Aging, Inc.,* 957 F. Supp. 393 (E.D.N.Y. 1997); *Wisconsin v. Abbott Laboratories,* 390 F.Supp.2d 815 (W.D. Wisc. 2005); *City of New York v. The Tobacco Institute, Inc.,* 1997 U.S. Dist. LEXIS 19415 (S.D.N.Y. 1997).

Under *Grable,* "federal jurisdiction demands not only a contested federal issue, but a substantial one, indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum." *Grable,* 545 U.S. at 313. "Even when the state action discloses a contested federal question, the exercise of federal jurisdiction is subject to a possible veto. For the federal issue will ultimately qualify for a federal forum only if federal jurisdiction is consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331. *Id.* at 313.

In *Empire Healthchoice Assur. Inc., v. McVeigh,* 547 U.S. 677 (U.S. 2006), the Court described the jurisdiction under *Grable* as a "slim category." The *Empire* case involved a suit by an insurer of federal employees to recover costs of treating plan members where the members received compensation in a legal settlement. The health insurer was obligated to seek recovery by an agreement between it and the federal Office of Personnel Management, which was responsible for overseeing federal employee health insurance by the Federal Employees Health Benefits Act of 1959 (FEHBA). The health plan administrators were required to attempt recovery of the federal government's money, however, the FEHBA created no mechanism for plan administrators to recover funds distributed to participants. *Id.* at 683-684. The Court held that the failure of providing a recovery mechanism, along with the lack of an indication that suits to recover costs associated with the Act arose under federal law, was conclusive evidence of Congress' judgment that federal jurisdiction did not lie. *Id.* In affirming the dismissal of the claims for lack of federal subject matter jurisdiction the Court noted that "the critical factor in determining the scope of rights and remedies under the federal statute... is the

congressional intent behind the particular provision at issue." *Id.* at 695. Federal courts have "no warrant to expand Congress' jurisdiction grant by judicial decree." *Id.* at 696.

The analysis in *Empire* is instructive in this Court's assessment of whether Congress intended for a State suing to recover Medicaid payments under consumer protection laws fits within the jurisdictional grant of § 1331. The federal Medicaid statute, like FEHBA, provides no mechanism to achieve recovery or any indication that the claims are federal in nature. If Congress intended that cases between States and third parties to recover Medicaid funds be heard in federal court it could have included such a provision. Congress' silence on this issue is indicative that there was no intent to have suits for recovery of Medicaid funds heard in federal court.

### E.  The Exercise Of Federal Jurisdiction Over This Case Would Upset The Balance Between State And Federal Courts.

When the foregoing analysis is applied to claims brought by sovereign states, it takes on an added dimension. As the Supreme Court has noted, "considerations of comity make us reluctant to snatch cases which a State has brought from the courts of that State, unless some clear rule demands it." *Franchise Tax Board of the State of California v. Construction Laborers Vacation Trust for Southern California et al.,* 463 U.S. 1, note 22 (1983). In this matter, the State of Florida exclusively relies on Florida statutory law in this cause of action. As such, application of the well pleaded complaint rule, and consideration of comity requires that Plaintiff, a sovereign State, be permitted to pursue its claims in State court. The United States Supreme Court has held that there is a greater importance on the impact of exercising federal jurisdiction on federalism when the

17

removed claim is brought by a sovereign State. *See Franchise Tax Board,* 463 U.S. at 22.
In situations where a State pursues claims for the recovery of money paid previously by
the State on behalf of its Medicaid participants, the balance tilts heavily in favor of State
adjudication. *See Missouri v. Mylan Laboratories Inc.,* 2006 WL 1459772 (E.D. Mo.
2006); *Wisconsin v. Abbott Laboratories Inc.,* 390 F.Supp.2d 815 (W.D. Wisc. 2005*);
Minnesota v. Pharmacia Corp.,* 2005 WL 2739297 (D. Minn. 2005).

### F.    <u>Affirmative Defenses Do Not Create Federal Jurisdiction</u>

As a corollary to the well pleaded complaint rule, when a claimed federal law defense
does not appear on the face of a plaintiff's complaint, that defense cannot justify removal
jurisdiction. The mere allegation of a federal defense to a state law claim, even one
relying on the preemptive effect of a federal statute, is insufficient to confer federal
jurisdiction and will not provide a basis for removal. *Beneficial National Bank of
America v. Anderson,* 539 U.S. 1, 6 (2003); *see also Louisville & Nashville R.R. v.
Motley,* 211 U.S. 149, 152 (1908) (holding a federal defense to a state claim is
insufficient for federal question jurisdiction); *Taylor v. Anderson,* 234 U.S. 74 (1914)).

This rule specifically applies to allegations of a federal pre-emption defense. The
abiding respect for the authority of state courts has long compelled the recognition of
state court competence to resolve preemption defenses. *See, e.g., Chik Kam Choo v.
Exxon Corp.,* 486 U.S. 140, 149-50 (1988) ("[W]hen a state proceeding presents a federal
issue, even a pre-emption issue, the proper course is to seek resolution of that issue by the
state court."). Further, even where a defendant asserts "field preemption," alleging that

Congress has displaced state law by occupying an entire field of regulation, state courts are still deemed fully competent to patrol the borders of such occupied fields by resolving these defenses. *See, e.g., Caterpillar,* 482 U.S. at 398-99 (holding that state court must decide preemption defense based on field-preemptive statute); cf. *Amalgamated Clothing Workers of America v. Richman Brothers Co.,* 348 U.S. 511, 517-19 (1955) (directing party to raise defense in state court).

## G.    The Existence of an MDL Panel is Not Dispositive

Defendants point out that there are ongoing federal Multi-District Litigation proceedings that include cases analogous to this one and have filed a Motion to Stay pending a transfer decision by the panel. Federal district courts, however, are split on whether federal jurisdiction is proper with respect to such cases, and the existence of current MDL proceedings does not automatically confer subject matter jurisdiction. In *Texas v. Merck & Co., Inc.,* 385 F. Supp. 2d 604 (W.D. Tex. 2005), the state of Texas sued the instant Defendants for similar, if not identical reasons. Merck removed the case to federal court, where the district granted the motion to remand because the particular provisions of the state statute at issue were "not focused on or concerned with any regulations promulgated or enforced by the Food and Drug Administration," but rather involved "Merck's conduct toward and with Texas in requesting and receiving approval from Texas to add VIOXX to Texas's Medicaid program." *Id. at 608.* See also *Alaska v. Eli Lilly & Co.,* No. 06-88, 2006 U.S. Dist. LEXIS 52783, 2006 WL 2168831 (D. Alaska July 28, 2006) (holding that state of Alaska's state law claims against Eli Lilly for alleged

fraud and negligent misrepresentation, strict liability, and violation of state consumer protection statute "do not implicate a substantial federal question" even though federal law was implicated as a "factual predicate").

