# Exhibit K

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA<br>COUNTY OF GREENVILLE | ) | IN THE COURT OF COMMON PLEAS<br>#2009-CP-23 - 1312 |
| STATE OF SOUTH CAROLINA<br>Ex rel **Henry McMaster**, in his capacity as Attorney General of the State of South Carolina,<br><br>Plaintiff<br><br>v.<br><br>MERCK & CO., INC.,<br><br>Defendant | ) | **SUMMONS**<br>**(Jury Trial Demanded)** |

TO THE DEFENDANT ABOVE-NAMED:

You are hereby summoned and required to Answer the Complaint in this action, a copy of which is herewith served upon you, and to serve a copy of your Answer to the Complaint to the subscriber at Post Office Box 2343, Greenville, South Carolina 29602 within thirty (30) days after the service hereof, exclusive of the day of such service. If you fail to Answer the Complaint within that time, the Plaintiff will apply to the Court for the relief demanded in the Complaint and a judgment by default will be rendered against you.

Respectfully submitted,

Eugene C. Covington, Jr. (#1422)
COVINGTON, PATRICK, HAGINS, STERN & LEWIS, P.A.
Post Office Box 2343
Greenville, SC 29602
(864) 242-9000
gcovington@covpatlaw.com
Attorneys for Plaintiff

Dated: August 25, 2009
Greenville, South Carolina

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA<br>COUNTY OF GREENVILLE | )<br>) | IN THE COURT OF COMMON PLEAS<br>FOR THE THIRTEENTH JUDICIAL CIRCUIT |
| STATE OF SOUTH CAROLINA<br>Ex rel **Henry McMaster**, in his capacity as Attorney General of the State of South Carolina,<br><br>PLAINTIFF, | )<br>)<br>)<br>)<br>)<br>) | #2009-CP-23-7312. |
| v. | ) | **COMPLAINT**<br>**(Jury Trial Demanded)** |
| MERCK & CO., INC.<br><br>DEFENDANT. | )<br>)<br>) | |

OFFICE OF CLERK OF COURT GREENVILLE CO. S.C. 25 A 11: 27

**COMPLAINT**

**Parties, Jurisdiction, and Venue**

1. The State of South Carolina by and through its Attorney General ("the State"), according to law and equity, and as *parens patriae*, brings this action on behalf of its citizens to recover damages which the State, through its program payors, has sustained as purchaser of the prescription drug, Vioxx®, and as a result of the unlawful action of the defendant, Merck & Co., Inc. ("Merck").

2. The Attorney General is statutorily authorized to initiate and maintain this action, and does so, pursuant to S.C. Code Ann. §1-7-40, the South Carolina Unfair Trade Practices Act, S.C. Code Ann. §39-5-140, and S.C. Code §43-7-60(E), 90.

3. Defendant Merck is incorporated and maintains its principal place of business in the State of New Jersey. At all times relevant hereto, defendant was in the business of manufacturing, marketing, distributing, advertising, sampling, and/or selling the prescription





drug rofecoxib under the brand name Vioxx® in South Carolina and specifically in Greenville County.

4. The jurisdiction of this Court is founded upon S.C. Const. Ann. Art. V. §11 which gives the Circuit Court general jurisdiction over civil matters.

5. The Court has personal jurisdiction over defendant because defendant did business in South Carolina and/or has the requisite minimum contact with South Carolina necessary to constitutionally permit the Court to exercise jurisdiction with such jurisdiction also within the contemplation of the South Carolina "long arm" statute (S.C. Code Ann. §36-2-803).

6. At all times specified and for many years prior and up to the present time, defendant transacted a continuous and substantial business within South Carolina, including Greenville County. This business included marketing Vioxx® to the State of South Carolina, particularly through its program payors.

7. Venue in this Court is proper pursuant to the Rules of the South Carolina Supreme Court and the South Carolina Code.

**Factual Background**

8. The South Carolina state agencies, collectively referred to as the "South Carolina program payors," have paid for Vioxx® prescriptions through programs including, but not limited to, South Carolina Medicaid and the State Employee Insurance Program. These plans use state dollars to assist eligible beneficiaries in paying for prescription medications.

