# Exhibit L

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | C.A. # 6:09-cv-02515-HFF |
| COUNTY OF GREENVILLE | ) | |
| | ) | |
| STATE OF SOUTH CAROLINA | ) | |
| Ex rel **Henry McMaster**, in his capacity | ) | |
| as Attorney General of the State of | ) | |
| South Carolina, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MERCK & CO., INC. | ) | |
| | ) | |
| DEFENDANT. | ) | |

## PLAINTIFF STATE OF SOUTH CAROLINA'S MOTION TO REMAND FOR LACK OF SUBJECT-MATTER JURISDICTION

For the reasons stated in the attached Memorandum of Law, the Plaintiff, State of South Carolina, requests that this Court remand this civil action to the Court of Common Pleas. The primary ground for subject-matter jurisdiction of the federal courts asserted by Defendant in the Notice of Removal is federal question jurisdiction. Diversity jurisdiction is unavailable because Plaintiff, as a sovereign state, is not a "citizen" of any state. Defendant urges that a disputed, significant issue of federal law confers jurisdiction.

For the reasons stated in the attached Memorandum of Law, the removal was improper and this case should be remanded to state court.

1

Respectfully submitted,

**STATE OF SOUTH CAROLINA**
**OFFICE OF THE ATTORNEY GENERAL**

By:     s/Henry D. McMaster
        Henry D. McMaster, Attorney General
        Federal Bar No. 2887
        John W. McIntosh
        Chief Deputy Attorney General
        Federal Bar No. 2842
        C. Havird Jones, Jr.
        Senior Assistant Attorney General
        Federal Bar No. 2227
        P.O. Box 11549
        Columbia, SC  29211
        (803) 734-3970 Telephone
        (803) 734-3677 Fax

**COVINGTON, PATRICK, HAGINS,**
**STERN & LEWIS, P.A.**

By:     s/Eugene C. Covington, Jr.
        Eugene C. Covington, Jr
        Federal Bar No. 325
        P.O. Box 2343
        Greenville, SC  29602
        (864) 242-9000 Telephone
        (864) 233-9777 Fax

**ROE, CASSIDY, COATES & PRICE, P. A.**

By:     s/William A. Coates
        William A. Coates
        Federal Bar No. 183
        P.O. Box 10529
        Greenville, SC  29603
        (864) 349-2600 Telephone
        (864) 349-0303 Fax

2

**JANET, JENNER & SUGGS, LLC**

By:    s/Kenneth M. Suggs
       Kenneth M. Suggs
       Federal Bar No. 3422
       500 Taylor Street
       Columbia, SC 29201
       (410) 653-3200 Telephone
       (410) 653-9030 Fax

Dated:  October 2, 2009
Greenville, South Carolina

3

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

STATE OF SOUTH CAROLINA     )
COUNTY OF GREENVILLE     )
    )
STATE OF SOUTH CAROLINA     )    C.A. # 6:09-cv-02515-HFF
Ex rel. Henry McMaster, in his capacity     )
As Attorney General of the State of     )
South Carolina,     )
    )
           PLAINTIFF,     )
    )
v.     )
    )
MERCK & CO., INC.     )
    )
           DEFENDANT.     )

## THE STATE OF SOUTH CAROLINA'S BRIEF IN SUPPORT OF MOTION TO REMAND FOR LACK OF SUBJECT MATTER JURISDICTION

Plaintiff, the State of South Carolina respectfully submits this Memorandum of Law in support of its Motion to Remand pursuant to 28 USC §1447(C).

### STANDARD OF REVIEW

"A party seeking removal bears the burden of establishing the existence of federal jurisdiction. *Mulcahey v. Columbia Organic Chems. Co.,* 29 F.3d 148, 151 (4th Cir. 1994). Because removal jurisdiction raises significant federalism concerns, a district court must strictly construe removal jurisdiction. Id. (citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 61 S. Ct. 868, 85 L. Ed. 1214 (1941)).  Further, if federal jurisdiction is in doubt, remand to state court is necessary. *Mulcahey*, 29 F.3d at 151.  Moreover, when a sovereign State brings a claim, 'considerations of comity make [the Court] reluctant to snatch cases which a State has brought from the courts of that State, unless some clear rule demands it.' *Franchise Tax Bd. V.*

1

*Construction Laborers Vacation Trust*, 463 U.S. 1, 21 n. 22, 103 S. Ct. 2841, 77 L. Ed. 2d 420

(1983)."   *State of South Carolina ex rel. McMaster v. Astra Zeneca*, 2009 U.S. Dist. LEXIS

39174 (D.S.C. May 5, 2009) at *2.

"A foundational principle of federal practice is that a plaintiff is the master of the

complaint. *Johnson v. Advance Am.*, 549 F.3d 932, 937 (4th Cir. 2008) ('The plaintiff is the

master of his complaint, and this generally permits plaintiffs to avoid federal jurisdiction by

exclusive reliance on state law.') (citations omitted).  Likewise, 'a defendant may not defend his

way into federal court because a federal defense does not create a federal question under § 1331.'

*Nordan v. Blackwater Sec. Consulting, LLC*, 460 F.3d 576, 584 (4th Cir. 2006)." *Astra Zeneca.* at

*4.

## ARGUMENT

**I.**     **There is no substantial federal question jurisdiction.**

28 USC §1331 provides the federal courts with jurisdiction over claims "arising under the

constitution, laws or treaties of the United States".  In construing this provision, the Supreme

Court has recognized that it creates federal subject matter jurisdiction when the well-pleaded

complaint establishes either that the federal laws create the cause of action or that the plaintiff's

right to relief necessarily depends on the resolution of substantial questions of federal law.[1]

"This provision for federal-question jurisdiction is invoked, by and large, by plaintiffs pleading a

cause of action created by federal law." *Grable & Sons Metal Products, Inc. v. Darue*

*Engineering & Manufacturing*, 545 U.S. 308, 312 (2005).  In assessing substantiality of a

purported federal interest, *Grable* instructs the court to apply a two-part balancing test.  First,

2

because federal courts are courts of limited jurisdiction and removal jurisdiction is statutory, courts should assess the extent to which exercise of jurisdiction is consistent with Congressional intent. *Id.* at 317. Second, the court should consider the nature of the federal and state interests, and the resulting effect that exercise of jurisdiction would have on the traditional balance of responsibilities between state and federal courts. *Id.*

## A.    Plaintiff's Complaint Does Not Implicate A Contested Federal Issue.

This Court is among the majority of courts that have considered the federal role in the administration of Medicaid that have held that any federal issues raised by such a role are insufficient to confer federal jurisdiction. The decisions underscore that liability in these cases is not premised upon any violation of federal law but will depend solely upon breaches of duties defined and created by state law. "Merck believes those cases are inapposite because in none of them was the question of whether state Medicaid programs must cover on-label prescriptions in dispute." See Footnote #2, p. 9, Notice of Removal of Defendant Merck & Co., Inc.

In *State of South Carolina ex rel. McMaster v. Janssen Pharmaceutica Inc.*, No. 07-1452-HMH, 2007 U.S. Dist. LEXIS 49904 (D.S.C. July 10, 2007), the State of South Carolina filed a complaint stating the following claims: submission of false and fraudulent claims under the Medicaid program pursuant to *S.C. Code Ann. §43-7-60*; recovery of treatment costs caused by the Defendants' product as parens patrieae, or alternatively, for violation of the South Carolina Unfair Trade Practices Act; negligence; breach of warranty; fraud and misrepresentation; and unjust enrichment. Removal was premised on federal questions regarding the meaning and application of the federal term "medically accepted indication." District Court

---

[1] *Merrell-Dow Pharmaceuticals Inc v Thompson,* 478 US 804, 807 n 2; *Franchise Tax Board of Calif v*

Judge Henry Herlong granted remand finding that no *substantial* federal issue indicating a

serious federal interest in claiming the advantages thought to be inherent in a federal forum.

Moreover, Judge Herlong found no legal significance to the "off-label" use of the

prescriptive drug in the jurisdictional analysis. Instead, he found that "[t]he Defendant's liability

will solely depend upon their respective breach of duties as defined and created by state law.

'Simply put, it is not the act of causing the submission of a claim for a non-medically accepted

indication that creates liability under the state law causes of action, but rather the act of causing

the submission of a false or fraudulent claim.'" In fact, Judge Herlong indicated the off-label use

was immaterial to the liability claim. The Defendants' liability would be premised not on the

promotion of the drug for off-label use, but the alleged intentional misrepresentation of the

drug's efficacy and risks for such uses.

In *State of South Carolina ex rel. McMaster v. Eli Lilly & Co., Inc.*, No. 07-1875-HMH,

2007 U.S. Dist. LEXIS 56847 (D.S.C. Aug. 3, 2007), another false and fraudulent claims

complaint was brought by this State against a pharmaceutical manufacturer. The claims

enumerated in the complaint were identical to the *Janssen* litigation. Lilly removed the case

arguing two additional federal questions: whether Lilly violated the FDCA by allegedly

marketing Zyprexa for non-approved uses and whether the FDA would have allowed Lilly to re-

write Zyprexa's FDA-approved label to reflect what the State alleged the label should have

stated regarding the risk of diabetes. Lilly maintained that a federal issue was presented by the

complaint as to whether the prescriptions that the State alleges should not have been reimbursed

were in fact authorized by and required to be covered under the federal Medicaid law.

---

*Construction Laborers Vacation Trust for Southern Calif*, 463 US 1, 27-28 (1983)

4

Nevertheless, this District Court found no substantial federal question that would justify a finding of federal jurisdiction. Judge Herlong noted that even "if the State proves at trial that Lilly violated the Federal Medicaid Act, it would not necessarily follow that Lilly committed Medicaid fraud as defined" in the South Carolina statutes.

In *State of South Carolina ex rel. McMaster v. Astra Zeneca  Pharmaceuticals, LP,* No. 09-387-HFF, 2009 U.S. Dist. LEXIS 39174 (D.S.C. May 5, 2009), the State alleged causes of action for false and fraudulent claims under the Medicaid program, violations of the South Carolina Unfair Trade Practices Act, negligence, breach of warranty, fraud and misrepresentation and unjust enrichment. Defendants contended that the Court could not address the merits of the Plaintiff's state law claims without substantially examining portions of the FDCA, the Food and Drug Administration Modernization Act ("FDAMA") and the federal Medicaid statute. Contrary to the contentions of the Defendants, this Court agreed with both remand decisions issued by Judge Herlong finding that the Complaint as pled by the State, "is not about violations of federal law regarding off-labeling….In this case, Plaintiff's complaint asserts that Defendants committed Medicaid fraud by intentionally promoting non-medically necessary uses of Seroquel, which resulted in additional costs to the State through its Medicaid reimbursement to pharmacies. This claim arises under state law, and, as pled, has little, if anything, to do with 'off-label' uses as that term is defined in federal law."  Id. at *3-4.

The Claims filed by the State in this action are state claims identical to most of the claims involved in *Janssen, Eli Lilly,* and *Astra Zeneca* (violation of the South Carolina Unfair Trade Practices Act; fraudulent misrepresentation and/or suppression; rescission/unjust enrichment; and submission of false and fraudulent claims under the South Carolina Medicaid

program pursuant to *S.C. Code Ann. § 43-7-60*).  The Defendant's liability will solely depend upon its respective breach of duties as defined and created by state law.

Plaintiff's Complaint alleges that this litigation "arises from defendant's marketing, advertising, promotion, and sale of the prescription drug Vioxx®, an anti-inflammatory drug and pain reliever containing rofecoxib."  (Compl. ¶ 9.)  "Defendant misrepresented and concealed material safety information from end-users, physicians, and third-party payors such as the State program payors, concerning the cardiovascular and gastrointestinal risks associated with Vioxx®."  (Compl. ¶ 10.)  "Additionally, defendant, in aggressively marketing Vioxx® made false and intentionally misleading representations and omitted material facts, regarding the comparative safety and efficacy of Vioxx® as compared to traditional non-steroidal anti-inflammatory drugs (NSAIDs).  (Compl. ¶ 11.)  Specific allegations are directed to the Defendant's conduct that would violate the South Carolina Unfair Trade Practices Act.  (Compl. ¶ 36.)

*Grable*'s requirement that the federal issue form an essential element of the Plaintiff's claim finds it root in the well-pleaded complaint rule.  Under the well-pleaded complaint rule, federal question jurisdiction must be determined by reference to the well-pleaded complaint and cannot be supported by a defense that raises a federal issue.[2]  *Grable* did not in any manner dispatch the requirements that federal jurisdiction be determined by reference to the complaint.[3]  To the extent that the cited Medicaid statute has any relevance in this case, it can have relevance only as a defensive matter for Merck, and not as an essential element of the South Carolina's

---

[2] *Merrell-Dow*, 478 US at 808; *Franchise Tax Board*, 463 US at 10-11.

claim. Since federal question jurisdiction cannot be asserted on the basis of a defense, this Court

should not rely on the potential application of the Medicaid statute to justify its jurisdiction in

this case. South Carolina's claims are not premised on the violation of a federal Medicaid statute

but premised solely on violation of specific sections of South Carolina's Medicaid False Claims

Act, and other state laws. Thus, Medicaid statute cannot support the assertion of federal question

jurisdiction in this case. Such a view is in accord with numerous cases which have rejected

issues relating to the Medicaid statute as a basis for federal question jurisdiction.[4]

Just as in *Janssen, Eli Lilly* and *Astra Zeneca,* the Defendant's liability will be premised

on the intentional misrepresentation of the drug's efficacy and risks for such uses. Plaintiff's

Complaint does not implicate a contested federal issue and therefore cannot support this Court's

exercise of federal question jurisdiction.

**B.      Plaintiff's Complaint Does Not Implicate A Sufficiently Substantial Federal Interest.**

Under *Grable*, "federal jurisdiction demands not only a contested federal issue, but a

substantial one, indicating a serious federal interest in claiming the advantages thought to be

inherent in a federal forum." 545 U.S. at 313. "Even when the state action discloses a contested

and substantial federal question, the exercise of federal jurisdiction is subject to a possible veto.

For the federal issue will ultimately qualify for a federal forum only if federal jurisdiction is

---

[3] *Grable*, 125 S Ct at 2368 (referring to *Grable*'s complaint to define the federal issue); *Commonwealth of Kentucky v Cibahia Tabacos Especias Limitada*, 2005 WL 1868808*2 (ED Ky 2005)(recognizing that *Grable* does not allow the assertion of federal question jurisdiction on the basis of a defense).
[4] *State of Minnesota v Pharmacia Corp*, 2005 WL 2739297*3-4 (D Minn 2005)(rejecting federal question jurisdiction in action filed by the state of Minnesota under its consumer fraud statute alleging that defendants inflated average wholesale price as defined by Medicare statute); *State of Wisconsin v Abbott Laboratories*, 390 F Supp 2d 815 (WD Wis 2005)(rejecting federal question jurisdiction in case alleging fraud based on pharmaceutical charges in excess of the average wholesale price): *State of New York v Lutheran Center for the Aging*, 957 F Supp 393, 398-401 (EDNY 1997)

consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331." *Id.*

In assessing the substantiality of a purported federal interest, *Grable* mandates a two prong balancing test: 1) courts should assess the extent to which exercise of jurisdiction is consistent with Congressional intent, and 2) courts should consider the nature of the state and federal interests, and the resulting effect the exercise of jurisdiction would have on the traditional balance of responsibilities between state and federal courts.

