UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| | : | MDL NO. 1657 |
| IN RE: VIOXX | : | |
|     PRODUCTS LIABILITY LITIGATION | : | SECTION: L |
| | : | |
| | : | JUDGE FALLON |
| | : | |
| | : | MAG. JUDGE KNOWLES |
| .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. | : | |

**THIS DOCUMENT RELATES TO:** *Verie Poole v. Eichholz Law Firm, P.C., et al.*,
Case No. 11-1546

## ORDER & REASONS

Currently pending before the Court is Defendant Pacific Legal Funding, LLC's Motion for Suggestion of Remand, or, in the Alternative, to Transfer Venue Based on *Forum Non Conveniens*, and to Stay Discovery (Rec. Doc. 63202). The Court has reviewed the briefs and the applicable law and is now prepared to rule.

**I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

This proposed class action arises out of alleged improper conduct by a defendant law firm that represented plaintiffs in the Vioxx litigation and a defendant lender alleged to be improperly affiliated with the law firm. As has been set forth in greater detail in other Orders and Reasons, approximately fifty thousand claims for personal injury caused by the pharmaceutical Vioxx were resolved through a Settlement Program implemented pursuant to a $4.85 billion Master Settlement Agreement.

According to the complaint, Defendant Eichholz Law Firm, P.C., represented a number

of claimants who voluntarily enrolled in the Settlement Program.[1] By virtue of its position as counsel, the Firm was aware of when settlement funds would be released to it for distribution to its clients. However, the Firm did not inform its clients of when those funds would be forthcoming and instead referred its clients to Defendant Pacific Legal Funding, LLC, for high-interest loans or advances against those anticipated settlement funds. Pacific Legal Funding is alleged to have been formed and run by family members of attorneys with the Firm, and run out of the Firm's offices. However, the clients allegedly were not informed of those connections between the Firm and Pacific Legal Funding, or that the Firm would financially benefit from the loans. Finally, when settlement funds were released, the Firm is alleged to have caused a portion of those funds to pay the principal, interest, and fees owed on loans issued by Pacific Legal Funding. In essence, the Firm is alleged to have abused its position and profited by misleading its clients to take out unnecessary high-interest loans. Plaintiff states, on information and belief, that the Firm's "primary reason for creating Pacific was to recoup some or all of the attorneys' fees that [the Firm] lost as a result of" the Court's Order capping attorneys' fees at 32% of claimants' recovery.

Plaintiff Verie Poole filed this proposed class action in the United States District Court for the Southern District of Georgia alleging fraud, breach of fiduciary duty, usury under Georgia law, and civil RICO violations. Plaintiff seeks to represent a class of all Eichholz clients who received a settlement and obtained a loan or advance from Pacific Legal Funding. The complaint was filed on June 6, 2011. On July 11, 2011, the Judicial Panel on Multidistrict

---

[1] Plaintiffs allege that the affected class "is anticipated to consist of scores, and possibly hundreds of individuals." (Rec. Doc. 1 at 3). Pacific Legal suggests that an "initial investigation" indicates only twenty-eight Eichholz clients received loans or advances.

Litigation transferred the case to this Court.

## II. Present Motion

Defendant Pacific Legal Funding now moves for a suggestion of remand of the case back to the United States District Court for the Southern District of Georgia, or alternatively for transfer to the Southern District of Georgia pursuant to the doctrine of *forum non conveniens*. It suggests that the matter involves Georgia residents, Georgia contracts, Georgia witnesses, and Georgia law and would not benefit from coordinated pretrial proceedings in this MDL. The Firm filed a separate joinder in the motion.

Plaintiff Poole responds that this matter is properly the subject of proceedings in the MDL because it relates to the Court's interest in supervising the Settlement, protecting claimants, monitoring attorneys' fees, and exercising ethical supervision over the attorneys involved in the litigation. Plaintiff also argues that pretrial proceedings and discovery would be just as convenient in this Court as in Georgia.

