## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | |
|     Products Liability Litigation | * | |
| | * | |
| This Document Relates to: | * | MDL No. 1657 |
| | * | |
|     COUNTY OF SANTA CLARA, on behalf | * | SECTION L |
|     of itself and all others similarly situated, | * | |
| | * | JUDGE ELDON E. FALLON |
|               Plaintiff, | * | |
| | * | MAGISTRATE JUDGE |
|    versus | * | KNOWLES |
| | * | |
|     MERCK & CO., INC., | * | |
| | * | |
|              Defendant. | * | |
| | * | |
|    Case No. 2:06-cv-09382 | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## DEFENDANT'S REPLY IN SUPPORT OF
## MOTION FOR JUDGMENT ON THE PLEADINGS

## TABLE OF CONTENTS

**Page**

INTRODUCTION ...........................................................................................................1

ARGUMENT ................................................................................................................2

I.     PLAINTIFF'S NJCFA CLAIM FAILS BECAUSE ITS ALLEGATIONS ARE GOVERNED BY CALIFORNIA LAW ....................................................................2

II.    PLAINTIFF'S CLAIMS FAIL FOR OTHER REASONS ...................................6
      A.    Plaintiff Has Not Adequately Pled Causation .........................................6
      B.    Plaintiff's NJCFA Claim Would Be Subsumed By The NJPLA If It Were Otherwise Valid. .............................................................................10
      C.    Santa Clara Lacks Standing Under The NJCFA .....................................11

III.   PLAINTIFF'S CLAIM FOR UNJUST ENRICHMENT ALSO FAILS AS A MATTER OF LAW ............................................................................................12

IV.   PLAINTIFF SHOULD NOT BE GRANTED LEAVE TO FILE AN AMENDED COMPLAINT. ...................................................................................................13
      A.    Plaintiff Cannot State A Claim For Fraudulent Concealment Under California Law. ....................................................................................14
      B.    Plaintiff Cannot State A Valid Claim Under California's FAL .................16

CONCLUSION .............................................................................................................17

# TABLE OF AUTHORITIES

## FEDERAL CASES

**Page(s)**

*Adams Family Trust v. John Hancock Life Ins. Co., U.S.A.*,
    424 F. App'x 377 (5th Cir. 2011)........................................................................13

*Agostino v. Quest Diagnostics, Inc.*,
    No. 04-4362 (SRC), 2010 U.S. Dist. LEXIS 135310 (D.N.J. Dec. 22, 2010)......................4

*Agostino v. Quest Diagnostics Inc.*,
    256 F.R.D. 437 (D.N.J. 2009) ............................................................................2

*Arlandson v. Hartz Mt. Corp.*,
    No. 10-1050, 2011 U.S. Dist. LEXIS 56462 (D.N.J. May 26, 2011) ...................................2

*In re Avandia Marketing, Sales Practices & Products Liability Litigation*,
    No. 10-1637, 2011 U.S. Dist. LEXIS 124458 (E.D. Pa. Oct. 26, 2011)............................16

*County of Santa Clara v. Astra U.S., Inc.*,
    428 F. Supp. 2d 1029 (N.D. Cal. 2006) ..............................................................16

*In re Digitek Products Liability Litigation*,
    MDL No. 1968, 2010 U.S. Dist. LEXIS 139388 (S.D. W. Va. Oct. 20, 2010) ....................4

*Eshagh v. Terminix International Co., L.P.*,
    No. 1:11-cv-00222-OWW-DLB, 2011 U.S. Dist. LEXIS 80848
    (E.D. Cal. July 25, 2011)........................................................................................16

*First v. Allstate Insurance Co.*,
    222 F. Supp. 2d 1165 (C.D. Cal. 2002)..............................................................14

*Flowers v. Wells Fargo Bank, N.A.*,
    No. CV 98-3394 RJK, 2011 U.S. Dist. LEXIS 75429 (N.D. Cal. July 13, 2011) ...............15

*Foster Poultry Farms v. Alkar-Rapidpak-MP Equipment, Inc.*,
    No. 1:11-cv-00030 ANI SMS, 2011 U.S. Dist. LEXIS 61008 (E.D. Cal. June 8, 2011) ....13

*Gray v. Bayer Corp.*,
    No. 08-4716 (JLL), 2011 U.S. Dist. LEXIS 79498 (D.N.J. July 21, 2011).....................5, 6

*Hearn v. R.J. Reynolds Tobacco Co.*,
    279 F. Supp. 2d 1096 (D. Ariz. 2003)..................................................................3

*Johnson v. Riddle*,
    No. 2:98-CV-599 TS, 2007 U.S. Dist. LEXIS 11101 (D. Utah Feb. 15, 2007).................17

*Kings Choice Neckwear, Inc. v. FedEx Corp.*,
    No. 07-CV-275 (DMC), 2009 U.S. Dist. LEXIS 18756 (D.N.J. Mar. 10, 2009) .................3

*Laney v. Am. Std. Cos.*,
    No. 07-3991  2010 U.S. Dist. LEXIS 100129 (D.N.J. Sept. 23, 2010) ................................4

*Louisiana v. Merck & Co.*,
    No. 05-md-1657, 2010 U.S. Dist. LEXIS 142767 (E.D. La. Mar. 31, 2010) ......................9

*Maniscalco v. Brother Int'l Corp.*,
No. 3:06-CV-04907(FLW), 2011 U.S. Dist. LEXIS 67772 (D.N.J. June 24, 2011) ............2

*Marcus v. BMW of N. Am., LLC*,
No. 08-5859 (KSH), 2010 U.S. Dist. LEXIS 122908 (D.N.J. Nov. 19, 2010) ....................6

*Martin v. Magee*,
No. 10-2786, SECTION: R(4), 2011 U.S. Dist. LEXIS 61977 (E.D. La. June 10, 2011)...14

*In re Mercedes-Benz Tele Aid Contract Litigation*,
257 F.R.D. 46 (D.N.J. 2009) ................................................................................................4

