# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

-----------------------------------------------------------------------

| | | |
|---|---|---|
| IN RE: AVANDIA MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | : : : | MDL No. 1871 07-MD-01871-CMR |

-----------------------------------------------------------------------:

**THIS DOCUMENT RELATES TO**
**Case No.: 2:10-CV-01637-CMR**

COUNTY OF SANTA CLARA, individually and on
behalf of the People of the State of California,

        Plaintiff,

    vs.

SMITHKLINE BEECHAM CORPORATION d/b/a
GLAXOSMITHKLINE L.L.C.,

        Defendant.

-----------------------------------------------------------------------

## PLAINTIFF'S OPPOSITION TO DEFENDANT GLAXOSMITHKLINE, L.L.C.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

## ORAL ARGUMENT REQUESTED

# TABLE OF CONTENTS

I.     INTRODUCTION   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    GSK MISCONSTRUES BOTH SUBSTANTIVE CALIFORNIA
LAW AND THE APPLICABLE STANDARD OF REVIEW   . . . . . . . . . . . . . . . . . . . . 2

      A.      Section 17500 does not require individualized or aggregate
proof of reliance or injury; instead, it applies a "reasonable
consumer" standard   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      B.      Proposition 64's new standing requirements for individuals
and named plaintiffs in class actions do not apply to government
enforcement actions   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

      C.      Section 17500 does not require a showing of individualized
reliance on specific misrepresentations in a governmental
enforcement action   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

III.   THE COMPLAINT CONTAINS MORE THAN ENOUGH DETAILED
ALLEGATIONS TO STATE A CLAIM ON BEHALF OF THE PEOPLE   . . . . . . . . . . 7

      A.      The People's allegations satisfy Rule 8   . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

      B.      Rule 9(b) does not apply to a § 17500 claim; even if it did,
the People's complaint pleads all the relevant allegations with
sufficient specificity   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

          1.      The People's § 17500 claim is not a fraud claim, and its
elements are different from those required for fraud; Rule
9(b) is thus inapplicable   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

          2.      Even if Rule 9(b) applies, it applies only to allegations
of fraud   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

          3.      Rule 9(b) does not – and cannot – introduce new substantive
elements to the underlying state-law claim   . . . . . . . . . . . . . . . . . . . . 16

          4.      In light of both substantive California law and Third Circuit
precedent on the application of Rule 9(b), even if Rule 9(b)
applies, it does not require the People to allege particular
statements or nondisclosures GSK made in the course of
its long-term campaign with unrealistic specificity   . . . . . . . . . . . . . . 17

i

C.     The People have shown entitlement to all three remedies they seek:
       civil penalties, restitution, and injunctive relief ........................... 19

       1.     Section 17500 mandates that the Court assess civil penalties
              against GSK upon a finding that its conduct was "likely
              to deceive." ................................................... 20

       2.     Restitution is available and necessary to ensure that GSK
              restores to purchasers money it "may have...acquired by means"
              of its misleading marketing campaign ........................... 22

              a.     Restitution is not dependent upon individualized
                     proof of injury ......................................... 22

              b.     GSK's reliance on Pfizer, Vioxx, and other class
                     certification decisions conflicts with controlling California
                     Supreme Court precedent .............................. 26

       3.     The requested injunctions are proper and necessary to prevent
              GSK's ongoing violations of § 17500 ........................... 29

IV.    SEPARATELY, THE COUNTY HAS STATED A CLAIM FOR RELIEF
       IN ITS INDIVIDUAL CAPACITY AS A PURCHASER OF AVANDIA .......... 30

       A.     The County has standing to sue GSK in its individual capacity
              for its own injury ................................................. 30

              1.     The County is a "person" for purposes of § 17500 ................ 30

              2.     Proposition 64 did not impose individualized injury and
                     reliance requirements on suits by governmental entities
                     like the County ......................................... 33

       B.     The County's complaint contains sufficient allegations to state an
              individual claim against GSK for its violations of § 17500 ............... 35

V.     THE COURT SHOULD GRANT THE COUNTY LEAVE TO FILE AN
       AMENDED COMPLAINT TO CURE ANY DEFICIENCIES ................... 36

VI.    CONCLUSION ....................................................... 36

ii

## TABLE OF AUTHORITIES

## CASES

*Akkerman v. Mecta Corp., Inc.* (Cal. App. 2007)
  152 Cal.App.4th 1094, 1103 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Ashcroft v. Iqbal* (2009)
  129 S.Ct. 1937, 1949 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 11, 34

*Bd. of Trustees of Teamsters Local 863 v. Foodtown* (3d Cir. 2002)
  296 F.3d 164, 173 n.10 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Bell Atlantic Corp. v. Twombly* (2007)
  550 U.S. 544, 555, 570 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 34

*Brownfield v. Bayer Corp.* (E.D. Cal. July 6, 2009)
  2009 WL 1953035 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Citizens of Humanity, LLC v. Costco Wholesale Corp.* (Cal. App. 2009)
  171 Cal.App.4th 1, 20 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Clark v. Superior Court* (Cal. Aug. 8, 2010)
  2010 WL 3081288, *5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 23

*Colgan v. Leatherman Tool Group* (Cal. App. 2006)
  135 Cal.App.4th 663, 682 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 12

*Collins v. Safeway Stores, Inc.* (Cal. App. 1986)
  187 Cal.App.3d 62 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Committee on Children's Television*
  35 Cal.3d at 214 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 12-14, 17

*Consumer Advocates v. Echostar Satellite Corp.* (Cal. App. 2003)
  113 Cal.App.4th 1351, 1361-62 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*County of Santa Clara v. Astra USA* (N.D. Cal. 2006)
  428 F.Supp.2d 1029 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Day v. AT&T Corp.* (Cal. App. 1998)
  63 Cal.App.4th 325 332-33 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Dist. 1199P Health & Plan v. Janssen, L.P., 2008* (D.N.J. Dec. 23, 2008)

iii

WL 5413105 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Eagle Traffic Control v. Addco* (E.D. Pa. 1995)
    889 F.Supp. 200, 202 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Fletcher v. Security Pacific Nat'l Bank* (Cal. 1979)
    23 Cal.3d 442, 451 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 19, 22, 23, 25, 29

*Fowler v. UPMC Shadyside* (3d Cir. 2009)
    578 F.3d 203, 210-11 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Guaranty Trust Co. of New York v. York* (1945)
    326 U.S. 99, 109-11 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Guardian Life Ins. Co. of America v. Pfizer, Inc. (In Re Neurontin Mktg.),* (D. Mass. 2010)
    677 F.Supp.2d 479, 492 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Heindel v. Pfizer, Inc.* (D.N.J. 2004)
    381 F.Supp.2d 364 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Hood ex rel. Mississippi v. Eli Lilly & Co.* (E.D.N.Y. 2009)
    671 F.Supp.2d 397 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Howard Hess Dental Labs. Inc. v. Dentsply Intern., Inc.* (3d Cir. 2010)
    602 F.3d 237, 247-48 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*In re Actimmune Marketing Lit.* (N.D. Cal. Nov. 6, 2009)
    2009 WL 3740648, at *34, 38 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 17, 34

*In re Craftmatic Sec. Lit. v. Stanley Kraftsow* (3d Cir. 1989)
    890 F.2d 628, 645 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

*In re Schering-Plough Corp. Intron/Temodar Consumer Class Actions* (D.N.J. June 9, 2010)
    2010 WL 2346624 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 7

*In re Tobacco II Cases* (Cal. 2009)
    46 Cal.4th 298, 320 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*In re Vioxx Class Cases* (Cal. App. 2009)
    180 Cal.App.4th 116 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27, 28

*Ironworkers Local Union No. 68 v. AstraZeneca Pharms. LP* (M.D. Fla. 2008)
    585 F.Supp.2d 1339 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Johns v. Bayer Corp.* (S.D. Cal. 2010)
    2010 WL 476688, *5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*Kasky v. Nike* (Cal. 2002)
    27 Cal.4th 939, 949 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Kearns v. Ford Motor Co.* (9th Cir. 2009)
    567 F.3d at 1120, 1126 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15, 17

*Khan v. Med. Bd.* (Cal. App. 1993)
    12 Cal.App.4th 1834, 1846 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Lavie v. Proctor & Gamble Co.* (Cal. App. 2003)
    105 Cal.App.4th 496, 506-07 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Magnuson-Hoyt v. County of Contra Costa* (Cal. App. 1991)
    228 Cal.App.3d 139, 143 n.5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Mass. Mut. Life Ins. Co. v. Superior Court* (Cal. App. 2002)
    97 Cal.App.4th 1282, 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 26

*Morgan v. AT&T Wireless Services, Inc.* (Cal. App. 2009)
    177 Cal.App.4th 1235, 1258 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34, 35

*Myrus Hack, LLC v. McDonald's Corp.* (D.N.J. 2009)
    2009 WL 872176, *9 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Nagel v. Twin Laboratories, Inc.* (Cal. App. 2003)
    109 Cal.App.4th 39, 51-56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Notica v. State Comp. Ins. Fund* (Cal. App. 1999)
    70 Cal.App.4th 911, 941-44 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Pa. Empl. Benefit Trust Fund v. Zeneca, Inc.* (D.N.J. May 26, 2010)
    2010 WL 1816234 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Pacific Gas & Elec. Co. v. Stanislaus County* (Cal. 1997)
    16 Cal.4th 1143, 1158-59 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*People v. Crow* (Cal. 1993)
    6 Cal.4th 952, 959 n.6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31, 32

*People v. Dollar Rent-A-Car Systems, Inc.* (Cal. App. 1989)

211 Cal.App.3d 119, 128-29 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*People ex rel. Bill Lockyer v. Fremont Life Ins. Co.* (2002)
104 Cal.App.4th 508 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 24, 25

*People v. E.W.A.P., Inc.* (Cal. App. 1980).
106 Cal.App.3d 315, 321-22 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*People v. Rizo* (Cal. 2000)
22 Cal.4th 681, 685 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*People v. Toomey* (Cal. App. 1984)
157 Cal.App.3d 1, 25-26 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 30

*Pfizer, Inc. v. Superior Court* (Cal. App. 2010)
182 Cal.App.4th 622 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 27

*Prata v. Superior Court* (Cal. App. 2001)
91 Cal.App.4th 1128, 1144 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Prohias v. Pfizer, Inc.* (S.D. Fla. 2007)
485 F.Supp.2d 1329 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Regents of Univ. of California v. Superior Court of Alameda County* (Cal. 1976)
17 Cal.3d 533, 536 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Robbins v. Wilkie* (10th Cir. 2002)
300 F.3d 1208, 1211 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Romano v. Mercury Ins. Co.* (Cal. App. 2005)
128 Cal.App.4th 1333, 1343 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*S. Broward Hosp. Dist. v. Medquist, Inc.* (D.N.J. 2007)
516 F.Supp.2d 370, 384-85 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*S. Ill. Laborers' & Emplrs. Health & Welfare Fund v. Pfizer, Inc.*(S.D.N.Y. Sept. 30, 2009)
2009 WL 3151807 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Sai Broken Arrow C, LLC v. Guardian Emergency Vehicles, Inc.* (N.D. Okla. 2009)
2009 WL 3151343, *6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Santa Monica Rent Control Bd. v. Bluvshtein* (Cal. App. 1991)
230 Cal.App.3d 308 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32, 33

*Seville Indus. Mach. Corp. v. Southmost Mach. Corp.* (3d Cir. 1984)
   742 F.2d 786, 791 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Shapiro v. UJB Financial Corp.* (3d Cir. 1992
   964 F.2d 272, 288 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16, 18

