U.S. DISTRICT COURT
Eastern District of Louisiana
FILED DEC 6 - 2011
LORETTA G. WHYTE
Clerk

RECEIVED
DEC 6 2011
CHAMBERS OF
U.S. DISTRICT JUDGE
ELDON E. FALLON

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| VIRGINIA G PICKETT | * | UNITED STATES DISTRICT COURT |
| PLAINTIFF vs | * | MDL 1657 |
| MERCK, SHARPE & DOHME, CORP., FORMERLY KNOWN AS MERCK & CO. | * | CASE NUMBER: 2:10-CV-43 |
| DEFENDANT | * | JUDGE ELDON FALLON MAGISTRATE JUDGE KNOWLES |

\* \* \* \* \* \* \* \* \* \* \* \*

PLAINTIFF'S ADDENDUM TO ORIGINAL COMPLAINT

Now Comes Virginia G Pickett, pro se plaintiff, and respectfully request this Honorable Court to amend and modify the original complaint in the above-captioned matter and ask that all the information and facts from the original pleading be incorporated into this amended complaint and states as follows:

1. That, since the filing of the original pleading in this matter, Virginia G. Pickett, plaintiff, has continuously suffered and has been caused to suffer the following conditions, physical pain and suffering, diseases, symptoms, emotional pain and suffering, psychological pain and suffering, physical, emotional and psychological damage as the result of ingesting Vioxx for a period of time beginning in 1999 and continuing through 2002 and again briefly in January, 2004.

2. Upon information and belief, defendant Merck did not perform proper

___ Fee _____
___ Process _____
_X_ Dktd _____
_X_ CtRmDep _____
___ Doc. No. _____

testing on its product Vioxx and, through an alleged ghost writer, submitted erroneous findings to the FDA for a fast-track drug approval, while withholding their own researcher's concerns of the increased risks of cardiac events and strokes. It is my belief that Merck disregarded concerns for public safety.

3. Upon information and belief, defendant Merck engaged in intentional efforts through its representatives, agents and employees to hide and withhold risks of cardiovascular events, including but not limited to heart attack and stroke.

4. It is my belief, based on the information that has come forward through representatives, employees and prescribing medical facilities, that Merck was deceptive in the manufacturing, marketing, and distribution of the drug Vioxx.

5. It is my belief, and publicly known, that Merck provided sales representatives with sales material in a manual that did not state the known risks of increased heart attack and stroke and, in fact, contained instructions on how to divert their client's attention away from their questions and concerns about the increased risk of heart attack and stroke and used deceptive language in order to promote and increase sales.

6. Corrine Kaplan, a Vioxx sales representative hired and employed by Merck, was interviewed after appearing on a television show, and stated that *"Selling drugs is a lie. ... I sold Vioxx for Merck before it got taken off the market for killing people. I knew damn well it was dangerous; I went*

*around telling them to write it."*

7. That Corrine Kaplan, Vioxx sales representative, is also quoted as saying, *"I have no moral compass. ... Selling drugs is a lie. I sold drugs that I knew damn well -- I sold Vioxx for Merck before it got taken off the market for killing people."*

8. That the injured plaintiff, Virginia G. Pickett, ingested Vioxx initially pursuant to a prescription written by her physician in accordance with the manufacturer's instructions.

9. That the injured plaintiff, Virginia G. Pickett, continued with the ingestion of Vioxx samples from December, 1999, until September, 2002, and resumed ingestion in January, 2004. Samples were provided by a physician and family acquaintance, Dr. Donald Russ for a period of forty-nine months.

10. That on September 4, 2002, plaintiff presented at the Medical University of South Carolina and was hospitalized with a cardiac event known as myocardial infarction.

11. That on July 16, 2007, plaintiff was admitted to St. Joseph's Medical Center having suffered another cardiac event requiring multiple cardiac stenting.

12. That on January 2, 2008, plaintiff again presented to the St. Joseph's Medical Center having suffered a third cardiac event, requiring another cardiac stent with a current total of no less than seven cardiac stents.

13. That since the onset of her initial myocardial infarction, and the subsequent cardiac events, plaintiff's state of health has deteriorated and she no longer has the physical capabilities to perform daily tasks that require physical exertion in any way.

14. That in June, 2009, plaintiff experienced her first of many subsequent "spells" of dizziness, vertigo, temporary loss of vision, headache and nausea. These episodes continued for the next eleven months and began occuring more frequently throughout that time. Although self medicating with aspirin and Plavix, it was becoming increasingly harder for the plaintiff to control her symptoms.

15. That on May 20, 2010, plaintiff, was presented to St. Joseph's Medical Center Emergency Services with extreme dizziness, shortness of breath, unable to balance and stand, blurred vision, confusion and strange cranial sensations.

16. That on May 20, 2010, Virginia G Pickett, plaintiff, was admitted to the St. Joseph's Medical Center and treated for serious neurological symptoms indicative of transient-ischemic stroke. Plaintiff's additional allegations of TIAs are consistent with the original causation factors associated with Vioxx usage and the increased risk of myocardial infarction, as per the original complaint filed in this matter.

