**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

|                                        |   |                       |
|----------------------------------------|---|-----------------------|
|                                        | : | **MDL NO. 1657**      |
| **IN RE: VIOXX**                       | : |                       |
| **PRODUCTS LIABILITY LITIGATION**      | : | **SECTION:  L**       |
|                                        | : |                       |
|                                        | : | **JUDGE FALLON**      |
|                                        | : | **MAG. JUDGE KNOWLES**|

.. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. :

**THIS DOCUMENT RELATES TO: CASE NO. 10-1115**

<u>**ORDER & REASONS**</u>

Currently pending before the Court is the Commonwealth of Kentucky's Motion to

Remand (Rec. Doc. 63194).  The Court has reviewed the briefs and the applicable law and heard

oral argument on the motion and is now prepared to rule.

**I.      FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

To put this matter in perspective, a brief review of this litigation is appropriate.  This

multidistrict products liability litigation involves the prescription drug Vioxx, known generically

as Rofecoxib.  Merck, a New Jersey corporation, researched, designed, manufactured, marketed

and distributed Vioxx to relieve pain and inflammation resulting from osteoarthritis, rheumatoid

arthritis, menstrual pain, and migraine headaches.  On May 20, 1999, the Food and Drug

Administration approved Vioxx for sale in the United States.  Vioxx remained publicly available

until September 20, 2004, when Merck withdrew it from the market after data from a clinical

trial known as APPROVe indicated that the use of Vioxx increased the risk of cardiovascular

thrombotic events such as myocardial infarction (heart attack) and ischemic stroke. Thereafter, thousands of individual suits and numerous class actions were filed against Merck in state and federal courts throughout the country alleging various products liability, tort, fraud, and warranty claims. It is estimated that 105 million prescriptions for Vioxx were written in the United States between May 20, 1999 and September 30, 2004. Based on this estimate, it is thought that approximately 20 million patients have taken Vioxx in the United States.[1]

California was the first state to institute a consolidated state court proceeding on October 30, 2002. New Jersey and Texas soon followed suit, on May 20, 2003 and September 6, 2005, respectively. On February 16, 2005, the Judicial Panel on Multidistrict Litigation ("MDL") conferred MDL status on Vioxx lawsuits filed in various federal courts throughout the country and transferred all such cases to this Court to coordinate discovery and to consolidate pretrial matters pursuant to 28 U.S.C. § 1407. *See In re Vioxx Prods. Liab. Litig.*, 360 F. Supp. 2d 1352 (J.P.M.L. 2005). Additionally, a number of state and local governments filed suits against Merck seeking to recover amounts paid for Vioxx prescriptions on behalf of their citizens or civil penalties pursuant to state consumer protection statutes.

The Commonwealth of Kentucky, through Attorney General Jack Conway, filed one such action against Merck in the Circuit Court of Franklin County, Kentucky on September 28, 2009. Merck removed the case to the United States District Court for the Eastern District of Kentucky, asserting federal question jurisdiction under 28 U.S.C. § 1331 and diversity jurisdiction pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). The case was transferred to this Court by the JPML on April 15, 2010.

---

[1]For a more detailed factual background describing the events that took place before the inception of this multidistrict litigation, see *In re Vioxx Prods. Liab. Litig.*, 401 F. Supp. 2d 565 (E.D. La. 2005) (resolving *Daubert* challenges to a number of expert witnesses).

On June 29, 2010, the Court issued Pretrial Order 39A and set a schedule for coordinated discovery in the pending Governmental actions, including Kentucky's suit. The Court stayed discovery in the governmental cases on November 22, 2010 so that the parties could explore global resolution of the governmental actions. During the stay, counsel for the Commonwealth of Kentucky raised the issue of a briefing schedule on a motion to remand or transfer its case to Kentucky state court. At a status conference on August 4, 2011, the Court set a briefing schedule.

## II.      PRESENT MOTION

Kentucky has filed a motion to remand the case to Kentucky state court for lack of subject matter jurisdiction. With respect to diversity jurisdiction, the Commonwealth contends that the case is not a class action for the purposes of CAFA and that minimal diversity is lacking because Kentucky, the only named plaintiff, is not a citizen of itself. With respect to federal question jurisdiction, it argues that no federal question appears on the face of the complaint.

Merck opposes remand. It argues the case is functionally a class action for the purposes of CAFA jurisdiction and that the citizens of Kentucky supply the requisite diverse citizenship because they are the real parties in interest to some of the relief sought in the Complaint. Merck also argues that the Court has federal question jurisdiction over the case because the complaint implicates federal pharmaceutical laws and regulations.

## II.      LAW AND ANALYSIS

### A.      Standard on Motions to Remand

As the removing party, Merck has the burden of establishing federal jurisdiction. *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). Removal jurisdiction "raises significant federalism concerns" and is strictly construed. *Willy v. Coastal Corp.*, 855 F.2d

1160, 1164 (5th Cir. 1988). Doubts regarding jurisdiction should be resolved against exercising jurisdiction. *Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 339 (5th Cir. 2000).

The parties dispute whether the Court has either federal question jurisdiction pursuant to 28 U.S.C. § 1331 or diversity jurisdiction pursuant to 28 U.S.C. § 1332(d). In addressing a motion to remand for lack of federal question jurisdiction, the Court applies the "well-pleaded complaint" rule and searches for a federal question presented on the face of the complaint." *PCI Transp., Inc. v. Forth Worth & W. R.R. Co.*, 418 F.3d 535, 543 (5th Cir. 2005).[2] Likewise, the Court looks to the claims in the state court complaint at the time of removal to assess diversity jurisdiction. *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002).

First, the Court will first set forth the allegations in the Commonwealth's complaint which frame the jurisdictional arguments. Then, the Court will discuss why there is no diversity jurisdiction because this case is not a class action within the meaning of CAFA. Finally, the Court will discuss why no federal question appears on the face of the complaint.

---

[2]The parties dispute the extent to which the Court can look beyond the face of Kentucky's complaint to assess jurisdiction. "It is well-established that in determining whether there is jurisdiction, federal courts look to the substance of the action and not only at the labels that the parties may attach." *Louisiana ex rel. Caldwell v. Allstate Ins. Co.*, 536 F.3d 418, 424 (5th Cir. 2008). The Fifth Circuit "has recognized that 'defendants may pierce the pleadings to show that the ... claim has been fraudulently pleaded to prevent removal.'" *Id.* at 424-25 (quoting *Burchett v. Cargill, Inc.*, 48 F.3d 173, 175 (5th Cir. 1995)).

