**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In re: VIOXX | * | |
|     Products Liability Litigation | * | |
| | * | |
| This Document Relates to: | * | MDL No. 1657 |
| | * | |
| DISTRICT OF COLUMBIA, *ex rel* | * | SECTION L |
|    KENNETH  WALKER, | * | |
| | * | JUDGE ELDON E. FALLON |
|                Plaintiff, | * | |
| | * | MAGISTRATE JUDGE |
|   versus | * | KNOWLES |
| | * | |
| MERCK & CO., INC., | * | |
| | * | |
|               Defendant. | * | |
| | * | |
| Case No. 2:08-cv-04148 | * | |
| | * | |
| * * * * * * * * * * * * * * * * * * * * * * * | * | |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR JUDGMENT ON THE PLEADINGS**

1083979v1

## <u>TABLE OF CONTENTS</u>

BACKGROUND ..................................................................................................................1

ARGUMENT ......................................................................................................................4

I.     PLAINTIFF'S CLAIMS ALL FAIL BECAUSE HE HAS NOT STATED A
COGNIZABLE "INJURY" UNDER ARTICLE III AND DID NOT ENGAGE IN
A CONSUMER TRANSACTION. ..........................................................................5

     A.     Plaintiff Has Not Asserted An "Injury" Within The Meaning Of Article
III...............................................................................................................5

     B.     Plaintiff Has Not Properly Alleged A Consumer Transaction With Merck. ...........7

II.    PLAINTIFF CANNOT SUE ON BEHALF OF OTHER CONSUMERS
BECAUSE HE HAS NOT SOUGHT TO REPRESENT A CLASS. ................................9

III.   PLAINTIFF CANNOT SUE ON BEHALF OF THE DISTRICT BECAUSE IT
HAS SETTLED ITS CONSUMER-PROTECTION CLAIMS.........................................13

CONCLUSION.................................................................................................................16

1083979v1

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Ashcroft v. Iqbal*,
    556 U.S. 662, 129 S. Ct. 1937 (2009)..................................................................................4

*In re Automobile Refinishing Paint Antitrust Litigation*,
    515 F. Supp. 2d 544 (E.D. Pa. 2007)...............................................................................9

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)...........................................................................................................4

*Breakman v. AOL, LLC*,
    545 F. Supp. 2d 96 (D.D.C. 2008).................................................................................10

*Eaglewood Consulting, LLC v. Graphic Packaging International, Inc.*,
    No. 1:10-CV-03467-RWS, 2011 U.S. Dist. LEXIS 65826 (N.D. Ga. June 20, 2011).....13, 14

*In re G-Fees Antitrust Litigation*,
    584 F. Supp. 2d 26 (D.D.C. 2008)............................................................................7, 8, 9

*In re Light Cigarettes Marketing Sales Practices Litigation*,
    271 F.R.D. 402 (D. Me. 2010)........................................................................................6

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)..........................................................................................................5

*In re McNeil Consumer Healthcare*,
    MDL No. 2190, 2011 U.S. Dist. LEXIS 76800 (E.D. Pa. July 14, 2011)..............................6

*Moore v. Dallas Indep. Sch. Dist.*,
    370 F. App'x 455 (5th Cir. 2010)...................................................................................4

*Morrison v. Olson*,
    487 U.S. 654 (1988).......................................................................................................15

*Myers-Armstrong v. Actavis Totowa, LLC*,
    No. C 08-04741 WHA, 2009 U.S. Dist. LEXIS 38112 (N.D. Cal. Apr. 22, 2009).................7

*National Consumers League v. General Mills, Inc.*,
    680 F. Supp. 2d 132 (D.D.C. 2010)...............................................................................10

*Rivera v. Wyeth-Ayerst Laboratories*,
    283 F.3d 315 (5th Cir. 2002) ......................................................................................5, 7

*Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*,
    130 S. Ct. 1431 (2010)...................................................................................................12

*Shaw v. Marriott International, Inc.*,
    605 F.3d 1039 (D.C. Cir. 2010).......................................................................................7

*Simonian v. Quigley Corp.*,
    No. 10 C 1259, 2010 U.S. Dist. LEXIS 72590 (N.D. Ill. July 19, 2010) ............................14

*Thompson v. APM Terminals Pac. Ltd.*,
 No. 10-00677 JSW, 2010 U.S. Dist. LEXIS 142537 (N.D. Cal. Aug. 26, 2010)...................12

*United States ex rel. Barajas v. Northrop Corp.*,
 147 F.3d 905 (9th Cir. 1998) .................................................................................................13

*United States ex rel. Sarafoglou v. Weill Medical College of Cornell University*,
 451 F. Supp. 2d 613 (S.D.N.Y. 2006) ....................................................................................13

*United States ex rel. Walsh v. Eastman Kodak Co.*,
 98 F. Supp. 2d 141 (D. Mass. 2000).......................................................................................13

*Vt. Agency of National Resources v. United States ex rel. Stevens*,
 529 U.S. 765 (2000).................................................................................................................15

