UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re:  VIOXX®PRODUCTS LIABILITY LITIGATION | MDL 1657<br>SECTION L<br>JUDGE FALLON<br>MAG. JUDGE KNOWLES |

THIS DOCUMENT RELATES TO:

*Cases identified on Exhibit A*


### MEMORANDUM IN SUPPORT OF MOTION FOR EXTENSION OF TIME TO DISCLOSE GENERAL CAUSATION EXPERTS AND MOTION TO COMPEL DELIVERY OF THE VIOXX CONCORDANCE DATABASE

The undersigned asks this court for an extension of time to file generic causation expert reports due to the inability to access materials that should be available in the Vioxx Depository, and requests that the Court establish a date certain for the PSC to deliver the Vioxx Concordance Database (with images) that the PSC has promised since January 18, 2012.

The undersigned and her staff visited the Vioxx Depository at Herman, Herman, Katz & Cotlar, LLP, from January 18-20, 2012.  Although the Depository does contain physical copies of third party productions, depositions, exhibits, FDA production, and binders containing selected important documents, it contains no hard copies of any documents referred to as the "Merck Production."  The Merck Production was described as any and all documents produced by Merck in response to written discovery, court order, or deposition requests, *including* work done by the PSC relating to the science case, adverse events, expert discovery, etc.  The Merck Production is contained *only* on external hard drives and CDs.

The PSC has repeatedly represented that all Merck Production (and other case materials) has been imaged, indexed and organized through its Vioxx Concordance database.  On January

18, 2012, Mr. Herman informed us that Seeger Weiss maintained the actual Concordance database with all imaged Vioxx documents. This database contains electronic images of the entire Merck Production, optical character recognition (OCR) of all Merck Production for full-text searching, and document-specific coding performed by the PSC for the benefit of all MDL Plaintiffs. Mr. Herman also informed us that the database was being copied for us while we were at the Depository, and we would provide the copy of the complete database, along with all coding, OCR and images, on an external hard drive that we could take with us when we left the Depository. Mr. Herman explained that, because he was giving us the entire database, we could not access it while we were there since his staff was loading the database text coding and OCR without images to the Vioxx Depository Computer, from which it would be copied for us, together with all images.

     The Manager of the Vioxx Depository (who was available by phone during our stay), Penny Herman Grisamore, informed us that the loading and copying process had been started four (4) days prior to our visit, and that she did not know how much longer it would take. It turned out that it was never finished during our work session, and it was not even fifty percent (50%) completed when we returned to Louisville on January 20, 2012. As a result, we were unable to access any part of the database from the Vioxx Depository Computer during our visit to the Depository since it was locked for loading and copying the entire time. Due to various technical problems, Mr. Herman's office was unable to provide us with a workable copy of the database when we left. We were assured we would receive a copy the following Monday.

     Consequently, the sole means of exploring the Merck Production available to me and my staff during our pre-planned visit was an index prepared by Ms. Herman Grisamore, who told us that she maintained the index as a filing tool rather than a practical document for searching

within the Depository. Indeed, while we are able to do much more with the index than we ever could have done without it, there were many areas in which it was inadequate for search purposes, and extensive amounts of materials that were not indexed at all.

No criticism is meant of Ms. Herman Grisamore – who was quite candid that her Index was never meant for more than an internal filing tool, but it is necessary to point out what we were faced without any database detail from which to conduct our searches. There was *literally no means* of searching the dozens of external hard drives and CDs that constitute the Merck Production. For example, one external hard drive that contained over 50 GBs of information and thousands upon thousands of documents was described on the Index as "Custodial Files of John Doe" with no further description. When the drive was opened to view its files, each file was named only by bates number, which provides no information about contents. Each file needed to be opened, and only then did we find some critically important adverse event MedWatch forms. This drive was only one of dozens and dozens of drives, and most of these hard drives contain 250 to 500 GB of data. What's more, upon announcement of the settlement in 2007, Mr. Herman's staff ceased maintaining even the Index, and there are bookshelves of unopened, unmarked, unnamed, and unindexed hard drives and materials. As a result, we did what we could during the two day visit, and anxiously awaited the Concordance Database so that we could begin gathering what our experts needed.

For personal reasons, Ms. Herman Grisamore was unavailable the week following our Depository visit, and on January 23, 2012, we were told to obtain the Concordance database directly from Seeger Weiss. After numerous attempts, we are still today without a copy of the Concordance database or even a date by which we are assured to receive it. Seeger Weiss reported that its technical staff had been running out of room on its server, and because Vioxx

was no longer an "active case," the entire Vioxx database was removed from the server by an outsourced contractor. During the backup for the removal, all images were excluded to save space. Realizing that the database would not be useful if it contained no images (and how would anyone know where to find them in the Depository?) personnel from Seeger Weiss have informed us that they have copied or are copying all the images back onto the database, where they will supposedly link back up to the text coding. The promised delivery date has been pushed back repeatedly, and we are now at the point where Seeger Weiss won't even answer our last email of Friday, February 10, 2012. *See* email exchanges at Exhibit B.

It has now been nearly a month since our visit to the Vioxx Depository, and the promise of receipt of the Seeger Weiss Vioxx Concordance Database has been an open issue since that time. We have followed up extensively, via phone and email, with Mr. Seeger and his staff. *See* Exhibit B. We have advised Mr. Seeger and his staff that our deadline to file an expert report in the VTE cases is slightly less than three months away.

The undersigned believed that the visit to the Depository would provide the information gathered by the PSC which is now required by the experts with whom we are working. That was not the case, as *nothing* definitive could be obtained due to the inaccessibility of the Depository's database indexing and coding during our entire visit. Despite our best efforts, we have been unable to obtain the Concordance database since then.

The undersigned has been spending hours with experts to develop the required proof in the VTE cases. However, each expert has the same request – they need the base data. Unless and until we receive indexed access to raw data from Merck's clinical and other trials, Merck's internal adverse event reports and analysis, MedWatch reports and the like, these Plaintiffs are seriously disadvantaged in establishing the VTE signal for Vioxx users in Merck's clinical trials.

Nor can we refute Merck's experts, Drs. Crowther and Kress, who do have access through Merck to whatever data they request.

It is also worth noting that preliminary review shows evidence that peripheral thrombotic events were markedly increased for Vioxx users in certain clinical trials. Although discovery can be (and will be) propounded to Merck for this information, it is anticipated that Merck will argue that it has already produced the data, and we will be in no position to refute that claim, and at the same time we will not be able to find that production in the Depository where it is supposed to reside. The Court and counsel were assured that the PSC-reviewed and coded materials were available on a "24/7" basis. That has not been our experience.

Accordingly, we ask that the Court compel delivery of a complete copy of the Vioxx Concordance Database, with images (in .tif format), load files (.DAT files), and OCR files (.log files) by a date certain. Plaintiffs expected to have almost four months (actually 16 weeks) from the date of their visit to the Depository until the expert report was due; they ask the Court to establish a new due date of the VTE general causation expert reports, set at four months from the date when a usable and complete copy of the Vioxx Concordance Database is delivered to the undersigned.

For the foregoing reasons, the Court is respectfully requested to enter the tendered Order.

            Respectfully submitted,

            /s/ Ann B. Oldfather_____
            Ann B. Oldfather
            KBA Bar #52553
            Liaison Counsel/Lead Counsel
            OLDFATHER LAW FIRM
            1330 S. Third Street
            Louisville, KY   40208
            502.637.7200
            502.637.3999  (fax)
            aoldfather@oldfather.com