# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
|  | : | MDL NO. 1657 |
| IN RE: VIOXX | : |  |
|     PRODUCTS LIABILITY LITIGATION | : | SECTION: L |
|  | : |  |
|  | : | JUDGE FALLON |
|  | : | MAG. JUDGE KNOWLES |

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . :

**THIS DOCUMENT RELATES TO:** *Goldhaber Research Associates, LLC v. Tommy Jacks, et al.*, Case No. 07-2062

## ORDER & REASONS

Currently pending before the Court is Plaintiff Goldhaber Research Associates, LLC ("Plaintiff Goldhaber")'s Motion for Summary Judgment. The Court has reviewed the briefs and the applicable law and now issues this Order and Reasons.

**I.    Background**

This case arises out of a dispute over billing for expert witness services. Plaintiff is an LLC and its principal member is Gerald Goldhaber, who holds himself out as an expert in the field of warnings and safety communications. Defendants Tommy Jacks, P.C. ("Defendant Jacks") and Blizzard McCarthy & Nabers, LLP, ("Defendant Blizzard") are law firms that were involved in the Vioxx personal injury litigation pending in this MDL and in other courts. The parties agree that beginning in March 2005, Defendant Jacks retained Plaintiff Goldhaber to consult regarding the adequacy or lack of warnings by Merck regarding the potential for stroke or heart attack from Vioxx use. Five invoices were issued for those initial services, and full

payment totaling $44,861.25 (including an $8,500 retainer) was made on those invoices.

The parties also agree that in or about May, 2006, an attorney from Defendant Jacks arranged a meeting between an attorney from Defendant Blizzard and Mr. Goldhaber to discuss whether Mr. Goldhaber would serve as an expert witness in a trial. The parties submit affidavits disputing the content of that meeting and disputing whether any agreement was reached regarding further work by Mr. Goldhaber.

However, Mr. Goldhaber continued to perform Vioxx-related work. All in all, Plaintiff Goldhaber submitted four additional invoices to Defendant Jacks. First, Plaintiff Goldhaber submitted an invoice dated May 18, 2006 to Defendant Jacks for $28,708.72. Then, two months later, Plaintiff Goldhaber submitted three more invoices to Defendant Jacks, dated July 24, 2006, July 28, 2006, and August 3, 2006, seeking an additional $127,797.50 for 263.50 hours of reviewing Vioxx trial and deposition transcripts. The four invoices total $156,506.22.

On August 30, 2006, three and a half months after the May 18 invoice and five weeks after the July 24 invoice, an attorney from Defendant Jacks sent Plaintiff Goldhaber a letter and an email regarding the invoices. The letter and email stated that:

> We've received three invoices from you in recent weeks totaling almost $128,000, apparently for reading Vioxx trial transcripts. These are in addition to an earlier bill for $28,708.72.
> I had assumed Ed Blizzard had asked you to do this work in anticipation of his upcoming MDL trial, and had been forwarding these bills to him for payment. Ed advised me today that he hasn't talked to you since he met with you in May and that he had no idea you were doing this work.
> I also called Joe Alexander in Richard Mithoff's office, and Joe said that he hadn't had any communications with you in recent months either.
> For my own part, I haven't spoken with you or anyone in your office since I helped set up your meeting with Ed in early May.
> Please stop working immediately. Richard Mithoff and I have no trials set and no hope of getting any trials set any time in the next 12 months. Ed Blizzard does have a trial coming up in the MDL but apparently has not asked you to be an

expert witness in that trial.

(Rec. Doc. 44690 at 23, 25).

Email communications between Plaintiff Goldhaber and Defendant Jacks ensued, in which Plaintiff pursued payment for the completed work. Counsel for Plaintiff Goldhaber sent a demand letter dated October 24, 2006 seeking immediate payment of $156,506.22. Defendant Jacks responded with a letter dated October 31, 2006, stating that "[a]ny work Dr. Goldhaber did after [the May 1 meeting] was not done for me or my law firm, or at our request, or with our authority or permission." The record does not disclose any communications between Plaintiff Goldhaber and Defendant Blizzard.

