# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **In re: Vioxx** | * | **MDL Docket No. 1657** |
| | * | |
| **PRODUCTS LIABILITY** | * | **SECTION L** |
| **LITIGATION** | * | |
| | * | **JUDGE FALLON** |
| **This document relates to:** | * | |
| | * | **MAGISTRATE JUDGE** |
| *Cases identified on Exhibit A* | * | **KNOWLES** |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

## DEFENDANT MERCK'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION SEEKING ENTRY OF A COMPREHENSIVE SCHEDULING ORDER FOR "OTHER INJURY" AND "PTO 29" CASES[1]

Defendant Merck Sharp & Dohme Corp. ("Merck") has asked this Court to enter a scheduling order applicable to cases alleging an injury other than a VTE.[2] (For the VTE cases, a Motion for Summary Judgment is pending.) It is surprising that such a simple request would be controversial. As the Court well knows, a scheduling order typically issues relatively early in the case, and such orders are considered "a critical element of case management." *See* Manual on Complex Litigation (Fourth) § 11.212 (2004).[3] Given the current posture of this case, the time is ripe for such an order to issue here.

---

[1]    The list of cases subject to Merck's request has been revised and is attached as Exhibit B. Merck withdraws its original motion as to three plaintiffs that were identified on the initial Exhibit A: J.C. Bunch (Case No. 2:06-cv-08827); Joanne Eldridge (Case No. 2:05-cv-0447); John Stafisz (Case No. 2:06-cv-0765).

[2]    Currently, there are about 75 personal injury cases pending in this MDL that remain to be litigated.

[3]    As explained in the Manual, scheduling orders "help ensure that counsel will timely complete the work called for by the management plan." Such orders, whether issued in routine or complex cases, set basic deadlines for discovery activities, the completion of discovery, and motions practice. *Id.*

In support of this motion, Merck further states as follows:

1.      As lead counsel for the PSC II, Ms. Oldfather has filed the primary opposition brief in response to Merck's motion.  The additional briefs that were subsequently filed on behalf of some individual plaintiffs largely parroted Ms. Oldfather's brief.[4]  Accordingly, even though Ms. Oldfather is not counsel of record for any case that is the subject of Merck's motion, this Reply Memorandum will primarily address the points presented in her memorandum ("Oldfather Memorandum").[5]

2.      Plaintiffs appear to suggest that the time for actively litigating these remaining cases has only just now begun.  They claim that this "MDL has largely been resolved in phases," and "[g]iven the resolution of many portions of this MDL, the personal injury cases and their resolution *are **now** one of the Court's primary points of focus*."  Oldfather Mem. at 1 (emphasis added).

3.      As evidenced by this Court's orders, however, it is clear that active litigation on the personal injury cases outside of the settlement commenced many years ago.  We should now be looking towards an ultimate conclusion of the process, not attempting to craft a new beginning.  More specifically:

   a.  On ***April 28, 2009***, the Court issued an Order appointing Ann Oldfather to serve as Liaison Counsel for PTO 28 cases outside the settlement.  (*See* PTO 42.)

---

[4]      In addition to a general opposition brief filed by Ms. Oldfather, Merck has received opposition memoranda on behalf of the following individual plaintiffs:  Bobby Moxter (2:05-cv-06535); James Nestor (2:09-cv-07648); Walter Roach (2:10-cv-0868); Dennis Harrison (2:07-cv-00905); Velma Dunn (2:09-cv-02413); and Akosua Akyaama (2:02-cv-08080).

[5]      Although the Oldfather Memorandum asserts that during "the progression of this MDL, the exact delineations of leadership responsibilities has been overlapping and somewhat confusing," that is only because Liaison Counsel keeps continuing to blur the lines.  This Court has issued several orders clearly allocating specific cases to either the PSC I or the PSC II.  *See* PTO 56 (entered June 14, 2010).

