UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: VIOXX®PRODUCTS LIABILITY LITIGATION | MDL 1657 SECTION L JUDGE FALLON MAG. JUDGE KNOWLES |

THIS DOCUMENT RELATES TO:

*All Cases*

### REPLY FOR VTE PLAINTIFFS BY PLAINTIFFS' LIAISON COUNSEL ON MOTION TO COMPEL DELIVERY OF THE VIOXX CONCORDANCE DATABASE

Plaintiffs' original Liaison Counsel (Mr. Herman) and the Plaintiffs Steering Committee have opposed the Motion to Compel Delivery of the Vioxx Concordance Database. Mr. Herman and the PSC affirmatively state that they "take no position" with respect to the companion Motion for an Extension of Time to Disclose General Causation Experts for VTE Plaintiffs. Mr. Herman and the PSC do, however, spend considerable time mounting a perceived- to-be- necessary defense of the PSC's efforts over the years, and several representations are made regarding the sharing of work efforts which are not, at least in the undersigned's view, accurate. However, neither Mr. Herman nor any member of the PSC refutes the material facts now affecting these VTE Plaintiffs:

- The Vioxx Concordance Database created as part of the common benefit of this MDL, and to be maintained by the PSC, **is not currently usable.**

- The Vioxx Concordance Database created and to be maintained by the PSC was promised to the undersigned, complete with images, by Monday, January 23, 2012.

- The last communication to Seeger Weiss, seeking (again) a date certain for the delivery of the Vioxx Concordance Database, has gone unanswered (s*ee* e-mail of February 10, 2012, attached at Ex. B, Mo.Ext.Time and Com'l Delivery [Rec Doc 63669]).

- The Merck production in the Vioxx Depository was described as containing "dozens of external hard drives and CDs." A cursory review of Ms. Herman Grismore's Index (recognizing that it was meant by her to be used as a filing tool, and not as an accurate depiction of detail or production), reflects that there are 153 external hard drives and 1,011 CDs and DVDs. External hard drives reviewed by this counsel in January contained 250 to 500 GB of data, so it is a conservative estimate that there are literally millions of gigabytes on thousands of individual media, each of which would have to be individually loaded and/or attached to a computer.

Mr. Herman's and the PSC's Response, when viewed without reference to extraneous material, counters these undisputed facts in **only** two ways:

> "Because very few counsel was (*sic*) requesting access to the depositories after the global settlement [footnote omitted] the PSC elected not to expend substantial dollars to purchase software updates and additional hardware to keep the Concordance database accessible on a 24/7 basis. As a result, Ms. Oldfather complains that 2 ½ years after the global settlement, she could not have immediate access to the Concordance Database of the PSC."

Mo.Ext.Time and Com'l Delivery at 3.

2

Mr. Herman and the PSC's second reason offered in opposition to the undersigned's Motion for a date certain for delivery of the Vioxx Concordance Database, was the following, presumably based upon (erroneous) information provided to Mr. Herman by Merck[1]:

> Alternatively, Ms. Oldfather could take the electronic data produced by Merck to the PSC, which she has copies (*sic*), and create or establish a depository at her own expense.

Mo.Ext.Time and Com'l Delivery at 4.

First, Mr. Herman has consistently and regularly represented that the entirety of the common benefit work maintained in the New Orleans Vioxx Depository is available both on an immediate basis, and on 24/7 access. After Mr. Herman's statements in chambers on January 5, 2012, and in Court, the undersigned and her staff immediately contacted Mr. Herman and requested an opportunity to visit the document depository. *See* e-mail from Megan Hastings to Russ Herman of January 5, 2012, attached at Exhibit A. Mr. Herman immediately accepted the suggested dates and at no time (either then or thereafter) was any request made to push the visit back in order to give Mr. Herman and his staff time to prepare. Multiple e-mails followed, many of which discussed the Concordance Database and the fact that it would be both available and accessible during the visit by the undersigned's team. Many of those e-mails were (over the undersigned's objection) copied to Judge Fallon by Mr. Herman and, given that, are also attached at Exhibit A. Mr. Herman promised delivery on January 23, 2012, so it is hardly fair to paint the undersigned as demanding "immediate" access.

