## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

In Re:  VIOXX®PRODUCTS LIABILITY
LITIGATION

THIS DOCUMENT RELATES TO:

*All Cases*

MDL 1657
SECTION L
JUDGE FALLON
MAG. JUDGE KNOWLES

### REPLY FOR VTE PLAINTIFFS BY PLAINTIFFS' LIAISON COUNSEL ON MOTION FOR EXTENSION OF TIME TO DISCLOSE GENERAL CAUSATION EXPERTS

Merck has opposed the request for an extension of time to disclose general causation experts based first on the same arguments it presented when it objected to the four month period already allowed by the Court for Plaintiffs' efforts in this regard, namely the complaints that the undersigned has been dilatory.  Merck ignores the fact that it has, on at least two separate occasions, considered and rejected the idea of presenting any scheduling order in these remaining personal injury cases.  Merck decided, instead, to treat each of these cases individually and began the process of taking discovery in every single one of the remaining personal injury cases. Indeed, the *very first* effort made by Merck to impose a discovery deadline on these cases was by the "back door" method of filing its Motion for Summary Judgment.

The Court has heard and considered Merck's arguments regarding what might or might not have been done over the last years that this litigation has been pending, and in the face of those arguments granted Plaintiffs four months to develop the proof required to submit reports from general causation experts.  Indeed, significant portions of this litigation have continued throughout the judicial system, and Merck is no more prejudiced by this group of cases

potentially being the last group to clear the system than it would be if, for example, the Attorneys General cases were the last ones to be concluded.

The second basis of Merck's opposition is the erroneous assertion that the undersigned has already been provided the data she seeks.  In support of this assertion, Merck has filed for the first time a detailed index purporting to represent the contents of six external hard drives delivered to Ms. Oldfather on August 11, 2006.

These hard drives were, in fact, received by Ms. Oldfather and the group of attorneys in Kentucky with whom she was litigating a group of Vioxx cases.  The hard drives were described as containing "non-case specific universal document productions."  The index accompanying the letter consisted of eight pages with a total of less than fifty line entries.  *See* Letter of August 11, 2006, and attached two pages at end of Exhibit A, Merck's Opp. Mem. to Mot. for Ext. Time.

First, those six hard drives have been reviewed in connection with the undersigned's efforts to prepare these remaining cases.  Two of the six hard drives are no longer functional.  However, there was no point in seeking re-production of just those two hard drives, because the materials produced in the Kentucky cases did not begin to represent the entirety of the production in the MDL, nor had counsel been provided with the requests in response to which the materials were produced.  In short, there were absolutely no usable records because there was no representation from Merck as to what the materials did or did not represent.

Attached at Exhibit A is a list of the discovery responses as maintained by the P.S.C., sorted by date.  It is readily obvious that the production made by Merck in the Kentucky cases, whatever it was, cannot be said to represent the universe of materials produced in this litigation.

Second, in our Kentucky cases, we were working on FACTs database issues based on the knowledge that the P.S.C. and its committees were reviewing and analyzing the liability and causation cases.  *See* Exhibit B for examples of that work.

If Merck would like to produce a complete Concordance Database, with image files, of the entirety of its production in this litigation that would be helpful, once we knew the requests to which the material pertained.  All that would be missing at that point would be the hundreds of thousands of attorneys' hours of subjective coding that was performed on those materials by the (compensated) members of the Plaintiffs' Steering Committee and those other persons providing common benefit work.

The undersigned continues to make a legitimate and good faith effort to represent her clients and to provide Lead Counsel and Liaison Counsel services to the remaining Personal Injury Plaintiffs.  The reality of the current situation is that material that everyone thought would be readily available is not, in fact, available at all.

For these reasons, the undersigned requests the Court to enter the tendered Order, by which the due date for filing expert reports on general causation with regard to the VTE cases will be four months after delivery to the undersigned of a complete Vioxx Concordance Database from the P.S.C.

Respectfully submitted,
/s/ Ann B. Oldfather
_____
Ann B. Oldfather
KBA Bar #52553
Liaison Counsel/Lead Counsel
OLDFATHER LAW FIRM
1330 S. Third Street
Louisville, KY   40208
502.637.7200
502.637.3999  (fax)
aoldfather@oldfather.com

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Reply for VTE Plaintiffs by Plaintiffs' Liaison Counsel on Motion For Extension of Time to Disclose General Causation Experts has been served upon Liaison Counsel, Phillip Wittmann and Russ Herman, by U.S. Mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8(C), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 29th day of February, 2012.

/s/ Ann B. Oldfather
_____
Ann B. Oldfather