1  LAW OFFICES OF
   **CHAMBERS, NORONHA & KUBOTA**
2  2070 NORTH TUSTIN AVENUE
   SANTA ANA, CALIFORNIA 92705
3  (714)558-1400

4  GARY L. CHAMBERS, ESQ.
   ATTORNEY BAR NO. 86076
5  ATTORNEYS FOR PLAINTIFF, ROSIE ESCAMILLA

6

7

8              **UNITED STATES DISTRICT COURT**

9              **EASTERN DISTRICT OF LOUISIANA**

10
   In re: Vioxx                        ]  MDL Case No. 1657
11                                      ]  SECTION L
   PRODUCTS LIABILITY                   ]  JUDGE FALLON
12 LITIGATION                           ]  MAGISTRATE JUDGE KNOWLES
                                        ]
13 ***This document relates to***       ]  PLAINTIFF,   ROSIE   ESCAMILLA'S,
                                        ]  OPPOSITION  TO  DEFENDANT  MERCK
14 ***Escamilla, Rosie v. Merck & Co., Inc.*** ] SHARP  &  DOHME'S  MOTION  FOR
   **2:08-cv-03573-EEF-DEK**           ]  SUMMARY JUDGMENT; MEMORANDUM
15 ──────────────────────────────      ]  OF POINTS AND AUTHORITIES

16                                         Hearing: March 14, 2012
                                           Time: 9:00 a.m.
17

18        Plaintiff, ROSIE ESCAMILLA, respectfully submits the following opposition to Defendant,

19 MERCK, SHARP & DOHME's, Motion for Summary Judgment.

20 ///

21

22

23

24

25

26

27

28
                                    -1-

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**1.    INTRODUCTION.**

3        Plaintiff, ROSIE ESCAMILLA's (hereinafter "Plaintiff Escamilla"), husband (Robert

4    Escamilla) died of a heart attack after prolonged use of Vioxx for lower back complaints.  *See*

5    Exhibit 1 (Pertinent Medical Records showing use of Vioxx).  Plaintiff Escamilla brings this claim

6    for the wrongful death of her deceased husband.

7        Defendant, MERCK, SHARP & DOHME (hereinafter "Defendant Merck"), brings this

8    Motion for Summary Judgment on the single *meritless* contention that Plaintiff Escamilla cannot

9    establish "causation."   The contention is easily overcome by medical declaration that "use of

10   rofecoxib (Vioxx)...ultimately caused [Robert Escamilla] to have acute myocardial infarction which

11   then resulted in acute cardiopulmonary arrest and his subsequent death."    *See* Exhibit 2

12   (Supplemental Declaration of Dr. Gurudevan, M.D.).

13       Motion for Summary Judgment should be denied in its entirety.

14

15

**2.    STATEMENT OF FACTS.**

16       Dr. Swaminatha B. Gurudevan, M.D., declares as follows:

17       Robet Escamilla was a 50 year-old-man with a past medical history of hypertension and

18   hyerlipidemia who was employed as a troubleman with Southern California Edison.  He had a

19   longstanding history of lumbosacral disc disease and chronic low back pain for which he took

20   rofecoxib (Vioxx).  On the morning of 3/1/07, while working, he developed 2 episodes of prolonged

21   chest pain lasting 45 to 60 minutes requiring him to stop work and sit down to rest.  He had no prior

22   episodes of chest pain on earlier days and his chest pain continued while he was resting.

23       While his co-workers were making arrangements to take him to a hospital for medical

24   attention, he suddenly lost consciousness and was found to be both pulseless and apneic.  CPR was

25   started by two of his co-workers (names omitted) and 911 was called.  Upon arrival, the emergency

26   medical services crew connected a defibrillator to Mr. Escamilla, which revealed ventricular

27   fibrillation.  Mr. Escamilla was then given a 360J countershock using the defibrillator as well as 2

28

1  mg of IV epinephrine and 1 mg of IV atropine.  His rhythm then converted to asystole and despite

2  prolonged attempts at CPR while en route to the hospital, he passed away and was pronounced dead

3  at the Emergency Department at San Gabriel Valley Medical Center.  In summary, Mr. Escamilla

4  had two significant risk factors for coronary artery disease (hypertension and hyperlipidemia) and

5  had two episode of chest discomfort followed by an acute cardiolpulmonary arrest.

6       Mr. Escamilla suffered an acute myocardial infarction on 3/1/2007 that was complicated by

7  ventricular fibrillation and sudden cardiac death.  Mr. Escamilla, to a reasonable degree of medical

8  probability, suffered acute myocardial infarction because of his risk factors including hypertension,

9  hyperlipidemia, and ongoing use of rofecoxib (Vioxx) for long standing history of lumbosacral disc

10  disease and chronic low back pain.  The use of rofecoxib (Vioxx), *particularly in combination* with

11  Mr. Escamilla's other significant risk factors, to a reasonable degree of medical probability,

12  ultimately caused him to have acute myocardial infarction which then resulted in acute

13  cardiopulmonary arrest and his subsequent death.

14

15  **3.   STANDARDS FOR REVIEW.**

16       Fed. R. Civ. P. 56(a) states that the Court shall grant Summary Judgment only "if the movant

17  shows that there is no genuine dispute as to any material fact."  "It is not enough to move for

18  summary judgment...with the conclusionary assertion that the (opposing party) has no evidence to

19  provide his case." *CAL. PRAC. GUIDE: FED CIV. PRO. BEFORE TRIAL* (The Rutter Group 2007)

20  §14:135 citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).  The moving party has the duty to

21  demonstrate the "appropriateness of judgment as a matter of law." *Union Planter Nat. Leasing, Inc.*

22  *v. Woods*, 687 F.2d 117, 119 (5th Cir. 1982).  In making its determinations, "the court must consider

23  the facts presented and resolve all doubts in the light most favorable to the non-moving party."

24  *McPherson v. Rankin*, 736 F.2d 175, 180 (5th Cir. 1984).

25  ///

26

27

28

PLAINTIFF, ROSIE ESCAMILLA'S, OPPOSITION TO DEFENDANT MERCK SHARP & DOHME'S MOTION FOR
SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES

1  **4.     DEFENDANT MERCK'S MOTION IS PROCEDURALLY DEFECTIVE SINCE IT**

2  **IMPROPERLY RELIES SOLELY ON *LONE PINE* REPORTS AS A BASIS FOR**

3  **SUMMARY JUDGMENT.**

4      The *Lone Pine* report of Plaintiff Escamilla is not a sufficient basis for Summary Judgment.

5  The Court clarified its reasoning in enacting the *Lone Pine* requirement in this litigation, stating:

6          To ask a claimant to submit a report that says they have a condition,
        and the condition is caused by Vioxx - I'm not asking for a *Daubert*

7          report; I'm not asking for even a witness report; I'm not asking for
        someone to come forward and say, we're going to call this doctor as

8          a witness..I'm not looking for a report from somebody who the
        lawyer is going to call as a witness, I'm just saying to find out what

9          a viable claim is.  Hr'g Tr. (May 22, 2008) at 60 (*see* Merck's
        Motion, Ex. B).

10

11      As the Court made clear, *Lone Pine* reports in this litigation are not meant to act as an expert

12  report *per se*, nor were they meant to establish causation.  It was only intended as a discovery

13  disclosure for preliminary litigation of the pending cases.

14      Therefore, Defendant Merck's claim that Plaintiff cannot establish causation, purely based

15  on the *Lone Pine* report is without foundation and is in violation of *Celotex*, *supra*, and *Union*

*Planter Nat. Leasing, Inc.*, *supra*.  Motion for Summary Judgment should be denied.

16

17  **5.     MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED SINCE THERE IS,**

18  **AT A MINIMUM, A GENUINE FACTUAL DISPUTE AS TO "CAUSATION".**

19      Defendant Merck's only claim for Summary Judgment is that Plaintiff Escamilla cannot

20  establish causation pursuant to PTO 29.  The pre-trial order, according to Defendant Merck's own

21  restatement, requires that Plaintiff Escamilla show "to a reasonable degree of medical probability

22  that the plaintiff suffered an injury and that Vioxx caused the injury."  See Defendant Merck's

23  moving papers at page 2, paragraph 1, and PTO 29 ¶¶ II.A.2, II.A.4, II.A.7.

24  ///

25

26

27

28

-4-

1    Even Defendant Merck admits (in its response to Opposition of Liaison Counsel and Lead

2  Counsel for Certain Cases to Defendant MERCK & CO., INC'S use of *Lone Pine* Reports as a Basis

3  for Summary Judgment) that Plaintiff Escamilla only need show there was a condition and that

4  condition was caused by Vioxx.[1] See Defendant Merck's Response to Liason Counsel Oldfather's

5  Opposition to Use of *Lone Pine* Reports at paragraph 3.

6    The Declaration of Dr. Swaminatha B. Gurudevan, M.D., sufficiently establishes causation

7  and Motion for Summary Judgment should be denied. Specifically, Dr. Gurudevan opines that

8  Vioxx was a substantial factor in causing Robert Escamilla's acute cardiopulmonary arrest and his

9  subsequent death. Dr. Gurudevan declared that:

10    The most common cause of ventricular fibrillation arrest in the
     United States today is plaque rupture leading to coronary thrombosis
11    and acute myocardial infarction. It is further my opinion that Mr.
     Escamilla, to a reasonable degree of medical probability, suffered
12    acute myocardial infarction because of his risk factors including
     hypertension, hyperlipidemia, and ongoing use of rofecoxib (Vioxx)
13    for long standing history of lumbosacral disc disease and chronic low
     back pain. Based on my education, training, and experience, and
14    based on my review of medical literature, use of rofecoxib (Vioxx)
     increases risk of coronary events in at-risk patients, including
15    increased risk of myocardial infarction, cardiopulmonary arrest and
     sudden cardiac death. **The use of rofecoxib (Vioxx),** ***particularly in***
16    ***combination*** **with Mr. Escamilla's other significant risk factors,**
     **to a reasonable degree of medical probability, ultimately** <u>**caused**</u>
17    **him to have acute myocardial infarction which then resulted in**
     **acute cariodpulmonary arrest and his subsequent death.** (Bold
18    and underline added for emphasis).

19    Even the original Declaration of Dr Gurudevan, M.D., gives rise to a question of fact as to

20  Causation. Although Dr. Gurudevan in his initial Declaration stated that Robert Escamilla had

21  hypertension and hyperlipidemia, he goes on to state that it was not until Robert Escamilla's

22  extensive Vioxx use for long standing lumbosacral pain that he suffered acute cardiopulmonary

23  ///

24

25

26    [1] Specific language stated by Defendant Merck at paragraph 3 is, in pertinent part, as follows:
     "Thus, at a minimum, Plaintiffs must submit a report that says 'they have a condition, and the
27  condition is caused by Vioxx.' Whether or not such an opinion could withstand *Daubert* scrutiny
     is an entirely separate question from whether the opinion is actually being offered in the first
28  instance."

PLAINTIFF, ROSIE ESCAMILLA'S, OPPOSITION TO DEFENDANT MERCK SHARP & DOHME'S MOTION FOR
SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES

1  arrest. Dr. Gurudevan also pointed out that Robert Escamilla had no chest complaints in his days

2  before he was deceased. This all in support of Vioxx causing Robert Escamilla's ultimate sudden

3  cardiac event and death.

4       The Declaration and Supplemental Declaration of Dr. Gurudevan, M.D., properly establish

5  causation. There is, at a minimum, questions of fact to the issue of causation. Motion for Summary

6  Judgment should be denied in its entirety.

7

8  **6.    CONCLUSION.**

9       Based upon the foregoing, Plaintiff Escamilla's LR56.1, the Declaration of Swaminatha B.

10  Gurudevan, M.D., and the records and pleadings herein, Plaintiff Escamilla respectfully request that

11  Defendant Merck's Motion for Summary Judgment be denied.

12

13  Dated: March 5, 2012                     CHAMBERS, NORONHA, & KUBOTA

14

15                                          By:___/s/ *Gary L. Chambers*_____
                                                GARY L. CHAMBERS
16                                              CHAMBERS, NORONHA & KUBOTA
                                                2070 N. Tustin Avenue
17                                              Santa Ana, CA 92705
                                                Phone: 714/558-1400
18                                              Fax:   714/558-0885

19
                                                Attorney for Plaintiff Escamilla
20

21

22

23

24

25

26

27

28

-i-

EXHIBIT 1

**S. SANFORD KORNBLUM, M.D., INC.**
9201 WEST SUNSET BOULEVARD, SUITE 305
LOS ANGELES, CALIFORNIA 90069
TELEPHONE (213) 273-7811
—
ORTHOPAEDIC SURGERY AND FRACTURES

**S. SANFORD KORNBLUM, M.D., F. A.C.S., F.I.C.S.**
DIPLOMATE OF THE AMERICAN BOARD
OF ORTHOPAEDIC SURGERY

SALLY KAHN & NUREET GRANOTT
ADMINISTRATORS

**RICHARD I. FEDDER, M.D., INC.**
DIPLOMATE OF THE AMERICAN BOARD
OF ORTHOPAEDIC SURGERY

November 19, 1989



RECEIVED
SCE CLAIMS/CLAIMS LITIGATION

DEC 07 1989

PULL.........COST.........REHB..........
CORR.........LIEN.........MED A....J......
OTHER.....................................
DIARY......................................

Edward R. Ortega
Attorney at Law
ROSE, KLEIN & MARIAS
801 South Grand Avenue, 18th Floor
Los Angeles, California  90017-4645

        Re:  ROBERT ESCAMILLA
        Date of Injury:  April 5, 1988
        Date of Orthopaedic Examination & Dictation: November 14, 1989
        WCAB Case No.:  89 BG 145-994

Dear Mr. Ortega:

The above-captioned patient is a 33-year-old man who has been injured during the course of his employment as a groundman with Southern California Edison.

