**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In re: VIOXX | * | |
|     Products Liability Litigation | * | |
| | * | |
| This Document Relates to: | * | MDL No. 1657 |
| | * | |
| DISTRICT OF COLUMBIA, *ex rel* | * | SECTION L |
|     KENNETH WALKER, | * | |
| | * | JUDGE ELDON E. FALLON |
|               Plaintiff, | * | |
| | * | MAGISTRATE JUDGE |
|   versus | * | KNOWLES |
| | * | |
| MERCK & CO., INC., | * | |
| | * | |
|               Defendant. | * | |
| | * | |
| Case No. 2:08-cv-04148 | * | |
| | * | |
| * * * * * * * * * * * * * * * * * * * * * * * | * | |

**DEFENDANT'S REPLY IN SUPPORT OF**
**MOTION FOR JUDGMENT ON THE PLEADINGS**

Plaintiff does not dispute that he received a benefit from Vioxx, or that he did not sustain physical injury from it. Nor does he identify any representation that he or his doctor ever received from Merck. Nonetheless, Plaintiff insists both that he has standing to sue and that he engaged in a consumer transaction with Merck. Plaintiff is wrong.

*First*, Plaintiff lacks standing to sue. Plaintiff argues that he has "statutory" standing because the CPPA creates a legal right that Merck invaded by misrepresenting Vioxx. But merely alleging violation of a statute does not create standing – a plaintiff must still identify some "concrete" injury. Moreover, even if a statutory violation were sufficient to establish injury, a plaintiff must nonetheless show some connection between the violation and himself. Here, Plaintiff has not shown how Merck's alleged conduct affected *him* in any way. Plaintiff

alternatively insists that he has suffered an economic injury.  But he cannot dispute that he received the promised benefit of Vioxx without sustaining any physical injury – or that the Fifth Circuit has squarely held that standing is lacking in such circumstances.  Instead, he tries to distinguish that precedent, but his efforts to do so are unavailing.

*Second*, Plaintiff in any event fails to state a claim for relief under the CPPA because he did not engage in a consumer transaction with Merck.  Plaintiff argues that no consumer transaction is required as long as he is a "consumer" and Merck is a "merchant."  But while the cases Plaintiff cites recognize this ***additional*** requirement, none denies that the transaction at issue must also be a consumer transaction between the plaintiff and the defendant.  Plaintiff alternatively argues that there is a consumer transaction here because "Defendant marketed Vioxx directly to consumers," but Plaintiff makes no such allegation in his pleadings, and certainly does not allege that Merck said anything to him or his doctor about Vioxx.[1]

For all of these reasons, the Court should grant Merck judgment on the pleadings.

## ARGUMENT

**I.     PLAINTIFF'S CLAIMS FAIL FOR LACK OF STANDING.**

As set forth in Merck's opening brief, Plaintiff lacks standing under the Fifth Circuit's decision in *Rivera v. Wyeth-Ayerst Laboratories*, 283 F.3d 315 (5th Cir. 2002), because he received the benefit of his bargain (pain relief) and Vioxx did not cause ***him*** the injury he alleges it caused other people (*see* Def.'s Mot. at 5).  Plaintiff responds that:  (1) he has standing by virtue of statutory rights created under the CPPA; and (2) he has standing based on economic injury.  (*See* Pl.'s Opp'n at 7-10.)  Neither argument has merit.

---

[1]     Plaintiff does not dispute that, in order to represent other D.C. consumers, he must seek certification of a class.  Nor does he dispute that his effort to recover funds on behalf of the District of Columbia itself is foreclosed.  Accordingly, Merck assumes plaintiff has conceded these points and does not address them further in this reply.

*First*, Plaintiff's "statutory injury" theory fails.  Although injury "may exist by virtue of statutes creating legal rights," the Supreme Court has admonished that "Article III's requirement remains:  the plaintiff still must allege a distinct and palpable injury to himself." *Warth v. Seldin*, 422 U.S. 490, 500-01 (1975) (internal quotation marks and citation omitted).  This principle has been applied in circumstances just like the one here.  In *Hoyte v. Yum! Brands, Inc.*, 489 F. Supp. 2d 24 (D.D.C. 2007), for example, the U.S. District Court for the District of Columbia rejected a CPPA claim for lack of standing where the plaintiff complained that KFC had failed to disclose the presence of trans fats in its foods.  Like Mr. Walker, the plaintiff had suffered no physical injury and failed to articulate any actionable economic injury.  Instead, he claimed injury from the mere "fail[ure] to disclose" the presence of trans fat "with the intent or effect of deceiving or misleading D.C. Consumers." *Id.* at 29 (internal quotation marks and citation omitted).  The court rejected this claim because the plaintiff "ha[d] no standing to present his DCCPPA claim" in light of his failure to articulate some concrete injury to himself. *Id.*

