IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: VIOXX * | |
|     Products Liability Litigation * | |
| * | |
| This Document Relates to: * | MDL No. 1657 |
| * | |
| DISTRICT OF COLUMBIA, *ex rel* * | SECTION L |
|     KENNETH WALKER, * | |
| * | JUDGE ELDON E. FALLON |
|         Plaintiff, * | |
| * | MAGISTRATE JUDGE |
| versus * | KNOWLES |
| * | |
| MERCK & CO., INC., * | |
| * | |
|         Defendant. * | |
| * | |
| Case No. 2:08-cv-4148 * | |
| * | |
| * * * * * * * * * * * * * * * * * * * * * * * | |

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO AMEND**

    Plaintiff's motion for leave to amend seeks to transform a suit that was once focused on Merck's alleged misrepresentations **to the D.C. government and to physicians** into one that challenges Merck's alleged misrepresentations **to consumers**. Plaintiff's motion should be denied because any such amendment would be futile.

    *First*, the proposed amended complaint is an entirely new lawsuit. Its allegations concerning consumer marketing have no footing in the operative complaint and thus do not relate back to it; instead, they constitute an entirely new theory of misconduct. These new allegations, in turn, have long been stale. Vioxx was withdrawn from the market in September 2004, and Plaintiff's claims are governed by a three-year statute of limitations, meaning that these allegations had to be made, at the latest, by September 2007.

***Second***, the proposed amendment would not solve the fundamental failings of Plaintiff's operative complaint. Despite seeking to triple the length of his complaint by adding scores of new allegations, Plaintiff still cannot plead the facts necessary to establish Article III standing or to show that he engaged in a consumer transaction as required to recover under his cause of action. For either or both of these reasons, the Court should deny plaintiff leave to file his proposed Second Amended Complaint.

## BACKGROUND

Plaintiff Kenneth Walker commenced this action under seal on August 4, 2005. (*See* Orig. Compl.) (attached as Ex. 1).) Initially, Plaintiff alleged a single cause of action under the False Claims Act of the District of Columbia, D.C. Code § 2-308.14, et seq. ("D.C. FCA"), seeking to recover funds on behalf of the District that were paid to cover Vioxx prescriptions. (*Id.* ¶ 1.)

Plaintiff subsequently sought leave to amend to add a claim under the District of Columbia Consumer Protection Procedures Act, D.C. Code 28-390, et seq. ("CPPA"), to recover funds allegedly spent on Vioxx "on behalf of himself, the District of Columbia, and the District of Columbia residents who purchased Vioxx." (Am. Compl. ¶ 10; *see also id.* ¶¶ 50, 59.) Plaintiff's motion for leave to amend was granted on September 29, 2005, the case was unsealed on April 3, 2008, and Merck was served with the Amended Complaint on June 16, 2008.

Merck then removed the case to the United States District Court for the District of Columbia (Def.'s Notice of Removal, ECF No. 1-1), and it was ultimately transferred to this Court as part of *In re Vioxx Products Liability Litigation*, MDL No. 1657.

According to Plaintiff's Amended Complaint, Merck improperly promoted Vioxx through its sales force, which allegedly gave "medical providers . . . inaccurate and misleading information to encourage them to prescribe Vioxx to their patients." (Am. Compl. ¶ 30.) The

Amended Complaint further alleges that the information was "misleading" because it failed to disclose the allegedly "significant cardiovascular risks associated with the use of Vioxx." (*Id.* ¶ 29.) The Amended Complaint asserts that these representations "caused medical providers in the District of Columbia to prescribe Vioxx to Medicaid patients" and led D.C. Medicaid's pharmacy benefit managers to "approve prescriptions for Vioxx for DC Medicaid patients." (*Id.* ¶¶ 38-39.) The Amended Complaint, like the original complaint, does not include a single allegation of any communication by Merck to Plaintiff or any other District resident who allegedly used Vioxx.

