## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| | : | **MDL NO. 1657** |
| **IN RE: VIOXX** | : | |
| **PRODUCTS LIABILITY LITIGATION** | : | **SECTION:  L** |
| | : | |
| | : | **JUDGE FALLON** |
| | : | |
| | : | **MAG. JUDGE KNOWLES** |

.. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. :

**THIS DOCUMENT RELATES TO: Case No. 06-9382,** *County of Santa Clara v. Merck & Co., Inc.*

## ORDER & REASONS

Currently pending before the Court is Merck's Motion for Judgment on the Pleadings with respect to the claims of the County of Santa Clara (Rec. Doc. 63425).  The Court has reviewed the briefs and the applicable law and heard oral argument on the motion and is now prepared to rule.

## I.      FACTUAL BACKGROUND AND PROCEDURAL HISTORY

To put this matter in perspective, a brief review of this litigation is appropriate.  This multidistrict products liability litigation involves the prescription drug Vioxx, known generically as Rofecoxib.  Merck, a New Jersey corporation, researched, designed, manufactured, marketed and distributed Vioxx to relieve pain and inflammation resulting from osteoarthritis, rheumatoid arthritis, menstrual pain, and migraine headaches.  On May 20, 1999, the Food and Drug Administration approved Vioxx for sale in the United States.  Vioxx remained publicly available until September 20, 2004, when Merck withdrew it from the market after data from a clinical

trial known as APPROVe indicated that the use of Vioxx increased the risk of cardiovascular

thrombotic events such as myocardial infarction (heart attack) and ischemic stroke.  Thereafter,

thousands of individual suits and numerous class actions were filed against Merck in state and

federal courts throughout the country alleging various products liability, tort, fraud, and warranty

claims.  It is estimated that 105 million prescriptions for Vioxx were written in the United States

between May 20, 1999 and September 30, 2004.  Based on this estimate, it is thought that

approximately 20 million patients have taken Vioxx in the United States.[1]

California was the first state to institute a consolidated state court proceeding on October

30, 2002.  New Jersey and Texas soon followed suit, on May 20, 2003 and September 6, 2005,

respectively.  On February 16, 2005, the Judicial Panel on Multidistrict Litigation ("MDL")

conferred MDL status on Vioxx lawsuits filed in various federal courts throughout the country

and transferred all such cases to this Court to coordinate discovery and to consolidate pretrial

matters pursuant to 28 U.S.C. § 1407.  *See In re Vioxx Prods. Liab. Litig.*, 360 F. Supp. 2d 1352

(J.P.M.L. 2005).  Additionally, a number of state and local governments filed suits against

Merck seeking to recover amounts paid for Vioxx prescriptions on behalf of their citizens or

civil penalties pursuant to state consumer protection statutes.

The County of Santa Clara, California, filed one such Complaint against Merck in the

Superior Court of New Jersey on July 21, 2006.  The case was removed to federal court and

transferred to this MDL by the JPML.  The County filed the Complaint on behalf of itself and

"all other similarly situated California Counties" seeking to recover funds spent pursuant to the

Public Health Service Act of 1992 for Vioxx provided to the homeless, disabled, children, and

---

[1]For a more detailed factual background describing the events that took place before the inception of this multidistrict litigation, see *In re Vioxx Prods. Liab. Litig.*, 401 F. Supp. 2d 565 (E.D. La. 2005) (resolving *Daubert* challenges to a number of expert witnesses).

the poor.  Pursuant to that Act, the County is required under California law to provide health services, including prescription medication, to the indigent and disadvantaged in Santa Clara County.  The Complaint contains lengthy factual allegations regarding Merck's conduct in misrepresenting and concealing Vioxx's health risks and marketing it extensively.  The Complaint alleges that Merck marketed Vioxx to doctors, who in turn requested that the County add Vioxx to its pharmaceutical formulary so that it could be prescribed to patients.  The County contends that if Merck had not misrepresented Vioxx's safety, it would not have added Vioxx to its formulary and would not have paid for Vioxx.  Two causes of action are asserted: violations of the New Jersey Consumer Fraud Act (NJCFA) and unjust enrichment.

## II.   LAW AND ANALYSIS

Merck moves for judgment on the pleadings on both causes of action.  First, Merck argues that the County does not have an NJCFA claim because California's consumer fraud law applies rather than New Jersey's.  In the alternative, Merck argues that even if New Jersey law does apply, the County's NJCFA claim fails for lack of standing, lack of a viable causation theory, or as subsumed by the New Jersey Products Liability Act.   With respect to the unjust enrichment claim, Merck argues that the claim fails as a matter of law under either California or New Jersey law.

