IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: VIOXX PRODUCTS LIABILITY LITIGATION | *  MDL No. 1657 |
| | * |
| | *  SECTION L |
| | * |
| | *  JUDGE ELDON E. FALLON |
| This document relates to: | * |
| *D.C. ex. rel. Kenneth Walker v.* | *  MAGISTRATE JUDGE KNOWLES |
| *Merck & Company*, Civil Action No. 08-4148 | * |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**PLAINTIFF KENNETH WALKER'S REPLY TO DEFENDANT'S
OPPOSITION TO PLAINTIFF'S MOTION TO AMEND**

**I.      INTRODUCTION**

Defendant argues that an amendment of the amended complaint would be futile because (1) the amendment is time-barred; and (2) Plaintiff has not cured existing deficiencies, including the alleged failure of Mr. Walker to establish a consumer/merchant transaction. Both arguments are meritless. And, Merck has failed to carry the high burden to prevent the amendment of a complaint. Therefore, the Court should grant the amendment.

**II.     ARGUMENT**

**A.  The Amendment Relates Back and is not Time-Barred**

According to Defendant, Plaintiff's proposed amendment does not relate back because (1) the amendment does not arise out of the same conduct as alleged in the operative (amended) complaint, and (2) Defendant did not have adequate notice. Def. Mem. [#63734] at 7. The argument continues that because the amendment cannot relate back, it is essentially a new lawsuit, time-barred. *See* Def. Mem. [#63734] at 11 ("In short, Merck had no notice prior to Plaintiff's proposed Second Amended Complaint that this case had anything to do with Merck's alleged representations to individual consumers. Instead,

Plaintiff now seeks to bring what is – in essence – a new lawsuit. Because that new lawsuit is time-barred, the amendment would be futile and should not be allowed."). Both prongs of this argument fail.

Addressing Merck's first argument that the proposed second amended complaint raises new conduct, a casual read of the amended complaint demonstrates that this allegation has no merit. The amended complaint filed in 2005 contains the following allegations regarding the impact of Merck's misrepresentations to consumers:

- Paragraph 10 states: Plaintiff brings this action on behalf of himself, the District of Columbia, and the District of Columbia residents who purchased Vioxx. He alleges that Defendant, Merck & Company, committed unlawful trade practices in connection with marketing and selling Vioxx to consumers in the District of Columbia in violation of D.C. Code Section 28-3904(e) and (f)(3).

- Paragraph 54 states: Defendant Merck & Company, by its conduct, in intentionally obfuscating the risks and dangers associated with use of Vioxx, misled medical providers and consumers in the District of Columbia when there were safer and more effective alternatives that did not pose these risks, and, by its conduct, Defendant Merck & Company violated D.C. Code Section 28-3904(e).

- Paragraph 56 states: Defendant Merck & Company, by its conduct, failed to state a material fact when its agents purposely did not reveal and/or discuss studies that demonstrated increase cardiovascular risks associated with the use of Vioxx when it marketed the drug to medical providers and consumers in the District of Columbia.

- Paragraph 57 states: Defendant Merck & Company, by its conduct, violated D.C. Code Section 28-3904(f) when it misled medical providers and consumers in the District of Columbia about the increased risks associated with the use of Vioxx.

*See* Am. Compl. These paragraphs clearly prove that this case has always sought to represent the interests of consumers based upon the same facts alleged in the proposed amendment, and the underlying

facts in the complaints on file are directly in line with the broadened allegations contained in the proposed amendment.

