IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | ) | MDL NO. 1657 |
| PRODUCTS LIABILITY LITIGATION | ) | SECTION: L |
| | ) | JUDGE FALLON |
| THIS DOCUMENT RELATES TO: | ) | |
| *All Settled Third-Party-Payor and Personal-Injury Claims Involving Missouri Vioxx Users* | ) | |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO ENJOIN MISSOURI PLAINTIFFS MARY PLUBELL
AND TED IVEY FROM PURSUING RELIEF FOR VIOXX
EXPENDITURES ALREADY SUBJECT TO SETTLEMENTS**

Recently, the plaintiffs in a Vioxx consumer class action pending in Missouri state court revealed in expert discovery that they seek to recover all money spent on Vioxx purchases in the State of Missouri, regardless of who actually spent it. Plaintiffs' demand for damages thus includes money spent on Vioxx by personal injury ("PI") plaintiffs and third-party payors ("TPPs") who have settled with Merck and released the Company from any further liability with respect to Vioxx.

According to the Missouri plaintiffs, "there is nothing inherently wrong with recovery [by PI claimants] for economic loss under the [Missouri Merchandising Practices Act (or 'MMPA')]" because economic loss is "a separate, distinct injury." (Suggestions In Opp'n To Def.'s Mot. To Exclude Dr. Jack Fincham's Opinions Regarding Ascertainable Loss ("Fincham Opp'n") at 21, *Plubell v. Merck & Co., Inc.*, No. 04CV235817-01 (Mo. Cir. Ct. filed Feb. 14, 2012) (attached as Ex. 1).) Nor do they see any problem in seeking a second recovery from

1088407v1

Merck with respect to payments made by TPPs because the TPP settlement did not "release[] the claims of any class member in this case." (*Id.* at 19.)

These attempts at double recovery directly challenge the PI and TPP settlements. Under the Master Settlement Agreement ("MSA"), settling PI plaintiffs were required to release any and all "rights, remedies, actions . . . arising out of, relating to, resulting from and/or connected with Vioxx." Similarly, the TPP agreement required participants to release Merck from claims "in any way, arising out of, relating to, resulting from and/or connected with VIOXX," as well as to indemnify Merck and hold it harmless against "any and all Claims that may be asserted, made or maintained at any time" against it "by, on behalf of or for the benefit of, any Releasing Party."

The Missouri plaintiffs should not be allowed to undermine the two settlements that Merck and the MDL plaintiffs worked so hard to achieve. Instead, the Court can – and should – enter an injunction that protects the settlements, by barring the Missouri plaintiffs from pursuing relief with respect to Vioxx expenditures made by PI claimants and TPPs that have already settled with Merck.

## **BACKGROUND**

Vioxx is a prescription nonsteroidal anti-inflammatory drug manufactured by Merck for pain relief. *In re Vioxx Prods. Liab. Litig.*, MDL No. 1657 SECTION: L (3), No. 05-1657, 2010 U.S. Dist. LEXIS 142767, at *2-3 (E.D. La. Mar. 31, 2010). The United States Food & Drug Administration approved Vioxx for sale in the United States on May 20, 1999. *Id.* at *4. Vioxx was available in the U.S. from May 1999 until it was voluntarily withdrawn from the market in September 2004.

Substantial litigation followed the withdrawal of Vioxx from the market, and multidistrict proceedings were established in this Court by the Judicial Panel on Multidistrict Litigation in

2005.  The MDL proceedings involved a variety of different claims.  The bulk were PI claims, which numbered in the tens of thousands.  *See generally In re Vioxx Prods. Liab. Litig. (Dier v. Merck & Co.)*, 388 F. App'x 391, 393 (5th Cir. 2010) (per curiam), *cert. denied* 131 S. Ct. 1477 (2011); *Plunkett v. Merck & Co.*, 401 F. Supp. 2d 565, 570-72 (E.D. La. 2005); *In re Vioxx Prods. Liab. Litig.*, 360 F. Supp. 2d 1352, 1354-55 (J.P.M.L. 2005).  In addition, dozens of TPPs filed suit, asserting consumer fraud and other causes of action, and seeking reimbursement for moneys they allegedly spent on Vioxx on behalf of their beneficiaries.  (*See, e.g.*, Compl., ECF No. 1-2, *County of Suffolk v. Merck & Co., Inc.*, No. 2:05-cv-2294 (E.D. La. filed July 1, 2005).)

