# EXHIBIT 2

**PRIVATE TPP SETTLEMENT AGREEMENT AND RELEASE**

**Between**

**Merck & Co., Inc.**

**And**

**CERTAIN PRIVATE THIRD PARTY PAYORS IDENTIFIED HEREIN**

**Dated As Of September 14, 2009**

PRIVATE TPP SETTLEMENT AGREEMENT AND RELEASE

# SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release, together with its Exhibits, is made as of September 14, 2009 by and between Merck & Co., Inc., a New Jersey corporation (together with its successors and assigns, "Merck"), and certain private Third Party Provider/Payors as listed on the attached Exhibit A and identified below (together with their successors and assigns, "TPPs" or "Settling Plaintiffs") regarding the settlement of all Released Claims and Liabilities (as hereinafter defined) against Merck and the Released Parties (as hereinafter defined) (collectively referred to as the "Private TPP Settlement Agreement and Release" or "Agreement").

# RECITALS

WHEREAS, Merck voluntarily withdrew VIOXX from the market on September 30, 2004;

WHEREAS, Settling Plaintiffs are private Third Party Provider/Payors who have made claims, in litigation as well as pre-litigation, against Merck in connection with VIOXX and who are identified on Exhibit A;

WHEREAS, Merck, while not admitting any wrongdoing or liability to Settling Plaintiffs whatsoever, nonetheless wishes to resolve these lawsuits and claims to avoid the costs, expense, and uncertainty inherent in the litigation;

WHEREAS, Settling Plaintiffs also wish to avoid the costs, expense, and the uncertainty inherent in litigation and in making these claims,

NOW THEREFORE, Merck and Settling Plaintiffs agree as follows:

# I. DEFINITIONS

Terms used in this Private TPP Settlement Agreement and Release shall have the meanings defined below or as otherwise defined in this Agreement:

1.1    "Acknowledgement and Acceptance Form" is the form attached hereto as Exhibit B by which when executed by a Settling Plaintiff that Settling Plaintiff is agreeing to, and becoming bound by, all of the terms of this Private TPP Settlement Agreement and Release (hereinafter may be referred to as "Consent").

1.2    "Aggregate Settlement Payment" means the amount of SIXTY-FIVE MILLION DOLLARS ($65,000,000.00) that shall be paid by Merck in the aggregate to the Settling Plaintiffs

2

PRIVATE TPP SETTLEMENT AGREEMENT AND RELEASE

identified on Exhibit A pursuant to the terms of this Agreement.  This amount is exclusive of any payment by Merck of Common Benefit Fees and Expenses Payments" (as defined below), which are the subject of a separate "Common Benefit Settlement Agreement" (as defined below).

                1.2.1    The Aggregate Settlement Payment is the cumulative maximum total amount to be paid in settlement by Merck pursuant to this Agreement and neither Merck nor any Released Party shall ever be responsible or obligated to pay to any of the Settling Plaintiffs identified on Exhibit A or any others any further sums pursuant to this Agreement or to Settling Plaintiffs or any Releasing Parties due to the Released Claims and Liabilities.

     1.3    "Allocation Amount" means the amount of the Aggregate Settlement Payment allocated to each Settling Plaintiff based on the formula agreed to by the Settling Plaintiffs after full disclosure.

     1.4    "Bank" means Citibank N.A. or, if unavailable, other financial institution agreed upon by Settling Plaintiffs and Settling Defendants.

     1.5    "Business Day" means any day other than (i) a Saturday or a Sunday or (ii) a day on which commercial banks in the City of New York, New York are required or authorized to be closed.

     1.6    "Claims" has the meaning given in Paragraph 4.1.1.

     1.7    "Claims Administrator" shall be Rust Consulting, Inc., formerly known as Complete Claims Solutions, Inc.

     1.8    "Common Benefit Settlement Agreement" means the separate agreement addressing common benefit fees and expenses, to which Settling Plaintiffs are third party beneficiaries but not parties, and which only becomes effective if this Agreement becomes effective.

     1.9    "Effective Date" means the day following the occurrence of the last of each and every one of the following events:  (1) the execution and delivery to Merck of this Private TPP Settlement Agreement and Release from all Settling Plaintiffs, (2) the payment into Escrow of $65,000,000.00  pursuant to the terms of this Agreement by Merck, and (3) the execution and delivery, if necessary, of Stipulations of Dismissal by Merck and Settling Plaintiffs with pending actions.

     1.10    "Escrow" means the escrow account ("Escrow Account") established with the Escrow Agent by Merck and Settling Plaintiffs pursuant to the Escrow Agreement with Citibank N.A. or, such other financial institution agreed to by Merck and Settling Plaintiffs' Counsel, which shall be used to:  (i) accept and hold on behalf of the Settling Plaintiffs collectively, the Aggregate Settlement Payment made by Merck pursuant to the terms of this Agreement; and (ii) disburse funds to the Settling Plaintiffs pursuant to the terms of this Agreement.

PRIVATE TPP SETTLEMENT AGREEMENT AND RELEASE

1.11    "Escrow Agent" shall be Citibank N.A. or, if unavailable, such other financial institution(s) selected jointly by the Settling Plaintiffs' Counsel and Merck.

1.12    "Escrow Agreement" is the form of agreement attached as Exhibit D, which Merck and Settling Plaintiffs authorize the signatories identified in Exhibit D to execute and enter into on their respective behalfs.

1.13    "Honorable Eldon E. Fallon" means the Honorable Eldon E. Fallon of the United States District Court for the Eastern District of Louisiana.

1.14    "Liabilities" has the meaning given in Paragraph 4.1.1.

1.15    "Lien" means any lien, pledge, charge, security interest, assignment, encumbrance, subrogation right, third-party interest or other adverse claim of any nature whatsoever pursuant to any applicable statute or contract with respect to any payment made pursuant to this Agreement (and/or the right to receive such payment under this Agreement).

1.16    "MDL court" means the court of the Honorable Eldon E. Fallon of the  United States District Court for the Eastern District of Louisiana.

1.17    "MDL" means all of the cases before the MDL court in MDL 1657.

1.18    "Merck Released Parties" has the meaning given it in Paragraph 4.1.1.1.

1.19    "Non-Merck Released Parties" has the meaning given it in Paragraph 4.1.1.1.

1.20    "Released Claims and Liabilities" has the meaning given it in Paragraph 4.1.1.

1.21    "Released Parties"  has the meaning given it in Paragraph 4.1.1.1.

1.22    "Releasing Parties" has the meaning given it in Paragraph 4.1.1.2.

1.23    "Settling Plaintiffs" means (i) those entities identified on the attached Exhibit A and each of them, (ii) their respective, direct and indirect, parents, subsidiaries, divisions, partners, and affiliates in their capacities as such, (ii) their future operating entities they may create, (iv) the predecessors, successors, heirs, executors, trustees, administrators, and assigns of each of the foregoing,  in their capacities as such, and (iv) any entities or persons on whose behalf Settling Plaintiffs are authorized to act for purposes of this Agreement; and (v) their respective past and present stockholders, officers, directors, employees, managers, agents, attorneys or other legal representatives, in their capacities as such.

