IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

|  |  |
|---|---|
| In re: VIOXX ) | MDL NO. 1657 |
| ) | |
| PRODUCTS LIABILITY LITIGATION ) | SECTION: L |
| ) | |
| ) | JUDGE FALLON |
| THIS DOCUMENT RELATES TO: ) | |
| *All Settled Third-Party-Payor and* ) | |
| *Personal-Injury Claims Involving* ) | |
| *Missouri Vioxx Users* ) | |
| ) | |

### DEFENDANT'S SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF MOTION TO ENJOIN MISSOURI PLAINTIFFS MARY PLUBELL AND TED IVEY FROM PURSUING RELIEF FOR VIOXX EXPENDITURES ALREADY SUBJECT TO SETTLEMENTS

Last week, Merck filed a motion asking this Court to enjoin plaintiffs in a Vioxx-related class action pending in Missouri state court from seeking to recover amounts paid for Vioxx by personal-injury ("PI") and third-party-payor ("TPP") claimants who have settled with Merck and released all of their Vioxx-related claims. (ECF No. 63,744.)  Under the All Writs Act, 28 U.S.C. § 1651, this Court has the power to enter such an injunction – either in aid of its jurisdiction or to protect and effectuate its judgments – because the Missouri plaintiffs' lawsuit threatens to "'unsettle' what had been thought to be settled," *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 314 F.3d 99, 105 (3d Cir. 2002), in the PI and TPP settlements in the Vioxx litigation.

Merck's motion was filed before the state court had ruled on its motions for summary judgment and exclusion of the Missouri plaintiffs' damages expert, Dr. Jack Fincham.  Had the state court granted either of these motions, it might have obviated the need for this Court to act.

1089247v1

Earlier this week, however, the Missouri court denied both motions in two rulings that amplify the need for this Court's intervention. Those rulings are attached collectively as Exhibit 1.

In its order denying Merck's motion for summary judgment, the state court dismissed Merck's concerns that plaintiffs are seeking to recover monies spent by TPPs on Vioxx, on the asserted ground that "Merck may not seek to reduce damages" based on TPP payments for Vioxx "at trial, or here on summary judgment." (*See* Order Overruling Summ. J. at 5.) The court only briefly acknowledged the TPP settlement, stating in a footnote that "there is a substantive difference between a value calculation and seeking recovery on behalf of the government or private third-party payors (which none of the Plaintiffs are [] doing here)." (*Id.* at 11 n.3.)[1] But the court's summary-judgment ruling does not account for the practical implications of that finding – i.e., that allowing plaintiffs to seek recovery of all money paid for Vioxx in Missouri by any source would potentially enable them to recover amounts paid for Vioxx by insurers (and released as part of the TPP settlement), resulting in the double recovery of such payments.

The court similarly rejected Merck's request that plaintiffs be barred from seeking recovery related to monies spent on Vioxx by settling PI claimants. In authorizing the pursuit of such payments at trial, the court agreed with plaintiffs that "the fact that a person might have recovered for a personal injury claim does not mean that he is precluded from recovering for *economic injury* under the" Missouri Merchandising Practices Act ("MMPA"). (*Id.* at 10.) The court did acknowledge that personal-injury claimants (whether they settled or not) are not in the class and that Merck could not be required to pay damages to them. (*See id.* at 12.) Rather than

---

[1]  The state court addressed Merck's arguments with respect to Medicaid in the same manner (Order Overruling Summ. J. at 11 & n.3), even though Merck and the State of Missouri have agreed to settle the State's claims for Medicaid expenditures on Vioxx.

excluding plaintiffs' damages theory or granting partial summary judgment, however, the court concluded that any over-inclusiveness in the damages total could be resolved *after* trial through a claims process, in which any excess money "may be reverted to Merck." (*Id.*)

The state trial court's decisions cry out for this Court's intervention because they pose a serious risk to the stability of the federal Vioxx litigation and to the PI and TPP settlements, as well as all future mass-tort litigation.

*First*, the holdings threaten an explosion of new litigation by reopening all of the resolved TPP cases. Under the terms of the TPP settlement agreement, the settling TPPs not only released Merck from claims "in any way, arising out of, relating to, resulting from and/or connected with VIOXX," but also agreed to "indemnify and hold [Merck] harmless against any Claims, Liabilities, damages, losses, costs and expenses incurred," including "any and all Claims that may be asserted, made, or maintained at any time against [Merck] by, on behalf of or for the benefit of any" TPP. (Release §§ 4.1.7 & 4.1.7.2 (attached as Ex. 2).) If the Missouri plaintiffs are allowed to proceed and attempt to recover monies paid for Vioxx on behalf of class members by TPPs that are bound by the settlement, Merck may have no choice but to invoke its indemnification and hold-harmless rights under the agreement. (*See id.* § 4.1.7 ("Merck shall tender such Claims and Liabilities for defense and indemnity to such [TPP]").) The TPPs would then have to intervene in the *Plubell* trial and, ironically, would wind up having to litigate as *defendants* in an effort to prevent the *Plubell* interlopers from recovering on the very claims they have settled with Merck. Alternatively, the TPPs might attempt to challenge their obligation to defend Merck, which would require action by this Court. (*See id.* § 8.1.1 ("[T]he parties agree to submit . . . disputes to The Honorable Eldon E. Fallon").) Needless to say, if Merck and the TPPs are forced to proceed in this fashion, the stability of the TPP settlement itself would be

