IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: VIOXX PRODUCTS LIABILITY LITIGATION | * * * * * | MDL No. 1657 SECTION L JUDGE ELDON E. FALLON |
| This document relates to: *All Settled Third-Party-Payor and Personal Injury Claims Involving Missouri Vioxx Users* | * * * | MAGISTRATE JUDGE KNOWLES |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO ENJOIN MISSOURI PLAINTIFFS MARY PLUBELL AND TED IVEY FROM PURSUING RELIEF FOR VIOXX EXPENDITURES
ALREADY SUBJECT TO SETTLEMENTS**

The relief sought by Merck in its "Motion to Enjoin Plaintiffs Mary Plubell and Ted Ivey From Pursuing Relief for Vioxx Expenditures Already Subject to Settlements" (Doc. 63744), is impermissible under the All Writs Act, 28 U.S.C. § 1651, and the Anti-Injunction Act, 28 U.S.C. § 2283. Simply stated, Merck has no authority to support its extraordinary request. Merck is asking this Court to improperly hear an appeal of substantive state-law issues that have been decided by the Missouri state courts, for the purpose of derailing the first bellwether trial of Vioxx consumer class cases. This Court should reject Merck's request, and the long-certified Missouri consumer class action, *Plubell v. Merck & Co., Inc.*, should proceed to trial in Missouri state court in May 2012, uninterrupted by Merck's meritless procedural antics.

**I.     Introduction**

In a last-ditch effort to avoid trial in a Missouri consumer class action case that has been litigated in Missouri state court for more than seven years, Merck has concocted a fictitious

theory that the Missouri case is suddenly interfering with completely unrelated MDL settlements. But Merck fails to identify *anything* in *Plubell* that actually interferes, or even threatens to interfere, with this Court's jurisdiction or judgments. Merck is, in effect, asking this Court to overrule the Missouri state trial court and state appellate courts on substantive issues of state law—in particular the state courts' rulings in *Plubell* that the plaintiffs' damages theory and evidence are proper and submissible under Missouri law.

The Missouri consumer class case was certified as to all issues (including the damages test Merck claims is a surprise), and that certification was affirmed on appeal in 2009. After years of intensive discovery, *Plubell* is ready for trial now. It will be the bellwether trial for consumer class cases, one of the last remaining genres of Vioxx litigation. Merck has delayed resolution of consumer claims for far too long. The Court should reject Merck's last-minute ploy to escape a Missouri trial under Missouri law because Merck is seeking to undermine not only the Missouri courts' proper control of *Plubell*, but also this Court's management and resolution of the Vioxx MDL.

Merck ignores entirely several dispositive and indisputable facts. First, neither the named plaintiffs nor any class member in the Missouri case are parties to any settlement involving Vioxx, including but not limited to settlements involving personal injuries ("PI") or third party payors of any sort ("TPP"). Second, neither the named plaintiffs nor any class member in the Missouri case have released any claims of any kind relating to Vioxx in this MDL, or in any other proceeding anywhere in the country. And third, as a matter of fact and as explicitly held by the Missouri courts, neither the named plaintiffs nor any class member in the Missouri case are seeking damages for personal injury or for payments made by TPPs: the definition of the certified *Plubell* class expressly excludes them.

Missouri plaintiffs recognize the massive amount of time and effort expended by the Court and all parties in this MDL, and likewise recognize the Court's familiarity with the law at issue here and its measured willingness to invoke the All Writs Act, 28 U.S.C. § 1651, in appropriate circumstances. *See In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, MDL No. 2047, 2011 WL 2313866 (E.D. La. June 9, 2011). But "[a]ny doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy." *Atl. Coast Line R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 297 (1970). Here, there is *nothing but doubt*. A federal injunction directed to the Missouri named plaintiffs, Missouri class counsel, or Missouri state courts is unsupportable and unprecedented under the facts presented here.

**II.     Background, Status, and Law of the Missouri Case**

**A.     Commencement, certification, and appeal**

*Plubell v. Merck & Co., Inc.* (hereafter, "*Plubell*" or the "Missouri case") was filed in the Circuit Court of Jackson County, Missouri in 2004. In the initial petition, plaintiffs alleged that they purchased Vioxx, a product that was falsely represented in violation of the Missouri Merchandising Practices Act ("MMPA") and as a result Plaintiffs suffered economic damages in that the product they and other class members purchased was worth less than the product they thought they had purchased had Merck's representations been true. These allegations have never changed. The Missouri court denied Merck's motions to dismiss and for summary judgment in 2006. In 2008, the trial court certified a class of:

> All Missouri residents who purchased Vioxx for personal or family use.
>
> Excluded from the Class are: Defendant, including any parent, subsidiary, affiliate or controlled person of Defendant; Defendant's officers, directors, agents or employees; the judicial officers assigned to this litigation; and members of their staffs and immediate families. Also excluded from the Class are those claiming they have suffered a personal injury as a result of taking Vioxx.

