# EXHIBIT A

IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
AT INDEPENDENCE, MISSOURI

MARY PLUBELL, et al.,

Plaintiffs,

vs.

Case No:  04CV235817-01<br>DIVISION 5

MERCK AND CO INC

Defendants.

**ORDER GRANTING**
**PLAINTIFFS' AMENDED MOTION FOR CLASS CERTIFICATION**

UPON FULL CONSIDERATION, the Court, having reviewed Plaintiffs's PLAINTIFFS'

AMENDED MOTION FOR CLASS CERTIFICATION, and the Court having reviewed all

evidence, pleadings and arguments of record related to said motion, and being fully advised in

the premises, the Court makes the followings findings of fact, conclusions of law and orders:

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

**I.      Background**

Plaintiffs filed this action as a putative class action against Defendant Merck & Co., Inc.

("Merck")  to recover economic damages for violations of the Missouri Merchandising Practices

Act (the "MMPA"), Mo. Rev. Stat. § 407.010, *et seq.*  Plaintiffs, on behalf of themselves and the

putative class, seek damages suffered as a result of their purchases of Merck's prescription drug

Vioxx.

The parties submitted substantial briefing and evidence, and the Court held a hearing on

October 26, 2006, at which additional argument was presented.

After having carefully considered all arguments and evidence presented, the requirements

for class certification contained in Rule 52.08, Mo. R. Civ. P. and case law interpreting those

requirements, the Court is convinced that Plaintiffs have satisfied the requirements of Rule 52.08 and that the most fair and efficient manner for this action to proceed is as a class action.

## II.   Standard for Class Certification

Plaintiffs move for class certification pursuant to Rule 52.08, Mo.R.Civ.P., and § 407.025.3 Mo. Rev. Stat.  Rule 52.08 sets forth standards for class certification and is restated verbatim in § 407.025.3.  The Court construes the statute as a legislative indication that class certification is appropriate, in proper cases, for claims brought under the MMPA.  The Court will apply Rule 52.08 as the standard for certification.

In evaluating Plaintiffs' Motion, the Court relies primarily on Missouri case law applying Rule 52.08.  While Missouri courts sometimes look to federal cases interpreting Federal Rules of Civil Procedure Rule 23 as persuasive authority, Missouri courts are not bound by such federal precedents.  *See Dale v. DaimlerChrysler Corporation,*  - - S.W.3d - --, 2006 WL 1792414 at *5 (Mo. Ct. App. 2006); *Hemme v. Bharti* , 183 S.W.3d 593, 597 (Mo. 2006)(where "the Missouri and federal rules are essentially the same, federal precedents constitute persuasive, although not binding, authority.").

This Order resolves only the question of whether the prerequisites of a class action are met.  *Id.; see also State ex rel. Byrd v. Chadwick,* 956 S.W.2d 369, 380 (Mo. Ct. App. 1997). This Order should not be construed as resolving any disputed factual issue.  It would be improper and unfair to the parties to require them to prove the merits of their claims or defenses at the class certification stage because of its preliminary nature and the very limited opportunity for discovery.  Moreover, the class determination under Rule 52.08 does not depend on the merits of the Plaintiffs' claims.  *See Reinhold v. Fee Fee Trunk Sewer, Inc.,* 664 S.W.2d 599, 602 (Mo. Ct. App. 1984).

Plubell v Merck & Co., Inc.         Case No. 04CV235817-01

### III.    Nature of the Case

Plaintiffs Mary Plubell and Ted Ivey are Missouri residents who allege that they purchased and consumed Vioxx.  They bring this action on behalf of themselves and all Missouri residents who purchased Vioxx.  Vioxx is the brand name of rofecoxib, one of a class of drugs called "prostaglandins," which work to reduce inflammation and pain by providing analgesic and anti-inflammatory benefits to persons with, among other conditions, arthritis and muscle pain. Defendant launched Vioxx in the United States in 1999 and has marketed and sold it in more than 80 countries.

Plaintiffs allege that Merck engaged in a series of unlawful, unfair and deceptive acts and practices in connection with the sale, distribution or advertisement of Vioxx in violation of Missouri's Merchandising Practices Act.  It is undisputed that each of the class representatives was prescribed the prescription drug Vioxx and that they each received and ingested the drug. The class representatives both alleged in their Petition and testified under oath that they purchased the drug Vioxx in the State of Missouri.  Both class representatives alleged in their Petition and testified under oath that they were harmed by Merck because the Vioxx they purchased was falsely represented and because Merck failed to disclose to them the true nature and extent of Vioxx's side effects: namely, the high incidences of heart attack, stroke and death. Plaintiffs seek economic losses resulting from their purchases of Vioxx.  Plaintiffs do not seek damages related to, or claim, personal injury, and specifically exclude from the class those claiming personal injury as a result of taking Vioxx.

## IV.   Application of Rule 52.08

Rule 52.08 authorizes the Court in its discretion to certify a class of plaintiffs when the following factors are present: (i) the class is so numerous that joinder of all members is impracticable; (ii) there are questions of law or fact common to the class; (iii) the claims or defenses of the representative parties are typical of the class or defenses of the class; and (iv) the representative parties will fairly and adequately protect the interests of the class. *See* Rule 52.08(a), Mo. R. Civ. P.; *see also State ex rel. American Family Mut. Ins. Co. v. Clark,*106 S.W.3d 483, 486 (Mo. banc 2003). These elements are commonly referred to as "numerosity," "commonality," "typicality" and "adequacy."

