# EXHIBIT B

**289 S.W.3d 707**
**(Cite as: 289 S.W.3d 707)**

▷

Missouri Court of Appeals,
Western District.
Mary PLUBELL, et al., Respondent,
v.
MERCK & CO., INC., Appellant.

No. WD 69808.
May 12, 2009.
Motion for Rehearing and/or Transfer to Supreme
Court Denied June 23, 2009.
Application for Transfer Denied Sept. 1, 2009.

**Background:** Patients who were prescribed non-steroidal anti-inflammatory drug, rofecoxib, filed action as putative class representatives against manufacturer under Merchandising Practices Act (MPA) seeking economic damages for unlawful practices including deception, false promises, and misrepresentation, concealment, suppression, or omission of material facts by failing to disclose and actively concealing risks. The Circuit Court, Jackson County, William Stephen Nixon, J., 2008 WL 4771525, certified the class. Manufacturer appealed.

**Holdings:** The Court of Appeals, Thomas H. Newton, C.J., held that:
(1) legality of manufacturer's conduct in failing to disclose and concealing safety risks satisfied predominance requirement for class certification;
(2) patients were not required to show manufacturer's knowledge of drug's risks or individualized evidence as to the manufacturer's representation at the time of each class member's purchase; and
(3) patients met typicality requirement to be class representatives.

Affirmed.

West Headnotes

[1] Appeal and Error 30 ⚷913

30 Appeal and Error
 30XVI Review
  30XVI(G) Presumptions
   30k913 k. Parties. Most Cited Cases

When appellate courts review class certification, the named plaintiffs' allegations are accepted as true.

[2] Parties 287 ⚷35.9

287 Parties
 287III Representative and Class Actions
  287III(A) In General
   287k35.9 k. Discretion of Court. Most Cited Cases

Whether to certify a class is committed to the trial court's discretion. V.A.M.R. 52.08.

[3] Appeal and Error 30 ⚷840(4)

30 Appeal and Error
 30XVI Review
  30XVI(A) Scope, Standards, and Extent, in General
   30k838 Questions Considered
    30k840 Review of Specific Questions and Particular Decisions
     30k840(4) k. Review of Questions of Pleading and Practice. Most Cited Cases

Court of Appeals reverses class certification only if ruling is so arbitrary and unreasonable as to shock one's sense of justice and indicate a lack of careful consideration.

[4] Antitrust and Trade Regulation 29T ⚷128

29T Antitrust and Trade Regulation
 29TIII Statutory Unfair Trade Practices and Consumer Protection
  29TIII(A) In General
   29Tk126 Constitutional and Statutory Provisions
    29Tk128 k. Purpose and Construction in General. Most Cited Cases

Purpose of Merchandising Practices Act (MPA) is to preserve fundamental honesty, fair play, and right

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

289 S.W.3d 707
**(Cite as: 289 S.W.3d 707)**

dealings in public transactions. V.A.M.S. § 407.010 et seq.

**[5] Parties 287 🔑35.5**

287 Parties
    287III Representative and Class Actions
        287III(A) In General
            287k35.5 k. Factors, Grounds, Objections, and Considerations in General. Most Cited Cases

At the class certification stage, court's concern is whether the plaintiffs have met the class action requirements. V.A.M.R. 52.08.

**[6] Parties 287 🔑35.37**

287 Parties
    287III Representative and Class Actions
        287III(B) Proceedings
            287k35.37 k. Consideration of Merits. Most Cited Cases

Because the question of class certification is procedural, court does not inquire whether the plaintiffs will prevail on the merits or even whether the plaintiffs have stated a cause of action; in fact, the trial court has no authority to conduct even a preliminary inquiry into these issues. V.A.M.R. 52.08.

**[7] Parties 287 🔑35.31**

287 Parties
    287III Representative and Class Actions
        287III(B) Proceedings
            287k35.31 k. In General; Certification in General. Most Cited Cases

Because class certification may be modified or even terminated before a decision on the merits, court errs on the side of allowing the action. V.A.M.R. 52.08.

**[8] Parties 287 🔑35.17**

287 Parties
    287III Representative and Class Actions
        287III(A) In General
            287k35.17 k. Community of Interest; Commonality. Most Cited Cases

The predominance inquiry for class certification asks whether the class is seeking to remedy a common legal grievance. V.A.M.R. 52.08(b)(3).

**[9] Parties 287 🔑35.17**

287 Parties
    287III Representative and Class Actions
        287III(A) In General
            287k35.17 k. Community of Interest; Commonality. Most Cited Cases

Predominance does not require that all issues be common to the class members. V.A.M.R. 52.08(b)(3).

