# EXHIBIT E

IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
AT INDEPENDENCE

| | |
|---|---|
| MARY PLUBELL, on behalf of herself and all others similarly situated, ) ) ) | |
| TED IVEY, on behalf of himself and all others similarly situated, ) ) ) | Case No. 04CV235817-01<br>Division 16<br>Class Action |
| Plaintiffs, ) ) | |
| v. ) ) | |
| MERCK & CO., INC., ) ) | |
| Defendant ) | |

### ORDER OVERRULING SUMMARY JUDGMENT

Before the Court is Merck & Co., Inc.'s (hereinafter "Merck" or "Defendant") Motion for Summary Judgment, its Suggestions in Support of Its Motion for Summary Judgment, its Statement of Uncontroverted Material Facts in Support of Its Motion for Summary Judgment, its Reply in Support of Its Motion for Summary Judgment, Plaintiffs' Opposition to Defendant's Motion for Summary Judgment, and Plaintiffs' Response to Merck's Statement of Facts and Additional Material Facts in Opposition to Motion for Summary Judgment. After reviewing the parties' extensive briefing, the facts and the law, and the arguments from both parties, the Court hereby **DENIES** Merck's motion in its entirety for the reasons outlined in the briefs.

I.  **Missouri Standards on Summary Judgment**

When ruling on a summary judgment motion, this Court must determine whether the movant has met its burden of demonstrating a right to judgment as a matter of law based on material facts as to which there is no genuine dispute. *ITT Commercial Finance Corp. v. Mid-America Marine Supply Co.*, 854 S.W.2d 371, 378 (Mo. 1993). Under well-recognized

standards, it is Merck's burden to show the absence of a disputed fact issue. *See, e.g., Hagen v. McDonald's Corp.*, 231 S.W.3d 858, 861 (Mo. App. 2007) (movant's evidence insufficient to demonstrate entitlement to judgment). Unless the movant makes a prima facie case supporting its entitlement to judgment with competent evidence, the burden does not shift to the non-movant. *State ex rel. Nixon v. McIntyre*, 234 S.W.3d 474, 478-79 (Mo. App. 2007). Assuming the movant does meet its initial burden, any evidence presenting a genuine dispute of material fact may defeat the movant's required showing. *ITT*, 854 S.W.2d at 382. "[A] 'genuine issue' exists where the record contains competent materials that evidence two plausible, but contradictory, accounts of the essential facts." *Id.* The record must be viewed in the light most favorable to the non-movant. *Id.* at 376. In addition to its factual burden, the movant also must demonstrate entitlement to judgment as a matter of law. *See Midwest Crane & Rigging, Inc. v. Custom Relocations, Inc.*, 250 S.W.3d 757, 761 (Mo. App. 2008) (even uncontested facts are "of no legal import until it can be shown that those facts establish a right to judgment as a matter of law."). "An abundance of caution must be exercised in granting a motion for summary judgment because it is an extreme and drastic remedy that borders on the denial of due process because the opposing party is denied its day in court." *Bank of America, N.A. v. Reynolds*, 348 S.W.3d 858, 860 (Mo. App. 2011) (quoting *Kuhn v. Budget Rent–A–Car of Missouri, Inc.,* 876 S.W.2d 668, 672 (Mo. App. 1994)).

Here, for the reasons outlined in the parties' briefs, as well as those outlined below, Merck has failed to meet its burden under Missouri law to prove, as it must, that it is entitled to judgment as a matter of law based on material facts as to which there is no genuine dispute. Because Merck has failed to show both that it deserves judgment as a matter of Missouri law and

that there are no genuine issues of material fact in dispute, its Motion for Summary Judgment must fail.

## II. Merck's Arguments For Summary Judgment Are Barred by the Collateral Source Doctrine Under Missouri Law.

Merck's arguments are foreclosed at the outset by the collateral source doctrine. Private insurance, Medicaid, and worker's compensation payments all are collateral sources of payment independent from Merck. Evidence regarding such sources is inadmissible under Missouri law.

