IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | ) | MDL NO. 1657 |
| | ) | |
| PRODUCTS LIABILITY LITIGATION | ) | SECTION: L |
| | ) | |
| | ) | JUDGE FALLON |
| THIS DOCUMENT RELATES TO: | ) | |
| *All Settled Third-Party-Payor and* | ) | |
| *Personal-Injury Claims Involving* | ) | |
| *Missouri Vioxx Users* | ) | |
| | ) | |

**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO ENJOIN MISSOURI PLAINTIFFS MARY PLUBELL AND TED IVEY FROM PURSUING RELIEF FOR VIOXX EXPENDITURES ALREADY SUBJECT TO SETTLEMENTS**

Plaintiffs' opposition does not deny that they are seeking to force Merck to pay damages for the full value of all Vioxx purchases in Missouri – even though Merck has already settled claims, under this Court's guidance, with third-party payors ("TPPs") and personal-injury ("PI") plaintiffs for a substantial portion of that value. Instead, plaintiffs seek to justify their request on the ground that their efforts to recover such damages are supposedly consistent with Missouri law. Plaintiffs' arguments should be rejected. If plaintiffs are allowed to proceed as they intend, their quest will render significant portions of Merck's settlements with PI and TPP claimants meaningless; it will threaten to embroil Merck, this Court, and many of the settling TPPs in new litigation; and it will significantly deter settlements in future multidistrict litigation because defendants will have no assurance that settlement in an MDL setting will be enforced by state courts.

This Court clearly has the power to prevent these consequences. In the MDL context – particularly where, as here, settlements have been achieved – a court has broad power to act

against state-court proceedings that threaten the MDL court's ability to resolve the litigation. Plainly, state-court action that threatens to negate portions of a settlement and complicate future settlements poses such a threat; indeed, such threats are the traditional basis for All Writs Act injunctions in the MDL setting.  Although plaintiffs argue that neither they nor the class members were parties to these settlements, that fact has no bearing on this Court's power to act. Nor does plaintiffs' reliance on Missouri state law regarding damages; adherence to state law is beside the point when considering whether to invoke a federal court's power under the All Writs Act.  What matters is the practical impact of the state-court litigation on these multidistrict proceedings; as this Court has held, even the "***possibility***" of interference is a sufficient basis to act.  *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, MDL 2047, 2011 U.S. Dist. LEXIS 62222, at *19 (E.D. La. June 9, 2011) (emphasis added).

This Court also has the power to prevent relitigation of the many claims that were settled and dismissed pursuant to stipulation in these proceedings, in order to protect and effectuate its judgments.  Plaintiffs claim that they will not relitigate anything decided by this Court, but that is clearly incorrect.  The compensatory-damages estimate proffered by plaintiffs indisputably includes the payments for Vioxx made by PI and TPP claimants.  Those claims have been released and dismissed in a final judgment pursuant to stipulation, and plaintiffs cannot relitigate them simply because they were not a party to those final judgments.

Finally, considerations of comity weigh heavily in favor of an injunction.  As plaintiffs concede, Merck, the Court and the other parties have invested a "massive amount of time and effort" in this litigation and the settlements it produced.  (Pls.' Opp'n at 3.)  Plaintiffs should not be able to undo those efforts merely to line their pockets.  According to plaintiffs, equity demands they be allowed to do so because they have not yet had an opportunity to litigate.  But

Merck does not seek to deny them this opportunity. Rather, it seeks limited relief that need not delay trial. Plaintiffs also contend that Merck waited too long to bring this motion, but the equities weigh against plaintiffs on this ground as well. It was plaintiffs who revealed for the first time just a few months ago that they are seeking to recover far more than what they actually spent on Vioxx. Merck's effort to resolve its concerns in the state-court proceeding before involving this Court is hardly a reason to deny equitable relief, particularly since plaintiffs also complain that an injunction would undermine comity and federalism. In any event, plaintiffs are wrong on this latter point as well. An injunction will further the interests of federalism by protecting federal judgments and multidistrict proceedings from significant interference by state-court proceedings.

## ARGUMENT

### I. AN INJUNCTION WOULD PROTECT THIS COURT'S JURISDICTION OVER THE MDL.

As Merck set forth in its opening brief, MDL courts have significant authority to enjoin state litigation that seeks to duplicate relief already granted in settled cases in the MDL or that otherwise threatens to "'unsettle' what had been thought to be settled." *In re Prudential Ins. Co. of Am. Sales Pracs. Litig.*, 314 F.3d 99, 105 (3d Cir. 2002). The *Plubell* case threatens such interference because plaintiffs contend that they are entitled to the alleged loss of value from Vioxx transactions that are already covered in whole or in part by the PI and TPP settlements. (*See generally* Mot. at 7-10.) Accordingly, the Court should enter an injunction in aid of its jurisdiction.

Plaintiffs offer two arguments in response: (1) none of the *Plubell* class members are parties to the PI or TPP settlements (Pls.' Opp'n at 11-14); and (2) plaintiffs do not seek to recover payments made by settled parties because, as a matter of Missouri law, they are seeking

the benefits of their bargains, not out-of-pocket expenses (*id.* at 14-16). These arguments lack merit.

***First***, whether any *Plubell* class member is a party to the settlements or any other litigation before this Court is irrelevant. The Supreme Court has been clear – and plaintiffs do not dispute – that "[t]he power conferred by the [All Writs] Act extends, under appropriate circumstances, to persons who, though not parties to the original action or engaged in wrongdoing, are in a position to frustrate the implementation of a court order or the proper administration of justice, . . . and encompasses even those who have not taken any affirmative action to hinder justice." *United States v. N.Y. Tel. Co.*, 434 U.S. 159, 174 (1977) (citations omitted).[1]

Plaintiffs nonetheless argue that the traditional justification for an All Writs Act injunction is a threat to "a class settlement . . . by settlement class members' simultaneous pursuit of relief in other courts," a circumstance that is lacking here. (Pls.' Opp'n at 12.) To be sure, that is a common scenario for invoking writ authority, but it does not mark the limit of an MDL court's power to enjoin state-court litigation. In the case of settlements in federal courts overseeing nationwide litigation, for example, it "is likely that almost ***any*** parallel litigation in other fora presents a genuine threat to the jurisdiction of the federal court" in light of the "challenges" inherent in settling such disputes. *In re Diet Drugs Prods. Liab. Litig.*, 282 F.3d 220, 236 (3d Cir. 2002) (emphasis added). Such threats can certainly arise outside the context of

---

[1]  Plaintiffs suggest that an injunction would be unfair in light of their nonparty status because it would "**bar** Missouri consumers from pursuing their own independent claims under state law." (Pls.' Opp'n at 13 (emphasis added); *see also id.* at 14 (asserting that Merck is attempting to prevent plaintiffs and the class members "from seeking a *single recovery*").) Of course, the injunction Merck seeks would do nothing of the sort. Merck seeks only an injunction against the recovery of damages with respect to claims that have been settled and released in this MDL proceeding, not an injunction against the entire state proceeding or the class's claim for a refund of monies spent by class members for Vioxx.

class litigation or settlement, as the Fifth Circuit has recognized.  In *Newby v. Enron Corp.*, for example, no class action was at issue, but the Fifth Circuit affirmed an All Writs Act injunction barring state-court litigants from seeking injunctions in state court against the defendant in multidistrict proceedings before the federal district court.  338 F.3d 467 (5th Cir. 2003).  Indeed, relying on its precedents allowing such injunctions in the class-action context, the Fifth Circuit emphasized that what matters is the propensity for state-court proceedings "to interfere with the federal court's orderly handling of the massive federal [MDL] litigation."  *Id.* at 474.

The same is true here.  Merck has already identified at least three forms of substantial interference with this Court's ability to handle and resolve the litigation.  Most obviously, plaintiffs' effort to recover "value" from Vioxx transactions involving PI or TPP claimants with whom Merck has already settled threatens a double recovery – in essence, to nullify those federal settlements in state court.  In addition, plaintiffs' insistence on pursuing this recovery threatens to force TPP claimants back into the Vioxx litigation – either in state court to defend on Merck's behalf consistent with the terms of the TPP settlement, or in this Court to litigate their obligations under that agreement, or both.[2]  And as Merck has previously explained, plaintiffs' actions (and the state court's refusal to stop them) threaten to deter future MDL settlements, providing a further basis for invoking the All Writs Act.  *See, e.g.*, *Prudential*, 314 F.3d at 105 (affirming an injunction where allowing "comprehensive settlements to be undermined in this

---

[2]     As Merck explained in its supplemental memorandum, the insurers have an obligation to defend Merck in any suit that is brought against Merck "for the benefit of any" TPP. (Supp. Mem. at 3 (internal quotation marks and citation omitted).)  Plaintiffs dispute that their suit is "for the benefit" of TPPs (Pls.' Opp'n at 11 n.7 (internal quotation marks and citation omitted)), but it plainly is as a matter of Missouri law, *see, e.g.*, *Am. Nursing Res., Inc. v. Forrest T. Jones & Co.*, 812 S.W.2d 790, 798 (Mo. Ct. App. 1991) (explaining that, while an insured may sue for the entire recovery, "the insurer acquired equitable title by subrogation to the extent of the loss paid"); *Stanton v. Hart*, 356 S.W.3d 330, 334 (Mo. Ct. App. 2011) (explaining that, when insureds sue in such instances, their suit is "for the benefit of the insurer").

way would undeniably deter similar settlements in the future").³  In short, the implications of plaintiffs' actions, if successful, will reverberate far beyond this suit and afford ample justification for this Court to act.

*Second*, plaintiffs are also wrong to argue that the particulars of Missouri damages law somehow diminish the threat of interference posed by their theory of recovery in state court. Plaintiffs take issue with Merck's argument that they "'seek to recover all money spent on Vioxx purchases in the State of Missouri, regardless of who actually spent it.'"  (Pls.' Opp'n at 14 (quoting Mot. at 1).)  According to plaintiffs, they "are *not* seeking to recover payments made by any third party," but instead seek to recover the "value" that class members allegedly lost in their bargains with Merck, as measured by the difference between Vioxx as represented and Vioxx as it actually was.  (*See id.* at 15.)

But that distinction makes no difference for purposes of this motion.  For one thing, the argument puts form before substance, since plaintiffs' expert damages opinion is derived directly from the amount of money *spent* on Vioxx in Missouri.  But even taking plaintiffs' benefit-of-the-bargain arguments at face value, there is no question that plaintiffs' damages claim turns on the "value" of *all* Vioxx purchases in Missouri.  That estimate, in turn, overstates damages with respect to the PI settlements, since the damages claim includes the purported "value" of Vioxx prescribed to PI claimants who have settled their claims – indeed, plaintiffs do not even attempt to deny this fact.  (*See id.* at 6 n.3.)⁴

---

³   Plaintiffs' arguments ignore other troubling questions as well, including whether the TPP settlement should be unwound and the stipulations of dismissal approved by this Court revoked and whether the funds set aside for the common benefit fund – to be paid for the work of counsel in achieving a settlement that may now become unsettled – should be returned to Merck.

⁴   Plaintiffs instead excuse this excess on the asserted ground that it is permissible for damages estimates to be inaccurate (Pls.' Opp'n at 6 n.3) and that "Merck has *admitted* that 'it would be impossible for [their expert] to reliably calculate'" the correct amount of damages here (*id.* at 14 n.10).  This argument misconstrues the burden of proof on damages in state court, which clearly rests with plaintiffs, and is, in any event, irrelevant to the question

*(cont'd)*

6

Plaintiffs' estimate also greatly overstates damages in light of the TPP settlements because it seeks the full portion of the promised "value" of Vioxx – including the portion of that value *for which the settled TPP claimants* "bargained" with Merck when they paid the lion's share of their beneficiaries' Vioxx purchases.  In other words, in a single purchase of Vioxx, both a class member and his or her insurer bargained with Merck for the benefits of Vioxx.  The TPPs have already settled with Merck and recovered with respect to their alleged shares of these bargains.  It does not remain open to the class members to recover those same shares again.  *See, e.g., In re Air Crash Disaster near Cerritos*, 982 F.2d 1271, 1277 (9th Cir. 1992) (where defendant had already paid for funeral and burial expenses when it indemnified company that covered plaintiffs' expenses, plaintiffs could not seek damages based on those same expenses from the defendant because it could not be forced to make a double payment).  As a general principle, courts do not require defendants to pay more than once for a single injury, even if multiple plaintiffs claim a share of the property that has produced the injury.  Thus, for example, a husband and wife who buy a car together and later claim and prove that the car was worth $5,000 less than represented are not each entitled to recover $5,000, whether they sue at the same time or in separate lawsuits.  *Cf., e.g., In re Lone Star Indus.*, 776 F. Supp. 206, 223 n.11 (D. Md. 1991) (clarifying that no double recovery would be permitted where both Amtrak and state transportation authority sought breach-of-contract damages for the same allegedly defective railroad ties sold to the state transportation authority).

---

*(cont'd from previous page)*
before this Court:  whether the state-court action interferes with the management of this MDL proceeding by threatening second recoveries for underlying transactions that are already subject to final settlements.  Relatedly, plaintiffs appear to fault Merck for failing to disclose the identities of the parties that have settled with Merck and the amounts of their settlements.  But Merck is subject to confidentiality restrictions with respect to those agreements.

Because plaintiffs seek to recover this value again, there is no question that their suit runs up against the PI and TPP settlements. As noted previously, the All Writs Act does not demand a formal or legalistic analysis of such interference; "the basis of injunctive relief under the All Writs Act against a third party is not culpability, but practical necessity." *In re Linerboard Antitrust Litig.*, MDL No. 1261, 2008 WL 2758442, at *10 (E.D. Pa. July 15, 2008), *aff'd in relevant part, rev'd on other grounds*, 361 F. App'x 392 (3d Cir. 2010) (internal quotation marks and citation omitted). Such "practical necessity" clearly exists here. For this reason alone, Merck's motion should be granted.

## II. AN INJUNCTION WOULD PROTECT AND EFFECTUATE THIS COURT'S JUDGMENT.

Merck's opening brief also explained that an injunction is necessary to "protect and effectuate" the thousands of judgments of this Court that are embodied in orders dismissing the claims of settling plaintiffs. Plaintiffs respond that this Court has not "actually . . . decided" anything with respect to plaintiffs or the class members, and there is therefore no "relitigation" to prevent. (*See* Pls.' Opp'n at 9-10.) Alternatively, they argue that any threat of relitigation is not yet ripe since the state-court trial has not yet occurred. (*Id.* at 11.) Neither argument is correct.

*First*, plaintiffs are simply wrong to argue that this Court has not decided issues in previously litigated cases. The releases signed in the MDL proceeding released **all** Vioxx-related claims by the settling parties, including consumer claims. (*See* Mot. at 3.) It is clear, for example, that a PI claimant could not now bring a consumer-fraud-based claim seeking the return of purchase costs (or the benefit of their bargain) with respect to Vioxx. Nonetheless, plaintiffs seek to recover damages on behalf of PI claimants. The relitigation bar applies to such efforts irrespective of whether the PI claimants are in the class; their putative consumer-fraud claims cannot be asserted by themselves or anybody else. *Cf., e.g., U.S. ex rel. Sarafoglou v.*

8

*Weill Med. Coll. of Cornell Univ.*, 451 F. Supp. 2d 613, 620 (S.D.N.Y. 2006) (relator could not seek damages allegedly suffered by government because the claims forming the basis of the suit had already been settled and the relator's suit was thus "foreclosed . . . under principles of *res judicata*").

***Second***, plaintiffs are also wrong to argue that an injunction would be inappropriate unless and until they succeed at trial. None of the All Writs Act cases so holds. Indeed, the case on which Merck relied in its opening brief, *In re Corrugated Container Antitrust Litigation*, 659 F.2d 1332 (5th Cir. 1981) (cited in Mot. at 11), affirmed an injunction entered in part to protect and effectuate the judgments of the district court against a class action that had not even been certified, much less litigated to a judgment, in state court, *see* 659 F.2d at 1333-34. Accordingly, there is no basis for plaintiffs' request that this Court refrain from acting until the case is over. Instead, the Court should act to protect and effectuate its judgments now – while they still mean something.

### III. AN INJUNCTION WOULD SERVE THE INTERESTS OF EQUITY, COMITY AND FEDERALISM.

Finally, all conceivable policy interests – equity, efficiency, comity and federalism – weigh heavily in favor of granting an injunction. Plaintiffs argue otherwise, contending that: (1) equity weighs against an injunction because Merck has engaged in dilatory tactics; (2) federalism and comity weigh against an injunction because federal intervention would undermine the Missouri court's proper control of the state trial; and (3) the MDL proceedings would benefit from allowing the *Plubell* trial to proceed and serve as a "bellwether" for future consumer-fraud suits. (*See* Pls.' Opp'n at 16-17.) Each of these arguments fails.

***First***, plaintiffs argue that an injunction would be inequitable because Merck has engaged in delay and is seeking to deprive them of their day in court. (*See* Pls.' Opp'n at 16.) Not so.

9

According to plaintiffs, "the benefit-of-the-bargain rule and standard jury instruction have existed since the Missouri case was filed in 2004." (*Id.* at 15 (footnote omitted).) That may be so, but the existence of a damages doctrine hardly put Merck on notice as to the extent of plaintiffs' claim for damages. To the contrary, Merck relied on the only indication it had of plaintiffs' intentions – the express statement in their petition that they sought recovery of only "purchase costs **Plaintiffs** paid for Vioxx." (2d Am. Pet., Prayer For Relief, ¶ (b) (emphasis added).) Only recently – when plaintiffs submitted the damages report of their expert, Dr. Jack Fincham, and made clear in their oppositions to Merck's state-court motions that they intend to seek recovery of payments made by both PI claimants and TPPs – was Merck put on notice that plaintiffs' actions would directly challenge the PI and TPP settlements. In any event, the timing of Merck's motion need not disrupt the state proceedings. Merck is not seeking to "avoid trial" in state court, as plaintiffs claim. (*See* Pls.' Opp'n at 1.) It merely seeks an injunction barring plaintiffs from recovering duplicative damages.

The relevant equities strongly favor an injunction. Merck should not be compelled to relitigate the PI and TPP claims in the Missouri trial. It is precisely because equity gives credit to the "enormous amount of time and expenditure of resources" involved in achieving mass settlements that injunctions against state-court litigation are authorized in the interest of protecting the integrity of federal multidistrict proceedings. *Diet Drugs*, 282 F.3d at 236; *see also Corrugated Container*, 659 F.2d at 1334-35 (approving injunction in a "complicated" action that "required a great deal of the district court's time"). As noted above, plaintiffs here have admitted that those interests are implicated in this MDL proceeding, in which a "massive amount of time and effort" has been expended. (Pls.' Opp'n at 3.) Plaintiffs' suit, if permitted to

proceed on claims seeking double payment, would significantly devalue these efforts. Accordingly, the equities are against them.

**Second**, an injunction would preserve, rather than undermine, federalism and comity. As courts issuing All Writs Act injunctions have explained, federalism is not a code word for state primacy; rather, it is a two-way street. When state proceedings tread on areas covered by massive and hard-fought federal settlements and judgments – even if those proceedings are consistent with the particulars of the relevant state law – an injunction would "not so much interfere with the state court proceeding as prevent state court interference with the federal proceeding," *Diet Drugs*, 282 F.3d at 239, and thus would avoid "the very 'needless friction between state and federal courts' which the Anti-Injunction Act was designed to prevent," *Winkler v. Eli Lilly & Co.*, 101 F.3d 1196, 1203 (7th Cir. 1996) (citation omitted). Accordingly, plaintiffs' federalism argument adds nothing to the analysis. If an injunction is justified in aid of this Court's jurisdiction or to protect or effectuate its judgments – as is clearly the case here – it necessarily follows that federalism policies likewise favor an injunction.

**Third**, plaintiffs' argument that an injunction is improper because *Plubell* is a "bellwether" for other Vioxx consumer-fraud cases only hurts their cause. For one thing, plaintiffs have repeatedly argued throughout the course of the *Plubell* litigation that Missouri's consumer-fraud law is one of a kind. (*See, e.g.*, Pls.' Reply To Def. Merck & Co., Inc.'s Suggs. In Opp'n To Pls.' Am. Mot. For Class Cert. at 10; Suggs. In Opp'n To Def.'s Mot. To Exclude Dr. Jack Fincham's Opinions Regarding Ascertainable Loss at 2, 18; Suggs. In Opp'n To Def.'s Mot. For Summ. J. at 12-13.) But even if plaintiffs are right that a Missouri decision could guide other jurisdictions, the need for this Court's intervention is all the greater because that means this case will set a precedent for other pending cases. For this reason too, the Court should act now

to preserve the settlements that the parties worked so hard to achieve under this Court's guidance over the past seven years.

## CONCLUSION

For the foregoing reasons, and all of the reasons set forth in Merck's opening and supplemental briefs, the Court should enter an Order enjoining plaintiffs Mary Plubell and Ted Ivey from pursuing relief with respect to Vioxx expenditures made by PI claimants and TPPs that have already settled with Merck. Alternatively, the Court should enter an Order enjoining the state-court proceedings to the extent the Missouri plaintiffs seek such relief.

Dated: April 9, 2012

Respectfully submitted,

*/s/ Dorothy H. Wimberly*
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, LA 70130

Douglas R. Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth St., N.W.
Washington, DC 20005

John H. Beisner
Jessica Davidson Miller
Geoffrey M. Wyatt
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
1440 New York Avenue, N.W.
Washington, DC 20005

ATTORNEYS FOR MERCK SHARP &
DOHME CORP.

**CERTIFICATE OF SERVICE**

       I hereby certify that the above and foregoing Reply has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8C, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 9th day of April, 2012.

                                  */s/ Dorothy H. Wimberly*
                                  Dorothy H. Wimberly, 18509
                                  STONE PIGMAN WALTHER
                                  WITTMANN L.L.C.
                                  546 Carondelet Street
                                  New Orleans, Louisiana  70130
                                  Phone:  504-581-3200
                                  Fax:     504-581-3361
                                  dwimberly@stonepigman.com

                                  Defendants' Liaison Counsel

1090210v1