**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In re: Vioxx | * | MDL Case No. 1657 |
| | * | |
| PRODUCTS LIABILITY | * | SECTION L |
| LITIGATION | * | |
| | * | JUDGE FALLON |
| *This document relates to* | * | |
| | * | MAGISTRATE JUDGE |
| *Walter J. Roach v. Merck & Co., Inc.,* | * | KNOWLES |
| 2:10-cv-00868-EEF-DEK | * | |
| | * | |

*******************************************************************************

**DEFENDANT MERCK SHARP & DOHME CORP.'S  MEMORANDUM IN SUPPORT
OF ITS MOTION FOR SUMMARY JUDGMENT**

Plaintiff Walter J. Roach, as administrator for the estate of Joanne I. Roach, (the "Roach Estate") filed this action against Defendant Merck Sharp & Dohme Corp. ("Merck") for wrongful death on November 12, 2009 in Illinois state court.  Illinois law, which applies to the Roach Estate's claims, provides a two-year statute of limitations for wrongful death claims, but Mrs. Roach died on April 8, 2004, more than five years before the Roach Estate filed suit.  This Court's previous decision in *In re Vioxx Products Liability Litigation*, 522 F. Supp. 2d 799 (E.D. La. 2007) ("the *Pales* decision"), in which this court held that the widespread publicity surrounding Vioxx's withdrawal caused an Illinois plaintiff's personal-injury claims to accrue no later than September 30, 2004, and extinguished the effect of any alleged fraudulent concealment by the same date, makes it clear that the Roach Estate's claims are time-barred.  Moreover, the Roach Estate's claim would be too late even if the five-year limitations period for fraudulent concealment applies.  This Court should grant summary judgment in Merck's favor.

1091111v1

## BACKGROUND

This Court is, of course, well familiar with Vioxx and its withdrawal, along with the media coverage and litigation that ensued. *See Vioxx*, 522 F. Supp. 2d at 802–03.[1] "The withdrawal of Vioxx from the market was arguably the largest and most-publicized prescription drug withdrawal in this country's history." *Id.* at 803. Print, television and radio news outlets began to cover Vioxx's withdrawal the morning of September 30, 2004, immediately after Merck decided to withdraw the drug. As this Court previously found, "[t]his avalanche of media coverage penetrated into local markets as well, with local television stations and newspapers across the country running similar reports, including in . . . Illinois." *Id.* (citing articles). Relying on this record of publicity, this Court held in a November 8, 2007 Order that an Illinois plaintiff's claims based on injuries suffered before Vioxx's withdrawal accrued no later than the date Merck withdrew the drug: September 30, 2004. *Id.* at 813–14.

Joanne Roach resided in Streator, Illinois, not far from Chicago. Compl. ¶ 1 (attached as Ex. 2). Roach's Estate alleges she began taking Vioxx in mid-2001 and had a stroke on November 22, 2001. *Id.* ¶ 5. The Roach Estate alleges that Vioxx caused Roach's stroke, which eventually led to her death on April 8, 2004. *Id.* ¶¶ 7, 12. The Roach Estate sued Merck in Illinois state court on November 12, 2009. The complaint explains that "[i]t was only the publicity in the media that suggested to the family to inquire about the possible use of Vioxx by their mother" and asserts, without explanation, that "notification in the media of the dangerous

---

[1] Because this Court is familiar with this information and has already granted summary judgment that another Illinois plaintiff's personal-injury claims were time-barred based on the same factual record, Merck limits its discussion of this background to the Court's findings in that previous Order. The original version of the Order is attached as Exhibit 1.A. The Westlaw version is attached as Exhibit 1.B.

propensities of the drug" did not occur until "July 1, 2008." *Id.* ¶ 8. The complaint alleges no facts suggesting why the media coverage of Vioxx's withdrawal did not put it on notice that it should investigate potential claims against Merck. The complaint further alleges that Merck "concealed its knowledge of Vioxx's unreasonably dangerous risks . . . until the many reported cases of similar injuries and death were reported and became known." *Id.* ¶ 18. By July 17, 2008, less than a month after it claims that it learned that Vioxx had been withdrawn, the Roach Estate attempted to take advantage of the Settlement Procedures entered into by Merck and the Plaintiffs' Negotiating Committee. *See id.* ¶ 23. However, the Roach Estate was ineligible to participate in the Settlement Program due to the absence of a claim filed or tolled prior to announcement of the Program, *see id.*, and the Roach Estate sued Merck in Illinois state court, seeking damages for wrongful death. Merck removed, and the case was transferred to this Court under 28 U.S.C. § 1407.

## THE SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009), *aff'd*, 131 S. Ct. 1651 (2011) (internal quotation marks omitted). This Court has already dismissed a Vioxx claim on limitations grounds under Illinois law. *Vioxx*, 522 F. Supp. 2d at 813–14.

## ARGUMENT

This court should grant summary judgment because the Roach Estate failed to file its suit against Merck for wrongful death within either of the potentially applicable Illinois limitations periods: the two-year period for wrongful death, 740 Ill. Comp. Stat. 180/2(c), and the five-year

3

period for fraudulent concealment, 735 Ill. Comp. Stat. 5/13-215.  This Court has already ruled with respect to another Illinois plaintiff that his claim accrued no later September 30, 2004, the date on which Merck withdrew Vioxx, and that fraudulent concealment does not extend the limitations period when a reasonable time remains within the limitations period to file suit. *Vioxx*, 522 F. Supp. 2d at 813–14.  Here, the Roach Estate sued Merck on November 15, 2009, more than five years after Vioxx's withdrawal.   Under either statute of limitations, the Roach Estate's claim is too late.  Merck is entitled to summary judgment.

### I. The Estate's Wrongful Death Claim Is Subject to Illinois' Two-Year Statute of Limitations.

Illinois plaintiffs who filed Vioxx claims in Illinois courts must comply with Illinois' statutes of limitations.  *Vioxx*, 522 F. Supp. 2d at 813.  Illinois law provides two limitations hurdles for wrongful-death claims.  *Beetle v. Wal-Mart Assocs., Inc.*, 761 N.E.2d 364, 369 (Ill. App. Ct. 2001).  First, the claim for the alleged wrong that led to the decedent's death must not be time-barred at the time of the decedent's death.  *Id.* (citing cases).  Second, the plaintiff must satisfy the Wrongful Death Act's statute of limitations.  *Id.* at 369.  Illinois law requires that a wrongful death suit "shall be commenced within 2 years after the death."  740 Ill. Comp. Stat. 180/2(c).

Joanne Roach died on April 8, 2004.  For purposes of this motion, Merck assumes that Mrs. Roach's claims were not time-barred at the time of her death.  Assuming no tolling by a discovery rule, the Roach Estate's claims were time-barred by April 8, 2006 under the Wrongful Death Act's limitations period.

### II. The Discovery Rule Delays Accrual of the Roach Estate's Wrongful Death Claim Until September 30, 2004, at the Latest.

The Illinois Supreme Court has never determined whether the discovery rule applies to the Wrongful Death Act, and has noted tension between the discovery rule and the Act's plain

4

language, which requires an estate to file a claim within two years "after the death." *Wyness v. Armstrong World Indus.*, 546 N.E.2d 568, 571 (Ill. 1989).  Illinois intermediate courts, however, have applied the discovery rule to toll the accrual of wrongful death claims.  *Id.* (citing cases); *Beetle*, 761 N.E.2d at 371–72 (citing cases).

Even assuming application of the discovery rule, the Roach Estate's claims here are still time-barred.  "Under Illinois' discovery rule, the running of the limitations period commences when a plaintiff possesses 'sufficient information concerning his injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct is involved.'" *Vioxx*, 522 F. Supp. 2d at 813 (quoting *Knox Coll. v. Celotex Corp.*, 430 N.E.2d 976, 980–81 (Ill. 1981)); *Clark v. Children's Mem'l Hosp.*, 955 N.E.2d 1065, 1089 (Ill. 2011).  The discovery rule requires the plaintiff diligently to seek out the cause of his injury.  *Newell v. Newell*, 942 N.E.2d 776, 781 (Ill. App. Ct. 2011); *Kopley Grp. V., L.P. v. Sheridan Edgewater Props., Ltd.*, 876 N.E.2d 218, 231 (Ill. App. Ct. 2007); *see also Carey v. Kerr-McGee Chem. Corp.*, 999 F. Supp. 1109, 1116 (N.D. Ill. 1998) ("The [discovery] rule places the burden on plaintiffs to inquire as to the existence of a cause of action.").

The complaint alleges that the Roach Estate was not prompted to investigate whether Vioxx caused Mrs. Roach's stroke until July 1, 2008 based on media coverage in that time period.  Compl. ¶ 8.  This Court has already ruled, however, that under the Illinois discovery rule a plaintiff's claim that for an injury before Vioxx's withdrawal accrues no later than the withdrawal date, September 30, 2004.  *Vioxx*, 522 F. Supp. 2d at 813–14.  In that case, Ronald Pales was an Illinois resident who began taking Vioxx in August 1999 and suffered a stroke on August 1, 2001.  *Id.* at 803–04.  Pales sued Merck in Illinois state court on January 10, 2007.  *Id.* at 804. The case was removed to federal court and transferred to this Court under 28 U.S.C.

5

§ 1407.  *Id.*  Merck moved for summary judgment that Pales's personal injury claims were time-barred.  *Id.* at 813–14.[2]  Personal injury claims, like the Roach Estate's wrongful death claim, have a two-year limitations period.  *Id.* at 813 (citing 735 Ill. Comp. Stat. 5/13-202).  This Court ruled that, "at the very latest, Illinois' two-year statute of limitations began to run on September 30, 2004."  *Id.* at 814.  It explained:

> Both the national and local media coverage of the withdrawal of Vioxx from the market were sufficient to put the plaintiff on notice of a potential link between his alleged injuries and the use of Vioxx.  *See, e.g.*, *Carey v. Kerr-McGee Chem. Corp.*, 999 F. Supp. 1109, 1116 (N.D. Ill. 1998) (noting that "extensive media coverage" of a waste contamination controversy contributed to the triggering of Illinois' limitations period).  By waiting until January 10, 2007 to file suit, more than two years after the withdrawal of Vioxx from the market, the plaintiff cannot be said to have acted diligently.  Indeed, in light of the media coverage in this case, the Court is led to the "inescapable conclusion that a reasonable person in [the plaintiff's] situation should have known of their claim."  *Id.* at 1117.

*Vioxx*, 522 F. Supp. 2d at 814 (alterations in original).

Therefore, even if this Court applies the discovery rule to wrongful death claims, there is no material distinction between this case and Pales's case.  Assuming the Roach Estate did not learn about Vioxx's withdrawal and media coverage raising issues concerning Vioxx and strokes until July 1, 2008, Compl. ¶ 8, its own subjective ignorance is not the focus of the inquiry under the discovery rule.  "The question is not what plaintiffs ***actually knew or even could have known***, but what they ***reasonably should have known***."  *Carey*, 999 F. Supp. at 1116 (emphasis added); *see also Hill v. Pedapati*, 759 N.E.2d 1015, 1020 (Ill. App. Ct. 2001) ("Whether a party possessed the requisite constructive knowledge contemplates an objective analysis of the factual circumstances involved in the case." (alteration and quotations omitted)).  There is no reason that

---

[2]   The Court also addressed Pales's claims for breach of warranty and fraud.  *Vioxx*, 522 F. Supp. 2d at 815.

the Roach Estate, had it exercised reasonable diligence, would not have known just as much about the alleged reported dangers of Vioxx as any other person in Illinois, or any other state. *See Vioxx*, 522 F. Supp. 2d at 808, 810 (finding that Puerto Rico and Pennsylvania plaintiffs' claims accrued on September 30, 2004). Indeed, the Roach Estate's complaint suggests no reason that media coverage did not put it on notice until July 1, 2008, even though it filed its complaint two years after this Court held that publicity surrounding Vioxx's withdrawal caused Illinois personal injury claims to accrue on September 30, 2004. The Roach Estates claims are time-barred under the discovery rule.[3]

### III. The Roach Estate's Claim of Fraudulent Concealment Is Also Time-Barred.

The complaint also alleges that Merck's fraudulently concealed the dangers of Vioxx. Compl. ¶ 18. Under Illinois' fraudulent concealment statute, "[i]f a person liable to an action fraudulently conceals the cause of such action from the knowledge of the person entitled thereto, the action may be commenced at any time within 5 years after the person entitled to bring the same discovers that he or she has such cause of action, and not afterwards." 735 Ill. Comp. Stat. 5/13-215.

Like the discovery rule, the fraudulent concealment statute requires diligent inquiry by the plaintiff. *McCool v. Strata Oil Co.*, 972 F.2d 1452, 1461 n.8 (7th Cir. 1992) (citing *McCabe*

---

[3] To the extent that the Roach Estate would argue that this Court should reach a different result on the same evidence, avoiding inconsistent results is one of the primary purposes of consolidated MDL proceedings. *See, e.g.*, *Scott v. Bayer Corp.*, No. Civ. A. 03-2888, 2004 WL 63978, at *2 (E.D. La. Jan. 12, 2004) (Fallon, J.) (noting that MDL proceedings "minimize the risk of inconsistent rulings in related cases"); *see also Curtis v. BP Am., Inc.*, 808 F. Supp. 2d 976, 982 (S.D. Tex. 2011) (Rosenthal, J.) ("Having transferor courts address [identical] issues increases the likelihood of inconsistent outcomes on a similar set of legal and factual issues that are likely to arise in a number of cases."); *Hallibuton Energy Servs. v. BP Exploration & Prod., Inc.*, Civ. A. No. H-11-3392, 2012 WL 149525, at *2 (S.D. Tex. Jan. 18, 2012) (Ellison, J.) (noting that MDL proceedings "further . . . consistency").

*v. Caleel*, 739 F. Supp. 387, 388 (N.D. Ill. 1990)). "It is well settled that where a reasonable amount of time remains in the applicable limitations or . . . when a plaintiff discovers, or should have discovered through ordinary diligence, a cause of action, section 13-215 will not extend that period." *Hanks v. Cotler*, 959 N.E.2d 728, 737 (Ill. App. Ct. 2011) (citing cases); *accord Vioxx*, 522 F. Supp. 2d at 813–14 ("Illinois' fraudulent concealment doctrine applies only to cases where 'a party is unwittingly induced not to file his action until after the expiration of the limitations period.'" (citation omitted)).  If the fraudulent concealment statute of limitations applies, the limitations period "commences at the time the plaintiff, through ordinary diligence, ***should have*** discovered the fraudulent actions causing its injuries," not when it ***actually*** discovers the fraudulent actions. *Bachman v. Bear, Stearns & Co.*, 57 F. Supp. 2d 556, 561 (N.D. Ill. 1999) (emphasis added) (internal quotation marks omitted)).

This Court's ruling in the *Pales* decision demonstrates that the Roach Estate's reliance on fraudulent concealment has no place here.  This Court ruled in *Pales* that even if Merck fraudulently concealed Vioxx's dangers, "Merck cannot be said to have concealed his cause of action" beyond the date of the drug's withdrawal, September 30, 2004. *Vioxx*, 522 F. Supp. 2d at 814.  That was the same date Pales's claim accrued under the discovery rule, leaving the entire two-year limitations period for Pales to sue Merck and satisfying the rule that fraudulent concealment does not extend the limitations period when a "reasonable time remains" after the plaintiff should have discovered the concealment. *See id.* (quoting *Muskat v. Sternberg*, 570 N.E.2d 696, 702 (Ill. App. Ct. 2001)) (internal quotation marks omitted).

It is clear, however, that the Roach Estate did have a reasonable time to file its claim within the limitations period.  Assuming that the discovery rule applies to wrongful death claims, the Roach Estate had the full two-year limitations period to file its claim after the September 30,

2004 withdrawal of Vioxx from the market. That situation would be exactly the same as Pales's situation, and the Court should reach the same conclusion. *See Vioxx*, 522 F. Supp. 2d at 814. If the discovery rule does not apply, the Roach Estate's claim accrued less than six months earlier, on April 8, 2008, at the time of Mrs. Roach's death. Even in that situation, a reasonable time would remain for the Roach Estate to sue. More than 18 months remained under the two-year limitations period for wrongful death on September 30, 2004, the day Merck withdrew Vioxx. Illinois courts have found, as a matter of law, that periods significantly shorter than 18 months are sufficient for a plaintiff to sue.[4] The Roach Estate's own complaint confirms that 18 months was more than a "reasonable time" for a plaintiff in its position to sue. According to its complaint, the Roach Estate required ***less than a month*** to file a claim for damages with the settlement administrator. *See* Compl. ¶ 8 (alleging that media coverage suggested Vioxx could cause strokes no earlier than July 1, 2008), *id.* ¶ 23 (stating that the Roach Estate's attorney filed a claim with the settlement administrator on July 17, 2008).

Even if a reasonable time did not remain to file suit after Vioxx's withdrawal, the Roach Estate sued after the five-year limitations period for fraudulent concealment expired. Just like Pales, the Roach Estate has no basis to argue that Merck fraudulently concealed the link between Vioxx and strokes after September 30, 2004. *Vioxx*, 522 F. Supp. 2d at 514. It is this date, the date on which the Roach Estate should have discovered its claim, that starts the limitations

---

[4] *Butler v. Mayer, Brown & Platt*, 704 N.E.2d 740, 745 (Ill. App. Ct. 1998) ("We have held that as little as six months remaining in a statute of limitations period is 'ample time' for a plaintiff to bring suit.") (citing cases); *see also Rajcan v. Donald Garvey & Assocs., Ltd.*, 807 N.E.2d 725, 729 (Ill. App. Ct. 2004) (finding one year to assert a legal malpractice claim reasonable as a matter of law); *Turner v. Nama*, 689 N.E.2d 303, 309–10 (Ill. App. Ct. 1997) (eight months); *Cramsey v. Knoblock*, 547 N.E.2d 1358, 1366 (Ill. App. Ct. 1989) ("Illinois courts have found that discovery of a claim with as little as 5 1/2 months remaining within the statute of limitations period constitutes a reasonable time . . . .") (citation omitted); *Real v. Kim*, 445 N.E.2d 783, 789 (Ill. App. Ct. 1983) (ten months); *Sabath v. Mansfield*, 377 N.E.2d 161, 167 (Ill. App. Ct. 1978) (eight months).

1091111v1

period, not the date on which the Roach Estate actually discovered its claim. *Bachman*, 57 F. Supp. 2d at 561. The Roach Estate did not bring suit until more than five years later, on November 12, 2009. Even the five-year statute of limitations for fraudulent concealment would not save the Roach Estate's claim.

## CONCLUSION

Because the Estate failed to file its wrongful-death claim within either the two-year limitations period for wrongful death claims or the five-year period for fraudulently concealed claims, Merck is entitled to summary judgment.

Dated: April 18, 2012

                                                    Respectfully submitted,

By: */s/ Dorothy H. Wimberly*
     Phillip A. Wittmann, 13625
     Dorothy H. Wimberly, 18509
     STONE, PIGMAN WALTHER WITTMANN L.L.C.
     546 Carondelet Street
     New Orleans, Louisiana 70130
     Phone: 504-581-3200
     Fax:    504-581-3361

     Defendants' Liaison Counsel

     —and—

     Douglas R. Marvin
     Eva Petko Esber
     M. Elaine Horn
     WILLIAMS & CONNOLLY LLP
     527 Twelfth Street, N.W.
     Washington, D.C. 20005
     Phone: 202-434-5000
     Fax:    202-434-5029

     Attorneys for Merck Sharp & Dohme Corp.

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Memorandum in Support of Merck Sharp & Dohme Corp.'s Motion for Summary Judgment has been served on Liaison Counsel, Russ Herman, Phillip Wittmann and Ann Oldfather, by U.S. Mail and e-mail or by hand delivery and e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with PreTrial Order No. 8(C), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 18th day of April, 2012.

    */s/ Dorothy H. Wimberly*
    Dorothy H. Wimberly, 18509
    STONE PIGMAN WALTHER
    WITTMANN L.L.C.
    546 Carondelet Street
    New Orleans, Louisiana  70130
    Phone:  504-581-3200
    Fax:     504-581-3361
    dwimberly@stonepigman.com

1091111v1