UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Vioxx | * | MDL Case No. 1657 |
| | * | |
| PRODUCTS LIABILITY | * | SECTION L |
| LITIGATION | * | |
| | * | JUDGE FALLON |
| *This document relates to* | * | |
| | * | MAGISTRATE JUDGE |
| *Stanley Long v. Merck & Co., Inc.,* | * | KNOWLES |
| 2:05-cv-06510-EEF-DEK | * | |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND MEMORANDUM IN SUPPORT THEREOF**

Defendant Merck Sharp & Dohme Corp. ("Merck")[1], respectfully requests that the Court enter summary judgment pursuant to Federal Rule of Civil Procedure 56 in Defendant's favor on all of Plaintiff Long's claims. Mr. Long claims that in December 2002 he developed "[b]leeding in the stomach" caused by his use of Vioxx. Am. Pl. Profile Form ("PPF") at 2 (Ex. 3). Summary judgment is appropriate as to Mr. Long's claims for three independently dispositive reasons.

First, Vioxx could not possibly have caused Mr. Long's injury because he ***was not using Vioxx*** at the time the injury occurred. Second, even if Mr. Long had been using Vioxx at the time of his injury—which he was not—the Vioxx package insert clearly warned about the risk of gastrointestinal toxicity, including stomach bleeds. Finally, Mr. Long's claims are barred by

---

[1] On November 4, 2009, the entity formerly known as Merck & Co., Inc. changed its name to Merck Sharp & Dohme Corp. ("Merck").

Kentucky's statute of limitations because he filed suit more than four years after his alleged injury. Kentucky law requires that such a suit be filed within one year.

## I.     THE UNDISPUTED FACTS

### A.     Plaintiff Was Not Using Vioxx at the Time His Alleged Injury Occurred.

On December 6, 2002, Mr. Long was admitted to the hospital for a gastrointestinal bleed.[2]  Ex. 2 at LongS-WinMedInfo-00177; LongS-WinMedInfo-00161; LongS-WinMedInfo-00186; LongS-WinMedInfo-00171.[3]  He ***was not using Vioxx*** at the time. Ex. 2 at LongS-WinMedInfo-00200.  Instead, he was using two different non-steroidal anti-inflammatory products ("NSAIDs")—diclofenac and aspirin—and an anti-platelet drug, clopidogrel (Plavix), all three of which are associated with an increased risk of bleeding. Ex. 2 at LongS-WinMedInfo-00263–00264; Diclofenac Package Insert (Ex. 4); Aspirin Package Insert (Ex. 5); Plavix Package Insert (Ex. 6). Mr. Long's medical records show that he did not receive a prescription for Vioxx until December 12, 2002, one day prior to being discharged from the hospital. Ex. 2 at LongS-WinMedInfo-00263–00264; LongS-WinMedInfo-01457.

---

[2]     When Plaintiff enrolled in the Settlement Program on July 1, 2008, he claimed that Vioxx had caused him to suffer a myocardial infarction (commonly referred to as a heart attack) on December 1, 2002.  Pl.'s Claims Form (Ex. 11).  The Vioxx Resolution Program's Claims Administrator and Gate Committee determined that Plaintiff's claims failed to meet the Resolution Program's eligibility requirements because there is no evidence whatsoever (i) that Plaintiff suffered a myocardial infarction on December 1 or December 6, 2002 or (ii) that Plaintiff was using Vioxx on December 1 or December 6, 2002.  Pl.'s Injury Gate Report (Ex. 15); Claims Administrator Notice of Ineligibility (Ex. 14); Gate Committee Notice of Ineligibility (Ex. 16).

[3]     All exhibits referenced herein are attached to Defendant's Statement of Material Facts As To Which There Is No Dispute, filed contemporaneously with this Motion.

2

**B.     Every Vioxx Package Insert Contained Warnings Regarding GI Bleeding.**

Vioxx is a non-steroidal anti-inflammatory drug approved by the U.S. Food and Drug Administration ("FDA") in May 1999 to treat, among other things, osteoarthritis. *See* May 1999 Vioxx Package Insert (Ex. 7). As with all NSAIDs, gastrointestinal toxicity, including stomach bleeding, was a known risk of using Vioxx. Indeed, Merck specifically warned about the risk of GI events, including stomach bleeds, in each of Vioxx's labels.

The original Vioxx label, approved by the FDA in May 1999, stated:

> **WARNINGS**
>
> **Gastrointestinal (GI Effects) – Risk of GI Ulceration, Bleeding, and Perforation:** Serious gastrointestinal toxicity such as bleeding, ulceration, and perforation of the stomach, small intestine or large intestine, can occur at any time, with or without warning symptoms, in patients treated with nonsteroidal anti-inflammatory drugs (NSAIDs). . . . Patients should be informed about the signs and/or symptoms of serious GI toxicity and the steps to take if they occur. . . . NSAIDs should be prescribed with extreme caution in patients with a prior history of ulcer disease or gastrointestinal bleeding.

Ex. 7 at pp. 7–8. The label's *Information for Patients* section warned that "Vioxx can cause discomfort and, rarely, more serious side effects, such as gastrointestinal bleeding, which may result in hospitalization and even fatal outcomes." *Id.* at p. 10.

Likewise, the 1999 Patient Information Sheet, provided to patients and appended to the physician labeling, added:

> Serious stomach problems, ***such as stomach and intestinal bleeding***, can occur without warning symptoms. These problems, if severe, could lead to hospitalization or death. Although this happens rarely, you should watch for signs that you may have this serious side effect and tell your doctor right away.

Ex. 8 at MRK-LBL0000001 (emphasis added).

3

The Vioxx label continued to warn about the risk of GI events during the entire time that Vioxx was on the market. The April 2002 package insert and Patient Information Sheet, which was in effect at the time of Mr. Long's alleged injury, contain the same statements concerning the risk of GI events as found in the 1999 versions. *See* Ex. 9 at MRK-LBL0000068; Ex. 10 at MRK-LBL0000227.

**II.     LEGAL STANDARD**

Summary judgment should be granted whenever it becomes apparent that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Summary judgment "is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the . . . Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (*quoting* Fed. R. Civ. P. 1). A party moving for summary judgment may discharge its burden to support the motion "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. The burden of production then shifts to the nonmoving party to introduce specific facts showing there is a genuine issue for trial. *Id.* at 322–24; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Bland v. Norfolk & S. R. Co.*, 406 F. 2d 863, 866 (4th Cir. 1969) ("[A]n adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in [Fed. R. Civ. P. 56], must set forth specific facts showing that there is a genuine issue for trial.").

### III.   ARGUMENT

#### A.   Because Plaintiff Was Not Using Vioxx at the Time of His Alleged Injury, Vioxx Cannot Possibly Have Caused the Event.

Vioxx could not possibly have caused Mr. Long's alleged injury because he was not taking Vioxx at the time it occurred. Plaintiff alleges that his ingestion of Vioxx caused a stomach bleed on December 6, 2002. Am. Pl. Profile Form (Ex. 3) at 2; Ex. 2 at LongS-WinMedInfo-00200.[4] Yet Plaintiff's medical records show that Plaintiff was not prescribed Vioxx until December 12, 2002—nearly a week *after* his condition had been diagnosed and one day prior to being discharged from the hospital. *See* LongS-WinMedInfo-00264; LongS-WinMedInfo-01457.

Kentucky has adopted the Restatement (Second) of Torts formulation with respect to legal causation, which states that a plaintiff's harm is caused by a defendant's negligence if defendant's "conduct is a substantial factor in bringing about the harm." *CertainTeed Corp. v. Dexter*, 330 S.W.3d 64, 77 (Ky. 2010). It is impossible that Mr. Long's use of Vioxx could have been a substantial factor in causing Plaintiff's harm, given that Plaintiff only began taking Vioxx *after* the injury of which he complains.

Because Mr. Long did not take Vioxx prior to his alleged injury, Vioxx could not—as a matter of law, medicine, or logic—have caused his injury.

---

[4] Plaintiff claimed that he suffered a cardiovascular injury in his complaint. Compl. (Ex. 1) at ¶ 17. However, his Profile Form, filed *after* his Complaint, clearly claims a stomach bleed as the alleged injury. Ex. 3 at 2. In the end, it does not matter either way. There is no evidence in this case that Plaintiff was using Vioxx at the time of any cardiovascular injury.

B.    **Plaintiff's Claims Would Still Fail Even if He Had Been Using Vioxx at the Time of the Alleged Injury Because the Risks of Gastrointestinal Bleeds Was Plainly Stated in the Label.**

Plaintiff alleges that Merck failed to warn Plaintiff's prescriber, Dr. Buridine, concerning the risk of GI toxicity associated with Vioxx and, as a result, Vioxx caused Plaintiff to develop an ulcer in December 2002. Am. Pl. Profile Form (Ex. 3) at 2. Yet in this case there can be no dispute that *every* Vioxx label and Patient Information Sheet warned specifically and repeatedly about the risk of GI toxicity. In other words, this is a failure-to-warn case in which there is no dispute that Merck warned about the risk of GI events during the entire time Vioxx was on the market.

Like most states, Kentucky applies the learned intermediary doctrine to pharmaceutical failure-to-warn claims like this one. *See Larkin v. Pfizer, Inc.*, 153 S.W.3d 758, 770 (Ky. 2004). Under the learned intermediary doctrine, the manufacturer's duty to warn runs *to the physician*, not to the patient. Where, as here, a products liability action alleges injury based upon the manufacturer's failure to warn, "the liability test . . . , regardless of the theory of liability, is 'adequacy.'" David G. Owen, *Products Liability Law* § 9.2, at 593 (2d ed. 2008). A warning, "to be 'adequate,' need not be perfect, only 'reasonable.'" *Id.* § 9.3, at 613.

The GI toxicity warnings in Vioxx labeling were adequate as a matter of law. As discussed above, Vioxx's package insert gave the following warning:

> **WARNINGS**
>
> *Gastrointestinal (GI Effects) – Risk of GI Ulceration, Bleeding, and Perforation*
>
> Serious gastrointestinal toxicity **such as bleeding, ulceration, and perforation of the stomach**, small intestine or large intestine, can occur at any time, with or without warning symptoms, in patients

> treated with nonsteroidal anti-inflammatory drugs (NSAIDs). . . . Patients should be informed about the signs and/or symptoms of serious GI toxicity and the steps to take if they occur. . . . NSAIDs should be prescribed with extreme caution in patients with a prior history of ulcer disease or gastrointestinal bleeding.

Ex. 7 at pp. 7–8; Ex. 9 at MRK-LBL0000068 (emphasis added).

Here, Mr. Long cannot possibly establish that the Vioxx package insert in effect during the time that he would have been taking Vioxx inadequately warned Dr. Buridine, his prescribing physician, of the risk of GI events. GI toxicity was a known—and warned about—risk of Vioxx from the moment it became available  Where, as here, a product's label informs the prescribing physician about risks concerning the condition that a plaintiff subsequently suffers, those warnings are adequate as a matter of law. *Larkin* at 764 (instituting learned intermediary doctrine and noting that "[s]everal cases have held that a package insert may be sufficient for the warning to be adequate as a matter of law [and t]he warning may also be adequate if posted in the Physician's Desk Reference"). *See also Mills*, 764 F.2d at 378 ("We therefore hold that the Government's warning was adequate to inform Mr. Mills of the risk of suffering a fatally allergic reaction to the vaccine."); *Brumley v. Pfizer, Inc.*, 149 F. Supp. 2d 305, 310 (S.D. Tex. 2001) ("[I]f a warning specifically mentions the circumstances complained of, the warning is adequate as a matter of law."); *Plenger v. Alza Corp.*, 11 Cal. App. 4th 349, 361 (Cal. Ct. App. 1992) (affirming summary judgment that warnings were adequate as a matter of law where package insert warned about the risk of the alleged injury); *Martin v. Hacker*, 628 N.E.2d 1308, 1315 (N.Y. 1993) ("In sum, Chelsea has established that the reserpine package insert contains language which, on its face, adequately warns against the precise risk in question, i.e.,

7

depression-caused suicide."). Thus, the motion should be granted because the Vioxx labels concerning GI events are adequate as a matter of law.

### C. Plaintiff's Claims are Time Barred By Kentucky's One-Year Statute of Limitations.

In Kentucky, a plaintiff with a claim based on personal injury is required to file his lawsuit within one year of accrual. *See* KRS 413.140(1). Section 2 of the statute provides that claims for personal injuries accrue "at the time the injury is first discovered or in the exercise of reasonable care should have been discovered . . . ." *Id.* at 413.140(2). The limitations period commences when one knows, or in the exercise of reasonable diligence should know, that "(1) he has been wronged; and, (2) by whom the wrong has been committed." *Wiseman v. Alliant Hospitals, Inc.*, 37 S.W.3d 709, 712 (Ky. 2000); *Hackworth v. Hart, Ky.*, 474 S.W.2d 377 (Ky. 1971). The discovery rule does not require awareness that a claim is actionable; rather, a claim accrues once a party has knowledge, or would have knowledge through a inquiry, of some harm and its possible culprit. *See Vannoy v. Milum*, 171 S.W.3d 745, 748-49 (Ky.App. 2005).

In this case, there can be no dispute that Mr. Long—assuming he had been using Vioxx at the time of his injury—would have had reason to suspect that Vioxx may have caused his stomach bleed. That very risk was disclosed in Vioxx's package insert and Patient Information Sheet from the time Vioxx was approved in May 1999. *See supra* Part III.B. Because Mr. Long waited four years to file a lawsuit, well beyond Kentucky's one-year period of limitations, his claims are barred and must be dismissed.

## CONCLUSION

For the reasons stated above, the Court should grant Defendant's Motion for Summary Judgment and dismiss Plaintiff's complaint with prejudice.

1091122v1

Respectfully submitted,

*/s/ Dorothy H. Wimberly*
Phillip A. Wittman, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMAN L.L.C.
546 Carondelet Street
New Orleans, LA 70130

Defendant's Liason Counsel

Douglas R. Marvin
Eva Petko Esber
M. Elaine Horn
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Phone: 202-434-5000
Fax:    202-434-5029

Attorneys for Merck

1091122v1

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Motion for Summary Judgment and Memorandum in Support Thereof has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail, upon Liaison Counsel Ann Oldfather by e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8C, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 18th day of April, 2012.

/s/ *Dorothy H. Wimberly*
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361
dwimberly@stonepigman.com

Defendants' Liaison Counsel

1091122v1