UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
|  | : | MDL NO. 1657 |
| IN RE: VIOXX | : |  |
| PRODUCTS LIABILITY LITIGATION | : | SECTION: L |
|  | : |  |
|  | : | JUDGE FALLON |
|  | : | MAG. JUDGE KNOWLES |

.. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. :

**THIS DOCUMENT RELATES TO:** *Rosie Escamilla v. Merck & Co.*, **Case No. 08-3573;** *Melvin Cormier, et al. v. Merck & Co., Inc.*, **Case No. 05-4991, as to Cheryl Kuykendall ONLY**

## ORDER & REASONS

Currently pending before the Court are two motions for summary judgment filed by Defendant Merck, (Rec. Docs. 63662, 63674), premised on two Vioxx Plaintiffs' purported failure to provide case-specific expert reports suggesting an injury caused by Vioxx. The Court has reviewed the briefs and the applicable law and now issues this Order and Reasons.

**I.     Background**

As set out at length in other Orders and Reasons, roughly 50,000 Vioxx personal injury claims were resolved through a Settlement Program created by a private Master Settlement Agreement ("MSA") negotiated between Merck and Plaintiffs' counsel after extensive discovery, pretrial motions, and nineteen bellwether trials in state and federal court. The satisfactory nature of that settlement is revealed by the enrollment rate, which was approximately 99.9%. However, some claims were not resolved through the Settlement Program, either

because the claimants elected not to participate, the cases were filed after the MSA was announced and were therefore excluded, or because the claimant enrolled and then exited the Settlement Program.  To address these categories of plaintiffs, the Court issued a number of Pretrial Orders.  Pretrial Order 28 governed plaintiffs who had claims pending or subject to a tolling agreement prior to announcement of the settlement.  Pretrial Order 29 governed plaintiffs whose claims were filed in or transferred to the MDL after the settlement was announced.  Pretrial Order 43 governed plaintiffs who enrolled in the Settlement Program but failed to qualify and, pursuant to the terms of the MSA, exited the program to pursue their claims in court.

Collectively, these pretrial orders imposed certain minimal disclosure obligations on plaintiffs and claimants.  For example, Pretrial Order 29 required a plaintiff to produce a case-specific expert report regarding his or her injury and its causal link to Vioxx:

> A Rule 26(a)(2) case-specific expert report from a medical expert attesting (i) that the Plaintiff suffered an injury and (ii) that Vioxx caused the injury.  The case-specific expert report must include (i) an explanation of the bases of the attestation that Vioxx caused the plaintiff to suffer the injury; (ii) an identification of any other causes that were considered in formulating the opinion; (iii) a description of the specific injuries allegedly suffered; (iv) a description of the specific medical findings that support the diagnosis of those injuries; and (v) an identification of all documents relied on by the expert in forming his opinions.

(PTO 29, Rec. Doc. 12963 at 3-4).  Pretrial 43 imposed an identical case-specific expert report requirement.  (PTO 43, Rec. Doc. 20399 at 2).  Pretrial Order 28 imposed a substantially similar requirement.  (PTO 28, Rec. Doc. 12962 at 4) ("A Rule 26(a)(2) case-specific expert report from a medical expert attesting (i) to a reasonable degree of medical probability that the Plaintiff or Claimant suffered an injury and (ii) that Vioxx caused the injury.").

Pretrial Orders 28, 29, and 43 are "*Lone Pine*" orders.  As the Court explained in

connection with a challenge to Pretrial Order 28,

> This name comes from *Lore v. Lone Pine Corp.*, in which the Superior Court of New Jersey approved of a pre-trial order requiring plaintiffs to provide some basic facts in the form of expert reports or run the risk of having their case dismissed. *See* 1986 WL 637507, at *1-*3 (N.J. Super. Nov. 18, 1986). *Lone Pine* orders "are designed to handle the complex issues and potential burdens on defendants and courts in mass tort litigation." *Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 340 (5th Cir. 2000). "The basic purpose of a *Lone Pine* order is to identify and cull potentially meritless claims and streamline litigation in complex cases." *Baker v. Chevron USA, Inc.*, 2007 WL 315346, *1 (S.D. Ohio Jan. 30, 2007). Since the New Jersey Court's decision, *Lone Pine* orders have been routinely used by courts to manage mass tort cases.

*In re Vioxx Prods. Liab. Litig.*, 557 F. Supp. 2d 741, 743 (E.D. La. 2008). The Court found that *Lone Pine* orders were appropriate "at [that] advanced stage of the litigation, [because] it is not too much to ask a Plaintiff to provide some kind of evidence to support their claim that Vioxx caused them personal injury." *Id.* at 744. The Court then dismissed the claims of plaintiffs who failed to timely produce the required case-specific specific expert reports, and the Fifth Circuit affirmed the use of Pretrial Order 28 and dismissal of those claims. *In re Vioxx Prods. Liab. Litig.*, 388 F. App'x 391, 397-98 (5th Cir. 2010).

Merck now moves for summary judgment in two cases in which the plaintiffs submitted case-specific expert reports pursuant to the applicable Pretrial Order, but the reports purportedly fail to attest that Vioxx caused an injury. With respect to the Escamilla Plaintiffs, Merck argues that the doctor who issued the report fails to opine regarding a causal link between Vioxx and the injury. With respect to Plaintiff Kuykendall, Merck argues that the doctor who issued the report fails to opine that there was any cardiac injury, or that it was causally linked to Vioxx. Because these two reports fail to present even minimal evidence of a viable Vioxx personal injury claim, Merck argues that summary judgment in its favor is appropriate.

Plaintiffs oppose Merck's motions on the grounds that it is inappropriate to grant summary judgment based solely on the sufficiency of a *Lone Pine* report. Ann Oldfather, Liaison Counsel for certain cases, also filed an opposition on that basis. In addition, the Escamilla Plaintiffs oppose the motion on the additional ground that either the original Pretrial Order 29 report or a recent supplemental report constitute satisfactory evidence at this stage of the proceedings that the decedent suffered an injury causally linked to Vioxx.

## II.     Law and Analysis

### A.     Summary Judgment Standard

Summary judgment is appropriate if the moving party can show "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). Under Federal Rule of Civil Procedure 56(c), the moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When the moving party has met its Rule 56(c) burden, the nonmovant cannot survive a motion for summary judgment by resting on the mere allegations of its pleadings. *See Prejean v. Foster*, 227 F.3d 504, 508 (5th Cir. 2000). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 253 (1986). In deciding a summary judgment motion, the court reviews the facts drawing all reasonable inferences in the light most favorable to the nonmovant. *Id*. at 255.

### B.     Summary Judgment Based on the Sufficiency of the Contents of a *Lone Pine* Case-Specific Expert Report

The Court has previously dismissed numerous cases in which the plaintiffs failed to submit any report at all as required by the applicable Pretrial Order. The present motions present a slightly different issue. Here, Plaintiffs submitted a case-specific report from an expert, but Merck argues that the content of the report does not support the inference that Vioxx caused any injury. Merck argues that summary judgment is appropriate in cases such as these. The *Lone Pine* Orders required plaintiffs to produce some minimal *prima facie* showing of an injury and a causal link between that injury and Vioxx. If the case-specific expert report fails to pass even that low threshold, then the claims lack factual merit and summary judgment on them is warranted.

Plaintiffs respond that Merck wants to transform the *Lone Pine* case-specific expert reports into fully-fledged *Daubert* reports, which they were not meant to be. Rather, they argue that the reports were merely intended to be a preliminary disclosure to facilitate discovery in cases that were not resolved through the Settlement Program. Because the reports were not meant to stand alone as a plaintiff's proof of injury and causation, Plaintiffs argue that any deficiency in a properly-submitted report should not be the basis for a motion for summary judgment.

Plaintiffs are correct insofar as the case-specific expert reports required by Pretrial Orders 28, 29, and 43 were not intended to be polished expert witness reports compliant with Rule 702 and capable of withstanding *Daubert* scrutiny. The Court has explained the light burden imposed by these Orders:

> To ask a claimant to submit a report that says they have a condition, and the condition is caused by Vioxx – I'm not asking for a Daubert report; I'm not asking for even a witness report; I'm not asking for someone to come forward and say, we're going to call this doctor as a witness. But, for a plaintiff lawyer to

> have a case for four years and not have any access to a report that says this claimant's injury results from the taking of Vioxx, after seven years if you don't have that in your file, it's a problem, I think.
> ...
> How do I separate the wheat from the chaff in these matters other than to say, get me a report from somebody who says, assuming all of this to be true, I think my patient's problem is due to Vioxx? That might pass muster.

(Transcript of Monthly Status Conference, May 22, 2008, at 60, 64). The case-specific expert report is not a *Daubert* report. Rather, it is intended to be only a preliminary showing that a case potentially has merit, "which plaintiffs should have had before filing their claims pursuant to Fed. R. Civ. P. 11(b)(3)." *Acuna*, 200 F.3d at 340.

But it is one thing to say that a Pretrial Order 28, 29, or 43 report is not a *Daubert* report, and another thing entirely to say that the report need not support the inference that Vioxx caused or contributed to an injury. The Court sees little practical difference between, on the one hand, a plaintiff who does not submit a case-specific expert report at all, and on the other hand, a plaintiff who submits a report from an expert who does not opine that Vioxx caused any injury. In both instances, a plaintiff has not made the minimal required showing of a potentially meritorious claim. The purpose of these *Lone Pine* orders was to screen viable claims from non-viable claims, and thus it will be appropriate in some instances to grant summary judgment where the case-specific expert report does not suggest an injury causally linked to Vioxx. Otherwise, a *Lone Pine* order has no teeth. Thus, summary judgment based on the insufficiency of a Pretrial Order 28, 29, or 43 case-specific expert report is not categorically forbidden. The Court next turns to whether summary judgment is appropriate in these specific cases.

**C.    Summary Judgment in the *Escamilla* Case**

Plaintiffs Rosie, Adrian, Daniel, and Carlos Escamilla filed suit against Merck in

California state court in 2008, alleging that Vioxx caused the death of Robert Escamilla. (Case No. 08-3573, Rec. Doc. 1-2). The case was removed to federal court and transferred to the MDL on July 3, 2008. Because of when the case was transferred, Plaintiffs were subject to Pretrial Order 29. They complied with Pretrial Order 29 by timely submitting a declaration from Dr. Swaminataha V. Gurudevan, dated December 26th (apparently in 2008), regarding Mr. Escamilla. (Rec. Doc. 63662-1). The report set forth Dr. Gurudevan's background, the records he reviewed, and Mr. Escamilla's medical history. The relevant portions of the report are as follows:

> Mr. Escamilla was a 50-year-old man with a past medical history of hypertension and hyperlipidemia who was employed as a troubleman with Southern California Edison. He had a longstanding history of lumbosacral disc disease and chronic low back pain for which he took rofecoxib (Vioxx). On the morning of 3/1/07,[1] while working, he developed 2 episodes of prolonged chest pain lasting 45 to 60 minutes requiring him to stop work and sit down to rest. He had no prior episodes of chest pain on earlier days and his chest pain continued while he was resting. While his co-workers were making arrangements to take him to a hospital for medical attention, he suddenly lost consciousness and was found to be both pulseless and apneic. CPR was started by two of his co-workers ... and 911 was called. ... [H]e passed away and was pronounced dead at the Emergency Department at San Gabriel Valley Medical Center. In summary, Mr. Escamilla had two significant risk factors for coronary artery disease (hypertension and hyperlipidemia) and had two episodes of chest discomfort followed by an acute cardiopulmonary arrest. Based upon my review of Mr. Ramsey's[2] relevant medical records, as well as based upon my training, education and experience, I am of the opinion that Mr. Ramsey suffered an acute myocardial infarction on 3/1/2007 that was complicated by ventricular fibrillation and sudden cardiac death.

(*Id.* at 3-4).

---

[1] Vioxx was removed from the market in September, 2004.

[2] The report inexplicably refers to Mr. Escamilla mistakenly as "Mr. Ramsey" in two instances.

On the basis of this report, Merck moves for summary judgment. It contends that the report is devoid of any suggestion by the expert that Vioxx caused or contributed to Mr. Escamilla's death. In the absence of any statement of a causal link between the injury and Vioxx, as required by Pretrial Order 29, Merck contends that there is simply no evidence of causation and summary judgment in its favor should be granted.

In opposition, Plaintiffs submit a second report from Dr. Gurudevan. In that report, dated March 2, 2012, Dr. Gurudevan goes beyond his original report and opines as to causation:

> Based upon my review of Mr. Escamilla's relevant medical records, as well as based upon my training education and experience, I am of the opinion that Mr. Escamilla suffered an acute myocardial infarction on 3/1/2007 that was complicated by ventricular fibrillation and sudden cardiac death.
> The most common cause of ventricular fibrillation arrest in the United States today is plaque rupture leading to coronary thrombosis and acute myocardial infarction. It is further my opinion that Mr. Escamilla, to a reasonable degree of medical probability, suffered acute myocardial infarction because of his risk factors including hypertension, hyperlipidemia, and ongoing use of rofecoxib (Vioxx) for long standing history of lumbosacral disc disease and chronic low back pain. Based on my education, training, and experience, and based on my review of medical literature, use of rofecoxib (Vioxx) increases risk of coronary events in at-risk patients, including increased risk of myocardial infarction, cardiopulmonary arrest and sudden cardiac death. The use of rofecoxib (Vioxx), *particularly in combination* with Mr. Escamilla's other significant risk factors, to a reasonable degree of medical probability, ultimately caused him to have acute myocardial infarction which then resulted in acute cardiopulmonary arrest and his subsequent death.

(Rec. Doc. 63714 at 62-63) (emphasis in original). Plaintiff argues that this supplemental report sufficiently raises a genuine issue of fact as to an injury caused by Vioxx that, for the purposes of the present motion, defeats summary judgment. Merck did not file a reply addressing this new report.

Although untimely, the second report from Dr. Gurudevan satisfies the content requirements of PTO 29. It states that Mr. Escamilla had a specific injury, and that Vioxx was a

factor in causing that injury. For the purposes of a *Lone Pine* order such as Pretrial Order 29, this is sufficient. Merck's motion for summary judgment is denied as to the Escamilla Plaintiffs.

### D.      Summary Judgment in the *Kuykendall* Case

Plaintiff Cheryl Kuykendall filed suit in this Court on October 17, 2005, alleging that she "suffered significant heart problems in August of 1999 as a result of his (or her) use of Vioxx." (Case No. 05-4991, Rec. Doc. 1 at ¶ 52). Merck submits undisputed documentation that Ms. Kuykendall enrolled in the Settlement Program and pursued a claim that she suffered a myocardial infarction, but did not qualify for payment through the Program. Ms. Kuykendall exited the Settlement Program, pursuant to the terms of the MSA, by filing a Future Evidence Stipulation ("FES") in which she contractually agreed that she would not "allege an injury connected with Vioxx other than the injury or injuries [she] claimed" in the Settlement Program, which was reflected on the FES as a myocardial infarction.

Because she exited the Settlement Program by filing a FES, Ms. Kuykendall's case was governed by Pretrial Order 43. Ms. Kuykendall complied with Pretrial Order 43 by submitting a one-paragraph statement from Dr. Christopher L. Ingram. Dr. Ingram's opinion, in its entirety, is as follows:

> I am [a] licensed physician in the state of Louisiana. I am also board certified in Internal Medicine and Cardiology. Also, I am a Fellow of the American College of Physicians and a Fellow in the American College of Cardiology. In review of Mr. Kuykendall's medical records with specific regards to her [sic] Vioxx utilization. The patient had one adverse event, possibly related to Vioxx on 8/13/99. However, it does not follow in the cardiovascular grid and does not appear in any way related to cardiovascular disease. No cardiac work up was undertaken as stated on the available medical records. Therefore, it appears that the patient's presentation to Hermann Hospital on 08/13/99, does not appear to have had an adverse reaction to the patient's cardiovascular status with reasonable degree of medical certainty.

(Exh. A to Merck's Mot. at 1).

Merck argues that this fails to provide some minimal *prima facie* evidence of a myocardial infarction or cardiac injury at all, let alone an injury causally linked to Vioxx. Accordingly, Merck contends that summary judgment on Plaintiff's case is warranted.

In opposition, Ms. Kuykendall argues only that summary judgment on the basis of a case-specific expert report is inappropriate. The Court has rejected that argument. She does not address whether her particular report in any way supports an inference that she suffered the type of injury she may now pursue. It does not. Accordingly, there is no genuine dispute of material fact that Ms. Kuykendall's case-specific expert report does not present even a minimal basis for inferring a viable Vioxx claim. Merck's Motion for Summary Judgment is granted as to Ms. Kuykendall.

## IV.   CONCLUSION

IT IS ORDERED that Merck's Motion for Summary Judgment with respect to the Escamilla Plaintiffs (Rec. Doc. 63662) is DENIED and Merck's Motion for Summary Judgment with respect to Plaintiff Kuykendall (Rec. Doc. 63674) is GRANTED. Plaintiff Kuykendall's claims are DISMISSED WITH PREJUDICE.

New Orleans, Louisiana, this 23rd day of April, 2012.

_____
UNITED STATES DISTRICT JUDGE