UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| | : | MDL NO. 1657 |
| IN RE: VIOXX | : | |
|     PRODUCTS LIABILITY LITIGATION | : | SECTION: L |
| | : | |
| | : | JUDGE FALLON |
| | : | |
| | : | MAG. JUDGE KNOWLES |
| .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. | : | |

**THIS DOCUMENT RELATES TO: CERTAIN PENDING PERSONAL INJURY ACTIONS**

## ORDER & REASONS

The Court has pending before it a number of motions related to common benefit fee and cost assessments in certain personal injury actions not resolved through the Master Settlement Agreement: the PSC's Motion to Amend Pre-Trial Order No. 19 (Rec. Doc. 63585); a Motion for Order Requiring Escrow and Disclosures of Common Benefit Fee and Cost Withholdings From Settlement of Ineligible and Non-Enrolled Cases (Rec. Doc. 63154); and a Motion to Exclude Movant from the Requirements of PTO 19 With Regard to the Settlement of the 16 Cases Described in the Instant Motion (Rec. Doc. 63680). The Court has reviewed the briefs and the applicable law and now issues this Order and Reasons.

**I.    Background**

This multidistrict products liability litigation involves the prescription drug Vioxx, known generically as Rofecoxib. Merck, a New Jersey corporation, researched, designed, manufactured, marketed and distributed Vioxx to relieve pain and inflammation resulting from

osteoarthritis, rheumatoid arthritis, menstrual pain, and migraine headaches. On May 20, 1999, the Food and Drug Administration approved Vioxx for sale in the United States. Vioxx remained publicly available until September 20, 2004, when Merck withdrew it from the market after data from a clinical trial known as APPROVe indicated that the use of Vioxx increased the risk of cardiovascular thrombotic events such as myocardial infarction (heart attack) and ischemic stroke. Thereafter, thousands of individual suits and numerous class actions were filed against Merck in state and federal courts throughout the country alleging various products liability, tort, fraud, and warranty claims. It is estimated that 105 million prescriptions for Vioxx were written in the United States between May 20, 1999 and September 30, 2004. Based on this estimate, it is thought that approximately 20 million patients have taken Vioxx in the United States.[1]

California was the first state to institute a consolidated state court proceeding on October 30, 2002. New Jersey and Texas soon followed suit, on May 20, 2003 and September 6, 2005, respectively. On February 16, 2005, the Judicial Panel on Multidistrict Litigation ("MDL") conferred MDL status on Vioxx lawsuits filed in various federal courts throughout the country and transferred all such cases to this Court to coordinate discovery and to consolidate pretrial matters pursuant to 28 U.S.C. § 1407. *See In re Vioxx Prods. Liab. Litig.*, 360 F. Supp. 2d 1352 (J.P.M.L. 2005). Even after the creation of this federal MDL, many cases remained pending in the various state courts.

---

[1] For a more detailed factual background describing the events that took place before the inception of this multidistrict litigation, see *In re Vioxx Prods. Liab. Litig.*, 401 F. Supp. 2d 565 (E.D. La. 2005) (resolving *Daubert* challenges to a number of expert witnesses).

The Court oversaw substantial pretrial litigation and presided over six bellwether trials. In connection with those efforts, the Court entered Pretrial Order 19, which established a Plaintiffs' Litigation Expense Fund to compensate and reimburse attorneys for services performed and s incurred for the common benefit. (Pretrial Order 19, Rec. Doc. 786 at 1) (explaining that purpose of Order is "to provide for the fair and equitable sharing among plaintiffs of the cost of special services performed and expenses incurred by attorneys acting for MDL administration and common benefit of all plaintiffs in this complex litigation"). Pursuant to this Order, any case that was settled, compromised, dismissed, or otherwise reduced to judgment for monetary relief, with or without trial, was subject to an assessment. In order to avail themselves of the initial work of the common benefit attorneys, individual plaintiffs' counsel could, for a limited time, enter into a contract that was to dictate the assessment amount. The "Full Participation Option," which was one such option, established an assessment of 2% of the recovery for fees and 1% of the recovery for costs. *See* Pretrial Order No. 19 (Aug. 4, 2005). Counsel were able to select the "Full Participation Option" within 90 days of the entry of Pretrial Order 19. Following that period, counsel could accept a "Traditional Assessment Option" providing for 6% assessment of recoveries in MDL cases and 4% assessment of recoveries in state court cases.

Approximately 50,000 Vioxx personal injury claims were resolved through a Settlement Program created by a private Master Settlement Agreement ("MSA") negotiated between Merck and Plaintiffs' counsel after extensive discovery, pretrial motions, and nineteen bellwether trials in state and federal court. The satisfactory nature of that settlement is revealed by the enrollment rate, which was approximately 99.9%. The Settlement Agreement superseded the common

benefit fee and cost assessments provided for in Pretrial Order No. 19. *Id.* ("The maximum 8% attorneys' fee assessment shall supersede the assessment provided to MDL common benefit attorneys pursuant to Pretrial Order No. 19.")

However, some claims pending in the MDL were not resolved through the Settlement Program, either because the claimants elected not to participate, the cases were filed after the MSA was announced and were therefore excluded, or because the claimant enrolled and then exited the Settlement Program. Consequently, those claims remain subject to Pretrial Order 19.

## II.     Present Motions

The Court has three motions related to Pretrial Order 19 and the status of assessments on cases not settled through the MSA. First, the PSC has filed a motion to amend Pretrial Order 19 to reduce assessments for cases subject to Pretrial Order 29 alleging a heart attack or stroke injury to an across-the-board 2% for fees and 1% for costs. Second, Ms. Oldfather has moved to place Pretrial Order 19 assessments in escrow and for discovery of the amounts paid in settlements outside the Settlement Program. Third, a primary attorney for a group of heart attack and stroke patients has moved to be excluded entirely from the Pretrial Order 19 assessments.

## III.    Law and Analysis

### A.     The PSC's Motion to Amend Pretrial Order 19

The PSC requests an amendment to Pretrial Order 19 to reduce the fee and cost assessment in heart attack and stroke cases governed by Pretrial Order 29,[2] and not to other injuries or to heart attack and stroke cases for which Ms. Oldfather serves as Liaison Counsel. With respect to cases for which the PSC retains responsibility, the PSC suggests that Merck

---

[2]Cases filed in or transferred to the MDL after November 9, 2007.

should pay settlement funds to the Garretson Law Group to be held in trust.  The Garretson Resolution Group will insure that governmental liens are satisfied or an appropriate amount is held back, and then transmit 2% of the gross settlement amount for fees and 1% for costs to BrownGreer, which will maintain an accounting of common benefit fees and costs held for cases resolved outside the Master Settlement Agreement.

Merck does not oppose amending the amounts to be withheld from Pretrial Order 29 heart attack and stroke cases, or directing that the amounts be paid to a trustee or escrow agent. However, Merck points out that there is currently no provision for involving or compensating the Garretson Resolution Group or BrownGreer with respect to work done in cases settled outside the Settlement Program.  Accordingly, Merck submits that the Garretson Resolution Group and BrownGreer, or other trustee or escrow agent, should be paid from the Common Benefit Fund or as provided for by the parties to any particular settlement.

Ms. Oldfather opposes the PSC's motion.  She argues that the PSC should not be able to arbitrarily seek a reduction in the fee and cost assessment in these cases.  She expresses a concern the plaintiffs affected by the PSC's motion have benefitted from her efforts and that all assessments pursuant to Pretrial Order 19 should be kept available for an eventual application of common benefit funds by her and "those attorneys who have provided support to the remaining claimants."  She states that the holdback amounts are "not the PSC's to give away" and suggests that the PSC's motion may have a punitive motive against her.

Pretrial Order 19 makes clear that funds withheld pursuant to one of the participation options do not belong to any particular attorney.  (Pretrial Order 19, Rec. Doc. 786 at 1) ("No party or attorney has any individual right to any of these funds except to the extent of amounts

directed to be disbursed to such person by order of the Court."). Pretrial Order 19 also permits amendment of the Traditional Assessment Option and Limited Waiver Option assessments. (*Id.* at 2) ("...unless these percentages are modified by agreement of counsel or by the Court upon showing of good cause.").

Under these circumstances and at this stage of the litigation, the Court finds that amendment of Pretrial Order 19 is appropriate as it may simplify and assist resolution of these few remaining cases and finally closing the door on this litigation. The Court can discern no retaliatory animus to the PSC's motion and no meaningful risk of undercompensation to any attorney doing common benefit work with respect to these cases. At an appropriate later time the Court will take steps to allocate those funds.

Accordingly, the PSC's motion is granted to the extent that in cases subject to Pretrial Order 29 which allege heart attack or stroke, the applicable Pretrial Order 19 fee assessment is reduced to 2% and the applicable cost assessment is reduced to 1%. The PSC is directed to communicate with Merck, the Garretson Resolution Group, and BrownGreer to implement an appropriate system for escrowing these funds, and to report to the Court upon those communications.

**B.      Ms. Oldfather's Motion for Escrow and Disclosure**

Ms. Oldfather has also requested an order directing escrow of common benefit fee and cost assessments from cases settled outside the Settlement Program, and disclosure of the amounts Merck has paid in settlement of those cases. The PSC opposes the motion on the grounds that the settlement amounts in cases under the PSC's umbrella are confidential between the primary attorneys and Merck. It argues that Ms. Oldfather has no standing with respect to

those funds. While this motion has been under submission, the parties have informed the Court that Ms. Oldfather has been provided periodic accounting of the aggregate amounts involved in settling cases outside the Settlement Program.

Because the Court has ordered that Pretrial Order 19 be amended and certain settlement funds be directed into escrow, the motion may be partially mooted. After the PSC and Merck establish the escrow system set forth above, the Court will schedule a conference with the PSC, Merck, and Ms. Oldfather to discuss whether the system addresses the concerns in Ms. Oldfather's motion, and to discuss appropriate disclosures regarding the amounts held in escrow. The motion is held in abeyance pending further Order of the Court.

**C.    Mr. Benjamin's Motion for Relief from Pretrial Order 19**

Finally, the Court has received a motion from Ronald R. Benjamin, counsel for certain remaining personal injury cases subject to Pretrial Order 19. He states that he has reached an agreement in principle with Merck to settle certain of those cases involving heart attacks or strokes. According Mr. Benjamin, he has "not derived any benefit from any of the work accomplished by the PSC in this litigation and [has] not had access to either the discovery compiled by the PSC, the PSC work product, or the trial package prepared by the PSC." (Rec. Doc. 63680-1 at 2). Accordingly, he requests that he and his clients be excused from the assessments set forth by Pretrial Order 19. The request does not apply to other Vioxx plaintiffs he represents who assert injuries other than heart attack and stroke.

Ms. Oldfather opposes the motion. She contends that she has provided meaningful assistance to Mr. Benjamin's clients, among others, and that there is no basis for reducing the applicable Pretrial Order 19 assessments. She also asserts that the motion is premature because

allocation of the amounts withheld as fees and costs will occur at a later date, at which time Mr. Benjamin can seek the return of any funds to which he believes he is entitled.

The Court has written extensively regarding the purpose and legal basis for assessing common benefit fees and costs to compensate and reimburse attorneys who do work that inures to the benefit of an entire group of MDL claimants. *See, e.g.*, *In re Vioxx Prods. Liab. Litig.*, 802 F. Supp. 2d 740 (E.D. La. 2011) (allocating common benefit fee); *In re Viox Prods. Liab. Litig.*, 650 F. Supp. 2d 549 (E.D. La. 2010) (setting common benefit fee). The benefit created by common labor and compensated by joint assessments is sometimes intangible and difficult to quantify in individual cases. Nonetheless, the work done by common benefit attorneys does have a significant and meaningful effect on all cases pending in the MDL. The Court is not aware of any authority recommending or authorizing that common benefit assessments in complex multidistrict litigation be subject to case-by-case review for whether any particular claimant has actually benefitted from common benefit work and whether any particular plaintiff should be required to contribute. Such a proposition seems to be unworkable and is likely inconsistent with the nature of common benefit contributions. Accordingly, the Court finds no good cause under these circumstances to exclude the sixteen cases settled by Mr. Benjamin from the applicable Pretrial Order 19 assessment, as amended. The Motion (Rec. Doc. 63680) is DENIED.

**IV.     Conclusion**

For the foregoing reasons,

IT IS ORDERED that the PSC's Motion to Amend Pretrial Order 19 (Rec. Doc. 63585) is GRANTED. Any Pretrial Order 19 assessment on a heart attack or stroke case governed by

Pretrial Order 29 that exceeds 2% for fees and 1% for costs is reduced to 2% for fees and 1% for costs. The PSC shall meet and confer with Merck, the Garretson Group, and BrownGreer to implement an appropriate structure for escrowing these funds.

IT IS FURTHER ORDERED that Ms. Oldfather's motion for escrow and disclosure (Rec. Doc. 63154), which may be partially mooted by the amendment to Pretrial Order 19, will be revisited following the establishment of escrow for the funds described above.

IT IS FURTHER ORDERED that Mr. Benjamin's motion (Rec. Doc. 63680) is DENIED.

New Orleans, Louisiana, this 25th day of April, 2012.

_____
UNITED STATES DISTRICT JUDGE