ATTORNEYS AT LAW
**JOHNSTON, HOEFER, HOLWADEL & ELDRIDGE**
601 POYDRAS STREET, SUITE 2490
NEW ORLEANS, LOUISIANA 70130
TELEPHONE (504) 561-7799
FACSIMILE (504) 525-1488

---

ADAMS, HOEFER, HOLWADEL & ELDRIDGE, LLC
ROBERT M. JOHNSTON. OF COUNSEL

March 19, 2008

NAME
ADDRESS
CITY, STATE ZIP

Re:     *In re: Vioxx Products Liability Litigation*
        **MDL 1657**

Dear ~~Vioxx Pro Se Claimant~~:

By Order dated February 12, 2008, I was appointed by the Federal MDL Court, as Curator, to provide assistance to *pro se* plaintiffs and *pro se* tolling claimants in connection with the Court's Pretrial Order requiring the registration of claims and with the Vioxx Resolution Program. *Pro se* plaintiffs/claimants are those claimants who are not now represented by an attorney. Before receiving this letter, you should have also received a letter dated December 12, 2007 from Herman, Herman, Katz & Cotlar, LLP, regarding the Vioxx Settlement Program. The terms of the settlement were set forth in that letter and as stated, Merck has agreed to pay one sum~~, which will~~ be allocated among thousands of qualifying claims based upon an evaluation of each claimant's individual medical records. A description of the settlement program is enclosed.

### A.   Everyone Must Register His or Her Vioxx Claim

The federal judge in the Federal MDL litigation has entered an order providing that all persons who have filed claims based on alleged injuries from their Vioxx usage, or entered into a tolling agreement with Merck regarding such a claim, **must** now also register their claims with the Vioxx Claims Administrator. All claims must be registered regardless of whether that claim is eligible to participate in the Vioxx Settlement Program or whether an eligible individual plaintiff ultimately decides to participate in the Settlement Program. This registration is in the nature of a "census" of all Vioxx claims, regardless of their participation in the Settlement Program. If your claim was filed in a state court in New Jersey, Texas, or California, the judges overseeing those cases also entered the same order.



## REGISTRATION CHECKLIST: UNREPRESENTED CLAIMANT

**NOTICE:** The deadline for submitting a Registration Affidavit and claimants in a Claimant Spreadsheet to register for the Settlement Program passed on January 15, 2008, but you may still send in Registration Materials and should do so as soon as possible.

| | STEP | DONE? |
|---|---|---|
| 1. | **Obtain the Pro Se Registration Affidavit:** Download the Pro Se Registration Affidavit from www.browngreer.com/vioxxsettlement and save it on your computer. If you cannot download this form, email the Claims Administrator at claimsadmin@browngreer.com and request one to be emailed to you. If you do not have access to email, then call the Claims Administrator at (866) 866-1729 or write the Claims Administrator at P.O. Box 85031, Richmond, Virginia 23285-5031 and ask for the Pro Se Affidavit. | |
| 2. | **Complete the Pro Se Registration Affidavit:** You may print the Pro Se Registration Affidavit and type in the required information, type it on a hard copy you obtained from the Claims Administrator, or fill it out by hand if you print cleanly. Alternatively, if you downloaded this to your computer, it is a live, fillable Word document and you can type the required information into that document. Answer all the questions in the form. | |
| 3. | **Sign and Date the Pro Se Registration Affidavit:** Sign the Registration Affidavit in the space provided for your signature and fill in the date on which you signed. | |
| 4. | **No Filing With a Court.** You do not have to file your Registration Affidavit with any court. The courts in the Coordinated Proceedings have entered amended Orders removing any filing requirement. | |
| 5. | **If You Have Access to Email, Prepare an Email to Serve Your Pro Se Registration Affidavit:** Prepare an email, using as the subject line in your email "Registration Affidavit for [your name]" and attaching an Adobe pdf of your signed Pro Se Registration Affidavit. | |
| 6. | **If You Have Access to Email, Serve Your Pro Se Registration Affidavit No Later than January 15, 2008 (this deadline has now passed, but you may still send in Registration Materials and should do so as soon as possible):** Send the email you prepared in Step 5 to the Claims Administrator at claimsadmin@browngreer.com. You do not have to serve it on Merck or the PEC. The Claims Administrator will do that for you. | |
| 7. | **If You Do Not Have Access to Email, Mail Your Pro Se Registration Affidavit No Later than January 8, 2008 (this deadline has now passed, but you may still send in Registration Materials and should do so as soon as possible):** If you do not have a way to email your Pro Se Registration Affidavit as required in Step 6, then mail your Pro Se Registration Affidavit to: <br><br> Claims Administrator <br> P.O. Box 85031 <br> Richmond, Virginia 23285-5031 | |

# DESCRIPTION OF SETTLEMENT AGREEMENT[1]

Merck & Co., Inc. ("Merck") has entered into a Settlement Agreement ("Agreement") with certain plaintiffs' counsel ("Negotiating Plaintiffs' Counsel") in order to establish a nationwide settlement program to resolve the claims of certain individuals who have suffered a heart attack, stroke, or sudden cardiac death resulting from their use of Vioxx (the "Vioxx Claimant(s)").

## Activation of the Settlement Program

In order for claims to be paid under the Settlement Program, counsel representing Vioxx Claimants must file with the relevant court no later than January 15, 2008, a Registration Affidavit for every Vioxx client they represent as primary counsel, regardless of whether the client suffered a heart attack, ischemic stroke, or sudden cardiac death, resulting from Vioxx. The Registration Affidavit will contain basic information about each client and the injury the client alleges.

After the Registration Affidavits have been submitted, the Claims Administrator will calculate the total number of Vioxx Claimants that are eligible to participate ("Eligible Claimants") in the Settlement Program. A Vioxx Claimant will be considered eligible to participate in the Settlement Program if:

- prior to November 9, 2007, the Claimant has filed a Vioxx lawsuit pending in any jurisdiction or a Vioxx claim that was tolled under the Tolling Agreement established by the MDL Court; and
- the Claimant alleged in his/her lawsuit or tolling paperwork that the Claimant (or the Deceased or minor for whom the Claimant is the Legal Representative) suffered a heart attack, ischemic stroke, or sudden cardiac death as a result of Vioxx ingestion.

In order for the Settlement Program to be activated and for Merck to be required to fund the settlement, at least 85% of all Eligible Claimants must agree to participate in the Settlement Program. All documents necessary for a Vioxx Claimant to participate in the Settlement Program must be submitted to the Claims Administrator by March 1, 2008. Sufficient numbers of Eligible Claimants from each of the following categories must agree to participate in the Settlement Program in order for the Program to be Activated:

- Vioxx Claimants registered as alleging a heart attack or myocardial infarction ("MI Eligible");
- Vioxx Claimants registered as alleging a stroke or other qualifying ischemic cerebrovascular event ("IS Eligible");
- Vioxx Claimants registered as alleging use of Vioxx for more than 12 months prior

---

[1] This Description of Settlement Agreement is an overview and is meant as a summary to describe the Settlement Program only in a general way. For a complete description, it is necessary to refer to the specific terms of the settlement documents themselves.

1

undertake a de novo review of the Eligible Claimant's complete Claims Package. If the Eligible Claimant appeals the negative determination to the Special Master and loses the appeal, the Eligible Claimant's case shall be dismissed and the Eligible Claimant shall have no further rights under the Settlement Program or in the tort system. If the Eligible Claimant wins his/her appeal to the Special Master, the relevant claim shall be submitted to the Program's valuation process.

If an Eligible Claimant is determined by the Claims Administrator, Committee, or Special Master to qualify for payment under the Settlement Program (the "Qualifying Claimant"), the value of the claim will then be assessed by the Claims Administrator using a grid point system. Claims shall be evaluated by the Claims Administrator in the order in which the Claims Administrator receives a complete Claims Package.

## Valuation Process for Qualifying Claims

A point system is being used in order to ensure that the valuation of claims is consistent across similarly situated Qualifying Claimants and reflects the likely relative value of each claim within the tort system. Once the total number of Qualifying Claimants is known, as well as all Qualifying Claimants' verified injury levels and risk factors, the Claims Administrator will be able to determine the precise dollar value of each valuation point. To determine the precise dollar value of each MI point, the Claims Administrator will divide the total number of points awarded to Qualifying Claimants who alleged a heart attack or sudden cardiac death into the total MI Aggregate Settlement Amount of approximately $4 billion. Similarly, the total number of points assigned to Qualifying Claimants who alleged an ischemic stroke or death from stroke will be divided into the total IS Aggregate Settlement Amount of approximately $850 million to determine the precise dollar value of each IS point.

Under the point system, the Claims Administrator will be individually evaluating the medical records in support of each Qualifying Claimant along several dimensions. The claim will first be assigned a base point total, which will reflect the Qualifying Claimant's injury type (i.e., MI or IS), level of injury within the injury type, age at the time of the MI or IS, and duration of Vioxx use. Claims involving longer Vioxx use, a younger Vioxx Claimant, and a more severe injury will be assigned more points than claims involving briefer Vioxx use, an older Vioxx Claimant, and a less severe injury.

Each Qualifying Claimant's base point total will then be adjusted by the Claims Administrator based on various standardized liability adjustments and risk factor adjustments. These adjustments reflect aspects of the Qualifying Claimant's Vioxx use and medical history that would be expected to affect the value of the Qualifying Claimant's claim within the tort system, and will be based upon a Qualifying Claimant's Event Records, follow-up records, and any Profile Form submitted to Merck or the Court.

The liability adjustments are:

- consistency of the Qualifying Claimant's Vioxx usage in the twelve (12) months

3

  
Committee to assist in evaluating and understanding the Settlement Program. In addition, two examples of Claims Valuation calculations are attached to this "Description of Settlement Agreement."

## Total Value of Settlement and
## Number of Potentially Qualifying Claimants

The total gross payments to be made to Qualifying Claimants under the Agreement is $4.85 billion, with approximately $4 billion of that sum to be allocated among MI Qualifying Claimants and approximately $850 million of that sum to be allocated among IS Qualifying Claimants. At the present time, there are estimated to be approximately 29,000 potentially eligible Claimants nationwide alleging MI, and approximately 17,000 potentially eligible Claimants nationwide alleging IS.

In addition to the above funds, Merck shall deposit an initial $3 million into an Administrative Expense Fund to pay for the claims evaluation and other processes under the Settlement Agreement. In addition, the net investment earnings on the funds deposited by Merck into each of the MI and IS Settlement Funds shall be periodically transferred by the Escrow Agent to the Administrative Expense Fund.

## Payment of Qualifying Claims

Interim Settlement Payments

Qualifying Claimants who have submitted a properly and fully executed Release no later than February 29, 2008, and who are not eligible for a Fixed Payment (see below) shall be eligible for an Interim Payment. No Interim Payment to any Qualifying MI or IS Claimant shall be less than $5,000.00.

The amount of such Interim Payments for MI claims shall be determined by the Claims Administrator after approximately August 1, 2008. The Claims Administrator shall estimate the total number of points that will ultimately be awarded to all Qualifying MI Claimants, and the estimated value of each MI point. Interim payments in the amount of 40% of each Qualifying MI Claimant's gross estimated Final Settlement Payment shall be made on a rolling basis.

Similarly, the amount of such Interim Payments for Qualifying IS Claimants shall be determined by the Claims Administrator after approximately February 1, 2009. The Claims Administrator shall estimate the total number of points that will ultimately be awarded to all Qualifying IS Claimants, and the estimated value of each IS point. Interim payments in the amount of 40% of each Qualifying IS Claimant's gross estimated Final Settlement Payment shall be made on a rolling basis.

The per-point value of Interim Payments may change as more claims are processed and better