# EXHIBIT A

W. Scott Mitchell
Kyle A. Gray
Holland & Hart LLP
401 North 31st Street, Suite 1500
P. O. Box 639
Billings, MT  59103-0639
Telephone:  (406) 252-2166
Fax:  (406) 252-1669

ATTORNEYS FOR DEFENDANT

FILED
BILLINGS DIV.

2005 FEB  1  PM 2 33

PATRICK E. DUFFY, CLERK
BY _____
        DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## HELENA DIVISION

| | | |
|---|---|---|
| THE STATE OF MONTANA, *ex rel* MIKE McGRATH, Attorney General, | ) ) ) ) | No.: CV 06 07-H DWM |
| Plaintiff, | ) ) | Judge D McIloy |
| vs. | ) ) | **NOTICE OF REMOVAL OF** |
| MERCK & CO., INC. | ) ) | **DEFENDANT MERCK & CO., INC.** |
| Defendant. | ) ) | |

PLEASE TAKE NOTICE that Defendant Merck & Co., Inc. ("Merck"), through undersigned counsel, hereby removes the above-captioned action from the District Court for the First Judicial District in Lewis & Clark County, Montana to the United States District Court for the District of Montana, pursuant to 28 U.S.C. §§ 1331 and 1441.  In support of its removal, Defendant respectfully states as follows:

1.     This action involves allegations regarding the prescription drug Vioxx®. An MDL proceeding has been established in the United States District Court for the Eastern District of Louisiana (Fallon, J.) for coordinated pretrial proceedings of Vioxx-

related actions under 28 U.S.C. § 1407.  Two other suits filed by the state attorneys general of Louisiana and Mississippi alleging similar claims against Merck are already pending in that MDL proceeding,[1] and Merck intends to seek the transfer of this action to that MDL proceeding as well.

2.     On December 28, 2005 the State of Montana ("the State") commenced this action in the District Court for the First Judicial District in Lewis & Clark County, Montana, against Merck, captioned *State of Montana ex rel. McGrath v. Merck & Co., Inc.*, No. ADV-2005-899.  A true and correct copy of Plaintiff's Complaint is attached as Exhibit A.

3.     Merck has not been served with a copy of the Complaint ("Compl.").  Accordingly, this Notice of Removal is timely filed pursuant to 28 U.S.C. § 1446(b).

4.     Venue is proper in this Court pursuant to 28 U.S.C. § 89(c), because it is the "district and division embracing the place where such action is pending." *See* 28 U.S.C. § 1441(a).

5.     No previous application has been made for the relief requested herein.

6.     Merck will promptly (a) file a true and correct copy of this Notice of Removal with the Clerk of Court for the District Court for the First Judicial District in Lewis & Clark County, Montana in accordance with 28 U.S.C. § 1446(d); and (b) serve Plaintiff's counsel with a true and correct copy of this Notice of Removal, in accordance with 28 U.S.C. § 1446(d).

---

[1]     The two state attorney general actions are *Foti v. Merck*, No. 05-3700 (E.D. La.) (Louisiana) , and *Hood v. Merck*, No. 05-6755 (E.D. La.) (Mississippi).

I.      **ALLEGATIONS AND REQUESTED RELIEF**

7.      Plaintiff's complaint alleges that Merck violated the Montana Food, Drug, and Cosmetic Act, Mont. Code Ann. § 50-31-101, *et seq.*, because its "advertisements made false and misleading claims to doctors and the public in Montana about the effectiveness of Vioxx." (Compl. ¶ 67.) The State also alleges that Merck committed "deceit" under Mont. Code Ann. § 27-1-712 by making "suggestions of fact that Merck knew were not true" and "suppress[ing] facts about the cardiovascular dangers of Vioxx." (*Id.* ¶¶ 70-71.) Additionally, the State alleges that Merck misrepresented, omitted, and suppressed material facts about the safety and efficacy of Vioxx in violation of Montana's Unfair Trade Practices and Consumer Protection Act, Mont. Code. Ann. § 30-14-103 ("UTPCPA"). (*Id.* ¶ 74-79.) Lastly, the State alleges that Merck has been unjustly enriched due to its misleading conduct. (Compl. ¶ 81-86.)

8.      The State seeks civil penalties of $10,000 against Merck for each alleged violation of deceit under Mont. Code Ann. § 30-14-103; restitution for the State of Montana and the citizens of the State of Montana; disgorgement of alleged unjust profits from the sale of Vioxx to the citizens of the State of Montana and the State of Montana; attorneys' fees and costs; and "such other and further relief as the Court deems just, necessary, and appropriate." (Compl., Prayer for Relief.)

II.     **FEDERAL QUESTION JURISDICTION**

9.      This Court has federal question jurisdiction over this matter pursuant to 28 U.S.C. § 1331, because the State's claims directly implicate two areas of federal law: the Food, Drug & Cosmetic Act ("FDCA"), 21 U.S.C. § 301 *et seq.*, which regulates prescription drug manufacturers' public and promotional statements about prescription drugs; and federal Medicaid law, which determines both which drugs a

3

state must cover under its Medicaid program and the limited circumstances under which it can decline to pay for such drugs. *See* 42 U.S.C. §§ 1396r-8(d)(1)(B), (d)(4). Thus, this action may be removed to this Court pursuant to 28 U.S.C. § 1441.

10.    The Supreme Court has recognized that federal question jurisdiction exists over claims that are asserted under state law if the state law claims implicate substantial federal questions. *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 125 S. Ct. 2363, 2369 (2005). *See also Hopkins v. Walker*, 244 U.S. 486, 490-491 (1917); *County of Santa Clara v. Astra USA, Inc.*, 401 F. Supp. 2d 1022, 1025 (N.D. Cal. 2005).

11.    As the Supreme Court explained in *Grable*, the test for whether a federal court should hear a case under this doctrine is not whether the federal statute provides a parallel private right of action, but whether the "state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." 125 S. Ct. at 2368. In *Grable*, the Supreme Court concluded that federal question jurisdiction existed because the plaintiff's state law claim was premised on the failure of a government agency to fulfill its responsibilities as defined by federal law. Thus, federal question jurisdiction existed because the meaning of the federal law was an essential element of the state law claim. *Id.* The same is true here.

12.    First, the claims in this case are implicitly premised upon alleged violations of the *federal* Food, Drug & Cosmetic Act ("FDCA") – namely that Merck illegally promoted an unsafe drug for public use and failed to warn doctors, state regulators, and consumers of risks in violation of FDCA rules and regulations.

4

13.    Under the FDCA, the Food and Drug Administration ("FDA") is tasked with approving drugs for human use and determining the necessary warnings manufacturers must include with their products. 21 U.S.C. § 393(b). The FDCA charges the FDA to ensure that "drugs are safe and effective" for their intended uses, *id.* § 393(b)(2)(B), in part by "promptly and efficiently reviewing clinical research and taking appropriate action on the marketing of regulated products." *Id.* § 393(b)(1). The FDA is vested with the authority to promulgate regulations to enforce the FDCA, which are codified in the Code of Federal Regulations, 21 C.F.R. § 200 *et. seq.*; 21 U.S.C. § 371(a).

14.    To accomplish this mandate, the FDA maintains a Center for Drug Evaluation and Research ("CDER"). The CDER oversees the drug companies' development, testing and research, and manufacture of drugs. The staff of approximately 1,800 examines clinical and other testing data generated by drug companies to assess a drug's benefits against its risks and to make an approval decision. The CDER also regulates prescription drug advertising, including the Package Inserts that outline benefit and risk information, and monitors marketed drugs for unexpected health risks that may require public notification, a change in labeling, or removal of the product from the market. Under federal law, even claims in promotional labeling or advertising must be consistent with approved labeling. 21 C.F.R. § 202.1(e)(4) (2005).

15.    For these reasons, Plaintiff's allegations related to Merck's promotion of Vioxx will necessarily require the Court to interpret the meaning of the FDCA and its attendant regulations. This is evident from Plaintiff's complaint, which includes extensive quotes from a letter that the FDA sent Merck regarding the contents of its

marketing materials for Vioxx  (Compl. ¶ 36), and several allegations regarding

Merck's interactions with the FDA over Vioxx labeling.  (*See id* ¶¶ 38-39.)

16.   Second, Plaintiff's claim for recovery of monies spent by the State of

Montana on Vioxx necessarily implicates federal laws and regulations related to

Medicaid.[2]

17.   Plaintiff's refund claims on behalf of the state of Montana implicate

substantial questions of federal law under the federal Medicaid statute because they

depend on the interpretation and application of federal statutory provisions that govern

what can be included in or rejected from State Medicaid formularies, including

Montana's, and because federal funds comprise the majority of Montana Medicaid

Program's funds – the money at issue in this lawsuit.[3]

18.   The federal Medicaid program authorizes federal money grants to states to

provide medical assistance to low-income individuals.  42 U.S.C. § 1396 *et seq.*; 42

C.F.R. § 430.10 *et seq.*  "Although participation in the program is voluntary,

---

[2]   While plaintiff has assiduously avoided using the word "Medicaid" in the Complaint, the state attorney general's request for reimbursement of funds spent by the *state* for Vioxx is obviously a request for recovery of Medicaid funds, as other state attorney generals' similar complaints readily admit.  *See* Compl., *Foti v. Merck*, No. 05-3700 (E.D. La.) (Louisiana) (seeking damages, in part, for the purchase price paid by the State of Louisiana's Medicaid program for Vioxx prescriptions); Compl., *Hood v. Merck*, No. 05-6755 (E.D. La) (Mississippi) (seeking damages, in part, for the purchase price paid by the State of Mississippi's Medicaid program for Vioxx prescriptions); Compl., *Alaska v. Merck*, No. 3:06-CV-00018 (TMB) (D. Alaska) (seeking damages primarily for the purchase price paid by the State of Alaska's Medicaid program for Vioxx prescriptions ).

[3]   For fiscal year 2004 (October 1, 2003 to September 30, 2004), for example, federal funds accounted for 72.85% of Montana's Medicaid financing.  *See Federal Financial Participation in State Assistance Expenditures; Federal Matching Shares for Medicaid, the State Children's Health Insurance Program, and Aid to Needy Aged, Blind, or Disabled Persons for October 1, 2003 Through September 30, 2004*, 67 Fed. Reg. 69,223, 69,224, Nov. 15, 2002, *available at* http://www.aspe.hhs.gov/health/fmap04.htm.

participating States must comply with certain requirements imposed by the Medicaid Act . . . and regulations promulgated by the Secretary of Health and Human Services." *Wilder v. Va. Hosp. Ass'n*, 496 U.S. 498, 502 (1990).  In Montana, the Medicaid program is administered by the Department of Public Health and Human Services. *See* http://www.dphhs.mt.gov/programsservices/medicaid.shtml; 42 C.F.R. § 431.10(b)(1) (requiring states to designate "a single State agency . . . to administer or supervise the administration of the [Medicaid] plan").

19.     Federal law expressly requires states, subject to certain narrow exceptions, to reimburse FDA-approved prescription drugs of any manufacturer that has entered into and complies with a rebate agreement with the Secretary of Health and Human Services. 42 U.S.C. § 1396r-8(d)(4)(B).  Thus, Montana is required under federal law to reimburse companies for drugs, such as Vioxx, if the manufacturer complies with federal requirements.

20.     The only time a state can exclude from its formulary a covered outpatient drug subject to a rebate agreement is "with respect to the treatment of a specific disease or condition for an identified population . . . if, based on the drug's labeling . . . the excluded drug does not have a significant, clinically meaningful therapeutic advantage in terms of safety, effectiveness, or clinical outcome of such treatment for such population over other drugs included in the formulary and there is a written explanation (available to the public) of the basis for the exclusion." 42 U.S.C. § 1396r-8(d)(4)(C).  But even in such a situation, a state cannot deny coverage altogether; rather, it must condition such reimbursement on prior authorization, meaning that the state may require that it approve the drug's dispensation before it is dispensed. *Id.* § 1396r-8(d)(4)(D).  And even a decision to require prior authorization must satisfy federally

mandated requirements. *Id.* §§ 1396r-8(d)(4)(E), (d)(5). Thus, every step a state takes with regard to coverage of an FDA-approved drug is subject to strict federal mandates.

21.     In short, because the Montana Medicaid program operates within this overarching federal regulatory framework, Plaintiff's claims alleging that Merck's conduct concerning Vioxx caused the State of Montana to spend money on Vioxx for which the state now seeks a refund necessarily turns on substantial questions of federal Medicaid law.

22.     Other courts have applied *Grable* and recognized that federal jurisdiction exists over actions, like this one, in which plaintiffs' state law claims are premised on violations of the FDCA and cases in which plaintiffs seek reimbursement of Medicaid expenditures. For example, in *In re Zyprexa Products Liability Litigation*, 375 F. Supp. 2d 170 (E.D.N.Y. 2005), the court asserted federal question jurisdiction over state-law claims brought by the state of Louisiana involving a manufacturer's marketing of a prescription drug and the state of Louisiana's payments for that drug under Medicaid, finding that the state attorney general's claims involved "a core of substantial issues [that were] federally oriented." *Id.* at 172-73.

23.     Similarly, in a recent case involving Medicaid drug pricing, the court in *County of Santa Clara v. Astra USA, Inc.*, 401 F. Supp. 2d 1022 (N.D. Cal. 2005), held that federal jurisdiction was proper under *Grable* because the plaintiff's state law claims against pharmaceutical manufacturers for allegedly overcharging plaintiff for Medicaid drugs presented substantial questions of federal law. In concluding that the Medicaid drug pricing issues merited federal jurisdiction, the court observed that one measure of evaluating substantiality is "the importance of the federal issue." *Id.* at 1027. The court noted that "[u]nder this approach, the following issues have been

8

found to be substantial: those that directly affect the functioning of the federal government, those in an area reserved for exclusive federal jurisdiction, and those that impact a complex federal regulatory scheme." *Id.*

24.    As set forth above, Plaintiff's claims here implicate two complex federal regulatory schemes: the federal FDCA and federal Medicaid law.  Accordingly, as in *Grable, Zyprexa,* and *Astra USA,* Plaintiff's allegations will necessarily require the Court to address substantial questions of federal law, and the Court therefore has federal question jurisdiction over this matter.

25.    WHEREFORE, Defendant gives notice of the removal of the above-captioned action now pending in the District Court of the First Judicial District, Lewis & Clark County, Montana, captioned *The State of Montana, ex rel Mike McGrath, Attorney General, v. Merck & Co., Inc., Cause No. ADV-2005-899,* to this Court.

Dated this / ˢᵗ day of March, 2006.

W. Scott Mitchell
Kyle A. Gray
Holland & Hart LLP
401 North 31st Street
Suite 1500
P. O. Box 639
Billings, Montana  59103-0639

ATTORNEYS FOR DEFENDANT

## CERTIFICATE OF MAILING

This is to certify that the foregoing Notice of Removal was mailed to the

following persons by United States mail, postage prepaid on the date herein.

William A. Rossbach
Rossbach Hart Bechtold, PC
401 North Washington Street
Missoula, MT  59802

E. Craig Daue
Buxbaum, Daue & Fitzpatrick, PLLC
228 West Main, Suite A
P. O. Box 8209
Missoula, MT  59807

DATED this _____ day of March, 2006.

_W. Scott Mitchell_

3521572_1.DOC

10