1                    UNITED STATES DISTRICT COURT

2                    EASTERN DISTRICT OF LOUISIANA

3
   In Re:  VIOXX PRODUCTS          *      MDL Docket No. 1657
4          LIABILITY LITIGATION    *
                                    *      Section L
5                                   *
                                    *      January 5, 2012
6  This Document Relates to All Cases  *
                                    *      9:00 a.m.
7  * * * * * * * * * * * * * * * * * *

8

9                  MONTHLY STATUS CONFERENCE BEFORE
                   THE HONORABLE ELDON E. FALLON
10                  UNITED STATES DISTRICT JUDGE

11
   APPEARANCES:
12
   For the Plaintiffs:         Herman Herman Katz & Cotlar, LLP
13                              BY:  RUSS M. HERMAN, ESQ.
                               820 O'Keefe Avenue
14                              New Orleans, Louisiana 70113

15 For the Defendant:          Williams & Connolly, LLP
                               BY:  DOUGLAS R. MARVIN, ESQ.
16                              725 Twelfth Street N.W.
                               Washington, D.C. 20005
17
   Also Participating:         Patrick Juneau, Esq.
18                              Elizabeth Cabraser, Esq.
                               Dawn Barrios, Esq.
19                              Bob Johnston, Esq.
                               Ann Oldfather, Esq.
20                              Dorothy Wimberly, Esq.
                               Elaine Horn, Esq.
21
   Official Court Reporter:    Toni Doyle Tusa, CCR, FCRR
22                              500 Poydras Street, Room B-406
                               New Orleans, Louisiana 70130
23                              (504) 589-7778

24

25 Proceedings recorded by mechanical stenography using
   computer-aided transcription software.

<u>**PROCEEDINGS**</u>

**(January 5, 2012)**

1
2
3          THE COURT:  Be seated, please.  Good morning, ladies
4    and gentlemen.
5          THE DEPUTY CLERK:  MDL 1657, In Re: Vioxx Products
6    Liability Litigation.
7          THE COURT:  Liaison counsel, make your appearances
8    for the record, please.
9          MR. HERMAN:  May it please the Court, Your Honor,
10   Russ Herman for plaintiffs.
11         MR. MARVIN:  Your Honor, may it please the Court,
12   Douglas Marvin for Merck.
13         THE COURT:  This is our bimonthly status conference.
14   It took me a longer time than usual with the committees before
15   this conference, so I apologize for any inconvenience to the
16   people on the phone.
17                I received from the parties their proposed
18   agenda.  I will take it in order.  Any special master or deputy
19   special master reports?
20         MR. JUNEAU:  Your Honor, as Your Honor knows, there
21   are several motions that are pending.  There is no activity and
22   I report no activity, so I actually have operated in a
23   stand-down capacity.  I'm strictly here reporting today that
24   I'm going to maintain that status.  I know that there's several
25   matters out there that could be activated that could affect the

1    activity of the special master, but until that's done I plan to

2    have no other activities.

3            Other than that, Your Honor, strangely enough,

4    they are still calling.  I'm sure Mr. Johnston and I will

5    confirm, people still call you about the status of the cases,

6    but those are just minuscule matters.  There's really nothing

7    other than that, other than the fact that there are some items

8    that can rise up at a later date.

9            Kind of with that thought in mind, Your Honor,

10   it would be my thought that unless directed by the Court, if

11   the Court anticipates a specific function or responsibility I

12   would perform, I would probably forego my appearance at any

13   status conference until that issue arose and I would just be in

14   a stand-down capacity.

15           **THE COURT:**  I agree with that.  Thank you very much

16   for all of your work on this matter, Pat.

17                   Anything on class actions?

18           **MR. MARVIN:**  Your Honor, nothing new on class

19   actions.  As Your Honor knows, there's been a motion filed and

20   the motion has been fully briefed, but there are no new

21   developments.

22           **THE COURT:**  Right.  We discussed some potential for

23   looking at a bellwether case, but that may be a little

24   premature.  I would like you all to get together on that and

25   see what you can come up with.

1      **MS. CABRASER:**  Right. Your Honor.  Elizabeth Cabraser

2  for plaintiffs.  That might be something we could address a

3  little bit more in the attorneys general conference call

4  following this session.  But, yes, there may be a way, in

5  conjunction with an attorneys general trial, to also address

6  some of the common fact questions that relate to consumer

7  claims.  Merck has not had an opportunity to react to that

8  plan, and it's something that we hope to develop.

9      **THE COURT:**  Great.  Okay.

10      Any state/federal coordination?

11      **MR. HERMAN:**  Ms. Barrios is here with a full report.

12      **MS. BARRIOS:**  Good morning, Your Honor.  Dawn Barrios

13  for the state/federal committee.

14      The information that I'm going to give you,

15  which is on a CD, is current through CTO 168.  There's been no

16  new conditional transfer order since our last status

17  conference.  We continue to update databases and remove cases

18  and plaintiffs that have been dismissed.

19      Because of Ms. Oldfather's motion, our number of

20  pending remands have increased.  Your Honor did rule on

21  Kentucky's motion to remand, so that one is now off the table

22  and Kentucky is back to state court.  We continue to have some

23  derivative claimants that need to be dismissed, and

24  Ms. Wimberly and I are working on those.  Thank you.

25      **THE COURT:**  Thank you.

1        *Pro se* plaintiffs?

2            **MR. HERMAN:**   Mr. Johnston is here and will report.

3            **MR. JOHNSTON:**   Good morning,Your Honor. Bob Johnston,

4    curator.

5            I have filed Curator Status Report 33 with the

6    Court.  There is nothing really new to add.  I think that

7    Mr. Juneau succinctly described the status of where we are with

8    occasional calls, some of the same interesting people that we

9    have dealt with before, but I think things continue to move

10   well.  With that, I have nothing else to add to the Court.

11           **THE COURT:**   We are coming into a long-term

12   relationship with some of these people.  They look upon you as

13   their family.

14           **MR. JOHNSTON:**   I didn't realize it was going to

15   happen that way when I started doing this.  Thank you.

16           **THE COURT:**   Thank you.

17           Governmental actions, anything on that?

18           **MR. HERMAN:**   Your Honor, Mr. Beisner isn't here.

19   Ms. Barrios can report.

20           **MS. BARRIOS:**   Your Honor, Dawn Barrios again.  We are

21   going to have a separate status conference in the governmental

22   actions immediately following this status conference or at

23   10:00.  Thank you.

24           **THE COURT:**   The third-party payors, anything on that?

25   We have an issue of attorneys' fees on third-party payors.

1          **MR. HERMAN:**  Yes, Your Honor.  May it please the

2    Court.  The allocation committee is going to have a conference

3    call tomorrow at 2:00 p.m. central.  We will undertake to

4    recommend figures for each applicant in accord with a limited

5    fee fund.  We will post all material that we have received from

6    applicants as well as all of the applicant statements as to

7    their entitlement to fees.

8              At that point, once those materials are

9    posted -- and we hope to expedite that, Your Honor.  We should

10   be able to accomplish that within the next couple of weeks, in

11   advance of Your Honor's next status conference, and then we

12   will await Your Honor's direction as to how to proceed.  We

13   assume that applicants will have comments or objections and

14   they will also be posted.  Thank you, Your Honor.

15         **THE COURT:**  My thinking is that when I get the

16   recommendation and suggestion from the allocation committee, I

17   post all of that on the Web site and give everybody an

18   opportunity to look at it and make any objections,

19   observations, responses that they may have.  Then I will

20   collect all of those and I will also post those.  We will deal

21   with those either by having a special master make some

22   recommendations to me or my own review of the matter, and I

23   will make the final decision on this situation.

24              I'm focused mainly on process.  I want it to be

25   fair and I want it to be open so that everybody knows what's

1   happening.  We'll get through this hopefully much easier than

2   the last time.

3            Pending personal injury cases subject to

4   PTOs 28, 29, and 43?

5            **MR. MARVIN:**  Your Honor, as Your Honor knows, since

6   the last status conference, the Court arranged for a conference

7   with Mr. Benjamin and with Merck to discuss cases that

8   Mr. Benjamin holds to be set for trial.  Mr. Benjamin holds the

9   largest group of heart attack and stroke cases that remain.

10           Following the Court's order that established a

11  procedure for the selection of a case, the first case to go to

12  trial represented by Mr. Benjamin, the parties have since met

13  and conferred.  Each party has proposed three cases for workup

14  for discovery.  And then from that group of six cases, the

15  parties will discuss, along with the Court if necessary,

16  selection of one of those cases for trial.

17           **THE COURT:**  We have to focus on the remaining

18  personal injury cases.  There are some things to do on those

19  cases.  We need some *Lone Pine* opportunities.  We need some

20  discovery opportunities.  We need some motion opportunities.

21  But when we get down to them, those that need to be tried, we

22  are going to have to really decide how to go about it.

23           One way, of course, is the bellwether cases.  I

24  met with Merck's counsel and the plaintiffs' counsel,

25  Mr. Benjamin, and instructed that each of them have three cases

1  suggesting that will be the group of six.  They will then do

2  some discovery on those six.  They will each have some strikes,

3  and we will come up with one case in which to try from a

4  bellwether standpoint.

5          In addition to bellwether cases, there are other

6  opportunities such as summary trials, with each side getting

7  two days to try their case.  There are some other methods of

8  doing it.  We can try issues.  We can try groups.  Those other

9  methods do require some agreement by and between counsel so

10 that they are not trespassing on the Seventh Amendment.

11         If it gets to the point where each of those

12 cases have to be tried, and there are 50 or 60 of them, then I

13 have to give some thought to whether or not these cases should

14 be sent back to the individual judges because I'm not going to

15 be able to try 50 to 60 cases within 5, 6, 7 years.  I can't do

16 it because I have a docket here in New Orleans.  If I have to

17 go to various places throughout the country, that interferes

18 with my workload here.

19         So it's harder and harder to argue efficiency

20 with one court handling all of the cases.  It might be quicker

21 and easier and a better resolution for me to send those cases

22 back to the 15 or 20 judges who were handling them initially,

23 and they can get through them much faster than I can

24 individually by having a "gavel will travel" approach.

25         MR. MARVIN:  Your Honor, Merck also has several

1     motions that are noticed for hearing following the status

2     conference.  I assume those will be heard after the conference.

3           **THE COURT:**  Okay.  The fee allocation committee, any

4     report on that?

5           **MR. HERMAN:**  May it please the Court.  Your Honor,

6     the only pending matter is the third-party payor issue.  There

7     are no appeals.  There's been no controversy since Your Honor

8     directed distribution.

9           **THE COURT:**  We had some issues with regard to the

10    motion.  Ann, do you want to bring that up now?

11          **MS. OLDFATHER:**  Yes, Your Honor.  Thank you,

12    Your Honor.  Ann Oldfather for plaintiffs.

13           Your Honor, we have filed a motion to strike or

14    remand Merck's motion for summary judgment.  Is that what the

15    Court was referring to or is there something else?

16          **THE COURT:**  Yes, that's basically it.

17          **MS. OLDFATHER:**  Your Honor, just to address that

18    briefly, Merck has filed a motion for summary judgment on the

19    VTE cases, approximately 25 or so venous thromboembolism cases.

20    In response to that motion, because we believe it put the cart

21    before the scheduling horse, we have asked the Court to strike

22    that motion and instead suggest that the Court focus on working

23    with the parties to establish an appropriate scheduling order.

24           Not only is that the standard approach under the

25    Federal Rules of Civil Procedure, but it's the tried and true

1  method in this Court utilized by the Court in the original

2  round of bellwether cases, utilized now with the AGs, and

3  utilized as every other group has come up.  The Court has met

4  with those parties and found out what kind of additional

5  discovery needs to be made, both fact and expert discovery, and

6  then has given the parties ample notice of the dates of which

7  that has to be concluded.

8              I acknowledge that we have had discussions in

9  chambers and in court many times over the last several years

10 about moving the cases along, but we have never officially put

11 those dates out there, not only for my benefit but for the

12 benefit of the *pro se* claimants and the benefit of other

13 counsel who are not attending the status conferences every

14 month.  So we would urge in support of our motion to

15 strike/remand Merck's motion for summary judgment that the

16 Court remand the motion for summary judgment at this time.

17 Obviously, it could be refiled at the appropriate stage of the

18 scheduling process.

19             We would ask the Court to direct the parties,

20 for our next status conference, to come prepared to submit a

21 schedule by which plaintiffs' counsel and Merck believe that

22 fact discovery can be completed in these other pending personal

23 injury cases, dates by which experts can be disclosed, dates by

24 which summary judgment motions, which may first be *Daubert*

25 motions, should be filed.

1            Incidentally, Your Honor, I would just observe

2    that we skipped over the part of the agenda that deals with

3    Merck's motion to dismiss for prejudice against Ken Novick for

4    failure to file a *Lone Pine* report.  The *Lone Pine* requirement

5    is the requirement the Court put in place back in 2007 for a

6    report that -- for me to take the risk of paraphrasing the

7    Court -- meant to simply show that there was some relation

8    between the plaintiffs' claimed injuries and Vioxx.

9            The Court made it clear on the record in

10   hearings in 2008 that the *Lone Pine* report was not meant to

11   serve as a substitute for *Daubert* caliber proof, or proof even

12   sufficient to get past a Rule 56 motion, but it was some

13   initial showing that this wasn't just a rash that might have

14   been caused, for example, by something else.

15           So Merck has stated -- and I would appreciate if

16   this was just confirmed on the record -- that it is going to

17   withdraw its motion to dismiss as to Dr. Novick for failure to

18   comply with the *Lone Pine* requirements because he has submitted

19   a report from an expert that we believe was sufficient for

20   *Lone Pine*.

21           Merck has stated its intent to convert that to a

22   Rule 56 motion.  As with my earlier comments, I think

23   Dr. Novick should have the benefit of a scheduling order, the

24   benefit of an opportunity to know the dates, we as his counsel

25   to know the dates by which we need to be prepared to submit our

1   proof to Rule 56 caliber review by the Court.

2          So we would urge the Court to strike or remand

3   Merck's motion for summary judgment at this time.  At the very

4   least, failing all of that, I am going to ask the Court if we

5   can change the January 18 submission date in the event that it

6   needs to be argued.  Thank you, Your Honor.

7          **THE COURT:**  Let me hear from you.

8          **MR. MARVIN:**  Your Honor, first on the motion that we

9   filed to dismiss the cases that allege a venous clot, the

10   venous thrombosis cases, that motion is not at all premature.

11   It was filed two years after this Court directed the PSC, for

12   which Ms. Oldfather is liaison counsel, to marshal the issues

13   regarding general causation.  So there's been plenty of

14   opportunity for discovery to be conducted and, indeed,

15   discovery has been conducted.  Millions and millions of pages

16   have been produced.  They're sitting in the plaintiffs'

17   depository.

18          The burden now is on the plaintiffs to come

19   forward to show there's some disputed fact that would preclude

20   the grant of the motion for summary judgment, and that

21   obviously has not been done yet.  In our opposition to the

22   motion, we submitted a schedule to the Court that we would

23   propose for teeing up this issue, which is a threshold issue.

24          In fact, what we have proposed is that the

25   plaintiffs be given another three months to develop an expert,

1   if they can, and if that expert can then go ahead and file a

2   report to put in issue as a disputed fact any of the issues on

3   which Merck moved.  If the plaintiffs cannot produce that

4   expert by three months from now, then the motion should be

5   granted.

6            If instead plaintiffs do come forward with an

7   expert report, then we suggest that the traditional approach be

8   followed.  We would go ahead and file our expert report in

9   response.  There could be 60 days, for example, for expert

10  discovery, and at that time we would propose to file our motion

11  for *Daubert*.  The case could then proceed as the Court directs

12  once those motions are filed.

13           Right now, what's pending is this motion for

14  summary judgment.  As I say, there is a burden on the

15  plaintiffs to show that there's a disputed fact.  They haven't

16  done so.  While we are not adverse to giving them additional

17  time to do it, we ask that a schedule along the lines that I

18  suggest be put in place so that this issue can be teed up.

19           **THE COURT:**  Do you want to respond?

20           **MS. OLDFATHER:**  Thank you, Your Honor.  Judge, this

21  isn't a generic "dispute of fact" motion for summary judgment.

22  This is a motion for summary judgment where Merck has just, at

23  the very end of October, for the first time put in the record

24  two expert reports for previously nondisclosed experts, where

25  these two physicians expressed the opinion that there is no way

1    that Vioxx can cause a VTE.  This is a very significant

2    scientific conclusion that these two physicians are attempting

3    to advance.  They have not been previously disclosed.  They

4    weren't disclosed in answer to any pending maybe master

5    template interrogatories that had been issued earlier by the

6    former PSC.

7              This motion, Your Honor, goes to -- I don't have

8    the exact count with me because I didn't bring the motion for

9    summary judgment since it's not teed up today, but it goes to

10   approximately 30 different claimants represented by different

11   counsel and some of whom are *pro se*.  Our role as the PSC for

12   this group and as liaison for this group is to coordinate and

13   to develop.  There has not been a time where our cases, this

14   group of cases has moved to the front and has had the deadline

15   set.

16             This Court has gone through this litigation very

17   methodically and focused on each group of cases and you have

18   given each group specific deadlines.  They have known it was

19   coming too.  They got the benefit of more than -- Mr. Marvin

20   suggests three months from today that we are supposed to have

21   all this done in 30 different cases with -- I don't know the

22   exact count of different counsel and different *pro se*

23   claimants.

24             We don't oppose the fact that these cases do

25   need to be brought to a conclusion.  Deadlines are needed, but

1  under Rule 26, deadlines aren't set like this.  We would ask
2  the Court for a legitimate amount of time to get the cases
3  developed and submitted on Rule 56 motions, if then they are
4  going to be filed.

5          Three months is not sufficient, but I would like
6  an opportunity to go back to the repository to see what kind of
7  adverse event reporting is present on these types of injuries
8  because I am not aware of it being as extensive as it was
9  described in chambers.  I had thought the facts database
10 discovery was limited to some random sampling out of the facts
11 database, and I might be wrong, but obviously this is something
12 that we have known we have to develop.  We just haven't done it
13 yet, and it has to be done in order for experts to reach a
14 conclusion about mechanism.

15          **THE COURT:**  I understand the issue.  This is the way
16 I see it.  I'm focused at this point on those cases from a
17 *Lone Pine* standpoint.  I got this MDL in 2005, so I have had it
18 now for six years.  The states have had it maybe about three or
19 four years before I got it.  So we are moving on one decade now
20 in this particular litigation.  It seems to me that it's
21 appropriate and it's not offensive or high-handed for a court
22 to require that the litigants who make complaints be required
23 to produce a *Lone Pine* report.  This type of report, as I
24 mentioned before, is not looked at as an inclusive report to
25 withstand a *Daubert* motion but it is a preliminary report.

1  These cases are "other injury" cases.  The "other injury" cases
2  involve various complaints.
3          There's been, almost 10 years now, in this
4  litigation a lot of discovery.  As I have said before, I have
5  tried at least six of these cases.  The state courts have tried
6  another seven or eight of the cases.  We have had millions of
7  documents discovered, thousand of depositions, depositories
8  arranged, categorized, trial plans worked up, and we are at the
9  point now where it's not inappropriate to require a claimant
10  who says that he or she has certain complaints to have a doctor
11  say those complaints are related to the ingestion of Vioxx.  If
12  they can't do that, then they don't have a case.
13          Before any discovery is gone into, before any
14  expenses are taken, you ought to find out whether or not there
15  is any science at all to justify it.  Now, it seems to me the
16  appropriate way of doing it is for the attorneys to go to the
17  depository and look at it, get information and give it to their
18  doctors.  If they can't get a report from a doctor that says
19  this complaint is related to Vioxx after 10 years, then it's
20  appropriate to end that case.  If they say it is related, then
21  you go to the next step.  That doctor then is deposed and then
22  that doctor is *Daubert*-tized."  If he withstands *Daubert*, then
23  the motion for summary judgment is not justified and the case
24  is tried.
25          I don't think we want to discover these cases

1 the way that it has required discovery in every case before you

2 know whether or not there is a case.  It doesn't make any sense

3 to me.  You're going to spend more per case only to find out

4 that you don't have a case.  I don't understand how that works.

5 　　　　　　MS. OLDFATHER:  Judge, I'm sorry.  I wasn't clear

6 about this.  The clients whom we represent have filed *Lone Pine*

7 reports.  They are not yet of the caliber that would withstand

8 *Daubert* or Rule 56 because they haven't been worked up to that

9 extent because we are now at what you just outlined --

10 　　　　　　THE COURT:  Do you have *Lone Pine* reports for these

11 particular cases?

12 　　　　　　MS. OLDFATHER:  Yes, they do.

13 　　　　　　MR. MARVIN:  Your Honor, we do have *Lone Pine* reports

14 in these cases.  But as Ms. Oldfather says, they don't address

15 general causation, which is the threshold issue here; namely,

16 as to whether Vioxx can even cause a VTE.

17 　　　　　　THE COURT:  That, to me, is really where we need to

18 be.  Then if they say it is, it just seems to me then you go to

19 the next step.  If they say it is not, why do you go to the

20 next step?

21 　　　　　　MS. OLDFATHER:  Well, the first step, the *Lone Pine*

22 reports, they have said it is caused by Vioxx, and we have

23 studies that indicate that VTEs can be caused by Vioxx.  We

24 have to get them up to the caliber now where they will survive

25 *Daubert* and Rule 56, which brings us to the step Your Honor is

1  outlining, which is now go to the repository, get all of the

2  scientific proof that will rebut the charges and the attacks

3  that are going to be made by Merck.

4         So it's maybe not as grim as Your Honor thought

5  it was, but there is a bunch of work.  You're absolutely right

6  about that.  If we have the opportunity now to talk about the

7  scheduling, I'm going to follow up with Mr. Herman's comments

8  in chambers about the -- and I agree the repository has always

9  been available, but I'm now going to work directly with them to

10  see what they have on VTEs.  In any event, we are ready to go

11  to that next step.  We have not gotten teed up to the degree

12  that the prior cases have.

13         **THE COURT:**  Have you taken depositions of the

14  doctors --

15         **MS. OLDFATHER:**  Some have, yes.

16         **THE COURT:**  -- who have given the reports?

17         **MR. MARVIN:**  Some, yes, Your Honor.

18         **MS. OLDFATHER:**  They have given jury survivable

19  causation testimony as long as it survives *Daubert*.  But again,

20  I know what Your Honor is going to look for in *Daubert*, and I

21  would like to get it to that standard so that we can address

22  the arguments that Merck has just presented us with and the

23  kind of coming out of the off-course motion for summary

24  judgment that we are just not prepared to deal with at this

25  point, Judge.  For all the reasons you indicated, we are not

1   prepared to deal with it.

2           **MR. MARVIN:**  Your Honor, I just want to point out

3   that the Court has addressed this issue in PTO 46 that was

4   entered August 20, 2009, more than two years ago.  The Court

5   directed Ms. Oldfather's committee to, quote, marshal issues

6   regarding general causation.  So it's been more than two years

7   since the Court has given that direction.

8           We filed our affidavits setting forth our

9   experts' views that there is no evidence to support any general

10  causation or any link between Vioxx and VTEs.  We filed those

11  in October.  So the PSC, too, has had this direction since

12  August 2009, and it's had our expert reports since October.  We

13  just think it's time now for them to come forward and see if

14  they really do have a case.

15          **THE COURT:**  We will continue the motion.  Let me

16  continue it presently until our next status conference, which

17  is April 1.  I'll meet with the parties before then.  I will

18  set a status conference for this case sometime in March with

19  counsel.  I can do it on the phone, but I do want to keep on

20  top of this, and we'll see where we are in March.

21          Meanwhile, Ann, you're going to have to go to

22  the depository and get materials and give to it your doctors.

23  Let's see where we are with these cases.

24          **MS. OLDFATHER:**  Absolutely, Your Honor.

25          **THE COURT:**  We have been a long time on these cases,

 1   honestly.

 2           **MS. OLDFATHER:**  Judge, on the scheduling, just so the

 3   Court knows, I received a letter from Mr. Beisner right at the

 4   end of the year about Merck's desire to take a preservation

 5   deposition from Dr. Briggs Morrison.  Obviously, we are moving

 6   forward.  That's been set for two days in March, March 8 and

 7   March 9.  That's going to be a huge job getting ready for that.

 8   I'm simply suggesting that in terms of our being ready for a

 9   status conference and having a meaningful discussion with the

10   Court about what we have learned -- and it's hard for me to see

11   much difference between after March 8 and April 1 and April 1

12   itself, so I would be lobbying for April 1 for our status

13   conference too.

14           **MR. HERMAN:**  May it please the Court.  I have been

15   often called a jester or a fool, but I think April 1 is a

16   Sunday.

17           **THE COURT:**  It is.

18           **MS. OLDFATHER:**  What a good idea.

19           **THE COURT:**  I'm told that the day is March 1.  How's

20   that for you-all?

21           **MS. OLDFATHER:**  We would probably still be -- it

22   would be premature.  I think after the Morrison deposition --

23           **THE COURT:**  The next one is going to be --

24           **MS. OLDFATHER:**  Unless we could do a special status

25   conference on this issue around mid March, whatever the Court

1   pleases.

2            **MR. MARVIN:**  Your Honor, do we really have to wait

3   that long to set a schedule for our motion?

4            **MS. OLDFATHER:**  Well, I would like to have a chance

5   to get into the repository and do all of the things that we are

6   talking about to have meaningful knowledge of what time we are

7   going to need.

8            **THE COURT:**  Rather than hold up everybody, let me

9   talk with you-all right after the conference and I will deal

10  with it.  I do have to move this case, though.

11           **MS. OLDFATHER:**  Thank you, Your Honor.

12           **MR. MARVIN:**  Your Honor, if I just may raise this one

13  issue for the Court's consideration as well.  Our motion was

14  directed at 28 plaintiffs.  Ms. Oldfather responded on behalf

15  of 11, so there's been no opposition by 17 of the plaintiffs

16  and the time has passed for that.  So what we would ask --

17           **THE COURT:**  What's the situation with those 17, Ann?

18  You don't represent them?

19           **MS. OLDFATHER:**  No, I don't represent them,

20  Your Honor.  I imagine they are waiting to see the ruling on

21  the motion to strike or remand because that would benefit them

22  also.  They are entitled to the same scheduling notice as

23  everyone else.

24           **THE COURT:**  I'm denying the strike.  I'll take those

25  17.  Let me decide what to do with those.  Give me a list of

1    the 17 that haven't responded.

2              **MR. MARVIN:**  Thank you, Your Honor.

3              **MS. WIMBERLY:**  Your Honor, Dorothy Wimberly for

4    Merck.

5                    Ms. Oldfather mentioned the Kenneth Novick

6    motion.  I had thought we were going to address those at the

7    end of the conference.

8              **THE COURT:**  Why don't we do that right now.  This is

9    just about the end.

10             **MS. WIMBERLY:**  Your Honor, Ms. Oldfather did

11   correctly state she has now assumed representation of

12   Kenneth Novick, and she filed a notice of compliance and argues

13   that he is now in compliance.  We are not going to argue about

14   that.  We do disagree with that, but we do hereby withdraw the

15   motion without prejudice, which was Record Document 40199,

16   which was for failure to submit a *Lone Pine* report.

17                   We do intend, as Ms. Oldfather stated, to file a

18   motion for summary judgment, a Rule 56 motion.  She said

19   something about needing a scheduling order.  Your Honor, we

20   have filed dozens of Rule 56 motions directed to individual

21   plaintiffs whose discovery and reports are simply not

22   sufficient and don't validly state a claim, and that's the

23   motion we are filing.  There is no scheduling order or anything

24   like that that's needed.  We will be getting that on file in

25   the near future and believe it should be ripe for hearing at

1   the next status conference.

2              Your Honor, we had also, subject to Record

3   Document 40199, a *Lone Pine* motion, one additional plaintiff.

4   I would point out to the Court that this *Lone Pine* motion was

5   filed in April of 2010.  It was deferred as to a number of

6   plaintiffs such as Mr. Novick and the other last plaintiff,

7   Richard Garcia, to enable pending motions to withdraw to be

8   granted.  Those motions were granted.  This motion has been

9   renoticed for hearing.  It was served on Mr. Garcia.  We have

10  received no response.  It has now been rolled over numerous

11  times, and we would ask the Court to grant the motion as to

12  Mr. Garcia and to dismiss his case with prejudice for failure

13  to provide a *Lone Pine* report.

14             **THE COURT:**  He is the one that had a lawyer and now

15  doesn't have a lawyer?

16             **MS. WIMBERLY:**  Doesn't have a lawyer, hasn't had one

17  for months and months, and has provided no response.

18             **THE COURT:**  Okay.  I will grant that motion.

19             **MS. WIMBERLY:**  Then we had one final motion that was

20  set today.  It appears on page 8.  It is the last remaining

21  plaintiff who had some issues relating to succession matters

22  and who could sign and so forth.  We had noticed it for today.

23  That relates to Louise Young, Record Document 63105.

24             They have finally been able to marshal all of

25  their descendents, and they have a state court hearing set for

```
 1   January 24.  So we would like to roll this one over to March 1
 2   for a final time.  There should be a resolution in advance of
 3   the next conference.
 4          THE COURT:  What are we dealing with there, Dorothy,
 5   from the standpoint of the heirs?
 6          MS. WIMBERLY:  I think Ms. Horn is better prepared to
 7   address the details, but I think they are very hopeful that
 8   they will come out of the hearing on the 24th with a ruling.
 9          MS. HORN:  As to that particular claimant, there's
10   been a series of deaths which increased the pool of heirs.  At
11   this point in time, the array of heirs that exists is somewhat
12   different than when they filed the initial paperwork, so we
13   would have it resolved --
14          THE COURT:  I will take that up the next time.  The
15   next time is when, March 1?  March 1, not April 1.
16              Anything else other than your motion, Ann?  I
17   have a meeting also.  Let me talk with you guys first.  Doug,
18   Ann, let me see you.
19              That's the end of the conference.  Thank you
20   very much.
21              (Proceedings adjourned.)
22                          *  *  *
23
24
25
```

1            **<u>CERTIFICATE</u>**

2            I, Toni Doyle Tusa, CCR, FCRR, Official Court

3    Reporter for the United States District Court, Eastern District

4    of Louisiana, do hereby certify that the foregoing is a true

5    and correct transcript, to the best of my ability and

6    understanding, from the record of the proceedings in the

7    above-entitled matter.

8

9

10                              s/ Toni Doyle Tusa
                                Toni Doyle Tusa, CCR, FCRR
11                              Official Court Reporter

12

13

14

15

16

17

18

19

20

21

22

23

24

25