UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

|                                    |   |                     |
|------------------------------------|---|---------------------|
|                                    | : | MDL NO. 1657        |
| IN RE: VIOXX                       | : |                     |
|     PRODUCTS LIABILITY LITIGATION  | : | SECTION: L          |
|                                    | : |                     |
|                                    | : | JUDGE FALLON        |
|                                    | : | MAG. JUDGE KNOWLES  |
| .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. | : | |

THIS DOCUMENT RELATES TO ALL CASES

## ORDER & REASONS

Currently pending before this Court are Merck's Motion for Judgment on the Pleadings (Rec. Doc. 63656) and Plaintiff Kenneth Walker's Motion for Leave to Amend Complaints (Rec. Doc. 63713). The Court has heard oral argument on the motion for leave to amend and reviewed the briefs and the applicable law, and now issues this Order and Reasons.

**I.     FACTUAL BACKGROUND**

To put this matter in perspective, a brief review of this litigation is appropriate. This multidistrict products liability litigation involves the prescription drug Vioxx, known generically as Rofecoxib. Merck, a New Jersey corporation, researched, designed, manufactured, marketed and distributed Vioxx to relieve pain and inflammation resulting from osteoarthritis, rheumatoid arthritis, menstrual pain, and migraine headaches. On May 20, 1999, the Food and Drug Administration approved Vioxx for sale in the United States. Vioxx remained publicly available until September 20, 2004, when Merck withdrew it from the market after data from a clinical

trial known as APPROVe indicated that the use of Vioxx increased the risk of cardiovascular thrombotic events such as myocardial infarction (heart attack) and ischemic stroke. Thereafter, thousands of individual suits and numerous class actions were filed against Merck in state and federal courts throughout the country alleging various products liability, tort, fraud, and warranty claims. It is estimated that 105 million prescriptions for Vioxx were written in the United States between May 20, 1999 and September 30, 2004. Based on this estimate, it is thought that approximately 20 million patients have taken Vioxx in the United States.[1]

California was the first state to institute a consolidated state court proceeding on October 30, 2002. New Jersey and Texas soon followed suit, on May 20, 2003 and September 6, 2005, respectively. On February 16, 2005, the Judicial Panel on Multidistrict Litigation ("MDL") conferred MDL status on Vioxx lawsuits filed in various federal courts throughout the country and transferred all such cases to this Court to coordinate discovery and to consolidate pretrial matters pursuant to 28 U.S.C. § 1407. *See In re Vioxx Prods. Liab. Litig.*, 360 F. Supp. 2d 1352 (J.P.M.L. 2005). Even after the creation of this federal MDL, many cases remained pending in the various state courts.

One of the cases pending in the MDL against Merck is a suit brought by Kenneth Walker, a resident of the District of Columbia. Mr. Walker filed suit on August 4, 2005 pursuant to the D.C. False Claims Act, and the case was filed under seal. He later amended that complaint to assert a separate claim under the D.C. Consumer Protection Procedures Act ("CPPA"). That Amended Complaint is the currently operative pleading.

---

[1] For a more detailed factual background describing the events that took place before the inception of this multidistrict litigation, see *In re Vioxx Prods. Liab. Litig.*, 401 F. Supp. 2d 565 (E.D. La. 2005) (resolving *Daubert* challenges to a number of expert witnesses).

The Amended Complaint was unsealed in 2008. Merck removed the case to federal court, and the case was then transferred to the MDL. The Court previously held that Mr. Walker lacked standing under the D.C. False Claims Act and dismissed that claim. (Rec. Doc. 62729). Now the remaining CPPA claim is the subject of briefing.

## II. PRESENT MOTIONS

First, Merck filed a motion for judgment on the pleadings with respect to the remaining CPPA claim, alleging that Walker himself lacks standing under the Act because he has not alleged a consumer transaction; that Walker cannot represent any other D.C. consumers because the Amended Complaint lacks adequate class allegations; and that Walker cannot represent the District of Columbia itself, because the District has settled its CPPA claim with Merck. Walker filed an opposition, contending that he does personally have standing under the CPPA. Walker also filed a motion to amend his complaint again to address Merck's other contentions by including Rule 23 class allegations.

Walker argues that leave to amend pleadings is liberally given pursuant to Rule 15(a), and that the proposed Second Amended Complaint merely makes explicit the class allegations that, until recently, it was not clear were required under the D.C. CPPA. According to Walker, "the proposed amendment does not change the substance of the action" and "is primarily procedural." (Rec. Doc. 63713-1 at 5). Therefore, Walker argues that leave should be freely granted to amend (and presumably Merck should re-file its motion for judgment on the pleadings to target the newly-amended pleading).

Merck argues that leave to amend should be denied on the grounds of futility. According to Merck, the proposed amended complaint *does* change the substance of the action because it

includes extensive new factual allegations regarding allegedly deceptive communications towards D.C. consumers (as opposed to doctors) that are absent from the currently pending complaint. Merck argues that these new factual allegations do not relate back to the pending complaint and are therefore time-barred under the three-year CPPA statute of limitations. Finally, Merck argues that the proposed amended complaint is also futile because it fails to address the fundamental pleading defects raised in the motion for judgment on the pleadings.

## III. LAW AND ANALYSIS

### A. Motions to Amend

Since the initial Complaint and the First Amended Complaint have been answered, Plaintiff Walker "may amend [his] pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Thus, the Court has discretion to grant or deny motions for leave to amend. However, as the Fifth Circuit has explained,

> "Discretion" may be a misleading term, for rule 15(a) severely restricts the judge's freedom.... It evinces a bias in favor of granting leave to amend. The policy of the federal rules is to permit liberal amendment to facilitate determination of claims on the merits and to prevent litigation from becoming a technical exercise in the fine points of pleading. Thus, unless there is a substantial reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial.

*Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597-98 (5th Cir. 1981).

That being said, the Court may deny leave to amend a pleading if "the movant has acted in bad faith or with a dilatory motive, granting the motion would cause prejudice, or amendment would be futile." *E.g.*, *Jebaco, Inc. v. Harrah's Operating Co.*, 587 F.3d 314, 322 (5th Cir. 2009). "Futility" means "that the amended complaint would fail to state a claim upon which

relief could be granted" under "the same standard of legal sufficiency as applies under Rule 12(b)(6)." *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 873 (5th Cir. 2000).

Here, Merck opposes leave to amend on the grounds of futility. among other reasons. It argues that the proposed complaint is futile because it contains factual allegations that are time-barred and do not relate back to the currently pending complaint; and futile because the proposed amended complaint is just as deficient with respect to standing and the CPPA requirement of a consumer transaction.

**B.      Futility**

      **1)      Untimeliness and Relation Back**

The D.C. CPPA is governed by a three-year statute of limitations. *See Silvious v. Snapple Bev. Corp.*, 793 F. Supp. 2d 414, 417 (D.D.C. 2011). Vioxx was removed from the market in 2004. Therefore, any claims under the CPPA must have been brought by 2007. Plaintiff timely alleged a CPPA claim in 2005.

However, Merck contends that the proposed amendment, filed in 2012 is time-barred and does not relate back to the 2005 complaint. Pursuant to Rule 15(c), "an amendment to a pleading relates back to the date of the original pleading when ... the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out–or attempted to be set out–in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). Rule 15(c) applies "in situations where the parties to litigation have been sufficiently put on notice of facts and claims which may give rise to future, related claims." *Kansa Reinsurance Co., Ltd. v. Cong. Mortg. Corp. of Tex.*, 20 F.3d 1362, 1366 (5th Cir. 1994). "The rationale of the rule is that, once litigation involving a particular transaction has been instituted, the parties should not be protected by a statute of

limitations from later asserted claims that arose out of the same conduct set forth in the original pleadings." *Id.* at 1366-67 (citation omitted).

The original complaint was amended in 2005 to assert a CPPA claim. According to that Amended Complaint (the currently operative pleading), Walker "brings this action on behalf of himself, the District of Columbia, and District of Columbia residents who purchased Vioxx." (¶ 10). The factual allegations in the Amended Complaint relate to Merck's misrepresentations to physicians and health care providers. (¶¶ 29-31, 33-34, 37-40). Thus, he alleged that "agents and employees of Defendant Merck & Company encouraged medical providers in the District of Columbia to prescribe Vioxx to consumers in the District of Columbia...." (¶ 52), which "misled medical providers and consumers about the increased risks associated with the use of Vioxx" (¶ 57).

Now, Walker seeks leave to file a Second Amended Complaint. The new proposed complaint is over three times as long as the current Amended Complaint. It clarifies that the case is brought as a class action under Rule 23 on behalf of Vioxx consumers in the District of Columbia.[2] The factual allegations of Merck's conduct are also expanded, and include allegations of "unconscionable and deceptive marketing practices" directed towards consumers. *E.g.*, ¶ 48 ("Merck targeted consumers. Merck alleged Vioxx was equal or better than Celebrex and branded NSAIDS, attempting to increase sales by this direct to consumer promotion."); ¶ 59 ("In 2000, Merck spent nearly $161 million on direct-to-consumer advertising for Vioxx – more than PepsiCo spent to advertise Pepsi Cola."); ¶ 62-63 (stating that the FDA issued a letter to

---

[2]The proposed class is defined as "All Consumers in the District of Columbia, who purchased and/or paid for Vioxx during the period from May 20, 1999 through September 30, 2004, the class period. (The purchases must not have been made for resale.)".

Merck regarding misleading direct-to-consumer advertisements); ¶ 86 ("Merck continued to purposefully withhold this information from the public."); ¶ 103 ("Merck ... persisted in refusing to include a cardiovascular warning in any of its direct-to-consumer advertisements."); ¶ 106 ("Merck was still engaged in a campaign designed to deceive the average consumer and the medical community by downplaying and suppressing any association between Vioxx and any serious cardiovascular risk.").

Essentially, Merck argues that the original Complaint, as amended, alleges misrepresentations directed to physicians and medical providers, while the proposed Second Amended Complaint alleges a completely different theory of liability based on misrepresentations to consumers. According to Merck, the proposed Second Amended Complaint implicates an entirely different set of facts and therefore does not relate back to the timely filing of the first Amended Complaint.

Merck cites *Louisiana Wholesale Drug Co. v. Biovail Corp.*, 437 F. Supp. 2d 79 (D.D.C. 2006). That case involved two distinct alleged antitrust injuries: first, that the plaintiffs would have been able to purchase a cheaper generic version of the defendant's drug had the defendant not unlawfully acted to keep it off the market, and a "new and quite different factual basis for the antitrust injury," that the defendant would itself have marketed a cheaper generic version if its unlawful acts were not successful in keeping the competitor out of the market. *See id.* at 81-82. The plaintiffs in that case only asserted the second theory after summary judgment was granted in a different case on the first theory. *See id.* at 82. The court held that the amended complaint asserting the second theory did not relate back to the original timely complaint and was thus time-barred because "new allegations must be more than factually related to arise out of the same

conduct." *See id.* at 87. The plaintiffs "could have ascertained the basic facts underpinning their [claim] and included those facts in their original complaint, which would have allowed them to flesh out the claim, as needed in the amended complaint." *Id.* Without originally pleading those facts, the defendant had no notice of the new antitrust theory and the new claim did not relate back.

Merck also analogizes to *Schirle v. SOKUDU USA, LLC*, No. 4:08-CV-555-Y, 2011 WL 2881422 (N.D. Tex. 2011). In *Schirle*, the plaintiff asserted defamation claims against his employer. The original complaint alleged two specific instances of allegedly defamatory statements, and the plaintiff later amended to add four additional instances. *See id.* at *7-8. The Court found those claims time-barred under Texas law, and also found no relation back to the original complaint; the amended complaint "added new facts regarding separate transactions–distinct instances of defamation–perpertrated by different wrongdoers and addressed to different audiences." *Id.* at *8. Therefore, those new specific instances of alleged defamation did not relate back to the previously pled, but unrelated, specific instances of defamation. *Id.* The original petition contained "generalized language regarding multiple 'statements and comments,'" but that was "insufficient to invoke relation back." *See id.*

In reply, Walker argues that the original amended complaint sufficiently put Merck on notice of claims based on its marketing of Vioxx to both physicians and to the public. It excerpts portions of the Amended Complaint which refer, albeit generically, to misrepresentations to consumers. *See* ¶ 10 ("Defendant, Merck & Company, committed unlawful trade practices in connection with marketing and selling Vioxx to consumers in the District of Columbia...."); ¶ 54 ("Defendant Merck & Company[], by its conduct, in intentionally obfuscating the risks and

dangers associated with use of Vioxx, misled medical providers and consumers in the District of Columbia...."); ¶ 56 ("Defendant Merck ... failed to state a material fact ... when it marketed the drug to medical providers and consumers in the District of Columbia."); ¶ 57 ("Defendant Merck ... misled medical providers and consumers in the District of Columbia about the increased risks associated with the use of Vioxx.").

Walker also argues that *Schirle* and *Louisiana Wholesale* are distinguishable because the divergence between the original and amended complaints in those cases was substantially greater. Here, Walker argues that the proposed Second Amended Complaint does not change any parties or the legal theory, and that "this case has always sought to represent the interests of consumers based upon the same facts... and the underlying facts in the complaints on file are directly in line with the broadened allegations contained in the proposed amendment." (Rec. Doc. 63742 at 2-3). He argues that "the proposed amendment simply supplements, amplifies, or makes more specific the existing facts and claims." (*Id.* at 3). Walker also argues that Merck removed the case to federal court on the basis of CAFA jurisdiction because the case is "the functional equivalent of a putative class action," and Merck should not now be heard to deny that it was on notice that Walker sought to vindicate the interests of D.C. consumers for misrepresentations made to them.

Under these circumstances, relation back is appropriate. The Amended Complaint asserts violations of the CPPA predicated on Merck's marketing of Vioxx. It also articulates that Merck marketed to, and misled, consumers in the District of Columbia. Given the policies underlying Rule 15, the Amended Complaint adequately put Merck on notice of "facts and claims that may give rise to future, related claims," *Kansa*, 20 F. 3d at 1366-67, such that the proposed Second

Amended Complaint appropriately relates back. *Louisiana Wholesale* and *Schirle* involved much more different proposed amendments, and thus are not apposite to the present case. Accordingly, the proposed Second Amended Complaint is not futile, at least in terms of the applicable statute of limitations.

### 2) Standing Under Article III and the CPPA

Merck also argues that leave to file the proposed Second Amended Complaint should be denied as futile because it does not survive the arguments raised in the already-pending motion for judgment on the pleadings. Merck reiterates that the proposed Second Amended Complaint does not allege a consumer transaction within the meaning of the CPPA, and does not allege a Constitutionally-cognizable injury.

Merck's argument that amendment is futile reiterates its arguments for judgment on the pleadings with respect to the current complaint. Denying a motion for leave to amend on the basis of futility is essentially identical to granting a motion to dismiss for failure to state a claim. *See City of Clinton v. Pilgrim's Pride Corp.*, 632 F.3d 148, 152 (5th Cir. 2010). However, although the legal issues have been briefed at length in the context of the motion for judgment on the pleadings, the discussion of those legal issues as they pertain to the proposed Second Amended Complaint is terse. The Court intends to resolve this legal issue only once, and therefore it is appropriate to ensure that the matter is fully briefed. However, it would be wasteful to go through the motions of granting the leave to amend but allowing Merck to file a renewed motion for judgment on the pleadings. Accordingly, under these circumstances, if either party wishes to file a supplemental memorandum elaborating their previously-made arguments regarding the legal sufficiency of the Proposed Second Amended Complaint, they

may do so on or before Friday, May 18. At that time the Court will consider the matter fully briefed and ripe for resolution.

## IV. CONCLUSION

For the foregoing reasons, IT IS ORDERED that the parties may file supplemental memoranda as set forth above on or before Friday, May 18, 2012.

New Orleans, Louisiana, this 9th day of May, 2012.

_____
UNITED STATES DISTRICT JUDGE