# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re:  VIOXX® | ] | **MDL Docket No. 1657** |
| | ] | |
| **PRODUCTS LIABILITY LITIGATION** | ] | **Section L** |
| | ] | |
| ***This document relates to Plaintiff Exec.*** | ] | **Judge Fallon** |
| ***Walter J. Roach, Jr., v. Merck & Co.,*** | ] | |
| ***a conditionally transferred case.*** | ] | **Magistrate Judge Knowles** |
| ***2:10-cv-00868   EEF:DEK*** | ] | |

## NOTICE OF FILING PLAINIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Walter E. Roach, Jr., by Attorney Emmanuel F. Guyon, will appear and respond by filing the attached Response to Defendant Merck Sharp & Dohme Corp.'s Motion for Summary Judgment, presently set for hearing at 9:00 a.m. on May 23, 2012, before the Honorable Eldon E. Fallon, Judge, United States District Courthouse, Eastern District of Louisiana, 500 Poydras Street, New Orleans, Louisiana.

Dated:  May 21, 2012.                          Respectfully Submitted,

Walter J. Roach, Jr., Executor of the
Estate of Joanne I. Roach, Deceased.

By:     */s/Emmanuel F. Guyon*
Emmanuel F. Guyon, his attorney
5 East Bridge Street
Streator, IL  61364
Tel.:  815/673-2361
Fax.: 815/673-2362
*eguyon@frontier.com*

*Plaintiff's counsel*

**CERTIFICATE OF SERVICE**

I hereby certify the above and foregoing Response to Defendant's Motion for Summary

Judgment has been served on *Plaintiff's Liaison Counsel I* Russ Herman, Andy Birchfield, and

Phillip Wittman, and *Plaintiff's Liaison Counsel II* Ann B. Oldfather, by U. S. Mail and e-mail

by electronically up-loading the same to LexisNexis File & Serve Advanced in accordance with

Pre-Trial Order No. 8 (C), and the foregoing was electronically filed with the clerk of Court of

the United States District Court for the Eastern District of Louisiana by using the CM/ECF

system which will send a Notice of Electronic Filing in accord with the procedures established in

*MDL 1657*, on 21st day of May, 2012.

                            */s/Emmanuel F. Guyon*
                            Emmanuel F. Guyon,
                            5 East Bridge Street
                            Streator, IL  61364
                            Tel.:  815/673-2361
                            Fax.: 815/673-2362
                            *eguyon@frontier.com*

                            *Plaintiff's counsel*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re:  VIOXX® | ] | **MDL Docket No. 1657** |
| | ] | |
| **PRODUCTS LIABILITY LITIGATION** | ] | **Section L** |
| | ] | |
| *This document relates to Plaintiff Adm.* | ] | **Judge Fallon** |
| *Walter J. Roach, Jr.,  v. Merck & Co.,* | ] | |
| *a conditionally transferred case.* | ] | **Magistrate Judge Knowles** |
| *2:10-cv-00868   EEF:DEK* | ] | |

### PLAINTIFF'S RESPONSE TO DEFENDANT'S
### MOTION FOR SUMMARY JUDGMENT

Plaintiff Walter J. Roach, Jr., by Atty. Emmanuel F. Guyon, responds to the Motion for Summary Judgment filed by Defendant Merck Sharp & Dohme Corp, stating to the Court the Defendant's Motion for Summary Judgment should be Denied for the reasons stated in the Response to the Motion for Summary Judgment, the Statement of Facts, and the Memorandum of Law filed herewith.  Defendant's Motion is based on a law position the claim is time-barred. Plaintiff opposes that position and states the claim was filed within appropriate periods to be a valid claim, and the claim is not time barred from further development in this court.

Plaintiff requests the Court Deny the Defendant's Motion for Summary Judgment.

Dated:  May 21, 2012.                              Respectfully Submitted,

Walter J. Roach, Jr., Administrator of the
Estate of Joanne I. Roach, Deceased.

By:     */s/Emmanuel F. Guyon*
Emmanuel F. Guyon, his attorney
5 East Bridge Street
Streator, IL  61364
Tel.: 815/673-2361
Fax.: 815/673-2362
*eguyon@frontier.com*

*Plaintiff's counsel*

## CERTIFICATE OF SERVICE

I hereby certify the above and foregoing Response to Defendant's Motion for Summary Judgment has been served on *Plaintiff's Liaison Counsel I* Russ Herman, Andy Birchfield, and Phillip Wittman, and *Plaintiff's Liaison Counsel II* Ann B. Oldfather, by U. S. Mail and e-mail by electronically up-loading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8 (C), and the foregoing was electronically filed with the clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in *MDL 1657*, on 21st day of May, 2012.

*/s/Emmanuel F. Guyon*
Emmanuel F. Guyon,
5 East Bridge Street
Streator, IL  61364
Tel.:  815/673-2361
Fax.: 815/673-2362
*eguyon@frontier.com*

*Plaintiff's counsel*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| In Re:  VIOXX® | **MDL Docket No. 1657** |
| | **Section L** |
| **PRODUCTS LIABILITY LITIGATION** | |
| | **Judge E. Fallon** |
| | **Magistrate Judge D. Knowles** |
| *This document relates to Plaintiff Exec.* | |
| *Walter J. Roach, Jr., v. Merck & Co.,* | **RESPONSE to DEFENDANT'S** |
| *a conditionally transferred case.* | **MOTION for SUMMARY JUDGMENT** |
| *2:10-cv-00868   EEF:DEK* | **and MEMORANDUM OF LAW** |

Plaintiff Walter J. Roach, Jr., Executor of the Estate of Joanne I. Roach, Deceased, by his attorney Emmanuel F. Guyon, Responds to the Motion of the Defendant Merck & Co. requesting entry of a Summary Judgment in favor of Defendant Merck & Co.

In response to the motion, Plaintiff Executor Roach, by Attorney Guyon states as follows:

**I.      *Procedural Background of the Roach Case and Preliminary Considerations.***

**A.      *Class Action Settlement Program:  the BrownGreer Law Firm, Richmond, VA.***

1.  Plaintiff- Executor's decedent, Ms. Joanne I. Roach, died April 8, 2004.  The decedent took the Vioxx pill for four months at the direction of her treating doctor, Dr. Indra Pal, a primary care physician, of Streator, Illinois, suffered a stroke, and eventually died.

2.  Plaintiff- Executor became knowledgeable of a Settlement Program announced by Defendant Merck & Co. through a news article in the Wall Street Journal, July 1, 2008, Illinois edition, where over 59,000 claims had been registered, and 51,000 had filed enrollment forms. *See copy of news article, Internet reprint.  FRE 901 and 902.*

3.  Plaintiff Executor obtained a claims package from the Internet about July 5, 2008, and submitted the claims package to BrownGreer on July 16, 2008.  The claims package submitted by the Plaintiff contained 45 pages of relevant information requested by BrownGreer.  Plaintiff

Executor answered each question as it applied to this case, provided the requested documents available to the Executor, and followed the case, and responded as well as could be expected over a period of time while the case was managed by BrownGreer.

4.   Initial contact was maintained with Ms. Laura Burkholder of BrownGreer, as the Claims Administrator, of Richmond, VA, with plaintiff's attorney responding to requests for information and documents at various times, *inter alia,* to October 30, 2008.    Later, BrownGreer, by its agent Mr. Phil Sturm, advised on February 10, 2010, the claims package sent to BrownGreer on July 16, 2008, was deficient in that it did not have a copy of a stay order relating to a Plaintiff's Executor's state court filing of the claim with the claims package.  Some sixteen months prior, correspondence was directed to BrownGreer to inquire about the completeness of the settlement program's claim filing requirements, this prior correspondence on October 30, 2008.   No objection was made by BrownGreer, no correspondence was received by Plaintiff near or after the date of October 30, 2008, about the absence of a stay order in relation to a state court filing of the claim.  The state court cause of action was filed as cause no. 2009-L-221 in LaSalle County, Illinois, on November 12, 2009, because BrownGreer indicated a state court proceeding, coupled with a tolling agreement was required to participate in the settlement program.   This notification to Plaintiff Executor was received on September 21, 2009, before this filing date of November 12, 2009.   The claims administrator stated 19 months later *(2.10.2010),* the cause could not be considered in the Settlement Program, then to *MDL No. 1657, EDLA/New Orleans, LA*, because no stay order was entered in the state court proceeding. The state court proceeding was removed to U. S. District Court, Chicago, Illinois, on January 26, 2010.  However, there was a stay order in the Northern District of Illinois, entered February 8, 2010.

5.   BrownGreer had previously requested a Release of the Claim as part of the development of the claim, and led the Executor of the Estate, Walter J. Roach, Jr., to believe the Release tendered to BrownGreer would serve to release the claim eventually, without the necessity of filing a state court action.   The defendant Merck & Co, through BrownGreer was made aware of the claim, thus had notice of the claim by the Executor of the Estate.   BrownGreer had forwarded to the Estate's Executor a *"Review Criteria Manual for the Vioxx Extraordinary Injury Program",* dated December 1, 2009.  The state court lawsuit had been filed November 12, 2009.   The Executor believed the filing of a state court suit would not be necessary because BrownGreer requested a Release of the claim long before that date.   Mr. Roach signed a Release, which document was sent to BrownGreer on October 30, 2008.

**B.      *Original proceeding filed in LaSalle County, Illinois, state court filing.***

6.   The Roach Estate's Complaint was filed on November 12, 2009, in LaSalle County, Illinois, cause no. 2009-L-221.  The filing was an effort to be in compliance with the Settlement Program administered by BrownGreer.   The BrownGreer law firm, by Mr. Phil Sturm, by telephone call on September 21, 2009, to Atty. Guyon had indicated the Roach case was ineligible to participate in the settlement program because it did not file a state court suit, or a federal court suit, before submitting the materials to participate in the BrownGreer proceedings that evolved into *MDL 1657, EDLA, New Orleans, LA.*

7.   Service was made on Defendant Merck & Co. through CT Corporation Systems by First Alias Summons on December 21, 2009, in the state court proceedings.

**C.      *Federal District Court Proceedings, Northern District of Illinois.***

8.   The cause was removed from LaSalle County, Illinois, to the Northern District of Illinois, by Atty. Dmitri Shifrin of the Bryan Cave, LLP, law firm on date of January 26, 2010.

An Answer with Affirmative Defenses, a total of 82 affirmative defenses, was filed by the Defendant Merck & Co. by Atty. Shifrin on January 26, 2010.

9.   An Entry of Appearance filed by Atty. Guyon in Northern District of Illinois case on date of January 27, 2010.

10.   A stay order was entered by presiding Judge Darrah in the proceedings in the Northern District of Illinois on February 8, 2010.

11.   Status date for the case in Northern District of Illinois originally set for March 25, 2010, then re-set to September 1, 2010 before Judge Darrah.

12.   The Claims Administrator, BrownGreer Law Firm of Richmond, VA, by its agent Mr. Phil Sturm, advised on February 10, 2010, the claims package sent to BrownGreer on July 16, 2008, was deficient in that it did not have a copy of a stay order relating to a Plaintiff Executor's state court filing of a lawsuit.   The Claims Administrator, BrownGreer, stated the claim did not qualify for participation in the Settlement Program because no state lawsuit was pending before the deadline dates of the Settlement Program.

### D. Federal District Court Proceedings, Eastern District of Louisiana.

13.   Judge Darrah's Order transferred the cause conditionally from the Northern District of Illinois to the Eastern District of Louisiana, New Orleans, LA, on March 22, 2010.

14.   An Objection to participation in the class action suit was filed by BrownGreer.

15.   An Objection was filed by Williams Connolly, LLP, to participation in the class action on the basis of non-compliance with Pre-trial Orders of *MDL*, specifically, *PTO 29*, sections *I.A* through *C*, and *D*.   This objection was cured on August 9, 2010,by transmittal of documents to Williams Connolly, LLP, to Atty's.  Esber and Pistilli, by request from the firm.

## II.    Plaintiff's Response to the Defendant's Motion to Dismiss

### A.    Statute: Wrongful Death Claims in the State of Illinois.

The Illinois Statutes contain specific statutes that govern liability of tort-feasors for causes of action at variance with the common law.  One of the most important of the statutory torts is the Wrongful Death Act, *740 ILCS 180/1 to 180/2.2.*   This Act provides a remedy in situations where the common law provided no cause of action, and no remedy.  The Wrongful Death Act requires a plaintiff to prove a *"...wrongful act, neglect, or default..."* of the Defendant to cause the death of a person.   It is an independent action for the "economic and non-economic damages" suffered by the decedent's relatives as result of the death.  *740 ILCS 180/2.*

Under the Wrongful Death Act, an action is permitted to be maintained only by the personal representative of the deceased person for the exclusive benefit of the *"...surviving spouse and next of kin..."* of the deceased.  *Mattoon Gas, Light & Coke co. v. Dolan, 105 Ill App 1 (3 Dist 1903);  In Re Estate of Finley, 151 Ill 2d 95, 601 NE 2d 699 (Sup 1992);  Will v. Northwestern Univ. 378 Ill App 3d 280, 317 Ill Dec 313, 881 NE  2d 481 (1 Dist 2007).*

### B.    Application of the Two-year Statute of Limitations to Wrongful Death cases.

### 1.    An Sudden Event Injury is Easily Identifiable, and starts the Statute of Limitations.

An action under the Wrongful Death Act must be commenced within two years after death when the deceased had a viable cause of action for wrongful death.   *Beetle v. Wal-Mart Assoc., 326 Ill App 3d 528, 260 Ill Dec 520, 761 NE 2d 364 (2 Dist 2001).*   In the *Beetle* case, a construction worker met his death by a sudden, external, and traumatic event, and the two year period started on the date of death.  Obviously, the circumstances of death where the events were sudden and traumatic, thus easily identified, were immediately known, and it is reasonable to charge the personal representative with knowledge of a cause of action on the date of death.  In

that type of case the two-year *S.o.L.* starts to run on the date of death because a reasonable person, a reasonable plaintiff, should know of the existence of the cause of action immediately.

A cause of action arises when the personal representative knew or should have known the death was caused wrongfully. *Young v. McKiegue, 303 Ill App 380, 7008 NE 2d 493 (1 Dist 1999).* When the cause of death is generally not known, as in a medical case, or a drug-products liability case, the prospect of a lay person being able to fix the cause of death, or become knowledgeable about the cause of death to determine the likelihood of the existence of a cause of action, the task is much more difficult. In a drug products liability case, as in the case at bar, the precise date of starting the S.o.L. period is much more difficult to determine. A plaintiff knows or should know that an injury was 'wrongfully caused" when he obtains "sufficient information concerning the injury to put a reasonable person on inquiry to determine whether actionable conduct is involved". *Saunders v. Klungboonkrong, 103 Ill Dec 565, 501 NE 2d 882,   Ill Dec (5 Dist 1986).*

## 2.   Discovery of the Existence of a Cause of Action.

Obviously the family knew of their mother's death on April 8, 2004. However, it is not so obvious to any member of this family that use of the Vioxx drug was a factor to cause the death of their mother. This finding is especially true where no member of this family had any medical training that could reasonably be attributed to plaintiffs to charge the potential plaintiffs with knowledge that Vioxx, alone or with other causes, caused the death of their mother. Vioxx was branded and described as an "anti-inflammatory drug", an alternative to common aspirin, used to reduce swelling and pain for determined body sites. Use of the drug is normally not associated with strokes and MI's. Plaintiff Executor's decedent died in 2004 from the circumstances of a stroke in 2001 that involved multiple body system failures that led to her

death on April 8, 2004.  Making that connection as a medical conclusion simply from knowledge of a physician's prescription and ingestion of a drug to reduce pain and inflammation would somehow cause a stroke with life threatening consequences requires some medical background and ability to connect the drug use with the events that caused her death.  Drug companies are experienced at this type of analysis, really forensic work, but lay persons are not.   Under the "learned intermediary" doctrine, a manufacturer of prescription drugs must supply an adequate warning to prescribing and treating physicians, who then have the duty to convey the warning to their patients.  *Kirk v. Michael Reese Hosp. & Med. Ctr., 117 Ill  2d 507, 513 NE 2d 387.*  No such warning was provided by Defendant Merck & Co., prior to the use of Vioxx by Plaintiff's decedent.

The *"Discovery Rule"* is an important exception to the general rule that a plaintiff must file an action within the period set forth in the governing statute of limitations.  For a cause of action in Wrongful death, that period is two years in Illinois. *740 ILCS 180/2.*  For purposes of the "discovery rule" a plaintiff discovers a cause of action when he has reason to suspect a factual basis for the cause of action.  After making an initial determination of a basis for filing a suit, Plaintiff is obligated to make a proper factual investigation to determine if a suit has any merit.  *Illinois S.C.R. 137 and Federal F.R.C.P. 11(b).*  In the case at bar this means some investigation and inquiry about Merck's dealings with drug trials, usually proprietary, and inquiry into Merck's reports with the Federal Drug Administration to determine the results and connect the medical theories and products that cause adverse results by use of the drug.  Again, this is not the type of knowledge that lay persons are normally expected to possess.  Acquiring this knowledge, and connecting the facts to determine a cause of action exists is an imposing

obligation to a lay person, and even somewhat daunting to a lawyer experienced in these types of drug litigation cases.

Defendant contends Plaintiff should have known of the dangerous propensities of the brand name drug Vioxx long before he contacted BrownGreer on July 1, 2008, and long before he filed suit on November 12, 2009.  Plaintiff suggests to the court this is an unfair burden to be placed on the prospective plaintiff, exploring facts and attempting to discover esoteric medical information to determine whether or not a cause of action exists and originates with Vioxx use.

The following is a medical "thumb-nail" of Vioxx, a Non-Steroid Anti-inflammatory Drug *("NSAID"),* stating how the drug works*:*

> a. *Prostoglandins are COX (cyclogenase) inhibitors;*
> b. *COX 2 enzymes metabolize arachidonic acids to produce prostaglandin;*
> c. *Vioxx is a COX 2 inhibitor designed to produce prostaglandins at inflammatory sites, to mediate inflammation and to produce prostacyclin, a vasodilator and producer of platelet aggregation.*

All of the above medical information, *a., b., and c., supra,* is not the type of information generally known to the public.  In fact, it is doubtful the problems with Vioxx were even known or disseminated to the medical community, unwitting facilitators to the innocent users by prescription to their patients ingesting the drug.  It follows, it is reasonable to say and conclude, the general public had no knowledge of the dangerous propensities of Vioxx.  Even the primary physicians had no knowledge of the problems with Vioxx, nor of the investigations undertaken by the manufacturer to determine the extent of the problem.   Publicity surrounding the proprietary drug trials was not made to the general public.  And, Merck apparently did little to promptly inform the medical community of the reported, continuing problems with Vioxx.  Plaintiff's decedent ingested the drug in 2001, died April 8, 2004, yet the drug was not recalled until September 30, 2004, and only after Merck assessed the results of several proprietary, non-

public drug trials, all of which were started and on-going prior to stroke suffered by plaintiff's decedent, and continued after her death.

The "downside" of COX 2 inhibitors is these types of drugs, including Vioxx, are associated with an increased risk of heart attack, stroke, and blood clots in patients using COX 2 inhibitors.   Merck & Co. became aware of the problems reported to it long before Vioxx was withdrawn from the marketplace, and long before any attempt was made to alert the medical community of the problems with its use.   The physicians continued to prescribe Vioxx while the several proprietary trials were being conducted by the drug company to determine the safety of continued use of Vioxx.

Defendant Merck & Co. conducted at least two proprietary trials to justify continued marketing of the drug as a Cox-2 inhibitor, which class of drugs are designed to reduce inflammation and pain by providing analgesic and anti-inflammatory benefits to persons with arthritis and muscle pain.  Merck participated in the following known drug trials:

> 1.  **"APPROVe": (Adenomatous Polyp Prevention on VIOXX):** this trial was terminated early because of reported increased risk for serious cardiac events such as heart attacks and strokes.   **Note:** *this report was released for publication in year 2005; Bresalier N. Eng. J. Med 352:1093*

> 2.  **"VIGOR":   (VIOXX GI Outcomes Research):**   this trial was undertaken, and primarily designed to study the effects of Vioxx on side effects such as stomach ulcers and bleeding, the results submitted to the FDA in June, 2000.

Eventually, Merck & Co. was forced to "voluntarily" withdraw Vioxx from the marketplace.   This announcement was not accompanied by any admission of the dangerous propensities of Vioxx, only that Merck was voluntarily withdrawing the drug from public sale. Merck takes the position that wide-spread publicity of voluntary withdrawal of Vioxx from the marketplace somehow served as notice to the public the drug could be life-threatening, to thus put everyone on notice of the danger of continued use.   Plaintiff suggests Merck's position,

public dissemination of withdrawal, is a "stretch" to make this type of connection, that somehow the withdrawnal of a drug, Vioxx, puts everyone on notice the drug might be life-threatening.

3.    **Does an Announcement of "Withdrawal from the Marketplace" Constitute Notice to the Public of a Defective Drug?**

Merck voluntarily withdrew Vioxx from the marketplace on September 30, 2004.  Does "withdrawal from the marketplace" equal knowledge to everyone hearing the report of withdrawal conclude Vioxx might have caused, or could cause the death of a person?  Plaintiff suggests the answer to be the general public would not normally come to this conclusion.

Plaintiff   Executor's decedent was prescribed many drugs during the course of her treatment in the period leading to the stroke on November 22, 2001, and also continued to be administered the drugs after the stroke, except Vioxx.  Those drugs included:

> *Ery-tab; Medroxyprogesterone;   Premarin;   Meclizine;   Atenolol;   Ciloxan opthl.sol;  Vexol;  Nitroquick;  Propoxy-N/APAP;  Relafen;  Cipro;  Ampicillin;* **Vioxx (25mg)**; *  Plavix;  Zoloft;  Alprazolam;  Sulfamethoxazole;  Claritin; Diazepam; Celbrex; Ocuflox; Amaryl; Novolin; Spriornolactone; Furosemide; Amiodarone; Potassium CL; Lipitor; and Prevacid.        (total: 29 drugs).*

Is it reasonable to conclude the Plaintiff, a layperson, could determine Vioxx was the dangerous drug that caused the death of Joanne I. Roach on the date of the withdrawal of the drug, September 30, 2004, when the multitude of listed drugs were prescribed by the primary physicians?   Further, was it reasonable to conclude a causal connection existed between the use of the pain-control drug, Vioxx, would have caused a stroke, contributed to essential and multiple body system failures, followed by death?  Finally, is it reasonable to rule the statutes of limitations begin to run on the date of death?   Plaintiff suggests the more reasonable conclusion is the answer to all of the questions has to be provided by someone with medical and pharma expertise to make that scientific-based connection, and determine the date where a causal connection can be made is some time after the death of plaintiff's decedent.  That date is a

question of fact to be decided by a jury.  Most certainly, that date to start a Statute of Limitations for a Wrongful Death action is not the date of death.

Plaintiff has obtained the report of Dr. Riyaz Nomani, a cardiologist from Prairie Cardiovascular/Doctors of the Prairie, Springfield, Illinois.  Dr. Nomani concluded Vioxx played a role in the medical conditions that led to her death.   In Illinois, the requirement to impose liability is the product has to be a contributing factor to cause the harm, but it need not be the sole contributing factor.  *Illinois Practice Instructions,  I.P.I. 15.01-Proximate Cause-Definition. Heitz v. Hogan, 134 Ill App 3d 352, 480 NE 2d 185, 89 Ill Dec 299 (4 Dist. 1985)*

## 4.     Is a Layperson Expected to have Sufficient Knowledge of Relevant Facts to Make an Informed Decision of the Existence of a Cause of Action in a Medical Case?

The *Roach* case, at bar, is a stroke and MI case within the categories established in these proceedings, *MDL 1657.*   In another category of the *MDL 1657* litigation, Merck has filed a Memorandum in support of its position of non-compensability of Venous Thrombotic Embolism (*"VTE"*) cases. *Defendant's Memorandum in Support of Merck & Co's. Motion for Summary Judgment in VTE cases, filed November 2, 2011.*   There are some interesting positions taken by the Defendant in that Memorandum, with quotes from rulings from many cases in various jurisdictions to support its positions in the VTE litigation.  The following assertions adopted on behalf of Merck, were made:

a.  The resolution program *(announced November, 2007)* was made available only to claimants alleging a myocardial infarct, stroke, or SCD.  *p. 3.*

b.  Strokes are materially different from VTE's.  Clots that cause arterial thrombotic events such as MI's and strokes are fundamentally different from veinous clots that cause VTE's.  *p. 4.*

c.  Arteries are vessels with high pressures, in contrast to veins which are low pressure vessels.  *p. 5.*

Defendant Merck also makes the valid legal point:

*"...Plaintiff must show both "general" (or generic) causation, and specific (or individual) causation."   Defendant quotes the Court in Knight v. Kirby Inland Marine, Inc., 482 F. 2d 347, (5th Cir. 2007), "...general causation is whether a substance is capable of causing a particular injury or condition in the general population...while specific causation is whether a substance caused a particular individual's injury...".   (quoting Merrell Dow Pharm., Inc. v. Havner, 953 SW 2d 706 (Tex 1997).*

Defendant Merck also states a plaintiff

*"... must elicit, in order to prove general causation, reliable, scientific evidence through expert testimony because whether a prescription medication can cause venous blood clots is beyond the ken of the ordinary layperson".  Saldo v. Sandoz Pharm. Corp. 244 F. Supp. 2d 434 (WD. Pa. 2003).*

At pp. 14 and 15 of the Memorandum, Defendant cites cases from many jurisdictions, at least ten of the Federal Circuits, all of which generally result in a ruling something like this:

*"Under South Carolina law...where a medical causation issue is not one within the common knowledge of the layman, the plaintiff must present 'medical expert testimony' in order to establish causation.". (citation omitted in Defendant's Brief)*

Another statement of the requirement is:

*"Whether or not the Cipro taken by plaintiff was a cause of his heart attack is a matter of science that is far removed from the usual and ordinary experience of the average person.  A jury, comprised of lay people, is simply not qualified to determine that issue without the assistance of expert testimony establishing Cipro can cause a myocardial infarction".  Swallow v. Emergency Med. of Idaho, P.A., 67 P. 3d 68 (Idaho 2003).*

Merck also expects a plaintiff to "discover" the cause of action when the potential plaintiff has little facts at his disposal, usually has no medical training as a resource,  likely has to obtain records from various places, including possible contact with a reluctant-to-share information defendant.  Merck is also placed now in an irreconcilable position, arguing both ways that:  ***a.***   a plaintiff, a layperson, must be able to make an informed decision about issues

that include the safety of a particular drug *(one or more out of 29 in this case)*, the effect of one drug acting alone or in concert with other drugs that might cause harm, and after obtaining necessary facts to satisfy the procedural rules *(Illinois S.C.R. 137 and Federal F.R.C.P. 11 (b))* determine if a cause of action exists;     and, *b.*   a juror, also a layperson, needs professional, expert assistance to determine the same issues as the plaintiff, and related to imposition of liability in the eventual lawsuit.   In drug product cases, usually only the drug companies and the FDA have this information readily available.   A plaintiff, an ordinary citizen, is not usually knowledgeable about the problems of drug usage, and multiple drug usage, that cause harm to patients.  Plaintiffs usually do not have the resources or the background to properly connect and assess the facts known to them that cause harm, and aggregate to comprise a cause of action.

The real question becomes:   how does a *lay person plaintiff* differ from a *lay person juror* when it comes to a determination of knowledge of facts necessary to determine if a cause of action is found, to enable each to make a finding on the issues in drug-product liability cases? And, when should a lay person, as plaintiff, be charged with responsibility for the start of a particular Statute of Limitation period?  The answer to each question is at the heart of every lawsuit of the kind before the court here.  If the plaintiff is cut off too soon by an early start-date to apply the statute of limitations, the cause of action will be lost forever, since the statutes of limitations may expire before necessary information is acquired to enable a decision to conclude there is a cause of action.  If a juror is not given proper scientific information in cases requiring expert testimony to assist in reaching a verdict, the correct result will not be reached.   Yet, Merck argues a plaintiff must develop this information entirely on his own, where a juror will be given the necessary assistance by way of expert reports and opinions.  The threshold standard to obtain this information is starkly different for a plaintiff and for a juror, at opposite ends of a

legal spectrum.   The burden to warn should shift to the drug company to inform the particular

user of a defective drug of the dangerous propensities of the drug, here Vioxx, and the harm it

could cause.   The information of possible harm, and harmful effects should be given directly to

the user, the patient.   Mere publicity on television and in newspapers of withdrawal of the drug

does not fulfill that obligation required of Defendant Merck, and does not give sufficient warning

of the cause of harm that could occur to alert a plaintiff of a possible cause of action.

## C.   *Tolling of the Statute of Limitations.*

## 1.   When is a Statute of Limitation's Strict Time Period Tolled?

Application of the *"Discovery Rule"* to a particular case tolls a Statute of Limitations for

a particular case. *Knox College v. Celotex Corp, 88 Ill 2d 407, 430 NE 2d 976, 58 Ill Dec 725,*

*(Sup 1981).*  The *"Discovery Rule"* is an important exception to the general rule that a plaintiff

must file an action within the period set forth in the governing statute of limitations.   *Rozny v.*

*Marnul, 43 Ill 2d 54, 250NE 2d 656 (Sup 1969).*   For purposes of the "discovery rule" a plaintiff

discovers a cause of action when he has reason to suspect a factual basis for the cause of action.

When a plaintiff knew, or should have known of the injury, and that it was wrongfully caused is

an issue of fact for the jury to decide.   *Nolan v. Johns-Manville Asbestos, 85 Ill 2d 161. 421 NE*

*2d 869 (Sup 1981).*   After making an initial determination of a basis for filing a suit, Plaintiff is

obligated to make a proper factual investigation to determine if a suit has any merit.   *Illinois*

*S.C.R. 137 and Federal F.R.C.P. 11(b).*   Making fact determinations of harmful characteristics of

particular drugs, and the use of those drugs, is not easily accomplished because discovery of

needed information is not readily accessible or available for drug-product cases.

The purpose of a statute of limitations is to set out the period in which a suit may be

maintained after a cause of action has accrued.   *DeLuna v. Burciaga, 223 Ill 2d 49, 306 Ill Dec*

*136, 857 NE 2d 229 (Sup 2006).* If suit is not filed within the applicable period, the remedy is foreclosed, barred forever. The Statute of Limitations for a Wrongful Death case is two years. *"An action for wrongful death must be brought by and in the name of the personal representative of the deceased person within 2 years of the death of the person". 740 ILCS 180/2.*

Merck was not forthcoming to notify users of the Vioxx drug of the dangerous propensities of the drug. Plaintiff contends mere notification of the withdrawal of the drug does not equate to a notice of the dangerous propensities of Vioxx. *See Part B, § 3, supra, for discussion of notice of withdrawal equating to notice of dangerous propensities.* Defendant Merck contends withdrawal of Vioxx on September 30, 2004, is notice to the world of the dangerous propensities of the drug, and is sufficient notice to all that any cause of action must be filed within the two-year period from the date of notice of withdrawal of the drug from the marketplace. Plaintiff suggests this type of "notice" does not convey the necessary warning of the dangerous characteristics of the drug, and is not sufficient to advise all plaintiffs, as a class, of the adverse consequences that follow from use of Vioxx.

**2.      Fraudulent Concealment: Illinois Statute:  *735 ILCS 5/13-215.***

Illinois has a statute defining fraudulent concealment of a cause of action, to wit:

> *"Fraudulent concealment. If a person liable to an action fraudulently conceals the cause of such action from the knowledge of the person entitled thereto, the action may be commenced at any time within 5 years after the person entitled to bring the same discovers that he or she has such cause of action, and not afterwards".*
> *P. A. 82-280, §13-215, eff. July 1, 1982.*

The Illinois Supreme Court interpreted fraudulent concealment in the case of *York Woods Community Assoc. v. O'Brien, 818 NE 2d, 353 Ill App 3d 293, 288 Ill Dec 662 (2 Dist 2004).* The case concerned legal malpractice, and construed *735 ILCS 5/214.3 (b),* the court holding as follows:

> *"A suit for legal malpractice must be brought within 2 years from the time the person bringing the action knew or reasonably should have known of the injury for which damages are sought....Under the Code, the two-year period does not necessarily begin the day the plaintiff suffers his injury; rather, the period starts when the plaintiff knows or should know facts that would cause him to believe that his injury was <u>wrongfully caused</u>. (emphasis added)  .... The injury is not the (negligent) act itself; it is something caused by the act or omission for which the plaintiff may seek damages".  (citing Romano v. Morrisroe, 326 Ill App 3d 26, 259 Ill Dec 831, 759 NE 2d  611).*

Generally, to establish fraudulent concealment sufficient to toll a statute of repose, plaintiffs must show affirmative acts or representations designed to prevent discovery of the cause of action, or designed to lull or induce the plaintiff into delaying the filing of their claim. *Racjan v. Donald Garvey & Assoc., Ltd., 347 Ill App 3d 403, 283 Ill Dec 120, 807 NE 2d 725.* Fraudulent concealment has also been discussed in the case of *Chicago Park District v. Kenroy, Inc., 78 Ill 2d 555, 37 Ill Dec 291, 402 NE 2d 181 (Sup 1980),* where the court held,  *"...a failure to disclose when it ought to disclose is as much a fraud at law as an affirmative false representation or act and, further, that silence on its part as to a cause of action, the facts giving rise  to which it was its duty to disclose, amounts to fraudulent concealment".*

Merck contends the 2 year statute starts on the date of death:  April 8, 2004, and suit must be filed before April 8, 2006.  However, if the 5 year statute, fraudulent concealment is applied, the action must be filed before April 8, 2009.  And, Merck also suggests if the date of withdrawal of the drug, Vioxx, is the determinative date, September 30, 2004, the bar date becomes September 30, 2009.

Plaintiff first became aware of the Settlement Program on July 1, 2008.  That is when the Plaintiff contacted BrownGreer, the Claims Administrator, to become eligible for participation in that program.  Plaintiff filed the necessary materials to participate in the Settlement Program by U.S.P.S. mail on July 17, 2008, well before expiration of the 5-year period for fraudulent

concealment expired. *735 ILCS 5/13-215.*   Plaintiff complied with all the requirements stated by BrownGreer to participate in the Settlement Program, except filing a suit in state court. Plaintiff thought a state court filing would not be required because a claim was made directly in the Settlement Program administered by BrownGreer.   Some nineteen months later *(February 10, 2010)*, BrownGreer, by Philip Sturm, notified the Executor he could not participate in the program because of a failure to file a state court lawsuit, followed by entry into a tolling agreement, before a program deadline.   There was no other notice given to Plaintiff of the failure to file the state court suit.   Plaintiff did file a lawsuit in the state court system on November 12, 2009, to comply with the rules of the Settlement Program.  However, BrownGreer and now Defendant Merck defend and move for Summary Judgment on the basis of failure to file within the various program deadline dates, and statutes of limitations periods.

**D.**   ***The Defendant's Motion for Summary Judgment Should be Denied.***

Summary judgment is appropriate only where the pleadings, depositions and affidavits, construed most strongly against the movant and most liberally in favor of the opponent, show that judgment should be granted as a matter of law. *Aspregen v. Howmedica, 129 Ill App 3d 402, 84 Ill Dec 685, 472 NE 2d 822 (1 Dist 1984).*   If only one conclusion can be drawn from the undisputed facts, the question of the timeliness of the plaintiff's complaint is for the court to decide. *Witherell v. Weimer 85 Ill 2d 146, 52 Ill Dec 6, 421 NE 2d 869 (Sup 1981).*   When reasonable persons may fairly draw differing inferences from those facts which are not in dispute, the motion must be denied.   *Carter v. Dunlop 138 Ill App 3d 58, 92 Ill Dec 4418, 484 NE 2d 1273 (2 Dist 1985).*

In the subject case the question is this:  at what point in time did plaintiff know or should have known of the injury as a possible wrongful act to cause injury?   That date for purposes of

application of a statute of limitations is not certain.  The uncertainty is clear from the various time periods suggested by the Defendant as the proper point in time to start a period to calculate the Statute of Limitations.  Defendant has even suggested at least three possible answers:  *1.*  the S.o.L. starts on the date of death, April 8, 2004;  *2.*  the S.o.L. starts on the date of withdrawal of the drug from the marketplace, September 30, 2004;  and, alternatively using a different statute, *3.*  the start of calculation of the S.o.L. period of fraudulent concealment starts on April 8, 2004, or   September 30, 2004, or on the date of inception of the Settlement Program, effective November 9, 2007.

As to the issue of fraudulent concealment, Plaintiff suggests that period may not start until the date the inception of the BrownGreer Settlement Program became known generally to the public, but only became known to Plaintiff Executor Walter Roach, Jr., on July 1, 2008, through the article in the Wall Street Journal.

Here, differing inferences could reasonably be drawn from the undisputed facts.  The trier of fact must decide when a plaintiff as a reasonable person, Executor Roach, should conclude the cause of action was present.  When reasonable persons may fairly draw differing inferences from those facts not in dispute, the motion must be denied.  *"The right of a moving party for a summary judgment must be clear and free from doubt".  Lind v. Zekman 77 Ill App 3d 432, 32 Ill Dec 583, 395 NE 2d 964 (1Dist 1979).*  In this case, the right to entry of Summary Judgment in favor of the Defendant Merck Sharp Dohme Corp. is neither clear nor free from doubt, and the Defendant's motion should be denied.

***III.***     ***Conclusion.***

For the reasons stated herein Plaintiff Walter J. Roach, Jr., Executor of the Estate of Joanne I. Roach, Deceased, prays the Court enter an Order to Deny the Motion for Summary Judgment filed by Defendant Merck, Sharp, and Dohme Corp., and allow the claim of the Plaintiff to move forward to disposition by settlement or trial.

Respectfully Submitted,

Walter J. Roach, Jr. , Executor of the Estate of Joanne I. Roach, Deceased.

By:     */s/Emmanuel F. Guyon*_____
Emmanuel F. Guyon, his attorney
5 East Bridge Street
Streator, IL  61364
Tel.:  815/673-2361
Fax.: 815/673-2362
*eguyon@frontier.com*

*Plaintiff's counsel*

## CERTIFICATE OF SERVICE

I hereby certify the above and foregoing Response to Defendant's Motion for Summary Judgment has been served on *Plaintiff's Liaison Counsel I* Russ Herman, Andy Birchfield, and Phillip Wittman, and *Plaintiff's Liaison Counsel II* Ann B. Oldfather, by U. S. Mail and e-mail by electronically up-loading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8 (C), and the foregoing was electronically filed with the clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in *MDL 1657*, on 21st day of May, 2012.

*/s/Emmanuel F. Guyon*
Emmanuel F. Guyon,
5 East Bridge Street
Streator, IL  61364
Tel.:  815/673-2361
Fax.: 815/673-2362
*eguyon@frontier.com*

*Plaintiff's counsel*

*Appendix to Plaintiff's Response to Defendant's Motion for Summary Judgment.*

1.    *Reprint of Wall Street Journal Article, dated July 1, 2008.*
        *(Internet reprint, FRE 901 and 902)*

2.    *Letter from Atty. Esber @ Williams & Connolly, LLP re compliance with PTO 29.*
        *(letter dated July 6, 2010)*

3.    *Notice of Filing by Atty. Guyon to be in compliance with PTO's 1, 8A, and 29.*
        *(Notice dated August 9, 2010).*

4.    *Release of all claims by Executor to Merck, dated October 30, 2008.*

        *a.  Fax to Atty. Guyon from Ms. Laura Burkholder @ BrownGreer re Release.*

        *b.  Fax to Ms. Burkholder from Atty. Guyon with completed release.*

        *c.  Executed Release document, signed by Executor Walter Roach, Jr.*

More than 59,000 register for Vioxx settlement; more than 51,000 file enrollment forms –...   Page 1 of 3



2008 Infiniti EX35

0.0% APR

Available on new 2008 EX35 in dealer stock. Subject to IFS credit approval. See dealer for details. Offer Ends 9/2/2008.

Click for Offer Details

Request a Quote
Locate a Retailer
Contact a Retailer

INF

July 17, 2008 1:37:10 PM CDT

Search Newser   GO

News Sections   HOME   WORLD   US   POLITICS   CRIME & COURTS   BUSINESS   SCIENCE & HEALT

MUST READS   GOSSIP   PUNDITS   GLOSSIES   NY TIMES   LOCAL NEWS   THREADS

« Back to the grid         REPRINT from Wall Street Journal, July 1, 2008, Illinois ed.

# More than 59,000 register for Vioxx settlement; more than 51,000 file enrollment forms

By JANET McCONNAUGHEY | Associated Press | Jun 27, 08 2:43 PM CDT

More than 59,000 people have registered claims against drugmaker Merck & Co. for injury from painkiller Vioxx, and administrators have enough records to review about 9,100 of those claims.

**Ads by Google**

**Pre-Settlement Funding**
Pay Only if You Win Get Cash Now
AmericanLegalFunding.com

**Robert Goldman & Assoc.**
Chicago personal injury lawyer We charge no fee until you collect
RobertGoldmanLawyp.com

With two deadlines early next week in the $4.85 billion settlement against Merck, "we still receive claimants coming forward for the first time," Orran Brown of BrownGreer PLC, the law firm administering the claims, told U.S. District Judge Eldon Fallon on Friday.

But people whose paperwork arrived early will be able to get partial payments before long. "We're working toward making initial payments in August, and we're on track for that," Andy Birchfield, a plaintiffs' attorney, said during Friday's status conference.

Attorneys and individuals have registered 59,194 people with BrownGreer _ the first step toward filing a claim that the once-popular painkiller caused a heart attack or stroke _ including 59 in the past month, Brown said.

Monday is the deadline for filing a set of required legal papers, and the firm has those for 51,391 people, Brown said.

Tuesday is a more elastic deadline for medical and pharmacy records to back up claims. Knowing that it could be difficult to meet, extensions are built in from July 1 to Sept. 1 to Nov. 1 and Nov. 30, said Lynn Greer, Brown's partner.



LAW OFFICES

# WILLIAMS & CONNOLLY LLP

725 TWELFTH STREET, N.W.

WASHINGTON, D. C. 20005-5901

EVA PETKO ESBER
(202) 434-5106
eesber@wc.com

(202) 434-5000

FAX (202) 434-5029

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

July 6, 2010

**U.S. Postal Service™ Delivery Confirmation™ Receipt**

Postage and Delivery Confirmation fees must be paid before mailing.
Article Sent To: (to be completed by mailer)

*Atty Esbert - Washington D.C.*
(Please Print Clearly)

2 0005-5901

**POSTAL CUSTOMER:**
Keep this receipt. For inquiries:
Access internet web site at
www.usps.com ®
or call 1-800-222-1811

CHECK ONE (POSTAL USE ONLY)
☑ Priority Mail™ Service
☐ First-Class Mail® parcel
☐ Package Services parcel

PS Form 152, May 2002                    (See Reverse)

*Ph: 202/434-5106*

DELIVERY CONFIRMATION NUMBER:
0308 1140 0000 0330 2453

STREATOR IL 61364

JUN~9 2010 USPS

BY FIRST CLASS MAIL & TELECOPY

Emmanuel F. Guyon Law
5 East Bridge Street
Streator, IL 61364

Subject:   *In Re Vioxx Products Liability Litigation,*  MDL No. 1657
           Roach, Walter J. Jr. v. Merck & Co., Inc.
           2:10-cv-00868-EEF-DEK
           Pertaining to:  Joanne I. Roach

Dear Mr. Guyon:

         Thank you for your letter of June 9, 2010 concerning the issue of compliance with Judge Fallon's Pretrial Order No. 29 with respect to the above-referenced case.  In light of your on-going efforts to collect the materials required, we will extend the time for compliance until August 9, 2010, which is 120 days after my original letter to you.  In the absence of compliance with PTO 29 by that time, or agreement between us on a further extension, Merck reserves it right to seek dismissal of the case, pursuant to the terms of PTO 29.

Very Truly Yours,

Eva Petko Esber

cc:     Phillip A. Wittman, Esq. (via electronic mail)
        Russ M. Herman, Esq. (via electronic mail)

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX ® | * | **MDL Docket No. 1657** |
| PRODUCTS LIABILITY LITIGATION | * | **SECTION L** |
| | * | **JUDGE FALLON** |
| *Case No. 10-cv-0868* | * | **MAG. JUDGE KNOWLES** |

*Walter J. Roach, Jr. Administrator of the Estate of Joanne I. Roach, Deceased,   Plaintiff*

*v.*

*Merck & Co., Inc., Defendant*

## NOTICE OF FILING

To: Atty. Eva Petko Esber, c/o Williams and Connolly, PLLP, 725 Twelfth Street, N.W.
Washington, DC 20005-5901
Atty. Russ Herman @ VIOXXMDL @ hhke.com.
Atty. Phillip A. Wittman, to pwittman@stonepigman.com.

Please Take Notice that on August 9, 2010, Plaintiff Walter J. Roach, Administrator of the Estate of Joanne I. Roach, Deceased, by his attorney, Emmanuel F. Guyon, has filed the Discovery documents directed by the Court pursuant to *PTO's 1, 8A, and 29,* with Atty. Esber by U.S.P.S. with postage fully prepaid, the full set of documents and this Notice of Filing to Atty. Esber, deposited with the U.S.P.S in Streator, Illinois, at the hour of 11:00 a.m., and also filed with Atty. Herman and Atty. Wittman, by electronic filing the Notice of Filing only, the documents as set out in this Notice of Filing.

Walter J. Roach, Jr., Administrator of the Estate of
Joanne I. Roach, Deceased.

Dated: August 9, 2010

Emmanuel F. Guyon, Attorney for the Estate.

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Notice of Filing has been served on Liaison Counsel, Atty.'s Russ Herman and Phillip A. Wittman, by e-mail, by electronically uploading the same to LexisNexis File and Serve Advanced in accordance with *PT No. 29,* and upon Atty. Eva Petko Esber by Fax, and by U. S. P. S. mail with postage fully prepaid with the Post Office in Streator, Illinois, on August 9, 2010.

Office of Emmanuel F. Guyon, Attorney for the
Estate of Joanne I. Roach, Deceased

OCT 30 2008  7:34 AM FR BROWNGREER PLC  804 521 7299 TO 918156732362,100 P.01

# BROWNGREER ‖ PLC

115 South 15th Street, Suite 400
Richmond, Virginia 23219-4209

Direct Dial: (804) 521-7176
Office: (804) 521-7200
Facsimile: (804) 521-7299
lburkholder@browngreer.com

## FACSIMILE

*THIS MESSAGE IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED, AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL AND PROTECTED FROM DISCLOSURE UNDER APPLICABLE LAW.* If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you may not disseminate, distribute, or copy this communication. If you have received this communication in error, please notify us immediately by telephone, and then destroy this transmission or return it to us at the above address by mail. Thank you.

**Date:** October 30, 2008                    **Time Sent:** 8:51 AM ET

**To:** Mr. Emmanuel Guyon                   **Fax No.:**    815-673-2362

**From:** Laura Burkholder

**Message:** Vioxx Release of all Claims.

**Number of Pages (Including Coversheet):** 15

If you do not receive all pages, please contact us immediately at (804) 521-7200.

Hard copy will follow by U.S. Mail
Hard copy will follow by Federal Express
Hard copy will follow by UPS
Hard copy will not be sent

EMMANUEL F. GUYON          Attorney at Law,          5 East Bridge Street,          Streator, IL 61364
Tel: (815)673-2361                                          FAX: (815)673-2362

---

### *FACSIMILE TRANSMITTAL SHEET*

---

Transmitted documents are legally protected as privileged correspondence and are intended solely for the use of the named recipient.  If you have received these documents in error, please contact the sender at the above address immediately.  Thank you.

To:   Ms. Laura Burkholder                    Date:   October 30, 2008
      Brown Greer, PLC

Fax Number: (804)521-7299                      Total No. of Pages, including Cover: **12**

---

Re:   Estate of Joanne Roach
      1010 Carroll Street, Streator, IL 61364        SSN: 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

■ Urgent   ☐ For Review      ☐ Please Comment   ☐Please Reply

---

NOTES/COMMENTS:

Re:   Vioxx Release of all Claims

Attached are the signed and notarized Vioxx Release documents, all Claims forms Faxed to Attorney Emmanuel F. Guyon for signature.

We have not received the original documents by any type of mailing.  If we do receive a mailing, either U. S. Post Office, UPS, or FedEx, *etc.,* we shall re-sign and send the original documents to Brown Greer.

$E.\ 2.\ 4.$
$10/30/08$



$E.\ 7.\ 4.$

OCT 30 2008  7:35 AM FR BROWNGREER PLC  804 521 7299 TO 918156732362,100 P.02

## RELEASE OF ALL CLAIMS

### CLAIMANT

| Name | First | | Middle | | Last | |
|------|-------|--|--------|--|------|--|
| | Joanne | | | | Roach | |

| Address | Street | | | | | |
|---------|--------|--|--|--|--|--|
| | 1010 Carroll Street | | | | | |
| | City | | State | | Zip | |
| | Stretor | | Illinois | | 61364 | |

| Social Security Number | 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 | Date | 10 / (month) | 30 / (day) | 2008 (year) |
|------------------------|-------------|------|-----|-----|------|

### DERIVATIVE CLAIMANTS (If none, check here: ☐)

| Name | First | | Middle | | Last | |
|------|-------|--|--------|--|------|--|
| | | | | | | |

| Address | Street | | | | | |
|---------|--------|--|--|--|--|--|
| | | | | | | |
| | City | | State | | Zip | |
| | | | | | | |

| Social Security Number | | Date | / (month) | / (day) | (year) |
|------------------------|--|------|-----|-----|------|

### CLAIMANT'S COUNSEL

| Law Firm | Guyon Law Office |
|----------|------------------|

Roach, Joanne        1121950

1

### RELEASE OF ALL CLAIMS

I, the undersigned Releasor, am a plaintiff or tolling agreement claimant in the Merck & Co., Inc., a New Jersey corporation ("Merck"), Products Liability Litigation.  I have enrolled to participate in the program (the "Program") set forth in the Settlement Agreement (the "Agreement") dated as of November 9, 2007.  I understand that the terms of the Agreement govern the resolution of my claim.  I further understand that, in order to submit my claim into the Program under the Agreement, I am required to submit a release of any and all claims I and the other Releasing Parties (as defined under "Releases" below) have, or may have in the future, against the Released Parties (as defined under "Releases" below) concerning and/or connected with VIOXX (sometimes referred to as "Vioxx" or "rofecoxib") ("VIOXX") and/or with any injury I (and/or any other Releasing Party) have ever claimed, or may at any time in the future claim, VIOXX caused in whole or in part.

Accordingly, in consideration for Merck's agreement to establish the Program, the significant expenses being incurred by Merck in connection with the Program, Merck's waiver of defenses (except as reflected in the Program criteria themselves) solely in the context of the application of the Program, and the opportunity to submit my claim into the Program, I hereby give and make the following releases, waivers, acknowledgements and agreements for the benefit of the Released Parties (this "Release").  This Release is also entered into by any Derivative Claimant (as defined under "Releases" below) who executes a signature page hereto, in which case the agreement of such Derivative Claimant set forth on its signature page is incorporated in, and is part of, this Release.  By signing this Release, both I and any such Derivative Claimant understand and acknowledge that there is no assurance as to the amount, if any, of payment to be made to any claimant under the Program, and this fact shall in no way affect the validity or effect of this Release.

1. **Releases.**

(a)  On my own behalf and on behalf of each other Releasing Party, I hereby knowingly and voluntarily release, remise, acquit and forever discharge the Released Parties from (i) any and all rights, remedies, actions, claims, demands, causes of action, suits at law or in equity, verdicts, suits of judgments and/or Liens (as defined under "Liens and Other Third-Party Payor Claims" below), of any kind whatsoever ("Claims"), which I or any other Releasing Party may have ever had, may now have or at any time hereafter may have against any Released Party and (ii) any and all debts, liabilities, obligations, covenants, promises, contracts, agreements and/or obligations, of any kind whatsoever ("Liabilities"), which any Released Party may have ever had, may now have or at any time hereafter may have to me or any other Releasing Party, in the case of clause (i) and clause (ii), to any extent, or in any way, arising out of, relating to, resulting from and/or connected with VIOXX and/or with any injury I (and/or any other Releasing Party) have ever claimed, or may at any time hereafter claim, VIOXX caused in whole or in part.  These Claims and Liabilities are the "Released Claims and Liabilities".

(b)  The term "Released Parties" means all the parties, past, present and/or future, in any way and/or at any time connected with VIOXX and/or with any injury I (or any other Releasing Party) have ever claimed, or hereafter claim, VIOXX caused in whole or in part, including, but not limited to, Merck, all named defendants in any pending action concerning VIOXX and/or any such injury to

Roach, Joanne        1121950

2

which I am (and/or any other Releasing Party is) a party, and all those who may have acted in concert with Merck, together with their respective insurers.  These parties, past, present and/or future, in any way and/or at any time connected with VIOXX and/or with any injury I (or any other Releasing Party) have ever claimed, or hereafter claim, VIOXX caused in whole or in part, also include, but are not limited to, manufacturers; suppliers of materials; distributors; other persons involved in development, design, manufacture, formulation, testing, distribution, marketing, labeling, regulatory submissions, advertising and/or sale of any product; physicians, pharmacists and other healthcare providers; sales representatives; pharmacies, hospitals and other medical facilities; advertisers; manufacturers of other products that I used before, while or after taking VIOXX; the respective past, present, and/or future parents, subsidiaries, divisions, affiliates, joint venturers, predecessors, successors, assigns, and transferees of the parties referred to in this paragraph; and the respective past, present and/or future shareholders (or the equivalent thereto), directors (or the equivalent thereto), officers (or the equivalent thereto), managers, principals, employees, consultants, advisors, attorneys, agents, servants, representatives, heirs, trustees, executors, estate administrators and personal representatives (or the equivalent thereto) of the parties referred to in this paragraph.

(c)   The term "Releasing Parties" means (i) myself and (ii) any and all persons who have or assert the right to sue Merck or any other Released Party, independently, derivatively or otherwise, by reason of their personal relationship with me, and/or otherwise by, through or under, or otherwise in relation to, me ("Derivative Claimants").  Derivative Claimants include, but are not limited to, my heirs, beneficiaries, surviving spouse (including, but not limited to, a putative or common law spouse), surviving domestic partner and/or next of kin, if any.

(d)   I acknowledge that I (and/or any other Releasing Party) may in the future learn of additional and/or different facts as they relate to VIOXX, the Released Parties' activities as they relate to VIOXX, and/or any injury I (and/or any other Releasing Party) have ever claimed, or may at any time in the future claim, VIOXX caused in whole or in part.  I understand and acknowledge the significance and consequences of releasing all of the Released Claims and Liabilities and hereby (on my own behalf and on behalf of each other Releasing Party) assume full risk and responsibility for any and all such additional and/or different facts and any and all Released Claims and Liabilities that I (and/or any other Releasing Party) may hereinafter incur or discover.  To the extent that any law, statute, ordinance, rule, regulation, case or other legal provision or authority (each, a "Law") may at any time purport to preserve my and/or any other Releasing Party's right to hereinafter assert any such unknown and/or unanticipated Claims and/or Liabilities, I hereby (on my own behalf and on behalf of each other Releasing Party) specifically and expressly waive (to the fullest extent permitted by applicable Law) each Releasing Party's rights under such Law.  I further acknowledge having had an opportunity to obtain advice of counsel of my choosing regarding this waiver, and having discussed it with such counsel to my satisfaction.

(e)   On my own behalf and on behalf of each other Releasing Party, I acknowledge and agree that the releases set forth in this Release are irrevocable and unconditional, inure to the benefit of each Released Party, and are intended to be as broad as can possibly be created.

Roach, Joanne          1121950

3

OCT 30 2008  7:48 AM FR BROWNGREER PLC  804 521 7299 TO 918156732362,100 P.05

(f)  WITHOUT LIMITATION OF THE FOREGOING, THIS RELEASE IS SPECIFICALLY INTENDED TO OPERATE AND BE APPLICABLE EVEN IF IT IS ALLEGED, CHARGED OR PROVED THAT SOME OR ALL OF THE RELEASED CLAIMS AND LIABILITIES ARE CAUSED IN WHOLE OR IN PART BY THE NEGLIGENCE, NEGLIGENCE PER SE, GROSS NEGLIGENCE, BREACH OF WARRANTY, VIOLATION OF LAW, DEFECTIVE PRODUCT, MALICE, AND/OR CONDUCT OF ANY TYPE BY MERCK, ANY OF THE OTHER RELEASED PARTIES, ANY RELEASING PARTY AND/OR ANY OTHER PERSON.  THIS RELEASE IS SPECIFICALLY INTENDED TO AND DOES INCLUDE, BUT IS NOT LIMITED TO, A RELEASE OF, AND COVENANT NOT TO SUE FOR, ANY WRONGFUL DEATH CLAIM THAT MAY BE BROUGHT AT ANY TIME BY OR ON BEHALF OF ANY OF THE RELEASING PARTIES IN CONNECTION WITH ANY OF THE FACTS, EVENTS AND/OR INCIDENTS THAT GAVE RISE TO ANY OF THE RELEASED CLAIMS AND LIABILITIES.

2.  **Attorneys' Fees; Division of Any Settlement Payment.**  I understand that the Released Parties are not responsible for any attorneys' fees or costs I have incurred or may at any time incur, including, but not limited to, entering into this Release and any other documents.  I understand that, with respect to any payment that may be made to me under the Program (a "Settlement Payment"), any division of such Settlement Payment between me, any Derivative Claimant executing this Release and our respective counsel (if any) executing a Certification of Counsel attached to this Release shall be determined by me and such other person(s), and such division, or any dispute in relation to such division, shall in no way affect the validity of this Release.

3.  **Pursuit of Certain Claims.**  I agree that I will never (i) take any legal or other action to initiate, pursue or maintain, or otherwise attempt to execute upon, collect or otherwise enforce, any of the Released Claims and Liabilities of or against any Released Party, (ii) institute or participate in any new legal action against any Released Party to any extent, or in any way, arising out of, relating to, resulting from and/or connected with VIOXX and/or with any injury I (and/or any other Releasing Party) have ever claimed, or may at any time hereafter claim, VIOXX caused in whole or in part or (iii) attempt to execute or collect on, or otherwise enforce, any judgment that may be entered against any Released Party in any legal action described in clause (ii) or my pending legal action against Merck.

4.  **Liens and Other Third-Party Payor Claims.**

(a)  I agree that prior to the first time, if any, that a Settlement Payment is made to me, I shall identify to Merck and to the Lien Resolution Administrator for the Program all governmental authorities that are Third Party Providers/Payors (as defined below) known to me to hold or assert any lien, pledge, charge, security interest, assignment, encumbrance, subrogation right, third-party interest or other adverse claim of any nature whatsoever ("Lien") pursuant to any applicable statute with respect to any Settlement Payment (and/or the right to receive such Settlement Payment), through procedures and protocols to be established by the Lien Resolution Administrator, subject to approval by the Claims Administrator for the Program.

Roach, Joanne          1121950

4

(b)  A "Third Party Provider/Payor" is any provider or payor (public or private) of (i) health, hospital, medical, physician, healthcare and/or pharmaceutical services, products or expenses and/or (ii) any other form of compensation, including, but not limited to, federal and state governmental authorities (or other persons) providing Medicare and/or Medicaid services or benefits.

(c)  I understand and acknowledge that satisfaction and discharge of any and all Liens with respect to any Settlement Payment (and/or the right to receive any Settlement Payment) is the sole responsibility of me, any Derivative Claimant executing this Release and our respective counsel (if any) executing a Certification of Counsel attached to this Release and must, in relation to all governmental authorities that are Third Party Providers/Payors who hold or assert any Liens pursuant to any applicable statute, be established to the satisfaction of the Claims Administrator and Merck before any Settlement Payment (if any) can be disbursed to me.

(d)  Prior to the first time, if any, that a Settlement Payment is made to me, I shall, jointly and severally with any Derivative Claimant executing this Release (and with our respective counsel (if any) executing a Certification of Counsel attached to this Release), represent and warrant that any and all Liens with respect to any and all Settlement Payments (and/or the right to receive any and all Settlement Payments) have been satisfied and discharged.  Furthermore, upon request to the Lien Resolution Administrator, Merck shall be entitled to proof of satisfaction and discharge of any or all such Liens pursuant to any applicable statute in relation to all governmental authorities that are Third Party Providers/Payors.

(e)  In addition to and without limitation of the foregoing, I hereby agree, jointly and severally with any Derivative Claimant executing this Release (and with our respective counsel (if any) executing a Certification of Counsel attached to this Release), to indemnify and hold harmless the Merck Released Parties (as defined below) from and against (i) any and all Claims made or asserted at any time against any Merck Released Party by (x) any Third Party Provider/Payor in relation to, (y) any person at any time holding or asserting any Lien in relation to and/or (z) any other person at any time claiming by, through or under, me or any Derivative Claimant executing this Release, with respect to any funding payment by or for the account of Merck under the Program and/or any Settlement Payment (and/or the right to receive any such Settlement Payment) and (ii) any and all damages, losses, costs, expenses (including, but not limited to, legal fees and expenses) and/or Liabilities incurred or suffered by, or imposed on, any Merck Released Party in connection with, arising out of or resulting from any Claim described in clause (i) of this sentence (including, but not limited to, any amount paid or to be paid in satisfaction of any such Claim).

(f)  The term "Merck Released Parties" means (i) Merck and (ii) all other Released Parties, past, present and/or future, in any way and/or any time related to Merck, including, but not limited to, Merck's past, present and/or future parents, subsidiaries, divisions, affiliates and joint venturers; the respective past, present and/or future predecessors, successors, assigns and transferees of the parties referred to in this paragraph; and the respective past, present and/or future insurers, shareholders (or the equivalent thereto), directors (or the equivalent thereto), officers (or the equivalent thereto), managers, principals, employees, consultants, advisors, attorneys, agents, servants, representatives, heirs, trustees, executors, estate administrators and personal representatives (or the equivalent thereto) of the parties referred to in this paragraph.

Roach, Joanne          1121950

5

5.   **Indemnification for Released Claims and Liabilities.**

(a)   I hereby agree, jointly and severally with any Derivative Claimant executing this Release, to indemnify and hold harmless each Released Party from and against (i) any and all Claims that may be asserted, made or maintained at any time against any Released Party by, on behalf of or for the benefit of, or otherwise through or under, any Releasing Party with respect to any of the Released Claims and Liabilities and (ii) any and all damages, losses, costs, expenses (including, but not limited to, legal fees and expenses) and/or Liabilities incurred or suffered by, or imposed on, any Released Party in connection with, arising out of or resulting from any Claim described in clause (i) of this sentence (including, but not limited to, any amount paid or to be paid in satisfaction of any such Claim) and/or, without limitation of the foregoing, any breach by me (or any Derivative Claimant executing this Release) of any of the terms of this Release.

(b)   Without limitation of the foregoing paragraph, I further agree, jointly and severally with any Derivative Claimant executing this Release, to indemnify and hold harmless the Merck Released Parties from and against (i) any and all Claims made or asserted (prior to, on or after the date of my claim under the Program) against any Merck Released Party by any Released Party that is not an Merck Released Party (a "Non-Merck Released Party") arising out of any Claim made or asserted at any time by me and/or any other Releasing Party against any Non-Merck Released Party to any extent, or in any way, arising out of, relating to, resulting from and/or connected with VIOXX and/or any injury I (and/or any other Releasing Party) have ever claimed, or may at any time hereafter claim, VIOXX caused in whole or in part and (ii) any and all damages, losses, costs, expenses (including, but not limited to, legal fees and expenses) and/or Liabilities incurred or suffered by, or imposed on, any Merck Released Party in connection with, arising out of or resulting from any Claim described in clause (i) of this sentence (including, but not limited to, any amount paid or to be paid in satisfaction of any such Claim).

(c)   Merck has the right to setoff all or any portion of any amount payable to any Merck Released Party pursuant to the indemnification provisions of the Release against an equal amount of any Settlement Payment.

6.   **Confidentiality.**  I agree to maintain in confidence, and shall not disclose to any person, the amount of any Settlement Payment (if any),  except as may be required by applicable Law; provided, that I understand that I may disclose such information to my immediate family members and to my counsel, accountants and/or financial advisors, if any (each of whom I shall, upon such disclosure, instruct to maintain and honor the confidentiality of such information).  I agree that if I breach this confidentiality provision, money damages would not be a sufficient remedy and, accordingly, without limitation of any other remedies that may be available at law or in equity, Merck shall be entitled to specific performance and injunctive or other equitable relief as remedies for such breach.

7.   **Medical Documentation Authorization.**  I have authorized my counsel to obtain and supply (or if I am not represented by counsel, I will obtain and supply) to Merck, the Claims Administrator, the Lien Resolution Administrator, the Special Master (and any Deputy Special

Roach, Joanne          1121950

6

Master) for the Program, the Chief Administrator for the Program, members of the Gate Committee for the Program, all other persons provided for under the terms of the Agreement to consider claims, and their respective attorneys, agents, servants, employees and independent auditors and others deemed necessary by each to assist them, the medical or other documentation required for approval of an award under the Program along with any and all authorizations for the release of medical records required in my Enrollment Form under the Program or that may be required by a provider of such documentation, including, but not limited to, a specific authorization required by a particular hospital, pharmacy, physician or any other source of documentation. I agree to cooperate fully in providing any authorization for the release of records requested in the Program. I also authorize the foregoing persons to have access to my medical and other documentation available in any electronic depository through which Merck delivers medical records it collects by way of authorization or subpoena to counsel for plaintiffs in the VIOXX litigation.

**8.  ACKNOWLEDGEMENT OF COMPREHENSION; NO GUARANTEE OF PAYMENT.** I AM ENTERING INTO THIS RELEASE FREELY AND VOLUNTARILY, WITHOUT BEING INDUCED, PRESSURED OR INFLUENCED BY, AND WITHOUT RELYING ON ANY REPRESENTATION OR OTHER STATEMENT MADE BY OR ON BEHALF OF, MERCK OR ANY OTHER PERSON. I UNDERSTAND AND ACKNOWLEDGE THE NATURE, VALUE AND SUFFICIENCY OF THE CONSIDERATION DESCRIBED IN THE SECOND PARAGRAPH OF THIS RELEASE. I ACKNOWLEDGE THAT I HAVE READ THIS RELEASE AND THE AGREEMENT, AND I HAVE HAD AN OPPORTUNITY TO OBTAIN ADVICE FROM, AND ASK QUESTIONS OF, COUNSEL OF MY CHOOSING REGARDING THE TERMS AND LEGAL EFFECT OF THESE DOCUMENTS AND MY DECISION TO ENROLL TO PARTICIPATE IN THE PROGRAM. I FURTHER ACKNOWLEDGE THAT I HAVE DISCUSSED ALL THESE MATTERS WITH THE COUNSEL TO ME EXECUTING A "CERTIFICATION OF COUNSEL" ATTACHED TO THIS RELEASE, AND SUCH COUNSEL HAS ANSWERED ALL MY QUESTIONS TO MY SATISFACTION. I FURTHER ACKNOWLEDGE THAT I UNDERSTAND THIS RELEASE AND THE AGREEMENT AND THAT THERE IS NO GUARANTEE THAT I WILL RECEIVE ANY SETTLEMENT PAYMENT OR, IF ANY SETTLEMENT PAYMENT IS MADE, THE AMOUNT THEREOF.

**9.  Waiver of Certain Provisions Regarding Timing of Any Payments.**  If I have any civil action pending in any jurisdiction that has enacted, promulgated or otherwise adopted any Law containing provisions that establish specific time periods within which settlement funds, if any, must be paid to me in connection with the settlement of such civil action and/or impose sanctions, penalties or other similar obligations against the paying party if the settlement funds are not paid within such time periods and/or otherwise invalidate or otherwise affect the terms of the settlement of such civil action (including, but not limited to, Pennsylvania Rule of Civil Procedure 229.1), I hereby (i) specifically and expressly waive (to the fullest extent permitted by applicable Law) my rights under any such provisions and (ii) agree that payment of any Settlement Payment shall be made solely in accordance with the terms and conditions of the Program.

**10.  No Admission of Fault.** I understand and agree that Merck has entered into this Release and the Agreement solely by way of compromise and settlement.  These documents are not, and shall

Roach, Joanne      1121950

7

OCT 30 2008  7:50 AM FR BROWNGREER PLC   804 521 7299 TO 918156732362,100 P.09

not be construed at any time to be, an admission of liability, responsibility or fault of or by Merck or any other Released Party.

11. **Representations and Warranties.**  I hereby represent and warrant that: I have full power, authority and capacity to enter into this Release, which is enforceable in accordance with its terms. Except as set forth in the second sentence under "Attorneys' Fees, Division of Any Settlement Payment" above, I have the sole right to receive any and all Settlement Payments, if any, with respect to my claim under the Program.  Neither I nor any other Releasing Party has sold, assigned, transferred or otherwise disposed of, or pledged or otherwise encumbered, any of the Released Claims and Liabilities in whole or in part.

12. **GOVERNING LAW.  THIS RELEASE SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE SUBSTANTIVE LAW OF NEW YORK, WITHOUT REGARD TO ANY CHOICE-OF-LAW RULES THAT WOULD REQUIRE THE APPLICATION OF THE LAW OF ANOTHER JURISDICTION.**

13. **Severability.**  I agree that if any provision of this Release is adjudicated to be invalid, illegal or unenforceable in any jurisdiction, the relevant provision shall be deemed modified to the extent necessary to make it enforceable in such jurisdiction and, if it cannot be so modified, this Release shall be deemed amended to delete herefrom the invalid or unenforceable provision, and this Release shall be in full force and effect as so modified.  Any such modification or amendment in any event shall apply only with respect to the operation of this Release in the particular jurisdiction in which such adjudication was made and shall not affect such provision in any other jurisdiction.  To the fullest extent permitted by applicable Law, I hereby (on my own behalf and on behalf of each other Releasing Party) specifically and expressly waive any provision of Law that renders any provision of this Release invalid, illegal or unenforceable in any respect.

14. **Legal Representatives.**  If I am signing this Release as a legal representative of a VIOXX user, then (i) all references in this Release to my use of, or injury from, VIOXX shall also mean the use of, or injury from, VIOXX by or of such VIOXX user, all references in this Release to any person claiming by, through or under, or in relation to, me shall also mean any person claiming by, through or under, or in relation to, such VIOXX user, and all references to me in the definition of Derivative Claimant shall also mean such VIOXX user, (ii) if such VIOXX user is not deceased, he or she shall also be a "Releasing Party", (iii) if such VIOXX user is deceased, I am executing this Release both individually and on behalf of the estate of such VIOXX user, and (iv) prior to the first time, if any, that a Settlement Payment is made to me, I will obtain judicial approval of this Release to the extent required under applicable Law.

[The remainder of this page is intentionally left blank.]

Roach, Joanne        1121950

8

OCT 30 2008  7:51 AM FR BROWNGREER PLC   804 521 7299 TO 918156732362,100 P.10

IN WITNESS WHEREOF, I have executed this Release effective as of the date set forth under my name below:

**RELEASOR:**

By _Walter Roach Jr Exec_

Name:  Walter Roach, Jr.

Title:

Social Security No.: 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

Dated: _October 30, 2008_

## NOTARIZATION OF RELEASOR'S SIGNATURE

STATE OF _Illinois_ , COUNTY OF _LaSalle_   SS.:

I hereby certify that on _October 30_ , 200 8 , _Walter Roach, Jr._

personally came before me and acknowledged under oath to my satisfaction that this person: (a) is

named and personally signed this document; and (b) signed, sealed and deliver this document as his or

her act and deed.

_Patricia M Ryan_

Notary Public of the State of _Illinois_

```
OFFICIAL SEAL
PATRICIA M. RYAN
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES 7-20-2009
```

Roach, Joanne      1121950

9

OCT 30 2008  7:51 AM FR BROWNGREER PLC  804 521 7299 TO 918156732362,100 P.11

## CERTIFICATION OF COUNSEL

### (COUNSEL FOR RELEASOR)

I, Atty. Emmanuel F. Guyon    , hereby represent and declare that  Walter Roach, Jr.
Executor    ("Releasor") has at all relevant times been represented by the undersigned counsel.
I have provided Releasor a copy of the Release to which this Certification of Counsel is attached and
have made available to Releasor a copy of the Settlement Agreement referred to in the Release (which
copies include all attachments). I discussed with Releasor the terms and legal effect of all of the
foregoing documents and Releasor's decision to enroll to participate in the Program (as defined in the
Release), and I answered any and all questions Releasor may have had. I hereby certify that, having
had a full opportunity to read, understand, and inquire of counsel about the terms and conditions of the
foregoing documents, Releasor does not have, and I do not have, any objection to the terms of this
Release or any of the other foregoing documents. I further agree to be bound by the "Confidentiality"
section in this Release and my joint and several obligations to provide representations and warranties
regarding the satisfaction of, and indemnification with respect to, Liens set forth under "Liens and
Other Third-Party Payor Claims".

BY COUNSEL FOR RELEASOR:

By    _Emmanuel F. Guyon_

Name:  Emmanuel F. Guyon
Title:  Atty. for Estate, Joanne Roach
Dated:  October 30, 2008      Dec'd

EMMANUEL F. GUYON
ATTORNEY AT LAW
5 EAST BRIDGE ST.
STREATOR, IL 61364-2964

Roach, Joanne        1121950

10

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In Re:  VIOXX® | ] | **MDL Docket No. 1657** |
| | ] | |
| **PRODUCTS LIABILITY LITIGATION** | ] | **Section L** |
| | ] | |
| *This document relates to Plaintiff Exec.* | ] | **Judge Fallon** |
| *Walter J. Roach, Jr., v. Merck & Co.,* | ] | |
| *a conditionally transferred case.* | ] | **Magistrate Judge Knowles** |
| *2:10-cv-00868   EEF:DEK* | ] | |

---

### [Proposed] ORDER OF DENIAL OF MERCK, SHARP, and DOHME CORP.'S MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on the Motion of Defendant Merck Sharp and Dohme Corp. to grant Summary Judgment in its favor on all claims, pursuant to *F.R.C.P. Rule 56.*  The Court has considered the Defendant's Motion, and the Plaintiff's Response, and is now fully advised in the premises, and FINDS issues of fact on the merits of the claim have not been presented to the court, and further FINDS the Plaintiff's Claim is not time-barred.  The Court therefore DENIES the Defendant Merck Sharp & Dohme Corp.'s Motion for Summary Judgment.

NEW ORLEANS, LOUISIANA, this ____day of _____, 2012.

_____
ELDON E. FALLON
UNITED STATES DISTRICT JUDGE