UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Vioxx | * | MDL Case No. 1657 |
| | * | |
| PRODUCTS LIABILITY | * | SECTION L |
| LITIGATION | * | |
| | * | JUDGE FALLON |
| *This document relates to* | * | |
| | * | MAGISTRATE JUDGE |
| *Elena Strujan v. Merck Sharpe & Dohme Corp.,* | * | KNOWLES |
| *2:07-cv-00906-EEF-DEK* | * | |
| | * | |
| | * | |

****************************************************************************

# DEFENDANT MERCK SHARP & DOHME CORP.'S MOTION FOR SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW

Plaintiff Elena Strujan is a *pro se* claimant who alleges that she was injured as a result of her use of Vioxx. She is not, however, a typical *pro se* claimant. Ms. Strujan is an experienced and prolific litigant with an extensive history of litigation—she has initiated at least fourteen other lawsuits since 1998, and she has represented herself *pro se* in the majority of these actions.[1] In one of those actions, her case was dismissed because she failed to list her underlying claim in

---

[1] *See Strujan v. Columbia Univ., et. al*, No. 1:08-cv-09589-WHP-HBP (S.D.N.Y. filed Nov. 7, 2008) (*pro se*); *Strujan v. Lehman College, et. al,* No. 1:06-cv-13201-AKH (S.D.N.Y. filed Nov. 14, 2006) (*pro se*); *Chitoiu v. UNUM Provident Corp., et. al*, No. 1:05-cv-08119-LAP-GWG (S.D.N.Y. filed Sept. 20, 2005) (*pro se*); *Strujan v. Friedman Mitchell, et. al*, No. 800029/2012 (N.Y. Sup. Ct. filed Jan. 30, 2012) (*pro se*); *Strujan v. Consol. Edison Co. of N.Y.*, No. 107975/2011 (N.Y. Sup. Ct. filed July 11, 2011) (*pro se*); *Strujan v. Adrian*, No. 570471/2011 (N.Y. Sup. Ct. filed June 17, 2011) (*pro se*); *Strujan v. State Farm Ins. Co.*, No. 400526/2011 (N.Y. Sup. Ct. filed Feb 25, 2011) (*pro se*); *Strujan v. N.Y. Div. of Hous. & Cmty. Renewal*, 402728/2010 (N.Y. Sup. Ct. filed Sept. 28, 2010) (*pro se*); *Strujan v. Teperman & Teperman*, No. 401164/2010 (N.Y. Sup. Ct. filed May 4, 2010) (*pro se*); *Strujan v. Glencord Bldg. Corp.*, No. 18853/2009 (N.Y. Sup. Ct. filed July 27, 2009); *Strujan v. Donlen Trust*, No. 104944/2008 (N.Y. Sup. Ct. filed Apr. 4, 2008); *Strujan v. Rainbow Ace Hardware*, No. 406368/2007 (N.Y. Sup. Ct. filed Sept. 10, 2007) (*pro se*); *Strujan v. MCI*, No. 570435/2007 (N.Y. Sup. Ct. filed July 11, 2007) (*pro se*); *Chitoiu v. N.Y. Health & Racquet*, No. 109233/1998 (N.Y. Sup. Ct. filed May 27, 1998).

1

a bankruptcy action she had initiated. In *Strujan v. Tepperman & Tepperman, LLC, et. al*, the Supreme Court of New York for the County of New York granted summary against Ms. Strujan because "[t]he failure to schedule a legal claim as an asset in a bankruptcy proceeding deprives the debtor of standing to raise it in a subsequent legal action." *Strujan v. Tepperman & Tepperman, LLC, et. al*, No. 401164/2010, 2011 WL 400211 (N.Y. Sup. Ct. Jan. 28, 2011) (quoting *Barranco v. Cabrini Med. Ctr.*, 855 N.Y.S.2d 431, 431 (N.Y. App. Div. 2008)).

The same principle applies in this case. Under the doctrine of judicial estoppel, Ms. Strujan is barred from asserting her claims against Defendant Merck Sharp & Dohme Corp. ("Merck") because she did not list them as an asset in her 2005 bankruptcy proceeding as required. Ms. Strujan seeks to "have [her] cake and eat it too" by "retain[ing] the enormous benefit of a bankruptcy discharge while standing in line to receive funds from [her] injury lawsuit" after her debts have been erased and her creditors have been left empty handed. *In re Superior Crewboats, Inc.*, 374 F.3d 330, 333 (5th Cir. 2004). The doctrine of judicial estoppel applies in this case to protect the integrity of the bankruptcy process. *See In re Coastal Plains, Inc.*, 179 F.3d 197, 213 (5th Cir. 1999). Merck respectfully requests that the Court enter summary judgment pursuant to Federal Rule of Civil Procedure 56 in Defendant's favor on all of Plaintiff's claims.

## BACKGROUND

Plaintiff Elena Strujan, who is a resident of New York, is proceeding *pro se* in this action. *See* Ex. 1 (Compl.) ¶ 1.[2] According to Ms. Strujan's testimony in other proceedings, she has a broad educational background that includes both medical and legal training: She attended three years of law school in Romania, is a certified paralegal in this country, completed a course

---

[2] All exhibits referenced herein are attached to Defendant's Statement of Material Facts As To Which There Is No Dispute, filed contemporaneously with this Motion.

of study to be a registered medical assistant and subsequently worked as a nurse technician in a hospital, and she also completed some portion of a graduate degree program in biological science.  *See* Ex. 2 (Strujan Dep., Nov. 4, 2010, *Strujan v. Tepperman & Tepperman, LLC, et. al*, N.Y. Sup. Ct. (Index No. 401164/10)), at 9:9-15:10.

**I.    Plaintiff's Claims Against Merck**

In this lawsuit, Ms. Strujan alleges various personal injuries arising out of her use of Vioxx.  Specifically, she claims that her use of Vioxx from 1999 or 2000 until 2004 caused her to experience chest pain, palpitation, fatigue, shortness of breath, angina pectoris, excessive anxiety, depression, emotional stress disorder and "permanent risk [of] heart attack."  Ex. 1 ¶5.  Ms. Strujan states that in September 2004, her "Pharmacist called [her] at home, to stop taking Vioxx, because it is dangerous for body . . . ."[3]  *Id.*  Shortly thereafter, on November 19, 2004, Ms. Strujan's former primary care physician, Serban I. Cocioba, M.D., wrote a report regarding Ms. Strujan's medical conditions and Vioxx use, in which he noted:

> Patient with chronic back pain, lumbago sciatica since 1997. Approximately 3.2000 patient was started on Vioxx 25mg BID, then 50mg BID, until September 2004 when was out of market. Patient developed chest pain, palpitation, depression, had a stress test and a myocardial perfusion test, showing ischemic heart.  Her blood pressure is fluctuating 120/70-158/100 poor controlled medically. . . .  I believe that her cardiac condition may be secondary to Vioxx.  She had no previous cardiac condition. . . .

Ex. 3 (StrujanE-ClaimsPkgPPR-00010).  In a prior deposition, Ms. Strujan testified that, sometime in 2004, she also contacted her pharmacist to request a history of her medications in order to pursue a lawsuit against Merck related to her Vioxx use.  Ex. 2 (Strujan Dep.) at 140:14-

---

[3]    Vioxx was withdrawn from the market on September 30, 2004, after interim data from a long-term study known as APPROVe showed an increased rate of certain cardiovascular events in the Vioxx arm as compared to the placebo arm of that study.  An "avalanche" of media coverage immediately followed the announcement of the withdrawal.  *See In re Vioxx Prods. Liability Litig.*, 522 F. Supp. 2d 799, 802 (E.D. La. 2007).

141:11.  Nearly two years later, on September 27, 2006, she filed this action against Merck in the United States District Court for the Southern District of New York.

Subsequently, Ms. Strujan enrolled her claim in the Vioxx Resolution Program, alleging that Vioxx had caused her to suffer two myocardial infarctions ("MI") (commonly referred to as a heart attack) on October 4, 2004 and September 1, 2000.  *See* Ex. 4 (Claims Administrator Notice of Ineligibility).  The Resolution Program's Claims Administrator and Gate Committee ultimately determined that Ms. Strujan's claims failed to meet the Program's eligibility requirements for settlement because there was no evidence that she suffered an MI on October 4, 2004 or September 1, 2000.  *See* Ex. 4; Ex. 5 (Pl.'s Injury Gate Report); Ex. 6 (Gate Committee Notice of Ineligibility).  In accordance with the terms of the Master Settlement Agreement (which governs the Vioxx Resolution Program), Ms. Strujan then opted to execute a notarized "Future Evidence Stipulation," exit the Resolution Program, and resume her lawsuit in this Court.  *See* Master Settlement Agreement § 2.7.3; Ex. 7 (Strujan Future Evidence Stipulation).

## II.     Plaintiff's 2005 Bankruptcy Proceeding

On October 16, 2005, Ms. Strujan filed a Voluntary Petition for Bankruptcy under Chapter 7 of the Bankruptcy Code.  Ex. 8 (Bankruptcy Petition).  This was approximately one year after Ms. Strujan's primary care doctor provided her with a written statement indicating that he believed her "cardiac condition" may have been secondary to Vioxx, and likewise one year after she began to investigate her personal injury claims against Merck, but prior to filing her lawsuit against Merck.  Ms. Strujan was represented by an attorney in her bankruptcy proceeding.  *See id.* at 2.  As part of her bankruptcy petition, Ms. Strujan filed a sworn "Schedule B," on which she was required to list "all personal property . . . of whatever kind."  *Id.* at 5-7. Paragraph 20 of Schedule B specifically requires bankruptcy debtors to identify "contingent and unliquidated claims of every nature."  *Id.* at 7.  Ms. Strujan affirmatively indicated that she had

4

no such claims, and indeed her unfiled personal injury claims against Merck were not listed anywhere within her bankruptcy petition or the accompanying schedules.[4] *Id.* On March 15, 2006, six months before she filed this lawsuit against Merck, Ms. Strujan's debts were discharged by the bankruptcy court, and on March 17, 2006, the bankruptcy court issued an Order of Final Decree discharging the trustee of the estate and closing Ms. Strujan's bankruptcy case.  *See* Ex. 9 (Discharge of Debtor); Ex. 10 (Amended Schedules); Ex. 11 (Order of Final Decree).

## LEGAL STANDARD

Summary judgment should be granted whenever it becomes apparent that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Summary judgment "is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the . . . Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'"  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (*quoting* Fed. R. Civ. P. 1).  If a defendant moves for summary judgment on the basis of an affirmative defense, such as judicial estoppel, the defendant bears the burden of establishing the affirmative defense.  *See Crescent Towing & Salvage Co. v. M/V Anax*, 40 F.3d 741, 744 (5th Cir. 1994).  If the defendant establishes all the elements of a valid affirmative defense, the plaintiff then must go beyond the pleadings and set forth specific facts showing a genuine dispute for trial. *See McGregor v. La. State Univ. Bd. of Supervisors*, 3 F.3d 850, 865 (5th Cir. 1993).

---

[4] Ms. Strujan also failed to disclose at least one pending lawsuit that she was actively litigating in the Southern District of New York at that time.  *See Chitoiu v. UNUM Provident Corp., et. al*, No. 1:05-cv-08119-LAP-GWG (S.D.N.Y. filed Sept. 20, 2005).

5

**ARGUMENT**

I. **Judicial Estoppel Prohibits Ms. Strujan From Taking Contrary Positions in Different Proceedings.**

The doctrine of judicial estoppel bars Ms. Strujan from asserting her claims against Merck because she did not disclose them as an asset in her bankruptcy proceeding. "Judicial estoppel is a common law doctrine that prevents a party from assuming inconsistent positions in litigation." *Superior Crewboats,* 374 F.3d at 334.[5] The purpose of this doctrine is to "'protect the integrity of the judicial process,' by preventing parties from playing fast and loose with the courts to suit the exigencies of self interest." *See Coastal Plains, Inc.*, 179 F.3d at 205 (quoting *Brandon v. Interfirst Corp.*, 858 F.2d 266, 268 (5th Cir. 1988)).

In the bankruptcy context, the law is clear that "the Bankruptcy Code and Rules impose upon bankruptcy debtors an express, affirmative duty to disclose all assets, *including contingent and unliquidated claims*," such as "all potential causes of action." *Coastal Plains,* 179 F.3d at 207-08 (emphasis in original). The Fifth Circuit has clarified that "[t]he debtor need not know all the facts or even the legal basis for the cause of action; rather, if the debtor has enough information . . . *to suggest that it may have a possible cause of action*, then that is a 'known' cause of action such that it must be disclosed" to the bankruptcy court. *Id.* at 208 (emphasis added) (quoting *Youngblood Group v. Lufkin Fed. Sav. & Loan Ass'n*, 932 F. Supp. 859, 867 (E.D. Tex. 1996)). When the debtor breaches that duty—as Ms. Strujan did here—the judicial estoppel doctrine bars her from pursuing such undisclosed claims. *Id.* at 208 ("Courts in numerous cases have precluded debtors or former debtors from pursuing claims about which the debtors had knowledge, but did not disclose, during the debtors' bankruptcy proceedings.").

---

[5] Federal law applies to this issue because Ms. Strujan's prior inconsistent position was asserted in federal bankruptcy court. *See Superior Crewboats*, 374 F.3d at 334 (citing *Coastal Plains,* 179 F.3d at 205).

This rule is fundamental to the bankruptcy process, for without it, the lesson to debtors would be: "[c]onceal your claims; get rid of your creditors on the cheap, and start over with a bundle of rights." *Id.* at 213 (quoting *Payless Wholesale Distribs., Inc. v. Alberto Culver (P.R.) Inc.,* 989 F.2d 570, 571 (1st Cir. 1993)).  Instead, the rule is that the debtor, "'having obtained judicial relief on the representation that no claims existed, cannot now resurrect them and obtain relief on the opposite basis.'"[6] *Id.*

## II. The Doctrine of Judicial Estoppel Applies In This Case and Bars Ms. Strujan's Claims Against Merck.

Judicial estoppel applies when three criteria are met:  (1) the position of the party to be estopped is clearly inconsistent with its previous one; (2) a court accepted that previous position; and (3) the nondisclosure was not "inadvertent."  *Superior Crewboats*, 374 F.3d at 335.  Each of these criteria are easily met by the undisputed facts in Ms. Strujan's case.

By the end of 2004, Ms. Strujan's physician had expressed the opinion that her "cardiac condition" may have been secondary to Vioxx, and she began to investigate and prepare her personal injury claims against Merck by seeking copies of her pharmacy records.  *See* Ex. 2 at 140:14-141:11; Ex. 3.  At that point, she had more than enough information "to suggest that [she] may have [had] a possible cause of action" against Merck, and she had even begun to pursue those claims.  *See Coastal Plains*, 179 F.3d at 208.  Yet when she filed her bankruptcy

---

[6] Though federal law applies to this issue in this case, New York courts likewise recognize that "[t]he failure of a plaintiff to disclose a cause of action as an asset in a prior bankruptcy proceeding, the existence of which the plaintiff knew or should have known existed at the time, deprive[s] the plaintiff of the legal capacity to sue subsequently on that cause of action."  *Whelan v. Longo*, 808 N.Y.S.2d 95, 96 (N.Y. App. Div. 2005) (collecting cases).  This comparable New York rule was recently applied against Ms. Strujan in the *Tepperman* case, noted above, as to a different unfiled personal injury claim that had accrued prior to her bankruptcy filing.  *See* Ex. 12 (Decision & Order, *Strujan v. Tepperman & Tepperman, et. al*, Index No. 401164/10 (N.Y. Sup. Ct. Jan. 31, 2011)); *Strujan v. Tepperman & Tepperman, LLC, et. al*, No. 401164/2010, 2011 WL 400211 (N.Y. Sup. Ct. Jan. 28, 2011).

petition in October of 2005, she did not disclose her unfiled claims against Merck, and indeed she affirmatively indicated that she had no contingent or unliquidated claims of any kind. Ex. 8 at 7. Ms. Strujan's omission of her claims against Merck from her bankruptcy filings were thus "tantamount to a representation that no such claim[s] existed." *Superior Crewboats*, 374 F.3d at 335 (quoting *Coastal Plains*, 179 F.3d at 210). Yet, a few months after she benefitted from this representation (through discharge), Ms. Strujan filed suit against Merck, attempting to resurrect these claims and seek damages for her alleged personal injuries. Under Fifth Circuit precedent, "[s]uch blatant inconsistency readily satisfies the first prong of the judicial estoppel inquiry." *Superior Crewboats*, 374 F.3d at 335; *see also Coastal Plains*, 179 F.3d at 210.

Likewise, the second element of judicial estoppel is established in this case because by discharging Ms. Strujan's Chapter 7 bankruptcy on March 15, 2006, the bankruptcy court adopted her position that she had no claims. *See Superior Crewboats*, 374 F.3d at 335 (court adopted the petitioners' position that they had no personal injury claims by issuing a "no asset" discharge); *In re Walker*, 323 B.R. 188, 195 (Bankr. S.D. Tex. 2005) ("This Court accepted the debtor's previous position when . . . [it] signed an order granting a discharge to the Debtor and signed a final decree closing the Debtor's chapter 7 case.").

Lastly, Ms. Strujan's actions in her bankruptcy proceeding were not inadvertent. Inadvertence is shown only where "the debtor either lacks knowledge of the undisclosed claims *or* has no motive for their concealment." *Coastal Plains*, 179 F.3d at 210. Here, Ms. Strujan had *both* knowledge of her undisclosed claims *and* a motive for their concealment.

As discussed above, to have knowledge of a claim, a debtor need only have information suggesting that she *might* have a claim. *Id.* at 208. By the end of 2004, according to the allegations in Ms. Strujan's Complaint, she had taken Vioxx for over four years and had

8

developed a range of "cardiovascular problems," which she believed were caused by Vioxx. Ex. 1 ¶5. She alleges that her pharmacist (presumably in connection with the massively publicized worldwide withdrawal of Vioxx) called her in September of 2004 and told her to stop taking Vioxx because it was "dangerous for [the] body." *Id.* Ms. Strujan had also obtained a statement from her primary care physician attributing her "cardiac condition" to Vioxx. Ex. 3. Clearly, Ms. Strujan had more than enough information by the end of 2004 to suggest that she had a possible cause of action against Merck. And indeed, she had even begun to take steps to pursue her claims by contacting her pharmacy to request her prescription records.[7] Ex. 2 at 140:14-141:11. There can be no question, then, that when she filed her petition for bankruptcy nearly a year later on October 16, 2005, Ms. Strujan had "known" claims against Merck that she did not disclose. *See Coastal Plains*, 179 F.3d at 208.

Ms. Strujan also had a clear motive for concealment of her claims. The Fifth Circuit has held that the ability to obtain a discharge from creditors from a bankruptcy court, while at the same time potentially reaping a "windfall" by recovering on undisclosed claims without having to disclose them to creditors, establishes motive under the inadvertence prong of the judicial estoppel inquiry. *Coastal Plains*, 179 F.3d at 213 (calling such a motive a "palpable fraud that the court will not tolerate" (quoting *Payless,* 989 F.2d at 571)); *see also Superior Crewboats*, 374 F.3d at 336 (stating that "[j]udicial estoppel was designed to prevent such abuses"). Ms. Strujan's motive for her nondisclosure was obvious—to obtain a discharge from creditors so that she might keep any earnings from her undisclosed claims against Merck to herself.[8]

---

[7]  When some of her prescription records apparently turned out to be missing (or destroyed), Ms. Strujan initiated a lawsuit against the pharmacy. *See Strujan v. Rainbow Ace Hardware*, No. 406368/2007 (N.Y. Sup. Ct. filed Sept. 10, 2007).

[8]  Though it appears Ms. Strujan refrained from filing any new claims during the pendency of her bankruptcy proceeding, notably, Ms. Strujan filed at least five lawsuits within

Accordingly, with respect to Ms. Strujan's claims against Merck in the instant lawsuit, all three elements of judicial estoppel are met, and the doctrine thus bars Ms. Strujan from asserting her claims.

## **CONCLUSION**

For the foregoing reasons, the Court should grant Merck's Motion for Summary Judgment and dismiss Plaintiff Strujan's Complaint with prejudice.

Dated:  May 23, 2012

> Respectfully submitted,
>
>  /s/ Dorothy H. Wimberly
> Phillip A. Wittmann, 13625
> Dorothy H. Wimberly, 18509
> STONE PIGMAN WALTHER
> WITTMANN L.L.C.
> 546 Carondelet Street
> New Orleans, Louisiana 70130
> Phone: 504-581-3200
> Fax:    504-581-3361
>
> Defendants' Liaison Counsel
>
>  —and—

---

approximately two years following her total discharge in bankruptcy, including this one. *See Strujan v. Merck & Co., Inc., et. al*, No. 2:07-cv-00906-EEF-DEK (E.D. La. filed Sept. 27, 2006); *Strujan v. Lehman College, et. al,* No. 1:06-cv-13201-AKH (S.D.N.Y. filed Nov. 14, 2006); *Strujan v. Rainbow Ace Hardware,* No. 406368/2007 (N.Y. Sup. Ct. filed Sept. 10, 2007); *Strujan v. Donlen Trust*, No. 104944/2008 (N.Y. Sup. Ct. filed Apr. 4, 2008); *Strujan v. Columbia Univ., et. al*, No. 1:08-cv-09589-WHP-HBP (S.D.N.Y., filed Nov. 7, 2008).  She also apparently attempted to file a sixth but missed the statute of limitations.  This became the subject of the *Tepperman* case, a legal malpractice suit filed in 2010, which itself was barred because of Ms. Strujan's failure to disclose the underlying personal injury claim in bankruptcy.  *See* Ex. 12.

1094547v1

Douglas R. Marvin
Eva Petko Esber
M. Elaine Horn
Emily Renshaw Pistilli
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Phone: 202-434-5000
Fax:    202-434-5029

Attorneys for Merck & Co., Inc.

1094547v1

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Motion for Summary Judgment has been served on Plaintiff Elena Strujan by U.S. Mail at:

P.O. Box 20632
New York, NY 10021

I also hereby certify that the above and foregoing Motion for Summary Judgment has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail, upon Liaison Counsel Ann Oldfather by e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 23rd day of May, 2012.

*/s/ Dorothy H. Wimberly*
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361
dwimberly@stonepigman.com
 Defendants' Liaison Counsel

1094547v1