IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: VIOXX PRODUCTS LIABILITY LITIGATION | * * | MDL No. 1657 |
| | * | SECTION L |
| | * | |
| | * | JUDGE ELDON E. FALLON |
| This document relates to: | * | |
| *D.C. ex. rel. Kenneth Walker v.* | * | MAGISTRATE JUDGE KNOWLES |
| *Merck & Company*, Civil Action No. 08-4148 | * | |

*******************************************************************************

PLAINTIFF'S SUPPLEMENTAL OPPOSITION
TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

I.  INTRODUCTION

On February 6, 2012, Merck filed its Motion for Judgment on the Pleadings seeking to dismiss Mr. Walker's ("Mr. Walker" or "Plaintiff") representative action filed pursuant to the District of Columbia Consumer Protection Procedure Act, D.C. Code § 28-3901, et. seq. [Rec. Doc. 63656] By this Motion, Merck seeks to dismiss the Amended Complaint of Kenneth Walker, claiming that (1) Mr. Walker lacks injury and therefore does not have standing to bring this claim, (2) that Mr. Walker has not alleged a "consumer transaction," (3) that he has not sought class certification, and (4) that he cannot assert claims on behalf of the District of Columbia that were settled in 2008. Mr. Walker opposed this motion on February 27, 2012. [Rec. Doc. 63694] Moreover, shortly thereafter Mr. Walker filed his Motion to Amend the Complaint to make allegations on behalf of a class of District of Columbia residents who had been similarly aggrieved under the D.C Consumer Protection Procedures Act. [Rec. Doc. 63713] Merck opposed this motion. [Rec. Doc. 63734]

1

After conferring with the parties in a telephone conference, the Court opted to consider the Motion to Amend first and then entertain the Motion for Judgment on the Pleadings, if necessary. [Rec. Doc. 63722]  By Memorandum Opinion dated May 9, 2012, the Court granted Plaintiff's Motion to Amend. [Rec. Doc. 63822]  The Court concluded that Mr. Walker's Second Amended Complaint is not "futile" and "relates back" because the Amended Complaint placed Merck on notice of potential class claims. *Id*. at page 9-10.  Moreover, the Court ordered the parties to file supplemental memoranda respecting Merck's argument that Mr. Walker lacked Article III standing in the context of the recently accepted Second Amended Class Complaint. *Id*. at 10.

For all of the reasons asserted in Mr. Walker's Memorandum in Opposition to Defendant's Motion for Judgment on the Pleadings, Mr. Walker has established Article III Standing and has properly alleged a "consumer transaction" as defined by the District of Columbia Consumer Protection Procedures Act. [Rec. Doc. 63694]  Because Mr. Walker has established Article III standing and a proper consumer transaction as the named plaintiff/class representative, the absent class members are not required to make a showing, and the complaint is sufficient.[1]

## II. BACKGROUND

### A. The Second Amended Complaint

Mr. Walker, a resident of the District of Columbia, "paid for, in whole or in part, prescriptions for Vioxx…" at various pharmacies in the District of Columbia between 2002 and 2004. [Rec. Doc. 63713-2] Second Amended Complaint at ¶ 17.  Usually, Mr. Walker paid  $1.00 co-pay and D.C. Medicaid paid the rest of the cost of the medication, but on occasion he paid for the entire refill out of his own funds. *Id*. at ¶ 154.  He brings this Class Action "by and on behalf of all Consumers in the District of

---

[1]  An Article III Standing issue may arise out of a Motion to Dismiss under Fed. R. Civ. Pro 12(b) or pursuant to a Motion for Summary Judgment under Fed. R. Civ. Pro. 56. *See Lujan v. Defenders of Wildlife, et. al.*, 504 U.S. 555, 561 (1991). Because Merck has raised this in a Motion for Judgment on the Pleadings, Mr. Walker and the Class Members are entitled to the benefit of all favorable facts and inferences in the Second Amended Complaint. *Id.*

2

Columbia…who purchased or paid for the prescription drug Vioxx, an anti-inflammatory drug, researched, manufactured, marketed, promoted, advertised, sold, and distributed by Merck for sale and distribution in the District of Columbia.  *Id*. at ¶ 1; *see also id*. at ¶ 160.  Mr. Walker alleges that he and the class members are "consumers" as defined by the D.C. Code § 28-3901(a)(2).  *Id*. at ¶ 175.  He avers that Merck is a "merchant" as defined by D.C. Code § 28-3901 (a)(3).  *Id*.  Moreover, Mr. Walker claims that he, Merck, and the members of the class are "persons" as defined by D.C. Code § 28-3901 (a)(1).  *Id*. at ¶ 176.  He also asserts that "Merck engaged in 'trade practices' as defined by D.C. Code § 28-3901 (a)(6), and sold Vioxx which constitutes a "Good and Service" as defined by D.C. Code 28-3901 (a)(7)."  *Id*. at ¶ 177.

In great detail, Mr. Walker has described how Merck concealed and misrepresented critical and material facts about the risks associated with the use of Vioxx from medical providers and consumers.  Id. at ¶ 19-148.  Essentially, Mr. Walker alleges that Merck concealed the risks of adverse GI side effects related to Vioxx and further concealed that Vioxx increased the risk of adverse cardiovascular and cerebrovascular events such as heart attacks and strokes*. Id*.  Mr. Walker further alleges that Merck knew well that Vioxx posed significant risks for consumers, but aggressively marketed the medication in a national campaign that falsely represented the medication as a safer alternative to other pain relief medication.  *Id*. at ¶ 45-90.

Mr. Walker contends that Merck violated the D.C. Consumer Protection Procedures Act in several respects.  *Id*. at ¶ 179.  Mr. Walker claims that Merck's deceptive conduct had a tendency to deceive him and the members of the class, *id*. at ¶ 180, that Merck's deception constituted material omissions, *id*. at ¶ 181-182, and that neither Mr. Walker nor the class members would have "purchased or paid for Vioxx on the terms that they did had they known the true and complete risks, dangers, disadvantages, and benefits of Vioxx, in general, and specifically in comparison to alternative and slightly less expensive NAIDs."  *Id*. at ¶ 182.  Mr. Walker claims that Merck's unlawful conduct violated D.C.

Code § 28-3904 (a), (d), (e), (f), (h), (u), (w), and (z). *Id*. at ¶ 183. He further avers that Merck's conduct caused him and the members of the class to sustain "ascertainable injuries, losses and damages." *Id*. at ¶ 184.

### III. ARGUMENT

**A. The Representative Plaintiff has Alleged an Injury Sufficient to Maintain Standing**

Within the context of Article III, standing is "the threshold question in every federal case, determining the power of the court to entertain the suit." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). To meet the minimum constitutional standing requirement, a plaintiff must show: (1) that he suffered an "injury in fact," (2) that the injury is "actual or imminent" as opposed to "conjectural or hypothetical," (3) that the injury has a causal connection to the defendant's conduct, and (4) that it is highly likely that the injury will be "redressed" by a favorable decision. *Lujan v. Defenders of Wildlife, et. al.*, 504 U.S. 555, 561 (1991)

The United States Supreme Court has long held that Article III Standing can arise out of the violation of a statutorily created right. *Id*. at 578. The Court stated that "[T]he … injury required by Art. III may exist solely by virtue of 'statutes creating legal rights, the invasion of which creates standing.'" *Id*. (quoting *Warth,* 422 U.S. at 500 (quoting *Linda R. S. v. Richard D.,* 410 U.S. 614, 617, n. 3 (1973)). Consistent with this, both the District of Columbia Court of Appeals and the Court of Appeals for District of Columbia Circuit recognize that the D.C. Consumer Protection Procedures Act confers standing on consumers based solely on the statutorily violated rights. *See Grayson v. ATT Corp*., 15 A.3d 219, 249-250 (D.C. 2011) (finding that the plaintiff had standing based upon " a violation or invasion of his statutory legal rights created by the CPPA"); *Shaw v. Marriot Int'l Inc*., 605 F.3d 1039, 1042 (D.C. Cir. 2010) (quoting *Warth*, 422 U.S. at 514) ("[T]he deprivation of a statutory right [to be 'free from improper

4

trade practices'] may constitute an injury-in-fact sufficient to establish standing even though the plaintiff 'would have suffered no judicially cognizable injury in the absence of [the] statute.'")

Article III Standing has been established in the Second Amended Complaint based solely on Merck's violation of the D.C. Consumer Protection Procedures Act. In numerous places throughout the Second Amended Complaint, Mr. Walker, acting on his own behalf and on behalf of the Class, has alleged that Merck failed to disclose material information about Vioxx to the medical community and to the consumers that misled them and that such conduct constituted a deceptive trade practice in violation of the D.C. Consumer Protection Procedures Act. *See* Second Amended Complaint at ¶¶ 45-90, 179-184. Additionally, Mr. Walker has alleged that this unlawful behavior injured both him and the class of District of Columbia consumers. *Id*. at ¶¶ 183-184. Mr. Walker also sufficiently alleged that he and the members of the class are consumers and therefore they are "within the class of individuals protected by the CPPA." *Shaw*, 605 F.3d at 1042; *see also* Second Amended Complaint at ¶ 175.

Moreover, Mr. Walker has standing based upon his economic injuries. That is, Mr. Walker claims that he expended his monies to make co-pays and to pay for the entire cost of the medication. Second Amended Complaint at ¶ 154. Because Mr. Walker would not have paid money for Vioxx if not for Merck's unlawful behavior, Mr. Walker suffered a pecuniary harm with each purchase. *Id*. at ¶¶ 181-182. Both the D.C. Circuit and the District of Columbia Court of Appeals and have held that this is enough to confer Article III standing. *See Shaw*, 605 F.3d at 1042*; see also District Cablevision v. Bassin*, 828 A.2d. 714, 725 (D.C. 2003).

In Merck's Motion for Judgment on the Pleadings, Merck argues that Mr. Walker's claimed economic injury is not sufficient to confer Article III Standing. [Rec. Doc. 63656-1 at 5-7] Merck primarily relies upon the analysis presented by the court in *Rivera v. Wyeth-Ayers*, 283 F. 3d. 315, 320 (5th Cir. 2002). *Id*. However, as Mr. Walker explained in his first opposition, the decision in *Wyeth* is inapposite for several reasons, including differing factual circumstances and the fact that Wyeth did not

5

concern the D.C. Consumer Protection Procedures Act.[2] [Rec. Doc. 63694 at 7-12] Most tellingly, Merck fails to discuss the many decisions from the District of Columbia courts, both local and federal, that have all agreed that the D.C. Consumer Protection Procedures Act creates Article III standing based upon either a statutorily created right or an economic loss. *See Grayson*, 15 A.3d at 249-250; *Shaw*, 605 F.3d at 1042.

The fact that the Second Amended Complaint now advances claims on behalf of a Rule 23 Class of D.C. residents is of no consequence respecting whether Article III Standing has been established, because Mr. Walker, the named plaintiff, has standing. In *Lewis v. Casey*, 518 U.S. 343, 357 (1995), the Court addressed whether the lower court properly awarded system-wide relief based upon a record that revealed sporadic evidence of actual injury. *See Id*. at 359 ("Was that inadequacy widespread enough to justify systemwide relief?"). Justice Scalia, writing for the majority, first discussed Article III standing, and referenced the following quote:

> That a suit may be a class action … adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.' *Simon v. Eastern Ky. Welfare Rights Organization,* 426 U.S. 26, 40, n.20, 48 L. Ed. 2d 450, 96 S. Ct. 1917 (1976), quoting *Warth v. Seldin,* 422 U.S. 490, 502, 45 L. Ed. 2d 343, 95 S. Ct. 2197 (1975).

*Id*. at 357. In dissent, Justice Souter sought to explain this further:

> On[ce] [the] class representative has standing, as the Court concedes, and with the right to sue thus established, standing doctrine has no further part to play in …. More specifically, the propriety of awarding classwide relief (in this case, affecting the entire prison system) does not require a

---

[2] *Wyeth* acknowledged the Supreme Court's position on class actions and standing. *See Wyeth*, 283 F.3d at 319, (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 612 (1997)). *Wyeth* distinguished itself under the particular circumstances of that case, in which plaintiff pleaded an injury-in-fact to others, but not to herself or the class. *Wyeth*, 283 F.3d at 319-320. Unlike the case at bar, in *Wyeth* the "plaintiffs never define[d]" an "economic injury" and did not demonstrate that the purchase of a materially represented drug constituted an injury under the Texas Deceptive Practices Act. *Id*. at 319. The *Wyeth* court perceived their claim of injury as injury to others-other Duract users who suffered bodily harm. *Id*. at 320. The *Wyeth* court rejected the plaintiffs' "benefit of the bargain" claim as one belonging to contract law-in a case in which no contract was pleaded. *Id*. In *Wyeth*, it appears plaintiffs did not plead a connection between statutory violation, statutory damage, and statutory remedy. Whether the fault was in the pleading, a gap in the Texas statute, or in the interpretation of the court that saw the only cognizable injury as bodily injury, none of these circumstances exist here.

>     demonstration that some or all of the unnamed class could themselves
>     satisfy the standing requirements for named plaintiffs.

*Id* at 395. This clearly demonstrates that standing is dependent on the class representative, not the unnamed members of the class.

While the Court ultimately concluded that the claim failed on other grounds,[3] the Majority thought it necessary to mention that its holding did not rest on the standing analysis. *Id.* at 361 n.7 (internal citations omitted) ("Our holding regarding the inappropriateness of systemwide relief for illiterate inmates does not rest upon the application of standing rules, but rather, like Justice Souter's conclusion, upon 'the respondents' failure to prove that denials of access to illiterate prisoners pervaded the State's prison system.'"). Accordingly, in spite of the fact that the Court rejected the Class Representative's claims, both the Majority and the Dissent agreed that for standing purposes, the proper analysis should focus on the representative plaintiff as opposed to the unnamed class. *See Id.*, at 357 and 395.[4] In other words, there is no requirement that a court conduct a class member-by-class member investigation of standing in order to enable a putative class action to go forward. *Id*. Indeed, finding in favor of such a requirement would dismantle the long-established mechanism of the class suit, the importance of which the Supreme Court has repeatedly emphasized. *See, e.g. Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997) (quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997) ("The policy at the very core of the class action is to overcome the problem that small recoveries do not provided the incentive for any individual to bring a solo action prosecuting his or her rights. A class

---

[3] The Majority in *Lewis* concluded that the claim failed because "[t]he constitutional violation has not been shown to be systemwide, and granting a remedy beyond what was necessary to provide relief … was therefore improper." *Id.*

[4] A few decisions have concluded that a class that contains members who lack Article III Standing cannot be certified. *See Denney v. Deutsche Bank AG*, 443 F. 3d 263, 264 (2nd Cir. 2006) and *Avritt v. Relastar Life Ins. Co.*, 615 F.3d 1023 (8th Cir. 2010). This approach runs afoul of Supreme Court Precedent and improperly merges the Standing issue with the Class Certification Issue. *See Casey v. Lewis*, *supra*, at page 358, Note 6 ("The standing determination is quite separate from the certification of the class."). The prevailing view is articulated in *Stearns v. Ticketmaster*, 635 F.3d 1013, 1021 (9th Cir 2011) cert. Denied sub nom *Ticketmaster v. Stearns*, 2012 U.S. LEXIS 3259 (4/23/2012) ("In a class action, standing is satisfied if at least one named plaintiff meets the requirements … Thus, we consider only whether one named plaintiff satisfies the standing requirements."); *see also* Herbert B. Newberg & Alan Conte, 1 NEWBERG ON CLASS ACTIONS § 2.7 (4th Ed. 2002) ("[P]assive members need not make any individual showing of standing because the standing issue focuses on whether the plaintiff is properly before the court, not whether represented or absent class members are properly before the court.")

action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.").

Importing Merck's spurious "standing" argument into a class action at the pleading stage, when under Rule 23 absent class members need not be named, much less prove their individual claims, would dismantle the very procedural mechanism deemed essential by the Supreme Court to vindicate consumer rights. As the Supreme Court recently reiterated in *Shady Grove Orthopadic Assocs., P.A. v. Allstate Ins. Com*, 130 S.Ct. 1431, 1443 (2010), Rule 23 is about procedure. *See Id.* (stating that rules allowing multiple claims to be tried together "alter only how the claims are processed"). Rule 23 does not alter or abridge either side's procedural rights or alter the traditional process of adjudication: "it leaves the parties' legal rights and duties intact and the rules of decision unchanged." *Id*. To require absent class members to pre-prove individual damages in the name of standing would prejudicially alter and abridge the rights of class members and distort Rule 23 beyond recognition.

As indicated above, Mr. Walker has established standing for both himself, and the Class. Moreover, the Class has standing anyway given that the Class is defined as those who purchased or bought Vioxx, and given that it is alleged that, like Mr. Walker, the Class has suffered from the deprivation of statutorily protected rights under the D.C. Consumer Protection Procedures Act and pecuniary loss.

**B. Both the Plaintiff and the Members of the Class have alleged a Consumer-Merchant Relationship under the DCCPA**.

In Merck's Motion for Judgment on the Pleadings, Merck argues that Mr. Walker's claim must fail because he failed to allege a proper Consumer-Merchant Relationship. [Rec. Doc. 63656-1 at 7] In briefing this issue, Merck has included it as subsection B under the section of its brief that was designed to address the Article III Standing issue. However, this argument does not raise any standing issues. It appears to be a separate argument for dismissal of the complaint as opposed to an Article III Standing argument. Indeed, in the two pages devoted to this argument, Merck never even mentions Article III or Standing. *Id.*

For the reasons asserted in Mr. Walker's earlier filed Opposition [Rec. Doc. 63694 at 12-18], Mr. Walker has alleged a proper merchant-consumer relationship to trigger coverage of the D.C. Consumer Protection Procedures Act for both himself individually and for the Class. The fact that the suit now seeks class action status does not negate the existence of this relationship or change the arguments set forth in the previously filed Opposition.

**C. Plaintiff is not attempting to recover for the distinct claims of the District of Columbia that have been resolved.**

Finally, Merck argues that Plaintiff may not advance a claim on behalf of the District of Columbia because the city settled its claims under the D.C. Consumer Protection Procedures Act in 2008. [Rec. Doc. 6356-1 at 13] This argument was primarily based upon allegations in the Amended Complaint. *Id*. Now, that the Second Amended Complaint has been filed, most of these arguments are moot. The Second Amended Complaint does not seek recovery of damages on behalf of the District of Columbia, as a governmental entity. Mr. Walker, however, avers that the settlement does not bar any of the claims that he now alleges on behalf of himself and the class of persons who paid for or purchased Vioxx.

In May 2008, the District of Columbia entered a settlement agreement with Merck to resolve the claims of the District of Columbia under the District of Columbia Consumer Protection Procedures Act. *See* Exhibit 1. The Agreement at Paragraph 20 specifically excludes the following claims from its purview:

> Any liability under the District of Columbia's above cited consumer protection laws which any person or entity, including Released Parties, has or may have to individual consumers or State program payors of Said State, and which have not been specifically enumerated as included herein.

The Second Amended Complaint does not seek to advance claims on behalf of the District of Columbia, rather it seeks to assert claims on behalf of the "individual consumers" and any third party payor that "has

9

not been specifically enumerated" in the Agreement. Accordingly, Merck's last argument for judgment on the pleadings is moot.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff urges the court to deny Merck's Motion for Judgment on the Pleadings in its entirety.

Respectfully submitted,

DATED:  May 29, 2012         /s/ H. Vincent McKnight_____

H. Vincent McKnight
vmcknight@mcknightandkennedy.com
MCKNIGHT & KENNEDY, LLC
8601 Georgia Avenue, Suite 1010
Silver Spring, MD 20910
(301) 565-5281

Elizabeth J. Cabraser
ecabraser@lchb.com
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone:  (415) 956-1000
Facsimile:   (415) 956-1008

Dawn M. Barrios (#2821)
barrios@bkc-law.com
BARRIOS KINGSDORF & CASTEIX, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Telephone:  (504) 524-3300
Facsimile:   (504) 524-3313

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail, upon Liaison Counsel Ann Oldfather by e-mail, and upon all parties by electronically uploading same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 29th day of May 2012.

/s/ Dawn M. Barrios
Dawn M. Barrios