**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

In re: VIOXX        *
   Products Liability Litigation    *
            *
This Document Relates to:     *   MDL No. 1657
            *
  DISTRICT OF COLUMBIA, *ex rel*   *   SECTION L
   KENNETH  WALKER,     *
            *   JUDGE ELDON E. FALLON
       Plaintiff,    *
            *   MAGISTRATE JUDGE
   versus         *   KNOWLES
            *
  MERCK & CO., INC.,      *
            *
       Defendant.    *
            *
   Case No. 2:08-cv-4148     *
            *
* * * * * * * * * * * * * * * * * * * * * * *   *

**DEFENDANT'S SUPPLEMENTAL OPPOSITION
TO PLAINTIFF'S MOTION TO AMEND**

   Plaintiff has tripled the length of his complaint by adding scores of new allegations, but

in so doing, he has not cured its fundamental defects:  he still has failed to plead the facts

necessary to establish Article III standing or to show that he engaged in a consumer transaction

as required to recover under the District of Columbia Consumer Protection Procedures Act, D.C.

Code § 28-390, et seq. ("CPPA").

   With respect to standing, Plaintiff continues to erroneously maintain that he suffered an

economic loss by purchasing a drug that he does not allege was ineffective or unsafe as to ***him***.

Such an allegation falls miles short of what is required to plead a concrete injury-in-fact under

applicable law articulated by both the Fifth Circuit and by courts addressing claims brought

under the CPPA.  Similarly, with respect to the statutory requirement that a plaintiff engage in a

"consumer transaction" with the defendant, Plaintiff's Second Amended Complaint remains

woefully inadequate because Plaintiff still has not – and cannot – allege that he purchased Vioxx from Merck.  While Plaintiff has added a host of new allegations involving purported misstatements made by Merck to consumers ***generally***, these new allegations do not solve Plaintiff's "consumer transaction" problem because the new complaint fails to allege even a single instance where Plaintiff ***himself*** (or even his doctor) received any such a misrepresentation by Merck.  Thus, he could not have engaged in a "consumer transaction" with Merck.

Because Plaintiff's case continues to suffer from these fatal deficiencies, the Court should deny Plaintiff's motion to amend as futile and grant Merck's motion for judgment on the pleadings.

## **BACKGROUND**

Plaintiff Kenneth Walker commenced this action under seal on August 4, 2005.  (*See* Orig. Compl.) (attached as Ex. 1).)  Initially, Plaintiff alleged a single cause of action under the False Claims Act of the District of Columbia, D.C. Code § 2-308.14, et seq. ("D.C. FCA"), seeking to recover funds on behalf of the District that were paid to cover Vioxx prescriptions. (*Id.* ¶ 1.)  Plaintiff subsequently sought leave to amend to add a claim under the CPPA to recover funds allegedly spent on Vioxx "on behalf of himself, the District of Columbia, and the District of Columbia residents who purchased Vioxx."  (Am. Compl. ¶ 10, ECF No. 1-2; *see also id.* ¶¶ 50, 59.)  Plaintiff's motion for leave to amend was granted on September 29, 2005, the case was unsealed on April 3, 2008 and Merck was served with the Amended Complaint on June 16, 2008.  Merck then removed the case to the United States District Court for the District of Columbia (Def.'s Notice of Removal, ECF No. 1-1), and it was ultimately transferred to this Court as part of *In re Vioxx Products Liability Litigation*, MDL No. 1657.

2

According to Plaintiff's Amended Complaint, Merck improperly promoted Vioxx through its sales force, which allegedly gave "medical providers . . . inaccurate and misleading information to encourage them to prescribe Vioxx to their patients."  (Am. Compl. ¶ 30.)  The Amended Complaint further alleged that the information was "misleading" because it failed to disclose the allegedly "significant cardiovascular risks associated with the use of Vioxx."  (*Id.* ¶ 29.)  The Amended Complaint asserted that these representations "caused medical providers in the District of Columbia to prescribe Vioxx to Medicaid patients" and led D.C. Medicaid's pharmacy benefit managers to "approve prescriptions for Vioxx for DC Medicaid patients."  (*Id.* ¶¶ 38-39.)

The Amended Complaint alleged that Merck's conduct resulted in "losses" for Plaintiff and those he would represent.  Specifically, it asserted that the District of Columbia, Mr. Walker and other District residents incurred losses by paying for Vioxx they would not have paid for absent Merck's allegedly "false and misleading campaign."  (*See id.* ¶ 42.)  The nature of these alleged losses was not detailed in the Amended Complaint.  While the Amended Complaint alleged that "generic drugs would have been safer" than Vioxx (*id.* ¶¶ 38, 39; *see also id.* ¶¶ 45, 54), it did not allege that Vioxx was ineffective.  To the contrary, Plaintiff affirmatively alleged that he was prescribed Vioxx by his doctor because "DayPro and Lodine had not been effective in the past," and further alleged that he remained on Vioxx from some time in 2001 through Merck's withdrawal of the drug from the market in late 2004.  (*Id.* ¶¶ 12-15, 27.)

This Court dismissed Plaintiff's FCA claim for lack of standing in March 2011 (*see* Order & Reasons, MDL ECF No. 62,729, Mar. 28, 2011), and Merck moved for judgment on the pleadings with respect to Plaintiff's CPPA claim on February 6, 2012.  Merck argued that it should be granted judgment on the pleadings for three principal reasons:  (1) Plaintiff has not

1095028v1

alleged a cognizable "injury" that could give him standing under Article III or alleged a "consumer transaction" that is actionable under the CPPA; (2) Plaintiff may not sue on behalf of other D.C. residents because he has not pursued class allegations, as required under both D.C. and federal law; and (3) Plaintiff cannot sue on behalf of the District of Columbia because the District has already settled its CPPA claims with Merck and released the Company from any future claims under the statute.  (*See generally* Def.'s Mot. For J. On The Pleadings, MDL ECF 63,656 ("MJP"), Feb. 6, 2012.)

    In his opposition, Plaintiff argued that he does have standing because he allegedly suffered a statutorily defined injury under the CPPA.  He also argued that he had adequately alleged a consumer transaction, pointing to conclusory allegations in the Amended Complaint that refer to Merck's alleged "market[ing] . . . to medical providers and consumers."  (Am. Compl. ¶ 56; *see also id.* ¶ 57; Mem. In Opp'n To Def.'s MJP at 12, MDL ECF 63,694 ("MJP Opp'n"), Feb. 27, 2012 (citing these paragraphs for the proposition that Merck "used false advertising to reach consumers including Plaintiff Walker").)  But he did not dispute Merck's other two arguments.  Rather, Plaintiff agreed that he needed to add class allegations in order to represent other D.C. residents and stated that he planned to do so by way of a proposed amended pleading.  (*See* MJP Opp'n at 18-19.)

    Plaintiff subsequently filed a motion for leave to amend, accompanied by a proposed Second Amended Complaint.  (*See* Pl.'s Mot. For Leave To Am. Compls. & ULLR 6.E Cert., MDL ECF No. 63,713 ("Mot. To Am."), Mar. 5, 2012.)  Merck opposed the motion on the ground of futility, arguing that the proposed complaint's many new allegations that Merck misrepresented the risks of Vioxx directly to consumers in the District were time barred because they did not relate back to the operative complaint, which focuses on representations to doctors.

4

(*See, e.g.*, 2d Am. Compl. ¶¶ 10, 48, 58-60, 62-63, 86-88, 93, 103, 106, 127, 179; *see also* Def.'s Opp'n To Pl.'s Mot. To Am. at 6-11, MDL ECF No. 63,734 ("Opp'n To Mot. To Am."), Mar. 15, 2012.)  Merck also argued that these new allegations, even if not time barred, nonetheless failed to cure the deficiencies of the operative complaint because they do not allege a cognizable injury for standing purposes or a consumer transaction within the meaning of the CPPA.  (*See id.* at 11-13.)

The Court has not yet ruled on the motion.  Instead, it issued an order indicating its conclusion that the new allegations would relate back to the operative complaint, but inviting the parties to submit supplemental memoranda elaborating on the standing and consumer-transaction arguments as they apply to the proposed Second Amended Complaint.  (*See* Order & Reasons, MDL ECF No. 63,822, May 9, 2012.)  As set forth more fully below, both of these issues continue to present insurmountable obstacles to Plaintiff's proposed Second Amended Complaint, and the motion to amend should therefore be denied as futile.

## ARGUMENT

Although a district court has discretion to grant a motion for leave to amend, "leave to amend is by no means automatic."  *Durgin v. Crescent Towing & Salvage, Inc.*, No. 00-1602 SECTION: "N"(4), 2002 U.S. Dist. LEXIS 9650, at *6 (E.D. La. May 20, 2002); *accord Torch Liquidating Trust v. Stockstill*, 561 F.3d 377, 391 (5th Cir. 2009) (concluding that "justice does not require allowing plaintiff additional opportunity to amend").  Rather, "Rule 15(a) authorizes a district court to deny a motion for leave to amend where the 'amendment would be futile.'"  *Adams Family Trust v. John Hancock Life Ins. Co., U.S.A.*, 424 F. App'x 377, 381 (5th Cir. 2011) (some internal quotation marks and citation omitted); *see also Saia v. Pizza Hut of Am., Inc.*, No. 11-776 SECTION: J(5), 2011 U.S. Dist. LEXIS 76780, at *14 (E.D. La. July 15, 2011)

1095028v1

("The Court finds that any amendment to the Complaint under Rule 15 would be futile because the documentation needed by Plaintiff to establish a cause of action does not exist.").

"'[F]utility' in the context of Rule 15 [] mean[s] that 'the amended complaint would fail to state a claim upon which relief could be granted.'" *McDade v. Wells Fargo Bank, N.A.*, No. H-10-3733, 2011 U.S. Dist. LEXIS 118219, at *12 (S.D. Tex. Oct. 13, 2011) (quoting *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 873 (5th Cir. 2000)).  Accordingly, in determining whether a proposed amendment would be futile, "a court must apply the same standard of legal sufficiency as applies under Rule 12(b)(6)." *Id.* at *13.

Here, Plaintiff's proposed amendment would be futile because the proposed amendments do not remedy the fundamental pleading defects that doom the operative complaint.  *See Std. Fire Ins. Co. v. MTU Detroit Diesel, Inc.*, No. 07-3827, 2009 U.S. Dist. LEXIS 72299, at *16-17 (D.N.J. Aug. 13, 2009) (denying plaintiff's motion to amend complaint on futility grounds where plaintiff was not a "consumer" entitled to sue under the New Jersey Consumer Fraud Act and thus lacked standing to pursue its claim).  *First*, Plaintiff has once again failed to allege any facts capable of satisfying the touchstone requirement of Article III standing.  And *second*, Plaintiff's new complaint does not sufficiently allege that Plaintiff *himself* ever engaged in a "consumer transaction" with Merck, an indispensable statutory requirement under the CPPA.

For either or both of these reasons, Plaintiff's CPPA claim fails as a matter of law regardless of whether he amends his complaint.  Accordingly, the motion to amend should be denied.

## I.  PLAINTIFF'S NEW COMPLAINT FAILS TO ESTABLISH STANDING UNDER ARTICLE III.

Plaintiff's proposed amendment is futile first and foremost because it does not establish Plaintiff's standing to sue.  Specifically, Plaintiff has not pled a cognizable injury in fact because

1095028v1

he alleges only that Vioxx posed side effects that he did not experience – not that it was unsafe or ineffective as to him.  Under binding Fifth Circuit precedent, this allegation is insufficient. Moreover, even if he could allege an injury in fact, he would still lack standing because he also has failed to allege any nexus between Merck's alleged conduct and himself – e.g., that he ever saw, heard, or otherwise received any alleged misrepresentation or omission from Merck. Accordingly, he lacks standing to sue.

*First*, Plaintiff has not alleged a cognizable injury in fact.  It is axiomatic that Article III standing requires a plaintiff to demonstrate "an invasion of a legally protected interest which is . . . concrete and particularized."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  It is also well established that, outside a few exceptions not relevant here, the alleged "'injury [must] be personal'" – i.e., it cannot be premised on a breach of legal duties to others.  *Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315, 320 (5th Cir. 2002) (quoting *Bertulli v. Indep. Ass'n of Cont'l Pilots*, 242 F.3d 290, 295 (5th Cir. 2001)).  Therefore, "apprehension about a possible future injury is insufficient to establish injury-in-fact."  *Young v. Johnson & Johnson*, No. 11-4580 (JAP), 2012 U.S. Dist. LEXIS 55192, at *7 (D.N.J. Apr. 19, 2012) (dismissing claims involving purportedly unhealthy food product for lack of standing because "[p]laintiff does not allege that he ***himself*** suffered any adverse health consequences") (emphasis added) (citing *Lujan*, 504 U.S. at 560-61); *see also Am. Fed'n & Mun. Emps. v. Ortho-McNeil-Janssen Pharms.*, No. 08-5904, 2012 U.S. Dist. LEXIS 32356, at *16 (E.D. Pa. Mar. 12, 2012) ("'[i]t is not enough to allege that a product line contains a defect or that a product is at risk for manifesting this defect; rather, the plaintiffs must [demonstrate] that their product actually exhibited the alleged defect'") (citation omitted).

Applying this principle, the Fifth Circuit has established that a plaintiff suing over an allegedly defective pharmaceutical product lacks standing to sue for purely economic losses

where – as here – there is no claim that the product was ineffective or caused the particular plaintiff physical injury. *See Rivera*, 283 F.3d at 320. In *Rivera*, the plaintiff brought a putative class action asserting a claim for violation of the Texas Deceptive Trade Practices Act arising out of the defendant pharmaceutical manufacturer's allegedly deceptive marketing of the drug Duract. *Id.* at 316-17. The plaintiff did "not claim Duract caused [her] physical or emotional injury, was ineffective as a pain killer, or ha[d] any future health consequences to users." *Id.* at 319. Rather, the plaintiff sued to recover a refund of the money she spent in purchasing the allegedly defective drug. *Id.* The district court granted the motion for class certification.

The Fifth Circuit reversed, holding that the plaintiff was "not among the injured" and therefore lacked standing to sue. *Id.* at 320. In so holding, the Court of Appeals rejected the plaintiff's argument that she was denied the benefit of her bargain. *Id.* The court reasoned that, because the plaintiff failed to allege that the drug was ineffective or caused her any physical injuries, she "paid for an effective pain killer, and . . . received just that – the benefit of her bargain." *Id.* In any event, the appellate court explained, a benefit-of-the-bargain theory of loss had no application to a plaintiff where the gravamen of her case was a "failure to warn and sale of a defective product," which are essentially "products liability claims." *Id.* As the U.S. Court of Appeals for the Eleventh Circuit recently explained in applying the rule recognized in *Rivera* and other similar cases,

> a patient suffers no economic injury merely by being prescribed and paying for a more expensive drug; instead, the prescription additionally must have been unnecessary or inappropriate according to sound medical practice – i.e., the drug was either ineffective or unsafe for the prescribed use.

*Ironworkers Local Union 68 v. AstraZeneca Pharm., LP*, 634 F.3d 1352, 1363 (11th Cir. 2011); *see also id.* (citing *Rivera* for the proposition that a patient cannot allege economic injury unless he can allege that the prescription was "one that, in the practice of profession-accepted sound

medicine, the physician should not have prescribed because the drug was unsafe or ineffective for its prescribed use"); *see also id.* at 1369-70 (holding that individual plaintiff failed "ple[a]d a plausible actionable loss on account of AstraZeneca's fraud" because "[n]owhere in the complaint does she state the medical condition for which Seroquel was prescribed off-label, let alone whether Seroquel proves **unsafe** or **ineffective** in treating **her** condition") (emphases added); *Health Care Serv. Corp. v. Olivares*, No. 2:10-CV221, 2011 U.S. Dist. LEXIS 117750, at *17 (E.D. Tex. Sept. 2, 2011) (recommending that third-party payor's claims be dismissed for lack of standing and other reasons where plaintiff did not allege that any of the prescriptions it covered "were **unsafe** or **ineffective** in treating their [member's] conditions") (emphases added), *report and recommendation adopted by*, 2011 U.S. Dist. LEXIS 112544 (E.D. Tex. Sept. 30, 2011).

Courts adjudicating claims under the CPPA have reached the same conclusion in similar cases. *See, e.g.*, *Williams v. Purdue Pharma Co.*, 297 F. Supp. 2d 171, 178 (D.D.C. 2003) (dismissing complaint on standing grounds where defendant allegedly deceptively advertised a drug as providing twelve-hour pain relief with little risk of addiction because plaintiffs did not allege that the drug failed to provide them with effective pain relief or that they suffered personal injuries from ingesting the drug); *In re Light Cigarettes Mktg. Sales Practices Litig.*, 271 F.R.D. 402, 420 (D. Me. 2010) (denying certification under CPPA where class included members who "were not injured by the Defendants' misconduct and thus do not have standing"). Courts applying the laws of other jurisdictions are likewise in accord. *See, e.g.*, *In re McNeil Consumer Healthcare*, MDL No. 2190, 2011 U.S. Dist. LEXIS 76800, at *36 (E.D. Pa. July 14, 2011) (dismissing complaint for lack of standing where "the plaintiffs in this case have not alleged that the [medications] were defective as to **them**, or that the plaintiffs were otherwise injured")

9

(emphasis added); *Myers-Armstrong v. Actavis Totowa, LLC*, No. C 08-04741 WHA, 2009 U.S. Dist. LEXIS 38112, at \*12 (N.D. Cal. Apr. 22, 2009) (granting defendant pharmaceutical manufacturers judgment on the pleadings; "[t]here must be at least some physical manifestation such as physical harm, or a failure of the drug to work as intended, or a rational fear of future harm, none of which are alleged"), *aff'd*, 382 F. App'x 545 (9th Cir. 2010).[1]

The same result is warranted here. The theory of Plaintiff's CPPA claim is that Merck "concealed, omitted, suppressed, and obfuscated important and material information regarding the risks, dangers, defects, and disadvantages of Vioxx from the Class Members" (2d Am. Compl. ¶ 12), which "caused Plaintiff and the Class Members to purchase, pay for, and/or use Vioxx" (*id.* ¶ 13). Plaintiff alleges that he "paid for his Vioxx prescription most of the time when he submitted it for refill," and that "there were occasions when Mr. Walker paid for the entire cost of the refill out of his own funds." (*Id.* ¶ 154.) However, the new complaint still does not allege that Plaintiff *himself* was injured by Vioxx or that Vioxx was ineffective for *him*. Thus, Plaintiff's case is on all fours with the allegations deemed insufficient in *Rivera* – i.e., that "Wyeth sold Duract; [plaintiff] purchased and used Duract; Wyeth did not list enough warnings

---

[1]       In other words, "[t]he mere purchase of" an allegedly misrepresented product "cannot be sufficient to establish injury-in-fact." *In re McNeil Consumer Healthcare*, 2011 U.S. Dist. LEXIS 76800, at \*47. As the *Light Cigarettes* court explained in rejecting classwide CPPA claims: "If no misrepresentation was made to an individual smoker, that smoker did not buy a misrepresented product as to them and did not suffer a 'concrete and particularized injury' within the meaning of Article III." 271 F.R.D. at 420-21 (internal quotation marks and citation omitted); *accord Silvious v. Coca Cola Co.*, No. 3:11-CV-82 2012 U.S. Dist. LEXIS 48558, at \*8 (N.D. W. Va. Apr. 5, 2012) (relying on *Grayson* in dismissing consumer-fraud claim under West Virginia law stemming from defendant's omissions regarding Coca-Cola because plaintiff failed to "'show a concrete injury-in-fact to *himself*'") (quoting *Grayson v. AT&T Corp.*, 15 A.3d 219, 244 (D.C. 2011) (en banc)) (emphasis added). This conclusion is not only consonant with, but follows perforce from, the holdings in *Rivera* and *Williams*. *See Rivera*, 283 F.3d at 319 (explicitly rejecting argument that "loss of cash is an [adequate] 'economic injury'" for Article III standing purposes where named plaintiff did not allege that the medication caused *her* any physical harm or was not effective for *her*); *Williams*, 297 F. Supp. 2d at 177-78 (relying on *Rivera* in rejecting CPPA claim for lack of standing where all that plaintiffs alleged was that they were forced to pay a "higher price for OxyContin because of defendants' promotional tactics").

1095028v1

on Duract, and/or Duract was defective; other patients were injured by Duract; Rivera would like her money back." *Rivera*, 283 F.3d at 319.[2]

Importantly, Plaintiff is not relieved of pleading a concrete injury in fact based solely on Merck's alleged violation of the CPPA.  In his initial opposition to Merck's motion for judgment on the pleadings, Plaintiff contended that Merck "violated his statutory right to 'the disclosure of information' regarding [the Company's] dangerous misrepresentations."  (*See* MJP Opp'n at 9.) But while injury "may exist by virtue of statutes creating legal rights," the Supreme Court has admonished that "Article III's requirement remains:  the plaintiff still must allege a distinct and palpable injury to ***himself***."  *Warth v. Seldin*, 422 U.S. 490, 500-01 (1975) (internal quotation marks and citation omitted, emphasis added).

This principle has been applied in circumstances just like those here and resulted in dismissal for lack of standing in CPPA cases that fail to allege any actual injury to the plaintiff. In *Hoyte v. Yum! Brands, Inc.*, 489 F. Supp. 2d 24 (D.D.C. 2007), for example, the U.S. District Court for the District of Columbia rejected a CPPA claim for lack of standing where the plaintiff complained that KFC had failed to disclose the presence of trans fats in its foods.  Like Mr. Walker, the plaintiff had suffered no physical injury and failed to articulate any actionable

---

[2]       The alleged injuries of absent class members will not suffice.  In a class action, the ***named plaintiff*** must still allege that ***he*** was injured by virtue of the alleged statutory violation – e.g., that he actually saw a misrepresentation by the defendant. *Lewis v. Casey*, 518 U.S. 343, 357 (1996) ("That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that ***they*** personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.") (internal quotation marks and citation omitted, emphasis added).  Thus, "[e]ven assuming that" the CPPA "recognize[s] an injury for having been exposed to misrepresentations," the requirements of Article III "prevent[] plaintiffs from suing based on misrepresentations made to others." *In re Light Cigarettes*, 271 F.R.D. at 420 (citation omitted); *accord, e.g., Brownfield v. Bayer Corp.*, No. 2:09-cv-00444, 2009 U.S. Dist. LEXIS 63057, at *11 (E.D. Cal. July 6, 2009) (dismissing consumer-fraud claims in class action involving allegations that pharmaceutical company deceptively marketed its drug on standing grounds because "none of the named Plaintiffs allege that they saw, read, or in any way relied on the advertisements") (internal quotation marks and citation omitted); *In re Actimmune Mktg. Litig.*, 614 F. Supp. 2d 1037, 1052 (N.D. Cal. 2009) (dismissing individual plaintiffs' claims for lack of Article III standing in pharmaceutical drug case; "Plaintiffs need to allege what specific information the individual plaintiffs or their physicians had about the drug [and] [the] extent to which they relied upon that information").

1095028v1

economic injury.  Instead, he claimed injury from the mere "fail[ure] to disclose" the presence of trans fat "with the intent or effect of deceiving or misleading D.C. Consumers." *Id.* at 28 (internal quotation marks and citation omitted).  The court rejected this claim because the plaintiff "ha[d] no standing to present his DCCPPA claim" in light of his failure to articulate some concrete injury to himself.  *Id.*; *see also, e.g.*, *Young*, 2012 U.S. Dist. LEXIS 55192, at *7 (dismissing consumer-fraud claims involving allegedly unhealthy food product for lack of standing because "[p]laintiff does not allege that he **himself** suffered any adverse health consequences" from the product) (emphasis added).

Notably, *Grayson v. AT&T* is not to the contrary.  In that decision, the court resolved two cases:  *Breakman v. AOL LLC*, and *Grayson v. AT&T Corp.*  In the first case, the court concluded that the *Breakman* plaintiff lacked standing to sue on behalf of AOL dial-up users for failure to disclose pricing information because all he alleged was a "'mere interest' in the alleged unlawfulness of AOL's business practices," which fell far short of the injury-in-fact requirement for standing.  15 A.3d at 246-47.  The court explained that the plaintiff's "'mere interest' in the alleged unlawfulness of AOL's business practices, 'no matter how longstanding the interest and no matter how qualified [he] is in evaluating the problem, is not sufficient by itself to render [him] adversely affected or aggrieved for standing purposes.'"  *Id.* (alterations in original) (quoting *Warth*, 422 U.S. at 500).  Therefore, because the plaintiff did not allege a concrete injury in fact, the court determined that he lacked standing to sue under the CPPA.  *Id.*[3]

---

[3]        Even if *Grayson* were contrary, it should not be followed, as it is a non-federal case that is controlling only with respect to its interpretation of the CPPA – and not its views on Article III standing.  *See Key v. Wise*, 629 F.2d 1049, 1058 (5th Cir. 1980) ("[F]ederal courts are not bound by state court decisions on matters of federal law.").  In his Reply In Support Of Motion For Leave To Amend, Plaintiff erroneously argued, relying on *Shaw v. Marriott International, Inc.*, 605 F.3d 1039, 1042 (D.C. Cir. 2010), that "the D.C. Circuit follows *Grayson* regarding standing and injury under the DCCPPA."  (Pl.'s Reply In Support Of Mot. For Leave To Am. Compl. at 5, MDL ECF No. 63,742 ("Reply"), Mar. 20, 2012.)  The argument is an odd one, given that *Shaw* was decided before *Grayson*.  But in any event, *Shaw* does not establish Plaintiff's standing here because in that case, the plaintiff allegedly paid more

*(cont'd)*

1095028v1

So too here.  As with the prior complaint, Plaintiff's proposed Second Amended Complaint does ***not*** allege physical injury, actionable economic injury or any other conceivable type of harm.  Indeed, the paragraphs of the proposed Second Amended Complaint that address Mr. Walker's alleged experience with Vioxx are bereft of even the suggestion that Vioxx caused him some physical harm or did not effectively treat the conditions for which he took the medication.  (*See* 2d Am. Compl. ¶¶ 149-158.)[4]  Accordingly, notwithstanding any alleged violation of the CPPA, Plaintiff has not shown any "distinct [or] palpable injury to himself" as is required under Article III.  *Warth*, 422 U.S. at 501.

***Second***, even if Plaintiff were correct that the CPPA can create Article III injury by statute, Plaintiff would still lack standing because there is no nexus between the alleged violation about which he complains and his own case.  Where, as here, a plaintiff attempts to allege misconduct but fails to allege any causal nexus between that conduct and his supposed injury, his "standing to bring suit founders."  *In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*, No. 10-3046 & 10-3047, --- F.3d ----, 2012 WL 1700836, at *11 (3d Cir. May 16, 2012) (internal quotation marks and citation omitted).

In *Schering-Plough*, a consumer of Rebetol and PEG-Intron brought a putative nationwide class action alleging that defendants fraudulently marketed various drugs for off-label purposes.  *Id.* at *10-11.  Plaintiff alleged that she took some of these drugs, manufactured by Schering Plough, and further made "extensive factual allegations regarding the types of

_____

*(cont'd from previous page)*

for a hotel stay than the advertised rate, whereas Mr. Walker purchased a drug that he does not allege cost more than its represented price.

[4]      To the contrary, it appears Vioxx actually worked for him, as evidenced by his allegations (in his operative complaint) that he was prescribed Vioxx because "DayPro and Lodine had not been effective in the past."  (Am. Compl. ¶ 27.)  Plaintiff seeks to remove this damaging allegation in his proposed Second Amended Complaint, but he stops short of alleging that Vioxx was ineffective or unsafe ***for him***.

1095028v1

improper marketing techniques that Schering used, which [she] alleges must have influenced [her doctor] between 1999, when he declined to prescribe her the drugs, and 2001, when he changed his treatment plan." *Id.* at *11. But the district court concluded she lacked standing because her complaint "fail[ed] to provide any factual allegations that would support" any nexus between the defendant's alleged conduct and her doctor's decision to prescribe the drugs. *Id.* (internal quotation marks and citation omitted).

The only attempt the plaintiff made to link her case to the alleged misconduct was a claim that her doctor had been involved in a "phony" clinical trial involving a drug for a therapy she was not prescribed. *Id.* at *13. But the U.S. Court of Appeals for the Third Circuit rejected this argument and affirmed the district court's decision, reasoning that "[e]ven if we accepted the [complaint's] allegation that Dr. Willis was involved in a "phony" clinical trial for Rebetron Combination Therapy, this fact does not establish the necessary causal connection between Schering's misconduct and Montgomery's injury, because she was not prescribed the Rebetron Combination Therapy." *Id.* Thus, neither this allegation, nor any of the plaintiff's other conclusory allegations could "form the necessary causal nexus" between the defendants' alleged conduct and the plaintiff's purported injury. *Id.* at *15. The Third Circuit therefore agreed that the plaintiff lacked Article III standing. *Id.*[5]

The same disposition must follow here. "Although [Plaintiff's Second Amended Complaint] is replete with factual allegations and indeed asserts them with greater specificity than the [prior] Complaint, [he does] not present a plausible allegation actually linking

---

[5]     The court further noted that the "pleading standards for each of [plaintiff's] claims is secondary to the threshold issue" of standing – i.e., whether plaintiff "adequately allege[d] an injury fairly traceable to Schering's alleged misconduct." 2012 WL 1700836, at *15. In other words, whatever the CPPA may require, it cannot alleviate the Plaintiff's burden in this case to allege the minimal causal nexus required by Article III between Merck's alleged conduct and his ostensible injury.

1095028v1

[Plaintiff's] injuries to any type of miscommunication or false claim about the [Vioxx] that w[as] actually prescribed to h[im]." *Id.* at *16.  In other words, Plaintiff's new complaint states no "causal connection" between any alleged conduct by Merck and Plaintiff's alleged injury.  In particular, Plaintiff does not allege that any of Merck's alleged misrepresentations were made to *him* or to his doctor.  To be sure, Plaintiff's new complaint contains myriad new allegations regarding purported direct-to-consumer misrepresentations by Merck.  (*See* 2d Am. Compl. ¶¶ 10, 48, 58-60, 62-63, 86-88, 93, 103, 106, 127, 179.)  But none of these allegations are tied to Plaintiff *himself*.  (*See id.*)[6]

Plaintiff strains to suggest a connection to his case by alleging that "[t]he fact that Dr. Manner provided Mr. Walker with samples of Vioxx demonstrates that a Merck representative had visited Dr. Manner."  (*Id.* ¶ 151.)  This allegation comes nowhere near the mark.  For one thing, the supposition that a sales representative must have met Dr. Manner merely because the physician possessed samples is entirely speculative.  It is just as likely, or perhaps more so, that a representative visited another doctor or employee in Dr. Manner's office.  *See Schering Plough*, 2012 WL 1700836, at *14 (rejecting the plaintiff's "speculative conclusion" that her doctor was even "connected with phony trials").  And even accepting Plaintiff's speculation as truth, the allegation still falls short because there is no allegation that a Merck representative actually made any misstatement or omission either to Dr. Manner or Plaintiff himself – the very same failure that doomed the plaintiff's standing in *Schering-Plough*.

Plaintiff has also previously argued that paragraphs 181 through 184 of his proposed new complaint adequately allege a causal link between Merck's alleged conduct and himself, but he

---

[6]     Once again, *Grayson* cannot help Plaintiff out of this bind.  Although the *Grayson* plaintiff was found to have standing, it was only because he had alleged a "causal connection" between the alleged unlawful conduct of phone-card sellers and himself.  *See* 15 A.3d at 250.

is mistaken.  Plaintiff's unfounded claim is evidenced by a review of the new paragraphs on

which he relies:

> 181.    The foregoing omissions, knowing concealment, misrepresentations and practices cost Plaintiff and the Class to suffer ascertainable losses in that they purchased, and/or paid for, Vioxx without knowing the true and complete risks, dangers, disadvantages and benefits of Vioxx, in general, and specifically in comparison to alternative, and significantly less expensive NSAIDs.

> 182.    Plaintiff and the Class would not have purchased or paid for Vioxx, on the terms that they did, had they known the true and complete risks, dangers, disadvantages, and benefits of Vioxx, in general, and specifically in comparison to alternative and slightly less expensive NSAIDs.

> 183.    Defendant Merck's unlawful conduct arose, was directed by, and emanated from new Jersey, to the detriment and injury of Plaintiffs and the Class and violated D.C. Code § 28-3904 (a), (d), (e), (f), (h), (u), (w), and (x).

> 184.    As a proximate cause of Merck's violations of the D.C. Consumer Protection Procedures Act, Plaintiff and the Class suffered ascertainable losses, injuries and damages as described herein, in an amount to be determined at trial.

*None* of these paragraphs – liberally construed or otherwise – states that Merck made any

representation to *Plaintiff* or his doctor.  Thus, Plaintiff has failed to show the requisite

connection between Merck's alleged conduct and any alleged injury *he* suffered, further refuting

his claim of Article III standing.  For all of these reasons, Plaintiff's attempt at amendment is

futile.

**II.     PLAINTIFF'S NEW COMPLAINT FAILS TO SATISFY THE "CONSUMER TRANSACTION" REQUIREMENT UNDER THE CPPA.**

Even if Plaintiff's new complaint would cure the fundamental standing defect underlying

his prior complaint (and it would not), Plaintiff's claim continues to suffer from another fatal

shortcoming:  the absence of allegations capable of proving that Plaintiff ever engaged in a

"consumer transaction" with Merck.

It is well settled that the CPPA only governs conduct arising out of "consumer

transactions."  *See, e.g.*, *Shaw*, 605 F.3d at 1043 (explaining that the D.C. Court of Appeals has

restricted the CPPA to "consumer transactions"); *In re G-Fees Antitrust Litig.*, 584 F. Supp. 2d 26, 43 (D.D.C. 2008) (dismissing claims under CPPA where plaintiffs failed to adequately allege that alleged misconduct stemmed from "consumer transaction").  One consequence of this requirement is that "[t]ransactions along the distribution chain that do not involve the ultimate retail customer are not 'consumer transactions' that the Act seeks to reach."  *Adam A. Weschler & Son, Inc. v. Klank*, 561 A.2d 1003, 1005 (D.C. 1989) (distinguishing "between retail and wholesale transactions").  Thus, even a claim by a purported consumer does not involve a "consumer transaction" if it is asserted against an entity that is further up the distribution chain from the seller of the product.  *See, e.g.*, *G-Fees*, 584 F. Supp. 2d at 42-43.

In *G-Fees*, for example, the plaintiffs initiated a putative class action against various defendant mortgage companies and entities, asserting violation of various state consumer-protection laws, including the CPPA.  *Id.* at 42.  Plaintiffs alleged that Fannie Mae violated the CPPA by requiring lenders not to disclose the existence and amount of certain fees.  *Id.* However, plaintiffs failed to allege that "Fannie Mae was the final distributor of a good or service to the plaintiffs, or . . . that plaintiffs and Fannie Mae had a consumer-merchant relationship."  *Id.* at 43.  Moreover, plaintiffs did not allege that they had any direct dealings or communications with Fannie Mae.  *Id.* at 42-43.  In addition, plaintiffs did not enter into any sales agreement with the defendant.  *Id.* at 43.  As a result, the court determined that plaintiffs failed to adequately allege a consumer-merchant relationship with defendants, and the CPPA claim was dismissed.  *Id.*

The situation here is no different.  As Plaintiff's proposed Second Amended Complaint makes clear, Plaintiff did not purchase Vioxx from Merck; rather, he "usually filled his prescriptions at Morton Care Pharmacy" in the District of Columbia.  (2d Am. Compl. ¶ 152.)

17

Thus, Merck was not the final distributor of a good or service to Plaintiff or other members of the general public.  Moreover, none of Merck's transactions with regard to Vioxx "involve[d] the ultimate retail customer."  *Klank*, 561 A.2d at 1005; *cf. also, e.g.*, *White v. Wyeth*, 705 S.E.2d 828, 838 (W. Va. 2010) (declining to extend West Virginia's consumer-protection law to prescription drugs "because the consumer cannot and does not decide what product to purchase" and physician "intervention" and federal regulation "attenuate[] the effect product marketing has on a consumer's prescriptive drug purchasing decision").  Thus, just as in *G-Fees*, Plaintiff's CPPA claim is foreclosed by the fact that he did not engage in a "consumer transaction" with Merck.

In his initial opposition to Merck's motion for judgment on the pleadings, Plaintiff argued that a merchant may be held liable under the CPPA where it deceptively marketed a product "directly to consumers."  (MJP Opp'n at 15.)  Plaintiff's contention rested largely on *Williams*, a case cited by Merck in support of its standing argument.  (*Id.*)  In that case, where the plaintiffs brought suit with regard to a drug that was deceptively marketed, the court dismissed the CPPA claims for lack of standing, but declined to dismiss the case on "consumer transaction" grounds.  *Williams*, 297 F. Supp. 2d at 175, 177-78.  In so doing, the court found that the plaintiffs' allegations that the defendants had "issued brochures and a videotape directed to consumer-patients" and "engaged in persuasive sales activities vis-a-vis individual consumers" "***may have created***" the necessary "consumer-merchant relationship between Purdue and Abbott and ***the plaintiffs***."  *Id.* at 175 (emphases added).

But even if *Williams*'s musings could be read as precedential, they would be no help to Plaintiff.  Although his proposed Second Amended Complaint adds a bevy of new allegations regarding supposed direct-to-consumer advertising by Merck, these allegations do not bring ***his***

18

claim within the ambit of the CPPA because none claims that any of these purported misstatements by Merck were made *to him*.[7]  Simply put:  there is no allegation anywhere in the proposed Second Amended Complaint that Plaintiff ever saw, heard, read, or otherwise received any of Merck's alleged direct-to-consumer advertising.[8]  Absent such an allegation, the Second Amended Complaint cannot possibly be read as pleading a "consumer transaction" between *Plaintiff* and Merck.  For this reason as well, Plaintiff's CPPA claim would fail under the Second Amended Complaint too.

## CONCLUSION

For the foregoing reasons, as well as those set forth in Merck's prior briefing, Plaintiff's motion to amend should be denied.

Dated:  May 29, 2012                              Respectfully submitted,

                                                 */s/ Dorothy H. Wimberly*
                                                 Phillip A. Wittmann, 13625
                                                 Dorothy H. Wimberly, 18509
                                                 STONE PIGMAN WALTHER
                                                 WITTMANN L.L.C.
                                                 546 Carondelet Street
                                                 New Orleans, LA 70130

---

[7]     Plaintiff has previously argued that his CPPA claim falls within the holding of *Williams* because he "has alleged that he was deceived by Defendant's advertising and purchased Vioxx as a result of this deceit."  (Reply at 7 n.2) (citing 2d Am. Compl. ¶¶ 181-184.)  But as previously discussed, the new paragraphs on which Plaintiff relies are entirely conclusory and come nowhere close to stating that Merck made any representation to Plaintiff or his doctor and, thus, this argument should be rejected.

[8]     As noted above, Plaintiff's single allegation that "[t]he fact that [his doctor] provided [him] with samples of Vioxx demonstrates that a Merck representative had visited [Plaintiff's doctor]" clearly does not suffice.  (2d Am. Compl. ¶ 151.)  The allegation is speculative and in any event fails to link any representation made by Merck to Plaintiff or his doctor.  In any event, Plaintiff's sole "fact[ual]" allegation fails under Rule 9(b), which requires allegations sounding in fraud to be pled with particularity.  *See Green v. Jefferson Parish Coroner Office*, No. 05-1444 SECTION: "J", 2006 U.S. Dist. LEXIS 5901, at *8 (E.D. La. Feb. 15, 2006) ("Articulating the elements of fraud with particularity requires a plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent."); *see also Witherspoon v. Philip Morris Inc.*, 964 F. Supp. 455, 464 (D.D.C. 1997) (holding that CPPA claims must be pled with particularity where, as here, the claims "'are akin to allegations of fraud'") (citation omitted).

1095028v1

Douglas R. Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth St., N.W.
Washington, DC 20005

John H. Beisner
Jessica Davidson Miller
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
1440 New York Avenue, N.W.
Washington, DC 20005

ATTORNEYS FOR MERCK SHARP &
DOHME CORP.

1095028v1