UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: Vioxx | *   MDL Case No. 1657 |
| | * |
| PRODUCTS LIABILITY | *   SECTION L |
| LITIGATION | * |
| | *   JUDGE FALLON |
| *This document relates to* | * |
| | *   MAGISTRATE JUDGE |
| *Mary Ann Nolan v. Merck & Co., Inc.,* | *   KNOWLES |
| *2:05-cv-06146-EEF-DEK* | * |
| | * |

*************************************************************************

### DEFENDANT MERCK SHARP & DOHME CORP.'S LR56.1 STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO DISPUTE

Pursuant to LR56.1, Defendant Merck Sharp & Dohme Corp. ("Merck"), by undersigned counsel, hereby submits the following statement of material facts as to which there is no genuine issue to accompany its Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56:

1. Plaintiff Mary Ann Nolan alleges that Vioxx caused her to experience "[k]idney disease/renal failure and increased high blood pressure" in March 2004. Pl. Profile Form (attached hereto as Ex. 1) at 2; Nolan Dep. (Excerpts attached hereto as Ex. 2) at 29:5-29:11.

2. At the time of these alleged injuries, Ms. Nolan was sixty years of age. Ex. 1 at 3.

3. Ms. Nolan has suffered from severe osteoarthritis since at least 1991 or 1992; at that time she began receiving total permanent disability benefits due to her arthritis pain. Ex. 1 at 4; Ex. 2 at 18:9-21:7.

4. Ms. Nolan alleges that she took Vioxx 12.5mg twice per day or Vioxx 25mg or 50mg once per day from 1999 through March 27, 2004, when she was hospitalized for renal failure. Ex. 1 at 5; Affidavit of Juan Jorge Olivero, M.D., F.A.S.N. (attached hereto as Ex. 3) ¶

1

6; Selected Medical Records (attached hereto as Ex. 4) at 00611-12.  Medical records collected in this matter indicate that she was first prescribed Vioxx in July 1999 for her arthritis, and she took it for about eighteen months; she was again prescribed Vioxx in April or May 2002.  Ex. 3 ¶ 6; Ex. 4 at 00476; 00443; 00458.  Ms. Nolan also took Celebrex during the interim period when she was not taking Vioxx.  *See* Ex. 4 at 00435.

      5.      Ms. Nolan has a history of poorly controlled hypertension dating back to approximately 1975.  *See* Ex. 2 at 48:15-48:17, 109:1-109:17; Ex. 4 at 00200.  She took numerous medications over the years to control her hypertension, and at the time of her alleged injury in March 2004, it was being treated with Lisinopril and Hyzaar, among other medications.  Ex. 4 at 00189, 611-12.

      6.      Ms. Nolan was diagnosed with diabetes in 2003 or earlier, and had developed diabetic nephropathy by February 2004.  Ex. 2 at 155:11-155:20; Ex. 4 at 00266, 311, 418, 611-12.

      7.      On March 27, 2004, Ms. Nolan was hospitalized after experiencing chest pressure, and she was diagnosed with brachycardia and acute renal failure.  Ex. 4 at 00188-89, 611-12.  At that time, she was noted to have a history of diabetes, hypertension, and diabetic nephropathy.  *Id.* at 00188-89, 611.

      8.      Ms. Nolan alleges that she was first told that by Dr. Khaled Saleh she was having "kidney problems" a short time before this hospitalization.  Ex. 2 at 29:16-30:12, 39:13-40:6.

      9.      Ms. Nolan has testified that Dr. Wilfred Victorina took her off Vioxx at the time of her March 2004 hospitalization "because it was hurting [her] kidneys."  Ex. 2 at 33:7-34:11, 160:13-161:13.  Dr. Victorina's History and Physical report from March 27, 2004 noted "Renal

failure.  I suspect this is prerenal due to low perfusion. . . . Will also stop Vioxx." Ex. 4 at 00612.

10. Ms. Nolan has testified that when Dr. Saleh first told her she had kidney disease, he told her that she "had to really watch what medicine [she] took," and that she "wasn't allowed to take any kind of anti-inflammatory medicine." Ex. 2 at 27:14-28:2.

11. Ms. Nolan has also testified that once she was diagnosed with kidney disease, her "blood pressure started going higher." Ex. 2 at 29:8-29:11.

12. On September 27, 2005, Ms. Nolan filed suit against Merck in the Harlan County Kentucky Circuit Court, seeking "to recover damages for personal injuries sustained after ingesting Vioxx." Compl. (attached hereto as Ex. 5) ¶ 1.

13. In 2008, Ms. Nolan enrolled her claim in the Vioxx Resolution Program, alleging that Vioxx had caused her to suffer a myocardial infarction ("MI") (commonly referred to as a heart attack) on March 1, 2004.  *See* Nolan Claims Form (attached hereto as Ex. 6) at 2.

14. After it was determined that Ms. Nolan's claims failed to meet the Vioxx Resolution Program's eligibility requirements for settlement, she then opted to execute a notarized "Future Evidence Stipulation," exit the Resolution Program, and resume her lawsuit in this Court, in accordance with the terms of the Master Settlement Agreement (which governs the Vioxx Resolution Program).  *See* Master Settlement Agreement § 2.7.3; Nolan Future Evidence Stipulation (attached hereto as Ex. 7).

15. Vioxx is a nonsteroidal anti-inflammatory medication ("NSAID") that was approved by the FDA to treat, among other things, osteoarthritis.  FDA Approval Letter and initial Vioxx Package Insert (attached hereto as Ex. 8) at MRK-99420021411.

3

16. NSAIDs like Vioxx have long been known to be associated with both renal complications and hypertension. Ex. 3 ¶¶5, 27.

17. Throughout the time that Vioxx was available for use in the United States from May 1999 to September 2004, each version of its FDA-approved product labeling contained detailed information about the potential for renal injury and hypertension with Vioxx use. Ex. 3 ¶¶27-31.

18. In the original May 1999 FDA-approved Vioxx package insert, the PRECAUTIONS section stated:

> *Renal Effects*
>
> Long-term administration of NSAIDs has resulted in renal papillary necrosis and other renal injury. Renal toxicity has also been seen in patients in whom renal prostaglandins have a compensatory role in the maintenance of renal perfusion. In these patients, administration of a nonsteroidal anti-inflammatory drug may cause a dose-dependent reduction in prostaglandin formation and, secondarily, in renal blood flow, which may precipitate overt renal decompensation. Patients at greatest risk of this reaction are those with impaired renal function, heart failure, liver dysfunction, those taking diuretics and ACE inhibitors, and the elderly. Discontinuation of NSAID therapy is usually followed by recovery to the pretreatment state. Clinical trials with VIOXX at daily doses of 12.5 and 25 mg have shown renal effects (e.g., hypertension, edema) similar to those observed with comparator NSAIDs; these occur with an increased frequency with chronic use of VIOXX at doses above the 12.5 to 25 mg range. (See ADVERSE REACTIONS.)
>
> Caution should be used when initiating treatment with VIOXX in patients with considerable dehydration. It is advisable to rehydrate patients first and then start therapy with VIOXX. Caution is also recommended in patients with pre-existing kidney disease (see WARNINGS, Advanced Renal Disease).

Ex. 8 at MRK-99420021424.

19. The ADVERSE REACTIONS section of the March 2000 FDA-approved Vioxx package insert stated:

4

1095473v1

> The following serious adverse events have been reported rarely (estimated <0.1%) in patients taking VIOXX, regardless of causality. Cases reported only in the post-marketing experience are indicated in italics. . . .
>
> *Urogenital System: acute renal failure*, breast malignant neoplasm, *interstitial nephritis*, prostatic malignant neoplasm, urolithiasis, *worsening chronic renal failure.*

March 2000 Vioxx package insert (attached hereto as Ex. 9) at MRK-LBL0000042.

20. The original Vioxx Patient Information Sheet provided to patients and appended to the physician prescribing information stated:

> **What are the possible side effects of VIOXX?**
>
> Serious but rare side effects that have been reported in patients taking VIOXX and/or related medicines have included: . . .
>
> - Serious kidney problems occur rarely in patients taking NSAIDs. . . .

October 1999 Vioxx Patient Information Sheet (attached hereto as Ex. 10) at MRK-LBL0000001.

21. The March 2000 Vioxx Patient Information Sheet provided to patients and appended to the physician prescribing information stated:

> **What are the possible side effects of VIOXX?**
>
> Serious but rare side effects that have been reported in patients taking VIOXX and/or related medicines have included: . . .
>
> - Serious kidney problems occur rarely, including acute kidney failure and worsening of chronic kidney failure. . . .

March 2000 Vioxx Patient Information Sheet (attached hereto as Ex. 11) at MRK-LBL0000003.

22. The PRECAUTIONS section of the May 1999 Vioxx package insert stated:

> VIOXX should be used with caution, and should be introduced at the lowest recommended dose, in patients with fluid retention, hypertension, or heart failure.

Ex. 8 at MRK-99420021425.

23. In the ADVERSE REACTIONS section of the May 1999 Vioxx package insert, hypertension was listed in a table of adverse events occurring in at least 2% of patients receiving Vioxx in nine controlled studies conducted in patients with osteoarthritis. In this table, hypertension was reported more frequently among patients taking Vioxx than patients taking placebo or other NSAIDs (3.5 for Vioxx 12.5 or 25 mg daily vs. 1.3 for placebo, 3.0 for ibuprofen 2400 mg daily, and 1.6 for diclofenac 150 mg daily). Ex. 8 at MRK-99420021430. This section also stated that the general safety profile of Vioxx 50 mg daily in osteoarthritis clinical trials of up to 6 months was similar to that of Vioxx at the doses of 12.5 and 25 mg daily, "except for a higher incidence of . . . hypertension (8.2%)." Ex. 8 at MRK-99420021431.

24. The PRECAUTIONS section of the April 2002 FDA-approved Vioxx package insert, the PRECAUTIONS section stated:

> *Fluid Retention, Edema, and Hypertension*
>
> Fluid retention, edema and hypertension have been reported in some patients taking VIOXX. In clinical trials of VIOXX at daily doses of 25 mg in patients with rheumatoid arthritis the incidence of hypertension was twice as high in patients treated with VIOXX as compared to patients treated with naproxen 1000 mg daily. Clinical trials with VIOXX at daily doses of 12.5 and 25 mg in patients with osteoarthritis have shown effects on hypertension and edema similar to those observed with comparator NSAIDs; these occurred with an increased frequency with chronic use of VIOXX at daily doses of 50 mg. (See ADVERSE REACTIONS.) VIOXX should be used with caution, and should be introduced at the lowest recommended dose in patients with fluid retention, hypertension, or heart failure.

Apr. 2002 Vioxx Package Insert (attached hereto as Ex. 12) at MRK-LBL0000065

25. The ADVERSE REACTIONS section of the April 2002 Vioxx package insert stated:

> . . .

6

1095473v1

*Rheumatoid Arthritis*

. . . In studies of at least three months, the incidence of hypertension in RA patients receiving the 25 mg once daily dose of VIOXX was 10.0% and the incidence of hypertension in patients receiving naproxen 500mg twice daily was 4.7%.

Ex. 12 at MRK-LBL0000066.

26. The 1999 Vioxx Patient Information Sheet stated

More common, but less serious side effects reported with VIOXX have included the following: . . .

High Blood Pressure . . .

These side effects were reported in at least 2% of osteoarthritis patients receiving daily doses of VIOXX 12.5 mg to 25 mg in clinical studies.

Ex. 10 at MRK-LBL0000002.

27. The April 2002 Vioxx Patient Information Sheet stated: "the following side effects have been reported: . . . severe increase in blood pressure . . . ." Apr. 2002 Vioxx Patient Information Sheet (attached hereto as Ex. 13) at MRK-LBL0000014.

28. Ms. Nolan testified that she recalls receiving a "pamphlet" from her pharmacy along with her prescription for Vioxx, and she also recalls reading "some of the side effects" listed in that pamphlet. Ex. 2 at at 55:17-57:6. She also testified that kidney problems "might have" been among the side effects that she read about. *Id.* at 57:4-57:6.

29. On her Plaintiff Profile Form, Ms. Nolan stated that she received a "pamphlet attached to [her] pharmacy receipt which outlines the required information related to the medication as required by the FDA or other governmental agency, regulatory commission or statute." Ex. 1 at 5-6.

Dated: June 4, 2012

Respectfully submitted,

 */s/ Dorothy H. Wimberly*
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana 70130
Phone: 504-581-3200
Fax:    504-581-3361

Defendants' Liaison Counsel

—and—

Douglas R. Marvin
Eva Petko Esber
M. Elaine Horn
Emily Renshaw Pistilli
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Phone: 202-434-5000
Fax:    202-434-5029

Attorneys for Merck & Co., Inc.

1095473v1

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Statement of Material Facts has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail, upon Liaison Counsel Ann Oldfather by e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8C, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 4th day of June, 2012.

                                                                           */s/ Dorothy H. Wimberly*
                                                                           Dorothy H. Wimberly, 18509
                                                                           STONE PIGMAN WALTHER WITTMANN L.L.C.
                                                                           546 Carondelet Street
                                                                           New Orleans, Louisiana  70130
                                                                           Phone:  504-581-3200
                                                                           Fax:     504-581-3361
                                                                           dwimberly@stonepigman.com
                                                                           Defendants' Liaison Counsel

1095473v1