# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

|                                              |     |                        |
|----------------------------------------------|-----|------------------------|
|                                              | :   | **MDL NO. 1657**       |
| **IN RE: VIOXX**                             | :   |                        |
| **PRODUCTS LIABILITY LITIGATION**            | :   | **SECTION: L**         |
|                                              | :   |                        |
|                                              | :   | **JUDGE FALLON**       |
|                                              | :   | **MAG. JUDGE KNOWLES** |

.. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. :

**THIS DOCUMENT RELATES TO:** *Walter J. Roach v. Merck & Co., Inc.*, Case No. 10-868

## ORDER & REASONS

The Court has pending before it Merck's motion for summary judgment with respect to the case filed by Walter J. Roach as administrator for the estate of Joanne I. Roach. (Rec. Doc. 63868). The Court has reviewed the briefs and the applicable law and now issues this Order and Reasons.

## I.      Background

To put this matter in perspective, a brief review of this litigation is appropriate. This multidistrict products liability litigation involves the prescription drug Vioxx, known generically as Rofecoxib. Merck, a New Jersey corporation, researched, designed, manufactured, marketed and distributed Vioxx to relieve pain and inflammation resulting from osteoarthritis, rheumatoid arthritis, menstrual pain, and migraine headaches. On May 20, 1999, the Food and Drug Administration approved Vioxx for sale in the United States. Vioxx remained publicly available until September 30, 2004, when Merck withdrew it from the market after data from a clinical

trial known as APPROVe indicated that the use of Vioxx increased the risk of cardiovascular thrombotic events such as myocardial infarction (heart attack) and ischemic stroke. Thereafter, thousands of individual suits and numerous class actions were filed against Merck in state and federal courts throughout the country alleging various products liability, tort, fraud, and warranty claims. On November 9, 2007, after extensive discovery, pretrial proceedings, and a number of bellwether trials, the parties announced a $4.85 billion Master Settlement Agreement that eventually resolved over 99% of Vioxx claims.

This remaining personal injury case arises from the allegedly wrongful death of decedent Joanne I. Roach. The material facts are few and not genuinely disputed.[1] Ms. Roach, who resided in Streator, Illinois, began taking Vioxx in 2001 and suffered a stroke on November 22, 2001. (Complt. at ¶¶ 2, 5-6). Her condition deteriorated until she passed away on April 8, 2004. *Id.* at ¶ 7. Mr. Roach ("Plaintiff") filed suit on behalf of her estate in Illinois state court on November 12, 2009, over five years after Vioxx was withdrawn from the market.[2] Plaintiff alleges that he was not prompted to investigate the possibility that Vioxx contributed to Ms. Roach's death until he saw media coverage of the litigation on July 1, 2008. *Id.* at ¶ 8. The Complaint alleges one count of wrongful death and also that Merck concealed the risks of Vioxx.

---

[1]Plaintiff did not comply with Local Rule 56.2 by filing a "separate and concise statement of the material facts which the opponent contends present a genuine issue" in response to Merck's statement. According to Local Rule 56.2, the facts in Merck's statement not controverted by Plaintiff are "deemed admitted, for purposes of the motion." However, the material facts are also conceded by Plaintiff in his memorandum in opposition and the Court need not apply Rule 56.2 to resolve the matter.

[2]According to the Complaint, Plaintiff attempted to enroll in the Settlement Program before this date, but no suit was pending and no tolling agreement was in place at any time before November 12, 2009.

*Id.* at ¶¶ 18, 27-54.  The case was removed to federal court and transferred to this MDL Court.

Merck now moves for summary judgment on the basis that suit was not timely filed under any potentially applicable Illinois statutes of limitations.  Merck relies on this Court's prior holding that "the national and local media coverage of the withdrawal of Vioxx from the market were sufficient to put" an Illinois plaintiff "on notice of a potential link between his injuries and the use of Vioxx," such that "at the very latest, Illinois' two-year statute of limitations began to run on September 30, 2004."  *In re Vioxx Prods. Liab. Litig.*, 522 F. Supp. 2d 799, 814 (E.D. La. 2007).  Accordingly, Merck contends that Plaintiff's claim for wrongful death, subject to a two-year statute of limitations, or fraudulent concealment, subject to a potential five-year statute of limitations, are untimely because they were brought in a state-court proceeding filed more than five years after Vioxx was withdrawn from the market and Plaintiff should have realized the existence of a claim against Merck.

In opposition, Plaintiff argues that Illinois's discovery rule preserves the claims because as a layperson he should not be charged with knowledge of a complicated pharmaceutical product liability claim merely upon withdrawal of that drug from the market.  Mr. Roach asserts that he did not realize the possibility that Vioxx caused Joanne Roach's death until July 1, 2008, when he read a Wall Street Journal article regarding the Vioxx Settlement Program then under supervision before this Court and that his suit is timely under these facts.

## II.    Law and Analysis

## A.    Summary Judgment Standard

Summary judgment is appropriate if the moving party can show "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a).  Under Federal Rule of Civil Procedure 56(c), the moving party bears the initial

burden of "informing the district court of the basis for its motion, and identifying those portions

of [the record] which it believes demonstrate the absence of a genuine issue of material fact."

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  When the moving party has met its Rule

56(c) burden, the nonmovant cannot survive a motion for summary judgment by resting on the

mere allegations of its pleadings.  *See Prejean v. Foster*, 227 F.3d 504, 508 (5th Cir. 2000).

"The mere existence of a scintilla of evidence in support of the plaintiff's position will be

insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."

*Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 253 (1986).  In deciding a summary judgment

motion, the court reviews the facts drawing all reasonable inferences in the light most favorable

to the nonmovant.  *Id*. at 255.

**B.      Applicable Illinois Statutes of Limitation**

        The parties agree that Illinois law governs this Illinois Plaintiff's claims.  Under Illinois

law, a wrongful death action must be brought within two years of the decedent's death (provided

that the claim is not already time-barred by the time of the decedent's death, which Merck

assumes to be the case for the purposes of this motion).  *E.g.*, *Beetle v. Wal-Mart Assocs., Inc.*,

761 N.E. 2d 364, 369 (Ill. App. Ct. 2001).  Illinois also has a discovery rule:

> Under Illinois' discovery rule, the running of the limitations period commences
> when a plaintiff possesses sufficient information concerning his injury and its
> cause to put a reasonable person on inquiry to determine whether actionable
> conduct is involved.

*In re Vioxx*, 522 F. Supp. 2d at 813 (quotation omitted).  The discovery rule requires a plaintiff to

exercise reasonable diligence to seek out the cause of his or her injury.  *E.g.*, *Newell v. Newell*,

942 N.E.2d 776, 781 (Ill. Ct. App. 2011); *Carey v. Kerr-McGee Chem. Corp.*, 999 F. Supp.

1109, 1116 (N.D. Ill. 1998) ("The rule places the burden on plaintiffs to inquire as to the existence of a cause of action.").

Illinois also has a fraudulent concealment statute providing that "[i]f a person liable to an action fraudulently conceals the cause of such action from the knowledge of the person entitled thereto, the action may be commenced at any time within 5 years after the person entitled to bring the same discovers that he or she has such cause of action, and not afterwards." 735 Ill. Comp. Stat. 5/13-215. "[C]oncealment, as contemplated by section 13-215, must consist of affirmative acts or representations calculated to lull or induce a claimant into delaying filing of his or her claim, or to prevent a claimant from discovering a claim." *Hanks v. Cotler*, 959 N.E.2d 728, 737 (Ill. Ct. App. 2011). But after "a plaintiff discovers, or should have discovered through ordinary diligence, a cause of action, section 13-215 will not extend that period." *Id.*; *see also Muskat v. Sternberg*, 570 N.E.2d 696, 701 (Ill. 1991) ("If at the time the plaintiff discovers the fraudulent concealment a reasonable time remains within the applicable statute of limitations, section 13-215 of the Limitations Act does not toll the running of the limitation period.") (quotation and alteration omitted). "[F]raudulent concealment does not excuse a plaintiff's lack of diligence." *McCool v. Strat Oil. Co.*, 972 F.2d 1452, 1461 n.8 (7th Cir. 1992).

## C.     Analysis

The Court has previously examined the Illinois statutes of limitation and discovery rule in the context of a Vioxx personal injury claim. On November 8, 2007, the Court issued an Order and Reasons addressing a motion for summary judgment on statute of limitations grounds with respect to Pennsylvania, Puerto Rico, and Illinois plaintiffs. *In re Vioxx*, 522 F. Supp. 2d at

801.  The Court concluded at that time that "the highly publicized withdrawal of Vioxx from the market on September 30, 2004 and the immediate media blitz that followed linking Vioxx use to increased cardiovascular risks gave ample notice to potential claimants and triggered the applicable statutes of limitations."  *Id.*  The Illinois plaintiff asserted personal injury claims under a variety of legal theories subject to a two-year statute of limitations.  *Id.* at 813.  The Court held that "at the very latest, Illinois' two-year statute of limitations began to run on September 30, 2004," because for the purposes of the Illinois discovery rule, "[b]oth the national and local media coverage of the withdrawal of Vioxx from the market were sufficient to put the plaintiff on notice of a potential link between his alleged injuries and the use of Vioxx."  *Id.* at 814.  Moreover, September 30, 2004 also marked the date "beyond which Merck cannot be said to have concealed" a plaintiff's cause of action for injury caused by Vioxx.  *See id.*

Plaintiff does not identify any legal error in the Court's reasoning or articulate any factual difference distinguishing this case from the prior Order and Reasons.  Plaintiff primarily argues that he did not actually become aware of Vioxx-related litigation issues until July 1, 2008, but actual notice is not the test under Illinois law.  In the alternative, Plaintiff suggests a scattershot variety of reasons why the statute of limitations did not begin to run on September 30, 2004 and why the November 12, 2009 suit was timely.

First, Plaintiff argues that the statute of limitations did not begin to run on September 30, 2004 because the withdrawal of Vioxx from the marketplace "was not accompanied by any admission of the dangerous propensities of Vioxx," and thus did not put him on notice of a claim.  *Id.* at 13-14.  But "[t]he discovery rule does not allow a plaintiff to wait until the defendant admits it has caused plaintiff's damage."  *Carey*, 999 F. Supp. at 1116.  Plaintiff

would prefer that the "the burden to warn should shift to the drug company to inform the particular user of a defective drug of the dangerous propensities of the drug ... and the harm it could cause," and that the discovery rule should not be triggered until the defendant makes those disclosures. (Rec. Doc. 63864-1 at 17-18). That argument is certainly audacious, but it is wholly unsupported by the law and ignores Plaintiff's own duty of diligence under the Illinois discovery rule. Plaintiff also argues that the discovery rule should be applied with substantial leeway because it "is an unfair burden to be placed on the prospective plaintiff, exploring facts and attempting to discover esoteric medical information to determine whether or not a cause of action exists and originates with Vioxx use." (Rec. Doc. 63864-1 at 12).[3] That is the burden under Illinois law and it applies with equal force to all plaintiffs.

Second, Plaintiff argues that because he attempted to enroll in the Vioxx Settlement Program on July 1, 2008, his claim should be tolled with the benefit of the five-year fraudulent concealment claim. Assuming for the sake of argument that Plaintiff's defective and rejected submission to the Program could in some way toll the statute of limitations, Plaintiff's suit was still untimely. The five-year statute for fraudulent concealment does not extend the otherwise applicable statute of limitations "where a reasonable amount of time remains in the applicable limitations or repose period when a plaintiff discovers, or should have discovered through ordinary diligence, a cause of action." *Hanks*, 959 N.E.2d at 737; *see also Muskat*, 570 N.E.2d at 701 ("If at the time the plaintiff discovers the fraudulent concealment a reasonable time

_____

[3]Plaintiff also makes the creative argument that it if a juror cannot conclude that a drug caused an injury without the benefit of expert testimony, then a plaintiff should not be charged with realizing the existence of a claim on the basis of public notice of withdrawal of a drug due to cardiovascular risks. Suffice it to say, this argument compares apples to elephants and is not supported by any authority.

remains within the applicable statute of limitations, section 13-215 of the Limitations Act does not toll the running of the limitation period.") (quotation and alteration omitted). As the Court previously held, September 30, 2004 is "the date on which both (i) the plaintiff acquired sufficient information concerning Vioxx to determine whether actionable conduct was involved in his injury, and (ii) beyond which Merck cannot be said to have concealed his cause of action)." 522 F. Supp. 2d at 814. Thus, on September 30, 2004, the two-year wrongful death statute of limitations began to run *and* Plaintiff lost the protection of the fraudulent concealment statute. Plaintiff had a full two years from that date to file this wrongful death action after September 30, 2004 and any conduct after September 30, 2006, is irrelevant to the analysis.

To sum up, the two-year statute of limitations on Plaintiff's wrongful death action began to run on September 30, 2004, when Merck removed Vioxx from the market in the midst of substantial national and local media coverage. Plaintiff filed suit on November 12, 2009, over five years later. Plaintiff's suit was not timely under any conceivable construction of the discovery rule and the relevant statutes of limitation.

## IV.  CONCLUSION

For the foregoing reasons, IT IS ORDERED that Merck's Motion for leave to file a reply brief (Rec. Doc. 63868) and motion for summary judgment (Rec. Doc. 63776) are GRANTED. Plaintiff's claims are DISMISSED WITH PREJUDICE.

New Orleans, Louisiana, this 5th day of June, 2012.

_____
  UNITED STATES DISTRICT JUDGE