## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Vioxx | * | MDL Case No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| *This document relates to* | * | |
| | * | MAGISTRATE JUDGE KNOWLES |
| *Mary Ann Nolan v. Merck & Co., Inc.,* | * | |
| *2:05-cv-06146-EEF-DEK* | * | |
| | * | |
| | * | |
| | * | |

**************************************************************************

### DEFENDANT MERCK SHARP & DOHME CORP.'S MOTION FOR SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW

Defendant Merck Sharp & Dohme Corp. ("Merck") respectfully requests that the Court enter summary judgment pursuant to Federal Rule of Civil Procedure 56 in its favor on all of Plaintiff's claims. Plaintiff Mary Ann Nolan claims that in March 2004, Vioxx caused her to experience renal failure and elevated blood pressure. *See* Ex. 1 (Am. Pl. Profile Form) at 2.[1] It is beyond dispute, however, that the Vioxx prescription labeling expressly warned of the potential risks of those events. Thus, Ms. Nolan's failure-to-warn claims are barred as a matter of law. Moreover, Ms. Nolan admits (and medical records document) that at the time that the March 2004 events occurred, her physicians attributed them to Vioxx. Yet, she did not file this suit until six-months *after* the relevant one-year statute of limitations period had lapsed. For these reasons, summary judgment should be entered dismissing all of Ms. Nolan's claims.

---

[1] All exhibits referenced herein are attached to Defendant's Statement of Material Facts As To Which There Is No Dispute, filed contemporaneously with this Motion.

1095475v1

## BACKGROUND

*Plaintiff Nolan's Relevant Medical History*

Plaintiff Nolan alleges that in March 2004, Vioxx caused her to experience "[k]idney disease/renal failure and increased high blood pressure." Ex. 1 at 2; *see also* Ex. 2 (Excerpts from Deposition of Mary Ann Nolan) at 29:5-29:11. At the time of this alleged injury, Ms. Nolan was sixty years of age. Ex. 1 at 3. She had suffered from severe osteoarthritis since at least 1991 or 1992, when she began receiving total permanent disability benefits due to her arthritis pain. Ex. 1 at 4; Ex. 2 at 18:9-21:7. She alleges that she took Vioxx 12.5mg twice per day or Vioxx 25mg or 50mg once per day from 1999 through March 27, 2004, when she was hospitalized for renal failure. Ex. 1 at 5; Ex. 3 (Affidavit of Juan Jorge Olivero, M.D., F.A.S.N.) ¶ 6; Ex. 4 (Selected Medical Records) at 00611-12. Medical records collected in this matter indicate that she was first prescribed Vioxx in July 1999 for her arthritis, and she took it for about eighteen months; she was again prescribed Vioxx in April or May 2002.[2] Ex. 3 ¶ 6; Ex. 4 at 00476; 00443; 00458.

Prior to ever taking Vioxx, Ms. Nolan had an extensive history of poorly controlled hypertension dating back to approximately 1975. *See* Ex. 2 at 48:15-48:17, 109:1-109:17; Ex. 4 at 00200. She took numerous medications over the years to control her hypertension, and at the time of her alleged injury in March 2004, she was being treated with Lisinopril (an angiotensin converting enzyme, or "ACE," inhibitor) and Hyzaar (a diuretic combined with an angiotensin receptor blocker, or "ARB"), among other medications. Ex. 4 at 00189, 611-12. Ms. Nolan was also diagnosed with diabetes in 2003 or earlier, and had developed diabetic nephropathy by February 2004. Ex. 2 at 155:11-155:20; Ex. 4 at 00266, 311, 418, 611-12.

---

[2] Ms. Nolan also took other NSAIDs, such as Celebrex, around this timeframe. *See* Ex. 4 at 00435.

On March 27, 2004, Ms. Nolan was hospitalized after experiencing chest pressure, and she was diagnosed with brachycardia[3] and acute renal failure. Ex. 4 at 00188-89, 611-12. At that time, she was noted to have a history of diabetes, hypertension, and diabetic nephropathy. *Id.* at 00188-89, 611. According to Ms. Nolan, her doctors linked her renal failure to her Vioxx usage from the outset: At her deposition, she testified that Dr. Wilfred Victorina took her off Vioxx at the time of her March 2004 hospitalization "because it was hurting [her] kidneys." Ex. 2 at 33:7-34:11, 160:13-161:13. Dr. Victorina's History and Physical report from March 27, 2004 noted "Renal failure. I suspect this is prerenal due to low perfusion. . . . Will also stop Vioxx." Ex. 4 at 00612. In addition, Ms. Nolan alleges that, a short time before the March 27 hospitalization, Dr. Khaled Saleh told her that she was having "kidney problems"; that she "had to really watch what medicine [she] took"; and that she "wasn't allowed to take any kind of anti-inflammatory medicine." Ex. 2 at 27:14-28:2; 29:16-30:12, 39:13-40:6. Ms. Nolan also claims that, once she was diagnosed with kidney disease, her "blood pressure started going higher." *Id.* at 29:8-29:11.

On September 27, 2005, Ms. Nolan filed suit against Merck in the Harlan County Kentucky Circuit Court, seeking "to recover damages for personal injuries sustained after ingesting Vioxx." Ex. 5 (Compl.) ¶ 1. This action was subsequently removed to the U.S. District Court for the Eastern District of Kentucky, and then transferred into the Vioxx Multidistrict Litigation before this Court.[4]

---

[3] Ms. Nolan does not claim that this brachycardia resulted from her Vioxx use. She has limited her alleged injuries to "[k]idney disease/renal failure and increased high blood pressure." *See* Ex. 1 at 2; Ex. 2 at 29:5-29:11.

[4] Ms. Nolan enrolled her claim in the Vioxx Resolution Program, alleging that Vioxx had caused her to suffer a myocardial infarction ("MI") (commonly referred to as a heart attack) on March 1, 2004. *See* Ex. 6 (Nolan Claims Form) at 2. In support of her claim, she submitted her Amended Plaintiff Profile Form that identified her alleged injuries as

3

***Vioxx Label:  Risk Information Regarding Renal Injuries and Hypertension***

Vioxx is a nonsteroidal anti-inflammatory medication ("NSAID") that was approved by the FDA to treat, among other things, osteoarthritis.  Ex. 8 (FDA Approval Letter and initial Vioxx Package Insert) at MRK-99420021411.  NSAIDs like Vioxx have long been known to be associated with both renal complications and hypertension. Ex. 3 ¶¶5, 27.  Consistent with this common medical knowledge, throughout the time that Vioxx was available for use in the United States from May 1999 to September 2004, each version of its FDA-approved product labeling contained detailed information about the potential for renal injury and hypertension with Vioxx use.  Ex. 3 ¶¶27-31.

### Risks of Renal Problems

The initial Vioxx prescribing information, approved by the FDA in May 1999, contained a discussion of "*Renal Effects*" in its PRECAUTIONS section, which cautioned that

> ***Long-term administration of NSAIDs has resulted in renal papillary necrosis and other renal injury.*** Renal toxicity has also been seen in patients in whom renal prostaglandins have a compensatory role in the maintenance of renal perfusion. In these patients, administration of a nonsteroidal anti-inflammatory drug may cause a dose-dependent reduction in prostaglandin formation and, secondarily, in renal blood flow, ***which may precipitate overt renal decompensation***. ***Patients at greatest risk of this reaction are those with impaired renal function, heart failure, liver dysfunction, those taking diuretics and ACE inhibitors, and the elderly.*** Discontinuation of NSAID therapy is usually followed by recovery to the pretreatment state. Clinical trials with VIOXX at daily doses of 12.5 and 25 mg have shown renal effects (e.g., hypertension, edema) similar to those observed with comparator NSAIDs; these occur with an increased frequency with chronic use

---

"[k]idney disease/renal failure and increased high blood pressure."  *See* Ex. 1 at 2.  Ms. Nolan's claims ultimately failed to meet the Program's eligibility requirements for settlement, and she then opted to execute a notarized "Future Evidence Stipulation," exit the Resolution Program, and resume her lawsuit in this Court.  *See* Master Settlement Agreement § 2.7.3; Ex. 7 (Nolan Future Evidence Stipulation).

4

> of VIOXX at doses above the 12.5 to 25 mg range. (See
> ADVERSE REACTIONS.)

Ex. 8 at MRK-99420021424 (emphasis added); Ex. 3 ¶27.

In March of 2000, the Vioxx prescribing information was updated to include the renal complications of "acute renal failure," "interstitial nephritis," and "worsening chronic renal failure" in the ADVERSE REACTIONS section as serious adverse events reported rarely in patients taking Vioxx, regardless of causality. Ex. 9 (Mar. 2000 Vioxx Package Insert) at MRK-LBL0000042; Ex. 3 ¶28. Each version of the Vioxx prescribing information from 1999 through September 2004 discussed potential renal complications in detail. *See* Ex. 3 ¶¶27-31.

Likewise, the Patient Information Sheet, provided to patients and appended to the physician prescribing information, highlighted the potential risk of renal complications with Vioxx. The initial Patient Information Sheet from 1999 stated:

> **What are the possible side effects of VIOXX?**
>
> Serious but rare side effects that have been reported in patients taking VIOXX and/or related medicines have included: . . .
>
> - Serious kidney problems occur rarely in patients taking NSAIDs. . . .

Ex. 10 (Oct. 1999 Vioxx Patient Information Sheet) at MRK-LBL0000001. This language was updated in a new Patient Information Sheet issued in March 2000: "Serious kidney problems occur rarely, *including acute kidney failure and worsening of chronic kidney failure.*" Ex. 11 (Mar. 2000 Vioxx Patient Information Sheet) at MRK-LBL0000003 (emphasis added).

### *Risks of Hypertension*

The initial Vioxx prescribing information from May 1999 also discussed the well-known risks of hypertension with the use of all NSAIDs, including Vioxx. The PRECAUTIONS section of the May 1999 label cautioned that Vioxx "should be used with caution, and should be

5

introduced at the lowest recommended dose in patients with . . . hypertension . . . ." Ex. 8 at MRK-99420021425; Ex. 3 ¶27.  Moreover, the *"Renal Effects"* section of the 1999 label's PRECAUTIONS section, as quoted above, stated that

> Clinical trials with VIOXX at daily doses of 12.5 and 25 mg have shown renal effects *(e.g., hypertension*, edema) similar to those observed with comparator NSAIDs; ***these occur with an increased frequency with chronic use of VIOXX at doses above the 12.5 to 25 mg range.***

Ex. 8 at MRK-99420021424 (emphasis added); Ex. 3 ¶27.  In the ADVERSE REACTIONS section of that label, hypertension was listed in a table of adverse events occurring in at least 2% of patients receiving Vioxx in nine controlled studies conducted in patients with osteoarthritis.  In this table, hypertension was reported more frequently among patients taking Vioxx than patients taking placebo or other NSAIDs.  Ex. 8 at MRK-99420021430; Ex. 3 ¶27.  This section also stated that the general safety profile of Vioxx 50 mg daily in osteoarthritis clinical trials of up to 6 months was similar to that of Vioxx at the doses of 12.5 and 25 mg daily, "except for a higher incidence of . . . hypertension (8.2%)."  Ex. 8 at MRK-99420021431; Ex. 3 ¶27.

In April 2002, the PRECAUTIONS section of the Vioxx prescribing information was updated to include additional information about the risks of hypertension with Vioxx usage.  Under the heading *"Fluid Retention, Edema, and Hypertension,"* that label cautioned that

> Fluid retention, edema and hypertension have been reported in some patients taking VIOXX.  In clinical trials of VIOXX at daily doses of 25 mg in patients with rheumatoid arthritis the incidence of hypertension was twice as high in patients treated with VIOXX as compared to patients treated with naproxen 1000 mg daily.  Clinical trials with VIOXX at daily doses of 12.5 and 25 mg in patients with osteoarthritis have shown effects on hypertension and edema similar to those observed with comparator NSAIDs; these occurred with an increased frequency with chronic use of VIOXX at daily doses of 50 mg. (See ADVERSE REACTIONS.) VIOXX should be used with caution, and should be introduced at the lowest recommended dose in patients with fluid retention, hypertension, or heart failure.

6

Ex. 12 (Apr. 2002 Vioxx Package Insert) at MRK-LBL0000065; Ex. 3 ¶29.  The ADVERSE REACTIONS section of that label was also updated to include additional information about hypertension.  Under "Rheumatoid Arthritis," it stated:

> . . .  In studies of at least three months, the incidence of hypertension in RA patients receiving the 25 mg once daily dose of VIOXX was 10.0% and the incidence of hypertension in patients receiving naproxen 500mg twice daily was 4.7%.

Ex. 12 at MRK-LBL0000066; Ex. 3 ¶29.

The risk for hypertension with Vioxx use was also highlighted in the Vioxx Patient Information Sheet from 1999 onward.  The 1999 Patient Information Sheet stated

> More common, but less serious side effects reported with VIOXX have included the following: . . .
>
> High Blood Pressure . . .
>
> These side effects were reported in at least 2% of osteoarthritis patients receiving daily doses of VIOXX 12.5 mg to 25 mg in clinical studies.

Ex. 10 at MRK-LBL0000002.  The Patient Information Sheet was updated in April 2002 to state that "the following side effects have been reported: . . . severe increase in blood pressure . . . ." Ex. 13 (Apr. 2002 Vioxx Patient Information Sheet) at MRK-LBL0000014.

Ms. Nolan recalls receiving a "pamphlet" from her pharmacy along with her prescription for Vioxx, and she also recalls reading "some of the side effects" listed in that pamphlet.  Ex. 2 at at 55:17-57:6.  (She testified that kidney problems "might have" been among the side effects that she read about.  *Id.* at 57:4-57:6.)  On her Plaintiff Profile Form, Ms. Nolan states that she received a "pamphlet attached to [her] pharmacy receipt which outlines the required information related to the medication as required by the FDA or other governmental agency, regulatory commission or statute." Ex. 1 at 5-6.

7

**LEGAL STANDARD**

Summary judgment should be granted whenever it becomes apparent that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Summary judgment "is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the . . . Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (*quoting* Fed. R. Civ. P. 1). A party moving for summary judgment may discharge its burden to support the motion "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. The burden of production then shifts to the nonmoving party to introduce specific facts showing there is a genuine issue for trial. *Id.* at 322-24; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Bland v. Norfolk & S. R. Co.*, 406 F. 2d 863, 866 (4th Cir. 1969) ("[A]n adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in [Fed. R. Civ. P. 56], must set forth specific facts showing that there is a genuine issue for trial."). "The issue of whether a suit is time-barred is a question of law, which properly may be resolved at the summary judgment stage," so long as "there are no genuine issues of material fact in dispute." *In re Vioxx Prods. Liab. Litig.*, 522 F. Supp. 2d 799, 804 (E.D. La. 2007) (quoting *In re Minn. Mut. Life Ins. Co. Sales Practices Litig.*, 346 F.3d 830, 835 (8th Cir. 2003)).

**ARGUMENT**

**I.     Ms. Nolan Has No Failure-to-Warn Claim Against Merck Because Every Vioxx Label Plainly Stated the Risks of Renal Injury and Hypertension.**

Plaintiff Nolan alleges that she suffered personal injuries because Merck failed to warn

8

her prescribing physicians about the potential risk of renal and hypertension side effects associated with Vioxx. *See* Ex. 4 ¶¶ 17, 22, 25, 28, 29, 33. Yet there can be no dispute that the potential risk for renal injury and hypertension like those allegedly experienced by Ms. Nolan were plainly stated in *every* Vioxx package insert and Patient Information Sheet. Indeed, the PRECAUTIONS sections of the Vioxx package insert in effect during the entire time Ms. Nolan took Vioxx describes *precisely* the renal injury that Ms. Nolan alleges, *see* Ex. 3 ¶30, and explicitly warns that the patients at greatest risk of developing renal injury with Vioxx are those patients who—like Ms. Nolan—are also taking ACE inhibitors and diuretics. *See* Ex. 8 at MRK-99420021424.

Kentucky courts[5] adhere to the learned intermediary doctrine in pharmaceutical failure-to-warn cases like this one, and have thus held that in cases involving manufacturers of prescription drugs, the duty to warn runs *to the physician*, not to the patient. *See Larkin v. Pfizer, Inc.*, 153 S.W.3d 758, 761-62, 770 (Ky. 2004); *c.f. In re Norplant Contraceptive Prod. Liab. Litig.*, 955 F.Supp. 700, 709 (E.D. Tex. 1997), *aff'd*, 165 F.3d 374 (5th Cir. 1999) (plaintiff's product liability claims, whether asserted under theories of strict products liability, negligence, breach of implied warranty of merchantability, misrepresentation, or state consumer fraud law, were all essentially failure to warn claims to which the learned intermediary doctrine applies because each of those theories "collapse[s] into a charge that the drug manufacturer failed to warn"). The warning provided to the prescriber must be "adequate," which has been defined as one "sufficient to apprise the general practitioner as well as the 'unusually sophisticated medical

---

[5] This Court has previously determined that the applicable substantive law in Vioxx cases is the law of the state where the plaintiffs resided when they were prescribed Vioxx, when they ingested Vioxx, and when they were allegedly injured by the drug—in this case, Kentucky. *See In re Vioxx Prods. Liab. Litig.*, 478 F. Supp. 2d 897, 905-06 (E.D. La. 2007); *In re Vioxx Prods. Liab. Litig.*, 239 F.R.D. 450, 455-58 (E.D. La. 2006); *In re Vioxx Prods. Liab. Litig.*, 448 F. Supp. 2d 741, 749 (E.D. La. 2006).

1095475v1

man' of the dangerous propensities of the drug." *Larkin*, 153 S.W.3d at 764 (quoting *McEwen v. Ortho Pharm. Corp.*, 528 P.2d 522, 529 (Or. 1974)). Moreover, where the injury complained of by a plaintiff is covered by the actual warnings provided by the manufacturer, a court can determine that the warnings are adequate as a matter of law. *See id.* at 764 (adopting learned intermediary doctrine and noting that "[s]everal cases have held that a package insert may be sufficient for the warning to be adequate as a matter of law [and t]he warning may also be adequate if posted in the Physician's Desk Reference")*; see also Rounds v. Genzyme Corp.*, 440 F. App'x 753, 755 (11th Cir. 2011) ("[B]ecause Genzyme expressly and clearly warned . . . about the risk of the exact injury of which the [plaintiffs] now complain, the warnings were adequate as a matter of law."); *Gerber v. Hoffmann-LaRoche Inc.,* 392 F. Supp. 2d 907, 916 (S.D. Tex. 2005) ("If a warning specifically mentions the circumstances complained of, the warning is adequate as a matter of law.); *Brumley v. Pfizer, Inc.*, 149 F. Supp. 2d 305, 310 (S.D. Tex. 2001) (same); *Broderick v. Sofamor Danek Grp., Inc.*, No. 95-8644-CIV-RYSKAMP, 1999 WL 1062135, at *5 (S.D. Fla. Apr. 9, 1999) (ruling adequate as a matter of law a warning that "clearly and unambiguously identified the types of possible adverse affects a patient could suffer"); *Cather v. Catheter Tech. Corp.*, 753 F. Supp. 634, 640 (S.D. Miss. 1991)  ("A warning may be held adequate as a matter of law where the adverse effect that was ultimately visited upon the patient was one that the manufacturer specifically warned against.").

       The renal and hypertension warnings in the Vioxx labeling were adequate as a matter of law.  As discussed above, Vioxx's package insert explicitly informed physicians that renal injury, including "overt renal decompensation," "**has resulted**" from long-term administration of NSAIDs like Vioxx, particularly in patients like Ms. Nolan who also use ACE inhibitors and diuretics.  Ex. 8 at MRK-99420021424 (emphasis added).  The labeling also stated that "acute

10

renal failure" and "worsening chronic renal failure" had been reported in patients taking Vioxx. Ex. 8 at MRK-LBL0000042.  Thus, Ms. Nolan's alleged episode of renal failure in 2004 is an event that was specifically contemplated and warned of in the Vioxx labeling during the entire time that Vioxx was on the market.  *See* Ex. 3 ¶¶30, 31.

With respect to Ms. Nolan's alleged increase in hypertension resulting from Vioxx,[6] the warnings in the Vioxx labeling were equally clear:  Vioxx "should be used with caution, and should be introduced at the lowest recommended dose in patients with . . . hypertension . . . ", because increased incidence of hypertension had been observed with Vioxx use—particularly with chronic use of 50mg of Vioxx daily, as Ms. Nolan alleges.  Ex. 8 at MRK-99420021425; Ex. 12 at MRK-LBL0000065, 66.  Therefore, Ms. Nolan's alleged increase in hypertension in March 2004 is also an event that was specifically contemplated and warned of in the Vioxx labeling during the entire time that Vioxx was on the market.  *See* Ex. 3 ¶¶30, 31.

Given these warnings, no reasonable fact finder could conclude that the Vioxx package inserts in effect during the time that Ms. Nolan was allegedly taking Vioxx inadequately warned her prescribing physicians of the risks of renal injury and hypertension.  Renal complications and hypertension were well-known—and warned about—risks of Vioxx usage from the moment it became available to patients.  Where, as here, a product's label informs the prescribing physician about risks concerning the very condition that a plaintiff subsequently suffers, those warnings are adequate as a matter of law.  *See, e.g., Rounds*, 440 F. App'x at 755 (holding that "warnings were adequate as a matter of law" where the drug manufacturer "expressly and clearly warned . .

---

[6]  There is not actually any evidence that Vioxx had any negative effect on Ms. Nolan's long-standing, poorly controlled hypertension.  The range of blood pressure readings that Ms. Nolan received while she was taking Vioxx were essentially the same as the ones she received when she was ***not*** taking Vioxx.  *See* Ex. 3 ¶¶10-14.

11

. about the risk of the exact injury of which the [plaintiffs] now complain"). Accordingly, Merck's motion for summary judgment should be granted.

## II.     Kentucky's One-Year Statute of Limitations Bars Ms. Nolan's Claims.

In Kentucky, a plaintiff with a claim based on personal injury is required to file her lawsuit within one year of the accrual of the claim. *See* KRS § 413.140(1). Section 2 of the applicable statute provides that claims for personal injuries accrue "at the time the injury is first discovered or in the exercise of reasonable care should have been discovered . . . ." *Id.* § 413.140(2). The limitations period thus commences when one knows, or in the exercise of reasonable diligence should know, that "(1) he has been wronged; and, (2) by whom the wrong has been committed." *Wiseman v. Alliant Hosps., Inc.*, 37 S.W.3d 709, 712 (Ky. 2000); *Hackworth v. Hart, Ky.*, 474 S.W.2d 377, 379 (Ky. 1971). This so-called "discovery rule" does not require awareness that a claim is actionable; rather, a claim accrues once a party has knowledge, or would have knowledge through inquiry, of some harm and its possible culprit. *See Vannoy v. Milum*, 171 S.W.3d 745, 748-49 (Ky. App. 2005).

In this case, there can be no dispute that Ms. Nolan would have had reason to believe that Vioxx may have caused her alleged renal failure and increased hypertension in March 2004. First, according to Ms. Nolan's own testimony, her medical providers linked her renal failure to Vioxx or anti-inflammatory usage at the time of that alleged injury in March 2004. *See, e.g.,* Ex. 2 at 33:7-34:11, 160:13-161:13; 27:14-28:2. Second, the risk of the exact injuries she alleges—hypertension and renal failure—were plainly disclosed in Vioxx's package insert and Patient Information Sheet from the time Vioxx was approved in May 1999 and throughout the time that Vioxx was available for use. *See supra* §A; Ex. 3 ¶¶30, 31. Indeed, had Ms. Nolan made any inquiry whatsoever into the potential causes of her alleged injuries at the time of her March 2004 hospitalization, she could have discovered as much basis for bringing her claims as is available

today. Because Ms. Nolan waited until September 2005 to file a lawsuit, six months beyond Kentucky's one-year period of limitations, her claims are time-barred and must be dismissed.

## CONCLUSION

For the reasons stated above, the Court should grant Defendant's Motion for Summary Judgment and dismiss Plaintiff Nolan's Complaint with prejudice.

Dated: June 4, 2012

        Respectfully submitted,

        /s/ Dorothy H. Wimberly
        Phillip A. Wittmann, 13625
        Dorothy H. Wimberly, 18509
        STONE PIGMAN WALTHER
        WITTMANN L.L.C.
        546 Carondelet Street
        New Orleans, Louisiana 70130
        Phone: 504-581-3200
        Fax:     504-581-3361

        Defendants' Liaison Counsel

      —and—

        Douglas R. Marvin
        Eva Petko Esber
        M. Elaine Horn
        Emily Renshaw Pistilli
        WILLIAMS & CONNOLLY LLP
        725 Twelfth Street, N.W.
        Washington, D.C. 20005
        Phone: 202-434-5000
        Fax:     202-434-5029

        Attorneys for Merck & Co., Inc.

1095475v1

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Motion for Summary Judgment has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail, upon Liaison Counsel Ann Oldfather by e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8C, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 4th day of June, 2012.

                                              */s/ Dorothy H. Wimberly*
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:      504-581-3361
dwimberly@stonepigman.com
Defendants' Liaison Counsel