# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

|                                      |   |                    |
|--------------------------------------|---|--------------------|
|                                      | : | MDL NO. 1657       |
| IN RE: VIOXX                         | : |                    |
|    PRODUCTS LIABILITY LITIGATION | : | SECTION: L         |
|                                      | : |                    |
|                                      | : | JUDGE FALLON       |
|                                      | : | MAG. JUDGE KNOWLES |

.. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. :

**THIS DOCUMENT RELATES TO: CASE NO. 09-3713,** *Gene Weeks, et al. v. Merck & Co., Inc.*

## ORDER & REASONS

Currently pending before the Court is Merck's Motion to Strike Class Allegations in Plaintiffs' First Amended Complaint (Rec. Doc. 19681). The Court has reviewed the briefs and the applicable law and is now prepared to rule.

**I.    BACKGROUND**

To put this matter in perspective, a brief review of this litigation is appropriate. This multidistrict products liability litigation involves the prescription drug Vioxx, known generically as Rofecoxib. Merck, a New Jersey corporation, researched, designed, manufactured, marketed and distributed Vioxx to relieve pain and inflammation resulting from osteoarthritis, rheumatoid arthritis, menstrual pain, and migraine headaches. On May 20, 1999, the Food and Drug Administration approved Vioxx for sale in the United States. Vioxx remained publicly available until September 30, 2004, when Merck withdrew it from the market after data from a clinical trial known as APPROVe indicated that the use of Vioxx increased the risk of cardiovascular

thrombotic events such as myocardial infarction (heart attack) and ischemic stroke. Thereafter, thousands of individual suits and numerous class actions were filed against Merck in state and federal courts throughout the country alleging various products liability, tort, fraud, and warranty claims. On November 9, 2007, after extensive discovery, pretrial proceedings, and a number of bellwether trials, the parties announced a $4.85 billion Master Settlement Agreement that eventually resolved over 99% of Vioxx claims.

The Master Settlement Agreement included certain obligations on counsel who wished to recommend that their clients enroll, to maximize enrollment:

> 1.2.8 While nothing in this Agreement is intended to operate as a "restriction" on the right of any Claimant's counsel to practice law within the meaning of the equivalent to Rule 5.6(b) of the ABA Model Rules of Professional Conduct in any jurisdictions in which Claimant's Counsel practices or whose rules may otherwise apply, it is agreed that (except to the extent waived by Merck in its sole discretion in any instance:
> 1.2.8.1 By submitting an Enrollment Form, the Enrolling Counsel affirms that he has recommended ... to 100% of the Eligible Claimants represented by such Enrolling Counsel that such Eligible Claimants enroll in the Program.
> 1.2.8.2 If any such Eligible Claimant disregards such recommendation, or for any other reason fails (or has failed) to submit a non-defective Enrollment Form on or before [certain dates] ... such Enrolling Counsel shall [by certain dates] ... to the extent permitted by the equivalents to Rules 1.16 and 5.6 of the ABA Model Rules of Professional Conduct in the relevant jurisdiction(s), (i) take ... all necessary steps to disengage and withdraw from the representation of such Eligible Claimant and to forego any Interest in such Eligible Claimant and (ii) cause ... each other Enrolling Counsel, and each other counsel with an interest in any Enrolled Program Claimant, which has an Interest in such Eligible Claimant to do the same.

Master Settlement Agreement §§ 1.2.8-1.2.8.2. Plaintiffs characterize this as the "all-in" provision, and they contend that it "effectively stripped class members of, and interfered with, their right to make an informed choice about whether or not to accept the terms of the settlement and deprived them of their right to retained counsel if they do not execute consents to accept the

terms of the MSA." (Rec. Doc. 21103 at 4).

Plaintiffs Gene Weeks, Kristine Cramer, Nathan Wilkins, Virginia Pickett, and Susan Smith filed this complaint in the Superior Court of New Jersey on or about February 13, 2009. The matter was removed to federal court and transferred to this MDL. Plaintiffs contest the validity of the Master Settlement Agreement on the basis that the "all-in" provision requiring counsel who enrolled clients in the MSA to recommend enrollment to all of his or her clients, and to withdraw from clients who did not enroll. Through their operative First Amended Complaint, Plaintiffs seek to represent a class pursuant to Federal Rule of Civil Procedure 23 of "all litigants who had personal-injury actions pending in any jurisdiction of the United States alleging damages as a result of ingestion of Vioxx, subject to the 'all in' provisions of the MSA [who] consented to ... the terms of the MSA for fear of losing their retained counsel."

## II. PRESENT MOTION

Merck has filed a motion to strike the class allegations. It contends that the proposed class can never possibly be certified because the class definition is inherently subjective, depends on the state of mind of every possible class member, and is inherently intertwined with the merits of each individual's claim.

The named Plaintiffs oppose the motion. They argue that the "all in" provision necessarily impacted claimants' rights across the board. Therefore, Plaintiffs argue that the class can be objectively defined as consisting of any claimant whose counsel complied with the "all in" provisions, and problems of subjectivity can be evaded.

## III. LAW AND ANALYSIS

"It is elementary that in order to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable." *De Bremaecker v. Short*, 433

F.2d 733, 734 (5th Cir. 1970). "The existence of an ascertainable class of persons to be represented by the proposed class representative is an implied prerequisite of Federal Rule of Civil Procedure 23." *John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007). The Manual For Complex Litigation explains that:

> [a]lthough the identity of individual class members need not be ascertained before class certification, the membership of the class must be ascertainable.... An identifiable class exists if its members can be ascertained by reference to objective criteria. The order defining the class should avoid ... terms that depend on resolution of the merits (e.g., persons who were discriminated against).

Manual for Complex Litigation (Fourth) § 21.222 (2004). A class also cannot be defined in a manner that requires inquiry into the merits of the claim. *See, e.g.*, *Forman v. Data Transfer, Inc.*, 164 F.R.D. 400, 403 (E.D. Pa. 1995) (applying "a basic tenet of class certification: a court may not inquire into the merits of the case at the class certification stage" to deny certification of a class defined by receipt of "unsolicited" materials). If a class is defined in terms of having a meritorious claim, then loss on the merits excludes a member from the class, subjecting them to no preclusive effect at all. *See Genenbacher v. CenturyTel Fiber Co. II*, 244 F.R.D. 485, 488 (C.D. Ill. 2007) (rejecting such classes as unfair because "the class members either win or are not in the class").

"Where it is facially apparent from the pleadings that there is no ascertainable class, a district court may dismiss the class allegation on the pleadings." *John*, 501 F.3d at 445. Thus, this Court has previously granted a motion to strike class allegations where membership of the "proposed class cannot be determined without first inquiring into the substantive merits of each individual claim," because such a class is not ascertainable. *In re Vioxx Prods. Liab. Litig.*, 2008 WL 4681368, at *9-10 (E.D. La. Oct. 21, 2008). Other courts have likewise granted motions to strike class definitions that depend on "fear" or other subjective definitions. *See Rios v.*

*Marshall*, 100 F.R.D. 395 (S.D.N.Y. 1983); *Capaci v. Katz & Besthoff, Inc.*, 72 F.R.D. 71 (E.D.L.A. 1976).

Here, the Amended Complaint proposes certification of a class of "all litigants who had personal-injury actions pending in any jurisdiction of the United States alleging damages as a result of ingestion of Vioxx, subject to the 'all in' provisions of the MSA [who] consented to ... the terms of the MSA for fear of losing their retained counsel." No such class could ever be certified. As Merck correctly points out, ascertaining the class cannot be done by any objective method or without impinging on the merits of any particular class member's claim. In every instance, the Court would have to examine the specific circumstances of a purported class member's attorney-client relationship and individualized decision to enroll in the MSA. Each inquiry would involve whether that particular claimant was coerced, which is a primary factual dispute between the parties, and resolution of that issue in Merck's favor with respect to any particular individual would simply exclude that individual from the class. In short, the class definition is fatally flawed.

Plaintiffs attempt but fail to salvage the class definition by massaging it into a more objective form. They contend that "*every* person subject to these provisions" suffered harm, and therefore the class can be "readily identified by reference to the court records, in particular the Enrollment form." (Rec. Doc. 21103 at 4). But Plaintiffs' argument simply shifts the inherent subjectivity to the definition of the harm rather than resolving it. For example, Plaintiffs contend that every person who consented to the program "suffered one of the following harms":

> (a) plaintiffs whose attorneys made the recommendation to consent to the MSA that was not based upon independent professional judgment, and that was, objectively, impacted or influenced by financial considerations of their counsel who were subject to the "all-in" provisions and were representing more than one plaintiff in this litigation, which plaintiffs allege constitutes a substantial number

>      of counsel making recommendations to their clients to accept the MSA; or,
>      (b) in the alternative, plaintiffs whose attorneys were required to withdraw
> from representing clients who did not consent to the settlement, and who accepted
> the terms and conditions of the settlement under the requirement that their
> retained counsel would withdraw from representing them in this complex
> litigations, which plaintiffs allege constitutes a substantial number of plaintiffs
> who faced loss of counsel if they did not consent to participate in the MSA.

*Id.* But both categories of "harm" still depend on individualized and subjective inquiries regarding the motivations of individual plaintiffs and individual plaintiffs' attorneys in enrolling or recommending enrollment in the MSA.

The Fifth Circuit's resolution of Plaintiff Weeks' attempt to rescind his own enrollment in the MSA reinforces the Court's concerns regarding the ascertainability of the class and the necessary entanglement of the proposed class definition with the merits. This Court issued an Order and Reasons finding no fraud or duress that warranted rescission of Weeks's voluntary entry into the contractual settlement program. *In re Vioxx Prods. Liab. Litig.*, 2010 WL 724084, at *6 (E.D. La. Feb. 18, 2010) ("*Weeks I*"). On appeal to the Fifth Circuit, Weeks argued that the Court "erred when it reviewed his consent to enter into the Master Settlement Agreement based on contract law, rather than examining Weeks's right to conflict-free counsel." *In re Vioxx Prods. Liab. Litig.*, 412 F. App'x 653, 653-54 (5th Cir. 2010) ("*Weeks II*"). The Fifth Circuit disagreed and applied basic principles of contract law to conclude, on the specific facts of the case, that Weeks's individual consent was voluntary. *See id.* at 654. Merck points out, correctly, that a similar case-by-case individualized inquiry would be required to determine whether any particular potential class member "feared losing retained counsel," or whether any particular attorney-client relationship was affected by the terms of the MSA. If review of Weeks's personal claim for rescission of his enrollment is fact-specific, so too would review of the claim of any other class member who might fall within the definition of "fearing losing retained

counsel" as the result of the terms of the MSA.

Plaintiffs also argue that "the class allegations are proper because the predominate relief sought is injunctive and declaratory in nature." (Rec. Doc. 21103 at 5). This argument, whatever its relevance with respect to other requirements for class certification under Rule 23, does not speak to how class membership can be ascertained or how the class Plaintiffs intend to represent can be defined independent of the underlying merits.

To sum up, Plaintiffs seek to represent a class that is defined by inherently subjective criteria. The class is not ascertainable and determining membership in the class is entangled with the underlying merits of the claim. Such a class is not viable and striking the class allegations in the First Amended Complaint is warranted.

## IV. CONCLUSION

For the foregoing reasons, IT IS ORDERED that Merck's motion to strike class allegations is GRANTED.

New Orleans, Louisiana, this 6th day of June, 2012.

_____
UNITED STATES DISTRICT JUDGE