

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA.

2005 AUG 24   PM 12: 17

LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

RUTH JENKINS,                               )
                                            )
WANDA MADDEN,                               )
                                            )
EDWARD PAYUK,                               )
                                            )
RICHARD SIMPSON,                            )
                                            )
KIM MOHN,                                   )
OBO RON MOHN, DECEASED                      )
                                            )
LYNN HUDNUT,                                )
                                            )
MARLIN MARTIN, JR.,                         )
                                            )
DEAN HOLLIDAY,                              )
                                            )
SANDRA ALLEN,                               )
                                            )
NELSON DAVIS,                               )
                                            )
OLIVIA GILLESPIE,                           )
                                            )
MARY PRUETT,                                )
                                            )
JAMES ALEXANDER,                            )
                                            )
THOMAS COSTELLO,                            )
                                            )
CHARLES GARRISON,                           )
                                            )
BILLY KAMP,                                 )

**05-4054**

**SECT. L MAG. 3**

Fee $250.
___ Process_____
_X_ Dktd_____
___ CtRmDep_____
___ Doc. No _____

MARJORIE LEWIS,                              )
                                            )
MIKE LONG,                                   )
                                            )
JOHN MANGANARO,                              )
                                            )
ERNEST MANNING,                              )
                                            )
LEONARD PAGANO,                              )
                                            )
W.C. ROBY,                                   )
                                            )
TED THORNBURG,                               )
                                            )
IMOGENE BADE,                                )
                                            )
MARY P. BAKER,                               )
                                            )
EDITH BALLENTINE,                            )
                                            )
JERRY BLAGG,                                 )
                                            )
WAYNE CAMPBELL,                              )
                                            )
JAMES DAVID CARAWAY,                         )
                                            )
GENETTA CARR,                                )
                                            )
O.L. CROWE,                                  )
                                            )
MARY HELEN CUMMINGS,                         )
                                            )
EVA GASKINS,                                 )
                                            )
MARY ANN GORMAN,                             )
OBO EDDIE MAE MITCHELL                       )
                                            )
JAMES GREGORY,                               )
                                            )
CLIFFORD HALFORD,                            )
                                            )
JOHN HALL,                                   )
                                            )
RICK HALL,                                   )
                                            )

| | |
|---|---|
| JAMES R. HAYNES, | ) |
| | ) |
| LARKIN HOUSEHOLDER, | ) |
| | ) |
| MARY SUE HOWELL, | ) |
| | ) |
| CONNIE HUBBARD, | ) |
| | ) |
| MATTIE JACKSON, | ) |
| | ) |
| PATRICIA JONES, | ) |
| | ) |
| JOHN KOVACS, | ) |
| | ) |
| FLOSSIE MARTIN, | ) |
| | ) |
| ANNA MCCOY, | ) |
| | ) |
| OPAL MCLEMORE, | ) |
| | ) |
| HUBERT MOORE, | ) |
| | ) |
| W.S. NORRID, | ) |
| | ) |
| CHERYL PATTERSON, | ) |
| | ) |
| BILLIE JEAN RAY, | ) |
| | ) |
| RUBIN RUFF, | ) |
| | ) |
| BETTY SKAGGS, | ) |
| | ) |
| TONIA SWINK, | ) |
| | ) |
| SHELBY THURMAN, | ) |
| | ) |
| Plaintiffs, | )   MDL No. 1657 |
| | ) |
| v. | ) |
| | ) |
| MERCK & CO., INC. | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

2

COMES NOW, each individually named Plaintiff and for their causes of action against Merck & Co., Inc. ("Merck"), allege as follows:

1.     This is a civil action brought on behalf of each individually named plaintiff for the personal injuries and/or death sustained after using Vioxx (Rofecoxib). Each individually named plaintiff and/or decedent was prescribed and used the prescription medication Vioxx. This action seeks monetary damages for the personal injuries and/or death of each individually named plaintiff and/or decedent caused by the drugs named herein and ingested by each individually named plaintiff and/or decedent.

## PARTIES

2.     Plaintiff Ruth Jenkins is a resident of St. Louis, Missouri, who was prescribed and ingested Vioxx prior to undergoinog stent placement on May 25, 2004.

3.     Plaintiff Wanda Madden is a resident of Monroe City, Missouri, who was prescribed and ingested Vioxx prior to suffering a heart attack on December 29, 2001.

4.     Plaintiff Edward Payuk is a resident of Creve Coeur, Missouri, who was prescribed and ingested Vioxx prior to suffering a heart attack on June 18, 2001.

5.     Plaintiff Richard Simpson is a resident of Fenton, Missouri, who was prescribed and ingested Vioxx prior to undergoing stent placement on September 28, 2004.

6.     Plaintiff Kim Mohn is bringing her action individually and on behalf of Ron Mohn as decedent Mohn's surviving wife. Plaintiff Mohn is a resident of Fulton, Missouri. Decedent Mohn was prescribed and ingested Vioxx prior to suffering cardiomyopathy and subsequent death on April 11, 2004.

7.     Plaintiff Lynn Hudnut is a resident of Canton, Missouri, who was prescribed and ingested Vioxx prior to suffering renal elevation of his creatinine.

3

8.      Plaintiff Marlin Martin, Jr. is a resident of Bernie, Missouri, who was prescribed and ingested Vioxx from prior to suffering a heart attack in August 2002.

9.      Plaintiff Dean Holliday is a resident of Hannibal, Missouri who was prescribed and ingested Vioxx prior to suffering a heart attack on June 15, 2001.

10.     Plaintiff Sandra Allen is a resident of Mexico, Missouri who was prescribed and ingested Vioxx prior to suffering a stroke on October 17, 2004.

11.     Plaintiff Nelson Davis is a resident of Madison, Missouri who was prescribed and ingested Vioxx prior to suffering a heart attack on October 29, 2002.

12.     Plaintiff Olivia Gillespie is a resident of Poplar Bluff, Missouri who was prescribed and ingested Vioxx prior to suffering a stroke in December 2001.

13.     Plaintiff Mary Pruett is a resident of Poplar Bluff, Missouri who was prescribed and ingested Vioxx prior to suffering a stroke in May 2004.

14.     Plaintiff James Alexander is a resident of St. Louis, Missouri who was prescribed and ingested Vioxx prior to suffering a stroke on August 23, 2002.

15.     Plaintiff Thomas Costello is a resident of Sullivan, Missouri who was prescribed and ingested Vioxx prior to suffering a heart attack in 2002 and on November 23, 2004.

16.     Plaintiff Charles Garrison is a resident of Kirkwood, Missouri who was prescribed and ingested Vioxx prior to suffering heart attacks on May 13, 2003, October 6, 2003 and June 26, 2004.

17.     Plaintiff Billy Kamp is a resident of Shelbina, Missouri who was prescribed and ingested Vioxx prior to suffering a stroke in March 2003.

18.     Plaintiff Marjorie Lewis is a resident of New Madrid, Missouri who was prescribed and ingested Vioxx prior to suffering a stroke on October 11, 2001.

4

19.     Plaintiff Mike Long is a resident of Kennett, Missouri who was prescribed and ingested Vioxx prior to suffering a heart attack in March 2001.

20.     Plaintiff John Manganaro is a resident of Des Peres, Missouri who was prescribed and ingested Vioxx prior to suffering a heart attack on July 7, 2001.

21.     Plaintiff Ernest Manning is a resident of Gatewood, Missouri who was prescribed and ingested Vioxx prior to suffering a heart attack on March 29, 2003.

22.     Plaintiff Leonard Pagano is a resident of St. Peters, Missouri who was prescribed and ingested Vioxx prior to suffering a heart attack on August 20, 2002.

23.     Plaintiff W.C. Roby is a resident of Bloomsdale, Missouri who was prescribed and ingested Vioxx prior to suffering a heart attack.

24.     Plaintiff Ted Thornburg is a resident of Moberly, Missouri who was prescribed and ingested Vioxx prior to suffering coronary artery disease and a gastrointestinal bleeding on April 15, 2001 and June 26, 2001.

25.     Plaintiff Imogene Bade is a resident of Owensville, Missouri who was prescribed and ingested Vioxx prior to suffering a stroke on July 14, 2001.

26.     Plaintiff Mary P. Baker is a resident of Cardwell, Missouri who was prescribed and ingested Vioxx prior to suffering a stroke.

27.     Plaintiff Edith Ballentine is a resident of Steele, Missouri who was prescribed and ingested Vioxx prior to suffering a stroke.

28.     Plaintiff Jerry Blagg is a resident of Holcomb, Missouri who was prescribed and ingested Vioxx prior to suffering heart attacks.

29.     Plaintiff Wayne Campbell is a resident of Marston, Missouri who was prescribed and ingested Vioxx prior to suffering cardiovascular damage and undergoing stent placement.

5

30.     Plaintiff James David Caraway is a resident of Kennett, Missouri who was prescribed and ingested Vioxx prior to suffering a stroke in August 2004.

31.     Plaintiff Genetta Carr is a resident of Holcomb, Missouri who was prescribed and ingested Vioxx prior to suffering a stroke.

32.     Plaintiff O.L. Crowe is a resident of Hayti, Missouri who was prescribed and ingested Vioxx prior to suffering a stroke.

33.     Plaintiff Mary Helen Cummings is a resident of Caruthersville, Missouri who was prescribed and ingested Vioxx prior to undergoing stent placement in May 2004.

34.     Plaintiff Eva Gaskins is a resident of Wardell, Missouri who was prescribed and ingested Vioxx prior to suffering a heart attack in 2001 and undergoing stent placements.

35.     Plaintiff Mary Ann Gorman is bringing her action individually and on behalf of Eddie Mae Mitchell as decedent Mitchell's surviving daughter.  Plaintiff Gorman is a resident of Steele, Missouri.  Decedent Mitchell was prescribed and ingested Vioxx prior to suffering a heart attack and stroke and subsequent death.

36.     Plaintiff James Gregory is a resident of Kennett, Missouri who was prescribed and ingested Vioxx prior to suffering a heart attack in 2000.

37.     Plaintiff Clifford Halford is a resident of Portageville, Missouri who was prescribed and ingested Vioxx prior to suffering a heart attack.

38.     Plaintiff John Hall is a resident of Braggadocio, Missouri who was prescribed and ingested Vioxx prior to suffering heart attacks.

39.     Plaintiff Rick Hall is a resident of Caruthersville, Missouri who was prescribed and ingested Vioxx prior to suffering a stroke.

6

40.     Plaintiff James R. Haynes is a resident of Kennett, Missouri who was prescribed and ingested Vioxx prior to suffering blood clotting.

41.     Plaintiff Larkin Householder is a resident of Caruthersville, Missouri who was prescribed and ingested Vioxx prior to suffering strokes.

42.     Plaintiff Mary Sue Howell is a resident of Holcomb, Missouri who was prescribed and ingested Vioxx prior to suffering cardiovascular damage and undergoing stent placement in 2001 and suffering a stroke.

43.     Plaintiff Connie Hubbard is a resident of Caruthersville, Missouri who was prescribed and ingested Vioxx prior to suffering a heart attack.

44.     Plaintiff Mattie Jackson is a resident of Kennett, Missouri who was prescribed and ingested Vioxx prior to suffering multiple strokes between 1999-2003.

45.     Plaintiff Patricia Jones is a resident of Kennett, Missouri who was prescribed and ingested Vioxx prior to undergoing stent placements in 2001.

46.     Plaintiff John Kovacs is a resident of Holland, Missouri who was prescribed and ingested Vioxx prior to suffering a transcient ischemic attack in 2001.

47.     Plaintiff Flossie Martin is a resident of Kennett, Missouri who was prescribed and ingested Vioxx prior to suffering a stroke in 2002.

48.     Plaintiff Anna McCoy is a resident of Portageville, Missouri who was prescribed and ingested Vioxx prior to suffering blood clotting in 2003.

49.     Plaintiff Opal McLemore is a resident of Hayti, Missouri who was prescribed and ingested Vioxx prior to suffering a transcient ischemic event on August 13, 2003.

50.     Plaintiff Hubert Moore is a resident of Pascola, Missouri who was prescribed and ingested Vioxx prior to suffering a heart attack in May 2002.

7

51.     Plaintiff W.S. Norrid is a resident of Holland, Missouri who was prescribed and ingested Vioxx prior to suffering a stroke in 2003.

52.     Plaintiff Cheryl Patterson is a resident of Dexter, Missouri who was prescribed and ingested Vioxx prior to suffering a stroke in 2002 and two heart attacks.

53.     Plaintiff Billie Jean Ray is a resident of Kennett, Missouri who was prescribed and ingested Vioxx prior to suffering a stroke on July 6, 2001.

54.     Plaintiff Rubin Ruff is a resident of Hayti, Missouri who was prescribed and ingested Vioxx prior to suffering a heart attack and stroke in 2001.

55.     Plaintiff Betty Skaggs is a resident of Kennett, Missouri who was prescribed and ingested Vioxx prior to suffering a heart attack.

56.     Plaintiff Tonia Swink is a resident of Senath, Missouri who was prescribed and ingested Vioxx prior to suffering cardiovascular damage.

57.     Plaintiff Shelby Thurman is a resident of Kennett, Missouri who was prescribed and ingested Vioxx prior to suffering strokes in October 2003.

58.     Defendant Merck is a New Jersey corporation with its principal place of business in White House Station, New Jersey.  At all times relevant hereto, Merck was engaged in the business of testing, developing, manufacturing, distributing, licensing, labeling, and marketing, either directly or indirectly through third parties or related entities, the pharmaceutical drug Vioxx.

## JURISDICTION AND VENUE

59.     Each plaintiff seeks in excess of $75,000, excluding costs and interests.  This Court has jurisdiction of this matter under 28 U.S.C § 1332.

60.     Venue is proper in this District pursuant to MDL No. 1657 Pretrial Order No. 11.

8

## FACTS COMMON TO ALL COUNTS

61.     Vioxx is the brand name of rofecoxib, one of a class of drugs called "prostaglandins," which work to reduce inflammation and pain by providing analgesic and anti-inflammatory benefits to persons with, among other conditions, arthritis and muscle pain. Prostaglandins are COX (cyclooxygenase) inhibitors; COX enzymes metabolize arachidonic acid to produce prostaglandins.

62.     Vioxx is a COX-2 inhibitor, which is designed to produce prostaglandins at inflammatory sites, and to produce prostacyclin, a vasodilator and an inhibitor of platelet aggregation.

63.     In February of 1997, when Merck was developing Vioxx, an internal Merck e-mail warned that a proposed trial of the drug may show Vioxx patients having more blood clots than those taking another medication and such trial may "kill [the] drug."

64.     Defendant Merck submitted an Application to Market a New Drug for Human Use ("NDA") for rofecoxib to the United States Food and Drug Administration ("FDA") on November 23, 1998, for tablets, at doses of 12.5 mg and 25 mg, for relief of the signs and symptoms of osteoarthritis, the management of acute pain, and the treatment of primary dysmenorrhea. This application was denoted NDA 21-042 by the FDA.

65.     Defendant Merck also submitted an Application to Market a New Drug for Human Use ("NDA") for rofecoxib to the United States Food and Drug Administration ("FDA") on November 23, 1998, for oral suspension, at doses of 12.5 mg/mL and 25 mg/mL, for relief of the signs and symptoms of osteoarthritis, the management of acute pain, and the treatment of primary dysmenorrhea. This application was denoted NDA 21-052 by the FDA.

9

66.     On or about May 20, 1999, the FDA approved NDA 21-042 and NDA 21-052
(hereinafter the "NDA") for rofecoxib, for relief of the signs and symptoms of osteoarthritis, the
management of acute pain, and the treatment of primary dysmenorrhea.

67.     At the time the drug was approved by the FDA the labeling for rofecoxib stated,
in the section entitled "Special Studies -- Upper Endoscopy in Patients with Osteoarthritis,"
"Treatment with VIOXX 25 mg daily or 50 mg daily was associated with a significantly
lower percentage of patients with endoscopic gastroduodenal ulcers than treatment with
ibuprofen 2400 mg daily. However, the studies cannot rule out at least some increase in the
rate of endoscopic gastroduodenal ulcers when comparing VIOXX to placebo."

68.     The "Warnings" section of the labeling for rofecoxib, at the time the drug was
approved by the FDA, contains a section, "Gastrointestinal (GI) Effects -- Risk of GI
Ulceration, Bleeding, and Perforation."

69.     Defendant Merck submitted sNDA-007 with the goal of establishing a
gastrointestinal ("GI") safety claim for rofecoxib. In conjunction with the sNDA, Defendant
Merck performed the Vioxx GI Outcomes Research (VIGOR) Protocol, No. 088-04,
entitled "A Double-Blind, Randomized, Stratified, Parallel-Group Study to Assess the
Incidence of PUBs During Chronic Treatment With MK-0966 or Naproxen in Patients With
Rheumatoid Arthritis: U.S. Cohort." The VIGOR study was performed from January 6,
1999 through March 17, 2000.

70.     The objectives of the VIGOR study were to (1) "determine the relative risk
of confirmed PUB (Perforation, Ulcers, Bleeding) in patients taking MK-0966 50 mg daily
compared to patients in the group taking naproxen 1000 mg/day," and (2) "study the safety and
tolerability of MK-0966 in patients with rheumatoid arthritis."

10

71.    In March of 2000, the VIGOR trial results were known inside Merck. These trial results showed that patients taking Vioxx in the study group had five times the rate of heart attacks as in the naproxen study group.

72.    In March of 2000, a Merck research chief stated in an internal e-mail that cardiovascular problems "are clearly there" in the VIGOR trial and appear to be "mechanism based."

73.    In April of 2000, Merck issued a misleading press release that the VIGOR trial results are consistent with the clot-preventing effects of naproxen.

74.    In industry-sponsored studies presented at the European United League Against Rheumatism (EULAR), an organization in which Merck is a member and corporate sponsor, in June of 2000, it was shown that Vioxx use resulted in a statistically significant increase in hypertension and stroke. Not only did Merck do nothing to further accurately publish these studies, or warn consumers, but it denied the results with respect to hypertension in the official publication of the American Pharmaceutical Association, Pharmacy Today, *Spin War Aside, Lessons Emerge From COX-2 Trials,* in August 2000, page 3.

75.    Merck continued to deny the ill health effects associated with Vioxx while at the same time reaping profits obtained through its non-disclosure and concealment. Merck engaged in a massive advertising and sampling program and gained continued increases in the market share, which enhanced Merck's financial stability to the detriment of its consumers. As a result of Merck's scheme, it reaped more than $2 billion in profit in the year 2000 alone, and appropriated approximately 23 percent share of the market.

76.    Merck continued to profit from its scheme by withholding information from Plaintiff, the consuming public, and the health care industry. For example, in November of 2000,

11

HudnutL-Complaint-    00012

Merck caused the publication of a study in the New England Journal of Medicine in which it knowingly downplayed and/or withheld the severity of cardiovascular risks associated with Vioxx consumption over naproxen consumption.

77.    In May of 2001, Merck issued a press release confirming "Favorable Cardiovascular Safety Profile of Vioxx."

78.    In May of 2001, the FDA responded to Merck's press release that "Your claim in the press release is simply incomprehensible . . . . The implications that Vioxx cardiovascular profile is superior to other NSAIDS is misleading."

79.    On or about August 29, 2001, the Journal of the American Medical Association (JAMA) published a peer-reviewed human epidemiologic study by the Cleveland Clinic Foundation, Cleveland, Ohio, Dr. D. Mukhisjee, et al., showing what Merck had concealed that the relative risk of developing a "confirmed adjudicated thrombotic cardiovascular event" (defined in the article as "myocardial infarction, unstable angina, cardiac thrombus, resuscitated cardiac arrest, sudden or unexplained death, ischemic stroke, and transient ischemic attacks") among Vioxx users in Merck's trials, including VIGOR, at a 95% confidence interval ranged from 2.2 for event-free survival analysis, 2.38 compared to naproxen users, and 4.89 for developing serious cardiovascular events among aspirin-indicated patients. *See* Mukhisjee, D., *et al., Risk of Cardiovascular Events Associated With Selective Cox-2 Inhibitors*, J.A.M.A. 286:8, 954-959, Aug. 22/29, 2001. In addition, the annualized myocardial infarction rates for Vioxx users compared to placebo revealed a statistically significant increase among Vioxx users.

80.    In the JAMA study, the authors stated that "by decreasing PGI2 production [Vioxx] may tip the natural balance between prothrombotic thromboxane A2 and antithrombotic PGI2, potentially leading to an increase in thrombotic cardiovascular events." *Id.* at 957. In a

12

follow-up peer-reviewed study reported in the Journal of the American College of Cardiology on or about February 6, 2002, Dr. Richard J. Bing conducted scientific testing and confirmed that the Cox-2 inhibitor "tips the balance of prostacyclinlthromboxane in favor of thromboxane, leading to increased vascular and thrombotic events." Bing, R., & Lomnicka, M., *Why Do CycloOxygenase-2 Inhibitors Cause Cardiovascular Events?, J.A.C.C.*, 39:3, Feb. 6, 2002. This is further supported by studies completed at the University of Pennsylvania. Cheng, Y., et al., *Role of Prostacyclin in the Cardiovascular Response to Thrornboxane A2, Journal of* Science, V. 296:539-541, Apr. 19, 2002.

81.     On September 17, 2001, Thomas W. Abrams, R.Ph., MBA, Director of the FDA Division of Drug Marketing, Advertising, and Communications, issued a "Warning Letter" to Raymond V. Gilmartin, President and CEO of Defendant Merck, relating to "promotional activities and materials for the marketing of Vioxx (rofecoxib) tablets."

82.     The Warning Letter stated that Defendant Merck had "engaged in a promotional campaign for Vioxx that minimizes the potentially serious cardiovascular findings that were observed in the Vioxx Gastrointestinal Outcomes Research (VIGOR) study, and thus, misrepresents the safety profile for Vioxx." The letter further states:

> Specifically, your promotional campaign discounts the fact that in the VIGOR study, patients on Vioxx were observed to have a four to five fold increase in myocardial infarctions (MIs) compared to patients on the comparator non-steroidal anti-inflammatory drug (NSAID), Naprosyn (naproxen).

83.     The eight (8) page Warning Letter outlines, in detail, the conduct of Defendant Merck that supports the FDA's issuance of the Warning Letter, and makes the following **"Conclusions and Requested Actions:"**

> The promotional activities and materials described above minimize the potentially

13

serious Cardiovascular findings that were observed in the VIGOR study, minimize the Vioxx / Coumadin drug interaction, omit crucial risk information associated with Vioxx therapy, contain unsubstantiated comparative claims, and promote unapproved uses. On December 16, 1999, we also objected to your dissemination of promotional materials for Vioxx that misrepresented Vioxx's safety profile, contained unsubstantiated comparative claims, and lacked fair balance.

Due to the seriousness of these violations, and the fact that your violative promotion of Vioxx has continued despite our prior written notification regarding similar violations, we request that you provide a detailed response to the issues raised in this Warning Letter on or before October 1, 2001.

This response should contain an action plan that includes a comprehensive plan to disseminate corrective messages about the issues discussed in this letter to the audiences that received these misleading messages. This corrective action plan should also include:

> Immediately ceasing all violative promotional activities, and the dissemination of violative promotional materials for Vioxx.

> Issuing a "Dear Healthcare provider" letter to correct false or misleading impressions and information. This proposed letter should be submitted to us for review prior to its release. After agreement is reached on the content and audience, the letter should be disseminated by direct mail to all healthcare providers who were, or may have been exposed to the violative promotion.

> A written statement of your intent to comply with "1" and "2" above.

84.    In January of 2002, Merck continued to deny safety concerns regarding Vioxx in the magazine "Circulation."

85.    On April 11, 2002, the FDA approved a supplemental application for the use of Vioxx (rofecoxib) for rheumatoid arthritis, adding this indication to the previously approved indications for osteoarthritis and pain. The FDA also approved new labeling, a "Dear Doctor" letter, and a new patient package insert. The labeling and the "Dear Doctor" letter contained information concerning the results of the VIGOR study.

14

86.     The revised labeling further states that the administration of Vioxx 50 mg, was

associated with a higher incidence of gastrointestinal symptoms.

**Clinical Studies in OA and RA with VIOXX 50 mg (Twice the highest dose recommended for chronic use)**

In OA and RA clinical trials which contained VIOXX 12.5 or 25 mg as well as VIOXX 50 mg, VIOXX 50 mg OD was associated with a higher incidence of gastrointestinal symptoms (abdominal pain, epigastric pain, heartburn, nausea and vomiting), lower extremity edema, hypertension, serious adverse experiences and discontinuation due to clinical adverse experiences compared to the recommended chronic doses of 12.5 and 25 mg (see DOSAGE AND ADMINISTRATION).

87.     Further, the "Dear Doctor" letter, approved in conjunction with the revisions to the

Vioxx labeling, outlines the changes to the Vioxx labeling.

88.     The revised "Patient Information" sheet does not add any information about the

results of the VIGOR study."

89.     The "Patient Information" sheet is the only written document that is provided to a

patient for whom Vioxx is prescribed.

90.     Both the initial labeling and the revised labeling are ineffective because they

do not properly advise physicians and patients of the potential side effects of Vioxx.

91.     Despite knowledge of the ineffectiveness of the warnings, and despite knowledge

that Vioxx may cause serious side effects, Defendant Merck has concealed and/or

downplayed the dangers associated with Vioxx, and continued to market the drug in the United

States and abroad until September 30, 2004. In its 2001 Annual Report, for example, Defendant

Merck states:

The Company also noted that a number of federal and state lawsuits, involving individual claims as well as purported class actions, have been filed against the Company with respect to *Vioxx*.... The lawsuits include allegations regarding gastrointestinal bleeding and cardiovascular events. The Company believes that these lawsuits are completely without merit and will vigorously defend them.

15

92.     Further, in its January 23, 2001 8-K filing with the Securities and

Exchange Commission, the Defendant fails to mention the cardiac and cardiothrombotic

findings of the VIGOR study:

> "Our results reflect the strength of our growth strategy," Mr. Gilmartin said. "Our five key products, VIOXX, ZOCOR, COZAAR/HYZAAR*, FOSAMAX and SINGULAIR, drove Merck's performance for the year and created a powerful platform for growth." These products accounted for 57% of Merck's worldwide human health sales for 2000 and 61% for the fourth quarter.
>
> "Each of the five medicines offers unique competitive advantages," Mr. Gilmartin said. VIOXX, a once-a-day medicine, is the only COX-2 indicated in the United States both for osteoarthritis and acute pain. Since its extraordinarily successful 1999 launch, VIOXX has become the world's fastest growing branded prescription arthritis medicine, and it is already Merck's second largest-selling medicine. In the United States, VIOXX now accounts for approximately 50 percent of new prescriptions in the COX-2 class, despite being second to market in this class in the United States. VIOXX achieved $2.2 billion in sales for the full year 2000, with $700 million in the fourth quarter.
>
> A Food and Drug Administration (FDA) Advisory Committee meeting is scheduled for Feb. 8 to review labeling changes Merck has requested based on the strong results of the VIGOR Study. This 8,000-patient gastrointestinal outcomes research study, in which VIOXX reduced the risk of serious gastrointestinal complications by half compared to the NSAID naproxen, was published in November in THE NEW ENGLAND JOURNAL OF MEDICINE. Another study, presented in November, showed that VIOXX significantly reduced moderate-to-severe acute pain after dental surgery to a greater degree compared to codeine combined with acetaminophen.

93.     Despite the foregoing, Defendant Merck continued until September 30, 2004 to

represent to consumers that Vioxx is safe, and that any cardiovascular and/or

cardiothrombotic side effects are not associated with the drug. The Defendant has also

downplayed any potential gastrointestinal side effects of the drug, promoting it as safer and

more efficacious than other medications approved for treatment of similar conditions.

94.     As a direct and proximate result of each plaintiff's ingestion of Vioxx, each

16

plaintiff and/or decedent suffered injuries and/or death as more fully set forth above.

95.    Merck acted in a willful, wanton, and/or fraudulent manner toward plaintiffs

and/or decedents and other Vioxx consumers, and plaintiffs are therefore entitled to punitive

and/or aggravating circumstances damages.

## COUNT I
## STRICT LIABILITY

96.    Plaintiffs incorporate by reference the allegations in the above paragraphs.

97.    Merck was engaged in the business of manufacturing, designing, testing, marketing,

selling, advertising, warning, and distributing Vioxx. The Vioxx consumed by each plaintiff

and/or decedents reached plaintiffs and/or decedents without substantial change in the condition in

which it was sold by Merck.

98.    Plaintiffs and/or decedents used Vioxx in the manner for which it was intended and

a manner which was reasonably foreseeable.

99.    Plaintiffs and/or decedents were not aware of, nor could they have discovered, the

dangerous nature of Vioxx.

100.   The Vioxx consumed by plaintiffs and/or decedents was in a defective condition

and unreasonably dangerous in that it was defective in design, manufacturing, instructions and/or

warnings to doctors, the FDA, and the consuming public, and such defects existed at the time the

Vioxx was sold by Merck.

101.   As a direct and proximate result of the defects in Vioxx, plaintiffs were injured and

damaged.

102.   The actions of Merck caused or contributed to cause the pain, suffering, and death

of decedents.

103.   As a direct and proximate result of the defects in Vioxx, plaintiffs, on behalf of the

17

HudnutL-Complaint-    00018

individuals entitled to bring a lawsuit by reason of the wrongful death of decedents, have been

forced to expend monies for decedents' medical treatment prior to their deaths, for funeral and

burial expenses, have incurred lost wages as a result of time taken to care for and be with

decedents in their unnatural medical condition leading up to their death, and for such other

expenses.

104.    As a direct and proximate result of the defects in Vioxx, plaintiffs, on behalf of the

individuals entitled to bring an action by reason of the wrongful death of decedents, have been

forever deprived of decedents' services, comfort, companionship, consortium, instruction,

guidance, counsel, training and support and have forever lost the benefits derived from any future

income provided by decedents.

105.    As a direct and proximate result of the defects of Vioxx, decedents were forced to

incur pecuniary losses for which plaintiffs, on behalf of the individuals entitled to bring an action

by reason of the wrongful death of decedents, are entitled to recover.

106.    As a direct and proximate result of the defects of Vioxx, decedents were forced to

suffer great mental pain and anguish prior to their death for which plaintiffs, on behalf of the

individuals entitled to bring an action by reason of the wrongful death of decedents, are entitled to

recover.

107.    The deaths of decedents occurred under aggravating circumstances that the jury

should consider.

108.    Merck acted with conscious disregard for the safety of plaintiffs and/or decedents

and others and the jury should be permitted to return a verdict that will serve to punish and deter

other from like conduct.

WHEREFORE, plaintiffs demand judgment against defendant Merck for compensatory

and punitive and/or aggravating circumstances damages, together with interest, costs of suit, attorneys' fees and all other such relief as the Court deems proper.

## COUNT II
### NEGLIGENCE

109.   Plaintiffs incorporate by reference the allegations in the above paragraphs.

110.   Merck had a duty to use reasonable care in the manufacturing, design, testing, marketing, warning, and advertising of its product Vioxx.

111.   Merck was negligent and breached its duty of reasonable care in that Merck:

    a.   Failed to adequately and properly test Vioxx so as to ascertain whether or not it was safe and proper for the purpose for which it was designed, manufactured and sold;

    b.   Failed to utilize and/or implement a reasonably safe design in the manufacture of Vioxx;

    c.   Failed to manufacture Vioxx in a reasonably safe condition for which it was intended;

    d.   Failed to adequately and properly warn doctors, the FDA, and the consuming public regarding the risks of complications in using Vioxx in a manner for which it was intended;

    e.   Failed to adequately and properly label Vioxx so as to warn doctors and the consuming public of the risks of complications in using Vioxx; and

    f.   Failed to adequately and properly label Vioxx so as to warn plaintiffs and/or decedents and doctors of the risk of heart attack and stroke with the use of Vioxx;

112.   As a direct and proximate result of Merck's negligence, plaintiffs were injured and

19

damaged.

113.    The actions of Merck caused or contributed to cause the pain, suffering, and death of decedents.

114.    As a direct and proximate result of the defects in Vioxx, plaintiffs, on behalf of the individuals entitled to bring a lawsuit by reason of the wrongful death of decedents, have been forced to expend monies for decedents' medical treatment prior to their deaths, for funeral and burial expenses, have incurred lost wages as a result of time taken to care for and be with decedents in their unnatural medical condition leading up to their death, and for such other expenses.

115.    As a direct and proximate result of the defects in Vioxx, plaintiffs, on behalf of the individuals entitled to bring an action by reason of the wrongful death of decedents, have been forever deprived of decedents' services, comfort, companionship, consortium, instruction, guidance, counsel, training and support and have forever lost the benefits derived from any future income provided by decedents.

116.    As a direct and proximate result of the defects of Vioxx, decedents were forced to incur pecuniary losses for which plaintiffs, on behalf of the individuals entitled to bring an action by reason of the wrongful death of decedents, are entitled to recover.

117.    As a direct and proximate result of the defects of Vioxx, decedents were forced to suffer great mental pain and anguish prior to their death for which plaintiffs, on behalf of the individuals entitled to bring an action by reason of the wrongful death of decedents, are entitled to recover.

118.    The deaths of decedents occurred under aggravating circumstances that the jury should consider.

HudnutL-Complaint-      00021

119.    Merck acted with conscious disregard for the safety of plaintiffs and/or decedents and others and the jury should be permitted to return a verdict that will serve to punish and deter other from like conduct.

WHEREFORE, plaintiffs demand judgment against Merck for compensatory and punitive and/or aggravating circumstances damages, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

## COUNT III
## NEGLIGENCE PER SE

120.    Plaintiffs incorporate by reference the allegations in the above paragraphs.

121.    Merck had an obligation to comply with the law in the manufacture, design, testing, production, research, distribution, marketing, labeling, and warning of the risks and dangers of Vioxx.

122.    Merck violated the Federal Food, Drug and Cosmetic Act, 21 U.S.C. §301, et seq., related amendments and codes of federal regulations provided thereunder, the Sherman Food, Drug and Cosmetic Law, and other applicable laws, statutes and regulations.

123.    Plaintiffs and/or decedents, as purchasers and consumers of Vioxx, are within the class of persons the statutes and regulations described above are designed to protect and each plaintiff's injuries are the type of harm these statutes are designed to prevent.

124.    Merck's actions constitute an adulteration and/or misbranding as defined by the Federal Food, Drug and Cosmetic Act, 21 U.S.C. §331 and constitute a breach of duty subjecting Merck to civil liability for all damages arising therefrom.

125.    Merck failed to meet the standard of care set by the following statute and regulations, which were intended for the benefit of individuals such as plaintiffs, making defendant negligent per se:

21

a.    The labeling lacked adequate information on the use of the drug Vioxx (21

C.F.R. §201.56(a) and (d));

b.    The labeling failed to provide adequate warnings of severe and disabling

medical conditions including, without limitation, thromboembolic events,

primarily heart attacks or stroke, and other adverse medical conditions, as

soon as there was reasonable evidence of their association with the drug (21

C.F.R. §201.57(e));

c.    There was inadequate information for patients for the safe and effective use

of Vioxx (21 C.F.R. §201.57(f)(2));

d.    There was inadequate information regarding special care to be exercised by

the doctor for safe and effective use of Merck's drug Vioxx (21 C.F.R.

§201.57(f)(1)); and

e.    The labeling was misleading and promotional (21 C.F.R. §201.56(b)).

126.    As a direct and proximate result of Merck's violations of the statutes described

above, plaintiffs were injured and damaged.

127.    Merck's violations of the statutes described above, caused or contributed to cause

the pain, suffering, and death of decedents.

128.    The actions of Merck caused or contributed to cause the pain, suffering, and death

of decedents.

129.    As a direct and proximate result of the defects in Vioxx, plaintiffs, on behalf of the

individuals entitled to bring a lawsuit by reason of the wrongful death of decedents, have been

forced to expend monies for decedents' medical treatment prior to their deaths, for funeral and

burial expenses, have incurred lost wages as a result of time taken to care for and be with

22

decedents in their unnatural medical condition leading up to their death, and for such other expenses.

130.    As a direct and proximate result of the defects in Vioxx, plaintiffs, on behalf of the individuals entitled to bring an action by reason of the wrongful death of decedents, have been forever deprived of decedents' services, comfort, companionship, consortium, instruction, guidance, counsel, training and support and have forever lost the benefits derived from any future income provided by decedents.

131.    As a direct and proximate result of the defects of Vioxx, decedents were forced to incur pecuniary losses for which plaintiffs, on behalf of the individuals entitled to bring an action by reason of the wrongful death of decedents, are entitled to recover.

132.    As a direct and proximate result of the defects of Vioxx, decedents were forced to suffer great mental pain and anguish prior to their death for which plaintiffs, on behalf of the individuals entitled to bring an action by reason of the wrongful death of decedents, are entitled to recover.

133.    The deaths of decedents occurred under aggravating circumstances that the jury should consider.

134.    Merck acted with conscious disregard for the safety of plaintiffs and/or decedents and others and the jury should be permitted to return a verdict that will serve to punish and deter other from like conduct.

WHEREFORE, plaintiffs demand judgment against Merck for compensatory and punitive and/or aggravating circumstances damages, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

23

## COUNT IV
## BREACH OF EXPRESS WARRANTY

135.    Plaintiffs incorporate by reference the allegations in the above paragraphs.

136.    Merck expressly warranted to plaintiffs and/or decedents, by and through statements made through authorized agents or sales representatives, orally and in publications, package inserts and other written materials intended for physicians, medical patients and the general public, that Vioxx was safe, effective, and fit and proper for its intended use.

137.    In using Vioxx, plaintiffs and/or decedents relied on the skill, judgment, representations and foregoing expressed warranties made by Merck.  Said warranties and representations were false in that Vioxx was not safe and was unfit for the use for which it was intended.

138.    As a direct and proximate result of Merck's breaches of warranties, plaintiffs were injured and damaged.

139.    The actions of Merck caused or contributed to cause the pain, suffering, and death of decedents.

140.    As a direct and proximate result of the defects in Vioxx, plaintiffs, on behalf of the individuals entitled to bring a lawsuit by reason of the wrongful death of decedents, have been forced to expend monies for decedents' medical treatment prior to their deaths, for funeral and burial expenses, have incurred lost wages as a result of time taken to care for and be with decedents in their unnatural medical condition leading up to their death, and for such other expenses.

141.    As a direct and proximate result of the defects in Vioxx, plaintiffs, on behalf of the individuals entitled to bring an action by reason of the wrongful death of decedents, have been forever deprived of decedents' services, comfort, companionship, consortium, instruction,

24

guidance, counsel, training and support and have forever lost the benefits derived from any future income provided by decedents.

142.    As a direct and proximate result of the defects of Vioxx, decedents were forced to incur pecuniary losses for which plaintiffs, on behalf of the individuals entitled to bring an action by reason of the wrongful death of decedents, are entitled to recover.

143.    As a direct and proximate result of the defects of Vioxx, decedents were forced to suffer great mental pain and anguish prior to their death for which plaintiffs, on behalf of the individuals entitled to bring an action by reason of the wrongful death of decedents, are entitled to recover.

WHEREFORE, plaintiffs demand judgment against Merck for compensatory and punitive and/or aggravating circumstances damages, together with interest, costs of suit, attorneys' fees and such other relief as the Court deems proper.

## COUNT V
## BREACH OF IMPLIED WARRANTY

144.    Plaintiffs incorporate by reference the above paragraphs.

145.    Prior to the time that Vioxx was used by plaintiffs and/or decedents, Merck impliedly warranted to plaintiffs and/or decedents that Vioxx was of merchantable quality and safe and fit for the use for which it was intended.

146.    Plaintiffs and/or decedents were unskilled in the research, design and manufacture of Vioxx and reasonably relied entirely on the skill, judgment and implied warranty of Merck in using Vioxx.

147.    Vioxx was neither safe for its intended use nor of merchantable quality in that it had dangerous propensities when put to its intended use and would cause injuries to the user.

148.    As a direct and proximate result of Merck's breaches of warranties, plaintiffs were

25

injured and damaged.

149.    The actions of Merck caused or contributed to cause the pain, suffering, and death of decedents.

150.    As a direct and proximate result of the defects in Vioxx, plaintiffs, on behalf of the individuals entitled to bring a lawsuit by reason of the wrongful death of decedents, have been forced to expend monies for decedents' medical treatment prior to their deaths, for funeral and burial expenses, have incurred lost wages as a result of time taken to care for and be with decedents in their unnatural medical condition leading up to their death, and for such other expenses.

151.    As a direct and proximate result of the defects in Vioxx, plaintiffs, on behalf of the individuals entitled to bring an action by reason of the wrongful death of decedents, have been forever deprived of decedents' services, comfort, companionship, consortium, instruction, guidance, counsel, training and support and have forever lost the benefits derived from any future income provided by decedents.

152.    As a direct and proximate result of the defects of Vioxx, decedents were forced to incur pecuniary losses for which plaintiffs, on behalf of the individuals entitled to bring an action by reason of the wrongful death of decedents, are entitled to recover.

153.    As a direct and proximate result of the defects of Vioxx, decedents were forced to suffer great mental pain and anguish prior to their death for which plaintiffs, on behalf of the individuals entitled to bring an action by reason of the wrongful death of decedents, are entitled to recover.

WHEREFORE, plaintiffs demand judgment against Merck for compensatory and punitive and/or aggravating circumstances damages, together with interest, costs of suit, attorneys' fees and

HudnutL-Complaint-    00027

all other such relief as the Court deems proper.

## REQUEST FOR JURY TRIAL

Plaintiffs request a jury trial.

Respectfully submitted,

Thomas P. Cartmell          MO #45366
Brian J. Madden             MO #40637
Thomas J. Preuss            MO #54923
Wagstaff & Cartmell LLP
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100
FAX (816) 531-2372

J. Scott Bertram            MO #23715
The Bertram Law Firm, LLC
9229 Ward Parkway, Suite 107
Kansas City, MO  64114
(816) 523-2205
FAX (816) 523-8258

Wm. Dirk Vandever           MO #24463
The Popham Law Firm, P.C.
323 W. 8th Street, Ste. 200
Kansas City, MO  64105
(816) 221-2288
FAX (816) 221-3999

James P. Frickleton         MO # 31178
Bartimus, Frickleton, et al.,
11150 Overbrook Drive
Leawood, Ks  66211
(913) 266-2300
Fax (913) 266-2366

27

HudnutL-Complaint-    00028

Kirk Goza                MO #32475
Brad Honnold             MO #39818
Goza & Honnold, LLC
2630 City Center Square
1100 Main Street, P.O. Box 482355
Kansas City, Mo  64148-2355
(816) 512-2171
Fax (816) 512-2172

Grant L. Davis           MO #34799
Shawn Foster             MO #47663
Davis Bethune & Jones, LLC
1100 Main Street, Suite 2930
P.O. Box 26250
Kansas City, Mo  64196
(816) 421-1600
Fax (816) 472-5972

Wayne S. Spivey          Atty ID #31017
Shrager, Spivey & Sachs
Two Commerce Square, 32nd Floor
Philadelphia, Pa  19103
(800) 568-5868
Fax (215) 568-7495

**ATTORNEYS FOR PLAINTIFFS**

28

%JS 44   (Rev. 11/04)

# CIVIL COVER SHEET

**05-4054**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| | |
|---|---|
| **I. (a) PLAINTIFFS**<br>See Attachment (a) | **DEFENDANTS**<br>Merck & Co., Inc. |
| **(b)** County of Residence of First Listed Plaintiff   St. Louis County, MO<br>(EXCEPT IN U.S. PLAINTIFF CASES) | County of Residence of First Listed Defendant   Hunterdon County, NJ<br>(IN U.S. PLAINTIFF CASES ONLY)<br>NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE<br>LAND INVOLVED. |
| **(c)** Attorney's (Firm Name, Address, and Telephone Number)<br>See Attachment (c) | Attorneys (If Known)<br>Unknown |

**II. BASIS OF JURISDICTION**   (Place an "X" in One Box Only)

- ◻ 1  U.S. Government Plaintiff
- ◻ 3  Federal Question (U.S. Government Not a Party)
- ◻ 2  U.S. Government Defendant
- X 4  Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ◻ 1 | ◻ 1 | Incorporated or Principal Place of Business In This State | ◻ 4 | ◻ 4 |
| Citizen of Another State | X 2 | ◻ 2 | Incorporated and Principal Place of Business In Another State | ◻ 5 | X 5 |
| Citizen or Subject of a Foreign Country | ◻ 3 | ◻ 3 | Foreign Nation | ◻ 6 | ◻ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | PERSONAL INJURY | PERSONAL INJURY | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ◻ 110 Insurance | ◻ 310 Airplane | ◻ 362 Personal Injury - Med. Malpractice | ◻ 610 Agriculture | ◻ 422 Appeal 28 USC 158 | ◻ 400 State Reapportionment |
| ◻ 120 Marine | ◻ 315 Airplane Product Liability | X 365 Personal Injury - Product Liability | ◻ 620 Other Food & Drug | ◻ 423 Withdrawal 28 USC 157 | ◻ 410 Antitrust |
| ◻ 130 Miller Act | ◻ 320 Assault, Libel & Slander | ◻ 368 Asbestos Personal Injury Product Liability | ◻ 625 Drug Related Seizure of Property 21 USC 881 | | ◻ 430 Banks and Banking |
| ◻ 140 Negotiable Instrument | | | ◻ 630 Liquor Laws | PROPERTY RIGHTS | ◻ 450 Commerce |
| ◻ 150 Recovery of Overpayment & Enforcement of Judgment | ◻ 330 Federal Employers' Liability | PERSONAL PROPERTY | ◻ 640 R.R. & Truck | ◻ 820 Copyrights | ◻ 460 Deportation |
| ◻ 151 Medicare Act | ◻ 340 Marine | ◻ 370 Other Fraud | ◻ 650 Airline Regs. | ◻ 830 Patent | ◻ 470 Racketeer Influenced and Corrupt Organizations |
| ◻ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ◻ 345 Marine Product Liability | ◻ 371 Truth in Lending | ◻ 660 Occupational Safety/Health | ◻ 840 Trademark | ◻ 480 Consumer Credit |
| ◻ 153 Recovery of Overpayment of Veteran's Benefits | ◻ 350 Motor Vehicle | ◻ 380 Other Personal Property Damage | ◻ 690 Other | LABOR | ◻ 490 Cable/Sat TV |
| ◻ 160 Stockholders' Suits | ◻ 355 Motor Vehicle Product Liability | ◻ 385 Property Damage Product Liability | ◻ 710 Fair Labor Standards Act | SOCIAL SECURITY | ◻ 810 Selective Service |
| ◻ 190 Other Contract | ◻ 360 Other Personal Injury | | | ◻ 861 HIA (1395ff) | ◻ 850 Securities/Commodities/Exchange |
| ◻ 195 Contract Product Liability | | | ◻ 720 Labor/Mgmt. Relations | ◻ 862 Black Lung (923) | ◻ 875 Customer Challenge 12 USC 3410 |
| ◻ 196 Franchise | | | ◻ 730 Labor/Mgmt.Reporting & Disclosure Act | ◻ 863 DIWC/DIWW (405(g)) | ◻ 890 Other Statutory Actions |
| REAL PROPERTY | CIVIL RIGHTS | PRISONER PETITIONS | ◻ 740 Railway Labor Act | ◻ 864 SSID Title XVI | ◻ 891 Agricultural Acts |
| ◻ 210 Land Condemnation | ◻ 441 Voting | ◻ 510 Motions to Vacate Sentence | ◻ 790 Other Labor Litigation | ◻ 865 RSI (405(g)) | ◻ 892 Economic Stabilization Act |
| ◻ 220 Foreclosure | ◻ 442 Employment | Habeas Corpus: | ◻ 791 Empl. Ret. Inc. Security Act | FEDERAL TAX SUITS | ◻ 893 Environmental Matters |
| ◻ 230 Rent Lease & Ejectment | ◻ 443 Housing/ Accommodations | ◻ 530 General | | ◻ 870 Taxes (U.S. Plaintiff or Defendant) | ◻ 894 Energy Allocation Act |
| ◻ 240 Torts to Land | ◻ 444 Welfare | ◻ 535 Death Penalty | | ◻ 871 IRS—Third Party 26 USC 7609 | ◻ 895 Freedom of Information Act |
| ◻ 245 Tort Product Liability | ◻ 445 Amer. w/Disabilities - Employment | ◻ 540 Mandamus & Other | | | ◻ 900Appeal of Fee Determination Under Equal Access to Justice |
| ◻ 290 All Other Real Property | ◻ 446 Amer. w/Disabilities - Other | ◻ 550 Civil Rights | | | ◻ 950 Constitutionality of State Statutes |
| | ◻ 440 Other Civil Rights | ◻ 555 Prison Condition | | | |

**V. ORIGIN**   (Place an "X" in One Box Only)

- ◻ 1 Original Proceeding
- X 2 Removed from State Court
- ◻ 3 Remanded from Appellate Court
- ◻ 4 Reinstated or Reopened
- ◻ 5 Transferred from another district (specify)
- X 6 Multidistrict Litigation
- ◻ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity)
28 USC Section 1332
Brief description of cause:
Vioxx product liability

**VII. REQUESTED IN COMPLAINT:**
◻ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ >$75,000.00
CHECK YES only if demanded in complaint:
JURY DEMAND:   X Yes   ◻ No

**VIII. RELATED CASE(S) IF ANY**   (See instructions):
JUDGE   Eldon Fallon
DOCKET NUMBER   Vioxx MDL-1657

DATE   8-23-05
SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #_____   AMOUNT_____   APPLYING IFP_____   JUDGE_____   MAG. JUDGE_____

**ATTACHMENT FOR (a)**

**LIST OF PLAINTIFFS**

1.  RUTH JENKINS

2.  WANDA MADDEN

3.  EDWARD PAYUK

4.  RICHARD SIMPSON

5.  KIM MOHN
    OBO RON MOHN, DECEASED

6.  LYNN HUDNUT

7.  MARLIN MARTIN, JR.

8.  DEAN HOLLIDAY

9.  SANDRA ALLEN

10. NELSON DAVIS

11. OLIVIA GILLESPIE

12. MARY PRUETT

13. JAMES ALEXANDER

14. THOMAS COSTELLO

15. CHARLES GARRISON

16. BILLY KAMP

17. MARJORIE LEWIS

18. MIKE LONG

19. JOHN MANGANARO

20. ERNEST MANNING

1

21.   LEONARD PAGANO

22.   W.C. ROBY

23.   TED THORNBURG

24.   IMOGENE BADE

25.   MARY P. BAKER

26.   EDITH BALLENTINE

27.   JERRY BLAGG

28.   WAYNE CAMPBELL

29.   JAMES DAVID CARAWAY

30.   GENETTA CARR

31.   O.L. CROWE

32.   MARY HELEN CUMMINGS

33.   EVA GASKINS

34.   MARY ANN GORMAN
       OBO EDDIE MAE MITCHELL

35.   JAMES GREGORY

36.   CLIFFORD HALFORD

37.   JOHN HALL

38.   RICK HALL

39.   JAMES R. HAYNES

40.   LARKIN HOUSEHOLDER

41.   MARY SUE HOWELL

42.   CONNIE HUBBARD

2

43.   MATTIE JACKSON

44.   PATRICIA JONES

45.   JOHN KOVACS

46.   FLOSSIE MARTIN

47.   ANNA MCCOY

48.   OPAL MCLEMORE

49.   HUBERT MOORE

50.   W.S. NORRID

51.   CHERYL PATTERSON

52.   BILLIE JEAN RAY

53.   RUBIN RUFF

54.   BETTY SKAGGS

55.   TONIA SWINK

56.   SHELBY THURMAN

HudnutL-Complaint-      00033

**ATTACHMENT (c)**

**LIST OF ATTORNEYS**

Thomas P. Cartmell     MO #45366
Brian J. Madden       MO #40637
Thomas J. Preuss     MO #54923
WAGSTAFF & CARTMELL LLP
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100
FAX (816) 531-2372

J. Scott Bertram      MO #23715
The Bertram Law Firm, LLC
9229 Ward Parkway, Suite 107
Kansas City, MO  64114
(816) 523-2205
FAX (816) 523-8258

Wm. Dirk Vandever    MO #24463
The Popham Law Firm, P.C.
323 W. 8th Street, Ste. 200
Kansas City, MO  64105
(816) 221-2288
FAX (816) 221-3999

James P. Frickleton    MO # 31178
Bartimus, Frickleton, Et Al.,
11150 Overbrook Drive
Leawood, Ks  66211
(913) 266-2300
Fax (913) 266-2366

Kirk Goza         MO #32475
Brad Honnold       MO #39818
Goza & Honnold, Llc
2630 City Center Square
1100 Main Street, P.O. Box 482355
Kansas City, Mo  64148-2355
(816) 512-2171
Fax (816) 512-2172

Grant L. Davis          MO #34799
Shawn Foster            MO #47663
Davis Bethune & Jones, Llc
1100 Main Street, Suite 2930
P.O. Box 26250
Kansas City, Mo  64196
(816) 421-1600
Fax (816) 472-5972

Wayne S. Spivey         Atty ID #31017
Shrager, Spivey & Sachs
Two Commerce Square
32nd Floor
Philadelphia, Pa  19103
(800) 568-5868
Fax (215) 568-7495

ATTORNEYS FOR PLAINTIFFS

2