**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

In Re:VIOXX
PRODUCTS LIABILITY LITIGATION

This document relates to:

All Actions

MDL Docket No. 1657

SECTION L

JUDGE FALLON
MAG. JUDGE KNOWLES

## THE TPP FEE ALLOCATION COMMITTEE'S RECOMMENDATION

The TPP Fee Allocation Committee, pursuant to the Court's Pretrial Order No. 57, has undertaken an extensive review of the common benefit work done on behalf of third party payors (TPPs) in this litigation and now makes observations and recommendations to the Court. This substantive recommendation was originally submitted to the Court on November 8, 2011 (Dkt. No. 63555-2). The Committee now resubmits its recommendation and attaches a proposed allocation as Exhibit A.

## I.    PROCEDURAL BACKGROUND

**A.    TPP litigation took place in three forums: the MDL, New Jersey, and California.**

While this MDL Court supervised the TPP settlement and undertook substantive proceedings regarding TPP matters over the years, two other venues, the New Jersey and California state courts, also dealt substantively with TPP's Vioxx-related claims. We briefly summarize the history of each; timelines showing major events in each forum are attached as Exhibit B.

**1.    In the MDL, counsel successfully opposed Merck's motion to dismiss and was preparing for bellwether trials at the time of the TPP settlement.**

As the Court is familiar with the MDL proceedings, we paint only the broad strokes.

1

This MDL was created in 2005. Shortly thereafter, counsel[1] drafted a master complaint for class action cases. Counsel later opposed Merck's motion to dismiss. After a several years lull on the TPP front while the Court addressed the personal injury matters, counsel negotiated a schedule for bellwether trials, selected bellwether plaintiffs, and were engaged in discovery efforts and selecting experts at the time of the TPP Settlement (September 14, 2009).

**2.     In New Jersey, the court certified a class of TPPs, and counsel defended the class certification decision all the way to the New Jersey Supreme Court.**

Counsel filed the first TPP action against Merck in New Jersey state court in 2002. Multiples TPP actions were later centralized before the Honorable Carol E. Higbee; *International Union of Operating Engineers Local No. 68 Welfare Fund v. Merck & Co.*, No. ATL-3015-03-MT became the lead TPP case. Counsel aggressively litigated for several years, defeating a motion to dismiss, winning a motion for class certification, engaging in extensive class discovery (including the review of tens of thousands of pages of documents), retaining experts, and briefing and arguing multiple appeals. Merck appealed the class certification order all the way to the New Jersey Supreme Court, which reversed and vacated the class certification decision. TPP litigation then continued on a non-class basis for two years – until execution of the TPP Settlement Agreement (September 14, 2009).

**3.     In California, counsel appealed the court's refusal to certify a class of third party payors and consumers to the California Supreme Court.**

In 2004 and a few  months before the MDL was created, counsel filed litigation in California state court on behalf of a proposed class of third party payors and consumers seeking reimbursement of overpayments made for Vioxx. Because the case was filed before Congress enacted the Class Action Fairness Act (CAFA), the class action was never swept up into the MDL.

---

[1] As used in this section, "counsel" refers broadly to counsel acting on behalf of TPPs.

Multiple class cases were consolidated as part of the California Judicial Council Coordination Proceeding Class.  Counsel aggressively litigated on behalf of the putative class for five years.  Though the court declined to certify a class of TPPs or consumers, counsel won multiple motions for remand, won a motion for judgment on the pleadings, conducted voluminous discovery, briefed class certification, drafted and filed a detailed proffer of common evidence for trial of class claims, and pursued appeal of the order denying class certification all the way to the California Supreme Court.  The California Supreme Court denied review on March 30, 2010 – six months after execution of the TPP Settlement Agreement (September 14, 2009).

**B.      Counsel also created a private lien resolution program to resolve healthcare liens for MDL claimants.**

Counsel also devised and implemented a unique method for resolving TPPs' private healthcare liens against personal injury claimants *en mass*.  TPPs participating in the private lien resolution program (PLRP) agreed to reduce the amount of their liens in exchange for not having pursue Vioxx-related liens piecemeal.  No other mass tort or MDL settlement had ever systematically addressed private healthcare liens through systematic, electronic review; other courts have since instituted similar programs to efficiently and effectively resolve healthcare liens in conjunction with a mass tort settlement.

Counsel represented approximately eighty TPPs in negotiations with the Plaintiffs' steering committee to implement a mutually beneficial lien resolution program – negotiations that took over a year-and-a-half.  All told, over 400 TPPs and 22,409 claimants participated in the private lien resolution program ("PLRP").

**C.      Counsel negotiated a cross-venue $65 million settlement on behalf of all litigating TPPs.**

In early-2009, settlement discussions between TPP counsel and Merck began in earnest.

Over the next eight months or so, Chris Seeger of Seeger Weiss LLP and Thomas M. Sobol of Hagens Berman Sobol Shapiro LLP negotiated an $80 million non-class settlement between litigating TPPs and Merck, a $65 million fund for litigating TPPs and a $15 million fund for TPP common benefit attorneys. The Private Third Party Payor Settlement Agreement and Common Benefit Settlement Agreement (attached as Exhibit C) were executed on September 14, 2009.

Counsel spent significant time implementing the settlement. A significant effort was made to enroll all litigating TPPs. And, at Merck's request, counsel reached out to select other TPPs who Merck believed intended to pursue individual claims (though not all had cases on file).

All told, 176 TPPs participated in the settlement. Collecting releases and coordinating the exchange of claims data with all settling TPPs was a significant undertaking.

**D.      The Common Benefit Agreement was intended to resolve the costs and expenses incurred by counsel for litigating and settling TPPs who performed common benefit work.**

The common benefit agreement describes 'common benefit attorneys' as those attorneys representing one or more of the 176 TPPs identified in Exhibit A to the agreement who settled claims against Merck in connection with Vioxx. The agreement refers to "certain Common Benefit Attorneys and their respective third party provider/payor clients, identified in Exhibit A," and states "Common Benefit Attorneys represent private Third Party Providers/Payors who have made claims, in litigation as well as pre-litigation, against Merck in connection with VIOXX" [2]

The parties intended that the Common Benefit Agreement resolve the costs and expenses associated with litigating TPPs claims and serve to fully compensate attorneys for TPPs:

- "Merck …wish[es] to resolve the costs and expenses associated with this litigation" and " Common Benefit Attorneys and their clients similarly wish to resolve these costs and expenses";[3]

---

[2] Exhibit C, Common Benefit Agreement, at p. 1.

[3] *Id.*

- "It is the express intention of the parties to this Agreement that the payment of the Common Benefit Fees and Expenses Payment compensates Common Benefit Attorneys and along with the Private TPP Settlement Agreement serves to fully compensate Plaintiffs and Plaintiffs' attorneys for all Released Claims and Liabilities against the Released Parties"[4]

The Common Benefit Agreement gave the Honorable Eldon. E. Fallon authority to preside over the award of common benefit fees and expenses[5] and contemplated that he would create procedures for allocating the $15 million fund:

> The Honorable Eldon E. Fallon may create administrative procedures, supplementary to (and not inconsistent with) those specified herein, that provide further specific details about how Common Benefit Fees and Expenses are determined and paid; provided, however, that such procedures comply with the terms of this Agreement.[6]

**E.      Per PTO 57, the TPP Fee Allocation Committee reviewed applications and requested additional information from applicants**

In accordance with the Common Benefit Agreement, this Court set forth procedures for allocating the TPP Common Benefit Fund in Pretrial Order No. 57.  PTO 57 appointed a Fee Allocation Committee, set a schedule for making submissions, and described the required contents of those submissions.

Applications for TPP common benefit fees were due by September 16, 2011.  The Fee Allocation Committee received 26 timely initial submissions on behalf of 30 firms.[7]  On October 3, the Committee received a late application from Kline Specter PC.

The Fee Allocation Committee substantively reviewed all submissions and discussed

---

[4] *Id.* at 3.1.5

[5] *Id.* at 4.1.1, 4.1.3

[6] *Id.* at 4.1.6.

[7] Hovde Dassow and Deets submitted one application on behalf of five firms:  Hovde Dassow and Deets, Lanier Law Firm, Audet & Partners, Gary Franke LPA, and Ewing McMillin & Willis PLLC.

these submissions during multiple phone calls.  The Committee decided that it needed additional information from applicants and advised the Court that it would require more time to make a recommendation.

The Committee asked all applicants to complete a supplemental form that asked applicants to (i) exclude any client-specific work from their claimed TPP common benefit lodestar, (ii) categorize and describe their common benefit activities, (iii) identify their unreimbursed costs, and (iv) indicate what portion of the claimed TPP common benefit time, if any, was previously submitted in conjunction with the Court's earlier common benefit proceedings.   The Committee informed all applicants via email that the attached form must be completed by Monday, October 17, 2011.  A few applicants asked for additional time, and the Committee granted reasonable extensions.

The Fee Allocation Committee received 27 supplemental forms.   Two firms that submitted initial applications did not submit supplemental forms:  Sheller P.C. and the Sulzer Law Firm.  Two firms submitted supplemental forms but did not submit initial applications: the Young Law Group[8] and Freese & Goss PLLC.  A quantitative summary of the data provided by each applicant is included in Exhibit A.  A copy of all initial applications and supplemental forms (including attachments) are attached as Exhibit D (FILED UNDER SEAL).  We provide this summary solely for the Court's information.   It does not form the basis for our recommendation.

The Committee extensively reviewed all supplemental submissions and discussed them during multiple phone calls before making the following recommendation.

---

[8] The Young Law Group indicated that it had not received notice of the earlier fee application deadline.

## II.     THRESHOLD OBSERVATIONS

The Committee first makes a few threshold observations about its process and recommendation.

**A.     The Committee acknowledged the factors the Court considered when evaluating common benefit work in the personal injury actions.**

This Court has written multiple opinions addressing common benefit attorneys fee awards in the context of the Vioxx personal injury settlement.  The Committee considered the factors the Court considered alongside Fifth Circuit precedent in evaluating the applications and making the following recommendation.

**B.     The Committee did not consider client-specific work to be for the common benefit of all TPPs.**

The Committee does not consider work done on behalf of a single client to be common benefit work.  One of the reasons for requesting applicants complete a supplemental form was the need to identify how much time was spent on client-specific tasks, such as drafting a complaint, explaining the TPP settlement, or completing releases.  We do recognize, however, that the bulk of the cases and much of the work by firms was for *putative class actions*, not individual TPPs.

**C.     Members of the Committee abstained from advocating on their own behalf.**

While each member of the Committee submitted an application and supplemental form on behalf of their firm, members refrained from extolling their firms' contributions.

**D.     The Committee believes the fee allocation process should be as streamlined as possible.**

The TPP common benefit fund is approximately 1/20th the size of the larger common benefit fund associated with the personal injury litigation.  Though $15 million is a substantial amount of money, the Committee appreciates the rule of proportionality and suggests that the

Court implement as streamlined procedure as possible.  It is the Committee's hope that we can avoid the series of hearings and involvement of the Special Master that were required to finalize the personal injury fee awards.

## III.    RECOMMENDATION

The TPP Fee Allocation Committee recommends that the Court look to applicants' qualitative contributions to determine appropriate awards.  Information about each firm's contributions follows.

The TPP Fee Allocation Committee believes that applicants fall into three buckets: some applicants should be well compensated for significant substantive TPP common benefit work; some applicants were not previously compensated for TPP common benefit work during the Court's earlier common benefit process and should be reasonably compensated for their TPP common benefit contributions; and some applicants did not contribute meaningfully to the common benefit of TPPS.

In total, applicants sought over $23 million in awards.  The common benefit fund is only $15 million.  While the Committee provides quantitative lodestar and cost information reported for each applicant, we *do not* recommend allocating the fund by reducing all lodestars pro-rata.

The TPP Common Benefit Agreement expressly provides this Court with "authority over the process for administering the award and disbursement of common benefit fees and common benefit expenses contemplated by the Agreement."[9]  The Agreement also provides the Court's decision with regard to the award and disbursement of TPP Common Benefit Fees and Expenses is final, non-appealable, and binding on all parties to the Agreement.[10]  The Committee believes its recommendation provides the Court with information that is more than sufficient for the Court

---

[9] Exhibit C, Common Benefit Agreement, at 4.1.3.

[10] Exhibit C, Common Benefit Agreement, at 4.1.4.

to allocate the TPP Common Benefit Fund among those attorneys to performed meaningful work for the common benefit of TPPs.  The Committee will gladly provide any additional information the Court may require.

## A.    Audet and Partners

Audet and Partners reported a TPP common benefit lodestar of $403,762.50 and $49,264.01 in unreimbursed costs, for a total of $453,026.51.  They report that they did not submit any of this time in conjunction with the personal injury common benefit process, where they were awarded $1.45 million.[11]  They received $5,669.31 in fees from their TPP clients, which appears to have been shared between five law firms: Hovde Dassow and Deets, Lanier Law Firm, Audet & Partners, Gary Franke LPA, and Ewing McMillin & Willis PLLC.

Audet & Partners did not provide information about their contributions (though noted that they would submit an affidavit at a later date).

## B.    Barrios Kingsdorf & Cateix LLP

Barrios Kingsdorf & Cateix LLP reported a TPP common benefit lodestar of $7,618.75 and $14.24 in unreimbursed costs, for a total of $7,632.99.  They previously submitted $2,431.25 of this time in conjunction with the personal injury common benefit process, where they were awarded $1.8 million.

Barrios Kingsdorf & Cateix did not represent any TPPs, but Dawn Barrios was appointed to the Private Third Party Payor Bellwether Trial Committee by PTO 41.  According to her application, Ms. Barrios "assisted leadership in the selection of Bellwethers for the MDL," "created spreadsheet for all TPP cases in MDL and one for all Bellwethers for Leadership," "participated in all TPP conference calls," "reported status information to Russ Herman, Chris Seeger, and Elizabeth Cabraser," and "prepared and circulated memos to all counsel with TPP

---

[11] Award amounts were taken from the Court's August 9, 2011 Order and Reasons, Dkt. No. 63195.

cases to provide status report of the MDL activities."

The Committee observes that Ms. Barrios performed an important liaison role that benefitted all TPPs litigating in the MDL.

## C.     Bossier & Associates PLLC

Bossier & Associates PLLC reported a TPP common benefit lodestar of $6,625.00 and no costs, for a total of $6,625.00. They did not indicate whether they previously submitted any of this time in conjunction with the personal injury common benefit process, where they were awarded $20,000.00. They did not receive any fees from TPP clients.

Bossier & Associates PLLC's application says that they were appointed to the Purchase Claims Committee and the Private Third Party Payor Bellwether Trial Committee, and served on the Bellwether's Discovery and Expert committees. Neither the application nor supplemental form provides any additional details about their specific contributions.

## D.     Cafferty Faucher LLP

Cafferty Faucher LLP reported a TPP common benefit lodestar of $250,857.00 and $10,900.68 in unreimbursed costs, for a total of $261,757.68. They previously submitted $242,450.00 of this time in conjunction with the personal injury common benefit process, where they were awarded $30,000.00. We note, however, that this award was not based on TPP work, and that therefore TPP time reported by Cafferty Faucher was not compensated for in the personal injury common benefit process. They did not receive any fees from TPP clients.

According to Cafferty Faucher LLP's application, the firm "performed legal research and analysis in connection with the preparation of the Master TPP Complaint," "was appointed as a member of the Purchaser Claims / Economic Claims Subcommittee," "drafted and revised responses and objections to interrogatories and document requests and communicated with the client to collect the information necessary to assess its possible role in the bellwether trial

process."

### E.    Charfoos & Christensen PC

Charfoos & Christensen reported a TPP common benefit lodestar of $96,008.75 and no costs. They did not previously submitted any of this time in conjunction with the personal injury common benefit process, where they did not receive an award. They did not receive any fees from clients.

Charfoos & Christensen submission includes time and expenses incurred by Jason J. Thompson, a former employee. Mr. Thompson is currently employed by the firm of Somers and Schwartz, who also submitted an application. Both applications attest that there is no overlap between the time and expense submissions.

According to Charfoos & Christensen's application, the firm engaged in "participation and attendance in PSC phone conference regarding TPP matters," "review[ed] Vioxx Third Party Payor documents," "research[ed] Michigan's drug product liability statute … and related state and federal cases for Bellwether trial selection," and "review[ed] and contribut[ed] to court status reports regarding TPP's."

The Committee observes that Jason Thompson was a member of the Purchaser Claims committee and drafted a memo on Michigan state law that informed counsel's selection of Bellwether TPPs and benefitted all TPPs litigating in the MDL.

### F.    Cohen Placitella & Roth PC

Cohen Placitella & Roth reported a TPP common benefit lodestar of $69,750.00 and $52,382.28 in unreimbursed costs, for a total of $122,132.28. They did not indicate whether they previously submitted any of this time in conjunction with the personal injury common benefit process, where they were awarded $3.5 million. They received $789,766.54 in fees from TPP clients.

According to Cohen Placitella & Roth's application, "C/P/R lawyer Mark Schultz spent considerable time developing a damage model that would be applicable to these cases" and "was an active participation … in both discovery and in developing damage experts."   C/P/R also "explor[ed] [the admissibility of aggregate proof data] and, with others, assess[ed] the likelihood of success," and "provided material support to the document review project specifically for the TPP cases."

### G.      The Dugan Law Firm

The Dugan Law Firm reports a TPP common benefit lodestar of $1,502,845.00 and $105,795.74 in unreimbursed costs, for a total of $1,608,640.74.  They did not receive any fees in conjunction with the personal injury common benefit process. They did not receive any fees from TPP clients.[12]

According to the Dugan Law Firm's application, James R. Dugan II has been "involved in every aspect of the Vioxx Private Third Party Payer (TPP) cases from the filing of the first private TPP case in the MDL, Blue Cross Blue Shield of Louisiana, to implementation of the final settlement."  The application also indicates that they "argued motions in court," "prepared all of our TPP plaintiffs' discovery response," "hired experts including Johns Abramson, David Kessler, Terry Leach, Neil Julie, and Jeffrey Harris to work on the Bellwether Trial Cases," and "assisted counsel for various TPPs with implementation of the settlement program."

The Committee observes that James Dugan was appointed Vice Chair of the MDL Purchase Claims Committee, co-chair of the Private Third Party Payer Bellwether Trial Committee (and co-chair of the Bellwether expert committee and member of the Bellwether discovery committee), and contributed significantly to litigation of TPPs' claims in the MDL.

---

[12] The Murray Law Firm on September 16, 2011 submitted a cost expended fact of $88,377 and/or 510 hours claiming some hours and costs which may be duplicative of Dugans' costs and fees.

H.      **Ewing McMillin & Willis PLLC**

Ewing McMillin & Willis PPC reported a TPP common benefit lodestar of $185,600.00 and $1,539.14 in unreimbursed costs, for a total of $187,139.14.  They did not previously submit any of this time in conjunction with the personal injury common benefit process, where they neither applied for nor receive an award.  The firm received $5,669.31 in fees from their clients, which appears to have been shared between five law firms: Hovde Dassow and Deets, Lanier Law Firm, Audet & Partners, Gary Franke LPA, and Ewing McMillin & Willis PLLC.

Ewing McMillin & Willis PLLC's application does not specify their contributions to Vioxx TPP litigation.

I.      **Favre Law Office**

The Favre Law Office reported a TPP common benefit lodestar of $5,005.00 and $366.00 in unreimbursed costs, for a total of $5,371.00.  They did not previously submit any of this time in conjunction with the personal injury common benefit process, where they neither applied for nor received an award.  They did not receive any fees from TPP clients.

The committee observes that the Favre Law Office did not represent any TPP clients. Their application indicates that they filed a case on behalf of consumers asserting claims for economic loss in Illinois; that case was later consolidated and coordinated with the TPP and consumer economic loss claims in the MDL.

J.      **Gary L. Franke & Co.**

Gary Franke & Co. reported a TPP common benefit lodestar of $128,297.50 and $9,522.52 in unreimbursed costs, for a total of $137,820.02.  They did not previously submit any of this time in conjunction with the personal injury common benefit process, where they neither applied for nor received an award.  They received $5,669.31 in fees from their clients, which appears to have been shared between five law firms: Hovde Dassow and Deets, Lanier Law

Firm, Audet & Partners, Gary Franke LPA, and Ewing McMillin & Willis PLLC.

According to their application, Gary L. Franke & Co. (along with Hovde Dassow and Deets, Lanier Law Firm, Audet & Partners, and Ewing McMillin & Willis PLLC) "litigated and prosecuted the trial cases," and "participated in the trial preparation of the cases." Presumably this refers to the Central States and Central Pennsylvania cases in New Jersey.

**K.    Freese and Goss PLLCS**

Freese and Goss reported a TPP common benefit lodestar of $317,487.50 and $6,000.00 in unreimbursed costs, for a total of $323,487.5.  They previously submitted $238,987.50 of this time in conjunction with the personal injury common benefit process, where they were awarded $25,000.  We note, however, that this award was not based on TPP work, and that therefore TPP time reported by Freese and Goss PLLC was not compensated for in the personal injury common benefit process.  They received $75,000 in fees from TPP clients.

Freese and Goss did not submit an initial application.  Their supplemental form provides not information about their contributions.

The Committee observes that Rich Freese was appointed to the Purchase Claims Committee and helped draft the Master Purchase Claims Complaint.

**L.    Hagens Berman Sobol Shapiro LLP**

Hagens Berman Sobol Shapiro LLP reported a TPP common benefit lodestar of $2,823,586.50 and $491,316.07 in unreimbursed costs.  They did not previously submitted any of this time in conjunction with the personal injury common benefit process, where they neither applied for nor received any award. The firm did not receive any fees from TPP clients.

According to their application, "HBSS actively litigated TPP claims in three forums: the MDL, California state court, and New Jersey state court."  In California, "HBSS led litigation on behalf of proposed classes of third party payors and consumers in consolidated proceedings" and

"appealed the trial court's denial of class certification all the way to the California Supreme Court." In the MDL, HBSS was a member of the Purchase claim committee and "heavily involved in drafting the Master Complaint Regarding Class Action Cases." Thomas M. Sobol was co-chair of the TPP Bellwether Committee and served on Bellwether TPPs discovery, expert, and law & briefing committees and "helped ramp up for the bellwether trials."

 HBSS also asked the committee to consider work done relating to the private lien resolution program as being done for the common benefit of TPPs:  "HBSS then represented approximately eighty TPPs in negotiations with the Plaintiffs' Steering Committee to implement a mutually beneficial lien resolution program."

The Committee observes that Tom Sobol of HBSS (along with Chris Seeger negotiated the cross-venue TPP settlement and TPP common benefit agreement. HBSS also contributed significantly to MDL and California state TPP litigation and created and implemented the Private Lien Resolution Program that resolved liens on behalf of several hundred TPPs.

## M.    Herman Herman Katz & Cotlar

Herman Herman Katz & Cotlar reported a TPP common benefit lodestar of $981,100.00 and did not specify the amount of unreimbursed costs, for a total of $981,100.00.  They previously submitted $425,613.00 of this time in conjunction with the personal injury common benefit process, but were not awarded a fee for TPP time in the prior award of $23.3 million. They did not receive any fees from TPP clients.

Herman Herman Katz & Cotlar served as liaison counsel in the MDL. According to their application, "HHKC was involved in all aspects of the MDL proceedings, including coordinating and participating in TPP activities."  "HHKC actively participated in the TPP motions, appearances at conferences and hearings and discovery matters, the Lien Resolution Program, dealt with the court appointed Lien Administrator and Claims Administrator, participated in class

certification issues and scheduling exemplar cases for trial," and "participated as co-trial counsel (along with Seeger Weiss) in the TPP Local 68 matter."

The Committee observes that HHKC played a vital role as liaison counsel that benefitted all TPPs in the MDL.

**N.      Hovde Dassow & Deets**

Hovde Dassow & Deets reported a TPP common benefit lodestar of $696,600.00 and $105,573.54 in unreimbursed costs, for a total of $802,173.54.  They did not previously submit any of this time in conjunction with the personal injury common benefit process, where they were awarded $1.45 million.  They received $5,669.31 in fees from their clients, which appears to have been shared between five law firms: Hovde Dassow and Deets, Lanier Law Firm, Audet & Partners, Gary Franke LPA, and Ewing McMillin & Willis PLLC.

According to their application, Hovde Dassow & Deets (along with Lanier Law Firm, Audet & Partners, Gary Franke LPA, and Ewing McMillin & Willis PLLC) "prosecuted and litigated the [Central States and Central Pennsylvania] trial cases at Judge Higbee's direction, and "participated in the expedited discovery and trial preparation of the [Central States and Central Pennsylvania] cases" in New Jersey.

**O.      Keefe Bartels LLC**

Keefe Bartels LLC reported a TPP common benefit lodestar of $577,506.25 and $15,327.77 in unreimbursed costs, for a total of $592,834.02.  They previously submitted all of this time in conjunction with the personal injury common benefit process, where it appears that they did not receive an award.[13]  They did not receive any fees from TPP clients.

According to their application, Keefe Bartels LLC represented the International Union of

---

[13] The Court's August 9, 2011 Order and Reasons allocating common benefit fees [dkt. No. 63195] does not mention Keefe Bartels LLC.

Operating Engineers Local No. 68 Welfare Fund in New Jersey, and "were key members of a consortium of attorneys who originally conceived theories of claims against Merck, designed a litigation plan and worked on developing a case strategy." The supplemental form indicates that the "design[ed] a litigation strategy, develop[ed] legal theories and liability facts, provid[ed] original insight into Merck's defense and participat[ed] in a voluminous document review project which essentially helped create the blueprint for MDL litigation which succeeded in large party due to such contributions."

**P.     Kline & Specter P.C.**

Kline & Specter P.C. did not report a TPP common benefit lodestar or unreimbursed costs. They requested an award of $1,836,591.20. The Court previously awarded the firm $15 million for their common benefit work.

Kline & Specter, PC's application does not contain any information about TPP specific activities. The firm's claim "is based on the strength of the work it performed for the common benefit of all Vioxx cases." Kline & Specter argues, "Kline & Specter should be paid $1,836,591.20 from this fund, an amount taking into account Kline & Specter's positive contributions and the need to punish the members of the Vioxx FAC, who overpaid themselves for the initial common benefit fund and who wrongly participated in the secret Stratton deal."

**Q.     Labaton Sucharow LLP**

Labaton Sucharow LLP reported a TPP common benefit lodestar of $617,721.50[14] and $22,996.06 in unreimbursed costs, for a total of $640,717.56. They did not previously submit any of this time in conjunction with the personal injury common benefit process, where they did not receive an award. They did not receive any fees from TPP clients.

---

[14] Labaton provided lodestar figures at current and historical rates. The Committee elected to use the lodestar value calculated with historical rates.

Labaton Sucharow LLP was a member of the Purchase Claims Committee and the Private Third Party Payor Bellwether Trial Committee.  According to their application, Labaton Sucharow LLP filed "the first post-recall class action seeking TPP economic damages filed in the country," "participated as part of a 'subgroup to discuss key issues for the upcoming oral argument on defendant's motion to dismiss'," "researched and drafted a memorandum concerning ascertainable loss and cognizable injury to assist Elizabeth Cabraser in preparing for oral argument," and "was actively involved in the bellwether trial process as a member of the Private Third Party Payor Bellwether Trial Committee."

## R.    Lanier Law Firm

The Lanier Law Firm reported a TPP common benefit lodestar of $157,615.00 and no unreimbursed costs, for a total of $157,615.00.  They did not previously submit any time in conjunction with the personal injury common benefit process, where the firm was awarded $27 million.  They received $5,669.31 in fees from their clients, which appears to have been shared between five law firms: Hovde Dassow and Deets, Lanier Law Firm, Audet & Partners, Gary Franke LPA, and Ewing McMillin & Willis PLLC.

According to their application, the Lanier Firm (along with Hovde Dassow & Deets, Audet & Partners, Gary Franke LPA, and Ewing McMillin & Willis PLLC) was "a leader amongst plaintiffs' firms within the New Jersey coordinated Vioxx litigation," and "devoted altogether separate hours of legal work to the private TPP litigation," "often attended telephonic and in-person meetings, discovery strategy session, expert witness preparation, as well as numerous conferences before Judge Higbee both before and after the resolution of the personal injury actions.

## S.    Levin Fishbein Sedran & Berman

Levin Fishbein Sedran & Berman reported a TPP common benefit lodestar of

$658,850.00 and did not specify the amount of unreimbursed costs, for a total of $658,850.00. They previously submitted all of this time in conjunction with the personal injury common benefit process, where they were awarded $19 million.  They did not receive any fees from TPP clients.

According to their application, Levin Fishbein Sedran & Berman represented Local 68 in New Jersey.  They "assisted in the development and implementation of the notice program in that class action," "engaged in extensive discovery against Merck specific to the Third Party Payor claims asserted by Local 68," "participated in the legal research and drafting of briefing performed in the New Jersey Appellate Division, as well as before the New Jersey Supreme Court."

## T.      Levy Phillips & Konigsberg

Levy Phillips & Konigsberg reported a TPP common benefit lodestar of $128,981.50 and no unreimbursed costs, for a total of $128,981.50.  They did not previously submit any of this time in conjunction with the personal injury common benefit process, where they neither applied for nor received an award.  They received $45,191.51 in fees from TPP clients.

According to their application, Levy Philips & Konigsberg "investigated 2 experts, Jay Brophy M.D. and John Abramson, M.D., retaining Dr. Abramson for its 2 bellwether cases," "prepar[ed] for, [took] and handl[ed] follow up work for the deposition of Merck 30b6 witness Janett Tavs," "prepared for an defended a custodian of records deposition in each of its bellwether cases," and "contributed to reviewing document in the Seeger Weiss depository."

## U.      Lieff Cabraser Heimann & Bernstein

Lieff Cabraser Heimann & Bernstein reported a TPP common benefit lodestar of $1,485,307.50 and no unreimbursed costs, for a total of $1,485,307.50.  Lieff Cabraser did not request or receive compensation for any of this time, or for common benefit time incurred for

other Purchase claims (governmental entities and consumers), in connection the personal injury common benefit fee process, in which they were awarded $6 million by the Court for their personal injury common benefit time.  They did not receive any fees from their TPP clients.

According to Lieff Cabraser Heimann & Bernstein's application, they contributed significantly in the MDL and New Jersey.  In the MDL, Elizabeth Cabraser "convened and presided over regular meeting of the Committee, which included discussions and action on strategic and tactical matters related to the assertion of purchase claims in the Master Complaint, discovery, selection of potential bellwether plaintiffs, and other matters."  In New Jersey, the firm "assist[ed] Lead Counsel on class certification (including contributions to appellate level briefing), class notice, bellwether plaintiff selection, and discovery matters."  "Don Arbitblit worked on medical/scientific/expert issues as these related to TPP claims."

The Committee observes that Elizabeth Cabraser was the chair of the Purchase Claims Committee and Co-chair of the Private Third Party Payor Bellwether Trial Committee; she was primarily responsible for the brief in opposition to Merck's motion to dismiss, argued the motion to dismiss, and contributed significantly to all TPP efforts in the MDL.

## V.    Murray Law Firm

The Murray Law Firm reported a TPP common benefit lodestar of $222,537.50 and $88,377.02 in unreimbursed costs, for a total of $374,243.78.  They did not previously submit any of this time in conjunction with the personal injury common benefit process, where they were awarded $850,000.00. *See* footnote 1, *supra.*. They did not receive any fees from TPP clients.

According to their application, "[t]he Murray Law Firm's principle participation in the Vioxx TPP effort was through the work of … attorney James Dugan, who served as co-lead counsel for the TPP plaintiffs in this MDL."  Mr. Dugan's contributions are described above.

The application also states, "[t]he Murray Law firm hereby puts the TPP FAC on notice of its interest in any fees awarded to Mr. Dugan and requests that no fees allocation to either the Murray Law Firm or James Dugan (or the Dugan Law Firm) be disbursed without agreement of both the Murray Law Firm and James Dugan."

The Committee recognizes James Dugan's contributions above in discussing the Dugan Law Firm's application.

## W.   Price Waicukauski & Riley LLC

Price Waicukauski & Riley LLC reported a TPP common benefit lodestar of $893,501.25 and $20,004.68 in unreimbursed costs, for a total of $913,505.93.  They did not previously submit any time conjunction with the personal injury common benefit process, where they were awarded $15,000.  They did not receive any fees from TPP clients.

According to their application, Price Waicukauski & Riley LLC "participated in all aspects of this case from the initial stages of drafting the original complaint, to participating in the MDL proceedings and being appoint to the Purchase Claim Committee," "conducted [research assignment] at the request of the PCC and document review at the law offices of Seeger Weiss," researched "the use of RICO as an allegation in the litigation," and "provided research for the PCC on consumer protection statutes."

## X.   Sadin Law Firm

The Sadin Law Firm reported a TPP common benefit lodestar of $117,725.00 and $2,035.38 in unreimbursed costs, for a total of $119,760.38.  They did not indicate whether they previously submitted any of this time in conjunction with the personal injury common benefit process, but it appears that they neither applied for nor received any award.  They did not receive any fees from TPP clients.

According to their application, the Sadin Law Firm has "been involved in every aspect of

the Vioxx Private Third Party Payer (TPP) cases from the filing of one of the first private TPP case in the MDL, the Allied Services Division case, to implementation of the final settlement," including "organizing the Purchase Claims counsel and attending and participating in the very first MDL TPP meeting in New Orleans and assisting in setting up the Private Third Party Payer Structure" and "participated in conference calls and reviewed email, correspondence, filing and the court documents in these matters."   The application also notes that the firm "was in constant contact with The Dugan Law Firm about these matters."

**Y.   Scott Yung**

Scott Yung reported a TPP common benefit lodestar of $139,042.50 and no unreimbursed costs, for a total of $139,042.50.  They did not previously submit any of this time conjunction with the personal injury common benefit process, where they neither applied for nor received any award.  They received $281,591.00 in fees from TPP clients.

According to their application, "Andrew Yung was appointed to the Private Third Party Payor Bellwether Trial Committee."   The firm "worked with the steering committee to investigate and make recommendations (sic) on experts," "conducted "Bellwether discovery," and "was a valuable resources for the TPP steering committee in its ability to provide strategy thoughts, conduct research, provide client input, and prepare a bellwether case for trial."

**Z.   Seeger Weiss LLP**

Seeger Weiss LLP reported a TPP common benefit lodestar of $4,164,058.75 and $20,005.05 in unreimbursed costs, for a total of $4,184,063.80.  They previously submitted $4,202,858.75 of this time in conjunction with the personal injury common benefit process, but the firms' TPP submission previously was not considered in the prior award of $36,6 million in common benefit fees,  They did not receive any fees from TPP clients.

According to their application, Seeger Weiss LLP "spearheaded the prosecution of such

cases in the New Jersey state courts."  The firm "filed the first TPP action against Merck," represented Local 68, "conducted extensive class discovery, including the review of tens of thousands of pages of documents, achieved certification of a "nationwide class of TPPs in their claims for reimbursement of Vioxx prescription costs, "plan[ed] .. a class notice plan," and "defended against Merck's motion to the New Jersey Appellate Division" and ultimately the New Jersey Supreme Court.  As to settlement, "Mr. [Christopher] Seeger served as lead negotiator in settlement discussions with Merck, often coordinating with other TPP counsel, to facilitate a resolution acceptable to all involved," and "also led negotiations concerning the creation of a common benefit fund … to compensate those who performed common benefit services, and incurred common benefit expenses, to the benefit of TPP claimants."

The Committee observes that Seeger Weiss served as co-lead counsel in the MDL and Liaison counsel in New Jersey.  Chris Seeger negotiated the TPP settlement (along with Tom Sobol) and contributed significantly to TPP litigation in both New Jersey and the MDL.

## AA.    Sheller PC

Sheller PC reported a TPP lodestar of $2,131,247.65.   Sheller did not submit a supplemental form.  The Committee notes that Sheller previously submitted $566,000.00 in conjunction with the personal injury common benefit process (where the firm was awarded $325,000); the committee cannot tell whether this included any of the TPP time claimed here.

According to their application, Sheller PC "represented Local 68 in New Jersey," "assist[ed] the Seeger Weiss law firm with the document review in the New York depository," "worked on several of the bellwether cases by preparing and organizing the exhibits for trial and working with the trial attorneys on witness and exhibit outlines," and "became one of the leading firms, if not the leading firm, in managing the document review and depository."

**BB.**    **Slate Carter Comer PC**

Slate Carter Comer PC reported a TPP common benefit lodestar of $108,975.00 and no unreimbursed costs, for a total of $108,975.00.  They did not previously submit any of this time in conjunction with the personal injury common benefit process, where they neither applied for nor received an award.  The firm received $671,596.99 in fees from TPP clients.

According to their application, the firm "worked extensively with the Hagens Berman and Dugan firms in drafting discovery to Merck, preparing TPP plaintiffs' response to Merck's discovery, and in coordinating discovery with the AGs."  Pamela B. Slate was appointed co-chair of the MDL Bellwether Plaintiffs' discovery committee and was member of the expert committee.

**CC.**    **Sommers & Schwartz PC and Jason Thompson & Associates**

Sommers & Schwartz PC and Jason Thompson & Associates reported a TPP common benefit lodestar of $120,017.50 and $1,226.12 in unreimbursed costs, for a total of $121,243.62. They did not previously submit any of this time in conjunction with the personal injury common benefit process, where they neither applied for nor received an award.  They did not receive any fees from TPP clients.

Sommers & Schwartz's submission includes time and expenses incurred by Jason J. Thompson, a current employee.  Mr. Thompson was formerly employed by the firm of Charfoos and Christensen, who also submitted an application.  Both applications attest that there is no overlap between the time and expense submissions.

According to their application, Sommers & Schwartz PC was involved in New Jersey and MDL litigation "from the beginning."  The firm's common benefit work included, "completing and overseeing my TPP clients' discovery," "review of Vioxx Third Party Payor documents produced by defendants," "work on the lien resolution program," "research of Michigan's drug

product liability statute," and "discussions with clients regarding formularies and coverage for Vioxx."

The Committee discussed Jason Thompson's contributions above in discussing Charfoos and Christensen's application.

**DD.    Sulzer Law Firm**

The Sulzer Law Firm submitted a three page document reporting 41.75 hours and costs of $8.00. They did not submit a substantive application.

**EE.    Wallace Jordan Ratliff & Brandt LLC**

Wallace Jordan Ratliff & Brandt LLP reported a TPP common benefit lodestar of $133,137.50 and no unreimbursed costs, for a total of $133,137.50. They did not previously submit any of this time in conjunction with the personal injury common benefit process, where they neither applied for nor received an award. They received $671,596.99 in fees from TPP clients.

According to their application, the firm spent time "describing, reviewing and coordinating Bellwether plaintiff CBS Michigan's internal data production with discovery committee chairs and co-leads as to the payment information available for the experts;" reviewing and objecting to the 30(b)(6) notice and document requests for Bellwether plaintiff," "responding to [Bellwether] discovery, first disclosures, document requests, objections, supplemental objections," and "discussing [Bellwether] strategy, reviewing the NJ cases, and reviewing the trial package."

**FF.    Law Offices of Eric Weinberg**

Eric Weinberg reported a TPP common benefit lodestar of $1,138,500.00 and $27,392.61 in unreimbursed costs, for a total of $1,165,892.61. He did not previously submit any of this time in conjunction with the personal injury common benefit process, where he was awarded

$3.5 million.  He did not receive any fees from TPP clients.

According to his application, Mr. Weinberg was "a de facto leader in organizing Plaintiffs' Counsel in New Jersey Consolidated Private Third Party Payor Litigation."  He "held a leadership role in the overall development of liability and damages theories and experts in the New Jersey Consolidated Private Third Party Payor Litigation," "conducted extensive research into Merck documents, and medication and scientific information related to Vioxx," "was one of only two lawyers … to actually contribute information to the Trial Package after the settlement, "developed and shared with Plaintiffs' Counsel a benefit/risk theory of Merck's liability that is unique to the Vioxx Third Party Payor litigation," created and shared with Plaintiffs' Counsel a database of information regarding the adverse bone mineral density effects of Vioxx, "analyzed Merck's Alzheimer's Studies," and was "Co-counsel to the Australian Firm Slater Gordon in the successful Personal Injury Class Action Matter ... in Melborne, Australia."

## GG.   Young Law Group[15]

The Young Group reported a TPP common benefit lodestar of $20,635.00 and $318.69 in unreimbursed costs.  They did not previously submit any of this time in conjunction with the personal injury common benefit process, where they neither applied for nor received an award. They did not receive any fees from TPP clients.

---

[15] The Young Law Group did not submit an initial application, but explained in their supplemental submission that they did not receive notice of the deadline for the original application.  The Committee observes that this is plausible, as they appear to have been omitted from our initial email forwarding PTO 57 and are not otherwise involved in the Vioxx MDL.

According to their application, the firm represented a bellwether plaintiff and "all hours detailed herein related to time spent in that regard prior to the case settling."

Dated: June 13, 2012.

Respectfully submitted,

*/s/ Russ M. Herman*
Russ M. Herman
**Herman, Herman, Katz & Cotlar, LLP**
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Telephone: (504) 581-4892
Fax: (504) 561-6024
rherman@hhkc.com


*/s/ Elizabeth Cabraser*
Elizabeth Cabraser
**Lieff Cabraser Heimann & Bernstein, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Fax: (415) 956-1008
ecabraser@lchb.com


*/s/ Christopher A. Seeger*
Christopher A. Seeger
**Seeger Weiss LLP**
77 Water Street
New York, NY 10005
Telephone: (212) 584-0700
cseeger@seegerweiss.com


*/s/ Thomas M. Sobol*
Thomas M. Sobol
**Hagens Berman Sobol Shapiro LLP**
55 Cambridge Parkway, Suite 301
Cambridge, MA  02142
Telephone: (617) 482-3700
Fax: (617) 482-3003
tom@hbsslaw.com

***/s/ Andy D. Birchfield, Jr.***
Andy D. Birchfield, Jr.
**Beasley, Allen, Crow, Methvin, Portis & Miles, P.C.**
218 Commerce Street
Montgomery, AL 36104
Telephone: (800) 898-2034
Fax: (334) 954-7555
andy_birchfield@beasleyallen.com


***/s/ James Dugan***
James Dugan
**Dugan Law Firm**
One Canal Place
Suite 1000
365 Canal Street
New Orleans, LA 70130
Telephone: (504) 648-0180
Fax: (504) 648-0181

***The TPP Fee Allocation Committee***