UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: Vioxx | \* MDL Case No. 1657 |
| | \* |
| PRODUCTS LIABILITY | \* SECTION L |
| LITIGATION | \* |
| | \* JUDGE FALLON |
| *This document relates to* | \* |
| | \* MAGISTRATE JUDGE |
| *James K. Schnepf and Mary-Ann Schnepf* | \* KNOWLES |
| *v. Merck & Co., Inc.,* | \* |
| 2:06-cv-0321-EEF-DEK | \* |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**DEFENDANT MERCK SHARP & DOHME CORP.'S MOTION FOR
SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT THEREOF**

Plaintiffs allege that Mr. James Schnepf ("Plaintiff"/"Mr. Schnepf")[1] suffered multiple strokes as a result of using Vioxx. Compl. at ¶¶ 18, 20–23; SchnepfJ-FESMedlnfo-00003. Yet, although Plaintiff has submitted hundreds of pages of medical records, he has failed to produce any evidence in support of those claims. Mr. Schnepf did suffer a single stroke in February 1999, but he was not using Vioxx at that time. Indeed, Vioxx was not even approved by the FDA and available on the market until May 1999, three months <u>after</u> Mr. Schnepf's event. Because Plaintiff failed to offer any evidence in support of his claims, Plaintiff's claims were rejected by the Vioxx

---

[1] Mary-Ann Schnepf alleges only derivative claims for loss of consortium. *See* Complaint, at para. 48 - 52. Therefore, defendant is entitled to summary judgment as to Mrs. Schnepf's claims for the same reasons set forth herein as to Mr. Schnepf's claims.

Resolution Program's Claims Administrator and, rather than appeal to the Program's Special Master, Plaintiff elected to enter a Future Evidence Stipulation ("FES") and return his case to this Court.

For the same reasons that Mr. Schnepf's claims were found ineligible for compensation under the Resolution Program, Merck now is entitled to summary judgment. Simply put, the evidence does not support that Mr. Schnepf took Vioxx at any time <u>prior</u> to suffering a stroke.[2]

**I.    PLAINTIFF'S CLAIMS WERE REJECTED IN THE RESOLUTION PROGRAM FOR FAILURE TO PROVIDE EVIDENCE THAT HE SUFFERED A STROKE AFTER TAKING VIOXX.**

**A.    Consideration by the Claims Administrator and Gates Committee**

After enrolling in the Resolution Program on June 27, 2008, Mr. Schnepf submitted a Claims Form and Claims Package alleging, as he had in his Complaint, that he suffered multiple strokes on dates in 1999, 2001, and 2003. Ex. 1 (Certified Claims Package), at SchnepfJ-CertClmsPkg 0002–0007. As this Court is well aware, to participate in the Vioxx Resolution Program, claimants were required to submit to the Claims Administrator a Claims Package that included, among other items, a Claims Form indentifying claims, medical records substantiating the alleged injuries, and medical or pharmacy records substantiating Vioxx usage during the relevant time periods. Ex. 2 (Settlement Agreement) at Sec. 1.3.1.

---

[2]    All exhibits referenced herein are attached to Defendant's Statement of Material Facts As To Which There Is No Dispute, filed contemporaneously with this Motion.

2

The Claims Administrator issued its determination on September 4, 2009 rejecting Mr.Schnepf's claims.  Although his Claims Package demonstrated that he suffered a stroke in February 1999, he did not meet the eligibility requirements for the Resolution Program because, among other reasons, the Claims Package did not contain *any* evidence that Mr. Schnepf was taking Vioxx.  Ex. 3 (Claims Administrator Notice of Ineligibility). The Claims Administrator advised Mr. Schnepf that he had the right to submit additional information within 21 days, in which case the Claims Administrator would re-review such material to determine whether it rendered Plaintiffs' claims eligible.  *Id.*  No additional information was submitted within 21 days.

Under the terms of the Settlement Agreement, after the Claims Administrator determined that a claimant failed to meet the Resolution Program's eligibility requirements, the Gates Committee had authority to reconsider a claimant's eligibility. Ex. 2 (Settlement Agreement) at Sec. 2.5.2.  On December 1, 2009, while Mr. Schnepf's claim was before the Gates Committee, his counsel requested and received an extension of time to supply additional evidence in support of Mr. Schnepf's Vioxx usage.  Ex. 1 (Certified Claims Package), at SchnepfJ-CertClmsPkg at 560–561.

The only additional evidence submitted before the Gates Committee issued its determination, however, was an affidavit from Mr. Schnepf, dated January 7, 2010.  Ex.1 (Certified Claims Package), at SchnepfJ-CertClmsPkg at 000562–000568.  In the affidavit, Mr. Schnepf asserted that he took Vioxx from August 1997 until he suffered a stroke in February 1999, as prescribed for him by three different doctors.  Ex.1 (Certified

3

Claims Package, at SchnepfJ-CertClmsPkg at 000564–000568. The affidavit was clearly in error. According to those assertions, Mr. Schnepf would have had to have started taking Vioxx almost two years <u>before</u> Vioxx was approved by the Food and Drug Administration in May 1999 and physicians first began prescribing it. Ex. 8 (FDA Vioxx Approval Letter). Indeed, Vioxx was not approved by the FDA until three months after Mr. Schnepf's February 1999 stroke.

The Gates Committee issued its Final Notice of Ineligibility to Mr. Schnepf on January 14, 2010. *See* Ex. 4 (Gate Committee Notice of Ineligibility). Consistent with the findings of the Claims Administrator, the Gate Committee found that Mr. Schnepf had suffered a stroke in February 1999, but that his claims did not meet the criteria for eligibility in the Resolution Program. *Id*. This Final Notice of Ineligibility came after Mr. Schnepf's claim had been under review in the Resolution Program for more than a year, during which time he was given multiple opportunities to present supplemental evidence to support his claim. The Final Notice of Ineligibility gave Mr. Schnepf 15 days to elect to appeal to the Special Master or 30 days to elect to submit an FES, subject to the terms that his claims and evidence upon returning to litigation would be confined to the Certified Claims Package submitted in the Resolution Program. Mr. Schenpf chose the latter.

**B.     Submission of the Future Evidence Stipulation**

On February 16, 2010, the Claims Administrator received Mr. Schnepf's FES, signed and notarized on February 15, 2010. Ex. 5 (FES). The FES, executed pursuant to

Section 2.7.3 of the Settlement Agreement (*see* Ex. 2), provided that Mr. Schnepf stipulated, *inter alia*, that he would "not attempt to introduce in any court of law or tribunal any evidence contrary to, or in addition to, the allegations, facts or records that were presented to the Program's Claims Administrator, as contained in my Claims Package, or allege an injury connected with Vioxx other than the injury or injuries I claimed through the Program . . . ." Ex. 5 at a para. 6 (emphasis added).

      **C.**      **Belated Submission of Proof of Vioxx Use**

On the same day Plaintiff submitted his FES, he also—for the first time—submitted documents showing evidence of having used Vioxx. *See* Ex. 6 (Late-Submitted Evidence), at 322–354. The records, however, only showed evidence of usage from approximately November 2001 through August 2004—a period several years <u>after</u> Mr. Schnepf's stroke. In an apparent attempt to account for the discrepancy, Mr. Schnepf also submitted an additional affidavit, in which he claimed to have received Vioxx samples from August 1998 until he first filled a prescription for Vioxx in November 2001. *Id*. at 355–357. In other words, Mr. Schnepf continued to claim that he was taking Vioxx at the time of his February 1999 stroke—again, an injury that occurred three months <u>before</u> Vioxx was available for distribution. *See* Ex. 8 (FDA Approval Letter).

Despite the fact that this evidence was extraneous to Plaintiff's already-certified Claims Package, and despite the fact that Plaintiff had not made a showing that this evidence previously had been unavailable, *see* Ex. 5 (FES) at par. 5, the Claims

5

Administrator reviewed this newly submitted evidence.[3]  After doing so, the Claims Administrator advised Mr. Schnepf's counsel that the new evidence would not change the determination as to Mr. Schnepf's ineligibility.  *See* Ex. 7 (Late Evidence Determination).

## II. THE SAME DEFICIENCIES THAT CAUSED REJECTION OF MR. SCHNEPF'S CLAIM IN THE RESOLUTION PROGRAM ENTITLE MERCK TO SUMMARY JUDGMENT.

### A. Legal Standard

Summary judgment should be granted whenever it becomes apparent that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  Summary judgment "is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the . . . Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'"  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (*quoting* Fed. R. Civ. P. 1).

A party moving for summary judgment may discharge its burden to support the motion "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case."  *Id.* at 325.  The burden of

---

[3] In the cover letter transmitting the newly submitted evidence, Plaintiff's counsel basically stated that because his client had previously submitted authorizations to release medical records (prior to the announcement of the Resolution Program), he did not think anything more needed to be done to have the records incorporated into his Claims Package.  *See* Ex. 6 (Late-Submitted Evidence) at 3.  This baffling assertion ignores the extraordinarily detailed step-by-step instructions that the Claims Administrator posted on its website.  It was unquestionably Plaintiff's obligation to procure and submit appropriate copies of records.  *See, e.g.*, Ex. 9.

production then shifts to the nonmoving party to introduce specific facts showing there is a genuine issue for trial.  *Id.* at 322–24; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

    **B.    The Absence of Proof that Mr. Schnepf Suffered a Stroke During or After a Time When He Took Vioxx Entitles Merck to Summary Judgment.**

Plaintiffs allege that Mr. Schnepf's use of Vioxx caused him to suffer a stroke on five separate occasions—February 28, 1999; April 1, 2001; June 23, 2001; October 4, 2001; and June 17, 2003.  Compl. at ¶¶ 18, 20–23.  The actual evidence, however, shows that Mr. Schnepf suffered a stroke on only one of those dates—February 28, 1999.  In spite of Plaintiff's sworn affidavits to the contrary, there can be no dispute that Mr. Schnepf was <u>not</u> using Vioxx at this time.  *See* Ex. 8 (FDA Approval Letter)

Medical records Plaintiff submitted after his Claims Package had been certified appear to show that Plaintiff used Vioxx from November 2001 through August 2004.  Under the terms of the Future Evidence Stipulation executed by Mr. Schnepf, this Court should disregard Plaintiff's late-submitted proof of Vioxx usage because it was not timely submitted as part of the Certified Claims Package and Plaintiff provided no evidence of any prior unavailability.  Absent the late-submitted evidence, Plaintiff has no proof that he took Vioxx at any time, other than his own plainly erroneous affidavits asserting that he began taking Vioxx in August 1997, nearly two years before Vioxx was approved by the FDA.

In any event, neither Plaintiff's Certified Claims Package nor his late-submitted

evidence supports Mr. Schnepf's claims that he suffered additional strokes in April 2001, June 2001, October 2001, or June 2003.  *See* Ex. 1 (Certified Claims Package); Ex. 6 (Late-Submitted Evidence).[4]  Therefore, Merck—without in any way waiving its rights under the Future Evidence Stipulation—submits that even if the late-submitted evidence is considered, Merck remains entitled to summary judgment.

## CONCLUSION

For the reasons stated above, the Court should grant Defendant's Motion for Summary Judgment and dismiss Plaintiffs' complaint with prejudice.

Respectfully submitted,

 /s/ Dorothy H. Wimberly
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana 70130
Phone: 504-581-3200
Fax:    504-581-3361

*Defendants' Liaison Counsel*

---

[4] The Certified Claim Package, in fact, does not include evidence of *any* medical treatment of Mr. Schnepf after 1999 to support those claims.  S*ee* Ex. 1 (Certified Claims Package).  The additional medical records outside of the Certified Claims Package, submitted at the same time as the FES, include records after 1999, but do not support Mr. Schnepf's contention of additional strokes.  *See* Ex. 6 (Late-Submitted Evidence).

8

—and—

Douglas R. Marvin
Eva Petko Esber
M. Elaine Horn
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Phone: 202-434-5000
Fax:    202-434-5029

*Attorneys for Merck Sharp & Dohme Corp.*

**CERTIFICATE OF SERVICE**

      I hereby certify that the above and foregoing Motion for Summary Judgment has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail, upon Liaison Counsel Ann Oldfather by e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 15th day of June, 2012.

      /s/ Dorothy H. Wimberly
      Dorothy H. Wimberly, 18509
      STONE PIGMAN WALTHER
      WITTMANN L.L.C.
      546 Carondelet Street
      New Orleans, Louisiana  70130
      Phone:  504-581-3200
      Fax:     504-581-3361
      dwimberly@stonepigman.com

      *Defendants' Liaison Counsel*