UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA


In Re:  VIOXX PRODUCTS              *     05-MD-1657-EEF
        LIABILITY LITIGATION        *
                                    *     New Orleans, Louisiana
                                    *
                                    *     March 21, 2012
Relates to:  08-CV-4148             *
                                    *     8:30 a.m.
* * * * * * * * * * * * * * * * * * *


PROCEEDINGS BEFORE THE
HONORABLE ELDON E. FALLON
UNITED STATES DISTRICT JUDGE


Appearances:


For the Plaintiffs:          McKnight & Kennedy, LLC
                             BY:  H. VINCENT MCKNIGHT JR., ESQ.
                             8601 Georgia Avenue, Suite 1010
                             Silver Spring, Maryland 20910


For the Plaintiffs:          Herman Herman Katz & Cotlar, LLP
                             BY:  RUSS M. HERMAN, ESQ.
                                  LEONARD A. DAVIS, ESQ.
                             820 O'Keefe Avenue
                             New Orleans, Louisiana 70113


For the Plaintiffs:          Lieff Cabraser Heimann
                               & Bernstein, LLP
                             BY:  ELIZABETH J. CABRASER, ESQ.
                             275 Battery Street, 29th Floor
                             San Francisco, California 94111

1   <u>Appearances</u>:

2

3   For the Plaintiffs:          Barrios Kingsdorf & Casteix, LLP
                                 BY:  DAWN M. BARRIOS, ESQ.
                                 701 Poydras Street, Suite 3650
4                                New Orleans, Louisiana 70139

5

6   For the Defendant:           Skadden Arps Slate Meagher
                                   & Flom, LLP
                                 BY:  GEOFFREY M. WYATT, ESQ.
7                                1440 New York Avenue, NW
                                 Washington, D.C.  20005

8

9   Official Court Reporter:     Toni Doyle Tusa, CCR, FCRR
                                 500 Poydras Street, Room B-406
10                               New Orleans, Louisiana 70130
                                 (504) 589-7778

11

12

    Proceedings recorded by mechanical stenography using
13  computer-aided transcription software.

14

15

16

17

18

19

20

21

22

23

24

25

1                          **PROCEEDINGS**

2                       **(March 21, 2012)**

3              (The following proceedings were held in open court

4    with all parties participating by telephone.)

5              **THE COURT:**  Good morning everyone.

6                   Let's call the case, please.

7              **THE DEPUTY CLERK:**  MDL 05-1657, In Re: Vioxx Products

8    Liability Litigation.

9              **THE COURT:**  Would counsel make their appearance for

10   the record, please, first for the plaintiffs.

11             **MR. MCKNIGHT:**  This is Vince McKnight for the

12   plaintiff, Your Honor.

13             **MR. HERMAN:**  May it please the Court.  Russ Herman

14   for the Plaintiffs Steering Committee.

15             **MR. DAVIS:**  Leonard Davis is also present.

16             **MS. CABRASER:**  Good morning, Your Honor.  Elizabeth

17   Cabraser for plaintiffs.

18             **MS. BARRIOS:**  Good morning, Your Honor.  Dawn Barrios

19   for plaintiffs.

20             **MR. WYATT:**  Good morning, Your Honor.  Geoff Wyatt

21   for Merck.

22             **THE COURT:**  Anyone else?

23                   Let me fill in some background as I understand

24   it.  One of the cases that is pending in this MDL against Merck

25   is a suit brought by Kenneth Walker, a resident of D.C.

1    Mr. Walker filed suit originally on August 4, 2005, pursuant to
2    the D.C. False Claims Act, and the case was filed under seal.
3    He later amended that complaint to assert a separate claim
4    under the D.C. Consumer Protection Procedures Act, CPPA as we
5    call it.  That amended complaint is the operative pleading that
6    I've been dealing with.
7              The amended complaint was unsealed in 2008.
8    Merck removed the case to federal court, and the case was then
9    transferred to this MDL.  The Court previously held that
10   Mr. Walker lacks standing under the D.C. False Claims Act and
11   dismissed the claim.  The CPPA claim asserted in the amended
12   complaint remains pending, but it's now the subject of this
13   motion.
14             First, Merck filed a motion for judgment on the
15   pleadings with respect to the remaining CPPA claim, alleging
16   that Walker himself lacked standing under the act because he
17   has not alleged a consumer transaction; also, that Walker
18   cannot represent any other D.C. consumers because the amended
19   complaint lacks adequate class allegations; and that Walker
20   cannot represent the District of Columbia because the District
21   of Columbia has settled its CPPA claim with Merck.
22             Walker filed an opposition contending that he
23   does personally have standing under the CPPA and also indicates
24   that he would seek leave to amend the amended complaint to
25   include a Rule 23 class allegation.  It's really that aspect of

 1    the case, namely the amendment, that I'm looking to now,
 2    although there's some relationship, actually a close
 3    relationship to the other cases.  From the documents that you
 4    folks have filed, I glean the following:
 5                Walker argues that leave to amend is liberally
 6    given under 15(a) and that the proposed second amended
 7    complaint merely makes explicit the class allegations that
 8    everybody knew about; namely, until recently it was not clear
 9    that they were required under the D.C. CPPA.  According to
10    Walker, the proposed amendment doesn't change the substance of
11    the action and is primarily procedural, as he terms it.  Walker
12    argues that leave should be freely granted to amend, and I
13    assume Walker's position is then Merck would refile the
14    motions.
15                Merck argues that leave to amend should be
16    denied on the grounds of futility.  According to Merck, the
17    proposed amended complaint does, in fact, change the substance
18    of the action because it includes extensive new factual
19    allegations regarding allegedly deceptive communications toward
20    D.C. consumers.  Prior to that, the claim was that Merck misled
21    doctors and now the consumer is the target of the advertising,
22    according to Merck, which they feel is a totally different
23    ballgame.  Merck argues that these new factual allegations do
24    not relate back to the pending complaint, it's a whole new
25    concept, and therefore that they are time barred under the

1    three-year CPPA statute of limitations.

2              Finally, Merck also argues that the proposed

3    amended complaint is also futile because it fails to address

4    the very fundamental pleading defects that is raised from its

5    judgment on the pleadings motion.  That's why I say these are

6    quite related.

7              I'll hear from the parties now.  The motion to

8    amend, let me hear from the plaintiffs.

9         **MR. MCKNIGHT:**  Your Honor, this is Vince McKnight,

10   just to make the record clear.

11        **THE COURT:**  Right.

12        **MR. MCKNIGHT:**  The amended complaint that's pending

13   before the Court now -- and that's the operative complaint --

14   included in paragraph 10 and I believe in paragraphs 54 through

15   57 clear allegations that this matter was intended to encompass

16   claims on behalf of consumers in the District of Columbia.

17   It's stated clearly in those paragraphs.  From the Court's

18   recitation of the facts, we understand the Court is aware of

19   those particular paragraphs, so I'm not going to rehash them

20   right now.

21        **THE COURT:**  Right.

22        **MR. MCKNIGHT:**  So this matter has been part of this

23   case since August of 2005.  Even more importantly is that

24   defendant recognized that in its notice of removal under the

25   Class Action Fairness Act.  Merck essentially stated in its

1    notice of removal that this representative action was, in

2    essence, a putative class action on behalf of the consumers of

3    the District of Columbia.  So its own pleadings acknowledged an

4    understanding that this was, in essence, a representative

5    claim.

6              As the Court indicated, there were subsequent

7    cases that developed in the District of Columbia that suggested

8    that it would be more prudent to have a class action as opposed

9    to a representative action in order to maintain this claim on

10   behalf of the citizens of the District of Columbia.  So we

11   believe that this amendment only amplifies claims that everyone

12   knew about, including Merck by its own admission, dating back

13   to 2005.

14             So in our view, Merck's argument that this is a

15   new and special and different allegation is just without basis,

16   and the pleadings dramatically demonstrate that this has always

17   been part of the case.  All we have done is amended the

18   complaint to amplify allegations that were already in

19   existence.  Once you accept that premise that the allegations

20   have been here since 2005, then the "relation back" arguments

21   and other arguments fail right there, and this matter should be

22   allowed to proceed to the next stage.

23             As the Court indicated in its opening statement,

24   Merck then wants to file a motion and re-allege some of the

25   same issues that it raised in its motion for judgment on the

1  pleading.  We'll address them at that time.  However, we

2  believe that those arguments with respect to standing under

3  D.C. law and whether Mr. Walker is an adequate representative

4  and whether Mr. Walker has been injured under D.C. law, we have

5  addressed those in our opposition to the motion for judgment,

6  and we believe that those arguments will fail also.

7          **MR. HERMAN:**  Your Honor.  May it please the Court.

8  This is Russ Herman on behalf of the PFC.  While we will not

9  argue, it's not necessary, we do want the record to note that

10  the PSC strongly supports the position that attorney Vince

11  McKnight has briefed and argued.

12          **THE COURT:**  Okay.  Let me hear, then, from Merck.

13          **MR. WYATT:**  Good morning, Your Honor.  It's Geoff

14  Wyatt for Merck.

15          As Your Honor summarized, I think correctly, our

16  position is that the factual allegations of the operative

17  complaint, the fundamental theory of the complaint is that

18  Merck misled doctors in the District of Columbia and D.C.

19  Medicaid; and as a result of those misrepresentations to

20  doctors, Vioxx was prescribed to D.C. consumers.

21          I think the argument of my fellow counsel is

22  more focused on the class allegations or the lack of class

23  allegations in the original complaint.  That's not really our

24  argument.  You can see this in the reply brief as well.  It

25  points out that it should have been clear that Walker intended

1    to represent individual consumers or to represent the interests
2    of consumers.  That's not really our argument.
3            Our argument is that the theory of the case, the
4    underlying factual allegation that supports the claim for
5    relief would be materially altered by the amendment.  To sort
6    of illustrate the point, if you look at paragraphs 29 through
7    38 of the operative complaint, these allegations are talking
8    about what Merck allegedly said or represented to doctors in
9    the District of Columbia.
10           It talks about the cardiovascular card.  It
11   talks about Merck's sales force and the detailed blitz that
12   Merck allegedly undertook in support of Vioxx to doctors.
13   These allegations don't discuss anything that Merck ever said
14   to a single consumer.  It's not that the complaint didn't
15   allege a cause of action under the CPPA, but it didn't suggest
16   that the theory of relief was that Merck misrepresented or
17   failed to disclose anything to consumers.
18           THE COURT:  He points to paragraph 10 of his pleading
19   where he says the plaintiff brings this action on behalf of
20   himself, the District of Columbia, the District of Columbia
21   residents who purchased Vioxx.  He goes on to say he alleges
22   that the defendant, Merck & Co., committed unlawful trade
23   practices in connection with the marketing and selling of Vioxx
24   to consumers in the District of Columbia in violation of the
25   D.C. Code.  He said "marketing and selling," so he points to

that.  How do you deal with that?

       **MR. WYATT:**  Yes, Your Honor.  Those allegations do mention consumers, but our position is -- and I think the cases support the position -- that those kinds of allegations are not particularized enough to support a "relation back," and I think there are sort of two aspects to this.

       One is that these are allegations sounding in fraud and there's a duty to allege allegations of fraud with particularity, giving the who, what, when, where, and why.  I don't think there's any allegation of that nature in the operative complaint with respect to representations to consumers.  There's nothing akin to, for example, the allegation that Merck used a cardiovascular card while detailing doctors in the District.

       The other aspect of it is that we cited cases in our opposition that say that "generalized language" can't be used as a placeholder for specific allegations to be made later.  That's the *Schirle* case involving defamation.  There you had a case against a couple of defendants and it was amended, same defendant but added a few additional instances of alleged defamation.  The court said you can't do that.  Even though the original complaint said that generally there were multiple statements and comments made, you can't point back to the fact that you said there were statements and comments to support specific instances of defamation that you hadn't

1   alleged previously.

2           I think counsel has taken a position in the

3   papers that you get "relation back" as long as there's no new

4   party or no new claim being brought, but I don't think that's

5   supported by the cases that we have cited.  *Schirle* didn't

6   involve new claims, as far as I could tell, nor did it involve

7   parties that previously had been strangers to the litigation.

8   Neither did *Louisiana Wholesale Drug*.  That was the case that

9   involved changing theories of antitrust brought in both

10  complaints under the Clayton Act.

11          Another case that we cited in our brief,

12  *McCormick v. Interkordsa*, which was a negligence case, the

13  plaintiff alleged that he had been injured by a product.  He

14  sued multiple defendants.  One of them moved for summary

15  judgment and said, "You know, we didn't make the product.  We

16  were just a parent company."  So in response to the motion, the

17  plaintiff amended the complaint and said, "Well, you're

18  negligent in your supervision of the design of the product."

19  The court acknowledged that the complaints had in common the

20  fact that they were alleging negligence from whatever action

21  caused the severe injuries but said it wasn't enough because

22  the theory had changed.

23          I think those cases are a lot like this case.

24  In all those cases, the plaintiff realized the initial theory

25  of liability wasn't viable.  In response to a dispositive

1    motion or a dispositive ruling, they attempted to wrap up a new

2    theory in old fact or causes of action, but "relation back"

3    doesn't allow that.  You don't get to proceed under an entirely

4    new theory of consumer fraud simply because your old complaint

5    also had a consumer fraud claim that concerned the same

6    product.  Our position is that the allegations of the new

7    complaint are just too different to relate back.

8           **MR. MCKNIGHT:**  Well, Your Honor, briefly in response,

9    the allegations and specificity that are required for a fraud

10   allegation would be germane to a False Claims Act matter, but

11   the Consumer Protection Procedures Act matter is not sounding

12   in fraud, so therefore the general Rule 8 pleading applies to

13   it.  Notice pleading is all that is required with a Consumer

14   Protection Procedures claim.

15          Secondly, we have alleged that the company

16   committed unlawful trade practices in connection with marketing

17   and selling.  The District of Columbia has nothing short of

18   almost 38 to 56 unlawful trade practices covered by the D.C.

19   Code.  So essentially what defendant is saying is that we

20   didn't specifically say in a certain section of the complaint

21   that there were lies that are misrepresentations that directly

22   flowed to consumers, but the issue is whether there were

23   unlawful trade practices that were committed.

24          The zone of danger, if you will, that the D.C.

25   Consumer Protection Procedure Act reaches are individuals who

may receive a good or service as a result of an unlawful -- or
as part of a transaction in the District of Columbia.
Mr. Walker and the consumers of the District of Columbia who
bought Vioxx are within the zone of persons to be protected by
this law as described in *Grayson*, so the allegations fairly put
them on notice of unlawful trade practices.

We continue to suggest that their conduct and
allege that their conduct was an expressed unlawful trade
practice under the D.C. Consumer Protection Procedure Act.  We
have always said that.  We have said that all along.  We
continue to say that now.  So parsing the complaint the way the
defendant would have you do it doesn't reach the result that
they seek.

**THE COURT:**  I understand.  We have met this before in
this case, not in this particular case but in the MDL,
primarily in the tort area.  In the tort area, the target of
the advertising is really simply directed to the significance
*vel non* of the learned intermediary doctrine.  In some states,
if you target the consumer rather than the doctors, then you,
meaning the pharmacy, lose the defense of learned intermediary,
and therefore they have an increased duty to advise the
consumer; whereas with the learned intermediary doctrine, they
literally have no responsibility to advise the consumer.  To
some extent, changing the target doesn't change it other than a
focus on a particular defense.

1       The consumer claims as opposed to the tort

2  claims are to some extent different in that the target of the

3  consumer has to do with somewhat standing.  The relationship

4  between the pharmacy and the consumer has to be established in

5  order for the act to be applicable.  So when the pharmacy

6  company targets the consumer, then that gives them some

7  connection, which at least in some cases, such as the *Williams*

8  case in D.C., says that that is significant.

9       So to some extent it is a change, it's a

10  substantive change, but the issue is whether or not it's

11  anything new or whether you have already touched it, primarily

12  in paragraph 10 or other paragraphs in your initial pleading.

13  I do see it as a new approach, but that doesn't necessarily

14  mean that it is new to the complaint.  It may have been touched

15  on.

16       While I have you on the line, talk to me about

17  the standing issue.  As I understand it, the plaintiff had some

18  musculoskeletal problems -- I'm talking about Mr. Walker now --

19  some pain, and he took Vioxx and his pain was relieved.  He had

20  no secondary problems.  He didn't have a heart attack or a

21  stroke or anything of that sort.  So he paid money for Vioxx

22  and he got some benefit from Vioxx.  As I understand from the

23  pleadings or the record, there's no adverse effects.  What's

24  your position there?

25       **MR. MCKNIGHT:**  Our position with respect to that

under D.C. law, Your Honor, is that first of all, to be clear, Mr. Walker was under treatment for cardiovascular illnesses, had suffered a stroke, was under a chronic stroke situation during the time that he was taking Vioxx, and also was diabetic and overweight.

Our position is that standing under D.C. law is based upon the fact that he actually paid for the medication himself and expended dollars, meaning standing is based upon the analysis that he suffered a statutory harm and injury in spending his money on this particular drug, whereas there were other alternatives that were less expensive and less dangerous and less risky to him.

The same is true for other D.C. residents.  They had other available alternatives.  So the *Grayson* case and the D.C. law establishes that standing can be based upon expending money and purchasing and not on personal injury.  In fact, the D.C. consumer protection law specifically excludes any claims that sound in personal injury.  It's not covered by the law. The law wasn't intended to reach those things.

The law was meant to address unfair practices by merchants who were selling goods in the District of Columbia. Once you have committed an unfair practice, then the law in the District of Columbia focuses on the sale and the purchase price of the sale as being a damage, where it says three times the cost or $1,500, whichever is greater.

1              In fact, if you look at the D.C. *Cablevision*
2    case, that case also turned into a class action, but the
3    individual consumers lost, I think, $5 a piece for unfair late
4    fee charges that were assessed to them, and that was considered
5    enough to give them all standing.  So under D.C. law, standing
6    is provided in case after case for the act of purchasing, and
7    that's how it's been interpreted.
8              THE COURT:  You cite *Williams* for another
9    proposition, but if you peel *Williams* back, though, the
10   *Williams* court concluded plaintiffs failed to state a claim
11   because they didn't allege that the drug physically injured
12   them or did not work.  They also didn't allege that he was
13   personally deceived.  The thrust of *Williams*, it seemed to me,
14   at least on that aspect of the claim, was focused on the fact
15   that he didn't have any physical injuries, so he lacked
16   standing.
17             The defendant cites the *Rivera* case, which is
18   really a Fifth Circuit case, indicating that a deceptively
19   marketed drug, a person who takes it, benefits from it and is
20   not adversely affected has no claim.
21             MR. MCKNIGHT:  It's also important to note that the
22   *Williams* case is -- I know we do cite it for certain
23   propositions, but the *Williams* case is a district court
24   decision in Washington which came out before the *Grayson*
25   decision came out of the D.C. Court of Appeals, which is the

1    highest court in Washington, which then interpreted and gave a

2    definitive reading on what standing meant under the D.C.

3    consumer protection act.  That had not been firmly established

4    at the time of the *Williams* case.

5            **THE COURT:**  How does Merck see it?

6            **MR. WYATT:**  Well, Your Honor, I think there's

7    actually a couple of strands to the argument.  One is whether

8    you have an economic injury, for standing purposes, if you

9    purchase the product and then find out later that it was

10   defective in a way that didn't affect you.

11           I think the examples given in the *Rivera* case

12   are maybe it would have injured you or maybe it wouldn't have

13   been as efficacious as promised.  Under those circumstances,

14   you might have an economic loss injury that you could base on

15   the purchase price, but otherwise you can't do that.  I think

16   *Williams* and *Rivera* basically make the same point or reach the

17   same conclusion on those kinds of allegations.

18           What I think the plaintiff has argued in their

19   papers is that -- I mean in addition to trying to distinguish

20   with cases, although, respectfully, I don't think actually

21   *Grayson* makes a difference in the analysis as to economic

22   injury because that case is on a different point, which is that

23   the violation of the statute by itself is a form of injury,

24   regardless of whether it has any economic consequences, as long

25   as you have been affected by the practice.

| | |
|---|---|
| 1 | We don't think that merely purchasing the good |
| 2 | is sufficient to establish a connection to the practice because |
| 3 | the practice wasn't the sale of the good per se, or at least I |
| 4 | don't think that's what's been alleged here, but the manner in |
| 5 | which it was sold, the way it was marketed, the representations |
| 6 | or omissions that were allegedly made in connection with it. |
| 7 | As I view the pleadings, there's still no |
| 8 | connection between anything that Merck allegedly did and Walker |
| 9 | himself.  There's no allegation that he saw a particular TV ad |
| 10 | or saw an ad in a magazine or that a doctor said anything that |
| 11 | was a result of anything that Merck said to his doctors.  So |
| 12 | even under that version of injury, the statutory injury, we |
| 13 | don't think there's standing in this case based on the facts |
| 14 | that have been alleged in either complaint. |
| 15 | **MR. HERMAN:**  I'm sorry, Your Honor.  I didn't mean to |
| 16 | interrupt.  For the PSC, I just want to make a two-minute |
| 17 | argument as to why I believe plaintiff should prevail. |
| 18 | The question is not injury per se.  The question |
| 19 | is what duty did Merck have with respect to the design and |
| 20 | marketing of the drug and did it increase the risk of harm to |
| 21 | the consumer. |
| 22 | I believe that Merck has very skillfully avoided |
| 23 | the increase of risk as a consumer concern and right.  When you |
| 24 | design and market and fail to adequately warn of a drug which |
| 25 | will increase the risk of harm to a consumer, then from the |

1    PSC's point of vantage, the consumer should have a right of
2    action to recover what the consumer paid for the drug.  If the
3    drug had been properly designed and had not been
4    misrepresented, then the consumer would have had a real choice
5    to avoid something which increased a substantial risk to
6    purchaser.
7         **THE COURT:**  Let me ask Merck.  Let's assume that the
8    plaintiff, Walker, bought the drug because he had some muscular
9    pains.  The pains went away and he went on about his business,
10   and he later found out that the drug was problematic for these
11   other conditions.  He had no problem with his other conditions,
12   but he found out about it and feels that had he known, he
13   wouldn't have purchased it.  Your view of the law in D.C.,
14   would he have standing to file this suit?
15        **MR. WYATT:**  I don't think he would have standing,
16   although there would be, I guess you could call them --
17   temporally speaking, there was no connection between the
18   alleged misconduct and the purchase itself, which is kind of
19   the getting-on point for bringing a consumer fraud claim, I
20   think, under any jurisdiction.  So, no, I think there would not
21   be standing under those circumstances.
22        **THE COURT:**  How does the plaintiff see it?
23        **MR. MCKNIGHT:**  Well, Your Honor, the issue here in
24   terms of the scope of the law to reach all unfair trade
25   practices in the District of Columbia is it's very broad.  In

that regard, they define the consumer as someone who is going
to receive the good or service.  So if it was a material
misrepresentation and the consumer would have had an
opportunity to make a choice that he couldn't make because of
the material misrepresentations or the information wasn't
provided, then he has been injured under D.C. law and is
entitled to recover.

        **THE COURT:**  You feel it doesn't matter that he didn't
have any physical injury?

        **MR. MCKNIGHT:**  I don't think that's an issue at all
under D.C. law.

        **THE COURT:**  Okay.  Thank you.

        Anyone else have any comments?  I understand
both of your positions.

        **MR. WYATT:**  I have just one more comment, Your Honor.

        **THE COURT:**  Wait just a moment.  Would you announce
who is speaking.

        **MR. WYATT:**  Sorry.  This is Geoff Wyatt for Merck.  I
just want to talk about the last argument, which is just that
the issue is standing, which is a federal issue.  So regardless
of whether D.C. law would authorize that type of claim, our
position is that as a matter of federal standing law, that's
not an injury that's causally related sufficient to give
standing.

        **THE COURT:**  You feel that the federal standing law is

1    applicable and not the D.C. substantive law?

2            **MR. WYATT:**  The D.C. substantive law applies but not

3    to the extent that it would authorize more broadly than is

4    available under Article III principles.  Our reading of the

5    *Rivera* and the *Williams* cases is that you need an injury beyond

6    simply regrets after the fact, finding out that there was

7    something about the drug that was misrepresented.  To have

8    standing, you need to have been subject to misrepresentations

9    at the time that you made the purchase.

10           **THE COURT:**  Well, the plaintiff's position is that

11   his loss is the purchase of the drug.  He is not saying that he

12   had any physical injury.  He is saying that he had an economic

13   injury.  That's what he wants to recover for, not physical

14   injury.

15           **MR. WYATT:**  Right.  I understand that.  But again,

16   both *Rivera* and *Williams* are very clear that purchase itself is

17   not an injury for standing purposes.

18           **MR. MCKNIGHT:**  Your Honor, our only response to that

19   is *Grayson* -- as you understand, the District of Columbia is

20   essentially a federal enclave.  *Grayson* applies federal law and

21   discusses federal standing principles in reaching the

22   conclusions that it does.  There are some circumstances where

23   the state analysis with respect to standing differs from the

24   federal analysis and there are cases that follow that line, but

25   in the District of Columbia, the District of Columbia adheres

1    to federal principles.  The *Grayson* case applies federal

2    principles of standing to reach its conclusions.  So the

3    distinction he is trying to make I think doesn't apply here.

4           **MR. WYATT:**  I would agree with that insofar as that

5    *Grayson* was applying federal precedent.  Strictly speaking, if

6    that rationale is inconsistent with Fifth Circuit precedent,

7    Fifth Circuit precedent would govern.

8           **MS. CABRASER:**  Your Honor, Elizabeth Cabraser just

9    with a point of information on background with respect to, I

10    think, the Rule 15(a) point; and that is that the purchase

11    claims master class action complaint, which was filed back in

12    the fall of 2005 to capture the underlying claims of all the

13    cases that were brought into the MDL that asserted consumer

14    claims for purchase, does include a reference in paragraph 221

15    to this D.C. statutory claim.  It is part of a section of the

16    complaint that lists the statutes of the various states and

17    jurisdictions included in that complaint.

18           So it is not a fulsome explanation of D.C. law

19    itself, but it reincorporates by reference the lengthy factual

20    allegations and the class action allegations of the master

21    complaint.  It's been on file for a very long time.  For that

22    reason, perhaps it's not in the front of anyone's mind, but it

23    has been there.

24           **THE COURT:**  So your position is that that interrupted

25    prescription for all of the claims?

1          **MS. CABRASER:**  Your Honor, that is certainly one of

2   the purposes of filing that complaint.  It's our position that

3   that does hold the running of statutes of limitations with

4   respect to the consumer claims that were included in D.C.

5   Section 28-3901, *et seq.* was one of those claims.

6          **MR. HERMAN:**  May it please the Court.  Russ Herman

7   with one more comment.  In the tort cases, Merck has fervently

8   argued that an alleged injured plaintiff made a choice and had

9   personal responsibility for that choice.  Perhaps I'm too

10  concerned about equitable principles, but in the motion here

11  there seems to be no recognition by Merck that it deprived the

12  consumer of a fair choice.  It is the deprivation of choice

13  which entitles the consumer to the return of the purchase price

14  of the pharmaceuticals.  That concludes anything I have to say.

15         **THE COURT:**  Okay.  Anyone else?

16             Okay.  I understand the position of everybody.

17  I appreciate the argument.  It's helpful to me to at least

18  listen to you and also get answers to some of my questions.

19  Some interesting points.  I appreciate the issues.  Thank you

20  very much.  Court will stand in recess.

21             (Proceedings adjourned.)

22                                   * * *

23

24

25

1  **<u>CERTIFICATE</u>**

2        I, Toni Doyle Tusa, CCR, FCRR, Official Court

3  Reporter for the United States District Court, Eastern District

4  of Louisiana, do hereby certify that the foregoing is a true

5  and correct transcript, to the best of my ability and

6  understanding, from the record of the proceedings in the

7  above-entitled matter.

8

9

10                          <u>s/ Toni Doyle Tusa</u>
                           Toni Doyle Tusa, CCR, FCRR
11                          Official Court Reporter

12

13

14

15

16

17

18

19

20

21

22

23

24

25