## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Vioxx | * | MDL Case No. 1657 |
| | * | |
| PRODUCTS LIABILITY | * | SECTION L |
| LITIGATION | * | |
| | * | JUDGE FALLON |
| *This document relates to* | * | |
| | * | MAGISTRATE JUDGE |
| *Sandra Elliott v. Merck Sharpe & Dohme Corp.,* | * | KNOWLES |
| **2:06-cv-10987-EEF-DEK** | * | |
| | * | |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### DEFENDANT MERCK SHARP & DOHME CORP.'S MOTION FOR SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW

The doctrine of judicial estoppel bars Plaintiff Sandra Elliott from asserting her Vioxx claims against Defendant Merck Sharp & Dohme Corp. ("Merck") because she did not list them as an asset in her 2009 bankruptcy proceeding as required. Ms. Elliott seeks to "have [her] cake and eat it too" by "retain[ing] the enormous benefit of a bankruptcy discharge while standing in line to receive funds from [her] injury lawsuit" after her debts have been erased and her creditors have been left empty handed. *In re Superior Crewboats, Inc.*, 374 F.3d 330, 333 (5th Cir. 2004). The doctrine of judicial estoppel applies in this case to bar her claims and to protect the integrity of the bankruptcy process. *See In re Coastal Plains, Inc.*, 179 F.3d 197, 213 (5th Cir. 1999). Merck therefore respectfully requests that the Court enter summary judgment in Merck's favor on all of Plaintiff's claims.

### BACKGROUND

**I.      Ms. Elliott's Claims Against Merck**

On September 26, 2006, Plaintiff Elliott, who is a resident of California, filed this lawsuit against Merck in California state court alleging personal injuries arising out of her use of Vioxx.

Ex. 1 (Compl.) ¶4.[1]  Specifically, she claimed that her use of Vioxx from October 2002 to May 2004 caused her to experience congestive heart failure on May 12, 2003. *See id.*; Ex. 2 (Pl. Profile Form) at 2; Ex. 3 (Pl.'s Further Answers to Profile Form) at 2. Ms. Elliott's lawsuit was removed to the United States District Court for the Eastern District of California, and then transferred into the Vioxx Multidistrict Litigation before this Court.

Subsequently, Ms. Elliott enrolled her claim in the Vioxx Resolution Program, alleging that Vioxx had caused her to suffer a myocardial infarction ("MI") (commonly referred to as a heart attack) on May 12, 2003.  *See* Ex. 4 (Claims Administrator Notice of Ineligibility) § 1.  The Resolution Program's Claims Administrator and Gate Committee ultimately determined that Ms. Elliott's claims failed to meet the Program's eligibility requirements for settlement because there was no evidence that she suffered an MI on May 12, 2003.  *See* Ex. 4; Ex. 5 (Gate Committee Notice of Ineligibility) § 2.  The Resolution Program's Gate Committee issued its Notice of Ineligibility on July 6, 2009.  In accordance with the terms of the Master Settlement Agreement (which governs the Vioxx Resolution Program), Ms. Elliott then executed a "Future Evidence Stipulation" ("FES"), which allowed her to exit the Resolution Program and resume her lawsuit in this Court.  *See* Master Settlement Agreement § 2.7.3; Ex. 6 (Elliot Future Evidence Stipulation).  Ms. Elliott's original FES was received by the Claims Administrator on August 7, 2009.  Ex. 7 (Summary of Claims Event Notices) ¶ 14.  On August 20, 2009, the Claims Administrator rejected Ms. Elliott's original FES because it was not notarized.  *Id.* ¶ 15.  Ms. Elliott had 20 days to cure her defective FES and re-submit it.  *Id.*; Ex. 6 ¶ 8.  Two days after her original FES was rejected, Ms. Elliott submitted a second FES that was signed and notarized on

---

[1]     All exhibits referenced herein are attached to Defendant's Statement of Material Facts As To Which There Is No Dispute, filed contemporaneously with this Motion.

August 22, 2009.  It was received by the Claims Administrator on August 24, 2009.  Ex. 6 at 6; Ex. 7 ¶ 17.

This Court's Pretrial Order 43 ("PTO 43") required all plaintiffs who, like Ms. Elliott, had enrolled in the Vioxx Resolution Program but had subsequently submitted an FES and exited the Program, to produce certain discovery materials within thirty days of serving their FES on the Claims Administrator, including a Rule 26(a)(2) case-specific expert report (known as a "*Lone Pine*" report).  *See* PTO 43 §II.A.2; Ex. 6 ¶ 11.  PTO 43 provides that "[i]f a FES Claimant fails to comply with the terms of this Order, the claim shall be dismissed with prejudice, except for good cause shown."  Ex. 6 ¶ 11; PTO 43 § II.B.  Ms. Elliott failed to submit her *Lone Pine* report within the time required by PTO 43, and accordingly, Merck sought dismissal of her case.  Ms. Elliott's claim was included in Merck's Third Motion to Show Cause Why Cases Should Not Be Dismissed With Prejudice For Failure To Comply With The *Lone Pine* Requirements Of PTO 43.  *See* R. Doc. 24995.  On October 30, 2009, the Court granted Merck's Third *Lone Pine* Motion and dismissed Ms. Elliott's case with prejudice for failure to comply with PTO 43.  *See* R. Doc. 26346.

Several months later, Ms. Elliott retained new counsel in this matter, and on April 22, 2010 she filed a motion seeking to set aside the dismissal of her case and reinstate it on this Court's active docket.  R. Doc. 40303 at 1.  Along with this motion, Ms. Elliott submitted an affidavit, in which she stated that she "ha[s] always wanted to pursue this claim and [she] ha[s] done everything within her ability as a lay person to make that happen," and she understood that if she did not qualify for a settlement she could "return to the litigation."  Ex. 8 (Elliott Affidavit) ¶¶, 3 6.  Notwithstanding this statement, her affidavit explained that when her original FES was rejected by the Claims Administrator because it was not notarized, and even though she quickly

submitted a notarized FES within the cure period allowed by the Program, she advised her original counsel to "drop" her case because she felt it was "hopeless" to proceed at that time.  *Id.* ¶ 4.  After retaining new counsel, she explained, she realized she could ask the Court to reinstate her claim.  *Id.* ¶ 7.  Also in connection with her motion, Ms. Elliott submitted the required *Lone Pine* expert report in compliance with PTO 43.  With Merck's consent, the Court granted Ms. Elliott's motion and issued an order reinstating her case on July 8, 2010.  R. Doc. 46845.

## II.    Ms. Elliott's 2009 Bankruptcy Proceeding

On July 7, 2009, while her claim against Merck was still enrolled in the Vioxx Resolution Program, Ms. Elliott filed a Voluntary Petition for Bankruptcy under Chapter 7 of the Bankruptcy Code.[2]  Ex. 10 (Bankruptcy Petition).  As part of her petition, Ms. Elliott filed a sworn "Schedule B," on which she was required to list "all personal property . . . of whatever kind."  *Id.* at 9-11.  Paragraph 21 of Schedule B specifically requires bankruptcy debtors to identify "contingent and unliquidated claims of every nature."  *Id.* at 10.  Ms. Elliott affirmatively indicated that she had no such claims.  *Id.*  On June 30, 2009, approximately one week prior to the filing of her bankruptcy petition, Ms. Elliott signed a "Declaration Concerning Debtor's Schedules," declaring under penalty of perjury that she had read the schedules to be filed with her bankruptcy petition and that they were true and correct to the best of her knowledge, information and belief.  *Id.* at 25.  Ms. Elliott also completed a "Statement of Financial Affairs" accompanying her bankruptcy petition.  This document required her to list "all suits and administrative proceedings to which the debtor is or was a party within one year immediate preceding the filing of this bankruptcy case."  *Id.* at 28.  Again, Ms. Elliott

---

[2]    Ms. Elliott was represented by an attorney in her bankruptcy proceeding.  *See* Ex. 10 at 3. At her deposition in this matter, she testified that she had previously filed for bankruptcy two additional times—one approximately twelve years ago and the other approximately thirty years ago.  Ex. 9 (Elliott Dep. Tr.) at 48:20-49:12.

affirmatively indicated that she had no such suits. *Id.* This statement was also signed by Ms. Elliott under penalty of perjury on June 30, 2009. *Id.* at 37. Ms. Elliott's pending personal injury claims against Merck were not disclosed anywhere within her bankruptcy petition or the accompanying schedules.

On August 12, 2009, the bankruptcy trustee administering Ms. Elliott's bankruptcy estate issued a "Report of No Distribution," which stated that "there is no property available for distribution from the estate over and above that exempted by law," and noted debts in the amount of $39,185 to be discharged without payment. Ex. 11 (Bankruptcy Docket) at 2. On October 19, 2009, Ms. Elliott's debts were discharged by the bankruptcy court, and on October 23, 2009, the bankruptcy court issued an Order of Final Decree discharging the trustee of the estate and closing Ms. Elliott's bankruptcy case. *See* Ex. 12 (Discharge of Debtor); Ex. 13 (Order of Final Decree).

For ease of reference, the following timeline summarizes the sequence of relevant events:

| May 12, 2003 | Ms. Elliott experiences alleged injury of MI/congestive heart failure. | Ex. 1 ¶4<br>Ex. 2 at 2<br>Ex. 3 at 2 |
|---|---|---|
| Sept. 26, 2006 | Ms. Elliott files this lawsuit against Merck asserting claims arising out of her use of Vioxx. | Ex. 1 |
| Apr. 2008 | Ms. Elliott enrolls her claim in the Vioxx Resolution Program. | Ex. 7 ¶¶ 1-5 |
| June 30, 2009 | Ms. Elliott signs bankruptcy petition, schedules and Statement of Financial Affairs, which contained no mention of her lawsuit against Merck, or her enrollment in the Resolution Program. | Ex. 10 at 10, 25, 28, 37 |
| July 6, 2009 | Gate Committee issues Notice of Ineligibility of Ms. Elliott's claim in the Vioxx resolution program, posts it to secure portal and sends notification of posting to Ms. Elliott's counsel. | Ex. 7 ¶ 11 |
| July 7, 2009 | Ms. Elliott's Petition for Bankruptcy is filed. | Ex. 10 |
| July 13, 2009 | Ms. Elliott's counsel logs on to portal and views Gate Committee Notice of Ineligibility for the first time. | Ex. 7 ¶ 12 |

| Aug. 7, 2009 | Ms. Elliott's original FES received by the Vioxx Claims Administrator.  By serving an FES, Ms. Elliott indicates that she will continue to pursue her claims in court. | Ex. 7 ¶ 14 |
|---|---|---|
| Aug. 12, 2009 | The bankruptcy trustee issues "Report of No Distribution" regarding Ms. Elliott's bankruptcy estate. | Ex. 11 at 2 |
| Aug. 20, 2009 | Ms. Elliott's counsel notified that her FES had been rejected because it was not notarized, as required.  She has 20 days to cure the defect. | Ex. 7 ¶15; Ex. 6 ¶ 8 |
| Aug. 22, 2009 | Ms. Elliott's second FES signed and notarized. | Ex. 6 at 6 |
| Aug. 24, 2009 | Ms. Elliott's notarized FES received by Claims Administrator. | Ex. 7 ¶ 17 |
| Oct. 9, 2009 | Merck files Third *Lone Pine* motion, seeking dismissal of Ms. Elliott's case for failure to submit materials required by PTO 43. | R. Doc. 24995 |
| Oct. 19, 2009 | Bankruptcy court discharges Ms. Elliott's debts. | Ex. 12 |
| Oct. 23, 2009 | Bankruptcy court issues Order of Final Decree closing Ms. Elliott's bankruptcy case. | Ex. 13 |
| Oct. 30, 2009 | Ms. Elliott's case dismissed with prejudice by this Court pursuant to PTO 43. | R. Doc. 26346 |
| Apr. 22, 2010 | Ms. Elliott files motion seeking to reopen her lawsuit against Merck. | R. Doc. 40303 |
| July 8, 2010 | Court grants Ms. Elliott's motion with Merck's consent and reopens her case. | R. Doc. 46845 |

## LEGAL STANDARD

Summary judgment should be granted whenever it becomes apparent that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Summary judgment "is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the . . . Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'"  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (*quoting* Fed. R. Civ. P. 1).  If a defendant moves for summary judgment on the basis of an affirmative defense, such as judicial estoppel, the defendant bears the burden of establishing the affirmative defense.  *See Crescent Towing & Salvage Co. v. M/V Anax*, 40 F.3d 741, 744 (5th Cir. 1994).  If the defendant establishes all the elements of a valid affirmative defense, the

plaintiff then must go beyond the pleadings and set forth specific facts showing a genuine

dispute for trial. *See McGregor v. La. State Univ. Bd. of Supervisors*, 3 F.3d 850, 865 (5th Cir.

1993).

## ARGUMENT

I.     **Judicial Estoppel Prohibits Ms. Elliott From Taking Contrary Positions Before This Court and the Federal Bankruptcy Court.**

The doctrine of judicial estoppel bars Ms. Elliott from asserting her claims against Merck

in this lawsuit because she did not disclose them as an asset in her bankruptcy proceeding.

"Judicial estoppel is a common law doctrine that prevents a party from assuming inconsistent

positions in litigation." *Superior Crewboats,* 374 F.3d at 334.[3]   The purpose of this equitable

doctrine is to "'protect the integrity of the judicial process,' by preventing parties from playing

fast and loose with the courts to suit the exigencies of self interest."  *In re Coastal Plains, Inc.*,

179 F.3d 197, 205 (5th Cir. 1999) (quoting *Brandon v. Interfirst Corp.*, 858 F.2d 266, 268 (5th

Cir. 1988)).

In the bankruptcy context, the law is clear that "the Bankruptcy Code and Rules impose

upon bankruptcy debtors an express, affirmative duty to disclose all assets, *including contingent*

*and unliquidated claims*."  *Coastal Plains,* 179 F.3d at 207-08 (emphasis in original).  "*Any*

*claim with potential must be disclosed*, even if it is 'contingent, dependent, or conditional.'"  *Id.*

at 208 (emphasis in original) (quoting *Youngblood Grp. v. Lufkin Fed. Sav. & Loan Ass'n*, 932 F.

Supp. 859, 867 (E.D. Tex. 1996)).  "Viewed against the backdrop of the bankruptcy system and

the ends it seeks to achieve, the importance of this disclosure duty cannot be overemphasized."

*Id.*  When a debtor breaches that duty—as Ms. Elliott did here—the judicial estoppel doctrine

---

[3]     Federal law applies to this issue because Ms. Elliott's prior inconsistent position was
       asserted in federal bankruptcy court.  *See Superior Crewboats*, 374 F.3d at 334 (citing
       *Coastal Plains,* 179 F.3d at 205).

bars her from later pursuing her undisclosed claims. *Id.* at 208. This rule is fundamental to the bankruptcy process, for without it, the lesson to debtors would be: "[c]onceal your claims; get rid of your creditors on the cheap, and start over with a bundle of rights. This is a palpable fraud that the court will not tolerate, even passively." *Id.* at 213 (quoting *Payless Wholesale Distribs., Inc. v. Alberto Culver (P.R.) Inc.,* 989 F.2d 570, 571 (1st Cir. 1993)). Instead, the rule is that the debtor, "'having obtained judicial relief on the representation that no claims existed, cannot now resurrect them and obtain relief on the opposite basis.'" *Id.*

## II.   Judicial Estoppel Bars Ms. Elliott From Pursuing Any Vioxx Claims Against Merck.

Judicial estoppel applies when three criteria are met: (1) the position of the party to be estopped is clearly inconsistent with its previous one; (2) a court accepted that previous position; and (3) the nondisclosure was not "inadvertent." *Superior Crewboats*, 374 F.3d at 335. Each of these criteria are easily met by the undisputed facts in Ms. Elliott's case.

By June of 2009, Ms. Elliott's lawsuit against Merck had been pending before this Court for almost three years, and she had been pursuing her claims within the Vioxx Resolution Program for over a year. Yet the bankruptcy petition, schedules and accompanying Statement of Financial affairs that she signed under penalty of perjury on June 30, 2009 and filed in the bankruptcy court on July 7, 2009 made no mention of her suit. *See* Ex. 10. Indeed, in these materials she affirmatively indicated in two separate locations that she had *no* contingent or unliquidated claims of *any nature*, and that she was *not* a party in any suit or administrative proceeding at that time, or within the previous year. *Id.* at 10, 28. Ms. Elliott's unabashed omission of her pending claims against Merck from her bankruptcy filings was thus "tantamount to a representation that no such claim[s] existed." *Superior Crewboats*, 374 F.3d at 335 (quoting *Coastal Plains*, 179 F.3d at 210). Yet, only a few months after she benefitted from this

representation (through a "no asset" discharge), Ms. Elliott redoubled her efforts to seek damages from Merck based on her personal injury claims, successfully petitioning this Court to reopen her case.  *See* R. Doc. 40303; R. Doc. 46845.  Under Fifth Circuit precedent, "[s]uch blatant inconsistency readily satisfies the first prong of the judicial estoppel inquiry."  *Superior Crewboats*, 374 F.3d at 335; *see also Coastal Plains*, 179 F.3d at 210.

Likewise, the second element of judicial estoppel is established in this case because by discharging Ms. Elliott's Chapter 7 bankruptcy on October 19, 2009, the bankruptcy court adopted her position that she had no claims.  *See Superior Crewboats*, 374 F.3d at 335 (court adopted the petitioners' position that they had no personal injury claims by issuing a "no asset" discharge); *In re Walker*, 323 B.R. 188, 195 (Bankr. S.D. Tex. 2005) ("This Court accepted the debtor's previous position when . . . [it] signed an order granting a discharge to the Debtor and signed a final decree closing the Debtor's chapter 7 case.").

Lastly, Ms. Elliott's failure to disclose her pending lawsuit against Merck in her bankruptcy proceeding was not inadvertent.  Inadvertence can be shown only where "the debtor either lacks knowledge of the undisclosed claims *or* has no motive for their concealment." *Coastal Plains*, 179 F.3d at 210.  Here, Ms. Elliott plainly had both knowledge of her undisclosed lawsuit and a motive for its concealment.  Indeed, Ms. Elliott had been actively pursuing her personal injury claims against Merck for almost three years at the time of her bankruptcy petition, before this Court and then within the Vioxx Resolution program.  As she stated in the affidavit that accompanied her motion to reopen her case, she "ha[s] always wanted to pursue this claim and [she] ha[s] done everything within her ability as a lay person to make that happen."  Ex. 8 ¶ 6.  Given these facts, there can be no question that when Ms. Elliott signed her bankruptcy petition, schedules and Statement of Financial Affairs on June 30, 2009 and filed

them in the bankruptcy court on July 7, 2009, she had knowledge of her claims against Merck that she was actively pursuing during that very same time period.[4]

Ms. Elliott also had a clear motive for concealment of these claims.  The Fifth Circuit has held that the ability to obtain a discharge from creditors from a bankruptcy court, while at the same time potentially reaping a "windfall" by recovering on undisclosed claims without having to disclose them to creditors, establishes motive under the inadvertence prong of the judicial estoppel inquiry.  *Coastal Plains*, 179 F.3d at 213; *see also Superior Crewboats*, 374 F.3d at 336 (stating that "[j]udicial estoppel was designed to prevent such abuses").  Ms. Elliott's motive for her nondisclosure is obvious—to obtain a discharge from creditors so that she might keep any proceeds from her undisclosed claims against Merck to herself.

Accordingly, with respect to Ms. Elliott's claims against Merck in this lawsuit, all three elements of judicial estoppel are met, and the doctrine thus bars Ms. Elliott from asserting her claims.

## CONCLUSION

For the foregoing reasons, the Court should grant Merck's Motion for Summary Judgment and dismiss Plaintiff Elliott's Complaint with prejudice.

---

[4]   Although Ms. Elliott's case was temporarily dismissed with prejudice for about eight months (between October 30, 2009 and July 8, 2010), this dismissal came *after* the bankruptcy court had already accepted her representation that she had no distributable assets and granted her a complete discharge of her debts.  *See* Ex. 12; R. Doc. 26346.  For *every single day* that Ms. Elliott had a bankruptcy petition pending that asserted she had no concurrent lawsuits, she was simultaneously seeking monetary recovery from Merck on her Vioxx claims.

Dated:  June 29, 2012

Respectfully submitted,

By: */s/ Dorothy H. Wimberly*

    Phillip A. Wittmann, 13625
    Dorothy H. Wimberly, 18509
    STONE PIGMAN WALTHER
    WITTMANN L.L.C.
    546 Carondelet Street
    New Orleans, Louisiana 70130
    Phone: 504-581-3200
    Fax:    504-581-3361

Defendants' Liaison Counsel

  —and—

    Douglas R. Marvin
    Eva Petko Esber
    M. Elaine Horn
    Emily Renshaw Pistilli
    WILLIAMS & CONNOLLY LLP
    725 Twelfth Street, N.W.
    Washington, D.C. 20005
    Phone: 202-434-5000
    Fax:    202-434-5029

Attorneys for Merck & Co., Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Motion for Summary Judgment has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail, upon Liaison Counsel Ann Oldfather by e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 29th day of June, 2012.

/s/ Dorothy H. Wimberly
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361
dwimberly@stonepigman.com
Defendants' Liaison Counsel