UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Vioxx | * | MDL Case No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| *This document relates to* | * | |
| | * | MAGISTRATE JUDGE KNOWLES |
| *Sandra Elliott v. Merck Sharpe & Dohme Corp.,* 2:06-cv-10987-EEF-DEK | * | |
| | * | |

**************************************************************************

### DEFENDANT MERCK SHARP & DOHME CORP.'S LR56.1 STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO DISPUTE

Pursuant to LR56.1, Defendant Merck Sharp & Dohme Corp. ("Merck"), by undersigned counsel, hereby submits the following statement of material facts as to which there is no genuine issue to accompany its Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56:

1.  Plaintiff Sandra Elliott is a resident of California.  Compl. (attached hereto as Ex. 1) ¶ 2.

2.  On September 26, 2006, Ms. Elliott filed suit against Merck in California state court alleging personal injuries arising out of her use of Vioxx.  Ex. 1 ¶4.  Specifically, she claimed that her use of Vioxx from October 2002 to May 2004 caused her to experience congestive heart failure on May 12, 2003. *See id.*; Pl. Profile Form (attached hereto as Ex. 2) at 2; Pl.'s Further Answers to Profile Form (attached hereto as Ex. 3) at 2.

3.  In April 2008, Ms. Elliott enrolled her claim in the Vioxx Resolution Program, alleging that Vioxx had caused her to suffer a myocardial infarction ("MI") (commonly referred

1

to as a heart attack) on May 12, 2003.  *See* Claims Administrator Notice of Ineligibility (attached hereto as Ex. 4) § 1; Summary of Claims Event Notices (attached hereto as Ex. 7) ¶¶ 1-5.

4. The Resolution Program's Claims Administrator and Gate Committee ultimately determined that Ms. Elliott's claims failed to meet the Program's eligibility requirements for settlement because there was no evidence that she suffered an MI on May 12, 2003.  *See* Ex. 4; Gate Committee Notice of Ineligibility (attached hereto as Ex. 5) § 2.  The Gate Committee issued its Notice of Ineligibility on July 6, 2009.  Ex. 5 at 1.  On July 13, 2009, Ms. Elliott's counsel logged on to the Claim's Administrator's secure portal and viewed the Gate Committee's Notice of Ineligibility for the first time. Ex. 7 ¶ 12.

5. Ms. Elliott then executed a "Future Evidence Stipulation" ("FES"), which allowed her to exit the Resolution Program and resume her lawsuit in this Court.  *See* Master Settlement Agreement § 2.7.3; Elliot Future Evidence Stipulation (attached hereto as Ex. 6).  Ms. Elliott's original FES was received by the Claims Administrator on August 7, 2009.  Ex. 7 ¶ 14.

6. On August 20, 2009, the Claims Administrator rejected Ms. Elliott's original FES because it was not notarized.  Ex. 7 ¶ 15.  Ms. Elliott had 20 days to cure her defective FES and re-submit it.  *Id.*; Ex. 6 ¶ 8.  On August 22, 2009, Ms. Elliott submitted a second FES that was signed and notarized.  It was received by the Claims Administrator on August 24, 2009.  Ex. 6 at 6; Ex. 7 ¶ 17.

7. Pretrial Order 43 ("PTO 43") required all plaintiffs who had enrolled in the Vioxx Resolution Program but had subsequently submitted an FES and exited the Program to produce certain discovery materials within thirty days of serving their FES on the Claims Administrator, including a Rule 26(a)(2) case-specific expert report (known as a "*Lone Pine*" report).  *See* PTO 43 §II.A.2; Ex. 6 ¶ 11.  PTO 43 provides that "[i]f a FES Claimant fails to comply with the terms

2

of this Order, the claim shall be dismissed with prejudice, except for good cause shown." Ex. 6 ¶ 11; PTO 43 § II.B.

8. Ms. Elliott failed to submit her *Lone Pine* report within the time required by PTO 43, and her claim was included in Merck's Third Motion to Show Cause Why Cases Should Not Be Dismissed With Prejudice For Failure To Comply With The *Lone Pine* Requirements Of PTO 43. *See* R. Doc. 24995. On October 30, 2009, the Court granted Merck's Third *Lone Pine* Motion and dismissed Ms. Elliott's case with prejudice for failure to comply with PTO 43. *See* R. Doc. 26346.

9. On April 22, 2010, after retaining new counsel, Ms. Elliott filed a motion seeking to set aside the dismissal of her case and reinstate it on this Court's active docket. R. Doc. 40303 at 1. Along with this motion, Ms. Elliott submitted an affidavit, in which she stated that she "ha[s] always wanted to pursue this claim and [she] ha[s] done everything within her ability as a lay person to make that happen," and she understood that if she did not qualify for a settlement she could "return to the litigation." Elliott Affidavit (attached hereto as Ex. 8) ¶¶, 3 6. Her affidavit also explained that when her original FES was rejected by the Claims Administrator because it was not notarized, she advised her original counsel to "drop" her case because she felt it was "hopeless" to proceed at that time. *Id.* ¶ 4. After retaining new counsel, she explained, she realized she could ask the Court to reinstate her claim. *Id.* ¶ 7.

10. Also in connection with her motion, Ms. Elliott submitted the required *Lone Pine* expert report in compliance with PTO 43. With Merck's consent, the Court granted Ms. Elliott's motion and issued an order reinstating her case on July 8, 2010. R. Doc. 46845.

11. On July 7, 2009, Ms. Elliott filed a Voluntary Petition for Bankruptcy under Chapter 7 of the Bankruptcy Code. Bankruptcy Petition (attached hereto as Ex. 10).

3

12. Ms. Elliott was represented by an attorney in her bankruptcy proceeding. *See* Ex. 10 at 3. At her deposition in her Vioxx case, she testified that she had previously filed for bankruptcy two additional times—one approximately twelve years ago and the other approximately thirty years ago. Elliott Dep. Tr. (excerpts attached hereto at Ex. 9) at 48:20-49:12.

13. As part of her July 7, 2009 bankruptcy petition, Ms. Elliott filed a sworn "Schedule B," on which she was required to list "all personal property . . . of whatever kind." Ex. 10 at 9-11. Paragraph 21 of Schedule B specifically requires bankruptcy debtors to identify "contingent and unliquidated claims of every nature." *Id.* at 10. Ms. Elliott affirmatively indicated that she had no such claims. *Id.* On June 30, 2009, approximately one week prior to the filing of her bankruptcy petition, Ms. Elliott signed a "Declaration Concerning Debtor's Schedules," declaring under penalty of perjury that she had read the schedules to be filed with her bankruptcy petition and that they were true and correct to the best of her knowledge, information and belief. *Id.* at 25.

14. Ms. Elliott also completed a "Statement of Financial Affairs" accompanying her July 7, 2009 bankruptcy petition. This document required her to list "all suits and administrative proceedings to which the debtor is or was a party within one year immediate preceding the filing of this bankruptcy case." Ex. 10 at 28. Ms. Elliott affirmatively indicated that she had no such suits. *Id.* This statement was also signed by Ms. Elliott under penalty of perjury on June 30, 2009. *Id.* at 37.

15. Ms. Elliott's pending personal injury claims against Merck were not disclosed anywhere within her bankruptcy petition or the accompanying schedules. *See generally* Ex. 10.

16. On August 12, 2009, the bankruptcy trustee administering Ms. Elliott's bankruptcy estate issued a "Report of No Distribution," which stated that "there is no property available for distribution from the estate over and above that exempted by law," and noted debts in the amount of $39,185 to be discharged without payment. Bankruptcy Docket (attached hereto as Ex. 11) at 2. On October 19, 2009, Ms. Elliott's debts were discharged by the bankruptcy court, and on October 23, 2009, the bankruptcy court issued an Order of Final Decree discharging the trustee of the estate and closing Ms. Elliott's bankruptcy case. *See* Discharge of Debtor (attached hereto as Ex. 12); Order of Final Decree (attached hereto as Ex. 13).

Dated: June 29, 2012

>Respectfully submitted,
>
>By: */s/ Dorothy H. Wimberly*
>    Phillip A. Wittmann, 13625
>    Dorothy H. Wimberly, 18509
>    STONE PIGMAN WALTHER
>    WITTMANN L.L.C.
>    546 Carondelet Street
>    New Orleans, Louisiana 70130
>    Phone: 504-581-3200
>    Fax:   504-581-3361
>
>Defendants' Liaison Counsel
>
>—and—
>
>    Douglas R. Marvin
>    Eva Petko Esber
>    M. Elaine Horn
>    Emily Renshaw Pistilli
>    WILLIAMS & CONNOLLY LLP
>    725 Twelfth Street, N.W.
>    Washington, D.C. 20005
>    Phone: 202-434-5000
>    Fax:   202-434-5029
>
>Attorneys for Merck & Co., Inc.

5

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Statement of Material Facts has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail, upon Liaison Counsel Ann Oldfather by e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 29th day of June, 2012.

                                                  */s/ Dorothy H. Wimberly*
                                                Dorothy H. Wimberly, 18509
                                                STONE PIGMAN WALTHER WITTMANN L.L.C.
                                                546 Carondelet Street
                                                New Orleans, Louisiana  70130
                                                Phone:  504-581-3200
                                                Fax:     504-581-3361
                                                dwimberly@stonepigman.com
                                                Defendants' Liaison Counsel