## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re:  VIOXX® | ] | **MDL Docket No. 1657** |
| | ] | |
| **PRODUCTS LIABILITY LITIGATION** | ] | **Section L** |
| | ] | |
| *This document relates to Plaintiff Exec.* | ] | **Judge Fallon** |
| *Walter J. Roach, Jr.,  v. Merck & Co.,* | ] | |
| *a conditionally transferred case.* | ] | **Magistrate Judge Knowles** |
| *2:10-cv-00868   EEF:DEK* | ] | |

### PLAINTIFF'S PETITION FOR REHEARING and RECONSIDERATION of the ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT and DISMISSING PLAINTIFF'S CLAIM

The Court entered an Order on June 5, 2012, granting Defendant Merck's Motion for Summary Judgment, dismissing the claim of the Plaintiff  Executor Walter J. Roach, Jr. against Defendant Merck  Sharp and Dohme, Inc.  Plaintiff requests the Court reconsider its Order and Reasons, and vacate the Order for the reasons Plaintiff suggests, stated hereafter.

*I.*    *Basic Facts.*

1.    Plaintiff's decedent Joanne I. Roach died on April 8, 2004.  The decedent was prescribed Vioxx in July, 2001, ingested approximately 127 pills *(drug store and hospital records),* and suffered a stroke on November 22, 2001.  She was immediately taken off Vioxx, suffered multiple health and physical problems, gradually deteriorating in health until her death. *Complaint.*

2.    This court has ruled that Defendant Merck & Co. made known on September 30, 2004, by extensive reports in the national news and media coverage, *i.e.,* television and newspapers, of the withdrawal from the marketplace of the drug, thus informed the public the drug would no longer be available for use.  *In Re Vioxx Litigation, 522 F. Supp. 2d 799, @ 803.*

1

3.       On or about September 30, 2004, the President of Merck, Mr. Raymond Gilmartin, issued a public letter to "patients" informing them of the risks encountered by use of the drug, those risks made known after two separate studies,   *VIGOR, and APPROVe,* which disclosed adverse experiences by use of the drug.  *In Re Vioxx Litigation, 522 F. Supp. 2d 799, @ 802.*

4.       On July 1, 2008, Plaintiff's Executor became aware of the disclosure of a Settlement Program disclosed by Merck & Co., where the sum of $4.8 billion was allocated toward payment of approximately 60,000 claims, with "…new claims still forthcoming", as stated by a representative of the BrownGreer Law Firm, Administrator of the Settlement Program, Richmond, VA.  The source of the information about the Program was an article in the Wall Street Journal.  The Merck Master Settlement Program was announced on November 9, 2007.

5.       Plaintiff contacted the Administrator of the Settlement Program, Ms. Laura Burkholder, of the BrownGreer Law Firm, Richmond, VA, shortly after July 3, 2008, and received a Claims Package from BrownGreer with instructions to complete the package, approximately 45 pages of interrogatories contained in a Plaintiff Profile Form *("PFF"),*  and return to BrownGreer.

6.       The Claims Package materials were sent to BrownGreer on July 17, 2008.

7.       Some deficiencies in the returned Claim Package were stated by Ms. Burkholder in the form of documents and exhibits required, and Plaintiff Executor supplied the missing information and documents within a short date after notice from BrownGreer of the deficiency.

8.       On October 30, 2008, a Release was sent from BrownGreer to be completed by the Executor of the Estate at the request of Settlement Program Administrator.  Plaintiff Executor Walter Roach, Jr., signed the Release form and returned the document to BrownGreer.

9.       In connection with the filing of the claim, Plaintiff became aware of the certain court requirements set out in PTO 29 *re:* preservation of records.  Plaintiff contacted the providers of

medical services to the decedent, took steps to preserve the records in accordance with PTO 29, and filed a certificate with BrownGreer of compliance with the order.  *See attached exhibit.*

10.     Shortly before September 21, 2009, a routine status inquiry was made by Plaintiff to BrownGreer regarding the Plaintiff's case as a participant in the Settlement Program.  Mr. Phil Sturm of BrownGreer notified Plaintiff on September 21, 2009, there was no complaint or tolling agreement/stay order on file, therefore Plaintiff was ineligible to participate in the Settlement Program.

11.     Plaintiff determined to file a complaint to be in compliance with the requirements of the Settlement program, and filed a Complaint on November 12, 2009, in the LaSalle County, Illinois, Circuit Court, as *Walter J. Roach, Jr.,  v. Merck & Co., cause no. 2009-L-221.*  This case was then removed to U. S. District Court, Northern District of Illinois, *cause no. 10-cv-00568, Judge Darrah,* on the basis of a Federal question or diversity jurisdiction.  A stay order was entered in the Norhern District of Illinois Federal Court proceeding.  Thereafter, the case was conditionally transferred to the *Multi-District Litigation* then pending in the Eastern District of Louisiana, *MDL 1657, cause no. 2:10-cv-00868.*

12.     The *Roach* case has been pending in the *MDL 1657* aggregate of cases since its transfer on March 10, 2010, from the Northern District of Illinois to the Eastern District of Louisiana.

13.     The instant Petition for Reconsideration is filed to request the Court to Reconsider its decision and vacate its Order of Dismissal for reasons stated hereafter.

15.     The Court has applied the Law of Illinois in the decision of this case.


***N.B.:  Effective January 1, 2011, Illinois decisions are now reported in the following format: Docket No., year-date, appellate district or court issuing the opinion, and paragraph number, e.g., "…Thurman v. Champaign Park District, 2011 Ill App 4th 1010024, ¶18".  The new system replaces the familiar,  ___Ill 2d ___, ___NE 2d ___, ___Ill Dec ___, etc., as the citation and page number of the reported decisions.  Both styles of citations appear herein.***

**II.    Analysis:  The Court is requested to reconsider its decision to enter an Order of Dismissal for the following points of law misconstrued by the Court, or on the basis of misapprehension of the facts that erroneously controlled the applicable law.**

**A.     The Court is to review a Motion to Dismiss under *F.R.C.P. 56 (a)*.**

The court's order cites the relevant *F.R.C.P. 56 (a)* as the appropriate procedural vehicle to determine the propriety of granting or denying a motion to dismiss.  The standards for both Federal litigation and State Court litigation appear to be parallel to each other.   Plaintiff has no issue with the statements of the court regarding the factual materials, pleadings, exhibits, or depositions, needed to consider a motion for summary judgment pursuant to *F.R.C.P. 56 (a)*.

In Illinois, the law on summary judgments *(735 ILCS 2-1005)* is substantially the same as the Federal law *(F.R.C.P. 56 (a))*, it appears.   A decision of a trial court to grant or deny a summary judgment motion is a question of law ultimately.  In Illinois, the grant or denial of a *735 ILCS 5/2-619* motion to dismiss disposes of issues of law and easily proved issues of fact at the <u>outset of litigation</u>.  *Van Meter v. Darien Park District, 207 Ill 2d 359 (Sup 2003).*  The motion admits as true all well-pled facts and all reasonable inferences that can be determined from those facts.  *Porter v. Decatur Memorial Hospital, 227 Ill 2d 343 (Sup 2008).*  On appeal or reconsideration by a trial court, the reviewing court must consider whether there exists a disputed issue of material fact or whether dismissal is proper as a matter of law.  *Thurman v. Champaign Park District, 2011 Ill App 4th 1010024, ¶18.*

**B.     The Court misapprehended application of the case law as it applied to the facts relating to the relevant dates where Plaintiff Executor is charged with knowledge of the dangerous propensities of the subject drug, Vioxx, and its harmful effects on persons ingesting the drug.**

Plaintiff's decedent died on April 8, 2004.   Decedent started taking the drug about 4 months before suffering a stroke on November 22, 2001.    The use of Vioxx was stopped

immediately. Thereafter, the health of the decedent deteriorated gradually and significantly, resulting in her death on April 8, 2004.

The Court has directed the time period for calculation of a Limitations period in a suit for wrongful death to start with the date of September 30, 2004, the date on which Merck & Co. voluntarily withdrew the drug from the marketplace because of stated massive publicity of the withdrawal of the drug from the market. The Court has ruled that *"…national and media coverage put notice of a potential link between an injury and the use of Vioxx…"* to the extent the court declared the start date of any statute of limitations for any cause of action began to run on the date of September 30, 2004, and expire on September 30, 2006. *522 F. Supp. 2d 799 (EDLA, 2007).*

Merck has taken the position in its Motion for Summary Judgment that Plaintiff did not file its Complaint in the Merck litigation within the 2 year S.o.L. of the Illinois Wrongful Death statute, *740 ILCS 180/1 to 180/2.2.* The Court has agreed with the Defendant's position. Plaintiff suggests granting Summary Judgment to Defendant to be error.

The Case Law of Illinois deals with the concept of limitations of causes of actions on two levels. *First,* the statute of limitations is declared at different periods of time for categories of cases, if a cause of action for Wrongful Death the period is 2 years. However, the limitations period for all causes of action is somewhat tempered by the *"Discovery rule"* referred in the Court's Order at bar, citing the case of *Knox College v. Celotex, 88 Ill 207, 430 NE 2d 976 (Sup 1982),* which can extend the starting date to determine the S.o.L. period. *Second,* there is a statute of repose usually associated with all statutes of limitations. A statute of limitations bars the cause of action as actionable after a period of time. A statute of repose simply bars the right to a remedy after a period of time, this period always longer than the base statute. Statutes or

5

Repose are not involved in the consideration of this case, unless the statute of Fraudulent Concealment could be interpreted as a substitute for a declared Statute of Repose for the various S.o.L.'s for differing causes of action. *735 ILCS 5/13-215.*

A statute of limitations has as its purpose to "*… to require the prosecution of a right of action within a reasonable time to prevent the loss or impairment of available evidence and to discourage delay in bringing claims".  Tom Olesker's Exciting World of Fashion, Inc., v. Dun & Bradstreet, 61 Ill 2d 129, 334 NE 2d 160 (1975).*  A statute of repose, in contrast, is not linked to the date of the injury, but operates *"...to curtail the 'long tail' of liability that may result from the "discovery rule".  Snyder v. Heidelberger 2011 IL 111052, ¶10.*

Based on the *discovery rule (Knox College v. Celotex, id.),* an action may be brought some time outside of a strict time period of a statutory Statute of Limitations after the act or omission to act has occurred, because the law recognizes the time period should be calculated on the standard of the aggrieved person *"...knowing, or reasonably should have known of the date of the injury".*

In the case at bar, *Roach v. Merck,* Plaintiff submits the 2 year Statute of Limitations should not begin to run until the nexus between the use of the drug Vioxx and the harm it caused is readily discoverable.    Vioxx was marketed as a COX-2 inhibitor, with the following characteristics:

> a. *Prostaglandins are COX (cyclogenase) inhibitors;*
> b. *COX 2 enzymes metabolize arachidonic acids to produce prostaglandin;*
> c. *Vioxx is a COX 2 inhibitor designed to produce prostaglandins at inflammatory sites, to mediate inflammation and to produce prostacyclin, a vasodilator and producer of platelet aggregation.*

In reality, to a layperson Vioxx is an improved aspirin.  To a drug company, Vioxx is a COX-2 inhibitor, an enzyme that metabolizes arachidonic acid to produce prostaglandins,

prostacyclin, a vasodilator and producer of platelet aggregation, this description involving all technical terms and esoteric medical information regarding the drug's availability in the marketplace, and the harm the drug has caused.

All over-the-counter aspirin, *e.g.,* Bayer, St. Joseph, Kroger/CVS/Walgreen *generics*, *etc.,* date back to Hippocrates, 200 B.C., and the primitive practice of chewing white willow bark, the derivative source of aspirin.   If someone asked the plaintiff the cause of Joanne Roach's death, it is doubtful that anyone would respond:  *"...she took an improved aspirin, once daily...".*  It is absolutely true, a reasonable position, that no one would immediately contact an attorney to consider filing suit because of decedent's ingestion of an improved aspirin.

The Court's finding the "burden" is the same to the plaintiff as it is to the defendant is suggested to be error *(June 5, 2012, Opinion, p.7).*  The competing parties have unequal resources, and the plaintiff has scant information to focus on any of the 29 drugs ingested by the decedent, then make an informed decision of which drug could, or might have caused the adverse result.  The potential plaintiff has to determine just what agent caused the injury: the first source, and primary focus being the  doctors, drugs, hospital, *etc.,* and must do forensic work to make that initial determination of cause of the harm.  The secondary source, *inter alia,* would be the drug regimen given the decedent.  The drug company, with great resources, is zeroed-in on the problem from the outset, and usually is not willing to share information of the product's problems with anyone to make the determination easier.   A potential plaintiff must have information to inquire judiciously, with the ultimate goal to get enough information to consider an action strictly within the parameters and requirements of *S.C.R. 137 (Illinois), and Rule 11 (F.R.C.P. 11),* before filing a lawsuit.

The real question to be answered is at what point should the Executor be charged with knowledge of the contributing cause to his mother's death, and what type of knowledge must one have to alert a potential plaintiff of a possible cause of action?   This court has already ruled in the published case, *In Re Vioxx Litigation, 522 F. Supp. 2d 799,* that media exposure was so widespread on the date of withdrawal of the drug from the market on September 30, 2004, that everyone is charged with knowledge of the dangerous propensities of the drug on that date. Plaintiff disputes this finding of the court in the context of an application of the statute of limitations to the *Roach* case at bar, as it is unrealistic to assume everyone knew, or should know of the problem with the drug and the harm it could cause to users by a finding that widespread publicity accomplished that result.

The Court has ruled the date of September 30, 2004, became the date to start calculation of the appropriate statute of limitations for any cause of action.   This statement would be correct if knowledge of the connection of Vioxx contributing to the cause of death is apparent to a reasonable person.   The court has ruled the burden of knowing these types of facts is the same for plaintiff and for defendant.   The suggestion is made to the Court the declared burden is not the same to adverse parties.   Most plaintiffs, laypersons, do not have the necessary facts to make the connection.   In *Roach,* the primary area of inquiry is the conduct of the medical providers of services, *i.e.,* doctors, hospitals, *etc.*   The secondary source is medical drug treatment regimen, which consisted of administration of 29 different drugs.   Which of these drugs might, or could, have caused the death of the Joanne Roach?   And was a defective drug the cause of the harm to the plaintiff's decedent, or other causative factor to be considered, investigated?

In the recent Illinois case of *Mitsias v. I-Flow/Stryker Corp., et. al., 2011 IL App,  1 Dist 101126,* the court ruled the statute of limitations does not begin to run with regard to a second

source of an injury until it becomes discoverable through diligent inquiry.  In that case plaintiff knew her shoulder injury was caused by one source *(medical malpractice claim against the orthopedic doctor),* but later discovered the second injury was caused by a defective product *(a mechanical pump dispensing medication improperly to cause cartilage destruction).*  The fact situation in *Roach* is the same as *Mitsias.*  Originally, the focus was the cause of death was the doctor or doctors, the hospital, an overdose of drugs, or any of the myriad of possible causes of death that were associated with the treatment of the decedent.  Plaintiff declined to file against the medical providers of services, since there was insufficient evidence to deem the medical experience of the decedent to be malpractice.

The possible cause of death did not become apparent, and focus on Vioxx until Merck announced the Settlement Program, where plaintiff became aware of the possible cause of death being problems with the drug Vioxx.  Similar to *Mitsias*, *id.,* in the *Roach* case at bar it seems reasonable that a layperson, without independent knowledge of the dangerous propensities of a specific drug, out of a total of 29 possibilities, and without ready capability to obtain necessary information of which drug might, or could, have caused or contributed to the death of his mother, should not be charged with the necessary knowledge to start the running of the statute in a Wrongful Death claim on the exact date this Court has set to start the date to calculate the Statute of Limitations.  It is more reasonable to conclude a potential plaintiff became aware of the possibility of a claim on the date that Merck & Co. announced the Settlement Program, contributing $4.8 billion dollars to pay for the losses.  After all, a company would not release this amount of money to pay for losses unless there was a good reason, a liability that must be addressed, and compensation given to those persons suffering the loss from the use of the drug manufactured and distributed by Defendant Merck.

**C.** **Plaintiff's participation in the Settlement Program operates as a Tolling Agreement to delay the expiration of the Statute of Limitations for claims.**

Plaintiff contacted BrownGreer to request the necessary documents to participate in the Settlement Program first made known to Plaintiff on date of July 3, 2008.   Use of the Internet was made to download the documents, and those documents were returned to BrownGreer on July 17, 2008.  Thereafter, inquiry was made to BrownGreer of compliance by plaintiff with the requirements of the Settlement Program shortly before October 30, 2008.   The deficiency noted by BrownGreer was Plaintiff's failure to provide a Release document to be supplied to the program administrator BrownGreer by the Plaintiff Executor.  This deficiency was cured by transmittal of the Release document on October 30, 2008.  *See Release document attached to Plaintiff's Response to Defendant's Motion for Summary Judgment.*

After this document was sent to BrownGreer a period of *quietus* followed, which period was deemed normal because of the great number of claims filed.   Shortly before September 21, 2009, inquiry was made by the Plaintiff of the status of the case.  The response of Mr. Phil Sturm of BrownGreer was there was no complaint on file, thus plaintiff could not participate in the Settlement Program.  As a result of the notice from BrownGreer a complaint was required to be on file, Plaintiff did file a complaint on November 9, 2009, to comply with this procedural requirement of the program.

Statutes of Limitations that apply to common law claims are considered procedural, not jurisdictional, and affect only the remedy available, not the substantive rights of the parties. *Lease Partners Corp v. R. & J. Pharmacies, Inc. 329 Ill App 3d 69, 263 Ill Dec 294, 768 NE 2d 54.* Since BrownGreer, as Settlement Program Administrator, and agent of Defendant Merck, required a complaint be on file before participation in the program, Plaintiff complied with that requirement, and believed he was in compliance with all the requirements to make the Estate

eligible to participate in the settlement program.  However, BrownGreer's timing to inform the

Plaintiff of the notice of deficiency was shortly before the 5 year period of the Fraudulent

Concealment statute expired, the notice given only 9 days before the 5 year period expiry date of

*735 ILCS 5/13-215*.

In this chronology of facts, the concept of equitable tolling should be considered.  In

*DeLuna v. Burciaga, 223 Ill 2d 49, 306 Ill Dec 136, 857 NE 2d 229 (Sup 2006),* the Illinois

Supreme Court stated:

> "It is not necessary the defendant intentionally misled or deceive the plaintiff, or even
> intend by its conduct to induce delay.  *(Citations)*.  Rather, all that is necessary for
> invocation of the doctrine of equitable estoppel is that the plaintiff reasonably rely on the
> defendant's conduct or representations in forbearing suit". *DeLuna v. Burciaga, @ p.249.*

A reasonable conclusion is the plaintiff believed he was in compliance with the

requirements of the Settlement Program.  This is particularly true since the plaintiff had already

provided a Release to the Defendant, so any complaint, cause of action, or claims were simply

merged into the Release document by operation of law.  The court should find tolling of any

relevant time periods, and plaintiff should not be penalized by dismissal of the cause of action

based on a strict calculation of the periods to file suit.

Thereafter, removal of the LaSalle County, Illinois, Complaint was made to the Northern

District of Illinois, proceeding as *cause no. 1:10-cv-00568, Judge Darrah*.  A conditional

transfer of the cause was then made to the *Multi-District Litigation, MDL 1657, EDLA, In re*

*Vioxx Litigation, cause no. 2:10-cv-00868, Judge Fallon.*

Plaintiff requests the court to reconsider its ruling that any cause of action filed in the

Vioxx litigation must be filed within a 2 year period after September 30, 2004.  There are two

independent timing requirements for Wrongful Death actions.  The *first* period, original, to

address is the two year S.o.L., which period was directed by the Court to be calculated from

September 30, 2004 *(522 F. Supp. 2d 799),* to thus end on September 30, 2006.  The *second consideration* is a possible exception period, is derivative and involves the *"discovery rule" (Knox College v. Celotex, id.),* which tolls the limitations period to the time to assess when the plaintiff knows or reasonably should know of the injury, *and knows there exists a <u>wrongful cause of the injury</u>.*

This court is asked to consider the proposition that while Plaintiff may have suspected some action of wrongdoing categorized as a *first source*, all of which inquiry was focused primarily on the treating doctors, the hospitals, the quantities of drugs administered *(i.e., overdosage),* in their treatment of the decedent, when the real cause *(a second source)* of the injury to the decedent was a drug *(Vioxx)* that was withdrawn from the market, later tacitly admitted to be defective at a time well beyond the 2 year period, the S.o.L. for Wrongful Death actions.   Plaintiff contends the statute should not begin to run until Plaintiff knew, or had reason to know that the injury could have been caused by the defective drug, Vioxx.  Disclosure of the problems with Vioxx commenced with the public release by Merck of the Settlement Program, this disclosure made on November 7, 2009.   This date was well beyond the 2 year period of the Wrongful Death Statute of Limitations, *740  ILCS 180/1 to 180/2.2* and just outside the 5 year period for Fraudulent Concealment, *735 ILCS 5/13-215. (Start date: September 30, 2004).*

Plaintiff still did not know or become aware of the public admission of the $4.8 billion Settlement Program disclosed by Merck on November 7, 2009, at any time near that date. Plaintiff Executor was later told of the article in the Wall Street Journal, appearing on July 3, 2008, and immediately took steps to attempt enrollment in the program.    The court should find this Plaintiff should not be bound by prior court rulings that set this cause of action outside the periods of either S.o.L. for Wrongful Death actions, or the S.o.L. for Fraudulent Concealment of

Actions.  Plaintiff requests the court to reverse its decision to Grant the Defendant's Motion to Dismiss.

**D.    Plaintiff's tender of the Release merges any cause of action, tolling agreement, and any claim into the Release, to obviate the need for a complaint or tolling agreement to be filed.**

A *"release" '…is an abandonment of a claim to the person against whom the claim exists'.  Thornwood v. Jenner & Block, 344 Ill App 3d 15.*   It is a contract and is therefore governed by contract law.  *Farm Credit Bank of St. Louis v. Whitlock, 144 Ill 2d 440 (Sup 1991).* The interpretation of a contract is a question of law.  *Dowling v. Chicago Options Assoc., 226 Ill 2d 277.*

The release executed by Plaintiff Executor Roach, Jr. accomplished a merger of any claim, cause of action, tolling agreement against Defendant Merck by operation of law. *(release…from all claims, demands, damages, suits, judgment, debts, obligations, actions or causes of action, settlements and demands of any nature,…known or unknown, which either party has ever had…).*   The Release document effectuates a merger of all of these legal rights into that document, and tolls or terminates any further calculation of periods in which to file any type of action for relief against the person believed to be obligated.  *See copy of Release attached to Plaintiff's Response to the Defendant's Motion for Summary Judgment.*

A release covers all claims within the contemplation of the parties at the time of giving the release.  Here, the claim of Plaintiff is based on injury suffered from the defective drug Vioxx, manufactured and distributed by Defendant Merck.    The Settlement Program of Defendant Merck, administered by BrownGreer originally dealt with claims made for injury caused by Vioxx.  The issue was joined, both parties knew what the subject of the release to be. *Carona v. Illinois Central Gulf R.R. Co. 203 Ill App 3d 947.*   The release was requested by

Merck, and the form of the release was drafted by Merck.  Any defense of Merck based on periods of time calculation should be held to be waived by the concept of release of the cause of action, by equitable tolling of relevant time periods, and by merger of the complaint and cause of action into the Release document.

**III.**     **Conclusion.**

For the reasons stated herein Plaintiff Walter J. Roach, Jr., Executor of the Estate of Joanne I. Roach, Deceased, prays the Court Reconsider its Order Granting the Motion for Summary Judgment filed by Defendant Merck, Sharp, and Dohme Corp., and allow the claim of the Plaintiff to move forward to disposition by settlement or trial.

Respectfully Submitted,

Walter J. Roach, Jr. , Executor of the
Estate of Joanne I. Roach, Deceased.

By:     */s/Emmanuel F. Guyon*_____
Emmanuel F. Guyon, his attorney
5 East Bridge Street
Streator, IL  61364
Tel.:  815/673-2361
Fax.: 815/673-2362
*eguyon@frontier.com*

*Plaintiff's counsel*

## CERTIFICATE OF SERVICE

I hereby certify the above and foregoing Plaintiff's Petition for Rehearing and Reconsideration of the Court's Order of June 5, 2012, Granting Defendant's Motion for Summary Judgment and Dismissal of the Plaintiff's Complaint has been served on *Plaintiff's Liaison Counsel I* Russ Herman, Andy Birchfield, and Phillip Wittman, and *Plaintiff's Liaison Counsel II* Ann B. Oldfather, by U. S. Mail and e-mail by electronically up-loading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8 (C), and the foregoing was electronically filed with the clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in *MDL 1657*, on 2nd day of July, 2012.

/s/Emmanuel F. Guyon_____
Emmanuel F. Guyon,
5 East Bridge Street
Streator, IL  61364
Tel.:  815/673-2361
Fax.: 815/673-2362
eguyon@frontier.com

*Plaintiff's counsel*

*Appendix to Plaintiff's Response to Defendant's Motion for Summary Judgment.*

*1.* *Reprint of Wall Street Journal Article, dated July 1, 2008.*
   *(Internet reprint, FRE 901 and 902)*

*2.* *Letter from Atty. Esber @ Williams & Connolly, LLP re compliance with PTO 29.*
   *(letter dated July 6, 2010)*

*3.* *Notice of Filing by Atty. Guyon to be in compliance with PTO's 1, 8A, and 29.*
   *(Notice dated August 9, 2010).*

*4.* *Release of all claims by Executor to Merck, dated October 30, 2008.*

   *a.* *Fax to Atty. Guyon from Ms. Laura Burkholder @ BrownGreer re Release.*

   *b.* *Fax to Ms. Burkholder from Atty. Guyon with completed release.*

   *c.* *Executed Release document, signed by Executor Walter Roach, Jr.*

*Supplemental Appendix to Plaintiff's Petition for Reconsideration and Rehearing.*

*5.* *Letter to Ms. Laura Burkholder @ BrownGreer Law Firm, Richmond, VA.*
   *(Letter dated October 31, 2008)*

EMMANUEL F. GUYON
ATTORNEY AT LAW

October 31, 2008

Claims Administrator
Ms. Lynn Burkhalder
Brown Greer, PLC
P.O. Box 85031
Richmond, VA 23285-5031

*Delivery address: 115 S. 15th Street, Suite 400*
*Richmond, VA 23219-4209*

Re: Joanne I. Rauch; SSN: 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

Dear Ms. Burkhalder,

Enclosed please find original documents for Release of State Court claims in the subject estate vis a vis the Merck Mass Tort Settlement litigation. I faxed the set to you on October 31, 2008, to the following number: 904/521-7299. I did not receive a confirmation of the transmission, hence this follow-up by regular mail. As of the date of this letter, we have not received hard copy of the documents from Brown Greer, PLC, which you have informed were mailed on October 20, 2008. The referenced fax transmission will meet the needs of the development of the claim, however, if the originals are delivered, I will have new signatures affixed and returned promptly.

If any other documents are needed, kindly call or write. We would most pleased to continue the development of the claim as required to meet the needs of the claims file.

Please call if you have any questions.

Sincerely yours,

Emmanuel F. Guyon
Emmanuel F. Guyon

/emr