IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | ) | MDL NO. 1657 |
| PRODUCTS LIABILITY LITIGATION | ) | SECTION: L |
| | ) | JUDGE FALLON |
| THIS DOCUMENT RELATES TO: | ) | |
| ALL PURCHASE CLAIMS CLASS ACTION COMPLAINTS PENDING OR SUBJECT TO TRANSFER TO MDL 1657 | ) | JURY TRIAL DEMANDED |
| | ) | PURCHASE CLAIMS MASTER CLASS |

## NOTICE OF SUPPLEMENTAL AUTHORITY AND RENEWED MOTION FOR JUDGMENT ON THE PLEADINGS

The plaintiffs in the Purchase Claims Master Class Action Complaint ("Master Complaint" or "Compl.") seek to recover money from Merck even though they do not claim that the Vioxx they purchased did not work or that it caused them any injury. Instead, all they allege is that they would not have paid for Vioxx if Merck had disclosed more information about the drug's cardiovascular risk profile. This Court recently recognized, consistent with a long line of authority, that allegations like plaintiffs' do not state a cognizable injury for purposes of Article III standing. *See District of Columbia ex rel. Walker v. Merck & Co.*, No. 08-4148, 2012 U.S. Dist. LEXIS 81637, at *20 (E.D. La. June 13, 2012) ("merely purchasing a drug – which in fact helped [p]laintiff – does not generate an economic injury giving rise to Article III standing"). The same rule applies to all of the plaintiffs in the Purchase Claims Master Complaint. Accordingly, the Court should dismiss all of their claims as well.

1098381v1

## BACKGROUND

Plaintiffs allege in the Purchase Claims Master Complaint that Merck "intentionally, recklessly, and/or negligently concealed, suppressed, omitted, and misrepresented the risks, dangers, defects, and disadvantages of Vioxx." (Compl. ¶ 2.) Plaintiffs allege that they incurred losses by paying for Vioxx they would not have paid for absent Merck's allegedly "false and misleading campaign." (*See id.* ¶ 17.) The nature of these alleged losses is not specifically detailed in the Complaint. Instead, plaintiffs generically allege that they "would not have authorized the purchase of, or payment for Vioxx, on the terms that they did, had they known the true and complete risks, dangers, disadvantages, and benefits of Vioxx, in general, and specifically in comparison to alternative and slightly less expensive NSAIDs." (*Id.* ¶ 207.)

Based on these allegations, plaintiffs assert claims for violation of the New Jersey Consumer Fraud Act (Count I, Compl. ¶¶ 199-209) (even though none of the named plaintiffs is from New Jersey), violations of the consumer protection laws of other states (Count II, Compl. ¶¶ 210-262), unjust enrichment (Count III, Compl. ¶¶ 263-267) and breach of implied warranty (Count IV, Compl. ¶¶ 268-324). Plaintiffs seek actual, compensatory and punitive damages, as well as costs and attorneys' fees. (Compl., Prayer for Relief.)

On June 30, 2010, Merck moved for judgment on the pleadings on all of the claims in the Master Complaint. (*See* Mem. In Supp. Of Merck's Mot. For Judgment On The Pleadings Or To Strike Class Allegations In Purchase Claims Master Complaint, at 16-20, filed June 30, 2010.) In that motion, Merck explained that all of plaintiffs' claims fail because plaintiffs have not pled a cognizable injury. (*Id.*) Specifically, Merck argued that absent some allegation that Vioxx failed to work as intended or caused them any injury, plaintiffs could not establish injury as a matter of law. (*Id.* at 17 (citing *Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315 (5th Cir. 2002)).) In

addition, Merck argued that plaintiffs' claims are also barred because plaintiffs have not pled any facts tying their purchase of Vioxx to any alleged statements, advertisements, representations or omissions made by Merck. (*Id*. at 10-15.) Finally, Merck argued that, even if plaintiffs had properly alleged a cognizable injury and properly pled causation, many of their claims would still fail as a matter of law for a number of other reasons as well. (*Id*. at 20-29.)

The Court heard oral argument on Merck's motion on October 7, 2010, but has not yet ruled on it.

## ARGUMENT

The plaintiff in *Walker* sued Merck under the District of Columbia Consumer Protection and Procedures Act ("CPPA"), alleging that he suffered economic injury because he "paid for Vioxx out-of-pocket but would not have if Merck had not misrepresented its safety profile." 2012 U.S. Dist. LEXIS 81637, at *17. Merck moved for judgment on the pleadings, arguing that the plaintiff had not pled a "cognizable economic injury" because he "paid for and received an effective medication without experiencing any of the [alleged] side effects" of the drug. *Id*. The Court agreed, holding that there is "no obvious, quantifiable pecuniary loss that [p]laintiff incurred from purchasing a drug that worked for him and did not cause him any harm." *Id*. at *18. The Court based this finding in part on the Fifth Circuit's ruling in *Rivera*, 283 F.3d at 320, which held that "individuals who purchased a pharmaceutical that had a risk of causing liver damage but did not actually sustain any physical injury . . . did not allege an injury in fact sufficient for the purposes of Article III standing," 2012 U.S. Dist. LEXIS 81637, at *10-11 (citing *Rivera*, 283 F.3d at 317-19). Citing the "persuasive reasoning" in *Rivera*, the Court concluded that "merely purchasing a drug – which in fact helped [p]laintiff – does ***not*** generate an economic injury giving rise to Article III standing." *Id*. at *20 (emphasis added).

Accordingly, the Court held that the plaintiff in *Walker* did not "allege[] a concrete, particularized injury in fact to his economic interests" and that his claims thus failed as a matter of law. *Id.*; *accord Ironworkers Local Union 68 v. AstraZeneca Pharm., LP*, 634 F.3d 1352, 1363 (11th Cir. 2011) ("a patient suffers no economic injury merely by being prescribed and paying for a more expensive drug; instead, the prescription additionally must have been unnecessary or inappropriate according to sound medical practice – i.e., the drug was either ineffective or unsafe for the prescribed use"); *Young v. Johnson & Johnson*, No. 11-4580 (JAP), 2012 U.S. Dist. LEXIS 55192, at *7 (D.N.J. Apr. 19, 2012) (dismissing claims involving purportedly unhealthy food product for lack of standing because "[p]laintiff does not allege that he himself suffered any adverse health consequences"); *In re McNeil Consumer Healthcare*, MDL No. 2190, 2011 U.S. Dist. LEXIS 76800, at *36 (E.D. Pa. July 14, 2011) (dismissing complaint for lack of standing where "the plaintiffs in this case have not alleged that the [medications] were defective as to them, or that the plaintiffs were otherwise injured"); *Myers-Armstrong v. Actavis Totowa, LLC*, No. C 08-04741 WHA, 2009 U.S. Dist. LEXIS 38112, at *12 (N.D. Cal. Apr. 22, 2009) (granting defendant pharmaceutical manufacturers judgment on the pleadings; "[t]here must be at least some physical manifestation such as physical harm, or a failure of the drug to work as intended, or a rational fear of future harm, none of which are alleged"), *aff'd*, 382 F. App'x 545 (9th Cir. 2010).

The claims in plaintiffs' Master Complaint – which contains the ***exact same loss allegations*** at issue in *Walker* – fail for the same reason. Just as in *Walker*, the gravamen of the allegations in the Master Complaint is that plaintiffs suffered a loss because they would not have paid for Vioxx if Merck had disclosed the drug's alleged risks. (*See, e.g.*, Compl. ¶ 206.) In

4

fact, the loss allegations in the Master Complaint are ***identical*** to those in the *Walker* complaint. For example, both complaints allege that:

- "As a result of Merck's claims, [plaintiffs] purchased and/or paid for Vioxx even though, at $72 for a monthly supply (in 1999), Vioxx was much more expensive than other NSAIDs, which sold for $9 or less for the same month's supply." (Master Compl. ¶ 174; *Walker* Compl. ¶ 145.)

- "Merck's deceptive and misleading marketing campaign . . . resulted in inflated payments by consumers[.]"  (Master Compl. ¶ 176; *Walker* Compl. ¶ 147.)

- Merck's alleged misconduct caused "Plaintiffs and the Class to suffer ascertainable losses in that they [purchased or authorized the purchase of] Vioxx without knowing the true and complete risks . . . of Vioxx . . . specifically in comparison to alternative, and significantly less expensive NSAIDs."  (Master Compl. ¶ 206; *Walker* Compl. ¶ 181.)

Moreover, as in *Walker*, the Master Complaint does not contain any allegation that the Vioxx purchased by plaintiffs failed to work as intended or caused the plaintiffs any harm. Instead, plaintiffs' claims are based entirely on the assertion that they would not have purchased Vioxx if Merck had disclosed more or different information about the drug's risks. (*See, e.g.*, Compl. ¶¶ 174, 176, 206.)

Because "merely purchasing a drug" that worked as intended "does not generate an economic injury" capable of giving rise to a valid claim, *Walker*, 2012 U.S. Dist. LEXIS 81637, at *20, Merck is entitled to judgment on the pleadings with respect to all of the claims in the Purchase Claims Master Complaint.

5

**CONCLUSION**

For the foregoing reasons, and those set forth in Merck's prior briefing, the Court should grant Merck's motion for judgment on the pleadings.

Dated:  July 6, 2012

Respectfully submitted,

*/s/ Dorothy H. Wimberly*
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, LA 70130

Douglas R. Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth St., N.W.
Washington, DC 20005

John H. Beisner
Jessica Davidson Miller
Nina Ramos Rose
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
1440 New York Avenue, N.W.
Washington, DC 20005

ATTORNEYS FOR MERCK SHARP &
DOHME CORP.

**CERTIFICATE OF SERVICE**

       I hereby certify that the above and foregoing Notice of Supplemental Authority and Renewed Motion for Judgment on the Pleadings has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail, upon Liaison Counsel Ann Oldfather by e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 6th day of July, 2012.

                                                */s/ Dorothy H. Wimberly*
                                                Dorothy H. Wimberly, 18509
                                                STONE PIGMAN WALTHER WITTMANN L.L.C.
                                                546 Carondelet Street
                                                New Orleans, Louisiana  70130
                                                Phone:  504-581-3200
                                                Fax:     504-581-3361
                                                dwimberly@stonepigman.com
                                                Defendants' Liaison Counsel

1098381v1