## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Vioxx | * | MDL Case No. 1657 |
| | * | |
| PRODUCTS LIABILITY | * | SECTION L |
| LITIGATION | * | |
| | * | JUDGE FALLON |
| *This document relates to* | * | |
| | * | MAGISTRATE JUDGE |
| *LaDonna King v. Merck & Co., Inc.*, | * | KNOWLES |
| 2:06-cv-10270-EEF-DEK | * | |
| | * | |

*******************************************************************************

### DEFENDANT MERCK SHARP & DOHME CORP.'S MOTION FOR SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW

Defendant Merck Sharp & Dohme Corp. ("Merck") respectfully requests that the Court enter summary judgment pursuant to Federal Rule of Civil Procedure 56 in Defendant's favor on all of Plaintiff's claims.  Pennsylvania law provides a two-year statute of limitations for personal injury claims in products liability cases.  Yet after Plaintiff LaDonna King was allegedly diagnosed with chronic renal insufficiency or renal failure in either May 2001 or July 2002, she waited until September 2006 – *more than four years* – to file suit against Merck.

Pennsylvania's "discovery rule" cannot salvage Ms. King's claims, as any inquiry into the cause of her alleged injury at the time it happened would have revealed that all non-steroidal anti-inflammatory drugs ("NSAIDs"), such as Vioxx, have long been associated with renal complications on rare occasions. Indeed, the potential risk of renal injuries, including renal failure, was discussed in detail in the FDA-approved Vioxx labeling since the medication became available in 1999.  Because Ms. King waited over four years after her diagnosis to file her lawsuit, despite having ample information within her reach throughout that time to form the

1099391v1

basis for her claims, her claims are time-barred under Pennsylvania law, and should be dismissed with prejudice.

## BACKGROUND

### I.   Plaintiff's Medical History

Ms. King resides in Manns Choice, Pennsylvania, and has lived in Pennsylvania since 1992 or earlier. Ex. 1 (Compl.) at 1; Ex. 2 (Pl. Profile Form) at 3.[1] She alleges that she was prescribed Vioxx by her primary care physician, Dr. Lisa Duvall,[2] beginning in November 2000 for the treatment of arthritis pain. Ex. 2 at 6; Ex. 1 ¶18.

Ms. King alleges that Vioxx caused her to suffer the onset of chronic renal insufficiency or renal failure sometime in 2001 or 2002. The exact timing of this event is not clear due to contradicting statements in her Complaint and in the discovery materials that she has produced in this litigation: Her Plaintiff Profile Form ("PPF") states that she suffered "Renal Failure with chronic elevated creatinine levels" in May 2001, while her Complaint alleges "renal failure" in or about March 2002. Ex. 1 ¶19; Ex. 2 at 2. The *Lone Pine* report submitted by Ms. King's expert states that Ms. King "suffered the onset of chronic renal insufficiency" in July 2002. Ex. 3 (Report of David Changaris, M.D.) at 1. A CT scan report from Bedford Memorial Hospital dated June 6, 2002, notes that she "is known to have high creatinine and renal insufficiency." Ex. 4 (Selected medical records from Bedford Memorial Hospital) at 00052. Laboratory reports for Ms. King show elevated creatinine levels of 2.0 on May 24, 2002, 1.9 on June 6, 2002, 2.1 on July 11, 2002, and 1.3 on August 6, 2002. Ex. 4 at 00125, 127, 128, 131. A note by Dr. Duvall from an August 28, 2002 appointment with Ms. King states: "Chronic renal insufficiency –

---

[1]   All exhibits referenced herein are attached to Defendant's Statement of Material Facts As To Which There Is No Dispute, filed contemporaneously with this Motion.

[2]   Dr. Duvall practices in Everett, Pennsylvania. Ex. 2 at 9.

Renal function slightly elevated with resuming the Vioxx, however, she feels much better on it. Will continue on such . . . ." Ex. 5 (Selected medical records from Dr. Duvall) at 00009.

For purposes of this motion, Merck will assume that the onset of Ms. King's alleged renal injury occurred in or before July 2002, the latest date cited by Ms. King (in her expert report) for her injury. More than four years later, Ms. King filed this lawsuit against Merck in the U.S. District Court for the Eastern District of Pennsylvania on September 26, 2006. Ex. 1 at 1, 56.

**II.   The Known Risk of Potential Renal Complications with NSAIDs Like Vioxx**

Vioxx is an NSAID that was approved by the FDA to treat, among other things, osteoarthritis. Ex. 6 (FDA Approval Letter and initial Vioxx Package Insert) at MRK-99420021411. NSAIDs have long been known to be associated with renal complications. *See id.* at MRK-99420021424. Consistent with this common medical knowledge, throughout the time that Vioxx was available for use in the United States from May 1999 to September 2004, its FDA-approved product labeling contained detailed information about the potential for renal injury associated with NSAIDs, including Vioxx. *See, e.g., id.* at MRK-99420021424; Ex. 7 (Mar. 2000 Vioxx Package Insert) at MRK-LBL0000041, 42; Ex. 8 (Oct. 1999 Vioxx Patient Information Sheet) at MRK-LBL0000001; Ex. 9 (Mar. 2000 Vioxx Patient Information Sheet) at MRK-LBL0000003; Ex. 10 (Apr. 2002 Vioxx Package Insert) at MRK-LBL-0000065, 66.

For example, the initial Vioxx physician prescribing information, approved by the FDA in May 1999, contained a discussion of "*Renal Effects*" in its PRECAUTIONS section, which cautioned that

> Long-term administration of NSAIDs has resulted in ***renal papillary necrosis and other renal injury***. ***Renal toxicity*** has also been seen in patients in whom renal prostaglandins have a compensatory role in the maintenance of renal perfusion. In these patients, administration of a nonsteroidal anti-inflammatory drug

> may cause a dose-dependent reduction in prostaglandin formation and, secondarily, in renal blood flow, **which may precipitate overt renal decompensation** . . .

Ex. 6 at MRK-99420021424 (emphasis added). In March of 2000, the Vioxx prescribing information was updated to include the renal complications of "*acute renal failure,*" "*interstitial nephritis,*" and "*worsening chronic renal failure*" in the ADVERSE REACTIONS section as serious adverse events reported rarely in patients taking Vioxx. Ex. 7 at MRK-LBL0000042. In each version of the Vioxx prescribing information from 1999 through September 2004, potential renal complications were discussed in detail. *See, e.g.,* Ex. 6 at MRK-99420021424; Ex. 7 at MRK-LBL0000041, 42; Ex. 10 at MRK-LBL-0000065, 66.

Likewise, the Patient Information Sheet, provided to patients and appended to the physician prescribing information, highlighted the potential risk of renal complications with NSAIDs, including Vioxx. The initial Patient Information Sheet from 1999 stated:

> **What are the possible side effects of VIOXX?**
>
> Serious but rare side effects that have been reported in patients taking VIOXX and/or related medicines have included: . . .
>
> - Serious kidney problems occur rarely in patients taking NSAIDs. . . .

Ex. 8 at MRK-LBL0000001. This language was updated in a new Patient Information Sheet issued in March 2000: "Serious kidney problems occur rarely, *including acute kidney failure and worsening of chronic kidney failure.*" Ex. 9 at MRK-LBL0000003 (emphasis added). Ms. King acknowledges that she received a "prescription pamphlet" with her Vioxx prescription from her pharmacy. Ex. 2 at 6-7.

## LEGAL STANDARD

Summary judgment should be entered where the record shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.

R. Civ. P. 56(b)(2).  "The issue of whether a suit is time-barred is a question of law, which properly may be resolved at the summary judgment stage," so long as "there are no genuine issues of material fact in dispute."  *In re Vioxx Prods. Liab. Litig.*, 522 F. Supp. 2d 799, 804 (E.D. La. 2007) (quoting *In re Minn. Mut. Life Ins. Co. Sales Practices Litig.*, 346 F.3d 830, 835 (8th Cir. 2003)).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Judwin Props., Inc., v. U.S. Fire Ins. Co.*, 973 F.2d 432, 435 (5th Cir. 1992).

## ARGUMENT

Ms. King's claims against Merck are time-barred because despite ample information within her reach that would have revealed the basis for her claims, she did not file her suit until over two years after Pennsylvania's applicable limitations period had expired.  Pennsylvania observes a two-year limitations period for personal injury claims in products liability cases.[3] *See In re Vioxx Prods. Liab. Litig.*, 522 F. Supp. 2d at 808 (citing 42 Pa. Cons. Stat. Ann. § 5524(2)).  The Pennsylvania Supreme Court has stated clearly that this statute of limitations generally begins to run "when the injury is inflicted," and that "[m]istake, misunderstanding, or lack of knowledge in themselves do not toll the running of the statute." *Fine v. Checcio*, 870 A.2d 850,

---

[3] Because Ms. King is a Pennsylvania resident who filed her lawsuit in a Pennsylvania federal court alleging Vioxx usage and an injury all occurring within Pennsylvania, there can be no question that Pennsylvania law, including Pennsylvania's statutes of limitations, apply in this case.  *See Guar. Trust Co. of N.Y. v. York*, 326 U.S. 99, 110 (1945) (statutes of limitations are "matters of local law properly to be respected by federal courts sitting" in diversity); *In re Vioxx Prods. Liab. Litig.*, 478 F. Supp. 2d 897, 903 (E.D. La. 2007) (an MDL court must apply the choice-of-law rules of the transferor forum in determining the applicable statutes of limitations); *Mack Trucks, Inc. v. Bendix-Westinghouse Auto. Air Brake Co.*, 372 F.2d 18, 20 (3d Cir. 1966) (Pennsylvania courts apply Pennsylvania statutes of limitations, unless the Pennsylvania "borrowing statute" applies in cases where a cause of action arose outside of Pennsylvania).

857 (Pa. 2005). Indeed, litigants are "under a duty to use all reasonable diligence to be properly informed of the facts and circumstances upon which a potential right of recovery is based and to institute suit within the prescribed statutory period." *Pocono Int'l Raceway, Inc. v. Pocono Produce, Inc.,* 468 A.2d 468, 471 (Pa. 1983). Moreover, "[t]here is a strong policy in Pennsylvania courts favoring the strict application of statutes of limitation." *Booher v. Olczak*, 797 A.2d 342, 345 (Pa. Super. Ct. 2002).

I.   **Plaintiff's Claims are Time-Barred**

According to the allegations in her Complaint, her expert report, and her PPF, as well as notations in her medical records, Ms. King was diagnosed with renal insufficiency or renal failure and was being monitored for that condition by July 2002 at the latest. The two-year limitations period began to run at or near the time of that diagnosis, and therefore expired by July 2004. Yet her suit was not filed until September 26, 2006 – well beyond the two-year statutory period. As a result, Ms. King's suit is time-barred, and should be dismissed with prejudice.

II.  **The Discovery Rule is Inapplicable to Plaintiff's Claims**

Pennsylvania recognizes a "discovery rule," an exception that acts to toll the statute of limitations when a party, even with the exercise of reasonable diligence, could not have discovered the cause of her injury. *See Fine*, 870 A.2d at 858. "The polestar of the Pennsylvania discovery rule is not a plaintiff's actual acquisition of knowledge but whether the information, through the exercise of due diligence, was knowable to the plaintiff." *In re Vioxx Prods. Liab. Litig.*, 522 F. Supp. 2d at 808 (quoting *Ingenito v. AC & S, Inc.*, 633 A.2d 1172, 1175 (Pa. Super. Ct. 1993)) (internal quotations omitted). Moreover, it is the party asserting the discovery rule who bears "the burden of establishing that [s]he pursued the cause of [her] injury with 'those qualities of attention, knowledge, intelligence and judgment which society requires of its members for the protection of their own interests and the interests of others.'" *Cochran v. GAF*

1099391v1

*Corp.*, 666 A.2d 245, 250 (Pa. 1995) (quoting *Burnside v. Abbott Labs.*, 505 A.2d 973, 988 (Pa. Super. Ct. 1985) (as a matter of law, plaintiff had not exercised reasonable diligence in pursuing the cause of his lung cancer and defendant was entitled to summary judgment)). Where "reasonable minds would not differ in finding that a party knew or should have known on the exercise of reasonable diligence of his injury and its cause . . . the discovery rule does not apply as a matter of law." *Fine*, 870 A.2d at 858-59.

Ms. King offers no explanation in her Complaint or discovery materials for her failure to file her lawsuit for over four years after her diagnosis. Whatever the reasons for that delay, however, they are of no consequence in this case. The relevant question is not whether Ms. King actually knew of her injury's potential causes at the time it occurred, but "what might [s]he have known, by the use of the means of information within [her] reach, with the vigilance the law requires of [her]." *Id.* at 858 (quoting *Scranton Gas & Water Co. v. Lackawanna Iron & Coal Co.*, 31 A. 484, 485 (Pa. 1895)).

At the time of her diagnosis in 2002, there was more than enough information knowable to Ms. King regarding the risk of kidney injury relating to NSAID use – including ample information contained within the Vioxx labeling itself – to form the basis for her claims. *See, e.g.,* Ex. 6 at MRK-99420021424; Ex. 7 at MRK-LBL0000041, 42; Ex. 8 at MRK-LBL0000001; Ex. 9 at MRK-LBL0000003; Ex. 10 at MRK-LBL-0000065, 66. Indeed, had Ms. King made any inquiry whatsoever into the potential causes of her renal injury at the time it occurred in 2002, she could have discovered as much basis for bringing her claim as is available today. The Patient Information Sheet that accompanied each Vioxx prescription could not have stated it more plainly: "*Serious kidney problems occur rarely, including acute kidney failure and worsening of chronic kidney failure.*" Ex. 9 at MRK-LBL0000003 (emphasis added). By waiting

more than four years after her diagnosis to file suit, Plaintiff "cannot be said to have pursued the cause of [her] injur[ies] with those qualities of attention, knowledge, intelligence and judgment which society requires of its members for the protection of their own interests and the interests of others." *In re Vioxx Prods. Liab. Litig.*, 522 F. Supp. 2d at 808 (quoting *Cochran*, 666 A.2d at 250 (internal quotation omitted)). Accordingly, Ms. King is unable to take advantage of Pennsylvania's discovery rule to extend the limitations period, and her claims are time-barred.[4]

## CONCLUSION

For the reasons stated above, the Court should grant Defendant's Motion for Summary Judgment and dismiss Plaintiff LaDonna King's Complaint with prejudice.

Dated: July 17, 2012

Respectfully submitted,

  /s/ Dorothy H. Wimberly
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana 70130
Phone: 504-581-3200
Fax:    504-581-3361
Defendants' Liaison Counsel

---

[4] This Court's previous opinions in this litigation make clear that Pennsylvania's two-year statute of limitations is applicable to each of the negligence, strict liability, misrepresentation, and omission counts in Plaintiff's Complaint (Counts I-V, VII- X). *See In re Vioxx Prods. Liab. Litig.*, 522 F. Supp. 2d at 808. The Complaint also contains two breach of warranty claims that are subject to a four-year statute of limitations under Pennsylvania law (Counts VI and VII). *Id.* But as this Court has noted, "[i]n the ordinary case, a breach of warranty action accrues on, and suit must be filed within four years of, the date the seller tenders delivery of the goods, even if the breach is not apparent until after delivery has been tendered." *Id.* at 808-09 (quoting *Nationwide Ins. Co. v. Gen. Motors Corp.*, 625 A.2d 1172, 1174 (Pa. 1993)). Because Ms. King initially purchased Vioxx in 2000 or 2001, her warranty claims also became stale by 2005 at the latest – one year before she filed suit. *See id.* at 809 (also holding that three Pennsylvania plaintiffs' breach of warranty claims failed for independent reasons under Pennsylvania law).

—and—

Douglas R. Marvin
Eva Petko Esber
M. Elaine Horn
Emily Renshaw Pistilli
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Phone: 202-434-5000
Fax:    202-434-5029

Attorneys for Merck & Co., Inc.

1099391v1

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Motion for Summary Judgment and Supporting Memorandum has been served on Liaison Counsel, Russ Herman, Phillip Wittmann, and Ann Oldfather, by U.S. Mail and e-mail or by hand delivery and e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8C, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 17th day of July, 2012.

/s/ Dorothy H. Wimberly
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361
dwimberly@stonepigman.com
Defendants' Liaison Counsel

1099391v1