**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In re: VIOXX | * | |
|      Products Liability Litigation | * | |
| | * | |
| This Document Relates to: | * | MDL No. 1657 |
| | * | |
| DISTRICT OF COLUMBIA, *ex rel* | * | SECTION L |
|    KENNETH  WALKER, | * | |
| | * | JUDGE ELDON E. FALLON |
|               Plaintiff, | * | |
| | * | MAGISTRATE JUDGE |
|    versus | * | KNOWLES |
| | * | |
| MERCK & CO., INC., | * | |
| | * | |
|             Defendant. | * | |
| | * | |
|    Case No. 2:08-cv-4148 | * | |
| | * | |
| * * * * * * * * * * * * * * * * * * * * * * * * | * | |

## DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION
## TO ALTER OR AMEND THE ORDER/JUDGMENT

Plaintiff's last-ditch effort to salvage his claim under the District of Columbia Consumer

Protection Procedures Act, D.C. Code § 28-390, et seq. ("CPPA"), is nothing but a rehash of

arguments previously considered and rejected by the Court.  Plaintiff continues to erroneously

maintain that he suffered an economic injury by purchasing a drug that he does not allege was

ineffective or unsafe as to ***him***.  He also repeats the argument that he suffered a statutory injury

as defined by the CPPA, even though he has failed to allege that he or his doctor ever received a

single representation from Merck or was otherwise exposed in any way to Merck's allegedly

unlawful marketing campaign concerning Vioxx.

The Court properly rejected these arguments in its prior order, finding that Plaintiff's

allegations do not plead a concrete injury in fact or causal nexus.  While Plaintiff purports to

bring the instant motion "to correct clear error and prevent manifest injustice" in the Court's

most recent ruling, he fails once again to rebut the on-point cases that support the Court's order. Because Plaintiff's arguments regarding economic loss and statutory injury are no more viable today than they were in his prior rounds of briefing, the Court should deny the instant motion to alter or amend its prior order.

## BACKGROUND

This Court's order sets forth the relevant background for Plaintiff's motion in greater detail.  (Order & Reasons, MDL ECF No. 63,924, at 1-3 (filed June 13, 2012) ("Order").)  In short form, the operative facts are these:

Plaintiff Kenneth Walker seeks to recover funds allegedly spent on Vioxx "on behalf of himself, the District of Columbia, and the District of Columbia residents who purchased Vioxx." (Am. Compl. ¶ 10, ECF No. 1-2; *see also id.* ¶¶ 50, 59.)  According to Plaintiff's Amended Complaint, Merck misrepresented the safety and efficacy of Vioxx, which "caused medical providers in the District of Columbia to prescribe Vioxx to Medicaid patients."  (*Id.* ¶ 38.)  The Amended Complaint asserts that the District of Columbia, Mr. Walker and other District residents incurred losses by paying for Vioxx they would not have paid for absent Merck's allegedly "false and misleading campaign."  (*See id.* ¶ 42.)  The nature of these alleged losses is not detailed in the Amended Complaint.  While the Amended Complaint alleges that "generic drugs would have been safer" than Vioxx (*id.* ¶¶ 38, 39; *see also id.* ¶¶ 45, 54), it does not allege that Vioxx was ineffective.  To the contrary, Plaintiff affirmatively alleged that he was prescribed Vioxx by his doctor because "DayPro and Lodine had not been effective in the past," and further alleged that he remained on Vioxx from some time in 2001 through Merck's withdrawal of the drug from the market in late 2004.  (*Id.* ¶¶ 12-15, 27.)  Nor does the Complaint set forth any allegation of fact that would establish that Merck ever made any representation to

1100776v1

Mr. Walker or his doctor, or that he or his doctor was otherwise exposed in any way to any unlawful conduct by Merck.

Merck moved for judgment on the pleadings with respect to Plaintiff's CPPA claim on February 6, 2012, challenging Plaintiff's standing to sue and raising other arguments.  (*See generally* Def.'s Mot. For J. On The Pleadings, MDL ECF 63,656 (filed Feb. 6, 2012) ("MJP").)  Plaintiff responded with an opposition brief and a motion for leave to amend the complaint.  (*See* Pl.'s Mot. For Leave To Am. Compls. & ULLR 6.E Cert., MDL ECF No. 63,713 (filed Mar. 5, 2012).)  Merck opposed amendment on the ground of futility, arguing that the proposed complaint's new allegations regarding direct-to-consumer advertising failed to cure the deficiencies of the operative complaint because they do not allege a cognizable injury for standing purposes.  (MJP at 11-13.)  After oral argument on the motion to amend, the Court requested supplemental briefing on the standing issue, which both parties submitted.

On June 13, 2012, the Court granted Merck judgment on the pleadings with respect to the CPPA claim and denied Plaintiff's motion for leave to amend.  (*See* Order.)  The Court held that Plaintiff had not pled a cognizable economic injury because "merely purchasing a drug – which in fact helped Plaintiff – does not generate an economic injury giving rise to Article III standing and Plaintiff has not alleged a concrete, particularized injury in fact to his economic interests." (*Id.* at 12.)  The Court also rejected Plaintiff's claim of statutory injury, determining that his "generalized and conclusory allegation[s] do[] not suffice to show any plausible nexus or causation between Merck's conduct and Plaintiff as an individual."  (*Id.* at 15.)

Plaintiff filed the instant motion to alter or amend the Court's prior judgment dismissing the CPPA claim on July 11, 2012.  (*See* Pl.'s Mot. To Alter Or Amend The Order/Judgment.,

MDL ECF No. 63,980 (filed July 11, 2012) ("Pl.'s Mot.").)  According to Plaintiff, the Court

"erred" in its conclusions regarding economic loss and statutory injury.  (*Id.* at 1, 5.)

<u>**ARGUMENT**</u>

The Court's well reasoned decision was based on three prior rounds of thorough briefing,

and, not surprisingly, Plaintiff's fourth effort adds nothing new to the analysis.  Accordingly,

Plaintiff's motion falls far short of the high standard for reconsideration and should be denied.

"In the Fifth Circuit, altering, amending, or reconsidering a judgment under Rule 59(e) is

an extraordinary remedy that should be used sparingly." *Whetstone v. Jefferson Parish Pub. Sch.*

*Bd.*, No. 07-9704 SECTION "L" (3), 2012 U.S. Dist. LEXIS 73663, at *6-7 (E.D. La. May 29,

2012) (refusing to reconsider prior order under Rule 59(e)) (internal quotation marks and citation

omitted).[1]  This is so because "Rule 59(e) serves" a "narrow purpose":  to "correct[] manifest

errors of law or fact, or present[] newly discovered evidence." *Id.*  A "[m]anifest error is one

that is plain and indisputable, and that amounts to a complete disregard of the controlling law."

*Frank v. Shell Oil Co.*, No. 11-871 SECTION "L" (3), 2012 U.S. Dist. LEXIS 51316, at *6 (E.D.

La. Apr. 11, 2012) (internal quotation marks and citation omitted).  Mere unhappiness with a

ruling does not count as "manifest error."  *In re Chinese Manufactured Drywall Prods. Liab.*

*Litig.*, MDL No. 2047 SECTION: L, 2011 U.S. Dist. LEXIS 130412, at *5 (E.D. La. Nov. 10,

2011) (denying motion under Rule 59(e); "A Rule 59(e) motion should not be used to re-litigate

prior matters that . . . simply have been resolved to the movant's dissatisfaction.") (internal

quotation marks and citation omitted).  Nor is a Rule 59 motion a "proper vehicle for rehashing

---

[1]     Plaintiff purports to bring the instant motion under both Fed. R. Civ. P. 59(e) and Fed. R. Civ. P. 60(b).
(*See* Pl.'s Mot. at 1.)  However, "[b]ecause [p]laintiff's [m]otion was filed . . . within 28 days of entry of the Order
and Reasons it challenges, the Court [must] treat[] the [m]otion as one pursuant to Rule 59(e)." *Whetstone*, 2012
U.S. Dist. LEXIS 73663, at *5; *cf., e.g.*, *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, No. 09-7791, 2011
U.S. Dist. LEXIS 62761, at *2 (E.D. La. June 14, 2011) (construing motion to alter or amend order under Rule 60(b)
because motion was filed after 28 days).

evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Templet v. Hydrochem Inc.*, 367 F.3d 473, 478-79 (5th Cir. 2004); *see also Caplan v. Ochsner Clinic, L.L.C.*, 799 F. Supp. 2d 648, 656 (E.D. La. 2011) ("'A motion to alter or amend the judgment under Rule 59(e) must clearly establish either a manifest error of law or fact or must present newly discovered evidence and cannot be used to raise arguments which could, and should, have been made before the judgment issued.'") (quoting *Rosenblatt v. United Way of Greater Houston*, 607 F.3d 413, 419 (5th Cir. 2010)).

Here, Plaintiff does not claim that there is any "newly discovered evidence" that would justify reconsideration, and although he twice states that the Court "erred" in its order (*see* Pl.'s Mot. at 1, 5), he does not identify any "manifest" error of the sort that could justify reconsideration.  Instead, Plaintiff's motion simply offers his fourth take on the same arguments: (1) that a mere purchase counts as a cognizable economic injury for standing purposes; and (2) that an alleged statutory violation confers him with standing, even if there is no connection between the alleged violation and himself.  The Court has already considered and rejected these arguments based on the same precedents set forth in Plaintiff's latest submission.  Accordingly, the motion should be denied.

## I.   THE COURT CORRECTLY CONCLUDED THAT PLAINTIFF HAS NOT ADEQUATELY ALLEGED AN ECONOMIC LOSS.

Plaintiff first argues that the Court "erred" in dismissing his CPPA claim for lack of economic injury.  (Pl.'s Mot. at 1.)  According to Plaintiff, the Court wrongly concluded that Plaintiff alleged that "Vioxx 'in fact helped [him],'" and this allegedly erroneous reading of the complaint was "central to the Court's analysis" of economic injury.  (*Id.* at 2 (quoting Order at 12).)  Not so.

1100776v1

Most fundamentally, Plaintiff's premise – that it was "central" to the Court's analysis that Vioxx helped him – is wrong.  Although the only plausible reading of Plaintiff's complaint is that Vioxx did benefit him,[2] this fact is immaterial because the ruling rests on a different ground: that in order to establish a cognizable economic injury, Plaintiff needed to plead either that Vioxx did not work for him as promised or that it caused him physical injury.

The real basis of the opinion is evident from the substance of the Court's analysis and the conclusions of the cases on which it relies.  Specifically, the Court relied on the "persuasive reasoning" of the Fifth Circuit's binding decision in *Rivera v. Wyeth-Ayerst Laboratories*, 283 F.3d 315 (5th Cir. 2002), and the ruling of the U.S. District Court for the District of Columbia in *Williams v. The Purdue Pharma Co.*, 297 F. Supp. 2d 171 (D.D.C. 2003), which applied an economic-injury analysis to prescription-drug claims under the CPPA.  (Order at 12.)  As this Court noted, the plaintiff in *Rivera* alleged that "'Wyeth sold Duract; Rivera purchased and used Duract; Wyeth did not list enough warnings on Duract and/or Duract was defective; other patients were injured by Duract; Rivera would like her money back.'"  (Order at 6-7 (quoting 283 F.3d at 319).)  Those allegations did not suffice to establish a cognizable injury.  (*Id.*)  Similarly, *Williams* held that there was no cognizable economic injury where the plaintiffs "***did not allege*** that 'the drug failed to provide them effective pain relief or that they suffered any adverse consequences.'"  (*Id.* at 7 (quoting 297 F. Supp. 2d at 176) (emphasis added).)  Neither of these decisions turned on an ***affirmative*** allegation of efficacy by the plaintiff; rather, the problem was that the plaintiffs ***failed*** to allege anything more than a purchase, which was not

---

[2]      The inference that Vioxx benefited Plaintiff is evidenced by his allegations (in his operative complaint) that he was prescribed Vioxx because "DayPro and Lodine had not been effective in the past."  (Am. Compl. ¶ 27.) While Plaintiff sought to remove this damaging allegation in his proposed Second Amended Complaint, he stopped short of alleging that Vioxx was ineffective or unsafe ***for him***.  Indeed, Plaintiff continued to allege that he remained on Vioxx until it was withdrawn from the market in 2004, lending further support to the inference that Plaintiff benefited from the drug.  (*See* Proposed 2d Am. Compl. ¶ 156.)

sufficient by itself to establish economic injury.  Plaintiff here has the same problem, as the

Court recognized:  he contends that "he paid for Vioxx out-of-pocket but would not have if

Merck had not misrepresented its safety profile," and the cases do not "support [this] theory of

economic injury."  (Order at 11.)

Plaintiff also attempts – unsuccessfully – to cast *Rivera* and *Williams* as either

nonbinding or wrongly decided.  First, plaintiff argues that *Rivera* "is at odds with the courts of

the District of Columbia, which have consistently held that economic injury alone is sufficient to

confer standing under the CPPA."  (Pl.'s Mot. at 4.)  This argument attacks a holding that *Rivera*

did not make.  *Rivera*'s point was not that economic injury cannot confer standing; indeed, it

expressly acknowledged that economic injury, properly alleged, can support standing.  *See* 283

F.3d at 320.  Instead, its holding was that the theory before it (and before the Court here) – i.e.,

that a mere purchase without more can cause a "loss" – does not give rise to a valid claim of

economic injury.  *See id.* at 319-20 (rejecting argument that "loss of cash is an [adequate]

'economic injury'" for Article III standing purposes where named plaintiff did not allege that the

medication caused ***her*** any physical harm or was not effective for ***her***, and distinguishing the

allegation from legitimate economic-injury cases).

To the extent Plaintiff means to argue that D.C. precedent finds economic injury based on

purchase alone, he is incorrect.  Indeed, the one case Plaintiff seems to cite for this proposition –

*Shaw v. Marriott International, Inc.*, 605 F.3d 1039 (D.C. Cir. 2010) (*see* Pl.'s Mot. at 3-4) –

offers him no assistance.  This Court fully accounted for and properly distinguished *Shaw* in its

order, explaining that the case involved an "obvious economic injury" in the form of an 18%

overcharge above the advertised room rate for a night's stay at a hotel.  (Order at 11.)  Thus,

*Shaw* involved not merely a purchase, but excess payment based on a misrepresentation of the price.  And there, unlike here, there was an "obvious, quantifiable pecuniary loss."  (*Id.*)

Plaintiff nonetheless contends that *Shaw*'s reasoning is irreconcilable with this Court's Order.  According to Plaintiff, the Court's ruling depends on the conclusion that anyone who receives "some benefit" necessarily lacks economic injury.  But, as Plaintiff sees it, "the consumer in *Shaw* received a benefit," and there was "no indication that the room or services provided by the hotel were inadequate."  (Pl.'s Mot. at 3.)  This contention misses an important distinction between the cases.  In *Shaw*, the central allegation was that the price itself was misrepresented, and the alleged economic injury flowed directly from that misrepresentation because the plaintiffs paid the higher price.  By contrast, this case does not allege that Merck misrepresented the price of Vioxx or that Plaintiff paid a higher price than advertised.  Instead, the central allegation here is that Merck misrepresented the risk/benefit profile of Vioxx.  (*See, e.g.*, 2d Am. Compl. ¶ 12 (alleging that Merck "concealed, omitted, suppressed, and obfuscated important and material information regarding the risks, dangers, defects, and disadvantages of Vioxx from the Class Members").)  But there is no allegation that Plaintiff either did not receive the promised benefit (pain relief) or that he sustained the allegedly undisclosed risk (heart attack) as a result of taking Vioxx.  Accordingly, ***Plaintiff*** has not suffered any injury that flows from Merck's alleged misconduct.  That is precisely the holding of *Rivera*.[3]

---

[3]     Plaintiff also cites *Ciba-Geigy Corp. v. EPA*, 801 F.2d 430, 438 n.10 (D.C. Cir. 1986), for the proposition that "economic loss clearly constitutes a distinct and palpable injury."  (Pl.'s Mot. at 3.)  However, *Ciba-Geigy* is nothing like this case.  There, the plaintiff chemical company brought suit against the EPA, challenging its decision to impose labeling changes and use restrictions on one of the company's registered pesticides without affording it an adjudicatory hearing as required by the Federal Insecticide, Fungicide, and Rodenticide Act.  *Ciba-Geigy*, 801 F.2d at 431.  In that case, which centered on the doctrine of ripeness – not standing – the D.C. Circuit noted that the company had sufficiently alleged an economic loss where the company was forced to cease production of certain of its products, and where the EPA's action threatened to cause "a 50 percent loss in sales" for some of its products.  *Id.* at 433, 438 n.10.  Here, however, Plaintiff has not stated a cognizable theory of economic loss because he has not alleged that the Vioxx he consumed was unsafe or ineffective as to ***him***.

Plaintiff's attempt to distinguish *Williams* is no more persuasive.  Plaintiff argues that *Williams* is inapposite because it concerned an earlier version of the CPPA.  (*See* Pl.'s Mot. at 4.) But this one-sentence argument ignores the relevant issue – economic injury for purposes of Article III standing.  Plaintiff offers no reason to believe that revisions to the CPPA would change the federal constitutional standing analysis, and there is none.  Put simply, "[r]egardless of the specific requirements of the . . . CPPA . . . th[e] Court's jurisdiction is limited by Article III standing."  *In re Light Cigarettes Mktg. Sales Practices Litig.*, 271 F.R.D. 402, 418 (D. Me. 2010) (construing the amended version of the CPPA); *accord In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 253 (3d Cir. 2012) ("the pleading standards for each of [plaintiff's] claims is secondary to the threshold issue" of standing).[4]

Plaintiff also seems to hint that he has pled a claim of physical injury (*see* Pl.'s Mot. at 2), but that argument cannot be taken seriously.  Specifically, Plaintiff claims that "one might infer" from a favorable view of the pleadings "that taking Vioxx played a role in harming him," as evidenced by the allegation that he was treated for certain ailments while taking the drug. (*Id.*)  This contention is not correct, as the Court has already made clear.  "[N]owhere in the pleadings or briefing does Plaintiff suggest that he attributes those conditions to Vioxx or that he is pursuing damages for personal injury on his behalf, or for any proposed class members."

---

[4]        *Rivera* and *Williams* are joined by ample caselaw from other jurisdictions rejecting claims of standing under similar circumstances.  *See, e.g., In re McNeil Consumer Healthcare*, MDL No. 2190, 2011 U.S. Dist. LEXIS 76800, at *36 (E.D. Pa. July 14, 2011) (dismissing complaint for lack of standing where "the plaintiffs in this case have not alleged that the [medications] were defective as to ***them***, or that the plaintiffs were otherwise injured") (emphasis added); *Myers-Armstrong v. Actavis Totowa, LLC*, No. C 08-04741 WHA, 2009 U.S. Dist. LEXIS 38112, at *12 (N.D. Cal. Apr. 22, 2009) (granting defendant pharmaceutical manufacturers judgment on the pleadings; "[t]here must be at least some physical manifestation such as physical harm, or a failure of the drug to work as intended, or a rational fear of future harm, none of which are alleged"), *aff'd*, 382 F. App'x 545 (9th Cir. 2010); *see also Bowman v. RAM Med., Inc.*, No. 10-cv-4403 (DMC) (MF), 2012 U.S. Dist. LEXIS 75218, at *10 (D.N.J. May 31, 2012) (dismissing consumer-fraud and other claims for lack of standing in case involving counterfeit surgical mesh; "[t]hough [p]laintiffs cleverly oscillate between contract and tort theories in an attempt to show that a harm amounts to 'injury in fact' as envisioned under the standards for Article III standing, their arguments fall short of concrete proof") (citation omitted).

(Order at 10 n.4.)  Of course, this was by design:  Plaintiff could not possibly want his claims to turn on proof of any physical injury, since this Court has already ruled that such claims are patently unfit for class treatment.  *See In re Vioxx Prods. Liab. Litig.*, 239 F.R.D. 450, 462 (E.D. La. 2006) (refusing to certify nationwide personal-injury class given the "highly individualized inquiry of whether Vioxx specifically caused the injury alleged by each plaintiff in light of his or her medical history, family history, other risk factors, and use of the drug").  Simply put:  the notion that Plaintiff has in any sense pled that Vioxx caused him physical injury is frivolous.

For all of these reasons, Plaintiff's first argument does not cast any doubt on this Court's well-reasoned Order, let alone show any "manifest error" that could justify amendment under Rule 59(e).  The motion should be denied.

## II.   THE COURT CORRECTLY HELD THAT PLAINTIFF HAS NOT ALLEGED A STATUTORY INJURY SUFFICIENT TO CONFER ARTICLE III STANDING.

Plaintiff also argues that the Court "erred" in concluding that he failed to allege facts establishing statutory standing to sue under the CPPA.  (Pl.'s Mot. at 5.)  The crux of Plaintiff's second argument is that the CPPA confers standing on all consumers of a product any time its manufacturer commits any violation of the CPPA concerning the product – even if there is no nexus between the alleged misconduct and a particular consumer.  Plaintiff is wrong.

As the Court explained, Plaintiff's inability to connect his allegations of unlawful conduct to his own purchase of Vioxx creates two distinct standing problems:  (1) Plaintiff cannot allege statutory injury, since the "class of individuals protected by the CPPA" includes only those who can show "any connection" between the alleged unlawful conduct and themselves (Order at 14); and (2) even if the CPPA protects a broader "class," Plaintiff still cannot establish standing because Article III principles themselves require a causal nexus (*id.* at

16).  Plaintiff repeats his previously rejected arguments as to the first holding, and he essentially ignores the second.

First, Plaintiff is wrong that the CPPA establishes statutory "injury" for consumers of a product who are not exposed to alleged unlawful conduct.  Plaintiff dedicates several pages to the proposition that consumers who purchase from a merchant are within the "class of individuals protected by the CPPA."  (Pl.'s Mot. at 6-9.)  But while consumer status is a necessary condition for standing under the CPPA, it is not sufficient.  As the Court pointed out, a plaintiff must still allege that he was somehow exposed to the alleged misconduct giving rise to the claim.  *See Williams*, 297 F. Supp. 2d at 177 (rejecting statutory-injury argument where plaintiffs did not allege that they "were in any way deceived – or even saw – any of th[e] advertising").  (*See* Order at 14.)

Plaintiff challenges the Court's reliance on *Williams* on this point, asserting that its requirement of exposure has been "undermined" by *Shaw* and *Grayson v. AT&T Corp.*, 15 A.3d 219 (D.C. 2011) (en banc).  (*See* Pl.'s Mot. at 6-7.)  But neither *Shaw* nor *Grayson* suggests that simply being a consumer creates statutory injury.  Rather, these cases are consistent with this Court's conclusion that statutory injury does not accrue until there is some connection between the alleged misconduct and the suing plaintiff.

In *Grayson*, for example, the court resolved two cases:  *Grayson v. AT&T Corp.*, and *Breakman v. AOL LLC.*  The court concluded that the *Breakman* plaintiff lacked standing to sue on behalf of AOL dial-up users for failure to disclose pricing information because he did not allege that the practice had any nexus to himself.  15 A.3d at 246-47.  Instead, he alleged "'a mere interest' in the alleged unlawfulness of AOL's business practices," which was insufficient.  *Id.* at 247 (internal quotation marks and citation omitted).  By contrast, the *Grayson* plaintiff was

1100776v1

found to have standing, but only because he had alleged a "causal connection" between the alleged unlawful conduct of phone-card sellers and himself. *Id.* at 250.  As the U.S. District Court for the District of Columbia recently described the case, *Grayson* stands for the proposition that a plaintiff must be "personally injured by the defendant" in order to have standing to sue. *Hughes v. Abell*, No. 09-0220, --- F. Supp. 2d ----, 2012 WL 2054882, at *10 (D.D.C. June 7, 2012).  This Court's order is thus entirely consonant with *Grayson*.

Similarly, in *Shaw*, the D.C. Circuit held that two of the plaintiffs asserting claims under the CPPA lacked Article III standing to sue.  605 F.3d at 1043-44.  The court's bottom-line holding was that the plaintiffs lacked standing because they were on a business trip and thus were not engaged in a consumer transaction, *see id.*, a point Plaintiff emphasizes (*see* Pl.'s Mot. at 7-8).  But *Shaw* did not consider whether some connection is required between plaintiffs themselves and the unlawful conduct to establish statutory injury – and with good reason, since the plaintiffs there had alleged exposure to a misrepresentation regarding the pricing of the hotel stays.  *Shaw*, 605 F.3d at 1041 ("Shaw made a one-night reservation at the Marriott Renaissance Moscow during a business trip for his law firm.  ***He was quoted*** a price of $425.  When Shaw checked out of the hotel, he learned that he could only pay in rubles, not in dollars.") (emphasis added).  Thus, neither *Grayson* nor *Shaw* undermines the Court's prior ruling requiring a sufficient causal link between Merck's alleged misconduct and Mr. Walker ***himself***.

Plaintiff also argues that the substantive elements of the CPPA do not "demand[] proof of reliance and/or causation" (Pl.'s Mot. at 5 (citing *In re Light Cigarettes*, 271 F.R.D. 402), but this argument is irrelevant, as Plaintiff's own authority makes clear.  In *Light Cigarettes*, the district court acknowledged the plaintiffs' argument that causation and injury are not necessary elements of a CPPA claim, but held that this argument was irrelevant to the application of federal

12

standing requirements.  As the court explained, "[r]egardless of the specific requirements of the . . . CPPA . . . this Court's jurisdiction is limited by Article III standing."  271 F.R.D. at 418. Applying this principle, the court explained that the CPPA class would include countless members lacking Article III standing because many individuals purchased the light cigarettes knowing that they were not healthier than other cigarettes, "notwithstanding [d]efendants['] alleged misrepresentations to the contrary."  *Id.* at 420.  Those class members, the court determined, lacked Article III standing because they did not suffer any cognizable injury as a result of the defendants' alleged misconduct.  *Id.*  The court also specifically considered the question of statutory injury, recognizing that "[s]tate legislatures may be able to expand definitions of injury for Article III purposes."  *Id.*  But as the court put it:  "the Plaintiffs still must prove that each class member bought a misrepresented product."  *Id.*  Because "[s]tanding prevents plaintiffs from suing based on misrepresentations made to others," *id.*, the court concluded that the CPPA class claims could not go forward.

In short, *Light Cigarettes* bolsters the Court's determination that Mr. Walker did not adequately plead a statutory injury under the CPPA.  Like the plaintiffs in that case, Plaintiff here goes to great lengths to detail Merck's alleged misconduct regarding Vioxx, but "when it comes to connecting that conduct to ***himself***, Plaintiff only alleges in general terms that those communications were directed towards consumers in the District of Columbia and that he was a resident of the District of Columbia."  (Order at 15 (emphasis added).)  Because "[s]tanding prevents [Mr. Walker] from suing based on misrepresentations made to others," *Light Cigarettes*, 271 F.R.D. at 420, Plaintiff was required to allege that he ***himself*** was exposed to a particular misrepresentation.  Plaintiff failed to do so, and the Court therefore properly found that Mr. Walker has not sufficiently alleged a statutory injury under the CPPA.

Second, Plaintiff ignores the alternative basis of the Court's holding – that standing principles require a causal nexus between unlawful conduct and injury, even if the statute itself does not.  As one federal appeals court recently explained in a similar case, "standing to bring suit founders" where the plaintiff is unable to connect the alleged misconduct to his own supposed injury.  *Schering-Plough*, 678 F.3d at 249 (internal quotation marks and citation omitted); *accord, e.g.*, *In re McNeil Consumer Healthcare*, MDL No. 2190, 2012 U.S. Dist. LEXIS 98312, at *61 (E.D. Pa. July 13, 2012) (dismissing claims arising out of alleged overpayment for over-the-counter drugs; "[w]hen . . . speculation is required as to the causal link between the behavior of a defendant and an injury of the plaintiff, no standing exists.") (citing *Schering-Plough*, 678 F.3d at 248); *In re Actimmune Mktg. Litig.*, No. C 08-02376 MHP, 2010 U.S. Dist. LEXIS 90480, at *30 (N.D. Cal. Sept. 1, 2010) ("plaintiffs have failed to adequately allege causation, and therefore lack constitutional and statutory standing for their [consumer-fraud] claims predicated on defendants' off-label marketing of Actimmune"); *S. Ill. Laborers' & Emplrs. Health & Welfare Fund v. Pfizer Inc.*, No. 08 CV 5175 (KMW), 2009 U.S. Dist. LEXIS 91414, at *25 (S.D.N.Y. Sept. 30, 2009) (dismissing case involving allegedly defective drug for lack of Article III standing; "The Court finds that [p]laintiffs have failed to establish Article III standing for the same reasons the Court finds [p]laintiffs have failed to establish standing under RICO – [p]laintiffs have not alleged a causal connection between the alleged injury and the challenged act.").  That is the case here.  Regardless of whether Plaintiff has alleged conduct that would give rise to an actionable injury under the CPPA, he has not shown any nexus between Merck's conduct and any injury to him.  That alone defeats Plaintiff's statutory-standing argument.

14

For all of these reasons, the Court correctly concluded that Plaintiff does not have statutory standing to sue, and Plaintiff's second basis for challenging the Court's prior order should be rejected as well.

## CONCLUSION

For the foregoing reasons, as well as those set forth in Merck's prior briefing, Plaintiff's motion to amend or alter the Court's prior judgment should be denied.

Dated:  July 31, 2012

Respectfully submitted,

*/s/ Dorothy H. Wimberly*
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, LA 70130

Douglas R. Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth St., N.W.
Washington, DC 20005

John H. Beisner
Jessica Davidson Miller
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
1440 New York Avenue, N.W.
Washington, DC 20005

ATTORNEYS FOR MERCK SHARP &
DOHME CORP.

1100776v1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing Opposition  has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail, upon Liaison Counsel Ann Oldfather by e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8C, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 31st day of July, 2012.

*/s/ Dorothy H. Wimberly*
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361
dwimberly@stonepigman.com
 Defendants' Liaison Counsel

16