# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| | : | MDL NO. 1657 |
| IN RE: VIOXX | : | |
|     PRODUCTS LIABILITY LITIGATION | : | SECTION: L |
| | : | |
| | : | JUDGE FALLON |
| | : | |
| | : | MAG. JUDGE KNOWLES |
| .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. | : | |

**THIS DOCUMENT RELATES TO:** *Walter J. Roach v. Merck & Co., Inc.*, **Case No. 10-868**

## ORDER & REASONS

The Court has pending before it Plaintiff Walter J. Roach's motion for reconsideration (Rec. Doc. 63978) of the Court's Order and Reasons (Rec. Doc. 63893) granting Merck's motion for summary judgment with respect to Plaintiff. The Court has reviewed the briefs and the applicable law and now issues this Order and Reasons.

**I.   BACKGROUND**

To put this matter in perspective, a brief review of this litigation is appropriate. This multidistrict products liability litigation involves the prescription drug Vioxx, known generically as Rofecoxib. Merck, a New Jersey corporation, researched, designed, manufactured, marketed and distributed Vioxx to relieve pain and inflammation resulting from osteoarthritis, rheumatoid arthritis, menstrual pain, and migraine headaches. On May 20, 1999, the Food and Drug Administration approved Vioxx for sale in the United States. Vioxx remained publicly available until September 30, 2004, when Merck withdrew it from the market after data from a clinical

trial known as APPROVe indicated that the use of Vioxx increased the risk of cardiovascular thrombotic events such as myocardial infarction (heart attack) and ischemic stroke. Thereafter, thousands of individual suits and numerous class actions were filed against Merck in state and federal courts throughout the country alleging various products liability, tort, fraud, and warranty claims. On November 9, 2007, after extensive discovery, pretrial proceedings, and a number of bellwether trials, the parties announced a $4.85 billion Master Settlement Agreement that eventually resolved over 99% of Vioxx claims.

Plaintiff's case arose from the allegedly wrongful death of decedent Joanne I. Roach. Ms. Roach, who resided in Streator, Illinois, began taking Vioxx in 2001 and suffered a stroke on November 22, 2001. (Complt. at ¶¶ 2, 5-6). Her condition deteriorated until she passed away on April 8, 2004. *Id.* at ¶ 7. Plaintiff filed suit on behalf of her estate in Illinois state court on November 12, 2009, over five years after Vioxx was withdrawn from the market. Plaintiff alleges that he was not prompted to investigate the possibility that Vioxx contributed to Ms. Roach's death until he saw media coverage of the litigation on July 1, 2008. *Id.* at ¶ 8. The Complaint alleged one count of wrongful death and also that Merck concealed the risks of Vioxx. *Id.* at ¶¶ 18, 27-54. The case was removed to federal court and transferred to this MDL Court.

On June 5, 2012, this Court granted Merck's motion for summary judgment on the basis that suit was not timely filed under any potentially applicable Illinois statutes of limitations. (Rec. Doc. 63893). This Court had previously held that "the national and local media coverage of the withdrawal of Vioxx from the market were sufficient to put" an Illinois plaintiff "on notice of a potential link between his injuries and the use of Vioxx," such that "at the very latest,

Illinois' two-year statute of limitations began to run on September 30, 2004." *In re Vioxx Prods. Liab. Litig.*, 522 F. Supp. 2d 799, 814 (E.D. La. 2007). Accordingly, in the Order and Reasons granting Defendant's motion, the Court held that Plaintiff's claim for wrongful death, subject to a two-year statute of limitations, or fraudulent concealment, subject to a potential five-year statute of limitations, were untimely because they were brought in a state-court proceeding filed more than five years after Vioxx was withdrawn from the market and Plaintiff should have realized the existence of a claim against Merck.

## II. PRESENT MOTION

Plaintiff now asks the Court to reconsider that Order and Reasons. First, Plaintiff reiterates his argument that this Court was incorrect to hold that the statute of limitations began to run on September 30, 2004. Plaintiff argues that the date when the Settlement Program was announced is more fitting. Second, Plaintiff argues that his participation in the Settlement Program should toll the statute of limitations on his claim. Plaintiff argues that he believed he was in compliance with the Settlement Program as of either July 3, 2008 or October 30, 2008, and that therefore, under the doctrine of equitable tolling, his case should have been considered timely filed even though he did not file a complaint until November 9, 2009.[1]

Defendant responds that Plaintiff is improperly attempting to relitigate Defendant's motion for summary judgment without any new evidence or any arguments that could not have been made in Plaintiff's original opposition to Defendant's motion. Defendant's main argument

---

[1] Plaintiff also argues that the release he signed "accomplished a merger of any claim, cause of action, tolling agreement against Defendant Merck by operation of law." (Mem. in Supp. of Pl.'s Mot. Recons., Rec. Doc. 63978-1 at 13). The release is dated October 30, 2008. (Ex. to Pl.'s Opp. to Def.'s Mot. Summ. J., Rec. Doc. 63864-1 at 39, 40).

is that Plaintiff has not made a sufficient showing of error in the Court's June 5, 2012 Order and Reasons to justify an alteration of that judgment.

## III. LAW & ANALYSIS

### A. Standard of Review

Motions asking a court to reconsider an order are generally analyzed under the standards for a motion to alter or amend a judgment pursuant to Rule 59(e) or a motion for relief from a judgment or order pursuant to Rule 60(b). *See Hamilton Plaintiffs v. Williams Plaintiffs*, 147 F.3d 367, 371 n.10 (5th Cir. 1998). Rule 59(e) governs when the motion is filed within 28 days of the challenged order. *See* Fed. R. Civ. P. 59(e). Because Plaintiff's Motion was filed just within 28 days of entry of the Order and Reasons it challenges, the Court treats the Motion as one pursuant to Rule 59(e).

A Rule 59(e) motion "is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004) (citing *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990)). Rather, Rule 59(e) serves the narrow purpose of correcting manifest errors or law or fact, or presenting newly discovered evidence. *Lavespere v. Niagra Mach. & Tool Works, Inc.*, 910 F.2d 1667, 174 (5th Cir. 1990); *Templet*, 367 F.3d at 479 (quoting *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989)). "'Manifest error' is one that 'is plain and indisputable, and that amounts to a complete disregard of the controlling law.'" *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004) (quoting *Venegas-Hernandez v. Sonolux Records*, 370 F.3d 183, 195 (1st Cir. 2004)). In the Fifth Circuit, altering, amending, or reconsidering a judgment under Rule 59(e) "is an extraordinary remedy that should

be used sparingly." *Templet*, 367 F.3d at 479 (citing *Clancy v. Empl'rs Health Ins. Co.*, 101 F. Supp. 2d 463, 465 (E.D. La. 2000)).

**B.     Analysis**

Plaintiff's first argument challenges the Court's holding—in both the Order and Reasons at issue here and *In re Vioxx Prods. Liab. Litig.*, 522 F. Supp.2d 799 (E.D. La. 2007)—that under Illinois law, the statute of limitations for wrongful deaths attributed to Vioxx runs from September 30, 2004. As an alternative to this date, Plaintiff suggests the date upon which the multi-billion dollar Settlement Agreement was announced.

The Court declines to reverse its prior holding. First of all, the Court does not believe Plaintiff has adequately shown that this Court committed "manifest error" when it decided that September 30, 2004 was the relevant date. But in addition to this defect in Plaintiff's motion, the Court notes that Plaintiff's proposed date would (illogically) allow potential plaintiffs and their counsel in mass torts to sit on the sidelines and allow the statute of limitations to toll while other plaintiffs and their lawyers do the work of filing suit, proceeding through discovery, and negotiating a settlement agreement. Put another way, Plaintiff completely ignores the requirement until Illinois law that a plaintiff exercise *reasonable diligence* to seek out the cause of his or her injuries, rather than awaiting the announcement of a multi-billion dollar settlement to indicate that the plaintiff has a worthy claim. *E.g.*, *Newell v. Newell*, 942 N.E.2d 776, 781 (Ill. Ct. App. 2011); *Carey v. Kerr-McGee Chem. Corp.*, 999 F. Supp. 1109, 1116 (N.D. Ill. 1998) ("The rule places the burden on plaintiffs to inquire as to the existence of a cause of action.").

Second, in response to this Court's holding that Plaintiff filed suit on November 12, 2009, and therefore fell outside both the five-year statute of limitations for fraudulent

concealment, Plaintiff argues that the statute of limitations should have been equitably tolled in his case beginning on October 30, 2008. Plaintiff alleges that shortly before that date, BrownGreer, the Claims Administrator for the Settlement Program, informed him of various deficiencies, which he then addressed; in particular, Plaintiff submitted a release form on October 30, 2008. Plaintiff alleges in late September 2009, he inquired about the status of his case, at which point BrownGreer informed him that no complaint had been filed in his case. Essentially, Plaintiff suggests that BrownGreer deliberately postponed informing Plaintiff of the missing complaint in order to ensure that it would fall outside the five-year statute of limitations for fraudulent concealment. Thus, Plaintiff alleges that he "reasonably rel[ied] on the defendant's conduct or representations in forbearing suit." *DeLuna v. Burciaga*, 857 N.E.2d 229, 249 (Ill. 2006).

This argument was foreclosed by the Court's original Order and Reasons: "The five-year statute for fraudulent concealment does not extend the otherwise applicable statute of limitations 'where a reasonable amount of time remains in the applicable limitations or repose period when a plaintiff discovers, or should have discovered through ordinary diligence, a cause of action.'" (Rec. Doc. 63893 at 7). In other words:

> [O]n September 30, 2004, the two-year wrongful death statute of limitations began to run ***and*** Plaintiff lost the protection of the fraudulent concealment statute. Plaintiff had a full two years from that date to file this wrongful death action after September 30, 2004 and any conduct after September 30, 2006, is irrelevant to the analysis.

*Id.* at 8. Thus, it is irrelevant whether the five-year statute of limitations for fraudulent concealment was equitably tolled while Plaintiff relied on any hypothetical representations of BrownGreer regarding the adequacy of his submission, as the fraudulent concealment statute no

longer applied to his claims at all at that time.[2]

The Court also cannot accept Plaintiff's argument that his claim "merged" into the release he tendered when submitting materials to the settlement Program. The Court agrees with Defendant that Plaintiff could have raised this argument in opposition to Defendant's motion for summary judgment, that the release was never accepted by the Claims Administrator, and that the terms of the Settlement Agreement reserved Defendant's right to raise a statute-of-limitations defense.

## IV.  CONCLUSION

For the foregoing reasons, IT IS ORDERED that Plaintiff's for reconsideration (Rec. Doc. 63978) is DENIED.

New Orleans, Louisiana, this 2nd day of August, 2012.

_____
UNITED STATES DISTRICT JUDGE

---

[2]The Court notes that there are several other serious problems with Plaintiff's argument. First, the Court doubts that Plaintiff's reliance on the alleged representations of BrownGreer can be considered reasonable. Plaintiff seems to have simply waited 11 months to seek an update on the status of his case and assumed during that time that his submission was adequate; furthermore, Plaintiff likely should have known that he was required to have filed a complaint to be eligible for an award under the Settlement Program. Second, it is not clear that BrownGreer made *any* representation to Plaintiff about the status of his case, except for the fact that certain deficiencies in Plaintiff's original submission had been cured. And third, Plaintiff argues that he relied on the representations of the Defendant, but in fact he alleges reliance on the representations of BrownGreer, the Claims Administrator.