UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

|                                              |   |                          |
|----------------------------------------------|---|--------------------------|
|                                              | : | MDL NO. 1657             |
| IN RE: VIOXX                                 | : |                          |
|       PRODUCTS LIABILITY LITIGATION          | : | SECTION:    L            |
|                                              | : |                          |
|                                              | : | JUDGE FALLON             |
|                                              | : | MAG. JUDGE KNOWLES       |
|                                              | : |                          |
|                                              | : |                          |
| THIS DOCUMENT RELATES TO:                    | : |                          |
|                                              | : |                          |
| Third Party Payor Common Benefit Fees        |   |                          |

---

**PRICE WAICUKAUSKI & RILEY, LLC'S OBJECTION TO
THE VIOXX THIRD PARTY PAYOR'S FEE ALLOCATION
COMMITTEE'S COMMON BENEFIT FEE RECOMMENDATION**

---

Pursuant to this Court's July 25, 2012 Order, Price Waicukauski & Riley, LLC, hereby

submits this objection to The TPP Fee Allocation Committee's Recommendation, ECF No.

63928 ("FAC Recommendation, p. __"). The Vioxx Third Party Payor Fee Allocation

Committee (hereinafter "FAC") has recommended that Price Waicukauski & Riley, LLC

(hereinafter "PWR") receive $250,000.00 for common benefit work. PWR submitted common

benefit time in the amount of $893,501.25 and expenses in the amount of $20,004.68, and should

be compensated for all time and expenses submitted.

### I.      INTRODUCTION

PWR disagrees with the FAC's recommendation and submits this objection so that the

Court can engage in the required independent inquiry as to the sufficiency of the

recommendation. *Weinberger v. Great N. Nekoosa Corp.*, 925 F.2d 518, 527 (1st Cir. 1991).

(holding "we remain convinced that independent inquiry by the trial judge is a vital component

of the fee setting process."). Indeed, this Court's duty to independently review the FAC's

recommended fee allocation has been repeatedly recognized:

> In a class action, whether the attorneys' fees come from a common fund or are otherwise paid, the district court must exercise its inherent authority to assure that the amount and mode of payment of attorneys' fees are fair and proper. *This duty of the court exists independently of any objection*.

*E.g., In re Cendant Corp. PRIDES Litig*., 243 F.3d 722, 730 (3d Cir. 2001) (quoting *Zucker v. Occidental Petroleum Corp*., 192 F.3d 1323, 1328, 29 (9th Cir. 1999) (emphasis supplied)).

Since before this MDL had even been formed, PWR was advocating on behalf of third-party payors ("TPPs") that had overpaid for Vioxx. Immediately following the FDA's decision to recall Vioxx from the market in 2004, PWR began to intensively look into the problems with Vioxx and the economic consequences it may have had on PWR's TPP clients. After concluding that its clients had significantly overpaid for the drug, PWR filed lawsuits on behalf of twenty-six (26) Taft Hartley and Welfare Funds.[1]

Based upon PWR's early filings and its vast number of clients, principal member William Riley attended the pre-leadership conference at the Windsor Court in New Orleans, to discuss the TPP litigation and how to best proceed. At that meeting, Mr. Riley conferred with Thomas Sobol and Joseph Rice on the TPP aspects of the litigation.[2] On May 2, 2005, William Riley was appointed to the Purchase Claims Committee (hereinafter "PCC"). Indeed, the vast majority of

---

[1] Electrical Workers Benefit Trust Fund, Indiana Laborers Welfare Fund, Sheet Metal Workers Local No. 20 Welfare and Benefit Fund, Bricklayers of Indiana Welfare Fund, Michiana Area Electrical Workers Health and Welfare Fund, Indiana State Council of Roofers Health and Welfare Fund, Painters Local No. 469 Health and Welfare Fund, Plumbers and Steamfitters Local No. 166 Health and Welfare Plan, Service Employees International Union Local No. 3 Health & Welfare Fund, Pipe Trades Industry Health & Welfare Plan, Indiana Carpenters Welfare Fund, Southern Ohio Painters Health and Welfare Fund, IBEW Local 129 Fringe Benefit Funds, IBEW Local 683 Fringe Benefit Funds, Ohio State IBEW Health & Welfare Fund, Painting Industry Insurance and Annuity Funds, Plumbers Local 42 Health Welfare Plan, IBEW Local 32 Health & Welfare Fund, IBEW 673 Fringe Benefit Funds, Plumbers and Steamfitters Local 440 Health and Welfare Plan, Plumbers Local No. 210 Health and Welfare Fund, Indiana Bricklayers Local No. 6 Welfare Trust Fund, Motion Picture Laboratory Technicians and Film Editors Local 780 Welfare Fund, Dealers Union Insurance Fund and United Food and Commercial Workers Union-Employee Health and Welfare Fund.

[2] Joseph Rice and his firm, Motley Rice, LLC, did not pursue the litigation.

the attorney work for which PWR seeks compensation was specifically requested by the

Purchase Claims Committee Co-Chair, Elizabeth Cabraser.  This work was both requested and

performed to advance the interests of all of the TPP litigants in the MDL.  PWR performed legal

research, prepared memos, drafted portions of the motion to dismiss response and the master

complaint, and supplied attorneys to review documents for the New Jersey TPP litigation, which

assisted both the Seeger Weiss firm and the PCC.  In light of its significant common benefit

work for all TPP litigants in the MDL (the majority of which was specifically requested by the

PCC), PWR should be fully compensated for the time and expenses submitted in its fee

application.[3]

## II.      ARGUMENT

In its recommendation, the FAC states that they "believe that applicants fall into three

"buckets":

> [S]ome applicants should be well compensated for significant substantive TPP
> common benefit work; some applicants were not previously compensated for TPP
> common benefit work during the Court's earlier common benefit process and
> should be reasonably compensated for their TPP common benefit contributions;
> and some applicants did not contribute meaningfully to the common benefit of
> TPPs.

(FAC Recommendation, p. 8). Based upon the FAC's descriptions provided, PWR should be

"well compensated for significant and substantive TPP common benefit work."

To be clear, the FAC never contends that PWR's work was performed for anything other

than the common benefit of all TPPs litigating in the MDL. (*See id.* at 21).  The FAC does omit

from its recommendation, however, the magic sentence: the "committee observes [PWR's

contribution] benefitted all TPPs." (*See id.*). The FAC does not give any reason for this omission,

_____

[3] PWR timely provided the FAC with detailed contemporaneous time records and expense reports
to support its request to be fully compensated for the time it spent and expenses it incurred in this
litigation for the benefit of all TPPs.  An appendix listing all of the supporting documents and the
supporting documents have been included as exhibits with this objection for the Court's review.

nor does it attempt to justify reducing PWR's common benefit fee by approximately **seventy percent (70%)**; a reduction that on its face is much more significant than similarly situated applicants.  The FAC's refusal to "observe" PWR's significant contribution and its decision to recommend such a significant reduction in fees awarded to PWR is not (and cannot be) justified. PWR performed significant and substantive work benefiting all TPP litigants and should be fully compensated for these contributions.

In *Victor v. Argent Classic Convertible Arbitrage Fund L.P*., 623 F. 3d 82, 89 (2d Cir. 2009), the Second Circuit recognized, "that lead counsel has an incentive to under compensate non-lead counsel, as such compensation typically decreases lead counsel's own recovery." Indeed:

> [C]ounsel have inherent conflicts.  They make recommendations on their own fees and thus have a financial interest in the outcome.  How much deference is due to the fox who recommends how to divvy up the chickens? … Such a direct conflict of interest strongly suggest that affording substantial deference is inappropriate.

*In re Diet Drugs,* 401 F.3d 143, 173 (3d Cir. 2005). In the present case, PWR is requesting to be reasonably compensated for the work it performed benefiting all TPPs – especially in light of the fact that most of the work performed was performed at the direct request of the PCC.

### A.   PWR provided significant substantive TPP common benefit work.

### 1.   William Riley was an appointed member of the PCC.

PWR principal member, William Riley, was appointed to the PCC on May 2, 2005, by the Court-appointed Plaintiffs' Steering Committee.  The PCC was created solely to coordinate "the prosecution of consumer and third-party/end payor refund and economic damages claims arising from prescription and sale of Vioxx."  (May 2 Fax from Elizabeth Cabraser).[4]  As a

---

[4] A true and correct copy of this facsimile is attached to this objection as Exhibit 1.

member of this committee, Mr. Riley and other employees of PWR were required to participate in weekly conference calls to discuss strategy and to collaborate as a group on how best to move the litigation forward.  Mr. Riley's position on the PCC also required that he and other employees of PWR travel to strategy meetings held in New Orleans and Texas.   PWR was assigned research projects and given the responsibility of briefing certain issues during these meetings and conference calls; this work was performed and then incorporated in the final pleadings and used in making difficult strategic decisions.

The PCC was developed for the benefit of all TPPs litigating in the MDL, and all of the time and expenses submitted by PWR for work performed as part of this committee must be viewed as common benefit time and PWR should be compensated for it.

**2.   Research/Drafting.**

The FAC recognizes that there were two substantive pleadings that were filed during this litigation, the Master Complaint and the Response to the Motion to Dismiss.  (*See, e.g.,* FAC Recommendation, pp. 1-2). As set out in detail in PWR's fee application, PWR was directly involved in the research and drafting of each of these pleadings at the behest of the PCC; in particular co-chair, Elizabeth Cabraser.

Specifically, the PCC asked PWR to research and perform an analysis regarding choice of law and the consumer fraud statutes of all 50 states, focusing primarily on the issue of reliance to assist in the drafting of the Master Complaint.  PWR compiled a chart and discussed the implications of each statute as it related to this litigation.  In addition, PWR's RICO counts for Indiana, Ohio, and Illinois led to the RICO counts being encapsulated in the Purchase Claim Master Class Action Complaint.

With regard to the TPPs' response to Merck's motion to dismiss, the PCC (again, through Ms. Cabraser) asked PWR to research and draft portions of the response brief relating to the

learned intermediary and choice of law.  In addition, the PCC asked PWR to draft the portion of

the brief addressing the issue of standing for the Indiana, Illinois, and Ohio TPPs.

In addition to the research and drafting spent on the motion to dismiss and the master

complaint, PWR was also asked, by Ms. Cabraser and the PCC, to research and prepare

memorandums of law regarding the issues of collateral estoppel and New Jersey law regarding

the TPPs' claims.

Despite the fact that the PCC specifically asked PWR to spend significant time and

resources assisting in the substantive legal work that ultimately led to the resolution of this case,

it has recommended (without explanation) that PWR's fees and expenses be reduced by **seventy**

**percent (70%)**. (FAC Recommendation, p. 21). It cannot be disputed that the time spent

researching and drafting these pleadings was for the benefit of all TPPs litigating in the MDL.

The time and cost submitted by PWR in relation to this work must be viewed as common benefit

time and PWR should be compensated for it.

**3. Document Review.**

Again, at the direct request of the Purchase Claims Committee, specifically, Ms. Cabraser

and Christopher Seeger, PWR flew associates to the New York law office of Seeger Weiss LLP,

to review and analyze documents produced by Merck in the case of *Int'l Union of Operating*

*Eng'rs Local No. 68 Welfare Fund, et al. v. Merck*. Merck had made a substantial production and

it was essential that these documents be reviewed and digested as quickly as possible for the

benefit of all TPP litigants, including those in the MDL.

Again, the time PWR attorneys spent reviewing these documents was given at the direct

request of those in leadership positions (i.e., Ms. Cabraser and Mr. Seeger), and was performed

for the benefit of all TPPs.  The time and expense submitted by PWR in relation to this work

must be viewed as common benefit time and PWR should be compensated for it.

### 4. Discovery.

Before the Bellwether trial cases were selected, initial disclosures were required from all of the named Plaintiffs listed on the Master Consolidated Complaint.  PWR represented **twenty-four** (24) of these Plaintiffs and completed this production for all twenty-four of its clients[5]. This required long hours working, not only with PWR's individual clients, but also with each client's pharmacy benefit manager (e.g., Caremark, Save RX and Medco).  The initial disclosures were a large factor in the identification and selection of the Bellwether cases, and were imperative to keeping this litigation moving forward. In reversing a district court's fee allocation, the First Circuit expressly recognized the importance of this type of work: "individual plaintiffs typically require a multitude of services, many of which cannot be satisfied by an impersonal steering committee." *In re Thirteen Appeals Out of the San Juan DuPont Plaza Hotel Fire Litig.,* 56 F.3d 295, 311 (1st Cir. 1995) (reversing district court's fee allocation that did not fairly compensate attorneys whose clients were named plaintiffs).

When the Court entered Pre-Trial Order No. 38, it noted there were more than 45 claims by third-party payors—**nearly half of those TPPs were represented by PWR**.  The clients that PWR represented and the work PWR performed on their behalf, helped to create the synergy that led to the resolution of the TPP claims.

The production of the named plaintiffs' initial disclosures allowed for potential Bellwether trial cases to be selected and allowed the litigation to progress while applying pressure on Merck to resolve this litigation.  The time spent responding to the initial disclosures for all twenty-four (24) of PWR's named Plaintiffs was performed for the benefit of all TPPs.

---

[5] The number of PWR's TPP clients was reduced to twenty-four due to various plan mergers over the course of the litigation.

Therefore, the time and cost submitted by PWR in relation to this work must be viewed as common benefit time and PWR should be compensated for it.

## 5. Bellwether Trial.

The Court appointed PWR principal member William Riley to the Private Third-Party Payor Bellwether Trial Committee. (*See* Pre-Trial Order No. 41).  PWR had three clients selected as possible Bellwether trial cases.  PWR worked with these clients to respond to the discovery propounded to the Bellwether trial Plaintiffs in accordance with Pre-Trial Order No. 38.  PWR prepared its three clients for trial through in person meetings, conference calls, written correspondence, and working up files to account for missing documents and additional material needed for discovery and trial.  In addition to working with its own clients, PWR participated in conference calls with counsel for Merck regarding outstanding discovery issues and other issues for trial.  Attorneys for PWR also participated in conference calls and strategy sessions with other Bellwether trial counsel, which included a called-for meeting of the Trial Committee in New Orleans.

The very nature of a Bellwether trial demonstrates that this work was performed for the benefit of all of the TPPs litigating in the MDL and, therefore, the time and cost submitted by PWR in relation to this work must be viewed as common benefit time and PWR should be compensated for it.

### B.  PWR was not previously compensated for TPP common benefit work.

PWR has not been previously compensated for the time spent and expenses it has incurred in this litigation for the common benefit of all of the TPP litigants.  In addition, PWR did not take **any** fees from its clients.  When the PCC requested that PWR perform common benefit work (e.g., legal research, draft portions of the motion response, document review in the New York Office of Seeger Weiss, etc.), PWR performed that work with the good faith belief

that if this litigation was successful, it would be compensated for all of its time and cost through the common benefit fund. Indeed, when requesting this work from PWR, the PCC never asked PWR to work for less than one-third of its hourly rate, as it has now recommended.

### III.    CONCLUSION

As stated by both the parties when entering into the settlement agreement and the FAC in making its recommendation, "the parties intended that the Common Benefit Agreement resolve the costs and expenses associated with litigating TPPs claims and serve to *fully compensate* attorneys for TPPs." (*E.g.,* FAC Allocation, p. 4) (emphasis supplied).  PWR is only asking that the agreement be satisfied and that it be fully compensated for its work.  As Judge Donovan Frank recognized in *In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, MDL No. 05-1708, 2008 WL 5382338, at *8 (D. Minn. Dec. 23, 2008):

> The Court believes that law firms should be compensated for the work that they were assigned to do before firms that bore a large risk are granted an enhancement for that risk.  If this were not the case, then in future MDLs, firms would have little incentive to do the "worker bee" work.

For the reasons set forth above, the undersigned counsel respectfully objects to the Recommended Fee Allocation made to Price Waicukauski & Riley, LLC, and requests that PWR be fully compensated in the amount of $913,505.93 for the fees and expenses expended on this litigation for the common benefit of all TPP litigants in the MDL.

Dated: August 7, 2012

Respectfully submitted,

**PRICE WAICUKAUSKI & RILEY, LLC**

By /s/ William N. Riley
William N. Riley, Bar No. 14941-49
Jamie R. Kendall, Bar No. 25124-49A

The Hammond Block Building
301 Massachusetts Avenue
Indianapolis, IN  46204
Telephone: (317) 633-8787