UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| | * | |
| | * | |
| In re: VIOXX Products Liability Litigation | * | MDL No. 1657 |
| | * | |
| This Document Relates to: | * | SECTION L |
| | * | |
|    State of Utah | * | JUDGE ELDON E. FALLON |
| | * | |
|    v. | * | MAGISTRATE JUDGE |
| | * | KNOWLES |
|    Merck Sharp & Dohme Corp. | * | |
| | * | |
|    Civil Action No. 2:06-cv-09336 | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * *

### PLAINTIFF'S REQUESTS FOR ADMISSION AND SECOND SET OF INTERROGATORIES TO DEFENDANT

Pursuant to FED. R. CIV. P. 33 and 36 and Pretrial Order Number 39B, please respond to the following Requests for Admission and Interrogatories.

### DEFINITIONS

1. "Communication" means, without limitation, any act, action, oral speech, written correspondence, contact, expression of words, thoughts, and/or ideas, or transmission or exchange of data or other information to another person, whether orally, person-to-person, in a group, by telephone, letter, personal delivery, telex, facsimile, and/or any other process.

2. "Food and Drug Administration") ("FDA") means the United States Food and Drug Administration and any department, agent, director, officer, representative, or present or former employee thereof.

3. "Including" means "including but not limited to" and "including without limitation."

4. "Merck" means the defendant in this action, and any of the subsidiaries, divisions,

departments, affiliates, predecessors, successors or offices of the defendant by whatever name known, and all present and former officers, directors, employees, trustees, principals, agents, and representatives of Merck, as well as any person acting or purporting to act on its behalf.

5.  "Person" means any natural person and any entity, including any corporation, association, partnership, or other business or government enterprise.

6.  "Vioxx" means the dug rofecoxib sold by Merck under the registered trademark VIOXX®.

7.  "You" or "Your" means all defendants listed on the complaint, along with all present and former employees, agents, representatives, departments, committees or equivalent entities, or attorneys, or any other division, entity, employee, agent, representative, committee member, or other actor on behalf of the Defendant.

## INSTRUCTIONS

A.    The answers to these requests shall include such information as is available to Defendant and found within documents that are within the custody, possession or control of Plaintiffs, or are within the custody, possession or control of any consultants, accountants, attorneys or other agents of Defendant or which are otherwise available to Defendant.  In responding to these discovery requests, Defendant is specifically instructed to review his personal files, notes, records, correspondence, daily calendars and telephone logs or records for all persons who have knowledge of the information inquired about in each request.

B.    If the answer to any discovery requests is not made from the personal knowledge of Defendant who will be verifying the answers to these interrogatories, identify each person from whom information or documents were obtained to make the particular answer and identify each person having personal knowledge of such information.  If the answers or portions of the

2

answers to these discovery requests are supplied upon information and belief rather than upon actual knowledge, Defendant should so state and specifically describe or identify the source or sources of such information and belief.

C.     The answers to these discovery requests should include, but not be limited to, an identification of each person having knowledge of the information provided in the answer, and of all documents and communications relating to that information.

D     Where an individual interrogatory calls for an answer which involves more than one part, each part of the answer should be clearly set out so that it is understandable.

E.     Where the terms "you", "defendant", or "plaintiff" are used, they are meant to include every individual party and separate answers should be given for each person named as a party, if the answers are different.

F.     Where the terms "incident" or "the incident" are used, they are meant to mean the incident which is the basis of this lawsuit, unless otherwise specified.

G.     If Defendant claims that any conversation, meeting or oral discussion inquired about in these discovery requests is privileged, Defendant should nevertheless identify such conversation, meeting or oral discussion in the manner required herein and set out specifically a detailed description of the factual circumstances supporting their claim of privilege.

H.     A "health care provider" as used in these interrogatories is meant to include any medical doctor, osteopathic physician, psychiatrist, psychologist, mental health therapist, nurse practitioner, nurses assistant, acupuncturist, neuro pathologist, massage therapist, podiatrist, doctor or chiropractic, naturopathic physician, or other person who performs any kind of healing art.

3

I.      All documents are to be produced which are in the possession of the individual or corporate party, their attorneys, investigators, agents, employees, or other representatives of the named party and his attorney.  The terms "incident" or "the incident" are meant to include the incident which is the basis of this lawsuit, unless otherwise specified.

J.      The term "document" is meant to include, but is not limited to, all writings, notes, memoranda, correspondence, charts, graphs, records, tapes, pictures, recorded, photographed, sketched, drawn or otherwise produced, maintained or stored information.

K.      These discovery requests are continuing in nature and should be amended and supplemented in accordance with the Utah Rules of Civil Procedure.

**Pursuant to Rule 36, the matters shall be deemed admitted unless said request is responded to within 30 days after service of the request or within such shorter or longer time as the court may allow.**

## REQUESTS FOR ADMISSION

**REQUEST NO. 1:**    Admit that Merck conducted (or directed a third party to conduct) an internal clinical trial in 1998 entitled Study 090 concerning Vioxx.

**REQUEST NO. 2:**    Admit that Study 090 revealed that Vioxx caused a greater incidence of cardiovascular events than a placebo or a different arthritis drug.

**REQUEST NO. 3:**    Admit that the results of Study 090 indicated that Vioxx caused a greater incidence of adverse cardiovascular events than a placebo or a different arthritis drug.

**REQUEST NO. 4:**    Admit that Merck never disclosed the results of Study 090 to the FDA.

**REQUEST NO. 5:** Admit that Merck never disclosed the results of Study 090 to the State of Utah.

**REQUEST NO. 6:** Admit that Merck had actual knowledge of studies indicating that Vioxx caused a greater incidence of adverse cardiovascular events than a placebo or a different arthritis drug before Merck started selling Vioxx.

**REQUEST NO. 7:** Admit that Vioxx causes a greater incidence of adverse cardiovascular events than a placebo.

**REQUEST NO. 8:** Admit that Vioxx causes a greater incidence of adverse cardiovascular events than at least one other arthritis drug.

**REQUEST NO. 9:** Admit that you have no evidence that naproxen blocks platelet aggregation.

**REQUEST NO. 10:** Admit that you have no evidence that naproxen decreases the incidence of adverse cardiovascular events among its users.

**REQUEST NO. 11:** Admit that Merck conducted (or directed a third party to conduct) the VIGOR study in January of 1999.

**REQUEST NO. 12:** Admit that the VIGOR study revealed that Vioxx caused a greater incidence of cardiovascular events than naproxen.

**REQUEST NO. 13:** Admit that the VIGOR study indicated that Vioxx caused a greater incidence of adverse cardiovascular events than for naproxen.

**REQUEST NO. 14:** Admit that one of Merck's stated purposes for the ADVANTAGE study was to measure the gastrointestinal safety of Vioxx.

**REQUEST NO. 15:** Admit that Merck's primary stated purpose for the ADVANTAGE study was to measure the gastrointestinal safety of Vioxx.

5

**REQUEST NO. 16:**  Admit that Merck issued a press release on May 21, 1999 that included a list of Vioxx's common side effects, but did not make any reference to cardiovascular side effects.

**REQUEST NO. 17:**  Admit that Merck stated in a press release on March 27, 2000 that an extensive review of safety data showed no indication of a difference in the incidence of thromboembolic events between Vioxx and placebo.

**REQUEST NO. 18:**  Admit that prior to March 27, 2000, Merck had the results of studies that indicated that Vioxx caused a greater incidence of adverse cardiovascular events than a placebo.

**REQUEST NO. 19:**  Admit that Merck has publicly stated that naproxen blocks platelet aggregation.

**REQUEST NO. 20:**  Admit that Merck has publicly stated that naproxen's ability to block platelet aggregation caused its users to experience fewer thromboembolic events.

**REQUEST NO. 21:**  Admit that Alise Reicin, Executive Director of Clinical Research at Merck Research Laboratories, told the FDA Arthritis Advisory Committee that the benefits of naproxen were likely responsible for the difference in cardiovascular events between naproxen and Vioxx.

**REQUEST NO. 22:**  Admit that when Alise Reicin made the statement set forth in the preceding request for admission, she had no evidence that naproxen had beneficial properties that caused its users to experience a decrease in the likelihood of suffering an adverse cardiovascular event.

**REQUEST NO. 23:**  Admit that Merck's marketing department designed the ADVANTAGE study.

**REQUEST NO. 24:**   Admit that Merck created articles concerning Vioxx that were published in medical journals.

**REQUEST NO. 25:**   Admit that Merck created articles concerning Vioxx that were published in medical journals without disclosing in the article that Merck created the article.

**REQUEST NO. 26:**   Admit that Merck cancelled a study to compare the safety of Vioxx with Tylenol (acetaminophen).

**REQUEST NO. 27:**   Admit that Merck cancelled the study described in the preceding request for admission because the study could highlight the favorable properties of acetaminophen.

**REQUEST NO. 28:**   Admit that Merck was concerned at a time before the FDA approved Vioxx that Vioxx's failure to inhibit COX-1 would lead to more thrombotic events.

**REQUEST NO. 29:**   Admit that Merck knew that Vioxx's failure to inhibit COX-1 would lead to more thrombotic events before the FDA approved Vioxx.

**REQUEST NO. 30:**   Admit that Merck was concerned taking Vioxx would lead to more thrombotic events before it began marketing Vioxx.

**REQUEST NO. 31:**   Admit that Merck knew that many potential Vioxx-users took aspirin to reduce the risk of suffering cardiac events, prior to 1999.

**REQUEST NO. 32:**   Admit that Merck knew that inclusion of aspirin users in any study would adversely affect any alleged positive outcome of gastrointestinal benefit for Vioxx.

**REQUEST NO. 33:**   Admit that Merck was concerned about excluding the aspirin users from any study of Vioxx because aspirin users would decrease the incidences of adverse cardiovascular events.

**REQUEST NO. 34:**   Admit that Merck cancelled at least one outcome trial because of concerns over having aspirin-users in the trial.

**REQUEST NO. 35:**   Admit that on at least one occasion, Dr. Alise Reicin proposed keeping people with a high risk of cardiovascular problems from participating in a study of Vioxx.

**REQUEST NO. 36:**   Admit that on at least one occasion, Merck adopted Dr. Alise Reicin's proposal to keep people with a high risk of cardiovascular problems from participating in a study of Vioxx.

**REQUEST NO. 37:**   Admit that Dr. Scolnick stated that Vioxx's risk of adverse cardiovascular events is statistically equivalent to placebo.

**REQUEST NO. 38:**   Admit that on more than one occasion from 1996 to 1998, Merck issued public statements promoting the effectiveness of Vioxx.

**REQUEST NO. 39:**   Admit that on more than one occasion from 1996 to 1998, Merck issued public statements promoting the gastrointestinal safety of Vioxx.

**REQUEST NO. 40:**   Admit that Merck marketed Vioxx before May 21, 1999.

**REQUEST NO. 41:**   Admit that Merck did not mention any adverse cardiovascular risk in any of its direct-to-consumer marketing or television advertising of Vioxx in 1999.

**REQUEST NO. 42:**   Admit that Merck did not mention an adverse cardiovascular risk in any of its direct-to-consumer marketing or television advertising of Vioxx in 2000.

**REQUEST NO. 43:**   Admit that on more than one occasion, Merck publicly stated that Vioxx does not increase the risk of adverse cardiovascular events.

**REQUEST NO. 44:**   Admit that Merck spent more than $161 million in 2000 on direct-to-consumer marketing of Vioxx in 2000.

8

**REQUEST NO. 45:**   Admit that Merck spent more than $100 million in each of the years 2001, 2002, 2003 and 2004 in direct-to-consumer marketing of Vioxx.

**REQUEST NO. 46:**   Admit that Merck hired more than 4500 sales representatives to detail Vioxx to physicians.

**REQUEST NO. 47:**   Admit that on more than one occasion, Merck publicly stated that Vioxx is safe and effective.

**REQUEST NO. 48:**   Admit that on more than one occasion, sales representatives working for Merck told one or more physicians that Vioxx is safe and effective.

**REQUEST NO. 49:**   Admit that the result of at least one study, performed by Merck, indicates that Vioxx is not any more effective than less expensive non-steroidal anti-inflammatory drugs ("NSAIDs").

**REQUEST NO. 50:**   Admit that the result of at least one study, not performed by Merck, indicates that Vioxx is not any more effective than less expensive non-steroidal anti-inflammatory drugs ("NSAIDs").

**REQUEST NO. 51:**   Admit that on at least one occasion, Merck, through advertising or otherwise, informed the public that they ask their doctor about Vioxx.

**REQUEST NO. 52:**   Admit that Merck told the public on at least one occasion, through advertising or otherwise, that Merck is safer than other NSAIDs.

**REQUEST NO. 53:**   Admit that the FDA warned Merck on at least one occasion to desist from making misrepresentations about Vioxx's safety profile.

**REQUEST NO. 54:**   Admit that on at least one occasion, Merck refused a request to fund an independent study of Vioxx's cardiovascular safety.

**REQUEST NO. 55:**   Admit that Merck has no evidence that Vioxx is safer than Celebrex.

**REQUEST NO. 56:**   Admit that Merck has no evidence that Vioxx is a more effective pain reliever than Celebrex.

**REQUEST NO. 57:**   Admit that the results of at least two of Merck's trials of Vioxx between July 1995 and February 1998 indicated that Vioxx increased the risk of adverse cardiovascular events, compared to both placebo and other NSAIDS.

**REQUEST NO. 58:**   Admit that Merck hired a Dr. Peter Holt to promote Vioxx.

**REQUEST NO. 59:**   Admit that Merck stated in its 2003 annual report that Vioxx was the best-selling arthritis and pain medicine.

**REQUEST NO. 60:**   Admit that Merck had actual knowledge in 1999 of the 1999 study by Garret A. Fitzgerald entitled *Effects of Specific Inhibition of Cyclooxygenase-2 on Sodium Balance, Hemodynamics, and Vasoactive Eicosanoids*.

**REQUEST NO. 61:**   Admit that on at least one occasion, Merck waited at least one year to release to the FDA the result of a study in Merck's possession indicating that Vioxx increases the risk of adverse cardiovascular events relative to placebo.

**REQUEST NO. 62:**   Admit that on at least one occasion, Merck waited at least one year to release to the FDA the result of a study in Merck's possession indicating that Vioxx increases the risk of adverse cardiovascular events relative to other NSAIDs.

**REQUEST NO. 63:**   Admit that Merck employee Briggs Morrison suggested that Merck allow participants in the VIGOR study to take aspirin.

**REQUEST NO. 64:**   Admit that four to five times more participants in the VIGOR study suffered heart attacks while on Vioxx than the participants in the VIGOR study who were on other NSAIDs

**REQUEST NO. 65:**   Admit that Merck's employee, Dr. Edward M. Scolnick believed that the VIGOR study established that Vioxx increased the risk of adverse cardiovascular events compared to placebo.

**REQUEST NO. 66:**   Admit that Merck did not publish the results of the VIGOR study on the same time frame as it normally publishes the results of studies it undertakes.

**REQUEST NO. 67:**   Admit that Merck delayed publishing the results of the VIGOR study because Merck wanted first to find evidence that the results of VIGOR were due to the cardio-protective properties of naproxen.

**REQUEST NO. 68:**   Admit that Merck offered defenses to the FDA concerning an FDA memorandum on the safety data gathered in the VIGOR study.

**REQUEST NO. 69:**   Admit that the FDA sent notice to Merck rejecting any defenses made by Merck concerning an FDA memorandum on the safety data gathered in the VIGOR study.

**REQUEST NO. 70:**   Admit that Merck provided its sales representatives a document or pamphlet called the "Cardiovascular Card."

**REQUEST NO. 71:**   Admit that the "Cardiovascular Card" described in the preceding Request for Admission contained information concerning Vioxx's risks of increasing adverse cardiovascular events.

**REQUEST NO. 72:**  Admit that the "Cardiovascular Card" described in the preceding two Requests for Admission referenced studies that were not conducted to test the safety of Vioxx.

**REQUEST NO. 73:**  Admit that one or more Merck employees asked its researchers, on at least one occasion, to change the trial results of the ADVANTAGE study.

**REQUEST NO. 74:**  Admit that one or more Merck employees asked one of its scientists, on at least one occasion, to re-classify a 73-year-old ADVANTAGE participant's death from myocardial infarction to unknown.

**REQUEST NO. 75:**  Admit that when Merck first published the results of the ADVANTAGE study it did not report three participants who suffered heart-related deaths.

**REQUEST NO. 76:**  Admit that the results of Merck Protocols 078, 091 and 126 indicated that Vioxx worsened Alzheimers Disease.

**REQUEST NO. 77:**  Admit that on at least one occasion, Merck did not timely disclose the results of a Vioxx study to the FDA.

**REQUEST NO. 78:**  Admit that on at least one occasion, Merck asked representatives of the Cleveland Clinic Journal to run a rebuttal of an article discussing Vioxx's safety profile.

**REQUEST NO. 79:**  Admit that on at least one occasion, Merck sent letters to thousands of patients to discuss the cardiovascular safety profile of Vioxx.

**REQUEST NO. 80:**  Admit that Merck filed a lawsuit in a Spanish Court against Dr. Joan R. Laporte.

**REQUEST NO. 81:**  Admit that Vioxx has pro-thrombotic tendencies.

**REQUEST NO. 82:**  Admit that Vioxx increases the risk of adverse cardiovascular events compared to placebo.

**REQUEST NO. 83:**  Admit that Vioxx increases the risk of adverse cardiovascular events compared to other NSAIDs.

**REQUEST NO. 84:**  Admit that Vioxx is not more effective at treating pain than other NSAIDs.

**REQUEST NO. 85:**  Admit that Vioxx costs more than other prescription drugs that are at least equally as effective at treating pain as Vioxx.

**REQUEST NO. 86:**  Admit that Merck personnel compared the Clinical Safety of rofecoxib versus placebo in the Vioxx (rofecoxib)/MK-966 Alzheimer's Disease (AD) Studies (Protocol 078 and 091) by analyzing the rates and relative risks of cardiovascular thrombotic mortality for patients taking rofecoxib and Placebo, on an Intention to Treat basis.

**REQUEST NO. 87:**  Admit that in the Vioxx (rofecoxib)/MK-966 Alzheimer's Disease (AD) Conversion Study (Protocol 078) patients on rofecoxib were at a statistically significantly higher risk of converting to Alzheimers Disease by December 1999 than patients on placebo.

**REQUEST NO. 88:**  Admit that Merck never reported an analysis of CVT mortality in Protocol 078 and 091 on an ITT basis to the FDA.

**REQUEST NO. 89:**  Admit that no version of the Informed Consent for Protocol 078 informed persons volunteering to participate in the study that there was a statistically significantly greater risk of conversion from Mild Cognitive Impairment to Alzheimers Disease on Vioxx compared to patients on placebo.

**REQUEST NO. 90**  Admit that in the Vioxx (rofecoxib)/MK-966 Alzheimers Disease (AD) Studies (Protocol 078 and 091) patients on rofecoxib were at a statistically significantly higher risk of death from pneumonia than patients on placebo.

**REQUEST NO. 91:**  Admit that in the Vioxx (rofecoxib)/MK-966 Alzheimer's Disease (AD) Studies (Protocol 078 and 091) male patients on rofecoxib were at a statistically significantly higher risk of a diagnosis of osteoporosis than patients on placebo.

**REQUEST NO. 92:**  Admit that Garrett Fitzgerald PhD advised Merck personnel prior to the year 2000 that inhibition of Cox-2 by rofecoxib could adversely affect cognitive function.

**REQUEST NO. 93:**  Admit that in the Vioxx (rofecoxib)/MK-966 Alzheimer's Disease (AD) Studies (Protocol 078 and 091) patients on rofecoxib were at a statistically significantly higher risk of osteoporosis than patients on placebo.

**REQUEST NO. 94:**  Admit that the Protocol and Data Analysis Plans for 078 and 091 called for Intention to Treat analyses for safety and efficacy.

**REQUEST NO. 95:**  Admit that Merck never reported an Intention to Treat safety analysis to FDA for 078 and 091.


## INTERROGATORIES


**INTERROGATORY NO. 1:**       If you have denied any of the Plaintiff's Requests for Admission above for lack of knowledge, please disclose all steps taken to reasonably investigate the manner including the names of the individuals who did the investigation.

**INTERROGATORY NO.2:**       If you deny any of the requests for admission above,

please state in detail the basis for the denial.


DATED this 9th day of August, 2012.


_____/S/_____
Joseph W. Steele
Kenneth D. Lougee
STEELE & BIGGS
5664 South Green Street
Salt Lake City, UT  84123


____/S/_____
Eric H. Weinberg
The Law Offices of Eric H. Weinberg
149 Livingston Avenue
New Brunswick, NJ  08901


____/S/_____
Richard W. Schulte (Ohio Bar No. 0066031)
WRIGHT & SCHULTE
812 E. National Road, Suite A
Vandalia, Ohio 45377
(937) 435-7500

***Attorneys for Plaintiff***

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing PLAINTIFF'S REQUESTS FOR ADMISSION AND INTERROGATORIES TO DEFENDANT has been served on Liaison Counsel, Russ Herman, Phillip Wittmann and Ann Oldfather, by U.S. Mail and e-mail or by hand delivery and e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8(B), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 9th day of August, 2012.

_____/S/_____
Joseph W. Steele
Kenneth D. Lougee
STEELE & BIGGS
5664 South Green Street
Salt Lake City, UT  84123