UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE VIOXX LITIGATION ) | |
| ) | MDL Docket No. 1657 |
| This Document Relates to All Cases ) | Section L |
| ) | |
| ) | Judge Fallon |
| ) | Magistrate Judge Knowles |
| ) | |
| ) | August 10, 2012 |

**JOINT OBJECTION OF AUDET & PARTNERS, LLP, HOVDE DASSOW & DEETS, LLC, THE LANIER LAW FIRM, P.C., EWING, McMILLIN & WILLIS, PLLC, GARY FRANKE CO., LPA, TO THE TPP FEE ALLOCATION COMMITTEE'S JUNE 13, 2012 RECOMMENDATION**

**Robert T. Dassow**
HOVDE DASSOW + DEETS, LLC
201 W. 103rd Street, Suite 500
Indianapolis, IN 46290
Phone: (317) 818-3100
Fax: (317) 818-3111

**W. Mark Lanier**
**Richard D. Meadow**
The Lanier Law Firm, P.C.
6810 FM 1960 West
Houston, TX 77069
Phone: (713) 659-5200
Fax: (713) 659-2204

**Susanne Scovern**
Audet & Partners, LLP
221 Main Street, Suite 1460
San Francisco, CA 94105
Fax: (415) 568-2556
Phone: (415) 568-2555

**Gary F. Franke**
Gary F. Franke Co, L.P.A.
120 East 4th Street, Suite 1040
Cincinnati, OH 45202
Phone: (513) 564-9222
Fax: (513) 564-9990

**C. David Ewing**
Ewing, McMillin & Willis, PLLC
1100 Republic Building
429 W. Muhammad Ali Boulevard
Louisville, KY 40202
Phone: (502) 585-5800
Fax: (502) 585-5858

*Attorneys for Central States, Southeast Areas Health and Welfare Fund and Central Pennsylvania Teamsters Health Welfare and Pension Fund*

Audet & Partners, LLP, Hovde Dassow & Deets, LLC, The Lanier Law Firm, P.C., Ewing, McMillin, & Willis, PLLC, and Gary Franke, Co., L.P.A. (collectively "Central States Law Firms") respectfully submit this objection to the proposed allocation of the TPP Common Benefit Fees issued by the TPP Fee Allocation Committee on June 13, 2012.

## I.   INTRODUCTION

The above law firms object to the allocation of common benefit attorneys' fees recommended by the TPP Fee Allocation Committee ("TPP FAC"). While we commend the outcome of the settlement and the work of the committee, the TPP FAC has grossly undervalued the contribution of these law firms toward the resolution all of the TPP cases.

On July 20, 2008, Judge Higbee ordered the Central States case to be the <u>first</u> trial case in New Jersey. Collectively, these Central States Law Firms prosecuted all aspects of trial preparation and discovery for the Central States bellwether trial case at Judge Higbee's direction. The "Central States Law Firms" convened numerous trial strategy meetings in New York City. We were instrumental in Pharmaceutical and Therapeutics Committee discovery. We were engaged in all facets of pre-trial preparation and discovery necessary to try the first TPP bellwether case. The selected bellwether trial case required a tremendous amount of time, resources, and commitment by the firms. As reflected by the previously submitted affidavits, timesheets, and expenses, the "Central States Law Firms" were committed to winning the first TPP bellwether trial on behalf Central States and all other TPP Plaintiffs.

The *Central States* case, filed on September 27, 2006, would have been the first trial in <u>any</u> venue. For example, the MDL TPP bellwether trials were not even selected until April 14, 2009 years after work on Central States began. The value of the contributions to the litigation by these firms is unique and inured to the benefit of all TPP Plaintiffs. The preparation of the first

and only selected trial case in New Jersey should not be undervalued as reflected by the TPP FAC's allocation proposal. The "Central States Law Firms" have not received any compensation or reimbursement of expenses from Central States.

The Central States Law Firms should not be disadvantaged by virtue of not having performed their work directly before this Honorable Court. All of their work was performed before Judge Higbee in the coordinated proceedings in New Jersey. The Central States case was indeed the bellwether case in New Jersey pursuant to Judge Higbee's orders. We respectively invite this Court to query Judge Higbee regarding the quantity and quality of the work performed in her court by the Central States Law Firms. Judge Higbee is best suited to give this court an unbiased assessment of the work performed. Indeed, any analysis regarding TPP representation in New Jersey would benefit greatly from her insight. We are confident that Judge Higbee will validate our efforts and provide constructive insight regarding what constitutes fair compensation for those efforts. If, on the other hand, Judge Higbee does not agree with our assertion herein, we will be constrained to accept that fact. In either case, this court will have an unbiased and objective evaluation by a fellow Judge who, unlike certain members of the fee committee, does not have a corresponding stake in this matter.

## II.   LODESTAR ANALYSIS SHOULD BE USED FOR THE PROPER ANALYSIS WITH REGARD TO ANY FINAL ALLOCATION

The allocation of common benefit fees among competing counsel, even if a limited fund is to be disbursed, is no different from the process of making any other kind of attorney fee award. In all cases, the district court has discretion subject to a few notable constraints:

> We review the district court's award of attorneys' fees for abuse of discretion. "To constitute an abuse of discretion, the district court's decision must be either premised on an application of the law that is erroneous, or on an assessment of the evidence that is clearly erroneous." The record must "clearly indicate[] that the district

3

court has utilized the Johnson framework as the basis of it analysis, has not proceeded in a summary fashion, and has arrived at the an amount that can be said to be just compensation."

*In re High Sulfur Content Gasoline Products Liability Litigation*, No. 09-31313, 384 Fed. Appx. 299 (5th Cir., 2010) ("High Sulfur II") citing *In re High Sulfur Content Gasoline Prods. Liab. Litig.* ("*High Sulfur I*"), 517 F.3d 220, 227 (5th Cir. 2008), and *Grigson v. Creative Artists Agency L.L.C.*, 210 F.3d 524, 528 (5th Cir. 2000). See also *Cobb v. Miller*, 818 F.2d 1227, 1232 (5th Cir. 1987) ("[W]hile our cases indicate that the district court must utilize the Johnson factors in it analysis on the issue of attorney's fees, we are not required to reverse summarily a district court finding which omits discussion of one of the Johnson factors as long as the record indicates that the district utilized *Johnson* framework as the basis of its analysis...

In all cases within the Fifth Circuit, including allocation of common fund fees, the starting point of any proper analysis must be a "lodestar" calculation:

> This Circuit utilizes the "lodestar method" to calculate attorneys' fees. Initially, the district court must determine the reasonable number of hours expended on the litigation and the reasonable hourly rate for the participating lawyer. *Louisiana Power & Light Co., v. Kellstrom*, 50 F.3d 319, 324 (5th Cir.), cert. denied, 516 U.S. 862, 116 S.Ct. 173, 133 L.Ed.2d 113 (1995). The lodestar is then computed by multiplying the number of hours reasonably expended by the reasonable hourly rate.

*Forbush v. J.C. Penney Co.*, 98 F.3d 817 (5th Cir. 1996).

This Court has followed the lodestar/*Johnson* approach:

> The work that an attorney devotes to a class action is generally the principal factor by far in determining the attorneys' portion of the common benefit fee. Indeed, in the present case, this factor plays the dominant role in determining the proper allocation of the fee. First, a few general comments are appropriate to frame the discussion. The attorney labor portion of the Court's consideration consists of two sub-parts: time and type of work.

*Turner v. Murphy Oil USA, Inc.*, ("Murphy Oil II"), 582 F.Supp.2d 797, 801 n.8 (E.D.La. Oct 06, 2008).

This Court should use the *Johnson* factors for a lodestar calculation and allocation.

### III. THE COMMITTEE MEMBERSHIP AND LEADERSHIP HAS GROSSLY OVERVALUED THEIR CONTRIBUTION TO THE ENTIRETY OF THE LITIGATION.

No one disputes that the Committee's service is deserving of compensation. Committees are a necessary and efficient function of the MDL and coordinated litigation model and attorneys cannot be expected to serve unless they are paid. However, in this limited fund of $15 million dollars, the Committee members have allocated approximately $11.4 million dollars to themselves. It is readily apparent that the committee members have allocated themselves a disproportionate share of this limited fund. This Court should review the disproportionate percentage of the FAC's self-allocation.

In *Murphy Oil II,* this Court approved the use of the allocation committee approach to recommend division of fees, but noted the following:

> The Fifth Circuit has approved the appointment of such a fee committee. However, when a fee committee is appointed, the Court must maintain close supervision of the committee and "closely scrutinize" any recommendation from the committee. *In re High Sulfur Content Gasoline Productions Liab. Litig.*, 517 F.3d 220, 235 (5th Cir.2008). This is so because there are conflicts of interest inherent in appointing a fee committee: the members of the committee suggest to the court a division of a limited fund among themselves and other firms. *In re High Sulfur Content*, 517 F.3d at 235 (citing *In re Diet Drugs Products Liab. Litig.*, 401 F3d 143, 173 (3d Cir. 2005) (Ambro, J., concurring).

582 F.Supp. 2d at 801 n.8. Indeed as the Fifth Circuit also stated in the quoted case:

> [O]ur precedents do not permit courts simply to defer to a fee allocation proposed by a select committee of attorneys, in no small part, because *235 "counsel have inherent conflicts." *In re Diet Drugs Products Liab. Litig.*, 401 F.3d 143, 173 3d Cir.2005) (Ambro, J., concurring). As Judge Ambro noted, "They make recommendations on their own fees and thus have a financial interest in the outcome. **How much deference is due the fox who recommends how to divvy up the chickens?"**

5

## IV. A PROPER ALLOCATION CANNOT BE DETERMINED BECAUSE OF THE NEED FOR PRODUCTION FOR ALL INITIAL APPLICATIONS AND SUPPLEMENTAL APPLICATIONS FOR ALL OF THE TPP CBF LAW FIRMS

The Central States Law Firms, under the Court's directive, are to include a specific dollar amount as to each law firm that "they feel they should be entitled to." Due to the TPP FAC's decision to file *Exhibit "D"* (UNDER SEAL) (*See page 6 of the TPP Fee Allocation's Committee's Recommendation.*) the Court's directive to provide an amount is difficult to satisfy. Accordingly, we hereby request the production of all of the TPP CBF law firms' complete initial applications and supplemental applications. These productions should be furnished to all participating TPP CBF law firms in order to properly review and evaluate the FAC Committee's recommended allocations. If necessary, each firm requesting the application could execute a confidentiality agreement.

Central States Law Firms only want to be treated fairly and compensated in a proper and lawful amount. This appears to be very difficult without the complete detailed applications of all TPP CBF law firms. However, the Central States Law Firms, in compliance the Court's order to state what their compensation should be, and to avoid any waiver argument, propose that any analysis should begin with a *Johnson* lodestar calculation and request the following allocation:

| Vioxx TPP | Total Fees Submitted | Total Expenses Submitted | Total Fees/Expenses Requested | Total Recommended by FAC |
|---|---|---|---|---|
| Audet & Partners | $403,762.50 | $49,264.01 | $453,026.51 | $120,000.00 |
| Ewing McMillin & Willis | $185,600.00 | $1,539.14 | $187,139.14 | $60,000.00 |
| Gary Franke & Co. | $128,297.50 | $9,522.52 | $137,820.02 | $35,000.00 |
| HDD, LLC | $696,600.00 | $105,573.54 | $802,173.54 | $375,000.00 |
| Lanier Law Firm | $157,615.00 | $0.00 | $157,615.00 | $50,000.00 |
|  | $1,571,875.00 | $165,899.21 | $1,737,774.21 | $640,000.00 |

6

## V. CONCLUSION

The Central States Law Firms hereby object to the allocation as submitted by the TPP FAC and request the following:

1) That Judge Higbee's input be sought in regard to the quality and quantity of the work performed by the Central States Law Firms.

2) Production to each of the participating TPP Law Firms of each and every law firms' initial and supplemental applications including all documentation submitted to the committee;

3) Application of a lodestar per *Johnson* as discussed above;

4) The assignment of an independent Magistrate to evaluate and analyze the recommendations and applications.

The Central States Law Firms incorporate by reference their initial and supplemental applications, timesheets and expense reports previously provided to the committee in support of their request for compensation as outlined above.

Respectfully submitted,

HOVDE DASSOW & DEETS, LLC

By: _____
Robert T. Dassow, #15145-64
201 W. 103rd Street, Suite 500
Indianapolis, IN 46290
Phone: (317) 818-3100
Fax: (317) 818-3111

W. Mark Lanier
Richard D. Meadow
The Lanier Law Firm, P.C.
6810 FM 1960 West
Houston, TX 77069
Phone: (713) 659-5200
Fax: (713) 659-2204

Susanne Scovern
Audet & Partners, LLP
221 Main Street, Suite 1460
San Francisco, CA 94105
Fax: (415) 568-2556
Phone: (415) 568-2555

Gary F. Franke
Gary F. Franke Co, L.P.A.
120 East 4th Street, Suite 1040
Cincinnati, OH 45202
Phone: (513) 564-9222
Fax: (513) 564-9990

C. David Ewing
Ewing, McMillin & Willis, PLLC
1100 Republic Building
429 W. Muhammad Ali Boulevard
Louisville, KY 40202
Phone: (502) 585-5800
Fax: (502) 585-5858