UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

|                                      |   |                      |
|--------------------------------------|---|----------------------|
|                                      | : | MDL NO. 1657         |
| IN RE: VIOXX                         | : |                      |
|     PRODUCTS LIABILITY LITIGATION | : | SECTION:  L          |
|                                      | : |                      |
|                                      | : | JUDGE FALLON         |
|                                      | : | MAG. JUDGE KNOWLES   |

**THIS DOCUMENT RELATES TO:**  *Michael Heavrin, et al. v. Merck & Co, Inc.*, 05-458, as to Janice Baum only

## ORDER AND REASONS

The Court has received Defendant Merck & Co., Inc.'s motion for summary judgment (Rec. Doc. 63919) with respect to Janice Baum.  The Court has reviewed the briefs and the applicable law and now issues this Order and Reasons.

**I.    BACKGROUND**

To put this matter in perspective, a brief review of this litigation is appropriate.  This multidistrict products liability litigation involves the prescription drug Vioxx, known generically as Rofecoxib.  Merck, a New Jersey corporation, researched, designed, manufactured, marketed and distributed Vioxx to relieve pain and inflammation resulting from osteoarthritis, rheumatoid arthritis, menstrual pain, and migraine headaches.  On May 20, 1999, the Food and Drug Administration approved Vioxx for sale in the United States.  Vioxx remained publicly available until September 30, 2004, when Merck withdrew it from the market after data from a clinical trial known as APPROVe indicated that the use of Vioxx increased the risk of cardiovascular thrombotic events such as myocardial infarction (heart attack) and ischemic stroke.  Thereafter, thousands of individual suits and numerous class actions were filed against Merck in state and federal courts throughout the country alleging various products liability, tort, fraud, and warranty

claims.  On November 9, 2007, after extensive discovery, pretrial proceedings, and a number of bellwether trials, the parties announced a $4.85 billion Master Settlement Agreement that eventually resolved over 99% of Vioxx claims.

This remaining personal injury case arises out of various alleged injuries to Plaintiff Janice Baum.  Plaintiff took Vioxx intermittently between December 1999 and September 2004.  In October 2004, she and other plaintiffs filed a complaint (No. 05-458, Rec. Doc. 1-3) in the Southern District of Indiana, which was then transferred to this MDL (No. 05-458, Rec. Doc. 1).  The complaint was amended in January 2006.  (Ex. to Def's Mot. Summ. J., Rec. Doc. 63919-3).  The amended complaint alleged that Plaintiff's use of Vioxx resulted in "major swelling of her extremities and severe blistering of her feet," caused by "narrowing of her arteries."  *Id.* at ¶ 15.  Plaintiff also alleged in her plaintiff profile form that she suffered hypertension as a result of using Vioxx.  (Ex. to Def's Mot. Summ. J, Rec. Doc. 63919-5 at 66).

In November 2007, Plaintiff underwent certain tests that suggested the possibility of her having unknowingly suffered a prior myocardial infarction ("MI"), although various other cardiologic tests apparently returned normal results.  After the announcement of the Settlement Program, Plaintiff submitted an enrollment form in which she claimed to have suffered an MI as a result of having used Vioxx.  *Id.* at 2.  The Claims Administrator rejected her claim in June 2009 after giving her an opportunity to submit additional evidence.  *Id.* at 56.  At that point, Plaintiff had the option of either appealing her claim within the Settlement Program or exiting the Settlement Program to pursue her claim in court.  She chose the latter option and signed a Future Evidence Stipulation ("FES"), in which she agreed not to introduce different evidence or allege different injuries while litigating her claim.  *Id.* at 58-61.

Plaintiff has continued to pursue her claim in court, initially represented by counsel but

now pro se. During this time, she has focused her attention on primary pulmonary hypertension ("PPH"), which she alleges is her current diagnosis. Since her claim involved an FES, Plaintiff was subject to Pretrial Order 43, which required her to submit a *Lone Pine* report. The requirements for this report were as follows:

> The case-specific expert report must include (i) an explanation of the bases of the attestation that Vioxx caused the plaintiff to suffer the injury; (ii) an identification of any other causes that were considered in formulating the opinion; (iii) a description of the specific injuries allegedly suffered; (iv) a description of the specific medical findings that support the diagnosis of those injuries; and (v) an identification of all documents relied on by the expert in forming his opinions.

(Rec. Doc. 20399 at 2). After receiving multiple extensions from this Court, Plaintiff submitted a letter from Dr. Eric Awtry of Boston Medical Center on September 1, 2010. (Rec. Doc. 51673-1). In pertinent part, this letter said:

> ***It appears that she has a mild secondary pulmonary hypertension, most likely as a result of systemic hypertension induced left ventricular diastolic dysfunction.*** In this regard, she needs more aggressive treatment of her hypertension . . . . [S]he is concerned that her symptoms may be secondary to Vioxx which she had taken . . . since at least 2003. It has been well documented that Vioxx appears to be associated with an increased risk of stroke, myocardial infarction, and potentially cardiovascular death. However, I am not aware of data that specifically relates Vioxx to the presence netiher of small vessel peripheral disease nor of pulmonary hypertension. ***It is conceivable that Vioxx can exacerbation [*sic*] underlying systemic hypertension or worsens diastolic dysfunction; however, I cannot say with certainty that this is the etiology of her disorder rather than essential unrelated hypertension.***

*Id.* at 1-2 (emphasis added).

## II. PRESENT MOTION

Merck now moves for summary judgment (Rec. Doc. 63919) with respect to Plaintiff Baum. First, Merck argues that Plaintiff's Future Evidence Stipulation limits her to claiming

3

only MI as the relevant injury, and the evidence fails to support that Plaintiff has ever suffered one. Second, Merck argues that even if Plaintiff is allowed to proceed with a claim based on PPH and/or PVD, Plaintiff has failed to produce any prima facie evidence linking Vioxx to those injuries as required by PTO 43.

In response, Plaintiff has filed a lengthy opposition and set of documents (Rec. Doc. 64025) raising a series of allegations. Much of Plaintiff's opposition is not responsive to Merck's motion,[1] but Plaintiff seems to argue that her former attorney was "hostile" to her while representing her earlier in this litigation, and that therefore she should not be bound by the FES. Furthermore, Plaintiff seems to argue that Dr. Awtry believes that Vioxx caused Plaintiff's PPH, and therefore that the requirements of PTO 43 have been satisfied.

Setting aside the issue of whether Plaintiff remains bound by the FES, the Court agrees with Defendant that Plaintiff has failed to make the required prima facie showing of a connection between Vioxx and her alleged PPH. The letter that she submitted to this Court in response to PTO 43 does allow for the "conceivable" possibility of a connection between Vioxx and Plaintiff's current condition. However, this is not enough to constitute the prima facie showing of causation required in a *Lone Pine* report. As this Court has previously stated, such a report need not meet the standards of a Daubert report; it simply must say that the plaintiff "ha[s] a condition, and the condition is caused by Vioxx"—or, put another way, that the expert "think[s] [his] patient's problem is due to Vioxx." (May 28, 2008 Tr., Rec. Doc. 63919-5 at 109, 113). The letter from Dr. Awtry does not meet this burden. Furthermore, the Court notes that Plaintiff received multiple extensions of the deadline for her *Lone Pine* report. Even with these

---

[1]Among other allegations, Plaintiff claims that her former health provider intentionally misdiagnosed her condition and concealed her medical records due to financial interests in Merck.

extensions, Plaintiff was still unable to produce evidence sufficient to make the required prima facie showing. Therefore, this Court cannot say that there remains a genuine issue of material fact as to whether Plaintiff is entitled to relief.

Accordingly, IT IS ORDERED that Defendant's motion for summary judgment is GRANTED. Plaintiff's claims are DISMISSED WITH PREJUDICE.

New Orleans, Louisiana, this 7th day of August, 2012.

　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE