IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: VIOXX PRODUCTS LIABILITY LITIGATION | * * * * * | MDL No. 1657 |
| | | SECTION L |
| | | |
| | | JUDGE ELDON E. FALLON |
| This document relates to: | * | |
| *D.C. ex. rel. Kenneth Walker v.* | * | MAGISTRATE JUDGE KNOWLES |
| *Merck & Company*, Civil Action No. 08-4148 | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION
TO PLAINTIFF'S MOTION TO ALTER OR AMEND THE ORDER/JUDGMENT**

**I.    INTRODUCTION**

Defendant presents two arguments: (1) that there is no causal connection between Walker's statutory injury and Merck's behavior, and therefore Walker cannot satisfy the second *Lujan* prong (causation), and (2) Walker received a benefit and therefore there is no economic injury and Walker cannot satisfy the first *Lujan* prong (injury). These arguments misconstrue the harm alleged by Walker and the context of the DCCPPA.

**II.   ARGUMENT**

**A. Merck's omissions are causally connected to Walker's injuries**

In order to have federal standing, a plaintiff must satisfy three requirements. First, he must suffer an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Second, there must be a "causal connection between the injury and the conduct complained of—the injury has to be 'fairly …

1

traceable to the challenged action of the defendant, and not … the result [of] the independent action of some third party not before the court.'" *Id.* at 560-561 (quoting *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 41-42 (1976). Finally, the injury must be redressable by a favorable court decision. *Id.*

Because the Court acknowledged the existence of a statutory injury under the DCCPPA, *see* [Document 63924 at 13],[1] Merck's argument against Walker's statutory injury standing depends largely on the flawed notion that the only way to show a causal nexus between Walker's statutory injury and Merck's material misrepresentations is to show that Walker received misrepresentations firsthand. [Document 64020 at 10]. The most glaring problem with this argument is that it does not consider the nexus between Merck's *omission*s (failure to reveal material information) and Walker's alleged harm (paying for a drug that he would not have paid for if not for the omissions). Walker does not only allege that Merck affirmatively misrepresented Vioxx, but also that Merck failed to state material facts about Vioxx and that such failures had a tendency to mislead. *See* Second Am. Restated Compl. [63713-2] ¶¶ 179, 183; *see also* D.C. Code 28-3904(f). Merck has continually focused on its affirmative misrepresentations, but a significant portion of Walker's complaint has always been based on Merck's scheme to *conceal* material safety information by either preventing it from entering the public sphere or removing it from the public sphere. *See*, e.g., Second Am. Restated Compl. [63713-2] ¶¶ 68-74, 81, 131-132. Both misrepresentation and omission are prohibited by the DCCPPA, and both are clearly alleged

---

[1] The fact of Walker's statutory injury cannot seriously be disputed. The DCCPPA regulates transactions between consumers and merchants engaging in a trade practice with goods and services. *Adler v. Vision Lab Telecomms. Inc*., 393 F. Supp. 2d 35, 40 (D.D.C. 2005). A statutory injury exists in the instant case because, (1) injuries resulting from omission are covered by the DCCPPA, *see* D.C. Code 28-3904(f), (2) Mr. Walker was undoubtedly a consumer of Vioxx. Second Am. Restated Compl. [63713-2] ¶¶ 149-159, and (3) Merck was the merchant seller of Vioxx, (4) Merck engaged in a trade practice by selling and marketing Vioxx, and (5) Vioxx is a good or service. Thus, under every applicable District of Columbia standard, Mr. Walker is "within the class of individuals protected by the CPPA," and therefore Merck's deprivation of Walker's statutory right to be free from improper trade practices constitutes a statutory injury. *Shaw v. Marriot Int'l, Inc.*, 605 F.3d 1039, 1042 (D.C. Cir. 2009).

by Walker.  *See* Second Am. Restated Compl. [63713-2] ¶¶ 179, 183.  Furthermore, to the extent that the Court has also ignored this basis for recovery, this constitutes a clear error.

Walker cannot be expected to claim that he was personally exposed to information that was systematically hidden from himself, his doctors, and the entire American public.  *See Affiliated Ute Citizens v. United States*, 406 U.S. 128, 153 (1970) ("Under the circumstances of this case, involving primarily a failure to disclose, positive proof of reliance is not a prerequisite to recovery."); *see also Wells v. Allstate Ins. Co.*, 210 F.R.D. 1, 9 (D.D.C. 2002) (referring to the *Affiliated Ute Citizens* standard regarding failure to disclose and finding that "the element of causation could also be proven through the same reasonable person standard applicable in the common law"); *see also S.E.C. v. Savoy Industries, Inc.*, 587 F.2d 1149, 1166 (D.C. Cir. 1977) (citations omitted) ("Proof of actual reliance is, of course, not necessary to support a finding of materiality.").  It is impossible for Walker to say he relied upon this hidden information in formulating his decision to purchase Vioxx.  Obviously information cannot be concealed to a person and revealed to him at once.  However, it is possible for Walker to state, as he does in the instant case, that the omission hid a factor that was material to his decision making process, and that if Walker or his doctors had access to the hidden information they would have opted for another drug.  *Schiff v. Eli Lilly & Co.*, No. 11-2082, 2012 U.S. App. LEXIS 16103, at *5 (8th Cir. Feb. 14, 2012) (applying the "heeding presumption" ).[2]

---

[2] In *Schiff,* the Eight Circuit reversed the summary judgment, granted in Eli Lilly's favor, because the plaintiffs' physician's testimony on warnings created an issue of fact as to whether either doctor or patient received meaningful warnings on the antidepressant Cymbalta's link with suicides.  *Schiff*, 2012 U.S. App. LEXIS 16103 at *2-3.  This was a wrongful death case: the young patient committed suicide.  *Id*. at 3.  The Eighth Circuit adopted the theory of the "heeding presumption": the presumption that a reasonable person would act according to an adequate warning.  *Id*. at 5.  The presumption's application in the pharmaceutical tort context demonstrates the logic of recognizing the concept embodied in the DCCPPA: that consumers have the right to material information so that they can make informed choices; reasonable consumers do not expose themselves to known material risks.  Here, Merck injured Walker by depriving him, and his doctors, of material safety information.  That consumers did not become tort victims does not mean they are uninjured.  The DCCPPA is not a codification of personal injury tort law; it stands on its own.

Walker clearly states that the omitted information (1) was material to his and other consumers' decision to buy Vioxx, Second Am. Restated Compl. [63713-2] ¶ 182, (2) that they would not have bought Vioxx if they had known the safety risks, *id*., and (3) that Mr. Walker's medical providers would not have allowed Mr. Walker to take Vioxx if not for Merck's omissions. *Id.* at ¶ 159. Therefore, because these allegations must be taken as true, the Court must assume that Merck's omissions misled Mr. Walker in a material fashion. Moreover, Mr. Walker also alleges that Merck is the party guilty of omitting the information, and further described, in great detail, the lengths through which Merck went to hide this information. *See*, e.g., Second Am. Restated Compl. [63713-2] ¶¶ 68-74, 81, 131-132. There can be no question that there is a causal connection between the concealer of the material safety information and the person injured by the act of concealment. *Affiliated Ute Citizens*, 406 U.S. at 153 ("This obligation to disclose and this withholding of a material fact establish the requisite element of causation in fact."). Finally, because Mr. Walker sustained a statutory injury, and because the injuries caused by Merck's omissions would be redressed by a favorable court ruling against Merck, all three *Lujan* factors have been satisfied and Mr. Walker clearly has standing for these claims. *See Lujan*, 504 U.S. at 560.

### B.  The context of the DCCPPA provides Walker with standing.

Defendant asserts that "to establish a cognizable economic injury, Plaintiff needed to plead either that Vioxx did not work for him as promised or that it caused him physical injury." [Document 64020 at 6]. This statement is inaccurate because it fails to consider Walker's legally protected interest and the harm suffered under the context of the DCCPPA.

The economic harm or injury in fact must be evaluated in the context of the alleged "legally protected interest." *See Lujan*, 504 U.S. 555 at 560 (quoting *Allen v. Wright*, 468 U.S. 737, 756 (1990)) ("[T]he plaintiff must have suffered an 'injury in fact'…an invasion of a legally protected interest which is concrete and particularized."). Walker's allegations arise out of the DCCPPA, a statute that legally protects his interest to be free from deceptive marketing practices such as affirmative misrepresentations

or material omissions. *See* D.C. Code 28-3904 (f) ("It shall be a violation of this chapter, whether or not any consumer is in fact misled, deceived or damaged thereby, for any person to: …(f) fail to state a material fact which has a tendency to mislead."). Therefore, Walker has a statutorily protected interest in remaining free from improper trade practices, *Shaw*, 605 F.3d at 1042, and money spent as a result of the prohibited trade practices should constitute a loss if the trade practice was material to the purchase. The omitted and misrepresented information was material. Walker paid money to Merck that he would not have paid to Merck had he known about the hidden safety risks. Second Am. Restated Compl. [63713-2] ¶ 182. In the context of the DCCPPA, this loss of funds constitutes an injury. *Shaw*, 605 F.3d at 1042.

As stated in Plaintiff's Memorandum in Support of the Motion to Alter or Amend [Document 63980-1], at page 2:

> It is fair to infer that if [Walker's] medical providers had known about the risks associated with Vioxx sooner, then they would have stopped prescribing the medication at that time, and prescribed something else. *Id*. at ¶¶ 159, 181, and 182. If Mr. Walker and his doctors had known of the risk, Mr. Walker would not have purchased the drug. *Id*. Mr. Walker and the class suffered "ascertainable losses in that they purchased and/or paid for, Vioxx without knowing the true and complete risks, dangers, disadvantages, and benefits of Vioxx, in general, and specifically in comparison to alternative, and significantly less expensive NSAIDs." *Id*. at ¶181. Accordingly, taking the facts in the light most favorable to Mr. Walker, he did suffer particular and ascertainable loss, the cost of purchasing Vioxx, when he would have opted for something else.

[Document 63980-1 at 2]. The statutory violations as alleged in the complaint are directly related to the harm suffered by Walker. Defendant never discusses or analyzes the relationship between Walker's "legally protected interest," the violation of the CPPA, and his related economic harm as alleged by Walker, "the cost of purchasing Vioxx, when he would have opted for something else." Indeed, Defendant never even mentions this alleged loss suffered by Walker.

To make even marginal sense, Defendant's argument must be removed from the context of the DCCPPA entirely. If Defendant addresses the particular interest protected by the DCCPPA and the harm alleged by Walker, the entire argument collapses. This is because the connection between Merck's omission and Walker's expenditure of monies is clear: The omissions and misrepresentations directly and

5

unjustly caused the purchases to take place. The DCCPPA seeks to prevent this exact situation. To avoid this discussion, Defendant borrows the alleged harm analysis from *Rivera v. Wyeth-Ayerst Laboratories*, 283 F.3d. 315 (5th Cir. 2002), and attempts to superimpose the *Rivera* claimed harm onto the Walker analysis. [Document 64020 at 6]. As indicated above, harm must be evaluated in the context of the legally protected interest. *Lujan*, 504 U.S. at 560. The plaintiff in *Rivera* did not have the statutorily protected interest like the one under DCCPPA to support his claimed economic harm. In *Rivera,* the plaintiff attempted to secure relief based upon the Texas Bus. & Com. Code Ann. §§ 17.50, 17.46 (Vernon 1998), Texas Bus. & Com. Code Ann. §2.314 (Vernon 1994), and common law unjust enrichment. *Rivera*, 283 F.3d at 317. In the context of these allegations, the Fifth Circuit rejected the claims because plaintiffs conceded "they were not among the injured." *Id.* at 320.

Recognizing the weakness of their statutory arguments, the *Rivera* plaintiffs sought to invoke a vague contract violation where they did not receive the benefit of the bargain. *Rivera,* 283 F.3d at 320. In essence, the *Rivera* plaintiffs attempted to allege a "no-injury" products liability contract claim pursuant to *Coghlan v. Wellcraft Marine Corp.,* 240 F.d 449 (5th Cir. 2001). *Id*. The *Rivera* court first noted that this claim would not survive because they did not have a contract. *Id*. Then, the court concluded "Even if we were to ignore the fact plaintiffs have no contract, the general principles they invoke do not help them." *Id*. Specifically, the court stated:

> By plaintiffs' own admission, Rivera paid for an effective pain killer, and she received just that – the benefit of her bargain. "An award of damages for breach of contract is supposed to place the injured party as nearly as possible in the position that he would have occupied had the defaulting party performed the contract." (quoting *Coghlan*, at 240 F. 3d. 453-54).

*Id*. Accordingly, *Rivera*'s conclusion that there was no economic injury, and therefore no standing, arose in the context of plaintiffs asserting a "no-injury product liability" contract claim. *Id*.

This conclusion has absolutely no bearing on the claims advanced by Walker, who is advancing a claim for injuries specifically protected by a statute, not a "no-injury products liability" contract claim. In the instant case, the Court and Defendant erroneously imported the *Rivera* court analysis of a breach of

6

contract claim and applied it to Walker, who is seeking redress under the DCCPPA. *Rivera* does not stand for the blanket proposition that economic harm must be accompanied by personal injury or that economic harm must include an allegation that the drug did not work as advertised. The *Rivera* court's analysis is limited to the causes of action pled and the facts presented in the *Rivera* matter.

Indeed, Defendant seems to recognize that economic harm must be construed in light of the legally protected interest that is advanced. To highlight the error associated with borrowing the *Rivera* contract/benefit of the bargain analysis to other situation, Walker noted that in all cases under the CPPA the consumer usually receives a benefit. [Document 63980-1 at 3]. Walker then noted that "under the trial court's analysis in the case at bar, this benefit would deprive *Shaw* consumers of the economic injury that confers standing." *Id*. In response, Merck recognizes that the analysis of economic harm must be related to the alleged legally protected right of *Shaw*. [Document 64020 at 8] ("In *Shaw*, the central allegation was that the price itself misrepresented, and the alleged economic injury flowed directly from the misrepresentation because the plaintiffs paid the higher price."). Then, in attempting to analyze the facts of this case, Merck recites the means by which Walker alleges Merck violated his statutorily protected interest in being free from deceptive marketing practices (concealing, omitting, suppressing, and obfuscating important and material information regarding the risks, dangers and defects of Vioxx), but does not mention or state the resultant harm alleged by Walker. [Document 63980-1 at 2] ("If Mr. Walker and his doctors had known of the risk, Mr. Walker would not have purchased the drug. *Id*. Mr. Walker and the class suffered 'ascertainable losses in that they purchased and/or paid for, Vioxx without knowing the true and complete risks, dangers, disadvantages, and benefits of Vioxx, in general, and specifically in comparison to alternative, and significantly less expensive NSAIDs.' *Id*. at ¶181."). Thus, Defendant does not actually address Walker's alleged harm. Defendant simply states that Walker *did not* allege personal injury or lack of benefit and claims that this runs afoul of the precise holding in *Rivera*. [Document 64020 at 8] However, as already, discussed above this is not the holding in *Rivera*.

7

Defendant also claims that *Williams v. Purdue Pharma Co.*, 297 F. Supp. 2d. 171 (D.D.C. 2004) supports the conclusion of the Court. [Document 64020 at 6] ("Similarly, *Williams* held that there was no cognizable economic injury where the plaintiffs 'did not allege that the 'drug failed to provide them effective pain relief or that they suffered any adverse consequences.'"). But, again as held by *Lujan*, economic harm must be evaluated in the context of the legally protected right advanced. *See Lujan*, 504 U.S. 555 at 560 ("[T]he plaintiff must have suffered an 'injury in fact'…an invasion of a legally protected interest which is concrete and particularized."). Indeed, the *Williams* court specifically recognized this when it stated, "As the parties' arguments recognize, this case turns on the nature of the injury or damages *claimed by plaintiffs*." *Williams,* 297 F. Supp. 2d at 176 (emphasis added). The critical difference between the *Williams* case and the case at bar is that in *Williams*, the plaintiffs actually alleged a "benefit of the bargain theory of injury." *Id*. Having made this allegation, the court denied standing when the plaintiffs failed to allege that "Oxycontin failed to provide them effective pain relief or that they suffered any adverse consequences from their use of Oxycontin." *Id*. Accordingly, the court denied standing, but the analysis was tied to the benefit of the bargain claim advanced by the *Williams* plaintiffs. Conversely, Walker's claim is not premised on the benefit of the bargain, but on the statutory failure of Merck to provide material information to consumers. Moreover, as stated in the initial Memorandum In Support of the Motion to Alter or Amend the Order/Judgment [Document 63980-1], the *Williams*' court's second holding that a "purely legal right without harm to the consumer" must be addressed administratively and not through the courts would not withstand the analysis of subsequent courts in *Shaw*, supra, and *Grayson*. [Document 63980-1 at 6-7].

Finally, the causal connection between Merck's omissions and misrepresentations and the economic harm suffered by Walker is clear: the purchases would have never taken place if not for the omissions. Therefore Merck's omissions were the direct cause of Walker's loss of money spent on Vioxx. Likewise, because the harm suffered by Walker as a result of Merck's omissions can be traced directly to Merck, the injury would be redressed by a favorable court decision. The DCCPPA, by its very

8

nature, establishes and protects the right of DC consumers to complete material information (including adequate and meaningful warnings) on the products they purchase. Withholding, misrepresenting, concealing, or distorting such information infringes this right and inflicts an injury in fact. Therefore, with his economic injuries established, Walker's complaint satisfies all three *Lujan* prongs, and he has standing to proceed on these grounds as well. *See Lujan*, 504 U.S. at 560.

### III.  CONCLUSION

For the foregoing reasons, Plaintiff Kenneth Walker respectfully asks that the Court grant his Motion to Alter or Amend Judgment.

Respectfully submitted,

DATED:  August 7, 2012          /s/ H. Vincent McKnight_____

H. Vincent McKnight
vmcknight@mcknightandkennedy.com
MCKNIGHT & KENNEDY, LLC
8601 Georgia Avenue, Suite 1010
Silver Spring, MD 20910
(301) 565-5281

Elizabeth J. Cabraser
ecabraser@lchb.com
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone:  (415) 956-1000
Facsimile:   (415) 956-1008

Dawn M. Barrios (#2821)
barrios@bkc-law.com
BARRIOS KINGSDORF & CASTEIX, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Telephone:  (504) 524-3300
Facsimile:  (504) 524-3313

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail, upon Liaison Counsel Ann Oldfather by e-mail, and upon all parties by electronically uploading same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 7th day of August 2012.

/s/ Dawn M. Barrios
Dawn M. Barrios