**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

In Re:  VIOXX®PRODUCTS LIABILITY          MDL 1657
LITIGATION                                SECTION L
                                          JUDGE FALLON
                                          MAG. JUDGE KNOWLES


THIS DOCUMENT RELATES TO:                 <u>Case Number:  2:06cv10987</u>


**Sandra Elliott**                        PLAINTIFF

**v.**

**Merck & Co., Inc.**                     DEFENDANTS

<u>**PLAINTIFF SANDRA ELLIOTT'S SUPPLEMENTAL MEMORANDUM IN
OPPOSITION TO MERCK & CO., INC.'S
MOTION FOR SUMMARY JUDGMENT**</u>

* * * * * * *

Defendant Merck & Co., Inc. ("Merck") filed a Motion for Summary Judgment in
the case of Sandra Elliott [Rec. Doc. 63959].  Ms. Elliott moved for an extension in
which to respond to the Motion and to re-open her bankruptcy proceedings [Rec. Doc.
64004].  Merck opposed any extension [Rec. Doc. 64007].  The Court invited these
filings to address the import of *In re Superior Crewboats, Inc.*, 374 F.3d 330 (5th Cir.
2004) on Merck's Motion.  In order to properly discuss *Superior Crewboats* as it applies
to Sandra Elliott, it is necessary to briefly review her bankruptcy filings and procedural
history before this Court.

## I.     <u>History of Bankruptcy Filings</u>

On June 30, 2009, Plaintiff Sandra Elliott signed a Declaration Concerning Debtor's
Schedules. On the same day Sandra also completed a Statement of Financial Affairs.

Relying on the advice of counsel, she did not add her soon-to-be-dismissed Vioxx claims to her bankruptcy schedules.  *See* Affidavit of Sandra Elliott, attached as Exhibit A  On July 7, 2009 Sandra next filed a Voluntary Petition for bankruptcy under Chapter 7 of the Bankruptcy Code in the Eastern District of California. The Bankruptcy Trustee issued a Report of No Distribution on August 12, 2009. Sandra's debts were subsequently discharged on October 19, 2009, with the Order of Final Decree entered by the court on October 23, 2009.  At no point did the trustee abandon any claims.

## II.      History of Vioxx Claims

On September 26, 2006, Sandra Elliott filed this lawsuit against Merck in a California state court alleging personal injuries stemming from her use of Vioxx. Sandra's complaint stated that her use of Vioxx from October 2002 until May 2004 caused her to experience congestive heart failure on May 12, 2003 (Sandra's injury will be shown to be related to Vioxx-induced hypertension). The lawsuit was subsequently removed to the United States District Court for the Eastern District of California and then transferred into this MDL.

Sandra enrolled in the Vioxx Resolution Program. The Program's Gate Committee issued its Notice of Ineligibility on July 6, 2009.  In accordance with the terms of the Master Settlement Agreement, Sandra executed a Future Evidence Stipulation so that she might resume her lawsuit in court. The original Future Evidence Stipulation was received by Brown Greer on August 7, 2009 but rejected on August 20, 2009.  On August 22, 2009, Sandra submitted a corrected Future Evidence Stipulation and it was received by Brown Greer on August 24, 2009. On October 30, 2009, the Court

granted Merck's Third *Lone Pine* Motion and dismissed Sandra's case with prejudice for

failure to comply with PTO 43.

Sandra retained new counsel and on April 22, 2010, she filed a motion to set aside

the dismissal. Her case was reinstated by this Court on July 8, 2010.

### III.    A Motion for Summary Judgment is Not Appropriate Because a Genuine Issue of Material Fact Exists.

When a defendant moves for summary judgment on the basis of an affirmative

defense, such as judicial estoppel, the defendant bears the burden of establishing the

affirmative defense.  *See Crescent Towing & Salvage Co. v. M/V Anax*, 40 F.3d 741, 744

(5th Cir. 1994).  As stated by the Sixth Circuit, "Judicial estoppel . . . should be applied

with caution to 'avoid impinging on the truth-seeking function of the court, because the

doctrine precludes a contradictory position without examining the truth of either

statement.'" *Eubanks v. CBSK Financial Group, Inc.* 385 F.3d 894, 897 (6th Cir. 2008).

The doctrine is generally applied where "intentional self-contradiction is being used as a

means of obtaining unfair advantage in a forum provided for suitors seeking justice."  *In*

*re Coastal Plains, Inc.*, 179 F.3d 197, 206 (5th Cir. 1999).

By looking only at the face of Sandra's bankruptcy petition and the omission of

her Vioxx claims from her bankruptcy schedules, Merck attempts to collapse any judicial

estoppel analysis – including the three-prong tests outlined by the Supreme Court and

Fifth Circuit[1] – into one step.  This improperly shifts the burden from the defendant to the

plaintiff.  If the Court were to conclude that a nondisclosure was *ipso facto* a deliberate or

intentional manipulation of the courts, the debtor would always be strictly liable for the

---

[1] *See, New Hampshire v. Maine*, *In re Coastal Plains,* and *In re Superior Crewboats*,
respectively, both *infra*.

misfilings.   But, as stated by the Fifth Circuit, ". . . intent to mislead or deceive [can] not be inferred from the mere fact of nondisclosure." *In re Coastal Plains* at 211 (emphasis added).

Moreover, it is well established that credibility determinations, weighing of evidence, and drawing of inferences from the facts are jury functions, not those of a judge, when ruling on summary judgment. *Anderson v. Liberty Lobby, Inc.* ,477 U.S. 242, 255 (1986); *Provident Life and Acc. Ins. Co. v. Goel*, 274 F.3d. 984 (5th Cir. 2001); F.R.C.P. 56(c).  All justifiable inferences are to be drawn in favor of the non-movant. *Anderson v. Liberty Lobby* 477 U.S. at 255.  The court should not determine the credibility of the plaintiff's statements, nor overlook fair inferences from the evidence, on summary judgment.

Here, a factual dispute exists.  In her affidavit, Sandra affirmed that she did not add her Vioxx claims to her bankruptcy schedules because she believed that her Vioxx claims would soon be (and were) dismissed.  *See* Affidavit of Sandra Elliott.  Merck alleges that Sandra was playing hide-and-seek with her claims with the intent to keep any proceeds for herself only.  If that is true, it is only because Merck says so.  A genuine dispute exists regarding Sandra's omission, and accordingly summary judgment is improper.  Even setting aside any credibility determinations, the evidence of Sandra's alleged motive is susceptible to more than one inference, precluding summary judgment. Such presumptive inferences have been discouraged:

> One should not infer guilt from the mere presence of motive. And such
> mechanical reasoning has no place with the discretionary application of an
> equitable doctrine. In any event, such inferred motive in this case is
> militated against by the fact that it will be plaintiff's creditors who will
> receive the benefit of the proceeds should plaintiff prevail in his . . . claim.
> It has been correctly noted that judicial estoppel is an equitable doctrine

and it "is not equitable to employ it to injure creditors . . . ." [citation omitted]. And the Eighth Circuit has wisely observed that "[a]lthough it may generally be reasonable to assume that a debtor who fails to disclose a substantial asset in bankruptcy proceedings gains an advantage, the specific facts of a case may weigh against such in inference." (citation omitted). Here, the specific facts weigh against such inference being drawn in a summary-judgment proceeding. Here, there is a genuine dispute about whether the plaintiff made a good-faith mistake.

*Loth v. Union Pacific R. Co.*, 354 S.W.3d 635, 643 (Mo.App. E.D. 2011).

Here, too, there is a genuine dispute about whether Sandra made a good faith mistake. The facts – and the clear inference to be drawn there from – certainly suggest that Sandra's nondisclosure was inadvertent. In any event, the law states that such a determination is not appropriate for summary judgment.

## IV.    **Fifth Circuit Precedent Does Not Require Dismissal of Plaintiff's Vioxx Claims.**

### A. *Coastal Plains* and *Superior Crewboats*

To properly understand how the Fifth Circuit applies judicial estoppel in *Superior Crewboats*, it is necessary to first examine *Coastal Plains*, *supra*, the case that fleshes out inadvertent nondisclosure in the bankruptcy context. In *Coastal Plains*, the debtor filed for Chapter 11 bankruptcy, and a week after filing its petition, initiated an adversary proceedings against its largest unsecured creditor. *Coastal Plains* at 202. Although the debtor believed it had claims of up to $10 million against the defendant, it did not disclose these on the bankruptcy schedules or statement of financial affairs. *Id*. at 203. Shortly after suit was filed, the bankruptcy court found that the defendant had violated the automatic stay by refusing to transfer inventory back to the debtor, and ordered that inventory be returned to the debtor. *Id*.

The plot thickened when a secured lender moved for relief from the automatic stay so that it could foreclose on the debtor's assets, asserting that the debtor owed more than $8 million and that reorganization was not possible. *Id.*   The debtor was afforded numerous opportunities to apprise the creditors of the suit – the claim against the defendant was not mentioned in an asset list filed by the debtor and secured lender to lift the automatic stay, nor in any of the foreclosure notices or advertisements, nor at the foreclosure auction. *Id.*  Due to the omission of the lawsuit against the defendant, it appeared that a $5 million-plus shortfall existed between the value of the debtor's assets and its debt to the secured lender. *Id.*  The secured lender foreclosed on the debtor's assets. *Id.*  Conveniently, the secured lender was the highest bidder at auction, and purchased the debtor's intangible assets, which were not described as including the claims against the defendant. *Id.*

The day after the auction, the secured lender entered into an agreement to sell the assets purchased at auction to a new company, which was *formed by the debtor's former CEO*. *Id.*  The new company acquired the remaining assets of the debtor corporation for $1.24 million. *Id.*  Afterwards, the Chapter 11 reorganization was converted to a Chapter 7 liquidation, the trustee filed a no-asset report, and closed the bankruptcy. *Id.*  The debtor CEO/new company CEO then filed suit on the claim which had not been disclosed in the schedules. *Id.* at 204.  The debtor CEO/new company CEO recovered $3.6 million on the undisclosed claim. *Id.*  The Fifth Circuit reversed on appeal, holding that acceptance of the argument that the claims were inadvertently left off the schedules "would encourage bankruptcy debtors to conceal claims, write off debts, and then sue on undisclosed claims and possibly recover windfalls." *Id*. at 213.

The court stated that judicial estoppel is generally applied where "intentional self-contradiction is being used as a means of obtaining unfair advantage in a forum provided for suitors seeking justice." *Id*. at 206. The court also stated that many courts imposed the additional requirement that the party to be estopped "must have acted intentionally, *not* inadvertently." *Id*. Borrowing from the Ninth Circuit, the court stated, "[i]f incompatible positions are based not on chicanery, but only on inadvertence or mistake, judicial estoppel does not apply.[2] The Court also cited to other federal circuits that applied a similar interpretation of inadvertence or motive.[3]

The court further expounded on exactly what constitutes an inadvertent nondisclosure. Borrowing on principles from the Third Circuit, the court found that a debtor's nondisclosure is inadvertent "only when, in general, the debtor either lacks knowledge of the undisclosed claims *or* has no motive their concealment." *In re Coastal Plains* at 210. The court looked at two different cases in drawing this conclusion. The

---

[2] *Johnson v. Oregon Dept. of Human Resources,* 141 F.3d 1361, 1369 (9th Cir.1998).

[3] *Folio v. City of Clarksburg, W.V.,* 134 F.3d 1211, 1217-18; *McNemar v.Disney Store, Inc.,* 91 F.3d 610, 618 (3d Cir.1996) (internal quotation marks and citation omitted) (part of threshold inquiry for application of judicial estoppel is whether party to be estopped "assert[ed] either or both of the inconsistent positions in bad faith-*i.e.,* with intent to play fast and loose with the court"); *Ryan Operations G.P. v.Santiam-Midwest Lumber Co.,* 81 F.3d 355, 358, 362 (3d Cir.1996) (internal quotation marks and citation omitted) (judicial estoppel doctrine "not intended to eliminate all inconsistencies, however slight or inadvertent; rather, it is designed to prevent litigants from playing fast and loose with the courts"; doctrine "does not apply when the prior position was taken because of a good faith mistake rather than as part of a scheme to mislead the court"; inconsistency "must be attributable to intentional wrongdoing"); *Matter of Cassidy,* 892 F.2d at 642 (judicial estoppel should not be applied "where it would work an injustice, such as where the former position was the product of inadvertence or mistake"); *Johnson Serv. Co. v. Transamerica Ins. Co.,* 485 F.2d 164, 175 (5th Cir.1973) (applying Texas law on judicial estoppel; "the rule looks toward cold manipulation and not an unthinking or confused blunder").

first case[4] held that a Chapter 11 debtor had knowledge of its claim against a bank "because the gravamen of its case against the bank was that the bank's actions were responsible for forcing the debtor into bankruptcy," and that the debtor had a clear motive to conceal its claim from the bank because, had the bank known the debtor would seek restitution of the amount paid to the bank, the bank may have voted against approval of the Chapter 11 reorganization plan.  The court held that an "intent to mislead or deceive could not be inferred from the mere fact of nondisclosure." *In re Coastal Plains* at 211. The second case[5] held that a Chapter 11 debtor's earlier nondisclosure would not judicially estop the debtor from pursing the claims outside of bankruptcy, because there was no evidence that the debtor acted in bad faith. *Id*.  The court explained bad faith as "statements or conduct of the debtor evincing a reckless disregard for the truth." *Id*. at 212.

Intentional bad faith, a reckless disregard for the truth, trickery, clear motive – these are the scenarios where judicial estoppel should apply and preclude a debtor via the doctrine of judicial admission from pursuing claims not disclosed in bankruptcy.

*Superior Crewboats* restated the *Coastal Plains* rule: 1) the position of the party to be estopped is clearly inconsistent with its previous one; 2) a court accepted that previous position; and 3) the nondisclosure was not inadvertent. *In re Superior Crewboats, Inc.*, 374 F.3d 330, 335 (5th Cir. 2004).  In *Superior Crewboats*, the debtors filed for Chapter 13 bankruptcy, and while the bankruptcy was still pending, also filed a personal injury lawsuit with respect to a boating injury. *Id.* at 333.  The debtors did not

---

[4] *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414 (3d Cir 1988).

[5] *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.,* 81 F.3d 355 (3d Cir.1996).

attempt to serve the defendant until six months later, nor did the debtors attempt to amend the bankruptcy filings before discharge to reflect the personal injury lawsuit. *Id*. As a partial result of this omission, the debtors were able to convert the Chapter 13 to a Chapter 7 plan and obtain a complete "no asset" discharge. *Id*. The *Superior Crewboats* debtors took further steps to deceive their creditors – at a §341 creditors' meeting, the debtor-wife disclosed the claim but wrongly reported to the creditors that the suit was time barred, and did not disclose that they had requested service of process in the state court lawsuit approximately one month earlier. *Id*. As a result, the trustee abandoned the claims which the debtors continued to pursue. *Id*. The debtor later sought to file amended disclosures disclosing the claim against the defendant, but only after the three year limitations period in the bankruptcy matter had run. *Id*.

Not surprisingly, the Fifth Circuit found that the debtor plaintiffs were bad actors – they filed a personal injury suit seeking a $2.5 million recovery, they made no attempt to serve the defendant until six months after filing suit, they converted their Chapter 13 to a Chapter 7 and received a full discharge, and they misled the creditors and the trustee with the falsely representation that the suit was time barred. *See id. a*t 333-36. Relying on the rule from *Coastal Plains*, the court found that failure to disclose the personal injury claim on the bankruptcy schedules was not inadvertent because the debtor did not "[lack] knowledge of the undisclosed claim," nor did they have "no motive for concealment." *Id*. at 335. The court held that the debtor would "reap a windfall" if allowed to amend the bankruptcy schedules and proceed with the claims. *Id*. at 336.

B.  Sandra Elliott is no *Superior Crewboats*.

Sandra Elliott's facts are meaningfully different from those in *Superior Crewboats* and *Coastal Plains* which were held sufficient to impose judicial estoppel. First, Sandra had a reasonable explanation for her conduct.  Second, Sandra filed a voluntary Chapter 7; nondisclosure of the Vioxx claim did not enable Sandra to convert a Chapter 11 or 13 to a Chapter 7 bankruptcy and receive a total discharge, nor could Sandra potentially use a reorganization plan to cheat her creditors.  Third, the trustee has not abandoned the claim.  Fourth, dismissal of Sandra's claim injures her creditors and provides a windfall to Merck.  Fifth, the Court well knows that these cases are not sitting on the cusp of "guaranteed" multimillion dollar recoveries.

Put simply, Sandra does not come close to the blatant, intentional, reckless, bad behavior of the *Coastal Plains* and *Superior Crewboats* debtors.  Unlike those debtors, who had full knowledge of a viable claim and played "fast and loose" with the courts by filing for bankruptcy and immediately filing the lawsuit during the pendency of the bankruptcy, and then attempting to hide it, Sandra filed her bankruptcy petition at what she believed was the end of her Vioxx claims, nearly three years *after* she filed her claims against Merck and *after* her Vioxx claim was held ineligible.  In order to determine inadvertence, the Court looks at the debtor's motive in concealing their claim. A debtor's non-disclosure is inadvertent "only when, in general, the debtor either lacks knowledge *or* has no motive for their concealment." *Coastal Plains,* 179 F.3d at 210 (emphasis in original).  Sandra had no motive for concealment because she believed that her claim against Merck was ineligible.  Moreover, she had no motive in fact because her creditors will reap the benefit of any recovery long before she does.  *See* discussion at Section

10

IV(C), infra.  Further, Sandra lacked knowledge that she even had a viable claim, and

during the conclusion of her bankruptcy, she had no way of knowing that her claim

would be reinstated a year later.

Sandra's omission was inadvertent pursuant to the *Superior Crewboats* standard.

It was clearly the intent of the *Superior Crewboats'* court to punish bad actors who hide

their claims from their creditors.  *See id.* at 336. Sandra simply had no motive for

concealing her claim because she believed that her claim was ineligible, and indeed it

was dismissed.  Thus, the omission was inadvertent, and Merck should not benefit from

dismissal based on judicial estoppel.

C.  The creditors' rights and trustee's obligations must be considered.

Any judicial estoppel discussion that omits consideration of the creditors' or

trustee's rights from the calculus automatically fails.  Pre-bankruptcy claims are part of

the debtor's estate; this Vioxx claim therefore belongs to the trustee, for the benefit of

Sandra's creditors.  *See* 11 U.S.C. §541(a)(1).  When and if Sandra's bankruptcy estate is

reopened, the trustee will be substituted as the party plaintiff in the action, and any

recovery will be first distributed to Sandra's creditors.  Using judicial estoppel to bar this

claim hurts Sandra's creditors – the very parties whom Merck says *she* is trying to

hoodwink – more than anyone.  Indeed, Sandra is obligated to pursue her Vioxx claims

on her creditors' behalf.  Moreover, there is a logical flaw in asserting that a debtor would

conceal assets that did not belong to her simply to keep her creditors in the dark, when

the end result is that her creditors will gain the recovery if her claims are allowed to

proceed. Application of judicial estoppel to Sandra's case will guarantee that her

creditors will never receive a penny from any claim Sandra has against Merck.

The Fifth Circuit has distinguished *Superior Crewboats* in such circumstances.  In *Kane v. National Union Fire Ins. Co,* 535 F.3d 380 (5th Cir. 2008), the Fifth Circuit found that by allowing the bankruptcy petition to be re-opened, a trustee took control of the debtor's claim and the creditors benefitted from the settlement.  *Id.* at 384.  The debtors only stood to benefit from any excess remaining after the debts were paid.  *Id.* at 387. The court noted that the only way the debtor's creditors would be harmed is if judicial estoppel were applied to bar the trustee from pursuing a claim against the defendants.  *Id.  See, generally, Reed v. City of Arlington*, 650 F.3d 571 (5th Cir. 2011) and *Love v. Tyson Foods Inc.*, 677 F.3d 258 (5th Cir. 2012).  Other federal circuits also disfavor the unjust result to creditors in using judicial estoppel to bar the debtor's claims and have declined to follow *Superior Crewboats.  See, Biesek v. Soo Line R. Co.*, 440 F.3d 410, 413, (7th Cir. 2006) ("Judges understandably favor rules that encourage full disclosure in bankruptcy.  Yet pursuing that end by applying judicial estoppel to debtors' self-contradiction would have adverse effects on third parties: the creditors.") (Easterbrook, J.); *Parker v. Wendy's Int'l, Inc.*, 365 F.3d 1268 (11th Cir. 2004) (holding that bankruptcy court abused its discretion by applying judicial estoppel to prevent debtor from reopening bankruptcy claim to list previously undisclosed tort claim); *In re Kreutzer*, 344 B.R. 634 (N.D. Okla. 2006) (holding that debtor who failed to list pending medical malpractice claim against physician as an asset of the bankruptcy estate may reopen their Chapter 7 claim); *Aaron v. U.S*, 65 Fed. Cl. 29, 32 (Fed. Cl. 2005) (holding that judicial estoppel is not applicable to estop plaintiff from substituting bankruptcy trustee as a real party in interest where the relatively small potential award provides a different context than the "windfall" of the $2.5 million in *Superior Crewboats*, and

12

where granting estoppel would "penalize the trustee, and thereby the creditors, by disallowing substitution.")  The precedent of *Superior Crewboats* does not apply on these facts..

### V.       Ninth Circuit Precedent Should Apply to Plaintiff's Vioxx Claims.

A.  Ninth Circuit Law Controls

Sandra filed her Vioxx complaint in California state court, and it was removed to the United States District Court for the Eastern District of California and then transferred into the Vioxx Multidistrict Litigation.  Sandra also filed her Chapter 7 bankruptcy proceeding in the Eastern District of California.

Because Sandra's bankruptcy proceedings were governed by Ninth Circuit law, and because her case (if it proceeds) will ultimately be remanded back to the Ninth Circuit after the pretrial phase has ended, it is only appropriate that Ninth Circuit bankruptcy law should control on the issue of judicial estoppel.[6]

B.  The Ninth Circuit Judicial Estoppel Rule from *Hamilton*

In *Hamilton v. State Farm Fire & Cas. Co.,* 270 F.3d 778 (9th Cir. 2001), the Ninth Circuit adopted the Supreme Court's test for judicial estoppel[7] and stated that the three enumerated factors *may* be considered when applying judicial estoppel to bankruptcy

---

[6]   *In re: Ford Motor Co. v. Bridgestone/Firestone North American Tire LLC*, 591 F.3d 406 (9th Cir. 2009)

[7]   The Supreme Court fashioned a three pronged test for applying judicial estoppel: 1) a party's later position must be "clearly inconsistent" with its earlier position; 2) whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create "the perception that either the first or second court was misled;" and 3) whether the party seeking to assert an inconsistent position would derive an unfair advantage or place an unfair detriment on the opposing party if not estopped.  *New Hampshire v. Maine*, 532 U.S. 742 (2001).

plaintiffs.  Both the Supreme Court and the Ninth Circuit agree that these rules are not "inflexible" and that other criteria be considered.  *Id.* at 782-3, quoting *New Hampshire v. Maine.* ("In enumerating these factors, we do not establish inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel".)  The pertinent factor here is the third one:  whether the party seeking to assert an inconsistent position would derive an unfair advantage or place an unfair detriment on the opposing party if not estopped.  Sandra clearly prevails under that test.

        D.   Judicial Estoppel Should Not Apply to Sandra's Vioxx Claims

Just as judicial estoppel is not appropriate under Fifth Circuit law, it is also barred under Ninth Circuit law.  Sandra would not derive an unfair advantage from continuing her Vioxx claims – if anything, her creditors would benefit from any recovery, and she may recover nothing at all.  No unfair detriment is imposed upon Defendant Merck, who would still be held accountable only for Sandra's injuries proven to be due to Vioxx, just as it would had this lawsuit been listed on Sandra's asset schedule by her bankruptcy lawyer.  Accordingly, judicial estoppel does not apply to bar and Sandra's Vioxx claims, and they should be allowed to continue.

## CONCLUSION

Sandra Elliott made a good-faith mistake.  Merck has **_not_** proven she did not act inadvertently, nor has it proven she had **_any_** motive for concealing her claims from her creditors.  Merck advocates an position not supported by the facts: "Ms. Elliott will obtain a discharge from her creditors so that she might keep any proceeds from her undisclosed claims against Merck for herself."  Doc. 63959-2, p. 10.  Defendant Merck certainly knows that by reopening her bankruptcy petition, the creditors will take the

proceeds and Sandra may take nothing.  Moreover, there is a genuine question of fact

about Sandra's motives that is sufficient to preclude summary judgment.  Application of

judicial estoppel under these facts is neither fair nor equitable, but instead assures the

harsh result of punishment to Sandra (and her creditors) and a windfall to Merck.

Merck attempts to benefit from an equitable doctrine by seeking a completely inequitable

result.  Dismissing Sandra's claim, which she has tried so hard to present, over such a

minor procedural deficiency is a harsh conclusion that injures Sandra and her creditors

while resulting in a windfall to the defendant.


Respectfully submitted,

s/ Ann B. Oldfather
Ann B. Oldfather
KBA Bar #52553
OLDFATHER LAW FIRM
1330 S. Third Street
Louisville, KY   40208
502.637.7200
502.637.3999
aoldfather@oldfather.com


### CERTIFICATE OF SERVICE

I hereby certify that Plaintiff Sandra Elliott's Supplemental Memorandum In Opposition To Defendant Merck & Co., Inc.'s Motion for Summary Judgment has been served upon Liaison Counsels, Phillip A. Wittmann and Russ Herman, by U.S. mail and email and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8(C), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 31st day of August, 2012.

s/ Ann B. Oldfather
Ann B. Oldfather