IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: VIOXX<br>    Products Liability Litigation | *<br>*<br>* |
| This Document Relates to: | *   MDL No. 1657<br>* |
|    State of Utah, | *   SECTION L<br>* |
|                      Plaintiff, | *   JUDGE ELDON E. FALLON<br>* |
|     versus | *   MAGISTRATE JUDGE<br>*   KNOWLES |
|    Merck Sharp & Dohme Corp., | *<br>* |
|                    Defendant. | *<br>* |
|    Case No. 2:06-cv-09336 | *<br>* |
| * * * * * * * * * * * * * * * * * * * * * * | * |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL**

      Defendant Merck Sharp & Dohme Corp. ("Merck") respectfully moves the Court to compel Plaintiff, the State of Utah, to respond to Merck's Second Set of Interrogatories and Requests for Production.

      In its discovery requests, Merck sought information regarding individuals who Plaintiff contends were injured by Vioxx and for whose medical treatment the State is seeking reimbursement. Merck also sought information regarding alleged representations Merck made to Plaintiff and to doctors and patients in Utah. Plaintiff has refused to respond to either set of requests on relevance grounds. Plaintiff's objections are frivolous.

      First, Merck's request for information regarding individuals allegedly injured by Vioxx is proper. Plaintiff seeks to recover the money it spent treating Medicaid beneficiaries for injuries allegedly caused by Vioxx. Information about those beneficiaries is highly relevant – indeed

1103490v1

critical – to the State's claims.  After all, in order to prevail on its claims, Plaintiff must demonstrate that these individuals' physical injuries were in fact caused by Vioxx.  While Plaintiff has expressed its intent to prove its claims with aggregate evidence, such a proposal is foreclosed by binding Supreme Court and Fifth Circuit precedent holding that sampling and aggregate proof are impermissible in quasi- and structural class actions.  Thus, the Court should require Plaintiff to provide Merck with specific information regarding the State's payments for Vioxx-related injuries.

Second, Merck's request for information regarding representations made by Merck to Plaintiff and to Utah doctors and patients is likewise proper.  Plaintiff's amended complaint expressly asserts negligence liability based on Merck's alleged "representations as to the efficacy and safety of Vioxx" and claims that Merck breached its duty to "the general public including the Utah Medicaid program," by virtue of its "presentation and sales of Vioxx."  (Am. Compl. ¶¶ 242-43.)  Inexplicably, Plaintiff contends – notwithstanding these allegations – that Merck's request for information regarding Vioxx representations to the State and its citizens is not relevant.  This contention is frivolous; after all, it is hard to imagine more relevant discovery in a case that turns on alleged representations than the identity of the representations themselves.

For these reasons, discussed further below, the Court should grant Merck's motion to compel responses to Merck's Second Set of Interrogatories and Requests for Production.

## BACKGROUND

Plaintiff, the State of Utah, filed its original complaint on April 28, 2006, seeking to recover economic losses allegedly incurred by the State's Medicaid program in paying for Vioxx.  (*See* Compl. ¶¶ 18-20.)  According to Plaintiff, Merck "knowingly misrepresented to the State, as well as to physicians and the general public that Vioxx was safe and efficacious,"

causing the State to purchase Vioxx for Utah Medicaid recipients.  (*Id.* ¶ 18.)  Based on these allegations, Plaintiff initially asserted eight causes of action:  (1) strict products liability – failure to warn; (2) strict products liability – design defect; (3) fraud/negligent misrepresentation; (4) negligence; (5) breach of express warranty; (6) breach of implied warranty; (7) negligence per se; and (8) violation of Utah's False Claims Act ("UFCA").  (*See id.* ¶¶ 21-69.)

Plaintiff filed an amended complaint on June 13, 2012, jettisoning most of its claims, but retaining its claims under the UFCA and for negligence.  (*See* First Am. Compl. ¶¶ 224-244.)  Plaintiff seeks to recover the "[f]ull and complete restitution of all damages suffered by the State," which "would include all consequential damages (subsequent care for Utah Medicaid recipients)."  (*Id.* ¶¶ 231(d); 235(d); 238(d); 244; Prayer for Relief.)

On June 6, 2012, Merck served its First Set of Requests for Admission, Second Set of Interrogatories and Second Set of Requests for Production on Plaintiff.  (*See* First Set of Req. for Admiss.; Second Set of Interrogs.; Second Set of Req. for Prod. (attached as Ex. 1).)  Plaintiff served its responses to Merck's Second Set of Interrogatories and Second Set of Requests for Production on July 9 (*see* Resp. to Second Set of Interrogs. at 8; Resp. to Second Set of Req. for Prod. at 1, 2 (attached as Ex. 2)), and its Supplemental Answers to Defendant's Second Set of Interrogatories to Plaintiff on August 7, 2012 (*see* Supp. Resp. To Second Set Of Interrogs. (attached as Ex. 3)).

This motion addresses two groupings of requests for production and interrogatories.  The first grouping includes one interrogatory and several requests that seek information regarding individuals who Plaintiff claims were physically injured by Vioxx and for whom Plaintiff paid medical expenses; the second includes interrogatories that seek information regarding the representations allegedly made by Merck to Plaintiff and doctors and patients in the State.

3

1103490v1

A.     **Discovery Related To Alleged Injuries**

Plaintiff first refuses to produce any information related to the persons it claims were injured by Vioxx and for whom it claims to have paid for medical expenses. Specifically, in Interrogatory Number 8, Merck asked Plaintiff to:

> [i]dentify all individuals allegedly injured by Vioxx for whom you claim the Government Health Program provided reimbursement, the nature of the individual's injury, the treatment for the individual's alleged injury, the individual's treating and prescribing physicians, and the date of the alleged injury.

(Second Set of Interrogs. No. 8.) Relatedly, Request for Production Number 1 requested:

> For each individual and injury identified in response to Interrogatory Number 8 . . . produce all documents relating to the individual's Vioxx usage, the individual's treating and prescribing physicians, alleged resulting injury, treatment for the alleged injury, and the amount Medicaid allegedly reimbursed for that injury.

(Second Set of Req. for Prod. No. 1.)

Finally, Request for Production Number 2 sought the following:

> For each individual and injury identified in response to Interrogatory Number 8 . . . produce all documents identifying the individual's name and address.

(Second Set of Req. for Prod. No. 2.)

Plaintiff refused to produce the information requested in the interrogatory and requests for production. In response to Interrogatory 8, Plaintiff stated:

> The Medicaid patients who received Vioxx may be identified from the Utah Medicaid database. We object to the remainder of this question as it goes to damages, a subject not currently before the court. Judge Fallon's order specifies that damage information need not be disclosed until remand. In addition, it calls for attorney work product not discoverable under Rule 26 of the Federal Rules of Civil Procedure.

(Resp. to Second Set of Interrogs. No. 8.) Plaintiff provided similar responses to Merck's Requests for Production Numbers 1 and 2. With respect to Request for Production Number 1, Plaintiff stated:

4

> We have previously informed you that the documentary evidence supporting this answer . . . is in the Utah Database. We have used epidemiologists and actuaries to analyze this database. Those individuals constitute damage witnesses and are not presently discoverable under the Court's existing pre-trial order. Our analysis has never depended upon picking out single individuals and attributing the entire cost of care to that individual. Merck has the ability to hire its own experts and analyze the database for itself. . . . .

(Resp. to Second Set of Req. for Prod. No. 1.) And as to Request for Production Number 2, Plaintiff responded:

> See response to Request Number 1 and the general statement above. We will not produce individual identifying information. This is not a parens patriae claim nor is it subrogation. It is a claim for loss to the Medicaid program. How we calculate that loss is damage discovery not presently before the court.

(Resp. to Second Set of Req. for Prod. No. 2.)

On July 16, 2012, Merck sent Plaintiff a deficiency letter explaining that it is entitled to the patient-specific information sought in its interrogatories and document requests because Plaintiff seeks recovery for treating Medicaid patients who allegedly suffered Vioxx-related injuries. (*See* July 16, 2012 Letter from Richard L. Josephson to Kenneth M. Lougee (quoting First Am. Compl. Prayer for Relief) (attached as Ex. 4).) Merck further explained that "[t]his measure of damages asserted by Utah will necessitate extensive discovery regarding those individuals' alleged injuries, which can only take place once Utah has provided complete responses to these discovery requests." (*Id.*)

Plaintiff responded to Merck's letter on July 18, reaffirming its resistance to Merck's patient-specific discovery requests. In particular, Plaintiff reiterated its position that it need not provide Merck with the names of specific individuals who suffered personal injuries as a result of Vioxx and for whose medical treatment Utah is seeking reimbursement. (*See* Letter from Kenneth D. Lougee to Richard L. Josephson (July 18, 2012) ("July 18 Letter") (attached as Ex. 5).) This is so, Plaintiff contended, because it has enlisted the services of epidemiologists and

actuaries to analyze the Utah Medicaid database and "identify the relative risk of Vioxx related insults." (*Id.*) In other words, Plaintiff plans to extrapolate the results of this statistical analysis as supposed evidence of what percentage of its beneficiaries allegedly suffered injury from Vioxx.

Plaintiff confirmed this position during a meet-and-confer call on July 30 and again in its supplemental answers to Merck's discovery requests on August 7. (*See* Supp. Resp. To Second Set Of Interrogs. No. 8.)

### B. Discovery Related To Alleged Representations

Plaintiff also refuses to provide any information concerning the alleged representations to the State and to Utah doctors and patients that underlie the negligence allegations in its amended complaint. Specifically, Interrogatory Number 2 asked Plaintiff to:

> Identify with particularity all communications between Merck and any Person related to Vioxx that Plaintiff contends is violative of Utah law including date, location, form, consent, substance, originator and recipient of each communication.

(Second Set of Interrogs. No. 2.) Interrogatory Number 3 requested that:

> For each communication identified in response to Interrogatory number 2, provide the specific provision of Utah code that was violated . . . and what specific action or omission lead [sic] to the alleged violation.

(Second Set of Interrogs. No. 3.) Interrogatory Number 5 requested:

> For each communication identified in response to Interrogatory number 2, identify with   particularity the specific statement or omission that you claim renders the communication    false or misleading. If identifying an omission, identify with particularity the communication or information that you allege Merck should have provided.

(Second Set of Interrogs. No. 5.) Finally, Interrogatory Number 7 asked Plaintiff to:

> Identify with particularity any instance where Plaintiff has discovered or has been advised that a Utah healthcare professional who originally prescribed Vioxx later determined that he or she would not have prescribed Vioxx had he or she had additional information about Vioxx when he or she prescribed the medicine.

6

(Second Set of Interrogs. No. 7.)

As with its responses regarding patient-specific Vioxx-related injuries, Plaintiff failed to provide the information Merck sought in connection with the State's negligence claim. In response to Interrogatory Number 2, Plaintiff stated:

> The products liability counts focus on the nature of the product rather than any statement or representations made by Merck of its representatives directly or indirectly to the state employees.

(Resp. to Second Set of Interrogs. No. 2.)  In its Supplemental Interrogatory Responses, the State elaborated:

> [I]n addition to plaintiff's previous answer, liability under the [UFCA] is not predicated upon communications to Utah or Utah doctors.  Again, this is not a misrepresentation lawsuit . . . The statements of Merck, its officials and agents, are cited to show the nature and extent of Merck's knowledge rather than misrepresentations to the State.

(Supp. Resp. to Second Set of Interrogs. No. 2.)  Similarly, in response to Interrogatory Number 3, Plaintiff stated the following:

> See answers to interrogatories one and two above. . . . Simply put, the State's knowledge is irrelevant under either the UFCA claims or the products liability claims.

(Resp. to Second Set of Interrogs. No. 3.)  In its Supplemental Responses, Plaintiff stated:

> Merck was not entitled to retain any monies from the sale of Vioxx because Vioxx would either have not been on the market or had been removed if Merck had not violated federal law by disclosing the accurate and truthful safety and efficacy profile.

(Supp. Resp. to Second Set of Interrogs. No. 3.)  Plaintiff did not provide any further description of what Merck allegedly failed to disclose.

In response to Interrogatory Number 5, Plaintiff made similar protestations, claiming that "again, this is not a misrepresentation lawsuit.  The State's burden is to show that Merck knowingly caused the submission of false claims."  (Supp. Resp. to Second Set of Interrogs. No.

7

1103490v1

5.)  Along the same lines, Plaintiff stated that Interrogatory Number 7 is irrelevant and that reliance and causation are not at issue:

> [N]either the State's prima facie cause of action or any defense available to Merck under the [UFCA] relates in any way to reliance upon statements to doctors to write prescriptions for Vioxx.  This interrogatory, therefore, requests information that is not relevant or designed to lead to relevant information . . . The sole issue is if Merck knowingly caused the submission of false claims as described in the answers to these interrogatories, the Amended Complaint and Merck's Answer.

(Supp. Resp. to Second Set of Interrogs.  No. 7; *see also* Resp. to Second Set of Interrogs. No. 7.)

\*   \*   \*

On August 8, Merck sent Utah a letter discussing the continued deficiencies related to identifying the individuals who were allegedly injured by Vioxx and the alleged representations related to Vioxx.  (*See* Letter from Richard L. Josephson to Kenneth M. Lougee (August 8, 2012) ("August 8 Letter") (attached as Ex. 6).)  In that letter, Merck requested an additional meet and confer session regarding these deficiencies.  (*Id.*)  Utah did not respond.  On August 16, Merck sent Utah another letter requesting a meet and confer session.  (*See* Letter from Richard L. Josephson to Kenneth M. Lougee (August 16, 2012) (attached as Ex. 7).)  Once again, Utah did not respond.  On August 21, Merck's counsel sent an e-mail to Utah again requesting a meet and confer session.  (*See* Email from Richard L. Josephson to Kenneth M. Lougee (August 21, 2012) (attached as Ex. 8).)  Utah's counsel did not respond to the email either.

## ARGUMENT

It is axiomatic that "[t]he scope of discovery is broad and permits discovery of 'any nonprivileged matter that is relevant to any party's claim or defense.'" *Piazza's Seafood World, L.L.C. v. Odom*, No. 07-413-BAJ-CN, 2011 U.S. Dist. LEXIS 111433, at \*14 (M.D. La. Sept. 29, 2011); *see also Shanklin v. Columbia Mgmt. Advisors, L.L.C.*, No. H-07-2690, 2009 U.S.

Dist. LEXIS 40275, at *20-21 (S.D. Tex. May 13, 2009) ("The documents Shanklin seeks are relevant to this claim, satisfying the Rule 26(b)(1) standard."). Consistent with this standard, courts within the Fifth Circuit have employed a broad interpretation of the term "relevant" under Rule 26, explaining that "a request for discovery should be considered relevant if there is *any* possibility that the information sought may be relevant to the subject matter in the action or if there is *any* possibility that the information sought *may* lead to the discovery of admissible evidence." *S. U.S. Trade Ass'n v. Unidentified Parties*, No. 10-1669 SECTION: "L" (4), 2012 U.S. Dist. LEXIS 10254, at *5 (E.D. La. Jan. 30, 2012) (Judge Roby) (emphases added); *accord Garner v. Mission Essential Pers., L.L.C.*, No. 3:11cv127-TSL-MTP, 2012 U.S. Dist. LEXIS 71777, at *3 (S.D. Miss. May 23, 2012) (information is relevant for discovery purposes if it "'encompass[es] any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case'") (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).

      Importantly, relevance is not measured merely in terms of how a plaintiff seeks to prosecute its case; any information relevant to potential defenses is also discoverable. *See, e.g.*, *Susquehanna Commercial Fin., Inc. v. Vascular Res. Inc.*, No. 1:09-CV-2012, 2010 U.S. Dist. LEXIS 127125, at *22-23 (M.D. Pa. Dec. 1, 2010) (granting motion to compel response to request for production because "we agree with [d]efendants that the [requested] information may have potential relevance to their defenses in this litigation" in that it may "help defend against [p]laintiff's claimed damages"); *Janssen Pharmaceutica N.V. v. Mylan Pharm., Inc.*, No. 03-6220 (JCL), 2006 U.S. Dist. LEXIS 5443, at *8 (D.N.J. Feb. 10, 2006) (vacating magistrate judge's denial of motion to compel where the requested information was "not only relevant, but essential, to [the defendant's] potential defense"); *see also Wooten v. Certainteed Corp.*, Nos.

1103490v1

08-2508-CM, 08-2520-CM, 2009 U.S. Dist. LEXIS 67604, at *5 (D. Kan. Aug. 4, 2009) (granting motion to compel response to interrogatory because "plaintiff's medical information [is] relevant both to plaintiff's claims for emotional distress and to defendant's possible defenses against such claims").  In short, a party may not resist a discovery request "unless it is clear that the information sought can have no possible bearing on the subject matter of the action."  *Heaton v. Monogram Credit Card Bank*, No. 98-1823 SECTION: "J"(l)  2004 U.S. Dist. LEXIS 4065, at *11 (E.D. La. Mar. 15, 2004) (Judge Barbier) (internal quotation marks and citation omitted); *see also Rangel v. Mascorro*, 274 F.R.D. 585, 590 (S.D. Tex. 2011) (finding that deposition questions satisfied the "low threshold of relevance at the discovery stage").

The discovery requests at issue here clearly satisfy these standards.  ***First***, because Plaintiff is seeking reimbursement for Vioxx-related injuries, the patient-specific information sought by Merck in connection with those injuries is not only relevant, but essential, to the element of causation.  And ***second***, information regarding Merck's allegedly negligent conduct – and the causal relationship between that conduct and the State's alleged injuries – is also highly relevant to its negligence claims and therefore discoverable.

I. **MERCK IS ENTITLED TO DISCOVERY REGARDING THOSE INDIVIDUALS WHO UTAH CLAIMS WERE INJURED BY VIOXX AND FOR WHOSE MEDICAL TREATMENT UTAH IS SEEKING REIMBURSEMENT.**

Plaintiff's continued resistance to Merck's requests for information regarding Medicaid-beneficiaries who the State claims were injured by Vioxx is baseless.

Utah's First Amended Complaint makes clear that the State is seeking reimbursement for "all consequential damages (subsequent care for Utah Medicaid recipients)."  (First Am. Compl., Prayer for Relief.)  Indeed, Plaintiff seeks such relief in connection with both its claims under the Utah False Claims Act and its claim for negligence.  (*Id.* ¶¶ 231(d); 235(d); 238(d); 244.)  It is well settled that in such a case, the State must prove that "*[e]ach* individual patient's" alleged

10

physical injury "resulted from [Vioxx], rather than other supervening causal factors." *In re Zyprexa Prods. Liab. Litig.*, 671 F. Supp. 2d 397, 455 (E.D.N.Y. 2009) (emphasis added).

In *Zyprexa*, the State of Mississippi sought to recover economic losses stemming from alleged misrepresentations regarding the prescription drug Zyprexa, asserting claims under, *inter alia*, Mississippi's Medicaid fraud statute, and for negligence. *See id.* at 453. One of the proffered theories of causation was that, but for the defendant's allegedly fraudulent conduct, fewer doctors would have prescribed Zyprexa, and the state "would not have . . . expended funds in providing necessary health care treatment and other necessary assistance to . . . Medicaid recipients who presently suffer, or have suffered, from Zyprexa-related injuries." *Id.* at 454. The court reasoned that "[c]onceptually and structurally," "the State's suit is predicated on numerous acts of fraud . . . alleged to have individually affected a statewide population of prescribing physicians and patients." *Id.* at 433. Judge Weinstein went on to hold that an individualized-proof rule applies in a "structural" class action like the one being prosecuted by Mississippi, just as it does in a traditional class action under Rule 23. Such a rule requires plaintiffs to prove causation on an individual basis and thus bars aggregate adjudication of claims that include a causation element. *Id.* at 434.

Applying the individualized-proof rule to Mississippi's theories of relief, the court determined that the state could not prevail on any theory of causation that depended on individualized showings, including the state's theory that it spent money on Zyprexa-related injuries as a result of the defendant's alleged misconduct. *Id.* at 454-55. As Judge Weinstein explained, the state had a virtually impossible task: proving that "*[e]ach* individual patient's" alleged physical injury "resulted from Zyprexa, rather than from other supervening causal factors." *Id.* (emphasis added). Because "each prescribing decision and each patient's injuries

would have to be considered individually," the court granted the pharmaceutical company summary judgment. *Id.* at 455.

Here, as in *Zyprexa*, Plaintiff seeks to recover the money it spent treating Medicaid beneficiaries who allegedly suffered Vioxx-related injuries. (First Am. Compl., Prayer for Relief.) Plaintiff must therefore prove that "*[e]ach* individual patient's" alleged physical injury "resulted from [Vioxx], rather than from other supervening causal factors." *Zyprexa*, 671 F. Supp. 2d at 455 (emphasis added). Such proof necessarily encompasses the evidence sought by Merck here: information or documents regarding those individuals the State contends were injured by Vioxx and for whose medical treatment Utah is seeking reimbursement. Under *Zyprexa*, such patient-specific information is not only relevant, but essential, to Plaintiff's claims that arise from Utah Medicaid recipients' supposed Vioxx-related injuries.

Plaintiff has resisted this discovery on the ground that it "goes to damages, a subject not currently before the court." (Resp. to Second Set Interrogs. No. 8.) In making this argument, Plaintiff relies on the Court's pre-trial order, which "specifies that damage information need not be disclosed until remand." (*Id.*) But this contention misconstrues the discovery order and ignores the broader relevance of the information that Merck has requested. The discovery order does not bar discovery of facts related to "damages" generally; rather, it specifically reserves only the narrow category of "*[e]xpert* discovery on damages." Pretrial Order No. 39B, ECF No. 63,895, at 2 (Jun. 5, 2012) (emphasis added). The order otherwise places no restrictions on discovery; to the contrary, it expressly indicates "the intention of the Court and the parties that *all* fact and expert discovery [other than *expert* damages discovery] will be completed by the parties *in the MDL* prior to consideration of the motions to remand/transfer." *Id.* (emphases added). Merck's requests do not relate to "[e]xpert discovery on damages"; hence, Plaintiff is

1103490v1

compelled to answer Merck's interrogatories and produce responsive documents "in the MDL" proceeding.

In any event, the facts Merck has requested are *not* related solely to damages. Rather, as the express language of the *Zyprexa* decision makes clear, the information Merck seeks is also highly relevant to crucial "causal" facts, *see Zyprexa*, 671 F. Supp. 2d at 455 – i.e., whether Vioxx actually caused injuries to Utah Medicaid patients that in turn allegedly caused the state's program to make payments for each such patient. As *Zyprexa* also makes clear, Merck is entitled to contest the State's theory that it made Medicaid payments to care for allegedly Vioxx-related injuries on a patient-by-patient basis. The facts on which Merck seeks discovery go directly to these issues and would thus be relevant and discoverable, even if PTO 39B did bar all damages-related discovery (which it clearly does not).

Plaintiff has also refused to turn over the requested information on the ground that its "analysis has never depended upon picking out single individuals and attributing the entire cost of care to that individual." (*See* Resp. to Second Set of Interrogs. No. 8; Resp. to Second Set of Req. for Prod. No. 1, 2.) Instead, Plaintiff has stated, it plans to use epidemiologists and actuaries to "identify the relative risk of Vioxx related insults" in proving its claims. (*See* July 18 Letter.) In other words, Plaintiff seeks to argue that a certain percentage of individuals who took Vioxx suffered injuries from the medication and extrapolate a damages figure from that statistic.

This proposal is a non-starter, as the U.S. Supreme Court recently made clear in rejecting "Trial by Formula" in *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2561 (2011). In *Dukes*, the Court rejected a trial plan under which a "sample set of the class members would be selected, as to whom liability for sex discrimination and the backpay owing as a result would be

1103490v1

determined in depositions supervised by a master" and the "percentage of claims determined to be valid would then be applied to the entire remaining class." *Id.*  Notably, that holding of *Dukes* followed the lead of the Fifth Circuit, which long ago rejected sampling as a method of aggregate proof in quasi-class actions.  *See Cimino v. Raymark Indus.*, 151 F.3d 297 (5th Cir. 1998).  In *Cimino*, the plaintiffs in a quasi-class action consisting of over 3,000 individual claims alleged that defendants were liable for personal injuries stemming from exposure to asbestos-containing insulation.  *Id.* at 299-300.  The plaintiffs had proposed to "prove" damages for the thousands of claims based on a "sample" of 160 cases.  The district court approved this proposal, finding that the 160 cases were "reliably representative" of the entire pool of cases.  *Id.* at 300.  On appeal, the Fifth Circuit rejected this approach, holding that "under Texas personal injury products liability law[,] causation and damages are determined respecting plaintiffs as individuals, not groups."  *Id.* at 313 (internal quotation marks omitted).  The Court of Appeals also held that the use of sampling and extrapolation to prove causation violated the Seventh Amendment's guarantee of a right to a jury trial in civil actions at law.  In particular, the Fifth Circuit concluded that the jury's findings of "the actual damages of each of the" 160 plaintiffs "cannot control the determination of, or afford ***any basis for*** denial of [defendants'] Seventh Amendment rights to have a jury determine, the distinct and separable issues of actual damages of each of the extrapolation plaintiffs."  *Id.* at 320-21 (emphasis added).

Notably, Judge Weinstein relied on this very reasoning in the *Zyprexa* ruling, citing *Cimino* for its rejection of sampling and quoting its conclusion that it is impermissible to rely upon a "'group, rather than individual, determination of cause in a damage suit for personal injuries to individuals at widely different times and places.'"  *In re Zyprexa*, 671 F. Supp. 2d at 438 (quoting *Cimino*, 151 F.3d at 316).  The import of *Zyprexa* could not be clearer:  if a form of

aggregate proof is barred in a class action or "quasi" class action, it must also be precluded in a "structural class action" like the case brought by the State of Utah here. *Id.* at 433-34. Accordingly, the only way Plaintiff can prove its claims is through the patient-specific information sought by Merck.

In short, as the Supreme Court and Fifth Circuit have made clear, Plaintiff may not resort to statistical sampling to satisfy its steep causation burden. Rather, "each prescribing decision and each patient's injuries would have to be considered individually." *Id.* at 455. Because information regarding the individuals for whose medical treatment Plaintiff is seeking reimbursement goes to the very heart of Plaintiff's claims (and Merck's potential defenses),[1] the Court should require Plaintiff to respond to Merck's requests.

## II.     MERCK IS ENTITLED TO BASIC DISCOVERY REGARDING PLAINTIFF'S COMMON-LAW NEGLIGENCE CLAIM.

Plaintiff's refusal to provide discovery regarding the alleged representations underlying its negligence claim is equally groundless.

The gravamen of Plaintiff's negligence claim is that Merck was "negligent in . . . [its] representations as to the efficacy and safety of Vioxx," resulting in a breach of its "duty of care towards the general public and Utah Medicaid." (Am. Compl. ¶ 243.) In order to prevail on this claim, Plaintiff must prove that Merck breached a duty owed to Utah (or, as alleged, its citizens),

---

[1]     At the very least – and as a matter of due process – Merck has a right to defend itself with individualized evidence regarding the Medicaid recipients for whose medical treatment Plaintiff is seeking reimbursement. *See Lindsey v. Normet*, 405 U.S. 56, 66 (1972) (due process guarantees the right to "an opportunity to present every available defense") (internal quotation marks and citation omitted); *see also United States v. Armour & Co.*, 402 U.S. 673, 682 (1971) (the "right to litigate the issues raised" in a case is "a right guaranteed . . . by the Due Process Clause"). There can be no dispute that such evidence is therefore a proper subject for discovery. *See Janssen Pharmaceutica*, 2006 U.S. Dist. LEXIS 5443, at *8 (vacating magistrate judge's denial of motion to compel where the requested information was "not only relevant, but essential, to [the defendant's] potential defense").

as well as a causal relationship between the alleged breach and the State's alleged injuries.[2]  *See Niemela v. Imperial Mfg.*, 263 P.3d 1191, 1198 (Utah Ct. App. 2011) ("A plaintiff claiming negligence in th[e] [product liability] context must prove the ordinary elements of negligence, including duty and causation."); *see also Harline v. Barker*, 912 P.2d 433, 444 (Utah 1996) (affirming summary judgment in favor of attorney on negligence claim because plaintiff failed to establish causation element).

The information sought by Merck's requests is directly relevant to duty, breach and causation.  For example, Interrogatory No. 2 seeks information regarding "communications between Merck and any Person related to Vioxx that Plaintiff contends is violative of Utah law including date, location, form, content, substance, originator and recipient of each communication."  (Second Set of Interrogs. No. 2.)  According to Plaintiff, the requested information is irrelevant because "liability under the False Claims Act is not predicated upon communications to Utah or Utah doctors.  Again, this is not a misrepresentation lawsuit."  (Pl.'s Supp. Resp. to Second Set of Interrogs. No. 2.)  But Plaintiff's response misperceives the purpose of Merck's discovery request, which is to uncover the basis of the State's ***negligence*** claim.  Because breach of duty and causation are critical elements of the State's claim for negligence, Merck's purported representations to Utah regarding Vioxx are highly relevant to this cause of action.

---

[2]   Merck does not concede that Plaintiff has authority to assert negligence claims based on representations made to doctors and patients in Utah.  Moreover, even if the State had such authority, the negligence claim would face additional problems under the economic-loss doctrine, which "'bars recovery of economic losses in negligence actions unless the plaintiff can show physical damage to other property or bodily injury.'"  *Hodge v. Ocwen Loan Servicing*, No. 2:11-cv-00837-DN, 2012 U.S. Dist. LEXIS 58176, at *22-23 (D. Utah Apr. 24, 2012) (quoting *Sunridge Dev. Corp. v. RB & G Eng'g, Inc.*, 230 P.3d 1000, 1006 (Utah 2010)).  Nonetheless, as long as Plaintiff continues to assert a claim for negligence, Merck is entitled to relevant discovery.

Similarly, Interrogatory Number 7 seeks information regarding "any instance where Plaintiff has discovered or has been advised that a Utah healthcare professional who originally prescribed Vioxx later determined that he or she would not have prescribed Vioxx had he or she had additional information about Vioxx when he or she prescribed the medicine." (Second Set of Interrogs. No. 7.) In response, Plaintiff objects, claiming that "neither the State's prima facie cause of action or any defense available to Merck under the Utah False Claims Act relates in any way to reliance upon statements to doctors or indeed to the causation of doctors to write prescriptions for Vioxx." (Pl.'s Resp. to Second Set of Interrogs. No. 7.) Once again, Plaintiff's response ignores that it has brought a negligence claim. Both reliance and causation are essential to Plaintiff's ***negligence*** cause of action.

*Zyprexa* is illustrative here too. In that case, the State of Mississippi asserted a negligence claim much like the one here – claiming that the state sustained economic losses as a result of representations made by defendant Eli Lilly concerning Zyprexa. *See* 671 F. Supp. 2d at 640 (noting negligence allegation that Lilly "failed to provide adequate warnings . . . that it misrepresented Zyprexa's characteristics, benefits, and overall quality . . . [and] that it promoted Zyprexa for 'non-medically necessary' uses"). Such allegations, the court explained, "require[d] a showing of reliance on Lilly's acts or omissions across the heterogeneous population of Mississippi patients and prescribing physicians, either in deciding to purchase Zyprexa at the market price, or in deciding to administer Zyprexa at all." *Id.* Thus, information about whether Utah healthcare providers would have continued to prescribe Vioxx if Merck had disclosed additional information regarding the drug is inextricably related to causation, a fundamental element of Plaintiff's negligence claim. *Zyprexa*, 671 F. Supp. 2d at 460.

17

Finally, Interrogatory No. 5 seeks identification of "the specific statement or omission that you claim renders the communication [from Interrogatory 2] false or misleading." (Second Set of Interrogs. No. 5.)  In response, Plaintiff claims the requested information is irrelevant because "the State's burden is to show that Merck knowingly caused the submission of false claims."  Once again, Plaintiff's response misses the point, as such information undoubtedly bears on duty and causation – the gravamen of a negligence claim.  Without identification of a duty and failure to fulfill that duty, Plaintiff cannot maintain its negligence allegations.  *Zyprexa*, 671 F. Supp. 2d at 460.

In sum, as the aforementioned examples illustrate, the information Merck seeks regarding its alleged breach of duty – and the causal relationship between that duty and the State's alleged injuries – is highly relevant to Plaintiff's negligence claim.  For this reason too, the Court should compel Plaintiff's responses to Merck's discovery requests.

## CONCLUSION

For the foregoing reasons, the Court should grant Defendant's motion to compel responses to Merck's Second Set of Interrogatories and Requests for Production.

Dated:  September 6, 2012  Respectfully submitted,

/s/ Dorothy H. Wimberly
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361

1103490v1

Douglas R. Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth St., N.W.
Washington, DC 20005

John H. Beisner
Jessica Davidson Miller
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
1440 New York Avenue, N.W.
Washington, DC 20005

Tarek Ismail
GOLDMAN ISMAIL TOMASELLI BRENNAN and BAUM, LLP
1 North Franklin Street
Suite 625
Chicago, IL  60606

ATTORNEYS FOR MERCK SHARP & DOHME CORP.

**CERTIFICATE OF SERVICE**

      I hereby certify that the above and foregoing Defendant's Memorandum of Law in Support of Motion to Compel has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail, upon Liaison Counsel Ann Oldfather by e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8C, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 6th day of September, 2012.

    */s/ Dorothy H. Wimberly*
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361
dwimberly@stonepigman.com
Defendants' Liaison Counsel