# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| In re:  VIOXX Products Liability Litigation | * | MDL No. 1657 |
| This Document Relates to: | * | SECTION L |
| State of Utah v. Merck, et al. | * | JUDGE ELDON E. FALLON |
|  | * | MAGISTRATE JUDGE KNOWLES |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## STATE OF UTAH'S OPPOSITION TO MOTION TO COMPEL REGARDING
## ANSWERS TO INTERROGATORIES

Defendant has moved the court for an order requiring responses to interrogatories. Defendant seeks the disclosure of the individuals at the State to whom the Plaintiff might claim were misled by Defendant's statements.  Defendant also claims that the Plaintiff should name the Utah doctors the Plaintiff claims were misled.

The Plaintiff has answered that its officials and Utah doctors received the same information that was given to the medical profession and the general public. *See* Plaintiff's Answers to Defendant's Third Set of Interrogatories and Plaintiff's Responses to Defendant's Second Set of Requests to Admit, attached hereto as Exhibit A**.**  Beyond that answer, further discovery is irrelevant.  Unfortunately, for Defendant, evidence of misrepresentation and reliance upon that misrepresentation is irrelevant.  Defendant wants to fight a misrepresentation lawsuit but this is a false claims case in which knowledge of the State, representations, reliance and deception play no part.

Discovery is related to "non-privileged matter that is relevant to any party's claim or defense." FRCP 26(b)(1). Defendant's argument might have had greater force had it been brought prior to 2000. At that time parties were entitled to discovery "relevant to the subject matter of the pending case." Defendant is not entitled to discovery that does not relate to the Plaintiff's causes of action.

As the causes of action and the defenses are state claims, they are defined by state law as defined by the Utah legislature and the Utah Supreme Court. *Erie Railroad Company v. Tompkins,* 304 U.S. 64, 78, 58 Sc.D. 817, 82 L.Ed.1188 (1938).

The most recent pronouncement of the Utah Supreme Court dealing with the extent of liability and thus discoverability under the Utah False Claims Act is *Apotex v. State of Utah,* 2012 UT 36 (June 19, 2012) which sets out clearly why the discovery sought lacks relevance to any of the causes of action. It further demonstrates that the information sought will not lead to any evidence that will be admissible under Utah law. *See Apotex v. State of Utah,* 2012 UT 36 (June 19, 2012), attached hereto as Exhibit B.

*Appotex,* was an action alleging violations of the Average Wholesale Price (AWP) provisions of the Utah Medicaid code. Like this case, it was brought under the Utah False Claims Act ("UFCA"). One Defendant argued that the State was estopped from enforcing its law because there was evidence in the Utah Medicaid file indicating that the State had knowledge years before that the pharmaceutical companies were not charging accurate prices.

The Utah Supreme Court was quite clear in rejecting the relevance of evidence of prior knowledge by Utah Medicaid. "Moreover, if the Department of Health information had been appropriate for the Court to consider, the information speaks to the *State's* knowledge, whereas

the UFCA provisions focus on a *defendant knows* submission of false claims.  The district court's discussion of deception also was error because the UFCA provisions at issue do not include an element of *deception* but rather require allegations that false claims were made knowingly."  (Italics by the Court.)

The Utah Supreme Court could not have been plainer in its instructions that the trial courts are not to consider evidence of the State's knowledge.   Such evidence is not admissible as relevant under the decision of the highest court of this jurisdiction.  Even if that was not the case, cursory examination of the false claims causes of action would demonstrate beyond argument that the Utah Supreme Court was correct in holding evidence of the State's knowledge is irrelevant and inadmissible.

For example, Utah Code Annotated §26-20-7(1)(a) provides that a person may not make or present or cause to be presented to an employee or officer of the state a claim for medical benefits which is wholly or partially false,  fictitious or fraudulent."  In the statute "person" means "corporation" and medical benefit refers to Medicaid.  UCA §26-20-2.  That section of the statute, like all other sections relied upon by the State in its amended complaint, does not make any reference to a defense that would include knowledge by the State.  *See* UCA §26-20-7(1)€; UCA 26-20-7(2)(b) and UCA §26-20-6.   Indeed, one may search the entire chapter and not find language that would make the knowledge of the state relevant to either the prima facie case or any possible defense.

The Utah legislature has the right to make law concerning the protection of its Medicaid funds. The Utah Supreme Court has the right and duty to interpret that law.  Defendant cannot wave a magic wand and turn the statute and the decision into that which it is not.  The answer

that prior knowledge is not relevant to the causes of action is timely and accurate.[1]  Defendant wishes to fight the last war.  In the individual cases and perhaps in the consumer protection states, knowledge of the state and the doctors may have some relevance.  But that is not this case. The issues of state law have been entrusted to the people and courts of Utah and their good judgment as to how their affairs are to be structured.  The Supreme Court has ruled on this issue and thus no further argument is appropriate.

The motion should be denied.  If Defendant was earlier confused about the State's explanation that it received information given to the general and medical public, it should no longer be confused.   All Defendant is entitled to receive is an answer or objection.  The objection was made; the answer was given.  There is nothing further due under either FRCP 26 or FRCP 37.

DATED this 20th day of September,  2012.

_/S/_____
Joseph W. Steele
Kenneth D. Lougee
STEELE & BIGGS
5664 South Green Street
Salt Lake City, UT  84123
*Attorneys for Plaintiff*

---

[1] A Utah common law negligence count does not require the showing of reliance upon representations of fact by the defendant. *See Webb v .University of Ut*ah, 125 P.3d 906, 909 (Utah 2005.)

_/S/_____

Eric H. Weinberg
The Law Offices of Eric H. Weinberg
149 Livingston Avenue
New Brunswick, NJ  08901
*Attorney for Plaintiff*


_/S/_____

Richard W. Schulte (Ohio Bar No. 0066031)
812 E. National Road, Suite A
Vandalia, Ohio 45377
(937) 435-7500
*Attorney for Plaintiff*


## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing PLAINTIFF'S OPPOSITION TO

DEFENDANT'S MOTION TO COMPEL REGARDING ANSWERS TO

INTERROGATORIES has been served on Liaison Counsel, Russ Herman, Phillip Wittmann and

Ann Oldfather, by U.S. Mail and e-mail or by hand delivery and e-mail, and upon all parties by

electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-

Trial Order No. 8(B), and that the foregoing was electronically filed with the Clerk of Court of

the United States District Court for the Eastern District of Louisiana by using the CM/ECF

system which will send a Notice of Electronic Filing in accord with the procedures established in

MDL 1657 on this 20th day of September, 2012.


_/S/_____

Joseph W. Steele

**EXHIBIT A**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| In re: VIOXX Products Liability Litigation | * | MDL No. 1657 |
| This Document Relates to: | * | SECTION L |
| State of Utah | * | JUDGE ELDON E. FALLON |
| v. | * | MAGISTRATE JUDGE KNOWLES |
| Merck Sharp & Dohme Corp. | * |  |
| Civil Action No. 2:06-cv-09336 | * |  |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## PLAINTIFF'S RESPONSES TO DEFENDANT'S SECOND SET OF REQUESTS TO ADMIT

Pursuant to FED. R. CIV. P. 33 and Pretrial Order Number 39B, plaintiff, State of Utah, hereby responds to the following Requests to Admit.

## REQUESTS FOR ADMISSION

**REQUEST NO. 1 :**   Admit that You are not aware of any false statements, misrepresentations, or omissions made by Merck related to Vioxx to Utah Medicaid or any employee or representative of Utah Medicaid.

**RESPONSE:**          Deny.

**REQUEST NO. 2 :**   Admit that the entire basis for your allegations that Merck caused the submission of false claims related to Vioxx is based on alleged misstatements, misrepresentations, or omissions made by Merck to the FDA.

**RESPONSE:**          Deny.

1

**REQUEST NO. 3 :**   Admit that on September 30, 2004, Merck notified Utah Medicaid that Merck had voluntarily withdrawn Vioxx from the market.

**RESPONSE:**          The plaintiff lacks the knowledge to either admit or deny request no. 3 and therefore denies the same.

**REQUEST NO. 4 :**   Admit that on September 30, 2004, Utah Medicaid was aware that Merck had voluntarily withdrawn Vioxx from the market.

**RESPONSE:**          Admit.  Utah Medicaid was aware that Vioxx was removed from the market on or about September 30, 2004.

**REQUEST NO. 5 :**   Admit that Merck did not market Vioxx in the State of Utah after September 30, 2004.

**RESPONSE:**          Admit.

**REQUEST NO. 6 :**   Admit that Merck did not make or cause to be made any claims for Vioxx after September 30, 2004.

**RESPONSE:**          Deny.

**REQUEST NO. 7 :**   Admit that the state of Utah did not expend any money on reimbursement for prescriptions for Vioxx after September 30, 2004.

**RESPONSE:**          Admit.

**REQUEST NO. 8 :**   Admit that You contend that none of the claims submitted by healthcare professionals for Vioxx were valid.

**RESPONSE:**          Deny.

**REQUEST NO. 9 :**   Admit that You contend that none of the claims submitted by healthcare professionals for Vioxx were valid because Merck made misrepresentations or

omissions to the FDA, without which Vioxx would not have been on the market in the United States.

**RESPONSE:**     Deny.

**REQUEST NO. 10 :** Admit that You contend that you only need to establish that Merck's negligence caused the FDA to approve Vioxx to prevail on your negligence claim.

**RESPONSE:**     Deny.

**REQUEST NO. 11 :** Admit that You do not intend to introduce any evidence at trial that the state of Utah acted in direct reliance on any alleged negligent act or misrepresentation by Merck, as distinguished from Utah's reliance on the FDA's approval of Vioxx that You contend was allegedly caused by Merck's negligence.

**RESPONSE:**     Deny.

**REQUEST NO. 12 :** Admit that Utah Medicaid has asserted liens against Utah citizens' personal injury settlements related to Vioxx.

**RESPONSE:**     Plaintiff admits that Utah Medicaid asserted liens against Utah citizens' personal injury settlements related to Vioxx as those claims were handled in the Multidistrict Litigation.  We deny that we have asserted any other liens.

**REQUEST NO. 13 :** Admit that Utah Medicaid has received settlement funds from Merck through liens or other claims against Utah citizens' personal injury settlements related to Vioxx.

**RESPONSE:**     Plaintiff admits that Utah Medicaid received settlement funds from Merck through liens against Utah citizens' personal injury settlements related to Vioxx in the Multidistrict Litigation but otherwise deny this request.  Plaintiff presumes that Merck and the

settling officials have records of what monies were paid on behalf of Utah Medicaid recipients.

DATED this _14th_ day of _September_, 2012.

/S/
Joseph W. Steele
Kenneth D. Lougee
STEELE & BIGGS
5664 South Green Street
Salt Lake City, UT  84123


/S/
Eric H. Weinberg
The Law Offices of Eric H. Weinberg
149 Livingston Avenue
New Brunswick, NJ  08901


/S/
Richard W. Schulte (Ohio Bar No. 0066031)
Wright & Schulte LLC
812 East National Road, Suite A
Vandalia, Ohio 45377

**_Attorneys for Plaintiff_**

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing PLAINTIFF'S RESPONSES TO

DEFENDANT'S SECOND SET OF REQUESTS TO ADMIT has been served on Liaison

Counsel, Russ Herman, Phillip Wittmann and Ann Oldfather, by U.S. Mail and e-mail or by

hand delivery and e-mail, and upon all parties by electronically uploading the same to

LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8(B), and that the

foregoing was electronically filed with the Clerk of Court of the United States District Court for

the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of

Electronic Filing in accord with the procedures established in MDL 1657 on this 14th day of

September , 2012.


_____/S/_____

Joseph W. Steele
Kenneth D. Lougee
STEELE & BIGGS
5664 South Green Street
Salt Lake City, UT  84123

5

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| In re: VIOXX Products Liability Litigation | * | MDL No. 1657 |
| This Document Relates to: | * | SECTION L |
| State of Utah | * | JUDGE ELDON E. FALLON |
| v. | * | MAGISTRATE JUDGE |
|  | * | KNOWLES |
| Merck Sharp & Dohme Corp. | * |  |
| Civil Action No. 2:06-cv-09336 | * |  |

* * * * * * * * * * * * * * * * * * * * * * * *

## PLAINTIFF'S ANSWERS TO DEFENDANT'S
## THIRD SET OF INTERROGATORIES

Pursuant to FED. R. CIV. P. 33 and Pretrial Order Number 39B, plaintiff, State of Utah, hereby answers the following Interrogatories.

## INTERROGAOTORIES

**INTERROGATORY NO. 1:**      If your answer to any request in Defendant's Second Set of Requests to Admit is anything other than an unqualified "yes," explain on what basis you failed to unequivocally admit that request.

**ANSWER:**    Plaintiff responds to interrogatory no. 1 as follows:

**REQUEST NO. 1 :**   : The State of Utah was aware of all public statements made by Merck, its contractors, representatives and agents as to the safety and efficacy profile of Vioxx. This would include the labeling, direct to public advertisement, and press releases made by Merck.  We believe the same to be true of medical doctors in Utah prescribing Vioxx to the

1

Medicaid population.  Those representations, including omissions, proved to be materially false.
It is admitted that the state pharmacists have nothing in their files which is unique to Utah.

**REQUEST NO. 2** :   The false documentation (including material omissions) provided
to the FDA and CMS is actionable under UCA §26-20-7(2)(c).  Merck is also liable under UCA
§26-20-7(1)(a) because Merck caused the submission of claims for medical benefits  which were
wholly or partially false, fictitious or fraudulent.  Claims for Vioxx reimbursement were wholly
or partially false because those claims did not reflect the true safety and efficacy profile of
Vioxx.  The claims were "knowingly" submitted because the record amply demonstrates that
Merck was fully aware of the cardiovascular and Alzheimer's profile well before the drug went
on the market and acquired further information as the drug continued to be sold.  Merck is also
liable under UCA §26-20-7(1)(e) because it caused to be submitted claims for Vioxx which were
not medically necessary.  This claim includes causing Vioxx claims to be submitted for patients
without gastric problems.  Those claims were not medically necessary because the actual profile
of Vioxx does not show any improvement in pain or arthritis relief significantly different than
any other NSAID which could have been obtained at a small fraction of the cost.  Merck is liable
under UCA §26-20-6 because its employees and agents entered into agreements, combination or
conspiracy to defraud the state by aiding others to obtain allowance of a false, fictitious or
fraudulent claim.  The proof of these claims does not require intent to deceive nor does it require
the showing of `knowledge of upper management as to these false statements or representation.
UCA §26-20-8.

**REQUEST NO. 3 :**   It is unknown at the present time how the Utah Medicaid pharmacists were notified that Vioxx had been removed from the market.  It is presumed that they were alerted to that fact by public disclosure from Merck.

**REQUEST NO. 6 :**   The causes of Action for Utah False Claims were not complete until the true safety and efficacy profile was known to the Attorney General.   Information concerning the false representations and omissions by Merck as to the cardiovascular profile were not known by the Attorney General until early winter 2005.  This was after evidence of Merck's knowledge of the risk of cardiovascular events was disclosed and publically disseminated in the late summer of 2005.

Upon removal of the drug from the market, Merck represented that the unblinding of a study in September 2004 was the first knowledge it had concerning cardiovascular risks with Vioxx.  By late summer 2005, it was apparent that Merck had not been truthful and that the claims it had caused to be submitted beginning in 1999 were indeed false claims.  It was at that point that the cause of action was complete.  It should be noted that to the present, Merck continues to deny cardiovascular risk as has been shown in the recent attempts to obtain discovery of the Alzheimer studies.

**REQUEST NO. 8 :**   Once it became clear, that Merck had made representations and omissions concerning the safety and efficacy of the drug, the State's position is that it should never have been on the market or that it should have been removed immediately.  Further, no claims should have been made at any time for any patient that did not experience gastric upset.

**REQUEST NO. 9 :**   See response to request no. 8 above.

**REQUEST NO. 10 :**  In order to prevail on a negligence theory in Utah, a party must show duty, breach of duty , causation and damages.  Merck had a duty to make a safe drug.  That

3

duty was breached when Merck put and retained on the market a drug that was known to Merck to have significant risks of cardiovascular events. Merck was further negligent when it put and retained the drug on the market when its own scientists were properly questioning the testing. This is most clearly shown in the promotion of the naproxen cardio protection fable. If Merck scientists truly believed naproxen to be cardio protective they were entirely remiss in failing to test and verify that proposition. Causation is shown through recognized experts who will testify that the drug was not safely on the market. There appears no reasonable argument that Merck has the propensity to cause cardiovascular events.

The falsifications and omissions made to the FDA to obtain approval of Vioxx provide proof supporting the elements of duty and breach of duty. The falsifications and omissions to the FDA may provide the basis for liability under a negligence per se theory but the State has not completed fact discovery on this point.

**REQUEST NO. 11 :** Under *State v. Apotex*, knowledge of the plaintiff as to the efficacy and safety of Vioxx is irrelevant to the prima facie case in the False Claims Causes of Action. The plaintiff need not prove that it was deceived. The focus of the act is upon what Merck knew and what Merck did rather than upon what the plaintiff knew. In that sense reliance by the plaintiff upon representations by Merck is not necessary to prevail on the False Claims causes of action.

However, if Merck is using the word "reliance" to indicate that its misrepresentations and omissions as to the true safety and efficacy profile are irrelevant, it is wrong. The misrepresentations and omissions prove the knowing submissions of false claims. If the question is "Did the plaintiff relied upon Merck to be truthful" the answer is "Yes." If Merck was not truthful, that evidence shows the causing of submission of false claims.

4

Likewise, in the negligence count, "reliance" is not a cognizable issue. The plaintiff did not bring a product liability by failure to warn case or a fraudulent or negligent misrepresentation case. Such cases require a showing of reliance upon the statements of Merck whereas this negligence count does not. However, again the plaintiff trusted Merck to safely test and disclose all known or knowable risks which was not done. If the question is "Did the plaintiff rely upon Merck to meet its duties of bringing a safe drug to market" the answer would be in the affirmative.

**REQUEST NO. 12 :** Admit that Utah Medicaid has asserted liens against Utah citizens' personal injury settlements related to Vioxx.

**RESPONSE:** Plaintiff admits that Utah Medicaid asserted liens against Utah citizens' personal injury settlements related to Vioxx as those claims were handled in the Multidistrict Litigation. We deny that we have asserted any other liens.

**REQUEST NO. 13 :** Admit that Utah Medicaid has received settlement funds from Merck through liens or other claims against Utah citizens' personal injury settlements related to Vioxx.

**RESPONSE:** Plaintiff admits that Utah Medicaid received settlement funds from Merck through liens against Utah citizens' personal injury settlements related to Vioxx in the Multidistrict Litigation but otherwise deny this request. Plaintiff presumes that Merck and the

settling officials have records of what monies were paid on behalf of Utah Medicaid recipients.

DATED this _14_ day of _September_, 2012.

> /S/
> _____
> Joseph W. Steele
> Kenneth D. Lougee
> STEELE & BIGGS
> 5664 South Green Street
> Salt Lake City, UT  84123

> /S/
> _____
> Eric H. Weinberg
> The Law Offices of Eric H. Weinberg
> 149 Livingston Avenue
> New Brunswick, NJ  08901

> /S/
> _____
> Richard W. Schulte (Ohio Bar No. 0066031)
> Wright & Schulte LLC
> 812 East National Road, Suite A
> Vandalia, Ohio 45377

> *Attorneys for Plaintiff*

6

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing PLAINTIFF'S ANSWERS TO

DEFENDANT'S THIRD SET OF INTERROGATORIES has been served on Liaison Counsel,

Russ Herman, Phillip Wittmann and Ann Oldfather, by U.S. Mail and e-mail or by hand delivery

and e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve

Advanced in accordance with Pre-Trial Order No. 8(B), and that the foregoing was electronically

filed with the Clerk of Court of the United States District Court for the Eastern District of

Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord

with the procedures established in MDL 1657 on this _14th_ day of _September_, 2012.


_____/S/_____
Joseph W. Steele
Kenneth D. Lougee
STEELE & BIGGS
5664 South Green Street
Salt Lake City, UT  84123

7

# EXHIBIT B

*This opinion is subject to revision before final
publication in the Pacific Reporter*

2012 UT 36

IN THE

## SUPREME COURT OF THE STATE OF UTAH

STATE OF UTAH,
*Plaintiff and Appellant,*
*v.*

Apotex Corporation, Baxter Healthcare Corporation, Boehringer
Ingelheim Corporation, Mallinckrodt Inc., CSL Behring, Forest
Laboratories, Inc., MORTON GROVE PHARMACEUTICALS, INC.,
Mutual Pharmaceutical Company, Inc., Novartis Pharmaceuticals
Corporation, Otsuka America, Inc., PFIZER, INC., Qualitest
Pharmaceuticals, Inc., Schering-Plough Corporation, Schwarz
Pharma USA Holdings, Inc., Taro Pharmaceuticals USA, Inc.,
Upsher-Smith, Inc., and Wyeth, Inc.,
*Defendants and Appellees.*

No. 20100257
Filed June 19, 2012

Third District, Salt Lake
The Honorable Tyrone E. Medley
No. 080907678

Attorneys:

Mark L. Shurtleff, Att'y Gen., Robert Steed, Asst. Att'y Gen.,
Roman Shaul, W. Daniel Dee Miles III, H. Clay Barnett III, J. Paul
Lynn, Timothy Robert Fielder, Special Asst. Att'ys Gen., David C.
Biggs, Joseph W. Steele, Salt Lake City, for plaintiff

Mathew A. Steward, Robert D. Andersen, Salt Lake City,
Frederick R. Ball, David I. Curkovic, Chicago, IL, for Morton
Grove Pharmaceuticals, Inc.

George M. Haley, Stephen M. Sansom, Salt Lake City, John C.
Dodds, Erica Smith-Klocek, Kathryn E. Potalivo, Scott A. Stempel,
Philadelphia, PA, for Pfizer, Inc.

JUSTICE DURHAM authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE NEHRING,
JUSTICE PARRISH, and JUSTICE LEE joined.

CHIEF JUSTICE DURHAM, opinion of the Court:

## INTRODUCTION

¶1      The State of Utah appeals the dismissal of its complaint
against seventeen pharmaceutical companies, which the State alleges

STATE OF UTAH *v.* APOTEX CORPORATION
Opinion of the Court

defrauded Utah's Medicaid program by reporting inflated drug prices. In its complaint, the State pursued two causes of action: violation of the Utah False Claims Act (UFCA) and fraudulent misrepresentation. After allowing the State to amend its complaint, the district court dismissed these claims with prejudice, based on three alternative grounds. It concluded first that the State had not pled its UFCA and fraudulent misrepresentation claims with particularity, as required by rule 9(b) of the Utah Rules of Civil Procedure. Second, the court held that the State's complaint failed to allege critical elements of its claims, warranting dismissal under rule 12(b)(6) of the Utah Rules of Civil Procedure. Finally, the court dismissed the State's UFCA cause of action for claims alleged to have arisen before April 30, 2006, because these claims were barred under a one-year statute of limitations.

¶2      We reverse in part and affirm in part the district court's order of dismissal.[1] First, we articulate the appropriate rule 9(b) standard for claims alleging a widespread scheme to commit fraud and submit false claims. Although the State's complaint is insufficiently particular under the standard we adopt today, we conclude that it is in the interest of justice to grant the State leave to amend its complaint under the new standard. Second, we hold that the district court erred in dismissing the State's claims under rule 12(b)(6) because the State alleged all elements of its causes of action. Finally, we affirm the district court's application of the one-year statute of limitations to the State's UFCA cause of action and its dismissal of those claims alleged to have arisen before April 30, 2006. Accordingly, we remand this case to the district court for proceedings consistent with this opinion.

## BACKGROUND

¶3      "On appeal from a motion to dismiss, we review the facts only as they are alleged in the complaint. We accept the factual allegations as true and draw all reasonable inferences from those facts in a light most favorable to the plaintiff." Peck v. State, 2008 UT 39, ¶ 2, 191 P.3d 4 (internal quotation marks omitted).

---

[1] The district court issued separate orders of dismissal because various defendants moved to dismiss the State's complaint or joined other defendants' motions. Our holdings today apply to each of the district court's orders, except for its order as to Boehringer Ingelheim Corporation (BIC). As discussed below, we affirm the court's dismissal of the State's claims against BIC.

¶4     In May 2008, the State of Utah filed a lawsuit against sev-
enteen pharmaceutical companies (Defendants).[2] The State alleged
that the Defendants had violated the UFCA and had committed
fraudulent misrepresentation when they engaged in a drug-pricing
scheme that resulted in overpayments from the state's Medicaid
program.

¶5     According to the State, the Defendants "knowingly, will-
fully, wantonly, and/or intentionally provided, or caused to be pro-
vided, false and inflated" drug-pricing information to third-party
reporting services. These reporting services then published price
indices for drugs, including their average wholesale prices (AWPs),
based on the information the Defendants had provided. Utah
Medicaid then used this published information in calculating reim-
bursements to Medicaid providers, such as pharmacies and physi-
cians, who dispensed the Defendants' drugs. Allegedly, as a result
of the Defendants' reporting of inflated drug prices to third-party
reporting services, Utah Medicaid significantly overpaid in its reim-
bursements to providers.[3]

¶6     In the district court, the Defendants moved to dismiss the
State's amended complaint, arguing that it had failed to plead its
UFCA and fraudulent misrepresentation claims with particularity,
as required under rule 9(b) of the Utah Rules of Civil Procedure, and
that it had failed to state a claim upon which relief could be granted
under rule 12(b)(6). The Defendants asserted that the complaint did
not "delineate each individual defendan[t's] alleged misconduct,
[did] not elaborate as to which defendant reported which false and
inflated prices and [did] not identify which defendant provided such
allegedly inflated pricing information to the 'industry reporting ser-
vices.'"

¶7     The district court concluded that the State had failed to
plead its fraud and UFCA claims with particularity. Despite this

---

[2] The original complaint, filed May 8, 2008, named Covidien Ltd.
as a defendant. The State amended its complaint the next month to
change Covidien to Mallinckrodt Inc.

[3] It is worth noting that at oral argument the State clarified that
the Defendants' goal in this alleged scheme was to increase the sales
and market share of their drugs. This is a common allegation in
drug-pricing litigation across the country. *See, e.g., In re Pharm. Indus.
Average Wholesale Price Litig.*, 491 F. Supp. 2d 20, 36 (D. Mass. 2007)
(explaining that providers have incentives to choose drugs with
inflated AWPs).

STATE OF UTAH *v.* APOTEX CORPORATION
Opinion of the Court

failure, the court granted the State leave to amend its complaint. It required the State to

> (1) identify the specific drug at issue; (2) identify the specific defendant involved in that drug's sale, manufacture or for which they provide prices . . .; (3) [identify] the allegedly false publication of that specific drug's pricing, to whom that publication was made and when; and (4) [identify] whether the State actually used or relied on the allegedly false pricing information which was reported in setting reimbursement rates.

In addition, with respect to defendant Boehringer Ingelheim Corp. (BIC), the court found that the State's complaint focused on BIC's subsidiaries, which were not named defendants and had not been served with process. It required the State to focus on BIC's "separate corporate existence and identify only those drugs for which BIC, and not its corporate subsidiaries, is legally responsible."

¶8      The State amended its complaint (Second Amended Complaint or Complaint), and the Defendants again moved for dismissal under rules 9(b) and 12(b)(6) of the Utah Rules of Civil Procedure. They argued that the State had ignored the district court's order by failing to particularize its allegations and by failing to allege critical elements of its causes of action. In addition, the Defendants contended that the statute of limitations had run on many of the State's claims under the UFCA. They noted that before April 30, 2007, the statute of limitations for claims under the UFCA was one year. *See* UTAH CODE § 78-12-29(3) (1998) (providing a one-year limitations period for actions "upon a statute . . . for a forfeiture or penalty to the state"). The legislature amended the UFCA to provide an extended limitations period, effective April 30, 2007. However, the Defendants argued that, even if the amended limitations period were retroactive, it could not work to revive claims that had expired under the one-year period.

¶9      For its part, BIC argued separately that the State had again lumped it in with its subsidiaries, who had still not been named as defendants or served with process. It noted that the Second Amended Complaint referred to them collectively as the "Boehringer Defendants."

¶10     In response, the State argued that the Complaint "vastly exceed[ed]" notice pleading requirements and that "[t]he Defendants know exactly what is at issue." The State contended that at-

Cite as: 2012 UT 36
Opinion of the Court

tached to the Second Amended Complaint was an exhibit listing the
specific drugs at issue (Exhibit A). It also defended its use of general
allegations against the Defendants because all had engaged in a
uniform practice of reporting false and fictitious prices. Alterna-
tively, the State argued that either rule 9(b) should not apply to its
UFCA cause of action because it was distinct from fraud, or the dis-
trict court should apply a relaxed rule 9(b) standard. With respect to
the Defendants' statute of limitations argument, the State argued
only that the 2007 amendment lengthening the statute of limitations
was retroactive and therefore applied to its UFCA cause of action.

¶11    The district court granted the Defendants' motion to dis-
miss the State's Complaint with prejudice on three alternative
grounds. It concluded that (1) the State's UFCA and fraudulent mis-
representation claims lacked particularity under rule 9(b); (2) the
State had failed to provide critical elements of its claims, as required
by rule 12(b)(6); and (3) the State's UFCA cause of action for conduct
before April 30, 2006, was barred by the one-year statute of limita-
tions.

¶12    With respect to rule 9(b), the court concluded that the rule
applies to UFCA claims and that a relaxed standard was not war-
ranted. It also found that the State had "failed to identify each defen-
dant's allegedly fraudulent misrepresentations and [UFCA] viola-
tions with particularity" but instead offered only "broad conjecture"
of alleged false or fraudulent statements that the Defendants made
as a group. The court further rejected Exhibit A as being too general
and for failing to identify "the allegedly false publication of each
specific drug's pricing, to whom that publication was made and
when."

¶13    The district court alternatively dismissed the Second
Amended Complaint under rule 12(b)(6), concluding that the State
not only failed to plead its claims with particularity, but that it "also
failed to allege fundamental elements of . . . fraudulent misrepresen-
tation and for relief under the Utah False Claims Act."

¶14    On the statute of limitations issue, the court concluded that
before the 2007 amendments to the UFCA, the applicable limitations
period was one year. *See Id.* ("An action may be brought within one
year . . . upon a statute . . . for a forfeiture or penalty to the state.").
Although the amendments expanded the limitations period and
expressly provided for the new limitations period to be retroactive,
the court held that "[t]he retroactive application of the amended
statute of limitations provision cannot operate to revive claims that
were already time-barred under the prior version of the statute."

5

STATE OF UTAH *v.* APOTEX CORPORATION
Opinion of the Court

The court therefore dismissed with prejudice the UFCA claims that the State alleged to have occurred before April 30, 2006—one year before the effective date of the UFCA amendments.

¶15    The State appealed the district court's dismissal of the Second Amended Complaint to this court. We have jurisdiction under section 78A-3-102(3)(j) of the Utah Code.

## STANDARD OF REVIEW

¶16    "We review the grant of a motion to dismiss for correctness, granting no deference to the decision of the district court." *Hudgens v. Prosper, Inc.*, 2010 UT 68, ¶ 14, 243 P.3d 1275.

## ANALYSIS

¶17    The State appeals the district court's dismissal of its Second Amended Complaint. First, it argues that the court erred when it held that the State failed to plead its claims with particularity under rule 9(b) of the Utah Rules of Civil Procedure. Second, the State argues that it pled all the elements of its UFCA and fraudulent misrepresentation claims, and thus dismissal of the claims under rule 12(b)(6) was inappropriate. Finally, the State argues that the district court erred in applying the one-year statute of limitations for causes of action "upon a statute . . . for a forfeiture or penalty to the state." UTAH CODE § 78-12-29(3) (1998). It asserts that the amended UFCA provides a longer, retroactive limitations period that should apply. Also, the State contends that if the one-year period does apply, it affects only *penalties* under the UFCA, not the remedies of restitution and costs of enforcement under the Act.

### I. RULE 9(b)

¶18    The district court dismissed the State's fraudulent misrepresentation and UFCA claims as insufficiently pled under rule 9(b) of the Utah Rules of Civil Procedure. On appeal, the State makes a threshold argument that the court erred because rule 9(b) does not apply to claims brought under the UFCA. Alternatively, it argues that the court erred because the Second Amended Complaint was sufficiently particular in pleading the UFCA and fraudulent misrepresentation causes of action. We address these arguments in turn.

#### A. Rule 9(b) and the UFCA

¶19    The district court held that rule 9(b) applies to claims under the UFCA and denied the State's request to apply a relaxed 9(b) standard. On appeal, the State argues that rule 9(b) does not apply to UFCA causes of action because the Act does not require fraudulent intent, but rather the knowing submission of a false claim.

6

Cite as: 2012 UT 36
Opinion of the Court

¶20    We affirm the district court's conclusion that rule 9(b) applies to causes of action under the UFCA. However, we hold that a relaxed standard is appropriate where a plaintiff asserts a widespread fraudulent scheme that involves the submission of many false claims over a lengthy period. Under this standard, if it would be impossible or unwieldy to allege the details of every false claim submitted, a plaintiff may still satisfy rule 9(b)'s particularity requirement by alleging the details of the fraudulent scheme with particularity and by providing "reliable indicia that lead to a strong inference that [false] claims were actually submitted." *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 190 (5th Cir. 2009). In this respect, our analysis of rule 9(b)'s application to the State's UFCA cause of action differs from the district court's, and we reject its reasoning to the extent that it conflicts with the standard articulated in this opinion.

¶21    Rule 9(b) of the Utah Rules of Civil Procedure provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Under this standard, a complaint cannot survive dismissal by pleading "mere conclusory allegations . . . unsupported by a recitation of relevant surrounding facts." *Chapman ex rel. Chapman v. Primary Children's Hosp.*, 784 P.2d 1181, 1186 (Utah 1989); *see also Armed Forces Ins. Exch. v. Harrison*, 2003 UT 14, ¶ 16, 70 P.3d 35 ("[T]he mere recitation by a plaintiff of the elements of fraud in a complaint does not satisfy the particularity requirement."). However, "a sufficiently clear and specific description of the facts underlying the [plaintiff's] claim of [fraud] will satisfy the requirements of rule 9(b)." *Hill v. Allred*, 2001 UT 16, ¶ 14, 28 P.3d 1271 (first alteration in original) (internal quotation marks omitted).

¶22    Rule 9(b) also is not limited to allegations of common law fraud. *Williams v. State Farm Ins. Co.*, 656 P.2d 966, 972 (Utah 1982). Rather, its purpose "dictates that it reach all circumstances where the pleader alleges the kind of misrepresentations, omissions, or other deceptions covered by the term 'fraud' in its *broadest dimension*." *Id.* (emphasis added).

¶23    Our application of rule 9(b) to "deceptions covered by the term 'fraud' in its broadest dimension" supports the extension of the particularity requirement to claims brought under the UFCA. This extension is not unique. Every federal circuit court to consider the issue has concluded that claims brought under the federal False Claims Act (FCA) must be pled with particularity under rule 9(b) of

7

STATE OF UTAH *v.* APOTEX CORPORATION
Opinion of the Court

the Federal Rules of Civil Procedure.[4] The basis for requiring particularity in federal pleadings is that "the False Claims Act is self-evidently an anti-fraud statute." *U.S. ex rel. Totten v. Bombardier Corp.*, 286 F.3d 542, 551 (D.C. Cir. 2002). A few state courts also have considered the issue with respect to state FCA claims and have determined that such claims must be pled with particularity.[5] *See, e.g., State ex rel. McCann v. Bank of Am., N.A.*, 120 Cal. Rptr. 3d 204, 210 (Cal. Ct. App. 2011) ("As in any action sounding in fraud, the allegations of a [California Fraudulent Claims Act] complaint must be pleaded with particularity." (internal quotation marks omitted)); *State ex rel. Grupp v. DHL Express (USA), Inc.*, 907 N.Y.S.2d 772, 782–83 (Sup. Ct. 2010) (applying New York's version of rule 9(b) requiring pleading of facts "sufficient to permit a reasonable inference of the alleged conduct"), *rev'd on other grounds,* 922 N.Y.S.2d 888 (App. Div. 2011).

---

[4] *See U.S. ex rel. Gagne v. City of Worcester*, 565 F.3d 40, 45 (1st Cir. 2009); *Gold v. Morrison-Knudsen Co.*, 68 F.3d 1475, 1476–77 (2d Cir. 1995); *U.S. ex rel. Schmidt v. Zimmer, Inc.*, 386 F.3d 235, 242 n.9 (3d Cir. 2004); *U.S. ex rel. Godfrey v. KBR, Inc.*, 360 F. App'x 407, 410 (4th Cir. 2010); *Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009); *U.S. ex rel. Snapp, Inc. v. Ford Motor Co.*, 618 F.3d 505, 512–13 (6th Cir. 2010); *U.S. ex rel. Gross v. AIDS Research Alliance-Chicago*, 415 F.3d 601, 604 (7th Cir. 2005); *U.S. ex rel. Roop v. Hypoguard USA, Inc.*, 559 F.3d 818, 822 (8th Cir. 2009); *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010); *U.S. ex rel. Lemmon v. Envirocare of Utah, Inc.*, 614 F.3d 1163, 1171 (10th Cir. 2010); *Hopper v. Solvay Pharm., Inc.*, 588 F.3d 1318, 1324 (11th Cir. 2009); *U.S. ex rel. Totten v. Bombardier Corp.*, 286 F.3d 542, 551 (D.C. Cir. 2002).

[5] The State cites only one case to the contrary. The Court of Chancery of Delaware held in *State ex rel. Brady v. Publishers Clearing House* that the "remedial goals" of the Delaware Consumer Fraud Act and the Delaware Uniform Deceptive Trade Practices Act were "inconsistent with the application of the particularized pleading requirements of Rule 9(b) to enforcement actions brought by the Attorney General to protect the consuming public." 787 A.2d 111, 117 (Del. Ch. 2001). The authority of this case is questionable, however, and we decline to follow it. *See Sammons v. Hartford Underwriters Ins. Co.*, CIV.A.S09C-12-026RFS, 2010 WL 1267222 (Del. Super. Ct. Apr. 1, 2010) (distinguishing *Publishers Clearing House* and holding that "Rule 9(b) pleading requirements apply to actions brought under the [Delaware Consumer Fraud Act]").

Cite as: 2012 UT 36
Opinion of the Court

¶24    The clearest support for applying rule 9(b) to this case, however, comes from the "massive, decade-long, nationwide, multi-district class action against thirteen pharmaceutical companies . . . involv[ing] the pricing of pharmaceutical drugs reimbursed by Medicare," which is still pending before the U.S. District Court for the District of Massachusetts. *In re Pharm. Indus. Average Wholesale Price Litig.*, 277 F.R.D. 52, 55 (D. Mass. 2011). In that litigation, containing claims similar to those in this case, the federal court has consistently required plaintiffs to satisfy rule 9(b)'s particularity requirement in pursuing claims under the federal FCA. *See, e.g., In re Pharm. Indus. Average Wholesale Price Litig.*, 478 F. Supp. 2d 164, 171 (D. Mass. 2007).

¶25    Being persuaded by the wisdom of the virtually unanimous authority on this question, we hold that rule 9(b) of the Utah Rules of Civil Procedure applies to pleading causes of action under the UFCA. This conclusion is in accord with the conclusions of other courts on the subject and is in line with our precedent applying rule 9(b) to claims of fraud, as that term is used in its "broadest dimension." *Williams*, 656 P.2d at 972.

¶26    Having concluded that rule 9(b) applies to claims under the UFCA, we still must determine what degree of particularity is required in circumstances such as these. Although courts have been in agreement that FCA claims must satisfy rule 9(b), their description of the degree of particularity required is less cohesive. The general rule is that an FCA claim "must specify the time, place, and content of [the] alleged false representation," as well as the entity that relayed the alleged false claim. *U.S. ex rel. Gagne v. City of Worcester*, 565 F.3d 40, 45 (1st Cir. 2009) (internal quotation marks omitted). "These facts are often referred to as the 'who, what, when, where, and how' of the alleged fraud." *U.S. ex rel. Godfrey v. KBR, Inc.*, 360 F. App'x 407, 410 (4th Cir. 2010) (internal quotation marks omitted).

¶27    This standard is applicable in most instances, but it "is not a straitjacket for Rule 9(b)." *Kanneganti*, 565 F.3d at 190. "Rather, the rule is context specific and flexible and must remain so to achieve the remedial purpose" of the UFCA. *Id.* At times, the breadth of an alleged scheme warrants a more lenient application of rule 9(b). *See U.S. ex rel. Harris v. Bernad*, 275 F. Supp. 2d 1, 7–8 (D.D.C. 2003). For example, "where the alleged fraudulent scheme involved numerous transactions that occurred over a long period of time, courts have found it impractical to require the plaintiff to plead the specifics with respect to each and every instance of fraudulent conduct." *In re Cardiac Devices Qui Tam Litig.*, 221 F.R.D. 318, 333 (D. Conn. 2004). Additionally, "Rule 9(b)'s heightened pleading standard may be applied

less stringently when the specific factual information is peculiarly within the defendant's knowledge or control." *Id.* at 334.

¶28     We agree with those courts that take a flexible approach to the application of rule 9(b) to FCA claims, with consideration given to the breadth of the alleged fraudulent scheme and the defendant's control over the factual information necessary to plead fraud with particularity. Under this approach, plaintiffs may not pursue a "guilt-by-association" method of pleading. *See In re Pharm. Indus. Average Wholesale Price Litig.*, 307 F. Supp. 2d 196, 209 (D. Mass. 2004). But plaintiffs need not plead every instance and detail of every false claim allegedly part of a widespread fraudulent scheme. The fraudulent nature of a false claim may be "harbored in the scheme" itself, rendering the pleading of the "who, what, when, where, and how" of each false claim overly burdensome for plaintiffs and not particularly helpful in notifying defendants of the plaintiffs' theory. *See Kanneganti*, 565 F.3d at 190.

¶29     We therefore agree with the rule announced by the U.S. Courts of Appeal for the Fifth and Ninth Circuits that "if [a plaintiff] cannot allege the details of an actually submitted false claim, [the plaintiff] may nevertheless survive [rule 9(b)] by alleging particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted" by each defendant. *Id.*; *accord Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998–99 (9th Cir.), *cert. denied*, 131 S. Ct. 801 (U.S. 2010); *see also U.S. ex rel. Lemmon v. Envirocare of Utah, Inc.*, 614 F.3d 1163, 1172 (10th Cir. 2010) ("[C]laims under the FCA need only show the specifics of a fraudulent scheme and provide an adequate basis for a reasonable inference that false claims were submitted as part of that scheme." (citing *Kanneganti*, 565 F.3d at 190)).

¶30     We see no reason that this standard should not also apply to claims of fraudulent misrepresentation that allege a widespread fraudulent scheme and many misrepresentations over a lengthy period. As noted above, the fraud is often "harbored in the scheme" itself. *Kanneganti*, 565 F.3d at 190. Indeed, "[i]t is the scheme in which particular circumstances constituting fraud may be found that make it highly likely the fraud was consummated." *Id.* In rare circumstances such as these—asserting fraud over the course of many years and countless misrepresentations—a more flexible approach to rule 9(b) is useful and sufficient.

### B. Particularity of the Second Amended Complaint

¶31     In light of this standard, we now assess the particularity of the State's UFCA and fraudulent misrepresentation claims. We con-

Cite as: 2012 UT 36
Opinion of the Court

clude that the Second Amended Complaint alleges with sufficient particularity a widespread scheme to submit false claims and to engage in fraudulent misrepresentations. However, the Complaint does not describe nor reference reliable indicia that lead to a strong inference that any Defendant actually submitted false claims or engaged in fraudulent misrepresentation. Nevertheless, because we had yet to adopt the standard articulated in this opinion at the time the State filed its Second Amended Complaint, and because the district court applied stricter requirements than those we adopt today, we direct the district court on remand to grant the State leave to amend the Complaint to comply with our standard.

¶32    We begin by addressing the district court's conclusion that the "level of detail and particularized allegations of a scheme are lacking in this case." We disagree. Although we do not recite here the State's allegations in detail, we note that the Complaint alleges the following basic scheme: (1) over the course of fifteen years, the Defendants knowingly or willfully provided inflated or fictitious drug-pricing data to third-party reporting services; (2) Utah Medicaid used this pricing data and relied upon it to determine reimbursements to Medicaid providers for brand-name and generic drugs; (3) because the Defendants reported inflated drug-pricing data, Utah Medicaid grossly overpaid its providers; and (4) Utah Medicaid's overpayment to providers directly benefited the Defendants. In our view, these basic allegations notify the Defendants with sufficient particularity of what the State is alleging with respect to its UFCA and fraudulent misrepresentation claims. These are not "conclusory allegations" devoid of "relevant surrounding facts." *Chapman*, 784 P.2d at 1186.

¶33    It appears that the district court was most concerned with the Complaint's lack of particularity regarding individual false claims and fraudulent misrepresentations concerning specific drugs and defendants. In its order, the court held that the State must plead facts "such as the time, place, and contents, of false misrepresentations, as well as the identity of the person making the misrepresentation." It also found the State's "failure to identify the allegedly false publication of each specific drug's pricing, to whom that publication was made and when, render[ed] the Second Amended Complaint fatally deficient and unspecific." These requirements were too onerous. As discussed above, the "who, what, when, where, and how" standard is not a "straitjacket" for applying rule 9(b), *Kanneganti*, 565 F.3d at 190, and the relaxed standard adopted in this opinion is more appropriate in circumstances of alleged widespread fraud and false claims.

STATE OF UTAH *v.* APOTEX CORPORATION
Opinion of the Court

¶34     We do agree with some of the district court's observations, however. It rightly noted that "the Second Amended Complaint merely offers broad conjecture with respect to statements and/or claims that were allegedly false or fraudulent and that were made by the [D]efendants as a group." It also was correct in rejecting the State's Exhibit A, which purported to list the drugs at issue. We agree that Exhibit A "contains drugs that the defendants did not manufacture and products that are referenced only by their chemical compounds" and that it falls "far short of the applicable pleading requirements."

¶35     In sum, the district court erred to the extent that it required the State to provide detailed information on every false claim submitted or fraudulent misrepresentation made. Rather, the State was required to provide "reliable indicia that lead to a strong inference that [false] claims were actually submitted" by each defendant or that fraudulent misrepresentations were made. *See Kanneganti*, 565 F.3d at 190. Courts have looked to various factors to determine whether a strong inference of fraud is present, including "factual or statistical evidence to strengthen the inference of fraud beyond possibility," *U.S. ex rel. Duxbury v. Ortho Biotech Prods., L.P.*, 579 F.3d 13, 29 (1st Cir. 2009) (internal quotation marks omitted); "representative examples" of alleged false claims, *Mason v. Medline Indus., Inc.*, 731 F. Supp. 2d 730, 735 (N.D. Ill. 2010); and "government investigations" of a defendant, *In re Pharm. Indus. Average Wholesale Price Litig.*, 307 F. Supp. 2d at 208. That is not to say that a plaintiff must provide all this information or that this information will always provide reliable indicia that false claims and misrepresentations were made. Rather, the plaintiff must provide an adequate basis for a court to infer that each defendant submitted false claims or made fraudulent misrepresentations as part of a fraudulent scheme.

¶36     Although we find the district court's requirement of particularity to be too burdensome, we also conclude that the State failed in its Complaint to provide reliable indicia that could lead a court to infer that false claims or fraudulent misrepresentations were actually made. From the Second Amended Complaint and the State's appellate briefs, it appears that the State's argument is as follows: pharmaceutical companies across the country have reported fictitious drug-pricing data, knowing it would be used in the calculation of state Medicaid reimbursements; the Defendants are pharmaceutical companies; ergo, the Defendants reported fictitious drug-pricing data, knowing it would be used in Utah's Medicaid reimbursements. This syllogism not only fails as a matter of logic, but it also provides no

particularity supporting claims of fraud and the submission of false claims by any given defendant. It instead relies on guilt by association. *See id.* at 209.

¶37    The State has provided no factual or statistical evidence supporting a strong inference that any defendant committed fraud or submitted false claims. It has provided no information regarding government investigations of any defendant. And, most troublesome, it has provided no representative examples of any defendant submitting a false claim or making a fraudulent misrepresentation. Although representative examples are "not mandatory . . . such examples would go a long way in providing the necessary particularity under Rule 9(b)." *Frazier ex rel. U.S. v. Iasis Healthcare Corp.*, 392 F. App'x 535, 537 (9th Cir. 2010) (mem.).[6]

¶38    Moreover, we have reviewed a number of complaints from average wholesale price litigation in other jurisdictions. Many of the complaints filed in other states include exhibits listing (1) the national drug codes (NDCs) and names of the drugs at issue; (2) examples of the published, allegedly false AWPs of the drugs; (3) examples of the actual market prices for each drug; and (4) the spread between the actual market prices and the published AWPs. The State provided no such information in the Second Amended Complaint.[7]

¶39    In sum, we agree with the State that the district court erred in its strict application of rule 9(b). But we disagree that the Second Amended Complaint is sufficiently particular under a relaxed standard. Because we have never articulated the standard set forth in this opinion, however, we think it appropriate and in the interest of justice to grant the State leave to amend the Complaint in an attempt

---

[6] Some courts have required plaintiffs, at a minimum, to provide representative examples of false claims submitted to the government. *See, e.g., U.S. ex rel. Wilkins v. United Health Grp., Inc.*, 659 F.3d 295, 308 (3d Cir. 2011); *Ford Motor Co.*, 618 F.3d at 513; *Hypoguard USA, Inc.*, 559 F.3d at 822; *Mason*, 731 F. Supp. 2d at 735. We decline to adopt a per se rule that representative examples are required under rule 9(b), but endorse their use as helpful in establishing the requisite particularity.

[7] This lack of detail is in contrast to another of the State's complaints filed in Utah against pharmaceutical companies. *See* Compl. at Ex. A, *State v. Actavis*, No. 070913719 (Utah Dist. Ct. Sept. 21, 2007) (listing manufacturers, NDCs, drug names, published AWPs, actual AWPs, and the percent difference between published and actual AWPs).

STATE OF UTAH *v.* APOTEX CORPORATION
Opinion of the Court

to comply with the now-clarified standard. *See* UTAH R. CIV. P. 15(a)
("[A] party may amend his pleading only by leave of court or by
written consent of the adverse party; and leave shall be freely given
when justice so requires."). At a minimum, the State must notify the
Defendants which of their drugs are at issue and provide the NDCs
of the drugs the State believes are the subject of its claims. Further,
the State must provide reliable indicia that would lead to a strong
inference that each Defendant actually made false claims and fraud-
ulent misrepresentations. Whatever the indicia—representative
examples, statistical evidence, criminal investigations, etc.—the State
must particularize its claims with respect to *each* Defendant.

¶40    Accordingly, we reverse the district court's dismissal of the
State's Complaint under rule 9(b) and direct it to grant the State
leave to amend the Complaint in accordance with this opinion.

## II. RULE 12(b)(6)

¶41    As an alternative basis for dismissal, the district court held
that the Second Amended Complaint did not satisfy rule 12(b)(6) of
the Utah Rules of Civil Procedure. It concluded that the State failed
to plead fundamental elements of its UFCA and fraudulent misrep-
resentation claims. On appeal, the State argues that it pled all re-
quired elements of its claims.

¶42    Under rule 12(b)(6) of the Utah Rules of Civil Procedure,
a district court may dismiss a complaint for "failure to state a claim
upon which relief can be granted." "A Rule 12(b)(6) motion to dis-
miss admits the facts alleged in the complaint but challenges the
plaintiff's right to relief based on those facts." *Oakwood Vill. LLC v.
Albertsons, Inc.*, 2004 UT 101, ¶ 8, 104 P.3d 1226 (internal quotation
marks omitted). Additionally, "our inquiry is concerned solely with
the sufficiency of the pleadings, and not the underlying merits of the
case." *Id.* (alterations in original) (internal quotation marks omitted).

¶43    With this standard in mind, we address the State's UFCA
and fraudulent misrepresentation claims and conclude that the dis-
trict court erred in dismissing these claims under rule 12(b)(6) of the
Utah Rules of Civil Procedure.

### A. UFCA

¶44    In the Second Amended Complaint, the State alleges that
the Defendants violated sections 26-20-3, 26-20-4, and 26-20-7 of the
Utah Code. In the district court's rule 12(b)(6) dismissal of the State's
UFCA claims, the court did not distinguish among these statutory
provisions. Rather, it made a few general observations about the
Second Amended Complaint. For example, the court noted that,

14

according to a document from the Utah Department of Health's Division of Health Finance, the State knew in 1999 that "acquisition costs for generic drugs [were] 60.1% below AWP and that AWP does not in fact reflect market prices." Accordingly, the court held that the State could not fulfill two elements of its UFCA claims—namely, that the Defendants knowingly made false claims and that the State was deceived by the published drug-pricing data.

¶45    With respect to this conclusion, the district court inappropriately relied on information that went to the merits of the State's claims, rather than taking the allegations in the Second Amended Complaint as true. Moreover, if the Department of Health information had been appropriate for the court to consider, the information speaks to the *State's* knowledge, whereas the UFCA provisions focus on a *defendant's* knowing submission of false claims. The district court's discussion of deception also was error because the UFCA rovisions at issue do not include an element of *deception*, but rather require allegations that false claims were made knowingly.[8] UTAH CODE § 26-20-9.5(1).

¶46    We conclude that the district court conflated and confused elements of the UFCA provisions at issue and failed to address the State's actual allegations. We therefore assess the elements of each of the three UFCA provisions listed in the Second Amended Complaint, as well as the State's corresponding allegations.

*1. Utah Code Section 26-20-3*

¶47    Section 26-20-3(2) provides that "[a] person may not make or cause to be made a false statement or false representation of a material fact for use in determining rights to a medical benefit." The UFCA defines "medical benefit" as "a benefit paid or payable to a recipient or a provider . . . under any programs for medical assistance of the state." *Id.* § 26-20-2(5)(d). Additionally, a "person" includes individuals and business entities. *Id.* § 26-20-2(6).[9]

---

    [8] We note that before the UFCA's amendments in 2007, a "false statement" was defined as "a statement . . . which is knowingly and *willfully* made." UTAH CODE § 26-20-2(2) (2006) (emphasis added). Even for claims occurring before the amendments, however, "deception" was never an element of the State's UFCA claims.

    [9] With respect to section 26-20-3, the only notable difference between the pre-amended version of the UFCA and the amended version of the UFCA is its definition of "false statement" and "false representation." Prior to the 2007 amendments, each term was
(continued...)

15

STATE OF UTAH *v.* APOTEX CORPORATION
Opinion of the Court

¶48    In the Second Amended Complaint, the State alleged that each Defendant made or caused to be made false publications of drug-pricing information, which was then used in Utah Medicaid's reimbursement calculus for brand-name and generic drugs. These allegations meet section 26-20-3(2)'s elements of "mak[ing] or caus[ing] to be made a false statement or false representation." The State also alleged the materiality of this information and its use in the determination of reimbursements to Medicaid providers, which would constitute a "medical benefit" under the statute.[10]

¶49    Accordingly, the district court erred when it concluded that the State failed to state a claim upon which relief could be granted with respect to section 26-20-3 of the Utah Code.

*2. Section 26-20-4*

¶50    Under section 26-20-4, "[a] person may not solicit, offer, pay, or receive a kickback or bribe in return for . . . the purchasing . . . or ordering of any goods . . . for which payment is or may be made . . . pursuant to a medical benefit program." *Id.* § 26-20-4(2)(a). A kickback or bribe "includes rebates, compensation, or any other

---

[9] (...continued)
defined as "a statement or representation which is knowingly and *willfully* made if the person making the statement or representation has knowledge of the falsity thereof." *Id.* § 26-20-2(2) (2006) (emphasis added). After the amendments, the terms were defined as any "wholly or partially untrue statement or representation which is: (a) knowingly made; and (b) a material fact with respect to the claim." *Id.* § 26-20-2(3) (2007). The knowing/willful distinction is immaterial for the State's UFCA allegations, however, because it pled in the Complaint that the "Defendants knowingly, willfully, wantonly, and/or intentionally provided" the false drug-pricing information and that the Defendants knew the pricing information was false.

[10] The district court appears to have misread the UFCA's use of the term "medical benefit." It found that the Complaint lacked "allegations concerning the benefit which the defendants derived directly from the State," ostensibly because Medicaid paid reimbursements to its *providers*, not the Defendants. But the statute does not require that the Defendants benefit from the scheme or receive a medical benefit; it requires that the false information be used in "determining rights to a *medical benefit.*" *Id.* § 26-20-3(2) (emphasis added). Moreover, a "medical benefit" is "a benefit paid or payable to a recipient or a *provider.*" *Id.* § 26-20-2(5) (emphasis added).

Cite as: 2012 UT 36
Opinion of the Court

form of remuneration which is: (i) direct or indirect; (ii) overt or covert; or (iii) in cash or in kind." *Id.* § 26-20-4.

¶51    The Second Amended Complaint states that the "Defendants used undisclosed discounts, rebates and other inducements, which had the effect of lowering the actual wholesale or retail prices paid by wholesalers and retailers as compared to the reported prices." The State therefore alleged that the Defendants offered kickbacks—in the form of rebates—in accordance with the statute. The object of the kickbacks was the Defendants' pharmaceutical drugs, which constitute "goods" under the statute. Finally, the State alleged throughout the Complaint that Utah Medicaid issued reimbursements for the Defendants' drugs. This constitutes "payment . . . pursuant to a medical benefit program."

¶52    Accordingly, the district court erred when it concluded that the State failed to state a claim upon which relief could be granted with respect to section 26-20-4 of the Utah Code.

*3. Section 26-20-7*

¶53    Finally, under section 26-20-7, "[a] person may not make or present or cause to be made or presented to an employee or officer of the state a claim for a medical benefit" that "is wholly or partially false, fictitious, or fraudulent"[11] or that "represent[s] charges at a higher rate than those charged by the provider to the general public." *Id.* § 26-20-7(1)(a), (d).

¶54    As discussed above, the State clearly pled that the Defendants "cause[d] to be made or presented" to Utah Medicaid false or fictitious drug-pricing data by reporting inflated prices to third-party reporting services. It further pled that the Defendants knew the pricing data was "wholly or partially false, fictitious, or fraudulent" and that the pricing data it presented to third-party reporting services was at "a higher rate" than the Defendants charged to Medicaid providers. These allegations fit the elements of section 26-20-7.

¶55    Accordingly, the district court erred when it concluded that the State failed to state a claim upon which relief could be granted with respect to section 26-20-7 of the Utah Code.

---

[11] The pre-amendment version of the statute provided that "[n]o person may make or present or cause to be made or presented to an employee or officer of the state a claim for a medical benefit, knowing the claim to be false, fictitious, or fraudulent." *Id.* § 26-20-7(1) (2006). Our analysis applies equally to this version of the statute.

17

STATE OF UTAH *v.* APOTEX CORPORATION
Opinion of the Court

¶56    In sum, we hold that the district court erred in dismissing the State's UFCA claims under rule 12(b)(6) of the Utah Rules of Civil Procedure.

### B. Fraudulent Misrepresentation

¶57    The district court also dismissed the State's fraudulent misrepresentation claims, stating that its findings regarding the Complaint's lack of particularity "appl[ied] equally to its analysis under Rule 12(b)(6)" and that the state had "failed to allege fundamental elements of common law fraudulent misrepresentation." Because we addressed the particularity of the Second Amended Complaint above, we address only the district court's determination that the Complaint fails to allege fundamental elements of fraudulent misrepresentation. In doing so, we conclude that the Complaint satisfies rule 12(b)(6).

¶58    To state a claim for fraudulent misrepresentation, a plaintiff must allege

> (1) that a representation was made
> (2) concerning a presently existing material fact
> (3) which was false and (4) which the representor either (a) knew to be false or (b) made recklessly, knowing that there was insufficient knowledge upon which to base such a representation, (5) for the purpose of inducing the other party to act upon it and (6) that the other party, acting reasonably and in ignorance of its falsity, (7) did in fact rely upon it (8) and was thereby induced to act (9) to that party's injury and damage.

*Armed Forces Ins. Exch. v. Harrison*, 2003 UT 14, ¶ 16, 70 P.3d 35. (internal quotation marks omitted).

¶59    The Second Amended Complaint contains allegations that satisfy these nine elements. It alleges (1) that the Defendants reported or caused to be reported drug-pricing information to third-party reporting services; (2) the pricing information was presently existing; (3) it was false or fictitious; (4) the Defendants knew the information to be false; (5) the Defendants intended that the State would rely upon this reported information in determining Medicaid reimbursements and that the Defendants would benefit from reporting this false information; (6) "Utah Medicaid reasonably relied on the false pricing data in setting prescription drug reimbursement rates," as dictated by statutory and regulatory guidelines, and did not know of the falsity of the Defendants' data; (7) Utah Medicaid did in fact rely on the Defendants' data in reimbursing providers; (8)

Cite as: 2012 UT 36
Opinion of the Court

Medicaid was induced to do so by Defendants' false data; and (9) the State was injured by vastly overpaying claims. These allegations were sufficient to state a claim of fraudulent misrepresentation.

¶60   The district court faulted the Second Amended Complaint for not pleading "how the individual defendant[s'] actions led the State to set its reimbursement rates or how it acted in reasonable reliance on the pricing information." The court relied again on the publication from the Department of Health regarding AWPs, stating that the State's "inability to plead reasonable reliance may be explained by its public acknowledgment in 1999 that it understood the actual acquisition costs for generic drugs [were] 60.1% below AWP and that AWP does not in fact reflect market prices."

¶61   We reject this analysis for two reasons. First, the State clearly pled that it reasonably relied on the pricing information provided by Defendants to the reporting services. This reasonable reliance is underscored by the State's allegations that it was required to follow statutory and regulatory guidelines in calculating reimbursements, and that AWPs were relevant each and every time the State made such calculations. Second, the district court's consideration of an article from the Department of Health on the issue of "reasonable reliance" was procedurally inappropriate. It is true, as the district court noted, that items of public record will not convert rule 12(b)(6) motions to motions for summary judgment under rule 56. *Alvarez v. Galetka*, 933 P.2d 987, 990 n.6 (Utah 1997). However, taking this information into consideration on the fact-sensitive topic of reliance and the State's knowledge of inflated AWPs went beyond the bounds of judging the Complaint on its face and went to the merits of the State's factual allegations.

¶62   We hold that the Second Amended Complaint adequately pled the required elements of fraudulent misrepresentation. We therefore reverse the district court's dismissal of the State's fraudulent misrepresentation cause of action under rule 12(b)(6) of the Utah Rules of Civil Procedure.

III. STATUTE OF LIMITATIONS

¶63   The State also asserts that the district court erred in applying a one-year statute of limitations to its UFCA cause of action and dismissing all the State's UFCA claims alleged to have occurred before April 30, 2006. The State contends that amendments to the UFCA in 2007 created a longer limitations period and that the legislature expressly made this provision retroactive; thus, the new limitations period should apply. Alternatively, the State argues that the one-year statute of limitations, which applies to causes of action

19

STATE OF UTAH *v.* APOTEX CORPORATION
Opinion of the Court

"upon a statute . . . for a . . . penalty to the state" does not apply to its claims for restitution and costs of enforcement under the UFCA.[12]

¶64     We affirm the district court's conclusion that the one-year statute of limitations for actions "upon a statute . . . for a forfeiture or penalty to the state" applies to the State's UFCA cause of action, and affirm the court's dismissal of those claims alleged to have arisen before April 30, 2006. This conclusion is grounded in our recognition that once a cause of action expires, it may not be revived by statutory enactment. In addition, we reject the State's argument that its UFCA cause of action also seeks restitution and the costs of enforcement, to which the one-year limitations period is inapplicable. This question was unpreserved and fails on the merits.

¶65     Prior to the legislature's amendments to the UFCA in 2007, the Act contained no specific statute of limitations. The UFCA did contain a "civil penalties" provision, *id.* § 26-30-9.5 (2006), and Utah Code section 78-12-29(3) provided that "[a]n action may be brought within one year . . . upon a statute . . . for a forfeiture or penalty to the state."

¶66     In 2007, the legislature amended the UFCA to provide that

> [a]n action under this chapter may not be brought after the later of:
>
> (a) six years after the date on which the violation was committed; or
>
> (b) three years after the date an official of the state charged with responsibility to act in the circumstances discovers the violation, but in no event more than ten years after the date on which the violation was committed.

---

[12] On appeal, the State also argues that different statutes of limitation govern its UFCA claims: a four-year period under the "catch all" statute of limitations, *see* UTAH CODE § 78B-2-307(3), or a six-year period for actions brought "upon any contract, obligation or liability founded upon an instrument in writing," *see id.* § 78B-2-309(2). The State did not preserve these issues below. Instead, its briefing argued solely for the retroactive application of the amended UFCA's statute of limitations. We could locate only a fleeting mention of the four-year "catch all" provision, which occurred during oral argument on the Defendants' motion to dismiss the *first amended complaint*. This was insufficient to preserve the issue for our review.

20

*Id.* § 26-20-15(1). The amendments also provided that "[a] civil action brought under this chapter may be brought for acts occurring prior to the effective date of this section if the limitations period . . . has not lapsed." *Id.* § 26-20-15(2). The effective date of the amendment was April 30, 2007.

¶67    The State argues that the plain language of the amended UFCA applies the new statute of limitations period retroactively to "acts occurring prior to" April 30, 2007, and thus the one-year statute of limitations is irrelevant. We disagree. The amended UFCA cannot resurrect claims that have already expired under the one-year limitations period. "[T]his court has consistently maintained that the defense of an expired statute of limitations is a vested right." *Roark v. Crabtree*, 893 P.2d 1058, 1062 (Utah 1995). "'Accordingly, after a cause of action has become barred by the statute of limitations the defendant *has a vested right to rely on that statute as a defense* . . . which cannot be taken away by legislation . . . or by affirmative act, such as lengthening of the limitation period.'" *Id.* at 1063 (alterations in original) (quoting 51 AMJUR 2D *Limitation of Actions* § 44 (1970)).

¶68    Alternatively, the State argues that the one-year limitations period applies only to "penalt[ies] to the state," whereas the UFCA provides remedies that include not only penalties, but also "full and complete restitution to the state" and "costs of enforcement" of the Act. We reject this argument for two reasons. Foremost, the State did not raise this issue below and waited to make it until its reply brief on appeal. Thus, the issue is unpreserved. *See Allen v. Friel*, 2008 UT 56, ¶ 16, 194 P.3d 903. Second, the State's argument fails on the merits. The pre-amended version of the UFCA stated that "[a]ny person who violates this chapter shall, in addition to other penalties provided by law, be subject to the following *civil penalties*." UTAH CODE § 26-20-9.5(1) (2006) (emphasis added). It then listed four remedies: "full and complete restitution," "costs of enforcement," treble damages, and a civil penalty of up to $2,000. *Id.* § 26-20-9.5(1)(a)–(d) (2006). Contrary to the State's interpretation, the statutory language plainly considered each of these remedies a "civil penalty."

¶69    Accordingly, we affirm the district court's dismissal of the State's UFCA claims alleged to have arisen before April 30, 2006, which marks one year before the effective date of the UFCA's amendments.[13]

---

[13] This holding has no bearing on the State's fraudulent misrepresentation cause of action.

21

STATE OF UTAH *v.* APOTEX CORPORATION
Opinion of the Court

## IV. BOEHRINGER INGELHEIM CORP.

¶70    Finally, with respect to defendant BIC, we note that the district court gave the State leave to amend the first amended complaint to focus on BIC's "separate corporate existence and identify only those drugs for which BIC, and not its corporate subsidiaries, is legally responsible." It further noted that three of BIC's subsidiaries had not been named as defendants or served with process, but still were the focus of the State's allegations. In a separate order dismissing the Second Amended Complaint against BIC, the court determined that the State had failed to list any drugs manufactured by BIC and continued to "lump[] BIC with several independent subsidiaries which are not named or served defendants in this case."

¶71    Our review of the Second Amended Complaint leads us to conclude that the State did not fulfill the district court's requirements. The Second Amended Complaint makes allegations against BIC subsidiaries without naming them as defendants. It also does not identify which prescription drugs BIC manufactures, distributes, markets, or sells. There is no indication that BIC is a proper defendant in this case. We therefore affirm the district court's dismissal of the Second Amended Complaint as to BIC.

## CONCLUSION

¶72    We hold that the district court incorrectly applied rule 9(b) to the State's UFCA and fraudulent misrepresentation causes of action. We have articulated the appropriate 9(b) standard for pleadings that allege a widespread scheme to submit multiple false claims and engage in fraud over a long period. Although the State's Complaint fails to meet the standard we adopt today, we direct the district court to grant the State leave to amend the Complaint in accordance with this opinion. Moreover, we reverse the district court's determination that the State's causes of action failed under rule 12(b)(6) of the Utah Rules of Civil Procedure.

¶73    We also affirm the district court's application of a one-year statute of limitations to the State's UFCA cause of action for violations occurring before April 30, 2006. The enactment of a longer statute of limitations in 2007 could not revive those claims that had already expired. Finally, as to defendant BIC, we affirm the court's dismissal of the State's causes of action. There is no indication that BIC is a proper defendant in this case. The case is remanded to the district court for proceedings consistent with this opinion.

ERICA SMITH-KLOCEK
JOHN C. DODDS
KATHRYN E. POTALIVO
MORGAN LEWIS & BOCKIUS LLP
1701 MARKET ST
PHILADELPHIA PA 19103

FREDERICK R. BALL
DAVID I. CURKOVIC
DUANE MORRIS LLP
190 S LASALLE ST STE 3700
CHICAGO IL 60603

SCOTT A. STEMPEL
MORGAN LEWIS & BOCKIUS LLP
111 PENNSYLVANIA AVE NW
WASHINGTON DC 20004

HONORABLE TYRONE E. MEDLEY
THIRD DISTRICT, SALT LAKE
ATTN: JULIE RIGBY & SUSAN NORBY
450 S STATE ST BX 1860
SALT LAKE CITY UT 84114-1860

By _____
Judicial Assistant

Case No. 20100257-SC
THIRD DISTRICT, SALT LAKE, 080907678
Court of Appeals Case No. UNKNOWN-CA

CERTIFICATE OF MAILING

I hereby certify that on June 19, 2012, a true and correct copy of the foregoing OPINION was deposited in the United States mail or placed in the Interdepartmental mail service, or hand delivered to the parties listed below:

MATTHEW A. STEWARD
ROBERT D. ANDREASEN
CLYDE SNOW & SESSIONS
201 S MAIN ST 13TH FLR
SALT LAKE CITY UT 84111-2216

GEORGE M. HALEY
STEPHEN M. SANSOM
HOLLAND & HART LLP
222 S MAIN ST STE 2200
SALT LAKE CITY UT 84101

ROBERT E. STEED
ASSISTANT ATTORNEY GENERAL
5272 S COLLEGE DR STE 200
BX 8605
SALT LAKE CITY UT 84123

DAVID C. BIGGS
JOSEPH W. STEELE
STEELE & BIGGS
5664 S GREEN ST STE 300
SALT LAKE CITY UT 84123-5796

W. DANIEL DEE MILES, III
ROMAN SHAUL
H. CLAY BARNETT, III
J. PAUL LYNN
TIMOTHY ROBERT FIELDER
BEASLEY ALLEN CROW METHVIN PORTIS & MILES PC
272 COMMERCE ST
PO BOX 4160
MONTGOMERY AL 36103-4160