| | |
|---|---|
| STATE OF ILLINOIS<br>COUNTY OF LASALLE | IN THE CIRCUIT COURT THEREOF<br>THIRTEENTH CIRCUIT |
| WALTER J. ROACH, Jr., Administrator<br>of the Estate of Joanne I. Roach, Deceased, | No. 2009-L- |
| Plaintiff | At Law |
| v. | Judge: _____ |
| MERCK & CO., | |
| Defendant | COMPLAINT |

Now comes Plaintiff Walter J. Roach, Jr., Administrator of the Estate of Joanne I. Roach, Deceased, by his attorney Emmanuel F. Guyon, and for a cause of action against the Defendant Merck and Co., complains and alleges as follows:

**A.      Jurisdiction**

1. Plaintiff Walter J. Roach, Jr., is the Administrator of the Estate of Joanne I. Roach, Deceased. Plaintiff Administrator resides at 1206 Carroll Street, Streator, LaSalle County, Illinois, 61364. Plaintiff's decedent, Joanne I. Roach, resided at 1010 Carroll Street, Streator, LaSalle County, Illinois, during her entire lifetime, until her death on April 8, 2004, at Streator, LaSalle County, Illinois. The decedent's estate is being administered in LaSalle County, Illinois, as cause number 2008-P-151. Walter J. Roach, Jr., is the duly appointed Administrator of the Estate, and is authorized to bring the instant action.

2. Defendant Merck and Co., is a foreign corporation authorized to do business in the State of Illinois, and is doing business in the State of Illinois, thus submits to the jurisdiction of the courts of Illinois pursuant to *735 ILCS 5/2-209(a)(2), and 735 ILCS 5/2-209 (b)(3)*.

**B.     Venue**

3.     The matters complained of hereafter occurred in Streator, LaSalle County, Illinois, by the medical prescription and ingestion of a certain drug, Vioxx, manufactured by Defendant Merck and Co., the drug prescribed by her personal physician, Dr. Indra Pal, Streator, Illinois.  Upon taking of the drug according to directions given by the Defendant Merck and Co., the result was a serious and adverse change in the medical condition of the Plaintiff's decedent.  Plaintiff's decedent ultimately died, but not directly and immediately from the taking of this drug, Vioxx.  The drug ingestion was stopped when the cerebral incident commonly referred to as "stroke", became manifest in the physical condition of the Plaintiff's decedent.

4.     Defendant is a foreign corporation with principal business office in Morristown, New Jersey.  Plaintiff believes the Defendant marketed the drug Vioxx in every county in the State of Illinois, thus has submitted itself to suit in any county of the State of Illinois, including LaSalle County, the home county and *domicil* of the Plaintiff and Plaintiff's decedent, and the location where the cause of action in favor of the Plaintiff's decedent accrued.  Defendant derived substantial revenue from the sale of Vioxx prior to its withdrawal from commercial sales, and continues to derive substantial revenue from the sale of other pharmaceutical products in LaSalle County, Illinois.

**C.     Common Facts.**

5.     Plaintiff's decedent was treating with her personal physician, Dr. Indra Pal, with part of the treatment regimen being the use of various drugs for the medical conditions of the Plaintiff's decedent.  Among the drugs initially prescribed by Dr. Meier, later by Dr. Pal, was the drug Vioxx, a widely used pain medication.  Plaintiff's decedent ingested the drug Vioxx starting

on or about the date of July 25, 2001, with a new prescription *(Dr. Meier)* of 30 tablets, *25 MG*; refilled *(Dr. Meier)* August 23, 2001;  refilled *(Dr. Meier)* September 24, 2001; refilled *(Dr. Meier)* October 23, 2001; refilled *(coded "new" by Dr. Pal)* November 13, 2001.

6. Plaintiff's decedent suffered a stroke on November 22, 2001, and the treating physicians immediately discontinued the use of the drug Vioxx as a result of the stroke.

7. Plaintiff's decedent died on April 8, 2004.  During the course of events leading to her final illness, she used the drug Vioxx until her adverse experience that resulted in the stroke suffered by her on November 22, 2001.  After that date the physical condition of Plaintiff's decedent gradually deteriorated until her death on April 8, 2004.

8. Plaintiff's family did not determine the use of Vioxx was in the medical treatment regimen of the decedent until reading of publicity about Vioxx in the newspapers about the adverse effect of the drug on individuals.  All of the drugs used by the decedent were prescribed by the various physicians treating the Plaintiff's decedent over a period of time.  Plaintiff's family relied on the physicians to prescribe proper drugs for their mother during her illness.  It was only the publicity in the media that suggested to the family to inquire about the possible use of Vioxx by their mother, Joanne I. Roach, to determine if use of the drug Vioxx was given to the decedent, all of which inquiry occurred after November 21, 2001, the date of termination of ingestion of the drug Vioxx, and after the notification in the media of the dangerous propensities of the drug, this date being July 1, 2008.  Thereafter, the family consulted an attorney about the possibility of a lawsuit alleging Vioxx to have caused harm to the Plaintiff's decedent during her lifetime.

9. At all relevant times hereto, Merck & Co., regularly conducted and solicited business within the State of Illinois, and continues to do so.

10. At all relevant times hereto, Merck & Co., through its agents, servants, and employees, was the designer, formulator, manufacturer, marketer, advertiser, distributor, and seller of Vioxx, which drug is believed to have not been modified from its original formulation by the manufacturer, defendant Merck & Co. before use by the Plaintiff's decedent.

11. Plaintiff's decedent was prescribed the drug Vioxx by the treating medical doctors, purchased at their direction sufficient quantities of the drug known as Vioxx pursuant to normal prescription quantities as directed by the treating doctors, ingested the drugs at the rate of intake so prescribed from the date of July 25, 2001, through November 13, 2001 *(last re-fill of prescription date)* to date of November 22, 2001 *(cerebral incident-stroke date)*, when she suffered a stroke as a direct result of continued, prescribed use of the drug Vioxx.

12. As a direct and proximate result of Defendant's misconduct as set forth herein, summarily described as marketing a pharmaceutical drug with dangerous propensities, Plaintiff's decedent suffered physical injury, the cerebral incident-stroke, which affected her physical health and quality of life thereafter, all of which led to multiple system failure that gradually eroded the health of Plaintiff's decedent until the death of Joanne I. Roach on April 8, 2004.

13. Defendant admitted the drug Vioxx can cause strokes, and also caused various other types of physical injury, the dangerous propensities well and fully known to the Defendant, yet the Defendant continued to market the drug for its stated and intended use by the general public in the United States for a period of time until the drug was voluntarily withdrawn from use by the Defendant.

14. Defendant has admitted the dangerous propensities of the drug known as Vioxx, and has withdrawn the drug from the marketplace, and it is believed in good faith the drug is no longer manufactured or distributed for consumer use in the United States.   The withdrawal of

the drug Vioxx occurred after a multiplicity of lawsuits was filed against the Defendant, claiming serious injury and death from use of the product.

15.     Plaintiff seeks from the defendant all permissible damages under Illinois law, including damages for Plaintiff-decedent's probable future monetary contributions to the beneficiaries of her estate, and her family, and further, for the monetary value of the services the decedent would have rendered to the beneficiaries and family had the decedent lived.

D.     **NATURE OF THE CASE.**

16.     Defendant, either directly or through its agents, servants, and employees, designed, formulated, manufactured, marketed, advertised, distributed, and sold for the treatment of various pain conditions the drug known as Vioxx until it was withdrawn from the marketplace voluntarily by the manufacturer as a result of voluminous reports of multiple injuries to cause death or stroke of the injured persons.

17.     As a result of the defective nature of Vioxx as well as defendant's failure to warn of the increased cardiovascular risk, those persons prescribed Vioxx by their treating physicians, including Plaintiff's decedent, each of whom ingested Vioxx, have suffered and did continue to suffer severe and permanent personal injury, including increased risk of myocardial infarct, stroke, blood clots, and as well as other severe and permanent injuries, including death. Defendant had a duty to the Plaintiff's decedent to disclose the dangerous propensities of the drug by adequate warnings to the intended users, and a further affirmative duty to recall the product once the harmful effects of the use of the drug became known to the Defendant, which information was well known to the Defendant long before the recall of the drug Vioxx.

18. Defendant concealed its knowledge of Vioxx's unreasonably dangerous risks from Plaintiff and Plaintiff's decedent, other consumers, and the medical community, until the many reported cases of similar injuries and death were reported and became known.

19. Defendant failed to conduct adequate post-marketing surveillance of Vioxx after

20. At the time of withdrawal of the product from the marketplace, many lawsuits were filed and were pending in the State of Illinois, and were filed in all other states of the United States without exception.

21. The public posture of the Defendant Merck & Co. at the time of withdrawal of the drug was a legal position to defend each case individually, usually with jury demand. Plaintiff later became aware of the multitude of lawsuits, some of which have been tried to jury verdict in various jurisdictions, which cases were filed previously to this lawsuit of the Plaintiff.

22. Subsequent to the information disseminated in the news media about the danger of the drug Vioxx, the Defendant Merck & Co. proposed a resolution of multitude of lawsuits by two approaches:

*First:* to defend each case individually, with jury demand, regardless of the time expected to be taken to hear the pending cases;

*Second:* propose a class action settlement filed in the United States District Court, Richmond, VA.

Later, it was determined from reports in the news media, and by direct contact with the Claims Administrator, Brown Greer Law Firm, approximately 59,000 claims were filed in the class action litigation in the cases filed in the Richmond, Virginia, District Court action referenced. The class action litigation has been consolidated in the U. S. District Court, Eastern

District of Louisiana, as consolidated case No. MDL-1657 Vioxx Products Liability Litigation. *(Judge E. Fallon).*

23. Plaintiff Administrator attempted to participate in the class action through contact with the Brown Greer Law Firm, Richmond, Virginia.  Plaintiff's counsel filed a claims package with Brown Greer, the Claims Administrator on July 17, 2008. However, the Plaintiff's administrator was recently informed by an agent of the Claims Administrator, Mr. Phil Sturm, the claim was not allowed to participate in the class action litigation.

24. Defendant has admitted the dangerous propensities of the drug Vioxx by its voluntary proposal of settlement of the cases through a class action lawsuit.  Defendant has effectively admitted liability for the harm caused to the Plaintiff's decedent by the use of the prescription drug Vioxx.

25. As a direct and proximate result of Defendant's fraudulent concealment, Plaintiff's decedent suffered, *inter alia,* heart damage, stroke, blockages, and other multiple body system overloads that led to failure of her body systems to cause her death on April 8, 2004.

26. As a result of Defendant's conduct in the marketing, advertising, promotion, distribution and sale of Vioxx, and with knowledge of the dangerous propensities of the drug well before it was withdrawn from the market, Plaintiff's decedent, an others similarly situated, suffered harm.  Nevertheless, Defendant continued to market the drug without disclosing the dangerous propensities of the drug.  As a result of Defendant's conduct over a long period of time, Plaintiff's decedent, and others similarly situated, suffered severe and permanent injury, pain, mental anguish, including diminished enjoyment of life, and fear of developing other harmful conditions, including but not limited to  heart damage, stroke, blood clots,  and ultimately, death.

## COUNT I – WRONGFUL DEATH *(740 ILCS 180/2)*

27-53. Plaintiff's Administrator adopts the allegations made in paragraphs 1-26 *supra,* as and for paragraphs 27-53 of Count I, a claim for Wrongful Death of Joanne I. Roach pursuant to the statute, *740 ILCS 180/2*.

54. Plaintiff Administrator seeks damages for the death of Joanne I. Roach, deceased, all damages, including economic and non-economic damages suffered by the decedent's next of kin as a result of the death of Joanne I. Roach, deceased.

WHEREFORE, Plaintiff Walter J. Roach, Jr., as Administrator of the Estate of Joanne I. Roach, Deceased, demands judgment for damages against the Defendant Merck & Co., to include compensatory damages, economic and non-economic damages, costs of this action, and such other and further relief as this Court deems just and proper.

                                          WALTER J. ROACH, Jr., Administrator of the
                                          Estate of Joanne I. Roach, Deceased

                                          _____
                                          Emmanuel F. Guyon, his attorney