IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | |
|     Products Liability Litigation | * | |
| | * | |
| This Document Relates to: | * | MDL No. 1657 |
| | * | |
|     State of Utah, | * | SECTION L |
| | * | |
|                      Plaintiff, | * | JUDGE ELDON E. FALLON |
| | * | |
|    versus | * | MAGISTRATE JUDGE |
| | * | KNOWLES |
| Merck Sharp & Dohme Corp., | * | |
| | * | |
|                      Defendant. | * | |
| | * | |
| Case No. 2:06-cv-09336 | * | |
| | * | |
| * * * * * * * * * * * * * * * * * * * * * * * | * | |

**<u>DEFENDANT'S REPLY IN SUPPORT OF MOTION TO COMPEL</u>**

Merck moved the Court to compel Plaintiff to produce two categories of discovery:

- Documents and information regarding individuals who Plaintiff contends were injured by Vioxx and for whose medical treatment the State is seeking reimbursement (*see* Mot., ECF No. 64094-2 ("Mot."), at 4-6, 10-15); and

- Documents and information regarding Merck's alleged misrepresentations that form the basis of Plaintiff's negligence claim (*see id.* at 6-8, 15-18).

For unexplained reasons, Plaintiff responded with two separate opposition briefs filed eight days apart. Neither opposition has merit.

In its first opposition, Plaintiff argues that Merck is not entitled to information about Medicaid recipients allegedly injured by Vioxx because the epidemiological opinions on which it seeks to rely would be admissible under *Daubert*. This is a non sequitur. Even assuming

1106326v1

Plaintiff's evidence is admissible, it would still have to prove that Utah Medicaid recipients were in fact injured by Vioxx. And as the *Zyprexa* court explained, the need to prove injury makes those individuals' records highly relevant both to proving Plaintiff's claims and defending against them. Plaintiff argues that *Zyprexa*'s logic does not apply because the Utah False Claims Act ("UFCA") does not require a showing of reliance or deception. Plaintiff is wrong. The UFCA requires a showing that medical benefits were "improperly obtained." The benefits at issue here are those that were obtained by Medicaid beneficiaries for physical injuries, and the allegation is that Merck's conduct caused those benefits to be "improperly obtained." The only way to connect these theories is to prove that Vioxx caused the injuries for which benefits were paid. Thus, individualized medical proof is not only relevant, but essential, to Plaintiff's case, as the *Zyprexa* court recognized.

In its second opposition, Plaintiff similarly argues that it need not respond to Merck's discovery requests regarding the alleged misrepresentations that purportedly support the State's negligence cause of action because "evidence of misrepresentation and reliance" are not required under the UFCA. But Merck made it clear in its opening brief that the discovery requests at issue relate to Plaintiff's *negligence* claim, which is expressly based on the allegation that Merck *misrepresented* the safety and efficacy of Vioxx. In any event, the UFCA does require proof of a *false claim*, which in this case is purported to be Merck's alleged misrepresentations about Vioxx.

## ARGUMENT

### I. INDIVIDUALIZED PATIENT INFORMATION IS HIGHLY RELEVANT AND CLEARLY DISCOVERABLE.

The individualized patient evidence sought by Merck is highly relevant because Plaintiff cannot prove its claims without evidence that Vioxx caused physical injury to specific Medicaid

beneficiaries.  This was the lesson imparted by Judge Weinstein in *In re Zyprexa Prods. Liab. Litig.*, 671 F. Supp. 2d 397, 456-57 (E.D.N.Y. 2009).

Plaintiff disagrees, arguing chiefly that *Zyprexa* is distinguishable because it was based on a reliance requirement in Mississippi law, and "[r]eliance and deception are not elements of the False Claims Actions."  (1st Opp'n at 8.)  This argument misreads *Zyprexa*.  In that case, as here, the state sought reimbursement for payments made through its Medicaid program for injuries allegedly caused by a prescription drug.  There, the State of Mississippi sought to recover these alleged payments under the state's Product Liability Act, which does ***not*** require proof of reliance; rather, the Mississippi PLA requires proof that a "defective condition rendered the product unreasonably dangerous to the user or consumer," and that this condition "proximately caused the damages for which recovery is sought."  Miss. Code Ann. § 11-1-63(a)(ii)-(iii) (cited in *Zyprexa*, 671 F. Supp. 2d at 454).

The UFCA similarly requires proof of causation.  After all, the State's burden is to show that benefits were "improperly obtained."  Utah Code Ann. § 26-20-9.5(1)(a) (1987).[1]  The only way benefits could have been "improperly obtained" is if Merck's allegedly improper conduct ***caused*** the State to pay them.  The need for such a causal link is made even clearer in the amended language of the UFCA, which expressly limits restitution to "damages that the state sustains ***because of*** the person's violation of this chapter."  Utah Code Ann. § 26-20-9.5(2)(a)

---

[1] The Utah Legislature amended the UFCA in 2007.  *See* Utah Code Ann. § 26-20-1 *et seq*.  However, because all of the alleged conduct underlying Plaintiff's lawsuit occurred prior to the date on which the amendments took effect – and there is no provision authorizing retroactive application of the statute – the earlier version of the FCA governs Plaintiff's case.  *See Harvey v. Cedar Hills City*, 227 P.3d 256, 259 (Utah 2010) ("the Utah Code expressly restricts the retroactive application of legislative changes by declaring that '[n]o part of these revised statutes is retroactive, unless expressly so declared.'") (quoting Utah Code Ann. § 68-3-3).  Accordingly, references to the FCA are to the pre-amendment version.

(2007) (emphasis added).² However, it is plainly present in the original UFCA statute as well. Otherwise, the State could simply recoup all money spent on the Medicaid program without having to prove that any defendant's conduct resulted in the payment of "improperly obtained" benefits. For these reasons, Plaintiff's attempt to draw distinctions based on legal requirements of reliance is misplaced.

In any event, it was not the precise provisions of Mississippi law but rather the nature of the state's allegations that drove Judge Weinstein's analysis. As he explained, Mississippi's claims in the *Zyprexa* litigation turned on the "***theory***" that "patients sustained physical injuries they would not have but for Lilly's alleged promotional misconduct." *Zyprexa*, 671 F. Supp. 2d at 454 (emphasis added). For "this claim to succeed," Judge Weinstein explained, the state would have to show that its beneficiaries' use of Zyprexa "*resulted in* metabolic diseases for which the State paid the costs of treatment." *Id.* Thus, in order to prove its claims, Mississippi had to demonstrate that "[e]ach individual patient's metabolic condition . . . resulted from Zyprexa, rather than other supervening causal factors." *Id.* at 255.³

---

²     The 2007 amendments to the UFCA were sponsored by Representative Last in House Bill 242. *See* Utah State Legislature, H.B. 242: Medicaid False Claims Act Amendments, http://le.utah.gov/~2007/ htmdoc/hbillhtm/HB0242.htm. When he introduced House Bill 242 in the House and Health and Human Services Committee on February 6, 2007, he also introduced an amendment to it that changed the previous language regarding restitution from "medical benefits improperly obtained" to "damages that the state sustains because of the person's violation of this chapter." *See* Utah State Legislature, *Committee Reports House #1*, Feb. 6, 2007, http://le.utah.gov/~2007/comreport/HB242H10.htm. As Representative Last explained, this amendment "just changes a couple of words" in the bill; he attributed no change in meaning to those words. *See* Utah State Legislature, *Audio Recordings of Debates: House Health and Human Services Committee 2/6*, at 3:05 (2007), *available at* http://le.utah.gov/av/smil?int=55541.

³     Plaintiff needs individualized proof for another reason as well: its theory of entitlement to reimbursement is that the Vioxx prescriptions at issue were not "medically necessary" to begin with. (Am. Compl. ¶ 13d.) As the *Zyprexa* decision explained, such a theory can only be proven with individualized proof regardless of whether the underlying cause of action includes a causation element. 671 F. Supp. 2d at 457 (explaining that "medical necessity" is a "term of art" that "does not fall within the categories of reliance, loss causation, or injury" but to which the "Individualized Proof Rule [nevertheless] applies"). This is so because the medical-necessity concept "incorporates . . . complex factors" that are "context-sensitive, rather than one-size-fits-all." *Id.* at 456. And "[b]ecause each patient presents a unique set of symptoms and indications, and each patient may respond differently to any given medication, it requires a highly specific, individual analysis to determine, for example, whether there

*(cont'd)*

Plaintiff here is pursuing the same theory that was pursued in *Zyprexa*. Specifically, Utah seeks to recover money it allegedly spent treating Medicaid beneficiaries who were allegedly injured by Vioxx. (Am. Compl., Prayer For Relief.) Accordingly, it must prove that "*[e]ach individual patient's*" alleged physical injury "resulted from [that particular drug], rather than from other supervening causal factors." *Zyprexa*, 671 F. Supp. 2d at 454-55 (emphasis added). Because "each prescribing decision and each patient's injuries would have to be considered individually," aggregate proof, like that proposed by Plaintiff here, is plainly inadequate to sustain the State's causation burden. *Id.* at 455.[4]

In any event, even if Plaintiff could satisfy its *prima facie* burden based on actuarial and epidemiological analysis of the Utah Medicaid Database, such a proposal would not foreclose Merck's discovery requests because Merck has a right to defend itself at trial with individualized evidence regarding the Medicaid recipients for whose treatment Plaintiff is seeking reimbursement. (*See* Mot. at 15 n.1.) This right is rooted in due process, which affords Merck the right to present "'every available defense.'" (*Id.* (quoting *Lindsey v. Normet*, 405 U.S. 56, 66 (1972), and citing *United States v. Armour & Co.*, 402 U.S. 673, 682 (1972)).) Plaintiff offers absolutely no response to this argument, which separately requires that Merck's motion be granted.

In reality, Plaintiff seeks to avoid the discovery sought by Merck not because it is irrelevant but because Plaintiff complains that responding properly to Merck's requests will

---

*(cont'd from previous page)*
exists for a given patient another 'effective and more conservative or substantially less costly treatment." *Id.* at 456-57 (internal quotation marks and citation omitted).

[4]     Plaintiff also claims that *Zyprexa* is distinguishable because it turned on the State's inability to establish a theory of overpricing – i.e., the "the monetary difference between what was represented and paid for and what was received." (1st Opp'n at 8 (quoting *Zyprexa*, 671 F. Supp. 2d at 426).) Not so. Overpricing was one theory pursued in *Zyprexa*, but Judge Weinstein's relevant rulings related to the State's other theories. *See* 671 F. Supp. 2d at 454 (explaining that this theory of recovery was "unrelated to the overpricing theory").

result in "never ending litigation at such cost that [it] could bankrupt all parties to this litigation." (1st Opp'n at 3-4.)  This is a problem of Plaintiff's own making.  A plaintiff cannot bring a hugely complex lawsuit that implicates highly individualized medical issues, and then avoid critical discovery on the grounds of expense.  *See, e.g.*, *Continental Ill. Nat'l Bank & Trust Co. of Chicago v. Caton*, 136 F.R.D. 682 (D. Kan. 1991) ("[a]ll discovery requests are a burden on the party who must respond thereto," and "[w]here the requested material is relevant and necessary to the discovery of evidence, a protective order should not be entered merely because compliance with a request for production would be costly or time consuming").  As long as Plaintiff continues to seek reimbursement for the costs of treating its Medicaid recipients' Vioxx-related injuries, the State must prove on an individualized basis that Vioxx caused those injuries.

## II. MERCK'S ALLEGED MISREPRESENTATIONS ARE THE BASIS FOR PLAINTIFF'S NEGLIGENCE CLAIM AND ARE THEREFORE DISCOVERABLE.

As Merck's opening brief explained, Plaintiff's operative complaint asserts a negligence cause of action on the express basis that "Merck was 'negligent in . . . [its] *representations* as to the efficacy and safety of Vioxx,' resulting in a breach of its 'duty of care towards the general public and Utah Medicaid.'"  (Mot. at 15 (quoting Am. Compl. ¶ 243).)  In light of this affirmative allegation, the relevance of Merck's discovery requests asking Plaintiff to identify those alleged "representations" is self-evident, and Plaintiff's refusal to respond is both puzzling and frivolous.

Plaintiff barely mentions negligence in its second opposition, referring to it only in a one-sentence footnote tacked on at the end of a four-page discussion of the UFCA.  In that footnote, Plaintiff asserts that "negligence . . . does not require [a] showing of reliance upon representations of fact by the defendant."  (2d Opp'n at 4 n.4.)  But Plaintiff ignores its own Complaint, which expressly bases the negligence claim on Merck's alleged representations.  And

6

as a matter of Utah law, a negligence claim based on misrepresentations requires a showing of reliance. *See, e.g.*, *Viernow v. Euripides Dev. Corp.*, 157 F.3d 785, 796 (10th Cir. 1998) (affirming dismissal of negligence claim based on misrepresentations under Utah law where purchaser could not show that he "relied upon the alleged representations to his detriment").[5]

Moreover, even if the requirements of the UFCA were relevant, that too would support Merck's discovery requests. Plaintiff argues that misrepresentations are irrelevant because the UFCA does not require proof of reliance or deception, but this argument is a red herring. Deception and reliance go to the effect of a misrepresentation on the listener, whereas Merck has sought information about the representations themselves, which are clearly relevant to an UFCA claim. Indeed, Section 26-20-7(2)(b) of the UFCA – invoked by Plaintiff in support of its claim for damages (*see* Am. Compl. ¶ 240.b) – premises liability on the filing of "a claim for a medical benefit *which misrepresents* the type, quality, or quantity of items or services rendered." Utah Code Ann. § 26-20-7(2)(b) (2006) (emphasis added). And Plaintiff itself expressly alleges as the basis for its UFCA claim that "Merck caused the submission of" "false or fictitious" claims by "*represent[ing]* the type and quality of Vioxx, including the safety and efficacy profile, in an inaccurate manner." (Am. Compl. ¶ 233 (emphasis added); *see also id.* ¶ 240.b (asserting right to recover "damages arising out of claims which were presented or caused to be presented for medical benefits by which Merck knowingly *misrepresented* the qualities" of Vioxx (emphasis added).)

For these reasons too, Plaintiff's arguments lack merit, and Merck's motion should be granted.

---

[5]     As Merck made clear in its opening brief, Plaintiff's negligence claim will inevitably fail at summary judgment because it would be barred by the economic-loss rule. (*See* Mot. at 16 n.2.) But to the extent Plaintiff intends to continue to pursue the claim, it must meet its discovery obligations.

**CONCLUSION**

For the foregoing reasons and those set forth in Merck's opening brief, the Court should grant Merck's motion to compel responses to Defendant's Second Set of Interrogatories and Requests for Production.

Dated:  October 5, 2012                                    Respectfully submitted,


                                                           */s/ Dorothy H. Wimberly*
                                                           Phillip A. Wittmann, 13625
                                                           Dorothy H. Wimberly, 18509
                                                           STONE PIGMAN WALTHER
                                                           WITTMANN L.L.C.
                                                           546 Carondelet Street
                                                           New Orleans, LA 70130

                                                           Douglas R. Marvin
                                                           WILLIAMS & CONNOLLY LLP
                                                           725 Twelfth St., N.W.
                                                           Washington, DC 20005

                                                           John H. Beisner
                                                           Jessica Davidson Miller
                                                           SKADDEN, ARPS, SLATE, MEAGHER &
                                                           FLOM LLP
                                                           1440 New York Avenue, N.W.
                                                           Washington, DC 20005

                                                           Tarek Ismail
                                                           GOLDMAN ISMAIL TOMASELLI
                                                           BRENNAN and BAUM, LLP
                                                           1 North Franklin Street
                                                           Suite 625
                                                           Chicago, IL  60606

                                                           ATTORNEYS FOR MERCK SHARP &
                                                           DOHME CORP.

1106326v1

## CERTIFICATE OF SERVICE

      I hereby certify that the above and foregoing Reply Memorandum in Support of Motion to Compel has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail, upon Liaison Counsel Ann Oldfather by e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8C, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 5th day of October, 2012.

                                          /s/ Dorothy H. Wimberly
                                          Dorothy H. Wimberly, 18509
                                          STONE PIGMAN WALTHER WITTMANN L.L.C.
                                          546 Carondelet Street
                                          New Orleans, Louisiana 70130
                                          Phone: 504-581-3200
                                          Fax:    504-581-3361
                                          dwimberly@stonepigman.com
                                          Defendants' Liaison Counsel

1106326v1