**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In re: VIOXX | * | |
|      Products Liability Litigation | * | |
| | * | |
| This Document Relates to: | * | MDL No. 1657 |
| | * | |
|     JIM HOOD, ATTORNEY GENERAL, | * | SECTION L |
|     *ex rel.* | * | |
|     STATE OF MISSISSIPPI, | * | JUDGE ELDON E. FALLON |
| | * | |
|              Plaintiff, | * | MAGISTRATE JUDGE |
| | * | KNOWLES |
|      versus | * | |
| | * | |
|     Merck Sharp & Dohme Corp., | * | |
| | * | |
|              Defendant. | * | |
| | * | |
|     Case No. 2:05-cv-6755 | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL

Defendant Merck Sharp & Dohme Corp. ("Merck") respectfully moves the Court to compel Plaintiff, Mississippi Attorney General Jim Hood, to respond to Merck's First Set of Requests to Admit and Second Set of Interrogatories.

Plaintiff has brought suit under the Mississippi Consumer Protection Act ("MCPA") and the Mississippi false-advertising statute, seeking $10 billion in penalties from Merck, based on the allegation that Merck misrepresented the alleged risks of Vioxx. Yet, despite repeated requests by Merck, Plaintiff has thus far refused to specify the misrepresentations that give rise to such liability or to identify who (if anyone) actually relied on, or even received, those alleged misrepresentations. Instead, he has either offered incomplete answers or objected to Merck's requests as irrelevant or burdensome. These responses are plainly insufficient.

*First*, nothing is more relevant to this case than information regarding the specifics of Merck's alleged representations.  After all, proof of a representation is an essential element of Plaintiff's MCPA and false-advertising claims.  While Plaintiff has essentially abandoned his initial, implausible position that the discovery is not relevant, he still has not identified a single alleged misrepresentation.  Instead, he submitted supplemental responses that identify a slew of documents, without specifying which statements in those documents were allegedly improper.  The Court should compel Plaintiff to respond properly to Merck's requests for this basic information.

*Second*, Merck's request for causation-based evidence is equally relevant.  As Judge Weinstein explained in *In re Zyprexa Products Liability Litigation*, 671 F. Supp. 2d 397, 453 (E.D.N.Y. 2009), a claim for penalties under the MCPA requires some causal nexus between the alleged misconduct and the State's injuries.  So does Plaintiff's claim under the Mississippi false-advertising statute, as well as his common-law and product-liability claims.  Thus, Merck is plainly entitled to information about the impact of its alleged misstatements on Mississippi doctors who prescribed Vioxx.

For these reasons, discussed further below, the Court should grant Merck's motion to compel responses to Merck's First Set of Requests to Admit and Second Set of Interrogatories.[1]

## BACKGROUND

Plaintiff, Mississippi Attorney General Jim Hood, filed the present suit on October 4, 2005, seeking to recover economic losses allegedly incurred by the State's Medicaid program in paying for Vioxx.  (*See* Compl. ¶ 7.)  According to Plaintiff, Merck "defrauded the State of Mississippi, its agencies and instrumentalities, by knowingly issuing false and misleading

---

[1]  This Court recently granted Merck's motion to compel the Utah AG to identify the misrepresentations that are the basis of his Vioxx-related claims.  (*See* Minute Order at 1, ECF No. 64162 (Nov. 7, 2012).)

1111000v1

statements in order to induce the State, its agencies and instrumentalities to purchase its drug VIOXX®." (*Id.* ¶ 1.) Based on these allegations, Plaintiff initially asserted nine causes of action: (1) fraud; (2) violation of the MCPA; (3) untrue, deceptive and misleading advertising; (4) Medicaid fraud; (5) restitution/unjust enrichment; (6) negligence; (7) indemnity; (8) violation of the Mississippi Products Liability Act; and (9) injunctive relief. (*See id.* ¶¶ 81-120.)

Plaintiff filed an amended complaint on June 25, 2012, jettisoning several of his claims, but retaining his claims under the MCPA and for injunctive relief; untrue, deceptive and misleading advertising; fraud; unjust enrichment; and negligence. (*See* First Am. Compl. ¶¶ 75-114.) Plaintiff seeks the recovery of penalties in connection with his claim under the MCPA. (*Id.* ¶ 86.) Plaintiff also seeks damages for the State's alleged overpayment for Vioxx in connection with his other claims. (*See, e.g.*, *id.* ¶ 100 ("As a result of Defendant's fraudulent conduct, the State of Mississippi . . . has been damaged by paying excessive amounts for Defendant's drug"); *id.* ¶ 106 ("Plaintiff is entitled to restitution to the extent of the increased revenue received by the Defendant from VIOXX® prescriptions that were reimbursed by the State"); *id.* ¶ 113 ("As a direct and proximate result of the Defendant's negligence, the State of Mississippi has suffered damages and is therefore entitled to recover those damages.").) According to Plaintiff, Merck's alleged misconduct "increase[d] the consumption of or demand for VIOXX® by Mississippians." (*Id.* ¶ 93.)

On June 6, 2012, Merck served its First Set of Requests to Admit and its Second Set of Interrogatories on Plaintiff. (*See* Def.'s First Set of Reqs. to Admit. to Pl.; Second Set of Interrogs. (attached as Ex. 1).) Plaintiff served his responses to Merck's First Set of Requests to Admit on July 6, 2012 (attached as Ex. 2), and his Supplemental Responses to Defendant's First Set of Requests to Admit on October 26, 2012 (attached as Ex. 3). Plaintiff served his responses

3

to Merck's Second Set of Interrogatories on July 6, 2012 (attached as Ex. 4), his First Supplemental Responses to Defendant's Second Set of Interrogatories on September 10, 2012 (attached as Ex. 5), and his Second Supplemental Responses to Defendant's Second Set of Interrogatories on October 26, 2012 (attached as Ex. 6).

This motion addresses the following categories of requests:  (1) two interrogatories seeking information regarding the specific content of Merck's alleged misrepresentations that form the basis of Plaintiff's lawsuit; and (2) several interrogatories and requests to admit that seek information regarding the causal link between Merck's alleged misstatements and the prescribing of Vioxx throughout Mississippi.

### A.    Discovery Related To The Specifics Of Merck's Alleged Misrepresentations

Plaintiff has failed to produce any specific information regarding the purported misrepresentations that underlie his lawsuit.  Specifically, in Interrogatory Number 1, Merck asked Plaintiff to "identify each unfair method of competition . . . or deceptive trade practice . . . for which You are seeking penalties under Miss. Code Ann. ¶ 75-24-19 (1972)." (Second Set of Interrogs., Interrog. No. 1.)  "For each unfair method . . . or unfair or deceptive trade practice . . . identified," Merck requested that Plaintiff provide the following information:

> (a) the time, place and date(s) of each unfair method of competition . . . or unfair or deceptive trade practice;
>
> (b) the Merck employee(s) involved with each unfair method . . . or unfair or deceptive trade practice . . . .;
>
> (c) whether the unfair method . . . or unfair or deceptive trade practice . . . was written or oral;
>
> (d) any document(s) related to or utilized with the unfair method . . . or unfair or deceptive trade practice . . . .;
>
> (e) the content of the unfair method . . . or unfair or deceptive trade practice . . . .;

4

(f) how the method or trade practice was unfair or deceptive; and

(g) if You allege that the unfair method of competition . . . or unfair or deceptive trade practice . . . was knowing or willful, how or why [the] . . . practice . . . was done knowingly or willfully.

(*Id.*)  Relatedly, Interrogatory Number 6 requested that,

[w]ith respect to Vioxx, identify each advertisement that You allege contains any assertion, representation, or statement of fact which is untrue, deceptive or misleading for which You are seeking fines under Miss. Code Ann. § 97-23-3. For each advertisement identified, include:

(a) the time, place and date(s) of the advertisement;

(b) the Merck employee(s) involved with the advertisement;

(c) the form of the advertisement;

(d) any document(s) related to the advertisement;

(e) the content of the advertisement; and

(f) how the advertisement was untrue, deceptive or misleading.

(Second Set of Interrogs., Interrog. No. 6)

Plaintiff initially refused to produce the information requested in the interrogatories.  In

response to Interrogatory 1, Plaintiff stated:

Plaintiff . . . objects to this request as (1) overbroad, (2) unduly burdensome, and (3) seeking information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

(Pl.'s Resp. to Def.'s Second Set of Interrogs., Interrog. No. 1.)  Plaintiff subsequently

supplemented his response, reserving his prior objections and claiming that disclosure of the

requested information is "premature because discovery is ongoing."  (Pl.'s Supp. Resps. to Def.'s

Second Set of Interrogs., Interrog. No. 1.)  In addition, Plaintiff stated that he will:

seek penalties for . . . detailing of doctors, all forms of advertisements  (T.V., radio, print, etc.), direct-to-consumer advertisements and mailings, PIR Letters, methods and practices employed by Merck personnel in Mississippi such as obstacle responses taught through the Dodgeball Memo, Dear Doctor and Dear Healthcare Provider Letters, Press Releases, distribution of specific medical

5

> journals, use of the cardiovascular card in the promotion of Vioxx, prescription inserts, and any other method, act or premise used by Merck to disseminate information related to Vioxx in Mississippi.

(*Id.*)  Counsel for Merck sent a letter to Plaintiff explaining that this response was inadequate, and requested that Mississippi supplement its response by August 13, 2012.  (*See* July 27, 2012 Letter from Richard L. Josephson to Sheila M. Bossier (attached as Ex. 7).)

Plaintiff ultimately supplemented his answer one last time, attaching an exhibit referencing various documents that purportedly evidence Merck's violations of the MCPA.  (*See* Exhibit A to Pl.'s Second Supp. Resp. to Def.'s Second Set of Interrogs. (attached as Ex. 8).)  The exhibit lists more than 30 different letters, medical journal inserts, print and television advertisements, as well as other communications.  (*See id.*)  For each document, Plaintiff specifies the number of alleged violations of Mississippi law and – in the most general terms – describes the conduct constituting the violation.  After adding the number of violations for each document, it becomes clear that Plaintiff is seeking penalties for approximately 1.5 million alleged violations.  (*See id.*)  But the basis of this claim is impossible to determine, since Plaintiff's exhibit fails to specify ***what*** in each of these documents supposedly violates Mississippi law.  Instead, Plaintiff generically describes ***each*** document as "[c]ommunicat[ing] the risk profile, benefits, and efficacy of VIOXX in an unfair or deceptive manner" and "[p]resent[ing] information concerning the cardiovascular risk of VIOXX in an unfair or deceptive manner," with no elaboration.  (*Id.*)

Plaintiff answered Interrogatory Number 6 in a similar manner.  Plaintiff initially refused to provide any information, objecting to the request on the grounds that it is "(1) overbroad, (2) unduly burdensome and (3) seeking information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence."  (Pl.'s Resp. to Def.'s Second Set of Interrogs., Interrog. No. 6.)  In his first supplemental response, Plaintiff reserved his prior objections and

6

also claimed that disclosure of the requested information is "premature because discovery is

ongoing."  (Pl.'s Supp. Resp. to Def.'s Second Set of Interrogs., Interrog. No. 6.)  Plaintiff also

stated that he will:

> seek fines for . . . all forms of advertisement (T.V., radio, print, etc.), direct-to-consumer advertisements and mailings, and any other advertisement that contained any assertion, representation, or statement of fact which was untrue, deceptive or misleading related to Vioxx in Mississippi.

(Pl.'s Second Supp. Resp. to Def.'s Second Set of Interrogs., Interrog. No. 6.)  Plaintiff

ultimately supplemented his response a second time, referencing the exhibit provided in

connection with his second supplemental response to Interrogatory Number 1.  (Pl.'s Second

Supp. Resp. to Def.'s Second Set of Interrogs., Interrog. No. 6.)

## B.    Discovery Related To Causation

Plaintiff also refuses to provide any information concerning the causal relationship

between Merck's alleged representations and Mississippi doctors' decisions to prescribe Vioxx.

Specifically, Interrogatory Number 2 asked Plaintiff, with respect to "each  . . . deceptive trade

practice . . . identified in response to Interrogatory Number On[e]," to:

> identify by name, address, and telephone number each person, including Mississippi Healthcare professionals, Mississippi citizens, and/or Your agents or employees who You contend witnessed or was a recipient of the . . . deceptive trade practice[.]

(Second Set of Interrogs., Interrog. No. 2.)  Similarly, Interrogatory Number 3 asked Plaintiff:

> For each person identified as a witness or recipient in response to Interrogatory Number Two, state whether You are aware of any person who was actually misled by any alleged . . . deceptive act . . . and, if so, specify the person(s) misled and how and when You became aware.

(Second Set of Interrogs., Interrog. No. 3.)  Relatedly, Interrogatory Number 4 requested that,

"[f]or each Mississippi Healthcare Professional identified as a witness or recipient to

Interrogatory Number Two":

1111000v1

> state whether You are aware of any Mississippi Healthcare Professional who originally prescribed Vioxx and later determined that he or she would not have prescribed Vioxx had he or she had additional or different information about Vioxx when he or she prescribed the medicine, and if so, specify the Mississippi Healthcare Professional(s) and how and when You became aware.

(Second Set of Interrogs., Interrog. No. 4.)  And Interrogatory Number 5 sought the following:

> For each Mississippi Healthcare Professional identified as a witness in response to Interrogatory Number Two, state whether You are aware of any Mississippi Healthcare Professional who read or heard, prior to September 30, 2004, the alleged untrue, misleading, and/or deceptive statements identified in response to Interrogatory Number Two, and if so, identify the Mississippi Healthcare Professional(s) and how and when You became aware.

(Second Set of Interrogs., Interrog. No. 5.)

> Along the same lines, Request to Admit Number 11 asked Plaintiff to:

> Admit that You are unaware of any Mississippi healthcare professional who originally prescribed Vioxx and later determined that he or she would not have prescribed Vioxx had he or she had additional or different information about Vioxx when he or she prescribed the medicine.

Similarly, Request to Admit Number 13 requested that Plaintiff:

> Admit that You have not identified a single prescription for Vioxx written for a Mississippi citizen that was the result of an alleged misrepresentation or omission to the prescribing Mississippi Healthcare Professional.

(Def.'s First Set of Reqs. to Admit to Pl., Req. No. 13.)  And Request to Admit Number 14 asked

Plaintiff to:

> Admit that You cannot identify a single prescription for Vioxx for a Mississippi citizen that was the result of an alleged misrepresentation or omission to the prescribing  Mississippi Healthcare Professional.

(Def.'s First Set of Reqs. to Admit to Pl., Req. No. 14.)

As with his responses regarding the particulars of Merck's alleged misrepresentations,

Plaintiff has failed to provide any discovery pertaining to causation.  In response to Interrogatory

Number 2, Plaintiff initially stated:

1111000v1

> Plaintiff . . . objects to this Request as (1) overbroad, (2) unduly burdensome, and
> (3) seeking information that is neither relevant nor reasonably calculated to lead
> to the discovery of admissible evidence.

(Pl's Resp. to Def.'s Second Set of Interrogs., Interrog. No. 2.)  In his supplemental response,

Plaintiff elaborated as follows:

> [T]his interrogatory . . . is inconsistent with the legal standard for establishing a
> violation under the MCPA. . . . [E]very person who was subjected to any of
> Merck's Vioxx marketing practices witnessed and was a recipient of an unfair or
> deceptive act or practice[.]

(Pl.'s Supp. Resp. to Def.'s Second Set of Interrogs., Interrog. No. 2.)  Similarly, in response to

Interrogatory Number 3, Plaintiff stated:

> Plaintiff . . . objects to this Request as (1) overbroad, (2) unduly burdensome, and
> (3) seeking information that is neither relevant nor reasonably calculated to lead
> to the discovery of admissible evidence.

(Pl.'s Resp. to Def.'s Second Set of Interrogs., Interrog. No. 3.)  Plaintiff provided a

supplemental response, in which he claimed:

> [T]his interrogatory is premature because discovery is ongoing.  Plaintiff further
> objects to this interrogatory to the extent it is inconsistent with the legal standard
> for establishing a violation under the MCPA. . . . Plaintiff need only establish that
> Defendant knowingly and willfully committed the various . . . deceptive acts . . .
> to establish a violation under the MCPA.  Actual deception is not required.

(Pl.'s Supp. Resp. to Def.'s Second Set of Interrogs., Interrog. No. 3.)  In his response to

Interrogatory Number 4, Plaintiff once again raised overbreadth, burden and relevance

objections.  (*See* Pl.'s Resp. to Def.'s Second Set of Interrogs., Interrog. No. 4.)  Plaintiff's

supplemental response was identical to that offered in response to Interrogatory Number 3.  (*See*

Pl.'s Supp. Resp. to Def.'s Second Set of Interrogs., Interrog. No. 4.)  And Plaintiff's initial and

supplemental responses to Interrogatory Number 5 were not substantively different from those

offered in response to Interrogatory Number 4.  (*See* Pl.'s Resp. and Supp. Resp. to Def.'s

Second Set of Interrogs., Interrog. No. 5.)

Plaintiff's responses to Merck's Requests to Admit were of a similar nature.  In response to Request to Admit Number 11, Plaintiff initially stated:

> Plaintiff . . . objects to this Request as (1) overbroad, (2) unduly burdensome, and (3) seeking information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

(Pl.'s Resp. to Def.'s First Set of Reqs. to Admit to Pl., Req. No. 11.)  In his supplemental response, Plaintiff claimed that:

> Mississippi need not establish that any particular prescription was written as a result of Defendant's unfair and deceptive practices in Mississippi to establish a violation.  At this point in the litigation, Plaintiff contends that each and every Mississippi health care professional who received and/or was exposed to Merck's sales and marketing efforts was adversely impacted by Merck's unfair and deceptive practices in Mississippi.

(Pl.'s Supp. Resp. to Def.'s First Set of Reqs. to Admit to Pl., Req. No.11.)  Similarly, in response to Request to Admit Number 13, Plaintiff stated:

> Plaintiff . . . objects to this Request as (1) overbroad, (2) unduly burdensome, and (3) seeking information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

(Pl.'s Resp. to Def.'s First Set of Reqs. to Admit to Pl., Req. No. 13.)  Mirroring his supplemental response to Request to Admit Number 11, Plaintiff's supplemental response to Request to Admit Number 13 similarly stated that:

> Mississippi need not establish that any particular prescription was written as a result of Defendant's unfair and deceptive practices in Mississippi to establish a violation.  At this point in the litigation, Plaintiff contends that each and every Mississippi health care professional who received and/or was exposed to Merck's sales and marketing efforts was adversely impacted by Merck's unfair and deceptive practices in Mississippi, and thus, every prescription for Vioxx written for a Mississippi citizen was the result of an alleged misrepresentation or omission to the prescribing Mississippi Healthcare Professional.

(Pl.'s Supp. Resp. to Def.'s First Set of Req. to Admit to Pl., Req. No. 14.)  Plaintiff's initial and supplemental responses to Request to Admit Number 14 were identical to those provided in

1111000v1

connection with Request to Admit Number 13.  (*See* Pl.'s Resp. and Supp. Resp. to Def.'s First

Set of Reqs. to Admit to Pl., Req. No. 14.)

## ARGUMENT

It is axiomatic that "[t]he scope of discovery is broad and permits discovery of 'any

nonprivileged matter that is relevant to any party's claim or defense.'"  *Piazza's Seafood World,*

*L.L.C. v. Odom*, No. 07-413-BAJ-CN, 2011 U.S. Dist. LEXIS 111433, at *14 (M.D. La. Sept.

29, 2011) (citation omitted); *see also Shanklin v. Columbia Mgmt. Advisors, L.L.C.*, No. H-07-

2690, 2009 U.S. Dist. LEXIS 40275, at *20-21 (S.D. Tex. May 13, 2009) ("The documents

Shanklin seeks are relevant to this claim, satisfying the Rule 26(b)(1) standard.").  Consistent

with this standard, courts within the Fifth Circuit have employed a broad interpretation of the

term "relevant" under Rule 26, explaining that "a request for discovery should be considered

relevant if there is *any* possibility that the information sought may be relevant to the subject

matter in the action or if there is *any* possibility that the information sought *may* lead to the

discovery of admissible evidence."  *S. U.S. Trade Ass'n v. Unidentified Parties*, No. 10-1669

SECTION: "L" (4), 2012 U.S. Dist. LEXIS 10254, at *5 (E.D. La. Jan. 30, 2012) (Judge Roby)

(emphases added); *accord Garner v. Mission Essential Pers., L.L.C.*, No. 3:11cv127-TSL-MTP,

2012 U.S. Dist. LEXIS 71777, at *3 (S.D. Miss. May 23, 2012) (information is relevant for

discovery purposes if it "'encompass[es] any matter that bears on, or that reasonably could lead

to other matter that could bear on, any issue that is or may be in the case'") (quoting

*Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).  In other words, a party may not

resist a discovery request "unless it is clear that the information sought can have no possible

bearing on the subject matter of the action."  *Heaton v. Monogram Credit Card Bank*, No. 98-

1823 SECTION: "J"(l), 2004 U.S. Dist. LEXIS 4065, at *11 (E.D. La. Mar. 15, 2004) (Judge

Barbier) (internal quotation marks and citation omitted); *see also Rangel v. Mascorro*, 274

F.R.D. 585, 590 (S.D. Tex. 2011) (deposition questions satisfied the "low threshold of relevance

at the discovery stage").

It is also well settled that in cases where the defendant's alleged statements are the basis

of liability, the plaintiff must identify the statements with sufficient specificity in its discovery

responses.  *See, e.g.*, *Nammari v. Town of Winfield*, No. 2:07 cv 306, 2010 U.S. Dist. LEXIS

30760, at *11 (N.D. Ind. Mar. 29, 2010) (in defamation case, the plaintiff could not simply refer

to documents that contained allegedly defamatory statements, but had to "specify ***which***

statements" gave rise to liability) (emphasis added).  This principle applies with special force in a

case, like this one, that is premised on alleged misrepresentations and is therefore subject to the

particularity requirements of Rule 9(b).  *See, e.g.*, *Schaller Tel. Co. v. Golden Sky Sys.*, 139 F.

Supp. 2d 1071, 1100 (N.D. Iowa 2001) (plaintiff's discovery response was insufficient because it

failed to provide the "degree of specificity for" a "fraud claim approaching what is ordinarily

required by Rule 9(b) of the Federal Rules of Civil Procedure" in that it failed to disclose the

"details constituting the circumstances of the alleged fraud"); *see also Mayberry v. Bristol-Myers*

*Squibb Co.*, Nos. 07-942 (FLW), 07-1099 (FLW), 2009 WL 5216968, at *8 (D.N.J. Dec. 30,

2009) (dismissing claims under the MCPA because the "allegations" in support of the claims

"are insufficient to meet the rigors of Rule 9(b)).

These principles support Merck's motion to compel.  ***First***, because Plaintiff's MCPA

and false-advertising claims are rooted in Merck's supposed "representations" regarding Vioxx

(Compl. ¶¶ 86, 93), he is obligated to identify the misstatements that form the basis of his

lawsuit.  And ***second***, information regarding the impact of Merck's purported "representations"

on Mississippi healthcare providers – i.e., the causal relationship between Merck's alleged

conduct and the State's alleged injuries – is highly relevant to Plaintiff's claims and is therefore discoverable.

## I.   MERCK IS ENTITLED TO DISCOVERY REGARDING THE SPECIFIC REPRESENTATIONS UNDERLYING PLAINTIFF'S MCPA AND FALSE-ADVERTISING CLAIMS.

The Court should first compel the AG to specify the representations that he alleges give rise to liability under the MCPA and Mississippi's false-advertising statute.  Rather than identify the representations that underlie his lawsuit, the AG has offered a chart that lists dozens of documents and only vaguely describes them as relating to "the risk profile, benefits, and efficacy of VIOXX in an unfair or deceptive manner" and "[p]resent[ing] information concerning the cardiovascular risk of VIOXX in an unfair or deceptive manner."  This response is not remotely adequate.[2]

Court after court has recognized that a plaintiff who seeks to establish liability based on the defendant's statements is obliged to identify those statements when requested to do so in discovery; merely listing documents does not suffice.  *See, e.g.*, *Nammari*, 2010 U.S. Dist. LEXIS 30760, at *11; *Smith v. City of New York*, No. 04-CV-2663 (ILG) (RER), 2006 U.S. Dist. LEXIS 61236, at *3-4 (E.D.N.Y. Aug. 29, 2006) ("defendants must serve amended responses to the aforementioned interrogatories which specifically identify the precise page(s) of the

---

[2]    Plaintiff nominally has preserved his objection that the identity of the representations that form the basis of his suit are "not relevant to a claim or defense in this action."  (Pl.'s Second Supp. Resp. to Def.'s Second Set of Interrogs., Interrog. Nos. 1, 6.)  This objection is as ludicrous as it sounds.  Plaintiff's own Complaint expressly links liability to Merck's representations (*see, e.g.*, First Am. Compl. ¶ 76 (referring to "representations" about Vioxx as basis for MCPA claim); *id.* ¶ 93 (basing false-advertising claim on Merck's alleged "false, deceptive and untrue statements and representations")), and the MCPA and false-advertising statute themselves premise liability on representations, *see* Miss. Code Ann. § 75-24-5(2)(e) (it is unlawful to "[r]epresent[] that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have"); *id.* § 97-23-3 (false advertising includes any "advertisement contain[ing] any assertion, representation or statement of fact which is untrue, deceptive or misleading").  Obviously, even Plaintiff does not believe his objection has merit, as evidenced by his (failed) attempt to satisfy his indisputable discovery obligation by attaching a chart of documents to his latest response.  And as noted above in note 1, this Court just granted Merck's motion to compel the Utah AG to disclose the representations that form the basis of his Vioxx suit, confirming the relevance of such discovery.

documents which contain each item of information sought by the respective interrogatories, if not identify the information in the body of the amended response"); *In re Savitt/Adler Litig.*, 176 F.R.D. 44, 52 (N.D.N.Y. 1997) (response to interrogatory was "insufficiently specific" where it simply "referred to other documents and stated that the referenced documents and materials relate 'to input into termination decisions and participation in meetings in which the decisions to terminate AAGs were made'") (citation omitted).

In *Nammari*, for example, the plaintiffs sued the defendant for defamation.  The defendant propounded an interrogatory asking the plaintiffs to identify each defamatory statement forming the basis of their claims.  2010 U.S. Dist. LEXIS 30760, at *10-11.  In response, the plaintiffs pointed to a videotape and an email that allegedly contained the defamatory statements.  *Id.* at *11.  The court rejected this response, explaining that "[v]iewing the tape does not readily identify which statements the plaintiffs believe are defamatory."  *Id.* "Therefore," the court determined, "the plaintiffs' response is incomplete, and the plaintiffs must identify which statements in the tape they believe are defamatory and display a discriminatory intent."  *Id.*

Similarly, in *Waste Recovery Corp. v. Mahler*, No. 82 Civ. 3741 (WK), 1984 U.S. Dist. LEXIS 17328, at *1 (S.D.N.Y. Apr. 24, 1984), plaintiffs filed suit seeking damages arising out of the defendant's alleged fraud and failure to perform under a contract for the sale of waste oil treatment facilities.  The defendant propounded interrogatories, one of which sought "an identification of all representations allegedly made to plaintiffs by defendant . . . as well as the dates on which and the places where such representation was made, the persons to whom they were made, all other people who were present on those occasions, the names of all persons who relied on the representations and 'the manner in which reliance was manifested.'"  *Id.* at *5

14

(citation omitted).  The plaintiffs failed to specify when the alleged misrepresentations were made or by whom, and the defendant moved to compel.  *Id.* at *1.  The court found that plaintiffs' response was deficient.  *Id.* at *6-7.  The court reasoned that "[a]lthough plaintiffs identify generally the representations alleged to have been made . . . they do not, for the most part, identify **when** specific representations were made or to **whom**, who else was present or the manner of plaintiffs' reliance upon them."  *Id.* (emphases added).  Given the lack of specificity set forth in the plaintiffs' response, the court directed them to provide a more specific answer to defendant's interrogatory.

The same result should follow here.  Merck requested that "[w]ith respect to Vioxx, [Mississippi] identify each unfair method of competition . . . or unfair or deceptive trade practice . . . for which [it is] seeking penalties. . . ."  (Def.'s Second Set of Interrogs., Interrog. No. 1.)  The interrogatory went on to request that the AG include "[f]or each unfair method . . . or deceptive trade practice":

> (a) the time, place and date(s) of each unfair method of competition . . . or unfair or deceptive trade practice;
>
> (b) the Merck employee(s) involved with each unfair method . . . or unfair or deceptive trade practice . . . .;
>
> (c) whether the unfair method . . . or unfair or deceptive trade practice . . . was written or oral;
>
> (d) any document(s) related to or utilized with the unfair method . . . or unfair or deceptive trade practice . . . .;
>
> (e) the content of the unfair method . . . or unfair or deceptive trade practice . . . .;
>
> (f) how the method or trade practice was unfair or deceptive; and
>
> (g) if You allege that the unfair method of competition . . . or unfair or deceptive trade practice . . . was knowing or willful, how or why [the] . . . practice . . . was done knowingly or willfully.

(*Id.*)  A similar interrogatory was propounded with respect to the representations on which Plaintiff's false-advertising claim is based.  (*See* Def.'s Second Set of Interrogs., Interrog. No. 6(a)-(f).)  As in *Waste Recovery*, "[a] review of the answers and referenced documents suggests that [Plaintiff] ha[s] failed to provide several categories of requested information."  1984 U.S. Dist. LEXIS 17328, at *6.  Indeed, Plaintiff does not even attempt to identify "the representations alleged to have been made by [Merck]."  *Id.*  Nor does he specify how these misstatements were "unfair or deceptive" – much less whether (and why) such representations were "done knowingly or willfully."  (Def.'s Second Set of Interrogs., Interrog. No. 1(f)-(g).)  Rather, like the plaintiff in *Nammari*, he has simply referenced a series of documents that he claims contain vaguely described representations (*see* Exhibit A to Pl.'s Second Supp. Resp. to Def.'s Second Set of Interrogs.), leaving Merck to guess at the representations that Plaintiff has in mind.  The Court should compel Plaintiff to respond more fully to Merck's requests.

## II.   MERCK IS ENTITLED TO BASIC DISCOVERY REGARDING THE IMPACT OF MERCK'S ALLEGED MISREPRESENTATIONS ON MISSISSIPPI HEALTHCARE PROVIDERS.

The Court should also compel Plaintiff to provide discovery regarding the relationship between Merck's alleged misrepresentations and prescriptions of Vioxx in Mississippi.  Plaintiff has resisted such discovery on the asserted ground that "Mississippi need not establish that any particular prescription was written as a result of [d]efendant's unfair and deceptive practices in Mississippi to establish a violation" of the MCPA, making evidence of causation and reliance irrelevant.  (Pl.'s Supp. Resp. to Def.'s First Set of Reqs. to Admit to Pl., Req. No. 11; *see also* Pl.'s Supp. Resp. to Def.'s Second Set of Interrogs., Interrog. No. 3 ("[Such information] is inconsistent with the legal standard for establishing a violation under the MCPA.").)  Plaintiff is mistaken.

16

As Judge Weinstein made clear in *In re Zyprexa*, 671 F. Supp. 2d 397, claims for penalties and damages under the MCPA like those asserted here require proof of causation. In that case, Mississippi brought suit against Eli Lilly, alleging that the company engaged in illegal off-label promotion of Zyprexa and failed to warn about the drug's side effects. *Id.* at 401. The State asserted multiple claims, including a cause of action under the Mississippi Consumer Protection Act. *Id.* Mississippi sought penalties with respect to approximately one million estimated Zyprexa prescriptions in the state and argued that "proof of reliance or causation" was not required. *Id.* at 458.

Judge Weinstein rejected this argument, explaining that the assessment of penalties required consideration of such factors as "the information about Zyprexa available to the medical community at the time [each] prescription was written; [] the times of the various alleged instances of misconduct by Lilly, and whether and to what extent each instance may have ***impacted*** the prescription in question." *Id.* at 458-59 (emphasis added). Assessing these factors, the court recognized, would "entail separate examination of each of hundreds of thousands of claimed violations for purposes of determining the appropriate fine." *Id.* at 459.

Judge Weinstein reached the same conclusion as to Mississippi's claims for damages based on the prescription of Zyprexa. One of the AG's proffered theories of causation was that the defendant's alleged misconduct caused more Zyprexa to be prescribed to Medicaid beneficiaries, either because doctors prescribed Zyprexa for off-label use more than they otherwise would have, or because doctors would have been more hesitant to prescribe the medication if it had come with a stronger warning. *Id.* at 454. As Judge Weinstein explained, "[i]ndividualized proof" of reliance was required to sustain such a claim "to overcome the possibility that a Mississippi patient was prescribed Zyprexa for some reason other than belief in

17

the accuracy of Lilly's warnings or representations.  Whether a more adequate warning by Lilly would have prevented any particular patient's injuries requires consideration of what the prescribing physician knew and the cost-benefit analysis that applied to the individual patient suffering from a variety of serious mental problems."  *Id.*  This Court reached a substantively identical holding in the *Louisiana* Vioxx case, which likewise sought recovery based in part on a theory that Merck's representations increased demand for Vioxx.  *In re Vioxx Prods. Liab. Litig.*, No. 05-md-1657, 2010 U.S. Dist. LEXIS 142767, at *23 (E.D. La. Mar. 31, 2010) (because "[e]ach decision by each doctor and each patient was different," the "effect that any alleged misrepresentations had on each [prescribing] decision is unique").

The *Zyprexa* and *Louisiana AG* rulings foreclose the AG's relevance argument in this case.  Merck is seeking precisely the sort of information that *Zyprexa* and this Court have already held is highly relevant in a case like this one.  For example, Interrogatory Number 4 asks Plaintiff to "state whether You are aware of any Mississippi Healthcare Professional who originally prescribed Vioxx and later determined that he or she would not have prescribed Vioxx had he or she had additional or different information about Vioxx when he or she prescribed the medicine[.]"  (Def.'s Second Set of Interrogs., Interrog. No. 4; *see also* Def.'s First Set of Reqs. to Admit to Pl., Req. No. 11 (asking Plaintiff to "[a]dmit that you are unaware of any Mississippi healthcare professional who originally prescribed Vioxx and later determined that he or she would not have prescribed Vioxx had he or she had additional or different information about Vioxx when he or she prescribed the medicine.").)  Similarly, Interrogatory Number 5 asks Plaintiff whether he is "aware of any Mississippi Healthcare Professional who read or heard, prior to September 30, 2004, the alleged untrue, misleading, and/or deceptive statements[.]"  (Def.'s Second Set of Interrogs., Interrog. No. 5.)  This information goes directly to "whether

18

and to what extent each [alleged misstatement] may have ***impacted*** the prescription in question," 671 F. Supp. 2d at 459 (emphasis added), and is thus central to Plaintiff's claim for penalties.

The evidence is also relevant to Plaintiff's prayer for damages, which turns on the AG's theory that Vioxx prescriptions were filled (and then paid for by the State) as a result of Merck's representations.  (*See, e.g.*, First Am. Compl. ¶ 93 (Merck's alleged misconduct "increase[d] the consumption of or demand for VIOXX® by Mississippians."); *see also, e.g.*, *id.* ¶ 100 ("As a result of Defendant's fraudulent conduct, the State of Mississippi . . . has been damaged by paying excessive amounts for Defendant's drug"); *id.* ¶ 106 ("Plaintiff is entitled to restitution to the extent of the increased revenue received by the Defendant from VIOXX® prescriptions that were reimbursed by the State"); *id.* ¶ 113 ("As a direct and proximate result of the Defendant's negligence, the State of Mississippi has suffered damages and is therefore entitled to recover those damages.").)

Not only is this evidence directly relevant to Plaintiff's claims for relief under the MCPA, but it is also highly probative of Plaintiff's other causes of action, which are subject to causation requirements as well.   For example, Plaintiff's claim for untrue, deceptive and misleading advertising under Miss. Code Ann. § 97-23-3 expressly provides that a cause of action arises for "damages to persons or property ***proximately resulting*** from" deceptive advertising.  Miss. Code Ann. § 97-23-3 (emphasis added).  The Mississippi Supreme Court has recognized this core causation requirement, explaining that a plaintiff suing under the false-advertising statute must establish "damages" "***proximately caused*** by the alleged untrue, deceptive or misleading advertisement."  *Dixieland Food Stores, Inc. v. Kelly's Big Star, Inc.*, 391 So. 2d 633, 636 (Miss. 1980) (emphasis added) (affirming judgment in favor of defendant because, *inter alia*, "plaintiff wholly failed to show any causal connection between the inaccuracy of the advertisement and

1111000v1

any damages alleged to have been sustained"); *see also Woods v. R.J. Reynolds Tobacco Co.*, 635 F. Supp. 2d 530, 535 (S.D. Miss. 2009) (granting summary judgment in favor of tobacco-producer defendants because "the defendants' advertising did not cause [the plaintiff] to start smoking or to continue smoking").  The same is true of Plaintiff's common-law claims for fraud, unjust enrichment and negligence.  *See, e.g.*, *Owens Corning v. R.J. Reynolds Tobacco Co.*, 868 So. 2d 331, 343 (Miss. 2004) ("Proximate causation must be proved" in common-law fraud suit); *id.* at 342-43 (affirming grant of summary judgment as to unjust-enrichment claim where there was no showing of causation); *Angle v. Koppers, Inc.*, 42 So. 3d 1, 9 (Miss. 2010) (recognizing causation as an "essential element[] of a negligence claim).  Thus, such information as whether any "Mississippi Healthcare Professional[s] . . . read or heard, prior to September 30, 2004, the alleged untrue, misleading, and/or deceptive statements" by Merck is plainly relevant to the causal inquiry underlying Plaintiff's false-advertising and common-law claims as well.

Plaintiff suggests that discovery of causation-related information is unnecessary because his theory is that "each and every Mississippi health care professional who received and/or was exposed to Merck's sales and marketing efforts was adversely impacted by Merck's unfair and deceptive practices in Mississippi."  (Pl.'s Supp. Resp. to Def.'s First Set of Reqs. to Admit to Pl., Req. No. 11; *see also* Pl.'s Supp. Resp. to Def.'s Second Set of Interrogs., Interrog. No. 2 ("[E]very person who was subjected to any of Merck's Vioxx marketing practices witnessed and was a recipient of an unfair or deceptive act or practice[.]").)  But that is precisely what Plaintiff must prove to win his case, and Merck has the right to seek discovery that may refute the AG's arguments.  *See Lay v. Hixon*, No. 09-0075-WS-M, 2009 U.S. Dist. LEXIS 25256, at *7 (S.D. Ala. Mar. 26, 2009) ("To adjudicate the fact-intensive issue of ownership on an incomplete record, based on Hixson's bare say-so, without affording Lay a full and fair opportunity to

conduct discovery on that question would be unfair and inefficient."). This Court recognized as much in this litigation when it "rejected the argument that 'generalized allegations and aggregate proof' are sufficient to adequately prove causation." 2010 U.S. Dist. LEXIS 142767, at *21 (citation omitted). Instead, Plaintiff must "prov[e] causation" on an individual basis, by showing "whether doctors and patients relied upon Merck's misrepresentations or whether their decisions were based on other factors." *Id.* at *21-22.[3]

For all of these reasons, the Court should compel Plaintiff's responses to Merck's discovery requests.

---

[3]     Finally, while Plaintiff purports to deny Request to Admit Number 11 based on the Victim Impact Statement of Dr. David Egilman (*see* Pl.'s Supp. Resp. to Def.'s First Set of Reqs. to Admit to Pl., Req. No. 11 at 3), the denial is illusory because Dr. Egilman's statement is not responsive to Request 11. The Request asked Plaintiff to "[a]dmit that you are unaware of any Mississippi healthcare professional who originally prescribed Vioxx and later determined that he or she would not have prescribed Vioxx had he or she had additional or different information about Vioxx when he or she prescribed the medicine." (Def.'s First Set of Reqs. to Admit to Pl., Req. No. 11.) But Dr. Egilman – who teaches at Brown University in Rhode Island – does not claim to be a "Mississippi healthcare professional" in his statement. Indeed, his statement does not even claim that he ever prescribed Vioxx at all – much less that he or anyone else would have altered a decision to prescribe Vioxx had they received additional information about the medication. Instead, the statement simply lodges *ad hominem* attacks against Merck that have no bearing on the discovery issues presented here. (*See generally* Exhibit A to Pl.'s Supp. Resp. to Def.'s First Set of Reqs. to Admit to Pl., Req. No. 11.) Thus, this statement fails to support Plaintiff's denial.

1111000v1

## **CONCLUSION**

For the foregoing reasons, the Court should grant Defendant's motion to compel responses to Merck's First Set of Requests to Admit (Requests 11, 13, and 14) and Second Set of Interrogatories (Interrogatories 1-6).

Dated:  November 30, 2012                                   Respectfully submitted,


                                                            */s/ Dorothy H. Wimberly*
                                                            Phillip A. Wittmann, 13625
                                                            Dorothy H. Wimberly, 18509
                                                            STONE PIGMAN WALTHER
                                                            WITTMANN L.L.C.
                                                            546 Carondelet Street
                                                            New Orleans, LA 70130

                                                            Douglas R. Marvin
                                                            WILLIAMS & CONNOLLY LLP
                                                            725 Twelfth St., N.W.
                                                            Washington, DC 20005

                                                            John H. Beisner
                                                            Jessica Davidson Miller
                                                            SKADDEN, ARPS, SLATE, MEAGHER &
                                                            FLOM LLP
                                                            1440 New York Avenue, N.W.
                                                            Washington, DC 20005

                                                            Tarek Ismail
                                                            GOLDMAN ISMAIL TOMASELLI
                                                            BRENNAN and BAUM, LLP
                                                            564 West Randolph Street, Suite 400
                                                            Chicago, Illinois 60661

                                                            ATTORNEYS FOR MERCK SHARP &
                                                            DOHME CORP.

1111000v1

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing *Memorandum in Support of Motion to Compel* has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 11th day of June, 2012.

*/s/ Dorothy H. Wimberly*
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:      504-581-3361
dwimberly@stonepigman.com

Defendants' Liaison Counsel

23