**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **In re: VIOXX PRODUCTS LIABILITY LITIGATION**<br><br>**This Document Relates to:**<br><br>***Commonwealth of Pennsylvania by Thomas W. Corbett Jr., Attorney General vs. Merck & Co., Inc.;* Case No. 09-2861** | **MDL No. 1657**<br><br>**SECTION L**<br><br>**JUDGE ELDON E. FALLON**<br><br>**MAGISTRATE JUDGE KNOWLES** |

**MEMORANDUM IN SUPPORT OF MOTION FOR ORDER IMPOSING A COMMON BENEFIT OBLIGATION UPON THE RECOVERY OF THE COMMONWEALTH OF PENNSYLVANIA ATTORNEY GENERAL'S  CLAIMS ASSERTED AGAINST <u>MERCK SHARP & DOHME CORP. PENDING IN THIS MDL</u>**

The Plaintiffs' Steering Committee and Government Action Liaison Counsel (hereinafter collectively "PSC") respectfully move this Honorable Court for entry of an Order imposing a common benefit fee on the settlement recovery on all actions brought by the Attorney General of the Commonwealth of Pennsylvania (hereinafter "Commonwealth") against Merck Sharp & Dohme (hereinafter "Merck") pending in this MDL and the subject of the mediation.  Special Master Patrick A. Juneau (hereinafter "Special Master") successfully mediated a settlement between Merck and the Commonwealth on or about October 22, 2012 which resolved these claims pending by the Commonwealth in the MDL.

The mediation program was begun pursuant to an Order of this Court dated July 9, 2012 (Rec. Doc. 63823).  The Court directed the five Government Actions under the Court's jurisdiction (Alaska, Mississippi, Montana, Utah and the Commonwealth) to proceed on three concurrent tracks in the MDL- discovery, mediation or other resolution, and motion practice. (Rec. Doc. 63823)

1

The Commonwealth's private counsel and/or the Commonwealth is properly subject to payment of a common benefit fee for the benefits directly conferred upon the Commonwealth by the MDL and in consideration of the immense amount of work the PSC had done, which formed the foundation for all claims and was integral to the successful mediation.  Every other counsel for a Government Action entity under the jurisdiction of this Court (Alaska, Mississippi, Montana, and Utah), as well as those for the Commonwealth of Kentucky (whose action has been remanded), has contractually agreed to a common benefit fee to be paid to the PSC of 6.5%, recognizing the value and importance of the PSC's work in the litigation.  The PSC's common benefit work undertaken to discharge its responsibilities and duties, particularly in discovery, created the basis and motive for settlement of the Government Actions under this Court's jurisdiction, has conferred a benefit on the attorneys' for the Commonwealth and/or the Commonwealth, and, thus, entitles the PSC to a common benefit fee under the well-established common benefit doctrine that the Court has recognized and implemented in its previous orders.[1] The Commonwealth and its attorneys were provided a detailed road map and evidence collected and assimilated by the PSC that formed the basis of all claims against Merck. To deny the PSC compensation for its work product which was instrumental in the settlement would unjustly enrich the Commonwealth's attorneys and/or the Commonwealth, in direct contravention of the common benefit doctrine.

On March 17, 2009 the claims of the Commonwealth were removed and transferred to this MDL.[2] In the nearly 4 years under the jurisdiction of this Court, the Commonwealth and/or its attorneys have benefited greatly  from the PSC's discovery, motion practice, trial work, the

---

[1] *See, e.g.*, *In re Vioxx Prods. Liab. Litig.*, 760 F. Supp. 2d 640 (E.D. La. 2010); 802 F. Supp. 2d 740, 768–770 (E.D. La. 2011) (discussing the equitable source of the MDL courts' common benefit authority, as articulated and established in Supreme Court and Fifth Circuit jurisprudence).
[2] The case was transferred via CTO 149. (Rec. Doc. 17903)

trial package, and the PSC's coordination efforts, particularly on discovery. This forum bestowed upon the Commonwealth through its attorneys a massive amount of the PSC's work product, the depository containing discovery both general (on liability) and directly involving the Commonwealth, provided access to the Court for resolution of any disputes with Merck, afforded it a coordinated effort on discovery and motions against Merck, enabled it to confer and conference with other Attorneys General to discuss and implement strategy and reduce costs, provided it with the details of a bellwether trial by an Attorney General against Merck, including transcripts, exhibits, and expert reports and testimony, and established the means to settle the case through the offices and efforts of the Court-appointed Special Master.

**History of Government Action Litigation in the MDL**

On November 9, 2007, in conjunction with the Vioxx Resolution Program, this Court stayed all litigation proceedings pending in the MDL in Pretrial Order No. 30.  (Rec. Doc. 12964)

Addressing the state Attorney General matters on July 11, 2008 the Court appointed attorney Dawn Barrios (hereinafter "Barrios") to coordinate communication with the state Attorneys General (Rec. Doc. 15351)

The stay was lifted for the Government Action cases by Order dated November 21, 2008. (Rec. Doc. 16992)

The first of many Government Action status conferences was held on December18, 2008. (Minute Entry Dec 19, 2008). A succession of special status conferences, convened almost monthly, for the benefit of the Attorneys General actions, continued well into 2012, with the exception of the period of time the Court stayed the Government Actions pending the NAMFCU resolution.

Pretrial Order 39 was the initial pretrial order delineating a case management schedule for the Government Actions.  (Rec. Doc. 18584) It ordered the Government Action parties to proceed with discovery of information that is common to some or all the Government Action plaintiffs; to review and use discovery material previously produced in the MDL to maximize efficiency and avoid duplicative requests; and to work cooperatively and in good faith to resolve disputes over the scope of and burdens associated with discovery.  PTO 39 additionally ordered that the PSC organize and maintain additional documents and material produced by Merck, as it did with Merck's prior delivery of documents to the PSC.  This Court ordered the Government Action plaintiffs to utilize to the fullest extent practicable discovery previously taken in this MDL, directed the PSC to ensure that Government Action plaintiffs had full access to the MDL discovery, noted that the Government Action plaintiffs have had access to the PSC document depositories through a prior Court Order, and encouraged the Government Action plaintiffs to make use of depositions previously taken.[3]  Paragraph IV A of PTO 39 directs that "(m)aterials in the PSC document depositories shall be deemed produced in each Government Action." And, in order to avoid multiple or duplicative requests, Barrios was to coordinate with all Government Action counsel to group all written discovery into a single master set of discovery directed to Merck.

In June 2009, discovery commenced and sets of master discovery were exchanged with Merck followed by objections and numerous meets and confers.

In Pretrial Order 44, dated July 2009, the Court appointed those attorneys who would govern and lead the Government Action cases in Appointment of Government Actions Plaintiffs' Case Management Committee Order.  (Rec. Doc. 20770)  Counsel for the Commonwealth, Mark Schultz, was a member of the Plaintiffs' Case Management Committee.  Mr. Schultz and the

---

[3] In PTO 39 the Court reserved ruling on any assessment for use of these materials until a later date.

Cohen, Placitella firm, which later also became counsel of record for the Commonwealth, were private counsel; no attorney from the Attorney General's office ever made an appearance in the MDL.  The common benefit claim by the PSC is thus directed to both the private counsel of the Commonwealth, and the Commonwealth, to avoid the unjust enrichment to private counsel and their client, just as this Court's previous common benefit decisions have done.[4]  As the Fifth Circuit determined in its seminal MDL common benefit fee decision, *In re Air Crash Disaster at Florida Everglades on December 29, 1972*, 549 F. 2d 1006 (5th Cir. 1977), the Court has the inherent authority, equity jurisdiction, and case-management powers to assess a common benefit fee against a participating litigant's counsel.  This is so because, as the Fifth Circuit explains, in the MDL context, the "vindication" of the "larger interests" of fair and efficient case management for all litigants "commands affirmative interaction by the court and the assignment of additional responsibilities to some attorneys, inuring to the benefit of other attorneys."  549 F. 2d at 1019.

In April 2010, the Louisiana Attorney General's action proceeded to trial as a bellwether under a separate case management order schedule.  All material produced in *Louisiana ex rel. Caldwell v. Merck & Co., Inc.* was placed in the PSC's depository and made available to all Attorneys General.

In June 2010, Pretrial Order No. 39A was entered, setting specific and detailed deadlines for discovery to proceed in the MDL and for consideration of jurisdictional motions to remand. (Rec. Doc. 45738) The Court further refined the concept of common discovery to occur in the MDL to be all pretrial discovery, except that related to damage experts. The discovery was scheduled in groups or waves, with the Commonwealth being in Group 1. In this Order, the

---

[4] *See*, *e.g.*, *In re Vioxx Prods. Liab. Litig.*, 2012 U.S. Dist. LEXIS 85928 (E.D. La. 2012); 802 F. Supp. 2d 740 (E.D. La. 2011); 760 F. Supp. 2d 640 (E.D. La. 2010).

Court reiterated that the discovery previously completed in the MDL, particularly the expert reports and depositions of witnesses, be utilized in the Government Action cases without additional discovery of those witnesses.[5]

After several meet and confers between the parties (Group 1 and Merck, in particular), discovery issues were argued to the Court.  On September 13, 2010 the Court issued an Order addressing the ongoing discovery dispute between Group 1, which included the Commonwealth, and Merck.  (Rec. Doc. 51761)

On September 16, 2010 Michael Coren, Harry Roth, and Christopher Placitella, all of Cohen, Placitella & Roth, filed appearances as additional counsel of record for the Commonwealth in the MDL. (Rec. Doc.  52299, 52268, 52269). It is interesting to note that Eric Weinberg, Esq. (hereinafter "Weinberg") represented to Barrios, which was confirmed by Cohen, Placitella & Roth, that he was an additional private attorney for the Commonwealth, but no appearance was ever filed.[6]

On November 22, 2010 the Court granted Merck a temporary stay for the purposes of global resolution discussions. (Rec. Doc. 56474). The stay halted all discovery between the Government Actions and Merck, but directed that settlement discussions occur under the Court's supervision, and supervised by the Special Master.  The Court continued the stay until January 5,

---

[5] In the process of preparing for discovery, the Commonwealth advised this Court in a letter dated August 20, 2010 that it was waiving its Medicaid claim in the MDL.

[6] Barrios requested that Weinberg file a Notice of Appearance in the record, sign the requisite confidentiality orders required by Pretrial Order Nos. 13A and 13C, as well as the Certification of Authority required by Pretrial Order No. 13A, on at least two (2) occasions. On the second occasion on March 14, 2012, Barrios forwarded copies of these Orders to Weinberg with  attached Confidentiality Orders and Certification of Authority, requesting compliance. Plaintiffs' Liaison Counsel and Barrios were designated in PTO 13 to receive these documents.  None were ever received. Despite Mr. Weinberg's participation in many of the Tuesday morning Attorney General calls held by Barrios for the Attorneys General, he has neither filed a Notice of Appearance for the Commonwealth, nor provided any of the signed confidentiality orders required in Pretrial Order Nos. 13A and 13 C.

2011, the date of the next Monthly Status Conference. (Rec. Doc. 58730).The stay continued in effect until it was lifted in Pretrial Order No. 39B on June 5, 2012.  (Rec. Doc. 63895).

While the stay was in effect for almost 1 ½ years, some limited discovery was approved by the Court. The Government Action plaintiffs wanted to discover information necessary for each plaintiff to evaluate any settlement offers, which all assumed would be offered as a result of the Department of Justice's investigation and Merck's plea.  After a meeting with the Special Master and the Attorneys General in New Orleans, Barrios prepared a list of information and material the Attorneys General wanted from Merck.  The Commonwealth's counsel participated in compiling the list. This list became known as the "Top Ten" list.  Merck provided each Government Entity with substantive responses to the "Top Ten" list.

On July 14 and July 15, 2011, each Attorney General participated in a mediation led by the Special Master in a courtroom provided by the Eastern District of Louisiana.   The Commonwealth attended the mediation in New Orleans.  No progress was made in the two day mediation session.

In November 2011, Merck entered into a civil settlement to resolve allegations of off-label marketing of Vioxx and false statements about the drug's cardiovascular safely and agreed to enter a criminal guilty plea.  Approximately $190 million was earmarked to be distributed to Medicaid programs in 44 participating states and the District of Columbia.

On April 19, 2012, United States District Judge Patti B. Saris approved the terms of the settlement negotiated between Merck and the Department of Justice, and ordered Merck to pay a significant fine. As a part of that settlement, the National Association of Medicaid Fraud Units (hereinafter "NAMFCU") offered each state a settlement of its Medicaid claims.   The Commonwealth rejected the offer and filed a victim statement objecting to Merck's requirement

that each State accepting the NAMFCU settlement release all claims against Merck. The Commonwealth wanted to continue its claims in litigation against Merck with regard to its supplementary state funded program for the elderly known as PACE/PACENET. The Court rejected the Commonwealth's position and the Commonwealth rejected the $65,000,000 NAMFCU settlement. Several Attorneys General accepted the NAMFCU offers and, as part of the settlement, dismissed all claims against Merck. The Commonwealth continued to be a litigating state in the MDL.

The PSC sought a common benefit fee of 6.5% from those states within the jurisdiction of the MDL which accepted the NAMFCU settlement. On January 3, 2012, this Court rejected the PSC's motion regarding the states accepting the NAMFCU settlement. In the second footnote in the Order & Reasons (Rec. Doc. 63612), this Court stated:

> "With respect to litigating states not participating in the NAMFCU settlements, the PSC reports that it has reached voluntary common benefit contribution agreements with the majority of those states. This is understandable and justifiable because these litigating states apparently plan to pursue their claims in litigation and will rely on the work product of the PSC."

As this litigation has progressed, it became obvious that the Attorneys General had and would continue to utilize the PSCs work product in its litigation. In a February 3, 2010 status conference, this Court stated: "Trial plans and watching the trials and developing the general information, getting all the depositions and things of that sort, I can't help but feel that that's helped you, so that what you get out of being in the MDL. This is where I was hoping that by having one place and an opportunity to globally resolve all of these cases, that would also be an opportunity…." Transcript, February 3, 2010 Status Conference, page 20, l.2-25, page 21 l.1-5.

Despite the NAMFCU offer and the mediations conducted by the Special Master, the Commonwealth rejected all offers of resolution and proceeded with litigation in the MDL, and thus became known as a "litigating state". Since all work had been on hold in the Government

Action cases due to the stay, it was necessary to impose new deadlines in a case management order.  Pretrial order 39 B, entered on June 5, 2012, reinforced the Court's mandate to utilize prior work product of the PSC, particularly expert reports and depositions taken earlier in the MDL. Your Honor stated on numerous occasions that it is easier for the plaintiffs to get the discovery in the MDL than post- remand. Following the staging concept of PTO No. 39A, PTO 39 B created a Discovery Track 1 and Discovery Track 2, giving each Governmental Action plaintiff the choice of discovery tracks. (Doc. No. 63895).  The Commonwealth chose the most aggressive track- Discovery Track 2.

The MDL Court again attempted resolution of the cases in an Order dated July 9, 2012 (Doc. No. 63823).  There the Court directed the five Government Actions under the Court's jurisdiction (Alaska, Mississippi, Montana, Utah and the Commonwealth) to proceed on three concurrent tracks in the MDL discovery, mediation or other resolution, and motion practice. (Rec. Doc. 63823). In the first mediation, held in October, the Commonwealth was successful in negotiating a settlement with Merck.

The Commonwealth and/or its private counsel is properly subject to payment of a common benefit fee as a result of  the benefits directly conferred upon them by the MDL, all of which contributed to and culminated in the Commonwealth settlement, and saved time, money, and effort its counsel would otherwise have been required to accrue in litigating alone.  Every other Government Action entity under the jurisdiction of this Court (Alaska, Mississippi, Montana, and Utah), as well as the Commonwealth of Kentucky, which has been remanded from the MDL to its court of origin, has, unsurprisingly, recognized the important contribution and nexus between the PSC's work and the success of the litigation by contractually agreeing to a common benefit fee of 6.5%  to be paid to the PSC. The PSC's common benefit work undertaken

to discharge its responsibilities and duties, particularly in discovery, had a substantial role in the Commonwealth's settlement, and is, thus, entitled to a common benefit fee.   See Order & Reasons, January 3, 2012 (Rec. Doc. 63612)

The Commonwealth's counsel received a copy of the documents in the depository from the office of another Attorney General.  The depository held more than 1,000 documents for the Commonwealth alone.  Counsel for the Commonwealth met with members of the PSC to discuss experts and trial strategy. The Commonwealth had access to the trial package as well, through the offices of another Attorney General.  It is irrelevant how a party received the work product of the PSC, whether directly, or indirectly, as the Commonwealth did.   The Commonwealth received documents directly from Merck during the NAMFCU negotiations generated by the "Top Ten" list. The common benefit doctrine cannot be frustrated via a technicality of how the Commonwealth obtained the work product:  it was established, by the Supreme Court, as an equitable doctrine to transcend such efforts at evasion or refuge in formalities.[7]  The only issue is thus whether this benefit contributed to the settlement.  After years of participating in this MDL against Merck, it is clear that  Merck would pay substantial money to any plaintiff or Attorney General *only if* that plaintiff had the requisite documents and strategy to succeed at trial.  The ground work was planted and tilled by the PSC, and the Commonwealth and its attorneys merely had to pick the fruit of the PSC's labors.

The goal of the instant motion is to obtain an order imposing a common benefit obligation on the Commonwealth and/or its attorneys which is analogous and proportionate to the others previously imposed, by order or agreement, on all other settling parties in all types of cases in this MDL. The PSC relies on the well-established common benefit fund doctrine, which

---

[7] *See, e.g., Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 168-169 (1939); *Cent. R.R. & Banking Co. v. Pettus*, 113 U.S. 116 (1885); and what the Florida Everglades decision calls, *"the headwaters"* common benefit case, 549 F. 2d at 1017, *Trustees v. Greenough*, 105 U.S. 527, 532 (1881).

this Court has previously addressed in great detail.  *See generally In Re Vioxx Prods. Liab. Litig.,* 760 F. Supp. 2nd 640 (E.D. La. 2010). An escrow of funds for common benefit assessment is appropriate where the common benefit labor contributed to the creation of the settlement opportunity for the Commonwealth and relieved private counsel of hundreds (or thousands) of hours of work and thousands (if not hundreds of thousands) of dollars of expense. As the Fifth Circuit explained in *Florida Everglades*, the district court's authority to assess common benefit fees from litigants — or their attorneys — "is rooted in the inherent powers of equity."  549 F. 2d at 1018, citing Justice Frankfurter in *Sprague v. Ticonic Nat'l Bank*, 307 U.S. at 166–167.

As this Court observed in its earlier common benefit decision, *In re Vioxx*, 802 F. Supp. 2d, 740, 749, "First, it is worth reiterating the source of the Court's authority to award and allocate the common benefit fund.  Since the nineteenth century, the Supreme Court has recognized an equitable exception to the general rule that a prevailing litigant is not entitled to collect attorneys' fees from the loser.  This exception has become known as the common fund or common benefit doctrine and permits the creation of a common fund in order to pay reasonable attorneys' fees for legal services beneficial to persons other than a particular client, thus spreading the cost of the litigation to all beneficiaries.  *See In re Zyprexa Prods. Liab. Litig.*, 594 F.3d 113, 128 (2d Cir. 2010) (Kaplan, J., concurring).  This equitable common fund doctrine was originally, and perhaps still is, most commonly applied to awards of attorneys' fees in class actions.  *E.g.*, 4 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 13:76 (4th ed. 2002) (discussing common fund doctrine in context of class actions); Fed. R. Civ. P. 23(h)."

But, as the *Vioxx* decision continues, "the common fund doctrine is not limited solely to class actions".  *See Sprague v. Ticonic National Bank*, 307 U.S. 161, 59 S. Ct. 777, 83 L. Ed. 1184 (1939) (employing common benefit doctrine to award fees and costs to litigant whose

success benefitted unrelated parties by establishing their legal rights); Alan Hirsh & Diane Sheeley, Fed. Judicial Ctr., Awarding Attorneys' Fees and Managing Fee Litigation, 51 (2nd ed. 2005) ("Although many common fund cases are class actions ... the common fund doctrine is not limited to class actions."); *Manual for Complex Litigation (Fourth)* § 14.121 (2004).  As class actions morph into multidistrict litigation, as is the modern trend, the common benefit concept has migrated into the latter area.  The theoretical bases for the application of this concept to MDLs are the same as for class actions, namely equity and her blood brother, quantum meruit. However, there is a difference.  In class actions the beneficiary of the common benefit is the claimant; in MDLs the beneficiary is the primary attorney."  802 F. Supp. 2d 740, 769.

Thus, in the MDL context, with respect to the appropriate source of common benefit fees, "assessment of those fees against other retained lawyers who benefitted from the work done was permissible and appropriate."  *Vioxx*, 802 F. Supp. 2d at 770; citing *Florida Everglades*, 549 F.2d at 1019-20.   Your Honor has the discretion, based upon years of watching this litigation unfold, to assess a common benefit upon private counsel and/or the Commonwealth.

The Commonwealth was transferred into the MDL on March 7, 2009 in CTO 149 (Rec. Doc. 17903). In the 4 years it has been within the jurisdiction of the Court, the Commonwealth derived substantial benefits which it used to leverage a settlement. The work product shared and the opportunities the MDL provided to the Commonwealth to obtain discovery, and the elimination of substantial work which would normally be necessary for private counsel to perform,  set the stage and culminated in a settlement for the Commonwealth. It is therefore respectfully requested that the Court impose a reasonable common benefit fee for the PSC. Recognizing the value and relationship of the work of the PSC to the success of their cases, every other Government Action entity under the jurisdiction of this Court (Alaska, Mississippi,

Montana, and Utah) as well as the Commonwealth of Kentucky, which has been remanded, has contractually agreed to a common benefit fee of 6.5% to be paid to the PSC. The Commonwealth did not agree, but the common benefit doctrine is founded on equity, not agreement. Its purpose is to avoid unjust enrichment—precisely what would occur if the Commonwealth, and, more precisely, its private counsel, were allowed a free ride on the efforts, and at the expense of others. Neither the Commonwealth nor its private counsel should be enriched at the expense of the PSC; rather, it should be required, like all others, to pay for common benefit.

Respectfully submitted,

Dated: December 19, 2012                 By:     /s/ Leonard A. Davis
                                                  Russ M. Herman (Bar No. 6819)
                                                  Leonard A. Davis (Bar No. 14190)
                                                  Stephen J. Herman (Bar No. 23129)
                                                  Herman, Herman & Katz, L.L.P.
                                                  820 O'Keefe Avenue
                                                  New Orleans, Louisiana 70113
                                                  Telephone: (504) 581-4892
                                                  Facsimile: (504) 561-6024

                                                  PLAINTIFFS' LIAISON COUNSEL

Andy D. Birchfield, Jr., Esquire
Leigh O'Dell, Esquire
BEASLEY, ALLEN, CROW, METHVIN, PORTIS
 & MILES, P.C.
234 Commerce Street
Montgomery, AL 36103 4160
(800) 898-2034 (telephone)
(334) 954-7555 (fax)
**Co-Lead Counsel**

Christopher A. Seeger, Esquire
SEEGER WEISS
One William Street
New York, NY 10004
(212) 584-0700 (telephone)
(212) 584-0799 (fax)
**Co-Lead Counsel**

Richard J. Arsenault, Esquire
NEBLETT, BEARD & ARSENAULT
2220 Bonaventure Court
P.O. Box 1190
Alexandria, LA 71301
(318) 487-9874 (telephone)
(318) 561-2591 (fax)

Thomas R. Kline, Esquire
Shanin Specter, Esquire
David J. Caputo, Esquire
Lisa S. Dagostino, Esquire
KLINE & SPECTER, P.C.
1525 Locust Street, 19th Floor
Philadelphia, PA 19102
(215) 772-1000 (telephone)
(215) 772-1371 (fax)

Elizabeth J. Cabraser, Esquire
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111
(415) 956-1000 (telephone)
(415) 956-1008 (fax)
On the Brief

Christopher V. Tisi, Esquire
ASHCRAFT & GEREL
2000 L Street, N.W., Suite 400
Washington, DC 20036-4914
(202) 783-6400 (telephone)
(307) 733-0028 (fax)

Gerald E. Meunier, Esquire GAINSBURGH,
BENJAMIN, DAVID, MEUNIER
 & WARSHAUER, L.L.C.
Energy Centre
1100 Poydras Street, Ste. 2800
New Orleans, LA 70163
(504) 522-2304 (telephone)
(504) 528-9973 (fax)

Arnold Levin, Esquire
Fred S. Longer, Esquire
LEVIN, FISHBEIN, SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
(215) 592-1500 (telephone)
(215) 592-4663 (fax)

Troy Rafferty, Esquire
LEVIN, PAPANTONIO, THOMAS, MITCHELL,
ECHSNER & PROCTOR, PA
316 S. Baylen Street, Suite 400
Pensacola, FL 32502
(850) 435-7000 (telephone)
(850) 497-7059 (fax)

Shelly A. Sanford, Esquire
Sanford Pinedo LLP
2016 Bissonnet Street
Houston, Texas 77005
(713) 524-6677 (telephone)
(713) 524-6611 (fax)

Drew Ranier, Esquire
RANIER, GAYLE & ELLIOT, L.L.C.
1419 Ryan Street
Lake Charles, LA  70601
(337)494-7171 (telephone)
(337) 494-7218 (fax)

Mark Robinson, Esquire
ROBINSON, CALCAGNIE & ROBINSON
620 Newport Center Drive
7th Floor
Newport Beach, CA  92660
(949) 720-1288 (telephone)
(949) 720-1292 (fax)

Dawn M. Barrios, Esq. (Bar No. 2821)
BARRIOS, KINGSDORF & CASTEIX, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
(504) 524-3300 (telephone)
(504) 524-3313 (fax)
**Government Action Liaison Counsel**
On the Brief

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that the above and foregoing has been served on Liaison Counsel, Philip Wittmann, by U.S mail and e-mail or by hand delivery and e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pretrial Order No. 8(B), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 19th day of December, 2012.

> /s/ Leonard A. Davis
> Russ M. Herman (Bar No. 6819)
> Leonard A. Davis (Bar No. 14190)
> Stephen J. Herman (Bar No. 23129)
> Herman, Herman & Katz, L.L.P.
> 820 O'Keefe Avenue
> New Orleans, Louisiana 70113
> Telephone: (504) 581-4892
> Facsimile: (504) 561-6024