UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: VIOXX | * | MDL NO. 1657 |
| | * | |
| PRODUCTS LIABILITY | * | |
| LITIGATION | * | SECTION L |
| | * | |
| THIS DOCUMENT RELATES TO: | * | JUDGE FALLON |
| THIRD PARTY PAYOR COMMON | * | MAG. JUDGE KNOWLES |
| BENEFIT FEES | * | |
| FILER: Robert E. Arceneaux/Margaret Woodward/ | * | December 20, 2012 |
| Pascal F. Calogero, Jr. | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**MEMORANDUM IN RESPONSE TO**
**TPP FAC'S PRODUCTION AND RECOMMENDATION**

MAY IT PLEASE THE COURT:

This memorandum is respectfully submitted on behalf of the Law Offices of Eric H. Weinberg ("Weinberg") in response to the TPP FAC's Proposed Decision Distributing Third Party Payor Common Benefit Fund. (Rec. Doc. 64193-1). That proposal was filed on December 11, 2012. On the same day, this Court directed the TPP FAC to provide the hours allegedly supporting the time submissions of Herman Herman Katz & Cotlar ("Herman"), Levin Fishbein Sedran & Berman ("Levin"), and Seeger Weiss ("Seeger").[1] The Court directed undersigned counsel to respond within seven days of their receipt of the production. Production was made on December 13, 2012.

To begin, Weinberg reiterates and incorporates the objection he made to the June 13, 2012 recommendation of the FAC. In that objection, he documents the considerable common benefit he conferred to the TPP settlement, and justifies receipt, at a minimum, of his full submitted lodestar plus costs incurred. While the latest recommendation of the FAC raises Weinberg from "zero" to

---

[1] These three firms, unlike all other claimants to the TPP common benefit fund, did not submit their hours but noted "ledger available from Phil Garrett." The ledgers, however, were not made available until this Court directed their production.

$450,000, as explained below, these figures are obviously part of a negotiation strategy, and not a true reflection of a fair evaluation of Mr. Weinberg's work or contribution.

In response to Weinberg's Motion for Production, the TPP FAC acknowledged that it had not reviewed the hours of the three firms whose time records were submitted to Phil Garret. That admission, disturbing on its face, is rendered far more disturbing by undersigned counsel's review of the data, which does not support the FAC's recommended allocation of common benefit funds. Indeed, the submissions fall so far short of supporting the FAC's recommendation as to suggest that the months'-long review process has had nothing whatsoever to do with any claimants' submissions. Certainly, it has nothing to do with the directives of this Court or with a meaningful allocation of the TPP common benefit fund.

The time of non-FAC and PSC members was deeply discounted in the FAC's first recommendation. (An award of 0 was recommended for Weinberg.) In the latest recommendation, the FAC raised its recommendations for the Objectors somewhat, at what appears to be its own expense. But this does not right the inherent imbalance, because the first recommended distribution was so wildly and irrationally weighted in the FAC's and PSC's favor as to place it beyond the realm of reasonable compromise. Thus, "raising" Weinberg's recommendation to $450,000 by "taking" that amount from Seeger does not restore much equity to the process. This is so because Weinberg's lodestar is still being *cut* by 62% while Seeger's recommended award appears to be based upon hours submitted in connection with the personal injury settlement, and which appear to have been taken into account in the large fee his firm was paid from that fund.[2]

---

[2] In accordance with this Court's guidelines, the submission form inquired of all claimants, "Has the Vioxx MDL Court, or any other Court, already awarded you or your firm common benefit fees for Vioxx TPP-related work?" Seeger answered this question, "No." (Attachment A). However, the form also instructed, "Provide the number of hours and amount of lodestar included in your claimed total TPP common benefit hours and lodestar that you previously submitted
(continued...)

Overall, the FAC is conferring on many of its members substantial multipliers by the submission and allowance of bloated time, and the recommendation of re-compensation of time previously compensated in the CBF allocation in the personal injury litigation. At the same time, it asks others to accept deep discounts of their time, on the theory that the demands for common benefit fees and expenses exceed the $15 million TPP fund. But if the unsupportably duplicative claims were removed, there would be ample money to compensate the claimants fully.

**I**. **The unreviewed submissions contain multiple, serious errors.**

Beyond duplicating hours previously compensated in the personal injury case, the FAC and PSC appear to be drawing heavily on the TPP common benefit fund for payment of the work in connection with the governmental entities litigation and a number of other matters wholly unrelated to the TPP litigation.

Take, for example, Levin's submission. The Levin firm submitted a ledger which includes the entire kitchen sink of its non-personal injury time entries, including work on Stratton, mandamus, Snapka, Turner Branch, Becnel, and other matters. Recognizing the clear impropriety of including such entries in its TPP submission, Levin highlighted its TPP time, and noted, "Only highlighted time is included in the current fee petition for third party payor common benefit fees." Attachment B. The highlighted time sums to 33 hours, a small fraction of the overall ledger. But

---

[2](...continued)
for consideration by the Court in conjunction with its prior award of common benefit fees." To this question, Seeger responded that 8,828 hours were previously submitted for a lodestar of $4,202,858.75. *Id.* This represents *all* of the hours submitted in connection with the TPP. The suggestion, then, is that although the hours were previously submitted, they were not previously compensated. In its original recommendation, the TPP FAC states "Seeger Weiss LLP now asks the Court to consider that it had incurred a total of $9 million in TPP time and submitted less than half of this time in conjunction with the Court's previous common benefit proceedings. (Rec. Doc. 63582, p. 3). This suggestion cannot be squared with Seeger's submission showing that all its time was previously submitted. The fact that Seeger was among the few claimants who received *greater* than the amount of the lodestar submitted in the personal injury common benefit award indicates that its previously-submitted time was also fully compensated.

the FAC took no notice of this essential footnote, having never looked at the ledger.  Additionally, Levin, too forgot about its footnote and claimed *all the time on the ledger.*  Accordingly, the FAC based the recommended award on the *full ledger lodestar of $658,850.*  Noting that Levin had *previously submitted and been compensated for this time in the personal injury action*, the TPP FAC recommended a "reduction" in the TPP award to $650,000. [3] (Rec. Doc. 63928, p. 19).  For the 33 hours devoted to the TPP matter, then, the FAC recommends that Levin be compensated at a rate of $19,709/hr., notwithstanding that it has previously been fully compensated for the time.

Herman calculated its TPP time in two separate exhibits.  It formulated "Exhibit 2" by running five separate reports based on its submissions to Garrett.  The first report searched for the term "TPP," (Attachment C-1, pp. 1-18); the second for the terms "third party" or "3rd party," (Attachment C-2, pp. 1-19); the third for "NJ" or "New Jersey," (Attachment C-3, pp. 1-16); the fourth for "local 68," (Attachment C-4, pp. 1-1); and the fifth for "AG" or "Attorney General," (Attachment C-5, pp. 1-32.)   Herman then added the time for each of these reports: 163.25, 140.5, 116.5, 5, and 352.5, and submitted 601.75 of the total 777.75 hours[4] for a TPP common benefit lodestar compensation of $425,613. It formulated "Exhibit 3" by running the same searches. (Attachment D).  The purpose of this second set of reports is not clear.  Theoretically, perhaps, "Exhibit 3" drew from a different period of time; but in actuality, there is tremendous overlap between Exhibit 2 and Exhibit 3, both in timekeepers and their time entries for identical dates.

---

[3] Levin notes that it was previously compensated for its personal injury time, but suggests that it should be permitted to double-dip for about 10% of that time, which allegedly also benefitted the TPP.  In that case, however, Weinberg, too, has another million-plus dollars worth of previously-compensated time which likewise benefitted the TPP.

[4] The discrepancy in hours is explained by the fact that Herman "only" charged half of the hours appearing on C-5, its AG run. As discussed *infra,* Herman more than made up for this "deduction" by charging many of those hours four times.  Moreover, reducing the AG hours by half (even apart from the complication of then multiplying them by four) does not bring the AG time to the zero contemplating by this Court for claims against the TPP fund.

Exhibit 3 produced another 719 hours of time for TPP common benefit lodestar compensation of $555,487.50. *Herman then combined the overlapping Exhibits 2 and 3 for a total submission of $981,100.* The TPP FAC "reduced" this claim to $950,000 in its recommendation.

Nothing in this Court's rulings suggests that any AG time is compensable out of the TPP common benefit funds, nor should it be. The settlements already under way in the AG cases provide for holdbacks for a common benefit AG fund. Moreover, Weinberg, who has also been heavily involved in the governmental actions, adhered to this Court's instructions and did not submit AG common benefit hours for reimbursement out of the TPP fund. It appears that most other claimants did so as well. *See,* Barrios Kingsdorf submission.

Compounding the error in submitting AG time and expenses for TPP fund reimbursement, Herman submitted many of its AG hours *two, three, or even four times*. As noted above, Herman calculated its hours by running multiple reports, searching for words such as "AG" or "TPP." However, a cursory review of Attachment C(1), which is supposedly the TPP report, shows that the term "AG" or "Attorney General" appears in more than forty entries. When Herman ran its "AG" report, it *repeated* each of those entries. *Compare,* Attachment C-5. The same duplication occurred with virtually *every term* for which Herman searched. Then, when Herman generated its Exhibit 2 from the *same word searches*, for every overlapping date between Exhibits 2 & 3– and there are many– it at least *doubled* its time; *but where the time entries are already duplicated by overlapping searches, Exhibit 3 **quadrupled** those entries.* Attachment E, *en globo,* provides an example of time (1.5 hrs. billed four times by Russ Herman for AG and TPP work on 12/29/08). Because such "AG" time should not have been charged even *once* against the TPP fund, its *quadrupling* is completely unconscionable. Many other entries are obviously not related to the TPP, such as the 5/2/2011 entry for RLV, "Draft/revise and finalize FAC opposition to Objectors' motion re: 3rd Party Payors." Since

there were no Third Party Payor Objectors at that time, this entry plainly relates to the personal injury litigation, in which the FAC filed such an opposition.  Such errors, although plentiful, are not worth the time it takes to identify and lay them out.

Herman was not the only firm to charge its AG time.  Such time appears to be heavily represented in the Dugan entries as well.  The TPP settlement was finalized on September 14, 2009, (Rec. Doc. 63928, p. 2), although firms like Dugan, which were actively involved in the negotiations, surely knew that the deal was done in August.  In late September, October, and November, 2009, firm members entered more than 100 hours of time for items like "discovery," and review of documents from NJ TPP Local 68, a case that had been concluded for years.  *See,* Attachment E.  Considering that the TPP matter had been concluded, such entries clearly relate to the AG litigation, in which the firm was deeply involved.  As with Herman's (and most FAC members' submissions), there are also multiple individual entries that are suspicious, such as Mr. Dugan's for 5/28/09, which totaled 27.5 hours for the day, *Id;* but it is not worth undersigned counsel's or this Court's time to examine them singly.  Such review ought to have been performed by the TPP FAC; but in its opposition to Weinberg's Motion to Produce, the FAC admitted that it had not reviewed the time of Herman, Levin, and Seeger.   Nor apparently for Dugan, either; the FAC recommended a award close to the firm's full lodestar.

**II. Weinberg stands by his submissions and by the value of his work.**

As required by Pretrial Order 57, Weinberg devoted a great deal of time and attention to his submissions.  He presented detailed time and expense records demonstrating that he had spent time (most of it personally) yielding a lodestar of $1,138,500 and had expended $27,392.61 for a total claim of $1,165,892.  He certified that none of this time or expense had been submitted in connection with the personal injury common benefit award, and that he had received no payments from clients

for any of the time or expenses submitted as common benefit.  He is satisfied that his submissions are as close to correct as possible.

By contrast, Herman, Levin, and Seeger did not comply with Order 57 at all, and the FAC has, without explanation, recommended substantial multipliers for those non-submissions, even though much of the claimed time has already been compensated.  Among them, these three firms account for $6,300,000 of the $14,693,000 award recommended by the FAC.  For Weinberg, it has, again without explanation, recommended a total of $450,000.

Weinberg is aware that while the FAC has not questioned the worth of any claimant's time, including his, there is a whisper campaign afoot, suggesting that his time did not deliver full value to the TPP common benefit, and thus should be discounted.  This is troubling on multiple levels.

First, if the worth of a claimant's work is being questioned, let it be done openly, so that he can respond.  Second, let it be done uniformly, so that everyone may comment on every claimant's contributions.  Third, let it not be done by a member of the FAC whose award is to be reduced by the amount that Weinberg's is increased, which provides an obvious incentive for disparagement.  Fourth, if Weinberg's time is to be reduced on the basis of its allegedly lesser worth, so must that of the many other claimants who have entered considerable time for the use and review of Weinberg's work.  It makes no sense, for example, to offer Weinberg 38% of the value of his time while awarding Lieff Cabraser 100% of the value of time spent conferring with Weinberg or reviewing Weinberg product.

**III. Weinberg is entitled to a multiplier.**

If any claimant receives double payment for time compensated in the personal injury CBF allocation, Weinberg is entitled to such payment also.  He has submitted a supplemental form showing how much of his previously-compensated time inhered to the TPP common benefit. After

it appeared obvious that members of the FAC were seeking to double-dip, Weinberg submitted a supplemental application, noting that if duplication were allowable, he should be credited with an additional 1680 hours of time that benefitted the TPP action, bringing his common benefit lodestar to $2,398,500. The FAC's recommendations approve double-dipping for many of its members; but it did not even acknowledge that such a submission was made by Weinberg.

Also, if any claimant receives a lodestar multiplier, Weinberg is entitled to the highest multiplier as well, because his work in New Jersey contributed as much to the TPP common benefit as that of any other claimant. He submitted affidavits by well-respected TPP counsel attesting to the value of his work.

**IV. The FAC's proposed order that this Court force Weinberg accept an unjust allocation or waive his right to contest an agreement that had no legal effect against him asks this Court to overstep its bounds.**

Instead of providing any meaningful analysis of why Weinberg's recommended allocation is less than half his lodestar, or commenting or disputing any of the evidence Weinberg provided in his submission, the FAC's proposed order to this Court asks the Court to insert a "poison pill" clause, whereby if Weinberg does not "unequivocally" assent to the nonappealability of this Court's allocation, the FAC is free to take all of the allocation of redistribute it among themselves. But, with all respect to this Court's authority, its power does not include the right to determine whether an appeal lies from an order. That power resides in the Court of Appeal. *See Scherbatskoy v. Halliburton Co.*, 125 F.3d 288, 290 (5th Cir. 1997) (Court of Appeal has "inherent" authority to determine its own jurisdiction.). Accordingly, the threat of allowing the FAC to nullify Mr. Weinberg's allocation interferes with the exclusive jurisdiction of the appellate court, and is a transparent attempt to entreat this Court to overstep to provide the FAC with additional negotiation leverage.

Nor is there anything contradictory about Mr. Weinberg applying for common benefit fees, but also reserving the right to contend that the clause in the CBF agreement prohibiting appeal may be unenforceable. The TPP Settlement document specifically includes a severability clause that provides that if any provision regarding jurisdiction is found invalid, its invalidity does not affect the rest of the agreement, and is severable. *See* Sec. 8.3.2.[5] It is well-established law that provisions in contracts that are against public policy are severable. There is no reason why Mr. Weinberg cannot apply for fees under PTO 57, which does not contain any requirement that a claimant accept all terms of the settlement agreement, and also contend that the same time that the clause regarding appeals is unenforceable.

**V. Conclusion**

In conclusion, Weinberg requests the entry of an order allocating a minimum of $1,165,892 to him in TPP common benefit fees and expenses, together with a multiplier and award for overlapping hours if such is extended to any other claimant.

Respectfully submitted:

---

[5] 8.3.2 Any provision of this Agreement which is prohibited or unenforceable to any extent or in any particular context shall be ineffective, but such ineffectiveness shall be limited as follows: (i) if such provision is prohibited or unenforceable only in or as it relates to a particular jurisdiction, such provision shall be ineffective only in or as it relates to (as the case may be) such jurisdiction and only to the extent of such prohibition or unenforceability, and such prohibition or unenforceability in or as it relates to (as the case may be) such jurisdiction shall not otherwise invalidate or render unenforceable such provision (in such or any other jurisdiction); (ii) if (without limitation of, and after giving effect to, clause (i)) such provision is prohibited or unenforceable only in a particular context (including only as to a particular Settling Plaintiff or under any particular circumstance or circumstances), such provision shall be ineffective, but only in such particular context; and (iii) without limitation of clauses (I) or (ii), such ineffectiveness shall not invalidate any other provision of this Agreement. In any event, upon any such determination that any term or other provision is invalid, illegal or unenforceable, the Merck and the Settling Plaintiffs shall negotiate in good faith to modify this Agreement so as to effect the original intent of the Parties as closely as possible to the fullest extent permitted by applicable law.

| | |
|---|---|
| /s/ Robert E. Arceneaux | /s/ Margaret E. Woodward |
| _____ | _____ |
| Robert E. Arceneaux, La Bar No. 01199 | MARGARET E. WOODWARD, La. Bar |
| ROBERT E. ARCENEAUX LLC | No.13677 |
| 47 Beverly Garden Drive | 3701 Canal Street, Suite C |
| Metairie, LA 70001 | New Orleans, Louisiana  70119 |
| (504) 833-7533 office | (504) 301-4333 office |
| (504) 833-7612 fax | (504) 301-4365 fax |
| rea7001@cox.net | mewno@aol.com |

Pascal F. Calogero, Jr., La. Bar No. 03802
AJUBITA, LEFTWICH & SALZER, L.L.C.
1100 Poydras Street
New Orleans LA 70163-1950
(504) 582-2300 office
(504) 582-2310 fax
pcalogero@alsfirm.com

Attorneys for Law Offices of Eric Weinberg

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been served by e-mail, and by upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre Trial Order No.8, on this date, December 20, 2012.

_____s/Margaret Woodward_____