## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX® | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY | * | SECTION L |
| LITIGATION | * | |
| This Document Relates to | * | JUDGE FALLON |
| Cases Listed on Exhibit A to | * | |
| Motion to Preclude Testimony | | |
| | * | MAG. JUDGE KNOWLES |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*   \*

### PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO PRECLUDE CERTAIN TESTIMONY OF MARK A. CROWTHER, M.D. AND THE TESTIMONY OF JOHN P. KRESS, M.D.

On November 2, 2011, Merck filed a Motion for Summary Judgment in the venous thromboembolism ("VTE") cases, accompanied by two expert reports, one of Mark A. Crowther, M.D., and the other of John P. Kress, M.D [Rec. Doc. 63539]. The undersigned filed a Motion to Strike or in the Alternative to Remand Merck's Motion for Summary Judgment in VTE Cases [Rec. Doc. 63606]. This Court denied the motion to strike, continued Merck's motion for summary judgment in VTE cases generally and directed the parties to identify experts on general causation in the VTE cases. On May 15, 2012, the Court entered Pretrial Order No. 58 [Rec. Doc. 63842], which, *inter alia*, establishes the schedule for identification of those experts, the filing of their reports, the taking of their depositions and submission of *Daubert* motions. Plaintiffs now file their Motion to Preclude Certain Testimony of Mark A. Crowther, M.D. and the Testimony John P. Kress, M.D. and this Memorandum In Support thereof.

## I.   Legal Standard

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony.  Rule 702 is a codification of the United States Supreme Court's opinion in *Daubert v. Merrell Dow Pharmaceuticals,* 509 U.S. 579 (1993). In *Daubert*, the Supreme Court held that trial courts should serve as the gatekeeper for expert testimony and should not admit such testimony without first determining that the testimony is both "reliable" and "relevant."  *Id*. at 589.

Scientific testimony is reliable only if "the reasoning or methodology underlying the testimony is scientifically valid," meaning that such testimony is based on recognized methodology and supported by appropriate validation based on what is known. *Id*. at 592-93. In *Daubert*, the Supreme Court set forth a non-exclusive list of factors to consider in determining the reliability of expert testimony. *Id*. at 593-95. These factors are: 1) whether the theory has been tested; 2) whether the theory has been subject to peer review and publication; 3) the known or potential rate of error; 4) whether standards and controls exist and have been maintained with respect to the technique; and 5) the general acceptance of the methodology in the scientific community. *Id*. Whether some or all of these factors apply in a particular case depends on the facts, the expert's particular expertise, and the subject of his testimony. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 138 (1999).

In addition to the five factors laid out in *Daubert*, a trial court may consider additional factors in assessing the scientific reliability of expert

testimony. *Black v. Food Lion, Inc.*, 171 F.3d 308, 312 (5th Cir. 1999). Some of these factors may include: 1) whether the expert's opinion is based on incomplete or inaccurate dosage or duration data; 2) whether the expert has identified the specific mechanism by which the drug supposedly causes the alleged disease; 3) whether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion; 4) whether the expert has adequately accounted for alternative explanations; and 5) whether the expert proposes to testify about matters growing directly out of research he or she has conducted independent of the litigation. *See, e.g., id.* at 313; *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 278-79 (5th Cir. 1998); *Christopherson v. Allied-Signal Corp.*, 939 F.2d 1106, 1114 (5th Cir. 1991); *Newton v. Roche Labs., Inc.*, 243 F. Supp. 2d 672, 678 (W.D. Tex. 2002).

Scientific testimony is relevant only if the expert's reasoning or methodology can be properly applied to the facts in issue, meaning that there is an appropriate fit between the scientific testimony and the specific facts of the case. *Daubert*, 509 U.S. at 593. Scientific evidence is irrelevant, however, when there is too great an analytical gap between the data and the opinion proffered. *General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997).

The party seeking to introduce the expert testimony bears the burden of demonstrating that the testimony is both relevant and reliable. *Moore*, 151 F. 3d at 275-76. The focus is not on the result or the conclusion, or its persuasiveness, but on the methodology. *Id.* The proponent need not prove that the expert's

3

testimony is correct, but must prove by a preponderance of the evidence that the methodology used by the expert was proper. *Id*.

The trial court is the gatekeeper of scientific evidence. *Daubert*, 509 U.S. at 596. It has a special obligation to ensure that any and all expert testimony meets these standards. *Id*. Accordingly, it must make a preliminary assessment that the reasoning or methodology underlying the testimony is scientifically valid and that the reasoning or methodology can be properly applied to the facts in issue. *Id*. at 595-93. In making this assessment, the trial court need not take the expert's word for it. *Joiner*, 522 U.S. at 147. Instead, when expert testimony is demonstrated to be speculative and lacking in scientific validity, trial courts are encouraged to exclude it. *Moore*, 151 F.3d at 279.

In satisfying its "gatekeeper" duty, the Court should look at the qualifications of the experts and the methodology used in reaching their opinions and should not attempt to determine the accuracy of the conclusion reached by the expert. The validity or correctness of the conclusion is for the fact finder to determine. Here, the issues presented by the complained-of testimony from Drs. Crowther and Kress will particularly involve the witnesses' acknowledged lack of qualifications as to some testimony, the lack of probative value of other testimony, the absence of established qualifications for other testimony and the huge analytical gap between fact and conclusion in other testimony.

## II.  Dr. Crowther Should Be Precluded From Testifying in Four Distinct Areas

Mark A. Crowther, M.D. has filed a Declaration and Report [Rec.Doc.63539-5], attached as Exhibit A[1] and referred to herein as "Crowther Rep." and a Rebuttal Report [Rec.Doc.64111-1], attached as Exhibit B and referred to herein as "Crowther Rebuttal." Plaintiffs stipulate that Dr. Crowther is eminently qualified to express opinions about VTEs (his primary research subject and his area of clinical expertise) and about pulmonary embolisms ("PE"). Plaintiffs do object, however, to the four following areas of Dr. Crowther's proposed testimony, each of which are developed more fully in the individual sections hereinafter.

First, Dr. Crowther states in his Report that his "fundamental premise" for his opinion that Vioxx has no effect on VTEs is his belief that Vioxx couldn't inhibit COX-2 in the veins when (according to Dr. Crowther) there is no COX-2 in the venous vasculature to be inhibited ("In the absence of local COX-2, COX-2 inhibitors cannot exert biological effects. Thus, to impact venous physiology, one would both need to demonstrate the presence of COX-2 in native venous vasculature and secondarily demonstrate that inhibition of COX-2 leads to localized procoagulant changes in the venous vasculature." Crowther Rep. at 8; *see also* Crowther Rebuttal at 2, ". . . based on multiple published studies, the COX-2 enzyme does not exist in native human veins, even in patients with

---

[1]  The Report with Dr. Crowther's full *curriculum vita* is in the record; since the focus on Dr. Crowther's qualifications and expertise is exclusively on what he **says** about his own expertise, the *curriculum vita* is not included at Exhibit A.

established atherosclerotic disease."). COX-2 is, in fact, present in the venous vasculature, and there is no reliable scientific basis for any testimony from Dr. Crowther contending that it does not exist in the veins.

Second, Dr. Crowther relies upon a "systematic review of the published literature" conducted by his "research group" to opine that there is no support of a relationship in the medical literature between Vioxx and VTEs. Crowther Rep. at 8. When Dr. Crowther was deposed, he acknowledged that this literature review has been rejected by three of the leading scientific journals in his field. He also acknowledged that the acceptance of the literature review by the 2011 American Society of Hematology as an abstract (*id.*) was in the face of a material misstatement by Dr. Crowther regarding the absence of any conflict of interest (which conflict of interest did exist and which Dr. Crowther now admits he should have disclosed). Dr. Crowther and any other witness should be precluded from discussing Dr. Crowther's research group's "systematic review of the published literature."

Third, Dr. Crowther's Report contains a step-by-step explanation of the development of the clot from a biological standpoint. Crowther Rep. at 7 and *seriatim*. Dr. Crowther's Rebuttal Report also criticizes Dr. Lucchesi's testimony regarding the cellular-level mechanism between Vioxx and VTEs ("Third, while Dr. Lucchesi seems to suggest that rofecoxib, specifically, may increase tissue factor and decrease thrombomodulin, there are data with rofecoxib that do not support these postulated effects," Crowther Rebuttal at 3, yet **no data is cited)**.

Moreover, despite the necessity of a thorough understanding of the cellular method by which COX-2 mediates the synthesis and production of prostaglandins, prostacyclin and thrombomodulin in order to reach these stated conclusions, Dr. Crowther expressly disavowed any ability as an expert to describe the role of these proteins and enzymes, and their reaction to, and performance in the face of, COX-2 inhibitors. Plaintiffs ask that the Court preclude Dr. Crowther from expressing opinions relative to the mechanisms of clot formation, the clotting cascade, the degree to which COX-2 plays a role in that process and the effect of COX-2 inhibitors on that process due to his acknowledged inability to describe that process.

Fourth and last, Dr. Crowther's Report and Rebuttal Report contain extensive discussion regarding arterial events. Crowther Rep. at 8-9, Crowther Rebuttal at 3. Yet, when he was deposed, Dr. Crowther disclaimed any expertise on the mechanism of disease in the **arterial** vasculature. Plaintiffs request that the Court preclude any testimony from Dr. Crowther regarding arterial thromboembolic disease.

**A.      Dr. Crowther Should Be Precluded From Testifying That There Is No COX-2 Present in the Venous Vasculature.**

Dr. Crowther makes the obvious point that in the absence of local COX-2 in the veins, COX-2 inhibitors cannot exert biological effects. Crowther Rep. at 8. The problem with this testimony is his invalid conclusion that there is no COX-2 in the venous vasculature. Deposition of Mark Crowther, M.D., October 15, 2012

("Crowther Dep.") at 82. He testified that he based that opinion on only two sources, an article by Bishop-Bailey[2] and an article by Ost[3]. *Id.* at 83-84.

Dr. Crowther's interpretation of these articles as stated in his Report was ultimately disavowed by his deposition testimony. The indicator for the presence or absence of COX-2 is the corresponding presence or absence of the mRNA marker for the protein. Crowther Dep. at 77. After deposition questioning about the Bishop-Bailey article and then about the Ost article, Dr. Crowther admitted that the Bishop-Bailey article did not support his stated conclusion (*id*. at 103:12-104:1, and at 109:3-109:22) and then he admitted that the Ost article didn't either.[4] Dr. Crowther concluded this line of examination by his outright admission that **neither** article supported the stated opinion: "But I will agree that we've been through the text of the articles, and nowhere in the articles do

---

[2]   "Induction of Cyclooxygenase-2 in Human Saphenous Vein and Internal Mammary Artery."  Bishop-Bailey D, Pepper JR, Haddad EB, Newton R, Larkin SW, Mitchell JA.  *Arteriosclerosis, Thrombosis and Vascular Biology* 1997; 17(9): 1644-1648 (Crowther Dep. Ex. 4), referred to herein as "Bishop-Bailey" and attached as Exhibit C.

[3]   "Expression of mRNA for Phospholipase A2 Cyclooxygenase, and Lipoxygenases in Cultured Human Umbilical Vascular Endothelial and Smooth Muscle Cells and in Biopsies from Umbilical Arteries and Veins."  Ost, M, et al., *Journal of Vascular Research*, 1998; 35:150-155, (Crowther Dep. Ex. 5), referred to herein as "Ost" and attached as Exhibit D.

[4]   "Q: Is there any statement in the Ost article where the authors conclude that COX-2 is not expressed in native venous endothelial cells in the human body? A: So I'll just have to take a moment to review the paper to confirm whether they do or don't say that.  Okay, I've reviewed the paper quickly, and I don't see anywhere in here where they state what you just asked me the question (*sic).*" Crowther Dep.at 105:1-105:9.

they say specifically that COX-2 is not expressed in venous segments." Crowther Dep. at 109:19-109:22.

Frankly, Dr. Crowther's initial representation as to these two articles was misleading. The abstract of the Bishop-Bailey article is clear – the authors sought to capture the ability of veins and arteries to express COX-2 by testing and comparing samples of human saphenous vein and internal mammary artery. Bishop-Bailey at 1644. No COX-2 mRNA was found **in either** freshly prepared saphenous vein or in freshly prepared internal mammary artery; however, when both samples were manipulated after 48 hours in culture (which was the experimental design to replicate the inflammatory response in damaged vascular structures), mRNA for COX-2 was detected in **both** the vein and the arteries. *Id*. Thus, samples of veins and arteries responded identically throughout the experiment.

Dr. Crowther was apparently unaware that the experiment included arterial samples, Crowther Dep. at 85:3-89:23, and hence he focused on the "fresh" venous samples as equivalent to *in vivo,* or native, venous structures to conclude that there was no COX-2 in native veins. However, a careful review of the article during deposition revealed two significant and insurmountable problems: First, the authors used venous **and** arterial samples with exactly the same results so **the data and Dr. Crowther's extrapolations would lead to the same conclusion for fresh arteries as fresh veins** and no expert would argue that there is no COX-2 in arteries. Crowther Dep. at 96:7-96:13. Second,

9

after 48 hours and manipulation, **both** arterial **and** venous segments **did in fact produce** COX-2. Crowther Dep. at 99:5-99:10.

Dr. Crowther's extrapolations are not supported by either article, and he cites no other source for his opinion. Further, the logical extension of Dr. Crowther's extrapolation means that there is no COX-2 on the arterial side, and that there was never any COX-2 anywhere for VIOXX to inhibit.  Merck would surely move heaven and earth to refute that conclusion. Accordingly, Dr. Crowther's testimony that there is no COX-2 in the venous vasculature should be precluded.

### B.    The Court Should Preclude All References to Dr. Crowther's "Systematic Literature Review."

In his Report, Dr. Crowther opines that Vioxx is not associated with an increased risk of VTE based in part on a self-described "systematic literature review" conducted by his research group.[5] Based upon this review, Dr. Crowther states that there is no basis in the literature to claim an increase in the risk of VTE with rofecoxib use. Crowther Rep. at 8-9, Exhibit E.

However, Dr. Crowther's peers have soundly rejected his literature review. Despite submitting the review to **three** highly respected medical journals, **not one** has chosen to publish Dr. Crowther's literature review. Crowther Dep. at 14:1-20:6. This review has been **rejected** for publication by *Circulation*, by *Annals of Internal Medicine* and by *Thrombosis*, even after Dr.

---

[5] "Rofecoxib Does Not Appear to Increase the Risk of Venous Thromboembolism: A Systematic Review of the Literature." Goy, Jennifer; Paikin, Jeremy; Crowther, Mark; attached as Exhibit E.

Crowther made modifications to the review based on the feedback he received from peer reviewers at each publication.  Crowther Dep. at 13:11-13:20.

Dr. Crowther also testified that the peer reviewers, his highly credentialed colleagues at *Circulation*, *Annals of Internal Medicine* and *Thrombosis, **expressed** a consensus opinion that there is an increased risk of VTEs with the use of Vioxx*:

> My impression from having read through the comments – and again, they are there[6] – that the editors of the journals implied that rofecoxib – that COX-2 inhibitors in general are associated with venous thrombosis . . . if you read the reviews . . . the reviewers imply, in my opinion, that there is an association.  And therefore, a paper which purports that there is no association is going to have a harder pathway to getting published.

Crowther Dep. at 16:19-18:15. Dr. Crowther expressly acknowledges that his peer reviewers at all three journals **do believe** that there is an association of "increased risk" between Vioxx and VTE. *Id*. at 18:17-18:24.

Clearly, Dr. Crowther's literature review is not reliable scientific evidence and is at odds with the body of opinion in the scientific community. Its rejection by three respected journals mandates the conclusion that this review is unreliable for discussion in scientific circles and, by extension, unreliable for *Daubert* purposes. *Daubert* looks in part to whether the material has been subjected to peer review and publication. *Daubert*, 509 U.S. at 592-95. While publication is not a condition precedent to meeting a *Daubert* challenge*, where it

---

[6]  Although the cited testimony suggests that the peer reviewers' comments were provided during the deposition, Plaintiffs' counsel could not locate such documents in the Crowther production as of the writing of this Memorandum, or they would have been attached.

has been attempted and rejected that is quite another matter. Here, the editors of three journals in Dr. Crowther's specialty field rejected Dr. Crowther's analysis and, in fact, expressed an opposite conclusion. The commentary of the peer reviewers on the relationship between Vioxx and VTE further undermines the overall reliability of Dr. Crowther's conclusions and calls the results into question.

An additional shortcoming of Dr. Crowther's "systematic literature review" is that its reliability is limited by the questionable quality of Merck's underlying reported data. Indeed, this factor is most likely a reason for the rejection by these journals whose staff are well-familiar with the reported data manipulations in Merck's Vioxx clinical trials.  Every journal strives to avoid publishing "scientific" conclusions based on flawed data, and the inadequacies of Merck's Vioxx data are well known to American researchers in general and undoubtedly to the peer reviewers for these journals also. Criticism of Merck's reporting of safety and efficacy data for Vioxx dates back years and is well-documented in respected, peer-reviewed literature, such as the Journal of the American Medical Association[7].   In fact, the authors of a study cited in Dr.

---

[7]   *See* for example: "Reporting Mortality Findings in Trials of Rofecoxib for Alzheimer Disease or Cognitive Impairment: A Case Study Based On Documents From Rofecoxib Litigation," Psaty BM, Kornmal RA, *JAMA* 2008 299:1813-7; "Correction: Report of Specific Cardiovascular Outcomes of The ADVANTAGE Trial," *Ann Intern Med*, 2006; 144:943; "Expression of Concern Reaffirmed." Curfman GD, Morrissey S, Drazen JM *, N Engl J Med*, 2006; 354:1193; "Cardiovascular Events Associated with Rofecoxib: Final Analysis of the APPROVe Trial," Baron JA, Sandler RS, Bresalier RS, Lanas A, Morton DG, Riddell R, et al. *Lancet* 2008;372:1756-64; and "Underreporting of

Crowther's own "systematic literature review" criticized a general lack of integrity in Merck's reports of published data in three of its most significant clinical trials.[8]

Given the myriad problems with data reporting and collection in Merck's trials, it is clear that no true count of Vioxx-related VTEs can be gathered from the reported adjudicated data. Dr. Crowther's literature review ultimately resulted in 15 articles and all **only** used Merck's published data. Crowther Dep. at 139:21-140:3. His research team used a software program to abstract the relevant information. *Id.* at 156:6-156:18. He said the process of abstracting the data to obtain the results found in the "systematic literature review" took about ten minutes. *Id.* at 166:15-166:24. He had no record of that extraction – electronic or otherwise. *Id.* at 166:9-167:4. Dr. Crowther agreed that his literature review is limited by the original authors' findings, some of whom are Merck employees. *Id.* 152:11-153:6. Relying only on Merck's published data –

---

Cardiovascular Events in the Rofecoxib Alzheimer Disease Studies," Madigan D, et al.; American Heart Journal 2012; 0; 1-8.

[8]   "Cardiovascular Safety of Non-Steroidal Anti-Inflammatory Drugs: Network Meta-Analysis." Trelle S, Reichenbach S, Wandel S et al. *British Medical Journal*. 2011; 342:7086.  In the "Strengths and Weaknesses of the Meta-Analysis" section, the authors state: "Thirdly, the quality of our analysis is limited by the quality of the underlying data.  Although the methodological quality of included trials was generally satisfactory, **the quality of reporting was often less than optimal and we found discrepancies in the reported number of events** between different sources of information for major trials including ADVANTAGE (Assessment of Differences Between Vioxx and Naproxen to Ascertain Gastrointestinal Tolerability and Effectiveness), VIGOR (Vioxx Gastrointestinal Outcomes Research), and APPROVe (Adenomatous Polyp Prevention on Vioxx)." (Emphasis added)

which is well documented to be unreliable and skewed preferentially to Merck –
renders the "systematic literature review" unsound for *Daubert* purposes, since
there is a complete analytic gap between the actual underlying data and Dr.
Crowther's opinions. *Gen. Elec. Co.* 522 U.S. at 146. If these "findings" are not
reliable enough for these journals, they are not reliable enough to drive the
outcome of the jury trials on these claims and this testimony should be
precluded.

Moreover, Dr. Crowther did not review any of Merck's dozens of Clinical
Study Reports, or CSRs. Crowther Dep. at 140:22-143:11. When asked whether
he had reviewed all of the CSRs on the articles contained in his literature
review, he stated "No, I've not read the study report . . . ". *Id.* at 140:25-141:9.
He was "not familiar with" the term "CSR", and apparently did not know that
more than one CSR existed, despite the fact that Merck completed over 150
CSRs and protocols during its clinical trials of Vioxx. *Id.* at 142:1-142:4. As an
additional infirmity, the "systematic literature review" is not a complete review
of the bulk of Merck's randomized, blinded, clinical trial data which, according to
Dr. Crowther, is the "gold standard" in assessing clinical effects. Crowther Rep.
at 8.

Last but not least, and to the extent it is argued that the acceptance by
the American Society of Hematology ("ASH") lends some *Daubert* credence to the
literature review, it was not the "systematic literature review" that was
accepted, but rather an abstract of the project. And Dr. Crowther admitted that

14

he failed to disclose a material conflict of interest when the abstract of the "systematic literature review" was submitted to ASH and the poster based on that abstract was approved[9] — that he had been hired by Merck to defend these claims from any connection with VTEs when he did the "systematic literature review" and reported the absence of any such connection. Dr. Crowther's conflict statement on the poster was: "With respect to COIs, I consult with many pharmaceutical firms, but I should have no relevant COIs pertaining to this case." Crowther Poster, Exhibit G. Dr. Crowther's poster was presented to ASH in 2011, **after** he was contacted by Merck in 2010 to serve as a consultant on these cases, the exact topic of his poster.  Crowther Dep. at 28:12-30:7. Dr. Crowther agreed that the conflict should be corrected, stating that he "absolutely agree[d]" that "it is a conflict to be working as an expert witness on this topic at the same time as you're publishing this sort of a paper."  Crowther Dep. at 38:4, 37:22 – 37:25.

In sum, for the aforementioned reasons, Dr. Crowther's "systematic literature review" is not reliable expert testimony on any relevant issue and such testimony and any reference to it or the abstract or the poster should be stricken and not submitted to the jury.

---

[9]   The "poster" is a foam-core board presentation of the abstract made in a large hall with hundreds of other posters, all toured by meeting attendees.  Dr. Crowther's team displayed the poster for one or two days.  The abstract is attached as Exhibit F and the poster as Exhibit G.

**C.     Dr. Crowther Should Be Precluded From Testifying On The
Topics of Specific Mechanisms of Clot Formation and the Role
of Proteins and Enzymes in That Process.**

The interrelationship between COX enzymes, prostacyclin and

prostaglandins is at the heart of this litigation. As early as November, 2005, this

Court noted:

> In the early 1990's, scientists discovered that the COX enzyme had
> two forms – COX-1 and COX-2 – each of which appeared to have
> several distinct functions.  Scientists believed that COX-1 affected
> the synthesis or production of prostaglandins responsible for the
> protection of the stomach lining, whereas COX-2 mediated the
> synthesis or production of prostaglandins responsible for pain and
> inflammation.

Order and Reasons, November 18, 2005, Rec. Doc. 1516, at 2.

And yet (despite contrary opinions in his Report), Dr. Crowther has

disclaimed any ability to testify as an expert about prostaglandins, and how they

are affected by the COX enzyme or how they activate the next steps along the

clotting cascade. Dr. Crowther also testified to a lack of expertise as to how

prostaglandins or prostacyclins promote the expression of thrombomodulin and

tissue factor despite opinions on this topic in his Reports.

When asked the general question of how prostacyclin is generated [by

prostaglandin as part of the clotting cascade—a question Drs. Lucchesi and

Olyaei could answer in their sleep, Dr. Crowther stated repeatedly that he would

have to go back to basic texts and source materials to talk about even the "names

of any of the substrates or the mechanisms or anything that ends up being

prostacyclin" in order to have enough "assurance to be on the record for it.  I'd

have to spend time reviewing the literature." Crowther Dep. at 74:23- 77:6 generally and at 76:25-77:6 as quoted.

On multiple other occasions, Dr. Crowther made the same concession of no expertise about the clotting pathways:  Dr. Crowther stated that he is ". . . not an expert in the prostaglandin synthetic pathway.", Crowther Dep. at 51:18-51:23; when asked whether prostacyclin in present in both venous and arterial vasculature, he stated that he doesn't consider himself an expert in that area and that he would have to review the current medical literature to provide an accurate answer to that question, *id.* at 52:7:52:18; "Again, I'm not an expert in this . . . . I believe there is controversial evidence about exactly when and where prostacylins are produced and whether they are produced by COX-1 or COX-2.", *id.* at 53:13-53:21; he declined to comment on whether the literature shows that prostacyclin is activated by the COX-2 pathway because he is "not in that area of research.", *id.* at 54:19-55:1;  he declined to opine on whether prostacyclin produces or leads to expression of thrombomodulin – "I wouldn't consider myself a sufficient expert to provide, for the purposes of a court proceeding, information in that area.", *id.* at 55:3-55:12; and Dr. Crowther declined to be on the record expressing an opinion on whether COX-2 has a role in the regulation of tissue factor, "I wouldn't want to be on the record as being indicated as being an expert in that area.", *id.* at 62:3-62:12. Perhaps none of this is surprising given that Dr. Crowther had never conducted any research on COX-2 inhibitors before his role as an expert here for Merck (*id.* at 49:16-50:7), but it is surprising to see what he

disclaimed as fields of expertise in the face of the opinions and criticisms that are set forth in his written reports.

It is difficult to understand how Dr. Crowther can offer opinions on the effects of Vioxx and COX-2 inhibitors on the COX-2 pathway when he won't claim expertise in those areas. It is difficult to understand how he can criticize Dr. Lucchesi and Dr. Olyaie's testimony on cellular effects of COX-2 and its inhibition on the clotting cascade in the venous vasculature when he doesn't claim to be an expert in that area. Proper credentials do not assure that an expert's opinion will survive *Daubert,* but proper credentials and adequate expertise is **necessary** to survive *Daubert* and admit that expert's testimony. *Kumho Tire Co.,* 526 U.S.at 153. Accordingly, Dr. Crowther's proposed testimony on the specific mechanism of clotting in the venous vasculature, the role of COX-2 in that process and his criticism of Plaintiffs' experts in these areas should be precluded.

> **D.     The Court Should Preclude Dr. Crowther From Testifying About Arterial Thrombotic Events.**

Dr. Crowther's Report is rife with references to arterial events. His report contains a subheading titled "[v]enous and arterial thromboembolism" and he devotes at least two pages to explaining how VTE is not like arterial thromboembolism. Crowther Rep. at 6-7.

In his deposition testimony, Dr. Crowther concedes that he does not consider himself an expert on the arterial system, and in reference to deposition questions regarding the arterial side of the vascular system he repeatedly stated

that arterial events are outside of his expertise.  ". . . I'm not an expert on the arterial mechanism of disease." Crowther Dep. at 87:5-87:10. Dr. Crowther was also unable to opine on a potential mechanism for arterial events:  ". . . I don't know enough about vascular biology to be able to state a putative mechanism." *Id*. at 137:22-138:4. When asked if COX-2 is ever expressed in the arterial endothelial cells or the native arterial vasculature, he stated "I don't consider myself an expert on the arterial side." Crowther Dep. at 85:12-85:17.

In fact, despite conducting a systematic literature review that initially considered over 1,300 articles, Dr. Crowther does not even have an opinion on whether Vioxx is a risk factor for arterial vascular events. Crowther Dep. at 133:15-139:19. He has "never done the detailed analysis that we've done on the venous side." *Id*. at 139:5-139:10. His lack of knowledge in this area is unusual, considering that the very first sentence of Dr. Crowther's "systematic literature review" states "Rofecoxib, a selective cyclo-oxygenase-2 (COX-2) inhibitor, has been associated with increased arterial thrombosis." *See* Exhibit E, attached, at 2. Oddly, Dr. Crowther had not considered whether Vioxx could cause arterial events by the time he arrived prepared for his deposition, despite the fact he had considered that enough at the time his Report was written (presumably by him) to state that VTE and arterial thrombosis are entirely separate animals as far as clotting promoted by COX-2 inhibition is concerned.

Reliable medical evidence stretching back nearly a decade has shown an increased risk between Vioxx and arterial events.  This Court has noted time

19

and again that Vioxx was pulled off the market for its propensity to cause arterial events, including heart attacks and stroke:

> Vioxx remained publicly available until September 20, 2004, when Merck withdrew it from the market after data from a clinical trial known as APPROVe indicated that the use of Vioxx increased the risk of cardiovascular thrombotic events such as myocardial infarction (heart attack) and ischemic stroke.

Order and Reasons, April 25, 2012, Rec. Doc. 63798 at 2.

A substantial body of medical literature has been authored, published and discussed regarding Vioxx's propensity to cause arterial events, and the subsequent litigation has stretched on nearly a decade with Merck paying billions of dollars to personal injury claimants. It is disingenuous to pretend that Vioxx is not a risk factor for arterials events, just as it is disingenuous to avoid connecting Vioxx (and its manufacturer who has retained you as an expert) to an increased risk of arterial thrombi. But, since Dr. Crowther claims he never contemplated the possibility that Vioxx increases the risk of arterial thrombi, it follows as a matter of simple logic that Dr. Crowther can't establish the absence of a relationship between Vioxx and VTEs by expounding on the differences between venous vasculature and arterial vasculature **when he doesn't even know (or won't admit to know) that there is a causal link between Vioxx and arterial thrombi.**

For purposes of this Motion, Dr. Crowther has removed himself from this debate by conceding that arterial disease is outside his range of expertise, his testimony is unreliable for *Daubert* purposes and he should be precluded from

offering such testimony for any purposes except perhaps as it is solicited from him for impeachment or the showing of bias.

### III.   Dr. Kress Should Be Precluded From Testifying in Four Distinct Areas

John P. Kress, M.D. has filed an Affidavit and Report [Rec.Doc.63539-6], attached as Exhibit H and referred to herein as "Kress Rep." and a Rebuttal Report [Rec.Doc.64111-2], attached as Exhibit I and referred to herein as "Kress Rebuttal." Plaintiffs stipulate that Dr. Kress is a well-qualified pulmonologist and critical care specialist. His *curriculum vita*, however, sets forth no particular expertise with regard to epidemiology, hematology, or vascular research on the cellular level.  As a result, Plaintiffs elected not to depose Dr. Kress, and the Court has before it only Dr. Kress' *curriculum vita* and content of his two reports as the record from which Merck can establish Dr. Kress's ability to express a qualified and scientifically sound opinion.

In his Rebuttal Report, but not his Initial Report, Dr. Kress takes on the mantle of an epidemiologist and, despite having no demonstrated expertise in epidemiology, he proposes to offer extensive criticisms of the methodology of, and the epidemiologic analysis conducted by, Plaintiffs' experts, Drs. Brooks and Zambelli-Weiner. Kress Rebuttal at 2. He also proposes to offer extensive testimony regarding the importance of blinded, placebo controlled clinical trials despite the lack of epidemiological qualifications. *Id*. at 1. This proposed testimony should be precluded due to lack of any showing of qualifications and expertise sufficient to offer it.

21

Dr. Kress demonstrates his inability to provide scientifically valid testimony on the clotting mechanism when he states in his Report that clotting in the venous vasculature begins with an early step of platelet aggregation and white thrombus. No expert on the clotting cascade at the cellular level would agree with that conclusion. The biological plausibility, or mechanism, by which Vioxx would effect VTEs is explained in cellular and physiologic detail by Plaintiffs' experts Dr. Lucchesi and Dr. Olyaei who do know this area, and Merck has put up no one with any similar qualifications to contradict them—and it certainly isn't Dr. Kress, who demonstrates no training or qualifications in the field of cellular biology and pharmacology. Dr. Kress should be precluded from expressing opinions with regard to clotting mechanism, whether on the arterial side or the venous side, and with regard to the mechanism testimony of Plaintiffs' experts.

Dr. Kress provides no source for his proffered opinion that "the risk factors associated with arterial thrombus formation are generally not thought to effect veins. Thrombus formation in veins is fundamentally completely different that thrombus formation in arteries." His proposed testimony in that regard should be precluded.

Dr. Kress should not be allowed to opine that the medical literature offers no reliable evidence that Vioxx increases the risk of VTE. Had Dr. Kress reviewed the literature for the purpose of establishing such an absence (which there isn't), that would be one thing, but the Kress Report merely reflects his

opinion on three articles containing Merck published data and then the blanket and unsupported statement of the absence of any literature on Vioxx and VTEs. Dr. Kress can comment on Merck's data in its published studies, but it is an unjustified reach to conclude that means nothing else exists.

In sum, Dr. Kress's Report is essentially a less detailed version of Dr. Crowther's report.  Quite simply, he is not an expert in any field that is helpful in establishing general causation of VTEs by Vioxx, and his testimony is not reliable.

It is Merck's burden to demonstrate Dr. Kress's qualifications and expertise sufficient to survive *Daubert*. Merck has shown Dr. Kress's qualifications in some areas but not his qualifications to opine in the areas set out in his Reports.  Dr. Kress's full *curriculum vita is* provided with his Report at Exhibit H. Dr. Kress is the director of the medical intensive care unit at the University of Chicago. He is also the director of the pulmonary and critical care fellowship training program. His biography on the University of Chicago website states the following:

> Dr. John P. Kress specializes in all areas of pulmonary and critical care medicine.  He has a particular interest in respiratory failure and septic shock . . . . Dr. Kress' research has focused on sedation for critically ill patients with respiratory failure, and early intervention in patients with respiratory failure to reduce functional decline after discharge from the ICU.[10]

---

[10]   *See* John P. Kress Biography, University of Chicago Medicine, http://www. uchospitals.edu/physicians/john-kress.html, attached as Exhibit J.

Dr. Kress is board certified in internal medicine, pulmonary medicine, critical care medicine and anesthesiology, and his residency and fellowships were in the same areas of medicine. *See generally* Exhibit H, attached, Kress *curriculum vita* at 11. He has published extensively on sedation and anesthesiology in critically ill patients, and his research focuses on the same.

Dr. Kress is, in short, a formidable expert in the areas of pulmonary medicine, critical care and anesthesiology. He is not, however, an expert on VTE. In total, he has authored 28 peer reviewed original research papers, 43 abstracts, 14 book chapters, 31 invited articles/letters, and 185 invited presentations. He has not published on NSAIDs. He has not published on COX-2 inhibitors. He has not published on deep vein thrombosis ("DVT").[11] He has not published in cellular biology. He has not published in pharmacology. He has not published in epidemiology, nor does the record reflect any training in that field.

In short, Dr. Kress is an expert, but not in the three fields in which he proposes to offer the challenged testimony: the cellular mechanism of the pharmacological relationship between COX-2 and VTEs; the relationship between arterial and venous thrombi and their risk factors; and epidemiology. His expertise is in the areas of sedation and critical care. Proper credentials are necessary but not sufficient to admit an expert's testimony. *Kumho Tire Co.,* 526 U.S.at 153. Given that Dr. Kress is a critical care doctor and has no expertise in

---

[11]   He has completed some ancillary work regarding PE and published a book chapter on Acute Right Heart Syndrome and PE in 1999; discussed PE detection in mechanically ventilated patients in 1998; and in 1997 gave one presentation on thrombolytic therapy in acute PE.

24

most of the areas for which Merck has retained him to opine, his opinions should

be excluded, and he should be prohibited from testifying in this litigation.

### A.   Dr. Kress Should Be Precluded From Testifying About Epidemiology

Dr. Kress provided no epidemiologic opinions in his initial Report, but in

his Rebuttal Report Dr. Kress becomes an epidemiologist and provides extensive

criticism of the methodology of, and the epidemiologic analysis of, Plaintiffs'

experts, Drs. Brooks and Zambelli-Weiner. Kress Rebuttal at 2. He also proposes

to offer extensive testimony regarding the importance of blinded, placebo

controlled clinical trials. *Id*. at 1. Yet, Merck has provided no showing that Dr.

Kress has **any** expertise in epidemiology. As established above, qualifications

and expertise are a necessary condition to pass *Daubert,* and Dr. Kress does not

have any in epidemiology.  His proposed opinions criticizing Drs. Brooks and

Zambelli-Weiner and commenting on the requirements of clinical trials should

be precluded.

### B.   Dr. Kress Should Be Precluded From Testifying About Clotting Mechanisms On the Cellular Level

Dr. Kress in fact demonstrates his inability to provide scientifically valid

testimony on the clotting mechanism when he states, in his step-by-step

description of the process of clotting in the venous vasculature that "this [then]

leads to platelet aggregation (known as 'white thrombus')", Kress Rep. at 6.

**Every single other expert** will acknowledge that the platelet aggregation

known as "white thrombus" is one of the first steps in the clotting mechanism **in**

**the arterial vasculature**. Deposition of Benedict R. Lucchesi, M.D., Ph.D. September 26, 2012 at 221:10-223:18.

Dr. Kress proposes to dispute the biological plausibility, or mechanism, by which Vioxx would affect VTEs as explained by Plaintiffs' experts Dr. Lucchesi, Dr. Olyaei and Dr. Spyropoulos. The biological plausibility of this mechanism has been amply explained by Plaintiffs' experts **at the cellular level**, a field where Dr. Kress demonstrates no expertise or qualifications. Dr. Kress should be precluded from expressing opinions with regard to clotting mechanism, whether on the arterial side or the venous side, and he should not be allowed to dispute the mechanism testimony of Plaintiffs' experts in that Merck cannot meet its burden to establish that Dr. Kress has expertise or scientific qualifications in this area sufficient to assist the jury. Due to the necessary requirement that an expert at the least be qualified and have expertise in the field in which he proposes to offer testimony, Dr. Kress's proposed testimony on the particulars of the clotting cascade and biological mechanisms of the relationship between COX-2 and arterial and venous thrombi should be precluded.

### C.   Dr. Kress Should Be Precluded From Testifying About Conclusions Unsupported By Any Data

Dr. Kress opines that "the risk factors associated with arterial thrombus formation are generally not thought to effect veins. Thrombus formation in veins is fundamentally completely different that thrombus formation in arteries." Kress Rep. at 5. Dr. Kress provides no source for this statement other than the "basic tenants of vascular physiology and pathophysiology." *Id*. Because Dr.

26

Kress has no demonstrated expertise in the field of cellular biology and thrombus formation (*see* previous argument) and because no specific source is provided for this proposed opinion, Dr. Kress's proposed testimony on arterial and venous thrombi formation and risk factors for the same should be precluded.

> **D.**   **Dr. Kress Should Be Precluded From Testifying About a Supposed Absence of Evidence in the Medical Literature Regarding the Relationship Between Vioxx and VTEs**

Dr. Kress proposes to opine that the medical literature offers no reliable evidence that Vioxx increases the risk of VTE. However, the Kress Report reflects on its face that he has reached that opinion only by making an extraordinary logical leap – from what is reflected in three articles containing Merck published data to a supposed absence of any other literature in the entirety of medical publications. Plaintiffs dispute the conclusion that those three articles mean that nothing to the contrary exists (and indeed Plaintiffs' expert reports shows the error of the conclusion). Dr. Kress's proposed testimony on the supposed absence of medical literature regarding the relationship between Vioxx and VTEs should be precluded.

## IV.   Conclusion

Plaintiffs request that the expert testimony of Mark A. Crowther, M.D. on the topics indicated be precluded, and that the testimony of John P. Kress, M.D. be precluded in its entirety for the reasons stated above.

Respectfully submitted,

/s/ Ann B. Oldfather
Ann B. Oldfather
KBA Bar #52553
Liaison Counsel/Lead Counsel
OLDFATHER LAW FIRM
1330 S. Third Street
Louisville, KY   40208
502.637.7200
502.637.3999  (fax)
aoldfather@oldfather.com
*Counsel for Certain Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Memorandum in Support of Motion to Preclude Certain Testimony of Mark A. Crowther, M.D. and the Testimony of John P. Kress, M.D. has been served upon Liaison Counsel, Phillip Wittmann and Russ Herman, by U.S. Mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8(C), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 24st day of December, 2012.

/s/ Ann B. Oldfather
Ann B. Oldfather