UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: VIOXX Products Liability Litigation | * MDL No. 1657 |
| This Document Relates to: | * |
| | * SECTION L |
| JIM HOOD, ATTORNEY GENERAL *ex rel.*, STATE OF MISSISSIPPI | * JUDGE ELDON E. FALLON |
| | * |
| | * MAGISTRATE JUDGE |
| v. | * KNOWLES |
| | * |
| MERCK & CO., INC. | * |
| | * |
| Civil Action No. 2:05-cv-6755 | * |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO COMPEL**

COMES NOW, Plaintiff, Jim Hood, Attorney General of the State of Mississippi, *ex rel.* the State of Mississippi (the "State" and/or "Plaintiff'), by and through undersigned counsel of record acting as duly-appointed Special Assistant Attorney General, and would state unto this Honorable Court as Plaintiff's Response in Opposition to Defendant's Motion to Compel, the following:

**1.    PLAINTIFF'S OBJECTIONS TO THE SUBJECT DISCOVERY REQUESTS SHOULD BE SUSTAINED, AS THE DISCOVERY SOUGHT EXCEEDS THE SCOPE OF PRETRIAL ORDER 39B.**

In PreTrial Order 39B (PTO 39B"), the Court set forth the scope of discovery for all remaining Government Actions:

> The discovery contemplated to take place in the MDL is the common fact discovery by the parties, including document/data discovery and depositions, and liability expert discovery, with depositions to occur in conformance with Pretrial Order No. 9. Expert discovery on damages1 References to damages may include penalties, if applicable.)  will be addressed after remand or transfer.

PreTrial Order 39B, p. 2.

Merck's motion to compel is premised upon its attempt to obtain discovery regarding damages that exceeds PTO 39B. This is clear by Merck's reliance upon the portions of Judge Weinstein's opinion in the *Zyprexa* litigation, which addressed Mississippi's damages proof through its expert witnesses. Because this Court recognized the need for state law claims (including damages) to be decided pursuant to state law, all discovery concerning proof of those damages is not to be conducted until the State is remanded to the proper forum.

Merck asks this Court to compel the Attorney General to specify representations that he alleges give rise to liability under Mississippi Consumer Protection Act and Mississippi's false advertising statute. However, in *State of Utah v. Merck Sharp & Dohme Corp.*, this Honorable Court found that Merck's request for nearly identical discovery to be overly broad and/or vague. Moreover, the case law relied upon by Merck is not relevant to an Attorney's General's action for statutory relief, and thus does not support their position that the discovery should be allowed.

### 2. PLAINTIFF HAS RESPONDED TO MERCK'S DISCOVERY RELATED TO MERCK'S ALLEGED MISREPRESENTATIONS.

Notwithstanding Plaintiff's appropriately urged objections to Merck's discovery requests, in its motion to compel, Merck complains of Plaintiff's responses to its Second Set of Interrogatories, specifically Interrogatory No. 1 and Interrogatory No. 6, both of which address the identification of the unfair or deceptive trade practices alleged by Plaintiff in this action. Plaintiff has hardly "failed to produce any specific information regarding the purported misrepresentations that underlie his lawsuit," as the Defendant has stated in its motion. To the contrary, Plaintiff has identified what the Defendant has requested, with the information that is presently in his possession. Glaringly absent from Merck's motion is any mention of the fact that

much of the information sought is and will be the subject of expert witness testimony, such as that previously seen by Merck in prior Vioxx litigation.

In addition to the detailed Exhibit "A" provided in response to these Interrogatories, Plaintiff provided the following in response to Merck's discovery request:

> Plaintiff would state at this time that the Defendant had actual knowledge of the risks and dangers of VIOXX following the VIGOR study, the results of which were reported to Merck in March 2000. Merck failed to inform healthcare providers and consumers of these risks. These failures can be seen throughout Exhibit A—none of the communications fully conveyed the risks and dangers of VIOXX. These misrepresentations in Merck's marketing and promotional activities are documented in MRK-ABA0003277—a warning letter to Merck & Co sent August 17, 2001 from the Department of Health and Human Services. Specifically, the letter states that, "[Merck] has engaged in a promotional campaign for VIOXX that minimizes the potentially serious cardiovascular findings that were observed in the VIOXX Gastrointestinal Outcomes Research (VIGOR) study, and thus, misrepresents the safety profile for VIOXX." Even after receiving this letter, Merck failed to fully warn and inform health care providers and consumes of the dangers and risks of VIOXX. This failure to warn and inform despite the known results of the VIGOR study and receipt of the August 17, 2001 letter shows the knowing and willful conduct on the part of the Defendant to deceive the State of Mississippi.

*See*, Plaintiff's Response to Interrogatory No. 1, Second Supplemental Responses to Defendant's Second Set of Interrogatories. (attached to Merck's motion as Ex. "6")

In the referenced Second Supplemental Responses, Plaintiff further identified the Merck employee(s) involved with the unfair methods, the deceptive trade practices, and the advertisements known to him at that time.  However, Plaintiff reserved the right to supplement his response because the parties are still engaged in discovery. According to this Court's Order, Plaintiff has until March 4, 2013 to complete depositions of all fact witnesses. Through these depositions, Plaintiff will likely discover the exact identities and actions of the Merck employee(s) involved in the violations, as alleged, against the State of Mississippi. Once the identities of these persons and their connections to the violations are discovered, Plaintiff will supplement his response to this interrogatory if necessary.

Further, in Interrogatories No. 1 and No. 6, Defendant requested that Plaintiff identify how the communications and advertisements identified were unfair, deceptive, untrue and misleading. First, these requests are improperly seeking a legal conclusion, and should be deemed invalid. Second, as Plaintiff stated in his Second Supplemental Responses to these interrogatories, these are questions which Plaintiff cannot fully answer because the interrogatory seeks information that will be the subject of expert witness opinions and testimony. Plaintiff's Common Liability Expert Disclosures and Reports are not due, by this Court's Order, until May 3, 2013. Plaintiff will formally designate liability experts in May, however, for illustrative purposes, Plaintiff refers to the attached Expert Report of Dr. Connie Pechmann from August 2006. (attached hereto as Exhibit "A") Although this expert report concerns different litigation, the analysis and opinions concerning Merck's misleading and deceptive statements and advertisements are highly relevant to Plaintiff's case. In fact, because the Defendant distributed Dear Health Care Provider Letters, Professional Medical Journal Inserts, Detail Pieces, Print Advertisements and Television Advertisements nationally, the attached report is responsive to Defendant's interrogatory as to *why* and *how* the statements and advertisements were false and misleading. Information as to the false and misleading nature of the exact publications distributed in Mississippi will be supplemented once expert opinions are obtained.

To support its motion, Merck states that, "[c]ourt after court has recognized that a plaintiff who seeks to establish liability based on the defendant's statements is obliged to identify those statements when recognized to do so in discovery; merely listing documents does not suffice." However, the cases relied upon to support this position are (a) not controlling in this district, and (b) are completely irrelevant to the types of claims Plaintiff has alleged against Merck in this action. In each of the cited cases, the plaintiffs failed to identify the specific

4

statements made, the dates of the specific misrepresentations, and by whom the misrepresentations were made. While none of the case relied upon by Merck dealt with the claims of a State against a pharmaceutical drug manufacturer whose misrepresentations spanned a period of over six (6) years, the discovery responses that Plaintiff has provided to Merck to date far exceed the responses which were the subject of Court's opinions in those cases. Indeed, Plaintiff has now provided detailed information outlining the following information in response to Merck's discovery requests: a description of the act complained of; the specific bates range of documents which identify the misrepresentations; the number of violations associated with the misrepresentation; the specific conduct which constitutes the violation; and the dates of distribution of each statement. This information is the very type of information that the court ordered the plaintiff to produce in *Nammari v. Town of* Winfield, 2010 WL 1286733 (N.D. Ind. March 29, 2010), and as addressed in the other cases cited by Merck. Thus, there is no support for Merck's argument that Plaintiff needs to provide even more specific information at this time.

After defending itself for the last nine (9) + years in litigation arising out of its marketing and sale of Vioxx, Merck is abundantly aware of each of the misrepresentations that have been proven to have been made by it to the public in general, including the State of Mississippi. Merck, more so than any other person or entity, knows what it knew at a particular time, and what it did to hide the truth about Vioxx from the public, including the State of Mississippi. Mississippi's claims in this litigation are all based upon Merck's deceptive actions that have been at the center of this litigation for nearly a decade, and there can be nothing surprising to Merck about the State's interrogatory responses. To require Plaintiff to provide anything further at this time, would be unduly burdensome, and would contravene the Court's Order outlining the manner in which discovery would proceed in this action.

### 3.     MERCK'S MOTION TO COMPEL DISCOVERY CONCERNING THE IMPACT OF MERCK'S MISPRESENTATIONS ON MISSISSIPPI HEALTHCARE PROVIDERS SHOULD BE DENIED.

At the outset, it should be noted that contrary to Merck's representation in its motion, the Court did not grant its motion to compel the State of Utah to produce similar information presently sought by Merck. In fact, this Court's November 7, 2012, Order concerning Merck's Interrogatory No. 7 propounded to the State of Utah  ("Identify with particularity any instance where Plaintiff has discovered or has been advised that a Utah healthcare professional who originally prescribed Vioxx later determined that he or she would not have prescribed Vioxx had he or she had additional information about Vioxx when he or she prescribed the medicine") denied Merck's requested relief, finding that "the interrogatory is too vague, and the information sought is better obtained from other sources." *In re Vioxx Prods. Liab. Litig*., No. 05-md-1657, Doc. 64162 (E.D. La. Nov. 7, 2012). Similarly, in this case, Merck seeks the same type of discovery through its Interrogatories and Requests to Admit referenced in its motion to compel. Each of those discovery requests is similarly vague, and objectionable, and the relief sought by Merck should be denied.

Furthermore, the information sought by Merck in these discovery requests is premised upon the method of proof that Merck presumes the State will rely upon to prove its case. Because the State has not yet been required to provide the expert witness testimony it will rely upon to prove its case, the requests are premature. Importantly, Merck seeks through this type of discovery, to circumvent PTO 39B, and is attempting to obtain the type of "damages" discovery that this Court very clearly stated would not occur until after the cases have been remanded. As such, the motion should be denied.

Merck's motion almost singularly relies upon Judge Weinstein opinion in the *Zyprexa* litigation, which underscores both the irrelevance of the discovery and the overly broad nature of the requests. Judge Weinstein, in *In re Zyprexa Products Liability Litigation*, 671 F. Supp. 2d 397 (E.D.N.Y. 2009), entered an Order on Merck's motion for summary judgment filed against the State of Mississippi. This ruling came after the Court refused to remand the case, based upon the State's claim for damages associated with the costs expended by its Division of Medicaid for Zyprexa. For purposes of his decision, Judge Weinstein had before him the State's expert evidence it proposed to utilize to prove its damages, which proof was ultimately rejected by the Court for those claims. The vast majority of the Court's opinion focused upon what it considered to be defective proof, which was insufficient to allow Plaintiff to succeed on most of its claims.

No doubt Merck is seeking, through this discovery, to parlay Judge Weinstein's decision into a premature ruling by this court on the issue of damages, which the Court has already said it would not do. Merck's requests concerning the prescribing habits of Mississippi physicians is irrelevant at this point in the litigation, because Mississippi has made no overture toward seeking to prove its claims by use of such evidence. Furthermore, the State is not seeking to recoup the losses that its Division of Medicaid sustained as a result of Merck's marketing and sale of Vioxx, which was at the crux of both the Zyprexa and Louisiana opinions relied upon by Merck in its motion.

Clearly, the discovery sought by Merck related to "causation" is truly an attempt to obtain discovery concerning the damages that the State is seeking in this litigation. Merck's own motion states that the information sought "goes directly to 'whether and to what extent each alleged misrepresentation may have impacted the prescription in question,' and is thus central to ***Plaintiff's claim for penalties***." (Def.'s Motion at pp. 18-19). (emphasis added) As stated above,

7

such discovery exceeds the scope of the controlling scheduling order in this case, and should not be allowed.

Finally, Merck has failed to prove to the Court that there is any requirement that the Attorney General must prove "reliance" or "causation" to succeed on the State's claims. More to the point, courts that have addressed Attorney General actions for violation of nearly identical unfair and deceptive trade practices laws have consistently held that neither reliance nor ultimately "causation" is a required element of proof. Merck is simply wrong on this point, as the cases they have relied upon for this proposition are private plaintiff actions. Thus, the discovery sought by Merck is irrelevant to the Plaintiff's claims.

For example. in *Marcus v. BMW of North America, LLC*, 687 F.3d 583 (3d Cir. 2012), the Third Circuit held that the Attorney General of New Jersey may take action under the NJCFA to address an "unlawful practice" and, in doing so, "does not have to prove that the victim of the fraudulent conduct had 'in fact been misled, deceived or damaged thereby....' " *Id*. (citation omitted) This is in contrast to a private plaintiff, who, however, must do more than prove an "unlawful practice." *Id*. So, "[w]hile the **Attorney General** does not have to prove that the victim was damaged by the unlawful conduct, a private plaintiff must show that he or she suffered an 'ascertainable loss ... as a result of' the unlawful conduct." *Id*. (citation omitted) There is an abundance case law to support this same position. *See*, e.g., *Kim v. Carter's Inc*., 598 F.3d 362, 365 (7th Cir.2010) (Illinois consumer protection act) ("The ICFA declares unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices ... in the conduct of any trade or commerce ...." 815 ILCS 505/2. A deceptive practice violates the ICFA even if it doesn't actually deceive or injure anyone, see id., and the Illinois Attorney General has the power to investigate and enjoin such a practice without a showing of actual loss, see id. §§ 505/3-4, / 7.

A private party, however, must show "actual damage" in order to maintain an action under the ICFA. Id. § 505/10a(a).").

Likewise, with respect to the State's deceptive trade practices claim, there is no causation requirement when the Attorney General brings the action to hold Merck accountable for the criminal violation and resulting penalties. Mississippi Code. Ann., Title 97. Crimes, Chapter 23. Offenses Affecting Trade, Business and Professions, § 97-23-3. **Deceptive advertising**, provides in pertinent part:

> Any person who, with intent to sell or in any way dispose of merchandise, securities, service, or anything offered by such person, directly or indirectly, to the public for sale or distribution, or who, with intent to increase the consumption of or demand for such merchandise, securities, service or other thing, or to induce the public in any manner to enter into any obligation relating thereto, or to acquire title thereto, or an interest therein, makes, publishes, disseminates, circulates or places before the public, or causes, directly or indirectly, to be made, published, disseminated, circulated or placed before the public within the state, in a newspaper or other publication, or in the form of a book, notice, handbill, poster, bill, circular, pamphlet or letter, or by a label affixed to the merchandise or its container, or in any other way, an advertisement of any sort regarding merchandise, securities, service or anything so offered to the public, which advertisement contains any assertion, representation or statement of fact which is untrue, deceptive or misleading, including but not limited to representing himself as selling at wholesale unless he is actually selling at wholesale those items so represented, and which such person knew, or might on reasonable investigation have ascertained to be untrue, deceptive or misleading, **shall be punished by a fine of not more than five hundred dollars ($500.00)**, and the offending person, whether found guilty or not, may be held civilly responsible in tort for damages to persons or property proximately resulting from a violation of this section.

The Court should not compel Plaintiff to provide discovery regarding the relationship between Merck's misrepresentations and the prescribing habits of physicians in the State of Mississippi, as it is unduly burdensome, irrelevant, and exceeds the scope of discovery allowed by PTO 30B.

## CONCLUSION

The State of Mississippi has been quite vocal during its pendency in this MDL, that its claims against Merck should be pending in the Mississippi state court from which it was improvidently removed over seven (7) years ago. At the very least, the issue of damages under Mississippi law should be decided by the Court who will ultimately enter a verdict in the case. In  agreement with this premise, this Court has previously entered an Order directing that only "common discovery" take place in the MDL, with remaining expert "damages" discovery to be completed after remand. Merck's intention to circumvent PTO 39B with the discovery that is the subject of its motion, evidences the need for this case to be remanded to Mississippi, without further delay.  Accordingly, and based upon the foregoing, Plaintiff requests that Merck's motion be denied, and for such other further relief as the Court may deem proper.

Respectfully submitted, this the 31st day of January, 2012.

BY:    /s/ Sheila M. Bossier
SHEILA M. BOSSIER, (LA Bar No. 19491)
**Attorney for JIM HOOD, ATTORNEY GENERAL,** *ex rel* **THE STATE OF MISSISSIPPI**

**OF COUNSEL:**

**BOSSIER & ASSOCIATES, PLLC**
P. O. Box 55567
Jackson, MS  39296
Telephone: (601) 352-5450
Facsimile:   (601) 352-5452

Geoffrey Morgan, Esq.
George W. Neville
**OFFICE OF THE ATTORNEY GENERAL**
P. O. Box 220
Jackson, MS  39205
Telephone: (601) 359-3821

Richard A. Freese, Esq.
**FREESE & GOSS, PLLC**
Regions Harbert Center
1901 6th Avenue North
Suite 3120
Birmingham, AL 35203
Telephone: (205) 871-4144
Facsimile:   (205) 871-4104

Shane Langston, Esq.
Rebecca Langston, Esq.
Jessica Murray, Esq.
**LANGSTON & LANGSTON, PLLC**
Post Office Box 23307
Jackson, MS 39225
Telephone: (601) 969-1356
Facsimile: (601) 968-3866

### CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing has been served on Liaison Counsel by U.S. Mail and upon all parties by electronically uploading the same to LexisNexis File and Service Advance this 31st day of December, 2012.

　　　　　　　　　　　　　　　　　　　　　　  /s/ Sheila M. Bossier
　　　　　　　　　　　　　　　　　　　　　　SHEILA M. BOSSIER