

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: VIOXX | MDL Docket No. 1657 |
| PRODUCTS LIABILITY LITIGATION | Section L |
| This document relates to: | Judge Fallon |
| *Commonwealth of Pennsylvania,*<br>*by Thomas W. Corbett Jr., Attorney*<br>*General* v. *Merck & Co. Inc.,* | Magistrate Judge Knowles |

**COMMONWEALTH OF PENNSYLVANIA'S MEMORANDUM IN OPPOSITION TO
PLAINTIFFS' STEERING COMMITTEE AND GOVERNMENT ACTION LIAISON
COUNSEL'S MOTION FOR AN ORDER IMPOSING A COMMON BENEFIT
OBLIGATION UPON THE RECOVERY OF THE COMMONWEALTH OF
PENNSYLVANIA ATTORNEY GENERAL'S CLAIMS ASSERTED AGAINST MERCK
SHARP & DOHME CORP. PENDING IN THIS MDL**

The Commonwealth of Pennsylvania (the "Commonwealth"), by and through its special

counsel, Cohen, Placitella & Roth, P.C., at the direction of the Commonwealth's Attorney

General, submits the following memorandum in opposition to Plaintiffs' Steering Committee and

Government Action Liason Counsel's ("PSC") Motion for an Order Imposing a Common

Benefit Obligation Upon the Recovery of the Commonwealth of Pennsylvania Attorney

General's Claims Asserted Against Merck Sharp & Dohme Corp. ("Merck") pending in this

MDL. For the reasons set out below, the motion should be denied.

**I.     INTRODUCTION**

There are three main reasons why the PSC's request that this Court direct the

Commonwealth of Pennsylvania to pay the PCS's claimed entitlement to a common benefit fee

is without merit. In the first instance, this Court lacks jurisdiction and constitutional power to grant the PSC's request. Pennsylvania maintains that as a sovereign state this case was improvidently removed and hence jurisdiction over it by this District Court does not exist to assess the fees the PSC requests against the Commonwealth or its agents. Further, taxing the Commonwealth's settlement proceeds to compensate a group of private lawyers that the Commonwealth did not retain or contract with exceeds an Article III Court's  constitutional authority (as well as the federal government's power) to tax a state government's property and penal collections. Finally, the PSC's conclusory assertions notwithstanding, the PSC has failed to demonstrate that it conferred any benefit to the Commonwealth or its Special Counsel that led to the resolution of the Commonwealth's state law claims against Merck. The Commonwealth and its Special Counsel were independently intimately familiar with Merck's misconduct as it affected the Commonwealth's claims and repeatedly declined the PSC's offer to sell the Commonwealth its trial package. In other words, because the Commonwealth's team was already intimately familiar with both Merck's conduct and the Commonwealth's resulting claims arising from that conduct, it was fully prepared to put on its case without the PSC's work product.

Pursuant to the Commonwealth Attorneys Act, 71 P.S. § 732-101 *et seq.*, the Commonwealth duly retained and commissioned Cohen, Placitella & Roth, P.C. as Special Counsel to, along with the Attorney General's Office, prosecute claims on behalf of the Commonwealth against Merck for violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §201-1, *et seq.* ("Consumer Protection Law"), the Pennsylvania Public Welfare Code, 62 P.S. §1407-101, *et.seq.*, the Pennsylvania State Lottery

Act, 72 P.S. §3761-101, *et. seq[1]*, and Pennsylvania's common law on fraud and misrepresentation that all arose out of Vioxx prescription payments paid for by four (4) Pennsylvania agencies with State funds.[2] Special Counsel was hired to augment the Attorney General's Consumer Protection and Fraud Abuse departments because of their experience and prior work pursuing private sector claims against Merck on behalf of individuals, families and third-party payers harmed by either taking Vioxx or paying for Vioxx prescriptions.[3] At the time it was engaged, Special Counsel already had a long history of prosecuting Vioxx claims in the New Jersey Superior Court Mass Tort program. That work, some of which was outlined for this Court when Special Counsel sought a fair allocation of the Common Benefit Award in the personal injury cases, focused particularly on uncovering evidence of Merck's fraudulent marketing schemes and developing strong, compelling factual and expert evidence that Merck's own placebo controlled clinical data, gathered during its Alzheimer studies, revealed that there were statistically significant Vioxx health risks to senior citizens that were not disclosed. The evidence that Special Counsel's work product developed was particularly germane to the substantial payments (approximately $32 Million) that the Commonwealth's "PACE" and

---

[1] The *Lottery Act* created and provided the funding source for the Pennsylvania Department of Aging's two elder citizen prescription benefit programs: the Pharmaceutical Assistance Contract for the Elderly ("PACE") and the Pharmaceutical Assistance Contract for the Elderly Needs Enhancement Tier ("PACENET").

[2] The Commonwealth's state court complaint asserted claims on behalf of the following four agency program payers: the Pennsylvania Department of Public Welfare's Medicaid program; the Department of Aging's PACE and PACENET programs; the Pennsylvania Employees Benefit Trust Fund ("PEBTF"); and the State Workers' Insurance Fund ("SWIF). The PACE/PACENET programs' expenditures for VIOXX was by far the largest amongst the four (4), and as the Commonwealth's litigation evolved became the only program for which recovery was actively sought.

[3] As evidenced by the Commonwealth's Court of Common Pleas Complaint commencing its suit, the prosecution is a joint effort of the Attorney's General's Office and Special Counsel.

"PACENET" programs had made for the purchase of Vioxx prescribed for its senior citizen enrollees.

Following removal of its case, the Commonwealth and Special Counsel have been consistent in: (a) seeking remand; and (b) informing the Court and Merck that Pennsylvania's claims on behalf of PACE/PACENET are unique from those of the other states. The Commonwealth has been clear in advising the Court and the PSC that the Commonwealth does not need, does not want and would not purchase the PSC'S "trial package" and to date has not.

With respect to PSC's claim that the Commonwealth has been "provided a detailed road map and evidence collected and assimilated by the PSC" against Merck, that is simply not so. The Commonwealth has not sought, has not obtained, nor was it ever in need of work done by the PSC in other cases. Importantly, as described below, any agreement reached with Merck was not the result of the MDL PSC work product/trial package. Special Counsel and the Attorney General's Office staff developed the Commonwealth's case against Merck from their own work product and from the work product of a coalition of private and public attorneys that were independent of the MDL PSC's work product.[4]

The PSC also claims that the Commonwealth's settlement with Merck was a result of MDL Court imposed mediation.  Def. Br. at 9.  This too is wrong. The mediation the PSC refers

---

[4] In addition to the investigation and discovery Special Counsel conducted in the New Jersey Superior Court cases, the Commonwealth's Attorney General office was a member of a consortium of state attorney general offices ("AG") which in or about 2007 began jointly investigating and prosecuting Consumer Protection Law violation law claims against Merck. The AG consortium's joint work led to the settlement of Commonwealth AG's enforcement actions against Merck in 2008 with the entry of a stipulated consent order in the Commonwealth Court of Pennsylvania. The Commonwealth Court Consent Order, however, expressly exempted from the scope of its release further litigation by the Commonwealth relating to, *inter alia*, claims by, on behalf of or based upon Commonwealth payer agencies' payments for Vioxx. The scope of the Commonwealth Court's Consent Order exemption has been an issue in contention between the Commonwealth and Merck throughout this litigation. A copy of the Commonwealth Court Consent Order is attached as "Exhibit "A".

to, conducted before the final resolution of the U.S. Attorney's Misbranding/Fraud Claims Act violations action against Merck, achieved nothing. During that exercise Merck made no offer to compensate Pennsylvania for the PACE program's huge expenditures beyond what the Commonwealth would have received through the "NAMFCU" settlement for Medicaid claims. Indeed Merck indicated adamantly that it would not make such an offer.[5]

As a result of Merck's intransience, the Commonwealth and Merck engaged in case specific discovery following the lifting of the MDL discovery stay once the NAMFCU settlement was approved.[6] That discovery took place with no assistance from the PSC. It was during this resumed discovery that the Commonwealth and Merck began in earnest discussing a private mediation to see if a resolution could be reached. At this time Merck and the Commonwealth's counsel met (with absolutely no PSC involvement or input) and engaged in a day of settlement discussions in Pennsylvania. While some progress was made during those negotiations, there was a subsequent discussion, with Special Master Juneau's consent, between Merck and the Commonwealth about engaging a local Pennsylvania mediator. After some further progress was made in counsel's negotiation efforts, it was jointly agreed to reach out and ask Special Master Juneau to mediate given the progress the parties had already made and the remaining differences between them. He agreed and flew to Pennsylvania to do so.  An

---

[5] The Commonwealth's expenditures for Vioxx through the Department of Welfare/Medicaid program for non-capitated welfare beneficiaries paled in comparison those made to the beneficiaries of the PACE/PACENET programs. Merck's refusal at that time to negotiate beyond the proposed allocation of NAMFCU settlement proceeds based upon only State Medicaid expenditures was accordingly flatly rejected.

[6] The Commonwealth objected to Merck's associated criminal plea bargain during its sentencing hearing in a Victim Impact Statement submitted to the United States District Court for the District of Massachusetts. However, in order to not delay other States receiving their much needed shares of the associated NAMFCU settlement, the Commonwealth withdrew its objection.

agreement was then reached at that session. The PSC was not involved or present at the inception of the mediation leading up to resolution (or any time after) and has no basis to make any assertion to the Court about the mediation. The fact of the matter is that Merck and the Commonwealth engaged in private mediation without any involvement of the PSC.

Despite these facts, the PSC's motion asks this Court to tax or appropriate property of the Commonwealth of Pennsylvania to pay the PSC attorneys' fees because, when all is said and done, the PSC *believes* that the Commonwealth's claims and successful settlement with Merck were the result of work performed by it and its constituent members. Beyond just assuming that its work prompted the settlement and made a difference for which it is entitled to be awarded compensation and paid (which the Commonwealth denies), the PSC (i) does not address the fact that this Court has no jurisdiction over the Commonwealth; (ii) does not address and resolve the important Federalism issues entailed in asking a Federal Court to essentially tax a state government to pay private lawyers that a state government neither selected, retained, received assistance from or agreed to pay; and (iii) does not even begin to suggest how in particular the Commonwealth's state funded PACE/PACENET programs received any benefit from the work performed by the PSC. Rather, the PSC asks the Court, despite all evidence to the contrary, to *assume* that the Commonwealth relied upon the work performed by the PSC – as opposed to the separate, independent work performed by Special Counsel and the Pennsylvania Attorney General – in achieving a settlement with Merck. Principles of fairness and Federalism do not allow it to do so. Further, PSC's self-serving request conspicuously omits that it has already been handsomely and fully paid for the work it has done in the MDL by the parties who actually used and benefited by the work product.

The procedural and substantive problems with the PSC's motion are myriad, the most glaring of which is that it seems to ignore basic notions of Due Process and constitutional restrictions on taxing a state government and its instrumentalities. The fact is that, the PSC is overreaching here when it attempts, by virtue of creating a trial package for which it has been richly compensated by those who may have needed and used it, to insinuate itself into this case without providing evidence of any substantive contribution to the case's resolution.[7] Such was the case when the PSC offered the same substance of argument in its attempt to tax the participating states' recovery in the NAMFCU settlement, which this Court rightly rejected. A copy of the Court's January 3, 2012 Order turning down the PSC's request is attached hereto as Exhibit "B." There, like here, the responding states correctly pointed out that the PSC's motion was in fact a request for a preliminary injunction without the slightest support to justify its request, either by legal citation or by factual evidence, as required under Fed. R. Civ. P. 65.[8]

## II.   ARGUMENT

### A.   This Court lacks jurisdiction over the Commonwealth and thus cannot grant the PSC's motion.

First, as has been maintained throughout the Commonwealth's presence in this MDL, this Court has no jurisdiction to hear and determine the Commonwealth's claims against Merck. When removed from the Philadelphia Court of Common Pleas, the Commonwealth timely filed a

---

[7] The PSC holds up agreements it made with some other states as somehow suggesting that the Commonwealth is obligated to pay it also. The Commonwealth cannot speak to the decisions made by other states nor the benefit conferred upon them by the PSC. Those agreements however do not alter the fact that the Commonwealth, as it advised the PSC from the outset, would not purchase or rely upon the PSC's trial package to prosecute its claims.

[8] Interestingly, the responding states were not involved in the U.S. Attorney General's prosecution of the claims leading up to the criminal guilty plea and associated civil agreement. Were there a party that benefited from the PSC's efforts as it suggested, it would be the United States. Notably the PSC did not intervene in the federal court guilty plea preceding to claim and seek a common benefit fee from the United States.

motion for remand which has thus far been left unadjudicated. While a copy of the

Commonwealth's motion for remand is attached hereto as Exhibit "C" and speaks for itself, a

few points should be made. First, a "district court has no power to grant an interlocutory or final

injunction against a party over whom it has not acquired valid jurisdiction, and an order granting

an interlocutory injunction in these circumstances is erroneous as a matter of law." *Enterprise*

*Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 470-71 (5th Cir. 1985).

Here the basis for Merck's removal was explicitly rejected by the Supreme Court in *Merrell Dow*

*Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 810 (1986), and by this Court as well in

remanding the Kentucky AG action. That is, any federal issues raised by the federal role in the

administration of medicare are *insufficient to confer federal jurisdiction*. This holding and

rationale continues to be applied in district courts across the country. *Commonwealth of*

*Pennsylvania v. TAP Pharmaceutical Products, Inc.*, 415 F. Supp. 2d 516, 521 (E.D. Pa. 2005);

*Commonwealth of Massachusetts v. Philip Morris, Inc.*, 942 F. Supp. 690, 694 (D. Mass. 1996);

*Minnesota v. Pharmacia Corp.*, 2005 WL 27939297 (D.Minn. 2005); *Missouri v. Mylan*

*Laboratories, Inc.*, 2006 WL 1459772 (E.D. Mo. 2006); *Maryland v. Philip Morris, Inc.*, 934 F.

Supp. 173 (D. Md. 1996); *Hawaii v. Abbott Laboratories, Inc.*, 2006 WL 3457617 (D. Haw.

2006); *Wisconsin v. Abbott Laboratories*, 390 F. Supp. 2d 815 (W.D. Wisc. 2005); *Louisiana v.*

*American Tobacco Co.*, 1996 WL 544210 (W.D. La. 1997); *City of New York v. The Tobacco*

*Institute, Inc.*, 1997 WL 760502 (S.D.N.Y. 1997). The Eastern District of New York succinctly

held that "[W]here a federal statute such as Medicaid requires a state to enforce liability against

a third party but does not provide the ground for that liability, nor require establishment of a

ground for liability, federal jurisdiction will not lie." *New York v. Lutheran Center for the Aging,*

*Inc.*, 957 F. Supp. 393, 403 (E.D.N.Y. 1997).

In analyzing the jurisdictional arguments proffered by the states in the NAMFCU settlement, the Court explicitly acknowledged the seriousness of these jurisdictional and sovereignty issues, though declined to address them because the PSC's motion lacked merit for other reasons. While the instant motion likewise is both facially and legally deficient for other reasons as well, in the event the Court were to find otherwise, the PSC again has failed to even address this threshold jurisdictional problem.

**B.      The PSC has not addressed, let alone met, the requirements of Rule 65.**

The PSC glosses over the fact that this Court has made clear when it rejected the PSC's request for a common benefit of the NAMFCU settlements that it must support its claimed entitlement to a fee with some evidence that it provided a benefit leading to the resolution of the case.  There, this Court equated the PSC's motion as one for a preliminary injunction requiring a showing of:

> (1) a substantial likelihood that plaintiff will prevail on the merits, (2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is not granted, (3) that the threatened injury to plaintiff outweighs the threatened harm the injunction may do to defendant, and (4) that granting the preliminary injunction will not disserve the public interest.

*Anderson v. Jackson*, 556 F.3d 351, 360 (5th Cir. 2009) (quotation omitted).  Apparently, not learning from its previous shortcomings, again the PSC makes no reference to the requirements of Rule 65 or the above requirements solidified in Fifth Circuit jurisprudence.  For that reason alone, its motion should be denied.

**a)      The PSC cannot demonstrate a substantial likelihood that it will prevail on the merits of its request for fees.**

There are several reasons why the PSC cannot succeed on the merits of its claim, let alone be able to show a "substantial likelihood" it will do so.  First, and as briefed above and in

9

the attached motion for remand, this Court lacks jurisdiction over the Commonwealth and its claims.

Second, as articulated in the NAMFCU states' brief opposing a common benefit fee, this request is "in actuality a claim for damages against the State Defendants" that was barred by the Eleventh Amendment. *Rudolph v. Adamar of N.J., Inc.*, 153 F. Supp. 2d 528, 537 (D.N.J. 2001). In *Barton v. Summers*, 293 F.3d 944 (6th Cir. 2002), the court held that "an attempt to force the allocation of state funds implicates core sovereign interests" and that the states were immune. *Id.* at 951. The *Barton* court concluded, "[i]nterference with the allocation of state funds, where Congress has expressly enacted that states may allocate such funds as they please, is an interference with a 'special sovereign interest.'" *Id.* (quotations omitted). Moreover, neither the PSC nor this Court has the authority to dictate who can represent the Commonwealth, a highly circumscribed prerogative of the Commonwealth alone under the Commonwealth Attorneys Act. 71 P.S. § 732-101 *et seq.*; *Commonwealth v. Janssen Pharmaceutical, Inc.*, 607 Pa. 406, 8 A.3d 267 (2010). As the Supreme Court recently observed: "Principles of federalism require that federal courts respect such decisions by the states as to who may speak for them: 'there are limits on the Federal Government's power to affect the internal operations of a State.' . . . It is not for a federal court to tell a state who may appear on its behalf. . . ." *Perry v. Brown*, 671 F.3d 1052 (9th Cir. 2012).

In this vein, granting the PSC's request would violate the Commonwealth's intergovernmental immunity to being taxed by the federal government on transactions or property that pertains to its fundamental government operations and functions. The proceeds the PSC seeks to reach relate to the restoration or recovery of Pennsylvania treasury funds that were used to purchase Vioxx as a result of alleged violation of Pennsylvania consumer protection and

anti-fraud laws and the Commonwealth's associated sovereign and statutory right to assess and

collect statutory civil penalties for Merck's alleged marketing misconduct. While traditionally

intergovernmental immunity questions arise out of situations where a federal agency or

instrumentality (e.g., an employee or a contractor) challenges a tax levied upon it by a state or

state political subdivision, *see e.g.*, *Jefferson County v. Acker*, 527 U.S. 423 (1999); *McCulloch

v. Maryland*, 17 U.S. 316 (1819), the immunity has nonetheless been acknowledged to be

likewise applicable to protect a state from being unduly taxed by the federal government where

and when such would or could impede or obstruct the operation or functioning of the state's

governance of its affairs. *Fox Film Corp. v. Doyal*, 286 U.S. 123, 128 (1932); *Board of Trustees

v. United States*, 20 C.C.P.A. 134, 141-142 (C.C.P.A. 1932).[9] As observed by the Supreme Court

in *Fox*: "The principle of the immunity from state taxation of instrumentalities of the Federal

Government, and of the corresponding immunity of state instrumentalities from Federal taxation

-- essential to the maintenance of our dual system -- has its inherent limitations. It is aimed at the

protection of operations of government." *Fox, supra* at 128 (*quoting McCulloch v. Maryland,

supra*).

Third, the PSC has neither articulated nor established specifically in what way it or its

"work" led to the Commonwealth's settlement with Merck. This, of course, does not establish a

"substantial likelihood" that its claim has merit.  To the contrary, the Commonwealth and its

attorneys explicitly deny that the Commonwealth's settlement was a product of the PSC's work.

---

[9] The doctrine of inter-governmental taxation immunity is over and above the Constitution's
Article I direct tax apportionment and uniformity of taxes limitations on imposing federal taxes.
U.S. Const. Art. I § 2; U.S. Const. Art. I Cl 3; and U.S. Const. Art. I § 8, Cl 1 § 9, Cl § 4. Here
all states who have received restitution and compensation from Merck relating to alleged
misconduct in its marketing of Vioxx have not been uniformly taxed for the MDL PSC's
services. It follows that it would violate these constitutional taxation provisions to tax
Pennsylvania against its will for the PSC's alleged services.

As indicated, Special Counsel for the Commonwealth was at the forefront of the Vioxx litigation before the MDL was ever formed.   Shortly after the withdrawal of Vioxx, a small group of law firms representing over 7,500 plaintiffs decided to concentrate their efforts in the New Jersey consolidated mass tort litigation before the Honorable Carol E. Higbee, J.S.C. These lawyers, including Special Counsel, agreed to work together through discovery and trials for the common benefit of all. This small group of firms was the most successful group of law firms in the entire Vioxx litigation. It was routinely called upon by other plaintiff firms outside the group for the group's expertise and work product in certain aspects of Vioxx.  Special Counsel Christopher M.  Placitella was a key member of this New Jersey Vioxx working group. His work was integral to the success of the New Jersey effort. His work benefitted all plaintiffs in the New Jersey Vioxx litigation.

It is thus with great disappointment that the Commonwealth has received the instant motion claiming that the PSC was responsible for the evidence that "formed the basis of all claims against Merck." Def. Br. at 2.  The undersigned, the PSC, and this Court all know this not to be true. Through its Attorney General staff and Special Counsel the Commonwealth has done its own work, has not relied on the "work" of the PSC and has not, nor did it ever intend, to purchase the PSC's trial package. Participation in a common benefit enterprise does not bestow upon the PSC *carte blanche* to tax each and every recovery it believes to be related to the MDL.

### b)    The PSC has not nor can it show there is a substantial threat of irreparable injury.

Again, PSC fails to address this requirement of Rule 65 nor can it satisfy it. "[I]njury is irreparable only if it cannot be undone through monetary remedies." *Paulsson Geophysical Servs. v. Sigmar*, 529 F.3d 303, 312 (5th Cir. 2008) (citation omitted).  The PSC seeks monetary compensation and thus injunctive relief is not available. *See Dennis Melancon, Inc. v. City of*

*New Orleans*, 2012 U.S. App. LEXIS 25763 (5th Cir. Dec. 18, 2012) ("Thus, because Plaintiffs only alleged harm can be obviated by monetary relief, it does not constitute the 'irreparable' injury necessary to obtain the extraordinary relief of a preliminary injunction.").

> c)      **The PSC has not shown any threatened injury outweighs the certain harm to the Commonwealth from the issuance of an injunction.**

The PSC does not address this requirement, nor could it in good conscience. The PSC seeks to appropriate funds that would otherwise go to the Pennsylvania PACE program, a program which provides medication to the elderly. There is no harm to PSC by not granting an injunction, much less harm which would otherwise outweigh the harm to the Commonwealth.

> d)      <u>**Granting a preliminary injunction will disserve the public interest.**</u>

PSC does not address this requirement. To be sure, however, taking money away from a Commonwealth program designed to aid the elderly *will* disserve the public interest.

> C.      **The Commonwealth's decision to become a "litigating" state does not subject its recovery to common benefit nor does it relieve the PSC from its burden under Rule 65.**

To distinguish its current claim from that which it attempted concerning the NAMFCU proceeds, the PSC points to a footnote in this Court's Order denying its previous motion wherein the Court approvingly mentioned in a footnote the agreements between a majority of the non-participating NAMFCU Settlement states and the PSC for a common benefit award. Jan. 3, 2012 Order at 3 n.2. In no way did the Court suggest that the PSC would be relieved from proving the appropriateness of a preliminary injunction in the future. The Court stated, "these litigating states apparently plan to pursue their claims in litigation and will rely on the work product of the PSC." *Id.* This hypothesis was reasonable given that some states decided to voluntarily contract with the PSC for payment of a common benefit fee. The Commonwealth, in contrast, did not enter into such an agreement with the PSC because it *did not* intend on relying on the work

13

product of the PSC.  Nothing in the Court's January 3, 2012 Order allows, or even suggests, the PSC can simply declare entitlement to settlement proceeds extraneous to the MDL.  Further, the PSC states that the Commonwealth "should be required, like all others, to pay for the common benefit."  PSC. Br. at 13.  Assuming "all others" refers to the other states, nothing "required" the states to enter into what the PSC admits in its brief was a voluntary agreement to pay a common benefit fee.  Moreover, what any of the other five states have chosen to do in no way directs the obligations of the Commonwealth.  We are left to speculate as to why the other states chose to do so, but that has little import at present.

**D.     CONCLUSION**

For the above reasons, the Commonwealth of Pennsylvania respectfully requests this Honorable Court deny the PSC's motion for a preliminary injunction.

Respectfully submitted,

COHEN, PLACITELLA & ROTH
A Professional Corporation

BY:     _____

CHRISTOPHER M. PLACITELLA, ESQUIRE
HARRY M. ROTH, ESQUIRE
MICHAEL COREN, ESQUIRE

2001 Market Street, Suite 2900
Philadelphia, PA  19103
Phone:  (215) 567-3500
Fax:  (215) 567-6019

Date:  January 8, 2013

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Commonwealth of Pennsylvania's Memorandum in Opposition to Plaintiffs' Steering Committee and Government Action Liaison Counsel's Motion for an Order Imposing a Common Benefit Obligation Upon the Recovery of The Commonwealth of Pennsylvania Attorney General's Claims Asserted Against Merck Sharp & Dohme Corp Pending in this MDL has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail, upon Liaison Counsel Ann Oldfather by e-mail, and upon all parties by electronically uploading same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 8th day of January, 2013.

Respectfully submitted,

COHEN, PLACITELLA & ROTH
A Professional Corporation

BY: _____
CHRISTOPHER M. PLACITELLA, ESQUIRE
HARRY M. ROTH, ESQUIRE
MICHAEL COREN, ESQUIRE

2001 Market Street, Suite 2900
Philadelphia, PA 19103
Phone: (215) 567-3500
Fax: (215) 567-6019