UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  VIOXX | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| This Document Relates to | * | |
| Cases Listed on Exhibit A to Pretrial | * | |
| Order 58, As Amended (the VTE Cases)[*] | * | MAGISTRATE JUDGE KNOWLES |
| | * | |

* * * * * * * * * * * * * * * * * *

**DEFENDANT MERCK SHARP & DOHME CORP.'S OPPOSITION
TO PLAINTIFFS' MOTION TO PRECLUDE CERTAIN TESTIMONY OF
MARK A. CROWTHER, M.D., AND THE TESTIMONY OF JOHN P. KRESS, M.D.**

Defendant Merck Sharp & Dohme Corp. ("Merck") submits the following in opposition to Plaintiffs' Motion to Preclude Certain Testimony of Mark A. Crowther, M.D., and the Testimony of John P. Kress, M.D.[1]

**INTRODUCTION**

Without any placebo-controlled clinical studies showing an association between Vioxx and an increased risk of venous thromboembolic ("VTE") events, Plaintiffs have nonetheless sued Merck for damages on the theory that Vioxx caused them to develop VTE events, namely deep vein thrombosis ("DVT") or pulmonary embolism ("PE").  Merck has designated two expert witnesses, Dr. Mark Crowther and Dr. John Kress, each of whom conducted rigorous and

---

[*]  By Minute Entry dated August 16, 2012 (Rec. Doc. No. 64077), the Court consolidated the Velma Dunn matter (captioned *Singleton v. Merck Sharp & Dohme Corp.*, Civ. A. No. 2:09-cv-02413-EEF-DEK) with the other VTE cases listed on Exhibit A to Pretrial Order 58.

[1]  Plaintiffs' Memorandum in support of this Motion is hereinafter cited as "Pls.' Mem."

extensive analyses of the relevant data and concluded that there is no reliable scientific evidence to support Plaintiffs' claims as to general causation. Crowther Rep. at 4–6 (attached as Ex. A to Pls.' Mem.); Kress Rep. at 2–5 (attached as Ex. H to Pls.' Mem.).

Dr. Crowther is among the world's leading experts in hematology and thromboembolism. He has practiced, studied, lectured, and published approximately 240 peer-reviewed academic articles on this subject. Crowther Rep. at 1 & Ex. A hereto.[2] Among his many other credentials, Dr. Crowther served as Chair of the Division of Hematology and Thromboembolism at McMaster University in Canada, a division that is widely regarded as among the best, if not *the* best, research group performing work in the field of thromboembolic events. *See* Spyropoulos Dep. at 83, 86 (recognizing McMaster University as the "one of the premier institutions in the world in the field of thrombosis" and acknowledging Dr. Crowther's group at McMaster as having a "world reputation" for evidence-based medicine).[3] As even Plaintiffs concede, Dr. Crowther is "eminently qualified to express opinions about VTEs (his primary research subject and his area of clinical expertise) and about pulmonary embolisms." Pls.' Mem. at 5. Moreover, Plaintiffs register no objection to Dr. Crowther's methodology.

Yet, in spite of their stipulation as to Dr. Crowther's impeccable credentials, Plaintiffs proceed to argue that certain of Dr. Crowther's opinions concerning VTE events should be excluded because he either (1) lacks qualifications to offer them or (2) because his conclusions

---

[2] Although Plaintiffs submitted Dr. Crowther's Report, Rebuttal Report, and deposition in connection with their motion, Dr. Crowther's *curriculum vitae* was not. A copy of Dr. Crowther's *curriculum vitae* is attached hereto as Ex. A ("Crowther CV").

[3] Merck previously provided to the Court a binder containing complete deposition transcripts for each of the parties' deposed experts. That binder contains all deposition transcripts cited in this Opposition.

are wrong.  Plaintiffs' arguments as to Dr. Crowther's supposed lack of qualifications rely on a misleading and incomplete interpretation of Dr. Crowther's own statements as to his expertise. Pls.' Mem. at 16–19.  Dr. Crowther's deposition makes it plain that he is—and considers himself to be—fully qualified to opine on these issues.  Moreover, Plaintiffs' disagreement with Dr. Crowther's conclusions cannot form the basis of a *Daubert* motion.  *See infra* Part I.

Merck's other expert witness, Dr. John Kress, is a board-certified pulmonologist, internist, anesthesiologist, and critical care specialist who practices and teaches at the University of Chicago.  As an Associate Professor of Medicine at the University of Chicago, Dr. Kress teaches medical students, fellows, residents, and interns about VTE events in both classroom and clinical settings.  Kress Rep. at 1 & Ex. A thereto (Kress CV) (attached as Ex. H-1-A to Pls.' Mem.).  Dr. Kress also conducts research on a wide variety of subjects related to VTE events. *Id*.  Further, based on his clinical and academic expertise, Dr. Kress serves as a peer reviewer and editor on a number of professional medical journals that regularly publish on issues related to VTE events and thromboembolism, including the *Journal of the American Medical Association*, the *Lancet*, and *Annals of Internal Medicine*. *Id.*

As with Dr. Crowther, Plaintiffs do *not* contend that Dr. Kress's review and analysis is *methodologically* flawed.  Instead, despite Dr. Kress's credentials, Plaintiffs assert that Dr. Kress, a board-certified pulmonologist, is not qualified to opine regarding the relevant medical literature for evidence that Vioxx causes VTE events.  Pls.' Mem. at 21–25.  This contention is preposterous.  If Plaintiffs actually believed that Dr. Kress's qualifications were so lacking as to disqualify his opinions, surely they would have elected to take his deposition.  More likely, Plaintiffs opted *not* to take his deposition in hopes to avoid strengthening the record against their future motion.  If medical doctors such as Dr. Crowther and Dr. Kress are unqualified to review

3

and interpret published medical literature on the subject of VTE events and their potential causes, then it is difficult to imagine (inside or outside of these cases) who *would* qualify. Dr. Kress's qualifications well exceed any threshold under *Daubert*. *See infra* Part II.

Beyond their baseless challenges to the expertise of Drs. Crowther and Kress, Plaintiffs' motion expresses a disagreement with their *conclusions*, but no real disagreement with the nature of their *analyses* or *methodologies*, and therefore is not the appropriate subject of a *Daubert* motion. Both experts conducted in-depth analyses of the data and have grounded their opinions on these rigorous analyses. For the reasons set forth below, Merck respectfully requests that the Court deny Plaintiffs' motion to exclude their testimony.

I.  **MARK A. CROWTHER, M.D.**

Dr. Crowther conducted the most intensive data analysis of any expert in this litigation. He reviewed the totality of the placebo-controlled clinical trial data published in the medical literature, the totality of the placebo-controlled clinical trial data submitted by Merck to the FDA, the totality of the observational literature pertaining to NSAIDs and VTE events, and literature concerning Plaintiffs' theories of potential mechanism.[4] Because Dr. Crowther is eminently

---

[4] On the issue of "mechanism," Dr. Crowther responds to the testimony of Plaintiffs' expert, Dr. Lucchesi, that it is "biologically plausible" that Vioxx could cause VTE events. Dr. Crowther's opinions demonstrate, however, that Dr. Lucchessi's theories of biological plausibility are not supported by the extensive clinical data regarding Vioxx. Crowther Rebuttal Rep. at 3 ("But again, whether biologically plausible or not, the adjudicated clinical data do not support a relationship between the use of rofecoxib and venous thrombosis."). *See Brock v. Merrell Dow Pharm., Inc.*, 874 F.2d 307, 315 (5th Cir.) ("[S]peculation unconfirmed by epidemiologic proof cannot form the basis for causation in a court of law."), *modified on reh'g*, 884 F.2d 166 (5th Cir. 1989); *In re Propulsid Prods. Liab. Litig.*, 261 F. Supp. 2d 603, 617 (E.D. La. 2003) (rejecting experts' testimony, explaining that "[t]hey have theories, but they have no proof to support those theories" and that "their theories have not been tested or subjected to peer review and publication"). As Judge Posner put it: "[T]he

(footnote continued)

4

qualified to perform his analysis, and because he did so in a scientifically rigorous fashion, there is no basis to exclude his opinions under *Daubert*.

### A. Dr. Crowther Is Eminently Qualified To Offer His Expert Opinions.

Dr. Crowther earned his medical degree from the University of Western Ontario. Crowther CV at 1. Following his residency in Internal Medicine at the University of Western Ontario and a residency in Hematology at McMaster University, Dr. Crowther obtained a Master of Science degree in Epidemiology and Biostatistics at McMaster University and went on to serve as a Clinical and Research Fellow in Medicine and Thromboembolism, also at McMaster. *Id.* Presently, Dr. Crowther is a Professor of Medicine at McMaster in the Division of Hematology and Thromboembolism and has an active and extensive clinical and research practice.[5] McMaster University is widely regarded as among the most respected institutions performing research in the field of thromboembolism. *See* Spyropoulos Dep. at 83 (recognizing McMaster University as one of the "premier institutions in the world in the field of thrombosis").

Plaintiffs agree, and in fact "stipulate that Dr. Crowther is eminently qualified to express opinions about VTEs (his primary research subject and his area of clinical expertise) and about pulmonary embolism ('PE')." Pls.' Mem. at 5. Nevertheless, Plaintiffs simultaneously suggest that Dr. Crowther lacks the requisite expertise to opine concerning two specific subjects: First, Plaintiffs contend that Dr. Crowther "expressly disavowed any ability as an expert to describe the role of [prostacyclin, thrombomodulin, and tissue factor], and their reaction to, and

---

(continued footnote)
  courtroom is not the place for scientific guesswork, even of the inspired sort. Law lags science; it does not lead it." *Rosen v. Ciba-Geigy Corp.*, 78 F.3d 316, 319 (7th Cir. 1996).

[5] For a more comprehensive account of Dr. Crowther's medical training and expertise in VTE events, please see his full *curriculum vitae*, attached as Ex. A.

5

performance in the face of, COX-2 inhibitors." *Id.* at 7.  Second, Plaintiffs argue that "Dr. Crowther disclaimed any expertise on the mechanism of disease in the arterial vasculature." *Id*. As a plain reading of Dr. Crowther's deposition testimony makes clear, Dr. Crowther, in fact, did no such thing.  Rather, Plaintiffs' arguments that Dr. Crowther conceded a lack of qualifications to offer these opinions rely on a selective and tortured reading of his statements and are contradicted by his full statements and the undisputed depth of his expertise in these areas.

### 1. Dr. Crowther Is Qualified To Testify as to the Fundamental Differences Between Venous and Arterial Vasculature.

Dr. Crowther joins Plaintiffs' own experts—Drs. Lucchesi, Olyaei, and Spyropoulos—in espousing the noncontroversial opinion that venous and arterial clots are fundamentally different and cannot be substituted one for another for purposes of establishing general causation.[6]  Yet Plaintiffs move to preclude Dr. Crowther from testifying that "VTE is not like arterial thromboembolism" on the basis that he claimed no expertise "on the arterial mechanism of disease" and did not undertake the same analysis that he performed "on the venous side." Pls.' Mem. at 7, 18–19.  In essence, Plaintiffs' motion suggests that, unless Dr. Crowther performed the same comprehensive published literature review of *arterial* events in the placebo-controlled Vioxx clinical trials as he did for VTE events, then he should be precluded from saying anything at all about the differences between the human venous and arterial vasculature systems.  That is nonsensical.

---

[6]   *See, e.g.*, Olyaei Dep. at 92 ("Q.  You can't just assume that because something increases venous thrombosis, that it definitely will increase atherosclerosis; is that true?  A.  That's true.  You do a lot of epidemiology studies to see that event.  It's very hard to do those clinical studies.  Q.  Fair enough.  But the point is, is that you have to do some study.  You can't just assume it's true in science.  Fair?  A.  I agree with you."); Spyropoulos Dep. at 97–102; Lucchesi Dep. at 92–94, 221–24.

.

6

It is true that Dr. Crowther is not being offered as a general causation expert on the subject of Vioxx and heart attacks and strokes—the Court has already heard its share of expert testimony on that subject. But that does not disqualify Dr. Crowther from understanding and opining about the generally understood fundamental differences between the human venous and arterial vasculature systems. Again, as Plaintiffs themselves concede, Dr. Crowther is one of the preeminent leaders in the field of thromboembolism, and as such, he plainly is qualified to articulate those differences.

In reality, the focus of this argument appears to be on Dr. Crowther's unwillingness to agree with Plaintiffs' counsel that Vioxx poses a risk of heart attacks and other arterial thrombotic events. *See* Pls.' Mem. at 19. Counsel repeatedly sought such an admission at deposition, and it was primarily to *these* questions that Dr. Crowther candidly explained that he had not done "the kind of detailed analysis" that would be necessary to support such a conclusion. *See, e.g.*, Crowther Dep. at 139. Plaintiffs' attempt to cast Dr. Crowther's testimony on this highly specific and complex issue as reflecting a lack of any general expert knowledge about the arterial vasculature makes no sense and should be rejected.

>  **2.   Dr. Crowther Is Qualified to Opine as to the Medical Literature Concerning Vioxx's Theoretical Effect on Thrombomodulin and Tissue Factor.**

Plaintiffs also seek to prevent Dr. Crowther from testifying as to medical literature concerning thrombomodulin and tissue factor, two cellular proteins thought possibly to be related to clots. As referenced in Merck's renewed motion for summary judgment in VTE cases,[7] Plaintiffs' expert, Dr. Benedict Lucchesi, relies on *in vitro* studies with non-Vioxx COX-

---

[7] *See* Merck's Consolidated Motion to Exclude Opinion Testimony on General Causation and Renewed Motion for Summary Judgment in VTE Cases, filed December 24, 2012 (Rec. Doc.

(footnote continued)

2 selective inhibitors in support of opinions concerning biological plausibility—*i.e.*, possible mechanisms by which Vioxx might cause VTE events.  *See* Merck's Renewed Sum. J. Mem. at 27–28.   Dr. Crowther's rebuttal report, however, identified several *in vitro* studies that Dr. Lucchesi had not referenced—and, as was revealed at his deposition, was not even aware of— that actually involved Vioxx and directly contradicted Dr. Lucchesi's mechanistic theories.  *See* Crowther Rebuttal Rep. at 2 (attached as Ex. C. to Pls.' Mem.); Lucchesi Dep. at 129–35 (previously unfamiliar with, and did not rely upon Graff 2007 study), 158–63 (previously unfamiliar with Steffel 2005 study).  Based on those publications, Dr. Crowther expresses the opinion that there are data that directly contradict Dr. Lucchesi's postulated mechanistic hypotheses.  Crowther Rebuttal Rep. at 2–3.

     Plaintiffs claim that Dr. Crowther is not qualified to address literature contradicting Dr. Lucchesi's opinions based on Dr. Crowther's testimony that he is not an expert as to "how prostaglandins or prostacyclins promote the expression of thrombomodulin and tissue factor." Pls.' Mem. at 16.  Plaintiffs are missing the point.  Dr. Crowther does not need specialized expertise in the intricate operations of prostaglandin pathways to identify and review relevant scientific literature on the subject as it concerns VTE events.  *See, e.g.*, *Huss v. Gayden*, 571 F.3d 442, 455 (5th Cir. 2009) (in a lawsuit alleging that Terbutaline was the cause of plaintiff's cardiomyopathy, physician "did not need to be board-certified in cardiology or toxicology to explain that the studies relied on by the [plaintiffs] do not prove a causative relationship," but rather the doctor's "training and experience as a medical professional qualif[ied] him to tell the

---

(continued footnote)

    No. 64211).  Merck's memorandum in support of this motion is hereinafter cited as "Merck's Renewed Sum. J. Mem."

8

jury why the literature d[id] not establish a causal link"). Here, Dr. Crowther has identified medical literature of which Plaintiffs' expert was completely unaware and that directly contradicts his own theories. *See* Crowther Rebuttal Rep. at 3; Lucchesi Dep. at 129–35, 157–63. Indeed, contrary to Plaintiffs' suggestion, the medical literature Dr. Crowther relies upon for his opinion was included in his list of materials reviewed, and was specifically referenced during his deposition testimony in response to Plaintiffs' counsel's questioning. *See* Crowther Dep. at 8, 10–11, 176–81. Clearly Dr. Crowther is qualified to testify about medical literature relating to thromboembolisms.

**B.     Dr. Crowther's Conclusions Are Not Excludable Under *Daubert* Simply Because Plaintiffs Do Not Agree with Them.**

As referenced above, Plaintiffs do not challenge Dr. Crowther's methodology. Instead, their remaining challenges are based on Plaintiffs' disagreement with Dr. Crowther's ultimate conclusions. Plaintiffs' expressions of disagreement with Dr. Crowther's conclusions, however, are not the appropriate subject of a *Daubert* motion. *See Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 275–76 (5th Cir. 1998) (finding that the focus in *Daubert* analysis is not on the results or conclusion, but rather on the methodology); *In re Chinese Manufactured Drywall Prods. Liab. Litig.*, MDL No. 2047, 2010 WL 8368083, at *3 (E.D. La. Feb. 17, 2010) ("In satisfying its 'gatekeeper' duty, the Court will look at the qualifications of the experts and the methodology used in reaching their opinions and not attempt to determine the accuracy of the conclusion reached by the expert. The validity or correctness of the conclusions is for the fact finder to determine.").

> 1. **Dr. Crowther's Conclusion Concerning the Absence of COX-2 in Native Human Venous Vasculature Is the Product of Scientifically Reliable Analysis.**

Plaintiffs seek to exclude what they erroneously characterize as the "fundamental premise" of Dr. Crowther's opinions—that Vioxx cannot inhibit COX-2 in the veins because there is no COX-2 in the venous vasculature to be inhibited." Pls.' Mem. at 5. According to Plaintiffs, there is "no reliable scientific basis" for this conclusion because, as Dr. Crowther testified at his deposition, the articles upon which he relies do not explicitly state this finding. *Id.* at 6, 8–9.

Plaintiffs' argument badly misses the mark. As an initial matter, Dr. Crowther's opinion does not turn on whether it is *biologically plausible* that a COX-2 inhibitor such as Vioxx could theoretically impact the venous vasculature. Rather, his ultimate opinions focus on the fact that the placebo-controlled clinical trial data do not provide evidence of such a connection. *See* Crowther Rep. at 4–6. As Dr. Crowther emphasized in his reports and deposition testimony, placebo-controlled clinical trial data—the "gold standard" for assessing whether a medication has an association with an injury—show no association between Vioxx and an increased risk of VTE events, much less a causal association. Crowther Rep. at 4; Crowther Rebuttal Rep. at 1, 3; Crowther Dep. at 275–77.

Moreover, Plaintiffs' effort to exclude Dr. Crowther's conclusion is at odds with arguments in their own brief. Plaintiffs pay lip service to this Court's *Daubert* opinion in *In re Chinese Manufactured Drywall Products Liability Litigation*, cited above, noting that under *Daubert*,

> The Court should look at the qualifications of the experts and the ***methodology*** used in reaching their opinions and should not attempt to determine the accuracy of the conclusion reached by the expert. The validity or correctness of the conclusion is for the fact finder to determine.

Pls.' Mem. at 4 (emphasis added).  Yet, less than three pages after dutifully quoting these basic principles, Plaintiffs assert that this Court should exclude Dr. Crowther's opinions concerning the absence of COX-2 in native veins because "[t]he problem with this testimony is his invalid *conclusion* that there is no Cox-2 in the venous vasculature." *Id.* at 7 (emphasis added).  Dr. Crowther read the relevant literature, interpreted the data in the literature, and reached a conclusion based on his interpretation.  Dr. Crowther opined that existing data suggest that the COX-2 enzyme is not present in native human veins, and he identified the specific data he relied upon in reaching that opinion.  Crowther Rep. at 4; Crowther Rebuttal Rep. at 2.  Plaintiffs may disagree with Dr. Crowther's conclusion, but they fail to offer any legitimate challenge to Dr. Crowther's methodology, and therefore have made no case for exclusion under *Daubert*.[8]

### 2.   Dr. Crowther's Analysis Has Been Subjected to Peer Review and Accepted for Publication.

Plaintiffs also argue that Dr. Crowther should be precluded from testifying that his systematic literature review does not show an association between Vioxx and VTE events because three medical journals declined to publish it.  Pls.' Mem. at 10; *see also* Crowther Dep. at 20–24 & Ex. 2 (attached as Ex. F to Pls.' Mem.).  On this basis, Plaintiffs conclude that Dr. Crowther's literature review has been "soundly rejected" by his peers and seek to preclude "all references" to Dr. Crowther's conclusion that a systematic review of the literature does not support an association between Vioxx and VTE events.  Pls.' Mem. at 10.

---

[8] Plaintiffs claim that "Dr. Crowther's interpretation of these articles as stated in his Report was ultimately disavowed by his deposition testimony." Pls.' Mem. at 8–9.  That is incorrect.  Dr. Crowther acknowledged nothing more than that the authors of the studies he relied on do not themselves "say specifically that Cox-2 is not expressed in venous segments." *Id.* at 7–8 (citing Crowther Dep. at 83–84).  As Dr. Crowther explained at length, although the authors did not use his exact words, the data reported and their conclusions are consistent with his own interpretation. *See, e.g.*, Crowther Dep. at 89–92, 277–79.

11

The publication decisions of these journals do not implicate the reliability or soundness of Dr. Crowther's work.  As a practical matter, not every article can be published in every journal, and editors must therefore select articles based on a variety of factors besides scientific merit, such as the novelty of the findings and whether the publication will attract and retain readership.  Here, as Dr. Crowther explained at his deposition, none of the peer reviewers of the journals that chose not publish his literature review questioned his core analysis or findings.  Rather, the feedback he received suggested that there was little interest in publishing a literature review concerning a drug that has been withdrawn from the market.  Crowther Dep. at 14–15.  Thus, the publication decisions of those three journals do not implicate the reliability or soundness of Dr. Crowther's work.

Plaintiffs' argument is particularly misplaced because Dr. Crowther's literature review *was* published in an abstract with the *American Society of Hematology*—which is more than can be said for the opinions of any of Plaintiffs' experts.  Nor do Plaintiffs offer any support for their suggestion that publication of an abstract does not lend the literature review "*Daubert* credence," Pls.' Mem. at 14–15.  *See, e.g.*, *Fitzpatrick v. Louisville Ladder Grp., L.L.C.*, No. 8:99CV29, 2001 U.S. Dist. LEXIS 3305, at *13–14 (D. Neb. Mar. 19, 2001) (noting peer review of expert's theories on alternative ladder design where an abstract of his paper that was accepted and presented to professional engineering society).  Plaintiffs' attempt to transform Dr. Crowther's personal conjecture as to why some reviewers may not have been inclined to select his work for publication into a "consensus opinion that there is an increased risk of VTEs with the use of Vioxx," Pls.' Mem. at 11, is an analytical leap that knows no bounds.[9]

---

[9] At Dr. Crowther's deposition, Plaintiffs' counsel contended that Dr. Crowther failed to make appropriate conflicts of interest disclosures in connection with the abstract publication.

(footnote continued)

## II.     JOHN P. KRESS, M.D., F.C.C.P.

Among the many remarkable aspects of Plaintiffs' motion to exclude the testimony of Dr. Kress is the fact that they bring it in spite of their decision to forego Dr. Kress's deposition. Plaintiffs initially scheduled, asked for alternative dates, then rescheduled, then finally cancelled for good Dr. Kress's deposition. Plaintiffs did this without explanation, less than two days before it was scheduled to proceed.

Plaintiffs concede that Dr. Kress is a "formidable expert" and a "well-qualified pulmonologist and critical care specialist," yet somehow also determine that he "is not, however, an expert on VTE." Pls.' Mem. at 21, 24. Having passed on the opportunity to depose Dr. Kress, Plaintiffs now claim that taking his deposition was unnecessary because his *curriculum vitae* "sets forth no particular expertise with regard to epidemiology, hematology, or vascular research on the cellular level." *Id.* at 21. On this basis alone—premised solely on their understanding of Dr. Kress's *curriculum vitae* and expert report—Plaintiffs argue that Dr. Kress should be precluded from offering any testimony (1) concerning epidemiological studies; (2) disputing the "biological plausibility" argument presented by Plaintiffs' expert Dr. Lucchesi;

---

(continued footnote)

> Crowther Dep. at 33–38. Plaintiffs' counsel presented Dr. Crowther with a document, suggesting it was Dr. Crowther's conflict of interest disclosure with the American Society of Hematology ("ASH"), and contending that it improperly failed to disclose Dr. Crowther's consultancy with Merck. *Id.* & Crowther Dep. Ex. 3 (attached hereto as Ex. B). But, as Dr. Crowther indicated at his deposition, he believed he had made the appropriate disclosures, and he questioned the accuracy of the deposition exhibit, noting that it was not in the format he expected to see from the ASH website. Crowther Dep. at 34–37. Earlier this week counsel for Merck advised Plaintiffs' counsel that Dr. Crowther confirmed with the American Society of Hematology that the abstract for the 2011 ASH meeting contained his correct conflict of interest disclosure, including his consultancy with Merck. See Ex. C hereto. Counsel for Merck also asked Plaintiffs' counsel to provide information as to the source of the erroneous document used at the deposition. Plaintiffs' counsel has not yet responded to that request.

(3) differentiating between the venous and arterial systems with respect to risk factors and thrombus formation; and (4) concluding that there is an absence of reliable evidence in the medical literature that Vioxx increases the risk of VTE events. *Id.* at 22–27.

Plaintiffs' contention that a "well-qualified" and "formidable" expert in pulmonology and critical care medicine is not qualified to opine about VTE events indicates only that Plaintiffs fail to appreciate the nature of Dr. Kress's practice. Even a cursory examination of Dr. Kress's Report and *curriculum vitae* reveals that he is not only board-certified in pulmonology, critical care, internal medicine, and anesthesiology, but also has written and published a book chapter on pulmonary embolism and been a lecturer to other physicians regarding pulmonary embolism for more than a decade, including on the topic of diagnosis and treatment of pulmonary embolism. *See* Kress Rep. at 1 & Ex. A thereto (Kress CV). As Plaintiffs' experts readily agree, DVT and PE are manifestations of the same disease process and PE is a complication of DVT, that is, a clot in a deep vein can dislodge and travel to the lung, causing a PE. Olyaei Dep. at 70–71; Spyropoulos Dep. at 91–92.[10] Plaintiffs surely would have been able to remedy their seeming confusion if they simply had chosen to take Dr. Kress's deposition, which they chose not to do.

Plaintiffs' nevertheless seek to preclude Dr. Kress's testimony based entirely on the false premise that he supposedly lacks the requisite credentials. Plaintiffs' arguments are meritless:

*First*, Plaintiffs contend that because Dr. Kress is not an epidemiologist, he should not be permitted to opine about the importance of blinded, placebo-controlled trials, or to criticize the

---

[10] Dr. Spyropoulos, in fact, testified that 95 percent of PEs are caused by DVTs. Spyropoulos Dep. at 91–92.

methodology and epidemiologic analysis of Plaintiffs' experts, Drs. Zambelli-Weiner and Brooks. Pls.' Mem. at 21, 25. A medical doctor, like Dr. Kress, however, need not be an epidemiologist in order to testify concerning epidemiological studies. *Wagoner v. Exxon Mobil Corp.*, 813 F. Supp. 2d 771, 800 (E.D. La. 2011) (a physician whose experience lies primarily in the treatment of patients is nevertheless qualified to offer a general causation opinion relating to epidemiology in a toxic tort case, where his work as a treating physician led him to become familiar with epidemiological studies and there was no showing that he did not have the skills or knowledge to examine epidemiological studies meaningfully); *Huss*, 571 F.3d at 455 (in a lawsuit alleging that Terbutaline was the cause of plaintiff's cardiomyopathy, physician "did not need to be board-certified in cardiology or toxicology to explain that the studies relied on by the [plaintiffs] do not prove a causative relationship," but rather the doctor's "training and experience as a medical professional qualif[ied] him to tell the jury why the literature d[id] not establish a causal link"); *see also Burton v. R.J. Reynolds Tobacco Co.*, 183 F. Supp. 2d 1308, 1312 (D. Kan. 2002) (board-certified internist and pulmonologist was qualified to opine on smoking and causation of peripheral vascular disease even though he was not an epidemiologist and had never conducted a study regarding peripheral vascular disease).

*Second*, Dr. Kress is qualified to address the mechanism testimony offered by Plaintiffs' experts. Plaintiffs contend that Dr. Kress is not competent to dispute their experts' opinions that it is "biologically plausible" that Vioxx can cause VTE events by affecting the clotting mechanism in the venous system akin to the way it is alleged to affect the clotting system in the arterial system. Pls.' Mem. at 22, 25–26. Plaintiffs contend that Dr. Kress lacks the necessary

15

experience with clotting mechanisms to offer a rebuttal of Plaintiffs' experts. *Id.*[11] But this argument misunderstands Dr. Kress's criticism of Plaintiffs' experts. Dr. Kress's opinion—and one that he is indisputably qualified to offer—is that mere theories of biological plausibility are never sufficient from a scientific perspective to establish causation. *See* Kress Rebuttal Rep. at 1 (attached as Ex. I to Pls.' Mem.). Rather, Dr. Kress opines, clinical trial data is a necessary prerequisite to any theory of causation. *Id.*[12] This opinion concerning basic principles governing scientific proof of causal relationships is hardly outside the realm of Dr. Kress's expertise.

*Third*, Dr. Kress is qualified to testify as to the fundamental differences between the venous and arterial vasculature. Plaintiffs argue that Dr. Kress should not be allowed to opine that "the risk factors associated with arterial thrombosis formation are generally not thought to affect veins" or that "[t]hrombus formation in veins is fundamentally completely different than thrombus formation in arteries." Pls.' Mem. at 22.[13] Plaintiffs seek this exclusion on the supposed basis that Dr. Kress provides no source for these opinions. To the contrary, as Plaintiffs themselves note, *id.* at 26, Dr. Kress indicated that these opinions are "basic tenets of vascular physiology and pathophysiology." Kress Rep. at 1; *see also* Pls.' Mem. at 26 (quoting

---

[11] Plaintiffs disparage Dr. Kress by asserting that "no expert on the clotting cascade at the cellular level" would agree with Dr. Kress that the process of clotting in the venous vasculature leads to platelet aggregation. Pls.' Mem. at 22, 25–26. Again, Plaintiffs misstate Dr. Kress's opinions. Dr. Kress did not suggest that platelet aggregation plays a major role in venous clots. His testimony in that regard was the same as Plaintiffs' expert, Dr. Lucchesi, Lucchesi Dep. at 88, who also acknowledged that platelets are involved in venous clots. *Id.* at 87–93, 101, 221–24.

[12] This conclusion was also conceded by Dr. Spyropoulos, one of Plaintiffs' own experts, who also offered opinions as to biological plausibility. Spyropoulos Dep. 34–35.

[13] As noted previously with respect to Dr. Crowther, there is agreement among Plaintiffs' and Merck's experts that venous and arterial clots are fundamentally different and scientific conclusions about them are not interchangeable. *See supra* p. 6, note 5.

same). Federal Rule of Evidence 26(a)(2)(B) does not require that a report recite "each minute fact or piece of scientific information that might be elicited on direct examination to establish the admissibility of the expert opinion under *Daubert*. Nor does it require the expert to anticipate every criticism and articulate every nano-detail that might be involved in defending the opinion on cross examination at a *Daubert* hearing." *McCoy v. Whirlpool Corp.*, 214 F.R.D. 646, 652 (D. Kan. 2003); *see also Schmude v. Tricam Indus., Inc.*, 550 F. Supp. 2d 846, 854 (E.D. Wis. 2008) ("To disclose everything he intends to say in his testimony, an expert would need a complete list of the questions he will be asked and it would require a report as long as a transcript"), *aff'd*, 556 F.3d 624 (7th Cir. 2009). Dr. Kress's explanation of the basis for his opinion, which Plaintiffs obviously could have explored in greater detail had they decided to take his deposition, is sufficient under *Daubert*. *See, e.g.*, *Watts* v. *Hollock*, No. 3:10cv92, 2011 WL 6026998, at *8 (M.D. Pa. Dec. 5, 2011) ("given the undeveloped record" resulting from the movants's failure to take a deposition, the movant's contention that the expert's opinion was "not based in the facts" was "better suited for cross-examination and argument"); *Sales Res., Inc.* v. *Alliance Foods, Inc.*, Nos. 4:08cv0732 TCM, 4:09cv0666 TCM, 2010 WL 4386796, at *3 n.11 (E.D. Mo. Oct. 29, 2010) (noting likelihood that the lack of a deposition was to blame for the moving party's professed failure to understand the bases of the expert's opinion).

*Fourth*, Plaintiffs seek to preclude Dr. Kress from offering his opinion that the published medical literature does not contain reliable evidence that Vioxx causes VTE events. Pls.' Mem. at 22. Plaintiffs premise this argument on the contention that (2) Dr. Kress did not undertake an exhaustive review of the medical literature in order to prove the negative, and (2) they disagree with him. These misguided contentions, at best, present points for potential cross-examination— they do not provide fertile grounds for *Daubert* exclusion. Dr. Kress is sufficiently qualified,

and performed the analysis necessary, to express his opinion that he is not aware of any reliable published literature supporting the conclusion that Vioxx causes VTE events.  Plaintiffs are free, of course, to challenge that opinion by attempting to demonstrate either (1) that Dr. Kress failed to discover or consider something that he must acknowledge is reliable evidence of causation;[14] or (2) that something he is aware of is in fact reliable evidence of causation, despite his proffered opinion otherwise.  Plaintiffs' subjective disagreement with Dr. Kress's opinion, however, is not a basis to exclude it.  *Moore,* 151 F.3d at 275–76; *In re Chinese Manufactured Drywall Prods. Liab. Litig.*, 2010 WL 8368083, at *3 (E.D. La. Feb. 17, 2010).[15]

## Conclusion

For the reasons set forth above, Plaintiffs' motion to preclude the testimony of Dr. Mark Crowther and Dr. John Kress should be denied.

Dated:   January 31, 2013            Respectfully submitted,

By: */s/ Dorothy H. Wimberly*
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509

---

[14] Plaintiffs wrongly suggest that Dr. Kress's review of the data was limited to reviewing three articles.  To the contrary, Dr. Kress also reviewed the Schmidt 2011 publication (along with other observational data pertaining to NSAIDs and VTE events that did not specifically involve Vioxx), as well as the unpublished placebo-controlled data in the March 2004 Pooled Analysis.  *See* Kress Rep. at 2–4; Kress Rebuttal Rep. at 1.  Further, Dr. Kress's materials reviewed list (attached to his expert report) details voluminous literature that he reviewed.  Finally, and quite tellingly, there are no clinical trial or observational data pertaining to Vioxx and VTE events reviewed by any other expert in these cases that was not considered and addressed by Dr. Kress in his Report and Rebuttal Report.

[15] Importantly, Plaintiffs' expert, Dr. Spyroupoulos, shares Dr. Kress's views regarding the scientific literature, testifying that he is unaware of "any peer-reviewed publication in the world that has concluded that Vioxx or COX-2 inhibitors cause VTE."  *See* Spyropolous Dep. at 125, 144–46.

STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, LA 70130
Phone: 504-581-3200
Fax:    504-581-3361

Defendants' Liaison Counsel

—and—

Douglas R. Marvin
Eva Petko Esber
M. Elaine Horn
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
Phone: 202-434-5000
Fax:    202-434-5029

John H. Beisner
Jessica Davidson Miller
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
1440 New York Avenue, N.W.
Washington, DC 20005

ATTORNEYS FOR MERCK SHARP &
DOHME CORP.

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Opposition to Plaintiffs' Motion To Preclude Certain Testimony of Mark A. Crowther, M.D., and the Testimony of John P. Kress, M.D. has been served on Liaison Counsel, Russ Herman, Phillip Wittmann and Ann Oldfather, by U.S. Mail and e-mail or by hand delivery and e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8C, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 31st day of January, 2013.

/s/ *Dorothy H. Wimberly*
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, LA  70130
Phone:  504-581-3200
Fax:     504-581-3361
dwimberly@stonepigman.com

Defendants' Liaison Counsel