# EXHIBIT "2"

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

```
-----------------------------------------------------------------x
                                          :   MDL NO. 1657
                                          :
IN RE:  VIOXX PRODUCTS LIABILITY          :
         LITIGATION                       :   SECTION:  L
                                          :
                                          :   JUDGE FALLON
                                          :   MAG. JUDGE KNOWLES
-----------------------------------------------------------------x
```

### RESPONSE OF SEEGER WEISS LLP TO THE OBJECTIONS OF MESSRS. WEINBERG, DASSOW, EWING, FRANKE, AND LANIER TO THE ALLOCATION TO SEEGER WEISS LPP OF PRIVATE TPP COMMON BENEFIT FEES & EXPENSES

As and for its response to the objections lodged by Eric Weinberg and Messrs. Dassow, Ewing, Franke, and Lanier to the proposed fee allocated to Seeger Weiss LLP for its third party payor common benefit efforts by the Third Party Payor Fee Allocation Committee, Seeger Weiss responds as follows:

Seeger Weiss indisputably led the third party payor litigation initiative against Merck relating to its marketing and promotion of Vioxx to institutional payors.  It filed the first case—a putative class action—in January, 2002 (*Plumbers & Pipefitters Local 572 Health and Welfare Fund v. Merck & Co.*, No. MID-L857-02, N.J. Super., Middlesex County). Thereafter, it prosecuted the lead third party payor case (*International Union of Operating Engineers Local No. 68 Welfare Fund v. Merck & Co.*, No. ATL-3015-03-MT, N.J. Super., Atlantic County) through dismissal challenges, class certification proceedings through the New Jersey Supreme Court, and general third party payor liability discovery.[1]  Upon the de-

---

[1]      The central claim for relief in these cases (and subsequent individual third party payor actions) was that Merck had violated the New Jersey Consumer Fraud Act in its

certification of the nationwide third party payor class by the New Jersey Supreme Court, Seeger Weiss was appointed and served as liaison counsel for all third party payor claims by the Honorable Carol E. Higbee. Thereafter, Seeger Weiss led the coordinated third party payor litigation in New Jersey state court against Merck. It oversaw the discovery, document review, expert development, and, ultimately, the negotiation of a settlement of all third party payor claims that objecting counsel's clients all availed themselves of. In total, Seeger Weiss committed approximately 8,800 hours of senior partner, attorney, and paralegal time to the prosecution of the third party payor claims against Merck. Seeger Weiss's efforts on behalf of all third party payors are more fully set forth in its submission to the Fee Allocation Committee, a copy of which is set forth as Exhibit A, and its underlying time submissions, which were previously submitted to the designated MDL accountant.

Seeger Weiss's leadership of and contributions to the third party payor litigation against Merck—and for the common benefit of all third party payor clients—has not been challenged by either Mr. Weinberg or Messrs. Dassow, Ewing, Franke, and Lanier. Indeed, to do so would be to challenge the firm that indisputably instituted, litigated, and led the litigation that played a very substantial role in benefiting all of their clients. Rather, Mr. Weinberg and Messrs. Dassow, Ewing, Franke, and Lanier challenge the submissions of this firm, and contend that the firm should not be compensated for its efforts on behalf of their clients. The framework of that challenge is the belief that Seeger Weiss has been compensated for its work on Vioxx third party payor litigation.

---

marketing and promotion of Vioxx. In *Local 68,* Seeger Weiss litigated and prevailed on a threshold issue—the standing of any third party payor to proceed with a claim for reimbursement for prescription costs under the NJCFA. In so doing, with a denied appeal, Seeger Weiss reversed the dismissal ruling from the *Plumbers & Pipefitters* action and paved the way for all other Vioxx third party payor claims.

As a threshold matter, Seeger Weiss did not receive any fee from any of the claimants it represented.  Recognizing the benefit it provided more broadly to third party payors—both in litigating third party payor claims and creating the settlement program (and aware that a fund had been created to compensate common benefit efforts like those it engaged in)—Seeger Weiss took no fee from its clients to help facilitate and ensure the approval of the settlement.

More broadly, objecting counsel contend that Seeger Weiss has been fully compensated for its third party payor common benefit efforts as part of the fee allocation process in the products liability litigation.  That too is not the case.  Through the end of 2010, in accordance with what it understood to be requested and required, Seeger Weiss submitted all common benefit time to MDL Liaison Counsel and the designated accountant for the MDL who monitored and reviewed such submissions.  All such time was submitted by separate matter grouping for consideration by the MDL's accountant and the Court.  Those matters included (a) MDL common benefit work, (b) NJ common benefit work, (c) the bellwether *Hummeston* trials, (d) settlement administration, and (e) third party payor litigation.

The total hours submitted through 2010 totaled more than 68,000 common benefit hours, broken down as follows:

| | |
|---|---|
| MDL common benefit: | 15,295.50 |
| NJ common benefit: | 15,436.80 |
| Bellwethers: | 16,743.25 |
| Settlement negotiations/admin: | 12,439.78 |
| Third party payor: | 8,827.85 |

In its Order and Reasons allocating the products liability common benefit fund, filed August 9, 2011, the Court recognized the common benefit contributions by Seeger Weiss in the products liability actions through 2010.  The Court's detailed narrative recounting Seeger Weiss's efforts included the firm's work in all the foregoing categories, except its third party payor work (which was substantial).  The Court further recognized that Seeger Weiss had submitted approximately 57,693 common benefit hours, well less than the 68,000 submitted by the firm for that time period.  Consistent with Seeger Weiss's separate delineation of its third party payor time and the seeming exclusion of it by the Court in both the hours recognized and its detailed narrative of the firm's common benefit contributions, it had been the firm's appreciation that the Court had not considered Seeger Weiss's third party payor work in its common benefit fee award to Seeger Weiss in the products liability proceedings.

Nonetheless, and regardless of the seeming correctness of Seeger Weiss's appreciation of the Court's process, the firm spent approximately 8,800 hours performing work to the common benefit of all third party payors.[2]  Objecting counsel seem to contend

---

[2]      Mr. Weinberg further highlights a sentence on page 3 of the Supplemental Report of the TPP Fee Allocation Committee, dated November 28, 2011 (Docket Entry 63582) concerning the time submitted by Seeger Weiss in the TPP fee allocation process versus the time submitted in the products liability fee allocation process (concerning Seeger Weiss having approximately $9,000,000 in total TPP time).  Seeger Weiss agrees that the sentence referenced in the Supplemental Report is confusing and differs from the data it reported to the FAC.  Seeger Weiss's application to the TPP FAC accurately reported the facts: (a) Seeger Weiss separately accounted for and reported all of its common benefit time, by the matters worked, (b) Seeger Weiss submitted more than 68,000 hours of common benefit time to the Court for all matters, and (c) of that, Seeger Weiss worked 8,828 hours on TPP matters, representing approximately $4,764,186 in lodestar utilizing Seeger Weiss's billing rates.  See Exh. A, ¶¶ 21, 24.  Mr. Weinberg further highlights a difference in the lodestar numbers reported by Seeger Weiss in its initial versus supplemental submission to the FAC.  That difference is driven by the rates for professionals that were used in calculating lodestar for the two submissions (Seeger Weiss's standard billing rates versus normalized

that should be ignored, and that the funds set aside from the third party payor settlement to pay such counsel should not be used for that purpose. To do as objecting counsel now argue would violate the very purpose of the common benefit fund.

Finally, Mr. Weinberg contends that Seeger Weiss failed to comply with PTO 57 in its application for third party payor common benefit fees and expenses. In particular, Mr. Weinberg contends that the firm failed to submit its backup time and expenses as required by PTO 57. That argument strains credulity. In its submission, Seeger Weiss included a schedule of the firm's time, lodestar, contributions by task code, and expenses. *See* Exh. A, ¶ 21. As for its detailed time and expense backup, Seeger Weiss maintained its TPP time, separately designated as such, and had previously submitted it in the ordinary course to MDL Liaison counsel for submission, review, and screening by the MDL's retained accountant (who vetted submissions and screened expenses). Accordingly, in its TPP submission, Seeger Weiss directed the Fee Allocation Committee to its previously submitted time and volunteered to resubmit anything needed, *e.g.,* "The Firm's underlying time submissions and expense details for TPP-related work have previously been submitted to Liaison Counsel. To the extent that the fee committee is in need of any backup, Seeger Weiss is happy to do so." Exh. A, ¶ 21, n.1.

The objections of Eric Weinberg and Messrs. Dassow, Ewing, Franke, and Lanier to the proposed fee allocated to Seeger Weiss LLP for its third party payor common benefit work by the Third Party Payor Fee Allocation Committee are without merit. Seeger Weiss instituted, framed, and led the Vioxx third party payor litigation. In the end, Seeger Weiss

rates). The reported hours, however, paint a clear picture of the substantial work committed by Seeger Weiss to this common benefit effort.

led the negotiation of a settlement and resolution of Vioxx third party payor claims.  Seeger

Weiss's efforts inured to the common benefit of all.  The objections of Eric Weinberg and

Messrs. Dassow, Ewing, Franke, and Lanier to the allocation to Seeger Weiss should be

denied.

Respectfully submitted,

**SEEGER WEISS LLP**

By: _____

Christopher A. Seeger
77 Water Street
New York, New York  10005
(212) 584-0700

Dated:  January 31, 2013

# EXHIBIT A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

```
----------------------------------------------------------x
                                         :    MDL NO. 1657
IN RE:  VIOXX PRODUCTS LIABILITY         :
        LITIGATION                       :    SECTION:  L
                                         :
                                         :    JUDGE FALLON
                                         :    MAG. JUDGE KNOWLES
----------------------------------------------------------x
```

**CERTIFICATION OF CHRISTOPHER A. SEEGER IN
SUPPORT OF THE APPLICATION OF SEEGER WEISS LLP
FOR PRIVATE TPP COMMON BENEFIT FEES & EXPENSES**

I, Christopher A. Seeger, based on personal knowledge, certify as follows:

1.     I am the founding Partner of the law firm Seeger Weiss LLP.  I submit this certification in accordance with Pre-Trial Order No. 57 in support of Seeger Weiss LLP's application for common benefit fees and expenses for the common benefit provided by the Firm to private third-party payor-claimants.  Beginning in 2002 and continuing over the next several years through the conclusion of the Vioxx products liability and third party payor litigations, I, and many other partners, associates, and professionals within Seeger Weiss, devoted a great amount of time to Vioxx-related matters.  As a result, I have personal knowledge of the matters and facts attendant to the Firm's extensive involvement in Vioxx third-party payor ("TPP") litigation.

2.     Similar to Seeger Weiss's general leadership of the broader Vioxx products liability litigation, the Firm was at the forefront of Vioxx TPP litigation seeking reimbursement of Vioxx prescription charges paid for or reimbursed by TPPs.  In that regard, the Firm spearheaded the prosecution of such cases in the New Jersey state courts (well before Merck withdrew Vioxx from the market), and post-withdrawal, led the TPP litigation through the completion of the negotiated settlement with Merck.

## SEEGER WEISS'S TPP COMMON BENEFIT WORK

**The Firm's Early**
**Involvement in Vioxx TPP Litigation**

3.       In January 2002, the Firm filed the first TPP action against Merck (for that matter, it was among the earliest of any Vioxx cases filed in the country).  That case, a putative class action filed in New Jersey state court on behalf of the Plumbers and Pipefitters Local 572 Health and Welfare Fund (*Plumbers & Pipefitters Local 572 Health and Welfare Fund v. Merck & Co.*, No. MID-L857-02) ("*Plumbers and Pipefitters*"), was originally venued in New Jersey Superior Court, Law Division, Middlesex County.  Upon the centralization of all Vioxx products liability and TPP actions before the Honorable Carol E. Higbee of the New Jersey Superior Court, Law Division, Atlantic County, and subsequent to pre-answer motion practice, the case was transferred to Judge Higbee.

4.       Shortly thereafter, in October 2003, Seeger Weiss commenced a second putative class action against Merck relating to TPP claims: *International Union of Operating Engineers Local No. 68 Welfare Fund v. Merck & Co.*, No. ATL-3015-03-MT ("*Local 68*").  The Local 68 TPP complaint asserted two causes of action against Merck on behalf of all TPPs nationwide that had paid for or reimbursed Vioxx prescriptions by their members/insureds: one under the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-19 ("NJCFA") and the other under New Jersey common law fraud.  With overlapping claims and class definitions, *Local 68* ultimately became the lead TPP action in New Jersey, and nationwide; *Plumbers and Pipefitters* was voluntarily dismissed without prejudice.  Over the next several years, the Firm engaged in and defended serial and exhaustive motion practice on a number of dispositive and class certification issues—ultimately concluding before the New Jersey Supreme Court.

5.       At the outset, the Firm briefed and defended Merck's motion to dismiss Local 68's complaint.  Judge Higbee denied that motion on July 8, 2004, rejecting, among other things, Merck's argument that TPPs lacked standing under the NJCFA because they were not "consumers." The Firm successfully defended Merck's motion to the New Jersey Appellate Division for leave to appeal Judge Higbee's decision, which the N.J. Appellate Division denied on August 23, 2004.  The holding was an important one, and in contrast to earlier competing decisions under the NJCFA for TPPs, including an early decision in *Plumbers and Pipefitters*. The holding was also a basic and critical element that was central to the maintenance of the many subsequently filed individual and class actions asserting TPP claims.  As most actions asserted as a primary basis for relief Merck's violation of the New Jersey Consumer Fraud Act, an individual TPP (or TPP class representative) must demonstrate standing to maintain their NJCFA claim. *Local 68* resolved that disputed point to every TPP's benefit.

### Class Certification Proceedings

6.       Shortly after Vioxx's withdrawal from the market on September 30, 2004, Seeger Weiss initiated class certification proceedings against Merck in *Local 68*, filing opening class certification moving papers in November 2004.  The Firm prepared the submission, consisting of a 45-page opening brief and a certification with seventy-seven exhibits.  Those proceedings were

2

vigorously litigated up through the New Jersey Supreme Court over a period covering nearly three years.

7.     After the filing of Local 68's class certification motion, Seeger Weiss conducted extensive class discovery, including the review of tens of thousands of pages of documents. Also, it retained and developed an expert in TPP activities, Dr. William N. Kelly, a leading expert on drug formularies. Dr. Kelly had held various positions in teaching, research, and pharmacy and therapeutics committee administration, including as Professor in the Departments of Pharmacy Administration and Pharmacy Practice at Mercer University. Seeger Weiss presented Dr. Kelly for deposition, and defended same. Seeger Weiss's class certification reply papers on behalf of Local 68 included not only a 64-page reply brief and voluminous documentary and testimonial evidence in support of the motion (62 exhibits composing more than 1,000 pages), but also a 108-page Appendix of Law analyzing the consumer fraud laws of all fifty states and the District of Columbia, in support of Plaintiffs' argument that New Jersey's choice-of-law rules mandated the application of the New Jersey Consumer Fraud Act to the claims of all members of the proposed nationwide class.

8.     Judge Higbee held a hearing on Local 68's class certification motion on June 30, 2005, at which Seeger Weiss partners Christopher A. Seeger, who was appointed as Co-Lead Counsel in the federal Vioxx MDL, and David R. Buchanan, who was appointed as Plaintiffs' Co-Liaison Counsel in the New Jersey state Vioxx litigation and as Co-Chair of the federal Vioxx MDL Discovery Committee, made the evidentiary presentation and legal argument on behalf of Local 68. On July 29, 2005, Judge Higbee granted Local 68's motion and certified a nationwide class of TPPs in their claims for reimbursement of Vioxx prescription costs (decision reported at 2005 WL 2205341). The certified class of TPPs claimed damages for several billion dollars in Vioxx prescriptions. Pursuant to the NJCFA, damages are automatically trebled and attorney fees are independently assessed. In the scheme of Vioxx litigation, the *Local 68* action was a very significant force and concern—both for Merck, Seeger Weiss, and the big picture. Seeger Weiss litigated the *Local 68* action accordingly.

9.     On the litigation front, subsequent to the certification decision, Seeger Weiss furthered its merits discovery, fact development, and expert development (as further described below). These efforts further accelerated after the subsequent affirmance of the trial court decision by the Appellate Division. In addition, the Firm proceeded to plan and implement a class notice plan, which included preparing the class notice, retaining and consulting with notice and media experts (Katherine Kinsella, Complete Claims Solutions), and negotiating the program with Merck.

## Post-Certification Appellate Challenges

10.     On the appellate front, following the trial court's certification of the nationwide TPP class, Seeger Weiss defended against Merck's motion to the New Jersey Appellate Division for leave to appeal that decision. After the N.J. Appellate Division granted Merck leave to appeal, the Firm assiduously litigated the defense of Judge Higbee's ruling at both New Jersey state appellate levels. Its brief to the N.J. Appellate

3

Division on behalf of Local 68 addressed not only Merck's brief but also separate *amicus curiae* briefs of the Product Liability Advisory Council and the Pharmaceutical Research and Manufacturers of America supporting Merck's appeal, and the Firm separately submitted a letter-brief in response to Merck's post-argument letter-brief to the N.J. Appellate Division concerning its decision in *Rowe v. Hoffman-LaRoche*. Christopher Seeger argued the appeal before the N.J. Appellate Division on January 31, 2006. That court unanimously affirmed the certification of a nationwide class in an opinion issued on March 31, 2006 and published at 894 A.2d 1136.

11.     Afterwards, Merck moved the New Jersey Supreme Court for leave to appeal the N.J. Appellate Division's decision. That motion led to a torrent of appellate motion practice and briefing in various contexts. On behalf of Local 68, Seeger Weiss filed briefs in the N.J. Supreme Court in opposition to Merck's motion for leave to appeal and in opposition to Merck's separate motion for leave to file a reply brief in support of the underlying motion for leave to appeal. In addition, the Firm vigorously fought Merck's efforts to have additional partisan *amici curiae* appear in the N.J. Supreme Court in support of Merck's motion for leave to appeal, filing briefs in opposition to the motion of Commerce and Industry Association of N.J., Somerset County Business Partnership, and Chemistry Council of N.J. for leave to appear *amici curiae* in support of Merck, and in opposition to a separate motion of the Healthcare Institute of New Jersey for leave to appear *amicus curiae* in support of Merck. In granting Merck's motion for leave to appeal in July 2006, the N.J. Supreme Court separately granted the motion of the new *amici* leave to appear, but permitted the filing of brief in response to their briefs. The Firm filed a 51-page brief in response to those partisan *amicus* briefs in August 2006. During this same time, the parties litigated a motion for stay of the trial court proceedings before Judge Higbee, which Merck filed in the N.J. Appellate Division, and in response to which the Firm filed a brief and certification on Local 68's behalf.

12.     Thereafter, Seeger Weiss filed a brief in opposition to Merck's motion for supplemental briefing in the N.J. Supreme Court, and it filed a 64-page Respondent's brief on the merits and a supplemental appendix after the N.J. Supreme Court directed *de novo* briefing of the appeal rather than decide the appeal, as that court usually does, on the briefs filed in the Appellate Division. After the completion of that supplemental briefing, the Firm successfully opposed Merck's motion for leave to file a reply brief. Christopher Seeger argued the appeal in the N.J. Supreme Court on March 2, 2007. In the months after the argument, the parties traded various letter-briefs before the N.J. Supreme Court, with the Firm submitting one to bring the N.J. Supreme Court's attention to the decision of the U.S. District Court for the District of Minnesota in *Mooney v. Allianz Life Ins. Co. of North America*, 244 F.R.D. 531 (D. Minn.), and another, a seven-page letter-brief, in response to Merck's letter-brief regarding the decision of the N.J. Appellate Division in *Beegal v. Park West Gallery*, 925 A.2d 684 (N.J. App. Div. 2007).

13.     In September 2007 (in a decision reported at 929 A.2d 1076), the N.J. Supreme Court reversed and vacated the certification decisions of the Appellate Division and trial court. Though not touching the merits of Plaintiff's claims, the decision shifted the focus of TPP litigation as it became clear that the litigation would proceed on an individual—as opposed to class—basis. To lead and coordinate the claims of the many later-filed individual claimants,

4

Judge Higbee appointed Seeger Weiss as TPP Liaison Counsel, a position it had effectively served in for many years during the pendency of the *Local 68* class action proceedings. Over the next two years, Seeger Weiss continued its leadership of discovery, expert development, and case management issues.

### General Discovery, Case Management & Expert Development

14.    In connection with the *Local 68* proceedings, the Firm engaged in extensive class certification and merits discovery. To that end, Seeger Weiss served general discovery requests specific to TPP issues. In response, Merck produced millions of pages of responsive documents to Seeger Weiss. The Firm thereafter created a segregated document repository for TPP documents (distinct from the general Vioxx document database), and, as more firms became involved in TPP litigation, made the document repository generally available to those with cases. In addition, the Firm led a coordinated document review and issue development applicable to all TPP claims.

15.    The Firm further took the lead in identifying and developing experts specific to TPP issues. As noted above, the Firm retained and developed Dr. Kelly. Seeger Weiss further retained and developed Dr. Stephen Schondelmeyer, a leading expert in pharmacy practice management, prescription drug reimbursement, drug benefit plan management, and pricing patterns of the pharmaceutical industry. Dr. Schondelmeyer is a Professor and Head of the Department of Pharmaceutical Care & Health Systems at the University of Minnesota's College of Pharmacy. In addition to these experts who were retained specifically on TPP matters, the Firm retained a number of general liability and science experts concerning broader Vioxx issues, as further described below.

### Settlement Negotiations & Role

16.    After litigating against Merck for more than seven years concerning TPP issues, Christopher Seeger entered into settlement negotiations with Merck counsel concerning a global resolution of TPP claims. Mr. Seeger served as lead negotiator in settlement discussions with Merck, often coordinating with other TPP counsel, to facilitate a resolution acceptable to all involved. Those discussions, which occurred over a several month period, culminated in the September 14, 2009 Private TPP Settlement Agreement and Release. The TPP settlement created a $65 million fund to be used exclusively to compensate the individual claims of approximately 200 private TPPs.

17.    Mr. Seeger also led negotiations concerning the creation of a common benefit fund, to be funded separately by Merck, to compensate those who performed common benefit services, and incurred common benefit expenses, to the benefit of TPP claimants. Those negotiations led to the creation of the $15 million fund to which the Court, pursuant to PTO 57, directed common benefit TPP counsel to submit applications, such as this one.

18.    Upon the execution of these agreements, Mr. Seeger, through communication and outreach efforts with counsel for other TPP claims, assisted in ensuring the success of the settlement, which was uniformly accepted.

**TPP Clients & Recoveries**

19.    In addition to representing Local 68, the Firm was counsel of record for the plaintiff in other New Jersey state TPP actions, namely *Philadelphia Federation of Teachers Health & Welfare Fund v. Merck & Co.*, No. ATL-L-02330-08-MT, and *International Union of Operating Engineers Local No. 825 Welfare Fund v. Merck & Co.*, No. ATL-L-02534-08-MT. Though these clients received recoveries in the settlement—albeit relatively modest—the Firm has received *no* attorneys' fees for its work on any of these cases (or any other TPP case).

**TPP-Specific Lodestar**

20.    In connection with the prosecution of the Local 68 and other TPP actions, Seeger Weiss partners, associates, and paralegals/paraprofessionals performed a total of 8,828 hours of work, amounting to a lodestar of $4,764,186. Besides Messrs. Seeger and Buchanan, other Seeger Weiss partners who performed substantial TPP common benefit work included Jeffrey S. Grand, and Diogenes P. Kekatos. Mr. Kekatos, together with Seeger Weiss Counsel James A. O'Brien, led the substantial trial court and appellate briefing on class certification in the *Local 68* matter. With regard to expenses, the Firm spent $179,279 in approved expenses specific to its prosecution of TPP claims. All but $17,006 has already been reimbursed to Seeger Weiss.

21.    Schedules of the Firm's time, lodestar, contributions by task code, and unreimbursed (but approved) expenses are set forth at Exhibit A.[1]  Given that this work was performed in connection with, *inter alia,* the development of TPP claims and case theories; the litigation of Merck's motions to dismiss TPP claims as being *per se* not cognizable; the litigation of a motion to certify a nationwide class (which for several years represented the single largest Vioxx-related claim pending against Merck); and the discovery, expert development, and preparation of TPP cases for trial on the merits, it is work that inured to the common benefit of all TPP plaintiffs.

## SEEGER WEISS'S GENERAL COMMON BENEFIT EFFORTS

22.    As noted generally above, in addition to its work on specific and general TPP litigation matters, Seeger Weiss maintained an important and broad leadership role in the Vioxx products liability litigation—both for the MDL and in state court. Seeger Weiss served as Co-Lead counsel in the MDL proceedings, and Liaison Counsel in the New Jersey coordinated proceedings. In addition, the Firm's attorneys, including several partners, served on the Discovery Committee, Science Committee, Trial Committee, and Trial Package Committee. For many Seeger Weiss attorneys, the Vioxx litigation was what they did from 2003 until the time when the litigation and settlement administration concluded.

---

[1]    The Firm's underlying time submissions and expense details for TPP-related work have previously been submitted to Liaison Counsel. To the extent that the fee committee is in need of any backup, Seeger Weiss Seeger Weiss is happy to do so.

23.     In general terms, and as previously recognized by the Court, Seeger Weiss took an early leadership role in the litigation. The Firm "litigated the case aggressively in New Jersey through negotiations, extensive motion practice, and coordinated discovery efforts with plaintiffs' counsel in New Jersey and elsewhere. *In re Vioxx Products Liability Litigation*, MDL No. 1657, Order and Reasons at 115-20 (E.D. La. Aug. 9, 2011) (D.E. 63195) ("Order & Reasons") at 116. After the MDL was formed, Seeger Weiss continued to lead the Vioxx litigation efforts. *Id.* at 117. The Firm managed and hosted the electronic document repository; coordinated and led document review efforts; chaired and second chaired a number of key Merck and non-party witness depositions; developed several central expert witnesses that testified in both MDL and state trials; tried and supported several Vioxx trials; and took a leading role in the development of the MDL trial package, exhibit database, and theme grid. Order & Reasons at 116-19.

24.     These and other contributions of Seeger Weiss are generally set out in the Firm's common benefit application submitted to the products liability Fee Allocation Committee. A copy of the Affidavit of Christopher A. Seeger in Support of the Seeger Weiss LLP Fee Allocation Submission is annexed as Exhibit B. In connection with the fee allocation process, Seeger Weiss reported in excess of 68,827 common benefit hours, which included 8,828 hours for work on TPP matters.

I hereby certify that the foregoing is true and correct.

_____
CHRISTOPHER A. SEEGER

7

Seeger Weiss LLP
Vioxx TPP specific
Lodestar

| Professional | Total Hours | Current Rates | Lodestar |
|---|---|---|---|
| Aparicio, Leiden | 31.00 | $ 100.00 | $ 3,100.00 |
| Barreca, Rick | 1.00 | $ 385.00 | 385.00 |
| Benedetto, TerriAnne | 0.40 | $ 555.00 | 222.00 |
| Bradford, Donald | 989.15 | $ 395.00 | 390,714.25 |
| Buchanan, David R. | 504.55 | $ 740.00 | 373,367.00 |
| DeBass, Haile | 136.75 | $ 365.00 | 49,913.75 |
| Drillas, Leah | 15.00 | $ 175.00 | 2,625.00 |
| Ecklund, Donald | 11.80 | $ 395.00 | 4,661.00 |
| Farjardo, Cathleya M. | 96.20 | $ 225.00 | 21,645.00 |
| Farkas, Michael | 54.50 | $ 415.00 | 22,617.50 |
| Forman, Melanie | 189.25 | $ 165.00 | 31,226.25 |
| Glasser, Stephanie | 108.80 | $ 165.00 | 17,952.00 |
| Grand, Jeffrey S. | 470.25 | $ 605.00 | 284,501.25 |
| Jones, Brina | 7.50 | $ 165.00 | 1,237.50 |
| Karlitz, Amanda | 92.10 | $ 225.00 | 20,722.50 |
| Katz, Seth | 0.60 | $ 495.00 | 297.00 |
| Kekatos, Diogenes | 2,755.20 | $ 675.00 | 1,859,760.00 |
| Kibria, Somaiya | 117.60 | $ 235.00 | 27,636.00 |
| Maiorana, Matthew | 173.00 | $ 365.00 | 63,145.00 |
| Mora, Jose Danny | 533.80 | $ 245.00 | 130,781.00 |
| O'Brien, Jim | 1,712.10 | $ 625.00 | 1,070,062.50 |
| Pauletta, Jacquelyne | 27.45 | $ 165.00 | 4,529.25 |
| Seeger, Christopher A. | 365.50 | $ 785.00 | 286,917.50 |
| Sikka, Punam | 6.00 | $ 140.00 | 840.00 |
| Trombino, Larry | 11.40 | $ 275.00 | 3,135.00 |
| Wagner, Michael E. | 400.70 | $ 205.00 | 82,143.50 |
| Walter, Alex | 3.75 | $ 100.00 | 375.00 |
| Weiss, Stephen A. | 12.90 | $ 750.00 | 9,675.00 |
| TOTALS | 8,828.25 | | $ 4,764,186.75 |

Seeger Weiss LLP
Vioxx TPP specific
Hours by Task Code

| Description | Hours |
|---|---|
| Case Assessment Development, and Administartion | 3,053.70 |
| Tre-Trial Pleadings and Motions | 3,404.15 |
| Discovery | 1,818.50 |
| Trial Preparation and Trial | 217.50 |
| Appeal | 334.40 |
| TOTAL HOURS | 8,828.25 |

Seeger Weiss LLP
Vioxx TPP specific
Expenses

| Description | Totals |
|---|---|
| Experts and Professionals | $ 69,747.21 |
| Postage, shippping, courier, certfied mail | $ 6,586.71 |
| Printing and photocopying | $ 22,966.13 |
| Computerized research - Lexis/Westlaw | $ 30,715.68 |
| Telephone - long distance (actual charges only) | $ 2,073.03 |
| Travel Costs (Airfare, Hotels, Meals, Travel and Local Transportation) | $ 46,723.18 |
| Depositions & Court Costs | 3,516.24 |
| TOTAL COSTS | 182,328.18 |
| Costs disallowed by auditors | (3,048.95) |
| Costs approved and paid | (162,273.07) |
| Costs approved remaining to be paid | $ 17,006.16 |

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: VIOXX | *         MDL  Docket No. 1657 |
| | * |
| PRODUCTS LIABILITY | *         SECTION L |
| LITIGATION | * |
| | *         JUDGE FALLON |
| | * |
| | *         MAGISTRATE JUDGE KNOWLES |
| | * |
| | * |
| | * |

### AFFIDAVIT OF CHISTOPHER A. SEEGER IN SUPPORT
### OF THE SEEGER WEISS LLP FEE ALLOCATION SUBMISSION

I, Christopher A Seeger, make the following sworn statement based on personal knowledge:

1.     I am the founding Partner of the law firm, Seeger Weiss LLP.  During the course of the Vioxx litigation, Seeger Weiss dedicated a large number of senior partners, associates, and paralegals to actively participate in both the federal multi-district litigation and the mass tort litigation centralized in Atlantic County, New Jersey.  The attorneys involved not only made significant contributions to the litigation, but assumed key leadership roles as well.  *See* annexed Appendix, at ¶ 1.  This contribution was made in several areas and on multiple fronts, including but not limited to: case administration and discovery; trial prosecution and trial package development; and settlement negotiations and administration.  As detailed in its time and expense submissions, Seeger Weiss attorneys and paralegals spent more than 57,000 hours litigating these actions, and expended in excess of $3.9 million.  Indeed, for some of our attorneys, the Vioxx litigation was the primary focus of their practice.

## Case Administration & Discovery

2.     Early on Seeger Weiss took on a leadership role with its appointment as liaison counsel for the coordinated New Jersey VIOXX litigation in the summer of 2003.  Seeger Weiss litigated the case aggressively in New Jersey, through tough negotiations, extensive motion practice, and coordinated discovery efforts with plaintiffs' counsel in New Jersey and elsewhere.  These efforts resulted in large-scale and unprecedented discovery for plaintiffs across the country.  *See* Appendix at ¶ 2.  Prior to the formation of the MDL, Seeger Weiss made significant discovery advances, including but not limited to:

- Built and maintained the infrastructure for a large, multi-user electronic document depository at its offices in New York.  This depository also made available numerous databases and raw clinical data produced by Merck, as well as deposition transcripts and exhibits.  Additionally, created document review and coding protocols, and custodial file review assignments for a database that would ultimately exceed 30 million pages;

- Reviewed countless pages of documents and identified some of the most significant "hot docs" in the litigation.  Seeger Weiss organized such documents by theme, facilitating their use at deposition, in motion practice, and at trial.  *Ultimately, this document collection was the genesis of the MDL Exhibit Database and Theme Grid*; and

- Conducted, assisted in, or coordinated numerous depositions of important corporate witnesses, including but not limited to Beth Seidenberg, Brian Daniels, Thomas Bold, Louis Sherwood, Doug Watson, Adam Schechter, Jennifer Ng, David Anstice, Briggs Morrison, Alise Reicin, and Alan Nies.

3.     The Vioxx MDL, which was not formed until early 2005, directly benefited from the efforts described above and in the annexed Appendix, as Seeger Weiss' accomplishments in New Jersey resulted in identical, and in some cases, broader, productions and/or more favorable

rulings in the MDL. Indeed, much of the work-product created by Seeger Weiss, including but not limited to motions, discovery materials, and document summaries and compilations, were provided to the MDL and/or served as templates for subsequent MDL work product.

4.     After the MDL was formed, Seeger Weiss continued in its leadership role through significant participation in both the coordinated New Jersey proceedings and the MDL. Further, Seeger Weiss fostered unprecedented cooperation among state and MDL plaintiffs' counsel, resulting in coordinated discovery, litigation, and trial strategies. While serving as both co-chair of the MDL and co-liaison counsel in New Jersey, Seeger Weiss advised and consulted with counsel from around the country, litigating in both state courts and in the MDL, in advance of their depositions, court hearings, and trials.

5.     Further, Seeger Weiss continued to make significant contributions to discovery efforts after the Vioxx MDL was formed, both in New Jersey and MDL litigation. *See* Appendix at ¶ 3. Specifically, Seeger Weiss was primarily responsible for, or made significant contributions to:

- Significant participation and/or leadership on MDL committees, including but not limited to the: Plaintiffs' Steering Committee; Trial Committee; Discovery Committee; Science Committee; and Trial Package Committee, and

- Critical depositions of Merck corporate representatives and third-party witnesses, including but not limited to: Ray Gilmartin, Alise Reicin, Edward Scolnick, Dr. Eric Topol, Dr. Jerry Avorn, and Dr. David Graham. Where a Seeger Weiss attorney was not the lead examiner, he either participated in the depositions or played a significant role in the preparation for such depositions.

6.     In 2006 and 2007, Seeger Weiss organized co-plaintiffs' counsel and secured large-scale discovery and scheduling orders in New Jersey that required Merck to: (a) work up large numbers of cases for potential trial, and (b) collect and produce nearly 1,000 custodial files of Merck sales representatives. These orders placed a significant burden on Merck and Plaintiffs estimate that Merck spent several hundred million dollars in legal fees as a result of these discovery orders. It cannot be disputed that such an outcome had a significant benefit to plaintiffs in all jurisdictions, including the MDL.

## Trial Prosecution and Trial Package Development

7.     Seeger Weiss served as lead and co-lead counsel in the cases of *Humeston v. Merck* and *Hermans/Humeston v. Merck* in 2005 and 2007, respectively. The 2007 *Humeston* trial resulted in a plaintiffs' verdict for $47.5 million. Additionally, Seeger Weiss attorneys provided valuable assistance and support to other trials throughout the country by providing exhibits, deposition cuts, motion support and templates, examination kits, appearance at oral argument and assistance with pre-trial proceedings, or simply advice regarding specific witnesses and trial themes. Seeger Weiss provided such assistance in *Ernst v. Merck, Plunkett v. Merck, Cona/McDarby v. Merck, Barnett v. Merck*, as well as trials in California and Florida. The *Ernst, McDarby*, and *Barnett*

trials all resulted in plaintiffs' verdicts.

8.      Seeger Weiss was also involved in the development of numerous experts with varying specialties—regardless of whether that witness was to appear in the MDL or in another jurisdiction.  Seeger Weiss attorneys were primarily responsible or played a significant role in the development and preparation of the following experts:  Wayne Ray, Dr. Richard Kronmal, Dr. David Egilman, Dr. Jerry Avorn, Cheryl Blume, John Guerigian, and Dr. Harlan Krumholz.

9.      Similarly, as detailed in the Appendix at ¶ 4, Seeger Weiss played a significant role in the development of the MDL trial package, including the Exhibit Database and Theme Grid.

**Settlement Negotiations and Administration**

10.     In the Fall of 2006, Merck and plaintiff representatives from the MDL and various coordinated state court litigations, entered into a dialogue regarding potential settlement of certain VIOXX personal injury claims.  I took a leading role in these negotiations, which ultimately resulted in agreement to the $4.85 billion settlement program announced in November 2007.  These negotiations spanned nearly a year and involved multiple conference calls and face-to-face meetings.  Further, when it came time to draft the agreement and finalize its terms, Seeger Weiss attorneys again took on a significant role.  Even while I was negotiating a potential settlement agreement, Seeger Weiss attorneys began to litigate the Vioxx case more aggressively in New Jersey.  These efforts resulted in court-ordered trial settings and burdensome discovery orders on Merck that placed tremendous pressure on the Defendant to settle the litigation on a global scale.

11.     Following announcement of the Settlement Program, Seeger Weiss attorneys have participated in numerous meetings, conferences, and telephone calls with counsel from around the country, to facilitate a speedy and successful resolution to those claims subject to the settlement program.  Additionally, Seeger Weiss attorneys have appeared at numerous hearings to resolve disputes relating to the settlement.  Further, to help insure the success of the settlement program, Seeger Weiss continues to review claim packages and participate in Gates Committee meetings and teleconferences.

12.     Seeger Weiss's leadership, tenacity, and superior work product have been acknowledged by co-counsel, defense counsel, and the courts presiding over these actions.  Our significant contributions to virtually every aspect of the Vioxx litigation placed tremendous pressure on Merck and ultimately led to the successful resolution of the majority of Vioxx personal injury claims in federal and state courts.

Christopher A. Seeger, Founding Partner
Seeger Weiss, LLP

3

- Coordinated discovery efforts and depositions through conference calls and meetings with New Jersey counsel.  Organized large educational conferences with New Jersey and other state counsel to coordinate litigation efforts and to provide instruction concerning the critical liability and science issues in the case against Merck.  Indeed, at such meetings in November and December 2004, and January 2005, Seeger Weiss distributed binders of "hot documents" and other background information to participating attorneys, many of which were used in subsequent trials;

- Built and maintained the infrastructure for a large, multi-user electronic document depository at its offices in New York.  This depository also made available numerous databases and raw clinical data produced by Merck, as well as deposition transcripts and exhibits.  Additionally, created document review and coding protocols, and custodial file review assignments for a database that would ultimately exceed 30 million pages;

- Created the first Vioxx Backgrounder, which detailed the case against Merck and provided critical information relating to the science and marketing issues and which identified the key players in the case;

- Reviewed countless pages of documents and identified some of the most significant "hot docs" in the litigation.  Further, Seeger Weiss organized such documents by theme, facilitating their use at deposition, in motion practice, and at trial.  Ultimately, this document collection was the genesis of the MDL Exhibit Database and Theme Grid;

- Conducted, assisted in, or coordinated numerous depositions of important corporate witnesses, including but not limited to Beth Seidenberg, Brian Daniels, Thomas Bold, Louis Sherwood, Doug Watson, Adam Schechter, Jennifer Ng, David Anstice, Briggs Morrison, Alise Reicin, and Alan Nies.

- Developed experts and other consultants that made significant contributions to the litigation in both NJ and the MDL, ultimately being designated as generic experts in the MDL (*e.g.*, Wayne Ray, Dr. Richard Kronmal); and

- Continued to place pressure on Merck by advancing the third-party payor litigation and through cooperation with plaintiffs and public officials, pursuing other VIOXX-related claims.

3.   *After the MDL was formed*, Seeger Weiss attorneys continued in their leadership role and significantly advanced the discovery and the development of the Vioxx litigation:

- Significant participation and/or leadership on MDL committees, including but not limited to the: Plaintiffs' Steering Committee; Trial Committee; Discovery Committee; Science Committee; and Trial Package Committee.

- Obtaining significant third-party and foreign discovery materials and depositions;

ii

- De-privileging thousands of documents previously withheld by Merck; and

- Critical depositions of Merck corporate representatives and third-party witnesses, including but not limited to: Ray Gilmartin, Alise Reicin, Edward Scolnick, Dr. Eric Topol, Dr. Jerry Avorn, and Dr. David Graham. Where a Seeger Weiss attorney was not the lead examiner, he either participated in the depositions or played a significant role in the preparation for such depositions.

4.     Seeger Weiss played a significant role in the development of the MDL trial package, including but not limited to:

- Development of cross-examination kits;

- Development and testimony preservation of key expert and fact witnesses, including but not limited to: Wayne Ray, Dr. Jerome Avorn, Dr. Eric Topol, and Edward Scolnick;

- Creation of the MDL Exhibit Database and Theme Grid, first created by Seeger Weiss in connection with the Humeston v. Merck trial then shared with the MDL for its trial package;

- Development of deposition cuts, powerpoint presentations, timelines, and trial graphics; and

- Development of a catalogue of various discovery, MIL, and Rule 702 motions, many of which were authored by Seeger Weiss attorneys or were drawn from the more than 20 substantive motions drafted and filed by Seeger Weiss in the New Jersey litigation.

iii