IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | |
|     Products Liability Litigation | * | |
| | * | |
| This Document Relates to: | * | MDL No. 1657 |
| | * | |
| JIM HOOD, ATTORNEY GENERAL, | * | SECTION L |
|   *ex rel.* | * | |
| STATE OF MISSISSIPPI, | * | JUDGE ELDON E. FALLON |
| | * | |
|                     Plaintiff, | * | MAGISTRATE JUDGE |
| | * | KNOWLES |
|   versus | * | |
| | * | |
| Merck Sharp & Dohme Corp., | * | |
| | * | |
|                     Defendant. | * | |
| | * | |
| Case No. 2:05-cv-6755 | * | |
| | * | |
| * * * * * * * * * * * * * * * * * * * * * * | * | |

**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO COMPEL**

Plaintiff seeks $10 billion in penalties based on Merck's alleged misrepresentations regarding Vioxx. Yet, Plaintiff refuses to produce any discovery identifying what those misstatements were. Plaintiff also seeks to avoid providing any discovery that would support the causation element of his claims. As set forth below, Plaintiff has offered various arguments as to why the discovery at issue is unnecessary, premature, or irrelevant, but all of these arguments fail.

**ARGUMENT**

I. **MERCK IS ENTITLED TO DISCOVERY REGARDING THE SPECIFIC REPRESENTATIONS UNDERLYING PLAINTIFF'S CLAIMS.**

As Merck explained in its opening brief, information regarding Merck's supposed misstatements is highly relevant to Plaintiff's claims under the Mississippi Consumer Protection

1117295v1

Act and False-Advertising Statute. (*See* Mot. at 13.) Indeed, Merck cited several cases in its opening brief making clear that a plaintiff who sues over a defendant's misstatements must identify those statements when requested to do so in discovery. (*See id.*) To date, Plaintiff's responses are limited to a chart, attached as Exhibit A to his Second Supplemental Responses to Defendant's Second Set of Interrogatories. Exhibit A lists 30 letters, medical journal inserts, print and television advertisements, and other communications. The chart also describes in very general terms the communications it lists, but it does not specify the actual representations that ostensibly form the basis of Merck's liability. As set forth in Merck's opening brief, these responses are insufficient because they leave Merck to guess which representations are at issue. (*See id.* at 6-7, 15-16; *see also generally id.* Ex. 8 ("Exhibit A").)

Plaintiff argues in response that: (1) Merck should know what it did wrong after so many years of defending itself in Vioxx cases; (2) pointing Merck to large categories of documents satisfied the AG's discovery obligations; and (3) Merck should be forced to wait for expert discovery if it seeks more specificity. None of these arguments has any merit.[1]

*First*, Plaintiff contends that, because the Vioxx litigation has been ongoing for the "last nine (9) + years . . . , Merck is abundantly aware of each of the misrepresentations" on which the State's lawsuit is based. (Opp'n at 5.) Notably, Plaintiff cites no authority for the novel position that a defendant's prior litigation experience in *other* cases excuses a future plaintiff from providing fulsome discovery. Nor is Merck familiar with any authority holding that plaintiffs in

---

[1] Plaintiff's argument that Interrogatories Numbers 1 and 6 are also improper because they seek a "legal conclusion" (Opp'n at 4) is similarly meritless. As one court has explained, "[a]n interrogatory is not objectionable merely because it involves an opinion, contention or legal conclusion." *Diversified Prods. Corp. v. Sports Center Co.*, 42 F.R.D. 3, 4-5 (D. Md. 1967) (overruling plaintiffs' objection to defendants' interrogatories). In fact, such a request, which "call[s] for the application of law to fact . . . can be most useful in narrowing and sharpening the issues, which is a major purpose of discovery." *Krawczyk v. City of Dallas*, No. 3:03-CV-0584-D, 2004 U.S. Dist. LEXIS 30011, at *4-5 (N.D. Tex. Feb. 27, 2004) (granting defendant's motion to compel) (internal quotation marks and citation omitted).

multidistrict litigation proceedings are exempt from producing discovery once the proceeding is several years old.  Indeed, the U.S. Court of Appeals for the Fifth Circuit has specifically rejected similar arguments pressed by other plaintiffs in the Vioxx litigation.  *See, e.g., In re Vioxx Prods. Liab. Litig. (Dier v. Merck & Co., Inc.)*, 388 F. App'x 391, 398 (5th Cir. 2010) (rejecting plaintiffs' argument that they should not have been required to produce evidence linking their alleged injuries to Vioxx because they had "alleged precise injuries and both the court and Merck are on notice of the nature of the injuries and the injuries' relationship to Merck's conduct"), *cert. denied*, 131 S. Ct. 1477 (2011).

***Second***, Plaintiff alternatively contends that he has already given Merck all the information it has requested.  (*See* Opp'n at 5.)  Specifically, Plaintiff asserts that the information contained in Exhibit A is "the very type of information that the court ordered the plaintiff to produce" in *Nammari v. Town of Winfield*, No. 2:07 cv 306, 2010 U.S. Dist. LEXIS 30760 (N.D. Ind. Mar. 29, 2010) (Mot. at 14).  (*See* Opp'n at 5.)[2]

Plaintiff is wrong.  The defendant in *Nammari* stood accused of making defamatory statements.  There, as here, the defendant asked the plaintiffs to identify the precise statements that were alleged to support liability.  And there, as here, the plaintiffs responded not by spelling out the statements, but by contending that they were contained within specified media (in that case, a videotape and an e-mail).  The court held that the response was inadequate because it left the defendant to guess which statements contained in the video and e-mail were the basis of the

---

[2] Plaintiff also contends that this Court found Merck's "nearly identical discovery" requests in the Utah proceeding to be "overly broad and/or vague" (Opp'n at 2; *see also id.* at 6), but he misconstrues the Court's *Utah* order and the context in which it was decided.  While the Court struck Merck's use of the word "particularity" from certain requests in *Utah*, it nonetheless found that the information regarding Merck's alleged misrepresentations was "relevant . . . to both liability and damages."  *See* Minute Order, *State of Utah v. Merck Sharp & Dohme Corp.*, No. 2:06-cv-09336 (E.D. La. Nov. 7, 2012) ("Utah Order") (attached as Ex. 1).  The requests at issue here do not use the phrase "with particularity" (*see generally* Def.'s Second Set of Interrogs. and First Set of Reqs. to Admit), and the Court's prior order in the Utah action only undermines Plaintiff's position.

3

suit. *See Nammari*, 2010 U.S. Dist. LEXIS 30760, at *11 (because "[v]iewing the tape does not readily identify which statements the plaintiffs believe are defamatory," the discovery response was "incomplete, and the plaintiffs [had to] identify **which statements in the tape** they believe are defamatory") (emphasis added). In other words, it is not enough to tell the defendant where to look; the plaintiff must tell the defendant exactly what it is looking for.

Plaintiff has not done that here.[3] He points to nothing in Exhibit A that identifies the specific statements that supposedly form the basis of his suit; nor could he. After all, as Merck explained in its opening brief, Plaintiff simply copied and pasted exceedingly generic descriptions of communications that are ostensibly contained within the documents he identifies. (*See* Mot. at 6 (explaining that each communication listed in Exhibit A is described only as "'[c]ommunicat[ing] the risk profile, benefits, and efficacy of VIOXX in an unfair or deceptive manner' and '[p]resent[ing] information concerning the cardiovascular risk of VIOXX in an unfair or deceptive manner,' with no elaboration") (quoting Exhibit A).)

In his response, Plaintiff also claims that he has identified specific statements by referencing an August 17, 2001 warning letter from the Department of Health and Human Services, but this, too, is wrong. According to Plaintiff, the letter states that Merck "has engaged in a promotional campaign for VIOXX that minimizes the potentially serious cardiovascular findings that were observed in the VIOXX Gastrointestinal Outcomes Research (VIGOR) study, and thus, misrepresents the safety profile for VIOXX." (*See* Opp'n at 3 (quoting Pl.'s Second Supp'l Resps. to Def.'s Second Set of Interrogs.).) But Plaintiff's summary of the August 2001 warning letter does not identify a single ***specific*** misrepresentation, much less ***when*** such misstatement was made or by ***whom***. Thus, as in *Nammari*, Plaintiff is only offering a general

---

[3] *Nammari*'s insistence that the plaintiff identify the specific statements at issue is supported by the other cases Merck cited in its brief (*see generally* Mot. at 13-15), none of which Plaintiff attempts to distinguish.

4

description of Merck's conduct, which does not suffice.  Because Plaintiff fails to "specify *which* statements" form the basis of his suit, his discovery responses are just as deficient as the ones rejected in *Nammari*.[4]  2010 U.S. Dist. LEXIS 30760, at *11 (emphasis added).

*Third*, Plaintiff also contends that Merck's alleged misrepresentations will be identified in expert reports, "which are not due . . . until May 3, 2013," and that the "exact identities and actions of the Merck employee[s] involved in the violations . . . against the State of Mississippi" need not be disclosed until the due date for fact-witness depositions, on March 4, 2013.  (Opp'n at 3, 5.)  Neither contention supports denial of Merck's motion.

The pendency of expert discovery is not a "valid reason to delay answering [a] discovery request[]" if the party is able to provide a factual response.  *Lemaster v. Collins Bus Corp.*, No. 11-CV-2128 JTM/KGG, 2012 U.S. Dist. LEXIS 151663, at *5 (D. Kan. Oct. 22, 2012).  In *Lemaster*, for example, the plaintiff resisted discovery requests seeking information about the connection between the defendant's manufacture of a bus and the plaintiff's alleged injury on the ground that the requests sought "information 'subject to expert opinion testimony.'"  *Id.* at *4.  The court compelled a response, noting that the plaintiff was "capable of providing a factual response based on the information currently known to him."  *Id.* at *6; *accord, e.g.*, *Essex Builders Group, Inc. v. Amerisure Ins. Co.*, 230 F.R.D. 682, 685 (M.D. Fla. 2005) ("The Court again finds [plaintiff's] answers deficient, and [plaintiff] must supplement its answers with whatever information it possesses. . . .  The fact that [plaintiff] may later supplement its

---

[4]  Plaintiff has also failed to satisfy his discovery obligations with respect to Merck's request for details concerning "why and how" Merck's as-yet-unidentified representations were unlawful. (*See* Opp'n at 4.)  Plaintiff attaches the Expert Report of Dr. Connie Pechmann from August 2006 to his opposition brief and suggests that its "analysis and opinions concerning Merck's misleading and deceptive statements and advertisements are highly relevant to Plaintiff's case." (*Id.*; *see also* Expert Report of Dr. Connie Pechmann, August 2006 (attached to Opp'n as Ex. A).)  But as Plaintiff himself recognizes, this report "concerns *different* litigation." (*Id.* (emphasis added).)  And because Plaintiff still has not identified a single specific misstatement that forms the basis of his lawsuit, attaching an expert's opinions regarding the why and how of representations underlying a different Vioxx case does not satisfy Plaintiff's discovery obligations here.

5

1117295v1

interrogatory answers with an expert report does not permit it to refuse to respond with whatever discoverable information it now holds.") (citation omitted); *Bohannon v. Honda Motor Co.*, 127 F.R.D. 536, 538 (D. Kan. 1989) (where plaintiff objected to answering an interrogatory on the basis that "he must obtain the design, testing, and safety information requested from Honda before he can respond . . . [and that] his expert must evaluate the material, before he specifically describes the defects in the Honda vehicle," the court found "plaintiff's explanation insufficient to resist discovery" because he "has a duty to answer the interrogatory with whatever information he has").  This case calls for the same result.  Merck is simply asking Plaintiff to identify the alleged representations that form the basis of his suit and explain why they violate the law – information that should have been in his possession before he filed suit long ago.[5]

For all of these reasons, Plaintiff's various arguments should be rejected.

## II. MERCK IS ENTITLED TO CAUSATION-RELATED DISCOVERY REGARDING THE IMPACT OF ITS ALLEGED MISREPRESENTATIONS ON MISSISSIPPI HEALTHCARE PROVIDERS.

Plaintiff's efforts to ward off discovery regarding the impact of Merck's alleged misrepresentations on Mississippi physicians should also rejected.  According to Plaintiff:  (1) Merck's requests focus on damages, which are exempt from current discovery; and (2) Plaintiff need not prove causation to support his false-advertising claim.  Neither argument has merit, as this Court recognized in granting a similar motion to compel in the *Utah* litigation.

---

[5]  To the extent certain details are not yet in Plaintiff's possession – e.g., the "exact identities and actions of the Merck employee[s] involved in the violations . . . against the State of Mississippi" (Opp'n at 3) – Plaintiff's present lack of knowledge is not a basis to deny Merck's motion, and he does not appear to argue otherwise in his brief.  Thus, Plaintiff should be compelled to produce such information as soon as he "complete[s] depositions of all fact witnesses." (*Id.*)

***First***, Plaintiff argues that Merck's requests relate solely to damages and that "this Court very clearly stated" that damages discovery "would not occur until after the cases have been remanded." (Opp'n at 6.) Plaintiff is wrong in both respects.

The discovery sought by Merck is relevant to causation – not simply damages. This is evident in *In re Zyprexa Products Liability Litigation*, 671 F. Supp. 2d 397 (E.D.N.Y. 2009), cited in Merck's opening brief (*see* Mot. at 17). In *Zyprexa*, as here, the AG claimed that a drug manufacturer's misconduct caused the state to cover more prescriptions through its Medicaid program by inflating demand for the drug. *See* 671 F. Supp. 2d at 454. The court concluded that the AG's claims required proof of a causal nexus – i.e., that the alleged misconduct actually affected prescribing decisions. *See id.* at 454, 458-59. According to the court, proof of causation was required to "overcome the possibility that a Mississippi patient was prescribed Zyprexa for some reason other than belief in the accuracy of Lilly's warnings or representations." *Id.* at 454.

Plaintiff attempts to distinguish *Zyprexa* on the supposed ground that he is "not seeking to recoup the losses that [the State's] Division of Medicaid sustained as a result of Merck's marketing and sale of Vioxx." (Opp'n at 7.) But this is a distinction without a difference. After all, Plaintiff is seeking "restitution" for Vioxx prescriptions that allegedly "resulted from Defendant's deceptive and illegal marketing program" in connection with his unjust-enrichment claim. (First Am. Compl. ¶ 106.) He seeks similar relief in connection with his common-law fraud and negligence claims. (*See id.* ¶ 100 ("***As a result*** of Defendant's fraudulent conduct, the State of Mississippi . . . has been damaged by paying excessive amounts for Defendant's drug") (emphasis added); *id.* ¶ 113 ("***As a direct and proximate result*** of the Defendant's negligence, the State of Mississippi has suffered damages and is therefore entitled to recover those

damages.") (emphasis added).) Plaintiff cannot dispute that a showing of causation or reliance is required to sustain each one of these causes of action. (*See* Mot. at 20.)[6]

In any event, Merck would still be entitled to its requested discovery even if the requests *did* relate solely to damages. Although Plaintiff contends that in PTO 39B, "this Court very clearly stated" that damages discovery "would not occur until after the cases have been remanded" (Opp'n at 6), that is *not* what the Court said. Rather, the Court's order only defers "*[e]xpert* discovery on damages," which is not remotely at issue in Merck's requests. Pretrial Order No. 39B at 2, ECF No. 63,895 (Jun. 5, 2012) (emphasis added). Moreover, the order expressly indicates "the intention of the Court and the parties that *all* fact and expert discovery [other than *expert* discovery related to damages] will be completed by the parties *in the MDL* prior to consideration of the motions to remand/transfer." *Id.* (emphases added). Thus, even if Merck's requests were only relevant to damages – and they are not – Plaintiff's arguments would still fail.

The same conclusion would follow even if Plaintiff were to jettison all of his damages claims and limit his requested relief to penalties. As Judge Weinstein explained in *Zyprexa*, the ascertainment of the amount of any penalty would depend on "the information about Zyprexa available to the medical community at the time [each] prescription was written; [] the times of the various alleged instances of misconduct by Lilly, and whether and to what extent each instance may have *impacted* the prescription in question." 671 F. Supp. 2d at 458-59 (emphasis added). In light of this explanation, Judge Weinstein rejected the AG's argument that "'proof of reliance or causation' is not required" for the imposition of penalties. *See id.* at 458. Thus, even

---

[6]   For this reason, Plaintiff is clearly mistaken in arguing that "the Court did not grant [Merck's] motion to compel . . . Utah to produce similar [causation-based] information presently sought by Merck." (Opp'n at 6.) The Court specifically held that the evidence Merck sought there was "relevant . . . to both liability and damages" as to Utah's negligence claim. Utah Order at 1.

if the information Merck seeks were only relevant to the calculation of penalties rather than causation or damages, it would still be a proper subject of discovery.

*Second*, Plaintiff also argues that Merck's discovery requests are irrelevant to his false-advertising claim because he need not "prove 'reliance' or 'causation' to succeed on" a request for fines under that claim. (Opp'n at 8-9.) This argument is both irrelevant and unavailing. As long as causation is relevant to any of Plaintiff's claims, it is fair game for discovery. In any event, as Merck pointed out in its opening brief, Plaintiff seeks not just fines but damages in connection with his false-advertising claim, and an award of damages under the statute undisputedly requires proof of causation. (*See* Mot. at 19-20; *see also* First Am. Compl. ¶ 94.) Moreover, since Mississippi's false-advertising statute, like the MCPA, makes the imposition of penalties discretionary, *see* Miss. Code Ann. § 97-23-3, Judge Weinstein's holdings regarding MCPA penalties in *Zyprexa* apply to this claim as well, *Zyprexa*, 671 F. Supp. 2d at 458. Thus, information about the impact of Merck's alleged misconduct on Mississippi patients and doctors (*see* Mot. at 7-8) is clearly relevant to Plaintiff's false-advertising claim. For this reason, too, the Court should grant Merck's motion.

## **CONCLUSION**

For the foregoing reasons, as well as those set forth in Merck's opening brief, the Court should grant Merck's motion to compel responses to Merck's First Set of Requests to Admit (Requests 11, 13, and 14) and Second Set of Interrogatories (Interrogatories 1-6).

Dated:  February 8, 2013                          Respectfully submitted,


                                                  */s/ Dorothy H. Wimberly*
                                                  Phillip A. Wittmann, 13625
                                                  Dorothy H. Wimberly, 18509
                                                  STONE PIGMAN WALTHER
                                                  WITTMANN L.L.C.
                                                  546 Carondelet Street
                                                  New Orleans, LA 70130

                                                  Douglas R. Marvin
                                                  WILLIAMS & CONNOLLY LLP
                                                  725 Twelfth St., N.W.
                                                  Washington, DC 20005

                                                  John H. Beisner
                                                  Jessica Davidson Miller
                                                  SKADDEN, ARPS, SLATE, MEAGHER &
                                                  FLOM LLP
                                                  1440 New York Avenue, N.W.
                                                  Washington, DC 20005

                                                  Tarek Ismail
                                                  GOLDMAN ISMAIL TOMASELLI
                                                  BRENNAN and BAUM, LLP
                                                  564 West Randolph Street, Suite 400
                                                  Chicago, Illinois 60661

                                                  ATTORNEYS FOR MERCK SHARP &
                                                  DOHME CORP.

1117295v1

**CERTIFICATE OF SERVICE**

      I hereby certify that the above and foregoing Defendant's Reply in Support of Motion to Compel has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8C, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 8th day of February, 2013.

      /s/ Dorothy H. Wimberly
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361
dwimberly@stonepigman.com

Defendants' Liaison Counsel

1117295v1