

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: VIOXX | * | MDL NO. 1657 |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| THIS DOCUMENT RELATES TO: THIRD PARTY PAYOR COMMON BENEFIT FEES | * | JUDGE FALLON MAG. JUDGE KNOWLES |
| FILER: Robert E. Arceneaux/Margaret Woodward/ Pascal F. Calogero, Jr. | * | February 7, 2013 |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### ERIC H. WEINBERG'S REPLY TO TPP FAC RESPONSE TO GENERAL COMMENTS MADE BY THE WEINBERG OBJECTORS

MAY IT PLEASE THE COURT:

This reply is respectfully submitted on behalf of the Law Offices of Eric H. Weinberg ("Weinberg") in counter-response to the TPP FAC's response to "General Comments made by the Weinberg Objectors." At the outset, Weinberg notes that while there are other objectors to the FAC's recommended allocations and procedures, there are no "Weinberg Objectors." Weinberg is acting on his behalf through undersigned counsel.

There are three substantial problems with the FAC's response to Weinberg's objection. The first relates to the underlying facts of the proposed distribution, which the FAC has fundamentally shifted in response to Weinberg's particular criticisms of the known merits of the competing claims. The second, far more serious problem relates to the process– or lack thereof– which the FAC urges upon this Court. That process fundamentally overlooks the fact that this Court, not the FAC, is the intended arbiter of the final allocation. Yet, the FAC asks the Court to distribute the TPP common benefit fund without delay according to an allocation prepared by the FAC and for which the FAC has provided the Court no coherent, much less defensible, basis. Thus, the FAC suggests that *its* proposed allocation must become the Court's, simply because *it* allegedly had "an informed basis

on which to evaluate the representations on which TPP-related fee requests were based." (TPP FAC Response, R. Doc., 64235-2, p. 3). But the FAC has not shared the "informed basis," either with the Court, which is asked to rely upon it, or with the Objectors, who might make some informed criticism of it. The FAC's unsubstantiated proposed allocation would deny Weinberg due process of law.

The third, and most serious problem with the FAC's revised approach is that it has now shifted its own methodology. The FAC began where it should have, with a lodestar analysis. The FAC has never disputed a single hour of Weinberg's time, but merely said, without any explanation, that Weinberg's time was worth less than that of the FAC members. Now that Weinberg has shown that many of the FAC's hours are invalid, the FAC has departed from lodestar analysis altogether, and insists that its members are entitled to a greater share of the TPP common benefit fund. Why? Because it says so.

Weinberg addresses these issues in reverse order.

**I. Weinberg is entitled to his lodestar.**

In accordance with the process established by this Court and implemented by the FAC, Weinberg submitted a detailed accounting of his previously-uncompensated hours which served the common TPP benefit. He supported those hours with a detailed summary of the tasks performed and the value of those tasks. He also submitted affidavits from independent TPP counsel certifying the worth of his contributions.

As Attachment A to its recommended allocation, the TPP FAC provided a chart showing the lodestar of every applicant. Rec. Doc. 63928-1. For its members, the recommended allocation closely tracked lodestar. For Weinberg, it recommended no compensation initially, although it did not dispute a single hour of his time. A few months later, after Weinberg objected, the FAC

proposed an allocation of $450,000.  It still did not dispute a single hour of his time.  It also did not dispute the value of Weinberg's contributions.  It offered no basis for the $450,000 shift of opinion.  It now says, however, that while "views among the TPP FAC members varied,. . . none expressed the judgment that the value of his time, relative to the significant contributions of many other firms, was worth more than the allocated [sic] amount."  FAC Response, p. 2.  The FAC has offered no basis for this view, and its lack of stated rationale works definitively against its recommendation.

Having tied the recommendations for its members' awards to lodestar, it cannot justify any other treatment of Weinberg, unless it is prepared to undertake a comparative analysis of the applicants' contributions.  This is particularly true because, as shown in Section III, below, the lodestars of many FAC members have collapsed under Weinberg's scrutiny, so that the recommendations are supported by nothing at all save the FAC's will.

Given that Weinberg has fully supported the award of his lodestar and that the FAC has offered no reason for its sharp downward modification, Weinberg is entitled to receive lodestar.  The FAC's argument that the TPP fund is inadequate to full lodestar compensation is unavailing.  Weinberg has shown within the claims of the FAC's members such gross overstatement and duplication of hours that the fund can easily satisfy all legitimate claims.

**II. PROCEDURAL OBJECTION**: **Claimants to the TPP common benefit fund are entitled to procedural due process.**

The Third Party Payor ("TPP") Common Benefit Settlement Agreement established a Common Benefit Fee and Expense Fund in the amount of $15,000,000.  In order to simplify and expedite the handling of claims against that fund, the agreement further provided for their referral "to the Honorable Eldon E. Fallon for determination and administration." (Rec. Doc. 63928-3, Exh. C, p. 5).  The agreement reflected a commitment to due process in stating that the Court's awards

would issue "upon due consideration by him in accordance with established procedures for notice, objection, and hearing in conformance with Fifth Circuit precedent." *Id.* (Citations omitted). Pursuant to this agreement, the Court decreed that upon receipt of the final recommendations of the FAC, it would "invite comment or objections, institute any additional procedures it deems necessary, and issue an order making an allocation and disbursement of fees and costs. . . ." Pretrial Order No. 57, p. 4.

The FAC suggests that no further process is due and asks this Court to proceed to "immediate award and distribution recommended by the TPP FAC." FAC Response, p. 3. This distribution, it assures the Court, will be "fair and equitable." *Id.* The Court should accept this conclusion, the FAC implicitly submits, not because the FAC has *shown* it to be so, but simply because the FAC *says* it is so. This is a difficult proposition for Weinberg, who knows that it is *not* so, because he shared much of the FAC members' claimed "direct experience, assignment of tasks, and observation of ongoing work" and therefore shared their knowledge of "which firms and attorneys had done which work, and the extent, quality, and benefit of that work." *See,* Response, p. 3. The FAC has made no open comment about Weinberg's work or the comparative value of that work. It has not challenged his hours, nor his claimed contributions to the TPP common benefit. It has merely offered this Court its conclusion that "[a]bsent any information, demonstration, or reason to believe his contributions outweigh those of many others, the allocation to Weinberg is generous." *Id.,* at 2. This conclusory allegation misstates both the record and the FAC's obligation to this Court. Weinberg has faithfully reported both his hours and his contributions in accordance with the Court's requirements. The FAC, in proposing that Weinberg be compensated at 38% of his lodestar, while compensating most of its members at 100% or higher, had an obligation to *justify* that discrepancy by offering some "information, demonstration, or reason to believe" that his

contributions underweigh those of many others.   The Court, which has been given no such "information, demonstration, or reason to believe," cannot responsibly and in accordance with due process accept the FAC's unsubstantiated recommendation.

The Fifth Circuit has squarely, firmly, and for good reason, rejected FAC's argument that this Court should simply rely on its privately-informed recommendation:

> Appellees' contend that the functional value of appointing a committee of attorneys to propose a fee allocation in complex litigation is significant, and the danger of abuse is small, when judged in light of the guiding effect of judicial supervision. It is likely that lead counsel may be in a better position than the court to evaluate the contributions of all counsel seeking recovery of fees. But our precedents do not permit courts simply to defer to a fee allocation proposed by a select committee of attorneys, in no small part, because counsel have inherent conflicts. In re Diet Drugs Products Liab. Litig., 401 F.3d 143, 173 (3d Cir.2005) (Ambro, J., concurring). As Judge Ambro noted, "They make recommendations on their own fees and thus have a financial interest in the outcome. How much deference is due the fox who recommends how to divvy up the chickens?
>
> Here, members of the Fee Committee "had a direct conflict of interest: they were suggesting to the District Court how to proceed on matters near and deardividing a limited fund among themselves and other firms. Such a direct conflict of interest strongly suggests that affording substantial deference is inappropriate." Id. at 173–74. Although the proposed allocation may ultimately be fair, careful attention must be paid to the procedures by which the allocation is set. If a district court chooses to rely on the recommendations of a committee of interested attorneys, it then becomes necessary to scrutinize more closely those recommendations.

*In re High Sulfur Content Gasoline Products Liability Litigation*, 517 F.3d 220, 235-236 (5th Cir. 2008)

The FAC's suggestion that this Court overlook its conflict of interest, skip the scrutiny (for which the FAC has provided no basis), and proceed directly to distribution, flouts the reasoning of *High Sulfur,* which is rooted in the requirements of due process.  As this Court has often observed, at the heart of the procedures established by the Fifth Circuit for the allocation of attorneys' fees is the requirement of transparency.  Pursuant to the objectives of transparency, this Court provided

Weinberg with access to the FAC's concealed records. Those records demonstrated numerous and substantial deficiencies in the FAC's submissions, as will be revisited below. Transparency, however, has not yet extended to the FAC's *reasoning*. The FAC has offered absolutely no "information, demonstration, or reason to believe" that the contributions of the "many others" (mostly its members) outweigh Weinberg's.

In its Response, the FAC goes only so far as to respond (inadequately, as will be shown below) to Weinberg's limited criticism of some of its members' submissions. Weinberg offered those criticisms by way of illustrating that the FAC's recommendation was spun from whole cloth. But in answering a scant few of Weinberg's criticisms, the FAC has not even begun to provide factual support for its recommendation. The emperor is still wearing no clothes, which is not what the Fifth Circuit means by transparency. *In re High Sulfur* explained that transparency refers to the revelation of the *basis* for comparison: "One cannot . . . compare apples to oranges without knowing what the oranges are. *** After all, '[a]llocation means proportion; how does the share [one] counsel is taking compare to the shares others are getting?' *In re Vitamins Antitrust Litig.*, 398 F.Supp.2d at 234." 517 F. 3d 220, 232 (5th Cir. 2008).

The TPP FAC is pursuing the same approach here that the FAC, composed of many of the same members, pursued in the personal injury litigation. There, its initial recommendation to Weinberg was $220,000 (on a lodestar of $3,441,000); after a hearing in which Weinberg demonstrated his contributions to the Special Master, the FAC made a revised recommendation of $3.5 million, which the Court awarded. Along the way, Weinberg and other objectors noted that the FAC's methods had less to do with a realistic comparative assessment of the applicants' contributions to the common benefit than with an aggressive course of self-dealing and negotiation. In approving the FAC's final recommendation, the Court said of these criticisms:

> Some might criticize any negotiation between the FAC or the Special Master and the applicants as "horse-trading" or "side deals." The Court interprets this ongoing development of the FAC's and the Special Master's recommended allocations as an indication that the allocation process was working properly.

Order, 8/9/11, R. Doc. 63195, p. 26.

The Court was able to make this statement with confidence because by that time, the overall process had eliminated virtually all objection.

Once again, the TPP FAC has presented only negotiating positions rather than substantiated recommendations to this Court. Its opening "offer" to Weinberg was zero. Its current "offer" is $450,000. Significantly, it has made no different or greater showing for its $450,000 offer than for its zero offer. For either, or both, the Court has only the FAC's unsubstantiated recommendation on which to rely. And unlike the personal injury litigation, the TPP FAC submits that its task– and the Court's– should end here. There is no negotiation under way with Weinberg. The FAC's $450,000 "offer" was its final offer, which it urges the Court to accept without further delay.

In the personal injury litigation, we submit, adherence to due process, rather than the FAC's horse-trading style, eliminated objection. That process included significant components missing from the process followed to date in the TPP allocation: the adherence to objective standards in reviewing the applicant's contributions, *See,* Order, pp. 16,29; a hearing by the Special Master, which "serve[d] as a second review conducted by someone who had no financial interest in the litigation," Order, p. 18; regular consultation with Judge Higbee, who knew of the contributions of New Jersey counsel, Order, p. 21; and the acknowledged right of appeal, which brought the last remaining objectors and the FAC to agreement.

As this Court summarized in its allocation order, after reviewing the process it had followed:

> The takeaway from *High Sulfur* is that in allocating a fund of attorneys' fees, the Court must conform to "traditional judicial standards of transparency, impartiality,

> procedural fairness, and ultimate judicial oversight." 517 F.3d at 234. That requires creating a sufficient record, making sufficient factual findings, considering the time worked and the *Johnson* factors, providing an opportunity to be heard to all the applicants, and exercising independent judgment in allocating those fees rather than simply rubber-stamping a committee recommendation. The Court has been guided by these principles throughout this process.

Order, p. 30.

In allocating this fund of attorneys' fees, the TPP FAC contends that this time-honored process and due process itself should be overthrown in favor of the Court's rubber-stamping of the FAC's unsubstantiated recommendation. Tucked inside of its recommendation is an order that Weinberg will have no right of appeal from the Court's allocation. Weinberg showed in his Objection that this Court has no authority to enter such an order; but the FAC has neither responded to the cited judicial precedent nor altered its recommendation.

In Pretrial Order 57, this Court said that it would "institute any additional procedures it deems necessary" after the FAC made its recommendation. Those procedures, as this Court has previously acknowledged, "require creating a sufficient record, making sufficient factual findings, considering the time worked and the *Johnson* factors, providing an opportunity to be heard to all the applicants, and exercising independent judgment in allocating those fees rather than simply rubber-stamping a committee recommendation." Order, 8/9/11, p. 30.

### III. The FAC has not adequately responded to Weinberg's factual objections.

Weinberg's response to the discovery provided by the FAC did not detail all of the obvious errors in those submissions. He identified a few of the more glaring ones to demonstrate that the FAC's allocation process was unrelated to actual contributions to the common benefit. The FAC has responded in part to some of Weinberg's illustrative criticisms. But interestingly, even though the FAC's limited corrections have in some instances dramatically altered its members' time

records, *it has made not the slightest adjustment to its recommended allocation.*

Thus, the FAC's limited response cannot undo the overarching and still obvious fact that the FAC's allocation recommendations now derive from something other than lodestar. What that something else might be the FAC still declines to say. Instead, it faults Weinberg for not showing how his contribution is worth as much as everyone else's. By this contention, the FAC attempts a form of role-reversal, in which the individual applicant has not only to prove his individual contributions but also their comparative merit against every other applicant's.

Lodestar, the jurisprudence has established, is only the starting point of the analysis, *Forbush v. J.C. Penney Co.*, 98 F.3d 817 (5th Cir. 1996). This Court has properly authorized the FAC to depart from lodestar in the determination of an attorney's contributions to the common benefit. *See,* Order, 8/9/11, pp. 28-29. The comparison and weighting of contributions, however, is precisely the task which, in the first instance, is supposed to be performed by the FAC. Here, the FAC, which either has not performed this task at all or has not deigned to tell anyone how it did so, faults Weinberg for having failed in the selfsame analysis which the FAC has not conducted. In Weinberg's case, though, he would have to conduct the analysis in a complete vacuum; having no notion what weight the FAC attached to *anything*, he would have to make a complete comparative analysis for every applicant– i.e., do the FAC's job for it, then defend his contributions against everyone's, and then defend his analysis against whatever analysis the FAC devised. This Court's established procedure visits no such obligation on Weinberg.

Weinberg's response began with lodestar because that is the logical starting point of the attorneys' fee analysis. He showed that the FAC obviously had not begun there, because its members had evidently not even examined one another's time records. They *could not* have done so and failed to notice the gross mismatch between lodestar and claimed compensation. A couple

of months ago, when the FAC was attempting to deny Weinberg access to the time records submitted to Phil Garrett, it *admitted* that it had not reviewed the Garrett records, making Weinberg's attempt to do so "irrelevant' in its view. (Rec. Doc. 64171, pp. 2-3). Now, in defending its failure to abide by PTO 57, the FAC maintains that it "appropriately relied upon applicants' submissions of time records to the court-appointed auditor." Response, p. 1.

The members whose Garrett-submitted records were critiqued have now corrected some of those errors, as if the present corrections overcome the FAC's failure to consider lodestar or review its members' hours in the first place. The Herman firm, in its correction, has adjusted its lodestar downward by $275,000. (Rec. Doc. 64235-3, p. 10). But the FAC has not adjusted its recommended allocation to the firm by a whit, reinforcing Weinberg's point that lodestar now appears largely irrelevant. What is the point of a $275,000 adjustment to Herman's time if it has no bearing on a $950,000 recommendation? And if it truly had no bearing, why was the original recommendation so closely tied to lodestar? And why do the FAC members still defend their hours so vigorously? While addressing the Herman response, we note, too, that the firm contends that it compensated for quadruple-billing some of its time– for example, the combined AG/TPP time– by halving those entries. *Id.,* at p. 3. But the firm's math leaves much to be desired: the application of a multiplier of 4 to a great deal of time cannot be corrected by dividing some of that time by 2.

And all of this begs the real question: if lodestar was not the starting point for the FAC's recommended allocation, what was?

The Levin firm, whose time records detailed 33 hours of TPP time, for which the FAC recommended an award of $650,000, now seeks to add 2130 hours of work previously submitted– and compensated– in the personal injury action. (Rec. Doc. 64235-5, p. 2.) According to Levin, the FAC recognized that this work contributed to the TPP settlement and so made its

recommendation of compensation almost entirely duplicating the award in the prior case. *Id.,* at pp. 2-3. The FAC submits this declaration by Levin without comment, as if this Court had not expressly directed inquiry into such duplication, as if Levin had not fully concealed such duplication in its submission contrary to the requirements of PTO 57, and as if the FAC had not fully concealed the duplication from the Court in its recommendation. As Weinberg has noted, he can identify another 1680 hours of his time, previously compensated in the personal injury distribution, which likewise contributed to the TPP settlement. If Levin's hours can be duplicated, so must Weinberg's be, unless the FAC articulates some distinguishing factor, which it has not.

Seeger contends that it was not previously compensated for its TPP time. This insistence that he was NOT paid before for Local 68 time inherently conflicts with Levin's claim that it was paid before but deserves to be paid again. Still, Seeger's hours do not square with its claim. It submitted 57,693.5 hours in the personal injury case and its final award was $36,600,000. It now contends it initially submitted 68,000 from which *the Court* backed out 8800 TPP hours earned in Local 68 litigation. Rec. Doc. 64235-4, pp. 4-5. But there was no reduction of Seeger's hours by the Court. The hours accepted by Phil Garrett for Seeger were 57,693.5 from the outset. Those hours were submitted and more than fully compensated at a rate of $634/hr, including paralegal time. Moreover, Seeger initially acknowledged in its submission that all of its time had been previously submitted. The FAC, by contrast, asserted that Seeger "incurred a total of $9 million in TPP time and submitted less than half of this time in conjunction with the Court's previous common benefit proceedings." (Rec. Doc. 63582, p. 3). Now Seeger has corrected the FAC's understanding, but with a new set of numbers that do not compute. Disinterested in what any of the time records reflect or mean, the FAC has made no adjustment to its recommendation

The FAC notes in its response that it "requested that each implicated firm submit a statement

-11-

to the Court in response to the firm-specific objections." Response, p. 1. Apparently, some of the "implicated" firms failed to heed the call. Dugan, for instance, made no response to Weinberg's observation that much of his time clearly related solely to the AG litigation, nor did it respond to the attachment of Mr. Dugan's billing for a single day on which he logged 27.5 billable hours. Despite Dugan's failure to defend its submission, the FAC is apparently unmoved to adjust its recommendation.

The FAC's central point is that Weinberg's time is worth less than some others, for reasons neither Weinberg nor the Court need know. At every step of the way, the FAC's responses to Weinberg's inquiries have raised more questions than they have answered. In this round, the questions are: What is driving the FAC's weighting of contributions? Why is lodestar so insignificant? Conversely, why is the manufacture of fictional time insignificant? Why is Weinberg's time worth so much less than that of a Herman paralegal, who was recommended to receive a multiplier of four? Why are some applicants recommended compensation for previously-compensated time? Why are some applicants recommended compensation from the TPP common benefit fund for time outside the TPP litigation? Why is the FAC unmoved by a changing factual record?

The FAC's latest response is that Weinberg should not be permitted to delay the distribution with further inquiry. It has submitted an unreasoned and unreasonable recommendation to this Court, which it urges the Court to adopt on the strength of its recommendation and in the interest of expediency. The recommendation cannot be squared with the requirements of due process. Weinberg would be satisfied with an award of his lodestar, based on time which he has verified and which the FAC has not disputed, and contributions which he has extensively detailed. He has shown significant deficiencies in the submissions of others which allow for payment of his lodestar without

working an injustice against any other applicant. If the FAC insists– and the Court accepts– that Weinberg's award is subject to some diminution based on an as-yet undisclosed comparative analysis, fairness and the requirements of due process call for the FAC's explication of the basis for its recommendation allocation, followed by discovery concerning the same, followed by a full hearing.

Respectfully submitted:

/s/ Robert E. Arceneaux                              /s/ Margaret E. Woodward
_____      _____
Robert E. Arceneaux, La Bar No. 01199       MARGARET E. WOODWARD, La. Bar
ROBERT E. ARCENEAUX LLC                       No.13677
47 Beverly Garden Drive                                 3701 Canal Street, Suite C
Metairie, LA 70001                                         New Orleans, Louisiana  70119
(504) 833-7533 office                                     (504) 301-4333 office
(504) 833-7612 fax                                         (504) 301-4365 fax
rea7001@cox.net                                           mewno@aol.com

Pascal F. Calogero, Jr., La. Bar No. 03802
AJUBITA, LEFTWICH & SALZER, L.L.C.
1100 Poydras Street
New Orleans LA 70163-1950
(504) 582-2300 office
(504) 582-2310 fax
pcalogero@alsfirm.com

Attorneys for Law Offices of Eric Weinberg

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Objection has been served on by U.S. Mail and e-mail, and by upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre Trial Order No.8, on this date, February 7, 2013.

_____s/Margaret Woodward_____

-13-