| | |
|---|---|
| **In re:  VIOXX®** | **\* MDL Docket No. 1657** |
| | **\*** |
| **PRODUCTS LIABILITY** | **\* SECTION L** |
| **LITIGATION** | **\*** |
| | **\* JUDGE FALLON** |
| **This Document Relates to** | **\*** |
| **Cases Listed on Exhibit A** | **\*** |
| | **\* MAG. JUDGE KNOWLES** |
| **\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*** | **\*** |

### PLAINTIFFS' REPLY TO MERCK & CO., INC.'S OPPOSITION TO PRECLUDE CERTAIN TESTIMONY OF MARK A. CROWTHER, M.D. AND THE TESTIMONY OF JOHN P. KRESS, M.D.

Defendant Merck & Co., Inc. ("Merck") has met the expert analyses of Plaintiffs' cellular scientist and researcher, Plaintiffs' doctor of pharmacology, Plaintiffs' clinical hematologist and Plaintiffs' mathematician and epidemiologist with two witnesses, one a clinical hematologist (Mark A. Crowther, M.D.),[1] and the other a pulmonologist, (John P. Kress, M.D.).[2] With all of its resources, Merck retained no cellular researcher, no one to review and vouch for its clinical data and no epidemiologist. Merck staunchly defends Dr. Kress by the sleight-of-hand that his ability to survive *Daubert* might have improved had Plaintiffs deposed him; but since his lack of expertise in the areas here under

---

[1] Dr. Crowther filed a Declaration and Report [Rec.Doc.63539-5], attached as Exhibit A to Plaintiffs' Motion to Preclude [Rec. Doc. 64210] and referred to herein as "Crowther Rep."  and a Rebuttal Report [Rec.Doc.64111-1], attached as Exhibit B to Plaintiffs' Motion to Preclude and referred to herein as "Crowther Rebuttal."

[2] Dr. Kress filed an Affidavit and Report [Rec.Doc.63539-6], attached as Exhibit H to Plaintiffs' Motion to Preclude and referred to herein as "Kress Rep." and a Rebuttal Report [Rec.Doc.64111-2], attached as Exhibit I to Plaintiffs' Motion to Preclude and referred to herein as "Kress Rebuttal."

consideration is apparent from his *curriculum vita,* what might have been cannot redeem him. Merck offers no defense of its data from its clinical trials, and instead looks for refuge in a "literature review"[3] rather than presenting an actual analysis of the actual data from its relevant clinical trials. Not surprisingly, the articles published under Merck's auspices show no relation between the use of Vioxx and venous thromboembolism ("VTE"), just as they show no relation between the use of Vioxx and cardiovascular events. That, and that alone, is the sole basis Merck offers this Court to conclude that Vioxx does not increase the risk of VTE. Dr. Crowther's literature review turns out to be the only reed on which Merck builds its defense — and it is indeed a weak one. That literature review is fatally flawed on many levels. Merck touts it as a "rigorous and extensive analysis," but it is so "extensive" that Dr. Crowther could recreate it on the fly in ten minutes during his deposition, and so "rigorous" that peer reviewers from three journals found it lacking in adequate scientific rigor and methodology. Those peer reviewers suggested corrections that might make it more palatable as a scientific endeavor, but none of those suggestions were adopted by Merck's witness. Merck asks to offer the jury the same "rigorous and extensive analysis" that every single one of Dr. Crowther's peers rejected. Worst of all, the "rigorous and extensive literature review" is riddled with

---

[3] Goy J, Paikin J, Crowther M, "Rofecoxib Does Not Appear to Increase the Risk of Venous Thromboembolism: A Systematic Review of the Literature," ("Crowther Lit. Review") attached as Exhibit 1.

misrepresentations—both as to its content and the lack of conflict of interest of its main author.

## I. MARK A. CROWTHER, M.D.

### A. Dr. Crowther's "rigorous and extensive analysis of the relevant data" took him ten minutes to replicate.

Dr. Crowther's literature review examined only 15 articles, and then those were only ones that used Merck's published data.[4] Dr. Crowther testified that the process of abstracting and entering the data to obtain the results found in the "systematic literature review" took about ten minutes: ". . . it takes ten minutes to enter the data."[5] He had no electronic source data to produce at his deposition, and indeed he was not even sure any was retained (so much for scientific method).[6]

Besides his "literature review," the only other analysis that Dr. Crowther undertook consists of a one page document where he looked at the results of APPROVe, VICTOR and ViP – which trials comprise virtually the totality of events reported in his "literature review" anyway[7] – and the FDA's Pooled

---

[4] Deposition of Mark Crowther [Rec. Doc. 64211-12] ("Crowther Dep.") at 139:21-140:3.

[5] *Id.* at 166:15-166:24.

[6] *Id.* at 166:15-167:4.

[7] *See* Section I(C), *infra*, for further discussion.

Analysis of March 2004.[8] This is the extent of his "rigorous and extensive" analysis undertaken in this litigation.

> **B.  Dr. Crowther's "rigorous and extensive analysis of the relevant data" was rejected not once, but three times, by his peers as not adequate for publication.**

Merck urges the Court to accept Dr. Crowther's "literature review" as good enough for a jury, yet it was not good enough for the editors of *Circulation*, *Annals of Internal Medicine* or *Thrombosis*, nor for the subscribers who read these journals. It was rejected for publication by *Circulation*, by *Annals of Internal Medicine* and by *Thrombosis*. Moreover, Dr. Crowther conceded that the editors of these journals believe there is an association of "increased risk" between Vioxx and VTE. While Dr. Crowther suggests that as an excuse for the rejection of his "literature review,"[9] there is more to the story. If Dr. Crowther's review was not reliable enough to be published, it is not reliable for consideration by a jury. And while Merck states that Dr. Crowther's review was accepted for publication, this is not what Dr. Crowther testified to in his deposition.[10]

Further, and critically, Dr. Crowther's review is not scientifically reliable for purposes of *Daubert* because it contains glaring methodological errors.

---

[8] *See* Crowther Dep. Ex. 13, attached as Exhibit 2.

[9]  Crowther Dep. at 18:17-18:24. As discussed below, the "literature review" was rejected because it was methodologically flawed.

[10]  *Id.* at 13:23-25.  "The paper has not been published.  The abstract has been published." An abstract of the project was "published" (actually "postered") as one of hundreds of posters during two conferences.

Indeed, at least one journal rejected Dr. Crowther's literature review as a result of methodological errors.[11] Emails between the editors of *Thrombosis and Haemostasis* and Dr. Crowther's team make this point up front: "[u]nfortunately, the reviewers had major concerns either regarding the methodology or the clinical impact of your manuscript."[12]

The *Thrombosis and Haemostasis* editors expressed concern that Dr. Crowther's review shows a false negative. As Plaintiffs state in their *Daubert* opposition, the Vioxx clinical trials suffered from a systematic underestimation of VTE due to failures in the setup of the Vioxx clinical program.[13] These shortcomings led to a bias towards the null between Vioxx and VTE events. The *Thrombosis and Haemostasis* editors express this same concern and reject Dr. Crowther's "literature review" for this exact reason. They state, ". . . the main point of concern is the low number of events available for statistical analysis and the **connected concern about an insufficient statistical power of the applied meta-analysis/risk for type II error (failure to reject a false null hypothesis)**." *Thrombosis and Haemostasis* Editors, Ex. 3 at 2. *The Reference Manual on Scientific Evidence* explains that a false null hypothesis, ". . . reflects

---

[11]  Plaintiffs were not provided with a copy of the *Annals of Internal Medicine* emails, and email correspondence regarding the *Circulation* submission was not substantive.

[12] *Thrombosis and Haemostasis* Editorial Email Chain, August 30, 2012 ("*Thrombosis and Haemostasis* Editors") at 1, attached as Exhibit 3.

[13] *See generally* Expert Report of Alex Spyropoulos [Rec. Doc. 64087] and Plaintiffs' Memorandum in Opposition to Merck & Co., Inc.'s Motion to Exclude Opinion Testimony on General Causation in VTE Cases [Rec. Doc. 64232].

the possibility that a study will be interpreted not to disprove the null hypothesis when in fact *there is a true association of a specified magnitude*." *Reference Manual on Scientific Evidence* 338 (Fed. Judicial Ctr. 2d ed. 2000) at 362. In other words, the editors are concerned that Dr. Crowther's review shows a false negative refuting the relationship between increased risks of VTE with Vioxx use, when, in fact, there is just such an association.

### C. Dr. Crowther's "rigorous and extensive analysis of the relevant data" was not an independent scientific project of "the best research group performing work in the field of thromboembolic events."[14]

Dr. Crowther conducted a literature review only. He did not conduct an analysis of Merck's clinical trials.  He did not conduct an independent pooled analysis, as did Plaintiffs' experts and epidemiologist, Drs. Zambelli-Weiner and Brooks. He did not consider or analyze source data from Merck's "gold standard" randomized clinical trials, contained in Merck's Clinical Study Reports, nor did his literature review consider the same.[15] Oddly his "intensive" data analysis did not analyze the very data that Merck presents as the highest and most methodologically reliable – the clinical trial data.

Instead, virtually all of Dr. Crowther's VTE count is obtained from three sources – articles by Bresalier, Kerr and Van Adeslberg that report the

---

[14]  Defendant Merck Sharpe & Dohme Corp.'s Opposition to Plaintiff's Motion to Preclude Certain Testimony of Mark A. Crowther, M.D., and the Testimony of John P. Kress, M.D. [Rec. Doc. 64234] ("Merck's Opposition") at 2.

[15]  Crowther Dep. at 140:22-142:4.

APPROVe, VICTOR and ViP data.[16]  In fact, the **_only_** articles that even report venous thromboembolism in Dr. Crowther's literature review are the Bresalier, Kerr and Van Adeslberg studies, plus one study by Alise Reicen,[17] a Merck scientist, which reported one VTE. Thus, the entirety of the VTE count was obtained from **four** articles. In other words, Merck uses the results of APPROVe, ViP and VICTOR in Section II(A) of its _Daubert_ motions,[18] and then recycles those same results by and through the "sheep's clothing" of Dr. Crowther's "literature review." Indeed, Merck's only defense in this litigation is that, out of dozens of clinical trials, these three prematurely terminated trials do not show an increased risk between Vioxx and VTE.[19]

---

[16]  Crowther Lit Review at 14-15, referencing: Kerr, D.J., Dunn, J.A., Langman, M.J., "Rofecoxib and cardiovascular adverse events in adjuvant treatment of colorectal cancer," _N Engl J Med_. 2007, 357(4): 360-9; Bresalier, R.S., Sandler, R.S., Quan, H., "Cardiovascular events associated with rofecoxib in a colorectal adenoma chemoprevention trial," _N Engl J Med_. 2005, 352(11):1092-102; and Van Adelsberg J, Gann P, Ko AT, "The VIOXX in Prostate Cancer Prevention study: cardiovascular events observed in the rofecoxib 25 mg and placebo treatment groups," _Curr Med Res Opin_. 2007; 23(9):2063-70.

[17] _Id_. at 14, referencing: Reicin AS, Shapiro D, Sperling RS, "Comparison of cardiovascular thrombotic events in patients with osteoarthritis treated with rofecoxib versus nonselective nonsteroidal anti-inflammatory drugs (ibuprofen, diclofenac, and nabumetone)," _Am J Cardiol_. 2002; 89(2): 204-9.

[18]  Memorandum in Support of Merck Sharp & Dohme Corp.'s Consolidated Motion to Exclude Opinion Testimony on General Causation and Renewed Summary Judgment in VTE Cases [Rec. Doc. 64211-3] at 5-7.

[19] Note that, if considered alone, the Kerr article shows an increased risk between Vioxx and VTE, with three VTE events occurring in the Vioxx arm and one occurring in the placebo arm.

Further, none of the articles reviewed by Dr. Crowther analyzed VTE as an endpoint, and the vast majority do not contain counts or reports for venous thrombosis. Instead of counts, these articles typically report an absence of "statistically significant differences" between Vioxx and placebo on all adverse events, or the articles report only the most common adverse experiences versus all adverse experiences,[20] which is a far cry from the zeros Dr. Crowther assumes in his final table.[21] This is a misrepresentation. A statistically insignificant difference in overall adverse events is not the same as no significant difference between one type of adverse event, such as PE or DVT, or VTE as a whole. Since the mention of "no statistical difference" infers that events **did** occur, the only way to verify this for certain is to look at the underlying data in order to properly obtain a count. As we know, Dr. Crowther did not undertake such an analysis, and had never even heard of a Clinical Study Report or CSR before his deposition.[22] The failure to ascertain whether these studies truly report any venous thromboembolic events is a fatal flaw in Dr. Crowther's literature review that further renders it unreliable and unusable. This is an important charge against the integrity of Dr. Crowther's "literature

---

[20]  *See* Crowther Lit. Review at 11-15, referencing: Higuchi 2003 at 4758, attached as Exhibit 4; Hawkey 2000 at 374, attached as Exhibit 5; Laine 2004 at 397, attached as Exhibit 6; Hawkey 2003 at 823-24, attached as Exhibit 7; Aisen 2003 at 2823, attached as Exhibit 8; Thal 2005, attached as Exhibit 9; and Bogarty 2004, attached as Exhibit 10.

[21]  Crowther Lit Review at 14-15.

[22]  Crowther Dep. at 142:1-142:4.

review," and it merits further discussion. Four cases included by Dr. Crowther in his "literature review," and Dr. Crowther's comments about all of the cases he analyzed, are addressed here in more detail.

Higuchi et al followed a mere 21 patients to investigate rectal polyp growth. The **only** adverse event they report was a Vioxx user who developed gastroenteritis. There is no table, no report about the adverse events beyond the statement in the text that the patient developed gastroenteritis. This tiny study is too small to provide any meaningful information about any safety analysis. There is nothing in this paper remotely like what Dr. Crowther represents in his deposition**:**

- So all of the papers do list events by arterial or venous except two papers in you can't differentiate. They just report thromboembolic outcomes. So we did not include those in the analysis . . . [i]n all of the other cases, the authors stated explicitly in their results table whether they were arterial or venous events. We didn't analyze the arterial events. We just analyzed the venous events. Crowther Dep. at 159:23-161:9.

- So in every one of those papers, there was a table which contained the information describing peripheral venous thrombosis and symptomatic pulmonary embolism. Those were the two pieces of information which they pulled uniformly from all the papers. *Id*. at 161:25-162:7.

Similarly, Hawkey et al. have no "table which contained the information describing peripheral venous thrombosis and symptomatic pulmonary embolism." In stark contrast to Dr. Crowther's representations about this study and its companions in his "literature review," the authors **do not report** the presence or absence of arterial adverse events **nor do they report** the presence

9

or absence of venous events. They do report that 80.1% of the 25 mg Vioxx users had adverse events (82.9% for 50 mg Vioxx users) **but they only detail gastrointestinal adverse events,** which account for less than half of the adverse events (at 38.2% of those adverse events for the 25 mg. users and only 33.3% for the 50 mg users).  Neither Dr. Crowther nor Merck plumbed into the clinical trial data to find out the actual types of adverse events suffered by the Vioxx users, despite that his Report, his "literature review" and his testimony seriously misrepresent the facts. It is no wonder Dr. Crowther's colleagues rejected this paper.

Laine 2004 presents exactly the same scenario as Hawkey—a table that reveals 235 clinical adverse events for the trial participants on Vioxx **but details only 57 of those events**, and those only in the general categories of "GI", "edema" or "hypertension." Where is the arterial analysis promised by Dr. Crowther, the description of peripheral venous thrombosis and symptomatic pulmonary embolism? The answer is, not in this paper—one would have to go back to the clinical trial data. Merck didn't and Dr. Crowther certainly didn't.

Aisen 2003 (an Alzheimer study) presents exactly like Hawkey and Laine—a report by the authors that is too general and non-detailed to serve as an epidemiological anything—26 "serious adverse events" in the Vioxx group **but only 11 of them described,** and those as GI, stroke/TIA, subdural hematoma or MI.

Lastly, Hawkey, Laine and Aisen could never be considered for a modern epidemiological analysis excusing Vioxx from pro-thrombotic properties since Hawkey **required** contemporaneous aspirin use by each patient in the Vioxx arm, and Laine and Aisen both **allowed** aspirin by any participant. Dr. Olyaei testified without contradiction that aspirin has been shown to reduce not only clots in the arterial vasculature, but also in the venous vasculature.[23]

Critically, the articles Dr. Crowther reviewed did not report an increased rate of arterial events either. The association between Vioxx and arterial events, such as myocardial infarction and stroke, has been well-documented in the peer-reviewed literature for nearly a decade. Concerned about the possibility of a false negative,[24] the *Thrombosis and Haemostasis* editors suggest that Dr. Crowther conduct an additional analysis to see if the selected articles show a significant increase between Vioxx and arterial events, which would bolster the credibility of his findings given the well documented association between Vioxx and arterial events:

> If the requested additional analysis can confirm a significant increase in arterial thrombosis rate in association with rofecoxib use in the chosen study collective, this would provide reassurance that the chosen approach is suitable to detect also effects of rofecoxib on venous thrombosis rate. On the other hand, failure to confirm a significant increase in arterial thrombosis rate for rofecoxib-treated patients would clearly call into doubt the

---

[23] *See* Deposition of Ali Olyaei at 84:12-85:2, Rec. Doc. 64211-7, and, Warkentin, T, "Aspirin for Dual Prevention of Venous and Arterial Thrombosis," *NEJM*, DOI: 10.1056/NEJMe1211480, attached as Exhibit 11.

[24] *See* Section I(B), *supra*.

> relevance of the results (absence of a significant rofecoxib effect) obtained for venous thrombosis (since the number of events is expected to be higher for arterial than for venous thrombosis, it may be easier to establish a statistically significant increase for the arterial thrombotic events).

*Thrombosis and Haemostasis* Editors at 2.

Thus, if Dr. Crowther did not find an increased rate of arterial thrombotic events, it is very unlikely the underlying studies and Dr. Crowther's approach were properly designed to capture venous events.[25] According to Dr. Crowther's own literature review, most of the articles **did not report any arterial or venous events,** confirming that his analysis is flawed."[26] Moreover, most of the studies used in the literature review did not find an increased risk of arterial adverse events, or of *any* serious adverse events.[27] This confirms the editors' fears – that Dr. Crowther's "literature review" simply is not appropriately

---

[25] Dr. Crowther had not conducted such an analysis at the time of his deposition, nor had he conducted any analysis on Vioxx and arterial events, despite suggestions that this would give credence to his findings and increase likelihood of publication.

[26] Crowther Lit. Review at 6.

[27] *See* Footnote 20, *supra*, for examples, and: Van Adelsberg J, Gann P, Ko AT, "The VIOXX in Prostate Cancer Prevention study: cardiovascular events observed in the rofecoxib 25 mg and placebo treatment groups," *Curr Med Res Opin.* 2007; 23(9):2063-70, ("Rofecoxib 25 mg and placebo demonstrated similar risk of thrombotic CV events in this limited dataset."); Reicin AS, Shapiro D, Sperling RS, Barr E,Yu, Q, "Comparison of cardiovascular thrombotic events in patients with osteoarthritis treated with rofecoxib versus nonselective nonsteroidal anti-inflammatory drugs (ibuprofen, diclofenac, and nabumetone)," *Am J Cardiol.* 2002, 89(2): 204-9, ("Thus, in the rofecoxib arthritis development program, there was no difference between rofecoxib, comparator nonselective NSAIDs, and placebo in the risks of cardiovascular thrombotic events.").

designed to capture VTE, as most of the articles did not even report arterial events.

Dr. Crowther's "literature review" is based on articles that *did not find an increased rate ratio between Vioxx and arterial events*, such as heart attacks and strokes. Merck's event reporting is flawed and Dr. Crowther's review does not have an answer to these shortcomings, but merely repackages the same flawed data for other purposes. The absence of arterial events validates the editors' concerns that Dr. Crowther's "literature review" did not appropriately capture VTE events. Just as Plaintiffs' expert Dr. Spyropoulos opined, there was indeed a systematic underestimation of VTE events in the Vioxx clinical trials.

### D. Dr. Crowther's "rigorous and extensive analysis of the relevant data" was far from the most intensive analysis performed.

Dr. Crowther did not conduct the "most intensive data analysis of any expert in this litigation," despite the fact that Merck says so.[28] Merck's characterization of Dr. Crowther's "literature review" as the "most intensive data analysis in this litigation" takes wishful thinking to new heights. Dr. Crowther has billed Merck for approximately 33 hours of time,[29] and all of that was, in the end, simply to repackage the same data Merck has been trying to market since it began marketing Vioxx. Drs. Zambelli-Weiner and Brooks, on the other hand, have spent 383 hours reviewing tens of thousands of pages of

---

[28] Merck's Opposition at 4.

[29] Crowther Dep. at 38:13-19.

Merck's clinical trial data.[30] So as a practical and factual matter, Dr. Crowther certainly has not conducted the most intensive data analysis of any expert in this litigation.

### E.  Dr. Crowther failed to disclose a fatal conflict of interest

Dr. Crowther's failure to disclose the conflict of interest – working for Merck to disassociate Vioxx from VTE – on his American Society of Hematology abstract further renders that abstract unreliable. On direct examination during his deposition, Dr. Crowther did not know why his conflict of providing legal consultancy for Merck was not mentioned on his abstract. He surmised that this could be because it was submitted by a medical resident.[31] He also surmised it could be because there might have been more than one disclosure: "[the American Society of Hematology] has a conflict of interest process, and there are multiple versions of the disclosure process."[32] Regardless of the reason, he conceded that his work here for Merck was a conflict of interest.[33] Indeed, it is hard to imagine a clearer conflict than publishing research that Merck has paid one to develop to defend Merck in litigation.

### F.  Dr. Crowther disavowed the expertise he claimed to have in his Report when he was faced with cross-examination on the basic science of the clotting cascade.

---

[30]  For a more detailed discussion on the review undertaken by Drs. Zambelli-Weiner versus Dr. Crowther, see Plaintiff's Opposition, Section II(B)(b) at 24-25.

[31]  Crowther Dep. at 36:15-37:16.

[32]  *Id*. at 34:24-5.

[33]  *Id*. at 36:15-37:16.

Merck is correct – Plaintiffs agree that Dr. Crowther is eminently qualified to express opinions about VTE and Plaintiffs do not seek to exclude every piece of Dr. Crowther's evidence. However, an expert cannot be allowed to testify in an area where he expressly disavows expertise. It is not Plaintiffs who suggest Dr. Crowther lacks the expertise to testify in certain areas, but rather Dr. Crowther himself who states it. Surely Dr. Crowther is in the best position to know the bounds of his expertise. Dr. Crowther is the one who chose to make broad generalizations about the mechanism and pharmacology of Vioxx and VTE in his proffered Report and Rebuttal Report. Dr. Crowther is a very experienced clinician but he is not a pharmacologist nor a cellular biologist – Merck did not engage an expert with those qualifications. His experience, as Merck agrees, is centered in thromboembolism. Once he opined in his Rebuttal Report that he does not believe it is biologically plausible that Vioxx can increase the risk of VTE and once he criticizes Dr. Lucchesi's theory on mechanism,[34] those areas become fair game for cross-examination. Yet, Dr. Crowther turned tail as soon as the topics were broached. He did the same as soon as Plaintiffs tried to explore the extensive discussion in his original Report distinguishing between arterial and venous thrombosis and opining that events that occur on the arterial side can never occur on the venous side.[35]

---

[34] Crowther Rebuttal at 2-3.

[35] Crowther Rep. at 8-9.

Dr. Crowther could not answer questions posed by Plaintiffs' counsel as these areas were explored, and he declined to be on the record as offering an opinion, despite that "expert opinions" were set out on these same scientific areas in his reports. A plain reading of his deposition does, in fact, show that he expressly disavowed these areas as outside of his expertise, and expressly disavowed these areas for purposes of his ability to express an opinion, as follows:

- Regarding whether prostacyclin is present in both veins and arteries: "I don't consider myself an expert in the prostaglandin synthetic pathway." Crowther Dep. at 51:18-51:23.

- Regarding prostaglandins and prostacyclin: ". . . I don't consider myself an expert in that area." *Id.* at 52:7-18.

- Whether prostacyclin is activated by the COX-2 pathway: "Again, I'm not an expert in this, so I would not want my work to be seen as final in this regard. I believe there is controversial evidence about exactly when and where prostacylins are produced and whether they are produced by COX-1 or COX-2." *Id.* at 53:13-53:21.

- Regarding his familiarity with literature that prostacyclin is expressed or activated by the COX-2 pathway: ". . . I don't feel comfortable making any scientific or, in fact, legal representation as to what that data showed because I'm not in that area of research." *Id.* at 54:19-55:1.

- Whether prostacyclin promotes the expression of thrombomodulin: ". . . I wouldn't consider myself a sufficient expert to provide, for the purposes of a court proceeding, information in that area." *Id.* at 55:3-55:12.

- Whether COX-2 has a role in the regulation of tissue factor: ". . . from a scientific perspective, I wouldn't want to be on the record as

being indicated as being an expert in that area," *Id*. at 62:3-62:12, and "You'd have to get an expert on intracellular cell signaling mechanism to be able to attest to that." *Id*. at 63:5-17.

- Regarding COX-2 in arterial samples: "Again, I'm not an expert on the arterial mechanism of disease." *Id*. at 87:5-15.

- Regarding a potential mechanism for arterial events: ". . . I don't know enough about vascular biology to be able to state a putative mechanism." *Id*. at 137:22-138:4.

- When asked if COX-2 is ever expressed in the arterial endothelial cells or the native arterial vasculature, he stated "I don't consider myself an expert on the arterial side." *Id*. at 85:12-85:17.

- Regarding the mechanism by which Vioxx increases the risk of arterial events: ". . . I don't know enough about vascular biology to be able to state a putative mechanism. *Id*. at 137:22-138:6.

Dr. Crowther does **not** consider himself an expert in the areas of prostaglandins, prostacyclin, or arterial disease.  This is not an illusion created by Plaintiffs' counsel, but his own words from his own mouth during his deposition testimony. His unwillingness to state a putative mechanism by which Vioxx increases the risk of arterial events is unusual, given that he offers such a mechanism in his "literature review."[36] It seems that Dr. Crowther wants to claim expertise where convenient, but not when he can be challenged and the claim may prove false.

---

[36]  Crowther Lit. Review at 3: "The putative increase in the risk of arterial thrombosis has been ascribed to a loss of the vaso-protective effect of prostacyclins with relative preservation of COX-1 dependent synthesis of vasoactive prostaglandin derivatives [7, 8]. In addition, prostacyclins reduce platelet aggregation on endothelial surfaces [6, 9]. These mechanisms are summarized in Figure 1."

Moreover, Dr. Crowther's self-proclaimed lack of expertise on arterial events is further shown by his testimony in regard to the Bishop-Bailey[37] and Ost[38] articles. Although he represents that these articles show that COX-2 does not exist in the venous vasculature, Bishop-Bailey in fact shows the exact same effect in the arterial and venous vasculature.[39] He has no reliable scientific basis from which to make such representations. Dr. Crowther should not be permitted to testify in areas outside of his expertise, which he has expressly indicated in his deposition testimony.

## II.   JOHN P. KRESS, M.D.

### A.   Merck must at the outset demonstrate the expertise of its experts on the subject matter of their testimony.

Simply put, Dr. Kress is testifying on matters where his *curriculum vita* demonstrates not the first bit of expertise. If Plaintiffs brought in any "M.D." and claimed that the M.D. degree alone was enough to make him or her an expert in the general causation of VTE by Vioxx, Merck would (consistent with

---

[37]  Bishop-Bailey D, Pepper JR, Haddad EB, "Induction of Cyclooxygenase-2 in Human Saphenous Vein and Internal Mammary Artery" at 1644. *Arteriosclerosis, Thrombosis and Vascular Biology* 1997; 17(9): 1644-1648 ("Bishop-Bailey"), attached as Exhibit C to Plaintiffs' *Daubert* Motion.

[38] Ost, M, et al., "Expression of mRNA for Phospholipase A2 Cyclooxygenase, and Lipoxygenases in Cultured Human Umbilical Vascular Endothelial and Smooth Muscle Cells and in Biopsies from Umbilical Arteries and Veins," *Journal of Vascular Research*, 1998; 35:150-155, ("Ost"), attached as Exhibit D to Plaintiffs' *Daubert* Motion.

[39]  Meaning that if Dr. Crowther were right, there would, by the same analysis, be no COX-2 in the arterial vasculature, a proposition we all know to be false.

all of its past practices) scream bloody murder. Dr. Kress has no demonstrated expertise in hematology, epidemiology, or vascular research on the cellular level. The undefended errors in his expert report are further proof of what he doesn't know.

Dr. Kress is not an expert on pharmacology, pathophysiology or mechanism, like Dr. Lucchesi or Dr. Olyaei, nor does his *curriculum vita* show any specialized training or research in COX-2 inhibitors or NSAIDs. He is thus ill-qualified to offer an opinion on why or how Vioxx affects the clotting cascade. In his Report, he incorrectly identifies the first step in the venous clotting cascade.[40]  He is not a hematologist, like Dr. Spyropoulos or Dr. Crowther, both of whom specialize in blood disorders and treatment of VTE specifically, and who have a clinical understanding of VTE.  Nor is he an epidemiologist, like Dr. Zambelli-Weiner, who can offer significant opinions on the data shown in the Vioxx clinical trials.

Merck defends Dr. Kress as general causation expert in VTE, and defends his statement in his Report that Vioxx cannot cause venous thromboembolism,

---

[40]  *See* Plaintiffs' Daubert Motion at 22. Dr. Kress demonstrates his inability to provide scientifically valid testimony on the clotting mechanism when he states in his Report that clotting in the venous vasculature begins with the early step of platelet aggregation and white thrombus.  Dr. Crowther, styled by Merck as the world famous authority on venous thromboembolism, describes just the opposite as true when he opines that clotting in the venous vasculature begins with the deposit of **red thrombus** and a **platelet-poor** clot: "Initial activation of coagulation on endothelials cells results in the deposition of a red cell rich, fibrin rich and relatively platelet poor clot."  Crowther Rep. at 7.

but, really, what qualifications allow him to so opine? He mimics Dr. Crowther's "literature review" but with even less basis to discuss it.

According to the University of Chicago and to his own affidavit filed with his report, he is a pulmonary critical care doctor specializing in sedation, respiratory failure, and shock. Although he encounters pulmonary embolism in his practice, that alone does not qualify him to render the opinions on mechanism, clotting on the cellular level, or epidemiology.

### B.  Plaintiffs were not required to depose an expert to challenge his report in Daubert grounds.

Pursuant to Rule 26 of the Federal Rules of Civil Procedure, Dr. Kress has filed an expert report and a rebuttal report containing all of his opinions on Vioxx and VTE and all of his qualifications to offer the same. Plaintiffs may challenge Dr. Kress on the basis of his report alone. Plaintiffs are not required to depose Dr. Kress in order to challenge him on *Daubert* grounds. A plain reading of Dr. Kress' *curriculum vita* proves that he is not an expert in venous thromboembolism.

### C.  If Merck is right in its defense of any medical doctor's ability to establish general causation, then it must admit that Plaintiffs have succeeded in establishing general causation.

Merck's reasoning in defense of Dr. Kress allows anyone with a M.D. degree to testify about general causation, regardless of whether that M.D. is an expert in the appropriate specialty. Many medical doctors encounter and treat venous thromboembolism in their practices. However, the crux of Plaintiffs' claims involves Vioxx's ability to cause VTE, and this is a separate matter

entirely that is well beyond the scope of simply treating a pulmonary embolism in day-to-day clinical practice. Testifying on the ability of a COX-2 inhibitor to cause venous clots should take specialized knowledge on a cellular, pathophysiological, pharmacological, clinical and epidemiological basis. Merck has presented one expert who meets one of these criteria, and one that meets none. Dr. Kress is not an expert in venous thromboembolism and his testimony is unreliable as evidenced by the glaring errors in his own Report. Accordingly, Dr. Kress' testimony should be excluded.

### III.   APPLICATION OF THE BASIC PRINCIPLES OF *DAUBERT* SUPPORT THE EXCLUSION OF PORTIONS OF DR. CROWTHER'S TETSIMONY AND ALL OF DR. KRESS' REPORT.

In *Daubert v. Merrell Dow Pharmaceuticals,* 509 U.S. 579 (1993), the Supreme Court held that trial courts should serve as the gatekeeper for expert testimony and should not admit such testimony without first determining that the testimony is both "reliable" and "relevant." *Id.* at 589. The party seeking to introduce the expert testimony bears the burden of demonstrating that the testimony is both relevant and reliable. *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 275-76 (5th Cir. 1998). Among the factors the court may consider in assessing the scientific reliability of expert testimony is whether the expert's opinion is based on incomplete or inaccurate data and whether the expert has adequately accounted for alternative explanations.[41]

---

[41]   *See Black v. Food Lion, Inc.*, 171 F.3d 308, 313 (5th Cir. 1999).

It is Merck's burden to prove that Dr. Crowther's "literature review" is reliable. Merck has failed.  Dr. Crowther's "literature review" failed peer review because the reviewers found that it suffered from methodological shortcomings. It is riddled with methodological errors. It suffers from "flawed data in, flawed conclusions out" because Dr. Crowther did not take Merck's flawed data into account when designing his review.  It misrepresents the underlying articles. Additionally, the failure to test causation with the arterial events further proves that Dr. Crowther's review is not scientifically reliable and should thus be precluded under *Daubert*.

Moreover, testimony is surely unreliable where an expert says he does not want to testify in a court proceeding because it is outside of his specialty. Dr. Crowther has disclaimed expertise in prostacyclin, prostaglandins, and arterial vascular events. His testimony in these areas is unreliable by his own standards and he should be precluded from offering such testimony. Finally, Dr. Crowther should not be able to misrepresent the Bishop-Bailey and Ost articles to state that COX-2 is not present in the venous vasculature, when the articles plainly show the same results in the arterial vasculature.

Proper credentials do not assure that an expert's opinion will survive *Daubert,* but proper credentials and adequate expertise is **necessary** to survive *Daubert* and to admit that expert's testimony. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 138 (1999). Dr. Kress is not a cellular biologist, pharmacologist, hematologist, or epidemiologist. He does not specialize in venous thromboembolism,

nor does he specialize in COX-2 inhibitors. Merck has failed to demonstrate any reason that he should be allowed to testify on these topics. Accordingly, his testimony should be precluded.

## CONCLUSION

Plaintiffs request that the testimony of Mark A. Crowther, M.D. on the topics indicated be precluded, and that the testimony of John P. Kress, M.D. be precluded in its entirety for the reasons stated above.

Respectfully submitted,

/s/ Ann B. Oldfather
Ann B. Oldfather
KBA Bar #52553
Liaison Counsel/Lead Counsel
OLDFATHER LAW FIRM
1330 S. Third Street
Louisville, KY   40208
502.637.7200
502.637.3999  (fax)
aoldfather@oldfather.com
*Counsel for Certain Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Plaintiffs' Reply to Merck & Co., Inc.'s Opposition to Preclude Certain Testimony of Mark A. Crowther, M.D., and the Testimony of John P. Kress, M.D. has been served upon Liaison Counsel, Phillip Wittmann and Russ Herman, by U.S. Mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8(C), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 15th day of February, 2013.

/s/ Ann B. Oldfather
Ann B. Oldfather