UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Vioxx | * | MDL Docket No. 1657 |
| | * | |
| PRODUCT LIABILITY | * | SECTION L |
| LITIGATION | * | |
| | * | |
| This Document relates to: | * | HONORABLE JUDGE  FALLON |
| | * | |
| Dennis Harrison | * | MAGISTRATE JUDGE KNOWLES |
| Pro Se 2:07-cv-00905-EEF-DEK | * | |
| | * | |

**************************************************************************

### PLAINTIFF DENNIS R. Harrison's MOTION TO COMPEL DEFENDANT MERCK TO PROVIDE INITIAL DISCLOSURE TO PLAINTIFF

There is an impasse between the parties in regard to *Fed. R. Civ. P. 26(a) Initial Disclosure.* Plaintiff has provided *ALL Discovery* information to Merck, but has *received nothing* from Merck.

Merck has continued to *affirmatively refuse* to provide *Fed. R. Civ. P. 26(a) Initial Disclosure* to the Plaintiff. Merck's actions blind his Discovery direction and serve to suffocate his Discovery literally from the start of formal Discovery. Merck *simply cites PTO 17* as justification, and *ignores PTO 18C* to deny Plaintiff of Initial Disclosure (ID). Merck will *not reason* with the Plaintiff. As Plaintiff will show, the Court's intention never was that PTO 17 by itself would provide full Discovery definition requirements. The intent of this Court was to ensure proper Discovery for Merck and *ALL* Plaintiffs, which requires the intent of both PTO 17 and PTO 18C together, neither standing alone.

By reason of above and below, and to allow proper formal Discovery to proceed,  Plaintiff *Dennis Harrison moves this Honorable Court to*:

**1: COMPEL MERCK TO PROVIDE INITIAL DISCLOSURE THAT IS RELEVANT TO PLAINTIFF'S CASE** (it has halted Discovery).

**2: DECLARE PTO 18C (19) MOOT AND NOT APPLICABLE FOR  PLAINTIFF'S CASE. (**it clearly targets "cardiovascular" only).

**3: DECLARE PTO 17(II)(A) MOOT AND NOT APPLICABLE FOR PLAINTIFF'S CASE.**
(PTO 17 "herein and in separate orders" defers to PTO 18C; not applicable for other injuries "non-cardiovascular").

1

## CERTIFICATION OF GOOD FAITH EFFORT

PTO 17 (IV)(A) requires movant conferring in good faith with Defendant Merck to resolve the issue. Please see Exhibit 1: Good faith effort certification.

*Merck just says NO!* Movant certifies that he has made a good faith effort with Merck to resolve the Discovery impasse described above and below. Merck has not responded with any rationale to the advanced communication that Plaintiff has provided of the core argument of this Motion. Merck simply, and myopically, steadfastly refuses and will not provide rhyme or reason. Plaintiff now seeks intervention by the Court*.

## COMMUNICATIONS OF THE PARTIES

Plaintiff and Defendant Merck communicate through a series of emails. Please see Exhibit 2: Communications of Plaintiff and Merck in re to Discovery.

Plaintiff will now show the facts, events and reasoning for his request beginning with the **ISSUE** – i.e. Plaintiff wishes Discovery's Initial Disclosure and Merck refuses to provide it citing PTO 17 waiver.   Plaintiff also feels that it is useful, if not necessary, to include background and an overall chronological view so that not only issues are argued as they simply are – but also including a broader context to understand the overall as well as the specific impact to the Plaintiff.

---

\* Per FRCP Committee notes: In the judgment of the Committee abuse can best be prevented by intervention by the court as soon as abuse is threatened. To this end this subdivision provides that counsel who has attempted without success to effect with opposing counsel a reasonable program or plan for discovery is entitled to the assistance of the court.

## BACKGROUND

Following is an overall background of the case – more detail of these items is available in Exhibit 3: Background. Plaintiff very much wishes to emphasize that, from nearly the very start of his case he has expressed concern, and alarm, that his case may have its Discovery needs not fully met, and perhaps not met at all – he refers to it as a "nightmare scenario for Discovery".

Something must have gone astray; six (6)+ years into his litigation, Plaintiff finds himself having provided nearly all of Merck's Discovery needs, via *twice complying under protest (one-way Discovery) and threat of dismissal,* first to the Court's demands to *provide Lone Pine,* then the *PPF* and **Interrogatories**. Certainly no Court wishes such an unfair imbalance of fairness for either the Plaintiff or the Defendant. The issue simply just would not exist on its own – something has caused it. Plaintiff believes that it is Merck's "misinterpretation" or purposeful manipulation of this Court's intentions which has caused the situation. Further, Plaintiff feels that Merck, from the very beginning had a pre-meditated "plan" to enable "other injuries" to be legally disadvantaged, unfortunately not in an ethical or "good faith effort" that Merck is obligated with. Possibly their actions may demand a higher level of scrutiny. Plaintiff is not presenting allegations in this Motion, or formally yet in this litigation, but of course is always evaluating "events" and "actions" to comprehend the potential allegations for Merck pre-meditating an unjust environment for "other injuries", using the cardiovascular focus as a veil to hide behind – as they did when Vioxx was taken off of the market.

This more holistic view of where we are, how we arrived here, and where do we go is very useful in support of Plaintiff's position.

Unfortunately, after more than six years in litigation, Plaintiff finds himself with NO, that is zero, formally Discovery. However, Merck has obtained virtually a library of formal Discovery from Plaintiff. Plaintiff feels it is valuable input to the Court to ensure that the issue at hand,

formal Discovery fairness and one-way Discovery, is understood in the greater context of the background of the case. For brevity, the items below are in a limited form. Enough additional information is available in Exhibit 3 Background, to gain a good sense of the overall environment and situation. It is not necessary to review that exhibit unless one feels he or she requires additional information. Most of the exhibits are optional in the sense that they may be considered for additional information at times, but often the subset in the Motion is adequate.

1) Merck withdrew Vioxx from the Market (September 30, 2004) citing *cardiovascular injuries*.

2) Merck did not address or cite potential *bone/spine injuries*, though Plaintiff certainly believes that they should have as he alleges thousands and thousands of individuals suffered in a similar manner.

3) After reading many bonafide articles by prestigious institutions, researchers and surgeons that Vioxx was culpable in interfering, very significantly with bone healing, Plaintiff Dennis Harrison filed suit dated June 26, 2006 In Ulster County, NY. Plaintiff thought to himself "... now so much more makes sense". The suit alleged that *Vioxx, which he utilized in 50mg. (maximum dosage) and for the timeframe nearly the whole of its introduction until it was removed from the market, was causal* in preventing his femur from healing. Plaintiff was confined to hospitals and Nursing homes for eight months January, 2003 to September 2003.

4) Plaintiff asserts *substantial damage(s)* - personal and financial. When he *was finally discharged, he left the hospital merely a shell of his former self* of right before the event and remains so.

5) Merck exercised its (abuse of?) power to remove the case to NY Federal District court, then transfer it to MDL-1657 as a "tag along" case. *His bone/spine case then became constrained in MDL litigation which was squarely focused on cardiovascular injuries*. Plaintiff believes Merck abused its Court granted power to remove and transfer, fully understanding that Plaintiff's "other injury" case would be placed in the wrong venue and subjected to severe unfair handicaps.

6) Cardiovascular was to be, by far, the *majority* of PIs in MDL-1657 from its beginning. "*Other injuries*" are defined as "*other cases not claiming a cardiovascular event*" and in an *overwhelming minority*. The majority, "*cardiovascular*" was/is the only class reasonably benefitting from "Common Discovery". "*Bone/Spine*" PI of the Plaintiff had no benefit at all.

7) The Plaintiff's litigation is in reference to ***bone injury (femur not healing) – not cardiovascular***.

8) ***Plaintiff's*** case is clearly within the ***"other cases not claiming a cardiovascular event"***.

9) These "other injuries" ***did not gain the benefits of the MDL***, nor were their rights of Initially Discovery enabled or exercised.

10) The "cardiovascular event" litigants enjoyed proper Discovery, while "other injuries" did ***NOT***.

11) Plaintiff, before removal from NY State and transfer to MDL-1657, objected and appealed to the MDL Panel that his case did not belong in an MDL in which the PSC definitively stated that they would not represent his Discovery needs. Other argument was made (Exhibit 4: Motion to vacate CTO-64 & Exhibit 5: Notice of Opposition. Plaintiff argues that the case is too different from the "norm" of cases in the MDL (i.e. ***cardiovascular***), was not going to gain the benefits of an MDL, far away from his residence, and may be placed in a legal environment hostile to his PI, ripe for neglect and manipulation of Defendant Merck.

12) Plaintiff, nearly from the very start, ***sufficiently expressed alarm*** that his injury was not being included by the "Discovery team" Please see Exhibit 6: Alarm & Concern – The making of a nightmare Discovery scenario.

***Appearing in person Plaintiff presented concerns to the MDL on 12-06-2006.*** At the Hearing, Plaintiff believes that brought sufficient information that should have sensitized the PSC/DSC to do at least something about his injury in formal Discovery (Exhibit 7: Plaintiff Hearing in NOLA on 12-14-06).

Public Information in re to bone/spine injury through Vioxx is freely available on the Internet. It is from prestigious universities, hospitals and surgeons. It is more than sufficient to have warranted suspicion of Vioxx being culpable of Plaintiff's allegations, bone/spine issues of healing, and more. However, this information does not have the caliber of standing that Formal Discovery would have (please see Exhibit 7: Plaintiff Hearing in NOLA on 12-14-06)*. Plaintiff believes that he presented enough information that the Discovery team should have become pro-active, in some manner at least, in understanding of bone/spine in existing Plaintiffs. This could have been accomplished via a few questions in a supplement to the Plaintiff Profile Forms, which it was not.

\* Per FRCP Committee notes "The importance of the materials sought to the party seeking them in preparation of his case and the difficulty he will have obtaining them by other means are factors noted in the Hickman case. The courts should also consider the likelihood that *the party, even if he obtains the information by independent means, will not have the substantial equivalent of the documents the production of which he seeks".* \*

Plaintiff has consistently maintained that by the nature of the injury (bone/spine) and the vast majority of cases being cardiovascular in nature, the legal attention in this MDL would not fairly nor adequately be provided.

*submitted a VACATE REQUEST to the MDL Panel* and argued that the PSC-I formally refused to represent his Discovery needs, that his injury was not in the focus of the MDL and warned that his case would be constrained yet not share in the purpose of an MDL (Common Discovery) and that "one common issue" was not sufficient to move and handicap his case.

13)   Although Plaintiff had in his possession the necessary Lone Pine report, he objected to providing it. Premature Discovery due to the omission and suppression of Vioxx's bone/spine injury potential by Merck - see Exhibit 9 Opposition Memorandum – excerpts *Premature, one way Discovery may have began with "Lone Pine" though* Plaintiff understands that the Lone Pine Expert Witness report is also utilized to screen invalid cases from valid cases to "separate the wheat from the chaff".

14)   Plaintiff later objected, vehemently to providing the PPF and Interrogatories. He argued that it indeed was *the true beginning of one-way Discovery* and communicated that to Merck via letter Exhibit 12: "Providing PPF & Interrogatories under protest and duress". Merck insisted that he provide the PPF or face the devastation of dismissal in which Merck had begun the process of. Plaintiff finally capitulated under the weight of what now seems improper pressure and provided the PPF and Interrogatories.

A very substantial amount of information provided to Merck was in effect not only one-way Discovery, but also premature, providing undue advantage to Merck and potential bias in general

as the "settlement" was administered and Cardiovascular took by far the prominent role.

**Plaintiff felt severely pressured** {Exhibit 12: Providing PPF & Interrogatories under protest and duress) by the short time frame to respond and Merck's aggressive move to dismiss - without dialogue nor even considering that Plaintiff's one-way Discovery was beginning in earnest. *A phone call with the DSC* stating, vehemently "you (i.e. Plaintiff) are the only one not willingly providing the PPF...", a letter by PSC-1 (Exhibit 10: PSC-1 letter) indicating that Plaintiff would lose all of my rights if I did not comply.

One would wonder – if acting in Good faith, why didn't *Merck attempt to communicate with Plaintiff* instead of going right after dismissal; especially after Merck was well aware of Plaintiff's increasing discomfort in one-way Discovery emerging.

*The answer is that Merck was not, and is not acting in Good Faith Discovery.* Worse, the actions and the timings seem to imply that this deceptive maneuvering was by design not spontaneous chance – i.e. it was part of Merck's overall Discovery "Strategy"'

*Merck was knowledgeable of the predicament any "other injury" would face.* i.e. one way Discovery as Merck ultimately displays its true colors by denying Plaintiff of the Discovery in which he is entitled to. Plaintiff has a view, but not a firm conviction at the time, in reference to the PSC's knowledge and view.

*Merck, by wrongfully looking to dismiss this case,* based upon the presumptuous grounds of Merck beyond reproach in the Discovery process and its avoidance via PTO 17 misapplication, was well aware of the predicament that its manipulation of PTO 17 was placing the Plaintiff in. In fact, Plaintiff would submit that it was part of their warped, unfair strategy to evade this Court's spirit, and letter of fair Discovery to all – again as evidenced in PTO 18C

*PPF and Interrogatories were both premature and one-way Discovery.* As Plaintiff also and especially objected to providing the PPF, he was again faced with dismissal. Ultimately, after undue threat of dismissal, Merck again forcibly obtained information - the PPF and Interrogatories. However, *unlike "Lone Pine", a case cannot be made that the PPF and Interrogatories were to be utilized as "separating the wheat from the chaff",* and Plaintiff again suggests premature and one-way Discovery. Plaintiff states "forcing" as looking back, one can now see that the premature

Discovery demands by Merck were premature which it essentially as Merck certainly knew of the PTO 17 ruse.

Thus, Plaintiff was forced to provide significantly more grievous one-way, early Discovery by way of the PPF and Interrogatories as Merck again entered an order for dismissal. Plaintiff has, many times in many ways including many formal briefs, attempted to bring the one-way, and now also understood to be early Discovery to the forefront. Unfortunately, the "settlement" administration gained, and maintained front stage while his case languished and became increasingly marginalized and isolated, to both his bewilderment and chagrin.

## ISSUE

**Note:**  To supplement a traditional approach it is helpful to supplement this motion by offering a quick overview from a Q/A perspective in Exhibit 13: Understanding a bigger picture by Q/A.

While Fed. R. Civ. P. 26(a) requires Discovery's Initial Disclosure (ID)  Merck has refused to provide it to Plaintiff Dennis R. Harrison. Plaintiff thus has not received any formal Discovery and has been denied the "road map" and compass which Initial Disclosure provides. Merck has either "misinterpreted" or purposely misapplied, the intent of this honorable Court to assure that ALL cases receive full and fair Discovery Disclosures, not only Merck. The Court, through PTO 17 and PTO 18C has made clear the Court's intent as well as acknowledgement that there are two separate injury classifications, each requiring its own Discovery definitions.

The Court had established General Discovery requirements SUBJECT **"herein and in separate orders"** via PTO 17(III). The *"separate order(s)" were in fact PTO 18C* which prescribed Discovery Equivalency for *"cardiovascular"* only cases, not *"other injuries"*, or as the court referred to (PTO 18C(18)) as "other cases not claiming a cardiovascular event". The Court affirms its deference to the FRCP.

"Unless specifically modified herein, nothing in this order shall be construed to abrogate the Federal Rules of Civil Procedure".

The "separate orders" now acknowledges two classes of injuries, Cardiovascular and non-cardiovascular.

For *cardiovascular* cases: *PPF <u>is</u> equivalent to Discovery needs* - PTO 18C(12).

For *cardiovascular* cases: *MPF <u>is</u> equivalent to Discovery needs* - PTO 18C(19).

For non-cardiovascular cases: *PPF <u>is</u> equivalent to Discovery needs* - PTO 18C(12).

For non-cardiovascular cases: *MPF <u>is</u> <u>NOT</u> equivalent to Discovery needs* - PTO 18C (18).

Since *Merck has refused to cooperate* in Discovery Initial Disclosure with Plaintiff Dennis **<u>Plaintiff Harrison simply has no Discovery at all</u>**, while Merck is near complete because Plaintiff has provided all information required by the Court and Merck requests.

The Court makes clear that an MPF, or an alternate procedure, needed to be defined, for *"other injuries"* or *"non-cardiovascular". Per* PTO 18C(18) "other cases not claiming a cardiovascular event". The court had requested the Discovery team to address a proper process for these "non-cardiovascular", or "other injury cases" which did not occur.

Merck does not send an MPF to the Plaintiff because there is not one which is applicable to his "bone/spine" injury.  Merck is required to do so for cardiovascular within ninety (90) days of receiving a PPF. After one and one half years of Plaintiff providing his PPF, Merck did not attempt to send a PPF as noted above – which is good as the Plaintiff knows what would have been provided., and it would not be helpful for his case. Merck did not even bring up the fact that there is an issue, and that the Plaintiff had no procedure put in place for his injury and thus for his case. *Apparently Merck was planning all along to nullify the Initial Disclosure requirement and severely cripple Plaintiff's Discovery efforts. This could also be seen as a tacit acknowledgement that the Plaintiff had no equivalent to the MPF for "bone/spine", and Merck had no intention of doing so further, there are no other equivalents.*

The last of Merck's deceptions has been referring Plaintiff to the PSC Document Depository. The Depository is not reasonably, at all, a proper form of Discovery for "bone/spine" injuries as Plaintiff described to Merck. The Depository creators themselves admitted that they were *NOT seeking that PI ("bone/spine"). The PSC and DSC were commissioned as a team to provide pre-trial activities, but did not include Plaintiff's PI ("bone/spine") in their efforts which is well known by now, and well documented.* It is not reasonable to have the slightest thought that the Document Depository would be useful for Plaintiff's injury. The originators of the Document Depository had refused, several times to represent the Discovery of the Plaintiff's injury, in addition to virtually no acknowledgement of his PI.

Among other issues, Merck simply remains silent, apparently unwilling, and likely knowing it is unable to justify its attempts to feign compliance and deceive the Plaintiff – certainly not a show of "good faith" in Discovery, not at all.

### *Merck's denial cripples Plaintiff's Discovery:*

Virtually *all aspects of Plaintiff's Discovery effort are lethally impacted* if Merck is allowed to engage in exploring unfair procedural loopholes and willfully evading, and planning evasion to, law(s) in which *this Court is entrusted with. Relevant* Interrogatories, Request for Admissions, and Deposition candidates depend upon the Initial Disclosure. for direction. Plaintiff did not receive *ANY* disclosure per the FRCP.

*Chronologically the ISSUE* events are presented:

1 – *Defendant Merck has had* the benefit of virtually FULL formal Discovery. Merck has a wealth of information – all that has been requested by the Court and Merck itself, from *Lone Pine, PPF, Interrogatories, medical authorizations, pharmacy records, two depositions,* and nearly *10GB* of *Plaintiff's computer data* and *thousands of files.*

2 – *Plaintiff Dennis Harrison has not had* the benefit of ANY formal Discovery. Plaintiff Harrison

can lay claim to NO formal information, i.e. -0-. Also to note, while the litigation "stay" was in force, Plaintiff was not permitted to engage in any formal Discovery, though in essence, via the PPF/Interrogatories Merck was doing so, i.e. one-way, and premature Discovery was indeed slowly eroding and marginalizing/isolating his case in several ways.

3 – Merck *did not offer* any "voluntary" Discovery Disclosure even though Merck has a duty to according to the FRCP. Per the FRCP Merck had a duty to disclose without awaiting formal Discovery but they did not, which is no surprise as they would not do so even when asked to. The only thing that is between Plaintiff establishing a fair two-way Discovery process is Merck's interests embedded in an incorrect (mistakenly or self serving) interpretation of PTO 17 and PTO 18C. Not withstanding Merck's error in, or otherwise if premeditated, "interpreting" of the Court's intentions to ensure proper Disclosure/Discovery,

4 – *Plaintiff, having NONE, while Merck has a virtual library of formal Discovery,* simply is attempting to create a level field. By requesting the first step, Initial Disclosure of Discovery from Merck since Merck doesn't voluntarily provide it though the FRCP it is bound to cooperate with.

Discovery Disclosure is absolutely, undeniably essential for Plaintiff Harrison's Discovery. He has NO formal Discovery information, and unless this Court remedies the problem, he is not anywhere near being on the path of fair Discovery Disclosure and two-way Discovery.

5 – Merck *rejects Plaintiff's request* for Initial Disclosure citing PTO 17. *Merck's inability to defend itself on the merits can be measured by their tenacity – and methods, of protecting their data.* Plaintiff points out that Merck's refusal is affirmatively done AFTER having had full access to Plaintiff's data. If Merck felt that the Plaintiff's injury did not have merit and they could prevail on the merits, Merck would not risk FRCP/Civil rights violation allegations, they would provide Disclosure and prevail.

Plaintiff requests Discovery – first the *"compass" of Discovery – Initial Disclosure.*

> 11/10/2012
> ... *per FRCL[sic] (26) (a) please provide the initial disclosures, and all documents required by the FRCL[sic] which relate to Vioxx and bone/spine issues.* This includes names and addresses of individuals who may have knowledge of the bone/spine allegations, communications with the FDA (they did express concern), communications with independent research (such as the NJ team that warned PSC-1), communications with Merck paid consultants such as Thomas Einhorn (who told me never to contact him again), mitigation plans "in case any issues arise" per Merck meeting minutes, any testing results

in re to bone/spine before or after Merck released Vioxx, any testing, warnings, concerns, etc. on any testing, viewpoints, or proof of due diligence Merck had in re to its impact when used with other medications, any numerical calculations on additional incremental sales attributed to not disclosing or pursuing the bone/spine allegations (which include both healing and potential decrease of bone density), anything which addresses concurrent usage of Vioxx and Fosamax, Merck's various views on animal testing etc. *The above are examples of what I mostly would expect to exist, but are not meant to be all inclusive.*

----- > (note: Plaintiff reminds Merck that he has cooperated fully) < -----

*By virtue of completing the interrogatories and especially the PPF, I have met the FRCL[sic] requirements last year.* In addition I recently provided thousands of electronic files and a great amount of detail in my (approx) seven hour deposition.

----- > (note: Plaintiff reminds Merck that per the FRCP, Merck should have provided Discovery on their own) < -----

*The FRCL[sic] does indicate I am due this even without a discovery request.* The litigation's "front end" no less than, via *its mass tort processing, facilitated Merck to obtain the above type of information before a litigant, especially in re to "other injuries"*.

## Merck responds:

11/15/12
... With respect to your question about initial disclosures, under PTO 17, all parties in the Vioxx MDL are relieved from the requirement to make initial disclosures under Rule 26(a).

## ARGUMENT follows on next page:

## ARGUMENT

### *PTO 17 and PTO 18C together define Discovery needs:*

**CARDIOVASCULAR:**  The complete Discovery definition for the vast majority in this MDL is *squarely, and only* applicable upon cardiovascular injuries.

For the cardiovascular Plaintiff, it is made clear that the PPF is sufficient to define equivalency for Plaintiff Discovery duties as the court stated in PTO 18C.

> PTO 18C(12):  *"Plaintiffs' responses to the PPF shall be treated as answers to interrogatories under Fed. R. Civ. P. 33 and responses to requests for production of documents under Fed. R. Civ. P. 34 and shall be supplemented  in accordance with Fed. R. Civ. P. 26".*

For Merck Discovery requirements for cardiovascular litigants, it is also made clear that the MPF is sufficient to define equivalency for Merck's Discovery as the court stated in PTO 18C. It is worthy to note that cardiovascular also did have the benefit of more Discovery through the Discovery team. Plaintiff did not have either – no Discovery equivalent, and no benefit from the Discovery team's work.

> PTO 18C(19):  *"Merck's responses on an MPF shall be treated as answers to interrogatories under Fed. R.  Civ. P. 33 and responses to requests for production of documents under Fed. R. Civ. P. 34 and shall be supplemented in accordance with Fed. R. Civ. P. 26.*

**"OTHER INJURIES":**  "other injuries" are in the minority and it is clear that ONLY PARTIAL Discovery definition (i.e. the Plaintiff's equivalency of the PPF and Discovery) for the minority in this MDL is applicable upon "other injuries".

For the Plaintiffs,  it is made clear that the PPF is sufficient to define equivalency for Plaintiff Discovery duties as the court stated in PTO 18C. This is the same as above.

For Merck, it is made clear that the **MPF is NOT** sufficient to define equivalency for Merck's Discovery as the court indicated in PTO 18C.

The Court acknowledges the separate injury classifications and Discovery needs as it requests the Discovery team to define those needs for the "other injuries". Note that this request did not result in the Discovery team defining and meeting the "other injury" needs. Thus, the "other injuries" did NOT have Discovery needs defined – Merck then utilizes this to starve and

suffocate the Discovery needs of "other injuries" as evidenced by the fact that Plaintiff Harrison
has NO formal Discovery fruit to bear.

> j) PTO 18C(18):  *Following service of the MPFs in the cardiovascular event cases, the*
> *PSC and DSC shall meet and confer regarding the current process and future schedule*
> *for service of MPFs in other cases not claiming a cardiovascular event."*

The following is intended to outline the timing of significant steps by the Court in defining
Discovery Requirements. The bottom line is that although *cardiovascular cases did have proper*
*Discovery*, **"other injuries" did not** – **none**. A one-way Discovery by Merck, for **"those other**
**cases not claiming a cardiovascular event"**, became the norm for virtually any "other injury".

In short, this Honorable Court **has** defined full Discovery procedures in regard for
cardiovascular injury. The court **has not** defined full Discovery procedures for the "other
injuries". It has defined what the "other injury" litigants must provide to Merck; but it has
NOT defined what Merck must provide – thus that leaves "other injuries" providing
information to Merck, but receiving nothing from Merck – hence the "situation" this
Plaintiff is in.

The Court established the equivalency of the PPFs/MPFs, via PTO 18C(12) and
PTO18C(19) with Discovery for ONLY cardiovascular cases[(1)]. The Court in its pursuit of
fair Discovery for ALL cases, not just the cardiovascular cases, had given prior notice that it
would issue "separate orders" PTO 17(III). In the same Order (PTO 17) that it issued
GENERAL relief from Discovery's Initial Disclosure PTO 17(A).

These "separate orders" quickly became known via PTO 18(C). These future
orders (PTO 18C) do indeed refine the orders to segregate injuries at the time into two groups -
i.e. those alleging a "*cardiovascular event*" and those *"in other cases not claiming a*
*cardiovascular event".*


Excerpts from PTO 17 and 18C describe how Discovery was defined:

PTO 17(II), at the surface level and in an isolated definition, or perhaps a definition of convenience, can
be generally "interpreted" as releasing, or waiving the Defendant Merck from their duty to disclose.

> a) "In light of the discovery plan set forth herein, the parties in all cases in this
> proceeding is relieved from complying with the requirements of Fed. R. Civ. P.
> 26(a)"

However, in the same PTO 17, PTO 17(III) does make clear that there will be future and separate orders governing Discovery.

> b) "Discovery in Individual Cases shall be conducted in accordance with the schedule set forth herein and in separate orders governing Plaintiff Profile Forms and Merck Profile Forms (MPF) as well as any other orders this Court may enter hereinafter".

The Court also makes clear that it does not intend to circumvent the FRCP. PTO 17(VII) "Federal Rules of Civil Procedure applicable" goes on to make it clear.

> c) Unless specifically modified herein, nothing in this order shall be construed to abrogate the Federal Rules of Civil Procedure.

The "separate orders" are PTO 18C which was quickly accomplished by the Court separates the injuries into two categories, "cardiovascular" and those *"in other cases not claiming a cardiovascular event."*

> d) PTO 18C introduction: *"Merck Profile Form ("MPF") to be completed by Merck in all individual... cases in which plaintiffs claim to have sustained a myocardial infarction, an ischemic stroke, or a death ("cardiovascular event")...*

The focus continues to be *cardiovascular ONLY.*

> e) PTO 18C(1): *"Plaintiffs in all cardiovascular event cases shall each complete..."*

> f) PTO 18C(3): *"Plaintiffs in individual cardiovascular event cases"...*

PPF and Plaintiff's Discovery responsibilities equivalence is established

> g) PTO 18C(12): *"Plaintiffs' responses to the PPF shall be treated as answers to interrogatories under Fed. R. Civ. P. 33 and responses to requests for production of documents under Fed. R. Civ. P. 34 and shall be supplemented in accordance with Fed. R. Civ. P. 26".*

Not that it would help the Plaintiff, at all, but Merck did not attempt to deliver any form of any type of MPF to the Plaintiff. *They could not, as none existed.*

> h) PTO 18C(17): *"Merck shall provide a complete and verified MPF ninety (90) days after its receipt of a PPF which contains the "core criteria." The core criteria includes:..."*

As the PPF itself was defined, the theme remains **CARDIOVASCULAR ONLY**. As the data needs were being defined, here is an example of the definition being done in cardiovascular term.

i) PTO 18C(17)(1)*: The core criteria include "Type of injury (cardiovascular cases relating to ischemic stroke, myocardial infarction & death)"*

The Court acknowledges the separate injury classifications and Discovery needs as it requests the Discovery team to define those needs for the "other injuries". Note that this request did not result in the Discovery team defining and meeting the "other injury" needs. Thus, the "other injuries" did NOT have Discovery needs defined – Merck then utilizes this to starve and suffocate the Discovery needs of "other injuries" as evidenced by the fact that Plaintiff Harrison has NO formal Discovery fruit to bear.

j) PTO 18C(18):  *Following service of the MPFs in the cardiovascular event cases, the PSC and DSC shall meet and confer regarding the current process and future schedule for service of MPFs in other cases not claiming a cardiovascular event."*

MPF and Merck's Discovery responsibilities equivalence is established in the context of ONLY cardiovascular injuries. This does not apply for "other injuries". Again, the Plaintiff is left without any Formal Discovery information, especially at the beginning of Discovery when he is due "Initial Discovery". Nor is he able to obtain it as Merck refuses to provide it.

k) PTO 18C(19):  *"Merck's responses on an MPF shall be treated as answers to interrogatories under Fed. R. Civ. P. 33 and responses to requests for production of documents under Fed. R. Civ. P. 34 and shall be supplemented in accordance with Fed. R. Civ. P. 26.*

The PPF serves as Discovery for all Plaintiffs, regardless of claimed injury. The PPF and Interrogatories have been defined by this Court to be the *equivalent of Discovery for Plaintiffs* and is defined to address any injury claimed, *cardiovascular or not. Plaintiff has met ALL* of his Discovery requirements ordered by the Court and requested by Merck..

The MPF is specific and relevant for ONLY the cardiovascular cases. It has been defined as the equivalent of Discovery for Defendant Merck. *Merck has NOT,* and willfully will not, act in good faith to consider the Plaintiff's request of Merck to consider the intent of the Court to include formal Discovery for all injuries, including Plaintiff's, at the same time acknowledging that other injuries Discovery requests must be addressed by the Discovery team, which includes Merck, but was not

accomplished. Thus, the Plaintiff has NO, i.e. 0 formal Discovery nor the guiding compass that is intended by the FRCP to be Initial Disclosure.

The "other injuries do not have any Discovery equivalence defined for their case/injury. Not only does Plaintiff lack any Discovery from Merck, on the very first time in which he asked for the Initial Disclosure, Merck refuses. Plaintiff's Discovery efforts have locked in place, held hostage to Merck's invalid, *or chosen*, "interpretation" of PTO 17 combined with PTO 18C also described above and below. *Plaintiff believes that Merck must have something to hide if it has chosen so.*

## Committee Notes on Rules—2000 Amendment

The following is not an attempt to show the letter of the law, but the *"spirit" of the law as seen through the eyes of the FRCP Committee* towards Initial Disclosure. The portion shown here is specifically the rationale when *amendments were made to Initial Disclosure requirements in the year 2000.* Essentially, the Committee wished to standardize Initial Disclosure, still allow but *discourage "local opt out"* of Initial Disclosure, *narrow its applicability* to that which it intends to use in trial proceedings and several elements not applicable or relevant to Plaintiff's Motion. The Plaintiff DOES understand that for cardiovascular cases, due to the intensity of focus towards the cardiovascular cases by the Discovery team – that it is proper to waive Initial Disclosure upon Merck. *However, the waving of Initial Disclosure for "other injuries" neither was intended by the MDL-1657 Court, nor has any justification in the interpretation of the Pre Trial Orders 17 and 18C.* Enforcing the misplaced "interpretation" of PTO 17 as a stand alone order would not be consistent with the letter, and certainly not the spirit of both this Court and the FRCP. This Court makes clear in PTO 17 that as it relates to the FRCP, the Court does not intend to circumvent the FRCP, which generally is in favor of Initial Disclosure. In PTO 17 (VII)

**"Unless specifically modified herein, nothing in this order shall be construed to abrogate the Federal Rules of Civil Procedure".**

The year 2000 FRCP amendments intentions, per the committee notes clearly show their intent to "Nationalize" the Discovery Rules. *This includes incorporating Initial Disclosure and voluntary disclosure as generally a requirement.* The option is left open for "local-opt out" for good reason, *however the Committee clearly prefers the many benefits that open, honest two-way voluntary*

**_and cooperative Discovery between the parties bring. Here are portions of their intent._**

*Purposes of amendments.* The Rule 26(a)(1) initial disclosure provisions are amended to establish a nationally uniform practice...

The initial disclosure requirements added by the 1993 amendments permitted local rules directing that disclosure would not be required or altering its operation. The inclusion of the "opt out" provision reflected the strong opposition to initial disclosure felt in some districts, and permitted experimentation with differing disclosure rules in those districts that were favorable to disclosure...

A striking array of local regimes in fact emerged for disclosure and related features introduced in 1993. See D. Stienstra, Implementation of Disclosure in United States District Courts, With Specific Attention to Courts' Responses to Selected Amendments to Federal Rule of Civil

These amendments restore national uniformity to disclosure practice. Uniformity is also restored to other aspects of ***discovery by deleting most of the provisions authorizing local rules*** that vary the number of permitted discovery events or the length of depositions. Local rule options are also deleted from Rules 26(d) and (f).

Subdivision (a)(1). ***The amendments remove the authority to alter or opt out of the national disclosure requirements by local rule***, invalidating not only formal local rules but ***also informal "standing" orders of an individual judge or court that purport to create exemptions from—or limit or expand—the disclosure provided under the national rule.***

The initial disclosure obligation of subdivisions (a)(1)(A) and (B) has been narrowed to identification of witnesses and documents that the disclosing party may use to support its claims or defenses .

A party is no longer obligated to disclose witnesses or documents, whether favorable or unfavorable, that it does not intend to use

The disclosure obligation applies to "claims and defenses," and therefore requires a party to disclose information it may use to support its denial or rebuttal of the allegations, claim, or defense of another party.

***The right to object to initial disclosure is not intended to afford parties an opportunity to "opt out" of disclosure unilaterally***. It does provide an opportunity for an objecting party to present to the court its position that disclosure would be "inappropriate in the circumstances of the action." Making the objection permits the objecting party to present the question

GAP Report. The Advisory Committee recommends that the amendments to Rules 26(a)(1)(A) and (B) be changed so that initial disclosure applies to information the disclosing party "may use to

support" its claims or defenses.

## FRCP COMMITTEE NOTES ON DISCOVERY

A very small sample of the FRCP Committee notes on Discovery helps   Clearly they wish in as many cases as possible that Discovery be a two-way street where both parties are open and honest, and that a "guide" which helps one navigate Discovery is available – that guide being Initial Disclosure. The point is made as the Plaintiff's requests for Initial Disclosure, and the problems he states will be the consequences, are consistent with the Committee.

Notes of Advisory Committee on. 1993 Amendment Subdivision (a).Through the addition of paragraphs (1)–(4), *this subdivision imposes on parties a duty to disclose, without awaiting formal discovery requests, certain basic information that is needed in most cases to prepare for trial or make an informed decision about settlement.*

*The rule requires all parties (1) early in the case to exchange information regarding potential witnesses, documentary evidence, damages, and insurance* ...

... requires identification of all persons who, based on the investigation conducted thus far, are likely to have discoverable information relevant to the factual disputes between the parties. *All persons with such information should be disclosed, whether or not their testimony will be supportive of the position of the disclosing party.*

As officers of the court, *counsel are expected to disclose the identity of those persons who may be used by them as witnesses or who, if their potential testimony were known, might reasonably be expected to be deposed or called as a witness by any of the other parties. Indicating briefly the general topics on which such persons has information should not be burdensome, and will assist other parties in deciding which depositions will actually be needed.* .... Although, unlike subdivision (a)(3)(C), an itemized listing of each exhibit is not required, the *disclosure should describe and categorize, to the extent identified during the initial investigation,* the nature and location of potentially relevant documents and records, including computerized data and other electronically-recorded information, sufficiently to enable opposing parties (1) *to make an informed decision concerning* which documents might need to be examined, at least initially, and (2) to frame their document requests in a manner likely to avoid squabbles resulting from the wording of the requests. As with potential witnesses, the requirement for disclosure of documents applies to all potentially relevant items then known to *the party,*

*whether or not supportive of its contentions in the case....* ***The initial disclosure requirements of subparagraphs (A) and (B) are limited to identification of potential evidence "relevant to disputed facts alleged with particularity in the pleadings." There is no need for a party to identify potential evidence with respect to allegations that are admitted...***

*...****Before making its disclosures, a party has the obligation under subdivision (g)(1)*** <u>to make a reasonable inquiry into the facts of the case</u>. The rule does not demand an exhaustive party is not excused from the duty of disclosure merely because its investigation is incomplete. The ***party should make its initial disclosures*** based on the pleadings and the information ***then reasonably available to it... as required by subdivision (e)(1).*** A party is not relieved from its obligation of disclosure merely because another party has not made its disclosures or has made an inadequate disclosure

... requires the parties to ***designate the persons whose testimony they may present as substantive evidence*** at trial, whether in person or by deposition...

*...****only persons so listed may be used at trial to present substantive evidence....*** requires the party to indicate which of these potential witnesses will be presented by deposition at trial...

A party expecting to use at trial a deposition not recorded by stenographic means is required by revised Rule 32 to provide the court with a transcript of the pertinent portions of such depositions....

... must notify other parties if it is withholding materials otherwise subject to disclosure under the rule or pursuant to a discovery request because it is asserting a claim of privilege or work product protection...

## **CONCLUSION**

Merck's absolute, unfettered, and bold if not brash refusal to provide Initial Disclosure, has crippled and effectively halted formal Discovery for the Plaintiff virtually as it began. Plaintiff **_has provided each_** Discovery item(s) per the FRCP, Court orders **AND** even Merck's own requests for Discovery - yet _**he has NOTHING**_ from Merck in formal Discovery: Plaintiff asks:

1) does Merck really believe that it is fair and balanced to engage in "one way Discovery", or it is a sign of GOOD FAITH not to provide Initial Disclosure?

2) If Merck did feel that it was a valid reason (i.e. PTO 17) why didn't Merck respond to Plaintiff's questions in which he sought the reasoning of such. One would feel that simply is part of good faith negotiations.

3) If Merck felt that it would be successful in defending this case on its merits, why must it seek, if not attempting to create, crevices of procedural loophole(s)?

4) Why would Merck chose to only quote PTO 17 when it surely knew of BOTH PTO 17 and PTO 18C (18). Merck must have, and does understand, that it is both, together, that bring true meaning to Discovery.

5) Why would Merck conveniently _ignore_ the Court's request that the Discovery team - _**"the PSC and DSC shall meet and confer regarding the current process and future schedule for service of MPFs**_ in other cases _not claiming a cardiovascular event"._ Plaintiff did inquire of Merck: Exhibit 2: Communications of Plaintiff and Merck in re to Discovery

A warped, at best uneven, playing field for "other injuries" – those "**other cases not claiming a cardiovascular event**" has emerged, just as likely by opportunistic design as spontaneous chance. Merck's has insidiously warped _**the fair two way Discovery intentions of the Court**_ into _**a one-way Discovery**_ effort dominated by Merck. This is certainly not in GOOD FAITH as they are obligated.

***If proper Disclosure is good for one, it is good for all.***

       Plaintiff has provided virtually total Discovery including ***Lone Pine***, ***Plaintiff Profile Form***, ***the First Set of Interrogatories***, ***Medical request authorizations***, ***Pharmacy records***, ***nearly 10 Gigabytes of information*** from his computer, a very ***full day of his deposition*** (300 pages of transcript)  and the deposition of his ***Lone Pine Expert witness*** (100 page of transcript).

       Yet, in spite of Plaintiff providing all required and requested Discovery, he has ***NOTHING FROM Merck***. Plaintiff does not even merely have the essential directional compass that Initial Disclosure is intended to provide, and the FRCP fully supports.

       Plaintiff pleads with this Court to provide remedy for the untenable situation that has emerged. While Plaintiff can get public information in reference to the issue of bone healing and also the issue of Vioxx and bone density, that type of information, while very useful, cannot supplant the evidence that the Plaintiff requires to properly show that Merck knew, or should have known about the bone/spine issues*. There is no doubt that the Plaintiff does not have any formal Discovery Information. There is also no doubt that Merck has aggressively sought as much formal Discovery as possible of the Plaintiff which Plaintiff claims is in essence premature. While view(s) have been expressed (by the Plaintiff) in how this situation has emerged, how it emerged is not as lethal to Plaintiff's case as the simple fact that the situation just simply exists without doubt. Merck has refused to provide Initial Disclosure, and likely will sling red herrings wherever it can towards the Plaintiff's efforts. ***However, no matter what the situation, the plain, simple fact is that the Plaintiff requires true, bonafide Discovery, especially at this point - Initial Disclosure***. The Plaintiff pleads, and needs, this Honorable Court's intervention to compel Disclosure. In closing, the Plaintiff repeats his request of the Court to bring balance and fair play into this case.

       By reason of above and to allow proper formal Discovery to proceed,  Plaintiff ***Dennis Harrison moves this Honorable Court to***:

**1: COMPEL MERCK TO PROVIDE INITIAL DISCLOSURE THAT IS RELEVANT TO PLAINTIFF'S CASE** (it has halted Discovery).

**2: DECLARE PTO 18C (19) MOOT AND NOT APPLICABLE FOR PLAINTIFF'S CASE. (**it clearly targets "cardiovascular" only).

**3: DECLARE PTO 17(II)(A) MOOT AND NOT APPLICABLE FOR PLAINTIFF'S CASE.** (PTO 17 "herein and in separate orders" defers to PTO 18C; not applicable for other injuries "non-cardiovascular").

\* Per FRCP Committee notes "The importance of the materials sought to the party seeking them in preparation of his case and the difficulty he will have obtaining them by other means are factors noted in the Hickman case. The courts should also consider the likelihood that *the party, even if he obtains the information by independent means, will not have the substantial equivalent of the documents the production of which he seeks". \*

23

# CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing:

**PLAINTIFF DENNIS R. Harrison's MOTION TO COMPEL DEFENDANT MERCK TO PROVIDE INITIAL DISCLOSURE TO PLAINTIFF** *(Dennis Harrison 2:07-cv-00905-EEF-DEK)*

has been served on Defense Laison Counsel (DLC) Dorothy H. Wimberly and Emily Pistilli of Merck by electronic email as PDF attachment on this 14th day of February, 2013.

Further I hereby note utilizing the same electronic PDF method to Plaintiff Steering Committee PSC-I Russ Herman and Leonard Davis, and Plaintiff Steering Committee PSC-II Ann B. Oldfather and Megan Hastings.

I have also sent the above and the foregoing to the Clerk of Court of the United States District Court for the Eastern District of Louisiana via the same electronic email/PDF method AND hard copy, on this 14th day of February, 2013.

_/s/Dennis R. Harrison_
Dennis R. Harrison

Dennis R. Harrison
Plaintiff
601 W. Brown Street
Iron Mountain, MI 49801
Phone: Cell  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
Phone: Home/Office  914-500-6874
badbonehealing@gmail.com

24



# U.S. District Court Staff

[ Home ][ Back ]

RECEIVED

FEB 19 2013

CHAMBERS OF
U.S. DISTRICT JUDGE
ELDON E. FALLON

Last Updated:   July 05, 2012

**INTRODUCTION**

**LINKS**

**DISCLAIMER**

*CHAMBERS OF*

**Assigned District Judge:**
**Judge Eldon E. Fallon**

500 Poydras Street
Room C-456
New Orleans, LA  70130
Phone: (504) 589-7545
Fax: (504) 589-6966

**MDL Law Clerk - Katy Preston**
**Secretary - Ruth Leard**

**Clerk's Office:**

500 Poydras Street
Room C-151
New Orleans, LA  70130

**Courtroom Deputy - Dean Oser**
Phone (504) 589-7686
Fax (504) 589-6966

**Docket Clerk - Carolyn Stewart**
Phone: (504) 589-7719
Fax: (504) 589-3199

**Docket Manager - Dale Radosta**
Phone: (504) 589-7700
Fax: (504) 589-3199

**Assigned Magistrate Judge:**
**Magistrate Daniel E. Knowles**

500 Poydras Street
Room C-102
New Orleans, LA  70130
Phone: (504) 589-7575
Fax: (504) 589-4500

**Law Clerk - Jason Johanson**
**Secretary - Hope Taormina**

*Vioxx
(No. 07-905)
Mtn to Compel,
to be Exempt from
PTOS # 17 + 1L*

*Vioxx Product Liability*

*Harrison v Merck
2:07-cv-00905-EEF-DEK*

*Hello - Please call me at
906-221-5906 to help
assure me that this
it as been received/filed

Thank You

Dennis Harrison
Dennis Harrison*

*To: Chambers of
Honorable Judge Fallon
Room C-456
New Orleans, LA
70130
PH: 504-589-7545*

*Enclosed is motion, Service, order, Merck Cover Letter, Tendered
order, Notice, exhibits in re:
Harrison vs Merck Prose; 2:07-cv-00905-EEF-DEK*