# EXHIBIT A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In re: VIOXX PRODUCTS LIABILITY
LITIGATION

This Document Relates to:

All Actions

MDL No. 1657

SECTION L

JUDGE ELDON E. FALLON
MAGISTRATE JUDGE KNOWLES

## DECLARATION OF DONALD C. ARBITBLIT

I, Donald C. Arbitblit, declare as follows:

1.      I am an attorney and member of the firm of Lieff, Cabraser, Heimann &
Bernstein, LLP ("LCHB"). I have personal knowledge of the matters set forth herein and could
testify competently thereto.

2.      LCHB and other PSC firms have devoted significant unreimbursed resources to
the common benefit of Government Entity plaintiffs in the Vioxx litigation. LCHB has expended
unreimbursed common benefit costs of $461,288.41, which includes $263,945.00 in common
benefit assessments, as well as an additional $47,000.00 paid directly to Baylor College of
Medicine for the services of an expert witness who appeared at the *State of Louisiana v. Merck*
trial in April 2010. A true and correct summary of LCHB's out-of-pocket costs spent on the
Government Entity/AG common benefit work is attached as Exhibit 1. Back up detail and
documentation will be submitted to the court at its request.  A true and correct copy of LCHB's
common benefit time summary is attached as Exhibit 2, indicating that LCHB has contributed
4,930.5 hours of common benefit time, having a lodestar value of $2,726,561, at the firm's
customary and court-awarded billing rates. Approximately 2/3 of LCHB's common benefit time

- 1 -

was spent by senior partners of the firm. The work and costs referenced above were specifically dedicated to the prosecution of the Government Entity/AG cases. LCHB's time and expenses for the Government Entity/AG cases were not reimbursed in previous fee allocations or cost distributions.

3.      In 2009, the Court selected the *State of Louisiana v. Merck* case as the first bellwether trial of a government entity claim seeking reimbursement of costs for purchase of Vioxx on behalf of its citizens. Because of Elizabeth Cabraser's work as a member of the Plaintiffs' Steering Committee ("PSC"), as Chair of the Purchase Claims Committee (PTO 6) and Government Action Executive Committee Member (PTO 44), and because of LCHB's resulting years of work becoming familiar with the factual and scientific issues regarding Vioxx, LCHB was asked to assist Louisiana counsel in this bellwether trial effort. This work was undertaken at significant risk and expense, as a common benefit project pursuant to our Court-ordered appointments, and we had neither a representation agreement with the State of Louisiana nor any source of compensation for our efforts other than common benefit procedures under the direction and supervision of this Court. The *State of Louisiana* case is the only governmental purchaser claim to be tried in the Vioxx litigation, and as such it has accounted for a large proportion of the overall expenditure of time and costs specific to the AG cases.

4.      Following the selection of the *State of Louisiana* case as a bellwether for trial, a series of discussions took place between counsel for the various public entities to coordinate the AG plaintiffs' efforts. On July 7, 2009, Pennsylvania's counsel Eric Weinberg sought the deposition transcript of MDL/PSC expert Connie Pechmann, who had testified regarding marketing issues; on July 13, 2009, Mr. Weinberg wrote an email stating, "I am interested in sharing my work product and getting the benefit of others' work product to win these cases."

- 2 -

Mr. Weinberg and I informally shared information during this time; for example, on July 23, 2009, Mr. Weinberg sent me a report by David Madigan, Ph.D., a biostatistics expert he had retained; I reviewed the report and informed Mr. Weinberg of certain suggested corrections based on my own knowledge of the facts and my work with multiple MDL/PSC experts on the same issues.  (Neither the State of Louisiana nor any other litigant in the MDL cases ultimately used the Madigan report.)[1]

5.      The discussions regarding cooperative prosecution of the AG cases resulted in an agreement to adhere to a "Vioxx MDL 1657 Governmental Action Committee Structure." Pursuant to that structure, MDL/PSC counsel and attorneys for the government entities agreed to work cooperatively on the same subcommittees. Of particular relevance to the pending motion, counsel for the Commonwealth of Pennsylvania, Eric Weinberg, was named as Co-Chair of the Experts Committee along with MDL/PSC counsel James Dugan and myself; and Pennsylvania counsel Mark Schultz was named as Co-Chair of the Damages Committee, on which Mr. Weinberg and I were named as Committee members.

6.      Shortly after the agreement to implement the committee structure, I prepared and circulated to the committee a memorandum identifying the experts that had been retained and/or prepared reports for the PSC as of that time. These included several generic experts from the MDL trial package, which were equally relevant to the AG cases on issues of failure to warn and cardiovascular risk. In addition, the memorandum described several additional expert reports that had already been completed specifically for the AG cases, at substantial expense of time and expert witness fees.

7.      The Court ultimately set the *State of Louisiana v. Merck* expert report deadline for November 6, 2009, and extensive reports were submitted at that time. These included the expert

---

[1] Relevant biostatistics expert opinions developed in the MDL are included in the trial package.

reports developed in the MDL specifically for the AG cases, including those of David Kessler, M.D., former Director of the United States Food and Drug Administration; John MacGregor, M.D., a Professor of Cardiology at the University of California at San Francisco; and David Graham, M.D., a Professor of Medicine at Baylor who specialized in the adverse gastro-intestinal effects of pharmaceuticals. Hundreds of unreimbursed hours, and hundreds of thousands of dollars in unreimbursed costs, were spent by the undersigned and other MDL attorneys in the development of these reports. Additional reports of Jerry Avorn, M.D., and Connie Pechmann, were obtained from the MDL trial package developed through the previous work of PSC counsel, and those were submitted on behalf of the State of Louisiana at the same time.

    8.      On November 9, 2009, PSC/MDL counsel met with attorneys for the various government entities at the office of PSC/MDL counsel Shelley Sanford, in Houston, Texas. At that time, PSC/MDL counsel described in some detail the expert reports that had been served on behalf of the State of Louisiana three days earlier.  Pennsylvania's counsel, Mr. Weinberg and Mr. Schultz, both asked to receive these expert reports that had been prepared and funded by the MDL/PSC. In order to protect the PSC's work product from unauthorized use, government entity counsel were asked to sign a letter agreement not to use "the common benefit expert reports" in the litigation "until and unless an agreement is reached and/or court order is entered regarding the payment of assessments to contribute to the expense of preparing such reports." (Exhibit 3, filed herewith). During the communications regarding cooperative prosecution of the AG cases, Mr. Weinberg had specifically asked whether he would have access to Dr. Kessler, an important witness who had not been identified in the prior phase of the Vioxx litigation. Counsel for the Commonwealth of Pennsylvania signed the agreement not to use the reports without

- 4 -

compensating the PSC on December 9, 2009 (*Id*).  It is my recollection, consistent with the email

exchange quoted below, that Mr. Dugan's office handled the transmission of the reports to

Pennsylvania's counsel:

> From: James Dugan [mailto:jdugan@dugan-lawfirm.com]
> Sent: Friday, December 11, 2009 11:20 AM
> To: Mark Schultz; Trudy Bryant
> Cc: Douglas Plymale; Shelly Sanford; Don Arbitblit
> Subject: Re: Vioxx agreement not to use the common benefit expert
> reports
>
> Trudy, please handle this
>
> Sent from my iPhone
>
> On Dec 11, 2009, at 10:14 AM, "Mark Schultz"
> <mark@mschultzlaw.com>
> wrote:
>
> > Here is my signed agreement regarding the LA experts.   The original
> > has been sent to James Dugan's office.  Please forward the expert
> > reports to my new address.  Thanks
> >
> >
> > Mark C. Schultz
> > Schultz Law LLC
> > 8 Tower Bridge
> > 161 Washington St.
> > Suite 400
> > Conshohocken, PA. 19428

9.      Pennsylvania eventually settled its claims against Merck without trial, and its

need to use the PSC-funded expert reports in the litigation was thereby obviated. Nevertheless,

Pennsylvania asked to receive those reports, learned their content, and had the opportunity to

incorporate those experts' opinions into their own assessment of the cases and any reports that

their own experts prepared. Furthermore, Merck obviously knew that the PSC-funded experts

could be available for subsequent trials on behalf of Pennsylvania or other AG plaintiffs

Therefore, Pennsylvania voluntarily sought and received a benefit from the PSC expert reports

and the availability of these experts, and its claims were settled in the context of these prior developments.

10.     The *State of Louisiana v. Merck* case was tried in April 2010. That case resulted in the Court's Conclusion of Law that "Plaintiff failed to satisfy its burden of proving causation because it did not establish at trial that: had it known different facts about Vioxx (a) the State could have established an exclusive formulary; (b) and the State would have established such a formulary and excluded Vioxx from it." (Findings of Fact and Conclusions of Law, Document 45739, Filed 06/29/10, at 38). Despite this Conclusion adverse to the State, the Court's Findings of Fact validated the opinions of the Plaintiff's experts on certain key issues, including the finding that the weight of the evidence supported the conclusion that Vioxx increased cardiovascular risk, rather than the alternative theory espoused by Merck (*Id.*, at 14-18); and that, as Dr. Kessler had testified, "Merck attempted to neutralize concerns that Vioxx was cardiotoxic." (*Id.*, at 36.) These findings, achieved at the expense of substantial investments of unreimbursed time and cost, inherently and inevitably inured to the benefit of all government entities, including the Commonwealth of Pennsylvania, in the subsequent prosecution and/or settlement of their claims against Merck.  Following trial, the expert reports of Plaintiff's witnesses were added to the MDL trial package made available to governmental litigants.

11.     On June 10, 2010, after the *State of Louisiana v. Merck* trial had concluded, Pennsylvania counsel sought information about the expert evidence submitted in that case. Pennsylvania counsel Mark Schultz set a conference call of the cooperative expert committee for the following day,  and Mr. Weinberg sent an email stating, " It would be helpful if possible to get a quick briefing for a couple of minutes on the Louisiana trial expert evidence to start the call tomorrow.

"For example:

1.     The evidence presented on risks/benefits of Vioxx – what was known or knowable, what was not disclosed.

2.     Evidence related to comparator therapy, as alternatives to Vioxx.

3.     The damages evidence

4.     What experts testified about what issues

5.     Merck's defenses.

"Thanks."

Thus the attorneys for Pennsylvania continued to seek the information developed and paid for by MDL/PSC counsel to inform their opinions and assessments of their own case.

12.     The Brief of the Commonwealth of Pennsylvania in this matter asserts that it neither wanted nor benefitted from the MDL trial package. However, as described above, counsel for the Commonwealth voluntarily sought and received a significant portion of the MDL trial package, in the form of the expert reports that it requested from PSC counsel in 2009. Those reports did not merely set forth the experts' opinions, but also identified dozens of key documents and scientific articles that the experts relied upon, and the particular portions of the documents that were relevant to the issues in the case, based upon the collective expenditure of unreimbursed time by MDL/PSC counsel and the experts themselves, as well as the unreimbursed costs referenced above.

13.     Having requested and obtained the MDL/PSC expert reports, and having sought and agreed to a cooperative committee structure to develop evidence for all the government litigants, it is reasonable to conclude that counsel for the Commonwealth expected to benefit and actually did benefit from the substantial expenditure of time and money that the MDL/PSC incurred to develop them.

1075116.1

I declare under penalty of perjury that the foregoing is true and correct, and that this declaration was executed at San Francisco, CA, on January 23, 2013.

_____
Donald C. Arbitblit

1075116.1

# EXHIBIT 1

## LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
## VIOXX GOVERNMENT PAYOR CASES HELD COSTS SUMMARY

| | Books and Subscriptions | Telefax | Postage and FedEx | Printing and Copying | Computerized Research | Telephone | Travel | Experts and consultants | Deposition and court costs | Miscellaneous (assessments) | TOTAL COSTS |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Feb-09 | - | - | - | 63.20 | - | - | - | - | - | - | 63.20 |
| Mar-09 | - | - | - | 293.20 | 255.79 | 106.78 | 3,798.07 | - | - | - | 4,453.84 |
| Apr-09 | - | - | - | 356.80 | 1,221.54 | 241.91 | 5,147.54 | - | - | - | 6,967.79 |
| May-09 | - | - | - | 863.20 | 28.21 | 188.25 | - | - | - | - | 1,079.66 |
| Jun-09 | - | - | - | 295.80 | 1,420.71 | 354.80 | 80.00 | - | - | - | 2,151.31 |
| Jul-09 | - | - | - | 795.20 | 2,102.16 | 590.54 | 70.00 | - | - | - | 3,557.90 |
| Aug-09 | - | - | - | 366.00 | - | 111.84 | 2,283.14 | - | - | 50,000.00 | 52,760.98 |
| Sep-09 | - | - | - | 363.20 | 318.19 | 329.25 | 564.40 | 1,170.00 | - | - | 2,745.04 |
| Oct-09 | - | 5.00 | 31.64 | 582.20 | 547.21 | 608.31 | 10,719.23 | - | - | - | 12,493.59 |
| Nov-09 | - | - | 15.34 | 1,433.60 | 1,457.62 | 240.40 | - | - | - | 50,000.00 | 53,146.96 |
| Dec-09 | - | - | 22.55 | 1,234.60 | 6,062.73 | 331.70 | 6,280.81 | - | - | - | 13,932.39 |
| Jan-10 | - | 11.00 | 160.42 | 3,314.60 | - | 415.54 | - | - | - | - | 3,901.56 |
| Feb-10 | - | 11.00 | 160.42 | 3,314.60 | - | 415.54 | - | - | - | - | 3,901.56 |
| Mar-10 | - | 60.00 | 235.21 | 4,881.00 | 3,847.01 | 1,006.46 | 859.45 | - | 140.00 | 50,000.00 | 61,029.13 |
| Apr-10 | - | 118.00 | 1,639.94 | 5,481.16 | - | 323.72 | 220.05 | - | 5,034.63 | - | 12,817.50 |
| May-10 | 3,989.75 | - | 98.11 | 832.08 | 9,090.95 | 219.64 | 13,956.47 | - | 1,072.45 | - | 29,259.45 |
| Jun-10 | - | - | - | - | - | - | - | - | - | 113,945.00 | 113,945.00 |
| Jul-10 | - | - | - | - | - | - | - | - | - | - | - |
| Aug-10 | - | - | - | - | - | - | 2660.46 | - | - | - | 2,660.46 |
| Sep-10 | - | - | - | - | - | - | 80.00 | - | - | - | 80.00 |
| Oct-10 | - | - | - | - | - | - | 0.00 | 22,000.00 | - | - | 22,000.00 |
| Nov-10 | - | - | - | - | - | - | 11975.48 | - | - | - | 11,975.48 |
| Dec-10 | - | - | - | - | - | - | 21365.61 | - | - | - | 21,365.61 |
| Jan-11 | - | - | - | - | - | - | - | 25,000.00 | - | - | 25,000.00 |
| TOTAL | 3,989.75 | 205.00 | 2,363.63 | 24,470.44 | 26,352.12 | 5,484.68 | 80,060.71 | 48,170.00 | 6,247.08 | 263,945.00 | 461,288.41 |

# EXHIBIT 2

Vioxx Products Liability Litigation Report - MDL 1657

## Lieff, Cabraser, Heimann & Bernstein LLP - Attorney General Time Report

Reporting Period: From Incep

To:  December 2010

| PARTNER | | | |
|---|---|---|---|
| NAME | HOURS | RATE | TOTAL |
| ELIZABETH CABRASER | 491.25 | $850 | $417,562.50 |
| DONALD ARBITBLIT | 1,896.50 | $750 | $1,422,375.00 |
| PAULINA DO AMARAL | 4.00 | $575 | $2,300.00 |
| ROBERT EISLER | 6.75 | $650 | $4,387.50 |
| STEVEN FINEMAN | 0.75 | $725 | $543.75 |
| WENDY FLEISHMAN | 32.50 | $675 | $21,937.50 |
| LORI ANDRUS | 26.00 | $475 | $12,350.00 |
| HEATHER FOSTER | 1.00 | $510 | $510.00 |
| RACHEL GEMAN | 5.00 | $550 | $2,750.00 |
| HECTOR GERIBON | 24.50 | $475 | $11,637.50 |
| JENNIFER GROSS | 804.50 | $475 | $382,137.50 |
| BARRY HIMMELSTEIN | 0.50 | $675 | $337.50 |
| JONATHAN SELBIN | 0.50 | $650 | $325.00 |
| | | | |
| TOTAL: | 3,293.75 | | $2,279,153.75 |
| ASSOCIATE | | | |
| NAME | HOURS | RATE | TOTAL |
| ELIZABETH CRONISE | 28.75 | $400 | $11,500.00 |
| NIMISH DESAI | 0.50 | $370 | $185.00 |
| DAVID GOLD | 0.50 | $395 | $197.50 |
| SARAH LONDON | 755.00 | $300 | $226,500.00 |

Vioxx - MDL 1657 LCHB - AG Time Report

| ANNIKA MARTIN | 33.25 | $410 | $13,632.50 |
|---|---|---|---|
| ANNE SHAVER | 6.00 | $350 | $2,100.00 |
| | | | |
| TOTAL: | 824.00 | | $254,115.00 |
| | | | |
| **LAW CLERK** | | | |
| **NAME** | **HOURS** | **RATE** | **TOTAL** |
| NATHANIEL TORRES | 16.75 | $230 | $3,852.50 |
| | | | |
| TOTAL: | 16.75 | | $3,852.50 |
| | | | |
| **PARALEGAL** | | | |
| **NAME** | **HOURS** | **RATE** | |
| RICHARD ANTHONY | 12.50 | $245 | $3,062.50 |
| DAWN BEHRMANN | 35.25 | $245 | $8,636.25 |
| RACHEL DEMPSEY | 3.00 | $200 | $600.00 |
| SAMUEL DEPUTY | 5.25 | $225 | $1,181.25 |
| ERIN DOWNING | 10.75 | $190 | $2,042.50 |
| ESTELA FANGMAN | 12.25 | $225 | $2,756.25 |
| ROBIN KUPERSMITH | 16.75 | $245 | $4,103.75 |
| JEFFREY LAIS | 6.75 | $190 | $1,282.50 |
| HAZEL MOTTERSHEAD | 19.00 | $235 | $4,465.00 |
| BRENDA PARKER | 2.50 | $245 | $612.50 |
| JESSICA PORTER | 2.00 | $190 | $380.00 |
| EVELYN RODAS | 40.50 | $225 | $9,112.50 |
| JENNIFER RUDNICK | 0.75 | $235 | $176.25 |
| ANNA SCHENKER | 0.25 | $155 | $38.75 |
| DAN SCHUMAN | 194.25 | $245 | $47,591.25 |
| MORRY SILVERFIELD | 0.50 | $235 | $117.50 |
| MEAGAN SULLIVAN | 322.25 | $235 | $75,728.75 |
| RICHARD TEXIER | 3.50 | $245 | $857.50 |

Vioxx - MDL 1657 LCHB - AG Time Report

| | | | |
|---|---|---|---|
| TOTAL: | 688.00 | | $162,745.00 |
| | | | |
| OTHER | | | |
| NAME | HOURS | RATE | TOTAL |
| SCOTT ALAMEDA | 8.00 | $260 | $2,080.00 |
| WENDY DOLL | 0.50 | $190 | $95.00 |
| ANTHONY GRANT | 11.00 | $260 | $2,860.00 |
| SAT KRIYA KHALSA | 3.25 | $260 | $845.00 |
| JULIETTE KRUSE | 40.75 | $260 | $10,595.00 |
| MAJOR MUGRAGE | 16.50 | $260 | $4,290.00 |
| RENEE MUKHERJI | 27.00 | $210 | $5,670.00 |
| LAURA RUDDY | 1.00 | $260 | $260.00 |
| | | | |
| TOTAL: | 108.00 | | $26,695.00 |
| | | | |
| | MATTER TOTALS | | $2,726,561.25 |

# EXHIBIT 3

**MURRAY LAW FIRM**
SUITE 2150 POYDRAS CENTER
650 POYDRAS STREET
NEW ORLEANS, LOUISIANA 70130

STEPHEN B. MURRAY*
STEPHEN B. MURRAY, JR.
JULIE A. ARDOIN**
ARTHUR M. MURRAY
NICOLE IEYOUB-MURRAY
JESSICA W. HAYES
JAMES R. DUGAN, II
JUSTIN BLOOM ****
DOUGLAS R. PLYMALE, Ph.D.
KOREY A. NELSON

TELEPHONE 504.648.0180
1.866.328.7670
FAX 504.648.0181
www.murray-lawfirm.com

OF COUNSEL

JOSEPH A RACE
ROBERT J. DILIBERTO***
DAMON A. KIRIN

WILLIAM W. GOODELL, JR., L.L.M.
Energy and Environment

* CERTIFIED AS A SPECIALIST IN
  CIVIL TRIAL ADVOCACY BY THE NATIONAL
  BOARD OF TRIAL ADVOCACY
** LICENSED IN LA & MS
*** LICENSED IN LA & TX
**** LICENSED IN FL & NY

November 16, 2009

**Via E-mail**

    Re:  Vioxx MDL 1657- Governmental Action Cases

Dear Counsel:

    By signing and returning this letter to my office, to the attention of Trudy Bryant, you agree on behalf of your client that you may not use the common benefit expert reports served on defense counsel on November 6, 2009 in the Louisiana Attorney General Action until and unless an agreement is reached and/or court order is entered regarding the payment of assessments to contribute to the expense of preparing such reports.

    Upon receipt of the signed letter, we will send you a CD with the expert reports for your review.

              Sincerely,

              James Dugan

I agree to the terms stated above. _____

Counsel for _____

Date: _____

Cc:  James Young
    Randy Fox
    Elizabeth Cabraser
    Shelly Sanford
    Dawn Barrios