# EXHIBIT B

## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **In re: VIOXX PRODUCTS LIABILITY LITIGATION** | **MDL No. 1657** |
| | **SECTION L** |
| **This Document Relates to:** | |
| | **JUDGE ELDON E. FALLON** |
| *Commonwealth of Pennsylvania by Thomas W. Corbett Jr., Attorney General vs. Merck & Co., Inc.;* Case No. 09-2861 | **MAGISTRATE JUDGE KNOWLES** |

STATE OF LOUISIANA

PARISH OF ORLEANS

### DECLARATION OF DAWN M. BARRIOS, ESQ.

I, Dawn M. Barrios, declare as follows:

1. I am an attorney and partner in the firm Barrios, Kingsdorf & Casteix, LLP ("BKC"). I have personal knowledge of the matters set forth herein and could testify competently thereto.

2. BKC has devoted significant unreimbursed l e g a l resources to the common benefit of Government Entity plaintiffs in the Vioxx MDL litigation since her directive by the Court on July 11, 2008 to coordinate communication with the state Attorneys General. (Rec. Doc. 15351). BKC has expended approximately 1,600 hours from my appointment as Government Entity Liaison through December 12, 2012. None of this time has been compensated in any fashion and all has been submitted properly under Judge Fallon's PreTrial Order #6. BKC has incurred expenses associated with the Attorney General ("AG") matters in the amount of $9,783.95 which are currently outstanding. (Exhibit A) Additionally, BKC contributed $50,000 to the

-1-

AG common benefit fund to assist with the expenses that were specifically dedicated to the prosecution of the AG cases. *See* Pretrial Order #44). (Exhibit B) BKC's time and expenses for the Government Entity/AG cases were not reimbursed in previous cost distributions.

3.  I devoted a significant portion of my time and effort in coordinating the Attorneys General.  BKC did not have an AG as a client, so all work I did was devoted strictly to the common benefit of all AGs and their counsel.  BKC's records show that approximately 1,600 hours were devoted to the AGs.

4.  On March 17, 2009 the claims of the Commonwealth of Pennsylvania ("Commonwealth") were removed and transferred to this MDL.

5.  I began all communication with the Commonwealth with Mark Schultz, who was at that time with the firm of Cohen, Placitella & Roth.  Mr. Schultz attended a meeting Elizabeth Cabraser and I planned at Ms. Cabraser's firm in New York in May 2009. The purpose of the meeting was to organize the AG cases, to familiarize AG counsel with the contents of the depository kept by the PSC, and to discuss issues common to all the AG cases. Mr. Leonard Davis attended to discuss access to the depository.

6.  Beginning July 15, 2008, I held conference calls with the AGs on most Tuesday mornings to discuss the status and movement of the cases.

7.  Either Mr. Weinberg, Mr. Coren or Mr. Roth attended and participated in approximately 20 conference calls I held routinely on Tuesdays when the Commonwealth's claims were transferred in the MDL

8.  The Order establishing the Government Entities management committee named Mr. Schultz to the Government Action Executive Committee.  Pretrial Order # 44.

9. At some point Mr. Schultz withdrew from this firm and went into solo practice. Thereafter, I then primarily dealt with Michael Coren and Harry Roth of Cohen, Placitella & Roth on the Commonwealth's claims.

10. As the first material given to any AG, I sent a hard copy of document production given to me by Merck to the Commonwealth in April 2009.

11. Eric Weinberg contacted me to assist him in gaining access to the depository on behalf of the Commonwealth. I inquired if he was counsel for the Commonwealth and he said he was; I then requested that he file a Notice of Appearance and sign the requisite confidentiality orders. I do not believe he ever entered a Notice of Appearance for the Commonwealth or signed the confidentiality orders. Subsequently, I confirmed with either Mr. Coren or Mr. Roth that Mr. Weinberg was indeed a counsel for the Commonwealth. In June 2009 I received the PTO 13 certifications from Cohen, Placitella & Roth.

12. I believe that counsel for the Commonwealth joined numerous attorneys in the New Orleans depository in June 2009 for a trial package presentation. Russ Herman, Mr. Davis, Jerry Meunier and Pete Kaufman conducted the presentation for the PSC.

13. There were numerous conversations and/or emails between counsel for the Commonwealth and me or my office on issues specifically concerning the Commonwealth. Some of those dates included December 15, 2009, June 7, 2010, August 7, 2010, September 4, 2010, November 19, 2010, November 22, 2010, January 3, 201, June 22, 2011, June 24, 2011, July 1, 2011, July 2, 2011, July 5, 2011, July 18, 2011, July 22, 2011, August 1, 2011, August 3, 2011, September 15, 2011, September 20, 2011, September 21, 2011, September 29, 2011, September 30, 2011, October 19,

2011, October 31, 2011, November 3, 2011, November 18, 2011, November 21, 2011, November 29, 2011, December 7, 2011, January 24, 2012, January 30, 2012, February 10, 2012, February 28, 2012, March 15, 2012, May 15, 2011, May 16, 2012, June 6, 2012, June 17, 2012, June 19, 2012, August 3, 2012, August 16, 2012, and September 8, 2012.

14. The Commonwealth had input in formulating the Master Discovery directed to Merck and received Merck's responses directed to the Commonwealth.

15. Per a May 2010 Court order (signed 5/11/10) the Commonwealth could receive from the New York Attorney General an electronic and paper copy of the data dictionaries made available to the AGs by Merck in April 2010. (Rec. Doc. 41691).

16. While the lengthy stay was in place during the NAMFCU negotiations, the Commonwealth participated in the formation of requests for documents that was referred to as the "Top Ten" list. Merck provided the documents requested (and allowed by the Special Master after a hearing) to the Commonwealth.

17. Leonard Davis made the PSC depository available to each Attorney General by putting it on a hard drive. The PSC's depository held over one million pages of documents just for the Commonwealth.

18. The Commonwealth did not receive its hard drive copy from Mr. Davis directly, but from another Attorney General. Mr. Weinberg complained to me about the hard drive as he had difficulty searching it so I referred him to another AG who was able to do so. Mr. Weinberg wanted the material in PDF, not TF, format.

19. When a discovery dispute arose, the Commonwealth participated in discovery "hearings" via conference call with the Court and Merck.

20. Counsel for the Commonwealth attended AG general status conferences with the Court, even those with counsel for the DOJ regarding the NAMFCU settlement.

21. The Commonwealth received IMS data in February, 2011.

22. According to a letter from Merck dated February 4, 2011, it completed the production of custodial files for all Merck personnel identified for the Commonwealth.

23. Mr. Roth attended the July 2011 mediation before Special Master Juneau in New Orleans for the Commonwealth, but it was unsuccessful.

24. At some point in time Mr. Weinberg began associations with counsel for other AGs with cases in the MDL, and, I understand, was added as counsel for some of these other AGs.

25. Every other government entity in the MDL agreed to a common benefit fee for the PSC for all the work and work product produced by the PSC and given them. Those who agreed received a copy of the trial package.

26. The Commonwealth refused to agree to a common benefit fee for the PSC.

27. As Mr. Weinberg was counsel for other AGs and the Commonwealth, it is obvious that Mr. Weinberg had access to and reviewed the trial package. I believe that he must have used information gathered from his representation of other Attorneys General from the trial package in his representation of the Commonwealth.

28. The Commonwealth represented by Mr. Weinberg attended in person at least one meeting to jointly develop experts with members of the PSC in attendance with other government entity counsel. This meeting was held in Houston in June 2010.

29. When Merck updated the depository for the PSC, I received a copy of the updated

material and made copies for every counsel, including counsel for the Commonwealth. This is the manner in which counsel for the Commonwealth received discovery general to the case and specific to the Commonwealth.

30. I believe Mr. Davis sent the privilege log and those documents deemed not to be privileged to each AG, including the Commonwealth.

31. I helped arrange and schedule one of Merck's IT personnel to meet with the Commonwealth in Pennsylvania to discuss data bases.

32. I believe that counsel for the Commonwealth was afforded the opportunity to review in person many of Merck's databases in a 2 day meeting in Philadelphia.

33. I transmitted all relevant pleadings from the LA AG case to all AGs, including the Commonwealth.

34. Since the Commonwealth selected to be in the first group of cases to go to trial, it received discovery earlier than other AGs. *See* Pretrial Order 39A. I worked with all AGs, including the Commonwealth, in crafting the language of Pretrial Orders 39A and 39 B.

35. Zachary Wool, an associate with my firm, assisted counsel for the Commonwealth and Merck with setting dates for the Commonwealth's and meets and confers with Merck.

36. The Commonwealth received a production of Vioxx related call notes, and weekly notes associated with the Commonwealth's TAC members.

37. The Commonwealth's refrain of its not needing or having any MDL work product is contradicted by the actions of its counsel in participating in the MDL as described above.

38. I declare under penalty of perjury that the foregoing is true and correct.

Dawn M. Barrios

SWORN AND SUBSCRIBED

BEFORE ME, THIS ___ DAY OF JANUARY, 2013.

_____ 7403

NOTARY PUBLIC

-7-

# EXHIBIT A

**BARRIOS KINGSDORF CASTEIX, LLP**
**VIOXX - AG**
**COURT APPOINTMENT THRU DECEMBER 2012**

| DATE | EXPENSES | ASSESSMENT |
|---|---|---|
| May-09 - Sep-09 | $4,595.57 | |
| Oct-09 | $417.71 | $50,000.00 |
| Nov-09 | $0.50 | |
| Dec-09 | $51.86 | |
| Jan-10 | $23.74 | |
| Feb-10 | $638.78 | |
| Mar-10 | $285.51 | |
| Apr-10 | $366.89 | |
| May-10 | $345.52 | |
| Jun-10 | $330.25 | |
| Jul-10 | $38.67 | |
| Aug-10 | $162.07 | |
| Sep-10 | $708.93 | |
| Oct-10 | $176.49 | |
| Nov-10 | $21.35 | |
| Dec-10 | $337.29 | |
| Jan-11 | $238.33 | |
| Feb-11 | $3.00 | |
| Mar-11 | $38.70 | |
| Apr-11 | $0.08 | |
| May-11 | $255.40 | |
| Jun-11 | $45.35 | |
| Jul-11 | $86.82 | |
| Aug-11 | $144.53 | |
| Sep-11 | $1.50 | |
| Oct-11 | $36.57 | |
| Nov-11 | $22.75 | |
| Dec-11 | $2.75 | |
| Jan-12 | $75.12 | |
| Feb-12 | $94.25 | |
| Mar-12 | $29.00 | |
| Apr-12 | $85.62 | |
| May-12 | $16.45 | |
| Jun-12 | $54.55 | |
| Jul-12 | $1.00 | |
| Aug-12 | $0.00 | |
| Oct-12 | $12.25 | |
| Nov-12 | $8.50 | |
| Dec-12 | $30.30 | |
| **TOTAL** | **$9,783.95** | **$50,000.00** |

1/10/2013

# EXHIBIT B

9730

BARRIOS, KINGSDORF & CASTEIX, L.L.P.
**OPERATING ACCOUNT**

| VENDOR: Vioxx MDL Governmental Actions Litigation Fund | | | | | CHECK NO: 9730 | |
|---|---|---|---|---|---|---|
| OUR REF. NO. | YOUR INVOICE NUMBER | INVOICE DATE | INVOICE AMOUNT | AMOUNT PAID | | DISCOUNT TAKEN |
| 16337 | assessment | 10/29/2009 | 50,000.00 | $50,000.00 | | $0.00 |
| | Assessment – Barrios, Kingsdorf & Casteix, LLP | | | | | |

---

9730

**BARRIOS, KINGSDORF & CASTEIX, L.L.P.**
OPERATING ACCOUNT
701 POYDRAS ST. SUITE 3650
NEW ORLEANS, LA 70139-3650

CAPITAL ONE, N.A.
14-9-650

| CHECK NO. | CHECK DATE | VENDOR NO. |
|---|---|---|
| 9730 | 10/29/2009 | VIOXAG |

CHECK AMOUNT

PAY

Fifty thousand and NO/100                    $50,000.00

TO THE
ORDER
OF

Vioxx MDL Governmental Actions Litigation Fund

Attn: James Dugan
Murray Law Firm
650 Poydras St.

⑆009730⑆

---

BARRIOS, KINGSDORF & CASTEIX, L.L.P.                    9730
**OPERATING ACCOUNT**
    Vioxx MDL Governmental Actions Litigation Fund                    9730

| 16337 | assessment | 10/29/2009 | 50,000.00 | $50,000.00 | | $0.00 |
|---|---|---|---|---|---|---|
| | Assessment – Barrios, Kingsdorf & Casteix, LLP | | | | | |