# EXHIBIT "E"

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **In re: VIOXX** | * | **MDL Docket No. 1657** |
| | * | |
| **PRODUCTS LIABILITY LITIGATION** | * | **SECTION L** |
| | * | |
| | * | **JUDGE FALLON** |
| **This document relates to All Cases** | * | |
| | * | **MAGISTRATE JUDGE KNOWLES** |
| | * | |
| | * | |
| | * | |
| * * * * * * * * * * * * * * * * | * | |

## DECLARATION OF RUSS M. HERMAN IN SUPPORT OF HERMAN, HERMAN & KATZ, L.L.C.'S SUBMISSION FOR ATTORNEY GENERAL COMMON BENEFIT FEES

1.  I, Russ M. Herman ("RMH"), am an attorney licensed to practice law in the state of Louisiana.  I make this declaration on behalf of Herman, Herman & Katz, L.L.C. ("HHK") based upon my personal involvement in virtually all aspects of the Vioxx litigation, including activities involving Attorney General ("AG") claims and my thorough familiarity with the record in MDL No. 1657.

2.  During its participation in the Vioxx MDL litigation, HHK had eight (8) attorneys and more than eleven (11) support staff (totaling nineteen (19) individuals who recorded time[1]) working in furtherance of the Vioxx matter, totaling 31,216 hours[2] as of 2011 some of which were solely dedicated to A G matters.   AG hours were recorded contemporaneously with other common benefit hours worked by HHK.   (Additional time and expense have been incurred by HHK in connection with Vioxx matters since the previous application made for common benefit fees in connection with personal injury claims.)  HHK has continued, since the previous application made for common benefit fees, to incur additional time in the Vioxx matter, including time related to common benefit AG matters.

---

[1] Substantially more than 19 individuals from HHK worked on the Vioxx litigation.  Additional support staff participated daily in activities such as organization, filing, typing, bookkeeping, and other essential functions required of Plaintiffs' Liaison Counsel.

[2] Time has been and continues to be submitted to Wegmann-Dazet on an ongoing basis, but has not yet been fully recorded by Wegmann-Dazet.  Furthermore, many time entries by HHK attorneys and employees for work that involved less than 10 minutes of time was often not recorded.   For example, counsel, paralegals and secretaries received daily e-mails, telephone calls, performed routine Liaison Counsel functions and addressed other communications that were frequently responded to quickly and time entries were not recorded.

HHK states as follows:

(a)     HHK did not represent any A G  clients.

(b)  HHK was involved in all aspects of the MDL proceedings, including coordinating and participating in AG activities, which included, among other items, pre-trial pleadings and motions, discovery, trial and issues pertaining to the NAMFCU settlement negotiations.  Pursuant to Pre-Trial Order No. 2, dated February 28, 2005, Russ M. Herman ("RMH") was appointed Plaintiffs' Liaison Counsel  in the MDL and this appointment included duties to AG matters. Pursuant to Pre-Trial Order No. 6, dated April 8, 2005, RMH was appointed a member of the PSC Executive Committee, which also addressed AG matters.

(c)     HHK actively participated in AG motions, appearances at conferences and hearings and discovery matters, conferred with and worked closely with Dawn Barrios (liaison counsel for the AGs), scheduled a n  exemplar case for trial, coordination and meetings with various Attorney Generals' counsel, coordinated depositions and document production, was liaison with trial counsel for the Louisiana Attorney General,  assisted in preparing an AG trial package, and involved with issues  raised in the AG NAMFCU settlement. HHK drafted motions, traveled and actively participated in obtaining discovery responses from Merck, assisted in negotiating discovery issues with AGs and Merck, liaisoned with counsel who were preparing for trial, developed strategy, supervised the depository and assisted AG counsel who coordinated and visited the depositories throughout the country, coordinated with the various State appointed AG counsel, met and conferred with the AGs and Special Master Juneau regarding discovery, remands and other issues, handled internal matters and provided leadership.    Leonard A. Davis (LAD), with the approval of  the Honorable Eldon E. Fallon, assisted in all AG matters in which HHK was involved in duties assigned by RMH and the Court. RMH and/or LAD were involved in each and every aspect of the handling of the AG  litigation, from discovery through preparation  for trial. Their activities throughout the AG litigation included, but were not limited  to organization,  strategy, tactics,  assignments,  drafting  of pleadings, attendance at every MDL hearing, drafting every joint report (which included updates on AG matters) and attendance at every status conference,  coordination  with counsel for the AGs and Dawn Barrios, participation in the organization and preparation of the AG trial package,  attendance at  numerous  meetings,  involvement with the Louisiana AG trial, met and conferred with Special Master Juneau,  and participated  in matters involving the NAMFCU  settlement.  In addition, RMH established a professional working relationship and  rapport with Merck counsel necessary to  discuss  ultimate  resolution,  including  potential  settlement possibilities and remand of AG matters.  HHK was active in every aspect of the

AG Vioxx litigation.

(d)     LAD and/or RMH worked with and assisted the Commonwealth of Pennsylvania in connection with numerous discovery issues with Merck, access to the PSC depository, access to data produced by Merck, coordination of master discovery directed to Merck and responses thereto, attendance at meetings with various Attorney Generals to instruct each on access to the depositories and for trial package presentation, participated in conference calls, participated in court hearings and status conferences, assisted with discovery disputes and assisted in privilege log issues.

(e)     HHK has devoted significant unreimbursed resources for the common benefit of Vioxx AG matters.  HHK has also expended unreimbursed common benefit costs. HHK has contributed approximately 1,500 to 2,000[3] hours to common benefit AG matters and in excess of $33,073.94 of unreimbursed costs in the entire Vioxx matter.   None of this time nor the expenses have been compensated or reimbursed.

(f)     Upon RMH being appointed as Plaintiffs' Liaison Counsel on February 28, 2005, pursuant to Pre-Trial Order No. 2, HHK did not accept any additional Vioxx cases because it perceived a potential conflict with its liaison and executive committee duties, and HHK further refused to become involved in other COX-2 cases, including, Celebrex and Bextra, because of potential conflicts, including "alternative safe design" and other issues. Additionally, HHK declined referred claimants to other counsel without fee to HHK.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

RUSS M. HERMAN

---

[3] Lodestar values were previously submitted pursuant to Pre-trial Order No. 6 in January 2008.  Further, approximately 1,500 hours of AG common benefit time was comingled with other time submitted by HHK.