# EXHIBIT A

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **In re: VIOXX PRODUCTS LIABILITY LITIGATION** | **MDL No. 1657** |
| **This Document Relates to:** | **SECTION L** |
| **All Actions** | **JUDGE ELDON E. FALLON**<br>**MAGISTRATE JUDGE KNOWLES** |

## <u>DECLARATION OF DONALD C. ARBITBLIT</u>

I, Donald C. Arbitblit, declare as follows:

1.     I am an attorney and member of the firm of Lieff, Cabraser, Heimann & Bernstein, LLP ("LCHB"). I have personal knowledge of the matters set forth herein and could testify competently thereto.

2.     LCHB and other PSC firms have devoted significant unreimbursed resources to the common benefit of Government Entity plaintiffs in the Vioxx litigation. LCHB has expended unreimbursed common benefit costs of $461,288.41, which includes $263,945.00 in common benefit assessments, as well as an additional $47,000.00 paid directly to Baylor College of Medicine for the services of an expert witness who appeared at the *State of Louisiana v. Merck* trial in April 2010. A true and correct summary of LCHB's out-of-pocket costs spent on the Government Entity/AG common benefit work is attached as Exhibit 1. Back up detail and documentation will be submitted to the court at its request. A true and correct copy of LCHB's common benefit time summary is attached as Exhibit 2, indicating that LCHB has contributed 4,930.5 hours of common benefit time, having a lodestar value of $2,726,561, at the firm's customary and court-awarded billing rates. Approximately 2/3 of LCHB's common benefit time

- 1 -

was spent by senior partners of the firm. The work and costs referenced above were specifically dedicated to the prosecution of the Government Entity/AG cases. LCHB's time and expenses for the Government Entity/AG cases were not reimbursed in previous fee allocations or cost distributions.

3.        In 2009, the Court selected the *State of Louisiana v. Merck* case as the first bellwether trial of a government entity claim seeking reimbursement of costs for purchase of Vioxx on behalf of its citizens. Because of Elizabeth Cabraser's work as a member of the Plaintiffs' Steering Committee ("PSC"), as Chair of the Purchase Claims Committee (PTO 6) and Government Action Executive Committee Member (PTO 44), and because of LCHB's resulting years of work becoming familiar with the factual and scientific issues regarding Vioxx, LCHB was asked to assist Louisiana counsel in this bellwether trial effort. This work was undertaken at significant risk and expense, as a common benefit project pursuant to our Court-ordered appointments, and we had neither a representation agreement with the State of Louisiana nor any source of compensation for our efforts other than common benefit procedures under the direction and supervision of this Court. The *State of Louisiana* case is the only governmental purchaser claim to be tried in the Vioxx litigation, and as such it has accounted for a large proportion of the overall expenditure of time and costs specific to the AG cases.

4.        Following the selection of the *State of Louisiana* case as a bellwether for trial, a series of discussions took place between counsel for the various public entities to coordinate the AG plaintiffs' efforts. On July 7, 2009, Pennsylvania's counsel Eric Weinberg sought the deposition transcript of MDL/PSC expert Connie Pechmann, who had testified regarding marketing issues; on July 13, 2009, Mr. Weinberg wrote an email stating, "I am interested in sharing my work product and getting the benefit of others' work product to win these cases."

Mr. Weinberg and I informally shared information during this time; for example, on July 23,

2009, Mr. Weinberg sent me a report by David Madigan, Ph.D., a biostatistics expert he had

retained; I reviewed the report and informed Mr. Weinberg of certain suggested corrections

based on my own knowledge of the facts and my work with multiple MDL/PSC experts on the

same issues.  (Neither the State of Louisiana nor any other litigant in the MDL cases ultimately

used the Madigan report.)[1]

     5.     The discussions regarding cooperative prosecution of the AG cases resulted in an

agreement to adhere to a "Vioxx MDL 1657 Governmental Action Committee Structure."

Pursuant to that structure, MDL/PSC counsel and attorneys for the government entities agreed to

work cooperatively on the same subcommittees. Of particular relevance to the pending motion,

counsel for the Commonwealth of Pennsylvania, Eric Weinberg, was named as Co-Chair of the

Experts Committee along with MDL/PSC counsel James Dugan and myself; and Pennsylvania

counsel Mark Schultz was named as Co-Chair of the Damages Committee, on which Mr.

Weinberg and I were named as Committee members.

     6.     Shortly after the agreement to implement the committee structure, I prepared and

circulated to the committee a memorandum identifying the experts that had been retained and/or

prepared reports for the PSC as of that time. These included several generic experts from the

MDL trial package, which were equally relevant to the AG cases on issues of failure to warn and

cardiovascular risk. In addition, the memorandum described several additional expert reports that

had already been completed specifically for the AG cases, at substantial expense of time and

expert witness fees.

     7.     The Court ultimately set the *State of Louisiana v. Merck* expert report deadline for

November 6, 2009, and extensive reports were submitted at that time. These included the expert

---

[1] Relevant biostatistics expert opinions developed in the MDL are included in the trial package.

reports developed in the MDL specifically for the AG cases, including those of David Kessler, M.D., former Director of the United States Food and Drug Administration; John MacGregor, M.D., a Professor of Cardiology at the University of California at San Francisco; and David Graham, M.D., a Professor of Medicine at Baylor who specialized in the adverse gastro-intestinal effects of pharmaceuticals. Hundreds of unreimbursed hours, and hundreds of thousands of dollars in unreimbursed costs, were spent by the undersigned and other MDL attorneys in the development of these reports. Additional reports of Jerry Avorn, M.D., and Connie Pechmann, were obtained from the MDL trial package developed through the previous work of PSC counsel, and those were submitted on behalf of the State of Louisiana at the same time.

8.     On November 9, 2009, PSC/MDL counsel met with attorneys for the various government entities at the office of PSC/MDL counsel Shelley Sanford, in Houston, Texas. At that time, PSC/MDL counsel described in some detail the expert reports that had been served on behalf of the State of Louisiana three days earlier. Pennsylvania's counsel, Mr. Weinberg and Mr. Schultz, both asked to receive these expert reports that had been prepared and funded by the MDL/PSC. In order to protect the PSC's work product from unauthorized use, government entity counsel were asked to sign a letter agreement not to use "the common benefit expert reports" in the litigation "until and unless an agreement is reached and/or court order is entered regarding the payment of assessments to contribute to the expense of preparing such reports." (Exhibit 3, filed herewith). During the communications regarding cooperative prosecution of the AG cases, Mr. Weinberg had specifically asked whether he would have access to Dr. Kessler, an important witness who had not been identified in the prior phase of the Vioxx litigation. Counsel for the Commonwealth of Pennsylvania signed the agreement not to use the reports without

compensating the PSC on December 9, 2009 (*Id*).  It is my recollection, consistent with the email

exchange quoted below, that Mr. Dugan's office handled the transmission of the reports to

Pennsylvania's counsel:

> From: James Dugan [mailto:jdugan@dugan-lawfirm.com]
> Sent: Friday, December 11, 2009 11:20 AM
> To: Mark Schultz; Trudy Bryant
> Cc: Douglas Plymale; Shelly Sanford; Don Arbitblit
> Subject: Re: Vioxx agreement not to use the common benefit expert reports
>
> Trudy, please handle this
>
> Sent from my iPhone
>
> On Dec 11, 2009, at 10:14 AM, "Mark Schultz"
> <mark@mschultzlaw.com>
> wrote:
>
> > Here is my signed agreement regarding the LA experts.   The original
> > has been sent to James Dugan's office.  Please forward the expert
> > reports to my new address.  Thanks
> >
> >
> > Mark C. Schultz
> > Schultz Law LLC
> > 8 Tower Bridge
> > 161 Washington St.
> > Suite 400
> > Conshohocken, PA. 19428

9.      Pennsylvania eventually settled its claims against Merck without trial, and its

need to use the PSC-funded expert reports in the litigation was thereby obviated. Nevertheless,

Pennsylvania asked to receive those reports, learned their content, and had the opportunity to

incorporate those experts' opinions into their own assessment of the cases and any reports that

their own experts prepared. Furthermore, Merck obviously knew that the PSC-funded experts

could be available for subsequent trials on behalf of Pennsylvania or other AG plaintiffs

Therefore, Pennsylvania voluntarily sought and received a benefit from the PSC expert reports

- 5 -

and the availability of these experts, and its claims were settled in the context of these prior developments.

10.    The *State of Louisiana v. Merck* case was tried in April 2010. That case resulted in the Court's Conclusion of Law that "Plaintiff failed to satisfy its burden of proving causation because it did not establish at trial that: had it known different facts about Vioxx (a) the State could have established an exclusive formulary; (b) and the State would have established such a formulary and excluded Vioxx from it." (Findings of Fact and Conclusions of Law, Document 45739, Filed 06/29/10, at 38). Despite this Conclusion adverse to the State, the Court's Findings of Fact validated the opinions of the Plaintiff's experts on certain key issues, including the finding that the weight of the evidence supported the conclusion that Vioxx increased cardiovascular risk, rather than the alternative theory espoused by Merck (*Id.*, at 14-18); and that, as Dr. Kessler had testified, "Merck attempted to neutralize concerns that Vioxx was cardiotoxic." (*Id.*, at 36.) These findings, achieved at the expense of substantial investments of unreimbursed time and cost, inherently and inevitably inured to the benefit of all government entities, including the Commonwealth of Pennsylvania, in the subsequent prosecution and/or settlement of their claims against Merck.  Following trial, the expert reports of Plaintiff's witnesses were added to the MDL trial package made available to governmental litigants.

11.    On June 10, 2010, after the *State of Louisiana v. Merck* trial had concluded, Pennsylvania counsel sought information about the expert evidence submitted in that case. Pennsylvania counsel Mark Schultz set a conference call of the cooperative expert committee for the following day,  and Mr. Weinberg sent an email stating, " It would be helpful if possible to get a quick briefing for a couple of minutes on the Louisiana trial expert evidence to start the call tomorrow.

- 6 -

1075116.1

"For example:

1.      The evidence presented on risks/benefits of Vioxx – what was known or knowable, what was not disclosed.

2.      Evidence related to comparator therapy, as alternatives to Vioxx.

3.      The damages evidence

4.      What experts testified about what issues

5.      Merck's defenses.

"Thanks."

Thus the attorneys for Pennsylvania continued to seek the information developed and paid for by MDL/PSC counsel to inform their opinions and assessments of their own case.

12.     The Brief of the Commonwealth of Pennsylvania in this matter asserts that it neither wanted nor benefitted from the MDL trial package. However, as described above, counsel for the Commonwealth voluntarily sought and received a significant portion of the MDL trial package, in the form of the expert reports that it requested from PSC counsel in 2009. Those reports did not merely set forth the experts' opinions, but also identified dozens of key documents and scientific articles that the experts relied upon, and the particular portions of the documents that were relevant to the issues in the case, based upon the collective expenditure of unreimbursed time by MDL/PSC counsel and the experts themselves, as well as the unreimbursed costs referenced above.

13.     Having requested and obtained the MDL/PSC expert reports, and having sought and agreed to a cooperative committee structure to develop evidence for all the government litigants, it is reasonable to conclude that counsel for the Commonwealth expected to benefit and actually did benefit from the substantial expenditure of time and money that the MDL/PSC incurred to develop them.

- 7 -

I declare under penalty of perjury that the foregoing is true and correct, and that this declaration was executed at San Francisco, CA, on January 23, 2013.

_____
Donald C. Arbitblit

- 8 -

# EXHIBIT 1

## LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
## VIOXX GOVERNMENT PAYOR CASES HELD COSTS SUMMARY

| | Books and Subscriptions | Telefax | Postage and FedEx | Printing and Copying | Computerized Research | Telephone | Travel | Experts and consultants | Deposition and court costs | Miscellaneous (assessments) | TOTAL COSTS |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Feb-09 | - | - | - | 63.20 | - | - | - | - | - | - | 63.20 |
| Mar-09 | - | - | - | 293.20 | 255.79 | 106.78 | 3,798.07 | - | - | - | 4,453.84 |
| Apr-09 | - | - | - | 356.80 | 1,221.54 | 241.91 | 5,147.54 | - | - | - | 6,967.79 |
| May-09 | - | - | - | 863.20 | 28.21 | 188.25 | - | - | - | - | 1,079.66 |
| Jun-09 | - | - | - | 295.80 | 1,420.71 | 354.80 | 80.00 | - | - | - | 2,151.31 |
| Jul-09 | - | - | - | 795.20 | 2,102.16 | 590.54 | 70.00 | - | - | - | 3,557.90 |
| Aug-09 | - | - | - | 366.00 | - | 111.84 | 2,283.14 | - | - | 50,000.00 | 52,760.98 |
| Sep-09 | - | - | - | 363.20 | 318.19 | 329.25 | 564.40 | 1,170.00 | - | - | 2,745.04 |
| Oct-09 | - | 5.00 | 31.64 | 582.20 | 547.21 | 608.31 | 10,719.23 | - | - | - | 12,493.59 |
| Nov-09 | - | - | 15.34 | 1,433.60 | 1,457.62 | 240.40 | - | - | - | 50,000.00 | 53,146.96 |
| Dec-09 | - | - | 22.55 | 1,234.60 | 6,062.73 | 331.70 | 6,280.81 | - | - | - | 13,932.39 |
| Jan-10 | - | 11.00 | 160.42 | 3,314.60 | - | 415.54 | - | - | - | - | 3,901.56 |
| Feb-10 | - | 11.00 | 160.42 | 3,314.60 | - | 415.54 | - | - | - | - | 3,901.56 |
| Mar-10 | - | 60.00 | 235.21 | 4,881.00 | 3,847.01 | 1,006.46 | 859.45 | - | 140.00 | 50,000.00 | 61,029.13 |
| Apr-10 | - | 118.00 | 1,639.94 | 5,481.16 | - | 323.72 | 220.05 | - | 5,034.63 | - | 12,817.50 |
| May-10 | 3,989.75 | - | 98.11 | 832.08 | 9,090.95 | 219.64 | 13,956.47 | - | 1,072.45 | - | 29,259.45 |
| Jun-10 | - | - | - | - | - | - | - | - | - | 113,945.00 | 113,945.00 |
| Jul-10 | - | - | - | - | - | - | - | - | - | - | - |
| Aug-10 | - | - | - | - | - | - | 2660.46 | - | - | - | 2,660.46 |
| Sep-10 | - | - | - | - | - | - | 80.00 | - | - | - | 80.00 |
| Oct-10 | - | - | - | - | - | - | 0.00 | 22,000.00 | - | - | 22,000.00 |
| Nov-10 | - | - | - | - | - | - | 11975.48 | - | - | - | 11,975.48 |
| Dec-10 | - | - | - | - | - | - | 21365.61 | - | - | - | 21,365.61 |
| Jan-11 | - | - | - | - | - | - | - | 25,000.00 | - | - | 25,000.00 |
| TOTAL | 3,989.75 | 205.00 | 2,363.63 | 24,470.44 | 26,352.12 | 5,484.68 | 80,060.71 | 48,170.00 | 6,247.08 | 263,945.00 | 461,288.41 |

# EXHIBIT 2

Vioxx Products Liability Litigation Report - MDL 1657

## Lieff, Cabraser, Heimann & Bernstein LLP - Attorney General Time Report

Reporting Period: From Ince[

To:  December 2010

| PARTNER | | | |
|---|---|---|---|
| NAME | HOURS | RATE | TOTAL |
| ELIZABETH CABRASER | 491.25 | $850 | $417,562.50 |
| DONALD ARBITBLIT | 1,896.50 | $750 | $1,422,375.00 |
| PAULINA DO AMARAL | 4.00 | $575 | $2,300.00 |
| ROBERT EISLER | 6.75 | $650 | $4,387.50 |
| STEVEN FINEMAN | 0.75 | $725 | $543.75 |
| WENDY FLEISHMAN | 32.50 | $675 | $21,937.50 |
| LORI ANDRUS | 26.00 | $475 | $12,350.00 |
| HEATHER FOSTER | 1.00 | $510 | $510.00 |
| RACHEL GEMAN | 5.00 | $550 | $2,750.00 |
| HECTOR GERIBON | 24.50 | $475 | $11,637.50 |
| JENNIFER GROSS | 804.50 | $475 | $382,137.50 |
| BARRY HIMMELSTEIN | 0.50 | $675 | $337.50 |
| JONATHAN SELBIN | 0.50 | $650 | $325.00 |
| | | | |
| TOTAL: | 3,293.75 | | $2,279,153.75 |
| ASSOCIATE | | | |
| NAME | HOURS | RATE | TOTAL |
| ELIZABETH CRONISE | 28.75 | $400 | $11,500.00 |
| NIMISH DESAI | 0.50 | $370 | $185.00 |
| DAVID GOLD | 0.50 | $395 | $197.50 |
| SARAH LONDON | 755.00 | $300 | $226,500.00 |

Vioxx - MDL 1657 LCHB - AG Time Report

| ANNIKA MARTIN | 33.25 | $410 | $13,632.50 |
| ANNE SHAVER | 6.00 | $350 | $2,100.00 |
| | | | |
| **TOTAL:** | **824.00** | | **$254,115.00** |
| | | | |

| **LAW CLERK** | | | |
| **NAME** | **HOURS** | **RATE** | **TOTAL** |
| NATHANIEL TORRES | 16.75 | $230 | $3,852.50 |
| | | | |
| **TOTAL:** | **16.75** | | **$3,852.50** |
| | | | |

| **PARALEGAL** | | | |
| **NAME** | **HOURS** | **RATE** | |
| RICHARD ANTHONY | 12.50 | $245 | $3,062.50 |
| DAWN BEHRMANN | 35.25 | $245 | $8,636.25 |
| RACHEL DEMPSEY | 3.00 | $200 | $600.00 |
| SAMUEL DEPUTY | 5.25 | $225 | $1,181.25 |
| ERIN DOWNING | 10.75 | $190 | $2,042.50 |
| ESTELA FANGMAN | 12.25 | $225 | $2,756.25 |
| ROBIN KUPERSMITH | 16.75 | $245 | $4,103.75 |
| JEFFREY LAIS | 6.75 | $190 | $1,282.50 |
| HAZEL MOTTERSHEAD | 19.00 | $235 | $4,465.00 |
| BRENDA PARKER | 2.50 | $245 | $612.50 |
| JESSICA PORTER | 2.00 | $190 | $380.00 |
| EVELYN RODAS | 40.50 | $225 | $9,112.50 |
| JENNIFER RUDNICK | 0.75 | $235 | $176.25 |
| ANNA SCHENKER | 0.25 | $155 | $38.75 |
| DAN SCHUMAN | 194.25 | $245 | $47,591.25 |
| MORRY SILVERFIELD | 0.50 | $235 | $117.50 |
| MEAGAN SULLIVAN | 322.25 | $235 | $75,728.75 |
| RICHARD TEXIER | 3.50 | $245 | $857.50 |

Vioxx - MDL 1657 LCHB - AG Time Report

|  |  |  |  |
|---|---|---|---|
| TOTAL: | 688.00 |  | $162,745.00 |
|  |  |  |  |

| OTHER |  |  |  |
|---|---|---|---|
| NAME | HOURS | RATE | TOTAL |
| SCOTT ALAMEDA | 8.00 | $260 | $2,080.00 |
| WENDY DOLL | 0.50 | $190 | $95.00 |
| ANTHONY GRANT | 11.00 | $260 | $2,860.00 |
| SAT KRIYA KHALSA | 3.25 | $260 | $845.00 |
| JULIETTE KRUSE | 40.75 | $260 | $10,595.00 |
| MAJOR MUGRAGE | 16.50 | $260 | $4,290.00 |
| RENEE MUKHERJI | 27.00 | $210 | $5,670.00 |
| LAURA RUDDY | 1.00 | $260 | $260.00 |
|  |  |  |  |
| TOTAL: | 108.00 |  | $26,695.00 |
|  |  |  |  |
| | MATTER TOTALS | | $2,726,561.25 |

# EXHIBIT 3

# MURRAY LAW FIRM
SUITE 2150 POYDRAS CENTER
650 POYDRAS STREET
NEW ORLEANS, LOUISIANA 70130

STEPHEN B. MURRAY*
STEPHEN B. MURRAY, JR.
JULIE A. ARDOIN**
ARTHUR M. MURRAY
NICOLE IEYOUB-MURRAY
JESSICA W. HAYES
JAMES R. DUGAN, II
JUSTIN BLOOM ****
DOUGLAS R. PLYMALE, Ph.D.
KOREY A. NELSON

  * CERTIFIED AS A SPECIALIST IN
    CIVIL TRIAL ADVOCACY BY THE NATIONAL
    BOARD OF TRIAL ADVOCACY
  ** LICENSED IN LA & MS
  ***LICENSED IN LA & TX
  ****LICENSED IN FL & NY

TELEPHONE 504.648.0180
1.866.328.7670
FAX 504.648.0181
www.murray-lawfirm.com

OF COUNSEL

JOSEPH A RACE
ROBERT J. DILIBERTO***
DAMON A. KIRIN

WILLIAM W. GOODELL, JR., L.L.M.
Energy and Environment

November 16, 2009

**Via E-mail**

Re:     Vioxx MDL 1657- Governmental Action Cases

Dear Counsel:

By signing and returning this letter to my office, to the attention of Trudy Bryant, you agree on behalf of your client that you may not use the common benefit expert reports served on defense counsel on November 6, 2009 in the Louisiana Attorney General Action until and unless an agreement is reached and/or court order is entered regarding the payment of assessments to contribute to the expense of preparing such reports.

Upon receipt of the signed letter, we will send you a CD with the expert reports for your review.

Sincerely,

James Dugan

I agree to the terms stated above. _____

Counsel for _____

Date:_____

Cc:    James Young
       Randy Fox
       Elizabeth Cabraser
       Shelly Sanford
       Dawn Barrios

# EXHIBIT B

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **In re: VIOXX PRODUCTS LIABILITY LITIGATION** | **MDL No. 1657** |
| | **SECTION L** |
| **This Document Relates to:** | |
| *Commonwealth of Pennsylvania by Thomas W. Corbett Jr., Attorney General vs. Merck & Co., Inc.;* **Case No. 09-2861** | **JUDGE ELDON E. FALLON** |
| | **MAGISTRATE JUDGE KNOWLES** |

STATE OF LOUISIANA

PARISH OF ORLEANS

### DECLARATION OF DAWN M. BARRIOS. ESQ.

I, Dawn M. Barrios, declare as follows:

1. I am an attorney and partner in the firm Barrios, Kingsdorf & Casteix, LLP ("BKC"). I have personal knowledge of the matters set forth herein and could testify competently thereto.

2. BKC has devoted significant unreimbursed l e g a l resources to the common benefit of Government Entity plaintiffs in the Vioxx MDL litigation since her directive by the Court on July 11, 2008 to coordinate communication with the state Attorneys General. (Rec. Doc. 15351).  BKC has expended approximately 1,600 hours from my appointment as Government Entity Liaison through December 12, 2012.  None of this time has been compensated in any fashion and all has been submitted properly under Judge Fallon's PreTrial Order #6. BKC has incurred expenses associated with the Attorney General ("AG") matters in the amount of $9,783.95 which are currently outstanding.  (Exhibit A) Additionally, BKC contributed $50,000 to the

-1-

AG common benefit fund to assist with the expenses that were specifically dedicated to the prosecution of the AG cases. *See* Pretrial Order #44). (Exhibit B) BKC's time and expenses for the Government Entity/AG cases were not reimbursed in previous cost distributions.

3. I devoted a significant portion of my time and effort in coordinating the Attorneys General. BKC did not have an AG as a client, so all work I did was devoted strictly to the common benefit of all AGs and their counsel. BKC's records show that approximately 1,600 hours were devoted to the AGs.

4. On March 17, 2009 the claims of the Commonwealth of Pennsylvania ("Commonwealth") were removed and transferred to this MDL.

5. I began all communication with the Commonwealth with Mark Schultz, who was at that time with the firm of Cohen, Placitella & Roth. Mr. Schultz attended a meeting Elizabeth Cabraser and I planned at Ms. Cabraser's firm in New York in May 2009. The purpose of the meeting was to organize the AG cases, to familiarize AG counsel with the contents of the depository kept by the PSC, and to discuss issues common to all the AG cases. Mr. Leonard Davis attended to discuss access to the depository.

6. Beginning July 15, 2008, I held conference calls with the AGs on most Tuesday mornings to discuss the status and movement of the cases.

7. Either Mr. Weinberg, Mr. Coren or Mr. Roth attended and participated in approximately 20 conference calls I held routinely on Tuesdays when the Commonwealth's claims were transferred in the MDL

8. The Order establishing the Government Entities management committee named Mr. Schultz to the Government Action Executive Committee. Pretrial Order # 44.

9.  At some point Mr. Schultz withdrew from this firm and went into solo practice. Thereafter, I then primarily dealt with Michael Coren and Harry Roth of Cohen, Placitella & Roth on the Commonwealth's claims.

10. As the first material given to any AG, I sent a hard copy of document production given to me by Merck to the Commonwealth in April 2009.

11. Eric Weinberg contacted me to assist him in gaining access to the depository on behalf of the Commonwealth. I inquired if he was counsel for the Commonwealth and he said he was; I then requested that he file a Notice of Appearance and sign the requisite confidentiality orders. I do not believe he ever entered a Notice of Appearance for the Commonwealth or signed the confidentiality orders. Subsequently, I confirmed with either Mr. Coren or Mr. Roth that Mr. Weinberg was indeed a counsel for the Commonwealth. In June 2009 I received the PTO 13 certifications from Cohen, Placitella & Roth.

12. I believe that counsel for the Commonwealth joined numerous attorneys in the New Orleans depository in June 2009 for a trial package presentation. Russ Herman, Mr. Davis, Jerry Meunier and Pete Kaufman conducted the presentation for the PSC.

13. There were numerous conversations and/or emails between counsel for the Commonwealth and me or my office on issues specifically concerning the Commonwealth. Some of those dates included December 15, 2009, June 7, 2010, August 7, 2010, September 4, 2010, November 19, 2010, November 22, 2010, January 3, 201, June 22, 2011, June 24, 2011, July 1, 2011, July 2, 2011, July 5, 2011, July 18, 2011, July 22, 2011, August 1, 2011, August 3, 2011, September 15, 2011, September 20, 2011, September 21, 2011, September 29, 2011, September 30, 2011, October 19,

2011, October 31, 2011, November 3, 2011, November 18, 2011, November 21, 2011, November 29, 2011, December 7, 2011, January 24, 2012, January 30, 2012, February 10, 2012, February 28, 2012, March 15, 2012, May 15, 2011, May 16, 2012, June 6, 2012, June 17, 2012, June 19, 2012, August 3, 2012, August 16, 2012, and September 8, 2012.

14. The Commonwealth had input in formulating the Master Discovery directed to Merck and received Merck's responses directed to the Commonwealth.

15. Per a May 2010 Court order (signed 5/11/10) the Commonwealth could receive from the New York Attorney General an electronic and paper copy of the data dictionaries made available to the AGs by Merck in April 2010. (Rec. Doc. 41691).

16. While the lengthy stay was in place during the NAMFCU negotiations, the Commonwealth participated in the formation of requests for documents that was referred to as the "Top Ten" list. Merck provided the documents requested (and allowed by the Special Master after a hearing) to the Commonwealth.

17. Leonard Davis made the PSC depository available to each Attorney General by putting it on a hard drive. The PSC's depository held over one million pages of documents just for the Commonwealth.

18. The Commonwealth did not receive its hard drive copy from Mr. Davis directly, but from another Attorney General. Mr. Weinberg complained to me about the hard drive as he had difficulty searching it so I referred him to another AG who was able to do so. Mr. Weinberg wanted the material in PDF, not TF, format.

19. When a discovery dispute arose, the Commonwealth participated in discovery "hearings" via conference call with the Court and Merck.

-4-

20. Counsel for the Commonwealth attended AG general status conferences with the Court, even those with counsel for the DOJ regarding the NAMFCU settlement.

21. The Commonwealth received IMS data in February, 2011.

22. According to a letter from Merck dated February 4, 2011, it completed the production of custodial files for all Merck personnel identified for the Commonwealth.

23. Mr. Roth attended the July 2011 mediation before Special Master Juneau in New Orleans for the Commonwealth, but it was unsuccessful.

24. At some point in time Mr. Weinberg began associations with counsel for other AGs with cases in the MDL, and, I understand, was added as counsel for some of these other AGs.

25. Every other government entity in the MDL agreed to a common benefit fee for the PSC for all the work and work product produced by the PSC and given them. Those who agreed received a copy of the trial package.

26. The Commonwealth refused to agree to a common benefit fee for the PSC.

27. As Mr. Weinberg was counsel for other AGs and the Commonwealth, it is obvious that Mr. Weinberg had access to and reviewed the trial package. I believe that he must have used information gathered from his representation of other Attorneys General from the trial package in his representation of the Commonwealth.

28. The Commonwealth represented by Mr. Weinberg attended in person at least one meeting to jointly develop experts with members of the PSC in attendance with other government entity counsel. This meeting was held in Houston in June 2010.

29. When Merck updated the depository for the PSC, I received a copy of the updated

-5-

material and made copies for every counsel, including counsel for the Commonwealth. This is the manner in which counsel for the Commonwealth received discovery general to the case and specific to the Commonwealth.

30. I believe Mr. Davis sent the privilege log and those documents deemed not to be privileged to each AG, including the Commonwealth.

31. I helped arrange and schedule one of Merck's IT personnel to meet with the Commonwealth in Pennsylvania to discuss data bases.

32. I believe that counsel for the Commonwealth was afforded the opportunity to review in person many of Merck's databases in a 2 day meeting in Philadelphia.

33. I transmitted all relevant pleadings from the LA AG case to all AGs, including the Commonwealth.

34. Since the Commonwealth selected to be in the first group of cases to go to trial, it received discovery earlier than other AGs. *See* Pretrial Order 39A. I worked with all AGs, including the Commonwealth, in crafting the language of Pretrial Orders 39A and 39 B.

35. Zachary Wool, an associate with my firm, assisted counsel for the Commonwealth and Merck with setting dates for the Commonwealth's and meets and confers with Merck.

36. The Commonwealth received a production of Vioxx related call notes, and weekly notes associated with the Commonwealth's TAC members.

37. The Commonwealth's refrain of its not needing or having any MDL work product is contradicted by the actions of its counsel in participating in the MDL as described above.

38. I declare under penalty of perjury that the foregoing is true and correct.

Dawn M. Barrios

SWORN AND SUBSCRIBED

BEFORE ME, THIS _____ DAY OF JANUARY, 2013.

7403

NOTARY PUBLIC

# EXHIBIT A

**BARRIOS KINGSDORF CASTEIX, LLP**
**VIOXX - AG**
**COURT APPOINTMENT THRU DECEMBER 2012**

| DATE | EXPENSES | ASSESSMENT |
|---|---|---|
| May-09 - Sep-09 | $4,595.57 | |
| Oct-09 | $417.71 | $50,000.00 |
| Nov-09 | $0.50 | |
| Dec-09 | $51.86 | |
| Jan-10 | $23.74 | |
| Feb-10 | $638.78 | |
| Mar-10 | $285.51 | |
| Apr-10 | $366.89 | |
| May-10 | $345.52 | |
| Jun-10 | $330.25 | |
| Jul-10 | $38.67 | |
| Aug-10 | $162.07 | |
| Sep-10 | $708.93 | |
| Oct-10 | $176.49 | |
| Nov-10 | $21.35 | |
| Dec-10 | $337.29 | |
| Jan-11 | $238.33 | |
| Feb-11 | $3.00 | |
| Mar-11 | $38.70 | |
| Apr-11 | $0.08 | |
| May-11 | $255.40 | |
| Jun-11 | $45.35 | |
| Jul-11 | $86.82 | |
| Aug-11 | $144.53 | |
| Sep-11 | $1.50 | |
| Oct-11 | $36.57 | |
| Nov-11 | $22.75 | |
| Dec-11 | $2.75 | |
| Jan-12 | $75.12 | |
| Feb-12 | $94.25 | |
| Mar-12 | $29.00 | |
| Apr-12 | $85.62 | |
| May-12 | $16.45 | |
| Jun-12 | $54.55 | |
| Jul-12 | $1.00 | |
| Aug-12 | $0.00 | |
| Oct-12 | $12.25 | |
| Nov-12 | $8.50 | |
| Dec-12 | $30.30 | |
| **TOTAL** | **$9,783.95** | **$50,000.00** |

# EXHIBIT B

BARRIOS, KINGSDORF & CASTEIX, L.L.P.
**OPERATING ACCOUNT**

9730

| VENDOR: Vioxx MDL Governmental Actions Litigation Fund | | | | CHECK NO: 9730 | |
|---|---|---|---|---|---|
| OUR REF. NO. | YOUR INVOICE NUMBER | INVOICE DATE | INVOICE AMOUNT | AMOUNT PAID | DISCOUNT TAKEN |
| 16337 | assessment | 10/29/2009 | 50,000.00 | $50,000.00 | $0.00 |
| | Assessment – Barrios, Kingsdorf & Casteix, LLP | | | | |

9730

**BARRIOS, KINGSDORF
& CASTEIX, L.L.P.**
OPERATING ACCOUNT
701 POYDRAS ST. SUITE 3650
NEW ORLEANS, LA 70139-3650

CAPITAL ONE, N.A.
14-9-650

| | CHECK NO. | CHECK DATE | VENDOR NO. |
|---|---|---|---|
| | 9730 | 10/29/2009 | VIOXAG |

PAY

CHECK AMOUNT

Fifty thousand and NO/100

$50,000.00

TO THE
ORDER
OF

Vioxx MDL Governmental Actions Litigation Fund

Attn: James Dugan
Murray Law Firm
650 Poydras St.

⑃"009730"

BARRIOS, KINGSDORF & CASTEIX, L.L.P.
**OPERATING ACCOUNT**

9730

Vioxx MDL Governmental Actions Litigation Fund                              9730

| 16337 | assessment | 10/29/2009 | 50,000.00 | $50,000.00 | $0.00 |
|---|---|---|---|---|---|
| | Assessment – Barrios, Kingsdorf & Casteix, LLP | | | | |

DELUXE BUSINESS FORMS 1+800-328-0304 www.deluxeforms.com

# EXHIBIT C

## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: VIOXX PRODUCTS LIABILITY LITIGATION | MDL No. 1657 |
| | SECTION L |
| This Document Relates to: | JUDGE ELDON E. FALLON |
| All Actions | MAGISTRATE JUDGE KNOWLES |

STATE OF LOUISIANA

PARISH OF ORLEANS

### DECLARATION OF JAMES R. DUGAN, II

I, James R. Dugan, declare as follows:

1.      I am an attorney and member in the Dugan Law Firm (DLF).  I have personal knowledge of the matters set forth herein and could testify competently thereto.

2.      DLF and other PSC firms have devoted significant unreimbursed resources to the common benefit of Government Entity plaintiffs in the Vioxx Litigation. DLF alone has contributed unreimbursed common benefit time of approximately 3000 hours, as well as unreimbursed common benefit costs of  approximately $350,000.00, that were specifically dedicated to the prosecution of the AG cases. DLF's time and expenses for the Government Entity (GE) cases were not considered and were not reimbursed in previous fee allocations or cost distributions.

3.      On August 5, 2005 I filed the first governmental action case in the Civil District court for the Parish of Orleans; *State of Louisiana, ex re. James D. Caldwell,*

1

*Attorney General v. Merck & Co., Inc., Civil Action,* 2:05-cv-03700. The case was removed to the EDLA and the Vioxx MDL.

4.    From its inception into the MDL, I pushed the LA - AG case towards trial by filing a Motion to Consolidate the LA- AG and the Louisiana Blue Cross cases for trial, serving and answering discovery, arguing the motion to consolidate, securing experts and working with the PSC on common discovery.

5.    On July 9, 2009, the court entered PTO 44 appointing the Governmental Action committee to coordinate and prosecute the cases. I was appointed as co-chair of the committee.

6.    On July 10, 2009, the GA committee had a conference call where the various attorneys voiced their requests to be part of the internal working committee. I organized and assigned the various requests.

7.    Mr. Weinberg and Mr. Schutz are counsel for the PA AG.

8.    Mr. Weinberg was appointed to the MDL GA expert committee as a co chair with myself and Mr. Schultz co-chaired the damages committee.

9.    The GA committee agreed that we would set up a MDL common benefit expenses fund and that the attorneys would pay in assessments for payment of the common benefit expenses. Common benefit assessments were collected in the amount of $679,916.01. (Ex. A)

10.    Mr. Weinberg and Mr. Shultz participated in various MDL GA meetings and conference calls. (Ex. B)

11.    Following the selection of the State of Louisiana case as a bellwether for trial, a series of discussions took place between counsel for the various public entities to coordinate the AG plaintiff's efforts.

12.    Shortly after the agreement to implement the committee structure Mr. Arbitblit prepared and circulated to the committee a memo identifying the experts that

2

had been retained and/or prepared reports for the PSC as of that time. These included several generic experts form the MDL trial package, which were equally relevant to the AG cases on the issues of failure to warn and cardio vascular risk. In addition, the memorandum described several additional expert reports that had already been complete specifically for the AG cases, at substantial expense of time and expert witness fees. Hundreds of unreimbursed hours, and hundreds of thousands in unreimbursed costs were spent by Mr. Arbitblit and other MDL attorneys in the development of these reports. Additional reports of Jerry Avorn, M.D. and Connie Pechmann were obtained from the MDL trial package developed by the previous work of PSC counsel, and those were submitted on behalf of the State of Louisiana at the same time.

13.    I hired Dr. David Kessler as the FDA expert, Dr. John Abramson as the marketing expert and Terry Leach as the P&T committee expert. Each submitted reports in the LA AG case.

14.    The Court ultimately set the State of Louisiana v. Merck expert report deadline for November 6, 2009 and extensive reports were submitted at that time. These included reports developed in the MDL specifically for the AG cases including those of Davis Kessler, M,D., former Director of the US Food and Drug Administration; John McGregor, M.D., a Professor of Cardiology at the University of California, San Francisco.

15.    On November 9, 2009, PSC/MDL counsel met with attorneys for the various government entities at the office of PSC/MDL counsel Shelley Sanford, in Houston, Texas. At that time, PSC/MDL counsel described in some detail the expert reports that had been served on behalf of the State of Louisiana three days earlier. Pennsylvania's counsel, Mr. Weinberg and Mr. Schultz, both asked to receive these expert reports that had been prepared and funded by the MDL/PSC. In order to protect the PSC's work product from unauthorized use, government entity counsel were asked

to sign a letter agreement not to use "the common benefit expert reports" in the litigation "until and unless an agreement is reached and/or court order is entered regarding the payment of assessments to contribute to the expense of preparing such reports." During the communications regarding cooperative prosecution of the AG cases, Mr. Weinberg had specifically asked whether he would have access to Dr. Kessler, an important witness who had not been identified in the prior phase of the Vioxx litigation. Counsel for the Commonwealth of Pennsylvania signed the agreement not to use the reports without compensating the PSC on December 9, 2009 *(Id)*. I handled the exchange of these reports and Mr. Weinberg's signed agreement: (Ex. C)

> From: James Dugan [mailto:jdugan@dugan-
> lawfirm.com] Sent: Friday, December 11, 2009
> 11:20 AM
> To: Mark Schultz; Trudy Bryant
> Cc: Douglas Plymale; Shelly Sanford; Don Arbitblit
> Subject: Re: Vioxx agreement not to use the common benefit expert
> reports
>
> Trudy, please handle this
>
> Sent from my iPhone
> On Dec 11, 2009, at 10:14 AM, "Mark Schultz"
> <mark@mschultzlaw.com>
> wrote:
> > Here is my signed agreement regarding the LA experts.   The original
> >has been sent to James Dugan's office.  Please forward the expert
> > reports to my new address.  Thanks
> >
> >
> > Mark C. Schultz
> > Schultz Law LLC
> > 8 Tower Bridge
> > 161 Washington St.
> >Suite 400
> > Conshohocken, PA. 19428

16.     Pennsylvania eventually settled its claims against Merck without trial, and its need to use the PSC-funded expert reports in the litigation was thereby obviated. Nevertheless, Pennsylvania asked to receive those reports, learned their content, and had the opportunity to incorporate those experts' opinions into their own assessment of the cases and any reports that their own experts prepared. Furthermore, Merck obviously knew that the PSC-funded experts could be available for subsequent trials on behalf of Pennsylvania or other AG plaintiffs. Therefore, Pennsylvania voluntarily sought and received a benefit from the PSC expert reports and the availability of these experts, and its claims were settled in the context of these prior developments.

17.     The State of Louisiana v. Merck case was tried in April 2010. That case resulted in the Court's  Conclusion of Law that "Plaintiff failed to satisfy its burden of proving causation because it did not establish at trial that: had it known different facts about Vioxx (a) the State could have established an exclusive formulary; (b) and the State would have established such a formulary and excluded Vioxx from it." (Findings of Fact and Conclusions of Law, Document 45739, Filed 06/29/10, at 38). Despite this Conclusion adverse to the State, the Court's  Findings of Fact validated the opinions of the Plaintiff's experts on certain key issues, including the finding that the weight of the evidence supported the conclusion that Vioxx increased cardiovascular  risk, rather than the alternative theory espoused by Merck (Id, at 14-18); and that, as Dr. Kessler had testified, "Merck attempted to neutralize concerns that Vioxx was cardiotoxic." (Id, at 36.) These findings, achieved at the expense of substantial investments of unreimbursed time and cost, inherently and inevitably inured to the benefit of all government entities, including the Commonwealth of Pennsylvania, in the subsequent prosecution and/or settlement of their claims against Merck.  Following trial, the expert reports of Plaintiffs

5

witnesses were added to the MDL trial package made available to governmental litigants.

18.    On June 10, 2010, after the State of Louisiana v. Merck trial had concluded, Pennsylvania counsel sought information about the expert evidence submitted in that case. Pennsylvania counsel Mark Schultz set a conference call of the cooperative expert committee for the following day, and Mr. Weinberg sent an email stating, " It would be helpful if possible to get a quick briefing for a couple of minutes on the Louisiana trial expert evidence to start the call tomorrow.

"For example:
1.    The evidence presented on risks/benefits of Vioxx- what was known or knowable, what was not disclosed.

2.    Evidence related to comparator therapy, as alternatives to Vioxx.

3.    The damages evidence

4.    What experts testified about what issues

5.    Merck's defenses.

"Thanks."

Thus the attorneys for Pennsylvania continued to use the information developed and paid for by MDL/PSC counsel to inform their opinions and assessments of their own case.

19.    The Brief of the Commonwealth of Pennsylvania in this matter asserts that it neither wanted nor benefitted from the MDL trial package. However, as described above, counsel for the Commonwealth voluntarily sought and received a significant portion of the MDL trial package, in the form of the expert reports that it requested from PSC counsel in 2009. Those reports did not merely set forth the experts' opinions, but also identified dozens of key documents and scientific articles

6

that the experts relied upon, and the particular portions of the documents that were relevant to the issues in the case, based upon the collective expenditure of unreimbursed time by MDL/PSC counsel and the experts themselves, as well as the unreimbursed costs referenced above.

20.     DLF took the lead on creating MDL-GA trial package (Ex. D)

21.     All GA plaintiffs, including PA had access to the trial package which was located in the MDL depository at Herman Herman and Katz.

22.     Having requested and obtained the MDL/PSC expert reports, and having sought and agreed to a cooperative committee structure to develop evidence for all the government litigants, it is reasonable to conclude that counsel for the Commonwealth expected to benefit and actually did benefit from the substantial expenditure of time and money that the MDL/PSC incurred to develop them.


I declare under penalty of perjury that the foregoing is true and correct.


James R. Dugan, II



SWORN AND SUBSCRIBED

BEFORE ME, THIS 24ᵗʰ DAY OF JANUARY, 2013.



     NOTARY PUBLIC

Chad J. Primeaux
LA Bar # 30024
my commission expires with life


7

## VIOXX MDL GOVERNMENTAL ACTION LITIGATION FUND CHECKS

### Export

| | Amount | Check# | Payment Date | Notes | OUTSTANDING |
|---|---|---|---|---|---|
| Neil Jude | $42,600.00 | 1153 | 9/2/2009 | Typing | |
| | $35,650.00 | 1165 | 12/1/2009 | Inv 2/8/10 | |
| David Graham | $500.00 | 1155 | 9/24/2009 | Typing | |
| David Graham | $36,910.00 | 1168 | 4/8/2010 | | |
| | $16,222.50 | 1169 | 4/25/2010 | 1/2 of Inv dated 12 21 09 | |
| | $16,222.50 | 1176 | 6/17/2010 | | |
| Douglas Zipes | $46,920.00 | 1151 | 9/2/2009 | | |
| John Abramson | $92,125.00 | 1162 | 12/1/2009 | | $96,994.61 |
| David Graham | $27,000.00 | 1163 | 12/1/2009 | | |
| David Graham | $25,000.00 | 1159 | 11/5/2009 | paid by cabraster | |
| Nicolas P. Jewell | $4,000.00 | 1164 | 12/1/2009 | | |
| Nicolas P. Jewell | $4,200.00 | 1171 | 4/23/2010 | Inv NJ103 and NJ110 | |
| David Kessler | $16,000.00 | 1167 | 2/1/2010 | | |
| David Kessler | $46,250.00 | 1158 | 11/2/2009 | | |
| Mary Ellis | $1,530.00 | 1157 | 10/12/2009 | | |
| David Kessler | $50,000.00 | 1156 | 10/12/2009 | | |
| David Kessler | $7,000.00 | 1168 | 2/18/2010 | | |
| David Kessler | $98,504.59 | 5693 | 6/15/2010 | | |
| Terry Leach | $1,000.00 | 1004 | 11/19/2009 | | |
| Terry Leach | $2,500.00 | 1003 | 11/18/2009 | Retainer | |
| Richard Kormnal | $2,250.00 | 1170 | 4/8/2010 | 2 invoices | |
| John MacGregor | $33,032.00 | 1177 | 6/17/2010 | | |
| John MacGregor | $41,331.50 | 1177 | | | |
| Mary Ellis | $310.00 | 1154 | 9/10/2009 | | |
| Mary Ellis | $498.00 | 1161 | 11/12/2010 | | |
| Mary Ellis | $185.50 | 1166 | 11/12/2010 | | |
| James Decresuenzo Reporting | $11,745.65 | 1187, 1179 | 8/26/10,6/17/10 | Multiple invoices | |
| Gokow technology | $50,000.00 | 1185 | 8/20/2010 | | |
| Gokow technology | $7,116.15 | 1185 | | Multiple Invoices | |
| Gokow technology | $5,246.15 | 1186 | 8/26/2010 | | |
| Karen Ilios | $5,351.50 | 1174 | | | |
| Jensen Reporting | $4,230.81 | 1180 | | | |
| Contiemnal Court Reporters | $4,181.72 | 1181 | 6/17/2010 | | |
| Tsn Doyle Tuna, COR, FCRR | $4,295.10 | 1175 | 6/17/2010 | 3invoices | |
| Cura Kovak& Bell | $4,242.76 | 1178 | | | |
| Houston Reporting Services | $5,893.76 | 1183 | | | |
| VenueDocket | $804.28 | 1184 | | | |
| Brittany Illana | $890.00 | 1165 | 10/22/2009 | Typing | |
| Total | $879,816.01 | | | | $4,168.25  multi |

### ASSESSMENT CHECKS

| | Amount | Check # | Date |
|---|---|---|---|
| Law office of Robinson, Calcagine & Robinson, Inc. | $50,000.00 | 38228 | 11/12/2009 |
| Shelly A Sanford, PLLC | $50,000.00 | 2009 | 11/2/2009 |
| Barrios, Kingsdorf & Ciastss, LLP | $50,000.00 | 9730 | |
| Lieff, Cabraser, Heimann & Bernstein, LLP | $50,000.00 | 735533 | 8/051/2009 |
| | $50,000.00 | 74075 | 11/02/2009 |
| | $113,845.00 | 76428 | 3/06/2010 |
| | $50,000.00 | 4097 | 6/13/2010 |
| The Dugan Law Firm | $50,000.00 | 5463 | 9/1/2009 |
| | $500.00 | | 7/22/2009 |
| | $50,000.00 | 5526 | 11/02/2009 |
| | $50,000.00 | 5521 | 10/19/2009 |
| | | 5692 | 9/15/2010 |
| Total | $115,000.00 | | $102,762.86 |


EXHIBIT A

**James Dugan**

**EXHIBIT**

**B**

| | |
|---|---|
| From: | Mark Schultz <mark@mschultzlaw.com> |
| Sent: | Tuesday, November 24, 2009 9:16 AM |
| To: | Fox, Randall (NYC); Dawn Barrios; Alex Barlow ; Ashley Davis ; Bill Rossbach; Bruce Kingsdorf; Chris Tisi ; Chris Tisi ; Christopher McDonald ; Clark Trout; Dave Vermont; David Dickens ; David Stallard ; David Ward ; Diane Paolicelli; Don Arbitblit; Douglas Plymale; Eric H. Weinberg; Evan M. Janush; James Dugan; James Fosler; James Young ; John Low-Beer; Joseph W. Steele; Bloom, Justin; Kay Hanson; Kenneth Lougee ; Kristen Johnson Parker; Laura Daugherty ; Melissa Stewart; Michael Miller ; Patrick J. Coughlin ; Pete Kaufman; Robert C. Morton; Roxanne DeFrancesco; Russell Kent; Scott Palmer ; Seth Lesser; Sheila Bossier ; Shelly Sanford ; Stephen B. Murray, Sr.; Stephen Murray, Jr.; Steve W. Berman ; Stuart Kritzer; Tom Sobol; Trish Conners; Trudy Bryant; Vince McKnight |
| Cc: | Elizabeth J. Cabraser; Shelly Sanford |
| Subject: | RE: MPFs and FACTS |

Are there equivalent documents for PBMs?

Mark C. Schultz
Schultz Law LLC
8 Tower Bridge
161 Washington St.
Suite 400
Conshohocken, PA. 19428
610 828 0700 phone
610 633 1144 cell

---

**From:** Fox, Randall (NYC) [mailto:Randall.Fox@oag.state.ny.us]
**Sent:** Friday, November 20, 2009 4:17 PM
**To:** Mark Schultz; Dawn Barrios; Alex Barlow ; Ashley Davis ; Bill Rossbach; Bruce Kingsdorf; Chris Tisi ; Chris Tisi ; Christopher McDonald ; Clark Trout; Dave Vermont; David Dickens ; David Stallard ; David Ward ; Diane Paolicelli; Don Arbitblit; Douglas Plymale; Eric H. Weinberg; Evan M. Janush; James Dugan ; James Fosler; James Young ; John Low-Beer; Joseph W. Steele; Justin Bloom ; Kay Hanson; Kenneth Lougee ; Kristen Johnson Parker; Laura Daugherty ; Melissa Stewart; Michael Miller ; Patrick J. Coughlin ; Pete Kaufman; Robert C. Morton; Roxanne DeFrancesco; Russell Kent; Scott Palmer ; Seth Lesser; Sheila Bossier ; Shelly Sanford ; Stephen B. Murray, Sr.; Stephen Murray, Jr.; Steve W. Berman ; Stuart Kritzer; Tom Sobol; Trish Conners; Trudy Bryant; Vince McKnight
**Cc:** Elizabeth J. Cabraser; Shelly Sanford
**Subject:** RE: MPFs and FACTS

Mark & everyone else:

Based on our look at the MPFs and FACTS and from an earlier e-mail from Mark, we understand that the MPF and FACTS productions have at least the deficiencies set out below. Please respond if you have identified additional deficiencies and we will include them in a letter to Merck's counsel.

- The MPFs relate to a small percentage of healthcare professionals who prescribed Vioxx for populations covered by our respective claims.
- The MPFs and their attachments are not in native format, thereby impairing our ability to review and use them.
- The information in the FACTS data provided is limited to a small percentage of the healthcare professionals who prescribed Vioxx for populations covered by our respective claims.
- There are numerous redactions in the data provided with the MPFs and in the select FACTS data that obscure the meanings of the text (e.g., a call note reporting on comparing Vioxx to some other drug the name of which is redacted).

1

- The MPFs and the select FACTS data is limited in time and does not, for example include call-note information from after 2002.
- The MPFs and select FACTS data do not include any information about the targeting of healthcare providers for promotion of Vioxx, even the small number of providers for whom information is given.
- The MPFs and the select FACTS data do not give any information about the grades and flags that Merck applied to healthcare providers for purposes of marketing Vioxx, even for the small number of providers for whom information is given.

Thanks very much,
Randy

Randall M. Fox
Special Assistant Attorney General
Office of the New York Attorney General
Medicaid Fraud Control Unit
120 Broadway
New York, New York 10271
T: 212-417-5390
F: 212-417-5335
E-mail: Randall.Fox@oag.state.ny.us

---

**From:** Mark Schultz [mailto:mark@mschultzlaw.com]
**Sent:** Wednesday, November 11, 2009 5:13 PM
**To:** Dawn Barrios; Alex Barlow ; Ashley Davis ; Bill Rossbach; Bruce Kingsdorf; Chris Tisi ; Chris Tisi ; Christopher McDonald ; Clark Trout; Dave Vermont; David Dickens ; David Stallard ; David Ward ; Diane Paolicelli; Don Arbitblit; Douglas Plymale; Eric H. Weinberg; Evan M. Janush; James Dugan ; James Fosler; James Young ; John Low-Beer; Joseph W. Steele; Justin Bloom ; Kay Hanson; Kenneth Lougee ; Kristen Johnson Parker; Laura Daugherty ; Melissa Stewart; Michael Miller ; Patrick J. Coughlin ; Pete Kaufman; Fox, Randall (NYC); Robert C. Morton; Roxanne DeFrancesco; Russell Kent; Scott Palmer ; Seth Lesser; Sheila Bossier ; Shelly Sanford ; Stephen B. Murray, Sr.; Stephen Murray, Jr.; Steve W. Berman ; Stuart Kritzer; Tom Sobol; Trish Conners; Trudy Bryant; Vince McKnight
**Cc:** Elizabeth J. Cabraser; Lenny Davis
**Subject:** MPFs and FACTS

I have briefly looked at the MPFs and FACTs produced to us on the hard drive and CD.

The hard drive with MPFs is ALL all single-page TIF images, mostly of spreadsheet printouts, with no OCR or searchable data at all. For the most part, it consists of images of the actual profile form for a particular plaintiff's case, followed by images of spreadsheet printouts listing things like dates of detail calls, notes from those calls, Dear Doctor letters sent, samples dropped off.

The CD with the FACTS is more useful.  It is in MS Access.  As predicted, this is only doctors treating patients who brought PI cases.  How can we move the ball to request all  doctors in our states?  Merck points out that this information is collected for business purposes, so it ought to be available easily.

Questions:

1.  How can we move the ball to expand the Dr. database to include all the doctors in our states?

2.  How are FL, NY, TX and LA organizing the FACTS?

2

3.    What are you doing if anything to make the MPFs searchable?

Mark C. Schultz
Schultz Law LLC
8 Tower Bridge
161 Washington St.
Suite 400
Conshohocken, PA. 19428
610 828 0700 phone
610 633 1144 cell

**James Dugan**

| | |
|---|---|
| **From:** | Douglas Plymale |
| **Sent:** | Monday, November 23, 2009 11:08 AM |
| **To:** | Fox, Randall (NYC); James Young |
| **Cc:** | James Dugan |
| **Subject:** | RE: Market Forecast 30(b)(6) request initiated by Mark Schultz |

There has been no discussion.  I will check to see if there was a written response from Merck.

**From:** Fox, Randall (NYC) [mailto:Randall.Fox@oag.state.ny.us]
**Sent:** Monday, November 23, 2009 10:51 AM
**To:** Douglas Plymale; James Young
**Subject:** FW: Market Forecast 30(b)(6) request initiated by Mark Schultz

Doug – My recollection is that the 30(b)(6) notice requested by Mark Schultz was served through your firm and that there was pushback from Merck, but I don't have the details or know the status.  Can you let me know when this was served and what discussion there was with Merck.  If there was correspondence, I would appreciate copies.

Thanks very much,
Randy

Randall M. Fox
Special Assistant Attorney General
Office of the New York Attorney General
Medicaid Fraud Control Unit
120 Broadway
New York, New York  10271
T:  212-417-5390
F:  212-417-5335
E-mail:  Randall.Fox@oag.state.ny.us

**From:** Mark C. Schultz [mailto:mschultz@cprlaw.com]
**Sent:** Thursday, September 17, 2009 2:03 PM
**To:** 'Bloom, Justin'; James Dugan; Fox, Randall (NYC)
**Cc:** James Young; Dawn Barrios; Douglas Plymale; Elizabeth J. Cabraser; James Dugan; bill@rossbachlaw.com; cth@lanierlawfirm.com; Cvtisi@aol.com; ctisi@ashcraftlaw.com; cmcdonald@labaton.com; ddickens@doctoratlaw.com; drstallard@msn.com; DPaolicelli@lpklaw.com; Douglas Plymale; jfosler@foslerlawgroup.com; james.young@myfloridalegal.com; JLowBeer@law.nyc.gov; jwsteele5@att.net; kennethlougee@att.net; Mark C. Schultz; wml@lanierlawfirm.com; mlg@garretsonfirm.com; MStewart@lpklaw.com; patc@csgrr.com; Fox, Randall (NYC); rdm@lanierlawfirm.com; RDeFrancesco@lpklaw.com; slesser@klafterolsen.com; sbossier@bossier-law.com; ssanford@sanfordpinedo.com; steve@hbsslaw.com; stuart@kritzer.com; vmcknight@ashcraftlaw.com; ECABRASER@lchb.com; DBarrios@bkc-law.com; tom@hbsslaw.com; kristenjp@hbsslaw.com
**Subject:** RE: Market Forecast

OK.  I think this covers the proposed changes.  Let me know if you think we need anything further.

1

**From:** Bloom, Justin [mailto:jbloom@dugan-lawfirm.com]
**Sent:** Wednesday, September 16, 2009 6:11 PM
**To:** James Dugan; Fox, Randall (NYC)
**Cc:** Mark C. Schultz; James Young; Dawn Barrios; Douglas Plymale; Elizabeth J. Cabraser; Bloom, Justin
**Subject:** RE: Market Forecast

I can get this out tomorrow – Lenny's assistant asks that we get filings to her by 2pm.  Can you please send me a final copy?

Justin Bloom, Esq.
Murray Law Firm
650 Poydras Street, Suite 2150
New Orleans, Louisiana 70130
Cell: (917) 991-7593
Office: (504) 648-1851
Fax: (504) 648-0181
jbloom@dugan-lawfirm.com

*Electronic Mail Confidentiality Notice*
*This electronic mail message and all attachments may contain confidential information belonging to the sender which is protected by the attorney-client privilege. The information is intended only for the use of the individual or entity named above. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution (electronic or otherwise), forwarding or the taking of any action in reliance on the contents of this information is strictly prohibited. If you have received this electronic transmission in error, please immediately notify us by telephone, facsimile, or e-mail to bloomesq1@gmail.com to arrange for return of the electronic email, attachments, or documents.*

---

**From:** James Dugan
**Sent:** Wednesday, September 16, 2009 4:48 PM
**To:** Fox, Randall (NYC)
**Cc:** Mark C. Schultz; James Young; Dawn Barrios; Douglas Plymale; Elizabeth J. Cabraser; Bloom, Justin
**Subject:** Re: Market Forecast

Justin has been handling this. We will get out tomorrow
Sent from my iPhone

On Sep 16, 2009, at 3:35 PM, "Fox, Randall (NYC)" <Randall.Fox@oag.state.ny.us> wrote:ng

I think we can Mark.  Could you make the revisions Don suggested and re-circulate.

FYI - I'm out of pocket after today, returning on Tuesday.

R.

Randall M. Fox

Special Assistant Attorney General

Office of the New York Attorney General

Medicaid Fraud Control Unit

120 Broadway

New York, New York  10271

T:  212-417-5390

F:  212-417-5335

E-mail:  Randall.Fox@oag.state.ny.us

---

**From:** Mark C. Schultz [mailto:mschultz@cprlaw.com]
**Sent:** Tuesday, September 15, 2009 10:21 AM
**To:** 'Arbitblit, Donald C.'; Dawn Barrios; Ashley Davis ; Bill Rossbach; Bruce Kingsdorf; Chris Tisi ; Chris Tisi ; Christopher McDonald ; Clark Trout; Dave Vermont; David Dickens ; David Stallard ; David Ward ; Diane Paolicelli; Douglas Plymale; Eric H. Weinberg; Evan M. Janush; James Dugan ; James Fosler; James Young ; John Low-Beer; Joseph W. Steele; Justin Bloom ; Kay Hanson; Kenneth Lougee ; Kristen Johnson Parker; Laura Daugherty ; Melissa Stewart; Michael Miller ; Patrick J. Coughlin ; Pete Kaufman ; Fox, Randall (NYC); Robert C. Morton; Roxanne DeFrancesco; Russell Kent; Scott Palmer ; Seth Lesser; Sheila Bossier ; Stephen B. Murray, Sr.; Stephen Murray, Jr.; Steve W. Berman ; Stuart Kritzer; Tom Sobol; Trish Conners; Trudy Bryant; Vince McKnight ; Shelly Sanford ; Shelly Sanford
**Cc:** Eric H. Weinberg; Chris Placitella
**Subject:** RE: Market Forecast


Any other comments?  Can we get this ready for service on Merck and press for a date?


Mark C. Schultz, Esquire

Cohen, Placitella & Roth

2001 Market Street

Suite 2900

Philadelphia, PA 19103

215.567.3500

3

**CONFIDENTIALITY NOTICE:**

This message is confidential and may contain attorney-work product, attorney-client communications, and other privileged information. Only the person to whom it is addressed should read or use it. If you are not the intended recipient, please notify us by replying to the sender or calling us at (888) 375-7600. Then please delete this message immediately; no copying, forwarding, or other use is allowed.

---

**From:** Arbitblit, Donald C. [mailto:darbitblit@lchb.com]
**Sent:** Thursday, September 10, 2009 5:28 PM
**To:** Mark C. Schultz; Dawn Barrios; Ashley Davis ; Bill Rossbach; Bruce Kingsdorf; Chris Tisi ; Chris Tisi ; Christopher McDonald ; Clark Trout; Dave Vermont; David Dickens ; David Stallard ; David Ward ; Diane Paolicelli; Douglas Plymale; Eric H. Weinberg; Evan M. Janush; James Dugan ; James Fosler; James Young ; John Low-Beer; Joseph W. Steele; Justin Bloom ; Kay Hanson; Kenneth Lougee ; Kristen Johnson Parker; Laura Daugherty ; Melissa Stewart; Michael Miller ; Patrick J. Coughlin ; Pete Kaufman; Randall Fox; Robert C. Morton; Roxanne DeFrancesco; Russell Kent; Scott Palmer ; Seth Lesser; Sheila Bossier ; Stephen B. Murray, Sr.; Stephen Murray, Jr.; Steve W. Berman ; Stuart Kritzer; Tom Sobol; Trish Conners; Trudy Bryant; Vince McKnight ; Shelly Sanford ; Shelly Sanford
**Subject:** RE: Market Forecast

Mark,

This looks good. Two minor comments:

1. Paragraph 2 of the "Subject Matter" description appears to be missing the topic of the research, which I assume to be "Market Forecasting," and which you may want to specify in that paragraph.

2. Paragraph 5 of the deposition subject matter refers to the effect of safety information not already in the label; you may want to either add to that or draft a new, parallel paragraph addressed to Merck's analysis of the effect of the location/placement of safety information, i.e., warning section v. precaution section of the label. Placement in the precaution rather than warning section was a very big ticket item for Merck.

Don

---

**From:** Mark C. Schultz [mailto:mschultz@cprlaw.com]
**Sent:** Thursday, September 10, 2009 2:19 PM
**To:** 'Dawn Barrios'; Ashley Davis ; Bill Rossbach; Bruce Kingsdorf; Chris Tisi ; Chris Tisi ; Christopher McDonald ; Clark Trout; Dave Vermont; David Dickens ; David Stallard ; David Ward ; Diane Paolicelli; Arbitblit, Donald C.; Douglas Plymale; Eric H. Weinberg; Evan M. Janush; James Dugan ; James Fosler; James Young ; John Low-Beer; Joseph W. Steele; Justin Bloom ; Kay Hanson; Kenneth Lougee ; Kristen Johnson Parker; Laura Daugherty ; Melissa Stewart; Michael Miller ; Patrick J. Coughlin ; Pete Kaufman; Randall Fox; Robert C. Morton; Roxanne DeFrancesco; Russell Kent; Scott Palmer ; Seth Lesser ; Sheila Bossier ; Stephen B. Murray, Sr.; Stephen Murray, Jr.; Steve W. Berman ; Stuart Kritzer; Tom Sobol; Trish Conners; Trudy Bryant; Vince McKnight ; Shelly Sanford ; Shelly Sanford
**Subject:** Market Forecast

here is the market forecast deposition we prepared.   Please prepare comments so we can serve on behalf of the whole group.  We feel this will help us prove damages.


Mark C. Schultz, Esquire

Cohen, Placitella & Roth

2001 Market Street

Suite 2900

Philadelphia, PA 19103

215.567.3500

**CONFIDENTIALITY NOTICE:**

This message is confidential and may contain attorney-work product, attorney-client communications, and other privileged information. Only the person to whom it is addressed should read or use it. If you are not the intended recipient, please notify us by replying to the sender or calling us at (888) 375-7600. Then please delete this message immediately; no copying, forwarding, or other use is allowed.

**MURRAY LAW FIRM**
SUITE 2150 POYDRAS CENTER
650 POYDRAS STREET .
NEW ORLEANS, LOUISIANA 70130

STEPHEN B. MURRAY*
STEPHEN B. MURRAY, JR.
JULIE A. ARDOIN**
ARTHUR M. MURRAY
NICOLE IEYOUB-MURRAY
JESSICA W. HAYES
JAMES R. DUGAN, II
JUSTIN BLOOM ****
DOUGLAS R. PLYMALE, Ph.D.
KOREY A. NELSON

TELEPHONE 504.648.0180
1.866.328.7670
FAX 504.648.0181
www.murray-lawfirm.com

OF COUNSEL

JOSEPH A RACE
ROBERT J. DILIBERTO***
DAMON A. KIRIN

WILLIAM W. GOODELL, JR., L.L.M.
Energy and Environment

* CERTIFIED AS A SPECIALIST IN
  CIVIL TRIAL ADVOCACY BY THE NATIONAL
  BOARD OF TRIAL ADVOCACY
** LICENSED IN LA & MS
*** LICENSED IN LA & TX
**** LICENSED IN FL & NY

November 16, 2009

**Via E-mail**

Re:    Vioxx MDL 1657– Governmental Action Cases

Dear Counsel:

By signing and returning this letter to my office, to the attention of Trudy Bryant, you agree on behalf of your client that you may not use the common benefit expert reports served on defense counsel on November 6, 2009 in the Louisiana Attorney General Action until and unless an agreement is reached and/or court order is entered regarding the payment of assessments to contribute to the expense of preparing such reports.

Upon receipt of the signed letter, we will send you a CD with the expert reports for your review.

Sincerely,

James Dugan

I agree to the terms stated above. _____

Counsel for _____

Date: _____

Cc:    James Young
       Randy Fox
       Elizabeth Cabraser
       Shelly Sanford
       Dawn Barrios



EXHIBIT

C

## VIOXX LOUISISANA ATTORNEY GENERAL TRIAL PACKAGE

- Selection of Index

MDL-1657: *State of Louisiana v. Merck*, EDLA Case No.05-3700

(1)     I. LA AG Vioxx Trial Package Introduction
        I. LA AG Vioxx Trial Package Introduction/Vioxx Index

(02)    II. Case Presentation
        II. Case Presentation/A. Complaint
        II. Case Presentation/B. Exhibit database
        II. Case Presentation/B. Exhibit database/Exhibits
        II. Case Presentation/B. Exhibit database/Exhibits/Merck
        II. Case Presentation/B. Exhibit database/Exhibits/Plaintiff - LA AG
        II. Case Presentation/C. LAAG Trial Transcripts
        II. Case Presentation/C. LAAG Trial Transcripts/Day 1-8
        II. Case Presentation/D. Judge Order & Reasons

(03)    III. Trial Witnesses
        III. Trial Witnesses/1. Plaintiff LAAG Case-in-Chief
        III. Trial Witnesses/1. Plaintiff LAAG Case-in-Chief/A. Fact Witnesses
        III. Trial Witnesses/1. Plaintiff LAAG Case-in-Chief/A. Fact Witnesses/Hood, David
        III. Trial Witnesses/1. Plaintiff LAAG Case-in-Chief/A. Fact Witnesses/Hood, David/Affidavit
        III. Trial Witnesses/1. Plaintiff LAAG Case-in-Chief/A. Fact Witnesses/Hood, David/Deposition Designation
        III. Trial Witnesses/1. Plaintiff LAAG Case-in-Chief/A. Fact Witnesses/Hood, David/Deposition Transcripts
        III. Trial Witnesses/1. Plaintiff LAAG Case-in-Chief/B. Expert Witnesses
        III. Trial Witnesses/1. Plaintiff LAAG Case-in-Chief/B. Expert Witnesses/Abramson, John David (M.D.)
        III. Trial Witnesses/1. Plaintiff LAAG Case-in-Chief/B. Expert Witnesses/Abramson, John David (M.D.)/Deposition Transcripts
        III. Trial Witnesses/1. Plaintiff LAAG Case-in-Chief/B. Expert Witnesses/Abramson, John David (M.D.)/Expert Challenges
        III. Trial Witnesses/1. Plaintiff LAAG Case-in-Chief/B. Expert Witnesses/Abramson, John David (M.D.)/Expert Report
        III. Trial Witnesses/1. Plaintiff LAAG Case-in-Chief/B. Expert Witnesses/Graham, David Y. (M.D.)
        III. Trial Witnesses/1. Plaintiff LAAG Case-in-Chief/B. Expert Witnesses/Kessler, David (M.D.)

1



III. Trial Witnesses/1. Plaintiff LAAG Case-in-Chief/B. Expert Witnesses/MacGregor, John S. (M.D.)

III. Trial Witnesses/2. Defendant Merck Case

III. Trial Witnesses/2. Defendant Merck Case/A. Merck Fact Witnesses

III. Trial Witnesses/2. Defendant Merck Case/A. Merck Fact Witnesses/Bearden, Ben

III. Trial Witnesses/2. Defendant Merck Case/A. Merck Fact Witnesses/Bearden, Ben/Deposition Designation

III. Trial Witnesses/2. Defendant Merck Case/A. Merck Fact Witnesses/Bearden, Ben/Deposition Transcripts

III. Trial Witnesses/2. Defendant Merck Case/A. Merck Fact Witnesses/Castille, Charles F.

III. Trial Witnesses/2. Defendant Merck Case/A. Merck Fact Witnesses/Taylor, Valerie

III. Trial Witnesses/2. Defendant Merck Case/A. Merck Fact Witnesses/Terrebonne, Mary Julie

III. Trial Witnesses/2. Defendant Merck Case/B. Merck Expert Witnesses

III. Trial Witnesses/2. Defendant Merck Case/B. Merck Expert Witnesses/Eisworth, Clement C. Jr. (M.D.)

III. Trial Witnesses/2. Defendant Merck Case/B. Merck Expert Witnesses/Eisworth, Clement C. Jr. (M.D.)/Deposition Transcripts

III. Trial Witnesses/2. Defendant Merck Case/B. Merck Expert Witnesses/Eisworth, Clement C. Jr. (M.D.)/Expert Challenges

III. Trial Witnesses/2. Defendant Merck Case/B. Merck Expert Witnesses/Eisworth, Clement C. Jr. (M.D.)/Expert Report

III. Trial Witnesses/2. Defendant Merck Case/B. Merck Expert Witnesses/Parnell, Melvin L. Jr (M.D.)

III. Trial Witnesses/2. Defendant Merck Case/B. Merck Expert Witnesses/Rarick, Lisa D. (M.D.)

III. Trial Witnesses/2. Defendant Merck Case/B. Merck Expert Witnesses/Sales, David J. (M.D.)

III. Trial Witnesses/2. Defendant Merck Case/B. Merck Expert Witnesses/Wells, Jerry F. (R.Ph.)

III. Trial Witnesses/2. Defendant Merck Case/B. Merck Expert Witnesses/Wiggins, Steven N.

(04)   IV. Motions in Limine

IV. Motions in Limine/A. Orders

IV. Motions in Limine/B. Merck Motions in Limine

IV. Motions in Limine/B. Merck Motions in Limine/1. Mrk Mtn Limine No. 1-exclude evidence criticizing FDA

IV. Motions in Limine/B. Merck Motions in Limine/1. Mrk Mtn Limine No. 1-exclude evidence criticizing FDA/Merck

2

IV. Motions in Limine/B. Merck Motions in Limine/1. Mrk Mtn Limine No. 1-exclude evidence criticizing FDA/Plaintiff

IV. Motions in Limine/B. Merck Motions in Limine/2.Mrk Mtn Limine No. 2-exclude evidence re hypothetical scenarios

IV. Motions in Limine/B. Merck Motions in Limine/3.Mrk Mtn Limine No. 3-exclude unrelated marketing materials

IV. Motions in Limine/B. Merck Motions in Limine/4.Mrk Mtn Limine No. 4-exclude evidence of MRK attempt to persuade LA officials

IV. Motions in Limine/B. Merck Motions in Limine/5. Mrk Mtn Limine No. 5-exclude testimony re change vioxx label prior to 2002

IV. Motions in Limine/B. Merck Motions in Limine/6.Mrk Mtn Limine No. 6-exclude alleged MRK conduct with no nexus

IV. Motions in Limine/B. Merck Motions in Limine/7. Mrk Mtn Limine No. 7-exclude Fries letter

IV. Motions in Limine/B. Merck Motions in Limine/8.Mrk Mtn Limine No. 8-exclude profit motive

IV. Motions in Limine/B. Merck Motions in Limine/9.Mrk Mtn Limine No. 9-exclude reference to post-marketing AE reports

IV. Motions in Limine/B. Merck Motions in Limine/10.Mrk Mtn Limine No. 10-exclude excess events calculation

IV. Motions in Limine/B. Merck Motions in Limine/11.Mrk Mtn Limine No. 11-exclude evidence Alzheimer trials

IV. Motions in Limine/B. Merck Motions in Limine/12.Mrk Mtn Limine No. 12-exclude testimony of Nicholas Jewell

IV. Motions in Limine/B. Merck Motions in Limine/13.Mrk Mtn Limine No. 13-exclude evidence Merck Misled FDA

IV. Motions in Limine/B. Merck Motions in Limine/14.Mrk Mtn Limine No. 14-exclude Waxman memo

IV. Motions in Limine/B. Merck Motions in Limine/15.MRK Omnibus Motion in Limine-exclude testimony raised by prior mtn

IV. Motions in Limine/C. Plaintiffs Motion in Limine

IV. Motions in Limine/C. Plaintiffs Motion in Limine/PL Mtn Limine No. 2, 12, and 17

IV. Motions in Limine/C. Plaintiffs Motion in Limine/PL Mtn Limine No. 2, 12, and 17/Merck

IV. Motions in Limine/C. Plaintiffs Motion in Limine/PL Mtn Limine No. 2, 12, and 17/Plaintiff

IV. Motions in Limine/C. Plaintiffs Motion in Limine/PL Omnibus Motion in Limine

(05)   V. Additional Information
    V. Additional Information/A. All Witnesses[1]
    V. Additional Information/A. All Witnesses/Anstice, David (MDL witness)
    V. Additional Information/A. All Witnesses/Anstice, David (MDL witness)/Deposition Designation
    V. Additional Information/A. All Witnesses/Anstice, David (MDL witness)/Deposition Designation/Barnett Trial
    V. Additional Information/A. All Witnesses/Anstice, David (MDL witness)/Deposition Designation/Plaintiff
    V. Additional Information/A. All Witnesses/Anstice, David (MDL witness)/Deposition Transcripts
    V. Additional Information/A. All Witnesses/Anstice, David (MDL witness)/Trial Testimony/Barnett Trial
    V. Additional Information/A. All Witnesses/Anstice, David (MDL witness)/Video
    V. Additional Information/A. All Witnesses/Avorn, Jerry (M.D.) (MDL witness)
    V. Additional Information/A. All Witnesses/Baumgartner, Susan (MDL witness)
    V. Additional Information/A. All Witnesses/Biglane, Gina C. (Pharm.D)
    V. Additional Information/A. All Witnesses/Blake, Mary Elizabeth (MDL witness)
    V. Additional Information/A. All Witnesses/Cannel, Tom (MDL witness)
    V. Additional Information/A. All Witnesses/Curtis, David L. (M.D.)
    V. Additional Information/A. All Witnesses/Davis, Michael E.
    V. Additional Information/A. All Witnesses/Edwards, Kerry I.
    V. Additional Information/A. All Witnesses/Epstein, Stephen (M.D.) (MDL witness)
    V. Additional Information/A. All Witnesses/Fevurly, John
    V. Additional Information/A. All Witnesses/Gilmartin, Raymond (MDL witness)
    V. Additional Information/A. All Witnesses/Goldberg, Allan I. (M.D.)
    V. Additional Information/A. All Witnesses/Harris, Jeffrey E. (M.D., P.hd)
    V. Additional Information/A. All Witnesses/Julie, Neil (M.D.)
    V. Additional Information/A. All Witnesses/Kaiser, Fran (M.D.)
    V. Additional Information/A. All Witnesses/Kronmal, Richard (Biostatistician) (MDL witness)
    V. Additional Information/A. All Witnesses/Laine, Loren (M.D.)
    V. Additional Information/A. All Witnesses/Lambert, Warren J.
    V. Additional Information/A. All Witnesses/Leach, Terry (Pharm.D)
    V. Additional Information/A. All Witnesses/Lee, Terri
    V. Additional Information/A. All Witnesses/Lepore, Wendy S.

---

[1]    Some file folders for the MDL witnesses may vary but will typically include deposition designations, expert challenges, trial testimony, video and reports from Barnett Trial as well as those files generated for the LAAG Trial.

V. Additional Information/A. All Witnesses/Morrison, Briggs (MDL witness)

V. Additional Information/A. All Witnesses/Nies, Alan S. (M.D.) (MDL witness)

V. Additional Information/A. All Witnesses/Ogle, Mary

V. Additional Information/A. All Witnesses/Pechmann, Cornelia (Ph.D) (MDL witness)

V. Additional Information/A. All Witnesses/Reicin, Alise (MDL witness)

V. Additional Information/A. All Witnesses/Scolnick, Edward (M.D.) (MDL witness)

V. Additional Information/A. All Witnesses/Shearer, Stephen W.

V. Additional Information/A. All Witnesses/Silvers, David R. (M.D.)

V. Additional Information/A. All Witnesses/Turner, Holly Jacques

V. Additional Information/A. All Witnesses/Weiner, Jan (MDL witness)

V. Additional Information/A. All Witnesses/Welch, Douglas

V. Additional Information/A. All Witnesses/Wendt, Melwyn (Pharm.D)

V. Additional Information/B. Additional Transcripts

V. Additional Information/B. Additional Transcripts/Merck TX Transcripts

V. Additional Information/B. Additional Transcripts/Merck TX Transcripts/Charles R. Grezlak TX Depo

V. Additional Information/B. Additional Transcripts/Merck TX Transcripts/Dechert Production 11.18.09

V. Additional Information/B. Additional Transcripts/Merck TX Transcripts/Fran E. Kaiser (M.D) TX Depo

V. Additional Information/B. Additional Transcripts/Merck TX Transcripts/Holly Jacques Turner TX Depo

V. Additional Information/B. Additional Transcripts/Merck TX Transcripts/Jeffrey M. Melin (M.D) TX Depo

V. Additional Information/B. Additional Transcripts/Merck TX Transcripts/John Fevurly TX Depo

V. Additional Information/B. Additional Transcripts/Merck TX Transcripts/Lepore TX Depo

V. Additional Information/B. Additional Transcripts/Merck TX Transcripts/Michael Davis TX

V. Additional Information/B. Additional Transcripts/Merck TX Transcripts/Michael J. Kelly TX Depo

V. Additional Information/B. Additional Transcripts/Merck TX Transcripts/Terri Lee TX Depo

V. Additional Information/B. Additional Transcripts/Merck TX Transcripts/TX Exhibits.xls

V. Additional Information/B. Additional Transcripts/Merck TX Transcripts/TX List of Transcripts.xlsm

V. Additional Information/B. Additional Transcripts/Merck TX Transcripts/TX Transcripts.xls

V. Additional Information/C. Pre Trial Order & Witness List

V. Additional Information/C. Pre Trial Order & Witness List/Merck

V. Additional Information/C. Pre Trial Order & Witness List/Plaintiff

V. Additional Information/C. Pre Trial Order & Witness List/Pre-Trial Order

V. Additional Information/D. Additional Motions

V. Additional Information/D. Additional Motions/Daubert Motions-Exclude Testimony

V. Additional Information/D. Additional Motions/Daubert Motions-Exclude Testimony/1. Orders

V. Additional Information/D. Additional Motions/Daubert Motions-Exclude Testimony/Merck Motions

V. Additional Information/D. Additional Motions/Daubert Motions-Exclude Testimony/Merck Motions/Mtn to exclude testimony of Dr. Cornelia Pechmann

V. Additional Information/D. Additional Motions/Daubert Motions-Exclude Testimony/Merck Motions/Mtn to exclude testimony of Dr. Jerry Avorn

V. Additional Information/D. Additional Motions/Daubert Motions-Exclude Testimony/Merck Motions/Mtn to exclude testimony of Dr. Neil Julie

V. Additional Information/D. Additional Motions/Daubert Motions-Exclude Testimony/Merck Motions/Mtn to exclude testimony of Jeffrey Harris

V. Additional Information/D. Additional Motions/Daubert Motions-Exclude Testimony/Merck Motions/Mtn to exclude testimony of Richard Kronmal

V. Additional Information/D. Additional Motions/Daubert Motions-Exclude Testimony/Merck Motions/Mtn to exclude testimony of Terry Leach

V. Additional Information/D. Additional Motions/Daubert Motions-Exclude Testimony/Plaintiff motions

V. Additional Information/D. Additional Motions/Daubert Motions-Exclude Testimony/Plaintiff motions/Mtn to exclude certain opinion testimony of MRK experts

V. Additional Information/D. Additional Motions/Daubert Motions-Exclude Testimony/Plaintiff motions/Mtn to exclude certain testimony of MRK experts re personal experience

V. Additional Information/D. Additional Motions/Motion for Reconsideration of SMJ Ruling

V. Additional Information/D. Additional Motions/Motion for Reconsideration of SMJ Ruling/Merck

V. Additional Information/D. Additional Motions/Motion for Reconsideration of SMJ Ruling/Order

V. Additional Information/D. Additional Motions/Motion for Reconsideration of SMJ Ruling/Plaintiff

V. Additional Information/D. Additional Motions/Motion to Compel

V. Additional Information/D. Additional Motions/Motion to Compel/Merck Motions

V. Additional Information/D. Additional Motions/Motion to Compel/Plaintiffs Motions

V. Additional Information/D. Additional Motions/Motion to consolidate

6

V. Additional Information/D. Additional Motions/Motion to Dismiss

V. Additional Information/D. Additional Motions/Motion to Quash

V. Additional Information/D. Additional Motions/Motion to Quash/Merck mtn quash subpoena on Drug Research Services

V. Additional Information/D. Additional Motions/Motion to Remand

V. Additional Information/D. Additional Motions/Motion to Strike

V. Additional Information/D. Additional Motions/Motions for summary judgment

V. Additional Information/D. Additional Motions/Motions for summary judgment/Merck

V. Additional Information/D. Additional Motions/Motions for summary judgment/Plaintiff

V. Additional Information/D. Additional Motions/Parties Deposition Designations

V. Additional Information/D. Additional Motions/Parties Deposition Designations/Merck Designations

V. Additional Information/D. Additional Motions/Parties Deposition Designations/Merck Objections

V. Additional Information/D. Additional Motions/Parties Deposition Designations/Plaintiff Designations

V. Additional Information/D. Additional Motions/Parties Deposition Designations/Plaintiff Objections

V. Additional Information/D. Additional Motions/Parties Deposition Designations/Rulings

V. Additional Information/D. Additional Motions/Post Trial Motions

V. Additional Information/D. Additional Motions/Post Trial Motions/Merck Rule 52c Motion for Judgment on Partial Findings

V. Additional Information/D. Additional Motions/Post Trial Motions/Merck Rule 52c Motion for Judgment on Partial Findings/Merck

V. Additional Information/D. Additional Motions/Post Trial Motions/Merck Rule 52c Motion for Judgment on Partial Findings/Plaintiff

V. Additional Information/D. Additional Motions/Post Trial Motions/Proposed Findings of Fact

V. Additional Information/D. Additional Motions/Post Trial Motions/Proposed Findings of Fact/Merck

V. Additional Information/D. Additional Motions/Post Trial Motions/Proposed Findings of Fact/Plaintiff

# EXHIBIT D

**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In Re: VIOXX | * | MDL Docket No. 1657 |
| | * | |
| **PRODUCTS LIABILITY LITIGATION** | * | |
| | * | **SECTION L** |
| | * | |
| | * | **JUDGE FALLON** |
| **This document relates to ALL** | * | **MAG. JUDGE KNOWLES** |
| **Government Actions** | * | |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| **THE STATE OF TEXAS** | § |
| | § |
| **COUNTY OF HARRIS** | § |

## STATEMENT OF SHELLY A. SANFORD

On this day appeared before me the undersigned affiant, who upon her oath stated:

1. My name is Shelly A. Sanford. I am above the age of eighteen and am competent to make this affidavit. The facts stated herein are true and correct.

2. I am an attorney licensed to practice by the State of Texas since 1992. On October 21, 2009, I was appointed by The Honorable Eldon Fallon to the Vioxx Government Action Executive Committee.

3. On approximately November 3, 2009, I made a $50,000.00 assessment payment to the Vioxx Government Action Fund, for the common expenses in the government action cases.

4. As part of the Government Action Committee, my firm did common work on behalf of the Government Action Committee in at least the following areas:

   a. Hosting meetings and conference calls on the potential experts and expert materials for the common benefit of the Government cases. Two such

1

meetings were hosted over multiple days at my firm in Houston, Texas. Conference calls were also hosted on these issues and reports made to the general committee on the issues

b.   Attending discovery meetings in New Orleans, Philadelphia and New York City with Merck's counsel on behalf of the Executive Committee and Liaison Counsel and with other Executive Committee members. Additional meetings occurred through teleconferences.

c.   Drafting and editing discovery materials for the common benefit of committee members.

d.   Assisting in scheduling matters on behalf of the Committee.

e.   Assisting in Cost estimates relating to the common pursuit of the cases.

f.   Discussions with government action counsel on the common discovery and expert matters.

g.   Review of repository documents for common pleading and proof issues.

h.   Interacting with liaison and lead counsel on these issues.

i.   Paying such expenses as were necessary to facilitate travel and hosting meetings to fulfill obligations of the appointment.

5. In furtherance of these obligations the costs included the $50,000.00 assessment, and 544.25 hours of time that I, and lawyers at my direction in my firm, spent in furtherance of the obligation to work for the common benefit of the cases consolidated in the government actions, each of which were submitted to the accounting firm of Wegmann Dazet & Company, CPAs, Consultants in accordance with Court's guidelines.


Further affiant sayeth not.

SIGNED before the undersigned notary on this 21st day of January, 2013.


**Shelly A. Sanford,** Affiant

2

THE STATE OF TEXAS                    §
                                      §
COUNTY OF HARRIS                      §

      Sworn to and subscribed to before me on 21ˢᵗ day of January, 2013 by **Shelly A. Sanford**.



_____
Notary Public in and for
the State of Texas

My commission expires: June 10, 2014

T. GOMEZ
Notary Public, State of Texas
My Commission Expires
June 10, 2014

3



2090   $50,000.00   11/12/2009

2090   $50,000.00   11/12/2009



PLAINTIFF'S
EXHIBIT

A

EXHIBIT "E"

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **In re:  VIOXX** | * | **MDL Docket No. 1657** |
| | * | |
| **PRODUCTS LIABILITY LITIGATION** | * | **SECTION L** |
| | * | |
| | * | **JUDGE FALLON** |
| **This document relates to All Cases** | * | |
| | * | **MAGISTRATE JUDGE KNOWLES** |
| | * | |
| | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## DECLARATION OF RUSS M. HERMAN IN SUPPORT OF HERMAN, HERMAN & KATZ, L.L.C.'S SUBMISSION FOR ATTORNEY GENERAL COMMON BENEFIT FEES

1.   I, Russ M. Herman ("RMH"), am an attorney licensed to practice law in the state of Louisiana.  I make this declaration on behalf of Herman, Herman & Katz, L.L.C. ("HHK") based upon my personal involvement  in virtually all aspects of the Vioxx litigation, including activities  involving Attorney General ("AG") claims and my thorough familiarity with the record in MDL No. 1657.

2.   During its participation  in the Vioxx MDL litigation, HHK had eight (8) attorneys and more than eleven (11) support staff (totaling nineteen (19) individuals who recorded time[1]) working in furtherance of the Vioxx matter, totaling 31,216 hours[2] as of 2011 some of which were solely dedicated to A G matters.     AG hours were recorded contemporaneously with other common benefit hours worked by HHK.   (Additional time and expense have been incurred by HHK in connection with Vioxx matters since the previous application made for common benefit fees in connection with personal injury claims.) HHK has continued, since the previous application made for common benefit fees, to incur additional time in the Vioxx matter, including time related to common benefit AG matters.

---

[1] Substantially more than 19 individuals from HHK worked on the Vioxx litigation.  Additional support staff participated daily in activities such as organization, filing, typing, bookkeeping, and other essential functions required of Plaintiffs' Liaison Counsel.

[2] Time has been and continues to be submitted to Wegmann-Dazet on an ongoing basis, but has not yet been fully recorded by Wegmann-Dazet.  Furthermore, many time entries by HHK attorneys and employees for work that involved less than 10 minutes of time was often not recorded.   For example, counsel, paralegals and secretaries received daily e-mails, telephone calls, performed routine Liaison Counsel functions and addressed other communications that were frequently responded to quickly and time entries were not recorded.

HHK states as follows:

(a)      HHK did not represent any A G  clients.

(b)   HHK was involved in all aspects of the MDL proceedings, including coordinating and participating in AG activities, which included, among other items, pre-trial pleadings and motions, discovery, trial and issues pertaining to the NAMFCU settlement negotiations.  Pursuant to Pre-Trial Order No. 2, dated February 28, 2005, Russ M. Herman ("RMH") was appointed Plaintiffs' Liaison Counsel  in the MDL and this appointment included duties to AG matters. Pursuant to Pre-Trial Order No. 6, dated April 8, 2005, RMH was appointed a member of the PSC Executive Committee, which also addressed AG matters.

(c)      HHK actively participated in AG motions, appearances at conferences and hearings and discovery matters, conferred with and worked closely with Dawn Barrios (liaison counsel for the AGs), scheduled a n exemplar case for trial, coordination and meetings with various Attorney Generals' counsel, coordinated depositions and document production, was liaison with trial counsel for the Louisiana Attorney General,  assisted in preparing an AG trial package, and involved with issues  raised in the AG NAMFCU settlement. HHK drafted motions, traveled and actively participated in obtaining discovery responses from Merck, assisted in negotiating discovery issues with AGs and Merck, liaisoned with counsel who were preparing  for trial, developed strategy, supervised the depository and assisted AG counsel who coordinated and visited the depositories throughout the country, coordinated with the various State appointed AG counsel, met and conferred with the AGs and Special Master Juneau regarding discovery, remands and other issues, handled internal matters and provided leadership.    Leonard A. Davis (LAD), with the approval of  the Honorable Eldon E. Fallon, assisted in all AG matters in which HHK was involved in duties assigned by RMH and the Court. RMH and/or LAD were involved in each and every aspect of the handling of the AG  litigation, from  discovery  through  preparation  for  trial. Their activities throughout the AG litigation included, but were not limited  to organization,  strategy, tactics,  assignments,  drafting  of pleadings, attendance  at every MDL hearing, drafting every joint report (which included updates on AG matters) and attendance at every status conference,  coordination  with counsel for the AGs and Dawn Barrios, participation in the organization and preparation of the AG trial package,  attendance at numerous  meetings,  involvement with the Louisiana AG trial, met and conferred with Special Master Juneau,  and participated  in matters involving the NAMFCU  settlement.  In addition, RMH established a professional working relationship and  rapport with Merck counsel necessary  to  discuss  ultimate  resolution,  including  potential  settlement possibilities and remand of AG matters.  HHK was active in every aspect of the

AG Vioxx litigation.

(d)     LAD and/or RMH worked with and assisted the Commonwealth of Pennsylvania in connection with numerous discovery issues with Merck, access to the PSC depository, access to data produced by Merck, coordination of master discovery directed to Merck and responses thereto, attendance at meetings with various Attorney Generals to instruct each on access to the depositories and for trial package presentation, participated in conference calls, participated in court hearings and status conferences, assisted with discovery disputes and assisted in privilege log issues.

(e)     HHK has devoted significant unreimbursed resources for the common benefit of Vioxx AG matters.  HHK has also expended unreimbursed common benefit costs. HHK has contributed approximately 1,500 to 2,000[3] hours to common benefit AG matters and in excess of $33,073.94 of unreimbursed costs in the entire Vioxx matter.   None of this time nor the expenses have been compensated or reimbursed.

(f)     Upon RMH being appointed as Plaintiffs' Liaison Counsel on February 28, 2005, pursuant to Pre-Trial Order No. 2, HHK did not accept any additional Vioxx cases because it perceived a potential conflict with its liaison and executive committee duties, and HHK further refused to become involved in other COX-2 cases, including, Celebrex and Bextra, because of potential conflicts, including "alternative safe design" and other issues. Additionally, HHK declined referred claimants to other counsel without fee to HHK.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

RUSS M. HERMAN

---

[3] Lodestar values were previously submitted pursuant to Pre-trial Order No. 6 in January 2008.  Further, approximately 1,500 hours of AG common benefit time was comingled with other time submitted by HHK.

# EXHIBIT F

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: VIOXX PRODUCTS LIABILITY LITIGATION | : : : : : : : : : | MDL No. 1657<br><br>SECTION L<br><br>JUDGE EDON E. FALLON<br><br>MAGISTRATE JUDGE KNOWLES |
| THIS DOCUMENT RELATES TO: | | HON. CYNTHIA M. RUFE |
| Commonwealth of Pennsylvania by Thomas W. Corbett, Jr., Attorney General vs. Merck & Co., Inc.; Case No. 09-2861 | | |

STATE OF LOUIOSIANA

PARISH OF ORLEANS

## DECLARATION OF MARK P. ROBINSON, JR., ESQ.

I, Mark P. Robinson, Jr., declare as follows:

1.      I am an attorney and partner in the firm Robinson Calcagnie Robinson Shapiro Davis, Inc. (RCRSD) in Newport Beach, California. I have personal knowledge of the matters set forth herein and could testify competently thereto.

2.      RCRSD has devoted significant resource to the common benefit of Government Entity plaintiffs in the Vioxx MDL litigation since her directive by the Court on July 11, 2008 to coordinate communication with the state Attorneys General.  RCRSD made a $50,000 AG common benefit payment to assist with the prosecution of this litigation.  (See Exhibit A.)

1

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this Certificate is executed on January 30, 2013, at Newport Beach, California.

Dated: January 30, 2013

Mark P. Robinson, Jr.
Robinson Calcagnie Robinson Shapiro Davis, Inc.
19 Corporate Plaza Drive
Newport Beach, CA 92660
Tele: 949-720-1288; Fax: 949-720-1292
mrobinson@rcrsd.com

Printing



Account: 402130156
Date Posted: 11/13/2009
Item Number: 38226
Amount: $50,000.00



The check image copy you requested is shown above. Your account will be debited for any fees that may apply. Please refer to your fee schedule and your next account statement for details. Thank you for banking with City National Bank.