UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

Case No. 05-MD-01657
MDL Docket No. 1657

| | | |
|---|---|---|
| In Re:  VIOXX | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION "L" |
| | * | |
| | * | JUDGE FALLON |
| | * | |
| | * | MAGISTRATE JUDGE KNOWLES |
| | * | |
| | * | |

**PRELIMINARY NOTICE OF OBJECTION**

James Ratliff, on behalf of himself and all others similarly situated ("Ratliff"), by and through counsel, and as an individual and representative of a certified class interested in the preliminary approval of the settlement proposal referenced by the Court in its February 26, 2013 Minute Entry [R. 64275], respectfully requests the Court to consider this Preliminary Notice of Objection, and to permit undersigned counsel to participate in any hearing on the parties' forthcoming Motion for Preliminary Approval of Settlement.  In support of this Notice of Objection and Request, Ratliff respectfully states as follows:

**INTRODUCTION**

Ratliff is a resident of Pike County, Kentucky who was diagnosed with chronic osteoarthritis in 1994 at the age of 37.  After experimenting with a bevy of anti-inflammatory drugs, including Daypro and Celebrex, his doctor recommended that he take Vioxx, a drug that was new to the market.  In January of 2000, Ratliff began taking Vioxx twice daily.  After Vioxx was removed from the market in 2004, Ratliff brought a case in Pike Circuit Court as a class action on behalf of all Kentucky residents who have purchased and taken Vioxx and who, upon the recommendation and advice of the FDA and Merck, have contacted or will contact their

physicians to seek advice regarding their use of Vioxx. The Complaint was filed in the Pike Circuit Court in October, 2004. Ratliff, on behalf of himself and the class, seeks reimbursement for (a) the costs of their medical consultations, including the costs of any diagnostic testing recommended by the class members' physicians; (b) the lost income and related expenses the class members have, or will have to incur in undergoing such examinations and procedures; and (c) the cost of the Vioxx the class members purchased. Each class member's claims will not exceed the sum of $75,000, exclusive of interest and costs, and no class member will seek to recover in this action for any personal injury he may have sustained as a consequence of taking Vioxx as prescribed. See Class Action Complaint, Ratliff, et al. v. Merck & Co., Inc., 04-CI-01493, Pike Circuit Court, 35th Judicial Circuit, at p. 1, Exhibit A.

Ratliff learned for the first time on Tuesday, February 26, 2013, that the parties in this Multi-District Litigation were nearing submission of an alleged universal preliminary settlement proposal for the Court's consideration. Undersigned counsel was in fact contacted by Plaintiffs' liaison counsel, Mr. Russ Herman, on February 26, 2012. Mr. Herman informed the undersigned counsel for Ratliff that the proposed settlement had been drafted as a universal settlement based on the attorneys' belief that no state court consumer class actions remained pending against Merck & Co., Inc. ("Merck"). To the contrary, and as the attorneys for Merck are and have long since been fully aware, the Pike Circuit Court certified a class in Kentucky on April 2, 2010 consisting of Kentucky consumers seeking economic damages arising from their purchase of Vioxx asserting claims of common law fraud and violations of the Kentucky Consumer Protection Act. (The "Kentucky Class"). Amended Class Certification Order, Exhibit B. The Kentucky Class has fought since that time to obtain redress for the injuries it suffered as a result of Merck's wrongful actions, and is now in the midst of defending the Pike Circuit Court's decision to certify on its second trip to the Kentucky Supreme Court.

Although the Certification Order of the Trial Court with respect to the Kentucky Class' common law fraud claims was reversed by the Kentucky Court of Appeals by Order dated February 10, 2012, the Class claims arising under the Kentucky Consumer Protection Act remain properly certifiable under the Kentucky Court of Appeals' reasoning.  See Court of Appeals Opinion, Exhibit C.  The Kentucky Supreme Court has granted The Kentucky Class' request for discretionary review of the Court of Appeals' ruling with regarding to the common law fraud claims, to address the question of whether a fraud on the market theory should be applicable outside the securities context and therefore provide a means of class-wide proof of the element of reliance.  See Motion for Discretionary Review, Exhibit D; and Order Granting Motion for Discretionary Review, Exhibit E.  Once the Kentucky Supreme Court has ruled on this issue, the matter will be fully and properly remanded to the state court for further proceedings.  At that time, Ratliff intends to file a motion seeking entry of Amended Class Certification Order with respect to the class claims arising under the Kentucky Consumer Protection Act.  Depending upon the ruling of the Kentucky Supreme Court, the class claim for common law fraud may well be re-certified.

As will be more fully explained below, the class claims raised against Merck in Ratliff, et al. v. Merck & Co., Inc., 04-CI-01493 remain viable.  The Ratliff action was filed prior to the consolidation of federal cases in this proceeding.[1]  Proceeding in Kentucky state court is in the best interest of Ratliff and the Kentucky Class, and equity dictates that the Kentucky Class and its counsel be permitted to move forward with that litigation irrespective of these proceedings.  Ratliff, on behalf of himself and those similarly situated therefore respectfully request the opportunity to object to any settlement proposed in this matter that is inclusive of the consumer

---

[1] After the action was filed in the Pike Circuit Court, Merck attempted to remove the case to the United States District Court for the Eastern District of Kentucky.  On March 3, 2005, Judge Joe Hood granted Ratliff's Motion to Remand and sent the case back to the Pike Circuit Court, where it has been vigorously and extensively litigated.  A copy of Judge Hood's Remand Order is attached as Exhibit F.

claims asserted in the Kentucky litigation or might otherwise impact the ability of the Kentucky Class to move forward with the prosecution of their claims against Merck. The Kentucky Claims should be excluded or opted out of the proposed MDL Settlement, particularly in light of the extensive history of the Kentucky case.[2]

## ARGUMENT

I. **Ratliff, On Behalf Of The Kentucky Class, Has Standing To Object To Any Proposed Settlement That Encompasses Kentucky Consumer Claims.**

In considering proposed class settlements, federal courts utilize a two-step process under Fed. R. Civ. P. 23(e) – the court must first make the original determination whether a proposed settlement is within the range of fairness, reasonableness and adequacy so as to justify notifying the class members of the proposed settlement, followed by a fairness hearing to decide whether the proposal is indeed fair, reasonable and adequate in the ultimate sense. See, Manual for Complex Litigation (Fourth), § 21.632 ("Review of a proposed class action settlement generally involves two hearings. First, counsel submit the proposed terms of settlement and the judge makes a preliminary fairness evaluation."). See also, e.g., Armstrong v. Board of School Directors, 616 F.2d 305, 314 (7th Cir. 1980).

In making a final determination as to the propriety of a proposed settlement, the most important factor is "the strength of plaintiffs' case on the merits balanced against the settlement

---

[2] The lead counsel for Merck involved in discussions with respect to the proposed MDL Settlement is John Beisner of Skadden Arps Slate Meagher & Flom's Washington office. Mr. Beisner is also counsel of record along with other Skadden Arps attorneys in the Kentucky action and is and has been fully aware of the proceedings in the Kentucky case, including the earlier Class Certification by the Pike Circuit Court, as well as the pending proceedings before the Kentucky Supreme Court after the granting of Discretionary Review. Despite the extensive knowledge and participation of Merck's counsel in the Kentucky action, the Skadden Arps MDL attorneys did not tell Liaison Counsel for Plaintiffs about the existence of the action pending in the Pike Circuit Court brought by James Ratliff, that a Class had been certified by the Circuit Court, or that the Kentucky case has an extensive nine-year history. Apparently, at the very end of settlement discussions, Merck's counsel proposed that Kentucky should be included in the settlement and for the first time mentioned the long-standing Ratliff v. Merck case proceedings. Given the way Merck's attorneys dealt with MDL Lead and Liaison Counsel alone, the Kentucky action should be excluded from any settlement proposed by Merck and its counsel. Since learning of the proposed settlement, counsel for the Kentucky Class has tried to reach Mr. Beisner several times, left messages, but has not been contacted by Mr. Beisner.

offer….." Armstrong, 616 F.2d at 314.  Other factors to be considered are:  (a) the complexity, length and expense of continued litigation; (b) the absence or presence of collusion in reaching a settlement; (c) the opinion of competent counsel as to the reasonableness of the proposed settlement; (d) the defendants' ability to pay; (e) the stage of the proceedings and the amount of discovery completed; (f) the reaction of the class members to the proposed settlement; and (g) the opposition, if any, thereto.  Id.

Although it is not always possible for a court to be aware of the existence of negative reaction of the class members to the proposed settlement during the preliminary consideration of the settlement, to the extent that a court is made aware of any such objection, it must be given weight and due consideration.  See, In re Amino Acid Lysine, 1996 U.S. Dist. LEXIS 5308, 10-15 (N.D. Ill. Apr. 19, 1996) (noting that during the first-step of the two step process, "when it is being decided whether the proposed settlement is sufficiently within the range of fairness, reasonableness and adequacy to justify notifying the class members," it is not always possible for the court to be aware of the reaction of the class members and the existence of any opposition to the proposed settlement).

The Court in In re Amino, supra, however, had the benefit of media coverage bearing on the issue of the fairness of the settlement and class members' reaction thereto.  Because this information was available during the first-step consideration of the proposed settlement, the Court gave the information its due weight, even though the parties did not address the information provided by the media reports in their briefs.  Id. at 13.  Specifically, the media reports indicated that the $2.5 million proposed to be contributed by Archer Daniels Midland toward settlement was smaller than the reserves that the company had set up for the litigation. The Court noted that, in its experience, "it has found such reserves to be a material indicia of the fair value of a liability, estimated by those who are presumably in the best position to make such

an evaluation." Id.  Because there was no reference to this factor in the parties' briefs, or any indication whether the negotiations or informal discovery that preceded entry into the agreement for the proposed settlement had taken that evaluation into account, the Court held that "[a]t a minimum," it would "require more extensive disclosure in that respect." Id. at 14.  The Amino Court then established a timetable for the parties to provide additional information with respect to this issue, and deferred ruling on even the preliminary determination of fairness until such time as the parties were able to address the Court's concerns.

The method utilized by the Amino Court is in-line with process for consideration outlined in the Manual for Complex Litigation, which notes that even at the preliminary stage of consideration, "it is often prudent to hear not only from counsel but also from named plaintiffs, from other parties, and from attorneys who represent individual class members but did not participate in the settlement negotiations." Manual, § 21.632.  The Manual goes on to state that at the preliminary hearing, "the judge should raise questions," and "perhaps seek an independent review if there are reservations about the settlement," including "unduly preferential treatment of class representative or segments of the class," or "inadequate compensation or hams to the classes."  The Manual concludes that after questions are raised by the Court, "[t]he parties then have an opportunity to resume negotiations in an effort to remove potential obstacles to court approval."  Id.

The Kentucky Class certified by the Pike Circuit Court with respect to claims arising under the Kentucky Consumer Protection Act remains viable, and Ratliff requests that the Kentucky Action be excluded from the proposed settlement.  In the alternative, however, Ratliff requests that the Court defer even a preliminary consideration of any proposed settlement purporting to encompass the Kentucky Class until the Kentucky Supreme Court has issued a ruling on the Kentucky Class' appeal of the Court of Appeals ruling de-certifying its fraud claim

and until after Ratliff is subsequently able to move the Trial Court for an Amended Certification Order with respect to the Kentucky Consumer Protection Act claims, which were unaffected by the Court of Appeal's Opinion.  Both Appellants' Brief, and an Amicus Brief filed by the Kentucky Justice Association, have already been filed with the Kentucky Supreme Court, and Merck's Appeal Brief is due to be filed on or before March 15, 2013.  Any delay occasioned by postponing preliminary consideration of the fairness of a proposed settlement that encompasses the Kentucky Class will therefore be minimal.

Ratliff, on behalf of himself and the Kentucky Class, furthermore requests the Court to take a hard look at Merck's motivations for seeking inclusion of the Kentucky Class within the proposed consumer settlement.  Ratliff believes, as explained more fully below, that Merck was successful in structuring the settlement to include Kentucky consumers by misrepresenting or omitting key facts regarding the status of the Kentucky litigation.  It in fact appears that Merck intended to use the settlement as a backdoor method of nullifying the efforts of the Kentucky Class, which Merck has sought to derail at every turn in the underlying Kentucky litigation – Merck was previously unsuccessful in removing the Kentucky litigation to Federal Court and consolidating it with the other actions in this Multi-District proceeding.

**II.    Merck's Attempt To Include The Kentucky Class In The Proposed Settlement Is Nothing More Than Another Attempt To Derail Viable And Extensive Litigation That Has Been Pending Since 2004 And Which Has Been Continuously Obstructed By Merck.**

Since 2004, when Ratliff filed the Kentucky litigation, Merck has engaged in obstructive and abusive litigation techniques, making every effort to delay the progress of the litigation and prevent the putative class members in this action from obtaining redress for the injuries they have suffered as a result of the Merck's deceptive and manipulative marketing practices.  This case has been litigated for almost nine years.  In that time, Merck, a multi-billion-dollar

7

corporation, has personally attacked the integrity of the Pike Circuit Court, attempted to smear the credibility of the class Plaintiff, and has spent hundreds of thousands of dollars delaying the litigation in an apparent attempt to force the Ratliff and Ratliff's counsel to abandon the litigation.

Merck has in fact previously unsuccessfully sought inclusion of the Kentucky litigation in this Multi-District Litigation. As noted above, on November 29, 2004, Merck removed the Kentucky litigation to Federal Court and also filed a Motion with the Judicial Panel on Multidistrict Litigation ("JPML") seeking to transfer this case to a single court for coordinated pretrial management pursuant to 28 U.S.C. §1407. On January 1, 2005, Ratliff filed a Motion To Remand. After a thorough analysis of the potential value of Ratliff's and the other potential class members' claims, and based upon its conclusion that Merck failed to show that the damages on each person's claims would exceed the jurisdiction threshold of $75,000, the United States District Court for the Eastern District of Kentucky held that it did not have jurisdiction over this cause of action. On March 3, 2005, the District Court entered an Order remanding the action to Pike Circuit Court. See March 3, 2005 Order, Exhibit F.

Ratliff thereafter sought an Order of the Pike Circuit Court certifying the action as a class action pursuant to CR 23.01 and CR 23.02(c). Extensive briefs were filed in support of and in opposition to Ratliff's Motion, and Merck also filed a Motion for Summary Judgment asking that Ratliff's claims be dismissed on various bases. The Pike Circuit Court, after considering the briefs and oral argument from both sides, entered two separate Orders dated April 2, 2010 – one denying Merck's Motion for Summary Judgment, and one granting Ratliff's Motion to Certify. See April 2, 2010 Orders, Exhibit B.

Despite the fact that established Kentucky precedent states that Petitions for Writs of Prohibition or Mandamus are not an appropriate means for challenging class certification orders,

see Garrard County Bd. of Educ. v. Jackson, 12 S.W.3d 686 (Ky. 2000), Merck sought relief from the April 1, 2010 Class Certification Order by filing a Petition for Writ of Mandamus with the Kentucky Court of Appeals, arguing that the Pike Circuit Court's decision to certify the Class was in error and should be reversed.  The Court of Appeals denied Merck's Petition by Order dated July 12, 2010.  In so ruling, the Court of Appeals relied on both the holding in Jackson, supra, and upon a finding that Merck had an adequate remedy of appeal following a final adjudication of the merits.  Merck further appealed to the Kentucky Supreme Court the Court of Appeals decision denying the mandamus relief sought by it.  The Kentucky Supreme Court affirmed on the basis of the Jackson decision, and found that Merck had not demonstrated that it would be irreparably harmed by the Trial Court's decision to certify the class.  See Court of Appeals Order denying Petition for Writ of Mandamus, Exhibit G, Kentucky Supreme Court Order Affirming Court of Appeals, Exhibit H.

After the Kentucky Supreme Court affirmed, and the matter was remanded to this Court for further consideration, Ratliff requested the Pike Circuit Court to enter an Amended Class Certification Order clarifying the bases for the court's decision to certify.  This Motion was precipitated by the fact that Merck based its Petition for Writ of Mandamus partially upon its argument that the Order certifying Class Action failed to make specific findings supporting its ruling and was therefore inadequate.  But Merck objected to the Plaintiffs' Motion To Enter Amended Order Certifying Class, and attempted to prevent the Pike Circuit Court from amplifying or clarifying the grounds for its earlier certification decision – in effect whipsawing the Court in an effort to prejudice the Kentucky Class.  Merck, in essence, sought to have its cake and eat it too – telling the Court of Appeals that the Pike Circuit Court had not done its job while telling Pike Circuit Court it could not continue to do its job by exercising its discretion to amplify an interlocutory Order that could be modified or added to at any time before a final

9

Order was entered.  See, e.g., Bellarmine College v. Hornung, 662 S.W.2d 847, 849 (Ky. Ct. App. 1983).

      On January 27, 2011, however, the Trial Court granted Ratliff's Motion, and entered an Amended Order certifying the Kentucky Class with respect to its common law fraud and Kentucky Consumer Protection Act claims.  See Amended Order, attached at Exhibit I.  The Amended Order entered by the Pike Circuit Court contains a detailed recitation of facts, a description of the class Plaintiff and class allegations, and a complete Rule 23 analysis, with citation to relevant case law.  Id.  Specifically, the Trial Court found that with respect to each claim the class is so numerous that joinder of all members is impracticable, that there are questions of law and fact common to the class, that the claims and defenses of the representative parties are typical of the claims and defenses of the class, that Ratliff will fairly and adequately protect the interests of the class, that questions of law and fact common to the class predominate, that a class action is the superior means of adjudicating the claims at issue, and that resolution of the action as a class does not pose any particularly difficult management or administrative problems.  Id.  Merck appealed from this Amended Order Certifying Class, arguing that common questions of law and fact do not predominate under CR 23.02(c), that class action is not the superior method for adjudication, and that Ratliff is not a typical or adequate representative.

      As set forth more fully, infra, the Court of Appeals reversed the Trial Court's ruling with respect to the Kentucky Class' common law fraud claims while citing the Trial Court's reasoning with respect to the Kentucky Consumer Protection Act claims with approval. Court of Appeals Order, Exhibit C.  Ratliff, on behalf of the Kentucky Class petitioned the Kentucky Supreme Court for Discretionary Review on the issue of whether the Court of Appeals erred in refusing to extend a fraud on the market theory to the consumer context for the purposes of establishing the element of reliance in a common law fraud claim on a class-wide basis.  Petition for

Discretionary Review, Exhibit D.  The Kentucky Supreme Court granted Ratliff's Motion for Discretionary Review, and both the Appellants' Brief, and an Amicus Brief filed by the Kentucky Justice Association have been filed with that Court.  See Appellants' Brief, Exhibit J; Amicus Brief, Exhibit K.[3]

In the interim, Ratliff, on behalf of himself and the Kentucky Class, moved the Pike Circuit Court to enter a Second Amended Order Certifying Class with respect to the Kentucky Consumer Protection Act class claim.  Motion Seeking Second Amended Class Certification Order, Exhibit L.  This Motion was denied because of the pendency of the appeal. Pike Circuit Court Order, Exhibit M.  The Motion will be renewed after the Supreme Court issues its ruling, even if the Kentucky Supreme Court does not adopt the fraud on the market theory advanced with respect to the consumer fraud class claim.

**III.   As Ratliff Has Argued On Appeal To The Kentucky Supreme Court, The Court Of Appeals Erred In Finding That The Trial Court's Decision To Certify The Kentucky Class' Fraud and Misrepresentation Claims Was An Abuse Of Discretion.**

On appeal from the Trial Court's Amended Order Certifying Class, numerosity and the presence of common questions of law and fact under CR 23.01(a) and (b) were not disputed. Merck argued, however, that common questions of law and fact do not predominate under CR 23.02(c), that class action is not the superior method for adjudication under CR 23.02(c), and that Ratliff is not a typical or adequate representative under CR 23.01(c) and (d).  Specifically, Merck argued that the Trial Court abused its discretion in granting class certification with respect to the Kentucky Class' fraud-based claims because individual questions of reliance, causation and damages existed that would create mini-trials that would proliferate and prevent the predominance, typicality and superiority requirements for the certification of a class from being met.

---

[3]   Briefs filed as Exhibits do not include the attachments originally accompanying the documents.

The Court of Appeals addressed the argument by Merck regarding predominance under CR 23.02(c), and reversed the Trial Court, finding that the class members' claims of negligent misrepresentation and unjust enrichment could not satisfy the predominance requirement under CR 23.02(c). See Exhibit C, February 10, 2012 Court of Appeals Opinion (hereinafter "Opinion"). In so doing, however, the Court of Appeals first noted that it agreed with several aspects of the Trial Court's Amended Certification Order:

> Nonetheless, it should first be acknowledged that that we agree with the trial court on several initial points. Indeed, we agree that Ratliff's and the putative class members' claims hinge upon whether Merck knowingly or negligently distributed false or misleading information while VIOXX was on the market. This common question threads through each potential class member's claims. We further acknowledge that predominance does not require that each and every possible issue be common to all class members, but only that common issues *substantially predominate* over those issues which are individual in nature.

Opinion, p. 10 (emphasis in original, citations omitted).

The Court of Appeals based its ruling that the class members' fraud and misrepresentation claims did not satisfy the predominance requirement under CR 23.02(c) on that fact that, under Kentucky law, the fraud claims each contained the element of reliance:

> In the present case, each of the putative class members would have to show that his or her respective physicians individually relied upon the false or misleading information disseminated by Merck when prescribing Vioxx to them. It is exactly this type of individualized proof which generally makes class litigation inappropriate in fraud and misrepresentation cases.

Id. at 12.

The Court of Appeals went on to note, however, that in some cases involving fraud or misrepresentation, a "class action may still be appropriate where common issues predominate over individualized questions and arise from a single fraudulent scheme or conspiracy or from identical misrepresentations." Id. at 13.

12

It has been Ratliff's contention, in pleadings and on appeal, that Merck used a consistent pattern of deception lasting essentially the entire time that Vioxx was on the market, and that generalized proof could therefore be used to show the elements of fraud and misrepresentation as to the Vioxx product in this case.  The Court of Appeals analogized Ratliff's argument to the rebuttable presumption of reliance and causation known in securities litigation under the fraud on the market theory.  The Court declined, however, to extend the fraud on the market theory beyond the scope of securities litigation, noting that other jurisdictions have likewise refused to allow use of the theory in consumer litigation:  "[T]he 'fraud-on-the-market' approach has never been recognized in this jurisdiction for a fraud or misrepresentation case." Id. at 15.  The Court therefore concluded that individual questions of causation, reliance and damages defeated class certification of the Kentucky Class' fraud and misrepresentation claims.

Based on these conclusions, the Court of Appeals ruled that the Trial Court abused its discretion by entering the Amended Order Certifying Class, and reversed and remanded the matter to the Trial Court with instructions for the Court to vacate its prior order.  Importantly, the Court of Appeals did not find that the Trial Court abused its discretion in certifying the proposed class with respect to claims arising under the KCPA.

**IV.    The Court Of Appeals' Opinion Does Not Reverse Class Certification With Respect To Plaintiff's Claims Arising Under The Kentucky Consumer Protection Act.**

Again, the Court of Appeals' Opinion did not reverse the Trial Court's decision to certify the putative class with respect to the class claim raised under the Kentucky Consumer Protection Act.  In fact, the Court specifically concluded that the Consumer Protection statutory claim does not have the same problems as the common law claims with respect to class certification because a claim arising under the KCPA does not require proof of causation or reliance, and loss can be

13

proved on a class wide basis under the "benefit-of-the-bargain" rule.  See Exhibit C, Opinion, pp. 10-11.

In so finding, the Court quoted the KCPA, concluding that, "taking the allegations in the complaint as true for purposes of review, it is clear that Merck's actions would be unlawful under the Act."  Id., p. 11.  As cited by the Court, the language of the KCPA does not contain the element of reliance found in common law fraud claims.  See KRS 367.220(1) ("Any person who purchases or leases goods or services primarily for personal, family, or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful [under the Act] may bring [a civil action] in the Circuit Court.").

The Court then analogized the KCPA to the nearly identical Missouri consumer protection statute at issue in Plubell v. Merck, 289 S.W.3d 707, 714 (Mo. Ct. App. 2009), in which the Missouri Court of Appeals affirmed a trial court's certification of a similar class asserting claims under that state's consumer statute based upon a finding that individual questions with respect to causation, reliance, and damages did not exist under the statutory scheme.  See Exhibit N, Opinion, p. 11.  In Plubell, the Missouri Court of Appeals found that the statute required that the consumer's economic loss result from the unlawful practice at issue, but not that the actual purchase of the product be caused by the unlawful practice.  The Court noted that: "[u]nder this interpretation, causation need not be shown with respect to each individual class member's decision to purchase Vioxx, but merely that a loss resulted from the practice."  The Court further referenced the Plubell opinion in support of its conclusion that the "benefit-of-the bargain" theory of loss could be applied on a class-wide basis to claims arising under the KCPA.  Id. (citing Plubell, 289 S.W.3d at 715, for the proposition that damages are not measured by the purchase of the product in question, but by the difference in value between the product "as

represented" and the "actual value" of the product received). The Missouri Court also relied upon a New Jersey opinion for its application of the benefit of the bargain method of determining loss with respect to claims arising under the KCPA. See Exhibit Q, Opinion, p. 12 (citing Kleinmann v. Merck & Co., 8 A.3d 851 (N.J. 2009) (also applying a "benefit-of-the-bargain" theory of value/loss)).[4]

In fact, and as the Court of Appeals decision makes quite clear, the analysis employed by that Trial Court with respect to the Kentucky Class' fraud and misrepresentation claims cannot apply to a claim arising under the KCPA because, reading the statute on its face, reliance is not an element that must be established with respect to a KCPA claim. Apparently finding that Trial Court's Amended Certification Order could not be separately considered with respect to each claim, however, the Court of Appeals reversed and remanded the matter to Trial Court with instructions for the Trial Court to vacate its prior Order. As previously noted, Ratliff has requested the Trial Court to enter a Second Amended Class Certification Order certifying the proposed class only with respect to the KCPA claims asserted in Appellants' Class Action Complaint – a request that is consistent with the Court of Appeals' Opinion. The Trial Court denied the Motion due to the pending appeal. Based on the foregoing, however, Ratliff has full confidence that the Trial Court will enter an Amended Order certifying the Kentucky Class with respect to the Kentucky Consumer Protection Act claims, even if the Kentucky Supreme Court declines to reverse the Court of Appeals with respect to the common law fraud claims.

The Kentucky Class thus remains viable with respect to claims arising under the Kentucky Consumer Protection Act. It should not therefore be included within the purview of any proposed settlement in this litigation, particularly given the manner in which Merck has attempted to add it at the last minute, and it should be excluded entirely.

---

[4] The Plubell Consumer Class Action has since been settled.

## **CONCLUSION**

Based on the foregoing, Ratliff requests the Court consider the instant Objection, withhold preliminary approval of any proposed settlement encompassing Kentucky consumers, and exclude the Kentucky Action from any MDL proposed settlement so that the Kentucky Action is not included in any such settlement.

                                                                 Respectfully submitted,

                                                                 /s/ Richard A. Getty
                                                               RICHARD A. GETTY
                                                                     and
                                                               JESSICA K. CASE

                                                               THE GETTY LAW GROUP, PLLC
                                                               1900 Lexington Financial Center
                                                               250 West Main Street
                                                               Lexington, Kentucky  40507
                                                               Telephone:  (859) 259-1900
                                                               Facsimile:   (859) 259-1909

                                                               COUNSEL FOR JAMES RATLIFF,
                                                               ON BEHALF OF HIMSELF AND ALL
                                                               OTHERS SIMILARLY SITUATED

**CERTIFICATE OF SERVICE**

      I hereby certify that the foregoing Preliminary Notice of Objection has been served upon all parties by electronically uploading the same to LexisNexis File and Serve Advance in accordance with Pre-Trial Order No. 8C, and e-mailing and mailing same, postage prepaid, to the individuals listed below, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this the 4th day of March, 2013.

Russ M. Herman, Esq. (Bar No. 6819)
Leonard A. Davis, Esq. (Bar No. 14190)
Herman, Herman & Katz, L.L.C.
820 O'Keefe Avenue
New Orleans, Louisiana  70113
E-Mail:  rherman@hhklawfirm.com
Plaintiffs' Liaison Counsel

Phillip A. Wittmann, Esq. (Bar No. 13625)
Dorothy H. Wimberly, Esq. (Bar No. 18509)
Stone Pigman Walther Wittmann, L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130-3588
E-Mail:  pwittmann@stonepigman.com
E-Mail:  dwimberly@stonepigman.com
Defendants' Liaison Counsel

Ann B. Oldfather, Esq. (KY Bar No. 52553)
Oldfather Law Firm
1330 South Third Street
Louisville, Kentucky  40208
E-Mail:  aoldfather@oldfather.com
Liaison And Lead Counsel For Ineligible
Or Non-Enrolled Cases And Certain
Other Remaining PI Claims

John H. Beisner, Esq.
Skadden Arps Slate Meagher & Flom, LLP
1440 New York Avenue, N.W.
Washington, D.C.  20005
E-Mail:  John.Beisner@skadden.com
Counsel for Merck & Co., Inc.

Dawn M. Barrios, Esq.
Barrios, Kingsdorf & Casteix, LLP
701 Poydras Street, Suite 3650
New Orleans, Louisiana  70139
E-Mail:  barrios@bkc-law.com
Government Action Liaison Counsel

      /s/ Richard A. Getty
    COUNSEL FOR JAMES RATLIFF, ET AL.

jkcpld0668