PIKE CIRCUIT COURT
35ᵀᴴ JUDICIAL CIRCUIT
DIVISION II

FILED

OCT 2 2 2004

Case No. _04-CI-01493_

DAVID DE___ CLERK
___ CIRCUIT CO___

**JAMES RATLIFF, On Behalf Of Himself**
**And All Others Similarly Situated**                    **PLAINTIFFS**

**V.**                    **CLASS ACTION COMPLAINT**

**MERCK & COMPANY, INC., A Foreign**
**Corporation**                    **DEFENDANT**

\* \* \* \* \* \* \* \*

Plaintiff James Ratliff ("Ratliff"), through counsel, for his Complaint against the

Defendant Merck & Co., Inc. ("Merck") states as follows:

**INTRODUCTION**

1.        Merck announced, on September 30, 2004, a voluntary withdrawal of the drug

Vioxx from the U.S. and worldwide market because of safety concerns related to an increased

risk of cardiovascular events (including heart attacks and strokes) in patients taking Vioxx.

Vioxx is a prescription, non-steroidal anti-inflammatory drug (NSAID) that was approved by the

FDA in May 1999 for the treatment of osteoarthritis, the management of acute pain in adults, and

the treatment of menstrual symptoms.  Prior to the withdrawal of Vioxx from the worldwide

market, Merck engaged in a consistent and continuing marketing and promotional plan that was

specifically designed to minimize the potentially serious cardiovascular risks inherent in the use

of Vioxx and to misrepresent the safety of the drug as well as withhold material information

about the serious risks associated with its use.

**EXHIBIT A**

2.      Following the withdrawal of Vioxx, the Food and Drug Administration ("FDA")
issued a Public Health Advisory to advise patients who had taken Vioxx to consult with a
physician. Specifically, on September 30, 2004, the FDA advised all patients who were
currently taking Vioxx to contact their physician for guidance regarding the discontinuation and
alternative therapies. In a press release issued the same day, Merck acknowledged that patients
who were currently taking Vioxx "should contact their health care providers to discuss
discontinuing the use of Vioxx and possible alternative treatments."

3.      The Plaintiff brings this case as a class action on behalf of all Kentucky residents
who have purchased and taken Vioxx and who, upon the recommendation and advice of the FDA
and Merck, have or will contact their physicians to seek advice regarding their use of Vioxx.
Plaintiffs seek reimbursement for (a) the costs of such medical consultations, including the costs
of any diagnostic testing recommended by the class members' physicians; (b) the lost income
and related expenses the class members will have to incur in undergoing such examinations and
procedures; and (c) the cost of the Vioxx the class members purchased. Plaintiff's claims will
not exceed the sum of $75,000 exclusive of interest and costs.

4.      Plaintiff does not seek to recover in this action for any personal injury he may
have sustained as a consequence of taking Vioxx as prescribed.

## PARTIES

5.      Ratliff is a resident of Pike County, Kentucky. Plaintiff was prescribed Vioxx for
chronic osteoarthritis and took the medication for approximately three years prior to its
withdrawal from the market.

6.      Merck is a foreign corporation with its principal place of business in New Jersey.
Merck is in the business of manufacturing and/or promoting, marketing and distributing the drug

2

Vioxx. Merck does business in Kentucky and sold Vioxx in Kentucky to thousands of Kentucky consumers.

## GENERAL ALLEGATIONS

7.      The FDA approved Vioxx in May 1999 for the reduction of pain and inflammation caused by osteoarthritis, as well as for acute pain in adults and for the treatment of menstrual pain. Subsequently, the FDA approved Vioxx to treat the signs and symptoms of rheumatoid arthritis in adults and children.

8.      At the time that Vioxx and other COX-2 selective NSAIDs were approved, it was hoped that they would have a lower risk of gastrointestinal ulcers and bleeding than other NSAIDs (such as ibuprofen and naproxen). Vioxx is the only NSAID demonstrated to have a lower rate of these side effects.

9.      On September 30, 2004, Merck withdrew Vioxx from the market, claiming that its decision was prompted by the recommendation of a data safety monitoring board overseeing a long-term study of the drug for the treatment of certain forms of cancer. The study was halted because of an increased risk of serious cardiovascular events, including heart attacks and strokes, among study patients taking Vioxx compared to patients receiving a placebo. The study was being done in patients at risk for developing recurrent colon polyps and intentionally did not even address those at high risk of coronary disease.

10.     Merck contacted the FDA on September 27, 2004 to advise the agency that the long-term study of Vioxx in patients at increased risk of colon polyps had been halted. The following day, Merck informed the FDA of its decision to remove Vioxx from the market voluntarily.

11.     Information regarding the risk of cardiovascular events associated with the use of Vioxx was known to Merck shortly after the drug was approved for use by the FDA.  By June 2000, Merck had obtained information, including data from a safety study called VIGOR (Vioxx Gastrointestinal Outcomes Research) that found an increased risk of serious cardiovascular events, including heart attacks and strokes, in patients taking Vioxx compared to patients taking similar non-steroid anti-inflammatory drug.  As early as 2001, physicians at the Cleveland Clinic reported that Vioxx increased the risk of certain cardiovascular events.  Although the information was shared with the FDA and certain labeling changes were implemented in 2002, Merck elected not to withdraw the drug from the market and continued to market the drug as a safe and effective means for the reduction of pain and inflammation when Merck knew or should have known of the serious risk of harm to the Plaintiff and others for whom Vioxx had been prescribed.

12.     Other subsequent studies in patients taking Vioxx also suggested a serious increased risk of cardiovascular events.  Despite a mounting body of evidence suggesting that Vioxx materially increased the risk of serious cardiovascular injury in patients taking the drug, Merck elected to engage in promotional activities and disseminate materials for the marketing of Vioxx that were false or misleading, lacking in fair balance or otherwise misleading and attempted to discredit studies that suggested the continued use of the drug posed a serious health risk to patients.  Based on information and belief, Merck spent in excess of $100 million per year on direct-to-consumer advertising of Vioxx.

## MERCK'S MISLEADING AND DECEPTIVE PRACTICES AND ACTIVITIES

13.     Merck, which was the exclusive manufacturer and distributor of Vioxx, had a continuing duty to investigate the efficacy of the drug, to warn physicians and the public of the

4

dangers incident to prescribing the drugs, to keep abreast of scientific developments and information concerning these products and to notify the medical profession of any new or additional side effects discovered from their use.

14.     The ingestion of Vioxx exposes individuals to an increased risk of cardiovascular events, including heart attack and stroke.  In the 2000 VIGOR study, patients taking Vioxx were observed to have a four to five fold increase in myocardial infarctions compared to patients on the comparative non-steroid anti-inflammatory drug.  In the more recent colon polyps study, which allegedly prompted Merck to withdraw Vioxx from the market, it was determined that patients taking the drug have twice the risk of a heart attack compared to patients receiving a placebo.  Other studies conducted during the period in which Vioxx was available to the public have reached similar conclusions.

15.     Merck knew of the potentially harmful side effects of Vioxx since at least 1999, yet, in breach of their duty, they undertook to downplay, conceal, obfuscate and mislead physicians and others, including consumers, as to the harmful side effects of the drug, while vigorously promoting the drug's use.  In fact, following Merck's becoming aware of the harmful side effects of Vioxx, Merck is believed to have spent in excess of $100 million per year on marketing with respect to Vioxx.

16.     Merck's distortions and deceptions regarding the safety of Vioxx began almost immediately after Vioxx was introduced to the U.S. market in 1999.  As early as December, 1999, the U.S. Department of Health & Human Services ("DHHS") objected to promotional materials being disseminated by Merck that misrepresented Vioxx's safety profile, contained unsubstantiated comparative claims, and lacked fair balance. Despite the DHHS objection, Merck continued to distribute information and engage in conduct designed to distort and

misrepresent the safety and efficacy of its drug and concealed the true side effects and serious risks of harm to those using the drug. Like an ostrich with its head buried in the sand, Merck refused to conduct any studies of the effects of Vioxx on high risk coronary disease patients.

17.    In September, 2001, the DHHS issued a second formal eight page "Warning Letter" in which it criticized Merck for its continual misleading promotional activities. The DHHS accused Merck of engaging in "a promotional campaign for Vioxx that minimizes the potentially serious cardiovascular findings that were observed in the Vioxx Gastrointestinal Outcomes Research (VIGOR) study, and thus, misrepresents the safety profile for Vioxx." Merck was also accused, among other things, of making unsubstantiated superiority claims, promoting Vioxx for unapproved uses and issuing a false and misleading press release entitled "Merck Confirms Favorable Cardiovascular Safety Profile of Vioxx."

18.    Despite the DHHS "Warning Letter," Merck continued its campaign to mislead consumers and to deny the real risks that the continued use of Vioxx posed to those who took the medication. As recently as August 26, 2004, Merck issued a press release stating that it "strongly disagrees" with the conclusions of a study presented at the 20th International Conference of Pharmacoepideminology & Therapeutic Risk Management that found, once again, that the use of Vioxx significantly increased the risk of serious cardiovascular events. Merck stated that its studies showed "no significant difference in the rate of serious cardiovascular thrombotic events in patients taking Vioxx vs. placebo" and that "[b]ased on all of the data that are available from our clinical trials, Merck stands behind the efficacy and safety, including cardiovascular safety, of VIOXX." A month later, Merck withdrew Vioxx from the market, finally acknowledging the true dangers of its drug after three years of failing to do so.

6

19.     By downplaying, concealing and misrepresenting the safety and risks of Vioxx,

Merck failed in its duty to provide the physicians prescribing the drugs with adequate

information to make them so-called "learned intermediaries," leaving them with insufficient

knowledge to properly advise and warn the consuming public.  By downplaying, concealing and

misrepresenting the safety and risks of Vioxx, Merck also created and perpetuated a false public

perception that there was little or no risk of harm from the use of its product.

20.     By the time Merck elected to withdraw Vioxx from the market, the drug had been

prescribed to and used by an estimated 84 million patients worldwide.  Sales of Vioxx in 2003

alone were estimated to be $2.5 billion.  Sales in the fourth quarter of 2004 were projected to be

between $700 million and $750 million.

21.     All Kentucky residents who were prescribed and took Vioxx now need to see

their physician for consultation regarding their use of the drug, both at the behest of the FDA and

Merck.  These residents will necessarily have to incur expenses related to such consultations an

any follow-up diagnostic testing recommended by their physicians, as well as additional

economic harm, including lost time from work and related expenses and the loss of the value of

the drugs they purchased.

## CLASS ACTION ALLEGATIONS

22.     Plaintiff brings this action pursuant to CR 23 on behalf of all Kentucky residents

who have, since the FDA approval of Vioxx in 1999, taken the drug and who have already

undergone and/or will undergo the medical consultation procedure now recommended by the

FDA and Merck.  Plaintiff seeks to recover on their behalf, and on behalf of all similarly situated

Kentucky residents, the economic loss they have and will sustain as a result of these medical

consultations and any follow-up diagnostic testing recommended by their physicians, as well as

7

any income lost or expenses incurred in connection with any such medical procedures, and the costs of the Vioxx they purchased.

23.     Plaintiff is a member of the class he seeks to represent. The members of the class are so numerous that joinder is impracticable and would involve hundreds of thousands of individual litigants. Based on information and belief, as many as 84 million patients worldwide have taken Vioxx prior to its withdrawal from the market. In addition, it is estimated that more than 250,000 Kentucky residents have been prescribed and have used Vioxx.

24.     There are questions of fact or law common to the class which predominate over any questions affecting only individual members. These predominating questions include, but are not limited to:

a.     Whether Merck breached its duty to investigate the efficacy of Vioxx, to adequately warn physicians and consumers of the dangers incident to prescribing the drugs, to keep abreast of scientific developments and information concerning these products and to notify the medical profession of any new or additional information concerning the potentially dangerous side effects discovered from its use;

b.     Whether Merck engaged in a scheme and plan to downplay, obfuscate, misrepresent and conceal material information concerning Vioxx's safety profile and sought to minimize, misrepresent or conceal the truly serious cardiovascular risks that continued use of the drug posed;

c.     Whether by downplaying, concealing and misrepresenting the risks of Vioxx, Merck created and perpetuated a false public perception that there was little or no risk of harm form the use of its product;

8

d.    Whether members of the class have suffered any economic loss as a result of the Defendant's conduct.

25.    The claims of the named Plaintiff are typical of the claims of the class members in that the Plaintiff and the members of the class purchased and used Vioxx and have undergone and/or will undergo the medical consultation recommended by the FDA and Merck, and have sustained economic losses as a result.

26.    The Plaintiff will fairly and adequately represent and protect the interests of the members of the class. Plaintiff has retained counsel competent and experienced in class actions.

27.    A class action is an appropriate method for the fair and efficient adjudication of the claims asserted in this Complaint.

## COUNT I
## (Violation Of The Kentucky Consumer Protection Act)

28.    The Plaintiff incorporates herein by reference Paragraphs 1 through 27 above of this Complaint as if fully stated herein.

29.    Plaintiff is a consumer entitled to the protections of the Consumer Protection Act, KRS Chapter 367, et seq.

30.    Merck deceived the Plaintiff and the members of the proposed class in violation of the Consumer Protection Act by promoting and/or allowing the sales of Vioxx with the use of unfair, false, misleading or deceptive acts or practices in the conduct of the trade and/or commerce of Vioxx.

31.    The Plaintiff did not become aware of any facts which would have called into question the false public perception of safety which Merck had created until September 2004, when Vioxx was withdrawn from the U.S. market.

9

32.    Until that time, Merck knowingly accepted the benefits of its deception in the form of profits form the increased sales of the drugs.

33.    As a proximate result of the above-described Consumer Protection Act violations, the Plaintiff and other members of the class:  (a) purchased and used Vioxx when he would not otherwise have done so; (b) suffered economic losses consisting of the cost of purchasing the drugs; (c) suffered and/or will suffer additional economic losses in complying with the recommended medical consultation and any follow-up procedures he has undergone or will undergo; and (d) suffered and will suffer additional economic losses incidental to the medical consultation and any related procedures, including lost income and related expenses.

## COUNT II
### (Fraudulent Concealment And/Or Misrepresentation)

34.    The Plaintiff incorporates herein by reference Paragraphs 1 through 33 above of this Complaint as if fully stated herein.

35.    Merck deceived the Plaintiff and the proposed class by promoting and/or allowing the sales of Vioxx while concealing and misrepresenting material information concerning the known or potential risks of using the drug and by promoting the continued sale of the drug under circumstances which reinforced a false public perception that the use of the drug would be safe and appropriate for relief from arthritis and acute pain.

36.    Merck committed these deceptive acts and omissions with intent to defraud the Plaintiff, his prescribing physician and the consuming public.  Alternatively, Merck, knowing the medical community and consuming public was being deceived as to the safety of the drug, accepted the fruits of such deception in the form of significantly increased profits from the sales of Vioxx.  While reaping substantial profits, Merck did nothing to remove the false public perception of safety which they themselves had created and in fact actively sought to reinforce it.

10

37.   The Plaintiff justifiably relied on the above-described false public perception in making his decision to purchase Vioxx.  The Plaintiff did not become aware, nor through the exercise of reasonable diligence could he have become aware, of the risks described in this Complaint associated with Vioxx until September 2004, when it was publicly announced that Vioxx was being withdrawn from the U.S. market.

38.   As a proximate result of Merck's wrongful conduct, Plaintiff and members of the class he seeks to represent where defrauded and sustained economic damages in that the Plaintiff and members of the class: (a) purchased and used Vioxx when they would not otherwise have done so; (b) suffered economic losses consisting of the cost of purchasing the drugs; (c) suffered and/or will suffer additional economic losses in connection with the recommended medical consultation and any follow-up procedures they have undergone and/or will undergo and (d) suffered and will suffer additional economic losses incidental to the medical consultation and related procedures they have undergone and/or will undergo, including lost income and related expenses.

## COUNT III
### (Negligent And/Or Grossly Negligent Misrepresentation)

39.   The Plaintiff incorporates herein by reference Paragraphs 1 through 38 above in this Complaint as if fully set forth herein.

40.   Merck, as the manufacturer and distributor of Vioxx, had the duty to collect, investigate and disseminate to prescribing physicians full, complete and accurate information about the potential adverse effects of the use of the drug.

41.   Physicians, including the Plaintiff's and the class members' physicians, acting on behalf of their patients, would rely and did rely on the information supplied by Merck in making determinations to recommend the use of Vioxx to their patients.

11

42. In reality, Merck was in the business of supplying information to physicians who, acting as agents for their patients, shared that information with the patients.

43. Merck negligently and/or grossly negligently failed to provide full, complete and accurate information concerning the risks associated with the use of Vioxx. Merck breached its duty to collect, investigate and disseminate accurate information regarding the use of Vioxx and the Plaintiff and members of the class were injured thereby.

44. As a direct result of Merck's conduct, the Plaintiff has suffered consequential damages, the exact amount of which will be determined at trial, but not to exceed $75,000, exclusive of interest and costs.

<strong>COUNT IV</strong><br/><strong>(Unjust Enrichment)</strong>

45. Plaintiff incorporates herein by reference the allegations of Paragraphs 1 through 44 above of the Complaint.

46. By virtue of the above-described conduct, the Defendant unjustly profited from the medical visits and purchases of Vioxx by the Plaintiff and other members of the class, and thus was unjustly enriched.

47. As the direct result of Merck's conduct, the Plaintiff has suffered consequential damages, the exact amount of which will be determined at trial, but not to exceed $75,000, exclusive of interest and costs.

WHEREFORE, the Plaintiff respectfully requests Judgment on his Complaint as follows:

A. Judgment against the Defendant on Count I of the Complaint for Violation of the Kentucky Consumer Protection Act, for compensatory and punitive damages in

an amount in excess of the minimum jurisdictional limits of this Court, but not to exceed $75,000, exclusive of interests and costs;

B.      Judgment against the Defendant on Count II of the Complaint for Fraudulent Concealment And/Or Misrepresentation, for both compensatory and punitive damages, both in amounts in excess of the minimum jurisdictional limits of this Court, but not to exceed $75,000, exclusive of interests and costs;

C.      Judgment against the Defendant on Count III of the Complaint for Negligent And/Or Grossly Negligent Misrepresentation, for compensatory and punitive damages in an amount in excess of the minimum jurisdictional limits of this Court, but not to exceed $75,000, exclusive of interests and costs;

D.      Judgment against the Defendant on Count IV of the Complaint for Unjust Enrichment, for compensatory damages in an amount in excess of the minimum jurisdictional limits of this Court, but not to exceed $75,000, exclusive of interests and costs;

E.      The certification of the class action asserted herein;

F.      Creation of a fund for the payment of future economic losses, including the costs of future medical management and related expenses;

G.      A jury trial on all Counts of the Complaint;

H.      A reasonable attorney's fee;

I.      Any and all other and further relief to which the Plaintiff may be entitled.

Respectfully submitted,

RICHARD A. GETTY
and
MASON L. MILLER

GETTY & MAYO, PLLC
1900 Lexington Financial Center
250 West Main Street
Lexington, Kentucky 40507
(859) 259-1900
(859) 259-1909 (fax)

COUNSEL FOR PLAINTIFF

U:\GK&M\mmiller\pleading\mlmpld0812.doc

14