# COMMONWEALTH OF KENTUCKY
## SUPREME COURT
### CASE NO. 2012-SC-00162-DG

JAMES RATLIFF, ON BEHALF OF HIMSELF
AND ALL OTHERS SIMILARLY SITUATED            APPELLANT

v.      On Discretionary Review from the Kentucky Court of Appeals
Case No. 2011-CA-00234-MR

MERCK & COMPANY, INC.            APPELLEE

---

## BRIEF ON BEHALF OF *AMICUS CURIAE*, KENTUCKY JUSTICE ASSOCIATION

---

Submitted by:

KEVIN C. BURKE
125 South Seventh Street
Louisville, Kentucky 40202
(502) 584-1403

COUNSEL FOR *AMICUS CURIAE*
KENTUCKY JUSTICE ASSOCIATION

## CERTIFICATE OF SERVICE

I hereby certify that on this 31st day of January, 2013, ten (10) originals of this brief were served via Federal Express upon Susan Stokley Clary, Clerk of the Supreme Court, Room 209, 700 Capital Ave., Frankfort, KY 40601, with one (1) copy served by regular mail upon each of the following: Sam Givens, Clerk of the Kentucky Court of Appeals, 360 Democrat Drive, Frankfort, KY 40601; Richard Getty and Jessica Case, The Getty Law Group, PLLC, 1900 Lexington Financial Center, 250 West Main Street, Lexington, Kentucky 40507; Susan Pope, Frost Brown Todd, LLC, 250 W. Main Street, Suite 2800, Lexington, Kentucky 40507; John H. Beisner and Jessica D. Miller, Skadden, Arps, Slate, Meagher & Flom, LLP, 1440 New York Avenue, NW, Washington, D.C. 20005; and Honorable Steven Combs, Judge, Pike Circuit Court, 423 Hall of Justice, 172 Division Street, Pikeville, Kentucky 41501.

_____
KEVIN C. BURKE

**EXHIBIT K**

## STATEMENT OF POINTS AND AUTHORITIES

**INTRODUCTION**..................................................................................................1

    CR 23.02(c)..........................................................................................................1

    CR 23..................................................................................................................1

    *Wiley v. Adkins*,
    48 S.W.3d 20 (Ky. 2001).....................................................................................1

**PURPOSE AND INTEREST OF *AMICUS CURIAE*** ...............................................1

    CR 23..................................................................................................................1

    *Amchem Products, Inc. v. Windsor*,
    521 U.S. 591 (1997)............................................................................................2

    *Carnegie v. Household Int'l, Inc.*,
    376 F.3d 656 (7th Cir. 2004)................................................................................2

    *Revenue Cabinet v. St. Ledger*,
    955 S.W.2d 539 (Ky. App. 1997).........................................................................2

    *Schnuerle v. Insight Communications Co., LP*,
    376 S.W.3d 561 (Ky. 2012).................................................................................2

    KRS 367.110........................................................................................................2

**STATEMENT OF THE CASE**...................................................................................2

    A.    FDA Approval and Merck's Sale of Vioxx..............................................2

    *Plubell v. Merck & Co., Inc.*,
    289 S.W.3d 707 (Mo. App. 2009).........................................................................2

    B.    Merck's Concealment of the Risks of Vioxx, FDA Warning
            Letters, Guilty Plea in Federal District Court, and
            Settlement of Statewide Class Action in Missouri............................3

    *Plubell v. Merck & Co., Inc.*,
    289 S.W.3d 707 (Mo. App. 2009).........................................................................4

    C.    The Economic Damages Class Action in Kentucky..............................4

        CR 23......................................................................................................5

        CR 23.02(c)............................................................................................5

        *Plubell v. Merck & Co., Inc.*,
        289 S.W.3d 707 (Mo. App. 2009)...........................................................6

**ARGUMENT**..........................................................................................................6

I.    **A CLASS CERTIFICATION ORDER IS ENTITLED TO GREAT DEFERENCE ON APPEAL**...................................................6

    *Sowders v. Atkins*,
    646 S.W.2d 344 (Ky. 1983).........................................................................6

    *Shahriar v. Smith & Wollensky Restaurant Group, Inc.*,
    659 F.3d 234 (2d Cir. 2011).......................................................................6

    CR 23...........................................................................................................7

    Fed.R.Civ.P. 23...........................................................................................7

    *Curtis Green & Clay Green, Inc. v. Clark*,
    318 S.W.3d 98 (Ky. App. 2010)..................................................................7

    *Reeb v. Ohio Dep't of Rehab. & Corr.*,
    435 F.3d 639 (6th Cir. 2006).......................................................................7

    *Gulf Oil Co. v. Bernard*,
    452 U.S. 89 (1981)......................................................................................7

    *Esplin v. Hirschi*,
    402 F.2d 94 (10th Cir.1968)........................................................................7

    *Wal-Mart Stores, Inc. v. Dukes*,
    131 S.Ct. 2541 (2011).................................................................................7

II.   **THE COURT OF APPEALS CONDUCTED AN IMPROPER MERITS AND DAMAGES INQUIRY IN SETTING ASIDE THE CLASS CERTIFICATION ORDER UNDER CR 23.02(C)**............................7

CR 23.02(c)..................................................................................8, 9

*Wal-Mart Stores, Inc. v. Dukes,*
131 S.Ct. 2541 (2011)......................................................................8, 9

*Eisen v. Carlisle & Jacquelin,*
417 U.S. 156 (1974).........................................................................8, 9

*Dalesandro v. International Paper Co.,*
214 F.R.D. 473 (S.D.Oh.2003)..............................................................8

*Gen. Telephone Co. of Southwest v. Falcon,*
102 S.Ct. 2364 (1982)......................................................................8, 9

*Beattie v. CenturyTel Inc.,*
511 F.3d 554 (6th Cir.2007)..................................................................8

CR 23.01...........................................................................................8, 9

*Khaliel v. Norton Healthcare Inc. Retirement Plan,*
2012 WL 6633962 (W.D.Ky. 2012)........................................................9

III.  **INDIVIDUAL QUESTIONS OF "CAUSATION, RELIANCE, AND DAMAGES" DO NOT DEFEAT CLASS CERTIFICATION UNDER CR 23.02(C)**...............................................................9

*Simon v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
482 F.2d 880 (5th Cir. 1973)................................................................10

*Wiley v. Adkins,*
48 S.W.3d 20 (Ky. 2001)........................................................10, 11, 12

*Wiley v. Adams et al.,*
1998-CA-1483 (Ky. App. 1999)............................................................11

CR 23.01(b).................................................................................11, 12

CR 23.02(c).................................................................................11, 12

Fed.R.Civ.P 23(b), Advisory Notes.........................................................12

*Amchem Products, Inc. v. Windsor,*
521 U.S. 591 (1997)............................................................................12

*Simpson v. Prudential Ins. Co. of Am.*,
1994 Ohio App. LEXIS 3431 (Aug. 8, 1994).................................................................13

*Hyland v. Homeservices of Am.*,
2008 U.S. Dist. LEXIS 90892 (W.D. Ky. 2008)............................................................13

*Dalesandro v. International Paper Co.*,
214 F.R.D. 473 (S.D.Oh.2003)......................................................................................13

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
148 F.3d 283 (3d Cir. 1998)...........................................................................................13

*Vasquez v. Superior Court of San Joaquin County*,
4 Cal.3d 800 (Cal. 1971)................................................................................................13

*Wilner v. Sunset Life Ins. Co.*,
78 Cal. App. 4th 952 (Cal. 2000)...................................................................................13

*Grace v. Perception Tech. Corp.*,
128 F.R.D. 165 (D. Mass. 1989)....................................................................................13

*In re Neurontin Mktg. & Sales Practices Litig.*,
2011 U.S. Dist. LEXIS 61636 (D. Mass. 2011).............................................................13

*Adams v. Little Missouri Minerals Ass'n*,
143 N.W.2d 659 (N.D. 1966).........................................................................................13

*Cope v. Metro. Life Ins. Co.*,
696 N.E.2d 1001 (Ohio 1998)........................................................................................13

IV.   **CLASS CERTIFICATION FOR THE KENTUCKY CONSUMER
       PROTECTION ACT CLAIMS IS PROPER**.................................................................14

KRS 367.110....................................................................................................................14

*Plubell v. Merck & Co., Inc.*,
289 S.W.3d 707 (Mo. App. 2009)..................................................................................14

**CONCLUSION**..............................................................................................................................15

## INTRODUCTION

In reversing based on CR 23.02(c), the Opinion of the Court of Appeals effectively removes almost all fraudulent and negligent misrepresentation claims from the purview of CR 23. The Opinion also effectively disregards precedent in *Wiley v. Adkins*, 48 S.W.3d 20 (Ky. 2001). *Wiley* not only permitted class certification of common law consumer fraud claims—it directed certification on remand. This Court should reverse and reinstate, in full, the Pike Circuit Court order certifying this case as a class action.

## PURPOSE AND INTEREST OF *AMICUS CURIAE*

Founded in 1954, the Kentucky Justice Association (formerly Kentucky Academy of Trial Attorneys) is a non-profit organization with over 1400 members dedicated to protecting the health and safety of Kentuckians, enhancing consumer protection, and preserving every citizen's right to trial by jury.

CR 23 is an essential consumer protection device—especially when misconduct results in relatively small monetary damages to each member of a large group. The small value of each individual claim makes it impossible for any one consumer to vindicate his or her rights in court. Here, the economic damages inflicted by Merck—approximately $350 for Ratliff—make it impossible for Ratliff, or anyone else in his position, to pursue litigation against a multi-billion dollar corporation. Simply put, without the class action mechanism, there is no meaningful access to the courts for consumers in like Ratliff, and therefore no accountability for wrongdoers like Merck.

Courts recognize the necessity of class actions to vindicate individuals' rights. As stated by the United States Supreme Court, the "policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive

for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 617 (1997). Put another way, "[t]he *realistic* alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30." *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004) (emphasis in original). Kentucky courts, too, recognize the importance of class actions to vindicate individuals' rights. *See Revenue Cabinet v. St. Ledger*, 955 S.W.2d 539, 544 (Ky. App. 1997) (finding it against "the public interest" to discourage "class action suits which successfully vindicate the rights of many individuals"); see also *Schnuerle v. Insight Communications Co., LP*, 376 S.W.3d 561 (Ky. 2012)("the purpose of the class action under CR 23 is to provide a remedy" and avoid the "practical effect of *de minimis* claims").

Unless this case is allowed to proceed as a statewide class, tortfeasors like Merck enjoy immunity at odds with basic tort principles and the Kentucky Consumer Protection Act, KRS 367.110 *et seq*. Accordingly, *Amicus Curiae* the Kentucky Justice Association submits this brief in support of Appellant's position.

## STATEMENT OF THE CASE[1]

### A.     FDA Approval and Merck's Sale of Vioxx

In May of 1999, Merck received FDA approval to manufacture and market the prescription drug Vioxx. Vioxx was advertised directly to consumers and sold as a non-

---

[1] The background facts and procedural history are taken from the findings by the Missouri Court of Appeals in *Plubell v. Merck & Co., Inc.*, 289 S.W.3d 707 (Mo. App. 2009), as well as the Appellant's Statement of the Case.

2

steroidal anti-inflammatory drug and pain medication for the treatment of certain arthritic conditions, acute pain, and dysmenorrheal. By the year 2000, the drug's worldwide sales exceeded $2 billion. By 2001, Merck reported that Vioxx was "the world's fastest growing branded prescription" and its second largest-selling medicine.

### B. Merck's Concealment of the Risks of Vioxx, FDA Warning Letters, Guilty Plea in Federal District Court, and Settlement of Statewide Class Action in Missouri

A study performed by Merck between January 1999 and March 2000 (the VIGOR study) showed that people who took Vioxx had a heart attack rate four to five times higher than participants taking naproxen. In June of 2000, an industry-sponsored study showed that Vioxx resulted in an increased risk of hypertension and stroke. Merck concealed these results—and sold Vioxx anyway.

In 1999 and again in 2001, the FDA issued "Warning Letters" to Merck objecting to its promotional materials and representations of Vioxx's risks. Subsequently, studies showing similar results were published in the Journal of the American Medical Association, the Journal of the American College of Cardiology, and the Journal of Science. On September 30, 2004, Merck withdrew Vioxx from the market, citing a clinical trial showing an "increased relative risk for confirmed cardiovascular events."

In early 2012, Merck pled guilty, in federal district court, to violations of the Food, Drug, and Cosmetic Act for introducing Vioxx into interstate commerce as a misbranded drug. In connection with the criminal plea, Merck paid civil fines and agreed to enter into an expansive corporate integrity agreement with the Office of Inspector General of the Department of Health and Human Services.

In November 2012, Merck announced that it had reached a settlement in *Plubell v. Merck & Co.*, a statewide class action brought on behalf of Missouri residents. The settlement occurred after the Missouri Court of Appeals affirmed an order certifying the case as a class action. *Plubell v. Merck & Co., Inc.*, 289 S.W.3d 707 (Mo. App. 2009). The class consisted of Missouri consumers who purchased Vioxx and claimed only economic (rather than physical) injury. *Plubell* involved claims alleging that Merck's promotion and sale of Vioxx constituted unlawful and unfair business practices under the Missouri Merchandising Practices Act (MMPA). As the Kentucky Court of Appeals recognized in this case, the MMPA is "a consumer protection statute nearly identical to our own." Opinion at 11.

### C.    The Economic Damages Class Action in Kentucky

James Ratliff is a resident of Pike County, Kentucky. In January of 2000, Ratliff began taking Vioxx twice daily. His insurance covered most of the cost of the drug. However, Ratliff still had to pay $5 out-of-pocket each month to fill his Vioxx prescription. Ratliff took Vioxx for three years, spending over $75 to purchase the drug. After experiencing severe chest pains, labored breathing, lethargy, bleeding, and other uncomfortable side effects, Ratliff discontinued use of Vioxx in early 2004, months before the drug was removed from the market. Ratliff since obtained a medical consultation suggested by the FDA, a consultation that cost approximately $180, as well as a screening by a gastroenterologist to assess gastrointestinal bleeding and any cardiovascular damage he may have sustained because of Vioxx.

In 2004, Ratliff filed suit in Pike Circuit Court on behalf of all Kentucky residents who had purchased and taken Vioxx. Ratliff alleged violations of the Kentucky

4

Consumer Protection Act, fraudulent and negligent misrepresentation, and unjust enrichment. Ratliff sought reimbursement for (a) the costs of medical consultations, including the costs of any diagnostic testing recommended by the class members' physicians; (b) the lost income and related expenses the class members have, or will have to incur in undergoing such examinations and procedures; and (c) the cost of the Vioxx the class members purchased. Ratliff's economic damages of approximately $350 were too small to pursue on an individual basis against a multi-billion dollar corporate defendant like Merck. Ratliff's situation mirrors that of several hundred thousand Vioxx users across Kentucky —and the Missouri residents who would not receive any compensation but for the successful resolution of a statewide class action against Merck.

Following the tortuous litigation path described in Appellant's brief, and after extensive briefing and arguments regarding class certification, the Pike Circuit Court certified this case as a class action in 2010. Despite Kentucky case law prohibiting the practice, Merck filed a petition for an extraordinary writ in the Court of Appeals. The Court of Appeals appropriately denied the petition. Merck then appealed to this Court and this Court correctly affirmed.

Seizing on an amendment to CR 23 in January 2011, Merck took an interlocutory appeal of the class certification order to the Kentucky Court of Appeals. On February 10, 2012, the Court of Appeals reversed the Pike Circuit Court class certification order— effectively finding that claims of fraudulent or negligent misrepresentation are *never* appropriate for statewide class certification, except, perhaps, in securities litigation, because common questions cannot predominate and the class action device is never a superior mechanism under CR 23.02(c). Opinion at 16. As grounds, the Court found that

5

such claims involve individualized proof of causation, reliance, and damages so the claims must be pursued on an individual basis—even though the Court acknowledged that Ratliff alleged a consistent pattern of deception by Merck on all class members. *Id.* at 12. The Court summarily determined that unjust enrichment claims would not be appropriate for class certification for the same reasons. *Id.* at 16. Despite the reversal, the Court did not take issue with class certification of the Kentucky Consumer Protection Act claims, which the Court of Appeals agreed was "identical" to *Plubell v. Merck & Co., Inc., supra.* Opinion at 10-11. Indeed, the Opinion expressly holds that the analysis employed by the Court of Appeals with respect to the misrepresentation claims *does not* apply to the KCPA analysis.

*Amicus Curiae* agrees that certification of the KCPA claims is appropriate consistent with *Plubell*. This Court should therefore not disturb any aspect of the lower courts' analysis that authorizes certification of the KCPA claims on a class-wide basis. *Amicus Curiae* does, however, take issue with the remainder of the Court of Appeals' Opinion.

## ARGUMENT

### I. A CLASS CERTIFICATION ORDER IS ENTITLED TO GREAT DEFERENCE ON APPEAL

An order certifying a class is generally reviewed under a deferential abuse of discretion standard. *Sowders v. Atkins*, 646 S.W.2d 344, 346 (Ky. 1983). More importantly, an *order certifying a class* is entitled to *greater* deference on appeal than an order denying class certification. *Shahriar v. Smith & Wollensky Restaurant Group, Inc.*, 659 F.3d 234, 205 (2d Cir. 2011)( "An appellate court, however, is 'noticeably less deferential ... when [the district] court has denied class status than when it has certified a

6

class'").[2] This is because the circuit court "maintains substantial discretion in determining whether to certify a class, as it possesses the inherent power to manage and control its own pending litigation." *Reeb v. Ohio Dep't of Rehab. & Corr.*, 435 F.3d 639, 643 (6th Cir. 2006) (citations omitted), and the circuit court has more intimate knowledge of the facts, which places it in a more favorable position to judge whether the requirements for class certification have been met. *Id.* at 346. Furthermore, courts recognize that "[c]lass actions serve an important function in our system of civil justice," *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99 (1981), so courts construe class action rules liberally, resolving all doubts in favor of class certification. *Esplin v. Hirschi*, 402 F.2d 94, 99 (10th Cir.1968) ("[I]f there is to be an error made, let it be in favor and not against the maintenance of the class action.").

Although ostensibly applying an abuse of discretion standard, the Court of Appeals applied a less deferential standard of review by conducting an improper merits and damages inquiry *de novo*. This was likely influenced by the Court's misunderstanding of the "rigorous analysis" requirement and the Supreme Court's analysis in *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541 (2011).

## II. THE COURT OF APPEALS CONDUCTED AN IMPROPER MERITS AND DAMAGES INQUIRY IN SETTING ASIDE THE CLASS CERTIFICATION ORDER UNDER CR 23.02(C)

The Court of Appeals reversed the Pike Circuit Court's class certification order

---

[2] The prerequisites in CR 23 and Fed.R.Civ.P. 23 are similar. Federal case law is therefore persuasive. *Curtis Green & Clay Green, Inc. v. Clark*, 318 S.W.3d 98, 105 (Ky. App. 2010) ("It is well established that Kentucky courts rely upon Federal case law when interpreting a Kentucky rule of procedure that is similar to its federal counterpart").

7

solely because the claims[3] purportedly did not satisfy the "predominance" and "superiority" component of CR 23.02(c). Opinion at 16. The Court prefaced its analysis by explaining that it has an obligation to conduct a "rigorous analysis" of the merits pursuant to *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541 (2011). Opinion at 8.

However, the appropriate "rigorous analysis" is not a "rigorous analysis" of the merits, individual damages, or even the predominance and superiority components of CR 23.02(c). *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974) (nothing in Rule 23 "gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action"); *Dalesandro v. International Paper Co.*, 214 F.R.D. 473, 484 (S.D.Oh.2003)("the only individual questions would seem to be the individual calculations of benefits due, which goes to the issue of damages and which does not preclude [class] certification"). ***Instead, the "rigorous analysis" determines if the CR 23.01 prerequisites have been satisfied (numerosity, commonality, typicality, and adequacy of representation).*** *Gen. Telephone Co. of Southwest v. Falcon*, 102 S.Ct. 2364, 2372 (1982), *see Beattie v. CenturyTel Inc.*, 511 F.3d 554, 560 (6th Cir.2007). Here, the Court of Appeals did not take issue with the Pike Circuit Court's findings with regard to CR 23.01. The Court of Appeals reversed based solely on the predominance and superiority components of CR 23.02(c). This misunderstanding of the appropriate "rigorous analysis" led the Court of Appeals to improperly look to the merits and individual damages in determining whether class certification was appropriate under CR 23.02(c).

Moreover, the United States Supreme Court's reasoning in *Wal-Mart Stores, Inc.*

---

[3] Excepting the KCPA claims, which the Court of Appeals acknowledged would be appropriate for class certification.

8

*v. Dukes,* 131 S.Ct. 2541, 2551 (2011) has no application to this case. *Dukes* involved a nationwide class involving 1.5 million current and former employees who alleged Wal-Mart discriminated against them in violation of Title VII despite different store policies in different states. The Supreme Court applied the "rigorous analysis" to the "commonality" prerequisite in the federal equivalent of CR 23.01. *Dukes* does not mention—let alone require—a "rigorous analysis" of the predominance/ superiority components of CR 23.02(c). Moreover, *Dukes* did not overrule *Eisen, supra* with regard to a merits inquiry. Rather, the Supreme Court in *Dukes* clarified its prior holdings in *Eisen* and *Falcon*. *Dukes* held that in some cases "proof of commonality" may "entail some overlap with the merits." 131 S.Ct. at 2552. However, despite recognizing that a court may need to "touch" on the merits depending on the nature of the claim, *Dukes* did not change the general rule that class certification does not warrant a merits inquiry. *Id.* at 2551; *see also Khaliel v. Norton Healthcare Inc. Retirement Plan,* 2012 WL 6633962 at *1(W.D.Ky. 2012)("*Dukes* does not ... require a court to delve into the merits of a purported class's claims in all circumstances").

Accordingly, the Court of Appeals erred in performing a "rigorous analysis," first of the merits, and then in second-guessing the circuit court's predominance/superiority finding under CR 23.02(c).

### III. INDIVIDUAL QUESTIONS OF "CAUSATION, RELIANCE, AND DAMAGES" DO NOT DEFEAT CLASS CERTIFICATION UNDER CR 23.02(C).

Even if Court of Appeals performed the appropriate "rigorous analysis" as directed by *Dukes*, the Court noted that "in some cases involving fraud and/or misrepresentation, class action may still be appropriate where common issues

9

predominate over individualized issues and arise from a single fraudulent scheme or conspiracy or from identical misrepresentations." Opinion at 13. The Court also noted that "[i]ndeed, fraud and misrepresentation claims only tend to be uniformly denied for class certification where there is a 'material variation in the representations made [to the putative class members] or in the degrees of reliance thereupon.'" *Id.* (quoting *Simon v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 482 F.2d 880, 882 (5th Cir. 1973)). The Court even acknowledged that Ratliff alleges ***a consistent pattern of deception lasting essentially the entire time that Vioxx was on the market.*** *Id.* The Court of Appeals, however, posited that a class action based on fraudulent representations is only appropriate in securities litigation where "fraud on the market" is alleged, and because this case does not involve securities litigation, class certification is inappropriate. Opinion at 13-15. The Court reasoned that a class action is inappropriate, apparently outside of securities litigation, because individual questions of "causation, reliance, and damages" would have to be decided after "the common questions of Merck's representations in its marketing campaign were decided," and then the case "would essentially fragment into a series of amalgamated 'mini-trials' on each of these individualized questions." *Id.* at 15-16.

     As an initial matter, the Court of Appeals' Opinion effectively ignores the holding in *Wiley v. Adkins*, 48 S.W.3d 20 (Ky. 2001). In *Wiley*, this Court considered a consumer fraud class action brought by students of Excel College, a private business college in Corbin, Kentucky. The plaintiffs alleged that the College and Wiley, its proprietor, defrauded the students. Specifically, the complaint alleged:

> ...that the college and Wiley committed fraud by inducing them to enroll in the College with false promises, by causing misleading advertisements

10

>to be placed in the newspapers, by indicating that the appellees' credits could be transferred to other colleges and universities, by arranging government-sponsored federally insured loans, and by otherwise defrauding them. The appellees contended that they were entitled to recover compensatory damages for lost tuition, damages for lost educational opportunities including delay of entry into the labor market, and punitive damages.[4]

An amended complaint later added Huntington Federal Savings and Loan Association as a defendant, claiming that it made federally insured student loans to a majority of the plaintiffs knowing that Wiley was committing fraud.

The circuit court in *Wiley* certified the students' common law fraud claims as a class action. The case was tried in Wiley's absence, resulting in a significant verdict. Wiley appealed the order certifying the class, and alleged that he had no notice of the trial date. The Court of Appeals affirmed. This Court accepted discretionary review. While this Court found that Wiley received inadequate notice, and remanded the case for a new trial, this Court considered whether class certification was appropriate because "[u]pon retrial, Wiley may choose to challenge the class designation. Thus, we address the merits of this issue." *Wiley v. Adkins*, 48 S.W.3d 20, 23 (Ky. 2001). In addressing whether class certification was appropriate, this Court held:

>CR 23.01(b) requires that there must be questions of law or fact common to the class, but it does not require that all questions of law or fact be common. In addition, CR 23.02(c) requires that the questions of law or fact that are common to the members of the class predominate over the questions which affect individual members. *As each member of the class was a former student of the college who claimed to have been the victim of fraud*, we agree with the Court of Appeals that the trial judge did not err by maintaining this case as a class action. *It is not necessary that there be a complete identity of facts relating to all members as long as there is a common nucleus of operative facts. Id.*(emphasis added).

---

[4] See Court of Appeals Opinion in *Wiley v. Adams et al.*, 1998-CA-1483 (Ky. App. 1999), slip op. at 1-2. Available at: http://opinions.kycourts.net/COA/1998-CA-001493.pdf.

11

This Court held that class certification of the students' common law fraud claims was appropriate, although *Wiley* involved: (1) myriad sources of misrepresentation (e.g. newspaper advertisements vs. direct communication); (2) issues of individual reliance (whether each student relied on a specific representation, and, if so, which representation each student relied upon), and (3) individual damages (the amount owed to each student differed). But those circumstances did not warrant denial of class certification. Indeed, this Court *ordered* certification upon remand after finding that ***both*** CR 23.01(b)(commonality) ***and*** CR 23.02(c)(predominance and superiority) had been met.

In this case, Ratliff alleges uniform deception: Merck's criminal concealment of Vioxx's known risks. Here, every member of the class received and took Vioxx; every class member and/or every class member's physician had incomplete and inaccurate information as to the risks associated with Vioxx (as Merck concealed them), and therefore every class member purchased and ingested Vioxx in reliance on Merck's fraudulent and/or negligent misrepresentations. In many ways, this case presents stronger facts for class certification than the facts in *Wiley*.

Consistent with *Wiley*, the Advisory Committee notes to Fed.R.Civ.P 23(b), in considering the predominance requirement, state:

> "[t]he court is required to find, as a condition of holding that a class action may be maintained under this subdivision, that the questions common to the class predominate over the questions affecting individual members....In this view, *a fraud perpetrated on numerous persons by the use of similar misrepresentations may be an appealing situation for a class action*, and it may remain so despite the need, if liability is found, for separate determination of the damages suffered by individuals within the class." (emphasis added).

Potential individual questions of reliance do not preclude a finding of predominance. *See Amchem Prods. v. Windsor, supra* at 625 (noting that "predominance

12

is a test readily met in certain cases alleging *consumer or securities fraud or violations of the antitrust laws*" (emphasis added)); *Simpson v. Prudential Ins. Co. of Am.*, 1994 Ohio App. LEXIS 3431 (Aug. 8, 1994) (noting that there is no rule excluding claims containing an element of reliance from class certification, and that "[t]he drafters of Civ. R. 23 could easily have expressed such an exclusion had that been their intent"). Neither do the merits of the claims. *Hyland v. Homeservices of Am.*, 2008 U.S. Dist. LEXIS 90892 at *18 (W.D. Ky. Nov. 7, 2008)(Rule 23 is wholly procedural and has nothing to do with the merits of the claims). And neither do the individual amount of damages. *Dalesandro v. International Paper Co.*, 214 F.R.D. 473, 484 (S.D.Oh.2003)(difference in individual damages does not warrant denial of class certification).

Finally, other jurisdictions permit a presumption or inference of reliance and causation, where undisclosed fraudulent conduct, concealment, or omissions of material fact are common to the class in the context of common law fraud and or misrepresentation claims.[5]

---

[5] *See, Krell v. Prudential Ins. Co. of Am. (In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions)*, 148 F.3d 283 (3d Cir. 1998) (affirming trial court's finding that an insurance company's national sales scheme presented predominating common issues – the class comprised several million life insurance policyholders in 51 jurisdictions alleging common law fraud, unjust enrichment and other claims, all based on Prudential's deceptive sales practices); *Vasquez v. Superior Court of San Joaquin County*, 4 Cal.3d 800 (Cal. 1971); *Wilner v. Sunset Life Ins. Co.*, 78 Cal. App. 4th 952 (Cal. 2000) (applying Vasquez); *Grace v. Perception Tech. Corp.*, 128 F.R.D. 165, 171 (D. Mass. 1989) (certifying common law fraud and negligent misrepresentation claims); *In re Neurontin Mktg. & Sales Practices Litig.*, 2011 U.S. Dist. LEXIS 61636 at *52 (D. Mass. May 17, 2011) (addressing similar facts and finding that where the defendant's conduct with respect to the dissemination of information is uniform throughout the market, common issues may predominate with respect to the issue of liability); *Adams v. Little Missouri Minerals Ass'n*, 143 N.W.2d 659, 684-85 (N.D. 1966) (inference of reliance is necessary where material facts are suppressed); *Cope v. Metro. Life Ins. Co.*, 696 N.E.2d 1001 (Ohio 1998) (reversing a trial court's denial of class certification with respect to

13

Accordingly, the Court of Appeals erred in finding that individual questions of "causation, reliance, and damages" warrant reversal of the Pike Circuit Court order certifying the class under CR 23.02(c).[6]

## IV. CLASS CERTIFICATION FOR THE KENTUCKY CONSUMER PROTECTION ACT CLAIMS IS PROPER.

In light of the Court of Appeals' Opinion, a statewide class action is still maintainable under the Kentucky Consumer Protection Act, KRS 367.110 *et seq.* In *Plubell v. Merck & Co., Inc.*, 289 S.W.3d 707 (Mo. App. 2009), the Missouri Court of Appeals affirmed certification of a statewide class action based on identical consumer claims against Merck. Our Court of Appeals cited *Plubell* approvingly, and noted that *Plubell* was based "a consumer protection statute nearly identical to our own." Opinion at 11. The Court of Appeals also indicated that its analysis with respect to the misrepresentation claims *did not* extend to the KCPA claims. Certainly, there is no good reason to deny the citizens of this Commonwealth a remedy that is now available to Missouri residents based on identical statutory claims against Merck. Indeed, there is nothing unique about Missouri law, or significantly different from Kentucky law, to preclude a recovery against Merck based on the KCPA. Class certification of the KCPA claims was appropriate and consistent with *Plubell*. This Court should therefore not disturb the lower courts' rulings which permit the KCPA claims to proceed on a class-wide basis.

---

common law fraud claims, finding that element of reliance could be inferred from uniform misrepresentations or omissions).

[6] Although not a focus of this *amicus* brief, the Court of Appeals' analysis with regard to unjust enrichment suffers from the same flaw: the individual experiences of the class members in using Vioxx do not, as matter of law or as an abuse of discretion, warrant reversal of the circuit court's order.

14

## CONCLUSION

Without the class action device, Appellant and similarly situated consumers cannot assert their claims on an individual basis—effectively immunizing Merck from liability to Kentucky Consumers for its criminal conduct and fraudulent concealment. The Pike Circuit Court did not abuse its discretion in certifying the class, and the Court of Appeals applied an improper legal standard in finding otherwise. The Court of Appeals also ignored controlling precedent, effectively prohibiting statewide consumer fraud class actions outside the securities litigation context. Finally, the Court of Appeals ruling does not prohibit class certification of the KCPA claims, which, according to the Court of Appeals' reasoning, are still capable of class-wide resolution. *Amicus Curiae*, the Kentucky Justice Association, respectfully requests that this Court reverse the Opinion of the Court of Appeals and reinstate the Pike Circuit Court class certification order in full.

Respectfully submitted,

_____
KEVIN C. BURKE
125 South Seventh Street
Louisville, Kentucky 40202
(502) 584-1403

COUNSEL FOR *AMICUS CURIAE*
KENTUCKY JUSTICE ASSOCIATION