
Caution
As of: March 4, 2013 4:35 PM EST

# Plubell v. Merck & Co.

Court of Appeals of Missouri, Western District, Division One
May 12, 2009, Decided; May 12, 2009, Opinion Filed
DOCKET NUMBER WD69808

**Reporter:** 289 S.W.3d 707; 2009 Mo. App. LEXIS 597

MARY PLUBELL, ET AL., Respondent, v. MERCK & CO., INC., Appellant.

**Subsequent History:** Transfer denied by *Plubell v. Merck & Co., 2009 Mo. LEXIS 448 (Mo., Sept. 1, 2009)*

**Prior History:** [**1] Appeal from the Circuit Court of Jackson County, Missouri. The Honorable William Stephen Nixon, Judge.

| Core Terms |
| --- |

unlawful practice, trial court, class certification, predominance, ascertainable loss, class member, class action, misrepresentation, concealment, adequacy, common issue, omission, class representative, suppression, deception, merchandise, markedly, modified, leases, underlying fact, prescription, suffice, facie

| Case Summary |
| --- |

**Procedural Posture**
Appellant manufacturer sought review of an order from the Circuit Court of Jackson County (Missouri), which granted class certification to respondent consumers in an action under Missouri's Merchandising Practices Act (MMPA), *Mo. Rev. Stat. §§ 407.010 to 407.130* (Cum. Supp. 2008), alleging that the manufacturer had engaged in unlawful practices by failing to disclose and actively concealing the risks of a pharmaceutical drug.

**Overview**
The complaint alleged that the class members suffered economic damages in that the product was worth less than it would have been if the manufacturer's representations had been true. The court determined that the class certification requirements of Mo. Sup. Ct. R. 52.08(a) had been met. The action met the predominance requirement of Rule 52.08(b)(3) because the legality of the manufacturer's conduct was a common question that was central to the case. Because the MMPA contained no scienter requirement for civil liability, the manufacturer's knowledge of the drug's risks was not an issue requiring individualized proof. Evidence of individual misrepresentations was not necessary because a continuing violation was alleged and because *Mo. Rev. Stat. § 407.020.1* (Cum. Supp. 2008) did not require proof of when an unlawful practice was committed. Reliance did not have to be shown. The allegation of loss under the benefit-of-the-bargain rule was sufficient under *Mo. Rev. Stat. § 407.025* (Cum. Supp. 2008). The typicality and adequacy requirements of Rule 52.08(a)(3) were met because the class representatives alleged the same conduct by the manufacturer and had no conflicts of interest.

**Outcome**
The court affirmed the trial court's order granting class certification.

| LexisNexis® Headnotes |
| --- |

Civil Procedure > Special Proceedings > Class Actions > Appellate Review

*HN1* Whether to certify a class is committed

**EXHIBIT N**

to the trial court's discretion. The appellate court reverses only if its ruling is so arbitrary and unreasonable as to shock one's sense of justice and indicate a lack of careful consideration. This may occur where the court certifies the class because of an erroneous conclusion of law or without a rational basis in the record.

Antitrust & Trade Law > Consumer Protection > Deceptive & Unfair Trade Practices > State Regulation

*HN2* The purpose of Missouri 's Merchandising Practices Act (MMPA), *Mo. Rev. Stat. §§ 407.010 to 407.130* (Cum. Supp. 2008), is to preserve fundamental honesty, fair play and right dealings in public transactions. The MMPA prohibits deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce by defining such activity as an unlawful practice. *Mo. Rev. Stat. § 407.020.1* (Cum. Supp. 2008). Civil actions may be brought under the MMPA to recover actual damages by any person who purchases or leases merchandise primarily for personal, family or household purposes and thereby suffers an ascertainable loss of money or property, real or personal, as a result of an unlawful practice. *Mo. Rev. Stat. § 407.025.1* (Cum. Supp. 2008).

Antitrust & Trade Law > Consumer Protection > Deceptive & Unfair Trade Practices > State Regulation
Civil Procedure > ... > Class Actions > Prerequisites for Class Action > General Overview

*HN3* Missouri's Merchandising Practices Act (MMPA), *Mo. Rev. Stat. §§ 407.010 to 407.130* (Cum. Supp. 2008), specifically authorizes class actions where an unlawful practice has caused similar injury to numerous other persons. *Mo. Rev. Stat. § 407.025.2* (Cum. Supp. 2008). The requirements for an MMPA class action are essentially identical to the requirements under Mo. Sup. Ct. R. 52.08 and *Fed. R. Civ. P. 23*, and the MMPA provides that a class action under it should be maintained consistently with those rules.

Civil Procedure > ... > Class Actions > Prerequisites for Class Action > General Overview

*HN4* Mo. Sup. Ct. R. 52.08(a) sets out four prerequisites for class certification, which are commonly referred to as numerosity, commonality, typicality, and adequacy. The action must also satisfy one of three requirements under Rule 52.08(b).

Civil Procedure > Special Proceedings > Class Actions > Certification of Classes

*HN5* At the class certification stage, a court's concern is whether the plaintiffs have met the class action requirements. Because the question of class certification is procedural, a court does not inquire whether the plaintiffs will prevail on the merits or even whether the plaintiffs have stated a cause of action. In fact, the trial court has no authority to conduct even a preliminary inquiry into these issues. Moreover, because class certification may be modified or even terminated before a decision on the merits, courts err on the side of allowing the action.

Civil Procedure > ... > Class Actions > Prerequisites for Class Action > Commonality

*HN6* The predominance inquiry for class certification asks whether the class is seeking to remedy a common legal grievance. Predominance does not require that all issues be common to the class members. Rather, it requires that common issues substantially predominate over individual ones. To classify an issue as common or individual, a court looks to the nature of the evidence required to show the allegations of the petition. If the same evidence on a given question will suffice for each class member, then it is common; if the evidence on the question varies from member to member, then it is an individual issue. Thus, if the same evidence will suffice for each member to make a prima facie showing as to a given question, then it is a common question. These common issues need not be dispositive of the case. Additionally, a single common issue may be the overriding one in the litigation, despite the fact that the suit also entails numer-

ous remaining individual questions.

Antitrust & Trade Law > Consumer Protection > Deceptive & Unfair Trade Practices > State Regulation
Civil Procedure > ... > Class Actions > Prerequisites for Class Action > Commonality

*HN7* Predominance does not require that a single body of evidence satisfy the prima facie elements of a claim under Missouri's Merchandising Practices Act, *Mo. Rev. Stat. §§ 407.010 to 407.130* (Cum. Supp. 2008), on behalf of every putative class member. Rather, it requires at least one significant fact question or issue, dispositive or not, that is common within the class's claim.

Antitrust & Trade Law > Consumer Protection > Deceptive & Unfair Trade Practices > State Regulation

*HN8* Missouri's Merchandising Practices Act, *Mo. Rev. Stat. §§ 407.010 to 407.130* (Cum. Supp. 2008), supplements the definition of common law fraud, eliminating the need to prove an intent to defraud or reliance. The statute does not put forth a scienter requirement for civil liability. It is the defendant's conduct, not his intent, which determines whether a violation has occurred.

Civil Procedure > ... > Class Actions > Prerequisites for Class Action > Commonality

*HN9* The predominance inquiry for class certification looks to the evidence required for the allegations in the petition.

Antitrust & Trade Law > Consumer Protection > Deceptive & Unfair Trade Practices > State Regulation

*HN10* A violation of Missouri's Merchandising Practices Act, *Mo. Rev. Stat. §§ 407.010 to 407.130* (Cum. Supp. 2008), occurs regardless of whether the unlawful practice is committed before, during or after the sale. *Mo. Rev. Stat. § 407.020.1* (Cum. Supp. 2008).

Antitrust & Trade Law > Consumer Protection > Deceptive & Unfair Trade Practices > State Regulation

*HN11* Both Missouri's case law and the governing regulations make clear that a consumer's reliance on an unlawful practice is not required under Missouri's Merchandising Practices Act, *Mo. Rev. Stat. §§ 407.010 to 407.130* (Cum. Supp. 2008). The regulations specifically provide that reliance is not an element of deception or misrepresentation. *Mo. Code Regs. Ann. tit. 15, §§ 60-9.020*, -9.070. Likewise, reliance and intent that others rely upon such concealment, suppression or omission are not elements of concealment, suppression or omission. *Mo. Code Regs. Ann. tit. 15, § 60-9.110*.

Antitrust & Trade Law > Consumer Protection > Deceptive & Unfair Trade Practices > State Regulation

*HN12* A civil action under Missouri's Merchandising Practices Act (MMPA), *Mo. Rev. Stat. §§ 407.010 to 407.130* (Cum. Supp. 2008) requires that the litigant suffers an ascertainable loss of money or property, real or personal, as a result of an unlawful practice. *Mo. Rev. Stat. § 407.025* (Cum. Supp. 2008). The MMPA does not require that an unlawful practice cause a purchase. A civil suit may be brought by any person who purchases or leases merchandise primarily for personal, family or household purposes and thereby suffers an ascertainable loss of money or property, real or personal, as a result of an unlawful practice. "As a result of" modifies "ascertainable loss"; it does not modify "purchases or leases." Thus, a plaintiff's loss should be a result of the defendant's unlawful practice, but the statute does not require that the purchase be caused by the unlawful practice.

Antitrust & Trade Law > Consumer Protection > Deceptive & Unfair Trade Practices > State Regulation

*HN13* The benefit-of-the-bargain rule is applicable in cases under Missouri's Merchandising Practices Act, *Mo. Rev. Stat. §§ 407.010 to 407.130* (Cum. Supp. 2008), to meet the element of ascertainable loss.

Civil Procedure > ... > Class Actions > Prerequisites for Class Action > Typicality

*HN14* A class representative's claims must be typical of the claims of the class. Mo. Sup. Ct. R. 52.08(a)(3). The requirement is met, even if there are variances in the underlying facts, if: (1) the representative's and the class members' claims arise from the same event or course of conduct by the defendant, (2) the conduct and facts give rise to same legal theory, and (3) the underlying facts are not markedly different. Speculative variations in the class claims are not enough to defeat typicality, and the named representative does not have to show a likelihood of individual success on the merits.

Civil Procedure > ... > Class Actions > Prerequisites for Class Action > Adequacy of Representation

*HN15* To determine if the adequacy prerequisite of Mo. Sup. Ct. R. 52.08 is met, a trial court must consider whether the class representatives have conflicts of interest that would adversely affect the class's interests. This requirement is particularly important because the due process rights of absentee class members may be implicated if they are bound by a final judgment in a suit where they were inadequately represented by the named plaintiff. Either an actual conflict or a likelihood that such a conflict may exist will cause the representatives to fail the adequacy requirement.

**Counsel:** John C. Aisenbrey, George F. Verschelden, Kansas City, MO, Counsel for Appellant.

Patrick J. Stueve, Norman E. Siegel, Todd E. Hilton, Kansas City, MO; Don M. Downing, St. Louis, MO, Counsel for Respondent.

**Judges:** Before James E. Welsh, P.J., Thomas H. Newton, C.J., and William E. Turnage, Sr. J. Welsh, P.J. and Turnage, Sr. J. concur.

**Opinion by:** Thomas H. Newton

| Opinion |
|---|

 **[*710]** Merck & Co., Inc. (Merck) appeals from the trial court's order certifying a class action for claims brought under the Missouri Merchandising Practices Act (MMPA), *sections 407.010 to 407.130*, [1] related to Merck's sale of the drug Vioxx. Merck argues that the class does not meet the requirement that common issues predominate and that the two class representatives, Mary Plubell and Ted Ivey (Plaintiffs), do not meet the requirements of typicality and adequacy. We affirm.

## Factual and Procedural Background

In May of 1999, Merck received FDA approval to manufacture and market the prescription **[**2]** drug Vioxx. [2] Vioxx was sold as a non-steroidal anti-inflammatory drug and pain medication for the treatment of certain arthritic conditions, acute pain, and dysmenorrheal. By the year 2000, the drug's worldwide sales exceeded $ 2 billion. By 2001, Merck reported that Vioxx was "the world's fastest growing branded prescription" and its second largest-selling medicine.

A study performed by Merck between January 1999 and March 2000 (the VIGOR study) showed that people who took Vioxx **[*711]** had a heart attack rate four to five times higher than participants taking naproxen. In June of 2000, an industry-sponsored study showed that Vioxx resulted in an increased risk of hypertension and stroke. According to plaintiffs' allegations, Merck denied and concealed these results. In 1999 and again in 2001, the FDA issued "Warning Letters" to Merck objecting to its promotional materials and representations of Vioxx's risks. Subsequently, studies showing similar results were published in the Journal of the American Medical Association, the **[**3]** Journal of the American College of Cardiology, and the Journal of Science. On Sep-

---

[1]  All statutory references are to RSMo 2000 and the Cumulative Supplement 2008 unless otherwise indicated. Rule references are to the Missouri Rules of Civil Procedure 2008.

[2]  In our review of a class certification, the named plaintiffs' allegations are accepted as true. *Hale v. Wal-Mart Stores, Inc.*, 231 S.W.3d 215, 227 (Mo. App. W.D. 2007).

tember 30, 2004, Merck withdrew Vioxx from the market, citing a clinical trial showing an "increased relative risk for confirmed cardiovascular events."

Plaintiffs had been prescribed Vioxx. They filed suit as putative class representatives seeking economic damages under the MMPA for Missouri residents who had purchased Vioxx for personal or family use. They alleged that Merck engaged in unlawful practices, "including deception, false promises, misrepresentation, and/or the concealment, suppression, or omission of material facts," by failing to disclose and actively concealing the drug's risks. They further alleged that they and other class members "suffered economic damages in that the product they and other class members purchased was worth less than the product they thought they had purchased had [Merck's] representations been true." Merck moved for summary judgment, claiming that Ms. Plubell's insurance paid for her Vioxx prescription and that she could not state a claim under the MMPA. The trial court denied the motion. Merck filed a motion to dismiss, claiming Plaintiffs had failed to allege an ascertainable [**4] loss or that Merck had caused any ascertainable loss. The trial court denied the motion. Plaintiffs moved for class certification. After a hearing, the trial court certified a class consisting of all Missouri residents who purchased Vioxx for personal or family use, but excluding those who claimed personal injury as a result of taking Vioxx. Merck sought and obtained this court's permission to appeal the class certification.

### Standard of Review

*HN1* Whether to certify a class is committed to the trial court's discretion. *Dale v. DaimlerChrysler Corp*, 204 S.W.3d 151, 163-64 (Mo. App. W.D. 2006). We reverse only if its ruling "is so arbitrary and unreasonable as to shock one's sense of justice and indicate a lack of careful consideration." *Id*. at 164 (quoting *Koger v. Hartford Life Ins. Co.*, 28 S.W.3d 405, 410 (Mo. App. W.D. 2000)). This may occur where the court certifies the class because of an erroneous conclusion of law or without a rational basis in the record. *Id*.

### Legal Analysis

*HN2* "The purpose of Missouri's Merchandising Practices Act is to preserve fundamental honesty, fair play and right dealings in public transactions." *Schuchmann v. Air Servs. Heating & Air Conditioning, Inc.*, 199 S.W.3d 228, 233 (Mo. App. S.D. 2006) [**5] (internal quotation marks and citation omitted). The MMPA prohibits "deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce" by defining such activity as an unlawful practice. *§ 407.020.1*. Civil actions may be brought under the MMPA to recover actual damages by "[a]ny person who purchases or leases merchandise primarily for personal, family or household purposes and thereby suffers an ascertainable loss of money or property, real or personal, as a result of [*712] [an unlawful practice]." *§ 407.025.1*. *HN3* The MMPA also specifically authorizes class actions where an unlawful practice "has caused similar injury to numerous other persons." *§ 407.025.2*. The requirements for an MMPA class action are essentially identical to the requirements under Rule 52.08 and Federal Rule 23, and the MMPA provides that a class action under it should be maintained consistently with those rules. *Dale*, 204 S.W.3d at 161.

*HN4* Rule 52.08(a) sets out four prerequisites for class certification, which are commonly referred to as numerosity, commonality, [**6] typicality, and adequacy. [3] The action must also satisfy one of three requirements under Rule 52.08(b). *Id*. at 165. Here, the trial court found the action met the predominance re-

---

[3]   Rule 52.08(a) provides:

   (a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions

quirement of Rule 52.08(b)(3). This provision requires, *inter alia*, that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members." On appeal, Merck contends that the trial court erred in certifying the class because the class does not meet the predominance, typicality, and adequacy requirements.

*Predominance*

In its first point, Merck asserts that the trial court erred in finding the predominance requirement satisfied because "no single body of evidence [**7] would suffice to satisfy the *prima facie* elements of an MMPA claim on behalf of every putative class member."

*HN5* At the class certification stage, our concern is whether the plaintiffs have met the class action requirements. *Craft v. Philip Morris Cos.*, 190 S.W.3d 368, 377 (Mo. App. E.D. 2005). Because the question of class certification is procedural, we do not inquire whether the plaintiffs will prevail on the merits or even whether the plaintiffs have stated a cause of action. *Id*. In fact, "[t]he trial court has no authority to conduct even a preliminary inquiry" into these issues. *Wright v. Country Club of St. Albans*, 269 S.W.3d 461, 465 (Mo. App. E.D. 2008). Moreover, because class certification may be modified or even terminated before a decision on the merits, we err on the side of allowing the action. *Dale*, 204 S.W.3d at 164.

*HN6* The predominance inquiry for class certification asks whether the class is "seeking to remedy a common legal grievance." *Id*. at 175 (internal quotation marks and citation omitted). "Predominance" does not require that all issues be common to the class members. *Id*. Rather, it requires that common issues substantially predominate over individual ones. *Craft*, 190 S.W.3d at 381. [**8] To classify an issue as common or individual, a court looks to the nature of the evidence required to show the allegations of the petition. *Id*. at 382. If the same evidence on a given question will suffice for each class member, then it is common; if the evidence on the question varies from member to member, then it is an individual issue. *Id*. Thus, "'if the same evidence will suffice for each member to make a *prima facie* showing as to *a given question*, then it is a common question.'" *Dale*, 204 S.W.3d at 176 (quoting *Craft*, 190 S.W.3d at 382) (emphasis added). These common issues need not be dispositive of the case. [*713] *Craft*, 190 S.W.3d at 381. Additionally, "'[a] single common issue may be the overriding one in the litigation, despite the fact that the suit also entails numerous remaining individual questions.'" *State ex rel. Am. Family Mut. Ins. Co. v. Clark*, 106 S.W.3d 483, 488 (Mo. banc 2003) (quoting *Alba Conte & Herbert Newberg, Newberg on Class Actions* § 4.25, at 172 (4th ed. 2002)).

Consequently, *HN7* predominance does not require that a single body of evidence satisfy the *prima facie* elements of an MMPA claim on behalf of every putative class member. Rather, it requires "at least one [**9] significant fact question or issue, dispositive or not," that is common within the class's claim. *See Dale*, 204 S.W.3d at 176. In the present case, the trial court found that the central issue in plaintiffs' suit is whether Merck violated the MMPA by failing to disclose and concealing Vioxx's safety risks. Because that issue--the legality of Merck's conduct--is common to all the Missouri class members, and because that issue is at the core of the case, the court did not abuse its discretion in finding the predominance requirement satisfied.

Further, in its attempt to show that common issues do not predominate in the class, Merck mischaracterizes the showing required under the MMPA. It claims that Plaintiffs must show deception, ascertainable loss, and causation, and that individual issues on these elements overwhelm common ones. It argues Plaintiffs will have to prove Merck's knowledge of Vi-

---

of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

oxx's risks and its representations about Vioxx at the time of each class member's purchase, each prescribing physician's knowledge of the risks, whether a different representation would have affected the class member's taking of Vioxx, and the cost of a substitute for Vioxx.

First, Plaintiffs' MMPA **[**10]** claim does not require proof of Merck's knowledge. *HN8* The MMPA "supplements the definition of common law fraud, eliminating the need to prove an intent to defraud or reliance." *Schuchmann*, 199 S.W.3d at 233. The statute does not put forth a scienter requirement for civil liability: "It is the defendant's conduct, not his intent, which determines whether a violation has occurred." *State ex rel. Webster v. Areaco Inv. Co.*, 756 S.W.2d 633, 635 (Mo. App. E.D. 1988).[4] Because an unlawful practice **[*714]** under the MMPA may be demonstrated by the defendant's conduct--irrespective of mental state--Merck's knowledge of Vioxx's risks at the time of each class member's purchase is not an issue on which Plaintiffs will have to present individualized proof.

Second, *HN9* the predominance inquiry looks to the evidence required for the allegations in the petition. *Craft*, 190 S.W.3d at 382. As the trial court noted, plaintiffs alleged "a consistent pattern of deception . . . from the time the drug came onto the market until the time it was withdrawn . . . that Merck was violating the [MMPA] *at any point and at all points* during the class period." (emphasis added.) Because Plaintiffs alleged Merck misrepresented Vioxx throughout the entire class period, individualized evidence as to the company's representation at the time of each class member's purchase will not be required. Additionally, *HN10* an MMPA violation occurs regardless of whether the unlawful practice is committed "before, during or after the sale." *§ 407.020.1*. Consequently, the evidence required to show that Merck engaged in an unlawful practice--namely, Merck's conduct--is not overwhelmed by individual issues, regardless of when--and for how long--each member purchased the drug.

Third, individualized evidence of each physician's and consumer's reliance on the misrepresentation is not required. *HN11* Both our case **[**13]** law and the governing regulations make clear that the consumer's reliance on an unlawful practice is not required under the MMPA. *Hess v. Chase Manhattan Bank, USA, N.A.*, 220 S.W.3d 758, 774 (Mo. banc 2007); *Schuchmann*, 199 S.W.3d at 232; *State ex rel. Nixon v. Beer Nuts, Ltd.*, 29 S.W.3d 828, 837 (Mo. App. E.D. 2000). The regulations specifically provide that reliance is not an element of deception or misrepresentation. *15 CSR §§ 60-9.020*, -9.070. Likewise, "[r]eliance and intent that others rely upon such concealment, suppression or omission are not elements of concealment, suppression or omission." *Id*. § 60-9.110. Plaintiffs are thus not required to prove they or their physicians relied on Merck's alleged misrepresentations about Vioxx, and consequently, they are not required to offer individualized proof that the misrepresentation colored the decision to take Vioxx.

Finally, *HN12* a civil action under the MMPA requires that the litigant "suffers an ascertainable loss of money or property, real or per-

---

[4] The statute's governing regulations specifically exclude the defendant's knowledge as an element of deception and misrepresentation and do not require proof of knowledge for concealment or suppression. Establishing deception under the Act does not depend on the defendant's "actual deception, *knowledge of deception*, intent to mislead or deceive, *or any other culpable mental state* such as recklessness or negligence." 15 CSR § 60-9.020 (emphasis added). **[**11]** Similarly, misrepresentation is "an assertion that is not in accord with the facts" and "knowledge that the assertion is false or misleading . . . or any other capable mental state" is not required. *Id*. at § 60-9.070. Concealment is "any method, act, use or practice which operates to hide or keep material facts from consumers"; suppression is "any method, act, use or practice which is likely to curtail or reduce the ability of consumers to take notice of material facts which are stated." *Id*. at § 60-9.110. By comparison, omission of a material fact under the MMPA does have a scienter requirement: it is a failure to disclose material facts that are "*known to him/her*, or upon reasonable inquiry *would be known to him/her*." *Id*. at § 60-9.110; *see also Hess v. Chase Manhattan Bank, USA, N.A.*, 220 S.W.3d 758, 774 (Mo. banc 2007) (omission under the MMPA "imposes a broader duty on sellers than the common law imposes for fraud liability, as a fraud claim requires the seller to have actual knowledge of the material facts"). By contrast, *criminal* liability under the MMPA requires an explicit *mens* rea of "*willfully* and *knowingly* engag[ing] in any act, use, employment or practice declared to be **[**12]** unlawful by this section with the *intent to defraud*." *§ 407.020.3* (emphasis added).

sonal, as a result of [an unlawful practice]." *§ 407.025*. Merck argues that in order to prove "loss," each plaintiff will have to show causation--that they would not have used Vioxx had the [**14] risks been known--as well as demonstrate the amount the plaintiff would have paid for alternative therapy. However, Plaintiffs' claim does not require these subjective, individualized inquiries.

The MMPA does not require that an unlawful practice cause a "purchase." A civil suit may be brought by "[a]ny person who purchases or leases merchandise primarily for personal, family or household purposes and *thereby suffers an ascertainable loss* of money or property, real or personal, *as a result of* [an unlawful practice]." *§ 407.025*. "[A]s a result of" modifies "ascertainable loss"; it does not modify "purchases or leases." Thus, a plaintiff's *loss* should be a result of the defendant's unlawful practice, but the statute does not require that the *purchase* be caused by the unlawful practice. Therefore, the class members are not individually required to show what they would or would not have done had the product not been misrepresented and the risks known.

Nor does the MMPA require each Plaintiff to prove "loss" by individually [*715] showing the cost of alternative therapy. Plaintiffs alleged, "[t]he product they and other class members purchased was worth less than the product they thought they had [**15] purchased had [Merck's] representations been true." The trial court found they had alleged an ascertainable loss under the benefit-of-the-bargain rule, which compares the actual value of the item to the value of the item if it had been as represented at the time of the transaction. See *Schoenlein v. Routt Homes, Inc.*, 260 S.W.3d 852, 854 (Mo. App. E.D. 2008). The rule is part of our standard instructions for damages in misrepresentation cases. *See* MAI 4.03. **HN13** The rule is also applicable in MMPA cases to meet the element of ascertainable loss. *Schoenlein*, 260 S.W.3d at 854. Here, because Plaintiffs alleged Vioxx was worth less than the product as represented, they stated an objectively ascertainable loss under the MMPA using the benefit-of-the-bargain rule. Whether a plaintiff is able to prove a theory is irrelevant at the class certification stage because the sole issue is whether the certification requirements were met. *See Meyer ex rel. Coplin v. Fluor Corp.*, 220 S.W.3d 712, 719 (Mo. banc 2007). [5]

Consequently, Merck has not shown that individualized issues predominate over common ones. Because "there is at least one significant fact question or issue, dispositive or not," that is common to the class, the trial court did not abuse its discretion in finding Rule 52.08(b)(3)'s predominance requirement was met. *See Dale*, 204 S.W.3d at 176. Merck's first point is denied. [6]

*Typicality and Adequacy*

In its second point, Merck argues that Ms. Plubell and Mr. Ivey are not typical or adequate as class representatives because the facts underlying each plaintiff's claim fails to meet [**17] the elements required by the MMPA. It asserts that Ms. Plubell cannot "possibly demonstrate" ascertainable loss because her insurance provider paid for her Vioxx prescription, and Mr. Ivey cannot "prove that Merck's statements or omissions caused him to purchase Vioxx in the first place."

**HN14** A class representative's claims must be typical of the claims of the class. Rule 52.08(a)(3). The requirement is met, even if there are variances in the underlying facts, if: (1) the representative's and the class members' claims arise from the same event or course of

---

[5] Merck also argues that pharmaceutical pricing does not change according to the product's risk. Should it wish, Merck may present this argument at trial, but the defense does not cause plaintiffs' [**16] common legal issues to become individual ones.

[6] Although Merck refers us to cases in other jurisdictions that have found putative classes based on Vioxx pharmaceutical claims to fail the predominance requirement, the allegations in those cases differ markedly from the issues raised by this suit or the protections afforded by the MMPA. *See, e.g., In re Vioxx Products Liab. Litig.*, 239 F.R.D. 450, 461-63 (E.D. La. 2006) (denying certification for a national class based on personal injury and wrongful death claims sounding in tort because of variations in applicable states' laws and individualized factual issues).

conduct by the defendant, (2) the conduct and facts give rise to same legal theory, and (3) the underlying facts are not "markedly different." *Dale*, 204 S.W.3d at 169. Speculative variations in the class claims are not enough to defeat typicality, and the named representative does not have to show a likelihood of individual success on the merits. *Id.* at 172.

Here, both Ms. Plubell and Mr. Ivey's claims arise from Merck's sale of Vioxx in Missouri and its alleged misrepresentations as to the drug's risks, giving rise to **[*716]** the legal theory of an unlawful practice under the MMPA. The conduct attributed to the defendant is the same for the representatives' **[**18]** claims as it is for the class claims; so is the legal theory. Further, the underlying facts of each named plaintiff's case are not "markedly different" from those of the class.

Merck's contentions that Ms. Plubell did not "purchase" Vioxx, and the legal effect thereof, are, first, defenses that go to the merits of the case and are not properly considered in class certification. Second, Merck fails to explain how these issues make Ms. Plubell's claims atypical of the class; common logic would indicate that many of the class members' insurers paid for their Vioxx prescriptions. Consequently, Merck has not shown that the trial court abused its discretion in finding Ms. Plubell met the requirement of typicality.

Merck's argument that Mr. Ivey is an improper class representative is similarly flawed. It contends Mr. Ivey's claim fails because he cannot prove ascertainable loss because he cannot show that he would not have purchased Vioxx had he been informed of the risks. Otherwise stated, Merck again injects reliance into the MMPA to argue Mr. Ivey's claims are atypical. First, this is a defense going to the merits of the case and is not a proper consideration for class certification. Second, **[**19]** even if it were properly considered, the defense relies on the same misconception of causation and reliance under the MMPA as in Merck's predominance argument previously rejected. Third, Merck's defense on this issue cannot be presumed to be individual to Mr. Ivey and thus "atypical." Consequently, Merck also failed to show the trial court abused its discretion in finding Mr. Ivey's class representation met the typicality requirement.

Merck's final contention that Plaintiffs are inadequate class representatives is also without merit. **HN15** To determine if the adequacy prerequisite of Rule 52.08 is met, a trial court must consider whether the class representatives have conflicts of interest that would adversely affect the class's interests. *Dale*, 204 S.W.3d at 172-73. "This requirement is particularly important because the due process rights of absentee class members may be implicated if they are bound by a final judgment in a suit where they were inadequately represented by the named plaintiff." *Craft*, 190 S.W.3d at 379 (internal quotation marks and citation omitted). Either an actual conflict or "a likelihood that such a conflict may exist" will cause the representatives to fail the adequacy **[**20]** requirement. *Dale*, 204 S.W.3d at 173.

Here, the trial court found the class representatives adequate; they "have no interests adverse to those of the proposed class and . . . they have vigorously prosecuted this action." Other than arguments as to the merits of Plaintiffs' cases, Merck has pointed to no conflicts of interest between Ms. Plubell, Mr. Ivey, and the defined class. Consequently, the trial court did not abuse its discretion in finding Plaintiffs satisfied the adequacy requirement. Merck's second point is therefore denied.

**Conclusion**

For the foregoing reasons, the trial court's order granting class certification is affirmed.

Thomas H. Newton, Chief Judge

Welsh, P.J. and Turnage, Sr. J. concur.