```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA
                            NEW ORLEANS

IN RE:  VIOXX PRODUCTS         :   MDL DOCKET NO. 1657
LIABILITY LITIGATION           :   SECTION "L"
                               :
                               :   New Orleans, Louisiana
                               :   February 26, 2013
                               :   2:00 p.m.
: : : : : : : : : : : : : : : :

                     MONTHLY STATUS CONFERENCE
           TAKEN BEFORE THE HONORABLE ELDON E. FALLON

APPEARANCES:

For the Plaintiffs:       Herman, Herman & Katz, L.L.C.
                          BY:  RUSS M. HERMAN
                               LEONARD A. DAVIS
                          820 O'Keefe Avenue
                          New Orleans, Louisiana  70113
                          (504) 581-4892

                          Oldfather Law Firm
                          BY:  ANN B. OLDFATHER
                          1330 South Third Street
                          Louisville, Kentucky  40208
                          (502)  637-7200

                          BY:  MARGARET WOODWARD
                          3701 Canal Street, Suite C
                          New Orleans, Louisiana  70119

                          Hovde, Dassow & Deets, LLC
                          BY:  ROBERT T. DASSOW
                          201 W. 103rd Street, Suite 500
                          Indianapolis, Indiana  46290

For Merck:                Skadden Arps
                          BY:  JOHN H. BEISNER
                          1440 N.Y. Avenue NW
                          Washington, DC  20005

                          Williams, Connolly, LLP
                          BY:  DOUGLAS MARVIN
                               M. ELAINE HORN
                          725 12th Street NW
                          Washington, DC  20005
```

APPEARANCES (Continued):


Reported By:            Arlene Movahed, CCR
                        OFFICIAL COURT REPORTER
                        500 Poydras Street, Room 406
                        New Orleans, Louisiana  70130
                        (504)  589-7777



     Proceedings recorded by mechanical stenography;
transcript produced by dictation.

```
 1                    P R O C E E D I N G S
 2                       AFTERNOON SESSION
 3                       (February 26, 2013)
 4         (The following is a transcript of the Monthly Status
 5    Conference taken on February 26, 2013.)
 6         (Open court.)
 7             THE COURT:  Be seated, please.  Good afternoon,
 8    ladies and gentlemen.
 9             We're here for our bi-monthly status conference on the
10    Vioxx matter.  Do you want to call the case.
11             THE CLERK:  Yes, sir.  MDL Number 1657, In Re: Vioxx
12    Products Liability Litigation.
13             THE COURT:  Counsel, make your appearance for the
14    record, please.
15             MR. HERMAN:  May it please the Court, good afternoon,
16    Judge Fallon.  Russ Herman for plaintiffs.
17             MR. MARVIN:  Good afternoon, Your Honor.  Douglas
18    Marvin for Merck.
19             THE COURT:  As I say, we're here for our monthly
20    status conference.  I received an agenda, proposed agenda from
21    the parties.  I met with the liaison counsel a moment ago,
22    discussed the agenda with them.  I'll take it in the order
23    given.  Class Actions, anything on that?
24             MR. HERMAN:  May it please the Court, Judge Fallon, I
25    am pleased to announce to the Court or recommend a settlement
```

1  of the Consumer Class Actions which has been reached after a
2  year of negotiations.
3           Our negotiations began at a conference in Philadelphia
4  approximately a year ago and have continued at least monthly
5  but often three or four times a week.  We reached an agreement
6  in principle eight to ten weeks ago and then there have been a
7  number of renegotiations since then.
8           In those negotiations, Doug Marvin and John Beisner
9  represented Merck.  I was in those negotiations and I thank
10 Elizabeth Cabraser and Dawn Barrios who made a number of very
11 valuable comments that improved the settlement and which are
12 now incorporated in the Agreement.
13          With Your Honor's permission, I will recite the
14 essential terms of the Agreement, of course.
15          THE COURT:   These are the individuals who have
16 purchased Vioxx and have information to show that they have
17 purchased Vioxx and I understand that those individuals are the
18 individuals who have not had claims before, therefore, had not
19 had personal injuries before and that they are individuals who
20 have, as I said, purchased Vioxx and can show that they
21 purchased Vioxx and those are the people that we're talking
22 about.
23          MR. HERMAN:   Yes, Your Honor.  And excluded also from
24 the settlement, consumers in the State of Missouri and
25 insurers, insurers who have settled under the Third Party Payor

1  Settlement and the State of Missouri has a separate settlement
2  under separate law.
3          Initially I want to state that the parties feel it's a
4  reasonable settlement.  From plaintiffs' standpoint, the law is
5  very difficult.  We noted the California decision adverse to
6  plaintiffs, the New Jersey Supreme Court decision adverse to
7  plaintiffs, other commentaries regarding consumer settlements.
8          As I indicated that it was substantial arm's length
9  negotiations, collegial but arm's length and hard pressed.  By
10 last count there were 23 iterations of the settlement document
11 which provides in principle part as follows:  And should I
12 misstate any of the provisions or leave out an essential
13 provision, I am certain that John and Doug will speak to that.
14         Merck's total exposure in the Consumer Settlement is
15 $20 million.  It is a cap.
16         The claimants will submit the claims form, certain
17 proofs of claim for their out-of-pocket expenses and their co-
18 pay expenses.  They will go through a claims process
19 administered by Brown Greer.  In the event they have a
20 legitimate claim but due to the passage of time cannot produce
21 all of the indicia necessary for full compensation they will
22 receive a minimum of $50 covering partially the prescription
23 costs which they claim.
24         THE COURT:  And if they have the documentation, they
25 will receive all of the money that they expended.

1          MR. HERMAN:  A hundred percent.  Now the funds which
2  Merck deposits in approximately six million dollar increments
3  are held in escrow subject to the claims process.  The 20
4  million dollar cap applies to attorneys' fees and costs, common
5  benefit, expenses only related to consumer claims.  And, of
6  course, there is no fee to be determined at this point.  Your
7  Honor will determine whatever fee Your Honor believes is
8  reasonable.  There is a maximum 32 percent.
9          In addition, that 20 million dollar cap fund will pay
10 all expenses of notice and all administration costs as well as
11 claims.
12         In the event that it appears that the 20 million
13 dollar cap will be reached and not all claims have been paid of
14 consumers, then there will be a payment pro rata.  The escrow
15 fund, QSF documents will be filed at such time as the Court may
16 approve a preliminary order and will be deposited in the
17 Esquire Bank.
18         And I state to the Court on the record, as I have
19 before, that I am a Director, unpaid Director of that bank and
20 I have less than one-half of one percent stock in the bank.
21 And they have provided these services, for instance, in part in
22 Chinese Drywall.
23         The Claims' Administrator, as Your Honor knows, has
24 been a claims administrator that has successfully administered
25 claims particularly in Vioxx and is also looked to at this

 1  juncture in Chinese Drywall.
 2          There is a due process appellate function from
 3  decisions of the Claims' Administrator and the Claims'
 4  Administrator incidentally may not speak to either party unless
 5  both parties are present, that is a representative of Merck and
 6  representative of plaintiffs.  And if for good cause shown to
 7  Your Honor Your Honor feels an appeal should be granted, then
 8  Your Honor will determine that and determine also the merits of
 9  such an appeal.
10          All interest that may accrue in that escrow account
11  will be used to pay the various costs that are due whether it
12  be notice or administration costs or whatever.
13          The various folks that can apply, or as Your Honor has
14  detailed, those consumers who can show that they purchased
15  Vioxx, and this is for their prescriptions, anyone that took
16  vis-a-vis a personal injury settlement in the global and
17  Missouri consumers are excluded specifically from the
18  settlement.
19          Merck does not admit a liability and this will be an
20  exclusive remedy with dismissals with prejudice.
21          The notice agents are class representatives and
22  Merck's representatives in this case, Ms. Cabraser and myself
23  will act as class counsel.  This Court will have continuing
24  jurisdiction over the case.
25          And, Your Honor, we have signed the Agreement and will

 1   shortly submit it so that Your Honor in due course, as Your
 2   Honor directs in these cases, be made public.
 3          If notice is given to Merck, it should go to Mr.
 4   Kuhlik, K-U-H-L-I-K, who is the Senior Vice President General
 5   Counsel of Merck, Sharp and Boehm Corp.  And to John H. Beisner
 6   of Skadden Arps.
 7          There is one consumer action contemplated to be
 8   subsumed in this class action in which there has not been yet
 9   an agreement but I will be speaking with a representative of
10   the Kentucky class, consumer class action certainly in the next
11   two weeks.
12          Your Honor, I believe that those are the highlights of
13   the settlement that's been reached with Merck in the Vioxx MDL
14   as to Consumer Class Actions and Consumer Claims.
15          THE COURT:  What I would like to do in these matters,
16   as you know in the Fifth Circuit we really look at two steps.
17   One is preliminary approval and the second is the final
18   approval of the settlement, the fairness hearing and then
19   Motion for Final Approval.  I would like to do both.  My
20   notice, file something that I can notice it for preliminary
21   approval.  Preliminary approval, the purpose of that is just to
22   make sure that on its face it's a reasonable settlement.  I
23   make no decision at that level as to the final substantive
24   aspect of the settlement but simply it's a way to avoid having
25   the parties spend a lot of money on notice if it doesn't even

1  pass the preliminary approval area of scrutiny.  So file that,
2  I'll notice it on my website and I will invite anybody who has
3  any observations, objections, whatever to voice them at the
4  preliminary approval.
5           This drug is a difficult drug for consumers in the
6  sense of the claims because I have heard a lot of testimony in
7  the cases that I have tried and it is a drug that is directed
8  at muscular skeletal complaints, pain, and it does that, it's
9  quote a good drug for that purpose.
10          The concept of the case, or the theory of the case
11  from the plaintiffs' standpoint is that although it was a good
12  drug for that purpose it also had some adverse purposes in the
13  vascular area at least and the increased risk of heart attack,
14  strokes and so forth.  But it did do something.  It did remove
15  pain.  And so for the consumer who purchased it and used it for
16  a year or two or however long and did not have any personal
17  injury, did not have any complaints, did not have any
18  difficulty other than to purchase the drug, then I assume it
19  was a good thing for them, it removed their pain.  And so at
20  this point they have used the drug to remove pain for a year or
21  two or three or however many years, didn't have a problem and
22  they make a claim to get reimbursed for the money that they
23  spent.  That's looked at from the defendants' standpoint,
24  looked at from the plaintiffs' standpoint.  Plaintiff says,
25  well, maybe that's true but I purchased that drug believing

```
 1  that it didn't have any adverse effects and now I find that
 2  they have adverse effects.  Had I known that I would not have
 3  purchased that drug, I would have sought out something without
 4  any adverse effects and, therefore, I am entitled to my money
 5  back.  That's from the plaintiffs' standpoint and that's what
 6  the settlement seeks to achieve.  But if you file a motion I
 7  will set it.  We've already agreed on a date?
 8              THE CLERK:   March 14th.
 9              THE COURT:   March 14th.  I will post it on my website
10  to give the world notice.
11              MR. HERMAN:   Your Honor, if I may, I have one
12  footnote.  Counsel for Merck and class counsel were well aware
13  of a recent Third Circuit decision that we find does not have
14  any applicability here.  This is not a cy pres situation and
15  the other elements that the Third Circuit disapproved of are
16  not in this settlement.  I thought I should point that out.
17              If either John Beisner or Doug Marvin have any
18  comments.
19              THE COURT:   In the Baby Products Antitrust
20  Litigation, Judge O'Malley shared that opinion.
21              MR. BEISNER:   Your Honor, we have nothing to add.  I
22  was just going to note that our intent is, as you suggested, to
23  file a motion for preliminary approval.  The one thing we're
24  waiting for there is to have a final notice plan which
25  obviously is important and what Your Honor will need to review
```

 1  on this.

 2          THE COURT:  Next item then is Governmental Actions.
 3  Anything on that?

 4          MR. HERMAN:  Your Honor, I was asked by Ms. Barrios
 5  to indicate to the Court that she is unable to be here today.
 6  She is engaged in some Drywall depositions.

 7          THE COURT:  I had several motions that I've handled,
 8  discovery motions that I have handled on the phone and I issued
 9  my rulings on them so we are moving along with it.

10          Third Party Payor.  We have the attorneys' fees in the
11  Third Party Payors matter.

12          As you know from my past procedure, what I do is I try
13  to focus on the process.  I think that's an important thing to
14  do.  And what I did in the case, I invited anybody to make
15  applications for fees who worked on this aspect of the case.  I
16  received the applications for fees.  I appointed an Allocation
17  Committee consisting of people who had worked on this
18  particular aspect of the case.  I received a report from them.
19  They also, before giving me their report, alerted the people as
20  to what they felt was appropriate and as I understand some
21  initial objections were withdrawn and we still have two
22  objectors who feel that the amount of the Allocation Committee
23  is not appropriate, not satisfactory to them.  So the next step
24  that I am going to take is that I appoint an outside, somebody
25  who hadn't worked on it.  I am going to appoint Pat Juneau for

1  the purpose of dealing with those cases and meeting with the
2  parties and seeing whether or not any discovery is necessary,
3  any briefing schedules, anything that both sides feel is
4  important and then hopefully you all can agree on some method
5  of either further discovery, some discovery, paper discovery,
6  deposition discovery, whatever is appropriate and give me some
7  briefing, argument, and we will take it from there at that
8  point.  That's at least my thinking.
9              MR. DASSOW:   Your Honor, Rob Dassow.  May I be heard
10 for a moment?
11             THE COURT:   Sure.
12             MR. DASSOW:   Good afternoon, Your Honor.  Rob Dassow.
13 I am here for Hovde, Dassow & Deets, David Ewing, Gary Franke.
14 I just want to make sure that the Court received our letters
15 that we sent with regard to the Third Party Payor.
16             THE COURT:   I got the two letters, I think.
17             MR. DASSOW:   That was from the Lanier Law Firm and my
18 law firm.  I just wanted to clarify.  We've obviously withdrawn
19 our objections with regard to the submissions of other
20 objectors but continue to object and ask the Court for an
21 evaluation of just how you described it, Your Honor.
22             THE COURT:   Right.  Just from your standpoint at this
23 level I try to refocus on the process and I want to get some
24 input and so I try to get input from the people who are so-
25 called insiders, the people who work on the particular matter

```
 1  and know what was done, who did it, and that sort of thing,
 2  give me their input.  Then I appoint somebody who, as I say,
 3  hadn't worked on the case, a lawyer obviously who is familiar
 4  with this case, helped out in other aspects of the case, so he
 5  knows the type of issues that are involved.  And then he then
 6  meets with you all, you tell him what you need, what
 7  information, what documents, what evidence, what discovery you
 8  may need and then he supervises that and listens to argument
 9  and then he will give me some report and then I will have both
10  of those reports and I will look at the reports plus whatever I
11  can bring to the case and I will come up with something.
12          MR. DASSOW:  And, obviously, all of our work, Your
13  Honor, was done in front of Judge Higbee.
14          THE COURT:  Right.
15          MR. DASSOW:  So if it was inappropriate --
16          THE COURT:  Right.  No, no, I will.  And by the way,
17  I always talk to Judge Higbee on these matters because she's
18  very familiar with it.  She and I work together and so I get
19  her input and whatever I gather I will be turning over to her
20  for her observation too.
21          MR. DASSOW:  I really appreciate it.  Thank you, Your
22  Honor.
23          THE COURT:  Sure.
24          MS. WOODWARD:  Your Honor, Margaret Woodward with
25  Robert Arceneaux for Erick Weinberg.  Thank you very much for
```

```
 1  establishing this further procedure.  I just want a point of
 2  clarification on the record of how many objectors there are.
 3  There was a reference to two.
 4            THE COURT:   I think there's two.  Am I wrong about
 5  that?  I say two, there are two groups?
 6            MR. DASSOW:   Well, I would say from our group only
 7  one.
 8            THE COURT:   One objector?
 9            MR. DASSOW:   Well, it's four different law firms,
10  Your Honor.  But I am here on behalf of all four.
11            MS. WOODWARD:   Thank you.
12            THE COURT:   Right.  I looked upon him as being one
13  objector.  Maybe there's four subobjectors.
14            MR. DASSOW:   I think that is appropriate.
15            THE COURT:   But all the same.
16            MS. WOODWARD:   Thank you.
17            THE COURT:   Thank you.  Ann, did you want to talk?
18            MS. OLDFATHER:   Good afternoon, Your Honor.  Ann
19  Oldfather, Liaison Counsel for certain personal injury claims.
20            We don't have a lot to report today other than to
21  update the case censes and to confirm on the record that the
22  Daubert motions filed on general causation between the VTE
23  events and the use of Vioxx have been filed both by our firm
24  and by Merck and those are set for hearing for argument before
25  the Court next week on March 6th at 2:30 central time.  We have
```

 1  at this point on the case censes, which I distributed before
 2  Court, we have got three cases that are left that have been
 3  formally assigned to the heart attack group.  We have five
 4  cases that are left that have been formally assigned or at
 5  least are considered, I should say, in the stroke group and
 6  there have been two more settlements in that group, one more
 7  settlement in the heart attack group and there, of course,
 8  remain 29 cases in the VTE group because those are under the
 9  general causation umbrella.  And then there is one other injury
10  claim remaining and that's Mr. Harrison's bone healing claim.
11           THE COURT:   Right.  And I told Mr. Harrison I will
12  tee up a special hearing for his case and I will set it and he
13  can come in by phone as well as anybody else who would like to
14  come in by phone.
15           MS. OLDFATHER:   And for the record, Your Honor, I
16  think we've worked out with Kathy that that's set for this week
17  on April 28th at 4:00 central time.  I believe that's it.
18           THE COURT:   Thank you very much.
19           MR. MARVIN:   Your Honor, excuse me.  I'd just like to
20  introduce my partner, Paul Boehm who has pulled the laboring
21  oar for us on the motions on the VTE cases and Paul will be
22  arguing the other motion next week.
23           THE COURT:   Welcome to the Court.
24           MR. BOEHM:   Good afternoon, Your Honor.
25           THE COURT:   Good afternoon.

```
 1          MR. MARVIN:   Your Honor, we have one motion.
 2          THE COURT:    We have one pending motion and as I
 3  understand it that's the motion --
 4          MR. MARVIN:   Mannino motion.
 5          THE COURT:    Mannino?
 6          MR. MARVIN:   Yes.
 7          THE COURT:    The pro se stroke matter deposition was
 8  noticed and she didn't appear for the deposition?
 9          MS. HORN:     That's correct.  The plaintiff and her
10  spouse.  We made several attempts to try to contact them.  We
11  called them from the site of the deposition and no response.
12  This was more than a month ago, no response, no response for
13  motion, nothing.  So at this point in time we would like to ask
14  for the case to be dismissed.
15          THE COURT:    Well, let's file a motion to show cause
16  why the case should not be dismissed for lack of prosecution
17  and I will set it.
18          MS. HORN:     This is the motion.
19          THE COURT:    This is the motion to dismiss.  Okay.
20  Does she know about it?  I mean, did you notice her?
21          MS. HORN:     Yes, we served it.  We served it on her
22  home address and it was served on February 5th and we did not
23  get a response.
24          THE COURT:    When was the deposition set for?
25          MS. HORN:     January 28th.
```

```
 1              THE COURT:   Have you gotten any response at all?
 2              MS. HORN:    None.  Nothing.  She was called on January
 3    25th to remind her and her husband about the deposition.  The
 4    deposition was set for a date that she had identified being
 5    available, it was noticed.  We called to remind her.  The
 6    deposition was on Monday, January 28th.  Her deposition was
 7    first, she didn't show up.  The attorney who was there called
 8    from the deposition as it was going on, left a number where he
 9    could be reached, didn't hear back from her.  The husband's
10    deposition was set for later that day, same thing happened, no
11    one showed up.  We called, no response.  We left messages and
12    we haven't heard from them since then either in response to
13    those messages and then we turned around and filed the present
14    motion which is a motion for order to show cause and there has
15    been no response.
16              THE COURT:   How did you serve it on her?
17              MS. HORN:    I believe we served it by Federal Express.
18              THE COURT:   Let's put that in the record.
19              MS. HORN:    Yes, we served her and her husband by
20    Federal Express at their address in Staten Island.
21              THE COURT:   That was the same address that you
22    advised them of the deposition?
23              MS. HORN:    Correct and it was noticed for a hotel
24    about eight miles from their home.
25              THE COURT:   I will do this, I will dismiss the case
```

1  but I will give her ten days to respond to the dismissal to
2  seek a hearing or tell me what's up.  I don't want to just
3  dismiss it willy nilly, I want to give her an opportunity.  The
4  difficulty here is that we're ten years out now and I know it's
5  a pro se and I respect that but they have got some
6  responsibility to participate in their case and depositions are
7  very significant and if they don't respond to either deposition
8  and then don't respond to the motion I take that as somebody
9  who wants to move on and they have a right to do that.  I mean,
10 they have a right not to pursue their case.  That's fair.
11          Ann, you know anything about this at all?
12          MS. OLDFATHER:  Your Honor, thank you for calling on
13 me, I was hesitating.
14          I should have contacted Ms. Mannino before the hearing
15 and it just kind of snuck up on me and I didn't attempt to.
16 But in terms of background, she wasn't always pro se.  She was
17 represented by Ron Benjamin and she grew unhappy with his
18 representation and she took the affirmative steps to leave him
19 and to try to get her files back and I think there was some
20 problem getting evidence, maybe the Vioxx file.  Don't hold me
21 to that.  Our firm has spoken with her in the past so this
22 isn't somebody who just has never been heard from again.  I
23 cannot dispute anything that Ms. Horn reported.  I mean, so we
24 will make an effort to get ahold of her and certainly advise
25 her of the ten day window the Court has given her.

```
 1          THE COURT:   Let's make it two weeks.  Tell her that I
 2   am dismissing her case but I will give her two weeks to respond
 3   to reconsider and if she doesn't in two weeks I will then
 4   assume that the case is finished.
 5          MS. OLDFATHER:   We will do that, Your Honor.
 6          THE COURT:   Thank you very much.  Anything on the
 7   appeals or anything further?  Anybody in the courtroom have
 8   anything?
 9          MR. HERMAN:   May it please the Court, no, Your Honor.
10          THE COURT:   What's the next status conference?  April
11   23rd at nine o'clock.  Thank you very much.  Court stands in
12   recess.
13      (End of proceedings.)
14
15
16
17
18
19
20
21
22
23
24
25
```

## REPORTER'S CERTIFICATE

I, Arlene Movahed, Official Court Reporter, for the United States District Court for the Eastern District of Louisiana, appointed pursuant to the provisions of Title 28, United States Code, Section 753, do hereby certify that the foregoing is a full, true and correct transcript of proceedings had in the within-entitled and numbered cause on the date herein before set forth and I do further certify that the foregoing transcript has been prepared by me or under my direction.

                                              s/   Arlene Movahed
                                              ARLENE MOVAHED, CCR
                                              Official Court Reporter
                                              United States District Court
                                              Eastern District of Louisiana