United States Court of Appeals
Fifth Circuit

**F I L E D**
February 7, 2013

Lyle W. Cayce
Clerk

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

U.S. DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
FILED   MAR - 5 2013
LORETTA G. WHYTE
CLERK

No. 12-30586
Summary Calendar

D.C. Docket No. 2:05-MD-1657
D.C. Docket No. 2:05-CV-4578

IN RE: VIOXX PRODUCTS LIABILITY LITIGATION

---

GENE WEEKS,

    Plaintiff

RONALD R. BENJAMIN,

    Appellant

v.

MERCK AND COMPANY, INCORPORATED,

    Defendant

v.

MARIA D. TEJEDOR,

    Appellee

Appeal from the United States District Court for the
Eastern District of Louisiana, New Orleans

Before SMITH, PRADO, and HIGGINSON, Circuit Judges.

## JUDGMENT

This cause was considered on the record on appeal and the briefs on file.

It is ordered and adjudged that the judgment of the District Court is affirmed.

ISSUED AS MANDATE: MAR 0 1 2013

A True Copy
Attest

Clerk, U.S. Court of Appeals, Fifth Circuit

By: Sabrina B Short
Deputy

MAR 0 1 2013
New Orleans, Louisiana

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**
February 7, 2013

Lyle W. Cayce
Clerk

No. 12-30586
Summary Calendar

---

IN RE: VIOXX PRODUCTS LIABILITY LITIGATION

---

GENE WEEKS,

        Plaintiff,

RONALD R. BENJAMIN,

        Appellant,

v.

MERCK AND COMPANY, INCORPORATED,

        Defendant,

v.

MARIA D. TEJEDOR,

        Appellee.

---

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:05-MD-1657
USDC No. 2:05-CV-4578

---

Before SMITH, PRADO, and HIGGINSON, Circuit Judges.

PER CURIAM:[*]

Gene Weeks settled his Vioxx-related claims against Merck & Company for $285,000. Appellant Ronald Benjamin and Appellee Maria Tejedor both claimed to represent Weeks in connection with his settlement. Each argued that he or she deserved the resulting $67,500 in attorney's fees. The district court adopted a special master's report and recommendation awarding the fees to Tejedor. We AFFIRM. We also DENY Tejedor's motion for attorney's fees and costs.

1. Facts and Proceedings

Gene Weeks suffered a heart attack in March 2004 after taking Vioxx for years. Weeks signed an agreement in September 2005 giving attorney Maria Tejedor the authority to represent him in claims against Merck & Company, the manufacturer of Vioxx. Tejedor proceeded to file a products liability lawsuit against Merck on behalf of Weeks in September 2005.

Tejedor sent Weeks a letter in November 2007 informing him of Merck's settlement program and "strongly reccomend[ing]" that he participate. Weeks, representing that he had read the settlement information provided by Tejedor, signed an agreement to participate in the program. Weeks then signed in January 2008 a release of all his claims against Vioxx in exchange for his participation in the program. Tejedor signed an accompanying document representing that Weeks "has at all relevant times been represented the undersigned counsel."

Tejedor informed Weeks in a letter dated May 5, 2009 that she had obtained from the Vioxx claims administrator a notice that he was eligible for a

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

settlement award. Tejedor then informed Weeks in a letter dated May 12, 2009 that he had received an award of about $230,000. The letter provided that Weeks would have until May 23, 2009 to appeal the award. It also indicated that the Vioxx claims administrator had reduced the amount of Weeks' award because of his high cholesterol.

Weeks informed Tejedor in a signed, three-sentence letter dated May 14, 2009 that "I no longer require your representation in this case." Weeks continued: "Any actions by your firm concerning my case shall be deemed unauthorized by me. I am currently being represented by another firm." There were no attachments or enclosures to the letter.

Tejedor nonetheless appealed the amount of the initial award to the Vioxx claims administrator, writing in a letter dated May 20, 2009 that she believed the reduction for high cholesterol was in error.[1] The claims administrator agreed, and increased Weeks' award to $285,000 in a notice dated May 27, 2009.

On April 22, 2009—after Weeks had signed the release of his claims, but before Weeks had received his award—attorney Ronald Benjamin filed a motion to vacate and rescind Weeks' participation in the settlement.[2] Benjamin argued that Weeks' participation in the settlement was not voluntary, but the result of Tejedor's "repeatedly cajol[ing] him into signing onto the settlement program."[3] Benjamin stated in the motion that he was representing Weeks.

---

[1] Tejedor explains that she appealed the initial award despite Weeks' letter because she was still counsel of record, and the deadline to appeal was approaching. She adds that she tried to contact Weeks, but that he did not respond.

[2] Tejedor states that she did not learn about Benjamin's motions until after the claims administrator sent notice of the final award.

[3] The record is not clear as to why or when Weeks decided to hire Benjamin. The district court observed: "While his claim was being reviewed by the Claims Administrator, Mr. Weeks apparently believed that his claim had been conclusively rejected and decided to hire Ronald Benjamin to represent him instead of Ms. Tejedor."

3

The district court denied the motion to rescind, finding that Weeks voluntarily enrolled in the settlement program, and that his decision to do so was irrevocable. Relevant to this case, the district court found that "Ms. Tejedor was Mr. Weeks['] attorney at the time of [his] decision" to sign the release. The court also found, however, that "it is clear that the attorney-client relationship between Mr. Weeks and Ms. Tejedor was terminated on or before May 14, 2009"—the date of Weeks' letter informing Tejedor that he "no longer require[d] [her] representation." The court explained that "[i]f Ms. Tejedor feels that she is entitled to fees for the work that she completed on Mr. Weeks['] case, the appropriate remedy is to assert a lien." The court declined to impose sanctions on either party.

Weeks proceeded to accept, through Tejedor, the settlement. After deducting her own costs and attorney's fees—twenty-four percent of the settlement, or about $67,500—Tejedor sent to Weeks about $185,000. Weeks signed a "closing statement" in March 2010 confirming that he did not oppose the deductions.

Tejedor put her costs and fees in a trust account, and then filed a lien for the amount with the district court. The district court in March 2010 referred Tejedor's claim to a special master appointed to evaluate disputed attorney's fees and costs related to the Vioxx settlement program.[4]

---

[4] After the district court referred the lien to the special master, Benjamin filed in August 2010 a motion for summary judgment with the district court seeking dismissal of Tejedor's claim for attorney's fees. The district court, in turn, referred the motion to the special master. Benjamin then filed a motion on October 6, 2010—thirteen days before the special master's scheduled final hearing—to stay or adjourn the hearing pending the summary judgment motion. The district court denied the motion to stay or adjourn on October 14, 2010—five days before the hearing—finding that there was no reason to interfere with the special master's handling of the attorney's fee dispute. The special master denied Benjamin's motion for summary judgment in his report and recommendation deciding the dispute on the merits.

The special master notified the parties that they had to attend an in-person meeting on September 13, 2010. Benjamin did not attend the meeting. The special master also issued a scheduling order requiring the parties to provide certain documents, including an initial memorandum and evidence binder, and to attend an in-person final hearing on October 19, 2010. Benjamin did not provide the requested documents, and did not attend the final hearing.

The special master awarded Tejedor the entire attorney's fee award. He found that Tejedor represented Weeks during the settlement process, and that her efforts culminated in the settlement award. He also found that "[t]here is no evidence whatsoever that any involvement or effort by Ronald Benjamin assisted in the obtaining of the award for Mr. Weeks." The special master imposed sanctions on Benjamin, finding a "flagrant abuse and disregard of the judicial process."

The district court, reviewing under FED. R. CIV. P. 53(f) the special master's findings of fact and law *de novo*, and the procedure used by the special master for abuse of discretion, adopted the special master's recommendation awarding the attorney's fees to Tejedor. The district court found that Benjamin's "account of the underlying handling of Mr. Weeks' claim is entirely speculative and not supported by evidence or testimony adduced at the Special Master's hearing." However, the district court declined to uphold the special master's imposition of sanctions, finding that "although Mr. Benjamin's conduct was unwarranted and inappropriate, it is sufficient to award the entirety of the disputed lien to Ms. Tejedor."

Benjamin appeals the district court's order, challenging the decision to award attorney's fees to Tejedor, along with the procedure used by the special master to reach that decision.

2. Standard of Review

This court reviews an award of attorney's fees for abuse of discretion, reviewing factual findings for clear error and legal conclusions *de novo*. *Dearmore v. City of Garland*, 519 F.3d 517, 520 (5th Cir. 2008).

3. The Attorney's Fee Award

The district court did not err in awarding attorney's fees to Tejedor because Tejedor's work on behalf of Weeks culminated in his settlement award. The representation contract provided that, if Weeks discharged Tejedor for "any reason," Tejedor would "be entitled to a fee based on . . . any offer of settlement outstanding, or if no offer of settlement is outstanding, a reasonable fee based on the amount of time my attorney(s) spent on my case plus all costs and interest." Tejedor informed Weeks that he had received a settlement award in a letter dated May 12, 2009—two days before Weeks sent his own letter to Tejedor stating that he "no longer require[d] [her] representation in" the case. To the extent that the proposed settlement award was not an "offer of settlement outstanding," the $67,500 attorney's fee award was a "reasonable fee" based on the amount of time Tejedor spent on the case. The special master received evidence showing that Tejedor: entered into a written agreement to represent Weeks in his claims against Merck; filed a products liability lawsuit against Merck on his behalf; advised Weeks when he signed a release of his claims; secured Weeks' eligibility for a settlement award; obtained an increase in the amount of the award; and disbursed the award to Weeks. By contrast, Benjamin's work on behalf of Weeks—filing a motion to vacate and rescind Weeks' participation in the settlement—focused on opposing settlement efforts.

Benjamin argues that the special master and, correspondingly the district court, erred by failing to consider his motion for summary judgment, other than

6

to deny it in the adopted report and recommendation.[5] He also contends that Tejedor's failure to oppose the motion "should have resulted in summary judgment being entered in Benjamin's favor based on the undisputed facts that would properly be admitted and were dispositive." He maintains that, had the special master considered his motion, there would have been no need for the final hearing.

The scheduling order did not, however, allow for motion practice. The order made clear the parties' arguments were to be set forth in memorandum submitted with their evidence binders. We cannot say, in the context of multi-district litigation, that the special master abused his discretion in making procedural decisions to streamline the process for awarding attorney's fees. *See* FED. R. CIV. P. 53(f)(5). To the extent, then, that we consider Benjamin's argument that Tejedor did not respond to his summary judgment motion, the record shows that Tejedor did in fact respond in a filing titled "Response to Ronald Benjamin's Memorandum of Law," and an accompanying affidavit. Further, to the extent that we consider his argument that there would have been no need for the final hearing, the record is clear that there is a "genuine dispute as to any material fact," *see* FED. R. CIV. P. 56(a), as to Benjamin's claim to the attorney's fee award for the reasons discussed above.

Benjamin also argues that he did not receive sufficient notice that the special master would accept evidence at the October 19 hearing. He observes that the scheduling order specified that "all testimony and evidence being submitted must be **received by** the Special Master **no later than September**

---

[5] To the extent that Benjamin frames his appeal as a challenge to the district court's independent denial of his motion for summary judgment, we "decline to review the district court's denial of motions for summary judgment when the case comes to us on the movant's appeal following adverse judgment" after a decision on the merits. *Black v. J.I. Case Co.*, 22 F.3d 568, 572 (5th Cir. 1994); *see also Becker v. Tidewater, Inc.*, 586 F.3d 358, 365 n.4 (5th Cir. 2009).

**20, 2010**" and that "[p]arties will not be allowed to submit any additional evidence or testimony at the hearing." However, the scheduling order, which made clear that Benjamin's "<u>personal appearance</u>" was "<u>mandatory</u>," also provided that the special master "reserves the right to pose any questions to any of the participants at the hearing." The transcript of the October 19 hearing is clear that the special master acted within the confines of the order by asking Tejedor questions. Although Tejedor did testify during the hearing, her statements did not constitute "additional evidence or testimony" because they merely summarized the contents of her evidence binder, which she had already submitted to the special master, along with her communications with Benjamin related to the hearing. The transcript also is clear that the special master did not, by admitting into evidence orders by the district judge, the scheduling order, communications relating to the scheduling order, and documents required by the scheduling order, admit "additional evidence" because the documents in question already were before him.

Benjamin argues in substance that he deserves the attorney's fee award because Tejedor "abandon[ed]" Weeks as a client in January 2009. Specifically, Benjamin contends: that Tejedor told Weeks in a January 7 meeting that she would no longer represent him; that Tejedor sent Weeks a letter dated January 16 stating that "you have elected to allow us to withdraw as your counsel and you have elected to seek alternative counsel to file your lawsuit"; and that Weeks sent Tejedor an e-mail on January 23 stating "my new [counsel] recommends that there will be no more actions from your firm on my behalf." However, Benjamin has not demonstrated that he properly submitted this evidence to the special master. To the extent, then, that we consider his evidence, which was included in exhibits to Benjamin's motion to vacate or rescind Weeks' participation in the settlement program, it shows at best that there was uncertainty as to Tejedor's relationship with Weeks in January 2009. It does not

8

show that his work contributed in any way to Weeks' settlement award. It also does not rebut the evidence before the special master, discussed above, showing that Tejedor's efforts—many of which were undertaken before January 2009—culminated in the award. Further, Tejedor presented to the special master evidence showing that she did not withdraw from representing Weeks in January 2009, but instead explained to Weeks that, if he wanted to pursue a tort action against Merck, he would have to obtain a different lawyer. Tejedor also presented evidence that, after receiving the settlement award, Weeks told Tejedor that she had "earned [her] fee." Therefore, we cannot say that the special master's recommendation to award the attorney's fees to Tejedor, and the district court's adoption of this recommendation, was in error.

In sum, the district court did not err in awarding the attorney's fee award to Tejedor because her efforts, and not Benjamin's, culminated in Weeks' settlement award.

### 4. Tejedor's Motion for Appellate Attorney's Fees and Costs

"If a court of appeals determines that an appeal is frivolous, it may, after a separately filed motion or notice from the court and reasonable opportunity to respond, award just damages and single or double costs to the appellee." FED. R. APP. P. 38. An appeal is frivolous if it "involves legal points not arguable on their merits." *Hagerty v. Succession of Clement*, 749 F.2d 217, 222 (5th Cir. 1984); *see also Howard v. King*, 707 F.2d 215, 220 (5th Cir. 1983).

We deny Tejedor's motion for appellate attorney's fees and costs because at least some of Benjamin's arguments are not "frivolous" under FED. R. APP. P. 38. For example, Benjamin's evidence showing uncertainty as to the status of Tejedor's relationship with Weeks, while not persuasive or properly submitted, raises questions about her claim to the attorney's fee award that are at least "arguable on their merits." *See Hagerty*, 749 F.2d at 222. As the district court observed in declining to impose sanctions on Benjamin, "although [his] conduct

9

was unwarranted and inappropriate, it is sufficient to award the entirety of the disputed lien to Ms. Tejedor."

In sum, we deny Tejedor's motion for appellate attorney's fees and costs because at least some of Benjamin's argument are not frivolous.

## 5. Conclusion

Accordingly, we AFFIRM the district court's award of attorney's fees to Tejedor. We also DENY Tejedor's motion for appellate attorney's fees and costs.