UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: VIOXX Products Liability Litigation | * MDL No. 1657 |
| This Document Relates to: | * SECTION L |
| State of Utah | * JUDGE ELDON E. FALLON |
| v. | * MAGISTRATE JUDGE KNOWLES |
| Merck Sharp & Dohme Corp. | * |
| Civil Action No. 2:06-cv-09336 | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**PLAINTIFF'S THIRD REQUESTS FOR ADMISSION, INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT**

Pursuant to FED. R. CIV. P. 33, 34 and 36 and Pretrial Order Number 39B, please respond to the following Requests for Admission, Interrogatories and Request for Production of Documents.

**DEFINITIONS**

1. "Communication" means, without limitation, any act, action, oral speech, written correspondence, contact, expression of words, thoughts, and/or ideas, or transmission or exchange of data or other information to another person, whether orally, person-to-person, in a group, by telephone, letter, personal delivery, telex, facsimile, and/or any other process.

2. "Food and Drug Administration") ("FDA") means the United States Food and Drug Administration and any department, agent, director, officer, representative, or present or former employee thereof.

3. "Including" means "including but not limited to" and "including without limitation."

1

4. "Merck" means the defendant in this action, and any of the subsidiaries, divisions, departments, affiliates, predecessors, successors or offices of the defendant by whatever name known, and all present and former officers, directors, employees, trustees, principals, agents, and representatives of Merck, as well as any person acting or purporting to act on its behalf.

5. "Person" means any natural person and any entity, including any corporation, association, partnership, or other business or government enterprise.

6. "Vioxx" means the dug rofecoxib sold by Merck under the registered trademark VIOXX®.

7. "You" or "Your" means all defendants listed on the complaint, along with all present and former employees, agents, representatives, departments, committees or equivalent entities, or attorneys, or any other division, entity, employee, agent, representative, committee member, or other actor on behalf of the Defendant.

## INSTRUCTIONS

A.   The answers to these requests shall include such information as is available to Defendant and found within documents that are within the custody, possession or control of Plaintiffs, or are within the custody, possession or control of any consultants, accountants, attorneys or other agents of Defendant or which are otherwise available to Defendant. In responding to these discovery requests, Defendant is specifically instructed to review his personal files, notes, records, correspondence, daily calendars and telephone logs or records for all persons who have knowledge of the information inquired about in each request.

B.   If the answer to any discovery requests is not made from the personal knowledge of Defendant who will be verifying the answers to these interrogatories, identify each person from whom information or documents were obtained to make the particular answer and identify

each person having personal knowledge of such information. If the answers or portions of the answers to these discovery requests are supplied upon information and belief rather than upon actual knowledge, Defendant should so state and specifically describe or identify the source or sources of such information and belief.

C. The answers to these discovery requests should include, but not be limited to, an identification of each person having knowledge of the information provided in the answer, and of all documents and communications relating to that information.

D Where an individual interrogatory calls for an answer which involves more than one part, each part of the answer should be clearly set out so that it is understandable.

E. Where the terms "you", "defendant", or "plaintiff" are used, they are meant to include every individual party and separate answers should be given for each person named as a party, if the answers are different.

F. Where the terms "incident" or "the incident" are used, they are meant to mean the incident which is the basis of this lawsuit, unless otherwise specified.

G. If Defendant claims that any conversation, meeting or oral discussion inquired about in these discovery requests is privileged, Defendant should nevertheless identify such conversation, meeting or oral discussion in the manner required herein and set out specifically a detailed description of the factual circumstances supporting their claim of privilege.

H. A "health care provider" as used in these interrogatories is meant to include any medical doctor, osteopathic physician, psychiatrist, psychologist, mental health therapist, nurse practitioner, nurses assistant, acupuncturist, neuro pathologist, massage therapist, podiatrist, doctor or chiropractic, naturopathic physician, or other person who performs any kind of healing art.

I. All documents are to be produced which are in the possession of the individual or corporate party, their attorneys, investigators, agents, employees, or other representatives of the named party and his attorney. The terms "incident" or "the incident" are meant to include the incident which is the basis of this lawsuit, unless otherwise specified.

J. The term "document" is meant to include, but is not limited to, all writings, notes, memoranda, correspondence, charts, graphs, records, tapes, pictures, recorded, photographed, sketched, drawn or otherwise produced, maintained or stored information.

K. These discovery requests are continuing in nature and should be amended and supplemented in accordance with the Utah Rules of Civil Procedure.

## REQUESTS FOR ADMISSION

**REQUEST NO. 1:** Please admit that Professor Wayne A. Ray was the lead author in an article in the *Lancet* medical journal dated October 5, 2002, entitled "COX-2 selective non-steroidal anti-inflammatory drugs and risk of serious coronary heart disease."

**REQUEST NO. 2:** Please admit that the statistics from which the *Lancet* article was drawn were records of individuals on the expanded Tennessee Medicaid program.

**REQUEST NO. 3:** Please admit the *Lancet* article was a retrospective cohort study.

**REQUEST NO. 4:** Please admit the factual filters, in the *Lancet* article, were age 50-84, lived in the community, and had no life threatening non-cardiovascular illness.

**REQUEST NO. 5:** Please admit that Professor Ray was a paid Merck consultant.

**REQUEST NO. 6:** Please admit that Merck made no complaint as to the applicability of a retrospective cohort study when performed by Professor Ray.

**REQUEST NO. 7:**   Please admit that Merck is more capable financially to defend the Utah Vioxx case than Utah is to litigate the matter.

**REQUEST NO. 8:**   Please admit that Merck is more capable financially to defend the Utah Vioxx case than Utah is to litigate the matter.

**REQUEST NO. 9:**   Please admit that without contingency counsel, the Utah Attorney General's office does not have the attorney resources to litigate large claims against pharmaceutical giants.

**REQUEST NO. 10:**   Please admit that for the time Vioxx was on the market, there were no more than two Assistant Attorneys General assigned to the Utah Medicaid Fraud Control Unit.

**REQUEST NO. 11:**   Please admit that the prior Attorney General Mark Shurtleff and the present Attorney General John Swallow have exercised control over the material aspects of this litigation.

**REQUEST NO. 12:**   Please admit that the appointment of "Special Assistant Attorneys General" is within the common-law, constitutional, statutory and regulatory authority of the Utah Attorney General.

**REQUEST NO. 13:**   Please admit that Utah Code Annotated §26-20-9.5(2)(a) requires Merck to "make full and complete restitution to the State of all damages the state sustains because of [Merck's] violation of this chapter [the Utah False Claims Act].

**REQUEST NO. 14:**   Please admit that Merck has not made "full and complete restitution."

**REQUEST NO. 15:**   Please admit that full and complete restitution would include the costs of the medication as well as the costs of caring for Medicaid recipients injured by Merck.

**REQUEST NO. 16:** Please admit that Dr. Dennis Tolley has calculated the costs of care by Utah Medicaid for injured recipients as exceeding $100 million.

**REQUEST NO. 17:** Please admit that as of March 13, 2013 Merck has never offered more than $1 million dollars to settle Utah's claim.

**REQUEST NO. 18:** Please admit that as of March 13, 2013 Merck has never agreed to pay full and complete restitution of the injury to the Utah Medicaid fund arising out of care for injured Medicaid recipients.

**REQUEST NO. 19:** Please admit that UCA §26-20-9.5 requires Merck to pay the costs of enforcement including investigators, attorneys and other public employees as determined by the state.

**REQUEST NO. 20:** Please admit that as of March 13, 2013, the Utah Attorney General's office has never attempted to settle this matter with Merck for anything other than full and complete restitution.

**REQUEST NO. 21:** Please admit that as of March 13, 2013, the Utah Attorney General's office has never extended a settlement offer based solely or in part upon the payment of penalties called for under UCA §26-20-9.5(c) including treble damages, or a penalty assessed for claims or violations of the act.

**REQUEST NO. 22:** Please admit that until the State of Utah has received "full and complete restitution" and the costs of enforcement, any claims for penalties under UFC §26-20-9.5(c) are hypothetical and may never occur.

**REQUEST NO. 23:** Please admit that a full time Utah Assistant Attorney General attended all settlement conferences with the authority to accept or reject a settlement offer as directed by the Attorney General.

**REQUEST NO. 24:** Please admit that retained counsel does not have the authority to accept or reject a settlement offer proffered on behalf of Merck.

**REQUEST NO. 25:** Please admit that retained counsel did not and could not have authorized the suit against Merck.

**REQUEST NO. 26:** Please admit that the Utah Attorney General and members of his office have always been listed counsel or the state on any pleadings.

**REQUEST NO. 27:** Please admit that naproxen is not cardio-protective.

**REQUEST NO. 28:** Please admit that the maker of Aleve does not represent that naproxen is cardio-protective.

**REQUEST NO. 29:** Please admit that there are no studies showing that naproxen is cardio-protective.

**REQUEST NO. 30:** Please admit that your representations that naproxen was cardio-protective were false.

**REQUEST NO. 31:** Please admit that Merck employees did not provide accurate information as to the number of cardiovascular events when publishing the Bombardier et al., "Comparison of Upper Gastronintestinal Toxicity of Rofecoxib and Naproxen in Patients with Rheumatoid Arthritis," dated November 23, 2000, *New England Journal of Medicine* ("NEJM"); 343:1520-28, article on the VIGOR study.

**REQUEST NO. 32:** Please admit that the NEJM withdrew support for the article in December 2005 based upon the false representations of the number of cardiovascular events reported in the prior article. Curfman et al., "Expression of Concern: Bombardier et al., "Comparison of Upper Gastronintestinal Toxicity of Rofecoxib and Naproxen in Patients with Rheumatoid Arthritis," dated December 29, 2005 NEJM; 343:2813-14.

**REQUEST NO. 33:**   Please admit that there are adverse cardiovascular effects suffered with less than 18 months continuous use of Vioxx.

**REQUEST NO. 34:**   Please admit that you represented that adverse effects did not appear until after 18 months continuous use of Vioxx.

**REQUEST NO. 35:**   Please admit that Merck scientists wrote an article for the NEJM claiming that the adverse cardiovascular effects did not occur until after 18 continuous months of use of Vioxx.

**REQUEST NO. 36:**   Please admit that the NEJM published a retraction of the article claiming no adverse cardiovascular effects until after 18 months of continuous Vioxx use in June 2006.

**REQUEST NO. 37:**   Please admit that your CEO Raymond Gilmartin testified before the Senate Commerce Committee that there were no adverse cardiovascular effects until after 18 months continuous use of Vioxx.

**REQUEST NO. 38:**   Please admit that Merck, on behalf of itself, its officers and board of directors, commissioned attorney John Martin to perform a comprehensive review of the liability of the officers and board of directors with respect to VIOXX litigation.

**REQUEST NO. 39:**   Please admit that the Martin report was published online by Merck, its officers and Board members.

**REQUEST NO. 40:**   Please admit the Martin report may be found on the Merck website.

**REQUEST NO. 41:**   Please admit that the documentation relied upon by attorney Martin was provided to him by Merck.

**REQUEST NO. 42:** Please admit that the documentation cited by attorney Martin is authentic, reliable and admissible in this case.

**REQUEST NO. 43:** Please admit that Merck, through a press release and Mr. Gilmartin, represented that the first notice of a cardiovascular problem with VIOXX was when the APPROVe results were unblinded.

**REQUEST NO. 44:** Please admit that Merck through its officers and employees knew of significant clinical evidence that Mr. Gilmartin's statement was not true.

**REQUEST NO. 45:** Please admit that the first individual VIOXX patient cardiovascular jury trial occurred in the late summer of 1995.

**REQUEST NO. 46:** Please admit that reporting true numbers of cardiovascular events in the VIGOR trial would have resulted in the drug being removed from the market.

**REQUEST NO. 47:** Please admit that Dr. Edward Scolnick knew that but for the naproxen cardio-protective theory, Vioxx would have been removed from the market.

**REQUEST NO. 48:** Please admit that Merck obtained 900,000 reprints of the NEJM article on the Vigor trial for distribution to United States doctors.

**REQUEST NO. 49:** Please admit that those reprints were distributed in the State of Utah.

## INTERROGATORIES

**INTERROGATORY NO. 1:** If Merck responds to any of the Requests for Admission dated March 15, 2013 with any response other than an unqualified affirmation, please state the factual basis for the denial and any witnesses that will testify in support of the response.

**INTERROGATORY NO. 2:** Please state the fee agreement you have with each lawyer or law firm working on the State of Utah's claim against you arising out of the Vioxx-Utah Medicaid dispute whether it is a flat fee, contingent fee or hourly basis.

**INTERROGATORY NO. 3:** Please state the entire amount paid to date to each lawyer or law firm referred to in Interrogatory One which is attributable to services rendered in the State of Utah case against Merck arising out of the Vioxx-Utah Medicaid dispute.

**INTERROGATORY NO. 4:** Please state the amounts of money paid to Dr. Scott Zener for work relating to VIOXX.

**INTERROGATORY NO. 5:** Did Dr. Edward Scolnick sell Merck stock on inside information? What dates did Dr. Scolnick sell Merck stock?

**INTERROGATORY NO. 6:** Did Dr. Edward Scolnick sell Merck stock based upon the VIGOR results and the naproxen cardio-protective theory? If not, what was the reason Dr. Scolnick sold stock after the receipt of the VIGOR cardiovascular report.

**INTERROGATORY NO. 7:** Has Merck performed any reforms based upon the report of John Martin? If so, what were those reforms?

**INTERROGATORY NO. 8:** What efforts did Merck make to confirm or deny the naproxen cardio-protective theory?

**INTERROGATORY NO. 9:** Prior to the unblinding of VIGOR, what evidence did Merck have which would indicate that naproxen had a cardio-protective property?

**INTERROGATORY NO. 10:** Has Merck had any contact with Bayer or other manufacturers of naproxen based products as to the purported naproxen cardio-protective theory? If so, who was contacted, when were they contacted and what did they say? Which Merck employee made that contact?

**INTERROGATORY NO. 11:** If true numbers of cardiovascular events in VIGOR or prior trials had been reported to the FDA without the naproxen cardio-protective theory, would VIOXX have been removed from the market?

**INTERROGATORY NO. 12:** How many NEJM article reprints were distributed in the State of Utah?

**INTERROGATORY NO. 13:** How many times did Merck representatives show Utah doctors the "cardiovascular Card" referred to by Mr. Martin in his report?

**INTERROGATORY NO. 14:** If you maintain that the Utah Attorney General had knowledge of the falsity of the claims relating to the safety profile of VIOXX prior to December of 2005, please state the basis of that knowledge and the names of any witnesses who will so testify.

## REQUEST FOR PRODUCTION OF DOCUMENTS

**REQUEST FOR PRODUCTION NO. 1:** Please produce the retention agreement of all lawyers and law firms who are defending or assisting in the defense of the State of Utah's claim against Merck for the Vioxx litigation.

**REQUEST FOR PRODUCTION NO. 2:** Please produce all checks or other evidence of payment to lawyers working on or assisting with the State of Utah's claim for reimbursement in the Vioxx matter.

**REQUEST FOR PRODUCTION NO. 3:** Please produce all contracts between Merck and Dr. Scott Zener.

**REQUEST FOR PRODUCTION NO. 4:** Please produce all checks or other evidence for each payment to Dr. Zener.

**REQUEST FOR PRODUCTION NO. 5:** Please produce all work product of Dr. Zener related to Vioxx or the COX-2 drugs.

**REQUEST FOR PRODUCTION NO. 6:** Please produce all records reflecting the granting of stock or options to buy stock held by Dr. Edward Scolnick from 1999 through 2004.

**REQUEST FOR PRODUCTION NO. 7:** Please produce all records reflecting the sale of stock by Dr. Edward Scolnick from 1999-2004.

**REQUEST FOR PRODUCTION NO. 8:** Please produce any documentary evidence that would support a denial of any of the Requests for admission date March 15, 2013. Specifically, please produce any documentary evidence in your possession indicating that Attorneys General Shurtleff and Swallow have not controlled this litigation through designated Assistant Attorney Generals in the Medicaid Fraud Prevention Unit.

**REQUEST FOR PRODUCTION NO. 9:** Please produce any documentary evidence in your possession indicating that the Special Assistant Attorney Generals appointed in this case have not acted in accordance with the direction of the Utah Attorney General or his designated fulltime Assistant Attorneys General.

**REQUEST FOR PRODUCTION NO. 10:** Please produce any documentation used in the preparation of Mr. Gilmartin prior to his appearance before the Senate Commerce Committee.

**REQUEST FOR PRODUCTION NO. 11:** Please produce all documentation presented to investigators for the Senate Commerce Committee.

**REQUEST FOR PRODUCTION NO. 12:** Please produce the contract between Merck and Mr. John Martin for the investigation he performed on behalf of Merck, its officers and board of directors.

**REQUEST FOR PRODUCTION NO. 13:** Please produce all medical literature from any source indicating that naproxen has a cardio-protective indication or that naproxen has a cardio-protective property similar to aspirin?

**REQUEST FOR PRODUCTION NO. 14:** Please produce any correspondence with Bayer or other makers of naproxen based pharmaceuticals concerning the naproxen cardio-protective theory.

**REQUEST FOR PRODUCTION NO. 15:** Please produce all medical literature in Merck's possession prior to September 2004 indicating that any NSAID other than aspirin had a cardio-protective property?

**REQUEST FOR PRODUCTION NO. 15:** Please produce any evidence in your possession indicating that the Utah Attorney General had knowledge of the falsity (as used in the Utah False Claims Act) of the misrepresentations by Merck officers or employees relating to the cardiovascular profile of Vioxx prior to December of 2005.

DATED this 15th day of March, 2013.

                                        /S/
                                        Joseph W. Steele
                                        Kenneth D. Lougee
                                        STEELE & BIGGS
                                        5664 South Green Street
                                        Salt Lake City, UT  84123


                                        /S/
                                        Eric H. Weinberg
                                        The Law Offices of Eric H. Weinberg
                                        149 Livingston Avenue
                                        New Brunswick, NJ  08901

/S/
Richard W. Schulte (Ohio Bar No. 0066031)
812 E. National Road, Suite A
Vandalia, Ohio 45377
(937) 435-7500

*Attorneys for Plaintiff*

### CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing PLAINTIFF'S THIRD SET OF REQUESTS FOR ADMISSION, INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT has been served on Liaison Counsel, Russ Herman, Phillip Wittmann and Ann Oldfather, by U.S. Mail and e-mail or by hand delivery and e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8(C) on this 15th day of March, 2013.

/S/
Joseph W. Steele
Kenneth D. Lougee
STEELE & BIGGS
5664 South Green Street
Salt Lake City, UT 84123