IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re:  VIOXX | MDL Docket No. 1657 |
| PRODUCTS LIABILITY LITIGATION | Section L |
| This document relates to: | Judge Fallon |
| *Commonwealth of Pennsylvania,*<br>*by Thomas W. Corbett Jr., Attorney*<br>*General*  v. *Merck & Co. Inc.,* | Magistrate Judge Knowles |

**COMMONWEALTH OF PENNSYLVANIA'S SUR REPLY IN OPPOSITION TO
PLAINTIFFS' STEERING COMMITTEE AND GOVERNMENT ACTION LIASON
COUNSEL'S MOTION FOR AN ORDER IMPOSING A COMMON BENEFIT
OBLIGATION UPON THE RECOVERY OF THE COMMONWEALTH OF
PENNSYLVANIA ATTORNEY GENERAL'S CLAIMS ASSERTED AGAINST MERCK
SHARP & DOHME CORP. PENDING IN THIS MDL**

The Commonwealth of Pennsylvania (the "Commonwealth"), by and through its special

counsel, Cohen, Placitella & Roth, P.C., at the direction of the Pennsylvania Attorney General,

submits the following sur-reply brief in opposition to Plaintiffs' Steering Committee and

Government Action Liaison Counsel's (collectively the "PSC") Motion for an Order Imposing a

Common Benefit Obligation Upon the Recovery of the Commonwealth of Pennsylvania

Attorney General's Claims Asserted Against Merck Sharp & Dohme Corp. ("Merck") pending in

this MDL. For the reasons set out below, as well as in the Commonwealth's principle opposition

brief, the PSC's motion for an assessment of common benefit fees against the Commonwealth's

recovery should be denied.

## I.     INTRODUCTION

The PSC's reply brief makes three things clear that cut against its request for a fee assessment against the proceeds of the Commonwealth's settlement recently concluded in the Commonwealth Court of Pennsylvania relating to Pennsylvania's "PACE" prescription program's state law claims against Merck:

A. The PSC has no response to the threshold obstacle the Commonwealth asserted in its initial response that this Court lacks jurisdiction to grant any relief sought by the PSC;

B. The PSC sidesteps – or does not find important – the myriad sovereignty issues raised in the Commonwealth's response that preclude it being taxed by the PSC or this Court, federalism issues this Court may not ignore; and

C. The PSC continues to operate under a false belief that by sheer virtue of its creation of a "trial package" (which includes material developed by Pennsylvania's Special Counsel) and its unsuccessful Medicaid cost recovery trial on behalf of the state of Louisiana it somehow enjoys a presumption that any successful recovery by any government plaintiff in a Vioxx-related action is the result of benefits conferred by its work.

The fact of the matter, however, is that the PSC is not entitled to charge the Commonwealth directly or indirectly (by requiring its private co-counsel, Cohen Placitella & Roth PC ("CPR") to pay out of its earned fee) a common benefit fee for legal services and costs that neither the Commonwealth nor its Special Counsel has agreed to pay. The PSC is not legally or equitably entitled to an award of counsel fees relating to the Commonwealth's recovery from Merck because the PSC cannot overcome the jurisdictional and constitutional obstacles to the relief it seeks. The PSC has failed to demonstrate that the Commonwealth received any benefit from its effort, let alone that the Commonwealth and its Special Counsel "freeloaded" on the PSC's work

2

to achieve resolution of its case. For these reasons, more fully set forth below, the PSC's motion is without merit and should be denied.[1]

## A. **This Court Lacks Jurisdiction Over the Commonwealth**

The PSC's recitation of boilerplate common benefit jurisprudence does not undo the problematic concerns the Court noted in its January 3, 2012 Order denying the PSC's motion to tax the proceeds received by the states participating in the National Association of Medicaid Fraud Control Units settlement with Merck during 2012 (the "NAMFCU Settlement"). It appears that the PSC's position is to ignore the inconvenient jurisdictional issues confronting the Court and suggest instead that the existence of a common benefit doctrine, thoroughly discussed in this Court's decision in *In Re Vioxx Prods. Liab. Litig.*, 760 F. Supp. 2d 640 (E.D. La. 2010), somehow suffices to confer subject matter jurisdiction in a federal court over a sovereign state party where it would otherwise be lacking, and indeed impossible under the 11th Amendment. Importantly, the PSC offers no explanation why and how this Court is relieved of its responsibility to first determine its jurisdiction to act. To be sure, for all of the equitable power possessed by this Court, it properly recognized when previously asked to take up a similar effort to tax the NAMFCU Settlement state recipients who happened to have their state law based

---

[1] Issues relating to assessing common benefit attorney fees in MDLs or other collaborative lawyering projects, along with the sums of money at stake in many aggregate litigation matters, create a tendency, as this Court has observed first hand, for the interested parties to personalize their disputes. We endeavor to not do so and mean no disrespect to the PSC or Liaison Counsel in anything said during this motion. Indeed, while the undersigned Special Counsel vigorously disputes the PSC's claim here regarding the benefit of their work to Pennsylvania, it is not to say, as reflected in the nationwide resolution of the personal injury cases, that the work done by the PSC was of no moment or value to the many individuals personally harmed by Vioxx. However, as we have articulated, the Commonwealth and its Special Counsel are a far cry from the many personal injury lawyers who did no more in the Vioxx case than gather clients, put personal injury cases in suit and prepared claims and then reaped the benefit of the global settlement many lawyers working together achieved through their professional efforts. And for that effort the PSC and many other lawyers who contributed common benefits (including the undersigned) were justifiably well compensated for their effort in those cases.

3

government civil enforcement actions removed by Merck and pending in this court at the time of the that NAMFCU Settlement: "At the outset, the Court acknowledges the questions of jurisdiction, and state sovereign immunity." *Vioxx*, Doc. No. 63612 at 5.

The Commonwealth's opposition to the instant motion, the arguments articulated in its undecided motion to remand filed in the Eastern District of Pennsylvania, and the reasons stated in *Merrell Dow Pharma v. Thompson*, 478 U.S. 804, 810 (1986), answer the Court's threshold question and demonstrate why it lacks jurisdiction to act here. The PSC's reply brief, however offers no basis for the Court to assert its authority. It has therefore waived any arguments in response and its silence demonstrates why its motion should be denied.[2]

### B. Due Deference to the Commonwealth's Sovereign Rights, Prerogatives and Immunities bars the Court from granting the PSC relief requested

Under our nation's federalism system, the Commonwealth's sovereign status and its sovereign rights, prerogatives and immunities are entitled to recognition, respect and comity by both the PSC and this District Court. As a sovereign the Commonwealth enjoys immunity from "interference with the allocation of state funds." *Barton v.* Summers, 293 F.3d 944 (6th Cir. 2002). While the PSC mistakenly presumes and argues that the Commonwealth's fee arrangement with the Commonwealth will require the private firm (CPR) serving as Special Counsel, and not the Commonwealth, to bear the PSC common benefit fee tax, that is not case. Any assessment will be ultimately be against the settlement funds paid by Merck to settle the Commonwealth's state law claims and thus borne by funds in the treasury of the Commonwealth of Pennsylvania. *See* Declaration James A. Donahue, III, Esquire, Executive Deputy Attorney

---

[2] An additional reason is this matter has been voluntarily dismissed by means of Rule 41 stipulation by and between the Commonwealth and Merck which Merck filed following the Pennsylvania Commonwealth Court's entry of a Consent Judgment and Decree against Merck resolving the Commonwealth's claims.

General, Office of the Pennsylvania Attorney General. In neither its opening nor its reply brief does the PSC articulate just how this Court has the authority and right in this case to disregard the Commonwealth's sovereignty and tax its treasury.[3]

Moreover this Court may not issue an Order effectively recognizing the PSC as counsel for the Commonwealth. *See, e.g., Commonwealth v. Janssen Pharm., Inc.* 8 A.3d 267 (Pa. 2010). As a sovereign, the Commonwealth is the only entity who determines who represents it in court and how and to what extent its legal representatives are paid. Despite the PSC's efforts to extol what it did and how it allegedly benefited the Commonwealth, which the Commonwealth does not concede it benefitted from, the fact is the PSC was not retained by the Commonwealth to represent or provide any services to it under the Commonwealth's procurement procedures and processes. The Commonwealth insists on its sovereign rights to appoint and control its counsel. It owes no duty to compensate a volunteer and insists its sovereign immunities be recognized.

## C. **The PSC has not Demonstrated Entitlement to a Common Benefit Assessment**

This Court has observed regarding common benefit fund fees that, "[t]he theoretical bases for the application of [the concept of common benefit] to MDLs are the same as for class actions, namely equity and her blood brother, *quantum meruit*." *Vioxx*, 760 F. Supp. 2d 647. This Court's common benefit assessment decision relied in large part on the Fifth Circuit's

---

[3] The PSC in this regard ignores the fact the Pennsylvania Attorney General office along with ranking Deputy Attorney Generals are identified as counsel for Pennsylvania in this matter and were on the Commonwealth's state court complaint that Merck improperly removed to Federal Court and had transferred to this MDL. It also ignores the fact the Attorney General's office was extensively involved in the prosecution of the claims and their settlement. The PSC's arguments are also blind to the fact that Special Counsel operated under the control and direction of the Pennsylvania Attorney General in this matter, and thus cannot be distinguished from the Commonwealth or its Attorney General's office. The PSC's arguments further offer no explanation why it may assess fees against Special Counsel alone and not the Attorney General's office which was co-counsel.

decision in *In re Air Crash Disaster at Florida Everglades*, 549 F.2d 1006 (5th Cir. Fla. 1977), a decision credited by the PSC as a "landmark" decision on the issue of the common benefit fund doctrine. The PSC however, seems to disregard an extremely important point made in *Everglades*: that *where a party contributes to the obtaining a result it is not obligated to pay common benefit fees*. Thus in *Everglades* the appeals court approved the award of common benefit attorney fees in which "the District Court awarded compensation to the Committee for their work as lead counsel by ordering each other attorney representing a plaintiff, *except those attorneys who had actively participated in the pre-trial activities*, to pay to the Committee a part of the fee that he was entitled to receive from his client." *Id.* at 1008 (emphasis added). This is because "one who hires and pays his own lawyer is not a free rider if the attorney is a contributor to the final results." *Id.* at 1019. *See also In re Nineteen Appeals*, 982 F.2d 603, 606 (1st Cir. 1992) (common fund doctrine necessary to "prevent or minimize an incipient free-rider problem and, to that end, may employ measures reasonably calculated to avoid unjust enrichment of persons who benefit from a lawsuit without shouldering its costs") (quotation omitted).

In denying the PSC's previous motion to tax the litigation states in the MDL participating in the NAMFCU Settlement, the Court stated: "the issue here is not one of benefit, but one of nexus. The DOJ/NAMFCU settlement fund does not appear to be a product of any benefit conveyed on the settling states by the PSC's efforts." *Vioxx*, Doc. No. 63612 at 6. It follows here that the PSC bears the burden of proving that the Commonwealth's recent settlement was a product of the benefits conferred by the PSC's efforts. It has utterly failed to do so, nor can it.

The Commonwealth has been involved in the Vioxx litigation for a number of years independent of the MDL. *See* Donahue Declaration. The Commonwealth as part of a consortium of many state Attorneys General in 2007 banded together and developed their own theories and

6

evidence of liability and damages regarding Merck's wrongful marketing of Vioxx and wrongdoing related to clinical studies. *Id.* In 2008 this group of Attorneys General, including Pennsylvania's, ultimately filed complaints and reached a general enforcement action settlement with Merck, all without the help of the PSC. *Id.* The consent decree resolving the Commonwealth's Unfair Trade Practices and Consumer Protection Law ("UTPCPL") enforcement claims is attached to the Commonwealth's initial response as Exhibit "A." This consent decree resolved the Commonwealth's general UTPCPL claims, but carved out a number of claims which could later be brought by the Commonwealth's state agencies, including its PACE program. *Id.* To help it prosecute these reserved claims, the Commonwealth retained CPR as special counsel in light of the extensive work various shareholders and of counsel members of the firm had performed in the state court Vioxx litigation, especially on issues relating to marketing and clinical study experts that bore upon the Commonwealth payer program's Vioxx expenditures. *Id.* The expertise possessed by CPR's attorneys Christopher Placitella and Eric Weinberg in these areas is acknowledged by the MDL inviting and welcoming their participation on various MDL PSC work groups on marketing and clinical study results, including working groups focusing on issues relating to the Louisiana Medicaid trial.

It is against this wealth of existing VIOXX litigation experience and resources already in the Commonwealth's possession that the PSC faces a two-part burden to demonstrate the appropriateness of a common benefit award. First, it must demonstrate that it conferred a benefit to the Commonwealth – not merely insinuate or presume there was through the Commonwealth's involuntary presence in the MDL or its task or issue groups. Second it must demonstrate that the Commonwealth was a "free rider" which did not participate in development of the own case or its resolution. *See In re Air Crash Disaster at Florida Everglades*, 549 F.2d

7

1006 (5th Cir. 1977) (inappropriate to tax plaintiffs who "actively participated in the pre-trial activities"). The PSC fails in the former and, not surprising given the work of Pennsylvania in support of the efforts of other government plaintiffs, demonstrates quite the opposite on the latter.

The Commonwealth's participation in the MDL litigation, and any benefit it derived therefrom, which is none, is articulated in the accompanying declarations of Mr. Donahue and Eric Weinberg, the latter attached hereto as Exhibit "B." Mr. Weinberg in particular explains the significance of what the Commonwealth provided to the PSC, particularly after its members had lost the Louisiana AG bellwether case.

### 1. The PSC has not Proven its Work Conferred a Benefit to the Commonwealth

In its initial motion filing the PSC failed completely to set forth any factual basis for its request in its motion. In its reply brief the PSC attempts to remedy that shortcoming by attaching five self-serving affidavits to its reply in order to create the fictitious argument that the Commonwealth needed and accepted help from the PSC that without which the Commonwealth would not have been able to achieve a settlement with Merck. That is simply not the case as the Commonwealth had the benefits of work of its own staff, that of its Special Counsel (who had been involved in the state court Vioxx cases) and from its work with other Attorneys General independent of the PSC. *See* Declarations of Donahue and Weisberg.

In this case, the Commonwealth has been clear and consistent to both the PSC and the Court on where it wanted to try its claims against Merck (in Pennsylvania state court), and how it intended to do so, *i.e.* independent of the PSC's "trial package." Besides raising continuously that the District Court did not have jurisdiction over it and that Merck's removal violated the 11th Amendment, the Commonwealth repeatedly stated to the PSC that it did not need, did not

want, and refused to buy its trial package. The Commonwealth's counsel had always possessed the expertise, the experts and knowledge of the documents and key witness testimony necessary to make Pennsylvania's case through years of parallel state court based Vioxx litigation that developed a record independent of the MDL. For the PSC to offer a competing trial package and then attempt to charge State parties for it involuntarily – in the form of a 6.5% tax on recoveries – regardless of whether parties accepted the PSC's offer for the trial package, raises serious legal, federalism and ethical concerns.[4]

What the PSC's belated flight of affidavits fail to demonstrate is that anything shared by the PSC in the course of Special Counsel's collaborative efforts with the PSC work groups actually was used, relied upon, or conferred any benefit to the Commonwealth during its prosecution of its VIOXX prescription payment claims against Merck. Rather, the PSC's position is that simply by virtue of the Commonwealth's Special Counsel being made privy to certain documents and being present at meetings or receiving emails in connection with collaborative efforts provides sufficient circumstantial evidence of nexus between its work product and the Commonwealth's settlement. To be sure, the most elementary notions of Due Process demand far more than such innuendo, speculation and assumption before a party may taxed in the substantial amount sought by the PSC in this case, approximately $500,000.00.

In this vein it is also critical to point out that because the Commonwealth's claim on behalf of PACE, which drove its settlement with Merck, was so different than those brought on behalf of Medicaid programs such as Louisiana's, that none of the PSC's damage experts other

---

[4] Among other things, the PSC also fails to mention or explain how and why the Commonwealth should pay more than the $17,500 it charged the State of Utah for the "trial package." Nor does it explain why the Commonwealth must pay the PSC while other states or the Federal Government did not and do not. Such failure to apportion this MDL PSC common benefit tax violates the Constitution's Article I taxation limitations applicable to states. U.S. Const. Art. I § 2; U.S. Const. Art. I Cl 3; and U.S. Const. Art. I § 8, Cl 1 § 9, Cl § 4.

than that of Dr. Madigan was being utilized by Pennsylvania. Importantly, it was the Commonwealth's Special Counsel (Mr. Weinberg) and not the PSC who developed and contributed Dr. Madigan.

### 2. The PSC has not Proven that the Commonwealth was a Free-Rider which did not Contribute to the Resolution of the MDL Claims.

The PSC does not allege, let alone prove, that the Commonwealth was a "free rider" receiving the benefits of the PSC's work while not contributing to the resolution of its case and the common cause of Vioxx Plaintiffs. Indeed, as demonstrated in the affidavits attached to the PSC's reply the opposite is actually true. Commonwealth Special Counsel assisted the PSC in developing the Louisiana Medicaid case and trial package. They contributed their work product, including Dr. Madigan and his revealing analysis of Merck's placebo controlled Alzheimer Disease clinical trials, while taking and using none of the PSC's experts and work product as it was not relevant or helpful to the Commonwealth's PACE program's case. The PSC's affidavits demonstrate that even though the Commonwealth's claim was different from the other states, including Louisiana's, the Commonwealth's Special Counsel worked to assist and support the development of other government plaintiffs' claims, including the PSC's development of its Louisiana Medicaid case, as part of a collaborative effort among government claimants.[5]

When the PSC's spin on its attached emails is put aside and the documents it relies upon fairly read, what emerges is that the Commonwealth was *not* a free rider but rather an active litigant whose counsel was hands-on and collaborated extensively with other AG counsel and

---

[5]  In fact Pennsylvania continued to contribute to the MDL "AG" group joint effort even after being advised by Liaison Counsel that Special Counsel's objection to fees (and at that point more accurately inquiries about process) in the Vioxx personal injury case was "creating a huge problem for [her]" with respect to participating on an AG case negotiating committee being formed in late November of 2010. In short, despite the PSC's retaliatory conduct towards Special Counsel, they were not deterred from supporting and participating with other AG counsel on projects that supported the AG's collective objectives.

PSC members towards development and refinement of the litigating government entities' Vioxx cost recovery cases against Merck. The Commonwealth approach to resolving its claims was not one of selfishness taking and usurpation as unfairly portrayed in the PSC's affidavits, but one of collaboration and teamwork. Commonwealth's Special Counsel's efforts and contributions were undertaken and given knowing that its particular payer program – the PACE program – was markedly different than Louisiana's Medicaid program and that Merck's liability and the PACE program's damages would have to be proven via different means and experts than those used at trial of the Louisiana case, as well as the New York and Florida cases. Further, the efforts of Commonwealth counsel during the conference calls articulated by Ms. Barrios demonstrate as well that they added substantive value to the others who worked representing their states.

For the above reasons, the Commonwealth of Pennsylvania respectfully requests this Honorable Court deny the PSC's motion for assessment of common benefit fees against the Commonwealth's VIOXX recovery from Merck.

Respectfully submitted,

COHEN PLACITELLA & ROTH, P.C.

Date: March 15, 2013          BY:      /s/ Christopher Placitella
                                       CHRISTOPHER M. PLACITELLA, ESQUIRE
                                       HARRY M. ROTH, ESQUIRE
                                       MICHAEL COREN, ESQUIRE
                                       2001 Market Street, Suite 2900
                                       Philadelphia, PA 19103
                                       Phone: (215) 567-3500
                                       Fax: (215) 567-6019

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Commonwealth of Pennsylvania's Sur

Reply in Opposition to Plaintiffs' Steering Committee and Government Action Liaison

Counsel's Motion for an Order Imposing a Common Benefit Obligation Upon the Recovery of

The Commonwealth of Pennsylvania Attorney General's Claims Asserted Against Merck Sharp

& Dohme Corp Pending in this MDL has been served on Liaison Counsel, Russ Herman and

Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail, upon Liaison Counsel

Ann Oldfather by e-mail, and upon all parties by electronically uploading same to LexisNexis

File & Serve Advanced in accordance with Pre-Trial Order No. 8B, and that the foregoing was

electronically filed with the Clerk of Court of the United States District Court for the Eastern

District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing

in accord with the procedures established in MDL 1657, on this 15th  day of March, 2013.

Respectfully submitted,

COHEN, PLACITELLA & ROTH
A Professional Corporation


BY:      /s/ Christopher Placitella
         CHRISTOPHER M. PLACITELLA, ESQUIRE
         HARRY M. ROTH, ESQUIRE
         MICHAEL COREN, ESQUIRE
         2001 Market Street, Suite 2900
         Philadelphia, PA  19103
         Phone:  (215) 567-3500
         Fax:  (215) 567-6019

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re:  VIOXX | MDL Docket No. 1657 |
| PRODUCTS LIABILITY LITIGATION | Section L |
| This document relates to: | Judge Fallon |
| *Commonwealth of Pennsylvania, by Thomas W. Corbett Jr., Attorney General*  v. *Merck & Co. Inc.,* | Magistrate Judge Knowles |

**Declaration of James A. Donahue, III, Esquire,**
**Executive Deputy Pennsylvania Attorney General**

James A. Donahue, III, Esquire, being of majority age does set down and declare the following:

1.     I am an attorney at law in the Commonwealth of Pennsylvania ("Commonwealth), am an Acting Executive Deputy Attorney General, Office of the Pennsylvania Attorney General, and am the Director of the Pennsylvania Attorney General's office's Public Protection Division.  I have been with the Pennsylvania Attorney General's office for 27 years. From July 1997 to January 2013, I served as Chief Deputy Attorney General in charge of the Antitrust Section. Beginning in January 2013, I was promoted to Executive Deputy Attorney General.  I make the following statements based upon my firsthand knowledge or upon record information available and furnished to me in my roles as Executive Deputy Attorney General and Director of Public Protection Division.

2.      In 2008 the Commonwealth brought an enforcement action against Merck pursuant to

Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1 et seq.

("Consumer Protection Law") in the Commonwealth Court of Pennsylvania captioned

*Commonwealth of Pennsylvania acting by Attorney General Thomas W. Corbett, Jr. v. Merck &*

*Co., Inc.,* 273 M.D. 2008 (Civ. Action, Equity) (the "First Enforcement Action").  The

Commonwealth's civil action enforcement complaint charged Merck with violations of the

Consumer Protection Law relating to its Vioxx promotion and marketing practices, as well as its

practices relating to Data Safety Monitoring Boards, and support of continuing medical

education. The suit was the culmination of an investigating into Vioxx and Merck's marketing

practices relating to conducted by an Attorney General Multistate Work Group, in which

Pennsylvania's Attorney General was a member and active participant.

3.      By means of a stipulated Final Judgment Decree and Permanent Injunction ("Consent

Decree") filed in the Commonwealth Court on or about May 20, 2008, the Commonwealth and

Merck by agreement settled and resolved the Commonwealth's First Enforcement Action. The

Consent Decree contained exceptions to the release granted to Merck therein, including, but

limited to:  (a) "Medicaid fraud or abuse and/or Medicaid kickback violations related to the

Commonwealth's Medicaid program"; (b) False Claims Act violations; and (c) "any liability

under the Commonwealth's Consumer Protection laws which any person or entity, including

Released Parties, has or may have to . . . Commonwealth payors of said Commonwealth and

which have not been specifically enumerated as included herein."

4.      On behalf of four Pennsylvania state agency programs that had paid state funds for

Vioxx, the Commonwealth subsequently filed a civil action against Merck captioned

*Commonwealth of Pennsylvania, by Thomas W. Corbett Jr., Attorney General v. Merck & Co.,*

*Inc.*, Docket No. 000753 (the "Second Enforcement Action"). This case was filed on December

3, 2008 in the Court of Common Pleas of Philadelphia County. The attorney filing the suit and

representing the Commonwealth were two Senior Deputy Attorney Generals and Special

Counsel, Cohen Placitella & Roth, P.C. ("CPR"), who the Attorney General appointed and

retained after a careful selection and vetting process and negotiation of a fee agreement with

them. At the request of CPR, the Commonwealth's consented to Eric H. Weinberg, Esquire, who

was "of counsel" to CPR when the representation commenced, also serving as Special Counsel.

The Commonwealth's engagement of and fee agreement with CPR took into account the fact

CPR (including Mr. Weinberg) had done considerable work with developing the state court

based Vioxx litigation's cases against Merck, which added to the Commonwealth's knowledge

base and discovery from the investigation underlying the First Enforcement Action. Merck

removed the Second Enforcement Action to the United States District Court for the Eastern

District of Pennsylvania, and thereafter on petition to the Judicial Panel on Multidistrict

Litigation the case was transferred to the *In re VIOXX Products Liability Litigation*, MDL No.

1657 (the MDL Proceedings").

5.      The Commonwealth timely filed a motion for remand based on the absence of federal

jurisdiction and the Commonwealth's 11th Amendment Right to not be sued in Federal Court.

Moreover, during the pendency of Second Enforcement Action, the Commonwealth determined

to proceed only on behalf of one of its payer program agencies, the Pennsylvania Department of

Aging's PACE program. The Commonwealth did not and does not concede that the MDL

presiding court, or any federal court, has jurisdiction over it and its claims that were asserted in

the Second Enforcement Action

6.      While Special Counsel handled day to day matters in the prosecution of the Commonwealth's case before the MDL prior to its dismissal by Rule 41 stipulation, at all time they acted under the supervision and direction of the Attorney General's office. Throughout the Attorney General was co-counsel and was in charge of the case.

7.      The Commonwealth's PACE program was materially different than the Medicaid programs that many of the states, including Louisiana, New York, and others based their Vioxx cost recovery claims upon. Unlike the Medicaid Program, the PACE program's management could control or restrict prescriber's behavior and had a history of doing so both before and after to Vioxx's coming onto the market.

8.      The Commonwealth did not participate in the National Association of Medicaid Fraud Control Units Medicaid settlement with Merck during 2012 (the "NAMFCU Settlement"). That was due to Merck's take it leave it position as to the scope of the release of claims under the settlement, which meant that the Commonwealth would have had to relinquish its PACE program's Vioxx claims for no consideration, which the Commonwealth was not willing to do because of the size of that claim.

9.      Following implementation of the NAMFCU Settlement, the MDL court's lifting the stay on liability discovery in the remaining Attorney General cases, and shortly after Merck completed its deposition of PACE's Director, Merck and the Commonwealth agreed to sit down and discuss settlement. Those private discussions led to a Settlement in December 2012. In accordance with the Pennsylvania Attorney General's policies and procedures on resolving Enforcement Claims under the Consumer Protection Law, a Third UTPCPL Enforcement Action in Commonwealth Court was filed against Merck, with the ensuing entry of a Consent Decree

against Merck enjoining future violations and payment of monetary consideration to the Commonwealth, which has been received and turned over the Commonwealth's treasury in accordance with the Commonwealth's fiscal procedure laws.

10.     At no time was the MDL PSC or any of its members retained by the Commonwealth to represent it.

11.     At no time did the Commonwealth request or receive the MDL's "trial package", nor did the Commonwealth require it to prove its case against Merck.

12.     At no time did the Commonwealth or its Special Counsel request or receive any meaningful work product or assistance in prosecuting its case against Merck. Consistent with the Pennsylvania Attorney General's policy of cooperating and collaborating with other Attorney General offices where there is a common interest or it can be of assistance, the Pennsylvania Attorney General's office permitted Special Counsel to meet with and assist lawyers representing other states' in Vioxx claims, including the counsel representing Louisiana in its Medicaid claims against Merck, some of whom were serving on the PSC or its committees. It is my understanding that no MDL work product that was received was used by the Pennsylvania Attorney General's staff or Special Counsel. Nor was it usable in the Commonwealth's case against Merck on behalf of the PACE program, as this state elder citizen prescription cases was unique among the so called MDL Attorney General cases due to the PACE program's ability to control or modify prescriber's behavior.

13.     At no time did the Commonwealth or its Special Counsel use or rely on any experts developed by the MDL PSC. The Commonwealth's lead expert, Dr. Madigan, was one that Special Counsel and other state court based plaintiff's counsel developed for the state court

based cases. The Madigan report eventually was made available to MDL plaintiffs as one of the MDL's roster of experts by Special Counsel and other state plaintiffs' counsel.

14.     The Commonwealth has never agreed or consented to pay the MDL PSC and/or Liaison Counsel any fee.

15.     Any assessment levied against the Commonwealth's Special Counsel relating to the Commonwealth's Vioxx settlement with Merck will paid and borne by the Commonwealth from the Commonwealth's treasury.

16.     The Commonwealth objects to the any MDL PSC or Liaison Fee or cost assessment against the Commonwealth or any attorney representing the Commonwealth, including its Special Counsel.

I certify under penalty of perjury that the foregoing is true and correct.

Executed on March 15, 2013.

James A. Donahue, III,

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: VIOXX | MDL Docket No. 1657 |
| PRODUCTS LIABILITY LITIGATION | Section L |
| This document relates to: | Judge Fallon |
| *Commonwealth of Pennsylvania, by Thomas W. Corbett Jr., Attorney General* v. *Merck & Co. Inc.,* | Magistrate Judge Knowles |

**Declaration of Eric H. Weinberg, Esquire,
Special Counsel to the Commonwealth of Pennsylvania Attorney General**

1. I am an Attorney At Law and admitted to practice in New Jersey and New York.

2. I have represented plaintiffs in matters involving products regulated by the Food and Drug Administration since 1988, including in matters involving Vioxx © since October 2004.

3. I have been retained by a global pharmaceutical company as a neutral mediator and successfully mediated approximately 50 personal injury claims against the company in that capacity in 2009.

4. I have served on two Multidistrict Litigation Plaintiffs' Steering Committees; appointed by the Honorable John F. Grady, USDJ for the Northern District of Illinois in 1994 to the PSC in MDL-986, In Re Factor VIII and IX Blood Products Litigation (where I also served on the Executive Committee charged with management of the litigation) and appointed by the Honorable David R. Herndon, USDJ for the Southern District of Illinois in 2012 to the PSC in MDL 2385 - Pradaxa (Dabigatran Etexilate) Products Liability Litigation (where I also serve currently as Co-Chair of the Science and Expert Committee.) In addition, I have had a leadership role in two state court mass tort consolidated actions – in the Pennsylvania consolidated Baycol litigation in the Court of Common Pleas in Philadelphia, and in the New Jersey consolidated Vioxx litigation, in the Superior Court of New Jersey, Atlantic County.

5. In the Vioxx litigation, since 2004 I have worked in the New Jersey consolidated litigation and on private Third Party Payor and Attorney General matters to develop common benefit evidence and experts for plaintiffs. After I was approved as Special Counsel to the Commonwealth of Pennsylvania, I brought my common benefit work product to bear in behalf of the Commonwealth's claims.

6. In October of 2009 I participated in drafting a common benefit work product memo to the file which listed fifteen (15) potential expert witnesses for plaintiffs, many of whom I had personally retained and worked with on my own time and at my own expense. This memo (which remains confidential work product in pending litigation) was sent to my MDL and state court colleagues, and they were offered the opportunity to work with the experts I and others had retained. None of these experts are referenced, besides one, in the PSC's moving papers.

7. I shared the report of Dr. David Madigan with my MDL colleagues. Dr. Madigan's report has been included in the MDL PSC Trial Package, and several states have since retained him. I was the first lawyer to retain Dr. Madigan in any litigation matter, in December of 2005, in the New Jersey consolidated Vioxx litigation. I have worked with him since that time.

8. No MDL expert reports or work product were provided to any expert retained on behalf of the Commonwealth of Pennsylvania.

9. No MDL expert was ever designated as a witness on behalf of the Commonwealth of Pennsylvania.

10. An Affidavit submitted by the PSC suggests that I must have accessed the Trial Package since I am counsel to another attorney general. The statement is not correct. The extensive file developed in state court litigation by me and others was adequate to our needs in representation of our client, the Commonwealth of Pennsylvania.


I certify under penalty of perjury that the foregoing is true and correct.


Executed on March 14, 2013.

Eric H. Weinberg, Esq.