UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: VIOXX Products Liability Litigation | MDL No. 1657 |
| This Document Relates to: | SECTION L |
| State of Utah | JUDGE ELDON E. FALLON |
| v. | MAGISTRATE JUDGE KNOWLES |
| Merck Sharp & Dohme Corp. | |
| Civil Action No. 2:06-cv-09336 | |

**PLAINTIFF'S FOURTH SUPPLEMENTAL ANSWERS TO DEFENDANT'S SECOND SET OF INTERROGATORIES**

Plaintiff hereby submits its fourth supplemental answers to nos. 2 and 5 of Defendant's second set of interrogatories.

These supplemental answers concern the prepared and oral testimony of Raymond V. Gilmartin, President, Chairman, and Chief Executive Officer of Merck, before the United States Senate Committee on Finance on November 18, 2004. By submitting the prepared testimony to the Senate Committee, Mr. Gilmartin and Merck violated UTAH CODE § 26-20-7(2)(c), which prohibits a person from falsifying, with the intent to deceive, any report or document required by state or federal law.

**Interrogatory No. 2:** Identify all communications between Merck and any person related to VIOXX that Plaintiff contends is violative of Utah law including date, location, form, content, substance, originator and recipient of each communication.

1

**Interrogatory No. 5:** For each communication identified in response to Interrogatory number 2, identify the specific statement or omission that you claim renders the communication false or misleading. If identifying an omission, identify the communication or information that you allege Merck should have provided.

**Representation A: An increased risk of confirmed cardiovascular events began only after eighteen (18) months of continuous daily treatment in patients taking VIOXX compared to those taking placebo.**

**Date of Representation:** November 18, 2004.

**Person Making Representation and/or Omission:** Raymond V. Gilmartin, President, Chairman and Chief Executive Officer, Merck and Co., Inc.

**Form of Representation:** Mr. Gilmartin's Prepared Testimony before the United States Senate Committee on Finance, attached hereto as Exhibit A.

**Target of Representation:** The United States Senate Committee on Finance, and thus the federal government and public in general.

**Representation in Detail:** In his prepared testimony before the U.S. Senate Committee on Finance, Mr. Gilmartin averred that an increased risk of cardiovascular events began in patients taking VIOXX only after eighteen (18) months of continuous daily use. *See* Exhibit A, p. 1.

**Reasons Why Representation Was False:** This representation was false because VIOXX caused an increased risk of cardiovascular events in patients who had taken VIOXX for less than eighteen (18) months. This increased risk was confirmed by the VIGOR and Alzheimer's studies, during which patients consumed VIOXX for less than eighteen (18)

2

months. *See* Plaintiff's Supp. Answers to Defendant's Second Set of Interrogatories, pp. 4-8, 19-20, attached as Exhibit B; Plaintiff's Second Supp. Answers, pp. 1-10, attached as Exhibit C; Plaintiff's Third Supp. Answers, pp. 8-9, attached as Exhibit D.

**Representation B:** Prior to the APPROVe study, the combined data from randomized controlled clinical trials showed no difference in confirmed cardiovascular event rates between VIOXX and placebo and VIOXX and NSAIDs other than naproxen.

**Date of Representation:** November 18, 2004.

**Person Making Representation and/or Omission:** Raymond V. Gilmartin, President, Chairman and Chief Executive Officer, Merck and Co., Inc.

**Form of Representation:** Mr. Gilmartin's Prepared Testimony before the United States Senate Committee on Finance, attached hereto as Exhibit A.

**Target of Representation:** The United States Senate Committee on Finance, and thus the federal government and public in general.

**Representation in Detail:**

1. "[U]ntil APPROVe, the combined data from randomized controlled clinical trials showed no difference in confirmed cardiovascular event rates between VIOXX and placebo and VIOXX and NSAIDs other than naproxen." Exhibit A, p. 2.

2. "In these studies, there was no difference in the rate of cardiovascular events between VIOXX and placebo, or between VIOXX and non-naproxen NSAIDs." Exhibit A, p. 2.

3. "To help us evaluate the meaning of the VIGOR study, Merck took the step of looking into data from two trials we had already initiated in which patients with

3

> memory impairment or Alzheimer's were given VIOXX or placebo. We found that there was no difference in cardiovascular event rates in these two trials." Exhibit A, p. 3.

4. "Our clinical data—from our original application to the FDA seeking approval of VIOXX to that day [when VIOXX was taken off the market]—had shown no difference between VIOXX and placebo." Exhibit A, p. 4.

**Reasons Why Representation Was False:** This representation was false because VIOXX causes cardiovascular events at a rate greater than placebo and other NSAIDs. *See* Exhibit C, pp. 4-5.

**Representation C:** **Merck promptly disclosed the results of Merck-sponsored studies of VIOXX to the FDA, to physicians, to the scientific community, and to the media and by doing so fostered a "robust scientific discussion of the risks and benefits of VIOXX." Exhibit A, p. 3.**

**Date of Representation:** November 18, 2004.

**Person Making Representation and/or Omission:** Raymond V. Gilmartin, President, Chairman and Chief Executive Officer, Merck and Co., Inc.

**Form of Representation:** Mr. Gilmartin's Prepared Testimony before the United States Senate Committee on Finance, attached hereto as Exhibit A.

**Target of Representation:** The United States Senate Committee on Finance, and thus the federal government and public in general.

**Representation in Detail:**

1. "Since the time of our release of the VIGOR study data, there has been a healthy scientific discussion of the safety of VIOXX and other COX-2 inhibitors. This

4

discussion has occurred within Merck's laboratories and at external scientific forums." Exhibit A, p. 4.

2. "Merck supported that discussion. However, when researchers published articles or gave speeches that presented misleading or inaccurate information about VIOXX, Merck sought to set the record straight about a medicine that provided significant benefits to patients." Exhibit A, p. 4.

**Reasons Why Representation Was False:** This representation was false because Merck went to great lengths to suppress the opinions of doctors and scientists who were skeptical of the alleged safety of VIOXX. Exhibit B, pp. 27-28; Exhibit D, p. 2.

**Representation D:** An increased risk of cardiovascular events occurs in patients taking VIOXX only after eighteen (18) months of continuous daily use.

**Date of Representation:** November 18, 2004.

**Person Making Representation and/or Omission:** Raymond V. Gilmartin, President, Chairman and Chief Executive Officer, Merck and Co., Inc.

**Form of Representation:** Mr. Gilmartin's oral testimony before the United States Senate Committee on Finance, attached hereto as Exhibit E.

**Target of Representation:** The United States Senate Committee on Finance, and thus the federal government and public in general.

**Representation in Detail:** Mr. Gilmartin repeatedly testified before the Senate Committee on Finance, including Senators Orrin Hatch, Max Baucus, and John Breaux, that VIOXX did not cause an increased risk of cardiovascular events in patients until VIOXX was taken continuously for eighteen (18) months. *See* Exhibit E, p. 6, 8-9.

**Reasons Why Representation Was False:** This representation was false for the reasons stated in Representation A, above, and for the reasons stated in Exhibit B, pp. 4-8, 19-20; Exhibit C, pp. 1-10; Exhibit D, p. 8-9.

**Representation E:** **Merck was unaware of any increased cardiovascular risk associated with VIOXX until September 24, 2004, when it received the results of the APPROVe trial.**

**Date of Representation:** November 18, 2004.

**Person Making Representation and/or Omission:** Raymond V. Gilmartin, President, Chairman and Chief Executive Officer, Merck and Co., Inc.

**Form of Representation:** Mr. Gilmartin's oral testimony before the United States Senate Committee on Finance, Exhibit E.

**Target of Representation:** The United States Senate Committee on Finance, and thus the federal government and public in general.

**Representation in Detail:** Mr. Gilmartin averred in his oral testimony before Senators Orrin Hatch and John Breaux that Merck was unaware of any clinical data which demonstrated an increased risk of cardiovascular events associated with VIOXX until it received the results of the APPROVe trial on September 24, 2004. Exhibit E, p. 4, 17.

**Reasons Why Representation Was False:** This representation was false because Merck had knowledge of the propensity of VIOXX to cause cardiovascular events as early as the Fitzgerald paper, Study 090, and the VIGOR trial. *See* Exhibit B, p. 19-20.

**Representation F:** **The VIOXX Alzheimer's trials showed no difference in cardiovascular events in patients taking VIOXX versus patients taking placebo.**

**Date of Representation:**  November 18, 2004.

**Person Making Representation and/or Omission:**  Raymond V. Gilmartin, President, Chairman and Chief Executive Officer, Merck and Co., Inc.

**Form of Representation:**  Mr. Gilmartin's oral testimony before the United States Senate Committee on Finance, Exhibit E.

**Target of Representation:**  The United States Senate Committee on Finance, and thus the federal government and public in general.

**Representation in Detail:**  Mr. Gilmartin testified before Senators Orrin Hatch and Max Baucus that the VIOXX Alzheimer's trials showed no difference in cardiovascular events in patients taking VIOXX versus those taking placebo.  According to Mr. Gilmartin, this information led Merck to conclude that naproxen had a cardioprotective effect and thus explained the results of the VIGOR trial. *See* Exhibit E, pp. 4, 11.

**Reasons Why Representation Was False:**  The falsity of this representation is set forth in detail in Exhibit C, pp. 2-4.


**Representation G:**  **The cardiovascular results of the VIGOR study were the results of naproxen cardioprotection and not VIOXX causation of cardiovascular events.**

**Date of Representation:**  November 18, 2004.

**Person Making Representation and/or Omission:**  Raymond V. Gilmartin, President, Chairman and Chief Executive Officer, Merck and Co., Inc.

**Form of Representation:**  Mr. Gilmartin's oral testimony before the United States Senate Committee on Finance, Exhibit E.

**Target of Representation:** The United States Senate Committee on Finance, and thus the federal government and public in general.

**Representation in Detail:**

1. "And in those two [Alzheimer's] trials, which are elderly patients at a higher risk, we saw no difference between VIOXX and placebo. And from that point, in terms of also looking at the aspirin-like effects of naproxen, concluded that the weight of the evidence was that naproxen had a lower rate [of cardiovascular events]. That was our conclusion then and that is our conclusion today." Exhibit E, p. 4.

2. Senator Orrin Hatch asked Mr. Gilmartin what led Merck scientists in the VIGOR study to conclude that naproxen had a cardioprotective effect although there was no scientific evidence to support that conclusion. Mr. Gilmartion responded by saying, "given the fact that we had the placebo data with no difference between VIOXX and placebo, we concluded at that point that the weight of the evidence was that naproxen lowered the rate of cardiovascular events." Exhibit E, p. 5.

**Reasons Why Representation Was False:** These representations were false for the reasons set forth in Exhibit B, pp. 8-18, 21-22, 28-31; Exhibit D, pp. 2-8.


**Representation H:** **Studies show that the incidence of cardiovascular events among patients taking VIOXX was similar to the incidence of cardiovascular events among those taking placebo and those taking non-naproxen NSAIDs.**

**Date of Representation:** November 18, 2004.

**Person Making Representation and/or Omission:** Raymond V. Gilmartin, President, Chairman and Chief Executive Officer, Merck and Co., Inc.

**Form of Representation:** Mr. Gilmartin's oral testimony before the United States Senate Committee on Finance, Exhibit E.

**Target of Representation:** The United States Senate Committee on Finance, and thus the federal government and public in general.

**Representation in Detail:** Senator Max Baucus questioned Mr. Gilmartin regarding the two-year period in which the VIOXX label went without a cardiovascular warning or precaution. Mr. Gilmartin replied that the length of time it took to update the VIOXX label was warranted because Merck "had all this placebo data that showed no difference [in cardiovascular events], and no difference against other non-naproxen NSAIDs." Mr. Gilmartin further provided that Merck "saw no difference between VIOXX and non-naproxen NSAIDs, that's a lot of safety data, and our marketing was appropriate." Exhibit E, p. 11.

**Reasons Why Representation Was False:** This representation was false for the reasons stated in Exhibit C, p. 4-5.

DATED this 27 day of March, 2013.

/S/
Joseph W. Steele
Kenneth D. Lougee
STEELE & BIGGS
5664 South Green Street
Salt Lake City, UT  84123

/S/
Eric H. Weinberg
The Law Offices of Eric H. Weinberg
149 Livingston Avenue
New Brunswick, NJ  08901


/S/
Richard W. Schulte (Ohio Bar No. 0066031)
812 E. National Road, Suite A
Vandalia, Ohio 45377
(937) 435-7500

***Attorneys for Plaintiff***


## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing PLAINTIFF'S FOURTH SUPPLEMENTAL ANSWERS TO DEFENDANT'S SECOND SET OF INTERROGATORIES TO PLAINTIFFS has been served on Liaison Counsel, Russ Herman, Phillip Wittmann and Ann Oldfather, by U.S. Mail and e-mail or by hand delivery and e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8(B), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 27 day of March, 2013.


/S/
Joseph W. Steele
Kenneth D. Lougee
STEELE & BIGGS
5664 South Green Street
Salt Lake City, UT  84123


10