## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

|                                             |     |                           |
|---------------------------------------------|-----|---------------------------|
|                                             |  :  | **MDL NO. 1657**          |
| **IN RE: VIOXX**                            |  :  |                           |
| **PRODUCTS LIABILITY LITIGATION**           |  :  | **SECTION:  L**           |
|                                             |  :  |                           |
|                                             |  :  | **JUDGE FALLON**          |
|                                             |  :  | **MAG. JUDGE KNOWLES**    |

.. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. :

**THIS DOCUMENT RELATES TO:**   *Commonwealth of Pennsylvania v. Merck & Co., Inc.*, No. 09-2861

### ORDER & REASONS

The Court has pending before it the Plaintiff's Steering Committee's Motion for Common Benefit Assessment. (Rec. Doc. 64205). The Court has reviewed the briefs and the applicable law and heard oral argument, and now issues this Order and Reasons.

## I.    BACKGROUND

To put this matter in perspective, a brief review of this litigation is appropriate. This multidistrict products liability litigation involves the prescription drug Vioxx, known generically as Rofecoxib. Merck, a New Jersey corporation, researched, designed, manufactured, marketed and distributed Vioxx to relieve pain and inflammation resulting from osteoarthritis, rheumatoid arthritis, menstrual pain, and migraine headaches. On May 20, 1999, the Food and Drug Administration approved Vioxx for sale in the United States. Vioxx remained publicly available until September 20, 2004, when Merck withdrew it from the market after data from a clinical trial known as APPROVe indicated that the use of Vioxx increased the risk of cardiovascular thrombotic events such as myocardial infarction (heart attack) and ischemic stroke. Thereafter, thousands of individual suits and numerous class actions were filed against Merck in state and

federal courts throughout the country alleging various products liability, tort, fraud, and warranty claims. It is estimated that 105 million prescriptions for Vioxx were written in the United States between May 20, 1999 and September 30, 2004. Based on this estimate, it is thought that approximately 20 million patients have taken Vioxx in the United States.[1]

California was the first state to institute a consolidated state court proceeding on October 30, 2002. New Jersey and Texas soon followed suit, on May 20, 2003 and September 6, 2005, respectively. On February 16, 2005, the Judicial Panel on Multidistrict Litigation conferred MDL status on Vioxx lawsuits filed in various federal courts throughout the country and transferred all such cases to this Court to coordinate discovery and to consolidate pretrial matters pursuant to 28 U.S.C. § 1407. *See In re Vioxx Prods. Liab. Litig.*, 360 F. Supp. 2d 1352 (J.P.M.L. 2005). Additionally, a number of state and local governments, including the Commonwealth of Pennsylvania (the "Commonwealth"), filed suits against Merck seeking to recover amounts paid for Vioxx prescriptions on behalf of their citizens or civil penalties pursuant to state consumer protection statutes. Those suits were transferred to this Court by the JPML.

Substantial pretrial discovery in the government action cases has taken place in the MDL. The Court has appointed Dawn Barrios as Liaison Counsel for the government action cases and has also appointed various committees to oversee the discovery process. The Court has entered various case management schedules for the government action cases, and in April 2010, the Court also held a bellwether trial in the Louisiana case. Furthermore, Special Master Patrick

---

[1] For a more detailed factual background describing the events that took place before the inception of this multidistrict litigation, see *In re Vioxx Prods. Liab. Litig.*, 401 F. Supp. 2d 565 (E.D. La. 2005) (resolving *Daubert* challenges to a number of expert witnesses).

Juneau has conducted mediation sessions with government action plaintiffs (including the Commonwealth) pursuant to this Court's orders.

Concurrently to this activity in the MDL, the Department of Justice through the United States Attorney's Office for the District of Massachusetts conducted its own investigation of Merck's conduct with respect to Vioxx. The independent DOJ investigation culminated in Merck's pleading guilty to a criminal charge and agreeing to pay a substantial civil penalty. In connection with that process, representatives of the National Association of Medicaid Fraud Units (NAMFCU) and Merck negotiated a pattern settlement agreement that was made available to all 50 states, allowing them to receive a portion of the civil penalty as reimbursement for amounts expended on Vioxx through the Medicaid program. Some of the states that had cases pending in the MDL chose to accept the NAMFCU offers. The PSC sought a common benefit assessment with respect to these states, but this Court denied the request, on the grounds that there was a "disconnect" between the work of the PSC and the NAMFCU offers, which were extended to both litigating and non-litigating states. (Rec. Doc. 63612). Other states, including the Commonwealth, rejected the NAMFCU offers and continued litigating in the MDL.

In June 2012, the Court entered Pre-Trial Order 39B, which lifted a stay that was in effect at that time and also set out a case management schedule for the government actions that remained in this MDL. One of the Court's orders accompanying the lifting of that stay provided that the remaining states should attempt mediation again. Mr. Juneau conducted further mediation with Merck and the Commonwealth in October 2012, although the PSC and the Commonwealth dispute whether this mediation was done pursuant to this Court's order. During that mediation, the Commonwealth and Merck reached a settlement. On January 14, 2013, the

Commonwealth and Merck filed a Joint Stipulation of Dismissal in this Court. (Rec. Doc. 64221).

## II.    PRESENT MOTION

The PSC now moves for a common benefit assessment from the fee paid to the Commonwealth's outside counsel. (Rec. Doc. 64205). The PSC argues that the Court has equitable power to impose common benefit fees in MDL cases before it, and that such fees are appropriate in this case because the Commonwealth has received benefits from the PSC's work. For example, the PSC notes that the Commonwealth has had access to the PSC's document depository, and that it received valuable discovery material that was specific to the Commonwealth as the result of the PSC and Liaison Counsel's efforts.

The Commonwealth makes several arguments in opposition to the PSC's motion. First, the Commonwealth argues that this Court lacks subject matter jurisdiction over the Commonwealth's claims. The Commonwealth argues that both Supreme Court precedent and this Court's prior Order and Reasons in the Kentucky case dictate that there is no jurisdiction over the Commonwealth's remaining claims against Merck. The Commonwealth also raises sovereign immunity concerns, arguing that the PSC's request is actually a claim for damages against the Commonwealth, and therefore it is barred under the Eleventh Amendment. Next, the Commonwealth suggests that the Court should treat the PSC's request as a motion for a preliminary injunction. The Commonwealth argues that under this framework, the PSC cannot show any of the four required factors, particularly a threat of irreparable injury or substantial likelihood of success on the merits. Finally, the Commonwealth argues that it did not rely on or benefit from the PSC's work, and furthermore, that an assessment is inappropriate given that the

Commonwealth's counsel himself contributed to the PSC's efforts.

## III.     LAW AND ANALYSIS

### A.     Common Benefit Fund Doctrine

The Court has previously addressed the common benefit fund doctrine at length. *See generally In Re Vioxx Prods. Liab. Litig.*, 760 F. Supp. 2d 640 (E.D. La. 2010). As summarized in that opinion:

> "[U]nder the 'American Rule,' the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser." *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 561 (1986) (quotation omitted). Likewise, the attorney for the prevailing litigant must generally look to his or her own client for payment of attorneys' fees. Since the nineteenth century, however, the Supreme Court has recognized an equitable exception to this rule, known as the common fund or common benefit doctrine, that permits the creation of a common fund in order to pay reasonable attorneys' fees for legal services beneficial to persons other than a particular client, thus spreading the cost of the litigation to all beneficiaries. *See In re Zyprexa Prods. Liab. Litig.*, 594 F.3d 113, 128 (2d Cir.2010) (Kaplan, J., concurring). This equitable common fund doctrine was originally, and perhaps still is, most commonly applied to awards of attorneys' fees in class actions. *E.g.*, 4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 13:76 (4th ed. 2002) (discussing common fund doctrine in context of class actions); Fed. R. Civ. P. 23(h).
>
> But the common fund doctrine is not limited solely to class actions. *See Sprague v. Ticonic National Bank*, 307 U.S. 161 (1939) (employing common benefit doctrine to award fees and costs to litigant whose success benefitted unrelated parties by establishing their legal rights); Alan Hirsh & Diane Sheeley, Fed. Judicial Ctr., *Awarding Attorneys' Fees and Managing Fee Litigation* 51 (2nd ed. 2005) ("Although many common fund cases are class actions . . . the common fund doctrine is not limited to class actions."); Manual for Complex Litigation (Fourth) § 14.121 (2004). As class actions morph into multidistrict litigation, as is the modern trend, the common benefit concept has migrated into the latter area. The theoretical bases for the application of this concept to MDLs are the same as for class actions, namely equity and her

> blood brother, quantum meruit. However, there is a difference. In class actions the beneficiary of the common benefit is the claimant; in MDLs the beneficiary is the primary attorney.
>
> MDL courts have consistently cited the common fund doctrine as a basis for assessing common benefit fees in favor of attorneys who render legal services beneficial to all MDL plaintiffs. *E.g.*, *In re Genetically Modified Rice Litig.*, MDL No. 06-1811, 2010 WL 716190, at *4 (E.D. Mo. Feb. 24, 2010) (relying on common fund doctrine as an alternate basis to inherent managerial authority and concluding that "[b]oth sources of authority provide the same result"); *In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, MDL No. 05-1708, 2008 WL 682174, at *4 (D.Minn. Mar. 7, 2008); *accord In re Zyprexa*, 594 F.3d at 128-30 (Kaplan, J., concurring).

*In re Vioxx Prods. Liab. Litig.*, 760 F. Supp. 2d at 647-48 (footnotes omitted). It is because of this distinction between class actions and MDLs—the fact that the primary beneficiary in MDLs is the attorney, rather than the claimant—that "the common benefit fee is extracted from the fee of the primary attorney and not the claimant" in MDLs. Eldon E. Fallon, *Common Benefit Fees in Multidistrict Litigation*, 74 La. L. Rev. (forthcoming 2013) (manuscript at 8).

Moreover, a court's inherent managerial authority provides another justification for the court's power to assess common benefit attorneys' fees in complex MDLs. *In re Vioxx Prods. Liab. Litig.*, 760 F. Supp. 2d at 648. As this Court has previously recognized:

> The Fifth Circuit has long recognized that a court's power to consolidate and manage litigation necessarily implies a corollary authority to appoint lead or liaison counsel and to compensate them for their work. *See In re Air Crash Disaster at Fl. Everglades on Dec. 29, 1972*, 549 F.2d 1006 (1977) ("*Everglades*"). In *Everglades*, the JPML transferred all federal cases arising out of a passenger plane crash near Miami to the Southern District of Florida. *Id.* at 1008. The transferee court appointed a Plaintiffs' Committee to coordinate discovery and pretrial matters, and then to conduct bellwether trials. *Id.* The court compensated the Committee through an assessment on the contingent fees of attorneys who represented MDL plaintiffs but were not on the

> Committee. *Id.* The non-Committee attorneys appealed and the
> Fifth Circuit upheld the district court's authority to make that
> assessment. The Fifth Circuit explained that a district court has
> inherent authority "to bring management power to bear upon
> massive and complex litigation to prevent it from monopolizing
> the services of the court to the exclusion of other litigants." *Id.* at
> 1012. Therefore, an MDL court "may designate one attorney or set
> of attorneys to handle pre-trial activity on aspects of the case
> where the interests of all co-parties coincide." *Id.* at 1014.
> Naturally, this authority would be "illusory if it is dependent upon
> lead counsel's performing the duties desired of them for no
> additional compensation." *Id.* at 1016. Assessment of those fees
> against other retained lawyers who benefitted from the work done
> was permissible and appropriate. *See id.* at 1019-20.

*Id.* at 648-49 (footnotes omitted). Other courts have therefore held that "[a]ssessment of

[common benefit] fees against other retained lawyers who benefitted from the work done was

permissible and appropriate." Fallon, *Common Benefit Fees in Multidistrict Litigation*, at 10; *see*

*also id.* at n.36 (citing cases).

**B.     Analysis**

**1.     Jurisdiction**

In this case, the PSC argues that it is entitled to a common benefit assessment, and that

the Court has authority to make such an assessment from the fee paid to the Commonwealth's

privately retained counsel. The PSC argues that the Court has such authority based on the

common benefit doctrine described above. Furthermore, the PSC argues that the Court has

discretion to make such an assessment "based upon years of watching this litigation unfold" in

the MDL. (Rec. Doc. 64205-1 at 12).

The Commonwealth responds by arguing that this Court lacks authority to make a

common benefit assessment in this case. First, the Commonwealth argues that this Court lacks

subject matter jurisdiction over the case pursuant to both *Merrell Dow Pharmaceuticals, Inc. v.*

*Thompson*, 478 U.S. 804 (1986), and this Court's prior decision in the Kentucky government action case (Rec. Doc. 63613).[2] When Merck removed this case to federal court, it asserted federal jurisdiction on two different grounds: (1) that the Commonwealth was seeking reimbursement for Vioxx expenditures made as a part of Medicaid, a federally funded program; and (2) that the Commonwealth was alleging that Merck had violated federal rules and regulations under the Food Drug and Cosmetics Act ("FDCA").

The Commonwealth argues that the Supreme Court explicitly rejected these grounds in *Merrell Dow*, which held that because the FDCA did not create a private federal cause of action, the inclusion of an FDCA violation as an element of a state cause of action is not sufficient to confer federal question jurisdiction. *Merrell Dow*, 478 U.S. at 817. Similarly, in the Kentucky government action case in this MDL, this Court held that it lacked federal question jurisdiction over Kentucky's claims for violation of the Kentucky Consumer Protection Act ("KCPA"), despite the fact that the complaint "invoke[d] conduct regulated by the federal Food, Drug & Cosmetic Act." (Rec. Doc. 63613 at 22). The Court listed multiple reasons for its holding, including the fact that "even if Kentucky did attempt to prove that Merck failed to comply with FDA disclosure regulations, that federal question would be resolved in the context of whether that conduct constituted a violation of *Kentucky* law," not federal law. *Id.* at 24. Therefore, the Court held that Kentucky's claims did not involve a substantial question of federal law. *Id.*

---

[2] Shortly after the case was removed, the Commonwealth filed a motion to remand (Ex. C to Pl.'s Opp., Rec. Doc. 64216-1 at 31) raising similar arguments, which the transferor court denied without prejudice to its renewal before this Court. Pursuant to Pre-Trial Order 39C, the deadline for government action plaintiffs to file motions to remand has not yet passed, and the Court has not yet set such motions for hearing. Thus, the arguments raised in the Commonwealth's motion have never been ruled on.

(citing *Merrell Dow*, 478 U.S. at 814). The Commonwealth argues that its claims against Merck fall under the same category.

Second, the Commonwealth argues that the PSC's request raises sovereign immunity concerns, because it actually constitutes a claim for damages against the Commonwealth, in violation of the Eleventh Amendment. The Commonwealth essentially argues that the PSC is attempting to interfere with the allocation of state funds, which constitutes "an interference with a 'special sovereign interest'" of the Commonwealth. *Barton v. Summers*, 293 F.3d 944, 951 (6th Cir. 2002). The Commonwealth also argues that the PSC is attempting to interfere with the Commonwealth's authority to dictate who is allowed to represent the Commonwealth, which is "a highly circumscribed prerogative of the Commonwealth alone" under state law. (Rec. Doc. 64216 at 10). The PSC responds to these arguments by emphasizing that it is merely seeking to recover a portion of the fee paid to the Commonwealth's retained counsel, just as it has done with respect to other attorneys in the MDL who have benefitted from the PSC's work. Thus, the PSC argues that it is not interfering with the Commonwealth's funds or ability to retain the counsel of its choosing.

The Court acknowledges that some potentially significant jurisdictional questions remain unresolved in the instant case, although it is not entirely clear that the Commonwealth would prevail on a motion to remand.[3] However, the Court does not need to rule on those issues now,

---

[3] Most importantly, the majority of the Commonwealth's arguments with respect to subject matter jurisdiction relate to only the second jurisdictional basis cited by Merck in the Notice of Removal. For example, in this Court's prior decision in the Kentucky government action case, the Court expressly distinguished cases in which states "sought to recover costs allegedly incurred by the states' Medicaid programs." *Id.* at 24 (quoting *In re Zyprexa Prods. Liab. Litig.*, No. 04-MD-1596, 2008 WL 398378, at *3 (E.D.N.Y. Feb. 12, 2008)). The presence of those claims in the Commonwealth's original complaint could be sufficient to confer subject

because it holds that it has the authority to award common benefit fees in this case as part of its inherent managerial authority over counsel appearing before the Court in association with the Vioxx MDL. Accordingly, the Court holds that it has subject matter jurisdiction over the PSC's motion, and it will not deny the motion on this basis.

Moreover, with respect to sovereign immunity, the Court agrees with the PSC that, functionally, its request is neither a claim for damages against the Commonwealth nor an interference with the Commonwealth's ability to select its legal representatives. Instead, the PSC is seeking to recover from the Commonwealth's private counsel a percentage of the fee that counsel received from his client—just as it has done with respect to the numerous personal injury plaintiffs who pursued claims in this litigation. In other words, the PSC's request involves funds that the Commonwealth has already paid (or will have already paid), rather than seeking to recover funds directly from the Commonwealth itself. As a result, sovereign immunity does not bar the PSC from obtaining a common benefit assessment from the Commonwealth's private counsel.

### 2.    Facts

In order to determine whether a common benefit fee is actually appropriate in this case, the Court must determine whether the Commonwealth actually benefitted from the PSC's work—or, alternatively, whether there was a "disconnect" between the efforts of the PSC and the Commonwealth's settlement with Merck. In making their respective arguments on this point, the

---

matter jurisdiction, regardless of whether the Commonwealth later chose to abandon those claims. *See* Wright & Miller, *Federal Practice & Procedure* § 3722 (noting that a plaintiff is generally not permitted "to precipitate a remand to state court by amending the complaint to eliminate the federal claim that was the basis for removal").

Commonwealth and the PSC disagree significantly on various factual issues.[4] Their briefs contain conflicting accounts, and they submit conflicting affidavits in support of their differing views.  These factual disputes span multiple years of activity within this MDL and involve numerous individuals who were involved in the litigation.

For example, it is undisputed that the Commonwealth and Merck reached a settlement as a result of a mediation conducted by Patrick Juneau. But the Commonwealth contends that it did not attend this mediation as a result of any court order, nor did Mr. Juneau conduct the mediation in his official capacity as Special Master. The PSC disputes both of these assertions. As another example, the PSC argues that it provided (both directly and indirectly) various discovery and other materials to the Commonwealth, whereas the Commonwealth maintains that it "has not sought, has not obtained, nor was it ever in need of any work done by the PSC in other cases." (Rec. Doc. 64216). Another factual issue complicating the resolution of this matter is Special Counsel for the Commonwealth's assertion that he contributed to the PSC's work (specifically, the development of the trial package), and therefore, he should not be required to pay common benefit fees to the PSC. These are only a few of the numerous factual disputes that the parties identified in their briefs and at oral argument.

As a result, the Court believes that further investigation of the facts will be required for proper resolution of this matter. Accordingly, the Court will decline to make any holding with

---

[4] The Commonwealth also argues that the PSC's entire motion should be analyzed as a motion for a preliminary injunction, as the Court held with respect to the PSC's motion for a common benefit assessment from the NAMFCU settlements. (Rec. Doc. 63612 at 5). But the PSC's request in that instance was for "an escrow order, which is essentially a form of preliminary injunction." *Id.* The PSC seeks no such order in this case, so the preliminary injunction framework is not appropriate here.

respect to whether the PSC is actually entitled to a common benefit fee in this case, and will instead refer this matter to Special Master Patrick Juneau or his designee to make a recommendation on the appropriate amount, if any, of a common benefit fee in this case. The Special Master may set a discovery schedule, conduct evidentiary hearings, and hear oral argument as needed. A separate order formally appointing Mr. Juneau or his designee will follow.

## IV.    CONCLUSION

For the foregoing reasons, IT IS ORDERED that the PSC's motion for a common benefit assessment (Rec. Doc. 64205) is GRANTED IN PART. In particular, the Court holds that it has authority to make a common benefit assessment from the fee paid to private counsel for the Commonwealth, and that the PSC may be entitled to such an assessment. However, the Court declines to hold that the PSC is entitled to any specific amount or percentage at this time.

IT IS FURTHER ORDERED that the Court will refer the factual issues raised by the PSC's motion to Special Master Patrick Juneau or his designee. A separate order formally appointing Mr. Juneau or his designee will follow.

New Orleans, Louisiana, this 29th day of April, 2013.

_____
UNITED STATES DISTRICT JUDGE