**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In re: VIOXX | * | |
|     Products Liability Litigation | * | |
| | * | |
| This Document Relates to: | * | MDL No. 1657 |
| | * | |
| STATE OF ALASKA, | * | SECTION L |
| | * | |
|              Plaintiff, | * | JUDGE ELDON E. FALLON |
| | * | |
|    versus | * | MAGISTRATE JUDGE |
| | * | KNOWLES |
| MERCK & CO., INC., | * | |
| | * | |
|              Defendant. | * | |
| | * | |
| Case No. 2:06-cv-03132 | * | |
| | * | |
| * * * * * * * * * * * * * * * * * * * * * * * * * | * | |
| | * | |

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF
## MOTION FOR JUDGMENT ON THE PLEADINGS

## <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

INTRODUCTION ...................................................................................................................1

BACKGROUND ...................................................................................................................2

ARGUMENT ........................................................................................................................4

I.      PLAINTIFF'S CLAIMS FOR PENALTIES FAIL AS A MATTER OF LAW
UNDER THE INDIVIDUALIZED-PROOF RULE. .........................................................5

II.     PLAINTIFF HAS FAILED TO STATE A CLAIM FOR INJUNCTIVE RELIEF
BECAUSE THERE IS NO CONDUCT TO ENJOIN. ......................................................8

III.    THE UTPA DOES NOT APPLY TO PLAINTIFF'S CLAIMS. ....................................13

CONCLUSION....................................................................................................................16

1125308v1

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

### <u>FEDERAL CASES</u>

*Aleut Enterprise, LLC v. Adak Seafood, LLC*,
No. 3:10-cv-0017-RRB, 2010 U.S. Dist. LEXIS 92132
(D. Alaska Sept. 2, 2010) .................................................................................................11

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...........................................................................................................5

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ...........................................................................................................5

*Benefit Resources, Inc. v. Apprize Technology Solutions, Inc.*,
No. 07-4199 (JNE/FLN), 2008 U.S. Dist. LEXIS 39701
(D. Minn. May 15, 2008) ..................................................................................................12

*Greilsheimer v. Ferber Chan & Essner*,
No. 98 Civ. 2553 (LMM), 1998 U.S. Dist. LEXIS 13445
(S.D.N.Y. Aug. 27, 1998) .................................................................................................13

*IMS Health, Inc. v. Ayotte*,
490 F. Supp. 2d 163 (D.N.H. 2007) ............................................................................ 14-15

*Moore v. Dallas Independent School District*,
370 F. App'x 455 (5th Cir. 2010) .......................................................................................5

*Mosley v. Hairston*,
920 F.2d 409 (6th Cir. 1990) ............................................................................................13

*Reynolds v. Mattson*,
No. 2:07-CV-59, 2008 U.S. Dist. LEXIS 52326 (W.D. Mich. July 9, 2008)...................12

*In re Saturn L-Series Timing Chain Products Liability Litigation*,
MDL No. 1920, Nos. 8:07cv298; 8:08cv79, 2008 U.S. Dist. LEXIS 109978
(D. Neb. Nov. 7, 2008) .....................................................................................................12

*Sitton v. Native Village of Northway*,
No. A03-0134-CV (HRH), 2005 U.S. Dist. LEXIS 46304
(D. Alaska Oct. 14, 2005) ...........................................................................................11, 15

*United States v. Harkonen*,
No. C 08-00164 MHP, 2009 WL 1578712 (N.D. Cal. June 4, 2009) ...............................15

*In re Zyprexa Products Liability Litigation*,
    671 F. Supp. 2d 397 (E.D.N.Y. 2009) ........................................................................7, 8, 9

## STATE CASES

*Centocor, Inc. v. Hamilton*,
    372 S.W.3d 140 (Tex. 2012) ..............................................................................................14

*Department of Transportation & Public Facilities v. Sanders*,
    944 P.2d 453 (Alaska 1997) .................................................................................................6

*Grimm v. Wagoner*,
    77 P.3d 423 (Alaska 2003) .................................................................................................11

*McCoy v. State*,
    80 P.3d 757 (Alaska Ct. App. 2002) ..................................................................................20

*State ex rel. Babbitt v. Goodyear Tire & Rubber Co.*,
    626 P.2d 1115 (Ariz. Ct. App. 1981) ................................................................................14

*State ex rel. Brady v. Pettinaro Enterprises*,
    870 A.2d 513 (Del. Ch. 2005) ...........................................................................10, 13, 14, 15

*State v. Eli Lilly & Co.*,
    No. 3AN-06-5630 CI, 2007 WL 5879398 (Alaska Super. Ct. July 31, 2007) .................16

*State v. O'Neill Investigations, Inc.*,
    609 P.2d 520 (Alaska 1980) ...........................................................................................8, 14

*Virgin v. Virgin*,
    990 P.2d 1040 (Alaska 1999) ..............................................................................................6

*Ware v. Ware*,
    161 P.3d 1188 (Alaska 2007) ............................................................................................11

*Wongittilin v. State*,
    36 P.3d 678 (Alaska 2001) ...................................................................................................6

## FEDERAL STATUTES, REGULATIONS AND RULE

21 C.F.R. § 201.100(d)(1) .............................................................................................................15

21 C.F.R. § 202.1(e) ......................................................................................................................15

21 C.F.R. § 202.1(k)(l)(1)-(2) ......................................................................................................13

21 C.F.R. § 202.100(d)(1) .............................................................................................................14

21 C.F.R. § 314.81(b)(3)(i) ...........................................................................................................15

1125308v1

21 U.S.C. § 201(m) ..............................................................................................14

21 U.S.C. § 352(a) ...............................................................................................14

Fed. R. Civ. P. 12(c) ..............................................................................................4

## STATE STATUTES

Alaska Stat. § 01.10.090 ....................................................................................1, 13

Alaska Stat. § 45.50.481(a)(1) ..............................................................2, 5, 13, 14

Alaska Stat. § 45.50.501 .......................................................................................3, 8

Alaska Stat. § 45.50.551 .......................................................................................5, 8

## OTHER AUTHORITY

*The Food and Drug Administration's Evolving Regulation of Press Releases:  Limits and
    Challenges*,
    61 Food & Drug L.J. 623 (2006) ...................................................................15

1125308v1

## <u>INTRODUCTION</u>

Plaintiff, the State of Alaska, seeks an order "permanently enjoining Merck" from violating the Alaska Unfair Trade Practices and Consumer Protection Act ("UTPA").  According to Plaintiff, Merck violated the UTPA in connection with the marketing and sale of Vioxx, a prescription drug that was sold in the United States between 1999 and 2004.  Plaintiff seeks civil penalties of $25,000 "for each separate violation" of the UTPA, as well as costs and attorneys' fees.[1]  In addition, Plaintiff recently added an allegation that an injunction is necessary to prevent Merck from engaging in "further acts in violation" of the UTPA.

Plaintiff's UTPA claim fails as a matter of law for at least three reasons.  ***First***, Plaintiff's request for civil penalties is barred by the individualized-proof rule.  The imposition of penalties is subject to the discretion of the Court, and as Judge Weinstein explained in another case involving similar allegations under a similar statute, the propriety and amount of a penalty depend on facts specific to each patient, doctor and alleged violation.  Because it would be impossible to undertake such an inquiry in connection with every single Vioxx prescription in the State of Alaska, the State's claims fail as a matter of law.

***Second***, Plaintiff's claim for injunctive relief fails because there is no conduct to enjoin.  Fundamental to a claim for injunctive relief is at least some threat of future misconduct.  But no evidence of such a threat exists here – a fact underscored by the State's failure even to request injunctive relief for the first seven years the lawsuit was pending.  Although the State added such a request in 2012, Vioxx had by that time been off the market for eight years, and Merck had

---

[1]      Plaintiff's request for a civil penalty award of $25,000 per violation would not be valid even if its claims were otherwise viable because Vioxx was withdrawn in ***2004*** and prior to its amendment in ***2006***, the UTPA only allowed a maximum civil penalty award of $5,000 per violation.  *See* H.B. 446, 24th Leg., 2nd Sess. ch. 98, §§ 1-2 (Alaska 2006); *see also* Alaska Stat. § 45.50.551 (effective through 2006).  Under Alaska law, "[n]o statute is retrospective unless expressly declared therein."  Alaska Stat. § 01.10.090.  Thus, Alaska's Attorney General ("the AG") asserts a right to penalties under the wrong version of the statute.

long ago settled with dozens of other states and agreed under those settlements to refrain from the sort of conduct alleged by Plaintiff here.  Not surprisingly, even in its amended complaint, Plaintiff does not attempt to allege that Merck will ever violate the UTPA – either in connection with Vioxx or any other product.  Thus, Plaintiff's claim for injunctive relief must also be dismissed.  And because the UTPA makes clear that penalties may only be sought pursuant to a proper claim for injunctive relief, the failure of Plaintiff's claims for injunctive relief further dooms its claim for penalties.

*Third*, Plaintiff's UTPA claim also fails under the statute's regulated-activity exemption, which barred claims involving conduct regulated by the federal government prior to its amendment in 2012.  *See* Alaska Stat. § 45.50.481(a)(1) (2011).  Because the State's allegations of Merck's misconduct are covered by FDA regulations, its claim is barred by this exemption.

For all of these reasons, the Court should grant Merck judgment on the pleadings with respect to Plaintiff's sole cause of action under the UTPA.

## BACKGROUND

Vioxx is a prescription nonsteroidal anti-inflammatory and pain-relief drug ("NSAID") manufactured by Merck for use in the treatment of arthritis and other acute pain.  (*See* First Am. Compl. ("FAC") ¶¶ 12-13.)  The sale and distribution of Vioxx was approved by the United States Food & Drug Administration ("FDA") on May 20, 1999, and it was available in the U.S. from May 1999 until it was voluntarily withdrawn from the market in September 2004.  (*See id.* ¶ 97.)

The AG commenced suit on behalf of the State on December 28, 2005, asserting a single claim for alleged violations of the UTPA, and seeking restitutionary relief, compensatory damages in excess of $100,000, punitive and treble damages, costs and attorneys' fees, and civil penalties in the amount of $5,000 per violation.  (*See* Compl. Prayer for Relief.)  Plaintiff

2

specifically sought "damages for the value of all payments that the State of Alaska made for Vioxx prescriptions." (*Id.*)  According to Plaintiff, Merck violated the UTPA by "knowingly and intentionally ma[king] claims under the Alaska Medicaid Program for a product that is substantially inadequate or inappropriate when compared to generally recognized standards within the health care industry." (*See id.* ¶ 19.)  Although a claim for injunctive relief is a prerequisite for an AG-initiated suit under the UTPA, *see* Alaska Stat. § 45.50.501, the AG's Complaint did not include a request or claim for injunctive relief.  On January 17, 2006, Merck removed the case to federal court, citing the existence of federal question jurisdiction because Plaintiff's claims rested on the interpretation of federal Medicaid law and federal regulations promulgated under the Food, Drug and Cosmetic Act ("FDCA").  The case was transferred to this Court on June 23, 2006.  (Transfer Order, Alaska ECF No. 1.)

Merck settled consumer protection suits brought by 30 states in July 2008.  As part of the multistate settlement agreement, Merck did not "admit any wrongdoing," but voluntarily agreed not to "make any written or oral claim that is false, misleading or deceptive regarding any FDA-approved Merck Product," and also agreed to various other forms of injunctive relief related to, *inter alia*, clinical testing and continuing medical education.  (*See, e.g.*, Stipulated Gen. J. ¶¶ 2A, 4, *State of Or. v. Merck & Co.*, No. 08C16426 (Or. Cir. Ct. Marion County May 20, 2008) (attached as Ex. 1).)  In addition, by joining these agreements, Merck submitted itself to the enforcement powers of those states that are parties to the agreement.  (*See id.* ¶ 26 ("The State may assert any claim that Merck has violated this judgment in a separate civil action to enforce this judgment, or to seek any other relief afforded by law[.]").)  Three years later, Merck engaged in a settlement process with representatives of the National Association of Medicaid Fraud Units ("NAMFCU") to resolve outstanding AG-sponsored litigation involving Vioxx.  The NAMFCU

3

settlement, which focused mostly on Medicaid-related claims, ultimately resulted in a payment by Merck of $915 million to settle Vioxx-related claims with the federal government and 42 states in November 2011.

Alaska declined to participate in either of these settlements.  Instead, it retained outside counsel and – nearly eight years after Vioxx was withdrawn from the market – filed a First Amended Complaint that added a request for injunctive relief for the first time.  (FAC, Prayer for Relief.)  The gravamen of Plaintiff's claims in the Amended Complaint is that "Merck's advertising and promotional activities [regarding] Vioxx had the capacity and tendency to deceive regarding Vioxx's cardiovascular safety, gastrointestinal benefit, and efficacy."  (*Id.* ¶ 95.)  The amended pleading has abandoned the State's claims for restitution and compensatory, punitive and treble damages.  (*See generally id.*, Prayer for Relief.)  Plaintiff continues to seek costs and attorneys' fees, and also asks for "civil penalties . . . of $25,000 for each separate violation of the" UTPA.  (*Id.*)

## ARGUMENT

Rule 12(c) provides that "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  Where, as here, a Rule 12(c) motion is premised on a plaintiff's failure to state a claim for which relief can be granted, a court should analyze the motion under the same standard as a Rule 12(b)(6) motion to dismiss.  *Moore v. Dallas Indep. Sch. Dist.*, 370 F. App'x 455, 457 (5th Cir. 2010).  In order to survive a motion for judgment on the pleadings, "a plaintiff must plead enough facts to state a claim to relief that is plausible on its face."  *Id.* (internal quotation marks and citation omitted).  The "plausibility standard" requires "more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Rather, a complaint must contain

4

"[f]actual allegations . . . [that] raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Here, Merck is entitled to judgment on the pleadings for three reasons. ***First***, Plaintiff's claims for civil penalties fail under the individualized-proof rule because the amount of any penalty must be decided on the basis of each implicated transaction, which is not feasible in a single, aggregate proceeding. ***Second***, Plaintiff's claim for injunctive relief fails because Vioxx has been off the market for more than eight years, leaving no alleged threat of future misconduct. Moreover, because a viable claim for injunctive relief is a necessary predicate for obtaining civil penalties under the UTPA, the State's claims for civil penalties and attorneys' fees fail for this reason as well. ***Finally***, Plaintiff's claims also fail because the operative version of the UTPA expressly exempts from its coverage any acts or transactions – like those here – that are "regulated under laws administered by the state . . . or officer acting under statutory authority of the state or of the United States . . . unless the law regulating the act or transaction does not prohibit the practices declared unlawful" under the UTPA. Alaska Stat. § 45.50.481(a)(1) (2012).

## I.   PLAINTIFF'S CLAIMS FOR PENALTIES FAIL AS A MATTER OF LAW UNDER THE INDIVIDUALIZED-PROOF RULE.

First, Plaintiff's request for civil penalties fails under the individualized-proof rule because any award of penalties under the UTPA is discretionary, requiring individualized determinations.

The UTPA's statutory language provides that the Attorney General "***may*** recover . . . a civil penalty of not more than $5,000 per violation." Alaska Stat. § 45.50.551 (effective through 2006) (emphasis added). As a matter of statutory interpretation, Alaska courts have consistently construed the use of the word "may" as a permissive term, whereas the word "shall" is

1125308v1

considered mandatory.  *Wongittilin v. State*, 36 P.3d 678, 681-682 (Alaska 2001) ("[t]he word 'may' in a statute affords . . . permissive authority, not an obligatory duty") (internal quotation marks and citation omitted); *Dep't of Transp. & Pub. Facilities v. Sanders*, 944 P.2d 453, 457 (Alaska 1997) ("We agree with the State that the use of 'may' in [the statute] indicates that Airport officials had discretion to decide whether to enforce" the regulations at issue); *Virgin v. Virgin*, 990 P.2d 1040, 1051 (Alaska 1999) (a statute's use of the word "shall" imposed "mandatory duties" on the trial court).  Because an award of penalties depends on an exercise of judicial discretion, any such award would entail individualized inquiries regarding Merck's conduct toward specific Vioxx users.  And in a case like this one – involving allegations of "separate" and repeated violations in connection with the marketing of a prescription drug (FAC ¶ 97, Prayer for Relief) – it simply is not feasible to make such individualized inquiries with respect to all conduct within the state over a several-year period, as other courts have held.

The case of *In re Zyprexa Products Liability Litigation*, 671 F. Supp. 2d 397, 453 (E.D.N.Y. 2009), is instructive.  There, Mississippi brought suit against Eli Lilly, alleging that the company engaged in illegal off-label promotion of Zyprexa and failed to warn about the drug's side effects.  *Id.* at 401.  The state asserted claims under, among other things, the Mississippi Consumer Protection Act ("MCPA").  *Id.*  The state sought an award of civil penalties under the MCPA, which similarly provides for discretionary penalties for statutory violations.  *See id.* at 458 (explaining that the MCPA authorizes "a civil penalty in a sum not to exceed Ten Thousand Dollars ($10,000.00) for each . . . violation") (internal quotation marks and citation omitted).  The state requested that the court impose a penalty for "each of almost a million estimated Zyprexa prescriptions in Mississippi."  *Id.*

6

Judge Weinstein found that an award of penalties was barred under what he called the "individualized-proof rule" – i.e., the requirement that each penalty be assessed based on the particular facts of each proven violation.  As the court explained, the trial court "is invested with discretion to determine the appropriate amount of the penalty with respect to each violation, whether the maximum of $10,000 or some smaller amount."  *Id.*  Although the Mississippi statute did not articulate the specific factors a court should apply when evaluating a request for civil penalties, Judge Weinstein held that the court would need to assess:

> a number of issues as they bear on each Zyprexa prescription, including but not limited to:  whether the prescription was for an on-label or off-label use; whether the prescription was medically necessary; whether the patient received any benefit from Zyprexa; whether and the extent to which the patient experienced any of Zyprexa's potential metabolic side effects; the information about Zyprexa available to the medical community at the time the prescription was written; and the times of the various alleged instances of misconduct by Lilly, and whether and to what extent each instance may have impacted the prescription in question.

*Id.* at 458-59.  "Due to the nature of the alleged misconduct and injuries in the instant case, and in light of the discretion invested in the court to set the amount of the CPA penalty, proper assessment of the claimed penalties would require individualized consideration of the circumstances of each prescription alleged to be in violation of the statute."  *Id.* at 459.  Thus, determining the propriety of civil penalties on a "per-violation basis" would be "impractical and beyond the resources of any court."  *Id.*  Based on this reasoning, the court granted summary judgment in favor of the defendant with respect to the claim for statutory penalties.  *Id.*  (*See also* Minute Order at 2, ECF No. 64,279 (Feb. 28, 2013) ("[T]he Court notes that the penalties that Mississippi seeks under the [MCPA] may be discretionary, which would mean that information relating to causation could help to guide the Court's exercise of its discretion in issuing penalties.") (citing *Zyprexa*, 671 F. Supp. 2d at 458-59).)

7

The same disposition should follow here.  As in *Zyprexa*, determining whether penalties are justified under the UTPA – and the amount of any penalties awarded – would require the Court to assess a broad range of individualized, factual considerations:  e.g., what effect Merck's representations about Vioxx had on each Vioxx user and his or her doctor's prescribing decision; whether each Vioxx prescription was medically necessary; and how much medical benefit each individual received from the medication.  As explained in *Zyprexa*, such considerations would overwhelm the resources of the Court and transform this action into a multitude of mini-trials on the issue of penalties.  Put simply, requiring the court to undertake such an endeavor would be "impractical and beyond [its] resources."  *Zyprexa*, 671 F. Supp. 2d at 459.  Thus, Plaintiff's claims for civil penalties are not legally sustainable.

## II.   PLAINTIFF HAS FAILED TO STATE A CLAIM FOR INJUNCTIVE RELIEF BECAUSE THERE IS NO CONDUCT TO ENJOIN.

Plaintiff's UTPA claim also fails as a general matter because the State has not adequately alleged a claim for injunctive relief – an essential predicate for all the other requested relief.

The UTPA states that "[w]hen the attorney general has reason to believe that a person has used, is using, or is about to use an act or practice declared unlawful in AS 45.50.471, and that proceedings would be in the public interest, the attorney general may bring an action in the name of the state against the person to restrain by injunction the use of the act or practice."  Alaska Stat. § 45.50.501.  A valid claim for injunctive relief under the UTPA is a fundamental predicate for other relief.  Although the UTPA elsewhere authorizes a court to award penalties for "an act or practice declared unlawful by AS 45.50.471," it may do so only "upon [the AG's] petition to the court" in an "action brought under AS 45.50.501" – i.e., *one for injunctive relief*.  *See* Alaska Stat. § 45.50.551; *State v. O'Neill Investigations, Inc.*, 609 P.2d 520, 524 (Alaska 1980) ("***In a suit for injunctive relief brought by the Attorney General***, a civil penalty . . . may be

8

recovered for each unlawful act or practice.") (emphasis added).  In other words, as one court explained in construing a similar statute, if the State's claim for injunctive relief fails, so too does its claim for any other relief.  *See, e.g.*, *State ex rel. Brady v. Pettinaro Enters.*, 870 A.2d 513, 537 (Del. Ch. 2005) (construing analogous consumer fraud statute under Delaware law; "the lack of a tenable claim for injunctive relief under the Deceptive Trade Practices Act prevents the State from proceeding under that Act for other relief here").

Plaintiff's claim for injunctive relief fails here because there is nothing to enjoin.  As the complaint itself makes clear, the AG's allegations relate to Merck's "advertisements and promotional activities [which] misrepresented Vioxx's cardiovascular safety, gastrointestinal benefit, and efficacy and failed to include information then known to Merck."  (FAC ¶ 93.)  But Vioxx has been off the market since 2004 – more than eight years ago, and nearly eight years before the AG first sought injunctive relief – and Plaintiff does not allege that Vioxx will ever be returned to the market, or that Merck's alleged conduct could otherwise recur.

This failure is fatal to Plaintiff's claim for injunctive relief.  Courts routinely deny requests for injunctive relief where – as here – it is clear that the complained-of conduct no longer exists.  *See In re Saturn L-Series Timing Chain Prods. Liab. Litig.*, MDL No. 1920, Nos. 8:07cv298; 8:08cv79, 2008 U.S. Dist. LEXIS 109978, at *63 (D. Neb. Nov. 7, 2008) (denying request for injunctive relief under California's Unfair Competition Law because "[d]efendants no longer engage in the behavior that [plaintiff] would have this Court enjoin . . . [t]his Court cannot award injunctive relief for conduct that no longer exists") (internal quotation marks and citation omitted).  As courts have recognized, a "suit for injunctive relief is moot when the offending conduct ceases and the court finds that there is no reasonable expectation that it will resume." *Greilsheimer v. Ferber Chan & Essner*, No. 98 Civ. 2553 (LMM), 1998 U.S. Dist. LEXIS

13445, at *7-8 (S.D.N.Y. Aug. 27, 1998) (declining to issue injunctive relief under Lanham Act where "prior to the initiation of this action, defendants agreed to cease using plaintiff's name when answering the phones and on all firm stationary and documents . . . [and] [i]t is illogical to assume that defendants would go through the significant trouble and expense" of misusing plaintiff's name at some point in the future).

More specifically, courts have rejected injunctive relief where – as here – a complaint was filed after an allegedly defective product had been recalled, undermining any claim that the alleged misconduct could recur in the future.  *See, e.g.*, *Brandner v. Abbott Laboratories, Inc.*, 10–3242, 2012 WL 27696, at *3 (E.D. La. Jan. 5, 2012) (dismissing claim for injunctive relief that was filed shortly after the allegedly defective infant formula product had been recalled because, *inter alia*, "[c]omplaints of past harm do not sufficiently allege the likelihood of the immediate threat of future harm"); *Vavak v. Abbott Labs., Inc.*, No. 10-1995 JVS (RZx), 2011 U.S. Dist. LEXIS 111408, at *12 (C.D. Cal. June 17, 2011) (claim for injunctive relief failed as a matter of law because the allegedly defective infant-formula product had been recalled before the plaintiff filed suit; "the plaintiff could not allege 'any real or immediate threat that [she] will be wronged again'"); *see also In re Saturn L-Series Timing Chain Prods. Liab. Litig.*, 2008 U.S. Dist. LEXIS 109978, at *63 (rejecting claim for injunctive relief under California's Unfair Competition Law that was filed after defendant "ceased making and marketing the [allegedly defective] vehicles," reasoning that the "[c]ourt cannot award injunctive relief for conduct that no longer exists").

For example, in *Brandner*, 2012 WL 27696, at *1, a parent brought suit against Abbott after learning that the Similac infant-formula product she purchased for her child contained beetles.  Plaintiff filed her Complaint seeking injunctive relief the day after Abbott announced a

10

nationwide recall of the product.  Compl., ECF No. 1, *Brandner v. Abbott Labs., Inc.*, No. 2:10-cv-032342 (E.D. La. July 13, 2011).  In moving for judgment on the pleadings, the defendant argued that "[t]he Second Amended Complaint does not contain a single factual allegation that . . . demonstrates an objective likelihood that [plaintiff] will be personally harmed by Abbott" in the future.  *See* Mot. for J. on the Pleadings at 5, ECF No. 91, *Brandner v. Abbott Labs., Inc.*, No. 2:10-cv-032342 (E.D. La. July 13, 2011).  It further emphasized that plaintiff "does not claim that Abbott continues to manufacture Similac that contains beetles" or that she intends "to purchase Similac for her child at any point" in the future.  *Id.*  The court agreed, recognizing that "the only harm [plaintiff] alleges in the complaint is the past harm she suffered when she learned that her child had ingested the allegedly contaminated Similac." *Brandner*, 2012 WL 27696, at *3.  According to the court, "[c]omplaints of past harm do not sufficiently allege the likelihood of the immediate threat of future harm," which warranted dismissal of the plaintiff's claim for injunctive relief.  *Id.*

This case calls for the same result.  As in *Brandner*, Plaintiff brought the present suit against Merck *after* Vioxx had been voluntarily withdrawn from the market.  Moreover, Plaintiff's Complaint does not allege that Merck has plans to return the drug to the market – or that the FDA would permit it to do so.  Further, as previously explained, Merck has since paid substantial sums of money in reaching a number of resolutions that already purport to prohibit it from engaging in the sort of conduct that is alleged by the AG in this case.[2]  In short, Plaintiff's request for injunctive relief consists entirely of "complaints of past harm[,]" which "do not sufficiently allege the likelihood of the immediate threat of future harm" necessary for injunctive

---

[2]   Although Alaska was not a signatory to the multistate agreement, it nonetheless benefits from the injunctive relief obtained by the states through that settlement agreement.

1125308v1

relief.  *Brandner*, 2012 WL 27696, at *3.  Accordingly, Plaintiff's claim for injunctive relief is not legally viable.

Moreover, the law is also well-settled that a claim for penalties that is predicated on the issuance of an injunction is not cognizable where – as here – the claim for injunctive relief fails as a matter of law.  In *State ex rel. Brady v. Pettinaro Enterprises*, for example, Delaware's attorney general sought an injunction under the Delaware Deceptive Trade Practices Act and other consumer protection laws stemming from the defendant's alleged fraudulent conduct in promising condominium residents that they would have access to a clubhouse adjacent to their condominium building.  870 A.2d at 517-18.  The attorney general brought suit four years after the defendant's last alleged deceptive act regarding the clubhouse.  *Id.* at 536.  The attorney general sought "[i]njunctive relief prohibiting [defendant] from violating the Consumer Fraud Act, the Deceptive Trade Practices Act, and the Health Spa Regulation in the future."  *Id.* at 523.

The court dismissed the claim for injunctive relief, holding that "[t]he mere fact that the Attorney General has asked for an injunction does not suffice to state a claim within this court's equitable jurisdiction."  *Id.* at 536.  As the court explained, "a claim for injunctive relief must be supported by the allegation of facts that 'create a reasonable apprehension of a future wrong.'" *Id.* (citation omitted).  Because the complained-of conduct had long ceased by the time the attorney general commenced his lawsuit, the claim for injunctive relief was based only on an "unsubstantiated fear that a legal duty may be breached in an uncertain future."  *Id.*  Thus, the attorney general's claim for injunctive relief was nothing more than a request for compliance with "duly enacted statutes that [the defendant] is already duty-bound to honor."  *Id.*  To order an injunction under these circumstances, the court explained, would "trivialize[] equity's role and implicitly suggest that the most powerful expression of a societal prohibition – an express statute

12

forbidding conduct – is somehow insufficient without an 'us, too' from the judicial branch." *Id.* at 536-37. Notably, the Delaware court also concluded that lack of a viable injunctive relief claim meant no other relief was available, either, and the court dismissed the DTPA claim in its entirety. *Id.* at 537 (explaining that "[r]ecovery under that Act is contingent upon a valid basis for injunctive relief"); *see also, e.g.*, *State ex rel. Babbitt v. Goodyear Tire & Rubber Co.*, 626 P.2d 1115, 1119 (Ariz. Ct. App. 1981) (reversing trial court's grant of injunction against tire company regarding deceptive advertising under the Arizona Consumer Fraud Act because the trial court had not put the state to its burden of "show[ing] a likelihood that the defendant will in the future engage in the conduct sought to be enjoined").

Here, as in *Pettinaro*, Plaintiff has not alleged anything that would give rise to a "reasonable apprehension of a future wrong." *Pettinaro*, 870 A.2d at 536 (internal quotation marks and citation omitted). And because a claim for injunctive relief is a necessary predicate for the award of civil penalties to the AG under the UTPA, the State's improper request for an injunction renders its corresponding claim for civil penalties legally deficient too.

For all of these reasons, Plaintiff's request for injunctive relief fails as a matter of law, and its sole claim under the UTPA must be dismissed.

## III.    THE UTPA DOES NOT APPLY TO PLAINTIFF'S CLAIMS.

Plaintiff's UTPA claim also fails as a matter of law under the statute's regulated activity exemption, the operative version of which bars claims involving conduct regulated by the federal government.

Prior to 2012, the UTPA exempted any act or transaction "regulated under laws administered by the state . . . or officer acting under statutory authority of the state or of the United States, unless the law regulating the act or transaction does not prohibit the practices declared unlawful" under the UTPA. Alaska Stat. § 45.50.481(a)(1) (effective until August 15,

13

2012).[3]  Courts construing this provision have explained that the exemption applies where the conduct at issue "is both regulated elsewhere *and* the unfair acts and practices are therein prohibited." *O'Neill Investigations*, 609 P.2d at 528 (emphasis added).

Both requirements are satisfied in this case.  *First*, there is no question that the FDCA and the FDA regulations promulgated thereunder expressly apply to the conduct alleged in this case – i.e., the sales and marketing of a prescription drug.  *See, e.g.*, *Centocor, Inc. v. Hamilton*, 372 S.W.3d 140, 162 (Tex. 2012) ("[W]e note that Congress has enacted a comprehensive regulatory scheme, implemented by the FDA, which is meant to control the design, implementation, and marketing of prescription drugs, including both criminal and civil penalties for manufacturers that violate these regulations."); 21 C.F.R. § 202.1(1)(2) (noting that the "label" over which the FDA has authority includes "detailing pieces . . . [and] pieces of printed, audio, or visual matter descriptive of a drug and references published . . . for use by medical practitioners, pharmacists, or nurses").  This fact is sufficient by itself to satisfy the first requirement under the statutory exemption.  *See O'Neill Investigations*, 609 P.2d at 528 (quoting Alaska Stat. § 45.50.481(a)(1)) (observing that debt collection agencies were regulated under "a separate and distinct statutory scheme," which satisfied the first requirement).

*Second*, the conduct Plaintiff alleges would not be permitted under FDA regulations, *if proven*.  For example, the broadest swath of Plaintiff's allegations concerns alleged statements by sales representatives to physicians.  (*See generally* FAC ¶¶ 51-69.)  As courts have noted in other cases, the Agency has concluded that false and misleading representations by sales representatives violate FDA regulations.  *See, e.g.*, *IMS Health, Inc. v. Ayotte*, 490 F. Supp. 2d

---

[3]     Although the exemption provision at issue in this case was amended in 2012, the amended version of the statute does not have retroactive application because it is deemed to be effective as of August 15, 2012, Notes to Alaska Stat. § 45.50.481(a)(1) (2012), and, as noted above, Alaska law limits retroactivity to statutes that "expressly declare[]" themselves retrospective, Alaska Stat. § 01.10.090.

163, 168 (D.N.H. 2007) (noting that the FDA sent a warning letter regarding "false and misleading oral statements by sales representatives").

Plaintiff's other allegations similarly target alleged conduct prohibited by the FDA.  For example:

- Plaintiff alleges that Merck disseminated false and misleading press releases.  (FAC ¶¶ 83-85.)  It is clear that a press release that is false or misleading violates FDA regulations.  *See, e.g.*, *United States v. Harkonen*, No. C 08-00164 MHP, 2009 WL 1578712, at *6, *8 (N.D. Cal. June 4, 2009) (prosecution alleging that false representations in a press release violated the FDCA); William W. Vodra, et al., *The Food and Drug Administration's Evolving Regulation of Press Releases:  Limits and Challenges*, 61 Food & Drug L.J. 623, 629 (2006) (explaining that the "FDA considers the review of press releases and press kits to be part of its routine monitoring and surveillance program").

- Plaintiff alleges that Merck's "direct-to-consumer" advertising campaign was false and misleading.  (FAC ¶¶ 87-93.)  There is no question that false or misleading statements in advertisements are barred by the FDCA and FDA regulations.  *See* 21 U.S.C. § 352(n) (drug is misbranded if any advertisement for the drug fails to include "a true statement" regarding "side effects, contraindications, and effectiveness"); *see also* 21 C.F.R. § 202.1(e)(1) (prescription drug advertisements must contain a "true statement of information in brief summary relating to side effects . . . and effectiveness").

- Plaintiff alleges that Merck omitted safety information from the published results of the VIGOR study.  (FAC ¶¶ 71-76.)  The FDA's regulations bar false or misleading statements in "literature" and "printed . . . matter descriptive of a drug," which would unambiguously encompass published studies about a drug.  21 C.F.R. § 202.1(l)(2) (the term "label" includes, *inter alia*, "literature, and reprints and similar pieces of printed, audio, or visual matter descriptive of a drug"); 21 U.S.C.§352(a) (explaining that a drug is "misbranded" if the labeling is false or misleading in any particular way).

In short, Plaintiff seeks to apply the UTPA to alleged conduct that is already covered and proscribed by FDA regulations.  Thus, the second requirement for invocation of the regulated activity exemption is satisfied too, rendering the UTPA inapplicable.[4]

---

[4]      In *Alaska v. Janssen Ortho, LLC*, the Supreme Court of Alaska accepted a certified question from the United States District Court for the District of Alaska regarding the scope of the regulated activity exemption in an action involving alleged misrepresentations made in connection with the sale of the prescription drug Risperdal.

*(cont'd)*

## CONCLUSION

For the foregoing reasons, Merck respectfully requests that the Court grant it judgment on the pleadings.

Dated:  May 3, 2013

Respectfully submitted,

*/s/ Dorothy H. Wimberly*
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, LA 70130

Douglas R. Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth St., N.W.
Washington, DC 20005

John H. Beisner
Jessica Davidson Miller
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
1440 New York Avenue, N.W.
Washington, DC 20005

ATTORNEYS FOR MERCK SHARP &
DOHME CORP.

## CERTIFICATE OF SERVICE

I also hereby certify that the above and foregoing Memorandum in Support of

Motion for Judgment on the Pleadings has been served on Liaison Counsel, Russ Herman and

_____
*(cont'd from previous page)*
Certification Order at 7, *State of Alaska v. Janssen Ortho LLC*, No. 3:11-cv-0002-RRB (D. Alaska Mar. 30, 2012) (attached as Ex. 2).  The only other Alaska decision Merck found that addresses the applicability of the exemption to prescription drug promotion, *State v. Eli Lilly & Co.*, No. 3AN-06-5630 CI, 2007 WL 5879398 (Alaska Super. Ct. July 31, 2007), offers little guidance because it lacks any analysis.  Specifically, the court thought it unclear "that the acts or practices complained of by the State" – i.e., off-label marketing and false claims of safety and efficacy – "are specifically prohibited by the FDA."  *Id.*  But it did not even cite – much less address – a single FDA regulation (and, in any event, off-label marketing is not alleged here).  Accordingly, the Court should disregard this unpublished superior court decision as unpersuasive.  *See McCoy v. State*, 80 P.3d 757, 764 (Alaska Ct. App. 2002) ("unpublished opinions are not precedent" and may be relied upon only "for whatever persuasive power those decisions might have").

1125308v1

Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail, upon Liaison Counsel

Ann Oldfather by e-mail, and upon all parties by electronically uploading the same to

LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8B, and that the

foregoing was electronically filed with the Clerk of Court of the United States District Court for

the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of

Electronic Filing in accord with the procedures established in MDL 1657, on this 3rd day of May,

2013.

> */s/ Dorothy H. Wimberly*_____
> Dorothy H. Wimberly, 18509
> STONE PIGMAN WALTHER
> WITTMANN L.L.C.
> 546 Carondelet Street
> New Orleans, Louisiana  70130
> Phone:  504-581-3200
> Fax:     504-581-3361
> dwimberly@stonepigman.com
>
> Defendants' Liaison Counsel

1125308v1