UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | |
|     Products Liability Litigation | * | |
| | * | |
| This Document Relates to: | * | MDL No. 1657 |
| | * | |
| JIM HOOD, ATTORNEY GENERAL *ex rel.*, | * | SECTION L |
|     STATE OF MISSISSIPPI, | * | |
| | * | JUDGE ELDON E. FALLON |
|            Plaintiff, | * | |
| | * | MAGISTRATE JUDGE |
|     versus | * | KNOWLES |
| | * | |
| MERCK & CO., INC., | * | |
| | * | |
|            Defendant. | * | |
| | * | |
| Case No. 2:05-cv-06755 | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF
## MOTION FOR JUDGMENT ON THE PLEADINGS

## TABLE OF CONTENTS

Page

BACKGROUND ...............................................................................................................2

ARGUMENT ...................................................................................................................5

I.      ALL OF PLAINTIFF'S CLAIMS FOR MONETARY RELIEF FAIL FOR
        LACK OF CAUSATION OR ARE BARRED BY THE INDIVIDUALIZED-
        PROOF RULE. ......................................................................................................6

        A.      Plaintiff's Claims For Damages And Restitution Fail Because He Has Not
                Adequately Alleged Causation. ......................................................................6

        B.      Plaintiff's Claims For Penalties And Fines Are Barred By The
                Individualized-Proof Rule...............................................................................13

II.     PLAINTIFF'S CLAIMS FOR INJUNCTIVE RELIEF FAIL AS A MATTER OF
        LAW. ...................................................................................................................16

        A.      There Is No Conduct To Enjoin........................................................................16

        B.      Without A Valid Claim For Injunctive Relief, The AG Cannot Seek
                Penalties Under The MCPA...............................................................................19

III.    PLAINTIFF'S CLAIMS FAIL FOR OTHER REASONS AS WELL. ..........................21

        A.      Plaintiff Fails To State Claims For False Advertising And Common-Law
                Fraud (Counts III And IV). ...............................................................................21

        B.      Plaintiff Fails To State A Claim For Fines Under The False-Advertising
                Statute (Count III). ..........................................................................................24

        C.      Plaintiff Fails To State A Claim For Negligence (Count VI). ..............................25

        D.      Plaintiff Fails To State A Claim For Unjust Enrichment (Count V). ...................26

CONCLUSION.................................................................................................................27

1125312v1

## <u>TABLE OF AUTHORITIES</u>

Page

### FEDERAL CASES

*In re Actimmune Marketing Litigation*,
No. C 08-02376 MHP, 2009 U.S. Dist. LEXIS 103408 (N.D. Cal. Nov. 6, 2009)................13

*Adcock v. S. Austin Marine, Inc.*,
No. 2:08cv263KS-MTP, 2009 U.S. Dist. LEXIS 104264 (S.D. Miss. Oct. 30, 2009)...........25

*Arroyo v. Rubio*,
No. 10-1609 (MEL), 2011 U.S. Dist. LEXIS 28457 (D.P.R. Mar. 18, 2011) ........................24

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)......................................................................................................5, 11

*Atchison, T & S.F. Railway Co. v. Lennen*,
640 F.2d 255 (10th Cir. 1981) ..............................................................................................17

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007).....................................................................................................5, 11

*Benchmark Electrics, Inc. v. J.M. Huber Corp.*,
343 F.3d 719 (5th Cir. 2003) .................................................................................................22

*Brandner v. Abbott Laboratories, Inc.*,
No. 10-3242, 2012 WL 27696 (E.D. La. Jan. 5, 2012)....................................................18, 19

*Cole v. Chevron USA, Inc.*,
554 F. Supp. 2d 655 (S.D. Miss. 2007)..................................................................................26

*Coleman v. Conseco, Inc.*,
238 F. Supp. 2d 804 (S.D. Miss. 2002)..................................................................................26

*Eastern Mississippi Electric Power Association v. Porcelain Products Co.*,
729 F. Supp. 512 (S.D. Miss. 1990)......................................................................................25

*EEOC v. Wooster Brush Co. Employees Relief Association*,
727 F.2d 566 (6th Cir. 1984) ...............................................................................................21

*Employer Teamsters-Local Nos. 175/505 Health & Welfare Trust Fund v. Bristol Myers Squibb Co.*,
No. 3:12-0587, 2013 U.S. Dist. LEXIS 21589 (S.D. W. Va. Jan. 29, 2013)............................8

*Giles v. Bank of America, N.A.*,
No. SA-11-CV-1035 OG (NN), 2012 U.S. Dist. LEXIS 41984
(W.D. Tex. Mar. 27, 2012) ...........................................................................22

*Greilsheimer v. Ferber Chan & Essner*,
No. 98 Civ. 2553 (LMM), 1998 U.S. Dist. LEXIS 13445 (S.D.N.Y. Aug. 27, 1998) ...........17

*Harris v. Brush Engineered Materials, Inc.*,
No. 1:04CV598, 2005 U.S. Dist. LEXIS 42348 (S.D. Miss. Feb. 18, 2005) ........................23

*Health Care Services Corp. v. Pfizer, Inc.*,
No. 2:10-cv-221, 2012 U.S. Dist. LEXIS 89759 (E.D. Tex. Apr. 23, 2012)...........................7

*Ironworkers Local Union 68 v. AstraZeneca Pharmaceuticals, LP*,
634 F.3d 1352 (11th Cir. 2011) .......................................................................7

*Mayberry v. Bristol-Myers Squibb Co.*,
Nos. 07-942 (FLW) & 07-1099 (FLW), 2009 WL 5216968 (D.N.J. Dec. 30, 2009) ............12

*Mississippi Chemical Corp. v. Dresser-Rand Co.*,
287 F.3d 359 (5th Cir. 2002) ..........................................................................25

*Mississippi Farm Bureau Casualty Insurance Co. v. CNH America LLC*,
No. 3:09-cv-112 HTW-LRA, 2010 U.S. Dist. LEXIS 13348
(S.D. Miss. Feb. 16, 2010)..............................................................................25

*Moore v. Dallas Independent School District*,
370 F. App'x 455 (5th Cir. 2010) .....................................................................5

*In re Neurontin Marketing & Sales Practices & Products Liability Litigation*,
677 F. Supp. 2d 479 (D. Mass. 2010) .................................................................12

*In re Neurontin Marketing & Sales Practices & Products Liability Litigation*,
754 F. Supp. 2d 293 (D. Mass. 2010) .................................................................12

*Payne v. Travenol Laboratories, Inc.*,
565 F.2d 895 (5th Cir. 1978) ..........................................................................21

*In re Potash Antitrust Litigation*,
667 F. Supp. 2d 907 (N.D. Ill. 2009) .................................................................26

*Prohias v. Pfizer, Inc.*,
485 F. Supp. 2d 1329 (S.D. Fla. 2007) ...............................................................11

*Rials v. Philip Morris, USA*,
No. 3:06CV583BA, 2007 U.S. Dist. LEXIS 12420 (S.D. Miss. Feb. 21, 2007)...................22

*In re Saturn L-Series Timing Chain Products Liability Litigation*,
    MDL No. 1920, Nos. 8:07cv298; 8:08cv79, 2008 U.S. Dist. LEXIS 109978
    (D. Neb. Nov. 7, 2008) ....................................................................................................17, 18

*In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*,
    No. 2:06-cv-5774 (SRC), 2009 U.S. Dist. LEXIS 58900 (D.N.J. July 10, 2009) ..................11

*In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*,
    No. 2:06-cv-5774 (SRC), 2010 U.S. Dist. LEXIS 56621 (D.N.J. June 9, 2010) .....................8

*Shandong Yinguang Chemical Industrial Joint Stock Co. v. Potter*,
    607 F.3d 1029 (5th Cir. 2010) ...................................................................................12

*Southern Illinois Laborers' & Employers Health & Welfare Fund v. Pfizer, Inc.*,
    No. 08-5175, 2009 U.S. Dist. LEXIS 91414 (S.D.N.Y. Sept. 30, 2009)................................12

*Sweeney v. Sherwin Williams Co.*,
    304 F. Supp. 2d 868 (S.D. Miss. 2004)...................................................................................26

*Terry v. N L Industries, Inc.*,
    No. 4:04CV269-P-B, 2007 U.S. Dist. LEXIS 36394 (N.D. Miss. May 17, 2007)..................22

*United Food & Commercial Workers Central Pennsylvania & Regional Health &
    Welfare Fund v. Amgen, Inc.*,
    400 F. App'x 255 (9th Cir. 2010) .............................................................................8

*United States v. Microsoft Corp.*,
    147 F.3d 935 (D.C. Cir. 1998) ...............................................................................17

*Vavak v. Abbott Labs., Inc.*,
    No. 10-1995 JVS (RZx), 2011 U.S. Dist. LEXIS 111408 (C.D. Cal. June 17, 2011)............18

*In re Vioxx Products Liability Litigation*,
    MDL No. 1657, 2010 U.S. Dist. LEXIS 142767 (E.D. La. Mar. 31, 2010)..............3, 8, 11, 13

*In re Vioxx Products Liability Litigation*,
    MDL No. 1657, 2010 U.S. Dist. LEXIS 64388 (E.D. La. June 29, 2010) .........................3, 13

*Vrabel v. JP Morgan Chase Bank, N.A.*,
    No. C-C-09-1278 MMC, 2009 U.S. Dist. LEXIS 69156 (N.D. Cal. Aug. 6, 2009)...............24

*Weinberger v. Romero-Barcelo*,
    456 U.S. 305 (1982)...............................................................................17

*Williams v. WMX Techs., Inc.*,
    112 F.3d 175 (5th Cir. 1997) ...............................................................................11

iv

*Woods v. R.J. Reynolds Tobacco Co.*,
   635 F. Supp. 2d 530 (S.D. Miss. 2009)...................................................................23

*In re Zyprexa Products Liability Litigation*,
   671 F. Supp. 2d 397 (E.D.N.Y. 2009) ........................................................... passim

## STATE CASES

*Angle v. Koppers, Inc.*,
   42 So. 3d 1 (Miss. 2010)...............................................................................7

*De Bouse v. Bayer AG*,
   922 N.E.2d 309 (Ill. 2009) ..........................................................................11

*Dixieland Food Stores, Inc. v. Kelly's Big Star, Inc.*,
   391 So. 2d 633 (Miss. 1980).....................................................................6, 7

*Hood ex rel. State v. BASF Corp.*,
   No. 56863, 2006 WL 308378 (Miss. Ch. Ct. Jan. 17, 2006) ....................................17

*Mooneyham v. Progressive Gulf Insurance Co.*,
   910 So. 2d 1223 (Miss. Ct. App. 2005) ........................................................23

*Owens Corning v. R.J. Reynolds Tobacco Co.*,
   868 So. 2d 331 (Miss. 2004)....................................................................6, 7

*Rogers v. Barlow Eddy Jenkins P.A.*,
   22 So. 3d 1219 (Miss. Ct. App. 2009) ...........................................................7

*State ex rel. Babbitt v. Goodyear Tire & Rubber Co.*,
   626 P.2d 1115 (Ariz. Ct. App. 1981)............................................................21

*State ex rel. Brady v. Pettinaro Enterprises*,
   870 A.2d 513 (Del. Ch. 2005)..........................................................19, 20, 21

*State Farm Mutual Automobile Insurance Co. v. Ford Motor Co.*,
   736 So. 2d 384 (Miss. Ct. App. 1999) ..........................................................25

*State v. Knoles*,
   256 N.W.2d 873 (Neb. 1977)......................................................................25

*Taylor v. Southern Farm Bureau Casualty Co.*,
   954 So. 2d 1045 (Miss. Ct. App. 2007) ........................................................23

v

*Tunica County v. Hampton Co.  National Surety, LLC,*
  27 So. 3d 1128 (Miss. 2009) ................................................................................................13

**FEDERAL RULE**

Fed. R. Civ. P. 12(c) ................................................................................................................5

**STATE STATUTES**

Miss. Code Ann. § 75-24-9 ....................................................................................................16

Miss. Code Ann. § 75-24-11 ....................................................................................................7

Miss. Code Ann. § 75-24-19(1) ........................................................................................13, 14

Miss. Code Ann. § 97-23-3 ...............................................................................................14, 24

vi

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF
## MOTION FOR JUDGMENT ON THE PLEADINGS

Plaintiff Jim Hood, the Attorney General of Mississippi (the "AG"), has sued Merck

Sharp & Dohme Corp. ("Merck") for injunctive relief, penalties, damages and restitution – all

based on the allegation that Merck misrepresented the safety profile of Vioxx when marketing

the drug in Mississippi. According to the AG, Mississippi citizens would not have been

prescribed Vioxx – and the State would not have covered it under the state employee health plan

– absent alleged misrepresentations and omissions about the drug. Plaintiff asserts entitlement to

relief under six causes of action: violation of the Mississippi Consumer Protection Act

("MCPA"); injunctive relief; violation of the state's untrue, deceptive and misleading advertising

statute; common-law fraud; unjust enrichment; and negligence.

As set forth in more detail below, Plaintiff's claims for monetary relief all fail as a matter

of law. First, to the extent Plaintiff's claims for damages and restitution are premised on the

theory that Merck's conduct caused more doctors to prescribe Vioxx, which the State then paid

for, this Court has already recognized that such claims are barred under the individualized-proof

rule. Similarly, Plaintiff's requests for penalties and fines under the MCPA and false-advertising

statute are also barred by the individualized-proof rule because such recovery is subject to the

discretion of the Court, necessitating individualized inquiries of each alleged violation. Second,

Plaintiff's claims for damages and restitution also fail to the extent they are premised on

Plaintiff's alternative causation theory – i.e., that the State would not have covered Vioxx at all if

Merck had provided more information about its risks – because Plaintiff has not pled a single

fact in support of this claim.

Plaintiff's claim for injunctive relief likewise fails. Fundamental to a claim for injunctive

relief is at least some threat of future misconduct. But no evidence of such a threat exists here;

Vioxx had been off the market for more than a year by the time Plaintiff brought the present suit, and Plaintiff has not alleged that Merck is planning to resume sale of the drug.  Thus, Plaintiff's claim for injunctive relief must also be dismissed.  And because the MCPA makes clear that penalties may only be sought pursuant to a proper claim for injunctive relief, the failure of Plaintiff's claims for injunctive relief further dooms its claim for penalties.

Plaintiff's claims also fail for several additional reasons:

- Plaintiff's claims for *false advertising* and *common-law fraud* both fail because:  (1) he has not identified a single specific misstatement on which the State or any Mississippi physician relied in choosing to cover or prescribe the drug; and (2) he has not alleged that Merck had a duty to disclose information to the State or its physicians.

- Plaintiff's claim for fines under the *false-advertising* statute fails for the additional reason that such fines are available only in criminal proceedings.

- Plaintiff's claim for *negligence*, which is premised on the State's payments for Vioxx prescriptions, is barred under the economic-loss doctrine.

- Plaintiff's claim for *unjust enrichmen*t necessarily fails because Mississippi does not recognize unjust enrichment as an independent cause of action, and none of his underlying causes of action is viable.

For all of these reasons, the Court should grant Merck judgment on the pleadings with respect to all of Plaintiff's claims.

## BACKGROUND

Vioxx is a prescription nonsteroidal anti-inflammatory and pain-relief drug ("NSAID") manufactured by Merck.  (*See* First Am. Compl. ¶¶ 11, 14.)  The United States Food & Drug Administration ("FDA") approved the sale and distribution of Vioxx on May 20, 1999.  (*See id.* ¶ 11.)  Vioxx was available in the U.S. from May 1999 until it was voluntarily withdrawn from the market in September 2004.  (*See id.* ¶ 71.)

1125312v1

As the Court knows, Merck and the Negotiating Plaintiffs' Counsel settled approximately 47,000 lawsuits brought by Vioxx users asserting personal injuries in November 2007. Governmental entities were not a party to the settlement; under the Master Settlement Agreement negotiated by the parties, "Enrolled Program Claimants and their respective Counsel shall be solely responsible to negotiate the satisfaction and discharge of all" governmental liens, including liens under state Medicaid programs.  (*See* Master Settlement Agreement § 12.1.1 (attached as Ex. 1).)

After the announcement of the Master Settlement Agreement and the commencement of the resolution program it created, this Court turned its attention to a group of lawsuits filed by state attorneys general against Merck.  In the main, these suits allege that state Medicaid programs paid money for Vioxx prescriptions that they would not have paid but for Merck's conduct.  The Court addressed the first of these cases in 2010 – *Louisiana ex rel. Caldwell v. Merck & Co.*  Prior to trial, the Court granted partial summary judgment to Merck, holding that the Louisiana AG could not proceed to trial on any causation theory that depended upon individualized showings – i.e., that Merck's conduct caused doctors to prescribe, and patients to purchase, Vioxx.  *See In re Vioxx Prods. Liab. Litig.*, MDL No. 1657, 2010 U.S. Dist. LEXIS 142767, at *23 (E.D. La. Mar. 31, 2010).  Instead, the plaintiff would have to prove that Merck's conduct caused it to cover Vioxx in the first place, and that absent such conduct, the plaintiff would have denied any coverage of Vioxx.  *Id.* at *35-36.  The plaintiff proceeded to trial on the basis of that limited causation theory, and it failed to prove its case.  *See generally In re Vioxx Prods. Liab. Litig.*, MDL No. 1657, 2010 U.S. Dist. LEXIS 64388 (E.D. La. June 29, 2010).

This is another government action, brought by Mississippi Attorney General Jim Hood, to recover funds the State spent on Vioxx.  Plaintiff filed the present suit on October 4, 2005,

seeking to recover economic losses allegedly incurred by the State's health insurance programs in paying for Vioxx.  (*See* Compl. ¶ 7.)  According to Plaintiff, Merck "defrauded the State of Mississippi, its agencies and instrumentalities, by knowingly issuing false and misleading statements in order to induce the State, its agencies and instrumentalities to purchase its drug VIOXX®."  (*Id.* ¶ 1.)  Based on these allegations, Plaintiff initially asserted nine causes of action:  (1) fraud; (2) violation of the MCPA; (3) untrue, deceptive and misleading advertising; (4) Medicaid fraud; (5) restitution/unjust enrichment; (6) negligence; (7) indemnity; (8) violation of the Mississippi Products Liability Act; and (9) injunctive relief.  (*See id.* ¶¶ 81-120.)

Plaintiff filed an amended complaint on June 25, 2012, jettisoning several of his claims, but retaining his causes of action under the MCPA and for injunctive relief; untrue, deceptive and misleading advertising; fraud; unjust enrichment; and negligence.  (*See* First Am. Compl. ¶¶ 75-114.)  Plaintiff seeks to recover penalties in connection with his claim under the MCPA, as well as fines under the false-advertising statute.  (*Id.* ¶¶ 86, 96.)  Plaintiff also seeks damages and restitution for the State's alleged overpayment for Vioxx in covering the drug through the Mississippi State and Public School Employees' Health Insurance Plan ("State Health Plan"). (*See, e.g.*, *id.* ¶ 100 ("As a result of Defendant's fraudulent conduct, the State of Mississippi . . . has been damaged by paying excessive amounts for Defendant's drug"); *id.* ¶ 106 ("Plaintiff is entitled to restitution to the extent of the increased revenue received by the Defendant from VIOXX® prescriptions that were reimbursed by the State"); *id.* ¶ 113 ("As a direct and proximate result of the Defendant's negligence, the State of Mississippi has suffered damages and is therefore entitled to recover those damages.").)  According to Plaintiff, Merck's alleged misconduct "increase[d] the consumption of or demand for VIOXX® by Mississippians."  (*Id.* ¶ 93.)  Plaintiff also suggests that the State would have refused to pay for Vioxx but for Merck's

4

allegedly fraudulent conduct.  (*Id.* ¶¶ 98-100 ("Defendant provided [] false data with the intent of inducing the Mississippi agency to rely on the false information in determining pharmacy benefits related to VIOXX®.").)

## ARGUMENT

Rule 12(c) provides that "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).

Where, as here, a Rule 12(c) motion is premised on a plaintiff's failure to state a claim for which relief can be granted, a court should analyze the motion under the same standard as a Rule 12(b)(6) motion to dismiss.  *Moore v. Dallas Indep. Sch. Dist.*, 370 F. App'x 455, 457 (5th Cir. 2010).  In order to survive a motion for judgment on the pleadings, "a plaintiff must plead enough facts to state a claim to relief that is plausible on its face."  *Id.* (internal quotation marks and citation omitted).  The "plausibility standard" requires "more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Rather, a complaint must contain "[f]actual allegations . . . [that] raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Here, Plaintiff has failed to state a plausible claim against Merck with regard to any of his causes of action.  *First*, all of Plaintiff's claims seeking monetary relief fail under the individualized-proof rule and/or for lack of any other viable theory of causation.  *Second*, Plaintiff's claim for injunctive relief fails because Plaintiff commenced the instant suit *after* Vioxx had already been withdrawn from the market, leaving no plausible threat of future misconduct.  And *third*, Plaintiff has also failed to sufficiently plead the required elements of his claims for consumer fraud, false advertising, common-law fraud, negligence and unjust

5

enrichment.  For all of these reasons, the Court should grant judgment on the pleadings in favor

of Merck with respect to each of Plaintiff's claims.

## I.  ALL OF PLAINTIFF'S CLAIMS FOR MONETARY RELIEF FAIL FOR LACK OF CAUSATION OR ARE BARRED BY THE INDIVIDUALIZED-PROOF RULE.

Plaintiff's claims for monetary relief should be dismissed because:  (1) his first theory of

causation – that fewer doctors would have prescribed Vioxx (and less money would have been

spent by the State in covering such prescriptions) – is not viable under the individualized-proof

rule; and (2) Plaintiff's second causation theory – that the State would not have covered Vioxx in

the first place – is not supported by any alleged facts in his Complaint.  In addition, Plaintiff's

requests for penalties and fines under the MCPA and the false-advertising statute, which are

subject to the discretion of the Court, implicate myriad individualized factors and are therefore

foreclosed by the individualized-proof rule as well.

### A.  Plaintiff's Claims For Damages And Restitution Fail Because He Has Not Adequately Alleged Causation.

Plaintiff's claims for monetary relief fail first and foremost because his causation theories

are either deficient as a matter of law or inadequately pled.

All of Plaintiff's claims for damages and restitution require an allegation of causation.

*See, e.g.*, *In re Zyprexa Prods. Liab. Litig.*, 671 F. Supp. 2d 397, 458-59 (E.D.N.Y. 2009)

(recognizing that claims for damages under the MCPA require proof of causation); *Dixieland

Food Stores, Inc. v. Kelly's Big Star, Inc.*, 391 So. 2d 633, 636 (Miss. 1980) (a plaintiff suing

under the false-advertising statute must establish "damages" "***proximately caused*** by the alleged

untrue, deceptive or misleading advertisement") (emphasis added); *Owens Corning v. R.J.

Reynolds Tobacco Co.*, 868 So. 2d 331, 343 (Miss. 2004) ("Proximate causation must be

prove[d]" in common-law fraud suit[.]"); 868 So. 2d at 342-43 (affirming grant of summary

6

judgment as to unjust enrichment claim where there was no showing of causation); *Angle v. Koppers, Inc.*, 42 So. 3d 1, 9 (Miss. 2010) (recognizing causation as an "essential" element of a negligence claim).[1]

Plaintiff appears to plead two theories of causation:  (1) fewer doctors would have prescribed Vioxx – and the State would have therefore spent less money covering Vioxx prescriptions – but for Merck's alleged misrepresentations (*see* First Am. Compl. ¶¶ 93, 100, 106, 113); and (2) the State would have refused to cover Vioxx for services rendered under the State's Public School Employees' Health Insurance Plan had it known more about the drug's alleged risks (*id.* ¶¶ 98-100).  As set forth more fully below, the first theory fails under the individualized-proof rule, and the second theory fails because Plaintiff's threadbare allegations do not state a plausible theory of reliance or causation.

*First*, Plaintiff's theory that more Vioxx prescriptions were filled by doctors (and then paid for by the State) as a result of Merck's representations fails as a matter of law.  (*See* First Am. Compl. ¶ 93.)  As this Court recognized in the Louisiana AG action, government entities

---

[1]        Plaintiff also fails to allege a cognizable theory of injury, even though proof of injury is required to recover damages and restitution under his various causes of action.  *See, e.g.*, Miss. Code Ann. § 75-24-11 (restitution only permissible where "monies or property . . . may have been acquired by" unlawful conduct); *Dixieland Food Stores*, 391 So. 2d at 636 (suit for damages under Mississippi deceptive advertising statute requires actual damages); *Owens Corning*, 868 So. 2d at 343 (fraud and unjust enrichment require a showing of injury to recover damages); *Rogers v. Barlow Eddy Jenkins P.A.*, 22 So. 3d 1219, 1227 (Miss. Ct. App. 2009) (negligence requires a showing of injury).  As the U.S. Court of Appeals for the Eleventh Circuit has explained, "the scope of potential economic injury arising from" a third-party payor ("TPP")'s "purchases of prescription drugs is limited," and a claim for such injury is viable only where a plaintiff can allege "not only [that it] paid for the drug, but also that its prescription was medically unnecessary or inappropriate" – i.e., that each physician "would not have prescribed the drug under the standards of sound medical practice because the drug actually was unsafe or ineffective in treating the plaintiff's condition."  *Ironworkers Local Union 68 v. AstraZeneca Pharm., LP*, 634 F.3d 1352, 1362-63 (11th Cir. 2011); *accord Health Care Serv. Corp. v. Pfizer, Inc.*, No. 2:10-cv-221, 2012 U.S. Dist. LEXIS 89759, at *7-8 (E.D. Tex. Apr. 23, 2012) (TPP failed to plead injury because it "does not allege that any physician, had he or she known all the true information about Geodon or Zyvox, would not have prescribed the drugs under the standards of sound medical practice because the drugs actually were unsafe or ineffective in treating their patients' conditions"), *report and recommendation adopted by* 2012 U.S. Dist. LEXIS 89758 (E.D. Tex. June 28, 2012).  In other words, a TPP (such as Mississippi) "suffers no economic injury merely" because a drug is "prescribed" and the payor pays "for a more expensive drug," *Ironworkers*, 634 F.3d at 1363, all that is alleged here.

cannot pursue claims against Merck based on the general theory that "Merck's misrepresentations led to the prescription of Vioxx." *In re Vioxx*, 2010 U.S. Dist. LEXIS 142767, at *23. In that case, the Louisiana Attorney General brought economic loss claims very similar to those alleged here. One of the Louisiana Attorney General's causation theories was that fewer Vioxx prescriptions would have been written – and thus fewer Medicaid dollars spent – but for Merck's alleged misrepresentations and omissions about Vioxx. (*See* Louisiana Atty. Gen.'s Mem. of Law in Opp'n to Merck's Mot. to Dismiss Pl.'s Am. Compl. at 16 (attached as Ex. 2).) The Court held that such a theory of causation was barred as a matter of law because of the highly individualized evidence that would be necessary to prove such a claim. According to the Court, "[e]ach decision by each doctor and each patient was different," and the "effect that any alleged misrepresentations had on each [prescribing] decision" was therefore "unique." *In re Vioxx*, 2010 U.S. Dist. LEXIS 142767, at *23. For instance, "[m]any patients may have chosen to use Vioxx even if they had been fully informed of the risks associated with it," and "many doctors may have weighed the risks and benefits of the drug and felt that in a specific case, prescribing Vioxx was an acceptable risk." *Id*. at *23-24. As the Court recognized, it would be "simply impossible, or close to it, to determine the individual thought process of each of the thousands of doctors and patients involved" in a single trial. *Id.* at *24. The Court thus held that the Louisiana AG could not go forward with claims based on this theory of recovery.[2]

---

[2]     Although the Court reached this conclusion on Merck's motion for summary judgment in the Louisiana AG case, it should reach the same conclusion here on the pleadings because, as the Court recognized in the Louisiana AG case, it would be "simply impossible, or close to it" for a court to assess individualized facts even if a governmental entity attempted to proffer them. Thus, the Court need not await factual development to rule. *See, e.g.*, *United Food & Commercial Workers Cent. Pa. & Reg'l Health & Welfare Fund v. Amgen, Inc.*, 400 F. App'x 255, 257 (9th Cir. 2010) (affirming dismissal of TPP complaint for "fail[ing] to plead a cognizable theory of proximate causation" on a motion to dismiss); *Emplr. Teamsters-Local Nos. 175/505 Health & Welfare Trust Fund v. Bristol Myers Squibb Co.*, No. 3:12-0587, 2013 U.S. Dist. LEXIS 21589, at *32 (S.D. W. Va. Jan. 29, 2013) (granting motion to dismiss on causation grounds; "[b]etween [d]efendants' alleged misleading marketing and [p]laintiffs' prescription reimbursements lies a vast array of intervening events, including the 'independent medical *(cont'd)*

8

The Court's ruling in the Louisiana AG action was based in large part on Judge Weinstein's rejection of similar claims arising from the State of Mississippi's Medicaid payments for the prescription drug Zyprexa. *See Zyprexa*, 671 F. Supp. 2d at 453. In that case, the State of Mississippi asserted many of the same claims at issue here – specifically, claims under the Mississippi Consumer Protection Act, and for common-law fraud, negligence and unjust enrichment. One of the State's theories of causation was that the defendant's alleged misconduct caused more Zyprexa to be prescribed to Medicaid beneficiaries, either because doctors prescribed Zyprexa for off-label use more than they otherwise would have, or because doctors would have been more hesitant to prescribe the drug if it had come with a stronger warning. *Id.* at 454. Judge Weinstein granted the defendant's motion for summary judgment on this theory, holding that Mississippi could not prove its theory of causation on an aggregate basis. Judge Weinstein began by explaining that, as a practical matter, Mississippi's theories of relief turned the suit into a functional class action, even though the State itself was a single party, because the State's claims were "predicated on numerous acts of fraud . . . alleged to have individually affected a statewide population of prescribing physicians and patients." *Id.* at 433. Judge Weinstein went on to hold that an individualized-proof rule applies in a structural class action just as it does in a traditional class action under Rule 23. Such a rule requires plaintiffs to prove causation on an individual basis and thus bars aggregate adjudication of claims that include a causation element. *Id.* at 434.

---

*(cont'd from previous page)*

judgment' of doctors") (citation omitted); *In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*, No. 2:06-cv-5774 (SRC), 2010 U.S. Dist. LEXIS 56621, at *24-25 (D.N.J. June 9, 2010) ("Despite the unquestionable detail in the Amended Complaint concerning the tactics employed by Schering in marketing the Subject Drugs, the allegations still fail to establish that Named Plaintiffs suffered injury fairly traceable to the misconduct at issue."), *aff'd*, 678 F.3d 235 (3d Cir. 2012).

Applying the individualized-proof rule to Mississippi's theories of relief, Judge Weinstein held that the State could not prevail on any theory of causation that depended on individualized showings – including the State's theory that it had spent money on prescriptions that were made as a result of the defendant's representations or warnings. *Id.* at 454-55. Judge Weinstein reasoned that "[i]ndividualized proof is needed . . . to overcome the possibility that a Mississippi patient was prescribed Zyprexa for some reason other than belief in the accuracy of Lilly's warnings or representations." *Id.*

This case is no different. Plaintiff's prayer for damages and restitution is premised on the allegation that Merck's alleged misconduct "increase[d] the consumption of or demand for VIOXX® by Mississippians." (First Am. Compl. ¶ 93; *see also, e.g., id.* ¶ 94 (Mississippi "has been damaged by paying excessive amounts for VIOXX®, when it was no more effective than other less expensive NSAIDs"); *id.* ¶ 100 ("As a result of Defendant's fraudulent conduct, the State of Mississippi . . . has been damaged by paying excessive amounts for Defendant's drug"); *id.* ¶ 105 ("As a result of the excessive payments for VIOXX®, Defendant obtained increased sales and market share for its product, and, therefore, increased profits, and was unjustly enriched at the expense of the State of Mississippi."); *id.* ¶ 106 ("Plaintiff is entitled to restitution to the extent of the increased revenue received by the Defendant from VIOXX® prescriptions that were reimbursed by the State"); *id.* ¶ 112 ("Due to the negligent, careless, reckless, willful and/or intentional conduct of the Defendant, as set forth above, the State dispensed millions of dollars of State Health Plan funds in purchasing VIOXX® prescriptions.").) In other words, the State is alleging that absent Merck's alleged misrepresentations, it would have paid for other,

less expensive drugs – instead of Vioxx – because doctors would not have prescribed the drug.[3] As this Court has recognized, however, such "'generalized allegations and aggregate proof'" cannot "'adequately prove causation.'"  *In re Vioxx*, 2010 U.S. Dist. LEXIS 142767, at *21 (citation omitted).  Just as in *Vioxx* and *Zyprexa*, Plaintiff's claims will turn on each doctor's decision to prescribe Vioxx – and each patient's decision to take it.  As a result, Plaintiff will need to make thousands of individualized showings on causation that would turn this case into a "structural" class action and entail an inquiry that "is impractical and beyond the resources of [this] [C]ourt."  *Zyprexa*, 671 F. Supp. 2d at 459.

  **Second**, to the extent Plaintiff alleges that the State would have refused to pay for Vioxx but for Merck's allegedly fraudulent conduct (*see* First Am. Compl. ¶ 98-100 (apparently asserting this theory under Plaintiff's fraud cause of action)), Plaintiff's complaint does not include any facts to support such a theory.  As set forth above, in order to satisfy Rule 8's pleading requirements, Plaintiff must offer more than "'naked assertion[s]' devoid of 'further factual enhancement.'"  *Iqbal*, 556 U.S. at 678 (citation omitted).  Rather, Plaintiff's complaint must "possess enough heft to 'sho[w] that the pleader is entitled to relief.'"  *Twombly*, 550 U.S. at 557 (citation omitted).  In addition, in order to meet the heightened pleading requirements of Rule 9(b) – which governs Plaintiff's claims for common-law and statutory fraud, *Williams v.*

---

[3]  To the extent Plaintiff intends to suggest in some of these paragraphs that Merck's alleged misrepresentations increased the price of Vioxx (First Am. Compl. ¶ 94), that theory fails too.  A claim that a plaintiff "suffered economic loss where the price of [a medication] increased as a result of misrepresentations made by [a defendant]" fails because it "is, by definition, a fraud-on-the-market theory."  *In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*, No. 2:06-cv-5774 (SRC), 2009 U.S. Dist. LEXIS 58900, at *80 (D.N.J. July 10, 2009); *see also De Bouse v. Bayer AG*, 922 N.E.2d 309, 316 (Ill. 2009) (rejecting price-inflation theory of recovery in case involving medicine withdrawn from the market).  "[P]roof of any such 'price inflation' injury would depend on evidence that the pharmaceutical market is 'efficient' such that information about [a medicine's] efficacy results in changes in its price."  *Prohias v. Pfizer, Inc.*, 485 F. Supp. 2d 1329, 1336 (S.D. Fla. 2007).  However, "'such a theory is patently absurd'" because it "depend[s] on the faulty premise that the price of [a medicine] fluctuates based on the public's knowledge of [the medicine's] benefits, even though drug prices (unlike stock prices which are necessarily set by the price at which buyers are willing to buy, or sellers willing to sell) are fixed by the product's manufacturer."  *Id.* at 1337 (quoting *Heindel v. Pfizer, Inc.*, 381 F. Supp. 2d 364, 380 (D.N.J. 2004)).

11

*WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997); *Mayberry v. Bristol-Myers Squibb Co.*, Nos. 07-942 (FLW) & 07-1099 (FLW), 2009 WL 5216968, at *8 (D.N.J. Dec. 30, 2009) – Plaintiff must explicitly aver the "the who, what, when, where, and how" of the alleged fraud, *Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter*, 607 F.3d 1029, 1032 (5th Cir. 2010) (internal quotation marks and citation omitted).  Plaintiff's Complaint falls far short of either standard.

In his 114-paragraph Complaint, Plaintiff does not offer a single allegation to support a claim that Merck directly misled Plaintiff into covering Vioxx through the State's Health Plan. *See In re Neurontin Mktg. & Sales Practices & Products Liability Litig.*, 677 F. Supp. 2d 479, 497 (D. Mass. 2010) (plaintiff TPPs' claims failed as a matter of law because there was no evidence "suggesting that [they] had direct communications with Pfizer" or "that [they] at any point directly relied on Pfizer's 'half truths'").  Instead, Plaintiff offers only the conclusory allegation that "Mississippi's State Health Plan reasonably relied on [] false information in approving VIOXX® for reimbursement."  (First Am. Compl. ¶ 99.)  But this bottom-line legal conclusion is bereft of any factual detail.  For example, the Complaint fails to allege a single fact specifying that the State or any Mississippi healthcare provider ever saw a particular false statement by Merck – much less relied on that statement in providing coverage for Vioxx or filling Vioxx prescriptions.  As a result, Plaintiff's suggestion that it would not have paid for Vioxx but for Merck's alleged misrepresentations is not "plausible" under *Iqbal* and *Twombly* – let alone pled with the particularity required by Rule 9(b).  *See, e.g.*, *S. Ill. Laborers' & Employers Health & Welfare Fund v. Pfizer, Inc.*, No. 08-5175, 2009 U.S. Dist. LEXIS 91414, at *21 (S.D.N.Y. Sept. 30, 2009) (dismissing complaint on the ground that plaintiffs failed to allege that physicians or third-party payors relied on misrepresentations of Lipitor's efficacy); *cf. also,*

12

*e.g.*, *In re Neurontin Mktg. & Sales Practices & Prods. Liab. Litig.*, 754 F. Supp. 2d 293, 310 (D. Mass. 2010) (granting summary judgment on RICO, state-law-consumer-fraud, common-law-fraud, and unjust enrichment claims by TPPs on causation grounds because "[t]here is no evidence in the record that any of the Class TPP Plaintiffs communicated directly with Pfizer in the development or evaluation of a drug formulary"); *In re Actimmune Mktg. Litig.*, No. C 08-02376 MHP, 2009 U.S. Dist. LEXIS 103408, at *33-34 (N.D. Cal. Nov. 6, 2009) (dismissing consumer-fraud claims for lack of causation because, *inter alia*, "[n]either individual alleges with any degree of specificity that they or their doctors ever were actually the recipient of any of defendants' fraudulent representations").  Thus, Plaintiff's second theory of causation should not be allowed to proceed.[4]

**B.      Plaintiff's Claims For Penalties And Fines Are Barred By The Individualized-Proof Rule.**

Plaintiff's requests for penalties under the MCPA and fines under the false-advertising statute also fail under the individualized-proof rule because such awards are discretionary, requiring fact-specific individualized inquiries of each alleged instance of misconduct.  The MCPA provides that the "Attorney General, upon petition to the court, *may* recover on behalf of the state a civil penalty in a sum *not to exceed* Ten Thousand Dollars ($ 10,000.00) per violation."  Miss. Code Ann. § 75-24-19(1)(b) (emphases added).  As the Mississippi Supreme Court has explained, "[i]n statutory interpretation, the term 'may' indicates a permissive term, not a mandatory term, such as the term 'shall' would indicate."  *Tunica County v. Hampton Co.*

---

[4]     Merck recognizes that this Court allowed a similar causal theory to proceed to trial in the Louisiana AG proceeding.  *See In re Vioxx*, 2010 U.S. Dist. LEXIS 142767, at *36.  However, Plaintiff's Complaint is bereft of *any* facts specifying what was actually communicated to the State or how coverage decisions regarding Vioxx were made.  It makes little sense for the parties to proceed down the same course that was followed in the Louisiana proceeding only to end up at the same place – a trial judgment in favor of Merck.  *See In re Vioxx*, 2010 U.S. Dist. LEXIS 64388.  Rather, Plaintiff's second causal theory is so inadequately pled that it warrants resolution on the pleadings in favor of Merck.

*Nat'l Sur., LLC*, 27 So. 3d 1128, 1134 (Miss. 2009).  A discretionary award of ***any*** civil penalty

under the MCPA is permitted only if supported by a finding that the violation was done

"knowingly and willfully."  Miss. Code Ann. § 75-24-19(1)(b).  As a result, an award of

penalties would necessarily require individualized inquiries regarding Merck's conduct toward

specific Vioxx users.  The same is true with respect to an award of fines under the false-

advertising statute, under which the amount of fees recoverable is similarly subject to the

discretion of the Court.  *See* Miss. Code Ann. § 97-23-3 (authorizing fines of "***not more than***

five hundred dollars") (emphasis added).

Zyprexa* is once again instructive.  There, in addition to seeking damages, Mississippi

sought an award of civil penalties under the MCPA.  671 F. Supp. 2d at 458.  The State

requested that the court impose a penalty for "each of almost a million estimated Zyprexa

prescriptions in Mississippi."  *Id.*  Judge Weinstein found that an award of penalties was barred

under the individualized-proof rule because the trial court "is invested with discretion to

determine the appropriate amount of the penalty with respect to each violation, whether the

maximum of $10,000 or some smaller amount."  *Id.*  Although the MCPA does not articulate the

specific factors a court should consider when evaluating a request for civil penalties, Judge

Weinstein held that the court would nonetheless have to consider:

> a number of issues as they bear on each Zyprexa prescription, including but not
> limited to:  whether the prescription was for an on-label or off-label use; whether
> the prescription was medically necessary; whether the patient received any benefit
> from Zyprexa; whether and the extent to which the patient experienced any of
> Zyprexa's potential metabolic side effects; the information about Zyprexa
> available to the medical community at the time the prescription was written; and
> the times of the various alleged instances of misconduct by Lilly, and whether and
> to what extent each instance may have impacted the prescription in question.

*Id.* at 458-59.  The court went on to reason that "[d]ue to the nature of the alleged misconduct

and injuries in the instant case, and in light of the discretion invested in the court to set the

amount of the CPA penalty, proper assessment of the claimed penalties would require individualized consideration of the circumstances of each prescription alleged to be in violation of the statute." *Id.* at 459. Thus, determining the propriety of civil penalties on a "per-violation basis" would be "impractical and beyond the resources of any court." *Id.* Based on this reasoning, the court granted summary judgment in favor of the defendant with respect to the claim for statutory penalties. *Id.* (*See also* Order at 2, ECF No. 64279 (Feb. 28, 2013) ("[T]he Court notes that the penalties that Mississippi seeks under the [MCPA] may be discretionary, which would mean that information relating to causation could help to guide the Court's exercise of its discretion in issuing penalties.") (citing *Zyprexa*, 671 F. Supp. 2d at 458-59).)

The same disposition must follow here. As in *Zyprexa*, determining whether penalties are justified under the MCPA (and, if so, the proper amount) would require a fact-intensive inquiry regarding the circumstances under which each Mississippi consumer was prescribed Vioxx. Plaintiff is seeking an award of civil penalties "for each violation" of the MCPA. (*See* First Am. Compl. ¶ 84.) Plaintiff also requests fines for each "separate, distinct, knowing and willful violation" of the false-advertising statute. (*Id.* ¶ 95.) The Court would need to apply similar considerations to those articulated by Judge Weinstein in *Zyprexa* with respect to both of these requests. For example, the Court would need to consider whether Merck's representations about Vioxx violated the MCPA based on the impact of those representations on each Vioxx user and his or her doctor. In addition, the Court would need to determine whether each Vioxx prescription was medically necessary and how much medical benefit the individual received from the medication. As explained in *Zyprexa*, such considerations would overwhelm the resources of the Court and transform this action into a multitude of mini-trials on the issue of penalties. Put simply, requiring the court to undertake such an endeavor would be "impractical

15

and beyond [its] resources." *Zyprexa*, 671 F. Supp. 2d at 459.  Thus, Plaintiff's claims for penalties and fines necessarily fail.

## II.   PLAINTIFF'S CLAIMS FOR INJUNCTIVE RELIEF FAIL AS A MATTER OF LAW.

Plaintiff's claims for injunctive relief (*see* First Am. Compl. Counts I & II) fail as a matter of law because the AG has not alleged any ongoing or likely future misconduct that could be enjoined.[5]  Moreover, the failure of Plaintiff's claim for injunctive relief further dooms his claim for penalties.

### A.   There Is No Conduct To Enjoin.

The MCPA provides that "[w]henever the Attorney General has reason to believe that any person is using, has used, or is about to use any method, act or practice prohibited by Section 75-24-5 . . . he may bring an action in the name of the state against such person to restrain by temporary or permanent injunction the use of such method, act or practice."  Miss. Code Ann. § 75-24-9.

Plaintiff's claims for injunctive relief fail for the simple reason that there is nothing to enjoin.  As the Complaint itself makes clear, the allegations underpinning Plaintiff's claims all center on Merck's alleged "false and misleading statements and/or omissions of material facts concerning the safety and efficacy of VIOXX®."  (First Am. Compl. ¶ 10.)  But Plaintiff commenced the present suit in October 2005 – over a year after Vioxx was withdrawn from the market – and Plaintiff did not allege that Vioxx would ever be returned to the market or that Merck's alleged conduct could ever recur.

---

[5]   The AG asserts two causes of action for injunctive relief, but both appear to be alleged under the MCPA. (*See* First Am. Compl. ¶¶ 85, 88.)

This failure is fatal to Plaintiff's claim for injunctive relief.  Courts routinely deny requests for injunctive relief where – as here – it is clear that the complained-of conduct no longer exists.  *See In re Saturn L-Series Timing Chain Prods. Liab. Litig.*, MDL No. 1920, Nos. 8:07cv298; 8:08cv79, 2008 U.S. Dist. LEXIS 109978, at *63 (D. Neb. Nov. 7, 2008) (denying request for injunctive relief under California's Unfair Competition Law because "[d]efendants no longer engage in the behavior that [plaintiff] would have this Court enjoin . . . [t]his Court cannot award injunctive relief for conduct that no longer exists") (internal quotation marks and citation omitted).  As courts have recognized, a "suit for injunctive relief is moot when the offending conduct ceases and the court finds that there is no reasonable expectation that it will resume." *Greilsheimer v. Ferber Chan & Essner*, No. 98 Civ. 2553 (LMM), 1998 U.S. Dist. LEXIS 13445, at *6-8 (S.D.N.Y. Aug. 27, 1998) (declining to issue injunctive relief under Lanham Act where "prior to the initiation of this action, defendants agreed to cease using plaintiff's name when answering the phones and on all firm stationary and documents . . . [and] [i]t is illogical to assume that defendants would go through the significant trouble and expense" of misusing plaintiff's name at some point in the future).[6]

More specifically, courts have rejected injunctive relief where a complaint was filed after an allegedly defective product had been recalled, undermining any claim that the alleged

---

[6]     As these cases reveal, an ongoing violation is required to justify an injunction even where the injunction is statutorily authorized.  The MCPA does not set forth the requirements for a statutory injunction, and Merck is not aware of any controlling authority addressing whether statutorily authorized injunctions are subject to the same requirements as common-law injunctions under Mississippi law.  In one unpublished opinion, the Mississippi Chancery Court held that a "plaintiff only has to show a probable cause of a statutory violation for a statutory injunction" and need not prove irreparable injury or inadequacy of legal remedies.  *Hood ex rel. State v. BASF Corp.*, No. 56863, 2006 WL 308378, at *13 (Miss. Ch. Ct. Jan. 17, 2006).  *BASF* appears to have been wrongly decided because it cited *Atchison, T & S.F. Railway Co. v. Lennen*, 640 F.2d 255, 259-60 (10th Cir. 1981), for support, and as subsequent cases have recognized, *Atchison*'s reasoning was rejected by the U.S. Supreme Court in *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982), which held that statutory injunctions are subject to lower burdens of proof only where there is a "clear and valid legislative command" that the common-law standard be displaced.  *United States v. Microsoft Corp.*, 147 F.3d 935, 944 (D.C. Cir. 1998) (calling *Atchison* and similar pre-*Weinberger* cases "outmoded").  In any event, even *BASF*'s low standard for an injunction cannot be satisfied here because there was no alleged "statutory violation" at the time Plaintiff brought suit.

17

misconduct could recur in the future.  *See, e.g.*, *Brandner v. Abbott Labs., Inc.*, No. 10-3242, 2012 WL 27696, at *3 (E.D. La. Jan. 5, 2012) (dismissing claim for injunctive relief that was filed shortly after the allegedly defective infant formula product had been recalled because, *inter alia*, "[c]omplaints of past harm do not sufficiently allege the likelihood of the immediate threat of future harm"); *Vavak v. Abbott Labs., Inc.*, No. 10-1995 JVS (RZx), 2011 U.S. Dist. LEXIS 111408, at *12 (C.D. Cal. June 17, 2011) (claim for injunctive relief failed as a matter of law because the allegedly defective infant-formula product had been recalled before the plaintiff filed suit; "the plaintiff could not allege 'any real or immediate threat that [she] will be wronged again'"); *see also In re Saturn L-Series Timing Chain Prods. Liab. Litig.*, 2008 U.S. Dist. LEXIS 109978, at *63 (rejecting claim for injunctive relief under California's Unfair Competition Law that was filed after defendant "ceased making and marketing the [allegedly defective] vehicles"; the "[c]ourt cannot award injunctive relief for conduct that no longer exists").

For example, in *Brandner*, 2012 WL 27696, at *1, a parent brought suit against Abbott after learning that the Similac infant-formula product she purchased for her child contained beetles.  Plaintiff filed her Complaint seeking injunctive relief the day after Abbott announced a nationwide recall of the product.  Compl., ECF No. 1, *Brandner v. Abbott Labs., Inc.*, No. 2:10-cv-03242 (E.D. La. July 13, 2011) (attached as Ex. 3).  In moving for judgment on the pleadings, the defendant argued that "[t]he Second Amended Complaint does not contain a single factual allegation that . . . demonstrates an objective likelihood that [plaintiff] will be personally harmed by Abbott" in the future.  *See* Mot. for J. on the Pleadings at 5, ECF No. 91, *Brandner v. Abbott Labs., Inc.*, No. 2:10-cv-03242 (E.D. La. July 13, 2011) (attached as Ex. 4).  It further emphasized that plaintiff "does not claim that Abbott continues to manufacture Similac that contains beetles" or that she intends "to purchase Similac for her child at any point" in the future.

18

*Id.* The court agreed, recognizing that "the only harm [plaintiff] alleges in the complaint is the past harm she suffered when she learned that her child had ingested the allegedly contaminated Similac." *Brandner*, 2012 WL 27696, at *3. According to the court, "[c]omplaints of past harm do not sufficiently allege the likelihood of the immediate threat of future harm." *Id.* The court thus dismissed plaintiff's claim for injunctive relief.

This case calls for the same result. As noted above, Plaintiff brought the present suit against Merck ***after*** Vioxx had been voluntarily withdrawn from the market. Moreover, Plaintiff's Complaint does not allege that Merck has plans to return the drug to the market – or that the FDA would permit it to do so. In short, Plaintiff's request for injunctive relief consists entirely of "complaints of past harm[,]" which "do not sufficiently allege the likelihood of the immediate threat of future harm" necessary for injunctive relief. *Brandner*, 2012 WL 27696, at *3. Thus, Plaintiff's claims for injunctive relief are not legally viable.

### B.   Without A Valid Claim For Injunctive Relief, The AG Cannot Seek Penalties Under The MCPA.

The failure of Plaintiff's claim for injunctive relief further dooms his claim for penalties under the MCPA. A valid claim for injunctive relief under the MCPA is an essential predicate for other relief, including civil penalties. After all, although the MCPA authorizes a court to award penalties for violations of the MCPA, it may do so only in actions where a "person . . . violated the terms of an injunction issued under Section 75-24-9" or upon finding "knowing[] and willful[]" violations of the MCPA in an "action brought under Section 75-24-9" – i.e., ***actions for injunctive relief***. *See id.* § 75-24-19(1). In other words, as one court explained in construing a similar statute, if the AG's claim for injunctive relief fails, so too does his claim for any other relief. *See, e.g.*, *State ex rel. Brady v. Pettinaro Enters.*, 870 A.2d 513, 537 (Del. Ch. 2005) (construing analogous consumer-fraud statute under Delaware law; "the lack of a tenable

claim for injunctive relief under the Deceptive Trade Practices Act prevents the State from proceeding under that Act for other relief here").

In *Pettinaro*, Delaware's Attorney General sought an injunction under the Delaware Deceptive Trade Practices Act and other consumer-protection laws stemming from the defendant's allegedly fraudulent conduct in promising condominium residents that they would have access to a clubhouse adjacent to their condominium building.  870 A.2d at 517-18.  The attorney general brought suit four years after the defendant's last alleged deceptive act regarding the clubhouse.  *Id.* at 536.  The attorney general sought "[i]njunctive relief prohibiting [defendant] from violating the Consumer Fraud Act, the Deceptive Trade Practices Act, and the Health Spa Regulation in the future."  *Id.* at 523.

The court dismissed the claim for injunctive relief, holding that "[t]he mere fact that the Attorney General has asked for an injunction does not suffice to state a claim within this court's equitable jurisdiction."  *Id.* at 536.  As the court explained, "a claim for injunctive relief must be supported by the allegation of facts that 'create a reasonable apprehension of a future wrong.'" *Id.* (citation omitted).  Because the complained-of conduct had long ceased by the time the attorney general commenced his lawsuit, the claim for injunctive relief was based simply on an "unsubstantiated fear that a legal duty may be breached in an uncertain future."  *Id.*  Thus, the attorney general's claim for injunctive relief was nothing more than a request for compliance with "duly enacted statutes that [the defendant] is already duty-bound to honor."  *Id.*  To order an injunction under these circumstances, the court explained, would "trivialize[] equity's role and implicitly suggest that the most powerful expression of a societal prohibition – an express statute forbidding conduct – is somehow insufficient without an 'us, too' from the judicial branch."  *Id.* at 537.  The Delaware court also concluded that lack of a viable injunctive-relief claim meant no

20

other relief was available either, and the court dismissed the claim.  *Id.* (explaining that "[r]ecovery under that Act is contingent upon a valid basis for injunctive relief"); *see also, e.g.*, *State ex rel. Babbitt v. Goodyear Tire & Rubber Co.*, 626 P.2d 1115, 1119 (Ariz. Ct. App. 1981) (reversing trial court's grant of injunction against tire company regarding deceptive advertising under the Arizona Consumer Fraud Act because the trial court had not held the state to its burden "to show a likelihood that the defendant will in the future engage in the conduct sought to be enjoined").

Here, as in *Pettinaro*, Plaintiff has not alleged anything that would give rise to "a reasonable apprehension of a future wrong."  *Pettinaro*, 870 A.2d at 536 (internal quotation marks and citation omitted).  And because a claim for injunctive relief is a necessary predicate for an award of civil penalties to the AG under the MCPA, the State's improper request for an injunction renders the corresponding claim for civil penalties legally deficient too.[7]

## III.   PLAINTIFF'S CLAIMS FAIL FOR OTHER REASONS AS WELL.

### A.   Plaintiff Fails To State Claims For False Advertising And Common-Law Fraud (Counts III And IV).

Plaintiff's false-advertising and common-law fraud claims fail for two additional reasons: (1) he has not alleged that Merck made any affirmative misrepresentations on which the State relied; and (2) he has not alleged that Merck had a duty to disclose capable of giving rise to a claim for fraud by omission.

---

[7]       Nor can Plaintiff manufacture a threat of future wrongful behavior by asserting generically that Merck might violate the MCPA in marketing other drugs and seeking to "enjoin[] Merck from committing future violations of the Mississippi Consumer Protection Act."  (First Am. Compl. ¶ 89.)  Such highly generic "obey-the-law" injunctions cannot be entered in adversarial proceedings.  *See Pettinaro*, 870 A.2d at 536; *see also Payne v. Travenol Labs., Inc.*, 565 F.2d 895, 897-98 (5th Cir. 1978) ("'obey the law' injunctions cannot be sustained"; "This command of specificity is a reflection of the seriousness of the consequences which may flow from a violation of an injunctive order."); *EEOC v. Wooster Brush Co. Employees Relief Ass'n*, 727 F.2d 566, 576 (6th Cir. 1984) ("Such 'obey the law' injunctions cannot be sustained.").

21

While Plaintiff offers conclusory allegations that Merck "made false, deceptive and untrue statements and representations" (First Am. Compl. ¶ 93), he does not point to any specific statement by Merck on which the State relied, as required to state a claim for false advertising or common-law fraud under Mississippi law, *see Rials v. Philip Morris, USA*, No. 3:06CV583BA, 2007 U.S. Dist. LEXIS 12420, at *9 (S.D. Miss. Feb. 21, 2007) ("[t]he claims of deceptive advertising[] [and] fraudulent misrepresentation . . . each require that [plaintiffs] establish the requisite elements of fraud, or deception," including reliance). Instead, Plaintiff's Complaint contains only a generalized allegation that "Mississippi's State Health Plan reasonably relied on [] false information in approving VIOXX for reimbursement." (First Am. Compl. ¶ 99.) Under Federal Rule of Civil Procedure 9(b), that is not enough; rather, Plaintiff was required to allege with specificity "the who, what, when, where, and how" of Merck's allegedly fraudulent misstatements. *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003) (internal quotation marks and citation omitted); *Terry v. N L Indus., Inc.*, No. 4:04CV269-P-B, 2007 U.S. Dist. LEXIS 36394, at *5 (N.D. Miss. May 17, 2007) (dismissing complaint because it "lacks the specificity requisite to a successful fraud claim"). In addition, Plaintiff was required to plead reliance with particularity. *See Giles v. Bank of Am., N.A.*, No. SA-11-CV-1035 OG (NN), 2012 U.S. Dist. LEXIS 41984, at *9 (W.D. Tex. Mar. 27, 2012) (fraud claim could not withstand motion to dismiss under Rule 9(b) because "nowhere in the complaint does Plaintiff explain *how* he acted in reliance on a false representation made by Defendant to his detriment") (emphasis added). Plaintiff has not done so. Plaintiff's Complaint is bereft of even a single allegation that the State or any Mississippi healthcare provider was exposed to a specific false statement by Merck – much less that either relied on that statement in providing coverage for

Vioxx or filling Vioxx prescriptions.  Thus, Plaintiff cannot proceed with a claim for fraud based on any alleged affirmative representations.

Nor can Plaintiff proceed with a claim of fraud by omission.  "[I]n Mississippi, the mere silence or nondisclosure of material facts by a manufacturer does not support a finding of fraudulent concealment brought by the ultimate consumer."  *Harris v. Brush Engineered Materials, Inc.*, No. 1:04CV598, 2005 U.S. Dist. LEXIS 42348, at *7 (S.D. Miss. Feb. 18, 2005). Rather, fraud claims based on an alleged omission require proof that the defendant had a special duty to disclose information to the plaintiff.  *See Taylor v. Southern Farm Bureau Casualty Co.*, 954 So. 2d 1045, 1049 (Miss. Ct. App. 2007) ("In Mississippi, a claim of fraud by omission arises only where the defendant had a duty to disclose material facts purportedly omitted."); *accord Mooneyham v. Progressive Gulf Ins. Co.*, 910 So. 2d 1223, 1227 (Miss. Ct. App. 2005) ("An omission constitutes fraud only if the speaker owed the hearer a duty of disclosure.").  Such a duty "generally arises only where there is a fiduciary relationship between the parties." *Woods v. R.J. Reynolds Tobacco Co.*, 635 F. Supp. 2d 530, 538 (S.D. Miss. 2009) (fraudulent concealment claim failed as a matter of law "[b]ecause the plaintiff has failed to plead, much less demonstrate, any basis for a fiduciary or other confidential relationship between the plaintiff and the defendants").

Here, Plaintiff does not allege that the State had a fiduciary or other confidential relationship with Merck capable of giving rise to a duty to disclose.  To the contrary, Plaintiff merely claims that Merck manufactured prescription drugs used by the State's health insurance beneficiaries – and that the State paid for those prescriptions.  Thus, the State had no direct relationship with Merck at all – much less the type of "fiduciary" relationship that would give

rise to a duty to disclose under Mississippi law.  For this reason as well, Plaintiff's fraud-based claims fail.

> **B.**     **Plaintiff Fails To State A Claim For Fines Under The False-Advertising Statute (Count III).**

Plaintiff's request for fines under the false-advertising statute fails for the additional reason that such relief, which is criminal in nature, is not available in a civil proceeding like the one commenced by Plaintiff here.

As other courts have made clear, "[i]t is improper for [a] plaintiff to seek criminal penalties through the civil litigation system."  *Arroyo v. Rubio*, No. 10-1609 (MEL), 2011 U.S. Dist. LEXIS 28457, at *4 (D.P.R. Mar. 18, 2011) (dismissing claim because the law sought to be enforced in the civil proceeding "imposes criminal penalties on defendants who commit political discrimination") (internal quotation marks and citation omitted); *accord Vrabel v. JP Morgan Chase Bank, N.A.*, No. C-C-09-1278 MMC, 2009 U.S. Dist. LEXIS 69156, at *6 (N.D. Cal. Aug. 6, 2009) ("Plaintiffs . . . cannot seek to recover criminal penalties in a civil action.").

There can be no question that the fines authorized by the false-advertising statute are criminal in nature.  As a preliminary matter, the statute appears in Title 97 of the Mississippi Code, which is entitled "Crimes," and under Chapter 23 of that Title, which is entitled "*Offenses* Affecting Trade, Business and Professions" (emphasis added).  Thus, its placement within the code confirms that it is a criminal statute.  And although its terms make clear that it also provides for ancillary civil relief, that relief is limited to damages.  Specifically, the statute provides that one who commits false advertising "shall be *punished* by a fine of not more than five hundred dollars ($ 500.00), and the *offending* person, whether *found guilty* or not, may be held *civilly* responsible in tort *for damages* to persons or property proximately resulting from a violation of this section."  Miss. Code Ann. § 97-23-3 (emphases added).  Thus, the statute expressly

24

describes the fine as "punish[ment]" and speaks of the "guilt[]" of the defendant.  "Such words

are commonly associated with a criminal proceeding."  *State v. Knoles*, 256 N.W.2d 873, 875

(Neb. 1977) (traffic code using similar terms created a crime and required a criminal

proceeding).  For this reason too, Plaintiff's request for a ***criminal*** fine under the false-

advertising statute fails as a matter of law and should be dismissed.

### C.    Plaintiff Fails To State A Claim For Negligence (Count VI).

Plaintiff's claim for negligence is also deficient because his efforts to recover the cost of

Vioxx prescriptions under this cause of action are proscribed by the economic-loss doctrine.

Under Mississippi law, a "plaintiff who suffers only economic loss as the result of a defective

product may have no recovery in strict liability or negligence."  *E. Miss. Elec. Power Ass'n v.

Porcelain Prods. Co.*, 729 F. Supp. 512, 514 (S.D. Miss. 1990); *see also Miss. Chem. Corp. v.

Dresser-Rand Co.*, 287 F.3d 359, 364 n.3 (5th Cir. 2002) (similar); *Miss. Farm Bureau Cas. Ins.

Co. v. CNH Am. LLC*, No. 3:09-cv-112 HTW-LRA, 2010 U.S. Dist. LEXIS 13348, at *9 (S.D.

Miss. Feb. 16, 2010) (granting defendant summary judgment as to negligence claim based on

economic-loss doctrine).  Rather, a negligence claim requires proof of personal injury and/or

damage to property.  *See Adcock v. S. Austin Marine, Inc.*, No. 2:08cv263KS-MTP, 2009 U.S.

Dist. LEXIS 104264, at *14 (S.D. Miss. Oct. 30, 2009) (granting summary judgment in favor of

defendant on negligence claim where plaintiff merely claimed that he overpaid for the boat in

question).  As one Mississippi appellate court explained, the economic-loss doctrine is a critical

part of state law because "[a]llowing recovery in tort under circumstances essentially commercial

in nature" would (1) "subsume contract law"; (2) dramatically expand product manufacturer's

liability exposure; and (3) significantly increase the prices of consumer products.  *See State

Farm Mut. Auto. Ins. Co. v. Ford Motor Co.*, 736 So. 2d 384, 387-88 (Miss. Ct. App. 1999)

(affirming summary judgment with respect to negligence and strict-liability claims pursuant to economic-loss doctrine).

Here, to the extent Plaintiff seeks reimbursement for the cost of Vioxx prescriptions through his negligence claim (First Am. Compl. ¶¶ 112-13), the State's alleged injuries are purely economic and are therefore foreclosed under Mississippi's economic-loss doctrine. Allowing Plaintiff's negligence claim to proceed under these circumstances – i.e., where there is no allegation of personal injury or property damage – would frustrate basic contract law, wreaking havoc on both consumers and manufacturers.  Plaintiff's claim for negligence thus fails for this reason too.

### D.    Plaintiff Fails To State A Claim For Unjust Enrichment (Count V).

Finally, Plaintiff has not properly pled an equitable claim for unjust enrichment because all of Plaintiff's underlying causes of action are fatally deficient.  "[U]njust enrichment is not an independent theory of recovery" under Mississippi law.  *Cole v. Chevron USA, Inc.*, 554 F. Supp. 2d 655, 671 (S.D. Miss. 2007); *see also Coleman v. Conseco, Inc.*, 238 F. Supp. 2d 804, 813 (S.D. Miss. 2002) ("Plaintiffs have cited no case law establishing 'unjust enrichment' as an independent compensable tort, and the Court is aware of none."), *partially abrogated on other grounds by Sweeney v. Sherwin Williams Co.*, 304 F. Supp. 2d 868 (S.D. Miss. 2004).  Thus, a claim for unjust enrichment necessarily fails where – as here – the plaintiff has not identified a viable predicate claim.  *Cole*, 554 F. Supp. 2d at 673 ("plaintiffs' unjust enrichment claim fails to allege a legally cognizable predicate claim by which the defendants were unjustly enriched"); *In re Potash Antitrust Litig.*, 667 F. Supp. 2d 907, 948 (N.D. Ill. 2009) ("Plaintiffs have failed to allege a legally cognizable Mississippi claim[;] therefore they cannot claim unjust enrichment under Mississippi law").  As set forth above, all of Plaintiff's legal claims fail as a matter of law. Accordingly, Plaintiff's unjust enrichment cause of action is not cognizable either.

## CONCLUSION

For the foregoing reasons, the Court should grant Merck judgment on the pleadings with respect to all of Plaintiff's claims.

Dated: May 3, 2013                       Respectfully submitted,

                                         */s/ Dorothy H. Wimberly*
                                         Phillip A. Wittmann, 13625
                                         Dorothy H. Wimberly, 18509
                                         STONE PIGMAN WALTHER
                                         WITTMANN L.L.C.
                                         546 Carondelet Street
                                         New Orleans, LA 70130

                                         Douglas R. Marvin
                                         WILLIAMS & CONNOLLY LLP
                                         725 Twelfth St., N.W.
                                         Washington, DC 20005

                                         John H. Beisner
                                         Jessica Davidson Miller
                                         SKADDEN, ARPS, SLATE, MEAGHER &
                                         FLOM LLP
                                         1440 New York Avenue, N.W.
                                         Washington, DC 20005

                                         ATTORNEYS FOR MERCK SHARP &
                                         DOHME CORP.

1125312v1

## CERTIFICATE OF SERVICE

I also hereby certify that the above and foregoing Memorandum in Support of Motion for Judgment on the Pleadings has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail, upon Liaison Counsel Ann Oldfather by e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 3rd day of May, 2013.

/s/ Dorothy H. Wimberly
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361
dwimberly@stonepigman.com

Defendants' Liaison Counsel