# EXHIBIT 4

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| KATHLEEN A. BRANDNER | * | 2:10-cv-03242 |
| | * | |
| | * | |
| VERSUS | * | CHIEF JUDGE SARAH S. VANCE |
| | * | |
| | * | |
| ABBOTT LABORATORIES, INC., ET AL. | * | MAG. JUDGE DANIEL E. KNOWLES, III |
| | * | |
| | * | |

* * * * * * * * * * * * * * * * * * *

### DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR JUDGMENT ON THE PLEADINGS WITH RESPECT TO PLAINTIFF'S CLAIM FOR INJUNCTIVE RELIEF, OR IN THE ALTERNATIVE, TO STRIKE PLAINTIFF'S CLAIM FOR INJUNCTIVE RELIEF

Defendants Abbott Laboratories Inc., d/b/a Abbott Sales, Marketing & Distribution Co. and Abbott Laboratories d/b/a Abbott Nutrition (collectively, "Abbott") respectfully submit this memorandum of law in support of their motion pursuant to Fed. R. Civ. P. 12(c) and 12(f) for judgment on the pleadings with respect to the claim for injunctive relief asserted by Plaintiff Kathleen A. Brandner ("Brandner"), or in the alternative, to strike that claim from the Second Supplemental and Amending Class Action Complaint ("2AC") (Dkt. No. 52).

### PRELIMINARY STATEMENT

In this product-liability action, Brandner alleges that her child suffered personal injuries after consuming Similac-brand infant formula manufactured by Abbott that was recalled because it contained insect parts. She currently asserts a claim under the Louisiana Product Liability Act and a claim under Louisiana's redhibition articles, as well as a claim for injunctive relief.[1]

---

[1] The injunction claim is no longer asserted as a separate cause of action, as it was in Brandner's initial Class Action Complaint, but rather, appears within the portion of the Second Amended Complaint dedicated to class allegations. *See* 2AC ¶ 27. That Brandner has relocated her injunction claim to a different portion of the complaint does not prohibit the Court from addressing it. *See, e.g., McGinnis v.*

This injunction claim cannot stand. The Second Amended Complaint is devoid of any allegations suggesting that Abbott is likely to cause Brandner any imminent irreparable harm in the future. Moreover, the United States Food and Drug Administration ("FDA") has publicly declared that Abbott has taken the necessary steps to remedy the problems underlying the recall. Brandner's injunction claim is asserted solely as an attempt to evade the rigorous standard under Rule 23(b)(3) for certification of class action claims seeking money damages. This tactic should be rejected, and Brandner's injunction claim should be eliminated from this action.

## BACKGROUND

The facts underlying this action are set forth in greater detail in Abbott's Memorandum in Support of its Motion to Dismiss the First Amended Complaint (Dkt. No. 32, Attachment 2) and Abbott's Memorandum in Support of its Motion to Deny Class Certification and Strike Plaintiff's Class Allegations, filed concurrently with the instant motion. For present purposes, however, only the following details are relevant.

On September 22, 2010, "Abbott announced that consumers should immediately stop using Similac® powder products because they were believed to contain pieces of beetles or beetle larvae." 2AC ¶ 13. Abbott recalled "Similac® powder product lines offered in sizes such as 8-ounce, 12.4-ounce and 12.9-ounce cans." *Id.* On October 26, 2010, FDA publicly announced that Abbott "ha[d] worked with state and FDA officials to satisfactorily implement plans at the [affected] manufacturing facility to correct the situation, and prevent its recurrence." Ex. A at 1.

"[F]rom April 2010 to September 2010," Brandner "purchased Similac® products" and "fed [them to] her infant child . . . ." 2AC ¶ 14. Allegedly, during that period, Brandner's child

---

*Dodeka, LLC*, No. 4:09cv334, 2010 WL 1856450, at *4 (E.D. Tex. May 7, 2010) (granting Rule 12(c) motion for judgment on the pleadings with respect to "Plaintiff's request for injunctive relief").

"suffered gastro-intestinal problems" as a result of consuming those products. *Id.* ¶ 17. On or about September 22, 2010, Brandner "learned of the Abbott Similac® recall notice" and determined that four Similac containers she had purchased were recalled. *Id.* ¶¶ 15-16. Upon learning of the recall, Brandner "experienced severe emotional distress." *Id.* ¶ 17(a).

Brandner does not allege that Abbott continues to manufacture Similac-brand formula that contains beetles or beetle larvae. Nor does Brandner allege that she is still purchasing or feeding her child Similac-brand formula, or that she intends to do so at any point. Nonetheless, she "seek[s] injunctive relief prohibiting Defendants from selling contaminated Similac® infant formula in the future, and requiring the Defendants to put in place sufficient precautions such that its [sic] Similac® infant formula is not contaminated in the future." *Id.* ¶ 27.

**ARGUMENT**

**I.     Brandner Does Not Allege Any Facts Suggesting That She Is Likely To Suffer Imminent Irreparable Harm**

An injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Defense Council, Inc.*, 555 U.S. 7, 129 S. Ct. 365, 375 (2008); *see also Posada v. Lamb County, Tex.*, 716 F. 2d 1066, 1070 (5th Cir. 1983) ("Permanent injunctions are never lightly given. They are hedged about with circumspection . . . ."). Among the "basic requisites" for injunctive relief are "the likelihood of substantial and immediate irreparable injury, and the inadequacy of remedies at law." *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983) (citation omitted). An injunction cannot issue without a "real or immediate threat that the plaintiff will be wronged again" and "in a similar way" to the manner in which she was wronged in the past. *Id.* at 111. An allegation of past injury standing alone, "while presumably affording [a plaintiff] standing to claim damages" for that injury, "does nothing to establish a real and immediate threat that [the plaintiff] w[ill]

again be" injured. *Lyons*, 461 U.S. at 105; *see also Plumley v. Landmark Chevrolet, Inc.*, 122 F.3d 308, 312 (5th Cir. 1997); *Soc'y of Separationists, Inc. v. Herman*, 959 F.2d 1283, 1285 (5th Cir. 1992).

The threatened injury must be "*likely* in the absence of an injunction," not merely a "possibility." *Winter*, 129 S. Ct. at 375 (emphasis in original); *see also Ballenger v. Mobil Oil Corp.*, 138 F. App'x 615, 622 (5th Cir. 2005) (plaintiff must show "a *clear* threat of continuing illegality portending immediate harmful consequences irreparable in any other manner" (emphasis added)); *United States v. Emerson*, 270 F.3d 203, 262 (5th Cir. 2001) (although irreparable harm need not be "certain to occur," there must be "*a strong threat*" (emphasis in original)). In addition, the threatened injury must be "imminent" or "immediate[]," rather than alleged to exist at "some remote future" time. *Id.* at 262 & n.64 (citations omitted); *see also In re Forest Oaks, L.L.C.*, No. 10-00178-CB-M, 2010 WL 1904340, at *4 (S.D. Ala. May 10, 2010) ("Injunctive relief will not be granted against something merely feared as liable to occur at some indefinite time . . . ." (quoting *Packard Elevator v. I.C.C.*, 782 F.2d 112, 115 (8th Cir. 1986)). The threatened harm must be concrete and objective; a plaintiff's "subjective apprehensions" alone are not a "sufficient basis for an injunction." *Bryant v. Holder*, No. 2:10-CV-76-KS-MTP, 2011 WL 710693 at *8 n.3 (S.D. Miss. Feb. 3, 2011) (quoting *Lyons*, 461 U.S. at 107 n.8).

Lastly, Article III's standing requirement dictates that a plaintiff seeking an injunction must demonstrate "a real and immediate threat that *he* will be subject to the behavior which he seeks to enjoin" – not merely that *someone* will. *Gladden v. Roach*, 864 F.2d 1196, 1198 (5th Cir. 1989) (emphasis added); *see also Lyons*, 461 U.S. at 111 (noting that "[a]bsent a sufficient likelihood that *he* will again be wronged in a similar way, [a plaintiff] is no more entitled to an injunction than any other citizen," and "a federal court may not entertain" his claim (emphasis

added)). "The fact that [a plaintiff has] brought a class-action claim does not alter this analysis." *Milligan v. Am. Airlines, Inc.*, 327 F. App'x 694, 695 (9th Cir. 2009) (plaintiff lacked standing to assert claim for injunctive relief on behalf of putative class because "[s]he . . . [could not] show that *she* face[d] a 'real or immediate threat of irreparable injury'"); *see also Warth v. Seldin*, 422 U.S. 490, 503 (1975) ("Unless these petitioners can . . . demonstrate the requisite case or controversy between *themselves personally* and respondents, none may seek relief on behalf of himself or any other member of the class." (internal quotation marks omitted) (emphasis added)).

The Second Amended Complaint does not contain a single factual allegation that, taken as true, demonstrates an objective likelihood that Brandner will be personally harmed by Abbott in the immediate future in the same way she alleges Abbott harmed her in the past. Brandner alleges that Abbott "announced that consumers should immediately stop using Similac® powder products," and that she heeded Abbott's warning. 2AC ¶¶ 13, 14. She does not allege any intent to purchase Similac for her child at any point, let alone in the immediate future. She acknowledges that Abbott worked with FDA to recall the products at issue, *id.* ¶ 13, and she does not claim that Abbott continues to manufacture Similac that contains beetles. Indeed, the Court may take judicial notice of FDA's official announcement that Abbott "worked with state and FDA officials to satisfactorily implement plans at the [affected] manufacturing facility to correct the situation, and prevent its recurrence." Ex. A at 1.

Given these indisputable facts, the possibility of future injury – let alone *irreparable injury* – is speculative at best. *See Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985) ("Speculative injury is not sufficient; there must be more than an unfounded fear on the part of the applicant."). In fact, a judge in the Central District of California recently dismissed the injunctive-relief component of another Similac purchaser's class-action complaint,

noting that the plaintiff's allegations "f[ell] far short" of alleging "'any real or immediate threat that [she] will be wronged again[.]'" *Vavak v. Abbott Labs., Inc.*, No. SACV 10-1995 JVS (RZx), slip op. at 6 (C.D. Cal. June 17, 2001) (Ex. B). Further, because the *Vavak* court found the injunction claim so deficient that it could "conceive[] of no amendment that could save [it]," the court dismissed that claim with prejudice. *Id.*, slip op. at 7.

In opposition to Abbott's Motion to Dismiss, Brandner's counsel leveled an unsupported claim that, according to unidentified putative class members, "the tainted . . . containers remain on the shelf at stores." Mem. in Opposition to Abbott's Mot. to Dismiss the First Am. Compl. (Dkt. No. 36) at 11. However, this allegation is not properly before the Court, as it was not asserted in the pleadings. Moreover, Brandner's subsequent interrogatory responses conflict with any such allegation. *See* Ex. C at Interrogatory no. 18 (answering "none" in response to Abbott's request to identify "each PERSON . . . [that] contacted YOU (or YOUR spouse, attorney, or anyone acting on YOUR behalf) regarding SIMILAC"). And, in any event, absent an allegation that Brandner plans to intentionally endanger her own child by continuing to feed him this purportedly dangerous product, any hypothetical "tainted . . . containers" that "remain on the shelf at stores" are not likely to cause *Brandner herself* any concrete immediate harm, as opposed to "other, unidentified members of the class to which [she] belong[s] and which [she] purport[s] to represent." *Warth*, 422 U.S. at 502; *see also Gratz v. Bollinger*, 539 U.S. 244, 284 (2003) ("[Plaintiffs'] past injuries do not give them standing to obtain injunctive relief to protect third parties from similar harms.").

**II.     Brandner's Requested Injunction Is Fatally Overbroad and Vague**

"'[T]he scope of injunctive relief is dictated by the extent of the violation established,' and an injunction must be narrowly tailored to remedy the specific action necessitating the

-6-

injunction." *Fiber Sys. Int'l, Inc. v. Roehrs*, 470 F.3d 1150, 1159 (5th Cir. 2006) (citation omitted); *see also John Doe #1 v. Veneman*, 380 F.3d 807, 819 (5th Cir. 2004) (injunction may not "exceed[] the legal basis for the lawsuit" or address matters "not before the district court"). An injunction must also be "specific in terms" and "describe in reasonable detail . . . the act or acts sought to be restrained." *Id.* at 818 (quoting Fed. R. Civ. P. 65).

The Second Amended Complaint seeks "injunctive relief prohibiting Defendants from selling contaminated Similac® infant formula in the future, and requiring the Defendants to put in place sufficient precautions such that its [sic] Similac® infant formula is not contaminated in the future." 2AC ¶ 27. The requested injunction is hopelessly overbroad, as this lawsuit involves Abbott's alleged violation of the Louisiana Products Liability Act and the redhibition articles through the "sale of defective infant formula under the brand name Similac® that contained . . . parts and pieces of beetles and beetle larvae." *Id.* ¶ 1. The Second Amended Complaint does not place before the district court any and all "contaminat[ion]" of Abbott's infant formulas by any means whatsoever. *See Veneman*, 380 F.3d at 819 (holding that injunction against the release of "all LPC records" was overbroad when complaint addressed only release of "specific LPC application forms," and noting that a court may not "[e]xpand[] injunctive relief to cover" wrongs not properly at issue); *DirectTV, Inc. v. Drews*, No. 2:04CV0130, 2005 WL 2461232, at *7 (W.D. La. Oct. 4, 2005) ("Injunctions are not appropriate as a blanket prohibition [against] future illegal actions.").

It is also fatally vague, as an injunction against allowing "contaminat[ion]" does not inform Abbott which minor irregularities in its manufacturing process are permissible, and which might subject it to a finding of contempt. *See id.* at 819-20 (holding injunction inappropriately vague "because it encumber[ed] the . . . defendants with determining" what specific conduct it

-7-

prohibited); *Russell v. Belton*, 8 F.3d 23, 1993 WL 456415, at *1 (5th Cir. Oct. 29, 1993) ("[Plaintiff's] claim for injunctive relief 'to deter any future negligence[ ] by defendants' is vague, uncertain, and so far beyond the equity powers of the Court that it is absurd.").

Moreover, the injunction requires not just that Abbott avoid *actual* contamination, but furthermore, that it "put in place *sufficient precautions*" to ensure product safety. As an initial matter, "mandatory injunction[s]" affirmatively requiring a party to take action are "particularly disfavored," and "are not granted unless extreme or very serious damage will result." *Park Village Apartment Tenants Ass'n v. Mortimer Howard Trust*, 636 F.3d 1150, 1160 (9th Cir. 2011) (emphasis added); *see also Kensington Partners v. Cordillera Ranch, Ltd.*, 544 F.2d 1233, 1243 (5th Cir. 1976) (noting that, in preliminary-injunction context, "[m]andatory" injunctions are "particularly disfavored"). In addition, what industrial design measures might be "sufficient" to acceptably eliminate any risk of unspecified future "contaminat[ion]" is anyone's guess. Lastly, with respect, it is beyond the institutional competency of the federal courts to actively oversee the manufacturing operations of one of the nation's largest corporations on an ongoing basis. *See Vavak*, slip op. at 6 ("The Court cannot grant Plaintiff's requested relief to affirmatively monitor Abbott's manufacturing practices.").

## CONCLUSION

For the reasons described above, the Court should grant Abbott judgment on the pleadings with respect to Brandner's claim for injunctive relief, or in the alternative, strike that claim from the Second Amended Complaint.

-8-

Respectfully submitted,

**ADAMS AND REESE LLP**

/s/ Margot Lilly Kramer Want
Don S. McKinney (#26685)
Margot Lilly Kramer Want (#32754)
701 Poydras Street, Suite 4500
New Orleans, Louisiana 70139
Telephone: (504) 581-3234
Facsimile: (504) 566-0210
E-Mail: don.mckinney@arlaw.com
margot.want@arlaw.com

and

William F. Cavanaugh, Jr. (*pro hac vice*)
John D. Winter (*pro hac vice*)
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036
Telephone: (212) 336-2000
Facsimile: (212) 336-2222
Email: wfcavanaugh@pbwt.com
jwinter@pbwt.com

**CERTIFICATE OF SERVICE**

I hereby certify that on July 13, 2011, a copy of the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to counsel for all parties by operation of the Court's electronic filing system.

/s/ Margot Lilly Kramer Want