## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | |
|     Products Liability Litigation | * | |
| | * | |
| This Document Relates to: | * | MDL No. 1657 |
| | * | |
|     STATE OF MONTANA, ex rel. | * | SECTION L |
|     Steve Bullock, | * | |
| | * | JUDGE ELDON E. FALLON |
|                     Plaintiff, | * | |
| | * | MAGISTRATE JUDGE |
|    versus | * | KNOWLES |
| | * | |
|     MERCK & CO., INC., | * | |
| | * | |
|                  Defendant. | * | |
| | * | |
| Case No. 2:06-cv-4032 | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## **DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF**
## **MOTION FOR JUDGMENT ON THE PLEADINGS**

i

## TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................................1

BACKGROUND ...................................................................................................................2

ARGUMENT ...................................................................................................................4

I.  PLAINTIFF'S CLAIM FOR PENALTIES FAILS AS A MATTER OF LAW UNDER THE INDIVIDUALIZED-PROOF RULE. ..........................................................5

II. PLAINTIFF'S CLAIMS ALSO FAIL BECAUSE THERE IS NO CONDUCT TO ENJOIN. ...................................................................................................................8

    A.  There Is No Conduct To Enjoin. ...............................................................8

    B.  Without A Valid Claim For Injunctive Relief, The AG Cannot Seek Penalties. ...................................................................................................12

CONCLUSION ...................................................................................................................14

## **TABLE OF AUTHORITIES**

**Page(s)**

### **FEDERAL CASES**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..................................................................................................5

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)..................................................................................................5

*Greilsheimer v. Ferber Chan & Essner*,
    No. 98 Civ. 2553 (LMM), 1998 U.S. Dist. LEXIS 13445
    (S.D.N.Y. Aug. 27, 1998) .......................................................................................11

*Moore v. Dallas Independent School District*,
    370 F. App'x 455 (5th Cir. 2010) .............................................................................4

*In re Saturn L-Series Timing Chain Products Liability Litigation*,
    MDL No. 1920, No. 8:07cv298 & 8:08cv79, 2008 U.S. Dist. LEXIS 109978
    (D. Neb. Nov. 7, 2008) .....................................................................................11, 12

*In re Zyprexa Products Liability Litigation*,
    671 F. Supp. 2d 397 (E.D.N.Y. 2009) ...............................................................7, 8, 9

### **STATE CASES**

*Bouma v. Bynum Irrigation District*,
    364 P.2d 47 (Mont. 1961).......................................................................................11

*Clark Fork Paving, Inc. v. Atlas Concrete & Paving*,
    582 P.2d 779 (Mont. 1978).......................................................................................6

*In re Doody*,
    No. 01-539, 2002 Mont. LEXIS 196 (Mont. May 9, 2002)......................................6

*Evans v. Teakettle Realty*,
    736 P.2d 472 (Mont. 1987)....................................................................................6, 9

*Mustang Holdings, LLC v. Zaveta*,
    143 P.3d 456 (Mont. 2006).....................................................................................10

*State ex rel. Babbitt v. Goodyear Tire & Rubber Co.*,
    626 P.2d 1115 (Ariz. Ct. App. 1981)......................................................................16

*State ex rel. Brady v. Pettinaro Enterprises*,
    870 A.2d 513 (Del. Ch. 2005) ..........................................................................................14

*State v. Philip Morris, Inc.*,
    No. CDV-97-306, 1998 Mont. Dist. LEXIS 732 (Mont. Dist. Ct. Sept. 22, 1998) ...........14

## **STATE STATUTES**

Mont. Code Ann. § 1-2-109 (2012) ................................................................................................6

Mont. Code Ann. § 30-14-111 .....................................................................................................10

Mont. Code Ann. § 30-14-133(3) ...................................................................................................9

Mont. Code Ann. § 30-14-142 ...........................................................................................2, 5, 14

**INTRODUCTION**

Plaintiff, the State of Montana, by and through its Attorney General Steve Bullock, has sued Merck, alleging that it violated the Montana Unfair Trade Practices and Consumer Protection Act ("MCPA"), in connection with the marketing and sale of Vioxx, a prescription drug that was sold in the United States between 1999 and 2004. Plaintiff seeks civil penalties of $5,000 "for each violation" of the MCPA, as well as costs and attorneys' fees. In addition, in 2012, Plaintiff added an allegation to its Complaint that an injunction is necessary to prevent Merck from engaging in "further acts in violation" of the MCPA.

Plaintiff's MCPA claim fails as a matter of law for at least two reasons. *First*, Plaintiff's request for civil penalties is barred by the individualized-proof rule. The imposition of penalties is subject to the discretion of the Court, and as Judge Weinstein explained under a similar statute in another case involving allegedly improper marketing of a prescription drug, the propriety and amount of a penalty depend on facts specific to each patient, doctor and alleged violation. Because it would be impossible to undertake such an inquiry in a case alleging misconduct in connection with every single Vioxx prescription in the State of Montana, the State's claims fail as a matter of law.

*Second*, Plaintiff's claim for injunctive relief fails because there is no conduct to enjoin. Fundamental to a claim for injunctive relief is at least some threat of future misconduct. But no evidence of such a threat exists here – a fact underscored by the State's failure to request injunctive relief for the first seven years this lawsuit was pending. Although the State added such a request in 2012, Vioxx had been off the market for nearly eight years by that time, and Merck had long ago settled with dozens of other states and agreed under those settlements to refrain from the sort of conduct alleged by Plaintiff here. Not surprisingly, even in the Amended Complaint, Plaintiff does not attempt to allege that Merck will ever violate the MCPA. Thus,

1

Plaintiff's claim for injunctive relief must also be dismissed. And because the MCPA makes clear that penalties may only be sought pursuant to a proper claim for injunctive relief, the failure of Plaintiff's claims for injunctive relief further dooms its claim for penalties.

## BACKGROUND

Vioxx is a prescription nonsteroidal anti-inflammatory and pain-relief drug ("NSAID") manufactured by Merck for use in the treatment of arthritis and other acute pain. (*See* FAC ¶¶ 1-2.) The sale and distribution of Vioxx were approved by the United States Food & Drug Administration ("FDA") on May 20, 1999, and Vioxx was available in the U.S. from May 1999 until it was voluntarily withdrawn from the market in September 2004. (*See id.* ¶¶ 42; 46-47.)

Montana's Attorney General (or "AG") commenced suit on behalf of the State on December 28, 2005, asserting claims for deceit, unjust enrichment, and restitution, as well as alleged violations of the MCPA and the Montana Food, Drug, and Cosmetic Act ("MFDCA"). (*See* Compl. ¶¶ 64-86.) Plaintiff sought restitutionary relief that "would restore the State of Montana and the citizens of the State of Montana [to] the financial position that they would have enjoyed absent Merck's false representations"; disgorgement of "all unjust profits from the sale of Vioxx to the citizens of the State of Montana and the State of Montana"; and civil penalties of $10,000 for each alleged violation of the MCPA, as well as costs and attorneys' fees. (*See id.*, Prayer for Relief.) According to Plaintiff, Merck violated the MCPA by "misrepresent[ing] and/or omitt[ing] material facts about the safety and effectiveness of Vioxx" and causing "the State, its citizens, corporations, and business entities [to] have been injured and suffered damages[.]" (*See id.* ¶¶ 74-79.) Although a claim for injunctive relief is a prerequisite for an AG-initiated suit under the MCPA, *see* Mont. Code Ann. § 30-14-142, the AG's Complaint did not include a request or claim for injunctive relief. (*See generally id.*)

On March 1, 2006, Merck removed the case to federal court, citing the existence of federal question jurisdiction because Plaintiff's claims rested on the interpretation of federal Medicaid law and federal regulations promulgated under the Food, Drug and Cosmetic Act ("FDCA"). The case was transferred to this Court on August 18, 2006. (Montana ECF No. 1.)

Merck settled consumer-protection suits brought by 30 states in July 2008. As part of this multistate settlement agreement, Merck did not "admit any wrongdoing," but voluntarily agreed not to "make any written or oral claim that is false, misleading or deceptive regarding any FDA-approved Merck Product," and also agreed to various other forms of injunctive relief related to, *inter alia*, clinical testing and continuing medical education. (*See, e.g.*, Stipulated Gen. J. ¶¶ 2(a), 4, *State v. Merck & Co.*, No. 08C16426 (Or. Cir. Ct. Marion Cnty. May 20, 2008) (attached as Ex. 1).) In addition, Merck submitted itself to the enforcement powers of those states that are parties to the agreement. (*See id.* ¶ 26 ("The State may assert any claim that Merck has violated this Judgment in a separate civil action to enforce this judgment, or to seek any other relief afforded by law[.]").)

Three years later, Merck engaged in a settlement process with representatives of the National Association of Medicaid Fraud Units ("NAMFCU") to resolve outstanding AG-sponsored litigation involving Vioxx. The NAMFCU settlement, which focused mostly on Medicaid-related claims, ultimately resulted in a payment by Merck of $915 million to settle Vioxx-related claims with the federal government and 42 states in November 2011.

Montana declined to participate in either of these settlements. Instead, it retained outside counsel and – nearly eight years after Vioxx was withdrawn from the market – filed a First Amended Complaint that added a request for injunctive relief. (FAC, Prayer for Relief.) The gravamen of Plaintiff's claims is that "Merck misleadingly claimed that Vioxx was safe and was

as, or more, effective than traditional NSAIDs in treating chronic pain, that it did not cause or contribute to any cardiovascular problem greater than any other NSAIDs, and that Vioxx use should not be limited to patients with gastrointestinal problems who could not use other NSAIDs." (*Id.* ¶ 94.) The amended pleading abandoned the State's MFDCA, deceit, unjust enrichment and restitution claims. (*Id.*, Prayer for Relief.) Plaintiff also no longer seeks restitution or disgorgement of profits, but continues to seek costs and attorneys' fees, and also asks for civil penalties of $5,000 for each separate violation of the MCPA. (*Id.*)

## ARGUMENT

Rule 12(c) provides that "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Where, as here, a Rule 12(c) motion is premised on a plaintiff's failure to state a claim for which relief can be granted, a court should analyze the motion under the same standard as a Rule 12(b)(6) motion to dismiss. *Moore v. Dallas Indep. Sch. Dist.*, 370 F. App'x 455, 457 (5th Cir. 2010). In order to survive a motion for judgment on the pleadings, "a plaintiff must plead enough facts to state a claim to relief that is plausible on its face." *Id.* (internal quotation marks and citation omitted). The "plausibility standard" requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rather, a complaint must contain "[f]actual allegations . . . [that] raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Here, Merck is entitled to judgment on the pleadings for two reasons. ***First***, Plaintiff's claims for civil penalties fail under the individualized-proof rule because the amount of any penalty must be decided on the basis of each implicated transaction, which is not feasible in a single, aggregate proceeding. ***Second***, Plaintiff's claim for injunctive relief fails because Vioxx had been off the market for nearly eight years before the State ever sought injunctive relief,

leaving no alleged threat of future misconduct. And because a viable claim for injunctive relief is a necessary predicate for obtaining civil penalties under the MCPA, the State's claims for civil penalties and attorneys' fees fail for this reason as well.

### I. PLAINTIFF'S CLAIM FOR PENALTIES FAILS AS A MATTER OF LAW UNDER THE INDIVIDUALIZED-PROOF RULE.

First, Plaintiff's request for civil penalties fails under the individualized-proof rule because any award of penalties under the statute is discretionary, necessitating individualized inquiries.

The MCPA's statutory language currently provides that "if the court finds that a person is willfully using or has willfully used a method, act, or practice declared unlawful" under the MCPA, the department "***may*** recover . . . a civil fine of not more than $10,000 for each violation." Mont. Code Ann. § 30-14-142(a) (emphasis added). Before April 14, 2003, the statute provided that the department "***may*** recover . . . a civil fine of not more than $1,000 for each violation." *Id.* § 30-14-142(a) (1999) (emphasis added).[1]

Montana courts "have long held that use of the word 'may' denotes a permissive or discretionary choice." *In re Doody*, No. 01-539, 2002 Mont. LEXIS 196, at *10-11 (Mont. May 9, 2002); *see also Clark Fork Paving, Inc. v. Atlas Concrete & Paving*, 582 P.2d 779, 781 (Mont. 1978) ("The word 'may' found in the [venue statute] is to be read as a permissive word, and not as the imperative 'must'"); *cf. also Evans v. Teakettle Realty*, 736 P.2d 472, 474 (Mont. 1987) (explaining that the attorneys' fee provision of the MCPA, which likewise provides that a court

---

[1] Plaintiff's request for civil penalties of $10,000 "for each violation" of the MCPA fails to the extent it is premised on conduct prior to April 2003. (FAC, Prayer for Relief.) As noted in the text, the statute prior to April 14, 2003 set a ceiling of $1,000 per violation. Under Montana law, legislation is not "retroactive unless expressly so declared." Mont. Code Ann. § 1-2-109 (2012). The MCPA was amended in 2003 to increase the ceiling for civil penalties to $10,000, *see* 2003 Mont. Laws, ch. 322, § 6, and it contains no express declaration of retroactivity. Thus, the maximum penalty award Plaintiff may receive for alleged violations prior to April 14, 2003 is $1,000 per violation.

5

"may" award fees, vests the court with "discretion" to deny fees, and refusing to reverse the trial court's denial of a fee award on the basis of the plaintiff's contributory negligence).  Thus, even where the court determines that a defendant's conduct is "willful," the decision to award penalties – and, if awarded, the amount of each penalty – is a matter of discretion.

In a case like this one – involving allegations of "systematic[]" and repeated violations in connection with the marketing of a prescription drug over the course of several years (FAC ¶ 97) – it is simply not feasible, in one trial, to undertake the necessary individualized inquiries to determine what penalties are proper, as other courts have held.  The case of *In re Zyprexa Products Liability Litigation*, 671 F. Supp. 2d 397, 453 (E.D.N.Y. 2009), is instructive in this regard.  In *Zyprexa*, Mississippi brought suit against Eli Lilly, alleging that the company engaged in illegal off-label promotion of Zyprexa and failed to warn about the drug's side effects.  *Id.* at 401.  The state asserted claims under, among other things, the Mississippi Consumer Protection Act.  *Id.*  The state sought an award of civil penalties under the Act, which, like the MCPA, provides for discretionary penalties in cases of willful violations.  *See id.* at 458 (explaining that the Mississippi Consumer Protection Act authorizes "a civil penalty in a sum not to exceed Ten Thousand Dollars ($10,000.00) for each . . . willful violation") (internal quotation marks and citation omitted).  The state requested that the court impose a penalty for "each of almost a million estimated Zyprexa prescriptions in Mississippi."  *Id.*

Judge Weinstein found that an award of penalties was barred under what he called the "individualized-proof rule" – i.e., the requirement that each penalty be assessed based on the particular facts of each proven violation.  As the court explained, the trial court "is invested with discretion to determine the appropriate amount of the penalty with respect to each violation, whether the maximum of $10,000 or some smaller amount."  *Id.*  Although the Mississippi

6

statute did not articulate the specific factors a court should apply when evaluating a request for civil penalties, Judge Weinstein held that the court would need to assess:

> a number of issues as they bear on each Zyprexa prescription, including but not limited to: whether the prescription was for an on-label or off-label use; whether the prescription was medically necessary; whether the patient received any benefit from Zyprexa; whether and the extent to which the patient experienced any of Zyprexa's potential metabolic side effects; the information about Zyprexa available to the medical community at the time the prescription was written; and the times of the various alleged instances of misconduct by Lilly, and whether and to what extent each instance may have impacted the prescription in question.

*Id.* at 458-59. "Due to the nature of the alleged misconduct and injuries in the instant case, and in light of the discretion invested in the court to set the amount of the CPA penalty, proper assessment of the claimed penalties would require individualized consideration of the circumstances of each prescription alleged to be in violation of the statute." *Id.* at 459. Thus, determining the propriety of civil penalties on a "per-violation basis" would be "impractical and beyond the resources of any court." *Id.* Based on this reasoning, the court granted summary judgment in favor of the defendant with respect to the claim for statutory penalties. *Id.* (*See also* Minute Order at 2, ECF No. 64,279 (Feb. 28, 2013) ("[T]he Court notes that the penalties that Mississippi seeks under the Mississippi Consumer Protection Act may be discretionary, which would mean that information relating to causation could help to guide the Court's exercise of its discretion in issuing penalties.") (citing *Zyprexa*, 671 F. Supp. 2d at 458-59).)

Here, too, determining whether penalties are justified under the MCPA – and the amount of any penalties awarded – would require the Court to consider a range of varying factual considerations: e.g., what effect Merck's representations about Vioxx had on each Vioxx user and his or her doctor's prescribing decision; whether each Vioxx prescription was medically necessary; and how much medical benefit each individual received from the medication. As explained in *Zyprexa*, such considerations would overwhelm the resources of the Court and

7

transform this action into a multitude of mini-trials on the issue of penalties. Put simply, requiring the Court to undertake such an endeavor would be "impractical and beyond [its] resources." *Zyprexa*, 671 F. Supp. 2d at 459. Thus, Plaintiff's claims for civil penalties necessarily fail.[2]

## II. PLAINTIFF'S CLAIMS ALSO FAIL BECAUSE THERE IS NO CONDUCT TO ENJOIN.

Plaintiff's claims fail for the additional reason that Plaintiff has not alleged any ongoing or likely future misconduct and thus cannot obtain injunctive relief. Moreover, the failure of Plaintiff's claim for injunctive relief further dooms its claim for penalties.

### A. There Is No Conduct To Enjoin.

The MCPA states that "[w]henever the department has reason to believe that a person is using, has used, or is about to knowingly use any method, act, or practice declared by 30-14-103 to be unlawful and that proceeding would be in the public interest, the department may bring an action in the name of the state against the person to restrain by temporary or permanent injunction or temporary restraining order the use of the unlawful method, act, or practice[.]" Mont. Code Ann. § 30-14-111.

---

[2]   Montana precedent makes clear that *Zyprexa*'s fact-intensive approach to exercising discretion would apply to an award of penalties under the MCPA. In *Evans v. Teakettle Realty*, the plaintiffs sued a realty company, alleging that their house was rendered uninhabitable by a spill from a septic tank under the house that had not been disclosed. 736 P.2d at 473. Plaintiffs sued for negligence and alleged violations of the MCPA, and the jury returned a verdict finding $28,000 in damages and apportioning 50% of the negligence to the plaintiffs and 50% to the defendant. *Id.* The plaintiffs sought attorneys' fees under a provision of the MCPA, which provides – like the penalty provision – that "the court *may* award the prevailing party reasonable attorney fees incurred in prosecuting or defending the action," Mont. Code Ann. § 30-14-133(3) (emphasis added), but the district court denied the request, reasoning that "'[p]laintiffs were equally negligent in the events leading to their action, and it would be patently unfair to award them attorney fees in that situation,'" 736 P.2d at 474 (citation omitted). The Montana Supreme Court affirmed. Though it noted that no transcripts had been filed in the appeal, preventing review of the factual basis of the district court's ruling, it expressed no concern over the rationale for denying fees, concluding that it would "not interfere with the District Court's discretion in denying attorney fees to the Evans[es]." *Id.* In other words, the court held, case-specific factors properly inform a trial court's determination of whether to award a discretionary remedy.

8

Plaintiff's claim for injunctive relief fails because there is nothing to enjoin. The allegations of unlawful conduct in the Amended Complaint relate to Merck's "advertising and marketing campaign," which allegedly "sought to create the false image, impression, and belief that Vioxx was safe for adults and had fewer side-effects and adverse reactions than other pain relief medications." (FAC ¶ 92.) But Vioxx has been off the market since 2004 – over eight years ago, and nearly eight years before the AG first sought injunctive relief – and the State does not allege that Vioxx would ever be returned to the market or that Merck's alleged conduct could ever recur.

Montana courts have long made clear that an injunction "will not issue to restrain an act already committed." *Mustang Holdings, LLC v. Zaveta*, 143 P.3d 456, 457-58 (Mont. 2006) (internal quotation marks and citation omitted) (reversing grant of preliminary injunction where party sought statutorily created injunctive relief after property at issue had been destroyed and "the entire injury" was therefore "in the past"). This is so because an "[i]njunction is not an appropriate remedy to procure relief for past injuries, it is to afford preventive relief only." *Id.* (internal quotation marks and citation omitted). Thus, "'[i]f . . . there is no reasonable probability that past acts complained of will recur, [the] injunctive relief will be denied.'" *Id.* (quoting *Bouma v. Bynum Irrigation Dist.*, 364 P.2d 47, 49 (Mont. 1961)).[3] Other courts are in accord. *See, e.g.*, *In re Saturn L-Series Timing Chain Prods. Liab. Litig.*, MDL No. 1920, Nos. 8:07cv298; 8:08cv79, 2008 U.S. Dist. LEXIS 109978, at *63 (D. Neb. Nov. 7, 2008) (denying request for injunctive relief under California's Unfair Competition Law because "[d]efendants no longer engage in the behavior that [plaintiff] would have this Court enjoin . . . [t]his Court cannot

---

[3]  Montana's decisions make clear that the same standards that govern common-law injunctive relief apply to statutorily authorized injunctive relief. *See, e.g.*, *Dicken v. Shaw*, 841 P.2d 1126, 1129-30 (Mont. 1992) (affirming denial of statutorily authorized injunctive relief because the plaintiff had not shown irreparable harm and had an adequate remedy at law in the form of damages).

9

award injunctive relief for conduct that no longer exists") (internal quotation marks and citation omitted); *Greilsheimer v. Ferber Chan & Essner*, No. 98 Civ. 2553 (LMM), 1998 U.S. Dist. LEXIS 13445, at *7-8 (S.D.N.Y. Aug. 27, 1998) (declining to issue injunctive relief under the Lanham Act where "prior to the initiation of this action, defendants agreed to cease using plaintiff's name when answering the phones and on all firm stationary and documents . . . [and] [i]t is illogical to assume that defendants would go through the significant trouble and expense" of misusing the plaintiff's name at some point in the future).

More specifically, courts have rejected injunctive relief where – as here – a complaint was filed after an allegedly defective product had been recalled, belying any claim that the alleged misconduct could recur in the future. *See, e.g.*, *Brandner v. Abbott Labs., Inc.*, 10-3242, 2012 WL 27696, at *3 (E.D. La. Jan. 5, 2012) (dismissing claim for injunctive relief that was filed shortly after the allegedly defective infant formula product had been recalled because, *inter alia*, "[c]omplaints of past harm do not sufficiently allege the likelihood of the immediate threat of future harm"); *Vavak v. Abbott Labs., Inc.*, No. 10-1995 JVS (RZx), 2011 U.S. Dist. LEXIS 111408, at *12 (C.D. Cal. June 17, 2011) (claim for injunctive relief failed as a matter of law because the allegedly defective infant-formula product had been recalled before the plaintiff filed suit, and "the plaintiff could not allege 'any real or immediate threat that [she] will be wronged again'"); *see also In re Saturn L-Series Timing Chain Prods. Liab. Litig.*, 2008 U.S. Dist. LEXIS 109978, at *63 (rejecting claim for injunctive relief under California's Unfair Competition Law that was filed after defendant "ceased making and marketing the [allegedly defective] vehicles"; the "[c]ourt cannot award injunctive relief for conduct that no longer exists").

For example, in *Brandner*, 2012 WL 27696, at *1, a parent brought suit against Abbott after learning that the Similac infant-formula product she purchased for her child contained

beetles. The plaintiff filed her complaint seeking injunctive relief the day after Abbott announced a nationwide recall of the product. Compl., ECF No. 1, *Brandner v. Abbott Labs., Inc.*, No. 2:10-cv-03242 (E.D. La. July 13, 2011) (attached as Ex. 2). In moving for judgment on the pleadings, the defendant argued that "[t]he Second Amended Complaint does not contain a single factual allegation that . . . demonstrates an objective likelihood that [plaintiff] will be personally harmed by Abbott" in the future. *See* Mot. for J. on the Pleadings at 5, ECF No. 91, *Brandner v. Abbott Labs., Inc.*, No. 2:10-cv-03242 (E.D. La. July 13, 2011) (attached as Ex. 3). It further emphasized that plaintiff "does not claim that Abbott continues to manufacture Similac that contains beetles" or that she intends "to purchase Similac for her child at any point" in the future. *Id.* The court agreed, recognizing that "the only harm [plaintiff] alleges in the complaint is the past harm she suffered when she learned that her child had ingested the allegedly contaminated Similac." *Brandner*, 2012 WL 27696, at *3. According to the court, "[c]omplaints of past harm do not sufficiently allege the likelihood of the immediate threat of future harm." *Id.* The court thus dismissed plaintiff's claim for injunctive relief.

This case calls for the same result. As noted above, Plaintiff brought the present suit against Merck *after* Vioxx had been voluntarily withdrawn from the market. Moreover, Plaintiff's Complaint does not allege that Merck has plans to return the drug to the market – or that the FDA would permit it to do so. Further, as previously explained, Merck has since paid substantial sums of money in reaching a number of resolutions that already purport to prohibit it from engaging in the sort of conduct that is alleged by the AG in this case.[4] In short, Plaintiff's request for injunctive relief consists entirely of "complaints of past harm[,]" which "do not sufficiently allege the likelihood of the immediate threat of future harm" necessary for injunctive

---

[4] Although Montana was not a signatory to the multistate agreement, it nonetheless benefits from the injunctive relief obtained by the states through that settlement agreement.

11

1125316v1

relief. *Brandner*, 2012 WL 27696, at *3. Accordingly, Plaintiff's claim for injunctive relief is not legally viable.

### B. Without A Valid Claim For Injunctive Relief, The AG Cannot Seek Penalties.

The failure of Plaintiff's claim for injunctive relief further dooms its claim for penalties because a valid claim for injunctive relief under the MCPA is a fundamental predicate for other relief. Specifically, although the MCPA authorizes a court to award penalties where a defendant has willfully used "a method, act, or practice declared unlawful by 30-14-103," such penalties may be awarded only "upon [the department's] petition to the court" in an "action brought under 30-14-111" – i.e., ***one for injunctive relief***. *See* Mont. Code Ann. § 30-14-142(a); *State v. Philip Morris, Inc.*, No. CDV-97-306, 1998 Mont. Dist. LEXIS 732, at *19-20 (Mont. Dist. Ct. Sept. 22, 1998) ("Under Section 30-14-111, MCA, the State can bring an action to enjoin violations of the Consumer Protection Act if such a proceeding would be in 'the public interest.' If the Court finds that a person has willfully engaged in an unfair or deceptive practice, the State can recover a civil penalty[.]"). As one court explained in construing a similar statute, if the State's claim for injunctive relief fails, so too does its claim for any other relief. *See, e.g.*, *State ex rel. Brady v. Pettinaro Enters.*, 870 A.2d 513, 537 (Del. Ch. 2005) (construing analogous consumer fraud statute under Delaware law; "the lack of a tenable claim for injunctive relief under the Deceptive Trade Practices Act prevents the State from proceeding under that Act for other relief here").

In *Pettinaro*, Delaware's Attorney General sought an injunction under the Delaware Deceptive Trade Practices Act ("DTPA") and other consumer-protection laws stemming from the defendant's allegedly fraudulent conduct in promising condominium residents that they would have access to a clubhouse adjacent to their condominium building. 870 A.2d at 517-18. The attorney general brought suit four years after the defendant's last alleged deceptive act

12

regarding the clubhouse. *Id.* at 536. The attorney general sought "[i]njunctive relief prohibiting [defendant] from violating the Consumer Fraud Act, the Deceptive Trade Practices Act, and the Health Spa Regulation in the future." *Id.* at 523.

The court dismissed the claim for injunctive relief, holding that "[t]he mere fact that the Attorney General has asked for an injunction does not suffice to state a claim within this court's equitable jurisdiction." *Id.* at 536. As the court explained, "a claim for injunctive relief must be supported by the allegation of facts that 'create a reasonable apprehension of a future wrong.'" *Id.* (citation omitted). Because the complained-of conduct had long ceased by the time the attorney general commenced his lawsuit, the claim for injunctive relief was based simply on an "unsubstantiated fear that a legal duty may be breached in an uncertain future." *Id.* Thus, the attorney general's claim for injunctive relief was nothing more than a request for compliance with "duly enacted statutes that [the defendant] is already duty-bound to honor." *Id.* To order an injunction under these circumstances, the court held, would "trivialize[] equity's role and implicitly suggest that the most powerful expression of a societal prohibition – an express statute forbidding conduct – is somehow insufficient without an 'us, too' from the judicial branch." *Id.* at 537. Notably, the Delaware court also concluded that lack of a viable injunctive-relief claim meant no other relief was available, either, and the court dismissed the DTPA claim in its entirety. *Id.* (explaining that "[r]ecovery under that Act is contingent upon a valid basis for injunctive relief"); *see also, e.g.*, *State ex rel. Babbitt v. Goodyear Tire & Rubber Co.*, 626 P.2d 1115, 1119 (Ariz. Ct. App. 1981) (reversing trial court's grant of injunction against tire company regarding deceptive advertising under the Arizona Consumer Fraud Act because the trial court had not put the state to its burden "to show a likelihood that the defendant will in the future engage in the conduct sought to be enjoined").

Here, as in *Pettinaro*, Plaintiff has not alleged anything that would give rise to a "reasonable apprehension of a future wrong." *Pettinaro*, 870 A.2d at 536 (internal quotation marks and citation omitted). And because a claim for injunctive relief is a necessary predicate for the award of civil penalties under the MCPA, the State's improper request for an injunction renders its corresponding claim for civil penalties legally deficient too.

## CONCLUSION

For the foregoing reasons, Merck respectfully requests that the Court grant it judgment on the pleadings.

Dated: May 3, 2013

Respectfully submitted,

*/s/ Dorothy H. Wimberly*
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, LA 70130

Douglas R. Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth St., N.W.
Washington, DC 20005

John H. Beisner
Jessica Davidson Miller
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
1440 New York Avenue, N.W.
Washington, DC 20005

ATTORNEYS FOR MERCK SHARP &
DOHME CORP.

14

1125316v1

**CERTIFICATE OF SERVICE**

I also hereby certify that the above and foregoing Memorandum in Support of Motion for Judgment on the Pleadings has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail, upon Liaison Counsel Ann Oldfather by e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 3rd day of May, 2013.

/s/ Dorothy H. Wimberly
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361
dwimberly@stonepigman.com

Defendants' Liaison Counsel