**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In re: VIOXX | * | |
|     Products Liability Litigation | * | |
| | * | |
| This Document Relates to: | * | MDL No. 1657 |
| | * | |
| State of Utah, | * | SECTION L |
| | * | |
|               Plaintiff, | * | JUDGE ELDON E. FALLON |
| | * | |
|    versus | * | MAGISTRATE JUDGE |
| | * | KNOWLES |
| Merck Sharp & Dohme Corp., | * | |
| | * | |
|              Defendant. | * | |
| | * | |
| Case No. 2:06-cv-09336 | * | |
| | * | |
| * * * * * * * * * * * * * * * * * * * * * * * | * | |

**<u>DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF</u>**
**<u>MOTION FOR JUDGMENT ON THE PLEADINGS</u>**

## <u>TABLE OF CONTENTS</u>

Page

BACKGROUND ...................................................................................................................2

ARGUMENT .......................................................................................................................6

I.      PLAINTIFF'S CLAIMS ARE TIME-BARRED .................................................6

II.     PLAINTIFF'S CLAIMS FAIL UNDER THE INDIVIDUALIZED-PROOF
        RULE. ...................................................................................................................12

        A.      Plaintiff's Causal Theories Are Not Viable Under The Individualized-
                Proof Rule. ................................................................................................12

        B.      Plaintiff's Claim For Penalties Is Barred By The Individualized-Proof
                Rule. ..........................................................................................................18

III.    PLAINTIFF HAS, IN ANY EVENT, FAILED TO ALLEGE A VIOLATION OF
        THE UFCA. ..........................................................................................................20

        A.      Plaintiff's Claim Under Section 26-20-7(1) (1987) Fails Because The
                Complaint Does Not Allege That Merck Submitted A False Claim – Or
                Caused Someone Else To. ..........................................................................21

        B.      Sections 26-20-7(2)(b) (1987) And 26-20-7(2)(d) (1987) Do Not Apply
                Because Merck Did Not File A Claim For A Medical Benefit. ...................22

        C.      Section 26-20-7(2)(j) (1987) Does Not Apply Because Plaintiff's Claims
                Are Preempted And Because The Vioxx Label Is Not A Document Or
                Report Under The Statute. .........................................................................23

        D.      Plaintiff's Claim Under Section 26-20-7(2)(k) (1987) Fails Because Merck
                Has Not Engaged In Any Unlawful Act And It Has Not Retained Any
                Payments From Utah. ................................................................................25

        E.      Plaintiff's Claim Under Section 26-20-6 (1987) Also Fails As A Matter Of
                Law. ..........................................................................................................26

CONCLUSION ...................................................................................................................29

i

## <u>TABLE OF AUTHORITIES</u>

<u>PAGE(S)</u>

### FEDERAL CASES

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009).............................................................................................6

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007).............................................................................................6

*Buckman Co. v. Plaintiffs' Legal Committee,*
    531 U.S. 341 (2001).............................................................................2, 12, 24

*Employer Teamsters-Local Nos. 175/505 Health & Welfare Trust Fund*
    *v. Bristol Myers Squibb Co.,*
    No. 3:12-0587, 2013 U.S. Dist. LEXIS 21589 (S.D. W. Va. Jan. 29, 2013).....................13

*Gabelli v. SEC,*
    133 S. Ct. 1216 (2013).......................................................................................10

*Garcia v. Wyeth-Ayerst Labs.,*
    385 F.3d 961 (6th Cir. 2004) ............................................................................24

*Garrett v. Prime Transport, Inc.,*
    No. 4:10-CV-122-A, 2010 U.S. Dist. LEXIS 46731 (N.D. Tex. May 11, 2010).............11

*Grange v. Mylan Labs., Inc.,*
    No. 1:07-CV-107 TC, 2008 U.S. Dist. LEXIS 92460 (D. Utah Oct. 30, 2008).........24, 25

*Hilliard v. Ferguson,*
    30 F.3d 649 (5th Cir. 1994) ..............................................................................28

*INS v. National Center for Immigrants' Rights, Inc.,*
    502 U.S. 183 (1991)...........................................................................................23

*Lofton v. McNeil Consumer & Specialty Pharmaceuticals,*
    672 F.3d 372 (5th Cir. 2012) ............................................................................12

*Moore v. Dallas Independent School District,*
    370 F. App'x 455 (5th Cir. 2010) ......................................................................6

*Pennsylvania Employees Benefit Trust Fund v. Astrazeneca Pharm. LP,*
    No. 6:09-cv-5003, 2009 WL 2231686 (M.D. Fla. July 20, 2009).....................17

*Rodriguez v. United States Bank National Association,*
    No. C, 12-00989 WHA 2012 U.S. Dist. LEXIS 77228 (N.D. Cal. June 4, 2012).............11

ii

*LMB Inc. v. Lard Oil Co.*,
    No. 97-3817 SECTION "L" (3),
    1998 U.S. Dist. LEXIS 10112 (E.D. La. July 6, 1998).....................................................11

*Sarantapoulas v. Recontrust Co.*,
    No. C 12-0564 PJH, 2012 U.S. Dist. LEXIS 55351 (N.D. Cal. Apr. 19, 2012)...............11

*In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*,
    No. 2:06-cv-5774 (SRC), 2010 U.S. Dist. LEXIS 56621 (D.N.J. June 9, 2010) .............13

*Sheker v. Grimes*,
    No. 94-6312, 1995 U.S. App. LEXIS 13722 (10th Cir. June 5, 1995).............................24

*Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.*,
    171 F.3d 912 (3d Cir. 1999)...........................................................................................16

*Truddle v. Wyeth, LLC*,
    No. 2:11-CV-00207-GHD-SAA, 2012 U.S. Dist. LEXIS 114019
    (N.D. Miss. Aug. 14, 2012) ..........................................................................................12

*United Food & Commercial Workers Central Pennsylvania & Regional Health & Welfare Fund v. Amgen, Inc.*,
    400 F. App'x 255 (9th Cir. 2010) ..................................................................................13

*United States v. Huron Consulting Grp., Inc.*,
    No. 09 Civ 1800 (JSR), 2013 U.S. Dist. LEXIS 32477 (S.D.N.Y. Mar. 5, 2013) ...........22

*United States ex rel. Atkins v. McInteer*,
    345 F. Supp. 2d 1302 (N.D. Ala. 2004).........................................................................20

*United States ex rel. Bauchwitz v. Holloman*,
    671 F. Supp. 2d 674 (E.D. Pa. 2009) ..............................................................................9

*United States ex rel. Digital Healthcare, Inc. v. Affiliated Computer Services, Inc.*,
    778 F. Supp. 2d 37 (D.D.C. 2011) .................................................................................26

*United States ex rel. Godfrey v. KBR, Inc.*,
    360 F. App'x 407 (4th Cir. 2010) ..................................................................................26

*United States ex rel. Hockett v. Columbia/HCA Healthcare Corp.*,
    498 F. Supp. 2d 25 (D.D.C. 2007) .................................................................................21

*United States ex rel. Milam v. Regents of University of California*,
    912 F. Supp. 868 (D. Md. 1995) ....................................................................................10

*United States ex rel. Phillips v. L-3 Communications Integrated, System, L.P.*,
    No. 3:10-CV-1784-L, 2012 U.S. Dist. LEXIS 121272
    (N.D. Tex. Aug. 24, 2012) .......................................................................................26, 27

iii

*United States ex rel. Polansky v. Pfizer, Inc.*,
No. 04-cv-0704 (ERK), 2009 U.S. Dist. LEXIS 43438
(E.D.N.Y. May 22, 2009) ..................................................................................22

*United States ex rel. Ramadoss v. Caremark Inc.*,
586 F. Supp. 2d 668 (W.D. Tex. 2008)...............................................................20

*United States ex rel. Sanchez v. Abuabara*,
No. 10-61673-CIV-HUCK/BANDSTRA, 2012 U.S. Dist. LEXIS 150708
(S.D. Fla. Oct. 19, 2012) ..................................................................................28

*United States ex rel. Weinberger v. Equifax, Inc.*,
557 F.2d 456 (5th Cir. 1977) ............................................................................20

*United States ex rel. Woods v. Southerncare, Inc.*,
No. 3:09-CV-00313-CWR-LRA, 2013 U.S. Dist. LEXIS 46820
(S.D. Miss. Mar. 30, 2013) ...............................................................................28

*United States v. Kitsap Physicians Services*,
314 F.3d 995 (9th Cir. 2002) ............................................................................21

*United States v. Rivera*,
55 F.3d 703 (1st Cir. 1995)..................................................................................9

*United States v. Vanoosterhout*,
898 F. Supp. 25 (D.D.C. 1995) ...........................................................................9

*In re Vioxx Products Liability Litigation*,
522 F. Supp. 2d 799 (E.D. La. 2007) ................................................................10

*In re Vioxx Products Liability Litigation*,
MDL No. 1657, 2012 U.S. Dist. LEXIS 77613 (E.D. La. June 5, 2012) ..........10

*In re Vioxx Products Liability Litigation*,
MDL No. 1657, 2010 U.S. Dist. LEXIS 142767 (E.D. La. Mar. 31, 2010)........3, 4, 13, 15

*In re Zyprexa Products Liability Litigation*,
671 F. Supp. 2d 397 (E.D.N.Y. 2009) ....................................................... passim

## STATE CASES

*Colosimo v. Roman Catholic Bishop of Salt Lake City*,
156 P.3d 806 (Utah 2007) ................................................................................10

*Encon Utah, LLC v. Fluor Ames Kraemer, LLC*,
210 P.3d 263 (Utah 2009) ................................................................................24

*Harvey v. Cedar Hills City*,
227 P.3d 256 (Utah 2010) ............................................................5

*Roark v. Crabtree*,
893 P.2d 1058 (Utah 1995) ..........................................................8

*State v. Apotex Corp.*,
282 P.3d 66 (Utah 2012) ...............................................7, 8, 9, 21

## FEDERAL STATUTE AND RULE

31 U.S.C. § 3731(b)(2) .........................................................................10

Fed. R. Civ. P. 12(c) ............................................................................6

## STATE STATUTES

Utah Code Ann. § 26-20-6 ...........................................................2, 5, 26

Utah Code Ann. § 26-20-7(1) (1987) ...........................................2, 4, 21

Utah Code Ann. § 26-20-7(2) ...............................................2, 4, 5, 22, 23

Utah Code Ann. § 26-20-7(2) ...................................................................25

Utah Code Ann. § 26-20-7 .......................................................................23

Utah Code Ann. § 26-20-9.5(1) ..........................................................12, 19

Utah Code Ann. § 26-20-9.51(c)-(d) (1987) ..............................................18

Utah Code Ann. § 26-20-9.5(2)-(ii) (2007) ...............................................19

Utah Code Ann. § 26-20-15(1)-(2) (2007) ..................................................7

Utah Code Ann. § 26-20-15(2) (2007) .......................................................10

Utah Code Ann. § 78-12-29(3) (1987) ...................................................7, 10

## OTHER AUTHORITY

Fazal Khan & Justin Holloway, *Verify, Then Trust: How to Legalize Off-Label Drug Marketing*, 117 Penn St. L. Rev. 407 (2012) ...................................................22

1125320v1

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS

Plaintiff, the State of Utah, seeks to recover money the State spent on Vioxx and Vioxx-related injuries on behalf of Utah citizens through the Utah Medicaid Program. Plaintiff asserts entitlement to such relief based on alleged violations of the Utah False Claims Act ("UFCA").

Plaintiff's claims are legally invalid for a number of reasons. *First*, they are time-barred. Because Vioxx was withdrawn from the market in September 2004, the latest Plaintiff could have brought its lawsuit under the applicable one-year limitations period was September 2005. But the State did not file suit until April 2006, rendering its UFCA claims stale.

*Second*, Plaintiff's claims fail as a matter of law under the individualized-proof rule. While Plaintiff offers two causal theories of relief, neither is viable. Plaintiff first alleges that fewer doctors would have prescribed Vioxx – and the State would have therefore spent less money covering Vioxx prescriptions – but for Merck's conduct. But Plaintiff could never prevail on this theory under the individualized-proof rule given the highly individualized evidence that would be necessary to prove it. The second theory of causation – that Merck's alleged conduct caused Plaintiff to spend money on the treatment of Vioxx-related injuries sustained by Utah Medicaid beneficiaries – fails for the same reason. In order to assess this aspect of Plaintiff's claims, a jury would have to evaluate the circumstances underlying each beneficiary's alleged injury (including whether such injury was actually caused by Vioxx and not some other factor), a task that would be virtually impossible under the individualized-proof rule. And Plaintiff's request for penalties under the UFCA similarly fails under the individualized-proof rule because such recovery is subject to the discretion of the Court and would therefore implicate the same sort of individualized factors that plague Plaintiff's causal theories.

1125320v1

Finally, Plaintiff's claims also fail because Plaintiff does not allege unlawful conduct within the scope of the UFCA:

- Plaintiff's claim under Utah Code Ann. § 26-20-7(1) (1987), which bars any person from "mak[ing] or present[ing] or caus[ing] to be made or presented to an employee or officer of the state a claim for a medical benefit, knowing the claim to be false, fictitious, or fraudulent," is meritless because the State does not allege that Merck made a false claim itself or caused someone else to make a false claim.

- Plaintiff's claims under Utah Code Ann. § 26-20-7(2)(b) (1987) and Utah Code Ann. § 26-20-7(2)(d) (1987) both fail because these provisions only apply to defendants who "file a claim for a medical benefit," not to pharmaceutical manufacturers that make drugs for which claims are later filed.

- Plaintiff's claim under Utah Code Ann. § 26-20-7(2)(j) (1987), which bars any person from "falsify[ing] or alter[ing] with intent to deceive, any report or document required by state or federal law, rule, or Medicaid provider agreement," fails because: (1) any alleged misrepresentations or omissions on the Vioxx label or to the United States Food & Drug Administration ("FDA") would not have constituted a "report or document" within the scope of UFCA; and (2) allegations that Merck misled the FDA are preempted under *Buckman Co. v. Plaintiffs' Legal Committee*, 531 U.S. 341 (2001).

- Plaintiff's claim under Utah Code Ann. § 26-20-7(2)(k) (1987), which makes it unlawful to "retain any unauthorized payment as a result of acts described by" the UFCA, fails because: (1) Plaintiff has not pled viable claims of unlawful acts; and (2) Merck has never retained any payments from Utah in connection with Vioxx.

- Plaintiff's claim under Utah Code Ann. § 26-20-6, which bars conspiracies to violate the UFCA, fails because: (1) all of the underlying individual claims for violations fail; and (2) Plaintiff has not adequately alleged the existence of a conspiracy – much less identified any of the supposed co-conspirators.

For all of these reasons, the Court should grant Merck judgment on the pleadings with respect to Plaintiff's claims under the UFCA.

## **BACKGROUND**

Vioxx is a prescription nonsteroidal anti-inflammatory and pain-relief drug ("NSAID") manufactured by Merck.  (*See* Am. Compl. ¶¶ 14, 15.)  On May 20, 1999, the FDA approved the sale and distribution of Vioxx; it was thereafter available in the United States until Merck

voluntarily withdrew it from the market on September 30, 2004.  (*See id.* ¶¶ 23, 191.)  The withdrawal of Vioxx prompted thousands of individual lawsuits, as well as actions brought by governmental entities shortly thereafter.  (*See, e.g.*, Compl., ECF No. 1-2, *Louisiana ex rel. Foti v. Merck  & Co.*, No. 2:05-cv-3700 (filed July 6, 2005).)

Utah filed the instant suit in Utah state court on April 28, 2006, alleging that Merck "knowingly misrepresented to the State, as well as to physicians and the general public that Vioxx was safe and efficacious" and that the "State of Utah allowed the purchase of Vioxx for Utah Medicaid recipients based upon such representations."  (Orig. Compl. ¶ 18.)  The original complaint asserted causes of action for strict liability, negligence, negligence per se, fraud, breach of warranty and violations of the Utah False Claims Act.  (*See id.* ¶¶ 21-69.)  On May 18, 2006, Merck removed the case to federal court, citing the existence of federal question jurisdiction because Plaintiff's claims rested on the interpretation of federal Medicaid law and federal regulations promulgated under the Food, Drug and Cosmetic Act ("FDCA").  The case was transferred to this Court on November 20, 2006.  (Utah ECF No. 1.)[1]

The Court tried the first government action in the Vioxx litigation – *Louisiana ex rel. Caldwell v. Merck & Co.* – in 2010.  Prior to trial, the Court granted partial summary judgment to Merck, holding that the plaintiff could not proceed to trial on any causation theory that depended upon individualized showings – i.e., that Merck's conduct caused doctors to prescribe, and patients to purchase, Vioxx.  *See In re Vioxx Prods. Liab. Litig.*, MDL No. 1657, 2010 U.S. Dist. LEXIS 142767, at *23 (E.D. La. Mar. 31, 2010).  Specifically, the Court reasoned that "[i]t is simply impossible, or close to it, to determine the individual thought process of each of the

---

[1]     Citations to "Utah ECF" are to the *Utah v. Merck Sharp & Dohme Corp.* docket, No. 2:06-cv-9336. Citations to "ECF" are to the MDL docket, No. 2:05-md-1657.

thousands of doctors and patients involved" in prescribing and purchasing prescription medications.  *Id.* at *24.

Shortly thereafter, Merck engaged in a settlement process with representatives of the National Association of Medicaid Fraud Units ("NAMFCU") to resolve outstanding AG-sponsored litigation involving Vioxx.  The NAMFCU settlement, which focused mostly on Medicaid-related claims, ultimately resulted in a payment by Merck of $915 million to settle Vioxx-related claims with the federal government and 42 states in November 2011.

Utah declined to participate in the settlement.  Instead, it filed an amended complaint on June 13, 2012, jettisoning most of its claims, but retaining its claims under the UFCA and for negligence.  (*See* Am. Compl. ¶¶ 224-244.)  Plaintiff recently abandoned its negligence claim, leaving just its cause of action under the UFCA.  (*See* Mem. in Supp. of Mot. to Dismiss Sixth Cause of Action, ECF No. 64,253 (filed Feb. 18, 2013).)  According to Plaintiff, Merck violated several provisions of the UFCA:  (1) "The State claims damages . . . arising out of claims which were presented or caused to be presented . . . for medical benefits which Merck knew to be wholly or partially 'false, fictitious or fraudulent'" (Am. Compl. ¶ 240(a) (quoting Utah Code Ann. § 26-20-7(1)); (2) "The State claims damages arising out of claims which were presented or caused to be presented for medical benefits by which Merck knowingly misrepresented the qualities . . . of . . . Vioxx" (*id.* ¶ 240(b) (citing Utah Code Ann. § 26-20-7(2)(b))); (3) "The State claims damages for the prescription of Vioxx . . . which Merck . . . knowingly filed a claim for which Merck knew to be 'not medically necessary'" (*id.* ¶ 240(c) (quoting Utah Code Ann. § 26-20-7(2)(d))); (4) "The State claims damages arising out of any effort by Merck . . . to knowingly 'falsify or alter with intent to deceive any report or document required by State or federal law, rule or Medicaid provider agreement'" (*id.* ¶ 240(d) (quoting Utah Code Ann. § 26-20-7(2)(j)));

4

and (5) "The State claims damages arising out of Merck knowingly retaining Utah Medicaid's payment for Vioxx which was unlawful as set forth above" (*id.* ¶ 240(e) (citing Utah Code Ann. § 26-20-7(2)(k))).  Plaintiff also asserts a violation based on an alleged conspiracy to defraud the state of Utah under Utah Code Ann. § 26-20-6.  (*Id.* ¶ 225.)

Based on these alleged violations, Plaintiff seeks to recover civil penalties, as well as the "[f]ull and complete restitution of all damages suffered by the State," which "would include all consequential damages (subsequent care for Utah Medicaid recipients)."  (*Id.* ¶¶ 231(d); 235(d); 238(d); *id.* Prayer for Relief.)  Plaintiff's request for monetary relief is rooted in two causal theories:  (1) Merck's alleged conduct "induce[d] medical professionals to prescribe Vioxx," which caused the State to spend money in covering more Vioxx prescriptions; and (2) Merck's alleged conduct caused the State to pay for treating Vioxx-related injuries sustained by Utah's Medicaid recipients.  (*See id.* ¶¶ 218-19, 221.)

The Utah Legislature amended the UFCA in 2007.  *See* Utah Code Ann. § 26-20-1 et seq. The complaint primarily alleges violations under the amended version of the Act, and alternatively alleges the same violations (with the exception of the conspiracy claim) under the pre-amendment version.  (*See generally* Am. Compl. ¶¶ 13, 224-40.)  Because all of the alleged conduct underlying Plaintiff's lawsuit occurred prior to the effective date of the amendments – and there is no provision authorizing retroactive application of the amendments on any issue but the length of the limitations period (which does not apply here for reasons discussed in Section I, below) – the earlier version of the UFCA governs Plaintiff's substantive claims.  *See Harvey v. Cedar Hills City*, 227 P.3d 256, 259 (Utah 2010) ("the Utah Code expressly restricts the retroactive application of legislative changes by declaring that '[n]o part of these revised statutes is retroactive, unless expressly so declared'") (quoting Utah Code Ann. § 68-3-3).  This motion

thus addresses all of the alleged violations under the pre-amendment version, even though the conspiracy claim was only alleged under the new statute.

<u>**ARGUMENT**</u>

Rule 12(c) provides that "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  Where, as here, a Rule 12(c) motion is premised on a plaintiff's failure to state a claim for which relief can be granted, a court should analyze the motion under the same standard as a Rule 12(b)(6) motion to dismiss.  *Moore v. Dallas Indep. Sch. Dist.*, 370 F. App'x 455, 457 (5th Cir. 2010).  In order to survive a motion for judgment on the pleadings, "a plaintiff must plead enough facts to state a claim to relief that is plausible on its face."  *Id.* (internal quotation marks and citation omitted).  The "plausibility standard" requires "more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Rather, a complaint must contain "[f]actual allegations . . . [that] raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Here, Plaintiff has failed to state plausible claims against Merck under the UFCA for several reasons.  ***First***, Plaintiff's claims are time-barred under the one-year statute of limitations that governs this lawsuit.  ***Second***, Plaintiff's claims also fail because they are foreclosed by the individualized-proof rule.  ***Third***, Plaintiff has not alleged a violation of the plain terms of the UFCA.

## I.    <u>PLAINTIFF'S CLAIMS ARE TIME-BARRED.</u>

Plaintiff's claims fail first and foremost because they are barred by the applicable one-year limitations period for UFCA claims.

Prior to April 30, 2007, claims brought under the UFCA were governed by a general one-year limitations statute that provides:  "An action may be brought within one year . . . upon a

6

statute . . . for a forfeiture or penalty to the state." *See* Utah Code Ann. § 78-12-29(3) (1987)[2];
*see also id.* § 26-20-9.5 (1987) (providing for penalties and treble damages to the State for
violation of the UFCA). This limitations period applies both to claims for penalties and claims
for restitution. *See State v. Apotex Corp.*, 282 P.3d 66, 81-82 (Utah 2012) (rejecting argument by
State that one-year limitations period only governed claims for penalties).

Although the Utah Legislature amended the UFCA in 2007 to add an UFCA-specific six-
year limitations period and sought to make that provision retroactive, *see* Utah Code Ann. § 26-
20-15(1)-(2) (2007) (adopting limitations period of the later of six years from a violation or three
years from the discovery of a violation), that legislation cannot operate to revive already-stale
claims, as the Utah Supreme Court recently made clear. *See Apotex*, 282 P.3d at 81. In *Apotex*,
the State had filed a complaint against seventeen pharmaceutical companies, alleging that the
defendants' drug-pricing scheme defrauded Utah's Medicaid program in violation of the UFCA.
*Id.* at 70. According to the State, the defendants had knowingly reported inflated drug prices to
third-party reporting services, thereby causing Utah Medicaid to significantly overpay in its
reimbursements to providers. *Id.* at 70-71. The defendants moved to dismiss the complaint,
arguing, *inter alia*, that the statute of limitations barred the State's UFCA claims that had expired
before the amendment extending the statute of limitations took effect. The district court agreed,
explaining that "[a]lthough the amendments [to the UFCA] expanded the limitations period and
expressly provided for the new limitations period to be retroactive . . . the amended statute of
limitations provision cannot operate to revive claims that were already time-barred under the
prior version of the statute." *Id.* at 72 (internal quotation marks and citation omitted).

---

[2]        The statute has been renumbered as § 78B-2-302 (eff. Feb. 7, 2008).

On appeal, the Utah Supreme Court affirmed, explaining that "[t]his court has consistently maintained that the defense of an expired statute of limitations is a vested right." *Id.* at 81 (internal quotation marks and citation omitted). Thus, even though the plain language of the amended UFCA applied the new limitations period to "acts occurring prior to" April 30, 2007, the court held that the defendants' "vested right" to rely on the statute of limitations as a defense precluded retroactive application of the amendment to the extent it would revive previously time-barred claims. *Id.* (internal quotation marks and citation omitted). Because any claims based on alleged conduct that had occurred prior to April 30, 2006 would have already expired before the UFCA amendments adopting a six-year limitations period became effective, those claims were stale and could not be revived. *Accord, e.g.*, *Roark v. Crabtree*, 893 P.2d 1058, 1062-63 (Utah 1995) (because defendants have "a vested right to rely" on "the defense of an expired statute of limitations," plaintiff's time-barred claims could not be revived by subsequent legislation lengthening the limitations period) (internal quotation marks and citation omitted); 51 Am. Jur. 2d Limitation of Actions § 40 (2013) ("A change in the statute of limitations, or a new statute, cannot operate to revive an action for which the limitation period has already expired, and a limitation period may not be expanded or extended so as to revive a claim that is already barred.").

Under *Apotex*'s reasoning, the one-year limitation period applies in this case because Plaintiff's claims accrued no later than September 30, 2004, when Vioxx was withdrawn from the market, and were thus stale by September 30, 2005, well before the 2007 amendment that extended the limitations period. Although Utah decisions have not expressly addressed the question when claims under the UFCA accrue, federal courts construing the analogous federal False Claims Act have held that such claims accrue when a claim is presented to the government

8

for payment.  *See, e.g.*, *United States v. Rivera*, 55 F.3d 703, 707 (1st Cir. 1995) ("We accordingly proceed on the theory that the 'violation' here was 'committed,' *see* 31 U.S.C. § 3731(b) (1982), for statute of limitation purposes, whenever Merrill Lynch can properly be said to have presented its insurance claim to the government."); *United States v. Vanoosterhout*, 898 F. Supp. 25, 29 (D.D.C. 1995) (claim under federal False Claims Act accrues when false claim is submitted to the government), *aff'd*, 96 F.3d 1491 (D.C. Cir. 1996).  In other words, "the violation is complete when the claim is made and not when paid."  *United States ex rel. Bauchwitz v. Holloman*, 671 F. Supp. 2d 674, 688, 705 (E.D. Pa. 2009) (granting defendants summary judgment because claims under FCA were time-barred).  And although it did not specifically address the issue, the Utah Supreme Court appeared to assume an identical accrual rule in *Apotex*.  *See* 282 P.3d at 72 (affirming trial court's dismissal of "UFCA **claims** that the State alleged to have **occurred** before April 30, 2006 – one year before the effective date of the UFCA amendments" – on limitations grounds) (emphases added).

Here, Plaintiff alleges "damages to the Utah Medicaid program arising out of [false] claims which were presented or caused to be presented to the State for medical benefits" as a result of Merck's alleged misrepresentations and omissions about Vioxx.  (Am. Compl. ¶¶ 13(b)-(c).)  But because Vioxx was no longer sold after September 30, 2004, as the State acknowledges (*see id.* ¶ 206), the very latest that Merck could have "caused" any claims "to be presented to the State" is September 30, 2004.  Therefore, Plaintiff's claims accrued, at the very latest, in September 2004, and the statute of limitations for any UFCA violations based on those claims lapsed in September 2005 – one year and seven months before Plaintiff brought the instant suit.

9

Nor does any discovery rule apply.[3]  The Utah Supreme Court has held that a discovery rule "operates either when provided for by statute (the 'statutory discovery rule') or when required by equity (the 'equitable discovery rule')."  *Colosimo v. Roman Catholic Bishop of Salt Lake City*, 156 P.3d 806, 810-11 (Utah 2007).  Here, there is no "statutory discovery rule" because the one-year statute of limitations governing claims Plaintiff's claims does not contain a provision authorizing a discovery rule.  *See* Utah Code Ann. § 78-12-29(3) (1987); *see also Colosimo*, 156 P.3d at 811 ("only the statute applicable to the Colosimos' fraud claim contains a discovery provision").  This omission is significant, particularly because the legislature clearly understood how to adopt a statutory discovery rule for FCA claims.  Well before 2007, the analogous federal False Claims Act provided for an equitable tolling provision by statute, which the State could have adopted at any time.  *See* 31 U.S.C. § 3731(b)(2); *see also U.S. ex rel. Milam v. Regents of Univ. of Cal.*, 912 F. Supp. 868, 882 (D. Md. 1995) (noting that a discovery rule was adopted by Congress in 1986).  And when the legislature adopted a six-year limitations period for UFCA claims in 2007, it expressly codified a discovery rule similar to the federal one.  *See* Utah Code Ann. § 26-20-15(2) (2007).  Moreover, courts have recognized that the equitable discovery rule has no place in enforcement suits like this one.  *See Gabelli v. SEC*, 133 S. Ct. 1216 (2013) (rejecting application of discovery rule in suit by Securities Exchange Commission

---

[3]        Even if a discovery rule did apply, it would make no difference.  The latest the State's claim could have accrued was September 30, 2004 – the date on which Vioxx was withdrawn from the market.  This Court has recognized as much, explaining that potential Vioxx claimants were on notice of their claims by that date given the extensive national and local media coverage associated with the withdrawal of Vioxx from the market.  *See, e.g., In re Vioxx Prods. Liab. Litig.*, 522 F. Supp. 2d 799, 810 (E.D. La. 2007) ("[T]he Court finds that, at the very latest, Puerto Rico's one-year statute of limitations began to run on September 30, 2004" because "[b]oth the national and local media coverage of the withdrawal of Vioxx from the market were sufficient to put the plaintiff on notice of a potential link between her alleged injuries and the use of Vioxx" at that date); *In re Vioxx Prods. Liab. Litig.*, MDL No. 1657, 2012 U.S. Dist. LEXIS 77613, at *9 (E.D. La. June 5, 2012) ("'[T]he highly publicized withdrawal of Vioxx from the market on September 30, 2004 and the immediate media blitz that followed linking Vioxx use to increased cardiovascular risks gave ample notice to potential claimants and triggered the applicable statutes of limitations.'") (quoting *In re Vioxx*, 522 F. Supp. 2d at 801).

("SEC"); unlike "an individual victim who relies on apparent injury to learn of a wrong . . . a central 'mission' of the [SEC] is to 'investigate[] potential violations of the federal laws'. . . and it has many legal tools at hand to aid in that pursuit").

In any event, Plaintiff does not even allege entitlement to tolling under a discovery rule (or any other theory) in its Complaint.  (*See generally* Am. Compl.)  This deficiency is fatal to a claim of tolling too.  *See LMB Inc. v. Lard Oil Co.*, No. 97-3817 SECTION "L" (3), 1998 U.S. Dist. LEXIS 10112, at *9 (E.D. La. July 6, 1998) (dismissing RICO claim as time-barred where complaint gave "rise to the affirmative defense of a statute of limitations" but plaintiff "fail[ed] to plead any reason as to why the statutory period beg[an] to accrue later than the date of the last alleged violation or should be tolled"); *accord Sarantapoulas v. Recontrust Co.*, No. C 12-0564 PJH, 2012 U.S. Dist. LEXIS 55351, at *2 (N.D. Cal. Apr. 19, 2012) (fraud claim was time-barred because, *inter alia*, "plaintiffs' complaint does not actually allege equitable tolling"); *Garrett v. Prime Transp., Inc.*, No. 4:10-CV-122-A, 2010 U.S. Dist. LEXIS 46731, at *7 (N.D. Tex. May 11, 2010) (statute of limitations lapsed where "[p]laintiff d[id] not allege in her complaint, as amended, any tolling theory"); *see also Rodriguez v. United States Bank Nat'l Ass'n*, No. C 12-00989 WHA, 2012 U.S. Dist. LEXIS 77228, at *11 (N.D. Cal. June 4, 2012) ("[T]he contents of the current operative complaint [do] not sufficiently allege tolling. The complaint does not indicate what was concealed, when and how it was discovered, or why he was unable to make that discovery earlier.").  Even though it was clear from the face of the Complaint – which expressly pleads that Vioxx was withdrawn from the market years before Plaintiff brought suit – that the Complaint gave "rise to the affirmative defense of statute of limitations," no basis for tolling was pled.  Thus, even if a discovery rule were otherwise applicable, it would not apply in this case.

For all of these reasons, Plaintiff's claims under the UFCA are time-barred and should be dismissed.

## II.  PLAINTIFF'S CLAIMS FAIL UNDER THE INDIVIDUALIZED-PROOF RULE.

Even if they were not time-barred, Plaintiff's UFCA claims would still fail because they turn on highly individualized patient- and doctor-specific evidence and thus cannot be resolved in an aggregate proceeding.

### A.  Plaintiff's Causal Theories Are Not Viable Under The Individualized-Proof Rule.

When the State seeks restitution under the UFCA, it bears the burden of proving causation – i.e., that any benefits were "improperly obtained."  Utah Code Ann. § 26-20-9.5(1)(a) (1987).  Plaintiff pleads two theories of causation in an effort to satisfy this requirement:  (1) fewer doctors would have prescribed Vioxx – and the State would have therefore spent less money on covering Vioxx prescriptions – but for Merck's alleged misrepresentations (*see* Am. Compl. ¶¶ 218-19); and (2) Merck's alleged misconduct caused the State to spend money treating Vioxx-related injuries sustained by Utah Medicaid beneficiaries.  (*Id.* ¶ 221.)  As set forth more fully below, neither causal theory is viable under the individualized-proof rule.[4]

*First*, Plaintiff's theory that Vioxx prescriptions were filled (and then paid for by the State) as a result of Merck's representations fails as a matter of law.  (*See* Am. Compl. ¶ 219.)

---

[4]  Plaintiff also alleges that "[b]ut for these omissions and misrepresentations, the FDA would never have approved Vioxx."  (Am. Compl. ¶ 219.)  But this additional causal theory is meritless because it is tantamount to a fraud-on-the-FDA claim, which is preempted by the Supreme Court's decision in *Buckman*, 531 U.S. 341.  *See Lofton v. McNeil Consumer & Specialty Pharm.*, 672 F.3d 372, 379-81 (5th Cir. 2012) (holding that state tort law that required proof of fraud on the FDA to rebut presumption against liability for failure to warn was preempted under *Buckman*); *see also Truddle v. Wyeth, LLC*, No. 2:11-CV-00207-GHD-SAA, 2012 U.S. Dist. LEXIS 114019, at *22 (N.D. Miss. Aug. 14, 2012) ("It is likely that the Plaintiffs' fraud-on-the-FDA theory would be preempted under *Buckman*, as the theory concerns the 'inherently federal' relationship between the FDA and the Generic Defendants, which are entities regulated by the FDA.").

As this Court recognized in the Louisiana AG action, government entities cannot pursue claims against Merck based on the general theory that "Merck's misrepresentations led to the prescription of Vioxx." *In re Vioxx*, 2010 U.S. Dist. LEXIS 142767, at *23.  In that case, the Louisiana Attorney General brought economic loss claims similar to those alleged in this case. One of the Louisiana Attorney General's causation theories was that fewer Vioxx prescriptions would have been written – and thus fewer Medicaid dollars spent – but for Merck's alleged misrepresentations and omissions about Vioxx.  (*See* La. Atty. Gen.'s Mem. of Law in Opp'n to Merck's Mot. to Dismiss Pl.'s Am. Compl. at 16 (attached as Ex. 1).)  The Court held that this theory of causation was barred as a matter of law because of the highly individualized evidence that would be necessary to prove such a claim.  According to the Court, "[e]ach decision by each doctor and each patient was different," and the "effect that any alleged misrepresentations had on each [prescribing] decision" was therefore "unique." *In re Vioxx*, 2010 U.S. Dist. LEXIS 142767, at *23.  For instance, "[m]any patients may have chosen to use Vioxx even if they had been fully informed of the risks associated with it," and "many doctors may have weighed the risks and benefits of the drug and felt that in a specific case, prescribing Vioxx was an acceptable risk." *Id*. at *23-24.  As a result, it would be "simply impossible, or close to it, to determine the individual thought process of each of the thousands of doctors and patients involved" in a single trial. *Id.* at *24.  The Court thus held that the Louisiana AG could not go forward with claims based on this theory of recovery.[5]

---

[5]        Although the Court reached this conclusion on Merck's motion for summary judgment in the Louisiana AG case, it should reach the same conclusion here on the pleadings because, as the Court recognized in the Louisiana AG case, it would be "simply impossible, or close to it" for a fact-finder to assess individualized facts even if a governmental entity attempted to proffer them.  Thus, the Court need not await factual development to rule.  *See, e.g.*, *United Food & Commercial Workers Cent. Pa. & Reg'l Health & Welfare Fund v. Amgen, Inc.*, 400 F. App'x 255, 257 (9th Cir. 2010) (affirming dismissal of third-party payor complaint for "fail[ing] to plead a cognizable theory of proximate causation" on a motion to dismiss); *Emp'r Teamsters-Local Nos. 175/505 Health & Welfare Trust Fund v. Bristol Myers Squibb Co.*, No. 3:12-0587, 2013 U.S. Dist. LEXIS 21589, at *32 (S.D. W. Va. Jan. 29,
*(cont'd)*

The Court's ruling in the Louisiana AG action was based in large part on Judge Weinstein's rejection of similar claims arising from Mississippi's Medicaid payments for the prescription drug Zyprexa. *See In re Zyprexa Prods. Liab. Litig.*, 671 F. Supp. 2d 397, 453 (E.D.N.Y. 2009). In that case, the State of Mississippi asserted claims under the Mississippi Consumer Protection Act, as well as claims for common-law fraud, negligence and unjust enrichment. One of the State's theories of causation was that the defendant's alleged misconduct caused more Zyprexa to be prescribed to Medicaid beneficiaries, either because doctors prescribed Zyprexa for off-label use more than they otherwise would have, or because doctors would have been more hesitant to prescribe the drug if it had come with a stronger warning. *Id.* at 454. Judge Weinstein granted the defendant's motion for summary judgment on this theory, holding that the State could not prove its theory of causation on an aggregate basis. Judge Weinstein began by explaining that, as a practical matter, Mississippi's theories of relief turned the suit into a functional class action, even though the State itself was a single party and Rule 23 had not been invoked. The court reasoned that "[c]onceptually and structurally," "the State's suit is predicated on numerous acts of fraud . . . alleged to have individually affected a statewide population of prescribing physicians and patients." *Id.* at 433. Judge Weinstein went on to hold that an "individualized-proof rule" applies in a "structural" class action such as an AG suit, just as it does in a traditional class action under Rule 23. Such a rule requires plaintiffs to prove

---

*(cont'd from previous page)*

2013) (granting motion to dismiss on causation grounds because "[b]etween [d]efendants' alleged misleading marketing and [p]laintiffs' prescription reimbursements lies a vast array of intervening events, including the 'independent medical judgment' of doctors") (citation omitted); *In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*, No. 2:06-cv-5774 (SRC), 2010 U.S. Dist. LEXIS 56621, at *24-25 (D.N.J. June 9, 2010) ("Despite the unquestionable detail in the Amended Complaint concerning the tactics employed by Schering in marketing the Subject Drugs, the allegations still fail to establish that Named Plaintiffs suffered injury fairly traceable to the misconduct at issue."), *aff'd*, 678 F.3d 235 (3d Cir. 2012).

14

causation on an individual basis and thus bars aggregate adjudication of claims that include a causation element. *Id.* at 434.

Applying the individualized-proof rule to Mississippi's theories of relief, Judge Weinstein held that the State could not prevail on any theory of causation that depended on individualized showings – including the State's theory that it had spent money on prescriptions that were made as a result of the defendant's representations or warnings. *Id.* at 454-55. Judge Weinstein reasoned that "[i]ndividualized proof is needed . . . to overcome the possibility that a Mississippi patient was prescribed Zyprexa for some reason other than belief in the accuracy of Lilly's warnings or representations. Whether a more adequate warning by Lilly would have prevented any particular patient's injuries requires consideration of what the prescribing physician knew and the cost-benefit analysis that applied to the individual patient suffering from a variety of serious mental problems . . . ." *Id.*

This case is no different. Plaintiff's prayer for damages is premised on the allegation that Merck's alleged misconduct "induce[d] medical professionals to prescribe Vioxx" and "caused the State of Utah, by and through its employees and agents to pay for Vioxx prescriptions[.]" (Am. Compl. ¶¶ 218-19.) In other words, Plaintiff claims that absent Merck's alleged misrepresentations, the State would have paid for other, presumably less expensive drugs – instead of Vioxx – because doctors would not have prescribed Vioxx. (*See id.*) As this Court has recognized, however, such "'generalized allegations and aggregate proof'" cannot "adequately prove causation." *In re Vioxx*, 2010 U.S. Dist. LEXIS 142767, at *21 (citation omitted). Rather, just as in *Vioxx* and *Zyprexa*, Plaintiff's claims will turn on each doctor's decision to prescribe Vioxx – and each patient's decision to take it. Thus, Plaintiff would need to make thousands of individualized showings on causation that would turn this case into a

"structural" class action and entail an inquiry that "is impractical and beyond the resources of [this] [C]ourt." *Zyprexa*, 671 F. Supp. 2d at 459.[6]

**Second**, to the extent Plaintiff seeks reimbursement for the costs it incurred in connection with personal injuries sustained by Utah Medicaid beneficiaries as a result of their use of Vioxx, the causation obstacles described above are even more acute. As Judge Weinstein noted in *Zyprexa*, the individualized-proof rule applies in spades to actions involving alleged personal injuries because the finder of fact must consider the circumstances surrounding each such event. *Zyprexa*, 671 F. Supp. 2d at 454-55; *see also, e.g.*, *Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.*, 171 F.3d 912, 935 (3d Cir. 1999) (explaining that "the link between defendants' alleged fraud – providing false information regarding the safety of their products – and plaintiffs' alleged injuries" in paying for their members' smoking-related illnesses was "too attenuated to support" RICO and common-law fraud claims).

In *Zyprexa*, the State of Mississippi not only sought a refund of monies it paid for Zyprexa prescriptions as discussed above, but also sought to recover the costs of treating illnesses allegedly caused by the drug. 671 F. Supp. 2d at 454. The State claimed that but for defendant's alleged misconduct, Mississippi physicians would not have prescribed Zyprexa – and the State would not have expended money to treat "Zyprexa-related injuries." *Id.* (internal quotation marks and citation omitted). As Judge Weinstein explained, to prove such a theory, the State would have to show that "physicians **relied** uniformly on Lilly's warnings and express warranties and representations in prescribing Zyprexa, which resulted in metabolic diseases for

---

[6]      Notably, the Court has already recognized the relevance of this individualized evidence to the State's claims for damages under the UFCA. (*See* Order Granting in Part Merck's Mot. to Compel, ECF No. 64,162 (filed Nov. 7, 2012).) For example, in granting Merck's motion to compel in part, the Court made clear that patient-specific information is relevant to the State's claims for reimbursement of costs for treating Vioxx-related injuries. (*Id.*)

16

which the State paid the costs of treatment." *Id.* (emphasis added).  However, such a causal

theory was destined to fail because "[t]he variation in individual cases [was] so large that

aggregate evidence offered in support of the [state's] claim [was] inadequate under the

Individualized Proof Rule." *Id.* (explaining that "reliance . . . cannot be the subject of general

proof" and that "loss causation . . . cannot be resolved by way of generalized proof") (internal

quotation marks and citation omitted).  In short, "each prescribing decision and each patient's

injuries would have to be considered individually." *Id.* at 455.  Absent such "individualized

showings," the State's theory of causation with respect to its citizens' personal injuries failed as a

matter of law.  *Id.*

All of the same problems are present here.  If Plaintiff's claim is allowed to proceed,

"[e]ach individual patient's [] condition would have to be shown to have resulted from [Vioxx],

rather than other supervening causal factors." *Id.*  In other words, the Court would have to

consider each Medicaid beneficiary's medical history in order to determine what caused the

medical conditions for which the AG seeks to recover.  These "onerous individualized inquiries"

would overwhelm any trial, making it impossible for Plaintiff to satisfy its causation burden.  *See*

*Pa. Employees Benefit Trust Fund v. Astrazeneca Pharm. LP*, No. 6:09-cv-5003, 2009 WL

2231686, at *6 (M.D. Fla. July 20, 2009) (recognizing that "the complexity of the causation

determination is even further compounded here by [the third-party payor's] added request for

damages related to treating its members for injuries allegedly stemming from their use of

Seroquel" because "[s]uch claims would require onerous individualized inquiries into the

specifics of each patient's medical history and the circumstances of each patient's alleged

injury").  Thus, Plaintiff's second causation theory also fails as a matter of law.

**B.      Plaintiff's Claim For Penalties Is Barred By The Individualized-Proof Rule.**

Plaintiff's request for penalties under the UFCA must also be rejected under the individualized-proof rule.  This is so because any award of penalties under that statute is discretionary and therefore implicates the same sort of individual questions as those described above.  The version of the UFCA that governs Plaintiff's case provides that "[a]ny person who violates this chapter . . . ***may*** be required, ***in the discretion of the court***, to pay to the state a civil penalty not to exceed three times the amount of value improperly claimed or received as a medical benefit; or ***may*** be required, ***in the discretion of the court***, to pay to the state a civil penalty of up to $2,000 for each claim filed or act done in violation of this chapter."  Utah Code Ann. §§ 26-20-9.51(c)-(d) (1987) (emphases added).  As a result, an award of penalties would necessarily require individualized inquiries regarding Merck's conduct toward specific Vioxx users.

*Zyprexa* is once again instructive.  There, in addition to seeking damages, Mississippi sought an award of civil penalties under the Mississippi Consumer Protection Act.  671 F. Supp. 2d at 458.  The State requested that the court impose a penalty for "each of almost a million estimated Zyprexa prescriptions in Mississippi."  *Id.*  Judge Weinstein found that an award of penalties was barred under the individualized-proof rule because the trial court "is invested with discretion to determine the appropriate amount of the penalty with respect to each violation, whether the maximum of $10,000 or some smaller amount."  *Id.*  Although the Mississippi statute does not articulate the specific factors a court should consider when evaluating a request for civil penalties, Judge Weinstein held that the court would nonetheless have to consider:

> a number of issues as they bear on each Zyprexa prescription, including but not
> limited to:  whether the prescription was for an on-label or off-label use; whether
> the prescription was medically necessary; whether the patient received any benefit
> from Zyprexa; whether and the extent to which the patient experienced any of
> Zyprexa's potential metabolic side effects; the information about Zyprexa

18

> available to the medical community at the time the prescription was written; and
> the times of the various alleged instances of misconduct by Lilly, and whether and
> to what extent each instance may have impacted the prescription in question.

*Id.* at 458-59.  The court went on to reason that "[d]ue to the nature of the alleged misconduct

and injuries in the instant case, and in light of the discretion invested in the court to set the

amount of the CPA penalty, proper assessment of the claimed penalties would require

individualized consideration of the circumstances of each prescription alleged to be in violation

of the statute."  *Id.* at 459.  Thus, determining the propriety of civil penalties on a "per-violation

basis" would be "impractical and beyond the resources of any court."  *Id.*  Based on this

reasoning, the court granted summary judgment in favor of the defendant with respect to the

claim for statutory penalties.  *Id.*

The same disposition must follow here.  As in *Zyprexa*, determining whether penalties

are justified under the UFCA (and, if so, the proper amount) would require a fact-intensive

inquiry regarding the circumstances under which each Utah consumer was prescribed Vioxx.

Plaintiff is seeking an award of civil penalties equal to "three times the cost of the amount of

damages sustained by the State"; a civil penalty of "not less than $5,000 nor more than $10,000

for each and every violation"; or alternatively, a penalty "of up to $2,000 for each violation of

the Act."  (Am. Compl., Prayer for Relief.)[7]  Although the UFCA does not set forth the relevant

factors a court must consider when evaluating a claim for penalties, a court would likely need to

apply similar considerations to those articulated by Judge Weinstein in *Zyprexa*.  For example,

the Court would need to consider whether Merck's representations about Vioxx violated the

---

[7]     Plaintiff requests penalties of "not less than $5,000 nor more than $10,000" for each violation (*see* Am. Compl., Prayer for Relief, but these amounts are only authorized under the 2007 version of the UFCA, *see* Utah Code Ann. § 26-20-9.5(2)(c)(i)-(ii) (2007), which does not apply here, as explained above.  The operative version of the UFCA only authorizes treble damages and penalties "of up to $2,000 for each claim filed or act done in violation" of the statute.  Utah Code Ann. § 26-20-9.5(1)(d) (1987).

19

UFCA based on the impact of those representations on each Vioxx user and his or her doctor.  In addition, the Court would need to determine whether each Vioxx prescription was medically necessary and how much medical benefit the individual received from the medication.  As explained in *Zyprexa*, such considerations would overwhelm the resources of the Court and transform this action into a multitude of mini-trials on the issue of penalties.  Put simply, requiring the court to undertake such an endeavor would be "impractical and beyond [its] resources."  *Zyprexa*, 671 F. Supp. 2d at 459.  Thus, Plaintiff's claim for penalties necessarily fails.

## III.   PLAINTIFF HAS, IN ANY EVENT, FAILED TO ALLEGE A VIOLATION OF THE UFCA.

Even if Plaintiff's claims were not time-barred and were not precluded by the individualized-proof rule, they would still fail as a matter of law for a third, independent reason: the State has not alleged a violation of the plain terms of the UFCA.  To the contrary, Plaintiff's allegations that Merck somehow violated the statute twist the plain language of the UFCA beyond its clear intent and thrust.  That is precisely contrary to the approach that is proper with respect to a penal statute, which requires "careful scrutiny to see if the alleged misconduct violates the statute."  *United States ex rel. Weinberger v. Equifax, Inc.*, 557 F.2d 456, 460 (5th Cir. 1977); *see also United States ex rel. Ramadoss v. Caremark Inc.*, 586 F. Supp. 2d 668, 690 (W.D. Tex. 2008) (the federal False Claims Act is a "punitive statute" that should be strictly construed), *rev'd in part on other grounds*, 634 F.3d 808 (5th Cir. 2011); *United States ex rel. Atkins v. McInteer*, 345 F. Supp. 2d 1302, 1304 (N.D. Ala. 2004) ("Because the FCA has a

quasi-criminal aspect (treble damages), it must be strictly construed against the United States and the relator."), *aff'd*, 470 F.3d 1350 (11th Cir. 2006).[8]

> ### A.   Plaintiff's Claim Under Section 26-20-7(1) (1987) Fails Because The Complaint Does Not Allege That Merck Submitted A False Claim – Or Caused Someone Else To.

Plaintiff first alleges violations of Utah Code Ann. § 26-20-7(1) (1987), which provides that "[n]o person may make or present or cause to be made or presented to an employee or officer of the state a claim for a medical benefit, knowing the claim to be false, fictitious, or fraudulent." (*See* Am. Compl. ¶ 240(a).) Since Merck did not make any claims for medical benefits, the State attempts to allege that Merck violated this provision by misrepresenting the alleged side effects of Vioxx in a manner that caused pharmacies to submit "false claims" to Utah Medicaid. (*Id.* ¶ 230.) This attempt fails.

As courts construing a similar provision of the federal False Claims Act have explained, liability only attaches for "claims that are false, not claims that are submitted while fraud is afoot." *United States ex rel. Hockett v. Columbia/HCA Healthcare Corp.*, 498 F. Supp. 2d 25, 71 (D.D.C. 2007); *see also United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1002 (9th Cir. 2002) (FCA "focuses on the submission of a claim, and does not concern itself with whether or to what extent there exists a menacing underlying scheme"). Here, although Plaintiff generally asserts that Merck made "false and misleading statements about Vioxx's health risks" (Am. Compl. ¶ 207) and "caused numerous pharmacies to submit false claims" (*id.* ¶ 230), the State offers no explanation of what (if anything) was "false" about the alleged claims themselves. For example, Plaintiff does not allege that Merck failed to provide the Vioxx paid for by Utah, thereby making any pharmacist's claim that it dispensed Vioxx false. *See United States v. Huron*

---

[8]      The Utah Supreme Court has relied on federal caselaw interpreting the federal False Claims Act when applying the UFCA. *See Apotex*, 282 P.3d at 73-74.

*Consulting Grp., Inc.*, No. 09 Civ 1800 (JSR), 2013 U.S. Dist. LEXIS 32477, at *17 (S.D.N.Y. Mar. 5, 2013) ("'Factual falsity' simply means a contractor may not bill for something it does not provide."). Nor does it allege that Merck caused a pharmacist to make a statement that was legally false – e.g., to certify that it complied with a Medicaid requirement when in fact it did not. Accordingly, Plaintiff's claim under Section 26-20-7(1) fails as a matter of law.

**B.** **Sections 26-20-7(2)(b) (1987) And 26-20-7(2)(d) (1987) Do Not Apply Because Merck Did Not File A Claim For A Medical Benefit.**

Plaintiff also alleges violations of Utah Code Ann. § 26-20-7(2)(b) (1987) and Utah Code Ann. § 26-20-7(2)(d) (1987). (Am. Compl. ¶¶ 240(b)-(c).) But both of these provisions, by their express terms, only apply to defendants who "***file[d] a claim*** for a medical benefit." *See* Utah Code Ann. § 26-20-7(2)(b) (1987) (emphasis added); *id.* § 26-20-7(2)(d) (1987). Plaintiff cannot plausibly allege that Merck "filed a claim" for any medical benefit. Rather, this provision applies to healthcare providers and pharmacies – i.e., the entities that actually file claims for medical benefits with governmental entities. *See United States ex rel. Polansky v. Pfizer, Inc.*, No. 04-cv-0704 (ERK), 2009 U.S. Dist. LEXIS 43438, at *15, *19 (E.D.N.Y. May 22, 2009) (recognizing that "Pfizer did not file any claims for reimbursement" in FCA action; rather, "claims . . . were filed by patients or pharmacists on behalf of patients for reimbursement"). As one commenter explained, "drug companies . . . sell the[ir] products to wholesale distributors . . . [who] in turn sell to pharmacies and other providers; and . . . these other providers in turn file claims with the government (e.g., Medicare and Medicaid)." Fazal Khan & Justin Holloway, *Verify, Then Trust: How to Legalize Off-Label Drug Marketing*, 117 Penn St. L. Rev. 407, 414

(2012).  Accordingly, Plaintiff cannot establish a fundamental element of its claims under

Sections 26-20-7(2)(b) (1987) and 26-20-7(2)(d) (1987).[9]

**C.     Section 26-20-7(2)(j) (1987) Does Not Apply Because Plaintiff's Claims Are Preempted And Because The Vioxx Label Is Not A Document Or Report Under The Statute.**

Plaintiff next asserts a claim for an alleged violation of Utah Code Ann. § 26-20-7(2)(j)

(1987), which makes it illegal to "knowingly . . . falsify or alter with intent to deceive, any report

or document required by state or federal law, rule, or Medicaid provider agreement."  (Am.

Compl. ¶ 240(d).)  According to Plaintiff, Merck violated this provision by:  (1) making

"representations that were false, misleading, and public" in its New Drug Application for Vioxx,

which Merck submitted to the FDA in 1998 (*id.* ¶ 56); and (2) misrepresenting the alleged side

effects of Vioxx, which purportedly caused "every Vioxx prescription in the State" to be falsely

labeled (*id.* ¶ 13(e)).  These novel theories ignore the overall thrust and meaning of the statute

and must be rejected.

First, neither alleged "document" could constitute a violation of the UFCA because

neither has anything to do with a claim for medical benefits.  Although Section 26-20-7(2)(j)

(1987) refers to "any report or document required by state or federal law, rule or Medicaid

provider agreement," that provision must be read within the context of the statute.  This is a

fundamental principle of statutory interpretation and also a matter of logic.  The title of this

section of the UFCA refers to "claims *for medical benefits*."  Utah Code Ann. § 26-20-7

(emphasis added).  Thus, the "report or document" referenced in subsection (j) must be one that

is required to be submitted in connection with a claim "for medical benefits."  *See, e.g.*, *INS v.*

---

[9]     Plaintiff's claim under Section 26-20-7(d) (1987) would, in any event, fail under the individualized-proof rule discussed above, because it would require individualized evidence that the "items or services" at issue "were not *medically necessary* in accordance with professionally recognized standards" for specific patients.   Utah Code Ann. 26-20-7(2)(d) (1987) (emphasis added).

23

*Nat'l Ctr. for Immigrants' Rights, Inc.*, 502 U.S. 183, 189 (1991) ("The text's generic reference to 'employment' should be read as a reference to the '*unauthorized* employment' identified in the paragraph's title."); *Sheker v. Grimes*, No. 94-6312, 1995 U.S. App. LEXIS 13722, at *5 (10th Cir. June 5, 1995) (using section's title to interpret meaning of statutory text).  This is also a matter of logic.  The Utah legislature could not possibly have been referring to any document whatsoever "required by . . . federal law"; otherwise UFCA liability could be premised on a false federal tax return.  *See Encon Utah, LLC v. Fluor Ames Kraemer, LLC*, 210 P.3d 263, 276 (Utah 2009) ("When 'statutory language plausibly presents the court with two alternative readings, we prefer the reading that avoids absurd results.'") (citation omitted).  In short, because there is no allegation that either Merck's NDA or the Vioxx label is a "report or document" that must be submitted in connection with a claim "for medical benefits" in Utah, Section 26-20-7(2)(j)(1987) does not apply.

Plaintiff's allegation that Merck made "false" or "misleading" representations in its New Drug Application for Vioxx also fails as a basis for liability because it is preempted under the Supreme Court's decision in *Buckman*, 531 U.S. 341, which held that state-law claims premised on allegations of "fraud-on-the-FDA" are preempted, *id.* at 347-48.  Relying on *Buckman*, courts have consistently rejected claims that require plaintiffs to offer evidence or argument establishing fraud on the FDA, regardless of the cause of action.  *See, e.g.*, *Garcia v. Wyeth-Ayerst Labs.*, 385 F.3d 961, 965-66 (6th Cir. 2004) ("*Buckman* teaches that state tort remedies requiring proof of fraud committed against the FDA are foreclosed since federal law preempts such claims.") (internal quotation marks and citation omitted); *Grange v. Mylan Labs., Inc.*, No. 1:07-CV-107 TC, 2008 U.S. Dist. LEXIS 92460, at *18 (D. Utah Oct. 30, 2008) ("The chief problems that *Buckman* sought to counteract are present whenever a plaintiff, as a prerequisite to

24

collecting damages, is required to put on evidence that there was what amounts to fraud on the FDA. When such evidence is considered, state courts are essentially second-guessing the FDA, and drug companies, nervous about state litigation, will have an incentive to flood the FDA with information.").

Plaintiff's allegations regarding the NDA fail under this established precedent. In order to prove its claim that Merck made false or misleading claims in the NDA, Plaintiff would be "required to put on evidence that there was what amounts to fraud on the FDA," requiring this Court to "essentially second-guess[]" the FDA's decision to approve Vioxx. *Grange*, 2008 U.S. Dist. LEXIS 92460, at *18. For this reason too, Plaintiff's claim under Section 26-20-7(2)(j) (1987) fails.

> **D.**   **Plaintiff's Claim Under Section 26-20-7(2)(k) (1987) Fails Because Merck Has Not Engaged In Any Unlawful Act And It Has Not Retained Any Payments From Utah.**

Plaintiff also asserts a claim under Utah Code Ann. § 26-20-7(2)(k)(1987) (*see* Am. Compl. ¶ 240(e)), which makes it unlawful for anyone to "retain any unauthorized payment as a result of acts described by this section." Utah Code Ann. § 26-20-7(2)(k)(1987). But as set forth above, Plaintiff has not plausibly asserted that Merck engaged in any "acts described by this section." Nor can Plaintiff plausibly allege that Merck ever retained any payment – let alone one that was unauthorized – from Utah. Rather, as set forth in Section III.B, *supra*, providers and pharmacies – not manufacturers like Merck – are the ones who obtain payments from the State. Thus, Plaintiff has not pled a viable claim under Section 26-20-7(2)(k)(1987).

1125320v1

**E.**     **Plaintiff's Claim Under Section 26-20-6 (1987) Also Fails As A Matter Of Law.**

Finally, Plaintiff asserts a claim for conspiracy to defraud the State in violation of Utah Code Ann. § 26-20-6.[10]  (*See* Am. Compl. ¶ 225.)  Plaintiff's conspiracy claim fails for at least two reasons.  For one thing, Plaintiff's "complaint fails to allege sufficient facts to show even an individual violation of the False Claims Act . . . Since [Plaintiff's] conspiracy claim is premised on those claims of underlying FCA violations, the conspiracy claim rises and falls with the individual claims."  *United States ex rel. Godfrey v. KBR, Inc.*, 360 F. App'x 407, 413 (4th Cir. 2010) (affirming dismissal of individual and conspiracy claims under the federal False Claims Act); *see also United States ex rel. Phillips v. L-3 Communs. Integrated, Sys., L.P.*, No. 3:10-CV-1784-L, 2012 U.S. Dist. LEXIS 121272, at *22 (N.D. Tex. Aug. 24, 2012) ("[B]ecause there is no actionable FCA claim against L-3, Phillips's civil conspiracy claim fails.").

But even if Plaintiff had plausibly pled individual violations of the UFCA (and it has not), its conspiracy claim would still warrant dismissal because Plaintiff has not sufficiently alleged an agreement to conspire – or even specified the alleged participants in such a conspiracy.  As courts construing the analogous conspiracy provision of the federal False Claims Act have recognized, a plaintiff must "allege an agreement to conspire, . . . identify who conspired with [defendant], and . . . explain how these parties sought to get a false or fraudulent claim paid by the government."  *Phillips*, 2012 U.S. Dist. LEXIS 121272, at *22-24 (dismissing conspiracy claim under the federal False Claims Act because, *inter alia*, "Phillips has not identified any individual or entity that conspired with L-3").  Importantly, these allegations must comport with the particularity requirements of Rule 9(b).  *Id.*; *see also United States ex rel.*

---

[10]       As previously explained, Plaintiff's conspiracy claim is asserted under the 2007 version of the UFCA and is not alternatively asserted under the applicable, pre-amendment version of the statute.  (*See* Am. Compl. ¶ 225.) Nevertheless, Merck addresses the conspiracy claim under that prior version.

26

*Digital Healthcare, Inc. v. Affiliated Computer Servs., In*c., 778 F. Supp. 2d 37, 53 (D.D.C. 2011) ("The failure to identify anyone allegedly engaged in the fraud [other than the defendant] is especially troubling because the plaintiff/relator is claiming that the defendant is involved in a conspiracy that is responsible for the submission of 'tens of thousands' of false Medicaid claims to the United States since 2002.") (internal quotation marks and citation omitted).

In *Phillips*, for example, a former employee of an aircraft maintenance company asserted conspiracy and other claims under the federal False Claims Act against his former employer, alleging that it sold defective aircraft to the United States in violation of FAA standards.  2012 U.S. Dist. LEXIS 121272, at *2-4.  The court dismissed the conspiracy claims on multiple grounds, including that the relator failed to sufficiently allege an agreement to conspire or identify the conspiracy's participants.  *Id.* at *22-23.  According to the court, while the relator alleged that the company "entered into a conspiracy to defraud the United States to obtain the above-alleged contracts/subcontracts and to get false and fraudulent claims allowed or paid," such barebones allegations "of a conspiracy [were] [too] speculative and conclusory" under both Rule 9(b) and Rule 8.  *Id.* at *23-24 (internal quotation marks and citation omitted).  As a result, the court dismissed the conspiracy count of the relator's complaint.  *Id.* at *24.

Plaintiff's conspiracy claim fails for the same reason.  Specifically, Plaintiff's conspiracy count is limited to one perfunctory sentence:  "Merck entered into an agreement or combination with its employees to defraud by obtaining, or aiding another to obtain, the payment of a false, fictitious or fraudulent claim for a medical benefit."  (Am. Compl. ¶ 226.)  This allegation is utterly devoid of any specificity, rendering it "speculative and conclusory" like the allegations deemed inadequate in *Phillips*.

In addition, even if the generic reference to "employees" were sufficient to identify an agreement and its members, the conspiracy claim would fail on the separate ground that a "corporation cannot conspire with itself any more than a private individual can, and it is the general rule that the acts of the agent are the acts of the corporation." *Hilliard v. Ferguson*, 30 F.3d 649, 653 (5th Cir. 1994) (internal quotation marks and citation omitted). For this reason, courts have rejected conspiracy claims under the analogous federal False Claims Act where – as here – the plaintiff has alleged that a corporate defendant conspired with its own employees or agents to defraud the government. *See, e.g.*, *United States ex rel. Woods v. Southerncare, Inc.*, No. 3:09-CV-00313-CWR-LRA, 2013 U.S. Dist. LEXIS 46820, at *20-21 (S.D. Miss. Mar. 30, 2013) (dismissing conspiracy claim under federal False Claims Act because, *inter alia*, "[r]elators' [c]omplaint does not allege an agreement between SouthernCare and any individual or company other than its own 'principals, agents, and employees'"); *United States ex rel. Sanchez v. Abuabara*, No. 10-61673-CIV-HUCK/BANDSTRA, 2012 U.S. Dist. LEXIS 150708, at *23 (S.D. Fla. Oct. 19, 2012) (dismissing conspiracy claim under federal False Claims Act because "a corporation cannot conspire with its employees") (internal quotation marks and citation omitted). For all of these reasons, Plaintiff's conspiracy claim should be dismissed.

## CONCLUSION

For the foregoing reasons, the Court should grant Merck judgment on the pleadings with respect to Plaintiff's claims under the UFCA.

Dated: May 3, 2013                          Respectfully submitted,

*/s/ Dorothy H. Wimberly*
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, LA 70130

Douglas R. Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth St., N.W.
Washington, DC 20005

John H. Beisner
Jessica Davidson Miller
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
1440 New York Avenue, N.W.
Washington, DC 20005

ATTORNEYS FOR MERCK SHARP &
DOHME CORP.

1125320v1

## CERTIFICATE OF SERVICE

I also hereby certify that the above and foregoing Memorandum in Support of Motion for Judgment on the Pleadings has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail, upon Liaison Counsel Ann Oldfather by e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 3rd day of May, 2013.

_/s/ Dorothy H. Wimberly_
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361
dwimberly@stonepigman.com

Defendants' Liaison Counsel

1125320v1