# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| | * | |
| In re:  VIOXX Products Liability Litigation | * | MDL No. 1657 |
| | * | |
| This Document Relates to: | * | SECTION L |
| | * | |
| State of Utah v. Merck, et al. | * | JUDGE ELDON E. FALLON |
| | * | |
| | * | MAGISTRATE JUDGE |
| | * | KNOWLES |
| | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## UTAH'S RESPONSE TO MERCK'S MOTION AND INCORPORATED MEMORANDUM FOR ENTRY OF ORDER FOR PRODUCTION AND PROTECTIVE ORDER

Now comes the State of Utah, by and through counsel, in response to Merck's Motion and Incorporated Memorandum for Entry of Order for Production and Protective Order [hereinafter, "Merck's Motion"] as follows:

## I.    Introduction and Procedural History

On November 7, 2012, the Court heard Merck's Motion to compel the production of certain portions of the Utah Medicaid database.  The Court entered an order the same day granting in part, and denying in part, the Motion to Compel, and decided, *inter alia*, "[w]hile the contested discovery issues may not be relevant to the issue of liability under the UFCA, it is the Court's view that they are relevant to the issue of damages under the Act, as well as to both liability and damages in Utah's negligence claim."  The State has moved to dismiss the negligence claim with no opposition by Merck.  Thus, under the Court's order, the only data

1

issue left to be resolved is damages under the Act.  Therefore, there is a substantial question as to whether the State should produce any de-identified data in any form at this time.

Further, production must reflect the expressed statutory concern as to the protection of Medicaid recipient information.  Disclosure of information must be in the least intrusive format and the Court must insist upon sufficient protection from unauthorized disclosure.

The State has good reason to be wary of mass production of Medicaid Data.  Last year there was a breach in the Medicaid data security and the resultant theft of 280,000 social security numbers.  On April 29, 2013, the Salt Lake Tribune detailed the extent of the damage. The State spent $9 million on security upgrades as well as $3.4 million to set up a hotline and provide other protection.  The State further estimates that 122, 000 recipients will fall prey to identity theft, and each victim will expend an average of 20 hours and $770 to resolve the fraud.  The State further estimates that the data breach will cost credit card companies and banks more than $400 million.

The State brings these facts to the Court's attention to explain why it has acted with extreme caution and strenuously to limit production of individually identifiable health information by the most protective and least intrusive means possible.  For example, Dr. Dennis Tolley used the de-identified data.  The source of that de-identified data was the files that Utah has already produced to Merck.  Merck uses de-identified data when reviewing the safety of its drugs, and a tort claim such as this one calls for more personal identifiers, not fewer.  To the extent protections need to be applied to previously produced data, this should be reflected in the Court's Order as well.

All parties to this case must be attuned to the risks of wrongful disclosures of data as all would be liable for unlawful breach of confidentiality.  The protections suggested are designed to protect Merck as well as the State.

That being said, Utah generally agrees with Section I of Merck's Motion, "Introduction and Procedural History," and also notes that both sides have worked diligently to reach an agreement and have made great progress. The parties have worked out the largest issue concerning the scope of production as it pertains to non-Vioxx users. To wit, Utah will produce all records (including personal identifiers such as name and address) for Vioxx users in the Medicaid database as well as non-Vioxx users in the Medicaid database without personal identifiers, but with the patients' respective Medicaid Identification numbers. This is an independently generated number consistent throughout the Medicaid records. Utah also agrees to identify the Vioxx patients and non-Vioxx patients to which each Vioxx patient was matched in Dr. Tolley's report. This latter group, also referred to as Control Match Patients, was de-identified prior to being analyzed by Dr. Tolley so that he and his staff would not know the individuals being analyzed. Randy Baker created the de-identification patient identifier so that individual patient records in all parts of the database (i.e. physician office visit diagnosis, pharmacy claims, hospital claims, etc.) could be linked. This allowed showing complete utilization patterns of an individual while preserving patient confidentiality. In return, Merck agrees not to seek personal identifiers for non-Vioxx patients, but Utah will disclose that information if any such non-Vioxx patient testifies at trial.

This agreement is reflected in the proposed Protective Order attached to Merck's Motion. As stated in Merck's Motion, the parties have reached a stalemate, unfortunately, as to a few remaining issues and request that this Court decide them after consideration of the parties' respective positions. Merck has recently filed a motion for judgment on the pleadings relating to the statute of limitations and to certain method of proof issues in this matter.

3

The State submits that there should be no disclosure unless and until the Court denies Merck's motion. If Merck is correct in its motion, there would be no justification for exposing any Medicaid recipient to the loss of protection of their information. This is for Merck's protection as well as that of the State.

## II.   Utah's Proposal and its Response to Merck's Proposal

Merck has submitted its proposed Order for Production and Protective Order as Exhibit A to its Motion [hereinafter, "Merck's Proposed Order"]. Utah has attached as Exhibit 1 its redlined version of Exhibit A to clearly show the remaining issues pertaining to the proposed Order. Utah suggests including a broader description of protected "patient identifiers" as set forth at Section 7, and also referenced at Section 13. Utah does not know if Merck objects to this inclusion, but Utah asserts it is consistent with the agreement reached between the parties. In turn, Exhibit 1 shows the language requested by Utah for the three remaining issues discussed in Merck's Motion, and discussed by Utah as follows.

### A.  Affidavit of Information Recipient

This issue is addressed at Section 18 of the parties' respective proposed Orders. Utah has requested that all third parties, including attorneys and their staff, and not just experts and their staff, execute an Affidavit of Information Recipient upon receiving individually identifiable health information. Merck opposes Utah's request that attorneys and their staff execute these affidavits, but not that third party experts and their staff do so.

Utah's counsel has informed Merck's counsel that Utah makes this request, in part, because Utah agreed to Merck's demand that Utah's attorneys execute similar affidavits upon receipt of Merck's confidential information. Thus far, Merck has neither denied that it insisted

that Utah's attorneys execute such affidavits, nor has Merck given any reason why it should not

have to do likewise upon receipt of Utah's confidential data.  Utah further notes that Section 13

of Pretrial Order 13C, governing production of Highly Confidential Information, did not

specifically exclude attorneys from its obligation to execute a similar Certification.  Utah has the

same interest in keeping individually identifiable health information confidential through this

process that Merck did when it produced its own confidential information.

For these reasons, Utah requests that Merck's attorneys and staff also execute the

Affidavit of Information Recipient prior to receiving individually identifiable health information

contained within Utah's Medicaid database.  This request applies to all individually identifiable

information in the possession of Merck.

B.  *Affidavit of Return of Production*

This dispute (found at Section 20 of the parties' respective proposed Orders) concerns

Utah's request that each person who accesses individually identifiable health information execute

an affidavit of its proper return.  Merck argues that one attorney affidavit should be sufficient.

Utah's proposed language is consistent with paragraph 22 of this Court's Pretrial Order 13C,

governing production of Highly Confidential Information, which states in relevant part that "[a]t

the written request of the Supplying Party, *any person or entity* having custody or control (of

supplied confidential information)… and all copies thereof… shall deliver to the supplying an

affidavit certifying that a reasonable efforts have been made to assure that all such (confidential

information has been returned)" (emphasis added).

Consistent with its duties to protect patient information, the State has requested

identification of individuals with access to this information.  The State requests personal

acceptance of responsibility for the protection of the data.  Further, the State should not be

exposed to a multi-million dollar liability should Merck and its employees and agents fail in that duty. These requirements are reasonable in light of the State's experience as outlined above with the recent theft of Medicaid recipients' social security numbers.

Utah takes its responsibility to ensure that individually identifiable health information is not lost, misplaced, or otherwise end up in the hands of someone who could use it to engage in identity theft or cause other mischief. For this reason, Utah requests this process concerning the return of individually identifiable health information. Nonetheless, if the Court adopts Merck's process, then Utah would request that this court also declare that Utah's responsibility under paragraph 22 of Pretrial Order 13 C also only requires that one of its attorneys of record execute an affidavit concerning the return of Merck's confidential information.

### C.  *Contacting Medicaid Patients*

Utah sets forth its proposed procedure concerning Merck's contact of Utah Medicaid Patients at Sections 21 and 22 of its Proposed Order, attached hereto. Utah's procedure is consistent with the general thrust of protection granted to individuals under the privacy regulations of HIPAA, including but not necessarily limited to 45 CFR 164.520(a), which states as follows:

> 164.520(a) *Standard:  notice of privacy practices-(1) Right to notice.* Except as provided by paragraph (a)(2) or (3) of this section, an individual has a right to adequate notice of the uses and disclosures of protected health information that may be made by the covered entity, and of the individual's rights in the covered entity's legal duties with respect to protected health information.

In turn, *United States v. Sunderland*, 143 F.Supp.2d 609 (W.D. Va. 2001) is, at a minimum, consistent with the principle that individuals are at least entitled to notice before they are contacted by an entity that has received their personal health information. In this sense, *Sunderland* is wholly consistent with the principles set forth in the privacy regulations of HIPAA

and the Court in that case noted that even though they were not yet binding, the Privacy

Regulations were "persuasive in that they demonstrate a strong federal policy of protection for

patient medical records."

If, however, this court should adopt Merck's procedure for contacting Utah's Medicaid

Patients, Utah requests that it be limited to Vioxx recipients only and that the Court include a

provision specifically prohibiting Merck from contacting a non-Vioxx Medicaid recipient for any

reason related to this litigation unless the non-Vioxx Medicaid recipient is to testify at trial.


### III.    Conclusion

For the foregoing reasons, Utah respectfully requests that the Court enter Utah's

proposed Order for Production and Protective Order, attached hereto as Exhibit 1.


DATED this 10th day of May, 2013.


_____/S/_____
Joseph W. Steele
Kenneth D. Lougee
STEELE & BIGGS
5664 South Green Street
Salt Lake City, UT  84123


_____/S/_____
Eric H. Weinberg
The Law Offices of Eric H. Weinberg
149 Livingston Avenue
New Brunswick, NJ  08901

___/S/_____
Richard W. Schulte (Ohio Bar No. 0066031)
812 E. National Road, Suite A
Vandalia, Ohio 45377
(937) 435-7500

**Attorneys for Plaintiff**


## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing **UTAH'S RESPONSE TO MERCK'S MOTION AND INCORPORATED MEMORANDUM FOR ENTRY OF ORDER FOR PRODUCTION AND PROTECTIVE ORDER** has been served on Liaison Counsel, Russ Herman, Phillip Wittmann and Ann Oldfather, by U.S. Mail and e-mail or by hand delivery and e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8(B), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 10th day of May, 2013.


_____/S/_____
Joseph W. Steele
Kenneth D. Lougee
STEELE & BIGGS
5664 South Green Street
Salt Lake City, UT  84123

8