**EXHIBIT D**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: Vioxx | * MDL Case No. 1657 |
| | * |
| PRODUCTS LIABILITY | * SECTION L |
| LITIGATION | * |
| | * JUDGE FALLON |
| *This document relates to* | * |
| | * MAGISTRATE JUDGE |
| *Sandra Elliott v. Merck Sharpe & Dohme Corp.,* | * KNOWLES |
| **2:06-cv-10987-EEF-DEK** | * |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**DEFENDANT MERCK SHARP & DOHME CORP.'S
SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF
ITS MOTION FOR SUMMARY JUDGMENT**

On June 29, 2012, Defendant Merck Sharp & Dohme Corp. ("Merck") filed a motion for summary judgment in Ms. Elliott's case, arguing that her personal injury claims against Merck are barred by the doctrine of judicial estoppel because she did not list them as an asset in her 2009 bankruptcy proceeding as required. Rec. Doc. 63959. Merck's motion was noticed for submission on July 25.

On July 24, Ms. Elliott filed a motion requesting an additional four weeks to respond to Merck's motion so that she could seek to amend her 2009 bankruptcy filings to include her claims against Merck. Rec. Doc. 64004. Merck opposed Ms. Elliott's request for an extension on the grounds that under well-established Fifth Circuit precedent on judicial estoppel, debtors who failed to disclose their claims in bankruptcy proceedings are not permitted to resurrect such claims by re-opening the bankruptcy proceedings and amending their petitions, and therefore that Ms. Elliott's proposed course of action would be futile. Rec. Doc. 64007.

1103035v1

At the Vioxx MDL status conference on August 16, 2012, this Court asked the parties to submit supplemental briefs in this matter within ten days.[1] Accordingly, Merck hereby submits its supplemental memorandum in support of its motion for summary judgment in Ms. Elliott's case.

## I.   Brief Factual Summary

The facts underlying Merck's motion for summary judgment are clear and undisputed. But because Ms. Elliott attempts to blur the timeline to create confusion regarding the false statements she made to the bankruptcy court, the key events bear repeating here in brief:

Ms. Elliott filed her personal injury lawsuit against Merck on September 26, 2006, alleging that that her use of Vioxx caused her to experience congestive heart failure on May 12, 2003. *See* Ex. 1 ¶4; Ex. 2 at 2; Ex. 3 at 2.[2] Ms. Elliott subsequently enrolled in the Vioxx Resolution Program, alleging there that Vioxx had caused her to suffer a heart attack on May 12, 2003. *See* Ex. 4 § 1. While her lawsuit against Merck was still pending before this Court and while her claim was actively enrolled in the Vioxx Resolution Program, Ms. Elliott made the decision to file for Chapter 7 bankruptcy.

On June 30, 2009, Ms. Elliott signed her bankruptcy petition and accompanying schedules and statements under penalty of perjury, attesting that she had ***no contingent or unliquidated claims of any nature*** and that she was ***not a party in any suit or administrative proceeding***, either at that moment or within a year preceding the filing of the bankruptcy petition. Ex. 10 at 10, 25, 28, 27. These statements were undisputedly false. ***For every single***

---

[1]   This period was suspended for several days due to the closure of the Court's electronic filing system during Hurricane Isaac.

[2]   All exhibits referenced herein were attached to Defendant's Statement of Material Facts As To Which There Is No Dispute, filed on June 29, 2012. Rec. Doc. 63959-3.

*day* that Ms. Elliott had a bankruptcy petition pending that asserted she had no concurrent lawsuits or claims, she was simultaneously seeking monetary recovery from Merck on her Vioxx claims—but those claims were *never* disclosed to the bankruptcy court. As a result, when the bankruptcy court issued its "no-asset" discharge to Ms. Elliott on October 9, 2009, erasing approximately $40,000 of her debts and leaving her creditors empty-handed, it did so based on her false representations that she had no pending claims or lawsuits of any type. Ex. 10 at 23; Ex. 11 at 2; Ex. 12.

Ms. Elliott now attempts to explain her false statements to the bankruptcy court by stating that prior to the time that the Gate Committee actually issued its Notice of Ineligibility with respect to her claim on July 6, 2009, her original personal injury counsel *predicted* that her claim "would not be accepted into the global settlement and would be dismissed." Rec. Doc. 64030-1 (Aug. 1, 2012 Elliott Aff.) ¶ 3. Based on this prediction, together with her bankruptcy counsel she deliberately decided to falsely state in her bankruptcy filings that she had no pending claims and was not a party to any lawsuit. *Id.* ¶ 4.

However, the undisputed record suggests that Ms. Elliott had every intention of continuing to pursue her claims against Merck after she made these false statements to the bankruptcy court: After the Gate Committee ultimately issued its Notice of Ineligibility with regard to Ms. Elliott's claim in the Settlement Program, Ms. Elliott swiftly submitted a timely Future Evidence Stipulation ("FES"), indicating that she intended to exit the Resolution Program and resume litigating her lawsuit in this Court. Ex. 6; Ex. 7 ¶ 14. When her first FES was rejected by the Claims Administrator because it was not notarized, she again acted swiftly, submitting a properly signed and notarized FES within two days. Ex. 6 at 6; Ex. 7 ¶¶ 8, 15, 17. When Ms. Elliott's lawsuit was subsequently dismissed by this Court on October 30, 2009 for

failure to meet the requirements of Pretrial Order 43 (several weeks *after* the bankruptcy court gave her a "fresh start" by discharging all her debts), *see* Rec. Doc. 26346, she waited only a few short months before pursuing her claims with renewed vigor by retaining new counsel and petitioning this Court on April 22, 2010 for reinstatement of her lawsuit. *See* Rec. Doc. 40303 at 1. As Ms. Elliott herself stated in the affidavit submitted with her motion to reinstate her case, she understood that if she did not qualify for a settlement she could "return to the litigation," she "ha[s] always wanted to pursue this claim and [she] ha[s] done everything within her ability as a lay person to make that happen." *See* Ex. 8 ¶¶ 3 6.

## II.   Argument

"Judicial estoppel is a common law doctrine that prevents a party from assuming inconsistent positions in litigation." *In re Superior Crewboats, Inc.*, 374 F.3d 330, 334 (5th Cir. 2004). The doctrine is designed "to protect the integrity of the judicial process by preventing parties from playing fast and loose with the courts to suit the exigencies of self interest." *In re Coastal Plains, Inc.*, 179 F.3d 197, 205 (5th Cir. 1999). "[J]udicial estoppel is particularly appropriate where . . . a party fails to disclose an asset to a bankruptcy court, but then pursues a claim in a separate tribunal based on that undisclosed asset." *Love v. Tyson Foods, Inc.*, 677 F.3d 258, 261-62 (5th Cir. 2012) (quoting *Jethroe v. Omnova Solutions, Inc.*, 412 F.3d 598, 600 (5th Cir. 2005)). For judicial estoppel to apply, only three criteria need be met: "(1) [t]he party is judicially estopped only if its position is clearly inconsistent with the previous one; (2) the court must have accepted the previous position; and (3) the non-disclosure must not have been inadvertent." *In re Vioxx Prods. Liab. Litig.*, 2:07-cv-906, 2012 WL 3043165, at *2 (E.D. La. July 25, 2012) (Fallon, J.) (quoting *Superior Crewboats*, 374 F.3d at 335); *see also Love*, 677 F.3d at 261.

4

Ms. Elliott apparently does not dispute (nor could she dispute) that the facts of her case meet these three criteria for judicial estoppel. Indeed, she acknowledges that far from being inadvertent, her decision to state falsely to the bankruptcy court in July 2009 that she had no pending claims and was not a party in any lawsuit was a deliberate choice she made after consulting with her counsel. *See* Rec. Doc. 64030 at 3; Rec. Doc. 64030-1 ¶¶ 3, 4. Instead, she suggests an assortment of other reasons why this Court should deviate from well-established Fifth Circuit precedent and not apply the doctrine of judicial estoppel to bar her claims. Specifically, in various pleadings and in conversation with this Court, Ms. Elliott's counsel has argued that (1) her claims against Merck should be allowed to proceed because she intends to re-open her 2009 bankruptcy and amend her petition to correct her false statements and include her personal injury claims; (2) in making her false statements to the bankruptcy court, she acted on the advice of her attorney; (3) in making her false statements, she acted with no "evil motive;" and (4) Merck will not be prejudiced if her claim is allowed to proceed. Each of these arguments lacks merit and should be rejected.

### A.  Ms. Elliott Cannot Resurrect Her Claims By Seeking To Amend Her Bankruptcy Petition At This Late Date

Characterizing her false statements to the bankruptcy court as a "procedural deficiency," *see* Rec. Doc. 64030 at 1, Ms. Elliott states that she intends to re-open her bankruptcy case to include her claims against Merck. She thus asks the Court, assuming her proposed amendment can be accomplished, to overlook her previous false statements that she left uncorrected for over three years until they were pointed out by Merck, and allow her to pursue her claims as if the false statements were never made.

But this very approach has been rejected time and time again by courts in the Fifth Circuit and elsewhere, for "'[a]llowing [a debtor] to back-up, re-open the bankruptcy case, and

5

1103035v1

amend his bankruptcy filings, only after his omission has been challenged by an adversary, suggests that a debtor should consider disclosing personal assets only if he is caught concealing them." *Love*, 677 F.3d at 265-66 (quoting *Superior Crewboats*, 374 F.3d at 336 and *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1288 (11th Cir. 2002)). "Judicial estoppel was designed to prevent such abuses." *Superior Crewboats*, 374 F.3d at 336; *see also Guay v. Burac*, 677 F.3d 10, 21 (1st Cir. 2012) (applying the doctrine of judicial estoppel despite debtors' attempt to include claims in bankruptcy proceeding after discharge was granted, and noting that allowing the debtors "to rely on their belated report" of previously undisclosed claims "would neither serve the equities of this case nor create the proper incentive for future debtors to disclose assets in a bankruptcy proceeding completely and accurately"); *Moses v. Howard Univ. Hosp.*, 606 F.3d 789, 800 (D.C. Cir. 2010) (rejecting debtor's attempt to "cure" his failure to disclose by reopening and amending his bankruptcy petition to include previously undisclosed claims); *Barger v. City of Cartersville*, 348 F.3d 1289, 1297 (11th Cir. 2003) (same, noting that the debtor "only sought to reopen the bankruptcy estate after the defendants moved the district court to enter summary judgment against her on judicial estoppel grounds," and "[a]s such, [her] disclosure upon re-opening the bankruptcy estate deserves no favor")); *Thompson v. Sanderson Farms, Inc.*, No. 3:04CV837-WHB-JCS, 2006 U.S. Dist. LEXIS 48409, at *23 (S.D. Miss. May 31, 2006) (stating that "[a] plaintiff/debtor should not be allowed to amend a bankruptcy petition only after his omission has been challenged by an adversary" (citing *Superior Crewboats*, 374 F.3d at 336)); *Loyd v. Harrah's Shreveport/Bossier City Holding Co.*, No. Civ.A.03-0757-S, 2005 WL 3113028, at *2 (W.D. La. Nov. 21, 2005) ("The Fifth Circuit case law is clear. The court system will not encourage debtors to take a chance and not disclose assets knowing that if

they are caught the bankruptcy can be reopened. The judicial system should not be abused in this manner." (citing *Superior Crewboats*, 374 F.3d at 336)).

The Fifth Circuit most recently reaffirmed this longstanding precedent only a few months ago in *Love v. Tyson Foods, Inc.*, 677 F.3d at 265-66, decided in April 2012. In that case, the plaintiff filed an employment discrimination suit against his former employer while his Chapter 13 bankruptcy proceeding was pending, and did not disclose his discrimination lawsuit to the bankruptcy court. *Id.* at 261-62. Applying judicial estoppel, the district court granted summary judgment in favor of the employer and dismissed Mr. Love's case. *Id.* at 262. On appeal, Love argued, *inter alia*, that his "positions are no longer inconsistent" because he had by then supplemented his bankruptcy filings to include his employment discrimination lawsuit. *Id.* at 236. Relying on *Superior Crewboats*, the *Love* Court affirmed summary judgment and decisively rejected this argument, once again "declin[ing] to invite such abuses" of the judicial system.[3] *Id.* at 265-66 (noting that "under this rationale, a dishonest debtor could, in almost

---

[3] In reaching its holding, the *Love* Court distinguished another recent Fifth Circuit judicial estoppel decision, *Reed v. City of Arlington*, 650 F.3d 571 (5th Cir. 2011) (en banc). In *Reed*, the court declined to apply judicial estoppel where a "blameless bankruptcy trustee" sought to collect a judgment that a debtor, having concealed the judgment during bankruptcy, was himself estopped from pursuing. *Reed*, 650 F.3d at 572. The *Love* Court determined that Mr. Love's case was distinguishable from *Reed* because the dishonest debtor himself (*i.e.*, Mr. Love) was the party who sought to pursue the previously undisclosed claim and stood to benefit from that claim, rather than the "innocent Chapter 7 trustee[]" in *Reed*. *Love*, 677 F.3d at 266. Ms. Elliott's case is thus distinguishable from *Reed* on the same basis. Moreover, as the *Love* Court noted, in *Reed*, the district court had fashioned a remedy whereby the Trustee could pursue the judgment for distribution to the debtor's creditors, but the dishonest debtor was prevented from realizing any gains at all from the claims that he had not timely disclosed to the bankruptcy court, even if the Trustee ultimately collected a surplus beyond what was required to repay his debts. *Reed*, 650 F.3d at 573; *Love*, 677 F.3d at 266. Thus *Reed* also reaffirmed the core principle of judicial estoppel that a debtor, having obtained judicial relief on the representation that no claims existed, cannot herself later seek to benefit from such undisclosed claims. *See Coastal Plains*, 179 F.3d at 208. The *Reed* Court also suggested alternative ways, beyond the doctrine of judicial estoppel, that

7

every case, conceal his claims from his creditors and assert them without his creditors' knowledge unless an opponent forced disclosure").

The Fifth Circuit's precedent regarding judicial estoppel is clear: "A debtor is required to disclose all potential claims in a bankruptcy petition." *See Kamont v. West*, 83 Fed. App. 1, 2 (5th Cir. 2003) (quoting 11 U.S.C. § 521(1)). "A debtor must amend her schedules if circumstances change." *Id.* (quoting *Coastal Plains*, 179 F.3d at 208). "When a debtor fails to disclose a pending or potential claim in her bankruptcy petition, she is judicially estopped from bringing that claim later." *Id.* (quoting *Coastal Plains*, 179 F.3d at 210). If, as she asserts, Ms. Elliott had no desire to hide her claims against Merck from the bankruptcy court and from her creditors, and she made her false statements in June 2009 only because she believed her claims against Merck would soon be dismissed, she could have sought to correct this "procedural deficiency" before she asked this Court to reinstate her lawsuit in April 2010. Instead, Ms. Elliott has continued for three years to conceal from the bankruptcy court the existence of the personal injury claims she has been actively pursuing before this Court, and her efforts to correct her false statements have come only after they were pointed out by her adversary in litigation. This is precisely the "abuse" that the doctrine of judicial estoppel seeks to prevent. *See Superior Crewboats*, 374 F.3d at 336; *Coastal Plains*, 179 F.3d at 205.

### B. Alleged Reliance On Counsel Cannot Excuse Ms. Elliott's False Statements

Ms. Elliott also argues that judicial estoppel should not bar her lawsuit because she "acted on the advice of previous counsel when omitting her claim against Merck in her bankruptcy filings." Rec. Doc. 64030 at 3. But reliance on an attorney does not relieve a

---

debtors might be discouraged from making false statements to bankruptcy court, including "revoking the debtors' discharges and referring them to the United States District Attorney for potential criminal prosecution." *Reed*, 650 F.3d at 576 (quoting *Biesek v. Soo Kine R.R. Co.*, 440 F.3d 410, 413 (7th Cir. 2006)).

8

1103035v1

bankruptcy debtor "of her affirmative duty to disclose nor of the diligence required to ensure . . . that her sworn statements remain true." *In re Walker*, 323 B.R. 188, 196 (S.D. Tex. 2005) (citing *In re Sholdra*, 249 F.3d 380, 383 (5th Cir. 2001) (holding that a debtor's purported inexperience with financial affairs did not negate the fact that he made false oaths by knowingly swearing to false information, and the debtor's reliance on the advice of counsel did not relieve the debtor of his duties)); *see also Barger*, 348 F.3d at 1295 (holding that even where it was undisputed that debtor's attorney failed to list a claim on the schedule of assets after debtor specifically told him about the claim, that nondisclosure could not be considered inadvertent, and judicial estoppel barred the claim).

Moreover, Ms. Elliott signed her bankruptcy petition in her personal capacity, attesting that the information contained therein was true and correct. At this point, she is "bound by her attorney's conduct and her own signature on her bankruptcy petition." *In re Vioxx*, 2012 WL 3043165, at *3; *see also Link v. Wabash R.R. Co.*, 370 U.S. 626, 634 n.10 (1962) ("[I]f an attorney's conduct falls substantially below what is reasonable under the circumstances, the client's remedy is against the attorney in a suit for malpractice. But keeping this suit alive merely because plaintiff should not be penalized for the omissions of his own attorney would be visiting the sins of plaintiff's lawyer upon the defendant.").

### C. Evil Motive Is Not A Requirement For Judicial Estoppel

Ms. Elliott also suggests that her claims against Merck should survive the straightforward application of judicial estoppel because she did not act with an "evil motive" in concealing her claims from the bankruptcy court. Rec. Doc. 64030 at 3. But regardless of how she might characterize her frame of mind when she decided to make her false statements to the bankruptcy court, "bad faith is not a requirement for the doctrine of judicial estoppel to apply." *In re Vioxx*, 2012 WL 3043165, at *3. Rather, as discussed above, judicial estoppel applies when three

9

1103035v1

criteria are met: (1) the position of the party to be estopped is clearly inconsistent with its previous one; (2) a court accepted that previous position; and (3) the nondisclosure was not inadvertent. *Superior Crewboats*, 374 F.3d at 335. Each of these criteria is easily met by the undisputed facts in Ms. Elliott's case, and the doctrine thus bars Ms. Elliott from asserting her claims.

### D.  Prejudice or Lack of Prejudice to Merck is Irrelevant

Lastly, Ms. Elliott has suggested that the Court should decline to apply the Fifth Circuit's longstanding precedent on judicial estoppel to bar her claims because Merck will not be prejudiced if she is permitted to amend her bankruptcy petition and continue her lawsuit before this Court—in other words, that Merck would be in the same position it would have been in had she truthfully disclosed her Vioxx claims in her 2009 bankruptcy filings. This argument misses the very point of judicial estoppel in this context—to "protect the integrity of the judicial process" and "the integrity of bankruptcy system," which "depends on the full and honest disclosure by debtors of all their assets." *Love*, 677 F.3d at 261 (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001), and *Coastal Plains*, 179 F.3d at 208). Because judicial estoppel is intended to protect *the judicial system itself*, "those asserting judicial estoppel need not demonstrate individual prejudice." *Burnes*, 291 F.3d at 1286; *see also Love*, 677 F.3d at 261 ("Because the doctrine [of judicial estoppel] is intended to protect the judicial system, *rather than the litigants*, detrimental reliance by the opponent of the party against whom the doctrine is applied is not necessary." (quoting *Coastal Plains*, 179 F.3d at 205) (alterations and emphasis in original)); *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 598 (6th Cir. 1982) ("[J]udicial estoppel may be applied even if detrimental reliance . . . does not exist."); *Zapata Gulf Marine Corp. v. Puerto Rico Mar. Shipping Auth.*, 731 F. Supp. 747, 750 (E.D. La. 1990) ("[J]udicial estoppel does not require privity, reliance, or prejudice. This is because judicial estoppel is not concerned

10

with the relationship between the parties, but with the integrity of the judicial process, which may be injured by inconsistent positions regardless of privity, reliance, or prejudice."). Whether Merck would or would not suffer prejudice is therefore wholly irrelevant to the determination of whether judicial estoppel should bar Ms. Elliott's claims.

## CONCLUSION

For the foregoing reasons as well as the reasons set forth in its original motion, the Court should grant Merck's Motion for Summary Judgment and dismiss Plaintiff Sandra Elliott's Complaint with prejudice.

Dated: August 31, 2012

>
> Respectfully submitted,
>
> /s/ Dorothy H. Wimberly
> Phillip A. Wittmann, 13625
> Dorothy H. Wimberly, 18509
> STONE PIGMAN WALTHER
> WITTMANN L.L.C.
> 546 Carondelet Street
> New Orleans, Louisiana 70130
> Phone: 504-581-3200
> Fax:    504-581-3361
>
> Defendants' Liaison Counsel
>
> —and—
>
> Douglas R. Marvin
> Eva Petko Esber
> M. Elaine Horn
> Emily Renshaw Pistilli
> WILLIAMS & CONNOLLY LLP
> 725 Twelfth Street, N.W.
> Washington, D.C. 20005
> Phone: 202-434-5000
> Fax:    202-434-5029
>
> Attorneys for Merck & Co., Inc.

1103035v1

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Merck's Supplemental Memorandum of Law in Support of Its Motion for Summary Judgment has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail, upon Liaison Counsel Ann Oldfather by e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8C, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 31st day of August, 2012.

/s/ Dorothy H. Wimberly
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana 70130
Phone: 504-581-3200
Fax: 504-581-3361
dwimberly@stonepigman.com
Defendants' Liaison Counsel

1103035v1