# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX Products Liability Litigation | * | MDL No. 1657 |
| This Document Relates to: | * | SECTION L |
| State of Utah v. Merck, et al. | * | JUDGE ELDON E. FALLON |
| | * | MAGISTRATE JUDGE KNOWLES |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### PLAINTIFF STATE OF UTAH'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON JUDICIAL ESTOPPEL

### INTRODUCTION

The State of Utah hereby moves for summary judgment under FRCP 56. The State seeks an order holding that Merck may not rely upon the defense of the statute of limitations. The State bases its motion upon the principle of judicial estoppel applied in this Multi-District Litigation and the Fifth Circuit. Merck told this court, and this court accepted Merck' argument and evidence, that public disclosure of Merck's falsity in representations of Vioxx safety and efficacy came with the filing of the Texas State Medicaid Case on June 30, 2005. *In re Vioxx Products Liability Litigation,* 889 F. Supp. 2nd 857 (E.D. La. 2012).

The operative statute of limitations is one year. *State v. Apotex Corp,* 282 P.3d 66, 78 (Utah 2012); Utah Code Annotated §78B-2-302(3). The State believes that the statute of limitations runs from the date that the Attorney General obtained actual knowledge that Merck had made false representation and omissions with respect to Vioxx's safety. In Utah, it is a

1

question of fact as to when a plaintiff has sufficient knowledge to bring a cause of action. *Arnold v. Grigsby,* 289 P.3d 449 (Utah 2012). However, Merck told this court that public knowledge of its falsity occurred when Texas filed a Medicaid Complaint on June 30, 2005. Thus, given Merck's concession, Utah timely filed its Utah False Claims Action in April 2006.

The salient law with respect to this motion for summary judgment is as follows. Judicial estoppel is a doctrine applied by the court in order to protect the integrity of its own processes. "Judicial estoppel is a common law doctrine that prevents a party from assuming inconsistent positions in litigation. The purpose of the doctrine is to protect the integrity of the judicial process by preventing parties from playing fast and loose with the courts to suit the exigencies of self-interest." *In the Matter of Superior Crewboats Inc.,* 374 F. 3d 330, 334 (5th Cir. 2004). In the federal system, "There are three requirements for judicial estoppel to apply: (1) The party is judicially estopped only if its position is clearly inconsistent with the previous one; (2) the court must have accepted the previous position; and (3) the non-disclosure must not be inadvertent. A nondisclosure is considered inadvertent only when, in general, the debtor either lacks knowledge of the undisclosed claims or has no motive for their concealment." *In re Vioxx Products Liability Litigation,* 889 F. Supp. 2nd 857 (E.D. La. 2012). In the Federal System, "detrimental reliance" is not required. In re *Superior Crewboats* at 334.

**Factual Predicates**

1. Merck has pled that public knowledge of falsity in its statements and actions dates from June 30, 2005 when Texas filed its Medicaid complaint. Merck made that pleading in this court and before your Honor. *See In re Vioxx Products Liability Litigation,* 2011 WL 7498938 (E.D.La.), attached hereto as Exhibit A.

2. This court adjudicated the claims of a relator based upon the Washington, D.C. False Claims Act. That act, like its federal counterpart, allows private individuals to bring actions on behalf of the state through *qui tam* proceedings. However, the individual's action must be on personal knowledge and not based upon public disclosure of the incriminating evidence. *In re Vioxx Products Liability Litigation,* 2011 WL 7498938.

3. Merck moved for Summary Judgment holding that this court lacked jurisdiction over the matter as it was filed after it became publically known that Merck had dissembled with respect to Vioxx's safety and efficacy profile.

4. As evidence of public disclosure, Merck cited the filing of the Texas Complaint against Merck. That complaint was filed June 30, 2005. Merck's reply brief states, "After all, once allegations of fraud have been disseminated in the public domain "a *qui tam* action would serve no purpose" because the government is itself in a position to vindicate society's interests. *United States ex rel. Feingold v. AdminaStar Fed, Inc.,* 324 F.3d 492, 495 (7th Cir 2003) (interpreting federal FCA). That is clearly the case here, since two government entities filed similar suits against Merck… *See also* Orig. Pet., *Texas v. Merck co.,* No. GV 503021 (Dist. Ct. Travis County, Tex. Filed June 30, 2005), attached hereto as Exhibit B, page 3.

5. The Texas complaint alleges that Merck engaged in knowing misrepresentations including, but not limited to, direct representations to the Texas Medicaid program that Vioxx was safe and effective as well as advertising that falsely represented the safety of Vioxx.

6. The first notice of falsity received by David Stallard in the Utah Attorney

General's case was notice of the filing of the Texas Complaint. Thus, Utah claims that the date at which it began its investigation of falsity was after June 30, 2005. *See* Affidavit of Stallard, attached hereto as Exhibit C.

7. This court looked to predecessor Medicaid complaints alleging falsity. "Accordingly predecessor complaints filed outside of the District of Columbia, also trigger the bar date."

8. The court also noted that sufficient allegations of Merck's fraud permitted the filing of a Purchase Claims Master Class Action Complaint in the MDL on August 2, 2005. That complaint alleged that Merck had intentionally or recklessly, suppressed, omitted and misrepresented the risks of Vioxx.

9. Although Merck cited articles in the New York Times as early as May 22, 2001 which did not using the word "fraud." "[T]hat there were people out there who are taking these drugs that should not be." The court found that these articles "hinted" at fraud but did not find that the articles established fraud. "Hints" of falsity do not begin the running of a Utah Statute of Limitations. *Arnold v. Grigsby,* 2012 UT 61 (September 28, 2012).

10. Based upon Merck allegations of the Texas case and the Court's reference to the Purchase case, the court found that "[T]he allegations in the relator's complaint are substantially identical to the publically disclosed allegations of fraud against Merck. Both sets of allegations deal with the actual risks posed by Vioxx in spite of its knowledge of those risks."

11. Merck has no specific knowledge of when the State learned that its representations, statements and omissions were false. The State posed Interrogatory 14.

**Interrogatory No. 14.** If you maintain that the Utah Attorney General had

4

knowledge of the falsity of the claims relating to the safety profile of Vioxx prior to December of 2005, please state the basis of that knowledge and the names of any witnesses who will so testify.

**Merck Answer:** The allegations in Plaintiff's complaint and Plaintiff's responses to Merck's discovery requests provide reference to materials and documents that should have made Plaintiff aware of Merck's alleged conduct. Further responding, Merck refers Plaintiff to the relevant scientific and media publications related to Vioxx that were publically available at the time of any alleged "false and misleading "conduct. In addition, Merck refers Plaintiff to the various litigation filings and rulings related to Vioxx including those in the federal Vioxx MDL (Emphasis added), of which this case is a part. Finally, Merck states that various agencies and actors who worked on behalf of the State of Utah—including but not limited to employees of Utah's Medicaid Program—obtained materials and documents that should have made Plaintiff aware of any alleged and misleading conduct with respect to Vioxx.

12. The court should note that Merck identifies no individuals who can testify. It is a non-answer. It certainly provides no evidence that contradicts Merck's judicial admissions.

## ARGUMENT

Merck now claims that the Statute of Limitations on the Utah False Claims Actions ran prior to April 25, 2006. It is a Utah Statute of Limitations and Utah law controls when a statute of limitations begins to run.

### A. The Former Utah False Claims Act Required the State to Plead and Prove a High Degree of Scienter.

Prior Utah Code Annotated §26-20-1 et seq. required the State to show a higher standard of scienter than does the present Act. We find this requirement in the definition section, former UCA §26-20-2.

    B. (2) "False Statement" or "False Representation" means a statement or representation which is knowingly and willfully made if the person[1] making the statement has knowledge of the falsity thereof.
    C. (3) "Knowing" and "Knowingly" mean that a person is aware of the nature of the conduct and that his conduct is substantially certain to cause the intended result.

In *State v. Apotex Corp,* 282 P.3d 66, 78 (Utah 2012) the Utah Supreme Court noted that while the sections finding liability are the same in the revised statute, the level of scienter was lowered in the succeeding statute. "We note that before the UFCA's amendments in 2007, a "false statement" was defined as a "statement …which is knowingly and *willfully* made." Footnote 8 (Italics by the Court.) The "only notable difference between the pre-amended version of the UFCA and the amended version of the UFCA is its definition of "false statement" and "false representation." Prior to the 2007 amendments, the statute defined each term as a "statement or representation that is knowingly and *willfully* made if the person making the statement or representation has knowledge of the falsity thereof." Footnote 9 (Italics by the Court).

### B. Utah Statutes of Limitations do not run prior to a party gaining full knowledge of its cause of action.

The Utah Supreme Court has held:

> To be constitutional, a statute of limitations must allow a reasonable time for the filing of an action after a cause of action arises. *Horn v. Schaffer,* 47 Utah 55, 151 P. 555 (1915); *Saylor v. Hall*, Ky., 497 S.W. 2d 218 (1973). In *Wilson v. Iseminger*, 185 U.S. 55, 62, 22 S.Ct. 573, 575, 46 L.Ed. 804 (1902), the United States Supreme Court stated:
>
> > It may be properly conceded that all statutes of limitation must Proceed on the idea that the party has full opportunity afforded him to try his right in the courts. A statute could not bar the existing

---

[11] "Person" means a corporation. Former UCA 26-20-2(5) and UCA 26-20-2(6).

> rights of claimants without affording tis opportunity; if it should do so, it would not be a statute of limitations, but an unlawful attempt to extinguish rights arbitrarily, whatever the purport of its provisions.

*Berry By and Through Berry v. Beech Aircraft,* 717 P.2d 670, 672 (Utah 1985).

Utah law consistently holds that a party's cause of action is protected by Article I. Section 11 of the Utah Constitution which provides that "All courts shall be open, and every person, for an injury done in his person, property or reputation shall have remedy by due course of law…" The *Berry* decision involved the running of a statute of repose prior to the accrual of a cause of action. This was found unconstitutional. The legislature could not eliminate or unduly restrict causes of action. The right to come into a Utah Court is fundamental. *Jeffs v. Stubbs*, 970 P.2d 1234, 1250 (Utah 1998).

*Apotex* required the State to plead its UFCA cause of action with URCP 9(b) particularity. In order to plead with such particularity, the Attorney General had to have knowledge of the willful and knowing conduct of Merck. That conduct would include the making of misrepresentations and omissions concerning the safety and efficacy profile of the drug.

Any other rule would lead to mischief. The federal government told Utah to protect scarce Medicaid resources. The legislature passed a law requiring the Attorney General to fill that mandate. Merck would have the court believe that in order to have a valid claim, the Attorney General must file suit long before he has knowledge that the conduct, representations and omissions made the claim false. The provisions of URCP 11 bind the Attorney General, like all lawyers. URCP 11(b)(3) requires a certification that the allegations have factual support.

7

Thus, the relevant date is when the State knew of the falsity of the information. *See Arnold v. Grigsby,* 2012 UT 61. (The Statute of Limitations for Medical Malpractice begins to run only when the plaintiff knows she was injured and that the injury is a result of negligence. Further, when the plaintiff obtained sufficient knowledge to bring a cause of action is fact specific.)

### C. Merck Judicially Admitted that Public Disclosure of its Falsity Occurred on June 30, 2005

The Court is concerned with the running of a Utah statute of limitations. An allegation of the running of the statute of limitations is an affirmative defense in Utah. *James v, Galetka,* 965 P.2d 567 (Utah 1998). Merck has the burden, under Utah law "of proving every element necessary to establish that the statute of limitations bars the plaintiff's complaint. *Ladd v. Bowers Trucking, Inc.,* 264 P.3d 752 (UT App 2011).

Although Utah substantive law applies, as long as this case remains before the MDL court, federal procedural rules apply. Under *Celotex v. Datrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), it is enough for a party who would not bear the burden of proof at trial to move for summary judgment based upon the lack of its opponent's evidence. "If a defendant moves for summary judgment on the basis of an affirmative defense…the defendant bears the burden of establishing the affirmative defense." *See* Merck's Motion for Summary judgment relating to Sandra Elliot v. Merck, 2:06-cv-10987-EEE-DEK, page 6; *In re Vioxx Products Liability Litigation,* 889 F. Supp. 2d 857 (E.D. La. 2012), attached hereto as Exhibit D.

On the other hand, Merck, which has the burden of proof and persuasion with respect to the affirmative defense of the statute of limitations. It must provide positive evidence demonstrating a question of fact. The Court should judicially estop Merck from raising evidence

that there was public knowledge of falsity before June 30, 2005. The court should not allow Merck to argue public knowledge as of June 30, 2005 in one context and then deny it in subsequent proceedings.

Summary judgment may resolve an affirmative defense such as the statute of limitations. Both moving and non-moving parties may rely upon judicial estoppel. Because Merck bears the burden of proof of the expiration of the statute of limitations, the state may meet its initial burden of FRCP 56 proof by showing Merck's contrary position, and that the court accepted the contrary position. This is not a novel proposition. In this case, Merck has pursued and received summary judgment against a plaintiff, Sandra Elliott, because of judicial estoppel. *In re Vioxx Products Liability Litigation,* 889 F. Supp. 2d 857 (E.D. La. 2012).

## CONCLUSION

Summary Judgment against Merck is appropriate on its claims of the expiration of the Utah statute of limitations. Merck took the position that the Texas complaint demonstrated public knowledge of the falsity of Merck's representations in the Medicaid context. The Court accepted those representations and based its order upon Merck's asserted position. It would violate the doctrine of judicial estoppel for Merck to argue a different date as to when the State of Utah should know or should have known that Merck was making fraudulent misrepresentations with respect to Vioxx. As the date of the Complaint was within one year of the filing of Utah's complaint, the statute of limitations under former UCA §26-20-1 *et seq* is satisfied.

If the Court were not inclined to grant summary judgment in the State's favor, Merck's judicial admission along with Mr. Stallard's consistent affidavit would be sufficient to raise questions of fact in either the Federal or State proceedings.

DATED this 16th day of May, 2013.

/S/
Joseph W. Steele
Kenneth D. Lougee
STEELE & BIGGS
5664 South Green Street
Salt Lake City, UT  84123


/S/
Eric H. Weinberg
The Law Offices of Eric H. Weinberg
149 Livingston Avenue
New Brunswick, NJ  08901


/S/
Richard W. Schulte (Ohio Bar No. 0066031)
812 E. National Road, Suite A
Vandalia, Ohio 45377
(937) 435-7500

**Attorneys for Plaintiff**

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing **PLAINTIFF STATE OF UTAH'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON JUDICIAL ESTOPPEL** has been served on Liaison Counsel, Russ Herman, Phillip Wittmann and Ann Oldfather, by U.S. Mail and e-mail or by hand delivery and e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8(B), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 16th day of May, 2013.

_____/S/_____
Joseph W. Steele
Kenneth D. Lougee
STEELE & BIGGS
5664 South Green Street
Salt Lake City, UT 84123