# Exhibit 1

STATE OF NEW YORK
SUPREME COURT: COUNTY OF ERIE

---

MICHAEL WODOWSKI

        Plaintiff,

   -vs-

MERCK & CO., INC.
MODEN-GIROUX, INC. d/b/a
TRANSIT HILL PHARMACY

        Defendants.

---

**WCS&R**
**JUL 2 1 2008**
**RECEIVED**

*COMPLAINT*

Index Number:

FILED
ACTIONS & PROCEEDINGS

MAY 27 2008

ERIE COUNTY
CLERK'S OFFICE

    Plaintiff above named, though his attorneys, MISERENDINO, CELNIKER, SEEGERT & ESTOFF, P.C., as and for his cause of action against the Defendants herein states and alleges as follows:

    1.    That at all times hereinafter mentioned, the Plaintiff, MICHAEL WODOWSKI, resides at 39 Williamstowne Court in the Town of Cheektowaga County of Erie and State of New York.

    2.    That at all times hereinafter mentioned, the Defendant, MERCK & CO., INC. is a foreign corporation duly organized and existing pursuant to the laws of the State of New Jersey with its principle office for the transaction of business located at 1 Merck Drive, P.O. Box 100, Whitehouse Station, New Jersey.

    3.    That at times hereinafter mentioned, the Defendant, MODEN-GIROUX, INC., is a domestic corporation authorized to do business in the State of New York with a principle office for the transaction of business located at 91 Rochester Road, P.O. Box 188, Middleport, New York 14105.

    4.    That at all times hereinafter mentioned, the Defendant, MODEN-GIROUX, INC., was doing business as Transit Hill Pharmacy located at 6344 Transit Road in the Village of Depew, County of Erie and State of New York.

5. That at all times hereinafter mentioned, the Defendant MODEN-GIROUX, INC., sold and distributed Vioxx, a COX-2 selective, non steroidal anti-inflammatory drug (NSAID) manufactured by MERCK & CO., INC., at an entity identified as Transit Hill Pharmacy located at 6344 Transit Road in the Village of Depew, County of Erie and State of New York.

6. That at all relevant times, MERCK & CO., INC., through its agents, servants and/or employees, was the designer, marketer, manufacturer, distributor and seller of Vioxx, a COX-2 selective, non steroidal anti-inflammatory drug (NSAID).

7. That at all times hereinafter mentioned, the Defendant, either directly or through its agents, servants and/or employees, sold and distributed Vioxx in the State of New York for the treatment of arthritis pain, and inflammation.

8. That at all times hereinafter mentioned, the Defendant, Merck & Co., Inc., sold certain quantities of said product nationwide and more specifically in Western New York and sold such product to distributors who in turn sold said product in Western New York (including but not limited to MODEN-GIROUX, INC., d/b/a Transit Hill Pharmacy).

9. That at all times hereinafter mentioned, Defendant Merck & Co., Inc., tested, studied, researched, evaluated, endorsed, designed, formulated, compounded, manufactured, produced, processed, assembled, inspected, distributed, marketed, labeled, promoted, packaged, advertised for sale, prescribed, sold and distributed, or otherwise places in the stream of interstate commerce, the prescription drug Vioxx.

10. That at all relevant times, the Defendant manufactured, distributed, sold, marketed and or otherwise promoted Vioxx without notice to the potential consumers of the dangers associated with the ingestion of this drug.

11. That upon information and belief and at all times hereinafter mentioned, the Defendant, Merck & Co., Inc., was licensed to do business in the State of New York.

12. That upon information and belief and at all times hereinafter mentioned, the Defendant, Merck & Co., Inc., was authorized to do business in the State of New York.

13. That upon information and belief and at all times hereinafter mentioned, the Defendant, Merck & Co., Inc., was doing business in the State of New York.

14. That upon information and belief and at all times hereinafter mentioned, the Defendant, Merck & Co., Inc., regularly transacted business in the State of New York and continues to do so.

15. That this action arises out of the actions of the Defendant, MERCK & CO., INC., its agents, servants and/or employees in transacting business and contracting to provide goods and services in the State of New York.

16. That upon information and belief and at all times hereinafter mentioned, the Defendant, MERCK & CO., INC., manufactures certain products which it distributes through interstate commerce into the State of New York and derives substantial revenue from said distribution including pharmaceutical products used and consumed in the State of New York.

17. That the Defendant, MERCK & CO., INC., through its agents, servants and/or employees expected or should reasonably have expected that its acts would have consequences to persons generally in New York State and the Defendant drives substantial revenue from interstate commerce and/or international commerce.

18. That at all times hereinafter mentioned, the Defendant, MERCK & CO., INC., committed a torturous act within the State from which this lawsuit arises.

19. That at all times hereinafter mentioned, MERCK & CO., INC., committed a torturous act without the State causing injury to the Plaintiff, MICHAEL WODOWSKI within the State.

20. This Complaint seeks redress for damages sustained by Plaintiff's for the personal injuries he sustained as a direct result of his use of the prescription drug Vioxx, manufactured sold and/or distributed by the Defendants herein.

21. That all times hereinafter mentioned, the Plaintiff, MICHAEL WODOWSKI came in contact with said product when it was prescribed to him by his treating physician for his arthritic pain and inflammation beginning in June of 2002 until such time as said drug was removed from the market.

22. That the Plaintiff filled his prescriptions and purchased said drug from Defendant, MODEN-GIROUX, INC, (doing business as Transit Hill Pharmacy) at 6344 Transit Road, Depew, New York.

23. That the Plaintiff relied upon said product for the treatment of his arthritic pain and inflammation.

24. That as a result of the foregoing, on or about the 29th day of May, 2005, the Plaintiff was caused to suffer a cerebral vascular accident (stroke) which included a bilateral occipital lobe infarct with right temporal lobe infarct resulting in serious and permanent injuries.

25. The Food and Drug Administration approved Vioxx on May 20, 1999 for the treatment of dysmenorrhea (painful menstrual cramps), management of acute pain in adults, and for relief of the signs and symptoms of arthritis. Subsequent to FDA approval, Vioxx was widely advertised and marketed by all named Defendants as a safe and effective pain relief medication.

26. Vioxx is a member of a class of drugs known as "NSAIDs" (non-steroidal anti-inflammatory drug), but more specifically contains cyslooxygenase 2 ("COX-2") inhibitory properties. Generally, NSAIDs prevent the formation of fatty acid cyclooxygenases, of which there are two known types ("COX-1" and "COX-2"). Vioxx is generally different than NSAIDs in that it is solely a COX-S inhibitor. The rationale being that if the COX-1 enzyme is unaltered, the patient will experience fewer gastrointestinal complications commonly associated with NSAIDs. Further, the inhibition of COX-2 enzyme is said to decrease pain and inflammation.

27. After Vioxx was approved and made available to the public, Merck sponsored the VIGOR study to obtain information regarding clinically meaningful gastrointestinal events and to develop a large controlled database for overall safety assessment. At the conclusion of the VIGOR study, it was reported that serious cardiovascular events occurred in 101 patients who took Vioxx, compared to 46 patients who took naproxen (a type of over-the-counter NSAID). Additionally, myocardial infarctions ("MI") occurred in 20 patients in the Vioxx treatment group as opposed to only four patients in the naproxen treatment group.

28. In addition to the aforementioned, Vioxx has been linked to several severe and life threatening medical disorders including, but limited to edema, changes in blood pressure, heart attack, stroke, seizures, kidney and liver damage, pregnancy complications and death. These known material risks were not disclosed to or shared with Plaintiff by any Defendant.

29. Defendants' strategy beginning in the 1990's has been to aggressively market and sell their products by falsely misleading potential users about the products and by failing to protect users from serious dangers that Defendant knew or should have known to result from the use of these products.

30. Defendants widely and successfully marketed Vioxx in the United States, by undertaking an advertised blitz extolling the virtues of Vioxx in order to induce widespread use of the products. The marketing campaign consisted of advertisements, promotional literature to be placed in the offices of doctors and other health care providers, and other promotional materials provided to potential Vioxx users.

31. The advertising program, as a whole, sought to create the image, impression and belief by consumers that the use of Vioxx was safe for human use, had fewer side effects and adverse reactions than other pain relief medications and would not interfere with daily life, even though the Defendants knew these to be false, and even though the Defendants had no reasonable grounds to believe them to be true.

32. Defendants purposefully downplayed and understated the health hazards and risks associated with Vioxx. Defendants, through promotional literature, audio conferences, professional meeting and press releases deceived potential users of Vioxx by relaying positive information, including testimonials from satisfied users, and manipulating statistics to suggest widespread acceptability, while downplaying the known adverse and serious health effects. Defendants concealed material relevant information from potential Vioxx users and minimized user and prescriber concern regarding the safety of Vioxx.

33. In particular, in the materials produced by Defendants, Defendants falsely misrepresented the severity, frequency and nature of adverse health effects caused by Vioxx, and falsely represented that adequate testing had been conducted concerning Vioxx.

34. That in 2001, the FDA required Merck & Co., Inc., to notify all health care professionals of the risk associated with Vioxx.

35. Defendant Merck's conduct was such that the FDA wrote the company a "Warning Letter" in September 2001 which demanded Merck to correct the false and/or misleading messages contained in the promotional campaign for Vioxx. Most if not all of the noted misrepresentations were made in reference to the VIGOR study conducted by Merck.

36. As a result of the Defendants advertising and marketing efforts, and representations concerning the subject products, Vioxx was and continued to be pervasively prescribed throughout the United States, until it was voluntarily withdrawn from the market in September of 2004.

37. If the Plaintiff in this action would had known the risks and dangers associated with Vioxx, he would not have taken Vioxx and consequently would not have been subject to its severe side effects.

## AS AND FOR THE FIRST CAUSE OF ACTION FOR THE PLAINTIFF, MICHAEL WODOWSKI - NEGLIGENCE

38. The Plaintiff, MICHAEL WODOWSKI, restates and realleges paragraphs "1" through "37" with the same force and effect as if they were separately restated, renumbered and realleged herein.

39. That the aforesaid incident occurred through the fault, neglect and carelessness of the Defendant, MERCK & CO., INC., in the negligent development, formulation, manufacturing, laboring, sale, delivery and supply of the aforementioned product, both generally and that it provided said product for the sale with inadequate or no warnings, cautions or directions concerning the dangers and limitations of this product; failed to properly, throughly and adequately test said product before releasing the drug to the market; failed to properly and throughly analyze the data resulting from the pre-marketing tests of Vioxx; failed to conduct sufficient post-market testing and surveillance of Vioxx; designed, manufactured, advertised, distributed and sold Vioxx to consumers, including Plaintiff, without an adequate warning of the significant and dangerous risks of Vioxx and without proper instructions to avoid the harm which could foreseeably occur as a result of using the drug; failed to exercise due care when advertising and promoting Vioxx; negligently manufactured, marketed, advertised, and distributed Vioxx after Defendant knew or should have known of its adverse effects; Defendants knew or should have known that consumers such as the Plaintiff would foreseeably suffer an injury as a results of Defendants failure to exercise ordinary care as described above; negligently continued to market Vioxx to consumers including the Plaintiff when there was safer alternative methods to treat arthritis and pain and was otherwise careless and negligent in the premises.

40. The aforesaid incident occurred as a result of the fault, neglect and carelessness of the Defendant, MODEN-GIROUX, INC., doing business as Transit Hill Pharmacy, through its agents, servants and/or employees in negligently distributing and selling the prescription drug Vioxx after Defendants knew or should have known of its adverse side effects; distributed and sold Vioxx to consumers including Plaintiff, without an adequate warning of the significant and dangerous risks of Vioxx and without proper instructions to avoid the harm which could foreseeably occur as a result of using the drug; failed to exercise due care when distributing and selling Vioxx; Defendants knew or should have known that consumers such as the Plaintiff would receive or suffer an injury as a result of Defendants failure to exercise ordinary care; distributed and sold Vioxx to consumers

including Plaintiff in a negligent and careless manner and was otherwise careless and negligent in the premises.

41. That following and as a direct result of the Defendants actions, Plaintiff, MICHAEL WODOWSKI, sustained severe and permanent injuries including but not limited to a catastrophic stroke which included a bilateral occipital lobe infarct with right temporal lobe infarct, confusion related to stoke; vision problems related to stroke; motor problems related to stroke; mental capacity severely diminished related to stroke; seizures related to stroke; hallucinigations related to stroke; disabilities included but not limited to expressive language disorders; articulation language problems; word retrieval problems; difficulty comprehending; attention span problems; injuries to the nerve and nervous system; was otherwise rendered sick, sore, lame and disabled and prevented from following his usual duties, activities and occupations and has been and will in the future be caused to incur and spend large sums of money for hospital and surgical care, physicians' services, nursing care, x-rays and medical supplies in all to his substantial monetary damage.

42. Defendants conduct as described above was committed with knowing, conscious, wanton, willful and deliberate disregard for the value of human life and the rights and safety of consumers such as Plaintiff therefore entitling Plaintiff to punitive damage so as to punish Defendant and deter from similar conduct in the future.

### AS AND FOR THE SECOND CAUSE OF ACTION OF THE PLAINTIFF, MICHAEL WODOWSKI - WARRANTIES

43. The Plaintiff, MICHAEL WODOWSKI, restates and realleges paragraphs "1" through "42" with the same force and effect as if they were separately restated, renumbered and realleged herein.

44. That upon information and belief, the Defendants, as part of its design, manufacturing, testing, marketing, distribution and sale expressly and impliedly warranted to all users that said products were of merchantable quality, fit for the use for which they were intended and would pass in the trade without exception.

45. That the Defendants breached said warranties by failing to design, formulate, manufacture, sell, distribute, label and supply a product which can be used without an unreasonable danger of personal injury to the users thereof, and specifically the Plaintiff, in that said product was not of fair, average quality in the trade thereof, said product was not fit for the ordinary purpose for which it was customarily used; Defendant knew or should have known that said product was

dangerous and likely to cause damage to the users thereof; Defendant provided inadequate and/or no warnings concerning the dangers and deficiencies associated with said product when they knew or should have known of the dangerous and deficient nature of said product; that Defendant failed to properly and adequately test and/or inspect said product; that Defendant did not provide or establish proper and adequate quality control methods so its to provide a safe product, that Defendant did not keep abreast of the state of the art, in the science and engineering of the industry involving the formulation, manufacturing, distribution or laboring of said product; that Defendant did not disclose to purchasers and users of said product; that said products was inheritently unreasonably dangerous and that Vioxx had dangerous propensities when put to its intended use and would cause severe injuries to the user.

46. That Defendant knew or should have known that users were relying upon the expertise of Defendants in designing, formulating, manufacturing, selling, distributing, labeling and supplying said product.

47. That Plaintiff was and is unskilled in the research, design and manufacturer of the aforementioned products and reasonably relied entirely on the skill, judgment and express and implied warranty of the Defendants in using the aforementioned products.

48. That the Defendant expressly represented and warranted to Plaintiff and all users by and through statements made by Defendants or their authorized agents or sales representatives, orally and in publications, package inserts and other written materials intended for medical patients and the general public, that the aforementioned product was safe, effective, fit and proper for their intended use. That in reliance upon said warranties, Plaintiffs purchased said product.

49. In utilizing the aforementioned product, Plaintiffs relied on the skill, judgment, representations and foregoing warranties of the Defendants; said warranties and representations were false in that the aforementioned product was not safe and was unfit for the uses that it was intended, in that Vioxx had dangerous propensities when put to its intended use and would cause severe injury to the users.

50. That the defective, dangerous and deficient condition of the aforementioned product as supplied was the proximate cause of the injury sustained by the Plaintiff, MICHAEL WODOWSKI.

51. That as a result of the foregoing breach of warranties by the Defendants, Plaintiff sustained injuries and damages as aforesaid described in all to his substantial monetary damage.

52. Defendants conduct as described above was committed with knowing, conscious, wanton, willful and deliberate disregard for the value of human life and the rights and safety of consumers such as Plaintiff therefore entitling Plaintiff to punitive damage so as to punish Defendant and deter from similar conduct in the future.

### AS AND FOR THE THIRD CAUSE OF ACTION OF THE PLAINTIFF, MICHAEL WODOWSKI - STRICT LIABILITY

53. The Plaintiff, MICHAEL WODOWSKI, restates and realleges paragraphs "1" through "42" with the same force and effect as if they were separately restated, renumbered and realleged herein.

54. At all times hereinafter mentioned, the Defendants sold, distributed, supplied, manufactured, marketed and/or promoted the drug Vioxx (Rofecoxib), which was defective and unreasonably dangerous to consumers, including the Plaintiff herein.

55. At all times hereinafter mentioned, the drug Vioxx was sold, distributed, supplied, manufactured, marketed, and/or promoted by Defendants, was expected to reach, and did reach consumers in the State of New York, including Plaintiff, in the condition that it was when it left and was placed in the general stream of commerce by the Defendant.

56. That at the time of the aforesaid accident, the aforesaid product had not been modified or altered in any way nor had it been damaged or otherwise changed from its original condition and configuration.

57. That at all relevant times the aforesaid product was being utilized by the Plaintiff for the purpose it was intended for in the manner it was intended to be used and in accordance with all applicable instructions and directions provided by the Defendant with respect to the use of said product.

58. That unbeknownst to the Plaintiff, the prescription drug Vioxx contained defects which the Plaintiff intestate could not and did not discover through the use of reasonable care and caution; said defects existed at the time said drug left the care, custody and control of the Defendants.

59. That the defective and unsafe condition of the prescription drug Vioxx was a proximate cause of the injury sustained by the Plaintiff.

60. That the prescription drug Vioxx was not fit for the purpose for which it was intended and this cause of action against the Defendants is brought pursuant to NYS Doctrine of Strict Liability in Tort and /or strict product liability.

61. That following and as a result of the aforesaid conduct on the part of the Defendants, the Plaintiff suffered injuries and damages as alleged herein.

62. That the Defendant is strictly liable for any and all injuries to the Plaintiff caused by the aforesaid defective and unsafe condition of the prescription drug Vioxx in all to his substantial monetary damage.

63. Defendants conduct as described above was committed with knowing, conscious, wanton, willful and deliberate disregard for the value of human life and the rights and safety of consumers such as Plaintiff therefore entitling Plaintiff to punitive damage so as to punish Defendant and deter from similar conduct in the future.

### *AS AND FOR THE FOURTH CAUSE OF ACTION OF THE PLAINTIFF, MICHAEL WODOWSKI - STRICT PRODUCT LIABILITY FAILURE TO WARN*

64. The Plaintiff, MICHAEL WODOWSKI, restates and realleges paragraphs "1" through "63" with the same force and effect as if they were separately restated, renumbered and realleged herein.

65. At all times hereinafter mentioned, the Defendants knew or in the exercise of reasonable care and caution should have known that the drug was defective and unreasonably dngerous when it left the possession of the Defendants, in that it contained warnings insufficient to alert members of the medical community and consumers including the Plaintiff of the dangerous risks and reactions associated with the drug including but limited to; increased risk of cardiovascular disease, cerebrovascular accidents and other serious and life threatening side effects.

66. The Plaintiff used the drug for its intended purpose.

67. The Plaintiff could not have discovered any defect in the drug through the exercise of care.

68. That the Defendants, are held to the level of knowledge of an expert in the field.

69. The warnings that were given by Defendants were not accurate, clear, and/or were ambiguous.

70. That the Defendants has a continuing duty to warn the Plaintiff of the dangers.

71. That following and as a result of the aforesaid conduct on part of the Defendants, same resulted in injury and damage to the Plaintiff as aforesaid described in all to his substainial monetary damage.

72. Defendants conduct as described above was committed with knowing, conscious, wanton, willful and deliberate disregard for the value of human life and the rights and safety of consumers such as Plaintiff therefore entitling Plaintiff to punitive damage so as to punish Defendant and deter from similar conduct in the future.

**WHEREFORE**, Plaintiffs demand judgment against the Defendants in the following amount:

For the **First Cause of Action** of the Plaintiff, MICHAEL WODOWSKI, in a sum of money in excess of the jurisdictional limits of all lower courts in the State of New York plus the costs and disbursements of this action.

For the **Second Cause of Action** of the Plaintiff, MICHAEL WODOWSKI, in a sum of money in excess of the jurisdictional limits of all lower courts in the State of New York plus the costs and disbursements of this action.

For the **Third Cause of Action** of the Plaintiff, MICHAEL WODOWSKI, in a sum of money in excess of the jurisdictional limits of all lower courts in the State of New York plus the costs and disbursements of this action.

For the **Fourth Cause of Action** of the Plaintiff, MICHAEL WODOWSKI, in a sum of money in excess of the jurisdictional limits of all lower courts in the State of New York plus the costs and disbursements of this action.

Dated:   May 27, 2008
         Buffalo, New York

_____
JOY ELLEN MISERENDINO, ESQ.
MISERENDINO, CELNIKER, SEEGERT & ESTOFF, P.C.
*Attorneys for Plaintiff*
964 Ellicott Square Building
295 Main Street
Buffalo, New York  14203
(716) 854-1002