UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | |
|     Products Liability Litigation | * | |
| | * | |
| This Document Relates to: | * | MDL No. 1657 |
| | * | |
|     *State of Alaska v. Merck & Co., Inc.*, | * | SECTION L |
|       Case No. 2:06-cv-3132 | * | |
| | * | JUDGE ELDON E. FALLON |
|     *State of Montana v. Merck & Co., Inc.*, | * | |
|       Case No. 2:06-cv-4302 | * | MAGISTRATE JUDGE |
| | * | KNOWLES |
|     *Hood ex rel. State of Mississippi v. Merck &* | * | |
|       *Co., Inc.*, Case No. 2:05-cv-6755 | * | |
| | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**<u>DEFENDANT'S MEMORANDUM IN SUPPORT OF COMBINED MOTION TO
COMPEL RULE 30(B)(6)
DEPOSITIONS AND OPPOSITION TO STATE OF MISSISSIPPI'S
MOTION FOR PROTECTIVE ORDER</u>**

      The Attorneys General of Alaska, Mississippi and Montana allege that defendant Merck Sharp & Dohme Corp. ("Merck") violated their respective states' laws in connection with the marketing and sale of the drug Vioxx. Pursuant to Fed. R. Civ. P. 30(b)(6), Merck noticed the deposition(s) of a representative of each AG's office to provide non-privileged information regarding the factual basis for its claims against the Company so that Merck can adequately prepare its defense. Counsel for all three states have informed Merck that the plaintiffs do not intend to comply with the deposition notices, and the Mississippi AG has already filed a motion for protective order to prevent the Rule 30(b)(6) deposition from going forward.

      These efforts to evade Rule 30(b)(6) depositions are improper. As set forth below, courts have repeatedly held that a government plaintiff must make a representative available to testify, just like any other party to litigation. This should not be a controversial point. Otherwise, any

1126703v1

defendant sued by a state agency or attorney general would effectively be forced to go to trial with both hands tied behind its back.  The AGs purport to be concerned that Merck is seeking privileged information, but Merck merely seeks ***non-privileged*** testimony about the bases of the AGs' claims.  In any event, the AGs would be free to make privilege objections at deposition, just like any other litigant.  Simply put:  the AGs should not be allowed to sue Merck and seek significant penalties against the Company and then refuse to provide basic information about their claims.

## BACKGROUND

In June 2012, Merck served each of the Plaintiffs with interrogatories seeking information regarding the basis of their claims against the Company.  (*See, e.g.*, Def.'s 2d Set of Interrogs. to Pl. ("MS Interrogs."), *State of Mississippi v. Merck*, June 6, 2012 (attached as Ex. 1).)  In response, the AGs generally identified broad categories of documents – such as "Dear Healthcare Provider letters," "television advertisements" and "print advertisements" – that the AGs claim "communicated the risk profile, benefits, and efficacy of Vioxx in an unfair or deceptive manner."  (*See, e.g.*, Pl.'s 2d Supp'l Resps. to Def.'s Second Set of Interrogs. ("MS Resps."), Ex. A ¶ 1, *State of Mississippi v. Merck*, Oct. 26, 2012 (attached as Ex. 2).)

Merck also asked in its interrogatories whether each Plaintiff was aware of any physicians who read any allegedly misleading statements or later determined they would not have prescribed Vioxx based on additional information about the drug's risks.  (*See, e.g.*, MS Interrogs., Interrog. No. 4; *see also* Def. Merck's 2d Set of Interrogs. to Pl. ("MT Interrogs."), Interrog. No. 8, *State of Montana v. Merck*, June 6, 2012 (attached as Ex. 3).)  The AGs objected to these requests and did not provide meaningful responses to them.  The same is true of Merck's requests regarding how many alleged violations the AGs are seeking penalties for and what

alleged practices the AGs seek to enjoin.  (*See, e.g.*, Resps. & Objections of Pl. State of Alaska to First Set of Interrogs. to Pls. ("AK Resps.") (attached as Ex. 4), Resp. to Interrog. No. 24 (regarding penalties); *see also id.* Resp. to Interrog. No. 26 (regarding injunctive relief); MS Resps., Resp. to Interrog. No. 1 (regarding penalties).)  In short, the AGs' interrogatory responses do not provide Merck with the information it needs to defend itself in this litigation.

Merck served each of the AGs with very similar Rule 30(b)(6) deposition notices to clarify various issues that were not sufficiently addressed in the AGs interrogatory responses. (*See, e.g.*, Def.'s Notice of Videotaped Dep. of Pl. Pursuant to FRCP 30(b)(6) ("AK Dep. Notice"), *State of Alaska v. Merck*, Apr. 1, 2013 (attached as Ex. 5); *see also* Def.'s Notice of Videotaped Dep. of Pl. Pursuant to FRCP 30(b)(6) ("MT Dep. Notice"), *State of Montana v. Merck*, Apr. 1, 2013 (attached as Ex. 6); Def.'s Notice of Videotaped Deposition of Pl. Pursuant to FRCP 30(b)(6), *State of Mississippi v. Merck*, Apr. 1, 2013 (attached to MS AG's Mot. as Ex. 1).)  The Rule 30(b)(6) notices seek testimony regarding, *inter alia*:  (1) the manner in which Merck's documents allegedly "presented information concerning the safety of Vioxx in an unfair or deceptive manner"; (2) "[e]ach and every way that Merck's detailing of doctors was unfair, false, misleading or deceptive"; (3) "[e]ach and every way that Merck's distribution of FDA-approved product inserts/labels for Vioxx was unfair, false, misleading or deceptive"; and (4) "[e]ach and every way that Merck's distribution of sample packages for Vioxx was unfair, false, misleading or deceptive."  (*See, e.g.*, AK Dep. Notice, Ex. A ¶¶ 1-5; MT Dep. Notice, Ex. A ¶¶ 1-5.)

On April 18, 2013, after a meet-and-confer call regarding the 30(b)(6) notices served on the Alaska and Montana AGs, counsel for those plaintiffs sent an email to Merck's counsel stating that the AGs believed it would be "inappropriate . . . to put up witnesses on the various

3

topics" because they "ask for information that is work product of the AG offices and would be based on expert opinions."  (*See* E-mail from Brian Vines to Ben Barnett ("4/18/13 Vines E-mail"), Apr. 18, 2013 (attached as Ex. 7).)

On April 30, 2013, the Mississippi AG filed a motion for protective order objecting to Merck's 30(b)(6) notice and asking the Court to bar Merck from deposing anyone in the Mississippi AG's office.  According to the Mississippi AG:  (1) "the only person(s) who could provide the most knowledgeable testimony . . . are the State's counsel," and (2) the noticed deposition seeks information "protected by the attorney work-product privilege, the attorney-client privilege, and the deliberative process privilege."  (*See* Pl.'s Mem. of Law in Supp. of Mot. for Protective Order ("MS AG Mot.") at 2-3 (Apr. 30, 2013).)[1]

## ARGUMENT

Fed. R. Civ. P. 30(b)(6) expressly provides that a "a party may name as the deponent a public or private corporation, a partnership, an association, ***a governmental agency***, or other entity and must describe with reasonable particularity the matters for examination," and "[t]he named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf."  Fed. R. Civ. P. 30(b)(6) (emphasis added).  Rule 30(b)(6) does not include any exception for state attorneys general, and there is no reason that one would apply.  To the contrary, "Rule 30(b)(6) expressly applies to a government agency and provides neither an exemption from Rule 30(b)(6) nor special consideration concerning the scope of discovery, especially when [the agency] voluntarily initiates an action"

---

[1]  The Mississippi AG made no attempt to confer with Merck before filing its motion for protective order and failed to include with its motion any certification that it attempted to do so, as required under Rule 26(c).  *See* Fed. R. Civ. P. 26(c) (a motion for protective order "must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action").

against a defendant who needs information from the government to defend itself. *S.E.C. v. Kramer*, 778 F. Supp. 2d 1320, 1327 (M.D. Fla. 2011) (internal quotation marks and citation omitted). Accordingly, courts have repeatedly held that an attorney general must submit to a deposition, "like any other litigant," by preparing a witness to testify on its behalf. *See United States ex rel. Fry v. Health Alliance of Greater Cincinnati*, No. 1:03-cv-167, 2009 WL 5227661, at *3 (S.D. Ohio Nov. 20, 2009) ("[T]he fact that government attorneys are the only individuals with the requisite knowledge to answer Defendants['] questions does not prevent them from preparing a designee to answer the questions. . . . The United States, like any other litigant, has the duty to prepare a witness to testify under oath on its behalf."); *see also Town of Colorado City v. United Effort Plan Trust*, No. CV11-8037-PHX-DGC, 2012 WL 5989482, at *2 (D. Ariz. Nov. 29, 2012) (stating that Utah Attorney General's office will be subject to representative deposition); *Oklahoma ex rel. Edmonson v. Tyson Foods, Inc.*, No. 05-CV-329-GKF-SAJ, 2007 WL 649335, at *2 (N.D. Okla. Feb. 26, 2007) ("Defendant has a method under the Federal Rules of Civil Procedure that will permit Defendant to obtain the information Defendant seeks – a Fed. R. Civ. Proc. 30(b)(6) deposition of Plaintiff [Attorney General of Oklahoma] on topics listed by Defendant."); *Brown, Rudnick, Freed & Gesmer v. Commonwealth*, 17 Mass. L. Rptr. 11 (Super. Ct. 2003) (attached as Ex. 8) (noting that representative of Massachusetts Attorney General's office was deposed as representative of office). The approach taken by these courts is consistent with the 'important purpose" of Rule 30(b)(6): to permit litigants to "pin down" the allegations and defenses offered by adverse parties that are corporations or government agencies "with the same effect as if the testimony were elicited from an individual litigant about his own case." *CRST Van Expedited, Inc. v. J.B. Hunt Transp., Inc.*, No. CIV-04-0651-F, 2006 U.S. Dist. LEXIS 50931 (W.D. Okla. July 24, 2006); *see also Brown, Rudnick*, 17 Mass. L. Rptr. at 11.

5

Here, the three AGs at issue voluntarily brought claims against Merck alleging that the Company violated state law with respect to the marketing and sale of Vioxx. In order to defend itself against those claims, Merck is entitled to know what the Company did that the AGs contend was unlawful. The Mississippi AG has nonetheless staked out the position that any time an attorney general brings a lawsuit, the defendant is barred from taking a Rule 30(b)(6) deposition to discover the basis of the State's claims against it. In addition, all three AGs also argue that the depositions are inappropriate because: (1) Merck seeks information protected by the attorney work-product doctrine and the deliberative-process privilege; and (2) only an expert can explain the basis for an AG's claims against a private party. None of these arguments has merit.

I.      **THE ATTORNEY GENERAL'S OFFICE IS NOT EXEMPT FROM RULE 30(B)(6).**

The Mississippi AG effectively takes the position that it is immune from Rule 30(b)(6) depositions because "the only person(s) who could provide the most knowledgeable testimony requested . . . are the State's counsel," and depositions of counsel are not permitted. (MS AG Mot. at 2.) In support, the AG cites *Shelton v. American Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986). But *Shelton* addressed the circumstances in which counsel for a *private* party may be deposed regarding his client's case. Nowhere does that decision suggest that employees of a **government agency that is itself a party to litigation** are immune from deposition simply because they happen to be lawyers. In any event, *Shelton* does not "hold that opposing trial counsel is absolutely immune from being deposed." *Id*. at 1327. The court expressly noted that "the taking of opposing counsel's deposition" is appropriate where: "(1) no other means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant

and nonprivileged; and (3) the information is crucial to the preparation of the case." *Id*. (internal citation omitted).  All three factors are met here.

To begin, there is no "other means to obtain the information sought."  Merck served each of the AGs with written interrogatories seeking much of the information at issue in the 30(b)(6) notices, but as explained above, the AGs' responses were generalized and vague, and did not provide Merck with the information it needs to defend itself at trial.  In any event, interrogatories "offer inadequate opportunities to refine questions, seek clarification, or follow up on answers compared to oral depositions." *Felix v. City & Cnty. of Denver*, No. 08-cv-02228-MSK-KMT, 2011 WL 1085766, at \*10 (D. Colo. Mar. 24, 2011); *see also Marker v. Union Fidelity Life Ins. Co.*, 125 F.R.D. 121, 126 (M.D.N.C. 1989) ("[b]ecause of its nature, the deposition process provides a means to obtain more complete information and is, therefore, favored" over interrogatories); *Flower v. T.R.A. Indus., Inc.*, 111 P.3d 1192, 1206 (Wash. Ct. App. 2005) ("Answers to interrogatories are an inadequate substitute for deposition testimony pursuant to Rule 30(b)(6).").

In addition, the information sought by Merck is both highly relevant and not privileged. The 30(b)(6) notices seek information about representations by Merck that the AGs claim "communicated the risk profile, benefits, and efficacy of Vioxx in an unfair or deceptive manner" or "'presented information concerning the safety profile and efficacy of Vioxx in an unfair or deceptive manner'"  (*See, e.g.*, AK Dep. Notice, Ex. A ¶ 1.)  This information is of unquestionable relevance because it goes to the heart of the AGs' claims against Merck, and it is not privileged because "it is the factual basis of plaintiffs' claims." *Last Atlantis Capital, LLC v. AGS Specialist Partners*, Nos. 04 C 0397, 05 C 5600, 05 C 5671, 2013 WL 791422, at \*7 (N.D. Ill. Mar. 4, 2013) ("it is only fair that the defendants – who are being hauled into court to defend

themselves against these claims – are allowed discovery on the issue"); *Specht v. Google, Inc.*, 268 F.R.D. 596, 603 (N.D. Ill. 2010) ("[T]he factual bases for allegations in the complaint are not privileged and must be divulged."); *Otsuka Pharm. Co. v. Apotex Corp.*, No. 07-1000(MLC), 2008 WL 4424812, at *4 (D.N.J. Sept. 25, 2008) (denying a protective order where plaintiff argued that it was "entitled to discover the factual bases for the assertions" made by the deponent "because the facts themselves are not privileged").[2]

Finally, the information "is crucial to the case." In fact, it is hard to imagine any information that would be more crucial for Merck to know than what practices the AGs claim violated state law, what conduct the AGs seek to enjoin and the acts for which the AGs seek penalties. After all, Merck cannot properly defend itself against the AGs' claims that its representations about Vioxx were unlawful unless and until it knows which representations are at issue.

---

[2] Counsel for the Montana and Alaska AGs also complain that three of the topics in the deposition notices are irrelevant to the AGs' claims: (1) the "names and contact information of all healthcare providers and consumers who made any complaints" to the AGs about "Merck's promotion, sale, or marketing of Vioxx"; (2) the "names and contact information of all healthcare providers and consumers whom [the AGs] interviewed regarding Merck's promotion, sale, or marketing of Vioxx"; and (3) the "regulation and oversight over activities of pharmaceutical companies" in Alaska. (*See* AK Dep. Notice, Ex. A ¶¶ 9, 12, 13; *see also* 4/18/13 Vines E-mail at 1 (referencing MT Dep. Notice Topic 10, 11 and AK Dep. Notice Topics 9, 12, 13).) These complaints are frivolous. As to the first two issues, the AGs allege that Merck misrepresented the risks of Vioxx to healthcare providers and consumers. To the extent these allegations are supported by a single complaint submitted to any of the three states or a single physician who told any state AG that Merck misled him or her about the drug, Merck is entitled to know those facts. As to the third issue, the requested evidence is also highly probative. Alaska did not take any action against Merck while Vioxx was on the market. Thus, any evidence that the State of Alaska or any of its agencies or officers had any responsibility for regulating Merck's activities while Vioxx was on the market would directly support a defense that the government implicitly or explicitly approved of the Company's conduct by its inaction.

For all of these reasons, the fact that the most knowledgeable members of the AGs' offices happen to be attorneys does not preclude Merck from conducting 30(b)(6) depositions to obtain factual information regarding the bases for the AGs' claims against the Company.

II. **MERCK SEEKS FACTUAL INFORMATION THAT IS NOT SUBJECT TO WORK-PRODUCT PROTECTION OR THE DELIBERATIVE-PROCESS PRIVILEGE.**

The AGs also object to the notices on the asserted grounds that the information Merck seeks is protected attorney work product and/or covered by the deliberative-process privilege. (*See* MS AG Mot. at 3-5; 4/18/13 Vines E-Mail at 1.) These arguments, too, lack merit.

*First*, the AGs cannot evade Rule 30(b)(6) based on a broad claim that the testimony sought will "involve work product." (4/18/13 Vines E-Mail at 1; *see also* MS AG Mot at 12.) Indeed, one court recently rejected a very similar argument in granting a motion to compel the Securities Exchange Commission ("SEC") to submit to a Rule 30(b)(6) deposition. *See Kramer*, 778 F. Supp. 2d at 1328. In *Kramer*, the defendant in an SEC action noticed a Rule 30(b)(6) deposition to discover the "specific facts, information, documents, and/or other evidence specifically relied upon by the Commission, which support a specific cause of action and claim(s) for relief asserted by the Commission" against the defendant. *Id*. at 1326 (internal quotation marks omitted). The SEC objected on the ground that "only Commission counsel worked on the case" and therefore, "a deposition of the Commission would necessarily intrude upon the[ir] work product." *Id*. at 1328. The magistrate judge accepted this argument, but the district court disagreed, noting that the defendant sought "to discover only the facts underlying the claim against him and not the mental impressions of Commission counsel." *Id*. Further, the court held that "[t]o the extent that [the deposition] sought either the work product or mental impression of Commission counsel, the Commission's designated deponent retained the right to refuse to answer on the basis of privilege." *Id*. In addition, the court found that "[p]ermitting the

9

Commission in this instance to assert a blanket claim of [work-product protection] in response to a Rule 30(b)(6) notice creates an unworkable circumstance in which a defendant loses a primary means of discovery without a meaningful review of his opponent's claim of privilege." *Id.*; *see also* 8A Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice & Procedure § 2103 ("permitting a party to invoke work product as a blanket obstacle to a 30(b)(6) deposition seems to undermine the important utility of that device").

The cases cited in the Mississippi AG's briefing are not to the contrary. The majority of the cases cited by the AG merely stand for the general proposition that mental impressions of an attorney prepared in anticipation of litigation are protected attorney work product – a point that no one contests. (*See* MS AG Mot. at 4 (citing *Hickman v. Taylor*, 329 U.S. 495 (U.S. 1947); *In re Kaiser Aluminum & Chem. Co.*, 214 F.3d 586 (5th Cir. 2000); *In re Int'l Sys. & Controls Corp. Sec. Litig.*, 693 F.2d 1235, 1243 (5th Cir. 1982)).) In addition, those few cases that do address the application of the work-product doctrine to 30(b)(6) depositions are inapposite. For example, the 30(b)(6) notice quashed by the court in *FTC. v. U.S. Grant Resources, LLC*, No. Civ.A. 04-596, 2004 WL 1444951 (E.D. La. 2004) (MS AG Mot. at 4), sought a wide range of information regarding the FTC's counsel's investigation of the defendant's practices, including the FTC's "procedures and actions in taking [] affidavits" of consumers who complained about the defendant, "all actions the FTC took to determine the accuracy of the consumer complaints," and the details of "any inquiry made [by the FTC] to determine whether" the defendant engaged in misconduct with respect to specific consumers. *Id.* at *2-3 (internal quotation marks omitted). As the court recognized, the discovery proposed there was inappropriate because it sought far more than just the underlying facts. In addition, the defendant there also sought:

> to discover the FTC's theories as to the underlying facts, the extent of the FTC's knowledge (how much it knows and how much it does not know) as a result of the

> investigative efforts of the attorneys, counsel's impressions regarding the significance of the facts, the nature of the FTC's work product, the FTC's legal position and how it arrived at that position.

*Id.* at *10. Similarly, in *SEC v. Buntrock*, the court held that the discovery at issue was "intended to ascertain how the SEC intends to marshal its facts, documents, and testimonial evidence, and to discover the inferences the SEC believes can be drawn from that evidence." 217 F.R.D. 441, 445 (N.D. Ill. 2003) (MS AG Mot. at 2). By contrast, here, Merck is not seeking information about the AGs' investigations, the extent of their knowledge or their mental processes – it simply seeks to know the precise nature of the allegations against it, including which specific statements Merck made that the AGs believe were unlawful, the bases for factual statements made in the AGs' complaints and the identity of any doctors or consumers who may have lodged a complaint against Merck with any of the AGs. (*See generally* MT Dep. Notice, Ex. A ¶¶ 2-3; AK Dep. Notice, Ex. A ¶¶ 2-3.) Merck simply wants to discover the factual bases for the AGs' allegation that Merck misled consumers so that it can prepare its defense at trial.

The Mississippi AG's other cases are similarly unavailing. For example, in *SEC v. Morelli*, 143 F.R.D. 42 (S.D.N.Y. 1992) (MS AG Mot. at 5), the court ordered the use of contention interrogatories instead of a deposition. As discussed above, however, Merck has already served the AGs with interrogatories, and the responses provided by the AGs were vague and inadequate. Thus, a Rule 30(b)(6) deposition is necessary to obtain the factual information necessary for Merck to defend itself against the AGs' claims. Notably, other federal courts have distinguished *Morelli* on similar grounds. *See, e.g.*, *William Beaumont Hosp. v. Medtronic, Inc.*, No. 09-CV-11941, 2010 U.S. Dist. LEXIS 60370, at *22-23 (E.D. Mich. June 18, 2010) (granting motion to compel Rule 30(b)(6) deposition and rejecting reliance on *Morelli* because "[p]laintiffs should have the opportunity to more fully probe [defendant's] [interrogatory] response using the traditional method for ascertaining facts in the litigation process –

11

examination of a witness"). Because the AGs have refused to provide reasonably specific answers to Merck's interrogatories regarding the bases of their claims, Merck's only viable option is to seek testimony from a member of each AG's office under Rule 30(b)(6).

***Second***, contrary to the Mississippi AG's claim, Merck's Rule 30(b)(6) notices do not "seek[] information protected by the State's deliberative process privilege." (MS AG Mot. at 5.) The deliberative-process privilege shields from disclosure communications "'reflecting advisory opinions, recommendations and deliberations compromising part of a process by which governmental decisions and policies are formulated.'" *Branch v. Phillips Petroleum Co.*, 638 F.2d 873, 881 (5th Cir. 1981) (citations omitted). Because the purpose of the privilege is "to protect the integrity of the administrative decisionmaking process," it only exempts from disclosure communications that are both pre-decisional and deliberative. *Id.* at 882. Importantly, "courts have uniformly held that . . . purely factual information is ***not*** protected by the privilege." *Id.* (emphasis added); *see, e.g.*, *EEOC v. Reed Pierce's Sportman's Grille LLC*, No. 3:10CV541, 2012 U.S. Dist. LEXIS 107235, at *2-3 (S.D. Miss. Aug. 1, 2012) (denying motion to quash deposition where government failed to establish that information sought by defendant was "factual in nature" and thus not "part of the deliberative, decisionmaking process"); *Giezie v. Valley Health Sys., LLC*, No. 2:12-CV-00036-ECR, 2012 WL 3929446, at *8 (D. Nev. Sept. 7, 2012) (inquiry into "the factual underpinnings of [the government's] investigation" not protected from disclosure by the deliberative-process privilege); *Little v. Auburn Univ.*, No. 3:08CV373, 2010 WL 582083, at *2 (M.D. Ala. Feb. 17, 2010) (defendant entitled to 30(b)(6) deposition to pose questions "related to clarifying factual information contained in the [government]'s investigative file").

For example, in *EEOC v. LifeCare Management Services*, the defendants sought to depose a representative from the EEOC about the "facts which were discovered during the investigation" of the charges against it.  No. 02:08-cv-1358, 2009 WL 772834, at *1 (W.D. Pa. Mar. 17, 2009) (internal quotation marks and citation omitted).  The agency sought a protective order quashing the deposition, arguing, *inter alia*, that any "inquiries to the Rule 30(b)(6) representative w[ould] invade the 'deliberative process privilege.'" *Id.* at *2.  The court denied the request, explaining that the deliberative-process privilege did not protect "facts obtained by the [agency] during its underlying investigation." *Id.*

Here, too, Merck merely seeks factual information regarding the basis of the AGs' claims against the Company – including the specific statements by Merck that they claim were false – not the details of any deliberation by the AGs' offices.  Accordingly, the deliberative-process privilege is not implicated.  Moreover, even if the deliberative-process privilege did apply, the Mississippi AG's request for a blanket order quashing the deposition is inappropriate.  As the *LifeCare* court explained, the government "cannot seek protection from Defendants' 30(b)(6) Notice of Deposition by unilaterally declaring all information known to the [agency] as privileged." *Id.* at *2.  Rather, the government, "like all other litigants, should object to actual questions which it believes invade[] the applicable privilege during the deposition." *Id.*; *see also Giezie*, 2012 WL 3929446, at *8 (government "may properly assert objections to specific questions during the deposition on the basis of the deliberative process privilege if a question reasonably appears to seek privileged information").

The cases cited in the Mississippi AG's brief do not compel a different result.  Two cases cited by the AG turn on a specific statutory exemption from disclosure under the Freedom of Information Act that is not at issue here – and certainly do not support the general ban on

13

discovery from government agencies that the AGs appear to advocate.  (*See* MS AG Mot. at 5-6 (citing *Maricopa Audubon Soc'y v. United States Forest Serv.*, 108 F.3d 1089, 1092 (9th Cir. 1997); *Mead Data Center, Inc. v. United States Dep't of the Air Force*, 566 F.2d 242, 256 (D.C. Cir. 1977)).)  And in *Kinoy v. Mitchell*, the court ***declined*** to find that the plaintiffs' requests were protected by privilege.  67 F.R.D. 1, 14 (S.D.N.Y. 1975) (MS AG Mot. at 5).  Instead, the court requested that the AG submit additional briefing making a "particular showing of need for secrecy" over the documents, which the court would then balance against "the litigant's need for the material . . . as well as the principles in favor of broad discovery."  *Id.*  The sole case cited by the Mississippi AG that ***does*** rely on the deliberative-process privilege as a ground for denying a request for a 30(b)(6) deposition is *U.S. Grant Res.*, 2004 WL 1444951, at *9 (MS AG Mot. at 13).  As explained above, however, the court quashed the Rule 30(b)(6) notice there because it found that the defendant's broad deposition notice sought "to delve into the theories, opinions and mental impressions of" government attorneys.  (*See* p. 10, *supra*.)  Here, by contrast, Merck is simply requesting information about the facts supporting the claims lodged against it.  In these circumstances, the deliberative-process privilege does not apply.  *See LifeCare Mgmt. Servs., LLC*, 2009 WL 772834, at * 2 ("deliberative process privilege only protects the opinions, recommendations, and deliberations of [the agency] not the underlying factual information").

### III.   THE TESTIMONY SOUGHT DOES NOT REQUIRE EXPERT OPINIONS.

Finally, there is no merit to the Alaska and Montana AGs' contention that Merck's 30(b)(6) notices "ask for information that . . . would be based on expert opinions." (4/18/13 Vines E-mail at 1.)  Rule 30(b)(6) notices that request information related to the factual bases for a party's claims neither seek nor require expert testimony.  *See Resolution Trust Corp. v. Sands*, 151 F.R.D. 616, 619-620 (N.D. Tex. 1993).

In *Resolution Trust*, for example, the court upheld a magistrate's order denying a motion for a protective order with respect to a Rule 30(b)(6) deposition. There, a bank brought suit against a number of its former officers and directors for negligence and breach of fiduciary duties. The defendants noticed a Rule 30(b)(6) deposition of the bank's corporate representative, seeking information regarding, *inter alia*, the bank's "claims that the officers and directors were negligent, grossly negligent or breached their fiduciary duties;" "the source, usage and content of [certain] standards and guidelines" referred to in the bank's complaint; and the bank's "claims for damages, including the causes and calculation thereof." *Id*. (internal quotation marks omitted). The plaintiff objected to these topics on the ground that the testimony sought could only be provided by an expert witness. *Id*. The magistrate judge and the district court disagreed. According to the district court, the topics in question were appropriate because there was "no apparent attempt to discover anything other than the factual predicates for the [the bank's] causes of action," and Rule 30(b)(6) plainly requires an entity to "designate someone to state the facts upon which [it] bases its claims." *Id*. at 620. Because questions regarding "what the [bank's] claims are" or "what it contends" do not require expert testimony, the discovery was proper. *Id*.

The same is true of the topics identified in Merck's 30(b)(6) notices. As set forth above, the AGs have already provided interrogatory responses generally identifying the types of materials that they allege are misleading and have thereby admitted that this is information within their knowledge. But those generalized responses do not provide Merck with sufficient information to determine what specific statements the AGs contend are untrue or misleading, or any of the other factual bases for the allegations made in their complaints. Accordingly, Merck seeks deposition testimony regarding the facts that the AGs have in their possession that they believe support their claim that Merck engaged in wrongdoing. (*See* AK Dep. Notice, Ex. A ¶¶

15

1-3 (seeking testimony regarding the "way that the . . . documents [and other materials identified by the AGs] allegedly communicated the risk profile, benefits, and efficacy of Vioxx in an unfair or deceptive manner"); *see also* MT Notice, Ex. A ¶¶ 1-3.)  Responding to these questions will not require specialized expert opinions.  It will merely require the AGs to designate representatives who are aware of the relevant facts at issue in this case and can provide the "factual predicates for the [the AGs'] causes of action" against Merck.  *Resolution Trust*, 151 F.R.D. at 620.

## CONCLUSION

For the foregoing reasons, Merck requests that the Court issue an order compelling Plaintiffs to designate representatives to testify regarding the topics in Merck's 30(b)(6) deposition notices and denying the Mississippi AG's motion for a protective order.

Dated:  May 17, 2013

Respectfully submitted,

*/s/ Dorothy H. Wimberly*
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, LA 70130

Douglas R. Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth St., N.W.
Washington, DC 20005

John H. Beisner
Jessica Davidson Miller
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
1440 New York Avenue, N.W.
Washington, DC 20005

ATTORNEYS FOR MERCK SHARP & DOHME CORP.

1126703v1

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing supporting memorandum has been served on Liaison Counsel, Russ Herman, Phillip Wittmann by U.S. Mail and e-mail or by hand delivery and e-mail, upon Ann Oldfather by e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with PreTrial Order No. 8(C), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 17th day of May, 2013.

*/s/ Dorothy H. Wimberly*
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361
dwimberly@stonepigman.com

1126703v1