# EXHIBIT 8

Not Reported in N.E.2d, 17 Mass.L.Rptr. 11, 2003 WL 22707347 (Mass.Super.)
**(Cite as: 2003 WL 22707347 (Mass.Super.))**

Superior Court of Massachusetts, Suffolk County.
BROWN, RUDNICK, FREED & GESMER et al.,[FN1]

FN1. Brown, Rudnick, Freed & Gesmer is a general partnership with three general partners: Brown, Rudnick, Freed & Gesmer, P.C., a Massachusetts professional corporation; Brown, Rudnick, Freed & Gesmer, Ltd., a Rhode Island professional corporation; and Brown, Rudnick, Freed & Gesmer, P.C., a Connecticut professional corporation. Since the filing of this action Brown, Rudnick, Freed & Gesmer, through some form of merger or consolidation, has become Brown, Rudnick, Berlack & Israels, L.L.P. The other plaintiff is Lieff Cabraser, Heimann & Bernstein, L.L.P., a limited liability partnership.

v.
The COMMONWEALTH of Massachusetts et al.[FN2]

FN2. Thomas F. Reilly, in his capacity as Attorney General of the Commonwealth of Massachusetts; and Martin J. Benison, in his capacity as Comptroller of the Commonwealth of Massachusetts. Also included as Mass.R.Civ.P. Rule 19(a) defendants are: Schneider, Reilly, Zabin & Costello, P.C.; Thornton & Naumes, L.L.P.; and Ness, Motley, Loadholt, Richardson & Poole, P.A.

No. 015883BLS.
Oct. 20, 2003.

*MEMORANDUM AND ORDER ON THE DEFENDANTS' MOTION IN LIMINE TO EXCLUDE TESTIMONY*
ALLAN VAN GESTEL, Justice of the Superior Court.

**\*1** The Commonwealth of Massachusetts has moved in limine seeking an order from this Court precluding the plaintiffs from calling as a trial witness the Commonwealth's lead trial counsel, First Assistant Attorney General Dean Richlin ("Mr.Richlin").

Mr. Richlin became employed by the Office of the Attorney General ("AGO") on January 20, 1999, when he accepted the position of First Assistant. This was after the fee agreements central to this case were executed, after the pendency of the Commonwealth's action against the cigarette manufacturers, and after the Master Settlement Agreement ("MSA") was negotiated and signed in November 1998. Nevertheless, the Commonwealth designated Mr. Richlin as its Mass.R.Civ.P. Rule 30(b)(6) witness, at least for the subject of providing testimony about the reasons for the Commonwealth's decision not to pay the plaintiffs under the terms of their contingent fee agreements.

Trial of this very complex and significant matter is now just two weeks away. The plaintiffs have indicated that Mr. Richlin will be called as a witness on the subject of why the Commonwealth has decided not to pay the fees under the contingent fee agreements.

In their memorandum in opposition to the Commonwealth's motion, and in oral argument thereon, the plaintiffs have stated that they do not object to Mr. Richlin's playing a dual role as chief trial counsel and as a witness. Mr. Richlin has indicated his serious ethical concerns that, regardless of the plaintiffs' statements, he may be ethically bound to step down as trial counsel.

Perhaps the paradigm for compelled withdrawal of counsel is when a lawyer gives testimony against his client. Wigmore had little doubt on this score and a source he cited had less: "Mr. Solicitor, to his eternal disgrace, and to the eternal disgrace of the Court who permitted such an outrage on de-

Case 2:05-md-01657-EEF-DEK   Document 64407-9   Filed 05/17/13   Page 3 of 4

Page 2

Not Reported in N.E.2d, 17 Mass.L.Rptr. 11, 2003 WL 22707347 (Mass.Super.)
**(Cite as: 2003 WL 22707347 (Mass.Super.))**

cency, left the bar and presented himself as a witness for the Crown." 6 Wigmore, Evidence, Sec.1911, at 773-74 & n. 2 (Chadbourn rev.1976), quoting 2 Campbell, Lives of the Lord Chancellors 61 (4th ed. 1856).

*Serody v. Serody,* 19 Mass.App.Ct. 411, 413, 474 N.E.2d 1171 (1985). See also *Commonwealth v. Shaiar,* 397 Mass. 16, 21-22, 489 N.E.2d 689 (1986).

Clearly, if Mr. Richlin must withdraw, the Commonwealth will need considerable extra time to get new trial counsel in position to try a case that has over a billion dollars at stake. Further, any such change in the trial date, given this Court's current calendar, will result in a substantial continuance.

In asserting its position insisting upon Mr. Richlin's trial testimony, the plaintiffs say, at p. 3, 489 N.E.2d 689 of their opposition:

the Commonwealth's actual reasons for dishonoring the contingent fee contract are relevant to the breach of contract claim in an important sense: If the jury sees that the Commonwealth actually disavowed its payment obligation on "unreasonable" grounds-e.g., in deference to political pressure about the wisdom of executing the contingent fee agreement in the first place-then it will be more likely to find that the Commonwealth lacks an adequate excuse for nonperformance, and that the contingent fee contract was and is "reasonable."

**\*2** Mr. Richlin's testimony offers the jury a window into the Commonwealth's mindset. The plaintiffs do not intend to call him to testify directly about the Commonwealth's actual reasons for nonperformance. They intend to call him to testify-just as he did at his deposition-about the Commonwealth's *stated* reasons for nonperformance. This testimony will establish that the Commonwealth had four, and only four, stated justifications for its actions, and will demonstrate that at least three of those justifications are pretexts. Mr. Richlin's testimony is therefore relevant and material because it will permit the jury to make a simple, commonsense inference: a party that has a genuine reason to dishonor a contract doesn't need to hide behind artificial or contrived excuses.

This Court has serious question as to whether the Commonwealth's reasons for not honoring the contingent fee agreement are legally relevant to the issues to be presented to the jury. Nor is it convinced that if the reasons stated by Mr. Richlin in his deposition are found by the jury to be pretexts, that will support an inference that there was no genuine reason not to make payments under the contingent fee agreement. And it certainly will not permit an inference that the contingent fee contract is "reasonable ."

In considering the situation presented, this Court must consider "the adverse effect upon the judicial process in the public mind of having lawyers leave counsel table for the witness chair." *Serody, supra,* 19 Mass.App.Ct. at 414, 474 N.E.2d 1171.

FN3 Trial counsel generally may only be called as a witness at trial "subject to certain conditions." *Borman v. Borman,* 378 Mass. 775, 792, 393 N.E.2d 847 (1979). Thus, this Court must consider whether the facts the plaintiffs seek to prove by calling Mr. Richlin "could be proved in a different manner ..." *Kendall v. Atkins,* 374 Mass. 320, 325, 372 N.E.2d 764 (1978). In other words, is there an "equally efficacious" way "of putting the gist of [the lawyer's] expected testimony before the jury." *Byington v. City of Boston,* 37 Mass.App.Ct. 907, 908, 640 N.E.2d 115 (1994).

> FN3. This is not the only issue presented by this case in which there is the potential for adverse effects upon the judicial process in the public mind.

Again, the plaintiffs' opposition provides guidance and points to a resolution. At pp. 14-15 of the opposition, the plaintiffs say:

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in N.E.2d, 17 Mass.L.Rptr. 11, 2003 WL 22707347 (Mass.Super.)
**(Cite as: 2003 WL 22707347 (Mass.Super.))**

Ms. Richlin's sworn deposition testimony fixes and delimits the Commonwealth's stated justifications for disavowing the contract. The deposition transcript, therefore, will be an essential trial tool, ensuring that the plaintiffs can keep a hostile witness "on message," and eliminating the risks of evasion and revisionism. Using Mr. Richlin's deposition to corral another witness, however, will be far less effective than using it to rein in Mr. Richlin himself. From a juror's perspective, a disparity between the recollections of Deponent X and Witness Y will have far less impeachment value than a discrepancy between X's own sworn statements and his testimony at trial.

In short, the plaintiffs want Mr. Richlin's Rule 30(b)(6) deposition testimony to remain unchanged and binding upon the Commonwealth at trial. This, of course, can be accomplished efficaciously by not putting Mr. Richlin on the witness stand and using the key portions of his deposition transcript instead. In that way, the plaintiffs will have no legitimate concern about keeping Mr. Richlin "on message."

ORDER

**\*3** For the foregoing reasons, the Motion In Limine to Exclude the Testimony of First Assistant Attorney General Dean Richlin (Paper # 90) is *ALLOWED,* provided that, if the Court determines on the state of the evidence at the time that the matters to be read are relevant, the plaintiffs may read a redacted version of Mr. Riclilin's deposition to the jury. The version to be read is to be redacted so as to remove all reference to Mr. Richlin by name, instead simply identifying the deponent as the First Assistant Attorney General. A copy of such a redacted version is to be provided to the Court in advance of the start of the trial.

Mass.Super.,2003.
Brown, Rudnick, Freed & Gesmer v. Com.
Not Reported in N.E.2d, 17 Mass.L.Rptr. 11, 2003 WL 22707347 (Mass.Super.)

END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.