UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: VIOXX | * | MDL NO. 1657 |
| | * | |
| PRODUCTS LIABILITY | * | SECTION  L |
| LITIGATION | * | |
| | * | JUDGE FALLON |
| THIS DOCUMENT RELATES TO: | * | |
| THIRD PARTY PAYOR COMMON | * | SPECIAL MASTER JUNEAU |
| BENEFIT FEES | * | |
| | * | |
| FILER: Robert E. Arceneaux/Margaret Woodward/ | * | May 21, 2013 |
| Pascal F. Calogero, Jr. | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**ERIC H. WEINBERG'S MEMORANDUM IN SUPPORT
OF MOTION TO QUASH SUBPOENA IN PART**

MAY IT PLEASE THE COURT:

This memorandum is respectfully submitted on behalf of the Law Offices of Eric H.

Weinberg ("Weinberg") in support of its motion to quash the subpoena issued by the TPP FAC on

May 13, 2013.

The FAC's subpoena calls for Weinberg's production of the following documents:

All records of time spent on any Vioxx Related Matter from February 2005 to present for
any attorney, paralegal, law clerk, or member of your firm.  As used herein, the term "Vioxx
Related Matter" includes any type of Vioxx litigation related activity worked on (e.g.,
personal injury, third-party payor, Attorney General, etc.).  The records should include for
each entry an identification of the individual performing such activity, a description of the
activity performed, the date the activity was performed, and any other information
identifying the work performed and who performed the specific activity.

Weinberg has already produced most of the material requested in accordance with orders

issued by Judge Fallon in the allocation of common benefit funds in the Vioxx personal injury

litigation and in the instant TPP litigation.  These records are already in the TPP FAC's possession,

both in hard copies and in pdf format, and Weinberg does not seek to quash the subpoena to the

extent that it seeks relevant materials which have already been produced..

Weinberg also seeks to quash the subpoena to the extent that it seeks voluminous  new

material on extremely short notice.  The new material includes all of the time entries for Weinberg's

work on private Vioxx cases and on AG matters to the present time.  Of all the claimants against the TPP common benefit fund, Weinberg is the only party of whom such production has been requested; and significantly, the production has not been directed nor even suggested by order of the Court as was the case with the time records Weinberg has already produced.  Judge Fallon's orders make clear what records he considered relevant to allocation of both the Personal Injury Common Benefit Fund, and the TPP Common Benefit Fund. Those records have already been submitted.

Under Rule 45 of the Federal Rules of Civil Procedure, "a court may quash or modify a subpoena if [the subpoena] (1) fails to allow a reasonable time for compliance; (2) requires a person who is not a party to travel more than 100 miles from where the person resides; (3) requires disclosure of privileged or protected matter; or (4) subjects a person to undue burden." In reviewing the burden imposed, the court also must consider the relevance and relative significance of the requested material under Rule 403.  *See also Texas Keystone, Inc. v. Prime Natural Resources, Inc.,* 694 F. 3d 548, 550 (5th Cir. 2012).  The trial Court is vested with broad discretion regarding discovery.  *See Seiferth v. Hellicopters Atuneros, Inc.,* 472 F.3d 266, 270 (5th Cir. 2006).

Weinberg's objections to the TPP FAC's subpoena arise under the first, third, and fourth factors, of Rule 45, unreasonable timing, privilege, and undue burden, and under the relevance requirement of Rule 403.

The timing of the FAC's subpoena is troubling on multiple levels.  As the FAC is no doubt aware, Weinberg has been recently engaged in taking multiple depositions in Vioxx AG cases.  For that reason, the scheduling of the upcoming hearing was extremely difficult for Weinberg, and as the Special Master is aware, Weinberg sought to have the matter submitted on the pleadings because he considered a hearing inefficient and unnecessary.  Nonetheless, at the FAC's insistence, Weinberg rearranged his schedule with some difficulty. Ten days before the scheduled hearing, the FAC sought massive document production.   No one but Weinberg could prepare,  assemble, and review the materials requested, and the FAC's eleventh hour subpoena affords him inadequate time

in which to do so.

Not only does the requested production impose an enormous burden on Weinberg, it is hard to fathom what other purpose the request might serve. In the past few months, and continuing beyond the date of the issuance of the subpoena, Weinberg has logged hundreds of hours of Vioxx time. In seeking all records "to the present," the FAC essentially asks Weinberg to interrupt his work– and his preparation for the hearing– in order to prepare and produce largely irrelevant records of that work for the FAC. But the FAC would have no time to review the production under the schedule established by the Special Master, who has provided for a few hours of hearing time and no briefing beyond the date of the hearing. The return date for the subpoena is the morning of the hearing, leaving the FAC only time while the hearing is in progress to examine the production, if at all.

At the time of this writing, the parties have newly submitted and are awaiting the Special Master's response to request that the matter be submitted on briefs, with a reply brief to be submitted within the week. This does not much change the improper design, predominantly irrelevant character, or harassing nature of the subpoena, whose return date remains May 23, 2013. It appears likely that the FAC anticipated that production would not be possible and sought instead to further some argument by the *nonproduction* of the requested records. Given the impropriety of the request, the FAC should not garner any argumentative advantage from Weinberg's failure to comply.

The FAC has offered no reason whatsoever for allowing Weinberg too little time to prepare the requested records and itself too little time to review them. This matter was referred to the FAC by PTO 57 on August 17, 2011. The FAC had a year and a half in which to request submissions from applicants, and has, with Judge Fallon's direction, made an extensive record relative to the TPP allocation. *See* R. Doc. 64193. The FAC made its preliminary allocation in July of 2012, objections were filed in August, and the Court allowed further discovery during the objection

process.  On December 11, 2012, the FAC made its *final* allocation proposal.  *See* R. Doc. 64193-2.

Thereafter, the Court referred this matter to Special Master Juneau.  In last month's scheduling conference, the parties discussed what further discovery might be needed and counsel for Weinberg indicated that they needed nothing from the FAC except the answer to a single question regarding the Dugan firm's expenditures– which has not yet been provided.  The FAC said nothing about seeking further record production.  To the contrary, the FAC requested a hearing saying that it meant to impeach Weinberg with records in its possession.  In a later telephone conference, discussion ensued about whether the FAC was obligated to produce such records.  The FAC again represented that these impeachment materials were in its possession, and the question arose whether the records had been considered by the FAC in arriving at its allocation recommendation.  The Special Master ruled that the FAC was required to produce documents under its control only if they were considered by the FAC in making its recommendation.  That deadline has long since past, and with it the deadline for the FAC newly to seek production of records which *might* inform its months-old "final" recommendation.  Therefore, the FAC could *only* be seeking the requested documents for purposes of impeachment.   But a witness's credibility can only be impeached by documents which conflict with his testimony, such as the documents which the FAC represented it *already had.*  To the extent the FAC has sought discovery of documents *not in its possession,* it can only *hope* to develop impeachment evidence.  In other words, the records subpoena represents a gigantic, and gigantically-burdensome *fishing expedition*.

Worse yet, the FAC is trolling in unauthorized waters.  In PTO 57 Judge Fallon established the parameters of appropriate inquiry in this matter.  He specifically directed that applicants disclose whether their time and expenses had "previously been submitted in connection with any other applications," and if so, "a detailed statement sufficient to identify the nature and extent of the overlap."  *Id,* at 3.  The FAC solicited such input, and Weinberg complied, affirming that none of his time had been previously submitted or compensated by private clients. *See* R. Doc. 64044, Exhs.

A-7 and B.

The FAC has within its possession Weinberg's prior PI submissions and can easily check the accuracy of his statement against his common benefit submission in the PI case.  In seeking to go beyond that, however, the FAC is grossly exceeding its charge.  First, and most importantly, by issuing its subpoena only to Weinberg, the FAC is skewing a process which Judge Fallon has carefully maintained on a uniform and equitable footing.  In so doing, Judge Fallon has heeded the Fifth Circuit's directives that: "One cannot . . . compare apples to oranges without knowing what the oranges are. *** After all, '[a]llocation means proportion; how does the share [one] counsel is taking compare to the shares others are getting?" *See, In re High Sulfur Content Gasoline Products Liability Litigation, supra*, 517 F. 3d at 234 (quoting *In re Vitamins Antitrust Litig.*, 398 F.Supp.2d at 234).   The FAC cannot fairly look behind Weinberg's submissions without doing the same for other applicants and its ~~otherwn~~ members.  Apart from the unfairness of this burdensome inquiry, it is meaningless in the context of Fifth Circuit precedent, for any documents the FAC recovers from Weinberg alone cannot be compared against any other submissions.  Judge Fallon has not authorized this sort of targeted, individualized discovery attack which reaches well beyond the scope of "prior submissions."

Worst of all, the FAC is trolling for giant squid ink, which can serve no purpose but to muddy the waters of this proceeding.  Obviously, the TPP funds are to be allocated for time devoted to the TPP common benefit.  Therefore, it is relevant to inquire whether any applicant in this proceeding is submitting time devoted to other Vioxx work, for example, to work in the AG cases.  Indeed, Weinberg has posed that very question with regard to the submissions of other applicants, which seemingly seek contribution from the TPP fund for time devoted to AG cases.   *See* Rec. Doc. 64396, Weinberg Memorandum, at 3, 23.    In part, Weinberg sought to avoid any such overlap by cutting off his TPP time entries in September of 2009 when the TPP case was settled. In seeking several *years'* worth of entries beyond that point, the FAC has requested documents of

no conceivable relevance to this allocation.

Before the private TPP cases settled in 2009, there was not always a bright line between Weinberg's private TPP and public TPP (AG actions).   In case-specific work, *e.g.* for his representation of the Utah Attorney General, he can easily separate his entries.   But not trusting him to do so, the TPP FAC has sought production of all of that time as well, notwithstanding the fact that it is clearly privileged and beyond the FAC's subpoena power.

In work that is not case-specific, Weinberg himself has experienced some difficulty in allocating his entries between public and private.   The theories of the cases, and thus, the science, the experts, and the documentary evidence overlap substantially.   Happily, the period of such confusion was of limited duration, because Weinberg did not become involved in the AG cases until well after he had devoted himself to the private TPP litigation, and he did not log substantial time on the AG litigation until after the private TPP cases settled.   For the brief period of temporal overlap, he did the best he could, and superimposed on his choices a sure means to avoid any double-dipping on AG time: he committed that he would not submit any time for which he is compensated from the TPP fund in future AG common benefit allocations.   *See* Rec. Doc. 64396, Weinberg Memorandum, at 23.

The TPP FAC cannot ask for anything more of Weinberg with respect to AG time. Although everyone anticipates that there will be an AG common benefit allocation at some future point, Judge Fallon has not addressed the process for such an allocation.   Clearly, it would be premature to begin dividing funds that have not yet been fully collected in litigation that is still ongoing.  Among the procedures Judge Fallon has not yet announced is the appointment of an AG FAC.   Thus, this TPP FAC is overstepping its bounds in asserting any authority over any time billed in any AG actions.   It may properly inquire whether the time billed against the TPP fund is truly TPP time, but given Weinberg's assertion that it is *and that his time will not be re-billed in any other context*, the TPP FAC has considerably more basis for assurance from Weinberg than from any

other TPP applicant.  Considering that Weinberg has pointed out instances of AG-TPP duplication by other TPP applicants, including FAC members, who have offered no such assurances, the issuance of a records subpoena to Weinberg alone is a noteworthy departure from Judge Fallon's protocol.

Charged with multiple, serious, and fully documented instances of double-dipping, the FAC is attempting to create the appearance that Weinberg is guilty of the same misconduct. Weinberg will be available either on May 23, 2013 to answer any questions the FAC or the Special Master may have about his TPP submissions– or, if the hearing is canceled, to answer any questions put to him by the Special Master.  The FAC's attempted digression into irrelevant and privileged materials that can only be produced at considerable undue burden to Weinberg is due to be denied.

Respectfully submitted:

/s/ Robert E. Arceneaux

_____
Robert E. Arceneaux, La Bar No. 01199
ROBERT E. ARCENEAUX LLC
47 Beverly Garden Drive
Metairie, LA 70001
(504) 833-7533 office
(504) 833-7612 fax
rea7001@cox.net

/s/ Margaret E. Woodward

_____
MARGARET  E.  WOODWARD, La.  Bar
No.13677
3701 Canal Street, Suite C
New Orleans, Louisiana  70119
(504) 301-4333 office
(504) 301-4365 fax
mewno@aol.com

Pascal F. Calogero, Jr., La. Bar No. 03802
AJUBITA, LEFTWICH & SALZER, L.L.C.
1100 Poydras Street
New Orleans LA 70163-1950
(504) 582-2300 office
(504) 582-2310 fax
pcalogero@alsfirm.com

Attorneys for Law Offices of Eric Weinberg

**CERTIFICATE OF SERVICE**

       I hereby certify that the above and foregoing memorandum has been served on a member of the FAC by e-mail, and upon all parties by electronically uploading the same to Lexis Nexis File & Serve Advanced in accordance with Pre Trial Order No.8, on this date, May 21, 2013.

s/Margaret Woodward
_____