## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: VIOXX                  : | MDL Docket No. 1657 |
| PRODUCTS LIABILITY LITIGATION  : | SECTION L |
| THIS DOCUMENT RELATES TO: | JUDGE FALLON |
| | MAG. JUDGE KNOWLES |
| THIRD PARTY PAYOR COMMON | |
| BENEFIT FEES | |

---

**In Re: VIOXX**      :

           :     **MDL Docket No. 1657**

**PRODUCTS LIABILITY LITIGATION** :

           :     **SECTION L**

           :

           :     **JUDGE FALLON**

           :     **MAG. JUDGE KNOWLES**

           :

**THIS DOCUMENT RELATES TO:**   :

           :

**THIRD PARTY PAYOR COMMON**   :

**BENEFIT FEES**           :

---

## THE TPP FEE ALLOCATION COMMITTEE'S
## OPPOSITION TO ERIC H. WEINBERG'S
## MOTION TO QUASH SUBPOENA IN PART

The Third Party Payor Fee Allocation Committee ("TPP FAC") files this Opposition to the Eric H. Weinberg's Motion to Quash Subpoena in Part [Rec. Doc. 64412].

On May 13, 2013, the TPP FAC issued a Subpoena to Produce Documents, Information or Objects or to Permit Inspection of Premises in a Civil Action to The Law Offices of Eric H. Weinberg (the "SDT") . The SDT was served on Mr. Weinberg's office as evidenced by Proof of Service [Rec. Doc. 64395]. Although Weinberg did not submit a copy of the subpoena with his motion, a copy is attached hereto as Exhibit "A", together with the Proof of Service.

Weinberg contends that producing the time records requested in the SDT is in part duplicative of prior materials that he has previously furnished in connection with the *Vioxx* Personal Injury Fee Allocation, that responding to the SDT fails to allow a reasonable time to comply,

requires the disclosure of privileged or protected matter, and that responding would subject Weinberg to an undue burden because much of the material is not relevant.  All of these assertions lack merit.

On August 17, 2011, Judge Fallon, presiding in this MDL, issued Pre-Trial Order No. 57 [Rec. Doc. 63267].  That Order directed the TPP FAC to engage in an analysis and to make a recommendation of those firms seeking common benefit fees.  Certain information including, among other things, information relating to common benefit work performed in any of the private TPP cases, including all hours worked, Lodestar information, a description of the contributions and a certification signed by a member of the firm seeking to recover common benefit fees was the subject of PTO 57.  In response to PTO 57, Eric Weinberg submitted the attached Exhibit "B" dated September 16, 2011, which contained several pages of reports reflecting 1,518 total hours of *Vioxx* time allegedly for common benefit TPP work and $27,392.61 of TPP *Vioxx* expenses.  Thereafter, Mr. Weinberg submitted a Supplemental Vioxx Third Party Payor Common Benefit Application certified on October 17, 2011, copy attached as Exhibit "C", which further elaborated on his claim for common benefit compensation.  The only materials submitted by Mr. Weinberg in connection with his TPP hours that describe the amount of time expended and description of work are the 27 pages of the materials included in Exhibit "B" which total 1,518 hours expended from November 12, 2007 through September 13, 2009, and a one page summary of expenses with some backup credit card statements and invoices from an entity called "OIS".

On April 8, 2005, Judge Fallon issued Pre-Trial Order No. 6 ("PTO 6").  PTO 6 was issued early in the *Vioxx* litigation and  requires all time spent on matters common to all claimants in MDL 1657 to be kept accurately and contemporaneously maintained. Thereafter, on April 10, 2008, Pre-

2

Trial Order No. 6C ("PTO 6C") [Rec. Doc. 14089] was issued and by Court Order, a copy was transmitted to Mr. Weinberg because he was a counsel associated with state court *Vioxx* litigation. PTO 6C required all state court common benefit attorneys to present their time records to Phil Garrett consistent with PTO 6.

On June 30, 2008, Mr. Weinberg submitted his firm's time and expense to Plaintiffs' Liaison Counsel in an email which had attached to it a report of member firm time reflecting total firm time of 10,255 hours and expenses of $253,977.99 (copy attached as Exhibit "D"). No detail of any time was provided and the backup for expenses was not included in the email. This submission was not provided originally to Phil Garrett pursuant to PTO 6 or 6C. Mr. Weinberg apparently submitted his time and expenses at a later date to Phil Garrett, the Court Appointed CPA.[1] The records that Mr. Garrett has in his system appear to be the time entries submitted to support the personal injury claim for 10,361.75 firm total hours submitted by Mr. Weinberg.

Mr. Weinberg contends that producing the documents requested in the SDT creates an undue burden. Mr. Weinberg has failed to comply with the Court's Pre-Trial Orders setting forth the procedures for time keeping. Had Mr. Weinberg complied with the Court's Pre-Trial Orders, there would be no undue burden that Mr. Weinberg could complain about. The only time records that have been submitted to Phil Garrett, the Court Appointed CPA, as set forth in PTO 6, consists of 10,361.75 hours and expense records that were previously submitted in connection with the personal injury portion of the case for which Mr. Weinberg was compensated. Those hours were previously considered by the Personal Injury Fee Allocation Committee analysis, and expenses were disbursed

---

[1] Those records are no longer active and live on the system. The records had to be brought out of archives and are only available offline.

to Eric H. Weinberg pursuant to Pre-Trial Order No. 51 ("PTO 51") [Rec. Doc. 24043][2].

Mr. Weinberg has failed to comply with the Court's Order for time and expense submissions. Phil Garrett does not have any additional time or expense records submitted other than those previously considered in connection with the personal injury portion of the case which were previously reviewed by the Personal Injury Fee Allocation Committee and ruled upon by Judge Fallon some time ago in connection with the personal injury fee and cost allocation. None of Mr. Weinberg's time or expenses that he seeks to recover in the TPP portion of the case have been submitted to Phil Garrett. The TPP time and expenses have only been submitted to the TPP FAC with Mr. Weinberg's response to PTO 57. With respect to expenses, no vetting by the Court Appointed CPA has taken place to make sure that backup invoices exist, the expenses are within the Court's guidelines and are proper. Many of the expenses do not contain sufficient backup to confirm their relationship to TPP matters. Furthermore, the time records similar to those submitted with the PI portion of the case (which include details of the date, event, hours and notes for each day time was logged) have not been provided. Without this information, an analysis cannot be undertaken to address Mr. Weinberg's contentions.

Mr. Weinberg was involved in the personal injury aspect of the case. He also claims to have participated in the TPP and AG portions. Without all of Mr. Weinberg's records relating to time spent on any *Vioxx* Related Matter from February 2005 to present, it is not possible to fully analyze all of the work claimed to have been performed by Mr. Weinberg. Is what Mr. Weinberg claiming he did in TPP merely a continuance of what he did in the PI portion? Is it different? Does it relate to AG? By Weinberg's own admission, he did not differentiate between personal injury, TPP and

---

[2] It is not believed that there exists any further dispute by Mr. Weinberg regarding reimbursement of expenses in connection with the personal injury aspect of the litigation.

AG time.  By way of example, Mr. Weinberg appears to have undertaken a jaunt to Australia and for some reason it appears in the TPP submission for compensation.  Why?  Was this unrelated to TPP?  Was this an individual case which is simply a continuation of Mr. Weinberg's personal injury work?  Who, if anyone in the MDL or in a leadership capacity directed and authorized Mr. Weinberg to perform any work in Australia?  Counsel from Australia in a letter dated September 2, 2009 states that "Eric Weinberg shared his time voluntarily" and "at his own expense Eric accompanied Professor Madigan from New York to Melbourne in order to support our clients' cause." (See attached Exhibit "E").  Who other than Mr. Weinberg approved this?  What Third Party Payor Australian entity was released in the TPP settlement?  Was there any Australian entity involved in any way with the TPP settlement?  Without seeing all *Vioxx* time and expense records, it is difficult to determine how Mr. Weinberg allocated the Australia visit and what was claimed to have been "common benefit."  Furthermore Mr. Weinberg appears to have immersed himself in bone density and alzheimer issues and the TPP FAC did not feel that those issues were related to the TPP action.  These matters further need to be analyzed in connection with Mr. Weinberg's time records in all Vioxx matters.

Mr. Weinberg, in his Memorandum in Support of Motion to Quash, acknowledges that he "includes all of the time entries for Weinberg's work on private Vioxx cases and on AG matters to the present time" and also states that he "has logged hundreds of hours of Vioxx time" on "private Vioxx cases and on AG matters to the present time."  These admissions make it apparent that there is no undue burden on Mr. Weinberg to produce the requested information.  The hours have been kept, should have been kept pursuant to Judge Fallon's Pre-Trial Orders, and have already been logged by Mr. Weinberg's firm.  All Mr. Weinberg has to do is produce the record logs.  Production

of the time and expense records cannot be burdensome and Mr. Weinberg has produced no evidence that such production would create any undue burden.

The SDT was timely served in advance of the return date.  All counsel in this proceeding are aware that Judge Fallon and the Special Master have expressed a desire to complete the allocation process in a prompt manner.  In fact, Mr. Weinberg has now had additional time to produce the requested documents because the hearing scheduled on May 23, 2013 was canceled and the parties do not have to travel or incur time out of the office since submissions are being made in briefs.

The TPP FAC seeks to determine from the Weinberg time records, which are the subject of the SDT, what *Vioxx* matters Mr. Weinberg and members of his firm expended time on.  This information cannot be fully determined from the Weinberg submissions contained in Exhibits "B" and "C".  For example, on December 1, 2008, Eric Weinberg made a presentation before the Personal Injury Fee Allocation Committee.  The transcript of Mr. Weinberg's appearance reveals that in connection with the PI claim for fees, approximately 10,000 hours was submitted by his firm, of which 6,000 were specific to Eric Weinberg individually (see page 26 of Exhibit "F").  Further, Mr. Weinberg made a presentation to the Vioxx Personal Injury Common Benefit Fee Allocation Committee which outlined what he claimed to be common benefit work in connection with the personal injury claims (see power point presentation attached Exhibit "G").  It is apparent from the power point presentation (Exhibit "G") and the statement provided by Mr. Weinberg (Exhibit "F") that time submissions for common benefit work performed in the Third Party Payor litigation is essentially duplicative of that work previously considered in connection with the personal injury aspect of the Vioxx litigation.  For instance, the time records in Exhibit "B" have numerous entries for Dr. Madigan, references to Alzheimer and bone density issues and other matters that appear to be duplicative or related to the time submission previously made by Mr. Weinberg in connection

with the common benefit claim for personal injury compensation.  The TPP FAC is entitled to review all time records of Mr. Weinberg for *Vioxx* Related Matters if Mr. Weinberg contends that the TPP FAC 's recommendation is in error or should be revised.

Mr. Weinberg contends that he has submitted all of the appropriate information pursuant to PTO 57 and that the TPP FAC is "trolling."  What Mr. Weinberg fails to address is that he has objected to the TPP FAC recommendation and that Mr. Weinberg must set forth and produce a basis to refute the TPP FAC recommendation.  In order for the TPP FAC to "check the accuracy" of Mr. Weinberg's statements as set forth in his objection, it is necessary for the entire time records spent on any *Vioxx* related matter be reviewed and analyzed.  The TPP Fee Allocation Committee's Pre-Hearing Memorandum filed May 15, 2013 [Rec. Doc. 64398], outlines examples of questionable time entries by Mr. Weinberg (see pages 7-9).  The TPP FAC recommendation was based upon an analysis of the time entries and materials submitted in connection with Exhibits "B" and "C" from 2011. By Mr. Weinberg's own admission, there is substantial overlap in the time entry submissions. Furthermore, there are a number of questionable expense entries such as those relating to Australia, as well as New Orleans meetings.  Production of the documents requested in the SDT will assist the Court and the TPP FAC in cross-checking the accuracy of Mr. Weinberg's contentions.

Mr. Weinberg is under an ongoing obligation pursuant to Judge Fallon's Orders to contemporaneously report his time and submit time records to Phil Garrett if he desires to seek compensation for common benefit work.  Mr. Weinberg acknowledges in his Memorandum in Support of Motion to Quash Subpoena and claims to have incurred hours for multiple Vioxx matters, including personal injury matters, TPP matters, and Attorney General matters.  He admits that many of his hours cannot be allocated easily and that they overlap substantially.  Obviously this was considered by the TPP FAC when it made its recommendation.  All of the hours submitted by Mr.

Weinberg were considered.  The TPP FAC also considered that Mr. Weinberg had previously been awarded $3,500,000.00 for common benefit fees by Judge Fallon in connection with the personal injury aspect of the case when Judge Fallon issued his Order and Reasons dated September 9, 2011 [Rec. Doc. 63195] (see page 125 of the Order).  Judge Fallon, in the award, recognized Mr. Weinberg's work with experts, including Dr. Kostis and Dr. Madigan, his work with Alzheimer studies, participation in depositions, and that he is a solo practitioner who spent more than 6,000 hours on the litigation of the 10,361.75 hours of common benefit hours submitted.  For Mr. Weinberg to claim that he has expended hours on TPP common benefit which appears to be substantially related or duplicative of what was previously considered in the personal injury aspect of the litigation, requires further documentation from Mr. Weinberg to determine if Mr. Weinberg's contentions have merit.  It is the same analysis that Mr. Weinberg undertook with his challenge to the TPP FAC, that the TPP FAC seeks to undertake with respect to Mr. Weinberg's time.  The Court will recall that Mr. Weinberg was given unfettered access to all time records contained in the Phil Garrett Case Cost Management System.  Unfortunately, at this time Mr. Weinberg does not believe that the TPP FAC should have the same analysis that he was able to partake in.

Judge Fallon appointed certain members to the TPP Fee Allocation Committee.  On numerous occasions Judge Fallon has stated that he appoints specific individuals in a litigation to a Fee Allocation Committee because he believes those individuals should have the most knowledge of the work performed by a group of lawyers who worked on a particular matter.  When the TPP Fee Allocation Committee members met and addressed Mr. Weinberg's request and considered the materials that had been submitted to support his request for compensation, the TPP FAC used its collective knowledge to make a recommendation for TPP fee allocation.  The TPP FAC considered the materials submitted by Mr. Weinberg to arrive at its conclusions.  The TPP FAC felt that Mr.

Weinberg's hours reflected merely a continuation of his work on the PI aspect of the Vioxx case or was not related to TPP matters that deserved compensation.  If Mr. Weinberg believes that the consideration by the TPP FAC was incorrect, then Mr. Weinberg could produce additional information to support his contentions.  The information that is requested in the SDT should not be objectionable.  That information will assist the Court in understanding the entirety of what Mr. Weinberg did throughout the *Vioxx* litigation.

Weinberg is a party to this fee dispute.  He is the party claiming compensation for common benefit work out of the funds being held to compensate common benefit TPP counsel.  He has subjected himself to the jurisdiction of the Court.  The SDT was properly served on The Law Offices of Eric H. Weinberg and as a courtesy, a copy was also emailed to his counsel (see Exhibit "H").  Service was proper.  Judge Fallon has already ruled in this MDL that service of a subpoena like this one under Rule 45 is proper even if Mr. Weinberg's documents are located in his law office in New Jersey (see *In re: Vioxx Products Liability Litigation*, 438 F.Supp. 2d, 664 (E.D. La. 2006)).  The TPP FAC has not requested that Mr. Weinberg travel or appear in person in Louisiana.  This Court has complete authority to direct Mr. Weinberg to provide documents in response to the SDT.

The TPP FAC does not seek disclosure of any privileged or protected matters.  No showing has been made by Weinberg that any of the information sought in the subpoena is protected by any privilege.  If the work was for common benefit, there can be no privilege claim and even if the materials did contain client specific privileged information or some other privilege material, the documents can be submitted under seal pursuant to the Court's Confidentiality Order (see PTO 13).  What Mr. Weinberg fails to address in arguing that the materials responsive to the SDT are privileged is that only common benefit attorneys will have access to the materials and there will be no waiver or violation of any privilege.  All of the members of the TPP FAC work collectively and

jointly to prosecute TPP *Vioxx* claims.  Without disclosure of all information relating to time and expense expended on the *Vioxx* litigation, compensation recommendations by a Fee Allocation Committee could not take place.  Certainly, Judge Fallon envisioned that any Fee Allocation Committee would need to gather information to make any recommendation.  All of the information is kept confidential pursuant to directives from the Court.  The argument by Mr. Weinberg at this point that the time and expense records of his firm are privileged, is disingenuous at best.  Mr. Weinberg previously disclosed time and expense records from his firm in connection with the personal injury portion of the *Vioxx* litigation.  Certainly, if he believed that those materials were privileged, then by the very production previously, such privilege has been waived.  What is Mr. Weinberg hiding?

Finally, Mr. Weinberg acknowledges that he has experienced difficulty in allocating his time entries between TPP and AG actions.  The TPP FAC reviewed all of Mr. Weinberg's submitted materials.  It did not have any problem delineating between Mr. Weinberg's activities in the personal injury, TPP and AG actions.  Mr. Weinberg may, at a later date, submit his AG common benefit request for compensation should the Court at some time establish a procedure for submission of AG common benefit fee compensation.  Those members of the TPP FAC that have continued to work on AG Vioxx matters must still operate pursuant to Judge Fallon's Pre-Trial Orders and submit regular time submissions to the Court Appointed CPA, Philip Garrett.  This process ordered by Judge Fallon enables for transparency and the review of all common benefit time incurred in connection with the AG matters.

## CONCLUSION

The documents sought in the SDT are germane and should be produced by Mr. Weinberg. There is no undue burden to production of the documents and the records are clearly relevant to the

Court's analysis of TPP common benefit allocation.  The SDT was timely served and Mr. Weinberg

should be ordered to produce the documents responsive to the SDT immediately.

Dated: May 23, 2013                           Respectfully submitted,

                                              /s/ Russ M. Herman
                                              Russ M. Herman
                                              **Herman, Herman & Katz, L.L.C.**
                                              820 O'Keefe Avenue
                                              New Orleans, Louisiana 70113
                                              Telephone: (504) 581-4892
                                              Fax: (504) 561-6024
                                              rherman@hhklawfirm.com

                                              /s/ Elizabeth Cabraser
                                              Elizabeth Cabraser
                                              **Lieff Cabraser Heimann & Bernstein, LLP**
                                              275 Battery Street, 29th Floor
                                              San Francisco, CA 94111-3339
                                              Telephone: (415) 956-1000
                                              Fax: (415) 956-1008
                                              ecabraser@lchb.com

                                              /s/ Christopher A. Seeger
                                              Christopher A. Seeger
                                              **Seeger Weiss LLP**
                                              77 Water Street
                                              New York, NY 10005
                                              Telephone: (212) 584-0700
                                              cseeger@seegerweiss.com

                                              /s/ Thomas M. Sobol
                                              Thomas M. Sobol
                                              **Hagens Berman Sobol Shapiro LLP**
                                              55 Cambridge Parkway, Suite 301
                                              Cambridge, MA  02142
                                              Telephone: (617) 482-3700
                                              Fax: (617) 482-3003
                                              tom@hbsslaw.com

                                              /s/ Andy D. Birchfield, Jr.
                                              Andy D. Birchfield, Jr.
                                              **Beasley,  Allen,  Crow,  Methvin,  Portis  &  Miles,**

**P.C.**
218 Commerce Street
Montgomery, AL 36104
Telephone: (800) 898-2034
Fax: (334) 954-7555
andy_birchfield@beasleyallen.com

/s/ James Dugan
James Dugan
**Dugan Law Firm**
One Canal Place
Suite 1000
365 Canal Street
New Orleans, LA 70130
Telephone: (504) 648-0180
Fax: (504) 648-0181

*The TPP Fee Allocation Committee*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been served on Liaison Counsel, Russ Herman, Ann B. Oldfather, and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pretrial Order No. 8(B), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 23rd day of May, 2013.

/s/ Leonard A. Davis
Leonard A. Davis, Esq. (#14190)
Herman, Herman & Katz, L.L.C.
820 O'Keefe Avenue
New Orleans, LA 70113
Ph: (504) 581-4892
Fax: (504) 561-6024
ldavis@hhklawfirm.com