UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: VIOXX | * | MDL NO. 1657 |
| | * | |
| PRODUCTS LIABILITY | * | SECTION L |
| LITIGATION | * | |
| | * | JUDGE FALLON |
| THIS DOCUMENT RELATES TO: | * | |
| THIRD PARTY PAYOR COMMON | * | SPECIAL MASTER JUNEAU |
| BENEFIT FEES | * | |
| | * | |
| FILER: Robert E. Arceneaux/Margaret Woodward/ | * | May 28, 2013 |
| Pascal F. Calogero, Jr. | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**ERIC H. WEINBERG'S REPLY OPPOSITION TO
MOTION TO QUASH SUBPOENA *DUCES TECUM***

MAY IT PLEASE THE COURT:

    This reply memorandum is respectfully submitted on behalf of the Law Offices of Eric H. Weinberg ("Weinberg").

    Given the lack of any defensible justification for the subpoena, it is probable that the TPP FAC only sought the records as a gambit to cast doubt on Weinberg's records, rather than as real attempt to secure them. This is because (1) the subpoena was patently overreaching and violated the hearing protocol; (2) the subpoena was plainly untimely, and (3) the FAC ultimately made its own subpoena moot.

**I.    The Subpoena Was Patently Overreaching and Violated the Hearing Protocol.**

    The Special Master's protocol made no provision for any discovery by the TPP FAC. At the initial conference, the ONLY discovery the FAC requested was a deposition of Weinberg (to exposed alleged "double dipping"), and no mention was made of the need for any records. As the Special Master will recall when the issue of impeachment evidence was discussed at the second conference, the FAC made clear that it wanted to impeach Weinberg with documents *already in its possession*. Only two weeks later did the TPP FAC issue its subpoena, a pleading which attempted to turn what the Special Master euphemistically called "trial by ambush" into exactly that.

All through the fee allocation process, the production of time records has been governed by orders from Judge Fallon. Each attorney has been required to produce the identical records, including the various FAC members. By its subpoena, the TPP FAC attempted to subject Weinberg to a much different obligation. Judge Fallon's previous orders required maintenance of contemporaneous or reconstructed common benefit time records. *See* PTO 6D, at 3 (emphasis added) ("Submitted time must be either accurately and contemporaneously maintained *or properly reconstructed*;").[1] But the FAC's subpoena went far beyond Weinberg's common benefit records. It requested "*[a]ll* records of time spent on *any* Vioxx Related Matter from February 2005 to present for any attorney, paralegal, law clerk, or member of your firm." R. Doc. 64419, Exh. A (emphasis supplied). It defined "Vioxx Related Matter" broadly to include "any type of Vioxx litigation related activity worked on (e.g., personal injury, third-party payor, Attorney General, etc.)." *Id.* Thus, the FAC included in its request all time spent on private cases and AG matters, including obviously privileged and irrelevant materials within its scope. The inclusion of data "to [the] present [time]" – years beyond both the settlement of the private TPP litigation and any submission of time by Weinberg – is conclusive proof that the subpoena has little to do with those documents Judge Fallon has ordained relevant to common benefit fee applications.

The FAC contends, however, that its burdensome, irrelevant, and unique requests of Weinberg derive legitimacy from Weinberg's objection, which imposes on him the obligation "to produce a basis to refute the TPP FAC recommendation." R. Doc. 64419, p. 7. But this presumes that the FAC's recommendation carries some intrinsic presumptive weight outside of logic, reason or evidentiary relevance. Weinberg *has* refuted the FAC's recommendation, by adverting to the records Judge Fallon deemed relevant and by demonstrating the illogic of the FAC's

---

[1] The FAC argues that Weinberg's inability to comply with its records subpoena on a moment's notice reveals that he has not complied with PTO 6, which requires that common benefit time records be kept contemporaneously. The order, however, addresses only Vioxx common benefit time. Judge Fallon has made no effort to regulate how attorneys maintain their time records in any and every Vioxx-related action. Weinberg produced his time records related to the TPP common benefit, and the FAC has attached those extremely detailed records to its opposition. R. Doc. 64419, Exh. B.

recommendation. The FAC cannot by mere fiat establish relevance and procedural propriety in any process it might conceive. The FAC's invalid subpoena gained no force from the FAC's authorship of it.

**II.     The FAC's Subpoena and the Arguments That it Offers to Support it Are Untimely.**

Initially, when on Sept. 6, 2011 the FAC recommended that Weinberg receive zero, it reported that Weinberg had "a TPP common benefit lodestar of $1,138,500.00 and $27,392.61in unreimbursed costs, for a total of $1,165,892.61." R. Doc.63555-2, at 25-26. It did nothing to question that lodestar. Nor did it then or in the ensuing months investigate or analyze Weinberg's records. By December 11, 2012,when the TPP FAC submitted its *completed* final recommendation of $450,000 for Weinberg to the Court, *see* R. Doc. 64193-2, the FAC had still not yet requested more information or documents and was apparently satisfied with Weinberg's submission. If the FAC really needed more documentary evidence from Weinberg, the year and a half allowed by the Court for its collection of materials would have been more than sufficient time to do its job and analyze Weinberg's records. Yet, it did nothing. Recently, as the Special Master is aware from the phone conferences, the TPP FAC reduced Weinberg's recommendation back to zero again, but it did so in retaliation to a settlement proposal made by Weinberg, not because it had any doubt about the records. *See* Exhibit A hereto.[2]

Accordingly the arguments the TPP FAC makes in defense of its *subpoena* are nothing more than proof of what Weinberg asserted in his Motion to Quash. The subpoena is a post-hoc fishing expedition for some justification of the recommendation that Weinberg receive zero. This after-the-

---

[2]The attached e-mail does relates to settlement discussions, but the Fifth Circuit has made clear that settlement documents are admissible for any purpose other than to prove liability. *See United States Aviation Underwriters, Inc v. Olympia Wings, Inc*.896 F.2d 949,956 ("Fed.R.Evid. 408 permits settlement evidence for any purpose except to prove or disprove liability or the amount of the claim. *Belton v. Fibreboard*, 724 F.2d 500, 505 (5th Cir.1984). Here, the e-mail is relevant to sow that the FAC has NEVER based is zero recommendation for Weinberg upon some purported deficiency in his records.

fact attempt at finding justification is far too late given the failure of the FAC to request Weinberg submit the documents when the TPP FAC initially did its work, the TPP FAC's acceptance of the documents in its initial recommendation to the Court, its failure to raise the issue of the documents in the initial conference with this Court where discovery was discussed, and the overbroad scope of the *subpoena*, which requested documents NOT required under any pending court order.

  The FAC even brings in Phil Garrett, suggesting that his input was needed to "audit" Weinberg's submissions, e.g., "make sure that back up invoices exist." R. Doc. 64419. It apparently didn't bother to *look at the documents attached to the its own opposition and see that the invoices are there! Id.,* Exh. A, at 250-267. As Mr. Garrett testified at the PI allocation hearing, he is an accountant, not a lawyer, and cannot do more than verify that a charge is supported by a record. As for Weinberg's time records, Garrett's process of "vetting" does NOT involve comparing entries to make sure there are no duplicates, as is obvious from the FAC's own records (with the doubling, tripling, and in extreme cases quadrupling of time) and from Garrett's testimony in the prior hearing.

  Bizarrely, the FAC also suggests that since the Court gave Weinberg "unfettered access" to Garrett's records, Weinberg's failure to produce all of his time records for every Vioxx activity somehow created an evidentiary imbalance between Weinberg and the FAC. *Id.,* at 8. Putting aside the untruth of the "unfettered access" claim, the argument avails the FAC nothing. Weinberg secured access to the Garrett records only for the purpose of reviewing the TPP submissions of those applicants who had, contrary to the directives of PTO 57, reported their time to Garrett instead of to the FAC. *See,* R. Doc. 64165. His memorandum makes reference only to the TPP submissions of those applicants. *See,* R. Doc. 64396. It makes no sense to say that the FAC can require Weinberg to produce irrelevant data at great difficulty because Weinberg confined himself to relevant records which the FAC produced with great ease (after the Court instructed it to do so).

  The FAC did not really want or need the requested records. That is why it made no

legitimate effort to obtain them.  The suggestion that the FAC meant to review all this extraneous material is, quite frankly, laughable.  The FAC's prior submissions have revealed a complete disregard for the actual contents of the time records.  As Weinberg's original brief demonstrates, the FAC's own time records contain significant and glaring errors that leap around on the page like Mexican jumping beans– all overlooked by the FAC.  *See* R. Doc. 64396, Weinberg Memorandum, at 18-24.  As further shown by Weinberg's Reply Memorandum, filed this date, the FAC's review of Weinberg's *relevant* time submissions has been cursory, careless, and completely unreliable.  The suggestion that it would have done a better job with more –  and *irrelevant* documents –  is preposterous.

### III. The Subpoena Is Not a Remedy That Accomplishes Anything, and Is Moot.

It is simply unbelievable, and a fact that casts considerable doubt on the TPP FACs credibility, that if Weinberg's records were such a big issue, it would wait until the day of trial to request these records. And ,the subpoena asks that the records be produced at 9:00, while trial was scheduled to begin at 8:30!  When was the FAC going to examine these records that it now contends are so critical?

More importantly, the subpoena was a trial subpoena, not a discovery subpoena, since discovery had been discussed with the Court and the FAC did not request any.  Remember, the TPP FAC wanted a trial subpoena in order to cross-examine Weinberg about his alleged "double dipping".  But, having elected to forego trial, it has waived the right to such cross examination. Moreover, the FAC having foregone a trial,  the trial subpoena is a moot issue.

Finally, when does the FAC intend to use these records, and how? Briefing in this matter will be over May 28, 2013.  The case will be under submission.   Any further briefing and discovery will be governed by Judge Fallon in the next stage; not the Special Master who is about to complete his charge.

Respectfully submitted:

/s/ Robert E. Arceneaux  /s/ Margaret E. Woodward

_____  _____
Robert E. Arceneaux, La Bar No. 01199  MARGARET E. WOODWARD, La. Bar
ROBERT E. ARCENEAUX LLC  No.13677
47 Beverly Garden Drive  3701 Canal Street, Suite C
Metairie, LA 70001  New Orleans, Louisiana  70119
(504) 833-7533 office  (504) 301-4333 office
(504) 833-7612 fax  (504) 301-4365 fax
rea7001@cox.net  mewno@aol.com


Pascal F. Calogero, Jr., La. Bar No. 03802
AJUBITA, LEFTWICH & SALZER, L.L.C.
1100 Poydras Street
New Orleans LA 70163-1950
(504) 582-2300 office
(504) 582-2310 fax
pcalogero@alsfirm.com

Attorneys for Law Offices of Eric Weinberg

### CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Reply has been served on Russ Herman by e-mail, and by upon all parties by electronically uploading the same to Lexis Nexis File & Serve Advanced in accordance with Pre Trial Order No.8, on this date, May 28, 2013.


s/Margaret Woodward
_____

-6-

**From:** Russ Herman <RHERMAN@hhklawfirm.com>
**Date:** March 7, 2013, 5:20:55 PM CST
**To:** "Mewno@aol.com" <Mewno@aol.com>
**Cc:** Lenny Davis <LDAVIS@hhklawfirm.com>, "andy.birchfield@beasleyallen.com" <andy.birchfield@beasleyallen.com>, "cseeger@seegerweiss.com" <cseeger@seegerweiss.com>, "jdugan@dugan-lawfirm.com" <jdugan@dugan-lawfirm.com>, "ecabraser@lchb.com" <ecabraser@lchb.com>, Russ Herman <RHERMAN@hhklawfirm.com>, "tom@hbsslaw.com" <tom@hbsslaw.com>

**Subject: Re: Vioxx TPP CBF**

Please further be Advised that ALL PRIOR OFFERS OF SETTLEMENT MADE to Mr Eric Weinberg in the amount of any sum including a Prior offer of 450,000$ are WITHDRAWN . Regards Russ

Sent from my iPhone

On Mar 7, 2013, at 11:51 AM, "Mewno@aol.com" <Mewno@aol.com> wrote:

Lady and Gentlemen,

We understand from recent discussions that the TPP FAC believes that its recommendation of $450,000 is more than Eric Weinberg is entitled to for his contributions to the TPP common benefit. We also understand that
the FAC is pleased with the procedural posture of the case and has every confidence that it will persuade Mr. Juneau of the merits of its recommendations.
We have a different view of the case. We believe that Eric has made a substantial contribution to the TPP litigation. Equally important, we are certain that his time and expense figures can be verified, which is not true of many of the numbers on which the TPP allocation recommendation relies. Most importantly, we believe that there was no reason for Judge Fallon to refer this matter to Mr. Juneau, other than that he shares our concerns about the FAC's recommendations.

We are prepared, if necessary, to proceed with further discovery and proceedings before Mr. Juneau, developing further proof of our objections and of the strengths of our claim. We do not believe, however, that such a process is in anyone's best interests. Mr. Juneau, obviously, will have to be paid, diminishing the funds available to resolve our disputes. And we have all put a substantial amount of time into this sub-litigation, similarly cutting into the shares available for our clients. Further, as we have been frequently reminded, applicants who were promised a speedy distribution are angry about the ongoing delays. We think Judge Fallon would like, as always, to see the parties reach an amicable resolution, and that Mr. Juneau will encourage discussion among us.

In that spirit, we are offering to accept $932,750, or 80% of Eric's expenses and lodestar. This represents a difficult compromise for us, as Eric sees no reason to give up hard-spent time and money in order to fund the recoveries of some firms who have no real claim against the CBF. If this is acceptable to you, we will withdraw our objection.

Robert Arceneaux
Margaret Woodward

EXHIBIT A