**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In Re:  VIOXX | : | |
| | : | **MDL Docket No. 1657** |
| **PRODUCTS LIABILITY LITIGATION** | : | |
| | : | **SECTION L** |
| | : | |
| | : | **JUDGE FALLON** |
| | : | **MAG. JUDGE KNOWLES** |
| | : | |
| | : | |
| **THIS DOCUMENT RELATES TO:** | : | |
| | : | |
| **THIRD PARTY PAYOR COMMON** | : | |
| **BENEFIT FEES** | : | |
| | : | |

**THE FEE ALLOCATION COMMITTEE'S REPLY TO**
**ERIC H. WEINBERG'S MEMORANDUM FOR THE SPECIAL MASTER**
**REGARDING ALLOCATION OF TPP COMMON BENEFIT FEES**

## I.      **INTRODUCTION**

In lieu of the hearing contemplated by the Special Master's April 26, 2013 Scheduling Protocol, the FAC submits this reply brief to address the objections presented by Mr. Weinberg in connection with the allocation of TPP common benefit fees.[1]

## II.     **ARGUMENT**

On May 5, 2013, Mr. Weinberg filed his memorandum to attempt to justify his demand to receive his full lodestar on the time between November 2007 and September 2009 contended as being expended exclusively for TPP common benefit efforts.  Therein, Mr. Weinberg applauds his self-importance – "Weinberg, who occupied a central role in the New Jersey efforts, ranks among the most significant contributors to the overall TPP litigation."  Weinberg Memo. at 9 [Rec.Doc. 64396].  But Mr. Weinberg's work in New Jersey was not directed towards TPP matters, nor did it significantly contribute to the overall TPP litigation when compared to the work of others.

Counsel in New Jersey were unsupervised.  No Steering Committee existed.  Counsel acted independently.   They had no reporting obligations.[2]  And without the oversight like that in the MDL, Mr. Weinberg took the liberty to embellish the same activities he had previously had been compensated for in connection with Vioxx personal injury litigation after the personal injury settlement.  So, as before, Mr.

---

[1] Mr. Dassow has also submitted papers in response to the Special Master's Scheduling Protocol for Third Party Payor ("TPP") Common Benefit Fees of April 26, 2013.  Mr. Dassow's arguments have been previously addressed by the TPP FAC in the TPP FAC's Prehearing Memorandum of May 15, 2013.  As Mr. Dassow simply reiterates and references his prior submissions, the TPP FAC submits that its prior arguments should also be abided.

[2] For purposes of developing the record for allocating attorneys fees for the Vioxx Personal Injury Settlement the prior Fee Allocation Committee received the testimony of Mr. Weinberg.  Mr. Weinberg's testimony regarding his contributions towards personal injury work largely duplicates the work he submits today. *See Vioxx Fee Committee Presentation*, Transcript of the Law Offices of Eric Weinberg at 21 (Dec. 1, 2008)(hereafter "Weinberg Transcript")[Attached hereto as Exhibit "A"]:

Mr. Levin:  [B]ut was the leadership in Jersey aware of everything you were doing and all the engagements of experts you did and whether any of it was duplicative of what they were doing?
Mr. Weinberg:  I assume so.  ***
Mr. Levin:  Did you report them, and did they approve or disapprove, or were you basically out there on your own doing a good job?

Weinberg worked with Dr. Madigan.[3]  He completed the Alzeheimer's paper he had developed for the personal injury claimants.[4]  He prepared for trial in Australia.[5]  But none of this work (the same work he now attributes to TPP common benefit efforts) was shared with the MDL to be placed into the MDL trial package.[6]

Mr. Weinberg also betrays his ignorance of the significant work undertaken for his clients' benefit by Seeger Weiss and other *Local 68* counsel, such as Levin, Fishbein, Sedran & Berman, years before (and even after) his involvement.  Incredibly, Weinberg contends work began on Vioxx TPP matters when he first decided to take notice in late 2007, *e.g.*, "work geared up" in the TPP litigation in late 2007, after settlement of the personal injury litigation (Weinberg Memo at 2); the lead TPP case, *Local 68,* "did not get very far" (*id.*); "there were few concrete milestones in the private TPP litigation" (*id.* at 3); and, prior to his involvement, there were "few if any rulings issued that served the TPP litigation as a whole" (*id*. at 20).

Mr. Weinberg's false impressions, which consequently give rise to false statements to the Special Master, are, however, understandable.  For nearly six years of Vioxx TPP litigation, Mr. Weinberg was completely absent from it and in no way involved.  After that, he rode along in a sidecar while he self-pursued other Vioxx curiosities and litigation in Australia and for various state attorneys general, some of which he continues to pursue to this day.  That his myopic perspective is explainable does not, however, convert the reality of his "attendance" in Vioxx TPP litigation to a claim of benefit conferred to others.

---

[3]  Weinberg Transcript at 22-23 ("[Madigan] was my expert who I cultivated myself." . . . "Kronmal did terrific work, but I saw some things, some directions that I wanted to go that were a little bit different.  I wanted to have my own guy.")

[4]  Weinberg Transcript at 9 ("The work that I did to develop the Alzheimer's story is captured in a paper I wrote, which ultimately I will try and get published.")

[5]  Weinberg Transcript at 15 ("I've been asked by our colleagues in Australia, Slatery Warden, if they can work with Madigan, I will be working with them and introduce evidence in their cases I think in March in Australia.")

[6]  Weinberg Transcript at 30 ("Russ, in terms of what should be in the trial package, I'm willing to share all of it.  I do think you should have Madigan in the trial package.")  However until asked the question, at the PI FAC hearing Weinberg never even submitted the report. The case was over and only then did he graciously submit the same.

A recurrent criticism by Mr. Weinberg is the FAC's recognition of the contributions of several counsel in connection with the *Local 68* proceeding[7], which was certified as a nationwide class action by the trial and intermediate appellate courts in New Jersey, before class certification was ultimately vacated by the New Jersey Supreme Court.  As evidenced by the record, there was much effort expended in those proceedings.  Though Mr. Weinberg highlights the certification denial (which no doubt served as the impetus for him being retained in the one case in which he was retained), he ignores the foundation built from that case for his and all other TPP claims.[8]

In particular, though much has been said about *Local 68*, little has been said about the first-filed Vioxx third party payor case—*Plumbers & Pipefitters Local 572 v. Merck & Co., Inc.*, Civ. No. L-857-02, Class Action Complaint (January 11, 2002) [Attached hereto as Exhibit "B"].  This case was actively litigated through the dismissal phase in 2003.  In its ruling, the court affirmed the viability of Plaintiff's common law fraud claim, but dismissed Plaintiff's New Jersey Consumer Fraud Act Claim.  The loss of the New Jersey Consumer Fraud Act claim—which provided for treble damages and attorneys' fees (both of which are designed to encourage the prosecution of more modest claims)—would have been a severe setback for Vioxx TPP litigation.

Accordingly, after the New Jersey Supreme Court declared Vioxx litigation a "mass tort" and centralized all cases in Atlantic County, Seeger Weiss commenced another third party payor case—*Local 68*—that, like *Plumbers & Pipefitters*, pressed claims for common law fraud and NJ CFA.  Merck once again sought to dismiss Plaintiffs' common law fraud and New Jersey Consumer Fraud Act claims.  Seeger Weiss briefed and defended the motion, and in so doing, secured a denial of Merck's dismissal challenge, and specifically sustained the viability of Plaintiff's NJ CFA claims.  S*ee, International Union of Operating Engineers Local No. 68 Welfare Fund v. Merck & Co., Inc.*, 2004 WL 3767338 (N.J.Super.

---

[7] In addition to the activities of Seeger Weiss and Levin, Fishbein in *Local 68* HHK was requested to review all of the pleadings in connection with its participation in the trial team of that action.

[8] Mr. Weinberg's seeming ignorance of these facts is perhaps best explained by the complete absence of his involvement with any briefing or legal issue of general applicability in the Vioxx TPP litigation.  A review of the docket reflects not a brief that bears his name or otherwise reflects his involvement.  Mr. Weinberg's submitted time records do nothing to correct that impression.

July 8, 2004).  Merck sought an immediate appeal in an effort to shut down Vioxx third party payor

claims, which Seeger Weiss opposed.  *See, International Union of Operating Engineers Local No. 68*

*Welfare Fund v. Merck & Co., Inc.*, Plaintiff-Respondent's Memorandum of Law in Opposition to

Defendant-Appellant's Motion for Leave to Appeal (N.J.Super.A.D. August 16, 2004)[Attached hereto as

Exhibit "C"].  Merck's request for appellate review was declined, resulting in a huge blow for Merck.

The *Local 68* dismissal decision was the first decision in New Jersey to recognize the standing of a third

party payor to pursue recovery under the NJ CFA for prescriptions purchased by its members/insured.  It

was a watershed ruling, and one that made feasible the litigation of TPP claims for relatively modest

recoveries.

Thereafter, the *Local 68* Plaintiffs sought class certification such that TPPs from anywhere in the

country could pursue their claims in a consolidated and representative manner with *Local 68,* to the extent

they wished to.  Central to that effort was establishing the applicability of New Jersey law to the claims of

non-New Jersey resident TPPs (such that common claims would be litigated in any class case)—a point

that Merck vigorously opposed.  The many hundreds of pages of briefing by Seeger Weiss and Merck on

the choice of law/conflicts of law issue ultimately yielded to trial and appellate opinions affirming the

appropriateness of New Jersey law—and the New Jersey Consumer Fraud Act—applying to the claims

brought by TPPs from outside of New Jersey.  *See generally International Union of Operating Engineers*

*Local No. 68 Welfare Fund v. Merck & Co., Inc.*, 2005 WL 2205341, *23 (N.J.Super. July 29, 2005),

*aff'd,* 894 A.2d 1136 (N.J. Ct.App. 2006) ("Accordingly, we agree with Judge Higbee that, based upon

the evidence she had before her, New Jersey law may properly be applied to the entire plaintiff class, as

this state has the most significant relationship to the alleged fraud and the parties."), *rev'd on other*

*grounds*, 929 A.2d 1076 (N.J. 2007).  In its subsequent ruling, the New Jersey Supreme Court did not

disturb the choice of law holdings of the trial and appellate courts.

Thus, as a result of the efforts of Seeger Weiss and its co-counsel in *Local 68,* the road was paved

for New Jersey and non-New Jersey VIOXX TPPs alike to pursue claims (a) under New Jersey law, (b) in

New Jersey court, (c) with treble damages, and (d) mandatory attorneys fees upon success.[9]  No doubt, Mr. Weinberg was aware of these significant and watershed rulings, and sought their advantage when he first appeared on the Vioxx TPP litigation scene nearly six years *after* the first TPP case was commenced. It should be noted that it is Mr. Weinberg alone—among dozens of Vioxx TPP counsel—that takes exception to recognizing the conferral of such benefits.

Although Mr. Weinberg recognizes that the total combined lodestar of all TPP counsel far exceeds the $15 million fund available to pay these counsel, he demands 100% compensation for his time. The overarching theme of Mr. Weinberg's argument is patent.  *HE* was important.  Mr. Weinberg's inflated sense of self, however, was not overlooked by the FAC.  The committee reviewed Mr. Weinberg's submission, found little work performed that was exclusively directed to benefit TPP litigation,  and objectively determined that the little work performed towards TPP litigation offered no significant contribution to the resolution of TPP claims.  This recommendation remains justified.

And, as to Mr. Weinberg's efforts to diminish the contributions of other claimants, his arguments are unjustified, misplaced, or just plain wrong.  Mr. Weinberg assails the efforts of Levin Fishbein Sedran & Berman; Seeger Weiss; Herman, Herman & Katz; and the Law Firm of James Dugan.  Each of these offices shall be addressed in order:

As to Levin, Fishbein, Sedran and Berman, Mr. Weinberg repeats almost verbatim from the same specious verbiage he used in his December 20, 2012 Memorandum in Response to TPP FAC's Production and Recommendation [Rec.Doc. 64206].  Every error therein was exposed, refuted, and disposed of on February 1, 2013, when the TPP FAC responded to Mr. Weinberg's unfounded December 20, 2012 Response [Rec.Doc. 64235].  Levin, Fishbein, Sedran and Berman provided a firm-specific response that explicated in precise detail the basis for its submissions.  [Rec.Doc. 64235-5].  Refusing to let the facts get in the way of his argument, Mr. Weinberg steadfastly hews to his original misunderstanding.  But no matter how many times he misstates the record, the facts (being stubborn

---

[9]  These accomplishments are not to minimize the substantial discovery, case management, and expert/trial development that happened in concert with the motion practice in *Local 68.*

things) fail to support his confection.  As Mr. Levin stated in his Declaration of September 15, 2011, "All of LFSB's time engaged in the representation of Local 68 [2,130.75 hours] was previously submitted in the firm's common benefit fee submission [into the MDL court pursuant to PTO 6] (Rec.Doc. 17642) … In total, LFSB devoted 2,130.75 hours of professional time with at total lodestar value of $631,437.50 based on then-current hourly rates.  This Court already considered this time in its Order and Reasons of October 19, 2010 and August 9, 2011."[10]  Levin Declaration ¶7.  Mr. Levin identified an additional 34 hours of professional time overseeing the activities of Third Party claims with a lodestar value of $27,412.50.  *Id.*, ¶8.  Only this combined time (2,164.75 hours) accounted for the firm's $658,850 fee submission.  Mr. Weinberg's attribution of this time to matters involving Stratton, mandamus, Snapka is merely rattling off time entries for unrelated matters that were specifically identified as being **NOT** part of the submission.  His subversion is a doomed effort.

As to Seeger Weiss, Mr. Weinberg lodges a series of vague criticisms about the relevance of *Local 68,* addressed above, and the specific value of the work of Seeger Weiss (pp. 19-20).  In particular, Mr. Weinberg questions Seeger Weiss's role in providing *any* common benefit "when no experts were developed, no discovery undertaken, and few if any rulings issued that served the TPP litigation as a whole."  On each point, Weinberg's accusations are utterly unfounded.[11]

First, no firm developed or co-developed more generic experts in the Vioxx litigation than Seeger Weiss.  That was true generally, but it was likewise true in the TPP litigation.  There, the firm retained and developed specific TPP, pharmacy, and formulary experts, such as Dr. William N. Kelly and Dr. Stephen Schondelmeyer.  Indeed, at the time of the TPP settlement, Seeger Weiss is the only firm to have

---

[10] Of course, when it came time for the PI Fee Allocation Committee to allocate this time, TPP matters were not among the factors considered.  *See In re Vioxx Products Liability Litigation,* 802 F.Supp.2d 740, 767 (E.D.La. Aug. 9, 2011) ("To arrive at this recommendation, the FAC developed its own objective criteria by breaking down each common benefit fee applicant's contribution to the work categories of Key Leadership Roles, Trials, Settlement, Law & Briefing, Settlement Implementation/Post-Settlement Matters, Discovery/Science, Committee Leadership and Participation, Funding, and Case Management.").  No credit was given to TPP time.

[11] Weinberg further attempts to resuscitate his flawed argument that Seeger Weiss has somehow sought a double recovery in these TPP matters when it previously submitted its TPP time to the MDL accountant (as it was required to do by Judge Fallon's time and expense order) as a separate and fully delineated matter.  That challenge and the confusion around it was fully and clearly addressed, and disposed of, by Seeger Weiss's February 1, 2013 submission [Rec.Doc. 64235-4].

6

produced *any* expert report on TPP issues—once again, years before Weinberg even thought about TPP litigation. *See, e.g.,* Certification of William N. Kelly, Pharm.D. (6/17/2005)[Attached hereto as Exhibit "D"].

To question Seeger Weiss's role in TPP discovery is similarly not credible.  Review of Seeger Weiss's detailed time submissions reflect that Seeger Weiss generally led and coordinated all TPP discovery, *e.g.,* it drafted the discovery, met and conferred about the discovery, litigated the discovery, negotiated the orders about the discovery, obtained and hosted the discovery, and reviewed (and coordinated others' review of) the discovery.  Likewise, the firm was the architect of theme development and marshaled the evidence obtained from the discovery—once again, years before Weinberg's involvement.[12]

Finally, as set forth above, but for the instance of *Local 68* and the relentless prosecution of it by Seeger Weiss and other *Local 68* counsel, Weinberg largely would have been out of luck or without a feasible vehicle to pursue his client's claims.  His own inaction for years would have barred damage claims under common law and CFA theories under applicable statutes of limitation.  Similarly, absent Seeger Weiss's efforts in *Local 68,* his client's damages would have been capped at actual ascertainable losses (no trebling), and he would have had no entitlement to attorneys' fees.

Weinberg's broader question as to Seeger Weiss's relevance to TPP litigation is disproved by the simple fact that, at the outset, it alone was prosecuting Vioxx TPP claims.  It then served as court-appointed class counsel to *all* Vioxx TPPs during the more than two years the litigation was prosecuted as a certified class action.  Thereafter, the firm served as court-appointed Liaison Counsel for Vioxx TPP claimants.  There is little doubt by objective evidence that Seeger Weiss led the Vioxx TPP charge.[13]

---

[12] In preparation for the since-adjourned May 23, 2013 hearing, Seeger Weiss reviewed its litigation files in TPP matters and identified extensive discovery and thematic development specific to TPP issues—including formal trial themes and sub-themes, underlying fact proffers, and discovery targets—years before Weinberg's involvement. Though the FAC anticipated providing exemplars of such material to the Special Master, the FAC is mindful that attachment of such materials could prove harmful to those litigants in pending AG and related litigation against Merck.  The FAC would be pleased to supply such information to the Special Master via some secure alternate means, to the extent such is desired.

[13] The trial court that oversaw the extensive TPP litigation in New Jersey saw and expressed that fact

As to Herman, Herman & Katz, Mr. Weinberg's arguments were fully disposed of by HHK in Exhibit 1 to the Response of the TPP FAC to General Statements Made by the Weinberg Objectors, filed February 1, 2013 [Rec. Doc. 64235-3].  As previously disclosed, a number of the hours incurred by HHK pre-personal injury settlement and in particular, those hours incurred post-personal injury settlement, relate to TPP and AG matters. Many of the hours were recorded without delineating between the two because the time billing procedure set up by Judge Fallon in Pre-Trial Order No. 6 did not require such distinctions. All HHK time was reported pursuant to PTO 6. Approximately 2,500 hours of TPP common benefit time was co-mingled with other time submitted by HHKC.[14]  A review of each individual time entry would be required to fully understand the work performed and even then some work may not be easily pulled from a time entry (*e.g.* attendance at a status conference where TPP matters were dealt with, meetings took place and preparation of TPP issues were required).

Different methods of submission of HHK time for personal injury, TPP, AG or other Vioxx related cases was not ordered by the court and HHK does not delineate different submissions to Phil Garrett. In other words, all submissions for all Vioxx time is made in one monthly submission to Phil Garrett. The only way to denote which particular entry of time relates to a specific matter is to review each entry. Because of this, HHK performed word searches by categories to attempt to pull out time that was co-mingled. HHK has performed searches to its time records to identify specific narratives that can only relate to TPP matters which include "TPP," "Third Party," "3rd party," "NJ," "New Jersey," "Local 68."

---

quite clearly: "[T]here is probably no other law firm as knowledgeable about VIOXX.  Christopher Seeger is both liaison counsel in New Jersey where the largest number of VIOXX cases are filed, and also on the Plaintiff's Steering Committee in the MDL.  He and his firm have lead the discovery process in VIOXX litigation. They are well respected among the mass tort bar.  The seven million documents already produced in the VIOXX litigation are maintained in a depository at Seeger Weiss's offices." *International Union of Operating Engineers Local No. 68 Welfare Fund v. Merck & Co., Inc.*, 2005 WL 2205341 at *15.

[14] See Footnote 6 to the Declaration of Russ Herman contained in the HHKC PTO No. 57 submission dated September 16, 2011 and Footnote 1 to the Supplemental Declaration of Russ Herman contained in the HHK Supplemental Submission which forms a part of the HHK Response.

After performing the word searches, HHK was able to identify 601.75 hours of time from 2005 to the present with the entries identified in the above and 369 hours with those entries since October 31, 2008 (the time period post the personal injury common benefit allocation process There are at least 601.75 hours of HHK time with entries that have specific narratives that include "TPP," "Third Party," "3rd party," "NJ," "New Jersey," "Local 68" and in addition to the 2,500 hours of TPP common benefit time that was co-mingled with other time submitted  by HHK to support the HHK application for compensation in the TPP fee allocation process.

As to the Law Offices of James Dugan, Mr. Dugan responds as follows:  Mr. Dugan rests upon his prior submissions and will back up and stand behind their accuracy.  First, Mr. Dugan states for the record that there is no duplication between his TPP time and his  Attorney General time.  Second, as to the assertion that 27.5 hours were billed on a single day Mr. Dugan would agree that there was a typo and that it should have been 7.5 hours. However, even with this minor adjustment he should still be given his full reward.  Third, as to the Murray issue, at the time of filing prior submissions Murray and Dugan were involved in heated litigation.  Since that time, arbitration has resolved most of those issues.

Mr. Dugan was amongst the first counsel to file TPP cases in the MDL, including that of his client Blue Cross of Louisiana.  Mr. Dugan was appointed as co-chair of the Purchase Claims Committee as to both the private TPP and AG cases.  In that capacity, he has no recollection of any work that Mr. Weinberg took in the MDL private TPP cases and only minimal work that was done in the AG cases, namely only work that was done on Mr. Weinberg's client, the Pennsylvania Attorney General.  Mr. Dugan is confident that based on our submissions that Mr. Juneau will be able to ascertain proper awards to all parties.

## III.   <u>CONCLUSION</u>

The analysis by the TPP FAC of the relative contributions of all counsel participating in the TPP effort was performed using both objective and subjective criteria.  Although the objective lodestar of each counsel was considered, that alone was not, nor could it be, the touchstone for the FAC's analysis. Relative contribution had to be considered.  And it was here that Mr. Weinberg's contribution failed.  His

work on unrelated matters that were important to *him*, mattered not to the common effort.  His TPP allocation of zero accurately reflected that the personal injury work he continued to pursue but to attribute to TPP did not help the common cause.

The TPP FAC submits that its Recommendation should be confirmed.

Dated: May 28, 2013                               Respectfully submitted,

/s/ Russ M. Herman
Russ M. Herman
**Herman, Herman & Katz, L.L.C.**
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Telephone: (504) 581-4892
Fax: (504) 561-6024
rherman@hhklawfirm.com

/s/ Elizabeth Cabraser
Elizabeth Cabraser
**Lieff Cabraser Heimann & Bernstein, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Fax: (415) 956-1008
ecabraser@lchb.com

/s/ Christopher A. Seeger
Christopher A. Seeger
**Seeger Weiss LLP**
77 Water Street
New York, NY 10005
Telephone: (212) 584-0700
cseeger@seegerweiss.com

/s/ Thomas M. Sobol
Thomas M. Sobol
**Hagens Berman Sobol Shapiro LLP**
55 Cambridge Parkway, Suite 301
Cambridge, MA  02142
Telephone: (617) 482-3700
Fax: (617) 482-3003
tom@hbsslaw.com

/s/ Andy D. Birchfield, Jr.
Andy D. Birchfield, Jr.
**Beasley, Allen, Crow, Methvin, Portis & Miles, P.C.**
218 Commerce Street
Montgomery, AL 36104
Telephone: (800) 898-2034
Fax: (334) 954-7555
andy_birchfield@beasleyallen.com

/s/ James Dugan
James Dugan
**Dugan Law Firm**
One Canal Place
Suite 1000
365 Canal Street
New Orleans, LA 70130
Telephone: (504) 648-0180
Fax: (504) 648-0181

*The TPP Fee Allocation Committee*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been served on Liaison Counsel, Russ Herman, Ann B. Oldfather, and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pretrial Order No. 8(B), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 28th day of May, 2013.

/s/ Leonard A. Davis
Leonard A. Davis, Esq. (#14190)
Herman, Herman & Katz, L.L.C.
820 O'Keefe Avenue
New Orleans, LA  70113
Ph:  (504) 581-4892
Fax:  (504) 561-6024
ldavis@hhklawfirm.com