# EXHIBIT C

# Superior Court of New Jersey
## Appellate Division

Docket. No. AM-818-03T1

```
--------------------------------  x
                                  :
INTERNATIONAL UNION OF OPERATING  :  CIVIL ACTION
ENGINEERS LOCAL NO. 68 WELFARE    :
FUND, individually and on behalf  :  ON MOTION FOR LEAVE TO APPEAL
of all other similarly situated,  :  FROM AN INTERLOCUTORY ORDER
                                  :  OF THE SUPERIOR COURT OF NEW
        Plaintiff-Respondent,     :  JERSEY, LAW DIVISION,
                                  :  ATLANTIC COUNTY,
            v.                    :  DOCKET NO. ATL-3015-03-MT
                                  :
MERCK & CO., INC.,                :
                                  :  Sat Below:
        Defendant-Appellant.      :
                                  :  HON. CAROL E. HIGBEE, J.S.C.
                                  :
                                  :
--------------------------------  x
```

## PLAINTIFF-RESPONDENT'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT-APPELLANT'S MOTION FOR LEAVE TO APPEAL

Christopher A. Seeger, Esq.
SEEGER WEISS LLP
550 Broad Street, Suite 920
Newark, New Jersey 07102-4573
Tel. (973) 639-9100
Attorneys for Plaintiff-Respondent

## TABLE OF CONTENTS

TABLE OF AUTHORITIES............................................................................................ii

PRELIMINARY STATEMENT.........................................................................................1

PROCEDURAL HISTORY..............................................................................................3

STATEMENT OF QUESTIONS PRESENTED ON APPEAL.........................................4

STATEMENT OF PERTINENT FACTS.........................................................................4

    A.   Background.............................................................................................4

    B.   Plaintiff's Allegations........................................................................5

ARGUMENT

    MERCK HAS FAILED TO DEMONSTRATE EXTRAORDINARY
    CIRCUMSTANCES WARRANTING APPELLATE REVIEW
    OF THE LOWER COURT'S INTERLOCUTORY ORDER.......................................7

    A.   Standard of Review............................................................................7

    B.   The Trial Court Correctly Ruled That the
        CFA Applies to Business Entities Such as
        Local68...............................................................................................8

        1.   Merck Misinterprets New Jersey Case Law
            and Ignores the Applicable Statutory
            Language......................................................................8

        2.   Defendant's Narrow Definition Of "Consumer"
            Is Contrary to Controlling New Jersey
            Precedent...................................................................12

        3.   The Plumbers Case is Inapposite.................................18

    C.   Plaintiff's Fraud Claims Are Pleaded With
        Sufficient Particularity.................................................................20

CONCLUSION.............................................................................................................23

## TABLE OF AUTHORITIES

**CASES**                                                    **Page (s)**

Arc Networks, Inc. v. Gold Phone Card Co.,
    333 N.J. Super. 587 (Law Div. 2000)..................... 9

CPC International, Inc. v. Hartford Accos.,
    316 N.J. Super. 351 (App. Div. 1998)................... 8

City Check Cashing, Inc. v. National State Bank,
    244 N.J. Super. 304 (App. Div. 1990)............. 13, 14

Craig v. Suburban Cablevision, Inc.,
    140 N.J. 623 (1995)................................... 8

Desiano v. Warner Lambert Co.,
    326 F.3d 339 (2d Cir. 2003)................... 16, 17, 20

Edwards v. McBreen,
    369 N.J. Super. 415 (App. Div. 2004).................. 7

Florian Greenhouse v. Cardinal IG Corp.,
    11 F. Supp. 2d 521 (D.N.J. 1998)..................... 21

Gennari v. Weichert Co. Realtors, 148 N.J. 582 (1997) .... 11

Hampton Hospital v. Bresan,
    288 N.J. 372 (App. Div. 1996)........................ 11

Hundred East Credit Corp. v. Eric Schuster Corp.,
    212 N.J. Super. 350 (App. Div. 1986).... 9, 10, 12, 14, 18

In re Certain Sections of the Uniform Administrative
    Procedural Rules, 90 N.J. 85 (1982).................. 7

In re Greenberg, 15 N.J. 132 (1954) ..................... 19

Kavky v. Herbalife International of America,
    359 N.J. Super. 497 (App. Div. 2003)....... 11, 14, 15, 18

Marascio v. Campanella,
    298 N.J. Super. 491 (App. Div. 1997).................. 13

Plumbers & Pipefitters Local 572 Health and Welfare
    Fund, et al. v. Merck & Co., Inc., No. MID-L-857-02
    (Feb. 4, 2003) ............................. 18, 19, 20

**TABLE OF AUTHORITIES (CONT.)**

Rendon v. Kassimis,
    140 N.J. Super. 395 (App. Div. 1976).................... 9

Seville Industry Machinery Corp. v. Southmost
    Machinery Corp., 742 F.2d 786 (3d Cir. 1984)........... 21

Smith v. SBC Communications, Inc., 178 N.J. 265 (2004) .... 8

State v. Johnson, 203 N.J. Super. 436 (Law. Div. 1985) ... 19

State v. Reldan, 100 N.J. 187 (1985) ..................... 7

Talalai v. Cooper Tire & Rubber Co.,
    360 N.J. Super. 547 (Law Div. 2001)................ 8, 23

Viviani v. Borough of Bogota,
    336 N.J. Super. 578 (App. Div. 2001)................... 19

Zorba Contractors v.  Housing Authority of Newark v.
    Georgia-Pacific Corp., 282 N.J. Super. 430 (App.
    Div. 1995)................................... 13, 16, 18

**STATUTES AND RULES**

New Jersey Statutes Annotated
    56:8-1(d)............................................. 10
    56:8-19.............................................. 11

New Jersey Rule of Civil Procedure
R.  2:2-4 ................................................ 7
R.  4:5-8(a) ............................................ 21

## PRELIMINARY STATEMENT

Plaintiff-Respondent International Union of Operating Engineers Local No. 68 Welfare Fund ("Plaintiff" or "Local 68"), respectfully submits this memorandum of law in opposition to the motion of Defendant-Appellant Merck & Co., Inc. ("Merck" or "Defendant") for leave to appeal from the trial court's July 8, 2004 Order denying its motion to dismiss Plaintiff's claims under the New Jersey Consumer Fraud Act ("CFA" or "Act") and its common law fraud claims.  The Court should deny Merck's motion because it fails to demonstrate extraordinary circumstances warranting interlocutory appellate review of Merck's piecemeal appeal.

In its motion papers, Merck simply reiterates the arguments it made below and mischaracterizes the primary basis for Judge Higbee's well-reasoned and well-supported decision.  Defendant likewise ignores or, alternatively, selectively quotes New Jersey authority that is actually contrary to its position.

Merck's argument for a narrow construction of the CFA has no support in New Jersey case law and would eviscerate the broad protections afforded to persons under the Act.  Defendant seeks a limited application of the Act that would deny standing to prescription drug coverage providers that purchase drugs for their plan members.  That is so notwithstanding that the drug at issue was deceptively mass-marketed to the public——the centerpiece of the Act's prophylaxis——and that these third party payors (and the plan members they provide for) were one of the targets of the very mass-marketing at issue.  Moreover, apart

from conflicting with controlling precedent of this Court,
Defendant's restrictive interpretation of the CFA also directly
conflicts with the expansive history of the Act, which is
intended to provide strong protections for the consumer.

At bottom, Merck presents a "heads-I-win, tails-you-lose"
argument dressed up in legalistic garb.  In particular, Merck
argues that Plaintiff is not a "consumer" within the meaning of
the CFA because, as a third-party payor that only authorizes,
purchases, and pays for the VIOXX® used by its health care plan
members, it does not actually "consume" the drug.  As such,
Defendant contends that Plaintiff, like other third party payors,
lacks standing to assert a claim under the Act.  Yet Merck would
no doubt also have this Court believe that Plaintiff's health
care plan members suffer from a similar lack of standing: because
plan members do not pay for the drug and thus do not incur the
ascertainable loss associated with its purchase, they are unable
to assert an action under the CFA.  Hence, under Merck's
interpretation of the statute, no person would be able to recover
for Merck's violation of the CFA in connection with its sale of
VIOXX®.  The Court should decline to endorse this self-serving
and preposterous argument.

Furthermore, Defendant's attempt to apply an impractical and
onerous pleading standard to Plaintiff's fraudulent
misrepresentation claims is not supported by the facts or the
law.  As the court below correctly concluded, as a pleading
matter, the Complaint sufficiently details the fraudulent

misrepresentations and omissions that form the basis of Plaintiff's claim. Accordingly, the Court should deny as meritless Defendant's motion for leave to appeal.

## PROCEDURAL HISTORY

On October 30, 2003, Plaintiff filed a class action Complaint (Da21) alleging claims for fraudulent misrepresentation and/or suppression (Complaint ("Compl.") ¶¶ 38-47, reproduced at Da31-Da32), and violations of the CFA. (Da32-Da34, Compl. ¶¶ 48-57). Plaintiff sued on behalf of itself and all third-party payors providing prescription drug coverage in the United States who have purchased or paid for all or part of the prescription drug VIOXX® since May 1, 1999. (Da31, Compl. ¶ 37.)

Defendant filed a motion to dismiss the Complaint on January 20, 2004 (Da2.) Defendant argued that Plaintiff's CFA claim was defective as a matter of law because Plaintiff is not a consumer within the scope of the Act. (Da10-Da12). Additionally, Defendant argued that Plaintiff's fraud claims should be dismissed because it failed to plead such claims with the specificity required under R. 4:5-8(a). (Da12-Da15).

Plaintiff filed its opposition to Defendant's motion to dismiss on February 16, 2004. (Da59.) Defendant filed its reply brief in further support of its motion to dismiss on March 5, 2004. (Da81.) Oral arguments were heard on March 26, 2004 before the Honorable Carol E. Higbee (Da126.)

On July 8, 2004, Judge Higbee issued an Order and Memorandum of Decision on Motion, denying Defendant's motion to dismiss in

its entirety. (Da144-155). Defendant filed a motion to leave to appeal on July 28, 2004.

## STATEMENT OF QUESTIONS PRESENTED ON APPEAL

1.   Whether extraordinary circumstances warrant interlocutory review of the lower court's determination that prescription drug coverage providers (third-party payors) that purchase prescription drugs on behalf of their individual plan members have standing under the CFA, which applies to "[a]ny person who suffers an ascertainable loss" including "business entit[ies]."

2.   Whether extraordinary circumstances warrant interlocutory review of Defendant's argument that the trial court improperly concluded that Plaintiff pled its fraudulent misrepresentation and/or suppression claims with sufficient particularity.

## STATEMENT OF PERTINENT FACTS

**A.   Background**

Local No. 68 is a joint union-employer trust fund that provides prescription drug coverage to members of its health care plan. (Da21, Compl. ¶ 1.) Plaintiff purchases or pays for, in part or in full, prescription drugs on behalf of its plan members. (Da27-28, Compl. ¶¶ 24-27.)

Defendant designed, manufactured, marketed, advertised, promoted and sold—and continues to do so to this day—the prescription drug, VIOXX®, an anti-inflammatory drug and pain reliever containing rofecoxib. (Da22, Compl. ¶¶ 2-4.) VIOXX® was

introduced to the market in 1999 and is part of a class of drugs known as non-steroidal anti-inflammatory drugs ("NSAIDs"). (Da23-24, Compl. ¶¶ 11-13.)  Merck aggressively marketed VIOXX® directly to consumers, physicians, and third-party payors such as Local 68. (Da26-29, Compl. ¶¶ 23-33.)

B.  **Plaintiff's Allegations**

In its class action complaint, Plaintiff claims that Merck engaged in unconscionable and fraudulent commercial practices in New Jersey in connection with the marketing, promotion, and sale of the prescription drug VIOXX® in violation of the CFA and common law fraud doctrine. (Da21-29, Compl. ¶¶ 4-34.) Specifically, Plaintiff alleges that:

- Defendant made false and intentionally misleading representations, and omitted material facts from third-party payors, regarding the comparative safety and efficacy of VIOXX® as compared to traditional NSAIDs. (Da22, Compl. ¶ 5.)

- Merck made misrepresentations and material omissions designed to induce third-party payors, such as Local 68, to purchase and/or authorize the purchase of VIOXX® by its plan participants, and to justify the enormous price disparity (more than 800%) between VIOXX® and traditional NSAIDs. (Da22-23, Compl. ¶¶ 6, 8, 12.)

- Local 68 relied on Merck's marketing, advertisements, promotional efforts, and misrepresentations to its detriment and consequently, paid vastly more than it should and otherwise would have paid for VIOXX®. (Da23, Compl. ¶¶ 7-8.)

Additionally, and as noted in the trial court's July 8, 2004 Memorandum of Decision, Plaintiff identifies specific Merck misrepresentations and material omissions in its complaint. (Da146-Da149.) For example, Plaintiff alleges:

- VIOXX® poses a risk of ulcer and gastrointestinal problems and the FDA has therefore required defendant to include such warnings on the VIOXX® label and inserts. Nevertheless, Merck marketed VIOXX® as a safer alternative to traditional NSAIDs. (Da24, Compl. ¶ 13.)

- The FDA repeatedly warned Merck that its advertisements and promotions failed to provide adequate information, failed to include risk information, and were "false and misleading because they contain misrepresentations of VIOXX®'s safety profile, unsubstantiated comparative claims, and are lacking in fair balance." (Da24-Da25, Compl. ¶¶ 15-16 (quoting FDA Warning Letters)).

- The FDA warned Merck that its promotional activities and materials were in violation of FDA regulations and its promotional campaign minimized "potentially serious cardiovascular findings" from a VIOXX® study. Moreover, the FDA characterized Merck's conduct as raising "significant public health and safety concerns." (Da24-Da25, Compl. ¶¶ 16-17 (quoting FDA Warning Letters)).

- In November 2000, Merck caused the publication of a study in the New England Journal of Medicine and *knowingly withheld* from this publication the severity of cardio-vascular risks associated with VIOXX® consumption as compared to another NSAID, naproxen. (Da26, Compl. ¶ 22.)

- Defendant engaged in a massive direct-to-consumer advertising blitz designed to induce the public to use and request VIOXX® from physicians and prescription drug providers. (Da26, Compl. ¶ 23.)

- Merck provided false and misleading information concerning the safety and efficacy of VIOXX® to prescription drug benefit managers and third-party payors such as Local 68. (Da28, Compl. ¶ 31.)

- Had Local 68 known of the significant negative undisclosed information concerning the safety, efficacy, and benefits of VIOXX®, plaintiff and other third-party payors would not have purchased the drug or would not have done so on the terms they did. (Da28, Compl. ¶ 31.)

Discovery in this action is ongoing. (Da148.)[1]

_____

[1] Merck raises the argument that "Plaintiff makes this claim even though VIOXX® is still on its formulary." Def. Br. at 1. Defendant's suggestion that Plaintiff has taken no business steps to address Merck's improper conduct is false and,

<u>ARGUMENT</u>

MERCK HAS FAILED TO DEMONSTRATE EXTRAORDINARY
CIRCUMSTANCES WARRANTING APPELLATE REVIEW
<u>OF THE LOWER COURT'S INTERLOCUTORY ORDER</u>

A.    <u>Standard of Review</u>

The standard of review for granting leave to appeal is set forth in R. 2:2-4, which provides that the Appellate Division may grant leave to appeal from an interlocutory order "in the interest of justice." "In general, interlocutory review by courts is rarely granted because of the strong policy against piecemeal adjudications." <u>In re Certain Sections of the Uniform Administrative Procedural Rules</u>, 90 <u>N.J.</u> 85, 100 (1982).  New Jersey "has long favored uninterrupted proceedings at the trial level, with a single and complete review, so as to avoid the possible inconvenience, expense and delay of fragmented adjudication.  Thus, 'leave is granted only in exceptional cases where, on balance of interests, justice suggests a need for review of the interlocutory order in advance of final judgment.'" <u>Id.</u> (citation omitted).  <u>See also</u> <u>State v. Reldan</u>, 100 <u>N.J.</u> 187, 205 (1985) ("highly discretionary" and "exercised only sparingly"); <u>Edwards v. McBreen</u>, 369 <u>N.J. Super.</u> 415, 420 (App. Div. 2004).  ("It is the exclusive prerogative of this court to determine whether extraordinary circumstances are

unsurprisingly, finds no support in the Complaint or the record below.

7

present warranting a piecemeal appeal."); CPC Int'l, Inc. v.
Hartford Accos., 316 N.J. Super. 351, 365 (App. Div. 1998)
("piecemeal reviews ordinarily are anathema to our practice").[2]

Merck cannot meet this heavy burden here.  In fact, Merck
nowhere argues that its appeal presents extraordinary
circumstances.  Far from extraordinary, Merck's arguments are
flatly contradicted by controlling precedent as well as the
plain language of the statute and legislative intent.

**B.    The Trial Court Correctly Ruled That the CFA
       Applies to Business Entities Such as Local 68**

   **1.    Merck Misinterprets New Jersey Case Law
          and Ignores the Applicable Statutory Language**

Defendant states that "[t]he trial court ruled that
Plaintiff could sue under the NJCFA because it allegedly paid for
the VIOXX® used by its plan participants and thus 'sustained the
economic cost of the higher price of VIOXX.'"  July 28, 2004
Brief on Behalf of Defendant/Appellant Merck & Co., Inc. In
Support of Motion for Leave to Appeal ("Def. Br.") at 10; see

---

[2] Moreover, on a motion to dismiss for failure to state a claim,
the complaint must be searched "in depth and with liberality to
ascertain whether a fundamental cause of action can be gleaned
even from an obscure statement of claim."  Smith v. SBC
Communications, Inc., 178 N.J. 265, 282 (2004) (citation and
internal quotation marks omitted).  "The test is whether the
alleged facts 'suggest' a cause of action."  Craig v. Suburban
Cablevision, Inc., 140 N.J. 623, 626 (1995) (citation omitted).
"[E]very reasonable inference is . . . accorded the plaintiff
and the motion is only granted in rare instances and ordinarily
without prejudice."  Talalai v. Cooper Tire & Rubber Co., 360
N.J. Super. 547 (Law Div. 2001).  Also, the Court must "accept
as true the facts alleged in the complaint."  Craig, 140 N.J. at
625.

8

<u>also</u> (Da152.)  This assertion, although technically correct, ignores the primary basis for the trial court's decision:  the conclusion that the CFA affords protections to "persons" as defined by the Act (which includes business entities) rather than "consumers" as narrowly defined by Defendant.

In its memoranda for its motion to dismiss and in support of its leave for appeal, Defendant argues that the CFA only extends protection to "consumers."  <u>See</u> Def. Br. at 10-11.  In particular, Merck argues that a consumer is defined as "one who uses (economic) goods and so diminishes or destroys their utilities."  <u>Id</u>. at 13 (citing <u>Hundred East Credit Corp. v. Eric Schuster Corp.</u>, 212 <u>N.J. Super.</u> 350 (App. Div. 1986)).[3]  Although Judge Higbee recognized that the purpose of the CFA is to protect "consumers by eliminating sharp practices and dealings in the marketing of merchandise," she expressly rejected Defendant's

---

[3] Merck improperly attempts to slip into its appeal brief an argument that it did not raise below, namely, that the CFA protects "only those entities who 'purchase goods and services for use in their business operations.'"  Def. Br. at 13 (quoting <u>Arc Networks</u>, Inc. v. Gold Phone Card Co., 333 <u>N.J. Super.</u> 587, 590 (Law Div. 2000).  <u>See also id.</u> at 13-14, 15, 16, 18.  Because Defendant failed to raise this argument below, <u>see</u> Da10-11, 85-91, the Court should decline to entertain it.  <u>See, e.g.</u>, <u>Rendon v. Kassimis</u>, 140 <u>N.J. Super.</u> 395, 417 (App. Div. 1976) (declining to grant leave to appeal where appellant failed to raise issue below).  At any rate, even were this argument properly before the Court, it is meritless.  The language quoted by Merck is merely <u>dictum</u>, since none of those decisions cited by Merck held that a business entity qualifies as a consumer within the meaning of the CFA <u>only</u> if it purchases goods or services for use in its business operations.  Moreover, Merck cannot point to any language in the CFA indicating that it applies to only those business entities that purchase goods and services for use in their business operations.

argument that the CFA only affords protection to one who "uses the product."  (Da154.)

The lower court's decision was eminently proper.  As Judge Higbee pointed out, the Hundred East decision—an opinion heavily relied on by Defendant—itself rejected such a narrow interpretation of the Act and held that "the Act [is] applicable to all sales of 'merchandise' without regard to its intended use or the nature of the buyer." Hundred East, 212 N.J. Super. at 355 (emphasis added); see also Da154.  Defendant nowhere addresses this language in its brief.  Moreover, the language quoted by Defendant from Hundred East, that a consumer is "one who uses (economic) goods and so diminishes or destroys their utilities," Def. Br. at 13, was merely dictum, as the Court there simply concluded that the business plaintiff in that case fit within this definition.  212 N.J. Super. at 355.  Nowhere in Hundred East does this Court hold that the CFA applies only to a consumer "who uses (economic) goods and so diminishes or destroys their utilities."

Moreover, as the lower court determined, the CFA defines the Act as applying to "persons" rather than merely "consumers." (Da151.)  The term "person" is defined by the Act to include "any natural person . . . partnership, corporation, company, trust, business entity or association. . . ." N.J.S.A. 56:8-1(d).  By contrast, as Plaintiffs pointed out in their opposition to Defendant's motion to dismiss, and as Judge Higbee confirmed in her decision, nowhere in the CFA is the term "consumer" used or

defined.  See Kavky v. Herbalife Int'l of America, 359 N.J. Super. 497, 508 (App. Div. 2003) ("Although the Act is entitled 'An Act concerning consumer fraud, prevention, and providing penalties therefore,' . . . it contains no definition of consumer.").

In addition, contrary to Defendant's argument that the CFA applies to only those consumers that use goods, Def. Br. at 13-16, the Act provides that "any person who suffers an ascertainable loss of moneys or property" as a result of any "practice declared unlawful" may bring an action.  N.J.S.A. 56:8:19 (emphasis added).  See Da151, 152.  Defendant conveniently fails to address this language in its brief. Accordingly, because the term "person" includes business entities, and because the Complaint plainly alleges that Local 68 suffered an ascertainable loss (i.e., in purchasing and paying for VIOXX®) as a result of Defendant's deceptive and unconscionable practices in the marketing and sale of the drug (Da29, Compl. ¶ 33), Local 68 is plainly entitled to the protections afforded by the Act. (Da152.)

The narrow application of the CFA urged by Defendant is also contrary to the broad interpretation applied by New Jersey courts to insure consumer protection from a wide range of consumer fraud.  See, e.g., Gennari v. Weichert Co. Realtors, 148 N.J. 582, 604 (1997)("The history of the Act is one of constant expansion of consumer protection."); Hampton Hosp. v. Bresan, 288 N.J. 372, 378 (App. Div. 1996) ("The remedial goal of the Act is

11

to protect consumers and the Act is liberally construed to serve that end."). As Judge Higbee aptly noted, "[t]he focus should be on a misrepresentation causing a 'person' to pay for something they otherwise would not have been willing to pay for because of the higher cost. This fits the purpose of the Act. If, for example, a 'person' buys a gift for a third party based on false advertising, it does not matter that the person who is duped into making the purchase does not personally use the product." (Da154-Da155.)

Accordingly, the trial court's application of the CFA to Local 68 is entirely consistent with the public policy animating the Act as well as the plain meaning of the statutory and regulatory language.

### 2.   Defendant's Narrow Definition of "Consumer" Is Contrary to Controlling New Jersey Precedent

Defendant argues that <u>Hundred East</u> does not support Judge Higbee's reasoning and makes the conclusory statement (without offering any analysis) that <u>Hundred East</u> "requires a claimant under the [CFA] to have used the product" and that this alleged requirement "trumps any theory of liberal construction." Def. Br. at 17. In fact, as noted above, rather than restricting application of the Act to consumers and business entities that "used" the product, <u>Hundred East</u> endorsed a broader inter-pretation that did not hinge on the definition of "consumer":

> Nothing in that statutory language suggests that the Act is inapplicable to the sale of merchandise for use in business operations. To the contrary, the language on its face makes the Act applicable to all sales of

12

> 'merchandise' <u>without regard to its intended
> use or the nature of the buyer</u>.   And a
> corporation or other business entity is a
> <u>'person' entitled to sue under the Act</u>.

<u>Hundred East</u>, 212 <u>N.J. Super.</u> at 355 (emphasis added).   Moreover,

<u>Hundred East</u> went on to <u>reject</u> the argument that application

should depend on whether the claimant was a "consumer" in the

ordinary sense of the term.

> There is . . . no justification to limit the
> Act, as urged by [Defendant], to sales and
> advertising of merchandise for 'personal,
> family or household use.'   Such a reading
> would fly in the face of the statutory
> definitions of 'merchandise' and 'person'
> entitled to sue.

<u>Id</u>. at 356 (internal citations and quotations omitted).

Similarly, in <u>Marascio v. Campanella</u>, 298 <u>N.J. Super.</u> 491 (App.

Div. 1997), this Court held that "a consumer transaction occurs

when the transaction involves the sale of consumer goods

<u>regardless of who purchases those goods and for what purpose</u>."

<u>Id.</u> at 498 (emphasis added); <u>see also</u> <u>Zorba Contractors v.</u>

<u>Housing Auth. of Newark v. Georgia-Pacific Corp.</u>, 282 <u>N.J. Super.</u>

430, 435 (App. Div. 1995) (Housing Authority of Newark, which

purchased products on behalf of public and used public funds,

constituted consumer under CFA).   Thus, contrary to Merck's

assertions, Judge Higbee's reasoning is in accord with the

precedent of this Court, which countenances a more expansive

application of CFA's protections and rejects a definition of

"consumer" that requires actual usage by the claimant.[4]

---

[4]   Defendant also relies on <u>City Check Cashing, Inc. v. National</u>
<u>State Bank</u>, 244 <u>N.J. Super.</u> 304 (App. Div. 1990), to support its

13

Significantly, in <u>Kavky</u>, the Court endorsed such a broad definition of consumer and expressly rejected the interpretation urged by Defendant:

> Although we have occasionally referred to a dictionary definition of a consumer as 'one who uses (economic) goods, and so diminishes or destroys their utilities,'. . ., as <u>J & R</u> recognized, 'some consumer goods may not be diminished or destroyed through use . . . .' Consequently, we agree with <u>J & R</u>'s statement that the result should not turn on 'the acceptance of [that] definition.'"

<u>Kavky</u>, 359 <u>N.J. Super.</u> at 505 (internal citations omitted).[5] In <u>Kavky</u>, this Court concluded that a purchaser of a franchise distributorship was covered by the CFA. In so doing, the Court rejected an analysis that hinged on a definition of "consumer" and instead focused on whether the product in question was mass-marketed to the public. See <u>id.</u> at 501-506. <u>Kavky</u> further reiterated the Appellate Division's position in <u>Hundred East</u>: that "the Act was not limited to sales and advertising of merchandise for personal, family or household use." <u>Id.</u> at 504.

---

narrow definition of "consumer" as one who "uses" the product. Although the <u>City Check</u> decision cites <u>Hundred East</u> for the proposition that a consumer must be one who "uses" goods, it fails to address the <u>Hundred East</u> court's ultimate rejection of that narrow definition. Moreover, the <u>City Check</u> court explicitly characterized the dispute before it as between a wholesaler and a retailer, and limited its reliance on the definition of a consumer as one who "uses" the product to the specific transaction in controversy before it. See <u>City Check</u>, 244 <u>N.J.</u> at 309.

[5] Not surprisingly, Merck contends that this language in <u>Kavky</u> is inapposite because "VIOXX® is 'destroyed through use.'" Def. Br. at 16 n.7. This argument is absurd because it ignores the fact that, although VIOXX® is destroyed through use by the ultimate user, for purposes of this case, the Plaintiff is not such a user but instead authorizes the purchase of, and purchases, the drug for its health plan participants.

14

<u>Kavky</u> plainly supports the lower court's decision because it rejects Merck's narrow interpretation of "consumer" and because VIOXX® is mass marketed to the public.

Defendant argues that <u>Kavky</u> does not support Judge Higbee's broader definition of "consumer" because "<u>Kavky</u> did not consider whether a party which does not use the goods or services in question is a consumer.  Rather the issue [there] was 'whether . . . franchises and distributorships come within the NJCFA's definition of 'merchandise.'" Def. Br. at 18.  This argument mischaracterizes <u>Kavky</u>.  Contrary to Merck's argument, the <u>Kavky</u> Court actually framed the issue as "<u>whether the purchaser of a franchise distributorship is protected by the Act</u>, or to put it somewhat differently, do franchises and distributorships come within the Act's definition of merchandise." 359 <u>N.J. Super.</u> at 502 (emphasis added).  Moreover, in addressing these issues, as noted above, the Court explicitly rejected a narrow definition of "consumer" and held that the application of the CFA "should not turn" on whether the person uses goods.  <u>Id.</u> at 504-05.  In this regard, contrary to Merck's argument, <u>Kavky</u> certainly <u>did</u> consider whether a party that did not use goods or services was a consumer within the meaning of the CFA, since the purchase of a franchise distributorship does not involve the <u>use</u> of a good or service but, rather, involves "the <u>provision</u> of both services and commodities." <u>Id.</u> at 508 (emphasis added); <u>see id.</u> ("franchise is something different from the items specified in [CFA's definition of 'merchandise']").  Thus, <u>Kavky</u> is analogous to the

15

circumstances of this case, since Local 68 does not use a good
(such as VIOXX®) but, rather, provides a commodity or service
(<u>i.e.</u>, prescription coverage for the drug to participants in its
health plans).

Similarly meritless is Defendant's argument that <u>Zorba</u>
<u>Contractors, Inc. v. Housing Auth. Of Newark</u>, 282 <u>N.J. Super.</u> 430
(App. Div. 1995), provides no support for the trial court's
decision. Def. Br. at 19. Specifically, Merck contends that that
decision does not support the lower court's conclusion that the
definition of "consumer" as urged by Merck is inappropriate when
interpreting the CFA. <u>See id.</u>;(Da153). The <u>Zorba</u> court first
noted that the purpose of the Act is to "discourage unlawful
sales and advertising practices designed to induce consumers to
purchase merchandise." <u>Zorba</u>, 282 <u>N.J. Super.</u> at 434. After
concluding that the Housing Authority was a "person" for purposes
of the Act, the Court stated that "[t]he Authority is
unquestionably a consumer, purchasing merchandise with public
funds for the benefit of a segment of the population. As
remedial legislation, the Act must be interpreted expansively
rather than narrowly . . . ." <u>Id.</u> at 435. Thus, it is clear, as
Judge Higbee concluded, that <u>Zorba</u> endorses a broader application
of the Act, rather than the narrow application urged by
Defendant. <u>See</u> Def. Br. at 19.

Finally, the lower court properly considered the Second
Circuit's decision in <u>Desiano v. Warner Lambert Co.</u>, 326 F.3d 339
(2d Cir. 2003). (<u>See</u> Da153.) Although Merck is correct in

stating that Desiano does not squarely hold that a third-party
payor is a "consumer" under the CFA, Def. Br. at 19, the Desiano
court did conclude, under factual circumstances very similar to
the case at bar, that a third-party payor has standing under the
Act to recover the losses it suffered in connection with drugs
purchased for or by its members.  See id. at 350-51 (concluding
that where third-party payor purchases or reimburses a plan
participant, they are in essence "buyer," and that "courts have
long recognized the right of [health care providers] to recover
from drug companies amounts that were overpaid due to illegal or
deceptive marketing practices").  As Judge Higbee properly noted
and as is relevant here, Desiano "found the New Jersey [CFA] did
protect insurers who paid for the drug Resulin [sic] at a higher
price than diabetes drugs on the market based on false
advertising." (Da153.)  Given the similar circumstances of the
two cases, Judge Higbee properly found that Desiano was
persuasive authority.

In summary, as a result of Defendant's deceptive and
unconscionable commercial practices in the marketing and sale of
VIOXX®, Local 68 purchased the drug on behalf of its prescription
plan members, or authorized and/or subsidized such purchases.
Under New Jersey case law, the plain language of the statute, and
legislative intent, Local 68 is a "person" under the CFA and
application of its protections does not depend on whether Local
68 actually used VIOXX®.  Simply stated, the only relevant
issues are whether Plaintiff is a "person" as defined in the

17

Act, and whether it sustained an ascertainable loss as a result of the challenged conduct.  Taking the well-pleaded facts in a light most favorable to Plaintiff, as the trial judge was required to do, it is clear that Merck has failed to sustain its burden.

Even assuming <u>arguendo</u>, however, that the definition of a "consumer" constitutes a determining factor—and Plaintiff does not agree that it is—under <u>Hundred East Credit Corp.</u>, <u>Kavky</u> and <u>Zorba Contractors,</u> Local 68 plainly meets the definition of a consumer.  Whether Local 68 actually consumed VIOXX® is irrelevant because Local 68 purchased VIOXX®, a commodity mass-marketed to the public, on behalf of individual plan members that did consume the drug.  This is precisely the conclusion that Judge Higbee reached in her well-reasoned and supported decision.

Thus, Defendant's position that application of the CFA is inappropriate because Local 68 did not "use or consume" VIOXX is meritless and relies on a disingenuous and selective interpretation of New Jersey case law.

3.   **The Plumbers Case Is Inapposite**

Defendant further suggests that Judge Higbee was obligated to follow the unpublished decision by Judge Waugh in <u>Plumbers & Pipefitters Local 572 Health and Welfare Fund, et al. v. Merck & Co., Inc.</u>, No. MID-L-857-02 (Feb. 4, 2003) (hereafter "<u>Plumbers</u>")(Da202-Da221.)  Def. Br. at 9.  Merck argues that "[t]here is no principled reason for such different results on virtually identical allegations." <u>Id.</u>

As an initial matter, Defendant neglects to recognize the well-settled principle that decisions of other lower court judges are not binding on Judge Higbee.  See State v. Johnson, 203 N.J. Super. 436, 438 (Law. Div. 1985) ("it is settled law in New Jersey that absent an appellate decision, trial court precedent is not obliged to be followed"); Viviani v. Borough of Bogota, 336 N.J. Super. 578, 587 (App. Div. 2001) ("Defendant's contention that Judge Harris's decision is inconsistent with the prior, unreported Law Division decision opinion in Roe . . . is misplaced.  Unreported Law Division opinions have neither controlling nor precedential value.") (citations omitted).[6]

At any rate, although Judge Higbee does not mention the Plumbers decision in her opinion, it is clear that the two courts came to very different conclusions regarding the application of the CFA, and that Judge Higbee's decision is in accord with New Jersey precedent.  For example, in Plumbers, Judge Waugh concluded that "[s]omeone who buys for the use of another does not qualify as a 'consumer.'"  As a result, Plaintiffs are not 'consumers' within the meaning of the New Jersey Consumer Fraud Act and cannot raise a claim pursuant to the Act."  (Da217, Plumbers).  This statement is in direct conflict with Kavky and other New Jersey cases discussed above.  Also, Merck fails to acknowledge that the federal district court decision relied on by

---

[6]  Merck's failure to acknowledge this controlling precedent is troubling because it violates the fundamental obligation of counsel to bring to the attention of the Court authority that is directly adverse to its position.  See In re Greenberg, 15 N.J. 132, 137 (1954).

Judge Waugh, <u>In re: Rezulin Prod. Liab. Litig.</u>, 171 F. Supp. 2d
299 (S.D.N.Y. 2001), <u>see</u> Plumbers, slip op. at 8-11 (Da48-51),
was reversed by the Second Circuit in <u>Desiano</u>.  <u>See Desiano</u>, 326
F.3d at 344-51.  In light of Judge Higbee's well-supported
conclusions regarding the law in New Jersey, Defendant's apparent
shock that the trial court did not follow the <u>Plumbers</u> decision
is puzzling, to say the least.

Additionally, Defendant mischaracterizes the procedural
history of the <u>Plumbers</u> case, suggesting that plaintiffs in that
action abandoned their fraud claims rather than amend the
complaint.  <u>See</u> Def. Br. at 8.  In fact, as indicated in the
January 30, 2004 Consent Order Dismissing Plaintiffs' Complaint
Without Prejudice (<u>Plumbers</u>), Plaintiffs agreed to dismissal of
the complaint so that it could participate in the present action
and in the interests of judicial economy. (Da222-Da224.)

In sum, rather than presenting extraordinary circumstances
warranting appellate review, Merck makes specious arguments that
misconstrue the statutory language, legislative intent, and
controlling New Jersey precedent.  Judge Higbee's decision is
consistent with New Jersey law, and Defendant has offered no
valid legal basis for reversal.

C.   **Plaintiff's Fraud Claims Are
     <u>Pleaded With Sufficient Particularity</u>**

Merck's challenge to the lower court's decision upholding
Plaintiff's fraud claim similarly fails to present extraordinary
circumstances and instead constitutes a garden variety attack on
the lower court's analysis of the law and facts.  New Jersey Rule

of Civil Procedure 4:5-8(a) provides in relevant part, "in all allegations of misrepresentation [and] fraud, . . . particulars of the wrong, with dates and items <u>if necessary</u>, shall be stated <u>insofar as practicable</u>." R. 4:5-8 (a) (emphasis added). The primary purpose of this pleading rule is to ensure that the defendant can effectively respond to plaintiff's allegations in a responsive pleading and should not be confused with the more rigorous standards of what needs to be proven by a plaintiff at trial. <u>See Seville Indust. Machinery Corp. v. Southmost Machinery Corp.</u>, 742 F.2d 786, 791 (3d Cir. 1984) and <u>Florian Greenhouse v. Cardinal IG Corp.</u>, 11 F. Supp. 2d 521, 526 (D.N.J. 1998) (cited by Judge Higbee in her decision).[7]

As described <u>supra</u> at 5-6, Plaintiff has properly alleged the specific nature of the misrepresentations and material omissions at issue. Moreover, Local 68 specifically alleges that it relied on the misrepresentations and material omissions described <u>supra</u> at 5-6; <u>see also</u> (Da118-Da123, Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss).

Judge Higbee noted the specific nature of Plaintiff's fraud claims and properly concluded that such claims were sufficiently pled to fulfill the Rule's purpose—mainly to insure that Defendant has adequate notice to prepare a responsive pleading. (Da148-Da150); <u>see also Florian Greenhouse</u>, 11 F. Supp. 2d at

---

[7]  Defendant acknowledges that this pleading rule is patterned after Rule 9(b) of the Federal Rules of Civil Procedure and that federal decisions regarding its construction are instructive. <u>See</u> Def. Br. at 20 n.10.  Notably, however, Defendant fails to address these New Jersey federal court decisions in its motion papers.

521.  Further, the trial court correctly found this standard
particularly appropriate where, as in the present case, discovery
is in its early stages.  (Da148.)  Nevertheless, Defendant
demands a greater degree of specificity, but provides no
controlling authority for its assertion that Plaintiff is
obligated—at this early stage of litigation—to provide Merck
with specific descriptions of the statements and material
omissions Plaintiff relied upon.  <u>See</u> Def. Br. at 23-24.  As
discussed above, New Jersey courts do not require such an onerous
pleading requirement in the beginning stages of discovery.

Additionally, Defendant now argues that the FDA Warning
letters sent to Merck, <u>supra</u> at 5-6, and cited in the trial
court's opinion, do not support the fraud claims because
"Plaintiff cannot maintain a fraud claim based on alleged
misstatements made to others." Def. Br. at 24.  This argument
misses the point.  The FDA letters at issue contain specific
references to Merck's advertising, labeling, and promotions that
the FDA identified as misrepresentations and material omissions.
(Da24-Da25, Compl. ¶¶ 15-17.)  As noted by Judge Higbee, the
misrepresentations and omissions identified in the FDA Warning
letters add "precision and some measure of substantiation to the
allegations." (Da149.)

Thus, Judge Higbee correctly concluded that, in their
totality, the fraud claims at issue were sufficiently specific
to put Defendant on notice of the nature of the fraud
allegations against it.  It is simply impractical to require a

greater level of specificity when discovery in this matter is in its early stages. (Da148-Da149); see also Talalai v. Cooper Tire & Rubber, 360 N.J. Super. 547, 555(Law Div. 2001) (Corodemus, J.) (concluding plaintiffs' allegation that defendant failed to disclose known manufacturing defects was sufficient to notify defendant of basis of plaintiffs' claims and that more specific information was best left for discovery).  Under these circumstances, Defendant's demand for more specificity is not only impractical, but is unsupported by New Jersey law.

### CONCLUSION

For the foregoing reasons, the Court should deny Defendant's motion for leave to appeal because it fails to present "extraordinary" circumstances warranting appellate review of the lower court's interlocutory order.

Dated: August 16, 2004
     Newark, New Jersey

SEEGER WEISS LLP


Christopher A. Seeger, Esq.
David R. Buchanan, Esq.
550 Broad Street, Ste. 920
Newark, New Jersey 07102-4573
Tel. (973) 639-9100
Fax  (973) 639-9393

John E. Keefe, Jr.
Sharon McCloskey
Lynch Martin
830 Broad Street
Shrewsbury, New Jersey 07702
Tel. (732) 224-9400
Fax  (732) 224-9494

Joe R. Whatley, Jr., Esq.
Whatley Drake, LLC
2323 2nd Avenue North
Birmingham, Alabama 35203
Tel. (205) 328-9576
Fax  (205) 328-9669

Dennis Reich, Esq.
Reich & Binstock
4265 San Felipe, Ste. 1000
Houston, Texas 77027
Tel. (713)622-7271
Fax  (713)439-0727

**Attorneys for Plaintiffs**