UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: VIOXX | * |
|     Products Liability Litigation | * |
| | * |
| This Document Relates to: | *   MDL No. 1657 |
| | * |
|    *State of Alaska v. Merck & Co., Inc.*, | *   SECTION L |
|       No. 2:06-cv-03132; | * |
| | *   JUDGE ELDON E. FALLON |
|    *State of Montana v. Merck & Co., Inc.*, | * |
|       No. 2:06-cv-4302; and | *   MAGISTRATE JUDGE |
| | *   KNOWLES |
|    *Hood ex rel. State of Mississippi v. Merck &* | * |
|       *Co., Inc.*, | * |
|       No. 2:05-cv-6755. | * |
| | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**<u>DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR A PROTECTIVE ORDER</u>**

Plaintiffs in three of the Attorney General ("AG") suits have issued sweeping notices of deposition, directing Merck to identify corporate representatives who can testify on dozens of different topics that purportedly relate to the marketing and sale of Vioxx in the relevant states. Similar corporate representative depositions recently conducted by the Kentucky AG in state court make clear that the AGs are ***not*** seeking new, state-specific information. Instead, they simply want Merck to spend substantial time and resources preparing for depositions about generic discovery topics already covered at length in the MDL proceeding.

For these reasons, discussed further below, the Court should grant Merck's motion for a protective order and strike the AGs' deposition notices.

**<u>BACKGROUND</u>**

Three Attorney General Plaintiffs served 30(b)(6) deposition notices on Merck over the course of two days. Mississippi served a notice on April 4, 2013, and Alaska and Montana (both

1128558v1

represented by the same outside counsel) served notices on April 5, 2013.  These broad notices identify numerous areas of inquiry related to the development, marketing and sale of Vioxx.[1]

The notices from the Alaska and Montana AGs, which are essentially identical, designate 34 different topics on which the AGs purport to need corporate representative testimony.  The notices touch on nearly every aspect of the promotion and sale of Vioxx, including the development and use of various promotional materials, press releases, television advertisements and other direct-to-consumer advertising that may have been seen by doctors and consumers within those states.  (*See, e.g.*, Pl. State of Alaska's Notice of Rule 30(b)(6) Dep. of Corporate Representative ("Alaska AG Notice"), Topics 1-19 (attached as Ex. 2); Pl. State of Montana's Notice of Rule 30(b)(6) Dep. of Corporate Representative ("Montana AG Notice"), Topics 1-14 16-19 (attached as Ex. 3).)  Many of these topics purport to be limited to Alaska and Montana.  (*See, e.g.*, Montana AG Notice, Topics 3 (the "training and mentoring of sales representatives . . . within the State of Montana), 16 (the "distribution and circulation of each Merck Press Release related to Vioxx within the State of Montana); Alaska AG Notice, Topics 6 (the "purpose and effectiveness of Merck's campaign of print advertisements in the State of Alaska"), 11 (the "detail and promotional pieces that Merck's sales representatives were permitted to use and/or leave with healthcare providers . . . within the State of Alaska").)  In addition, the notices seek testimony regarding scientific articles discussing Vioxx that were distributed within the relevant states (Alaska AG Notice, Topic 20; Montana AG Notice, Topic 20); the "purpose of the FACTS database" and the information that it contains about the promotion of Vioxx in the relevant states (Alaska AG Notice, Topic 15; Montana AG Notice, Topic 15); and bonuses or awards given to

---

[1] The Utah AG also served Merck with a Rule 30(b)(6) deposition notice on April 4, 2013, but that notice is limited to one topic:  "Vioxx information given to Utah Medicaid by the Merck Medical Director of the region of the United States to which Utah was assigned from 1997 through 2005."  (Notice of 30(b)(6) Dep., *State of Utah v. Merck* (attached as Ex. 1).)  Merck is not seeking a protective order with respect to that notice.

Merck employees or healthcare providers in connection with the promotion of Vioxx in the states (Alaska AG Notice, Topics 23-24; Montana AG Notice, Topics 23-24).  The notices also identify many general topics with no connection to the specific states at issue, including Merck's worldwide budget for Vioxx marketing (Alaska AG Notice, Topic 26; Montana AG Notice, Topic 26); the design and outcomes for certain clinical trials for Vioxx (Alaska AG Notice, Topics 32-34; Montana AG Notice, Topics 32-34); and the bases for the theory that Naproxen is cardioprotective (Alaska AG Notice, Topic 29; Montana AG Notice, Topic 29).  Virtually all of the topics identified in the notices duplicate the massive discovery already conducted in the Vioxx litigation.  Indeed, many of the topics seek information that has already been covered in prior fact depositions.  For example, the notices seek testimony regarding the hiring and employment of Merck employee Peter Honig (*see* Alaska AG Notice, Topic 30; Montana AG Notice, Topic 30), even though Peter Honig himself has already been deposed.  Similarly, the notices seek testimony about Protocol 078 (*see* Alaska AG Notice, Topics 33-34; Montana AG Notice, Topics 33-34), even though the AGs already have access to deposition testimony from the clinical monitor for Protocol 078.

The Mississippi AG's notice similarly seeks testimony on:  all aspects of "Merck's marketing efforts and promotional activities in the State of Mississippi"; "[a]ny and all communications between any employee, agent, or contractor of Merck" and any health care provider or any government official in the State of Mississippi; and "Merck's compliance with Mississippi regulations, statutes and laws" with respect to Vioxx.  (Pl. State of Mississippi's Notice of Rule 30(b)(6) Dep. of Merck ("Mississippi AG Notice"), Topics 1, 2, 3 and 6 (attached as Ex. 4).)  The Mississippi AG notice also seeks testimony regarding the "detailing of

Mississippi healthcare providers" (Mississippi AG Notice, Topic 5) that would duplicate the database materials Merck has already produced regarding sales calls for the state.

The three AGs' 30(b)(6) notices are similar to those issued by the Kentucky Attorney General in the AG case that was remanded to state court. Like the AGs here, the Kentucky AG purported to seek Kentucky-specific information in its deposition notice.[2] At the depositions themselves, however, the Kentucky AG's counsel's questions focused almost entirely on topics that have already been covered at length in prior MDL discovery. For example, Thomas Cannell, Merck's former executive marketing director for Vioxx, was designated by the Company to testify regarding eight topics related to the promotion of Vioxx in Kentucky. (*See* Dep. of Thomas Cannell ("Cannell Dep."), *Conway v. Merck & Co.*, No. 09-CI-1671, 9:5-9; 11:20-17:23 (Ky. Cir. Ct. May 9, 2013) (attached as Ex. 7).)[3] Many of these topics overlap with the topics in the Alaska and Montana Notices, including: use of the cardiovascular card in the state; bonus plans or awards for sales representatives and/or healthcare providers in the state; marketing budgets for Vioxx in the state and amounts spent on Vioxx marketing in the state. Despite these state-specific references in the Kentucky AG's notice, the vast majority of the

---

[2] The Kentucky AG's deposition notice was served more than a year and a half after the AG's counsel told this Court that remand of that case was appropriate because "***[t]he only discovery remaining . . . is specific to Kentucky*** and can easily be dealt with in Kentucky state court." (*See* Letter from W. Garmer to Hon. E. Fallon at 1, Aug. 1, 2011 (emphasis added) (attached as Ex. 5).) Despite that representation, Kentucky's notice included a variety of topics that are clearly not limited to Kentucky (or otherwise relevant to the Commonwealth's case), including: information related to three drugs other than Vioxx (Arcoxia, Januvia and Vytorin) (Topics 40-42); information regarding Merck's settlement with the Department of Justice (Topic 37); and information related to "Merck's policies and procedures regarding the release of patient level data from clinical trials for both the United States and Europe" (Topic 39). *See* Notice of Rule 30.02(6) Dep. of the Corp. Representative of Merck & Co., Inc., *Commonwealth ex rel. Conway v. Merck & Co.*, No. 09-CI-1671 (Ky. Cir. Ct. Feb. 4, 2013) (attached as Ex. 6).

[3] The specific topics Mr. Cannell was designated to address included: (1) the "sale, promotion and marketing of Vioxx" in Kentucky; (2) the use of the Cardiovascular card in Kentucky; (3) bonus plans or awards related to the sale and marketing of Vioxx in Kentucky; (4) bonuses or awards related to Vioxx offered to health care providers in Kentucky; (5) marketing budgets for Vioxx in Kentucky; (6) amounts spent on Vioxx marketing in Kentucky; (7) Merck's marketing of the efficacy or superiority of Vioxx as opposed to alternative medications in Kentucky; and (8) marketing of Vioxx to people over 60 in Kentucky. (*Id*. 11:20-17:23.)

questions asked at Mr. Cannell's deposition were entirely unrelated to Kentucky; instead, they addressed Merck's nationwide marketing budgets and profit plans, nationwide television advertisements, and nationwide bonus and incentive plans for sales representatives. For instance, Mr. Cannell was asked a number of questions regarding the Cardiovascular card, which was used nationwide, including the source of the information on the card (*id*. 104:24-105:15), the reasons why it was discontinued following the VIGOR study (*see id*. 108:9-12; 111:23-112:23), and FDA documents that the AG's counsel claimed criticized the studies used as a basis for the data in the card. (*See id*. 115:14-117:2.) Mr. Cannell was also questioned about the content of the nationwide "Power Against Pain" marketing aid (*id*. 147:21-153:21); the 2001 Profit Plan for Vioxx (*see, e.g.*, *id*. 217:20-22); and Merck's "Sales Incentive Plan" for paying incentives and bonuses to sales personnel (*see id*. 190:1-205:23). None of these materials is specific to Kentucky, and all have been the subject of prior discovery in the MDL proceeding.

The Kentucky AG's counsel took a similar approach in deposing Merck's vice president of epidemiology, Nancy Santanello, who was designated to testify about two of the same topics identified in the Alaska and Montana Notices: scientific articles authored by Merck personnel and Merck's position that naproxen is cardioprotective. (Dep. of Nancy Santanello ("Santanello Dep."), *Commonwealth ex rel. Conway v. Merck & Co.*, No. 09-CI-1671, 17:19-18:6; 18:14-18 (Ky. Cir. Ct. Apr. 30, 2013) (attached as Ex. 8).)[4] Instead of asking Ms. Santanello for information specific to Kentucky, the AG used the deposition to rehash issues related to Merck's conduct that have already been explored in depth in the MDL proceeding. Most notably, the AG spent a considerable portion of the deposition questioning Ms. Santanello about Merck's general

---

[4] Specifically, Ms. Santanello was designated to testify regarding: (1) "scientific articles in any way concerning Vioxx that were distributed within the Commonwealth of Kentucky for which Merck employees or consultants were either named authors or ghost authors"; and (2) "Merck's espousing of the cardio protective effect of Naproxen, and the basis therefor, both nationally and within the Commonwealth of Kentucky." (*Id.*)

position on the outcome of the VIGOR study (*id.* 33:15-34:1); Edward Scolnick's internal emails regarding the VIGOR study (*id.* 63:13-16; 124:14-21; 126:10-21; 147:7-22); and the FDA's October 2001 warning letter to the Company (*id.* 192:3-9).  As the Court well knows, these issues have been covered extensively in prior MDL discovery.

Pursuant to Fed. R. Civ. P. 37(a)(1), counsel for Merck has conferred with counsel for Plaintiffs prior to filing this motion, and counsel for Plaintiffs have refused to withdraw the Rule 30(b)(6) notices.

## ARGUMENT

Federal Rule of Civil Procedure 26 authorizes any party from whom discovery is sought to obtain a protective order, for "good cause," against discovery subjecting it to "annoyance, embarrassment, oppression, or undue burden or expense[.]"  Fed. R. Civ. P. 26(c).  As courts have recognized, corporate representative depositions under Rule 30(b)(6) pose particular burdens because the responding party is tasked with identifying "the persons having knowledge of the matters sought by [the requesting party] and . . . prepar[ing] those persons in order that they can answer fully, completely, unevasively . . . as to the relevant subject matters."  *Whiting v. Hogan*, No. 12-CV-08039-PHX-GMS, 2013 WL 1047012, at *10 (D. Ariz. Mar. 14, 2013) (internal quotation marks and citation omitted).  Accordingly, courts do not hesitate to issue protective orders with respect to corporate representative deposition notices where the "benefit to and need of the propounding party is outdone by the burden, expense . . . [or] impracticable demand imposed on the other side."  *Apple Inc. v. Samsung Elecs. Co.*, No. C-11-1846, 2012 U.S. Dist. LEXIS 9921, at *13-14 (N.D. Cal. Jan. 27, 2012).  Here, the burden imposed by the AGs' far-reaching 30(b)(6) notices far outweighs any reasonable need for the information sought.  Indeed, it is clear that the ***only*** purpose served by the notices is to unduly harass Merck.

This purpose is evident from: (1) the duplicative nature of many topics on which testimony is sought; and (2) the unreasonably broad scope of the specified topics.

*First*, the AGs' deposition notices are inappropriate because they seek testimony that is highly duplicative of prior MDL discovery.  Courts have recognized that 30(b)(6) depositions are inappropriate where, as here, the information sought to be obtained is already available from previous discovery taken during the litigation.  *See FDIC v. Wachovia Ins. Servs., Inc.*, No. 3:05CV929 CFD, 2007 WL 2460685, at *4 (D. Conn. Aug. 27, 2007) (quashing 30(b)(6) deposition notice as inappropriate where there had already been "considerable discovery" in the case regarding the topics at issue, "including the depositions of numerous witnesses who have first-hand information" about the case); *Nicholas v. Wyndham Int'l, Inc.*, 373 F.3d 537, 543 (4th Cir. 2004) (district court did not err in concluding that 30(b)(6) deposition was unnecessary where it was "cumulative and duplicative" of the extensive discovery already conducted in the case).  As this Court is well aware, almost every aspect of the development, marketing and sale of Vioxx has been subject to significant discovery in both the federal Vioxx MDL proceeding and other state actions across the country, including the production of millions of pages of material and numerous depositions of Merck employees.  Thus, the AGs already have a mountain of evidence at their disposal regarding virtually all of the topics in their deposition notices.  For example:

- The AGs seek information pertaining to two studies, **Protocols 078 and 136**, that have already been covered in previous depositions.  (*See* Montana AG Notice, Topics 33-34; Alaska AG Notice, Topics 33-34.)  Dr. Gilbert Block – the clinical monitor for Protocol 078 – thoroughly covered the "study design, study oversight, study protocols, study endpoints, and study results" (*see, e.g.*, Montana AG Notice, Topic 33) of that protocol over the course of multiple depositions cross-noticed by Merck in the MDL.  (*See, e.g.*, Dep. of Gilbert Block 18-19, 38-56, 71-154, *In re Vioxx Prods. Liab. Litig.*, MDL No. 1657, Aug. 7, 2007 (attached as Ex. 9); Dep. of Gilbert Block 488-516, *In re Vioxx Prods. Liab. Litig.*, MDL No. 1657, Oct. 30, 2007 (attached as Ex. 10).)  Likewise, multiple witnesses, including Drs. Barry Gertz and Loren Laine, have already testified

about Protocol 136.  (*See* Dep. of Barry Gertz 54-69, *In re Vioxx Prods. Liab. Litig.*, MDL No. 1657, Aug. 15, 2005 ("Aug. 15 Gertz Dep.") (attached as Ex. 11); Dep. of Loren Laine 129-141, 225-229, 258-60, *Louisiana v. Merck & Co.*, No. 05-3700, Feb. 2, 2010 (attached as Ex. 12).)

- The AGs also seek information concerning Merck's hiring of **Peter Honig**, the negotiation of his employment, and his "role in reviewing Vioxx clinical trial data and/or approving the label change for Vioxx."  (*See* Montana AG Notice, Topic 30; Alaska AG Notice, Topic 30.)  But all of these topics were covered in Mr. Honig's own deposition taken in the consolidated New Jersey state Vioxx proceedings.  (*See* Dep. of Peter Honig 14, 81-82, *In re Vioxx Litig.*, No. 619 (N.J. Super. Ct. Law Div. Aug. 8-9, 2005) (attached as Ex. 13) (discussing Honig's hiring); *id*. 28-33 (discussing his division's role in collecting data); *id*. 79; 527; 536-37; 555-57; 567; 574-76; 598; 648-49 (discussing his lack of involvement in labeling issues); *id*. 263-64; 528-30; 535-37; 577; 596-97 (describing which data he has reviewed and when).)

- The AGs also seek testimony regarding "[a]ll ***efforts by Merck to determine whether Naproxen was cardioprotective.***"  (*See* Montana AG Notice, Topic 29; Alaska AG Notice, Topic 29 (emphasis added).)  This topic has been extensively explored by multiple Merck witnesses in multiple proceedings.  (*See, e.g.*, Dep. of Eliav Barr 33-35, *State of Texas v. Merck & Co.*, No. D-1-GV-05-003021, Oct. 28, 2009 (attached as Ex. 14); Aug. 15 Gertz Dep. 167-69, 281-83; Dep. of Barry Gertz 1203-23, *In re Vioxx Prods. Liab. Litig.*, No. 619 (N.J. Super. Ct. Law Div. Sept. 28, 2005) (attached as Ex. 15); Dep. of Alise Reicin 2256-73, *In re Vioxx Prods. Liab. Litig.*, MDL No. 1657, Aug. 14, 2006 (attached as Ex. 16); Dep. of Douglas Watson 217; 250-54, *State of Texas v. Merck & Co.*, No. D-1-GV-05-003021, Nov. 13, 2009 (attached as Ex. 17); Dep. of Douglas Watson 445, 449-51, *Plubell v. Merck & Co.*, No. 04 CV 235817-01, June 8, 2011 (attached as Ex. 18); Dep. of Douglas Watson 487-88; 535-36; 581-83; 592-94; 599-600, *Plubell v. Merck & Co.*, No. 04 CV 235817-01, July 27, 2011 (attached as Ex. 19).)

- The AGs also seek information concerning the promotional materials that were used in the ***marketing of Vioxx to healthcare providers*** in the relevant states.  (*See, e.g.*, Mississippi AG Notice, Topics 1, 3, 5; Alaska AG Notice, Topics 11, 18; Montana AG Notice, Topics 11, 18.)  But, as Merck stated in response to another duplicative interrogatory propounded in the MDL proceeding, the Company has already produced extensive information concerning this topic.  (*See* Resp. of Def. Merck & Co., Inc. to Gov't Action Pls. First Set Of Master Interrogs. to Def. Merck & Co., Inc. ("Resp. to Gov't Action Pls. Interrogs."), *In re Vioxx Prods. Liab. Litig.*, MDL No. 1657 (E.D. La. Aug. 5, 2009), at 44-45 (Resp. to Interrog. 43) (attached as Ex. 20) (explaining that its Profile Forms production provided "broad" information "relating to the distribution of Dear Doctor/Healthcare Professional letters and Professional Information Request ("PIR") responses; sales representative detail and sample activity; . . . and comprehensive advertising information relating to the media outlets of both plaintiffs and their prescribing physician and/or sample providers").)

- The AGs seek information regarding the content of the "***Cardiovascular Card***" and its use in the relevant states. (*See* Montana AG Notice, Topic 18; Alaska AG Notice, Topic 18 (emphasis added).) But plaintiffs in the MDL proceedings have already sought substantial discovery regarding the use of the "Cardiovascular Card" (*see* Gov't Action Pls.' First Set of Master Interrogs. to Def. Merck & Co., Interrog. No. 23 (attached as Ex. 21); *see also* Gov't Action Pls.' 1st Master Req. for Prod. 32 (attached as Ex. 22)), in response to which Merck provided a list of its employees "who had significant responsibility with respect to the Government Entities" and noted that it had or "will produce responsive, non-objectionable documents" based on the identified employees' custodial files; produced millions of Vioxx-related call notes, as well as "an extract containing a national sample of hundreds of thousands of randomly selected Vioxx-related call notes from all fifty states and the District of Columbia"; and provided "Merck Profile Forms (MPFs") associated with physicians who prescribed Vioxx in the states represented by the Government Action Plaintiffs." (Resp. to Gov't Action Pls.' Interrogs. at 27-28 (Resp. to Interrog. 23).)

- The AGs seek testimony regarding Merck's ***gross sales of Vioxx*** within each state. (*See* Alaska AG Notice, Topic 22; Montana AG Notice, Topic 22.) Merck provided this information in response to interrogatories propounded in the MDL proceeding. (*See* Resp. to Gov't Action Pls. Interrogs., at 18-19 (Resp. to Interrog. 13).) Additionally, Merck has already provided its yearly gross sales figures for Vioxx sales in the United States in its September 15, 2005 response to interrogatories propounded by the Plaintiffs' Steering Committee. (*See* Resp. of Def. Merck & Co., Inc. to Pl. Steering Committee's First Set Of Interrogs. to Def. Merck & Co., Inc. ("Resp. to Pl. Steering Committee's Interrogs."), *In re Vioxx Prods. Liab. Litig.*, MDL No. 1657, at 17-19 (Resps. to Interrog. 10) (E.D. La. Sept. 15, 2005) (attached as Ex. 23).)

- The AGs' proposed topics also include the "***amounts budgeted and spent by Merck for marketing and promotion of Vioxx***" in the relevant states, nationally and globally. (*See* Montana AG Notice, Topics 25-26; Alaska AG Notice, Topics 25-26 (emphasis added).) Again, Merck already provided this information in response to MDL interrogatories. (*See* Resp. to Gov't Action Pls. Interrogs. at 40 (Resp. to Interrog. 38).) Merck has also produced the Profit Plans for 1999-2004, which contain those budgets. (*Id*.).

- The Mississippi AG also seeks testimony regarding "Merck's involvement with any United States investigatory body that conducted an investigation relating to Vioxx . . . during the ***criminal investigation(s) that led to Merck's guilty plea***" in federal court. (Mississippi AG Notice, Topic 7 (emphasis added).) Presumably, this includes Merck's production of documents and other materials to the United States Attorney's Office ("USAO") in conjunction with its investigation. However, this Court has previously denied similar discovery, agreeing with Merck that the AGs already have most, if not all, of the information provided to the USAO and therefore have no legitimate need for additional discovery on this issue. (*See* Tr. Of Attorney General Telephone Conference Proceedings Heard Before The Hon. Eldon E. Fallon 3:6-4:15 (Aug 12, 2009) (attached as Ex. 24).)

To the extent the AGs seek to justify this duplicative discovery on the ground that they now seek state-specific testimony on these subjects, the recent 30(b)(6) depositions taken in the Kentucky AG action undermine that justification. As set forth above, Thomas Cannell was designated to testify as a corporate representative in the Kentucky proceeding regarding a variety of topics that purportedly related to marketing in Kentucky. However, counsel for the Kentucky AG questioned him at length about nationwide direct-to-consumer advertisements (*see, e.g.*, Cannell Dep. 271:5-20; 272:12-275:6), the scientific basis for the statements made in the Cardiovascular Card (*id.* 104:24-105:15), Merck's profit plans for Vioxx (*id.* 217:20-22; 218:20-24; 219:12-224:23) and general policies for providing bonuses and incentives to sales personnel (*see id*. 190:1-205:23.). To the extent the AG's counsel attempted to tie any of these topics to Kentucky, it was generally only to ask whether certain materials or strategies were used "nationwide," which would include Kentucky. (*See, e.g.*, *id*. 104:10-15 (asking Mr. Cannell to confirm "just by the fact that [the Cardiovascular Card] went to all people with responsibility for Vioxx, it certainly went to the sales reps who had responsibility for Vioxx in Kentucky").) Such questions could easily be asked and answered through interrogatories – if they are necessary at all – and do not justify a deposition that focuses almost entirely on facts and evidence that have already been subject to substantial discovery in this MDL.

The Kentucky AG's deposition of Nancy Santanello was equally unnecessary. At her deposition, the AG's counsel focused extensively on internal company documents regarding the VIGOR study and Naproxen's cardioprotective benefits, including emails from Dr. Scolnick, which have already been dissected in countless MDL depositions and trials. (*See* Santanello Dep. 63:13-16; 84;-1-23; 147:7-22; 116:10-15.) Rather than attempt to connect these communications to Kentucky in any way, the AG's counsel simply asked Ms. Santanello to

10

confirm what was said in these materials.  For example, referencing Dr. Scolnick's March 9, 2000 email, the AG's counsel asked the witness whether Dr. Scolnick "was concerned . . . that the fivefold increase was a problem for the company in terms of Vioxx." (*Id.* 63:13-16.)  The AG's counsel took the same approach when questioning Ms. Santanello about the October 2001 FDA warning letter (*see id.* 163:18-194:24) – a document that has been scrutinized in virtually every Vioxx case and has no specific nexus with Kentucky.

In short, it is clear that the AGs do not intend to take corporate representative depositions for the purpose of obtaining any new, state-specific information necessary to prepare their cases.  Rather, the evident purpose of the deposition notices is to force Merck to spend substantial time, money and manpower scurrying to prepare witnesses on a huge range of topics over a short period of time.  For this reason alone, the notices should be stricken.

***Second***, the notices should be stricken because they are also unreasonably overbroad.  It is well recognized that 30(b)(6) depositions should not be used "to burden[] the responding party with production and preparation of a witness on every facet of the litigation." *Apple*, 2012 U.S. Dist. LEXIS 9921, at *13-14; *see also Karnazes v. Cnty. of San Mateo*, No. C 09-0767 MMC (MEJ), 2010 U.S. Dist. LEXIS 57821, at *2-7 (N.D. Cal. May 19, 2010) (granting protective order were plaintiff noticed "overbroad depositions").  As courts have recognized, allowing far-reaching deposition notices that require testimony on broad areas "would render unworkable the obligation of the responding party to 'make a conscientious, good-faith effort to designate knowledgeable persons . . . and to prepare them to fully and unevasively answer questions about the designated subject matter." *Apple*, 2012 U.S. Dist. LEXIS 9921, at *13-14 (citation omitted).  After all, "[a]n overbroad Rule 30(b)(6) notice subjects the noticed party to an impossible task[;] [w]hen the notice is overbroad, the responding party is unable to identify the outer limits of the

11

areas of inquiry noticed, and designating a representative in compliance with the deposition notice becomes impossible." *Bowers v. Mortgage Elec. Registration Sys., Inc.*, No. CIV.A. 10-4141-JTM, 2011 WL 6013092, at *4, *7 (D. Kan. Dec. 2, 2011) (internal quotation marks and citation omitted).

That is precisely the case here. As set forth above, the 30(b)(6) notices issued by the Montana and Alaska AGs list 34 broadly worded areas of inquiry, ranging from "[t]he sale, promotion, and marketing of Vioxx" in these states, to "[a]ll scientific articles in any way concerning Vioxx" that may have been distributed in the states. (*See* Montana AG Notice, Topics 1, 19, 20; Alaska AG Notice, Topics 1, 19, 20.) It would be a Herculean task for Merck to identify and prepare the many witnesses who would be necessary to give accurate and complete testimony on these and other broad categories of information sought. While the Mississippi AG's notice does list fewer topics, it is similarly overbroad. For example, the Mississippi AG seeks testimony regarding "***all*** communications" about Vioxx between "***any*** employee, agent, or contractor of Merck" and "***any*** healthcare provider" or "government official" in Mississippi, as well as all information about "Merck's marketing efforts and promotional activities" related to Vioxx in Mississippi over the course of the period from 1998-2006.[5] (*See* Mississippi AG Notice, Topics 1-3 (emphasis added).) The notice also broadly refers to "Merck's compliance with Mississippi regulations, statutes and laws concerning . . . Vioxx" (Mississippi AG Notice, Topic 6), which would presumably require a witness to testify as to whether every action Merck ever took with respect to Vioxx in Mississippi complied with every single law or regulation enacted in that state.

---

[5] Vioxx was only on the market in the United States from 2000-2004, further demonstrating the overbreadth of these requests.

1128558v1

There is simply no way that Merck can adequately prepare a witness – or even several witnesses – to provide complete testimony about any and every aspect of Merck's marketing and/or other communications to thousands of doctors and government employees within a state. Nor is there any reasonable way to prepare a lay witness to testify regarding the legality of every action Merck has ever taken with respect to Merck under state laws. Even if there were, the AGs do not have a legitimate need for such discovery. Rather, their only purpose is to put litigation pressure on Merck, its lawyers, and its employees, simultaneously in multiple cases.[6]

## CONCLUSION

For the foregoing reasons, Merck respectfully requests that the Court grant its motion for a protective order.

Dated:  June 5, 2013

Respectfully submitted,

*/s/ Dorothy H. Wimberly*
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, LA 70130

Douglas R. Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth St., N.W.
Washington, DC 20005

---

[6] The 30(b)(6) notices are also inappropriate because they include topics that are utterly irrelevant to the AGs' claims. Corporate representative depositions "should not be a fishing expedition for entrepreneurial plaintiffs' counsel" seeking information about the conduct or practices of the defendant beyond what is relevant to the case at issue. *Ingersoll v. Farmland Foods, Inc*., No. 10-6046-CV-SJ-FJG, 2011 U.S. Dist. LEXIS 31872, at *9-11 (W.D. Mo. Mar. 28, 2011); *Caldwell v. Morpho Detection, In*c., No. 4:10CV01537 AGF, 2011 U.S. Dist. LEXIS 77012, at *8-9 (E.D. Mo. July 15, 2011) (quashing topic listed in 30(b)(6) notice where it was "not relevant to any party's claim or defense") (internal quotation marks and citation omitted). Yet, that is precisely what the AGs seek to undertake here. For example, the Alaska and Montana AGs seek information related to "Merck's policies and procedures regarding the release of patient level data from clinical trials for both the United States and Europe." (Alaska AG Notice, Topic 32; Montana AG Notice, Topic 32.) It is difficult to see how such information could possibly bear on the AGs' allegations.

1128558v1

John H. Beisner
Jessica Davidson Miller
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
1440 New York Avenue, N.W.
Washington, DC 20005

ATTORNEYS FOR MERCK SHARP &
DOHME CORP.

**CERTIFICATE OF SERVICE**

      I hereby certify that the above and foregoing Brief in Support of Motion for Protective Order has been served on Liaison Counsel, Russ Herman, Phillip Wittmann by U.S. Mail and e-mail or by hand delivery and e-mail, upon Ann Oldfather by e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with PreTrial Order No. 8(C), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 5th day of June, 2013.

                                                */s/ Dorothy H. Wimberly*
                                                Dorothy H. Wimberly, 18509
                                                STONE PIGMAN WALTHER WITTMANN L.L.C.
                                                546 Carondelet Street
                                                New Orleans, Louisiana  70130
                                                Phone:  504-581-3200
                                                Fax:     504-581-3361
                                                dwimberly@stonepigman.com