# Exhibit B

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: VIOXX PRODUCTS LIABILITY LITIGATION | *  MDL No. 1657 <br> * <br> *   SECTION L <br> * <br> *  JUDGE ELDON E. FALLON <br> * |
| This document relates to: <br> State of Montana <br> v. Merck, et al. <br><br> Civil Action No. 2:06-cv-04302 | * <br> *  MAGISTRATE JUDGE KNOWLES <br> * <br> * <br> * |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### STATE OF MONTANA'S FIRST SUPPELEMENTAL RESPONSES AND OBJECTIONS TO DEFENDANT'S SECOND SET OF INTERROGATORIES

The information provided below is based on information known at this initial stage of discovery and is provided without prejudice to the right to supplement and change Montana's responses based on information obtained through the discovery process. It is also provided as a supplementation to Montana's initial responses and not intended to replace said responses.

Montana objects to the Definitions and Instructions because they are overbroad, vague and impose obligations not required by the Rules of Civil Procedure or any Order of this Court.

Montana also makes the following General Objections that shall be deemed incorporated into Plaintiff's response to each and every Interrogatory:

1.      Montana objects to the extent that this discovery exceeds the common discovery contemplated by the requirements of Multi-District Litigation and PTO 39B.

2.      Montana objects to the extent that Merck has not and cannot sustain its burden of establishing federal jurisdiction over its state statutory cause of action.

Without waiving these objections, Montana submits the following responses.

1

## INTERROGATORIES

**INTERROGATORY NUMBER ONE:** With respect to Vioxx, identify each method, act, or practice for which You are seeking penalties under Montana Code Ann. § 30-14-142. For each method, act, or practice identified, include:

> (a) the time, place, and date(s) of the method, act, or practice;
>
> (b) the Merck employee(s) involved with the method, act, or practice;
>
> (c) whether the method, act, or practice was written or oral;
>
> (d) any document(s) related to or utilized with the method, act, or practice;
>
> (e) the content of the method, act, or practice;
>
> (f) if you allege that the method, act, or practice was willful, how or why the method, act, or practice was done knowingly or willfully; and
>
> (g) how the method act or practice was unfair under Montana Code Ann. §30-14-103.

**SUPPLEMENTAL RESPONSE:** Because the stay of discovery by the remaining governmental entities has only just been lifted, it is premature to respond fully and in detail to this extremely broad discovery request and to that extent Montana objects. As discovery proceeds, and before discovery concludes as scheduled by PTO 39B, this response will be further supplemented as required. Montana seeks penalties for each and every communication, in whatever form, disseminated by Merck that was available to persons in Montana that presented information concerning the safety profile and efficacy of Vioxx in an unfair or deceptive manner in violation of the Montana Unfair Trade Practices and Consumer Protection Act. This interrogatory also requests information that is related to expert disclosures and will be further supplemented by those disclosures.

2

At this time, the acts or practices Montana will seek penalties for includes, but is not limited to, detailing of doctors, all forms of advertisement (T.V., radio, print, etc.), direct-to-consumer advertisements and mailings, PIR Letters, methods and practices employed by Merck personnel in Montana such as obstacle responses taught through the Dodgeball Memo, Dear Doctor and Dear Healthcare Provider letters, Press Releases, distribution of specific medical journals, use of the cardiovascular card in the promotion of Vioxx, and any other method, act or practice used by Merck to disseminate deceptive information that reached Montana. In particular, as examples, such practices include but are not limited to:

    a.    The May 21, 1999 Press Release announcing the FDA approval of Vioxx but failed to identify the cardiovascular risk that Merck already knew and had failed to disclose to the FDA;

    b.    The Pre-release marketing campaign that conveyed the message that Vioxx was safe and effective and omitted information about known cardiovascular risk;

    c.    The Post release direct to consumer marketing campaign beginning in June 1999 that conveyed the message that Vioxx was safe and effective and omitted information about known cardiovascular risk;

    d.    The March 27, 2000 Press Release that denied the existence of any particular cardiovascular risk with Vioxx in comparison to other NSAIDs, despite Merck's knowledge to the contrary;

    e.    The April 2000 response to news reports about possible risks of Vioxx denying that there was any particular risk with Vioxx in comparison to other NSAIDs, despite Merck's knowledge to the contrary;

    f.    Merck's public denial in the journal *Pharmacy Today* of the validity of studies presented at the June EULAR;

    g.    Publication in the November 2000 *New England Journal of Medicine* of

results of VIGOR study but that article written by Merck employees and contractors deceptively excluded adverse results and failed to report fully statistical incidence of cardiovascular complications;

      h.     The January 23, 2001 Press Release that falsely represented results of the VIGOR study;

      i.     The May 28, 2001 Press release that falsely proclaimed a favorable cardiovascular safety profile for Vioxx;

      j.     The June 13, 2001 Press Release that similarly claimed a favorable safety profile for Vioxx;

      k.     The October 2003 article in the *Annals of Internal Medicine* where Merck reported the results of the ADVANTAGE study but falsely left out three additional cardiovascular deaths;

      l.     Creation, dissemination and utilization of the deceptive Cardiovascular Card by Merck representatives to deceptively market Vioxx to Montana Health Care Professionals and the various bulletins to sales people on how those cards were to be used to deal with the "obstacles" presented by questions from health care providers about cardiovascular risk;

      m.     Bulletin to salespeople on approximately February 9, 2001 directing them to avoid any discussions with health care providers regarding FDA Advisory Committee findings or results of VIGOR study;

      n.     July 2001 Press Release from Christine Fanelle claiming cardiovascular risk was negligible;

      o.     August 21, 2001 Press Release, just prior to publication of *JAMA* Cleveland Clinic article, claiming in the release that it had additional data that showed that Vioxx did not result in increase in cardiovascular risk;

    p.    August 22, 2001 Jo Jerman voice mail to company representative instructing them to use the Cardiovascular Card in direct marketing to falsely show that cardiovascular mortality rates with Vioxx were no different than other NSAIDs;

    q.    August 23, 2001 Press Release again falsely claiming that there was no increased risk of cardiovascular events;

    r.    Fall 2001 Project Offense training to salespeople to divert attention away from safety concerns and how to use CV Card;

    s.    Videotape training materials and training document entitled "Dodge Ball Vioxx" to teach salespeople how to misrepresent by omission the safety profile of Vioxx;

    t.    Direct to consumer print and television adverstising, Professional Journal inserts, and other advertising campaigns to create deceptive impression about the safety and effectiveness of Vioxx. These are described in detail in Merck Supplemental Disclosure MRK-AM10001099 et seq., amounting to more than 440 instances with as yet uncalculated number contacts with audiences in Montana;

    u.    Numerous letters to Health Care Providers in Montana that communicated the risk profile, benefits and efficacy of Vioxx in an unfair and/or deceptive manner, including but not limited to documents MRK-P 7515, 2475, 2733, 2740, 11253, 11429, 705, 2613, 2615, 2733, 2796, 5095, 5718, 6353, 6808, 7154, 7492, 11207, 11358, 11429 and MRK-A 212 – 219, 713 – 720, 1183 – 1197, 1200 – 1208, 1214 – 1225, 1226 – 1334, 1894 –1897, 2432 – 2446, 2455 – 2456, 2457 – 2458, 2459 – 2460, 2461 – 2466, 2489 – 2496, 2540 – 2547, 2548 – 2564, 3114 – 3133, 3254 – 3259, 3323– 3331, 3806 – 3819, 4411 – 4418, and 4471 – 4479. Based on information so far provided by Merck there were approximately 5332 letters to Montana health care providers, 326 on line letters and approximately 2500 responses to other information

requests that went to persons in Montana and failed to disclose the true safety profile and cardiovascular risk of Vioxx but Merck has yet to identify health care providers receiving most if not all of the above listed letters;

    v.    Based on information provided by Merck, approximately 101,690 times when Merck salespeople met with Montana health care providers and based on their training, marketing bulletins, and directions from Merck marketing department, failed to disclose the true cardiovascular risks associated with Vioxx by ignoring, omitting or misrepresenting the data, using the Cardiovascular Card or using the other techniques such as those contained in Project Offense and the Dodge Ball memo;

    w.    Samples of Vioxx given to health care providers to deliver to their patients to promote the prescription and sales of Vioxx without disclosing the cardiovascular risk associated with its use. Each time such a sample was provided without full and fair disclosure of the risk was an unfair and deceptive act for purposes of marketing the product. The numbers of such samples are contained in a spreadsheet provided by Merck as a supplemental disclosure Appendix D.8;

    x.    Each prescription for Vioxx sold to Montana consumers without providing full and accurate description of the cardiovascular risk and safety profile of Vioxx also constituted an unfair and deceptive act. The total number of such prescriptions, according to information provided by Merck from IMS amounted to almost 300,000;

    y.    Journal articles in national publications that reached Montana written by Merck employees or contractors that communicated the risk and safety profile of Vioxx in an unfair or deceptive manner.  In addition to the article in NEJM listed above, these would also include:  Konslam et al, "Cardiovascular Thrombotic Events In Controlled Clinical Trials Of Rofecoxib," *Circulation*, 2001; Reicin et al, "Comparison Of

6

Cardiovascular Thrombotic Events In Patients With Osteoarthritis Treated Treated With Rofecoxib Versus Nonselective Nonsteroidal Anti-Inflammatories," *Am. J. Cardiology*, 2002; Gertz, et al, "A Comparison Of Adverse Renovascular Experiences Among Osteoarthritis Patients Created With Rofecoxib And Comparator Nonselective Nonsteroid Anti-Inflammatory Agents," Current *Medical Research and Opinion*, 2002; Weir, et al, "Selective Cox-2 Inhibition And Cardiovascular Effects: A Review Of The Rofecoib Development Program," *American Heart Journal*, 2003.

The nature of these acts speak for themselves and given the nature of the acts alleged, Montana presumes the acts were willful and knowing, but ultimately that is a factual conclusion to be determined by the trier of fact, (g) Although whether the acts were unfair is a factual conclusion to be determined by the trier of fact, Montana submits that they were unfair and deceptive practices in at least the following respects:

1) Merck misrepresented and/or omitted material facts about the safety and effectiveness of Vioxx. Merck misleadingly claimed that Vioxx was safe and was as, or more, effective than traditional NSAIDs in treating chronic pain, that it did not cause or contribute to any cardiovascular problem greater than any other NSAIDs, and that Vioxx use should not be limited to patients with gastrointestinal problems who could not use other NSAIDs.

2) Merck suppressed and concealed material information it developed or otherwise knew about the adverse cardiovascular effects of Vioxx and engaged in a mis-information and dis-information campaign to conceal the truth.

3) Merck discredited or cast doubt upon scientific studies and reports and the work of scientists which concluded that Vioxx caused or contributed to adverse cardiovascular effects.

4) Merck systematically engaged in a false and misleading marketing and advertising campaign to promote the use of Vioxx.

**INTERROGATORY NUMBER TWO:** For each method, act, or practice identified in response to Interrogatory Number One, identify by name, address, and telephone number each person, including Montana citizens, Montana healthcare professionals, and Your employees or agents, who you contend witnessed or was a recipient of that method, act, or practice.

**SUPPLEMENTAL RESPONSE:** Objection to the extent this interrogatory requests information about persons in Montana who may have relied on the misleading and deceptive acts described and enumerated above, the information is irrelevant and not calculated to lead to the discovery of relevant information because neither reliance nor causation are elements of either the statutory cause of action made by the State or any defenses thereto. The Montana Unfair Trade Practices and Consumer Protection Act protects Montana consumers from unfair or deceptive acts and conduct. Conduct or acts that have the tendency or capacity to deceive Montana consumers violate the act. Merck can violate the act whether or not any person in Montana relied on Merck's deceptive or unfair conduct. Montana's interest is to ensure that Montana consumers have fair and accurate information about the risks, hazards, safety and effectiveness of the pharmaceuticals distributed in Montana. To the extent that Merck directed advertising and promotional materials to persons in Montana, marketed Vioxx through its representatives to persons in Montana, had its representatives use misleading promotional materials such as the Cardiovascular Card, wrote letters to persons in Montana, or had published in journals or other publications false or misleading information that reached persons in Montana, the identities of any persons in Montana who witnessed or was a recipient of Merck's conduct is in the possession of Merck and because the stay of discovery has only just been lifted, Montana has not yet had an opportunity to submit discovery to Merck to obtain this information. Every person in Montana who was subjected to any of Merck's Vioxx deceptive practices witnessed and was a recipient of an unfair or deceptive act or practice. Plaintiff is aware from the limited discovery received from Defendant to-date, of some Montana

8

Healthcare Professionals that were exposed to untrue, misleading, and/or deceptive statements by Defendant related to Vioxx. At this point, Defendant has provided Montana with only an incomplete set of distribution information that was previously produced in personal injury litigation and another limited distribution list for several letters but not for the many letters listed in Supplemental Response to Interrogatory One above.  Merck has also described its advertising campaign, *See* Mrk-AMI0001099 *et seq*., but it has not yet disclosed the details of when and in which Montana markets such advertising was directed and the predicted audience numbers.  Lastly Merck has reviewed its databases regarding sales contacts with health care providers to enumerate the Vioxx related calls, but it has not yet disclosed the identities of the health care providers contacted, nor has it disclosed the identities of those receiving samples. After Merck complies with additional discovery requests and provides Montana with the detailed information about the distribution of the various written communications, Montana will supplement this response.

**INTERROGATORY NUMBER THREE:**  With respect to Vioxx, identify the fraudulent course of conduct for which You are seeking penalties under Montana Code Ann. § 30-14-142, including:

> (a) the time, place, and date(s) of the fraudulent course of conduct;
>
> (b) the Merck employee(s) involved with the fraudulent course of conduct;
>
> (c) whether the fraudulent course of conduct was written or oral;
>
> (d) any document(s) related to or utilized with the fraudulent course of conduct;
>
> (e) the content of the fraudulent course of conduct; and
>
> (f) if you allege that the fraudulent course of conduct was willful, how or why the fraudulent course of conduct was done knowingly or willfully.

**SUPPLEMENTAL RESPONSE**:   Please see Supplemental Response to Interrogatory

9

Number One above which is incorporated here by reference.

**INTERROGATORY NUMBER FOUR:** For the fraudulent course of conduct identified in response to Interrogatory Number Three, identify by name, address, and telephone number each person, including Montana citizens, Montana healthcare professionals, and Your employees or agents, who You contend witnessed or was a recipient of the fraudulent course of conduct.

**SUPPLEMENTAL RESPONSE**: Please see Supplemental Response to Interrogatory Number Two which is incorporated here by reference.

**INTERROGATORY NUMBER SIX:** With Respect to Vioxx, identify each unfair method of competition or unfair or deceptive act or practice that You contend was unlawful under Montana Code Ann. § 30-14-103. For each method of competition or unfair or deceptive act or practice identified, include:

> (a) the time, place, and date(s) of the unfair method of competition or unfair or deceptive act or practice;
>
> (b) the Merck employee(s) involved in the unfair method of competition or unfair or deceptive act or practice;
>
> (c) whether the unfair method of competition or unfair or deceptive act or practice was written or oral;
>
> (d) any document(s) related to or utilized with the unfair method of competition or unfair or deceptive act or practice;
>
> (e) the content of the unfair method of competition or unfair or deceptive act or practice;
>
> (f) if you allege that the unfair method of competition or unfair or deceptive act or practice was willful, how or why the method, act, or practice was done knowingly or willfully; and
>
> (g) how the unfair method of competition or unfair or deceptive act or practice was unlawful under Montana Code Ann. § 30-14-103.

**SUPPLEMENTAL RESPONSE:**   Please see Supplemental Response to Interrogatory Number One above which is incorporated here by reference.

**INTERROGATORY NUMBER SEVEN:**  For each unfair method of competition or unfair or deceptive act or practice identified in response to Interrogatory Number Six, identify by name, address, and telephone number each person, including Montana citizens, Montana healthcare professionals, and Your employees or agents, who you contend witnessed or was a recipient of the unfair method of competition or unfair or deceptive act or practice.

**SUPPLEMENTAL RESPONSE:**   Please see Supplemental Response to Interrogatory Number Two above which is incorporated here by reference**.**

**INTERROGATORY NUMBER EIGHT:**  For each Montana Healthcare Professional identified as a witness or recipient in response to Interrogatory Number Two, state whether you are aware of any Montana healthcare professional who originally prescribed Vioxx and later determined that he or she would not have prescribed Vioxx had he or she had additional or different information about Vioxx when he or she prescribed the medicine, and if so, specify the Montana Health Professional(s) and how and when you became aware.

**SUPPLEMENTAL RESPONSE:**    Objection, to the extent this interrogatory requests information about persons in Montana who may have relied on the misleading and deceptive acts described and enumerated above, the information requested is overbroad and calls for disclosure of information that is not required to prove either a claim or defense in this action and is premature because discovery is ongoing.  This interrogatory requests information that is inconsistent with the legal standard for establishing a violation under the Montana Unfair Trade Practices and Consumer Protection Act.  Neither reliance nor causation are elements of either the statutory cause of action made by the State or any defenses thereto.  Montana only needs to prove that Merck's acts in Montana were unfair and deceptive.  *See also* Supplemental Response to Interrogatory Number Two above which is incorporated herein.

**INTERROGATORY NUMBER NINE:**  For each Montana Healthcare Professional

11

identified as a witness or recipient in response to Interrogatory Number Two, state whether you are aware of any Montana healthcare professional who read or heard, prior to September 30, 2004, the alleged unfair, false, misleading, and/or deceptive statements identified in response to Interrogatory Numbers One and Six, and if so, specify the Montana Health Professional(s) and how and when you became aware.

**SUPPLEMENTAL RESPONSE:** See Supplemental Response to Interrogatory Number Two. To the extent that Merck directed advertising to persons in Montana, marketed Vioxx through its representatives to persons in Montana, wrote letters to persons in Montana, or had published in journals or other publications false information that reached persons in Montana, the identities of any persons in Montana who witnessed or were recipients of Merck's statements or conduct is in the custody and possession of Merck and because the stay of discovery has only just been lifted, Montana has not yet had an opportunity to submit discovery to Merck to obtain this information. However, as noted in Supplemental Response to Interrogatory Number Two, Merck has provided only very limited information concerning identities of health care providers to whom correspondence was directed and has described its advertising campaign, enumerated its Vioxx sales calls but had not fully disclosed the audiences to whom marketing was directed or the identities of health care professional who were called on, received samples or received any of the other correspondence listed in Supplemental Response to Interrogatory One.

**INTERROGATORY NUMBER TEN:** Identify all unfair, false, misleading, or deceptive acts or practices that you allege Merck is currently engaging in related to Vioxx which You seek to enjoin under Montana Code Ann. § 30-14-111.

**SUPPLEMENTAL RESPONSE:** To the extent the stay has just been lifted and Montana can only now initiate discovery on this topic any response now would be premature and

12

Montana therefore objects.  To the extent the request is vague and overbroad it is objectionable.  Without waiving any objection, Montana seeks to enjoin all of the unfair and deceptive conduct described in its First Amended Complaint and listed in Supplemental Response to Interrogatory Number One.  Until further discovery is completed Montana is not in a position to determine how much of said conduct is ongoing, however, Montana can state that Merck continues to this day to deny the allegations in the First Amended Complaint and does not acknowledge or accept responsibility for the deceptive practices alleged therein.  As such this pattern of fraudulent conduct continues to this day.  At the same time Montana states that it will seek an injunction to prevent further unfair, false, misleading or deceptive acts or practices in the marketing of drugs in Montana such as those used in the promotion of Vioxx, particularly the use of misleading or deceptive promotional materials, including misleading or deceptive written communications with physicians and consumers, direct-to-consumer advertising.  Plaintiff may also seek injunctive relief regarding the compensation of both executives and sales representatives in a way that provides and incentive to commit deceptive acts and practices within the state**.**

**INTERROGATORY NUMBER ELEVEN:**  How many alleged violations of Mont. Code Ann. § 30-14-103 are you seeking penalties for pursuant to Mont. Code Ann. § 30-14-142?

**SUPPLEMENTAL RESPONSE**:     See Supplemental Response to Interrogatory Number One.  The full extent, scope, size, and identity of the audience to whom Merck directed advertising in Montana, the identities and numbers of recipients of the correspondence listed in that supplemental response, the audience and distribution of the journals or other publications of deceptive information that reached persons in Montana will be the subject of future discovery.  Accordingly this response will be further supplemented.

//

//

Respectfully submitted this 10th day of September, 2012.

                                  STEVE BULLOCK
                                  Attorney General
                                  JAMES P. MOLLOY
                                  Assistant Attorney General
                                  P.O. Box 201401
                                  Helena, MT 59620-1401
                                  Tel.: 406-444-2026


                                  /s/ William A. Rossbach
                                  William A. Rossbach
                                  ROSSBACH HART, P.C.
                                  P.O. Box 8988
                                  Missoula, MT  59807-8988
                                  Telephone: (406) 543-5156
                                  Telefax:  (406) 728-8878
                                  bill@rossbachlaw.com

**CERTIFICATE OF SERVICE**

**I** hereby certify that the above and foregoing Responses to Second Set of Interrogatories has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail, upon Liaison Counsel Ann Oldfather by e-mail, and upon all parties by electronically uploading same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 10th day of September 2012.

      /s/ William A. Rossbach
     William A. Rossbach