UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| | * | |
| In re: VIOXX | * | MDL No. 1657 |
|     Products Liability Litigation | * | |
| | * | |
| This Document Relates to: | * | SECTION L |
| | * | |
| *State of Montana v. Merck & Co., Inc.,* | * | JUDGE ELDON E. FALLON |
|     2:06-CV-04302 | * | MAGISTRATE JUDGE KNOWLES |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## BRIEF IN SUPPORT OF MOTION FOR A PROTECTIVE ORDER AND TO QUASH MERCK'S 30(b)(6) DEPOSITION NOTICE TO THE STATE OF MONTANA AND OPPOSITION TO MERCK'S MOTION TO COMPEL

Merck's 30(b)(6) Notice to the State of Montana (hereinafter "Notice") is "an inappropriate attempt to depose opposing counsel and to delve into the theories and opinions" of Montana's attorneys. *Securities and Exchange Commission v. Buntrock,* 217 F.R.D. 441, 444 (N.D. Ill. 2003). Despite Merck's assurance that it seeks only facts, its Notice requests detailed information about how Montana intends to marshal evidence – information known only to attorneys. Importantly, an overwhelming majority of the Notice does not seek facts known by Montana, but how Montana intends to use those facts related to Merck's conduct. In addition, Merck's request is duplicative of written discovery served by Merck and depends on expert disclosures. As Merck knows, Montana will provide supplements to its written discovery requests at the conclusion of fact and expert discovery. This Court should prevent this disruptive, burdensome, and duplicative deposition of Montana's counsel.

## FACTUAL BACKGROUND

On April 1, 2013, Merck served its Notice on Montana seeking a deposition on "each and every" way Merck's promotion of Vioxx violated Montana law. (Ex. A, Notice). In September

2012, Montana supplemented its responses to Merck's prior written requests for "each method, act, or practice for which [Montana is] seeking penalties" including how the act was "willful" and "how the method act or practice was unfair under Montana Code Ann. § 30-14-103" which prohibits "unfair or deceptive" acts or practices.  (Ex. B, Montana's Supplemental Response p. 2).   In addition, Montana responded to questions regarding the number of violations and activities sought to be enjoined.  (*Id.* at 12-13).  During meet and confers, Montana agreed that Merck is entitled to most of the information sought in the written discovery and assured Merck it would supplement its responses after fact and expert discovery is complete.  Before this Motion to Compel, Merck raised no additional issues with Montana's interrogatory responses.

As shown in the table below, Merck's Notice is largely duplicative of its written discovery:

| Merck's 30(b)(6) Notice Topics | Montana's Supplemental Response |
|---|---|
| **No. 1 -** "Each and every way" certain documents presented information in an unfair or deceptive manner. | **Response No.1(f) & (g)**, p. 3 |
| **No. 2 -** "Each and every way" the detailing of a doctor was "unfair, false, misleading or deceptive" | **Response No. 1(v)**, p. 6 |
| **No. 3 -** "Each and every way" the distribution of journal articles was "unfair, false, misleading or deceptive" | **Response No. 1(k) & (y)**, p.4, 6-7 |
| **No. 4 -** "Each and every way" the distribution of product inserts/lables were unfair, false, misleading or deceptive | **Response No. 1(x)**, p. 6 |
| **No. 5 -** "Each and every way" the distribution of sample packages were unfair, false, misleading or deceptive | **Response No. 1(w)**, p. 6 |
| **No. 6 -** Each and every misrepresentation in scientific articles | **Response No. 1(y)**, p. 6-7 |
| **No. 7 -** Every other unfair, false, misleading or deceptive  acts or practices | **Response No. 1 et al.** |
| **No. 8 -** Each and every fact that shows Merck's conduct was willful | **Response No. 1 et al.** |
| **No. 12 -** Number of Violations | **Response No. 12**, p. 13 |

| No. 13 - Each and every Act sought to be enjoined | Response No. 13, p. 12-13 |

In addition, Merck seeks testimony of the person most knowledgeable about the facts in the Complaint.  (*Id.* at Topic No. 9).  Finally, Merck seeks testimony related to the Attorney General's investigation of the claim related to witnesses interviewed and complaints received by the Attorney General. (*Id.* at Topic No.10 & 11).

## ARGUMENT

"Courts in this and other districts generally take a critical view of" deposing opposing counsel when the information sought can be obtained through written discovery.  *Federal Trade Commission v. U.S. Grant Resources, LLC*, 2004 WL 1444951, at *10 (E.D. La. 2004).  Under Rule 26(c), this Court can issue a protective order prohibiting deposition testimony if good cause is shown.  Montana can establish good cause because Merck seeks a deposition of an attorney that will invade the work product of the Montana Attorney General's office, the deliberative processes of the Montana Attorney General, is duplicative of written discovery that has already been served on Montana, and depends on expert disclosures.

### A.    Several Courts have Rejected Similar Attempts to Depose Counsel of Government Agencies.

Several courts have rejected defendants' attempts to depose the counsel of a government agency under the guise of discovering "facts" in the case.  *See e.g.*, *U.S. Grant Resources, LLC*, 2004 WL 1444951 at *9; *SEC v. Buntrock*, 217 F.R.D. 441 (N.D. Ill. 2003).  The courts have seen through these attempts at "discovery" as efforts to depose attorneys regarding theories of the case and discover attorney work-product.

For example, in *U.S. Grant Resources*, the Court rejected the Defendant's attempt to use a 30(b)(6) deposition to determine how the FTC "intend[ed] to marshal its facts, documents and

3

other evidence and to discern the deliberations, mental impressions and/or thought processes upon which [the] action was predicated." 2004 WL 1444951 at *9. In that case, the FTC alleged that the "defendants engaged in deceptive acts or practices in connection with the advertising, marketing and sale" of its services. *Id.* at *1. The defendant's served a 30(b)(6) Notice seeking information as to how the advertisements were "unfair or deceptive" and information related to the FTC's investigation of "consumer complaints" among other things. *Id.* at *2-3. Because the investigation was conducted "by FTC attorneys and by FTC employees working under the direction of attorneys," the Court reasoned that the defendant's notice sought "the deposition of opposing counsel or the practical equivalent thereof." *Id.* at *9-10. Based on the work-product doctrine, the reluctance of courts to permit the deposition of attorneys, and the deliberative process privilege, the Court granted the FTC's motion for a protective order. *Id.* at *11.

In another case, *Buntrock*, the Court also prevented a deposition of a government agency's lawyers. 217 F.R.D. at 446. The Court noted that the defendant sought "to discover the SEC's theories as to the underlying facts, how it intends to marshal those facts, and its belief as to the inferences that may be drawn from those facts." *Id.* According to the Court, such a 30(b)(6) notice was "an inappropriate attempt to depose opposing counsel and to delve into the theories and opinions of SEC attorneys." *Id.* at 444. Although the defendant argued an attorney did not have to be the witness, the court recognized that a "good faith" attempt to comply with the notice would "necessarily involve the testimony of attorneys assigned to [the] case, or require those attorneys to prepare other witnesses to testify." *Id.* In situations very similar to the one before this Court, these cases recognized the deposition as impermissible attempts to depose lawyers.

**B.     The Majority of Merck's Notice Seeks the Application of Facts by Montana's Lawyers, not Facts Known to Montana.**

Merck seeks testimony related to Montana's investigation, analysis, and theory of the facts of this case.   Merck's notice belies its assertion that it seeks only "non-privileged information regarding the factual basis for [Montana's] claim."  (Motion at 1).  Except for topics 10 and 11, which will be addressed below, Merck's Notice seeks no facts related to the conduct of Montana.   Instead, Merck seeks information related to how Montana will apply facts of Merck's conduct to establish Montana's case.

In Topics 1, 2, 3, 4, 5, 6, and 7 Merck requests the individual "most knowledgeable" to testify regarding "each and every way" various activities of Merck were "unfair, false, misleading or deceptive."   (Ex. A, Notice).   That is, how does Montana intend to apply facts known to both Merck and Montana to the applicable law.   Only someone with an intimate working knowledge of the facts related to Merck's conduct as well as the law and legal theories of the Attorney General's Office could provide information on these topics.

For example, Merck seeks to depose the person "most knowledgeable" of "[e]ach and every way that Merck's detailing of doctors was unfair, false, misleading or deceptive." (Ex. A, Topic 2).   To respond, Montana's Attorney General Office would be required to provide an attorney, or someone prepared by an attorney, to testify as to the facts that Montana intends to use at trial to establish its case as well as information that is based on expert disclosures.[1]  Like in *U.S. Grant Resources,* "the 30(b)(6) notice necessarily involved the testimony of one or more attorneys assigned to the case or it requires [Montana's] attorneys to prepare other witnesses to testify." *U.S. Grant Resources,* 2004 WL 1444951 at *9.  The same is true for Topics 8 and 9.

---

[1] One of the reasons Montana informed Merck it will supplement its responses to Interrogatories is that expert testimony is required to fully respond to why Merck's promotion of Vioxx in Montana violated Montana law.  A deposition of a representative of Montana would shed no additional light on that question in as much as it would depend on the representative repeating the opinions of the states' experts which have not yet been disclosed.

Montana has no knowledge of any facts related to Merck's "willful" conduct or the allegations in the complaint aside from Montana's knowledge of Merck's conduct in Montana.

Finally, Topics 12 and 13 request information related to the calculation of violations, as well as injunctive relief, require information from damage experts as well as the mental impressions and theories of the attorneys that represent Montana.

Topics 10 and 11 seek information related to Montana's investigation of Merck's conduct both before and after Montana's action was filed. Because the Attorney General and its counsel were in charge of the investigation and prosecution of this case, these requests seek detailed information into both work-product and the initial investigation of the claim.[2] *See U.S. Grant Resources*, 2004 WL 1444951 at *9-10.

"Each and every way" Merck's conduct violates Montana law is not a question of fact, but a question of Montana's "theories as to the underlying fact, how it intends to marshal those facts, and its belief as to the inferences that may be drawn from those facts." *Id. U.S. Grant Resources* and *Buntrock* are squarely on point. Like the FTC, Montana seeks to hold Merck accountable for unfair and deceptive acts in Montana. Merck's Notice seeks to discover how Montana intends to establish Merck violated Montana law and how Montana investigated this claim. In addition, like in *Buntrock,* only an attorney is able to provide the requested information. Just as in *U.S. Grant Resources* and *Buntrock*, this is an attempt to discover privileged attorney work-product through deposition of an attorney and should be prevented. *Id.*

Merck's attempt to distinguish these cases falls flat. Merck contends those cases do not apply because "it simply seeks to know the precise allegations against it" and the factual basis for those claims. (Motion at 11). Setting aside the fact that this information has been requested

---

[2] As Merck noted in its Motion, Montana also contends topics 10 and 11 are irrelevant. (Motion at 8 n.2) Because Montana law does not require reliance, it is immaterial whether individuals in Montana were actually misled by Merck's conduct.

through written discovery, Merck seeks information very similar to that sought in *U.S. Grant Resources* and *Buntrock*. *See supra* at 3-5. Using a 30(b)(6) deposition to delve into the State's counsel's impression of the case, interpretation of the evidence, and assessment of legal theories is an improper attempt to expose attorney work product and this Court should not permit it. *See Buntrock*, 217 F.R.D. at 446.

**C.    Merck Cannot Justify the Deposition of Opposing Counsel**

Deposing opposing counsel is an extraordinary form of discovery. As Merck recognized, courts look for three factors when evaluating whether such depositions are appropriate: 1) whether other means exist to obtain the information, 2) whether the information is relevant and non-privileged, and 3) whether the information is crucial to the preparation of the case. *Nguyen v. Excel Corp.,* 197 F.3d 200, 208 (5th Cir. 1999) (citing *Shelton v. American Motors Corp.,* 850 F.2d 1323, 1327 (8th Cir. 1986)).

1.    This Court Should Consider the Shelton Factors when Evaluation this Issue.

Merck must satisfy a higher burden to justify the need for a deposition of counsel, which it cannot meet. Especially where, as here, the Notice clearly encompasses topics that delve into attorney work product. The reasoning of *Shelton* is just as applicable to cases involving government attorneys as private attorneys. *See Sparton Corp. v. United States*, 44 Fed. Cl. 557, 563 (Ct. Fed. Cl. 1999). Contrary to Merck's assertion, Montana does not contend that it is immune to depositions simply because it is a government agency or attorneys would be deposed but because Merck cannot satisfy its burden for this extraordinary deposition. (Motion at 6).

The cases Merck relies on for the undisputed notion that state attorney general's offices can be deposed do not challenge the reasoning of *U.S. Grant Resources* and *Buntrock* or suggest *Shelton* is inapplicable. (Motion at 5). In *Oklahoma ex rel Edmonson v. Tyson Foods, Inc.*, the

Court simply noted that a 30(b)(6) of the state, not the attorney general, could be appropriate even though a deposition notice of the attorney general was not appropriate.  2007 WL 649335, at *1-2 (N.D. Okla. 2007).  *Brown, Rudnick, Free & Gesmer v. Massachusetts*, only acknowledged that a 30(b)(6) deposition was given by the Attorney General's office in a contract dispute with the attorney general. 16 Mass. Law Rptr 815, 2003 WL 22707409, (Mass. Super. 2008).  In no way do these cases lend support to Merck's desire to depose Montana on how it will marshal facts in support of its case.[3]

In addition, *SEC v. Kramer* does not undermine the reasoning of *U.S. Grant Resources* and *Buntrock* and is distinguishable from this case.  In that case, the defendant sought only "specific facts" in its notice.  778 F. Supp. 2d 1320 (M.D. Fla. 2011).  Given that narrow notice, the Court did not even consider whether the requirements of *Shelton* were met.  Furthermore, *Kramer's* narrow notice is far from Merck's desire to depose a Montana lawyer about "each and every way" various Merck acts violate Montana law.  Finally, *U.S. ex rel Fry v. Health Alliance of Greater Cincinnati* was a unique case decided on procedural grounds that only mentioned the issues presented here in passing.  2009 WL 5227661 at *3 (S.D. Ohio 2009).   The brief discussion of attorney deposition in *Fry* does not compare to the reasoned analysis of *U.S. Grant Resources* and *Buntrock.  Id.*

2. <u>Merck's Notice Cannot Satisfy the *Shelton* Factors.</u>

In short, Merck has sought the deposition of Montana's counsel on topics closely linked to privileged information.  Courts in the Fifth Circuit have recognized that a higher burden must be met to obtain such a deposition.  *Buford v. Holladay*, 133 F.R.D. 487, 491 (S.D. Miss. 1990)

---

[3] The other case Merck relied on for its position is immaterial.  *Town of Colorado City v. United Effort Plan Trust* simply noted that the Attorney General's office of Utah was going to be deposed without providing any facts related to the circumstances.  *Town of Colorado City v. United Effort Plan Trust,* 2012 WL 5989485, at *2 (D. Ariz. 2012).

citing *Shelton v. Am. Motors Corp.*, 805 F. 2d 1323, 1327 (8th Cir. 1980). As discussed below, Merck cannot meet this burden.

> a.    *Merck can obtain the information by other equivalent means.*

As Merck's Notice acknowledged, it has already sought this information by other means. *See also, supra* at 2-3 (chart noting the similarity between Merck's written discovery and the Notice). For example, Merck's Notice requests testimony of how every detail of a doctor in Montana was unfair false and misleading (Ex. A, Notice at No. 2).  However, in Interrogatory 1, Merck asked for every act that was false and misleading and why. Montana's response specifically notes details of doctors and states how information provided by Merck salespeople ignored, omitted and misrepresented data. (Ex. B, at p.6, 1v).

Merck's argument to the contrary is conclusory and depends on a manufactured discovery dispute.  Although, Merck notes it is unsatisfied with the responses, Motion at 7, Merck has yet to inform Montana that Montana's offer to supplement is insufficient.  If Merck is unsatisfied with Montana's responses it has remedies through a motion to compel or further meet and confers, but it should not be permitted to depose Montana's counsel when written discovery is sufficient to provide the information requested.  It is inappropriate for Defendants to seek, simultaneously, the exact same information through two separate means of discovery, which imposes a needless waste of time and money on the parties.[4] *Buntrock,* 217 F.R.D. at 444.

---

[4] Merck also suggests that interrogatories are "inadequate."  However, numerous courts have held that legal contentions are not a proper subject for Rule 30(b)(6) discovery. *See Goss Int'l Americas, Inc. v. MAN Roland, Inc.,* 2006 WL 1134930, at *5 (D.N.H. 2006); *SmithKline Beecham Corp. v. Apotex Corp.,* 2004 WL 739959, at *2–*4 (E.D. Pa. 2004) (ruling that certain categories of proposed deposition pertained to legal positions that should be ascertained by means of interrogatories rather than deposition).  The cases Merck relies on in support of its position are easily distinguishable.  In *Marker,* the defendant had no intention to answer the plaintiff's interrogatories. *Marker v. Union Fidelity Life Ins. Co.,* 125 F.R.D. 121 (M.D. N.C.1989).  The language Merck relied on from *Felix* related to the unique situation where the plaintiff appeared *pro se* and plead numerous, lengthy, and factually-complex claims for relief.  *Felix v. City & Cnty. of Denver,* 2011 WL 1085766, at *1 (D. Colo. 2011).  Finally, *Flower v. T.R.A. Indus., Inc.,* involved a request for a deposition of a corporation relating to facts of a contract, not the application of facts to a legal theory. 111 P.3d 1192, 1206 (Wash. Ct. App. 2005).

b.      *Merck's Notice Seeks Information that is Protected.*

Merck's Notice calls for testimony that requires responses related to the legal theories of Montana's case.   Under federal law, "a lawyer's research, analysis of legal theories, mental impressions, notes, and memoranda of witnesses' statements" are protected by the work-product doctrine.  *Dunn v. State Farm Fire & Casualty Co.,* 927 F.2d 869, 875 (5th Cir. 1991) (*citing Upjohn Co. v. United States,* 449 U.S. 383, 400, (1981)).   The work product of Montana would only be discoverable if Merck could establish a "substantial need" for the material and that Merck was unable to "obtain the substantial equivalent."   *U.S. Grant Resources, LLC,* 2004 WL 1444951 at *9.

In addition, the information sought by Merck is shielded from disclosure by the deliberative process privilege which is an executive privilege, designed to protect the integrity of the administrative decision-making process. *See Branch v. Phillips Petroleum,* 638 F.2d 873, 881-82 (5th Cir. 1981).   The purpose of this privilege is to "prevent injury to the quality of agency decisions," *Id.,* and is "predicated on the recognition that 'the quality of agency decision-making would be seriously undermined if agencies were forced to operate in a fishbowl.'" *Dow, Jones & Co. v. Dep't of Justice Health and Human Services,* 917 F.2d 571, 573 (D.C. Cir. 1990) (quoting *Wolfe v. HHS,* 839 F.2d 768, 773 (D.C. Cir. 1988) (en banc).   Here, the information sought by Merck goes to the internal deliberations of the Attorney General's Office.

Merck should not be able to seek discovery on the investigation the Attorney General conducted in deciding to bring this claim as sought in Topics 10 and 11.   The discussions within the Office to Counsel are protected by the deliberative process privilege.   *See In Re Agent Orange Product Liability Litigation*, 97 F.R.D. 427 (E.D. N.Y. 1983) (the deliberation process rivilege is not limited to deliberations memorialized in writing).   Courts have recognized the

deliberative process privilege must apply to protect against disclosure of privileged information through deposition discovery in order to prevent a party from "obtaining through the back door" what it is "not entitled to acquire through the front." *U.S. Grant Resources*, 2004 WL 1444951 at *9. Merck responds that it seeks "purely factual" information (Motion at 12), but as noted above, the Notice is far broader that Merck's Motion suggest.

> c. *The Information Sought in the Notice Is Not Crucial to the Preparation of Merck's Case.*

Merck cannot meet this requirement. Montana has responded to written discovery and is under a duty to supplement those responses. Those responses will provide Merck with more than enough information to prepare an adequate defense. Since the defendant has had the opportunity to obtain the subject information through other methods of discovery, further discovery through deposition is merely duplicative of that effort and as such cannot be deemed critical. If a party can procure the information sought through other avenues, then undue hardship has not been shown. *SEC v. Brady,* 238 F.R.D. 429, 443 (N.D. Tex. 2006).

**D.     Merck's Notice Requests Information from Expert Disclosures.**

Montana cannot provide a good faith response to "each and every way" various actions of Merck are violations without relying on expert opinions. In addition, Merck's Notice seeks information that will depend on damage experts which will not be disclosed until after Remand Motions are considered. These facts just confirm that Merck's Notice is simply an attempt to burden Montana with a duplicative deposition and flesh out expert opinions before they are due according to this Court's scheduling order.

For example, Merck's Notice requests the person "most knowledgeable" as to "each and every way" the "Cardiovascular Card" "presented information concerning the safety profile and efficacy of Vioxx in an unfair or deceptive manner." (Ex. A, Notice Topic 1.b.). Montana

cannot possibly prepare an individual to provide responses to that question without relying on expert testimony. The same would be true for all of the sub-parts of Topic 1 as well as Topics 2, 3, 4, 5, 6, 7, 8, and 13. Further, exactly why Merck's actions are subject to penalties under Montana law is a subject for expert disclosures post-remand according to Pre-Trial Order 39B. In addition, the exact number of violations will also depend on expert disclosures that will occur after the Motions to Remand are considered.

As this Court is uniquely aware, the history of the creation and promotion of Vioxx is voluminous and complicated. Merck cannot seriously contend that an employee of the State of Montana can testify as to "each and every way" Merck's actions violated Montana law. Merck's argument to the contrary is unpersuasive (Motion at 14-15). Merck's requests are qualitatively different that the Notice in *Resolution Trust Corp. v. Sands*, 151 F.R.D. 616, 616-20 (N.D. Tex. 1993), which sought only factual predicates.

Internally, the Montana Attorney General's office determined to bring this claim. Discovery and work with experts has revealed numerous ways that Merck violated Montana law. Paper and expert discovery will disclose all of those ways and the number of violations to Merck. The deposition sought by Merck is duplicative and unnecessary.

## <u>CONCLUSION</u>

For all the foregoing reasons, Montana should be protected from having to provide a deposition on the work-product of counsel and Merck's 30(b)(6) Notice of Deposition directed to Montana should be quashed.

Respectfully submitted this 14th day of June, 2013.

/s/ Brian M. Vines
Brian M. Vines
Attorney for Plaintiff

OF COUNSEL:

Kelley L. Hubbard, Esquire
Assistant Attorney General
Post Office Box 201401
Helena, Montana 59620-1401
Telephone: 406/444-2026

Scott A. Powell, Esquire
Don McKenna, Esquire
Matthew C. Minner, Esquire
Brian M. Vines, Esquire
Hare, Wynn, Newell and Newton, LLP
2025 3rd Avenue North; Suite 800
Birmingham, Alabama 35203
Telephone: 205/328-5330

William A. Rossbach, Esquire
Rossbach Hart, PC
401 North Washington Street
Missoula, Montana 59807
Telephone: 406/543-5156

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that the above and foregoing Plaintiff's, State of Montana, Response to Motion for Protective Order has been served upon Liaison Counsel, Russ Herman, Phillip Wittmann and Ann Oldfather, by U.S. mail and e-mail or by hand delivery and e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8(C), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accordance with the procedures established in MDL 1657, on this 14th day of June, 2013.

/s/ Brian M. Vines
Brian M. Vines
ASB-4419-R77V
Attorney for Plaintiff
Hare, Wynn, Newell & Newton, LLP
2025 3rd Avenue North; Suite 800
Birmingham, Alabama  35203
Telephone: 205/328-5330
Facsimile: 205/324-2165
bvines@hwnn.com

13