UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| | * | |
| | * | |
| In re: VIOXX Products Liability Litigation | * | MDL No. 1657 |
| | * | |
| This Document Relates to: | * | SECTION L |
| | * | |
| State of Utah | * | JUDGE ELDON E. FALLON |
| | * | |
| v. | * | MAGISTRATE JUDGE |
| | * | KNOWLES |
| Merck Sharp & Dohme Corp. | * | |
| | * | |
| Civil Action No. 2:06-cv-09336 | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * *

## PLAINTIFF'S THIRD SUPPLEMENTAL ANSWER TO INTERROGATORY NO. 8 OF DEFENDANT'S SECOND SET OF INTERROGATORIES TO PLAINTIFF

Plaintiff hereby submits their third supplemental answer to interrogatory no. 8 as follows.

**Interrogatory Number 8:**   Identify all individuals allegedly injured by Vioxx for whom you claim the Government Health Program provided reimbursement, the nature of the individual's injury, the treatment for the individual's alleged injury and the date of the alleged injury (as modified by the Court).

### Second Supplemental Answer:

Responding in more detail Utah provides an additional report from expert H. Dennis Tolley, Ph.D.  *See* Exhibit A attached hereto.


DATED this ___19th___ day of June, 2013.


___/S/_____

1

Joseph W. Steele
Kenneth D. Lougee
STEELE & BIGGS
5664 South Green Street
Salt Lake City, UT  84123


___ /S/ _____
Eric H. Weinberg
The Law Offices of Eric H. Weinberg
149 Livingston Avenue
New Brunswick, NJ  08901


___ /S/ _____
Richard W. Schulte (Ohio Bar No. 0066031)
Wright & Schulte LLC
812 East National Road, Suite A
Vandalia, Ohio 45377

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing PLAINTIFF'S THIRD SUPPLEMENTAL ANSWER TO INTERROGATORY NO. 8 OF DEFENDANT'S SECOND SET OF INTERROGATORIES TO PLAINTIFF has been served on Liaison Counsel, Russ Herman, Phillip Wittmann and Ann Oldfather, by U.S. Mail and e-mail or by hand delivery and e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8(B), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this ___19th___ day of June, 2013.

/S/

Joseph W. Steele
Kenneth D. Lougee
STEELE & BIGGS
5664 South Green Street
Salt Lake City, UT  84123

3

**EXHIBIT A**

*Priviledged Consultant/Attorney Communication*

# Alzheimer Cases Among Vioxx Users: Utah Medicaid Claims Data

23 May 2013

H. Dennis Tolley, PhD, ASA

## 1  Summary

This report presents a comparison of the incidence rates of Alzheimer's disease (ICD-9 codes 331.0 to 331.9) for Vioxx patients relative to matched non-Vioxx patients in the Utah Medicaid claims data. The hypothesis that Vioxx could be correlated with this type of event was not identified in our previous analysis but was initiated by results from Dr. David Madigan's expert testimony in which he noted a statistically significant higher rate of onset of Alzheimer's disease among Vioxx patients relative to a matched control in the original studies done by Merck. Therefore the formulation of this hypothesis appears completely independent of the information contained in the Utah Medicaid claims data.

The conclusions of the analysis are the following:

1. The incidence of ICD-9 codes 331.0 to 331.9 events (Alzheimer's disease) after initiation of Vioxx was 16 for Vioxx users who had experienced a CVD event prior to Vioxx initiation compared to 6 matched non-Vioxx user patients. Although these numbers are small, this difference represents a statistically significantly higher for Vioxx users. (p-value < 0.05).

2. The incidence of ICD-9 codes 331.0 to 331.9 events after initiation of Vioxx was 35 for Vioxx users who *have not* experienced a CVD event prior to Vioxx initiation compared to 17 matched non-Vioxx user patients. This is statistically significantly higher for Vioxx users. (p-value < 0.01).

3. The relative risk for an ICD-9 codes 331.0 to 331.9 event among Vioxx users with a CVD history is 2.67.

4. The relative risk of an ICD-9 codes 331.0 to 331.9 event among Vioxx users with NO history of CVD is 2.06.

# 2   The Matched Cohort

## 2.1   Critical Events

The first step in comparing incidence rate of ICD9 codes 331.0 to 331.9 events is to define a comparison group. According to the literature, there are certain health events for which the risk is increased by taking Vioxx. These are listed by ICD9 codes for physician diagnosis in Table 1.

Table 1: ICD9 codes for a critical cardiovascular event for the Utah Vioxx study.

| ICD9 | Description of diagnosis |
|---|---|
| 402 | Hypertension. |
| 410-410.x | Acute MI |
| 411 | Acute Ischemic heart disease. |
| 411.1 | Unstable Angina. |
| 413, 413.1, 413.9 | Angina. |
| 415.1 | Pulmonary Embolism. |
| 428.1 | Pulmonary edema. |
| 428-428.x | Heart Failure. |
| 434, 434.0 | Occlusion of Cerebral Arteries. |
| 433, 433.1, 433.2 | Occlusion of pre-cerebral arteries. |
| 433.3, 433.8, 433.9 | Occlusion of pre-cerebral arteries. |

The increased relative risk (denoted $RR$) of a critical cardiovascular event following Vioxx use has been reported in several studies. An overall summary of these results was determined by averaging the results of 40 randomized clinical trials.[1] For critical events listed in Table 1, this meta analysis estimated the relative risk for clients with no previous critical caridiovascular event to be $RR = 2.90$ after 18 months of Vioxx use. This means that a patient with no previous history of a critical cardiovascular event that has taken Vioxx for 18 months will be 2.9 times more likely to have a critical cardiovascular event in the future than would have been had the patient not taken any Vioxx.

The literature reports that for patients with a history of a critical cardiovascular event prior to Vioxx, the relative risk of a subsequent critical cardiovascular event is $RR = 1.63$ within 39 days of Vioxx![2]

However, I have not included in this group of diseases indicated to be high in Vioxx users either venous embolisms and thrombosis events (ICD-9 453) or Alzheimer's disease (ICD9 codes 331.0 to 331.9). To examine such events I first divide the group of Vioxx users based on the above observations. Specifically, I

[1] Zhang, J., Ding, E.L., and Song, Y. (2006).  Adverse effects of Cyclooxygenase 2 Inhibitors on Renal and Arrhythmia Events: Meta-analysis of Randomized Trials. *JAMA 296*, E1-E14.

[2] Gislason, G.H., et al (2006) Risk of Death or Reinfarction Associated with the Use of Selective Cyclooxygenase-2 Inhibitors and Nonselective Nonsterioidal Anti-inflammatory Drugs After Acute Myocardial Infarction. *Circulation 113*, 2906-13.

define Group I as those patients for which we have record of at least one of the events listed in Table 1 prior to Vioxx date. Patients in Group II are those Vioxx users who do not have any record of an event from Table 1 prior to initiation of Vioxx.

## 2.2    Matching

To compare with non-Vioxx users I construct a cohort of patients as similar to the Vioxx patients as possible as follows. Each Vioxx patient is first classified into either of Group I or Group II and then matched to a Medicaid eligible individual for whom we have no record of taking Vioxx. An individual is chosen as a *potential* match for a Vioxx patient in Group II if the individual satisfies the following criteria:

1. Both the paient and the potential match have Medicaid health care costs in the year prior to the Vioxx date[3] of at least $100. This is to assure that we have some prior history of the patient.

2. Both the patient and the potential match have the same gender and same age within 5 years at the Vioxx date(s).

3. Propensity scores of the patient and the potential match agree within 0.02 points. The propensity score was determined using a logistic regression to determine the likelihood an individual would be prescribed Vioxx. (See Appendix A: Matching Vioxx Patients)

4. The patient and the potential match have the same nursing home status at Vioxx date. That is, either both are in nursing homes, or both are not.

5. The patient and the potential match have previous year's Medicaid reimbursed amounts within $400 of each other.[4] Prior year health care costs are used as a measure of health at Vioxx date. Patients in poorer health will presumably have greater Medicaid expenses in the year prior to the Vioxx date.

6. The patient and the potential match either both receive care from an HMO or both receive care under fee for service plan at Vioxx date.

7. The match must not have had an event indicated in Table 1 prior to Vioxx date.[5]

---

[3]For patients taking Vioxx the "Vioxx date" is the date that the patient initiated Vioxx as recorded in the Medicaid file. For matches the Vioxx date is the closest date to the Vioxx date of the patient at which the potential match meets the matching criteria. (See Appendix A, Section 2.4 for more details on Vioxx date.)

[4]Since the patient and matches are essentially over the same interval of time we did not adjust previous year's costs for medical inflation.

[5]Note that the determination of prior history is based only on the data in the Medicaid file. Patients and potential matches having an event not recorded in the Medicaid claims data file will be classified without using this (unknown) information.

8. The patient and the potential match must have a similar pattern of health care need for musculoskeletal visits (ICD-9 codes 710-739).[6]  The Vioxx patient and the potential match are assumed to have similar patterns in this criterion if both are in the same utilization group where the three utilization groups are defined as follows:

   (a) No visits in year preceding Vioxx date for ICD-9 codes 710-739.

   (b) One or two visits in year preceding Vioxx date for ICD-9 codes 710-739.

   (c) Three or more visits in year preceding Vioxx date for ICD-9 codes 710-739.

Matches for Group I are the same as Group II except for item 7.  Group I patients and potential matches must both have a critical cardiovascular event (Table 1) prior to the Vioxx date, as recorded in the Medicaid claims data file.

It is important to note that all criteria for matching here are intended to make the cohort of potential matches similar to the Vioxx patients with respect to a previous history of cardiovascular events, propensity to be prescribed Vioxx, and previous utilization (as measured by cost).  There are no criteria used in matching that specifically matches a Vioxx patient with a non-Vioxx patient that is similar with respect to Alzheimer's risk factors.

For each Vioxx patient a match was chosen at random from the list of potential matches.  This matching was done for the patients taking Vioxx.  Not all Vioxx patients could be matched.  Of the 11,385 Vioxx patients we matched 3802 patients using the matching criteria above.  Of these, 3147 had no history of a critical cardiovascular event prior to initiation of Vioxx as far as the Medicaid data file indicated, and 655 patients did have a history of a CVD event in the Medicaid file prior to initiating Vioxx.  This leaves 7583 patients who were not in the matched set.

## 3  Results

The results are summarized in Table 2 for Group I and Table 3 for Group II. These tables give the count of the number of pairs in each of the four categories:

1. Vioxx patient had an ICD-9 codes 331.0 to 331.9 event after initiation of Vioxx as recorded in the Medicaid claims data file and the match did not.

2. Vioxx patient did not have an ICD-9 codes 331.0 to 331.9 event after Vioxx initiation but match did have at least one event after the Vioxx date.

3. Neither the Vioxx patient nor the match had an ICD-9 codes 331.0 to 331.9 event after Vioxx date.

---

[6]This criterion is included since apparently one of the principle reasons people take Vioxx is for musculoskeletal pain relief. By including this criterion we avoid anti-selection in matching where the matches represent a different sub-population than the Vioxx users.

4. Both the Vioxx patient and the match had an ICD-9 codes 331.0 to 331.9 event after the Vioxx date.

Table 2: Concordance/Discordance table for ICD9 codes 331.0 to 331.9 incidence for Group I: CVD History.

| Description | Count |
|---|---|
| Patient had, Match did not | 16 |
| Patient did not, Match had | 6 |
| Neither had | 627 |
| Both had | 0 |
| TOTAL | 649 |

Table 3: Concordance/Discordance table for ICD9 codes 331.0 to 331.9 incidence for Group II: NO CVD History.

| Description | Count |
|---|---|
| Patient had, Match did not | 35 |
| Patient did not, Match had | 17 |
| Neither had | 3086 |
| Both had | 0 |
| TOTAL | 3138 |

Table 4 gives the Chi-square test of whether or not the Vioxx patients have a statistically higher likelihood of having an ICD9 codes 331.0 to 331.9 event relative to their matches. If this value is greater than 3.86, it indicates that the Vioxx patient have a statistically higher likelihood of an ICD9 codes 331.0 to 331.9 event ($\alpha = 0.05$). We see that for both Group I and for Group II, there is statistical evidence that the Vioxx patients have a higher likelihood of an ICD-9 codes 331.0 to 331.9 event. Also included in Table 4 are the estimates of relative risk for the ICD-9 453 event. Both of these relative risks are statistically significantly greater than 1.0. Patients from Group II, the no history group, have a relative risk much higher than 2.0.

The conclusion from Table 4 is that the individuals taking Vioxx in the Utah Medicaid Claims data have about twice the risk of having an Alzheimer's event than their matches. There are not sufficient events to determine to what extent this increased risk is a function of length of time on Vioxx.

Table 4: Statistical Analysis of Concordance/Discordance and estimated Relative Risks (RR) for the matched cohort of 3802 Vioxx patients.

| Description | Chi Square | RR |
|---|---|---|
| Group I | 4.55 | 2.67 |
| Group II | 6.23 | 2.06 |