UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: VIOXX Products Liability Litigation | MDL No. 1657 |
| This Document Relates to: | SECTION L |
| State of Utah | JUDGE ELDON E. FALLON |
| v. | MAGISTRATE JUDGE KNOWLES |
| Merck Sharp & Dohme Corp. | |
| Civil Action No. 2:06-cv-09336 | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## PLAINTIFF'S SIXTH SUPPLEMENTAL ANSWERS TO DEFENDANT'S SECOND SET OF INTERROGATORIES

Plaintiff hereby submits its sixth supplemental answers to nos. 2 and 5 of Defendant's second set of interrogatories. The substance of this response concerns communications sent from Merck's Director of Medical Services, Jeffrey M. Melin, M.D., F.A.C.P., to the State of Utah Department of Health, in which Merck directly misrepresented the cardiovascular safety of VIOXX.

**Interrogatory No. 2:** Identify all communications between Merck and any person related to VIOXX that Plaintiff contends is violate of Utah law including date, location, form, content, substance, originator and recipient of each communication.

**Interrogatory No. 5:** For each communication identified in response to Interrogatory number 2, identify the specific statement or omission that you claim renders the communication false or misleading. If identifying an omission, identify the communication or information that you allege Merck should have provided.

1

**Representation A:**   **Vioxx does not have properties that cause adverse cardiovascular events.**

**Date of Representation:**  May 30, 2002.

**Person Making Representation and/or Omission:**  Jeffrey M. Melin, M.D., F.A.C.P., Director of Merck Medical Services, sent these communications to the State of Utah.  However, misrepresentations concerning the cardiovascular safety of Vioxx and the extent of naproxen's cardiovascular properties originated with Merck Research Laboratories and scientists, including Dr. Scolnick and Dr. Reicin.  These representations were then circulated within Merck and disseminated to the medical community and public via Merck Marketing and other Merck entities. *See generally*, Plaintiff's Supp. Answers to Defendant's Second Set of Interrogatories, attached hereto as Exhibit A.

**Form of Representation:**  Letters from Jeffrey M. Melin, M.D., F.A.C.P., to RayDell Ashley, R.Ph., and Duane Parke, R.Ph., State of Utah Department of Health, attached hereto as Exhibit B.

**Target of Representation:**  The State of Utah and therefore Utah Medicaid, the medical community, and general public.

**Representation in Detail:**  Merck referred the State to the VIGOR study results as they were set forth in Bombardier et al., Comparison of Upper Gastrointestinal Toxicity of Rofecoxib and Naproxen in Patients with Rheumatoid Arthritis, *N Engl J Med* 2000;343:1520-8 (Nov. 23, 2000), attached as Exhibit C.  "The result [sic] of the VIGOR trial have been reported by Bombardier et al." *See* Exhibit B at 4.  This article, which was written in part by Merck employees, including Dr. Alise Reicin, omitted incidences of myocardial infarction from the

2

Vioxx arm of the VIGOR study and advanced the naproxen-cardioprotection theory as the reason for fewer cardiovascular events in the naproxen arm. *See* Exhibit C at 1526-27.

**Reasons Why Representation Was False:**  This representation is false for the reasons set forth in Exhibit A at 4-8, 24-27.  The representation is further false and misleading for the reasons discussed in Curfman et al., <u>Expression of Concern: Bombardier et al., "Comparison of Upper Gastrointestinal Toxicity of Rofecoxib and Naproxen in Patients with Rheumatoid Arthritis," *N Engl J Med* 2000;343:1520-8</u>, *N Engl J Med* 2005;353:2813-14 (Dec. 29, 2005), attached hereto as Exhibit D.


**Representation B:  There is no increased risk of serious cardiovascular events when comparing Vioxx to placebo and non-naproxen NSAIDs.**

**Date of Representation:**  May 30, 2002.

**Person Making Representation and/or Omission:**  Jeffrey M. Melin, M.D., F.A.C.P., Director of Merck Medical Services, sent these communications to the State of Utah.  However, misrepresentations concerning the cardiovascular safety of Vioxx and the extent of naproxen's cardiovascular properties originated with Merck Research Laboratories and scientists, including Dr. Scolnick and Dr. Reicin.  These representations were then circulated within Merck and disseminated to the medical community and public via Merck Marketing and other Merck entities. *See generally*, Exhibit A.

**Form of Representation:**  Letters from Jeffrey M. Melin, M.D., F.A.C.P., to RayDell Ashley, R.Ph., and Duane Parke, R.Ph., State of Utah Department of Health.

**Target of Representation:**  The State of Utah and therefore Utah Medicaid, the medical community, and general public.

3

**Representation in Detail:**

1. "The results of this pooled analysis demonstrate that the risk of sustaining an [adverse cardiovascular event] was similar when rofecoxib was compared with placebo and . . . non-naproxen NSAIDs (ibuprofen, diclofenac, nabumetone). In contrast, there was a reduced relative risk of an [adverse cardiovascular event] in patients treated with naproxen compared with rofecoxib." *See* Exhibit B at 6.

2. Merck reprinted the following table from Konstam et al., Cardiovascular Thrombotic Events in Controlled, Clinical Trials of Rofecoxib, *Circulation* 2001; 104:2280-2288. The table shows the alleged decreased risk of an APTC end point ("combined incidence of CV, hemorrhagic, and unknown death, nonfatal myocardial infarction, and nonfatal stroke") when comparing rofecoxib to placebo or non-naproxen NSAIDs versus naproxen. *Id* at 6.


INSERT TABLE HERE – top left on p. 2286 of article

4

3. "The authors [of the *Circulation* article] concluded that data from greater than 28,000 patients in 23 studies representing greater than 14,000 patient-years at risk demonstrated that rofecoxib was no associated with excess CV thrombotic events compared with either placebo or non-naproxen NSAIDs. The data suggest, but are insufficient to ascertain, the cardioprotective benefits of naproxen." *See* Exhibit B at 8.

4. Another table, reprinted from Reicin et al., <u>Comparison of Cardiovascular Thrombotic Events in Patients with Osteoarthritis Treated with Rofecoxib Versus Nonselective Nonsteroidal Anti-inflammatory Drugs</u>, *Am J Cardiol* 2002;89:204-09, also shows the incidence of cardiovascular thrombotic events as similar between patients taking Vioxx and patients taking non-naproxen NSAIDs. *Id* at 9.


Insert Table from top left of Reicin article p. 208




**Reasons Why Representation Was False:**   These representations were false and misleading because they sought to diffuse knowledge of the increased risk of cardiovascular events in patients taking Vioxx after the Vioxx label change in April 2002.   The representations were false for the reasons set forth in Exhibit A at 4-11, 24-27; *See* Plaintiff's Second Supp. Answers to Defendant's Second Set of Interrogatories, pp. 4-8, attached as Exhibit E. *See also*

Plaintiff's Fifth Supp. Answers to Defendant's Second Set of Interrogatories. pp. 10-11, attached as Exhibit F.

**Representation C:** **The lower incidence of cardiovascular events observed in patients taking naproxen compared to those taking VIOXX is attributable to the cardioprotective properties of naproxen.**

> **Date of Representation:** May 30, 2002.

> **Person Making Representation and/or Omission:** Jeffrey M. Melin, M.D., F.A.C.P., Director of Merck Medical Services, sent these communications to the State of Utah. However, misrepresentations concerning the cardiovascular safety of Vioxx and the extent of naproxen's cardiovascular properties originated with Merck Research Laboratories and scientists, including Dr. Scolnick and Dr. Reicin. These representations were then circulated within Merck and disseminated to the medical community and public via Merck Marketing and other Merck entities. *See generally*, Exhibit A.

> **Form of Representation:** Letters from Jeffrey M. Melin, M.D., F.A.C.P., to RayDell Ashley, R.Ph., and Duane Parker, R.Ph., State of Utah Department of Health.

> **Target of Representation:** The State of Utah and therefore Utah Medicaid, the medical community, and general public.

> **Representation in Detail:**

1. "Naproxen appears to be cardioprotective compared with all other comparator NSAIDs and rofecoxib." *See* Exhibit B at 6.

2. "This analysis [of pooled data] also indicates that naproxen appears to be cardioprotective relative to all other comparator NSAIDs and rofecoxib. Naproxen reduces the risk for

sustaining an APTC endpoint relative to the other comparator NSAIDs and reofecoxib." *See* Exhibit B at 6.

3. "All three NSAIDs [naproxen, flurbiprofen, and indobufen] are potent inhibitors of platelet-derived thromboxane." *Id* at 9.

4. Naproxen significantly inhibits platelet aggregation compared with placebo. *Id* at 12.

**Reasons Why Representation Was False:**   These representations were false and misleading because they sought to diffuse knowledge of the increased risk of cardiovascular events in patients taking Vioxx after the Vioxx label change in April 2002. *See* Exhibit A at 4-11, 28-31; *See* Exhibit F at 10-11; *See* Plaintiff's Third Supp. Answers to Defendant's Second Set of Interrogatories, pp. 2-8, attached hereto as Exhibit G.

The representations are further false and misleading because they sought to explain the cardiovascular results of the VIGOR study as being attributable to the cardioprotective properties of naproxen.   The slight cardioprotective properties of naproxen could not account for the VIGOR results.  Even if naproxen provided a protective effect equivalent to aspirin, it still could not account for the difference in myocardial infarctions between patients taking VIOXX and those taking naproxen.

**Representation D:**  **The Vioxx Alzheimer's trials showed no increase in the risk of cardiovascular events between patients taking Vioxx and patients taking placebo.**

**Date of Representation:**  May 30, 2002.

**Person Making Representation and/or Omission:**  Jeffrey M. Melin, M.D., F.A.C.P., Director of Merck Medical Services, sent these communications to the State of Utah.  However, misrepresentations concerning the cardiovascular safety of Vioxx and the extent of naproxen's

7

cardiovascular properties originated with Merck Research Laboratories and scientists, including Dr. Scolnick and Dr. Reicin. These representations were then circulated within Merck and disseminated to the medical community and public via Merck Marketing and other Merck entities. *See generally*, Exhibit A.

**Form of Representation:** Letters from Jeffrey M. Melin, M.D., F.A.C.P., to RayDell Ashley, R.Ph., State of Utah Department of Health.

**Target of Representation:** The State of Utah and therefore Utah Medicaid, the medical community, and general public.

**Representation in Detail:** The following tables were included in Merck's communication to the State. The table presents data from the Alzheimer's trials and purports to show similar rates of thrombotic cardiovascular events in patients taking Vioxx and those taking rofecoxib. *See* Exhibit B at 5.

INSERT TOP 2 TABLES FROM P. 5 HERE.

**Reasons Why Representation Was False:**  The falsity of this representation is set forth in Exhibit E at 2-4.  Specifically, data from the Alzheimer's trials sent to the FDA discarded all events occurring more than 14 days after discontinuation of the medication.  *Id* at 3.  The Alzheimer's studies reveal that an Intention to Treat analysis would have demonstrated a statistically significant increase in cardiovascular deaths in the Vioxx arm of the studies as early as April 2002.  *Id* at 3.  Nevertheless, Merck sent this communication to the Utah Department of Health one month later, in May 2002.

**Representation E:  Merck is confident in the efficacy and safety profile of Vioxx.**

**Date of Representation:**  April 11, 2002.

**Person Making Representation and/or Omission:**  Merck & Co., Inc., issued the press release dated April 11, 2002.  However, misrepresentations concerning the cardiovascular safety of Vioxx and the extent of naproxen's cardiovascular properties originated with Merck Research Laboratories and scientists, including Dr. Ed Scolnick and Dr. Alise Reicin.   These representations were then circulated within Merck and disseminated to the medical community and public via Merck Marketing and other entities.  *See generally*, Exhibit A.

**Form of Representation:**  Press Release dated April 11, 2002, attached hereto as Exhibit H.

**Target of Representation:**  The nationwide medical community and public in general.

**Representation in Detail:**   In the press release captioned, "FDA Approves Label Changes for Vioxx to Reflect Data from Landmark Gastrointestinal Outcomes Study and Approves New Indication for Adult Rheumatoid Arthritis," Merck stated that it was "confident in the efficacy and safety profile of Vioxx."  *Id* at 2.

9

**Reasons Why Representation Was False:**  This representation is false and misleading because Merck Research Laboratories knew as early as 1996 that Vioxx, as with all COX-2 inhibitors, had the potential to cause cardiovascular problems.  *See* Exhibit A at 5.  Study 085 and 090 demonstrated a cardiovascular trend against Vioxx in the late-1990s.  *Id* at 4-5.  The increased cardiovascular risk associated with Vioxx could not be dispelled by attributing the VIGOR results to the slight cardioprotective effect of naproxen.

**Representation F:**  **The significance of the cardiovascular findings from the VIGOR and Alzheimer's studies is unknown.**

**Date of Representation:**  April 11, 2002.

**Person Making Representation and/or Omission:**  Merck & Co., Inc., issued the press release dated April 11, 2002.  However, misrepresentations concerning the cardiovascular safety of Vioxx and the extent of naproxen's cardiovascular properties originated with Merck Research Laboratories and its agents, including Dr. Ed Scolnick and Dr. Alise Reicin.  These representations were then circulated within Merck and disseminated to the medical community and public via Merck & Co., Inc., Merck Marketing, and other Merck entities.  *See generally*, Exhibit A.

**Form of Representation:**  Press Release dated April 11, 2002, attached hereto as Exhibit H.

**Target of Representation:**  The nationwide medical community and public in general.

**Representation in Detail:**  "In VIGOR, a statistically significant higher incidence of serious cardiovascular thrombotic events was seen in patients receiving Vioxx 50 mg once daily compared to patients treated with naproxen 500 mg twice daily."  *Id* at 3.

10

"In these same two [presumably the Alzheimer's] placebo-controlled studies, mortality due to cardiovascular thrombotic events was 8 versus 3 for Vioxx versus placebo, respectively. The significance of the cardiovascular findings from these three studies (VIGOR and the placebo-controlled studies) is unknown." *See* Exhibit H at 3.

**Reasons Why Representation Was False:**  This representation is false and misleading because Merck Research Laboratories, including Dr. Scolnick and Dr. Reicin, knew as early as 1996 that Vioxx, as with all COX-2 inhibitors, had the potential to cause cardiovascular problems. *See* Exhibit A at 5.  Study 085 and 090 demonstrated a cardiovascular trend against Vioxx in the late-1990s.  *Id A* at 4-5.  The increased cardiovascular risk associated with Vioxx could not be dispelled by attributing the VIGOR results to the slight cardioprotective effect of naproxen.

The falsity of this representation is further set forth in Exhibit E at 2-4.  Specifically, data from the Alzheimer's trials sent to the FDA discarded all events occurring more than 14 days after discontinuation of the medication.  *Id* at 3.  The Alzheimer's studies reveal that an Intention to Treat analysis would have demonstrated a statistically significant increase in cardiovascular deaths in the Vioxx arm of the studies as early as April 2002.  *Id* at 3.

**Representation G:**  **Merck stands behind the cardiovascular and overall safety of Vioxx.**

**Date of Representation:**  August 26, 2004.

**Person Making Representation and/or Omission:**  Misrepresentations concerning the cardiovascular safety of Vioxx and the extent of naproxen's cardiovascular properties originated with Merck Research Laboratories and its agents, including Dr. Ed Scolnick and Dr. Alise

Reicin. These representations were then circulated within Merck and disseminated to the medical community and public via Merck & Co., Inc., Merck Marketing, and other Merck entities. *See generally*, Exhibit A.

**Form of Representation:** Press release dated August 26, 2004, attached hereto as Exhibit I.

**Target of Representation:** The nationwide medical community and public in general.

**Representation in Detail:** Just slightly over one month prior to the withdrawal of Vioxx, Merck stated the following:

1. "Merck Stands Behind the Efficacy, Overall Safety and Cardiovascular Safety of VIOXX." *Id* at 1.

2. "The [VIGOR] study also showed a statistically significant higher incidence of serious cardiovascular thrombotic events in patients receiving VIOXX 50 mg once daily—a dose two-times the highest recommended chronic dose—compared to patients treated with naproxen 500 mg twice daily." *Id* at 2.

3. In these same two [presumably the Alzheimer's] placebo-controlled studies, mortality due to cardiovascular thrombotic events was 8 vs. 3 for VIOXX vs. placebo, respectively. The significance of the cardiovascular findings from these three studies (VIGOR and the placebo-controlled studies) is unknown." *Id* at 2.

**Reasons Why Representation Was False:** This representation is false and misleading because Merck Research Laboratories, including Dr. Scolnick and Dr. Reicin, knew as early as 1996 that Vioxx, as with all COX-2 inhibitors, had the potential to cause cardiovascular problems. *See* Exhibit A at 5. Study 085 and 090 demonstrated a cardiovascular trend against Vioxx in the late-1990s. *Id* at 4-5. The increased cardiovascular risk associated with Vioxx

could not be dispelled by attributing the VIGOR results to the slight cardioprotective effect of naproxen.

The falsity of this representation is further set forth in in *See* Exhibit E at 2-4. Specifically, data from the Alzheimer's trials sent to the FDA discarded all events occurring more than 14 days after discontinuation of the medication. *Id* at 3. The Alzheimer's studies reveal that an Intention to Treat analysis would have demonstrated a statistically significant increase in cardiovascular deaths in the Vioxx arm of the studies as early as April 2002. *Id* at 3.

**Representation H:  Scientists and medical professionals who express concern for the cardiovascular safety of Vioxx are not to be believed, particularly when their concern is based on retrospective database analysis.**

**Date of Representation:**  August 26, 2004.

**Person Making Representation and/or Omission:**  Misrepresentations concerning the cardiovascular safety of Vioxx and the extent of naproxen's cardiovascular properties originated with Merck Research Laboratories and its agents, including Dr. Ed Scolnick and Dr. Alise Reicin.   These representations were then circulated within Merck and disseminated to the medical community and public via Merck & Co., Inc., Merck Marketing, and other Merck entities. *See generally*, Exhibit A.

**Form of Representation:**  Press release dated August 26, 2004, attached hereto as Exhibit I.

**Target of Representation:**  The nationwide medical community and public in general.

**Representation in Detail:**

1. "Merck strongly disagrees with the conclusions of an observational analysis by Graham et al, presented at an international medical meeting this week, which evaluated the rate of cardiovascular events in patients taking COX-2 specific inhibitors VIOXX (rofecoxib) and Celebrex (celecoxib) and in patients taking non-selective NSAIDs.  This analysis is a retrospective database analysis—not a clinical trial.  Observational analyses have limitations, often conflict with each other, and must be interpreted within the context of data from large, randomized, controlled clinical trials." *See* Exhibit I at 1.

2. "It is important to note that, although the analysis was funded by the Food and Drug Administration (FDA) under contract with Kaiser Permanente, the conclusions presented by the authors do not necessarily reflect the views of the FDA."  *Id* at 1.

3. "'This retrospective analysis is based only on a database review.  Observational analyses do not have the rigor of randomized, controlled clinical trials.  The robust clinical trial data available support the safety of VIOXX.  Based on all of the data that are available from our clinical trials, Merck stands behind the efficacy and safety, including cardiovascular safety, of VIOXX,' said Peter S. Kim, PhD., President, Merck Research Laboratories."

**Reasons Why Representation Was False:**  This representation was false and misleading because Merck went to great lengths to keep Vioxx skeptics silent.  *See* Exhibit A at 27-28. Merck's techniques included attempting to discredit and "neutralize" uncooperative scientists. *See* Exhibit G at 2.  Moreover, Merck Research Laboratories and its president, Peter S. Kim, Ph.D., attempted to discredit this study because it was based on retrospective analysis, although MRL relied on the same type of analyses in support of the naproxen-cardioprotection theory. *See e.g.*, Watson et al., <u>Lower Risk of Thromboembolic Cardiovascular Events With Naproxen</u>

14

Among Patients With Rheumatoid Arthritis, *Arch Intern Med* 2002;162:1105-1110 (MRL-employee authored case-control study of rheumatoid arthritis patients in Canadian healthcare databases).

DATED this 19th day of June, 2013.

_____/S/_____
Joseph W. Steele
Kenneth D. Lougee
STEELE & BIGGS
5664 South Green Street
Salt Lake City, UT  84123

_____/S/_____
Eric H. Weinberg
The Law Offices of Eric H. Weinberg
149 Livingston Avenue
New Brunswick, NJ  08901

_____/S/_____
Richard W. Schulte (Ohio Bar No. 0066031)
812 E. National Road, Suite A
Vandalia, Ohio 45377
(937) 435-7500

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing PLAINTIFF'S SIXTH SUPPLEMENTAL

ANSWERS TO DEFENDANT'S SECOND SET OF INTERROGATORIES TO PLAINTIFFS

has been served on Liaison Counsel, Russ Herman, Phillip Wittmann and Ann Oldfather, by U.S.

Mail and e-mail or by hand delivery and e-mail, and upon all parties by electronically uploading

the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8(B),

and that the foregoing was electronically filed with the Clerk of Court of the United States

District Court for the Eastern District of Louisiana by using the CM/ECF system which will send

a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 19th

day of June, 2013.

        /S/

        Joseph W. Steele
        Kenneth D. Lougee
        STEELE & BIGGS
        5664 South Green Street
        Salt Lake City, UT 84123