**EXHIBIT F**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: VIOXX Products Liability Litigation | * MDL No. 1657 |
| This Document Relates to: | * SECTION L |
| State of Utah | * JUDGE ELDON E. FALLON |
| v. | * MAGISTRATE JUDGE KNOWLES |
| Merck Sharp & Dohme Corp. | * |
| Civil Action No. 2:06-cv-09336 | * |

* * * * * * * * * * * * * * * * * * * * * * * * * * *

## PLAINTIFF'S FIFTH SUPPLEMENTAL ANSWERS TO DEFENDANT'S SECOND SET OF INTERROGATORIES

Plaintiff hereby submits its fifth supplemental answers to nos. 2 and 5 of Defendant's second set of interrogatories.

**Interrogatory No. 2:** Identify all communications between Merck and any person related to VIOXX that Plaintiff contends is violative of Utah law including date, location, form, content, substance, originator and recipient of each communication.

**Interrogatory No. 5:** For each communication identified in response to Interrogatory number 2, identify the specific statement or omission that you claim renders the communication false or misleading. If identifying an omission, identify the communication or information that you allege Merck should have provided.

**Representation A:** The results of the VIGOR study are due to the cardioprotective properties of naproxen and are not due to an adverse effect of VIOXX.

1

**Date of Representation:** May 12, 2000.

**Person Making Representation and/or Omission:** Ellen R. Westrick, Executive Director, Office of Merck's Medical/Legal Division.

**Form of Representation:** Letter from Ellen R. Westrick to Spencer Salis, Pharm. D., FDA Division of Drug Marketing, Advertising, and Communication, attached hereto as Exhibit A.

**Target of Representation:** The FDA and therefore the medical community and public in general.

**Representation in Detail:** In her letter of May 12, 2000, Ms. Westrick complained to the FDA about Searle/Pfizer's marketing of Celebrex. Ms. Westrick expressed dismay that Searle/Pfizer representatives discussed VIOXX and the VIGOR results with physicians. Specifically, Ms. Westrick explained to the FDA that Searle/Pfizer's promotional material was false and misleading because:

> By presenting the VIGOR results for VIOXX only as a 'statistically significant increase' in cardiovascular adverse events, the [Searle/Pfizer Dear Healthcare Provider] letter fails to reveal material facts, i.e., that the significantly fewer heart attacks observed in patients taking naproxen were consistent with that drug's ability to block platelet aggregation so that the results do not indicate any increase in cardiovascular adverse reaction due to VIOXX. Even if Searle/Pfizer choose [sic] not to accept the rationale, the failure to at least acknowledge it in the letter is a failure to reveal material facts in violation of 201(n) of the Food, Drug and Cosmetic Act.

Exhibit A at 3.

**Reasons Why Representation Was False:** As early as autumn 1999, Merck officials were aware that adverse cardiovascular events were occurring at a "disconcerting" rate in one arm of the VIGOR study. *See* Interim Non-Endpoint Safety Analysis of VIGOR, p. 2, attached

2

as Exhibit B. Merck officials were warned that the difference in cardiovascular events between the VIOXX and naproxen groups was "significant beyond the level of chance." Exhibit B at 1. Further, there was no ability in the VIGOR trial "to distinguish between a potentially harmful effect of Treatment A and a cardiovascular protective effect of Treatment B due to its anti-platelet effects." Exhibit B at 1-2. In spite of this and other information, including the Fitzgerald hypothesis, Merck nonetheless relentlessly pursued its naproxen-cardioprotection theory.

This representation was also false for the reasons set forth in Plaintiff's Supp. Answers to Defendant's Second Set of Interrogatories, pp. 8-18, 21-22, 28-31, attached hereto as Exhibit C; Plaintiff's Third Supp. Answers to Defendant's Second Set of Interrogatories, pp. 2-8, attached hereto as Exhibit D.

**Representation B:** There is no difference in the incidence of cardiovascular events, such as heart attacks, among patients taking VIOXX compared to those taking other NSAIDs and placebo.

**Date of Representation:** May 12, 2000.

**Person Making Representation and/or Omission:** Ellen R. Westrick, Executive Director, Office of Merck's Medical/Legal Division.

**Form of Representation:** Letter from Ellen R. Westrick to Spencer Salis, Pharm. D., FDA Division of Drug Marketing, Advertising, and Communication, attached hereto as Exhibit A.

**Representation in Detail:** In her letter to the FDA on May 12, 2000, Ms. Westrick continued to complain about information contained in a Searle/Pfizer Dear Healthcare Provider letter. Ms. Westrick provided that:

3

> The [Searle/Pfizer] letter is also misleading in discussing only cardiovascular results from the VIGOR study without disclosing that extensive data from the completed osteoarthritis trials and ongoing clinical trials with VIOXX, have shown no difference in the incidence of cardiovascular events, such as heart attack, among patients taking VIOXX, other NSAIDs and placebo.

Exhibit A at 3-4.

**Reasons Why Representation Was False:** This representation was false because Study 090, the osteoarthritis trials, and the Alzheimer's trials demonstrated a heightened cardiovascular risk in patients taking VIOXX. Exhibit C at 19-20; Plaintiff's Second Supp. Answers to Defendant's Second Set of Interrogatories, pp. 2-4, attached hereto as Exhibit E.

**Representation C:** The reduction in heart attacks observed in the naproxen arm of the VIGOR study is consistent with naproxen's ability to block platelet aggregation by inhibiting COX-1.

**Date of Representation:** May 24, 2000.

**Person Making Representation and/or Omission:** Merck Marketing.

**Form of Representation:** Merck News Release of May 24, 2000, attached as Exhibit F.

**Target of Representation:** The medical community and the public in general.

**Representation in Detail:** "The reduction in heart attacks [in VIGOR] is consistent with naproxen's ability to block platelet aggregation by inhibiting COX-1. This effect of platelet aggregation is similar to low-dose aspirin, which is used to prevent second cardiac events in patients with a history of heart attack, stroke, or other cardiac events." Exhibit F at 3.

**Reasons Why Representation Was False:** The falsity of this representation is set forth in detail in Exhibit C at 8-18, 21-22, 28-31; Exhibit D at 2-8.

4

<u>Representation D:</u>  There is no difference in the incidence of cardiovascular events among patients taking VIOXX compared to those taking non-naproxen NSAIDs and placebo.

<u>Date of Representation:</u>  May 24, 2000.

<u>Person Making Representation and/or Omission:</u>  Merck Marketing.

<u>Form of Representation:</u>  Merck News Release of May 24, 2000, attached as Exhibit F.

<u>Target of Representation:</u>  The medical community and the public in general.

<u>Representation in Detail:</u>  "In the completed osteoarthritis trials that compared Vioxx to other NSAIDs such as ibuprofen and diclofenac, which are less potent inhibitors of platelet aggregation that naproxen and aspirin, there was no difference in the incidence of cardiovascular events.  In addition, in the ongoing clinical trials with Vioxx, as well as post-marketing experience with Vioxx, there is no difference in the incidence of cardiovascular events, such as heart attack, among patients taking Vioxx, placebo or other NSAIDs." Exhibit F at 3.

<u>Reasons Why Representation Was False:</u>  The falsity of this representation is set forth in detail in Exhibit C at 19-20; Exhibit E at 2-4.


<u>Representation E:</u>  VIOXX does not cause adverse cardiovascular events.  Any difference in the incidence of cardiovascular events among patients taking VIOXX compared to those taking naproxen is due to the cardioprotective properties of naproxen.

<u>Date of Representation:</u>  January 8, 2001.

<u>Person Making Representation and/or Omission:</u>  Robert E. Silverman, M.D., Ph.D., Senior Director, Regulatory Affairs.

<u>Form of Representation:</u>  Information Amendment to Investigational New Drug Application submitted to Jonca Bull, M.D., Acting Director, FDA Division of Anti-Inflammatory, Analgesic and Ophthalmologic Drug Products, attached as Exhibit G.

<u>Target of Representation:</u>  The FDA and ultimately healthcare professionals and the general public.

<u>Representation in Detail:</u>  The Amendment to the Investigation New Drug Application contained an Interim Cardiovascular Meta-Analysis, in which Merck concluded that, because the risk of adverse cardiovascular events was "similar in patients taking rofecoxib as in those taking placebo or nonselective NSAIDs other than naproxen," the results of VIGOR must have been the result of the cardioprotective benefit of naproxen. *See* Exhibit G at 3.

1. "Naproxen is among the few nonselective NSAIDs with potent antiplatelet effects that are sustained throughout the dosing interval in accord with its long plasma half-life. Ibuprofen, diclofenac, and nabumentone have less pronounced and/or less sustained anti-platelet effects. These clinical pharmacology data support the possibility that certain nonselective NSAIDs such as naproxen with both potent and sustained antiplatelet effects might provide aspirin-like protection from thrombotic cardiovascular events." Exhibit G at 4.

2. The Alzheimer's trials indicate "that the incidence of thrombotic cardiovascular serious adverse experiences is similar in patients taking rofecoxib or placebo and are consistent with a lack of prothrombotic effect of rofecoxib, even in high risk elderly patients." Exhibit G at 4-5.

3. According to the meta-analysis of placebo-controlled trials, "there was no evidence to suggest that therapy with rofecoxib is associated with an increased risk of thrombotic cardiovascular events." Exhibit G at 38.

4. "The risk of sustaining a thrombotic cardiovascular event is reduced in patients treated with naproxen compared to rofecoxib. This reduction in events on naproxen is likely due to its ability to maintain near maximal inhibition of platelet function throughout its dosing interval." Exhibit G at 39.

**Reasons Why Representation Was False:** The falsity of the above representations is discussed at length in Exhibit C at 1-18, 21-22, 24-27; Exhibit D at 2-8; and Exhibit E at 2-5.

**Representation F:** **The VIGOR results must be due to the cardioprotective properties of naproxen because there is no difference in the incidence of adverse cardiovascular events among patients taking VIOXX, placebo, and non-naproxen NSAIDs.**

**Date of Representation:** February 8, 2001.

**Person Making Representation and/or Omission:** Merck Marketing.

**Form of Representation:** Merck News Release of February 8, 2001, attached as Exhibit H.

**Target of Representation:** Healthcare professional and the general public.

**Representation in Detail:** "In the completed osteoarthritis trials and on-going clinical trials with Vioxx 12.5 mg, 25 mg, and 50 mg in 30,000 patients, there was no difference in the incidence of cardiovascular events, such as heart attacks, among patients taking Vioxx, other NSAIDs and placebo. Merck scientists said the VIGOR finding is consistent with naproxen's ability to block platelet aggregation by inhibiting COX-1 like aspirin, which is used to prevent

7

second cardiac events in patients with a history of heart attack, stroke or other cardiac events." Exhibit H at 2 (emphasis in original).

**Reasons Why Representation Was False:** This representation was false because VIOXX causes adverse cardiovascular events at a rate higher than placebo and non-naproxen NSAIDs. *See* Exhibit E at 2-5.

**Representation G:** **Merck marketing and sales representatives misrepresented the safety of VIOXX and cardioprotective properties of Naproxen to healthcare providers.**

**Date of Representation:** August 18, 2001.

**Person Making Representation and/or Omission:** Merck Marketing Representatives.

**Form of Representation:** Question and Answer Bulletin of August 18, 2001, attached as Exhibit I.

**Target of Representation:** Healthcare professionals and the general public.

**Representation in Detail:** In anticipation of the Topol and Nissen article published in the August 22-29, 2001, issue of the *Journal of the American Medical Association* (*JAMA*), Merck Marketing released an internal question and answer bulletin to assist representatives in answering questions regarding the cardiovascular and overall safety of VIOXX. The bulletin contained such statements as:

1. "Patient safety is of paramount concern to Merck. We have compelling data from 19 controlled studies with 28,000 patients that showed there was no difference in the overall incidence of cardiovascular events among patients taking <u>Vioxx and placebo</u> and between patients taking Vioxx and other non-naproxen NSAIDs." Exhibit I at 1 (emphasis in original).

2. "As we have stated, we disagree with the conclusions of the [*JAMA*] article that COX-2 inhibitors may be pro-thrombotic." Exhibit I at 2.

**Reasons Why Representation Was False:** These representations were false and misleading because Merck's sales force was trained to avoid disclosure of the VIGOR results and to highlight the alleged cardioprotective properties of naproxen. Exhibit C at 22-24.

**Representation H:** Merck stands behind the cardiovascular and overall safety of VIOXX.

**Date of Representation:** September 13, 2001.

**Person Making Representation and/or Omission:** David Anstice, Senior Merck Executive.

**Form of Representation:** MVX to Merck's Field Sales Force, a transcript of which is attached as Exhibit J.

**Target of Representation:** Merck's field sales force representatives, who then disseminated this message to physicians and healthcare professionals across the country.

**Representation in Detail:**

1. "I believe in the full body of evidence from MRL that supports its safety including Phase IIB-V trials where VIOXX was demonstrated to be comparable to placebo and comparator NSAIDs. Also, I believe in the evidence from the meta-analysis of 28,000 patients where VIOXX showed no difference between placebo, VIOXX, and 3 comparator NSAIDs. And, it is because of these data that we stand behind VIOXX and its CV and overall safety." Exhibit J at 1.

2. "To understand VIGOR, you must understand that Naproxen is cardio-protective, like aspirin. In VIGOR, VIOXX did not increase the number of MIs; rather, Naproxen decreased the number of MIs because it has cardio-protective properties." Exhibit J at 1-2.

3. "As I said, Merck stands behind the CV and overall safety of VIOXX." Exhibit J at 2.

**Reasons Why Representation Was False:** This representation was false because Merck's sales force was trained to avoid disclosure of the VIGOR results and the adverse cardiovascular effect of VIOXX. Sales representatives were trained to provide doctors with information that naproxen was cardioprotective, like aspirin. These statements and omissions were false and misleading. See Exhibit C at 22-24.

This message is further false and misleading because it did not inform the sales force of the Fitzgerald hypothesis, which indicated that VIOXX would have an adverse cardiovascular effect. The message omitted information previously made known to Merck disproving the naproxen-cardioprotection theory. The meta-analysis referred to in the message did not contain the VIGOR results. Exhibit C at 18, 22-24; Exhibit K (email from Martino Laurenzi to Brian Daniels, Elliot Ehrich, & Alise Reicin, Mar. 28, 2000); Exhibit L (email from Martino Laurenzi to Brian Daniels, et al., June 20, 2000).

**Representation I:** Merck marketing representatives misrepresented the cardiovascular effect of VIOXX and continued to reaffirm the alleged naproxen-cardioprotection theory after the VIOXX label change in 2002.

**Date of Representation:** April 11, 2002.

<u>Person Making Representation and/or Omission:</u> Merck Marketing Representatives and Scientists.

<u>Form of Representation:</u> VIOXX Label Change Q&A Bulletin of April 11, 2002, attached as Exhibit M.

<u>Target of Representation:</u> Healthcare professionals and ultimately the general public.

<u>Representation in Detail:</u> Merck marketing and sales representatives were instructed to downplay the cardiovascular language on the new VIOXX label:

1. "The new cardiovascular language in our label is not a 'warning;' it is a precaution. A warning is intended to describe serious adverse reactions and potential safety hazards. A precaution describes 'any special care to be exercised by the practitioner for the safe and effective use of the product.'" Exhibit M at 6.

2. "Merck scientists continue to believe that the weight of the evidence indicates that the difference [in cardiovascular events in VIGOR] is a result of an effect of naproxen." Exhibit M at 6, 7.

<u>Reasons Why Representation Was False:</u> These representations were false and misleading because they sought to diffuse the increased risk of cardiovascular events experienced by patients taking VIOXX. The falsity of the representations is further discussed in Exhibit C at 8-18, 21-24, 28-30.

DATED this 2nd day of May, 2013.

/S/
Joseph W. Steele
Kenneth D. Lougee
STEELE & BIGGS
5664 South Green Street
Salt Lake City, UT 84123

11

/S/
Eric H. Weinberg
The Law Offices of Eric H. Weinberg
149 Livingston Avenue
New Brunswick, NJ  08901

/S/
Richard W. Schulte (Ohio Bar No. 0066031)
812 E. National Road, Suite A
Vandalia, Ohio 45377
(937) 435-7500

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing PLAINTIFF'S FIFTH SUPPLEMENTAL ANSWERS TO DEFENDANT'S SECOND SET OF INTERROGATORIES TO PLAINTIFFS has been served on Liaison Counsel, Russ Herman, Phillip Wittmann and Ann Oldfather, by U.S. Mail and e-mail or by hand delivery and e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8(B), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 2nd day of May, 2013.

/S/
Joseph W. Steele
Kenneth D. Lougee
STEELE & BIGGS
5664 South Green Street
Salt Lake City, UT  84123