UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | |
|     Products Liability Litigation | * | |
| | * | |
| This Document Relates to: | * | MDL No. 1657 |
| | * | |
|     *State of Alaska v. Merck & Co., Inc.*, | * | SECTION L |
|     Case No. 2:06-cv-3132 | * | |
| | * | JUDGE ELDON E. FALLON |
|     *State of Montana v. Merck & Co., Inc.*, | * | |
|     Case No. 2:06-cv-4302 | * | MAGISTRATE JUDGE |
| | * | KNOWLES |
| | * | |
| | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * *

**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO COMPEL AND OPPOSITION TO STATE OF ALASKA AND STATE OF MONTANA'S MOTIONS FOR PROTECTIVE ORDER**

As Merck explained in its motion to compel, an attorney general, "like any other litigant," must submit to a deposition by preparing a witness to testify on its behalf. *See United States ex rel. Fry v. Health Alliance of Greater Cincinnati*, No. 1:03-cv-167, 2009 WL 5227661, at *3 (S.D. Ohio Nov. 20, 2009). After all, "Rule 30(b)(6) expressly applies to a government agency and provides neither an exemption from Rule 30(b)(6) nor special consideration concerning the scope of discovery, especially when [the agency] voluntarily initiates an action" against a defendant who needs information from the government to defend itself. *SEC v. Kramer*, 778 F. Supp. 2d 1320, 1327 (M.D. Fla. 2011) (internal quotation marks and citation omitted) (Mot. at 4-5). With good reason: 30(b)(6) depositions are critical to preparing a defense for trial in *all* cases, including those brought by governmental entities. This case is no exception. Merck requires 30(b)(6) depositions to discover the factual bases of the states' claims that Merck violated their laws.

Plaintiffs nonetheless seek to stop the 30(b)(6) depositions from going forward on the supposed grounds that: (1) Merck cannot justify the deposition of opposing counsel under the *Shelton* factors (Br. in Supp. of Mot. for a Prot. Order & to Quash Merck's 30(b)(6) Dep. Notice to the State of Alaska & Opp'n to Merck's Mot. to Compel ("Alaska Opp'n") at 7-11, ECF No. 64441; *see also* Br. in Supp. of Mot. for a Prot. Order & to Quash Merck's 30(b)(6) Dep. Notice to the State of Montana & Opp'n to Merck's Mot. to Compel ("Montana Opp'n") at 7-11, ECF No. 64442); (2) Merck seeks information protected by the attorney work-product doctrine and the deliberative-process privilege (Alaska Opp'n at 3-7; Montana Opp'n at 3-7); (3) Merck's notice requires information from expert disclosures (Alaska Opp'n at 11-12; Montana Opp'n at 11-12); and (4) Topic 9, which seeks information about the "regulation of and oversight over activities of pharmaceutical companies" in Alaska, is irrelevant (Alaska Opp'n at 12). None of these arguments has merit.

**I. MERCK DOES NOT NEED TO SATISFY THE *SHELTON* FACTORS BEFORE TAKING PLAINTIFFS' RULE 30(B)(6) DEPOSITION – BUT IT DOES.**

Plaintiffs first argue that they are immune to the 30(b)(6) depositions because Merck cannot "justify the need for a deposition of counsel" under the factors set forth in *Shelton v. American Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986). (Alaska Opp'n at 7-11; Montana Opp'n at 7-11.) But as Merck has previously explained, *Shelton* only addresses the showing that must be made when a party notices a deposition for opposing counsel specifically. (*See* Mot. at 6.) That is not the case here. Rather, Merck's Rule 30(b)(6) deposition notices seek to depose the opposing *party* itself. The fact that the AGs' offices' potential witnesses are all attorneys does not make such depositions inappropriate. *See FTC v. CyberSpy Software, LLC*, No. 6:08-cv-1872-Orl-31GJK, 2009 U.S. Dist. LEXIS 132299, at *6-7 (M.D. Fla. May 26, 2009).

In *CyberSpy Software*, for example, the FTC initiated an action against the defendants for violation of the FTC Act. *Id*. at *2-3. The defendants served the FTC with a Rule 30(b)(6) deposition notice, which the FTC then sought to quash in a motion for a protective order. *Id*. In its motion, the FTC argued "that it [was] entitled to a protective order because the deposition at issue [sought] the testimony of the Commission's trial counsel and Defendants [could not] meet any of the criteria for taking the deposition of an opponent's counsel." *Id*. at *3-4 (internal quotation marks and citation omitted). While the FTC "acknowledge[d] that the Notice [did] not directly seek to depose the FTC's trial counsel," it argued that "only the Commission's trial attorneys have the information requested by the Notice . . . [and] [i]f anyone else were to testify, the attorneys would have to provide that person with all the information relevant to the issues set forth in the Notice." *Id*. at *4 (internal quotation marks and citation omitted). Thus, the agency argued, because the defendants could not "establish the criteria set forth in *Shelton v. American Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986) to depose trial counsel," it was entitled to a protective order. *Id*.

The court disagreed, explaining that "[t]he issue [was] not, contrary to the FTC's assertions, whether the Defendants [were] entitled under *Shelton v. American Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986) to depose the FTC's trial counsel." *Id*. at *6. "Rather, the issue [was] simply whether the Defendants [were] entitled to a Rule 30(b)(6) deposition of a governmental agency regarding the facts supporting the agency's case." *Id*. Because "Rule 30(b)(6) is specifically applicable to governmental agencies," the defendants were "entitled to discovery of the facts supporting the FTC's claims." *Id*. at *6-7.

Nothing in Plaintiffs' oppositions compels a contrary result. Plaintiffs cite *Sparton Corp. v. United States*, 44 Fed. Cl. 557 (1999), for the proposition that the "reasoning of *Shelton* is just

3

as applicable to cases involving government attorneys as private attorneys." (Alaska Opp'n at 7; Montana Opp'n at 7.) But Merck never disputed that. And *Spartan* – which involved an ordinary Rule 30(b)(1) deposition notice that sought testimony from a specific attorney in the U.S. Department of the Navy, 44 Fed. Cl. at 560 – is wholly inapposite because Merck does not seek such a deposition here. For all of these reasons, Merck does not need to cross *Shelton*'s additional hurdles before it is entitled to Rule 30(b)(6) depositions in these cases.

In any case, even if *Shelton* applied, Merck would satisfy its standard. Under *Shelton*, the taking of opposing counsel's deposition is appropriate only if: "(1) no other means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case." *Shelton*, 805 F.2d at 1327 (citation omitted).

Here, Merck lacks other means to obtain the necessary information. As set forth in its motion to compel, Merck has already attempted to learn the scope of factual allegations against it through written interrogatories, but has not received responses that would allow it to prepare a full defense at trial. (*See* Mot. at 7.) While the Montana AG claims that its responses are sufficient (Montana Opp'n at 9), and the Alaska AG claims that it will supplement its disclosures (Alaska Opp'n at 9), the only disclosures Merck has received to date are vague and generalized. Moreover, and as numerous courts have held, interrogatories "'offer inadequate opportunities to refine questions, seek clarification, or follow up on answers compared to oral depositions.'" (Mot. at 7 (quoting *Felix v. City & Cnty. of Denver*, No. 08-cv-02228-MSK-KMT, 2011 WL 1085766, at *10 (D. Colo. Mar. 24, 2011), *aff'd*, 450 F. App'x 702 (10th Cir. 2011), *cert. denied*, 132 S. Ct. 1724 (2012), and collecting authority).) Thus, they are "an inadequate substitute for

deposition testimony pursuant to Rule 30(b)(6)." *Flower v. T.R.A. Indus., Inc.*, 111 P.3d 1192, 1206 (Wash. Ct. App. 2005).

In addition, the information sought is relevant and not privileged.  Plaintiffs do not even bother disputing that the information sought is highly probative of the claims in this case; instead, they only contend that the information is privileged.  But as set forth in more detail below, the noticed topics seek only the factual predicate for the AGs' claims – not their "internal deliberations" or "legal theories."  (*See infra* Section II.)  Therefore, the information sought is not protected by any privilege.

Finally, the information is "crucial" to the preparation of Merck's case.  Plaintiffs do not dispute that Merck cannot properly defend itself against their claims that its representations about Vioxx were unlawful unless it knows which representations are at issue.  Instead, Plaintiffs regurgitate their prior argument that a deposition is unnecessary because they have already responded to written interrogatories seeking similar information. (Alaska Opp'n at 11; Montana Opp'n at 11.)  But as set forth above, the AGs' responses to date are vague and generalized and do not offer Merck nearly the precision necessary to prepare a defense in these cases.  For all of these reasons, even if the *Shelton* test applied, Merck's requests easily satisfy it.

II. **MERCK SEEKS FACTUAL INFORMATION THAT IS NOT SUBJECT TO WORK-PRODUCT PROTECTION OR THE DELIBERATIVE-PROCESS PRIVILEGE.**

The AGs next argue that Merck's deposition notices improperly seek:  (1) attorney testimony that would apply the law to facts; and (2) testimony that is subject to work-product and deliberative-process protections.  (*See* Alaska Opp'n at 3-7, 9-11; Montana Opp'n at 3-7, 9-11.)  The AGs are wrong.  Merck seeks identification of the facts underlying any alleged violation of the law that the AGs will pursue at trial – not the states' theories about why those facts prove a violation.  For this reason, both of their arguments fail.

5

***First***, the AGs' argument that Merck seeks "to depose attorneys regarding theories of the case and discover attorney work-product" (Alaska Opp'n at 3; Montana Opp'n at 3) misreads Merck's deposition notices. As set forth in Merck's opening brief, Merck seeks "'to discover only the facts underlying the claim against [Merck] and not the mental impressions of [the states'] counsel.'" (Mot. at 9 (quoting *Kramer*, 778 F. Supp. 2d at 1328).)

The AGs contend that the notices sweep more broadly, based solely on the fact that they use the terms "each and every way" in couching their requests for the facts that will form the basis for the states' alleged violations at trial. (*See* Alaska Opp'n at 5; Montana Opp'n at 5.) For example, the AGs complain that Merck's request to "depose the person 'most knowledgeable' of '[e]ach and every way that Merck's detailing of doctors was unfair, false, misleading or deceptive'" asks not for facts but for "'theories as to the underlying fact, how it intends to marshal those facts, and its belief as to the inferences that may be drawn from those facts.'" (Alaska Opp'n at 5-6 (citation omitted and quoting *FTC v. U.S. Grant Res., LLC*, No. Civ.A. 04-596, 2004 WL 1444951, at *9-10 (E.D. La. June 25, 2004)); Montana Opp'n at 5-6 (same).) This argument misunderstands the nature of Merck's requests. The AGs have made clear that they plan to assert that Merck committed numerous violations of state law – and this alleged multiplicity of violations presumably rests on more than one underlying fact. Accordingly, Merck seeks discovery of "each and every" alleged fact that will form the basis of a claimed violation of state law.

Merck has every right to seek discovery of such facts through a deposition, as *Kramer* made clear. (*See* Mot. at 9-10 (detailing *Kramer*'s holding and reasoning).) The AGs attempt to distinguish *Kramer* on the ground that the "defendant sought only 'specific facts' in its notice," a request that the AGs describe as "narrow." (*See* Alaska Opp'n at 8; Montana Opp'n at 8.) But

6

Merck's request is every bit as narrow; as just explained, Merck seeks only the "specific facts" that form the basis of the states' lawsuits. If that request covers more ground in these cases than the one in *Kramer*, it is only because of the breadth of the states' inflated allegations.

For the same reason, the AGs' reliance on *U.S. Grant Resources* and *SEC v. Buntrock*, 217 F.R.D. 441 (N.D. Ill. 2003) (both cited in Alaska Opp'n at 3-4; Montana Opp'n at 3-4), is misplaced. As Merck already explained in its opening brief, these two cases are inapposite because they involved proposed depositions that would have sought "information about the [government's] investigations, the extent of their knowledge or their mental processes." (Mot. at 11.) The AGs resist this distinction, asserting that "Merck seeks information very similar to that sought in *U.S. Grant Resources* and *Buntrock*." (*See* Alaska Opp'n at 7; Montana Opp'n at 7.) But that is simply not the case. In *U.S. Grant Resources*, for example, nearly all of the questions were directed at the processes by which the FTC had collected and analyzed information in building its case against the defendants. *See* 2004 WL 1444951, at *2-5. *None* of the requests sought the simple factual bases of the FTC's claims against the defendants. *See id.* Here, by contrast, Merck does not seek any information regarding how the states collected or analyzed information in building their cases; it seeks only the factual foundations of their claims.

***Second***, the AGs' resort to the work-product and deliberative-process protections (*see* Alaska Opp'n at 9-11; Montana Opp'n at 9-11) fails for similar reasons. The AGs vaguely assert that Merck's notices "call[] for testimony that requires responses related to the legal theories of [each state's] case" and therefore seek protected work product. (*See* Alaska Opp'n at 9-10; Montana Opp'n at 9-10.) But the AGs do not offer any example of any request that would threaten the disclosure of work product, and for the reasons explained above and in Merck's opening motion, its deposition topics pose no such risk. (*See* Mot. at 9-12.)

1130260v1

The AGs also complain that the deposition topics that supposedly touch on their "investigation[s]" would intrude on facts protected by the deliberative-process privilege (*see* Alaska Opp'n at 3, 5, 6, 10; Montana Opp'n at 3, 5, 6, 10), but the topics at issue would do no such thing.  Instead, they merely seek the identity and contact information of any healthcare provider who communicated with the states by way of either interview or complaint.  (*See, e.g.*, Def.'s Notice of Videotaped Dep. of Pl. Pursuant to FRCP 30(b)(6) ¶¶ 12, 13 (attached as Ex. 5 to Mot.) (cited in Alaska Opp'n at 6; Montana Opp'n at 6).)  This basic factual information could not possibly compromise the integrity of any "investigation" performed by the states; rather, since any such provider would obviously be a potential witness in the case, it could only result in the production of highly discoverable evidence.

Finally, the AGs fail to explain how the mere allowance of a deposition would infringe any alleged work-product or deliberative-process privilege.  As Merck pointed out in its opening brief – to no response from the AGs – "the government, 'like all other litigants, [can] object to actual questions which it believes invade[] the applicable privilege during the deposition.'"  (Mot. at 13 (quoting *EEOC v. LifeCare Mgmt. Servs.*, No. 2:08-cv-1358, 2009 WL 772834, at *12 (W.D. Pa. Mar. 17, 2009)).)  In the unlikely event that any of Merck's proposed deposition topics proves overreaching, the AGs can rely on objections to protect privileged information.  *Accord, e.g., Kramer*, 778 F. Supp. 2d at 1328 (noting the unfairness of denying a deposition outright "without a meaningful review of [the] opponent's claim of privilege").  For all of these reasons, Merck's requests do not pose any risk of compromising the AGs' alleged work product or deliberative processes.

### III. THE TESTIMONY SOUGHT DOES NOT REQUIRE EXPERT OPINIONS.

The AGs' argument that Merck's Notices ask for information that requires disclosure of expert opinions (*see* Alaska Opp'n at 11; Montana Opp'n at 11) is also misplaced.  As with the

8

AGs' privilege arguments, their argument about the need for expert disclosures rests on the mistaken belief that Merck seeks something beyond the "factual predicates" for their claims. (*See* Alaska Opp'n at 12; Montana Opp'n at 12.)  But as Merck explained in its opening motion, it seeks only the facts that form the basis of the claimed violations of law.  And no expert testimony is needed to simply "'state the facts upon which [the AGs] base[] [their] claims." (Mot. at 15 (quoting *Resolution Trust Corp. v. Sands*, 151 F.R.D. 616, 620 (N.D. Tex. 1993)).)

The AGs' attempts to illustrate the supposed need for expert disclosures only highlights their misconstruction of Merck's requests.  As their first example, the AGs refer to Merck's request for testimony about the ways in which "'Dear Healthcare Provider letters' 'presented information concerning the safety profile and efficacy of Vioxx in an unfair or deceptive manner.'"  (*E.g.*, Alaska Opp'n at 11 (quoting Mot. Ex. 5 ¶ 1.a).)  But the AGs offer no reason why testimony on that topic would require any expertise.  Merck only seeks testimony regarding the *facts* about the letters – e.g., specific language or alleged omissions – that violate state law. The states need not also proffer their theories about why such language is legally or medically problematic, making the disclosure of ostensibly expert opinions entirely unnecessary.  Contrary to the AGs' suggestion (*id.* at 12), it is **precisely** this sort of information – the "factual predicates" of their claims – that the court held was subject to discovery (and would require no disclosure of expert opinion) in *Resolution Trust*.  *See* 151 F.R.D. at 620 ("Although an expert witness would be necessary to opine regarding *why* the actions of the officers and directors of SSA were not in compliance with the underwriting standards, the mere discovery of the source

and content of the standards themselves and (*as a factual matter*) how they were used does not require expert testimony") (emphases added).[1]

The AGs' emphasis on the "each and every way" language in Merck's Notices does not change the analysis. As noted previously, this language is intended to reflect the claimed multiplicity in violations of state law – not to advance a request for the disclosure of the states' legal theories. Moreover, *Resolution Trust* expressly noted that a request that in substance seeks the "factual predicates for the [plaintiff's] causes of action" is proper regardless of whether it could have been phrased differently. 151 F.R.D. at 620 (explaining that request for testimony about the plaintiff's "'claims that the officers and directors were negligent, grossly negligent or breached their fiduciary duties'" was proper even though the defendants "could have framed their request in terms of 'the factual basis' for these claims") (citation omitted). For all of these reasons, nothing in Merck's requests would require the disclosure of expert testimony.

## IV.  TOPIC 9 REGARDING ALASKA'S REGULATION AND OVERSIGHT OVER PHARMACEUTICAL COMPANIES, INCLUDING MERCK, IS HIGHLY RELEVANT.

Finally, the Alaska AG contends that Topic 9 – the "regulation of and oversight over activities of pharmaceutical companies" in Alaska – is irrelevant. (Alaska Opp'n at 12.) According to Plaintiff, its treatment of other pharmaceutical companies has no bearing on whether Merck's conduct was lawful. (*Id.*) This argument is a red herring. As explained in Merck's motion to compel, which Plaintiff ignores, Topic 9 is relevant not because of the State's action toward other pharmaceutical companies, but because of its inaction toward Merck while

---

[1] The AGs' second example – "exactly why Merck's actions are subject to penalties under" state law (Alaska Opp'n at 12; Montana Opp'n at 11-12) – is irrelevant, since Merck does not seek such information in its Notices. Their third example – "the exact number of violations" of state law (Alaska Opp'n at 12; Montana Opp'n at 12) – plainly does not require the disclosure of expert opinion. It seeks only a number – and one that Merck is certainly entitled to know at this stage of the litigation. (*E.g.*, Mot. Ex. 5 ¶ 14.)

Vioxx was on the market.  (*See* Mot. at 8 n.2.)  Specifically, any evidence that the State of Alaska or any of its agencies or officers had any responsibility for regulating Merck's activities while Vioxx was on the market would directly support a defense that the government implicitly or explicitly approved of the Company's conduct by its inaction.  *See, e.g.*, Mont. Code Ann. § 1-3-215 (codifying *in pari delicto* defense); *Sandoz Inc. v. Commonwealth ex rel. Conway*, Nos. 2010-CA-626-MR, 2011-CA-225-MR, 2012 WL 4838981, at *4 (Ky. Ct. App. Oct. 12, 2012) (Commonwealth was *in pari delicto* where it was aware of drug company's actions but did nothing to halt practices alleged to be unlawful under consumer-protection act).  The Alaska AG also argues that any questioning related to its regulatory actions would be protected by the deliberative-process privilege.  (Alaska Opp'n at 12.)  But, again, Merck is not seeking information concerning why certain regulatory decisions were made, but only the details concerning the agencies and individuals who may have had responsibility for overseeing or regulating Merck's conduct.

## CONCLUSION

For the foregoing reasons, Merck requests that the Court issue an order compelling Plaintiffs to designate representatives to testify regarding the topics in Merck's 30(b)(6) deposition notices and denying the Alaska and Montana AGs' motions for a protective order.

Dated:  June 21, 2013                                    Respectfully submitted,

/s/ *Dorothy H. Wimberly*
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, LA 70130

1130260v1

Douglas R. Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth St., N.W.
Washington, DC 20005

John H. Beisner
Jessica Davidson Miller
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
1440 New York Avenue, N.W.
Washington, DC 20005

ATTORNEYS FOR MERCK SHARP &
DOHME CORP.

1130260v1

1130260v1

**CERTIFICATE OF SERVICE**

      I hereby certify that the above and foregoing Memorandum has been served on Liaison Counsel, Russ Herman, Phillip Wittmann by U.S. Mail and e-mail or by hand delivery and e-mail, upon Ann Oldfather by e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with PreTrial Order No. 8(C), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 21st day of June, 2013.

                                        */s/ Dorothy H. Wimberly*
                                        Dorothy H. Wimberly, 18509
                                        STONE PIGMAN WALTHER
                                        WITTMANN L.L.C.
                                        546 Carondelet Street
                                        New Orleans, Louisiana  70130
                                        Phone:  504-581-3200
                                        Fax:     504-581-3361
                                        dwimberly@stonepigman.com