UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: VIOXX | * | MDL NO. 1657 |
| PRODUCTS LIABILITY | * | |
|           LITIGATION | * | SECTION  L |
| | * | |
| THIS DOCUMENT RELATES TO: | * | JUDGE FALLON |
| THIRD PARTY PAYOR COMMON | * | MAG. JUDGE KNOWLES |
| BENEFIT FEES | * | |
| | * | |
| FILER: Robert E. Arceneaux/ | * | |
| Margaret Woodward/ | * | June 23, 2013 |
| Pascal F. Calogero, Jr. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

DECLARATION OF ERIC H. WEINBERG

Pursuant to 28 U.S.C. §1746, Eric H. Weinberg submits the following declaration:

1.  I am an Attorney at Law admitted to practice in the states of New Jersey and New York, as well as various federal courts.

2.  I formed my law practice, The Law Offices of Eric H. Weinberg, in New Brunswick, New Jersey in 1984. I graduated from Rutgers College in 1977 and from Boston University School of Law in 1980. From 1980 to 1983, I was employed as a legal clerk and Assistant County Prosecutor by the Somerset, New Jersey Prosecutor's Office. From 1983 to 1984, I was employed as an associate in an insurance defense law firm.  I have tried approximately 30 jury trials and 200 bench trials to verdict in my career.

3.  I have been appointed to two Multidistrict Litigation Plaintiff's Steering Committees. In 1995, I was appointed by the Honorable John F. Grady to the PSC in MDL-986 *In Re Factor VIII and IX Blood Products Litigation* in the Northern District of Illinois; I served on the five lawyer Executive Committee in the case.  In 2012, I was appointed by the Honorable David R. Herndon to the PSC in MDL- 2385, *In Re Pradaxa Litigation*; I am Co-Chair of the Science/Expert Committee in the case.

4.  I have been involved in leading two consolidated state court mass tort matters: *In Re Baycol Litigation* in Philadelphia from 2001 to 2004; and the New Jersey consolidated Vioxx litigation before the Honorable Carol E. Higbee from 2004 to 2007.

5.  I am primarily responsible for the service of the Plaintiffs' expert reports upon Merck in the pending Attorney General cases before this Court, which are due for service upon Merck on July 17, 2013.   Intense concentration of time, focus and energy are essential to protect the interests of my clients and other litigants in this MDL.

6. I was served with a Subpoena by the FAC on May 13, 2013. I immediately sent the subpoena to my attorneys in this matter. The Subpoena sought time records from the beginning of my involvement in Vioxx litigation, in 2004, to date.

7. I had previously provided the personal injury FAC and the private TPP FAC with all of the time records for common benefit work performed from October 2004 through November 2007 (in connection with the personal injury common benefit fee matter) and from November 2007 through early September 2009 (in connection with the private Third Party Payor matter.) Thus the FAC already had, at the time it issued its subpoena to me, all of my time records for common benefit work from October 2004 through September of 2009.

8. However, the FAC also sought records for all other Vioxx Litigation in which I have performed common benefit work, which would be limited solely to the category of work on AG TPP cases.

9. My attorneys filed a Motion to Partially Quash the FAC's subpoena, but I learned in the afternoon of June 10, 2013 that this motion was denied. Even though I was not in the office, I notified my staff that we would be meeting the following morning, June 11, 2013, to set up procedures to comply with the subpoena.

10. I convened a meeting in my office of my staff on the morning of June 11, 2013. I employ two paralegals and an office manager. I directed them to begin to organize time records from September 2009 to the current date. I also engaged my IT consultant to provide necessary information, including archived records, to assist my staff on this project.

11. I was advised by my attorneys that Special Master Juneau did not require these records to be produced at the hearing scheduled for June 20, 2013. I was also advised by my attorneys, through the week of June 10 that the FAC had not asked for a return of the subpoena by a date certain. Nonetheless I advised my staff that to work nonstop with a target date to provide a draft of the time records by June 20, 2013 so that I could review the records after the hearing and provide them to the FAC no later than June 28, 2013. I did this to ensure that the records were provided as quickly as possible. I did not believe that June 20 was a court ordered production date, or was a return date on the subpoena set by the FAC, but I recognized the urgency of this matter and my duty to provide these records in a responsible fashion.

12. The organization of time records was the first priority matter for my office staff, and they continued to work on the time records, though I did not believe, in good faith, that we were required to produce the time records post-dating the private TPP settlement to the Special Master on June 20, 2013.

13. While my staff was engaged in the work I had assigned to it regarding the subpoena, and while waiting for the work product to review, analyze and approve, I continued to

EXHIBIT 8

fulfill my work obligations to my Vioxx client, the State of Utah, and the MDL, for which I was to first-chair a deposition on June 18, 2013 of a Merck witness who had never been deposed in any forum. This deposition was the last in a series of seven depositions of such witnesses which were being taken in connection with ongoing AG litigation, and which were noticed in the MDL as well as in state court. I felt that it was my obligation to ensure that I was fully prepared for this critical deposition, and accordingly from June 10, 2013 until June 18, 2013, I was engaged in deposition preparation that was for the common benefit of all AG cases, and also the MDL. The witness to be deposed was Christopher Lines, PhD, Merck's Director of Global Scientific and Medical Publications, an author of the Alzheimer's 078 published papers in 2005 and 2008 and who had never been deposed in the Vioxx litigation in this Court or in any other Court.

14.  Deposition preparation was not the only work that demanded my attention between June 10, 2013 and June 18, 2013. I was also preparing, to the extent possible, for the June 20 proceeding scheduled by Special Master.  In addition, I was simultaneously focusing my office staff's efforts on the time records responsive to the FAC's subpoena.  In addition, since the UTAH AG Plaintiff's expert reports are due to be served upon Merck on July 17, 2013, some of my time from June 10 to date was diverted to the substantive issues of experts in the litigation.

15.  Personal matters have also created demands upon my time from June 10, 2013 to date.  My mother, who resides in a nursing home, underwent in-patient surgery at St. Peter's Hospital in New Brunswick, New Jersey for a serious medical condition on June 13 and remained hospitalized through June 14.  I spent time in the hospital during and after the surgery.  Also, one of my two paralegals was on medical leave for the week of June 17, 2013, although she was able to provide some assistance from her home.

16.  After the deposition of Merck corporate witness Christopher Lines, on June 18, 2013, which concluded at approximately 6 pm, I drove home from Philadelphia to New Jersey. I prepared for the proceeding before the Special Master on the evening of June 18, until approximately 1 am on the morning of June 19. After additional preparation the morning of the 19th, I headed to Newark Airport.  While at the airport about to board my flight, I learned from my attorney that the FAC had filed a Motion for Contempt against me.  My flight departed on schedule, and I arrived in New Orleans shortly after 3 pm CST. I met with my attorneys for several hours after my arrival, and neither they nor I was aware of any order being issued that I had to produce records at the June 20 proceeding. Nonetheless, I had been in contact with my staff on the 19th, and followed up on the 20th, to ensure that good progress was being made on the AG time records.

17.  The Special Master's proceeding commenced at 9 a.m. on June 20 and concluded around 11:30 am.  At no time either before or during this hearing was I aware of this Court's June 19 order regarding contempt.  I did not learn of this until later in the afternoon, when I was preparing to depart New Orleans, and I received a call from my counsel who informed me of the order. When I returned to my home late on the evening

of June 20th, I reviewed some of the work my staff had done, and since that time I have been completely focused on these time records.

18.  It was my understanding that Special Master Juneau did not require production of the time records sought by way of subpoena at the proceeding on June 20, 2013, which understanding was reinforced at the proceeding. I did not know or believe my conduct was in any respect contumacious of the Court's Orders or intentions.

19.  If my actions have been interpreted by this Court as possibly contumacious, I apologize to the Court.  It is simply not within my character to act with contempt to this, or any Court.

20.  I have worked from Friday, June 21, through the weekend and on Monday on my time records.  My staff graciously agreed to work over the weekend on the AG time records.  Because of this intensive effort, I hope to have the records ready for delivery on Monday, June 24, 2013.  I will continue to review these records for accuracy to the best of my ability, given the circumstances in which they are produced.  If I have inadvertently included any inappropriate time in these records, I will withdraw such time and will not submit such time in behalf of any common benefit claim that may accrue.

21.   In my three decades as a practicing trial lawyer, I have always treated the Court, counsel and litigants with respect.  I have always represented my client's interests with honor and dedication.  I have never been accused of contempt of a Court in my career. Maintaining my standing before the courts as a trusted and valuable officer is of the greatest importance to me. If I have inadvertently done anything that has offended the honor or dignity of this Court, I most sincerely and deeply apologize. However, I believe that I have acted with greatest respect for the rulings of this Court in this matter at all times. It was certainly my intention to do so.


Eric H. Weinberg declares under penalty of perjury that the foregoing is true and correct.

Executed on June 23, 2013.