## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re:  VIOXX | MDL NO. 1657 |
| PRODUCTS LIABILITY LITIGATION | |
| | SECTION: L |
| THIS DOCUMENT RELATES TO: | |
| | JUDGE FALLON |
| SHERRILL HERKE, individually and on behalf of a proposed class of those similarly situated, | No. 2:09-cv-07218 |
| Plaintiffs, | |
| v. | |
| MERCK & CO., INC., Defendant. | |

## PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT

After more than eight years of hard-fought litigation regarding the prescription pain reliever Vioxx – including the negotiation of various settlements to resolve personal injury and other claims stemming from Merck's decision to withdraw the drug from the market – the parties have agreed to settle a class action brought on behalf of all Vioxx purchasers nationwide who allege economic loss as a result of Merck's alleged misrepresentations regarding the risks of the drug.  The Settlement does not include any consumer who purchased Vioxx for personal or family use before October 1, 2004 while living in Missouri.

Under the terms of the settlement reached by the parties, Merck has agreed to pay up to $23 million into a common fund to resolve claims made for out-of-pocket expenditures by members of the settlement class and certain other payment obligations.  Each member of the

settlement class who qualifies for payment may obtain recovery of either: (1) his/her out-of-pocket expenditures for the purchase of Vioxx for personal or family use and up to seventy-five dollars ($75.00) for his/her other out-of-pocket costs and losses in connection with a post-withdrawal medical consultation related to Vioxx use as defined in the Settlement Agreement; or (2) a one-time payment of up to fifty dollars ($50.00) with proof of Vioxx prescription. In addition, the common fund will pay, subject to the $23 million aggregate, all costs of class notice and settlement administration and Court-awarded attorneys' fees and expenses. This settlement – reached as a result of substantial, informed, arms-length negotiations between the parties – fairly and adequately resolves the claims alleged against Merck by Vioxx purchasers nationwide.

Accordingly, and pursuant to Federal Rule of Civil Procedure 23(e), plaintiff requests that the Court enter the attached Order For Preliminary Certification Of A Class For Purposes Of Settlement And Preliminary Approval Of Class Settlement, Class Notice And Related Matters. This proposed Order: (1) preliminarily approves the proposed class action settlement; (2) conditionally certifies the settlement class and reconfirms the previously appointed class representative and settlement class counsel; (3) approves the form and content of the proposed Notice to the class and authorizes the dissemination of the Notice; (4) sets dates and procedures for the Fairness Hearing, including deadlines for settlement class members to file objections to or request exclusion from the proposed settlement; and (5) stays the action pending final approval of the settlement.

## BACKGROUND

### A.  The Vioxx Litigation

Merck voluntarily withdrew Vioxx from the market in September 2004 after interim data from a placebo-controlled clinical trial showed a statistically significantly higher rate of heart attacks in the Vioxx arm of the study after 18 months of continuous use. *See Dier v. Merck &*

*Co.*, 388 Fed. Appx. 391, 393 (5th Cir. 2010). Substantial litigation followed, leading to the establishment of a multidistrict litigation ("MDL") proceeding in this Court. The proceeding ultimately included tens of thousands of cases. Most sounded in personal injury, but the MDL encompassed a range of other claims as well, including third-party payor cases; governmental payor cases; and consumer-protection cases. *See, e.g.*, *Plunkett v. Merck & Co.*, 401 F. Supp. 2d 565, 570-72 (E.D. La. 2005); *In re Vioxx Prods. Liab. Litig.*, 869 F. Supp. 2d 719, 720-23 (E.D. La. 2012).

The Court appointed attorneys to serve on the Plaintiffs' Steering Committee ("PSC") and Defendant's Steering Committee and held monthly status conferences to review the progress of the litigation. *In re Vioxx Prods. Liab. Litig.*, 574 F. Supp. 2d 606, 608 n.3 (E.D. La. 2008), *reconsideration granted in part and denied in part on other grounds*, 650 F. Supp. 2d 549, 608 (E.D. La. 2009). Massive discovery commenced – and is still ongoing – and to date has included the production of millions of documents, the conduct of thousands of depositions, and argument on at least 1,000 discovery motions. *In re Vioxx*, 574 F. Supp. 2d at 608-09.

**B.    Litigation Of Vioxx Economic-Loss Claims**

On August 2, 2005, the PSC filed several master complaints, including a Purchase Claims Master Class Action Complaint. (Compl., D.790.) Among other groups, the complaint named a number of individual consumers who bought Vioxx for themselves as plaintiffs. (*See id.* ¶¶ 21-41.) The Purchase Claims Complaint alleged that Merck "intentionally, recklessly, and/or negligently concealed, suppressed, omitted, and misrepresented the dangers, defects, and disadvantages of Vioxx." (*Id.* ¶ 2.) Plaintiffs further claimed that Merck engaged in a "marketing campaign [that] specifically targeted third party payors, physicians, and consumers, and was designed to convince them of both the therapeutic and economic value of Vioxx." (*Id.* ¶ 9.) The Purchase Claims Complaint alleged that despite Merck's representations, Vioxx "was no

more effective than traditional and less expensive NSAIDs." (*Id.* ¶ 11.)  Plaintiffs further alleged that, as a result of Merck's "omission, suppression, and concealment of this important information," Vioxx was "sold to, and purchased, or paid for by, the End-Payors at a grossly inflated price." (*Id.* ¶ 12.)  The Purchase Claims Complaint sought relief under state consumer-protection laws as well as other causes of action.  (*See id.* ¶¶ 199-324.)

Merck moved to dismiss the Master Complaint on November 7, 2005.  (D.1352.)  This Court held oral argument on that motion on February 2, 2006, but did not issue a ruling.  Instead, the Court stated on several occasions that it wanted to give Judges Higbee and Chaney an opportunity to rule on the class certification motions pending in the economic-loss class actions in the New Jersey and California state court coordinated proceedings.  (*See, e.g.*, Tr. 20:10-21:11, Mar. 5, 2009 .)

Those courts issued rulings denying class treatment of economic-loss claims in 2009, citing the manageability problems that would preclude resolution of the class claims in a trial.  In the New Jersey action (*Martin/Kleinman*), Judge Higbee denied plaintiffs' motion for class certification on March 17, 2009, concluding that plaintiffs' claims turn on highly individualized proof that precludes findings of predominance, superiority and typicality.  *See* 8 A.3d 851, 862-63 (N.J. Super. Law Div. 2009).  In the California Vioxx actions, Judge Chaney similarly refused to certify a proposed class of all California Vioxx consumers and TPPs in April 2009.  In her order denying class certification, Judge Chaney noted that in order to prevail on their claims under California law, "each class member must demonstrate . . . that the misrepresentation or nondisclosure influenced [his or her] prescription decision making." *In re Vioxx Consol. Class Action*, No. JCCP 4247, slip op. at 9 (Cal. Super. Ct. Los Angeles County Apr. 30, 2009) .  The court found that a trial could not possibly be conducted on a classwide basis because of the

myriad, patient-specific factors that influenced physicians to prescribe Vioxx.  *Id.* at 10-11.  Both of these decisions survived appellate review; the New Jersey courts denied leave to appeal, and the California Court of Appeal affirmed Judge Chaney's ruling denying class treatment.  *See In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 127-34 (2009), *petition for review & depublication denied*, No. S179699, 2010 Cal. LEXIS 3194, at *1 (Cal. Mar. 30, 2010); Order, AM-11-09T3 (N.J. Super. App. Div. Oct. 2, 2009); Order, No. M-504 (N.J. Jan. 14, 2010).  Citing these decisions, Merck moved to strike the Purchase Claims Complaint's class allegations in 2010, contending that the rulings established the unsuitability of such claims for resolution in a trial setting.  (*E.g.*, D.45,869-3, at 1-2.)[1]

Merck also moved in the same motion for judgment on the pleadings, arguing, among other things, that the economic-loss claims did not allege cognizable injuries.  (*Id.* at 16-20.)  In its motion, Merck noted the general proposition that "[n]o injury, no tort, is an ingredient of every state's law," *In re Bridgestone/Firestone, Inc., Tires Prods. Liab. Litig.*, 288 F.3d 1012, 1017 (7th Cir. 2002), and highlighted the ruling of the U.S. Court of Appeals for the Fifth Circuit in *Rivera v. Wyeth-Ayerst Laboratories*, 283 F.3d 315 (5th Cir. 2002).  *Rivera*, like other cases, rejected the notion that consumers who purchased a drug, received its benefit, and avoided allegedly undisclosed side effects could claim injury, explaining that the plaintiffs were really complaining about conduct that harmed others and were not themselves "among the injured." 283 F.3d at 320.  (*See* D.45,869-3, at 17-20 (citing *Rivera* and other similar decisions).)  The Court did not issue a ruling on the motion.

---

[1]      Class certification was approved by a Missouri state court and upheld by a court of appeals in *Plubell v. Merck & Co.*, 289 S.W.3d 707 (Mo. Ct. App. 2009); class certification was reversed by the Kentucky Court of Appeals in *Ratliff v. Merck & Co.*, No. 2011-CA-000234-MR, 2012 Ky. App. LEXIS 31 (Ky. Ct. App. Feb. 10, 2012), which is currently pending before the Supreme Court of Kentucky, *Ratliff v. Merck & Co.*, No. 2012-SC-000162.

In 2012, Merck moved for judgment on the pleadings with respect to the consumer-protection claim in *District of Columbia ex rel. Walker v. Merck & Co., Inc.* (D.63,656-1.) Like the claims in the Purchase Claims Complaint, the *Walker* case disclaimed physical injury from Vioxx but nevertheless claimed entitlement to recover economic losses as a result of Merck's alleged misrepresentations regarding the alleged cardiovascular risks of Vioxx. (*See id.* at 3.) Merck again argued (among other things) that no cognizable injury had been pled, citing *Rivera* and other cases. (*See id.* at 5-7.) The Court granted this motion, finding "little to support Plaintiff's theory of economic injury" because "Plaintiff thought he was purchasing a medication that would relieve his pain without causing him personal injury . . . and that is what he received." (D.63,924, at 11.) In this context, the Court held, "[t]here is no obvious, quantifiable pecuniary loss that Plaintiff incurred from purchasing a drug that worked for him and did not cause him any harm." (*Id.*) With nothing to "distinguish this case from *Rivera*," the Court concluded that judgment as a matter of law was appropriate. (*Id.*) The plaintiff moved for reconsideration, and at that time, the parties began to focus their efforts on resolving all pending consumer suits alleging economic-loss injuries.

### C.   The Settlement Negotiations And Resulting Agreement

Over the next year, the parties engaged in extensive negotiations to resolve the consumer suits. The attorneys involved in the negotiations have been engaged in the MDL proceeding since its initiation: Russ Herman, the PSC chair; Elizabeth Cabraser and Dawn Barrios on behalf of the purchase claims committee on the plaintiffs' side; and Doug Marvin and John Beisner on behalf of Merck. The negotiations spanned nine months and involved occasional consultation with Judge Fallon.

Under the resulting agreement, the parties agree to a common-fund settlement with a payment by Merck of up to $23 million for qualifying claims made for out-of-pocket

expenditures by members of the Class. Claimants can recover either: (1) out-of-pocket costs for purchasing Vioxx and up to $75 in connection with a post-withdrawal medical consultation related to Vioxx use, as defined in the Settlement Agreement; or (2) a one-time payment of up to $50 with proof of Vioxx prescription. These amounts are subject to a pro rata reduction in the event that the combined value of all claims, as well as administrative and notice costs, exceeds the $23 million cap. Recoveries are also subject to reduction for attorneys' fees, which are to be paid out of (not in addition to) the common fund.

This settlement is a fair, efficient and reasonable resolution of the disputed claims. Class counsel believe in the merits of the economic-loss claims against Merck. But the barriers to proceeding are considerable. The Court has not yet certified a class, and adverse rulings in other jurisdictions cast doubt on the suitability of economic-loss claims for resolution at a class trial. Even if a class were certified, binding Circuit precedent presents a significant hurdle for the theory of injury advanced in these cases, and there is a substantial possibility that class certification would be reversed. And even an ultimately successful lawsuit would entail substantial additional litigation, both as to class certification and pretrial dispositive motions and in preparing for and trying the case or cases. Based on these facts, and on the experience of counsel on all sides in litigating a range of Vioxx-related cases over the past several years, the settlement is appropriate. Accordingly, plaintiff – with Merck's consent – seeks an order preliminarily approving the Settlement Agreement, conditionally certifying the Class for settlement purposes only, approving the dissemination of Notice to the Class, scheduling a Fairness Hearing, and staying the Action.

## ARGUMENT

### I.     THE COURT SHOULD GRANT PRELIMINARY APPROVAL OF THE SETTLEMENT AGREEMENT.

Federal Rule of Civil Procedure 23(e) provides that a class action cannot be settled without approval by the court. *See* Fed. R. Civ. P. 23(e).  The first step in determining whether to grant preliminary approval to a class settlement is for "the Court [to] make[] a preliminary fairness evaluation of the proposed settlement." *Cope v. Duggins*, No. 98-3599, 2001 WL 333102, at *1 (E.D. La. Apr. 4, 2001) (Fallon, J.) (citation omitted).  The court must "evaluate the likelihood that the Court would approve the settlement during its second review stage, the full fairness hearing." *Id*.  However, the standards for granting a motion for "preliminary approval of a class action settlement . . . are not as stringent as those applied to a motion for final approval." *In re OCA, Inc. Sec. and Derivative Litig*., No. 05-2165, 2008 WL 4681369, at *11 (E.D. La. Oct. 17, 2008).

It is widely recognized that, at the preliminary approval stage, courts should exercise restraint in examining a proposed settlement and should not "make a proponent of a proposed settlement justify each term of settlement against a hypothetical or speculative measure of what concessions might have been gained; inherent in compromise is a yielding of absolutes and an abandoning of highest hopes." *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977) (internal quotation marks and citation omitted).  Thus, where experienced counsel representing many interested parties have extensively negotiated the settlement at arm's length, a strong initial presumption is created that the compromise is fair and reasonable and should be approved. *See U.S. v. Tex. Educ. Agency*, 679 F.2d 1104, 1108 (5th Cir. 1982); *see also Altier v. Worley Catastrophe Response, LLC*, No. 11-241c/w11-242, 2012 U.S. Dist. LEXIS 6391, at *50 (E.D. La. Jan. 18, 2012) (Wilkinson, J.) ("I . . . presume that the proposed settlement is fair and

reasonable" because it "is the result of arm's-length negotiations and . . . there is no evidence of fraud or collusion"); *see also In re Heartland Payment Sys.*, 851 F. Supp. 2d 1040, 1063 (S.D. Tex. 2012) ("A 'presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.'") (citation omitted).

Further, if experienced counsel determine that a settlement is in the class's best interests and the compromise bears a reasonable relationship to the claims, "the attorney's views must be accorded great weight." *Pettway v. Am. Cast Iron Pipe Co.*, 576 F.2d 1157, 1216 (5th Cir. 1978); *see also In re OCA, Inc.*, 2008 WL 4681369, at * 11 (where there is "no reason to doubt [the] fairness" of the settlement and it "appears to fall within the range of possible approval, the court should grant preliminary approval"); *see also In re Train Derailment Near Amite La. on October 12, 2002*, No. MDL 1531, 2006 WL 644494, at *1 (E.D. La. Jan. 27, 2006) (granting preliminary approval of class settlement negotiated at arm's length and without collusion, where the compromise bore "a probable, reasonable relationship to the claims and exposure and to the risks presented in the litigation" and was "within the possible range of judicial approval").

The Court should approve the proposed settlement in this case because the settlement is the result of extensive, arm's length negotiation by informed counsel who believe that the compromise is in the bests interests of their clients. As set forth above, the parties' settlement negotiations in this case were cordial but adversarial and have been ongoing in one form or another for years. During these discussions, the parties considered multiple proposals before reaching the proposed agreement that has been presented to the Court. The parties' negotiations were informed by the knowledge of counsel gained by years of involvement in this litigation and participation in other Vioxx-related settlements. Based on their unique familiarity with the

relevant factual and legal issues, the parties were able to make a well-informed decision regarding the relative strengths and weaknesses of their claims and defenses. The parties were also able to make good-faith assessments of the costs and risks of proceeding with this case before reaching an agreement. Moreover, class counsel are highly competent counsel, with many years of experience litigating Vioxx cases and negotiating settlements in this litigation. Accordingly, there can be no doubt that class counsel had sufficient information regarding their claims to vigorously advocate on the class's behalf. For all of these reasons, the Court may presume that the proposed settlement is fair and reasonable. *See Camp v. Progressive Corp*, No.01-2680, 2004 WL 2149079, at *7 (E.D. La. Sept. 23, 2004).

Preliminary approval is also appropriate because the settlement includes reasonable economic terms. Plaintiff's ability to prevail on the merits of this litigation, as in all contested matters, is uncertain. This is especially true in light of this Court's ruling in *Walker* and the arguments set forth in Merck's motion for judgment on the pleadings. By contrast, the proposed settlement provides relatively assured and substantial benefits to class members. For this reason, too, the settlement should be preliminarily approved and the Court should schedule a final fairness hearing.

## II.    CONDITIONAL CERTIFICATION OF THE CLASS IS APPROPRIATE FOR SETTLEMENT PURPOSES.

The Manual For Complex Litigation (Fourth) § 21.632 (2004) advises that:

> If the case is presented for both class certification and settlement approval, the certification hearing and preliminary fairness evaluation can usually be combined. The judge should make a preliminary determination that the proposed class satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b).

Although the requirements of Rules 23(a) and 23(b)(3) must still be met, when a court is "[c]onfronted with a request for settlement-only class certification, a district court need not

inquire whether the case, if tried, would present intractable management problems." *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591,620 (1997).

Here, all of the relevant requirements of Rule 23 are met for purposes of certifying a settlement class.[2]

### A.    <u>Numerosity</u>

Under Rule 23(a), the class must be sufficiently numerous to make joinder impracticable. *See* Fed. R. Civ. P. 23(a)(1). There is no question that numerosity is satisfied here. The settlement class encompasses all purchasers of Vioxx nationwide, which would include many thousands of individuals.

### B.    <u>Commonality</u>

The commonality requirement of Rule 23(a)(2) is also met in this case for purposes of this settlement. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) (certifying settlement class and noting that the "existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class."); *Morales v. Stevco*, No. 1:09-cv-704, slip op. at 10 (E.D. Cal. May 16, 2012) (finding  commonality requirement satisfied for purposes of classwide settlement based ''upon the stipulation of the parties'' regarding one of the core issues in the case); *Sewell v. Bovis Lend Lease, Inc.*, No. 09-cv-6548 (RLE), 2012 BL 94066, *5-6 (S.D.N.Y. Apr. 16, 2012) ("[s]ettlement" itself "provides an answer to the common issues raised by all class members, regardless of the specific type of injury" they may have sustained).

---

[2]    In consenting to this motion, Merck has stated that it does not waive the right to object to class certification de novo in the event the proposed settlement is terminated for any reason.

In this case, plaintiff alleges that Merck made misstatements regarding the alleged risks of Vioxx to all purchasers of the drug nationwide.  As a result, there is a common question as to whether Merck's statements about the drug were accurate, making certification appropriate for settlement purposes.

### C.   <u>Typicality</u>

The typicality requirement of Rule 23(a)(3) "'refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought.'" Newberg on Class Actions § 3:13 (quoting *Weinberger v. Thornton*, 114 F.R.D. 599, 603 (S.D. Cal. 1986).  In other words, courts must determine "'whether other [class] members have the same or similar injury, whether the action is based on conduct which is not unique to the named class members, and whether other class members have been injured by the same conduct.'"  *Id.* (quoting *Hanan v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)). The measure of whether a plaintiff's claims are typical is whether the nature of the plaintiff's claims, judged from both a factual and a legal perspective, are such that in litigating his or her personal claims he or she reasonably can be expected to advance the interests of absent class members. *See, e.g., Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156-57 (1982).

Here, the named plaintiff – like all of the other members of the settlement class – claims that Merck made misrepresentations about the safety of Vioxx and that, as a result of those alleged misstatements, she lost money in purchasing Vioxx.  Thus, the named plaintiff claims that she was harmed in a manner similar to the proposed class.  Additionally, the named plaintiff has not asserted any claims different from, or antagonistic to, those of the proposed class she seeks to represent for purposes of settlement.   Accordingly, her claims are typical of the proposed class members for settlement purposes.

### D.    Adequacy of Representation

Rule 23(a)(4) requires that the named class representative "not possess interests which are antagonistic to the interests of the class."  1 Newberg on Class Actions § 3:21.  In addition, the named class representative's counsel "must be qualified, experienced, and generally able to conduct the litigation."  *Id*; *see also Amchem*, 521 U.S. at 625-626 ("[A] class representative must be part of the class and possess the same interest and suffer the same injury as the class members.") (internal quotation marks and citation omitted).  At this preliminary stage of the approval process, there is nothing to suggest that this requirement has not been met.  The named class representative is a member of the settlement class she seeks to represent and does not possess any interests antagonistic to the class with respect to their claims against Merck.

Class counsel is also adequate.  Class counsel have been involved in the management of numerous complex class action cases, including years of coordinating plaintiffs' claims in this MDL proceeding.  Accordingly, class counsel possess adequate information concerning the strengths and weaknesses of the claims against Merck to advocate on behalf of the entire class.  As a result, the adequacy-of-representation requirement is readily satisfied for purposes of certifying the settlement class.

### E.    Common Questions Of Law And Fact Predominate

Rule 23(b)(3)'s predominance requirement "asks whether a class suit for the unitary adjudication of common issues is economical and efficient in the context of all the issues in the suit."  1 Newberg on Class Actions § 4:25; *see also Amchem*, 521 U.S. at 623 ("The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation").  In this case, it is most efficient to resolve the claims of all class members through a nationwide class settlement.  As set forth above, each class member alleges that Merck made misrepresentations about the risks of Vioxx and that those

misrepresentations caused purchasers of the drug to lose money. Accordingly, it makes good sense to resolve all of their claims via a nationwide settlement agreement that ensures that funds are available to compensate them for their alleged damages.

In addition to the predominance requirement, Rule 23(b)(3) requires that the class action device be superior to other methods of adjudication. Factors the Court may consider include: (a) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (d) the difficulties likely to be encountered in the management of a class action." Fed. R. Civ. P. 23(b)(3)(A)-(D). Consideration of each of these factors weighs in favor of certification of the proposed settlement class.

As an initial matter, the interest of individuals in controlling this litigation is limited. The damages allegedly suffered by the Settlement Class Members are not sufficient to warrant individual litigation, since the amount spent by individual class members on Vioxx is slight when compared to the cost of litigating consumer-fraud claims in federal court. *See Amchem*, 521 U.S at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry recoveries into something worth someone's (usually an attorney's) labor."). Importantly, settlement class members who wish to pursue their own individual lawsuits can request exclusion from the class.

14

The other superiority factors also weigh in favor of class certification for settlement purposes.  For example, it is clearly desirable to concentrate the litigation in this forum because this Court has presided over the ongoing massive Vioxx MDL for many years.  In addition, the proposed settlement resolves the substantial manageability problems that would arise from attempting to try thousands of Vioxx purchasers' claims in a single action before a single jury. The settlement will permit settlement class members to achieve individual relief without burdening the parties and the judicial system with a complicated and expensive class action trial.

For all of these reasons, the proposed settlement class meets the requirements for conditional certification under Rule 23.

## III.   THE PROPOSED FORM AND METHOD OF CLASS NOTICE SATISFIES RULE 23

Under Rule 23(e), the "court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement." Fed. R. Civ. P. 23(e)(1).  Such class notice must adequately describe "the substantive claims . . . [and] contain information reasonably necessary to make a decision to remain a class member and be bound by the final judgment."  *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1104-05 (5th Cir. 1977).  Class members are entitled to the best practicable notice under the circumstances. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985).

Class Counsel and Merck's counsel, all of whom have extensive experience with class actions and the development of class action notices, have drafted a Notice form that clearly and concisely apprises class members of their rights and how to exercise them under the proposed Settlement Agreement.   The proposed notice materials clearly and concisely inform class members of the relevant aspects of the litigation and the settlement, including:  (i) the definition of who is a class member; (ii) the history of the litigation; (iii) the terms of the settlement; (iv)

the binding effect of any judgment for those persons who are class members; (v) the right of class members to request exclusion (opt out) from the class and the procedures and deadlines for doing so; (vi) the right of class members to object to any aspect of the settlement and/or to appear at the Fairness Hearing and the procedures and deadlines for doing so; (vii) the date and time of the Fairness Hearing; (viii) how to obtain additional information; (ix) how to make a claim; and (x) information on Class Counsel's fees and expenses.  (*See* Long Form Notice, Exhibit E to Vioxx MDL Consumer Settlement Agreement; *see also* Short Form Notice, Exhibit D to Vioxx MDL Consumer Settlement Agreement.)  Further, the notice materials are written and formatted to communicate this information in a manner that will be understood by members of the class who, presumably, are not lawyers.  *See, e.g.*, *In re VMS Sec. Litig.*, No. 89 C 9448, 1992 U.S. Dist. LEXIS 12141, at *15 (N.D. Ill. Aug. 11, 1992) (class notice sufficient where it "'may be understood by the average class member'") (citation omitted); *In re Prudential Ins. Co. of Am. Sales Pracs. Litig.*, 962 F. Supp. 450, 496 (D.N.J. 1997), *aff'd*, 148 F.3d 283 (3d Cir. 1998).

        In consultation with a notice expert firm, counsel have also worked to ensure maximum exposure among class members to the notice materials.  The Notice Plan includes notice placements in consumer magazines (*Jet* and *National Geographic*), newspaper supplements (*Parade* and *USA Weekend*), national network and cable TV advertising, and Internet banner advertising (AARP Online, AOL Media Network, Google Display Network, and Keyword Search Campaign).  The paid and online media efforts will be amplified with an earned media outreach program, which will include a multimedia press release with a post on various social networks; custom blogger outreach; alerts sent to major broadcast outlets, and photo and video distribution.

**IV.      THE COURT SHOULD STAY PROCEEDINGS PENDING SETTLEMENT**

In order to facilitate the proposed settlement agreement, plaintiff – with Merck's consent – requests that the Court enter a stay of this action until the Court is able to make a determination on the final approval of the settlement and enter a Final Order and Judgment in this case.

**CONCLUSION**

For the foregoing reasons, the Court should grant preliminary approval of the settlement agreement in this action**.**

Respectfully submitted,

Dated: July 17, 2013

/s/ Russ M. Herman_____
Russ M. Herman, Esquire
Leonard A. Davis, Esquire
HERMAN, HERMAN & KATZ, L.L.C.
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
ldavis@hhklawfirm.com
*Plaintiffs' Liaison Counsel*
*MDL 1657*

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing has been served on Liaison Counsel, Ann B. Oldfather, and Phillip Wittmann, by U.S. mail and e-mail or by hand delivery and e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pretrial Order No. 8(B), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 17th day of July, 2013.

/s/ *Leonard A. Davis*_____
Leonard A. Davis