# EXHIBIT "A"

**IN RE VIOXX MDL**

**SETTLEMENT AGREEMENT**

**RELATED TO CONSUMER CLASS ACTIONS**

**JULY 2013**

**Vioxx MDL Consumer Settlement Agreement**

## PREAMBLE

Sherrill Herke (the "<u>Plaintiff</u>"), on behalf of herself and as Representative of members of the putative Class (as defined in Section 1.2 below), by and through undersigned class counsel ("Class Counsel") and Merck Sharp & Dohme, Corp. f/k/a Merck & Co., Inc. and its successors and assigns ("<u>Merck</u>") (Plaintiff, Class Counsel and Merck, collectively the "<u>Parties</u>," and each a "<u>Party</u>"), hereby enter into this Settlement Agreement, together with its Exhibits (the "<u>Agreement</u>" or the "<u>Settlement Agreement</u>") as of the last date subscribed below, providing for settlement pursuant to the terms and conditions set forth herein below, subject to the approval of the Court.

## RECITALS

WHEREAS, the MDL 1657 Purchase Claim Master Class Action Complaint, dated August 1, 2005 (the "Case"), was filed in the Vioxx MDL Proceeding, MDL No. 1657 (the "MDL Proceeding"), on behalf of the Plaintiff and on behalf of other individual consumers similarly situated seeking reimbursement of the out-of-pocket amounts paid to purchase Vioxx for personal or family use by Plaintiff and the members of the putative Class;

WHEREAS, Merck has denied and continues to deny any liability to Plaintiff or other members of the putative Class and asserts numerous defenses to the Plaintiff's claims;

WHEREAS, Merck has previously settled personal injury and wrongful death claims against Vioxx on an individual basis and with individuals participating in the settlement program overseen by the Court in the MDL Proceeding ("the Vioxx Resolution Program");

WHEREAS, Merck has previously settled private third-party payor claims, including claims that were part of the MDL and which involved class allegations set forth in the MDL 1657 Purchase Claims Master Class Action Complaint dated August 1, 2005;

WHEREAS, Merck now wishes to settle all of Plaintiff's' consumer economic injury claims relating to the purchase of Vioxx;

WHEREAS, the Plaintiff and Class Counsel have conducted a thorough investigation of the law and facts relating to the matter set forth in this Case and the Related Actions (as defined below);

WHEREAS, Class Counsel and Merck have engaged in extensive discussion of the issues presented in this litigation and in arms-length negotiations of the possible terms of settlement of the claims;

WHEREAS, after analyzing the relevant facts and applicable law, taking into account the burdens, risks, uncertainties, time, and expense of litigation, as well as the merits of the terms set forth herein, the Plaintiff, Plaintiff's undersigned Class Counsel,

1

and Merck have concluded that the settlement set forth in this Agreement is fair, reasonable, adequate and in the best interests of the Class;

WHEREAS, Merck has concluded that resolving the claims settled under the terms of this Agreement is desirable to reduce the time, risk and expense of defending multiple claims and multiple party litigation, and to resolve finally and completely individual consumer payor claims of the Plaintiff and Class Members (as defined in Section 1.3 below); and

WHEREAS, with the execution of this Agreement, there are no other agreements between the Parties or their counsel with respect to these claims or related to their settlement;

NOW, THEREFORE, Plaintiff, Class Counsel, and Merck stipulate and agree to the terms and conditions set forth herein, which are subject to the Court's approval under Fed. R. Civ. P. 23(e).

1.    **DEFINITIONS**

As used in this Agreement, and in addition to the definitions set forth in the preamble and recitals above, capitalized terms shall have the following definitions and meanings or such definitions and meanings as are accorded to them elsewhere in this Agreement.  Terms used in the singular shall be deemed to include the plural and vice versa; the term "person" shall include, as appropriate, legal entities as well as natural persons.

1.1    "Claim Administrator" shall have the meaning ascribed in Section 10.

1.2    "Class" or "Settlement Class" means that, subject to the Court's approval, and the conditions of this Agreement, the undersigned agree and consent to the certification pursuant to Fed. R. Civ. P. 23(b)(3) of the following class for purposes of the settlement only:

All individual consumer purchasers of Vioxx in the United States (except members of the class previously certified by the Circuit Court of Jackson County, Missouri in the *Plubell* case with respect to purchases made while a resident of the State of Missouri) (the "Settlement Class"), except that the Settlement Class shall include only individuals who purchased Vioxx (by paying all or part of the purchase price) through September 30, 2004, when Vioxx was removed from the market.  For sake of clarity, the Settlement Class defined in the foregoing sentence includes, but is not limited to, all persons referenced in the foregoing sentence who also received a Post-Withdrawal Medical Consultation as defined below in Paragraph 1.13.  All other Vioxx purchasers (including any private or governmental third-party payors that may have paid all or part of the purchase price of Vioxx for use by individual consumers) are excluded. Also excluded are (a) all persons who have previously settled Vioxx-

2

related claims, including all participants in the Vioxx Resolution Program, (b) any of Merck's directors, officers, employees, or agents, (c) the Court, the judge's immediate family members, and the staff of the Court assigned to work on MDL 1657, and (d) those individuals who timely and validly exclude themselves from the Class by means of the Opt Out Procedure.

1.3     "Class Member" or "Settlement Class Member" means all natural persons (or, in the case of minority, death or incapacity, their legal guardians or representatives) in the Class who do not exclude themselves from the Class by the Opt Out Procedure (as defined below) in accordance with Fed. R. Civ. P. 23(c)(2) and the procedures set forth in the Notice.

1.4     "Court" means the Honorable Eldon E. Fallon of the United States District Court for the Eastern District of Louisiana, who is overseeing the MDL Proceeding, or such other court that may be assigned to oversee the MDL Proceeding.

1.5     "Effective Date" shall mean the day following the entry by the Court of the Final Order and Judgment: (i) affirming certification of the Class; (ii) finding the Settlement Agreement to be fair, adequate and reasonable; (iii) finding that the Notice to the Class of the Settlement Agreement was fair, adequate and reasonable; (iv) resolving any and all objections to the fairness and reasonableness of the Settlement Agreement, if any; and (v) dismissing the Class Members' Released Claims with prejudice against Released Persons, including all Related Actions, with each Party to bear its own costs, and (vi) the expiration of the deadline for seeking appellate review of the Final Order and Judgment if no appeal or writ of certiorari is perfected or sought; or the day following (a) the date all appellate courts with jurisdiction affirm the Final Judgment and Order with no possibility of further appellate review existing, or (b) such date as the Parties otherwise agree.

1.6     "Fairness Hearing" shall have the meaning ascribed in Section 5.6.

1.7     "Final Order and Judgment" means an order and judgment entered by the Court finally approving the settlement set forth in this Settlement Agreement under Fed. R. Civ. P. 23(e), confirming certification of the Class, and making such other findings and determinations as the Court deems necessary and appropriate to approve the settlement and terms of this Settlement Agreement and to dismiss with prejudice the Released Claims (as defined below) by any and all Class Members, including any Related Actions, against Merck and all Released Persons (as defined below).

1.8     "Notice" shall have the meaning ascribed in Section 5.

1.9     "Opt Out Procedure" shall mean the process for all natural persons (or, in the case of minority, death or incapacity, their legal guardians or

representatives) to exercise their right to exclude themselves from the Class in accordance with Fed. R. Civ. P. 23(c)(2) and the procedures set forth in the Notice.

1.10    "Opt Outs" shall mean those natural persons (or, in the case of minority, death or incapacity, their legal guardians or representatives) included in the Class definition, but who have timely and properly exercised their right to exclude themselves from the Class under the Opt Out Procedure, and therefore are no longer Class Members.

1.11    "Person" means an individual, corporation, partnership, limited partnership, limited liability company, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, any business or legal entity, and such individual's or entity's owners, members, partners, shareholders, spouse, heirs, predecessors, successors, representatives, and assignees.

1.12    "Plaintiffs' Class Representative" shall have the meaning provided in the preamble of this Agreement.

1.13    "Post-Withdrawal Medical Consultation" means any office visit to a licensed physician to obtain advice regarding the Class Member's own use of Vioxx and/or to discuss discontinuing the use of Vioxx and possible alternative treatments for that Class Member and that occurred following September 30, 2004, which is when Vioxx was withdrawn from the market, and prior to November 30, 2004.  Further, the term Post-Withdrawal Medical Consultation includes any reasonable and necessary diagnostic testing that is solely the result of the Class Member's use of Vioxx and recommended by the Class Member's physician at the Post-Withdrawal Medical Consultation, performed as a result of such recommendation, and occurred after September 30, 2004 but prior to November 30, 2004 ("Vioxx-related diagnostic testing"). However, the definition of Post Withdrawal Medical Consultation does not include any office visits or diagnostic testing occurring during the period from September 30, 2004 through November 30, 2004 that had been scheduled or recommended by the Class Member's physician or licensed prescriber prior to September 30, 2004.

1.14    "Preliminary Approval and Class Certification Order" means an order entered by the Court, preliminarily approving the settlement and certifying the Class for purposes of the Settlement, substantially in the form of Exhibit A.

1.15    "Proof of Claim Form" means the document(s), substantially in the form of Exhibit B, which is submitted by Class Members to the Class Administrator together with all required supporting documentation to make a claim for settlement funds pursuant to this Settlement.

1.16 "Related Action(s)" shall mean any and all state or federal court claims against any Released Persons (as defined below) for, arising out of, or relating to any Released Claim (as defined below) brought by or on behalf of any members of the putative Class (as defined herein), including, but not limited to, the matters identified in Exhibit C. The term Related Actions does not apply to any claims for personal injury or wrongful death.

1.17 "Released Claim" means any and all known or unknown economic injury claims, demands, actions, suits, causes of action, damages whenever incurred whether compensatory or exemplary, liabilities of any nature or under any theory or statute whatsoever, including costs, expenses, penalties and attorneys' fees, in law or equity, that any Class Member who has not timely excluded themselves from the Class, whether or not they object to the settlement, ever had or now has, directly, representatively, derivatively or in any capacity, arising out of or in any way connected with the purchase of Vioxx in the United States (except for purchases made while a resident of the State of Missouri covered by the class previously certified by the Circuit Court of Jackson County, Missouri in the *Plubell* case), including but not limited to, (i) any and all expenditures of, or costs and losses incurred by, the Class Member in connection with a Post-Withdrawal Medical Consultation, including but not limited to, the costs of such medical consultation and Vioxx-related diagnostic testing, and (ii) the allegations contained in the MDL 1657 Purchase Claims Master Class Action Complaint dated August 1, 2005 and all Related Actions. The Released Claims do not include any claims for personal injury or death or claims derivative of such claims, nor does this Settlement revive any such claims.

1.18 "Released Persons" means Merck, Sharp & Dohme, Corp. f/k/a Merck & Co., Inc. ("Merck"), its parent companies, affiliate companies, subsidiary companies, and the past, present and future officers, directors, shareholders, employees, predecessors, parents, subsidiaries, insurers, agents, servants, successors, trustees, representatives, heirs, executors, and assigns of all of the foregoing Persons and entities, including all suppliers, distributors, wholesalers, and retailers of Vioxx, as well as any physicians, medical facilities, and pharmacists who were in any way involved in, or within the chain of distribution of, the purchase of Vioxx by a Representative Plaintiff or Settlement Class Member.

1.19 "United States" means the United States of America including the fifty States of the United States, the District of Columbia, and the territories, possessions, and commonwealths of the United States.

## 2. __COMMON FUND__

2.1 The Parties have agreed to a Common Fund settlement with a maximum payment by Merck of up to $23 million (the "Settlement Amount") for claims made for out-of-pocket expenditures by members of the Class ("Settlement Class") and certain other payment obligations set forth below.

**Vioxx MDL Consumer Settlement Agreement**

2.2     All of Merck's payment obligations under the Settlement Agreement will be made from the Common Fund and counted against the Settlement Amount.  Under no circumstances shall Merck be required to pay into the Common Fund an amount greater than $23 million pursuant to this Agreement.

2.3     Subject to all of the terms of this Agreement, each member of the Settlement Class may obtain recovery of his/her out-of-pocket expenditures for the purchase of Vioxx for personal or family use and up to seventy-five dollars ($75.00) in the aggregate for his/her out-of-pocket costs and losses in connection with any and all Post-Withdrawal Medical Consultations (*i.e.*, costs and losses due to such medical consultation and Vioxx-related diagnostic testing) by submitting a valid claim pursuant to the provisions of Section 11 below.

2.4     Payment will be made only for amounts for which proof of expenditures are presented to the Claims Administrator in accordance with Section 11 below.  The Claims Administrator will determine the adequacy of the proof submitted in support of a claim.  Only amounts paid by the Class Member submitting a claim (and not any amounts paid or reimbursed by third-party payors or others) will be reimbursed to a Class Member under the Settlement.  Because class members will be entitled to payments on the basis of actual out-of-pocket expenditures or costs and losses about which they must submit proof under the terms of this Agreement, there is no minimum payment, except as otherwise provided in Section 11.2.1.

2.5     All reasonable attorneys' fees and expenses incurred in connection with the litigation of the consumer claims and related putative consumer class action cases involving Vioxx, the expenses incurred in providing the Court-approved notice to the Class of the proposed settlement, and the reasonable administrative expenses of the Claims Administrator incurred in connection with the operation of the Settlement, including providing notice to the class, creating and maintaining a class settlement website, processing requests for exclusion from the Class, and the processing of claims and other administration expenses of the Settlement, as approved by the Court, will be paid from the Common Fund and will be counted toward the Settlement Amount.

2.6     Other than to pay the costs of the Claims Administrator for the costs of notice and administration as approved by the Court or to refund Merck in the event this Settlement is not approved or is terminated, no other disbursements shall be made from the Common Fund prior to (i) the Judgment becoming Final, (ii) the Effective Date of this Settlement Agreement being reached, and (iii) the Claim Filing Deadline has passed and all cure periods have expired and all claim audits by the Claim Administrator have been completed.

2.7     If the aggregate amount of valid claims filed by Class Members, plus the attorneys' fees and expenses awarded by the Court, plus the notice and administration costs, is more than the Settlement Amount, the Claim

Administrator shall reduce proportionately each settlement payment to each Class Member sufficient to avoid a shortfall in the Common Fund.

**3.**     **COMMON FUND ESCROW ACCOUNT**

       3.1     A Common Fund Escrow Account shall be created at Esquire Bank, 320 Old Country Road, Suite 101, Garden City, NY 11530 under the control of the Court. Within ten (10) days after the Court enters an order preliminarily approving the Settlement, Merck shall deposit $6 million into the Common Fund Escrow Account by electronic funds transfer pursuant to instructions of Class Counsel.

       3.2     Class Counsel shall be responsible for all administrative, accounting, and tax compliance activities in connection with the Common Fund deposited in the Common Fund Escrow Account, including any filings necessary to obtain Qualified Settlement Fund status pursuant to Treas. Reg. §1.468B-1 for the Common Fund Escrow Account. Merck will provide to Plaintiff's Counsel a W-9 or other documentation necessary to facilitate obtaining Qualified Settlement Fund status for the Common Fund Escrow Account pursuant to Treas. Reg. §1.468B-1.

       3.3     Any interest that accrues on amounts in the Common Fund Escrow Account shall be deemed to be part of the Common Fund.

       3.4     If for any reason, the Settlement does not obtain Final Approval, does not become Final, the Effective Date of the Settlement does not occur, and/or the Agreement is terminated, the amounts paid into the Common Fund by Merck (less any amounts paid for the costs of notice and administration pursuant to the Court-ordered Notice Plan prior to termination of the Settlement Agreement) shall be forthwith refunded to Merck with any interest accrued with respect to such amounts to be refunded.

       3.5     Merck shall make additional deposits to the Common Fund Escrow Account to the extent necessary to pay valid Class Member claims, notice costs, administrative expenses, and attorneys' fees, but only to the extent that all of the deposits made by Merck to the Common Fund Escrow Account do not exceed the Settlement Amount.

       3.6     In the event there is any residual amount in the Common Fund Escrow Account after the payment of all valid claims, attorney fees and expenses, and the costs of Notice and claims administration, including taxes on the Common Fund Escrow Account, the residual amount shall be returned to Merck with any interest accrued with respect to such residual amount.

**Vioxx MDL Consumer Settlement Agreement**

4.     **PRELIMINARY APPROVAL BY THE COURT**
       **AND CLASS CERTIFICATION FOR PURPOSES OF SETTLEMENT**

       4.1     Plaintiff and Merck, through their designated counsel, shall cooperate, assist and undertake all reasonable actions to accomplish the steps contemplated by this Settlement Agreement and to implement the settlement on the terms and conditions provided herein.

       4.2     Promptly after the execution of this Agreement, Plaintiff shall submit a motion to the Court for the certification of a Class for purposes of settlement and simultaneously the Parties shall submit a joint motion for preliminary approval of this Settlement Agreement and related matters.   The Parties shall submit to the Court for entry the Order for Preliminary Approval and Class Certification, substantially in the form attached hereto as Exhibit A.

       4.3     Upon entry of a Preliminary Approval and Certification Order, the Parties shall proceed with further steps to implement the Settlement on the terms and conditions of this Settlement Agreement.

       4.4     Certification of the Class in the Preliminary Approval and Class Certification Order shall be for settlement purposes only.

       4.5     In the event the Court fails to enter the Preliminary Approval and Class Certification Order, in which event it will enter an Order denying the Motion for Preliminary Approval and Class Certification Order, then the Settlement Agreement is terminated, there is no certification of a Class, and the status of the litigation shall be as it was prior to the execution of the Agreement without prejudice to any of the positions of the Parties, including on the issue of the appropriateness of class certification in this or other contexts.   In such event, the terms and provisions of this Agreement will have no further force or effect with respect to the Parties and will not be used in this Litigation or in any other proceeding for any purpose, and any order entered by the Court in accordance with the terms of this Agreement will be treated as vacated, *nunc pro tunc*.

5.     **NOTICE, DEADLINES, AND THE FAIRNESS HEARING**

       5.1     Concurrently with the filing of the motions referred to in Section 4.2, the Parties shall also submit for the Court's approval forms of notice of the certification of class, proposed settlement agreement, and fairness hearing, substantially in the form of Exhibits D and E (the "Notice") and a Notice Plan, and immediately thereafter, upon order of the Court, the Notice Agent (as defined in Section 10 below) shall disseminate the Notice to the Class in the manner so ordered.

       5.2     The Notice Plan will direct to class members the best notice that is practicable under the circumstances, satisfying the requirements of Fed. R. Civ. Proc. 23(c)(2)(b) and due process, and shall consist of the following: (i) the

**Vioxx MDL Consumer Settlement Agreement**

publication version of the Notice shall be published pursuant to the Notice Plan, (ii) the mailed version of the Notice shall be distributed by direct mailing to those requesting it, and (iii) internet ads.

5.3     The Claims Administrator also shall develop and manage a toll free number with an automated system providing information about the Settlement, with the ability to request copies of the Notice, the Settlement Agreement, and the Proof of Claim Form, for the period from thirty (30) days after the entry of the Order preliminarily approving the settlement up to and including the Claim Deadline.

5.4     The Claims Administrator also shall develop and manage a website as described in Section 11.6 for the period from thirty (30) days after the entry of the Order preliminarily approving the settlement up to and including the expiration of the Claim Deadline and any applicable cure period.

5.5     The Claims Administrator shall also maintain a Post Office Box to allow Settlement Class Members the opportunity to request Notice, Proof of Claim Form and additional information by mail, or submit a Proof of Claim Form with supporting documentary proof until following the expiration of all claim deadlines, including any cure periods.

5.6     The Notice shall also inform Class Members of the time, date and place set by the Court for the hearing to determine whether the Settlement should receive final approval as fair and adequate, whether the certification of the Class for settlement purposes should be re-affirmed, and whether the Final Order and Judgment should be entered ("Fairness Hearing").

5.7     For purposes of establishing the deadlines under this Section 5, the Notice Plan Commencement Date shall mean the first day that the Settlement Website is available to be accessed on the internet.  The Claims Administrator and the Parties and their counsel will determine in advance the Notice Plan Commencement Date and will calculate the Opt Out Deadline (defined below), Objection Deadline (defined below), and Claims Deadline (defined below), which deadlines shall be included on the Settlement Website and in all Notices provided pursuant to the Notice Plan.

5.8     The Notice shall provide instructions to individuals who wish to exclude themselves from the Settlement Class regarding the Opt Out Procedure that must be followed to be excluded from the Settlement Class.  Class Members shall have sixty (60) days from the Notice Plan Commencement Date to submit requests in writing or postmarked to be excluded from the Class ("Opt Out Deadline").

5.9     All Class Members who do not timely exclude themselves from the Class shall in all respects be bound by all terms of this Settlement Agreement, and the Final Order and Judgment finally dismissing the Released

**Vioxx MDL Consumer Settlement Agreement**

Claims as against Merck and the Released Persons and shall be permanently barred from commencing, instituting, or prosecuting any action based on any Released Claim against Merck or against any Released Entity in any court of law or equity, arbitration, tribunal or administrative or other forum.

5.10    The Notice also shall state that any Class Member who wishes to appear to oppose the reasonableness and fairness of the Settlement at the Fairness Hearing must file an objection in writing, stating the basis of the objection, and then deliver said objection to the Court at the following address: Clerk of the Court, United States District Court, Eastern District of Louisiana, 500 Poydras Street, New Orleans, Louisiana, 70130.  All objections must be filed with the Clerk of the Court and served on counsel for the Parties and received in writing or postmarked no later than sixty (60) days after the Notice Plan Commencement Date ("Objection Deadline").  The Parties, in consultation with the Notice Agent, shall determine the Objection Deadline and include it in all notices.

5.11    Any Class Member who does not so object by the timely delivery of an objection (pursuant to the procedures set forth in the Notice) to the Clerk of the Court, United States District Court, Eastern District of Louisiana and to counsel for the Parties, shall be deemed to have waived, and shall forever be foreclosed from raising, any objection to the Settlement.

5.12    Class Members must file in person, by mail and postmarked, or submit electronically, completed Proof of Claim Forms with supporting documentation to the Claim Administrator within nine (9) months of the Notice Commencement Date in order to file a timely claim under this Settlement ("Claim Deadline").

5.13    Parties agree that the form and publication of the Notice as detailed in this Section 5 constitutes fair and adequate notice to the Class.

5.14    The costs for the Notice Plan shall be paid from the Common Fund.  Class counsel shall be responsible for the development of the Notice Plan.  However, the Notice Plan (including the content of all notices) and all expenditures for notice shall be subject to advance approval by Merck and subject to Court approval.  To the extent any publication notice of this Settlement could be disseminated in the State of Missouri pursuant to the Notice Plan, Class counsel for the *Plubell* class action pending in Missouri shall review and approve such notice in advance and subject to the approval of the MDL court.

## 6.    FINAL ORDER AND JUDGMENT, RELEASE

6.1    Plaintiff, on her own behalf and on behalf of the Class Members, agree that the Final Order and Judgment entered by the Court shall be substantially in the form of the attached Exhibit F and will contain the following

10

**Vioxx MDL Consumer Settlement Agreement**

release, waiver and covenant not to sue, which shall take effect upon the Effective Date:

> Each Class Member releases and forever discharges and holds harmless the Released Persons of and from any and all Released Claims which the Class Member has or may hereafter have.  Each Class Member further covenants and agrees not to commence, file, initiate, institute, prosecute, maintain, or consent to any action or proceedings against the Released Persons based on the Released Claims.

6.2    In addition, each Class Member hereby expressly waives and releases, upon this Agreement becoming effective, any and all provisions, rights and benefits conferred by any law of the federal government or of any state or territory of the United States, or principle of common law, which purports to limit the scope and effectiveness of the release of any of the Released Claims provided pursuant to this Agreement without regard to the subsequent discovery or existence of any different or additional facts not known by a Class Member at the time of this Settlement.

6.3    Each Class Member also hereby expressly waives and fully, finally and forever settles and releases any and all Released Claims it may have against Released Persons under § 17200, et seq., of the California Business and Professions Code or by any law of the United States or any state or territory of the United States, or principle of common law, which is similar, comparable or equivalent to such provisions.

6.4    The Parties agree that if, for any reason, the Settlement is not approved, or the Final Order and Judgment is not upheld on appeal, (1) the Settlement Class shall be decertified, and that the prior certification shall not be used by any person or court as a basis for certifying any class for litigation purposes, and (2) this Settlement shall be terminated, and the status of the litigation and the Parties thereto shall be as it was prior to the execution of the Settlement.

## 7.    DISMISSAL WITH PREJUDICE, EXCLUSIVE REMEDY

7.1    Plaintiffs and Class Counsel agree to seek Court dismissal with prejudice of all Released Claims by Class Members against all Released Persons in this Case and any Related Actions when the Final Order and Judgment is entered, with each party to bear its own costs, except as otherwise provided herein.

7.2    Moreover, to the extent an individually named plaintiff in a Related Action opts out of the Class, the class allegations of that Related Action nonetheless will be dismissed with prejudice when the Final Order and Judgment is entered with each party to bear its own costs, except as otherwise provided herein.

**Vioxx MDL Consumer Settlement Agreement**

7.3     This Settlement Agreement shall be the exclusive remedy for the Class with respect to Released Claims as against any and all Released Persons, and that, no Class Member shall recover, directly or indirectly, any sums from Merck or the other Released Persons for Released Claims other than those sums received from the Settlement for the Released Claims under the terms of this Agreement.

7.4     The Parties agree, that upon the Effective Date, this Settlement Agreement will fully and completely settle the Released Claims as against the Released Persons by Class Members.  The Parties agree that upon the Effective Date, the Released Persons will be finally released from any and all Released Claims by all Class Members.  Further, the Parties agree that each and every Class Member, and all other persons and entities claiming by, through, or on behalf of, a Class Member, will be forever barred and enjoined from commencing, filing, initiating, instituting, prosecuting, maintaining, or consenting to any action against the Released Persons with respect to the Released Claims.

**8.     NO ADMISSION OF LIABILITY**

8.1     Neither this Settlement Agreement, whether approved or not approved, nor any exhibit document, or instrument delivered pursuant to this Agreement, nor any statement, transaction, or proceeding in connection with the negotiation, execution, or implementation of this Agreement, is intended to or may be construed as or deemed to be evidence of (a) an admission or concession by Merck or any Released Entity of any liability or wrongdoing, or of the truth of any allegations in the above-described litigation, or of the appropriateness of class certification in any other context, or (b) an admission or concession by any Class Member of any lack of merit in the allegations made in the payor master complaint.

8.2     Pursuant to this Agreement, and pursuant to Federal Rule of Evidence 408, and any other applicable law, rule or regulation, the fact of entering into or carrying out this Agreement, and any negotiations and proceedings related hereto, shall not be construed as, offered into evidence as, or deemed to be evidence of, an admission or concession of liability by or an estoppel against any of the Parties, a waiver of any applicable statute of limitations or repose, and shall not be offered or received into evidence, or considered, in any action or proceeding against any Party in any judicial, quasi-judicial, administrative agency, regulatory or self-regulatory organization, or other tribunal, or proceeding for any purpose whatsoever, other than to enforce the provisions of this Settlement or the provisions of any related agreement, release, or exhibit hereto.

**9.     REPRESENTATIONS AND WARRANTIES**

9.1     Class Counsel represents and warrants that they have authority to enter into this Settlement Agreement on behalf of the Plaintiff.

**Vioxx MDL Consumer Settlement Agreement**

9.2    Merck has all requisite corporate power and authority to execute, deliver and perform this Settlement Agreement.  The execution, delivery and performance by Merck of this Agreement has been duly authorized by all necessary corporate action.  This Agreement has been duly and validly executed and delivered by Merck, and constitutes its legal, valid and binding obligation.

9.3    Class Counsel on behalf of the Class, and Merck represent that they:  (i) recommend this Settlement Agreement be approved; and (ii) will undertake the necessary steps to support and effectuate the terms of this Agreement in the event it is approved by the Court.

## 10.    CLAIMS ADMINISTRATOR AND NOTICE AGENT

10.1    Subject to approval by the Court and consent by Merck, Class Counsel may designate a Claims Administrator, who shall be responsible for the disbursement of funds from the Common Fund Escrow Account as necessary to pay all valid class member claims, all reasonable and legitimate settlement administration expenses (including costs of notice), and all attorneys' fees and expenses (as directed by the Court) consistent with the specifications of this Settlement Agreement.  Class Counsel has designated Brown Greer PLC, Richmond, Virginia as Claims Administrator, subject to the Court's approval.

10.2    The Parties have agreed upon the selection of Kinsella Media, LLC as the third-party Notice Agent who shall be responsible for the publication and giving of Notice to the Class in accordance with the Court's Order and the reporting of its activities to the Parties and the Court.

10.3    The Notice Agent also shall be responsible for providing the required notice to the appropriate Federal official and appropriate State officials within ten (10) days of the filing of this Settlement Agreement with the Court pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715.

10.4    In addition to its other duties described below, the Claims Administrator shall receive, collect, identify, and process any requests by putative members of the Class to be excluded from the Class and shall promptly report to Class Counsel and Merck's counsel the identity and number of those opting out of the Class.

10.5    Reasonable costs for the administration of the settlement (including administration of the claims process described below) shall be paid out of the Common Fund.  Merck shall have the right to approve in advance a budget for administrative expenses (other than costs of the class notice), which shall be subject to Court approval.

## 11.    CLAIMS PROCESS

11.1    Each member of the Settlement Class may obtain recovery of his/her out-of-pocket expenditures for the purchase of Vioxx and up to seventy-

**Vioxx MDL Consumer Settlement Agreement**

five dollars ($75.00) for his/her out-of-pocket costs and losses in connection with a Post-Withdrawal Medical Consultation (*i.e.*, costs and losses due to such medical consultation and Vioxx-related diagnostic testing) by submitting a timely and valid Proof of Claim Form under oath and all required supporting documentation pursuant to the terms of this Agreement, if the Effective Date is reached.

       11.2    Each Class Member who submits a Proof of Claim Form bears the burden of proving to the Claims Administrator the validity of their claim through the supporting documentation and Proof of Claim Form sworn to under oath.  To be valid, a Claim must be (1) timely submitted with all required information and documentation, (2) submitted by the individual Settlement Class Member or a family member or legal guardian of such Settlement Class Member (no other third-party submissions), (3) timely supplemented with additional information or documentation in response to requests by the Claims Administrator pursuant to a deficiency notice or an audit of the Claim, (4) signed by the submitting Settlement Class Member under the penalties of perjury and (5) include documentary proof of the purchase of, and payment for, Vioxx for personal or family use, and for the payment of up to seventy-five dollars ($75.00) for his/her out-of-pocket costs and losses in connection with a Post-Withdrawal Medical Consultation (*i.e.*, costs and losses due to such medical consultation and Vioxx-related diagnostic testing), utilizing any of the following forms of proof, which are the only forms of proof acceptable to the Claims Administrator under this Agreement: (a) a receipt, cancelled check, or credit card statement showing payment for Vioxx and for his/her out-of-pocket expenditures, costs and losses in connection with a Post-Withdrawal Medical Consultation for the Settlement Class Member; (b) an EOB (explanation of benefits) from a third-party payor that shows Vioxx was prescribed for the Settlement Class Member and reflects the out-of-pocket expense of the Settlement Class Member for such prescriptions, (c) an EOB (explanation of benefits) from a third-party payor that shows a Post-Withdrawal Medical Consultation for the Settlement Class Member and reflects the out-of-pocket expenses, costs and losses of the Settlement Class Member for such Post-Withdrawal Medical Consultation, or (d) records from a pharmacy, PBM or similar entity that shows Vioxx was prescribed to the Settlement Class Member and reflects the out-of-pocket expense of the Settlement Class Member for such prescriptions. Any claim for costs and/or  losses in connection with a Post-Withdrawal Medical Consultation must include an attestation that the medical consultation or diagnostic testing occurring between September 30, 2004 and November 30, 2004 had not been previously recommended or scheduled prior to September 30, 2004.  Any claimant who submits a claim utilizing a form of proof as set out in this paragraph 11.2 shall not be entitled to any other payment under this Settlement Agreement.

       11.2.1.  If the documents described in paragraph 11.2 (a), (b), (c), and (d) above are not available, the Settlement Class Member may utilize the following form of proof in lieu of the forms of proof described in those paragraphs: (x) healthcare provider(s) records

showing a prescription for Vioxx; (y) a prescription bottle and visible label evidencing a prescription of Vioxx to the Settlement Class Member and showing the prescribing physician, date, pharmacy, and address; (z) a declaration signed by the submitting Settlement Class Member under the penalties of perjury affirming that (i) Vioxx was purchased and paid for by the Settlement Class Member from personal or family funds, and (ii) that the forms of proof listed in paragraph 11.2 (a), (b), and (d) are not available. In addition, the Settlement Class Member must return a form prepared by the Claims Administrator and signed by the Settlement Class Member authorizing the Claims Administrator to collect and review healthcare provider records and pharmacy records to verify the claim in the event the claim is selected for audit under paragraph 11.10. Notwithstanding paragraph 2.3 above, payments for claims supported by the form of proof required under this paragraph 11.2.1 shall be entitled only to a payment of fifty dollars ($50). Any claimant who submits a claim under this alternative form of proof, as set out in this paragraph 11.2.1, shall not be entitled to any other payment under this Settlement Agreement.

11.2.2. A Settlement Class Member shall elect to submit a claim for payment supported by the forms of proof set out in paragraph 11.2 or, alternatively, by the form of proof described in paragraph 11.2.1, but not both. That is, if a claimant elects to submit a claim for documented out-of-pocket expenditures under 11.2, he or she may not also submit a claim for undocumented expenses under paragraph 11.2.1.

11.3    The documentary forms of proof set forth in Section 11.2 are the only forms of documentary proof acceptable under the terms of this Agreement and a Claim without documentary proof or with other forms of proof other than those forms set forth in Section 11.2 is an invalid Claim and will not be paid under the terms of this Settlement. Illegible documents or illegible copies of document are not valid and do not constitute proof of purchase under Section 11.2.

11.4    All decisions with respect to the validity and timeliness of all Claims submitted pursuant to this Agreement, including the adequacy of all documentary proof of purchase, shall be made by the Claims Administrator in its discretion and shall be binding on all the Class Members, shall be final, and shall not be subject to appeal, except as set forth in Section 11.8.

11.5    Settlement Class Members may submit claims by mail, in person, or electronically to the Claims Administrator. Claims may only be submitted by the individual Settlement Class Member and not by third-parties, except a family member or legal guardian of the Settlement Class Member. Claims will be considered timely if submitted by the Claims Deadline. A claim

**Vioxx MDL Consumer Settlement Agreement**

will be deemed submitted on the date of postmark, hand delivery, or electronic submission to the Claims Administrator.  Upon receipt of a claim, the Claims Administrator shall send the Claimant and his/her attorney, if any, an acknowledgement that the claim was received and the date upon which the Claim was received.

        11.6    The Claims Administrator shall maintain a website with which Settlement Class Members may (a) access, download, and print the Settlement Notice, (b) access, download, and print a Claim Form, (c) access, download, and print the medical authorization, (d) electronically submit a completed Claim Form and medical authorization, and upload copies of any of the documented proofs of payment required under Section 11.2, and (e) provide any information required in response to a deficiency notice or under the audit provisions described below.  The Claims Administrator shall implement any steps necessary to accept valid electronic signatures and the parties agree to accept electronic signatures as original signatures.

        11.7    In the event that the Claims Administrator deems a claim invalid for failing to comply with the terms of this Agreement, the Claims Administrator shall send a notice of deficiency to the Settlement Class Member and his/her attorney, if any, describing the deficiency and the steps required to cure that deficiency.  Settlement Class Members shall have thirty (30) days from the date of the deficiency notice to cure any deficiency.  Any deficiencies cured within thirty (30) days of the date of the deficiency notice shall be deemed timely if the original claim was submitted prior to the Claim Deadline.  If following the submission of additional materials a claim remains deficient, the Claims Administrator shall provide the Class Member and his/her attorney, if any, a final notice of the denial of the claim. However, any claims that remain deficient following the expiration of thirty (30) days following the date of the final deficiency notice shall be invalid claims and can no longer be supplemented or remedied.

        11.8    To the extent the Claims Administrator denies a Class Member's claim in its entirety under Section 11.7 because a claim is deficient, the Class Member for good cause and at the Class Member's own expense may appeal the such determination to the Court, or to a Special Master appointed by the Court for such purpose, by filing a written petition in the form of a letter or other writing with the Court (with a copy to the Claims Administrator) within sixty (60) days of the date of the original deficiency notice provided by the Claims Administrator to the Class Member and his/her attorney, if any, pursuant to Section 11.7 or within thirty (30) days of a final notice of the denial of a claim pursuant to Section 11.7, if issued, whichever period is longer.  Any appeal shall be based solely on the materials provided to the Claims Administrator prior to the issuance of any notice of deficiency or denial under Section 11.7.  No additional materials may be submitted in connection with any appeal.

16

**Vioxx MDL Consumer Settlement Agreement**

11.9    To the extent a Claim is submitted that is fraudulent or which contains materially false information or false supporting documentation as determined by the Claims Administrator, the Claim will be denied in its entirety as invalid and the Settlement Class Member shall be disqualified from making any further Claim.  Further, the Claims Administrator shall report to the Court, the Parties, and the appropriate law enforcement authorities, any evidence of claims that are fraudulent or which include materially false information or false supporting documentation.

11.10   All Claims must be submitted by the Claim Deadline to be timely and all subsequent requests by the Claims Administrator for additional information or documentation or authorizations must be provided in a reasonably prompt fashion to be timely.

11.11   All Claims will be subject to full audit by the Claims Administrator.   The Claims Administrator initially shall conduct an audit of a sampling of up to 5% of the Claims.  Thereafter, the Claims Administrator shall audit an additional 10% of the Claims, unless the Claims Administrator finds that 2% or more of the first audited claims were fraudulent (or the claimant fails to provide information requested by the Administrator to allow an audit to be conducted) in which case the Administrator shall conduct audits of more than 10% at his discretion or as may be directed by the Court.

11.12   Merck also may request that additional audits be conducted and/or seek a Court order requiring that additional audits be conducted.

11.13   To the extent not previously provided and if necessary to audit a Claim pursuant to Section 11.10, the Claims Administrator shall request that the Class Member execute additional forms authorizing access to pharmacy and medical records and provide such additional information (including the identity of the physician or licensed prescriber who prescribed Vioxx for the Class Member, the identity of the physician or licensed prescriber with whom a Post-Withdrawal Medical Consultation occurred, and the Class Member's residence at the time of the prescription) that the Claims Administrator reasonably determines is necessary to conclude that the Class Member purchased Vioxx and incurred out-of-pocket expenditures, costs and losses for a Post-Withdrawal Medical Consultation (*i.e.*, costs and losses due to such medical consultation and Vioxx-related diagnostic testing).   Failure to provide the authorization and/or other information or documentation requested in an audit in a reasonable time period will invalidate the Claim.   The Claims Administrator shall seek only those medical and/or pharmacy records pursuant to an audit that are necessary to confirm the validity of the Claimant's proof of expenditure, cost, or loss and any such qualifying expenditures or payments by Claimant.

11.14   The Released Claims of Class Members who do not timely file valid Proof of Claim Forms as required herein, and substantially in the form of Exhibit B, are forever barred as specified in the Final Order and Judgment.

**Vioxx MDL Consumer Settlement Agreement**

11.15  The Released Claims of Class Members who do not file a Claim or who fail to file a timely and complete Claim or who fail to file all necessary supporting documentation as required, are forever barred as specified in the Final Order and Judgment.

11.16  Plaintiff's Counsel and Merck shall approve the form, content and methods of claims and document submission to the Claims Administrator's website.  If the Parties are unable to agree on any form, content or methods of claim processing and document submission (but not decisions regarding individual claims), the Parties agree to submit such issues to the mediator for final resolution, and no appeal may be taken from such disposition or resolution.

11.17  The Claims Administrator shall provide reports to Plaintiff's Counsel and Merck regarding the implementation of the Notice Plan and the number, substance, and status of claims, claim audits, claim payments, and claim processing expenses, periodically and upon request.  The Claims Administrator shall not have any ex parte communications with either Plaintiff's Counsel or Merck's representatives without the other being present (in person or telephonically).

## 12.   INDEMNITY, LIENS AND TAXES

12.1    Merck agrees not to assert and waives any right to seek indemnity or other recovery (whether available to Merck by contract, equity or law) from any third-party payor, including but not limited to private insurers, Medicare or Medicaid, that Merck has settled with or in the future does settle with where those third-party payors paid for part of any Settlement Class Member's Vioxx prescription or Post-Withdrawal Medical Consultation.  Merck further waives any right of subrogation or any other right belonging to Merck to recover back any settlement amount paid or made available to any Settlement Class Member by virtue of its settlement with any other party.  The amounts made available and paid to Settlement Class Members are free and clear of any encumbrances now held or later acquired by Merck.

12.2    It is each Settlement Class Member's responsibility to pay any and all valid and enforceable liens, reimbursement claims, or encumbrances held or asserted by any private or governmental lien holders.  Plaintiff and each Class Member on their own behalf, further understand and agree to indemnify, hold harmless and defend the Released Persons from all claims by any state or other government body, employer, attorney, insurer, and/or any other entity for all past, present and future liens or claims asserting a right of subrogation, right of indemnity, right of reimbursement or other such right for amounts paid or to be paid in consideration for the release of the Released Claims by such Class Member, including any reimbursement claims pursuant to the Medicare Secondary Payer statute (42 U.S.C. §1395y(b)(2)), and any regulations promulgated pursuant thereby.

18

12.3    With respect to reporting under Section 111 of the Medicare, Medicaid and SCHIP Extension Act of 2007 ("MMSEA") and any regulations promulgated pursuant thereby, where if applicable, each Class Member who is identified as being Medicare enrolled, and to or for whom a payment is to be made that exceeds applicable threshold amounts such that mandatory insurer reporting applies within the meaning of the MMSEA ("Reportable Medicare Enrolled Class Members"), warrants and represents as to the accuracy of information provided as part of such reporting obligations of Merck (or its Responsible Reporting Entity).

12.4    The Claims Administrator will obtain from Class Members to or for whom a payment is to be made that exceeds applicable threshold amounts, and those Class Members shall provide, information necessary to (1) determine their Medicare status for reporting purposes, and (2) make any required report of such claim pursuant to MMSEA, if applicable, prior to the payment of such claim.  The Claims Administrator shall provide such information to Merck. The Claims Administrator shall make any such reports pursuant to Section 111 of MMSEA due to any payments to Reportable Medicare Enrolled Class Members under this Settlement.

12.5    If any private or governmental lien claims, reimbursement claims, or encumbrances of any kind are asserted, the Parties and their counsel agree they will not support or otherwise encourage in any fashion whatsoever any such claims or assertions by such private or governmental entities.  Nothing in this paragraph shall preclude Merck from complying with any governmental directive, interpretation, or guidance as required by law

12.6    Plaintiff and each Class Member on their own behalf, further understand and agree that each Class Member is responsible for any tax consequences to each such Class Member arising from, related to, or in any way connected with the relief afforded to each such Class Member under the Settlement.

13.    **CONTINUING JURISDICTION**

13.1    The Court shall retain jurisdiction over this Case, the Claims Administrator, the Common Fund, the Common Fund Escrow Agreement, the Preliminary Settlement Agreement, the Notice Agent, the Final Order and Judgment, the Class Members, the Plaintiff, and Merck for the purpose of administering, supervising, construing and enforcing the Settlement Agreement and the Final Order and Judgment.

14.    **FEES AND EXPENSES OF CLASS COUNSEL AND OTHER COUNSEL**

14.1    Counsel for the Settlement Class, and any other counsel with a basis to seek the payment of fees and litigation expenses incurred in connection with the litigation of the consumer claims and related putative

**Vioxx MDL Consumer Settlement Agreement**

consumer class action cases involving Vioxx, may apply to the Court for an award of fees and expenses to be paid from the Common Fund in a total aggregate amount for all such counsel not to exceed 32% of the maximum of up to $23 million Settlement Amount (or an aggregate maximum amount of up to $7,360,000).  Merck agrees not to oppose an application for fees and litigation expenses consistent with that limitation.  However, Merck reserves the right to oppose any application for fees and litigation expenses that is not consistent with that limitation and to appeal any award of fees and litigation expenses that exceed that limitation.  The payment of class notice and other administrative expenses of the Settlement pursuant to Section 2.5 of this Agreement are not included in the fees and litigation expenses subject to the 32% maximum set forth in this Section. The actual award of fees and litigation expenses to Class Counsel or to any other counsel shall be made by the Court following an open and transparent process, including a hearing before the Court open to the public and all Class Members.

14.2    If the Effective Date does not occur, no fees and expenses will be paid to any Class Counsel or other counsel from the Common Fund or by Merck.

14.3    Neither the Common Fund nor Merck is responsible for any fees or expenses of any other counsel retained by Class Members.  Class Members are solely responsible for such fees and expenses.

## 15.    RIGHTS OF WITHDRAWAL

15.1    If this Agreement is not approved by the Court as submitted or the Settlement is terminated or fails to become effective in accordance with the terms of this Agreement, the Settling Parties will be restored to their respective positions in the Litigation as of the day preceding the date of this Agreement.

15.2    Merck shall have the right, but not the obligation, to withdraw from the settlement and terminate this Settlement Agreement if the number of Class Members who properly and timely exercise their right under this Agreement to exclude themselves from the Class or opt out exceeds 1,000 in accordance with Section 15.3 below.

15.3    In the event that Merck wishes to exercise its right to terminate the Settlement Agreement under this Section 15 because the number of the Class Members who excluded themselves from the Settlement Class is unsatisfactory, Merck must notify the other Party in writing, within seven (7) days after receipt of the Notice Agent's final report on the number and identity of those Class Members who excluded themselves from the Settlement Class, of Merck's intention to withdraw from the settlement and terminate this Agreement.

15.4    In the event that the Settlement is not approved, as submitted, does not reach the Effective Date, or otherwise is terminated pursuant to the terms of this Agreement, then the terms and provisions of this Agreement

will have no further force or effect with respect to the Parties and will not be used in this Litigation or in any other proceeding for any purpose, and any Judgment or order entered by the Court in accordance with the terms of this Agreement, including any order to certify the Class, will be vacated, *nunc pro tunc*, and the status of the litigation shall be as it was prior to the execution of the Agreement.

## 16.   COMMUNICATIONS REGARDING SETTLEMENT

16.1   The Parties shall exchange drafts prior to issuing any press release announcing the Settlement Agreement and shall only issue such press releases upon approval by the opposing party—and such approval shall not be unreasonably withheld.   Any press release shall be limited to announcing the settlement and describing the terms thereof.

16.2   The Parties or their counsel may make additional disclosures to comply with applicable law or existing contract, or to obtain or defend approval of the Settlement or Application for Attorney's Fees and Expenses or to respond to any objection or appeal of Final Approval of the Settlement or Application for Attorney's Fees and Expenses.  The Parties or their counsel may post the agreed-upon press release on their respective websites.  Neither the Parties nor their counsel may make any other public statement regarding this Settlement Agreement or Application for Attorneys' Fees and Expenses, except (a) Class Counsel may, in response to press inquiries, direct the press to the press release or the Class Settlement Website, and may otherwise communicate with Class Members when contacted by Class Members regarding the substance of the Settlement or Application for Attorneys' Fees and Expenses, and (b) Merck or its outside counsel may, in response to press, investor, or analyst inquiries, direct them to any approved press release.

16.3   No Party, Class Counsel, or Merck's Counsel, or anyone else acting on behalf of any of them shall make any public statement disparaging any Party or their counsel, or this Settlement Agreement or any application for attorneys' fees and expenses complying with the terms of this Agreement.

## 17.   OTHER OBLIGATIONS, MISCELLANEOUS

17.1   The Parties shall use their best efforts to perform all terms of this Agreement.

17.2   Neither this Agreement nor the Settlement, nor any act performed or document executed pursuant to or in furtherance of this Agreement or the Settlement, nor any negotiations leading to this Agreement, is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any Released Claims, or of any fault, omission, wrongdoing or liability of Merck in any civil, criminal, or administrative proceeding in any court, administrative agency or other tribunal.  The Released Parties may file this Agreement and/or the Judgment in any action that may be brought against them in order to support any

defense or counterclaim, including without limitation those based on principles of *res judicata*, collateral estoppel, release, good-faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

17.3    All agreements made and orders entered during the course of the MDL, this Case and the Related Actions relating to the confidentiality of information will survive this Agreement.

17.4    All of the Exhibits to this Agreement are material and integral parts hereof and are fully incorporated herein by this reference.

17.5    This Agreement, including attached Exhibits, constitutes the entire agreement by and among the Parties with regard to the subject matter of this Agreement, and shall supersede and render null and void any previous agreements, written or oral, between the Parties with respect to the subject matter of this Agreement and/or the settlement of these claims.

17.6    This Agreement may not be modified or amended except in writing signed by all Parties.

17.7    Any notice, request, instruction, or other document to be given by any Party to this Agreement to any other Party to this Agreement, other than class notification, shall be in writing and delivered by messenger or sent by an overnight delivery service, with a courtesy copy via electronic mail to:

17.7.1.1    If to Plaintiff and Class:

Co-Lead Class Settlement Counsel:

Russ Herman
Herman, Herman & Katz, LLC
820 O'Keefe Avenue
New Orleans, LA 70113
Email: RHERMAN@hhkc.com

-and-

Elizabeth J. Cabraser
Lieff Cabraser Heimann & Bertstein
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Email:  ECABRASER@lchb.com

**Vioxx MDL Consumer Settlement Agreement**

If to Merck:

Bruce N. Kuhlik
Senior Vice President and General Counsel
Merck, Sharp & Dohme, Corp.
One Merck Drive
P.O. Box 100 (WS3A-15)
Whitehouse Station, NJ 08889-0100
Email: Bruce_Kuhlik@Merck.com

-and-

John H. Beisner, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
1440 New York Avenue, N.W.
Washington, D.C.  20005
Email: John.Beisner@skadden.com

17.8    All applications for Court approval or Court orders required under this Agreement shall be made on notice to all signatories of this Agreement.

17.9    This Agreement is the result of a mutual negotiation between counsel for the Parties.  Any ambiguity in this Agreement shall not presumptively be construed in favor of or against any Party as the drafter of the Agreement.

17.10   The provisions of this Agreement are not severable.

17.11   All the terms of this Agreement shall be governed by and interpreted according to the laws of the State of New York, except to the extent federal law applies.

17.12   All representations, warranties and covenants set forth in this Agreement shall be deemed continuing and shall survive the date of this Agreement, or termination or expiration of this Agreement.

17.13   Each of the Parties agrees, without further consideration, and as part of finalizing the settlement hereunder, to execute and deliver such other documents and take such other actions that may be necessary to consummate and effectuate the subject matter and purpose of this Agreement.

17.14   This Agreement may be executed in one or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same agreement, provided that this Agreement shall not be complete until it has been signed by everyone for whom a signature line has been provided.

**Vioxx MDL Consumer Settlement Agreement**

        17.15  This Agreement and any amendments thereto, to the extent signed and delivered by means of a facsimile machine or electronic scan (including in the form of an Adobe Acrobat PDF file format), shall be treated in all manner and respects as an original agreement and shall be considered to have the same binding legal effect as if it were the original signed version thereof delivered in person.

        **IN WITNESS WHEREOF**, the Parties have executed this Agreement and have caused this Agreement to be executed by their duly authorized attorneys.

**PLAINTIFF'S REPRESENTATIVE on behalf of herself and the putative Class**

Dated:_____      _____

                                            Sherrill Herke

**PLAINTIFF'S COUNSEL**

**Herman, Herman & Katz LLC**

Dated:_____      By: _____

                                            Russ Herman
                                          Herman, Herman & Katz, LLC
                                          *Co-Lead Class Settlement Counsel*

**Lieff Cabraser Heimann & Bertstein**

Dated:_____      By:_____

                                            Elizabeth J. Cabraser
                                          Lieff Cabraser Heimann & Bertstein
                                          *Co-Lead Class Settlement Counsel*

**Vioxx MDL Consumer Settlement Agreement**

**MERCK, SHARP & DOHME, CORP.**

Dated:_____                    By:_____
                                              Bruce N. Kuhlik
                                              Senior Vice President and General Counsel
                                              Merck, Sharp & Dohme, Corp.

**DEFENDANT'S COUNSEL**

Dated:_____                          _____
                                              Doug R. Marvin, Esq.
                                              Williams & Connolly LLP
                                              Counsel for Merck, Sharp & Dohme, Corp.

Dated:_____                          _____
                                              John H. Beisner, Esq.
                                              Skadden, Arps, Slate, Meagher & Flom LLP
                                              Counsel for Merck, Sharp & Dohme, Corp.

**Vioxx MDL Consumer Settlement Agreement**

## <u>LIST OF EXHIBITS</u>

Exhibit A          Proposed Preliminary Approval and Class Certification Order

Exhibit B          Proof of Claim Form

Exhibit C          List of Related Actions

Exhibit D          Publication Version of Notice of Proposed Class Certification, Proposed Settlement of Class Action, Opportunity for Exclusion from Class, Deadline for Filing Claims within the Class, and Date of Court Hearing

Exhibit E          OnLine/Upon Request Mailed Version of Notice of Proposed Class Certification, Proposed Settlement of Class Action, Opportunity for Exclusion from Class, Deadline for Filing Claims within the Class, and Date of Court Hearing

Exhibit F          Proposed Form of Final Order and Judgment

**Exhibit A to Vioxx MDL Consumer Settlement Agreement**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

---------------------------------------------------------------- X
In Re: VIOXX PRODUCTS LIABILITY LITIGATION :   MDL No. 1657
                                                                :
---------------------------------------------------------------- :   SECTION L
SHERRILL HERKE, individually and on behalf of a    X
proposed class of those similarly situated,
                                                                     JUDGE FALLON
                                                                :   MAG. JUDGE KNOWLES
                                            Plaintiffs,      :
                                                                :
v.                                                            :   No. 2:09-cv-07218
                                                                :
MERCK & CO., INC.,                                     X

                                            Defendant.
---------------------------------------------------------------

**ORDER FOR PRELIMINARY CERTIFICATION OF A CLASS FOR
PURPOSES OF SETTLEMENT AND PRELIMINARY APPROVAL OF CLASS
SETTLEMENT, CLASS NOTICE AND RELATED MATTERS**

        Upon considering the Joint Motion for Preliminary Approval of Class Settlement,

Class Notice and Related Matters (the "Joint Motion"), filed by plaintiffs on behalf of a

putative class of consumers and defendant Merck, Sharp & Dohme, Corp. f/k/a Merck &

Co., Inc. ("Merck"), seeking preliminary approval of the Proposed Settlement Agreement,

together with all of its Exhibits attached thereto, dated July __, 2013 (the "Proposed

Settlement" attached hereto as Exhibit A[1]) and the Plaintiffs' Motion for Certification of

a Class for Purposes of Settlement (the "Certification Motion"), filed by plaintiffs, and on

considering the record of these proceedings, the representations, argument, and

---
[1] Unless otherwise set forth herein, capitalized terms used in this Order shall have the
same meaning as those defined in the Proposed Settlement.

recommendation of counsel for the moving parties, and the requirements of law, the Court finds that: (1) this Court has jurisdiction over the subject matter and parties to this proceeding; (2) the proposed Class meets the requirements of Rule 23 and should be certified on a preliminary basis for purposes of settlement only and the persons and entities set forth below should be appointed class representatives; (3) the Proposed Settlement is the result of arm's-length negotiations between the parties; (4) the Proposed Settlement is not the result of collusion; (5) the Proposed Settlement bears a probable, reasonable relationship to the claims alleged by the plaintiffs and the litigation risks of both plaintiffs and Merck; (6) the Proposed Settlement is within the range of possible judicial approval; (7) the proposed class notice substantially in the forms attached hereto as Exhibit ___ to the Proposed Settlement (the "Notice") and the proposed notice plan will provide the best practicable notice to the putative Class under the circumstances, satisfying the requirements of Rule 23 and due process; (8) reasonable cause exists to conduct a hearing, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure to consider whether the Proposed Settlement is fair, reasonable and adequate and whether it should be approved pursuant to Rule 23 of the Federal Rules of Civil Procedure; and (9) the other related matters pertinent to the preliminary approval of the Proposed Settlement should also be approved.

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that:

1.     The Court has jurisdiction over the subject matter and parties to this proceeding pursuant to 28 U.S.C. § 1332.

2.     Venue is proper in this district.

3.      The Court finds, on a preliminary basis for settlement purposes only, that the Rule

23 factors are present, and that certification of the proposed Class as set forth

below is appropriate under Rule 23 and Rule 23(b)(3); in particular:

"Class" or "Settlement Class" means:

> All individual consumer purchasers of Vioxx in the United States (except
> members of the class previously certified by the Circuit Court of Jackson
> County, Missouri in the *Plubell* case with respect to purchases made while
> a resident of the State of Missouri) (the "Settlement Class"), except that
> the Settlement Class shall include only individuals who purchased Vioxx
> (by paying all or part of the purchase price) through September 30, 2004,
> when Vioxx was removed from the market.  For sake of clarity, the
> Settlement Class defined in the foregoing sentence includes, but is not
> limited to, all persons referenced in the foregoing sentence who also
> received a Post-Withdrawal Medical Consultation as defined below in
> Paragraph 1.13.  All other Vioxx purchasers (including any private or
> governmental third-party payors that may have paid all or part of the
> purchase price of Vioxx for use by individual consumers) are excluded.
> Also excluded are (a) all persons who have previously settled Vioxx-
> related claims, including all participants in the Vioxx Resolution Program,
> (b) any of Merck's directors, officers, employees, or agents, (c) the Court,
> the judge's immediate family members, and the staff of the Court assigned
> to work on MDL 1657, and (d) those individuals who timely and validly
> exclude themselves from the Class by means of the Opt Out Procedure.

4.      The following are the "Released Claims" as defined in the Proposed Settlement

Agreement and the related definition of Post-Withdrawal Medical Consultation:

> "Released Claim" means any and all known or unknown economic injury
> claims, demands, actions, suits, causes of action, damages whenever
> incurred whether compensatory or exemplary, liabilities of any nature or
> under any theory or statute whatsoever, including costs, expenses,
> penalties and attorneys' fees, in law or equity, that any Class Member who
> has not timely excluded themselves from the Class, whether or not they
> object to the settlement, ever had or now has, directly, representatively,
> derivatively or in any capacity, arising out of or in any way connected
> with the purchase of Vioxx in the United States (except for purchases
> made while a resident of the State of Missouri covered by the class

3

previously certified by the Circuit Court of Jackson County, Missouri in the *Plubell* case), including, but not limited to, (i) any and all expenditures of, or costs and losses incurred by, the Class Member in connection with a Post-Withdrawal Medical Consultation, including but not limited to, the costs of such medical consultation and Vioxx-related diagnostic testing, and (ii) the allegations contained in the MDL 1657 Purchase Claims Master Class Action Complaint dated August 1, 2005 and all Related Actions.  The Released Claims do not include any claims for personal injury or death or claims derivative of such claims, nor does this Settlement revive any such claims.

"Post-Withdrawal Medical Consultation" means any office visit to a licensed physician to obtain advice regarding the Class Member's own use of Vioxx and/or to discuss discontinuing the use of Vioxx and possible alternative treatments for that Class Member and that occurred following September 30, 2004, which is when Vioxx was withdrawn from the market, and prior to November 30, 2004.   Further, the term Post-Withdrawal Medical Consultation includes any reasonable and necessary diagnostic testing that is solely the result of the Class Member's use of Vioxx and recommended by the Class Member's physician at the Post-Withdrawal Medical Consultation, performed as a result of such recommendation, and occurred after September 30, 2004 but prior to November 30, 2004 ("Vioxx-related diagnostic testing").  However, the definition of Post Withdrawal Medical Consultation does not include any office visits or diagnostic testing occurring during the period from September 30, 2004 through November 30, 2004 that had been scheduled or recommended by the Class Member's physician or licensed prescriber prior to September 30, 2004.

5.    Specifically, the Court preliminarily finds for settlement purposes only that the proposed Class described above satisfy the following factors of Rule 23(a) and Rule 23(b)(3):

(a)    <u>Numerosity</u>:  In this case, many thousands of individuals have asserted claims or have potential claims.  Thus, the Rule 23(a)(1) numerosity requirement has been met.

(b)    <u>Commonality</u>:  Plaintiffs' claims are common in that they allege that Vioxx was overpriced because Merck allegedly failed to disclose its alleged cardiovascular risks.

(c)    <u>Typicality</u>:  The proposed class representatives' claims arise from the same course of conduct and share the substantially same legal theory, as do the claims of the putative Class members.  Furthermore, the proposed Class representatives will advance the interests of all class members.  The individual class representatives allege various causes of action for recovery of alleged economic harms arising from the purchase of Vioxx®.  The proposed class representatives' claims are typical of those of the proposed Class and satisfy Rule 23(a)(3).

(d)    <u>Adequacy</u>:  The proposed class representatives assert claims representative of the claims of the entire class.  As such, even though the claims may not be identical to every claim of every putative Class member, the proposed class representatives can adequately represent the putative Class.

The adequacy factor also considers Class Counsel.  In this case, Class Counsel regularly engage in complex litigation similar to the present case and have dedicated substantial resources to the prosecution of this matter.  The adequacy requirement is satisfied.

(e)    <u>Predominance</u>:  There is predominance.  Common issues include: (a) whether Vioxx® carries a risk of cardiovascular disease, and (b) whether Merck adequately disclosed the risks of Vioxx.  The resolution of these questions is relevant to essential elements of every Class member's claims.

(f)    <u>Superiority</u>:  A settlement class that will determine the issues common to all Class members and fix compensation for alleged economic injury is superior to thousands of trials that would risk disparate results for similarly situated people and entities.

6.    In the interest of clarity, the Court reiterates that the Court makes the above findings set forth in paragraph 5 regarding certification of the proposed Class only on a preliminary basis and only for the purposes of settlement.  The Court's preliminary findings regarding the class certification requirements of Rule 23(a) and Rule 23(b)(3) are subject to final certification at the fairness hearing.

7.    The Court appoints the following as class representative: Sherrill Herke.

8.    The Court preliminarily approves the Proposed Settlement, together with all of its Exhibits, attached hereto as Exhibit A, as being fair, reasonable and adequate,

entered into in good faith, free of collusion, and within the range of possible judicial approval, such that the terms and conditions shall be considered by the putative members of the Class (as defined in the Proposed Settlement).

9.      The Court approves the form and content of the Claim Form, substantially in the form attached as Exhibit B to the Proposed Settlement, and the procedure and proof required to establish a valid claim under the Proposed Settlement.

10.     The Court approves the form and content of the Notice for mailing and the abbreviated Notice for publication, substantially in the forms attached hereto as Exhibits D and E to the Proposed Settlement, as satisfying the requirements of Rule 23 and due process.

11.     The Court directs that Kinsella Media, LLC be confirmed to act as the Notice Agent (as defined in the Proposed Settlement) and directs the Notice Agent to disseminate the Notice pursuant to manner set forth in the Notice Plan submitted as Exhibit ___ of the Joint Motion, which satisfies the requirements of Rule 23 and due process.

12.     The Court approves of the appointment of Russ Herman of Herman, Herman & Katz, LLC and Elizabeth J. Cabraser of Lieff Cabraser Heimann & Bernstein as Co-Lead Settlement Class Counsel for the Class and who are collectively appointed "Class Counsel" for the Class.

13.     The Court directs that Brown Greer LLP be confirmed to act as the Claims Administrator (as defined in the Proposed Settlement) and directs the Claims

Administrator to perform the functions of the Claims Administrator as set forth in the Proposed Settlement.

14. The Court directs that the Claims Administrator receive any exclusion requests and Claim Forms submitted by members of the Class pending the final approval of the Proposed Settlement. The Court further directs that pending the Effective Date, the Claims Administrator may communicate with any Class members, counsel for Class Members, if any, Class Counsel and other counsel, concerning Class members' Proof of Claim Forms submitted pursuant to the terms of the Proposed Settlement. However, the Claims Administrator may not communicate with either party, Class Counsel and Merck's counsel, without representatives of both parties being present (personally or telephonically).

15. The exclusion or opt-out procedure set forth in the Proposed Settlement and in Exhibit E of the Proposed Settlement is approved, which directs that any Class Member wishing to be excluded from the Class must sign a written request to be excluded containing the information required to be set forth in the Notice, and this exclusion request must be mailed to the "Vioxx Consumer Claims Administrator, P.O. Box ___, City, State, Zip" and be postmarked (no metered postmarks) on or before _____.

16. The Claims Administrator will provide timely reports to counsel for the Parties of the number and identity of those members of the Class who have requested exclusion from the Class.

7

17.    The Court directs that Class Counsel may assist members of the Class in filing Proof of Claim Forms in accordance with the Proposed Settlement pending the final approval of the Proposed Settlement, and Class Counsel may accept and respond to inquiries by members of the Class wishing to speak with Class Counsel pending the final approval of the Proposed Settlement.

18.    The Court directs that a hearing be scheduled for _____ (the "Fairness Hearing") to assist the Court in determining whether certification is appropriate and the Proposed Settlement is fair, reasonable and adequate.  Objectors to the Proposed Settlement may be heard at the Fairness Hearing; however, no objector shall be heard and no papers or briefs submitted will be accepted or considered by the Court unless on or before _____, any such objector:  (1) has filed with the Clerk of the Court <u>in writing</u> a notice of any such objector's intention to appear personally, or, if such objector intends to appear by counsel, such counsel files a notice of appearance, (2) such objector personally or by counsel, to any of the applications before the Court, submits a written statement describing in full the basis for such objector's opposition, and attaches any supporting documentation and a list of any and all witnesses or experts whom such objector shall present to the Court, and (3) has served, on or before _____, copies of such notice(s), statement(s), documentation, and list(s) together with copies of any other papers or brief(s) that objector files with the Court or wishes the Court to consider at the Fairness Hearing, upon:  (i) Russ Herman of Herman, Herman & Katz, LLC, Co-Lead Settlement Class Counsel for Plaintiffs, at 820 O'Keefe Avenue, New Orleans, LA 70113, and (ii) Douglas R.

Marvin, Esq. of Williams & Connolly LLP, Co-Counsel for Merck, at 725 Twelfth Street, N.W., Washington, D.C. 20005.   Objections will be deemed waived if the procedures for objecting to the Proposed Settlement are not followed.

19.   The Court further directs and approves the establishment and maintenance of a Common Fund Escrow Account pursuant to the terms of the Proposed Settlement pending a decision on final approval, which Common Fund Escrow Account shall be under the jurisdiction of this Court and which is approved as a Qualified Settlement Fund pursuant to Treas. Reg. §1.468B-1.

20.   Prosecution of this litigation shall be stayed pending the settlement proceedings and further Orders of the Court.

21.   Those Related Actions that are identified on Exhibit C to the Proposed Settlement as being a part of the docket of this MDL No. 1657 also shall be stayed pending the settlement proceedings and further Orders of the Court.

22.   The parties have reserved all claims and defenses should the Proposed Settlement not become final for whatever reason.

23.   Merck has reserved the right to contest certification of the class *de novo* should the Proposed Settlement not become final for whatever reason.  If the Proposed Settlement does not become final, the conditional certification of the class will be null and void and the litigation will proceed as if there had been no settlement, conditional certification or notice.

DATED: New Orleans, Louisiana
This _____, day of July, 2013

_____
Honorable Eldon E. Fallon, Judge
United States District Court

**<u>Exhibits</u>**

Exhibit A                                   Proposed Settlement Agreement with Exhibits

**Exhibit B to Vioxx MDL Consumer Settlement Agreement**

<table>
<tr><td>

**Must Be Postmarked No Later Than Month 00, 2013**

</td><td>

Vioxx Consumer Claims Administrator
P.O. Box 0000
City, ST 00000

</td></tr>
</table>

### CONSUMER VIOXX SETTLEMENT CLAIM FORM

If you wish to submit a claim for a Settlement payment, you need to provide the information requested below. More information is available at the official Settlement website, www.<SettlementWebsite>.com or call 1-800-000-000. Please print clearly in blue or black ink. You will need to submit a Claim Form by **Month 00, 2013** to get benefits.  You can submit a Claim Form online or by mail.

### 1. CLASS MEMBER INFORMATION.

Name of Class Member: _____

Address: _____City/Town_____State/Zip_____

Telephone Number: (___) _____ Email Address (optional):_____ Date of Birth (MM/DD/YY): _____

If you are making a claim as a legal representative of another person, provide your name and contact information here:

_____

If you have your own attorney for this claim, provide the attorney's name and contact information here:

_____

### 2. PRESCRIBER INFORMATION.

Name and address of the doctor, hospital, medical facility, or pharmacy that prescribed or dispensed Vioxx to you:

_____

_____

### 3. CLAIM PAYMENT OPTIONS.

Choose one of the two claim payment options below (Option 1 or Option 2) and check the boxes to indicate the proof of purchase documentation you will submit.  You must submit the required documentation with this form for your claim to be valid.

☐   **Option 1 Claim:**

**Option 1a - Reimbursement of Out-of-Pocket Prescription Costs for Vioxx (Vioxx Proof of Payment)**

To make a claim under Option 1, you must provide **one** of the following forms of proof showing you were prescribed Vioxx and that you paid out-of-pocket for your prescriptions.  Check the form(s) of proof you are submitting:

☐   Receipt of Payment          I am submitting receipt(s), cancelled check(s), or credit card statement(s) showing I paid out-of-pocket for Vioxx for my personal or family use for which I was not reimbursed.

☐   Insurer EOB          I am submitting an explanation of benefits from my insurer, Medicare, or Medicaid that shows Vioxx was prescribed and the amount of co-payments I paid.

☐   Pharmacy Record          I am submitting records from my pharmacy, PBM (pharmacy benefit manager), or similar entity showing I was prescribed Vioxx and the amount of my unreimbursed

out-of-pocket costs in buying Vioxx.

### Option 1b - Reimbursement for Post-Withdrawal Medical Consultation

If, as part of an Option 1 Claim, you also want to be reimbursed up to $75.00 in the aggregate for costs or losses for any and all Post-Withdrawal Medical Consultations, you must attach: (1) proof of the medical consultation, (2) proof of the amount of the cost or loss claimed, and (3) a statement that the medical consultation or diagnostic testing occurring between September 30, 2004 and November 30, 2004 had not been scheduled or recommended before September 30, 2004.  If the physician for the Post-Withdrawal Medical Consultation was different than the prescriber listed above, provide the name and address of the physician:

_____

_____

### Total Claim Amount**

The total amount of out-of-pocket costs and losses that I am claiming under Option 1a is: $_____.

The total amount of out-of-pocket costs and losses that I am claiming under Option 1b is: $_____.  The
    recovery under Option 1b cannot be greater than $75 regardless of the costs or losses.

**If you are making a claim for over $600, you will be sent an IRS W-9 Form.  You must complete and return this form to the Claims Administrator before your claim can be paid.

☐   **Option 2 – One Time Payment of up to $50 (With Alternative Proof of Prescription of Vioxx)**

To make a claim under Option 2, you must provide **one** of the following forms of proof showing you were prescribed Vioxx.  Check the form(s) of proof you are submitting:

☐   Medical Record       I am submitting a medical record showing that I was prescribed Vioxx by the health care provider listed in Section 2.

☐   Doctor's Letter         I am submitting a letter from my doctor, listed in Section 2, saying that he or she prescribed Vioxx to me and the approximate dates of my prescribed usage.

☐   Prescription Bottle     I am submitting an empty prescription bottle and label showing that I filled a prescription of Vioxx that was prescribed to me by the doctor listed in Section 2.

☐   Sworn Statement       By checking this box and signing this Claim Form, I am declaring that I purchased Vioxx using personal or family funds and that the other forms of proof of payment or proof of prescription are not available.

### 4. SIGN HIPPA RELEASE.

You need to sign a HIPPA authorization that permits the Claims Administrator to verify your Vioxx prescriptions and payments.  This form is attached.

**5. SIGN AND DATE YOUR CLAIM FORM.**

I declare under penalty of perjury that the information in this Claim Form and attached documentation are true and correct to the best of my knowledge.

_____

*Signature*

_____        _____/_____/_____

*Print Name*                                                                    *Month/Day/Year*

Mailing Address:  _____ City/Town _____ State/Zip _____

**Claims may be audited and any false or fraudulent claim is subject to prosecution.**

**6. MAIL YOUR CLAIM FORM.**

This Claim Form must be postmarked by **Month 00, 2013** and mailed to:

Vioxx Claims Administrator
P.O. Box 0000, City
ST 00000

**Remember to include your signed HIPPA form and all required documentation.**

**Exhibit C to Vioxx MDL Consumer Settlement Agreement**

| CASE NAME | MDL 1657 DOCKET NUMBER[1] |
|---|---|
| Abraham, Josefa | 2:05-cv-00445 |
| Aguero, Brenda | 2:05-cv-00504 |
| Alexander, Betty A. | 2:05-cv-00059 |
| Anderson, Christie | 2:05-cv-04850 |
| Archuleta, Patricia E. | 2:05-cv-3159 |
| Bell, Yvonne | 2:05-cv-02110 |
| Benoit, Marilyn | 2:05-cv-01000 |
| Bilbrey, Patricia | 2:05-cv-00456 |
| Biondillo, Michelle | 2:05-cv-02270 |
| Cain, Alex | 2:05-cv-00505 |
| Cathey, Barbara | 2:05-cv-01126 |
| Cheeseman, Sara | 2:05-cv-00565 |
| Cooke, Mary | 2:05-cv-01735 |
| Dalgo, Sheila | 2:05-cv-05319 |
| Deckowitz, Susan | 2:05-cv-02102 |
| Denton, Louise | 2:05-cv-00357 |
| Fairchild, Paul L. | 2:05-cv-01012 |
| Fontanilles, Clara | 2:05-cv-00447 |
| Franck, Barbara | 2:08-cv-01018 |
| Hoffman, Amy Long | 2:08-cv-01463 |
| Ivory, Anita | 2:05-cv-00453 |
| Kantner, Donna | No. 49D060411PL002185 Marion County Circuit Court (Indiana) |
| Kinghorn, Calvin | 2:05-cv-02912 |
| Lee, Tommy | 2:05-cv-02584 |
| Lough, William David | 2:05-cv-03820 |
| Magnifico, Mary Ellen | 2:05-cv-03819 |
| McCrerey, Rita | 2:05-cv-01253 |
| McNichols, James | 2:05-cv-01118 |

[1] Unless otherwise indicated.

**Exhibit C to Vioxx MDL Consumer Settlement Agreement**

| CASE NAME | MDL 1657 DOCKET NUMBER[1] |
|---|---|
| Oswald, Constance | 2:05-cv-00452 |
| Pace, Debbie | 2:05-cv-01078 |
| Perkins, Janice | 2:05-cv-00499 |
| Person, Douglas M. | 2:06-cv-01007 |
| Petrasek, James | 2:05-cv-05438 |
| Price, Terry | 2:05-cv-04618 |
| Prince, Dora | 2:05-cv-04614 |
| Ratliff, James | 04-CI-01493 Pike County Circuit Court, Kentucky |
| Rohr, Todd | 2:05-cv-05369 |
| Ross, Jason | 2:05-cv-04856 |
| Seitz, Christine | 2:05-cv-00749 |
| Strong, Virginia | 2:05-cv-01247 |
| Sumner, Gerald | 2:05-cv-02563 |
| Waitt, Robert K. | 2:05-cv-05318 |
| Walker, Kenneth | 2:08-cv-04148 |
| Wallace, Sheryl Lynn | 2:05-cv-00835 |
| White, Claiborne | 2:05-cv-01656 |
| Williams, Melvin | 2:05-cv-01006 |
| Williams, Quan | 2:08-cv-00159 |
| Wilson, Carol | 2:05-cv-02035 |
| Wright, Edward W. | 2:05-cv-00980 |
| Yohe, Ken | 2:05-cv-01174 |
| Young, Wayne | 2:05-cv-02560 |

**Exhibit D to Vioxx MDL Consumer Settlement Agreement**

Legal Notice

# If You Paid for Vioxx Before October 1, 2004

## You Could Get Up to $50 or More from a Settlement

A Settlement has been reached with Merck Sharp & Dohme Corp. ("Merck") about the prescription anti-inflammatory drug, Vioxx. This proposed class action Settlement will pay consumers who paid out-of-pocket expenses for Vioxx (that were not reimbursed).

**What is the Lawsuit About?**

This lawsuit claims that Merck falsely advertised the drug Vioxx as having greater benefits than less expensive pain medicines, which contradicted the drug's Food and Drug Administration approved labeling. Merck denies any liability for the claims in the lawsuit and admits no wrongdoing by agreeing to this settlement.  The Court did not decide which side was right.   Instead, the parties decided to settle.

The Settlement does not release personal injury claims.

**Who's Included?**

Generally, you are included if you paid (or were required to pay) for all or part of the purchase price of Vioxx (for personal or family use) before October 1, 2004.  If you settled a Vioxx personal injury claim you are not included in the Settlement.  Similarly, if you were a Missouri resident when you purchased Vioxx, you are not included in the Settlement.   The full Class definition is included in the long form Notice that is available on the settlement website.

**What Can You Get?**

Merck will pay up to $23 million to settle the lawsuit. All costs of the Claims Administrator to administer the Settlement, the cost to inform people about the Settlement, and the attorney's fees and costs will be paid out of this Settlement Amount.  Class Members who submit valid claims can get: (1) up to $50 in cash or (2) reimbursement for up to the actual out-of-pocket expenses paid for Vioxx and up to $75 for certain other costs and losses.  Payments will vary depending upon several factors such as the number of claims submitted, the amounts claimed, the proof submitted, and other adjustments and deductions.

**How to Make a Claim for Payment?**

You must submit a Claim Form by **Month 00, 2013** to get a payment from the Settlement. The Claim Form is available at www.VioxxSettlement.com or by calling 1-800-547-9360. The Claim Form can be submitted online or by mail.

**Your Other Rights.**

If you do nothing, your rights will be affected. If you do not want to be legally bound by the Settlement, you must exclude yourself from the Class by **Month 00, 2013** or you will not be able to sue Merck for any claim relating to the lawsuit. If you stay in the Class, you may object to the Settlement by **Month 00, 2013**, but will be bound by the terms of the Settlement if approved by the Court.

The Court will hold a hearing on **Month 00, 2013** to consider whether to approve the Settlement and a request for attorneys' fees and expenses up to 32% of the maximum $20 million Settlement Amount or up to $6.4 million. You can appear at the hearing, but you don't have to. You can hire your own attorney, at your own expense, to appear or speak for you at the hearing.

**For complete information and a Claim Form:**
**Visit: www.VioxxSettlement.com**
**Call: 1-800-547-9360**

# If You Paid for Vioxx Before October 1, 2004,

## You May Be Able To Get Money Back

*A Federal Court authorized this Notice.  It is not a solicitation from a lawyer.  You are not being sued.*
*The Court expresses no views on the merits of Plaintiffs' claims.*

- There is a proposed Settlement with Merck Sharp & Dohme Corp., formerly known as Merck & Co., ("Merck") about the prescription anti-inflammatory drug, Vioxx.  This proposed class action Settlement is subject to court approval.

- This lawsuit claims that Merck falsely advertised the drug Vioxx as having greater benefits than less expensive pain medicines, which contradicted the drug's Food and Drug Administration approved labeling.  This lawsuit does not include claims for personal injuries or wrongful death.

- Merck has agreed to pay a total of up to $23 million to settle this lawsuit, including all costs and attorney's fees.  Merck denies any liability for the claims in the lawsuit, but it is settling to avoid the costs and distraction of further litigation.

***Your Legal Rights Are Affected Even If You Do Not Act.***
***Read This Notice Carefully.***

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **DO NOTHING** | You will not receive a payment from the Settlement and you will give up your rights to sue Merck about the claims in this case.  *See* Question 10. |
| **FILE A CLAIM** | This is the only way for you to receive a payment from the Settlement.  *See* Question 8. |
| **EXCLUDE YOURSELF** | Get no payment.  This is the only option that allows you to keep your right to sue Merck on your own about the claims in the lawsuit.  *See* Question 13. |
| **OBJECT OR COMMENT** | Write to the Court about why you don't like the Settlement.  *See* Question 14. |
| **GO TO A HEARING** | Ask to speak in Court about the Settlement.  *See* Question 20. |

| WHAT THIS NOTICE CONTAINS |
|---|

**BASIC INFORMATION**…………………………………………………………………..………**PAGE 3**
1.      Why did I get this Notice?
2.      What is the lawsuit about?
3.      What is a class action?
4.      Why is there a proposed Settlement?
5.      Who is part of the Class?
6.      Who is excluded from the Class?
7.      What about other cases involving Vioxx?

**BENEFITS OF THE SETTLEMENT — WHAT YOU GET**…………..………………..……………..**PAGE 4**
8.      What does the Settlement provide?
9.      How do I file a claim?
10.     How much will I get?

**REMAINING IN THE SETTLEMENT**………………………………………………………**PAGE 5**
11.     What claims am I giving up?
12.     What entities am I releasing?

**EXCLUSION FROM THE SETTLEMENT**………………………………………………**PAGE 5**
13.     How do I exclude myself from the Settlement?

**OBJECTING TO OR COMMENTING ON THE SETTLEMENT**………………………………**PAGE 6**
14.     May I object to or comment on the Settlement?
15.     What is the difference between objecting and excluding myself from the Settlement?

**THE LAWYERS REPRESENTING YOU**……………………………………………...............**PAGE 6**
16.     Do I have a lawyer in the case?
17.     How will the lawyers be paid?

**THE COURT'S FINAL APPROVAL HEARING**………………………………………………**PAGE 7**
18.     When and where will the Court decide whether to approve the Settlement?
19.     Do I have to attend the Final Approval Hearing?
20.     May I speak at the Final Approval Hearing?

**GETTING MORE INFORMATION**………………………………………………………**PAGE 8**
21.     How do I get more information?

## BASIC INFORMATION

### 1. Why did I get this Notice?

You received this Notice because you are a consumer who may have paid some or the entire purchase price for the prescription anti-inflammatory drug, Vioxx.  You may also have requested this Notice after seeing the Summary Notice in a publication.

This Notice explains:

- What the lawsuit and Settlement are about.
- What the lawsuit claims and what Merck says about the claims.
- Who is affected by the Settlement.
- Who represents the Class in the lawsuit.
- What your legal rights and choices are.
- How and by when you need to act.

Judge Eldon E. Fallon of the United States District Court for the Eastern District of Louisiana is overseeing this case.  The case is known as *In re Vioxx Products Liability Litigation,* No. 05-cv-01657.  The people who sued are called the Plaintiffs, and the company they sued, Merck Sharp & Dohme Corp. ("Merck"), is the Defendant.

### 2. What is this lawsuit about?

Vioxx was approved for marketing and sale in the United States on May 20, 1999, and was withdrawn from the market on September 30, 2004.

The lawsuit claims that:

- Merck falsely marketed Vioxx as having benefits greater than "non-selective" Non-Steroidal Anti-Inflammatory Drugs (NSAIDs) like ibuprofen or naproxen, when no such benefits had been established; and
- The marketing of Vioxx was inconsistent with its FDA-approved labels.

It also claims that this allegedly false marketing caused consumers to pay a greater price for Vioxx instead of less expensive alternative NSAIDs (or no medication at all).

Merck denies any liability for the claims in the lawsuit and makes no admissions of any wrongdoing by agreeing to this Settlement.  Both sides have agreed to settle this lawsuit to avoid the costs and distraction of continuing the lawsuit.

### 3. What is a class action?

In a class action lawsuit, one or more people called "class representatives" sue on behalf of people who have similar claims.  The people together are a "class" or "class members."  In a class action, the Court resolves the issues for all Class Members, either in trial or in settlement, except for those who exclude themselves from the Class.  A court must determine if a lawsuit or a settlement should proceed as a class action.  This is a class action settlement and will settle the lawsuit for everyone in the class, if approved by the Court.

Sometimes, the parties may settle without a trial.  The Parties here have agreed to a proposed Settlement that includes a national Class of consumers who paid some or the entire purchase price of this drug (except for those who were living in Missouri at the time they purchased Vioxx).

**4. Why is there a Settlement?**

A proposed settlement is an agreement between a plaintiff and a defendant following extended negotiations. Settlements conclude litigation but this does not mean that the court has ruled in favor of the plaintiff or the defendant. The Settlement allows both parties to avoid the cost and risk of a trial, and permits both parties to establish a just, fair and final resolution that is best for all involved. The class representatives and their attorneys decide that a settlement is the best result for all class members and the Court is asked to approve the settlement as fair, reasonable and adequate. Class Members will get money now rather than years from now, if at all. If the Court approves the proposed Settlement, then Merck will no longer be legally responsible for the consumer economic injury claims made in this lawsuit to any member of the Class. The lawyers representing the Class ("Class Counsel") and Merck have engaged in extensive, arms-length negotiations regarding the issues presented in this lawsuit and the possible terms of a settlement. The Parties want to settle the claims in this lawsuit and the Class Representatives and Class Counsel believe the Settlement is fair, reasonable and adequate and in the best interests of the Class.

**5. Who is part of the Class?**

Generally speaking, you are a Class Member and are included in the Settlement if you are an individual consumer who paid (or were required to pay) for all or part of the purchase price of Vioxx before October 1, 2004. The Settlement does not include any consumer who purchased Vioxx for personal or family use before October 1, 2004 while living in Missouri.

The complete Class definition is:

> All individual consumer purchasers of Vioxx in the United States (except members of the class previously certified by the Circuit Court of Jackson County, Missouri in the *Plubell* case with respect to purchases made while a resident of the State of Missouri) (the "Settlement Class"), except that the Settlement Class shall include only individuals who purchased Vioxx (by paying all or part of the purchase price). For sake of clarity, the Settlement Class defined in the foregoing sentence includes, but is not limited to, all persons referenced in the foregoing sentence who also received a Post-Withdrawal Medical Consultation as defined below [in Paragraph 1.13]. All other Vioxx purchasers (including any private or governmental third-party payors that may have paid all or part of the purchase price of Vioxx for use by individual consumers) are excluded. Also excluded are (a) all persons who have previously settled Vioxx-related claims, including all participants in the Vioxx Resolution Program, (b) any of Merck's directors, officers, employees, or agents, (c) the Court, the judge's immediate family members, and the staff of the Court assigned to work on MDL 1657, and (d) those individuals who timely and validly exclude themselves from the Class by means of the Opt Out Procedure.

The definition of the related Post-Withdrawal Medical Consultation is:

> "Post-Withdrawal Medical Consultation" means any office visit to a licensed physician to obtain advice regarding the Class Member's own use of Vioxx and/or to discuss discontinuing the use of Vioxx and possible alternative treatments for that Class Member and that occurred following September 30, 2004, which is when Vioxx was withdrawn from the market, and prior to November 30, 2004. Further, the term Post-Withdrawal Medical

4

Consultation includes any reasonable and necessary diagnostic testing that is solely the result of the Class Member's use of Vioxx and recommended by the Class Member's physician at the Post-Withdrawal Medical Consultation, performed as a result of such recommendation, and occurred after September 30, 2004 but prior to November 30, 2004 ("Vioxx-related diagnostic testing"). However, the definition of Post Withdrawal Medical Consultation does not include any office visits or diagnostic testing occurring during the period from September 30, 2004 through November 30, 2004 that had been scheduled or recommended by the Class Member's physician or licensed prescriber prior to September 30, 2004.

The Settlement Agreement, order granting preliminary approval to the Settlement, key dates and deadlines, and other important orders and documents in the case are available at www.VioxxSettlement.com.

| 6. Who is excluded from the Class? |
| --- |

Not included in the Class are:

- The Defendants and their present or former, direct and indirect, parents, subsidiaries, divisions, partners and affiliates;
- The United States government, its officers, agents, agencies and departments; the States of the United States and their respective officers, agents, agencies and departments; and all other local governments and their officers, agents, agencies and departments;
- Any consumer who has released her/his claims against Merck related to Vioxx and/or participated in the Vioxx Resolution Program;
- Any private or governmental third-party payor who may have paid all or any part of the purchase price of Vioxx for use by individual consumers;
- Any consumer who was a resident of the State of Missouri who purchased Vioxx for personal or family use before October 1, 2004 (*see* Question 7); and
- Class members who timely and validly exclude themselves from the Class (*see* Question 12).

| 7. What about other cases involving Vioxx? |
| --- |

You may have already received a notice if you were a member of the class previously certified by the Circuit Court of Jackson County, Missouri in the *Plubell* case with respect to purchases made while a resident of Missouri.  You are not included in this Settlement if you are part of the *Plubell* class.  This Settlement does not involve any personal injury or wrongful death claims involving Vioxx, nor does it revive any such claims.

## Benefits of the Settlement — What You Get

| 8. What does the Settlement provide? |
| --- |

Merck will pay up to $23 million to settle the lawsuit.  All costs for the Claims Administrator to administer the Settlement, the cost to inform people about the Settlement, and the attorney's fees and expenses incurred in bringing this case and related cases in the MDL will be paid out of this Settlement Amount (*see* Question X).

Class Members who submit valid claims can get: (1) up to $50 in cash or (2) reimbursement for up to the actual out-of-pocket expenses paid for Vioxx and up to $75 for certain other losses.  Payment amounts will vary depending upon several factors such as the number of claims submitted, the amounts claimed, the proof submitted, and other adjustments and deductions.  If claims exceed the amount available, the cash payments will be reduced on a proportional basis so that all valid claims can be paid some amount.

**9. How do I file a claim?**

To receive any payment under this Settlement, you must complete and return a Claim Form with the required supporting documentation.  A Claim Form is attached to this notice. You can also get a Claim Form on the Internet at _____.   Read the Claim Form instructions carefully.  **You must fill out the Claim Form and submit it online or mail it to the Claims Administrator with supporting proof, postmarked by Month 00, 2013, and addressed to**:

Vioxx Consumer Claims Administrator
P.O. Box
City, State, Zip

**Documentation Requirements:**   To be valid, a Claim must be (1) timely submitted with all required information and documentation, (2) submitted by the individual Settlement Class Member or a family member or legal guardian (no other third-party submissions), (3) timely supplemented with additional information or documentation in response to requests by the Claims Administrator, (4) signed by the Settlement Class Member and (5) include documentary proof of the purchase of, and payment for, Vioxx for personal or family. No Claims submitted by third parties are permitted.

**Option 1a – Proof of Payment:**  The following forms of proof are acceptable: (a) a receipt, cancelled check, or credit card statement showing payment for Vioxx for the Class Member; (b) an EOB (explanation of benefits) from a third-party payor that shows Vioxx was prescribed for the Member and reflects the out-of-pocket expense that the Class Member paid for Vioxx, or (c) records from a pharmacy, pharmacy benefit manager ("PBM") or similar entity that shows Vioxx was prescribed to the Class Member and reflects the out-of-pocket expense that the Class Member paid for Vioxx.

**Option 1b – Post Withdrawal Medical Consultation:**  If, as part of an Option 1 Claim, you also want to be reimbursed for up to $75.00 in the aggregate for costs or losses in connection with any and all Post-Withdrawal Medical Consultations (defined above), you must provide documentation of the consultation. Proof of the additional cost or loss must be submitted along with a statement that your medical consultation or diagnostic testing occurred between September 30, 2004 and November 30, 2004 and was not scheduled or recommended before September 30, 2004.

**Option 2 – Proof of Prescription:** In the alternative, if the above forms of proof of payment are not available, a Class Member may submit documentary proof of a prescription of Vioxx (including, e.g., a prescription bottle with clearly visible label) without proof of payment and/or a sworn statement of having had and paid for a prescription of Vioxx.  Under this option, a Class Member with a valid claim may receive a one-time payment of $50.

**10. How much will I get?**

Your payment cannot be determined at this time.  How much you receive from this Settlement depends on the total number and amount of claims submitted by other Class Members and the type of proof you submit with your claim.  If claims exceed the amount available after the Court-approved fees and costs are deducted from the Settlement Amount, payments to Class Members will be reduced on a proportional basis so that all Class Members receive a payment.  Your payment will not be greater than the amount of your claim, whether you make a claim for your actual out-of-pocket costs for the drug or for the one-time payment of $50.  It is possible that your payment will be lower than the amount of your claim, whether you make a claim for your actual out-of-pocket costs for the drug, for other losses, or for the one-time payment of $50.

## REMAINING IN THE SETTLEMENT

| **11. What claims am I giving up?** |
|---|

If the Settlement is approved, generally speaking you give up any right you may otherwise have to sue Merck for money damages or other relief related to any consumer *economic* injury claims made or that could have been made in this lawsuit.

Specifically, you release any claim relating to the purchase, price, payment, reimbursement, use, prescription, marketing, manufacture, distribution, sale, promotion, research, design, development, supply and/or ingestion of Vioxx during the Class Period that Class Members ever had, currently have, or may subsequently have in any capacity against Merck and/or Merck's associated or affiliated companies and certain others.

However, the Settlement does not release personal injury or wrongful death claims.  More information about the release is available in section __ of the Settlement Agreement available at www.<SettlementWebsite>.com.

| **12. What entities am I releasing?** |
|---|

The Released Entities include:  Merck, Sharp & Dohme, Corp., formerly known as Merck & Co., Inc. ("Merck"), its parent companies, subsidiaries, and affiliates, and their past, present and future officers, directors, trustees, employees, agents, attorneys, shareholders, predecessors, successors and assigns, and any retailers, suppliers, wholesalers, pharmacies, pharmacists and physicians or other health care providers that were in the chain of distribution for any such sales of Vioxx to Class Members.

## EXCLUSION FROM THE SETTLEMENT

| **13. How do I exclude myself from the Settlement?** |
|---|

To ask to be excluded (also known as opting out), you must send a letter stating that you want to be excluded from *In re Vioxx Products Liability Litigation,* No. 05-cv-01657.  Be sure to include your name, address, and telephone number.   Your exclusion letter must be mailed first class, postmarked no later than **Month 00, 2013** to:

Vioxx Consumer Claims Administrator
P.O. Box 0000
City, ST 00000

You cannot exclude yourself by phone, email, or fax.

## OBJECTING OR COMMENTING ON THE SETTLEMENT

| **14. May I object to or comment on the Settlement?** |
|---|

Yes.  If you are a Class Member and you have comments about, or disagree with, any part of the proposed Settlement, you may express your views to the Court.  To object, send a letter saying that you object to *In re Vioxx Products Liability Litigation,* No. 05-cv-01657 (EDLA).  Be sure to include your name, address, telephone number, signature, and a brief explanation of your reasons for objecting.  Your written comment or objection must be received by **Month 00, 2013** at the following addresses:

| COURT | CLASS COUNSEL | DEFENSE COUNSEL |
|---|---|---|
| Clerk of Court<br>United States District Court<br>Eastern District of Louisiana<br>500 Poydras Street<br>New Orleans, LA 70130 | Russ Herman<br>Herman, Herman & Katz, LLC<br>820 O'Keefe Avenue<br>New Orleans, LA 70113 | Douglas R. Marvin<br>Williams & Connolly, LLP<br>725 Twelfth Street, N.W.<br>Washington, D.C. 20005 |

### 15. What is the difference between objecting and excluding myself from the Settlement?

An objection to the Settlement is made when you wish to remain a Class Member and be part of the Settlement but disagree with some aspect of it. An objection allows your views to be heard in Court. In contrast, exclusion means that you are no longer a Class Member and are not part of the Settlement's terms and conditions. Once excluded, you lose any right to object to the Settlement or to the attorneys' fees because the case and Settlement no longer affects you.

## THE LAWYERS REPRESENTING YOU

### 16. Do I have a lawyer in the case?

Yes. The Court has appointed law firms who have been prosecuting Vioxx claims to represent you and the other Class Members as "Class Counsel," including:

| | |
|---|---|
| Herman, Herman & Katz LLP<br>820 O'Keefe Avenue<br>New Orleans, LA 70113 | Lieff Cabraser Heimann & Bernstein, LLP<br>275 Battery Street, 29th Floor<br>San Francisco, CA 94111 |

These lawyers will ask the Court for payment out of the Settlement Amount for attorneys' fees and costs (*see* Question X); you will not otherwise be charged for their work. If you want to be represented by another lawyer, you may hire one to appear in Court for you at your own expense. If you want your own lawyer to speak for you or appear in Court, you must file a Notice of Appearance (*see* Question X.)

### 17. How will the lawyers be paid?

To date, Class Counsel have not received any payment for their services in conducting this case and have not been paid for their expenses. They will ask the Court to approve fees for their case-related time, efforts, and results, and reimbursement for the costs they spent on the consumer claims and related actions, of up to 32% of the maximum Settlement Amount of up to $23 million or $7.36 million in total. These fees and costs will be paid out of the up to $23 million Settlement Amount. More information about Class Counsel and their experience is available at www.<SettlementWebsite.>com.

## THE COURT'S FINAL APPROVAL HEARING

### 18. When and where will the Court decide whether to approve the Settlement?

The Court will hold a Final Approval Hearing on **Month 00, 2013** at XX:XX a.m. to consider whether the proposed Settlement is fair, reasonable and adequate. At the Hearing, the Court will decide whether to approve the Settlement and the request for attorneys' fees and expenses. If comments or objections have been received, the Court will consider them at this time.

Note: The Hearing may be postponed to a different date without additional notice.  Updated information will be posted on the Vioxx Consumer Claims website at www.<SettlementWebsite>.com.

| **19. Do I have to attend the Final Approval Hearing?** |
|---|

No.  Attendance is not required.  Class Counsel will answer the Court's questions on your behalf.  If you or your personal attorney still wants to attend the Hearing, you are more than welcome to attend at your expense.  However, it is not necessary that either of you attend.  As long as the objection was postmarked before the deadline, the Court will consider it, even if you or your attorneys do not attend.

| **20. May I speak at the Final Approval Hearing?** |
|---|

Yes.  If you want you or your own lawyer instead of Class Counsel to speak at the Final Approval Hearing, you must send the Court a document that is called a "Notice of Appearance."  The Notice of Appearance should include the name and number of the lawsuit, and state that you wish to enter an appearance at the Final Approval Hearing for *In re Vioxx Products Liability Litigation,* No. 05-cv-01657.  Be sure to include your name, address, telephone number and signature. Your "Notice of Appearance" must be received by **Month 00, 2013.**  You may not speak at the Hearing if you previously asked to be excluded from the Class.

The Notice of Appearance must be mailed to the following addresses:

| COURT | CLASS COUNSEL | DEFENSE COUNSEL |
|---|---|---|
| Clerk of Court<br>United States District Court<br>Eastern District of Louisiana<br>500 Poydras Street<br>New Orleans, LA 70130 | Russ Herman<br>Co-Lead Class Counsel<br>Herman, Herman & Katz, LLC<br>820 O'Keefe Avenue<br>New Orleans, LA 70113 | Douglas R. Marvin<br>Counsel for Merck<br>Williams & Connolly, LLP<br>725 Twelfth Street, N.W.<br>Washington, D.C. 20005 |

## GETTING MORE INFORMATION

| **21. How do I get more information?** |
|---|

This Notice summarizes the proposed Settlement.  More details are in the Settlement Agreement and the other important legal documents that have been filed with the Court in this lawsuit.  You can look at and copy these legal documents at any time during regular office hours at the Office of the Clerk of Court, United States District Court, Eastern District of Louisiana, 500 Poydras Street, New Orleans, LA 70130.  These documents are also available online, on the Vioxx Consumer Claims Settlement website at www.<SettlementWebsite.>com.

In addition, if you have any questions about the lawsuit or this Notice, you may:

- Visit the Vioxx Consumer Claims Settlement website at www.<SettlementWebsite>.com.
- Call toll free 1-800-547-9360
- Write to: The Vioxx Consumer Claims Administrator, P.O. Box 0000, City, ST 00000
- Email:

Exhibit F to Vioxx MDL Consumer Settlement Agreement

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ------------------------------------------------------------ X | | |
| In Re: VIOXX PRODUCTS LIABILITY LITIGATION : | | MDL No. 1657 |
| : | | |
| ------------------------------------------------------------ : | | SECTION L |
| SHERRILL HERKE, individually and on behalf of a    X | | |
| proposed class of those similarly situated, | | JUDGE FALLON |
| : | | MAG. JUDGE KNOWLES |
| Plaintiffs, : | | |
| v. : | | No. 2:09-cv-07218 |
| : | | |
| MERCK & CO., INC.,    X | | |
| | | |
| Defendant. | | |
| ------------------------------------------------------------ | | |

**FINAL ORDER AND JUDGMENT CERTIFYING THE CLASS FOR
PURPOSES OF SETTLEMENT, APPROVING OF CLASS ACTION
<u>SETTLEMENT, AND DISMISSING THE ACTION WITH PREJUDICE</u>**

Upon considering the Joint Motion for Approval of Class Settlement (the "Joint

Motion"), filed by plaintiffs on behalf of the Class and defendant Merck, Sharp &

Dohme, Corp. f/k/a Merck & Co., Inc. ("Merck"), seeking approval of the Proposed

Settlement Agreement (or the "Proposed Settlement," on file with the Court as Exhibit

A to the Joint Motion for Preliminary Approval of Class Settlement, Class Notice and

Related Matters, dated July __, 2013), the Plaintiffs' Motion for Certification of a Class

for Purposes of Settlement (the "Certification Motion") filed by plaintiffs, and Class

Counsels' Motion for Approval of an Award of Attorneys' Fees and Memorandum in

Support Thereof, and on considering the record of these proceedings, the representations,

argument, and recommendation of counsel for the moving parties, and the requirements

of law,

IT IS HEREBY **<u>ORDERED</u>, <u>ADJUDGED</u>** AND **<u>DECREED</u>** that:

1.      The Court has jurisdiction over the subject matter and parties to this proceeding pursuant to 28 U.S.C. § 1332.

2.      Venue is proper in this district.

3.      The Court finds for settlement purposes only, that the Rule 23 factors are present and that certification of the proposed Class, as defined and set forth below, which was preliminarily approved previously, is appropriate under Rule 23 and Rule 23(b)(3), in particular:

"Class" or "Settlement Class" means:

> All individual consumer purchasers of Vioxx in the United States (except members of the class previously certified by the Circuit Court of Jackson County, Missouri in the *Plubell* case with respect to purchases made while a resident of the State of Missouri) (the "Settlement Class"), except that the Settlement Class shall include only individuals who purchased Vioxx (by paying all or part of the purchase price) through September 30, 2004, when Vioxx was removed from the market.  For sake of clarity, the Settlement Class defined in the foregoing sentence includes, but is not limited to, all persons referenced in the foregoing sentence who also received a Post-Withdrawal Medical Consultation as defined below in Paragraph 1.13.  All other Vioxx purchasers (including any private or governmental third-party payors that may have paid all or part of the purchase price of Vioxx for use by individual consumers) are excluded. Also excluded are (a) all persons who have previously settled Vioxx-related claims, including all participants in the Vioxx Resolution Program, (b) any of Merck's directors, officers, employees, or agents, (c) the Court, the judge's immediate family members, and the staff of the Court assigned to work on MDL 1657, and (d) those individuals who timely and validly exclude themselves from the Class by means of the Opt Out Procedure.

4.      The following are the "Released Claims" as defined in the Settlement Agreement as well as the related definition of "Post-Withdrawal Medical Consultation":

2

"Released Claim" means any and all known or unknown economic injury claims, demands, actions, suits, causes of action, damages whenever incurred whether compensatory or exemplary, liabilities of any nature or under any theory or statute whatsoever, including costs, expenses, penalties and attorneys' fees, in law or equity, that any Class Member who has not timely excluded themselves from the Class, whether or not they object to the settlement, ever had or now has, directly, representatively, derivatively or in any capacity, arising out of or in any way connected with the purchase of Vioxx in the United States (except for purchases made while a resident of the State of Missouri covered by the class previously certified by the Circuit Court of Jackson County, Missouri in the *Plubell* case), including, but not limited to, (i) any and all expenditures of, or costs and losses incurred by, the Class Member in connection with a Post-Withdrawal Medical Consultation, including but not limited to, the costs of such medical consultation and Vioxx-related diagnostic testing, and (ii) the allegations contained in the MDL 1657 Purchase Claims Master Class Action Complaint dated August 1, 2005 and all Related Actions. The Released Claims do not include any claims for personal injury or death or claims derivative of such claims, nor does this Settlement revive any such claims.

"Post-Withdrawal Medical Consultation" means any office visit to a licensed physician to obtain advice regarding the Class Member's own use of Vioxx and/or to discuss discontinuing the use of Vioxx and possible alternative treatments for that Class Member and that occurred following September 30, 2004, which is when Vioxx was withdrawn from the market, and prior to November 30, 2004. Further, the term Post-Withdrawal Medical Consultation includes any reasonable and necessary diagnostic testing that is solely the result of the Class Member's use of Vioxx and recommended by the Class Member's physician at the Post-Withdrawal Medical Consultation, performed as a result of such recommendation, and occurred after September 30, 2004 but prior to November 30, 2004 ("Vioxx-related diagnostic testing"). However, the definition of Post Withdrawal Medical Consultation does not include any office visits or diagnostic testing occurring during the period from September 30, 2004 through November 30, 2004 that had been scheduled or recommended by the Class Member's physician or licensed prescriber prior to September 30, 2004.

5.    The capitalized terms used above and elsewhere in this Final Order and

Judgment shall have the following meanings:

"Class Member" or "Settlement Class Member" means all natural persons (or, in the case of minority, death or incapacity, their legal guardians or representatives)

3

in the Class who do not exclude themselves from the Class by the Opt Out Procedure (as defined below) in accordance with Fed. R. Civ. P. 23(c)(2) and the procedures set forth in the Notice.

"Opt Out Procedure" shall mean the process for all natural persons (or, in the case of minority, death or incapacity, their legal guardians or representatives) to exercise their right to exclude themselves from the Class in accordance with Fed. R. Civ. P. 23(c)(2) and the procedures set forth in the Notice.

"Opt Outs" shall mean those natural persons (or, in the case of minority, death or incapacity, their legal guardians or representatives) included in the Class definition, but who have timely and properly exercised their right to exclude themselves from the Class under the Opt Out Procedure, and therefore are no longer Class Members.

"United States" means the United States of America including the fifty States of the United States, the District of Columbia, and the territories, possessions, and commonwealths of the United States.

6.    Specifically, the Court finds for settlement purposes only that the Class described above satisfies the following factors of Rule 23(a) and Rule 23(b)(3):

(a)    <u>Numerosity</u>:  In this case, many thousands of individuals have asserted claims or have potential claims.  Thus, the Rule 23(a)(1) numerosity requirement has been met.

(b)    <u>Commonality</u>:  Plaintiffs' claims are common in that they allege that Vioxx was overpriced because Merck allegedly failed to disclose its alleged cardiovascular risks.

(c)    <u>Typicality</u>:  The proposed class representatives' claims arise from the same course of conduct and share the substantially same legal theory, as do the claims of the putative Class members.  Furthermore, the proposed Class representatives will advance the interests of all class members.  The individual class representatives allege various causes of action for recovery of alleged economic harms arising from the purchase of Vioxx®.  The proposed class representatives' claims are typical of those of the proposed Class and satisfy Rule 23(a)(3).

(d)    <u>Adequacy</u>:  The proposed class representatives assert claims representative of the claims of the entire class.  As such, even though the claims may not be identical to every claim of every putative Class member, the proposed class representatives can adequately represent the putative Class.

4

The adequacy factor also considers Class Counsel.  In this case, Class Counsel regularly engage in complex litigation similar to the present case and have dedicated substantial resources to the prosecution of this matter. The adequacy requirement is satisfied.

(e)     <u>Predominance</u>:  There is predominance.  Common issues include: (a) whether Vioxx® carries a risk of cardiovascular disease, and (b) whether Merck adequately disclosed the risks of Vioxx.  The resolution of these questions is relevant to essential elements of every Class member's claims.

(f)     <u>Superiority</u>:  A settlement class that will determine the issues common to all Class members and fix compensation for alleged economic injury is superior to thousands of trials that would risk disparate results for similarly situated people and entities.

7.     In the interest of clarity, the Court reiterates that it makes the above findings set forth in paragraphs 3 and 6 regarding certification of the Class only for the purposes of settlement.

8.     The Court reconfirms the appointment of the class representative.

9.     The Court approves the Proposed Settlement dated July __, 2013, together with all of its Exhibits, on file with the Court as Exhibit A to the Joint Motion for Preliminary Approval of Class Settlement, Class Notice and Related Matters, dated July ___, 2013, as being fair, adequate, and reasonable and in the best interests of the Class, satisfying Rule 23(e) and the fairness and adequacy factors of this Circuit.  In particular, the Court finds that:

**<u>Fairness and Adequacy of the Proposed Settlement</u>.**

The Court finds that the Proposed Settlement is fair and adequate.

The fairness and adequacy factors concern whether there has been arm's-length bargaining.  Courts in this Circuit consider the following six factors:  "(1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the

amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and absent class members." *Reed v. General Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983) (affirming approval of class action settlement); *see also, e.g.*, *Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982) (similar); *Smith v. Crystian*, 91 F. App'x 952, 955 (5th Cir. 2004) (similar).

**Fraud or Collusion.**

The facts and circumstances of the negotiations set forth in counsel's affidavits and papers demonstrate that there has been considerable arm's-length bargaining.  A proposed class action settlement is considered presumptively fair where, as here, there is no evidence of collusion and the parties, through capable counsel, have engaged in arm's-length negotiations.  *See Altier v. Worley Catastrophe Response, LLC*, No. 11-241c/w11-242, 2012 U.S. Dist. LEXIS 6391, at *50 (E.D. La. Jan. 18, 2012) (Judge Wilkinson) ("I . . . presume that the proposed settlement is fair and reasonable" because it "is the result of arm's-length negotiations and . . . there is no evidence of fraud or collusion"); *see also In re Heartland Payment Sys.*, 851 F. Supp. 2d 1040, 1063 (S.D. Tex. 2012) ("A 'presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.'") (citation omitted).

Here, there is no evidence that the parties engaged in anything other than arm's-length negotiations through qualified counsel.  Moreover, the Court is also satisfied that Class Counsel was sufficiently informed to vigorously advocate on the Class' behalf and did so.  Therefore, the Court finds that the Proposed Settlement is presumptively fair and adequate.

**Complexity, Length and Expense of Further Litigation.**

The complexity, length, and expense of further litigation weigh heavily in favor of the Proposed Settlement as well.  There is no doubt that the time and expense of continuing the litigation would be substantial.  *See In re Heartland*, 851 F. Supp. 2d at 1064 ("Likely motions . . . rais[ing] choice-of-law issues and . . . novel questions of state law . . . would be time consuming, and '[i]nevitable appeals would likely prolong the litigation, and any recovery by class members, for years'") (citation omitted).  Avoiding that unnecessary and unwarranted expenditure of resources and time would benefit all parties and the Court.

**Stage of Proceedings and Amount of Discovery Completed.**

This factor focuses on whether the parties are in a "position to assess the strength and weaknesses of their own and their adversary's positions, factually and legally." *In re Train Derailment near Amite La.*, MDL No. 1531 SECTION "A", 2006 U.S. Dist. LEXIS 32839, at *61 (E.D. La. May 24, 2006) (Judge Zainey). Importantly, whether the parties have engaged in extensive formal discovery is not determinative of this factor. *See San Antonio Hispanic Police Officers' Org., Inc. v. City of San Antonio*, 188 F.R.D. 433, 459 (W.D. Tex. 1999) (the "[s]ufficiency of information does not depend on the amount of formal discovery which has been taken because other sources of information may be available to show the settlement may be approved even when little or no formal discovery has been completed."). After all, the parties have access to ample information developed in related Vioxx actions. *See id.* In light of this information, as well as the fact that "the litigation ha[s] been proceeding for seven years" with "extensive . . . motion practice," *id.*, the Court concludes that this factor militates in favor of finding the Proposed Settlement fair and adequate.

**Strength of Plaintiffs' Case.**

Plaintiffs face significant difficulties in proving the substance of their claims, including that they sustained actual economic harm as a result of defendant's alleged conduct. This difficulty, balanced against the relatively assured compensation under the Proposed Settlement, weighs in favor of the fairness and adequacy of the compromise. *See In re Corrugated Container Antitrust Litig.*, 659 F.2d 1322, 1326-27 (5th Cir. 1981) (affirming district court's finding that this factor favored approval of settlement when the class faced major obstacles in establishing proof of liability and damages). Plaintiffs' ability to prevail on the merits of this litigation, as in all contested matters, is uncertain. The Proposed Settlement, however, confers relatively assured and substantial benefits for Class Members' claims who have adequate proof of their Vioxx® purchases.

Plaintiffs' claims would require substantial evidence and expert testimony to prove liability, causation, and damages. The Proposed Settlement and its claims procedure simplifies what is required of Class Members to make a claim.

The Proposed Settlement offers relatively assured, prompt and fair compensation. The balance between the uncertainty of litigated claims and the assuredness of settled claims convinces the Court of the fairness and adequacy of the Proposed Settlement.

**Range of Possible Recovery Distinctions Based on Level of Proof.**

The Court is satisfied that the Proposed Settlement provides adequate compensation. The Proposed Settlement essentially provides for reimbursement of plaintiffs' out-of-pocket expenditures for their Vioxx® purchases, subject to a proportionate reduction depending on the participation of plaintiffs. Moreover, the Court finds it significant that the Proposed Settlement contemplates a level of compensation for those Class Members who cannot submit proof of purchases but of only prescriptions of Vioxx®.

**Opinions of Class Counsel, Class Representatives, and Absent Class Members.**

The final factor also weighs in favor of a finding of fairness and adequacy. As the Fifth Circuit has explained, "a settlement can be approved despite opposition from class members, including named plaintiffs." *Ayers v. Thompson*, 358 F.3d 356, 373 (5th Cir. 2004). Indeed, a court is justified in lending greater credence to the opinions of counsel than those of objecting class members "in light of [counsel's] superior sophistication." *See Newby v. Enron Corp.*, 394 F.3d 296, 309 (5th Cir. 2004) (holding that a district court was justified in strongly weighing the opinion of class counsel against that of objecting class members "in light of their superior sophistication"). Here, the Court finds that the opinions of class counsel, class representatives and absent members strongly indicate the fairness and adequacy of the compromise.

10.    [In the interest of completeness, the Court finds that the substance of the objections to the Proposed Settlement are without merit in light of the substantial evidence of the fairness, adequacy, and reasonableness of the Proposed Settlement.]

11.    The Court holds that the Notice and notice plan as carried out satisfy the requirements of Rule 23(e) and due process. This Court has previously held the Notice and notice plan to be the best practicable under the circumstances in its Preliminary Approval Order dated _____. The Court finds that the multi-pronged notice strategy as implemented has successfully reached the putative Class, thus constituting the best practicable notice and satisfying due process.

12.     The Court holds that the notice provisions set forth under the Class Action Fairness Act, 28 U.S.C. § 1715, were complied with in this case.

13.     The Court reconfirms the appointment of Russ Herman of Herman, Herman & Katz, LLC and Elizabeth J. Cabraser of Lieff Cabraser Heimann & Bernstein as Co-Lead Settlement Class Counsel for the putative Class and are collectively appointed "Class Counsel" for the Settlement Class.

14.     The Court reconfirms the appointment of the Claims Administrator.

15.     The "Released Claims" (as defined below) of any and all Class Members are HEREBY DISMISSED WITH PREJUDICE against all "Released Persons" (as defined below):

"Released Claims" means any and all known or unknown economic injury claims, demands, actions, suits, causes of action, damages whenever incurred whether compensatory or exemplary, liabilities of any nature or under any theory or statute whatsoever, including costs, expenses, penalties and attorneys' fees, in law or equity, that any Class Member who has not timely excluded themselves from the Class, whether or not they object to the settlement, ever had or now has, directly, representatively, derivatively or in any capacity, arising out of or in any way connected with the purchase of Vioxx in the United States (except for purchases made while a resident of the State of Missouri covered by the class previously certified by the Circuit Court of Jackson County, Missouri in the *Plubell* case), including, but not limited to, (i) any and all expenditures of, or costs and losses incurred by, the Class Member in connection with a Post-Withdrawal Medical Consultation, including but not limited to, the costs of such medical consultation and Vioxx-related diagnostic testing (all as defined below), and (ii) the allegations contained in the MDL 1657 Purchase Claims Master Class Action Complaint dated August 1, 2005 and all Related Actions. The Released Claims do not include any claims for personal injury or death or claims derivative of such claims, nor does this Settlement revive any such claims.

"Released Persons" means Merck, Sharp & Dohme, Corp. f/k/a Merck & Co., Inc. ("Merck"), its parent companies, affiliate companies, subsidiary companies, and the past, present and future officers, directors, shareholders, employees, predecessors, parents, subsidiaries, insurers, agents, servants, successors, trustees, representatives, heirs, executors, and assigns of all of the foregoing Persons and

entities, including all suppliers, distributors, wholesalers, and retailers of Vioxx, as well as any physicians, medical facilities, and pharmacists who were in any way involved in, or within the chain of distribution of, the purchase of Vioxx by a Representative Plaintiff or Settlement Class Member.

"<u>Post-Withdrawal Medical Consultation</u>" means any office visit to a licensed physician to obtain advice regarding the Class Member's own use of Vioxx and/or to discuss discontinuing the use of Vioxx and possible alternative treatments for that Class Member and that occurred following September 30, 2004, which is when Vioxx was withdrawn from the market, and prior to November 30, 2004. Further, the term Post-Withdrawal Medical Consultation includes any reasonable and necessary diagnostic testing that is solely the result of the Class Member's use of Vioxx and recommended by the Class Member's physician at the Post-Withdrawal Medical Consultation, performed as a result of such recommendation, and occurred after September 30, 2004 but prior to November 30, 2004 ("Vioxx-related diagnostic testing").  However, the definition of Post Withdrawal Medical Consultation does not include any office visits or diagnostic testing occurring during the period from September 30, 2004 through November 30, 2004 that had been scheduled or recommended by the Class Member's physician or licensed prescriber prior to September 30, 2004.

16.     By entry of this Final Order and Judgment, each Class Member, and all other persons and entities claiming by, through, or on behalf of, a Class Member, are hereby forever barred and enjoined from commencing, filing, initiating, instituting, prosecuting, maintaining, or consenting to any action against the Released Parties with respect to the Released Claims and forever discharge and hold harmless the Released Parties of and from any and all Released Claims which the Class Member has or may hereafter have.

17.     This Final Order and Judgment notwithstanding, this Court retains continuing jurisdiction over the case, the Proposed Settlement, this Final Order and Judgment, the Class Members, the Claims Administrator, the Common Fund Escrow Account, the Plaintiffs and Merck for the purpose of administering, supervising, construing and enforcing this Settlement and the Final Order and

10

Judgment, and supervising the management and disbursement of the Common Fund under the Settlement.

18.     Pursuant to the All Writs Act, 28 U.S.C. §1651, this Court shall retain the authority to issue any order necessary to protect its jurisdiction from any action, whether in state or federal court, that threatens to undermine the settlement in this case and this Final Order and Judgment.

19.     The Court also finds, following an evaluation of Class Counsel's fee petition against the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717, 720 (5th Cir. 1974), *overruled on other grounds*, *Blanchard v. Bergeron*, 489 U.S. 87 (1989), that the formula to calculate Class Counsel fees is reasonable and that the formula employs a reasonable percentage of the actual benefit of the class settlement to the Class and that Class Counsel's Motion for Approval of an Award of Attorneys' Fees is hereby approved.  With respect to the *Johnson* factors most relevant here, the Court finds that Class Counsel have expended considerable time and labor in the prosecution of the class claims and in the negotiation of the Settlement, and that this work will be on-going; that the efforts of Class Counsel have resulted in a resolution that confers substantial benefits on members of the Class, and that those benefits are comparable to other similar settlements; that Class Counsel undertook this matter with no guarantee of payment and thus shouldered considerable risk; and that the attorneys' fees award in this case is not inconsistent with awards in similar cases.

20.     FINAL JUDGMENT is hereby ENTERED dismissing with prejudice all Released

Claims of the Class against all Released Persons as herein described.

21.     Pursuant to Fed. R. Civ. P. 54(b), the Court determines that there is no just cause

for delay and expressly DIRECTS the ENTRY OF JUDGMENT on all issues

contained in this Order.

DATED: New Orleans, Louisiana
This _____, day of _____, 2013

_____
Honorable Eldon E. Fallon, Judge
United States District Court

12