# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

### Case No. 05-MD-01657
### MDL Docket No. 1657

| | | |
|---|---|---|
| In Re:  VIOXX | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION "L" |
| | * | |
| | * | JUDGE FALLON |
| | * | |
| | * | MAGISTRATE JUDGE KNOWLES |
| | * | |
| | * | |

### RESPONSE TO CONSENT MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT, NOTICE OF OBJECTION, AND REQUEST TO BE EXCLUDED FROM PROPOSED SETTLEMENT  BY INTERESTED PARTY JAMES RATLIFF

James Ratliff, on behalf of himself and all others similarly situated ("Ratliff"), by and

through counsel, and as an individual and representative of a previously certified class interested

in the Consent Motion for Preliminary Approval Of Class Settlement filed by Plaintiffs on July

17, 2013 [DE 64487], respectfully requests the Court to consider this Response and Objection,

permit undersigned counsel to participate in the July 24, 2013 hearing on the parties'

forthcoming Consent Motion for Preliminary Approval of Settlement, and to exclude the

Kentucky Class from any proposed settlement.  In support of this Notice of Objection and

Request, Ratliff respectfully states as follows:

### INTRODUCTION

Ratliff is a resident of Pike County, Kentucky who was diagnosed with chronic

osteoarthritis in 1994 at the age of 37.[1]  After experimenting with a bevy of anti-inflammatory

---

[1]  Ratliff notes that the facts and procedural history set forth, infra, mirror those set forth in Ratliff's Preliminary Notice Of Objection, [DE64289], filed with the Court on March 4th.  The facts and analysis have, however, been updated to reflect the progress of the case and to address certain aspects of the proposed settlement now before the Court.

drugs, including Daypro and Celebrex, his doctor recommended that he take Vioxx, a drug that was new to the market.  In January of 2000, Ratliff began taking Vioxx twice daily.  After Vioxx was removed from the market in 2004, Ratliff brought a case in Pike Circuit Court as a class action on behalf of all Kentucky residents who have purchased and taken Vioxx and who, upon the recommendation and advice of the FDA and Merck, have contacted or will contact their physicians to seek advice regarding their use of Vioxx.

The Complaint was filed in the Pike Circuit Court in October, 2004.  Ratliff, on behalf of himself and the class (the "Kentucky Class"), asserts claims that are similar, but not identical, to those of the plaintiffs whose actions gave been consolidated in this proceeding – Ratliff has asserted claims for fraud and negligent misrepresentation, and also a claim for recovery under the Kentucky Consumer Protection Act ("KCPA").   Ratliff, on behalf of himself and others similarly situated, seeks reimbursement for (a) the costs of their medical consultations, including the costs of any diagnostic testing recommended by the class members' physicians; (b) the lost income and related expenses the class members have, or will have to incur in undergoing such examinations and procedures; and (c) the cost of the Vioxx the class members purchased.  Each class member's claims will not exceed the sum of $75,000, exclusive of interest and costs, and no class member will seek to recover in this action for any personal injury he may have sustained as a consequence of taking Vioxx as prescribed.  See Class Action Complaint, Ratliff, et al. v. Merck & Co., Inc., 04-CI-01493, Pike Circuit Court, 35th Judicial Circuit, attached to Ratliff's Preliminary Notice of Objection, [DE64289], as Exhibit A. The Kentucky Class consists of more than 200,000 Kentucky consumers, and seeks damages in excess of $70 million.

Undersigned counsel for Ratliff and the Kentucky Class filed suit against Merck in 2004 – before the establishment of this proceeding – and have been vigorously litigating the action for nine years.  On April 2, 2010, Kentucky class counsel was successful in obtaining, and

2

maintaining through Merck's appeal to the Kentucky Supreme Court, one of only two consumer classes against Merck relating to the marketing of VIOXX that has been certified in the United States.  Amended Class Certification Order, <u>Exhibit A</u>.   Although the Kentucky Court of Appeals reversed certification of the class two years later by Opinion dated February 10, 2012, the Kentucky Supreme Court accepted discretionary review of that decision. <u>See</u> Court of Appeals Opinion, <u>Exhibit B</u>; Order Granting Motion for Discretionary Review, <u>Exhibit C</u>; Order Setting Oral Argument, <u>Exhibit D</u>.   Briefing and oral argument have taken place, and counsel for Ratliff expects an Opinion to be rendered shortly after the Kentucky Supreme Court returns from summer recess in late August or early September.

Unfortunately, however, despite having been on notice, since at least February, 2013, that Ratliff, on behalf of himself and the Kentucky class of more than 200,000 consumers, objects to the inclusion of the Kentucky Class in any proposed settlement of this consolidated litigation, and despite having been instructed by this Court to negotiate with Kentucky Class counsel in formulating any proposed settlement, Merck's counsel has refused to meaningfully consult with counsel for Ratliff and the Kentucky Class, and have flatly refused all requests by Ratliff and the Kentucky Class that the Kentucky Class either be excluded from the settlement or that a separate settlement offer be extended to the Kentucky Class.[2]  The instant Consent Motion was

---

[2]      Despite the fact that the Kentucky Class was certified for almost a full two years during the time period in which Liaison Counsel are asserting they were involved in settlement negotiations leading to the proposed settlement, counsel for the Kentucky Class was never contacted or invited to participate in any such settlement negotiations by either Merck's lawyers or Liaison Counsel.  Counsel for Merck never contacted Kentucky Class counsel to discuss the possibility of settlement, and never presented counsel with a settlement offer.  Ratliff  and his counsel learned for the first time on Tuesday, February 26, 2013, when counsel for Ratliff was contacted by Plaintiff's Liaison Counsel Mr. Russ Herman, that the parties in this Multi-District Litigation were nearing submission of an alleged universal preliminary settlement proposal for the Court's consideration.  Mr. Herman informed counsel for Ratliff that the proposed settlement had been drafted as a universal settlement based on the attorneys' belief that no state court consumer class actions remained pending against Merck & Co., Inc. ("Merck").  To the contrary, and as the attorneys for Merck are and have long since been fully aware, the Pike Circuit Court certified a class in Kentucky on April 2, 2010 consisting of Kentucky consumers seeking economic damages arising from their purchase of Vioxx asserting claims of common law fraud and violations of the KCPA.  The Kentucky Class has fought since that time to obtain redress for the injuries it suffered as a result of Merck's wrongful actions, and is

furthermore filed despite liaison counsel for Plaintiffs and Defendants having been thoroughly apprised of the status of the Kentucky Class and of the fact that the Kentucky Supreme Court is likely to issue a ruling in that matter in a little over a month.  The Motion therefore appears to be a thinly veiled attempt to railroad a preliminary approval of settlement that encompasses the Kentucky Class before the Kentucky Supreme Court has ruled on the pending appeal.

As set forth more fully below, although the Certification Order of the Trial Court with respect to the Kentucky Class' common law fraud claims was reversed by the Kentucky Court of Appeals by Order dated February 10, 2012, the Class claims arising under the Kentucky Consumer Protection Act remain properly certifiable under the Kentucky Court of Appeals' reasoning.  See Court of Appeals Opinion, Exhibit B.  The Kentucky Supreme Court has granted The Kentucky Class' request for discretionary review of the Court of Appeals' ruling, and the

---

now in the midst of defending the Pike Circuit Court's decision to certify on its second trip to the Kentucky Supreme Court.

Immediately upon learning of the existence of a nearly final settlement proposal, Ratliff served Liaison Counsel and the Court with a Preliminary Notice of Objection objecting to any proposed settlement class inclusive of the Kentucky Class claims.  [DE 64289].  Counsel for Ratliff thereafter traveled to New Orleans and participated in a Status Conference on March 14, 2013, during which certain preliminary objections of Ratliff and the Kentucky Class to inclusion in any settlement reached in this matter were briefly heard by the Court.  Although the Court admonished Merck's counsel to include counsel for Ratliff in further settlement discussions, and to deal directly with Kentucky Class counsel, no such meaningful effort has been made.  For example, counsel for Ratliff traveled to Washington D.C. at their own expense to attend a meeting with defense counsel that was in fact initiated and requested by Kentucky Class counsel.  During this meeting, counsel for the Kentucky class described the unfairness of including the Kentucky Class in any proposed settlement to Merck's counsel in detail and urged a separate settlement be negotiated.  Despite this effort, Merck's counsel never responded with any meaningful attempt to address Kentucky Class counsel's concerns regarding a proposed settlement in these proceedings that included the Kentucky claims, and never made any settlement offer with respect to the Kentucky claims despite Kentucky Class counsel's invitation to do so.

In fact, counsel for the Kentucky Class specifically reached out to defense counsel to invite settlement discussions following the May 15, 2013 oral argument before the Kentucky Supreme Court, during which Merck's counsel was severely questioned, and which counsel for the Kentucky Class believed proved quite favorable to the Kentucky Class. This invitation was wholly ignored. Further, despite the fact that oral argument has now been held before the Kentucky Supreme Court, rendering the appeal ripe for decision, there was no mention by Liaison Counsel of the Kentucky Class or efforts to negotiate with the Kentucky Class at the most recent Status Conference held on this matter at the end of June.  Now, a little over a month before the Kentucky Supreme Court is likely to rule, and without any attempt on the part of Merck to negotiate with the Kentucky Class despite this Court's pointed direction to them to do so, the parties to this action seek preliminary approval of a settlement that unfairly includes the Kentucky Class.

chances are high that the Kentucky Supreme Court will overturn that decision in its entirety.   It is, however, the Kentucky Class' position that regardless of the outcome of that appeal, the Kentucky Consumer Protection Act claims will remain viable.

The Kentucky Consumer Protection Act contains wording that is nearly identical to the Missouri Consumer Protection Act.  Given that a VIOXX consumer class under the Missouri Consumer Protection Act has been certified, upheld, and then settled by Merck for several times what Merck now proposes to settle consumer claims nationwide, it is clear that if the Kentucky Class claim under the KCPA in fact remains viable, then the Kentucky Class' interests will not be properly protected by the nationwide settlement.  Proceeding in Kentucky state court is in fact in the best interest of Ratliff and the Kentucky Class, and Ratliff, on behalf of himself and others similarly situated therefore formally objects to the proposed settlement and requests that the Kentucky Class be excluded from any settlement approved in this proceeding.  Ratliff notes that this Objection filed on behalf of the Kentucky Plaintiffs will be rendered moot if the Kentucky Class is excluded from the proposed MDL Settlement.

## ARGUMENT

I.    **Ratliff, On Behalf Of The Kentucky Class, Has Standing To Object To Any Proposed Settlement That Encompasses Kentucky Consumer Claims.**

In considering proposed class settlements, federal courts utilize a two-step process under Fed. R. Civ. P. 23(e) – the court must first make the original determination whether a proposed settlement is within the range of fairness, reasonableness and adequacy so as to justify notifying the class members of the proposed settlement, followed by a fairness hearing to decide whether the proposal is indeed fair, reasonable and adequate in the ultimate sense.  See, Manual for Complex Litigation (Fourth), § 21.632 ("Review of a proposed class action settlement generally involves two hearings.  First, counsel submit the proposed terms of settlement and the District

Court then makes a preliminary fairness evaluation."). <u>See also, e.g.</u>, <u>Armstrong v. Board of School Directors</u>, 616 F.2d 305, 314 (7th Cir. 1980).

In making a final determination as to the propriety of a proposed settlement, the most important factor is "the strength of plaintiffs' case on the merits balanced against the settlement offer…." <u>Armstrong</u>, 616 F.2d at 314. Other factors to be considered are: (a) the complexity, length and expense of continued litigation; (b) the absence or presence of collusion in reaching a settlement; (c) the opinion of competent counsel as to the reasonableness of the proposed settlement; (d) the defendants' ability to pay; (e) the stage of the proceedings and the amount of discovery completed; (f) the reaction of the class members to the proposed settlement; and (g) the opposition, if any, thereto. <u>Id.</u>

Although it is not always possible for a court to be aware of the existence of negative reaction of the class members to the proposed settlement during the <u>preliminary</u> consideration of the settlement, to the extent that a court is made aware of any such objection, it must be given weight and due consideration. <u>See</u>, <u>In re Amino Acid Lysine</u>, 1996 U.S. Dist. LEXIS 5308, 10-15 (N.D. Ill. Apr. 19, 1996) (noting that during the first-step of the two step process, "when it is being decided whether the proposed settlement is sufficiently within the range of fairness, reasonableness and adequacy to justify notifying the class members," it is not always possible for the court to be aware of the reaction of the class members and the existence of any opposition to the proposed settlement).

The Court in <u>In re Amino</u>, <u>supra</u>, had the benefit of media coverage bearing on the issue of the fairness of the settlement and class members' reaction thereto. Because this information was available during the first-step consideration of the proposed settlement, the Court gave the information its due weight, even though the parties did not address the information provided by the media reports in their briefs. <u>Id.</u> at 13. Specifically, the media reports indicated that the $2.5

6

million proposed to be contributed by Archer Daniels Midland toward settlement was smaller

than the reserves that the company had set up for the litigation.  The Court noted that, in its

experience, "it has found such reserves to be a material indicia of the fair value of a liability,

estimated by those who are presumably in the best position to make such an evaluation." Id.

Because there was no reference to this factor in the parties' briefs, or any indication whether the

negotiations or informal discovery that preceded entry into the agreement for the proposed

settlement had taken that evaluation into account, the Court held that "[a]t a minimum," it would

"require more extensive disclosure in that respect." Id. at 14.  The Amino Court then established

a timetable for the parties to provide additional information with respect to this issue, and

deferred ruling on even the preliminary determination of fairness until such time as the parties

were able to address the Court's concerns.

     The method utilized by the Amino Court is in-line with process for consideration outlined

in the Manual for Complex Litigation, which notes that even at the preliminary stage of

consideration, "it is often prudent to hear not only from counsel but also from named plaintiffs,

from other parties, and from attorneys who represent individual class members but did not

participate in the settlement negotiations."  Manual, § 21.632.  The Manual goes on to state that

at the preliminary hearing, "the judge should raise questions," and "perhaps seek an independent

review if there are reservations about the settlement," including "unduly preferential treatment of

class representative or segments of the class," or "inadequate compensation or harms to the

classes."  The Manual concludes that after questions are raised by the Court, "[t]he parties then

have an opportunity to resume negotiations in an effort to remove potential obstacles to court

approval." Id.

     It is the position of Kentucky Plaintiffs that the Kentucky Class certified by the Pike

Circuit Court with respect to claims arising under the Kentucky Consumer Protection Act

remains viable, and Ratliff requests that the Kentucky Action be excluded from the proposed settlement.  In the alternative, however, Ratliff requests that the Court defer even a preliminary consideration of any proposed settlement purporting to encompass the Kentucky Class until the Kentucky Supreme Court has issued a ruling on the Kentucky Class' appeal of the Court of Appeals ruling de-certifying the consumer class. Oral argument before the Kentucky Supreme Court took place on May 15, 2013.  The Kentucky Supreme Court does not issue any opinions during its summer recess, which takes place the month of July.  It is believed that the Court will likely render an Opinion in late August or early September, after returning from recess.   Given the long history of this litigation, any delay occasioned by postponing preliminary consideration of the fairness of a proposed settlement that encompasses the Kentucky Class is minimal.

Ratliff, on behalf of himself and the Kentucky Class, furthermore requests the Court to take a hard look at Merck's motivations for seeking inclusion of the Kentucky Class within the proposed consumer settlement.  Ratliff believes, as explained more fully below, that Merck is attempting to include the Kentucky Class in the settlement because it suspects that the Kentucky class claims will remain viable following the ruling of the Kentucky Supreme Court and understands that the value of those claims is well in excess of the nationwide settlement now proposed.  Ratliff therefore believes that Merck is attempting to push the proposed settlement through in advance of the Kentucky Supreme Court's ruling in an attempt to render moot any ruling of that Court affirming the original certification of the Kentucky Class.

II.     **Merck's Attempt To Include The Kentucky Class In The Proposed Settlement Is Nothing More Than Another Attempt To Derail Viable And Extensive Litigation That Has Been Pending Since 2004 And Which Has Been Continuously Obstructed By Merck.**

Since 2004, when Ratliff filed the Kentucky litigation, Merck has engaged in obstructive and abusive litigation techniques, making every effort to delay the progress of the litigation and

prevent the putative class members in this action from obtaining redress for the injuries they have suffered as a result of the Merck's deceptive and manipulative marketing practices. This case has been litigated for almost nine years. In that time, Merck, a multi-billion-dollar corporation, has personally attacked the integrity of the Pike Circuit Court, attempted to smear the credibility of the class Plaintiff, and has spent hundreds of thousands of dollars delaying the litigation in an apparent attempt to force the Ratliff and Ratliff's counsel to abandon the litigation.

Merck has in fact previously unsuccessfully sought inclusion of the Kentucky litigation in this Multi-District Litigation. As noted above, on November 29, 2004, Merck removed the Kentucky litigation to Federal Court and also filed a Motion with the Judicial Panel on Multidistrict Litigation ("JPML") seeking to transfer this case to a single court for coordinated pretrial management pursuant to 28 U.S.C. §1407. On January 1, 2005, Ratliff filed a Motion To Remand. After a thorough analysis of the potential value of Ratliff's and the other potential class members' claims, and based upon its conclusion that Merck failed to show that the damages on each person's claims would exceed the jurisdiction threshold of $75,000, the United States District Court for the Eastern District of Kentucky held that it did not have jurisdiction over this cause of action. On March 3, 2005, the District Court entered an Order remanding the action to Pike Circuit Court. See March 3, 2005 Order, attached to Ratliff's Preliminary Notice of Objection, [DE64289], as Exhibit F. That ruling should be honored and the Kentucky Class should rightfully be excluded from these proceedings.

Ratliff thereafter sought an Order of the Pike Circuit Court certifying the action as a class action pursuant to CR 23.01 and CR 23.02(c). Extensive briefs were filed in support of and in opposition to Ratliff's Motion, and Merck also filed a Motion for Summary Judgment asking that Ratliff's claims be dismissed on various bases. The Pike Circuit Court, after considering the

briefs and oral argument from both sides, entered two separate Orders dated April 2, 2010 – one denying Merck's Motion for Summary Judgment, and one granting Ratliff's Motion to Certify. See April 2, 2010 Orders, attached to Ratliff's Preliminary Notice of Objection, [DE64289], as Exhibit B.

Despite the fact that established Kentucky precedent states that Petitions for Writs of Prohibition or Mandamus are not an appropriate means for challenging class certification orders, see Garrard County Bd. of Educ. v. Jackson, 12 S.W.3d 686 (Ky. 2000), Merck sought relief from the April 1, 2010 Class Certification Order by filing a Petition for Writ of Mandamus with the Kentucky Court of Appeals, arguing that the Pike Circuit Court's decision to certify the Class was in error and should be reversed.  The Court of Appeals denied Merck's Petition by Order dated July 12, 2010.  In so ruling, the Court of Appeals relied on both the holding in Jackson, supra, and upon a finding that Merck had an adequate remedy of appeal following a final adjudication of the merits.

Merck further appealed to the Kentucky Supreme Court from the Court of Appeals decision denying the mandamus relief sought by it.  The Kentucky Supreme Court affirmed on the basis of the Jackson decision, and found that Merck had not demonstrated that it would be irreparably harmed by the Trial Court's decision to certify the class.  See Court of Appeals Order denying Petition for Writ of Mandamus, attached to Ratliff's Preliminary Notice of Objection, [DE64289], as Exhibit G, Kentucky Supreme Court Order Affirming Court of Appeals,  attached to Ratliff's Preliminary Notice of Objection, [DE64289], as Exhibit H.

After the Kentucky Supreme Court affirmed, and the matter was remanded to this Court for further consideration, Ratliff requested the Pike Circuit Court to enter an Amended Class Certification Order clarifying the bases for the court's decision to certify.  This Motion was precipitated by the fact that Merck based its Petition for Writ of Mandamus partially upon its

argument that the Order certifying Class Action failed to make specific findings supporting its ruling and was therefore inadequate.  But Merck objected to the Plaintiffs' Motion To Enter Amended Order Certifying Class, and attempted to prevent the Pike Circuit Court from amplifying or clarifying the grounds for its earlier certification decision – in effect whipsawing the Court in an effort to prejudice the Kentucky Class.  Merck, in essence, sought to have its cake and eat it too – telling the Court of Appeals that the Pike Circuit Court had not done its job while telling Pike Circuit Court it could not continue to do its job by exercising its discretion to amplify an interlocutory Order that could be modified or added to at any time before a final Order was entered.  See, e.g., Bellarmine College v. Hornung, 662 S.W.2d 847, 849 (Ky. Ct. App. 1983).

On January 27, 2011, however, the Trial Court granted Ratliff's Motion, and entered an Amended Order certifying the Kentucky Class with respect to its common law fraud and Kentucky Consumer Protection Act claims.  See Amended Order, Ex. A.  The Amended Order entered by the Pike Circuit Court contains a detailed recitation of facts, a description of the class Plaintiff and class allegations, and a complete Rule 23 analysis, with citation to relevant case law.  Id.  Specifically, the Trial Court found that with respect to each claim the class is so numerous that joinder of all members is impracticable, that there are questions of law and fact common to the class, that the claims and defenses of the representative parties are typical of the claims and defenses of the class, that Ratliff will fairly and adequately protect the interests of the class, that questions of law and fact common to the class predominate, that a class action is the superior means of adjudicating the claims at issue, and that resolution of the action as a class does not pose any particularly difficult management or administrative problems.  Id.  Merck appealed from this Amended Order Certifying Class, arguing that common questions of law and

11

fact do not predominate under CR 23.02(c), that a class action is not the superior method for adjudication, and that Ratliff is not a typical or adequate representative.

As set forth more fully, <u>infra</u>, the Court of Appeals reversed the Trial Court's ruling with respect to the Kentucky Class' common law fraud claims while citing the Trial Court's reasoning with respect to the Kentucky Consumer Protection Act  ("KCPA") claims with approval. It has therefore been the position of the Kentucky Class that the KCPA class claim remains viable. Court of Appeals Order, <u>Exhibit C</u>.  Ratliff, on behalf of the Kentucky Class petitioned the Kentucky Supreme Court for Discretionary Review on the issue of whether the Court of Appeals erred in refusing to extend a fraud on the market  or generalized theory of fraud in the consumer context for the purposes of establishing the element of reliance in a common law fraud claim on a class-wide basis.  Petition for  Discretionary Review, attached to Ratliff's Preliminary Notice of Objection, [DE64289], as Exhibit D.  The Kentucky Supreme Court granted Ratliff's Motion for Discretionary Review, and both the Appellants' Brief, and an Amicus Brief filed by the Kentucky Justice Association have been filed with that Court.  <u>See</u> Appellants' Brief, attached to Ratliff's Preliminary Notice of Objection, [DE64289], as Exhibit J; Amicus Brief, attached to Ratliff's Preliminary Notice of Objection, [DE64289], as Exhibit K.[3]  Oral argument took place on May 15, 2013, during which time it became clear that the Court will consider the entirety of the Court of Appeals' ruling, including the viability of the Kentucky Class claims under the KCPA.

**III.    As Ratliff Has Argued On Appeal To The Kentucky Supreme Court, The Court Of Appeals Erred In Finding That The Trial Court's Decision To Certify The Kentucky Class Claims Was An Abuse Of Discretion.**

On appeal from the Trial Court's Amended Order Certifying Class, numerosity and the presence of common questions of law and fact under CR 23.01(a) and (b) were not disputed.

---

[3]        Briefs filed as Exhibits do not include the attachments originally accompanying the documents.

Merck argued, however, that common questions of law and fact do not predominate under CR 23.02(c), that class action is not the superior method for adjudication under CR 23.02(c), and that Ratliff is not a typical or adequate representative under CR 23.01(c) and (d).  Specifically, Merck argued that the Trial Court abused its discretion in granting class certification with respect to the Kentucky Class' fraud-based claims because individual questions of reliance, causation and damages existed that would create mini-trials that would proliferate and prevent the predominance, typicality and superiority requirements for the certification of a class from being met.

The Court of Appeals addressed the argument by Merck regarding predominance under CR 23.02(c), and reversed the Trial Court, finding that the class members' claims of negligent misrepresentation and unjust enrichment could not satisfy the predominance requirement under CR 23.02(c).  See Exhibit C, February 10, 2012 Court of Appeals Opinion (hereinafter "Opinion").  In so doing, however, the Court of Appeals first noted that it agreed with several aspects of the Trial Court's Amended Certification Order:

> Nonetheless, it should first be acknowledged that that we agree with the trial court on several initial points.  Indeed, we agree that Ratliff's and the putative class members' claims hinge upon whether Merck knowingly or negligently distributed false or misleading information while VIOXX was on the market.  This common question threads through each potential class member's claims.  We further acknowledge that predominance does not require that each and every possible issue be common to all class members, but only that common issues *substantially predominate* over those issues which are individual in nature.

Court of Appeals Opinion, p. 10 (emphasis in original, citations omitted).

The Court of Appeals based its ruling that the class members' fraud and misrepresentation claims did not satisfy the predominance requirement under CR 23.02(c) on that fact that, under Kentucky law, the fraud claims each contained the element of reliance:

> In the present case, each of the putative class members would have to show that his or her respective physicians individually relied upon the false or misleading

information disseminated by Merck when prescribing Vioxx to them.  It is exactly
this type of individualized proof which generally makes class litigation
inappropriate in fraud and misrepresentation cases.

Id. at 12.

The Court of Appeals went on to note, however, that in some cases involving fraud or

misrepresentation, a "class action may still be appropriate where common issues predominate

over individualized questions and arise from a single fraudulent scheme or conspiracy or from

identical misrepresentations." Id. at 13.

It has been Ratliff's contention, in pleadings and on appeal, that Merck used a consistent

pattern of deception lasting essentially the entire time that Vioxx was on the market, and that

generalized proof could therefore be used to show the elements of fraud and misrepresentation as

to the Vioxx product in this case.  The Court of Appeals analogized Ratliff's argument to the

rebuttable presumption of reliance and causation known in securities litigation under the fraud on

the market theory.  The Court of Appeals declined, however, to extend the fraud on the market

theory beyond the scope of securities litigation, noting that other jurisdictions have likewise

refused to allow use of the theory in consumer litigation:  "[T]he 'fraud-on-the-market' approach

has never been recognized in this jurisdiction for a fraud or misrepresentation case." Id. at 15.

The Court therefore concluded that individual questions of causation, reliance and damages

defeated class certification of the Kentucky Class' fraud and misrepresentation claims.

Based on these conclusions, the Court of Appeals ruled that the Trial Court abused its

discretion by entering the Amended Order Certifying Class, and reversed and remanded the

matter to the Trial Court with instructions for the Court to vacate its prior order.  Importantly, the

Court of Appeals did not specifically find that the Trial Court abused its discretion in certifying

the proposed class with respect to claims arising under the KCPA.

**IV.     As Argued To The Kentucky Supreme Court, The Court Of Appeals' Opinion Does Not Reverse Class Certification With Respect To Plaintiff's Claims Arising Under The Kentucky Consumer Protection Act, And Certification Of The Class Claim Arising Under The KCPA Is Appropriate Here As In Plubell.**

Ratliff, on behalf of himself and the Kentucky class, has argued before the Supreme Court of Kentucky that the Court of Appeals' Opinion did not reverse the Trial Court's decision to certify the putative class with respect to the class claim under the KCPA, and that the class claim asserted under the KCPA is in fact properly certifiable.

The Court of Appeals Opinion specifically concluded that the KCPA class claim does not have the same problems as the class common law fraud claims with respect to class certification because a claim arising under the KCPA does not require proof of causation or reliance, and loss can be proved on a class wide basis under the "benefit-of-the-bargain" rule. See Exhibit B, Opinion, pp. 10-11.   In so finding, the Court quoted the KCPA, concluding that, "taking the allegations in the complaint as true for purposes of review, it is clear that Merck's actions would be unlawful under the Act." Id., p. 11.  As cited by the Court, the language of the KCPA does not contain the element of reliance found in common law fraud claims.  See KRS 367.220(1) ("Any person who purchases or leases goods or services primarily for personal, family, or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful [under the Act] may bring [a civil action] in the Circuit Court.").

The Court of Appeals then analogized the KCPA to the nearly identical Missouri Consumer Protection Statute at issue in Plubell v. Merck, 289 S.W.3d 707, 714 (Mo. Ct. App. 2009), in which the Missouri Court of Appeals affirmed a trial court's certification of a similar class asserting claims under that state's consumer statute based upon a finding that individual questions with respect to causation, reliance, and damages did not exist under the statutory

scheme.  See Plubell Opinion, p. 11, attached to Ratliff's Preliminary Notice of Objection, [DE64289], as Exhibit N.  In Plubell, the Missouri Court of Appeals found that the statute required that the consumer's economic loss result from the unlawful practice at issue, but not that the actual purchase of the product be caused by the unlawful practice.  The Court noted that: "[u]nder this interpretation, causation need not be shown with respect to each individual class member's decision to purchase Vioxx, but merely that a loss resulted from the practice."  The Court further referenced the Plubell opinion in support of its conclusion that the "benefit-of-the bargain" theory of loss could be applied on a class-wide basis to claims arising under the KCPA. Id. (citing Plubell, 289 S.W.3d at 715, for the proposition that damages are not measured by the purchase of the product in question, but by the difference in value between the product "as represented" and the "actual value" of the product received).  The Missouri Court also relied upon a New Jersey opinion for its application of the benefit of the bargain method of determining loss with respect to claims arising under the KCPA.  See Id., p. 12 (citing Kleinmann v. Merck & Co., 8 A.3d 851 (N.J. 2009) (also applying a "benefit-of-the-bargain" theory of value/loss)).[4]

In fact, and as the Court of Appeals decision makes quite clear, the analysis employed by that Trial Court with respect to the Kentucky Class' fraud and misrepresentation claims cannot apply to a claim arising under the KCPA because, reading the statute on its face, reliance is not an element that must be established with respect to a KCPA claim.  Apparently finding that the Trial Court's Amended Certification Order could not be separately considered with respect to each claim, however, the Court of Appeals reversed and remanded the matter to Trial Court with instructions for the Trial Court to vacate its prior Order.  Ratliff has full confidence that the

---

[4]     The Plubell Consumer Class Action has since been settled.  The Plubell Settlement Agreement provides for the establishment of a Common Fund, to include, without limitation, the monetary value of settlement payments made available to each class member, the cost of notice, the plaintiffs' counsel fees and expenses, costs of administration, and incentive awards for representative plaintiffs.  The Common Fund has been funded by an initial payment by Merck of $39 million.  Id.

Kentucky Supreme Court will speak definitively with respect to the appropriateness of the trial court's certification of the class KCPA claim, making even preliminary approval of the proposed settlement of this matter prior to the issuance of the Kentucky Supreme Court's Opinion in the Kentucky action  inappropriate, premature, and clearly unfair to the Kentucky Class.

## V.       Given The Likelihood That The Kentucky Class Claims Arising Under The KCPA Will Remain Viable, Inclusion Of The Kentucky Class In Any Proposed Settlement Is Inherently Inequitable.

As described above, the likelihood that the Kentucky Class claim under the KCPA will remain viable is high in light of the prior trial court certification of the claim, the Court of Appeal's reasoning, and the similarity between the KCPA and the Missouri Consumer Protection Statute.  Assuming for the purposes of argument that the claim is in fact viable, it becomes immediately clear that including the Kentucky Class within a nationwide settlement capped at $23 million flies in the face of principles of equity and fairness.  As previously noted, Merck has previously settled the claims of consumers in one state  certified under a statute nearly identical to Kentucky's, for an uncapped amount inclusive of the monetary value of settlement payments made available to each class member, the cost of notice, the plaintiffs' counsel fees and expenses, costs of administration, and incentive awards for representative plaintiffs.  The Common Fund in that settlement has been funded by an initial payment by Merck of $39 million.

Liaison counsel and Merck now seek approval of a settlement that purports to include consumers in the remaining fifty states, asserting both common law and statutory consumer claims, for a fraction of this amount, based upon their assertion that the class claims are not likely to succeed, either on their own or as state-wide class actions, and should thus be discounted.  However, given the viability of claims arising under Consumer Protection Acts that do not require establishment of the element of reliance, as demonstrated by Plubell and the

opinion of the Kentucky Court of Appeals, inclusion of the Kentucky Class in a settlement that is capped at such a low figure, inclusive of attorney's fees, is inherently unreasonable and unjust.

Although the timeframe of two days in which to file a Response to the Consent Motion for Preliminary Approval of Class Settlement now before the Court does not sufficiently allow for the preparation by Ratliff of a detailed discussion of the numerous aspects where the proposed settlement is grossly insufficient to compensate America's consumers, it should be noted that a common fund capped at $23 million inclusive of attorneys fees and costs is facially insufficient to cover the claims of the consumers who have been made a part of the class. After attorneys' fees of $7,360,000 are subtracted from the common fund, this leaves a little more than $15 million, prior to deduction of administrative and notice costs, to pay the claims of an entire nation of consumers. Even assuming that each member of the proposed class will only qualify for the $75 payout guaranteed upon submission of a proper claim, this means that the fund will provide for the payment of less than 200,000 consumer claims. The Kentucky Class of consumers alone exceeds this number.[5]

## **CONCLUSION**

Based on the foregoing, Ratliff requests the Court consider the instant Objection, withhold preliminary approval of any proposed settlement encompassing Kentucky consumers, and exclude the Kentucky Action from any MDL proposed settlement so that the Kentucky Action is not included in any such settlement.

---

[5]     It should be noted that more than twenty states have adopted consumer protection laws that, like Kentucky, do not require establishment of the element of reliance – the primary obstacle to certification of consumer classes asserting common law claims.   There is therefore a strong likelihood that the claims of consumers in these states would likewise be viable and that classes in each such state could be certified.   Considering the viability of consumer claims in these states abundantly supports Ratliff's assertion that the proposed settlement, consisting of a common fund capped at $23 million  is not sufficient.

Respectfully submitted,


  /s/ Richard A. Getty
RICHARD A. GETTY
         and
JESSICA K. CASE

THE GETTY LAW GROUP, PLLC
1900 Lexington Financial Center
250 West Main Street
Lexington, Kentucky  40507
Telephone:  (859) 259-1900
Facsimile:   (859) 259-1909

COUNSEL FOR JAMES RATLIFF,
ON BEHALF OF HIMSELF AND ALL
OTHERS SIMILARLY SITUATED

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing Preliminary Notice of Objection has been served upon all parties by electronically uploading the same to LexisNexis File and Serve Advance in accordance with Pre-Trial Order No. 8C, and e-mailing and mailing same, postage prepaid, to the individuals listed below, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this the 19th day of July, 2013.

Russ M. Herman, Esq. (Bar No. 6819)
      and
Leonard A. Davis, Esq. (Bar No. 14190)
Herman, Herman & Katz, L.L.C.
820 O'Keefe Avenue
New Orleans, Louisiana  70113
E-Mail:  rherman@hhklawfirm.com
E-Mail:  ldavis@hhklawfirm.com
Plaintiffs' Liaison Counsel

Phillip A. Wittmann, Esq. (Bar No. 13625)
      and
Dorothy H. Wimberly, Esq. (Bar No. 18509)
Stone Pigman Walther Wittmann, L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130-3588
E-Mail:  pwittmann@stonepigman.com
E-Mail:  dwimberly@stonepigman.com
Defendants' Liaison Counsel

Ann B. Oldfather, Esq. (KY Bar No. 52553)
Oldfather Law Firm
1330 South Third Street
Louisville, Kentucky  40208
E-Mail:  aoldfather@oldfather.com
Liaison And Lead Counsel For Ineligible
Or Non-Enrolled Cases And Certain
Other Remaining PI Claims

John H. Beisner, Esq.
Skadden Arps Slate Meagher & Flom, LLP
1440 New York Avenue, N.W.
Washington, D.C.  20005
E-Mail:  John.Beisner@skadden.com
Counsel for Merck & Co., Inc.

Dawn M. Barrios, Esq.
Barrios, Kingsdorf & Casteix, LLP
701 Poydras Street, Suite 3650
New Orleans, Louisiana  70139
E-Mail:  barrios@bkc-law.com
Government Action Liaison Counsel

Elizabeth J. Cabraser, Esq.
Lieff Cabraser Heimann & Bernstein
275 Battery Street, 29th Floor
San Francisco, California  94111-3339
E-Mail:  ecabraser@lchb.com
Co-Lead Class Settlement Counsel

   /s/ Richard A. Getty
COUNSEL FOR JAMES RATLIFF, ET AL.

jkcpld0725