PIKE CIRCUIT COURT
35TH JUDICIAL CIRCUIT
DIVISION II

Case No. 04-CI-01493

JAMES RATLIFF, On Behalf Of Himself
And All Others Similarly Situated                                    PLAINTIFFS

V.                              AMENDED ORDER
                          CERTIFYING CLASS ACTION

MERCK & COMPANY, INC., A Foreign
Corporation                                                          DEFENDANT

* * * * * * * *

Upon Motion of the Plaintiff, James Ratliff ("Ratliff" or "Plaintiff"), by counsel, requesting the Court to enter an Amended Order Certifying Class, and the Court being fully and sufficiently advised, it is hereby ORDERED that the instant Amended Order Certifying Class Action be entered into the record of this matter.

### RELEVANT PROCEDURAL BACKGROUND

On October 27, 2004, Plaintiff Ratliff, individually and on behalf of all others similarly situated, filed the instant action in this Court against Defendant Merck & Company, Inc. ("Merck"). The Complaint seeks damages for violations of the Kentucky Consumer Protection Act, fraud, negligence, and unjust enrichment arising from the Defendant's advertising and marketing of VIOXX® ("Vioxx") to consumers in Kentucky.

Ratliff sought, and on April 22, 2010, received, an Order from this Court certifying the instant action as a class action pursuant to CR 23.01 and CR 23.02 (c) so that he and other potential Plaintiffs in Kentucky who are similarly situated may obtain the reimbursement relief they seek in connection with the claims asserted in the Class Action Complaint. This Amended

**EXHIBIT A**

Order Certifying Class Action incorporates that April 22, 2010 Order, and will serve as the operative Class certification Order as this litigation proceeds.

## RELEVANT FACTUAL BACKGROUND AND ALLEGATIONS

Merck is a foreign corporation with its principal place of business in New Jersey, and is in the business of manufacturing and/or promoting, marketing, and distributing the drug Vioxx. Merck does business in Kentucky and, between 1999 and 2004, sold Vioxx in Kentucky to thousands of Kentucky consumers. Vioxx, generically known as Rofecoxib, is a nonsteroidal anti-inflammatory drug ("NSAID"). It was introduced to the market on May 21, 1999. In May 2001, the Federal Food and Drug Administration ("FDA") approved Vioxx for treating primary dysmenorrheal (severe menstrual cramps), managing acute pain in adults, and relieving symptoms relating to osteoarthritis. Merck promoted Vioxx as having a safety profile superior to other NSAIDs. Specifically, unlike traditional NSAIDs, which include aspirin, ibuprofen and naproxen, Vioxx did not cause serious gastrointestinal side effects. Whereas traditional NSAIDs operate by inhibiting two enzymes-cyclooxygenase-1 ("COX-1") and cyclooxygenase-2 ("COX-2"), Vioxx selectively suppresses only COX-2 without affecting COX-1. This is significant because the suppression of COX-1 can lead to the deterioration of the stomach lining and gastrointestinal problems such as perforations and bleeds.[1]

The Plaintiff has alleged that Merck chose to keep VIOXX on the market despite being put on notice regarding the potential health risks, and that Merck attempted to minimize the negative reports regarding the side effects of the drug by disseminating misleading information.

The Plaintiff further alleges that following studies identifying serious side effects, and despite a mounting body of evidence suggesting that Vioxx materially increased the risk of serious cardiovascular injury in patients taking the drug, Merck elected to engage in promotional

---

[1] Detailed factual background taken, in part, from the opinion in In re Merck & Co., Inc. Securities, Derivative & "Erisa" Litigation, 483 F.Supp.2d 407, 412 (D.N.J. 2007).

activities and disseminate materials for the marketing of Vioxx that were false or misleading, lacking in fair balance or otherwise misleading, while attempting to discredit studies that suggested the continued use of the drug posed a serious health risk to patients.

The Plaintiff has alleged that Merck put pressure on independent doctors and several of the nation's top medical schools to keep them from discussing evidence of Vioxx's potential safety problems. According to the Plaintiff, Merck's distortions and deceptions regarding the safety of Vioxx began almost immediately after Vioxx was introduced to the U.S. market in 1999, and have pointed out that as early as December, 1999, the U.S. Department of Health & Human Services ("DHHS") objected to promotional materials being disseminated by Merck that misrepresented Vioxx's safety profile, contained unsubstantiated comparative claims, and lacked fair balance. The Plaintiff has asserted that despite the DHHS objection, Merck continued to distribute information and engage in conduct designed to distort and misrepresent the safety and efficacy of its drug.

In September, 2001, the DHHS issued a second formal eight-page "Warning Letter" in which it criticized Merck for its continual misleading promotional activities. Specifically, the letter referred to promotional Vioxx audio conferences given on behalf of Merck by various sales representatives and doctors. The letter stated that:

> As a part of its routine monitoring and surveillance program, the Division of Drug Marketing, Advertising, and Communications has reviewed your promotional activities and materials and has concluded that they are false, lacking in fair balance, or otherwise misleading in violation of the Federal, Food, Drug, and Cosmetic Act.

See 2001 Warning Letter, attached to Plaintiff's Memorandum In Support Of Motion To Certify Class as Exhibit B.

The DHHS accused Merck of engaging in "a promotional campaign for Vioxx that minimizes the potentially serious cardiovascular findings that were observed in the Vioxx

3

Gastrointestinal Outcomes Research (VIGOR) study, and thus, misrepresents the safety profile for Vioxx." Merck was also accused, among other things, of making unsubstantiated superiority claims, promoting Vioxx for unapproved uses and issuing a false and misleading press release entitled "Merck Confirms Favorable Cardiovascular Safety Profile of Vioxx." In the Warning Letter, the FDA directed Merck to implement a corrective action plan, including ceasing the misleading promotion of Vioxx and issuing a letter to doctors to correct false information it had disseminated. Id.

The Plaintiff has alleged that despite the DHHS "Warning Letter," Merck continued its campaign to mislead consumers and to deny the real risks that the continued use of Vioxx posed to those who took the medication. As the Plaintiffs noted, as recently as August 26, 2004, Merck issued a press release stating that it "strongly disagrees" with the conclusions of a study presented at the 20th International Conference of Pharmacoepideminology & Therapeutic Risk Management that found, once again, that the use of Vioxx significantly increased the risk of serious cardiovascular events. Merck stated that its studies showed "no significant difference in the rate of serious cardiovascular thrombotic events in patients taking Vioxx vs. placebo" and that "[b]ased on all of the data that are available from our clinical trials, Merck stands behind the efficacy and safety, including cardiovascular safety, of Vioxx." In re Merck & Co., Inc. Securities, Derivative & "Erisa" Litigation, 483 F.Supp.2d 407, 412 (D.N.J. 2007). A month later, however, Merck withdrew Vioxx from the market.

After Vioxx was removed from the market, thousands of individual suits and numerous class actions were filed against Merck in state and federal courts throughout the country alleging various products liability, tort, fraud, and warranty claims. On February 16, 2005, the Judicial Panel on Multidistrict Litigation conferred multidistrict litigation ("MDL") status on Vioxx lawsuits filed in federal court and transferred all such cases to the United States District Court

4

for the Eastern District of Louisiana Court to coordinate discovery and to consolidate pretrial matters pursuant to 28 U.S.C. § 1407. See In re Vioxx Prods. Liab. Litig., 360 F.Supp.2d 1352 (J.P.M.L. 2005). Importantly, only the suits filed in federal court were affected by this transfer order, which left the state court actions against Merck to proceed individually.

On November 9, 2007, Merck entered into a Settlement Agreement ("Agreement") with certain plaintiffs' counsel in order to establish a nationwide settlement program to resolve the personal injury claims of certain individuals who have suffered a heart attack, stroke, or sudden cardiac death resulting from their use of Vioxx (the "Vioxx Claimant(s)"). See Merck, News Release (November 9, 2007), attached to Plaintiff's Memorandum In Support Of Plaintiff's Motion To Certify Class as Exhibit D. In order for claims to be paid under the Settlement Program, counsel representing Vioxx Claimants must have filed with the relevant court no later than January 15, 2008, a Registration Affidavit for every Vioxx client they represent as primary counsel in a personal injury action, regardless of whether the client suffered a heart attack, ischemic stroke, or sudden cardiac death resulting from Vioxx. The representative Plaintiff in this action was not registered, as he has not asserted a claim for personal injury relating to his use of Vioxx.

According to the Agreement, a claimant is only eligible to participate in the Settlement Program if he or she has a filed Vioxx lawsuit pending in any jurisdiction or a Vioxx claim that was tolled under the Tolling Agreement established by the MDL Court, and has alleged in his/her lawsuit or tolling paperwork that the Claimant (or the Deceased or minor for whom the Claimant is the Legal Representative) suffered a heart attack, ischemic stroke, or sudden cardiac death as a result of Vioxx ingestion. See Description of Settlement Agreement, attached to Plaintiff's Memorandum In Support Of Motion To Certify Class as Exhibit E. It is clear from the face of the Agreement that the representative Plaintiff, and others who are similarly situated,

5

will not be eligible for recovery under the Agreement because they have not suffered and are not seeking recovery for injuries relating to a heart attack, ischemic stroke, or sudden cardiac death resulting from Vioxx. The claims asserted in this action fall outside the claims settled by the Agreement and are therefore unaffected thereby.

## THE REIMBURSEMENT CLAIMS ASSERTED HEREIN

Following the withdrawal of Vioxx from the market, the FDA issued a Public Health Advisory to advise patients who had taken Vioxx to consult with a physician. Specifically, on September 30, 2004, the FDA advised all patients who were currently taking Vioxx to contact their physician for guidance regarding the discontinuation and alternative therapies. In a press release issued the same day, Merck acknowledged that patients who were currently taking Vioxx "should contact their health care providers to discuss discontinuing the use of Vioxx and possible alternative treatments." See September 30, 2004 FDA Press Release, attached to Plaintiff's Memorandum In Support Of Motion To Certify Class as Exhibit F.

The Plaintiff brings this case as a class action on behalf of all Kentucky residents who have purchased and taken Vioxx and who, upon the recommendation and advice of the FDA and Merck, have or will contact their physicians to seek advice regarding their use of Vioxx. Plaintiff seeks reimbursement for (a) the costs of such medical consultations, including the costs of any diagnostic testing recommended by the class members' physicians; (b) the lost income and related expenses the class members have, or will have to incur in undergoing such examinations and procedures; and (c) the cost of the Vioxx the class members purchased. Each plaintiff's claims will not exceed the sum of $75,000 exclusive of interest and costs, and no plaintiff will seek to recover in this action for any personal injury he may have sustained as a consequence of taking Vioxx as prescribed.

6

### A.     The Class Plaintiff.

Jim Ratliff is a resident of Pike County, Kentucky. He was diagnosed with chronic osteoarthritis in 1994, at the age of 37. After experimenting with a bevy of anti-inflammatory drugs, including Daypro and Celebrex, his doctor recommended that he take Vioxx, a new drug on the market. In January of 2000, Ratliff began taking Vioxx twice daily. His insurance covered most of the $66.49 price of the drug per month; however Ratliff still had to pay $5 out-of-pocket each month to fill his Vioxx prescription. Ratliff took Vioxx for three years, spending over $75 to purchase the drug. After experiencing severe chest pains and other uncomfortable side effects, Ratliff discontinued use of Vioxx in early 2004, months before the drug was removed from the market. Ratliff has since obtained the medical consultation suggested by the FDA, a consultation that cost approximately $180. Including damages arising from work missed as a result of the medical consultation and other consequential damages, the Plaintiff has alleged that Merck's misleading and deceptive marketing practices resulted in a direct monetary loss to Ratliff of approximately $350.

### B.     The Class Allegations.

The Plaintiff has alleged that by downplaying, concealing, and misrepresenting the safety and risks of Vioxx, Merck failed in its duty to provide the physicians prescribing Vioxx with adequate information to make them so-called "learned intermediates," thereby leaving them with insufficient knowledge to properly advise and warn the consuming public. The Plaintiff has further alleged that by downplaying, concealing, and misrepresenting the safety and risks of Vioxx, Merck also created and perpetuated a false public perception that there was little or no risk of harm from the use of its product.

The Plaintiff alleges that all Kentucky residents who were prescribed and took Vioxx were given the same false and misleading information and suffered under the same

7

misconceptions regarding the drug's safety. All Kentucky residents who were prescribed and took Vioxx have been directed by the FDA and by Merck to see their physicians for consultation regarding their use of the drug. The Plaintiff asserts that these residents have incurred expenses related to these consultations and follow-up diagnostic testing recommended by their physicians, as well as additional economic harm, including lost time from work and related expenses, and the loss of the value of the drugs they purchased. Plaintiff brings this action pursuant to CR 23 on behalf of all Kentucky residents who have, since the FDA approval of Vioxx in 1999, taken the drug and who have already undergone and/or will undergo the medical consultation procedure now recommended by the FDA and Merck.

The Plaintiff, on behalf of himself and others similarly situated, seeks a judgment against Merck for Violation of the Consumer Protection Act, fraudulent concealment and/or misrepresentation, negligent and/or grossly negligent misrepresentation, and for unjust enrichment. The Plaintiff seeks to recover on his behalf, and on behalf of all similarly situated Kentucky residents, the economic loss they have and will sustain as a result of the required medical consultations and any follow-up diagnostic testing recommended by their physicians, as well as any income lost or expenses incurred in connection with any such medical procedures, and the costs of the Vioxx they purchased. Furthermore, Plaintiff also seeks to disgorge Merck of the profits it unjustly reaped by virtue of its fraudulent and misleading marketing campaign - by marketing its product as a safer and more effective alternative to other traditional pain medications, it was able to drive the price of its product substantially higher than the price charged for similar medications.

Plaintiff Ratliff is a member of the class he seeks to represent. The members of the class are so numerous that joinder is impracticable and would involve hundreds of thousands of individual litigants. It is estimated that more than 200,000 Kentucky residents have been

8

prescribed and have used Vioxx. In addition, there are questions of fact or law common to the class that predominates over any questions affecting only individual members. These predominating questions include, but are not limited to:

    a.    Whether Merck breached its duty to investigate the efficacy of Vioxx, to adequately warn physicians and consumers of the dangers incident to prescribing the drugs, to keep abreast of scientific developments and information concerning these products and to notify the medical profession of any new or additional information concerning the potentially dangerous side effects discovered from its use;

    b.    Whether Merck engaged in a scheme and plan to downplay, obfuscate, misrepresent and conceal material information concerning Vioxx's safety profile and sought to minimize, misrepresent or conceal the truly serious cardiovascular risks that continued use of the drug posed;

    c.    Whether by downplaying, concealing, and misrepresenting the risks of Vioxx, Merck created and perpetuated a false public perception that there was little or no risk of harm from the use of its product; and

    d.    Whether members of the class have suffered any economic loss as a result of Merck's conduct.

The claims of Plaintiff Ratliff are typical of the claims of the class members in that the Plaintiff and the members of the class purchased and used Vioxx and have undergone and/or will undergo the medical consultation recommended by the FDA and Merck, and have sustained economic losses as a result. The Plaintiff will fairly and adequately represent and protect the interests of the members of the class, and has retained counsel competent and experienced in class actions. Finally, given that the individual claims of the potential plaintiffs are relatively small, there is a decreased incentive for the plaintiffs to pursue their claims individually. In

addition, most of the plaintiffs are individuals with low to median income levels who could not afford to pursue these claims on their own. A class action, which allows these plaintiffs to come together and seek relief en mass, preserves judicial resources and ensures that the plaintiffs are able to obtain legal representation. For these reasons, and as set forth below, the Court finds that a class action is an appropriate method for the fair and efficient adjudication of the claims asserted in the Complaint filed in this action.

## DISCUSSION

### I. THE PREREQUISITES OF CR 23.01 ARE SATISFIED HERE.

#### A. The Class Is So Numerous That Joinder Of All Members Is Impracticable.

Rule 23.01(a) requires that a court find the class is so numerous that joinder is impractical. Whether a number is so large that it would be impracticable to join all parties depends not upon any magic number or formula, but rather upon the circumstances surrounding the case, the ease of identifying its members and determining their addresses, feasibility of making service on them, and their geographic dispersion. There is no precise size or number or class members that ipso facto meets the "numerosity" requirement of CR 23.01. However, common sense suggests that the larger the number of absent class members, the more likely their joinder is impracticable. See Sowders v. Atkins, 646 S.W.2d 344 (Ky. 1983).

The class herein at issue is defined by precise parameters —it consists only of those consumers who: 1.) reside in Kentucky; 2.) purchased Vioxx; and 3.) subsequently were advised to obtain a physician consultation following the removal of Vioxx from the market. These plaintiffs will be identifiable by reference to the databases of IMS Health Incorporated, a pharmaceutical market research company, and, as noted above, are estimated to number in excess of 200,000. With potential plaintiffs numbering in the

10

hundreds of thousands, joinder of all such potential plaintiffs is impracticable, and a class is therefore the most appropriate means for bringing these claims.

### B. There Are Questions Of Law And Fact Common To The Class.

Civil Rule 23.01(b) requires that common questions of law and fact be present among all class members. This provision does not, however, require that all questions of law or fact be common. 6 Ky. Prac. R. Civ. Proc. Ann. Rule 23.01 (6th ed. 2007). The claims asserted in this action – for violation of the Kentucky Consumer Protection Act, for fraud, and for negligence – implicate and are predominated by questions of fact and law common to the class.[2] Common questions of fact include, but are not limited to, whether Merck engaged in a scheme and plan to downplay, obfuscate, misrepresent, and conceal material information concerning Vioxx's safety profile and sought to minimize, misrepresent or conceal the truly serious cardiovascular risks that continued use of the drug posed; whether by downplaying, concealing and misrepresenting the risks of Vioxx, Merck created and perpetuated a false public perception that there was little or no risk of harm from the use of its product; and whether the proposed plaintiffs suffered economic loss as a result of Merck's actions. The questions of law common to the class are whether Merck's actions – which were uniform as to each member of the class - amounted to negligent or fraudulent misrepresentation or violated the Kentucky Consumer Protection Act.[3]

---

[2] In considering whether there are questions of law and fact common to the class, a Court restricts its inquiry to the determination of whether a class action is appropriate, and should not consider the probability of success on the merits of substantive claim. See, e.g., Walsh v. Ford Motor Co., 130 F.R.D. 260 (D.D.C. 1990). When considering whether to certify a class, a court take the allegations of the merits of the case, as set forth in the complaint, to be true. Sharif by Salahuddin v. New York State Educ. Dept., 127 F.R.D. 84 (S.D. N.Y. 1989).

[3] In fact, Merck has admitted, in litigation involving similar consumer protection claims, that common questions of law and fact were present. International Union of Operating Engineers Local No. 68 Welfare Fund v. Merck & Co., Inc., 929 A.2d 1076, 1085 - 1086 (N.J. 2007) ("[W]e note that defendant concedes that there are some common questions. To be sure, there is no disagreement about the fact that, whatever its specifics, defendant's marketing plan and withholding of adverse information did not vary as among potential consumers. Nor is there any difference in the facts as they relate to the FDA warning letters or the drug's eventual withdrawal from the market.").

11

### C. The Claims And Defenses Of The Representative Parties Are Typical Of The Claims Or Defenses Of The Class.

CR 23.01(c) requires that the claims or defenses of the representative and the members of the class be typical. Ratliff's claims are based on Merck's false and misleading marketing campaign related to the drug Vioxx, which resulted in the proliferation of information and materials that proclaimed the safety and efficacy of a drug that in fact was associated with severe, deadly, and undisclosed thrombotic side effects. Hundreds of thousands of other Kentucky consumers were subjected to this same course of conduct, their claims likewise arise from this course of conduct, and these claims are based upon the same legal theories asserted by Ratliff. The only factual differences between the potential class members in this case relate to damages, and, in practice, where the class representatives' claims are such that they will have to prove the same elements as the remainder of the class, then typicality will normally be found despite factual differences between class members. Threshold requirements for "typicality" are not high. See, e.g., East Texas Motor Freight System Inc. v. Rodriguez, 431 U.S. 395 (1977); Simpson v. Specialty Retail Concepts, 149 F.R.D. 94 (M.D. N.C. 1993); Shipes v. Trinity Industries, 987 F.2d 311(5th Cir. 1993).

### D. Plaintiff Ratliff Will Fairly And Adequately Protect The Interests Of The Class.

Under CR 23.01(d), Ratliff will adequately protect the interests of the class members. Plaintiff seeks to certify a class encompassing all Kentucky residents who were prescribed and took Vioxx and who have been subsequently directed by the FDA and Merck to see their physicians for consultation regarding their use of the drug. Each of these individuals has incurred expenses related to these consultations, as well as additional economic harm, including lost time from work and related expenses, and the loss of the value of the drugs they purchased. Ratliff is a member of this group of consumers and possesses the same interests, has suffered the

12

same injuries, seeks the same economic redress, and his interests are therefore substantially co-extensive with the interests of the Proposed Class.

## II. UNDER CR 23.02(c), QUESTIONS OF LAW AND FACT COMMON TO MEMBERS OF THE CLASS PREDOMINATE, AND CERTIFICATION OF THIS CLASS IS THEREFORE APPROPRIATE.

Common questions predominate with respect to the claims asserted in this action because there is a common nucleus of facts from which the potential plaintiffs' claims arise. All of the potential plaintiffs were prescribed Vioxx by doctors who relied on Merck's assertions that it was safe and effective to treat their individual ailments. All of the potential plaintiffs spent money to purchase Vioxx, and when it was removed from the market all were directed by Merck and the FDA to seek medical consultations relating to their use of the drug. All of the potential plaintiffs were victims of Merck's fraud upon the market and are entitled to recovery under the Kentucky Consumer Protection Act and common law theories of fraudulent misrepresentation, negligent misrepresentation and unjust enrichment. In such circumstances, where the plaintiffs are similarly situated, and seek recovery under identical theories of law and based on the identical conduct of the defendant, common questions of law and fact predominate, making certification of this action as a class appropriate under CR 23.02. See e.g., Wiley v. Adkins, 48 S.W.3d 20, 23 (Ky. 2001)(noting that under CR 23.02 (c), "[i]t is not necessary that there be a complete identity of facts relating to all members as long as there is a common nucleus of operative facts."); In re Workers' Compensation, 130 F.R.D. 99 (D. Minn. 1990) (noting that an issue will meet class action requirement that common questions predominate when there exists generalized evidence that proves or disproves an element on simultaneous, class-wide basis); In re Texas Intem. Securities Litigation, 114 F.R.D. 33 (W.D. Okla. 1987) (holding that a complaint which alleged that a corporation engaged in a common and continuous course of conduct by issuing a series of reports and statements containing interrelated and

13

cumulative misleading data to the investing public in order to inflate price of the corporation's stock sufficiently presented common issues of law with respect to issues of materiality and scienter to support certification of class action, despite the fact that the alleged misrepresentations occurred at different times and were contained in different documents during the proposed class period).

The Complaint in this action seeks damages for violations of the Kentucky Consumer Protection Act, fraudulent and negligent misrepresentation, and unjust enrichment. An examination of the elements of these claims demonstrates that each class members' claims will be based on the same theories of law and each class member will offer precisely the same proof to establish Merck's breach of duty. Common questions therefore predominate and class certification is appropriate. See, e.g. Sala v. National R.R. Passenger Corp., 120 F.R.D. 494 (E.D. Pa. 1988).

## III. A CLASS ACTION IS THE SUPERIOR MEANS OF ADJUDICATING THE CLAIMS HEREIN AT ISSUE.

The second requirement that must be satisfied before an action may be certified under subdivision (c) is that this Court finds that a class action is superior to other methods for the fair and efficient adjudication of this controversy. Wright & Miller, Federal Practice and Procedure (2d ed.), Civil § 1779; Watson v. Shell Oil Co., 979 F.2d 1014 (5th Cir. 1992), on reh'g, 53 F.3d 663 (5th Cir. 1994). Four factors are listed in the subsection for consideration when certification is sought under subdivision (c): (i) the interest of the class in individually controlling the prosecution or defense of separate actions; (ii) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (iii) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (iv) the

difficulties likely to be encountered in the management of the class action. No single factor is determinative. In the instant action, each factor weighs in favor of class certification.

Specifically, where, as here, the monetary value of each Plaintiff's claim is relatively small, it is in the Plaintiff's best interests to pursue their claims as a class. See, e.g., Deposit Guar. Nat'l Bank of Jackson, Miss. v. Roper, 445 U.S. 326, 339 (1980) ("Where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class-action device."). When one inflicts minor harm across a dispersed population, "the defendant is, as a practical matter, immune from liability unless a class is certified." Stephen C. Yeazell, Civil Procedure 966 (5th ed. 2000).

The class action device is therefore specifically designed to facilitate the resolution of claims similar to those asserted here - that is, claims with relatively small monetary value that would not be tried on an individual basis but with respect to which there is an incentive to try in the aggregate. Merck has inflicted a relatively small harm across a large group of consumers – through false marketing practices it induced consumers to purchase a product with undisclosed and potentially fatal side effects. As a result, these consumers were harmed to the extent that they expended money in purchasing the product and in seeking the physician consultation subsequently recommended by Merck and the FDA. See Iliadis v. Wal-Mart Stores, Inc., 922 A.2d 710, 714 - 731 (N.J. 2007); Weber v. Goodman, 9 F.Supp.2d 163, 170-71 (E.D.N.Y. 1998) (noting that because of the very real likelihood that class members will not bring individual actions, class actions are "often the superior form of adjudication when the claims of the individual class members are small.").

The Court has further considered that Merck may benefit from having this litigation concentrated in one forum. Addressing the claims of all Kentucky consumers for economic

15

harm arising from use of Vioxx in one action will protect Merck from being subjected to the expensive ordeal of continually having to demonstrate its purported innocence at trial. Galloway v. American Brands, Inc., 81 F.R.D. 580 (E.D. N.C. 1978).

### B. Resolution Of This Action As A Class Does Not Pose Any Particularly Difficult Management Or Administrative Problems.

The last consideration calls for an evaluation of the management or administrative problems typically associated with class actions. A trial court must compare the administrative difficulties of managing a single class action with those of managing several hundred separate actions. Doe v. Guardian Life Ins. Co. of America, 145 F.R.D. 466 (N.D. Ill. 1992); Mateo v. M/S KISO, 805 F. Supp. 761 (N.D. Cal. 1991); Galloway v. American Brands, Inc., 81 F.R.D. 580 (E.D. N.C. 1978). Speculative management problems should not be considered for purposes of class certification. Day v. NLO, Inc., 811 F. Supp. 1271 (S.D. Ohio 1992); In re Folding Carton Antitrust Litigation, 88 F.R.D. 211 (N.D. Ill. 1980); Riordan v. Smith Barney, 113 F.R.D. 60 (N.D. Ill. 1986) (stating that questions peculiar to each individual member of class may remain after common questions have been resolved, and that this does not dictate conclusion that class action is not permissible).

In fact, denial of class status due to manageability concerns is disfavored and, "will rarely, if ever, be in itself sufficient to prevent certification of a class." Klay v. Humana, Inc., 382 F.3d 1241, 1272-73 (11th Cir. 2004). Complexity is an inherent trait of class litigation, and "[m]any courts have recognized ... that potential management difficulties are not grounds for class denial when justice can be done only through the class action device." Conte & Newberg, § 4:32 at 277. In sum, "courts should be careful not to overemphasize management difficulty considerations when contrasted with judicial economy, small claims access, and deterrence goals of the class device." Id. § 4:45 at 336. See also, e.g., Buford v. H & R Block, Inc., 168 F.R.D. 340, 363 (S.D.Ga. 1996), aff'd, 117 F.3d 1433 (11th Cir. 1997). A court "cannot simply close its

16

doors to ... litigants because their actions present novel and difficult questions. Instead, the court and the parties must use their ingenuity to conduct th[e] litigation in a manner which will guarantee the rights of both sides." In re Antibiotic Antitrust Actions, 333 F.Supp. 278, 289 (S.D.N.Y. 1971).

Here, where common questions of law or fact predominate among plaintiff class of consumers, and the only individual questions relate to damages issues which can be resolved by a class-wide survey, the problems inherent in managing a class action are minimized and class certification is appropriate. In re Gulf Oil/Cities Service Tender Offer Litigation, 112 F.R.D. 383 (S.D. N.Y. 1986).

IT IS THEREFORE ORDERED AND ADJUDGED that this Order shall incorporate and replace the Order of this Court dated April 22, 2010, which certified this action as a Class Action with such Class being comprised of all Kentucky residents who have purchased and taken VIOXX during the period of May 1999 through September 30, 2004, and who, upon recommendation and advice of the FDA and Merck have or will contact physicians to seek advice regarding their VIOXX use.

Done this 27th day of JAN., 2011.

STEVEN D. COMBS, JUDGE
PIKE CIRCUIT COURT

TENDERED BY:

_____
RICHARD A. GETTY
JOE F. CHILDERS
    and
JESSICA K. CASE

GETTY & CHILDERS, PLLC
1900 Lexington Financial Center
250 West Main Street
Lexington, Kentucky 40507
Telephone: (859) 259-1900
Facsimile: (859) 259-1909

COUNSEL FOR PLAINTIFF
JAMES RATLIFF, On Behalf Of
Himself And All Others Similarly
Situated

## CLERK'S CERTIFICATE OF SERVICE

A copy of the foregoing Amended Order Certifying Class Action was mailed, postage prepaid, to the following on this the ⟨27⟩ day of ⟨Jan⟩, 2011:

Richard A. Getty, Esq.
Joe F. Childers, Esq.
and
Jessica K. Case, Esq.
Getty & Childers, PLLC
1900 Lexington Financial Center
250 West Main Street
Lexington, Kentucky 40507

Susan J. Pope, Esq.
Frost Brown Todd, LLC
250 West Main Street, Suite 2800
Lexington, Kentucky 40507-1749

Winston E. Miller, Esq.
Frost Brown Todd, LLC
400 West Market Street, 32nd Floor
Louisville, Kentucky 40202

Jessica D. Miller, Esq.
and
John H. Beisner, Esq.
Skadden, Arps, Slate, Meagher & Flom, LLP
1440 New York Avenue, NW
Washington, DC 20005

_____
CLERK, PIKE CIRCUIT COURT

jkcpld0314