IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: VIOXX<br>PRODUCTS LIABILITY LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>SHERRILL HERKE, individually and on<br>behalf of a proposed class of those<br>similarly situated,<br>Plaintiffs,<br><br>v.<br><br>MERCK & CO., INC.,<br>Defendant. | MDL NO. 1657<br><br>SECTION: L<br><br>JUDGE FALLON<br><br>No. 2:09-cv-07218 |

### DEFENDANT'S RESPONSE TO JAMES RATLIFF'S
### OBJECTION TO CONSUMER CLASS ACTION SETTLEMENT

James Ratliff – the named plaintiff in *Ratliff v. Merck & Co.*, No. 04-CI-01493 (Pike Cir. Ct.), a proposed consumer-fraud class action pending in Kentucky state court – has filed an objection to the consumer class settlement agreed to by the parties in this MDL proceeding.[1] According to Mr. Ratliff, the fact that he has filed a parallel consumer-fraud class action in Kentucky state court bars Merck from including members of Mr. Ratliff's proposed class "in any proposed settlement of this consolidated [federal] litigation." (Notice of Objection at 3.) In

---

[1] This submission responds both to the Preliminary Notice Of Objection ("Preliminary Objection") filed by Mr. Ratliff on March 4, 2013 (ECF No. 64289) and the Response To Consent Motion For Preliminary Approval Of Class Settlement, Notice Of Objection, And Request To Be Excluded From Proposed Settlement By Interested Party James Ratliff ("Notice of Objection") filed on July 20, 2013 (ECF No. 64496).

1132978v1

addition, Mr. Ratliff argues that Kentucky Vioxx purchasers' "interests [are] not [] properly protected by the nationwide settlement." (*Id*. at 5.)  Mr. Ratliff's objections are meritless.

*First*, an MDL nationwide settlement is appropriate notwithstanding the pendency of a proposed parallel class action in state court.  The settlement agreement results from nearly a decade of effort by the parties and this Court.  Over the last eight years, the Court and the parties have worked together to manage an overwhelming discovery process during which "[m]illions of documents were discovered and collated," "[t]housands of depositions were taken and at least 1,000 discovery motions were argued."  *In re Vioxx Prods. Liab. Litig.*, 869 F. Supp. 2d 719, 721 (E.D. La. 2012).  In addition, the Court conducted multiple bellwether trials and worked diligently with the parties to negotiate settlements by plaintiffs alleging personal injury as a result of using Vioxx, as well as economic-loss claims asserted by a substantial number of private and governmental third-party payors.  The parties have also engaged in extensive briefing regarding the propriety of class certification with respect to consumer-fraud claims based on the purchase of Vioxx, as well as the viability of those claims on the merits.  Building on these substantial prior efforts, counsel for Merck and the PSC recently reached a nationwide class action settlement to resolve consumer-fraud claims asserted on behalf of Vioxx consumer purchasers across the country.

Given its substantial investment of time and resources in managing the federal Vioxx litigation over the last eight years, this Court is in the ideal position to oversee a proposed nationwide settlement of consumer-fraud claims alleged by Vioxx purchasers.  The mere existence of a proposed state court class action alleging the same claims does nothing to alter this calculus.  Federal courts routinely approve class settlements where, as here, the proposed settlement class overlaps with – and would terminate – proposed class actions pending in other

jurisdictions. *See, e.g. First State Orthopaedics v. Concentra, Inc.*, 534 F. Supp. 2d 500, 506 (E.D. Pa. 2007) (approving class action settlement of breach-of-contact claims despite objection from counsel in state court class actions involving similar claims that would be "terminat[ed]" by the federal class settlement); *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 317-18 (W.D. Tex. 2007) (approving nationwide settlement in federal discrimination action that subsumed a proposed, parallel class action filed on behalf of Louisiana citizens and rejecting the Louisiana plaintiffs' argument that the court was required to "disapprove the settlement so [the objectors could] pursue their claims in Louisiana"); *In re Sony Corp. SXRD Rear Projection Television Mktg., Sales Practices & Prods. Liab. Litig.*, No. 09-MD-2102 (RPP), 2010 WL 3422722, at *6 (S.D.N.Y. 2010) (approving class settlement in product liability action despite objection from plaintiffs in competing class action because "the terms of the settlement are fair, reasonable, and adequate").

As these courts have noted, where there is evidence that a settlement was negotiated by counsel with "considerable experience in complex commercial matters [who] were intimately familiar with the strengths and weaknesses of their respective actions," the agreement is presumably fair and adequate with respect to all class members – even those who may be proposed members of alternate classes. *See First State Orthopaedics*, 534 F. Supp. 2d at 514. As explained in detail in plaintiffs' unopposed motion for preliminary approval of the settlement agreement, the proposed settlement is the result of hard-fought, arm's-length negotiations between Merck and the PSC. Because the PSC has been pursuing class claims on behalf of Kentucky Vioxx purchasers since the inception of this MDL proceeding, there is no question that the PSC has the authority to settle on their behalf. Nor can there be any dispute that the PSC has sufficient expertise to negotiate a settlement that is fair to those class members. The members of

the PSC are uniquely familiar with the value of Vioxx cases as a result of their eight years of experience as lead counsel in this MDL proceeding and their previous efforts in negotiating the resolution of personal-injury and third-party-payer claims based on the sale of Vioxx.  Indeed, it is hard to imagine counsel who are better equipped to determine fair and appropriate settlement terms on behalf of all Vioxx purchasers across the country.  Thus, there can be no real concern that the PSC is unable to represent the interests of the proposed members of the Kentucky state court class action.

Mr. Ratliff's only real objection to the settlement is his own – and his counsel's – self interest in representing a state court class.  That is not a legitimate basis to interfere with a hard-fought, reasonable and fair federal settlement agreement.  *See In re Currency Conversion Fee Antitrust Litig.*, 263 F.R.D. 110, 132 (S.D.N.Y. 2009) (granting final approval of settlement over the objections of plaintiffs in related state court actions where the "objections were motivated entirely by self-interest and of no utility to the Class").  As courts have noted, objectors to federal class action settlements who have similar claims pending in state court have "mixed motives" in opposing federal settlements – and therefore their complaints should be taken with a grain of salt.  *First State Orthopaedics*, 534 F. Supp. 2d at 517.  That is certainly the case here.  Mr. Ratliff's most recent submission in opposition to the proposed settlement includes a long footnote criticizing Merck and its counsel for "never ma[king] any settlement offer with respect to the Kentucky claims despite [proposed] Kentucky Class counsel's invitation to do so." (Notice of Objection at 4 n.2.)  In other words, Mr. Ratliff is indignant that Merck chose to settle with the PSC rather than with him and his lawyer.  However, Merck does not have any obligation to settle with every party that alleges claims against it.  *See Perez v. State of Me.*, 760 F.2d 11, 12-13 (1st Cir. 1985) (where both state and federal law claims are pending, there is

"nothing . . . that requires parties seeking to settle claims under two similar laws to settle both at the same time. . . . [T]he parties would seem free to agree to settle the one, or the other, or both. They would seem free to settle, or not, as they choose."). To the contrary, it is well recognized that the "choice [to settle a claim] must be left to the individual litigant's judgment." *Colon-Cabrera v. Esso Standard Oil Co. (Puerto Rico), Inc.*, No. 11-2477, 2013 WL 3742448, at *5 (1st Cir. July 17, 2013); *see also Smith v. Boyer,* No. 1:08-CV-01817-DLB PC, 2012 WL 2090055, at *1 (E.D. Cal. June 8, 2012) (a defendant is "under no obligation to settle [a] matter" even if it receives an offer from the plaintiff). Given the long history of this MDL proceeding and the fact that a settlement in the *Herke* action would resolve **all** remaining consumer-fraud claims across the country, it is entirely logical and appropriate that Merck would pursue a nationwide settlement with the PSC instead of a one-state settlement with Mr. Ratliff.

  ***Second***, Mr. Ratliff is wrong that the proposed settlement is "inherently inequitable" because it caps Merck's contribution at $23 million, even though Mr. Ratliff believes that his proposed class can recover far more than that amount in Kentucky state court. (Notice of Objection at 17.)

  As an initial matter, Mr. Ratliff misstates the status and prospects for class certification in his case. Mr. Ratliff contends that the Kentucky Court of Appeals' order reversing class certification held that "the class claim asserted under the [Kentucky Consumer Protection Act] is in fact properly certifiable" and may go forward. (*Id.* at 15.) This is a gross misinterpretation of the Court of Appeals' decision, which explicitly reverses the certification order in full. (*See, e.g.*, Op. Rev'g & Remanding at 2 ("Op."), *Merck & Co., Inc. v. Ratliff*, No. 2011-CA-000234 (Ky. Ct. App. Feb. 10, 2012 (attached as Ex. 1) ("[W]e reverse the order of the Pike Circuit Court."); *id.* at 16 ("[C]lass certification is inappropriate . . . ."); *id.* ("[W]e find that the class

cannot be certified . . . ."); *id.* ("We reverse and remand to the Pike Circuit Court with instructions for the court to vacate its prior order.").) Moreover, although the Court of Appeals acknowledged that "there are fewer obstacles to a class claim proceeding under the KCPA," *id.* at 10, and observed that a Vioxx consumer-protection suit had been certified for class treatment in *Plubell v. Merck & Co.* in Missouri, the court nonetheless concluded that, in the *Ratliff* case, "[c]ausation, reliance, and damages are required to be shown on an individual basis" and that "if the action were tried as a class . . . the case would essentially fragment into a series of amalgamated 'mini-trials' on each of these individualized questions," *id.* at 15 (citation omitted)). In so doing, the court approvingly cited *Kleinman v. Merck & Co., Inc.*, 8 A.3d 851, 862-63 (N.J. Super. Ct. L. Div. 2009) (cited in Op. at 15), in which Judge Higbee denied certification of a class of Vioxx users asserting claims under the New Jersey Consumer Fraud Act. Thus, at this point, Mr. Ratliff's proposed class has been rejected by the Kentucky Court of Appeals.

In any event, even if the Kentucky Supreme Court were to reverse the Court of Appeals and reinstate the class certification order, Mr. Ratliff would face serious obstacles at trial. For one thing, the proposed class cannot prove injury. As this Court recognized in dismissing similar consumer-fraud claims in *District of Columbia ex rel. Walker v. Merck & Co., Inc.* (D.63656-1), an individual who purchases a medication, obtains pain relief from it and does not suffer personal injury has not suffered injury as a matter of law. A jury is very likely to agree.

In addition, Mr. Ratliff, the class representative, is a poor representative of the proposed class because there is strong evidence that his claims are fraudulent. Mr. Ratliff seeks to recover for a supposed medical examination, but at his deposition, he could not provide any details about the examination, including the name of the doctor who supposedly examined him, what tests

were performed, where the tests took place, or when the examination occurred.  (*See* Dep. of James Ratliff 30:2-21; 52:24-53:24, Mar. 10, 2009 (attached as Ex. 2).)  Nor does he have any receipts from this supposed examination, which he claims to have paid for in cash.  (*Id*. 53:13-19.)  In light of these serious deficiencies in Mr. Ratliff's claims, there is no guarantee that his proposed state court class would ever recover anything – and even if it did, such recovery would only occur after a prolonged class trial and potential appeals that could take years to resolve.  By contrast, the settlement reached by Merck and the PSC gives qualified Vioxx purchasers an assurance that they will receive prompt and meaningful recovery.

Further, the settlement class provides relief to a broader range of Kentucky residents than Mr. Ratliff's suit would.  Mr. Ratliff's proposed class is limited to only those Vioxx purchasers who claim to have spent money on a medical consultation related to Vioxx after its withdrawal – or intend to do so in the future.  *See* Compl. ¶ 3, *Ratliff v. Merck & Co., Inc.*, No. 04-CI-01493, Pike Circuit Court (attached to Preliminary Objection as Ex. A).)  By contrast, the federal settlement class includes **all** qualified Kentucky Vioxx users, regardless of whether they sought or will seek a post-withdrawal medical consultation.

In short, Merck and the PSC have worked hard to reach a fair settlement that fully and fairly compensates all qualified Vioxx purchasers nationwide, including those who live in Kentucky.  To the extent any Kentucky Vioxx purchaser believes that the settlement agreement does not provide fair compensation for his or her claims, he or she can opt out of the proposed settlement.  However, Mr. Ratliff' s – and his attorney's – financial interest in universally excluding all Kentucky residents from that agreement so that they can continue to pursue their parallel state court action is not a legitimate reason for rejecting a settlement that has been

intensely negotiated by the parties and provides meaningful relief for plaintiffs whose claims have dubious merit.

## CONCLUSION

For the foregoing reasons, the Court should approve the settlement reached by the parties and certify the proposed settlement class.

Dated: July 22, 2013                                                                 Respectfully submitted,


                                                                     */s/ Dorothy H. Wimberly*
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, LA 70130

Douglas R. Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth St., N.W.
Washington, DC 20005

John H. Beisner
Jessica Davidson Miller
Nina Ramos Rose
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
1440 New York Avenue, N.W.
Washington, DC 20005

ATTORNEYS FOR MERCK SHARP &
DOHME CORP.

- 8 -

1132978v1

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail, upon Liaison Counsel Ann Oldfather by e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8C, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 22nd day of July, 2013.

/s/ *Dorothy H. Wimberly*
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana 70130
Phone: 504-581-3200
Fax:   504-581-3361
dwimberly@stonepigman.com

Defendants' Liaison Counsel

1132978v1