UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: VIOXX | * | MDL DOCKET NO. 1657 |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| | * | MAGISTRATE JUDGE KNOWLES |
| | * | |
| **THIS DOCUMENT RELATES TO:** | * | |
| | * | |
| *Rosemary Holobosky, et al. v. Merck Sharp & Dohme Corp.*, **2:05-cv-01091-EEF-DEK** **(Plaintiffs AnnMarie and Joseph Mannino)** | * * * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**DEFENDANT MERCK SHARP & DOHME CORP.'S MOTION FOR
SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW**

Defendant Merck Sharp & Dohme Corp. ("Merck") respectfully requests that the Court enter summary judgment pursuant to Federal Rule of Civil Procedure 56 in Merck's favor on all of the Manninos' claims. By Order of April 3, 2013, this Court set June 17, 2013 as the revised and extended deadline for the Manninos to designate experts and submit written expert reports as required by Rule 26(a)(2). The Manninos did not designate a testifying expert or submit a written expert report by the deadline, nor have they otherwise contacted Merck or its counsel.

In this case, AnnMarie and Joseph Mannino seek to recover for injuries related to a transient ischemic attack ("TIA") that Ms. Mannino experienced in March 2004. To prevail, the Manninos must prove—through competent expert testimony—that Vioxx caused Ms. Manninos' injuries. Because the Mannninos have put forth no competent evidence on causation—an

1133772v1

element of each and every claim in their complaint—the Manninos' claims fail as a matter of law, and summary judgment in Merck's favor should be granted.[1]

## FACTUAL AND PROCEDURAL BACKGROUND

A.  **Factual Background**

AnnMarie Mannino and her husband, Joseph, are residents of Staten Island, New York. On March 29, 2004, Ms. Mannino's face began to feel numb, and she felt disoriented. The next day, her doctor, Ernest Visconti, told her to go to Staten Island University Hospital after finding that her blood pressure was "very, very high." Mannino Dep. 67:3–13 (Ex. A).[2] Ms. Mannino was ultimately diagnosed with a TIA by her children's neurologist, Dr. Idan Sharon.

At the time of her TIA diagnosis, Ms. Mannino had a long history of hypertension. She was taking an antihypertensive medication, Toprol XL, as early as April 1999, nearly five years before she took Vioxx. *See* April 20, 1999 Patient Progress Notes (Ex. B). But, at the time of her event, Ms. Mannino had stopped seeing her cardiologist, Dr. Andrew Warchol, and stopped taking her antihypertensive medications. April 8, 2004 Ltr. of Dr. Andrew J. Warchol (Ex. C). Following her visit to the hospital, she was directed to resume taking antihypertensive medications.

Ms. Mannino's hypertension, however, was not her only risk factor for a TIA. Ms. Mannino has a genetic mutation, C677T, associated with elevated homocystine levels; a history

---

[1]   Merck has retained an expert who will testify that Vioxx did not cause or contribute to Ms. Mannino's TIA and who stands ready to provide a written expert report that complies with Rule 26(a)(2). Because the Manninos bear the burden of proof on the issue of causation, however, and because the Manninos have not yet designated an expert willing and prepared to testify that Vioxx caused Ms. Mannino's TIA, Merck has deferred serving Plaintiffs with an opposing expert report at this time.

[2]   All exhibits referenced herein are attached to Merck's Statement of Material Facts As To Which There Is No Dispute, filed contemporaneously with this Motion.

of hyperlipidemia; and of difficulty managing her weight.  *See* Ex. D (Collected Medical Records).  All of these characteristics are considered TIA risk factors.  *See* Ex. E (Mayo Clinic Transient Ischemic Attack Information).

Notwithstanding the presence of Ms. Mannino's established cardiovascular risk factors, the Manninos have sued Merck claiming that Vioxx caused Ms. Mannino's TIA, even though Ms. Mannino's Vioxx usage before her event was limited and even though she cannot recall the proximity of the event in relationship to her usage of Vioxx.  She had received only a single prescription for Vioxx, from Dr. Ernest Visconti, for 10 Vioxx pills.  She filled that prescription on February 4, 2004, nearly two months before her TIA.  Ms. Mannino does not recall whether she took Vioxx the day she went to the hospital, or even within the week before.[3]  Mannino Dep. 60:6–20.  Nor does she know how many samples she received, or ingested.  Mannino Dep. 53:18–20.  All she could state with certainty was that she had not completed her prescription—one pill remained— and she never took Vioxx after her TIA.  Mannino Dep. 58:11–13, 60:21-61:3.

Further confounding the causation question, Ms. Mannino experienced symptoms similar to her 2004 TIA even years after she stopped taking Vioxx.  A March 13, 2006 note from Dr. Sharon indicates that Ms. Mannino experienced tingling in her left shoulder after a five-minute headache.  March 13, 2006 Note of Dr. Idan Sharon (Ex. G).  As in 2004, Ms. Mannino was not taking her antihypertensive medication.  Ms. Mannino reported to another doctor, Dr. Ashton, that she had been unable to take her medications for the last two weeks due to a delivery problem.  March 11, 2006 Staten Island Family Practice Associates Record (Ex. H).  Ms. Mannino also testified that she had experienced another event with similar symptoms in the Fall

---

[3]  Ms. Mannino's intake records from Staten Island University Hospital show that she was taking no medications at the time. Ex. F.

of 2012, eight years after the TIA she claims Vioxx caused.  Mannino Dep. 49:23.  She could not, however, provide any details about that event, nor would she permit Merck to procure any medical records relating to that event.[4]

### B. Procedural History

On November 28, 2004, the Manninos filed a complaint in New York state court alleging that Ms. Mannino's use of Vioxx caused her March 2004 TIA.[5]  Ms. Mannino asserted claims for negligence and gross negligence (first cause of action); strict liability (second cause of action); misrepresentation and failure to warn (third cause of action); breach of express and implied warranties (fourth cause of action); and violations of N.Y. Bus. Corp. Law § 349 (fifth cause of action).  Compl. ¶¶ 21–50.  Additionally, Mr. Mannino asserted a derivative claim for loss of consortium (sixth cause of action).  *Id.* ¶¶ 51–54.  Merck removed the Manninos' case to federal court, and the case was transferred to this Court for inclusion in the Vioxx Products Liability Litigation MDL.

On May 15, 2012, the Court entered Pretrial Order No. 58 ("PTO 58") to govern all remaining discovery in the cases identified therein, including this case.  PTO 58 set February 18, 2013 as the deadline for the Manninos to designate experts and submit written expert reports as required by Federal Rule of Civil Procedure 26(a)(2).  On February 1, 2013, the Court entered an order extending the deadlines set forth in PTO 58 by approximately two months in the cases identified therein, including this case.  Rec. Doc. 64236.  Merck sought to depose the Manninos

---

[4] Pursuant to PTO 18C, Merck notified Ms. Mannino that it intended to use her authorizations to request medical records related to the 2012 event.  Instead of filing a motion for a protective order, as required by PTO 18C, Ms. Mannino unilaterally instructed her provider not to comply with Merck's request for the relevant records.

[5] The Complaint does not identify Ms. Mannino's injury.  Her Plaintiff Profile Form identifies her injury as "BRAIN STROKE (TIA'S)" on March 30, 2004.  Pl. Profile Form § I(C)(1) (a), (b) (Ex. I).

4

in late January near their Staten Island, New York home. After the Manninos failed to appear for their deposition, the Court dismissed their claims. Rec. Doc. 64277. The Court later reinstated the Manninos' claims at their request on March 26, 2013, Rec. Doc. 64323. On April 3, 2013, the Court set the Manninos' deadline to designate expert witnesses and provide reports on June 17, 2013. Rec. Doc. 64332.

More than a month has passed since the Manninos' June 17, 2013 deadline. The Manninos neither designated a testifying expert nor submitted a written expert report as required by the Court's April 3, 2013 Order. As of the time of the filing of this motion, the Manninos still have not made an expert designation or submitted a written expert report, nor have the Manninos contacted Merck's counsel or filed a motion with the Court seeking an extension of time for compliance with the Court's order.

## LEGAL STANDARD

Summary judgment should be granted whenever it becomes apparent that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Summary judgment "is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the . . . Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1). A party moving for summary judgment may discharge its burden to support the motion "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Rule 56(c) mandates the entry of summary judgment against a party who, after adequate time for discovery, fails to make a showing sufficient to establish the existence of an element essential to that party's case,

5

and on which that party will bear the burden of proof at trial. *Id.* at 322. The burden of production then shifts to the nonmoving party to introduce specific facts showing there is a genuine issue for trial. *Id.* at 322-24; *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

Where expert testimony is necessary to prove an element of a plaintiff's cause of action, and where the plaintiff fails to designate an expert capable of providing admissible testimony on that element, Rule 56 requires entry of summary judgment against the plaintiff. *Johnson v. Arkema, Inc.*, 685 F.3d 452, 471 (5th Cir. 2012) (per curiam); *see also Celotex*, 477 U.S. at 322.

## ARGUMENT

In this case, the Manninos seek to recover for injuries related to Ms. Mannino's March 2004 TIA. The Complaint alleges four causes of action: negligence, breach of warranty, strict liability, and failure to warn. Compl. ¶¶ 21–50. The Complaint also asserts a loss-of-consortium claim on behalf of Mr. Mannino. Compl. ¶ 51–54. Under New York law,[6] regardless of which of these theories the Manninos pursue, they must prove that Vioxx caused Ms. Mannino's TIA. *See, e.g.*, *Tardella v. RJR Nabisco, Inc.*, 576 N.Y.S.2d 965, 966 (N.Y. App. Div. 1991).[7]

---

[6] Because this case was originally filed in New York, New York's choice-of-law rules apply. *See In re Vioxx Prods. Liab. Litig.*, 522 F. Supp. 2d 799, 813 (E.D. La. 2007). New York law applies to the Manninos' claims, as Ms. Mannino claims she purchased Vioxx in New York and that she was injured there. *See In re Grand Theft Auto Video Game Consumer Litig.*, 251 F.R.D. 139, 148–49 (S.D.N.Y. 2008) (applying law of place of injury in tort and place of purchase in warranty).

[7] *See also Becker v. Schwartz*, 386 N.E.2d 807, 812 (N.Y. 1978) (negligence); *Nealy v. U.S. Surgical Corp.*, 587 F. Supp. 2d 579, 584 (S.D.N.Y. 2008); N.Y. U.C.C. Law § 2-314 (McKinney 2013), cmt. 13 (breach of warranty); *Codling v. Paglia*, 298 N.E.2d

6

When a case presents an issue of causation that is presumed to be beyond the common knowledge and experience of an ordinary juror, New York law requires causation to be proven through expert testimony.  *Fane v. Zimmer, Inc.*, 927 F.2d 124, 131 (2d Cir. 1991) (citing *Meiselman v. Crown Heights Hosp.*, 34 N.E.2d 367, 370 (N.Y. 1941)); *Parker v. Mobil Oil Corp.*, 793 N.Y.S.2d 434, 436-37 (App. Div. 2005), *aff'd*, 857 N.E.2d 1114 (N.Y. 2006). "Expert medical opinion evidence is usually required to show the cause of an injury or disease because the medical effect on the human system of the infliction of injuries is generally not within the sphere of the common knowledge of the lay person."  *Nealy*, 587 F. Supp. 2d at 586 (applying New York law) (internal quotation marks omitted); *see also Parker*, 793 N.Y.S.2d at 436-37 (plaintiff could not prove that leukemia was caused by exposure to carcinogenic substance without expert testimony).

Here, the Manninos bear the burden of proving that Vioxx caused Ms. Mannino's TIA.  Given Ms. Mannino's risk factors, short history of Vioxx use, and history of experiencing symptoms of similar to her March 30, 2004 TIA years after ceasing Vioxx, Ms. Mannino must provide expert evidence to show that Vioxx caused her TIA.  *See* cases cited *supra* pp. 6-7; *accord Hollander v. Sandoz Pharm. Corp.*, 289 F.3d 1193, 1214 (10th Cir. 2002) (causal link between prescription drug and plaintiff's stroke had to be proven through expert testimony).

The Manninos have had ample time and repeated opportunities to marshal their evidence.  They have failed to do so.  Merck is entitled to summary judgment in its favor.  *See, e.g., Smith*

---

622, 628 (N.Y. 1973) (strict liability); *Voss v. Black & Decker Mfg.*, 450 N.E.2d 204, 207 (N.Y. 1983) (strict liability-failure to warn); *accord In re Vioxx Prods. Liab. Litig.*, 239 F.R.D. 450, 462 (E.D. La. 2006) (noting that each Vioxx plaintiff bears the burden of proving medical causation in his specific case).  Mr. Mannino's loss of consortium claim requires Ms. Mannino to have a viable claim.  *See Cerqua v. Stryker Corp.*, No. 11 Civ. 9208 (KBF), 2013 WL 1752284, at *7 n.6 (Apr. 23, 2013) (citing *Griffin v. Garratt-Callahan Co.*, 74 F.3d 36, 40 (2d Cir. 1996)).

*v. Johnson & Johnson, Inc.*, 483 F. App'x 909 (5th Cir. 2012) (per curiam) (affirming grant of summary judgment when plaintiffs failed to timely designate a competent expert on causation despite having had ample time to do so).

## CONCLUSION

For the reasons stated above, the Court should grant Defendant's Motion for Summary Judgment and dismiss Plaintiffs' claims against Merck with prejudice.

Dated: July 29, 2013

Respectfully submitted,

By: */s/ Dorothy H. Wimberly*
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana 70130
Phone: 504-581-3200
Fax:    504-581-3361

Defendants' Liaison Counsel

—and—

Douglas R. Marvin
M. Elaine Horn
Jonathan L. Williams
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Phone: 202-434-5000
Fax:    202-434-5029

Attorneys for Merck Sharp & Dohme Corp.

1133772v1

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Motion for Summary Judgment and Incorporated Memorandum of Law has been served on AnnMarie Mannino and Joseph Mannino by Federal Express at the following address:

> 64 Columbus Ave.
> Staten Island, NY 10304

I further certify that the above and foregoing has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail, upon Liaison Counsel Ann Oldfather by e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 29th day of July, 2013.

/s/ Dorothy H. Wimberly
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361
dwimberly@stonepigman.com

Defendants' Liaison Counsel

1133772v1