UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS

IN RE:  VIOXX PRODUCTS          :    MDL DOCKET NO. 1657
LIABILITY LITIGATION           :    SECTION "L"
                               :
                               :    New Orleans, Louisiana
                               :    June 25, 2013
: : : : : : : : : : : : : : : : :    9:00 a.m.

MONTHLY STATUS CONFERENCE AND
MOTION TO COMPEL
TAKEN BEFORE THE HONORABLE ELDON E. FALLON
UNITED STATES DISTRICT JUDGE


APPEARANCES:

For the Plaintiffs:          Herman, Herman & Katz, L.L.C.
                             BY:  RUSS M. HERMAN
                                  LEONARD A. DAVIS
                             820 O'Keefe Avenue
                             New Orleans, Louisiana  70113
                             (504)  581-4892

                             Oldfather Law Firm
                             BY:  ANN B. OLDFATHER
                             1330 South Third Street
                             Louisville, Kentucky  40208
                             (502)  637-7200

For the Governmental         Barrios, Kingsdorf & Casteix, LLP
Action Plaintiffs:           BY:  DAWN M. BARRIOS
                             701 Poydras Street, Suite 3650
                             New Orleans, Louisiana  70139

For Merck:                   Skadden Arps
                             BY:  JOHN H. BEISNER
                             1440 N.Y. Avenue NW
                             Washington, DC  20005

                             Williams, Connolly, LLP
                             BY:  DOUGLAS MARVIN
                                  M. ELAINE HORN
                             725 12th Street NW
                             Washington, DC  20005

APPEARANCES (Continued)

                              Stone Pigman Walther Wittmann L.L.C.
                              BY:  DOROTHY H. WIMBERLY
                              546 Carondelet Street
                              New Orleans, Louisiana  70130
                              (504)  581-3200

For Eric Weinberg:            Robert E. Arceneaux, Attorney at Law
                              BY:  ROBERT E. ARCENEAUX
                              47 Beverly Garden Drive
                              Metairie, Louisiana  70001
                              (504)  833-7533

For Alaska and Montana:       Hare, Wynn, Newell & Newton, LLP
                              BY:  SCOTT A. POWELL
                              2025 3rd Avenue North, Suite 800
                              Birmingham, Alabama  35203
                              (205)  328-5330

Reported By:                  Arlene Movahed, CCR
                              OFFICIAL COURT REPORTER
                              500 Poydras Street, Room 406
                              New Orleans, Louisiana  70130
                              (504)  589-7777

     Proceedings recorded by mechanical stenography;
transcript produced by dictation.

1                    <u>P R O C E E D I N G S</u>

2                        **MORNING SESSION**

3                        **(June 25, 2013)**

4        (The following is a transcript of the Status Conference and

5   Motion to Compel taken on June 25, 2013.)

6        (Open court.)

7        THE COURT:   Be seated, please.  Good morning, ladies

8   and gentlemen.

9        Dean, we have people on the phone, too?

10       COURTROOM DEPUTY:   Yes, sir.

11       THE COURT:   This is our bi-monthly meeting, or every

12   two months' meeting of the Vioxx Litigation matter and I met

13   with the Liaison Lead Counsel a moment ago to discuss the

14   agenda with them.  I'll take it in the order that's given to

15   me.  Anything from the Liaison Counsel?

16       MR. HERMAN:   May it please the Court, with regard to

17   class actions under Item Number 1, Page 1, there's nothing new

18   to report.  There are ongoing discussions with respect to the

19   consumer issues, consumer settlement.

20       THE COURT:   There's a matter before me, Merck's

21   motion on the pleading.  I ruled on that.

22        I have another Motion to Alter the Judgment.  I have

23   that under submission.  But this is really going to be

24   dependent upon the settlement that apparently has been reached,

25   or at least is in the process of becoming, and then if that

1  settlement is approved then that motion will be moot so I won't

2  need to take that up.

3          I have before me several motions that actually I have

4  grouped them into two categories.  One is Merck's motion to

5  take a 30(b)(6) Deposition from the various states involved.

6  And another motion by Merck to stay or stop a motion by the

7  Attorney Generals to a 30(b)(6) by Merck's company.

8          With regard to the latter, I am advised that the

9  parties are discussing it.  I do feel that much of the material

10  may well be relevant, but I think the parties ought to see

11  whether or not the material has already been produced.

12          It seems to me that the way to go about it is for

13  Merck, who's position is that the material has been produced,

14  to tell the Attorney Generals where the material is and give

15  them some direction as to the witness that has testified to

16  that, or the documents that have been already offered into

17  evidence at the various trials so that the Attorney Generals

18  will be able to have access to that material.

19          And if there's some issues that develop from that

20  material which are case specific that the parties can't

21  resolve, then I will get involved in it.  But relevancy is a

22  very difficult objection in the discovery aspect of the case.

23  I make no judgment on whether it's relevant for trial, but

24  relevancy is really a weak excuse for not producing the

25  material in the discovery phase of the case.  But if it has

1  already been produced, there's no sense in having to produce it

2  again in the sense of a 30(b)(6), so the parties are

3  negotiating that.  Hopefully, that will be resolved.

4          With regard to the first motion, I will take that up

5  after we go through our status conference here.

6          On January the 9th, Commonwealth of Pennsylvania filed

7  an opposition to Merck's motion.  The motion was heard on March

8  20, 2003 and was under submission.  I issued an order on that

9  motion.  It was the Plaintiffs' Steering Committee and

10  government liaison filed a motion for an order imposing the

11  common benefit obligation.  I ruled on that.  I just don't know

12  what the status of it is.

13          MS. BARRIOS:   Good morning, Your Honor.  Dawn Barrios

14  for the Plaintiffs' Steering Committee and Attorney General

15  Committee.

16          We have drafted and are getting ready to serve upon

17  the Commonwealth some discovery, some written discovery to get

18  that ball rolling because we would like to bring it to a head

19  as soon as possible.

20          THE COURT:   Let's keep that on the agenda, Dawn, so

21  that I can focus on it.  I don't want that to slip through the

22  cracks.

23          MS. BARRIOS:   Yes, Your Honor.

24          THE COURT:   The third party payors, there was a fee

25  dispute on the third party payor cases.  What I do in trying to

1 find what the appropriate common benefit fee is, is I go

2 through a procedure.  First, right after I appoint a committee

3 to handle the case, the first week or so of the litigation I

4 appoint a CPA and I put out Court orders requiring anybody who

5 does common benefit work, whether they're on the PSC or in

6 states or on subcommittees, to keep their time and to submit it

7 contemporaneously to the CPA.  Also, if they have some common

8 benefit expense that they feel is for the benefit of the whole,

9 then they are to submit records of the common benefit expense

10 to the CPA.  They have a two month window to do it.  If they

11 don't do it within a two month window, or unless some other

12 circumstances, good cause is shown, then they can't recover the

13 amount.  It's up by order of the Court.

14          The CPA then collects that material monthly or weekly

15 and puts it in a report form.  He submits, under seal, to me a

16 copy of that monthly.  I look it over and I meet with him every

17 month and discuss it with him, who's put up the money, how much

18 money is put up, who's logged the time, and what's the amount

19 of the time each person has logged, what they have done with

20 that time.  And to some extent I am able to monitor it, I know

21 who appeared at trial, I know who appeared in court, I know

22 what depositions have been taken and I know who's taking them

23 basically.  And if I see somebody putting in time that I

24 haven't seen before, I don't even know, I talk with the CPA and

25 liaison counsel and ask them to look into it because I am

1  concerned about it.  So in some way I am able to monitor that.

2          At the end of the month he prepares for me a summary

3  of all that material in a summary form.  I file those documents

4  under seal because it's not fair for the other side to know

5  what the plaintiffs are doing or what the other side is doing,

6  so that's under seal until the case is finished or the fee

7  application is made.

8          I get that material, then I appoint an Allocation

9  Committee.  I appoint people on the Allocation Committee from

10  the PSC as well as from the states, as well as from the

11  subcommittees, those individuals that I know have done the

12  work.  I feel that they know who has done the work with them

13  and what type work they have done and the significance of that

14  work.

15          So the Allocation Committee meets with everyone who's

16  submitted an application for common benefit fee, tries to

17  discuss it with them, gets information, prepares a record, all

18  of this is done on the record, it's recorded by a court

19  reporter.  Documents are submitted, they look them over and

20  they come up with an allocation.  Oftentimes they meet in the

21  meantime and discuss the allocation with the person who's

22  making the application.  In any event, they finally make an

23  allocation and I post it on my website and make it available to

24  everyone.

25          In addition, I appoint a Special Master, somebody who

1  hasn't done the work, somebody who's outside of the litigation,

2  has no interest in the litigation, to also look into this

3  matter, take evidence, if necessary, discuss the matter with

4  the parties, prepare a record and that person then makes a

5  report to me.  At that point, I have two reports.  One from the

6  inside group and one from the outside group.  I get that

7  material, I look over the summary that my CPA has given to me

8  and I bring to bear the experience that I have had with the

9  litigation and the individuals and I issue my ruling deciding

10  who gets what.

11         And the third party matter fee dispute has arisen.  I

12  am at the juncture now where the Special Master has convened a

13  hearing and has taken testimony, or at least has given people

14  an opportunity to argue their positions and he's got that

15  together.  We had a little hiccup on it in the sense that the

16  plaintiffs felt that they needed some material that they did

17  not receive so I have another meeting with counsel in a week to

18  discuss that aspect of the case.  But that's where we are with

19  the third parties.

20         Personal injury cases.

21         MR. HERMAN:  May it please the Court --

22         THE COURT:  Yes.  Wait, we have somebody.  Go ahead.

23         MR. HERMAN:  Mr. Arceneaux requests --

24         THE COURT:  Okay.  Good.

25         MR. HERMAN:  That's all right.  Go right ahead.

1          MR. ARCENEAUX:   Your Honor, Robert Arceneaux for Eric

2 Weinberg.

3          THE COURT:   Right.

4          MR. ARCENEAUX:   I am loathe to make this request to

5 you.

6          THE COURT:   That's all right.

7          MR. ARCENEAUX:   But you had ordered that we prepare

8 our opposition to this motion that you will hear on the 1st by

9 the 26th.

10          THE COURT:   Yes.

11          MR. ARCENEAUX:   Yesterday I had double minor surgical

12 procedures and I didn't realize it would take all day to get

13 over the anesthesia.   I was non compos mentis yesterday and

14 lost the day.

15          THE COURT:   What do you need?

16          MR. ARCENEAUX:   Another day and I've asked opposing

17 counsel, Your Honor.

18          MR. HERMAN:   We don't have a problem with that, Your

19 Honor.

20          THE COURT:   That's fine.

21          MR. ARCENEAUX:   We will file our opposition by the

22 end of the 27th.

23          THE COURT:   Fine.

24          MR. ARCENEAUX:   Thank you very much.

25          THE COURT:   I hope everything is all right.

1          MR. ARCENEAUX:   The tests were good.

2          MR. HERMAN:   I have been non compos for 47 years of

3 practice.  Certainly I am not going to object to that.

4          THE COURT:   We have pending personal injury cases,

5 Ann, PTOs 28, 29 and 43.

6          MS. OLDFATHER:   Thank you, Your Honor.  Ann Oldfather

7 for certain pending personal injury cases.

8          The main focus right now, or had been, is how we were

9 going to try the 29 VTE cases given the Court's ruling

10 regarding the Daubert motions made by Merck.  But, in the

11 meantime, Merck has filed a Motion for Reconsideration of that

12 Daubert ruling.  We're in the process of drafting our

13 opposition and we will be submitting that, I think, certainly

14 within the next week or two, if not sooner.

15          And Your Honor has indicated until that's resolved it

16 might make more sense to hold off on the decision of a trial

17 plan.

18          Also, with regard to moving forward when it's timely

19 on that trial plan issue, we are working to talk with all of

20 the 29 pro se claimants and/or attorneys in the VTE cases in

21 order to figure out who's willing to waive the lexicon issue

22 and consent to trial in Louisiana.  We are not quite finished

23 with that project and we will certainly appreciate the Court's

24 encouragement that anyone who hasn't contacted us yet about

25 that should do so.

1          THE COURT:   How many cases are you dealing with?

2          MS. OLDFATHER:   There are 29 VTE cases.  And, Your

3  Honor, I neglected to hand out our case census in our pre-

4  meeting and I can certainly hand that out now or simply state

5  that according to our list there are 37 total remaining

6  personal injury cases and they break down to three heart

7  attacks, four strokes, 29 VTE cases, and one other, Mr.

8  Harrison's bone injury healing case.  So I'll tender this.

9          THE COURT:   Just give that to Dean.

10          These cases you all know from past experience with me

11  what I generally do is to try to put my hands around the census

12  of the litigation, divide it up into various groups and then

13  try to bellwether a case from each of those groups hoping that

14  the bellwether experience will help the parties get an overview

15  of the entire litigation to permit them to analyze it and see

16  whether or not it's able to be globally resolved.

17          These cases may present a little different problem

18  because it looks like that we may be over the bellwether

19  opportunity, at least that's what the parties seem to tell me.

20  So I don't want to waste time if we bellwether them and it's

21  totally useless.

22          So the next approach is to group them together and to

23  try, say, four or five of them together.  I have done four

24  sometimes and what I try to do is to try the four and we

25  package them in twos and you argue to the jury and they go out

1 on those two and come back and you argue the other two and they

2 go out and resolve it that way.  That way the parties are able

3 to try all of their cases but as quickly as possible and with

4 minimal expense.  The experts appear once as opposed to four

5 different trials.  But that requires the cooperation of the

6 parties.  It's better if that scheme is approached to have some

7 commonality of those four cases.  But we can get to that later,

8 but that's a way of doing it in an expeditious fashion.

9          MS. OLDFATHER:   Thank you, Your Honor.  And certainly

10 I hope that those listening will consider that n deciding the

11 question of waiving venue to allow us to conclude as many of

12 those as possible down here in New Orleans.

13          THE COURT:   And I think we need to know how many have

14 been filed here directly.

15          MS. OLDFATHER:   Not many.

16          THE COURT:   How many require transfer or agreement so

17 that we can deal with that accordingly?

18          MS. OLDFATHER:   We have got that data also, Your

19 Honor.

20          THE COURT:   Thank you.

21          MS. OLDFATHER:   Thank you, Judge.

22          THE COURT:   Other pending motions, what's next, Russ?

23          MR. HERMAN:   Your Honor --

24          THE COURT:   We have the matter involving Michael

25 Stratton on another aspect of the case, he worked the case out,

1  took a fee on it.  There has been some objection to his fee

2  because it wasn't approved by the Court and that's a legitimate

3  objection so I'll be dealing with that.  I'll get Mr. Stratton

4  to submit to the Court an accounting of the fee and what he has

5  done and why he deserves it.  We will take it from there.

6          We have a matter, Mr. Percy Harris, that's a Motion to

7  Dismiss for Failure to Prosecute.  I haven't received a

8  response from Mr. Harris.  We have given him notice so I will

9  grant that motion.  There has been some appeals.  I received

10 from the Court of Appeal recently a ruling in the <u>Roach</u> case

11 affirming this Court's dismissal of it.  There's another case

12 on appeal, <u>Strujan</u>.  I haven't heard from the Court of Appeal

13 yet on that one.

14         Anything further other than the motions?

15         Next status conference is August 14th.  I will meet

16 with the Liaison Lead in the morning at 8:30 and we will have

17 our regular meeting at nine o'clock.

18         MR. HERMAN:   Please the Court, Your Honor, that

19 concludes the business.  Mr. Marvin, Doug Marvin and John

20 Beisner, Mr. Davis, and I would like to meet with you about an

21 ongoing discussion.

22         THE COURT:   Fine.  Let's turn to the motion then.  I

23 have before me Merck's Motion to Compel the taking of the 30 --

24 hold on.  We have to get somebody else on the line, I

25 understand.  Let's take just a five minute break and we will

1  come back.

2      (Recess.)

3      (Open court.)

4          THE COURT:   Be seated, please.  We now have a motion

5  before me.  I actually had two but as I mentioned at the outset

6  the second one the parties have asked that that be continued to

7  give them an opportunity to resolve the matter and that's

8  Merck's Motion for Protective Order for the Attorney Generals

9  getting in a 30(b)(6) Deposition of Merck.

10         But the motion before me then is Merck's Motion to

11  Compel the taking of a 30(b)(6) Deposition for the various

12  states.  I have a number of states' attorney generals on the

13  line.  Would they come in at this point and tell me who they

14  are, please.  Who's on the phone?  Hello?  Anyone on the phone?

15         MS. CABRASER:   Yes, Elizabeth Cabraser, just

16  listening in.

17         THE COURT:   Okay, Elizabeth.

18         MR. HARRISON:   Harrison is still here.

19         THE COURT:   Okay, Mr. Harrison.

20         MR. RILEY:   William Riley, just listening in, Your

21  Honor.

22         THE COURT:   All right.  Any Attorney Generals?

23         MS. BARRIOS:   Your Honor, I had notified all of them

24  yesterday and Ms. Bosier specifically said she was going to be

25  on the phone.  So I will step outside and call her.

1          THE COURT:   Okay.

2          MR. HERMAN:   Your Honor.

3          THE COURT:   Yes.

4          MR. HERMAN:   May it please the Court, Your Honor, I

5 understand that there were 11 folks on this call and I think

6 only three have identified themselves.

7          MR. MARVIN:   And, Your Honor, when you and Katy were

8 out of the room when they came on they said 11 on the call.

9          THE LAW CLERK:   I think some people had hung up.   I

10 don't know.

11          MS. BARRIOS:   I am getting an e-mail asking what time

12 it's going to start.   I will notify them right now.

13          THE COURT:   We will wait a moment while they join the

14 call.

15     (Pause).

16          THE COURT:   Any attorney generals have joined the

17 call yet?  Who are we expecting, the attorney general from

18 Mississippi?

19          MS. BARRIOS:   Yes, Your Honor, and I know someone

20 from Montana and from Mr. Powell's office.

21          THE COURT:   Hello, this is Judge Fallon.  Who's on

22 the line?  Hello?

23          MR. HARRISON:   Harrison here.

24          THE COURT:   Okay, Mr. Harrison.  I've got you.

25          MS. WATSON:   Leila Watson listening in.

1          THE COURT:   What was the first name?

2          MS. WATSON:   Leila, L-E-I-L-A.

3          THE COURT:   Watson.  Who are you with, ma'am?

4          MS. WATSON:   Cory Watson.  I have three of the VTE

5   cases, Your Honor.

6          THE COURT:   Okay.

7          MS. CABRASER:   Elizabeth Cabraser.

8          THE COURT:   Elizabeth Cabraser.

9          MR. RILEY:   William Riley, Your Honor.

10         THE COURT:   Who are you representing, Mr. Riley?

11         MR. RILEY:   I am just listening in with regard to the

12   fee dispute, Your Honor.

13         THE COURT:   Well, this is the motion, we're not going

14   to be discussing that.

15         Anyone else?  I thought they said we had nine.

16         MS. BARRIOS:   Yes, Your Honor.  Well, I just got an

17   e-mail saying the security card code won't work.

18         THE LAW CLERK:   It won't let me into the new security

19   code.

20         THE COURT:   Let's try it again.  Who's on the line?

21   Mr. Harrison, I have you.  Who else?

22         MS. WATSON:   Leila Watson.

23         THE COURT:   Leila Watson.  Elizabeth Cabraser?

24         MS. CABRASER:   Yes.

25         MR. RILEY:   William Riley, Your Honor, and I can

1  leave, it's not necessary for me to stay.

2        THE COURT:   Well, it doesn't matter, Mr. Riley, but

3  you're welcome.  But we're talking about Merck's Motion to

4  Compel the taking of the 30(b)(6) Depositions.

5        MR. RILEY:   Then, Your Honor, I think I'll leave.

6  Thank you.

7        THE COURT:   Okay.  Anyone else?  Are you ready to

8  argue for the attorney generals?

9        MR. POWELL:   For Alaska and Montana, yes, Your Honor,

10  I am.

11        THE COURT:   We are going to have to start, folks.

12  This is Merck's Motion to Compel the taking the of a 30(b)(6)

13  Deposition from the various states.

14        I invited anyone to participate who had an interest in

15  either listening or saying anything on this particular motion.

16  I will hear from the moving parties at this time.  Merck.

17        MR. BEISNER:   Good morning, Your Honor.  John Beisner

18  on behalf of Merck.

19        Your Honor, we believe this is a very important motion

20  in terms of preparing for trial in this matter for the

21  following reasons.  These cases are a little unusual in the

22  sense that when we get to trial each of the AGs will stand

23  before the Court and jury and state that there are particular

24  acts that they allege Merck engaged in that they contend

25  violate the law because, in most instances, they're going to be

1  saying that these were unfair, false, misleading or deceptive

2  acts.

3         And what we're sensing so far from the discovery is

4  there may be a fair number of those instances and they will ask

5  the jury to make that determination with respect to each of

6  those acts.  And, presumably, will be saying to the jury here

7  are facts that explain why the Attorney General is taking that

8  position.

9         With respect to each of those, if the violation is

10 found, there will be some multiple violations to be determined.

11 If they're saying Merck sent a letter that they're saying

12 constituted an illegal act, there will be some multiplier of

13 the number of those letters and then they will ask the Court to

14 impose a penalty, depending on the state, of $2,000, or

15 whatever for each of those violations.  But, in essence, they

16 will be asking for penalties of millions of dollars perhaps for

17 each of those alleged violations.

18        And really, Your Honor, what we're trying to get here

19 is the old style bill of particulars, that's all we're asking

20 for.  I know those don't exist anymore but they don't exist

21 anymore because you're supposed to be able to get that through

22 discovery.  And what we want to know, with some specificity,

23 because the AG will be standing before each Court and jury and

24 being very specific about that, what are the acts and what are

25 the facts that they're pointing to that indicate that these

1  acts are unfair, false, misleading or deceptive.

2          And, Your Honor, we think that we have tried this, as

3  Your Honor has dealt with previously through the interrogatory

4  process, and what we have gotten are in some instances some

5  lists of documents but they say the same thing about each

6  document, they basically say they're unfair, false, misleading,

7  or deceptive.  But we need to understand what about those

8  documents, what are the facts that are indicative, what's the

9  problem with each of those acts.  The documents are mainly what

10  they're looking at but they're also pointing to advertisements.

11  In some instances are pointing to contacts between marketing

12  representatives and physicians in some of the cases as well.

13  And that's why we have noticed the 30(b)(6) Depositions to try

14  to get to the bottom of that, try to get some specificity about

15  exactly what is being alleged here and what are the facts.

16  That's all we're looking for, just facts that they're pointing

17  to that they see as the basis for this contention.

18          THE COURT:

19    The AGs state the position that they only person who knows

20  the facts are the attorneys and that they have attorney/client

21  privilege.  How do you see that?

22          MR. BEISNER:   Well, Your Honor, what we're asking

23  for, as you do in any 30(b)(6) Deposition, is the position of

24  the government in the case.  30(b)(6) specifically says that

25  government agencies are subject to these depositions.  And this

1  is not privileged information, Your Honor.  This is what

2  they're going to stand before the jury and allege and what are

3  the facts, which are not privileged, what are the facts that

4  support these positions.  So there really is no privilege issue

5  here.

6          And as we have seen in other cases, particularly the

7  CyberSpy Software case that we cite where the requesting party

8  is simply trying to get specificity about the government's

9  allegations and the facts supporting that allegation.  That's

10  permissible.  We're not asking how did you investigate this,

11  we're not asking for details about things of that nature, we're

12  not asking for thought process, just the facts, that's what

13  we're looking for and those are not privileged here.

14          And as I said, Your Honor, even if we did get into an

15  argument that we're really asking for a counsel deposition

16  here, an attorney deposition, I mean, they're basically arguing

17  immunity and in the Attorney General's Office, they're all

18  attorneys, so they're sort of saying you can't ask us any

19  questions.  Well, that can't be right.  The Attorney General is

20  a public official.  They have made allegations here which are

21  quasi criminal in nature and we're entitled to some specificity

22  about what they're talking about.

23          So even if you get to the Shelton analysis of the

24  Eighth Circuit which talks about when can you take an

25  attorney's deposition, we think we satisfied those

1   requirements.  We have got no other way to get this

2   information.  It's certainly relevant, it's non-privileged,

3   we're asking for facts.  And they don't really contest that

4   it's crucial to the preparation of our case so we think that we

5   satisfied those requirements.

6          Your Honor, there has also been argumentation here

7   about, well, maybe this should be, this can all be handled

8   through expert deposition.  Well, the experts here are not the

9   government.  The allegations are being made by state

10  governments by the Attorney General.  We have a right to hear

11  the Attorney General's position in the same way as a request to

12  a corporation in a 30(b)(6) Deposition.  We're trying to

13  establish the position of the corporation on certain issues

14  with respect to litigation.  We're entitled to do the same

15  thing here.

16         The expert depositions may elaborate and provide

17  evidence with respect to that but we're entitled to hear

18  directly from the Attorney General on those issues.

19         So, Your Honor, we're left with a bit of a hide the

20  ball game unless we get these depositions.  There is a very

21  considerable amount of penalties at stake here and we think

22  before trial we're entitled to know with specificity, what are

23  the alleged violations, what are the facts you're pointing to

24  in support thereof.  And that's all we're trying to do in these

25  depositions.

1          And, Your Honor, on one other point with respect to

2     privilege, you know, we're not asking here for a Court order

3     saying you have to answer all the questions in the deposition.

4     If the AGs feel that the questioning is offtrack and is calling

5     on them to divulge something that is privileged, they certainly

6     have the right to object.  But we believe we at least ought to

7     be able to get into the deposition mode.

8          THE COURT:   Thank you very much.  Let me hear from

9     the AGs.  How do you see it?

10         MR. POWELL:   Good morning, Your Honor.  Scott Powell

11    for Alaska and Montana.

12         What I do agree with Mr. Beisner is that before trial

13    they're entitled to the information.  Our position is that

14    Merck has got the cart before the horse.

15         And it was interesting to me to listen when they

16    talked about facts and why they're false, deceptive, or

17    misleading and that's the crux of it.  The "why" is the subject

18    of an expert opinion which we will disclose, according to the

19    Court's scheduling order, in a timely fashion.

20         For example, why is a particular ad false?  Well, it

21    may be the position that it's false because it doesn't mention

22    that VIOXX may have a profibrotic effect.  Well, to prove that

23    it has a profibrotic effect requires expert testimony, expert

24    opinion.  That's all we're talking about.  And we are under a

25    duty to supplement the interrogatories, which we will do, once

1 the expert reports have been sent to Merck.  And I think the

2 deadline is in about two weeks.

3          So we certainly agree that they're entitled to what

4 we're claiming.  The problem is doing it now or doing it, you

5 know, most of this, or if not all of it, will be answered in a

6 timely way and so, you know, there's no reason to take the AGs'

7 depositions when all this information is going to be provided

8 to them through supplementation of interrogatory answers

9 accompanied with the expert reports.

10          The number of violations falls into that category as

11 well.  And that's the key to, I think, for the Court to focus

12 on.  And Mr. Beisner said why is a fact false or misleading.

13 Well, the only way that it can be proven why it's false or

14 misleading is for an expert to talk about why it is false or

15 misleading.  And it's also very very dicey to get up and say,

16 well, if you think we're going too far in the testimony or too

17 far in the questioning, you can always object.  And that makes

18 me very concerned that they are looking for things more than

19 just facts because the facts in and of themselves are really

20 non-consequential unless they're coupled with an allegation and

21 evidence that they're false, deceptive or misleading, and

22 that's what violates the Consumer Protection Act of Alaska and

23 Montana.

24          So for those reasons we filed a Motion for Protective

25 Order after they filed a Motion to Compel.  We tried to work it

1 out, we have been unsuccessful to do that.  And what I would

2 suggest to the Court is that the appropriate way of handling it

3 is let's go through this expert process, let's go through the

4 supplementation process, let them look at it and if there is an

5 issue that they still think they don't have the facts in toto

6 that they need for trial, we can discuss it.  If we cannot

7 reach an accommodation, we can come back and bring it to the

8 Court's attention and the Court get involved.

9          THE COURT:   Any response?

10          MR. BEISNER:   Your Honor, that's a little bit

11 different position than is taken in the papers earlier.   I

12 think they're resisting these depositions across the board.

13          But here's the problem.  The expert testimony is

14 coming at the end of the day.  We have a schedule and I think,

15 as counsel was noting, the sort of thing we're looking for is,

16 well, there is an ad.  Okay.  Well, maybe the problem is that

17 certain facts are missing from the ad.  Well, okay, maybe the

18 expert will elaborate on what they contend is missing from the

19 ad but they know now what it is that they're contending is

20 missing from those ads.  But there is a serious timing issue

21 here, Your Honor.  I mean, it's basically let's not disclose

22 for as long as we possibly can the specifics of these

23 allegations.  And what we're asking for are the facts that

24 they're relying on to support, okay.  They may need to

25 supplement but we need a basic list with specificity now.

1          We have asked repeatedly.  There already have been

2   several supplementations of the interrogatories, we still don't

3   have that, Your Honor.

4          THE COURT:   I have read all the material that you all

5   have given to me and the cases that you have cited and I do

6   appreciate all the work that each of you have done.  It has

7   been very helpful to me.

8          The first thing is the scope of 30(b)(6).  There's no

9   question that a 30(b)(6) can be taken of an agency, the

10  30(b)(6) says it.  It's notice 30(b)(6).  "In its notice or

11  subpoena a party may name as deponent a public or private

12  corporation, a partnership, an association, a governmental

13  agency, or other entity and must describe with reasonable

14  particularity the matter for examination."  So it is possible

15  to take the 30(b)(6) of a governmental agency.  In fact, the

16  cases are replete in those instances.

17         The allegation of the Attorney Generals come in many

18  ways but basically they allege that Merck communicated the

19  risks, profile, benefits and efficacy of VIOXX in an unfair or

20  deceptive manner.  That's what I read in most of the

21  complaints.  They also allege that Merck presented information

22  concerning the safety profile and efficacy of VIOXX in an

23  unfair and deceptive manner.  It comes in all shapes and sizes,

24  but basically that's the allegation.

25         Merck wants to know the evidence or facts supporting

1   these allegations, not the deliberative process, not

2   necessarily the why, but what's the facts that you say are

3   deceptive, what are the facts that you feel are unfair or

4   deceptive.  They need to know what practices the AG claims

5   violated the law, what conduct the AG seeks to enjoin, and what

6   acts for which the AG seeks penalties.

7           The penalties in this case could be significant

8   depending upon the number of acts that they allege Merck

9   performed.  It seems to me that they're not asking for theory

10  of liability or strategy from the attorneys or anyone, the

11  witness, they just want to know what supports the allegations.

12          Also, I tried one case involving the Attorney General,

13  a Louisiana case, and I understood that oftentimes when these

14  drugs were submitted for reimbursement they were submitted to a

15  committee, generally the committee is a committee of doctors or

16  a committee of pharmacists or someone who knows something about

17  it and they make the decision on it.  I don't necessarily feel

18  that it has to be an Attorney General or an attorney testifying

19  as a 30(b)(6), maybe someone else can say what they feel the

20  facts are, what statements are misleading or unfair, as I say,

21  what acts the party seeks to enjoin on which they base their

22  penalties.  Not how, but why.

23          Merck tried this first with interrogatories.

24  Interrogatories are really a poor discovery device.  We all

25  know that.  They're always drafted by an attorney who asks

1  everything and the interrogatories are answered by an attorney

2  who wants to give nothing and they're just ships passing in the

3  night, generally.  They're wonderful for getting the names of

4  witnesses, the addresses of witnesses, but other than that it

5  has been my experience that it's almost a vain and useless

6  thing to prepare interrogatories.  They just don't work in the

7  real world and I see that happening in this time.

8          Okay, I think the way I see it is if a 30(b)(6)

9  Deposition can be taken of a governmental agency, then we're

10 dealing with the type of material that is sought and it seems

11 to me that Merck is right in asking for the facts.  Now if

12 Merck's questions are loosely phrased or if Merck's questions

13 impinge on deliberation, that question can be objected to and

14 I'll rule on that particular question.

15         But if I say no 30(b)(6) Depositions can be taken, it

16 seems that I am going against the Federal Rule 30(b)(6) because

17 30(b)(6) says you can take them.  And if I delay it, this

18 aspect of the case, we have got to get it over with, we have

19 been here ten years now.  So to put it off is not really fair

20 to either party.

21         I know the AGs are interested and they have a right to

22 be interested in trying to get this resolved and I am sure

23 Merck feels the same way.

24         I will grant the Motion to Compel 30(b)(6) Depositions

25 for the reasons that I just mentioned.

1          Again, I thank the parties for their work.

2          MR. POWELL:   Your Honor, may I?

3          THE COURT:   Sure.  Go ahead, Scott.

4          MR. POWELL:   With regard to the Court's ruling, I

5   know you mentioned and said that, you know, of course, if the

6   questioning goes beyond the factual matters that they said

7   they're trying to get that we have a right to object.

8          THE COURT:   Sure.

9          MR. POWELL:   Of course, you know the horse is out of

10  the barn if an answer is -- if the Court is not available to

11  rule on the objection right then and the answer is given, of

12  course, the horse is out of the barn and that objection is --

13          THE COURT:   If you all alert me as to when you're

14  taking the deposition, I will be able to monitor it or be

15  available for your call.  So just call me immediately and I

16  will hear you and I will rule on it and the court reporter, who

17  is taking the deposition, can take down my ruling and we will

18  do it that way.

19          MR. POWELL:   Thank you.

20          THE COURT:   Again, before I leave you all, I do feel

21  that experienced attorneys, and you all are very experienced

22  and very capable, oftentimes are able to work through these

23  things and work them out.  Hopefully my ruling will encourage

24  you or assist you in working these matters out, if you can, of

25  course.  Court stands in recess.  Thanks again.

1      (End of proceedings.)

2

**REPORTER'S CERTIFICATE**

I, Arlene Movahed, Official Court Reporter, for the United States District Court for the Eastern District of Louisiana, appointed pursuant to the provisions of Title 28, United States Code, Section 753, do hereby certify that the foregoing is a full, true and correct transcript of proceedings had in the within-entitled and numbered cause on the date herein before set forth and I do further certify that the foregoing transcript has been prepared by me or under my direction.

                    s/   Arlene Movahed
                    ARLENE MOVAHED, CCR
                    Official Court Reporter
                    United States District Court
                    Eastern District of Louisiana