UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

Case No. 05-MD-01657
MDL Docket No. 1657

| | | |
|---|---|---|
| In Re:  VIOXX | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION "L" |
| | * | |
| | * | JUDGE FALLON |
| | * | |
| | * | MAGISTRATE JUDGE KNOWLES |
| | * | |
| | * | |

INTERESTED PARTY JAMES RATLIFF'S
MOTION TO INTERVENE AND INCORPORATED MEMORANDUM OF LAW

James Ratliff, on behalf of himself and all others similarly situated ("Ratliff"), by and through counsel, and as an individual and representative of a previously certified class interested in the Consent Motion for Preliminary Approval Of Class Settlement filed by Plaintiffs on July 17, 2013 [DE 64487], respectfully Moves to Intervene in this action for the purposes of presenting objections to the proposed class settlement, requesting to be excluded from the Proposed Settlement, seeking a stay of the dissemination of Notice regarding the proposed settlement, and conducting discovery regarding the adequacy of the Proposed Settlement.  In support of this Motion, Ratliff states as follows:

## INTRODUCTION AND PROCEDURAL HISTORY

I.   **RATLIFF HAS BEEN REPRESENTING THE INTERESTS OF KENTUCKY CONSUMERS SINCE 2004, AND THE QUESTION OF WHETHER THE KENTUCKY CLASS IS PROPERLY CERTIFIABLE REMAINS PENDING BEFORE THE KENTUCKY SUPREME COURT.**

Ratliff has been representing himself and more than 200,000 similarly situated Kentucky residents in Kentucky state court litigation arising from Merck's Vioxx marketing and sales practices since 2004, well before this MDL proceeding was initiated.  The Complaint filed in the Pike Circuit Court asserts claims under the Kentucky Consumer Protection Act ("KCPA") and

under common law fraud and misrepresentation theories on behalf of all Kentucky residents who have purchased and taken Vioxx and who, upon the recommendation and advice of the FDA and Merck, have contacted or will contact their physicians to seek advice regarding their use of Vioxx. See Class Action Complaint, Ratliff, et al. v. Merck & Co., Inc., 04-CI-01493, Pike Circuit Court, 35th Judicial Circuit, attached to Ratliff's Preliminary Notice of Objection, [DE64289], as Exhibit A.

On November 29, 2004, Merck removed the action to Federal Court and also filed a Motion with the Judicial Panel on Multidistrict Litigation ("JPML") seeking to transfer this case to this Court for coordinated pretrial management pursuant to 28 U.S.C. §1407. On January 1, 2005, Ratliff filed a Motion To Remand. After a thorough analysis of the potential value of Ratliff and other potential class members' claims, and based upon its conclusion that Merck failed to show that the damages on each person's claims would exceed the jurisdictional threshold of $75,000, the District Court ruled that it did not have jurisdiction over these causes of action. On March 3, 2005, Judge Hood entered an Order remanding the action to the Pike Circuit Court. See March 3, 2005 Order, attached to Ratliff's Preliminary Notice of Objection, [DE64289], as Exhibit F.

Ratliff thereafter sought an Order of the Pike Circuit Court certifying the action as a class action pursuant to CR 23.01 and CR 23.02 (c). Extensive briefs were filed in support of and in opposition to Ratliff's Motion, and Merck also filed a Motion for Summary Judgment asking that Ratliff's claims be dismissed on various bases. The Pike Circuit Court, after considering the briefs and oral argument from both sides, entered two separate Orders dated April 1, 2010 – one denying Merck's Motion for Summary Judgment, and one granting Ratliff's Motion to Certify. [DE 64496], Exhibit A, Amended Class Certification Order. The Kentucky Class is one of only two consumer classes against Merck relating to the marketing of VIOXX that has been certified

in the United States. The Kentucky Class is therefore unique with respect to both the likelihood of its success and its ability to proceed as a class action.

Although the Kentucky Court of Appeals reversed certification of the class two years later by Opinion dated February 10, 2012, the Kentucky Supreme Court accepted discretionary review of that decision. See [DE 64496], Exhibit B, Court of Appeals Opinion; Exhibit C, Order Granting Motion for Discretionary Review; Exhibit D, Order Setting Oral Argument. Briefing and oral argument have taken place, and counsel for Ratliff expects an Opinion to be rendered shortly after the Kentucky Supreme Court returns from summer recess in late August or early September. The question of certification is therefore not final, and the parties' attempt to push the dissemination of the Proposed Notice through before the Kentucky Supreme Court rules should therefore be viewed for what it is – an improper effort to railroad a statewide class with viable consumer and fraud claims worth well in excess of the proposed nationwide settlement.

## II. MERCK SETTLES A MISSOURI CONSUMER CLASS ACTION INVOLVING A CONSUMER PROTECTION STATUTE NEARLY IDENTICAL TO KENTUCKY'S FOR SEVERAL TIMES WHAT IT NOW SEEKS TO SETTLE THE PROPOSED NATIONWIDE CLASS OF CONSUMERS.

During the pendency of this litigation and the Kentucky litigation, Merck was also involved in litigation in Missouri state court involving consumer claims arising from Merck's marketing of Vioxx. Plubell v. Merck, Civil Action No. 04-CV-235817-01, Jackson County, Missouri. As with the Kentucky litigation, the Plubell action proceeded independently of this MDL proceeding, and the case involved claims brought under a consumer protection statute nearly identical to Kentucky's.[1]

---

[1] The Missouri Merchandising Practices Act is nearly identical to the Kentucky Consumer Protection Act. Compare Mo. Rev. Stat. § 407.010, et seq., with KRS 367.220(1). See also [DE 64496], Exhibit B, Kentucky Court of Appeals Opinion, p. 11, fn. 4, (noting that the Kentucky and Missouri statutes contain nearly identical language).

In Plubell, the Missouri Court of Appeals affirmed a trial court's certification of a class asserting claims under that state's consumer statute based upon a finding that individual questions with respect to causation, reliance, and damages did not exist under the statutory scheme.  See Plubell v. Merck, 289 S.W.3d 707, 714 (Mo. Ct. App. 2009); Plubell Opinion, p. 11, attached to Ratliff's Preliminary Notice of Objection, [DE64289], as Exhibit N.  The Kentucky Court of Appeals has signaled an intention to interpret the Kentucky Consumer Protection Act in-line with the Plubell Court's interpretation of the Missouri statute. [DE 64496], Exhibit B, Kentucky Court of Appeals Opinion, p. 11.  Ratliff therefore believes that the likelihood of success with respect to the appeal now pending before the Kentucky Supreme Court is extremely high, particularly with respect to the Kentucky Consumer Protection Act claim.[2]

In November, 2012, Merck announced it had reached a settlement in Plubell.  There, as here, the class consists of consumers who purchased Vioxx but do not claim any physical injury.

---

[2] Kentucky courts have also permitted generalized proof of the element of reliance in the class action context and with respect to fraudulent conduct by the defendants.  See Wiley v. Adkins, 48 S.W.3d 20, 23 (Ky. 2001), which lends support to Ratliff's arguments on appeal regarding certification of the consumer fraud and misrepresentation claims and provides further evidence of the Kentucky Class's likelihood of success.  In Wiley v. Adkins, 48 S.W.3d 20, 23 (Ky. 2001), the Kentucky Supreme Court, addressing whether class certification of common law fraud claims was appropriate, held:

> CR 23.01(b) requires that there must be questions of law or fact common to the class, but it does not require that all questions of law or fact be common. In addition, CR 23.02(c) requires that the questions of law or fact that are common to the members of the class predominate over the questions which affect individual members. As each member of the class was a former student of the college who claimed to have been the victim of fraud, we agree with the Court of Appeals that the trial judge did not err by maintaining this case as a class action. It is not necessary that there be a complete identity of facts relating to all members as long as there is a common nucleus of operative facts.  Id. (emphasis added).

The Kentucky Supreme Court held that class certification of the common law fraud claims was appropriate, even though Wiley involved: (1) myriad sources alleged to have "caused" the fraud (e.g. newspaper advertisements vs. direct communication); (2) issues of individual reliance (whether each student relied on a specific representation, and, if so, which representation each student relied upon), and (3) individual damages (the amount owed to each student differed). But those circumstances did not warrant denial of class certification.  Indeed, the Kentucky Supreme Court ordered certification upon remand after finding both CR 23.01(b) (commonality) and CR 23.02(c) (predominance and superiority).

See Settlement Agreement, attached as Exhibit A.  The Plubell Settlement Agreement provides for the establishment of a Common Fund, to include, without limitation, the monetary value of settlement payments made available to each class member, the cost of notice, the plaintiffs' counsel fees and expenses, costs of administration, and incentive awards for representative plaintiffs.  The Common Fund has been funded by an initial payment by Merck of $39 million. Id.  Under the settlement terms, qualifying Missouri consumers of Vioxx may be reimbursed in full for their Vioxx purchases.  The Common Fund settlement provides for payment to class members under two options:  (1) a one-time cash payment of $180 to Settlement Class Members who submit a valid claim form with a declaration under oath (but no documentary proof of payment required) or (2) $90 for each month of Vioxx purchases supported by a declaration under oath with documentary proof of payment, such as a letter from the prescribing physician. Id.  The Missouri settlement value is multiple times the value of what has now been proposed to settle similar claims of consumers nationwide.  This fact alone should raise serious questions as to the sufficiency of the proposed settlement.

### III. THE PARTIES TO THIS PROCEEDING HAVE IMPROPERLY INCLUDED THE KENTUCKY CLASS IN THE PROPOSED SETTLEMENT.

Despite the fact that the Kentucky Class was certified for almost a full two years during the time period in which Liaison Counsel in this action are asserting they were involved in settlement negotiations leading to the Proposed Settlement, counsel for the Kentucky Class was never contacted or invited to participate in any such settlement negotiations by either Merck's lawyers or Liaison Counsel.  Importantly, this was likely because a Federal Court had already ruled that it did not have subject matter jurisdiction over the Kentucky Class, and the matter had been remanded to state court.  The Kentucky Class was not therefore consolidated with the other class actions for pretrial proceedings or otherwise before this Court.

In February, 2013, immediately upon learning of the existence of a nearly final universal settlement proposal, Ratliff served Liaison Counsel and the Court with a Preliminary Notice of Objection objecting to any Proposed Settlement class inclusive of the Kentucky Class claims. [DE 64289]. Counsel for Ratliff thereafter traveled to New Orleans and participated in a Status Conference on March 14, 2013, during which certain preliminary objections of Ratliff and the Kentucky Class to inclusion in any settlement reached in this matter were briefly heard by the Court. Although the Court admonished Merck's counsel to include counsel for Ratliff in further settlement discussions, and to deal directly with Kentucky Class counsel, no such meaningful effort has been made.

In fact, counsel for the Kentucky Class specifically reached out to defense counsel to invite settlement discussions following the May 15, 2013 oral argument before the Kentucky Supreme Court, during which Merck's counsel was severely questioned, and which counsel for the Kentucky Class believed proved quite favorable to the Kentucky Class. This invitation was wholly ignored. Further, despite the fact that oral argument has now been held before the Kentucky Supreme Court, rendering the appeal ripe for decision, there was no mention by Liaison Counsel of the Kentucky Class or efforts to negotiate with the Kentucky Class at the Status Conference held on this matter at the end of June.

On July 17, 2013, a little over a month before the Kentucky Supreme Court is likely to rule, and without any attempt on the part of Merck's counsel to negotiate with the Kentucky Class despite this Court's pointed direction to them to do so, the parties to this action sought preliminary approval of a Proposed Settlement that unfairly includes the Kentucky Class. [DE 64487]. The Court gave objectors three days – until July 20, 2013 – to file objections to the Proposed Settlement. See Order [DE 64491]. Ratliff filed an Objection to this Consent Motion for Preliminary Approval on July 20, 2013 [DE 64496], arguing that the Proposed Settlement

should not include the Kentucky Class and that the Proposed Settlement was unfair to the proposed class members. A status conference hearing was held on July 24, 2013, during which counsel for Ratliff expressed concern regarding the Proposed Settlement's fairness and also the ability of the parties to include the Kentucky Class in a nationwide settlement when the propriety of the certification of that class is a matter still pending in Kentucky state court.

During the July 24, 2013 hearing, the Court indicated that it would grant the parties' Motion for Preliminary Approval, but expressed concern that the notice and opt out period be sufficiently lengthy to give the Kentucky Supreme Court an opportunity to rule on the pending question of certification of the Kentucky Class. See Transcript of July 24, 2013 Hearing, 20:14-17, attached as Exhibit B. The Court also expressed the belief that the notice should be drafted so as to address the concern of counsel for the Kentucky Class with respect to confusion regarding the pendency of the Kentucky litigation and the opportunity of putative class members to participate in the Kentucky Class. Id., ("And meet with Richard, Elizabeth, and get his input. See if there is such a notice that can be fashioned that satisfies his concern about confusion."). By written Order dated the same day, the Court directed all counsel to meet and confer to set dates within the proposed order. Counsel were instructed that if they were unable to agree, they must submit dates individually for the Court's consideration. [DE 64511]. Ratliff has submitted proposed changes to the Proposed Settlement Notice [DE 64513] and is still engaging in efforts to consult with class counsel regarding dates as directed by the Court.[3]

---

[3] The Court has indicated its willingness to preliminarily approve the Proposed Settlement despite the parties' failure to disclose information that would permit a putative class members to assess the fairness of the settlement with respect to his or her claims – that decision and the process involved being clearly deferred by Judge Fallon until later. The Court is well within its discretion to require disclosure of this additional information and to direct the parties to negotiate further prior to granting even preliminary approval in order to address these concerns. See, e.g., In re Amino Acid Lysine, 1996 U.S. Dist. LEXIS 5308, *10-15 (N.D. Ill. Apr. 19, 1996) (requiring more extensive disclosure regarding the fairness of the value of the proposed settlement, establishing a timetable for the parties to provide additional information with respect to this issue, and deferring ruling on even the preliminary determination of fairness until such time as the parties were able to address the Court's concerns); Manual for Complex Litigation, § 21.632

Ratliff now seeks, however, to intervene in this action pursuant to Rule 24 of the Federal Rules of Civil Procedure for the purpose of obtaining discovery regarding the adequacy of the Proposed Settlement, presenting objections thereto, and seeking to stay dissemination of any Class Notice pending the anticipated ruling of the Kentucky Supreme Court with respect to the propriety of the certification of the Kentucky Class.  Ratliff also requests the Court to unseal the record relating to the motions for summary judgment recently filed by Merck so that Ratliff and other class members may properly evaluate the record evidence and assess the relative strength of the claims that the parties seek to release in these proceedings on a class-wide basis, and that Ratliff retain the right on behalf of himself and the Kentucky Class to pursue claims for violations of the KCPA, which have not been asserted by the MDL class representatives but which would be released by the Proposed Settlement.

## ARGUMENT

The rules relating to intervention as a matter of right are liberally construed for the benefit of the proposed intervenors, and any doubts are resolved in their favor.  See Fed. Sav. & Loan Ins. Corp. v. Falls Chase Special Taxing Dist., 983 F.2d 211, 216 (11th Cir. 1993).  As set forth in detail, infra, Ratliff meets each of the requirements for intervention, both as a matter of right under Rule 24(a)(2) and permissively under Rule 24(b), and the instant Motion should therefore be granted for the limited purposes sought above.

**I.      RATLIFF MAY INTERVENE AS A MATTER OF RIGHT UNDER RULE 24(a).**

Ratliff seeks to intervene in this case the limited purposes outlined above as a matter of right.  To intervene successfully under Rule 24(a)(2) in the Fifth Circuit, Ratliff must establish

---

(noting that at the preliminary hearing, "the judge should raise questions," and "perhaps seek an independent review if there are reservations about the settlement," including "unduly preferential treatment of class representative or segments of the class," or "inadequate compensation or harms to the classes," and concluding that after questions are raised by the Court, "[t]he parties then have an opportunity to resume negotiations in an effort to remove potential obstacles to court approval.").

8

that  (1) the application for intervention is timely; (2) he has an interest relating to the property or transaction which is the subject of the action; (3) he is so situated that the disposition of the action may, as a practical matter, impair his ability to protect that interest; (4) his interests are inadequately represented by the existing parties to the suit.  Ford v. City of Huntsville, 242 F.3d 235, 239 (5th Cir. 2001).  District courts are encouraged to apply the "practical rather than technical yardstick" in determining intervention under Rule 24(a)(2).  United States v. Texas E. Transmission Corp., 923 F.2d 410, 413 (5th Cir. 1991).

With respect to the first element, it is clear that Ratliff has timely sought intervention for the purposes of protecting his interests and the interests of the Kentucky Class.  The timeliness requirement is measured based on four factors:  (1) the length of time during which the would-be intervenor actually knew or reasonably should have known of its interest in the action before petitioning for leave to intervene, (2) the extent of the prejudice that the existing parties to the litigation may suffer as a result of the would-be intervenor's failure to apply for intervention as soon as it actually knew or reasonably should have known of its interest in the action, (3) the extent of the prejudice that the would-be intervenor may suffer if its petition for leave to intervene is denied, [and] (4) the existence of unusual circumstances militating either for or against a determination that the application is timely.  Stallworth v. Monsanto, 558 F.2d 257, 264-66 (5th Cir. 1977).

Ratliff did not know that his interests, or the interests of the Kentucky Class, could possibly be jeopardized by the settlement of this matter until February, 2013, when Kentucky counsel learned that negotiations for the settlement of this action purported to include the Kentucky Class.  In fact, the litigation attendant to the Kentucky Class claims had been previously removed to Federal Court and then remanded to state court, and Ratliff and his counsel were therefore well within reason to assume that the settlement of this action could not

possibly include claims asserted by the Kentucky Class in Kentucky state court.  Ratliff did not learn for certain that the Kentucky Class had been included in the Proposed Settlement until that Proposed Settlement was filed of record in this action on July 17, 2013.  [DE 64487].  The question of certification of the Kentucky Class is still undecided, is pending before the Kentucky Supreme Court, and a decision is expected to be issued with the next couple of months.  Ratliff's interest in intervening at this juncture, and the prejudice that will be suffered in the event that intervention is denied, is therefore quite obvious.

Further, there are no special circumstances militating against a finding that the timing of Ratliff's Motion to Intervene is reasonable under Rule 24(a)(2).  See United Airlines, Inc. v. McDonald, 432 U.S. 385, 394 (1977) (intervention by a member of the class is timely when the intervenor acts "as soon as it [becomes] clear  . . . that the interests of the unnamed class members would no longer be represented by the named class representatives.").  When class actions overlap, there is no need to intervene until class members suspect that the representative (or putative representative) is not acting in the best interests of the class.  See, e.g., Crawford v. Equifax Payment Serv., 201 F.3d 877, 880 (7th Cir. 2000); Beckert v. TPLC Holdings, Inc., 221 F.3d 870, 882 (6th Cir. 2000) (class action objectors' intervention motions filed before the Fairness Hearing were timely).

With respect to the second and third elements governing intervention as a matter of right, it is clear that Ratliff and the Kentucky Class possess a substantial interest in this action and that approval of the Proposed Settlement will significantly impair Ratliff's rights and the rights of the Kentucky Class.  The Settlement proposed by the parties to this action purports to include the claims of Ratliff and the Kentucky Class asserted under the KCPA and common law theories of fraud and misrepresentation.  Under Kentucky law, Ratliff and each member of the Kentucky Class would be entitled to benefit of the bargain damages up to and including their out-of-pocket

10

expenses incurred in purchasing Vioxx, seeking a consultation of a physician, punitive damages, and attorneys' fees, in the event that claims against Merck are successfully prosecuted. Under the proposed Settlement, Ratliff and the Kentucky Class waive their rights to this recovery in exchange for a payment through the proposed common fund that is substantially limited and highly unlikely to compensate them for their actual losses.

Ratliff and the Kentucky Class therefore have a direct interest in the fund established by the Proposed Settlement. These rights are substantial and satisfy the second and third prongs of the Rule 24 analysis. See, e.g., Shaunfield v. Citicorp Diners Club, Inc., 2005 U.S. Dist. LEXIS 11244, *16 (N.D. Tex. 2005) (holding that "when a particular fund is at issue, an applicant claims an interest in the very property that is the subject matter of the suit."); Lelsz v. Kavanagh, 710 F.2d 1040, 1043-44 (5th Cir.1983) ("Intervention is a means whereby class members can monitor the representation of their rights.").

With respect to the fourth element, it is likewise obvious that Ratliff and the Kentucky Class's interests have not been and will not be adequately represented by the parties before the Court. Most importantly, the Proposed Settlement severely undervalues the claims of Ratliff and similarly situated consumers in Kentucky. As previously explained to the Court in detail, the Kentucky Class has asserted multiple claims against Merck. These claims include a claim under the KCPA – Merck has settled a state-wide class action asserting a claim under a nearly identical statute for multiple times what it now proposes to settle a nationwide class of consumers. Again, the KCPA does not require proof of reliance and certification of a class of consumers under that statute is therefore likely. The Kentucky Action also includes claims for common law fraud and misrepresentation which involve the possibility of punitive damages. The Proposed Settlement does not take into account the difference between various states' consumer protection statutes and the likelihood of success with respect to class claims asserted against Merck under each or

the vast difference in the Kentucky claims versus most of the claims proposed to be settled. Ratliff is entitled to protect his interests, and the interests of the Kentucky Class, by conducting discovery into the appropriateness of a Proposed Settlement that purports to treat the claims of each consumer in this nation in the same manner despite vast differences in operative law and which disregards the additional and different claims asserted in the Kentucky Action.

A common fund capped at $23 million inclusive of attorneys' fees and costs appears to be facially insufficient to cover the claims of consumers who have purportedly been made a part of the class. After attorneys' fees of $7,360,000 are subtracted from the common fund, this leaves little more than $15 million to cover the claims of consumers who are purportedly part of the class. This does not even take into consideration that the fund will be drastically reduced by the costs associated with the extensive Notice Plan proposed by the parties. Even more important, the cost of the Proposed Notice Plan has not been disclosed to the Court. In addition, the estimated number of potential class members has not been disclosed to the Court. The absence of this information makes it impossible for Ratliff or other putative class members to perform any real analysis with respect to their potential recovery under the Proposed Settlement. Ratliff is entitled to conduct discovery to determine the range of his and the Kentucky Class's potential recovery and evaluate the fairness of the proposal.

A proposed intervenor need only show that its interests in the action <u>may</u> be inadequately represented by the existing party; "the burden of making that showing should be treated as minimal." <u>Trbovic v. United Mine Worker of America</u>, 405 U.S. 528, 538, n. 10 (1972). Thus, even where the parties' interests are technically aligned, but they have different perspective and approaches to the litigation, intervention should be permitted. <u>Chiles v. Thornburgh</u>, 865 F.2d 1197, 1214 (11th Cir. 1989) ("The fact that the interests are similar does not mean that approaches to litigation will be the same.").

## II.  RATLIFF ALSO MEETS THE REQUIREMENTS OF RULE 24(B) FOR PERMISSIVE INTERVENTION.

Under Rule 24(b)(1)(B), intervention may be permitted by the Court where the intervenor "has a claim or defense that shares with the main action a common question of law or fact," and where intervention will not "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24.  Permissive intervention is a matter "wholly discretionary with the [district] court.  New Orleans Public Service, Inc. v. United Gas Pipe Line Co., 732 F.2d 452, 471 (5th Cir. 1984).

Here, is it unquestionable that the claims of Ratliff and the Kentucky Class have questions of law and fact in common with the claims that the Plaintiffs assert in this action. Moreover, Ratliff seeks intervention only for the purposes of obtaining discovery and access to sealed documents bearing on the fairness of the Proposed Settlement that affects all parties to this action, seeking a delay in the dissemination of the Notice to the Proposed Class pending final resolution of the question of certification of the Kentucky Class, and objecting to and seeking to be excluded from the Settlement in the event that the Kentucky Class stands.  Courts are generally amenable to permissive intervention when, as here, the subject matter of the litigation and the claims of the intervenor are similar.  See, e.g., Jones v. Blinziner, 536 F. Supp. 1181, 1189 (N.D. 1982); Textile Workers Union of America, CIO v. Allendale Co., 226 F.2d 765, 769 (C.A.D.C. 1955) (allowing intervention where the parties share common questions of law or fact and have a real economic stake in the outcome of the litigation).  Ratliff has filed this Motion in sufficient time so that action may be taken without altering the deadlines set forth in any of the Court's orders.  The parties can therefore claim no prejudice.


**CONCLUSION**

Based on the foregoing, Ratliff, on behalf of himself and the Kentucky class, meets all of the requirements for intervention, both as a matter of right, and permissively under Federal Rules of Civil Procedure, Rule 24. Ratliff therefore respectfully requests that the Court grant the instant Motion, and permit intervention of Ratliff and the Kentucky Class for the purposes of objecting to the Proposed Settlement, seeking discovery and obtaining sealed documents relevant to the question of the fairness of the Proposed Settlement, seeking exclusion from the Proposed Settlement, and seeking a stay of dissemination of any notice of the Proposed Settlement pending a final decision from the Kentucky Supreme Court with respect to the certification of the Kentucky Class.

Respectfully submitted,

 /s/ Richard A. Getty
RICHARD A. GETTY
    and
JESSICA K. CASE

THE GETTY LAW GROUP, PLLC
1900 Lexington Financial Center
250 West Main Street
Lexington, Kentucky  40507
Telephone:  (859) 259-1900
Facsimile:   (859) 259-1909

COUNSEL FOR JAMES RATLIFF,
ON BEHALF OF HIMSELF AND ALL
OTHERS SIMILARLY SITUATED

**CERTIFICATE OF SERVICE**

   I hereby certify that the foregoing Interested Party James Ratliff's Motion To Intervene And Incorporated Memorandum Of Law has been served upon all parties by electronically uploading the same to LexisNexis File and Serve Advance in accordance with Pre-Trial Order No. 8C, and e-mailing and mailing same, postage prepaid, to the individuals listed below, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this the 1st day of August, 2013.

Russ M. Herman, Esq. (Bar No. 6819)
   and
Leonard A. Davis, Esq. (Bar No. 14190)
Herman, Herman & Katz, L.L.C.
820 O'Keefe Avenue
New Orleans, Louisiana  70113
E-Mail:  rherman@hhklawfirm.com
E-Mail:  ldavis@hhklawfirm.com
Plaintiffs' Liaison Counsel

Phillip A. Wittmann, Esq. (Bar No. 13625)
   and
Dorothy H. Wimberly, Esq. (Bar No. 18509)
Stone Pigman Walther Wittmann, L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130-3588
E-Mail:  pwittmann@stonepigman.com
E-Mail:  dwimberly@stonepigman.com
Defendants' Liaison Counsel

Ann B. Oldfather, Esq. (KY Bar No. 52553)
Oldfather Law Firm
1330 South Third Street
Louisville, Kentucky  40208
E-Mail:  aoldfather@oldfather.com
Liaison And Lead Counsel For Ineligible
Or Non-Enrolled Cases And Certain
Other Remaining PI Claims

John H. Beisner, Esq.
Skadden Arps Slate Meagher & Flom, LLP
1440 New York Avenue, N.W.
Washington, D.C.  20005
E-Mail:  John.Beisner@skadden.com
Counsel for Merck & Co., Inc.

Dawn M. Barrios, Esq.
Barrios, Kingsdorf & Casteix, LLP
701 Poydras Street, Suite 3650
New Orleans, Louisiana  70139
E-Mail:  barrios@bkc-law.com
Government Action Liaison Counsel

Elizabeth J. Cabraser, Esq.
Lieff Cabraser Heimann & Bernstein
275 Battery Street, 29th Floor
San Francisco, California  94111-3339
E-Mail:  ecabraser@lchb.com
Co-Lead Class Settlement Counsel

         /s/ Richard A. Getty
         COUNSEL FOR JAMES RATLIFF, ET AL.

jkcpld0731