## IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
## AT INDEPENDENCE

MARY PLUBELL, on behalf of herself )
and all others similarly situated, )
 )
TED IVEY, on behalf of himself )   Case No. 04CV235817-01
and all others similarly situated, )   Division 16
 )
       Plaintiffs, )
 )
v. )
 )
MERCK & CO., INC., )
 )
       Defendant. )

## SETTLEMENT AGREEMENT

This Settlement Agreement (sometimes referred to herein as the "Agreement"), dated October 10, 2012, is made and entered into by and between Representative Plaintiffs Mary Plubell and Ted Ivey, on behalf of themselves and the Settlement Class as defined below, and Defendant Merck & Co., Inc. ("Merck") to settle and compromise the Litigation and settle, resolve, and discharge the Released Claims, as those terms are defined below, according to the terms and conditions herein. This Settlement Agreement includes the attached exhibits:

    Exhibit A – Proposed Preliminary Approval Order

    Exhibit A-1 – Long-Form Notice

    Exhibit A-2 – Summary Notice

    Exhibit A-3 – Postcard Notice

    Exhibit A-4 – Claim Form

    Exhibit A-5 – TV Spot

# EXHIBIT A

1.      DEFINITIONS

As used herein, the following terms have the meanings set forth below.

1.1        "Claim Deadline" means nine (9) months from the date on which the mailing of

Notice Postcards commences pursuant to the Notice Program.  The Parties, in consultation with

the Claims Administrator, shall determine the Claim Deadline and include it in all notices.

1.2        "Claim Form" means a document, containing all the material information sought

in Exhibit A-4 hereto, that a Settlement Class Member must complete and submit to show that

they are included in the Class and entitled to the class benefits made available by this

Agreement.

1.3        "Claimant" means a Settlement Class Member who timely submits a Claim Form

in accordance with the procedures set forth in the Notice and Claim Form.

1.4        "Claims Administrator" means the third party agreed upon by the Parties and

appointed by the Court to administer the notice program and claims process.

1.5        "Common Fund" means the settlement fund to be created by Defendant pursuant

to this Settlement.

1.6        "Common Fund Escrow Account" means the escrow account that shall be created

within thirty (30) days after the Settlement Agreement is executed and shall be under the control

of the Court.  The initial payment amount, as well as all additional payment amounts pursuant to

the terms of this Settlement Agreement, shall be deposited into the Common Fund Escrow

Account.

1.7        "Court" means the Circuit Court of Jackson County at Independence, Missouri,

where the Litigation was filed and the Settlement shall be processed.

1.8        "Defendant" means Merck & Co., Inc. and/or Merck Sharpe & Dohme Corp.

1.9        "Defense Counsel" means Defendant's counsel of record in the Litigation, including: Williams & Connolly LLP; Skadden, Arps, Slate, Meagher & Flom LLP; Baker Botts L.L.P.; Bryan Cave LLP; Dechert LLP; and Barlit Beck Berman Palenchar & Scott LLP.

1.10       "Effective Date" means the day on which all of the events and conditions specified in Section 8.1 have occurred and been met.

1.11       "Final" means (a) if no appeal from the Judgment is filed, the date of expiration of the time for the filing or noticing of any appeal from the Judgment; or (b) if an appeal from the Judgment is filed, and the Judgment is affirmed or the appeal dismissed ("Appellate Judgment"), the date of such affirmance or dismissal; or (c) if a petition for review of the Appellate Judgment is filed and denied, the date the petition is denied; or (d) if a petition for review of the Appellate Judgment is filed and granted, or the Missouri Supreme Court orders review of the Appellate Judgment on its own motion, the date the Appellate Judgment is affirmed or the review proceeding dismissed, provided no other appeals or certiorari petitions may be filed; or (e) if any further appeal or certiorari petition is filed and not dismissed or denied, the date the Judgment is upheld on appeal in all material respects and is no longer subject to any further appellate review.

1.12       "Fraudulent" and/or "materially false information" and/or "false supporting documentation" as used herein means an intentionally false representation concerning a material fact that was knowingly made. "Fraudulent" and/or "materially false information" and/or "false supporting documentation" shall not mean any innocent mistakes related to the identity of the doctor, hospital, medical facility, or pharmacy who prescribed or dispensed Vioxx to the Settlement Class Member or any innocent mistakes related to the number of months the Settlement Class Member may have been prescribed Vioxx.

1.13      "Judgment" means the judgment entered by the Court approving the Settlement in all material respects pursuant to the terms of this Settlement Agreement.  The parties agree to use their best efforts to negotiate in good faith a form of a proposed Judgment and Order finally approving the settlement.

1.14      "Litigation" means the lawsuit captioned *Mary Plubell, et. al v. Merck & Co., Inc.*, Case No. 04CV235817-01, pending in the Circuit Court of Jackson County, Missouri at Independence.

1.15      "Long-Form Notice" means a document, substantially in the form of Exhibit A-1 hereto, to be published on the settlement website and disseminated upon request to Class Members by first class mail in accordance with the Preliminary Approval Order.

1.16      "Notice Program" means the program for disseminating notice of this Agreement created by the Claims Administrator, agreed to by the parties and approved by the Court, and followed in accordance with the Preliminary Approval Order.

1.17      "Parties" means the Representative Plaintiffs, members of the Settlement Class and Defendant.

1.18      "Person" means an individual, corporation, partnership, limited partnership, limited liability company, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, any business or legal entity, and such individual's or entity's owners, members, partners, shareholders, spouse, heirs, predecessors, successors, representatives, and assignees.

1.19      "Plaintiffs' Counsel" means the Court-appointed class counsel in the litigation, Stueve Siegel Hanson LLP and Gray, Ritter & Graham, P.C.

1.20        "Postcard Notice" means a postcard, substantially in the form of Exhibit A-3 hereto, to be disseminated by first class mail to all Missouri households, apartments, or other residential dwellings in accordance with the Preliminary Approval Order.

1.21        "Preliminary Approval Order" means the Court's order(s) granting preliminary approval of this Settlement Agreement and ordering the dissemination of the Notice.

1.22        "Released Claims" means any and all economic injury claims of any type that any Representative Plaintiff or Settlement Class Member has or may have against any of the Released Persons arising out of or related in any way to his or her purchase of Vioxx in the State of Missouri, including but not limited to the claims asserted in the Litigation.  This Class and the Released Claims do not include any claims for personal injury or death, or claims derivative of such claims, or as to physicians, medical facilities, and pharmacies as outlined below in the definition of "Released Persons" for any claims other than for the recovery of the value of Vioxx.  This Settlement does not revive any claims not included in Released Claims.

1.23        "Released Persons" means Defendant Merck & Co., Inc., its parent companies, affiliate companies, subsidiary companies, and the past, present and future officers, directors, shareholders, employees, predecessors, parents, subsidiaries, insurers, agents, servants, successors, trustees, representatives, heirs, executors, and assigns of all of the foregoing Persons and entities, including all suppliers, distributors, wholesalers, and retailers of Vioxx, as well as any physicians, medical facilities, and pharmacists who were in an way involved in, or within the chain of distribution of, the purchase of Vioxx by a Representative Plaintiff or Settlement Class Member.

1.24        "Representative Plaintiffs" means the named plaintiffs in the Litigation, namely Mary Plubell and Ted Ivey, who are the representatives of the Class certified by the Court.

1.25        "Settlement" means the settlement set forth in this Agreement.

1.26        "Settlement Class" or "Class" means all Missouri residents who purchased Vioxx

for personal or family use.  Excluded from the Settlement Class are: (a) Defendant, including any

parent, subsidiary, affiliate or controlled person of Defendant; Defendant's officers, directors,

agents or employees; the judicial officers assigned to this Litigation; and members of their staffs

and immediate families; (b) any private or governmental third-party payor or any governmental

or corporate purchaser; (c) any individual who received compensation under the Vioxx Personal

Injury Settlement Program or who is claiming or claimed to have suffered a personal injury as a

result of taking Vioxx.

1.27        "Settlement Class Member" means a natural individual who falls within the

definition of the Settlement Class set forth in Section 1.26.

1.28        "Settling Parties" means, collectively, the Released Persons, the Representative

Plaintiffs, and all Settlement Class Members.

1.29        "Summary Notice" means a document, substantially in the form of Exhibit A-2

hereto, to be published in various newspapers and magazines pursuant to the Notice Program in

accordance with the Preliminary Approval Order, designed to supplement the Postcard Notice

and provide direction on how to obtain the Long-Form Notice.

## 2.        **DEFENDANT'S DENIAL OF WRONGDOING**

2.1        Defendant denies all of the material factual allegations and legal claims asserted

by the Representative Plaintiffs in the Litigation, including any and all charges of wrongdoing or

liability arising out of any of the conduct, statements, acts or omissions alleged, or that could

have been alleged, in the Litigation and maintains that these claims have no factual or legal

merit.   Nonetheless, Defendant has concluded that further conduct of the Litigation would be

protracted and expensive, and that it is desirable that the Litigation be fully and finally settled in

the manner and upon the terms and conditions set forth in this Agreement. This Agreement is for settlement purposes only and shall have no precedential value in any future litigation.

2.2       If the Settlement provided for herein is not approved by the Court in accordance with the material terms of this Agreement and/or does not become Final following such approval, this Agreement will be terminated and Defendant will not be deemed to have waived any defenses to this Litigation, including with respect to class certification. Nor will Plaintiffs be deemed to have waived any rights or claims in this Litigation.

## 3.    THE BENEFITS OF SETTLEMENT

3.1       The Representative Plaintiffs believe that the Released Claims have merit. However, the Representative Plaintiffs recognize and acknowledge the expense and length of continued proceedings that would be necessary to prosecute the Released Claims against Defendant through trial and appeals. The Representative Plaintiffs also have taken into account the uncertain outcome and the risk of any litigation, especially in complex actions such as this Litigation, as well as the difficulties and delays inherent in such litigation. The Representative Plaintiffs are likewise mindful of the possible defenses to the Released Claims. The Representative Plaintiffs believe that the proposed Settlement confers substantial benefits upon the Settlement Class. Based on their evaluation of all of these factors, the Representative Plaintiffs have determined that the Settlement is in the best interests of the Settlement Class.

## 4.    SETTLEMENT CONSIDERATION

### A.    Common Fund

4.1       Pursuant to this Agreement, a Common Fund is created under the jurisdiction and control of the Jackson County Court that is inclusive of all benefits made available to Settlement Class Members by the terms of this Agreement. All amounts to be paid pursuant to this

Settlement shall be paid from this Common Fund.  This Common Fund includes the monetary value of (a) the settlement payments made available to each Settlement Class Member pursuant to the terms of this Agreement for all Vioxx prescriptions purchased by Class Members; (b) the cost of providing Notice to the Settlement Class of the proposed settlement through the Notice Program agreed to by the Parties and approved by the Court; (c) the Plaintiffs' Counsel fees and expenses awarded by the Court; (d) all costs of administering the settlement pursuant to the terms of the Settlement Agreement; and (e) all incentive awards to be paid to the Representative Plaintiffs awarded by the Court.

4.2.        A minimum initial payment of thirty-nine million dollars ($39,000,000.00) shall be paid by the Defendant to the Common Fund Escrow Account and disbursed from the Common Fund pursuant to this Agreement.  The maximum payment by the Defendant to the Common Fund Escrow Account pursuant to this Agreement includes all amounts reflected in Section 4.1 (a) – (e).

4.3        Other than to pay the costs of the Claims Administrator for the costs of notice and administration as approved by the Court, no other disbursements shall be made from the Common Fund prior to the Judgment becoming Final and the Effective Date of this Settlement Agreement being reached, except as provided in Section 4.10.3.

4.4        Settlement Class Members are entitled to payment from the Common Fund upon the submission by them of a valid claim through the Option 1 or Option 2 claims process, defined below.  To be valid, a Claim must be (1) timely submitted with all required information and documentation (taking into account the cure period outlined herein), (2) submitted by the individual Settlement Class Member or a family member or legal guardian of such Settlement Class Member (no other third-party submissions are permitted), (3) timely supplemented with additional information or documentation in response to requests by the Claims Administrator

pursuant to a deficiency notice or an audit of the Claim, and (4) signed by the submitting Settlement Class Member under the penalties of perjury.  Only Settlement Class Members who submit valid Claims are eligible to receive funds from this Settlement.  Settlement Class Members may not assign their claim in this Litigation or their rights under this Agreement to any other person.

4.4.1        Settlement Class Members who submit a valid claim under <u>Option 1</u> will receive a check for One Hundred Eighty Dollars ($180.00).

4.4.1.1        A valid claim under Option 1 must include (a) a declaration under oath: (i) identifying the doctor, hospital, medical facility, or pharmacy who prescribed or dispensed Vioxx to the Settlement Class Member; (ii) averring that the Settlement Class Member, while a resident of Missouri, paid for all or part of the prescription price, and that the Settlement Class Member did not receive any compensation under the Vioxx Personal Injury Settlement Program; and (iii) stating that, if the claim is selected for audit, the Settlement Class Member shall execute a form authorizing access to pharmacy and medical records and provide such additional information (including the identity of the doctor who prescribed Vioxx for the Settlement Class Member) that the Claims Administrator deems necessary to audit the Claim; and (b) personal and residence information as set forth on the Claim Form.  The Claims Administrator shall seek only those medical and/or pharmacy records pursuant to an Audit that are necessary to most efficiently and reasonably confirm the validity of the Claimant's proof of payment.

4.4.1.2        No further documentation is required.  By completing, signing and submitting a valid claim to the Claims Administrator on the Claim Form in a timely manner, a Settlement Class Member will have satisfied the requirements of this section, subject to any audit of the Claim.

4.4.2          Settlement Class Members who submit a valid and timely claim under Option 2 will receive a one-time payment from the Common Fund in an amount equal to Ninety Dollars ($90.00) for each and every month the Settlement Class Member purchased Vioxx while a Missouri resident and which is supported by proof of payment.

4.4.2.1          A valid claim under Option 2 must include a statement by the Class Member indicating the number of months that the Class Member purchased Vioxx while a resident of Missouri.  A claim shall be deemed valid if it is determined by the Claims Administrator that the Settlement Class Member was prescribed Vioxx for use during the claimed number of months.  The Claims Administrator shall accept any of the following as adequate proof of payment: (a) a receipt, cancelled check, or credit card statement showing payment for Vioxx for the claimed number of months; (b) a letter from a doctor saying that he or she prescribed Vioxx for use (physician provided samples are not included) by the Settlement Class Member for the claimed number of months and the approximate dates for which usage was prescribed; (c) an EOB (explanation of benefits) from a third-party payor that shows Vioxx was prescribed for the Settlement Class Member for the claimed number of months; (d) records from a pharmacy, PBM or similar entity showing Vioxx was prescribed for the Settlement Class Member for use during the claimed number of months; or (e) a declaration containing the prescription dates, the name and address of the doctor(s), hospital, medical facility, or pharmacy who prescribed or dispensed Vioxx and appropriate HIPPA authorization for Vioxx prescriptions.  The Claims Administrator shall seek only those medical and/or pharmacy records pursuant to an Audit that are necessary to most efficiently and reasonably confirm the validity of the Claimant's proof of payment.

4.4.2.2     The option to submit a declaration and HIPPA authorization described in subsection (e) above will be satisfied if the Settlement Class Member completes and signs the Claim Form and the HIPPA release attached hereto as Exhibit A-4 and the Claims Administrator verifies through records that the Settlement Class Member was prescribed Vioxx for use for the claimed number of months.

4.4.2.3     Subject to the provisions of Section 4.13, in the event a Settlement Class Member submits valid proof of payment for some, but not all, of the claimed months, the Settlement Class member shall receive payment for those months in which valid proof was submitted.

4.5     Each Representative Plaintiff shall be entitled to seek an incentive award from the Common Fund Escrow Account in accordance with Section 6.3 of this Agreement.  Defendant shall not oppose or support any objection to an incentive award sought in accordance with the terms of this Agreement.

4.6     Plaintiffs' Counsel shall be entitled to seek from the Court an award of attorneys' fees and expenses from the Common Fund in accordance with Sections 6.1 and 6.2 of this Agreement.  Defendant shall not oppose or support any objection to an award of attorneys' fees and expenses sought in accordance with the terms of this Agreement.

4.7     Notice and administration costs shall be paid from the Common Fund as determined and in accordance with Section 4.18 – 4.23 of this Agreement.  In the event the settlement is not approved, any portion of the notice and administration costs already spent shall be nonrefundable, and any portion of the Common Fund not yet spent shall be returned to Defendant.

4.8     If following the Effective Date of this Settlement Agreement, the aggregate amount of paid claims, plus the incentive awards awarded by the Court, plus the attorneys' fees and expenses awarded by the Court, plus the notice and administration costs, is less than the

initial payment amount of $39,000,000 (plus interest pursuant to Section 4.10.2) into the Common Fund Escrow Account, the Court shall determine how the remainder of the funds from the initial payment amount shall be distributed in accordance with Missouri *cy-pres* law, but they shall not be returned to Defendant, nor shall they be paid to Plaintiffs' Counsel.

4.9        Upon the passing of both the Effective Date and the Claims Deadline, and following the payment of all valid claims, all attorneys' fees and expenses awarded by the Court, all incentive awards made by the Court, and payment for all notice and administration costs, any remainder of the Common Fund, above and beyond the initial payment amount of $39,000,000 (plus interest pursuant to Section 4.10.2), shall be refunded to the Defendant.

### B.    **Common Fund Escrow Account**

4.10.        The Common Fund Escrow Account shall be funded as follows:

4.10.1. A Common Fund Escrow Account shall be created within thirty (30) days after the Settlement Agreement is executed and shall be under the control of the Court.  Plaintiffs' Counsel, on behalf of the Settlement Class, shall be responsible for all administrative, accounting, and tax compliance activities in connection with the Common Fund deposited in the Common Fund Escrow Account, including any filings necessary to obtain Qualified Settlement Fund status pursuant to Treas. Reg. §1.468B-1 for the Common Fund Escrow Account. Defendant will provide to Plaintiffs' Counsel a W-9 or other documentation necessary to facilitate obtaining Qualified Settlement Fund status for the Common Fund Escrow Account pursuant to Treas. Reg. §1.468B-1.  All costs and expenses associated with all administrative, accounting and tax compliance activities of the Common Fund Escrow Account shall be reimbursed and paid for from the Common Fund Escrow Account as approved by the Court.

4.10.2. Within ten (10) days of the Court granting preliminary approval of the Settlement, Defendant shall transfer an initial payment in the amount of Thirty-nine million dollars ($39,000,000.00) into the Common Fund Escrow Account by electronic funds transfer pursuant to instruction from Plaintiffs' Counsel.  Any interest that accrues on amounts in the Common

Fund Escrow Account shall be deemed to be part of the Common Fund but shall not revert back to Defendant.

4.10.3. If for any reason, the Settlement does not obtain Final Approval, does not become Final, the Effective Date of the Settlement does not occur, and/or the Agreement is terminated, the amounts paid into the Common Fund by the Defendant (less any amounts paid for the costs of notice and administration pursuant to the Court-ordered Notice Program prior to termination of the Settlement Agreement) shall be forthwith refunded to Defendant.

4.10.4 If the aggregate amount of valid claims, plus the incentive awards awarded by the Court, plus the attorneys' fees and expenses awarded by the Court, plus notice and administration costs, exceeds the initial payment into the Common Fund Escrow Account, Defendant shall transfer additional funds into the Common Fund Escrow Account sufficient to pay those additional amounts. However, Defendant shall not be required to deposit additional funds into Common Fund Escrow Account to pay any attorney's fees, expenses, and incentive awards in excess of the amounts set forth in Sections 6.1, 6.2, and 6.3.

## C.     <u>Claims Process</u>

4.11       Settlement Class Members may submit claims by mail or through a settlement website established and maintained by the Claims Administrator. Claims may only be submitted by the individual Settlement Class Member and not by third-parties, except a family member or legal guardian of the Settlement Class Member. Claims will be considered timely if submitted by the Claims Deadline. A claim will be deemed submitted on the date of postmark, hand delivery, or electronic submission to the Claims Administrator. Upon receipt of a claim, the Claims Administrator shall send the Claimant an acknowledgement that the claim was received and the date upon which the claim was received.

4.12       The Claims Administrator shall maintain a website with which Settlement Class Members may (a) electronically submit a Claim Form and electronically upload copies of any of documented proofs of payment required under Section 4.4.2.1; (b) electronically submit the

declaration and HIPPA release described in Section 4.4.2.2; and (c) check on the status of their claim and provide any information required under the audit provisions described below. The Claims Administrator shall implement any steps necessary to accept valid electronic signatures and the parties agree to accept electronic signatures as original signatures.

4.13       In the event that the Claims Administrator deems a claim invalid for failing to comply with the terms of this Agreement, the Claims Administrator shall send a notice of deficiency to the Settlement Class Member describing the deficiency and the steps required to cure that deficiency. Settlement Class Members shall have ninety (90) days from the date of the deficiency notice to cure any deficiency. Any deficiencies cured within ninety (90) days of the date of the deficiency notice shall be deemed timely if the original claim was submitted prior to the Claims Deadline. However, any claims that remain deficient following the expiration of ninety (90) days following the date of the deficiency notice shall be invalid claims and can no longer be supplemented or remedied. Further, to the extent a claim is submitted that is fraudulent or which contains materially false information or false supporting documentation as determined by the Claims Administrator, the claim will be denied in its entirety as invalid and the Settlement Class Member shall be disqualified from making any further claim. Further, the Claims Administrator shall report to the Court and the Parties any evidence of claims that are fraudulent or which include materially false information or false supporting documentation, which may then be reported to appropriate legal authorities.

4.14       Audit of Option 1 Claims

4.14.1       The Claims Administrator shall conduct an audit of a sampling of up to 5% of the Option 1 claims. Thereafter, the Claims Administrator shall audit an additional 10% of the claims, unless the Administrator finds that 2% or more of the first audited claims were fraudulent (or the claimant fails to provide information requested by the

Administrator to allow an audit to be conducted) in which case the Administrator shall conduct audits of more than 10% at his discretion and upon Plaintiffs' Counsel or Court Approval. Defendant also may request that additional audits be conducted and/or seek a Court order requiring that additional audits be conducted, but no additional audits may be conducted absent approval of Plaintiffs' Counsel or the Court.

4.14.2      To audit Option 1 claims pursuant to Section 4.14.1, the Claims Administrator shall request that the Class Member execute a form authorizing access to pharmacy and medical records and provide such additional information (including the identity of the doctor who prescribed Vioxx for the Class member) that the Claims Administrator reasonably determines is necessary to conclude that the Class Member purchased Vioxx. If a claim being audited was submitted by a Class Member who is not a current resident of Missouri, the Claims Administrator may request "Reasonable Proof of Missouri Residency" during the relevant period, as defined below. If a claim being audited was submitted by a Class Member who is a current resident of Missouri, and if the information provided to the Claims Administrator reasonably indicates that the Class Member was not a Missouri resident during the relevant period, the Claims Administrator also may request "Reasonable Proof of Missouri Residency" during the relevant period, as defined below.

4.15      Audit of Option 2 Claims

4.15.1      No more than 10% of Option 2 claims will be subject to audit absent consent of Plaintiffs' Counsel or Court approval. Defendant also may request that additional audits be conducted and/or seek a Court order requiring that additional audits

be conducted, but no additional audits may be conducted absent approval of Plaintiffs' Counsel or the Court.

4.15.2          To audit an Option 2 claim pursuant Section 4.15.1, the Claims Administrator shall request that the Class Member provide (a) a proof of payment as allowed under Section 4.4.2.1 or (b) a signed authorization that permits the Claims Administrator to obtain the Settlement Class Member's pharmacy and medical records to show that he was prescribed Vioxx.  The authorization requested shall be limited to medical and pharmaceutical records showing that the Settlement Class Member was prescribed Vioxx.  If a claim being audited was submitted by a Class Member who is not a current resident of Missouri, the Claims Administrator may request "Reasonable Proof of Missouri Residency" during all or part of the relevant period, as defined below (e.g., one or more of the claimed number of months of Vioxx prescription).  If a claim being audited was submitted by a Class Member who is a current resident of Missouri, and if the information provided to the Claims Administrator reasonably indicates that the Class Member was not a Missouri resident during all or part of the relevant period (e.g., for one or more of the claimed number of months of Vioxx prescription), the Claims Administrator may request "Reasonable Proof of Missouri Residency" during the relevant period, as defined below.

4.15.3          "Reasonable Proof of Missouri Residency" shall include, but not be limited to, any one of the following indicating a Missouri residential address during the relevant time frame: a Missouri driver's license; a Missouri utility bill; a Missouri phone bill; a Missouri credit card bill; first page of federal or Missouri state tax return; a Missouri voter id card; a Missouri real estate tax bill; a Missouri personal property tax bill; or a Missouri assessment notice.  The Claims Administrator shall maintain such

records as highly confidential.  Upon satisfaction of the audit and in the absence of evidence of fraud or a materially false submission, the records and all copies kept by the Claims Administrator shall be destroyed and shall not be disclosed to the Defendant.

4.15.4     The Claims Administrator shall complete all audits within six (6) months of the last submission in support of such claims, unless otherwise ordered by the Court. Claims of Settlement Class Members that are complete and timely submitted, but which are not selected for audit, shall be paid no later than four (4) months after the last submission in support of the Claim, unless otherwise ordered by the Court.

4.15.5     All decisions with respect to the validity and timeliness of claims submitted under this Agreement shall be made by the Claims Administrator and shall be binding on the Class Members submitting such claims, shall be final, and shall not be appealable.

4.16     Plaintiffs' Counsel and Defendant shall approve the form, content and methods of claims and document submission to the Claims Administrator's website.  If the Parties are unable to agree on any form, content or methods of claim processing and document submission (but not decisions regarding individual claims), the Parties agree to submit such issues to the mediator for final resolution, and no appeal may be taken from such disposition or resolution.

4.17     The Claims Administrator shall provide reports to Plaintiffs' Counsel and Defendant regarding the implementation of the Notice Program and the number, substance, and status of claims, claim audits, claim payments, and claim processing expenses, periodically and upon request.

**D.**     **Notice and Administration**

4.18          The parties have agreed to a widespread notice program intended to make Class

Members aware of the settlement and their legal rights, with the following components:

4.18.1          *Publication Advertising* -- The Claims Administrator shall publish the

Summary Notice, substantially in the form as the attached Exhibit A-2, in the same publications

in which notice of Class certification was previously published in this case in the same manner

and with the same frequency and number of insertions as under the notice plan utilized in

connection with Class certification.  All publication advertising shall occur prior to the expiration

of the deadline for submitting objections to the settlement pursuant to Section 5.4.

4.18.2          *Internet Advertising* – To the extent any of the publications utilized in the

prior notice to the Class maintain websites displaying internet versions of the publication, the

Claims Administrator shall post on those websites for thirty (30) days on each website beginning

on the initial date on which the Summary Notice will appear in the corresponding print

publication, to the extent possible, the content of the Notice Postcard and a "click-thru" link to

the settlement website described in Section 4.18.5.

4.18.3          *Television Advertising* – The Claims Administrator shall also purchase on

television stations serving Missouri markets or on cable systems located and operating in

Missouri advertising reasonably directed to Missouri residents informing Settlement Class

Members of their opportunity to receive the benefits of this Settlement.  Such advertising shall

(a) convey the content set forth in Exhibit A-5, (b) expressly state that the advertising was

approved by a Court pursuant to a class-action settlement; and (c) prominently give viewers the

settlement website, the toll-free number, and the mailing address to obtain more information.

The Claims Administrator shall spend up to and including $150,000 (one-hundred fifty-thousand

dollars) in such advertising and shall select ad spots on stations and at times most calculated to

reach Settlement Class Members. All television advertising shall occur prior to the expiration of the deadline for objections as described in Section 5.4.

      4.18.4      *Mailed Notice* -- The Claims Administrator shall implement a program reasonably calculated to deliver the Notice Postcard, substantially in the form of Exhibit A-3 via first class U.S. Mail to all Missouri households, apartments or other residential dwellings. Upon request, the Claims Administrator shall mail to any requesting party the Long-Form Notice and Claim Form, along with a postage prepaid envelope for return of the Claim Form. The mailing of the Notice Postcards shall commence in accordance with Section 5.3 and, in consultation with the Parties, following the calculation of the deadline date for objections and Claim Deadline date.

      4.18.5      *Website* -- The Claims Administrator shall maintain an internet website up to and including the Claim Deadline that will permit access to the Settlement Agreement, the Court's Order Preliminarily Approving the Settlement, the Long-Form Notice, the Summary Notice, the Postcard Notice, the last amended Petition, Defendant's Answer to the last amended Petition along with any other documents and/or information the Parties and the Claims Administrator agree upon as necessary and will have available electronic versions of the claims forms by which Settlement Class Members may submit such forms on line. The website shall be activated no later than the date on which the mailing of the Notice Postcard has commenced.

      4.18.6      *Post Office Box* -- The Claims Administrator shall establish and maintain a post office box to allow Class Members the opportunity to request additional information or a Claim Form, ask questions by mail, or submit a Claim Form or further supporting documentation until following the expiration of all claim deadlines, including any cure periods.

      4.18.7      *Toll-Free Number* -- The Claims Administrator shall establish and maintain a toll-free number to allow Class Members to call and listen to answers to frequently asked questions, and to request to have a Long-Form Notice mailed to them. The toll-free number shall be maintained up to and including the Claim Deadline, including any cure periods.

4.19        The Claims Administrator shall propose a budget covering all of the costs of the proposed Notice Program, which is subject to the approval of the Parties and the Court, and which shall be observed in the implementation of the Notice Program.

4.20        In the event Defendant agrees to additional forms of notice to consumers in settlements reached in the Vioxx federal multi-district litigation proceeding (the "MDL Proceeding") pending in the United States District Court for the Eastern District of Louisiana, Defendant agrees to provide such additional forms of notice to Settlement Class Members after review and approval by Plaintiffs' Counsel.  Further, Defendant agrees that any aspects of a consumer notice program proposed in the MDL Proceeding that could be disseminated within the State of Missouri shall be reviewed and approved in advance by Plaintiffs' Counsel.

4.21        Plaintiffs' Counsel and Defendant shall have the right to approve the content and methods of all notice activity conducted by the Claims Administrator, subject to the approval of the Court.

4.22        The cost of the notice program agreed to by the Parties and approved by the Court shall be the responsibility of Defendant, considered part of the Common Fund, and paid from the Common Fund Escrow Account.

4.23        All costs of administration of the Settlement as approved by the Court shall be the responsibility of Defendant, considered part of the Common Fund, and paid from the Common Fund Escrow Account.


    E.    **Releases**

4.24        Upon the Effective Date, the Representative Plaintiffs and each and every Settlement Class Member who has not timely and validly opted out of the Settlement will be deemed to have, and by operation of the Judgment, will have, fully, finally, and forever released, relinquished, and discharged the Released Persons from all Released Claims.

4.25.        Upon the Effective Date, each of the Released Persons and their counsel who has not timely and validly opted out of the Settlement will be deemed to have, and by operation of

the Judgment will have, fully, finally, and forever released, relinquished, and discharged the Representative Plaintiffs, Plaintiffs' Counsel, and all Settlement Class Members from any and all claims, demands, liabilities, and causes of action of every nature and description whatsoever, known or unknown, whether or not concealed or hidden, asserted or that might have been asserted, arising out of, based upon, or related to the initiation, prosecution, assertion, litigation, settlement, or resolution of the Litigation or Released Claims.

### F.   Indemnity

4.26.          Defendant agrees not to assert and waives any right to seek indemnity or other recovery (whether available to Defendant by contract, equity or law) from any third-party payor, including but not limited to private insurers, Medicare or Medicaid, that Defendant has settled with or in the future does settle with where those third-party payors paid for all or part of any Settlement Class Member's Vioxx prescription.   Defendant further waives any right of subrogation or any other right belonging to Defendant to recover back any settlement amount paid or made available to any Settlement Class Member by virtue of its settlement with any other party.  The amounts made available and paid to Settlement Class Members are free and clear of any encumbrances now held or later acquired by Defendant.

### G.   Liens

4.27.          It is Plaintiffs' Counsel's position that the Settlement Class Members may not have any lien repayment or claim reimbursement obligations to Missouri's state Medicaid agency, or to the Centers for Medicare and Medicaid Services ("Medicare"), based on the fact that no Class Members have claimed, released or effectively released medical expenses conditionally paid for by Missouri Medicaid or Medicare.  Instead, the measure of damages is and has been purely economic, as each Class Member is to receive a calculated value of the pharmaceutical product, Vioxx, based on a diminished value theory under the benefit of the

bargain - that the member's receipt of a product is alleged to be worth less than it would have been had the Defendant's representations about Vioxx been true.

4.28       In the case of Medicaid, it is Plaintiffs' Counsel's position that Missouri Medicaid statute (Mo. Ann. Stat. § 208.215.8) is triggered only when a third party is liable to a Medicaid beneficiary, on account of "personal injury or disability or disease benefits" for which the (Medicaid) department has paid medical expenses related to such claim.  Since the measure of allowable damages by court order and integrated into this Settlement Agreement is limited to the value of the Vioxx prescriptions, and excludes personal injury damages/benefits, using the diminished value theory under the benefit of the bargain identified above, it is also Plaintiffs' Counsel's position that Missouri's Medicaid lien statute does not apply to compensation recovered by Settlement Class Members.

4.29       In the case of Medicare (if applicable at all here), it is Plaintiffs' Counsel's position that Class Members are not required to reimburse Medicare for the costs of Vioxx under 42 U.S.C. §1395y(b)(2) and its accompanying regulations where Medicare has not made a conditional payment for such costs within the meaning of the MSP statute, or where Medicare has paid for the costs of Vioxx, but the Defendant is not making payment for such costs as defined.

4.30       If any private or governmental lien claims, reimbursement claims, or encumbrances of any kind are asserted, the Parties and their counsel agree they will not support or otherwise encourage in any fashion whatsoever any such claims or assertions by such private or governmental entities.  The Parties and their counsel further agree that they will not take any positions contrary in any way to the positions outlined in Paragraphs 4.27-4.29.  Nothing in this paragraph shall preclude Defendant from complying with any governmental directive, interpretation, or guidance as required by law.

4.31       Notwithstanding the above provisions, it is each Settlement Class Member's responsibility to pay any and all valid and enforceable liens, reimbursement claims, or encumbrances held or asserted by any private or governmental lien holders.  Plaintiffs and each

Class Member on their own behalf, further understand and agree to indemnify, hold harmless and defend the Released Persons from all claims by any state or other government body, employer, attorney, insurer, and/or any other entity for all past, present and future liens or claims asserting a right of subrogation, right of indemnity, right of reimbursement or other such right for amounts paid or to be paid in consideration for the release of the Released Claims by such Class Member, including any reimbursement claims pursuant to the Medicare Secondary Payer statute (42 U.S.C. §1395y(b)(2), and any regulations promulgated pursuant thereby.  With respect to reporting under Section 111 of the Medicare, Medicaid and SCHIP Extension Act of 2007 ("MMSEA") and any regulations promulgated pursuant thereby, where if applicable, each Class Member who is identified as being Medicare enrolled, and to or for whom a payment is to be made that exceeds applicable threshold amounts (currently Five Thousand dollars[1]) such that mandatory insurer reporting applies within the meaning of the MMSEA ("Reportable Medicare Enrolled Class Member"), warrants and represents as to the accuracy of information provided as part of such reporting obligations of Defendant (or its Responsible Reporting Entity).

4.32      The Claims Administrator will obtain from Class Members to or for whom a payment is to be made that exceeds applicable threshold amounts (currently Five Thousand dollars), and those Class Members shall provide, information necessary to (1) determine their Medicare status for reporting purposes, and (2) make any required report of such claim pursuant to MMSEA, if applicable, prior to the payment of such claim.  The Claims Administrator shall provide such information to Defendant.  The Claims Administrator shall make any such reports

---

[1]  The threshold for mandatory insurer reporting of a Total Payment Obligation of Claimant (TPOC), where the TPOC Date is on or between October 1, 2012 and September 30, 2013, is a cumulative TPOC amount of greater than $5,000.  If the TPOC Date is between October 1, 2013 and September 30, 2014, the cumulative TPOC amount that requires reporting will decrease to amounts greater than $2,000.  If the TPOC Date is on or after October 1, 2014, the cumulative TPOC amount that requires reporting will decrease to amounts greater than $300.  *See* Centers for Medicare & Medicaid Services, *MMSEA Section 111 Medicare Secondary Payer Mandatory Reporting Liability Insurance (Including Self-Insurance), No-Fault Insurance, and Workers; Compensation User Guide, Chapter III, Policy Guidance*, Section 6.4.3.1, pp. 30-31, Version 3.4, July 3, 2012.

pursuant to Section 111 of MMSEA due to any payments to Reportable Medicare Enrolled Class Members under this Settlement.

4.33        The Parties further agree that, in the event that Class Members qualify for amounts in excess of the applicable threshold amounts for reporting purposes and/or valid governmental and/or private liens or reimbursement rights are asserted against the Claims Administrator in connection with payments to Class Members under this settlement, the Garretson Resolution Group will be retained for a reasonable amount to assist the Claims Administrator in the efficient processing and resolution of such valid private or governmental lien claims, reimbursement claims, or encumbrances of any kind asserted against the amounts paid pursuant to this Settlement, subject to the Effective Date being reached and the approval of the Court.


**H.    Taxes**

4.34        Each Settlement Class Member on their own behalf further understands and agrees that each Settlement Class Member is responsible for any tax consequences to each such Class Member arising from, related to, or any way connected with the relief afforded to each such corresponding Settlement Class Member under this Agreement.


**5.    PRELIMINARY APPROVAL ORDER; SETTLEMENT HEARING; TREATMENT OF RELATED ACTIONS**

5.1        The parties agree to jointly move to (a) continue and stay all proceedings, including trial, in Jackson County, Missouri until final approval or disapproval; and (b) continue and stay the appeal in the United States Court of Appeals for the Fifth Circuit until final approval or disapproval.  In the event the Fifth Circuit requires dismissal of the appeal prior to final Court approval of this Settlement, the parties shall jointly seek such dismissal without prejudice in the Fifth Circuit.

5.2        Within 14 days of the execution of this Agreement, the Plaintiffs' Counsel will submit the Agreement together with its Exhibits to the Court and will apply for Preliminary

Approval of the Settlement and for entry of the Proposed Preliminary Approval Order and for the requisite orders to establish the Common Fund Escrow Account.

5.3       Within 30 days of the Court's entry of the Preliminary Approval Order, the Claims Administrator shall setup the settlement website and begin accepting claims, cause notice to be published in the forms agreed to by this Settlement, begin television advertising, and cause Notice Postcards to be mailed pursuant to the Notice Program agreed to by the parties and approved by the Court.

5.4       Class members shall have 45 days from the date that Notice Postcards are first mailed pursuant to Section 4.18.4 of this Agreement to file with the Court objections to the Settlement.  All objections must be set out specifically and accompanied by one of the forms of Proof of Payment described in Section 4.4.2.1 to show that the objector is a Settlement Class Member.  All objections must be mailed to Plaintiffs' Counsel and Defendants' Counsel.

5.5       Notice shall also give parties seeking to appear at the final fairness hearing 45 days to file final fairness hearing briefs.

5.6       The parties will request that the Court set a date certain that is 65 days after the expected day that any Notice Postcards are first mailed in accordance with the Preliminary Approval Order, or the next available date on the Court's calendar thereafter, for a hearing on whether the Settlement should be granted final approval, whether the Judgment should be entered, and whether the Fee Application referred to in Section 6.1 below should be granted. The date, time and place of this hearing will be included in the Long Form Notice and on the Settlement Website.

5.7       Class Members shall have nine (9) months from the date that the mailing of Notice Postcards commences pursuant to the Notice Program to file or submit Claim Forms pursuant to this Settlement.

5.8.      The proposed Preliminary Approval Order shall substantially conform to Exhibit A, and shall contain provisions conforming in all material respects to Sections 6-16 of Exhibit A, which are incorporated by reference herein with full force and effect as if fully set forth.

**6.**   **ATTORNEYS' FEES, EXPENSES AND INCENTIVE AWARDS**

6.1        Plaintiffs' Counsel has prosecuted this case for over 8 years on a contingency basis seeking $220 million damages for the Class.  They have not received any fees for their time or reimbursement for the expenses associated with this case.  Plaintiffs' Counsel will request a percentage of the Common Fund for its reasonable attorney's fees and expenses from the Court. Defendant has agreed not to oppose, or support any objection to, Plaintiffs' Counsel requesting reasonable attorney's fees in an amount not to exceed $30,500,000 and reasonable expenses in an amount not to exceed $3,000,000 with Court approved fees and expenses paid out of the Common Fund.  Any amount awarded in fees and expenses that are not in excess of the amounts set forth in this paragraph will not reduce the cash benefits paid pursuant to this Settlement. Merck understands that Plaintiffs' Counsel will present evidence to the Court regarding the value of the Common Fund and Merck agrees that it will not contest, or support any objection to, that amount.

6.2.        Defendant agrees not to oppose, or support any objection to, Plaintiffs' Counsel's request for reimbursement of expenses not to exceed Three Million Dollars ($3,000,000).

6.3.        Defendant agrees not to oppose, or support any objection to, Plaintiffs' Counsel's application for incentive awards to the Representative Plaintiffs not to exceed Fifteen Thousand Dollars ($15,000) each.

6.4.        Defendant agrees not to appeal and expressly waives any right to appeal the Final Approval of the Settlement Agreement or Award of Attorneys' Fees and Expenses, or to support in any way an appeal by any other person or entity of the same, so long as the Final Approval does not exceed the terms and amounts agreed to by the parties in this Agreement.

6.5.        Defendant agrees not to take any action in the MDL contrary to or inconsistent with this Agreement, including but not limited to supporting or agreeing that plaintiffs' counsel in the MDL are entitled to any portion of the reasonable attorneys' fees awarded by the Court.

6.6.        Within 40 (forty) days of Final Approval (if no appeals) (or 10 days from the mandate of any appeal or the date the appeal is otherwise resolved), the Claims Administrator

shall pay to Plaintiffs' Counsel attorneys' fees and expenses in an amount approved by the Court and all approved service awards, provided that the Court's orders approving such attorneys' fees and expenses and/or service awards are final and no longer subject to any appeal.

7.   **COMMUNICATIONS REGARDING SETTLEMENT**

7.1.          The Parties shall exchange drafts prior to issuing any press release announcing the Settlement Agreement and shall only issue such press releases upon approval by the opposing party—and such approval shall not be unreasonably withheld.  Any press release shall be limited to announcing the settlement and describing the terms thereof.  The Parties or their counsel may make additional disclosures to comply with applicable law or existing contract, or to obtain or defend approval of the Settlement or Application for Attorney's Fees and Expenses or to respond to any objection or appeal of Final Approval of the Settlement or Application for Attorney's Fees and Expenses.  Their parties or their counsel may post the agreed-upon press release on their respective websites.  Neither the Parties nor their counsel may make any other public statement regarding this Settlement Agreement or Application for Attorneys' Fees and Expenses, except (a) Plaintiffs' Counsel may, in response to press inquiries, direct the press to the press release, the Class Settlement Website, the motions and briefing related to the Motions for Preliminary and/or Final Approval of the Settlement Agreement and the Application for Attorneys' Fees and Expenses filed with the Court along with all orders related to such motions and briefing, and may otherwise communicate with Class Members when contacted by Class Members regarding the substance of the Settlement or Application for Attorneys' Fees and Expenses, and (b) Merck or its outside counsel may, in response to press, investor, or analyst inquiries, direct them to any approved press release, the Class Settlement Website, the motions and briefing related to the Preliminary and/or Final Approval of the Settlement Agreement and the Application for Attorneys' Fees and Expenses filed with the Court, along with all orders related to such motions and briefing.  The Application for Attorneys' Fees and Expenses shall not be filed earlier than

seven (7) days after the filing of the motion for preliminary approval of the Settlement Agreement.

7.2        In response to any press, investor, or analyst inquiries regarding the reserve amount established by Merck for the settlement, Merck may explain the basis for the reserve amount, including that it is based upon the minimum payout required pursuant to the Settlement Agreement and that any amount above the minimum payout will be dependent on the participation rate and notice and settlement administration costs.  Such statement shall also include that Merck fully acknowledges its obligations to pay from the Common Fund created by the settlement all valid and timely claims filed by participants and all notice and settlement administration costs. No Party or their counsel, Plaintiffs' Counsel, or Defendant's Counsel, or anyone else acting on behalf of any of them shall make any public statement disparaging any Party, Plaintiffs' Counsel, Defendant's Counsel, or this Settlement Agreement or application for attorneys' fees and expenses.

8.    **CONDITIONS FOR EFFECTIVE DATE; TERMINATION AND EFFECT THEREOF**

8.1.        The Effective Date of this Agreement is conditioned on the occurrence of all of the following events and is the first Date on which all of the following events have occurred:

    (a)    The Court has entered the Preliminary Approval Order;

    (b)    The Court has entered the Judgment; and

    (c)    The Judgment has become Final, as defined in Section 1.11.

8.2        If this Agreement is not approved by the Court as submitted or the Settlement is terminated or fails to become effective in accordance with the terms of this Agreement, the Settling Parties will be restored to their respective positions in the Litigation as of September _, 2012.  In such event, the terms and provisions of this Agreement will have no further force or effect with respect to the Settling Parties and will not be used in this Litigation or in any other proceeding for any purpose, and any Judgment or order entered by the Court in accordance with the terms of this Agreement will be treated as vacated, *nunc pro tunc.*

8.3     Merck shall have the right, but not the obligation, to withdraw from the settlement and terminate this Settlement Agreement if the number of Class Members who properly and timely exercise their right under this Agreement to exclude themselves from the Class or opt out exceeds 5,000 in accordance with Section 8.4 below.

8.4     In the event that Merck wishes to exercise its right to terminate the Settlement Agreement pursuant to Section 8.3, Merck must notify Class Counsel of its intention to withdraw from the Settlement Agreement and terminate this Agreement in writing, within seven (7) days after receipt of the Claim Administrator's report regarding "opt-out" Class Members.

8.5     The Claims Administrator shall provide a report regarding "opt-out" Class Members to all parties and the Court within seven (7) days of the "opt-out" deadline.  The report regarding "opt-out" Class Members shall contain the number and identity of those Class Members who have validly requested exclusion from the Class.

## 9.    MISCELLANEOUS PROVISIONS

9.1.     The parties acknowledge that it is their intent to consummate this Settlement, and they agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of this Agreement and to exercise their best efforts to accomplish the foregoing terms and conditions of this Agreement.

9.2.     The parties intend the Settlement to be a final and complete resolution of all disputes between them with respect to the Litigation.  The Settlement compromises claims that are contested and will not be deemed an admission by any Settling Party as to the merits of any claim, defense or the certifiability of any class.  The parties agree that the consideration provided to the Settlement Class and the other terms of the Settlement were negotiated in good faith by the parties, and reflect a settlement that was reached voluntarily after consultation with competent legal counsel.

9.3.         Neither this Agreement nor the Settlement, nor any act performed or document executed pursuant to or in furtherance of this Agreement or the Settlement is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any Released Claims, or of any fault, omission, wrongdoing or liability of Defendant in any civil, criminal, or administrative proceeding in any court, administrative agency or other tribunal.  The Released Parties may file this Agreement and/or the Judgment in any action that may be brought against them in order to support any defense or counterclaim, including without limitation those based on principles of *res judicata*, collateral estoppel, release, good-faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

9.4.         All agreements made and orders entered during the course of the Litigation relating to the confidentiality of information will survive this Agreement.

9.5.         All of the Exhibits to this Agreement are material and integral parts hereof and are fully incorporated herein by this reference.

9.6.         This Agreement may be amended or modified only by a written instrument signed by or on behalf of all parties or their respective successors-in-interest.

9.7.         This Agreement and the Exhibits attached hereto constitute the entire agreement among the parties, and no representations, warranties, or inducements have been made to any party concerning this Agreement or its Exhibits other than the representations, warranties, and covenants covered and memorialized herein.  Except as otherwise provided herein, the parties will bear their own respective costs.

9.8.         Plaintiffs' Counsel, on behalf of the Settlement Class, are expressly authorized by the Representative Plaintiffs to take all appropriate action required or permitted to be taken by the Settlement Class pursuant to this Agreement to effectuate its terms, and are expressly authorized by the Plaintiff Representatives to enter into any non-material modifications or amendments to this Agreement on behalf of the Settlement Class that Plaintiffs' Counsel deem appropriate, subject to agreement by the Defendant and the approval of the Court.

9.9.         Each counsel or other Person executing this Agreement or any of its Exhibits on behalf of any party hereby warrants that such Person has the full authority to do so.

9.10.       This Agreement may be executed in one or more counterparts.  All executed counterparts and each of them will be deemed to be one and the same instrument.  A complete set of original counterparts will be filed with the Court.

9.11.       This Agreement will be binding upon, and inure to the benefit of, the successors and assigns of the Settling Parties.

9.12.       The Court will retain jurisdiction with respect to implementation and enforcement of the terms of this Agreement, and all parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement.

9.13.       None of the Settling Parties, or their respective counsel, will be deemed the drafter of this Agreement or its Exhibits for purposes of construing the provisions thereof.  The language in all parts of this Agreement and its Exhibits will be interpreted according to its fair meaning, and will not be interpreted for or against any of the Settling Parties as the drafter thereof.

9.15.       This Agreement and the Exhibits hereto will be construed and enforced in accordance with, and governed by, the internal, substantive laws of the State of Missouri without giving effect to that State's choice-of-law principles.

IN WITNESS WHEREOF, the Parties have executed this Agreement and have caused this Agreement to be executed by their duly authorized attorneys.

**PLAINTIFFS' REPRESENTATIVES on behalf of themselves and the Class**

Dated: 10-11-12

_____
Mary Plubell

Dated: 10.11.12

_____
Ted Ivey

Dated: _10-15-12_

MERCK & CO., INC.

By: _Bruce Kuhlik_

Title: _EVP + General Counsel_

Reviewed by,

**PLAINTIFFS' COUNSEL**

**Stueve Siegel Hanson LLP**

Dated: _10/11/12_

By: _____
　　　　[Name and title]

**Gray, Ritter & Graham, P.C.**

Dated: _10/11/12_

By: _____
　　　　[Name and title]

Reviewed by,

**DEFENDANT'S COUNSEL**


**Williams & Connolly LLP**

Dated: _October 15, 2012_      By: _Douglas R. Marvin_
                                            [Name and title]


**Skadden, Arps, Slate, Meagher & Flom LLP**


Dated: _October 15, 2012_      By:_____
                                      John H. Beisner
                                      Counsel for Merck & Co., Inc.

## EXHIBIT A

### IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
### AT INDEPENDENCE

| | | |
|---|---|---|
| MARY PLUBELL, on behalf of herself and all others similarly situated, | ) ) ) | |
| TED IVEY, on behalf of himself and all others similarly situated, | ) ) ) | Case No. 04CV235817-01<br>Division 16 |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| MERCK & CO., INC., | ) ) | |
| Defendant. | ) | |

### ORDER GRANTING PRELIMINARY APPROVAL OF
### PROPOSED SETTLEMENT AND
### DIRECTING DISSEMINATION OF NOTICE TO CLASS

WHEREAS the Parties have applied for an order granting preliminary approval of a proposed settlement of the above-captioned action ("Litigation"), in accordance with a Settlement Agreement dated September _, 2012 ("Agreement"), which together with the Exhibits annexed thereto set forth the terms and conditions of the proposed settlement of the Litigation whereby the Litigation will be dismissed with prejudice ("Settlement");

WHEREAS, the Court has read and considered the Agreement and Exhibits annexed thereto, as well as the briefs and affidavits, and other evidence submitted to the Court by the Parties;

WHEREAS, all terms contained which are defined in the Agreement, including those at paragraphs 1.1 – 1.29, shall have the same meanings as used herein.

NOW, THEREFORE, IT IS HEREBY **ORDERED** THAT:

1.      The Court grants preliminary approval of the Agreement and the proposed Settlement set forth therein, subject to further consideration at the final Settlement Hearing described below.  The Court has conducted a preliminary examination of the record before it and has made a preliminary determination that there is probable cause to believe that the Settlement is fair, reasonable and in the best interests of the Class.

2.      The Court previously certified a Class (consisting of all Missouri residents who purchased Vioxx for personal or family use but excluding those who claimed personal injury as a result of taking Vioxx) for purposes of the Litigation in its Order dated June 6, 2008, which was affirmed on May 12, 2009 by the Court of Appeals.  *Plubell v. Merck & Co., Inc.*, 289 S.W.3d 707 (Mo. Ct. App. 2009) (transfer denied Sept. 1, 2009).  The Court previously approved as adequate the appointment of the Class Representatives and of Plaintiffs' Counsel as Class Counsel.  The Court also ordered that the Plaintiffs disseminate notice of the class action to all Class Members.  Class Members were afforded an opportunity to opt-out and no Class Member elected to exclude themselves from the Class.  Thereafter, the Parties embarked on lengthy and highly contested litigation that included substantially all fact and expert discovery, motions and resultant orders on summary judgment, motions and resultant orders on evidentiary issues, and motions and resultant orders on the admissibility of expert testimony.  On April 18, 2012, the Court denied and overruled a motion for decertification of the class brought by the defendant after the close of discovery.  The Court had summoned jurors to appear for *voir dire* on May 7, 2012 when on April 23, 2012, the United States District Court for the Eastern District of Louisiana issued an injunction against the Plaintiffs and Plaintiffs' counsel enjoining them from presenting certain evidence in this trial.  The Court continued the trial until October 23, 2012 to permit Plaintiffs to seek an appeal of the federal order to the United States Court of Appeals for the Fifth Circuit.  Plaintiffs sought and received an expedited briefing schedule for that appeal.

The Court understands briefing to the Fifth Circuit was completed on August 20, 2012 and oral argument was scheduled for September 5, 2012. The Court further understands that the Parties executed a material term sheet on September 1, 2012 and thereafter negotiated and executed the Agreement for which they now seek and for which the Court gives preliminary approval.

3.      The Class is defined as follows:

All Missouri residents who purchased Vioxx for personal or family use.

Excluded from the Class are: Defendant, including any parent, subsidiary, affiliate or controlled person of Defendant; Defendant's officers, directors, agents or employees; the judicial officers assigned to this Litigation; and members of their staffs and immediate families. Also excluded from the Class are those claiming they have suffered a personal injury as a result of taking Vioxx.

4.      The Court further finds, for purposes of this Settlement, pursuant to Rule 52.08 of the Missouri Rules of Civil Procedure and applicable case law with respect thereto, that the Settlement on its face appears to be fair and to have been the result of arm's length negotiations.

5.      In evaluating the fairness of the Settlement, the Court has considered (1) the existence of fraud or collusion behind the Settlement; (2) the complexity, expense, and likely duration of the Litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the range of possible recovery; and (5) the submissions of Counsel for the Class and for Defendant, and finds each of these factors favors granting preliminary approval of the Settlement and submitting the Settlement to the Class Members, subject to further consideration at the final Settlement Hearing described below.

6.      More specifically, the Litigation was highly contested by the Parties who were ably represented by qualified and steadfast counsel. Given the advanced stage of Litigation and

the numerous dispositive and evidentiary motions filed by the Parties, the Court is intimately familiar with the claims and defenses. This Settlement easily falls within the rubric for tentative approval as a fair and reasonable compromise, as it makes available from a Common Fund to Class Members a return of sums that may approximate the entire purchase price of Vioxx as compensation for their Release. The Court finds that these benefits are as good as Plaintiffs could have achieved at trial if the jury had awarded the full amount of compensatory damages.

7.      To act on behalf of the Settlement Class in connection with the proposed Settlement, the Court re-confirms its prior appointment of the Representative Plaintiffs, Mary Plubell and Ted Ivey, as representatives of the Class and Stueve Siegel Hanson LLP and Gray, Ritter & Graham, P.C. as Plaintiffs' Counsel and Class Counsel.

8.      If the Agreement is not approved by the Court or the Settlement is terminated or fails to become effective in accordance with the terms of the Agreement, this Order shall be vacated without further order of the Court and the Parties, the Class, and Litigation restored to their prior state without prejudice to either Party.

9.      A final hearing ("Settlement Hearing") shall be held before this Court on _____ __, 2012 at _____ a.m./p.m. in Division 16 of the Circuit Court of Jackson County, Missouri at Independence, to determine whether the proposed Settlement, resolving and dismissing the Litigation on the terms and conditions provided for in the Agreement, is fair, reasonable and adequate to the Settlement Class and should be approved by the Court; whether a Judgment should be entered herein; and to determine the amount of reasonable attorneys' fees and expenses that should be awarded. The Court may adjourn the final Settlement Hearing, in whole or in part, without further notice to Class Members.

10.     In disseminating Notice of the Class for purposes of Litigation, the Court found that publication in various newspapers, magazines and websites was adequate to satisfy the

requirements of Missouri law and Due Process.  The Parties propose to publish a Summary Notice in those same newspapers, magazines, and websites—and to create and maintain a Settlement website, PO box, and toll-free number—for purposes of this Settlement.  This Court concludes and finds that this Summary Notice satisfies the requirements of Missouri Rule 52.08(e) and constitutional Due Process.  For purposes of Settlement, the Parties have also proposed and the Defendant has agreed to pay for the costs of extraordinary notice by disseminating a Postcard Notice to all Missouri residents.  The Parties have further proposed and Defendant has agreed to pay $150,000 toward television advertising to further publicize the Settlement.  The Court approves and finds commendable these additional notice provisions.

11.    The Court also approves the form and content of the Notices and Claim Form, and finds that transmission of the Notice and Claim Form as proposed by the Parties is the best notice practicable under the circumstances, and constitutes due and sufficient notice to all Persons entitled thereto.  The Court appoints _____, as Settlement Administrator and directs the Parties and the Settlement Administrator to disseminate the Notice and Claim Form as set forth above.

12.    All Persons who fall within the Class definition and who do not timely and validly exclude themselves from the Class shall be bound by all determinations and judgments in the Litigation concerning the Settlement, whether favorable or unfavorable to the Class.

13.    Persons who wish to exclude themselves from the Class shall request exclusion within the time and in the manner set forth in the Notice, including mailing or delivering a written exclusion request, such that it is received on or before _____ __, 2012 to the Parties' counsel at the addresses set forth in the Notice.  Unless the Court orders otherwise, no request for exclusion shall be valid unless it is made within the time and in the manner set forth in the Notice.

14.     Any Class Member may enter an appearance in the Litigation, at the Class Member's own expense, individually or through counsel of the Class Member's choice. Any Class Member who does not enter an appearance will be represented by Plaintiffs' Counsel.

15.     Any Class Member may appear and show cause why the proposed Settlement should or should not be approved as fair, reasonable and adequate; or why a Judgment should or should not be entered thereon; or why reasonable attorneys' fees and expenses should or should not be entered thereon; or on any other objection or submission which that Class Member may wish to bring to the attention of the Court, provided, however, that no Class Member or any other Person shall be heard on or entitled to contest the Court's decision on any of the foregoing matters unless that Person has (a) no later than _____ __, 2012, filed written objections and any supporting papers and briefs with the Clerk of the Court, Circuit Court of Jackson County, Missouri at Independence, 308 W. Kansas, Independence, Missouri 64050; and (b) mailed or delivered copies of such objections, papers and briefs, such that they are received no later than _____ __, 2012, to the Parties' counsel at the addresses listed in the Notice. No Class Member will be heard or permitted to object to the Settlement unless he or she provides one of the forms of Proof of Payment set out in the Settlement Agreement showing that he or she purchased Vioxx and is a Class Member.

16.     Unless otherwise ordered by the Court, any Class Member who does not make his, her or its objection in the manner provided shall be deemed to have waived such objection and shall forever be foreclosed from making any objection to the fairness, reasonableness or adequacy of the proposed Settlement or to any award of reasonable attorneys' fees or expenses to Plaintiffs' Counsel and Class Counsel.

17.     The filing of an objection allows Class Counsel or counsel for Merck to notice such objecting person for and take his/her deposition consistent with the Missouri Rules of Civil Procedure at an agreed-upon location, and to seek any documentary evidence or other tangible things that are relevant to the objection. Failure by an objecting settlement class member to

make himself or herself available for a deposition or to comply with expedited discovery requests may result in the Court striking the Class Member's objection and otherwise denying that settlement class member the opportunity to make an objection or be further heard.

18.     All papers in support of the Settlement or any application for reasonable attorneys' fees or reimbursement of expenses shall be filed and served by _____ __, 2012. The Parties may respond to any objection to the Settlement or the application for reasonable attorneys' fees and reimbursement of expenses, provided that such response is filed and served no later than _____ __, 2012.

19.     Any application for reasonable attorneys' fees or reimbursement of expenses will be considered separately from the fairness, reasonableness and adequacy of the Settlement.  At the Settlement Hearing, including any adjournment of the fee portion thereof, the Court shall determine and award an amount for reasonable attorneys' fees and expenses as set forth in paragraphs 6.1 and 6.2 of the Agreement.

20.     All costs and expenses associated with giving notice to Class Members and administering the Settlement shall be borne as set forth in the Agreement.

21.     Neither the Agreement, nor any of its terms or provisions, nor any of the negotiations or proceedings in connection therewith, shall be construed as an admission or concession by Defendant of the truth of any of the allegations in the Litigation, or of any liability, fault or wrongdoing of any kind.

22.     The Court reserves the right to adjourn, in whole or in part, the date of the Settlement Hearing without further notice to the Class Members, and retains jurisdiction to consider all further applications arising out of or in connection with the proposed Settlement. The Court may approve the Settlement, with such modifications as may be agreed to by the Parties, if appropriate, without further notice to the Class.

23.     If the Settlement is not approved or consummated for any reason whatsoever, the Settlement and all proceedings had in connection therewith shall be without prejudice to the rights of the Parties status quo ante.

IT IS SO ORDERED.


DATED:_____                _____

                                                  JUDGE MARCO ROLDAN

**EXHIBIT A-1**

**IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
AT INDEPENDENCE**

| | | |
|---|---|---|
| MARY PLUBELL, on behalf of herself<br>and all others similarly situated, | ) | |
| | ) | |
| | ) | |
| TED IVEY, on behalf of himself<br>and all others similarly situated, | ) | Case No. 04CV235817-01<br>Division 16 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MERCK & CO., INC., | ) | |
| | ) | |
| Defendant. | ) | |

**NOTICE OF PROPOSED SETTLEMENT OF CLASS ACTION**

**If you are a Missouri resident who purchased Vioxx for personal or family use, you have been included in a proposed class action settlement.**

*A court authorized this notice.  This is not a solicitation from a lawyer.*

- You are receiving this notice because you may be a member of the class certified by the Court.

- You are entitled to a cash payment if you purchased Vioxx, were a Missouri resident at the time of purchase, did not receive compensation as part of the Vioxx Personal Injury Settlement, and you timely and validly act according to the requirements of this settlement.

- **Your legal rights are affected whether you act or don't act.  Read this notice carefully.**

Questions?  Visit _____ or call free _____.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS LAWSUIT | |
|---|---|
| **SUBMIT A CLAIM FORM** | **The only way to get payment.**<br><br>If you are a Class Member and you submit a valid and timely claim form, you are entitled to cash payment under this settlement in the amount of $180; or, by submitting certain authorized forms of documentation, you are entitled to $90 for every month you took Vioxx.<br><br>All Claim forms must be submitted under oath, subject to penalties of perjury, and are subject to audit. |
| **ASK TO BE EXCLUDED** | **Get out of this lawsuit.  Get no benefits from it.  Keep rights.**<br><br>If you ask to be excluded you will receive no money or benefits in this lawsuit, but you will maintain the right to sue Merck separately about the same legal claims in this lawsuit. |
| **OBJECT** | **Write to the Court about why you don't like the settlement.**<br><br>You must remain a member of the lawsuit (you cannot ask to be excluded) in order to object to the settlement.  If you file an objection, you may also be heard at the court hearing held to determine the fairness of the settlement. |
| **DO NOTHING** | **Get no payment.  Give up rights.**<br><br>By doing nothing, you will not receive any compensation made available through the class action settlement.  And, you will give up any rights to sue Merck separately about the same legal claims in this lawsuit. |

■   These rights and options—**and the deadlines to exercise them**—are explained in this notice.

■   The Court in charge of this case still has to decide whether to approve the settlement. Payments will be made if the Court approves the settlement and after appeals are resolved. Please be patient.

Questions?  Visit _____ or call free _____.

## Basic Information

| Why did I get this notice? |
| --- |

You have a right to know about a proposed settlement of a class action lawsuit, and about your options, before the Court decides whether to approve the settlement. If the Court approves the settlement and after objections and appeals are resolved, Merck will make the payments that the settlement allows.

This package explains the lawsuit, the settlement, your legal rights, what benefits are available, who is eligible for them, and how to get them. The Honorable Marco Roldan, a Judge in the Circuit Court of Jackson County, Missouri at Independence, is overseeing this lawsuit. The lawsuit is known as *Mary Plubell and Ted Ivey, et al. v. Merck & Co., Inc.*, Case No. 04CV235817-01.

## The Settlement Benefits – What You Get

| What do I get? |
| --- |

Depending upon what form of Claim you submit, you may not have to provide proof of payment other than a sworn declaration.

Settlement Class Members – Proof By Declaration Under Oath But No Documentary Proof of Payment Required – Option 1.

A one time cash payment of One Hundred Eighty Dollars ($180) to Settlement Class Members who submit a valid claim form with a declaration under oath (1) identifying the doctor, hospital, medical facility, or pharmacy that prescribed or dispensed Vioxx to you, (2) stating that, while you were a Missouri resident, you paid for all or part of the purchase price for the Vioxx prescription, and (3) stating that you agree to execute forms permitting access to your medical and pharmacy records and will provide other information or documentation if your claim is made subject to an audit. No further documentation is required unless requested by the Claims Administrator pursuant to an audit of the claim. Claims are subject to audit.

Settlement Class Members – Proof By Declaration Under Oath and Documentary Proof of Payment Required – Option 2.

A one time cash payment in an amount equal to Ninety Dollars ($90) for each month of Vioxx usage by a Settlement Class Member for personal or family use to Settlement Class Members who submit (1) a valid claim form under oath similar to the form described in Option 1, and (2) one of the authorized forms of proof of payment. Claims are subject to audit.

| What is Not Covered? |
| --- |

This settlement does not cover claims for personal injury or wrongful death from taking Vioxx.

Questions? Visit _____ or call free _____.

## What is this lawsuit about?

This lawsuit is about whether Merck's promotion and sale of Vioxx constitutes unlawful and unfair business practices under the Missouri Merchandising Practices Act.  Merck denies liability and denies Plaintiffs' allegations.

## What is a class action and who is involved?

In a class action lawsuit, one or more persons sue on behalf of other people who have similar claims.  The people together are a "Class" or "Class Members."            The Vioxx purchasers who sued in this case — and all of the Class Members like them — are called the Plaintiffs.  The company the Plaintiffs have sued (in this case, Merck) is called the Defendant.  One court resolves the issues for everyone at the same time.

## Why is this lawsuit a class action?

The Court decided that this lawsuit can be a class action and move towards trial because it meets the requirements of the Missouri Rules of Civil Procedure, which govern class actions in state courts.  Notice was previously provided to the Class.  As a Class member, you previously had the opportunity to exclude yourself from the Class and to not be bound by the outcome of this class action litigation, whether the result was a favorable or unfavorable verdict or the result was a settlement.  No class members excluded themselves from the Class.  Now the Court-appointed Plaintiff Class Representatives have reached a settlement for the Class that they believe is in the best interests of the Class.

### Who is in the Settlement Class

## Am I part of this Settlement Class?

Judge Roldan decided that the Settlement Class includes all Missouri residents who purchased Vioxx for personal or family use, except those claiming or who claimed personal injury as a result of taking Vioxx or who settled their claims about Vioxx previously.  See Full Class Definition in Settlement Agreement.

## I'm still not sure if I am included.

If you are still not sure whether you are included, you can get free help at _____ or by calling or writing the lawyers in this case at the phone number and address listed in question 21.

Questions?  Visit _____ or call free _____.

| How can I get payment? |
|---|

To be paid, you must complete and return a claim form.  A claim form is attached to this notice.  You can also get a Claim Form on the Internet at _____ Read the instructions carefully and fill out the form.  **If required**, you also must return proof of payment of your Vioxx.  The claim form and these documents must be postmarked, or otherwise submitted electronically on the Internet at _____, no later than _____.

Please read the claim form carefully.  You must fully complete the form in order to receive payment.

| What happens if I do not return the claim form or documentation by   the postmarked date? |
|---|

If you do not submit a valid claim form or the requested documents by _____, then you will not receive any payment. If you do nothing at all (you do not submit a claim form or documentation), you will not receive any payment and you will not be able to sue Merck over these claims.

| When do I get my payment? |
|---|

The Court will hold a hearing on _____, to decide whether to approve the settlement. If Judge Roldan approves the settlement after that, there may be appeals.  It's always uncertain whether these appeals can be resolved, and resolving them can take time, perhaps more than a year.  Everyone who sends in a claim form will be informed of the progress of the settlement. Please be patient.

| What am I giving up to get a payment and stay in the Settlement Class. |
|---|

Unless you exclude yourself, you are staying in the Settlement Class, and that means that you can't sue, continue to sue, or be part of any other lawsuit against Merck about the legal or factual issues in this case.  It also means that all of the Court's orders will apply to you and legally bind you.  These orders will include a dismissal and release of all claims against Merck arising out of or related in any way to your purchase of Vioxx, including but not limited to the claims asserted in the case.

Questions?  Visit _____ or call free _____.

## Excluding Yourself from this Lawsuit

If you don't want a payment from this settlement, but you want to keep the right to sue or continue to sue Merck, on your own, about the legal issues in this case, then you must take steps to get out. This is called excluding yourself — or is sometimes referred to as "opting out" of the Settlement Class. All Class Members will be bound by the terms of the Settlement Agreement, the Releases, and the Court's Final Judgment and Order, unless a Class Member properly and timely submits a request to be excluded from this lawsuit and settlement.

### How do I get out of this settlement?

If you choose to do nothing and participate in the lawsuit and this settlement, **you do not need to do anything, except submit a timely and valid claim form and any required proof of payment in order to receive your cash payment.**

If you choose to exclude yourself from this lawsuit and settlement and do not wish to participate in this lawsuit and settlement at all, **you must send an "Exclusion Request" in the form of a letter sent by mail, stating that you want to be excluded from** *Mary Plubell, et al. v. Merck & Co., Inc.,* **Case No. 04CV235817-01.** In the "Exclusion Request," you must include your legal name and address. You must also sign the letter. **You must mail your "Exclusion Request" postmarked before _____, to:**

You can't exclude yourself on the phone or by e-mail. If you ask to be excluded, you will not get any settlement payment, and you cannot object to the settlement. You will not be legally bound by anything that happens in this lawsuit.

### Why would I ask to be excluded?

If you already have your own lawsuit against Merck for the same claims and want to continue with it, you need to ask to be excluded from the Settlement Class. If you exclude yourself from the Settlement Class—which also means to remove yourself from the Settlement Class, and is sometimes called "opting out" of the Settlement Class—you won't get any money or benefits from this lawsuit and settlement between Merck and the Plaintiffs. However, you may then be able to sue or continue to sue Merck for the same claims. If you exclude yourself, you will not be legally bound by the Court's judgments in this class action.

If you start your own lawsuit against Merck after you exclude yourself, you'll have to hire and pay your own lawyer for that lawsuit, and you'll have to prove your claims. If you choose to exclude yourself so you can start your own lawsuit against Merck, you should talk to your own lawyer soon because your claims may be subject to a statute of limitations.

## If I don't exclude myself, can I sue Merck later?

No.  Unless you exclude yourself, you give up the right to sue Merck for the claims that this settlement resolves.  If you have a pending lawsuit, speak to your lawyer in that lawsuit immediately. You must exclude yourself from *this* Settlement Class to continue your own lawsuit.  Remember, the exclusion deadline is _____.

## If I exclude myself can I get money from this Settlement?

No.  If you exclude yourself, do not send in a claim form to ask for any money.  But, you may sue, continue to sue, or be part of a different lawsuit against Merck.

### The Lawyers Representing You

## Do I have a lawyer in this case?

The Court has decided that the law firms of Stueve Siegel Hanson LLP of Kansas City, Missouri and Gray, Ritter & Graham, P.C. of St. Louis are qualified to represent you and all Settlement Class Members.  Together, these lawyers are called Plaintiffs' Counsel.  They are experienced in handling similar cases against other pharmaceutical companies.   More information about these law firms, their practices, and their lawyers' experiences is available at www.stuevesiegel.com and www.grgpc.com.

## Should I get my own lawyer?

You do not need to hire your own lawyer because Plaintiffs' Counsel is working on your beha But, if you want your own lawyer, you may be represented by your own lawyer. For example, y can ask your own lawyer to appear on your behalf in Court if you want someone other th Plaintiffs' Counsel to speak for you.  However, you will be responsible for any fees which th lawyer may charge for representing you.

## How will the lawyers be paid?

Plaintiffs' Counsel has prosecuted this case seeking over $220 million in damages for the Class for over 8 years on a contingency basis. They have not received any fees or reimbursement for the expenses associated with this case. Plaintiffs' Counsel has secured this Settlement for the Class and will request a percentage of the Common Fund for its reasonable attorney's fees and expenses from the Court. Merck has agreed not to oppose, or to support any objection, to Plaintiffs' Counsel requesting attorney's fees in an amount not to exceed $30,500,000 and expenses in an amount not to exceed $3,000,000.

## Objecting to the Settlement

You can tell the Court that you don't agree with the settlement or some part of it.

### How do I tell the Court I don't like the settlement?

If you're a Settlement Class Member, you can object to the settlement if you don't like any part of it. You can give reasons why you think the Court should not approve it. The Court will consider your views. To object, you must send a letter saying that you object to:

In the "Objection," you must include your legal name and address. For your objection to be considered, you must also include the date and amount of your Vioxx purchases and must submit adequate documentation pursuant to the terms of the Settlement Agreement showing you purchased Vioxx. You must also sign the letter.

### What is the difference between objecting and excluding?

Objecting is simply telling the Court that you don't like something about the settlement. You can object only if you stay in the Settlement Class. Excluding yourself is telling the Court that you don't want to be part of the Settlement Class. If you exclude yourself, you have no basis to object because the case no longer affects you.

## The Court's Fairness Hearing

The Court will hold a hearing to decide whether to approve the settlement. You may attend and you may ask to speak, but you don't have to.

### When and where will the Court decide to approve the settlement?

The Court will hold a Fairness Hearing at _____a.m. on _____, in the Circuit Court of Jackson County, Missouri at Independence, 308 West Kansas, Independence, MO 64050 in Division 16. At this hearing the Court will consider whether the settlement is fair, reasonable, and adequate. If there are objections, the Court will consider them. Judge Roldan will listen to people who have asked to speak at the hearing. The Court may also decide how much to pay

Questions? Visit _____ or call free _____.

Plaintiffs' Counsel. The Court may also decide how much to pay the Representative Plaintiffs as incentive awards for prosecuting this case on behalf of the Class. The parties have agreed to request from the Court incentive awards for the Representative Plaintiffs in the amount of $15,000 each. After the hearing, the Court will decide whether to approve the settlement. We do not know how long these decisions will take.

## Do I have to come to the hearing?

No. Plaintiffs' Counsel will answer questions Judge Roldan may have. But, you are welcome to come at your own expense. If you send an objection, you don't have to come to Court to talk about it. As long as you mailed your written objection on time, the Court will consider it. You may also pay your own lawyer to attend if you wish.

## May I speak at the hearing?

You may ask the Court for permission to speak at the Fairness Hearing. To do so, you must send a letter saying that it is your "Notice of Intention to Appear" in *Mary Plubell, et al. v. Merck & Co., Inc.*, Case No. 04CV235817-01. Be sure to include your name and address, and your signature. Your Notice of Intention to Appear must be postmarked no later than _____, and be sent to the Clerk of the Court, Plaintiffs' Counsel, and Defense Counsel, at the following addresses:

You cannot speak at the hearing if you do not timely file your objections or if you otherwise exclude yourself from the Class or "opt out".

## If You Do Nothing

## What happens if I do nothing at all?

If you do nothing, you'll get no money from this settlement. But, unless you exclude yourself from the Class, you won't be able to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against Merck about the legal issues in this case, ever again.

Questions? Visit _____ or call free _____.

**Getting More Information**

| Are there more details available? |
|---|

Visit the website _____ where you will find Notice of the Class Action Settlement, the Settlement Agreement, the Court's <u>Order Certifying the Settlement Class</u>, the <u>Amended Petition</u> that the Plaintiffs submitted, and the Defendant's <u>Answer to the Petition</u>. Updates regarding the case will also be available at_____.

You may also speak to Plaintiffs' Counsel by calling or writing the following:

Patrick J. Stueve, Attorney
Todd E. Hilton, Attorney
Jack D. McInnes, Attorney

**Stueve Siegel Hanson LLP**
460 Nichols Road, Suite 200
Kansas City, MO 64112

———————————

stueve@stuevesiegel.com
hilton@stuevesiegel.com
mcinnes@stuevesiegel.com

Don M. Downing, Attorney
Thomas K. Neill, Attorney

**Gray, Ritter & Graham, P.C.**
701 Market Street, Suite 800
St. Louis, MO 63101

———————————

ddowning@grgpc.com
tneill@grgpc.com

**EXCEPT AS SPECIFICALLY SET FORTH IN THIS NOTICE,
PLEASE DO NOT CONTACT THE COURT.**

Questions?  Visit _____ or call free _____.

**EXHIBIT A-2**

## SUMMARY NOTICE OF PROPOSED SETTLEMENT OF CLASS ACTION

### CIRCUIT COURT OF JACKSON COUNTY, MISSOURI AT INDEPENDENCE

**If you are a Missouri resident who purchased Vioxx for personal or family use, you may be entitled to benefits under a proposed class action settlement.**
**Please read this notice.**

This Summary Notice is given pursuant to an Order of the Jackson County Circuit Court of the State of Missouri, at Independence. This Notice is to inform you that a settlement on behalf of the Class (defined above) in the lawsuit, *Mary Plubell and Ted Ivey, et al. v. Merck & Co., Inc.*, Case No. 04CV235817-01, alleging that Merck & Co., Inc.'s ("Defendant") promotion and sale of Vioxx constituted unlawful and unfair business practices under the Missouri Merchandising Practices Act. The Defendant denies all allegations of wrongdoing asserted in the litigation. If the settlement is approved, upon the submission of a valid and timely claim form, each class member will be entitled to a cash award. Depending on what form of Claim you submit, you may not have to provide proof of payment other than a sworn declaration.

First, a Class member may obtain a one-time payment of One Hundred Eighty Dollars ($180) if he or she signs a declaration under oath: (i) identifying the doctor, hospital, medical facility, or pharmacy who prescribed or dispensed Vioxx to him or her; (ii) averring that, while a resident of Missouri, he or she paid for all or part of the prescription price, and that he or she did not receive any compensation under the Vioxx Personal Injury Settlement Program; and (iii) stating that, if the claim is selected for audit, he or she shall execute a form authorizing access to pharmacy and medical records and provide such additional information that the Claims Administrator deems necessary to audit the Claim.

Second, a Class member with proof of payment of Vioxx may obtain Ninety Dollars ($90) for each month of Vioxx purchases supported by a declaration under oath with documentary proof of payment.

Defendant will pay certain court-approved reasonable legal fees and expenses. Plaintiffs' Counsel has secured full relief for the Class and will request a percentage of the Common Fund Amount for its reasonable attorney's fees and expenses from the Court. Plaintiffs' Counsel has prosecuted this case for over 8 years on a contingency basis seeking $220 million damages for the Class. They have not received any fees for their time or reimbursement for the expenses associated with this case. Merck has agreed not to oppose, or support an objection to, Plaintiffs' Counsel requesting to be paid attorneys' fees in an amount not to exceed $30,500,000 and expenses in an amount not to exceed $3,000,000. Any amount awarded in fees and expenses will not reduce the cash benefits paid to the Class who submit valid and timely claims.

A hearing will be held on _____, at _____ a.m./p.m., before the Honorable Marco Roldan, Judge of the Circuit Court, in Division 2 of the Circuit Court of Jackson County, Missouri at Independence, 308 W. Kansas, Independence, MO 64050 to determine whether the proposed settlement should be approved as fair, reasonable, and adequate.

If you are a class member, you should obtain the settlement Class Notice and Claim Form which describe in more detail the settlement and how to participate in the settlement. The Settlement Class Notice also describes how to object to the settlement and how to opt out of the Class and settlement. You may obtain these documents by one of the following methods:

- Download the forms at _____; or
- Mail a written request for the documents to the following address:

**[ENTER ADDRESS]**

If you purchased Vioxx for personal or family use, your valid claim form must be postmarked, or otherwise submitted electronically on the Internet at _____, no later than _____. If you wish to opt-out of the Class and settlement, send your request to be excluded from the Class and settlement to the above address so that it is postmarked by _____. If you do not request exclusion, any judgment will include all class members. If you timely file an objection, you may enter an appearance through counsel at your own expense and appear at the Settlement Hearing on _____ at _____ a.m./p.m.

**PLEASE DO NOT CONTACT THE COURT REGARDING THIS NOTICE.**

Dated: Independence, Missouri, _____.                    Marco Roldan, Circuit Judge

**EXHIBIT A-3**

**NOTICE OF PROPOSED SETTLEMENT OF CLASS ACTION REGARDING VIOXX**
**This mailing was approved by a Missouri Judge as part of the lawsuit**
***Plubell et al. v. Merck & Co.*, Case No. 04CV235817-01 (Jackson County, MO)**
Your legal rights may be affected by this settlement.

If you were a Missouri resident at the time you purchased the pain reliever VIOXX and you did not already receive compensation under the Vioxx Personal Injury Settlement Program, you are a member of a Class Action and may be eligible to receive a cash payment under a settlement preliminarily approved by the Circuit Court of Jackson County, Missouri, if the settlement receives final approval by the Court.   Depending on what form of Claim you submit, you may not have to provide proof of payment other than a sworn declaration.


By logging on to www.vioxxmoclass.com or calling 1-800-xxx-xxx you will be able to file a claim and learn more about the settlement and your legal rights to cash reimbursement for your Vioxx purchases.  If you purchased Vioxx and wish to submit a claim to receive a payment you must file your claim by XX/XX/XXXX.  All claims are subject to Claims Administrator review and audit.

**EXHIBIT A-4**

## <u>MISSOURI VIOXX SETTLEMENT</u>
## REQUIRED CLAIM FORM FOR RECEIVING CASH BENEFIT

### <u>Instructions</u>

- If you were a resident of the State of Missouri at the time you purchased Vioxx, you are eligible to submit a Claim.  Under Option 1 (proof by Declaration under Oath But No Documentary Proof of Payment Required), you can receive a one-time payment of $180.  Under Option 2 (proof by Declaration under Oath And Documentary Proof of Payment Required), you can receive a one-time payment of $90 per month for each month you were prescribed Vioxx while a resident of Missouri.  Claims are subject to audit by the Claims Administrator.

- Complete the Claimant Information, the Option 1 or Option 2 box, and sign the back of this form to make a claim.

- You must mail a completed form to [ADDRESS] postmarked no later than [DEADLINE].

### <u>Claimant Information</u>

Name:
Last                              First                            Middle              Suffix

Address:
Street                                    (Apt)         City, State          Zip
                                          Date of
                                          Birth         ____/_____/_____
                                                        MM-DD-YY

Contact
Information:
Daytime Phone                              Email

**If you are making a claim as a legal representative of another person complete the above information for the person who took VIOXX and provide your contact information separately**

---

**Option 1
(One-time payment of $180)
You may claim $180 by completing the following Declaration Under Oath
that you paid for Vioxx while a resident of Missouri:**

Name of person/entity who
prescribed/dispensed Vioxx to you: _____

Identify the name of a doctor, hospital, medical facility or pharmacy that
prescribed or dispensed VIOXX to you

By checking this box, you confirm that, while a resident of Missouri, you paid for
at least part of your Vioxx prescription and did not receive monetary                          ☐
compensation as part of the Vioxx Personal Injury Settlement

**You must check this box to be eligible for the $180 under Option 1.**

**Although no proof of payment other than this Declaration under Oath is required under Option 1, by checking the box above, you agree that if your claim is selected for an audit, you will (1) execute an authorization allowing the Claims Administrator, its agent, or auditor to collect medical, pharmacy, and other records that are sought to conduct an audit of your claim and its validity, and/or (2) provide additional information that the Claims Administrator, its agent, or auditor may require to conduct its audit of your claim and its validity.**

**The Claims Administrator is required to report to the Court and Parties any evidence of fraud, false statements or false documentation submitted in connection with the making of claims under this Settlement and such evidence may be provided to the appropriate law enforcement authorities.**

## IF YOU CHOOSE OPTION 1 ABOVE, PLEASE SKIP TO PAGE 4

**(YOU MUST SIGN AND DATE PAGE 4 TO MAKE A VALID CLAIM)**

## Option 2
### ($90 per month you took Vioxx)
With proof of payment and by completing the following Declaration Under Oath, you may claim $90 per month for each month you purchased Vioxx while a resident of Missouri

Number of months you took Vioxx while a resident of Missouri:

Check the form(s) of proof you are enclosing

**You must enclose <u>ONE</u> of the following forms of proof showing you were prescribed Vioxx for each of the claimed months**

☐ **Receipt** I am enclosing receipt(s), cancelled check(s), or credit card statement(s) showing I paid for Vioxx for the claimed number of months

☐ **Doctor's Letter** I am enclosing a letter from my doctor(s) saying that he or she prescribed me Vioxx for the claimed number of months and the approximate dates for which usage was prescribed

☐ **Insurer EOB** I am enclosing an explanation of benefits from my insurer, Medicare or Medicaid that shows Vioxx was prescribed for the claimed number of months

☐ **Pharmacy Record** I am enclosing records from my pharmacy, PBM (pharmacy benefit manager) or similar entity showing Vioxx was prescribed to me for the claimed number of months.

☐ **HIPPA Release** I am enclosing a **separate** signed declaration containing prescription dates, the name and address of the doctor(s) who prescribed Vioxx and/or the name of the pharmacy filling the prescription, and a HIPPA authorization for Vioxx prescriptions that permits the Claims Administrator to electronically verify my Vioxx prescriptions. **(The necessary declaration and release required under this option may be executed online at www.movioxx.com or by completing the enclosed form)**

**(YOU MUST <u>SIGN</u> AND <u>DATE</u> PAGE 4 TO MAKE A VALID CLAIM)**

## <u>REQUIRED SIGNATURE</u>

**I declare under penalty of perjury that the foregoing information is true and correct to the best of my knowledge.**

_____        _____
**Date**                                          **Signature**

You may file a claim online or check the status of your submitted claim at www.movioxx.com. More information about the settlement is available at the website. If you need assistance filing a claim or providing the necessary proof of payment to make a claim under Option 2, please contact the Claims Administrator at 1-888-xxx-xxx.

[**If you are making a claim for an amount in excess of $600, you will be sent, and must provide, a completed IRS W-9 Form prior to payment of your valid claim.]

**EXHIBIT A-5**

# ATTENTION: ALL MISSOURI RESIDENTS WHO PURCHASED THE PRESCRIPTION DRUG VIOXX



- You may be entitled to compensation under a recent settlement preliminarily approved by the Circuit Court of Jackson County, Missouri

- This class action settlement is for Missouri Vioxx purchasers who have <u>not</u> claimed personal injury from taking Vioxx

A court-ordered legal announcement

# Missouri Vioxx Settlement



If you were a Missouri resident when you purchased Vioxx, you may be entitled to a cash payment under either of two options.

## www.vioxxmoclass.com

## 1-800-xxx-xxx



Missouri Vioxx Settlement

Under Option 1, you may get a cash payment by submitting a sworn declaration and no further proof of payment.

www.vioxxmoclass.com

1-800-xxx-xxx



# Missouri Vioxx Settlement

Under Option 2, you may get a cash payment equal to the full price of Vioxx for the entire time period you were on the drug.

## www.vioxxmoclass.com
## 1-800-xxx-xxx



Missouri Vioxx Settlement

Under Option 2, you must submit a sworn declaration and proof of payment.

www.vioxxmoclass.com

1-800-xxx-xxx

# Missouri Vioxx Settlement

Visit **www.vioxxmoclass.com**

or call **1-800-xxx-xxxx**

to learn more about the settlement, your legal rights to a cash payment and to obtain a copy of a claim form.

All claims may be subject to audit requiring additional documentation.

Paid for by the Missouri Vioxx Settlement Fund by Order of the Circuit Court of Jackson County, Missouri