IN THE UNITED STATES DISTRICT COURT FOR

THE EASTERN DISTRICT OF LOUISIANA

AT NEW ORLEANS


IN RE:  VIOXX PRODUCTS          ) Case No. 05-1657 "L"
LIABILITY LITIGATION           ) July 24, 2013
                               ) Plaintiff's Motion for
_____) Preliminary Approval of
                                 Class Settlement



TRANSCRIPT OF PROCEEDINGS

BEFORE THE HONORABLE ELDON E. FALLON

UNITED STATES DISTRICT JUDGE


SUSAN A. ZIELIE, RPR, FCRR
Official Court Reporter
HB 406
500 Poydras Street
New Orleans, Louisiana 70130
susan_zielie@laed.uscourts.gov
504.589.7781

Proceedings Recorded by Computer-aided Stenography.

**EXHIBIT B**

```
 1   APPEARANCES:

 2

 3   For the PSC:          ELIZABETH J. CABRASER, ESQ.
                           Lieff Cabraser Heimann & Bernstein LLP
 4                         275 Battery Street, 29th Floor
                           San Francisco CA 94111-3339
 5

 6                         DAWN M. BARRIOS, ESQ.
                           Barrios Kingsdorf & Casteix LLP
 7                         One Shell Square
                           701 Poydras Street, Suite 3650
 8                         New Orleans LA 70139-3650
                           barrios@bkc-law.com
 9                         504.524.3300

10                         JAMES R. DUGAN, II, ESQ.
                           One Canal Place
11                         Suite 1000
                           365 Canal Street
12                         New Orleans LA 70130

13

14   For Kentucky:         RICHARD A. GETTY, ESQ.
                           The Getty Law Group
15                         1900 Lexington Financial Center
                           250 West Main Street
16                         Lexington KY 40507
                           rgetty@gettylawgroup.com
17                         859,259.1909

18

19   For Merck:            JOHN H. BEISNER, ESQ.
                           Skadden Arps Slate Meagher & Flom LLP
20                         1440 New York Avenue NW
                           Washington DC 20005
21                         john.beisner@skadden.com
                           202.371.7410

22

23   Appearing Telephonically:          RUSS HERMAN, ESQ.
                                         LEONARD DAVIS, ESQ.
24                                       ARNOLD LEVINE, ESQ.
                                         KENNETH JOHNSON, ESQ.
25                                       ORRAN BROWN, ESQ.
```

| | | |
|---|---|---|
| 1 | NEW ORLEANS, LOUISIANA; WEDNESDAY, JULY 24, 2013 | 08:55:1 |
| 2 | 9:02 A.M. | 08:55:3 |
| 3 | THE CLERK:  MDL No. 05-1657, in re:  VIOXX Products | 09:02:2 |
| 4 | Liability Litigation. | 09:02:3 |
| 5 | THE COURT:  Counsel make their appearances for the | 09:02:3 |
| 6 | record, please. | 09:02:3 |
| 7 | MS. CABRASER:  Good morning, Your Honor.  Elizabeth | 09:02:3 |
| 8 | Cabraser for the PSC. | 09:02:3 |
| 9 | MS. BARRIOS:  Dawn Barrios for the plaintiffs. | 09:02:4 |
| 10 | MR. GETTY:  Good morning, Your Honor.  Richard Getty on | 09:02:4 |
| 11 | behalf of Mr. Ratliff. | 09:02:4 |
| 12 | MR. DUGAN:  Good morning, Your Honor.  James Dugan on | 09:02:4 |
| 13 | behalf of plaintiffs. | 09:02:5 |
| 14 | THE COURT:  I understand we have some people on the | 09:02:5 |
| 15 | phone also on behalf of plaintiffs; is that right? | 09:02:5 |
| 16 | PERSON ON TELEPHONE:  That's correct, Your Honor. | 09:02:5 |
| 17 | THE COURT:  Who is on the phone? | 09:02:5 |
| 18 | MR. HERMAN:  Russ Herman for the PSC and Plaintiffs' | 09:03:0 |
| 19 | Steering Committee. | 09:03:0 |
| 20 | MR. DAVIS:  Also, Your Honor, Leonard Davis. | 09:03:1 |
| 21 | MR. JOHNSON:  Good morning, Your Honor.  This is | 09:03:1 |
| 22 | Kenneth Johnson from Johnson Perkins in Vermont. | 09:03:2 |
| 23 | MR. LEVINE:  Arnold Levine on behalf of Plaintiffs' | 09:03:2 |
| 24 | Purchase Claims Committee and plaintiffs. | 09:03:2 |
| 25 | MR. BROWN:  Good morning, Your Honor.  This is Orran | 09:03:3 |

```
 1  Brown, Junior, with BrownGreer, PLC.                      09:03:3

 2          THE COURT:  For the defendants.                   09:03:3

 3          MR. BEISNER:  Good morning, Your Honor, John Beisner on  09:03:3

 4  behalf of defendant Merck.                                09:03:4

 5          MR. MARVIN:  Doug Marvin.                         09:03:4

 6          THE COURT:  Anyone on the phone for the defendants?  09:03:4

 7              (No response.)                                09:03:4

 8          THE COURT:  This is a motion for a preliminary approval  09:03:4

 9  of a class settlement.  I'll let the movant first speak, who is  09:03:5

10  supporting this position.                                 09:04:0

11          MS. CABRASER:  Good morning, Your Honor.  Elizabeth  09:04:0

12  Cabraser for the PSC on the motion for preliminary approval of  09:04:1

13  the $23 million consumer class settlement.                09:04:1

14              Your Honor, I'm not going to spend the Court's  09:04:2

15  time this morning going over the details of the settlement.  I  09:04:2

16  know you're familiar with the terms of the settlement and with  09:04:2

17  the documents themselves, as we have reported in to you on a  09:04:3

18  regular basis as the settlement discussions and negotiations  09:04:3

19  have advanced.                                            09:04:4

20              We have now submitted to the Court the final  09:04:4

21  signed version of the settlement agreement reflecting the $23  09:04:4

22  million, the declaration of Dr. Shannon Wheatman regarding the  09:04:4

23  comprehensive multimedia notice plan that has been developed to  09:04:5

24  give notice to the proposed settlement class of the settlement  09:04:5

25  and to enable them to make claims, as well as a proposed order  09:05:0
```

1    of preliminary settlement approval, which includes the class

2    definition, the scope of the release, the proposed findings that

3    the settlement class meets for settlement purposes, the

4    requisite criteria under Rule 23(a) and Rule 23(b)(3) for

5    purposes of conditional class certification for settlement

6    purposes under Rule 23(e).

7              We would note that at this time that the

8    settlement reflects essentially 18 months of ongoing discussion

9    and negotiation, informed by bellwether trials of both personal

10   injury wrongful-death and purchase claims, the attorney general

11   trial, substantial discovery, intimate awareness on the part of

12   the negotiating counsel on both sides, the legal issues, the

13   factual issues in this case and the Folsom factual record.  It

14   has also been informed by Your Honor's findings and rulings

15   throughout the course of these proceedings as the MDL judge and

16   as trial judge in the bellwether cases, as well as the decisions

17   of all of the other state courts that have had occasion to look

18   at the VIOXX consumer claims.

19             We submit that this settlement merits preliminary

20   approval notice for the class because it resolves, after a

21   substantial period of time, on a very common-sense practical and

22   substantial basis, actual out-of-pocket claims.  For consumers

23   who actually spent money to buy VIOXX, this settlement offers

24   them monetary relief.  For consumers who spent money seeing

25   doctors after the withdrawal of VIOXX from the market because

1     they were concerned about alternative medications, they also          09:06:5

2     have the opportunity to claim up to $75 of their out-of-pocket        09:07:0

3     costs.                                                                09:07:0

4                And, very importantly, given the passage of time          09:07:0

5     since the 2004 withdrawal of VIOXX from the market, the              09:07:1

6     settlement, after very intensive arm's length and I would say        09:07:1

7     heated negotiation, provides four alternative means by which         09:07:2

8     those who don't have all their document records can make a claim     09:07:2

9     and receive a payment of up to $50 by either providing:  A           09:07:3

10    medical record; a doctor's letter; a prescription bottle; or         09:07:3

11    simply a sworn statement that they paid for VIOXX and that other     09:07:4

12    forms of proof are not available.                                    09:07:4

13               The purpose here is to enable people who spent            09:07:5

14    money and lost money to recover a substantial portion of that       09:07:5

15    money without awaiting the additional years it would take to go      09:07:5

16    through the process of seeking contested class certification in      09:08:0

17    this and other courts, prevailing and surviving the inevitable      09:08:0

18    appeals and then years hence coming back to this Court or other     09:08:1

19    courts to request essentially the same relief.  That is not in      09:08:1

20    the interests, we believe, of class members who have waited a        09:08:2

21    long time.                                                           09:08:2

22               This is the appropriate time to move forward with        09:08:2

23    the settlement.  This is a fair amount of settlement.  Great         09:08:2

24    pains and efforts have been taken to make sure that the notice       09:08:3

25    program is both cost-effective and comprehensive.  It will reach     09:08:3

```
1   81.1 of all the adults 58 years of age or over at least 2.5    09:08:4
2   times each.  That is the expert opinion of Dr. Shannon Wheatman,  09:08:4
3   the preeminent notice program expert in this country, one who is  09:08:4
4   well familiar to this Court.                                      09:08:5
5           The claim form has been designed to be both simple       09:08:5
6   to use, a reasonable screening for inappropriate claims, but not  09:09:0
7   interposing inappropriate or onerous obstacles to the class       09:09:1
8   members that spent money who should be making claims and          09:09:1
9   recovering their money.                                           09:09:2
10          This will involve at least 60 days after notice          09:09:2
11  starts for class members to object or opt-out.                    09:09:2
12          The claims period will run from nine months from          09:09:3
13  the notice commencement date.  Your Honor, if the Court grants     09:09:3
14  preliminary approval to the settlement today, we have been told    09:09:4
15  that the notice program can commence by August 23rd.  Which        09:09:4
16  means that the opt-out or objection deadline, postmark deadline,   09:09:5
17  would be November 9th.  This Court could set a final approval      09:10:0
18  hearing, a formal fairness hearing, later in November or in        09:10:0
19  December of this year.  And, under that chronology, claims could   09:10:0
20  be made up until April 23rd, 2014.                                09:10:1
21          As you know, Your Honor, the plaintiffs' liaison         09:10:1
22  counsel Russ Herman and co-lead counsel Chris Seeger and Andy      09:10:2
23  Birchfield, together with members of the PSC who are well          09:10:2
24  experienced and experts in consumer class actions, including      09:10:3
25  Arnold Levine, Leonard Davis and the members of the Purchase      09:10:3
```

1    Claims Committee that have been active in prosecuting these

2    claims and defending them against dismissal, those are counsel

3    who are on the phone today, Dawn Barrios, who has been

4    instrumental and indispensable in terms of the settlement

5    documentation, the notice program itself and keeping us all

6    together, which is her unique area of expertise.  And I wanted

7    to make sure that, because I just happen to be the one here

8    today arguing this, to thank those who were instrumental in

9    getting us to this point in the settlement.  Which is a point

10   which we believe where the claims of the consumer class members

11   can be resolved on a fair, adequate and reasonable basis

12   pursuant to the best practical notice and claim form that has

13   been designed to facilitate meritorious claims.

14             Your Honor, we're here to answer any questions you

15   may have.

16        THE COURT:  Just two areas of inquiry.  The scope of

17   your proposed settlement class, is it the nation as a whole?

18        MS. CABRASER:  It is the nation as a whole, excluding

19   those who purchased VIOXX in Missouri.  Because that class has

20   entered -- that certified class has entered into its own

21   settlement.  And notice has been sent.

22        THE COURT:  And Kentucky is in the process of dealing

23   with a state class action also; is that correct?

24        MS. CABRASER:  That is correct.

25             That class has not been certified, and Kentucky

```
 1    residents are included in this settlement class.               09:12:2

 2         THE COURT:  There have been some cases during the          09:12:2

 3    course of this litigation dealing with the purchaser consumer   09:12:3

 4    classes, and those courts that have dealt with it both in New   09:12:3

 5    Jersey and also in California have concluded, and I think this  09:12:4

 6    Court looked at the issue early on, too, and concluded that it  09:12:4

 7    wasn't a class certifiable when it was presented by the         09:12:5

 8    plaintiffs because of the difference in the claimants themselves 09:13:0

 9    and from the standpoint of a national class action from the     09:13:0

10    various differences in the state laws.  And so those            09:13:1

11    opportunities for class certification that were urged by the    09:13:1

12    plaintiffs failed.  How does that impact this class             09:13:2

13    certification request from a settlement class?  Do you see any  09:13:2

14    problem there?                                                  09:13:3

15         MS. CABRASER:  Your Honor, we see that as a point in       09:13:3

16    favor of certification of this 49-state settlement class, as    09:13:3

17    well as inclusion of residents of states in which class         09:13:4

18    certification by the state courts has been denied.              09:13:4

19              I would cite for Your Honor the recent Third          09:13:4

20    Circuit decision in Sullivan vs. DB Investments, 667 F.3d 273,  09:13:5

21    Third Circuit en banc decision from 2011, cert was denied.  That 09:13:5

22    is the Third Circuit's second look and affirming look at a      09:14:0

23    nationwide class settlement, which arguably included class      09:14:1

24    members who either did not have a claim under their own state's 09:14:1

25    laws or whose claims had been rejected.  But, as the Third      09:14:1
```

1  Circuit noted, for settlement purposes, what matters with

2  respect to predominance is that the defendants' conduct is

3  alleged to have been common with respect to the entire class.

4  That's the first stage of what Your Honor found in your *Walker*

5  decision.  And that there is a fair means of allocation.

6          And that the defendant has also agreed that it is

7  an appropriate resolution of claims which could otherwise be

8  continued.  And we note that we could continue these class

9  claims in many states.  We could arguably continue the quest.  I

10  think it would be an endless quest for a nationwide class under

11  the circumstances of the court decisions we already have.

12          And I think Merck recognizes that, too.  Which is

13  why you see a substantial amount of money being offered to

14  settle these claims on a comprehensive basis, and you don't see

15  the defendant attempting to pick and choose and to allocate

16  different amounts or different remedies to members of different

17  states.  That was the objection in *Sullivan* and the Third

18  Circuit overruled that.  Said everybody gets the same for the

19  purposes of a nationwide class settlement.

20          I'd also cite to Your Honor the *in re:  Warfarin*

21  *Sodium Antitrust* litigation decision of the Third Circuit, 391

22  F.3d 516 from 2004, which was again a comprehensive

23  multi-state -- nationwide, in fact -- antitrust settlement.  The

24  same arguments.  Some members of some states might or might not

25  have stronger claims than others.  The courts might do different

1    things on class certification.  And class certification might                09:16:0

2    not be sustainable on litigation basis.  And so the *Warfarin*              09:16:0

3    decision cited the Third Circuit's Girsh factors to say that, in            09:16:1

4    fact, the risk of prevailing on maintaining class certification            09:16:1

5    through trial is a factor to be taken into consideration by the            09:16:2

6    court, both in terms of preliminary and final approval, to                 09:16:2

7    determine whether a settlement is the better course for class              09:16:3

8    members than continued litigation.                                         09:16:3

9            So I think the difficulties with -- the                            09:16:3

10   demonstrable difficulties with sustaining nationwide class or             09:16:3

11   even a state-wide class through trial and appeal in this case             09:16:4

12   weigh heavily in favor of approval of the class settlement.               09:16:4

13           And, finally, under the Fifth Circuit's Reed                       09:16:5

14   factors, which were most recently recited I think by Judge                09:16:5

15   Higginbotham in *Union Asset Management vs. Dell,* 669 F.3d 632, a         09:17:0

16   Fifth Circuit decision from last year, the risk of prevailing on          09:17:0

17   the merits and frankly these days class certification for                 09:17:1

18   purposes of trial is inextricably intertwined with the merits.            09:17:1

19           It's all about the facts of the case.  We have                     09:17:2

20   very strong arguments under consumer law for class certification          09:17:2

21   of these claims on a nationwide or state-wide basis.  Your                 09:17:2

22   Honor's heard them and read them before.  And, absent                     09:17:3

23   settlement, you and many other courts perhaps would be hearing            09:17:3

24   them and reading them again.  But those legal arguments, which            09:17:3

25   may be compelling in a different fact scenario, must be made in           09:17:4

1    connection with the facts scenario that has developed in this    09:17:4

2    case.  And, while that fact scenario has proved favorable to    09:17:5

3    plaintiffs in wrongful-death and personal injury claims, it has    09:17:5

4    proven more challenging to date for the plaintiffs on their    09:17:5

5    consumer claims.    09:18:0

6             And that is why, looking at the prospects of class    09:18:0

7    certification on a state-wide or nationwide basis, looking at    09:18:0

8    the prospects of prevailing on the merits and generating a    09:18:0

9    greater net recovery, when all the years have passed and all the    09:18:1

10   hours have been spent, leads us to say that a comprehensive    09:18:1

11   class now for this settlement amount now is the better and more    09:18:2

12   responsible course in light of the interests of the class.    09:18:2

13        THE COURT:  One thing different in this particular case    09:18:2

14   that I've found with the purchasing consumer class is that    09:18:3

15   there's some states that focus on the conduct of the defendant    09:18:3

16   more than the resulting damages sustained by the plaintiff.    09:18:4

17   Missouri was one that simply focused on whether or not the    09:18:4

18   conduct was misleading and didn't focus on the specifics of the    09:18:5

19   ills claimed by the plaintiff.  And so there was more    09:19:0

20   opportunity for commonality and preponderance in those states.    09:19:0

21             I think Kentucky takes the position that they are    09:19:1

22   like Missouri, and therefore their opportunities to prevail may    09:19:1

23   be more like Missouri than in those states where the focus is on    09:19:2

24   both the conduct of the defendant as well as the resulting    09:19:3

25   damage or claims sustained or allegedly sustained by the    09:19:3

1    plaintiffs.                                                          09:19:4

2            How do you answer Kentucky when they say it may be          09:19:4

3    fair for Louisiana or Mississippi but it's not fair for the        09:19:4

4    Kentucky people?                                                    09:19:5

5            MS. CABRASER:  Your Honor, I would answer this way.         09:19:5

6    Prior to 2009, I would have said that California and New Jersey     09:19:5

7    were also much more like Missouri.  And the courts, including       09:20:0

8    the supreme court in New Jersey and the court of appeals in         09:20:0

9    California, said no.                                                09:20:1

10           I think the problem with trying to predict                  09:20:1

11   outcomes in consumer class actions is that the law on the books    09:20:1

12   in a particular state, both the statute books and the case law     09:20:2

13   books, may appear to be very strong and it may be implemented      09:20:2

14   and upheld in that strong way by a particular court, including a    09:20:3

15   particular appeals panel or a particular supreme court at a         09:20:3

16   given time that looks at that law, or it may not.  And that, as     09:20:4

17   I mentioned earlier, partly depends on the way courts view the     09:20:4

18   facts and how developed the factual record has become.             09:20:5

19           And it also depends, frankly, on the fact that             09:20:5

20   different courts view the application of the same legal and         09:20:5

21   statutory principles differently at different times under          09:21:0

22   different circumstances.                                            09:21:0

23           So we, from California, for example, like to think         09:21:0

24   that we have among the strongest consumer laws in the nation.       09:21:1

25   And, often, our courts back us up on that; but not always.  And     09:21:1

1    not in the case of VIOXX.                                        09:21:2

2              And so, when we look at a responsible course of        09:21:2

3    prosecuting and playing out the answer to this class            09:21:2

4    certification for trial purposes question and indeed the        09:21:3

5    question of whether the claimants each have a claim they can    09:21:3

6    state under the statutes in the remaining 47 states, it is not a 09:21:3

7    prospect that appears to us to be a course that's going to yield 09:21:4

8    a better outcome predictably for the claimants of any of these  09:21:4

9    states regardless of how strong their laws are, much less the   09:21:5

10   prospects of all class members.                                 09:21:5

11             So we're not choosing some benefit for a              09:21:5

12   nationwide class as an alternative or to the exclusion of        09:22:0

13   benefits for a particular state.  We're simply recognizing that, 09:22:0

14   at this point in time, nine years, in the very active litigation 09:22:1

15   of all the claims in this litigation, in both the federal and    09:22:1

16   state courts, we see the prospects for actual in-the-pocket      09:22:2

17   class recovery in a reasonable period of time to be much better  09:22:2

18   served by the settlement than by continued litigation in any of  09:22:3

19   the states, including the settlement class.                     09:22:3

20             THE COURT:  Thank you very much.                      09:22:4

21             I know we have Kentucky here.  Does anybody want       09:22:4

22   to speak again in favor of this position, Merck or anybody?     09:22:4

23             MR. BEISNER:  Nothing at this time, Your Honor.       09:22:5

24             THE COURT:  All right.  Let me hear from Kentucky.    09:22:5

25             MR. GETTY:  Thank you, Your Honor.  Richard Getty on  09:22:5

1    behalf of the Kentucky class, the James Ratliff litigation.                09:23:0

2            I think you in your comment earlier accurately                     09:23:0

3    summarized our position.  We think it would be inherently unfair           09:23:0

4    to include Kentucky, the Kentucky case.  There is not a final              09:23:1

5    order because the case is now before the supreme court of                  09:23:1

6    Kentucky on what's called a discretionary review.  The next               09:23:2

7    opinion day is August 29th.  Our court takes the month of July            09:23:2

8    off for writing and vacations, et cetera, et cetera.  So we               09:23:3

9    expect, we're hopeful that maybe we'll get an opinion at that             09:23:3

10   time or some time during the month of September.                          09:23:4

11           But I think you've put your finger on it.  Our                     09:23:4

12   statute is, to use the language of our court of appeals in the            09:23:4

13   court of appeals' opinion, it says:  A Missouri court analyzing           09:23:5

14   a consumer protection statute nearly identical to our own -- and          09:23:5

15   that's the *Plubell* case -- found that the statute required that         09:24:0

16   the plaintiff's economic loss resulted from Merck's unlawful              09:24:0

17   practices but did not require the plaintiff's purchase of VIOXX           09:24:0

18   to be caused by the unlawful practice.                                    09:24:1

19           Neither statute requires proof of reliance.  And,                  09:24:1

20   in fact, our supreme court, I think in an earlier case which we           09:24:2

21   cited to you involving a college called XL College, did direct           09:24:2

22   the certification of a class using generalized proof of fraud.           09:24:3

23           What's also before our supreme court is the issue                  09:24:3

24   of not just the consumer protection statute which does not               09:24:4

25   require reliance but also the issue of an in common law fraud            09:24:4

1    claim.  In Kentucky, where you have a consistent course of

2    conduct by someone like Merck in using deceptive practices or

3    not disclosing the true facts about the dangers of a product,

4    where if that's the case, can you have generalized proof of

5    fraud.  In the case involving XL College, our court, our supreme

6    court said, yes, you can.  And that issue is also before our

7    supreme court.

8                    So our case is drastically different from a case

9    in Louisiana or a case in New Jersey.

10                   The other thing I'd point out is the claimant in

11   the other two cases -- our case is one of two cases that has

12   been certified as a class action in the United States.  *Plubell*

13   is the other.  Our case was certified in 2010.  We've been

14   litigating this case for nine years.

15                   And I compliment Mr. Beisner and Skadden Arps,

16   they have thrown everything but Rommel's last panzer division on

17   us from the trial court on up to the current stages.  But we've

18   weathered the storm.  And the court of appeals' opinion reversed

19   the class certification.

20                   But, if you read it with respect to the consumer

21   claim, our statutory claim being nearly identical to Missouri's,

22   I believe it will be certified.

23                   The other reason that I think we should be

24   excluded -- and I've asked the Court to do that, and I would ask

25   you today to at least provisionally -- at the very least to

1   exclude us if you don't feel confident enough to do that today.     09:26:3

2   I think we've proven to you that we really ought to be excluded,     09:26:3

3   and we ought to be excluded now.     09:26:3

4           But, in any event, our case is vastly different     09:26:4

5   because of the addition of common law fraud counts and the fact     09:26:4

6   that Kentucky in an earlier case has recognized generalized     09:26:5

7   proof may be sufficient where you have a consistent course of     09:26:5

8   conduct involving a product or a service.  There, it was the     09:27:0

9   misrepresentations concerning accreditation of college courses.     09:27:0

10  It was a junior college called XL College in I think Corbin,     09:27:1

11  Kentucky.  But think that's a very important distinction here.     09:27:1

12          THE COURT:  Wouldn't you have to do some individual     09:27:1

13  proof of damages, though?  Your class?     09:27:2

14          MS. CABRASER:  Not really.  Not really.  Because the     09:27:2

15  trial court addressed that.  And I think the way we would deal     09:27:2

16  with it would be with a special master.     09:27:3

17          Because what we're really -- the only difference     09:27:3

18  -- and that was a question that was put to both Mr. Beisner and     09:27:3

19  to me in front of the supreme court.     09:27:4

20          And, just as a footnote, I didn't realize it the     09:27:4

21  day we argued it, but it's on television.  And a number of -- I     09:27:4

22  did a couple of mock panels with former supreme court of     09:27:5

23  Kentucky justices and two other prominent lawyers -- I actually     09:28:0

24  did two, which helped tremendously.  But they were all watching     09:28:0

25  it.  It was on TV, close-circuit.  But nobody taped it.  And I     09:28:0

1    didn't know that it was even on TV.  I wish it would have been          09:28:1

2    taped.  Because, you know, one of the points that was drawn out         09:28:1

3    in the oral argument was, really, the only difference between          09:28:2

4    the fraud claim and the consumer claim is punitive damages.            09:28:2

5    That's it.  But, in terms of the proof of damages, if you prove        09:28:2

6    generalized proof of fraud or deception in effect for that block       09:28:3

7    or period of time, you have a claim.  You've established claim.        09:28:3

8    The only difference is do you get punitives because of a fraud         09:28:4

9    claim, or do you simply have economic damages, which is the            09:28:4

10   refund.                                                                09:28:5

11            And, you know, here, we're looking at, if you take            09:28:5

12   Mr. Ratliff around $300 is what he expended, three to 350, we          09:28:5

13   have over 200,000 consumers in the state of Kentucky.  We've           09:29:0

14   established that through some databanks that we've had access          09:29:0

15   to.  And, at $300, that's a lot of money, Your Honor.                  09:29:0

16            I think it's not in the interest of the citizens             09:29:1

17   of the Commonwealth of Kentucky to be included here.  I think          09:29:1

18   we're nearly identical to the Missouri case.                           09:29:2

19            The only quirk of fate that befell us is that we             09:29:2

20   went to the court of appeals, I guess that was the third time.         09:29:2

21   We had two mandamus proceedings, two attempts to -- appeals from       09:29:3

22   the court of appeals denial mandamus.  And on the third -- once        09:29:3

23   we changed our rules to allow an immediate appeal for class            09:29:4

24   certification like the federal rules -- we didn't do that              09:29:4

25   before -- and, once they did that, Merck went up to the court of       09:29:5

1    appeals, and the court of appeals reversed the class                    09:29:5

2    certification.                                                          09:29:5

3              But you've read the opinion.  I think they did               09:29:5

4    everything but say that the consumer claim should be certified.         09:30:0

5    I believe that's what our supreme court's going to do, and I            09:30:0

6    believe we have at least a 50/50 chance that they're going to           09:30:1

7    say that the fraud claim should be certified and the generalized        09:30:1

8    proof of fraud is usable in Kentucky.                                   09:30:1

9              It's really an important case from the standpoint            09:30:2

10   of Kentucky practice, both from the standpoint of the statute          09:30:2

11   and the standpoint of the issue of did they mean what they said        09:30:2

12   in the earlier case involving the XL College.                          09:30:3

13             So I would ask you that you exclude us from this.            09:30:3

14   If I'm not correct, then I suppose there could be some effort to        09:30:4

15   bring us back in.                                                      09:30:5

16       THE COURT:  If you're wrong, then you're going to move            09:30:5

17   to get back in to this class?                                          09:30:5

18             The thing that's before me now, though, is just             09:30:5

19   the preliminary approval.  I've had situations where preliminary       09:31:0

20   approval is given and the notice goes out.  And at that point,         09:31:1

21   really, when it's final approval, is where the objectors are           09:31:1

22   able to really focus on it.                                            09:31:2

23             My concern at this stage is that there may be               09:31:3

24   other states also in your position.  I don't make any decision        09:31:3

25   on preliminary approval that I'm bound by in final approval.          09:31:3

1          The concern that I have is that, without

2  preliminary approval, you can't even get a notice out.  And

3  that's the -- I'm not quite sure that's a good situation with

4  class actions, because it costs so much to put out a notice,

5  that it's one of those things that -- but it's necessary before

6  you can even find out who has objections and what's the nature

7  of their objections.

8          MR. GETTY:  I agree with everything you say.

9          THE COURT:  And that's a real problem.

10          MR. GETTY:  I understand; I agree.

11          THE COURT:  My concern is, I wouldn't put a preliminary

12  notice out and then within a month do a final hearing.  I don't

13  think that's fair.

14              If we put it far enough out to give your court an

15  opportunity to focus on this and also for you to think about it

16  or whatever, and for the Court to see how many other states if,

17  there are any, that have similar positions.

18          MR. GETTY:  We cited you the cases.  We actually in our

19  response I think pointed out those that do not require reliance.

20  There are a few others.

21          THE COURT:  Yes.  I haven't heard anything from those.

22  But I understand your position.

23              Let me give Merck an opportunity.

24          MR. GETTY:  If I could, Your Honor?

25          THE COURT:  Sure.

```
 1              MR. GETTY:  My only concern about the notice is to the      09:33:0
 2    confusion to residents of my state.  If a notice goes out from       09:33:1
 3    Kentucky from this, and the supreme court says my class is           09:33:1
 4    certifiable, again, you know, I don't know how to deal with that     09:33:1
 5    confusion.                                                           09:33:2
 6              I would also add that, you gave us a pretty strict         09:33:2
 7    admonition that we should deal with each other, Mr. Beisner and      09:33:2
 8    me and Doug Marvin directly.  And we did.  We met in Washington.     09:33:3
 9    And we had further discussions.                                      09:33:3
10              But, to this moment, there has not been any offer         09:33:4
11    of settlement to my Kentucky class forthcoming from Merck.  I        09:33:4
12    proceeded and will continue to proceed in good faith to try and     09:33:5
13    get a resolution so that the Kentucky case is dealt with.  But      09:33:5
14    it's been very difficult if not impossible up to this point.        09:34:0
15    Which is another reason I think we have no choice but to ask        09:34:0
16    this Court ultimately to exclude us.                                 09:34:0
17              THE COURT:  Okay.  All right.  Thank you.                  09:34:1
18              MR. GETTY:  Thank you, Your Honor.  I appreciate your     09:34:1
19    indulgence.                                                          09:34:1
20              THE COURT:  Thanks very much for coming over.             09:34:1
21              MR. GETTY:  Good to see you.                               09:34:1
22              THE COURT:  Good to see you.                               09:34:2
23              MR. BEISNER:  Your Honor, just a few points to make on    09:34:2
24    this.                                                                09:34:2
25              One of the things I think the Court has                    09:34:2
```

1    recognized, but just to be clear about this, I think that what                09:34:2

2    is before the Court is a yes or no proposition on what has been                09:34:3

3    proposed here.  We have an agreement to do a 49-state, including               09:34:3

4    DC, settlement, and what's before the Court is to preliminarily                09:34:4

5    approve that or not.                                                           09:34:4

6            I don't think it's subject -- our agreement                            09:34:4

7    doesn't provide for carving anything out or changing anything.                 09:34:5

8    So, to be clear, it's a yes/no proposition on this.                            09:34:5

9            And, Your Honor, the point you raised earlier                          09:35:0

10   about the emphasis of the state consumer protection statutes on                09:35:0

11   conduct versus conduct in effect, I did want to make the point,                09:35:1

12   and I think you were recognizing the point earlier, that a key                 09:35:1

13   consideration there is at the end of the day you have to look at               09:35:2

14   effect.  I think Mr. Getty is exactly correct that some states                 09:35:2

15   say there has to be reliance.  Others, like Kentucky, have a                   09:35:2

16   causation requirement, which is something different from                       09:35:3

17   reliance.  But, at the end of the day, from a due process                      09:35:3

18   standpoint, there has to be a connection between the conduct and              09:35:4

19   the injury that is compensated.  The statutes don't say the                    09:35:4

20   consumer gets X dollars if there's been a violation.  They talk                09:35:5

21   in terms of getting relief for injury caused as a result of the               09:35:5

22   wrongdoing that is alleged in the case.  And so, as you pointed                09:36:0

23   out, at the end of the day, there's got to be a damages analysis              09:36:0

24   that links up to the alleged wrongdoing.  The claimant doesn't                 09:36:1

25   come into the court and say:  You sold me VIOXX so I get a new                 09:36:1

```
 1   car.  I mean, it's there's got to be, from a due process          09:36:2
 2   standpoint, a causal relationship.                                09:36:2
 3              And I think a key element of this, as Ms. Cabraser      09:36:2
 4   pointed out earlier, especially with the passage of time, the     09:36:3
 5   difficulty if you litigate these in the end in Kentucky or        09:36:3
 6   wherever you are of class members being able muster that          09:36:4
 7   evidence.  It's an issue for the named plaintiff in Kentucky who  09:36:4
 8   says:  Well, I'm owed some money because I went to a doctor       09:36:5
 9   after VIOXX was withdrawn.  But, in deposition, he couldn't       09:36:5
10   remember what doctor, he couldn't remember where he had the      09:36:5
11   examination; he remembers what he paid for it, he contends, but  09:37:0
12   he's got no documentation to demonstrate it.                     09:37:0
13              It's going to be extremely difficult for anyone in    09:37:1
14   any state to litigate these to a satisfactory conclusion from    09:37:1
15   the claimant's perspective.  And that's why, regardless of what  09:37:2
16   jurisdiction we're talking about, as Ms. Cabraser pointed out, a 09:37:2
17   settlement here is important.                                    09:37:3
18              One other thing I did want to note, Your Honor,       09:37:3
19   that hasn't been mentioned here this morning, is that one of the 09:37:3
20   major issues here is that the class that has been proposed in    09:37:4
21   the Ratliff case in Kentucky is substantially narrower than what 09:37:4
22   is being proposed in terms of coverage of Kentucky residents     09:37:5
23   here.  The class that has been proposed for settlement here      09:37:5
24   includes anyone who has bought VIOXX.                            09:38:0
25              The class that was proposed in Kentucky that the      09:38:1
```

1    trial court certified, which was then reversed by the appellant       09:38:1

2    court but this is the proposed class, is Kentucky residents who        09:38:1

3    purchased and took VIOXX during a specified period.  But the          09:38:2

4    definition goes on to say, quote:  And who, upon recommendation       09:38:2

5    and advice of the FDA and Merck, have or will contact physicians      09:38:3

6    to seek advice regarding their VIOXX use.  It's in the               09:38:3

7    conjunctive, it's an And.  And so the class there is                 09:38:4

8    dramatically limited versus the all-consumer class which we're       09:38:4

9    talking about here.  Because, to be a member of that class,          09:38:5

10   you're going to have to demonstrate that there was some contact      09:39:0

11   with the physician.  It does say:  Will contact physicians.          09:39:0

12   But, the product's been off the market for so long now, if you       09:39:0

13   haven't done that, I'm not sure that that part of it is              09:39:1

14   meaningful.                                                           09:39:1

15          Mr. Getty talks about in terms of 200 thousand                09:39:1

16   persons in Kentucky.  Well, I believe the statistic that he is       09:39:1

17   citing there -- and I'm not concurring in that number -- but I       09:39:2

18   think the basis for it is number of users.  But that's not the       09:39:2

19   class in Kentucky.  And so, if I am someone who used VIOXX early     09:39:2

20   in the period, had no problem with it, chances are I didn't go       09:39:3

21   see a physician when the withdraw occurred, there would be no        09:39:3

22   reason for me to do that.  But we don't know how many people may     09:39:4

23   or may not have seen a physician.  But, to be in the class in        09:39:4

24   Kentucky under the definition I just read, you have to have gone     09:39:4

25   -- the element of that is the:  Contact physician to seek advice     09:39:5

1    regarding the VIOXX use.  That is a prerequisite for being in                   09:39:5

2    the class.                                                                       09:40:0

3              And so what is being proposed there is what could                      09:40:0

4    be a substantially narrower group of Kentuckians, whereas the                    09:40:0

5    settlement that is proposed here covers all Kentuckians who used                 09:40:1

6    the product or who bought the product.                                           09:40:1

7         THE COURT:  How do you deal with his concern about                          09:40:2

8    confusion?  He says, when you send your notice out, and then he                  09:40:2

9    sends his notice out subsequently when his court approves them,                  09:40:2

10   as he says it will, how do you deal with the confusion?                          09:40:3

11        MR. BEISNER:  Well, Your Honor, one of the difficulties                     09:40:4

12   I think that we have here is -- the position that seems to be                    09:40:4

13   taken, the objection on paper, is that somehow a state class, if                 09:40:5

14   one is certified in Kentucky, would trump what is going on in                    09:40:5

15   the MDL proceeding.                                                              09:41:0

16             That's simply not the case.  We've cited the case                      09:41:0

17   law indicating that there are many cases in which MDL courts                     09:41:0

18   facing that situation in the interest of achieving finality in                  09:41:0

19   the controversy and of course with the fairness of it has                        09:41:1

20   concluded that it should proceed in that circumstance.                           09:41:1

21             But this is not a situation where there is any                         09:41:2

22   proprietary interest in a separate class in Kentucky.  A lawsuit                 09:41:2

23   is pending before this Court, proposing a class, including                       09:41:3

24   Kentucky residents.  Which, as I just pointed out, is much                       09:41:3

25   broader than what has been proposed in the Kentucky court.  And                  09:41:3

1    this Court is free to proceed.                                              09:41:4

2            And I think the proposal is being made here and                     09:41:4

3    Court will have before it a judgment to make later about whether            09:41:5

4    a notice going out in Kentucky would in fact interfere with the             09:41:5

5    proposal that is before this Court and will have to make a                  09:41:5

6    judgment about that at that point.                                          09:42:0

7            But it seems to me, Your Honor, that in looking at                   09:42:0

8    it right now, what's proposed here is a class settlement.  As               09:42:0

9    Ms. Cabraser stated earlier, that if you've got your documents              09:42:1

10   and you can present them to the claims administrator, under the             09:42:2

11   terms of that settlement, you get your out-of-pocket                        09:42:2

12   expenditures back, which is what you'd get if you went to trial             09:42:3

13   on it, if you want to present the documentation, as you have to             09:42:3

14   before the Court.                                                           09:42:3

15           And I think, to worry about this what-if                            09:42:4

16   confusion, just isn't a fair consideration here.  This Court's              09:42:4

17   got the case, it's got to deal with it.  And, if you're going to            09:42:4

18   wait for anything else that may happen, it seems to me that you             09:42:5

19   never will get this matter resolved.                                        09:42:5

20       MR. GETTY:  Your Honor, could I just briefly follow up?                  09:42:5

21   I'll assume that Mr. Beisner was confused, because I know we                 09:43:0

22   both have an obligation of candor to the Court.                             09:43:0

23           It's been awhile, it's been three years since we                    09:43:0

24   certified the class in the Pike Circuit Court, and we actually              09:43:1

25   went through a formal notice to try to get a notice approved.               09:43:1

```
 1    And I think John should remember that -- to say that our class      09:43:2

 2    is different or narrower is not true.  Because, as the class was    09:43:2

 3    certified, you could submit a claim for what you paid for VIOXX;    09:43:2

 4    and then, in addition, you could also submit a claim if you went    09:43:3

 5    to a doctor and could establish proof that you incurred            09:43:3

 6    additional costs.  In effect, a Class A, Class B or subclass.       09:43:4

 7             So hopefully he'll go back and look at the notice          09:43:5

 8    -- or maybe I'm confused.  I don't think I am.  But it's not as     09:43:5

 9    represented, I think, accurately here today.                       09:43:5

10             The other thing that really concerns me, other            09:44:0

11    than the confusion is -- and I was sitting here thinking of it,    09:44:0

12    so it's just come to me.  And, you will have to forgive me, it      09:44:0

13    hit me just this moment.                                           09:44:1

14             I would like the Court to consider entering an            09:44:1

15    order precluding Mr. Beisner's client Merck from taking any        09:44:1

16    action in front of the supreme court.  We were whipsawed           09:44:2

17    tremendously in the trial court, because the trial court entered   09:44:2

18    findings certifying class, they filed a mandamus proceeding and    09:44:3

19    they argued at the court of appeals that what the trial court      09:44:3

20    had done was not adequate.                                         09:44:3

21             So then, we went back to the circuit court, and           09:44:4

22    the circuit court supplemented and amended its findings and        09:44:4

23    certified the class with further findings.                         09:44:5

24             And then they went to the court of appeals and            09:44:5

25    said that he had done something improper.  I mean, basically       09:44:5
```

1    attacked our trial judge.  At least twice.                           09:44:5

2                And I want an order or I'd like you to have some          09:45:0

3    consideration to an order precluding them, until the supreme         09:45:0

4    court rules, from going to the supreme court and saying to my        09:45:1

5    Kentucky supreme court:  You can't do anything; dismiss this,        09:45:1

6    abate it, just get rid of it, because now we have a class            09:45:1

7    certified down in Louisiana.                                         09:45:2

8                And, with all due respect to the Mr. Marvin and          09:45:2

9    Mr. Beisner, I fully believe they would consider doing it, based     09:45:2

10   on what's happened in the past.  And I would like that to be not     09:45:3

11   a problem for me and the people in Kentucky as we move down the      09:45:3

12   road.  So I would like you to give some consideration to that,       09:45:3

13   Your Honor.                                                          09:45:4

14        THE COURT:  You know, I know you know that federal              09:45:4

15   courts have a lot of power, but I don't know whether I have the      09:45:4

16   power to tell a state court not to entertain a motion.               09:45:4

17        MR. GETTY:  I'm not asking you to say anything to the           09:45:5

18   state court.  I'm asking you to say something to Mr. Beisner and     09:45:5

19   Mr. Marvin.                                                          09:46:0

20                We can deal with it later if that problem comes         09:46:0

21   up, I suppose.                                                       09:46:0

22        THE COURT:  Elizabeth, you had an issue.  And then I'll         09:46:0

23   let John Beisner speak.                                              09:46:0

24        MS. CABRASER:  I know we're getting very fine-grained           09:46:1

25   here, but it's an important point that was raised about the          09:46:1

1    potential for confusion of the class members.                    09:46:1

2              I think it's important to remember here that --        09:46:2

3    and I'm sure both sides will correct me if I'm wrong on this --  09:46:2

4    that a class notice was not disseminated to members of a         09:46:3

5    punitive class in Kentucky.  So, from the standpoint of the      09:46:3

6    Kentucky VIOXX members themselves, they are not in possession of 09:46:3

7    a class notice.  They're not aware of either side's version of   09:46:4

8    the status and progress of the Kentucky proceedings, and the     09:46:4

9    notice that they receive under the authority of this Court in    09:46:5

10   connection with this proposed settlement will be the first       09:46:5

11   notice that is given to them regarding the litigation.           09:47:0

12             We've been very careful to include everything that     09:47:0

13   Rule 23 says we should include in the notice so that people have 09:47:1

14   a reliable source of information.  It's up to Your Honor to      09:47:1

15   govern what goes on the notice website and in the notice itself. 09:47:2

16   And so you will be in charge of the information that all class   09:47:2

17   members have with respect to the settlement terms and benefits   09:47:2

18   and their rights and responsibilities and the procedure for      09:47:3

19   opting out.  Anybody in Kentucky, anyone anywhere else has the   09:47:3

20   right and the individual opportunity to opt out.  Under the      09:47:4

21   *Hanlon* decision which we've cited to you, that is an individual 09:47:4

22   decision.  It doesn't interfere with any other certified class   09:47:5

23   that's operative today.                                          09:47:5

24             And, above and beyond that, we can't make              09:48:0

25   predictions.  But we know we're not interfering with the         09:48:0

1   Missouri notice process, which is nearly complete.  We've

2   checked in with class counsel on that.  And, to our knowledge,

3   there is no existing class that has received notice anywhere

4   else in the country other than this one.

5               This will be very good news to anyone in New

6   Jersey or California, who have at one time may have heard the

7   possibility of class certification in those states but was later

8   denied.  So, it will be good news, but we don't think it will be

9   confusing news to anyone.

10              THE COURT:  Okay.  Yes.

11              MR. BEISNER:  Your Honor, just a very brief point

12  regarding the observation Mr. Getty made.

13              I'd refer the Court to Exhibit A on the Ratliff

14  submission to the Court, page 17.  And that's the order that the

15  trial court in the Ratliff case issued certifying the class.

16              My recollection is that Mr. Getty drafted this

17  order, gave it to the court and it was signed.

18              And my point was not about the relief that was

19  available to the class, which I believe is what Mr. Getty was

20  referencing.  But, rather, to the definition of who is in the

21  class.  And that order defines the class as, quote:  Being

22  comprised of all Kentucky residents who have purchased and taken

23  VIOXX during the period of May 1999 through September 30, 2004,

24  and who upon recommendation and advice of the FDA and Merck have

25  or will contact physicians to seek advice regarding their VIOXX

1    use.  That is how the trial court from the pen of plaintiff's              09:49:4

2    counsel in that case defined the class.                                    09:49:5

3            That is narrower because of the requirement that,                  09:49:5

4    to be in the class, you had to contact a physician.  And that              09:49:5

5    makes that class significantly narrower than what we're talking            09:50:0

6    about as the proposed settlement class, at least with respect to           09:50:0

7    Kentucky residents.                                                        09:50:1

8            THE COURT:  Okay.                                                   09:50:1

9            MR. GETTY:  Your Honor, one question.                              09:50:1

10           THE COURT:  Sure.                                                   09:50:1

11           MR. GETTY:  I beg your indulgence.  I apologize.                    09:50:1

12           Would it be possible to put something on the                       09:50:1

13   website or something in the notice alerting anyone in Kentucky             09:50:2

14   that there is an action pending?  I mean, I would have no                  09:50:2

15   problem with that.  That way, they would know that this is not             09:50:3

16   their sole means of relief.                                                09:50:3

17           My concern is the confusion that, if they see                      09:50:3

18   this, this is their only opportunity to ever get anything                  09:50:3

19   because of what went on and what they purchased.  I would just             09:50:4

20   like them to be able to know that the Ratliff case is pending,             09:50:4

21   it's before the supreme court, and there may be a class,                   09:50:5

22   separate class certified in Kentucky.                                      09:50:5

23           THE COURT:  Let's assume they don't do anything.  Let's            09:50:5

24   assume, first of all, that they opt-out of this class, if it's             09:51:0

25   certified.  That doesn't preclude them from joining your class.            09:51:0

1    If they do nothing.                                                    09:51:1

2              I haven't really certified the class yet.  And              09:51:2

3    then, you notice them after and they do nothing for yours, that       09:51:2

4    may be significant when or if we get to the point where I have        09:51:3

5    to look at this finally.                                              09:51:3

6              Seems to me, you're in better shape by having a             09:51:3

7    preliminary with a long tail than you are with a denial of           09:51:4

8    preliminary and scuttling the whole thing.                            09:51:5

9              MR. GETTY:  Right.  And I have no interest in doing          09:51:5

10   that.  That's why we've asked simply exclude us at this point.        09:52:0

11             THE COURT:  The problem with excluding at least at this     09:52:0

12   point is that it aborts any notice.  Kills probably, at this          09:52:0

13   stage, any settlement for 48 of the states and maybe 49               09:52:2

14   including Kentucky if things don't go the way you hope they do.       09:52:3

15             So I'm sensitive to your concern.  I don't know             09:52:3

16   whether confusion is a problem.  But I would take a look and         09:52:4

17   give you an opportunity to speak on the notice and maybe even        09:52:5

18   meet with the parties to discuss it, and I would be sensitive to     09:52:5

19   looking at the notice more closely with confusion in mind.  I        09:53:0

20   haven't looked at it from that standpoint.  But I don't,            09:53:0

21   offhand, see confusion.                                              09:53:1

22             Anybody on the phone wishes to speak?                       09:53:1

23             MR. HERMAN:  Yes, Your Honor.  This is Russ Herman.        09:53:1

24   May it please the Court, I just need to make two comments for        09:53:1

25   the record, Your Honor.                                              09:53:2

```
 1              It was an Indiana case pending.  Counsel in that      09:53:2

 2   case has reviewed the documents and indicated that he has no     09:53:2

 3   objection.                                                       09:53:3

 4              There's also an Illinois case pending.  I've been     09:53:3

 5   in communication with the attorney.  That case not only has a    09:53:3

 6   consumer element, it also has -- in the nature of a stockholder  09:53:4

 7   suit.  And I'm in communication on that.                         09:53:5

 8              The other thing I want to indicate for the record     09:54:0

 9   is that, the negotiation was very difficult and hard-fought.     09:54:0

10   And, in every session, the difficulties became apparent.         09:54:1

11              Primarily, the comment I want to make is that, it     09:54:2

12   is a capped fund that, in connection with negotiating with the   09:54:2

13   dollar amount, the fact is that the capped fund be presented.    09:54:3

14   And we were aware of and looked at the participation rates in    09:54:4

15   other settlements which have a consumer aspect.  And, at this    09:54:5

16   point, we feel that, based upon difficulties, based upon the     09:55:0

17   participation rates, that the figure we reached would be fair,   09:55:1

18   adequate and reasonable to compensate those consumers that are   09:55:1

19   critical in reaching agreement at this preliminary stage.        09:55:3

20              Both Doug Marvin and John Beisner representing        09:55:4

21   Merck are very firm and professional; and, at each stage, the    09:55:5

22   consumer committees were advised, as well as the executive       09:55:5

23   committee of Chris Seeger, Andy Birchfield, Elizabeth Cabraser   09:56:0

24   and Dawn Barrios.  Jim Dugan is also on the committee.           09:56:0

25   Elizabeth and Dawn worked on this matter religiously.            09:56:2
```

1    And I feel certain that, at least from the PSC
2    side, that the quality of representation that went into this
3    settlement from our side was more than sufficient to protect the
4    rights of the consumers nationally with whom we're charged to
5    represent.
6        THE COURT:  Okay.  I understand the position of all the
7    parties.
8        I'd just remind you that, while the Federal Rules
9    of Civil Procedure, Rule 23, we're talking about that governs
10   class actions doesn't expressly provide for any preliminary
11   fairness evaluation the courts do suggest and the Manual For
12   Complex Litigation, 21.632, 2004, provisions of that draft of
13   manual suggest -- it's a two-step process -- and the evaluation
14   that the Court makes at the preliminary hearing is simpler.  The
15   Court is not expected to and it's probably not even wise to look
16   at the specifics of the objection if there be any objection.
17       This observation made by Kentucky is not really an
18   objection to the concept.  They're in the process of developing
19   and hoping to develop a certified class action in the state of
20   Kentucky, and if that comes to fruition, they feel that that
21   opportunity is better for Kentucky citizens than the overall
22   nationwide settlement.  But, they're not certain about it, so
23   they don't want to jettison the concept.  And they don't have
24   any problem with it being applied to other states other than
25   Kentucky.  And they would hope that it would also apply to

1   Kentucky if there is something that interferes with their                    09:58:5

2   resulting hope of class certification.  So it's really not an                09:59:0

3   objection but it's a suggested objection unless things do not go             09:59:0

4   well.                                                                        09:59:1

5              I take that seriously.  I think that counsel makes                09:59:1

6   significant observations that could focus us, this Court, on the             09:59:1

7   fairness or adequacy of the Kentucky recovery if there is a                  09:59:2

8   certification state-wide.  But I don't think I need to focus on              09:59:3

9   that on this stage.  I would like to see if there are other                  09:59:4

10  states that feel similar to Kentucky or join Kentucky's view, or             09:59:5

11  whether there are a substantial number of objections for any                 09:59:5

12  reason that have to be focused on and looked at.  But I won't                 10:00:0

13  know that until the class certification notice goes out.                     10:00:0

14             I would like to see the notice when it's                          10:00:1

15  submitted, and give Kentucky at least an opportunity to look at              10:00:1

16  it.  But I will preliminarily certify this to start the ball                 10:00:2

17  rolling and see where we are.                                                10:00:2

18             I don't think it's going to be confusing to                       10:00:3

19  Kentucky residents because it doesn't call upon them to do                   10:00:3

20  anything on either side.  And, if they get more than one notice,             10:00:3

21  they get more than one notice.  But they don't have to do                    10:00:4

22  anything, other than object.  And, if they do object to the                  10:00:4

23  class certification nationwide and then a certification is                   10:00:5

24  granted in Kentucky, they have two bites at the apple.  They can             10:01:0

25  not object to that certification or object to it if they wish.               10:01:0

```
 1   If they don't object to that and they objected to the national,      10:01:1
 2   perhaps they're in that one.                                          10:01:1
 3              I don't know at this point because I don't have            10:01:2
 4   the two in front of me.  But I do have to move on with this           10:01:2
 5   litigation.  I've been having it now since February of 2005.          10:01:2
 6   It's older than some of my grand kids.  And every litigation has      10:01:3
 7   a beginning, generally a muddle, and an end.  And we're through       10:01:4
 8   the muddle, hopefully we're getting to the end.  So I'll              10:01:4
 9   conditionally certify it.                                             10:01:5
10              But I need to tell the parties that this isn't any         10:01:5
11   indication that I'm not concerned about Kentucky or will not          10:01:5
12   take them seriously.  When and if we get to the point of final        10:02:0
13   certification, I'll look at that, as well as any other                10:02:1
14   objections, with the scrutiny that I put on that stage of the         10:02:1
15   case.  But I will take this opportunity to announce that I will       10:02:1
16   conditionally certify it and view it again with greater               10:02:2
17   specificity at a later date.                                          10:02:3
18              Thank you very much, all of you all.  It's been            10:02:3
19   very helpful to me.                                                   10:02:4
20              Court stands in recess.                                    10:02:4
21       MS. CABRASER:  Your Honor, just a housekeeping.  I                10:02:4
22   apologize.                                                            10:02:4
23              The long and short form notices are submitted to           10:02:4
24   the Court as attachments to the declaration of Dr. Shannon            10:02:5
25   Wheatman which came in earlier this week, as well as the              10:02:5
```

1    settlement agreement, as well as proposed order.  We'd like to          10:02:5

2    be able to fill in dates for the proposed order and resubmit            10:03:0

3    that to you.  They need to go in the notice as well.                    10:03:0

4           THE COURT:  Why don't you do that.  And meet with               10:03:0

5    Richard, Elizabeth, get his input.  See if there is such a              10:03:1

6    notice that can be fashioned that satisfies his concern about           10:03:1

7    confusion.  If not, then give me the two notices and I'll pick          10:03:2

8    the one.                                                                10:03:2

9           MS. CABRASER:  We'll do that, Your Honor.  We just want         10:03:2

10   to make sure it's objective and nonpartisan.  It can't be a            10:03:3

11   brief or an opt-in piece, and we want to make sure we follow           10:03:3

12   those rules.                                                           10:03:3

13          THE COURT:  All right.  Thank you very much.                    10:03:3

14              Court stands in recess for five minutes.  I've got         10:03:4

15   another matter.                                                        10:03:4

16              (10:03 a.m., proceedings concluded.)                       10:03:4

17

18

19                          CERTIFICATE

20

21

22        I, Susan A. Zielie, Official Court Reporter, do hereby
     certify that the foregoing transcript is correct.

23

24

25                          /S/ SUSAN A. ZIELIE, FCRR
                            _____
                                 Susan A. Zielie, FCRR

## $

**$23** [2] - 4:13, 4:21
**$300** [2] - 18:12, 18:15
**$50** [1] - 6:9
**$75** [1] - 6:2

## /

**/S** [1] - 37:24

## 0

**05-1657** [2] - 1:6, 3:3

## 1

**1000** [1] - 2:11
**10:03** [1] - 37:16
**1440** [1] - 2:20
**17** [1] - 30:14
**18** [1] - 5:8
**1900** [1] - 2:15
**1999** [1] - 30:23

## 2

**2.5** [1] - 7:1
**200** [1] - 24:15
**200,000** [1] - 18:13
**20005** [1] - 2:20
**2004** [4] - 6:5, 10:22, 30:23, 34:12
**2005** [1] - 36:5
**2009** [1] - 13:6
**2010** [1] - 16:13
**2011** [1] - 9:21
**2013** [2] - 1:6, 3:1
**2014** [1] - 7:20
**202.371.7410** [1] - 2:21
**21.632** [1] - 34:12
**23** [2] - 29:13, 34:9
**23(a** [1] - 5:4
**23(b)(3** [1] - 5:4
**23(e)** [1] - 5:6
**23rd** [2] - 7:15, 7:20
**24** [2] - 1:6, 3:1
**250** [1] - 2:15
**273** [1] - 9:20
**275** [1] - 2:4
**29th** [2] - 2:4, 15:7

## 3

**30** [1] - 30:23
**350** [1] - 18:12
**365** [1] - 2:11
**3650** [1] - 2:7
**391** [1] - 10:21

## 4

**40507** [1] - 2:16
**406** [1] - 1:21
**47** [1] - 14:6
**48** [1] - 32:13
**49** [1] - 32:13
**49-state** [2] - 9:16, 22:3

## 5

**50/50** [1] - 19:6
**500** [1] - 1:21
**504.524.3300** [1] - 2:9
**504.589.7781** [1] - 1:23
**516** [1] - 10:22
**58** [1] - 7:1

## 6

**60** [1] - 7:10
**632** [1] - 11:15
**667** [1] - 9:20
**669** [1] - 11:15

## 7

**701** [1] - 2:7
**70130** [2] - 1:22, 2:12
**70139-3650** [1] - 2:8

## 8

**81.1** [1] - 7:1
**859,259.1909** [1] - 2:17

## 9

**94111-3339** [1] - 2:4
**9:02** [1] - 3:2
**9th** [1] - 7:17

## A

**a.m** [1] - 37:16
**A.M** [1] - 3:2
**abate** [1] - 28:6
**able** [4] - 19:22, 23:6, 31:20, 37:2
**aborts** [1] - 32:12
**absent** [1] - 11:22
**access** [1] - 18:14
**accreditation** [1] - 17:9
**accurately** [2] - 15:2, 27:9
**achieving** [1] - 25:18

**action** [6] - 8:23, 9:9, 16:12, 27:16, 31:14, 34:19
**actions** [4] - 7:24, 13:11, 20:4, 34:10
**active** [2] - 8:1, 14:14
**actual** [2] - 5:22, 14:16
**add** [1] - 21:6
**addition** [2] - 17:5, 27:4
**additional** [2] - 6:15, 27:6
**addressed** [1] - 17:15
**adequacy** [1] - 35:7
**adequate** [3] - 8:11, 27:20, 33:19
**administrator** [1] - 26:10
**admonition** [1] - 21:7
**adults** [1] - 7:1
**advanced** [1] - 4:19
**advice** [5] - 24:5, 24:6, 24:25, 30:24, 30:25
**advised** [1] - 33:22
**affirming** [1] - 9:22
**age** [1] - 7:1
**agree** [2] - 20:8, 20:10
**agreed** [1] - 10:6
**agreement** [5] - 4:21, 22:3, 22:6, 33:19, 37:1
**aided** [1] - 1:24
**alerting** [1] - 31:13
**all-consumer** [1] - 24:8
**alleged** [3] - 10:3, 22:22, 22:24
**allegedly** [1] - 12:25
**allocate** [1] - 10:15
**allocation** [1] - 10:5
**allow** [1] - 18:23
**alternative** [3] - 6:1, 6:7, 14:12
**amended** [1] - 27:22
**amount** [4] - 6:23, 10:13, 12:11, 33:13
**amounts** [1] - 10:16
**analysis** [1] - 22:23
**analyzing** [1] - 15:13
**Andy** [2] - 7:22, 33:23
**announce** [1] - 36:15
**answer** [4] - 8:14, 13:2, 13:5, 14:3
**Antitrust** [1] - 18:14
**antitrust** [1] - 10:23
**apologize** [3] - 31:11, 36:22
**apparent** [1] - 33:10
**appeal** [2] - 11:11,

18:23
**appeals** [11] - 6:18, 13:8, 13:15, 15:12, 18:20, 18:21, 18:22, 19:1, 27:19, 27:24
**appeals'** [2] - 15:13, 16:18
**appear** [1] - 13:13
**APPEARANCES** [1] - 2:1
**appearances** [1] - 3:5
**appearing** [1] - 2:23
**appellant** [1] - 24:1
**apple** [1] - 35:24
**application** [1] - 13:20
**applied** [1] - 34:24
**apply** [1] - 34:25
**appreciate** [1] - 21:18
**appropriate** [2] - 6:22, 10:7
**approval** [14] - 4:8, 4:12, 5:1, 5:20, 7:14, 7:17, 11:6, 11:12, 19:19, 19:20, 19:21, 19:25, 20:2
**Approval** [1] - 1:7
**approve** [1] - 22:5
**approved** [1] - 26:25
**approves** [1] - 25:9
**April** [1] - 7:20
**area** [1] - 8:6
**areas** [1] - 8:16
**arguably** [2] - 9:23, 10:9
**argued** [2] - 17:21, 27:19
**arguing** [1] - 8:8
**argument** [1] - 18:3
**arguments** [3] - 10:24, 11:20, 11:24
**arm's** [1] - 6:6
**ARNOLD** [1] - 2:24
**Arnold** [2] - 3:23, 7:25
**Arps** [2] - 2:19, 16:15
**aspect** [1] - 33:15
**Asset** [1] - 11:15
**assume** [3] - 26:21, 31:23, 31:24
**AT** [1] - 1:4
**attachments** [1] - 36:24
**attacked** [1] - 28:1
**attempting** [1] - 10:15
**attempts** [1] - 18:21
**attorney** [2] - 5:10, 33:5
**August** [2] - 7:15, 15:7
**authority** [1] - 29:9
**available** [2] - 6:12,

30:19
**Avenue** [1] - 2:20
**awaiting** [1] - 6:15
**aware** [2] - 29:7, 33:14
**awareness** [1] - 5:11
**awhile** [1] - 26:23

## B

**ball** [1] - 35:16
**banc** [1] - 9:21
**BARRIOS** [2] - 2:6, 3:9
**Barrios** [4] - 2:6, 3:9, 8:3, 33:24
**barrios@bkc** [1] - 2:8
**barrios@bkc-law.com** [1] - 2:8
**based** [3] - 28:9, 33:16
**basis** [8] - 4:18, 5:22, 8:11, 10:14, 11:2, 11:21, 12:7, 24:18
**Battery** [1] - 2:4
**became** [1] - 33:10
**become** [1] - 13:18
**befell** [1] - 18:19
**BEFORE** [1] - 1:11
**beg** [1] - 31:11
**beginning** [1] - 36:7
**behalf** [6] - 3:11, 3:13, 3:15, 3:23, 4:4, 15:1
**BEISNER** [6] - 2:19, 4:3, 14:23, 21:23, 25:11, 30:11
**Beisner** [9] - 4:3, 16:15, 17:18, 21:7, 26:21, 28:9, 28:18, 28:23, 33:20
**Beisner's** [1] - 27:15
**bellwether** [2] - 5:9, 5:16
**benefit** [1] - 14:11
**benefits** [2] - 14:13, 29:17
**Bernstein** [1] - 2:3
**best** [1] - 8:12
**better** [6] - 11:7, 12:11, 14:8, 14:17, 32:6, 34:21
**between** [2] - 18:3, 22:18
**beyond** [1] - 29:24
**Birchfield** [2] - 7:23, 33:23
**bites** [1] - 35:24
**block** [1] - 18:6
**books** [3] - 13:11, 13:12, 13:13
**bottle** [1] - 6:10
**bought** [2] - 23:24,

25:6
**bound** [1] - 19:25
**brief** [2] - 30:11, 37:11
**briefly** [1] - 26:20
**bring** [1] - 19:15
**broader** [1] - 25:25
**BROWN** [2] - 2:25, 3:25
**Brown** [1] - 4:1
**BrownGreer** [1] - 4:1
**buy** [1] - 5:23

## C

**CA** [1] - 2:4
**CABRASER** [11] - 2:3, 3:7, 4:11, 8:18, 8:24, 9:15, 13:5, 17:14, 28:24, 36:21, 37:9
**Cabraser** [7] - 2:3, 3:8, 4:12, 23:3, 23:16, 26:9, 33:23
**California** [5] - 9:5, 13:6, 13:9, 13:23, 30:6
**Canal** [2] - 2:10, 2:11
**candor** [1] - 26:22
**capped** [2] - 33:12, 33:13
**car** [1] - 23:1
**careful** [1] - 29:12
**carving** [1] - 22:7
**Case** [1] - 1:6
**case** [38] - 5:13, 11:11, 11:19, 12:2, 12:13, 13:12, 14:1, 15:4, 15:5, 15:15, 15:20, 16:4, 16:5, 16:8, 16:9, 16:11, 16:13, 16:14, 17:4, 17:6, 18:18, 19:9, 19:12, 21:13, 22:22, 23:21, 25:16, 26:17, 30:15, 31:2, 31:20, 33:1, 33:2, 33:4, 33:5, 36:15
**cases** [6] - 5:16, 9:2, 16:11, 20:18, 25:17
**Casteix** [1] - 2:6
**causal** [1] - 23:2
**causation** [1] - 22:16
**caused** [2] - 15:18, 22:21
**Center** [1] - 2:15
**cert** [1] - 9:21
**certain** [2] - 34:1, 34:22
**certifiable** [2] - 9:7, 21:4
**CERTIFICATE** [1] -

37:19
**certification** [25] - 5:5, 6:16, 9:11, 9:13, 9:16, 9:18, 11:1, 11:4, 11:17, 11:20, 12:7, 14:4, 15:22, 16:19, 18:24, 19:2, 30:7, 35:2, 35:8, 35:13, 35:23, 35:25, 36:13
**certified** [18] - 8:20, 8:25, 16:12, 16:13, 16:22, 19:4, 19:7, 24:1, 25:14, 26:24, 27:3, 27:23, 28:7, 29:22, 31:22, 31:25, 32:2, 34:19
**certify** [4] - 35:16, 36:9, 36:16, 37:22
**certifying** [2] - 27:18, 30:15
**cetera** [2] - 15:8
**challenging** [1] - 12:4
**chance** [1] - 19:6
**chances** [1] - 24:20
**changed** [1] - 18:23
**changing** [1] - 22:7
**charge** [1] - 29:16
**charged** [1] - 34:4
**checked** [1] - 30:2
**choice** [1] - 21:15
**choose** [1] - 10:15
**choosing** [1] - 14:11
**Chris** [2] - 7:22, 33:23
**chronology** [1] - 7:19
**circuit** [3] - 17:25, 27:21, 27:22
**Circuit** [7] - 9:20, 9:21, 10:1, 10:18, 10:21, 11:16, 26:24
**Circuit's** [3] - 9:22, 11:3, 11:13
**circumstance** [1] - 15:20
**circumstances** [2] - 10:11, 13:22
**cite** [2] - 9:19, 10:20
**cited** [5] - 11:3, 15:21, 20:18, 25:16, 29:21
**citing** [1] - 24:17
**citizens** [2] - 18:16, 34:21
**Civil** [1] - 34:9
**claim** [18] - 6:2, 6:8, 7:5, 8:12, 9:24, 14:5, 16:1, 16:21, 18:4, 18:7, 18:9, 19:4, 19:7, 27:3, 27:4
**claimant** [2] - 16:10, 22:24

**claimant's** [1] - 23:15
**claimants** [3] - 9:8, 14:5, 14:8
**claimed** [1] - 12:19
**Claims** [2] - 3:24, 8:1
**claims** [22] - 4:25, 5:10, 5:18, 5:22, 7:6, 7:8, 7:12, 7:19, 8:2, 8:10, 8:13, 9:25, 10:7, 10:9, 10:14, 10:25, 11:21, 12:3, 12:5, 12:25, 14:15, 26:10
**Class** [3] - 1:8, 27:6
**class** [110] - 4:9, 4:13, 4:24, 5:1, 5:3, 5:5, 5:20, 6:16, 6:20, 7:7, 7:11, 7:24, 8:10, 8:17, 8:19, 8:20, 8:23, 8:25, 9:1, 9:7, 9:9, 9:11, 9:12, 9:13, 9:16, 9:17, 9:23, 10:3, 10:8, 10:10, 10:19, 11:1, 11:4, 11:7, 11:10, 11:11, 11:12, 11:17, 11:20, 12:6, 12:11, 12:12, 12:14, 13:11, 14:3, 14:10, 14:12, 14:17, 14:19, 15:1, 15:22, 16:12, 16:19, 17:13, 18:23, 19:1, 19:17, 20:4, 21:3, 21:11, 23:6, 23:20, 23:23, 23:25, 24:2, 24:7, 24:8, 24:9, 24:19, 24:23, 25:2, 25:13, 25:22, 25:23, 26:8, 26:24, 27:1, 27:2, 27:18, 27:23, 28:6, 29:1, 29:4, 29:5, 29:7, 29:16, 29:22, 30:2, 30:3, 30:7, 30:15, 30:19, 30:21, 31:2, 31:4, 31:5, 31:6, 31:21, 31:22, 31:24, 31:25, 32:2, 34:10, 34:19, 35:2, 35:13, 35:23
**classes** [1] - 9:4
**clear** [2] - 22:1, 22:8
**CLERK** [1] - 3:3
**client** [1] - 27:15
**close** [1] - 17:25
**close-circuit** [1] - 17:25
**closely** [1] - 32:19
**co** [1] - 7:22
**co-lead** [1] - 7:22
**college** [3] - 15:21,

17:9, 17:10
**College** [4] - 15:21, 16:5, 17:10, 19:12
**coming** [2] - 6:18, 21:20
**commence** [1] - 7:15
**commencement** [1] - 7:13
**comment** [2] - 15:2, 33:11
**comments** [1] - 32:24
**Committee** [3] - 3:19, 3:24, 8:1
**committee** [2] - 33:23, 33:24
**committees** [1] - 33:22
**common** [4] - 5:21, 10:3, 15:25, 17:5
**common-sense** [1] - 5:21
**commonality** [1] - 12:20
**Commonwealth** [1] - 18:17
**communication** [2] - 33:5, 33:7
**compelling** [1] - 11:25
**compensate** [1] - 33:18
**compensated** [1] - 22:19
**complete** [1] - 30:1
**Complex** [1] - 34:12
**compliment** [1] - 16:15
**comprehensive** [5] - 4:23, 6:25, 10:14, 10:22, 12:10
**comprised** [1] - 30:22
**Computer** [1] - 1:24
**Computer-aided** [1] - 1:24
**concept** [2] - 34:18, 34:23
**concern** [8] - 19:23, 20:1, 20:11, 21:1, 25:7, 31:17, 32:15, 37:6
**concerned** [2] - 6:1, 36:11
**concerning** [1] - 17:9
**concerns** [1] - 27:10
**concluded** [4] - 9:5, 9:6, 35:20, 37:16
**conclusion** [1] - 23:14
**concurring** [1] - 24:17
**conditional** [1] - 5:5
**conditionally** [2] - 36:9, 36:16

**conduct** [9] - 10:2, 12:15, 12:18, 12:24, 16:2, 17:8, 22:11, 22:18
**confident** [1] - 17:1
**confused** [2] - 26:21, 27:8
**confusing** [2] - 30:9, 35:18
**confusion** [12] - 21:2, 21:5, 25:8, 25:10, 26:16, 27:11, 29:1, 31:17, 32:16, 32:19, 32:21, 37:7
**conjunctive** [1] - 24:7
**connection** [4] - 12:1, 22:18, 29:10, 33:12
**consider** [2] - 27:14, 28:9
**consideration** [5] - 11:5, 22:13, 26:16, 28:3, 28:12
**consistent** [2] - 16:1, 17:7
**consumer** [21] - 4:13, 5:18, 7:24, 8:10, 9:3, 11:20, 12:5, 12:14, 13:11, 13:24, 15:14, 15:24, 16:20, 18:4, 19:4, 22:10, 22:20, 24:8, 33:6, 33:15, 33:22
**consumers** [5] - 5:22, 5:24, 18:13, 33:18, 34:4
**contact** [6] - 24:5, 24:10, 24:11, 24:25, 30:25, 31:4
**contends** [1] - 23:11
**contested** [1] - 6:16
**continue** [3] - 10:8, 10:9, 21:12
**continued** [3] - 10:8, 11:8, 14:18
**controversy** [1] - 25:19
**Corbin** [1] - 17:10
**correct** [7] - 3:16, 8:23, 8:24, 19:14, 22:14, 29:3, 37:22
**cost** [1] - 6:25
**cost-effective** [1] - 6:25
**costs** [3] - 6:3, 20:4, 27:6
**counsel** [9] - 3:5, 5:12, 7:22, 8:2, 30:2, 31:2, 33:1, 35:5
**country** [2] - 7:3, 30:4
**counts** [1] - 17:5

couple [1] - 17:22
course [9] - 5:15, 9:3, 11:7, 12:12, 14:2, 14:7, 16:1, 17:7, 25:19
courses [1] - 17:9
court [51] - 10:11, 11:6, 13:8, 13:14, 13:15, 15:5, 15:7, 15:12, 15:13, 15:20, 15:23, 16:5, 16:6, 16:7, 16:17, 16:18, 17:15, 17:19, 17:22, 18:20, 18:22, 18:25, 19:1, 20:14, 21:3, 22:25, 24:1, 24:2, 25:9, 25:25, 27:16, 27:17, 27:19, 27:21, 27:22, 27:24, 28:4, 28:5, 28:16, 28:18, 30:15, 30:17, 31:1, 31:21, 36:20, 37:14
COURT [33] - 1:2, 3:5, 3:14, 3:17, 4:2, 4:6, 4:8, 8:16, 8:22, 9:2, 12:13, 14:20, 14:24, 17:12, 19:16, 20:9, 20:11, 20:21, 20:25, 21:17, 21:20, 21:22, 25:7, 28:14, 28:22, 30:10, 31:8, 31:10, 31:23, 32:11, 34:6, 37:4, 37:13
Court [30] - 1:20, 4:20, 6:18, 7:4, 7:13, 7:17, 9:6, 16:24, 20:16, 21:16, 21:25, 22:2, 22:4, 25:23, 26:1, 26:3, 26:5, 26:14, 26:22, 26:24, 27:14, 29:9, 30:13, 30:14, 32:24, 34:14, 34:15, 35:6, 36:24, 37:21
Court's [2] - 4:14, 26:16
court's [1] - 19:5
courts [15] - 5:17, 6:17, 6:19, 9:4, 9:18, 10:25, 11:23, 13:7, 13:17, 13:20, 13:25, 14:16, 25:17, 28:15, 34:11
coverage [1] - 23:22
covers [1] - 25:5
criteria [1] - 5:4
critical [1] - 33:19
current [1] - 16:17

# D

damage [1] - 12:25
damages [6] - 12:16, 17:13, 18:4, 18:5, 18:9, 22:23
dangers [1] - 16:3
databanks [1] - 18:14
date [3] - 7:13, 12:4, 36:17
dates [1] - 37:2
DAVIS [2] - 2:23, 3:20
Davis [1] - 3:20, 7:25
DAWN [1] - 2:6
Dawn [4] - 3:9, 8:3, 33:24, 33:25
days [2] - 7:10, 11:17
DB [1] - 9:20
DC [2] - 2:20, 22:4
deadline [2] - 7:16
deal [7] - 17:15, 21:4, 21:7, 25:7, 25:10, 26:17, 28:20
dealing [2] - 8:22, 9:3
dealt [2] - 9:4, 21:13
death [2] - 5:10, 12:3
December [1] - 7:19
deception [1] - 18:6
deceptive [1] - 16:2
decision [9] - 9:20, 9:21, 10:5, 10:21, 11:3, 11:16, 19:24, 29:21, 29:22
decisions [2] - 5:16, 10:11
declaration [2] - 4:22, 36:24
defendant [5] - 4:4, 10:6, 10:15, 12:15, 12:24
defendants [2] - 4:2, 4:6
defendants' [1] - 10:2
defending [1] - 8:2
defined [1] - 31:2
defines [1] - 30:21
definition [4] - 5:2, 24:4, 24:24, 30:20
Dell [1] - 11:15
demonstrable [1] - 11:10
demonstrate [2] - 23:12, 24:10
denial [2] - 18:22, 32:7
denied [3] - 9:18, 9:21, 30:8
deposition [1] - 23:9
designed [2] - 7:5, 8:13

details [1] - 4:15
determine [1] - 11:7
develop [1] - 34:19
developed [3] - 4:23, 12:1, 13:18
developing [1] - 34:18
difference [4] - 9:8, 17:17, 18:3, 18:8
differences [1] - 9:10
different [13] - 10:16, 10:25, 11:25, 12:13, 13:20, 13:21, 13:22, 16:8, 17:4, 22:16, 27:2
differently [1] - 13:21
difficult [3] - 21:14, 23:13, 33:9
difficulties [5] - 11:9, 11:10, 25:11, 33:10, 33:16
difficulty [1] - 23:5
direct [1] - 15:21
directly [1] - 21:8
disclosing [1] - 16:3
discovery [1] - 5:11
discretionary [1] - 15:6
discuss [1] - 32:18
discussion [1] - 5:8
discussions [2] - 4:18, 21:9
dismiss [1] - 28:5
dismissal [1] - 8:2
disseminated [1] - 29:4
distinction [1] - 17:11
DISTRICT [3] - 1:2, 1:3, 1:12
division [1] - 16:16
doctor [3] - 23:8, 23:10, 27:5
doctor's [1] - 6:10
doctors [1] - 5:25
document [1] - 6:8
documentation [3] - 8:5, 23:12, 26:13
documents [4] - 4:17, 26:9, 33:2
dollar [1] - 33:13
dollars [1] - 22:20
done [3] - 24:13, 27:20, 27:25
Doug [3] - 4:5, 21:8, 33:20
down [2] - 28:7, 28:11
Dr [3] - 4:22, 7:2, 36:24
draft [1] - 34:12
drafted [1] - 30:16

dramatically [1] - 24:8
drastically [1] - 16:8
drawn [1] - 18:2
due [3] - 22:17, 23:1, 28:8
Dugan [2] - 3:12, 33:24
DUGAN [2] - 2:10, 3:12
during [4] - 9:2, 15:10, 24:3, 30:23

# E

early [2] - 9:6, 24:19
EASTERN [1] - 1:3
economic [2] - 15:16, 18:9
effect [4] - 18:6, 22:11, 22:14, 27:6
effective [1] - 6:25
effort [1] - 19:14
efforts [1] - 6:24
either [4] - 6:9, 9:24, 29:7, 35:20
ELDON [1] - 1:11
element [2] - 23:3, 24:25, 33:6
ELIZABETH [1] - 2:3
Elizabeth [6] - 3:7, 4:11, 28:22, 33:23, 33:25, 37:5
emphasis [1] - 22:10
en [1] - 9:21
enable [2] - 4:25, 6:13
end [6] - 22:13, 22:17, 22:23, 23:5, 36:7, 36:8
endless [1] - 10:10
entered [3] - 8:20, 27:17
entering [1] - 27:14
entertain [1] - 28:16
entire [1] - 10:3
especially [1] - 23:4
ESQ [10] - 2:3, 2:6, 2:10, 2:14, 2:19, 2:23, 2:23, 2:24, 2:24, 2:25
essentially [2] - 5:8, 6:19
establish [1] - 27:5
established [2] - 18:7, 18:14
et [2] - 15:8
evaluation [2] - 34:11, 34:13
event [1] - 17:4
evidence [1] - 23:7
exactly [1] - 22:14

examination [1] - 23:11
example [1] - 13:23
exclude [4] - 17:1, 19:13, 21:16, 32:10
excluded [3] - 16:24, 17:2, 17:3
excluding [2] - 8:18, 32:11
exclusion [1] - 14:12
executive [1] - 33:22
Exhibit [1] - 30:13
existing [1] - 30:3
expect [1] - 15:9
expected [1] - 34:15
expended [1] - 18:12
expenditures [1] - 26:12
experienced [1] - 7:24
expert [1] - 7:2, 7:3
expertise [1] - 8:6
experts [1] - 7:24
expressly [1] - 34:10
extremely [1] - 23:13

# F

F.3d [3] - 9:20, 10:22, 11:15
facilitate [1] - 8:13
facing [1] - 25:18
fact [9] - 10:23, 11:4, 11:25, 12:2, 13:19, 15:20, 17:5, 26:4, 33:13
factor [1] - 11:5
factors [2] - 11:3, 11:14
facts [4] - 11:19, 12:1, 13:18, 16:3
factual [2] - 5:13, 13:18
failed [1] - 9:12
fair [8] - 6:23, 8:11, 10:5, 13:3, 20:13, 26:16, 33:17
fairness [4] - 7:18, 25:19, 34:11, 35:7
faith [1] - 21:12
FALLON [1] - 1:11
familiar [2] - 4:16, 7:4
far [1] - 20:14
fashioned [1] - 37:6
fate [1] - 18:19
favor [3] - 9:16, 11:12, 14:22
favorable [1] - 12:2
FCRR [3] - 1:20, 37:24, 37:25
FDA [2] - 24:5, 30:24

**February** [1] - 36:5
**federal** [3] - 14:15, 18:24, 28:14
**Federal** [1] - 34:8
**few** [2] - 20:20, 21:23
**Fifth** [2] - 11:13, 11:16
**figure** [1] - 33:17
**filed** [1] - 27:18
**fill** [1] - 37:2
**final** [8] - 4:20, 7:17, 11:6, 15:4, 19:21, 19:25, 20:12, 36:12
**finality** [1] - 25:18
**finally** [2] - 11:13, 32:5
**Financial** [1] - 2:15
**findings** [5] - 5:2, 5:14, 27:18, 27:22, 27:23
**fine** [1] - 28:24
**fine-grained** [1] - 28:24
**finger** [1] - 15:11
**firm** [1] - 33:21
**first** [4] - 4:9, 10:4, 29:10, 31:24
**five** [1] - 37:14
**Flom** [1] - 2:19
**Floor** [1] - 2:4
**focus** [7] - 12:15, 12:18, 12:23, 19:22, 20:15, 35:6, 35:8
**focused** [2] - 12:17, 35:12
**follow** [2] - 26:20, 37:11
**Folsom** [1] - 5:13
**footnote** [1] - 17:20
**FOR** [1] - 1:2
**foregoing** [1] - 37:22
**forgive** [1] - 27:12
**form** [3] - 7:5, 8:12, 36:23
**formal** [2] - 7:18, 26:25
**former** [1] - 17:22
**forms** [1] - 6:12
**forthcoming** [1] - 21:11
**forward** [1] - 6:22
**fought** [1] - 33:9
**four** [1] - 6:7
**Francisco** [1] - 2:4
**frankly** [2] - 11:17, 13:19
**fraud** [9] - 15:22, 15:25, 16:5, 17:5, 18:4, 18:6, 18:8, 19:7, 19:8
**free** [1] - 26:1

**front** [3] - 17:19, 27:16, 36:4
**fruition** [1] - 34:20
**fully** [1] - 28:9
**fund** [2] - 33:12, 33:13

## G

**general** [1] - 5:10
**generalized** [5] - 15:22, 16:4, 17:6, 18:6, 19:7
**generally** [1] - 36:7
**generating** [1] - 12:8
**GETTY** [15] - 2:14, 3:10, 14:25, 20:8, 20:10, 20:18, 20:24, 21:1, 21:18, 21:21, 26:20, 28:17, 31:9, 31:11, 32:9
**Getty** [8] - 2:14, 3:10, 14:25, 22:14, 24:15, 30:12, 30:16, 30:19
**Girsh** [1] - 11:3
**given** [4] - 6:4, 13:16, 19:20, 29:11
**govern** [1] - 29:15
**governs** [1] - 34:9
**grained** [1] - 28:24
**grand** [1] - 36:6
**granted** [1] - 35:24
**grants** [1] - 7:13
**great** [1] - 6:23
**greater** [2] - 12:9, 36:16
**Group** [1] - 2:14
**group** [1] - 25:4
**guess** [1] - 18:20

## H

**Hanlon** [1] - 29:21
**hard** [1] - 33:9
**hard-fought** [1] - 33:9
**HB** [1] - 1:21
**hear** [1] - 14:24
**heard** [3] - 11:22, 20:21, 30:6
**hearing** [5] - 7:18, 11:23, 20:12, 34:14
**heated** [1] - 6:7
**heavily** [1] - 11:12
**Heimann** [1] - 2:3
**helped** [1] - 17:24
**helpful** [1] - 36:19
**hence** [1] - 6:18
**hereby** [1] - 37:21
**HERMAN** [3] - 2:23, 3:18, 32:23
**Herman** [3] - 3:18,

7:22, 32:23
**Higginbotham** [1] - 11:15
**hit** [1] - 27:13
**Honor** [37] - 3:7, 3:10, 3:12, 3:16, 3:20, 3:21, 3:25, 4:3, 4:11, 4:14, 7:13, 7:21, 8:14, 9:15, 9:19, 10:4, 10:20, 13:5, 14:23, 14:25, 18:15, 20:24, 21:18, 21:23, 22:9, 23:18, 25:11, 26:7, 26:20, 28:13, 29:14, 30:11, 31:9, 32:23, 32:25, 36:21, 37:9
**Honor's** [2] - 5:14, 11:22
**HONORABLE** [1] - 1:11
**hope** [3] - 32:14, 34:25, 35:2
**hopeful** [1] - 15:9
**hopefully** [2] - 27:7, 36:8
**hoping** [1] - 34:19
**hours** [1] - 12:10
**housekeeping** [1] - 36:21

## I

**identical** [3] - 15:14, 16:21, 18:18
**II** [1] - 2:10
**Illinois** [1] - 33:4
**ills** [1] - 12:19
**immediate** [1] - 18:23
**impact** [1] - 9:12
**implemented** [1] - 13:13
**important** [5] - 17:11, 19:9, 23:17, 28:25, 29:2
**importantly** [1] - 6:4
**impossible** [1] - 21:14
**improper** [1] - 27:25
**IN** [2] - 1:2, 1:6
**in-the-pocket** [1] - 14:16
**inappropriate** [2] - 7:6, 7:7
**include** [3] - 15:4, 29:12, 29:13
**included** [3] - 9:1, 9:23, 18:17
**includes** [2] - 5:1, 23:24
**including** [7] - 7:24,

13:7, 13:14, 14:19, 22:3, 25:23, 32:14
**inclusion** [1] - 9:17
**incurred** [1] - 27:5
**indeed** [1] - 14:4
**Indiana** [1] - 33:1
**indicate** [1] - 33:8
**indicated** [1] - 33:2
**indicating** [1] - 25:17
**indication** [1] - 36:11
**indispensable** [1] - 8:4
**individual** [3] - 17:12, 29:20, 29:21
**indulgence** [2] - 21:19, 31:11
**inevitable** [1] - 6:17
**inextricably** [1] - 11:18
**information** [2] - 29:14, 29:16
**informed** [2] - 5:9, 5:14
**inherently** [1] - 15:3
**injury** [4] - 5:10, 12:3, 22:19, 22:21
**input** [1] - 37:5
**inquiry** [1] - 8:16
**instrumental** [2] - 8:4, 8:8
**intensive** [1] - 6:6
**interest** [4] - 18:16, 25:18, 25:22, 32:9
**interests** [2] - 6:20, 12:12
**interfere** [1] - 26:4, 29:22
**interferes** [1] - 35:1
**interfering** [1] - 29:25
**interposing** [1] - 7:7
**intertwined** [1] - 11:18
**intimate** [1] - 5:11
**Investments** [1] - 9:20
**involve** [1] - 7:10
**involving** [4] - 15:21, 16:5, 17:8, 19:12
**issue** [7] - 9:6, 15:23, 15:25, 16:6, 19:11, 23:7, 28:22
**issued** [1] - 30:15
**issues** [3] - 5:12, 5:13, 23:20
**itself** [2] - 8:5, 29:15

## J

**James** [2] - 3:12, 15:1
**JAMES** [1] - 2:10
**Jersey** [5] - 9:5, 13:6, 13:8, 16:9, 30:6

**jettison** [1] - 34:23
**Jim** [1] - 33:24
**JOHN** [1] - 2:19
**John** [4] - 4:3, 27:1, 28:23, 33:20
**john.beisner@ skadden.com** [1] - 2:21
**JOHNSON** [2] - 2:24, 3:21
**Johnson** [2] - 3:22
**join** [1] - 35:10
**joining** [1] - 31:25
**judge** [3] - 5:15, 5:16, 28:1
**Judge** [1] - 11:14
**JUDGE** [1] - 1:12
**judgment** [2] - 26:3, 26:6
**JULY** [1] - 3:1
**July** [2] - 1:6, 15:7
**Junior** [1] - 4:1
**junior** [1] - 17:10
**jurisdiction** [1] - 23:16
**justices** [1] - 17:23

## K

**keeping** [1] - 8:5
**KENNETH** [1] - 2:24
**Kenneth** [1] - 3:22
**Kentuckians** [2] - 25:4, 25:5
**Kentucky** [60] - 2:14, 8:22, 8:25, 12:21, 13:2, 13:4, 14:21, 14:24, 15:1, 15:4, 15:6, 16:1, 17:6, 17:11, 17:23, 18:13, 18:17, 19:8, 19:10, 21:3, 21:11, 21:13, 22:15, 23:5, 23:7, 23:21, 23:22, 23:25, 24:2, 24:16, 24:19, 24:24, 25:14, 25:22, 25:24, 25:25, 26:4, 28:5, 28:11, 29:5, 29:6, 29:8, 29:19, 30:22, 31:7, 31:13, 31:22, 32:14, 34:17, 34:20, 34:21, 34:25, 35:1, 35:7, 35:10, 35:15, 35:19, 35:24, 36:11
**Kentucky's** [1] - 35:10
**key** [2] - 22:12, 23:3
**kids** [1] - 36:6
**kills** [1] - 32:12
**Kingsdorf** [1] - 2:6
**knowledge** [1] - 30:2

**KY** [1] - 2:16

## L

**LA** [2] - 2:8, 2:12
**language** [1] - 15:12
**last** [2] - 11:16, 16:16
**law** [7] - 11:20, 13:11, 13:12, 13:16, 15:25, 17:5, 25:17
**Law** [1] - 2:14
**law.com** [1] - 2:8
**laws** [4] - 9:10, 9:25, 13:24, 14:9
**lawsuit** [1] - 25:22
**lawyers** [1] - 17:23
**lead** [1] - 7:22
**leads** [1] - 12:10
**least** [10] - 7:1, 7:10, 16:25, 19:6, 28:1, 31:6, 32:11, 34:1, 35:15
**legal** [3] - 5:12, 11:24, 13:20
**length** [1] - 6:6
**LEONARD** [1] - 2:23
**Leonard** [2] - 3:20, 7:25
**less** [1] - 14:9
**letter** [1] - 6:10
**LEVINE** [2] - 2:24, 3:23
**Levine** [2] - 3:23, 7:25
**Lexington** [2] - 2:15, 2:16
**LIABILITY** [1] - 1:6
**Liability** [1] - 3:4
**liaison** [1] - 7:21
**Lieff** [1] - 2:3
**light** [1] - 12:12
**limited** [1] - 24:8
**links** [1] - 22:24
**litigate** [2] - 23:5, 23:14
**litigating** [1] - 16:14
**LITIGATION** [1] - 1:6
**litigation** [11] - 9:3, 10:21, 11:2, 11:8, 14:14, 14:15, 14:18, 15:1, 29:11, 36:5, 36:6
**Litigation** [2] - 3:4, 34:12
**LLP** [3] - 2:3, 2:6, 2:19
**look** [11] - 5:17, 9:22, 14:2, 22:13, 27:7, 32:5, 32:16, 34:15, 35:15, 36:13
**looked** [4] - 9:6, 32:20, 33:14, 35:12

## M

**looking** [5] - 12:6, 12:7, 18:11, 26:7, 32:19
**looks** [1] - 13:16
**loss** [1] - 15:16
**lost** [1] - 6:14
**LOUISIANA** [2] - 1:3, 3:1
**Louisiana** [4] - 1:22, 13:3, 16:9, 28:7

## M

**Main** [1] - 2:15
**maintaining** [1] - 11:4
**major** [1] - 23:20
**Management** [1] - 11:15
**mandamus** [3] - 18:21, 18:22, 27:18
**Manual** [1] - 34:11
**manual** [1] - 34:13
**market** [3] - 5:25, 6:5, 24:12
**MARVIN** [1] - 4:5
**Marvin** [5] - 4:5, 21:8, 28:8, 28:19, 33:20
**master** [1] - 17:16
**matter** [3] - 26:19, 33:25, 37:15
**matters** [1] - 10:1
**MDL** [4] - 3:3, 5:15, 25:15, 25:17
**Meagher** [1] - 2:19
**mean** [4] - 19:11, 23:1, 27:25, 31:14
**meaningful** [1] - 24:14
**means** [4] - 6:7, 7:16, 10:5, 31:16
**medical** [1] - 6:10
**medications** [1] - 6:1
**meet** [2] - 32:18, 37:4
**meets** [1] - 5:3
**member** [1] - 24:9
**members** [16] - 6:20, 7:8, 7:11, 7:23, 7:25, 8:10, 9:24, 10:16, 10:24, 11:8, 14:10, 23:6, 29:1, 29:4, 29:6, 29:17
**mentioned** [2] - 13:17, 23:19
**Merck** [12] - 2:19, 4:4, 10:12, 14:22, 16:2, 18:25, 20:23, 21:11, 24:5, 27:15, 30:24, 33:21
**Merck's** [1] - 15:16
**meritorious** [1] - 8:13
**merits** [4] - 5:19,

11:17, 11:18, 12:8
**met** [1] - 21:8
**might** [4] - 10:24, 10:25, 11:1
**million** [2] - 4:13, 4:22
**mind** [1] - 32:19
**minutes** [1] - 37:14
**misleading** [1] - 12:18
**misrepresentations** [1] - 17:9
**Mississippi** [1] - 13:3
**Missouri** [8] - 8:19, 12:17, 12:22, 12:23, 13:7, 15:13, 18:18, 30:1
**Missouri's** [1] - 16:21
**mock** [1] - 17:22
**moment** [2] - 21:10, 27:13
**monetary** [1] - 5:24
**money** [10] - 5:23, 5:24, 6:14, 6:15, 7:8, 7:9, 10:13, 18:15, 23:8
**month** [3] - 15:7, 15:10, 20:12
**months** [2] - 5:8, 7:12
**morning** [9] - 3:7, 3:10, 3:12, 3:21, 3:25, 4:3, 4:11, 4:15, 23:19
**most** [1] - 11:14
**Motion** [1] - 1:7
**motion** [4] - 4:8, 4:12, 28:16
**movant** [1] - 4:9
**move** [4] - 6:22, 19:16, 28:11, 36:4
**MR** [27] - 3:10, 3:12, 3:18, 3:20, 3:21, 3:23, 3:25, 4:3, 4:5, 14:23, 14:25, 20:8, 20:10, 20:18, 20:24, 21:1, 21:18, 21:21, 21:23, 25:11, 26:20, 28:17, 30:11, 31:9, 31:11, 32:9, 32:23
**MS** [11] - 3:7, 3:9, 4:11, 8:18, 8:24, 9:15, 13:5, 17:14, 28:24, 36:21, 37:9
**muddle** [2] - 36:7, 36:8
**multi** [1] - 10:23
**multi-state** [1] - 10:23
**multimedia** [1] - 4:23
**must** [1] - 11:25
**muster** [1] - 23:6

## N

**named** [1] - 23:7
**narrower** [5] - 23:21, 25:4, 27:2, 31:3, 31:5
**nation** [3] - 8:17, 8:18, 13:24
**national** [2] - 9:9, 36:1
**nationally** [1] - 34:4
**nationwide** [11] - 9:23, 10:10, 10:19, 10:23, 11:10, 11:21, 12:7, 14:12, 34:22, 35:23
**nature** [2] - 20:6, 33:6
**nearly** [4] - 15:14, 16:21, 18:18, 30:1
**necessary** [1] - 20:5
**need** [4] - 32:24, 35:8, 36:10, 37:3
**negotiating** [2] - 5:12, 33:12
**negotiation** [3] - 5:9, 6:7, 33:9
**negotiations** [1] - 4:18
**net** [1] - 12:9
**never** [1] - 26:19
**new** [1] - 22:25
**NEW** [2] - 1:4, 3:1
**New** [9] - 1:22, 2:8, 2:12, 2:20, 9:4, 13:6, 13:8, 16:9, 30:5
**news** [3] - 30:5, 30:8, 30:9
**next** [1] - 15:6
**nine** [3] - 7:12, 14:14, 16:14
**nobody** [1] - 17:25
**nonpartisan** [1] - 37:10
**note** [3] - 5:7, 10:8, 23:18
**noted** [1] - 10:1
**nothing** [3] - 14:23, 32:1, 32:3
**notice** [43] - 4:23, 4:24, 5:20, 6:24, 7:3, 7:10, 7:13, 7:15, 8:5, 8:12, 8:21, 19:20, 20:2, 20:4, 20:12, 21:1, 21:2, 25:8, 25:9, 26:4, 26:25, 27:7, 29:4, 29:7, 29:9, 29:11, 29:13, 29:15, 30:1, 30:3, 31:13, 32:3, 32:12, 32:17, 32:19, 35:13, 35:14, 35:20, 35:21, 37:3, 37:6
**notices** [2] - 36:23,

37:7
**November** [2] - 7:17, 7:18
**number** [4] - 17:21, 24:17, 24:18, 35:11
**NW** [1] - 2:20

## O

**object** [6] - 7:11, 35:22, 35:25, 36:1
**objected** [1] - 36:1
**objection** [9] - 7:16, 10:17, 25:13, 33:3, 34:16, 34:18, 35:3
**objections** [4] - 20:6, 20:7, 35:11, 36:14
**objective** [1] - 37:10
**objectors** [1] - 19:21
**obligation** [1] - 26:22
**observation** [2] - 30:12, 34:17
**observations** [1] - 35:6
**obstacles** [1] - 7:7
**occasion** [1] - 5:17
**occurred** [1] - 24:21
**OF** [2] - 1:3, 1:10
**offer** [1] - 21:10
**offered** [1] - 10:13
**offers** [1] - 5:23
**offhand** [1] - 32:21
**Official** [2] - 1:20, 37:21
**often** [1] - 13:25
**older** [1] - 36:6
**ON** [1] - 3:16
**once** [2] - 18:22, 18:25
**one** [19] - 7:3, 8:7, 12:13, 12:17, 16:11, 18:2, 20:5, 21:25, 23:18, 23:19, 25:11, 25:14, 30:4, 30:6, 31:9, 35:20, 35:21, 36:2, 37:8
**One** [2] - 2:7, 2:10
**onerous** [1] - 7:7
**ongoing** [1] - 5:8
**operative** [1] - 29:23
**opinion** [6] - 7:2, 15:7, 15:9, 15:13, 16:18, 19:3
**opportunities** [2] - 9:11, 12:22
**opportunity** [10] - 6:2, 12:20, 20:15, 20:23, 29:20, 31:18, 32:17, 34:21, 35:15, 36:15
**opt** [5] - 7:11, 7:16, 29:20, 31:24, 37:11

**opt-in** [1] - 37:11
**opt-out** [3] - 7:11, 7:16, 31:24
**opting** [1] - 29:19
**oral** [1] - 18:3
**order** [4] - 4:25, 15:5, 27:15, 28:2, 28:3, 30:14, 30:17, 30:21, 37:1, 37:2
**ORLEANS** [2] - 1:4, 3:1
**Orleans** [3] - 1:22, 2:8, 2:12
**ORRAN** [1] - 2:25
**Orran** [1] - 3:25
**otherwise** [1] - 10:7
**ought** [2] - 17:2, 17:3
**out-of-pocket** [3] - 5:22, 6:2, 26:11
**outcome** [1] - 14:8
**outcomes** [1] - 13:11
**overall** [1] - 34:21
**overruled** [1] - 10:18
**owed** [1] - 23:8
**own** [3] - 8:20, 9:24, 15:14

## P

**page** [1] - 30:14
**paid** [3] - 6:11, 23:11, 27:3
**pains** [1] - 6:24
**panel** [1] - 13:15
**panels** [1] - 17:22
**panzer** [1] - 16:16
**paper** [1] - 25:13
**part** [2] - 5:11, 24:13
**participation** [2] - 33:14, 33:17
**particular** [6] - 12:13, 13:12, 13:14, 13:15, 14:13
**parties** [3] - 32:18, 34:7, 36:10
**partly** [1] - 13:17
**passage** [2] - 6:4, 23:4
**passed** [1] - 12:9
**past** [1] - 28:10
**payment** [1] - 6:9
**pen** [1] - 31:1
**pending** [5] - 25:23, 31:14, 31:20, 33:1, 33:4
**people** [6] - 3:14, 6:13, 13:4, 24:22, 28:11, 29:13
**perhaps** [2] - 11:23, 36:2
**period** [7] - 5:21, 7:12,

14:17, 18:7, 24:3, 24:20, 30:23
**Perkins** [1] - 3:22
**PERSON** [1] - 3:16
**personal** [2] - 5:9, 12:3
**persons** [1] - 24:16
**perspective** [1] - 23:15
**phone** [5] - 3:15, 3:17, 4:6, 8:3, 32:22
**physician** [5] - 24:11, 24:21, 24:23, 24:25, 31:4
**physicians** [3] - 24:5, 24:11, 30:25
**pick** [2] - 10:15, 37:7
**piece** [1] - 37:11
**Pike** [1] - 26:24
**Place** [1] - 2:10
**plaintiff** [3] - 12:16, 12:19, 23:7
**Plaintiff's** [1] - 1:7
**plaintiff's** [3] - 15:16, 15:17, 31:1
**plaintiffs** [9] - 3:9, 3:13, 3:15, 3:24, 9:8, 9:12, 12:3, 12:4, 13:1
**plaintiffs'** [1] - 7:21
**Plaintiffs'** [2] - 3:18, 3:23
**plan** [1] - 4:23
**playing** [1] - 14:3
**PLC** [1] - 4:1
**Plubell** [2] - 15:15, 16:12
**pocket** [4] - 5:22, 6:2, 14:16, 26:11
**point** [20] - 8:9, 9:15, 14:14, 16:10, 19:20, 21:14, 22:9, 22:11, 22:12, 26:6, 28:25, 30:11, 30:18, 32:4, 32:10, 32:12, 33:16, 36:3, 36:12
**pointed** [2] - 20:19, 22:22, 23:4, 23:16, 25:24
**points** [2] - 18:2, 21:23
**portion** [1] - 6:14
**position** [8] - 4:10, 12:21, 14:22, 15:3, 19:24, 20:22, 25:12, 34:6
**positions** [1] - 20:17
**possession** [1] - 29:6
**possibility** [1] - 30:7
**possible** [1] - 31:12

**postmark** [1] - 7:16
**potential** [1] - 29:1
**power** [2] - 28:15, 28:16
**Poydras** [1] - 1:21, 2:7
**practical** [2] - 5:21, 8:12
**practice** [2] - 15:18, 19:10
**practices** [1] - 15:17, 16:2
**preclude** [1] - 31:25
**precluding** [2] - 27:15, 28:3
**predict** [1] - 13:10
**predictably** [1] - 14:8
**predictions** [1] - 29:25
**predominance** [1] - 10:2
**preeminent** [1] - 7:3
**preliminarily** [2] - 22:4, 35:16
**preliminary** [16] - 4:8, 4:12, 5:1, 5:19, 7:14, 11:6, 19:19, 19:25, 20:2, 20:11, 32:7, 32:8, 33:19, 34:10, 34:14
**Preliminary** [1] - 1:7
**preponderance** [1] - 12:20
**prerequisite** [1] - 25:1
**prescription** [1] - 6:10
**present** [2] - 26:10, 26:13
**presented** [2] - 9:7, 33:13
**pretty** [1] - 21:6
**prevail** [1] - 12:22
**prevailing** [4] - 6:17, 11:4, 11:16, 12:8
**primarily** [1] - 33:11
**principles** [1] - 13:21
**problem** [10] - 9:14, 13:10, 20:9, 24:20, 28:11, 28:20, 31:15, 32:11, 32:16, 34:24
**procedure** [1] - 29:18
**Procedure** [1] - 34:9
**proceed** [3] - 21:12, 25:20, 26:1
**proceeded** [1] - 21:12
**proceeding** [2] - 25:15, 27:18
**PROCEEDINGS** [1] - 1:10
**proceedings** [4] - 5:15, 18:21, 29:8, 37:16
**Proceedings** [1] -

1:24
**process** [7] - 6:16, 8:22, 22:17, 23:1, 30:1, 34:13, 34:18
**product** [4] - 16:3, 17:8, 25:6
**product's** [1] - 24:12
**PRODUCTS** [1] - 1:6
**Products** [1] - 3:3
**professional** [1] - 33:21
**program** [4] - 6:25, 7:3, 7:15, 8:5
**progress** [1] - 29:8
**prominent** [1] - 17:23
**proof** [10] - 6:12, 15:19, 15:22, 16:4, 17:7, 17:13, 18:5, 18:6, 19:8, 27:5
**proposal** [2] - 26:2, 26:5
**proposed** [18] - 4:24, 4:25, 5:2, 8:17, 22:3, 23:20, 23:22, 23:23, 23:25, 24:2, 25:3, 25:5, 25:25, 26:8, 29:10, 31:6, 37:1, 37:2
**proposing** [1] - 25:23
**proposition** [2] - 22:2, 22:8
**proprietary** [1] - 25:22
**prosecuting** [2] - 8:1, 14:3
**prospect** [1] - 14:7
**prospects** [4] - 12:6, 12:8, 14:10, 14:16
**protect** [1] - 34:3
**protection** [3] - 15:14, 15:24, 22:10
**prove** [1] - 18:5
**proved** [1] - 12:2
**proven** [2] - 12:4, 17:2
**provide** [2] - 22:7, 34:10
**provides** [1] - 6:7
**providing** [1] - 6:9
**provisionally** [1] - 16:25
**provisions** [1] - 34:12
**PSC** [6] - 2:3, 3:8, 3:18, 4:12, 7:23, 34:1
**punitive** [2] - 18:4, 29:5
**punitives** [1] - 18:8
**purchase** [2] - 5:10, 15:17
**Purchase** [2] - 3:24, 7:25

**purchased** [4] - 8:19, 24:3, 30:22, 31:19
**purchaser** [1] - 9:3
**purchasing** [1] - 12:14
**purpose** [1] - 6:13
**purposes** [7] - 5:3, 5:5, 5:6, 10:1, 10:19, 11:18, 14:4
**pursuant** [1] - 8:12
**put** [7] - 15:11, 17:18, 20:4, 20:11, 20:14, 31:12, 36:14

## Q

**quality** [1] - 34:2
**quest** [2] - 10:9, 10:10
**questions** [1] - 8:14
**quirk** [1] - 18:19
**quite** [1] - 20:3
**quote** [2] - 24:4, 30:21

## R

**raised** [2] - 22:9, 28:25
**rates** [2] - 33:14, 33:17
**rather** [1] - 30:20
**Ratliff** [7] - 3:11, 15:1, 18:12, 23:21, 30:13, 30:15, 31:20
**RE** [1] - 1:6
**re** [2] - 3:3, 10:20
**reach** [1] - 6:25
**reached** [1] - 33:17
**reaching** [1] - 33:19
**read** [4] - 11:22, 16:20, 19:3, 24:24
**reading** [1] - 11:24
**real** [1] - 20:9
**realize** [1] - 17:20
**really** [12] - 17:2, 17:14, 17:17, 18:3, 19:9, 19:21, 19:22, 27:10, 32:2, 34:17, 35:2
**reason** [4] - 16:23, 21:15, 24:22, 35:12
**reasonable** [4] - 7:6, 8:11, 14:17, 33:18
**receive** [2] - 6:9, 29:9
**received** [1] - 30:3
**recent** [1] - 9:19
**recently** [1] - 11:14
**recess** [2] - 36:20, 37:14
**recited** [1] - 11:14
**recognized** [2] - 17:6, 22:1
**recognizes** [1] - 10:12

**recognizing** [2] - 14:13, 22:12
**recollection** [1] - 30:16
**recommendation** [2] - 24:4, 30:24
**record** [6] - 3:6, 5:13, 6:10, 13:18, 32:25, 33:8
**Recorded** [1] - 1:24
**records** [1] - 6:8
**recover** [1] - 6:14
**recovering** [1] - 7:9
**recovery** [3] - 12:9, 14:17, 35:7
**Reed** [1] - 11:13
**refer** [1] - 30:13
**referencing** [1] - 30:20
**reflecting** [1] - 4:21
**reflects** [1] - 5:8
**refund** [1] - 18:10
**regarding** [6] - 4:22, 24:6, 25:1, 29:11, 30:12, 30:25
**regardless** [2] - 14:9, 23:15
**regular** [1] - 4:18
**rejected** [1] - 9:25
**relationship** [1] - 23:2
**release** [1] - 5:2
**reliable** [1] - 29:14
**reliance** [5] - 15:19, 15:25, 20:19, 22:15, 22:17
**relief** [5] - 5:24, 6:19, 22:21, 30:18, 31:16
**religiously** [1] - 33:25
**remaining** [1] - 14:6
**remedies** [1] - 10:16
**remember** [4] - 23:10, 27:1, 29:2
**remembers** [1] - 23:11
**remind** [1] - 34:8
**reported** [1] - 4:17
**Reporter** [2] - 1:20, 37:21
**represent** [1] - 34:5
**representation** [1] - 34:2
**represented** [1] - 27:9
**representing** [1] - 33:20
**request** [2] - 6:19, 9:13
**require** [3] - 15:17, 15:25, 20:19
**required** [1] - 15:15
**requirement** [2] - 22:16, 31:3

**requires** [1] - 15:19
**requisite** [1] - 5:4
**residents** [9] - 9:1, 9:17, 21:2, 23:22, 24:2, 25:24, 30:22, 31:7, 35:19
**resolution** [2] - 10:7, 21:13
**resolved** [2] - 8:11, 26:19
**resolves** [1] - 5:20
**respect** [6] - 10:2, 10:3, 16:20, 28:8, 29:17, 31:6
**response** [2] - 4:7, 20:19
**responsibilities** [1] - 29:18
**responsible** [2] - 12:12, 14:2
**resubmit** [1] - 37:2
**result** [1] - 22:21
**resulted** [1] - 15:16
**resulting** [3] - 12:16, 12:24, 35:2
**reversed** [3] - 16:18, 19:1, 24:1
**review** [1] - 15:6
**reviewed** [1] - 33:2
**rgetty@ gettylawgroup.com** [1] - 2:16
**Richard** [3] - 3:10, 14:25, 37:5
**RICHARD** [1] - 2:14
**rid** [1] - 28:6
**rights** [2] - 29:18, 34:4
**risk** [2] - 11:4, 11:16
**road** [1] - 28:12
**rolling** [1] - 35:17
**Rommel's** [1] - 16:16
**RPR** [1] - 1:20
**Rule** [5] - 5:4, 5:6, 29:13, 34:9
**Rules** [1] - 34:8
**rules** [4] - 18:23, 18:24, 28:4, 37:12
**rulings** [1] - 5:14
**run** [1] - 7:12
**RUSS** [1] - 2:23
**Russ** [3] - 3:18, 7:22, 32:23

## S

**San** [1] - 2:4
**satisfactory** [1] - 23:14
**satisfies** [1] - 37:6
**scenario** [3] - 11:25,

12:1, 12:2
**scope** [2] - 5:2, 8:16
**screening** [1] - 7:6
**scrutiny** [1] - 36:14
**scuttling** [1] - 32:8
**second** [1] - 9:22
**see** [15] - 9:13, 9:15, 10:13, 10:14, 14:16, 20:16, 21:21, 21:22, 24:21, 31:17, 32:21, 35:9, 35:14, 35:17, 37:5
**Seeger** [2] - 7:22, 33:23
**seeing** [1] - 5:24
**seek** [3] - 24:6, 24:25, 30:25
**seeking** [1] - 6:16
**send** [1] - 25:8
**sends** [1] - 25:9
**sense** [1] - 5:21
**sensitive** [2] - 32:15, 32:18
**sent** [1] - 8:21
**separate** [2] - 25:22, 31:22
**September** [2] - 15:10, 10:23
**seriously** [2] - 35:5, 36:12
**served** [1] - 14:18
**service** [1] - 17:8
**session** [1] - 33:10
**set** [1] - 7:17
**settle** [1] - 10:14
**settlement** [50] - 4:9, 4:13, 4:15, 4:16, 4:18, 4:21, 4:24, 5:1, 5:3, 5:5, 5:8, 5:19, 5:23, 6:6, 6:23, 7:14, 8:4, 8:9, 8:17, 8:21, 9:1, 9:13, 9:16, 9:23, 10:1, 10:19, 10:23, 11:7, 11:12, 11:23, 12:11, 14:18, 14:19, 21:11, 22:4, 23:17, 23:23, 25:5, 26:8, 26:11, 29:10, 29:17, 31:6, 32:13, 34:3, 34:22, 37:1
**Settlement** [1] - 1:8
**settlements** [1] - 33:15
**Shannon** [3] - 4:22, 7:2, 36:24
**shape** [1] - 32:6
**Shell** [1] - 2:7
**short** [1] - 36:23
**side** [3] - 34:2, 34:3, 35:20

**side's** [1] - 29:7
**sides** [2] - 5:12, 29:3
**signed** [2] - 4:21, 30:17
**significant** [2] - 32:4, 35:6
**significantly** [1] - 31:5
**similar** [2] - 20:17, 35:10
**simple** [1] - 7:5
**simpler** [1] - 34:14
**simply** [6] - 6:11, 12:17, 14:13, 18:9, 25:16, 32:10
**sitting** [1] - 27:11
**situation** [2] - 20:3, 25:18, 25:21
**situations** [1] - 19:19
**Skadden** [2] - 2:19, 16:15
**Slate** [1] - 2:19
**Sodium** [1] - 10:21
**sold** [1] - 22:25
**sole** [1] - 31:16
**someone** [2] - 16:2, 24:19
**source** [1] - 29:14
**special** [1] - 17:16
**specificity** [1] - 36:17
**specifics** [2] - 12:18, 34:16
**specified** [1] - 24:3
**spend** [1] - 4:14
**spent** [5] - 5:23, 5:24, 6:13, 7:8, 12:10
**Square** [1] - 2:7
**stage** [7] - 10:4, 19:23, 32:13, 33:19, 33:21, 35:9, 36:14
**stages** [1] - 16:17
**standpoint** [8] - 9:9, 19:9, 19:10, 19:11, 22:18, 23:2, 29:5, 32:20
**stands** [2] - 36:20, 37:14
**start** [1] - 35:16
**starts** [1] - 7:11
**state** [21] - 5:17, 8:23, 9:10, 9:18, 10:23, 11:11, 11:21, 12:7, 13:12, 14:6, 14:13, 14:16, 18:13, 21:2, 22:10, 23:14, 25:13, 28:16, 28:18, 34:19, 35:8
**state's** [1] - 9:24
**state-wide** [4] - 11:11, 11:21, 12:7, 35:8
**statement** [1] - 6:11

**States** [1] - 16:12
**states** [17] - 9:17, 10:9, 10:17, 10:24, 12:15, 12:20, 12:23, 14:6, 14:9, 14:19, 19:24, 20:16, 22:14, 30:7, 32:13, 34:24, 35:10
**STATES** [2] - 1:2, 1:12
**statistic** [1] - 24:16
**status** [1] - 29:8
**statute** [7] - 13:12, 15:12, 15:14, 15:15, 15:19, 15:24, 19:10
**statutes** [3] - 14:6, 22:10, 22:19
**statutory** [2] - 13:21, 16:21
**Steering** [1] - 3:19
**Stenography** [1] - 1:24
**step** [1] - 34:13
**stockholder** [1] - 33:6
**storm** [1] - 16:18
**Street** [5] - 1:21, 2:4, 2:7, 2:11, 2:15
**strict** [1] - 21:6
**strong** [4] - 11:20, 13:13, 13:14, 14:9
**stronger** [1] - 10:25
**strongest** [1] - 13:24
**subclass** [1] - 27:6
**subject** [1] - 22:6
**submission** [1] - 30:14
**submit** [3] - 5:19, 27:3, 27:4
**submitted** [3] - 4:20, 35:15, 36:23
**subsequently** [1] - 25:9
**substantial** [6] - 5:11, 5:21, 5:22, 6:14, 10:13, 35:11
**substantially** [2] - 23:21, 25:4
**sufficient** [2] - 17:7, 34:3
**suggest** [2] - 34:11, 34:13
**suggested** [1] - 35:3
**suit** [1] - 33:7
**Suite** [2] - 2:7, 2:11
**Sullivan** [2] - 9:20, 10:17
**summarized** [1] - 15:3
**supplemented** [1] - 27:22
**supporting** [1] - 4:10
**suppose** [2] - 19:14,

28:21
**supreme** [16] - 13:8, 13:15, 15:5, 15:20, 15:23, 16:5, 16:7, 17:19, 17:22, 19:5, 21:3, 27:16, 28:3, 28:4, 28:5, 31:21
**surviving** [1] - 6:17
**Susan** [2] - 37:21, 37:25
**SUSAN** [2] - 1:20, 37:24
**susan_zielie@laed. uscourts.gov** [1] - 1:22
**sustainable** [1] - 11:2
**sustained** [3] - 12:16, 12:25
**sustaining** [1] - 11:10
**sworn** [1] - 6:11

## T

**tail** [1] - 32:7
**talks** [1] - 24:15
**taped** [2] - 17:25, 18:2
**TELEPHONE** [1] - 3:16
**Telephonically** [1] - 2:23
**television** [1] - 17:21
**terms** [9] - 4:16, 8:4, 11:6, 18:5, 22:21, 23:22, 24:15, 26:11, 29:17
**THE** [36] - 1:2, 1:3, 1:11, 3:3, 3:5, 3:14, 3:17, 4:2, 4:6, 4:8, 8:16, 8:22, 9:2, 12:13, 14:20, 14:24, 17:12, 19:16, 20:9, 20:11, 20:21, 20:25, 21:17, 21:20, 21:22, 25:7, 28:14, 28:22, 30:10, 31:8, 31:10, 31:23, 32:11, 34:6, 37:4, 37:13
**themselves** [3] - 4:17, 9:8, 29:6
**therefore** [1] - 12:22
**thinking** [1] - 27:11
**third** [2] - 18:20, 18:22
**Third** [7] - 9:19, 9:21, 9:22, 9:25, 10:17, 10:21, 11:3
**thousand** [1] - 24:15
**three** [2] - 18:12, 26:23
**throughout** [1] - 5:15
**thrown** [1] - 16:16

**today** [7] - 7:14, 8:3, 8:8, 16:25, 17:1, 27:9, 29:23
**together** [2] - 7:23, 8:6
**took** [1] - 24:3
**transcript** [1] - 37:22
**TRANSCRIPT** [1] - 1:10
**tremendously** [2] - 17:24, 27:17
**trial** [16] - 5:11, 5:16, 11:5, 11:11, 11:18, 14:4, 16:17, 17:15, 24:1, 26:12, 27:17, 27:19, 28:1, 30:15, 31:1
**trials** [1] - 5:9
**true** [2] - 16:3, 27:2
**trump** [1] - 25:14
**try** [2] - 21:12, 26:25
**trying** [1] - 13:10
**TV** [2] - 17:25, 18:1
**twice** [1] - 28:1
**two** [12] - 8:16, 16:11, 17:23, 17:24, 18:21, 32:24, 34:13, 35:24, 36:4, 37:7
**two-step** [1] - 34:13

## U

**ultimately** [1] - 21:16
**under** [13] - 5:4, 5:6, 7:19, 9:24, 10:10, 11:13, 11:20, 13:21, 14:6, 24:24, 26:10, 29:9, 29:20
**unfair** [1] - 15:3
**Union** [1] - 11:15
**unique** [1] - 8:6
**UNITED** [2] - 1:2, 1:12
**United** [1] - 16:12
**unlawful** [2] - 15:16, 15:18
**unless** [1] - 35:3
**up** [11] - 6:2, 6:9, 7:20, 13:25, 16:17, 18:25, 21:14, 22:24, 26:20, 28:21, 29:14
**upheld** [1] - 13:14
**urged** [1] - 9:11
**usable** [1] - 19:8
**users** [1] - 24:18

## V

**vacations** [1] - 15:8
**various** [1] - 9:10
**vastly** [1] - 17:4
**Vermont** [1] - 3:22

**version** [2] - 4:21, 29:7
**versus** [2] - 22:11, 24:8
**view** [4] - 13:17, 13:20, 35:10, 36:16
**violation** [1] - 22:20
**VIOXX** [21] - 1:6, 3:3, 5:18, 5:23, 5:25, 6:5, 6:11, 8:19, 14:1, 15:17, 22:25, 23:9, 23:24, 24:3, 24:6, 24:19, 25:1, 27:3, 29:6, 30:23, 30:25
**vs** [2] - 9:20, 11:15

## W

**wait** [1] - 26:18
**waited** [1] - 6:20
**Walker** [1] - 10:4
**Warfarin** [2] - 10:20, 11:2
**Washington** [2] - 2:20, 21:8
**watching** [1] - 17:24
**weathered** [1] - 16:18
**website** [2] - 29:15, 31:13
**WEDNESDAY** [1] - 3:1
**week** [1] - 36:25
**weigh** [1] - 11:12
**West** [1] - 2:15
**what-if** [1] - 26:15
**Wheatman** [3] - 4:22, 7:2, 36:25
**whereas** [1] - 25:4
**whipsawed** [1] - 27:16
**whole** [3] - 8:17, 8:18, 32:8
**wide** [4] - 11:11, 11:21, 12:7, 35:8
**wise** [1] - 34:15
**wish** [2] - 18:1, 35:25
**wishes** [1] - 32:22
**withdraw** [1] - 24:21
**withdrawal** [2] - 5:25, 6:5
**withdrawn** [1] - 23:9
**worry** [1] - 26:15
**writing** [1] - 15:8
**wrongdoing** [2] - 22:22, 22:24
**wrongful** [2] - 5:10, 12:3
**wrongful-death** [2] - 5:10, 12:3

## X

**XL** [4] - 15:21, 16:5, 17:10, 19:12

## Y

**year** [2] - 7:19, 11:16
**years** [7] - 6:15, 6:18, 7:1, 12:9, 14:14, 16:14, 26:23
**yes/no** [1] - 22:8
**yield** [1] - 14:7
**York** [1] - 2:20

## Z

**ZIELIE** [2] - 1:20, 37:24
**Zielie** [2] - 37:21, 37:25