# Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide | 2010

## Major Checkpoints

- **Will notice effectively reach the class?**
  The percentage of the class that will be exposed to a notice based on a proposed notice plan can always be calculated by experts. A high percentage (e.g., between 70–95%) can often reasonably be reached by a notice campaign.

- **Will the notices come to the attention of the class?**
  Notices should be designed using page-layout techniques (e.g., headlines) to command class members' attention when the notices arrive in the mail or appear on the Internet or in printed media.

- **Are the notices informative and easy to understand?**
  Notices should carry all of the information required by Rule 23 and should be written in clear, concise, easily understood language.

- **Are all of the rights and options easy to act upon?**
  There should be no unnecessary hurdles that make it difficult for class members to exercise their rights to opt out, object, submit a claim, or make an appearance.

## Before Certification/Preliminary Settlement Approval

- **Can any manageability problems from notice issues be overcome?**
  Consider potential problems in reaching and communicating with class members—e.g., language barriers, class size, geographic scope—and whether a notice plan will be able to overcome such problems.

- **Can a high percentage of the proposed class be reached (i.e., exposed to a notice)?**
  Consider the breakdown of known and unknown class members, the age of any mailing lists, and the parties' willingness to spend necessary funds to fully reach the class.

- **Is it economically viable to adequately notify the class?**
  If the cost to reach and inform a high percentage of the class is not justified by a proposed settlement, an opt-out class may not be appropriate. Inability to support proper notice may also be evidence that the settlement is weak.

- **Will unknown class members understand that they are included?**
  If a well-written notice will leave class members in doubt as to whether they are included, consider whether the class definition, or the class certification, is appropriate.

## Upon Certification/Preliminary Settlement Approval

- **Do you have a "best practicable" notice plan from a qualified professional?**
  A proper notice plan should spell out how notice will be accomplished, and why the proposed methods were selected. If individual notice will not be used to reach everyone, be careful to obtain a first-hand detailed report explaining why not. See "Notice Plan" section below.

# Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide | 2010

☐ **Do you have unbiased evidence supporting the plan's adequacy?**
Be careful if the notice plan was developed by a vendor who submitted a low bid and might have incentives to cut corners or cover up any gaps in the notice program. In order to find the "best practicable" notice as Rule 23 requires, your own expert report may be advisable. This is especially true in the diminished adversarial posture in which settlement places the parties. It is also true at preliminary approval, before outsiders are aware of the proposed notice plan, which itself may limit the parties' awareness, in turn impacting your final approval decision.

☐ **Have plain language forms of notice been created?**
Draft forms of the notices should be developed, in the shape, size, and form in which they will actually be disseminated, for your approval before authorizing notice to the class. See "Notice Documents" below.

☐ **Will a qualified firm disseminate notice and administer response handling?**
There are many experienced firms that compete for administration of notice dissemination and claims and response handling. Appointing a qualified firm is important because errors may require re-notification, drain funds, delay the process, and threaten recognition of your final judgment.

## Notice Plan

☐ **Is the notice plan conducive to reaching the demographics of the class?**
The notice plan should include an analysis of the makeup of the class. There may be more women than men; it may skew older; it may be less educated than average. Each audience can be matched with the most efficient and effective methods of notice for reaching those people.

☐ **Is the geographic coverage of the notice plan sufficient?**
Notice for a class action should take steps to reach people wherever they may be located, and also take into account where most class members reside.

○ **Is the coverage broad and fair? Does the plan account for mobility?**
Class members choose to live in small towns as well as large cities. Be careful with notice exclusively targeted to large metropolitan newspapers. Class members move frequently (14–17% per year according to the U.S. Census Bureau), so purchasers in one state may now reside in another.

○ **Is there an extra effort where the class is highly concentrated?**
Evidence may show that a very large portion of class members reside in a certain state or region, and notice can be focused there, while providing effective, but not as strong, notice elsewhere.

☐ **Does the plan include individual notice?**
If names and addresses are reasonably identifiable, Rule 23(c)(2) requires individual notice. Be careful to look closely at assertions that mailings are not feasible.

○ **Did you receive reliable information on whether and how much individual notice can be given?**
Consider an expert review of the information you have been provided regarding the parties' ability to give individual notice. The parties may have agreed to submit a plan that does not provide sufficient individual notice in spite of the rule.

# Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide | 2010

- ○ ***Will the parties search for and use all names and addresses they have in their files?***
  If the parties suggest that mailings are impracticable, look to distinguish between truly unreasonable searches (e.g., the defendant has nuggets of data that could be matched with third-party lists by a new computer program and several man-years) and situations where a search would be difficult but not unreasonably burdensome (e.g., lists reside directly in the defendant's records but are outdated or expensive to mail to because of the volume). Rule 23 generally requires the latter.

- ○ ***Will outdated addresses be updated before mailing?***
  The plan should detail steps to update addresses before mailing, including postal service change-of-address records, and third-party address databases if the list is very old. Watch out for potentially ineffective "last known address" mailings.

- ○ ***Has the accuracy of the mailing list been estimated after updating efforts?***
  Look for information that indicates how accurate the mailing addresses will be after the planned address updating effort.

- ○ ***Has the percentage of the class to be reached by mail been calculated?***
  The parties should be able to indicate how great a percentage of the overall class will be reached by individual notice, so that the extent of any necessary additional notice can be determined.

- ○ ***Are there plans to re-mail notices that are returned as undeliverable?***
  Even after updating addresses before mailing, mail will be returned as undeliverable. Further lookup tactics and sources are often available, and it is reasonable to re-mail these notices.

- ○ ***Will e-mailed notice be used instead of postal mailings?***
  If available, parties should use postal mailing addresses, which are generally more effective than e-mail in reaching class members: mail-forwarding services reach movers, and the influx of "SPAM" e-mail messages can cause valid e-mails to go unread. If e-mail will be used—e.g., to active e-mail addresses the defendant currently uses to communicate with class members—be careful to require sophisticated design of the subject line, the sender, and the body of the message, to overcome SPAM filters and ensure readership.

- ❑ ***Will publication efforts combined with mailings reach a high percentage of the class?***
  The lynchpin in an objective determination of the adequacy of a proposed notice effort is whether all the notice efforts together will reach a high percentage of the class. It is reasonable to reach between 70–95%. A study of recent published decisions showed that the median reach calculation on approved notice plans was 87%.

- ❑ ***Are the reach calculations based on accepted methodology?***
  An affiant's qualifications are important here. Reach calculation methodology is commonly practiced in advertising and media-planning disciplines. Claims administrators are often accountants by training and may lack personal knowledge or the training to conduct reach analyses.

  - ○ ***Is the net reach calculation thorough, conservative, and not inflated?***
    Circulation figures for separate dissemination methods cannot simply be added to determine reach. Total audience must be calculated for each publication and the net must be calculated for a combination of publications. Be sure the reach calculation removes overlap between those people exposed to two or more dissemination methods (e.g., a person who receives a mailing may also be exposed to the notice in a publication).

# Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide | 2010

- ○ **Do the reach calculations omit speculative reach that only might occur?**
  Watch for estimated reach calculations that are based in part on speculative notice that might occur, e.g., news coverage about the lawsuit or settlement. Often, these news articles do not ultimately explain class members' rights, and the content is not in the court's control.

- ○ **Is any Internet advertising being measured properly?**
  Audiences of Internet websites are measured by "impressions." Total, or "gross," impressions of the entire website do not reveal how many people will view the notice "ad" appearing periodically on a particular page. Inflated audience data via Internet ads is common. It is very expensive to reach a significant percentage of a mass audience with Internet banner ads. Watch for suggestions that Internet ads and social network usage can replace all other methods. Reach, awareness, and claims will likely be very low when such a program is complete.

- ❏ **Is non-English notice necessary?**
  Consider the demographics of the class to determine whether notice is necessary in Spanish or another language. The number of class members whose native language is not English should guide you on whether to actively disseminate notice in other languages, or to simply make foreign language notices available at a website.

- ❏ **Does the notice plan allow enough time to act on rights after notice exposure?**
  Class members need time to receive a notice by mail or in a publication. A minimum of 30 days is necessary from completed dissemination before deadlines, with 60–90 days preferred. This allows for re-mailings, fulfillment of requests for more information, and consideration of rights and options.

- ❏ **Will key documents be available at a neutral website?**
  Class members should have access to information beyond the notice. Besides the summary notice and detailed notice (following the FJC examples at www.fjc.gov), it is reasonable to post the following documents at a neutral administrator's website dedicated to the case: the plaintiffs' complaint, the defendants' answer, your class-certification decision (in the event of a class certified for trial), and the settlement agreement and claim form (in the event of a settlement). Other orders, such as your rulings on motions to dismiss or for summary judgment, should ordinarily be made available as well.

- ❏ **Can the class get answers from a trained administrator or from class counsel?**
  Even the best notice will generate questions from class members. A toll-free number call center, an interactive website staffed by trained administrators, and class counsel who are accessible to the people they represent are reasonable steps to help class members make informed decisions.

## Notice Documents (also see Plain Language Notice Guide, below)

- ❏ **Have you approved all of the forms of the notices?**
  Before authorizing the parties to begin disseminating notices, you should ask for and approve all forms of notice that will be used. This includes a detailed notice; a summary notice; and information that will appear at the website and in any other form, such as an Internet banner, TV notice, and radio notice. See www.fjc.gov for illustrative notice forms for various cases. It is best to see and approve the forms of notice the way they will be disseminated, in their actual sizes and designs.

# Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide | 2010

☐ **Are the notices designed to come to the attention of the class?**
The FJC's illustrative notices, as also described in the accompanying *"Plain Language Notice Guide,"* explain how to be sure the notices are "noticed" by the casual-reading class member. With "junk mail" on the rise, and the clutter of advertising in publications, legal notices must stand out with design features long-known to communications pros.

- ○ ***Does the outside of the mailing avoid a "junk mail" appearance?***
  Notices can be discarded unopened by class members who think the notices are junk mail. A good notice starts with the envelope design, examples of which are at www.fjc.gov.

- ○ ***Do the notices stand out as important, relevant, and reader-friendly?***
  It is important to capture attention with a prominent headline (like a newspaper article does). This signals who should read the notice and why it is important. The overall layout of the notice will dictate whether busy class members will take time to read the notice and learn of their rights.

☐ **Are the notices written in clear, concise, easily understood language?**
Required by Rule 23 since 2003, it is also simply good practice to recognize that communicating legal information to laypeople is hard to do.

☐ **Do the notices contain sufficient information for a class member to make an informed decision?**
Consider the amount of information provided in the notice. Watch for omission of information that the lawyers may wish to obscure (such as the fee request) but that affects class members nonetheless.

☐ **Do the notices include the Rule 23 elements? Even the summary notice?**
Summary notices, whether mailed or published, encourage readership, and the FJC illustrative notices show that even summary notices can include all elements required by Rule 23(c)(2)(B). But an overly short summary notice, one that mostly points interested readers to a detailed notice, can result in most class members (who read only the summary notice) being unaware of basic rights.

☐ **Have the parties used or considered using graphics in the notices?**
Depending on the class definition or the claims in the case, a picture or diagram may help class self-identify as members, or otherwise determine whether they are included.

☐ **Does the notice avoid redundancy and avoid details that only lawyers care about?**
It is tempting to include "everything but the kitchen sink" in the detailed notice. Although dense notices may appear to provide a stronger binding effect by disclosing all possible information, they may actually reduce effectiveness. When excess information is included, reader burnout results, the information is not communicated at all, and claims are largely deterred.

☐ **Is the notice in "Q&A" format? Are key topics included in logical order?**
The FJC illustrative notices take the form of answers to common questions that class members have in class action cases. This format, and a logical ordering of the important topics (taking care to include all relevant topics) makes for a better communication with the class.

☐ **Are there no burdensome hurdles in the way of responding and exercising rights?**
Watch for notice language that restricts the free exercise of rights, such as onerous requirements to submit a "satisfactory" objection or opt-out request.

# Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide | 2010

☐ **Is the size of the notice sufficient?**
Consider the balance between cost efficiency and effectiveness. A smaller publication notice will save money, but too small and it will not afford room for a noticeable headline, will not fit necessary information, and will not be readable if using fine print.

## Claims Process

☐ **Is a claims process actually necessary?**
In too many cases, the parties may negotiate a claims process which serves as a choke on the total amount paid to class members. When the defendant already holds information that would allow at least some claims to be paid automatically, those claims should be paid directly without requiring claim forms.

☐ **Does the claims process avoid steps that deliberately filter valid claims?**
Close attention to the nature of a necessary claims process may help eliminate onerous features that reduce claims by making claiming more inconvenient.

☐ **Are the claim form questions reasonable, and are the proofs sought readily available to the class member?**
Watch for situations where class members are required to produce documents or proof that they are unlikely to have access to or to have retained. A low claims rate resulting from such unreasonable requirements may mean that your eventual fairness decision will overstate the value of the settlement to the class and give plaintiff attorneys credit for a greater class benefit than actually achieved.

☐ **Is the claim form as short as possible?**
A long, daunting claim form is more likely to be discarded or put aside and forgotten by recipients. Avoid replicating notice language or injecting legalistic terminology into the claim form which will deter response and confuse class members.

☐ **Is the claim form well-designed with clear and prominent information?**
Consider whether the claim form has simple, clearly worded instructions and questions, all presented in an inviting design. The deadlines and phone numbers for questions should be prominent.

☐ **Have you considered adding an online submission option to increase claims?**
As with many things, convenience is of utmost importance when it comes to claims rates. Today, many class members expect the convenience of one-click submission of claims. Technology allows it, even including an electronic signature. Claim forms should also be sent with the notice, or published in a notice, because many will find immediate response more convenient than going to a website.

☐ **Have you appointed a qualified firm to process the claims?**
You will want to be sure that the claims administrator will perform all "best practice" functions and has not sacrificed quality in order to provide a low price to win the administration business.

# Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide | 2010

☐ **Are there sufficient safeguards in place to deter waste, fraud, and/or abuse?**
The claims process, the claim form itself, and the claims administrator all play roles in ensuring that approved claims are valid claims, so that payments go to class members who meet the criteria. Closely monitoring the process, perhaps through a special master—or at least by requiring the parties to file full reports of claims made—is a good idea.

## After Notice/Before Trial or Final Settlement Approval

☐ **Did the notice plan achieve what it promised?**
Look for evidence that the notice plan reached the class members as well as anticipated.

☐ **What is the reaction of the class?**
You will want to look at the number and nature of any objections, as well as the number of opt-outs and claims. Special note: waiting for the claims deadline to expire before deciding on final approval ensures that you can look at a full picture of the fairness of the settlement. By so doing you will be able to judge the actual value of the settlement to the class and calculate attorney fees in relation to that value.

☐ **Have you made sufficient findings in the record?**
Consider, based on the evidence, making detailed findings so as to inhibit appellate review or to withstand a subsequent collateral review of your judgment.

☐ **Is any subsequent claims-only notice necessary?**
If you find the settlement fair, reasonable, and adequate, but the number of claims is low, you may consider additional notice to the class after final approval.