## III. CONCLUSION

All doubts concerning the propriety of removal are to be resolved in favor of remand. *Boyer v. Snap-On Tools Corp.,* 913 F.2d 108, 111 (3d Cir. 1990). Defendant has failed to meet its heavy burden to remove this state law action brought by the State of Florida. For all the foregoing reasons, Plaintiff respectfully requests that this action be remanded to the Second Judicial Circuit Court in and for Leon County, Florida.

Dated: November 17, 2008

Respectfully submitted,

BILL McCOLLUM
ATTORNEY GENERAL

/s James D. Young_____

James D. Young,
Special Counsel
Florida Bar No.: 0567507
Office of the Attorney General
1300 Riverplace Blvd., Suite 405
Jacksonville, FL 33204
Telephone: 904-348-2720
Facsimile:904-858-6918
Email:james.young@myfloridalegal.com

Ashley E. Davis
Assistant Attorney General
Florida Bar No.:48032

Office of the Attorney General
The Capitol, PL-01
Tallahassee, FL 32399-1050
Telephone: 850-414-3852
Facsimile: 850-488-9134
Email: ashley.davis@myfloridalegal.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served via US Mail this 17th day of November, 2008 to:

Patricia Lowry, Barbara Litten, and Maria Moncada at Squire, Sanders and Dempsey, LLP, 1900 Phillips Point West, 777 South Flagler Drive West Palm Beach, FL 33401 Attorneys for Defendant.

s/ James Young

James D. Young

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA

|  |  |  |
|---|---|---|
| STATE OF FLORIDA, OFFICE OF THE | § | Case No. 4:08-CV-00459-RH-WCS |
| ATTORNEY GENERAL, DEPARTMENT | § | |
| OF LEGAL AFFAIRS, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| MERCK & CO., INC., | § | |
| | § | |
| Defendant. | § | |
| | § | |

## DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

Defendant Merck respectfully submits this opposition to plaintiff's motion for remand.

As the Court knows, this matter has been stayed – at the agreement of the parties – pending transfer to the Vioxx® MDL proceeding in the Eastern District of Louisiana. Accordingly, Merck respectfully urges the Court to defer consideration of plaintiff's motion pending such transfer. Indeed, that is the ordinary course taken by most transferor courts and has been followed by the vast majority of federal courts facing Vioxx-related litigation.

If the Court does consider plaintiff's motion to remand, it should be denied. Federal jurisdiction exists over plaintiff's claim because it requires resolution of substantial, disputed federal issues. Plaintiff seeks recovery on the theory that Merck's alleged failure to disclose risks associated with Vioxx caused it to pay for Vioxx prescriptions through Florida's Medicaid program. But the federal Medicaid regime greatly regulates a state's ability to exclude prescription drugs from Medicaid coverage. Thus, in order to show the necessary causal link between Merck's alleged misconduct and plaintiff's decision to cover Vioxx, plaintiff must show that federal Medicaid law would have allowed it to exclude Vioxx. Because Merck disputes

plaintiff's interpretation of that body of law, plaintiff's claims necessarily require resolution of a substantial, disputed federal issue.

In addition, plaintiff's claims raise substantial issues under the federal Food, Drug, and Cosmetic Act ("FDCA"). The FDCA closely regulates communications about prescription drugs (the very communications plaintiff claims caused it to cover Vioxx). And there is a strong federal interest in uniformly resolving disputes over the propriety of such communications. For this reason too, plaintiff's claims raise substantial, disputed federal issues like those that the Supreme Court has found sufficient to confer federal jurisdiction.

Accordingly, if the Court considers plaintiff's remand motion, it should be denied.

## BACKGROUND

Merck voluntarily withdrew Vioxx from the market on September 30, 2004. That decision was followed immediately by a nationwide flurry of lawsuits alleging that Merck had misrepresented Vioxx's safety profile. In February 2005, the Judicial Panel on Multidistrict Litigation ("MDL Panel" or "Panel") created an MDL proceeding so that Vioxx cases in federal court could be coordinated for pretrial purposes. *See In re Vioxx Prods. Liab. Litig.*, 360 F. Supp. 2d 1352, 1354 (J.P.M.L. 2005). That order transferred 148 actions to Judge Eldon E. Fallon of the Eastern District of Louisiana for coordination in the newly-created created MDL No. 1657. *See id.* at 1353, 1354-55. Since then, the Panel has transferred more than 6,700 actions to Judge Fallon. (*See* Conditional Transfer Order, *In re Vioxx Prods. Liab. Litig*, MDL No. 1657 (J.P.M.L. Nov. 13, 2008) (attached as Ex. A).)

The Vioxx MDL cases include eleven actions filed by state attorneys general, other governmental entities, and private citizens seeking reimbursement for the costs of covering Vioxx

prescriptions under state Medicaid and other government healthcare programs.[1]  The MDL Panel

has previously transferred these Medicaid-related actions to MDL No. 1657, finding that they

"involve common questions of fact with actions in this litigation previously transferred to the

Eastern District of Louisiana."  (*See In re Vioxx Prods. Liab. Litig.*, MDL No. 1657, Transfer

Orders June 14, 2006 (transferring *State of Alaska*), Aug. 11, 2006 (transferring *Montana*), Oct.

18, 2006 (transferring *State of Utah*), Apr. 18, 2007 (transferring *Franklin*), and Aug. 8, 2008

(transferring *District of Columbia*); *see also In re Vioxx Prods. Liab. Litig.*, MDL No. 1657,

Conditional Transfer Order (CTO-34) (J.P.M.L. Dec. 23, 2005) (transferring *Hood*) (attached

collectively as Ex. I).)  The Louisiana case was removed directly to the MDL court.

　　　More than three years after the MDL proceeding was established, and nearly four years

after Merck withdrew Vioxx from the market, plaintiff filed this suit seeking to recover funds that

the State of Florida paid for Vioxx through its Medicaid program.  Plaintiff's complaint makes

similar allegations to the eleven other Medicaid-related cases presently pending in the Vioxx

MDL court.  (*See* Compl. ¶ 1, *State of Fla., Office of the Attorney Gen., Dep't of Legal Affairs v.*

---

[1]　　　*See, e.g.*, Compl. ¶ 18, *Utah v. Merck & Co., Inc.*, No. 06-9336 (E.D. La. Apr. 28, 2008) ("While making Vioxx available to Medicaid patients, Defendant knowingly misrepresented to the State, as well as to physicians and the general public that Vioxx was safe and efficacious.  The State of Utah allowed the purchase of Vioxx for Utah Medicaid recipients based upon such representations by Defendant."); Compl. ¶ 7, *Hood v. Merck & Co., Inc.*, No. 05-6755 (E.D. La. Oct. 4, 2005) ("the State of Mississippi . . . brings this action . . . to recover amounts paid for the drug VIOXX® by the State, through its agencies and instrumentalities, as a result of the fraudulent conduct of [Merck]"); Compl. ¶ 16, *Foti v. Merck & Co., Inc.*, No. 05-3700 (E.D. La. July 6, 2005) (Merck, "by requesting that Vioxx be placed on Louisiana's Medicaid formulary . . . directly or implicitly represented to [the State of Louisiana] that Vioxx was safe."); Compl. ¶ 85, *State of Montana v. Merck & Co., Inc.*, No. 06-4302 (E.D. La. Dec. 28, 2005) ("Merck has been unjustly enriched by its false, deceitful, and misleading conduct to the extent that . . . the State of Montana [has] unknowingly paid excessive costs for Vioxx when [it] could have purchased significantly less expensive traditional pharmaceuticals that would have been equally effective and without the severe cardiovascular risks of Vioxx."); Compl. ¶ 18, *Alaska v. Merck & Co., Inc.*, No. 06-3132 (E.D. La. Dec. 23, 2005) (Merck "knowingly or intentionally made, caused to be made, induced, or sought to induce the making of false statements or misrepresentations of material fact concerning the safety, or lack thereof, of Vioxx . . . to the Alaska Medicaid Program."); Compl. ¶ 4, *Franklin on behalf of the State of Colo. v. Merck & Co., Inc.*, No. 07-2073 (E.D. La. Sept. 29, 2006) ("Plaintiff seeks in this action reimbursement of the monies paid by the state of Colorado through its Medicaid program for the prescription drug Vioxx."); Am. Compl. ¶ 40, *Dist. of Columbia, ex rel. Kenneth Walker v. Merck & Co.*, No. 08-4118 (E.D. La. June 26, 2006) (Merck has "provided medical providers in the District of Columbia with misleading and unscientific studies that served as the basis for the physicians to prescribe Vioxx and to fill out authorizing forms for DC Medicaid patients, like Mr. Walker, to obtain Vioxx over available generic drugs.") (attached as Exs. B through H).

*Merck & Co., Inc.*, No. 08CA3204 (Fla. Cir. Ct. Sept. 30, 2008) (alleging that Merck has

"misrepresented and suppressed evidence concerning the significant health hazards of Vioxx®");

*id.* (alleging that "[d]epartments and agencies of the State of Florida suffered substantial damages

due to Merck's unlawful conduct" and that "[t]he Florida Medicaid Program alone purchased at

least $80,000,000.00 of Vioxx®" [sic] during the time it was on the market) (attached as Ex. A to

Merck's Notice of Removal (Dkt. No. 1)).)

On October 17, 2008, Merck removed plaintiff's case to this Court. That same day, Merck

moved the Court to stay proceedings, pending transfer to Judge Fallon's MDL proceeding.

Plaintiff did not oppose Merck's motion for stay (*see* Dkt. No. 5), and the Court granted Merck's

motion (*see* Dkt. No. 6). On November 13, 2008, the MDL Panel entered an order conditionally

transferring this case to the Vioxx MDL. (*See* Conditional Transfer Order.) After the Panel's

entry of the Conditional Transfer Order, plaintiff filed its motion to remand.

Plaintiff also has filed a notice of opposition to that transfer. The Panel will set a briefing

schedule on plaintiff's opposition to transfer and decide whether this action presents common

questions of law and fact with those it previously transferred to the Vioxx MDL court. To date, no

plaintiff who has opposed transfer to the Vioxx MDL proceeding has succeeded in thwarting the

transfer. The Panel has consistently rejected arguments that the pendency of a remand motion in

the transferor court should prevent the action from being transferred to the MDL court. *See In re*

*Vioxx Prods. Liab. Litig.*, 360 F. Supp. 2d at 1354 (citing *In re Ivy*, 901 F.2d 7 (2d Cir. 1990); *In*

*re Prudential Ins. Co. of Am. Sales Practices Litig.*, 170 F. Supp. 2d 1346, 1347-48 (J.P.M.L.

2001)).

## ARGUMENT

**I.**    **SINCE THIS CASE IS STAYED, THERE IS NO REASON TO CONSIDER PLAINTIFF'S MOTION.**

The Court need not address plaintiff's jurisdictional arguments because the case is stayed pending MDL transfer.

The stay entered in this case is consistent with the general approach taken by federal courts toward cases that are likely to be transferred by the MDL Panel – *i.e.*, the "general rule is for federal courts to defer ruling on pending motions to remand in MDL litigation until after the [MDL Panel] has transferred the case." *Jackson v. Johnson & Johnson, Inc.*, No. 01-2113 DA, 2001 U.S. Dist. LEXIS 22329, at *17 (W.D. Tenn. Apr. 2, 2001). Consistent with this majority view and with the statutory purposes of 28 U.S.C. § 1407 – namely, ensuring judicial economy and uniformity of rulings on recurring issues – courts across the country have ***stayed more than 3,600 Vioxx-related cases pending transfer to MDL-1657, including more than 500 with pending remand motions and numerous Medicaid-related cases***. (*See Montana*, *Alaska*, *Erie County, Chautauqua County, Franklin,* and *Walker* Stay Orders (attached collectively as Ex. J).) This Court joined that consensus when it stayed this case.

Deferring consideration of plaintiff's remand motion is appropriate here because the case is stayed. Staying a case means, *inter alia*, that the parties do not proceed to litigate – and the Court does not rule on – motions. To rule on plaintiff's remand motion would be contrary to the point of a stay.

Further, as noted *supra*, there are several cases pending before Judge Fallon brought by state attorneys general and other governmental entities that raise the same jurisdictional issues. In such a situation, the Court should join the other courts that have virtually unanimously allowed the MDL court to rule on this plaintiff's remand motion in conjunction with a ruling on other

government plaintiffs' similarly-reasoned remand motions.  *See In re Ivy*, 901 F.2d 7, 9 (2d Cir.

1990) (where "[t]he jurisdictional issue in question is easily capable of arising in [more than one

court] . . . [c]onsistency as well as economy is . . . served [by transferring and consolidating cases

as to which remand motions are pending]"); *Bd. of Trs. of the Teachers' Ret. Sys. of Ill.*, 244 F.

Supp. 2d 900, 905 (N.D. Ill. 2002) ("The question, then, is whether other courts are facing or are

likely to face similar jurisdictional issues in cases that have been or may be transferred to a

multidistrict proceeding."); *Benjamin v. Bayer Corp.*, No. 02-0886, 2002 U.S. Dist. LEXIS 9157,

at *5 (E.D. La. May 16, 2002) ("because the issues involved in this remand are likely to be

common to other transferred cases, the policies of efficiency and consistency of pre-trial rulings

are furthered by a stay of the proceedings").  In fact, the JPML has suggested to transferor courts

that they should defer ruling on remand motions in order to ensure uniform treatment of recurring

jurisdictional issues.  (*See* Letter from JPML to Hon. Ricardo H. Hinojosa, Mar. 21, 2005

("wait[ing] until the Panel has decided the transfer issue . . . may be especially appropriate if the

[remand] motion raises questions likely to arise in other actions in the transferee court and, in the

interest of uniformity, might best be decided there if the Panel orders centralization") (attached as

Ex. K).)

     Judge Fallon has stated his preference for resolving remand motions in the MDL court:

> There are various issues of remand in various cases throughout the
> country.  Again, a significant advantage of the MDL concept is
> some consistency.  The Rule of Law is really based on consistency.
> If different decisions are made by numerous judges, then you have
> no consistency and no predictability. . . .  It's easier if one court
> decides some of these matters than if 50 or 100 courts decide the
> matter.
>
> I'm conscious of dealing with the remand [motions] as quickly as
> possible, but I do want to get them all together . . . and deal with that
> issue in a consistent and fair fashion.

(Tr. 21, *In re Vioxx Prods. Liab. Litig.*, MDL No. 1657 (E.D. La. June 23, 2005) (attached as Ex. L).) Thus, there can be no question that deferring consideration of jurisdictional issues pending MDL transfer will best effectuate the statutory goals of judicial economy and consistency of results.

In sum, plaintiff filed its remand motion even though this case is stayed to ensure compliance with the statutory deadline for seeking remand. The Panel has now entered a conditional transfer order, and this case will likely be transferred to Judge Fallon in due course. Plaintiff's remand motion would best be addressed there, where it can be taken up with similar motions brought by other states and governmental entities. Accordingly, the Court should – consistent with its stay order – defer ruling on plaintiff's motion to remand pending transfer of this case to the MDL court.

## II.     IF THE COURT DOES CONSIDER PLAINTIFF'S MOTION, IT SHOULD BE DENIED BECAUSE THIS COURT HAS FEDERAL QUESTION JURISDICTION OVER PLAINTIFF'S CLAIMS.

If the Court does address plaintiff's remand motion, or if Judge Fallon ultimately reviews this collection of remand briefs, Merck's position is that the remand motion should be denied on the merits because federal question jurisdiction exists in this action by virtue of the Supreme Court's *Grable* decision. *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005).

In *Grable*, the Supreme Court addressed whether a quiet title claim brought in state court that depended upon the interpretation of a federal tax law provision was subject to substantial federal question jurisdiction, even though the plaintiff had not purported to state any claim under federal law. In finding federal jurisdiction was present, the Court asserted unequivocally:

> [T]his Court ha[s] recognized for nearly 100 years that in certain cases federal question jurisdiction will lie over state-law claims that implicate significant federal issues. The doctrine captures the

> commonsense notion that a federal court ought to be able to hear
> claims recognized under state law that nonetheless turn on
> substantial questions of federal law, and thus justify resort to the
> experience, solicitude, and hope of uniformity that a federal forum
> offers on federal issues.

*Id.* at 312 (citation omitted). The *Grable* Court also clarified the Supreme Court's prior opinion in

*Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804 (1986). Over the last two decades,

courts have interpreted *Merrell Dow* to hold that substantial federal question jurisdiction exists

only when the federal law implicated by the state-law claims provides a private right of action. In

*Grable*, the Court explicitly rejected that interpretation of *Merrell Dow*, explaining that while the

provision of a federal private right of action can be evidence of whether Congress intended for

there to be a federal forum, the key question, as stated above, is whether the "state-law claim

necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum

may entertain without disturbing any congressionally approved balance of federal and state

judicial responsibilities." *Grable*, 545 U.S. at 314.

As explained below, the *Grable* test is satisfied here for two reasons.

### A. Plaintiff's Claim Raises Substantial Disputed Federal Issues Under The Medicaid Regime And Resolving Them In Federal Court Will Not Upset The Federal And State Division Of Judicial Authority.

The Court has jurisdiction over this matter first and foremost because plaintiff cannot

prove its claim for reimbursement of money spent on Vioxx prescriptions without confronting

substantial, disputed issues under the federal Medicaid regime.[2] Moreover, allowing a federal

---

[2] In its motion to remand, plaintiff admits that it seeks to recover "admittedly large" payments made under Florida's Medicaid program. (Remand Mem. at 10.) And plaintiff's complaint specifies that the Medicaid funds at issue here amount to at least $80 million. (Compl. ¶ 1.) This satisfies plaintiff's proposed standard that the federal issue must be on the face of the complaint. (Remand Mem. at 5 (citing *Gully v. First Nat'l Bank*, 299 U.S. 109 (1936).) Moreover, this allegation is sufficient to confer substantial federal question jurisdiction, notwithstanding plaintiff's vague reference to other "agencies and subdivisions of the State of Florida," which it alleges were also somehow damaged by Merck. (*Id.*)

court to resolve the claim would not disturb Congressional allocation of federal and state judicial responsibility.

      1.      **Plaintiff's Claim For Reimbursement Of Medicaid Money Turns On A Dispute Over The Interpretation Of Federal Statutory And Regulatory Provisions Governing State Medicaid Prescription Drug Coverage.**

At the outset, it bears noting that this is no ordinary Medicaid fraud case. Plaintiff does not allege that Merck caused it to pay for prescriptions that were not filled, to provide medicine to ineligible patients, or to cover prescriptions that were for unapproved (so-called "off-label") uses. Rather, plaintiff's claim assumes that Merck provided a working pain medicine to people who needed it and who were entitled to receive pain medicine through Florida's Medicaid program, and that all invoices for Vioxx that pharmacies presented to the program were legitimate and accurate.

Instead, plaintiff alleges that Merck tricked the Florida Medicaid program into including (and keeping) Vioxx in its state Medicaid program by failing to fully disclose Vioxx's alleged risks. (*See* Compl. ¶¶ 26-29 (alleging that "Merck intentionally misrepresented the safety and efficacy of Vioxx® in order to garner acceptance on formulary and drug plans" and that those actions "resulted in purchases and/or reimbursements by departments and agencies of the State of Florida which would not have otherwise occurred").) In order to show that, plaintiff must prove (among other things) that federal Medicaid law would have permitted it to exclude Vioxx from its Medicaid program (notwithstanding its status as an FDA-approved drug during all relevant periods). If plaintiff cannot prove that, it will be unable to meet its burden of showing that something Merck did caused its alleged losses. *See* Fla. Stat. § 501.207(1)(c) ("[t]he enforcing authority may bring . . . [a]n action on behalf of one or more consumers or governmental entities for the actual damages caused by an act or practice in violation of this part."). As explained

below, this causation inquiry is disputed in this case, and it turns on substantial issues of federal
law.

Specifically, Merck and plaintiff dispute the proper interpretation of 42 U.S.C. § 1396r-
8(d).  Merck contends that plaintiff cannot prove that Merck caused the submission of false
Medicaid claims because, regardless of Merck's disclosures about the safety and efficacy of
Vioxx, plaintiff was required to pay for Vioxx prescriptions for its Medicaid patients.  Medicaid is
a cooperative federal-state program that provides healthcare funding to low-income patients.
States that choose to participate in it receive federal funding, and agree to comply with federal
requirements in administering their Medicaid programs.  Among other mandates, federal
Medicaid law generally requires participating states to cover all prescription drugs made by
manufacturers who have entered rebate agreements with the Secretary of Health and Human
Services (known as "covered outpatient drugs").  *See* 42 U.S.C. § 1396r-8(d).  And in order to
show that it would have declined to cover Vioxx had Merck adequately disclosed its alleged risks
(and therefore that it is entitled to damages "caused by an act or practice in violation of this part"),
plaintiff will have to show that it had that discretion under the federal Medicaid regime.

Plaintiff's entire case presumes that it did have such discretion.  But that showing is
precisely the disputed issue requiring national uniformity that confers substantial federal question
jurisdiction here.  Section 1396r-8(d) sets forth detailed guidelines on when a participating state
may – and when it may not – decline to cover a covered outpatient drug.  Section 1396r-8(d)(1)
sets out two broad categories of restrictions:  "prior authorization" and exclusions.  Prior
authorization allows a state to impose a procedural requirement (such as calling a state
pharmacist) on doctors who wish to prescribe a specific drug, but Merck disputes plaintiff's
premise that this would allow the state to deny coverage for that drug.  *See Edmunds v. Levine*,

10

417 F. Supp. 1323, 1329 (S.D. Fla. 2006) (under prior authorization program "the state may try to persuade a doctor to use an alternative drug, but ultimately the doctor retains the final word on use of the drug"); *see also* 42 U.S.C. § 1396r-8(d)(1)(A) (allowing participating state to implement prior authorization program for any "covered outpatient drug," so long as program meets certain procedural requirements).

Indeed, a participating state may only "exclude or otherwise restrict coverage of a covered outpatient drug" in four circumstances: (i) where the prescription is "not for a medically accepted indication"[3]; (ii) where the drug falls into an enumerated category[4]; (iii) where the state has entered an agreement with the manufacture to restrict the drug and that agreement has been approved by the Secretary of Health and Human Services; and (iv) where the state has established an exclusive drug formulary[5] in keeping with the requirements of the federal Medicaid statute, and made specified findings based on specified informational sources. 42 U.S.C. § 1396r-8(d)(1)(A). Thus, in order for plaintiff to show that it would have excluded Vioxx from its Medicaid program had Merck disclosed its allegedly concealed risks, it will have to show that it could have excluded Vioxx under one of those four provisions. Merck disputes this, and resolution of that dispute will require a court to venture deep into the federal Medicaid thicket.

A federal district judge recently concluded that Medicaid fraud claims of the sort plaintiff asserts here give rise to substantial federal question jurisdiction under *Grable*. *See West Virginia ex rel. McGraw v. Eli Lilly & Co.*, 476 F. Supp. 2d 230, 234 (E.D.N.Y. 2007); *Montana ex rel. McGrath v. Eli Lilly & Co.*, Nos. 04-MD-1596, 07-CV-1933 (JBW), 2008 U.S. Dist. LEXIS

---

[3]    A "medically accepted indication" is a use either approved by the FDA or contained in a specifically referenced medical compendium. *See* 42 U.S.C. § 1396r-8(k)(6).

[4]    *See also* 42 U.S.C. § 1396r-8(d)(2) (enumerating categories of excludable drugs).

[5]    Although § 1396r-8 uses the phrase "drug formulary," that phrase can be confusing because a "formulary" in pharmaceuticals can be any list of drugs. Thus, the phrase "exclusive drug formulary" is used here to describe a formulary created under § 1396r-8(d)(1)(B)(iv) to exclude drugs from a state's Medicaid program.

10355, at *8-10 (E.D.N.Y. Feb. 12, 2008). In both *McGraw* and *McGrath*, as here, state attorneys general sought to recover Medicaid funds spent on a drug under the theory that the defendant's alleged misrepresentations about the drug's side effects caused the state to cover the drug through its Medicaid program. *See McGraw*, 476 F. Supp. 2d. at 231, 233-34; *McGrath*, 2008 U.S. Dist. LEXIS 10355, at *5-6. As the court explained in *McGraw*, the federal Medicaid law "mandated" that the state cover the defendant's drug through its Medicaid program, and resolving whether the state was obliged to cover that drug, "using funds largely provided by the federal government," was thus "essential to the state's theory of damages." *McGraw*, 476 F. Supp. 2d. at 233. The plaintiffs' claims therefore presented "a substantial and disputed federal issue under *Grable*." *Id.* In *McGrath*, the court denied plaintiff's remand motion on similar grounds, holding:

> At issue here is not simply a federal drug standard, but the factor of an intricate federal regulatory medicine scheme. It includes detailed federal funding provisions, requiring some degree of national uniformity in interpretation. . . . It is difficult to accept the proposition that the federal judicial system cannot provide a single integrated practice in these cases by the Attorneys General. Potentially fifty states and the Commonwealth of Puerto Rico can independently sue in their respective jurisdictions; local courts can potentially deliver at least fifty-one different results.

*McGrath*, 2008 U.S. Dist. LEXIS 10355, at *17-18. The court denied the State of Montana's remand motion because "[t]he resolution of Montana's claims necessarily depend[s] on decisive federal questions, including the state's claims based upon its participation in the federal Medicaid program, the requirements of which are governed by federal law." *Id.* at *3.

Similarly, in a case involving Medicaid drug pricing, the court in *County of Santa Clara v. Astra USA, Inc*., 401 F. Supp. 2d 1022 (N.D. Cal. 2005), held that federal jurisdiction existed under *Grable* because the plaintiff's state law claims against pharmaceutical manufacturers for allegedly overcharging plaintiff for Medicaid drugs presented substantial questions of federal law.

In concluding that the Medicaid drug pricing issues were substantial questions of federal law, the court observed that one measure of evaluating substantiality is "the importance of the federal issue." *Id*. at 1027. The court noted that "[u]nder this approach, the following issues have been found to be substantial: those that directly affect the functioning of the federal government, those in an area reserved for exclusive federal jurisdiction, and those that impact a complex federal regulatory scheme." *Id*. at 1027.

Other courts facing similar issues have come to the same conclusion. *See Municipality of San Juan v. Corporación Para El Fomento Económico de la Ciudad Capital*, 415 F.3d 145, 148 n.6 (1st Cir. 2005) (noting agreement with a magistrate judge's finding of substantial federal question jurisdiction where "the propriety of [the defendant's] conduct turns entirely on its adherence to the intricate and detailed set of federal regulatory requirements, and the funds at issue are federal grant monies"); *Nat'l Credit Reporting Ass'n v. Experian Info. Solutions, Inc.*, No. C 04-01661 WHA, 2004 U.S. Dist. LEXIS 17303, at *7 (N.D. Cal. July 21, 2004) ("A claim raises a substantial federal question when its resolution requires reference to or interpretation of federal law."); *Drawhorn v. Qwest Commc'ns Int'l, Inc.*, 121 F. Supp. 2d 554, 564 (E.D. Tex. 2000) (holding that federal question jurisdiction exists where "the interpretation of the federal statutes . . . is a necessary and substantial part of the plaintiffs' own causes of action").

Here, there can be no doubt that plaintiff's claims implicate "a complex federal regulatory scheme." *County of Santa Clara*, 401 F. Supp. 2d at 1027. Plaintiff alleges that it would not have covered Vioxx through its Medicaid program had Merck adequately disclosed its risks. But its ability to exclude Vioxx from Florida's federally-funded Medicaid program was tightly constrained by federal Medicaid law. Thus, in order to prove the required causation element of its

13

claim, plaintiff will have to show that federal Medical law would have permitted it to exclude Vioxx based on whatever information it alleges that Merck withheld.

Accordingly, the first part of the *Grable* standard – that substantial, disputed federal issues are implicated in the plaintiff's case – is clearly satisfied here.

2.     **Exercising Jurisdiction In This Case Will Not Cause Any Drastic Shift Of Medicaid Fraud Cases From State To Federal Court.**

The second part of the *Grable* standard is also satisfied here because exercising jurisdiction will not upset the congressionally-mandated division of labor between federal and state courts. As explained *supra*, plaintiff has brought an unusual Medicaid fraud claim. Plaintiff's claim centers on the allegation that it would have operated its Medicaid program differently if Merck had – in its view – made more or different disclosures of Vioxx's alleged risks. And that unusual aspect of its claim brings the substantial, disputed federal issues to the forefront of this litigation. Thus, this case is of rare vintage, and exercising jurisdiction here will not greatly affect the division of labor between the federal and state judiciaries. *See McGraw*, 476 F. Supp. 2d at 234 ("The exercise of federal jurisdiction over the West Virginia Attorney General's action implicating the federal Medicaid laws will not attract a 'horde of original filings and removal cases raising other state claims with embedded federal issues.'") (quoting *Grable*, 545 U.S. at 318).

It is for this very reason that plaintiff's case is distinct from *Merrell Dow* – which plaintiff incorrectly argues is a more appropriate analogue than *Grable.* (*See* Remand Mem. at 7-8). In *Merrell Dow*, the Supreme Court worried that extending federal jurisdiction to state-law tort claims where plaintiffs merely reference a federal standard would flood federal courtrooms with removed cases. *See Merrell Dow*, 478 U.S. at 811-812. That is not the case here. *See Santa Clara*, 401 F. Supp. 2d at 1031 (allowing removal under *Grable* and distinguishing cases

14

asserting, *inter alia*, negligence claims because removal of such "garden-variety" tort cases from state court would raise the federal court caseload concerns expressed in *Merrell Dow*).  Thus, the two "garden-variety" state tort cases upon which plaintiff relies – *Callahan v. Countrywide Home Loans, Inc*., No. 3:06cv105/RB/MD, 2006 U.S. Dist. LEXIS 42860, at *5 (N.D. Fla. June 26, 2006)  and *McCarty v. Precision Airmotive Corp.*, No. 8:06-cv-1391-T-26TBM, 2006 U.S. Dist. LEXIS 65770, at *7 (M.D. Fla. 2006) – to argue that allowing removal here "could potentially flood the federal docket" (Remand Mem. at 9), are also inapposite.[6]

Instead of arguing that the second part of the *Grable* test – respecting the division of labor between federal and state courts – is not satisfied here, plaintiff argues that federalism mandates remanding its case because "consideration of comity requires that Plaintiff, a sovereign State, be permitted to pursue its claims in State court."  (Remand Mem. at 17.)  But federalism concerns are not present here because plaintiff voluntarily initiated this lawsuit and as a result, it must subject itself to all of the possible implications of having commenced an action.  *Cf. In Re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 488 F.3d 112, 119 (2d. Cir. 2007) ("[t]he removal of the cases here was the result of the voluntary acts of California and New Hampshire in commencing the lawsuits against the defendants.  Once having done so, these states subjected themselves to all of the rules and consequences attendant to that decision.").  As the district court in the *MTBE* case explained:

> There is no real affront to allowing [cases brought by states] to proceed in federal court.  If and when their cases are finally tried, the federal courts will apply state law, thereby respecting and enforcing state policies, while simultaneously resolving federal questions.  In that sense, federal and state interests are aligned.

---

[6]     *State ex rel. Department of Financial Services of the State of Florida v. Universal Health Care Insurance Co.*, No. 4:07cv176-PSM/WCS, 2007 U.S. Dist. LEXIS 89827 (N.D. Fla. Dec. 5, 2007) does not aid plaintiff either because in that case, there were no federal regulations on the issue that the defendant claimed conferred federal jurisdiction.  *Id.* at *11.  Moreover, that court also ruled on the ground that Congress expressly allows state regulation of insurance company licensing and solvency.  *Id.*  Similar deference to state authority is not present here.

*In Re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 361 F. Supp. 2d 137, 147
(S.D.N.Y. 2004), *overruled on other grounds*, 488 F.3d 112. Moreover, plaintiff's comity
argument relies on *dicta* from *Franchise Tax Board of California v. Construction Laborers
Vacation Trust for Southern California*, 463 U.S. 1 (1983). (*See* Remand Mem. at 17). That *dicta*
should not persuade the Court, however, because there, the Supreme Court held that federal law
was relevant to the state-law cause of action at issue "only by way of a defense . . . and then only
if [the state] has made out a valid claim for relief under state law." *Franchise Tax Bd.*, 463 U.S. at
13. Here, plaintiff cannot make out a valid claim for relief under state law, which requires it to
prove causation, without delving into a dispute over the meaning of a federal regulatory and
statutory scheme. *See also id.* at 9 (noting that federal question jurisdiction is present if resolution
of the case requires "determining the meaning or application of" a federal law).

   3.  **Plaintiff's Other Arguments Against Federal Question Jurisdiction
Fail.**

  Plaintiff's other arguments in support of remand either mis-state Merck's bases for
removing this case or misapply caselaw.

  ***First***, Merck does not contend that federal question jurisdiction lies here because of "the
mere presence of a federal standard embedded" in plaintiff's state-law claim. (Remand Mem. at
6.) Instead, as shown *supra*, plaintiff's own claim necessarily depends on it proving that it could
have declined to cover Vioxx prescriptions under 42 U.S.C. § 1396r-8(d) had Merck made
different or additional disclosures about Vioxx's purported CV risks. Without proving that point
of law, plaintiff cannot establish its own case, which requires it to prove causation.

  ***Second***, plaintiff's contention that the federal issue must be the ***sole*** disputed issue in the
case is contrary to precedent. (*See* Remand Mem. at 7.) The question under *Grable* is whether
the asserted claims "implicate significant federal issues" – not whether they implicate ***only***

significant federal issues. *Grable*, 545 U.S. at 312. Nor can plaintiff seriously contend that the federal issues raised here are not "substantial." (*See* Remand Mem. at 6-7, 15.) As the court recognized in *McGraw*, "the question of the state's obligation" under federal Medicaid law "to reimburse its insureds for [Vioxx], using funds largely provided by the federal government . . . presents a substantial and disputed federal issue" that goes to the federal Medicaid program's core. 476 F. Supp. 2d at 233. Nor is plaintiff correct in arguing that federal question jurisdiction here arises only by virtue of the assertion of a federal defense by Merck. (*See* Remand Mem. at 18.) As explained *supra*, **as part of its case**, plaintiff must prove that Merck's conduct caused its alleged injuries, and Merck disputes this on the basis of federal law, therefore putting that law at issue. For this reason, *Ekas v. Burris*, Nos. 07-61156-CIV-MARRA, 07-61157-CIV-MARRA, 2007 U.S. Dist. LEXIS 84340 (S.D. Fla. Nov. 14, 2007), does not support plaintiff's attempt to rely on *Merrell Dow* as opposed to *Grable* (*see* Remand Mem. at 7-8); after all, in that case, "there [was] no dispute as to the meaning of any federal law[.]" *Ekas*, 2007 U.S. Dist. LEXIS 84340 at *19 & n.5

**Third,** the cases plaintiff cites to argue that the *Grable* test is not satisfied here are inapposite. Plaintiff contends that "the overwhelming majority of courts discussing the federal role in the administration of Medicaid" declined to exercise substantial federal question jurisdiction. (*See* Remand Mem. at 11, 14 & n.2.) But not only were several of those cases decided before *Grable*, the vast majority of them did not involve an allegation that, but for the defendant's alleged misconduct, the plaintiff would have excluded a prescription drug from its Medicaid program. *See Minnesota v. Pharmacia Corp.*, No. 05-1395 (PAM/JSM), 2005 U.S. Dist. LEXIS 27638 (D. Minn. Oct. 22, 2005) (allegation that defendant fraudulently manipulated average wholesale price); *Wisconsin v. Abbott Labs.*, 390 F. Supp. 2d 815 (W.D. Wis. 2005)

17

(same); *Hawaii v. Abbott Labs., Inc.*, 469 F. Supp. 2d 842, 852 (D. Haw. 2006) (same); *Missouri ex rel. Nixon v. Mylan Labs., Inc.*, No. 4:06CV603 HEA, 2006 U.S. Dist. LEXIS 32570, at *2 (E.D. Mo. May 23, 2006) (same); *Pennsylvania v. Tap Pharm. Prods., Inc.*, 415 F. Supp. 2d 516 (E.D. Pa. 2005) (same); *New York v. Lutheran Ctr. for Aging*, 957 F. Supp. 393 (E.D.N.Y. 1997) (claim that defendant breached contract by state by submitting claims to state Medicaid agency without disclosing patient's Medicare eligibility); *Massachusetts v. Philip Morris, Inc.*, 942 F. Supp. 690 (D. Mass 1996) (claims against tobacco companies to recoup costs associated with treating patients injured by tobacco use); *Maryland v. Philip Morris, Inc.*, 934 F. Supp. 173 (D. Md. 1996) (same); *City of New York v. The Tobacco Inst.*, No. 97 Civ. 904 (LMM), 1997 U.S. Dist. LEXIS 19415 (S.D.N.Y. Dec. 5, 1997) (same).

The *Hawaii*, *Minnesota*, *Missouri*, *Pennsylvania*, and *Wisconsin* cases are also inapposite because the federal question at issue in those cases was in fact insubstantial – *i.e.*, it was limited to the meaning of the phrase "average wholesale price" as it appears in the Medicaid statute and regulations. *See Hawaii*, 469 F. Supp. 2d at 852; *Minnesota*, 2005 U.S. Dist. LEXIS 27638, at *2; *Missouri*, 2006 U.S. Dist. LEXIS 32570, at *2; *Pennsylvania*, 415 F. Supp. 2d at 518; *Wisconsin*, 390 F. Supp. 2d at 823. Here, in contrast, the disputed federal issue "extend[s] beyond the definition of a single federal statutory term to encompass a broad range of federal regulatory and funding provisions[.]" *McGraw*, 476 F. Supp. 2d at 234. In any event, the courts in three of those cases found the removal to be ***procedurally*** defective, thereby requiring remand, making plaintiff's reliance on those cases all the more unpersuasive. *Hawaii*, 469 F. Supp. 2d at 849; *Wisconsin*, 390 F. Supp. 2d at 824-25; *Minnesota*, 2005 U.S. Dist. LEXIS 27638, at *8. Notably, another district court rejected a plaintiff's reliance on *Wisconsin* for this very reason, finding that "removal had been procedurally defective and provided an independent and adequate reason to

remand to state court." *County of Santa Clara*, 401 F. Supp. 2d at 1031 (rejecting *Wisconsin*'s

interpretation of *Grable* and concluding that the significant dependence on federal Medicaid law

of pricing allegations supported federal jurisdiction).

      *Fourth*, the cases plaintiff cites that are similar to this one nevertheless do not justify

remand.  The memorandum order in *Alaska v. Eli Lilly & Co.*, No. 3:06-cv-88 TMB, 2006 U.S.

Dist. LEXIS 52783 (D. Alaska July 28, 2006), provides no explanation of that court's reasoning,

making it unhelpful to this Court, *id.* at *8-9, though it appears that the court relied on the

plaintiff's contention that no element of its cause of action required the interpretation of federal

law, *see id.* at *7-8.  Here, as discussed, the causation element of plaintiff's claim requires

resolution of disputed and substantial federal issues.  For this reason, too, *South Carolina ex rel.*

*McMaster v. Eli Lilly & Co.*, No. 7:07-1875-HMH, 2007 U.S. Dist. LEXIS 56847 (D. S.C. Aug.

3, 2007) and *Pennsylvania v. Eli Lilly & Co.*, 511 F. Supp. 2d 576 (E.D. Pa. 2007) are unavailing

to plaintiff.  *See South Carolina*, 2007 U.S. Dist. LEXIS 56847, at *5-7 (finding federal issues to

be "incidental" because proving a violation of federal Medicaid law would not necessarily prove

that the defendant committed Medicaid fraud as defined by state statutory law); *Pennsylvania*, 511

F. Supp. 2d at 582 ("the term 'medically accepted indication' is used in the Complaint merely as a

common standard that delimits the Medicaid fraud claim").  And *Utah v. Eli Lilly & Co.*, 509 F.

Supp. 2d 1016, 1022 (D. Utah 2007), is not applicable either because there, the court did not

grapple with the precise issue that is disputed by the parties here:  whether federal Medicaid law

would have allowed plaintiff to decline to cover Vioxx while it was on the market.  Nor can the

district court decision remanding a suit by the Texas Attorney General carry the weight plaintiff

places on it.  (*See* Remand Mem. at 10, 14 & n.2, 19 (citing *Texas v. Merck*, 385 F. Supp. 2d 604

(W.D. Tex. 2005)).)  That decision also did not acknowledge the requirements imposed by the

federal Medicaid regime; thus, it did not address the issue before this Court. *See Texas v. Merck*, 385 F. Supp. 2d at 608.

*     *     *

In sum, plaintiff's contention that Merck "has failed to meet its heavy burden to remove this state law action" (Remand Mem. at 20), is incorrect. To the contrary, federal Medicaid issues are "essential to [plaintiff's] theory of damages," and its claim presents "substantial and disputed federal issue[s] under *Grable*." *McGraw*, 476 F. Supp. 2d at 233. For this reason alone, plaintiff's motion should be denied.

## B. Plaintiff's Claim Raises Substantial Issues Under The Food, Drug, And Cosmetic Act.

Removal was proper for another reason as well: plaintiff's complaint also raises substantial issues under the FDCA, which closely regulates the very communications that plaintiff challenges here. (*See* Notice of Removal ¶¶ 21-25.) The core of plaintiff's claim is that Merck misrepresented the safety and efficacy of Vioxx to the Food and Drug Administration ("FDA"), misled physicians and consumers in marketing and advertising the drug, and concealed negative information about its safety profile, thereby inducing plaintiff to cover Vioxx prescriptions given to Medicaid patients. (*See* Compl. ¶¶ 13, 14, 19.) The FDA is charged both with determining whether a drug is approved for use in humans and with assessing the specific uses for which that drug may be administered. 21 U.S.C. §§ 331(a), (d), 335; *Wash. Legal Found. v. Henney*, 202 F.3d 331, 332-33 (D.C. Cir. 2000). Thus, the marketing, testing, labeling, and approval of Vioxx – the very issues that form the basis of plaintiff's complaint – were all governed by federal law.

Merck's position is not that federal question jurisdiction is present merely because plaintiff references alleged violations of federal drug standards, or is attempting to establish a rebuttable presumption of negligence based on such alleged violations, as plaintiff argues. (*See* Remand

20

Mem. at 7, 8, 9, 13, 15.)[7]  Instead, Merck contends that the *Grable* standard is met because the

parties dispute whether under the FDCA, Merck could have provided risk information about

Vioxx that varied from the highly-regulated representations approved by the FDA.  (*See* Notice of

Removal ¶ 23 (citing 21 C.F.R. § 202.1(e)(4)).)  Plaintiff's case presumes that Merck could have

unilaterally changed its formal warning information about Vioxx, so resolution of plaintiff's claim

therefore depends on the interpretation of the FDCA and its implementing regulations.  This

dispute is substantial in light of the importance of these regulations in the federal prescription drug

regime.  In other words, to assess the merits of plaintiff's case, a court will have to intensely

examine federal law, specifically the FDCA and its implementing regulations, which constrain

pharmaceutical manufacturers' public and promotional statements about prescription drugs.  *See*

21 U.S.C. § 371(a); 21 C.F.R. § 200 *et seq.*  Thus, plaintiff's argument that its case is more like

*Merrell Dow* than *Grable* (*see* Remand Mem. at 6-7) is not persuasive.

A court considering numerous remand motions in similar cases brought by state attorneys

general against pharmaceutical manufacturers has determined that they meet the standards for

federal jurisdiction established by *Grable* in part for this reason.  *See In re Zyprexa Prods. Liab.*

*Litig*, 375 F. Supp. 2d 170 (E.D.N.Y. 2005) (retaining federal jurisdiction in case involving

allegations that prescription drug manufacturer improperly marketed drug causing state Medicaid

program to expend funds because of the "substantial federal funding provisions involved" and

because plaintiff's FDA-related allegations rendered the case "federally oriented").  In doing so,

the court also noted that there is a strong federal interest in uniformly resolving the propriety of

certain communications regarding prescription drugs, which provides yet another reason to

---

[7]    Merck did not remove this case on the ground that plaintiff's claims are preempted by the FDCA, so
plaintiff's cases on that point and its argument that state courts can decide preemption issues are both irrelevant.  (*See*
Remand Mem. at 18-19.)

exercise federal jurisdiction. *See id.* at 172-73; *see also McGrath*, 2008 U.S. Dist. LEXIS 10355, at \*16-18. Plaintiff's claims therefore meet the standards set forth in *Grable* for that reason as well.

Notably, courts have found substantial federal question jurisdiction in cases where a plaintiff's claims are merely predicated on allegations of violations of federal statutory and regulatory schemes. *See, e.g.*, *D'Alessio v. N.Y. Stock Exch., Inc*., 258 F.3d 93, 102-03 & n.6 (2d Cir. 2001) (finding federal jurisdiction because state law tort claims were "predicated on alleged breaches of" federal securities law by defendants); *Brennan v. Southwest Airlines Co*., 134 F.3d 1405, 1409 (9th Cir. 1998) (denying remand where plaintiffs pled only state-law causes of action expressly, and the substance of plaintiffs' suit arose under federal law). Thus, even under plaintiff's interpretation of Merck's FDCA ground for removal, there is support for finding federal question jurisdiction here.

Plaintiff relies on *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677 (2006) (*see* Remand Mem. at 16-17), to argue that *Grable* applies only to a very few cases, and that this is not one of them. In *Empire*, however, the Court declined to apply *Grable* because the underlying factual basis for the claim "was triggered, not by the action of any federal department, agency or service, but by the settlement of a personal injury action launched in state court[.]" 547 U.S. at 700. Here, the FDA's approval of Vioxx with mandatory labeling and concomitant regulation of marketing activities is precisely what plaintiff alleges caused its injury.

Accordingly, plaintiff's claims raise substantial, disputed issues under the FDCA, and federal question jurisdiction exists.

## CONCLUSION

For the foregoing reasons, the Court should defer ruling on plaintiff's remand motion pending MDL transfer of this case. In the alternative, if the Court does consider plaintiff's motion, it should be denied.

Dated:                                    Respectfully submitted,
OF COUNSEL:
                                          */s/ Barbara Bolton Litten*
John H. Beisner, Esq.                     Patricia E. Lowry
Brian C. Anderson, Esq.                   Florida Bar No. 332569
Jessica D. Miller, Esq.                   E-mail: PLowry@ssd.com
Rebecca S. Bjork, Esq.                    Barbara Bolton Litten
O'MELVENY & MYERS LLP                     Florida Bar No. 0091642
1625 Eye Street NW                        E-mail: BLitten@ssd.com
Washington, DC 20003                      SQUIRE, SANDERS & DEMPSEY L.L.P.
                                          1900 Phillips Point West
                                          777 South Flagler Drive
                                          West Palm Beach, FL 33401-6198
                                          Telephone: 561-650-7200


                                          Attorneys for Defendant Merck & Co., Inc.


## CERTIFICATE OF SERVICE

I hereby certify that on December **5**, 2008, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.


                                          */s/ Barbara Bolton Litten*
                                          Barbara Bolton Litten

## SERVICE LIST

**STATE OF FLORIDA, OFFICE OF THE ATTORNEY GENERAL, DEPARTMENT OF LEGAL AFFAIRS, v.MERCK & CO., INC.**
**Case No.  4:08-cv-00459-RH-WCS**
**United States District Court, Northern District of Florida**

James D. Young
E-mail:
Special Counsel
**OFFICE OF THE ATTORNEY GENERAL**
1300 Riverplace Blvd., Suite 405
Jacksonville, FL  33204
Telephone:
Facsimile:

*Attorneys for Plaintiff*

Patricia E. Lowry
Florida Bar No. 332569
E-mail: PLowry@ssd.com
Barbara Bolton Litten
Florida Bar No. 0091642
E-mail: BLitten@ssd.com
**SQUIRE, SANDERS & DEMPSEY L.L.P.**
1900 Phillips Point West
777 South Flagler Drive
West Palm Beach, FL 33401-6198
Telephone: 561-650-7200
Facsimile:  561-655-1509

*Attorneys for Defendant Merck & Co., Inc.*

WESTPALMBEACH/541707.1

24