9. This Complaint arises from defendant's marketing, advertising, promotion, and sale of the prescription drug Vioxx®, an anti-inflammatory drug and pain reliever containing rofecoxib.

10. Defendant misrepresented and concealed material safety information from end-users, physicians, and third-party payors such as the State program payors, concerning the cardiovascular and gastrointestinal risks associated with Vioxx®.

11. Additionally, defendant, in aggressively marketing Vioxx® made false and intentionally misleading representations and omitted material facts, regarding the comparative safety and efficacy of Vioxx® as compared to traditional non-steroidal anti-inflammatory drugs (NSAIDs).

12. The purpose of defendant's misrepresentations and omissions, in combination with defendant's aggressive marketing and promotional schemes, was to (i) create, and thereafter increase, end-user and physician demand for Vioxx® in an already crowded NSAID market, (ii) induce third party payors such as the State's program payors to purchase and/or authorize the purchase of Vioxx® by their insureds or plan beneficiaries, and (iii) justify the enormous price disparity between Vioxx® and traditional NSAIDs.

13. As a result of defendant's fraudulent and unconscionable commercial practices in connection with the marketing and sale of Vioxx®, defendant Merck induced third-party payors to endorse and thereafter purchase Vioxx®. Defendant intended and expected that end-users, physicians, and third party payors would rely to their detriment on Merck's misrepresentations in its marketing, advertisements, and promotional efforts.

14. As a consequence of defendant's wrongful conduct, the State program payors paid vastly more for Vioxx® than they would have paid for equally effective, but safer medications (approximately 800% more than equally efficacious and safer NSAIDs, such as naproxen).

15. As a further consequence of defendant's conduct, the State program payors paid

for supplies of Vioxx® which were rendered useless and worthless when the drug was withdrawn because of its safety risks.

**Drug Approval and Marketing Scheme**

16. Defendant obtained Food and Drug Administration (FDA) approval for Vioxx® on a fast-track basis on or about May 1999, and began the distribution and sale of Vioxx® throughout the United States immediately thereafter.

17. Vioxx® is a cox-2 specific inhibitor used in the treatment of inflammation and pain, and is among the class of drugs known as NSAIDs.

18. Defendant introduced Vioxx® at a wholesale cost of approximately seventy-two dollars ($72.00) for a 30-day supply. In contrast, traditional NSAIDs wholesaled for nine dollars ($9.00) or less for the same 30-day supply.

19. To justify the enormous disparity, defendant Merck marketed Vioxx® as a safer alternative to traditional NSAIDs because of its inhibition of the cox-2 enzyme only, which is believed to directly work at sites of inflammation in the human body.

20. Traditional NSAIDs inhibit both cox-1 and cox-2 enzymes. Because the cox-1 enzyme is believed to have a gastrointestinal protective effect, traditional NSAIDs pose a risk of ulcer and other gastrointestinal problems. Vioxx®, however, also posed a risk of ulcer and gastrointestinal problems, and the FDA thereafter required defendant to include such warnings on the Vioxx® label and inserts.

21. Nevertheless, defendant repeatedly promoted Vioxx® as safer than traditional NSAIDs, representing that Vioxx® posed a significantly lower risk of gastrointestinal problems than other NSAIDs, with equally efficacious results as an anti-inflammatory and pain reliever.





22. On July 16, 1999, the FDA issued a warning letter to defendant, just two months after receiving FDA approval, warning defendant that its advertisements for Vioxx® failed to provide adequate information regarding Vioxx®'s approved indication and usage; failed to include risk information; failed to present a brief summary of necessary information related to side affects, contraindications and effectiveness; and, failed to adequately provide for the dissemination of full product labeling in connection with its advertisements.

23. On December 16, 1999, the FDA again issued a letter to defendant that its promotional pieces were "false and misleading because they contain misrepresentations of Vioxx®'s safety profile, unsubstantiated comparative claims, and are lacking in fair balance."

24. Defendant's promotional materials misrepresented the gastrointestinal risks associated with Vioxx®, which contradicted the warnings contained in its package insert, and made broad superiority claims not only over "the class of NSAIDs, of which it is a member, but to all analgesic and anti-inflammatory therapies available for management of pain."

25. In fact, defendant's promotional materials affirmatively misrepresented the efficacy and safety of Vioxx®.

26. Furthermore, defendant concealed material information that its cox-2 specific inhibitor, Vioxx®, was less safe than traditional NSAIDs.

27. Defendant suppressed and/or failed to act upon medical and scientific information showing Vioxx® is associated with significant and dangerous adverse cardiovascular effects, Independently and in comparison to traditional NSAIDs, and was no more efficacious than traditional NSAIDs, including, without limitation, the drug naproxen.

28. In the years following the introduction of Vioxx®, Merck continued to misrepresent and understate the risks of the drug, even as evidence mounted that it substantially increased the risks of cardiovascular events and other types of side-effects.

29. As a result of defendant's direct to consumer marketing and third-party payor marketing scheme, defendant gained a significant share of the NSAID market that it would not have gained if it had not suppressed information about Vioxx® and/or made false representations about its superiority, safety, and efficacy.

30. Vioxx®'s introduction increased domestic sales of anti-inflammatory pain relievers, including cox-2 drugs, by 65% in one year, to $4.5 billion dollars.

31. Defendant announced on September 30, 2004, that Vioxx® was being withdrawn from the United States market.

32. The State's program payors purchased or reimbursed for purchases of Vioxx® and for the costs of visits to physicians and testing related to switching from Vioxx® to alternative therapies. As a result, the State program payors have sustained losses and damages including, *inter alia*, paying for a product which is unmerchantable.

33. From May 1999 until September 30, 2004, Vioxx® was prescribed by South Carolina physicians to many recipients of the Medicaid Program and state employees and their dependents. As a result of ingesting Vioxx®, South Carolina Medicaid patients and state employees and dependent suffered serious health effects requiring further and more extensive medical treatment and provision of other health-related services. For these individuals, the State is the financially responsible party for this treatment. The State has thus suffered and will continue to suffer additional financial loss in the care of those beneficiaries and recipients who

consumed prescriptions which were ineffective, unsafe and actively harmful. The State is entitled to collect these damages both independently and as a subrogee and/or assignee of the beneficiaries.

**COUNT I**

**Violation of the South Carolina Unfair Trade Practices Act (SCUTPA)**

34. The State incorporates by reference the foregoing allegations as if set forth at length herein.

35. By labeling, distributing, marketing, promoting and selling Vioxx® through South Carolina physicians and pharmacies to the State and South Carolina consumers, defendant is engaging in trade or commerce directly, or indirectly, affecting the people of this State as defined in the SCUTPA.

36. Defendant has repeatedly and willfully engaged in the following conduct which constitutes deceptive trade practices and violations of the SCUTPA:

(a) Defendant knowingly suppressed and concealed from plaintiff, the medical community and end users, truthful and complete efficacy and safety information regarding Vioxx®, particularly comparative information between Vioxx® and traditional NSAIDs;

(b) Defendant provided, disseminated, marketed, and otherwise distributed direct-to-consumer advertising and other information to end-users, physicians, and third-party payors that omitted adequate warnings and suppressed material medical information regarding the use of Vioxx®;

(c) Defendant misrepresented and warranted the safety and efficacy of Vioxx® in its advertising, promotional, safety materials and information disseminated to end-users, physicians, and third-party payors;

(d) Defendant represented that Vioxx® was useful, merchantable, and in compliance with governmental regulations governing prescription medication, when in fact it was not;

(e) Defendant engaged in unconscionable commercial practices in promoting Vioxx® as a drug with a greater safety and efficacy profile as compared to its NSAID competitors when the purported safety and efficacy benefits were unfounded;

(f) Defendant's omissions, misrepresentations, and practices had the tendency, capacity, and likelihood to deceive plaintiff, its end-user insureds and beneficiaries, and their physicians; and/or,

(g) Defendant intended, or consciously disregarded, that plaintiff and end-users would rely on its omissions, misrepresentations, and practices so that plaintiff would authorize the purchase of, and purchase, Vioxx®.

37. The foregoing omissions, misrepresentations, and practices caused the State program payors to suffer ascertainable losses in that they purchased or reimbursed for Vioxx® without knowing the true and complete risks and benefits of Vioxx®, in general, and specifically in comparison to alternative, safer, and significantly less expensive NSAIDs.

38. The State program payors would not have authorized the purchase of Vioxx®;

purchased it on the terms they did; or authorized reimbursements, if they had known the true and complete risks of Vioxx®, in general, and specifically in comparison to alternative, and significantly less expensive, NSAIDs.

39. Defendant's deceptive representations and actions were done for the purpose of inducing consumers to begin and continue to use Vioxx®.

40. As a direct and proximate result of defendant's activities, the State program payors have suffered substantial loss and damages by incurring excessive costs for Vioxx® or paying for Vioxx® purchases rather than less expensive alternatives.

41. Defendant knew and intended that its continuing unlawful conduct, as outlined herein, in suppressing information about Vioxx®, would result in physicians prescribing Vioxx® and would cause thousands of South Carolinians to use Vioxx® to plaintiff's financial detriment.

42. The State seeks restitution to program payors who have suffered losses as a result of the acts an practices alleged in this complaint and any other acts or practices which violate the SCUTPA.

43. Each written Vioxx® prescription resulting from defendant's deceptive sales and marketing practices constitutes a separate and distinct violation of the SCUTPA.

44. The State seeks compensatory damages for all expenditures for Vioxx® which were as a result of defendant's conduct in violation of the SCUTPA together with treble damages, costs, and attorney fees.

WHEREFORE, the State respectfully requests that this Honorable Court enter judgment in its favor, providing relief as follows:

a. Directing defendant to make full restitution to program payors who have suffered losses as a result of the acts and practices alleged in this complaint and any other acts or practices which violate the SCUTPA;

b. Directing defendant to pay compensatory damages for all expenditures for Vioxx® which were as a result of defendant's conduct in violation of the SCUTPA together with treble damages;

c. Directing defendant to pay the State for its cost of investigation and litigation of this action;

d. Attorney fees and costs; and

e. Such further relief as justice and equity may require.

**COUNT II**

**Fraudulent Misrepresentation and/or Suppression**

45. The State incorporates by reference the foregoing allegations as if set forth at length herein.

46. Defendant concealed from plaintiff, physicians, and end-users truthful and complete efficacy and safety information regarding Vioxx®, particularly comparative information between Vioxx® and traditional NSAIDs.

47. Defendant provided, disseminated, marketed, and otherwise distributed advertising and other information to end-users, physicians, and third-party payors, including plaintiff, that omitted adequate warnings and suppressed material medical information regarding the use of Vioxx®.

48. Defendant affirmatively misrepresented the safety and efficacy of Vioxx® in its

advertising, promotional, and safety materials and information disseminated to end-users, physicians and third-party payors including plaintiff.

49. Defendant promoted Vioxx® as a drug with a greater safety and efficacy profile as compared to its NSAID competitors when the purported safety and efficacy benefits were unfounded.

50. The foregoing omissions, misrepresentations, and practices proximately caused plaintiff to suffer damages in that physicians prescribed, end-users consumed, and plaintiff paid for Vioxx®, without knowing the true and complete risks and benefits of Vioxx® in general, and specifically in comparison to alternative, and significantly less expensive, NSAIDs.

51. Defendant intended, or consciously disregarded, that physicians, end-users, and plaintiff would rely on its omissions, misrepresentations, and practices so as to greatly increase the demand for sales of Vioxx®, and that plaintiff would pay for large quantities of Vioxx®.

52. Plaintiff would not have authorized the purchase of Vioxx®, or purchased it in the quantities and on the terms that it did, if plaintiff, its beneficiaries, and their physicians, had known the true and complete risks and benefits of Vioxx®, in general, and specifically in comparison to alternative, and significantly less expensive, NSAIDs.

53. The defendant had superior knowledge and information regarding the truth about Vioxx® and plaintiff did not have access to this information.

WHEREFORE, the State respectfully requests that this Honorable Court enter judgment in its favor and against defendant, for compensatory damages for all expenditures made by plaintiff on behalf of the State's program payors and any other relief as justice may require.

**COUNT III**

**Rescission/Unjust Enrichment**

54. The State incorporates by reference the foregoing allegations as if set forth at length herein.

55. The State conferred a benefit on defendant, and defendant received substantial and unconscionable profits from the sale of Vioxx® in South Carolina as a result of its wrongful conduct.

56. The defendant engaged in wrongful conduct with knowledge that the State would bear the costs of its wrongfully promoted Vioxx®, because defendant knew of and appreciated the benefits that the State's payments conferred on it. Under these circumstances, defendant's acceptance and retention of the benefits from its wrongful conduct would be inequitable, unconscionable and unjust.

WHEREFORE, the State respectfully requests that this Honorable Court enter judgment in its favor, awarding restitution from defendant for the benefits the State conferred on it, and to the extent required by equity to prevent defendant's unjust enrichment as a result of its wrongful and unlawful conduct.

**COUNT IV**

**Submission of False & Fraudulent Claims under Medicaid Program**

57. The State incorporates by reference the foregoing allegations as if set forth at length herein.

58. The State participates in the Medicaid program to promote the general welfare of

its citizens and to meet the specific objective that adequate and high quality health care is available to those South Carolina citizens who cannot afford it.

59. The Medicaid program is governed by individual provisions, by statute and by regulation, concerning reimbursement for prescription drugs, drug utilization review, eligibility of various drugs for federal financial participation ("FFP"), price controls on prescription drugs, and drug manufacturer rebate agreements.

60. A significant percentage of end-users who have used Vioxx® are persons whose prescriptions were paid for in whole or in part by Medicaid.

61. Defendant's aggressive, misleading and fraudulent conduct has resulted in a misallocation of South Carolina Medicaid funds through a pattern of wrongful conduct by causing the State to pay out sums for Vioxx® prescriptions, when equally effective, safer and less expensive prescriptions were available. Defendant's conduct constitutes Medicaid fraud within the meaning of S.C. Code Ann. §43-7-60.

WHEREFORE, the State respectfully requests that this Honorable Court enter judgment in its favor against Defendant and that the State be awarded reimbursement for all expenditures made for non-medically necessary prescriptions of Vioxx®, three times the amount Defendant knowing caused to be submitted for wrongful reimbursement of Vioxx®, two thousand dollars per false claim and such other relief as justice and equity may require.

**REQUEST FOR JURY TRIAL**

The State respectfully requests that all issues presented by its above Complaint be tried before a jury, with the exception of those issues that, by law, must be tried before the court.

Respectfully submitted,

**STATE OF SOUTH CAROLINA**
**OFFICE OF THE ATTORNEY GENERAL**

HENRY D. McMASTER
Attorney General
JOHN W. McINTOSH
Chief Deputy Attorney General
C. HAVIRD JONES, JR.
Senior Assistant Attorney General
Post Office Box 11549
Columbia, South Carolina 29211
(803) 734-3970
(803) 734-3677 Fax
agsjones@ag.state.sc.us

By:

Attorney General

Dated: August 25, 2009
Greenville, South Carolina

COVINGTON, PATRICK, HAGINS, STERN & LEWIS, P.A.

By: _______________________
Eugene C. Covington, Jr.
State Bar No. 1422
Post Office Box 2343
Greenville, South Carolina 29602
(864) 240-5502
(864) 240-5533 Fax
gcovington@covpatlaw.com

August 25, 2009
Greenville, S.C.

**ROE, CASSIDY, COATES & PRICE, P.A.**

By: ______________________
William A. Coates
State Bar No. 1289
Post Office Box 10529
Greenville, South Carolina 29603
(864) 349-2600
(864) 349-0303 Fax
wac@roecassidy.com

Dated: August 25, 2009
Greenville, South Carolina

**JANET, JENNER & SUGGS, LLC**

**By:** ______________________
Kenneth M. Suggs
State Bar No. 5424
500 Taylor Street
Columbia, South Carolina 29201
(410) 653-3200
(410) 653-9030 Fax
ksuggs@medlawlegalteam.com

Dated: August 25, 2009
Greenville, South Carolina