### 1.    Removal of this case is inconsistent with Congressional intent.

The Supreme Court undertook a thorough analysis of the importance of Congressional intent in assessing federal jurisdiction in *Merrell Dow*.  Among other claims, the plaintiff asserted a state negligence per se claim based upon defendant's alleged violation of the misbranding prohibition in the Food Drug & Cosmetics Act ("FDCA").  478 U.S. at 805-806. The FDCA does not create a private cause of action for violation of the misbranding provision. *Id.* at 810.  The Supreme Court considered whether this omission by Congress indicated federal jurisdiction is inappropriate in state tort actions that implicate federal law as a standard for liability.  *Id.* at 805-806.

The Court found that the mere presence of a federal standard embedded in a state law cause of action is not enough to warrant federal question jurisdiction.  In reaching this conclusion the Court noted, "the significance of the necessary assumption that there is no federal private cause of action...cannot be overstated."  *Id.* at 812.  The Court concluded, "the Congressional determination that there should be no federal remedy for the violation of this federal statute is tantamount to a Congressional conclusion that the presence of a claimed violation of the statute

8

as an element of a state cause of action is insufficiently 'substantial' to confer federal question jurisdiction." *Id.* at 814.

There is no federal private cause of action in the federal Medicaid legislation or the FDCA. Congress requires states to seek recovery of Medicaid funds from liable third parties. 42 U.S.C. §1396a(a)(25). Taken together, these two facts are compelling evidence of Congressional determination that §1331 does not encompass State Medicaid recovery actions. The significance of this facet of the jurisdictional question determination is lucid in this Court's prior decision:

> "In general, 'the absence of a federal private right of action [is] evidence relevant to, but not dispositive of, the sensitive judgments about congressional intent that § 1331 requires.' [*Grable*] at 318. (internal quotation marks omitted). However, in contrast to the facts in *Grable*, a finding of federal jurisdiction over any state cause of action implicating the provisions of the Federal Medicaid Act and its accompanying regulations could 'attract[] a horde of original filings and removal cases raising other state clams with embedded federal issues.' *Id.* Under these circumstances, the fact that Congress provided no private right of action in the Federal Medicaid Act presents compelling evidence that a finding of federal jurisdiction in the instant case would not be 'consistent with congressional judgment about the sound division of labor between state and federal courts.' *Id.* at 313.
>
> Further supporting this finding is the fact that the Federal Medicaid Act requires states to seek recovery of Medicaid funds from liable third parties. *42 U.S.C. § 1396a(a)(25). (West Supp. 2007); see New York v. Lutheran Center for the Aging, Inc., 957 F.Supp. 393, 403 (E.D.N.Y. 1997)* ('Where a federal statute such as Medicaid requires a stat to enforce liability against a third party but does not provide the ground for that liability, nor require establishment of a ground for the liability, federal question jurisdiction will not lie.') Therefore, a finding of federal jurisdiction in the instant case would not be 'consistent with congressional judgment about the sound division of labor between state and federal courts.' *Grable*, 545 U.S. at 313." *Janssen* at *3

Merck contends that federal question jurisdiction exists since South Carolina's claims are implicitly based on Merck's failure to comply with the Food, Drug and Cosmetic Act ("FDCA"). The Supreme Court rejected this argument in *Merrell-Dow*. In *Merrell-Dow*, the plaintiffs filed

suit against *Merrell-Dow* for injuries resulting from the ingestion of Benedictine.  Their claims

were based on common law theories of negligence, breach of warranty, strict liability, fraud, and

gross negligence.  In addition, they alleged that the drug Benedictine was misbranded in

violation of the Federal Food & Drug Cosmetic Act because its warning was inadequate.

*Merrell-Dow* removed the case alleging the existence of federal question jurisdiction based on

the FDCA allegation.  The district court denied the plaintiff's motion for remand and then

dismissed the case on the grounds of forum *non conveniens*.  On appeal, the Sixth Circuit

reversed and held that the trial court lacked federal question jurisdiction.  The Supreme Court

granted certiorari and affirmed, also concluding that the trial court lacked federal question

jurisdiction.

The Supreme Court also rejected the argument that federal question jurisdiction is

appropriate when it appears that some substantial disputed question of federal law is a necessary

element of one of the state claims, holding instead that the determination by Congress that there

should be no federal cause of action under the FDCA was tantamount to a determination by

congress that the claimed violations of the statute were not sufficiently substantial questions of

federal law so as to support the exercise federal question jurisdiction.[5]

In *Grable*, the court embraced *Merrell-Dow*'s refusal to assert federal question

jurisdiction in pharmaceutical cases based upon the FDCA and explained that "…the

combination of no federal cause of action and no pre-emption of state remedies for misbranding

---

[5] *Merrell-Dow*, 478 US at 814.

as an important clue to Congress' conception of the scope of jurisdiction to be exercised under §1331."[6]

*Merrell-Dow* and *Grable* require rejection of Merck's argument that the FDCA creates federal jurisdiction in this case. In *Merrell-Dow*, the plaintiffs alleged that violations of the FDCA created a rebuttable presumption of negligence. South Carolina's complaint contained no such allegation. South Carolina's complaint seeks recovery under South Carolina statutes and South Carolina common law. Accordingly, *Merrell-Dow* does not support a finding of federal question subject matter jurisdiction in this case.

Merck also relies on *In re Zyprexa Product Liability Litigation*,[7] to support its argument that the FDCA provides federal question jurisdiction. In *Zyprexa*, the district court held that *Grable* did not explicitly overrule *Merrell-Dow* requiring district courts to determine whether *Merrell-Dow* should be distinguished on its facts from other cases alleging FDCA violations.[8] However, the *Zyprexa* decision provided no analysis as to whether the violation of the FDCA was an essential element of the plaintiff's claim or whether it presented a substantial and disputed question of law as required by both *Merrill Dow* and *Grable*.

More significantly, the *Zyprexa* litigation involved not only whether the state law claims raised substantial issues of federal law but also whether the state claims were preempted by federal law; an issue that is not raised in this litigation. Moreover, the *Zyprexa* Court recognized there was a split in authority in the determination of federal jurisdiction: "There is a split of authority on the matter. (citations omitted). The federal district courts in Utah, South Carolina,

---

[6] *Grable*, 125 S Ct at 2370-2371.
[7] *In re Zyprexa Product Liability Litigation*, 375 F Supp 2d 170 (EDNY 2005).
[8] *Zyprexa*, 375 F Supp 2d at 172-173.

Alaska and Pennsylvania have remanded virtually identical cases to the respective state courts

where they were originally filed.  *** The well-reasoned opinion of the Pennsylvania court, as

adopted by the South Carolina and Utah courts, represents a clear difference of opinion.

According to the Pennsylvania court:

> "First, the term "medically accepted indication' is used in the Complaint
> merely as a common standard that delimits the Medicaid fraud claim, but does not
> alone present a disputed federal issue. Even if the term itself is disputed, it does
> not define the entire scope of permissible conduct under the Pennsylvania
> Medicaid statute, the PACE statute, or the common law claims. Simply put, it is
> not the act of causing the submission of a claim for a non-medically accepted
> indication that creates liability under the state law causes of action, but rather the
> act of causing the submission of a false or fraudulent claim. A false or fraudulent
> claim may or may not be submitted for a medically accepted indication.
>
> Similarly, the Commonwealth's allegation that the Defendants failed to
> adequately warn Medicaid and Pace participants of the risks associated with their
> respective drug turns not on a violation of federal labeling standards, but on a
> violation of Pennsylvania common law. Thus the Commonwealth's claims in this
> case, as in *Empire [Healthchoice Assurance, In. v. McVeigh*, 547 U.S. 677, 126 S.
> Ct. 2121, 165 L. Ed. 2d 131, (2006)] are 'fact bound' and 'situation-specific,' and
> unlike the allegations in *Grable*, where the meaning of a federal statute was both
> disputed and an essential element of the plaintiff's state law cause of action, the
> allegations presented here do not turn on the interpretation of federal law. Rather,
> as previously noted, the central disputes in this case are factual."

*Zyprexa*, 2008 U.S. Dist. LEXIS 10355*10-13, (citing *Pennsylvania v. Eli Lilly & Co.*, 511 F.

Supp. 2d 576, 582-83 (E.D. Pa. 2007).

### 2.    The resulting effect the exercise of jurisdiction would have on the traditional balance of responsibilities between state and federal courts.

Assessing the impact of exercising federal jurisdiction on federalism takes on greater

importance when the claim removed is brought by a sovereign State.  *See Franchise Tax Bd. Of

Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S.1, 21-22. "Considerations of

comity make us reluctant to snatch cases which a State has brought from the Courts of that State'

unless some clear rule demands it." *Id.* at 21 n.22.  Particularly where a State seeks to vindicate

it own rights by pursuing claims for the recovery of money paid previously by the State on

behalf of Medicaid participants, the balance tilts heavily in favor of State adjudication.  *See State*

*of Missouri ex re. Nixon v. Mylan Labs., Inc.,* No. 4:06CV603 HEA, 2006 WL 1459772, at *3

(E.D. Mo. May 23, 2006) (stating that "the state interests involved, and the recovery of state

funds heavily tilts the balance in favor of state adjudication" where plaintiffs sought to vindicate

state's rights and pursued recovery of allegedly fraudulent payments made by a state on behalf of

Medicaid recipients); *See Wisconsin v. Abbott Labs.,* 390 F. Supp.2d 815, 823-824.

      Any argument that federal interest in uniform interpretation of the Medicaid Act and the

FDCA necessitates the exercise of federal jurisdiction is explicitly rebuked by *Merrell Dow.  See*

478 U.S. AT 816. There, the Court found that concerns over uniform interpretation of federal

law are "considerably mitigated by the fact that, even if there is no original district court

jurisdiction for these kinds of actions, this Court retains power to review the decision of a federal

issue in a state cause of action." *Id.*

## II.    There is no federal jurisdiction pursuant to the Class Action Fairness Act ("CAFA")

      Merck claims removal is proper pursuant to the Class Action Fairness Act ("CAFA"), 28

U.S.C. § 1332(d), et. seq.   This action is brought by the state to recover monies the state has

overpaid as a result of Merck's deception.  Thus, the state is the real party at interest in this

litigation, and CAFA is not applicable to this matter.

      Merck claims the state "makes allegations from which it can be <u>inferred</u> that it seeks

damages on behalf of its citizens and third-party payors" (Def.'s Memo. ¶ 29).  Merck argues

that the citizens who suffered adverse health effects from Vioxx and the state's program payors

are the real parties at interest.  Yet, the Complaint does not seek damages for any individual who may have suffered harm as a result of ingestion of Vioxx, and the state's program payors are agencies of the state.

The state's Complaint clearly states "The South Carolina state agencies, collectively referred to as the 'South Carolina program payors' have paid for Vioxx prescriptions through programs, including, but not limited to, South Carolina Medicaid and State Employee Insurance Program" (Comp. ¶ 8).  The Complaint further states that "the state program payors paid vastly more for Vioxx than they would have paid for equally effective but safer medications (approximately 800% more than equally efficacious and safer NSAIDs such as Naproxen)" (Comp. ¶ 14).  The Complaint then outlines the scheme concocted by the defendant and seeks damages to the state:

(1)     For violation of the South Carolina Unfair Trade Practices Act ("SCUTPA") ("the state program payors would not have authorized the purchase of Vioxx; purchased it on the terms they did; or authorized reimbursements, if they had known the true and complete risk of Vioxx, in general, and specifically in comparison to alternative, and significantly less expensive, NSAIDs") (Comp. at Para. 38);

(2)     For fraudulent misrepresentation and/or suppression ("Plaintiff paid for Vioxx without knowing the true and complete risk and benefits of Vioxx in general, and specifically in comparison to alternative, and significantly less expensive, NSAIDs") (Comp. at Para. 50);

(3)     For rescission/unjust enrichment ("Defendant engaged in wrongful conduct with knowledge that the state would bear the cost of its wrongfully promoted Vioxx") (Comp. at Para. 56); and

(4)     For false Medicaid claims ("Defendant's aggressive, misleading and fraudulent conduct has resulted in a misallocation of South Carolina Medicaid funds through a pattern of wrongful conduct by causing the state to pay out sums for Vioxx prescriptions … ") (Comp. at Para. 61). At the conclusion of each count in the Complaint, the state requests that the Court enter judgment in _its_ favor.  Nowhere in the Complaint does the state ask for judgment on behalf of any individual citizen nor can such an allegation be reasonably inferred.  The state only asks judgment in its favor, as the program payors are all state agencies.

Defendant's reliance on *Louisiana v. Allstate Insurance Co.*, 536 F.3d 418 (5th Cir. 2008) is misplaced.  In that case, the Attorney General of Louisiana brought suit against a number of insurance companies and others, alleging that the defendants conspired and suppressed competition in insurance and related industries in violation of the Louisiana Monopolies Act. The district court ruled that the state's request for treble damages inured only to the benefit of individual policyholders.  A divided panel of the Fifth Circuit agreed, finding that the relief in the Monopolies Act operated only in favor of the policyholders and, as such, the policyholders were the real parties in interest.  This case stands in stark contrast to *Louisiana*.  Here, it is the state and its agencies who have overpaid for Vioxx as a result of the misrepresentations and suppression of information about true properties (or lack thereof) of this drug.  It is the state alone which is attempting to recover the damages suffered by its agencies at the hands of the defendant.

15

To bring a *parens patrieae* action, a state must be asserting an interest that relates to its sovereignty.  In other words, "it must articulate an interest apart from the interest of particular private parties, i.e. the state must be more than a nominal party."  *Alfred L. Snapp & Son v. Puerto Rico, ex. rel. Barez*, 458 U.S. 592, 607 (1982).  Here, the only interest articulated by the state is its own interest in recovering monies overpaid by state agencies for Vioxx, as well as additional penalties available to the state under South Carolina statutory and common law.  This suit in no way involves any private interest.  It is neither a class action nor a mass action under CAFA.  Accordingly, this basis for removal fails.

## CONCLUSION

Inasmuch as Merck has failed to satisfy the requisites of federal question jurisdiction, this Court should remand this case to the Greenville County Circuit Court.


Respectfully submitted,


**STATE OF SOUTH CAROLINA
OFFICE OF THE ATTORNEY GENERAL**

By:    s/Henry D. McMaster
      Henry D. McMaster, Attorney General
      Federal Bar No. 2887
      John W. McIntosh
      Chief Deputy Attorney General
      Federal Bar No. 2842
      C. Havird Jones, Jr.
      Senior Assistant Attorney General
      Federal Bar No. 2227
      P.O. Box 11549
      Columbia, SC  29211
      (803) 734-3970 Telephone
      (803) 734-3677 Fax

COVINGTON, PATRICK, HAGINS,
STERN & LEWIS, P.A.

By:    s/Eugene C. Covington, Jr.
        Eugene C. Covington, Jr
        Federal Bar No. 325
        P.O. Box 2343
        Greenville, SC  29602
        (864) 242-9000 Telephone
        (864) 233-9777 Fax

ROE, CASSIDY, COATES & PRICE, P. A.

By:    s/William A. Coates
        William A. Coates
        Federal Bar No. 183
        P.O. Box 10529
        Greenville, SC  29603
        (864) 349-2600 Telephone
        (864) 349-0303 Fax

JANET, JENNER & SUGGS, LLC

By:    s/Kenneth M. Suggs
        Kenneth M. Suggs
        Federal Bar No. 3422
        500 Taylor Street
        Columbia, SC  29201
        (410) 653-3200 Telephone
        (410) 653-9030 Fax

Dated:  October 2, 2009
Greenville, South Carolina

17

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF SOUTH CAROLINA

### GREENVILLE DIVISION

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA ex rel. Henry McMaster, in his capacity as Attorney General of the State of South Carolina, | ) ) ) ) ) | Civil Action No.  6:09-cv-2515-HFF |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| MERCK & CO., INC., | ) ) | |
| Defendants. | ) ) | |

## <u>DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND FOR LACK OF SUBJECT MATTER JURISDICTION</u>

## TABLE OF CONTENTS

Page

INTRODUCTION ............................................................................................................ 1

BACKGROUND .............................................................................................................. 3

ARGUMENT ................................................................................................................... 4

I.   THIS COURT SHOULD PERMIT JUDGE FALLON TO ADDRESS REMAND
     MOTIONS IN A COORDINATED FASHION .................................................... 4

II.  THE COMPLAINT CONFERS JURISDICTION UPON THIS COURT UNDER
     THE SUBSTANTIAL FEDERAL QUESTION DOCTRINE ............................. 6

     A.   Plaintiff's Claims Require Resolution of Disputed, Complex Federal
          Questions Of Medicaid Law ...................................................................... 6

          1.   Plaintiff's Claim For A Refund Of Medicaid Money Turns On A
               Dispute Over The Interpretation Of Federal Statutes And
               Regulations Governing State Medicaid Prescription Drug
               Coverage ......................................................................................... 6

          2.   Exercising Jurisdiction In This Case Will Not Cause Any Drastic
               Shift Of Medicaid Fraud Cases From State To Federal Court ............... 12

     B.   Plaintiff's Claims Raise Substantial Issues Of Drug Regulation That
          Require The Uniform Exercise Of Federal Jurisdiction ..................................... 13

          1.   Plaintiff's Complaint Raises Substantial Disputed Federal
               Questions Under The FDCA ............................................................. 13

          2.   Exercising Federal Jurisdiction Over Plaintiff's FDCA-Related
               Claims Will Not Shift The Federal-State Judiciary Balance ................... 16

     C.   Plaintiff's Challenges To Substantial Federal Question Jurisdiction Fail ........... 17

          1.   The "Well-Pleaded Complaint" Rule Is Not Relevant. ........................... 17

          2.   The Cases Plaintiff Cites Remanding Cases Against Other Drug
               Companies Are Inapposite ................................................................ 18

          3.   Plaintiff's Assertions Of Congressional Intent Support The
               Exercise of Substantial Federal Question Jurisdiction ......................... 21

          4.   Comity Does Not Warrant Remand ..................................................... 22

III. THIS COURT INDEPENDENTLY HAS JURISDICTION OVER PLAINTIFF'S
     CLAIMS UNDER THE CLASS ACTION FAIRNESS ACT ............................. 24

CONCLUSION ............................................................................................................... 26

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Bd. of Trs. of the Teachers' Ret. Sys. of Ill.*,
    244 F. Supp. 2d 900 (N.D. Ill. 2002) ................................................................................ 5

*Caldwell v. Allstate Ins. Co.*,
    536 F.3d 418 (5th Cir. 2008) ......................................................................................... 25

*Cardizem CD Antitrust Litig.*,
    481 F.3d 355 (6th Cir. 2007) ......................................................................................... 23

*County of Santa Clara v. Astra USA, Inc.*,
    401 F. Supp. 2d 1022 (N.D. Cal. 2005) ................................................................... passim

*Drawhorn v. Qwest Commc'ns Int'l, Inc.*,
    121 F. Supp. 2d 554 (E.D. Tex. 2000) ........................................................................... 14

*Edmunds v. Levine*,
    417 F. Supp. 1323 (S.D. Fla. 2006) ................................................................................. 8

*Empire Healthchoice Assurance, Inc. v. McVeigh*,
    547 U.S. 677 (2006) ..................................................................................................... 21

*First State Sav. & Loan v. Phelps*,
    385 S.E.2d 821 (S.C. 1989) .......................................................................................... 11

*Franchise Tax Board of California v. Construction Laborers Vacation Trust for Southern
California*,
    463 U.S. 1 (1983) ......................................................................................................... 23

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*,
    545 U.S. 308 (2005) ................................................................................................. passim

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*,
    No. MDL 1361, 2001 WL 64775 (D. Me. Jan. 26, 2001) ................................................. 23

*In re Ivy*,
    901 F.2d 7 (2d Cir. 1990) ............................................................................................... 5

*In Re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*,
    488 F.3d 112 (2d. Cir. 2007) ......................................................................................... 22

*In re Mid-Atlantic Toyota Antitrust Litig.*,
    605 F. Supp. 440 (D. Md. 1984) .................................................................................... 23

*In re Vioxx Prods. Liab. Litig.*,
    360 F. Supp. 2d 1352 (J.P.M.L. 2005) ............................................................................. 3

*In re Zyprexa*,
    375 F. Supp. 2d 170 (2005) ..................................................................................... 15, 23

*Jackson v. Johnson & Johnson, Inc.*,
    No. 01-2113 DA, 2001 U.S. Dist. LEXIS 22329 (W.D. Tenn. Apr. 2, 2001) ......................... 5

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Merrell Dow Pharmaceuticals Inc. v. Thompson*,
    478 U.S. 804 (1986)..................................................................................................... 13, 15, 16

*Michigan ex rel. Cox v. Merck & Co., Inc.*,
    No. 8-918-RJJ (W.D. Mich. Jan. 16, 2009) ............................................................... 10

*Minnesota v. Pharmacia Corp.*,
    No. 05-1395 (PAM/JSM), 2005 U.S. Dist. LEXIS 27638 (D. Minn. Oct. 22, 2005) ........ 20, 21

*Missouri ex rel. Nixon v. Mylan Labs., Inc.*,
    No. 4:06CV603 HEA, 2006 U.S. Dist. LEXIS 32570 (E.D. Mo. May 23, 2006).................... 20

*Montana ex rel. McGrath v. Eli Lilly & Co.*,
    Nos. 04-MD-1596, 07-CV-1933 (JBW), 2008 U.S. Dist. LEXIS 10355 (E.D.N.Y. Feb. 12,
    2008) ......................................................................................................................... 9, 10, 16

*Montana ex rel. McGrath v. Eli Lilly & Co.*,
    Nos. 04-MD-1596, 07-CV-1933 (JBW), 2008 U.S. Dist. LEXIS 10355 (E.D.N.Y. Feb. 12,
    2008) ......................................................................................................................... 9

*Morgan County War Memorial Hospital v. Baker*,
    314 Fed. App'x. 529 (4th Cir. 2008) ....................................................................... 12

*Municipality of San Juan v. Corporación para el Fomento Económico de la Ciudad Capital*,
    415 F.3d 145 (1st Cir. 2005)..................................................................................... 11

*Nat'l Credit Reporting Ass'n v. Experian Info. Solutions, Inc.*,
    No. C 04-01661 WHA, 2004 U.S. Dist. LEXIS 17303 (N.D. Cal. July 21, 2004) .................. 14

*New Mexico v. Eli Lilly & Co.*,
    04-MD-1596, 07-CV-01749 (JBW/RLM), 2009 U.S. Dist. LEXIS 20768 (E.D.N.Y. Mar. 11,
    2009) ......................................................................................................................... 9

*New York v. Lutheran Ctr. for Aging*,
    957 F. Supp. 393 (E.D.N.Y. 1997) ........................................................................... 20

*Nicodemus v. Union Pac. Corp.*,
    440 F.3d 1227 (10th Cir. 2006) ............................................................................... 11, 12

*Niggel Assocs., Inc. v. Polo's of N. Myrtle Beach, Inc.*,
    374 S.E.2d 507 (S.C. Ct. App. 1988)....................................................................... 11

*Pennsylvania v. Eli Lilly & Co., Inc.*,
    511 F. Supp. 2d 576 (E.D. Pa. 2007) ....................................................................... 18, 19

*Pullman Co. v. Jenkins*,
    305 U.S. 534 (1939).................................................................................................. 26

*South Carolina ex rel. McMaster v. AstraZeneca Pharmaceuticals LP*,
    No. 09-387-HFF, 2009 U.S. Dist. LEXIS 39174 (D.S.C. May 5, 2009)............................ 5, 19

## TABLE OF AUTHORITIES
(continued)

Page(s)

*Southpointe Villas Homeowners Ass'n, Inc. v. Scottish Ins. Agency, Inc.,*
213 F. Supp. 2d 586 (D.S.C. 2002).................................................................... 25

*State of South Carolina ex rel. McMaster v. Eli Lilly & Co.,*
No. 07-1875-HMH, 2007 U.S. Dist. LEXIS 56847 (D.S.C. Aug. 3, 2007) ............ 19

*State of South Carolina ex rel. McMaster v. Janssen Pharma. Inc.,*
No. 07-1452-HMH, 2007 U.S. Dist. LEXIS 49904 (D.S.C. July 10, 2007) ............ 19

*Texas v. Merck & Co., Inc.,*
385 F. Supp. 2d 604 (W.D. Tex. 2005) .............................................................. 10

*United Food and Commercial Workers Union Local 751 v. Brown Group, Inc.,*
517 U.S. 544 (1996).......................................................................................... 24

*Wash. Legal Found. v. Henney,*
202 F.3d 331 (D.C. Cir. 2000)........................................................................... 13

*West Virginia ex rel. McGraw v. Eli Lilly & Co.,*
476 F. Supp. 2d 230 (E.D.N.Y. 2007) ......................................................... passim

*Wisconsin v. Abbott Labs.,*
390 F. Supp. 2d 815 (W.D. Wis. 2005) .............................................................. 20

**Statutes**

21 U.S.C. § 331(a) ................................................................................................. 13

21 U.S.C. § 331(d) ................................................................................................. 13

21 U.S.C. § 335 ...................................................................................................... 13

21 U.S.C. § 371(a) ................................................................................................. 16

28 U.S.C. § 1332(d) ............................................................................................... 24

28 U.S.C. § 1332(d)(1)(B) ...................................................................................... 24

42 U.S.C. § 1396a(a)(25) .................................................................................. 21, 22

42 U.S.C. § 1396r-8 ............................................................................................... 18

42 U.S.C. § 1396r-8(d) .................................................................................... 7, 8, 22

42 U.S.C. § 1396r-8(d)(1) ........................................................................................ 8

42 U.S.C. § 1396r-8(d)(1)(A) ............................................................................... 8, 9

42 U.S.C. § 1396r-8(d)(1)(B)(iv) .............................................................................. 9

42 U.S.C. § 1396r-8(d)(2) ........................................................................................ 9

42 U.S.C. § 1396r-8(k)(6) ........................................................................................ 8

S.C. Code § 39-5-50(b)........................................................................................... 24

iv

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

S.C. Code Ann. § 39-5-140(a) .................................................................... 11

S.C. Code Ann. § 43-7-60(B) .................................................................... 11

**Other Authorities**

21 C.F.R. § 200 .................................................................................... 16

v

## INTRODUCTION

Defendant Merck & Co., Inc. ("Merck") respectfully submits this opposition to Plaintiff's

motion to remand. As set forth below, the Court should stay this case and defer a ruling on the

motion for remand pending MDL transfer. Alternatively, the motion should be denied.

*First*, as set forth in greater detail in Merck's motion for a stay, the Court should stay this

case pending transfer to the Vioxx® multidistrict litigation ("MDL") proceeding or,

alternatively, defer ruling on the motion to remand pending transfer. The same kinds of

jurisdictional issues raised by Plaintiff's motion are likewise at issue in over a dozen cases

brought by state attorneys general (and other government entities) pending before Judge Eldon E.

Fallon (E.D. La.), who is presiding over the MDL proceeding. This Court should follow the

course recommended by the Judicial Panel on Multidistrict Litigation ("Panel" or "JPML") under

these circumstances and enter a stay pending MDL transfer. That approach furthers the goals of

the MDL statute, ensuring both consistent rulings and an efficient use of judicial resources. The

vast majority of federal judges facing remand motions in Vioxx-related cases have stayed them

pending transfer.

Plaintiff's only answer is that this Court has previously ruled on a motion to remand

pending transfer in a case challenging "off-label" prescriptions. Unlike that case, however, the

present case involves over a dozen cases brought by governmental agencies that are already

pending in the MDL—each of which raises highly similar jurisdictional issues. Nor was it a case

involving novel jurisdictional issues under, *inter alia*, the Class Action Fairness Act ("CAFA"),

28 U.S.C. § 1332(d), which require consistent treatment. This Court should follow the

prevailing rule under these circumstances and enter a brief stay pending transfer.

*Second*, even if the Court considers Plaintiff's jurisdictional challenges on the merits, it

should reject those challenges and deny Plaintiff's motion. Plaintiff's motion to remand should

be denied because substantial federal question jurisdiction exists in this case.  Plaintiff seeks

recovery on the theory that Merck's alleged failure to disclose risks associated with Vioxx

caused it to pay for Vioxx prescriptions through South Carolina's Medicaid program.  In order to

prove the necessary causal link between Merck's alleged misconduct and Plaintiff's coverage of

Vioxx, Plaintiff must show as part of its case-in-chief that federal Medicaid law would have

allowed it to exclude on-label Vioxx prescriptions, creating a substantial federal question whose

resolution will be essential in resolving Plaintiff's claims.  Indeed, Plaintiff's own assertion that

it is *obligated* under federal law to seek reimbursement from liable third parties under the

Medicaid statute demonstrates that the Complaint substantively arises under federal law.

In addition, this Court should exercise jurisdiction under CAFA because the Complaint

alleges that Plaintiff seeks to obtain restitution on behalf of third-party payors, including *private*

entities, rendering this case a "representative" action under the plain terms of CAFA.  Although

Plaintiff seeks to avoid the logical reach of CAFA jurisdiction by backpedaling from the

allegations in the Complaint, Plaintiff cannot refute the well-established principle that the

Complaint controls the question whether federal jurisdiction existed at the time of removal.  In

seeking remand to state court, Plaintiff also relies heavily on decisions of this Court remanding

"off-label" cases filed against drug companies.  But the jurisdictional issues here are not the

same as the ones adjudicated in those cases.  Most notably, none of those cases were removed

under CAFA, as this case was.

For these reasons, the Court should enter a stay and defer ruling on Plaintiff's remand

motion.  Should the Court decide to adjudicate Plaintiff's motion to remand on the merits,

however, that motion should be denied.

## **BACKGROUND**

Merck's voluntary decision to withdraw Vioxx from the market on September 30, 2004 resulted in a nationwide flurry of lawsuits alleging that Merck misrepresented the drug's safety profile. In February 2005, the JPML created an MDL proceeding so that Vioxx cases could be coordinated for pretrial purposes in federal court. *See In re Vioxx Prods. Liab. Litig.*, 360 F. Supp. 2d 1352, 1354 (J.P.M.L. 2005). The Vioxx MDL now includes, *inter alia*, fourteen actions like this one, filed by state attorneys general, other governmental entities, and certain private citizens (the "Government Action" cases) seeking reimbursement for Vioxx prescriptions paid for by state Medicaid and other government healthcare programs.[1] The Panel transferred these Government Actions to MDL No. 1657, finding that they "involve common questions of fact with actions in this litigation previously transferred to the Eastern District of Louisiana." (*In re Vioxx Prods. Liab. Litig.*, MDL-1657, Transfer Order dated June 14, 2006 (transferring *Alaska v. Merck & Co.*); *see also, e.g.*, Transfer Orders dated August 11, 2006 (transferring *Montana ex rel. McGrath v. Merck & Co.*), October 18, 2006 (transferring *Utah v. Merck & Co.*), February 11, 2008 (transferring *New York v. Merck & Co.*); November 13, 2008 (CTO-146) (transferring *Florida v. Merck & Co.*), February 25, 2009 (CTO-149) (transferring *Pennsylvania v. Merck & Co.*) (attached collectively as Ex. B).)

More than four years after the MDL proceeding was established, Plaintiff filed this suit seeking to recover money spent on Vioxx, along with compensatory damages, triple damages, statutory penalties, costs, and attorneys' fees. (*See* Compl. ¶¶ 42, 44, 53, 56, 61 (attached as

---

[1]       *See, e.g.*, Compl. ¶ 18, *Utah v. Merck & Co.*, No. 06-9336 (E.D. La. Apr. 28, 2008) ("While making Vioxx available to Medicaid patients, Defendant knowingly misrepresented to the State, as well as to physicians and the general public that Vioxx was safe and efficacious. The State of Utah allowed the purchase of Vioxx for Utah Medicaid recipients based upon such representations by Defendant."); Compl. ¶ 7, *Hood v. Merck & Co.*, No. 05-6755 (E.D. La. Oct. 4, 2005) ("the State of Mississippi . . . brings this action . . . to recover amounts paid for the drug VIOXX® by the State, through its agencies and instrumentalities, as a result of the fraudulent conduct of [Merck]") (attached collectively as Ex. A).

Exhibit A to Notice of Removal (Dkt. #1).)  Plaintiff's Complaint includes allegations that are highly similar to those set forth in the fourteen other Government Actions presently pending in the Vioxx MDL court.  (*Id.* ¶ 10 (alleging that Merck "misrepresented and concealed material safety information from end-users, physicians and third-party payors such as the State program payors concerning the cardiovascular and gastrointestinal risks associated with Vioxx®."); *id.* ¶¶ 12, 33 (alleging that Merck "induce[d] third-party payors such as the State's program payors to purchase and/or authorize the purchase of Vioxx®," including South Carolina's Medicaid program); *id.* ¶ 42 (seeking "restitution to program payors who have suffered losses as a result of the acts an[d] practices alleged in this complaint").)

On September 24, 2009, Merck removed Plaintiff's case to this Court.  On October 1, Merck notified the Panel of the pendency of this action.  (*See* Letter from Cecily Williams, Hughes Hubbard & Reed LLP to Jeffrey Lüthi & Catherine Maida, JPML (Oct. 1, 2009) (notifying Panel of potential "tag-along actions") (Ex. C).)  As already explained, this case is highly similar to fourteen governmental entity cases pending in the MDL proceeding, and it is thus highly likely that the JPML will enter a transfer order in this case, as well.  On September 29, 2009, Merck moved the Court to stay all proceedings, pending transfer to Judge Fallon's MDL proceeding.  On October 2, Plaintiff filed its motion to remand.

## ARGUMENT

### I.   THIS COURT SHOULD PERMIT JUDGE FALLON TO ADDRESS REMAND MOTIONS IN A COORDINATED FASHION.

This Court should stay this action or defer consideration of Plaintiff's remand motion pending the transfer of this case to the Vioxx MDL proceeding because the complex jurisdictional issues this case raises are already present in multiple cases pending there.  Entering a stay or briefly deferring consideration of the motion would further the twin goals of the MDL

4

statute—judicial economy and consistency of rulings—whereas ruling now would undermine those purposes. Particularly because the federal jurisdictional issues presented here are novel and substantial, it makes little sense to require multiple federal courts to assess those same issues while an MDL proceeding is already in place.

The "general rule is for federal courts to defer ruling on pending motions to remand in MDL litigation until after the [MDL Panel] has transferred the case." *Jackson v. Johnson & Johnson, Inc.*, No. 01-2113 DA, 2001 U.S. Dist. LEXIS 22329, at *17 (W.D. Tenn. Apr. 2, 2001) (Ex. D). As noted in Merck's briefs in support of its Motion to Stay, courts across the country have followed this "general rule," staying literally thousands of Vioxx-related cases pending transfer to the MDL, including numerous Government Action cases, even where remand  motions were pending.

Deferring consideration of Plaintiff's remand motion is particularly appropriate here, because there are many Government Action cases pending before Judge Fallon that raise highly similar jurisdictional issues.[2] In these circumstances, a brief stay pending transfer is appropriate despite (indeed, partly *because of*) the presence of challenges to the existence of federal jurisdiction. *See In re Ivy*, 901 F.2d 7, 9 (2d Cir. 1990) (where "[t]he jurisdictional issue in question is easily capable of arising in [more than one court] . . . . [c]onsistency as well as economy is . . . served [by transferring and consolidating cases as to which remand motions are pending]") (internal citations omitted); *Bd. of Trs. of the Teachers' Ret. Sys. of Ill. v. WorldCom, Inc.*, 244 F. Supp. 2d 900, 905 (N.D. Ill. 2002) ("The question, then, is whether other courts are facing or are likely to face similar jurisdictional issues in cases that have been or may be

---

[2]     This fact alone means that the Court's decision not to stay Plaintiff's remand motion in *South Carolina ex rel. McMaster v. AstraZeneca LLP*, No. 7:09-387-HFF, 2009 U.S. Dist. LEXIS 39174 (D.S.C. May 5, 2009) (Ex. E), is inapposite here. The list of cases pending in that MDL proceeding does not show a single case brought by a State Attorney General pending there. *See In re Seroquel Prods. Liab. Litig.*, No. 6:06-md-01769-ACC-DAB (M.D. Fla.). The opposite is true here.

transferred to a multidistrict proceeding."). The JPML, most federal courts to consider the issue

in this litigation, and Judge Fallon himself agree. (*See* Exs. F & G to Merck's Reply Mem. in

Support of Mot. to Stay) (Dkt. # 13).) The Court should thus stay this action or, alternatively,

defer consideration of Plaintiff's remand motion.

## II.   THE COMPLAINT CONFERS JURISDICTION UPON THIS COURT UNDER THE SUBSTANTIAL FEDERAL QUESTION DOCTRINE.

Even if the Court addresses Plaintiff's remand motion on the merits, it should deny the

motion because the Complaint confers federal jurisdiction upon this Court under, *inter alia*, the

substantial federal question doctrine. Nothing in Plaintiff's remand motion calls into question

Merck's assertions in its Notice of Removal that substantial and disputed issues of federal law

will necessarily arise in this case, conferring jurisdiction under the substantial federal question

doctrine as set forth by the Supreme Court in *Grable & Sons Metal Prods., Inc. v. Darue Eng'g

& Mfg.*, 545 U.S. 308, 312 (2005). As explained below, the *Grable* test is satisfied here for two

reasons.

### A.   Plaintiff's Claims Require Resolution of Disputed, Complex Federal Questions Of Medicaid Law.

This Court has jurisdiction here because Plaintiff cannot prove its claim for

reimbursement for on-label Vioxx prescriptions without confronting substantial and disputed

issues under the federal Medicaid regime. In addition, allowing a federal court to resolve the

claim would not disturb congressional allocation of federal and state judicial responsibility.

### 1.   Plaintiff's Claim For A Refund Of Medicaid Money Turns On A Dispute Over The Interpretation Of Federal Statutes And Regulations Governing State Medicaid Prescription Drug Coverage.

This is not a traditional Medicaid fraud case. Plaintiff does not allege that Merck caused

it to (1) pay for prescriptions that were not filled, (2) provide medicine to ineligible patients, or

even (3) cover prescriptions that were for unapproved ("off-label") uses. Plaintiff's claim

*?.?*

concedes that Merck provided *a working pain* medicine to people who were entitled to receive

pain medicine through South Carolina's Medicaid program, and that all invoices for Vioxx that

pharmacies presented to the program were legitimate and accurate.

Instead, Plaintiff alleges that Merck tricked the State into including (and keeping) Vioxx

on its state Medicaid drug formulary by failing to disclose Vioxx's alleged risks.  (*See, e.g.,*

Compl. ¶ 29 ("defendant gained a significant share of the NSAID market that it would not have

gained if it had not suppressed information about Vioxx®"); *id.* ¶ 12 (alleging, among other

things, that Merck's purpose was to "induce third-party payors such as the State's program

payors to purchase and/or authorize the purchase of Vioxx® by their insureds or plan

beneficiaries").)  In order to show that, Plaintiff must prove (among other things) that federal

Medicaid law would have permitted it to exclude Vioxx from its Medicaid program, even though

it was an FDA-approved drug prescribed for on-label uses.  If Plaintiff cannot prove that, it will

be unable to meet its burden of showing that something Merck did caused its alleged losses.

(*See, e.g.,* Compl. ¶ 37 (alleging that Merck's conduct "caused the State program payors to suffer

ascertainable losses in that they purchased or reimbursed for Vioxx® without knowing the true

and complete risks and benefits").)  As explained below, this causation element is required in all

of Plaintiff's claims, is disputed in this case, and turns on substantial issues of federal law.

Specifically, Merck and Plaintiff disagree about the proper interpretation of 42 U.S.C. §

1396r-8(d).  Merck contends that Plaintiff cannot prove that Merck caused the submission of

false Medicaid claims because, regardless of Merck's disclosures about the safety and efficacy of

Vioxx, Plaintiff was required to pay for Vioxx prescriptions for its Medicaid patients.  Medicaid

is a cooperative federal-state program that provides healthcare funding to low-income patients.

States that choose to participate in it receive federal funding, and agree to comply with federal

7

requirements in administering their Medicaid programs. Among other mandates, federal Medicaid law generally requires participating states to cover all prescription drugs made by manufacturers who have entered rebate agreements with the Secretary of Health and Human Services (known as "covered outpatient drugs"). *See* 42 U.S.C. § 1396r-8(d). In order to show that it would have declined to cover Vioxx had Merck adequately disclosed its alleged risks (and therefore that it is entitled to damages "caused by an act or practice in violation of this part"), Plaintiff will have to show that it had that discretion under the federal Medicaid regime.

Plaintiff's case presumes that Plaintiff had such discretion. But that showing is precisely the disputed issue requiring national uniformity that confers substantial federal question jurisdiction here. Section 1396r-8(d) sets forth detailed guidelines on when a state may—and when it may not—decline to cover a covered outpatient drug. Section 1396r-8(d)(1) sets out two broad categories of restrictions: "prior authorization" and exclusions. Prior authorization allows a state to impose a procedural requirement (such as calling a state pharmacist) on doctors who wish to prescribe a specific drug, but Merck disputes Plaintiff's premise that this would allow the state to deny coverage for that drug. *See Edmunds v. Levine*, 417 F. Supp. 2d 1323, 1329 (S.D. Fla. 2006) (under prior authorization program "the state may try to persuade a doctor to use an alternative drug, but ultimately the doctor retains the final word on use of the drug"); *see also* 42 U.S.C. § 1396r-8(d)(1)(A) (allowing participating state to implement prior authorization program for any "covered outpatient drug," so long as program meets certain procedural requirements).

A participating state may only "exclude or otherwise restrict coverage of a covered outpatient drug" in four circumstances: (i) where the prescription is "not for a medically accepted indication";[3] (ii) where the drug falls into an enumerated category;[4] (iii) where the

---

[3]       A "medically accepted indication" is the legal term for "on-label," a use either approved by the FDA or contained in a specifically referenced medical compendium. *See* 42 U.S.C. § 1396r-8(k)(6).

state has entered an agreement with the manufacturer to restrict the drug and that agreement has

been approved by the Secretary of Health and Human Services; and (iv) where the state has

established an exclusive drug formulary[5] that meets the requirements of the federal Medicaid

statute, and made specified findings based on specified informational sources.  42 U.S.C.

§ 1396r-8(d)(1)(A).  Thus, in order for Plaintiff to prove that it would have excluded Vioxx from

its Medicaid program had Merck disclosed its allegedly concealed risks, it will have to show that

it *could* have excluded Vioxx under one of those four provisions.  Merck disputes this, and

resolution of that dispute will require in-depth analysis of the federal Medicaid regime.

   Federal courts have squarely held that this kind of dispute about federal Medicaid law

gives rise to substantial federal question jurisdiction under *Grable*.  *See County of Santa Clara v.*

*Astra USA, Inc.*, 401 F. Supp. 2d 1022 (N.D. Cal. 2005); *West Virginia ex rel. McGraw v. Eli*

*Lilly & Co.*, 476 F. Supp. 2d 230, 234 (E.D.N.Y. 2007); *Montana ex rel. McGrath v. Eli Lilly &*

*Co.*, Nos. 04-MD-1596, 07-CV-1933 (JBW), 2008 U.S. Dist. LEXIS 10355, at *8-10 (E.D.N.Y.

Feb. 12, 2008) (Ex. F); *New Mexico v. Eli Lilly & Co.*, 04-MD-1596, 07-CV-01749 (JBW/RLM),

2009 U.S. Dist. LEXIS 20768, at *67-68 (E.D.N.Y. Mar. 11, 2009) (Ex. G).  In several of these

cases, as here, governmental entities sought to recover Medicaid funds spent on a drug on the

theory that the defendant's alleged misrepresentations about the drug's side effects caused the

state to cover the drug in its Medicaid program.  *See McGraw*, 476 F. Supp. 2d. at 231, 233-34;

*McGrath*, 2008 U.S. Dist. LEXIS 10355, at *5-6; *New Mexico*, 2009 U.S. Dist. LEXIS 20768, at

*64-65.  As the court explained in *McGraw*, the federal Medicaid law "mandated" that the state

cover the defendant's drug through its Medicaid program, and resolving whether the state was

---

[4]      *See also* 42 U.S.C. § 1396r-8(d)(2) (enumerating categories of excludable drugs).

[5]      Although § 1396r-8 uses the phrase "drug formulary," that phrase can be confusing because a "formulary"
in pharmaceuticals can be any list of drugs.  Thus, the phrase "exclusive drug formulary" is used here to describe a
formulary created under § 1396r-8(d)(1)(B)(iv) to exclude drugs from a state's Medicaid program.

obliged to cover that drug, "using funds largely provided by the federal government," was thus "essential to the state's theory of damages." *McGraw*, 476 F. Supp. 2d. at 233.  The plaintiffs' claims therefore presented "a substantial and disputed federal issue under *Grable*." *Id*.  The Court also explained why such novel claims of Medicaid fraud could properly be heard in federal court:

> At issue here is not simply a federal drug standard, but the factor of an intricate federal regulatory medicine scheme.  It includes detailed federal funding provisions, requiring some degree of national uniformity in interpretation. . . .  It is difficult to accept the proposition that the federal judicial system cannot provide a single integrated practice in these cases by the Attorneys General.  Potentially fifty states and the Commonwealth of Puerto Rico can independently sue in their respective jurisdictions; local courts can potentially deliver at least fifty-one different results.

*McGrath*, 2008 U.S. Dist. LEXIS 10355, at *17-18 (internal citations omitted).  The court thus denied the State of Montana's remand motion, concluding that because "[t]he resolution of Montana's claims necessarily depend[s] on decisive federal questions, including the state's claims based upon its participation in the federal Medicaid program, the requirements of which are governed by federal law." *Id.* at *3.[6]

Similarly, in a case involving Medicaid drug pricing, the court in *County of Santa Clara* held that federal jurisdiction existed under *Grable* because the plaintiff's state-law claims against pharmaceutical manufacturers for allegedly overcharging it for Medicaid drugs presented substantial questions of federal law.  The court observed that one measure of evaluating substantiality is "the importance of the federal issue."  401 F. Supp. 2d at 1027.  The court noted

---

[6]     Merck acknowledges that two federal courts have remanded cases brought against it by state attorneys general seeking, *inter alia,* Medicaid funds.  *See Texas v. Merck & Co., Inc.*, 385 F. Supp. 2d 604 (W.D. Tex. 2005), and *Michigan ex rel. Cox v. Merck & Co., Inc.*, No. 8-918-RJJ (W.D. Mich. Jan. 16, 2009).  In neither case was CAFA removal at issue, however, and Merck maintains that those decisions erroneously interpreted *Grable*.  In any event they serve to underscore the importance of allowing coordinated rulings on overlapping remand motions to be made by the MDL court, not transferor courts.  Such a course best ensures consistent results—not to mention efficient use of scarce judicial resources.

that "[u]nder this approach, the following issues have been found to be substantial: those that directly affect the functioning of the federal government, those in an area reserved for exclusive federal jurisdiction, and those that impact a complex federal regulatory scheme." *Id.* at 1027.[7]

Here, there can be no doubt that Plaintiff's claims necessarily implicate "a complex federal regulatory scheme." *Id.* at 1027. Plaintiff alleges that it would not have covered Vioxx through its Medicaid program if Merck had adequately disclosed the drug's risks. But Plaintiff's ability to exclude Vioxx from South Carolina's federally-funded Medicaid program was tightly constrained by federal Medicaid law. Thus, in order to prove the required causation element of its own claims, Plaintiff will have to show that federal Medicaid law would have permitted it to exclude Vioxx. Plaintiff's claims all contain an element that require the State to prove that something Merck did caused its alleged losses. S.C. Code Ann. § 39-5-140(a) (granting a right of action to any "person who suffers any ascertainable loss of money or property, real or personal, ***as a result of***" the use of an unfair or deceptive act) (emphasis added); *First State Sav. & Loan v. Phelps*, 385 S.E.2d 821, 824 (S.C. 1989) (fraudulent misrepresentation claim requires a showing that the plaintiff suffered injury as ***a result of*** the defendant's alleged conduct); *Niggel Assocs., Inc. v. Polo's of N. Myrtle Beach, Inc.*, 374 S.E.2d 507, 509 (S.C. Ct. App. 1988) (unjust enrichment requires showing that the defendant "***induced*** the plaintiff to confer the benefit") (emphasis added); S.C. Code Ann. § 43-7-60(B) ("It is unlawful for a provider of medical assistance, goods, or services to knowingly and wilfully make or ***cause to be made*** a false

---

[7]     Other courts facing similar issues have come to the same conclusion. *See Nicodemus v. Union Pac. Corp.*, 440 F.3d 1227, 1235 (10th Cir. 2006) ("To prove that Union Pacific acted unlawfully, Plaintiffs must establish that the right-of-way prohibited the use to which it was put. The federal issue, therefore, arises in Plaintiffs' case-in-chief, not by way of defense."); *Municipality of San Juan v. Corporación para el Fomento Económico de la Ciudad Capital*, 415 F.3d 145, 148 n.6 (1st Cir. 2005) (noting agreement with a magistrate judge's finding of substantial federal question jurisdiction where "the propriety of [the defendant's] conduct turns entirely on its adherence to the intricate and detailed set of federal regulatory requirements, and the funds at issue are federal grant monies").

11

claim") (emphasis added).  Thus, causation is an element of Plaintiff's claims, which confers
federal jurisdiction.

     For the same reasons, and contrary to Plaintiff's remand motion, Merck is not basing its
jurisdictional argument on a defense.  (*See* Pl.'s Mem. at 6-7.)  To the contrary, Plaintiff must
prove as part of its case that Merck's conduct caused its alleged injuries, and Merck disputes this
on the basis of federal law, therefore putting that federal law at issue.  *See Nicodemus*, 440 F.3d
at 1235.  Plaintiff cannot prove its own case without receiving a ruling in its favor on this
substantial, disputed issue of federal law.[8]

     Accordingly, the first part of the *Grable* standard—that substantial, disputed federal
issues are implicated in Plaintiff's case—is satisfied here.

    2.    **Exercising Jurisdiction In This Case Will Not Cause Any Drastic Shift
Of Medicaid Fraud Cases From State To Federal Court.**

     The second part of the *Grable* standard is also satisfied here, because exercising
jurisdiction will not upset the congressionally-mandated division of labor between federal and
state courts.  As already explained, Plaintiff has brought a novel Medicaid fraud claim.
Plaintiff's claim centers on the allegation that it would have operated its Medicaid program
differently if Merck had—in its view—made more or different disclosures of Vioxx's alleged
risks.  That unusual aspect of its claim brings the substantial, disputed federal issues to the
forefront of this litigation.  Thus, exercising jurisdiction here will not greatly affect the division
of labor between the federal and state judiciaries.  *See McGraw*, 476 F. Supp. 2d at 234 ("The
exercise of federal jurisdiction over the West Virginia Attorney General's action implicating the
federal Medicaid laws will not attract a 'horde of original filings and removal cases raising other

---

[8]    This explains why *Morgan County War Memorial Hospital v. Baker*, 314 Fed. App'x 529 (4th Cir. 2008) is
inapplicable here.  *Id.* at 535 (declining to apply *Grable* where the case "centers on the actions of private parties,
resolution of any question of federal tax law is not 'dispositive' of a breach of fiduciary duty claim, and it is hard to
see how resolution of any federal tax law issue in this case would be controlling in 'numerous' cases").

state claims with embedded federal issues.'") (quoting *Grable*, 545 U.S. at 318).[9]  And as already

explained, there is nothing anomalous about having a federal court resolve a dispute centered on

a state's obligations and prerogatives under federal Medicaid law.  Accordingly, the second part

of the *Grable* standard is likewise satisfied here.

**B.    Plaintiff's Claims Raise Substantial Issues Of Drug Regulation That Require The Uniform Exercise Of Federal Jurisdiction.**

The Court independently has jurisdiction because Plaintiff's claims implicate substantial

issues of federal drug law, the resolution of which demand the uniformity federal jurisdiction

provides in these circumstances.

**1.    Plaintiff's Complaint Raises Substantial Disputed Federal Questions Under The FDCA.**

Plaintiff's Complaint raises substantial issues under the FDCA, which closely regulates

the communications Plaintiff challenges here.  (*See* Notice of Removal ¶¶ 21-25.)  The core of

Plaintiff's claim is that Merck misrepresented the safety and efficacy of Vioxx to the FDA,

misled physicians, "State program payors," "program payors," "third party payors," and

consumers in marketing and advertising the drug, and concealed negative information about its

safety profile, thereby inducing Plaintiff to cover Vioxx prescriptions given to Medicaid patients.

(*See* Compl. ¶¶ 10, 22, 23, 48.)  The FDA determines whether a drug is approved for use in

humans and assesses the specific uses for which it may be administered.  21 U.S.C. §§ 331(a),

(d), 335; *Wash. Legal Found. v. Henney*, 202 F.3d 331, 332-33 (D.C. Cir. 2000).  Thus, the

marketing, testing, labeling, and approval of Vioxx—the issues forming the basis of Plaintiff's

---

[9]    It is for this very reason that Plaintiff's case is distinct from *Merrell Dow*.  In *Merrell Dow*, the Supreme
Court worried that extending federal jurisdiction to state-law tort claims where plaintiffs merely reference a federal
standard would flood federal courtrooms with removed cases.  *See  Merrell Dow Pharms., Inc. v. Thompson*, 478
U.S. 804, 811-812.  That is not the case here.  *See Santa Clara*, 401 F. Supp. 2d at 1031 (allowing removal under
*Grable* and distinguishing cases asserting, *inter alia*, negligence claims because removal of such "garden-variety"
tort cases from state court would raise the federal court caseload concerns expressed in *Merrell Dow*).

Complaint—were all governed by federal law. (*See* Pl.'s Mem. at 4 ("[t]he Defendants' [sic] liability would be premised . . . on . . . the alleged intentional misrepresentation of the drug's efficacy and risks").)

Plaintiff's contention that these allegations do not raise substantial federal questions because Merck's liability "will solely depend upon its respective breach of duties as defined and created by state law," (*see* Pl.'s Mem. at 6), is incorrect. In the first place, to determine whether Merck's alleged conduct was "deceptive" under South Carolina's Unfair and Deceptive Trade Practices Act (and, likewise, whether it was "unjust" under Plaintiff's unjust enrichment claim, "fraudulent" under its Medicaid and fraudulent misrepresentation claims), the Court will have to grapple with the federal requirements embodied in the FDCA and its implementing regulations, which Merck was obligated to follow. Courts have found substantial federal question jurisdiction in such circumstances. *See, e.g., County of Santa Clara*, 401 F. Supp. 2d at 1026 ("An allegation that [defendants] acted fraudulently or unfairly also requires determination of a federal issue because it boils down to claims that defendants said they were providing the federally mandated discounts but did not."); *Nat'l Credit Reporting Ass'n v. Experian Info. Solutions, Inc.*, No. C 04-01661 WHA, 2004 U.S. Dist. LEXIS 17303, at *7 (N.D. Cal. July 21, 2004) ("A claim raises a substantial federal question when its resolution requires reference to or interpretation of federal law.") (Ex. H); *Drawhorn v. Qwest Commc'ns Int'l, Inc.*, 121 F. Supp. 2d 554, 564 (E.D. Tex. 2000) (holding that federal question jurisdiction exists where "the interpretation of the federal statutes . . . is a necessary and substantial part of the plaintiffs' own causes of action").

The *Grable* standard is also met because there is a strong federal interest in uniformly resolving the propriety of certain communications regarding prescription drugs. *See Grable*, 545

14

U.S. at 312 (substantial federal question jurisdiction is "the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues"); *see also In re Zyprexa*, 375 F. Supp. 2d 170, 172-73 (2005) (retaining federal jurisdiction in case involving allegations that prescription drug manufacturer improperly marketed drug causing state Medicaid program to expend funds because of the "substantial federal funding provisions involved" and because the plaintiff's FDA-related allegations rendered the case "federally oriented").

Contrary to Plaintiff's assertion in its remand motion (Pl.'s Mem. at 9), the Supreme Court in *Grable* made clear that the lack of a private cause of action in a federal statute does not mean that federal jurisdiction is absent. *Grable*, 545 U.S. at 317-18. Before *Grable*, some federal courts had interpreted *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804 (1986), to hold that substantial federal question jurisdiction exists only when the federal law implicated by the state-law claims provides a private right of action. In *Grable*, the Court explicitly rejected that interpretation of *Merrell Dow*, explaining that while the provision of a federal private right of action can be evidence of whether Congress intended for there to be a federal forum, the key question, as stated above, is whether the "state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314. The absence of a federal right of action is thus only one fact to be considered in the context of the entire controversy while determining whether substantial federal question jurisdiction lies. *Id.* at 317 ("determinations about federal

jurisdiction require sensitive judgments about congressional intent, judicial power, and the federal system" (quoting *Merrell Dow*, 478 U.S. at 810)).

Because the plain language of the Medicaid statute requires states to pay for on-label prescriptions for FDA-approved drugs, along with the substantial federal funding at issue here—federal Medicaid contributions constitute nearly 70% of the State's Medicaid financing (*see* Notice of Removal ¶ 11, n.1)—this Court has ample reason to find a sufficiently substantial federal interest to warrant exercising jurisdiction.

2.  **Exercising Federal Jurisdiction Over Plaintiff's FDCA-Related Claims Will Not Shift The Federal-State Judiciary Balance.**

Merck's position is not that federal question jurisdiction is present merely because Plaintiff references alleged violations of federal drug standards, or is attempting to establish a rebuttable presumption of negligence based on such allegations, as Plaintiff argues. (*See, e.g.*, Pl.'s Mem. at 8, 10-11 (citing *Merrell Dow*).) This is not a case where the only federal issue is whether Merck violated a federal standard, or where the defendant asserts that a federal defense means that the case belongs in federal court. Rather, as in *Zyprexa* and *County of Santa Clara*, this dispute is substantial in light of the importance of these regulations in the federal drug regime as it intersects with Medicaid law. In order to assess the merits of Plaintiff's case, a court will have to examine federal law carefully, including the FDCA and its regulations, which constrain pharmaceutical manufacturers' public and promotional statements about prescription drugs. *See* 21 U.S.C. § 371(a); 21 C.F.R. § 200 *et seq.* This kind of examination may properly be undertaken in federal courts. *McGrath*, 2008 U.S. Dist. LEXIS 10355, at *18. Thus, the Court's admonition in *Grable* that courts should carefully determine the proper forum in the context of the entire case is more controlling here than is Plaintiff's analogy to the personal injury case at issue in *Merrell Dow*. *Id.* at *16 ("[a]t issue here is not simply a federal drug

16

standard, but the factor of an intricate federal regulatory medicine scheme"). Plaintiff's claims meet the *Grable* standards for this reason as well.

### C.   Plaintiff's Challenges To Substantial Federal Question Jurisdiction Fail.

Plaintiff presents four reasons why its claims do not require the resolution of substantial federal questions of Medicaid and federal drug law. First, Plaintiff argues that the "well-pleaded complaint" rule means that its state-law claims are not subject to federal jurisdiction. (*See* Pl.'s Mem. at 2-3, 6.) Second, Plaintiff posits that this Court's resolution of certain "off-label" cases against drug companies, along with other prescription drug cases, shows why federal jurisdiction is lacking here. (Pl.'s Mem. at 4-5.) Third, Plaintiff argues that even if federal questions are embedded in its claims, they are not sufficiently substantial for the Court to assert jurisdiction, because Congress did not intend for such cases to be transferred from state to federal court. Fourth, Plaintiff argues that considerations of comity require remand.

Each of these arguments fails.

### 1.   The "Well-Pleaded Complaint" Rule Is Not Relevant.

Plaintiff's assertion that the Complaint does not expressly invoke federal law is irrelevant under the substantial federal question doctrine. In *Grable* itself, the Supreme Court addressed a complaint that invoked only a state law quiet-title claim, yet the Court determined that federal jurisdiction existed because resolution of that claim depended upon an interpretation of a federal tax provision. As the Court summed up:

> [T]his Court ha[s] recognized for nearly 100 years that in certain cases federal question jurisdiction will lie over state-law claims that implicate significant federal issues. The doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues.

545 U.S. 312 (citation omitted).

17

Plaintiff's reliance on the "well-pleaded complaint" rule thus does nothing to advance its position under the substantial federal question doctrine. After all, every substantial federal question jurisdiction case involves a complaint that does not expressly state a claim under federal law. The entire purpose of the substantial federal question doctrine is to decide whether a case "arises" under federal law even though the complaint does not expressly invoke that law. If Plaintiff's claims implicate disputed underlying questions of federal law, it simply makes no difference for purposes of federal jurisdiction that Plaintiff has chosen not to plead federal claims in its Complaint.

### 2. The Cases Plaintiff Cites Remanding Cases Against Other Drug Companies Are Inapposite.

Plaintiff's reliance on this Court's resolution of Plaintiff's "off-label" case and the other cases remanded by Judge Herlong is also unpersuasive. (*See* Pl.'s Mem. at 5 (discussing the Court's decision to remand Plaintiff's case against AstraZeneca Pharmaceuticals LP and Judge Herlong's remand decisions in Plaintiff's other drug cases).) The distinction between off-label and on-label prescriptions is absolutely critical to the federal jurisdictional questions at issue here. As already explained, states must cover on-label prescriptions written for Medicaid beneficiaries, but may exclude off-label ones. For this reason, the decisions remanding Plaintiff's other cases are inapposite to the question at issue here—whether Plaintiff can establish Merck's liability when the federal Medicaid caused its alleged losses, not anything Merck did or did not do.[10]

---

[10]    This is why the key part of Judge Herlong's ruling in *Eli Lilly* is inapplicable here. *See Eli Lilly*, 2007 U.S. Dist. LEXIS 56847, at *5 (holding that "'it is not the act of causing the submission of a clam for a non-medically accepted indication that creates liability under the state law causes of action, but rather *the act of causing the submission* of a false or fraudulent claim.'" (quoting *Pennsylvania v. Eli Lilly & Co., Inc.*, 511 F. Supp. 2d 576 (E.D. Pa. 2007)) (emphasis added). Once the FDA approved Vioxx and physicians prescribed it to Medicaid beneficiaries for on-label uses, Merck did not "cause" the submission of any Medicaid claims for it; rather, the federal law requirement of 42 U.S.C. § 1396r-8 did.

Plaintiff cannot dispute that the three other cases it filed against drug companies all involved allegations that the drugs were marketed for off-label indications—*i.e.*, uses not approved by the FDA. *See State of South Carolina ex rel. McMaster v. Janssen Pharma. Inc.*, No. 07-1452-HMH, 2007 U.S. Dist. LEXIS 49904, at *4 (D.S.C. July 10, 2007) ("the State alleges that the Defendants promoted Risperdal for non-medically accepted indications" and "[t]he Federal Medicaid Act allows states to 'exclude or otherwise restrict coverage of a covered outpatient drug if . . . the prescribed use is not for a medically accepted indication" (citing 42 U.S.C. § 1396r-8(d)(1)(B)) (Ex. I); *State of South Carolina ex rel. McMaster v. Eli Lilly & Co.*, No. 07-1875-HMH, 2007 U.S. Dist. LEXIS 56847, at *4 (D.S.C. Aug. 3, 2007) ("Lilly engaged in an illegal scheme of 'off-label promotion' of Zyprexa") (Ex. J); *South Carolina ex rel. McMaster v. AstraZeneca Pharmaceuticals LP*, No. 09-387-HFF, 2009 U.S. Dist. LEXIS 39174, at *8-9 (D.S.C. May 5, 2009) (analyzing implications for removal jurisdiction of defendants' arguments that off-label marketing is heavily regulated by the FDA and has First Amendment implications) (Ex. E). That same issue was also the basis for the court's ruling in *Pennsylvania v. Eli Lilly & Co.*, 511 F. Supp. 2d 576 (E.D. Pa. 2007) which Plaintiff cites to argue that its "virtually identical" case should be remanded here (*see* Pl.'s Mem. at 12). *Id.* at 582-83 ("the term 'medically accepted indication' is used in the Complaint merely as a common standard that delimits the Medicaid fraud claim").

Unlike those cases, Plaintiff here does not allege that Merck induced prescribers to submit Medicaid claims for uncovered off-label uses of Vioxx, which led to its purported losses. Nor does the Complaint allege that Merck promoted Vioxx for non-medically appropriate uses— *viz.*, for purposes other than pain relief. Rather, Plaintiff alleges that it could have excluded Vioxx from coverage because of Merck's alleged failure to disclose its risks. Whether Plaintiff's

19

reading of the Medicaid statute is correct instead of Merck's is, therefore, precisely the

substantial federal question at issue in Plaintiff's own burden of proof on causation.

Similarly, the decisions Plaintiff cites from other federal districts to argue that "numerous

cases" have "rejected issues relating to the Medicaid statute as a basis for federal question

jurisdiction" (Pl.'s Mem. at 7) are also inapposite.  Not only were several of those cases decided

before *Grable*, the vast majority of them did not involve an allegation that, but-for the

defendant's alleged misconduct, the plaintiff would have excluded a prescription drug from its

Medicaid program. *See Minnesota v. Pharmacia Corp.*, No. 05-1395 (PAM/JSM), 2005 U.S.

Dist. LEXIS 27638 (D. Minn. Oct. 22, 2005) (allegation that defendant fraudulently manipulated

average wholesale price) (Ex. K); *Wisconsin v. Abbott Labs.*, 390 F. Supp. 2d 815 (W.D. Wis.

2005) (same); *Missouri ex rel. Nixon v. Mylan Labs., Inc.*, No. 4:06CV603 HEA, 2006 U.S. Dist.

LEXIS 32570, at *2 (E.D. Mo. May 23, 2006) (same) (Ex. L); *New York v. Lutheran Ctr. for*

*Aging*, 957 F. Supp. 393 (E.D.N.Y. 1997) (claim that defendant breached contract with state by

submitting claims to state Medicaid agency without disclosing patient's Medicare eligibility).

The, *Minnesota*, *Missouri*, and *Wisconsin* cases are also inapposite because the federal

question at issue in those cases was in fact insubstantial—*i.e.*, it was limited to the meaning of

the phrase "average wholesale price" as it appears in the Medicaid statute and regulations. *See*

*Minnesota*, 2005 U.S. Dist. LEXIS 27638, at *2; *Missouri*, 2006 U.S. Dist. LEXIS 32570, at *2;

*Wisconsin*, 390 F. Supp. 2d at 823.  Here, in contrast, the disputed federal issue "extend[s]

beyond the definition of a single federal statutory term to encompass a broad range of federal

regulatory and funding provisions[.]" *McGraw*, 476 F. Supp. 2d at 234.  And in two of those

cases, the removal was ***procedurally*** defective, thereby requiring remand, making Plaintiff's

reliance on those cases all the more unpersuasive. *Wisconsin*, 390 F. Supp. 2d at 824-25;

*Minnesota*, 2005 U.S. Dist. LEXIS 27638, at *8. Notably, another court rejected a plaintiff's

reliance on *Wisconsin* for this very reason, finding that "removal had been procedurally defective

and provided an independent and adequate reason to remand to state court." *County of Santa*

*Clara*, 401 F. Supp. 2d at 1031 (rejecting *Wisconsin*'s interpretation of *Grable* and holding that

the dependence on federal Medicaid law of pricing allegations supported federal jurisdiction).

Plaintiff relies on *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677 (2006),

to argue that *Grable* does not apply here because the "central disputes in this case are factual."

(*See* Pl.'s Mem. at 12.)  But disputed legal questions over the intersection between federal

Medicaid law and state-law actions like Plaintiff's are front and center in this case.  And in

*Empire*, moreover, the Court declined to apply *Grable* because the underlying factual basis for

the claim "was triggered, not by the action of any federal department, agency or service, but by

the settlement of a personal injury action launched in state court[.]" 547 U.S. at 700.  Here, the

FDA's approval of Vioxx with mandatory labeling—that necessarily resulted in mandatory

Medicaid coverage—is precisely what Merck contends caused Plaintiff's alleged injury.

      3.    **Plaintiff's Assertions Of Congressional Intent Support The Exercise**
              **of Substantial Federal Question Jurisdiction.**

Plaintiff's assertions that Congress did not intend for cases like this one to be in federal

court actually proves the opposite.  Plaintiff argues that a provision of the federal Medicaid

law—separate and apart from the provision require coverage of FDA-approved drugs prescribed

for on-label uses—*mandates* that the State must attempt to sue Merck over its alleged

misrepresentations and omissions regarding Vioxx.  (*See* Pl.'s Mem. at 9 ("Congress requires

states to seek recovery of Medicaid funds from liable third parties.").  Plaintiff cites 42 U.S.C. §

1396a(a)(25), which outlines the responsibilities that state Medicaid programs must undertake to

be eligible to receive federal funding under the program.  That provision requires state Medicaid

agencies to "take all reasonable measures to ascertain the legal liability of third parties . . . that are, by statute, contract, or agreement, legally responsible for payment of a claim[.]"  42 U.S.C. § 1396a(a)(25).  Plaintiff argues that this supports an inference that Congress did not intend that federal courts have jurisdiction over "State Medicaid recovery actions."  (Pl.'s Mem. at 9.)

The most logical inference, however, is precisely the opposite one.  As Plaintiff's own brief makes clear, the core dispute between the parties is whether 42 U.S.C. § 1396a(a)(25), which Plaintiff contends requires it to seek restitution from Merck, overrides 42 U.S.C. § 1396r-8(d), which Merck contends requires Plaintiff to pay for drugs like Vioxx, so long as they are prescribed according to the regulated labeling.  Plaintiff has thus identified yet another disputed substantial federal-law question that requires federal adjudication.

### 4.    Comity Does Not Warrant Remand.

Plaintiff's related "comity" argument fares no better.  Plaintiff argues that federalism "takes on greater importance when the claim removed is brought by a sovereign State."  (Pl.'s Mem. at 12.)  But federalism concerns are not present here, because Plaintiff voluntarily initiated this lawsuit and, as a result, it must subject itself to all of the possible implications of having commenced an action.  *Cf. In Re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 488 F.3d 112, 119 (2d. Cir. 2007) ("[t]he removal . . . was the result of the voluntary acts of California and New Hampshire in commencing the lawsuits against the defendants.  Once having done so, these states subjected themselves to all of the rules and consequences attendant to that decision.").  Put simply, state entities have no special protection against removal under section 1441.  If substantial federal questions will arise in litigating a case originally filed in state court, a defendant has a statutory right to remove that case to federal court, whether the case was initiated by a state attorney general or by some other party.  *Cf. Grable*, 545 U.S. at 312.

It is therefore unsurprising that federal courts often exercise removal jurisdiction over state attorney general actions that involve federal questions. *See, e.g., Cardizem CD Antitrust Litig.*, 481 F.3d 355 (6th Cir. 2007) (reversing district court's award of costs in MDL involving 50 attorney general actions and 19 individual consumer actions); *In re Zyprexa*, 375 F. Supp. 2d at 173; *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, No. MDL 1361, 2001 WL 64775 (D. Me. Jan. 26, 2001) (denying in part and deferring in part a motion to disqualify counsel in MDL proceeding involving 42 attorney general suits and a private class action) (Ex. M); *In re Mid-Atlantic Toyota Antitrust Litig.*, 605 F. Supp. 440 (D. Md. 1984) (accepting proposed settlement in MDL involving various attorney general actions and private class actions). This case is no exception.

Moreover, Plaintiff's comity argument relies heavily on *dicta* from *Franchise Tax Board of California v. Construction Laborers Vacation Trust for Southern California*, 463 U.S. 1 (1983). (*See* Pl.'s Mem. at 12-13.) In that case, however, the Supreme Court held that federal law was relevant to the state-law cause of action at issue "only by way of a defense . . . and then only if [the state] has made out a valid claim for relief under state law." *Franchise Tax Bd.*, 463 U.S. at 13. Here, Plaintiff cannot make out a valid claim for relief under state law, which requires it to prove causation, without delving into a dispute over the meaning of a federal regulatory and statutory scheme. *See also id.* at 9 (noting that federal question jurisdiction is present if resolution of the case requires "determining the meaning or application of" a federal law). Federal Medicaid issues are "essential to [Plaintiff's] theory of damages," and its claim presents "substantial and disputed federal issue[s] under *Grable*." *McGraw*, 476 F. Supp. 2d at 233. For this reason, Plaintiff's motion should be denied.

III.   **THIS COURT INDEPENDENTLY HAS JURISDICTION OVER PLAINTIFF'S CLAIMS UNDER THE CLASS ACTION FAIRNESS ACT.**

The Court also has jurisdiction because Plaintiff's case is, in substance, a class action, and the requirements for federal jurisdiction under CAFA are all satisfied.

As Merck set forth in its Notice of Removal, federal jurisdiction lies over cases that are brought in a representative capacity under a "statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B). Under CAFA, this Court has jurisdiction over this "representative" action because (1) more than 100 persons are members of the class, (2) at least one member of the class is diverse from one defendant, and (3) the amount in controversy exceeds $5 million.

The "representative" action requirement is satisfied here. In its remand motion, Plaintiff does not deny that *parens patriae* actions like this are brought under a "rule of judicial procedure authorizing" a representative action. (*See* Notice of Removal ¶ 30 (citing *United Food and Commercial Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544, 557 (1996) ("*parens patriae* actions by state governments" are an example of an "accepted common-law practice permit[ting] one person to sue on behalf of another").) There also is no dispute that the South Carolina Unfair Trade Practices Act is a statute "authorizing" the attorney general to sue in a representative capacity. (Notice of Removal ¶ 30 (citing S.C. Code § 39-5-50(b).) Thus, regardless of how Plaintiff labels its action, it meets the definition of a "class action" and may be removed under 28 U.S.C. § 1332(d).

Plaintiff's only substantive response involves retracting some of the Complaint's core allegations in order to evade federal jurisdiction under CAFA. For example, Plaintiff insists in its remand motion that it is not bringing a "class action" to recover individual purchasers' payments for Vioxx. (*See* Pl.'s Mem. at 14 ("the Complaint does not seek damages for any

24

individual who may have suffered harm as a result of ingestion of Vioxx, and the state's program payors are agencies of the state").)

By contrast, clear language in the Complaint signals that the State intends to seek relief on behalf of private entities and citizens. To be sure, Plaintiff defines the term "State program payors" to include "state agencies" that have paid for Vioxx. (Compl. ¶ 8.) And Plaintiff indeed seeks to recover money spent by those State program payors. (*See, e.g.*, Compl. ¶ 53 (praying for "compensatory damages for all expenditures made by plaintiff on behalf of the State's program payors"); *id.* ¶ 61 (asking that "the State be awarded reimbursement").) But the Complaint goes further. It ***also*** states that it seeks restitution for "program payors"—***not*** "State program payors"—who have suffered losses. (Compl. ¶ 42; *id* (Prayer for Relief, subpoint a. (praying for restitution to "program payors").)   And in addition to seeking reimbursement for the State and statutory penalties, Plaintiff's Complaint also seeks "such other and further relief as justice and equity may require" (*see* Compl. ¶ 61 (Prayer for Relief)), and Plaintiff states that it is bringing its suit *in parens patriae* on behalf of South Carolina citizens. (Compl. ¶¶ 1, 13).[11] As set forth in greater detail in the Notice of Removal, those kinds of allegations confer federal jurisdiction under CAFA. *See, e.g., Caldwell v. Allstate Ins. Co.*, 536 F.3d 418, 429 (5th Cir. 2008).

Moreover, the law is clear that in a battle between (1) allegations in a complaint conferring federal jurisdiction and (2) post-removal attempts to retract those allegations, the former controls. "Removal jurisdiction is determined on the basis of the state court complaint at the time of removal." *Southpointe Villas Homeowners Ass'n, Inc. v. Scottish Ins. Agency, Inc.*, 213 F. Supp. 2d 586, 589 (D.S.C. 2002); *accord Pullman Co. v. Jenkins*, 305 U.S. 534, 537

---

[11]     In removing this case under CAFA, Merck of course does not concede that Plaintiff's claims are cognizable under state law, or that Plaintiff could offer evidence sufficient to prove individualized claims on behalf of South Carolina citizens and private third-party payors.

(1939). Accordingly, Plaintiff's concessions about the limited nature of its theories do not unravel this Court's jurisdiction.

Plaintiff does not deny that more than 100 persons are members of the class, that minimal diversity exists between the parties, and that the amount-in-controversy requirement is met. Thus, all of the requirements for jurisdiction under CAFA are present in this action.

### CONCLUSION

For the foregoing reasons, the Court should defer ruling on Plaintiff's remand motion pending MDL transfer of this case. In the alternative, if the Court does consider Plaintiff's motion, it should be denied.

NELSON MULLINS RILEY & SCARBOROUGH LLP

By:    s/ R. Bruce Shaw
　　　　 R. Bruce Shaw
　　　　 Federal Bar No. 3802
　　　　 E-Mail: bruce.shaw@nelsonmullins.com

Columbia, South Carolina
Dated:  October 20, 2009

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

STATE OF SOUTH CAROLINA )
COUNTY OF GREENVILLE )
 )
STATE OF SOUTH CAROLINA )      C.A. # 6:09-cv-02515-HFF
Ex rel. Henry McMaster, in his capacity )
As Attorney General of the State of )
South Carolina, )
 )
        PLAINTIFF, )
 )
v. )
 )
MERCK & CO., INC. )
 )
        DEFENDANT. )

## THE STATE OF SOUTH CAROLINA'S REPLY BRIEF IN SUPPORT OF MOTION TO REMAND FOR LACK OF SUBJECT MATTER JURISDICTION

      In the interest of judicial efficiency and consistency of rulings, Defendant Merck

has asked this Court to defer the fundamental inquiry into its own subject-matter

jurisdiction and require litigation of this identical jurisdictional question in the MDL

transferee court.  Merck also contends the State of South Carolina's Complaint confers

federal jurisdiction.  The State of South Carolina respectfully disagrees.

### ARGUMENT

I.    **Judicial Efficiency Nor Consistency of Rulings Will Be Promoted by a Stay of the State's Remand Motion.**

      Merck argues that a stay will only constitute "briefly deferring consideration" of

the State's Motion to Remand. (Merck's Amended Response to Plaintiff's Motion to

Remand at p.4).  However, as Merck accurately reflects in its brief, the Vioxx MDL was

established in 2005 and beginning as early as October of 2005, approximately seven (7)

state attorneys general actions like this one have been transferred to the MDL No. 1657.

Merck asserts that there are fourteen government entity actions involved in the MDL

proceeding because not all of the government actions are filed by state attorneys general.

California and New York, for example, administer some Medicaid benefits through

county agencies.  Nevertheless, Merck has not cited one ruling by the MDL court on any

motion to remand.  The State of South Carolina objects to deferring it threshold

jurisdictional motion to a venue that has failed to rule on any similar motion for over four

years.  History dictates that the only efficient resolution of Plaintiff's motion is in the

hands of this Court.

Two district courts have refused to stay the threshold jurisdictional motions filed

against the Defendant in the Vioxx government action cases.  Michigan and Texas both

granted identical remand motions.  *Michigan v. Merck & Co.,* No. 1:08-CV-918 (W.D.

Mich. Jan. 16, 2009); *Texas v. Merck & Co., Inc.*, 385 F. Supp. 2d 604 (W.D. Tex. 2005)

(Ex. A). The MDL Rules allow district courts to decide jurisdictional motions.  In fact,

during the pendency of a motion for transfer, the Multi-District Rules provides that the

transferor court should not automatically stay rulings on pending motions.  Manual for

Complex Litigation § 20.131 (4th ed. 2004); *see also* Panel Rule 1.5, 199 F.R.D. 425, 427

(2001).

There is a substantial line of cases recognizing that district courts should hesitate

to stay an action pending transfer whenever there are questions about jurisdiction.

Judicial economy requires immediate resolution of jurisdictional issues before federal

resources are further expended. *Aetna U.S. Healthcare ,Inc. v. Hoechst*

*Aktiengesellschaft,* 54 F. Supp. 2d 1042 (D. Kan. 1999).  Judicial efficiency and economy

are better served by considering motions to remand before a case is transferred to a MDL

2

court. *Texas ex rel. Ven-a-Care v. Abbott Laboratories, Inc.*, No. A-05-CA-897-LY, 2005

WL 5430194; *Hawaii v. Abbott Laboratories, Inc.*, 469 F. Supp. 2d 842 (D. Haw. 2006).

Ultimately, subject matter jurisdiction is more fundamental than considerations of

efficiency or consistency of rulings because federal courts do not have the power to

decide issues beyond the authority granted by Congress. *Farkas v.*

*Bridgestone/Firestone, Inc.*, 113 F. Supp. 2d 1107 (W.D. Ky. 2000).

 This Court has also previously considered the efficacy of staying a motion to

remand subsequent to a conditional transfer order to the Judicial Panel on Multidistrict

Litigation.  Noting that pursuant to the MDL rules of procedure, the conditional transfer

order does not limit pretrial jurisdiction of the court in which the action is pending, a

motion to stay a pending motion to remand was denied. *State of South Carolina ex rel.*

*McMaster v. Astra Zeneca Pharmaceuticals, LP,* No. 09-387-HFF, 2009 U.S. Dist.

LEXIS 39174 (D.S.C. May 5, 2009). The State would respectfully request that the Court

similarly deny Defendant's Motion to Stay.

## II. Plaintiff's Complaint Does Not Confer Jurisdiction Under The Substantial Federal Question Doctrine.

 Merck concedes that the test for conferring jurisdiction under the substantial

federal question doctrine requires the application of the test set forth in *Grable & Sons*

*Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005).  Merck contends the test

is satisfied because the Plaintiff's claims require resolution of complex federal questions

of Medicaid law and because exercise of jurisdiction will not implicate federalism

concerns.

 Merck contends that the Court cannot address the merits of Plaintiff's state law

claims without substantially examining the federal Medicaid statute.  This exact argument

3

has been advanced and rejected three times by this Court in *Eli Lilly, Janssen* and *Astra*

*Zeneca*:

> "The Federal Medicaid Act allows states to 'exclude or otherwise restrict coverage of a covered outpatient drug if…the prescribed use is not for a medically accepted indication.' *42 U.S.C. §139r-8(d)(1)(B) (West Supp. 2007)*. In addition, the Act defines the term 'medically accepted indication.' *42 U.S.C. § 139r-8(k)(6) (West Supp. 2007)*. Thus, the Defendants argue that 'a critical federal question is presented by the complaint is whether the prescriptions that the State alleges should not have been reimbursed were in fact authorized by -- and required to be covered under -- federal Medicaid law.' [citation omitted]
>
> The court finds that in the instant case, no substantial federal question exists to support a finding of federal court jurisdiction. The Defendants' liability will solely depend upon their respective breach of duties as defined and created by state law. 'Simply [*14] put, it is not the act of causing the submission of a claim for a non-medically accepted indication that creates liability under the state law causes of action, but rather the act of causing the submission of a false and fraudulent claim.' *Pennsylvania v. Eli Lilly & Co., Inc., [511 F.Supp.2d 576, 582 (E.D. Pa. 2007).]* For example, if the State proves that the Defendants violated the Federal Medicaid Act, it would not necessarily follow that the Defendants committed Medicaid fraud as defined in *S.C. Code Ann. §§ 43-7-60*.
>
> ….
>
> Furthermore, even if the Defendants could demonstrate the existence of a substantial and contested federal question in the instant case, 'the federal issue will ultimately qualify for a federal forum only if federal jurisdiction is consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of *§ 1331*.' *Grable, 545 U.S. at 313-14*. The Defendants have failed to make this showing.
>
> In general, 'the absence of a federal private right of action [is] evidence relevant to, but not dispositive of, the sensitive judgments about congressional intent that *§ 1331* requires.' *Id. at 318* [internal [*15] quotation marks omitted). However, in contrast to the facts in *Grable*, a finding of federal jurisdiction over any state cause of action implicating provisions of the Federal Medicaid Act and its accompanying regulations could 'attract[] a horde of original fillings and removal cases raising other state claims with embedded federal issues.' *Id*. Under these circumstances, the fact that Congress provided no private right of action in the Federal Medicaid Act presents compelling evidence that a finding of federal jurisdiction in the instant case would not be 'consistent with congressional judgment about the sound division of labor between state and federal courts.' *Id. at 313*.

Further supporting this finding is the fact that the Federal Medicaid Act requires states to seek recovery of Medicaid funds from liable third parties. *42 U.S.C. § 1396a(a)(25) (West Supp. 2007); see New York v. Lutheran Center for the Aging, Inc. 957 F. Supp. 393, 403 (E.D.N.Y. 1997)*('Where a federal statute such as Medicaid requires a state to enforce liability against a third party but does not provide the ground for that liability, nor require the establishment of a ground for liability, federal question jurisdiction [*16] will not lie.') Therefore, a finding of federal jurisdiction In the instant case would not be 'consistent with congressional judgment about the sound division of labor between state and federal courts.' *Grable, 545 U.S. at 313.*" *McMaster v. Astra Zeneca,* 2009 U.S. Dist. LEXIS 39174 at *13-16 (citing.*McMaster v. Janssen Pharmaceutica Inc.*, 2007 U.S. Dist. LEXIS 49904, 2007 WL 2022173 at *2-3.

## III.   The Class Action Fairness Act ("CAFA") Does Not Confer Federal Jurisdiction over a State Sovereign's Action as a Class Action.

Paragraph 1 of the Complaint states that the state brings this action "to recover damages which the state, through its program payers, has sustained as purchaser of the prescription drug VIOXX ... ." In its response to the motion to remand, Merck concedes, as it must: (1) State program payers are South Carolina state agencies; and (2) the Complaint seeks to recover money spent by these state agencies. Merck directs this Court to no language in the Complaint that would support its position that the Complaint asks for damages on behalf of any individual who has ingested VIOXX or any non-state agency. Instead, Merck references the prayer of the Complaint as the sole support for its argument. Merck's entire argument is based upon the fact that the prayer of the Complaint seeks restitution for "program payers," not state program payers, and prays for "such other and further relief as justice and equity may require."

This issue is of no moment. In South Carolina, it is "elementary that the prayer of a complaint or counterclaim is no part thereof and cannot give character to it nor fix the liability of the parties." *Burnett v. Boukedes*, 240 S.C. 144, 125 S.E.2d 10, 17 (1962);

5

*Gardner v. Nash*, 225 S.C. 303, 82 S.E.2d 123 (1954). Accordingly, the Complaint can be only construed as asking for recovery on behalf of state agencies.

In order to remove this matter under the Class Action Fairness Act ("CAFA"), Merck must prove: (1) This matter meets the definition of a "class action;" (2) there are 100 or more members of the "class;" (3) there is diversity between a class member and Merck; and (4) the claims in this matter exceed the value of $5M. 28 U.S.C. § 1332(d).

This matter does not meet CAFA's definition of a class action. CAFA defines the class action as "any civil action filed under Rule 23 of the Federal Rules of Civil Procedure or similar state statute or rule of judicial procedure authorizing an action to be bought by one or more representative persons as a class action.'" 28 U.S.C. § 1332(d)(1)(B)(emphasis added). This suit was not filed under Rule 23 F.R.C.P. or the South Carolina Class Action Statute. Nor was this matter filed under a state "rule of judicial procedure … as a class action."

Merck claims that parens patriae actions are a "rule of judicial procedure authorizing" a representative action. While a parens patriae action is a representative suit, that is not the end of the inquiry. CAFA requires not only the case be a representative one, but that it be brought "as a class action." Merck ignores this latter requirement. This matter was not filed as a class action and accordingly does not meet requirements of CAFA.

Merck also claims that our Unfair Trade Practices Act (Section 39-5-10, et seq.) S.C. Code "authorizes the Attorney General to bring a representative action, specifically pursuant to Section 39-5-50. This section allows the Attorney General to bring an action in the name of the state for a temporary restraining order, temporary injunction, or

6

permanent injunction.  Yet, Section (b) does not authorize the Attorney General to bring a class action for damages.  Accordingly, while this matter is assuredly a representative action, it is not a "class action" pursuant to CAFA and cannot be removed on that basis.

Finally, Merck has provided no proof whatsoever that the "100 or more class members" requirement has been met in this case.  The burden is undoubtedly on Merck to establish prima facie evidence that all of the statutory prerequisites for removal under the Class Action Fairness Act and the State of South Carolina denies that there are 100 or more state program payors for which this action seeks to recover monies wrongfully charged to the State of South Carolina.  This fact alone prohibits removal of this action under CAFA at this time and does not prejudice the Defendant inasmuch as removal could always be sought in the future should the Defendant later prove sufficient grounds for removal.

## CONCLUSION

Inasmuch as Merck has failed to satisfy the requisites of federal question jurisdiction, this Court should remand this case to the Greenville County Circuit Court.

7

Respectfully submitted,

**STATE OF SOUTH CAROLINA
OFFICE OF THE ATTORNEY
GENERAL**

By:    <u>s/Henry D. McMaster</u>
Henry D. McMaster, Attorney
General
Federal Bar No. 2887
John W. McIntosh
Chief Deputy Attorney General
Federal Bar No. 2842
C. Havird Jones, Jr.
Senior Assistant Attorney General
Federal Bar No. 2227
P.O. Box 11549
Columbia, SC 29211
(803) 734-3970 Telephone
(803) 734-3677 Fax

**COVINGTON, PATRICK, HAGINS,
STERN & LEWIS, P.A.**

By:    <u>s/Eugene C. Covington, Jr.</u>
Eugene C. Covington, Jr
Federal Bar No. 325
P.O. Box 2343
Greenville, SC 29602
(864) 242-9000 Telephone
(864) 233-9777 Fax

**ROE, CASSIDY, COATES & PRICE, PA**

By:    <u>s/William A. Coates</u>
William A. Coates
Federal Bar No. 183
P.O. Box 10529
Greenville, SC 29603
(864) 349-2600 Telephone
(864) 349-0303 Fax

8

**JANET, JENNER & SUGGS, LLC**

By:   <u>s/Kenneth M. Suggs</u>
        Kenneth M. Suggs
        Federal Bar No. 3422
        500 Taylor Street
        Columbia, SC 29201
        (410) 653-3200 Telephone
        (410) 653-9030 Fax

# EXHIBIT A

FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS    2005 AUG 29  PM 4: 55
AUSTIN DIVISION

CLERK U.S. COURT
WESTERN DIST. TEXAS

BY ___

| | | |
|---|---|---|
| THE STATE OF TEXAS, | § | |
| | § | |
| PLAINTIFF, | § | |
| | § | |
| V. | § | CAUSE NO. A-05-CA-606-LY |
| | § | |
| MERCK & CO., INC., | § | |
| | § | |
| DEFENDANT | § | |

## ORDER GRANTING PLAINTIFF'S MOTION TO REMAND

Before the Court are (1) the MOTION OF THE STATE OF TEXAS TO REMAND ACTION TO TEXAS STATE COURT filed August 4, 2005, (Doc. #3); (2) THE STATE OF TEXAS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO REMAND filed August 4, 2005 (Doc. #4); (3) OPPOSITION OF DEFENDANT MERCK & CO., INC. TO PLAINTIFF'S MOTION TO REMAND filed August 18, 2005 (Doc. #11); (4) THE STATE OF TEXAS' OPPOSED REQUEST FOR EXPEDITED CONSIDERATION ON ITS MOTION TO REMAND filed August 10, 2005 (Doc. #6); (5) DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR EXPEDITED CONSIDERATION OF PLAINTIFF'S MOTION TO REMAND filed August 12, 2005 (Doc. #7); (6) MOTION BY DEFENDANT MERCK & CO., INC. TO STAY ALL PROCEEDINGS PENDING TRANSFER DECISION BY THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION filed August 8, 2005 (Doc. #5); (7) OPPOSITION OF STATE OF TEXAS TO DEFENDANT'S MOTION TO STAY ALL PROCEEDINGS filed August 12, 2005 (Doc. #8); and (8) MERCK'S REPLY IN SUPPORT OF MOTION TO STAY filed August 16, 2005 (Doc. #9). Having considered the motions, responses, and reply, the Court grants Plaintiff's motion to remand, dismisses Plaintiff's request for an expedited hearing, and dismisses Defendant Merck & Co. Inc.'s motion to stay for the following reasons.

*13*

## I. Background

On June 30, 2005, the State of Texas ("Texas") as the Plaintiff filed suit in state court in Travis County against Merck & Co. Inc. ("Merck") regarding Merck's alleged misrepresentations about VIOXX, which had been placed on Texas's Medicaid formulary. Texas brought suit against Merck for damages and civil penalties pursuant to the State of Texas Medicaid Fraud Prevention Act ("TMPFA"). *See* TEX. HUM. RES. CODE §36.001- §36.132 (2005). In part, Texas alleges that Merck made false statements or misrepresentations of material fact concerning the safety of VIOXX, concealed or failed to disclose the truth about VIOXX, and made claims under the Texas Medicaid Program for a product that is substantially inadequate or inappropriate when compared to generally recognized standards within the health care industry or for a product that is otherwise inappropriate. Texas alleges that Merck's conduct regarding VIOXX violates TMPFA sections 36.002(1), (2), (4) and (7). TEX. HUM. RES. CODE §§ 36.002(1), (2), (4) & (7).   As damages, Texas seeks restitution with interest for the value of all payments which Texas has made for VIOXX prescriptions under the Texas Medicaid Program; civil penalties; twice the value of all payments which Texas has made for VIOXX prescriptions under the Texas Medicaid Program; and fees, expenses, and costs associated with the lawsuit.

Merck removed the lawsuit to this Court on August 2, 2005, on the basis of both federal-question and diversity jurisdiction. *See* 28 U.S.C. §§ 1331, 1332 & 1441 (2005). In its notice of removal, Merck argues federal-question jurisdiction exists because Texas's "claims are premised on the allegations that Merck violated regulations promulgated and enforced by the Food and Drug Administration . . . under statutory authority conferred by the federal Food, Drug & Cosmetic Act . . . 21 U.S.C. § 301, *et. seq*." Additionally, Merck claims Texas's petition raises "important federal

2

questions related to the federal Medicaid statute and it associated regulations." Merck claims that diversity jurisdiction exists because the Texas Health and Human Services Commission ("THHSC"), and not Texas, is the real plaintiff. Texas has now moved to remand the case.

## II. Analysis

Federal courts are courts of limited jurisdiction. *See Kokkonen v. Guardian Life Insurance Company of America*, 511 U.S. 375, 377 (1994). A federal court may exercise jurisdiction over cases only as expressly provided by the Constitution and laws of the United States. *See* U.S. CONST. art. III §§ 1-2; *see also Kokkonen*, 511 U.S. at 377. As such, "there is a presumption against subject matter jurisdiction that must be rebutted by the party bringing an action to federal court." *Coury v. Prot*, 85 F.3d 244, 248 (5th Cir. 1996). Thus, to support the propriety of removal, the defendant bears the burden of establishing facts demonstrating that the Court has subject-matter jurisdiction of the cause. *Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.3d 362, 365 (5th Cir. 1995). Any doubt as to the propriety of the removal is to be resolved in favor of remand. *Acuna v. Brown & Root Inc.*, 200 F.3d 335, 339 (5th Cir. 2000).

In the present case, Merck has not satisfied its burden of proving the existence of diversity jurisdiction. Texas is the named plaintiff in the lawsuit, and it is well-settled law that a state is not a citizen for purposes of diversity jurisdiction. *See Texas Dep't of Hous. & Cmty. Affairs v. Verex Assurance, Inc.*, 68 F.3d 922, 926 (5th Cir.1995). Where a state is a party, there can be no federal jurisdiction on the basis of diversity of citizenship because the state is not a citizen for purposes of diversity jurisdiction. *Id. See also* 13B C. Wright, A. Miller, & E. Cooper, FEDERAL PRACTICE AND PROCEDURE § 3602, p. 366-67 (2d ed. 1984).

3

Nor has Merck persuaded the Court that the real party in interest is not Texas but THHSC. For example, TMPFA makes clear that a person who commits an unlawful act under the statute "is liable to the *state*." TEX. HUM. RES. CODE § 36.052(a) (emphasis added). By the express language of the statute under which Texas seeks to hold Merck liable, a wrongdoer is liable to Texas, not to THHSC. Further, Subchapter B is entitled "Action By Attorney General," and section 36.052(e) of the subchapter specifically authorizes the attorney general, not THHSC, to bring the type of action that Texas, acting through the attorney general, has brought against Merck. TEX. HUM. RES. CODE § 36.052(e). There can be no question that Texas is the real party in interest in this lawsuit.

Likewise, Merck has not carried its burden of proving the existence of federal-question jurisdiction. A determination that a cause of action presents a federal question depends upon the allegations of the plaintiff's well-pleaded complaint. *Carpenter*, 44 F.3d at 366. Generally, a suit arises under federal law if there appears on the face of the complaint some substantial, disputed question of federal law. *Id.* Here, based on Texas's state-court petition, Texas clearly has asserted against Merck only Texas state-law claims under a Texas statute.

Specifically, Texas sues Merck under the following TMPFA provisions:

A person commits an unlawful act if the person:

(1) knowingly or intentionally makes or causes to be made a false statement or misrepresentation of a material fact:
(A) on an application for a contract, benefit, or payment under the Medicaid program; or
(B) that is intended to be used to determine a person's eligibility for a benefit or payment under the Medicaid program;

\* \* \* \*

(2) knowingly or intentionally conceals or fails to disclose an event:
(A) that the person knows affects the initial or continued right to a benefit or payment under the Medicaid program of:

4

(i) the person; or
(ii) another person on whose behalf the person has applied for a benefit or payment or is receiving a benefit or payment; and
(B) to permit a person to receive a benefit or payment that is not authorized or that is greater than the payment or benefit that is authorized;

\* \* \* \*

(4) knowingly or intentionally makes, causes to be made, induces, or seeks to induce the making of a false statement or misrepresentation of material fact concerning:
(A) the conditions or operation of a facility in order that the facility may qualify for certification or recertification required by the Medicaid program, including certification or recertification as:
(i) a hospital;
(ii) a nursing facility or skilled nursing facility;
(iii) a hospice;
(iv) an intermediate care facility for the mentally retarded;
(v) an assisted living facility; or
(vi) a home health agency; or
(B) information required to be provided by a federal or state law, rule, regulation, or provider agreement pertaining to the Medicaid program;

\* \* \* \*

(7) knowingly or intentionally makes a claim under the Medicaid program for:
(A) a service or product that has not been approved or acquiesced in by a treating physician or health care practitioner;
(B) a service or product that is substantially inadequate or inappropriate when compared to generally recognized standards within the particular discipline or within the health care industry; or
(C) a product that has been adulterated, debased, mislabeled, or that is otherwise inappropriate.

TEX. HUM. RES. CODE § § 36.002(1), (2), (4) & (7).

As the Court reads these particular TMPFA sections, they are not focused on or concerned with any regulations promulgated or enforced by the Food and Drug Administration, despite Merck's suggestion in its Notice of Removal. Rather, these state-law provisions, as well as Texas's allegations in its petition, involve Merck's conduct toward and with Texas in requesting and receiving approval from Texas to add VIOXX to Texas's Medicaid program. Further, the "Medicaid

5

program" referred to in these provisions is Texas's Medicaid program, not the federal medicaid program. *See* Tex. Hum. Res. Code § 36.001(6). The Court concludes that there are no federal questions involved in Texas's lawsuit against Merck.

Since neither diversity jurisdiction nor federal-question jurisdiction exists, the Court finds that remand is warranted.

**IT IS THEREFORE ORDERED** that the Motion of the State of Texas to Remand Action to Texas State Court (Doc. #3) is **GRANTED**.

**IT IS FURTHER ORDERED** that The State of Texas' Opposed Request for Expedited Consideration on Its Motion to Remand (Doc. #6) is **DISMISSED**.

**IT IS FURTHER ORDERED** that the Motion by Defendant Merck & Co., Inc. to Stay All Proceedings Pending Transfer Decision By the Judicial Panel on Multi District Litigation (Doc. #5) is **DISMISSED**.

**IT IS FINALLY ORDERED** that this action is **REMANDED** to the 345th Judicial District Court of Travis County, Texas.

**SIGNED** the 24th of August 2005.

LEE YEAKEL
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


MICHAEL A. COX, EX REL
THE STATE OF MICHIGAN and
THE MICHIGAN DEPARTMENT
of COMMUNITY HEALTH,

        Plaintiffs,

                                    CASE NO. 1:08-CV-918

v.

                                      HON. ROBERT J. JONKER

MERCK & CO., INC.,

        Defendant.

_____/

## ORDER

      This matter is before the Court on Defendant's Motion to Stay All Proceedings

Pending Transfer Decision by the Judicial Panel on Multidistrict Litigation (docket # 3) and

Plaintiffs' Motion to Remand (docket # 9). A hearing on the motions took place on January

16, 2009 (*see* docket # 13). Based on its review of the record, and for the reasons stated in

detail in the hearing, including without limitation analysis of *Grable & Sons Metal Products,*

*Inc. v. Darue Eng'g & Mfg*, 545 U.S. 308 (2005), *Empire Healthchoice Assurance, Inc. v.*

*McVeigh*, 547 U.S. 677 (2006) (describing *Grable* as exemplifying a "slim category" of

jurisdiction) and *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555 (6th Cir. 2007) (*en banc*),

**IT IS ORDERED**:

1. Defendant's Motion to Stay All Proceedings Pending Transfer Decision by the Judicial Panel on Multidistrict Litigation (docket # 3) is **DENIED**; and

2. Plaintiffs' Motion to Remand (docket # 9) is **GRANTED**.

This matter is **REMANDED** to the Circuit Court for the 30th Judicial Circuit of Ingham County, Michigan.

Dated:    January 16, 2009                     /s/ Robert J. Jonker
                                               **ROBERT J. JONKER**
                                               **UNITED STATES DISTRICT JUDGE**