## II. Law and Analysis

Pursuant to 28 U.S.C. § 1407(a), "[w]hen civil actions involving one or more common questions of fact are pending in different districts," the Judicial Panel on Multidistrict Litigation may transfer them to a district court "for coordinated or consolidated pretrial proceedings ... for the convenience of parties and witnesses and [to] promote the just and efficient conduct of such actions." Pursuant to the Rules of the JPML, it is the Panel that remands cases to the transferor courts because it is the Panel that transferred those cases in the first instance. However, "the Panel is reluctant to order a remand absent the suggestion of the transferee judge." JPML Rule 10.3(a). Thus, "[t]ypically, the transferee judge recommends remand of an action, or a part of it,

to the transferor court at any time by filing a suggestion of remand with the Panel." JPML Rule 9.1(a).

Defendants argue that a suggestion of remand of this case is warranted.[2] They contend that pretrial proceedings in the MDL are unnecessary because there are no questions of fact common between this case and any other case pending in the MDL. This case deals with the attorney-client relationship between Georgia citizens governed by Georgia law, rather than Merck's potential liability for its manufacture and marketing of Vioxx. According to Defendants, it is neither just nor efficient to require this Georgia-focused case to complete pretrial proceedings in this district.

In opposition to a suggestion of remand, Plaintiff argues that Defendants concocted their scheme to "recoup" amounts in excess of the 32% attorneys' fee cap set by the Court. She characterizes this dispute as "directly related to an issue that this Court has already thoroughly examined and ruled upon," and that the Court has an interest in enforcing its rulings.

Plaintiff cites an example of another MDL court exercising supervisory authority over questionable fee dealings between attorneys and their clients from the Sulzer Hip Prosthesis MDL. *In re Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig.*, 290 F. Supp. 2d 840 (N.D. Ohio 2003). In that case, the transferee court oversaw proceedings that culminated in a $1.045 billion settlement agreement. *See id.* at 843-45. The settlement agreement limited the fees an attorney could collect for work on behalf of a client who signed a contingent fee agreement after

---

[2]Defendants argue in the alternative for transfer of the case pursuant to 28 U.S.C. § 1404(a) for essentially the same reasons of convenience and lack of connection to the MDL. Because Defendants argue for transfer back to the original transferor court, rather than to some other court, the argument appears to be redundant.

the date the settlement was announced because, after that point, "there was no longer any substantial *contingency*." *See id.* at 846.[3] A number of attorneys side-stepped this limitation, and the transferee court exercised its continuing jurisdiction to protect the interests of the class members and to police the unethical behavior of those attorneys. *See id.* at 847-49, 853-55. As the court plainly stated, the "greedy" attorneys "insisted on receiving excessive compensation at the expense of their own clients." *Id.* at 855.

It is undisputed that this case exists against the contextual backdrop of the Vioxx multidistrict litigation. The Court's familiarity with the Vioxx settlement program could facilitate pretrial proceedings in this case. Moreover, the Court has an undeniable interest in policing the conduct of attorneys who enrolled their clients in the settlement program. And although the parties point out that witnesses and materials are largely found in Georgia, the Court's supervision of pretrial proceedings from this district is not inconsistent with the majority of the discovery actually taking place in Georgia. Indeed, it is part of the purpose of multidistrict litigation to consolidate proceedings in one court even though discovery may proceed across the country, or indeed across the world.

Under these circumstances, remand or transfer is not warranted at this time. The allegations in the Complaint implicate this Court's supervision of the Master Settlement Agreement and the attorneys involved therein. Pretrial proceedings in an MDL frequently occur at a geographical remove from the site of the transferee court; accordingly, discovery may take

---

[3]The settlement program funded a portion of a client's fee liability to his or her attorney, and an attorney could pursue additional funds from the client, up to the amount of a contractual contingent fee; however, for post-settlement claims, the client could collect no more than $10,000 from the settlement fund, and the client and attorney both had to agree that the amount would be payment in full for the attorney. *See id.* at 846-47.

place in Georgia under this Court's supervision with little impediment. The Court will work with the parties to minimize whatever minor inconvenience might be posed by having pretrial proceedings supervised in this MDL.

## III. CONCLUSION

For the foregoing reasons, IT IS ORDERED that the Defendants' motion is DENIED.

New Orleans, Louisiana, this 23rd day of November, 2011.

                                               UNITED STATES DISTRICT JUDGE