*Milne Emps. Ass'n v. Sun Carriers, Inc.*,
960 F.2d 1401 (9th Cir. 1992) ...........................................................................................14

*Nafar v. Hollywood Tanning Sys.*,
339 F. App'x 216 (3d Cir. 2009)......................................................................................4, 5

*Nafar v. Hollywood Tanning Systems, Inc.*,
No. 06-cv-3826 (DMC), 2008 WL 3821776 (D.N.J. Aug. 12, 2008)...................................4

*In re OnStar Contract Litigation*,
No. 2:07-MDL-01867, 2010 U.S. Dist. LEXIS 87471 (E.D. Mich. Aug. 25, 2010)............3

*Payne v. FujiFilm U.S.A., Inc.*,
No. 07-385 (GEB), 2010 U.S. Dist. LEXIS 52808 (D.N.J. May 28, 2010).........................3

*Platt Electric Supply, Inc. v. EOFF Electric, Inc.*,
522 F.3d 1049 (9th Cir. 2008)...........................................................................................14

*Privacywear, Inc. v. QTS  & CTFC, LLC*,
No. EDCV 07-1532-VAP (OPx), 2009 U.S. Dist. LEXIS 74496
(C.D. Cal. Aug. 20, 2009) ..................................................................................................16

*Saia v. Pizza Hut of Am., Inc.*,
No. 11-776 SECTION: J (5), 2011 U.S. Dist. LEXIS 76780 (E.D. La. July 15, 2011) ......13

*S. Ill. Laborers' & Emp'rs Health & Welfare Fund v. Pfizer Inc.*,
No. 08 CV 5175(KMW), 2009 WL 3151807 (S.D.N.Y. Sept. 30, 2009)...........................11

*In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*,
No. 2:06-cv-5774, 2010 WL 2346624 (D.N.J. June 9, 2010)...............................................12

*In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*,
No. 2:06-cv-5774 (SRC), 2009 U.S. Dist. LEXIS 58900 (D.N.J. July 10, 2009) .........10, 12

*Se. Laborers Health & Welfare Fund v. Bayer Corp.*,
No. 10-13196, 2011 WL 5061645 (11th Cir. Oct. 24, 2011)............................................7, 8

*Std. Fire Ins. Co. v. MTU Detroit Diesel, Inc.*,
No. 07-3827 (GEB), 2009 U.S. Dist. LEXIS 72299 (D.N.J. Aug. 13, 2009) ....................12

*Stearns v. Select Comfort Retail Corp.*,
No. 08-2746 JF, 2009 U.S. Dist. LEXIS 48367 (N.D. Cal. June 5, 2009) .........................14

*Val-Com Acquisitions Trust v. Chase Home Finance LLC*,
No. 3:10-CV-1075-L, 2010 U.S. Dist. LEXIS 115309 (N.D. Tex. Oct. 28, 2010) ............13

*In re Vioxx Prods. Liab. Litig.*,
No. 1657 SECTION: L, 2007 U.S. Dist. LEXIS 83710 (E.D. La. Nov. 8, 2007) ..............16

## STATE CASES

*Bank of America Corp. v. Superior Court*,
198 Cal. App. 4th 862 (2011) .................................................................................15

*International Union of Operating Engineers Local No. 68 Welfare Fund v. Merck & Co., Inc.*,
929 A.2d 1076 (N.J. 2007) ..........................................................................3, 4, 9, 11

*International Union of Operating Engineers Local No. 68 Welfare Fund v. Merck. & Co., Inc.*,
894 A.2d 1136 (N.J. Super Ct. App. Div. 2006) ...................................................3

*International Union of Operating Engineers Local No. 68 Welfare Fund v. Merck & Co., Inc.*,
No. ATL-L-3015-03-MT, 2005 WL 2205341
(N.J. Super. Ct. Law Div. July 29, 2005) ..............................................................3

*LiMandri v. Judkins*,
52 Cal. App. 4th 326 (1997) .................................................................................15

*McDarby v. Merck & Co.*,
949 A.2d 223 (N.J. Super. Ct. App. Div. 2008) ..................................................11

*P.V. ex rel. T.V. v. Camp Jaycee*,
962 A.2d 453 (N.J. 2008) .......................................................................................4

*Persson v. Smart Investors*,
125 Cal. App. 4th 1141 (2005) ............................................................................15

*Rowe v. Hoffman-La Roche, Inc.*,
917 A.2d 767 (N.J. 2007) .......................................................................................5

*Sinclair v. Merck & Co.*,
948 A.2d 587 (N.J. 2008) .....................................................................................11

*Varacallo v. Massachusetts Mutual Life Insurance Co.*,
752 A.2d 807 (N.J. Super. Ct. App. Div. 2000) ...................................................7

*In re Vioxx Class Cases*,
180 Cal. App. 4th 116 (2009) ..............................................................................17

## STATUTE

N.J. Stat. Ann. § 2A:58C-1(b)(3) ....................................................................................10

## OTHER AUTHORITY

Matthew S. Connors,
*Don't Make A Federal Case Out of It: An Argument Why the Claims of Plaintiffs
Affected by a Nationwide Fraud Should Not Be Certified as a Class Action Under
Rule 23(b)(3)*, 13 U. Pa. J. Bus. L. 499 (2011) ...................................................4

## <u>INTRODUCTION</u>

Plaintiff's opposition brief, like its complaint, is based in large part on a flawed premise: i.e., that a non-New Jersey plaintiff can invoke that state's consumer-protection and unjust-enrichment laws to seek redress for transactions that occurred in its home state.  This fallacy has been rejected time and again by courts applying New Jersey's choice-of-law regime.  As these courts have recognized, the state in which a plaintiff resides generally has the most significant relationship with that plaintiff's consumer-fraud claims – and its law should therefore govern.  Choice-of-law aside, however, Plaintiff's claims still fail for numerous other reasons:  (1) it does not assert a viable theory of causation under any state's laws; (2) its New Jersey Consumer Fraud Act ("NJCFA") claims would be subsumed by the New Jersey Product Liability Act ("NJPLA") if New Jersey law did apply; (3) it is not a consumer for purposes of the NJCFA; and (4) unjust enrichment is not a standalone claim under either California or New Jersey law.  In seeking to rebut these arguments, Plaintiff relies on caselaw that has been directly reversed or broadly criticized – or is simply inapposite.  Accordingly, Plaintiff's efforts to salvage its claims all fail.

Presumably recognizing these many weaknesses, Plaintiff alternatively seeks leave to amend its complaint in order to:  (1) assert a claim for fraudulent concealment under California law; and (2) transform this case into an entirely new lawsuit under California's False Advertising Law ("FAL") on behalf of the "people of California."  Because these claims too are doomed to fail, the Court should grant Merck judgment on the pleadings and reject Plaintiff's request to file an amended complaint as futile.

**ARGUMENT**

**I.** **PLAINTIFF'S NJCFA CLAIM FAILS BECAUSE ITS ALLEGATIONS ARE GOVERNED BY CALIFORNIA LAW.**

Plaintiff's NJCFA claim fails first and foremost because the Act has no application to Plaintiff's allegations.  As explained in Merck's opening brief, New Jersey courts applying that state's choice-of-law regime have routinely held that consumer-fraud claims involving allegedly defective products are governed by the law of the plaintiff's home state.  (*See* Mot. at 7-8 (citing cases).)  Plaintiff argues that its case warrants a different result, but its arguments are based on highly dubious caselaw and distorted public-policy arguments.  (*See* Opp'n at 7-14.)

Contrary to Plaintiff's contention that the choice-of-law question posed by its case has "already been decided" adversely to Merck (*id.* at 8 (capitalization altered)), courts have repeatedly and unequivocally rejected attempts to apply the NJCFA to claims by non-New Jersey plaintiffs.  *See, e.g.*, *Arlandson v. Hartz Mt. Corp.*, No. 10-1050, 2011 U.S. Dist. LEXIS 56462, at *43-44 (D.N.J. May 26, 2011) ("Since the Court has determined that Plaintiffs' consumer fraud claims must be brought under their home states' laws, ***only New Jersey*** Plaintiffs may state an NJCFA claim.") (emphasis added); *Maniscalco v. Brother Int'l Corp.*, No. 3:06-CV-04907(FLW), 2011 U.S. Dist. LEXIS 67772, at *39-40 (D.N.J. June 24, 2011) ("because each Plaintiff:  (i) resides outside of New Jersey – in California and South Carolina respectively; (ii) purchased and used the MFC machines in their home states and; (iii) relied upon the allegedly deceptive conduct in their home states, the Court finds that" the NJCFA "does not apply"); *Agostino v. Quest Diagnostics Inc.*, 256 F.R.D. 437, 463 (D.N.J. 2009) ("The Court rejects Plaintiffs' claim that the NJCFA should apply nationwide," finding instead that "the state in which each plaintiff resides has the most significant relationship with the parties and the issues related to each plaintiff's consumer fraud claims"); *Payne v. FujiFilm U.S.A., Inc.*, No. 07-385

(GEB), 2010 U.S. Dist. LEXIS 52808, at *21-25 (D.N.J. May 28, 2010) (refusing to apply NJCFA to out-of-state plaintiffs because "none of the arguments raised by Plaintiffs . . . outweigh the strong presumption . . . that the consumer fraud law of each prospective class member's home state should apply to that member's consumer fraud claims"); *Kings Choice Neckwear, Inc. v. FedEx Corp.*, No. 07-CV-275 (DMC), 2009 U.S. Dist. LEXIS 18756, at *13-14 (D.N.J. Mar. 10, 2009) (declining to apply NJCFA to out-of-state plaintiffs); *In re OnStar Contract Litig.*, No. 2:07-MDL-01867, 2010 U.S. Dist. LEXIS 87471, at *35 (E.D. Mich. Aug. 25, 2010) ("under New Jersey law, there is a presumption that their respective home states have the predominant relationship to the parties and issues in this [consumer fraud] action").

Plaintiff's authorities to the contrary are outliers to say the least:  two of them have been ***reversed***, and the other has been widely criticized.  The first pair of citations – lower-court holdings in the *Engineers* litigation brought by third-party payors ("TPPs") over Vioxx, *Int'l Union of Operating Engineers Local No. 68 Welfare Fund v. Merck & Co., Inc.*, No. ATL-L-3015-03-MT, 2005 WL 2205341 (N.J. Super. Ct. Law Div. July 29, 2005) ("*Engineers I*"), and *Int'l Union of Operating Engineers Local No. 68 Welfare Fund v. Merck. & Co., Inc.*, 894 A.2d 1136 (N.J. Super Ct. App. Div. 2006) – were reversed by the New Jersey Supreme Court, *see* 929 A.2d 1076 (N.J. 2007) ("*Engineers III*"), a fact barely acknowledged in Plaintiff's brief. Thus, while it is true that the lower courts in *Engineers* would have applied the NJCFA to a nationwide class (*see* Opp'n at 8), those holdings have no precedential value.  *See, e.g.*, *Hearn v. R.J. Reynolds Tobacco Co.*, 279 F. Supp. 2d 1096, 1111 (D. Ariz. 2003) ("[a]s Plaintiffs should be well aware, reversed opinions carry no precedential value").  This is all the more true because, even though the New Jersey Supreme Court reversed on other grounds, it went out of its way to note that Merck had "strong arguments" on choice of law – and to express serious doubts about

the merits of the lower courts' choice-of-law analyses. *Engineers III*, 929 A.2d at 1086 n.3 ("certification of a nationwide class is 'rare,' and application of the law of a single state to all members of such a class is even more rare") (citation omitted).

Plaintiff's reliance on *Nafar v. Hollywood Tanning Systems, Inc.*, No. 06-cv-3826 (DMC), 2008 WL 3821776, at *6 (D.N.J. Aug. 12, 2008) (Opp'n at 13 n.7), is similarly misguided because that ruling was vacated by the Third Circuit, which ordered the district court to rethink its choice-of-law analysis in light of the New Jersey Supreme Court's adoption of the "significant relationship" test in *P.V. ex rel. T.V. v. Camp Jaycee*, 962 A.2d 453, 455-56 (N.J. 2008). *See Nafar v. Hollywood Tanning Sys.*, 339 F. App'x 216, 221 (3d Cir. 2009).

Plaintiff's third case – *In re Mercedes-Benz Tele Aid Contract Litigation*, 257 F.R.D. 46 (D.N.J. 2009) (Opp'n at 12), in which a federal judge applied New Jersey law to nationwide consumer litigation – has been variously criticized as "flawed," *Agostino v. Quest Diagnostics, Inc.*, No. 04-4362 (SRC), 2010 U.S. Dist. LEXIS 135310, at *21-23 (D.N.J. Dec. 22, 2010), not "appropriate precedent," *Laney v. Am. Std. Cos.*, No. 07-3991 (PGS), 2010 U.S. Dist. LEXIS 100129, at *67-68 (D.N.J. Sept. 23, 2010), and "at odds with controlling authority," *In re Digitek Prods. Liab. Litig.*, MDL No. 1968, 2010 U.S. Dist. LEXIS 139388, at *114 (S.D. W. Va. Oct. 20, 2010).[1]  As another judge from the District of New Jersey put it:

> While this Court agrees with the court in *Mercedes-Benz* that due consideration must be given to New Jersey's deterrent interest in enforcing the NJCFA . . . the Court concludes that, given the substantial contacts between Plaintiff's claims and the states where One-A-Day WeightSmart was purchased, to disregard the individual laws of those states in favor of a blanket application of New Jersey law would ignore their strong compensatory interest in this matter and would threaten to upset the balance of our federal system.

---

[1]     *See also* Matthew S. Connors, *Don't Make A Federal Case Out of It: An Argument Why the Claims of Plaintiffs Affected by a Nationwide Fraud Should Not Be Certified as a Class Action Under Rule 23(b)(3)*, 13 U. Pa. J. Bus. L. 499, 523 (2011) ("*In re Mercedes-Benz* court performed a flawed choice of law analysis.").

*Gray v. Bayer Corp.*, No. 08-4716 (JLL), 2011 U.S. Dist. LEXIS 79498, at *22 (D.N.J. July 21, 2011) (Linares, J.).  Thus, *Mercedes* is – at best – highly dubious precedent.

In addition to citing a few outlier cases, Plaintiff also argues that public policy favors application of the NJCFA because it requires mandatory treble damages and is therefore stricter than California's FAL.  (*See* Opp'n at 13.)  Relying on a single unpublished New Jersey case, *Jankowski v. Sandor*, No. A-0770-1012, 2011 N.J. Super. Unpub. LEXIS 2043, at *15 (N.J. Super. Ct. App. Div. July 27, 2011) – which does not "constitute precedent," N.J. R. 1:36-3 – Plaintiff contends that "[w]hen one state's laws are stricter than the other state's, applying the more relaxed law interferes with the policies of the stricter state, and undermines the uniformity and predictability of judicial administration."  (*See* Opp'n at 13 (quoting *Jankowski*, 2011 N.J. Super. Unpub. LEXIS 2043, at *15).)

But the New Jersey Supreme Court expressly rejected this very policy argument in *Rowe v. Hoffman-La Roche, Inc.*, 917 A.2d 767 (N.J. 2007).  There, a Michigan resident whose claims were barred under his own state's law sought to invoke the NJCFA on the ground that New Jersey's law would protect the consumer and punish and deter the manufacturer, a New Jersey resident.  *See id.* at 776.  The New Jersey Supreme Court disagreed, explaining that "[t]he question is not whether Michigan or New Jersey passed the better law," because "that is a normative judgment best suited for the legislative process."  *Id.*  Rather, a court's "inquiry is limited to which state has the greatest interest in applying its law."  *Id.*  And because the plaintiff had no connection with New Jersey, application of New Jersey law would "undercut[] Michigan's interests, while overvaluing our true interest in this litigation."  *Id.*; *see also, e.g.*, *Nafar*, 339 F. App'x at 221 (vacating choice-of-law analysis grounded in rationale that "the NJCFA is one of this nation's strongest consumer protection laws and its application will not

frustrate other states' consumer protection laws"); *Gray*, 2011 U.S. Dist. LEXIS 79498, at *16-22 (rejecting application of NJCFA to out-of-state plaintiffs even though that meant that a "company based in New Jersey could potentially defraud those consumers but escape the imposition of punitive damages" because "a blanket application of New Jersey law would ignore [the other states'] strong compensatory interest in this matter and would threaten to upset the balance of our federal system"); *Marcus v. BMW of N. Am., LLC*, No. 08-5859 (KSH), 2010 U.S. Dist. LEXIS 122908, at *27 (D.N.J. Nov. 19, 2010) ("each state in which a class member resides has an interest in protecting its consumers from in-state injuries caused by foreign corporations and in delineating the scope of recovery for its citizens under its own laws") (internal quotation marks and citation omitted).  Thus, the supposedly protective nature of New Jersey law is irrelevant to the choice-of-law analysis.

For all of these reasons, the Court should find that Plaintiff cannot advance a claim under the NJCFA – and that its common-law unjust-enrichment claim is governed by California law.

## II.    PLAINTIFF'S CLAIMS FAIL FOR OTHER REASONS.

### A.    Plaintiff Has Not Adequately Pled Causation.

As set forth in Merck's opening brief, Plaintiff has failed to adequately allege causation for purposes of its NJCFA and unjust-enrichment claims for two reasons:  (1) it does not sufficiently connect Merck's alleged misconduct to Santa Clara's claimed injuries; and (2) the allegations are doomed under the "individualized-proof" rule.  (*See* Mot. at 10-15.)  Plaintiff argues in response that:  (1) its allegations that Merck engaged in a large-scale and uniform marketing campaign are sufficient to satisfy its pleading burden with respect to causation; and (2) Plaintiff is different from a TPP, rendering most of Merck's authorities inapposite.  (*See* Opp'n at 15-18.)

**First**, Plaintiff argues that "Merck's broad, uniform campaign to promote Vioxx [and] the inclusion of Vioxx on the formulary by Santa Clara and its purchase of the drug constitutes prima facie proof of causation." (*Id.* at 16.)  In support of this argument, Plaintiff relies on *Varacallo v. Massachusetts Mutual Life Insurance Co.*, 752 A.2d 807, 817 (N.J. Super. Ct. App. Div. 2000), which ordered certification of a class of New Jersey residents who purchased so-called "vanishing premium" life insurance policies from the defendant insurance company.  *Id. at* 808-09.  The *Varacallo* court found that because plaintiffs had "succeed[ed] in proving that Mass Mutual withheld material information with the intent that consumers would rely on it in purchasing Mass Mutual's policy, the purchase of the policy by a person who was ***shown*** the literature would be sufficient to establish *prima facie* proof of causation."  *Id.* at 817 (emphasis added).  As other courts have recognized, however, *Varacallo* does not apply to cases such as this one, where there is no allegation that plaintiff or its employees were ever ***shown*** – much less influenced by – any particular misrepresentation.  *See Se. Laborers Health & Welfare Fund v. Bayer Corp.*, No. 10-13196, 2011 WL 5061645, at *7 (11th Cir. Oct. 24, 2011) (distinguishing *Varacallo* in affirming dismissal of NJCFA claim by TPP on causation grounds because the TPP's complaint was "devoid of allegations that [it], or any other proposed class member, actually relied on Bayer's representations").

In *Southeast Laborers*, for example, the plaintiff TPP brought a putative class action against defendants arising out of their alleged fraudulent marketing of the drug Trasylol.  *Id.* at *1-2.  Plaintiff asserted claims under, *inter alia*, the NJCFA, alleging that "Bayer engaged numerous doctors . . . to aggressively market Trasylol to the medical community and employed a fraudulent marketing scheme to mislead decision makers into believing that Trasylol's safety and efficacy profile justified its price of over $1,000.00 per dose."  *Id.* at *2.  After the district court

dismissed plaintiff's first and second amended complaints for failure to adequately plead causation, plaintiff filed a third amended complaint, which the court once again dismissed, this time with prejudice. *Id.* On appeal, plaintiff argued that under *Varacallo*, it was entitled to a "presumption of causation" based on the defendant's allegedly material omissions. *Id.* at *7. But the Eleventh Circuit found plaintiff's reliance on *Varacallo* to be "ill-founded." *Id.* After all, while the plaintiff in *Varacallo* "testified that he had read the alleged misstatements and relied upon them in deciding to purchase the policies at issue," the same was not true with respect to the plaintiff in *Southeast Laborers*. *Id.* Because the plaintiff had failed to establish how the defendant's purported misconduct allegedly caused its claimed injuries, the Eleventh Circuit affirmed dismissal of the NJCFA claim with prejudice. *Id.*

This case is just like *Southeast Laborers* – and nothing like *Varacallo*. While Plaintiff devotes nearly sixty pages of its complaint to levying charge after charge against Merck, Plaintiff is unable to offer a single allegation directly tying Merck's alleged misconduct to its claimed injuries. Rather, Plaintiff's bald assertion that "Merck's broad, uniform campaign to promote Vioxx [and] the inclusion of Vioxx on the formulary by Santa Clara and its purchase of the drug constitutes prima facie proof of causation" (Opp'n at 16) is precisely the type of "unsupported" claim of causation that was rejected by the Eleventh Circuit in *Southeast Laborers*. 2011 WL 5061645, at *6 ("Southeast's supposedly 'direct chain of causation' is ***unsupported*** by factual allegations.") (emphasis added).

***Second***, Plaintiff's attempt to distinguish Merck's authority fails.

According to Plaintiff, Merck's cases are "readily distinguished because they involve third-party payors." (Opp'n at 17.) But so does this case. Indeed, even Plaintiff has said so – at least in other litigation. *See, e.g.*, Pl.'s Opp'n To Def.'s Mot. To Dismiss Pl.'s 1st Am. Compl. at

32, Dkt. No. 13, *In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, No. 2:10-cv-1637 (E.D. Pa. filed Aug. 13, 2010) (attached as Ex. 1) (Santa Clara describing itself as a "county . . . third party payor").  And even here, Plaintiff refers to third-party payors throughout its complaint, presumably meaning itself and other California counties, since Plaintiff does not seek to represent a class of private TPPs.  (*See* Compl. ¶¶ 7, 10, 44-46, 48, 49, 53-55, 58.)  True, Santa Clara is a public, rather than private, entity, but this fact provides no basis for reaching any different legal conclusions as to causation, since a public TPP's role in the causal chain – providing payment for another person's drug purchases – is substantively identical to the role played by private TPPs.

For this reason, the Court's ruling in the Louisiana AG action is directly apposite. Plaintiff contends that the Louisiana case is different because it involved claims under the Louisiana Unfair Trade Practices Act ("LUTPA"), and concerned the State's Medicaid and prior-authorization programs.  (Opp'n at 18.)  This is a distinction without a difference.  After all, LUTPA, just like the NJCFA, requires causation (and not reliance).  *Louisiana v. Merck & Co.*, No. 05-md-1657, 2010 U.S. Dist. LEXIS 142767, at *12 (E.D. La. Mar. 31, 2010).  And the fact that Plaintiff's case does not concern Medicaid or a prior-authorization program does not eliminate the need for individualized consideration of doctors' decisions to prescribe Vioxx.[2]

Plaintiff's other attempted distinction – that the cases cited by Merck did not involve the NJCFA (Opp'n at 17) – fares no better.  In particular, Plaintiff challenges Merck's reliance on cases brought under the Racketeer Influenced and Corrupt Organizations ("RICO") Act,

---

[2]     Plaintiff has also failed to allege a cognizable theory of ascertainable loss.  (*See* Mot. at 9 n.3.)  Plaintiff contends that it has, citing Judge Higbee's ruling in *Engineers*.  (Opp'n at 19.)  But the New Jersey Supreme Court reversed class certification in *Engineers* precisely because certification was premised on an untenable theory of ascertainable loss.  929 A.2d at 1088 (concluding that the TPPs' theory of loss was tantamount to "fraud on the market," and that "the theory must fail").

claiming that the RICO Act "requires heightened standing requirements." (*See* Opp'n at 17.) But this argument is a red herring because Merck also cited cases brought by TPPs under consumer-protection statutes, including the NJCFA. (*See* Mot. at 9-14 (citing *In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*, No. 2:06-cv-5774 (SRC), 2009 U.S. Dist. LEXIS 58900, at *115 (D.N.J. July 10, 2009) ("*Schering-Plough I*") (dismissing TPP claims under NJCFA for lack of causation); and *United Food & Commercial Workers Cent. Pa. & Reg'l Health & Welfare Fund v. Amgen, Inc.*, 400 F. App'x 255, 257 (9th Cir. 2010) (dismissing consumer-protection claim by TPPs where causal link was too attenuated)).)

In short, Plaintiff has failed to rebut Merck's arguments that it has not adequately alleged causation. For this reason too, the Amended Complaint should be dismissed with prejudice.

**B.      Plaintiff's NJCFA Claim Would Be Subsumed By The NJPLA If It Were Otherwise Valid.**

As explained in Merck's opening brief, even if Plaintiff could invoke the NJCFA – which it cannot – its claim would still fail in light of the exclusive statutory remedy created by the NJPLA. (*See* Mot. at 15-17.) This is so because the entire premise of Plaintiff's lawsuit is that Merck allegedly failed to disclose the risk of "harm" posed by Vioxx. *See* N.J. Stat. Ann. §2A:58C-1(b)(3) (the NJPLA subsumes "any claim or action brought by a claimant for harm caused by a product"). In response, Plaintiff argues that the NJPLA has no application in this case because Plaintiff's allegations are "based on Merck's misrepresentations and not on damages caused by Vioxx." (Opp'n at 20.) According to Plaintiff, both *McDarby* and *Sinclair* – Merck's two key cases – are different from this case because they involved "physical harm" caused by a product. (*Id.*) Not so. While the plaintiff in *McDarby* had suffered a heart attack, that was not the basis for the appellate court's ruling. Rather, the court focused on the fact that "what [plaintiffs were] asserting [was], at its core, that Merck failed to warn of dangers from a

10

product of which it had knowledge, resulting in alleged economic harm to them." *McDarby v. Merck & Co.*, 949 A.2d 223, 278 (N.J. Super. Ct. App. Div. 2008); *see also Sinclair v. Merck & Co.*, 948 A.2d 587, 596 (N.J. 2008) (noting that the "heart of plaintiffs' case is the potential for harm caused by Merck's drug," making it a "product liability" action). Here too, the gravamen of Plaintiff's case is that Vioxx posed undisclosed risks. (*See, e.g.*, Compl. ¶ 6 ("Merck did not disclose, promote or provide a balanced view of the unacceptably high risk of other side effects, such as heart attacks and strokes . . . .").) Because Santa Clara's case turns on the alleged risk of "harm" posed by Vioxx, it falls well within the scope of the NJPLA.[3]

### C.   Santa Clara Lacks Standing Under The NJCFA.

As set forth in Merck's opening brief, Plaintiff also lacks standing under the NJCFA because it did not engage in a consumer transaction with Merck at any point. In response, Santa Clara incorrectly contends that the New Jersey Supreme Court has rejected Merck's argument as "too simplistic." (Opp'n at 21.) But the New Jersey Supreme Court said no such thing.[4] Rather, Plaintiff merely cites Judge Higbee's ruling in *Engineers I.* (*Id.*) Notably, the one court that has had occasion to address Judge Higbee's reasoning with respect to standing under the NJCFA has rejected it outright. *See S. Ill. Laborers' & Emp'rs Health & Welfare Fund v. Pfizer Inc.*, No. 08 CV 5175(KMW), 2009 WL 3151807, at *9-10 (S.D.N.Y. Sept. 30, 2009) (declining to follow *Engineers I*; "the weight of New Jersey authority supports a finding that [a TPP] is not a consumer within the meaning of the New Jersey Act because it does not use Lipitor in a way that diminishes or destroys its utility").

---

[3]     As set forth in Merck's opening brief, Plaintiff's unjust-enrichment claim is also subsumed by the NJPLA. (*See* Mot. at 23 n.7.)  Plaintiff fails to respond to this argument.

[4]     To the contrary, the Supreme Court expressly left consideration of this issue "for another day . . . in light of [its] analysis of the other issues."  *Engineers,* 929 A.2d at 1079 n.1.

Plaintiff also argues that it differs from other third-party payors with respect to standing because it "directly purchased Vioxx and provided the drug to indigent residents of Santa Clara County." (*See* Opp'n at 21.)  This argument too is unavailing.  After all, Santa Clara does not contend that it consumed Vioxx.  As one federal judge appropriately recognized in dismissing TPP claims under the NJCFA, a plaintiff does not engage in a consumer transaction where it "do[es] not use or consume the drugs [it] purchase[s]." *Schering-Plough I*, 2009 U.S. Dist. LEXIS 58900, at *115; *see also Std. Fire Ins. Co. v. MTU Detroit Diesel, Inc.*, No. 07-3827 (GEB), 2009 U.S. Dist. LEXIS 72299, at *16 (D.N.J. Aug. 13, 2009) (NJCFA claim failed where plaintiff "did not purchase the yacht in question for its own use").[5]

In short, it was the "indigent residents of Santa Clara County" who consumed Vioxx, not the County itself.  (Opp'n at 21.)  For this reason too, Plaintiff cannot state a claim under the NJCFA.

## III.   PLAINTIFF'S CLAIM FOR UNJUST ENRICHMENT ALSO FAILS AS A MATTER OF LAW.

Plaintiff premises its unjust-enrichment argument on the same failed choice-of-law analysis that underlies its arguments under the NJCFA, but Plaintiff fails to offer any real substantive response to Merck's arguments that the unjust-enrichment claim fails under ***both*** New Jersey and California law.  With respect to New Jersey, plaintiff simply contends that its claim for unjust enrichment is viable because "Merck was clearly unjustly enriched by their fraudulent marketing of Vioxx[.]"  (Opp'n at 23.)  Plaintiff offers no authority in support of this conclusory argument, presumably recognizing that its claim for unjust enrichment cannot stand

---

[5]       As previously explained, the plaintiffs in *Schering-Plough I* were permitted leave to amend, but they decided to jettison their claim under the NJCFA.  *Schering-Plough I*, 2009 U.S. Dist. LEXIS 58900, at *115; *In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*, No. 2:06-cv-5774, 2010 WL 2346624, at *1 (D.N.J. June 9, 2010).

under New Jersey law.  (*See* Mot. at 23-24 & n.7 (citing *Castro v. NYT Television*, 851 A.2d 88, 98 (N.J. Super. Ct. App. Div. 2004) (New Jersey "does not recognize unjust enrichment as an independent tort cause of action")).)

With respect to California, Plaintiff simply states in one sentence that California courts "[recognize] unjust enrichment if it is not an independent cause of action," citing *Foster Poultry Farms v. Alkar-Rapidpak-MP Equipment, Inc.*, No. 1:11-cv-00030 ANI SMS, 2011 U.S. Dist. LEXIS 61008, at *17 (E.D. Cal. June 8, 2011).  (*See* Opp'n at 23.)  Although the meaning of this statement is ambiguous, *Foster Poultry Farms* is not:  "unjust enrichment is ***not*** an independent cause of action because it is duplicative of relief already available under various legal doctrines." 2011 U.S. Dist. LEXIS 61008, at *17 (emphasis added).  As a result, the court in *Foster Poultry Farms* dismissed the plaintiff's claims for unjust enrichment ***with prejudice*** and ***without leave to amend***.  *Id.* at *18.  Thus, Plaintiff's own authority supports dismissal of its claim.

## IV.    PLAINTIFF SHOULD NOT BE GRANTED LEAVE TO FILE AN AMENDED COMPLAINT.

Finally, Plaintiff asks the Court, in the alternative, for leave to file an amended complaint in order to assert claims for:  (1) fraudulent concealment; and (2) violation of California's FAL. (Opp'n at 24-25.)  The Court should deny this request because amendment would be futile. *Adams Family Trust v. John Hancock Life Ins. Co., U.S.A.*, 424 F. App'x 377, 381 (5th Cir. 2011); *Val-Com Acquisitions Trust v. Chase Home Fin. LLC*, No. 3:10-CV-1075-L, 2010 U.S. Dist. LEXIS 115309, at *16-17 (N.D. Tex. Oct. 28, 2010) ("[I]n light of the court's determination that [p]laintiffs' TILA, RESPA, and fraud claims are barred by the applicable statute of limitations, the court determines that amendment would be futile" and, thus, "the court will not grant them leave to replead their claims."); *see also Saia v. Pizza Hut of Am., Inc.*, No. 11-776 SECTION: J (5), 2011 U.S. Dist. LEXIS 76780, at *14 (E.D. La. July 15, 2011) ("The

Court finds that any amendment to the Complaint under Rule 15 would be futile because the documentation needed by Plaintiff to establish a cause of action does not exist."); *Martin v. Magee*, No. 10-2786, SECTION: R(4), 2011 U.S. Dist. LEXIS 61977, at *38 (E.D. La. June 10, 2011) (denying motion for leave to file amended complaint where "[p]laintiffs' proposed amendment does not remedy the deficiencies in their claims" and, thus, "permitting the amendment would serve no purpose").

A.   <u>**Plaintiff Cannot State A Claim For Fraudulent Concealment Under California Law.**</u>

Plaintiff will not be able to state a claim for fraudulent concealment under California law for at least two reasons.

*First*, Plaintiff cannot allege that Merck owed it any duty to disclose.  In California, "silence or concealment alone will not establish fraudulent concealment."  *First v. Allstate Ins. Co.*, 222 F. Supp. 2d 1165, 1174-75 (C.D. Cal. 2002).  Rather, a plaintiff asserting a claim for fraudulent concealment must first establish that a defendant had a duty to disclose a particular fact.  *See, e.g.*, *Milne Emps. Ass'n v. Sun Carriers, Inc.*, 960 F.2d 1401, 1408 (9th Cir. 1992) (claim for "suppression of facts . . . generally requires a duty to disclose the concealed fact") (applying California law); *Stearns v. Select Comfort Retail Corp.*, No. 08-2746 JF, 2009 U.S. Dist. LEXIS 48367, at *30-32 (N.D. Cal. June 5, 2009) (dismissing fraudulent-concealment claim with prejudice where plaintiff failed to properly allege that defendant owed him any duty). A duty to disclose generally arises only where the defendant was acting as a fiduciary, or was engaged in a transaction with the plaintiff.  *See, e.g.*, *First*, 222 F. Supp. 2d at 1174-75; *Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*, 522 F.3d 1049, 1059 n.3 (9th Cir. 2008) ("[B]ecause [plaintiff] failed to allege that there was a transactional relationship between [itself] and [defendant], the district court properly observed that, pursuant to California law, [plaintiff's]

fraudulent concealment claim could not be premised on a duty to disclose."); *Flowers v. Wells Fargo Bank, N.A.*, No. CV 98-3394 RJK, 2011 U.S. Dist. LEXIS 75429, at *18 (N.D. Cal. July 13, 2011) (dismissing fraudulent-concealment claim because, *inter alia*, "[t]he legal duty to disclose . . . facts requires some fiduciary or confidential relationship creating a duty of heightened disclosure"); *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336-37 (1997) (explaining that either a fiduciary relationship or "some other relationship" between the parties based on "some sort of transaction between" them is a prerequisite to a duty to disclose).

No such relationship is – or could be – alleged here.  As Plaintiff's complaint currently stands, there is no allegation that Plaintiff engaged in any transaction with Merck or that Merck has ever acted as a fiduciary.  Moreover, Plaintiff's opposition brief gives zero indication that it could plead facts in support of such allegations.  It is well established that no fiduciary duty is owed by one sophisticated party to another.  *See, e.g.*, *Persson v. Smart Investors*, 125 Cal. App. 4th 1141, 1162 (2005).  And it is inconceivable that Plaintiff, a municipal government that has undertaken the task of operating hospitals for the general public, could be anything but a sophisticated party.  Accordingly, Plaintiff could not establish a claim for fraudulent concealment under California law.

*Second*, Plaintiff's claim for fraudulent concealment would also fail under California law for lack of causation.  As set forth in Section II.A above, Plaintiff fails to adequately allege a "causal nexus" between Merck's alleged concealment and its claimed injuries.  (*See also* Mot. at 8-15.)  This failure similarly dooms any potential claim for fraudulent concealment under California law.  *See, e.g.*, *Bank of Am. Corp. v. Superior Court*, 198 Cal. App. 4th 862, 872 (2011) (plaintiff must sufficiently allege a "nexus between the alleged fraudulent concealment by [defendant] and the economic harm which [plaintiff] ha[s] suffered"); *Privacywear, Inc. v. QTS*

*& CTFC, LLC*, No. EDCV 07-1532-VAP (OPx), 2009 U.S. Dist. LEXIS 74496, at *14-15 (C.D. Cal. Aug. 20, 2009) (dismissing counterclaim for fraudulent concealment; "[d]efendants do not allege how they were injured by Plaintiffs' investor publications, nor do [d]efendants allege how Plaintiffs intended to defraud them specifically," or how their injury was the "result of this alleged concealment").  Accordingly, amendment of Plaintiff's Complaint to add a claim for fraudulent concealment under California law would be futile.

### B.   Plaintiff Cannot State A Valid Claim Under California's FAL.

With respect to the FAL, Plaintiff seeks to amend its Complaint to bring suit not with respect to its own Vioxx payments, but rather "in the name of the people" of California.  (Opp'n at 25.)  In other words, Plaintiff is proposing *an entirely different lawsuit.*[6]

There is one fundamental problem with this proposal:  the statute of limitations has long expired.  Vioxx was withdrawn from the market in 2004 – seven years ago – and as this Court has previously recognized, "[b]oth the national and local media coverage of the withdrawal of Vioxx from the market were sufficient to put the plaintiffs on notice of a potential link between their alleged injuries and the use of Vioxx" under California limitations law.  *See In re Vioxx Prods. Liab. Litig.*, No. 1657 SECTION: L, 2007 U.S. Dist. LEXIS 83710, at *14-15 (E.D. La. Nov. 8, 2007).  But the FAL has a three- or (at most) four-year limitations period.  *See Eshagh v. Terminix Int'l Co., L.P.*, No. 1:11-cv-00222-OWW-DLB, 2011 U.S. Dist. LEXIS 80848, at *8 (E.D. Cal. July 25, 2011) (recognizing that "[c]laims under California's False Advertising Law

---

[6]      The reason Santa Clara does not invoke the FAL with respect to its own purchases is that at least two courts have found that it lacks standing to sue under that statute on its own behalf.  *See In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, No. 10-1637, 2011 U.S. Dist. LEXIS 124458, at *11 (E.D. Pa. Oct. 26, 2011) ("find[ing] that Santa Clara lacks standing to sue on its own behalf" under the FAL because the statute "does not expressly provide for suits by a county on its own behalf"); *see also County of Santa Clara v. Astra U.S., Inc.*, 428 F. Supp. 2d 1029, 1036 (N.D. Cal. 2006) (finding that Santa Clara County lacks standing to sue under the FAL's sister statute – the Unfair Competition Law).

. . . are subject to either the three-year statute of limitations provided by California Code of Civil Procedure § 338(a) or the four-year statute of limitations applicable to UCL claims").  Moreover, since Plaintiff's proposed amendment would transform its case into a "new suit" – asserting claims of a different character (concerning conduct toward consumers) on behalf of different parties (California citizens) – it would not relate back to the prior suit.  *See Johnson v. Riddle*, No. 2:98-CV-599 TS, 2007 U.S. Dist. LEXIS 11101, at *12, 14 (D. Utah Feb. 15, 2007) (explaining that "[i]t is the purpose of the class complaint . . . to notify the Defendants not only of the substantive claims being brought against them, but also of the number and generic *identities* of the potential plaintiffs who may participate in the judgment," and therefore, "[a]n amended complaint in a class action which broadens the definition of the proposed class does not relate back to the date of filing of the original complaint") (emphasis added).[7]  For this reason too, amendment would be futile, and Plaintiff's claims should be dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, as well as those set forth in Merck's opening brief, the Court should grant Merck judgment on the pleadings on Plaintiff's claims.

Dated:  November 18, 2011

Respectfully submitted,

*/s/ Dorothy H. Wimberly*
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, LA 70130

---

[7]     In any event, even if Plaintiff's proposed amendment did relate back for statute-of-limitations purposes, the proposed FAL claim would still fail as a matter of law because Plaintiff could not prove entitlement to restitution on an aggregate basis.  *See In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 136 (2009).

Douglas R. Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth St., N.W.
Washington, DC 20005

John H. Beisner
Jessica Davidson Miller
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
1440 New York Avenue, N.W.
Washington, DC 20005

ATTORNEYS FOR MERCK SHARP &
DOHME CORP.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing has been served on Liaison Counsel,

Russ Herman, Phillip Wittmann and Ann Oldfather, by U.S. Mail and e-mail or by hand delivery

and e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve

Advanced in accordance with Pre-Trial Order No. 8C, and that the foregoing was electronically

filed with the Clerk of Court of the United States District Court for the Eastern District of

Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord

with the procedures established in MDL 1657, on this 18th day of November, 2011.

*/s/ Dorothy H. Wimberly*
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361
dwimberly@stonepigman.com

Defendants' Liaison Counsel