*Smith v. Wells Fargo Bank, N.A.* (Cal.App. 2005)
   135 Cal.App.4th 1463, 1487-88 & 1488 n.22 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 8

*Steamfitter's Local Union No. 420 Welfare Fund, et al., v. Phillip Morris, Inc., et al.*
(3d Cir. 1999)
   171 F.3d 912 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*United States ex rel. Hays v. CMC Elecs. Inc.* (D.N.J. 2003)
   297 F.Supp.2d 734, 735 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*United States ex rel. James H. Grubbs, M.D. v. Kanneganti* (5th Cir. 2009)
   565 F.3d 180 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Weinstat v. Dentsply Intern., Inc.* (Cal. App. 2010)
   180 Cal.App.4th 1213, 1223 n.8 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Williams v. Gerber Products Co.* (9th Cir. 2008)
   552 F.3d 934, 939 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Wyeth v. Levine* (2009)
   129 S.Ct. 1187, 1202 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**FEDERAL STATUTES**

   28 U.S.C. § 2072(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
   31 U.S.C. § 3729(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Federal Rules Civil Procedure
   Rule 9(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*
   Rule 8(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 15
   Rule 15(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

**CALIFORNIA STATUTES**

California Business and Professions Code
   § 17200 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5, 13, 27, 32
   § 17201 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32, 33

§ 17203 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
§ 17206.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
§ 17500 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*
§ 17506 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30, 32
§ 17535 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 22, 24, 26, 32, 33
§ 17536(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
§ 17536(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

California Civil Code
§ 3345 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

California Code of Civil Procedure
§ 382 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 27

California Government Code
§ 23000 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
§ 23004(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

## NEW YORK STATUTES

New York's Gen. Bus. Law
§ 201-9.2(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
§ 349 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

## PUBLICATIONS

Dan B. Dobbs, Law of Remedies: Damages, Equity, Restitution 379 (1993) . . . . . . . . . . . . . 23

Gardner Harris, FDA Panel Votes To Restrict Avandia, N.Y. Times, July 14, 2010 . . . . . . . 30

Goff & Jones, The Law of Restitution 17 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Russell Weaver et al., Principles of Remedies Law 109 (2007) . . . . . . . . . . . . . . . . . . . . . . 23

## I. INTRODUCTION

The People of the State of California, acting by and through Santa Clara County Counsel Miguel Márquez ("the People"), and the County of Santa Clara, California ("the County"), bring this action against Defendant GlaxoSmithKline L.L.C. ("GSK") under a uniquely powerful consumer protection statute: California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §17500, *et seq*.[1]  The first amended complaint ("the complaint" or "FAC") alleges that, for more than a decade, GSK has represented to California purchasers that its diabetes drug, Avandia, is superior to other drugs at lowering diabetics' blood sugar, and even improves diabetics' cardiovascular health.  In fact, however, even before Avandia's launch in 1999, GSK knew or should have known that Avandia *increases* diabetics' risks of heart attack, stroke, and other cardiovascular events.  GSK has both suppressed critical information about Avandia's health risks and aggressively marketed Avandia as a safe and effective drug, communicating its misleading statements to California purchasers through print and television advertising, press releases, product labeling, scientific studies, ghostwritten articles, and representations to doctors and third party payors.  GSK's campaign was and is likely to deceive a reasonable purchaser— the standard for liability under California law.

GSK's Motion to Dismiss ("MTD") baldly asserts nonexistent elements for a §17500 claim and then protests that the complaint does not plead facts to support them.  GSK then distorts the way federal pleading standards interact with the underlying state law, and raises premature and unfounded objections regarding the People's ultimate remedies.  In particular, GSK repeatedly contends that the People must plead reliance and loss by individual California purchasers to state a claim under §17500—despite a California Supreme Court decision issued just last year reaffirming that neither reliance nor loss is an element of a §17500 claim.  At every

---

[1] All statutory references are to the California Business and Professions Code unless otherwise stated.

1

turn, GSK is incorrect.  California law is clear, and the complaint states a claim for relief under §17500.  GSK's motion should be denied.

## II.   GSK MISCONSTRUES BOTH SUBSTANTIVE CALIFORNIA LAW AND THE APPLICABLE STANDARD OF REVIEW.

This is an enforcement action brought by the County Counsel under §17500 on the behalf of the People of the State of California.[2]  While the People seek restitution for all California purchasers of Avandia, in addition to civil penalties and injunctive relief, California law is clear that it is neither a class action nor an economic loss case.  California law is equally clear that actual deception, knowledge of falsity, reliance, and loss are not separate elements of a §17500 claim.  Rather, both liability and causation are established once it is determined that GSK's marketing of Avandia was "likely to deceive" the public.  Upon such a finding, GSK is liable for injunctive relief, civil penalties, and restitution, measured as the value of what GSK received— not what purchasers may or may not have "lost."  The complaint sets forth extensive facts which, taken as true as is required on a motion to dismiss, show that GSK's marketing of Avandia was likely to deceive California purchasers, entitling the People to all of the remedies sought.

### A. Section 17500 does not require individualized or aggregate proof of reliance or injury; instead, it applies a "reasonable consumer" standard.

As the California Supreme Court reaffirmed last year, courts "repeatedly and consistently . . . hold that relief [in a §17500 action] . . . is available without individualized proof of deception, reliance and injury."  *In re Tobacco II Cases,* 46 Cal.4th 298, 320 (Cal. 2009) ("*Tobacco II*") (citing cases).  In other words, *no showing of individual—or aggregate—reliance is required to state a violation of the law*.  Section 17500 provides:

> It is unlawful for any . . . corporation . . . with intent directly or indirectly to dispose of real or personal property or to perform services . . . or to induce the public to enter into any obligation relating thereto, to make or disseminate or

---

[2] *See also* Section IV, *infra* (discussing alternative individual claim on behalf of the County).

2

cause to be made or disseminated before the public in this state . . . in any newspaper or other publication, or *any* advertising device, or by public outcry or proclamation, *or in any other manner or means whatever,* including over the Internet, *any statement*, concerning that real or personal property or those services . . . or concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof, which is *untrue or misleading*, and which is *known or which by the exercise of reasonable care should be known* to be untrue or misleading . . . .

§17500 (emphasis added).  Thus, to plead a violation of §17500 here, the People need allege only that: (1) GSK disseminated or caused to be disseminated "statement[s]"[3] concerning Avandia that were "untrue or misleading"; and (2) GSK knew or should have known the statements were untrue or misleading.  *Id.*[4]  California law tests these requirements and establishes causation not by requiring a showing of actual deception or reliance, but by asking whether "'members of the public are likely to be deceived.'"  *Tobacco II,* 46 Cal.4th at 312 (internal citation omitted).  Whether a statement is "likely to deceive" is judged by the effect it would have on a reasonable consumer, or, if it targets a particularly vulnerable group, a reasonable member of that group.  *See Committee on Children's Television*, 35 Cal.3d at 214; *Colgan v. Leatherman Tool Group*, 135 Cal.App.4th 663, 682 (Cal. App. 2006); *Lavie v. Proctor & Gamble Co*., 105 Cal.App.4th 496, 506-07 (Cal. App. 2003).[5]

---

[3] "[S]tatement[s]" under §17500 encompass a wide range of representations, reaching "any means" by which a defendant communicates a message to consumers.  §17500.  This includes not only print and television advertisements, but also press releases, mailings, product packaging and labels, oral statements of sales representatives, and the publication of data or results from scientific studies.  *See Williams v. Gerber Products Co.*, 552 F.3d 934, 939 (9th Cir. 2008); *Committee on Children's Television,* 35 Cal.3d at 217-18; *Smith v. Wells Fargo Bank, N.A*., 135 Cal.App.4th 1463, 1487-88 & 1488 n.22 (Cal. App. 2005); *Nagel v. Twin Laboratories, Inc*., 109 Cal.App.4th 39, 51-56 (Cal. App. 2003); *People v. Dollar Rent-A-Car Systems, Inc.*, 211 Cal.App.3d 119, 128-29 (Cal. App. 1989).  A "failure to disclose . . . relevant information" also violates § 17500.  *Day v. AT&T Corp*., 63 Cal.App.4th 325 332-33 (Cal. App. 1998).

[4] Violations of the FAL are also actionable under the "fraud prong" of California's Unfair Competition Law ("UCL"), §17200 *et seq.*  Courts considering claims under §17500 therefore look to §17200 false advertising cases, and vice versa.  *Tobacco II*, 46 Cal.4th at 312 n.8.  Accordingly, this brief cites to both §17500 and §17200 authority.  Nevertheless, the FAL and the so-called "fraud prong" of the UCL are "distinct from [claims of] common law fraud," *Tobacco II*, 46 Cal.4th at 312, as discussed in Section III(B)(1), *infra*.

[5] "Where the plaintiff contends that a more vulnerable subgroup is the true target of such an advertisement, a question of fact is presented, which the trial court must resolve."  *Lavie*, 105 Cal.App.4th at 506.  The complaint

Satisfying the "likely to deceive" inquiry establishes that the defendant's statements are misleading for purposes of §17500 and provides the causal link between the defendant's conduct and the harm the statutory scheme aims to prevent: "unscrupulous business practices" directed against California consumers. *Tobacco II*, 46 Cal.4th at 312; *see also Kasky v. Nike*, 27 Cal.4th 939, 949 (Cal. 2002) ("The UCL's purpose is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services."); *Fletcher v. Security Pacific Nat'l Bank*, 23 Cal.3d 442, 451 (Cal. 1979) (because "protection of unwary consumers from being duped by unscrupulous sellers is an exigency of the utmost priority . . . we have consistently condemned not only those alleged unfair practices which have in fact deceived the victims, but also those which are likely to deceive them.") (internal citation and quotation marks omitted). California's rejection of an actual reliance requirement "reflects [§17500's] focus on the defendant's conduct, rather than the plaintiff's damages." *Tobacco II*, 46 Cal.4th at 312.[6]

///

---

alleges that GSK's advertising campaign was directed at diabetics, who are recognized as disabled individuals, and at the elderly, *see* FAC ¶¶ 11, 32—both protected vulnerable groups under California law. *See* §17206.1.

[6] Section 17500 thus differs from many other states' consumer protection laws, which are grounded in common-law fraud and which therefore require a showing that the plaintiff actually relied on the defendant's misrepresentation or nondisclosure and was injured. GSK's attempt to invoke cases involving non-California consumer protection laws is entirely inappropriate; unlike California law, those laws require proof of individualized loss, causation, reliance, or all of the above. *See Pa. Empl. Benefit Trust Fund v. Zeneca, Inc.*, 2010 WL 1816234 (D.N.J. May 26, 2010) (finding New York's Gen. Bus. Law § 349 requires individualized proof of causation, and Pennsylvania's §201-9.2(a) requires individualized proof of reliance); *In re Schering-Plough Corp. Intron/Temodar Consumer Class Actions*, 2010 WL 2346624 (D.N.J. June 9, 2010) (finding both federal New Jersey RICO statutes require individualized proof of reliance, causation, and loss); *Dist. 1199P Health & Plan v. Janssen, L.P.*, 2008 WL 5413105 (D.N.J. Dec. 23, 2008) (same); *S. Ill. Laborers' & Emplrs. Health & Welfare Fund v. Pfizer, Inc.*, 2009 WL 3151807 (S.D.N.Y. Sept. 30, 2009) (finding federal RICO statute requires individualized proof of reliance and loss); *Prohias v. Pfizer, Inc.*, 485 F.Supp.2d 1329 (S.D. Fla. 2007) (finding consumer protection laws of New York, Massachusetts, New Jersey, and Florida all require individualized proof of reliance and/or loss); *Ironworkers Local Union No. 68 v. AstraZeneca Pharms. LP*, 585 F.Supp.2d 1339 (M.D. Fla. 2008) (finding federal RICO statute and Pennsylvania §201-9.2(a) require individualized proof of reliance, and New Jersey and Tennessee consumer protection laws require individualized proof of causation); *Steamfitter's Local Union No. 420 Welfare Fund, et al., v. Phillip Morris, Inc., et al.*, 171 F.3d 912 (3rd Cir. 1999) (finding federal RICO statute requires individualized proof of reliance and loss).

**B. Proposition 64's new standing requirements for individuals and named plaintiffs in class actions do not apply to government enforcement actions.**

California's FAL provides for both government enforcement actions and individual actions. This is a governmental enforcement action on behalf of the People of California. Governmental enforcement actions "may be prosecuted by the Attorney General or any district attorney, *county counsel*, city attorney, or city prosecutor in this state in the name of the people of the State of California." §17535 (emphasis added). GSK concedes that the County is authorized to sue on behalf of the People. *See* MTD at 9. Nevertheless, GSK creates a great deal of confusion by improperly conflating Proposition 64's standing requirements, which apply only to private plaintiffs, with the substantive allegations required to state a claim for relief under §17500.

Before 2004, individual actions to enforce §17500 could be prosecuted by "any person . . . acting for the interests of . . . the general public." §17535 (former version). This allowed private individuals to assert representative claims on behalf of the general public without having to show that they personally had been injured, and without seeking class certification. California's Unfair Competition Law ("UCL"), the FAL's sister statute, had a similar enforcement structure. *See* §17200 *et seq.* Proposition 64, adopted by the California voters in 2004, amended both statutes to limit the ability of private plaintiffs to sue on behalf of the general public by adding two new requirements: (1) All private plaintiffs must, for purposes of standing, allege that they "ha[ve] suffered injury in fact" and that their loss occurred "as a result of a violation of this chapter;" and (2) any private plaintiff wishing to "pursue representative claims or relief on behalf of others" must "compl[y] with Section 382 of the Code of Civil Procedure," which governs class actions. §17535; *see also Tobacco II*, 46 Cal.4th at 305-06.

Proposition 64 did *not* change the ability of designated government officials to bring governmental enforcement actions under the FAL.  Section 17535 still specifically authorizes "any . . . county counsel . . . in this state" to bring a §17500 action "in the name of the people of the State of California," and the language added by Proposition 64 expressly provides that the new standing and class "limitations *do not apply* to claims brought under this chapter by . . . any . . . county counsel[.]"  §17535 (emphasis added).

### C.  Section 17500 does not require a showing of individualized reliance on specific misrepresentations.

Although Proposition 64 added new injury and causation requirements for private parties to establish *standing* under the FAL, the underlying *elements* of a §17500 action remain unchanged.  As the California Supreme Court explained,

> Proposition 64 wrought certain procedural changes with respect to standing to bring a UCL action, and it now also explicitly mandates that a representative UCL action comply with Code of Civil Procedure section 382.  These procedural modifications to the statute, however, 'left entirely unchanged the substantive rules governing business and competitive conduct.  Nothing a business might lawfully do before Proposition 64 is unlawful now, and nothing earlier forbidden is now permitted.'

*Tobacco II,* 46 Cal.4th at 313-14 (citation omitted).  Although GSK would have this Court believe otherwise, California law is clear:  "*to state a claim . . . it is necessary only to show that members of the public are likely to be deceived.*'"  *Id.* at 312 (emphasis added).

GSK protests that the People fail to "set forth facts showing that the County relied on any alleged false advertising by GSK," MTD at 12, or that any other California "physicians, pharmacists, or others . . . saw the alleged false advertisements[] and were influenced by them."  *Id.* at 14.  These protestations are completely beside the point.  Actual reliance simply is not an "[e]ssential [e]lement[]" of a §17500 claim, as GSK contends.  MTD at 11.  GSK mistakenly cites *Tobacco II* for the proposition that a "plaintiff must plead and prove actual reliance" in a

6

§17500 action.  MTD at 13 (quoting *Tobacco II*, 46 Cal.4th at 328).  But *Tobacco II*'s actual holding—a critical part of which GSK omits—was that a *private "plaintiff* must plead and prove actual reliance *to satisfy the standing requirement*" added by Proposition 64.  *Tobacco II*, 46 Cal.4th at 328 (emphasis added).  *Tobacco II* thus forecloses GSK's attempt to cast reliance as a substantive element of a §17500 violation.[7]

### III.   THE COMPLAINT CONTAINS MORE THAN ENOUGH DETAILED ALLEGATIONS TO STATE A CLAIM ON BEHALF OF THE PEOPLE.

Although GSK concedes that the People have standing, MTD at 9, GSK argues that the People fail to state a claim because the complaint does not plead all the "[e]ssential [e]lements" of its §17500 claim and does not plead with sufficient specificity, MTD at 11.  GSK is incorrect on both counts.  Whether the Court applies Rule 8, Rule 9(b), or some combination of the two, the complaint contains more than enough detailed allegations to state a claim under §17500.

### A.  The People's allegations satisfy Rule 8 of the Federal Rules of Civil Procedure.

Under Rule 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  The U.S. Supreme Court has explained that to survive a motion to dismiss, "detailed factual allegations" are not required, but the complaint must contain sufficient factual allegations that, accepted as true, show "a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d

---

[7] GSK also looks for support to *In re Actimmune Marketing Lit.*, 2009 WL 3740648, at *34, 38 (N.D. Cal. Nov. 6, 2009) ("*Actimmune II*"), *Brownfield v. Bayer Corp.*, 2009 WL 1953035 (E.D. Cal. July 6, 2009), and *In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*, 2010 WL 2346624 (D.N.J. June 9, 2010) (unpub.), *see* MTD at 13-14 & n.15.  These cases, too, are inapposite, because all three involve class actions brought by private, non-governmental named plaintiffs, for whom a showing of reliance was required for standing purposes.

Cir. 2009).  The People's complaint easily satisfies this standard, alleging in extensive detail that

GSK made "[s]tatement[s]" that were false or misleading and that GSK "kn[ew] or . . . should

[have] known" were untrue or misleading.  §17500.

Section 17500 reaches a wide range of "statement[s]," including both affirmative

misrepresentations and the failure to disclose material information.  *See supra* note 3.  As

permitted under California law, the People sufficiently identify "statements" by alleging that

GSK has conducted a "long-term advertising campaign" to promote Avandia and specifying the

nature of the misrepresentations and nondisclosures that make up that campaign.  *See Tobacco II,*

46 Cal.4th at 328.  The complaint alleges a great number of affirmative misrepresentations,

including print and broadcast advertisements directed at consumers and physicians, press

releases, product warning labels, and scientific studies, all of which were part of a coordinated

marketing campaign designed to tout Avandia's benefits and conceal or minimize its risks.  *See*

FAC ¶¶ 39, 43, 45, 51-56, 60, 62-69.  The complaint also alleges that GSK sent sales

representatives to call on California physicians and speak at conferences about Avandia, paid

doctors to advocate for Avandia, and published ghostwritten articles mischaracterizing

Avandia's safety and efficacy.  *See* FAC ¶¶ 39, 43, 55.

In addition to these affirmative misrepresentations, the complaint alleges serious and

repeated nondisclosure of material facts about Avandia's safety and efficacy.  Such

nondisclosure, too, is actionable under §17500.[8]  For example, even before Avandia went on the

market in 1999, GSK had access to information revealing Avandia's health risks.  *See, e.g.*, FAC

---

[8] *See Mass. Mut. Life Ins. Co. v. Superior Court*, 97 Cal.App.4th 1282, 1291 (Cal. App. 2002) (holding "trier of fact could find Mass Mutual's . . . failure to disclose its own conclusions was misleading"); *Wells Fargo Bank*, 135 Cal.App.4th at 1488 n.22 (holding statements that "fail[ed] to disclose" change in policy "could be found by a trier of fact to be false or misleading advertising under section 17500").  Further, while not necessary to a §17500 claim based on nondisclosure, pharmaceutical manufacturers, who have "superior access to information about their drugs, especially in the postmarketing phase as new risks emerge, are under a special duty to investigate and report adverse effects of their drugs."  *Guardian Life*, 677 F.Supp.2d at 492 (D. Mass. 2010) (citing *Wyeth v. Levine*, 129 S.Ct. 1187, 1202 (2009)).

¶¶ 35-36.  The complaint alleges that GSK had an affirmative duty to disclose such information to the public, FAC ¶ 9, but it did not do so.  Over the years, GSK continued receiving information (in the form of raw data, Serious Adverse Event reports, and internal studies) from which GSK knew or should have known that Avandia was linked to cardiovascular risks, but rather than disclosing the information, GSK withheld it from the public and the scientific and regulatory communities and misled patients, doctors, and other purchasers about Avandia's safety and suitability for its stated purpose.  *See, e.g.*, FAC ¶¶ 4, 60-63, 66.

Similarly, the complaint alleges GSK conducted clinical trials and analyses designed not to assess Avandia's safety or efficacy but to advance GSK's marketing messages.  *See* FAC ¶¶ 35, 56, 58, 62, 64-65.  The complaint provides detailed information about GSK's dissemination of data and results (often partial and selective) to the public and to the scientific and medical communities and its use of data, trials, and summaries to misrepresent Avandia's safety and efficacy.  *See, e.g.,* FAC ¶¶ 9, 65, 67-68.  The complaint alleges that GSK repeatedly manipulated study design and data to produce more favorable results and continued marketing Avandia as safe and efficacious despite contradictory findings.  *See* FAC ¶¶ 35, 58, 64-65.[9]

As the foregoing makes clear, the People have alleged that, as part of a long-term campaign, GSK made "statement[s] concerning [Avandia] . . . [that were] untrue or misleading," and that it "kn[ew], or . . . by the exercise of reasonable care should [have] known," that those statements were untrue or misleading.  §17500.  The ultimate requirement to state a claim under §17500 is that misrepresentations or nondisclosures be "likely to deceive" a "reasonable consumer" or a reasonable member of a vulnerable group of consumers.  *See supra* at 4.

---

[9] In addition, the complaint alleges that part of GSK's marketing campaign involved silencing and intimidating doctors who questioned Avandia's safety and contradicted GSK's marketing messages.  *See* FAC ¶ 5. The complaint provides detailed allegations of GSK's intimidation of doctors, including the now notorious "Buse Affair," in which GSK officials intimidated a diabetes researcher to prevent him from voicing his concerns about Avandia's safety.  FAC ¶ 44, 47-49.

Here, GSK's misrepresentations and nondisclosures concerned Avandia's safety and efficacy—undoubtedly two critical concerns to a reasonable purchaser of diabetes medication. GSK represented "that Avandia was better at lowering blood sugar than other established drugs" and "that, unlike the older diabetes drugs, Avandia had the additional benefit of actually *lowering* diabetics' cardiovascular risks." FAC ¶ 40. GSK also withheld important safety information regarding the drug's true cardiovascular risks. FAC ¶¶ 4, 60-63, 66. As "diabetics already suffer from an increased risk for such events as compared to non-diabetics, and a central purpose of diabetes management through medication is to reduce that risk," FAC ¶ 2, it cannot seriously be suggested that assertion of a beneficial impact on heart health and suppression of information about a link to cardiovascular problems would be unimportant to a reasonable purchaser. The same is true regarding GSK's specific statements that Avandia was safe to use with insulin. The complaint explains that Type 2 diabetes "results from the body's failure to produce enough insulin . . . and/or inability to use insulin properly," FAC ¶ 29, and that diabetics may be prescribed insulin as part of their treatment regimen. FAC ¶ 30. It also alleges that GSK knew or should have known that Avandia is not safe for use with insulin, *see* FAC ¶¶ 50, 60, but that GSK failed to warn California purchasers and in fact made repeated affirmative statements that Avandia was safe for such use. FAC ¶¶ 54, 60.

It cannot be said on a motion to dismiss that these misrepresentations and nondisclosures would be immaterial to a reasonable purchaser. *See Consumer Advocates v. Echostar Satellite Corp.,* 113 Cal.App.4th 1351, 1361-62 (Cal. App. 2003) (whether misrepresentations are likely to deceive presents triable question of fact unless "no reasonable consumer would take [them] as anything more weighty than an advertising slogan").[10] The complaint's factual allegations—

---

[10] Further demonstrating that GSK's representations were likely to deceive purchasers, the complaint alleges that since 2007, when the Nissen study brought Avandia's risks to light, "Avandia sales have declined 70%."

taken as true, as they must be when deciding a 12(b)(6) motion—demonstrate far "more than a sheer possibility that [GSK] has acted unlawfully." Iqbal, 129 S.Ct. at 1949. The complaint meets Rule 8's pleading requirements.

### B. Rule 9(b) does not apply to a §17500 claim; even if it did, the People's complaint pleads all the relevant allegations with sufficient specificity.

GSK argues that the Court should apply Rule 9(b) to the People's claim. From this mistaken premise, GSK goes on to argue that Rule 9(b) would effectively replace the established elements of a claim under California's FAL with the elements of common-law fraud or false advertising under *other states'* consumer protection laws. *See supra* note 6. GSK's arguments are incorrect on all fronts. Rule 9(b) is inapplicable here because a claim under §17500 is not a fraud claim. Moreover, even if Rule 9(b) did apply, it is a federal procedural rule and, as such, cannot be applied in a way that would alter substantive state law. California law requires only a showing that GSK's statements were likely to deceive a reasonable consumer. Rule 9(b) cannot introduce an additional requirement that the complaint allege actual individualized reliance by California purchasers where no such showing is required by the underlying state law.

> #### 1. The People's §17500 claim is not a fraud claim, and its elements are different from those required for fraud; Rule 9(b) is thus inapplicable.

Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FRCP 9(b). A claim under §17500 is not a claim for fraud. As the California Supreme Court explained in *Tobacco II*, at common law, "[a] fraudulent deception must be *actually false*, *known* to be false by the perpetrator[,] and *reasonably relied upon* by a victim who incurs *damages*." *Tobacco II,* 46

---

FAC ¶ 78. Amazingly, GSK attempts to turn this statistic to its benefit, contending that the remaining 30% show that some patients have continued to purchase Avandia in spite of its risks. MTD at 16. The more logical explanation for the remaining 30% is that GSK's Avandia sales are still benefiting from its deceptive campaign, which—as the complaint alleges, FAC ¶ 84, and the newspapers confirm, *see infra* note 24—continues to this day.

Cal.4th at 312 (internal quotation marks and citation omitted; emphasis added). "None of these elements are required to state a claim" of false advertising under §17500. *Id.*

In fact, there is very little overlap between the elements of fraud and the elements of a §17500 claim. Whereas fraud requires that the defendant's statements be actually false, §17500 requires that they be false *or misleading*. *See Colgan*, 135 Cal.App.4th at 679 ("[§]17500 . . . proscribe[s] not only advertising which is false, but also advertising which, although true, . . . has a capacity. . . to deceive or confuse the public.") (internal quotation marks and citation omitted). Whereas fraud requires that the defendant *know* that its statements are false, §17500 requires that the defendant knew *or should have known*. And, whereas fraud requires both reliance and loss, California courts have emphasized time and time again that neither reliance nor loss is an element of a §17500 claim. *See Tobacco II*, 46 Cal.4th at 320 (citing cases).

California law is clear that "statements" in a §17500 case can be alleged and proved by showing a long-term marketing campaign, without designating individual statements made at a specific time or place or to specific individuals. The California Supreme Court explained in *Committee on Children's Television* that, where a §17500 plaintiff alleges that the defendant "carried out a large[-]scale program of deceptive advertising in which the specific advertisements change constantly, but all follow a pattern of making, in one form or another, certain misleading and deceptive representations[,]" the complaint need not "set out the specific language of each advertisement" or provide an unrealistic level of detail about specific statements the defendant made. 35 Cal.3d at 214. In *Tobacco II*, the Supreme Court reaffirmed this standard, emphasizing that even in private class action suits—for which Proposition 64 now requires, for standing purposes, a showing of actual reliance by the named plaintiff—"where . . . a plaintiff alleges exposure to a long-term advertising campaign, the plaintiff is not required to plead with

an unrealistic degree of specificity that the plaintiff relied on particular advertisements or statements." *Tobacco II*, 46 Cal.4th at 328.

Thus, in the context of a long-term campaign, a §17500 plaintiff can show that a defendant made actionable "statement[s]" without delving into exhaustive detail about particular advertisements. And, although California law (like federal law) requires that fraud be pled with specificity, *see Citizens of Humanity, LLC v. Costco Wholesale Corp.*, 171 Cal.App.4th 1, 20 (Cal. App. 2009), California courts do not require the same level of specificity for §17500 claims. *See Committee on Children's Television*, 35 Cal.3d at 213 n.12 (holding that plaintiffs' allegations sufficed for their claim under §17200 and §17500, but noting, in contrast, that allegations of fraud must "be pleaded with specificity").

Given these substantive differences between §17500 and common-law fraud, applying Rule 9(b) to §17500 is functionally unworkable. By its terms, Rule 9(b)'s heightened pleading standard applies only to "the circumstances constituting fraud." Because one does not need to plead the circumstances constituting fraud to plead a violation of §17500, as shown above, it is difficult to imagine what Rule 9(b)'s application to the present case might look like.

Rule 9(b) cannot apply to allegations that GSK *should have known* its statements were false or misleading, because such allegations sound in negligence, not in fraud. *See Johns v. Bayer Corp.*, 2010 WL 476688, *5 (S.D. Cal. 2010) (slip op.) (holding that Rule 9(b) did not apply to plaintiff's allegations that the defendant should have known of the falsity of its statements); *see also Khan v. Med. Bd.*, 12 Cal.App.4th 1834, 1846 (Cal. App. 1993) (noting that §17500 prohibits both negligent and intentional dissemination of false or misleading statements). Nor could Rule 9(b) apply to allegations that GSK *knew* of the false or misleading nature of its statements, or that GSK intended to induce reliance by making those statements, because

13

although knowledge is an element of common-law fraud, Rule 9(b) expressly provides that "intent, knowledge, and other conditions of a person's mind may be alleged *generally*." (Emphasis added).  And Rule 9(b) cannot apply to allegations of the People's reliance or loss—two circumstances constituting fraud at common law—because neither is required to state a claim under §17500.  *See* Section II(A) *supra*.  Finally, Rule 9(b) cannot supplant the substantive California rule recognizing that, in the context of a "long-term advertising campaign," it is unnecessary to plead, *Committee on Children's Television*, 35 Cal.3d at 214, or to prove that people had "heard and had relied on specific misrepresentations." *Tobacco II,* 46 Cal.4th at 327.

With so little overlap between the elements of these two claims, and a substantive California rule that permits proof of misleading statements in the form of evidence of a long-term advertising campaign, it is logically incoherent to apply Rule 9(b) to the People's claim.

### 2.  *Even if Rule 9(b) applies, it applies only to allegations of fraud.*

In spite of the substantial differences between a §17500 claim and common-law fraud and the conceptual problems with applying Rule 9(b) to a non-fraud claim, the Ninth Circuit has, as GSK notes, applied Rule 9(b) to a §17500 claim when it deemed the claim to be "grounded in fraud"—a phrase that court left undefined.  *Kearns v. Ford Motor Co.,* 567 F.3d 1120, 1126 (9th Cir. 2009).  GSK argues that this Court should follow *Kearns* and apply Rule 9(b) to the People's claim, but it provides no logical reason why the Court should do so.  As shown above, applying Rule 9(b) to a non-fraud cause of action is fraught with conceptual and functional difficulties.  Seeking to simplify things, GSK seems to assume, citing *Kearns*, that all §17500 claims *by definition* are grounded in fraud.  MTD at 8.  That is not so.  *See, e.g., Johns*, 2010 WL 476688, *5.  If this Court chooses to apply Rule 9(b) to the People's claim, it should be aware

14

that *Kearns* does not support GSK's oversimplified view of Rule 9(b)'s operation, and that Third Circuit case-law clearly counsels a more nuanced, allegation-based approach.

The Third Circuit has explained that Rule 9(b) does not apply in a blanket manner to all misrepresentation claims.  Rather, "Rule 9(b) refers to 'averments' of fraud, and thus requires [a court] to examine the factual allegations that support a particular legal claim" to determine whether Rule 9(b) applies.  *Shapiro v. UJB Financial Corp.*, 964 F.2d 272, 288 (3d Cir. 1992).  It is possible that some claims may involve "a mixture of allegations of negligence, fraud, and the misleading nature of certain communications"; "[b]y its plain wording, Rule 9(b) would not appear to apply to claims that a defendant negligently violated [a statute]."  *Id.* (internal quotation marks and citations omitted).  *Kearns* likewise prescribes an allegation-based inquiry: "Where fraud is not an essential element of a claim, only those allegations of a complaint which aver fraud are subject to Rule 9(b)'s heightened pleading standard."  *Kearns*, 567 F.3d at 1124.  Allegations of non-fraudulent conduct appearing in the same complaint "need only satisfy the requirements of Rule 8(a)(2)."  *Id.*

Applying this logic, because fraud is not an essential element of a §17500 claim, whether Rule 9(b) applies here would depend on what the complaint alleges.  GSK cites only two allegations in the complaint—FAC ¶¶ 87 and 89—to support its contention that "the County's claim under [§ 17500] is grounded in fraud."  MTD at 8.  GSK makes no attempt to explain *why* these two allegations should convert the People's entire claim into one that is grounded in fraud.  They should not.  But even if this Court were to decide that those two allegations *are* enough to invoke Rule 9(b), Rule 9(b) still could only apply to allegations in the complaint that overlap with the substantive elements of fraud.  As noted above, the People's complaint alleges not only that GSK "knew" that its statements were false or misleading, but also that it "should have

known."  It alleges, for example, that "GSK had all th[e] data [analyzed in the Nissen study] available at its fingertips for years, but it had at a minimum ignored the data, or at worst covered it up.  Although GSK scientists had the ability and duty to analyze this data, GSK failed to take any action, all while aggressively marketing Avandia."  FAC ¶ 66.  This aspect of the County's claim certainly does not sound in fraud, and so would not be subject to Rule 9(b).  *See Shapiro*, 964 F.2d at 288,  Nor would Rule 9(b) apply to the County's allegations that GSK *knew* its representations were false or misleading, because, as noted above, Rule 9(b) does not apply to allegations of knowledge or intent.

The only allegations to which Rule 9(b) could conceivably apply, then, are allegations that GSK made statements or withheld information, and that those statements or nondisclosures were false or misleading.  As to those allegations, the People have met Rule 9(b)'s pleading standard.  The complaint is full of detailed averments of specific misrepresentations and nondisclosures by GSK—discussed in Section III(A) above—and why they were false or misleading.  These allegations are more than specific enough to "provide defendants with notice of the precise misconduct that is alleged."  *Bd. of Trustees of Teamsters Local 863 v. Foodtown*, 296 F.3d 164, 173 n.10 (3d Cir. 2002) (internal citation omitted).

### 3. *Rule 9(b) does not—and cannot—introduce new substantive elements to the underlying state-law claim.*

The substantive elements of a claim under §17500 remain the same regardless of whether Rule 9(b) applies to the People's complaint.  As a procedural rule, Rule 9(b) can require that facts be pled with particularity *only if the underlying state law requires those facts to be pled in the first place*.  It cannot impose new substantive required allegations if those allegations are not already elements of the underlying state claim.  *See* 28 U.S.C. § 2072(b) (providing that federal procedural rules may not "abridge, enlarge or modify any substantive right" under state law);

16

*Guaranty Trust Co. of New York v. York*, 326 U.S. 99, 109-11 (1945). Thus, any suggestions in GSK's motion to dismiss that the application of Rule 9(b) injects a reliance requirement that does not exist under the FAL itself are simply incorrect.

GSK may argue that *Kearns* stands for the contrary proposition: that the application of Rule 9(b) *does* alter the elements that must be pled to state a claim under §17500, interposing a requirement that the complaint allege reliance on specific statements. To the extent *Kearns* can be read to support this proposition, it is wrong, as it is directly at odds with the California Supreme Court's contemporaneous decision in *Tobacco II*. *Tobacco II* made clear that Proposition 64 did not alter the UCL's "likely to be deceived" standard. *Tobacco II*, 46 Cal.4th at 328. *Kearns*, which was decided just days after *Tobacco II* and does not cite *Tobacco II*, offers an interpretation of the UCL that *Tobacco II* flatly rejects. Reliance is not an element of a §17500 claim, and as such, there is no need to plead it at all, let alone with particularity.[11]

> *4. In light of both substantive California law and Third Circuit precedent on the application of Rule 9(b), even if Rule 9(b) applies, it does not require the People to allege particular statements or nondisclosures GSK made in the course of its long-term campaign with unrealistic specificity.*

If this Court decides to apply Rule 9(b) at all, it must do so in light of what the underlying substantive state law requires. As discussed above, California law establishes that in the context of a long-term and consistent advertising campaign, plaintiffs need not provide an unrealistic degree of detail about specific advertisements that were part of that campaign. *See Committee on Children's Television*, 35 Cal.3d at 214; *see also Tobacco II*, 46 Cal.4th at 328. The particularity

---

[11] Importantly, too, *Kearns* was a case involving a private individual's UCL action, to which Proposition 64's standing requirements applied—not a governmental enforcement action, as here. *Kearns*'s confusion about whether reliance on specific advertisements was an element of a UCL action may have arisen from Proposition 64's imposition of reliance as a standing requirement. *See also infra* note 27. In any event, *Kearns* is inapplicable to the present governmental enforcement action, where reliance is unnecessary for *any* purpose. For the same reasons, the Northern District of California's Rule 9(b) analysis in *Actimmune II*, 2009 WL 3740648, *13, which was bound to follow *Kearns*, is inapplicable and should not be followed by this Court.

that Rule 9(b) demands can only be given meaning against the backdrop of this state-law standard. The application of Rule 9(b) does not change that substantive law.[12]

Indeed, as the Third Circuit has held, Rule 9(b) itself allows for variations in the method of proof, and does not require rigid adherence to the "date, place, and time" formulation that GSK urges. *See* MTD at 14. Rather, while "[i]t is certainly true that allegations of 'date, place or time' fulfill [Rule 9(b)] . . . nothing in the rule requires them. Plaintiffs are free to use alternative means of injecting precision and some measure of substantiation into their allegations of fraud." *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984). Furthermore, in cases alleging corporate fraud, the Third Circuit recognizes that Rule 9(b)'s particularity requirement is relaxed:

> Courts must be sensitive to the fact that application of Rule 9(b) prior to discovery may permit sophisticated defrauders to successfully conceal the details of their fraud. Particularly in cases of corporate fraud, plaintiffs cannot be expected to have personal knowledge of the details of corporate internal affairs. Thus, courts have relaxed the rule when factual information is peculiarly within the defendant's knowledge or control.

*In re Craftmatic Sec. Lit. v. Stanley Kraftsow*, 890 F.2d 628, 645 (3d Cir. 1989) (citations and quotation marks omitted); *accord Shapiro*, 964 F.2d at 285; *S. Broward Hosp. Dist. v. Medquist, Inc.*, 516 F.Supp.2d 370, 384-85 (D.N.J. 2007) (applying the rule, and observing that when defendant's wrongful acts "are numerous and take place over an extended period of time, less specificity in pleading fraud is required.") (quotation marks and citation omitted).

---

[12] Similarly, in *United States ex rel. James H. Grubbs, M.D. v. Kanneganti*, 565 F.3d 180 (5th Cir. 2009), the Fifth Circuit explained that "Rule 9(b)'s ultimate meaning is context-specific, and thus there is no single construction of Rule 9(b) that applies in all contexts. . . . [What it requires] depends on the elements of the claim at hand." *Id.* at 188. *Grubbs* involved a suit brought under the False Claims Act, which, "in contrast [to common-law fraud and securities fraud], lacks the elements of reliance and damages. . . . Thus, a claim under the False Claims Act and a claim under common law and securities fraud are not on the same plane in meeting the requirements of 'stat[ing] with particularity' the contents of the fraudulent misrepresentation." *Id.* at 189. "We hold that to plead with particularity the circumstances constituting fraud for a False Claims Act § 3729(a)(1) claim, a relator's complaint, if it cannot allege the details of an actually submitted false claim, may nevertheless survive by alleging particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *Id.* at 190.

This rule is particularly salient here, where the corporate defendant's conduct is deceptive not only for what it affirmatively represented, *but also for what it failed to disclose*.  It is GSK's suppression of information about Avandia's risks—information that was, in large part, exclusively within its control—that lies at the heart of the People's claim.  *See, e.g.*, FAC ¶¶ 1, 3, 35, 42, 56, 58, 60, 82, 87.  The public is learning daily more and more of what information GSK concealed about Avandia's risks.[13]  Naturally, there is a limit to the specificity with which the People can plead information that GSK has withheld from the public.  It is therefore particularly important, if applying Rule 9(b), that the Court be "sensitive to the fact that application of the Rule prior to discovery may permit sophisticated defrauders to successfully conceal the details of their fraud."  *Craftmatic,* 890 F.2d at 645 (internal quotation marks and citation omitted).

### C. The People have shown entitlement to all three remedies they seek: civil penalties, restitution, and injunctive relief.[14]

The California Supreme Court has repeatedly emphasized that the "focus [of §17500 is] on the defendant's conduct, rather than the plaintiff's damages," and both the law's substance and its remedies are tailored to that end.  *Tobacco II*, 46 Cal.4th at 312 (citing *Fletcher,* 23 Cal.3d at 453).  The law's overarching aim is to "deter[] unfair business practices," *id.* at 312, and to ensure "that wrongdoers not retain the benefits of their misconduct."  *Id.* at 320.  Therefore, California courts "repeatedly and consistently . . . hold that relief under [§ 17500]"— including injunctive relief, restitution, and civil penalties—"is available without individualized proof of deception, reliance *and injury*."  *Id.* at 320 (emphasis added).

---

[13] *See infra* note 24.

[14] The complaint seeks trebling of all relief granted by the Court pursuant to Cal. Civ. Code §3345, which authorizes trebling of monetary awards in actions brought "on behalf of[] or for the benefit of senior citizens or disabled persons."  The California Supreme Court recently clarified that trebling in UCL and FAL actions is available only for civil penalties, and not for restitution.  *Clark v. Superior Court*, 2010 WL 3081288, *5 (Cal. Aug. 8, 2010).  Therefore, the People recognize that their request for trebling on this basis should apply only to an award of civil penalties.

Without a single deposition taken or interrogatory propounded in this case, GSK asserts that the People are not entitled to *any* remedy—no matter what GSK's conduct was. This assertion, like GSK's entire motion, is based on wholly irrelevant case law and a demonstrably false premise: that actual reliance and damages are elements of a §17500 claim. First, GSK contends, based on a case interpreting Mississippi law, that the People cannot seek civil penalties under California law without "individualized proof" of reliance. MTD at 24-25. Next, GSK asserts, in direct conflict with California Supreme Court authority, that the Court cannot order restitution because it would have to examine what advertisements each Avandia purchaser saw, to what extent they relied on them, and what value each purchaser placed on Avandia as compared to other drugs. *Id*. at 18, 20. Finally, GSK argues that the People cannot seek injunctive relief to prevent GSK from continuing to mislead Californians by allowing marketing officials to direct the design and dissemination of purportedly scientific studies. *Id*. at 26.

GSK's arguments fail, first of all, because they go to the issue of the *quantum* of recovery, involving fact-dependant questions that cannot be resolved on a 12(b)(6) motion. *See United States ex rel. Hays v. CMC Elecs. Inc.*, 297 F.Supp.2d 734, 735 (D.N.J. 2003); *Eagle Traffic Control v. Addco*, 889 F.Supp. 200, 202 (E.D. Pa. 1995). More fundamentally, as explained below, GSK's arguments are based on a mischaracterization of §17500 and the role these three forms of equitable relief play in the statutory scheme. California law makes perfectly clear that none of them require individualized proof of reliance or injury by purchasers.

1. *Section 17500 mandates that the Court assess civil penalties against GSK upon a finding that its conduct was "likely to deceive."*

GSK purports that "[i]t would be impossible for the Court to [impose civil penalties] without a showing by the County of exactly what false advertising occurred and how it affected physicians and payors." MTD at 24-25. GSK's claim is belied by the actual law, which provides:

> Any person who violates [§17500] *shall* be liable for a civil penalty not to exceed two thousand five hundred dollars ($2,500) *for each violation*, which *shall be assessed and recovered* in a civil action brought in the name of the people of the State of California by . . . any county counsel . . . .

§17536(a) (emphasis added). A defendant violates §17500 if its conduct was likely to deceive the public; neither reliance nor actual loss is a separate element of the claim. Similarly, the list of statutory factors that courts may consider in assessing penalties focuses *exclusively* on the defendant's conduct: "the nature and seriousness of the misconduct; the number of violations, the persistence of the misconduct, the length of time over which the misconduct occurred, the willfulness of the defendant's misconduct; and the defendant's assets, liabilities, and net worth." §17536(b). None of these factors relate to the circumstances of any single transaction or the statements' effects on individual purchasers.

GSK fails to cite a single *California* case holding that individualized analysis of each transaction is appropriate to support civil penalties—because there is none. Instead, GSK turns to Mississippi law and the *Hood* opinion. *Hood ex rel. Mississippi v. Eli Lilly & Co.*, 671 F.Supp.2d 397 (E.D.N.Y. 2009). *Hood*, however, has absolutely no application here. Each of the claims asserted in that case—including claims under Mississippi's consumer protection law—requires proof of reliance as in traditional common law fraud. *Hood*, 671 F.Supp.2d at 430-33. The *Hood* Court granted partial summary judgment because "reliance, loss-causation, and injury are inappropriate for aggregation, due to the need to prove these elements on an individualized basis[.]" *Id*. at 434. As those are not elements of a §17500 claim, *Hood*'s insistence on individualized proof is wholly irrelevant to this 12(b)(6) motion.[15]

---

[15] GSK asserts without authority that imposing civil penalties based on "aggregate proof" would violate its due process rights. *See* MTD at 26. Due process challenges to the remedial scheme under the FAL and UCL have been made before and have been rejected. *See, e.g., Fremont Life Ins. Co.*, 104 Cal.App.4th at 514-530; *People v. E.W.A.P., Inc.*, 106 Cal.App.3d 315, 321-22 (Cal. App. 1980).

    2.   *Restitution is available and necessary to ensure that GSK restores to purchasers money it "may have...acquired by means" of its misleading marketing campaign.*

The FAL authorizes courts to award restitution "to restore to any person in interest any money or property . . . which *may have been* acquired by means of any practice in this chapter declared to be unlawful." *Id.* §17535 (emphasis added). In spite of this statutory language, and even though the People have yet to offer *any* monetary recovery model, GSK attacks the prayer for restitution on several equally flawed fronts. GSK asserts that an award of restitution is impossible because "aggregate" or "statistical" proof of loss is inappropriate, MTD at 17; because the People cannot use a "price inflation" theory of recovery, *id.* at 18-19; and because the People cannot identify a "measurable amount" of restitution to which each and every potential claimant may be entitled, *id.* at 20. Each of these attacks assumes, contrary to California law, that restitution must be based on individual purchasers' "losses." Despite GSK's extensive citations to inapposite case-law—including class certification rulings and decisions on common-law fraud claims or claims under other states' consumer protection laws for which individualized reliance is required—its arguments are directly foreclosed by well-settled California law.

    a.   *Restitution is not dependent upon individualized proof of injury.*

Restitutionary orders under the FAL focus on the defendant's wrongdoing, and not on the extent to which any particular purchaser may have suffered loss or damage. *See Tobacco II,* 46 Cal.4th at 322-23. The remedy is designed to ensure that "wrongdoers not retain the benefits of their misconduct." *Id.* at 312 (citing *Fletcher*, 23 Cal.3d at 452). Thus, even "in the absence of individualized proof of [deception]," once a court finds that the defendant violated §17500 (i.e., that its misrepresentations were likely to deceive) and that the defendant "*may have . . . acquired*" money or property "*by means of*" that violation, *id.* (quoting §17535), restitution is

appropriate "in order to preclude an entity which has engaged in an unlawful trade practice from improperly profiting from its wrongdoing." *Fletcher*, 23 Cal.3d at 446.

The California Supreme Court recently reaffirmed in *Clark v. Superior Court* that restitution under the UCL and FAL is designed to restore the *status quo ante* by returning the purchase price to the plaintiff:

> The word "restitution" means the return of money or other property obtained through an improper means to the person from whom the property was taken. "The object of restitution is to restore the status quo by *returning to the plaintiff* funds in which he or she has an ownership interest." . . . [R]estitution in a private action brought under the unfair competition law is measured by what was taken from the plaintiff[.]

*Clark v. Superior Court*, 2010 WL 3081288, *5 (Cal. Aug. 8, 2010) (citations omitted; emphasis added). That is, the measure is *what the defendant took from purchasers*, not the "value" to each purchaser of what she "lost."[16]  A contrary rule would line defendants' pockets with money that purchasers otherwise could have paid to a competitor.  California's equitable remedial scheme cannot be squared with GSK's contentions.

Yet GSK's motion focuses doggedly on what impact GSK's conduct had on individual purchasers, insisting that potential variations in individual purchasers' experiences and what their "damages" might be should preclude relief.  California courts have consistently rejected such arguments.  The seminal case in this regard is *Fletcher v. Security Pacific National Bank*.  In *Fletcher*, the plaintiff brought a proposed class action against a bank, alleging breach of contract and false advertising relating to the bank's representations of how it calculated loan interest.  23

---

[16]California's emphasis on undoing a defendant's wrongful acquisition, as opposed to calculating and awarding "damages," is entirely consistent with the traditional, accepted view that "the purpose of restitution is simply to prevent defendants from retaining benefits unjustly obtained," Russell Weaver *et al*., *Principles of Remedies Law* 109 (2007), and that therefore, "restitutionary recoveries will be based on the amount defendant received," not the loss suffered by the plaintiff.  *Id.* at 119.  *Accord* Goff & Jones, *The Law of Restitution* 17 (2007) ("A restitutionary claim is for the benefit, the enrichment, gained by the defendant at the plaintiff's expense; it is not one for loss suffered."); Dan B. Dobbs, *Law of Remedies: Damages, Equity, Restitution* 379 (1993) ("Restitution is measured by the defendant's 'benefits' in the relevant transactions.").

Cal.3d at 448. In discovery, it became clear that bank personnel occasionally explained to borrowers how interest truly was calculated. *Id.* The California Supreme Court held that while variations in individual borrowers' experiences may preclude class certification for the contract claim, they did not preclude a restitution order under §17500. *Id.* at 449. The Court specifically rejected the notion that "proof of each individual borrower's [deception] was required to sustain recovery of restitution under that section." *Id.* And it reiterated that §17500 "authorizes restitution not only of any money which has been acquired by means of an illegal practice, but further, permits an award of any money which a trial court finds *may have been* acquired by means of any illegal practice." *Id.* at 451 (internal citations and quotation marks omitted). This is consistent with the equitable nature of restitution; equity is best served by ensuring that defendants are held responsible for their actions and not permitted to shield themselves from responsibility by imposing arduous proof standards inconsistent with the statutory mandate.

This principle was reaffirmed in *The People ex rel. Bill Lockyer v. Fremont Life Ins. Co.*, 104 Cal.App.4th 508 (2002). In *Fremont*, the California Attorney General brought a governmental enforcement action against an insurance company, whose contracts failed to disclose to customers the penalties they would incur if they terminated their policies. *Id.* at 530-531. The trial court found the contract "likely to deceive" and ordered restitution to *all* policyholders, *regardless* of whether they had actually terminated their policies and incurred penalties. *Id.* at 531. The defendant argued that, because not all purchasers were deceived by the §17500 violations, the award of restitution would produce a "windfall" to certain purchasers. *Id.* at 532. The Court of Appeal disagreed and affirmed the award, explaining:

> [The] general equitable principles underlying Section 17535 as well as its express language arm the trial court with the cleansing power to effect full justice. Accordingly the statute clearly authorizes a trial court to order restitution in the absence of proof of lack of knowledge [by individual purchasers] in order to deter

24

future violations of the unfair trade practice statute and to foreclose retention by the violator of its ill-gotten gains. . . . [The defendant's argument that] the restitution order . . . will provide an unfair windfall to consumers who were not deceived . . . is not a valid reason to reverse the order given the holding of *Fletcher* . . . . [T]he rule that restitution under the [FAL] without individualized proof of harm is well-settled.

*Id.* at 531-32 (internal quotation marks and citations omitted).

Most recently, the California Supreme Court reaffirmed these principles in *Tobacco II*, when it considered and disapproved a Court of Appeal case, *Collins v. Safeway Stores, Inc.*, 187 Cal.App.3d 62 (Cal. App. 1986), on which GSK's motion to dismiss here affirmatively relies. In *Collins*, plaintiffs sought to certify a class of individuals who purchased eggs from a supermarket during a period when some of those eggs were contaminated with a pesticide. *Id.* at 65. At most 20% of the eggs sold during that period were actually contaminated. *Id.* The trial court declined to certify the class, and the Court of Appeal affirmed, reasoning that "the proposed class was not ascertainable as an economic class that had suffered an economic loss." *Id*. at 67. In *Tobacco II,* the Supreme Court criticized this decision as "questionable," explaining that it was "clear . . . that *some* of the purchasers in question may have purchased contaminated eggs[,]" and so "the money or property of the *entire class of purchasers* 'may have [been] acquired by means' of an unfair practice, thus entitling them to restitution for their loss." *Tobacco II*, 46 Cal.4th at 322-23 (internal citations omitted; emphasis added). Thus, the California Supreme Court conceives of the "loss" that is the focus of a restitutionary award as the money paid for the product that the defendant misrepresented.

Viewed against this backdrop, it is clear that GSK's insistence on individualized proof of loss is without merit. What any individual purchaser may or may not have known about the truth of GSK's claims about Avandia, how they might have valued Avandia relative to other drugs, or why any doctor may have prescribed Avandia—all are irrelevant to the Court's determination of

whether restitution is available.  Once the Court determines that purchasers were "likely to be deceived" by GSK's misrepresentations and nondisclosures, all California purchasers are entitled to restitution of money GSK "may have acquired," by means of those misrepresentations and nondisclosures, regardless of individual circumstances.[17]  Restitution is an equitable remedy, and equity is served by ensuring that culpable defendants—rather than purchasers and competitors—bear responsibility for misleading statements likely to deceive a reasonable consumer.[18]  There simply is no requirement under the FAL that the People plead and prove "losses," either on an individual or aggregate basis.

> b.  *GSK's reliance on* Pfizer, Vioxx, *and other class certification decisions conflicts with controlling California Supreme Court precedent.*

GSK improperly relies on a number of class-certification decisions to support its arguments that individualized proof is needed and that aggregate proof cannot support an award of restitution.  As *Tobacco II* explained, however, the commonality analysis appropriate for class certification motions is not applicable to questions of standing, let alone to justify distorting or altering the substantive elements of a §17500 claim.  *Tobacco II*, 46 Cal.4th at 321-23.

GSK cites *Pfizer, Inc. v. Superior Court,* 182 Cal.App.4th 622 (Cal. App. 2010), to assert that a §17500 plaintiff must prove that each and every prospective claimant saw particular advertisements.  *See* MTD at 15.  *Pfizer* holds no such thing; it was a decision on a class

---

[17] *See also People v. Toomey,* 157 Cal.App.3d 1, 25-26 (Cal. App. 1984) (affirming full restitutionary award to all purchasers of coupons sold pursuant to a deceptive advertising campaign, despite the fact that some purchasers may not have been deceived; "because reliance and actual damages are not necessary elements to an award under section[] 17535 . . . [t]he trial court was fully justified in ordering restitution to all purchasers."); *see also Prata v. Superior Court,* 91 Cal.App.4th 1128, 1144 (Cal. App. 2001) (reversing the trial court's refusal to allow §17500 case to proceed as a representative action because the "trial court used the wrong standard in focusing on issues of proof regarding individual consumers."); *Mass. Mut.*, 97 Cal.App.4th at 1282.

[18] Essentially, GSK is arguing that even if the Court finds it was liable under the statute (in that its misrepresentations were likely to deceive), GSK should not have to pay; instead, it should get a windfall by keeping any money that otherwise may have gone to its competitors and by precluding consumers from obtaining relief without an individualized showing of what they would have paid.  This approach simply is not consistent with California law, no matter how many times GSK asserts it.

26

certification motion based on very specific facts. In discovery it was learned that "the *undisputed evidence show[ed that] many, if not most*, class members *were not exposed* to the 'as effective as floss' campaign and therefore did not purchase Listerine because of it." *Pfizer*, 182 Cal.App.4th at 632 (emphasis added). Therefore, "the class certified by the trial court, *i.e.*, all purchasers of Listerine in California during a six-month period, is grossly overbroad because many class members, if not most, clearly are not entitled to restitution[,]" and so they lacked the "community of interest" required by Code of Civil Procedure §382. *Id.* at 628, 631.[19]

The present case, of course, is not a proposed class action; the People need not seek class certification or demonstrate that California consumers have a community of interest that would satisfy §382. *Pfizer* therefore does not control the People's entitlement to relief in this case. To the extent GSK interprets *Pfizer* to require a showing—whether for class certification, to establish standing in a private action, or more generally to prove the merits of a 17500 claim—that individual purchasers heard or saw specific misleading statements, it is flatly inconsistent with California law.[20]

Nor does *In re Vioxx Class Cases*, 180 Cal.App.4th 116 (Cal. App. 2009), support GSK's contentions. *Vioxx*, like *Pfizer*, was an appeal from an order denying class certification, not a decision on a motion to dismiss. *Id.* at 120. In *Vioxx*, private plaintiffs sued Merck under §17200, §17500, and other laws for Merck's advertising of the painkiller Vioxx. *Id.* at 122. The plaintiffs sought restitution, but crucially, they failed to offer a recovery model based on the defendant's wrongful gains, choosing instead to focus solely on a traditional damages model of

---

[19] The other cases on which GSK relies in its footnote 16 also are decisions on class certification motions, not decisions on the merits of §17500 claims. *See* MTD at 15 n.16.

[20] Moreover, *Pfizer* concerned misleading statements made on only some, but not all, product labels, which suggested consumers could use Listerine instead of floss. In contrast, this case involves both affirmative misleading statements and nondisclosures of critical information that were part of an extensive, pervasive marketing campaign, and that included statements on the product labels on all Avandia drugs.

purchasers' "losses." The only monetary recovery model they offered was one that compared the price of Vioxx with that of another pain reliever, Naproxen, to arrive at the "loss" plaintiffs suffered. *Id.* at 135. On a motion for class certification, after significant discovery, the trial court ruled that the plaintiffs' damages model was improper and denied class certification. *Id.* at 137. The Court of Appeal affirmed, recognizing that "the 'may have been acquired' language of . . . §17203 is so broad as to allow restitution without individual proof of injury," *id.* at 131, but holding the plaintiffs' choice of a purchaser-focused recovery model made variations in individual valuation and purchasing decisions relevant, and undermined the community of interest required for class certification under California law. *Id.* at 136. Because the undisputed evidence did not support Naproxen as a common class-wide comparator, *id.* at 133, 136, the proposed class was not suitable for certification.[21]

Here, the People have yet to develop and offer a recovery model, and the question of remedy is not appropriate for resolution until after discovery and expert consultation is completed. But the ultimate problem with GSK's attempt to use *Vioxx* as a shield against any restitutionary award is that the *Vioxx* plaintiffs failed to offer a model that focused on what the *defendant took from purchasers*, and chose instead to focus on purchasers' purported damages. Both the trial court and appeals court emphasized that the plaintiffs had offered no other recovery model. *Id.* at 135.[22] In this case, what value this patient or that doctor placed on

---

[21] Additionally, in *Vioxx*, the "evidence indicated that the cardiovascular risks of Vioxx *were not material* for all patients. Some patients would still take Vioxx today if it were on the market; some physicians would still prescribe it regardless of risks." *Id.* at 134. Based on that evidence, the trial court had concluded that "the individual nature of the materiality/reliance issue" destroyed the community of interest, and class certification should be denied. *Id.* at 134 n.19. The Court of Appeal disagreed. Citing *Tobacco II*, it acknowledged that "it is clear from Supreme Court authority that recovery in a UCL action is available in the absence of individual proof of deception, reliance, and injury." *Id.* It specifically declined to affirm the trial court on this basis, holding that the trial court's other findings were sufficient to support affirmance. *Id.*

[22] The Court of Appeal was careful to point out that the plaintiffs offered only one comparator, with which the trial court had expressed dissatisfaction. "The trial court concluded that class injuries were 'probably' subject to common proof[,] . . . [but that] it was 'not satisfied that comparison to other [painkillers] is particularly appropriate

28

Avandia is wholly irrelevant. What is relevant, and will be proven at trial, is whether GSK's conduct was likely to deceive California purchasers and on the benefit GSK derived from its false and deceptive marketing of Avandia.[23]

### 3. *Injunctive relief is proper to prevent GSK's ongoing violations of §17500.*

Finally, to fulfill the FAL's purpose of deterrence, a plaintiff may seek a mandatory or prohibitory injunction against future violations. *See Fletcher,* 23 Cal.3d at 453-54. Here, the People ask the Court for injunctive relief that would prohibit GSK's marketing department from continuing to exert improper influence on GSK's scientific studies. Second, they request an injunction mandating public disclosure of the data underlying all ongoing and completed clinical trials. Both forms of injunctive relief are required to put a stop to GSK's repeated and ongoing §17500 violations. *See Tobacco II*, 46 Cal.4th at 320 ("The purpose of [injunctive] relief . . . is to protect California's consumers against unfair business practices by stopping such practices in their tracks."). The potential for ongoing harm to consumers exists so long as "company scientists lack the necessary independence in GSK's corporate structure to allow them to create scientific studies that meaningfully assess efficacy and safety; instead, they take direction from GSK's marketing department." FAC ¶ 41. Even if GSK were to voluntarily abandon its deceptive practices relating to Avandia, absent injunctive relief, GSK would be free to use the

---

or helpful.'" *Id.* Neither the trial court nor the Court of Appeal suggested that individuals' entitlement to restitution in a pharmaceutical false advertising case was *per se* incompatible with a common method of calculation.

[23] In another related attempt to distract the Court from the proper measure of restitution under California law, GSK argues that the People cannot pursue a "price inflation" theory of recovery—*i.e.*, by showing that purchasers paid a higher price for Avandia than they would have paid if the drug's true risks had been known—and seek the difference as their "damages." MTD at 19. In support, GSK wrongly cites *Akkerman v. Mecta Corp., Inc.*, 152 Cal.App.4th 1094, 1103 (Cal. App. 2007), for the proposition that there is "no presumption of class-wide restitution possible under the UCL because of the role that the prescribing physician play[s] in the case of each putative class member." MTD at 20 n.22. *Akkerman* was yet another decision on a class certification motion, not a decision on the merits, and the court held that for community of interest purposes it was appropriate to appropriate to consider plaintiffs' "damages." *Akkerman*, 152 Cal.App.4th at 1102. This simply is not the focus of a §17500 claim on the merits. GSK's reliance on *Heindel v. Pfizer, Inc.*, 381 F.Supp.2d 364 (D.N.J. 2004), too, is unavailing. The statute at issue in *Heindel* included an individualized reliance element, which §17500 does not. *Id.* at 384-85. In any event, the People have not offered any recovery model, so GSK's attempt to attack the "price inflation" theory it believes the People might offer down the road is entirely premature.

same deceptive tactics to promote other pharmaceutical products.  *See Toomey*, 157 Cal.App.3d at 20 (granting an injunction because, although defendant no longer sold the offending product, it continued to sell similar products and the wrongful conduct could recur).

The allegations in the complaint point to a well-developed, institutionalized culture of deceptive marketing and profit-driven science at GSK.  *See, e.g.*, FAC at ¶¶ 5, 69, 75.  Indeed, new facts about GSK's unlawful and deceptive conduct in promoting Avandia continue to surface almost daily.[24]  The People's requested injunctive relief will ensure that marketing ceases to play a guiding role in GSK's scientific research, while simultaneously providing the independent scientific community access to critical data about the safety and efficacy of GSK's drugs.  Accordingly, the requested injunction is a necessary remedy to prevent GSK's further violations of the FAL.  In any event, the propriety and terms of any injunction should be decided after the development of a factual record, and not at the 12(b)(6) stage.

## IV.   SEPARATELY, THE COUNTY HAS STATED A CLAIM FOR RELIEF IN ITS INDIVIDUAL CAPACITY AS A PURCHASER OF AVANDIA.

### A.  The County has standing to sue GSK in its individual capacity for its own injury.

#### 1.   The County is a "person" for purposes of §17500.

The FAL provides that "[a]s used in this chapter, 'person' includes *any* individual, partnership, firm, association, or *corporation*."  §17506 (emphasis added).  GSK argues that the County does not fit this definition, but in fact, the weight of California law is to the contrary.  The California Government Code provides that counties have "corporate powers," *see* Cal. Gov. Code §23000, and that they may "[s]ue and be sued" as corporate entities, except where

---

[24] Since the filing of the first amended complaint, the FDA convened a multi-day advisory panel (called "ADCOM").  At ADCOM, new information about GSK's RECORD study surfaced, making clear that GSK skewed and suppressed data and findings to produce the desired marketing message.  For example, the *New York Times* reported that "Dr. Thomas A. Marciniak of the FDA . . . said sick patients were dropped from the study instead [of] being allowed to tarnish Avandia.  'This is a great way to improve your mortality statistics, which everybody tells me can't be biased,' he said."  Gardner Harris, *FDA Panel Votes To Restrict Avandia*, N.Y. Times, July 14, 2010, available at http://prescriptions.blogs.nytimes.com/2010/07/14/blogging-the-f-d-a-panel-on-avandia/.

immunity applies. *Id.* §23004(a). The California Supreme Court has recognized that "[u]nless specifically limited by some other legislative provision, a county enjoys the same powers as any other corporate entity for seeking damages for injuries suffered." *Pacific Gas & Elec. Co. v. Stanislaus County*, 16 Cal.4th 1143, 1158-59 (Cal. 1997).

Accordingly, the California Supreme Court held in *Pacific Gas* that even though a state antitrust statute did not specifically name counties among the parties authorized to sue, counties' corporate status under California law gave them the right to bring an antitrust action on an equal footing with any other "person." *Id.* at 1157-59. *See also Magnuson-Hoyt v. County of Contra Costa*, 228 Cal.App.3d 139, 143 n.5 (Cal. App. 1991) (holding that the definition of "person" in the Code of Civil Procedure includes counties because of their "corporate character"). More generally, the California Supreme Court has explained that "governmental agencies are generally held subject to legislation that applies to any 'person,' so long as the legislation does not impair the government's sovereign powers." *People v. Crow*, 6 Cal.4th 952, 959 n.6 (Cal. 1993) (holding county agency was a "victim" under statute that defined "victim" as "a 'person who is the object of a crime'") (citations omitted); *accord Regents of Univ. of California v. Superior Court of Alameda County,* 17 Cal.3d 533, 536 (Cal. 1976).

Recognizing the County's right to sue as an individual Avandia purchaser in its capacity as the operator of a public hospital would not impair the County's sovereign powers. Rather, recognizing the County Counsel's authority to seek restitution for the County "merely places injured *government* consumers on an equal footing with *private consumers*," such as private hospitals and other third-party payors, who sustained similar injuries. *Pacific Gas*, 16 Cal.4th at 1157. The Supreme Court recognized in *Crow* that "[w]hen someone steals from a government agency, that agency, and the taxpayers who fund it, suffer a loss that is no less than the loss

suffered by an individual whose property has been stolen." *Crow*, 6 Cal.4th at 957 (citations omitted). The same is true when a purchaser buys a drug as a result of false or misleading advertising about that drug's safety and efficacy: Nothing in the FAL suggests that private hospitals or third party payors should be able to sue as injured individuals under § 17500, but that a county hospital or third party payor should not.

In arguing to the contrary, GSK leans heavily on the Northern District of California's decision in *County of Santa Clara v. Astra USA,* 428 F.Supp.2d 1029 (N.D. Cal. 2006). But, critically, *Astra* was concerned with the definition of "person" in the UCL, which is different from the definition of "person" in the FAL. *Compare* §17506 *with* §17201.[25] More importantly, *Astra* contains no discussion of counties' corporate status. Rather, the court's decision was based largely on legislative history peculiar to the UCL: Because "county counsel" are excluded from the list of entities that may bring enforcement actions on behalf of the People under §17200, the court took this as an indication that the Legislature did not intend counties to be able to sue under §17200 at all, even for their own individual injuries. *See Astra*, 428 F.Supp.2d at 1033. This reasoning is specious, but it is also completely inapplicable to the §17500 context, where county counsel *are* expressly authorized to bring governmental enforcement actions. §17535. *Astra* therefore has nothing useful to say about how this Court should interpret the FAL.[26] Nor does it collaterally estop the County's claim in this case. *Astra* concerned a

---

[25] Notably, §17506 uses the more general term "individual" rather than the narrow term "natural person," and it uses the inclusive "any" where §17201 does not. The fact that the Legislature chose to provide different definitions of "person" under the UCL and the FAL suggests that their definitions should be read differently. *See Romano v. Mercury Ins. Co.*, 128 Cal.App.4th 1333, 1343 (Cal. App. 2005). GSK contends that the definition of "person" at §17506 is narrower than that at § 17201 because there are fewer categories listed under §17506. MTD at 10-11. In fact, however, while § 17506 contains a smaller *number* of categories, the categories it does contain are broader, more general, and more inclusive than those listed at §17201.

[26] The only other case GSK cites is *Santa Monica Rent Control Bd. v. Bluvshtein*, 230 Cal.App.3d 308 (Cal. App. 1991) but it, too, is inapposite. Like *Astra*, *Bluvshtein* was concerned with the interpretation of §17201, not §17506. Moreover, the question in *Bluvshtein* was whether §17201's definition of "person" includes a city rent control board, an unincorporated governmental agency—not a county, which the Government Code specifically

different definition of "person" under a different statute, and collateral estoppel cannot apply

unless "the *identical* issue was previously adjudicated." *Howard Hess Dental Labs. Inc. v.*

*Dentsply Intern., Inc.*, 602 F.3d 237, 247-48 (3d Cir. 2010) (emphasis added).

> ### 2. Proposition 64 did not impose individualized injury and reliance requirements on suits by governmental entities like the County.

GSK further contends that, if the County is a "person" for purposes of §17535, the

County has failed to plead facts that would satisfy Proposition 64's actual reliance requirement.

*See* MTD at 13.  But §17535 expressly provides that "these limitations [imposed by Proposition

64] do not apply to claims brought under this chapter by . . . any . . . county counsel . . . ."

§17535.  Giving these words their "ordinary meaning," *People v. Rizo*, 22 Cal.4th 681, 685 (Cal.

2000), the statute provides that *any* claim brought by county counsel—whether for the County

individually or on behalf of the People—is not subject to Proposition 64's requirement that

private plaintiffs show actual reliance to establish standing.

Even if allegations of individualized loss and actual reliance *were* necessary to establish

the County's standing to sue on its own behalf, the allegations of the complaint would suffice.

As to the County's loss, the complaint alleges that the County purchased nearly 2 million dollars

worth of Avandia between 1999 and 2009.  FAC ¶ 33, 85.  And, as to reliance, the County

alleges an extensive campaign of nondisclosure of data and information and of affirmative

misstatements that distorted scientific analyses that provided the basis for everything from FDA

approval on down to third-party payors' formulary decisions.  *See* Section III(A), *supra*.  The

County's reliance also is apparent from its action to advise all employee and contract physicians

to reassess Avandia prescriptions in light of the Nissen study and FDA warning label.  *See* FAC

---

identifies as a corporate entity.  Notably, the same district of the Court of Appeal that decided *Bluvstein* in 1991 explained, eight years later, that *Bluvstein* was poorly reasoned and did not merit further application.  *See Notica v. State Comp. Ins. Fund,* 70 Cal.App.4th 911, 941-44 (Cal. App. 1999) (describing *Bluvshtein*'s "problematical" holding and declining to follow it, holding instead that a state agency was a "person" under §17201).

¶ 85.  In addition, the County alleges that physicians and third party payors were exposed to print advertisements, oral representations, warning labels, and other communications from GSK.  *See* FAC ¶ 33.[27]

The California Supreme Court in *Tobacco II* explained that if a misrepresentation is "material" from a reasonable purchaser's point of view, reliance is presumed:

> [A] presumption, or at least an inference, of reliance arises wherever there is a showing that a misrepresentation was material.  A misrepresentation is judged to be material if a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question, and as such materiality is generally a question of fact unless the fact misrepresented is so obviously unimportant that the jury could not reasonably find that a reasonable man would have been influenced by it.

*Tobacco II*, 46 Cal.4th at 327-28 (internal quotation marks, alterations, and citations omitted); *see also Weinstat v. Dentsply Intern., Inc*., 180 Cal.App.4th 1213, 1223 n.8 (Cal. App. 2010); *accord Morgan v. AT&T Wireless Services, Inc*., 177 Cal.App.4th 1235, 1258 (Cal. App. 2009). As discussed above, GSK's representations about Avandia's safety and efficacy would not be "obviously unimportant" to a reasonable purchaser's decision to pay for Avandia.  *See* Section III(A), *supra*.  The County's reliance on GSK's misrepresentations and nondisclosures is thus not amenable to resolution on a motion to dismiss.

---

[27] These allegations are sufficiently specific to satisfy the *Twombly/Iqbal* Rule 8 standard.  Rule 9(b)'s heightened pleading requirement applies to "*circumstances constituting fraud or mistake*."  Fed.R.Civ.P. 9(b) (emphasis added).  Facts necessary to establish a plaintiff's standing, but not necessary to establish a violation of the underlying law, are not "circumstances constituting" a violation of that law.  *Id.*  As such, Rule 9(b) does not require that they be pled with particularity.  For this reason, in other cases where standing requires a showing of different facts than are necessary to state a claim for relief under the statute, courts apply Rule 9(b)'s heightened pleading standard only to the latter set of facts.  *See Robbins v. Wilkie*, 300 F.3d 1208, 1211 (10th Cir. 2002) ("[A]t the pleading stage of civil RICO actions, a plaintiff must plead damages to business or property in a manner consistent with Rule 8 to show standing and is not required to plead with the particularity required by Rule 9(b).");  *accord Myrus Hack, LLC v. McDonald's Corp*., 2009 WL 872176, *9 (D.N.J. 2009) (unpub.); *Sai Broken Arrow C, LLC v. Guardian Emergency Vehicles, Inc*., 2009 WL 3151343, *6 (N.D. Okla. 2009) (unpub.).  To the extent *Kearns* and *Actimmune II* suggest otherwise, they are incorrect and should not be followed by this Court.  *Kearns* overlooks the distinction between allegations that must be pled for standing purposes and allegations that must be pled for purposes of stating a claim under the substantive law, applying Rule 9(b) to both indiscriminately, and *Actimmune* was bound to follow the Ninth Circuit's precedent.  This Court, in contrast, need not.

34

### B. The County's complaint contains sufficient allegations to state an individual claim against GSK for its violations of § 17500.

The County's allegations establishing that GSK violated §17500—i.e., that GSK made misrepresentations and nondisclosures that it knew or should have known were false or misleading, and that these misrepresentations and nondisclosures were likely to deceive California purchasers—have been discussed in detail above, *see* Section III(A). As explained in Section III(B), Rule 9(B) does not apply—but even if it does, the County's allegations are sufficient to satisfy that heightened pleading standard.

GSK urges that the County must allege which advertisements its physicians and Pharmacy employees saw and when. But because GSK's misrepresentations and nondisclosures were made in the context of a decade-long marketing campaign, the County need not allege that specific advertisements were seen or heard by specific people. *See Tobacco II,* 46 Cal.4th at 326; *see also Morgan*, 177 Cal.App.4th at 1258 (holding class action plaintiffs "were not required . . . to plead the specific advertisements or representations they relied upon in making their decisions to purchase the [product]," because "the advertising campaign . . . is alleged to have taken place over many months," conveying a "consistent[]" message).

For the foregoing reasons, the County has stated a claim for relief under §17500 in its capacity as an individual purchaser. Therefore, for the same reasons described in Section III(C)(2), *supra*, the County is entitled to restitution for its Avandia purchases, as well as the requested injunctive relief to prevent GSK's ongoing and future violations.[28]

---

[28] The County recognizes that its prayer to recover the money it spent treating patients who were harmed by Avandia is essentially a prayer for consequential damages, and not for restitution. The County therefore withdraws its request for the recovery of the extra treatment costs caused by Avandia, and asks the Court to strike the following clause in paragraph 14 of the complaint: ". . . and restitution of all money for hospital and medical care and treatment provided to Avandia users who suffered heart attacks, strokes, and/or sudden cardiac death, whether expended by California Avandia users, their insurers, public health care providers, or government payors, including the COUNTY OF SANTA CLARA individually and on behalf of the People of the State of California . . . ."

35

## V.   THE COURT SHOULD GRANT THE COUNTY LEAVE TO FILE AN AMENDED COMPLAINT TO CURE ANY DEFICIENCIES.

If the Court finds the allegations in the complaint are not sufficient to state a claim, the People of California and the County respectfully request leave to amend.  Generally, a "court should freely give leave when justice so requires." Fed.R.Civ.P. 15(a)(2).  The County believes it has stated its allegations with sufficient particularity, but, should the Court disagree, justice will best be served by granting leave to amend to include any additional facts necessary to vindicate its own rights and the rights of the People of California.  Although the complaint has been amended once, that amendment was to add an additional prayer for injunctive relief, not to insert new factual allegations or to cure any deficiency in the pleadings.  Contrary to GSK's assertion, *see* MTD at 29, any defects in the pleading would likely be cured by the inclusion of additional supporting facts.  If the complaint is found deficient in any respect, the County respectfully requests leave to amend.

## VI.   CONCLUSION

For the forgoing reasons, GSK's motion should be denied in its entirety.  Should the Court find any deficiency in the pleadings, however, the County respectfully requests leave to amend its complaint to cure such deficiencies.

Date:   August 13, 2010                    Respectfully submitted,


                                          */s/ Paul R. Kiesel*
                                          Miguel Márquez (CA Bar No. 184621)
                                          County Counsel
                                          Tamara Lange (CA Bar No.177949)
                                          Lead Deputy County Counsel
                                          Katherine Desormeau (CA Bar No. 266463)
                                          Impact Litigation Fellow
                                          OFFICE OF THE COUNTY COUNSEL
                                          COUNTY OF SANTA CLARA

70 West Hedding St., East Wing, 9th Fl.
San Jose, CA 95110
(408) 299-5900

Paul R. Kiesel, Esq. (CA Bar No. 119854)
Steven D. Archer, Esq. (CA Bar No. 63834)
KIESEL BOUCHER & LARSON, LLP
8648 Wilshire Boulevard
Beverly Hills, CA 90211
(310) 854-4444

G. Erick Rosemond (CA Bar No. 226389)
THE ROSEMOND LAW GROUP, P.C.
8441 Gulf Freeway, Suite 200
Houston, TX 77017
(713) 412-8744

John Boundas (TX Bar No. 00793367)
Harry G. Potter III (TX Bar No. 16175300)
WILLIAM KHERKHER HART
BOUNDAS LLP
8441 Gulf Freeway, Suite 600
Houston, TX 77017-5051
(713) 230-2200

**Attorneys for Plaintiff COUNTY OF
SANTA CLARA, individually and on
behalf of the People of the State of
California**

## CERTIFICATE OF SERVICE

I , Julissa E. Salgueiro, hereby certify that on this 13th day of August 2010, I did cause to

have the foregoing **PLAINTIFF'S OPPOSITION TO DEFENDANT GLAXOSMITHKLINE,**

**L.L.C.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**, served by

ECF electronic notification upon the following:

> Nina M. Gussack, Esq.
> Anthony Vale, Esq.
> Yvonne M. McKenzie, Esq.
> Hedya Aryani, Esq.
> PEPPER HAMILTON LLP
> 3000 Two Logan Square
> 10[th] & Archs Streets
> Philadelphia, PA 19103
> (215) 981-4000

> Donald F. Zimmer, Jr.
> KING & SPALDING LLP
> 101 Second Street, Suite 2300
> San Francisco, CA 94105
> (415) 318-1200

**Attorneys for Defendant GlaxoSmithKline LLC**

Julissa E. Salgueiro

1