17. That on May 22, 2010, Virginia G Pickett, plaintiff, having been stabilized for suspected pneumonia and transient-ischemic stroke was released from St. Joseph's Medical Center with discharge instructions for follow-up with a neurologist, primary care physician, cardiologist and a written request to schedule diagnostic tests. Plaintiff was unable to have the necessary tests and appointments were not made because of the lack of medical insurance.

18. That on May 24, 2010, Virginia G. Pickett, plaintiff, returned to St. Joseph's

Medical Center Emergency Services and presented again, with blurred vision, headache, vertigo and confusion. She was stabilized and released to follow-up again with a neurologist, primary care physician, cardiologist and written instructions for diagnostic tests to be scheduled and performed.

19. That on May 26, 2010, Virginia G. Pickett, plaintiff, was examined by Dr. Kathleen York-Jordan, primary care physician at the Seton Medical Center and was diagnosed with transient ischemic strokes, scheduled for out-patient diagnostic tests and told to avoid stress and to return for follow-up after neurological tests were performed.

20. That on June 2, 2010, Virginia G Pickett, plaintiff, returned to Dr. Shilprey Ahmed's office at Mid-Atlantic Cardio Vascular, where she was examined and, again, referred for diagnostic testing. The plaintiff, once again, was unable to schedule the diagnostic tests for lack of medical insurance.

21. That, since the initial onset of blurred vision, extreme vertigo, confusion, stress, inability to stand, and the fear of sudden death, plaintiff has continued with neurological symptoms along with shortness of breath and remains on a Plavix and aspirin regimen and, because of her limited abilities, is unable to perform normal daily activities. Plaintiff continues with her symptoms daily causing her continued physical pain and suffering, emotional pain and suffering, psychological pain and suffering, emotional, physical and psychological damage as the result of ingesting Vioxx.

**Whereas** the plaintiff suffered with multiple cardiac events that required multiple cardiac stenting, plaintiff has, in addition, suffered with many TIAs consistent with

symptoms in which the "settlement" has agreed to provide restitution. As per the original allegation of myocardial infarction, Merck has known, or should have known, that Vioxx is a major factor in causation of the additional events described above. At a very minimum, there is a reasonable degree of medical probability that does exist for these additional allegations.

**Wherefore**, it is respectfully requested that damages in the amount of $70,000,000.00 be awarded to the plaintiff.

*Virginia G Pickett*
Virginia G Pickett

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Addendum to Original Complaint is case specific to the above case and has been served upon Liaison Counsels, Phillip A. Wittmann, Russ Herman and Ann B. Oldfather, by U.S. mail and email and upon all parties and that the aforementioned was filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana on this 2nd day of December, 2011.

*Virginia G Pickett*
Virginia G Pickett
Pro Se Plaintiff
519 B Lake Vista Circle
Cockeysville, MD 21030
Telephone: (843)530-4872

Email: aoldfather@oldfather.com
Oldfather Law Firm
Ann B Oldfather
1330 South Third Street
Louisville, KY 40208
Plaintiff's Liaison Counsel

Email: rherman@khkc.com
Russ M. Herman
Herman, Herman, Katz & Cotlar, LLP
820 O'Keefe Avenue
New Orleans, LA 70113

Email: pwittmann@stonepigman.com
Phillip A. Wittmann
Stone Pigman Walther Wittmann, L.L.C
546 Carondolet Street
New Orleans, LA  70130-3588

STATE OF LOUISIANA
IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| VIRGINIA G PICKETT<br>PLAINTIFF | * | UNITED STATES DISTRICT COURT |
| vs | * | MDL 1657 |
| MERCK, SHARPE & DOHME, CORP.,<br>FORMERLY KNOWN AS MERCK & CO. | * | CASE NUMBER: 2:10-CV-43 |
| DEFENDANT | * | JUDGE ELDON FALLON<br>MAGISTRATE JUDGE KNOWLES |

\* \* \* \* \* \* \* \* \* \* \* \*

## JURY DEMAND

The plaintiff in the above entitled cause demands a jury for the trial of said cause.

*Virginia G. Pickett*
Virginia G. Pickett
Pro Se Plaintiff
519 B Lake Vista Circle
Cockeysville, MD 21030
Telephone: (843)530-4872

CC:

Email: aoldfather@oldfather.com
Oldfather Law Firm
Ann B Oldfather
1330 South Third Street
Louisville, KY 40208
Plaintiff's Liaison Counsel

Email: rherman@khkc.com
Russ M. Herman
Herman, Herman, Katz & Cotlar, LLP
820 O'Keefe Avenue
New Orleans, LA 70113

Email: pwittmann@stonepigman.com
Phillip A. Wittmann
Stone Pigman Walther Wittmann, L.L.C
546 Carondolet Street
New Orleans, LA  70130-3588