In *Caldwell*, the district court found it appropriate "to look to the substance of the complaint–to pierce the pleadings–and to determine the real nature of the claim asserted." 536 F.3d at 423. The Fifth Circuit stated that it "review[s] a district court's decision to pierce the pleadings as well as the procedure for doing so for abuse of discretion," but found the issue waived because the Defendants did not object at the district court level. *Id.* at 425.

Kentucky argues that Merck has not given the Court a reason to pierce the pleadings and look past the plain language of the complaint, which on its face is a claim only by the Commonwealth of Kentucky against Merck pursuant to Kentucky law. As will be explained below, the Court need not pierce the pleadings to determine that the case cannot be a "class action" governed by CAFA. However, with respect to whether any citizen of Kentucky is a real party in interest to the suit, even if the Court were to pierce the pleadings, remand would be required.

**B.       The Commonwealth of Kentucky's Complaint**

The jurisdictional issues are framed by the allegations in Kentucky's complaint.  The

complaint alleges a single count pursuant to the Kentucky Consumer Protection Act ("KCPA").

The KCPA announces that it is "a strong and effective consumer protection program to protect

the public interest and the well-being of both the consumer public and the ethical sellers of goods

and services."  Ky. Rev. Stat. Ann. § 367.120.  Thus, the Act prohibits "[u]nfair, false,

misleading, or deceptive acts or practices in the conduct of any trade or commerce."  *Id.* §

367.170.

Section 367.170 of the KCPA can be enforced in two ways.  First, § 367.190 creates a

cause of action for the Kentucky Attorney General.  The Kentucky Attorney General may file

suit and seek a temporary or permanent injunction against an unlawful practice:

> (1) Whenever the Attorney General has reason to believe that any person is using,
> has used, or is about to use any method, act or practice declared by KRS 367.170
> to be unlawful, and that proceedings would be in the public interest, he may
> immediately move in the name of the Commonwealth in a Circuit Court for a
> restraining order or temporary or permanent injunction to prohibit the use of such
> method, act or practice. ...

*Id.* § 367.190(1).  The Attorney General also has a right to recover civil penalties for willful

violations of the KCPA:

> (2) In any action brought under KRS 367.190, if the court finds that a person is
> willfully using or has willfully used a method, act, or practice declared unlawful
> by KRS 367.170, the Attorney General, upon petition to the court, may recover,
> on behalf of the Commonwealth, a civil penalty of not more than two thousand
> dollars ($2,000) per violation, or where the defendant's conduct is directed at a
> person aged sixty (60) or older, a civil penalty of not more than ten thousand
> dollars ($10,000) per violation, if the trier of fact determines that the defendant
> knew or should have known that the person aged sixty (60) or older is
> substantially more vulnerable than other members of the public.

*Id.* § 367.990(2).  Thus, the KCPA expressly grants to the Attorney General the right to seek

injunctive relief and civil penalties.  The statute does not require the joinder of any Kentucky

citizens as named or unnamed plaintiffs.  The KCPA does not provide an express basis for

pursuing declaratory relief that a defendant has violated the Act; however, a generic civil

procedure statute allows a plaintiff to seek a declaratory judgment.  *Id.* § 418.040.

Second, § 367.220 of the KCPA creates a private right of action for a Kentucky citizen to

pursue actual damages and attorney's fees and costs, and possibly some forms of equitable relief

for violations of the KCPA:

> (1) Any person who purchases or leases goods or services primarily for personal,
> family or household purposes and thereby suffers any ascertainable loss of money
> or property ... as a result of the use or employment by another person of a method,
> act or practice declared unlawful by KRS 367.170, may bring an action ... to
> recover **actual damages**.  The court may, in its discretion, award actual damages
> and may provide **such equitable relief as it deems necessary or proper**.
> Nothing in this subsection shall be construed to limit a person's right to seek
> punitive damages where appropriate.
> (2) Upon commencement of any action brought under subsection (1) of this
> section, the clerk of the court shall mail a copy of the complaint or other initial
> pleading to the Attorney General and, upon entry of any judgment or decree in the
> action, shall mail a copy of such judgment or decree to the Attorney General.
> (3) In any action brought by a person under this section, the court may award, to
> the prevailing party, in addition to the relief provided in this section, **reasonable
> attorney's fees** and costs.
> (4) Any permanent injunction, judgment or order of the court made under KRS
> 367.190 shall be prima facie evidence in an action brought under this section that
> the respondent used or employed a method, act or practice declared unlawful by
> KRS 367.170.
> (5) Any person bringing an action under this section must bring such action
> within one (1) year after any action of the Attorney General has been terminated
> or within two (2) years after the violation of KRS 367.170, whichever is later.

*Id.* § 367.220 (emphasis added).

Pursuant to a separate generic statute, any Kentucky plaintiff may seek declaratory relief.

*Id.* § 418.040.  Thus, the KCPA allows a private citizen to obtain actual damages, appropriate

equitable relief, and attorneys' fees.  Additionally, a permanent injunction obtained in a prior suit

by the Kentucky Attorney General is prima facie evidence in a subsequent citizen suit.

The Complaint alleges a single count pursuant to § 367.190, the attorney-general cause of action.  According to the complaint, Merck marketed and sold Vioxx despite its knowledge of the drug's cardiac risks, and "engaged in representations and omissions which are material, and which have the tendency or capacity, or which are likely, to mislead prescribers, purchasers and recipients of Vioxx."  (Complt., ¶ 33).  On the basis of that violative conduct, Kentucky seeks the following relief: "entry of a judgment against the Defendant, Merck, finding that it committed repeated violations of KRS 367.170"; "an Order permanently enjoining Merck from further acts in violation of KRS 367.170"; "an award of civil penalties in the amount of two thousand dollars ($2,000) for each violation of KRS 367.170, and ten thousand dollars ($10,000) for each violation targeted to consumers over the age of 65, pursuant to KRS 367.990"; and "an award [of] reasonable attorney's fees and costs to Plaintiff."  (Complt. ¶ 34).

## C.    Diversity Jurisdiction Under the Class Action Fairness Act

Under CAFA, federal district courts have diversity jurisdiction over a civil action "in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and which is a class action in which ... any member of a class of plaintiffs is a citizen of a State different from any defendant" and the class has at least 100 members.  28 U.S.C. § 1332(d)(2), (d)(5).  If there is minimal diversity, a class of 100 members or more, and more than $5,000,000 in controversy, a class action filed in state court is properly removable.  The party removing to federal court has the burden of establishing jurisdiction under CAFA.  *Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc.*, 485 F.3d 793, 797 (5th Cir. 2007).

The parties dispute two of those jurisdictional elements: whether the Kentucky lawsuit is a "class action" and whether there is minimal diversity of citizenship.

**1)      Is the Kentucky Suit a "Class Action" Removable Under CAFA?**

Courts are beginning to address the interaction between CAFA and *parens patriae* lawsuits brought by state Attorneys General.  The doctrine of *parens patriae* is broad, but it encompasses a sovereign state's right to enforce its sovereign or quasi-sovereign interests in court, as opposed to its proprietary interests or the interest of individual private citizens.  *See Louisiana ex rel. Caldwell v. Allstate Insurance Co.*, 536 F.3d at 425-27.  *Parens patriae* authority may exist as a common law right to enforce some law, or it may be expressly granted through state statutory law.  *See* Dwight D. Carswell, Comment, *CAFA and* Parens Patriae *Actions*, 78 U. Chi. L. Rev. 345, 347-48 (2011).  The parties agree that the KCPA right of action granted to the Kentucky Attorney General is a *parens patriae*-type claim.

CAFA only permits removal from state court if a case is a class action.  28 U.S.C. § 1332(d)(1); 28 U.S.C. § 1453.  The statute defines a "class action" as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action."  28 U.S.C. § 1332(d)(1)(B).

The issue is whether CAFA's definition of "class action" is broad enough to include a *parens patriae* suit such as this one.  The Fifth Circuit has alluded to this issue, although the parties dispute the extent to which it provided an answer or at least guidance.  In *Louisiana ex rel. Caldwell v. Allstate Insurance Co.*, the Louisiana Attorney General filed a *parens patriae* suit against a variety of insurers alleging violations of the state Monopolies Act seeking treble damages on behalf of policyholders as well as injunctive relief.  *See* 536 F.3d at 422-23.  The defendants removed on the basis of CAFA jurisdiction and argued "that although labeled *parens patriae*, this case is in substance and fact a 'class action' *or* a 'mass action' as those terms are

used in CAFA."  *Id.* at 423 (emphasis added).  The district court denied a motion to remand and

the Fifth Circuit affirmed.  The Circuit concluded that because damages on behalf of

policyholders were sought, the policyholders were real parties in interest as to that relief.  *See id.*

at 429-30.[3]  Because the policyholders were real parties in interest as to some of the relief, the

case satisfied the requirements for a  "mass action" under CAFA.  *See id.* at 430 (citing 28

U.S.C. § 1332(d)(11)(B)(i)).[4]

Thus, the Fifth Circuit's precise holding in *Caldwell* is limited to the CAFA definition of

mass actions, not class actions.  The court expressly declined to decide whether the *parens*

*patriae* lawsuit could also proceed as a class action on remand:

---

[3]The Fifth Circuit's reasoning on this point will be discussed in greater detail below.

[4]CAFA applies to "mass actions":
(A)    For purposes of this subsection and section 1453 [governing removal of
       class actions] a mass action shall be deemed to be a class action removable
       under paragraphs (2) through (10) if it otherwise meets the provisions of
       those paragraphs.
(B)    (i) As used in subparagraph (A), the term "mass action" means any civil
       action (except a civil action within the scope of section 1711(2) [which
       defines class actions]) in which monetary relief claims of 100 or more
       persons are proposed to be tried jointly on the ground that the plaintiffs'
       claims involve common questions of law or fact, except that jurisdiction
       shall exist only over those plaintiffs whose claims in a mass action satisfy
       the jurisdictional amount requirements under subsection (a).
...
(C)    Any action(s) removed to Federal court pursuant to this subsection shall
       not thereafter be transferred to any other court pursuant to section 1407, or
       the rules promulgated thereunder, unless a majority of the plaintiffs in the
       action request transfer pursuant to section 1407.

28 U.S.C. § 1332(d)(11).  "Mass actions" do not include "any civil action in which ... all of the
claims in the action are asserted on behalf of the general public (and not on behalf of individual
claimants or members of a purported class) pursuant to a State statute specifically authorizing
such action."  28 U.S.C. § 1332(d)(11)(B)(ii)(I).  Both class actions and mass actions are
removable pursuant to CAFA, but a mass action may not be transferred to an MDL without
consent of the parties.  Merck removed this case as a "class action," not a "mass action," and
does not now take the position that the case is a "mass action."

> Since we have concluded that this case was properly removed under CAFA's "mass action" provision, we need not address whether this lawsuit could, following further proceedings on remand, properly proceed as a class action under CAFA.

*Id.* Essentially, the Fifth Circuit looked past the *parens patriae* label on the suit, concluded that individual Louisiana insurance policyholders were being represented and should be added to the suit, and that their inclusion would make the case a removable "mass action." *See id.* at 429-30 ("We leave to the district judge's capable hands the manner by which the individual policyholders are to be added to this action."). But strictly speaking, the Fifth Circuit did not address the breadth of the definition of "class action" for the purposes of CAFA removal.[5]

On the other hand, the Fourth, Seventh, and Ninth Circuit Courts of Appeal have expressly held that *parens patriae* suits brought by state Attorneys General are not "class actions" removable under CAFA. *Washington v. Chimei Innolux Corp.*, 659 F.3d 842 (9th Cir. 2011); *West Virginia ex rel. McGraw v. CVS Pharmacy, Inc.*, 646 F.3d 169 (4th Cir. 2011), *cert. denied*, — S. Ct. — (2011); *LG Display Co., Ltd. v. Madigan*, — F.3d —, 2011 WL 5829918

---

[5]*Caldwell* was a split decision on this point. *Id.* at 432 (Southwick, J., dissenting). Although not concerned with whether the case was expressly labeled as a "class action," the dissent nonetheless concluded that, as pleaded, it was not filed under the requisite type of rule or statute required by CAFA:

> The definitive aspect of CAFA-removable "class action" is a statute or rule of procedure that authorizes a representative action as a class action, that is, a state equivalent of Rule 23. The Louisiana Monopolies Act appears to be no such statute. Nowhere does the Act authorize a representative action. To be sure, the Act empowers the Attorney General to enforce its provisions. But this provision does not cast the Attorney General in the role of a Rule 23 class representative every time he seeks to enforce the Act. Further, the Attorney General has neither joined additional parties nor invoked Louisiana class-action procedures. CAFA's 'class action' provision is not meant to confer federal jurisdiction any time the removing party asserts that the plaintiff must act in a representative capacity."

*Id.* at 434-35 (Southwick, J., dissenting) (citation omitted); *see also* Alexander Lemann, Note, *Sheep in Wolves' Clothing: Removing* Parens Patriae *Suits Under the Class Action Fairness Act*, 111 Colum. L. Rev. 121 (2011).

(7th Cir. Nov. 18, 2011).

In *CVS Pharmacy*, the West Virginia Attorney General filed suit against five pharmacies for violating the West Virginia Consumer Credit Protection Act and state pharmacy regulations, pursuant to state statutes expressly authorizing enforcement actions. *See* 646 F.3d at 171. The defendants removed and the district court remanded, concluding that the case was not filed under a state statute similar to Rule 23 and therefore was not a class action removable under CAFA. *Id.* On appeal, the Fourth Circuit considered the question to be a matter of "straightforward statutory analysis of CAFA." *Id.* at 174. The court analyzed the "essence" of Rule 23 and concluded that to be "like Rule 23 in substance or in essentials," a state statute must include criteria for numerosity, commonality, typicality, and adequacy of representation and:

> at a minimum, provide a procedure by which a member of a class whose claim is typical of all members of the class can bring an action not only on his own behalf, but also on behalf of all others in the class, such that it would not be unfair to bind all class members to the judgment entered for or against the representative party.

*See id.* at 174-75. The West Virginia Attorney General suit was filed under statutes that contained no numerosity, commonality, typicality, or adequacy of representation criteria and permitted the Attorney General to file suit as representative of the State and not as a member of a class of plaintiffs with a typical claim. *See id.* at 175-77. Therefore, the suit was not filed under a state Rule-23 analogue and was not a class action subject to CAFA.[6]

The Ninth Circuit recently reached the same conclusion. In *Washington v. Chimei*

---

[6]*CVS Pharmacy* was a split decision. *See id.* at 179 (Gilman, J., dissenting). The dissent opined that the "essence of the action" was that of a class action because the Attorney General was representing the interests of a large group. *See id.* at 179-80 (Gilman, J., dissenting). The dissent concluded that "the elements of numerosity, commonality, typicality, and adequacy of representation" were "'bells and whistles' whose absence in the pleadings do not prevent the Attorney General's suit from being considered a class action under CAFA." *Id.* at 179 (Gilman, J., dissenting).

*Innolux Corp.*, a group of state Attorneys General filed *parens patriae* actions against LCD panel manufacturers alleging price-fixing in violation of state antitrust laws.  659 F.3d at 846.  The complaints sought declaratory and injunctive relief, civil penalties, and damages and restitution to state agencies and consumers.  *See id.*  The defendants removed the cases to federal court, and district courts remanded the cases on the basis that the *parens patriae* actions were not class actions removable under CAFA.  *See id.*  The Ninth Circuit agreed.  Starting with the statutory definition of "class action," the court held that CAFA unambiguously requires a "class action" be "brought under a state statute or rule similar to Rule 23 that authorizes an action 'as a class action.'" *Id.* at 848 (citing 28 U.S.C. § 1332(d)(1)(B)).  The court particularly emphasized the requirement that the state statute or rule authorize an action as a class action, which incorporates "the typical class action requirements of showing numerosity, commonality, typicality, or adequacy of representation."  *Id*.  The attorney general suits were brought pursuant to state statutes authorizing the attorneys general to bring suit as representatives, but without those class action mechanics; thus, they were not class actions and were not removable under CAFA.  *See id.*

Finally, the Seventh Circuit recently joined the Fourth and Ninth in concluding that *parens patriae* actions do not fall within CAFA jurisdiction.  *LG Display Co., Ltd. v. Madigan*, 2011 WL 5829918, at *1.[7]  The Attorney General of Illinois filed suit pursuant to a *parens patriae* provision of the Illinois Antitrust Act.  *Id.* at *1.  Citing *CVS Pharmacy* and *Chimei*

---

[7]In *Madigan*, the Seventh Circuit was presented with a petition to take an appeal from the district court's remand order, pursuant to 28 U.S.C. § 1453(c).  The circuit court concluded that the proper outcome was to deny the petition for appeal for lack of jurisdiction, rather than grant the appeal and affirm the remand order.  2011 WL 5829918, at *1.  However, the Court noted that although its approach was "technically different from what the Ninth and Fourth Circuits have done in similar cases," those "discussions of the relationship between *parens patriae* actions and CAFA [are] helpful and persuasive."  *Id.*

*Innolux*, the court held that the *parens patriae* claim was not a class action for the purposes of CAFA because the authorizing statute "does not impose any of the familiar Rule 23 constraints." *Id.* at *3.

Other district courts have also concluded that attorney general *parens patriae* actions are not "class actions" removable under CAFA.  *See Illinois v. AU Optronics Corp.*, No. 10-cv-5720, 2011 WL 2214034, at *10 (N.D. Ill. June 6, 2011);.*Arizona ex rel. Horne v. Countrywide Fin. Corp.*, No. CV-11-131-PHX-FJM, 2011 WL 995963, at *3 (D. Ariz. Mar. 21, 2011); *Missouri ex rel. Koster v. Portfolio Recovery Assocs., Inc.*, 686 F. Supp. 2d 942, 944-47 (E.D. Mo. 2010); *see also West Virginia ex rel. McGraw v. Comcast Corp.*, 705 F. Supp 2d 441, 452-54 (E.D. Pa. 2010) (holding that suit brought by state attorney general pursuant to statute which provided for adequate representation and notice and opt-out rights for represented state citizens was sufficiently similar to Rule 23 and counted as a "class action" for CAFA purposes).[8]

Here, Kentucky argues that pursuant to the reasoning in *CVS Pharmacy*, *Chimei Innolux*, and *LG Display*, the present lawsuit is not a class action subject to CAFA.  As explained above, the KCPA creates separate causes of action for the Attorney General and for private citizens with different available remedies.  The KCPA section creating the Attorney General cause of action does not require any showing of commonality, typicality, numerosity, or adequacy of representation, nor does it provide notice or opt-out rights to Kentucky citizens or, indeed, bind

---

[8]Collectively, these opinions have thoroughly dissected the relevant legislative history; suffice it to say that the guidance is inconclusive.  *See Caldwell*, 536 F.3d at 424 & n.4 (noting that Congress "considered and rejected an amendment that would have exempted class actions filed by state attorneys general from removal under CAFA" but that it "appears that some Senators rejected the amendment because they thought it was unnecessary") (citations omitted); *see also CVS Pharmacy*, 646 F.3d at 177 (summarizing legislative history, identifying conflicts in testimony, and giving little weight to Senate Report published after CAFA was signed into law).

them to an adverse judgment.  Thus, Kentucky argues, the suit is not brought pursuant to a "State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons *as a class action*." 28 U.S.C. § 1332(d)(1)(B) (emphasis added).  If it is not a class action, then it is not subject to CAFA and was improperly removed to federal court. 28 U.S.C. § 1332(d)(2); 28 U.S.C. § 1453.

Merck responds that *CVS Pharmacy* and *Chimei Innolux* are wrongly decided because they are "based on an extremely formalistic assumption–that the state rule authorizing the representative action must be 'similar' to Rule 23."  (Rec. Doc. 63309 at 4; Rec. Doc. 63477 at 1-2).  Rather, Merck urges that the Court must follow *Caldwell* and read the CAFA definition of "class action" expansively to include this lawsuit and to retain jurisdiction.[9]  Merck also argues that the flexibility demonstrated in *Caldwell* is inconsistent with the reasoning *CVS Pharmacy* and *Chimei Innolux*.  According to Merck, "[a]s *Caldwell* explained, CAFA's jurisdictional provisions focus on the substance of a case, rather than the use of magic words in the pertinent complaint."  (Rec. Doc. 63309 at 3).  Therefore, "this case too is a 'class action' within the meaning of CAFA because it is a 'representative' action – i.e., Kentucky consumers (in addition

---

[9]Merck also relies on *College of Dental Surgeons v. Connecticut General Life Insurance Co.*, 585 F.3d 33 (1st Cir. 2009). In *College of Dental Surgeons*, a professional organization representing Puerto Rican dentists filed suit against a variety of insurance companies and HMOs; the complaint "plainly invoked Puerto Rico's class action rules."  *Id.* at 37, 41.  The defendants removed on the basis of CAFA and the district court remanded because it "thought itself without subject matter jurisdiction because the complaint did not *sufficiently* define the plaintiff class." *Id.* at 39 (emphasis added).  The First Circuit reversed, concluding that the court did have CAFA jurisdiction because the critical inquiry was whether the case was *filed* as a class action, not whether it could be successfully certified as pleaded.  *Id.* at 39-40.  *College of Dental Surgeons* did not address whether a complaint not expressly designated a class action can nonetheless be a class action for CAFA purposes, and thus the opinion is not on point.  *See New Jersey Dental Assoc. v. Metro. Life Ins. Co.*, 2010 WL 3811305, at *3 (D.N.J. 2010) (holding that *College of Dental Surgeons* is irrelevant to determining whether complaint that "does not invoke any state or federal class action rules" is a class action for purposes of CAFA).

to the Commonwealth itself) are the real parties in interest."  *Id.* at 4).  Merck argues that *Chimei Innolux* and *CVS Pharmacy*, on the other hand, are examples of "precisely the sort of formalistic reasoning that the Fifth Circuit *did* expressly reject in *Caldwell*."  (Rec. Doc. 63477) (emphasis in original).

The Court is not persuaded.  First, *Caldwell* did not directly address the issue and is not in conflict with the opinions of the Fourth, Seventh, and Ninth Circuits.  The Fifth Circuit did not hold that "CAFA is satisfied by a representative action" in all cases, as Merck suggests (Rec. Doc. 63309 at 3).  Rather, *Caldwell* relied on the "mass action" provision and expressly reserved the question of whether the case might *also* proceed as a class action on remand.  *See* 536 F.3d at 430.  *Caldwell* is entirely compatible with *CVS Pharmacy*, *Chimei Innolux*, and *LG Display*.

The reasoning in these cases is supported by the plain language of CAFA.  Congress chose to define "class action" not in terms of joinder of individual claims or by representative relief in general, but in terms of the statute or rule the case is filed under.  28 U.S.C. § 1332(d)(1)(B).  This is a statutory requirement; no amount of piercing the pleadings will change the statute or rule under which the case is filed.  *Cf. In re Katrina Canal Breaches Litig.*, 524 F.3d 700, 705 (5th Cir. 2008) ("CAFA only requires that the action be brought under Rule 23 or a state statute that *authorizes* class actions to be brought by a person.") (emphasis in original).  If this is a formalistic outcome, it is a formalism dictated by Congress.  Moreover, it is an understandable bright-line rule.

Certainly, the Fifth Circuit in *Caldwell* cited legislative history for the proposition that "Congress emphasized that the term 'class action' should be defined broadly to prevent 'jurisdictional gamesmanship.'" *Caldwell*, 536 F.3d at 424 (quoting S. Rep. No. 109-14, at 35 (2005), U.S. Code Cong. & Admin. News 2005, p. 3.).  But the Court cannot stretch that

definition beyond the limits set by Congress, and Congress tied the scope of CAFA to Federal Rule of Civil Procedure 23. Merck reads *Caldwell* too broadly for the proposition that CAFA applied in that case, and should apply here, "because the state's claims, in substance, advanced the interests of the state's citizens." (Rec. Doc. 63477). Such a reading would greatly expand the scope of CAFA because a state can hardly ever be said to take any action that does not advance the interest of its citizens.

The plain reading of the statutory definition of "class action" necessarily excludes this case. CAFA does not apply and the case was improperly removed from state court. The Court lacks diversity jurisdiction on that basis alone but the Court will address the matter further.

### 2)      Is Minimal Diversity of Citizenship Present?

The parties also dispute whether minimal diversity of citizenship is present. The Court must remand because the case is not a class action for CAFA purposes, and perhaps the Court need not reach this issue. Nonetheless, considering the possibility that an appeal from this Order and Reasons might be pursued, *see* 28 U.S.C. § 1453(c), the Court will address why it appears that minimal diversity of citizenship is also lacking.[10]

_____

[10]Kentucky argues in its reply brief that Merck has conceded the absence of minimal diversity because Merck has retreated from a specific argument asserted in its notice of removal. Courts frequently hold that a party cannot remove a case to federal court on one jurisdictional theory and then later oppose a motion to remand on a different theory. However, those cases involve a defendant removing on one statutory jurisdictional basis and asserting an entirely different statutory basis for jurisdiction in opposing remand, or removing on the basis of diversity jurisdiction and arguing fraudulent joinder for the first time in opposition to a motion to remand. *See Blakely v. United Cable Sys.*, 105 F. Supp. 2d 574, 579 (S.D. Miss. 2000) (party removed on the basis of bankruptcy jurisdiction and only argued federal-question jurisdiction in opposition to motion to remand); *Phillips v. BJ's Wholesale Club, Inc.*, 591 F. Supp. 2d 822, 825-26 (E.D. Va. 2008) (party removed on the basis of diversity jurisdiction and later attempted to argue that one defendant was fraudulently joined); *UMLIC Cons., Inc. v. Spectrum Fin. Servs. Corp.*, 665 F. Supp. 2d 528, 533 (W.D.N.C. 2009) (party removed on the basis of diversity jurisdiction and only later argued that non-diverse plaintiff was not a real party in interest).
    Merck articulated CAFA as a basis for jurisdiction when it removed the case to federal

"The law is settled that in an action where a state is a party ... a state is not a citizen for purposes of diversity jurisdiction." *Melder v. Allstate Corp.*, 404 F.3d 328, 335 (5th Cir. 2005). The Commonwealth of Kentucky is the sole plaintiff named in the complaint and has no citizenship for the purposes of diversity. Thus, on the face of the complaint there is no "member of a class of plaintiffs [that] is a citizen of a State," and minimal diversity is lacking. 28 U.S.C. § 1332(d)(2)(A). Merck argues that Kentucky citizens are real parties in interest as to some of the relief sought and that their citizenship provides the requisite minimal diversity.

*Caldwell* is the guiding Fifth Circuit case on this question. First, *Caldwell* analyzed the real party in interest on a claim-by-claim basis, rather than looking at the lawsuit as a whole. *See id.*, 536 F.3d at 429-30. That is, the Fifth Circuit considers whether a state plaintiff or its citizens are the real parties in interest with respect to each type of relief sought. *See id*. Under this analysis, the Court would have CAFA jurisdiction over any claims in which citizens of Kentucky are the real parties in interest as to the particular relief sought, as well as discretion to retain jurisdiction over the entire case or to sever and remand the claims as to which Kentucky is the only real party in interest. *See id.* at 430. The Fifth Circuit is evidently in the minority in this approach; other courts addressing attorney general *parens patriae* suits look to the complaint and suit as a whole to determine whether or not the state is the real party in interest as to the totality of the claims. *See Ohio v. GMAC Mortg., LLC*, 760 F. Supp. 2d 741, 745 (N.D. Ohio 2011).

In *Caldwell*, as explained above, the Louisiana Attorney General filed suit against a host of insurance companies and related entities seeking two kinds of relief: injunctive relief and treble damages on behalf of the policyholders allegedly injured by the conduct. *See id.* at 422,

---

court. Although the nuances of the argument may have changed slightly, Merck has not relied on an entirely new theory of jurisdiction to oppose the motion to remand. Accordingly, Merck has not waived any of the arguments for jurisdiction it now presents.

-17-

429-30.  The Fifth Circuit explained that "[g]enerally speaking, a party is a real party in interest when it is 'directly and personally concerned in the outcome of the litigation to the extent that his participation therein will insure a genuine adversary issue between the parties.'" *Caldwell*, 536 at 428 ((quoting *Land O'Lakes Creameries v. La. State Bd. of Health*, 160 F. Supp. 387, 388 (E.D. La. 1958)).  "'Such an interest is lacking when a state undertakes to sue for the particular benefit of a limited number of citizens .... The State must show a direct interest of its own ....'" *Id.* (quoting *Land O'Lakes Creameries*, 160 F. Supp. at 388).  The Fifth Circuit also cited another court for the proposition that, "[i]n the context of *parens patriae* actions ... 'The state is the real party in interest when an action concerns a type of 'injury' that the state either has addressed or would likely attempt to address through its laws to further the "well-being of its populace."'" *Id.* (quoting *Harvey v. Blockbuster*, 384 F. Supp. 2d 749, 755 (D.N.J. 2005)).

In *Caldwell*, Louisiana citizens were the real parties in interest with respect to the treble damages claims because the statute creating the right "plainly states that 'any *person* who is injured in his business or property' under the Monopolies Act" shall recover treble damages.  *Id.* at 429 (emphasis added).  Therefore, because "individuals have the right to enforce this provision," the individual policyholders were the real parties in interest with respect to that claim for relief.  *See id.*  Because the policyholders were real parties in interest as to part of the claim, their citizenship was considered for CAFA "mass action" jurisdiction.  *See id.* at 430.

On the other hand, Louisiana was the real party in interest with respect to its claim for injunctive relief:

> We are mindful that in this action Louisiana is also seeking the remedy of injunctive relief.  If Louisiana were only seeking that remedy, *which is clearly on behalf of the State*, its argument that it is the only real party in interest would be much more compelling.

536 F.3d at 430 (emphasis added).  The Monopolies Act at issue in *Caldwell* grants express authority for the Louisiana Attorney General to "institute proceedings to prevent and restrain violations of the Act."  La. Rev. Stat. § 51:128.

Here, Kentucky seeks four forms of relief pursuant to the KCPA: injunctive relief, declaratory relief, civil penalties, and attorneys' fees.  The parties do not dispute that Kentucky is the real party in interest as to the claim for civil penalties, which only the Attorney General can recover under the KCPA.  And it is implausible that any citizen of Kentucky would be the real party in interest to a claim for attorneys' fees incurred by the Attorney General or affiliated counsel in litigating this suit.  Thus, the issue is who is the real party in interest with respect to the claims for injunctive relief and declaratory relief.

As to the claim for injunctive relief, Kentucky is in the same position as Louisiana in *Caldwell*.  Kentucky filed suit pursuant to a state statute giving the Attorney General express authority to seek "a restraining order or temporary or permanent injunction to prohibit" violations of the Act.  Ky. Rev. Stat. Ann. § 367.190(1).  A very similar grant of authority led the Fifth Circuit to conclude that the state is the real party in interest to that kind of injunctive relief. *See Caldwell*, 536 F.3d at 430.  Thus, the Commonwealth is the real party in interest to the claim for injunctive relief.

That leaves only the claim for declaratory relief.  Kentucky seeks "entry of a judgment against the Defendant, Merck, finding that it committed repeated violations of [§] 367.170." (Complt. at p. 7).  But the Complaint also seeks civil penalties for each violation of § 367.170. (*Id.* at p. 8).  The civil penalties claim necessarily entails finding that Merck violated the Act, and thus the declaratory judgment claim seems duplicative and redundant.  *Cf. Narvaez v. Wilshire Credit Corp.*, 757 F. Supp. 2d 621, 636 (N.D. Tex. 2010) (dismissing declaratory

judgment claim as "duplicative" of breach of contract claim); *Amari v. Radio Spirits, Inc.*, 219 F. Supp. 2d 942, 944 (N. D. Ill. 2002) ("Where the substantive suit would resolve the issues raised by the declaratory judgment action, the declaratory judgment action serves no useful purpose ....") (quotation and alteration omitted).  Certainly it would not have altered the case in any material manner if Kentucky had omitted that request for a declaration; Kentucky still would have to prove that violations occurred to succeed on the civil penalties claim.  Nor would omission of the declaratory judgment claim have had any apparent effect on any citizens of Kentucky.  The private right of action for citizens requires them to prove their actual damages, and thus the declaratory judgment would not automatically entitle them to relief.[11]  Kentucky is undoubtedly the real party in interest as to the claim for civil penalties for violations of § 367.170, and the request for a declaratory judgment does not seem to measurably change the case.  It would be a strange outcome if there was federal jurisdiction with the declaratory judgment claim but no federal jurisdiction without it.

Nonetheless, Merck argues that Kentucky citizens have the "substantive right sought to be enforced" and that they are the real parties in interest as to the declaratory relief.  In a very broad sense, Merck is correct; if there were no citizens of Kentucky to be deceived then there could be no deceptive statements.  But that does not imply that the citizens of Kentucky are necessarily the real parties in interest to any claim brought pursuant to the KCPA, which sets forth separate legal remedies for citizens and for the Commonwealth itself.  As *Caldwell* noted, it was not just the injury to the policyholders but "the right to enforce" the treble damages

---

[11]Merck and Kentucky vigorously dispute the extent to which the Attorney General must prove reliance by any party on the allegedly deceptive representations to recover for violations of the KCPA.  The Court need not and does not reach that question.

provision that made them the real parties in interest to those claims.  *See* 536 F.3d at 429.  Here, Kentucky has the right to enforce the KCPA through civil penalties, and the declaratory judgment claim is derivative of that right.

Merck also cites a pair of recent cases out of the Ninth Circuit.  *Department of Fair Employment and Housing v. Lucent Technologies, Inc.*, 642 F.3d 728 (9th Cir. 2011); *Nevada v. Bank of America Corp.*, No. 3:11-cv-00135-RCJ-RAM, 2011 WL 2633641 (D. Nev. July 5, 2011).  In *Lucent*, a California state agency filed suit on behalf of a single employee against his employer alleging wrongful termination and seeking equitable relief such as reform of the employer's practices.  *See id.* at 735, 738-40.  In *Bank of America*, the Nevada AG filed suit under the Deceptive Trade Practices Act "on behalf of potentially thousands of individual Nevadans" against banks for their mortgage modification practices.  2011 WL 2633641, at * 1. In both cases, the courts reasoned that a state could not be a real party in interest to any relief if individual citizens could also pursue that relief.  *See Lucent*, 642 F.3d at 737; *Bank of America*, 2011 WL 2633641 at *3-4, *12.

The Court will follow *Caldwell*, not *Lucent* or *Bank of America*.  First, the Fifth Circuit's analysis in *Caldwell* depended on who had the legal remedy, not whether a private citizen *also* had a legal remedy granted to the state.  Second, *Lucent* involved a state agency filing suit on behalf of a single terminated employee, 642 F.3d at 735, and the complaint in *Bank of America* expressly stated that the claims were brought on behalf of "thousands of Nevada consumers," 2011 WL 26336411 at *1, *4.  Here, Kentucky is pursuing a cause of action that only the Kentucky Attorney General may enforce.  *Lucent* and *Bank of America* do not seem precisely on point and the Court feels bound by *Caldwell* on this issue.

Accordingly, although the fact that this case is not a "class action" within the meaning of CAFA is sufficient reason to defeat diversity jurisdiction, it also appears that under *Caldwell*, Kentucky is the real party in interest as to all relief sought in the Complaint.  In the absence of any citizen of a state being involved in the case as either a named plaintiff or a real party in interest, there is no minimal diversity and the Court lacks diversity jurisdiction for that additional reason.

**D.      Federal Question Jurisdiction**

The parties also dispute the existence of federal question jurisdiction.  "A federal question exists only in those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law."  *Singh v. Duane Morris LLP*, 538 F.3d 334, 337-38 (5th Cir. 2008) (quotation and alteration omitted).  On its face, the Complaint asserts only one state-law cause of action for violation of the KCPA.  Merck argued in its notice of removal that the Complaint necessarily depends on a substantial federal question because it invokes conduct regulated by the federal Food, Drug & Cosmetic Act.  In its opposition to the motion to remand, Merck renews the argument for federal question jurisdiction but relegates it to a footnote.  (Opp. at 13 n.3).

The "necessary-resolution language should be read as part of a carefully nuanced standard rather than a broad and simplistic rule."  *Singh*, 538 F.3d at 338.  Accordingly, "federal question jurisdiction exists where (1) resolving a federal issue is necessary to resolution of the state-law claim; (2) the federal issue is actually disputed; (3) the federal issue is substantial; and (4) federal jurisdiction will not disturb the balance of federal and state judicial responsibilities."

*Id.*  In particular, the Supreme Court has held that "where Congress has provided no private remedy for the violation of a federal drug regulatory statute, the fact that violation of the statute is an element of a state tort claim is insufficient to establish a substantial federal interest."  *Singh*, 538 F.3d at 338-39 (citing  *Merrell Dow Pharms., Inc. v. Thompson*, 478 U.S. 804 (1986)).

Here, the complaint contains lengthy and detailed factual allegations regarding Merck's conduct in developing, testing, and marketing Vioxx as well as concealing the risks of the drug. (Complt., ¶¶ 5-30).  Included are factual allegations that certain study results "were not disclosed to the FDA or the public at the time of the product launch" and that Merck gave misleading testimony at a public hearing before the FDA.   (*Id.* at ¶¶ 15, 19).

Merck argues that this is an attempt to premise liability on a failure to report matters to the FDA, which is a necessary and substantial federal question that warrants exercise of jurisdiction.  It cites two authorities for that proposition.  First, Merck relies on the Supreme Court opinion in *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005).  *Grable & Sons* involved a landowner seeking to quiet title to his property on the basis that the IRS did not give him adequate notice prior to selling the property at a tax sale.  *See id.* at 311.  The Supreme Court found that federal question jurisdiction was appropriate, even in the absence of an express federal right of action, because the question of service pursuant to a federal statute was dispositive and because the Government had "a direct interest in the availability of a federal forum to vindicate its own administrative action, and buyers (as well as tax delinquents) may find it valuable to come before judges used to federal tax matters."  *See id.* at 314-15.  In particular, a limited expansion of jurisdiction over that case would have had "only a microscopic effect on the federal-state division of labor."  *Id.*  The

Supreme Court subsequently characterized *Grable* as representing only a "slim category" of cases.  *See Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 701 (2006).

 This case does not fall within the "slim category" defined by *Grable*.  The complaint alleges facts regarding Merck's conduct *vis a vis* the FDA, but those facts are only some allegations among many.  For example, the complaint alleges that Merck failed to disclose matters "to the FDA *or the public.*"  (Complt. at ¶ 15) (emphasis added).  Thus, the federal issues flagged by Merck may not be necessary to resolution of Kentucky's claims.  *See Singh*, 538 F.3d at 338.  But even if Kentucky did attempt to prove that Merck failed to comply with FDA disclosure regulations, that federal question would be resolved in the context of whether that conduct constituted a violation of *Kentucky* law; thus, it is hardly a substantial question of federal law.  *See Merrell Dow*, 478 U.S. at 814.  Moreover, expanding federal-question jurisdiction to encompass this case would have an exponentially greater effect on the federal-state division of labor than the unusual circumstance in *Grable*.

 Second, Merck cites orders from the *In re Zyprexa* MDL denying remand of a number of Attorney General cases.  For example, that court denied a motion to remand a suit filed by the Montana Attorney General against a pharmaceutical manufacturer alleging violations of the Montana Consumer Protection Act, among other state-law causes of action, premised on inadequate labeling and the defendant's efforts to promote off-label use.  *In re Zyprexa Prods. Liab. Litig.*, No. 04-MD-1596, 2008 WL 398378, at *1-2 (E.D.N.Y. Feb. 12, 2008).  The court noted that the suit "sought to recover costs allegedly incurred by the states' Medicaid programs" and therefore "the question of the state's obligation to reimburse its insureds for Zyprexa, using funds largely provided by the federal government, is essential to the states' theory of damages

and presents a substantial and disputed federal issue." *Id.* at *3.  Likewise, the allegations of

"off-label" promotion "necessarily raise substantial federal questions by requiring the court to

interpret the meaning of the FDCA and its implementing regulations." *Id.* at *5.  But in this

case, Kentucky seeks civil penalties pursuant to the KCPA and not federally-funded Medicaid

reimbursement payments.  There are also no issues of off-label promotion of Vioxx.  Thus, the

specific federal dimensions present in *Zyprexa* that weighed against remand are lacking in

Kentucky's complaint.[12]

     The Court concludes that the claims in the complaint do not depend on necessary

resolution of a substantial federal question.  Although Merck's alleged conduct may be assessed

against the backdrop of federal regulation, the gravamen of the complaint is whether Merck's

conduct independently violated Kentucky law.  To the extent that FDA regulations are

implicated, compliance or lack thereof is, at most, an element of that state-law cause of action,

which the Supreme Court has held does not create federal question jurisdiction.  Accordingly,

jurisdiction is lacking on this basis as well.

## III.   CONCLUSION

     For the foregoing reasons, IT IS ORDERED that the Commonwealth of Kentucky's

motion to remand is GRANTED.  The remand will be stayed for ten days from the entry of this

---

[12]A different governmental complaint with different causes of action and different allegations may warrant a different outcome.  The Court recognizes that there is a split in authority regarding whether cases with allegations such as those in *Zyprexa* should be remanded or whether jurisdiction should be retained.  *See In re Zyprexa*, 2008 WL 398378, at *4-5 (addressing contrary authority); *see also West Virginia ex rel. McGraw v. Rite Aid of West Virginia, Inc.*, 2010 WL 454488, at *3-4 (S.D. W. Va. Feb. 1 2010).  Because the present case is distinguishable from cases on both sides of that split of authority, the Court does not reach the issue and expresses no opinion regarding the presence or absence of federal question jurisdiction over any other governmental actions pending before the Court.

Order, at which time, if no party has applied to the Fifth Circuit Court of Appeals to appeal, the

case will be remanded to the Circuit Court of Franklin County, Commonwealth of Kentucky.

New Orleans, Louisiana, this 3rd day of January, 2011.

_____
UNITED STATES DISTRICT JUDGE