*In re Vioxx Prods. Liab. Litig.*,
 MDL No. 1657 SECTION: L (3), No. 05-3700, 2010 U.S. Dist. LEXIS 142767
 (E.D. La. Mar. 31, 2010) ....................................................................................................1, 12

*Williams v. Purdue Pharma Co.*,
 297 F. Supp. 2d 171 (D.D.C. 2003).........................................................................................6

*In re Zyprexa Products Liability Litigation*,
 671 F. Supp. 2d 397 (E.D.N.Y 2009) .....................................................................................12

## STATE CASES

*Adam A. Weschler & Son, Inc. v. Klank*,
 561 A.2d 1003 (D.C. 1989) ..................................................................................................8, 9

*Cropp v. Williams*,
 No. 03ca4569, 2003 D.C. Super. LEXIS 34 (D.C. Super. Ct. Aug. 1, 2003) .......................15

*Margolis v. U-Haul Int'l, Inc.*,
 No. 2007 CA 005245 B, 2009 D.C. Super. LEXIS 8 (D.C. Super. Ct. Dec. 17, 2009) .........10

## FEDERAL RULES

Fed. R. Civ. P. 12(c) ..........................................................................................................................4

Fed. R. Civ. P. 23(c)(1)(A) ..............................................................................................................11

## STATE STATUTES

D.C. Code § 1-204.22 ......................................................................................................................15

D.C. Code § 28-3905 .......................................................................................................................10

## <u>DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF</u>
## <u>MOTION FOR JUDGMENT ON THE PLEADINGS</u>

Plaintiff Kenneth Walker has sued Merck under the D.C. Consumer Protection and Procedures Act ("CPPA"), seeking a refund of moneys spent on Vioxx in the District of Columbia. Walker purports to sue on behalf of himself, his fellow D.C. residents, and the D.C. Government. As a threshold matter, Mr. Walker's claims all fail because he has not asserted an "injury" that could give him standing under Article III, and he has not alleged a "consumer transaction" that comes within the ambit of the CPPA. In addition, Mr. Walker cannot sue on behalf of other D.C. residents because he has not pursued class allegations, as required under both D.C. and federal law. Finally, Mr. Walker cannot sue on behalf of the District of Columbia because the District has already settled its CPPA claims with Merck and released the Company from any future claims under the statute on its behalf.

In short, not one of Plaintiff's theories is actionable. Accordingly, the Court should grant Merck judgment on the pleadings.

## <u>BACKGROUND</u>

Vioxx is a prescription nonsteroidal anti-inflammatory drug ("NSAID") manufactured by Merck for pain relief. *In re Vioxx Prods. Liab. Litig.*, MDL No. 1657 SECTION: L (3), No. 05-3700, 2010 U.S. Dist. LEXIS 142767, at *2-3 (E.D. La. Mar. 31, 2010). The United States Food & Drug Administration approved Vioxx for sale in the United States on May 20, 1999. *Id.* at *4. Vioxx was available in the U.S. from May 1999 until it was voluntarily withdrawn from the market in September 2004. (*See* Compl. ¶¶ 28, 49.)

In 2008, Merck reached an agreement with the District of Columbia and several states to resolve those governments' Vioxx claims under their respective consumer-protection statutes. *See* Consent Judgment, *District of Columbia v. Merck & Co.*, No. 2008 CA 003750 B (D.C.

Super. Ct. May 20, 2008) (attached as Ex. 1) ("Consent Judgment").  Under its agreement with the District, Merck is released from "all civil claims, causes of action, damages, restitution, fines, costs, and penalties on behalf of the District of Columbia under the District of Columbia Consumer Protection Procedures Act arising from the Covered Conduct that is the subject" of the agreement.  *Id.* ¶ 20.  "Covered Conduct" is defined in the agreement to mean "Merck's promotional and marketing practices regarding the prescription drug Vioxx, as well as Merck's practices related to Data Safety Monitoring Boards, publication of clinical trials, and the support of continuing medical education."  *Id.* § Definitions, ¶ a.

The instant lawsuit is brought by Plaintiff Kenneth Walker to recover funds that he, District of Columbia residents and the District of Columbia itself allegedly spent on Vioxx. (Compl. ¶¶ 50, 59.)  According to the Complaint, Merck improperly promoted Vioxx through its sales force, which allegedly gave "medical providers . . . inaccurate and misleading information to encourage them to prescribe Vioxx to their patients."  (*Id.* ¶ 30.)  The Complaint further alleges that the information was "misleading" because it failed to disclose the allegedly "significant cardiovascular risks associated with the use of Vioxx."  (*Id.* ¶ 29.)  The Complaint's allegations focus exclusively on the alleged effects of Merck's conduct on the District, the pharmacy benefits manager of its Medicaid program, and the physicians serving District residents.  (*See generally id.* ¶¶ 29-42.)  The Complaint does not include a single allegation of any communication by Merck to Plaintiff or any other District resident who allegedly used Vioxx.

1083979v1

The Complaint alleges that Merck's conduct resulted in "losses" for Plaintiff and those he would represent.[1]  Specifically, the Complaint asserts that the District of Columbia, Mr. Walker and other District residents incurred losses by paying for Vioxx they would not have paid for absent Merck's allegedly "false and misleading campaign." (*See id.* ¶ 42.)[2]  The nature of these alleged losses is not detailed in the Complaint.  Plaintiff alleges that D.C.'s Medicaid program "has a preference for generic drugs and will not pay for a non-generic prescription unless the physician obtains prior authorization from Medicaid," which requires a physician to return a "form indicating that he has tried two generic regimens that have failed." (*Id.* ¶¶ 20, 25.)  He also alleges that "generic drugs would have been safer" than Vioxx. (*Id.* ¶¶ 38, 39, 45, 54.)  But he does not allege that Vioxx was not effective.  To the contrary, Plaintiff affirmatively alleges that he was prescribed Vioxx by his doctor because "DayPro and Lodine had not been effective in the past," and further alleges that he remained on Vioxx from some time in 2001 through Merck's withdrawal of the drug from the market in late 2004. (*Id.* ¶¶ 12-15, 27.)

The Complaint seeks relief pursuant to two causes of action.  The first asserts a right to relief under the D.C. False Claims Act, D.C. Code § 2-308.13 et seq.  This Court dismissed that claim for lack of standing on March 28, 2011. (*See* Order & Reasons, ECF No. 62729, Mar. 28, 2011 (attached as Ex. 2).)

Plaintiff's second cause of action is brought under the D.C. Consumer Protection Procedures Act, D.C. Code § 28-3901 et seq. ("CPPA"). (*See* Compl. ¶ 1.)  Plaintiff seeks treble damages, punitive damages, attorneys' fees and costs, on behalf of "consumers of the District of

---

[1]    Although Mr. Walker was covered "on and off" by Medicaid (Compl. ¶ 11), he alleges that he occasionally paid for Vioxx "out of his own funds," (*id.* ¶ 15).

[2]    This is not a personal-injury suit.  Plaintiff does allege that "he suffered a stroke and renal failure" "[w]hile he was taking Vioxx" (Compl. ¶ 17), but does not assert any nexus between his alleged injury and use of Vioxx, and to Merck's knowledge, he has never filed a suit alleging personal injury as a result of his use of Vioxx.

Columbia," which he claims include the "District of Columbia, the plaintiff, and other residents of the District of Columbia, who purchased Vioxx." (Compl. ¶¶ 9, 59.)

## ARGUMENT

Rule 12(c) provides that "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).

Where, as here, a Rule 12(c) motion is premised on a plaintiff's failure to state a claim for which relief can be granted, a court should analyze the motion under the same standard as a Rule 12(b)(6) motion to dismiss. *Moore v. Dallas Indep. Sch. Dist.*, 370 F. App'x 455, 457 (5th Cir. 2010). In order to survive a motion for judgment on the pleadings, "a plaintiff must plead enough facts to state a claim to relief that is plausible on its face." *Id.* (internal quotation marks and citation omitted). The "plausibility standard" requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009). Rather, a complaint must contain "[f]actual allegations . . . [that] raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Here, Plaintiff has failed to state a plausible claim against Merck with regard to his sole remaining claim under the CPPA. ***First***, all of Plaintiff's claims fail because: (1) he lacks standing; and (2) he has not engaged in a consumer transaction with Merck. ***Second***, Plaintiff's claim on behalf of District of Columbia residents who purchased Vioxx also fails because he has not attempted to satisfy the requirements of Rule 23. And ***third***, Plaintiff's claim on behalf of the District of Columbia is barred under the terms of the 2008 settlement executed by Merck and the District. For all of these reasons, Plaintiff's consumer-protection claim is unfounded, and the Court should grant judgment on the pleadings in favor of Merck.

1083979v1

I.    **PLAINTIFF'S CLAIMS ALL FAIL BECAUSE HE HAS NOT STATED A COGNIZABLE "INJURY" UNDER ARTICLE III AND DID NOT ENGAGE IN A CONSUMER TRANSACTION.**

Plaintiff's CPPA claims are all doomed to fail for a number of reasons.  ***First***, Plaintiff lacks standing to sue for purely economic losses because there is no allegation that the Vioxx he consumed was either ineffective or caused him physical injury.  ***Second***, Plaintiff's claims must also be rejected because his purchase of Vioxx did not constitute a "consumer transaction" with Merck, as required under the CPPA.

A.    **Plaintiff Has Not Asserted An "Injury" Within The Meaning Of Article III.**

Plaintiff's claims fail first and foremost for lack of standing.  The U.S. Court of Appeals for the Fifth Circuit has held that a plaintiff does not plead a cognizable injury sufficient to create standing under Article III merely by alleging that a drug has side effects that he did not experience.  That is all that is alleged here, and Plaintiff therefore lacks standing to sue.

It is axiomatic that Article III standing requires a plaintiff to demonstrate "an invasion of a legally protected interest which is . . . concrete and particularized."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  It is also well established that, outside a few exceptions not relevant here, the alleged "'injury [must] be personal'" – i.e., it cannot be premised on a breach of legal duties to others.  *Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315, 320 (5th Cir. 2002) (quoting *Bertulli v. Indep. Ass'n of Cont'l Pilots*, 242 F.3d 290, 295 (5th Cir. 2001)).

Applying this principle, the Fifth Circuit has made it clear that a plaintiff suing over an allegedly defective pharmaceutical product lacks standing to sue for purely economic losses where – as here – there is no claim that the product was ineffective or caused the particular plaintiff physical injury.  *See Rivera*, 283 F.3d at 320.  In *Rivera*, the plaintiff brought a putative class action asserting a claim for violation of the Texas Deceptive Trade Practices Act arising out of the defendant pharmaceutical manufacturer's allegedly deceptive marketing of the drug

1083979v1

Duract. *Id.* at 316-17.  The plaintiff did "not claim Duract caused [her] physical or emotional

injury, was ineffective as a pain killer, or ha[d] any future health consequences to users." *Id.* at

319.  Rather, the plaintiff sued to recover a refund of the money she spent in purchasing the

allegedly defective drug. *Id.*  The district court granted the motion for class certification, but the

Fifth Circuit reversed, holding that the plaintiff was "not among the injured" and therefore

lacked standing to sue. *Id.* at 320.  In so holding, the Court of Appeals rejected the plaintiff's

argument that she was denied the benefit of her bargain. *Id.*  The court reasoned that, because

the plaintiff failed to allege that the drug was ineffective or caused her any physical injuries, she

"paid for an effective pain killer, and . . . received just that – the benefit of her bargain." *Id.*  In

any event, the appellate court explained, a benefit-of-the-bargain theory of loss had no

application to plaintiff where the gravamen of her case was a "failure to warn and sale of a

defective product," which are essentially "products liability claims." *Id.*

Courts adjudicating claims under the District of Columbia's CPPA have reached the same

conclusion in similar cases. *See, e.g.*, *Williams v. Purdue Pharma Co.*, 297 F. Supp. 2d 171, 178

(D.D.C. 2003) (dismissing complaint on standing grounds where defendant allegedly deceptively

advertised a drug as providing twelve-hour pain relief with little risk of addiction because

plaintiffs did not allege that the drug failed to provide them with effective pain relief or that they

suffered personal injuries from ingesting the drug); *In re Light Cigarettes Mktg. Sales Practices

Litig.*, 271 F.R.D. 402, 420 (D. Me. 2010) (denying certification under CPPA where class

included members who "were not injured by the Defendants' misconduct and thus do not have

standing").  In addition, other courts applying the laws of other jurisdictions are in accord. *See,

e.g.*, *In re McNeil Consumer Healthcare*, MDL No. 2190, 2011 U.S. Dist. LEXIS 76800, at *36

(E.D. Pa. July 14, 2011) (dismissing complaint for lack of standing where "the plaintiffs in this

6

case have not alleged that the [medications] were defective as to ***them***, or that the plaintiffs were otherwise injured") (emphasis added); *Myers-Armstrong v. Actavis Totowa, LLC*, No. C 08-04741 WHA, 2009 U.S. Dist. LEXIS 38112, at *12 (N.D. Cal. Apr. 22, 2009) (granting defendant pharmaceutical manufacturers judgment on the pleadings; "[t]here must be at least some physical manifestation such as physical harm, or a failure of the drug to work as intended, or a rational fear of future harm, none of which are alleged"), *aff'd*, 382 F. App'x 545 (9th Cir. 2010).

The same result is warranted here.  The theory of Plaintiff's consumer-protection claim is that Merck "misrepresent[ed] the risks associated with the use of Vioxx," causing Plaintiff to spend his "dollars purchasing Vioxx prescriptions."  (Compl. ¶¶ 52, 58.)  But Mr. Walker does not allege that he was injured by Vioxx or that Vioxx was ineffective.  If anything, the Complaint alleges the opposite – that Vioxx worked for him.  (*See id.* ¶¶ 12-15, 20, 25, 27.) These allegations are virtually indistinguishable from those found insufficient in *Rivera* – i.e., that "Wyeth sold Duract; [plaintiff] purchased and used Duract; Wyeth did not list enough warnings on Duract, and/or Duract was defective; other patients were injured by Duract; Rivera would like her money back."  *Rivera*, 283 F.3d at 319.  For this reason alone, Plaintiff's claims all fail.

## B.   Plaintiff Has Not Properly Alleged A Consumer Transaction With Merck.

Plaintiff's claims fail for the additional reason that he did not engage in a "consumer transaction" with Merck.

It is well-settled law that the CPPA only governs conduct arising out of "consumer transactions."  *See, e.g.*, *Shaw v. Marriott Int'l, Inc.*, 605 F.3d 1039, 1043 (D.C. Cir. 2010) (explaining that the D.C. Court of Appeals has restricted the CPPA to "consumer transactions"); *In re G-Fees Antitrust Litig.*, 584 F. Supp. 2d 26, 43 (D.D.C. 2008) (dismissing claims under

7

CPPA where plaintiffs failed to adequately allege that alleged misconduct stemmed from "consumer transaction").

One consequence of this requirement is that "[t]ransactions along the distribution chain that do not involve the ultimate retail customer are not 'consumer transactions' that the Act seeks to reach." *Adam A. Weschler & Son, Inc. v. Klank*, 561 A.2d 1003, 1005 (D.C. 1989) (distinguishing "between retail and wholesale transactions"). Thus, even a claim by a purported consumer does not involve a "consumer transaction" if it is asserted against an entity that is further up the distribution chain from the seller of the product. *See, e.g., G-Fees Antitrust Litig.*, 584 F. Supp. 2d at 42-43.

In *G-Fees Antitrust Litig.*, for example, the plaintiffs initiated a putative class action against various defendant mortgage companies and entities, asserting violation of various state consumer-protection laws, including the CPPA. *Id.* at 42. Plaintiffs alleged that Fannie Mae violated the CPPA by requiring lenders not to disclose the existence and amount of certain fees. *Id.* But plaintiffs failed to allege that "Fannie Mae was the final distributor of a good or service to the plaintiffs, or . . . that plaintiffs and Fannie Mae had a consumer-merchant relationship." *Id.* at 43. Moreover, plaintiffs did not allege that they had any direct dealings or communications with Fannie Mae. *Id.* at 42-43. In addition, plaintiffs did not enter into any sales agreement with the defendant. *Id.* at 43. As a result, the court determined that plaintiffs failed to adequately allege a consumer-merchant relationship with defendants, and the CPPA claim was dismissed. *Id.*

Plaintiff's CPPA claims fail for the same reason as the claim in *G-Fees Antitrust Litigation*. By his own allegations, Plaintiff did not purchase Vioxx from Merck; rather, he "usually filled his prescriptions at Morton Care Pharmacy" in the District of Columbia. (Compl.

¶ 14.)[3]  Thus, Merck was not the final distributor of a good or service to Plaintiff or other

members of the general public.  Moreover, none of Merck's transactions with regard to Vioxx

"involve[d] the ultimate retail customer."  *Klank*, 561 A.2d at 1005; *see also In re Auto.*

*Refinishing Paint Antitrust Litig.*, 515 F. Supp. 2d 544, 553 (E.D. Pa. 2007) (construing

analogous provision of New York's consumer-fraud statute; "'[n]or, of course, does the fact that

consumers were the ultimate end-users convert the transaction into a consumer transaction'")

(quoting *Black Radio Network, Inc. v. NYNEX Corp.*, 44 F. Supp. 2d 565, 583 (S.D.N.Y. 1999)).

As in *G-Fees Antitrust Litigation*, there is no allegation that Merck engaged in any "direct

dealings or communications" with any retail customers of Vioxx – let alone Plaintiff.  584 F.

Supp. 2d at 42-43.  Rather, Plaintiff alleges only that Merck communicated with doctors and

employees of the District.

 For this reason too, Plaintiff has failed to state a claim under the CPPA, and Merck is

entitled to judgment on the pleadings.

## II. PLAINTIFF CANNOT SUE ON BEHALF OF OTHER CONSUMERS BECAUSE HE HAS NOT SOUGHT TO REPRESENT A CLASS.

 Even if Plaintiff could otherwise assert a viable consumer-protection claim, his claim on

behalf of District of Columbia purchasers of Vioxx would nonetheless fail because he has not

alleged that his claims satisfy class-action requirements.

 The CPPA allows a private plaintiff to bring suit on behalf of "itself, its members, or the

general public."  D.C. Code § 28-3905(k).  As courts applying this provision have made clear, a

plaintiff who wishes to bring a "representative suit" on behalf of other private parties must

---

[3] The pharmacy, in turn, would not have purchased from Merck, either, but from a pharmacy wholesaler. *See generally* The Henry J. Kaiser Family Foundation, *Follow The Pill: Understanding The U.S. Commercial Pharmaceutical Supply Chain* 9 (2005), http://www.kff.org/rxdrugs/upload/Follow-The-Pill-Understanding-the-U-S-Commercial-Pharmaceutical-Supply-Chain-Report.pdf.

"comply with Rule 23," or "his claims for money damages on behalf of third parties will be dismissed." *Margolis v. U-Haul Int'l, Inc.*, No. 2007 CA 005245 B, 2009 D.C. Super. LEXIS 8, at *4 (D.C. Super. Ct. Dec. 17, 2009) ("to the extent that [plaintiff] is asserting claims for money damages under the CPPA on behalf of third parties, the plaintiff must seek class certification and otherwise comply with Rule 23"); *Nat'l Consumers League v. Gen. Mills, Inc.*, 680 F. Supp. 2d 132, 137-39 (D.D.C. 2010) (distinguishing private AG suits brought on behalf of the "general public" from suits seeking monetary damages on behalf of certain individuals, and acknowledging that the latter must be brought under Rule 23).[4]

In *Margolis*, for example, the D.C. Superior Court dismissed a CPPA claim brought by an allegedly defrauded U-Haul customer on behalf of himself and "similarly situated" D.C. consumers because, *inter alia*, the plaintiff did not allege that he satisfied the requirements for class certification. 2009 D.C. Super. LEXIS 8, at *4. After an exhaustive examination of the legislative history, the court concluded: "Nothing in the statute indicates any intention by the legislative branch to abrogate the requirements of Rule 23 in cases where an individual is seeking money damages under the CPPA on behalf of third parties." *Id.* at *26.

The court also enumerated the troubling policy consequences that would result from allowing representative actions to proceed without Rule 23's crucial protections. Specifically,

---

[4]     In an attempt to reconcile a handful of cases that have grappled with this question, the *National Consumers League* court concluded that class allegations are not necessary in CPPA enforcement actions in which a plaintiff seeks to represent the "general public," as opposed to "similarly situated purchasers in the District of Columbia." 680 F. Supp. 2d at 137; *see also Breakman v. AOL, LLC*, 545 F. Supp. 2d 96 (D.D.C. 2008) (representative claim on behalf of the "general public" is not a class action subject to the requirements of Rule 23). According to the court, class-action procedural protections are necessary where a "claim for money damages [is] brought on behalf of others," as in *Margolis*, but not where a plaintiff is acting as "a private attorney general," as in *National Consumers League* and *Breakman*. 680 F. Supp. 2d at 137. Here, Plaintiff's Complaint does not attempt to assert a claim on behalf of the "general public"; nor does it assert that Plaintiff is acting as a "private attorney general." Instead, the Complaint repeatedly invokes the interests of "consumers in the District of Columbia" (*see, e.g.*, Compl. ¶¶ 7, 10, 52, 54, 56-59), and specifically does so in the paragraph setting forth Plaintiff's claim for damages (*id.* ¶ 59). Thus, even under a generous reading of *National Consumers League* and *Breakman*, Plaintiff was required to invoke Rule 23.

1083979v1

the court focused on the difficult question of who would collect damages in a representative action.  On the one hand, the statutory language – which indicates that any damages award is "'payable to the consumer,'" *id.* at *11 (quoting D.C. Code § 28-3905(k)(1)(A)) – could be construed to mean that the plaintiff in a representative action would be paid the entire award, clearly an unfair "windfall," *id.* at *13-14.  On the other hand, if the awards were to be payable to those persons ostensibly represented by the plaintiff, the statute afforded no mechanisms to protect their rights.  *Id.* at *12, *14 (explaining that, "[i]n a representative action, some measure of procedural due process plainly is necessary to prevent harm to absent third parties," that Rule 23 ordinarily protects those rights, and that "nothing in the statute [] suggests that the Court should ignore Rule 23 and instead make up new rules in CPPA representative actions for damages") (citing *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985)).  The court wisely concluded that the D.C. Council could not have intended this "unreasonable result." *Id.* at *14.  Because the plaintiff had not sought to comply with Rule 23, the court dismissed the CPPA claims.

This case merits the same result.  Plaintiff seeks to represent "District of Columbia residents who purchased Vioxx."  (Compl. ¶ 10.)  He also seeks to recover "treble damages (3 times the total value of sales of Vioxx in the District of Columbia) or $1,500.00 for each sale, whichever is greater."  (*Id.* ¶ 59.)  Because he seeks to recover damages sustained by third parties, he must meet the requirements for class certification.  But Plaintiff has neither pled any class allegations in his Complaint nor sought to certify a class in this case – which was filed in 2005 and has been pending in this Court since 2008 – "[a]t an early practicable time."  Fed. R. Civ. P. 23(c)(1)(A).  For this reason alone, Plaintiff's claim on behalf of District of Columbia residents must be dismissed.

1083979v1

In addition, even if the CPPA could be construed as authorizing representative suits without requiring compliance with class-certification standards, Plaintiff's claim would still be doomed to fail because his suit is pending in federal court.  As the U.S. Supreme Court recently confirmed, "like the rest of the Federal Rules of Civil Procedure, Rule 23 automatically applies in all civil actions and proceedings in the United States district courts."  *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 130 S. Ct. 1431, 1438 (2010) (internal quotation marks and citation omitted); *see also, e.g.*, *Thompson v. APM Terminals Pac. Ltd.*, No. 10-00677 JSW, 2010 U.S. Dist. LEXIS 142537, at *5-6 (N.D. Cal. Aug. 26, 2010) ("a plaintiff whose cause of action is perfectly viable in state court under state law may nonetheless be foreclosed from litigating the same cause of action in federal court, if he cannot meet federal procedural and jurisdictional requirements") (internal quotation marks and citation omitted).

The same is true here.  A representative suit in federal court must comply with the requirements of Rule 23.  For this reason as well, Plaintiff's consumer-protection claim on behalf of District of Columbia purchasers of Vioxx must be rejected.[5]

---

[5]     Even if Plaintiff were not required to satisfy Rule 23, such a claim would be barred under the individualized-proof rule recognized by this Court in the Louisiana AG case.  Plaintiff claims that Merck's alleged misrepresentations led D.C. physicians to prescribe Vioxx – and D.C. residents to pay for the drug as a result.  (*See* Compl. ¶¶ 38-40.)  In *Caldwell*, this Court held that such a theory of causation was barred as a matter of law because it turned on highly individualized evidence.  As the Court explained, because "[e]ach decision by each doctor and each patient was different," the "effect that any alleged misrepresentations had on each [prescribing] decision is unique."  *In re Vioxx*, 2010 U.S. Dist. LEXIS 142767, at *23; *see also In re Zyprexa Prods. Liab. Litig.*, 671 F. Supp. 2d 397, 453-54 (E.D.N.Y 2009).  As a result, it would be "simply impossible, or close to it, to determine the individual thought process of each of the thousands of doctors and patients involved" in a single trial, rendering Plaintiff's proposed theory of causation utterly unviable.  *In re Vioxx*, 2010 U.S. Dist. LEXIS 142767, at *24.

1083979v1

### III.   PLAINTIFF CANNOT SUE ON BEHALF OF THE DISTRICT BECAUSE IT HAS SETTLED ITS CONSUMER-PROTECTION CLAIMS.

To the extent Plaintiff also seeks to sue on behalf of the District of Columbia, his claim is barred under the terms of Merck's May 2008 settlement with the District.[6]

A plaintiff purporting to sue on behalf of the government is barred from doing so when the government has already settled the claim asserted by the plaintiff.  *See, e.g.*, *United States ex rel. Barajas v. Northrop Corp.*, 147 F.3d 905, 911 (9th Cir. 1998) ("The government having settled the case, there is no claim left for Barajas to pursue."); *United States ex rel. Sarafoglou v. Weill Med. College of Cornell Univ.*, 451 F. Supp. 2d 613, 620 (S.D.N.Y. 2006) ("Because the false claims from the current complaint all arise from the same nucleus of operative fact, they are foreclosed by the Settlement Agreement under principles of *res judicata*.").  After all, a private citizen's right to sue on behalf of the government – if it exists at all – could only be derivative of the government's own standing to sue.  *See, e.g.*, *Barajas*, 147 F.3d at 910 (explaining that a *qui tam* plaintiff "has Article III standing to sue only as a relator, on behalf of the government" because he is not asserting "a claim separate from the government's" but rather has standing only as "an assignee of the government's claim"); *United States ex rel. Walsh v. Eastman Kodak Co.*, 98 F. Supp. 2d 141, 147 (D. Mass. 2000) (government is the "real party in interest" in a suit brought by a private party on its behalf).  Thus, when the government settles its claim, the private citizen has no claim left to assert on the government's behalf.  *See, e.g.*, *Eaglewood Consulting, LLC v. Graphic Packaging Int'l, Inc.*, No. 1:10-CV-03467-RWS, 2011 U.S. Dist. LEXIS 65826,

---

[6]      It is not clear that Plaintiff intends to assert such a claim.  On the one hand, he asserts in one paragraph of his Complaint that he "brings this action on behalf of himself, the District of Columbia, and the District of Columbia residents who purchased Vioxx," and asserts a "violation of D.C. Code Section 28-3904(e) and (f)," i.e., the CPPA. (Compl. ¶ 10.)  On the other hand, in the portion of the Complaint where he actually sets forth the allegations in support of his CPPA claim, Plaintiff limits his prayer for relief to damages allegedly incurred by "consumers of the District of Columbia."  (*Id.* ¶ 59.)

13

at *9-10 (N.D. Ga. June 20, 2011) (where the government approved the release of claims asserted in a second *qui tam* action by an unrelated plaintiff, the government had in effect "revoked" its authorization that the second plaintiff could pursue an action on behalf of the government).  As one federal judge explained, "[j]ust as the United States could not bring multiple identical actions against a defendant under the [same] statute, multiple private plaintiffs cannot do so on the government's behalf."  *Simonian v. Quigley Corp.*, No. 10 C 1259, 2010 U.S. Dist. LEXIS 72590, at *5 (N.D. Ill. July 19, 2010) (granting motion to dismiss where identical *qui tam* action was already pending against the same defendant).

In *Eaglewood Consulting*, for example, the relator, Eaglewood Consulting, filed a *qui tam* action against Graphic Packaging International, alleging that it had engaged in a pattern of marking certain boxes with expired patents.  2011 U.S. Dist. LEXIS 65826, at *2.  The lawsuit was filed several months after a different relator had brought a similar action against the same defendant, which ultimately resulted in a settlement on behalf of the United States.  *Id.*  The defendant subsequently moved to dismiss Eaglewood Consulting's separate *qui tam* action on the ground that the prior settlement released all claims on behalf of the United States, thereby "depriv[ing] Eaglewood of standing."  *Id.* at *5-6.  The district court agreed with the defendant, explaining that if multiple suits were permitted to proceed, the government would be entitled "to multiple recoveries," which would "put a heavy burden on defendants in having to litigate against many relators, with no end in sight."  *Id.* at *8-9 (internal quotation marks and citation omitted).  The court reasoned that "[r]egardless of whether or not the Government had actual notice of [Eaglewood's] action, it does not change the fact that the Government, through the settlement in the [other] case, approved of a release of the claims asserted in this action."  *Id.* at *15-16.  This warranted outright dismissal of the *qui tam* complaint.  *Id.* at *17.

14

The same reasoning applies here.  Under the settlement agreement reached with the District, Merck is released from "all civil claims, causes of action, damages, restitution, fines, costs, and penalties **on behalf of** the District of Columbia under the District of Columbia Consumer Protection Procedures Act arising from the Covered Conduct."  *See* Consent Judgment ¶ 20 (emphasis added).  The "Covered Conduct" includes "Merck's promotional and marketing practices regarding the prescription drug Vioxx, as well as Merck's practices related to Data Safety Monitoring Boards, publication of clinical trials, and the support of continuing medical education."  *Id.* § Definitions, ¶ a.  This definition easily encompasses the allegations underlying Plaintiff's CPPA claim.  (*See, e.g.*, Compl. ¶ 52 (alleging that Merck "intentionally misrepresent[ed] the risks associated with the use of Vioxx").)  Accordingly, Plaintiff may not pursue any CPPA claim on behalf of the District of Columbia, and the Court should grant Merck judgment on the pleadings for this reason as well.[7]

---

[7]     Even if it were not barred by the Consent Judgment, Plaintiff's claim on behalf of the District of Columbia would also fail because the CPPA provision authorizing private citizens to sue on behalf of the District violates D.C.'s separation-of-powers doctrine.  The D.C. Charter expressly provides that the "executive power of the District shall be vested in the Mayor," who "shall be responsible for the proper execution of all laws relating to the District, and for the proper administration of the affairs of the District[.]"  D.C. Code § 1-204.22.  Although the Mayor has some ability to delegate this authority, he may only do so "to any officer, employee, or agency of the executive office of the Mayor, or to any director of an executive department who may, with the approval of the Mayor, make a further delegation of all or a part of such functions to subordinates under his jurisdiction."  *Id.* § 1-204.22(6).  Furthermore, D.C. courts have recognized a separation-of-powers doctrine that bars the City Council from "'unduly interfer[ing]' with the executive role."  *Cropp v. Williams*, No. 03ca4569, 2003 D.C. Super. LEXIS 34, at *11 (D.C. Super. Ct. Aug. 1, 2003) (quoting *Morrison v. Olson*, 487 U.S. 654, 693 (1988)), *vacated on other grounds*, 841 A.2d 328 (D.C. 2004).  Under these provisions, the prosecution of a private AG suit under the CPPA violates the separation of powers and constitutes an impermissible delegation of the Mayor's exclusive responsibility "for the proper execution of all laws relating to the District" under D.C. Code § 1-204.22; *cf. Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 778 n.8 (2000) (holding that *qui tam* plaintiffs have Article III standing, but expressly reserving judgment on the question "whether *qui tam* suits violate Article II [of the U.S. Constitution], in particular the Appointments Clause of § 2 and the 'take Care' Clause of § 3").

1083979v1

## CONCLUSION

For the foregoing reasons, the Court should grant judgment on the pleadings in favor of

Merck.

Dated:  February 6, 2012                        Respectfully submitted,


                                                */s/ Dorothy H. Wimberly*
                                                Phillip A. Wittmann, 13625
                                                Dorothy H. Wimberly, 18509
                                                STONE PIGMAN WALTHER
                                                WITTMANN L.L.C.
                                                546 Carondelet Street
                                                New Orleans, LA 70130

                                                Douglas R. Marvin
                                                WILLIAMS & CONNOLLY LLP
                                                725 Twelfth St., N.W.
                                                Washington, DC 20005

                                                John H. Beisner
                                                Jessica Davidson Miller
                                                SKADDEN, ARPS, SLATE, MEAGHER &
                                                FLOM LLP
                                                1440 New York Avenue, N.W.
                                                Washington, DC 20005

                                                ATTORNEYS FOR MERCK SHARP &
                                                DOHME CORP.

16

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing memorandum has been served on Liaison Counsel, Russ Herman, Phillip Wittmann, and Ann Oldfather, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8C, on this 6th day of February, 2012.

*/s/ Dorothy H. Wimberly*
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361
dwimberly@stonepigman.com

Defendants' Liaison Counsel

1083979v1