Plaintiff filed suit in the United States District Court for the Southern District of New York seeking the unpaid $156,506.22.[1] Defendants answered, denying liability and denying that they failed to pay for any expert witness services that Defendants actually requested. The case was transferred by the Judicial Panel on Multidistrict Litigation to this Court.

## II.    Law and Analysis

Plaintiff Goldhaber moves for summary judgment on its claim that Defendants failed to pay an "account stated." Under New York law,[2] a claim on an "account stated" requires "an agreement between the parties to an account based upon prior transactions between them." *LeBoeuf, Lamb, Greene & MacRae, L.L.P. v. Worsham*, 285 F.3d 61, 64 (2d Cir. 1999) (citations omitted). "Recovery on a claim for account stated is permitted on the theory that the parties

---

[1]The Complaint states the amount as $163,646.22. However, the motion for summary judgment and associated materials seek only $156,506.22.

[2]Defendants do not dispute that New York law applies.

have, by their conduct, evidenced an agreement upon the balance of an indebtedness." *Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A.*, 244 F.R.D. 204, 216 (S.D.N.Y. 2007) (quotation omitted). The elements of a claim for an account stated are: "(1) an account was presented; (2) it was accepted as correct; and (3) debtor promised to pay the amount stated." *IMG Fragrance Brands, LLC v. Houbigant, Inc.*, 679 F. Supp. 2d 395, 411 (S.D.N.Y. 2009) (quotation omitted). "The second and third requirements (acceptance of the account as correct and a promise to pay the amount stated) may be implied if a party receiving a statement of account keeps it without objecting to it within a reasonable time or if the debtor makes partial payment." *Id.* (quotation omitted). "[T]he question of reasonableness almost always is for the jury where the question is whether the alleged debtor retained a statement of account without objecting with a reasonable time...." *Genuity Solutions, Inc. v. Nortel Networks, Inc.*, No. 02 Civ. 7883, 2002 WL 31802321, at *1 (S.D.N.Y. Dec. 13, 2002); *see also Reisman, Peirez & Reisman, L.L.P. v. Gazzara*, 839 N.Y.S. 2d 436, 2007 WL 949436 (N.Y. Sup. Ct. Mar. 30, 2007) ("Whether, under the circumstances of this case, a delay of five months before challenging the statement of account was reasonable, is a question of fact."); *but cf. Shea & Gould v. Burr*, 194 A.D. 2d 369 (N.Y. App. Div. 1993) (holding that "failure to object to the unitemized bill for a period of five months suffices to give rise to an account stated, especially in view of the partial payment made"). "[A]n account stated claim fails where any dispute about the amount is shown to have existed." *Orthopedic Spine Care of Long Island, P.C. v. Ingardia*, 2011 WL 3841439, at *3 (E.D.N.Y. Aug. 25, 2011). "A cause of action alleging an account stated cannot be utilized simply as another means to collect under a disputed contract." *Grinnell v. Ultimate Realty, LLC*, 832 N.Y.S. 2d 244, 245 (N.Y. App. Div. 2007).

Plaintiff argues, with support from competent summary judgment evidence, that it had a running account for expert services with Defendant Jacks, that Defendant Jacks made partial payments on that running account, and that Defendants received additional invoices and failed to timely object or to make any payments. Plaintiff also argues that Defendants continued to forward documents to Mr. Goldhaber for review.[3] Therefore, Plaintiff argues that there is no genuine dispute of material fact on the elements of a prima facie case for an account stated. Furthermore, in reply, Plaintiff argues that Defendants have not submitted any evidence that they timely disputed the amount or accuracy of the invoices.[4]

Defendants oppose summary judgment on several grounds. First, Defendant Blizzard argues that because the disputed invoices were presented only to Defendant Jacks, the first element of Plaintiff's prima facie case, presenting the account, fails as to Blizzard. The invoices in the record do not mention Defendant Blizzard and there is no record of any correspondence directly between Plaintiff Goldhaber and Defendant Blizzard. The parties have not cited any applicable authority addressing whether a plaintiff must present an account directly to a defendant or whether an account can be forwarded to a defendant by an intervening party. The Court's own research suggests that an account must be presented directly to any defendant from

---

[3]The record reflects only a set of computer disks sent to Plaintiff Goldhaber on April 1, 2006, before the alleged May 1 meeting.

[4]To the extent that Plaintiff argues that Defendants partially paid some of the disputed invoices and therefore accepted the amounts as correct, the record does not support that argument. Although Defendants paid the previous invoices, the record is devoid of any evidence that Defendants paid any amounts pursuant to the disputed invoices. *See Melito & Adolfsen, P.C. v. Travelers Indem. Co.*, 872 N.Y.S. 2d 692, 2008 WL 4308287, at *3 (N.Y. Sup. Ct. July 24, 2008) ("Proof that defendants paid some bills but not others does not establish plaintiff's *prima facie* case.").

whom recovery is sought on an account-stated theory. *See Key Items, Inc. v. Ultima Diamonds, Inc.*, No. 09 Civ. 3729(HBP), 2010 WL 3291582, at *11-12 (S.D.N.Y. Aug. 17, 2010) ("Because there is no allegation that the statement was sent to the Global Defendants, any failure to object to its terms cannot impose liability on a theory of account stated."). Accordingly, the motion is denied as to Defendant Blizzard.

Second, Defendant Jacks argues that summary judgment is inappropriate because there are genuine disputes of fact. Specifically, Defendant Jacks argues that the August 30, 2006 letter and email raise a genuine issue of material fact on whether Defendant Jacks accepted an account as correct and promised to pay it. Defendant Jacks contends that as soon as it realized that neither Defendant had requested or authorized the work reflected in the four disputed invoices, it promptly informed Plaintiff of that fact and instructed him to cease work immediately. Therefore, Defendant Jacks argues that it timely disputed the amount Plaintiff seeks which precludes summary judgment on an account stated. In addition, both Jacks and Blizzard argue that they never asked or authorized Mr. Goldhaber to do any further work, and thus challenge the debt itself.

The record is replete with genuine disputes of material fact that preclude summary judgment at this time. The parties genuinely dispute whether at the May 1, 2006 meeting, Defendant Blizzard instructed Mr. Goldhaber to undertake additional work, such as spending over two hundred hours at $485.00 per hour reviewing transcripts in anticipation of testifying at a Vioxx trial. There are additional genuine disputes of fact as to whether, after Plaintiff submitted invoices for that work, Defendants timely objected or protested to the work done or the amounts invoiced. Although in reply Plaintiff Goldhaber argues that the August 30, 2006

letter and email do not dispute the invoices, those materials raise a factual issue as to whether Defendant Jacks timely disputed whether any of the work recorded in those invoices was authorized and whether any amount whatsoever is owed. Moreover, the August 30, 2006 was sent three and a half months after the first disputed invoice and four weeks after the last disputed invoice. Whether retaining the invoices for these periods constitutes and implied agreement to pay is a fact question.

In short, this case is at its core a contract dispute. "A cause of action alleging an account stated cannot be utilized simply as another means to collect under a disputed contract." *Grinnell*, 832 N.Y.S. 2d at 245. Genuine issues of fact regarding the contractual relationship between the parties preclude summary judgment at this time.

## IV. CONCLUSION

For the foregoing reasons, IT IS ORDERED that Plaintiff Goldhaber's motion is DENIED.

New Orleans, Louisiana, this 16th day of February 2012.

                                                                                  _____
                                                                                  UNITED STATES DISTRICT JUDGE