1085804v1

b. On *June 25, 2009*, the Court issued an Order stating, *inter alia*, the "Court finds that it is now appropriate to turn to the resolution of these cases." The Court further stated that it was soliciting applications for membership on a Committee for cases outside the Resolution Program. "The main criteria for membership in the PSC will be (a) *willingness and availability to commit to a time-consuming project*; (b) ability to work cooperatively with others; (c) professional experience in this type of litigation; and (d) *willingness to commit the necessary resources to pursue this matter.*" *See* PTO 42 (entered June 25, 2009) (emphasis added).

c. On *August 20, 2009*, Court lifted the stay on discovery as to PTO 28 cases and PTO 29 cases that had served *Lone Pine* reports. In that same Order, the Court instructed all parties regarding the PSC II—that "the time and resources of that Committee should primarily be focused on investigating and marshaling issues regarding general causation."

d. On *July 22, 2010*, Merck sought entry of a comprehensive scheduling order that would apply to all remaining personal injury cases. *See* Merck's Cross-Motion and Incorporated Memorandum Seeking Entry of a Comprehensive Scheduling Order for the Remaining Personal Injury Cases. (Doc No. 47313)

e. On *March 16, 2011*, the Court issued an Order lifting any remaining discovery stays as to all pending personal injury cases. (Rec. Doc. 62698).

4.      In sum, discovery has been open as to PTO 28 and PTO 29 cases since August 20, 2009 – about 2 ½ years; and, as to the remaining PTO 43 cases for almost one full year.[6] Moreover, PSC II was specifically charged with marshalling general causation evidence as to the "other injury" claims as of August 20, 2009 – again, about 2 ½ years ago.

5.      In opposing the entry of a scheduling order, Plaintiffs essentially argue that everyone should wait until Ms. Oldfather marshals her response to Merck's pending summary judgment motion on certain VTE claims. For her part, Ms. Oldfather argues that she is currently busy "handling the gathering of general causation proof for all of the VTE cases," *id.*, that she "in her role as the 'PSC II' should be allowed to complete this discovery," *id. at 2*, and that Merck's request for a scheduling order should be deferred until she "has an opportunity to gather

---

[6]      Of the 75 remaining personal injury cases, 53 fall under either PTO 28 or PTO 29.

1085804v1

expert proof on general causation for these [non-VTE] cases," *id.*  Together, plaintiffs urge this Court to put cases on ice until one lawyer can get around to dealing with them.[7]

6.      As an initial matter, Ms. Oldfather is not counsel of record for any of the cases that are the subject of this motion.  There are at least fifteen (15) other attorneys and law firms who are counsel of record for these remaining cases.  Those attorneys should be actively participating in the litigation of their cases.  *See, e.g.,* PTO 46 ("As for case specific discovery, the individual attorneys of record … shall be responsible for defending those cases").  If the plaintiffs who filed these cases wish to pursue them, they should marshal their evidence, address threshold issues like general causation – a component of their case that they should have addressed even before filing their claim – and prosecute those cases pursuant to a schedule that will allow all of the parties in this litigation ( plaintiffs and defendant alike) to have some resolution.  The progress of this MDL should not turn on the availability of one single attorney.

---

[7]      Plaintiffs contend that the "deadlines proposed by Merck are simply too short given that this is the first time any scheduling order has been suggested for these particular plaintiffs or injuries."  Oldfather Mem at 2.  On the contrary, Merck sought entry of an appropriate scheduling order in 2010, and again in 2011.  *See* Jan 20, 2011 Letter from D. Marvin to Judge Fallon (setting out proposal for addressing remaining personal injury cases) (attached as Exhibit C).  It is unclear how anyone could now legitimately claim in 2012 that they had no notice that Merck wants a schedule.

1085804v1

## **CONCLUSION**

For the foregoing reasons, Merck's Motion should be GRANTED.

Dated:  February 24, 2012

Respectfully submitted,

 */s/ Dorothy H. Wimberly*
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana 70130
Phone: 504-581-3200
Fax:    504-581-3361

Defendants' Liaison Counsel

  —and—

Douglas R. Marvin
Eva Petko Esber
M. Elaine Horn
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Phone: 202-434-5000
Fax:    202-434-5029

Attorneys for Merck Sharp & Dohme Corp.

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Motion for Scheduling Order has been served on Liaison Counsel, Russ Herman, Phillip Wittmann by U.S. Mail and e-mail or by hand delivery and e-mail, upon Ann Oldfather by e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with PreTrial Order No. 8(C) in accord with the procedures established in MDL 1657 on this 24th day of February, 2012.

> */s/ Dorothy H. Wimberly*
> Dorothy H. Wimberly, 18509
> STONE PIGMAN WALTHER
> WITTMANN L.L.C.
> 546 Carondelet Street
> New Orleans, Louisiana  70130
> Phone:  504-581-3200
> Fax:      504-581-3361
> dwimberly@stonepigman.com

6

1085804v1