---

[1] This statement is based on the fact that the filing by Merck was a few hours <u>after</u> Mr. Herman's filing. In its Response, Merck makes the erroneous statement that the undersigned already has copies of all of the electronic data produced by Merck during this litigation. Mr. Herman was apparently aware of Merck's position before his filing, and he is willing to advance Merck's specious argument that six hard drives delivered to the undersigned in 2006 constitute the entire production in this MDL.

3

The implication in Mr. Herman and the PSC's opposition that the Concordance Database no longer functions on the PSC's hardware and software is the *first* suggestion of such a problem. The *only* explanation previously offered to the undersigned was that Seeger Weiss had decided that the case was now "inactive" and had deleted the imaged materials from its server, a deletion that Seeger Weiss repeatedly represented could be, and was being, reversed.

As for Mr. Herman's and the PSC's suggestions that the undersigned could "create or establish a Depository at her own expense," the undersigned (a) does not begin to have all, or even substantially all, of the production made by Merck and other parties during and throughout the MDL process, and (b) the undersigned has never been charged with this obligation, nor submitted billings for or been compensated for, performing these duties.

Mr. Herman and the PSC need to provide definitive information regarding the status of the Vioxx Concordance Database and associated image, load, and OCR files. In order for the remaining personal injury cases to be prepared for trial, all of these Plaintiffs need to know what part of the common benefit materials will actually be available to them and to their counsel, and how much of this wheel will have to be reinvented.

The Affidavit of Colleen Shields, a paralegal and technical specialist at the Oldfather Law Firm, is attached at Exhibit D.

The balance of this Reply, while not material to the issue before the Court, is necessary to simply keep the record straight.

Mr. Herman himself, and his staff, were uniformly polite, courteous and, to the extent they could be, helpful during the undersigned's visit to the document Depository. Mr. Herman also provided excellent food.

At no point has the undersigned attempted to lay blame or accuse. The undersigned is simply trying to deal with the current reality of the ability of the remaining Personal Injury Plaintiffs to utilize the common benefit work already done in this case.

The undersigned is completely unaware of any materials prepared by the PSC or any of its committees with regard to deep vein thrombosis or venous effects of Vioxx. On February 1, 2012, Ms. Hastings asked Mr. Herman for just such material, and was told there were "no notes." *See* Ms. Hastings letter of February 1, 2012, with Mr. Herman's notes handwritten thereon. However, with the "new" news from Mr. Herman's representation in his Response that such work has been done, the undersigned has now asked Mr. Herman for that material. *See* letter to Russ Herman of February 29, 2012, attached as Exhibit B. Mr. Herman also promised to provide the names of the lawyers who served on all committees, but that has not yet been received.

The undersigned has willingly and promptly paid invoices submitted to her by Mr. Herman. *See* Exhibit C. No request for payment has been made by the PSC to compensate it for the current problems it is having with its Vioxx Concordance Database (nor would such a request be appropriate).

For the foregoing reasons, the undersigned urges the Court to enter an Order as tendered with the instant Motion, by which the Plaintiffs Steering Committee has a date certain on or before which it will provide to the undersigned a complete copy of the Vioxx Concordance Database, with images (.tif format) load files (.DAT files), and OCR files (.log files).

Respectfully submitted,

/s/ Ann B. Oldfather

Ann B. Oldfather
KBA Bar #52553
Liaison Counsel/Lead Counsel
OLDFATHER LAW FIRM
1330 S. Third Street
Louisville, KY   40208
502.637.7200
502.637.3999  (fax)
aoldfather@oldfather.com

## **CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Reply for VTE Plaintiffs by Plaintiffs' Liaison Counsel on Motion To Compel Delivery of the Vioxx Concordance Database has been served upon Liaison Counsel, Phillip Wittmann and Russ Herman, by U.S. Mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8(C), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 29th day of February, 2012.

/s/ Ann B. Oldfather

Ann B. Oldfather