He relates that on April 5, 1988, while working in the company warehouse, he lifted a "cross-arm" from the floor and placed it on a cart. He describes the cross-arm as a 10-ft. piece of wood, weighing approximately 25 pounds. As he lifted it and came up, he twisted and noted immediate low back pain. The pain was in the midline at the level of the lumbosacral junction. The injury was reported to the foreman. The incident took place in the morning. He managed to complete the rest of his shift, which ended at 4:30 p.m. In his job, there was a lot of heavy pulling of underground electric cable that day. There was also some digging required. By the end of the day, his back was hurting worse.

The next day, Mr. Escamilla went in to work and requested medical attention. He was experiencing pain in the lower back, radiating into both lower extremities to the calves. He was referred to the company physician where his back was examined and a course of physical therapy was instituted. He was allowed to return to work on light duty. He was given an office position. Therapy was given two to three times a week for three weeks. There was no significant improvement in his back condition. Because of persisting problems, he sought further care with Dr. Mohaghegh, an orthopaedist.

On May 12, 1988, this man was examined and x-rayed by Dr. Mohaghegh. Probable herniated disc at L5-S1 with left S1

radiculopathy was diagnosed.  An MRI of the lumbosacral spine was
ordered.  The patient was sent for physical therapy and some medi-
cation was prescribed.  This man was allowed to continue on light
duty.

May 17, 1988, an MRI of the lumbar spine was obtained.  This showed
degenerative disc disease at L4-5, as well as a moderate central
disc herniation at L4-5.  Dr. Mohaghegh continued the conservative
management.  The patient remained on light duty.  Lumbar spinal
surgery was not recommended.

As time passed, Dr. Mohaghegh instructed Mr. Escamilla to begin
increasing his activity level as tolerated.  As time passed, he was
allowed to resume his duties as a groundman for Southern California
Edison.   In January of 1989, Mr. Escamilla was promoted to
apprentice lineman.  That job involved climbing poles, as well as
lifting and carrying of heavy equipment.  Mr. Escamilla continues
to work as an apprentice lineman with Southern California Edison
up until the present.  He remains under the care of Dr. Mohaghegh,
whom he last saw on November 7, 1989.  He was told to return in
three months.  Dr. Mohaghegh has provided this man with a neoprene
back support, which he was instructed to wear when the weather is
cold to keep his back warm.


PAST HISTORY

This patient denies any history of tuberculosis, diabetes, heart
trouble or cancer.  As a child, he was hospitalized with a kidney
infection.

Operations:                 Cyst removed from the right buttock.

Allergies:                  Penicillin.

Previous Injuries:          This man has not been involved in any
                            vehicular accidents.  In high school, he
                            fractured his right middle finger, playing
                            baseball.  He received treatment and
                            recovered.  He also had a hairline frac
                            ture of a metacarpal in the right foot,
                            playing football.  He was treated with a
                            cast and recovered.  As a child, there
                            was a laceration of the scalp, requiring
                            sutures.

                            This man has had an injury to the MP joint
                            of the left little finger during a pre-

-3-     Re:  Robert Escamilla
                     November 19, 1989

trip inspection, working as a bus driver.
He received treatment and recovered.

Approximately five years ago,
Mr. Escamilla had some low back discom-
fort.  There was no precipitating cause
or injury.  He went to see a chiropractor
and was treated for three weeks.  His back
improved and there was no furthe diffi-
culty with his lower back until this new
injury of April 1988.  He did not miss
time from work or require ongoing medical
or chiropractic care for a back problem
until the new injury in April of 1988.

This patient did injure his right heel
when he fell from a pole in February of
1989.  There was a laceration and he
required suturing.  He has recovered
from that injury.

He denies any other work-related injuries.
This man has been working with Southern
California Edison for more than three
years.  He was not experiencing any pain
or discomfort in the lower back or
radicular pain to the lower extremities
prior to the April 5, 1988, industrial
accident.

REVIEW OF MEDICAL RECORDS

April 11, 1988, Doctor's First Report of Injury, from Southern
California Edison Company, indicates the patient was injured
April 5, seen April 6, 1988.  He complained of pain in the low back
when lifting a cross-arm from the pallet to the back of a small
cart.  There was pain with standing, lifting and sitting for long
periods of time.  This man was examined.  Lumbosacral strain was
diagnosed.  Physical therapy was ordered.  Motrin was prescribed.
He was to use a heating pad, and was unable to perform his usual
work.

April 29, 1988, report by John Hsich, physical therapist at
Yonemoto Physical Therapy Services, indicates this patient had a
lumbar strain and was to be treated with ultrasound, spinal
mobilization, soft tissue mobilization, therapeutic exercise.

-4-      Re:  Robert Escamilla
            November 19, 1989

May 12, 1988, report by Dr. Mohaghegh, an orthopaedist, indicates
this patient was injured at work on April 5, 1988.  He complained
of pain in the lower back with severe pain, numbness and tingling
in the left leg and some pain in the right leg.  He was injured,
lifting a cross-arm, which was about 10 feet long and weighed about
30-40 pounds.  He twisted to put it onto a cart and had sharp pain
in the low back with radiation to both legs.  He was able to finish
work that day.  The next day, pain was quite severe and he was seen
by a physician at Southern California Edison Clinic.  He was
treated with medication and therapy.  The low back discomfort
improved significantly, but the left leg pain worsened.  There was
numbness and tingling to the calf and heel of the foot.  The past
history revealed no prior complaints referable to the lower back.

This man was examined.  X-rays of the lumbar spine were obtained.
The impression was probable herniated disc at L5-S1 with left S1
radiculopathy.  The patient was to have an MRI of the lumbosacral
spine.  He was referred to physical therapy for the lower back and
was to continue with medication, as prescribed.

MRI of the lumbar spine, from Beverly Hospital, dated May 18, 1988,
reveals evidence of degenerative disc disease at L4-5 with
decreased signal and narrowing of the disc space heights.  There
was evidence of posterior central herniation of disc material into
the spinal canal at L4-5.  There was a moderate sized posterior
herniation of disc material at L4-5, producing anterior extradural
defect on the thecal space.  There was no evidence of spinal
stenosis or arthritis.

May 24, 1988, report by Dr. Mohaghegh indicates the patient's MRI,
done May 17, 1988, confirmed a moderate sized central disc hernia-
tion at L4-5, as well as early degenerative change in that disc.
The patient was improving with the therapy and medication.  This
was to be continued.

July 1, 1988, report by Michael Laymon, physical therapist, at
Orthopaedic Sport and Spine Rehabilitation Center, indicates the
patient was to be treated with moist heat, ultrasound, massage and
gravity traction, as well as exercise.  Ice and EGS were to be used
as indicated.  He was to be treated three times a week for a month.

June 27, 1988, Dr. Mohaghegh reported this man was feeling better.
He was to go back to work on a restricted schedule.  He was to
increase his activities and exercises gradually, as tolerated.

August 16, 1988, Dr. Mohaghegh reported the patient's lower back
remained symptomatic, "except for a slight ache in the lower back."
There was no leg pain, numbness or tingling.  There was no weakness

-5-        Re:  Robert Escamilla
                November 19, 1989

in the legs.  She was to continue at work and gradually increase
activity as tolerated.

October 25, 1988, Dr. Mohaghegh reported that this patient's
industrial injury resulted in a herniated disc at L4-5.  The
patient had responded well to conservative treatment and was
presently asymptomatic.  The condition was permanent and
stationary.  If he returned to unrestricted and strenuous activity,
particularly work that combined bending and twisting with heavy
pushing, pulling and lifting, the condition would most likely
recur.  He was able to perform his regular work without restric-
tion.  There was no reason to restrict him from that.  He would be
seen periodically for about a year.

December 27, 1988, Dr. Mohaghegh reported the patient was
complaining of pain and stiffness in the low back.  Pain was
usually relieved at the end of the day when he returned to a warm
room.  He was fitted with a neoprene back brace which, in addition
to offering some support, would maintain body temperature and keep
his back warm when working in cold temperatures,

March 9, 1989, Dr. Mohaghegh advised that the patient was
performing his regular work without restrictions and doing
extremely well.  He had intermittent discomfort in the lower back,
but had not had leg pain, numbness or radicular discomfort.
Examination was undertaken.  X-rays were obtained.  There was
slight narrowing of the L4-5 disc space.  The patient was found to
have a herniated nucleus pulposus at L4-5 which had responded very
well to treatment.  He was able to perform his present job without
restrictions and was advised to return in a year for interim
follow-up.

October 24, 1989, letter from Susan K. Foley, representative, from
Southern California Edison Company, discusses vocational rehabili-
tation with regard to Workers' Compensation benefits available to
help Mr. Escamilla return to work after a job-related injury.


PRESENT COMPLAINTS

Currently, Mr. Escamilla is complaining of occasional discomfort
in the midline at the level of the lumbosacral junction.  This
difficulty tends to occur when the weather is cold.  He denies
difficulty with bending, twisting or stooping activities.  Pro-
longed sitting will cause some discomfort in the lower back, but
he denies difficulty in driving.  Mr. Escamilla is comfortable
while standing and walking.  Coughing and sneezing are not painful.
He is comfortable while lying down.  The patient is cautious about

-6-        Re:  Robert Escamilla
                  November 19, 1989

his lifting and carrying.  He states he uses the correct technique.
He does have some back discomfort with strenuous pushing activity.
There is no radiating pain, numbness, tingling or weakness in his
legs.  He has not fallen.  There has been no bowel or bladder
incontinence.

To relieve discomfort, he finds that Motrin is helpful.  He takes
it when the weather is cold and his back is bothering him.  This
man uses a heating pad when the weather is cold.  He does not use
a bedboard.  He does use a neoprene back support when the weather
is cold.  He does not use a cane or crutch.  He has been treated
with gravity traction and physical therapy.  He did find this to
be helpful.  He is performing a back exercise program regularly at
home.

There has been an MRI of the lumbar spine in May of 1988, showing
some degenerative disc disease at L4-5 with evidence of posterior
central herniation of disc material into the canal at L4-5.
Currently, Mr. Escamilla does not consider himself to be a
candidate for lumbar spinal surgery.


PHYSICAL EXAMINATION

Physical examination reveals a well-developed, well-nourished,
33-year-old man in no acute distress.

This man stands with the shoulders and iliac crests level.  Spinal
alignment is normal.  He has no surgical scarring on his back.
There is no buttock atrophy.

Palpation of the back reveals no tenderness or spasm in the lumbar
area.  There is no tenderness of the sacroiliac joints.

Range of motion of the back reveals flexion to the toes; extension
40 degrees.  Lateral bending (R/L) 35/35 degrees.  Lateral rotation
(R/L) 45/45 degrees.

Ambulation is with a heel-toe gait, no antalgic component.  He is
able to walk on the heels and toes with good muscle power, no pain.

Squatting is full and without pain.

Reflexes are equal and active in the patellar and Achilles tendons.


Sensation is intact in the lower extremities, using the Wartenberg
wheel.

-7-     Re:  Robert Escamilla
        November 19, 1989

There is good dorsiflexion and plantar flexion power of the feet and toes against resistance, bilaterally.

Straight-leg-raising (R/L): Supine 90/90 degrees.

| Measurements: | Right | Left |
|---|---|---|
| Thigh 6" above patella | 17 1/4" | 17 1/4" |
| Calf | 13 1/2" | 13 1/2" |

## X-RAYS

A-P, lateral, flexion, extension, oblique and spot views of the lumbar spine reveal six lumbar vertebrae with pedicles and transverse processes well visualized and intact. There is partial sacralization of the left transverse process of L6. Sacroiliac joints are intact. There is no fracture or dislocation of the lumbar spine. There is no compression fracture. Flexion-extension views show no subluxations. Oblique views reveal that the pars interarticularis are intact. There is no spondylolysis. On the spot view, there is no spondylolisthesis.

## IMPRESSION AND COMMENT

Robert Escamilla is a 33-year-old man who has been injured during the course of his employment on April 5, 1988. As result of that incident, he developed pain in the lower back. There was some radicular type pain to the lower extremities. He has received evaluation and treatment, as described. He no longer has radicular type pain to the lower extremities. He now has only occasional discomfort in the lower back. There is no compression fracture. He has been unable to resume his duties with Southern California Edison and is currently working as an apprentice lineman. He is not missing time from work or requiring medical care for a back problem.

Following today's orthopaedic evaluation, it is my impression this man has a chronic lower lumbar sprain. He has had an MRI of the lumbar spine, showing degeneration of the L4-5 disc with some posterior central disc herniation of moderate size, producing anterior extradural defect in the thecal sac. Currently, I would not recommend lumbar spinal surgery. The clinical picture is excellent. For practical purposes, his back condition is permanent and stationary.

Subjectively, he complains of occasional minimal discomfort and aching when the weather is cold. He denies difficulty with

-8-          Re: Robert Escamilla
             November 19, 1989

bending, twisting or stooping.  He would have slight to moderate
pain with lifting, carrying, pushing or pulling of a strenuous
nature.   There is no radicular pain, numbness, paresthesia or
weakness in the legs.  He has not fallen.  There has been no incon-
tinence.

Objectively, this man has no tenderness in his back.  There is full
movement of the lumbar spine.  Ambulation is within normal limits.
He walks on the heels and toes with good power.  Squatting is full.
Reflexes, sensation, muscle function and power are intact in the
lower extremities.  Straight-leg-raising is within normal limits.

X-rays show six lumbar vertebrae.  There is no fracture or disloca-
tion.

He has had a CT scan of the lumbar spine, revealing degenerative
change at L4-5 with some central herniation of disc material.

Work restrictions, based on the subjective and objective factors
of disability, limit this man from very heavy work activities.  He
has been performing his duties as an apprentice lineman with
Southern California Edison.  It is my impression, from the ortho-
paedic standpoint, he may continue to work in that capacity.

Future care should consist of non-narcotic analgesics, warm soaks,
range of motion exercise and Williams type flexion exercise.   A
bedboard in the contour position is advised.  Use of the neoprene
back support as needed is recommended.  Exacerbations of back pain
in the future will require provision for further orthopaedic care.

With regard to apportionment, none is indicated, as he was working
without pain or discomfort in the back prior to this April 5, 1988,
industrial accident.  He did have some previous back discomfort
approximately five years ago.  He was treated by a chiropractor for
about three weeks and recovered fully.  There were no residual
problems, he was not missing time from work or requiring ongoing
medical or chiropractic care until this new injury of April 5,
1988.

                         Very truly yours,


                         Richard I. Fedder, M.D.


RIF:gdc

**HUMBERTO A. GALLENO, M.D., INC.**
FELLOW OF AMERICAN ACADEMY OF ORTHOPAEDIC SURGERY
DIPLOMAT OF THE AMERICAN BOARD OF ORTHOPEDIC SURGERY
INTER-COMMUNITY PROFESSIONAL PLAZA
315 N. 3RD. AVE., SUITE 302
COVINA, CALIFORNIA 91723
(626) 332-1194     FAX (626) 915-3162

19 January 2000

Southern California Edison Company
Workers' Compensation Division
Post Office Box 5038
Rosemead, CA   91770

<u>Attention</u>     John Hotter

| | |
|---|---|
| RE: | **ESCAMILLA, ROBERT** |
| | 831 North Park Avenue |
| | Covina, CA   91723 |
| SOCIAL SECURITY No.: | **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** |
| | |
| EMPLOYER: | SOUTHERN CALIFORNIA EDISON CO |
| D/INJURY: | 4/5/98 |
| CLAIM No.: | WC 19880576 |
| | |
| D/EXAMINATION: | 1/19/2000, 2/7/2000 |

Dear Mr. Hotter:

At your request, I have performed a comprehensive orthopedic evaluation on Mr. Robert Escamilla. The patient was seen at my Covina office, initially, on January 19, 2000.

I personally obtained the history from the patient, who is, at the present time, a 43-year old, right-handed male who has been employed as a "Groundman" for Southern California Edison Company, for 14 years. His usual and customary job activity consists of equal amounts of walking (33%), standing (33%) and sitting (33%), and requires frequent repetitive bending and stooping, frequent heavy lifting and carrying (100+ lbs), frequent squatting and reaching, frequent overhead work, frequent climbing. He is presently working on modified duty.

HISTORY OF INJURY

The patient states that on April 5, 1998, while performing his regular duties, he

Humberto A. Galleno, M.D.
Robert Escamilla - Claim No.: WC 19880576
19 January 2000
Page 2

injured his lower back while lifting a 40-lb piece of work. He continued working with
increasing pain to his lower back and reported the injury to his supervisor on April
6, 1998. He was referred to an industrial clinic where he was initially evaluated.
Xrays were not done and he was prescribed medication and physical therapy treat-
ments. He was later referred for orthopedic treatment to Doctor Hassan Mohaghegh
in Montebello. He had a lumbar spine MRI done in April, 1998, which showed a
disc protrusion at L4-L5. He was treated with an epidural injection, therapy
treatments and medication - with good improvement. He was seen by Doctor
Mohaghegh in, approximately, July, 1996. He is currently working for the same
employer on modified duty and has noted recent recurrent pain to his lower back
and both lower extremities, right greater than left. He denied any additional injury
or trauma to his lower back.

## SUBJECTIVE COMPLAINTS

As regards the lumbosacral spine: the patient complains of a constant dull ache and
sharp pain described as constant slight to intermittent moderate to severe, associated
with stiffness and tightness. The pain radiates from the lumbosacral spine to both
lower extremities, right side greater than left, associated also with tingling and
numbness in both feet, bilateral. Exacerbation is brought on by bending, stooping,
prolonged sitting and lifting effort.

The patient has had pain medication, applications of heat, manipulations and physical
therapy - with improvement.

## PAST MEDICAL HISTORY

| | |
|---|---|
| INJURIES | Industrial accident/injury, after being thrown 20 feet into the air, falling and landing on his head and right shoulder. Sent to the ER, unconscious, with a lacerated chin and injured neck. He underwent physical therapy. |
| FRACTURES | Left index and long fingers, left hand, right foot. |
| HOSPITALIZATIONS | Garfield Medical Center with pneumonia in 1990. |

Humberto A. Galleno, M.D.
Robert Escamilla - Claim No.: WC 19880576
19 January 2000
Page 3

| | |
|---|---|
| OPERATIONS | Vasectomy in 1994. |
| ALLERGIES | Penicillin. |
| MEDICATION | Tylenol #3 PRN |

## REVIEW OF SYSTEMS

The patient denied any serious problems with gastrointestinal, genitourinary, heart, pulmonary/respiratory systems. He has had kidney stones, however. He has normal blood pressure.

## FAMILY HISTORY

Family history of diabetes (mother).

## PERSONAL HISTORY

The patient is married and does not smoke.

## ORTHOPEDIC EXAMINATION OF THE LUMBOSACRAL SPINE

The patient is a tall, large framed, average built male in no acute distress. Height: 6'1". Weight: 195 lbs.

He stood with straight posture and equal weight bearing. Knees, arches and toes were normal, bilateral. He walked with normal gait. He was able to walk on his toes and heels without pain. He was able to completely squat but this maneuver was associated with increasing pain in the lumbosacral spine.

The spine was straight, with decreased lordosis. Movements of the lumbosacral spine were unguarded.

There was tenderness on palpation of the right lumbar spine.

Humberto A. Galleno, M.D.
Robert Escamilla - Claim No.: WC 19880576
19 January 2000
Page 4

<u>Range of Motion</u>
| | | |
|---|---|---|
| Flexion | 80% | with increasing pain |
| Extension | 30% | "      "      "      " |
| Rotation/R & L | 40% | "      "      "      " |
| Lateral Tilt/R & L | 40% | "      "      "      " |

There was no deviation of the trunk during flexion and hump was not present while the patient was in the Adam's position.

<u>Reflexes</u>
| | |
|---|---|
| Ankle jerk | 1+ - 1+ |
| Knee jerk | 1+ - 1+ |
| Babinski | Negative, bilateral |

Sensation was normal to pinprick and light touch, and motor power was equal and symmetrical with manual stress testing.

Stretching of the sciatic nerve produced increasing pain in the right lumbosacral spine and right lower extremity, as follows:

| <u>Nerve Stretching</u> | <u>Right</u> | <u>Left</u> |
|---|---|---|
| Straight Leg Raising | POSITIVE @ 50 degrees | Negative (for pain) |
| Hip - Knee Flexion | Negative | Negative |
| Lasegue:    Sitting | POSITIVE | Negative |
|            Supine | POSITIVE | Negative |
| Bow String Test | POSITIVE | Negative |
| Flip Test | Negative | Negative |
| Fabere/Reverse Fabere | Negative | Negative |

There was no pain with rolling of the hips.

Circumferential measurements of both lower extremities revealed the following:
<u>Thigh girth</u>  (at 10 cm proximal to the patella)
        42 cm on the right/44 cm on the left
<u>Calf girth</u>   (at maximum circumference)
        34.5 cm on the right/34.5 cm on the left

Humberto A. Galleno, M.D.
Robert Escamilla - Claim No.: WC 19880576
19 January 2000
Page 5


## REVIEW OF XRAYS

Limited views of the lumbosacral spine were done at my Covina office on January
19, 2000. The quality of the film was good, showing no osteoporosis.

Lumbosacral spine Series
The AP view revealed 5 lumbar vertebrae and straight spine, without tilt or rotation.
There was sacralization observed but no residual spina bifida occulta. The sacroiliac
joints and psoas muscle shadows were normal. Symphysis pubis and hip joints were
not included. The Lateral view revealed decreased lordosis and sacrolumbar angle
of 40 degrees, with no spondylolisthesis or osteophytes. Residual disc space
narrowing was observed at the L4-L5 levels. The Spot Lateral view revealed no
additional findings.

## REVIEW OF MEDICAL RECORDS

I.      Records/H. Mohaghegh, M.D. D/Injury: 4/5/88.

        1)      Report - 5/12/88. The patient complained of back pain with left leg pain
        associated with numbness and tingling. Xrays of the lumbar spine showed six
        lumbar vertebrae with no spondylolysis or listhesis. Diagnosis was probable
        herniated disc at L5-S1 level with left S1 radiculopathy.  The patient was
        referred for a lumbar spine MRI, and also referred for additional physical
        therapy treatments and medication.

        2)      Report - 5/24/88. The lumbar spine MRI done on 5/17/88, showed
        "moderate central disc herniation at the L4-L5 level with degenerative changes.
        To continue with therapy and medication."

        3)      Report - 6/27/88. Overall, doing better. To continue restrictive work.

        4)      Report - 8/16/88. Doing much better. No leg pain, numbness or
        paresthesias. To continue with modified work.

        5)      Report - 10/25/88. The patient was performing his regular duties.
        Tolerated well. The patient was made permanent and stationary. He was to

Humberto A. Galleno, M.D.
Robert Escamilla - Claim No.: WC 19880576
19 January 2000
Page 6

preclude from repetitive bending and stooping, heavy pushing, pulling or lifting.

6)     Report - 12/27/88. Complaining of increasing lower back pain; no leg pain. He was fitted with a Neoprene back brace.

7)     Report - 3/9/89. He was performing his regular duties without restrictions. He complained of intermittent discomfort in his lower back with no leg pain. Xrays of the lumbosacral spine showed no significant change, with persistent narrow L4-L5 disc inner space. To return in one year for followup.

8)     Report - 11/7/89. Intermittent slight pain in the lower back, radiating into the upper back. Not taking medication. Doctor Mohaghegh indicated that the patient has a herniated disc at L5-S1 (which I think is 4-5) and is the result of the injury of 4/5/88. He had responded well to conservative treatment and was made permanent and stationary. He was to continue his work restrictions, precluding heavy work and repetitive bending and stooping, with very heavy lifting.

9)     Report - 3/7/90. Not taking medication. He had continued working as a groundsman, doing now restricted work. The physician in question recommended work restrictions and was to consider vocational rehabilitation.

10)    Report - 3/12/90. Advised to preclude repetitive bending and stooping, heavy lifting.

11)    Report - 5/16/91. Minimal back pain. Xrays showed the settling of the L4-L5 interspace. The patient was to return in two years and continue with his regular work.

12)    Report - 8/31/92. The patient returned because of re-exacerbation of his chronic low back pain. Xrays were done, showing no significant pain. He was diagnosed with a mild exacerbation of his lower back pain and prescribed Tylenol #3 and Equagesic; also Motrin. He was instructed on exercises.

13)    Reports - 10/20/92, 3/31/93, 5/11/93, 10/10/94, 12/6/94, 1/17/95, 6/20/95,

Humberto A. Galleno, M.D.
Robert Escamilla - Claim No.: WC 19880576
19 January 2000
Page 7

10/10/95, 12/12/95.

14)    Report/Lumbar Spine MRI - 8/1/95. Interpreted by Bernard A.
Tansman, M.D.    <u>Impression</u> "Relatively large herniated and probably a
partially extruded nucleus pulposus at L4-L5."

15)    Report/Epidural Injection - 8/11/95.

16)    P&S Report - 6/3/96. The patient complained of increased low back pain
while driving a new truck. Diagnostic impression was herniated and degenera-
tive disc at L4-L5 with acute symptoms. The patient was again made
permanent and stationary with no indication for apportionment. Future care
was to include prophylactic restrictions and conservative treatment.

17)    Progress Report - 7/9/96. The patient was seen because of persistent
lower back pain. Diagnosis remained unchanged with acute re-exacerbation of
lower back pain due to underlying herniated degenerative disc at L4-L5. The
patient was to receive conservative treatment with anti inflammatory medica-
tion, moist hot packs and physical therapy treatments.  He was to continue
performing his regular duties.

<u>DIAGNOSIS</u>    1)    LUMBOSACRAL SPINE SPRAIN/STRAIN. CHRONIC.

2)    HISTORY OF L4-L5 LUMBAR DISC HERNIATION-
DEGENERATION.

3)    RIGHT LUMBAR RADICULITIS-NO RADICULOPATHY.

<u>DISCUSSION</u>

Mr. Robert Escamilla has been referred for continued orthopedic management of his
chronic back pain following the industrial injury sustained on April 5, 1998.  He is
currently working for the same employer, performing modified duty, and has noted
recent increase in his back pain with associated right leg pain.  As per my review of
the medical records, he has had a previous POSITIVE lumbar spine MRI with a

Humberto A. Galleno, M.D.
Robert Escamilla - Claim No.: WC 19880576
19 January 2000
Page 8

moderately large L4-L5 lumbar disc protrusion with possible extruded fragment. He
appears to have responded very well to prior epidural injections. In view of his
recent flareup, he is in need of continued orthopedic treatment. There is no history
of any additional acute injury to his lower back.

TREATMENT

He will be referred for conventional physical therapy treatments and has been
prescribed Vioxx 25 mgs, once po qd. He will be referred for a lumbar spine MRI
in consideration for a trial of lumbar epidural injections.

The patient was placed on temporary total disability from January 2 - January 7,
during which time he was unable to work because of his recent flareup. He will be
allowed to return to work on his modified duty status as of January 19, 2000. He is
to return in three weeks for re-evaluation.

I spent 45 minutes reviewing the submitted medical records.

The patient returned on February 7, 2000. The patient reported persistent right leg
pain with intermittent lower back pain. He has been taking the Vioxx without side
effects.

We discussed and reviewed the results of the lumbar spine MRI done on 2/2/2000,
at Medical Diagnostic Associates. Interpreted by Gail M. Schlesinger, M.D.

> Impression   Asymmetric transitional vertebral body identified and called L5
> for the purposes of this dictation.
>
> Mild disc desiccation with a 1-2 mm left foraminal disc protrusion
> noted at the L3-L4 level which abuts but does not compress the
> exiting left L3 nerve root within the neural foramen.
>
> Decreased disc height, disc desiccation with a 3 mm right sided
> disc protrusion noted at the L4-L5 level which abuts the ventral
> aspect of the thecal sac. No nerve root compression is identified.

The patient's examination was unchanged, with tenderness over the lower lumbar

Humberto A. Galleno, M.D.
Robert Escamilla - Claim No.: WC 19880576
19 January 2000
Page 9

area and limited lumbar flexion and extension associated with pain, POSITIVE straight leg raising and stable neurological.

In view of his persistent right leg symptoms, the POSITIVE MRI, and lack of response to conservative treatment, I am requesting for a trial of lumbar epidural steroid injections.

He is to continue working on modified duty and return in three weeks for re-evaluation.

Sincerely yours,

Humberto A. Galleno, M.D.

HG/mm
(dt 2/23/2000)

"I declare under penalty of perjury that the information contained in this report and its attachments, if any, is true and correct to the best of my knowledge and belief, except as to information that I have indicated I received from others. As to that information, I declare under penalty of perjury that the information accurately describes the information provided to me and, except as noted, herein, that I believe it to be true."

"I have not violated Labor Code Section 139.3, and the contents of this report and bill are true and correct to the best of my knowledge. This statement is made under penalty of perjury."

Date of Report: <u>19 January 2000.</u>

Dated this 28 day of <u>February, 2000,</u> in Los Angeles County, California.

Humberto A. Galleno, M.D.

**State of California**
Division of Workers' Compensation
# Primary Treating Physician's Progress Report (PR-2)

| | | | |
|---|---|---|---|
| ☑ Periodic Report | ☐ Change in patients condition | ☐ Need for surgery or hospitalization | ☐ Discharged ☑ Other |
| ☐ Change in work status | ☐ Need for referral or consultation | ☐ Change in treatment plan | ☐ Info requested by: |

## Patient:

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Last: | ESCAMILLA | First: | ROBERT | M.I | Sex | M | D.O.B. | 05/21/56 |
| Address: | | | City: | | | State: | Zip: | |
| Occupation: | | | SS#: | 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 | | Phone: | | |

### Claims Administrator:

| | | | | |
|---|---|---|---|---|
| Name: | SOUTHERN CA EDISON CO W/C | Claim Number: | WC19880576 | |
| Address: | PO BOX 5038 | City: | ROSEMEAD | State: CA Zip: 91770 |
| Adjuster: | LINDA RAMOS/PATRICIA | | | |

## Subjective complaints:

Pt returned because he is having pain mostly at night time when he is sleeping on his back and wakes up w/morning stiffness, otherwise no pain while working. Working on regular duties. Does not require medication, he is taking sleeping medication at times. No specific leg pain, numbness or paresthesias. His work has become less vigorous.

## Objective findings:

Normal gait. No tenderness, no spasm, no trigger points. ROM w/o pain and w/o guarding. Flexion 90 w/o pain. Extension 60 w/o pain. Negative SLR w/no numbness, no weakness, symmetrical 1+ reflexes.

## Diagnosis:

| | | |
|---|---|---|
| 1. | L/S sprain-strain. | ICD-9 |
| 2. | Lumbar disc protrusion. | ICD-9 |
| 3. | | ICD-9 |

## Treatment

Advised on changing his mattress or rotating his mattress. At this point I see no evidence of radiculitis nor radiculopathy. No need for therapy or injections. Continue regular duties. Return as previous P&S report.

| **Work Status:** This patient has been instructed to: | | |
|---|---|---|
| ☐ Remain off work until | | |
| ☐ Return to modified work on | with the following restrictions: | Follow-up.prn. |
| ☑ Return to full duty on    05/31/06 | with no limitations. | |

**Primary Treating Physician:**    (original signature, do not stamp)    Date of exam:    05/31/06

I declare under penalty of perjury that this report is true and correct to the best of my knowledge and that I have not violated Labor Code 139.3.

Signature:

Executed at: Office of Humberto A. Galleno, M.D.
Name: Humberto A. Galleno, M.D.
Specialty: Orthopedics
Address: 315 N. Third Ave., Suite 302, Covina, CA 91723

Cal. Lic.# GO-38401
Date:    05/31/06
Phone: (626) 332-1194

Next report due no later than

**State of California**
vision of Workers' Compensation
# Primary Treating Physician's Progress Report (PR-2)

- ☐ Periodic Report
- ☐ Change in work status
- ☐ Change in patients condition
- ☐ Need for referral or consultation
- ☐ Need for surgery or hospitalization
- ☐ Change in treatment plan
- ☐ Discharged ☒
- ☐ Info requested by:
- Other

## Patient:

Last: **ESCAMILLA**   First: **ROBERT**   M.I   Sex **M**   D.OB. **05/21/56**

Address:   City:   State:   Zip:

Occupation:   SS#: **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**   Phone:

## Claims Administrator:

Name: **SOUTHERN CA EDISON CO W/C**   Claim Number: **WC19880576**

Address: **PO BOX 5038**   City: **ROSEMEAD**   State: **CA** Zip: **91770**

Adjuster: **JOHN HOTTER**

## Subjective complaints:

Reports no residual back pain, no leg pain, slight numbness over lateral aspect of left thigh, working on regular duty. Does not require any medication.

## Objective findings:

Normal gait, no tenderness, no spasm, no trigger points to palpation, ROM without guarding, flexion 90 without pain, extension 50 without pain w/negative SLR. Slight numbness on the lateral aspect of the left thigh, no apparent weakness, symmetrical 1+ reflexes.

## Diagnosis:

1.   L/S sprain-strain.   ICD-9
2.   Lumbar disc protrusion.   ICD-9
3.   Left lumbar radiculopathy.   ICD-9

## Treatment

He has pretty much recovered to his usual baseline. He is released from orthopedic treatment. Continue regular duties. To return on as needed basis as per previous P&S report.

**Work Status:** This patient has been instructed to:
- ☐ Remain off work until
- ☐ Return to modified work on   with the following restrictions:
- ☑ Return to full duty on   **12/02/04**   with no limitations.

## Primary Treating Physician:   (original signature, do not stamp)   Date of exam: **12/02/04**

I declare under penalty of perjury that this report is true and correct to the best of my knowledge and that I have not violated Labor Code 139.3.

Signature:

Executed at: Office of Humberto A. Galleno, M.D.   Cal. Lic.# GO-38401
Name: Humberto A. Galleno, M.D.   Date:   12/02/04
Specialty: Orthopedics   Phone: (626) 332-1194
Address: 315 N. Third Ave., Suite 302, Covina, CA 91723   Next report due no later than

### State of California
### Divisi... f Workers' Compensation
# Primary Treating Physician's Progress Report (PR-2)

☑ Periodic Report   ☐ Change in patients condition   ☐ Need for surgery or hospitalization   ☐ Discharged ☐   Other

☐ Change in work status ☐   Need for referral or consultation   ☐ Change in treatment plan   ☐ Info requested by:

## Patient:

Last:   ESCAMILLA   First:   ROBERT   M.I   Sex   M   D.OB.   05/21/56

Address:   City:   State:   Zip:

Occupation:   SS#:   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   Phone:

## Claims Administrator:

Name:   SOUTHER CA EDISON CO W/C   Claim Number:   WC19880576

Address:   PO BOX 5038   City:   ROSEMEAD   State:  CA  Zip:  91770

Adjuster:   JOHN HOTTER

## Subjective complaints:

Working on regular duty, not taking medication, residual back stiffness w/cold weather, no associated leg pain, residual unchanged numbness on lateral aspect of left thigh. No bowel or bladder problems.

## Objective findings:

Normal gait, no tenderness to palpation, no spasm. Flexion 90 without pain, extension 40 without pain w/negative SLR, unchanged numbness over lateral aspect of the left thigh w/no apparent weakness. Symmetrical 1+ reflexes.

## Diagnosis:

| | | |
|---|---|---|
| 1. | L/S sprain-strain. | ICD-9 |
| 2. | Lumbar disc protrusion. | ICD-9 |
| 3. | Left lumbar radiculopathy. | ICD-9 |

## Treatment

Report of EMG and nerve conduction studies done on 10/15/04 by Dr. Fakheri-impression- abnormal EMG w/less active L4 radiculopathy, normal nerve conduction studies. Pt is clinically doing well, no need for any aggressive treatment at this time. Continue w/his regular duties, to come back to see me for reevaluation on 12/02/04, if symptoms remain unchanged he will then be released.

## Work Status:  This patient has been instructed to:

☐ Remain off work until

☐ Return to modified work on   with the following restrictions:

☑ Return to full duty on   10/28/04   with no limitations.

## Primary Treating Physician:   (original signature, do not stamp)   Date of exam:   10/28/04

I declare under penalty of perjury that this report is true and correct to the best of my knowledge and that I have not violated Labor Code 139.3.

Signature:

Executed at: Office of Humberto A. Galleno, M.D.   Cal. Lic.# GO-38401

Name: Humberto A. Galleno, M.D.   Date:   10/28/04

Specialty: Orthopedics   Phone: (626) 332-1194

Address: 315 N. Third Ave., Suite 302, Covina, CA 91723   Next report due no later than   12/02/04

**HUMBERTO A. GALLENO, M.D., INC.**
FELLOW OF AMERICAN ACADEMY OF ORTHOPAEDIC SURGERY
DIPLOMAT OF THE AMERICAN BOARD OF ORTHOPEDIC SURGERY
INTER-COMMUNITY PROFESSIONAL PLAZA
315 N. 3RD. AVE., SUITE 302
COVINA, CALIFORNIA 91723
(626) 332-1194      FAX (626) 915-3162

9 June 2000

## PRIMARY TREATING PHYSICIAN'S
## ORTHOPEDIC PERMANENT & STATIONARY EVALUATION REPORT

Southern California Edison Company
Workers' Compensation Division
Post Office Box 5038
Rosemead, CA   91770

__Attention__   John Hotter

RE:
ESCAMILLA, ROBERT
831 North Park Avenue
Covina, CA   91723
SOCIAL SECURITY # 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

EMPLOYER          SOUTHERN CALIFORNIA EDISON CO
D/INJURY          4/5/98
CLAIM #           WC 19880576

D/EXAMINATION:    6/9/00

Dear Mr. Hotter:

After my last evaluation on April 28, 2000, Mr. Escamilla returned on June 9, 2000, for orthopedic re-evaluation.

The patient has been working and performing his regular duties.

SUBJECTIVE COMPLAINTS

He complains of occasional slight pain to his lower back.  He reported no residual lower extremity pain, numbness or paresthesias; no bowel or bladder problems.

Humberto A. Galleno, M.D.
Robert Escamilla vs Southern California Edison Company
9 June 2000
Page 2

# EXAMINATION OF THE LUMBOSACRAL SPINE

The patient stood with straight posture and walked with normal gait.  Range of motion was performed without guarding.

There was no tenderness, spasms or trigger points to palpation.

Range of Motion
| | | |
|---|---|---|
| Flexion | 80% | without pain |
| Extension | 50% | " " |
| Lateral Tilt/Rotation | 50% | " " |

Reflexes
| | |
|---|---|
| Ankle jerk | 1+ - 1+ |
| Knee jerk | 1+ - 1+ |
| Babinski | Negative, bilateral |

Sensation was normal to pinprick and light touch in both lower extremities.

Motor power was equal and symmetrical, bilaterally, to manual stress testing.

Straight leg raising was negative, bilaterally.

Circumferential measurements of both lower extremities remained essentially unchanged:

| | |
|---|---|
| Thigh girth | 42 cm on the right/44 cm on the left |
| Calf girth | 34.5 cm on the right/34.5 cm on the left |

DIAGNOSIS  1)  LUMBOSACRAL SPINE SPRAIN/STRAIN. CHRONIC.

2)  3 mm L4-L5 LUMBAR DISC PROTRUSION, 1-2 mm LEFT DISC PROTRUSION AT L3-L4.

# DISCUSSION

Mr. Escamilla has achieved maximal orthopedic improvement from the industrial

Humberto A. Galleno, M.D.
Robert Escamilla vs Southern California Edison Company
9 June 2000
Page 3

injury sustained on April 5, 1998. His condition, therefore, is considered permanent and stationary.

CAUSATION

The patient's orthopedic condition is consistent with the industrial injury sustained on 4/5/98.

SUBJECTIVE FACTORS OF DISABILITY

Intermittent slight pain to the lumbosacral spine.

OBJECTIVE FACTORS OF DISABILITY

The POSITIVE lumbar MRI consistent with 3 mm right sided disc protrusion at L4-L5 and a 1 - 2 mm left disc protrusion at L3-L4.

WORK RESTRICTIONS

None.

VOCATIONAL REHABILITATION

Mr. Escamilla has been able to return to his usual and customary job activity with no apparent flareups or exacerbation. There is no need for vocational rehabilitation.

FUTURE MEDICAL TREATMENT

Orthopedic re-evaluations for flareups necessitating anti inflammatory medication and physical therapy treatments. He may also need repeat lumbar epidural steroid injections.

APPORTIONMENT

Not indicated.

Humberto A. Galleno, M.D.
Robert Escamilla vs Southern California Edison Company
9 June 2000
Page 4

Sincerely yours,

Humberto A. Galleno, M.D.

HG/mm
(dt 10/6/00)

"I declare under penalty of perjury that the information contained in this report and its attachments, if any, is true and correct to the best of my knowledge and belief, except as to information that I have indicated I received from others. As to that information, I declare under penalty of perjury that the information accurately describes the information provided to me and, except as noted, herein, that I believe it to be true."

"I have not violated Labor Code Section 139.3, and the contents of this report and bill are true and correct to the best of my knowledge. This statement is made under penalty of perjury."

Date of Report: 9 June 2000

Dated this ___ day of October, 2000, in Los Angeles County, California.

Humberto A. Galleno, M.D.

**HUMBERTO A. GALLENO, M.D., INC.**
FELLOW OF AMERICAN ACADEMY OF ORTHOPAEDIC SURGERY
DIPLOMAT OF THE AMERICAN BOARD OF ORTHOPEDIC SURGERY
INTER-COMMUNITY PROFESSIONAL PLAZA
315 N. 3RD. AVE., SUITE 302
COVINA, CALIFORNIA 91723
(626) 332-1194     FAX (626) 915-3162

14 June 2001

## PRIMARY TREATING PHYSICIAN
### INITIAL COMPREHENSIVE ORTHOPEDIC EVALUATION

Southern California Edison Company
Workers' Compensation Division
Post Office Box 5038
Rosemead, CA   91770

<u>Attention</u>    Linda Ramos

| | | |
|---|---|---|
| RE: | | **ESCAMILLA, ROBERT** |
| | | 831 North Park Avenue |
| | | Covina, CA   91723 |
| | SOCIAL SECURITY # | **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** |
| | BIRTHDATE | **5/21/56** |
| | EMPLOYER | SOUTHERN CALIFORNIA EDISON CO |
| | | 1000 Patero Grande |
| | | Monterey Park, CA   91754 |
| | OCCUPATION | **LINEMAN** |
| | CLAIM # | 930-529 |
| | D/INJURY | 3/26/93 |
| | D/EXAMINATION | 6/14/01 & 7/12/01 |

Dear Ms. Ramos:

At your request, I performed a comprehensive orthopedic evaluation on Mr. Robert Escamilla, in the capacity of the employee's selected physician - as per Labor Code 4600-4601. The patient was seen at my office, initially, on Thursday, June 14, 2001.

This 45-year old, left-handed male was seen for evaluation of persistent neck pain. I personally obtained the history of injury from the patient, in English.

Humberto A. Galleno, M.D.
Robert Escamilla - Claim #930-529
14 June 2001
Page Two

Mr. Escamilla reports that he has been employed at Southern California Edison Company, for 15 years. His usual and customary job activity is that of a "Lineman", with work requiring him to be on his feet the entire working period (100% standing/walking), mostly doing overhead work.

## HISTORY OF INJURY

The patient states that on March 26, 1993, while performing his regular duties, he injured his neck. At that time, he was ready to repair a lead wire when a truck allegedly ran a red light and struck the wire. The patient claims that his leg was caught by the rope - which he used "to send stuff up the pole" - throwing him up into the air approximately 20 feet and, then, landing on a bush on his right shoulder and neck areas. He was dazed but did not suffer any loss of consciousness. He felt the immediate onset of pain to his neck and was assisted by Paramedics at the scene of the accident and transported by Ambulance to Beverly Hospital, where he was initially evaluated. Xrays of the cervical spine were done and were reported to be negative. He was prescribed Tylenol with Codeine for pain, and Equagesic. He was on temporary disability for approximately 3-6 weeks and then returned to work on regular duty. He developed persistent pain on his neck, for which he was then referred to Doctor Max Matos, Orthopedic Surgeon in Covina, in 1997-1998. He had a cervical spine MRI - of which he is not aware of the diagnosis. He was treated with therapy and gradually returned to work, performing his regular duties.

The patient has noted over the past two weeks increasing pain to his neck. He denies any additional injuries to his neck and has had no additional orthopedic treatment since he was seen by Doctor Matos in 1997-1998.

## SUBJECTIVE COMPLAINTS

The patient complains of neck pain, described as constant slight to intermittent moderate, worse on the right as compared to the left, with pain radiating to the right shoulder, elbow and knuckles. The pain is associated with soreness and tingling sensation - also going down the right arm to the knuckles especially in the morning. He also complains of tingling and numbness in the morning, at the op of his head to between both shoulder blades. Exacerbation is brought on by keeping the same position for too long, rotating to the right and left sides, looking upward, overhead work, and with any lifting effort.

He also reports having migraines once every 1-2 months. Being active helps, as well as taking Tylenol and Advil. In his opinion, the neck pain, overall, has worsened since the onset.

Humberto A. Galleno, M.D.
Robert Escamilla - Claim #930-529
14 June 2001
Page Three

## PAST MEDICAL HISTORY

I treated Mr. Escamilla from January 19, 2000, until June 9, 2000, for an industrial injury sustained on April 5, 1998, while he was working for the same employer. He was diagnosed with lumbosacral spine sprain/strain chronic with associated right lumbar radiculitis and history of L4-L5 disc protrusion with degeneration. The patient was made permanent and stationary on 6/9/00, with occasional slight pain in the lower back. Final diagnosis was lumbosacral spine sprain/strain chronic with a 3 mm L4-L5 disc protrusion and a 1-2 mm left disc protrusion at L3-L4. He was released to return to work on regular duty with no restrictions.

| | |
|---|---|
| INJURIES | The patient has fallen twice from poles while working: In 1991, he fell off a pole and injured his right heel, for which he had "45-88 stitches", and also sustained a low back injury. On 3/6/93, he sustained a left shoulder and low back injury. |
| FRACTURES | Fractures to fingers, including left knuckles, left wrist, right index finger and right foot - hairline fracture. |
| ALLERGIES | Penicillin. |
| MEDICATIONS | Vioxx, Tylenol #3, Sudafed (hay fever) Nasonex, Claritin. |
| OPERATIONS | Cyst removed from tailbone 7 years ago. Underwent surgery after being bitten by a brown recluse spider, with the area drained and placed on antibiotics. |
| HOSPITALIZATIONS | Infected kidneys in 1969-1970, infection for 2 weeks 10 years ago. |

## REVIEW OF SYSTEMS

The patient has unstable blood pressure values. He denied any history and/or treatment as regards respiratory, gastrointestinal, genitourinary or heart problems.

## FAMILY HISTORY

There is a strong family history of cancer, paternal and maternal, and adult onset diabetes

Humberto A. Galleno, M.D.
Robert Escamilla - Claim #930-529
14 June 2001
Page Four


(mother).

PERSONAL/SOCIAL HISTORY

The patient is married and has three children, ages 17, 13 and 11.  He does not smoke.

## EXAMINATION OF THE CERVICAL SPINE


The patient is a tall, large framed male. Height: 6'1". Weight: 189 lbs.

He stood with straight posture and equal weight bearing. Knees, arches and toes were normal, bilateral.  There was no residual swelling, discoloration, varices, atrophy spasms, or trigger point tenderness.  He walked with normal gait. He was able to walk on his toes and heels without pain. He was able to completely squat without pain.

There was no tenderness on palpation of the cervical spine.  Movements of the cervical spine were unguarded.

Range of Motion
Flexion                100%  without pain
Extension               40%  increasing pain
Rotation/R & L          80%  without pain
Lateral Tilt/R & L      80%  "        "        "

Reflexes
Bicipital          1+ - 1+
Tricipital         1+ - 1+
Brachioradialis    1+ - 1+

Sensation to pinprick and light touch was normal in both upper extremities.

Motor power was equal and symmetrical, bilaterally, with manual stress testing.

Circumferential measurements of both upper extremities revealed the following:
    Arm girth          33 cm on the right/33.5 cm on the left
    Forearm girth      28 cm on the right/30 cm on the left

Humberto A. Galleno, M.D.
Robert Escamilla - Claim #930-529
14 June 2001
Page Five

Grip strength as tested with the Jamar dynamometer:
Right hand        120 - 120 - 110 lbs
Left hand         130 - 130 - 120 lbs
The patient is left handed.

There was no pain with axial compression or with traction of the cervical spine.

REVIEW OF XRAYS

1)    Limited views of the cervical spine were done today at my office. The quality of the film was good, showing no osteoporosis.

Cervical Spine Series
The AP view revealed a slight tilt towards the right with no rotation, cervical rib or unco vertebral osteoarthritis. The Lateral view revealed 7 cervical vertebrae visible with decreased lordosis and normal alignment. Residual disc space narrowing and posterior osteophytes were present at C6-C7 dermatomes. There were no retropharyngeal swelling or fractures. Open Mouth views were within normal limits for odontoid and lateral masses.

2)    I reviewed a cervical spine MRI done on 3/15/98, consistent with slight to moderate disc protrusion at C6-C7.

DIAGNOSIS        1) CERVICAL SPINE SPRAIN/STRAIN. CHRONIC.
                 2) SLIGHT TO MODERATE DISC PROTRUSIONS AT C6-C7.

DISCUSSION

Mr. Robert Escamilla sustained an industrial injury on 3/26/93, while performing his usual and customary job activity as a lineman for Southern California Edison Company. At that time, he was unexpectedly caught by a rope, causing him to be thrown up into the air 20 feet, landing on his right shoulder and neck area. The patient has noted recent increasing pain on his neck with no additional injury or trauma. This is consistent with residuals of a chronic cervical spine sprain/strain with associated slight to moderate disc protrusion at C6-C7. I did not find any abnormal neurological findings.

The patient's orthopedic condition is consistent with the aforementioned diagnosis and corroborated described objective findings. This is consistent with the industrial injury

Humberto A. Galleno, M.D.
Robert Escamilla - Claim #930-529
14 June 2001
Page Six

sustained on 3/26/93.

TREATMENT

In view of his recent progressive symptoms, he is in need of a short course of conservative treatment. He will be referred for physical therapy treatments on the cervical spine and has been prescribed Vioxx 25 mgs once po QD. Due to the persistent right upper extremity numbness and paresthesias, he is going to be referred for a right upper extremity.

The patient may continue working on regular duty and is to return in 2 weeks for re-evaluation.

APPORTIONMENT

As per the history obtained, not indicated.

**The patient returned on July 12, 2001.** He reports improvement with less pain on his neck, less numbness and paresthesias. Therapy has been helping and has been taking the Vioxx without side effects. Examination revealed increased cervical motion with less apprehension and no guarding, with less pain. There was slight numbness over the lateral aspect of the right arm and stable neurological findings. He will continue with therapy, medication, and will be referred for a right upper extremity nerve conduction velocity studies and EMG. He is to continue working on regular duty and return in 2 weeks for re-evaluation.

Sincerely yours,

Humberto A. Galleno, M.D.

HG/mm
(dt 7/25/01)

"I declare under penalty of perjury that the information contained in this report and its attachments, if any, is true and correct to the best of my knowledge and belief, except as to information that I have indicated I received from others. As to that information, I declare under penalty of perjury that the information accurately describes the information provided to me and, except as noted, herein, that I believe it to be true."

Humberto A. Galleno, M.D.
Robert Escamilla - Claim #930-529
14 June 2001
Page Seven


"I have not violated Labor Code Section 139.3, and the contents of this report and bill are true and correct to the best of my knowledge. This statement is made under penalty of perjury."

Date of Report: <u>14 June 2001.</u>

Dated this <u>27th</u> day of <u>July, 2001,</u> in Los Angeles County, California.

Humberto A. Galleno, M.D.

1      PROOF OF SERVICE

2

3     STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

4     I am employed in the County of Los Angeles, State of

5   California.

6     I am over the age of 18 and not a party of the within action;

7   my business address is:

8                315 N. 3rd Ave., Suite 302
                  Covina, CA. 91723

9

10    On Friday, July 27, 2001,_____, 19___, I served the

11

12    I foregoing document (s) described as: _Primary Treating Physician Comprehensive_

13   _Initial Orthopedic Evaluation Report on Mr. Robert Escamilla_

      _Industrial Case: D/Injury: 3/26/93._

14    on the interested parties in this action by placing a true copy thereof in a

15   sealed envelope and addressed as follows:

16

17   Southern California Edison Company
     Workers' Compensation Division  – Attn Linda Ramos
     Post Office Box 5038

18   Rosemead, CA   91770

19   Workers' Compensation Appeals Board
     c/o Southern California Edison Company

20

21   Southern California Edison Company
     1000 Patero Grande
     Monterey Park, CA 91754

22

23    I caused such envelope with postage thereon fully prepaid to be placed

24   in the United States mail at California.   I declare under perjury of penalty

25   under the laws of the State of California that the above is true and correct.

26    _____     _____
      TYPE or PRINT NAME          SIGNATURE

27

**HUMBERTO A. GALLENO, M.D., INC.**
FELLOW OF AMERICAN ACADEMY OF ORTHOPAEDIC SURGERY
DIPLOMAT OF THE AMERICAN BOARD OF ORTHOPEDIC SURGERY
INTER-COMMUNITY PROFESSIONAL PLAZA
315 N. 3RD. AVE., SUITE 302
COVINA, CALIFORNIA 91723
(626) 332-1194    FAX (626) 915-3162

04 September 2003

<u>PRIMARY TREATING PHYSICIAN ORTHOPEDIC REEVALUATION REPORT</u>

Southern CA Edison Co W/C
P.O. Box 5038
Rosemead, CA 91770
ATTN: John Hotter

| | |
|---|---|
| RE: | ESCAMILLA, ROBERT |
| | 831 N Park Ave. |
| | Covina, CA 91723 |
| SOCIAL SECURITY # | 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 |
| BIRTHDATE | 05/21/56 |
| | |
| EMPLOYER | SOUTHERN CA EDISON CO |
| | 1000 Potrero Grande |
| | Monterey Park, CA 91754 |
| OCCUPATION | TROUBLEMAN |
| | |
| INDUSTRIAL CARRIER | SOUTHERN CA EDISON CO W/C |
| | |
| CLAIM # | WC19880576 |
| ADJUSTER | JOHN HOTTER |
| | |
| D/INJURY | 04/05/98 |
| D/EXAMINATION | 09/04/03 |

Dear Mr. Hotter:

After the last evaluation on 06/12/02, Mr. Escamilla returned on 09/04/03 for orthopedic reevaluation because of recurrent severe pain to his lower back. Mr. Escamilla has been performing his regular duties, he stated that on 09/02/03 he noted the recurrent onset of progressive pain to his right lumbar area radiating to the right buttock. He reported no specific injury or trauma. He reported no specific leg pain, numbness or paresthesias. He denies

RE: Robert Escamilla
September 4, 2003
Page Two

any bowel or bladder problems.

## EXAMINATION OF THE LUMBOSACRAL SPINE

Patient stands with straight posture, he walks with cautious gait, guarded limited motion of the lumbosacral spine, trigger point tenderness to the right lumbar area. Lumbar flexion 40, extension 0 w/increased pain. Positive straight leg raising on the right with increased back pain and buttock pain. Negative straight leg raising on the left. No leg numbness or weakness. Trace bilateral ankle reflexes, 1+ knee reflexes.

Repeat lumbar x-rays reveal no significant changes with slight decreased disc space at L4-5.

DIAGNOSIS     1)   ACUTE RECURRENT LUMBOSACRAL SPINE SPRAIN-
                   STRAIN.
              2)   3 MM LUMBAR DISC PROTRUSION AT L4-5.

## DISCUSSION

Mr. Escamilla returned today because of recent progressive recurrent right lumbar pain while performing his regular duties in the absence of any specific additional injury or trauma. This is consistent with a flare up of his chronic low back condition as a result of the industrial injury sustained on 04/05/98. At this time there is no clinical evidence of lumbar radiculitis nor radiculopathy.

## TREATMENT

The patient was treated with a right lumbar Xylocaine/Celestone injection without complications. He was prescribed Vioxx, he is going to be referred for a course of physical therapy treatments.

RE: Robert Escamilla
September 4, 2003
Page Three

He will be placed on temporary disability until 09/18/03, return on 09/18/03.

Sincerely yours,

Humberto A. Galleno, M.D.

HG/lr
(dt 09/09/03)

"I declare under penalty of perjury that the information contained in this report and its attachments, if any, are true and correct to the best of my knowledge and belief, except as to information that I have indicated I received from others. As to that information, I declare under penalty of perjury that the information accurately describes the information provided to me and, except as noted herein, that I believe it to be true."

"I have not violated Labor Code Section 139.3, and the contents of this report and bill are true and correct to the best of my knowledge. This statement is made under penalty of perjury."

Date of Report: September 4, 2003

Dated this 9th day of September 2003, in Los Angeles County, California.

Humberto A. Galleno, M.D.

# CITRUS VALLEY MEDICAL CENTER
### INTER-COMMUNITY CAMPUS
210 San Bernardino Road
Covina, California 91723

**ALLERGIES:  PENICILLIN**

DATE OF ADMISSION:  03/05/2004

CHIEF COMPLAINT & PRESENT ILLNESS
This patient complains of cervical pain radiating into the right lower extremity involving the index finger and thumb.  The patient has never had surgery.

The patient's problem started when he suffered a work related injury on 3/26/93.  The pain waxed and waned, but since this last September the pain has increased in severity and has become more constant.

The patient now enters for a cervical epidural steroid injection through the courtesy of Dr. Galleno.

FAMILY HISTORY
Positive for diabetes mellitus, cancer, and myocardial infarction.

SOCIAL HISTORY
The patient does not smoke and is only a very rare social drinker.

PAST MEDICAL HISTORY
The patient denies any history of rheumatic fever, rheumatic heart disease, or jaundice.

PAST SURGICAL HISTORY
The patient had an epidural which I did in the low back.

ALLERGIES
Penicillin.

MEDICATIONS
Vioxx.  Ambien.  Vicodin.

REVIEW OF SYSTEMS
HEAD, EYES, EARS, NOSE AND THROAT:  The patient denies any history of headache, dizziness, auditory or visual problems.
CARDIOVASCULAR:  There is no history of myocardial infarction, angina, or dysrhythmia.  He gives a questionable history of hypertension.
RESPIRATORY:  There is no history of asthma, shortness of breath, or tuberculosis.

Page 1 of 2
H. Galleno, M.D.

| | |
|---|---|
| | **PATIENT:**  ESCAMILLA, ROBERT |
| | **MRU#:** M00503167    **ROOM:** I.OPH |
| | **ACCT#:** I008471591 |
| **HISTORY & PHYSICAL** | **PHYSICIAN:** BEN SHWACHMAN, M.D. |

# CITRUS VALLEY MEDICAL CENTER
## INTER-COMMUNITY CAMPUS
### 210 San Bernardino Road
### Covina, California 91723

GASTROINTESTINAL:  There is no history of ulcer, hiatal hernia, pilonidal sinus or cyst.
GENITOURINARY:  There is no history of genitourinary tract stone, infection, or prostatism.
CENTRAL NERVOUS SYSTEM:  There is no history of stroke or seizure.
ENDOCRINE:  There is no history of diabetes or thyroid disease.

PHYSICAL EXAMINATION
VITAL SIGNS:  Blood pressure is 127/86.  Pulse is 62 per minute. Respirations are 18 per minute.
GENERAL APPEARANCE:  The patient is a male in no apparent cardiorespiratory distress and fully oriented.
NECK:  No masses are noted.  No bruits are heard.
HEART:  Normal sinus rhythm.  No murmurs are noted.
LUNGS:  Clear to auscultation.
ABDOMEN:  Soft.  Nontender.  No masses are noted.
RECTAL:  Examination is deferred as inappropriate to this procedure.

IMPRESSION
Cervical disc syndrome with radiculopathy.

INFORMED CONSENT
The patient understands the indications, alternatives, risks and benefits of the proposed procedure, and accepts these risks and wishes to proceed.


BS:br/04113297
D: 03/05/2004   10:42
T: 03/05/2004   10:53                    _____
JOB#: 34688                               BEN SHWACHMAN, M.D.

CC:  H. Galleno, M.D.


Page 2 of 2
H. Galleno, M.D.                          PATIENT:  ESCAMILLA, ROBERT

                                          MRU#: M00503167
                                                           ROOM:  I.OPH
                                          ACCT#: I008471591

HISTORY & PHYSICAL                        PHYSICIAN: BEN SHWACHMAN, M.D.

**HUMBERTO A. GALLENO, M.D., F.A.A.O.S., INC.**
DIPLOMATE OF THE AMERICAN BOARD OF ORTHOPEDIC SURGERY
INTER-COMMUNITY PROFESSIONAL PLAZA
315 N. 3rd AVE., SUITE 302
COVINA, CALIFORNIA 91723
(626) 332-1194      FAX (626) 915-3162

NAME _Robert Ercinelle_ DATE _11 8 04_

ADDRESS _____ CALIF.

℞

_Vioxx 25mg #30_

_1-T PO QD_

LIC. NO. GO-38401
BNDD AG8495 360

REP _____ TIMES
LABEL ☐
IND. ☐

_____ M.D.
CALL FOR REFILL DURING OFFICE HOURS ONLY UNLESS EMERGENCY

---

**HUMBERTO A. GALLENO, M.D., INC.**
FELLOW OF AMERICAN ACADEMY OF ORTHOPAEDIC SURGERY
DIPLOMAT OF THE AMERICAN BOARD OF ORTHOPEDIC SURGERY
INTER-COMMUNITY PROFESSIONAL PLAZA
315 N. 3RD. AVE., SUITE 302
COVINA, CALIFORNIA 91723
(626) 332-1194      FAX (626) 915-3162

NAME _Robert Ercinelle_ DATE _4/8/04_

ADDRESS _____ CALIF.

℞

_Vioxx 25mg #30_

_1-T PO QD_

LIC. NO. GO-38401
BNDD AG8495 360

REP _____ TIMES
LABEL ☐
IND. ☐

_____ M.D.
CALL FOR REFILL DURING OFFICE HOURS ONLY UNLESS EMERGENCY

**HUMBERTO A. GALLENO, M.D., F.A.A.O.S., INC.**
DIPLOMATE OF THE AMERICAN BOARD OF ORTHOPEDIC SURGERY
INTER-COMMUNITY PROFESSIONAL PLAZA
315 N. 3rd AVE., SUITE 302
COVINA, CALIFORNIA 91723
(626) 332-1194      FAX (626) 915-3162

NAME _____ DATE _____

ADDRESS _____ CALIF.

℞

LIC. NO. GO-38401
BNDD AG8495 360

REP _____ TIMES
LABEL ☐
IND. ☐

_____ M.D.

CALL FOR REFILL DURING OFFICE HOURS ONLY UNLESS EMERGENCY

---

**HUMBERTO A. GALLENO, M.D., F.A.A.O.S., INC.**
DIPLOMATE OF THE AMERICAN BOARD OF ORTHOPEDIC SURGERY
INTER-COMMUNITY PROFESSIONAL PLAZA
315 N. 3rd AVE., SUITE 302
COVINA, CALIFORNIA 91723
(626) 332-1194      FAX (626) 915-3162

NAME _____ DATE _____

ADDRESS _____ CALIF.

℞

LIC. NO. GO-38401
BNDD AG8495 360

REP _____ TIMES
LABEL ☐
IND. ☐

_____ M.D.

CALL FOR REFILL DURING OFFICE HOURS ONLY UNLESS EMERGENCY

**HUMBERTO A. GALLENO, M.D., F.A.A.O.S., INC.**
DIPLOMATE OF THE AMERICAN BOARD OF ORTHOPEDIC SURGERY
INTER-COMMUNITY PROFESSIONAL PLAZA
315 N. 3rd AVE., SUITE 302
COVINA, CALIFORNIA 91723
(626) 332-1194      FAX (626) 915-3162

NAME _____ DATE _9/4/03_

ADDRESS _____ CALIF.

℞

LIC. NO. GO-38401
BNDD AG8495 360

---

**HUMBERTO A. GALLENO, M.D., INC.**
FELLOW OF AMERICAN ACADEMY OF ORTHOPAEDIC SURGERY
DIPLOMAT OF THE AMERICAN BOARD OF ORTHOPEDIC SURGERY
INTER-COMMUNITY PROFESSIONAL PLAZA
315 N. 3RD. AVE., SUITE 302
COVINA, CALIFORNIA 91723
(626) 332-1194      FAX (626) 915-3162

NAME _Robert Bramell_ DATE _____

ADDRESS _____ CALIF.

℞

Vioxx 25mg #30

---

**HUMBERTO A. GALLENO, M.D., F.A.A.O.S., INC.**
DIPLOMATE OF THE AMERICAN BOARD OF ORTHOPEDIC SURGERY
INTER-COMMUNITY PROFESSIONAL PLAZA
315 N. 3rd AVE., SUITE 302
COVINA, CALIFORNIA 91723
(626) 332-1194      FAX (626) 915-3162

NAME _Robert Bramell_ DATE _____

ADDRESS _____ CALIF.

℞

Vioxx 25mg #30

LIC. NO. GO-38401
BNDD AG8495 360

REP _____ TIMES
LABEL ☐
IND. ☐

_____ M.D.

CALL FOR REFILL DURING OFFICE HOURS ONLY UNLESS EMERGENCY

Started treating
w/Dr. Galleno.
January 19,
2000

Vioxx:

Stopped
1/07/0

Vioxx 25mg
9/30/2000

*Prescribed*

**HUMBERTO A. GALLENO, M.D., F.A.A.O.S., INC.**
DIPLOMATE OF THE AMERICAN BOARD OF ORTHOPEDIC SURGERY
INTER-COMMUNITY PROFESSIONAL PLAZA
315 N. 3rd AVE., SUITE 302
COVINA, CALIFORNIA 91723
(626) 332-1194     FAX (626) 915-3162

NAME _Robert Esamell_   DATE _4/17/02_

ADDRESS _____ CALIF.

℞

_Vioxx 25 mg #30_

_Sig: 1 PO with meals_

LIC. NO. GO-38401
BNDD AG8495 360
REP _____ TIMES
LABEL ☐
IND. ☐
_____ M.D.
CALL FOR REFILL DURING OFFICE HOURS

---

**HUMBERTO A. GALLENO, M.D., F.A.A.O.S., INC.**
DIPLOMATE OF THE AMERICAN BOARD OF ORTHOPEDIC SURGERY
INTER-COMMUNITY PROFESSIONAL PLAZA
315 N. 3rd AVE., SUITE 302
COVINA, CALIFORNIA 91723
(626) 332-1194     FAX (626) 915-3162

NAME _Robert Esamell_   DATE _5/5/03_

ADDRESS _____ CALIF.

℞

_Vioxx 25 mg #30_

_Sig: _____

---

**HUMBERTO A. GALLENO, M.D., F.A.A.O.S., INC.**
DIPLOMATE OF THE AMERICAN BOARD OF ORTHOPEDIC SURGERY
INTER-COMMUNITY PROFESSIONAL PLAZA
315 N. 3rd AVE., SUITE 302
COVINA, CALIFORNIA 91723
(626) 332-1194     FAX (626) 915-3162

NAME _Rosa Estrada_   DATE _12/17/04_

ADDRESS _____ CALIF.

℞

_Tylenol #3 #30_

_Sig: 1 PO q4-6h prn pain_

_Soma #30_

_Sig: 1 PO q8h prn spasm_

LIC. NO. GO-38401
BNDD AG8495 360
REP _____ TIMES
LABEL ☐
IND. ☐
_____ M.D.
CALL FOR REFILL DURING OFFICE HOURS ONLY UNLESS EMERGENCY

*[handwritten]* Re-ordered

**HUMBERTO A. GALLENO, M.D., F.A.A.O.S., INC.**
DIPLOMATE OF THE AMERICAN BOARD OF ORTHOPEDIC SURGERY
INTER-COMMUNITY PROFESSIONAL PLAZA
315 N. 3rd AVE., SUITE 302
COVINA, CALIFORNIA 91723
(626) 332-1194     FAX (626) 915-3162

NAME *Robert Brownell*     DATE *5/3/02*

ADDRESS _____ CALIF.

℞

*[handwritten prescription]* Vioxx 25mg #30

*[handwritten]*

LIC. NO. GO-38401
BNDD AG8495 360

REP _____ TIMES
LABEL ☐
IND. ☐

_____ M.D.
CALL FOR REFILL DURING OFFICE HOURS ONLY UNLESS EMERGENCY

---

**HUMBERTO A. GALLENO, M.D., F.A.A.O.S., INC.**
DIPLOMATE OF THE AMERICAN BOARD OF ORTHOPEDIC SURGERY
INTER-COMMUNITY PROFESSIONAL PLAZA
315 N. 3rd AVE., SUITE 302
COVINA, CALIFORNIA 91723
(626) 332-1194     FAX (626) 915-3162

NAME *Robert Brownell*     DATE *4/3/02*

ADDRESS _____ CALIF.

℞

*[handwritten prescription]* Vioxx 25mg #30

*[handwritten]*

LIC. NO. GO-38401
BNDD AG8495 360

REP _____ TIMES
LABEL ☐
IND. ☐

_____ M.D.
CALL FOR REFILL DURING OFFICE HOURS ONLY UNLESS EMERGENCY

**HUMBERTO A. GALLENO, M.D., INC.**
FELLOW OF AMERICAN ACADEMY OF ORTHOPAEDIC SURGERY
DIPLOMAT OF THE AMERICAN BOARD OF ORTHOPEDIC SURGERY
INTER-COMMUNITY PROFESSIONAL PLAZA
315 N. 3RD. AVE., SUITE 302
COVINA, CALIFORNIA 91723
(626) 332-1194     FAX (626) 915-3162

NAME _____ DATE _____

ADDRESS _____ CALIF.

℞

LIC. NO. GO-38401
BNDD AG8495 360

REP _____ TIMES
LABEL ☐
IND. ☐

_____ M.D.

CALL FOR REFILL DURING OFFICE HOURS ONLY UNLESS EMERGENCY

---

**HUMBERTO A. GALLENO, M.D., F.A.A.O.S., INC.**
DIPLOMATE OF THE AMERICAN BOARD OF ORTHOPEDIC SURGERY
INTER-COMMUNITY PROFESSIONAL PLAZA
315 N. 3rd AVE., SUITE 302
COVINA, CALIFORNIA 91723
(626) 332-1194     FAX (626) 915-3162

NAME _____ DATE _____

ADDRESS _____ CALIF.

℞

LIC. NO. GO-38401
BNDD AG8495 360

REP _____ TIMES
LABEL ☐
IND. ☐

_____ M.D.

CALL FOR REFILL DURING OFFICE HOURS ONLY UNLESS EMERGENCY

**HUMBERTO A. GALLENO, M.D., F.A.A.O.S., INC.**
DIPLOMATE OF THE AMERICAN BOARD OF ORTHOPEDIC SURGERY
INTER-COMMUNITY PROFESSIONAL PLAZA
315 N. 3rd AVE., SUITE 302
COVINA, CALIFORNIA 91723
(626) 332-1194        FAX (626) 915-3162

NAME _____ DATE _____

ADDRESS _____ CALIF.

℞

LIC. NO. GO-38401
BNDD AG8495 360

REP _____ TIMES
LABEL ☐
IND. ☐

_____ M.D.

CALL FOR REFILL DURING OFFICE HOURS ONLY UNLESS EMERGENCY

## CITRUS VALLEY MEDICAL CENTER
### INTER-COMMUNITY CAMPUS
210 San Bernardino Road
Covina, California 91723

362028

DATE OF CONSULTATION:   08/28/2006
CONSULTING PHYSICIAN:    BRADLEY ROSENBERG, M.D.
ATTENDING PHYSICIAN:     WEN-CHE CHUNG, M.D.

NEUROLOGY CONSULTATION

CHIEF COMPLAINT:
Headache.

HISTORY OF PRESENT ILLNESS:
The patient is a 50-year-old left-handed male who has had problems with
intermittent migraine headaches ever since he was a child.  A typical
had would be characterized by throbbing pain with nausea and vomiting
and he would normally get one headache per week or sometimes more
frequently, but over the past few years, this headaches have generally
been less frequent and less severe.

However, starting on 07/18/2006, he has had a constant pain in the
right side of his neck which would radiate up to the area around the
right ear and the right forehead.  He has been going for outpatient
physical therapy for his neck.  He does not have any significant neck
pain now.  He did have head CT scan without contrast earlier this
month, which was reportedly normal.

On Saturday, he started having more severe pain in the right side of
the head, which would travel a little bit over to the left side.  He
was admitted yesterday and was given some morphine for pain and has had
some nausea and vomited once since starting the morphine.

PAST MEDICAL HISTORY:
Significant for head and neck trauma in 1992.  He was thrown into the
air and landed on his head and ear at work.  An MRI scan of the
cervical spine at that time did show some disk injury, and he has had
problems with intermittent numbness in the right upper extremity which
radiates down to the fingers of the right hand ever since then.  In
1995, when stooping below an air conditioning unit he hit the top of
his on the unit, which aggravated his neck pain and arm pain.  There is
no other history of significant head or neck trauma in the past.

Past medical history is significant for hypertension.  There is no
history of diabetes, heart problems, or asthma.

Page 1 of 4
ROSENBERG, BRADLEY, M.D.

PATIENT:  ESCAMILLA, ROBERT

MRU#: M00503167          ROOM: I.0306

ACCT#: I009838038

CONSULTATION

PHYSICIAN: WEN-CHE CHUNG, M.D.

BR

## CITRUS VALLEY MEDICAL CENTER
### INTER-COMMUNITY CAMPUS
210 San Bernardino Road
Covina, California 91723

PREVIOUS OPERATIONS:
None.

FAMILY HISTORY:
The patient has one sister who had gestational diabetes and a brother
who is alive and well.  The patient's father has hypertension.  His
mother had diabetes and died from congestive heart failure.

SOCIAL HISTORY:
The patient has never smoked cigarettes.  He lives at home with his
wife and two sons.  He works for Southern California Edison doing line
work.  This does involve lifting as well as  working in crawl spaces
and climbing poles.  He has not worked since  Friday of last week.

MEDICATIONS AS AN OUTPATIENT:
Ambien-CR 6.25 mg one to two tablets q. h.s.  Inderal 20 mg t.i.d.
Motrin 800 mg t.i.d.  Darvocet N-100 p.r.n. and Maxalt 10 mg q. two
hours p.r.n.

ALLERGIES:
PENICILLIN results in hives.  He says SHELLFISH causes shortness of
breath.

REVIEW OF SYSTEMS:
HEAD, EYES, EARS, NOSE AND THROAT:  The patient does have headaches.
Please see history of present illness.  He denies dizziness, change in
hearing, change in vision, rhinorrhea, nasal congestion, or sore
throat.
CARDIOVASCULAR:  The patient denies chest pain, shortness of breath, or
palpitations.
PULMONARY:  The patient denies coughing or wheezing.
GASTROINTESTINAL:  The patient denies abdominal pain, nausea or
vomiting, except for some nausea and vomiting which is presumably from
the morphine.  He denies diarrhea or constipation.
GENITOURINARY:  The patient denies dysuria or frequency.
SYSTEMIC:  The patient denies fevers, weight gain or weight loss.

PHYSICAL EXAMINATION:
GENERAL APPEARANCE:  This is a well-developed 50-year-old male in mild
distress from headache.
VITAL SIGNS:  Blood pressure is 144/84.  Pulse is 54 per minute.
Respiratory rate is 17 per minute.  Temperature is 98.1 degrees

Page 2 of 4
ROSENBERG, BRADLEY, M.D.

**PATIENT:**  ESCAMILLA, ROBERT

**MRU#:** M00503167      **ROOM:** I.0306

**ACCT#:** I009838038

CONSULTATION

**PHYSICIAN:** WEN-CHE CHUNG, M.D.

# CITRUS VALLEY MEDICAL CENTER
### INTER-COMMUNITY CAMPUS
210 San Bernardino Road
Covina, California 91723



Fahrenheit.
SKIN: Unremarkable.
HEAD, EYES, EARS, NOSE AND THROAT: Intact.
NECK: Supple, with full range of motion. He had some mild tenderness to palpation over the cervical muscles on the right.
HEART: Regular rhythm with an S1 and S2. No murmurs.
PULSES: Carotids are 2+ without bruits. Brachial and radial pulses are 2+ and symmetric. Pressure over the temporal arteries does produce some decreased throbbing on the right side of the head.

NEUROLOGICAL EXAMINATION:
MENTAL STATUS: The patient is alert, cooperative, oriented times three and has normal speech.
CRANIAL NERVES: Examination shows the visual fields are full. Pupils are 2 mm and reactive to 1.5 mm to light and accommodation. Fundus examination does not reveal any papilledema or hemorrhages. Extraocular movements are intact. He does have decreased light touch with some dysesthesias in the distribution of the right C3 dermatome. Cranial nerves V-XII are intact.
MOTOR: The tone is normal. There is no atrophy or fasciculations. Strength is grade 5 in all extremities. There is no pronator drift and rapid alternating movements are done well.
SENSORY: Sensation to light touch and proprioception are intact.
COORDINATION: Testing shows finger-to-nose is normal. Gait was not tested.
REFLEXES: The reflexes are absent in both upper extremities. Knee jerks are 2 bilaterally. Ankle jerks are 2 - bilaterally. There is no Babinski.

DIAGNOSTIC DATA:
Head CT scan without contrast performed against this evening is normal on personal view.

ASSESSMENT:
Headaches. The patient does have numbness on the distribution of the right C3 dermatome and I suspect this is from cervical disk disease. This may also be triggering migraine headache since he has a long history of migraine.

PLAN:
I will try the patient on Decadron 4 mg q.i.d. to see if this helps with his pain. We will continue IV morphine for now.

Page 3 of 4
ROSENBERG, BRADLEY, M.D.

CONSULTATION

PATIENT: ESCAMILLA, ROBERT

MRU#: M00503167

ROOM: I.0306

ACCT#: I009838038

PHYSICIAN: WEN-CHE CHUNG, M.D.

# CITRUS VALLEY MEDICAL CENTER
### INTER-COMMUNITY CAMPUS
210 San Bernardino Road
Covina, California 91723



Further workup and treatment will depend upon his response to medication.

We did try to get an MRI scan of the brain today, but the patient is claustrophobic and cannot do a closed MRI.

Thank you for consulting me on this pleasant and challenging patient.


BR:lcb/09123095
D: 08/28/2006  18:37
T: 08/29/2006  08:45                    BRADLEY ROSENBERG, M.D.
JOB#: 26878


Page 4 of 4
ROSENBERG, BRADLEY, M.D.

**PATIENT:** ESCAMILLA, ROBERT

**MRU#:** M00503167          **ROOM:** I.03C

**ACCT#:** I009838038

CONSULTATION

**PHYSICIAN:** WEN-CHE CHUNG, M.D.

# San Gabriel Valley Medical Center
## Emergency Department Medical Record
438 W. Las Tunas Drive, San Gabriel, CA 91776
Phone: 626-570-8514 / Fax: 626-457-7144

### Nursing Assessment I

**NURSING 1**

Name: ESCAMILLA, ROBERT
Medical Record #: 2953560
Financial #: 0024274250 Visit #: 1
DOS: 03/01/2007 DOB: 05/21/1956



**T R I A G E**

Time In: 09 : 30   Age: 50 □ M □ F   PMD: ___ Trans. ___
Assess. Time: 11 : 30   Historian: □ Patient □ Parent □ Spouse □ Other: ___

Triage Location:
☑ Pt. Rm.
□ Triage Rm.

**Arrival Mode:**
□ Automobile □ Police
□ Ambulance ☑ RMA
□ Other

**Admitted From:**
□ Home ☑ MD Office
□ Work □ ECF
□ Other

**Arrival Condition:**
□ Good □ Serious
□ Fair □ Critical

**Triage Class:**
□ Nonurgent
□ Urgent
□ Emergent

**Treatment Prior to Arrival:**
□ None □ Morph.
□ C-spine □ Lasix
□ Splinting □ ASA   PB IIU
□ Oxygen □ Albuterol
□ IV Line □ Nitro   EPI X 2
□ Other, specify   ATRO
Defib → 360 ×

**Chief Complaint / Pertinent PMH / Physical Assess / Additional Meds & Allergy List / Initials** ___

D - M full arrest @ work - CPR in
field by witness - VFib + defib x
3 w/ EPI/VPR ATROY X 2 given .
Intubated in field .

HTN

(Include date / time of injury/illness if WC case and employee statement regarding circumstances)

**PERMISSIONS:**
OK For Last Name On Board
□ Yes □ No □ Unable to determine
OK To Fax PMD Record Copy
□ Yes □ No □ Unable to determine

Triage Nurse Signature

| Time | Initials | Temp. O/R | Pulse | Rhythm | BP | Resp. RA/__ | O2 Sat. | Pain | N/V/D | Skin |
|---|---|---|---|---|---|---|---|---|---|---|
| 1930 | 8 | ⟷ | Asystole | — | 0 | bagged | — | — | — | mottled |
| 0950 | K | | Asystole | | | | | | | |

**List of Prescription & Recent OTC Medications:**
□ None ☑ Unknown □ See List

**Immunization Status:**
□ None □ Current
□ Unsure □ See notes
□ Tet. Tox. ( >5yr / < 5yr )

□ N □ Y  Learning Preference Issues
□ N □ Y  Care Barriers
□ N □ Y  Education Barriers
□ N □ Y  (+) Abuse Screen
□ N □ Y  Abn. Developmental Assess.
□ N □ Y  Abn. Nutritional Assessment
□ N □ Y  Abn. Functional Assessment

Allergies: □ None ☑ Unknown

Child's Weight ___ Kg

## Disposition

**Time Out:** :
**Condition on Discharge:**
□ Good □ Fair
□ Serious □ Critical
☑ Expired  1011

**Discharge Disposition:**
□ Home □ LWBS
□ Custody □ Eloped
□ Morgue □ AMA
□ ECF

**Transfer:**
□ Hospital
□ ECF
See Transfer Forms

**Admit Area:**
□ Ward □ OR
□ Monitored □ OB
□ ICU/CCU □ Cath Lab
□ 24 Hour Observation

**Consultations:**
□ Soc. Serv.
□ Pastoral
□ Case Man.

Admit Room/Bed No: ___

Admitting Phys: ___

□ Admit with ALS drugs, monitor, defib

Admitting ED Nurse Initials: ___

One Admitting Physician Agrees to Admit Patient: ___

Is Patient To Be Held In ED Awaiting Bed: □ No □ Yes

Triage Nurse Signature Required Only If Triage Nurse Is Not Also the Primary Nurse

Primary Nurse ___

Other Signature ___

**San Gabriel Valley Medical Center**
**Emergency Department Medical Record**
438 W. Las Tunas Drive, San Gabriel, CA 91776
Phone: 626-570-6514 / Fax: 626-457-7144



Narrative

Name: ESCAMILLA, ROBERT
Medical Record #: 2953560
Financial #: 0024274250  Visit #: 1
DOS :03/01/2007 DOB :05/21/1956

☐ Written Only
☐ Dictated Only
☐ Written & Dictated

## Medical Decision Making, Interval Progress Notes, Disposition, Diagnosis

Rhythm strip - Asystole

ACLS  Chest compressions + ventilations

Lung sounds heard through Et tube
to confirm position.

Epi, bicarb, dopamine drip, ACLS for
over 1/2 hr. Episodes of PEA, no pulses.

No response to ACLS. Pronounced expired
@ 1000.

Dr. Wen-che, Chung called will sign Death Certificate

| Lab Test Results | | |
|---|---|---|
| **Hematology** | | **Dip UA** |
| All WNL Except as Noted ☐ | | All WNL Except as Noted ☐ |
| Hb ____ | | Sp G ____ |
| Hct ____ | | Ket ____ |
| Plat. ____ | | Prot ____ |
| WBC ____ | | Blood ____ |
| PMN ____ | | LE ____ |
| Lym ____ | | Nitr ____ |
| Mon ____ | | **Micro UA** |
| Bas ____ | | WBC ____ |
| Eos ____ | | RBC ____ |
| **Chemistry** | | Other ____ |
| All WNL Except as Noted: | | **Miscellaneous** |
| Lytes ☐ | | CPK ____ |
| Chem 7 ☐ | | Trop ____ |
| Chem 14 ☐ | | BNP ____ |
| Glu ____ | | PT ____ |
| BUN ____ | | PTT ____ |
| Creat ____ | | Amyl ____ |
| Na ____ | | Lip ____ |
| K ____ | | S. Preg ____ |
| Cl ____ | | U. Preg ____ |
| CO2 ____ | | Dir. Bili ____ |
| Cal ____ | | TSH ____ |
| Bili ____ | | **Drug Levels** |
| Prot ____ | | Dig ____ |
| Alb ____ | | ETOH ____ |
| SGOT ____ | | APAP ____ |
| A. Phos ____ | | ASA ____ |
| SGPT ____ | | Pheno ____ |
| **Other** | | Tegr ____ |
| | | Tox ____ |
| | | Dilantin ____ |

| Time Admitting Physician Agrees to Admit Patient: | : | Is Patient To Be Held In ED? ☐No ☐Yes |
|---|---|---|

☐ Prescription Given
☒ Imag. Studies Rev. With Rad.
☒ Critical Care, 30-89min.
☐ Physician Consult*
☐ Imaging Studies Visualized By Treating ED Phys.
☐ Crit. Care, 90-120min.
☐ Old Records Reviewed*
☐ Family Conference*

* Content of record review, consult or family conference should be documented above

☐ I, the teaching physician, performed a history and physical on the patient and was solely responsible for patient care without resident collaboration.

☐ Although an assessment of the patient was performed by the resident not in my presence, I, the teaching physician, independently assessed the patient regarding the key elements of the history and physical and, unless otherwise stated above, concur with the findings and management of the patient. I have reviewed any test results and am in agreement with the diagnosis and disposition

☐ I, the teaching physician, was in attendance during the critical components of the resident-performed H & P and concur with the findings and plan of care unless otherwise stated above. I have reviewed any test results and am in agreement with the diagnosis and disposition.

☐ I, the teaching physician, was in attendance during the key phases of the procedure(s)

**Diagnoses:** Cardiac Arrest  Probable coronary disease w/ sudden cardiac death

Form: Decision Making

Provider Signature _____

Provider Signature _____

# San Gabriel Valley Medical Center
## Emergency Department Medical Record
438 W. Las Tunas Drive, San Gabriel, CA 91776
Phone: 626-570-6514 / Fax: 626-457-7144



**History**

Name: ESCAMILLA, ROBERT
Medical Record #: 2953560
Financial #: 0024274250 Visit #: 1
DOS :03/01/2007 DOB :05/21/1956

Provider Assess. Start Time: **9 30** | **Chief Complaint**

PATIENT UNABLE TO GIVE HISTORY BECAUSE:

Full arrest

ADDITIONAL HISTORY ALSO OBTAINED FROM:

L, 4, S, requires 4 HPI elements

## History of Present Illness

☐ Location ☐ Quality ☐ Severity ☐ Duration ☐ Timing ☐ Context ☐ Modifiers ☐ Assoc. S/ S

50 y/o o' BiB by paramedics was found on street behind
work truck. Pts co-workers state pt c/o CP & SOB x3 min.
Prior to CP 2 additional times this week. Pt was intubated by
paramedics.

Hx:

Dr. V.C. Cheng

NOTE: A (+) in the box indicates the finding
was present, a (-) indicates it was not.

ROS: L4 requires 1-9 / LS = 10

## Review of Systems

| Constit. | Eyes | E.N.T. | C.V. | Resp. | GI | GU | Optional Comments Regarding Positive ROS Responses |
|---|---|---|---|---|---|---|---|
| Fever | Lenses | Hearing | > BP | Cough | N/V/D/C | UTI | |
| Chills | Glaucoma | Sinuses | Palpitat. | SOB ☑ | PUD | Frequency | |
| Weak | Catarract | Teeth | CHF | DOE | Pain | Stones | |
| Malaise | < Vision | Throat | Angina | Wheeze | GB | Prostate | |
| < Appetite | Tearing | Nose | Lipids | Bronchitis | Bleed | Menses | |
| < Weight | Surgery | Surgery | Surgery | Pneum. | Surgery | Surgery | |

| Mus./Skel. | Neuro. | Skin/Br. | Psych. | Endocr. | Hem./Onc. | All./Im. | |
|---|---|---|---|---|---|---|---|
| Fr./Disloc. | Headache | Dermatitis | Depression | Wt. Loss | Anemia | Hives | |
| Arthritis | Str./TIA | Rash | Anxiety | Diabetes | Sickle | Allergies | |
| Back pain | Seizure | Itch | Neurosis | Polydipsia | NSAID | Hay fever | |
| Neck pain | Dizzy | Bruising | Psychosis | Polyuria | Transfus. | Latex | |
| Ext. pain | Memory | Br. mass | Bipolar | DKA | Bruising | Steroids | |
| Surgery | Mot/Sens. | Surgery | Hospital | Thyroid | Cancer | HIV | ☐ All other systems negative |

## Past Medical History

☐ None — Chest pain x2 this week
☐ Unk.
☐ CAD
☐ BP
☐ Diab.
☐ COPD

Surgery / Hospitalizations / Prior Significant Acute or
Chronic Medical Conditions Not Included in ROS

Provider Signature _____

## Family History

☐ None
☐ Unk.
☐ CAD
☐ BP
☐ Diab.
☐ Ca.

PMH / FH / SH – L=1, LS=2

## Social History

ALONE   SPOUSE   PARENT   CHILD   ECF

Cohab.

NONE   CURRENT   RETIRED   HOUSEWIFE

Occup.

NEVER   PAST   CURRENT   PACK/DAY

Smoke

ALCOHOL, OTHER   AMOUNT   FREQUENCY.

Drugs

Provider Signature _____
Dr. ...

Form: History, 4-5

EXHIBIT 2

1
2
3
4
5
6
7

8        **UNITED STATES DISTRICT COURT**

9        **EASTERN DISTRICT OF LOUISIANA**

10

| | |
|---|---|
| In re: Vioxx | MDL Case No. 1657 |
| | SECTION L |
| PRODUCTS LIABILITY | JUDGE FALLON |
| LITIGATION | MAGISTRATE JUDGE KNOWLES |
| *This document relates to* | |
| *Escamilla, Rosie v. Merck & Co, Inc.* | SUPPLEMENTAL   DECLARATION   OF |
| **2:08-cv-03573-EEF-DEK** | SWAMINATHA  B.  GURUDEVAN, M.D., |
| | FACC |
| Defendants. | |

17

SUPPLEMENTAL DECLARATION OF

18

SWAMINATHA V. GURUDEVAN, M.D. FACC

19

Re: Robert Escamilla

20

I, Swaminatha Gurudevan, M.D., FACC, declare as follows:

21
        1.      I am a physician licensed to practice medicine in the State of California since 1998.

22
I have been board certified in Internal Medicine since 2011. I received subspecialty certification in

23
Cardiovascular Diseases in 2005. I also received certification in Cardiovascular CT in 2007 and

24
Comprehensive Adult Echocardiography in 2008.

25
///
26
27
28

1

1     2.     I earned a Bachelor of Science degree in 1993 and a Master of Science degree in

2  1994 from Stanford University. I completed medical school at New York Medical College, earning

3  a medical degree in 1998. Continuing my training, I completed an Internal Medicine Residency in

4  2001 at University of California, San Diego (UCSD). In 2005, I completed a Cardiovascular Disease

5  Fellowship at UCSD. I completed my formalized medical training from 2005 to 2006 with a Cardiac

6  CT Mini-Fellowship at Harbor-UCLA Medical Center.

7     3.     I am currently an Assistant Professor of Clinical Medicine at the UCLA David

8  Geffen School of Medicine and serve as a full-time staff cardiologist in the cardiac noninvasive

9  laboratory at Cedars-Sinai Medical Center.

10     4.     My medical practice involves direct clinical care and treatment of patients suffering

11  from cardiovascular diseases, including myocardial infraction (MI) and sudden cardiac death (SCD).

12     5.     I have multiple scientific publications in professional medical journals to my credit

13  and I have served as the principal and sub-investigator on several research trials.

14     6.     I maintain memberships in many professional societies including the American

15  College of Cardiology, American Heart Association, American Society of Echocardiography and

16  Society for Cardiovascular CT.

17     7.     For the purposes of forming my expert opinions regarding Robert Escamilla's

18  medical condition on or about 3/1/07, I reviewed the salient portions of his medical chart including

19  his prior medical records, prior laboratory records and the 911 summary report from the City of

20  Alhambra. I also reviewed the sworn depositions from Alfonso Ahumada and Jeffrey Pickfort, who

21  were bystanders that performed CPR and witnessed the events leading up to his cardiac. Arrest. I

22  also reviewed the worn deposition of Wen-Chen Chung, MD who is Mr. Escamilla's primary care

23  physician.

24     Mr. Escamilla was a 50-year-old man with a past medical history of hypertension and

25  hyperlipidemia who was employed as a troubleman with Southern California Edison. He had a

26  longstanding history of lumbosacral disc disease and chronic low back pain for which he took

27  rofecoxib (Vioxx). On the morning of 3/1/07, while working, he developed 2 episodes of prolonged

28  chest pain lasting 45 to 60 minutes requiring him to stop work and sit down to rest. He had no prior

1  episodes of chest pain on earlier days and his chest pain continued while he was resting. While his

2  co-workers were making arrangements to take him to a hospital for medical attention, he suddenly

3  lost consciousness and was found to be both pulseless and apneic. CPR was started by two of his

4  co-workers (Jeffrey Brown and Alfonso Ahumada) and 911 was called. Upon arrival, the emergency

5  medical services crew connected a defibrillator to Mr. Escamilla, which revealed ventricular

6  fibrillation. Mr. Escamilla was then given a 360J countershock using the defibrillator as well as 2

7  mg of IV epinephrine and 1 mg of IV atropine. His rhythm then converted to asystole and despite

8  prolonged attempts at CPR while en route to the hospital, he passed away and was pronounced dead

9  at the Emergency Department at San Gabriel Valley Medical Center. In summary, Mr. Escamilla

10  had two significant risk factors for coronary artery disease (hypertension and hyperlipidemia) and

11  had two episode of chest discomfort followed by an acute cardiopulmonary arrest. Based upon my

12  review of Mr. Escamilla's relevant medical records, as well as based upon my training education and

13  experience, I am of the opinion that Mr. Escamilla suffered an acute myocardial infarction on

14  3/1/2007 that was complicated by ventricular fibrillation and sudden cardiac death.

15       8.       The most common cause of ventricular fibrillation arrest in the United States today

16  is plaque rupture leading to coronary thrombosis and acute myocardial infraction. It is further my

17  opinion that Mr. Escamilla, to a reasonable degree of medical probability, suffered acute myocardial

18  infarction because of his risk factors including hypertension, hyperlipidemia, and ongoing use of

19  rofecoxib (Vioxx) for long standing history of lumbosacral disc disease and chronic low back pain.

20  Based on my education, training, and experience, and based on my review of medical literature, use

21  of rofecoxib (Vioxx) increases risk of coronary events in at-risk patients, including increased risk

22  of myocardial infarction, cardiopulmonary arrest and sudden cardiac death. The use of rofecoxib

23  ///

24

25

26

27

28

1    (Vioxx), *particularly in combination* with Mr. Escamilla's other significant risk factors, to a

2    reasonable degree of medical probability, ultimately caused him to have acute myocardial infarction

3    which then resulted in acute cardiopulmonary arrest and his subsequent death.

4           I declare under penalty of perjury under the laws of the State of California that the forgoing

5    is true and correct.

6           Executed this ___2nd___ day of March, 2012, at ___2:00 PM___.

7

8                                               _____

9                                               SWAMINATHA GURUDEVAN, M.D.
                                                Declarant

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4

## CERTIFICATE OF SERVICE

I also hereby certify that the above and foregoing **PLAINTIFF, ROSIE ESCAMILLA'S OPPOSITION TO DEFENDANT MERCK, SHARP & DOHME'S MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES;** has been served on Defendants' Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail upon Liaison Counsel Ann Oldfather by e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8C, and that the foregoing was electronically filed with the Clerk of the Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 6th day of March, 2012.

/s/ *Gary L. Chambers*
GARY L. CHAMBERS
CHAMBERS, NORONHA & KUBOTA
2070 N. Tustin Avenue
Santa Ana, CA 92705
Phone: 714/558-1400
Fax:    714/558-0885
chambers102@msn.com

Attorney for Plaintiff Escamilla