Here, Plaintiff contends that Merck "violated his statutory right to 'the disclosure of information' regarding [the Company's] dangerous misrepresentations."  (*See* Pl.'s Opp'n at 9.)  But he does not allege physical injury, actionable economic injury, or any other conceivable type of harm.  Accordingly, notwithstanding the statute, Plaintiff has not shown any "distinct [or] palpable injury to himself" as is required under Article III. *Warth*, 422 U.S. at 501.[2]

Moreover, "[e]ven assuming that" the CPPA "recognize[s] an injury for having been exposed to misrepresentations," the requirements of Article III "prevent[] plaintiffs from suing

---

[2]   Plaintiff relies heavily on *Grayson v. AT&T Corp.*, 15 A.3d 219 (D.C. 2011) (en banc), for the supposed proposition that a consumer has Article III standing without injury.  But even if Plaintiff's reading is correct, *Grayson* is controlling only with respect to its interpretation of the CPPA – and not the D.C. Court of Appeals' views on Article III standing. *See, e.g.*, *Key v. Wise*, 629 F.2d 1049, 1058 (5th Cir. 1980) ("[F]ederal courts are not bound by state court decisions on matters of federal law.").

3

based on misrepresentations made to others." *In re Light Cigarettes Mktg. Sales Practices Litig.*, 271 F.R.D. 402, 420 (D. Me. 2010) (citation omitted).  As the *Light Cigarettes* court explained: "If no misrepresentation was made to an individual smoker, that smoker did not buy a misrepresented product as to them and did not suffer a 'concrete and particularized injury' within the meaning of Article III."  *Id.* at 420-21 (internal quotation marks and citation omitted).

*Grayson* is not to the contrary.  In that decision, the court resolved two cases: *Grayson v. AT&T Corp.*, and a companion case, *Breakman v. AOL LLC*.  The court concluded that the *Breakman* plaintiff lacked standing to sue on behalf of AOL dial-up users for failure to disclose pricing information because he did not allege that the practice had any nexus to himself.  15 A.3d at 246-47.  Instead, he alleged a "'mere interest' in the alleged unlawfulness of AOL's business practices," which was insufficient.  *Id.* at 247.  Meanwhile, the *Grayson* plaintiff was found to have standing, but only because he had alleged a "causal connection" between the alleged unlawful conduct of phone-card sellers and himself.  *Id.* at 250.

Here, there is no "causal connection" between any alleged conduct by Merck and Plaintiff's alleged injury – i.e., Plaintiff does not allege that any of Merck's alleged misrepresentations were made *to him* or to his doctor.  Plaintiff contends otherwise, purporting to have "plainly alleged that Defendant used false advertising to reach consumers including Plaintiff Walker."  (Pl.'s Opp'n at 12 (citing but not quoting Am. Compl. ¶¶ 42, 54-57).)  But Plaintiff is mistaken, as evidenced by a review of the Amended Complaint paragraphs on which he relies:

> 42.  But for the intentionally false and misleading campaign of Defendant Merck & Company, these prescriptions would not have been prescribed, and/or approved and paid for by DC Medicaid.
>
> 54.  Defendant Merck & Company, by its conduct, in intentionally obfuscating the risks and dangers associated with use of Vioxx, misled medical providers and consumers in the District of Columbia when there were safer and more effective

4

> alternatives that did not pose these risks, and, by its conduct, Defendant Merck & Company violated D.C. Code Section 28-3904(e).
>
> 55. Pursuant to D.C. Code Section 28-3904(f), it is an unlawful business practice for a merchant to "fail to state a material fact if such failure tends to mislead."
>
> 56. Defendant Merck & Company, by its conduct, failed to state a material fact when its agents purposely did not reveal and/or discuss studies that demonstrated increase[d] cardiovascular risks associated with the use of Vioxx when it marketed the drug to medical providers and consumers in the District of Columbia.
>
> 57. Defendant Merck & Company, by its conduct, violated D.C. Code Section 28-3904(f) when it misled medical providers and consumers in the District of Columbia about the increased risks associated with the use of Vioxx.

(Am. Compl. ¶¶ 42, 54-57.)

*None* of these paragraphs – liberally construed or otherwise – states that Merck made any representation *to Plaintiff* or his doctor. Instead, these allegations, at best, speak of unnamed "medical providers and consumers." Thus, Plaintiff has failed to show the requisite connection between Merck's alleged conduct and any alleged injury *he* suffered.

*Second*, Plaintiff's argument that he has alleged economic injury fails for similar reasons. (Pl.'s Opp'n at 9.) Plaintiff does not dispute that he received a benefit from Vioxx and did not sustain any physical injury. Instead, he merely alleges that others were injured and that he would like his money back. (*E.g.*, Am. Compl. ¶¶ 58-59.) As Merck explained in its opening brief, this is the very pattern of allegations that the Fifth Circuit considered in *Rivera*, and the U.S. District Court for the District of Columbia considered in *Williams v. Perdue Pharma Co.*, 297 F. Supp. 2d 171 (D.D.C. 2003), both concluding that the plaintiffs lacked standing (*see* Def.'s Mot. at 5-7).

Plaintiff seeks to distinguish *Rivera* on the supposed ground that the statute at issue in that case did not create a statutory injury. (Pl.'s Opp'n at 11.) But this is merely a rehash of Plaintiff's statutory-injury argument, which fails for the reasons already discussed. In any event,

5

*Rivera* did not turn on a statute. Rather, the court's focus was on Article III, particularly, the plaintiffs' failure to allege "injury in fact" because they "d[id] *not* claim Duract caused them physical or emotional injury[] [or] was ineffective as a pain killer." *Rivera*, 283 F.3d at 319-20.[3]

Plaintiff also attempts to distinguish *Williams*. *Williams*, like *Rivera*, concluded that plaintiffs who took a prescription drug but did not sustain physical injuries lacked standing to sue for economic injuries based on the theory that the drug posed a risk of physical harm that did not affect them. *Williams* reached that holding in a CPPA case, like this one. Plaintiff argues that this case is different because "the dispositive point" in *Williams* "was that the plaintiffs '[did] not plead that [they] were in any way deceived – or even saw – any of that advertising.'" (Pl.'s Opp'n at 11 (quoting *Williams*, 297 F. Supp. 2d at 177).) But of course that is no distinction at all since there is no such allegation specific to Plaintiff in this case, either.

Plaintiff finally appears to argue that purchase itself is economic injury. (*See id.* at 9.) But that is also wrong. Indeed, it follows perforce from the holdings in *Rivera* and *Williams* that mere purchase, without more, is not an economic "injury" sufficient to confer standing. Plaintiff's cases are not to the contrary. For example, *Shaw v. Marriott International, Inc.*, 605 F.3d 1039 (D.C. Cir. 2010) (*see* Pl.'s Opp'n at 9), involved a real allegation of economic injury. There, the plaintiffs alleged that a hotel deceptively overcharged its guests by failing to disclose that payment would be due in Russian currency and then calculating payment due at an exchange rate less favorable than the official rate established by the Central Bank of Russia. 605 F.3d at 1041. The D.C. Circuit held that one of the plaintiffs had standing because "[i]t used its own funds to pay for stays at Marriott's Russian hotels, and suffered pecuniary harm as a result of

---

[3]  Plaintiff relies on *Robertson v. Monsanto Co.*, 287 F. App'x 354 (5th Cir. 2008), to support his reading of *Rivera* (Pl.'s Opp'n at 10-11), but *Robertson* is no help. In that case, the Fifth Circuit distinguished *Rivera*, explaining that "[u]nlike the plaintiffs in *Rivera*, the plaintiffs in this case have brought claims based on their ***own physical injuries***." 287 F. App'x at 360 (emphasis added).

Marriott's pricing practices."[4]  *Id.* at 1042.  In other words, he paid more than the advertised rate for the stay.  This case is nothing like *Shaw*.  Here, Mr. Walker consumed a prescription drug and does not allege that he paid more than its represented price.  To the contrary, he alleges that Medicaid covered his prescriptions "most of the time."  (Am. Compl. ¶ 15.)  He also alleges that he received the benefits he sought, and was not harmed by the product.  (*See id.* ¶¶ 12-15, 20, 25, 27.)  Accordingly, *Shaw* is inapposite and does not cure the fundamental jurisdictional defect underlying Plaintiff's Complaint.[5]

## II. PLAINTIFF'S CLAIMS FAIL FOR THE ADDITIONAL REASON THAT HE DID NOT ENGAGE IN A "CONSUMER TRANSACTION" WITH MERCK.

As set forth in Merck's opening brief, Plaintiff's claims fail for the independent reason that there was no "consumer transaction" between Plaintiff and Merck.  Specifically, the CPPA only regulates "consumer transactions," not transactions further along the distribution chain that "'do not involve the ultimate retail customer.'"  (*See* Def.'s Mot. at 8 (quoting *Adam A. Weschler & Son, Inc. v. Klank*, 561 A.2d 1003, 1005 (D.C. 1989)).)  Because none of Merck's transactions concerning Vioxx involved the ultimate retail customer – indeed, Plaintiff admits that he purchased his Vioxx from Morton Care Pharmacy and not from Merck – this factual prerequisite of Plaintiff's CPPA claim is incurably absent.  (*See id*. at 8-9.)

Plaintiff argues in response that:  (1) courts have "repeatedly rejected" the requirement of a consumer transaction in CPPA cases, instead requiring only that the plaintiff be a consumer and the defendant be a merchant (Pl.'s Opp'n at 12-16); and (2) the cases on which Merck relies

---

[4]   The Court of Appeals also held that two of the plaintiffs lacked Article III standing because they did not engage in a "consumer transaction" with the defendant.  *Id.* at 1042-43.

[5]   Plaintiff's other cases are equally inapposite.  *See Dist. Cablevision Ltd. P'ship v. Bassin*, 828 A.2d 714, 725 (D.C. 2003) (finding injury in case involving alleged excessive late fees levied against cable subscribers); *Silvious v. Snapple Beverage Corp.*, 793 F. Supp. 2d 414 (D.D.C. 2011) (plaintiff alleged he did not receive the promised benefit of an "all natural" beverage because the product included high fructose corn syrup).

7

do not hold otherwise; instead, they merely address the definition of "consumer" under the CPPA.  These arguments fail.

*First*, Plaintiff's contention that courts have "repeatedly rejected" the requirement of a consumer transaction is unsupported.  Although Plaintiff cites a string of cases, none rejected such a requirement.  Indeed, the primary authority on which Plaintiff relies, *Williams*, 297 F. Supp. 2d 171, implicitly ***recognized*** such a requirement.  As discussed above, *Williams* was brought by plaintiffs who sought a refund for a drug that provided them with the promised benefit but was alleged to pose side effects that the plaintiffs themselves did not suffer.  *Id.* at 172.  In addition to the standing argument on which they ultimately prevailed, the defendants also argued that the plaintiffs' CPPA claim failed because there was no consumer transaction.

Contrary to Plaintiff's contention, the court did not "reject[]" the premise of this argument – i.e., that a consumer transaction is necessary to sustain a CPPA claim.  To the contrary, the court accepted it, quoting authority stating that the CPPA "'was meant to embrace consumer-merchant interactions exclusively.'"  *Id.* at 174 (quoting *Independent Communications Network, Inc. v. MCI Telecommunications Corp.*, 657 F. Supp. 785, 787 (D.D.C. 1987)).  However, the court found that the plaintiffs' allegations that the defendants had "issued brochures and a videotape directed to consumer-patients" and "engaged in persuasive sales activities vis-a-vis individual consumers," "***may have created***" the necessary "consumer-merchant relationship" with the plaintiffs.  *Id.* at 175 (emphasis added).  Under different facts, the court cautioned, the consumer transaction might be lacking – such as where the defendants "promoted [the drug] only to physicians and other non-patients."  *Id.* at 175.

As set forth previously, this is such a case. There are no plausible or particularized allegations in the Complaint regarding any direct-to-consumer representation made to Plaintiff himself.[6] Accordingly, under Plaintiff's principal authority, his CPPA claim fails.

Plaintiff's remaining cases are no more on point. Plaintiff characterizes these cases as standing for the proposition that a person "need not be the actual seller" to be a "merchant" as long as it is "connected with the supply side of the consumer transaction." (*See* Pl.'s Opp'n at 13-14 (internal quotation marks and citation omitted).) But none of these cases deny the requirement that the plaintiff must have engaged in a consumer transaction with the defendant. In *Howard v. Riggs National Bank*, 432 A.2d 701 (D.C. 1981) (Pl.'s Opp'n at 13), for example, the issue was whether a bank employee who recommended a particular construction company to a bank customer could subject the bank to liability under the CPPA when the construction company failed to live up to the employee's recommendation. There, the court did not need to delve into the question of whether ultimate consumers could sue remote merchants because the bank was "plainly" not a "merchant" on the supply side of the customer's transaction with the construction company. *Id*. at 709-710. For this very reason, *Williams* expressly noted that *Howard* does not "fully answer[] the question of whether the relationship" between a drug manufacturer and a patient who purchases the manufacturer's drug through a pharmacy "constitutes a consumer-merchant relationship within coverage of the CPPA." 297 F. Supp. 2d at 174. Plaintiff offers no reason why *Howard* is any more on point in this case.[7]

---

[6] For this same reason, Plaintiff's argument that Merck should be liable for its "recommendations" concerning Vioxx fails. (*See* Pl.'s Opp'n at 15-16.) Despite Plaintiff's repeated assertion that Merck made representations directly to consumers, Plaintiff's Complaint is devoid of any meaningful allegation to that effect.

[7] Plaintiff's other authority, *Adler v. Vision Lab Telecommunications, Inc.*, 393 F. Supp. 2d 35 (D.D.C. 2005) (Pl.'s Opp'n at 14), is no more on point. The issue there was whether the plaintiffs – who received unsolicited faxes from fax-transmission companies – were "consumers" under the CPPA. Because the plaintiffs had not "purchased, leased … or received … services" from the companies, but merely received unwanted faxes, the court held they were not. 393 F. Supp. 2d at 40 (omissions in original and internal quotations omitted). Once again, because the

*(cont'd)*

In short, the fact that the CPPA requires that a plaintiff "consumer" sues a defendant "merchant" does nothing to cast doubt on the cases that have expressly required that the CPPA *also* requires the presence of a consumer transaction.

***Second***, Plaintiff's effort to distinguish Merck's cases fails for similar reasons. Plaintiff argues that the cases in Merck's brief – *Adam A. Weschler & Son*, 561 A.2d at 1005, and *In re G-Fees Antitrust Litigation*, 584 F. Supp. 2d 26, 42 (D.D.C. 2008) – stand only for the proposition that the plaintiff must be a consumer – not that the plaintiff must have engaged in a consumer transaction with the defendant. (Pl.'s Opp'n at 16-18.) Plaintiff is wrong.

Although the question in *Klank* was whether the plaintiff was a consumer, the court was clear that one reason that question mattered is because the CPPA discriminates "between retail and wholesale transactions," and it is only "the ultimate retail transaction between ***the final distributor*** and the individual member of the consuming public that the [CPPA] covers." 561 A.2d at 1005 (emphasis added); *see also In re G-fees*, 584 F. Supp. 2d at 42 (quoting *Klank*). Put differently, the CPPA only covers the "[t]ransaction[]" involving the "ultimate retail customer." *Klank*, 561 A.2d at 1005. As stated above, this limitation on the scope of the CPPA is further confirmed by *Williams* – which Plaintiff himself invokes – and which recognized that the CPPA "was meant to embrace consumer-merchant interactions exclusively." 297 F. Supp. 2d at 174 (internal quotation marks and citation omitted). Plaintiff's insistence that he is a "consumer" is therefore beside the point. The important fact here is that none of Merck's alleged sales or representations is alleged to have involved the relevant "ultimate retail customer" here – Mr. Walker.

---

*(cont'd from previous page)*
plaintiffs were not consumers, there was no need for the court to address whether they had sufficiently pled the existence of a consumer transaction.

For all of these reasons, Plaintiff cannot meet the consumer-transaction requirement and Merck is entitled to judgment on the pleadings on this basis as well.

## CONCLUSION

For the foregoing reasons, as well as those set forth in Merck's opening brief, the Court should grant judgment on the pleadings in favor of Merck.

Dated: March 7, 2012                                              Respectfully submitted,

*/s/ Dorothy H. Wimberly*
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, LA 70130

Douglas R. Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth St., N.W.
Washington, DC 20005

John H. Beisner
Jessica Davidson Miller
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
1440 New York Avenue, N.W.
Washington, DC 20005

ATTORNEYS FOR MERCK SHARP &
DOHME CORP.

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing *Defendant's Reply in Support of Motion for Judgment on the Pleadings* has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 7th day of March, 2012.

*/s/ Dorothy H. Wimberly*
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361
dwimberly@stonepigman.com

Defendants' Liaison Counsel