The Amended Complaint alleges that Merck's conduct resulted in "losses" for Plaintiff and those he would represent. Specifically, it asserts that the District of Columbia, Mr. Walker and other District residents incurred losses by paying for Vioxx they would not have paid for absent Merck's allegedly "false and misleading campaign." (*See id.* ¶ 42.) The nature of these alleged losses is not detailed. While the Amended Complaint alleges that "generic drugs would have been safer" than Vioxx (*id.* ¶¶ 38, 39; *see also id.* ¶¶ 45, 54), it does not allege that Vioxx was ineffective. To the contrary, Plaintiff affirmatively alleges that he was prescribed Vioxx by his doctor because "DayPro and Lodine had not been effective in the past," and further alleges that he remained on Vioxx from some time in 2001 through Merck's withdrawal of the drug from the market in late 2004. (*Id.* ¶¶ 12-15, 27.)

This Court dismissed Plaintiff's FCA claim for lack of standing in March 2011 (*see* Order & Reasons, MDL ECF No. 62,729, Mar. 28, 2011), and Merck moved for judgment on the pleadings with respect to Plaintiff's CPPA claim on February 6, 2012. Merck argued that it should be granted judgment on the pleadings for three principal reasons: (1) Plaintiff has not alleged a cognizable "injury" that could give him standing under Article III or alleged a

3

"consumer transaction" that comes within the ambit of the CPPA; (2) Plaintiff may not sue on behalf of other D.C. residents because he has not pursued class allegations, as required under both D.C. and federal law; and (3) Plaintiff cannot sue on behalf of the District of Columbia because the District has already settled its CPPA claims with Merck and released the Company from any future claims under the statute. (*See generally* Def.'s Mot. For J. On The Pleadings, MDL ECF 63,656 ("MJP").)

In his opposition, Plaintiff argued that he does have standing because he allegedly suffered a statutorily defined injury under the CPPA. He also argued that he had adequately alleged a consumer transaction, pointing to conclusory allegations in the Amended Complaint that refer to (but do not describe) Merck's alleged "market[ing] . . . to medical providers and consumers." (Am. Compl. ¶ 56; *see also id.* ¶ 57; Mem. In Opp'n To Def.'s MJP, MDL ECF 63,694 ("MJP Opp'n"), at 12 (citing these paragraphs for the proposition that Merck "used false advertising to reach consumers including Plaintiff Walker").) But he did not dispute Merck's other two arguments. Rather, Plaintiff agreed that he needed to add class allegations in order to represent other D.C. residents and stated that he planned to do so by way of a proposed amended pleading.[1] (*See* MJP Opp'n at 18-19.)

Plaintiff subsequently filed a motion for leave to amend, accompanied by a proposed Second Amended Complaint. (*See* Pl.'s Mot.) As promised, the proposed pleading includes class allegations. (*See* Proposed 2d Am. Compl. ¶¶ 160-173.) But it also includes a lot more, most notably, an array of new allegations that Merck misrepresented the risks of Vioxx directly to consumers in the District. (*See, e.g.*, *id.* ¶¶ 10, 48, 58-60, 62-63, 86-88, 93, 103, 106, 127,

---

[1]   Plaintiff did not address and thus apparently concedes Merck's argument that Plaintiff is barred from suing on behalf of the District of Columbia in light of Merck's May 2008 settlement with the District. (*See* MJP at 13.)

4

179.)  Nonetheless, the proposed new pleading still lacks any allegation that Plaintiff himself received any of these alleged misrepresentations.

## ARGUMENT

Although a district court has discretion to grant a motion for leave to amend, "leave to amend is by no means automatic." *Durgin v. Crescent Towing & Salvage, Inc.*, No. 00-1602 SECTION: "N"(4), 2002 U.S. Dist. LEXIS 9650, at *6 (E.D. La. May 20, 2002); *accord Torch Liquidating Trust v. Stockstill*, 561 F.3d 377, 391 (5th Cir. 2009) (concluding that "justice does not require allowing plaintiff additional opportunity to amend").  Rather, "Rule 15(a) authorizes a district court to deny a motion for leave to amend where the 'amendment would be futile.'" *Adams Family Trust v. John Hancock Life Ins. Co., U.S.A.*, 424 F. App'x 377, 381 (5th Cir. 2011) (internal quotation marks and citation omitted); *see also Saia v. Pizza Hut of Am., Inc.*, No. 11-776 SECTION: J(5), 2011 U.S. Dist. LEXIS 76780, at *14 (E.D. La. July 15, 2011) ("The Court finds that any amendment to the Complaint under Rule 15 would be futile because the documentation needed by Plaintiff to establish a cause of action does not exist.").

"'[F]utility' in the context of Rule 15 [] mean[s] that 'the amended complaint would fail to state a claim upon which relief could be granted.'" *McDade v. Wells Fargo Bank, N.A.*, No. H-10-3733, 2011 U.S. Dist. LEXIS 118219, at *12 (S.D. Tex. Oct. 13, 2011) (quoting *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 873 (5th Cir. 2000)).  Accordingly, in determining whether a proposed amendment would be futile, "a court must apply the same standard of legal sufficiency as applies under Rule 12(b)(6)." *Id.* at *13.  Here, Plaintiff's proposed amendment would be futile because:  (1) the new allegations do not relate back and are therefore time-barred; and (2) the proposed amendments do not remedy the fundamental pleading defects that doom the operative complaint.

I.     **PLAINTIFF'S SECOND AMENDED COMPLAINT IS TIME-BARRED.**

Plaintiff's proposed amendment is futile because its new factual allegations – particularly those concerning representations allegedly made to consumers more than seven years ago – are not timely and do not relate back to the operative complaint.

Fifth Circuit courts have rejected attempts to amend a complaint on futility grounds where – as here – the proposed amendments would assert new theories of liability that are untimely. *In re Mike's, Inc.*, No. 02-1073 SECTION: "R"(2), 2002 U.S. Dist. LEXIS 14340, at *8-9 (E.D. La. July 30, 2002); *see also, e.g.*, *Jenkins v. Stan Ware Enters.*, No. 06-2217, 2008 U.S. Dist. LEXIS 66142, at *9 (W.D. La. Aug. 27, 2008) (affirming magistrate judge's denial of motion to amend complaint: "the amendment sought is futile because the claims against the 'new' defendants have" expired). Such amendments are only permitted if they "relate back to the date of the original filing," *id.* at *10, which in turn requires a showing that the new allegations arise "out of the conduct, transaction, or occurrence . . . in the original pleading," Fed. R. Civ. P. 15(c)(1)(B).

Plaintiff's proposed amendment in this case is untimely, and the new allegations it would add do not relate back to the operative complaint. Vioxx was withdrawn from the market in 2004 – more than seven years ago – and as this Court has previously recognized, "[b]oth the national and local media coverage of the withdrawal of Vioxx from the market were sufficient to put the plaintiffs on notice of a potential link between their alleged injuries and the use of Vioxx." *See In re Vioxx Prods. Liab. Litig.*, No. 1657 SECTION: L, 2007 U.S. Dist. LEXIS 83710, at *14-15 (E.D. La. Nov. 8, 2007). But the CPPA is subject to a three-year limitations period. *See Silvious v. Snapple Bev. Corp.*, 793 F. Supp. 2d 414, 417 (D.D.C. 2011) (explaining that because the CPPA does not have a specific statute of limitations, it is governed by three-year residual period) (citing *Johnson v. Long Beach Mortg. Loan Trust 2001-4*, 451 F. Supp. 2d 16,

48 (D.D.C. 2006) (quoting D.C. Code § 12-301(8))); *Murray v. Wells Fargo Home Mortg.*, 953 A.2d 308, 323 (D.C. 2008) (affirming dismissal of CPPA claim on the ground that it was foreclosed by residual three-year statute of limitations). Thus, Plaintiff had to file his CPPA claim by 2007, at the latest. Because he filed in 2012, his amendment can only be timely if it relates back to the operative complaint.

It does not. As noted above, an otherwise untimely amendment only relates back when it arises out of the same conduct, transaction or occurrence as the operative complaint. It is not enough to satisfy this requirement to show that the complaints concern the same product, or even the same alleged unlawful conduct with respect to that product. *See, e.g.*, *La. Wholesale Drug Co. v. Biovail Corp.*, 437 F. Supp. 2d 79, 86-87 (D.D.C. 2006) ("claims must be more than factually related to 'arise out of' the same conduct"), *aff'd*, 533 F.3d 857 (D.C. Cir. 2008). Rather, the effect of the amendment must be "simply [to] supplement or amplify the facts already alleged." *Sharper v. Dretke*, No. 3:01-CV-1405-P, 2004 U.S. Dist. LEXIS 8820, at *17 (N.D. Tex. May 12, 2004). Accordingly, an amendment that "introduce[s] new legal theories on facts different from those underlying the original claims" does not arise out of the same conduct alleged in the operative complaint and thus does not relate back. *Id.* (holding that claims raised in inmate's supplement to habeas petition did not relate back to original petition); *see also Walsh Secs., Inc. v. Cristo Prop.*, No. 97-3496 (DRD), 2008 U.S. Dist. LEXIS 88782, at *32 (D.N.J. Oct. 31, 2008) (denying motion for leave to amend because "Plaintiff's Fourth Amended Complaint does far more than 'streamline.' Plaintiff's Fourth Amended Complaint adds facts of a different time and type."); *McCormick v. Interkordsa GmbH*, No. 7:05-CV-31-F, 2009 U.S. Dist. LEXIS 69488, at *18 (E.D.N.C. Aug. 10, 2009) (finding that amended complaint did not

relate back because it "rests upon facts which are entirely new and different from the facts alleged in the original Complaint").

The principle underlying these legal standards is "notice." *La. Wholesale Drug Co.*, 437 F. Supp. 2d at 87 ("The significant difference between the facts and theories alleged in the original and amended complaints . . . [denied] notice to defendants of the claims against which they would have to defend."). A defendant is on fair notice with respect to amendments that supplement or amplify previously pled facts – but not with respect to amendments that do more. Relatedly, amendments that supply factual elaboration of previously conclusory assertions do not relate back because the conclusory allegations in the operative complaint do not give defendants sufficient notice of anything. *See, e.g.*, *Tese-Milner v. Diamond Trading Co., Ltd.*, No. 04 Civ. 5203 (KMW), 2011 U.S. Dist. LEXIS 111514, at *35-36 (S.D.N.Y. Sept. 29, 2011) (because "allegations about an amorphous, world-wide conspiracy with unidentified entities" could not "be read to encompass Plaintiff's advertising and marketing claims," "[t]he intervening complaint . . . deprived Defendant of notice with respect to [those] claims.").

In *Louisiana Wholesale Drug*, for example, the plaintiff sued the manufacturer of a brand-name drug under the Clayton Act. Initially, the plaintiff alleged antitrust injuries stemming from the defendant's supposed attempts to keep cheaper generic versions of the drug off the market. 437 F. Supp. 2d at 81. The plaintiff subsequently filed an amended complaint, alleging that the manufacturer intended to market a generic version of the drug itself but decided not to after it acquired and listed a patent, thereby forcing plaintiff to pay "supra-competitive prices" for the drug. *Id.* at 85. The defendant argued that the newly alleged injury did not relate back to the original complaint and was therefore time-barred. *Id.* at 86. The court agreed, recognizing that "[a]n amended complaint that 'attempts to introduce a new legal theory based

on facts different from those underlying the timely claims' will not relate back." *Id.* (citation omitted).  The court reached this conclusion notwithstanding the fact that the plaintiff's "new claim is of course factually related to its original claim of injury based on [defendant's] wrongful acts to keep the []generic off the market." *Id.* at 86-87.  As the court explained, new allegations "must be more than factually related to 'arise out of' the same conduct." *Id.* at 87.  Because the original complaint did not indicate that defendant ever intended to introduce a generic drug of its own onto the market – or that it jettisoned that plan – the newly alleged injury did not sufficiently arise out of the same transaction as that set forth in the original complaint.  *Id.*

In reaching this conclusion, the court recognized that notice is the "'critical issue in Rule 15(c) determinations.'" *Id.* (quoting *Moore v. Baker*, 989 F.2d 1129, 1131 (11th Cir. 1993)).  According to the court:

> Plaintiffs could have ascertained the basic facts underpinning their Biovail-generic claim and included those facts in their original complaint, which would have allowed them to flesh out the claim, as needed, in the amended complaint.  Instead, there is simply no indication in the original complaint that plaintiffs intended to pursue this line of argument.

*Id.*  This failure, the court determined, deprived the defendant of notice of the claims against which it had to defend, rendering relation back improper.  *Id.*; s*ee also Palmer v. Homecomings Fin., LLC*, 677 F. Supp. 2d 233, 238-39 (D.D.C. 2010) (amended complaint did not relate back because "[t]he RESPA claim asserted in the Amended Complaint 'differs in both time and type' from the claims set forth in the original Complaint"; "[t]he key question is whether the defendant had reasonable notice of the new claim based on the original pleading") (citation omitted).

Similarly, in *Schirle v. Sokudo USA, LLC*, No. 4:08-CV-555-Y, 2011 U.S. Dist. LEXIS 78263, at *9-10 (N.D. Tex. July 19, 2011), the plaintiff commenced a lawsuit against his former employers, alleging defamation and other causes of action.  In a second amended complaint, the plaintiff "raised separate and specific instances of defamation that were not raised in his original

9

petition." *Id.* at *25. The court determined that these new allegations were time-barred because while the original complaint "included generalized language regarding multiple 'statements and comments,' this language [was] insufficient to invoke relation back." *Id.* The court explained that the second amended complaint included "new facts regarding separate transactions – distinct instances of defamation – perpetrated by different wrongdoers and addressed to different audiences." *Id.* Accordingly, the relation-back doctrine did not apply and plaintiff's new allegations were stale. *Id*. at *26.

The same is true here. Although Plaintiff argues that "[t]he proposed amendment does not change the substance of the action" and is "primarily procedural" (Pl.'s Mot. at 5), that is not the case. Like the plaintiff in *Louisiana Wholesale Drug*, Mr. Walker is pursuing "a new legal theory." While the operative complaint alleges that Merck violated the CPPA based on its alleged statements to physicians and to the D.C. Medicaid agency, the proposed Second Amended Complaint alleges that Merck violated the CPPA based on its alleged statements to consumers. (*Compare, e.g.*, Am. Compl. ¶ 30 (Merck "provided [healthcare providers] with inaccurate and misleading information to encourage them to prescribe Vioxx to their patients") *and id.* ¶ 31 ("Merck & Company assigned 3,000 highly trained company representatives across the United States, including the District of Columbia, to communicate face-to-face with medical providers about Vioxx.") *with* Proposed 2d Am. Compl. ¶ 60 (Merck made "false and misleading direct-to-consumer advertisements") *and id.* ¶ 179 ("Merck provided, disseminated, marketed, and otherwise distributed direct-to-consumer advertising and other information to Plaintiffs and the Class . . . and/or . . . Defendant Merck misrepresented, knowingly concealed, omitted, and suppressed the safety and efficacy of Vioxx in its advertising . . . disseminated to Plaintiff and the Class[.]"). As in *Schirle*, these allegations offer "new facts regarding separate"

representations "addressed to different audiences." 2011 U.S. Dist. LEXIS 78263, at *25. Accordingly, they do not relate back.

Plaintiff has argued elsewhere that the operative complaint does include allegations concerning representations to consumers (MJP Opp'n at 12), but the allegations he references are too conclusory to support relation back here. As *Schirle* made clear, it is insufficient to point to "generalized language" in the operative complaint to support relation back of "separate and specific" allegations in an amended complaint. 2011 U.S. Dist. LEXIS 78263, at *25. That is all Plaintiff can point to here: vague and "generalized" allegations that Merck "failed to state a material fact when its agents . . . marketed the drug to medical providers and consumers" and that it "misled medical providers and consumers." (Am. Compl. ¶¶ 56-57.) For example, the Amended Complaint currently on file fails to offer even one generic allegation referring to advertising. By contrast, Plaintiff's proposed complaint references several "separate and specific" facts concerning direct-to-consumer advertising. (*See, e.g.*, Proposed 2d Am. Compl. ¶ 48 ("Merck targeted consumers. Merck alleged Vioxx was equal or better than Celebrex and branded NSAIDS, attempting to increase sales by this direct to consumer promotion.").)

In short, Merck had no notice prior to Plaintiff's proposed Second Amended Complaint that this case had anything to do with Merck's alleged representations to individual consumers. Instead, Plaintiff now seeks to bring what is – in essence – a new lawsuit. Because that new lawsuit is time-barred, the amendment would be futile and should not be allowed.

## II. PLAINTIFF'S PROPOSED SECOND AMENDED COMPLAINT IS JUST AS DEFICIENT AS THE FIRST AMENDED COMPLAINT.

Plaintiff's motion for leave to amend should also be denied because the proposed Second Amended Complaint does not cure the pleading defects highlighted in Merck's pending dispositive motion. As set forth in Merck's motion for judgment on the pleadings, Plaintiff's

11

CPPA claim is doomed to fail for two reasons: (1) Plaintiff lacks standing to sue; and (2) he has failed to sufficiently allege a consumer transaction between himself and Merck. (*See* MJP at 4.) That remains true under the proposed amendment.

*First*, Plaintiff has not cured his standing problem. He continues to assert that he sustained an economic loss despite the fact that the Vioxx he purchased was not ineffective and did not cause him any physical harm. As Merck explained in its briefing, such allegations fail to state an injury within the meaning of Article III. (*See id.* at 5-6 (citing *Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315, 320 (5th Cir. 2002), and *Williams v. Purdue Pharma Co.*, 297 F. Supp. 2d 171, 178 (D.D.C. 2003)).) Plaintiff argued in response that he does not need to allege economic injury because the CPPA creates a statutory injury sufficient to give him standing. (MJP Opp'n at 8-9.) But as Merck explained in its reply, even if that were correct (and it is not), Plaintiff must still allege that there is some causal connection between the alleged statutory violation and himself – for example, that he actually saw a misrepresentation by Merck. (*See* Reply In Supp. Of MJP ("MJP Reply") at 3-5, MDL ECF 63,725.) Plaintiff included no such allegation in the Amended Complaint that is subject to Merck's motion. Similarly, plaintiff's proposed Second Amended Complaint fails to identify a single representation of any sort that Plaintiff claims to have ever received from Merck.

*Second*, Plaintiff still has not alleged that he engaged in a consumer transaction with Merck. As Merck explained in its briefing in support of the motion for judgment on the pleadings, Plaintiff did not engage in a consumer transaction as required under the CPPA because he "did not purchase Vioxx from Merck." (MJP at 8.) Plaintiff countered by arguing that a consumer transaction may nonetheless occur where a merchant markets a product "directly to consumers." (MJP Opp'n at 15.) But, as noted above, Plaintiff failed to allege that he

1087845v1

received any such marketing.  (*See* MJP Reply at 8-9.)  Once again, while Plaintiff's proposed Second Amended Complaint asserts a bevy of new allegations regarding purported direct-to-consumer misrepresentations by Merck, ***he fails to allege that any of those misrepresentations were made to him***.[2]

In short, Plaintiff's proposed Second Amended Complaint fails to solve the dispositive flaws that require dismissal of the Amended Complaint that is already on file.  For this reason too, his motion to amend should be denied.

## CONCLUSION

For the foregoing reasons, Plaintiff's request for leave to amend should be denied.

Dated:  March 15, 2012

Respectfully submitted,

/s/ Dorothy H. Wimberly
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, LA 70130

Douglas R. Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth St., N.W.
Washington, DC 20005

---

[2] The closest Plaintiff comes is his allegation that his physician received samples from – and was therefore visited by – a Merck sales representative.  (*See* Proposed 2d Am. Compl. ¶ 150.)  But this allegation is not sufficient.  After all, there is still no allegation that any of Merck's alleged misrepresentations were made to Plaintiff himself.  Nor does Plaintiff even allege that any representation was actually made to his doctor.

1087845v1

John H. Beisner
Jessica Davidson Miller
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
1440 New York Avenue, N.W.
Washington, DC 20005

ATTORNEYS FOR MERCK SHARP &
DOHME CORP.

1087845v1

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing has been served on Liaison Counsel, Russ Herman, Phillip Wittmann and Ann Oldfather, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 15th day of March, 2012.

>
> */s/ Dorothy H. Wimberly*
> Dorothy H. Wimberly, 18509
> STONE PIGMAN WALTHER
> WITTMANN L.L.C.
> 546 Carondelet Street
> New Orleans, Louisiana  70130
> Phone:  504-581-3200
> Fax:     504-581-3361
> dwimberly@stonepigman.com
>
> Defendants' Liaison Counsel

1087845v1