The County opposes Merck's motion.  It contends that the choice-of-law analysis directs application of New Jersey law to its claims, and also opposes Merck's arguments in the alternative.  With respect to the unjust enrichment claim, the County argues that it states a claim under New Jersey law.

## A.   Standard on Motions for Judgment on the Pleadings

A motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure

12(c) is subject to the same standard as a motion pursuant to Rule 12(b)(6).  *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008).  "[A]ll well-pleaded facts are viewed in the light most favorable to the plaintiff, but plaintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim."  *City of Clinton v. Pilgrim's Pride Corp.*, 632 F.3d 148, 152-53 (5th Cir. 2010).  "To avoid dismissal, a plaintiff must plead sufficient facts to 'state a claim to relief that is plausible on its face.'"  *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)).  The court "do[es] not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions."  *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005).

## B.      Choice of Law

The parties agree that this MDL court exercising diversity jurisdiction over a transferred case must apply the choice-of-law provisions of the transferor state.  New Jersey applies a two-step conflict-of-law analysis.  In the first step, the Court must determine if there is an actual conflict between the laws of two states regarding a particular claim.  The parties agree that there is an actual conflict between New Jersey and California law in light of the different requirements and remedies available under each state's consumer protection statutes.

In the second step, the Court applies the Second Restatement's "most significant relationship" test for tort claims.  *P.V. ex rel. T.V. v. Camp Jaycee*, 962 A.2d 453, 460 (N.J. 2008).  The analysis is "qualitative, not quantitative," and "does not focus solely on the number of contacts with each state, although that can be persuasive."  *Id.*

The Restatement contains three sections potentially applicable to a conflict between two states' consumer protection laws: the general policy factors set forth in § 6, the contacts to consider generally in tort cases set forth in § 145, and the specific contacts to consider in fraud and misrepresentation cases in § 148.  First, § 6 sets out "cornerstone principles" to consider which, "[r]educed to their essence" are "(1) the interests of interstate comity; (2) the interests of the parties; (3) the interests underlying the field of tort law; (4) the interests of judicial administration; and (5) the competing interests of the state."  *Camp Jaycee*, 962 A.2d at 461, 463.

Next, § 145 sets out the contacts to be taken into account in applying the § 6 principles in a tort case:

> (1)    The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has ***the most significant relationship to the occurrence and the parties under the principles stated in § 6.***
> (2)    Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
>> (a)    the place where the injury occurred,
>> (b)    the place where the conduct causing the injury occurred,
>> (c)    the domicil, residence, nationality, place of incorporation and place of business of the parties, and
>> (d)    the place where the relationship, if any, between the parties is centered.
>
> These contacts are to be evaluated according to their relative importance with respect to the particular issue.

Restatement (Second) of Conflict of Laws § 145 (1971) (emphasis added).  Finally, § 148 offers more specific contacts to be considered in the context of fraud claims and in light of §§ 6 and 145:

> (1)    When the plaintiff has suffered pecuniary harm on account of his reliance on the defendant's false representations and when the plaintiff's action in reliance took place in the state where the false representations were made and received, the local law of this state determines the rights and liabilities

of the parties unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

(2)   When the plaintiff's action in reliance took place in whole or in part in a state other than that where the false representations were made, the forum will consider such of the following contacts, among others, as may be present in the particular case in determining the state which, with respect to the particular issue, has the most significant relationship to the occurrence and the parties:

(a)   the place, or places, where the plaintiff acted in reliance upon the defendant's representations,

(b)   the place where the plaintiff received the representations,

(c)   the place where the defendant made the representations,

(d)   the domicil, residence, nationality, place of incorporation and place of business of the parties,

(e)   the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and

(f)   the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

Restatement (Second) of Conflict of Laws § 148 (1971); *see Gray v. Bayer Corp.*, No. 08-4716, 2011 WL 2975768, at *2 n.2 (D.N.J. July 21, 2011) ("[Section] 148 is still the section of the Restatement most relevant to the NJCFA and the consumer fraud statutes of the other states.").

**1)   Merck's Arguments in Favor of California Law**

Merck cites a number of cases applying New Jersey's most significant relationship and holding that consumer fraud claims against pharmaceutical or other product manufacturers are governed by the law of the plaintiff's home state, even if suit is filed in New Jersey against a New Jersey defendant. For example, in *Gray v. Bayer Corp.*, the plaintiff alleged that the New Jersey defendants misrepresented the benefits of a vitamin supplement. 2011 WL 2975768, at *1. In connection with denying a motion to certify a class, the court conducted a choice-of-law analysis and concluded that the law of the plaintiff's home jurisdiction would apply to consumer fraud claims. The court considered the Restatement § 148(2) factors and concluded that only

-6-

factor (c), the place where the defendant made the fraudulent representations, weighed in favor

of New Jersey.  The other factors weighed in favor of the states where the plaintiffs received the

representations, relied on them, and purchased the vitamins.  The court also considered the

Restatement § 6 principles and concluded that the NJCFA "serves both a compensatory and

deterrent function," and that although New Jersey had an interest in deterring misconduct by

New Jersey corporations, the other fifty states had an equal interest in compensating their

citizens.  *Id.* at *5.  Thus, the court concluded that to "apply the NJCFA to out-of-state

consumers in this case ... would be to ignore the compensatory interests of potentially fifty other

jurisdictions" and the court saw "little reason to conclude that New Jersey's deterrent interest

with respect to one party should be elevated above its fellow states' compensatory interests with

respect to an entire class."  *Id.*  The *Gray* court also cited a number of cases representing "the

weight of authority counseling against the application of the NJCFA to out-of-state consumers."

*Id.* at *6.

Many other opinions have declined to apply the NJCFA to the claims of non-New Jersey

plaintiffs.  *See, e.g.*, *In re Philips/Magnavox Television Litig.*, No. 09-3072, 2010 WL 3522787

(D.N.J. Sept. 1, 2010) (holding that Montana law, not New Jersey, governed consumer fraud

claim because plaintiff received misleading marketing and bought the defective product in

Montana; *Laney v. Am. Standard Cos., Inc.*, 07-3991, 2010 WL 3810637 (D.N.J. Sept. 23,

2010) (holding that Texas law, not New Jersey, governed consumer fraud claim because plaintiff

received misleading advertisements in Texas and relied on them to buy a television in Texas);

*see also Arlandson v. Hartz Mountain Corp.*, 792 F. Supp. 2d 691, 709 (D.N.J. 2011) ("[O]nly

New Jersey Plaintiffs may state an NJCFA claim."); *Maniscalco v. Brother Int'l Corp.*, 793 F.

Supp. 2d 696, 707 (D.N.J. 2011) (applying law of plaintiffs' home to their claims, even if

defendant "made a decision to conceal in New Jersey" because majority of courts "have determined that unlawful conduct emanating from New Jersey does not necessarily supersede the numerous contacts a plaintiff had with his home state") (quotation omitted).

On the basis of these cases, Merck argues that the limited New Jersey contacts do not warrant application of New Jersey law. Although Merck's principal place of business is in New Jersey and it made marketing decisions in New Jersey, it argues the California connections are much more substantial. The County is a California public entity, allegedly fraudulent representations were received in California, and whatever economic injury the County incurred, if any, was incurred in California. Therefore, in accordance with the great weight of cases cited by Merck, it argues that California consumer protection law governs the claims of the County of Santa Clara and the claim under the NJFCA must be dismissed.

### 2)        Santa Clara County's Argument in Favor of New Jersey Law

In opposition, the County argues that the issue has already been decided in its favor in Vioxx litigation in New Jersey state court, citing *International Union of Operating Engineers Local No. 68 Welfare Fund v. Merck*, No. ATL-L-3015-03, 2005 WL 2205341 (N.J. Super. July 29, 2005) ("*Local No. 68*"), *reversed by* 929 A.2d 1076 (N.J. 2007). In *Local No. 68*, the court certified a nationwide class of third-party healthcare benefit payors, premised in part on a choice of law analysis that applied New Jersey law and the NJCFA to the claims of payors in all fifty states. *Id.* at *17-38. The certification was ultimately reversed by the New Jersey Supreme Court, which held that the class failed the requirements of predominance and superiority, even if the NJCFA applied to all claims. *See* 929 A.2d at 1085-86. The New Jersey Supreme Court did not reverse on the basis of the choice of law analysis, but it noted in a footnote "strong arguments" against finding that New Jersey law applied nationwide. *See id.* at 1086 n.3.

The County also relies heavily on *In re Mercedes-Benz Tele Aid Contract Litigation*, 257 F.R.D. 46 (D.N.J. 2009).  In *Mercedes-Benz*, a group of named plaintiffs filed a purported nationwide class action against Mercedes-Benz, a corporation with its principal place of business in New Jersey, alleging that the company misrepresented the future obsolescence of a cellular roadside assistance program.  *Id.* at 48.  The court ultimately certified a nationwide class, and in doing so concluded that New Jersey law would apply to the claims of all plaintiffs regardless of their home state.  The *Mercedes-Benz* court reasoned that on the one hand, individual plaintiffs would have received and relied on misrepresentations in their various home states, but on the other hand, "all of the conduct underlying Plaintiffs' consumer fraud claim took place" in the defendant's home in New Jersey and New Jersey was "the only state with an additional interest in regulating a corporation headquartered within its borders."  *Id.* at 66-67.  The court placed particular emphasis on the "place where the defendant made the representations" factor because only pecuniary harm was inflicted and because applying the law of the fifty states would undermine New Jersey's interest in deterring misconduct within New Jersey.  Thus, the court held that New Jersey law applied to the consumer fraud claims of citizens of all fifty states.

Merck points out that the *Mercedes-Benz* decision has been criticized, minimized, and rejected by numerous courts.  In *Laney*, the court followed another case as "appropriate precedent" and distinguished *Mercedes-Benz* as giving insufficient consideration to plaintiffs' home state interest in compensating its own residents.  2010 WL 3810637, at *21.  In *Gray*, the court observed that *Mercedes-Benz* "appears to be the only case from this District to have applied [Restatement] § 148(2) to hold the NJCFA applicable to out-of-state consumers" and declined to follow it in favor of "the weight of authority counseling against the application of the NJCFA to out-of-state consumers."  2011 WL 2975768, at *6.  In *Maloney v. Microsoft Corp.*,

the court noted that it was "unsatisfied with the justifications provided in the *Mercedes-Benz* case" which went against "the great weight of case law in this jurisdiction on the matter."  No. 09-2047, 2011 WL 5864064, at *9 (D.N.J. Nov. 21, 2011).  *Maloney* also noted the absence of "cases ... that purport to follow the opinion in *Mercedes-Benz*."  *Id.*

With respect to the relevant Restatement contacts and factors, the County argues that New Jersey has stronger contacts to the claim because Merck does business in New Jersey, made the false and misleading statements in New Jersey, and created misleading marketing materials in New Jersey.  Thus, the County focuses on Merck's conduct in New Jersey rather than the effects of that conduct in California (and the forty-nine other states).

The County also argues in terms of the § 6 factors that New Jersey law should apply because the NJCFA, through imposition of treble damages, provides a stronger deterrent than other consumer protection statutes and thus furthers, rather than inhibits, other states' interests in deterring fraud.  However, Merck responds that whatever New Jersey's interest is in deterring New Jersey companies from committing fraud and compensating New Jersey residents for their injuries, the state does not have an interest in extending its consumer protection regime to the residents of other states, who are governed by their own states' legal regimes and policy decisions.  *See*, *e.g.*, *Gray v. Bayer Corp.*, 2011 WL 2975768, at *5-6 ("To apply the NJCFA to the out-of-state consumers in this case ... would be to ignore the compensatory interests of potentially fifty other jurisdictions.  Simply because New Jersey has struck a particular balance between consumer protection and the promotion of business within its borders does not suggest that its interest in deterrence should displace the policy goals of its fellow states.").

**3)    Analysis**

As a preliminary matter, the Court has not previously resolved the question of choice-of-

law for consumer fraud claims in the Vioxx MDL.  In a November 22, 2006 Order and Reasons

denying the PSC's motion for certification of a nationwide personal injury class, the Court

mentioned the matter, and the *Local #68* opinion, in a footnote:

> The PSC asks the Court to follow the holdings in [*Local # 68*].... and apply New
> Jersey law to the entire class.
> *Local # 68* arises out of the consolidated Vioxx proceedings currently pending in
> the Law Division of the Superior Court of New Jersey. In *Local # 68*, the
> Appellate Division affirmed Judge Higbee's conclusion that New Jersey's
> Consumer Fraud Act applied to a national class of third-party payors who had
> purchased Vioxx for their insureds. The Supreme Court of New Jersey has agreed
> to hear the case. See 188 N.J. 215, 902 A.2d 1232 (N.J.2006). New Jersey courts
> have reached varying conclusions with respect to choice-of-law issues in
> consumer fraud cases. [citations omitted].
> While *Local # 68* will be extremely in-formative to the Court's consideration of
> the Purchase Claims Master Class Action Complaint, it does not address the
> choice-of-law question in this personal injury action. As the Appellate Division
> noted, *in consumer fraud cases "the primary purpose of the tort rule involved is
> to deter or punish misconduct" and therefore "the place where the conduct
> occurred has peculiar significance."* *Local # 68*, 894 A.2d at 1148. On the other
> hand, in personal injury cases the focus shifts to compensation and therefore "the
> place of injury" has peculiar significance. See Erny, 792 A.2d at 1217-18. The
> Appellate Division noted that the personal injury cases cited by Merck were not
> analogous to the consumer fraud action before it, and held that Judge Higbee did
> not abuse her discretion in refusing to follow such cases. See Local # 68, 894
> A.2d at 1152. Accordingly, this Court finds that the consumer fraud cases cited by
> the PSC are not analogous to the personal injury action before it.

*In re Vioxx Prods. Liab. Litig.*, 239 F.R.D. 450, 456 n.9 (E.D. La. 2006).  Since the Court wrote

that footnote in 2006, the New Jersey Supreme Court has both reversed the *Local # 68*

certification order and also switched from the governmental interests test to the most significant

relationship test.

The issue boils down to the application of Restatement § 148.  The allegations in the

Complaint implicate the second prong, § 148(2), which applies if the fraudulent statements are

made in one state but received in a different state.  According to § 148(2), the Court should

consider six categories of contacts between the claim and the interested states, New Jersey and

California: (a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations, (b) the place where the plaintiff received the representations, (c) the place where the defendant made the representations,(d) the domicile, residence, nationality, place of incorporation and place of business of the parties, (e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and (f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.  The Court will address the California and New Jersey contacts in light of the consumer fraud allegations in the Complaint.

Contacts (a) and (b) weigh strongly in favor of California because that is where the County allegedly added Vioxx to its formulary and paid for prescriptions of Vioxx on the basis of the requests of California doctors.  Contacts (e) and (f) also skew in favor of California because the alleged fraud resulted in the payment for Vioxx pills in California.

Contact (d), which relates to the location of the parties, is a wash.  Merck has its principal place of business in New Jersey and the County is a California governmental entity.

Contact (c) seems to suggest contacts with New Jersey because Merck allegedly made at least some false representations in New Jersey.  The factual allegations here involve misrepresentations made to doctors, consumers, and third-party-payors, through press releases made and studies emanating from New Jersey, as well as through direct marketing to California citizens.  Some of the alleged misrepresentations were thus "made" in New Jersey and some in California.  If this factor weighs in favor of New Jersey, it does so only partially.

To sum up, only one factor seems to weigh in favor of the application of New Jersey law. This was enough for the *Mercedes-Benz* court to apply New Jersey law to out-of-state litigants, but as noted above that opinion is an outlier.  Under similar facts, many more cases have applied

-12-

the consumer fraud law of plaintiff's home state.

New Jersey law also directs the Court to look at the state interests articulated in Restatement § 6. On this point, the analysis in *Gray v. Bayer* is more comprehensive and up-to-date than that in *Local No. 68* or *Mercedes-Benz*. *Gray* considered both the deterrent and compensatory goals of consumer fraud statutes and recognized that while New Jersey has an interest in deterring New Jersey companies, it has less of an interest in compensating non-New Jersey residents. *See*, *e.g.*, *Gray*, 2011 WL 2975768, at *5-6 ("To apply the NJCFA to the out-of-state consumers in this case ... would be to ignore the compensatory interests of potentially fifty other jurisdictions. Simply because New Jersey has struck a particular balance between consumer protection and the promotion of business within its borders does not suggest that its interest in deterrence should displace the policy goals of its fellow states."). *Local No. 68* and *Mercedes-Benz* essentially ignore the interests of the other states in setting their own compensatory schemes for residents injured by consumer fraud, and as explained above, those cases seem to be outliers in applying New Jersey law nationwide.

Taken as a whole, weighed qualitatively rather than qualitatively, and assessed in light of the relevant § 6 policies, New Jersey choice-of-law dictates that California law applies to the County's consumer fraud claim. Under the applicable test, California has significant contacts with the claim and an interest in defining the appropriate compensation for its residents. The majority of apposite cases have applied the law of the state of the plaintiff's residence to the plaintiff's consumer fraud claim, and the Court is persuaded by the weight of that authority. Accordingly, the County cannot assert a claim under the NJCFA, and the Court need not reach Merck's alternate arguments regarding the deficiency of the allegations under the NJCFA.

**C.     Unjust Enrichment**

-13-

Merck also argues that the County's claim for unjust enrichment fails as a matter of either California or New Jersey law. Some courts have found that there are no genuine conflicts of law between the fifty states regarding the law of unjust enrichment, and thus under New Jersey's conflict-of-law analysis it is appropriate to apply New Jersey substantive law to unjust enrichment claims brought by out-of-state plaintiffs. *E.g.*, *Snyder v. Farnam Companies, Inc.*, 792 F. Supp. 2d 712, 723 (D.N.J. 2011) ("Since no actual conflict exists, New Jersey law will be applied to all Plaintiffs' unjust enrichment claim[s]."). Other courts have applied the plaintiff's home-state law to unjust enrichment claims without expressly finding a conflict of law specifically as to unjust enrichment claims. *See Yocham v. Novartis Pharms. Corp.*, 736 F. Supp. 2d 875, 881 (D.N.J. 2010) (applying New Jersey unjust enrichment law without expressly finding an actual conflict of law).

There appears to be no genuine conflict between New Jersey and California law. In both jurisdictions, unjust enrichment is not an independent cause of action but rather something in the nature of a gap-filler or remedy. Under California law, "[u]njust enrichment is not a separate cause of action but is tied to other causes of action that give rise to a right of restitution" and "the viability of this [unjust enrichment] claim depends on" whether any other claims survive a motion to dismiss. *See McKinney v. Google, Inc.*, No. 5:10-CV-01177, 2011 WL 3862120, at *8 (N.D. Cal. Aug. 30, 2011).[2] New Jersey appears to recognize a cause of action for unjust

---

[2]Some cases do speak in terms of an independent cause of action for unjust enrichment under California law, citing the Restatement of Restitution as authority. *See Foster Poultry Farms v. Alkar-Rapidpak-MP Equipment, Inc.*, 2011 WL 2414567, at * 6 (E.D. Cal. June 8, 2011). Nonetheless, the great weight of California district court and recent state appellate court cases hold that "unjust enrichment" is not an independent theory of recovery. The Ninth Circuit has also stated that "[i]n California, however, 'Unjust Enrichment' does not describe a theory of recovery, but an effect: the result of a failure to make restitution under circumstances where it is equitable to do so." *Brady v. Brown*, 40 F.3d 13, 1995 WL 120657, at *5 (9th Cir. Mar. 21, 1995).

enrichment in the context of contractual or quasi-contractual claims, but not as a basis for tort liability. *See Castro v. NYT Television*, 851 A.2d 88, 98 (N.J. Super. App. Div. 2004) ("The Restatement of Torts does not recognize unjust enrichment *as an independent tort cause of action*. Unjust enrichment is of course a familiar basis for imposition of liability in the law of contracts.") (emphasis added).

The County does not cite authority to the contrary supporting the independent viability of an unjust enrichment claim under either California or New Jersey law. The weight of the authority suggests that neither jurisdiction permits such a claim. Accordingly, Merck's motion is granted as to the unjust enrichment claim as well.

### D.     Leave to Amend the Complaint

For the reasons set forth above, Merck's motion is granted with respect to both of the County's causes of action. In its opposition brief, the County argues that it should have leave to amend to assert alternative theories under California law, including a fraudulent concealment claim and a claim under the California False Advertising Act "on behalf of the entire State of California".

In its reply brief, Merck argues that amendment is futile because the proposed alternative theories are also not legally viable. The County has not had an opportunity to respond to Merck's arguments against granting leave to amend. Other Governmental Actions also remain pending, and those entities have indicated they intend to seek leave to file amended complaints. It may be appropriate to grant leave to amend under these circumstances, if the County can in good faith state a viable claim in light of Merck's arguments to the contrary.

### III.     CONCLUSION

For the foregoing reasons, IT IS ORDERED that Merck's Motion for Judgment on the

Pleadings is GRANTED.  The County of Santa Clara's claims under the NJCFA and for unjust

enrichment are DISMISSED.  The County may file a motion for leave to amend its Complaint,

which Merck may oppose.

New Orleans, Louisiana, this 20th day of March, 2012.

UNITED STATES DISTRICT JUDGE