Defendant's reliance on *Schirle v. Sokudo U.S.A., LLC.*, 2011 U.S. Dist. LEXIS 78263 (D.D.C. July 19, 2011) and *La. Wholesale Drug Co. v. Biovail Corp.*, 437 F. Supp. 2d 79 (D.D.C. 2006) is misplaced.  In both cases, the proposed amendments were significantly more substantial and different than in the instant case.  In *Schirle*, the plaintiff "added new facts regarding separate transactions— distinct instances of defamation—*perpetrated by different wrongdoers and addressed to different audiences*." *Schirle*, 2011 U.S. Dist. LEXIS 78263 at *25 (emphasis added).  In other words, the plaintiff sought to add additional defendants and additional claims.  *Id.*  Similarly, in *La. Wholesale Drug Co.*, the plaintiff added a new claim.  *See* 437 F. Supp. 2d at 81-82 (comparing the claims in the operative complaint to those in the proposed amendment).  Clearly adding claims and/or defendants to a complaint will do more than "simply supplement or amplify the facts already alleged." *Sharper v. Dretke*, No. 3:01-CV-1405-P, 2004 U.S. Dist. LEXIS 8820, at *17 (N.D. Tex. May 12, 2004).  Therefore, the Court properly rejected those amendments in those cases.

In the instant case, by contrast, the proposed amendment simply supplements, amplifies or makes more specific the existing facts and claims alleged in the operative (amended) complaint.  Many facts have been discovered, particularly through the MDL discovery, that were unknown when the amended complaint was filed more than 6 years ago.  Plaintiff's proposed amendment, like the prior complaints, is based on the theory that Defendant committed unlawful trade practices in connection with marketing and selling Vioxx to consumers in the District of Columbia in violation of  D.C. Code Section 28-3904(e) and (f)(3), and that Plaintiff and other consumers suffered harm as a result.  See Am. Compl. ¶ 10.  Plaintiff has not added any new claims or defendants.  Instead, Plaintiff has only added facts to bolster its basis for class certification and its prayer for relief.  The suit has always sought to represent the interests of District of Columbia consumers, and this will not change with the adoption of the proposed amendment.  The proposed amendment arises out of the exact same conduct alleged in the operative (amended) complaint.

Addressing Merck's second argument that the amendment is time barred due to lack of notice, Plaintiff shows that Defendant had notice of the consumer claims of this suit since the time of its original filing. Besides the fact that the operative (amended) complaint makes this painfully clear, Defendant actually relied on the consumer nature of the case to remove this case to federal court. In its Notice of Removal, Defendant referred to Plaintiff's claims as "the functional equivalent of a putative class action," and further acknowledged that "Plaintiff … asserts that 'consumers in the District of Columbia expended millions of dollars purchasing Vioxx prescriptions,'" and that "Plaintiff alleges that consumers in the District of Columbia 'expended millions of dollars purchasing Vioxx prescriptions[.]'" July 7, 2008 Notice of Removal ¶¶ 27, 31, and 38. Therefore, Defendant not only had specific notice as to Plaintiff's intent to represent consumers of Vioxx, but trumpeted this fact in its removal papers. *See Id*. Defendant's current assertion that it had "no notice prior to Plaintiff's proposed Second Amended Complaint that this case had anything to do with Merck's alleged representations to individual consumers" is completely disingenuous and totally contradicted by the pleadings. *See* Def. Mem. [#63734] at 11. Merck recognized the consumer nature of the complaint at the time of removal, used it to its advantage, and now, when it is to Merck's disadvantage to acknowledge the consumer thrust of the complaint, it ignores the very facts it previously urged to bring this action into federal court.

The proposed amendment relates back to the original and amended complaints because Plaintiff's amendment arise out of the same conduct alleged in those filed complaints, and Defendant was on clear notice of this suit's intent to represent individual consumers. As the proposed amendment relates back, it does not constitute a new lawsuit and is not time-barred. Accordingly, the proposed amendment cannot be deemed futile on this ground.

### B. The Complaint Suffers from no Deficiencies

1. *Plaintiff has Standing*

Defendant also argues that the proposed amendment would be futile because Plaintiff has no standing and Plaintiff has not alleged a consumer transaction. Def. Mem. [#63734] at 12. In its standing

argument, Defendant essentially makes two points: (1) economic injuries cannot form the basis for Article III standing; and (2) Plaintiff does not allege sufficient causation between the statutory violation and his injury. Again Merck's arguments fail, because Plaintiff had already satisfied these requirements before seeking to file the proposed amendment, and if there are any remaining alleged deficiencies, they are cured by the amendment.

As explained in his Opposition to Defendant's Motion for Judgment on the Pleadings, Plaintiff has standing based on the violation of his statutory legal rights. Under controlling District of Columbia precedent, "the deprivation of … a statutory right [to be 'free from improper trade practices'] may constitute an injury-in-fact sufficient to establish standing, even though the plaintiff 'would have suffered no judicially cognizable injury in the absence of [the] statute.'" *Grayson v. ATT Corp.*, 15 A.3d 219, 248-249 (D.C. 2011) (quoting *Shaw v. Marriott Intl, Inc.*, 605 F.3d 1039, 1042 (D.C. Cir. 2010)).

Defendant attempts to distinguish these cases by claiming (1) that *Grayson* is not controlling on matters of standing, see Def. Mem. [#63728-2] at 3 n.2, and (2) that purchase of a product is not sufficient to constitute injury. *See Id*. at 6-7. These legal arguments should be rejected. Merck's first argument must fall because the D.C. Circuit follows *Grayson* regarding standing and injury under the DCCPPA. *Shaw*, 605 F.3d at 1042. And, *Grayson,* a decision from the D.C. Court of Appeal, defines what constitutes an injury under the DCCPPA. *See M.A.P. v. Ryan*, 285 A.2d 310, 312 (D.C. 1971) ("[T]he Court Reform Act declared that '[the] highest court of the District of Columbia is the District of Columbia Court of Appeals.'"). Because the Court must examine the construction of a state statute to determine how an injury is defined under state law, the relevant authority is the D.C. Court of Appeals. *See Id*.

The District of Columbia courts addressing the issue of injury have repeatedly held that economic injuries alone are sufficient to constitute Article III injuries. *See Shaw*, 605 F.3d at 1042 (citing *Ciba-Geigy Corp. v. EPA*, 801 F.2d 430, 438 n.10, 255 U.S. App. D.C. 216 (D.C. Cir. 1986)) ("[Plaintiff] has standing. It used its own funds to pay for stays at Marriott's Russian hotels, and suffered pecuniary harm

as a result of Marriott's pricing practices. … Damages under the CPPA would remedy that loss.  Article III requires no more."); *see also Dist. Cablevision v. Bassin*, 828 A.2d 714, 725 (D.C. 2003) (affirming the finding of an injury where consumers paid excessive late fees of $5); *Silvious v. Snapple Beverage Corp.*, 793 F. Supp. 2d 414, (D.D.C. 2011) ("Accepting, as it must on a motion to dismiss, that plaintiff made the alleged purchases of Snapple products at issue, the Court finds that plaintiff, as a consumer of products in the District of Columbia alleging an unlawful trade practice, has Article III standing.").  These cases hold that the loss of money due to an improper trade practice constitutes an injury under Article III.  Since Plaintiff has clearly alleged that he spent money as a result of an improper trade practice, he has alleged an injury.  Defendant's attempts to distinguish those cases from the instant case are tenuous at best.

Equally unavailing is Defendant's argument that Plaintiff has not alleged a causal connection between his purchase of Vioxx and his injuries.  Plaintiff has already alleged that Defendant used false advertising to reach consumers including Plaintiff.  *See* Am. Compl. ¶¶ 42, 54-57.  This alone is sufficient under the law of the District of Columbia for the causal connection.  Plaintiff further bolsters this claim in his Proposed Second Amended and Restated Complaint.  Proposed Second Am. Compl. ¶¶ 181-184.  Therefore even if a deficiency previously existed, it has been cured by Plaintiff's proposed amendment.[1]

2. *Plaintiff has Alleged a Consumer-Merchant Relationship*

Defendant asserts that transactions between ultimate consumers and upstream manufacturers are not covered by the DCCPPA, and thus Plaintiff's amendment should not be allowed. Plaintiff has clearly

---

[1] It is important to note that the Missouri Merchandizing Practices Act (MMPA), Mo. Rev. Stat. §§ 407.010 to 407.130 (Cum. Supp. 2008), is substantially similar to the DC Consumer Protection Procedures Act. In *Plubell v. Merck & Co.*, 289 S.W.3d 707 (Mo. App. 2009), the court upheld the certification of a state wide consumer class and ruled that the MMPA did not require proof of reliance, proof that the unlawful practice caused the purchase, or proof of Merck's state of mind. *id*., at page 713 – 714.  A copy of that decision is attached as Exhibit A for the Court's convenience.

alleged the existence of a consumer-merchant relationship, quite simply because Plaintiff is as a consumer, and Defendant qualifies as a merchant. Merck obscures D.C. law.

Under the DCCPPA, a transaction must be (1) a consumer-merchant relationship, (2) involving a trade practice, i.e. a transaction, (3) of goods and services (4) for personal use. Of these requirements, Defendant essentially bases its argument on the consumer-merchant relationship. As stated in Plaintiff's Opposition to Defendant's Motion for Judgment on the Pleadings, all of these elements exist in Plaintiff's current complaints and his Proposed Second Amended and Restated Complaint.

Merchants "need not be the 'actual seller of the goods or services' complained of, but must be 'connected with the 'supply' side of the consumer transaction.'" *Adler v. Vision Lab. Telecomms., Inc.*, 393 F. Supp. 2d 35, 39 (D.D.C. 2005) (quoting *Save Immaculata/Dunblane, Inc. v. Immaculata Prep. Sch.*, 514 A.2d 1152, 1159 (D.C. 1986)); *Howard*, 432 A.2d at 709 ("While a 'merchant' is not limited to the actual seller of the goods or services complained of, he must be a 'person' connected with the 'supply' side of a consumer transaction."); *Chen v. Bell-Smith*, 768 F. Supp. 2d 121, 143 (D.D.C. 2011) (quoting *Howard*, 432 A.2d at 709) ("D.C. courts have found that 'a 'merchant' is not limited to the actual seller of the goods or services complained of,' but only 'must be a 'person' connected with the 'supply' side of a consumer transaction."); *Adler*, 393 F. Supp. 2d at 40 ("As long as an entity falls within the definition of a 'merchant,' the 'actual vendor' -- whether it transmits its information through an 'intermediary' or directly to the injured consumer -- will remain liable for DCCPPA violations."); *Klank*, 561 A.2d at 1004 (quoting *Howard*, 432 A.2d at 709) (internal quotation marks omitted) ("[T]he term merchant is not limited to the actual seller of the goods or services but includes those connected with the supply side of a consumer transaction.").[2] Therefore, the amendment is not futile as there is no pleading deficiency.

---

[2] Furthermore, even under *Williams v. Purdue Pharma. Co.*, 297 F. Supp. 2d 171 (D.D.C. 2003), Plaintiff's claims would be covered because Plaintiff has alleged that he was deceived by Defendant's advertising and purchased Vioxx as a result of this deceit. Am. Compl. ¶¶ 42, 54-57; Proposed Second Am. Compl. ¶¶ 181-184.

III.     CONCLUSION

For the foregoing reasons the Court should grant Plaintiff's Motion to Amend and the matter should proceed to discovery, and ultimately trial.[3]

DATED:  March 20, 2012		/s/ H. Vincent McKnight
						H. Vincent McKnight
						vmcknight@mcknightandkennedy.com
						MCKNIGHT & KENNEDY, LLC
						8601 Georgia Avenue, Suite 1010
						Silver Spring, MD 20910
						(301) 565-5281


						Elizabeth J. Cabraser
						ecabraser@lchb.com
						LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
						275 Battery Street, 29th Floor
						San Francisco, CA 94111-3339
						Telephone:  (415) 956-1000
						Facsimile:   (415) 956-1008


						Dawn M. Barrios (#2821)
						barrios@bkc-law.com
						BARRIOS KINGSDORF & CASTEIX, LLP
						701 Poydras Street, Suite 3650
						New Orleans, LA 70139
						Telephone:  (504) 524-3300
						Facsimile:   (504) 524-3313

---

[3] Plaintiff is amenable to try this matter before Judge Fallon, preferably before a DC jury.

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail, upon Liaison Counsel Ann Oldfather by e-mail, and upon all parties by electronically uploading same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 20th day of March 2012.

/s/ Dawn M. Barrios
Dawn M. Barrios