On November 9, 2007, after several years of litigation that included discovery of millions of documents, depositions of numerous company witnesses and experts, and several trials, counsel for Merck and the Negotiating Plaintiffs' Counsel announced a private agreement to resolve most of the PI claims.  Pursuant to the terms of the MSA and the Resolution Program it created, settling PI claimants were required to release any and all "rights, remedies, actions . . . arising out of, relating to, resulting from and/or connected with Vioxx."  (*See* Master Settlement Agreement & Release, http://www.merck.com/newsroom/vioxx/pdf/Settlement_Agreement.pdf.)  Moreover, each settling claimant was required to submit a stipulated dismissal with prejudice, the filing of which was invariably followed by an order from this Court dismissing the claimant's case.  *See, e.g.*, ECF No. 2, *Fellhauer v. Merck & Co., Inc.*, No. 2:05-cv-4147 (E.D. La. Feb. 2, 2010).  A total of 2,393 Missouri residents released their claims against Merck through the Resolution Program, more than 2,000 of whom had cases pending in this MDL proceeding.

In 2009, Merck also settled approximately 190 claims brought by private TPPs.  The plaintiff TPPs in most of these cases had asserted claims for consumer fraud, breach of warranty and unjust enrichment.  But the settling TPPs released Merck from claims "in any way, arising

out of, relating to, resulting from and/or connected with VIOXX." (*See* Release (attached as Ex. 2).)[1]

Plaintiffs Plubell and Ivey – former users of Vioxx – brought suit in Missouri state court on behalf of themselves and a proposed class of Missouri residents who purchased Vioxx, alleging that they suffered economic losses in purchasing the drug because Merck failed to disclose its alleged cardiovascular risks. (*See, e.g.*, 2d Am. Compl. ¶¶ 25, 55, *Plubell v. Merck & Co., Inc.*, No. 04CV235817 (Mo. Cir. Ct. May 9, 2006) (attached as Ex. 3).) In their prayer for relief, plaintiffs sought recovery of all "purchase costs **Plaintiffs paid** for Vioxx." (*Id.* Prayer For Relief, ¶ (b).) In addition, plaintiffs' proposed class definition excluded "those claiming they have suffered a personal injury as a result of taking Vioxx." (*Id.* ¶ 42.) This definition was accepted by the Missouri trial court, which certified a class of "Missouri residents who purchased Vioxx for personal or family use" and expressly excluded "those claiming they have suffered a personal injury as a result of taking Vioxx." (Order Granting Pls.' Am. Mot. For Class Cert. at 23 & n.7, *Plubell v. Merck & Co., Inc.*, No. 04CV235817-01 (Mo. Cir. Ct. June 12, 2008) (attached as Ex. 4).) In other words, per the complaint and the operative class definition, plaintiffs did not appear to be seeking recovery for Vioxx payments made by either PI plaintiffs or by TPPs.

Just recently, however, the Missouri plaintiffs made clear for the first time that they *are* seeking recovery of payments made both by PI claimants and by TPPs. Specifically, plaintiffs' damages expert, Dr. Jack Fincham, has opined that the class is due $220 million – which he claims is the entire amount spent on Vioxx in Missouri by all payors. (*See generally* Jack E.

---

[1]     This settlement also included insurers that Merck invited to participate, even though they had not originally sued Merck. These participating TPPs similarly released Merck from all claims related to the sale and promotion of Vioxx. As documented in its recent minute entry, the Court continues to address aspects of the TPP settlement – specifically, the administration of fee-allocation issues. *See* Minute Entry, ECF No. 63,718, at 5.

Fincham, Ph.D., Summary of Opinion (Dec. 1, 2011) (attached as Ex. 5).)  This figure includes not just payments by consumers, PI claimants and TPPs, but *all* payments for Vioxx from any source, including payments by the state and federal government, irrespective of whether those claims have been previously resolved and released.[2]

Merck has moved to exclude Dr. Fincham's testimony and has also moved for partial summary judgment with respect to amounts covered by prior settlements.  Those motions are fully briefed and pending before the state court.  The Missouri plaintiffs have made it clear in their opposition to those motions that they stand by their damages claims, arguing that "there is nothing inherently wrong with" seeking recovery on behalf of PI claimants because economic loss is "a separate, distinct injury."  (Fincham Opp'n at 21.)  With respect to their effort to obtain double recovery for TPP payments, plaintiffs argue that such payments cannot be offset (under the collateral-source rule) – and that the TPP settlement is not a bar to recovery because the TPP settlement did not "release[] the claims of any class member in this case."  (*Id.* at 19.)

## ARGUMENT

This Court can – and should – act to protect the PI and TPP settlements.  Pursuant to the All Writs Act, federal courts possess broad authority to "issue all writs necessary or appropriate in aid of their respective jurisdictions."  28 U.S.C. § 1651.  Such "writs" include injunctions against conflicting state-court proceedings.  *See, e.g.*, *Newby v. Enron Corp.*, 338 F.3d 467, 473-74 (5th Cir. 2003); *In re Corrugated Container Antitrust Litig.*, 659 F.2d 1332, 1334 (5th Cir. 1981).  Under the Anti-Injunction Act, a complement to the All Writs Act, a federal court is

---

[2] For example, plaintiffs are seeking to recover Medicaid monies paid for Vioxx (state and federal), even though those amounts are subject to the civil settlement being overseen by the U.S. District Court for the District of Massachusetts.

authorized to enjoin state proceedings where it is necessary: (1) to protect or effectuate its judgments; or (2) to aid the court's jurisdiction. 28 U.S.C. § 2283.[3]

Both exceptions are satisfied here. ***First***, an order enjoining the Missouri plaintiffs from seeking to recover purported economic-loss damages based on payments for Vioxx by PI and TPP claimants who have settled their cases with Merck would aid this Court's jurisdiction over the Vioxx MDL generally and requests to enforce these settlements specifically.[4] ***Second***, such an order would serve to protect and effectuate the judgments of this Court that are embodied in the thousands of stipulations of dismissal that were filed to give effect to the PI and TPP settlements.[5] For either or both of these reasons, an injunction should issue.

---

[3] In considering the interaction between the All Writs Act and Anti-Injunction Act, courts have made it clear that the parallel "necessary in aid of jurisdiction" language is construed similarly in both acts. *See In re Diet Drugs Prods. Liab. Litig.*, 282 F.3d 220, 239 (3d Cir. 2002) (internal quotation marks and citation omitted); *In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 261 F.3d 355, 365 (3d Cir. 2001); *In re Baldwin-United Corp.*, 770 F.2d 328, 335 (2d Cir. 1985). Thus, "a finding that an injunction is 'necessary in aid' of jurisdiction for purposes of one of these statutes implies its necessity for purposes of the other." *Diet Drugs*, 282 F.3d at 239.

[4] It is well settled that an injunction may be directed at the parties, rather than the state court itself, under the All Writs and Anti-Injunction Acts. *See Atl. Coast Line R.R. Co. v. Bhd. Of Locomotive Eng'rs*, 398 U.S. 281, 287 (1970); *Diet Drugs*, 282 F.3d at 233 (affirming injunction aimed at counsel rather than the state court). Moreover, an injunction may issue against those parties even though they have no cases pending before this Court. *See, e.g.*, *United States v. N.Y. Tel. Co.*, 434 U.S. 159, 174 (1977) ("The power conferred by the Act extends, under appropriate circumstances, to persons who, though not parties to the original action or engaged in wrongdoing, are in a position to frustrate the implementation of a court order or the proper administration of justice, . . . and encompasses even those who have not taken any affirmative action to hinder justice.") (citations omitted); *Midland Funding, LLC v. Brent*, 2011 U.S. Dist. LEXIS 52449, at *8 (N.D. Ohio May 17, 2011) (because MDL court had "jurisdiction over this class action" and an interest in effectuating a pending settlement, "it does not need a separate basis for personal jurisdiction in order to enjoin the individual [state] lawsuits" that pose a "risk of conflicting orders"); *see also, e.g.*, *In re Prudential Ins. Co. of Am. Sales Pracs. Litig.*, 314 F.3d 99, 103 n.7 (3d Cir. 2002) (MDL court had jurisdiction over attorneys, and those they represent, where the attorneys had represented parties in the MDL proceeding). But even if the Court were to determine that it lacks jurisdiction over the Missouri plaintiffs, it could alternatively direct an injunction to the state-court proceedings themselves.

[5] No further showing is required. Although traditional, permanent injunctions require proof of (1) success on the merits of an underlying cause of action, (2) irreparable injury absent the injunction, and (3) a net benefit to the injunction based on the balance of harms, *see, e.g.*, *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1097 (11th Cir. 2004), these factors play no role in determining the propriety of an injunction under the All Writs Act, *see generally id.* at 1100-04. This is so because, "[w]hereas traditional injunctions are predicated upon some cause of action, an All Writs Act injunction is predicated upon some other matter upon which the district court has jurisdiction." *Id.* at 1100. "[A] court's traditional power to protect its jurisdiction, codified by the Act, is grounded in entirely separate concerns" than those that justify traditional injunctions. *Id.* at 1100-01 (collecting authority, including *Teas v. Twentieth Century-Fox Film Corp.*, 413 F.2d 1263, 1266-67 (5th Cir. 1969)).

### I. THE COURT SHOULD ENTER AN INJUNCTION IN AID OF ITS JURISDICTION.

First, a limited injunction aimed at the Missouri plaintiffs' efforts to seek relief with respect to Vioxx expenditures already covered by the PI and TPP settlements is necessary in aid of this Court's jurisdiction. In construing the "necessary in aid of its jurisdiction" prescription of the All Writs and Anti-Injunction Acts, the U.S. Supreme Court has expressly recognized that "some federal injunctive relief may be necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case." *Atl. Coast Line R.R. Co.*, 398 U.S. at 295.

Traditionally, this power to grant injunctions in aid of jurisdiction has been conceptualized as the power to protect the court's control over *in rem* proceedings. *See, e.g.*, *Diet Drugs*, 282 F.3d at 234. Thus, for example, where a federal court has jurisdiction over a *res* and a state court exercises jurisdiction over that same *res*, the federal court may enjoin the parties from proceeding in state court. *Kline v. Burke Constr. Co.*, 260 U.S. 226, 229 (1922).

This principle has been extended to multidistrict litigation, in which the MDL proceedings themselves are regarded as the necessary *res* to justify injunctions under the All Writs Act. As a number of courts have explained, MDL proceedings are large and complex, and, particularly in their later stages, they come to "embody an enormous amount of time and expenditure of resources." *Diet Drugs*, 282 F.3d at 236. As such, like a traditional *in rem* proceeding, the investment of effort in mature MDL proceedings takes on the character of property that may become "vulnerable to parallel state actions." *Id.*; *see also, e.g.*, *Corrugated Container*, 659 F.2d at 1334-35 (affirming injunction in MDL proceeding under the court's in-aid-of-jurisdiction power in part because "[t]his complicated antitrust action has required a great

deal of the district court's time and [has] necessitate[d that it] maintain a flexible approach in resolving the various claims of the many parties").

An MDL court's power to act in aid of its jurisdiction is at its apex when the litigation has matured to the point of settlement. As the Fifth Circuit has explained, actions in state court that pose a threat to a settlement strike at the core of an MDL court's "ability to dispose of the broader action pending before it." *Corrugated Container*, 659 F.2d at 1335 (upholding injunction against state-court suit after class had been certified and two settlements had been approved by the court). Indeed, the MDL court's authority to secure settlements is so important that its power to issue injunctions in aid of jurisdiction accrues even before settlement is reached. *Baldwin-United Corp.*, 770 F.2d at 335 (noting that the All Writs Act empowers a federal court to issue an injunction against actions in state court "[e]ven before a federal judgment is reached" in order to protect its settlement efforts). MDL courts have thus exercised jurisdiction under the All Writs Act to bar plaintiffs from taking actions in furtherance of parallel state class actions that could interfere with their administration of a settlement, *see, e.g.*, *In re Cmty. Bank of N. Va. & Guar. Bank Second Mortg. Litig.*, No. 03-425, 2008 U.S. Dist. LEXIS 27684, at *17-20 (W.D. Pa. Mar. 27, 2008), or that could expose defendants to serious risk by allowing plaintiffs to "duplicate[]" the relief granted in federal court, *see, e.g.*, *Newby*, 338 F.3d at 475.

In *Corrugated Container*, for example, the U.S. Court of Appeals for the Fifth Circuit affirmed an injunction against state-court proceedings on the ground that it was necessary in aid of the district court's jurisdiction where a class settlement had already been reached in multidistrict litigation in federal court. 659 F.2d at 1333-34. In that case, the Judicial Panel on Multidistrict Litigation had coordinated fifty private actions brought on behalf of all purchasers of corrugated containers and sheets against various manufacturers in the United States District

Court for the Southern District of Texas. Within the context of the ensuing MDL proceedings, an "enormous class action" was brought and the parties reached two settlements, which the MDL court approved. *Id.* at 1333. Thereafter, certain individuals filed a complaint in South Carolina state court similar to the complaint filed in the MDL, but seeking recovery under state-law causes of action. *Id.* at 1333-34. The district court enjoined the proceedings, and the Fifth Circuit affirmed the injunction. The Fifth Circuit explained that the "complicated" multidistrict proceedings "required a great deal of the district court's time and necessitate[d] its ability to maintain a flexible approach in resolving the various claims of the many parties." *Id.* at 1334-35. Thus, the court found that the actions of the South Carolina plaintiffs in pursuing "substantially similar" claims in state court constituted a threat to the Court's jurisdiction and would "interfere with the multidistrict court's ability to dispose of the broader action pending before it," even though the court had already approved two settlements and the entry of final judgment was imminent when the injunction issued. *Id.*

As this Court recently recognized, injunctions in aid of jurisdiction are appropriate even absent such a particularized threat to a settlement. In the *Chinese-Manufactured Drywall* litigation, the parties entered into a comprehensive class-action settlement agreement after years of litigation involving extensive discovery and depositions, along with the scheduling of a class certification hearing. *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, MDL 2047, 2011 U.S. Dist. LEXIS 62222, at *2 (E.D. La. June 9, 2011). After reviewing numerous briefs and hearing oral argument, this Court issued an order preliminarily approving the settlement agreement and staying related state court proceedings. *Id.* at *2-4. In so doing, the Court cited its power under the All Writs Act and emphasized the importance of protecting settlements in

multidistrict proceedings after substantial investments by the Court and the parties in the litigation over several years:

> [A] conceptional *res* has been created in this MDL litigation, as evidenced by the complexity of the proceedings and claims, the fact the litigation has been underway for almost two years, and the substantial amount of effort and expense put into the litigation by the parties and Court alike. The MDL litigation, as it more specifically pertains to the present Motion [to reconsider the injunction of the state court proceedings], is sufficiently progressed: the parties have engaged in extensive discovery and depositions, a motion for class certification seeking to create a class with claims against [one of the defendants] was filed and set for hearing . . . , and most importantly, the . . . Settlement Agreement is a class action settlement agreement of the [type of claim to be litigated in the state-court proceeding].

*Id.* at *18-19.[6]

The *Chinese-Manufacture Drywall* decision – in conjunction with *Corrugated Container* – compels the issuance of an injunction here. This MDL proceeding, which has been ongoing for more than seven years, is more than sufficiently advanced to constitute a conceptual *res*. The parties have engaged in extensive discovery; tried multiple cases; and, after much effort on the part of both the Court and the parties, resolved tens of thousands of cases in multiple settlements that released Merck from future Vioxx-related claims. In seeking damages already paid to the PI claimants and the TPPs, the Missouri plaintiffs thus attempt to duplicate relief already granted – or as one court put it, to "'unsettle' what had been thought to be settled." *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 314 F.3d 99, 105 (2d Cir. 2002). Plaintiffs' efforts directly "interfere" with this Court's "ability to dispose of the broader action pending before it," *see Corrugated Container*, 659 F.2d at 1335, particularly since allowing "comprehensive settlements

---

[6] Although *Corrugated Container* and *Chinese-Manufactured Drywall* both arose in the context of class settlements, it is clear that an MDL court's authority to enjoin state proceedings in aid of its jurisdiction is not limited to the class context. In *Newby*, for example, the presence of multidistrict proceedings was itself sufficient to support such an injunction under the All Writs Act against discovery orders in state court that threatened the orderly management of the proceedings. *See* 338 F.3d at 474-75 (referring to the court's interest in the "orderly handling of the massive federal litigation" of fifty-four coordinated cases).

to be undermined in this way would undeniably deter similar settlements in the future," *Prudential*, 314 F.3d at 105.[7] Accordingly, an injunction is necessary to preserve this Court's ability to protect its jurisdiction and resolve this complex litigation.[8]

## II. THE COURT SHOULD ENTER AN INJUNCTION TO PROTECT AND EFFECTUATE ITS JUDGMENT.

The Court should also enter an injunction to "protect [and] effectuate its judgments" – literally thousands of them, embodied in orders dismissing PI and TPP lawsuits pursuant to the settlements.

This Court's authority to issue an injunction to protect or effectuate judgments like these is well established. In *Corrugated Container*, discussed above, the Fifth Circuit separately upheld the injunction against a state-court suit on the ground that it protected or effectuated settlement-related judgments. As the Court of Appeals explained, a district court has authority to enjoin "a simultaneous *in personam* action . . . once judgment is entered" in the case before it. 659 F.2d at 1335. In *Corrugated Container*, final "judgments were entered shortly after" the settlements had been approved. *Id.* Accordingly, the Fifth Circuit held, the district court acted well within its discretion in barring the state-court parties from "relitigat[ing] issues covered by

---

[7] It is of no import that the Missouri action was filed prior to the creation of the MDL proceeding in this case. The "relative timing of the competing actions is not determinative" if the state proceedings "will have the practical, even if perhaps unintended, effect of interfering with [the federal] court's administration of the settlement." *Cmty. Bank of N. Va.*, 2008 U.S. Dist. LEXIS 27684, at *19-20 (enjoining state-court proceedings and stating that the "chronological order in which the cases were filed does not prevent us from entering an injunction to the extent it is otherwise appropriate and necessary").

[8] The injunctive relief that Merck requests is all the more appropriate because it is narrowly tailored to address the threat to the MDL settlement created by the Missouri state court plaintiffs' activities. *Cf. Newby*, 338 F.3d at 476 (recognizing that injunctive relief under the All Writs Act should be "narrowly tailored" to address the threat presented); *Diet Drugs*, 282 F.3d at 238 (same). Notably, the relief approved by the court in *Corrugated Container* and *Chinese-Manufactured Drywall* – where this Court stopped conflicting state proceedings – was substantially broader than the relief requested here. The Missouri plaintiffs are not being drawn into the settlement in the Vioxx litigation; nor are their cases going to be stayed or dismissed. To the contrary, the requested injunction would still permit the Missouri plaintiffs to continue litigating their cases and to recover the full extent of their actual damages – if any.

the federal judgment." *Id.* (citing *Woods Exploration & Producing Co. v. Aluminum Co. of Am.*, 438 F.2d 1286, 1311-16 (5th Cir. 1971)).

The same reasoning applies here. Although there is no class settlement, the claims of Missouri PI claimants and TPPs doing business in Missouri are similarly "covered by . . . federal judgment[s]." Thousands of stipulations of dismissal were filed in this Court to give effect to the PI and TPP settlements, and this Court subsequently entered orders dismissing the PI and TPP claims with prejudice. Such stipulated dismissals with prejudice are the equivalent of a final judgment. *Astron Indus. Assocs., Inc. v. Chrysler Motors Corp.*, 405 F.2d 958, 960 (5th Cir. 1968) ("It is clear that a stipulation of dismissal with prejudice, or, for that matter, a dismissal with prejudice at any stage of a judicial proceeding, normally constitutes a final judgment on the merits which bars a later suit on the same cause of action."); *Brooks-Ngwenya v. Indianapolis Public Schools*, 564 F.3d 804, 809 (7th Cir. 2009) ("When the parties settled that suit, they stipulated to dismissal with prejudice. Such a dismissal is a final judgment[.]"); *see also Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993) (indicating that any dismissal "with prejudice" is usually regarded as an adjudication on the merits for purposes of res judicata).

In short, as in *Corrugated Container*, an injunction is needed to prevent plaintiffs from "relitigat[ing] issues covered by the federal judgment[s]" embodied in the stipulated dismissals of claims by settling PI plaintiffs and TPPs. 659 F.2d at 1335. Indeed, the failure to issue an injunction in this instance would likely raise serious questions about the wisdom of negotiating broad settlements in the context of MDL proceedings. Defendants would have strong reasons to reject such settlements if claims resolved under the supervision of an MDL court were subject to

relitigation – and possible double payment.  For this reason too, the Court should enjoin the Missouri plaintiffs from seeking damages based on PI and TPP payments for Vioxx.

## CONCLUSION

For the foregoing reasons, the Court should enter an Order enjoining plaintiffs Mary Plubell and Ted Ivey from pursuing relief with respect to Vioxx expenditures made by PI claimants and TPPs that have already settled with Merck.  Alternatively, the Court should enter an Order enjoining the state-court proceedings to the extent the Missouri plaintiffs seek such relief.

Dated March 22, 2012

                                              Respectfully submitted,

                                              s/ *Dorothy H. Wimberly*_____
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, LA 70130

Douglas R. Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth St., N.W.
Washington, DC 20005
John H. Beisner
Jessica Davidson Miller
Geoffrey M. Wyatt
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
1440 New York Avenue, N.W.
Washington, DC 20005

ATTORNEYS FOR MERCK
SHARP & DOHME CORP.

1088407v1

**CERTIFICATE OF SERVICE**

       I hereby certify that the above and foregoing memorandum has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 22nd day of March , 2012.

                                            */s/ Dorothy H. Wimberly*
                                            Dorothy H. Wimberly, 18509
                                            STONE PIGMAN WALTHER WITTMANN L.L.C.
                                            546 Carondelet Street
                                            New Orleans, Louisiana  70130
                                            Phone:  504-581-3200
                                            Fax:     504-581-3361
                                            dwimberly@stonepigman.com

                                            Defendants' Liaison Counsel