1.24    "Stipulation of Dismissal" means the stipulation to be provided by each of the Settling Plaintiffs who has litigation currently pending against Merck or any Released Party for any Released Claims and Liabilities, which stipulation shall dismiss with prejudice Merck and the Released Parties from any and all such litigation for any and all Released Claims and Liabilities

with each party to bear its own costs, and which shall be in a form substantially similar to the form attached as Exhibit C or other appropriate form for the applicable court in which it is to be filed.

## II.  REPRESENTATIONS, WARRANTIES,  COVENANTS AND ACKNOWLEDGMENTS

2.1     Each Settling Plaintiff represents, warrants, covenants, and acknowledges as follows:

2.1.1     The Allocation Amount allotted to each Settling Plaintiff  shall be based upon its actual Net Vioxx Payments (as hereinafter defined), as filed with and accepted by the Claims Administrator ("accepted Vioxx expenditures") divided by the aggregate accepted Vioxx expenditures of all Settling Plaintiffs, with the resulting fraction multiplied by the Aggregate Settlement Amount.  Each Settling Plaintiff agrees with the method by which the Allocation Amount will be determined under this Agreement.  Each Settling Plaintiff further acknowledges and agrees that Merck, the Released Parties, and their counsel, have not participated and will not participate in any way in connection with the determination or disbursement of any Settling Plaintiff's Allocation Amount.

2.1.2     Each Settling Plaintiff acknowledges and agrees that the Agreement and the settlement amount paid or to be paid to each Settling Plaintiff is part of the settlement of a larger number of cases, that the terms of the aggregate Private TPP Settlement Agreement, including the amount of the Aggregate Settlement Payment, the process for determining the Allocation Amount of each Settling Plaintiff, and all other required disclosures, have been disclosed to the Settling Plaintiffs.

2.1.3     Each respective Settling Plaintiff has the legal right and authority to enter into this Agreement, deliver all consideration, including but not limited to, the Acknowledgement and Acceptance Forms and Stipulations, if any, required of it, and receive its respective Allocation Amount, and that its acceptance, agreement, and performance of this Agreement will not contravene or constitute a default under any provisions of applicable law or regulation or any agreement, judgment, injunction, order, decree, or contractual restriction binding on such Settling Plaintiff or require any further approval, authorization, consent, order, notice to, or filing or registration with, any corporate or governmental authority.  Further, each respective Settling Plaintiff represents and warrants that all required corporate or other approvals have been obtained, permitting such Settling Plaintiff representative to execute and deliver this Agreement or to execute and deliver an Acknowledgement and Acceptance in the Form of the attached Exhibit B in lieu of executing the Agreement, which will make this Agreement binding upon such Settling Plaintiff.

2.1.4     This Agreement will not result in any lien, security interest, or other charge or encumbrance in favor of a third party upon or with respect to such Settling Plaintiff's claim or right to receive funds under this Agreement, except to the extent that any Settling Plaintiff is entering into this Agreement not only on its own behalf but also on

PRIVATE TPP SETTLEMENT AGREEMENT AND RELEASE

behalf of health benefit plans the Settling Plaintiff administers and to which the Settling Plaintiff may be obligated with respect to its Allocation Amount. Each Settling Plaintiff will indemnify and hold the Released Parties harmless with respect to any such claim or right asserted by any health benefit plans administered by the Settling Plaintiff or other third parties, to the extent the Settling Plaintiff is claiming for such health benefit plan's Vioxx purchases and the claim or right asserted concerns Vioxx purchases administered by such Settling Plaintiff (it being recognized that some health benefit plans are covered by more than one third party administrator), with respect to such Settling Plaintiff's receipt of its respective Allocation Amount.

      2.1.5    Each respective Settling Plaintiff further represents and warrants that this Agreement and any other paper required to be executed pursuant to this Agreement have been or will be duly executed and delivered by an authorized representative of each Settling Plaintiff and are, or upon execution will be, the valid and legally binding obligations of such Settling Plaintiff, enforceable against the respective Settling Plaintiff in accordance with their respective terms.

## III.  OBLIGATIONS OF SETTLING PLAINTIFFS

Section 3.1    <u>Obligations of Settling Plaintiffs</u>

      3.1.1    Within ten (10) Business Days of execution of this Agreement by the Settling Plaintiffs' Counsel and Merck (or within such other time period as agreed to in writing by Merck), each respective Settling Plaintiff identified on Exhibit A shall cause to be delivered to Merck at the location set forth in the Notice provisions herein, from each Settling Plaintiff the following  materials:

      3.1.1.1    this Private TPP Settlement Agreement and Release validly executed by undersigned counsel on their behalf;

      3.1.1.2    the Acknowledgement and Acceptance Form in the form of Exhibit B hereto (or "Consent"), duly executed by an authorized representative of each Settling Plaintiff, agreeing to and accepting the terms of this Settlement Agreement and Release as binding upon such Settling Plaintiff;

      3.1.1.3    for those Settling Plaintiffs with currently pending litigation against Merck or any Released Parties for any of the Released Claims, a validly executed Stipulation of Dismissal with Prejudice substantially in the form of the attached Exhibit C.

      3.1.2    This Agreement shall not become binding on any Settling Plaintiff or the Releasing Parties attributable to such Settling Plaintiff, unless and until that Settling Plaintiff has signed and delivered the Acknowledgement and Acceptance Form and Merck has signed this Agreement and the Escrow Agreement and deposited the Aggregate Settlement Amount with the Escrow Agent.

      3.1.3    Contemporaneously with the execution of this Agreement, Settling Plaintiffs' Counsel, on behalf of Settling Plaintiffs shall execute the Escrow Agreement.

PRIVATE TPP SETTLEMENT AGREEMENT AND RELEASE

        3.1.4     By September 30, 2009, unless another later date is specified by Settling Plaintiffs' Counsel (as such Term is defined in the Escrow Agreement), each respective Settling Plaintiff identified on Exhibit A shall cause to be delivered to the Claims Administrator claims expenditure data in a form and in a manner satisfactory to the Claims Administrator, all as set forth in Article VII below.

        3.1.5     Each Settling Plaintiff shall execute and/or provide any additional documentation that may be required under applicable state or federal law in order to give effect to this Agreement and the Release, including Form W-9s. Settling Plaintiffs shall use their reasonable best efforts to effectuate the terms of this Agreement including providing such cooperation of their undersigned counsel, if necessary, to support any provisions thereof; provided however that this cooperation covenant is made without any concession or acknowledgment of any party that this Agreement, which is a private agreement among private parties, requires any review or approval by any court.

## IV.  RELEASE AND INDEMNITY BY SETTLING PLAINTIFFS

Section 4.1    <u>Release</u>

        4.1.1     In consideration for this Agreement and the monetary payment made by Merck pursuant to the Agreement, and the share of that payment that will be allocated to each of the undersigned Settling Plaintiffs pursuant to the criteria agreed among Settling Plaintiffs set forth in this Agreement, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, each undersigned Settling Plaintiff hereby gives and makes the following releases, waivers, acknowledgements and agreements for the benefit of the Merck and all of the Released Parties.

Each Settling Plaintiff hereby knowingly and voluntarily RELEASES, REMISES, ACQUITS and FOREVER DISCHARGES the Released Parties from the "Released Claims and Liabilities," which shall mean (i) any and all rights, remedies, actions, claims, demands, causes of action, suits at law or in equity, verdicts, suits of judgments and/or liens of any kind whatsoever, which Settling Plaintiff and any other person or entity which is defined in Section 4.1.1.2 below as a "Releasing Party" by virtue and to the extent of such person's or entity's relationship with such Settling Plaintiff with respect to VIOXX Claims or Liabilities, may have ever had, may now have or at any time hereafter may have against any Released Party including but not limited to any direct claims, third-party claims, and/or assigned claims, including without limitation, any and all claims for negligence, gross negligence, strict product liability, strict liability, breach of express or implied warranty, breach of contract, fraud, unfair business practices, deceptive trade practices (including but not limited to any and all claims under §17200, et seq., of the California Business and Professions Code or similar statutes of the same or other jurisdictions), conspiracy, concert of action, violations of any statute or regulation, whether known or unknown, past, present or future, accrued or which may accrue in the future, asserted or unasserted, latent or patent, that is, has been or could have been or in the future might be asserted by Settling Plaintiff against Released Parties, or any of them for actual damages, exemplary and punitive damages, statutory damages, penalties

PRIVATE TPP SETTLEMENT AGREEMENT AND RELEASE

of any kind, economic or business losses or other costs, prejudgment or post-judgment interest, attorneys' fees, injunctive or declaratory relief, and/or any other losses or detriment of any kind, past, present or future ("Claims"), and (ii) any and all debts, liabilities, obligations, covenants, promises, contracts, agreements and/or obligations, of any kind whatsoever ("Liabilities"), which any Released Party may have ever had, may now have or at any time hereafter may have to Settling Plaintiff or any other Releasing Party, in the case of clause (i) and clause (ii), to any extent, or in any way, arising out of, relating to, resulting from and/or connected with VIOXX and/or with any claim or loss Settling Plaintiff(and/ or any other Releasing Party) have ever claimed, or may at any time hereafter claim, arising out of, relating to, resulting from and/or connected with VIOXX in whole or in part, including but not limited to, any conduct, events, or transactions relating to the research, development, design, formulation, testing, study, manufacture, regulatory submission, distribution, supply, sale, promotion, marketing, advertising, prescription, labeling, use, and purchase of VIOXX and/or reimbursement for VIOXX; provided however that (i) the obligations of Settling Plaintiffs under this Agreement are several and not joint, and are limited with respect to each Settling Plaintiff to the claims it is releasing on its and its covered plans' behalf in consideration of its respective Allocation Amount; (ii) this Settlement Agreement and Release shall have no effect on any Releasing Party's claims in the Private Lien Settlement Program relating to VIOXX, nor shall it be construed to release or impair any Releasing Party's contractual or equitable claims to collect or be paid reimbursement from recoveries of covered or insured individuals or their spouses, estates or beneficiaries who recover money from Merck or other Released Parties with respect to the covered or insured party's claims arising out of his or her ingestion of VIOXX; and provided further, that this Settlement Agreement and Release shall have no effect on any individual's claims against Merck or other Released Parties to recover for personal injury or illness allegedly arising from the ingestion of VIOXX, nor the subrogation claims of any person or entity to recover payments for medical coverage, which were not paid for or administered by the Releasor, and which allegedly resulted from the individual's ingestion of VIOXX.

                4.1.1.1    The term "Released Parties" means  (i) Merck, and (ii) in their capacities as such, Merck's past, present and/or future parents, subsidiaries, divisions, affiliates and joint venturers; the respective past, present and/or future predecessors, successors, assigns and transferees of the parties referred to in this paragraph; and the respective past, present and/or future insurers, shareholders (or the equivalent thereto), directors (or the equivalent thereto), officers (or the equivalent thereto), managers, principals, employees, consultants, advisors, attorneys, agents, servants, representatives, heirs, trustees, executors, estate administrators and personal representatives (or the equivalent thereto) of the parties referred to in this paragraph (clauses (i) and (ii) above also collectively referred to as "Merck Released Parties"), and (iii) all persons or entities, past, present and/or future, in any way and/or at any time connected with any claim or loss Settling Plaintiff (or any other Releasing Party) have ever claimed, or hereafter claim, in connection with VIOXX (but not claims described in Section 13.16 below) in whole or in part, including, but not limited to, manufacturers; suppliers of materials; distributors; or other persons or entities involved in the development, design, manufacture, formulation, testing, distribution, marketing, labeling, regulatory submissions, advertising and/or sale of VIOXX and, in their respective capacities as such, the respective past, present, and/or future parents, subsidiaries, divisions, affiliates, joint venturers, predecessors, successors, assigns, and transferees of the parties referred to in this paragraph; and the respective past, present and/or future shareholders (or

PRIVATE TPP SETTLEMENT AGREEMENT AND RELEASE

the equivalent thereto), directors (or the equivalent thereto), officers (or the equivalent thereto), managers, principals, employees, consultants, advisors, attorneys, agents, servants, representatives, heirs, trustees, executors, estate administrators and personal representatives (or the equivalent thereto) of the parties referred to in this paragraph (clause (iii) also referred to as "Non-Merck Released Parties").

   4.1.1.2 The term "Releasing Parties" means (i) each Settling Plaintiff, and (ii) any and all persons or entities, whether now in existence or which may exist in the future who or which had or has asserted, or might in the future assert, the right to sue Merck or any other Released Party, independently, derivatively or otherwise, by reason of their relationship with such Settling Plaintiff with respect to VIOXX Claims or Liabilities, and any person or entity which is participating in this Agreement through such Settling Plaintiff, and solely to the extent it is participating in this Agreement through such Settling Plaintiff. Each Settling Plaintiff's obligations, covenants, warranties, representations, releases and indemnities agreed to herein, when and to the extent made on behalf of other "Releasing Parties" is limited by the definition above. By illustration, if a Releasing Party's health benefits plan is insured or administered by three unrelated health benefits providers, only two of whom are Settling Plaintiffs, then the provisions of this Agreement applicable to "Releasing Parties" shall apply to any such Releasing Party only to the extent that the Claims and Liabilities arise out of VIOXX purchases or medical treatments paid for or administered by the two Settling Plaintiffs, and shall not extend to claims which might arise out of VIOXX purchases or medical treatment payments made by the third, non-participating health benefits provider. Further, except as set forth in Paragraph 4.1.8, the indemnity provisions set forth herein are limited to the extent of a Settling Plaintiff's Allocation Amount recovered by such Settling Plaintiff.

   4.1.2 Each Settling Plaintiff acknowledges that it (and/or any other Releasing Party) may in the future learn of additional and/or different facts as they relate to VIOXX, the Released Parties' activities as they relate to VIOXX, and/or any claim or loss Settling Plaintiff(and/or any other Releasing Party) have ever claimed, or may at any time in the future claim, VIOXX caused in whole or in part. Each Settling Plaintiff understands and acknowledges the significance and consequences of releasing all of the Released Claims and Liabilities and Settling Plaintiff hereby (on Settling Plaintiff's own behalf and on behalf of each other Releasing Party) assumes full risk and responsibility for any and all such additional and/or different facts and any and all Released Claims and Liabilities that Settling Plaintiff(and/or any other Releasing Party) may hereinafter incur or discover. To the extent that any law, statute, ordinance, rule, regulation, case or other legal provision or authority (each, a "Law") may at any time purport to preserve Settling Plaintiff's and/or any other Releasing Party's right to hereinafter assert any such unknown and/or unanticipated Claims and/or Liabilities, Settling Plaintiff hereby (on its own behalf and on behalf of each other Releasing Party) specifically and expressly waive (to the fullest extent permitted by applicable Law) each Releasing Party's rights under such Law. Each Settling Plaintiff further acknowledges having had an opportunity to obtain advice of counsel of Settling Plaintiff's choosing regarding this waiver, and having discussed it with such counsel to Settling Plaintiff's satisfaction.

PRIVATE TPP SETTLEMENT AGREEMENT AND RELEASE

4.1.3     Each Settling Plaintiff, on its own behalf and on behalf of the other Releasing Parties, acknowledges and agrees that the releases set forth in this Agreement are irrevocable and unconditional, inure to the benefit of each Released Party, and are intended to be as broad as can possibly be created.

**WITHOUT LIMITATION OF THE FOREGOING, THIS RELEASE IS SPECIFICALLY INTENDED TO OPERATE AND BE APPLICABLE EVEN IF IT IS ALLEGED, CHARGED OR PROVED THAT SOME OR ALL OF THE RELEASED CLAIMS AND LIABILITIES ARE CAUSED IN WHOLE OR IN PART BY THE NEGLIGENCE, NEGLIGENCE PER SE, GROSS NEGLIGENCE, BREACH OF WARRANTY, VIOLATION OF LAW, DEFECTIVE PRODUCT, MALICE, AND/OR CONDUCT OF ANY TYPE BY MERCK, ANY OF THE OTHER RELEASED PARTIES, ANY RELEASING PARTY AND/OR ANY OTHER PERSON. THIS RELEASE IS SPECIFICALLY INTENDED TO AND DOES INCLUDE, BUT IS NOT LIMITED TO, A RELEASE OF, AND COVENANT NOT TO SUE FOR, ANY WRONGFUL DEATH CLAIM THAT MAY BE BROUGHT AT ANY TIME BY OR ON BEHALF OF ANY OF THE RELEASING PARTIES IN CONNECTION WITH ANY OF THE FACTS, EVENTS AND/OR INCIDENTS THAT GAVE RISE TO ANY OF THE RELEASED CLAIMS AND LIABILITIES.**

4.1.4     Each Settling Plaintiff understands that the Released Parties are not responsible for any attorneys' fees or costs that Settling Plaintiff has incurred or may at any time incur, including, but not limited to, in connection with this Agreement, this Release and any other documents. Each Settling Plaintiff understands that, with respect to any payment made to or for the benefit of, in whole or in part, Settling Plaintiff under the Agreement, (a "Settlement Payment"), any division of such Settlement Payment between Settling Plaintiff and other Settling Plaintiffs and their respective counsel, whether by agreement or by operation of the provisions of the Agreement, and such division, or any dispute in relation to such division, shall in no way affect the validity of this Release.

4.1.5     Each Settling Plaintiff agrees that it will never (i) take any legal or other action to initiate, pursue or maintain, or otherwise attempt to execute upon, collect or otherwise enforce, any of the Released Claims and Liabilities of or against any Released Party, or (ii) institute or participate in any new legal action against any Released Party to any extent, or in any way, arising out of relating to, resulting from and/or connected with or for any of the Released Claims and Liabilities.

4.1.6     Each Settling Plaintiff understands and acknowledges the discharge and satisfaction of any and all liens, pledges, charges, security interests, assignments, encumbrances, subrogation rights, third-party interests or other adverse claim of any nature whatsoever ("Lien") pursuant to any applicable statute or contract with respect to any payment under or pursuant to the Agreement (and/or the right to receive such Settlement Payment), is the sole responsibility of Releasor.

4.1.7     In addition to and without limitation of the foregoing, each Settling Plaintiff hereby agrees to indemnify and hold harmless against any Claims, Liabilities, damages, losses, costs and expenses incurred by the following categories of persons under the following circumstances (and for which Merck shall tender such Claims and Liabilities for defense and indemnity to such Settling Plaintiff):

PRIVATE TPP SETTLEMENT AGREEMENT AND RELEASE

4.1.7.1   Merck Released Parties due the assertion of any Lien or Claim against all or any part of such Settling Plaintiff's Allocated Amount (including any amount paid in satisfaction of any such Claim) with respect to any Claim released by such Settling Plaintiff;

4.1.7.2   Released Parties from and against any and all Claims that may be asserted, made or maintained at any time against any Released Party by, on behalf of or for the benefit of, any Releasing Party, or otherwise by any person or entity claiming by, through or under, any Releasing Party with respect to any of the Released Claims and Liabilities released by such Settling Plaintiff;

4.1.7.3   Merck Released Parties from and against any and all Claims made or asserted by any Non-Merck Released Party arising out of any Claim released by such Settling Plaintiff under this Agreement which is subsequently made, asserted or prosecuted at any time by a Settling Plaintiff and/or any other Releasing Party against any Non - Merck Released Party with respect to any of the Released Claims and Liabilities released by such Settling Plaintiff.

4.1.8      Each Settling Plaintiff further agrees to reduce any judgment for any of the Released Claims and Liabilities that they might recover against any entity other than Merck and the Merck Released Parties by release and discharge in an amount, fraction, portion, or percentage necessary under applicable state or federal law to bar, eliminate, relieve, or satisfy claims against Merck and the Merck Released Parties for contribution and/or indemnity to the fullest extent permitted by applicable state or federal law arising from any Released Claims and Liabilities, including any amount reallocated by applicable state or federal statute or common law due to uncollectibility and/or insolvency of other persons or entities determined to be at fault.  Notwithstanding the foregoing, this provision shall not affect the Settling Plaintiffs' claims for reimbursement as described in Section 13.16 of this Agreement.

4.1.9      If any Settling Plaintiff has any civil action pending in any jurisdiction that has enacted, promulgated or otherwise adopted any Law containing provisions that establish specific time periods within which settlement funds, if any, must be paid to Settling Plaintiff in connection with the settlement of such civil action and/or impose sanctions, penalties or other similar obligations against the paying party if the settlement funds are not paid within such time periods and/or invalidate or otherwise affect the terms of the settlement of such civil action (including, but not limited to, Pennsylvania Rule of Civil Procedure 229.1), Settling Plaintiff hereby (i) specifically and expressly waives (to the fullest extent permitted by applicable Law) all rights under any such provisions and (ii) agrees that payment of any Settlement Payment shall be made solely in accordance with the terms and conditions of the Agreement.

PRIVATE TPP SETTLEMENT AGREEMENT AND RELEASE

## V.  REPRESENTATIONS AND WARRANTIES OF MERCK

Section 5.1      Representations and Warranties of Merck

5.1.1      Merck & Co., Inc. represents and warrants that it is a corporation duly organized, validly existing and in good standing under the laws of the State of New Jersey.

5.1.2      Merck represents and warrants that all required corporate approvals have been obtained, permitting Merck's undersigned representative to execute this Agreement and deliver it to Settling Plaintiffs, which will be binding upon Merck.

5.1.3      Merck represents and warrants that its execution, delivery, and performance of this Agreement will not contravene or constitute a default under any provisions of applicable law or regulation or any agreement, judgment, injunction, order, decree, or contractual restriction binding on it.

## VI.  OBLIGATIONS OF MERCK

Section 6.1      Obligations of Merck

6.1.1      Merck will execute and deliver this Agreement contemporaneously with Merck's receipt of the executed Agreement by the undersigned Settling Plaintiffs' Counsel, which Agreements shall be held in escrow by counsel for Settling Plaintiffs and counsel for Merck, respectively, pending receipt by Merck of the documentation required pursuant to Section 3.1 from all Settling Plaintiffs listed on Exhibit A.

6.1.2      Within fourteen (14) days of the date set forth in paragraph 3.1.1 (unless otherwise agreed to in writing by Merck and the Settling Plaintiffs' Counsel identified in the Notice provisions herein), all executed Settlement Agreements, Releases and Stipulations received by Merck pursuant to Section 3.1 above, shall be inspected and reviewed by Merck for any ministerial defects.

6.1.2.1      Any Settling Plaintiff whose documentation submitted under Section 3.1 appears to have ministerial deficiencies shall be notified by Merck of those deficiencies by giving notice pursuant to the Notice provisions herein within ten (10) Business Days following receipt by Merck of that settlement documentation.  All documentation submitted under Section 3.1 for which Merck does not submit a timely notice of deficiency under this paragraph, shall be conclusively deemed free of ministerial defects for purposes of this Agreement. Any such Settling Plaintiff shall cure such ministerial deficiencies within ten (10) Business Days following receipt of such notification under this Section 6.1.2.1.  The deadlines under this Section may be extended by written agreement by counsel for Merck and Settling Plaintiffs.

PRIVATE TPP SETTLEMENT AGREEMENT AND RELEASE

6.1.3    In the event that less than all Settling Plaintiffs submit the required documentation pursuant to Section 3.1, Merck, in its sole discretion, may elect to proceed with the settlement by so advising Settling Plaintiffs' Counsel, or Merck may elect not to proceed with the settlement in which case the Agreement and Escrow Agreement shall be deemed null and void for any and all purposes upon Merck giving notice of its decision to Settling Plaintiffs' Counsel identified in the Notice provisions of this Agreement within ten (10) Business Days following the occurrence of the last deadline described in Paragraph 6.1.2.1.

6.1.4    If, for any reason, Merck does not elect to proceed with the settlement pursuant to Section 6.1.3, the settlement documentation provided to Merck pursuant to Section 3.1 shall be null and void and shall either be returned to the respective Settling Plaintiffs or destroyed.

6.1.5    In the event that Merck does not provide the notice set forth in Section 6.1.3 that it is terminating the Agreement, Merck shall execute the Escrow Agreement and cause it to be delivered to Settling Plaintiffs Counsel and the Escrow Agent within five (5) Business Days of the occurrence of the last deadline described in Paragraph 6.1.3, or by September 15, 2009, whichever date is later.

6.1.6    Within five (5) Business Days following the execution and delivery of the Escrow Agreement by Merck,  Merck shall cause the Aggregate Settlement Payment to be deposited into the Escrow Account.

6.1.7    At any time following the payment into the Escrow Account pursuant to Section 6.1.6, Merck may file the Stipulations of Dismissal provided to it pursuant to Section 3.1 or otherwise cause Settling Plaintiffs to seek the entry of Orders of Dismissal, dismissing Merck and any Released Parties with prejudice, where motions are necessary.  In no event shall Merck file any Stipulations of Dismissal until payment is made into the Escrow Account pursuant to Section 6.1.6.  However, Settling Plaintiffs agree to extend any and all litigation and discovery deadlines pending completion of this settlement and the entry of dismissals.

6.1.8    The payment made by Merck pursuant to this Article is in consideration of: (i) the representations and warranties of Settling Plaintiffs, (ii) the delivery to Merck by Settling Plaintiffs of valid and binding settlement documentation , and (iii) compliance with the other provisions of this Agreement.

## VII.   CLAIMS ADMINISTRATION

7.1    Allocation of Settlement Proceeds Among Settling Plaintiffs

7.1.1    Settling Plaintiffs agree among themselves that the Allocation Amount for each Settling Plaintiff herein shall be determined as follows:

7.1.1.1    Each Settling Plaintiff shall file a proof of claim on a standardized form provided by the Claims Administrator, which will show its aggregate Vioxx

PRIVATE TPP SETTLEMENT AGREEMENT AND RELEASE

paid pharmacy claims for dates of fill from May 21, 1999 through September 30, 2004, plus such standard supporting evidence as the Claims Administrator shall require, which shall include transaction level data for all Vioxx purchases claimed.  By October 14, 2009, the Claims Administrator may provide a deficiency notice to any Settling Plaintiff which shall, in turn, have twenty (20) Business Days to cure such deficiency (the "Deficiency Cure Period").  For the sake of clarity, "Vioxx paid pharmacy claims" refers to pharmacy claims paid by Settling Plaintiffs for the ingredient cost and dispensing fee(s) for VIOXX.  For the further sake of clarity, each Settling Plaintiff shall submit a proof of claim which subtracts from its aggregate Vioxx paid pharmacy any amounts refunded to it by Merck for unused Vioxx dosages following Merck's voluntary withdrawal of Vioxx in September 2004, and the resulting difference shall be called the Settling Plaintiff's "Net Vioxx Payments."

     7.1.1.2  The Allocation Amount for each Settling Plaintiff shall be the product of multiplying (a) the Aggregate Settlement Amount by (b) a percentage determined by dividing (i) that Settling Plaintiff's Net Vioxx Payments accepted by the Claims Administrator ("accepted Vioxx Expenditures") by (ii)  the aggregate accepted Net Vioxx Payments of all Settling Plaintiffs.

     7.1.1.3  The Claims Administrator shall report the allocation results to all Settling Plaintiffs' Counsel no later than ten (10) business days following the expiration of the Deficiency Cure Period.  Each Settling Plaintiff may object to the Allocation Amounts determination in writing and such objections shall be timely if received by the Claims Administrator within ten (10) business days following the Claims Administrator's reporting of the Allocation Amounts.  Objections not timely received shall be null and void and deemed waived.

     7.1.1.4  If no timely objections are received by the Claims Administrator, the Allocation Amount will become final at the expiration of the Deficiency Cure Period.

     7.1.1.5  If timely objections regarding the claims administration or allocation are submitted, the Claims Administrator, Settling Plaintiffs and Claims Administrator shall use their best efforts to resolve such questions or objections.  If the Parties cannot resolve such questions or objections within ten (10) Business Days (the "Objections Period") following timely submission of the question or objection, the objecting Settling Plaintiff's sole recourse shall be to submit the dispute to binding arbitration within ten (10) Business Days of the expiration of the Objections Period for resolution by a single arbitrator of the American Arbitration Association in New York City, with each interested party permitted to submit, simultaneously, a single brief, in addition to exhibits, of not more than 10 pages, and simultaneous replies of not more than 5 pages, without oral argument.  The arbitrator's award shall be final, binding, nonappealable, and without right of any aggrieved party to seek court vacatur of the award, and without any need for confirmation of the arbitrator's award by any court to become final binding and enforceable.  The Claims Administrator shall thereupon adopt the arbitrator's award(s) and make its final determination of allocation amounts, and the Escrow Agent shall be entitled to disburse Allocation Amounts wholly in reliance upon the determinations of the Claims Administrator, and the Claims Administrator and Escrow Agent shall have no liability to any party aggrieved thereby.  The objecting Settling Plaintiff shall bear all costs of the AAA with respect to such arbitration.

PRIVATE TPP SETTLEMENT AGREEMENT AND RELEASE

          7.1.1.6    Neither Merck nor any Released Parties has any role or responsibility whatsoever in connection with the Claims Administrator, the administration of claims under this Agreement, any arbitration or other dispute resolution of a claim under this Article, or any costs or expenses incurred in connection the operation of this Article.

          7.1.1.7    The costs of the Claims Administrator and Escrow Agent shall be the responsibility of the Settling Plaintiffs and shall be paid from the Aggregate Settlement Payment.

## VIII.  ADMINISTRATION

Section 8.1     <u>Authority and Appointment</u>

          8.1.1    This is a private agreement.  To the extent the parties have disagreement with respect to this Agreement (except for disputes whose resolution is provided for otherwise in Section 7.1.1 above), the parties agree to submit such disputes to The Honorable Eldon E. Fallon.

          8.1.2    In the event that for any reason the Honorable Eldon E. Fallon is unable or unwilling to preside over such disputes, Merck, on the one hand, and the Settling Plaintiffs, on the other hand, through their respective counsel, will appoint an Administrator to preside over such disputes concerning the Agreement.  In the event an Administrator is appointed all provisions pertaining to the authority, capacity and protections of the Honorable Eldon E. Fallon in connection with the administration of this Agreement as set forth herein shall apply with equal force to the Administrator.  The costs of the Administrator shall be the exclusive responsibility of Settling Plaintiffs and shall be paid from the Aggregate Settlement Payment.

          8.1.3    The Honorable Eldon E. Fallon, or any agent or employee of The Honorable Eldon E. Fallon, shall not be liable for his acts or omissions, in connection with obligations assumed affecting the administration of this Agreement except, with respect to each such person, for such person's own willful misconduct.  Nothing in this Agreement confers any privity of contract with, or other right to institute any action against, the Honorable Eldon E. Fallon.

## IX.  NO ADMISSIONS

Section 9.1.     <u>No Admissions</u>

          9.1.1    Neither this Agreement nor any exhibit, document or instrument delivered hereunder nor any statement, transaction or proceeding in connection with the negotiation, execution or implementation of this Agreement, is intended to be or shall be construed as or deemed to be evidence of an admission or concession by any party of any fault, liability, wrongdoing, fact, legal position, or damages or of the truth of any allegations or defenses asserted by any party or the strength or infirmity of any claim of defense of any

PRIVATE TPP SETTLEMENT AGREEMENT AND RELEASE

party.

        9.1.2     No party to this Agreement or its counsel shall seek to introduce and/or offer the terms of this Agreement, any statement, transaction or proceeding in connection with the negotiation, execution or implementation of this Agreement, or any statements in the documents delivered in connection with this Agreement, or otherwise rely on the terms of this Agreement, in any judicial proceeding, except insofar as it is necessary to enforce the terms of this Agreement and/or its release and indemnity provisions (or in connection with the determination of any income tax Liability of a party or any insurance coverage) or any instrument executed and delivered pursuant to this Agreement.

        9.1.3     Nothing in this Article IX applies to (i) any action after the Effective Date to submit into evidence in any legal proceeding (past, present or future) the Agreement and any Acknowledgement and Acceptance, or any Stipulation of Dismissal With Prejudice or Motion to Dismiss that were provided to Merck in accordance with the terms of this Agreement in order to enforce such release or dismissal, or (ii) any other action after the Effective Date by Merck in furtherance of any of those release and indemnity provisions and dismissals.

## X.  CONFIDENTIALITY PROVISIONS

Section 10.1.   <u>Confidentiality of Negotiations; Admissibility of Agreement</u>

        **10.1.1**   The parties to this Agreement shall keep confidential the content of the negotiations, points of discussion, documents, communications, and supporting data or presentations exchanged as part of the negotiations, as well as all other negotiations and settlement discussions taking place, as contemplated by Federal Rule of Evidence 408 and its state law analogues and protections of common law provided to settlement negotiations, except as otherwise required by law; provided however that Settling Plaintiffs are permitted to disclose the terms of the Agreement to other potential Releasing Parties on whose behalf the Settling Plaintiffs would be providing the Release pursuant to § 4.1.

        **10.1.2**   The parties expressly agree that this Agreement is a protected communication under Federal Rule of Evidence 408 and any equivalent code or common law rule of evidence of any state; however, the same shall be admissible in (i) a proceeding the sole purpose of which is to enforce the terms of this Agreement, (ii) any proceeding to establish an insurance or reinsurance claim by any party to this Agreement or a Released Party, (iii) any proceeding to establish an appropriate set-off or credit to a judgment entered or to be entered in favor of a Settling Plaintiff against an entity other than any Released Parties, or (iv) other proceeding where such admission is necessary to effectuate the terms of this Agreement.

PRIVATE TPP SETTLEMENT AGREEMENT AND RELEASE

## XI.  WAIVER

Section 11.1.   <u>Waiver of Certain Statutory Provisions</u>

        11.1.1   With respect to the release of the Released Claims and Liabilities, Settling Plaintiffs expressly waive any rights or benefits available under section 1542 of the California Civil Code, which provides as follows, or any other similar statute or law in any jurisdiction:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MIGHT HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

The parties understand and acknowledge the significance and consequence of the specific waiver of California Civil Code section 1542 described above and of any similar statute or law of another jurisdiction.

## XII.  LIENS

12.1   <u>Liens</u>

        12.1.1   In any event and any term of this Agreement to the contrary notwithstanding, satisfaction and discharge of any and all Liens, whether past, present or future, whether known or unknown or asserted or unasserted, with respect to the Aggregate Settlement Payment (and/or the right to receive any portion of the Aggregate Settlement Payment) are the sole responsibility of the relevant Settling Plaintiffs and their respective counsel.

        12.1.2   The provisions of this Article XII are solely for the several benefit of (a) Merck, and (b) the Released Parties.

## XIII.  MISCELLANEOUS

Section 13.1   <u>Notice by Parties</u>

        13.1.1   Any notice, request, instruction or other document to be given by Merck to Settling Plaintiffs, or to be given by Settling Plaintiffs to Merck, under this Agreement shall be in writing and delivered by mail, by Federal Express, by facsimile or, to the extent specified hereunder, by electronic mail, as follows, or as otherwise instructed by a notice delivered to the other Party pursuant to this subsection:

PRIVATE TPP SETTLEMENT AGREEMENT AND RELEASE

13.1.1.1    If to Merck:

Bruce N. Kuhlik
Senior Vice President and General Counsel
Merck & Co., Inc.
One Merck Drive
P.O. Box 100 (WS3A-15)
Whitehouse Station, NJ 08889-0100
Telecopier: (908) 735-1244
Email: Bruce_Kuhlik@Merck.com

-and-

John H. Beisner, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
1440 New York Avenue, N.W.
Washington, D.C.  20005
Telecopier: (202) 661-8301
Email: John.Beisner@skadden.com

13.1.1.2    If to Settling Plaintiffs' Counsel or to Settling Plaintiffs collectively for a non client-specific reason, to the undersigned counsel who have executed this Agreement.

13.1.1.3    If to any one or more Settling Plaintiff(s), to the counsel identified at the end of this Agreement underneath the signature of such Settling Plaintiff(s) as the counsel for such Settling Plaintiff(s) entitled to such notice.

13.1.2    Any such notice, request, instruction or other document provided pursuant to this Article shall be deemed to have been given as of the date so transmitted by facsimile or electronic mail, on the next Business Day when sent by Federal Express or five Business Days after the date so mailed, provided that if any such date on which any such notice or other communication shall be deemed to have been given is not a Business Day, then such notice or other communication shall be deemed to have been given as of the next following Business Day.

13.2    Receipt of Documentation

13.2.1    Any form or other documentation required to be sent under this Agreement shall be deemed timely (i) if delivered by mail (and not required to be delivered in some other fashion), if postmarked (or, in the absence of a postmark or if such postmark is illegible, if received) on or before the date by which it is required to be submitted under this Agreement or (ii) if delivered (and expressly permitted or required to be delivered) by electronic mail, when it is capable of being accessed from such electronic mail address.

PRIVATE TPP SETTLEMENT AGREEMENT AND RELEASE

13.3    Governing Law

      13.3.1    This Agreement shall be governed by and construed in accordance with the law of New York governing agreements negotiated, executed and to be performed within the State of New York without regard to any choice-of-law rules that would require the application of the law of another jurisdiction.

13.4    Waiver of Inconsistent Provisions of Law; Severability

      13.4.1    To the fullest extent permitted by applicable law, Merck and Settling Plaintiffs each waives its rights under any provision of law (including the common law), which would otherwise render any provision of this Agreement invalid, illegal or unenforceable in any respect.

      13.4.2    Any provision of this Agreement which is prohibited or unenforceable to any extent or in any particular context shall be ineffective, but such ineffectiveness shall be limited as follows: (i) if such provision is prohibited or unenforceable only in or as it relates to a particular jurisdiction, such provision shall be ineffective only in or as it relates to (as the case may be) such jurisdiction and only to the extent of such prohibition or unenforceability, and such prohibition or unenforceability in or as it relates to (as the case may be) such jurisdiction shall not otherwise invalidate or render unenforceable such provision (in such or any other jurisdiction); (ii) if (without limitation of, and after giving effect to, clause (i)) such provision is prohibited or unenforceable only in a particular context (including only as to a particular Settling Plaintiff or under any particular circumstance or circumstances), such provision shall be ineffective, but only in such particular context; and (iii) without limitation of clauses (i) or (ii), such ineffectiveness shall not invalidate any other provision of this Agreement.  In any event, upon any such determination that any term or other provision is invalid, illegal or unenforceable, the Merck and the Settling Plaintiffs shall negotiate in good faith to modify this Agreement so as to effect the original intent of the Parties as closely as possible to the fullest extent permitted by applicable law.

13.5    Facsimile Signatures

      13.5.1    This Agreement and any amendments thereto, to the extent signed and delivered by means of a facsimile machine or electronic scan (including in the form of an Adobe Acrobat PDF file format), shall be treated in all manner and respects as an original agreement and shall be considered to have the same binding legal effect as if it were the original signed version thereof delivered in person.

13.6    Construction

      13.6.1    With regard to each and every term and condition of this Agreement, the parties thereto understand and agree that the same have or has been mutually negotiated, prepared and drafted, and if at any time the parties thereto desire or are required to interpret or construe any such term or condition or any agreement or instrument

PRIVATE TPP SETTLEMENT AGREEMENT AND RELEASE

subject hereto, no consideration shall be given to the issue of which party thereto actually prepared, drafted or requested any term or condition of thereof.

13.7    Entire Agreement

13.7.1    This Agreement, including the agreements which constitute Exhibits to this Agreement, contain the entire agreement between the Parties with respect to the subject matter hereof and supersede and cancels all previous agreements, negotiations, and commitments in writings between the Parties hereto with respect to the subject matter hereof.

13.8    Headings; References

13.8.1    The headings of the Articles and Sections herein are inserted for convenience of reference only and are not intended to be a part of or to affect the meaning or interpretation of this Agreement.  Any reference to an Exhibit shall be deemed to refer to the applicable Exhibit attached hereto. The words "include" and "including" and words of similar import when used in this Agreement or any Exhibit hereto are not limiting and shall be construed to be followed by the words "without limitation," whether or not they are in fact followed by such words. The definitions contained in this Agreement or any Exhibit hereto are applicable to the singular as well as the plural forms of such terms.  Words of any gender (masculine, feminine, neuter) mean and include correlative words of the other genders.  As used herein or in any Exhibit hereto, the term "dollars" and the symbol "S", shall mean United States dollars.  References herein to instruments or documents being submitted "by" any Party include (whether or not so specified) submission of the same on behalf of such Party by its Counsel whether or not so specified, provided that if any particular instrument or document is required herein to be executed by a particular Party, it must (unless otherwise expressly specified herein) be so executed by such Party. References herein to any particular Section (such as, for example, Section 3.1) shall be deemed to refer to all sub-Sections of such Section (such, as for example, Section 3.1.1, 3.1.2, etc.), all sub-sub-Sections of such sub-Sections, and so on; the corresponding principle applies to all references herein to any particular sub-Section, sub-sub-Section and so on.

13.9    No Third Party Beneficiaries; Assignment

13.9.1    No provision of this Agreement or any Exhibit thereto is intended to create any third-party beneficiary to this Agreement.  For the avoidance of doubt, nothing in this Section limits or modifies the third-party beneficiary provisions of any Release or Stipulation of Dismissal With Prejudice.  This Agreement and all of the provisions hereof shall be binding upon and inure to the benefit of the Parties hereto and their respective successors and permitted assigns; provided, however, that neither this Agreement nor any of the rights, interests, or obligations hereunder may be assigned by Settling Plaintiffs without the prior written consent of Merck.  Any assignment in violation of this Section shall be null and void *ab initio*.

PRIVATE TPP SETTLEMENT AGREEMENT AND RELEASE

13.10    Amendments; No Implied Waiver

        13.10.1  This Agreement may be amended by (and only by) an instrument signed by Merck, on the one hand, and the Settling Plaintiffs, on the other hand.  Except where a specific period for action or inaction is provided herein, no failure on the part of a Party to exercise, and no delay on the part of either Party in exercising, any right, power or privilege hereunder shall operate as a waiver thereof; nor shall any waiver on the part of either Party of any such right, power or privilege, or any single or partial exercise of any such right, power or privilege, preclude any other or further exercise thereof or the exercise of any other right, power or privilege; nor shall any waiver on the part of a Party, on any particular occasion or in any particular instance, of any particular right, power or privilege operate as a waiver of such right, power or privilege on any other occasion or in any other instance.

13.11    Counterparts

        13.11.1  This Agreement may be executed in any number of counterparts, each of which shall be an original and all of which shall together constitute one and the same instrument.  It shall not be necessary for any counterpart to bear the signature of all Parties hereto.

        13.11.2  Counsel for any party shall be authorized to assemble a composite counterpart which shall consist of one copy of each page, except the signature pages, together with multiple counterpart signature pages executed on behalf of every party to this Settlement Agreement.  The composite counterpart may then be used by any party for all purposes as the complete signed and executed Settlement Agreement among the parties.

13.12    Tax Matters

        13.12.1  The Parties agree that, in the event interest is to be earned or is earned on any funds placed into escrow under this Agreement, to characterize the Escrow Account established under the Escrow Agreement for federal, state and local income tax purposes in such manner as is reasonably determined by Merck, including without limitation as a "qualified settlement fund" within the meaning of Treasury Regulation Section 1.468B-1 or as a grantor trust pursuant to an election under Treasury Regulation Section 1.468B-1(k) or otherwise.  The Escrow Agent and Merck shall timely provide the other with such material and relevant information as and to the extent reasonably requested by the other party in connection with any tax filing or the payment of any taxes or any private letter ruling regarding the tax status of the Funds.

13.13    Further Assurances

        13.13.1  From time to time, Merck and each Settling Plaintiff shall take such reasonable actions consistent with the terms of this Agreement as may reasonably be requested by the other Party, and otherwise reasonably cooperate with the other Party in a manner consistent with the terms of this Agreement as reasonably requested by such other

PRIVATE TPP SETTLEMENT AGREEMENT AND RELEASE

Party as may be reasonably necessary in order further to effectuate the intent and purposes of this Agreement and to carry out the terms hereof.

13.14   Representation and Voluntary Execution

13.14.1   Each party to this Private TPP Settlement Agreement and Release represents and acknowledges that it has been represented by counsel with respect to this Agreement and any and all matters covered by or related to such Agreement. Each party has been fully advised with respect to all rights which are affected by this Agreement. Each party signing represents and warrants that it read, knows, and understands the contents of this Agreement, has executed this Agreement voluntarily, and has not been influenced by any person or persons or attorney acting on behalf of any other party.

13.15   Survival of Representations and Warranties

13.15.1   All representations and warranties of the parties to this Private TPP Settlement Agreement have been and will be relied on by the other parties to this Agreement notwithstanding any investigation made by them.

13.16   No Effect on Settling Plaintiffs' Reimbursement

13.16.1   This private TPP Settlement Agreement shall have no effect on any Settling Plaintiffs' or Releasing Parties' claims in the Private Lien Settlement Program relating to Vioxx, nor shall it be construed to release or impair any Settling Plaintiff's or Releasing Parties' contractual or equitable claims to collect or be paid reimbursement from recoveries of covered or insured individuals or employers who or which recover money from Merck or another Released Party with respect to that party's use of Vioxx.

IN WITNESS WHEREOF, the parties hereto have duly executed this Settlement Agreement as of September 14, 2009.

**COUNSEL OF RECORD FOR VARIOUS SETTLING PLAINTIFFS**
**For: Aetna Inc, Amerigroup Corporation, Arkansas Blue Cross and Blue Shield, A Mutual Insurance Company, Asuris NW (Regence), AvMed, Inc., Blue Cross Blue Shield Association, BlueCross BlueShield of Arizona, BCBSD, Inc. d/b/a Blue Cross Blue Shield of Delaware, BlueCross BlueShield of Florida, Inc. Blue Cross and Blue Shield of Kansas City, Blue Cross and Blue Shield of Massachusetts, Inc., Blue , Blue Cross & Blue Shield of Mississippi, Blue Cross and Blue Shield of North Carolina, Blue Cross & Blue Shield of Rhode Island, BlueCross BlueShield of Tennessee, Inc., Blue Cross and Blue Shield of Vermont,  Blue Shield of California, CareFirst, Inc., CIGNA HealthCare, Inc. (including Great-West), Coventry Health Care Inc., EmblemHealth Services Company, LLC, on behalf of its licensed affiliates, HIP Health Plan of New York and Group Health Inc. and their licensed subsidiaries,  HMO Partners d/b/a/ Health Advantage (BCBS Arkansas), Golden Rule Insurance Company, Government Employees Health Association, Inc., Guardian Life Insurance Company of America (The), Harvard Pilgrim Health Care, Inc., Hawaii Medical Service Association,  Health Net, Inc., HealthNow NY, HealthPartners Inc.,**

PRIVATE TPP SETTLEMENT AGREEMENT AND RELEASE

Highmark West Virginia d/b/a/ Mountain States Blue Cross and Blue Shield, Horizon Blue Cross and Blue Shield, Humana Inc., Johns Hopkins, KPS Health Plans, Mailhandlers Health Benefit Plan, Medica Health Plans Inc., Medical Mutual of Ohio, Mutual of Omaha Insurance Company, Noridian Mutual Insurance Company, Oxford Health Plans LLC, Premera Blue Cross, Priority Health, Regence Blue Cross-Blue Shield, Regence Blue Cross Blue Shield of Oregon, Regence Blue Cross Blue Shield of Utah, Regence Life & Health, Trustmark Insurance Company, Trustmark Life Insurance Company, Tufts Associated Health Maintenance Organization, Inc., United HealthCare Services, Inc., USAble Life (BCBS Arkansas), Verizon Communications Inc., Vista Health Plan, Wellcare Health Plans, Inc., Wellmark Inc. d/b/a/ Wellmark Blue Cross Blue Shield of Iowa, Wellmark Health Plan of Iowa, Wellmark South Dakota, WellPoint, Inc.

By:

Mark D. Fischer
RAWLINGS & ASSOCIATES, PLLC
325 West Main Street
Suite 1700
Louisville, KY 40202
Telephone: (502) 814-2139

By:

Bill Carmody
SUSMAN GODFREY LLP
5th Floor
654 Madison Avenue
New York, NY 10065
Telephone: (212) 336-8330

For International Union of Operating Engineers Local No. 68 Welfare Fund and other Settling Plaintiffs not identified above:

Christopher A. Seeger
SEEGER WEISS LLP
One William Street
New York, NY 10004
Telephone: (212) 584-0700

By:

Richard W. Cohen
LOWEY DANNENBERG COHEN & HART, P.C.
White Plains Plaza - 5th Floor
One North Broadway
White Plains, NY 10601
Telephone: (914) 997-0500

For Health Plan of San Mateo and other Settling Plaintiffs not identified above:

Thomas M. Sobol
HAGENS BERMAN SOBOL SHAPIRO LLP
55 Cambridge Parkway
Suite 301
Cambridge, MA 02142
Telephone: (617) 482-3700

23

PRIVATE TPP SETTLEMENT AGREEMENT AND RELEASE

**Rust Consulting, Inc.,**
solely as to Article VII

By_____

Thomas R. Glenn
Executive Vice President
5210 Hood Road
Palm Beach Gardens, Florida 33418

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK

MERCK'S SIGNATURE PAGE, EXHIBIT LIST AND EXHIBITS FOLLOW THIS PAGE]

24

PRIVATE TPP SETTLEMENT AGREEMENT AND RELEASE

**MERCK & CO., INC.**

By: _____   9/14/09

Bruce N. Kuhlik
Senior Vice President and General Counsel
Merck & Co., Inc.
One Merck Drive
P.O. Box 100 (WS3A-15)
Whitehouse Station, NJ 08889-0100
Telecopier: (908) 735-1244
Email: Bruce_Kuhlik@Merck.com

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK

EXHIBIT LIST AND EXHIBITS FOLLOW THIS PAGE.]