imperiled, and this Court's ability to "dispose of the broader action pending before it" will have been significantly compromised. *In re Corrugated Container Antitrust Litig.*, 659 F.2d 1332, 1335 (5th Cir. 1981).

*Second*, the Missouri court's holdings also threaten the very system of federal multidistrict litigation and portend a future in which it is difficult, if not impossible, to engage in mass settlements like those achieved with PI and TPP claimants in this litigation. The PI and TPP settlements were intended to resolve (with finality) Merck's liability to participating claimants for damages or attorneys' fees related to their payments for Vioxx. If Merck had known that it would potentially have to pay once more for TPP monies spent on Vioxx in Missouri, it never would have agreed to settle with TPPs that had beneficiaries in Missouri.

Similarly, although the Missouri court's summary-judgment ruling suggests that recoveries of monies paid for Vioxx by PI claimants could be sorted out in the claims process (assuming a verdict for plaintiffs), that ruling is no less harmful to the PI settlement in this case or the prospects of similar settlements in future cases. Merck has already effectively paid one round of attorneys' fees in connection with PI claims as part of the $4.85 billion set aside to resolve those claims. By allowing the Missouri plaintiffs to proceed to trial and potentially recover monies paid for Vioxx by PI claimants, the Missouri court has exposed Merck to potential liability for a second round of attorneys' fees based on those underlying claims – even if some of the damages are ultimately returned to Merck. After all, if plaintiffs prevail, their counsel are likely to seek a fee assessment based on the overall judgment – rather than the amount ultimately actually delivered to real parties in interest through the claims process.

The implications of the trial court's rulings will reverberate far beyond this litigation. Mass-tort proceedings are no longer confined to the adjudication of personal-injury claims.

Today, such litigation spawns claims by insurers, unions and other third-party payors; consumer-fraud class actions; and claims by governmental entities, among others. The nationwide reach of MDL courts has given defendants the confidence that when they settle mass-tort litigation, they have settled for good. If claims can be later re-litigated in state courts, that confidence will evaporate, making resolution of similar claims in the future much more difficult to reach, to the detriment of all parties, as well as the courts.

In short, the trial court's rulings – if left to stand – will strongly diminish defendants' incentives to settle future mass-tort litigation. As the U.S. Court of Appeals for the Third Circuit has explained, a court is well within its power to enter an injunction under the All Writs Act where allowing "comprehensive settlements to be undermined in this way would undeniably deter similar settlements in the future." *Prudential*, 314 F.3d at 105. That is the case here, underscoring the need for this Court to act.

## CONCLUSION

For the foregoing reasons, as well as those identified in Merck's previous brief, the Court should enter an Order enjoining plaintiffs Mary Plubell and Ted Ivey from pursuing relief with respect to Vioxx expenditures made by PI claimants and TPPs that have already settled with Merck. Alternatively, the Court should enter an Order enjoining the state-court proceedings to the extent the Missouri plaintiffs seek such relief.

Dated: March 29, 2012

Respectfully submitted,

*/s/ Dorothy H. Wimberly*
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, LA 70130

1089247v1

Douglas R. Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth St., N.W.
Washington, DC 20005

John H. Beisner
Jessica Davidson Miller
Geoffrey M. Wyatt
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
1440 New York Avenue, N.W.
Washington, DC 20005

ATTORNEYS FOR MERCK SHARP &
DOHME CORP.

1089247v1

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing *Supplemental Memorandum of Law in Support of Defendant's Motion To Enjoin Missouri Plaintiffs Mary Plubell and Ted Ivey from Pursuing Relief for Vioxx Expenditures Already Subject to Settlements* has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8C, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 29th day of March, 2012.

> /s/ Dorothy H. Wimberly
> Dorothy H. Wimberly, 18509
> STONE PIGMAN WALTHER
> WITTMANN L.L.C.
> 546 Carondelet Street
> New Orleans, Louisiana  70130
> Phone:  504-581-3200
> Fax:     504-581-3361
> dwimberly@stonepigman.com
>
> Defendants' Liaison Counsel

1089247v1