3

*See* June 12, 2008 Order (attached hereto as Exhibit A). The Missouri court appointed Stueve Siegel Hanson LLP of Kansas City, Missouri, and Gray, Ritter & Graham, P.C. of St. Louis, Missouri as class counsel (hereafter, "Missouri Class Counsel"). *Id.* The Missouri Court of Appeals affirmed class certification, in an opinion detailing the elements of proof of liability and damages (under a benefit-of-the-bargain as opposed to out-of-pocket standard) for the class's MMPA claims. *See Plubell v. Merck & Co., Inc.*, 289 S.W.3d 707 (Mo. Ct. App. 2009) (attached hereto as Exhibit B). In September 2009, the Supreme Court of Missouri denied Merck's application for transfer.

### B.  Discovery and trial preparation

After certification, the Missouri plaintiffs served multiple sets of written discovery, litigated discovery disputes before both the Missouri judge and a special master, and took more than a dozen days of Merck corporate representative deposition testimony from eight witnesses, including testimony on the damage issues raised here by Merck. The parties prepared and produced for deposition a total of 16 expert witnesses. The Missouri court is now considering several final discovery disputes and has begun to make rulings on a thick stack of motions *in limine*. Witness lists, exhibit lists, deposition designations, trial briefs, and proposed jury instructions and jury questionnaires are due in less than two weeks. *See* Case Management Scheduling Order dated May 16, 2011 (attached hereto as Exhibit C). Potential jurors will be summoned for selection beginning May 9, 2012; trial itself is set to begin in less than seven weeks, on May 21, 2012. *See id.* In short, the Missouri consumer class is on the eve of trial.

### C.  Missouri rulings on Merck's dispositive motions

Two recent rulings by the Missouri trial court are important to this Court's consideration of Merck's baseless request for an injunction. On March 26, 2012, the trial court overruled

4

Merck's motion to exclude the plaintiffs' expert Dr. Jack Fincham's opinions as to damages, concluding that "any of the alleged weaknesses in the factual underpinnings of Dr. Jack Fincham's opinions or his knowledge are matters of weight and credibility to be determined by the jury in this case – not matters of admissibility to be determined by this Court." *See* March 26, 2012 Order (attached hereto as Exhibit D).

The Missouri court also overruled in its entirety Merck's motion for summary judgment, which was based on many of the same arguments Merck makes now to this Court in its desperate ploy to stop the consumer class trial by requesting a federal injunction. *See* March 26, 2012 Order Overruling Summary Judgment (attached hereto as Exhibit E); *see also* March 22, 2012 Letter from Merck's counsel, John H. Beisner, to Missouri Class Counsel (attached hereto as Exhibit F) (stating that while Merck was seeking a ruling on these issues in the Missouri court, "Merck felt compelled to file a motion in federal court as well, in order to protect the settlements that Merck and the MDL plaintiffs have worked so hard to achieve.").

In his recent order overruling summary judgment, the Honorable Marco A. Roldan rejected Merck's contention—repackaged here under the guise of protecting federal jurisdiction—that third-party payments must be excluded from the plaintiffs' damages analysis.[1] Even if collateral sources were erroneously allowed into evidence, the Missouri state court held, Merck's arguments that plaintiffs' damages are limited to out-of-pocket expenditures are wrong as a matter of Missouri law.[2]

---

[1] "Merck's arguments are foreclosed at the outset by the collateral source doctrine. Private insurance, Medicaid, and worker's compensation payments all are collateral sources of payment independent from Merck. Evidence regarding such sources is inadmissible under Missouri law." Summary Judgment Order, § II. "Merck may not seek to reduce damages with evidence of these collateral sources." *Id.*

[2] "Even if considered, however, Merck's argument nonetheless fails as a matter of Missouri law. First, Plaintiffs have not limited their 'theory of liability' to out-of-pocket expenditures. Second, out-of-pocket expenditures are not the limit under a benefit-of-the-bargain standard under Missouri law." *Id.*; s*ee also* the Missouri Court of Appeals' opinion in *Plubell*, 289 S.W.3d at 715. The Missouri court flatly

In rejecting the argument Merck now makes to this Court, Judge Roldan found that "Merck's argument that summary judgment is appropriate because Plaintiffs' damages allegedly include damages for personal injury plaintiffs is also wrong as a matter of Missouri law." Summary Judgment Order, § IV.[3] The Missouri court specifically rejected Merck's contention that Plaintiffs' damages calculation is somehow improper because some Missouri claimants—*who are by definition not class members*—might have settled and released personal injury claims against Merck. *Id.*[4] Merck ignores the obvious—that those Missourians who may have settled their personal injury claims in the MDL are *not* members of the Missouri consumer class.

The Missouri court then emphasized that, in the event of a class judgment, only class members could make claims: "To the extent Merck is concerned about *who will receive* an award or the total amount of such award, this will be a matter for the claims procedure under Missouri law. If judgment is entered in Plaintiffs' favor in this case, there will be a claims administration process to handle distribution. Persons described in the class definition are those who will be

---

rejected Merck's contention (restated here on page 4 of Merck's Memorandum in Support (hereafter, "Memo.") that the Missouri class is limited to seeking out-of-pocket damages. *See id.*, § III. "While damages 'cannot be less than the money . . . [plaintiff] parted with . . . [t]his is not a ceiling but a floor.'" *Id.* (quoting *Crawford v. Smith*, 470 S.W.2d 529, 532 (Mo. 1971)). "Here, Plaintiffs' expert, Dr. Fincham, did not base his calculation on an out-of-pocket model because under Missouri law, benefit-of-the-bargain damages are based on *value*, not out-of-pocket expenditures." *Id.*

[3] "Merck contends that Dr. Fincham's 'as represented' value includes all Vioxx purchases without subtraction of Vioxx purchases allegedly made by personal injury claimants, rendering the calculation inflated and thus, defective. Merck's arguments fail to recognize that this is a class action, and that Dr. Fincham's damages calculation is just that – a damages calculation, which by nature is an aggregate and not a person-by-person determination." Summary Judgment Order, § IV (citing *Gerken v. Sherman*, 351 S.W.3d 1 (Mo. Ct. App. 2011)).

[4] "Merck's 'evidence' regarding these alleged claimants, however, is strictly limited to the number of Missouri residents who, it says, entered into a global personal injury settlement in 2007 and executed releases. Even if this is true, Merck offers nothing whatsoever to demonstrate who these people might be, how much was paid to them in settlement, how many Vioxx prescriptions might be at stake in their alleged claims in this case, or how much money those prescriptions specifically represent in this case." Summary Judgment Order, § IV. "The mere fact of settlement, or number of personal injury claimants purportedly settling with Merck, has no meaning without also knowing the amount of the individual settlements (as well as the number of Vioxx prescriptions represented). Without that information, Merck has no basis for saying what should be deducted from Dr. Fincham's damages calculation, if anything at all." *Id.*

qualified to make claims and receive their due share of any judgment. Merck's complaints can and should be resolved in that fashion." *Id.* The Missouri court continued: "If, after the claims process, it is determined that personal injury Plaintiffs who individually released claims are seeking recovery in this case, it may be proper for those persons (as well as any amounts they seek attributable to their purchases of Vioxx) can be excluded from the total recovery and any such amount may be reverted to Merck." *Id.* It is important to note that Judge Roldan's statement that those personal injury plaintiffs who allegedly released all claims against Merck will be excluded from any class claims administration process is theoretical only because any Vioxx purchaser who has claimed personal injuries is *not* a certified class member.

In its summary judgment order, the Missouri court also rejected as a matter of Missouri law the arguments Merck is making here about settlements by TPPs. The court noted that Merck identified no evidence at all to demonstrate the amount of TPP payments in Missouri subject to previous settlements. *Id.* But more importantly, the Missouri court specifically found "that there is a substantive difference between a value calculation and seeking recovery on behalf of government or private third-party payors (which none of the Plaintiffs are doing here). Moreover, Merck provides nothing to suggest that the settling TPPs, even if they released their own claims, somehow released, or even could ever release, the claims of Plaintiffs or class members in this case and hence, these settlements are not relevant at all." *Id.*, n.3.

"Simply put," wrote the *Plubell* trial court, "Merck has offered no evidence that any of the Class Representatives or any of the class members in this case have otherwise released any of their claims or that Plaintiffs' damages calculations include amounts of damages contrary to Missouri law that cannot otherwise be dealt with during the claims administration process after judgment." *Id.*, § IV.

*Plubell* Plaintiffs agree with the *Plubell* court, and with Merck on one point: The releases executed by plaintiffs who settled their claims in the MDL bind them. They will not be able to recover, in *Plubell*, on the claims they released in the MDL. No injunction is necessary to accomplish this for two reasons: these persons who released Merck in the PI settlement are not class members and, should one assert a claim, it can be handled as a matter of post-judgment claims administration in *Plubell*, if and after the plaintiffs prevail at trial. This Court should not entertain Merck's present attempt to revisit settled issues of Missouri law applicable in *Plubell*.

**III.     Argument**

    **A.     The limited scope of federal court injunctive power under the All Writs Act and Anti-Injunction Act**

Under the All Writs Act, 28 U.S.C. § 1651, federal courts may issues writs "necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." Such writs may include injunctions against conflicting state-court proceedings. *See In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 2011 WL 2313866, at *3. "However, a district court's injunctive power is not unfettered under the All Writs Act; rather it is circumscribed by the Anti–Injunction Act, 28 U.S.C. § 2283." *Id.* The Anti-Injunction Act prohibits federal courts from enjoining state court proceedings unless one of three narrow exceptions is met: "(1) as expressly authorized by an Act of Congress, (2) where it is necessary in aid of jurisdiction, and (3) to protect or effectuate judgments." *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 2011 WL 2313866, at *3 (citing 28 U.S.C. § 2283). "[T]he exceptions are narrow and are not to be enlarged by loose statutory construction." *Royal Ins. Co. of Am. v. Quinn-L Capital Corp.*, 960 F.2d 1286, 1300 (5th Cir. 1992) (quoting *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 146 (1988)). "Any doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state

courts to proceed in an orderly fashion to finally determine the controversy." *Atl. Coast Line R. Co.*, 398 U.S. at 297; *see also Texas v. United States*, 837 F.2d 184, 186 (5th Cir. 1988) ("[W]e are guided by the overarching principle that federal courts are to be cautious about infringing on the legitimate exercise of state judicial power.").

> **B. The requested injunction is not proper under the "protect or effectuate judgments" or "relitigation" exception to the Anti-Injunction Act.**

The sole basis for Merck's motion is the company's bare assertion that the Missouri case somehow threatens the PI and TPP settlements in the MDL. But neither the *Plubell* plaintiffs nor any member of the Missouri certified class are parties to any settlement or proposed settlement or judgment involving Vioxx, nor have they released their MMPA claims, or any other claims, against Merck in the MDL or in any other instance. *See* Summary Judgment Order, § IV.[5] Because Merck fails to identify or explain any actual (or even hypothetical) threat to the PI or TPP settlements, which have already occurred and are completed, and this Court's unquestioned role in overseeing them, Merck cannot meet either the "necessary in aid of jurisdiction" or the "protect or effectuate judgments" exceptions to the Anti-Injunction Act.

The Court should quickly dispatch with the "protect or effectuate judgments" exception, which is commonly referred to as the "relitigation" exception, because there simply is no relitigation. "The relitigation exception was designed to permit a federal court to prevent state litigation of an issue that previously was presented to and decided by the federal court." *Chick Kam Choo*, 486 U.S. at 147.[6] "[A]n essential prerequisite for applying the relitigation exception

---

[5] In the previous settlements, Merck agreed to pay money in exchange for specific releases of specific claims, for example, by the TPPs. In settling with specified TPPs, Merck *did not bargain or pay for* a release of state consumer claims, many of which, as Merck well knows, are subject to the benefit-of-the-bargain measure of damages at issue in the Missouri case. This Court should reject Merck's post hoc attempt to get more out of its settlements than it bargained for.

[6] A case relied on by Merck, *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 314 F.3d 99 (3d Cir. 2002), illustrates the type of situation the relitigation exception was intended to cover. That case involved a nationwide

is that the claims or issues which the federal injunction insulates from litigation in state proceedings actually have been decided by the federal court." *Id.* at 148; *see also Texas Employers' Ins. Ass'n v. Jackson*, 862 F.2d 491, 501 (5th Cir. 1988) (en banc), *cert. denied*, 490 U.S. 1035 (1989). Any doubt as to whether the PI or TPP settlements preclude subsequent claims by Missouri consumers must be resolved in favor of allowing the state court to proceed. *Quinn-L Capital Corp.*, 960 F.2d at 1293-94 (citing *Jackson*, 862 F.2d at 499); *see also* Wright & Miller, Fed. Prac. & Proc. § 4226 ("There can be no federal injunction against state proceedings, based on the claim-preclusive or issue-preclusive effect of a federal judgment, unless that judgment has actually decided the claim or issue in question. This prerequisite to reliance on the third exception is strict and narrow. It requires an assessment of the precise state of the record and of what the earlier federal order actually did."); *Texas Commerce Bank Nat'l Assn. v. Florida*, 138 F.3d 179, 182 (5th Cir. 1998).

As previously stated by the Fifth Circuit: "We take the view that a complainant must make a strong and unequivocal showing of relitigation of the same issue in order to overcome the federal court's proper disinclination to intermeddle in state court proceedings. If we err, all is not lost. A state court is as well qualified as a federal court to protect a litigant by the doctrines of res adjudicata and collateral estoppel." *S. Cal. Petroleum Corp. v. Harper*, 273 F.2d 715, 719 (5th Cir. 1960).

It is beyond dispute that no settlement or judgment categorically disposes of the consumer claims at issue in *Plubell*, on behalf of the *Plubell* class (which by definition excludes personal injury claimants). Therefore, under the applicable law, Merck's request for an

---

class settlement in an MDL that had long been finally approved and paid. *Id.* at 100. Certain class members challenged in state court and under state law the defendant's handling of their claims under the ADR procedure outlined in the settlement. *Id.* Not surprisingly, the MDL court enjoined the state-court relitigation of the claims process. *Id.* at 105.

injunction under the "protect or effectuate judgments" exception must fail.

Importantly, even if Merck could articulate a non-frivolous hypothetical interference with an MDL judgment (which it cannot), such a hypothetical issue is not ripe, either for consideration by the Missouri court or this Court. Merck has known for years about its exposure to consumer claims in Missouri under Missouri law, and in other states. It certainly was cognizant of that exposure to consumer claims when it executed the TPP settlement in September 2009, yet it did not negotiate consumer claims at that time. Only now, apparently to interrupt trial preparation by the Missouri plaintiffs and to derail the trial, has Merck decided that consumer judgments somehow infringe on the TPP settlement. But there are no consumer judgments, just a trial that does not in the least threaten the integrity of this MDL or its own judgments. To the contrary, because it is in effect the first consumer bellwether trial, resolution of the Missouri case through trial may further the resolution of other remaining consumer claims. Merck will be free to argue (without merit) to the Missouri court that Merck has already paid part of any judgment through TPP settlements that did not provide notice to consumers and paid them nothing.[7]

### C. The requested injunction would not be proper under the "necessary in aid of jurisdiction" exception to the Anti-Injunction Act.

Injunctions may be issued only where "necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case." *Atl. Coast Line R. Co.*, 398 U.S. at

---

[7] Merck's contention that it "may have to invoke its indemnification and hold-harmless rights under the [TPP] agreement," Doc. 63757 at 3, is confirmation that the Missouri case poses no threat to the TPP settlement. To the contrary, any hypothetical defense or indemnity by the TPPs in the Missouri case would *effectuate* the MDL settlement contract giving rise to that defense or indemnity. If Merck thought the TPPs owed it a defense (which they obviously do not), it would ask the TPPs to request an appearance at the *Plubell* trial. More likely, Merck would have demanded a defense back in 2009. In any event, Merck's fanciful TPP defense presumably will never happen, because as Merck well knows, the Missouri consumer claims are not "on behalf of or for the benefit of any" TPP. *Id.* at 3. The Missouri case is brought on behalf of and for the benefit of a certified class of Missouri consumers, none of whom have had their day in court.

295. Where is the "interference," let alone "serious impairment" of this Court's authority here? Try as it may, Merck cannot identify any such interference, and relies solely on a general reference to the PI and TPP settlements, which have nothing to do with the Missouri consumer claims and the admissible proof of those claims as outlined by the Missouri courts.

Most of the cases cited by Merck involved a class settlement that was "threatened" by *settlement class members'* simultaneous pursuit of relief in other courts, typically for the purpose of undermining the settlement reached and preliminarily or finally approved by the MDL court. Importantly, lead plaintiffs' counsel in those consolidated federal litigations *sought or supported* the injunctions because the state-court actions sought by *settlement class members* and their counsel actually conflicted or overlapped with MDL class settlements. As the *Plubell* class is not covered by either the PI or TPP settlements, these cases are all inapposite to the situation presently before the Court. *See, e.g.*, *In re Corrugated Container Antitrust Litig.*, 659 F.2d 1332, 1333, 1335 (5th Cir. 1981) (upholding MDL court's injunction preventing MDL plaintiffs from simultaneously pursuing a similar lawsuit in South Carolina state court on the basis that state court suit would challenge the MDL court's jurisdiction in light of pending and imminent class settlements, and the fact that  South Carolina counsel were "filing and threatening to file duplicative and harassing litigation in the courts of various states and by seeking therein orders disrupting the proceedings in [the MDL]."); *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 2011 WL 2313866 (wherein this Court denied a challenge to the Court's injunction made by a putative settlement class member who was involved in the MDL litigation and was enjoined from proceeding with its parallel state case against one of the same settling defendants pending settlement approval proceedings in the MDL); *In re Diet Drugs Prods. Liab. Litig.*, 282 F.3d 220, 226, 237-38 (3d Cir. 2002) (affirming injunction against "preemptive strike" against an

MDL settlement; Texas counsel on behalf of a putative settlement class member received a Texas class certification order eight days before the end of the opt-out period, then sought a mass opt-out; multiple notices would have confused class members in Texas); *In re Cmty. Bank of N. Va. & Gaur. Bank Second Mortgage Litig.*, MDL No. 1674, 2008 WL 821662, at *1, 5-6 (W.D. Pa. March 27, 2008) (enjoining plaintiffs who had been in the consolidated federal case from pursuing class certification in a North Carolina state case, until after the opt-out period expired on MDL settlement; North Carolina class members would be confused by multiple proceedings and notices); *In re Baldwin-United Corp. (Single Premium Deferred Annuities Ins. Litig.)*, 770 F.2d 328 (2d Cir. 1985) (affirming injunction against state regulators who "waited until the eve of [MDL] settlement approval to take any significant actions against the [defendants]", *id.* at 337; the MDL settlement released the states' derivative claims, *id.* at 336; and the "state actions were improperly being brought for harassing and vexatious purposes and as a means of coercing the defendants to pay more funds into the federal settlement pool", *id.* at 339).

In stark contrast with these cases, Merck's maneuver here is inapposite and unprecedented—it wants to bar Missouri consumers from pursuing their own independent claims under state law, which have never been adjudicated, compromised, or released in any way in any case in the country. Merck does not—because it cannot—suggest that the Missouri plaintiffs are engaged in the sort of "preemptive strike" or other procedural shenanigans criticized in any of the opinions upon which Merck relies.[8] To the contrary, the *Plubell* plaintiffs are simply

---

[8] Merck also relies on *Newby v. Enron Corp.*, 338 F.3d 467 (5th Cir. 2003). There, the MDL transferee court entered an injunction requiring the withdrawal of motions from Texas state court which sought temporary injunctions to freeze defendants' assets. The Court of Appeals affirmed the federal injunction because the "requests for temporary injunctions in the state court . . . are an attempt to taunt the parties and the court and to undermine the district court's ability to control the consolidated litigation." *Id.* at 475. Under the circumstances, the state action was also an improper attempt to circumvent the express provision of SLUSA that empowers a federal court to order a stay of discovery in state court during the federal stay of discovery pending rulings on motions to dismiss. *Id.* at 472.

prosecuting their Missouri claims, the very same claims they have pursued for the last seven years. The only procedural shenanigans are in Merck's camp.

Despite the fact that Merck seeks to prevent the Missouri class from seeking a *single recovery*—as opposed to the phantom "double recovery" urged in Merck's brief—Merck suggests that the requested injunction is "narrowly tailored". *See* Memo. at 11 n.8. Merck emphasizes that "The Missouri plaintiffs are not being drawn into the settlement in the Vioxx litigation; nor are their cases going to be stayed or dismissed." *Id.*[9] Then Merck goes so far as to state that even under the requested injunction, Plaintiffs would be permitted to "recover the full extent of their actual damages." *Id.* Merck consistently misinterprets what the class members' "actual damages" are: Merck equates them to an out-of-pocket analysis, whereas under Missouri law as applied by the Missouri courts, the plaintiffs' actual damages will be proven under a benefit-of-the-bargain value analysis.

Merck's related and oft-repeated statement that the Missouri plaintiffs "seek to recover all money spent on Vioxx purchases in the State of Missouri, regardless of who actually spent it", *see, e.g.*, Memo. at 1, is also untrue.[10] As the Missouri trial court made clear in denying

---

[9] It is telling that Merck suggests Plaintiffs are seeking a double recovery, while at the same time recognizing that the Missouri claims have not in the least been resolved by the TPP and PI settlements. If the *Plubell* litigation in fact threatened the existing PI and TPP settlements in the sense contemplated by the Anti-Injunction Act case law, Merck would undoubtedly seek to bar altogether further litigation in Missouri. Merck plainly is not concerned with protecting this Court's prerogative to manage this MDL. Instead, the pending motion is a not-so-thinly-veiled attempt to undo—on the eve of trial—substantive Missouri law as applied by the Missouri courts to the *Plubell* case.

[10] Merck does not—because it cannot—explain how much money it claims should be excluded from Dr. Fincham's damages calculations. Merck has *admitted* that "it would be impossible for Dr. Fincham to reliably calculate the actual cost of Vioxx to the class members versus private insurers." *See* Excerpt of Merck's Memorandum in Support of Motion for Summary Judgment in *Plubell*, p.19 n.5 (attached hereto as <u>Exhibit G</u>). Likewise, with respect to purchases by Missouri PI claimants, "Merck offers nothing whatsoever to demonstrate who these people might be, how much was paid to them in settlement, how many Vioxx prescriptions might be at stake in their alleged claims in this case, or how much money those prescriptions specifically represent in this case." Summary Judgment Order, § IV. As is common in damages calculations, Dr. Fincham used the "available information" for his value calculation. *Id.*; *see also BMK Corp. v. Clayton Corp.*, 226 S.W.3d 179, 196 (Mo. Ct. App. 2007) (amount of damage need only be determined with reasonable certainty and "supported by the best evidence available"). With respect to non-class-member PI claimants, as ruled by the Missouri court, any issues can "be dealt with during the claims administration process after judgment." Summary Judgment Order, § IV.

summary judgment on this precise issue, Plaintiffs are seeking damages calculated under the applicable test and model jury instruction in Missouri. Plaintiffs are *not* seeking to recover payments made by any third party. *See* Summary Judgment Order, n.3 ("[T]here is a substantive difference between a value calculation and seeking recovery on behalf of government or private third-party payors (which none of the Plaintiffs are doing here)."). Instead, Dr. Fincham applies accepted methodology to opine as to the damages provided under Missouri law (value "as represented" less value "as is" equals total benefit-of-the-bargain damages). Merck cannot claim surprise at this analysis, as opposed to its preferred "out-of-pocket" analysis, because the benefit-of-the-bargain rule and standard jury instruction[11] have existed since the Missouri case was filed in 2004, and were specifically addressed in certification briefing and by the Missouri Court of Appeals in its 2009 opinion. *Plubell*, 289 S.W.3d at 715 (stating that the "benefit-of-the-bargain rule . . . compares the actual value of the item to the value of the item if it had been as represented at the time of the transaction", and citing Missouri Approved Instruction 4.03, which was followed by Dr. Fincham).[12]

Because Merck cannot show even potential "interference" by the *Plubell* case with this MDL or the TPP or PI settlements, much less that an injunction is "necessary" to prevent such state-court interference, no exception to the Anti-Injunction Act can apply, and the injunctive relief sought by Merck is not permissible. *See, e.g.*, *Atl. Coastline R. Co.*, 398 U.S. at 295;

---

[11] *See, e.g.*, Missouri Approved Instruction 4.03; *Craft v. Phillip Morris Cos.*, No. 002-00406A, 2003 WL 23139381, at *6 (Mo. Cir. Ct. Dec. 31, 2003) ("In contrast [to the out-of-pocket standard] a defrauded plaintiff is allowed to recover – *regardless* of the actual price paid for the purchased item – the difference between the actual value of the property received and the value that it would have been in the state represented (i.e., 'if the representations had been true.')") (discussed in Summary Judgment Order, § III).

[12] The Missouri plaintiffs' damages calculations conform to long-standing Missouri law. Further, the Missouri plaintiffs produced Dr. Fincham for deposition months ago, on December 1, 2011, as requested by Merck and in conformance with the scheduling order agreed to by Merck. Now, on the brink of trial, and having already lost these battles in Missouri, Merck claims "surprise" despite knowing every detail of Dr. Fincham's opinions for four full months. The Court should take that alleged surprise with a grain of salt.

*Castano v. Am. Tobacco Co.*, 879 F. Supp. 594, 598 (E.D. La. 1995) (denying request for injunction, stating: "[T]his Court may not enjoin conduct that is 'not shown to be detrimental to the court's jurisdiction.'"; "In fact, the All Writs Act must be 'directed at conduct, which, left unchecked, would have the practical effect of diminishing the court's power to bring the litigation to a natural conclusion.'") (quoting *ITT Cmty. Dev. Corp. v. Barton*, 569 F.2d 1351, 1359 (5th Cir. 1978)).

### D. Principles of equity and comity weigh heavily against the requested injunction.

Merck fails to meet any exception to the Anti-Injunction Act to obtain the injunction. Even if it could, the Court should decline the requested injunction under the circumstances here. "[T]he fact that an injunction *may* issue under the Anti-Injunction Act does not mean that it *must* issue." *Chick Kam Choo*, 486 U.S. at 151 (emphasis in original). The Anti-Injunction Act "does not 'qualify in any way the principles of equity, comity, and federalism that must (in its absence) restrain a federal court when asked to enjoin a state court proceeding.'" *Reg'l Props., Inc. v. Fin. and Real Estate Consulting Co.*, 678 F.2d 552, 566 (5th Cir. 1982) (quoting *Mitchum v. Foster*, 407 U.S. 225, 243 (1972)). These principles demand that this Court not interfere with the impending Missouri trial of a case litigated there since 2004 in which the class definition excludes any person claiming personal injuries, and no class representative or class member has ever released or otherwise litigated any claim related to Vioxx in this Court or any other court in the country.

### E. It seems unlikely that one Missouri jury trial will destroy "the very system of federal multidistrict litigation."

In its "supplemental memorandum" (Doc. 63757), Merck decries the parade of horribles that would flow from that notorious thorn in the side of justice: a jury trial. This shrill cry for

16

help should not be answered. First, many consolidated proceedings, including this one, have been aided by independent state-court trials. The majority of Vioxx personal injury bellwether trials, which led to the global settlement of personal injury claims in the MDL and state courts, were conducted in state courts. *See Eldon E. Fallon, et al., "Bellwether Trials in Multidistrict Litigation"*, 82 Tul. L. Rev. 2323 (2008) (describing the series of bellwether trials that culminated in the global personal injury settlement).

Second, and most importantly, Merck's entire supplemental argument is based on the premise that it "settled for good" at least part of the *claims* at issue *Plubell*. *See* Supp. Mem. at 1 (suggesting Merck "thought to be settled" Missouri consumer claims); 3 (suggesting the TPP settlement released Missouri "claims"); 4 (suggesting Merck would not have settled TPP claims if it knew it would have still be exposed to Missouri (and, by extension, other) consumer claims); 5 (suggesting Merck has "settled for good," and that Missouri "claims" are being "re-litigated"). As explained throughout this opposition, that farcical premise is, as a matter of fact and law, incorrect. Even if it were true (and it is not), now, one month before the start of a classwide trial, is not the time for these issues of an alleged set-off or credit (as well as Merck's issue with respect to an alleged indemnification right) to be resolved. Instead, Merck will have its opportunity to resolve all such issues if and when a state court verdict is rendered against it in Missouri. At that time, Merck could then request from the Missouri trial judge that such issues be resolved. Merck's attempt to have this Court issue what would in essence be an advisory opinion is both premature and improper.

## IV. Conclusion

For all the reasons stated herein, and because the requested injunction would plainly violate the Anti-Injunction Act and comity, this Court should deny Merck's motion in its entirety.

The undersigned counsel are providing a copy of this Opposition to the *Plubell* court, The Honorable Marco A. Roldan, Division 16, Circuit Court of Jackson County, Missouri, at Independence.

Dated:  April 3, 2012                                        Respectfully Submitted,

/s/ Dawn M. Barrios
Dawn M. Barrios (#2821) **(For Filing Purposes Only)**
barrios@bkc-law.com
**BARRIOS KINGSDORF & CASTEIX, LLP**
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Telephone:  (504) 524-3300
Facsimile:  (504) 524-3313

**STUEVE SIEGEL HANSON LLP**
Patrick J. Stueve, Mo. Bar #37682
stueve@stuevesiegel.com
Todd E. Hilton, Mo. Bar #51388
hilton@stuevesiegel.com
Jack D. McInnes, Mo. Bar #56904
mcinnes@stuevesiegel.com
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Telephone:     (816) 714-7100
Facsimile:     (816) 714-7101

**GRAY, RITTER & GRAHAM, P.C.**
Don M. Downing, Mo. Bar #30405
ddowning@grgpc.com
701 Market Street, Suite 800
St. Louis, Missouri 63101
Telephone:     (314) 241-5620
Facsimile:     (314) 241-4140

*Attorneys for Missouri Plaintiffs*

18

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Opposition has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail, upon Liaison Counsel Ann Oldfather by e-mail, and upon all parties by electronically uploading same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 3rd day of April, 2012.

/s/ Dawn M. Barrios
Dawn M. Barrios