Additionally, one of the three factors set forth in Rule 52.08(b) must also be present. In this case, Plaintiffs seek class certification based on Rule 52.08(b)(3), which requires a finding that (i) the questions of law or fact "predominate over any questions affecting only individual members," and (ii) that a class action is "superior to other available methods for the fair and efficient adjudication of the controversy." *See* Rule 52.08(b)(3); *Clark*, 106 S.W.3d at 487-88. These elements are commonly referred to as "predominance" and "superiority."

The determination of whether to certify a class action under Rule 52.08 ultimately rests within the sound discretion of the trial court. *See Dale v. DaimlerChrysler Corporation*, - - S.W.3d. - - - , 2006 WL 1792414 at *5 (Mo. Ct. App. 2006); *Clark*, 106 S.W.3d at 486. "[B]ecause class certification is subject to later modification, a court should err in favor of, and not against, allowing maintenance of the class action." *Dale*, 2006 WL 1792414 at *6.

Plaintiffs seek to certify a class defined as follows: All Missouri residents who purchased Vioxx for personal or family use. Excluded from the Class are Defendant, including any parent,

subsidiary, affiliate or controlled person of Defendant; Defendant's officers, directors, agents or employees; the judicial officers assigned to this litigation; and members of their staffs and immediate families.  Also excluded from the Class are those claiming they have suffered a personal injury as a result of taking Vioxx.

### A. Numerosity

Rule 52.08(a)(1) requires a finding that "the class is so numerous that joinder of all members is impracticable.  There is no "magic number" of class members that automatically satisfies the numerosity requirement.  Rather, a common sense approach should be used in analyzing whether the class is so numerous that joinder is impracticable. *See Newberg on Class Actions*, § 3.06 at 254;[1] *see also Biben v. Card,* No. 84-0844-CV-W-6, 1986 WL 1199, at *3 (W.D. Mo. Jan. 6, 1986) (*quoting Grossman v. Waste Management, Inc.,* 100 F.R.D. 781, 785 (N.D. Ill. 1984) ("Though we do not now have before us any information as to the number of persons who bought Waste Management stock during the class period, as opposed to the number of shares traded during that period, we are entitled to make 'common sense assumptions' in order to support a finding of numerosity.").

Plaintiffs estimate that the class numbers in the thousands and Defendant does not dispute that the class is numerous.  In fact, various public reports have indicated that more than 20 million Americans purchased Vioxx.  Impracticability of joinder may be presumed where a class numbers as few as forty members. *Newberg,* § 3.05 at 247 ("[I]n light of the prevailing precedent, the difficulty inherent in joining as few as [forty] class members should raise a presumption that joinder is impracticable, and the plaintiff whose class is that large or larger

---

[1] Missouri courts, including the Missouri Supreme Court in *Clark,* have relied heavily on Professor Newberg's comprehensive treatise on class actions.  Supreme Court Judge Laura Stith wrote that Professor Newberg is "the leading commentator in the area." *State ex rel. Byrd v. Chadwick,* 956 S.W.2d at 381.

should meet the tests of Rule 23(a)(1) on that fact alone."). Therefore, the Court finds that the class is sufficiently numerous to satisfy Rule 52.08(a)(1).

**B. Commonality**

Rule 52.08(a)(2) requires a finding that "there are questions of law or fact common to the class." A single common issue can be sufficient to satisfy this requirement. As Professor Newburg explains:

> The test or standard for meeting [the commonality] prerequisite is qualitative rather than quantitative; that is, there need be only a single issue common to all member of the class. Therefore, this requirement is easily met in most cases.

Newberg on Class Actions § 3.10 at 272-277 (emphasis added).

Defendant does not challenge the commonality requirement in its briefing, and the Court finds that there are common questions of law and fact. In particular, whether Merck's alleged failures to disclose, and its alleged active efforts to conceal and minimize, the adverse health risks about Vioxx and whether such actions constitute unfair and deceptive trade practices under the Missouri Merchandising Practices Act are crucial issues that unite the entire class. Significantly, the resolution of these issues have far-reaching consequences for all parties that make class resolution highly desirable. The Court finds there are plainly issues of fact and law that are common to the class.

## C. Typicality

Rule 52.08(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." The typicality requirement is fairly easily met so long as other class members have claims similar to the named plaintiff. *See Bradford v. AGCO Corp.*, 187 F.R.D. 600, 603 (W.D. Mo. 1999). Typicality does not require that the claims be identical. *See Kuenz v. Goodyear Tire and Rubber Co.*, 104 F.R.D. 474, 477 (E.D. Mo. 1985). As Professor Newberg explains:

> [A] plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory. When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of varying fact patterns which underlie individual claims.

Newberg on Class Actions § 3.13 at 328-329. Different individual fact patterns, differences in damage claims and the prospect that the named plaintiff may be subject to certain defenses does not preclude a finding of typicality. Newberg § 3.15-3.16; 7A Wright, Miller & Kane, Federal Practice and Procedure, § 1764 at 235-41. In fact, "[f]actual variations in the individual claims will not normally preclude class certification if the *claim arises from the same event or course of conduct as the class claims,* and gives rise to the same legal or remedial theory." *Dale,* 2006 WL 1792414 at *11 (*quoting Carpe v. Aquila,* 224 F.R.D. 454, 457 (W.D. Mo. 2004)). The typicality requirement, pursuant to Rule 52.08, is satisfied "even where there is a variance in the underlying facts of the representative's claims and the putative class members' claims." *Id* at *12. Further, the existence of an affirmative defense against a class representative does not make his claim atypical. *Dale* at *14

Merck asserts that Plaintiff Mary Plubell is not a typical representative of the class because "she did not pay for Vioxx. . . ." Merck also argues that Plaintiff Ted Ivey is an atypical class representative because "he cannot prove that he suffered any loss 'as a result of' Merck's allegedly misleading statements about Vioxx."

The Court finds that Defendant's typicality arguments are without merit. The named Plaintiffs are asserting claims on behalf of themselves and the Class that uniformly arise out of the same course of conduct by Defendant and that are based on the same legal theory. Thus, the claims of the Plaintiffs are typical of the claims of the class. The question of whether Ms. Plubell actually purchased Vioxx or whether Mr. Ivey actually suffered loss as a result of Merck's conduct goes to the merits of the case. Such alleged credibility issues do not make the named plaintiffs' claims atypical of those of the class and will not "swamp" this litigation "so long as the named plaintiffs' claim arises from the same event or practice or course of conduct." *Bellinder v. Microsoft Corp.*, 2001 WL. 1397995 at * 3 (Kan. Dist. Ct. Sept. 7, 2001). *See also Kronfeld v. Trans World Airlines*, 104 F.R.D. 50, 52 (S.D.N.Y.) (Claim that "plaintiff's credibility is subject to attack upon cross examination on trial because of alleged inconsistencies between his deposition testimony and statements contained in other documents" does not disqualify plaintiff as a class representative.) Moreover, these issues do not make Plaintiffs' claims atypical of the claims of the class in any event. The Court finds that the typicality requirement is satisfied.

## D. Adequacy of Representation

Rule 52.08(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Under this requirement, the Court must make separate findings with respect to the adequacy of both the named plaintiffs and their counsel to represent the Class as a whole. *See Union Planters Bank, N.A. v. Kendrick*, 142 S.W.3d 729, 735 (Mo. banc 2001). In doing so, the Court must consider whether the named representative "has any conflicts of interest that will adversely affect the interests of the class." *Dale*, 2006 WL 1792414 at *15; *Union Planters Bank, N.A.*, 142 S.W.3d at 735-36.

Defendants typically contest the adequacy of the class representatives, but courts have recognized that these statements should be viewed skeptically and they are often rejected. As the Seventh Circuit succinctly put it in *Eggleston v. Chicago Journeyman Plumbers Local Union No. 130*, 657 F.2d 890 (7th Cir. 1981), *cert. denied*, 455 U.S. 1017 (1982):

> [I]t is often the defendant, preferring not to be successfully sued by anyone, who supposedly undertakes to assist the court in determining whether a putative class should be certified. When it comes, for instance, to determining whether 'the representative parties will fairly and adequately protect the interest of the class,' or the plaintiffs' ability to finance the litigation, it is a bit like permitting a fox, although with a pious countenance, to take charge of the chicken house. *Id.* at 895.

Merck argues that Plaintiff Plubell is not an adequate class representative because "she received her Vioxx for free and thus does not have standing to bring a claim under the [MMPA]," and that Plaintiff Ivey is not an adequate class representative because he testified in his deposition that he would never take a drug with a serious cardiovascular risk yet admitted that he does not know the risks of any of the medications he takes. However, as stated above, credibility issues do not make class representatives inadequate as long as their interests do not

conflict with the interests of the putative class and the class is vigorously prosecuted. Merck has pointed to no such conflicts and is not contesting that the class claims have not been and will not be vigorously prosecuted by the parties and counsel.

The Court finds that Mary Plubell and Ted Ivey have no interests adverse to those of the proposed class and that they have vigorously prosecuted this action. Both of the class representatives in this case have been actively involved with the litigation, reviewed documents, provided discovery responses, produced documents, made themselves available for deposition at convenient times for Merck, and stated, in no uncertain terms, that they are looking out for the best interests of the class and will actively pursue the litigation. For all these reasons, the Court finds that the named plaintiffs are adequate class representatives.

The Court also finds that Plaintiffs' counsel are qualified to be named as class counsel. Both firms representing the Plaintiffs have significant experience in complex commercial litigation, in class actions, in consumer fraud cases and in cases involving pharmaceutical companies. Both firms are willing to devote the resources necessary to prosecute these claims and zealously represent the Plaintiffs and the Class. Merck does not dispute the adequacy of counsel in this case. Therefore, this Court finds that the counsel is adequate to represent the Class.

### E. Predominance

In addition to the four requirements of subsection (a), Rule 52.08(b)(3) requires plaintiffs to demonstrate that questions of law or fact common to the members of the class "predominate" over any questions affecting only individual members, and that a class action is superior to other methods for fair and efficient adjudication of their claims.

Defendant's argument opposing class certification hinges heavily on its argument that "highly individualized" factual inquiries would be necessary to resolve the proposed class members' MMPA claims. For the reasons expressed below, the Court finds Merck's arguments unpersuasive and that questions of law or fact common to the members of the class predominate over any individual questions.

### 1. Predominance Is Satisfied Because Questions Of Law Or Fact Common To The Class Predominate Over Any Questions Affecting Only Individual Members.

Predominance is satisfied because questions of law or fact common to the class predominate over any questions affecting only individual members. The overriding common issue in this case is whether Merck's failure to disclose and active concealment of the alleged fact that Vioxx was unsafe constitutes a violation of the MMPA. That appears to be what this case is all about - - everything else is secondary. That issue is plainly common to the class and easily predominates over all other issues.

Merck has attempted to defeat predominance by attempting to create numerous "individual" issues (most of which are irrelevant to Plaintiffs' claims as explained below), and then claiming that the individual issues somehow outweigh the common issues and thereby defeat predominance. As the Missouri Supreme Court made clear in *Clark*, this tactic is inappropriate and does not defeat predominance. *Clark* held that the predominance requirement is not a numerical test that compares the sheer number of common issues with the number of individual issues. Rather, the Supreme Court emphasized that a single common issue may be the overriding one in the litigation, despite the fact that the suit also entails numerous individual issues:

> The "predominance" requirement . . . does not demand that every single issue in the case be common to all the class members, but only

that there are substantial common issues which "predominate" over the individual issues. The predominate issue need not be dispositive of the controversy or even be determinative of the liability issue involved. The need for inquiry as to individual damages does not preclude a finding of predominance. **A single common issue may be the overriding one in the litigation, despite the fact that the suit also entails numerous remaining individual questions**.

106 S.W.3d at 488 (emphasis added).

The Supreme Court in *Clark* further made clear that the "predominance of the common issues is not defeated simply because individual questions may remain . . . questions of damages or possible defenses to the individual claims." *Id. See also Doyle v. Fluor Corp.*, 199 S.W.3d 784 (Mo. Ct. App. 2006) (affirming class certification). "The fundamental question is whether the group aspiring to class status is **seeking to remedy a common legal grievance**." *Dale*, 2006 WL 1792414 at *18 (emphasis added). "If, to make a prima facie showing *on a given question*, the members of a proposed class will need to present evidence that varies from member to member, then it is an individual question. If the same evidence will suffice for each member to make a prima facie showing, then it becomes a common question." *Id.* at *19 (emphasis in original0; *Craft*, 190 S.W.3d at 382. "[T]he fact that some issues may require individualized fact-finding does not prevent the satisfaction of the common-question-predominance question." *Id.* at *20 (affirming the trial court's certification of the class). Thus, even if the "individual" issues raised by Merck were relevant to Plaintiffs' claim, they would be wholly insufficient under *Clark* to defeat predominance.

**2. The "Reliance" or "Causation" Issues Identified By Defendant Do Not Exist In This Case And Would Not Prevent Class Certification In Any Event.**

Virtually all of the "individual" issues raised by Merck are irrelevant to Plaintiffs' actual claims. Thus, these supposed "individual" issues are also wholly irrelevant to this Court's class certification determination.

**a. Plaintiffs Have Not Alleged Reliance.**

Merck argued throughout much of its brief and at the hearing that predominance is defeated by individual issues regarding reliance. However, Plaintiffs simply have not alleged reliance (and as explained below have no need to allege reliance under Missouri law). Rather, Plaintiffs have alleged:

> 53. The acts and practices engaged in by Defendant, and described herein, constitute unlawful, unfair and/or fraudulent business practices in violation of the Missouri Merchandising Practices Act, Mo. Ann. Stat. §§ 407.010 *et seq.*

> 54. Defendant engaged in unlawful practices including deception, false promises, misrepresentation, and/or the concealment, suppression, or omission of material facts in connection with the sale, distribution or advertisement of Vioxx in violation of Mo. Rev. Stat. § 407.020.

> 55. Plaintiffs purchased Vioxx, a product that was falsely represented, as stated above, in violation of the Missouri Merchandising Practices Act and as a result Plaintiffs suffered economic damages in that the product they and other class members purchased was worth less than the product they thought they had purchased had Defendant's representations been true.

Second Amended Class Action Petition at ¶¶ 53-55.

In virtually identical circumstances, a Missouri appellate court recently upheld class certification in a Missouri consumer fraud case brought against the manufacturers of "light

cigarettes." *Craft v. Phillip Morris Companies, Inc.*, 190 S.W.3d 368 (Mo. Ct. App. 2005).

Plaintiffs in *Craft* - - like Plaintiffs here - - did not allege reliance. 190 S.W.3d at 374-75.

Defendants in that case - - much like Merck here - - argued that class certification was

inappropriate because plaintiffs could not demonstrate reliance on a class-wide basis and would

have to show deception as to each class member. 190 S.W.3d at 383. The Court flatly rejected

that argument in language equally applicable here:

> However, plaintiff did not allege reliance or deception in her petition, and she did not base the theory of this lawsuit on reliance or deception. Therefore, under the theory of the lawsuit, the individual reasons for purchase are not issues and do not predominate over the common questions.

*Id.* Thus, the alleged "reliance" issues here simply cannot defeat predominance.[2]

### 3. Merck's Allegedly Different Knowledge at Different Times Does Not Defeat Predominance.

Like the portions of its brief devoted to the issue of reliance, Merck's argument that its

"knowledge about the safety of Vioxx changed over time" is equally irrelevant and does not

defeat predominance. Like reliance, Merck's knowledge is not an element of Plaintiffs' claim.

15 CSR 60-9.020 ("Knowledge of deception, intent to mislead or deceive, or any other culpable

mental state such as recklessness or negligence, are not elements of deception as used in Section

407.020.1, RSMo.") *See also Craft*, 2003 WL 23139381 at *3 (the MMPA eliminates the intent

---

[2] Plaintiffs were not required to allege reliance because it is not an element of a claim under Missouri's consumer protection statute. Because reliance is not an element in a claim under the Missouri's Merchandising Practices Act, individual reliance issues are irrelevant and cannot defeat predominance in this case. *See Hess v. Chase Manhattan Bank USA*, 2006 WL 768513 at *13 (Mo. Ct. App. 2006) ("The MPA serves as a supplement to the definition of common law fraud, whose purpose is 'to preserve fundamental honesty, fair play and right dealings in public transactions.' **The MPA eliminates the need to prove an intent to defraud or reliance.**") (citation omitted); *Schuchmann v. Air Services Heating & Air Conditioning, Inc.*, 199 S.W.3d 228, 232 (Mo. Ct. App. 2006)("Defendant's Point II argument also ignores the plethora of case law holding that the MMPA serves as a supplement to the definition of common law fraud; it eliminates the need to prove intent to defraud or reliance."); *State ex rel. Nixon v. Beer Nuts, et al.*, 29 S.W.3d 828, 837 (Mo. Ct. App. 2000); *State ex rel. Webster v. Areaco Inv. Co.*, 756 S.W.2d 633, 635 (Mo. Ct. App. 1988) ("We also do not find that proof of reliance by customers is a necessary element of such cases.").

to deceive requirement of common law fraud); *State ex rel. Webster*, 756 S.W.2d at 635 ("It is the defendant's conduct, not his intent, which determines whether a violation has occurred."). It is likewise irrelevant to any class certification issue, including predominance. Regardless of what Merck knew at various times during the class period, Plaintiffs have alleged a consistent pattern of deception during the entire class period (from the time the drug came onto the market until the time it was withdrawn) regarding the safety of Vioxx. Plaintiffs allege that Merck was violating the MMPA at any point and at all points during the class period. Whatever differing degrees of knowledge Merck may have had at different points of time therefore does not affect commonality or predominance.

### 4. The Alleged Varying Nature of Merck's Representations Do Not Defeat Predominance.

Merck claims that because it allegedly made so many different deceptions over time, those allegedly victimized by the varying deceptions are somehow barred from maintaining a class action. Merck's argument is unpersuasive.

First, as explained above, reliance is not an element in Plaintiffs' claim. Therefore, the varying nature of Merck's alleged misrepresentations does not present individual questions because Plaintiffs do not need to show reliance on any misrepresentation.

Moreover, as mentioned above, Plaintiffs have alleged a consistent pattern of deception over the entire class period, which involved primarily failures to disclose and active concealment of the true facts. Defendant allegedly spent over $160 million per year in direct-to-consumer advertising beginning in 1999 and continuing until September 2004 when Vioxx was recalled due to safety concerns. Plaintiffs have alleged that this advertising campaign consistently and uniformly failed to disclose, actively concealed, and otherwise downplayed scientific studies and other evidence showing that the use of Vioxx led to substantially increased risk of heart attack

and strokes and that there was no evidence that Vioxx was any more effective than much cheaper alternatives.  Defendant allegedly not only failed to disclose and minimized the known risks of Vioxx, it also took affirmative steps throughout the class period to conceal the truth from the consuming public and prescribing physicians.  Because Plaintiffs have alleged uniform conduct - - primarily through a failure to disclose and active concealment of the true facts - - throughout the Class period, the fact that some of Merck's misrepresentations may have varied is irrelevant.

Similar arguments have been made by defendants in securities class actions who have released a variety of information over a period of time.  In *In re McDonnell Douglas Corporation Securities Litigation*, 98 F.R.D. 613 (E.D. Mo. 1982), for example, defendants argued that constantly changing conditions at McDonnell Douglas required complicated factual determinations to establish liability for each alleged insider sale.  *In re McDonnell Douglas Corporation Securities Litigation*, 98 F.R.D. 613 (E.D. Mo. 1982).  The court found the defendant's argument unpersuasive and noted that other courts had also addressed and dismissed arguments that various disclosures over time defeated class certification because they created a "continuously changing factual mix of available information."  *Id.*  (*citing Dura-Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 93 (S.D. N.Y. 1981)).  The court, in granting plaintiffs' motion for class certification, found that the plaintiffs had a common interest in determining whether the defendant's conduct was actionable in general, especially "when plaintiffs allege a common course of conduct by defendants."  *Id.* (*citing Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975)); *see also Katz v. Comdisco, Inc.*, 117 F.R.D. 403, 412 (N.D. Ill. 1987) ("the few factual variations that did occur during the revised class period do not affect the question common to all class members with respect to defendants' liability – i.e., whether Comdisco and its officers engaged in a common scheme to conceal the company's contingent tax liability.");

*see also Steiner v. Equimark Corporation*, 96 F.R.D. 603, 608 (W.D. Pa. 1983) (granting motion for class certification and holding that "[t]he perpetuation of the alleged wrong over a lengthy period of time and through a variety of different documents does not defeat a class certification motion. Nor is such a motion defeated by fluctuations in the underlying facts over the class period.").[3]

To support its argument that different representations over time must defeat class certification, Merck relies heavily on an unreported Missouri Court of Appeals decision in *State ex rel. Leader Motors, Inc. v. Koehr*, 1992 WL 151844 (Mo. Ct. App. 1992), *transferred to Missouri S. Ct.* (Sept. 22, 1992), *writ quashed* (Feb. 23, 1993). That opinion cannot properly be relied upon (or even cited), because the Missouri Supreme Court granted transfer and quashed the writ issued by the Court's of Appeals in the case cited by Merck. That opinion therefore is a nullity. *Gerlach v. Missouri Commission on Human Rights*, 980 S.W.2d 589, 594 (Mo. Ct. App. 1998) "The decision of the court of appeals in a case subsequently transferred is of no precedential effect."). Indeed, the Missouri Supreme Court in deciding to quash the writ, obviously disagreed with the rationale and holding expressed in the Court of Appeals decision so heavily relied upon by Merck.[4]

---

[3] Theses securities cases, in this context, are quite helpful and analogous because, like any claim under the MMPA, the courts have found that securities fraud claims simply do not require a finding of reliance on any misrepresentation.

[4] In any event, *Koehr* is easily distinguished from the facts at hand. In *Koehr*, plaintiffs sought certification of a class of individuals who purchased an automobile from Leader on the representation that the auto was a "demo" when the automobile had been previously owned and used by a rental car agency. *Id.* The trial court ordered the class certified, but the court of appeals issued a writ of prohibition to prevent the entry of the order, stating that "[a]lthough plaintiff's petition includes allegations of written representations in advertising, the primary focus of plaintiff's action involves disputed oral misrepresentations which relators or their agents allegedly told purchasers in individual sales transactions," and therefore "[e]ach purchaser's claim will of necessity require proof of the alleged misrepresentations made in that individual transaction." *Id.* at *6. The court also found that each automobile was different from all others and that issues of liability were dependent upon differing statements allegedly made by individual salespersons to individual purchasers. *Id.* at *9. In contrast, the

### 5. The Reasons Physicians Prescribed Vioxx To Patients Is Irrelevant To Class Certification.

Defendant argues that each prescribing physician's knowledge about the risks of Vioxx would have to be explored and, as a result, individual questions will predominate. That type of "derivative reliance" argument is irrelevant here because it is again based upon the assumption that reliance is required under the MMPA. As explained above, Plaintiffs do not allege reliance under their MMPA claim and the learned intermediary doctrine cannot, therefore, defeat class certification in this case.

At the class certification stage the Court need not decide whether, at trial, the learned intermediary doctrine *may* apply. This Court notes, however, that a fundamental requirement for application of the learned intermediary doctrine is full and complete disclosure to doctors. Plaintiffs here have specifically alleged that Defendant withheld information from the "health care industry," which obviously includes doctors. Second Amended Class Action Petition at ¶ 25. Plaintiffs further alleged that Defendant fraudulently "caused the publication of a study in the New England Journal of Medicine in which it knowingly downplayed and/or withheld the severity of cardiovascular risks associated with Vioxx . . ." *Id.* That fraudulent study was allegedly published for and directed at the health care industry and doctors specifically. Accordingly, the doctrine may not apply. Moreover, the learned intermediary doctrine is an

---

Vioxx purchased by Plaintiffs and the members of the Class did not differ from one purchaser to the next, and the primary focus of Plaintiffs' action involves misrepresentations made by Merck to the general public and health care providers - - these misrepresentations (or perhaps more importantly its omissions and failures to disclose) did not vary from individual to individual. Therefore, the misrepresentations do not require individualized inquiries. Defendant relies on *In re Prempro Products Liability Litigation*, 230 F.R.D. 555 (E.D. Ark. 2005), though in that case the court' decision not to certify the class was not based solely on individual questions of fact - - instead, the court found that "the state-by-state variations in law trump the common issues of law or fact, and preclude a finding that common issues predominate." *Id.* at 566. For the reasons stated above, Defendant's reliance upon *In re Rezulin Prods. Liab. Litig* and *Sweet v. Pfizer*, other pharmaceutical products liability cases, are distinguishable for the very same reasons.

affirmative defense that should not alone defeat class certification in this case. *See Dale v. DaimlerChrysler Corporation,* - - S.W.3d - --, 2006 WL 1792414 at *14 (Mo. Ct. App. 2006). For all these reasons, the Court rejects Defendant's arguments that the learned intermediary doctrine and reliance on the part of Plaintiffs or Plaintiffs' physicians somehow defeats the common issues in this case.[5]

### 6. Plaintiffs Have Pleaded Ascertainable Loss On A Class-Wide Basis.

Defendant argues that the jury would need to engage in an individualized inquiry to determine which proposed class members suffered ascertainable loss. Plaintiffs are not required to prove ascertainable loss at the class certification stage - - they are merely required to plead ascertainable loss and have done so. Plaintiffs have alleged that they have "suffered economic

---

[5] Although the Court need not decide this legal issue at the class certification stage based upon the above findings, another reason the learned intermediary doctrine may have no application at trial here is that it is a common law defense and may not apply to a statutory claim, particularly one based upon a remedial statute designed to protect the consuming public. It may be inconsistent with the spirit and intent of the MMPA to apply such a defense to provide immunity to drug manufacturers that allegedly misled the public. Other courts in similar circumstances have so held. *See e.g., Griffith v. Blatt,* 51 P.3d 1256 (Or. 2002) (defense of learned intermediary doctrine, a common law defense, could not be asserted in statutory product liability action); *Larkin v. Pfizer, Inc.,* 153 S.W.3d 758, 767 (Ky. 2004).

The Court further notes that, given the massive direct-to-consumer advertising alleged here, the fundamental justification for the doctrine - - that patients rely solely on their doctors to choose which prescription drugs they take - - simply may not exist in this case. "The learned intermediary doctrine arises when a product manufacturer has little or no contact with the ultimate user." *Bean v. Baxter Healthcare Corp.,* 965 S.W.2d 656 (Tex. Ct. App. 1998). Courts have held that "consumer-directed advertising of pharmaceuticals thus belies each of the premises on which the learned intermediary doctrine rests." *Perez v. Wyeth Laboratories, Inc.,* 161 N.J. 1, 19, 734 A.2d 1245 (N.J. 1999). The New Jersey Supreme Court has specifically rejected application of the learned intermediary doctrine in cases of direct-to-consumer advertising. *Id.* In *Perez,* the court observed that "[w]hen mass marketing of prescription drugs seeks to influence a patient's choice of a drug, a pharmaceutical manufacturer that makes direct claims to consumers for the efficacy of its product should not be unqualifiedly relieved of a duty to provide proper warnings of the dangers or side effects of the product." *Id.* at 5 (holding that when a drug manufacturer has advertised its drug directly to consumers, the role of the physician in prescribing drugs does not break the chain of causation for manufacturer's failure to warn patient of harmful side effects); *see also Stephens v. G.D. Searle & Co.,* 602 F. Supp. 379 (E.D. Mich. 1985) (applying Michigan law); *Hill v. Searle Laboratories,* 884 F.2d 1064, 1070-71 (8th Cir. 1989) (holding that manufacturers of contraceptives are required to warn the consumers of their products based, in part, on the fact that they directly advertise the product to consumers); *Garside v. Osco Drug, Inc.,* 764 F. Supp. 208, 211 n.4 (D. Mass. 1991) (recognizing the validity of the direct-to-consumer advertising exception to the learned intermediary doctrine), *rev'd on other grounds,* 976 F.2d 77 (1st Cir. 1992).

damages in that the product they and other class members purchased was worth less than the product they thought they had purchased had Defendant's representations been true." Second Amended Class Action Petition at ¶ 55. Economic damages plainly constitute an "ascertainable loss of money" under the MMPA. Mo. Rev. Stat. §407.025.1. Thus, Plaintiffs have easily satisfied the requirement that they plead ascertainable loss. *See e.g., Clement v. St. Charles Nissan, Inc.*, 103 S.W.3d 898, 900-01 (reversing trial court's decision to dismiss MMPA action on the ground the plaintiff had failed to sufficiently allege ascertainable loss). Plaintiffs also have plainly done so on a class-wide basis - - the product all "class members purchased was worth less than the product they thought they had purchased." Second Amended Class Action Petition at ¶ 55.

In *Craft*, the court rejected defendants' argument that plaintiff had suffered no economic damages. *Craft*, 2003 WL 23139381 at *1.[6] The court pointed out that "[g]iven a broad and liberal intendment," plaintiff's allegations of economic loss were all that were required under the MMPA. *Id.* at *5. The court then pointed out that Missouri, unlike many states, has adopted the more "liberal benefit-of-the-bargain rule" as the appropriate measure of damages for claims brought under the MMPA. *Id.* at *6-9. Under that rule, plaintiff was entitled to prove damages by showing the actual value of the Marlboro Lights purchased as compared to the value of the Marlboro Lights if they had been as represented (i.e., lower tar and nicotine and therefore safer from a health perspective). *Id.* As in *Craft*, there can be no logical question that Vioxx would have been worth more if it had been as represented (i.e. relatively safe) than it actually was (i.e.

---

[6] This Court acknowledges that the Circuit Court's opinion in *Craft* is not controlling authority because it was superseded on appeal. The Missouri Court of Appeals held that the trial court's analysis of the benefit of the bargain rule was "surplusage" because it is "not appropriate to resolve damage theories at the class certification stage." *Craft*, 190 S.W.3d at 385 (citation omitted). This Court will disregard Merck's damage theory argument because it is not appropriate to consider such theories at this stage of the litigation.

significantly more likely to cause heart attack and stroke than other, less costly, equally efficacious pain medications).

Defendant argues that, in order to determine ascertainable loss, the jury would need to determine whether each putative class member would have stopped taking Vioxx, what, if any, alternative treatment a plaintiff would have used in light of the plaintiff's medical history, and whether the alternative drug would have cost more or less than Vioxx.  Defendant is mistaken because each Plaintiff has suffered an ascertainable loss by having made some form of payment for Vioxx.  The fact that further information may be needed to determine the exact amount of damages each Plaintiff and member of the Class suffered does not render a class unmanageable or defeat class certification.  *See Doyle v. Fluor Corporation*, 2006 WL 1735221 at *4 (Mo. Ct. App. 2006).

Plaintiffs and the members of the Class suffered ascertainable loss due to the simple fact that they allegedly paid artificially inflated prices for a product that Defendant advertised as safe. In certifying this class, the Court will adopt the reasoning of the *Craft* court:

> As the Court sees it, however, whether the product is jewelry or a pack of Light cigarettes, it simply doesn't matter what reason or motivation individual class members may have had for choosing to purchase the product.  They purchased a product that was misrepresented and that, if Plaintiff's allegations here are to be believed, would have had greater economic value if the false representations had been true.  That is consumer fraud if the allegations are true, and is compensable under the benefit-of-the-bargain rule.

*Craft*, 2003 WL 23355745 at *8.  The Court finds that Plaintiffs have met the test for ascertainable loss.

In summary, none of Merck's arguments cause this Court to believe that common issues do not predominate over individual issues.  Specifically, the Court finds that whether Merck's failure to disclose and active concealment of Vioxx's alleged adverse health risks constitute a

violation of the MMPA is a common issue that predominates over any individual issues in the case. Therefore, the Court finds that the predominance test is satisfied here.

### F. Superiority

Certification under Rule 52.08(b)(3) requires that the Court find that the class action is "superior" to other available methods for the fair and efficient adjudication of the controversy. Rule 52.08(b)(3) lists four factors "pertinent" to a finding of superiority: "(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of the class action."

The Court finds no single individual would, as a practical matter, be able to retain counsel and effectively prosecute this type of consumer protection claim against Merck. The Court thus finds that no class member has an incentive to control the prosecution of an individual case. Joinder of or intervention by the thousands of class members as actual parties in this case would be impractical or unmanageable. With thousands of class members, clearly no superior method to a class action exists to efficiently consider and resolve thousands of claims in the State of Missouri. The Court is convinced that the issues proposed to be resolved by the Plaintiffs in this case can be effectively tried in a single case and that this case will be manageable. Certifying this case as a class action on these issues will materially advance the litigation and be far more efficient than separately hiring experts in each case and having the same issues tried multiple times in different courts around the state with many potentially differing results. In making this finding, the Court is aware that questions concerning the *amount* of damages may

remain for some class members even if Plaintiffs are successful.   For these reasons, the superiority requirement is satisfied.

## ORDERS

IT IS HEREBY ORDERED that Plaintiffs' Amended Motion for Class Certification is GRANTED and that this action shall proceed as a class action.

IT IS FURTHER ORDERED that Plaintiffs, Mary Plubell and Ted Ivey, are appointed as representatives of a class of Plaintiffs defined as:

All Missouri residents who purchased Vioxx for personal or family use.[7]

IT IS FURTHER ORDERED that Stueve Siegel Hanson Woody LLP and Gray, Ritter & Graham, P.C. are appointed as class counsel.

IT IS FURTHER ORDERED that within 30 days of this Order, or within 30 days of the mandate to this Court after any appeal of this Order, the parties shall meet and confer on the issue of class notice and submit a joint proposal for giving notice of this action to the Class.  If the parties cannot agree on a joint proposal, they shall submit separate proposals to the Court.

Dated:  JUNE 12, 2008

W STEPHEN NIXON
Judge

A TRUE COPY - ATTEST
CIRCUIT COURT OF JACKSON COUNTY, MO
COURT ADMINISTRATOR'S OFFICE
DEPARTMENT OF CIVIL RECORDS

BY _____ DCA

---

[7] Excluded from the Class are: Defendant, including any parent, subsidiary, affiliate or controlled person of Defendant; Defendant's officers, directors, agents or employees; the judicial officers assigned to this litigation; and members of their staffs and immediate families.  Also excluded from the Class are those claiming they have suffered a personal injury as a result of taking Vioxx.

**Certificate of Service**

This is to certify that a copy of
the foregoing was mailed postage
pre-paid or hand delivered to the
following on JUNE 12, 2008.

Copies to:

JOHN CHRISTIAN AISENBREY
1201 WALNUT, SUITE 2800
KANSAS CITY, MO 64108

PATRICK JOSEPH STUEVE
STUEVE SIEGEL HANSON LLP
460 NICHOLS ROAD, SUITE 200
KANSAS CITY, MO 64112

JOHN H BEISNER
1625 EYE ST N.W
WASHINGTON, DC 20006

JESSICA DAVIDSON MILLER
1625 EYE ST N.W
WASHINGTON, DC 20006


*/s/ Sue Akers*

_____
Judicial Administrative Assistant