**[10] Parties 287 🔑35.17**

287 Parties
    287III Representative and Class Actions
        287III(A) In General
            287k35.17 k. Community of Interest; Commonality. Most Cited Cases

Predominance element of class action claims requires that common issues substantially predominate over individual ones. V.A.M.R. 52.08(b)(3).

**[11] Parties 287 🔑35.17**

287 Parties
    287III Representative and Class Actions
        287III(A) In General
            287k35.17 k. Community of Interest; Commonality. Most Cited Cases

For purposes of predominance inquiry for class certification, if the same evidence on a given question will suffice for each class member to make a prima facie showing as to a given question, then it is common legal grievance, but if the evidence on the question varies from member to member, then it is an individual issue. V.A.M.R. 52.08(b)(3).

**[12] Parties 287 🔑35.17**

287 Parties
    287III Representative and Class Actions

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

289 S.W.3d 707
(Cite as: 289 S.W.3d 707)

287III(A) In General
287k35.17 k. Community of Interest; Commonality. Most Cited Cases

Common issues need not be dispositive of the case in order to satisfy predominance requirement for class certification. V.A.M.R. 52.08(b)(3).

[13] Parties 287 ⟲35.17

287 Parties
287III Representative and Class Actions
287III(A) In General
287k35.17 k. Community of Interest; Commonality. Most Cited Cases

A single common issue may be the overriding one used to satisfy predominance element of class action claims, despite the fact that the suit also entails numerous remaining individual questions. V.A.M.R. 52.08(b)(3).

[14] Parties 287 ⟲35.71

287 Parties
287III Representative and Class Actions
287III(C) Particular Classes Represented
287k35.71 k. Consumers, Purchasers, Borrowers, or Debtors. Most Cited Cases

Predominance did not require that a single body of evidence satisfied the prima facie elements of a Merchandising Practices Act (MPA) claim on behalf of every putative class member; rather, it required at least one significant fact question or issue, dispositive or not, that was common within the class's claim. V.A.M.S. § 407.010 et seq.; V.A.M.R. 52.08(b)(3).

[15] Parties 287 ⟲35.71

287 Parties
287III Representative and Class Actions
287III(C) Particular Classes Represented
287k35.71 k. Consumers, Purchasers, Borrowers, or Debtors. Most Cited Cases

Legality was a common issue satisfying predominance requirement for class certification in Merchandising Practices Act (MPA) action against manufacturer of non-steroidal anti-inflammatory drug, rofecoxib; class members were not required to show manufacturer's knowledge of the risks, each physician's and consumer's reliance on the misrepresentation, class members' actions had the drug not been misrepresented and the risks known, or loss by individually proving cost of alternative therapy, and since patients alleged misrepresentation throughout the class period, individualized evidence as to the representation at the time of each class member's purchase was not required. V.A.M.S. § 407.010 et seq.; V.A.M.R. 52.08.

[16] Antitrust and Trade Regulation 29T ⟲222

29T Antitrust and Trade Regulation
29TIII Statutory Unfair Trade Practices and Consumer Protection
29TIII(C) Particular Subjects and Regulations
29Tk222 k. Health Care and Medical Insurance. Most Cited Cases

Patients could demonstrate unlawful practice under Merchandising Practices Act (MPA) by drug manufacturer's conduct, irrespective of mental state; MPA did not put forth a scienter requirement for civil liability, and manufacturer's conduct, rather than intent, determined whether or not violation occurred. V.A.M.S. § 407.010 et seq.

[17] Antitrust and Trade Regulation 29T ⟲136

29T Antitrust and Trade Regulation
29TIII Statutory Unfair Trade Practices and Consumer Protection
29TIII(A) In General
29Tk133 Nature and Elements
29Tk136 k. Fraud; Deceit; Knowledge and Intent. Most Cited Cases

Antitrust and Trade Regulation 29T ⟲138

29T Antitrust and Trade Regulation
29TIII Statutory Unfair Trade Practices and Consumer Protection
29TIII(A) In General
29Tk133 Nature and Elements
29Tk138 k. Reliance; Causation; Injury, Loss, or Damage. Most Cited Cases

Merchandising Practices Act (MPA) supplements

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

289 S.W.3d 707
**(Cite as: 289 S.W.3d 707)**

the definition of common law fraud, eliminating the need to prove an intent to defraud or reliance. V.A.M.S. § 407.010 et seq.

**[18] Antitrust and Trade Regulation 29T ⬅136**

29T Antitrust and Trade Regulation
    29TIII Statutory Unfair Trade Practices and Consumer Protection
        29TIII(A) In General
            29Tk133 Nature and Elements
                29Tk136 k. Fraud; Deceit; Knowledge and Intent. Most Cited Cases

**Antitrust and Trade Regulation 29T ⬅162**

29T Antitrust and Trade Regulation
    29TIII Statutory Unfair Trade Practices and Consumer Protection
        29TIII(B) Particular Practices
            29Tk162 k. Omissions and Other Failures to Act in General; Disclosure. Most Cited Cases

Claim under the Merchandising Practices Act (MPA) alleging omission of a material fact has a scienter requirement; it is a failure to disclose material facts that are known to defendant or upon reasonable inquiry would be known to him or her. V.A.M.S. § 407.010 et seq.; 15 Mo.Code of State Regulations 60–9.110.

**[19] Parties 287 ⬅35.17**

287 Parties
    287III Representative and Class Actions
        287III(A) In General
            287k35.17 k. Community of Interest; Commonality. Most Cited Cases

Predominance inquiry for class certification looks to the evidence required for the allegations in the petition. V.A.M.R. 52.08(b)(3).

**[20] Antitrust and Trade Regulation 29T ⬅138**

29T Antitrust and Trade Regulation
    29TIII Statutory Unfair Trade Practices and Consumer Protection
        29TIII(A) In General
            29Tk133 Nature and Elements
                29Tk138 k. Reliance; Causation; Injury, Loss, or Damage. Most Cited Cases

Consumer's reliance on an unlawful practice is not required under the Merchandising Practices Act (MPA). V.A.M.S. § 407.010 et seq.; 15 Mo.Code of State Regulations § 60–9.020.

**[21] Antitrust and Trade Regulation 29T ⬅138**

29T Antitrust and Trade Regulation
    29TIII Statutory Unfair Trade Practices and Consumer Protection
        29TIII(A) In General
            29Tk133 Nature and Elements
                29Tk138 k. Reliance; Causation; Injury, Loss, or Damage. Most Cited Cases

Merchandising Practices Act (MPA) does not require that an unlawful practice cause plaintiff to make a purchase. V.A.M.S. § 407.025.

**[22] Antitrust and Trade Regulation 29T ⬅222**

29T Antitrust and Trade Regulation
    29TIII Statutory Unfair Trade Practices and Consumer Protection
        29TIII(C) Particular Subjects and Regulations
            29Tk222 k. Health Care and Medical Insurance. Most Cited Cases

Allegation that non-steroidal anti-inflammatory drug, rofecoxib, was worth less than the product as represented stated an objectively ascertainable loss under Merchandising Practices Act (MPA) using the benefit-of-the-bargain rule. V.A.M.S. § 407.010 et seq.

**[23] Antitrust and Trade Regulation 29T ⬅138**

29T Antitrust and Trade Regulation
    29TIII Statutory Unfair Trade Practices and Consumer Protection
        29TIII(A) In General
            29Tk133 Nature and Elements
                29Tk138 k. Reliance; Causation; Injury, Loss, or Damage. Most Cited Cases

Benefit-of-the-bargain rule, which compares the actual value of the item to the value of the item if it had

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

289 S.W.3d 707
**(Cite as: 289 S.W.3d 707)**

been as represented at the time of the transaction, is applicable in Merchandising Practices Act (MPA) cases to meet the element of ascertainable loss. V.A.M.S. § 407.010 et seq.; MAI No. 4.03.

[24] Parties 287 ☞35.37

287 Parties
    287III Representative and Class Actions
        287III(B) Proceedings
            287k35.37 k. Consideration of Merits. Most Cited Cases

    Whether a plaintiff is able to prove a theory is irrelevant at the class certification stage because the sole issue is whether the certification requirements were met. V.A.M.R. 52.08.

[25] Parties 287 ☞35.71

287 Parties
    287III Representative and Class Actions
        287III(C) Particular Classes Represented
            287k35.71 k. Consumers, Purchasers, Borrowers, or Debtors. Most Cited Cases

    Manufacturer's argument that pharmaceutical pricing did not change according to drug's risk could be presented at trial, but the defense would not cause putative class member's common legal issues to become individual ones under predominance inquiry of class action suit against drug manufacturer under Merchandising Practices Act (MPA). V.A.M.S. § 407.010 et seq.; V.A.M.R. 52.08.

[26] Parties 287 ☞35.71

287 Parties
    287III Representative and Class Actions
        287III(C) Particular Classes Represented
            287k35.71 k. Consumers, Purchasers, Borrowers, or Debtors. Most Cited Cases

    Patients who took prescription drug made by manufacturer met typicality requirement to be class representatives in suit under Merchandising Practices Act (MPA) against manufacturer of non-steroidal anti-inflammatory drug, rofecoxib, although one patient's health insurer paid for drug and other patient allegedly could not prove that statements or omissions caused him to purchase the drug in the first place; defenses that went to the merits of case were not properly considered in class certification phase, logic indicated that many class members' insurers paid for their prescription, and defenses could not be presumed to be individual to class representatives. V.A.M.S. § 407.010 et seq.; V.A.M.R. 52.08(a)(3).

[27] Parties 287 ☞35.13

287 Parties
    287III Representative and Class Actions
        287III(A) In General
            287k35.13 k. Representation of Class; Typicality. Most Cited Cases

    Requirement that class representative's claims are typical of claims of the class is met, even if there are variances in the underlying facts, if (1) the representative's and the class members' claims arise from the same event or course of conduct by the defendant, (2) the conduct and facts give rise to same legal theory, and (3) the underlying facts are not markedly different. V.A.M.R. 52.08(a)(3).

[28] Parties 287 ☞35.13

287 Parties
    287III Representative and Class Actions
        287III(A) In General
            287k35.13 k. Representation of Class; Typicality. Most Cited Cases

    Speculative variations in class claims are not enough to defeat typicality, and the named representative does not have to show a likelihood of individual success on the merits. V.A.M.R. 52.08(a)(3).

[29] Parties 287 ☞35.71

287 Parties
    287III Representative and Class Actions
        287III(C) Particular Classes Represented
            287k35.71 k. Consumers, Purchasers, Borrowers, or Debtors. Most Cited Cases

    Patients who took prescription drug did not have conflicts of interest between themselves and defined class that prevented them from meeting adequacy requirement of rule governing appointment of class

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

representatives in class action suit against manufacturer, and, thus could be appointed class representatives in suit against manufacturer of non-steroidal anti-inflammatory drug, rofecoxib, under Merchandising Practices Act (MPA). V.A.M.S. § 407.010 et seq.; V.A.M.R. 52.08(a)(4).

[30] Parties 287 ⚷ 35.13

287 Parties
    287III Representative and Class Actions
        287III(A) In General
            287k35.13 k. Representation of Class; Typicality. Most Cited Cases

To determine if the adequacy prerequisite of rule governing appointment of class representatives is met, a trial court must consider whether the class representatives have conflicts of interest that would adversely affect the class's interests. V.A.M.R. 52.08(a)(4).

[31] Parties 287 ⚷ 35.13

287 Parties
    287III Representative and Class Actions
        287III(A) In General
            287k35.13 k. Representation of Class; Typicality. Most Cited Cases

Either an actual conflict of interest that would adversely affect the class's interests or a likelihood that such a conflict may exist will cause the putative class representatives to fail the adequacy requirement. V.A.M.R. 52.08(a)(4).

*710 John C. Aisenbrey and George F. Verschelden, Kansas City, MO, for Appellant.

Patrick J. Stueve, Norman E. Siegel, Todd E. Hilton, Kansas City, and Don M. Downing, St. Louis, MO, for Respondent.

Before JAMES E. WELSH, P.J., THOMAS H. NEWTON, C.J., and WILLIAM E. TURNAGE, SR. J.

THOMAS H. NEWTON, Chief Judge.
    Merck & Co., Inc. (Merck) appeals from the trial court's order certifying a class action for claims brought under the Missouri Merchandising Practices Act (MMPA), sections 407.010 to 407.130,[FN1] related to Merck's sale of the drug Vioxx. Merck argues that the class does not meet the requirement that common issues predominate and that the two class representatives, Mary Plubell and Ted Ivey (Plaintiffs), do not meet the requirements of typicality and adequacy. We affirm.

> FN1. All statutory references are to RSMo 2000 and the Cumulative Supplement 2008 unless otherwise indicated. Rule references are to the Missouri Rules of Civil Procedure 2008.

**Factual and Procedural Background**
[1] In May of 1999, Merck received FDA approval to manufacture and market the prescription drug Vioxx.[FN2] Vioxx was sold as a non-steroidal anti-inflammatory drug and pain medication for the treatment of certain arthritic conditions, acute pain, and dysmenorrheal. By the year 2000, the drug's worldwide sales exceeded $2 billion. By 2001, Merck reported that Vioxx was "the world's fastest growing branded prescription" and its second largest-selling medicine.

> FN2. In our review of a class certification, the named plaintiffs' allegations are accepted as true. Hale v. Wal–Mart Stores, Inc., 231 S.W.3d 215, 227 (Mo.App. W.D.2007).

A study performed by Merck between January 1999 and March 2000 (the VIGOR study) showed that people who took Vioxx *711 had a heart attack rate four to five times higher than participants taking naproxen. In June of 2000, an industry-sponsored study showed that Vioxx resulted in an increased risk of hypertension and stroke. According to plaintiffs' allegations, Merck denied and concealed these results. In 1999 and again in 2001, the FDA issued "Warning Letters" to Merck objecting to its promotional materials and representations of Vioxx's risks. Subsequently, studies showing similar results were published in the Journal of the American Medical Association, the Journal of the American College of Cardiology, and the Journal of Science. On September 30, 2004, Merck withdrew Vioxx from the market, citing a clinical trial showing an "increased relative risk for confirmed cardiovascular events."

289 S.W.3d 707
**(Cite as: 289 S.W.3d 707)**

Plaintiffs had been prescribed Vioxx. They filed suit as putative class representatives seeking economic damages under the MMPA for Missouri residents who had purchased Vioxx for personal or family use. They alleged that Merck engaged in unlawful practices, "including deception, false promises, misrepresentation, and/or the concealment, suppression, or omission of material facts," by failing to disclose and actively concealing the drug's risks. They further alleged that they and other class members "suffered economic damages in that the product they and other class members purchased was worth less than the product they thought they had purchased had [Merck's] representations been true." Merck moved for summary judgment, claiming that Ms. Plubell's insurance paid for her Vioxx prescription and that she could not state a claim under the MMPA. The trial court denied the motion. Merck filed a motion to dismiss, claiming Plaintiffs had failed to allege an ascertainable loss or that Merck had caused any ascertainable loss. The trial court denied the motion. Plaintiffs moved for class certification. After a hearing, the trial court certified a class consisting of all Missouri residents who purchased Vioxx for personal or family use, but excluding those who claimed personal injury as a result of taking Vioxx. Merck sought and obtained this court's permission to appeal the class certification.

**Standard of Review**
[2][3] Whether to certify a class is committed to the trial court's discretion. *Dale v. DaimlerChrysler Corp*, 204 S.W.3d 151, 163–64 (Mo.App. W.D.2006). We reverse only if its ruling "is so arbitrary and unreasonable as to shock one's sense of justice and indicate a lack of careful consideration." *Id.* at 164 (quoting *Koger v. Hartford Life Ins. Co.*, 28 S.W.3d 405, 410 (Mo.App. W.D.2000)). This may occur where the court certifies the class because of an erroneous conclusion of law or without a rational basis in the record. *Id.*

**Legal Analysis**
[4] "The purpose of Missouri's Merchandising Practices Act is to preserve fundamental honesty, fair play and right dealings in public transactions." *Schuchmann v. Air Servs. Heating & Air Conditioning, Inc.*, 199 S.W.3d 228, 233 (Mo.App. S.D.2006) (internal quotation marks and citation omitted). The MMPA prohibits "deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce" by defining such activity as an unlawful practice. § 407.020.1. Civil actions may be brought under the MMPA to recover actual damages by "[a]ny person who purchases or leases merchandise primarily for personal, family or household purposes and thereby suffers an ascertainable loss of money or property, real or personal, as a result of *712 [an unlawful practice]." § 407.025.1. The MMPA also specifically authorizes class actions where an unlawful practice "has caused similar injury to numerous other persons." § 407.025.2. The requirements for an MMPA class action are essentially identical to the requirements under Rule 52.08 and Federal Rule 23, and the MMPA provides that a class action under it should be maintained consistently with those rules. *Dale*, 204 S.W.3d at 161.

Rule 52.08(a) sets out four prerequisites for class certification, which are commonly referred to as numerosity, commonality, typicality, and adequacy.[FN3] The action must also satisfy one of three requirements under Rule 52.08(b). *Id.* at 165. Here, the trial court found the action met the predominance requirement of Rule 52.08(b)(3). This provision requires, *inter alia*, that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members." On appeal, Merck contends that the trial court erred in certifying the class because the class does not meet the predominance, typicality, and adequacy requirements.

FN3. Rule 52.08(a) provides:

(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

*Predominance*
In its first point, Merck asserts that the trial court erred in finding the predominance requirement satisfied because "no single body of evidence would suf-

fice to satisfy the *prima facie* elements of an MMPA claim on behalf of every putative class member."

[5][6][7] At the class certification stage, our concern is whether the plaintiffs have met the class action requirements. *Craft v. Philip Morris Cos.*, 190 S.W.3d 368, 377 (Mo.App. E.D.2005). Because the question of class certification is procedural, we do not inquire whether the plaintiffs will prevail on the merits or even whether the plaintiffs have stated a cause of action. *Id.* In fact, "[t]he trial court has no authority to conduct even a preliminary inquiry" into these issues. *Wright v. Country Club of St. Albans*, 269 S.W.3d 461, 465 (Mo.App. E.D.2008). Moreover, because class certification may be modified or even terminated before a decision on the merits, we err on the side of allowing the action. *Dale*, 204 S.W.3d at 164.

[8][9][10][11][12][13] The predominance inquiry for class certification asks whether the class is "seeking to remedy a common legal grievance." *Id.* at 175 (internal quotation marks and citation omitted). "Predominance" does not require that all issues be common to the class members. *Id.* Rather, it requires that common issues substantially predominate over individual ones. *Craft*, 190 S.W.3d at 381. To classify an issue as common or individual, a court looks to the nature of the evidence required to show the allegations of the petition. *Id.* at 382. If the same evidence on a given question will suffice for each class member, then it is common; if the evidence on the question varies from member to member, then it is an individual issue. *Id.* Thus, " 'if the same evidence will suffice for each member to make a *prima facie* showing as to *a given question*, then it is a common question.' " *Dale*, 204 S.W.3d at 176 (quoting *Craft*, 190 S.W.3d at 382) (emphasis added). These common issues need not be dispositive of the case. *713 Craft*, 190 S.W.3d at 381. Additionally, " '[a] single common issue may be the overriding one in the litigation, despite the fact that the suit also entails numerous remaining individual questions.' " *State ex rel. Am. Family Mut. Ins. Co. v. Clark*, 106 S.W.3d 483, 488 (Mo. banc 2003) (quoting Alba Conte & Herbert Newberg, *Newberg on Class Actions* § 4.25, at 172 (4th ed.2002)).

[14][15] Consequently, predominance does not require that a single body of evidence satisfy the *prima facie* elements of an MMPA claim on behalf of every putative class member. Rather, it requires "at least one significant fact question or issue, dispositive or not," that is common within the class's claim. *See Dale*, 204 S.W.3d at 176. In the present case, the trial court found that the central issue in plaintiffs' suit is whether Merck violated the MMPA by failing to disclose and concealing Vioxx's safety risks. Because that issue—the legality of Merck's conduct—is common to all the Missouri class members, and because that issue is at the core of the case, the court did not abuse its discretion in finding the predominance requirement satisfied.

Further, in its attempt to show that common issues do not predominate in the class, Merck mischaracterizes the showing required under the MMPA. It claims that Plaintiffs must show deception, ascertainable loss, and causation, and that individual issues on these elements overwhelm common ones. It argues Plaintiffs will have to prove Merck's knowledge of Vioxx's risks and its representations about Vioxx at the time of each class member's purchase, each prescribing physician's knowledge of the risks, whether a different representation would have affected the class member's taking of Vioxx, and the cost of a substitute for Vioxx.

[16][17][18] First, Plaintiffs' MMPA claim does not require proof of Merck's knowledge. The MMPA "supplements the definition of common law fraud, eliminating the need to prove an intent to defraud or reliance." *Schuchmann*, 199 S.W.3d at 233. The statute does not put forth a scienter requirement for civil liability: "It is the defendant's conduct, not his intent, which determines whether a violation has occurred." *State ex rel. Webster v. Areaco Inv. Co.*, 756 S.W.2d 633, 635 (Mo.App. E.D.1988).[FN4] Because an unlawful practice *714 under the MMPA may be demonstrated by the defendant's conduct—irrespective of mental state—Merck's knowledge of Vioxx's risks at the time of each class member's purchase is not an issue on which Plaintiffs will have to present individualized proof.

> FN4. The statute's governing regulations specifically exclude the defendant's knowledge as an element of deception and misrepresentation and do not require proof of knowledge for concealment or suppression. Establishing deception under the Act does not depend on the defendant's "actual deception, *knowledge of deception,* intent to mislead or deceive, *or any other culpable mental state* such as recklessness or negligence." 15

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

289 S.W.3d 707
(Cite as: 289 S.W.3d 707)

CSR § 60–9.020 (emphasis added). Similarly, misrepresentation is "an assertion that is not in accord with the facts" and "knowledge that the assertion is false or misleading ... or any other capable mental state" is not required. *Id.* at § 60–9.070. Concealment is "any method, act, use or practice which operates to hide or keep material facts from consumers"; suppression is "any method, act, use or practice which is likely to curtail or reduce the ability of consumers to take notice of material facts which are stated." *Id.* at § 60–9.110. By comparison, omission of a material fact under the MMPA does have a scienter requirement: it is a failure to disclose material facts that are "*known to him/her,* or upon reasonable inquiry *would be known to him/her.*" *Id.* at § 60–9.110; *see also Hess v. Chase Manhattan Bank, USA, N.A.,* 220 S.W.3d 758, 774 (Mo. banc 2007) (omission under the MMPA "imposes a broader duty on sellers than the common law imposes for fraud liability, as a fraud claim requires the seller to have actual knowledge of the material facts"). By contrast, *criminal* liability under the MMPA requires an explicit *mens rea* of "*willfully* and *knowingly* engag[ing] in any act, use, employment or practice declared to be unlawful by this section with the *intent to defraud.*" § 407.020.3 (emphasis added).

[19] Second, the predominance inquiry looks to the evidence required for the allegations in the petition. *Craft,* 190 S.W.3d at 382. As the trial court noted, plaintiffs alleged "a consistent pattern of deception ... from the time the drug came onto the market until the time it was withdrawn ... that Merck was violating the [MMPA] *at any point and at all points* during the class period." (emphasis added.) Because Plaintiffs alleged Merck misrepresented Vioxx throughout the entire class period, individualized evidence as to the company's representation at the time of each class member's purchase will not be required. Additionally, an MMPA violation occurs regardless of whether the unlawful practice is committed "before, during or after the sale." § 407.020.1. Consequently, the evidence required to show that Merck engaged in an unlawful practice—namely, Merck's conduct—is not overwhelmed by individual issues, regardless of when—and for how long—each member purchased the drug.

[20] Third, individualized evidence of each physician's and consumer's reliance on the misrepresentation is not required. Both our case law and the governing regulations make clear that the consumer's reliance on an unlawful practice is not required under the MMPA. *Hess v. Chase Manhattan Bank, USA, N.A.,* 220 S.W.3d 758, 774 (Mo. banc 2007); *Schuchmann,* 199 S.W.3d at 232; *State ex rel. Nixon v. Beer Nuts, Ltd.,* 29 S.W.3d 828, 837 (Mo.App. E.D.2000). The regulations specifically provide that reliance is not an element of deception or misrepresentation. 15 CSR §§ 60–9.020, –9.070. Likewise, "[r]eliance and intent that others rely upon such concealment, suppression or omission are not elements of concealment, suppression or omission." *Id.* § 60–9.110. Plaintiffs are thus not required to prove they or their physicians relied on Merck's alleged misrepresentations about Vioxx, and consequently, they are not required to offer individualized proof that the misrepresentation colored the decision to take Vioxx.

Finally, a civil action under the MMPA requires that the litigant "suffers an ascertainable loss of money or property, real or personal, as a result of [an unlawful practice]." § 407.025. Merck argues that in order to prove "loss," each plaintiff will have to show causation—that they would not have used Vioxx had the risks been known—as well as demonstrate the amount the plaintiff would have paid for alternative therapy. However, Plaintiffs' claim does not require these subjective, individualized inquiries.

[21] The MMPA does not require that an unlawful practice cause a "purchase." A civil suit may be brought by "[a]ny person who purchases or leases merchandise primarily for personal, family or household purposes and *thereby suffers an ascertainable loss* of money or property, real or personal, *as a result of* [an unlawful practice]." § 407.025. "[A]s a result of" modifies "ascertainable loss"; it does not modify "purchases or leases." Thus, a plaintiff's *loss* should be a result of the defendant's unlawful practice, but the statute does not require that the *purchase* be caused by the unlawful practice. Therefore, the class members are not individually required to show what they would or would not have done had the product not been misrepresented and the risks known.

[22][23][24][25] Nor does the MMPA require each Plaintiff to prove "loss" by individually*715

289 S.W.3d 707
(Cite as: 289 S.W.3d 707)

showing the cost of alternative therapy. Plaintiffs alleged, "[t]he product they and other class members purchased was worth less than the product they thought they had purchased had [Merck's] representations been true." The trial court found they had alleged an ascertainable loss under the benefit-of-the-bargain rule, which compares the actual value of the item to the value of the item if it had been as represented at the time of the transaction. See *Schoenlein v. Routt Homes, Inc.*, 260 S.W.3d 852, 854 (Mo.App. E.D.2008). The rule is part of our standard instructions for damages in misrepresentation cases. See MAI 4.03. The rule is also applicable in MMPA cases to meet the element of ascertainable loss. *Schoenlein*, 260 S.W.3d at 854. Here, because Plaintiffs alleged Vioxx was worth less than the product as represented, they stated an objectively ascertainable loss under the MMPA using the benefit-of-the-bargain rule. Whether a plaintiff is able to prove a theory is irrelevant at the class certification stage because the sole issue is whether the certification requirements were met. See *Meyer ex rel. Coplin v. Fluor Corp.*, 220 S.W.3d 712, 719 (Mo. banc 2007).[FN5]

> FN5. Merck also argues that pharmaceutical pricing does not change according to the product's risk. Should it wish, Merck may present this argument at trial, but the defense does not cause plaintiffs' common legal issues to become individual ones.

Consequently, Merck has not shown that individualized issues predominate over common ones. Because "there is at least one significant fact question or issue, dispositive or not," that is common to the class, the trial court did not abuse its discretion in finding Rule 52.08(b)(3)'s predominance requirement was met. See *Dale*, 204 S.W.3d at 176. Merck's first point is denied.[FN6]

> FN6. Although Merck refers us to cases in other jurisdictions that have found putative classes based on Vioxx pharmaceutical claims to fail the predominance requirement, the allegations in those cases differ markedly from the issues raised by this suit or the protections afforded by the MMPA. See, e.g., *In re Vioxx Products Liab. Litig.*, 239 F.R.D. 450, 461–63 (E.D.La.2006) (denying certification for a national class based on personal injury and wrongful death claims sounding in tort because of variations in applicable states' laws and individualized factual issues).

*Typicality and Adequacy*

[26] In its second point, Merck argues that Ms. Plubell and Mr. Ivey are not typical or adequate as class representatives because the facts underlying each plaintiff's claim fails to meet the elements required by the MMPA. It asserts that Ms. Plubell cannot "possibly demonstrate" ascertainable loss because her insurance provider paid for her Vioxx prescription, and Mr. Ivey cannot "prove that Merck's statements or omissions caused him to purchase Vioxx in the first place."

[27][28] A class representative's claims must be typical of the claims of the class. Rule 52.08(a)(3). The requirement is met, even if there are variances in the underlying facts, if: (1) the representative's and the class members' claims arise from the same event or course of conduct by the defendant, (2) the conduct and facts give rise to same legal theory, and (3) the underlying facts are not "markedly different." *Dale*, 204 S.W.3d at 169. Speculative variations in the class claims are not enough to defeat typicality, and the named representative does not have to show a likelihood of individual success on the merits. *Id.* at 172.

Here, both Ms. Plubell and Mr. Ivey's claims arise from Merck's sale of Vioxx in Missouri and its alleged misrepresentations as to the drug's risks, giving rise to *716 the legal theory of an unlawful practice under the MMPA. The conduct attributed to the defendant is the same for the representatives' claims as it is for the class claims; so is the legal theory. Further, the underlying facts of each named plaintiff's case are not "markedly different" from those of the class.

Merck's contentions that Ms. Plubell did not "purchase" Vioxx, and the legal effect thereof, are, first, defenses that go to the merits of the case and are not properly considered in class certification. Second, Merck fails to explain how these issues make Ms. Plubell's claims atypical of the class; common logic would indicate that many of the class members' insurers paid for their Vioxx prescriptions. Consequently, Merck has not shown that the trial court abused its discretion in finding Ms. Plubell met the requirement of typicality.

Merck's argument that Mr. Ivey is an improper

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

289 S.W.3d 707
**(Cite as: 289 S.W.3d 707)**

class representative is similarly flawed. It contends Mr. Ivey's claim fails because he cannot prove ascertainable loss because he cannot show that he would not have purchased Vioxx had he been informed of the risks. Otherwise stated, Merck again injects reliance into the MMPA to argue Mr. Ivey's claims are atypical. First, this is a defense going to the merits of the case and is not a proper consideration for class certification. Second, even if it were properly considered, the defense relies on the same misconception of causation and reliance under the MMPA as in Merck's predominance argument previously rejected. Third, Merck's defense on this issue cannot be presumed to be individual to Mr. Ivey and thus "atypical." Consequently, Merck also failed to show the trial court abused its discretion in finding Mr. Ivey's class representation met the typicality requirement.

[29][30][31] Merck's final contention that Plaintiffs are inadequate class representatives is also without merit. To determine if the adequacy prerequisite of Rule 52.08 is met, a trial court must consider whether the class representatives have conflicts of interest that would adversely affect the class's interests. *Dale,* 204 S.W.3d at 172–73. "This requirement is particularly important because the due process rights of absentee class members may be implicated if they are bound by a final judgment in a suit where they were inadequately represented by the named plaintiff." *Craft,* 190 S.W.3d at 379 (internal quotation marks and citation omitted). Either an actual conflict or "a likelihood that such a conflict may exist" will cause the representatives to fail the adequacy requirement. *Dale,* 204 S.W.3d at 173.

Here, the trial court found the class representatives adequate; they "have no interests adverse to those of the proposed class and ... they have vigorously prosecuted this action." Other than arguments as to the merits of Plaintiffs' cases, Merck has pointed to no conflicts of interest between Ms. Plubell, Mr. Ivey, and the defined class. Consequently, the trial court did not abuse its discretion in finding Plaintiffs satisfied the adequacy requirement. Merck's second point is therefore denied.

### Conclusion

For the foregoing reasons, the trial court's order granting class certification is affirmed.

WELSH, P.J., and TURNAGE, SR. J., concur.

Mo.App. W.D.,2009.
Plubell v. Merck & Co., Inc.
289 S.W.3d 707

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.