Under the collateral source rule, "a wrongdoer is not entitled to have the damages to which he is liable reduced by proving that plaintiff has received or will receive compensation or indemnity for the loss from a collateral source, wholly independent of him." *Washington by Washington v. Barnes Hosp.*, 897 S.W.2d 611, 619 (Mo. 1995) (quoting *Collier v. Roth,* 434 S.W.2d 502, 506–07 (Mo. 1968)). *See also* Mo. Rev. Stat. § 490.715.1 ("[n]o evidence of collateral sources shall be admissible" except as permitted under circumstances not applicable here). The collateral source rule "is not a single rule but rather, a combination of rationales applied to a number of different circumstances." *Washington by Washington*, 897 S.W.2d at 619 (citing *Unreason in the Law of Damages: The Collateral Source Rule,* 77 Harv .L. Rev. 741, 748–53 (1964); Joel K. Jacobsen, *The Collateral Source Rule and the Role of the Jury,* 70 Or .L. Rev. 523 (1991)). One rationale is that a wrongdoer "may not be benefited by collateral payments made to the person he has wronged." *Id.* In other words, the rule is to "prevent a wrongdoer from mitigating damages by [showing] that payments were made to the plaintiff from a collateral source." *Lampe v. Taylor*, 338 S.W.3d 350, 360 (Mo. App. 2011). Another rationale is that "plaintiffs who contract for insurance or other benefits with funds they could have used for other purposes are entitled to the benefit of their bargain." *Washington by Washington*, 897 S.W.2d at 619 (citing *Kickham v. Carter,* 335 S.W.2d 83, 90 (Mo. 1960); *Overton v. United*

*States,* 619 F.2d 1299, 1306 (8th Cir. 1980)).

Missouri courts consistently "appl[y] the collateral source rule to prevent defendants from informing juries of: insurance policies contracted for and paid for by plaintiffs." *Id.* (citing *Iseminger v. Holden,* 544 S.W.2d 550, 553 (Mo. 1976); *Kickham,* 335 S.W.2d at 90; *Protection Sprinkler Co. v. Lou Charno Studio, Inc.,* 888 S.W.2d 422, 424 (Mo. App. 1994); *Blessing v. Boy Scouts of America,* 608 S.W.2d 484, 488–89 (Mo. App. 1980)). The rule also applies to "contracted for payments" and "benefits from plaintiffs' employers" such as worker's compensation benefits, disability benefits, and employer medical plans. *Id.* at 619-20 (citing *Collier v. Roth,* 434 S.W.2d 502, 507 (Mo. 1968); *Douthet v. State Farm Mut. Auto Ins. Co.,* 546 S.W.2d 156, 159–60 (Mo. 1977); *Leake v. Burlington Northern R. Co.,* 892 S.W.2d 359, 363 (Mo. App. 1995); *Mateer v. Union Pacific Systems,* 873 S.W.2d 239, 245 (Mo. App. 1993); *Beck v. Edison Bros. Stores, Inc.,* 657 S.W.2d 326, 330–31 (Mo. App. 1983); *Siemes v. Englehart,* 346 S.W.2d 560, 563–64 (Mo. App. 1961)). Evidence regarding governmental benefits such as Medicare and Medicaid, as well as "those at least partially contingent upon plaintiff's former service or payments, such as veterans' benefits and social security" also is inadmissible. *Id.* (citing *Cornelius v. Gipe,* 625 S.W.2d 880, 882 (Mo. App. 1981); *Hood v. Heppler,* 503 S.W.2d 452, 454–55 (Mo. App. 1973); *Weeks–Maxwell Const. Co. v. Belger Cartage Service, Inc.,* 409 S.W.2d 792, 796 (Mo. App. 1966)); *see also Lampe,* 338 S.W.3d at 359-61 (collateral source doctrine precluded evidence of Medicaid payments and provider write-offs).

The collateral source rule, while most commonly applied in personal injury cases, "does not apply only to claims against tortfeasors." *Hibbs v. Jeep Corp.,* 666 S.W.2d 792, 799 (Mo. App. 1984) (citing *Wells v. Thomas W. Garland, Inc.,* 39 S.W.2d 409, 412 (Mo. App. 1931)). For example, Judge Manners in Division 2 of this Court applied the collateral source rule to an

action involving damages under the MMPA. *Michael Gutzler v. General Motors Corp.*, No. 03CV208786 (Mo. Cir. Ct. Oct. 16, 2007) at 1. Judge Manners first recognized that the collateral source rule applies to non-tort cases. *Id.* (citing *Protection Sprinkler Company v. Lou Charno Studio, Inc.*, 888 S.W.2d 422, 424 (Mo. App. 1994). He then rejected defendant's argument that because damage to the property "was repaired at no charge by a friend of [plaintiff's] son," plaintiff sustained no damage, finding that the collateral source rule does not "differentiate between the nature of the benefits so long as they did not come from the defendant or a person acting for him" and whether or not the repair was gratuitous. *Id.* at 1-2.

Here, the Court is confronted with dealing not with gratuities but benefits for which plaintiffs and class members contracted or otherwise purchased (*e.g.*, private insurance), or for which they "work [like] an employment benefit" (worker's compensation), or receive due to a special status and tax payments (Medicaid). *Washington by Washington*, 897 S.W.2d at 621. Merck may not seek to reduce damages with evidence of these collateral sources. *Id.* at 619-20. It may not do so at trial, or here on summary judgment. *See Bank of America*, 348 S.W.3d at 862 (inadmissible evidence cannot support summary judgment). Even if considered, however, Merck's argument nonetheless fails as a matter of Missouri law. First, Plaintiffs have not limited their "theory of liability" to out-of-pocket expenditures. Second, out-of-pocket expenditures are not the limit of damages under a benefit-of-the-bargain standard under Missouri law.

### III. Merck's Arguments That Plaintiffs Are Limited to Out-of-Pocket Costs and Damages Is Wrong as a Matter of Missouri Law.

Merck's suggestion that Plaintiffs are limited to out-of-pocket costs also is wrong as a matter of law. Judge David's opinion in *Craft* contains a well-articulated explanation of Missouri law on benefit-of-the-bargain damages. Defendants there argued that plaintiff could not demonstrate actual damages or ascertainable loss because regular Marlboro cigarettes, which

"by [plaintiff's] own admission have the same tar and nicotine content as Marlboro Lights," cost the same as the Marlboro Lights alleged to have been misrepresented. *Craft v. Philip Morris Cos.*, No. 002-00406A, 2003 WL 23139381, at *1 (Mo. Cir. Ct. Dec. 31, 2003). Judge David found that defendants failed to demonstrate entitlement to judgment as a matter of law because they "misapprehended the benefit-of-the-bargain rule that governs the measure of damages in this type of case." *Id.* at *2. The same is true here. Sugg. at 19. As Judge David painstakingly set out in the *Craft* decision, Missouri law adheres to a "value" rule rather than an out-of-pocket rule. He explained:

> Under the more narrow and restrictive out-of-pocket rule, a defrauded plaintiff, who does not rescind the transaction and return the property, is limited *only* to recovering an amount of money equal to the difference, if any, between the amount that he parted with (i.e., what he is 'out-of-pocket') and the actual value of what he received.

*Id.* at *6 (citing 37 Am. Jur. 2d *Fraud and Deceit* §§ 387 and 420) (emphasis original).

> In contrast, under the more liberal benefit-of-the-bargain rule, a defrauded plaintiff is allowed to recover – *regardless* of the actual price paid for the purchased item – the difference between the actual value of the property received and the value that it would have been in the state represented (i.e., 'if the representations had been true.').

*Id.* (citing *Kendrick v. Ryus*, 123 S.W. 937, 939 (Mo. 1909); 37 Am. Jur.2d *Fraud and Deceit* §§ 385 and 416; 13 A.L.R.3d 875, § 3(a)) (emphasis original). A majority of jurisdictions, including Missouri, follow the more liberal benefit of the bargain rule. *Id.* at *6. *See, e.g., Kendrick v. Ryus,* 123 S.W. 937, 940 (Mo. 1909) (Missouri law compensates for lost bargain not price paid); *Kaufman v. Davis*, 161 S.W. 1180, 1180 (Mo. App. 1913) (defrauded purchaser can recover "the benefits" of bargain.). "An important aspect of the benefit-of-the-bargain rule . . . is that, although the price paid and the value the item would have had if it had been in the condition as

represented are often one and the same . . . there is no such necessary relationship." *Craft*, 2003 WL 23139381 at *8. While damages "cannot be less than the money . . . [plaintiff] parted with . . . [t]his is not a ceiling but a floor." *Crawford v. Smith*, 470 S.W.2d 529, 532 (Mo. 1971).

Here, Plaintiffs' expert, Dr. Fincham, did not base his calculation on an out-of-pocket model because under Missouri law, benefit-of-the-bargain damages are based on *value*, not out-of-pocket expenditures. MAI 4.03.

IV.  **Merck's Arguments That Summary Judgment is Appropriate Because Plaintiffs' Damages Allegedly Include Damages for Personal Injury Plaintiffs is Also Wrong as a Matter of Missouri Law.**

Merck also complains that Dr. Fincham's calculation includes damages for personal injury plaintiffs and out-of-state purchasers. Sugg. at 20. Here, Merck does not tie its argument to Plaintiffs' "theory of liability" but rather, to the class description. *Id.* at 19, 20. As Merck says, the class is described as "Missouri residents" purchasing Vioxx, and does not include persons claiming personal injury. *Id.* at 19. Merck contends that Dr. Fincham's "as represented" value includes all Vioxx purchases without subtraction of Vioxx purchases allegedly made by personal injury claimants, rendering the calculation inflated and thus, defective. Merck's arguments fail to recognize that this is a class action, and that Dr. Fincham's damages calculation is just that – a damages calculation, which by nature is an aggregate and not a person-by-person determination.

The fact that Dr. Fincham's calculation is an estimate is no different than what most economic experts provide in Missouri. In Missouri, it is a well-recognized maxim that determinations of value are "not susceptible of determination by any precise mathematical computation." *Coleman v. Coleman*, 318 S.W.3d 715, 723 (Mo. App. 2010). Once the *fact* of damage is established, the *amount* need only be determined with reasonable certainty and

"supported by the best evidence available." *BMK Corp. v. Clayton Corp.*, 226 S.W.3d 179, 196 (Mo. App. 2007) (quoting *Refrigeration Industries, Inc. v. Nemmers,* 880 S.W.2d 912, 920 (Mo. App. 1994)). The fact finder is free to make its own determination within the range of all evidence presented. *E.g.*, *Scott*, 215 S.W.3d at 182-83. And contrary to Merck's argument, the aggregate nature of Dr. Fincham's calculation does not render it inflated or otherwise invalid under Missouri law.

An almost identical argument was recently rejected by the Western District in *Gerken v. Sherman*, 351 S.W.3d 1 (Mo. App. 2011). In that case, a class of Missouri blind-pension fund recipients sought underpayments from the fund and an accounting. The trial court appointed a special master – Dr. James LePage – who prepared a report calculating an aggregate underpayment to all pensioners (from 1992 to 2009) in the amount of $18,832,188. The trial court adopted the report and entered judgment in that amount, "representing the total of the historic underpayment of Blind Pension benefits due Plaintiff Class for the years 1992 through the present" and ordered the Missouri Family Support Division to calculate and pay damages due to each class member. *Id.* at 5.

To reach the aggregate damages amount, Dr. LePage multiplied the monthly pension amount "by the average annual number of eligible pensioners" to find a total required payment, from which he subtracted SSI payments to reach a net required payment, which was then compared with the fund's "actual payment" to all pensioners for a given fiscal year. The difference was determined to be the damages. *Id.* at 10. The Division argued that this calculation erroneously relied on an average annual number of eligible pensioners to determine the total required payment because its caseload varied and not all eligible pensioners were entitled to a full payment each month. Thus, "by using the annual average number of pensioners,

and assuming each was entitled to a full payment each month, the total required payment [was] inflated," rendering damages similarly inflated. *Id.* The Court rejected that argument.

First, the Court noted that data "was not available to determine the exact number of individuals receiving a payment and the exact amount of the SSI payment deducted," and that "[c]aseload data are necessarily average data." *Id.* at 10-11. Second, it rejected the Division's contention "that the burden was thrust on the trial court to determine an award that 'actually calculates the amount of damage that any pensioner suffered for any particular month for any particular year.'" *Id.* at 11. To the contrary, Missouri law does "not require damages to be established with absolute certainty: the measure is reasonable certainty." *Id.* (citing *Shechter v. Brewer,* 344 S.W.2d 784, 791 (Mo. App. 1961)). "In class actions, aggregate proof of damages is proper where liability can reasonably be shown by mathematical computation and 'may also be based on sampling techniques or other reasonable estimates.'" *Id.* (quoting 3 Alba Conte & Herbert Newberg, NEWBERG ON CLASS ACTIONS § 10:3 (4th ed. 2002)). "As noted by the United States Supreme Court in distinguishing between the measure of proof necessary to establish *a right of recovery* and the measure of *the amount of* the recovery: if a wrongdoer's damages cannot be shown with absolute certainty, it is sufficient that they are shown by 'just and reasonable inference' because '[t]he wrongdoer is not entitled to complain that they cannot be measured with the exactness and precision that would be possible if the case, which he alone is responsible for making, were otherwise.'" *Id.* (quoting *Story Parchment Co. v. Paterson Parchment Paper Co.,* 282 U.S. 555, 562–63 (1931)) (emphasis original).

Moreover, the Court held, the fact that the judgment was an aggregate of class damages posed no difficulty since distribution of the judgment would be made to individual pensioners who were "entitled to their portion" depending on the number of months, and which months,

they were underpaid, which would be calculated by the Division and paid to each class member. *Id.* The Court recognized that once a claims process was developed and the amount of individual claims determined, it could "then be ascertained if the aggregate damage award result[ed] in a surplus. It would then fall to the court 'to make a determination about the distribution of the surplus,' such as whether such funds should revert to the pension fund or escheat to the state." *Id.* at 11 (citing NEWBERG ON CLASS ACTIONS § 10:15; 107 ALR Fed 800, 801 (1992)). These holdings are applicable here.

Similar to the calculation in *Gerken*, Dr. Fincham used available information to calculate the "As Represented" value of Vioxx.[1] Regarding the alleged personal injury claimants, the fact that a person might have recovered for a personal injury claim does not mean that he is precluded from recovering for *economic injury* under the MMPA, which is "fundamentally different, separate and distinct from . . . personal injury claims that class members may have" against the defendant. *Collora v. R.J. Reynolds Tobacco Co.*, No. 002-00732, 2003 WL 23139377, at *4 (Mo. Cir. Ct. Dec. 31, 2003). Where remedies are concurrent and consistent or cumulative, a plaintiff is not required to elect between remedies. *Ellsworth Breihan Bldg. v. Teha, Inc.*, 48 S.W.3d 80, 82 (Mo. App. 2001). And receiving damages for different injuries based on different claims is not a double recovery. *Teets v. American Family Mut. Ins. Co.*, 272 S.W.3d 455, 460 (Mo. App. 2008); *Martha's Hands, LLC v. Starrs*, 208 S.W.3d 309, 316 (Mo. App. 2006). Thus, under Missouri law, there is nothing inherently wrong with including the economic damages of alleged personal injury claimants within the damages Plaintiffs are seeking. The only real basis

---

[1] Dr. Fincham used standard methodology and data points to arrive at his Vioxx "As Represented" calculation. *See* Pls.' Resp. to SOF ¶13; Def. Ex. 2 (Fincham Sum. at 2-3); Pls.' Ex. 9 (Shepherd Dep. 143-145, 158-59, 163, 171-172).

for Merck's challenge is the asserted releases from those alleged claimants who have settled their personal injury claims with Merck.

Merck's "evidence" regarding these alleged claimants, however, is strictly limited to the number of Missouri residents who, it says, entered into a global personal injury settlement in 2007 and executed releases.[2] Even if this is true, Merck offers nothing whatsoever to demonstrate who these people might be, how much was paid to them in settlement, how many Vioxx prescriptions might be at stake in their alleged claims in this case, or how much money those prescriptions specifically represent in this case. The same is true of Merck's arguments about purported settlements with private insurers (TPPs) and with the State of Missouri pertaining to Medicaid payments. Sugg. at 20.[3] These arguments do not entitle Merck to judgment as a matter of law.

The mere fact of settlement, or number of personal injury claimants purportedly settling with Merck, has no meaning without also knowing the amount of the individual settlements (as well as the number of Vioxx prescriptions represented). Without that information, Merck has no basis for saying what should be deducted from Dr. Fincham's damages calculation, if anything at all. *See, e.g., Ozark Airlines, Inc. v. Valley Oil Co. LLC*, 239 S.W.3d 140, 147 (Mo. App. 2007) (reduction of judgment properly rejected absent evidence that plaintiff actually recovered by settlement amounts awarded against defendant on same claim); *Stege v. Hoffman*, 822 S.W.2d

---

[2] Merck provides an affidavit from one of its lawyers stating that in 2007, it entered into a settlement respecting Vioxx-related personal injury cases under which "2,393 Missouri residents released their claims against Merck." SOF ¶ 35 (quoting Marvin Aff. at ¶ 4).

[3] Note also that there is a substantive difference between a value calculation and seeking recovery on behalf of the government or private third-party payors (which none of the Plaintiffs are not doing here). Moreover, Merck provides nothing to suggest that these settling entities, even if they released their own claims, somehow released, or even could ever release, the claims of Plaintiffs or class members in this case and hence, these settlements are not relevant at all.

517, 519 (Mo. App. 1991) (reduction of judgment rejected absent evidence to demonstrate "amounts paid in settlement," or if paid, for which claims). On summary judgment, the absence of such evidence leaves Merck's motion unsupported. *See Grisamore v. State Farm Mut. Auto Ins. Co.*, 306 S.W.3d 570, 574 (Mo. App. 2010) (summary judgment inappropriate where movant's evidence did not directly rebut challenged element); *Oakley Fertilizer, Inc. v. Continental Grain Ins. Co.*, 276 S.W.3d 342, 351 (Mo. App. 2009) (movant's evidence insufficient to establish lack of material fact issue); *Bank of America*, 348 S.W.3d at 862 (movant's evidence insufficient to establish lack of material fact issue or basis for judgment). Nor can Dr. Fincham's damages calculation be faulted for not including unavailable information. *Gerken*, 351 S.W.3d at 10-11.

To the extent Merck is concerned about *who will receive* an award or the total amount of such award, this will be a matter for the claims procedure under Missouri law. If judgment is entered in Plaintiffs' favor in this case, there will be a claims administration process to handle distribution. Persons described in the class definition are those who will be qualified to make claims and receive their due share of any judgment. Merck's complaints can and should be resolved in that fashion. *Id.* at 11. If, after the claims process, it is determined that personal injury Plaintiffs who individually released claims are seeking recovery in this case, it may be proper for those persons (as well as any amounts they seek attributable to their purchases of Vioxx) can be excluded from the total recovery and any such amount may be reverted to Merck. Simply put, Merck has offered no evidence that any of the Class Representatives or any of the class members in this case have otherwise released any of their claims or that Plaintiffs' damage calculations include amounts of damages contrary to Missouri law that cannot otherwise be dealt with during the claims administration process after judgment.

For all of these reasons, as well as those outlined in the briefs, Merck's Motion for Summary Judgment is **OVERRULED** in its entirety.

IT IS SO ORDERED.

*/s/ Marco A. Roldan*

MARCO A. ROLDAN
JUDGE, DIVISION 16

Dated: March 26, 2012

I hereby certify that copies of the foregoing were
duly faxed or mailed this day to all counsel of record.

PATRICK JOSEPH STUEVE
TODD HILTON
(816) 714-7101

Dan Ball
(314) 552-8200

Steve Strauss
(314) 552-8444

Travis Sales
(713) 229-7878

Stephen Brody
(202) 383-5414

John Beisner
(202) 661-8301

Ben Barnett
(215) 994-2222

**JUDGE MARCO A. ROLDAN- DIVISION 16**
Jackson County Circuit Court
308 W. Kansas
Independence, Missouri 64050-3715
(816) 881-4416
FAX: (816) 881-4692

FACSIMILE TRANSMISSION

# IDENTIFICATION PAGE

DATE: March 26, 2012

TO:
PATRICK JOSEPH STUEVE
TODD HILTON
(816) 714-7101

Dan Ball
(314) 552-8200

Steve Strauss
(314) 552-8444

Travis Sales
(713) 229-7878

Stephen Brody
(202) 383-5414

John Beisner
(202) 661-8301

Ben Barnett
(215) 994-2222

RE: 04CV235817-01
MARY PLUBELL   V   MERCK SHARP & DOHME CORP.

No. of Pages: 2   (including cover sheet)

Note: