# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

**IN RE: VIOXX PRODUCTS**  
**LIABILITY LITIGATION**

MDL No. 1657

Section: L

**This document applies to:**  
*Poole v. Eichholz Law Firm, P.C., et al.*  
*E.D. La., Case No. 2:11-cv-1546*

Judge Eldon E. Fallon

Mag. Judge Knowles

## JOINT MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND MEMORANDUM IN SUPPORT THEREOF

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................. 1

PROCEDURALBACKGROUND.......................................................... 3

SUMMARY OF PROPOSED CLASS SETTLEMENT...........................7

SUMMARY OF NOTICE METHOD.....................................................8

SUMMARY OF CLAIMS.................................................................. 10

SUMMARY OF OPT-OUTS AND OBJECTIONS..................................10

ARGUMENT.................................................................................. 11

    A.    Pretrial Settlements of Complex Class Actions Are Favored ........... 11

    B.    Standards for Approval of Class Settlements.................................. 12

    C.    The Settlement Is Fair, Adequate, and Reasonable......................... 14

        1.    No Fraud or Collusion Exists....................................... 15

        2.    Continued Litigation Would Be Expensive and
            Protracted...................................................................... 16

        3.    The Stage of Proceedings is Appropriate for
            Evaluating Settlement................................................... 18

        4.    The Probabilities of Success Favor Approval of
            Settlement..................................................................... 19

        5.    The Range of Possible Recovery Favors Settlement… 20

        6.    The Opinions of Class Counsel Favor Settlement ....... 21

        7.    The Reaction of the Class Supports Approval of
            The Settlement Agreement…………........................... 23

D.      Certification of the Settlement Class is Proper…………................  24

      1.      The Settlement Class Fulfills Rule 23(a)'s Criteria for Class Certification........................................................  25

      2.      The Settlement Class Meets The Requirements of Rule 23(b)(3)................................................................  30

E.      The Notice Given Satisfies the Due Process Requirements Governing Notice of Class Actions .....................................................................  32

CONCLUSION...................................................................................................... 35

Plaintiff, on behalf of the Class,[1] and jointly with Defendants The Eichholz Law Firm, P.C. and Pacific Legal Funding, LLC, submit this Memorandum of Law in support of their Joint Motion for Final Approval of Class Settlement.

## INTRODUCTION

The Class Settlement before this Court for final approval settles a dispute arising out of litigation funding transactions between the Settlement Class Members and Defendant PLF, which transactions relate to Vioxx settlements obtained by clients of Defendant TELF.  In this class action, Plaintiff, individually and on behalf of all other Vioxx clients of Defendant TELF who accepted advances from Defendant PLF, asserted claims of fraud, breach of fiduciary duty, usury, and violation of the federal RICO statute. In addition to compensatory damages, Plaintiff and the putative class sought punitive damages and attorneys' fees. Defendants have denied and continue to deny each and every allegation brought by Plaintiff.

Following more than a year of intense discovery, the Parties subsequently engaged in substantive settlement discussions at the end of January 2013. The core terms of a proposed settlement were subsequently agreed upon and the Parties notified the Court via letter dated February 19, 2013.

---

[1] The capitalized terms used herein shall have the meanings set forth in the Class Settlement Agreement attached as Exhibit **"A"** to this Memorandum.

The Parties presented this Court with a proposed Class Action Settlement on March 26, 2013 and, by Order dated May 17, 2013, the Court preliminarily approved the proposed Settlement Agreement, conditionally certified the Settlement Class, directed notice of the proposed Settlement, and scheduled a Fairness Hearing ("Preliminary Approval Order"). In preliminarily approving the Settlement, the Court found that the Settlement Agreement was as "fair, reasonable and adequate, as negotiated and entered into at arm's length, in good faith, and free of collusion to the detriment of the Settlement Class . . . ." (Prelim. Approv. Order at 2, May 17, 2013, ECF No. 64411).

The Parties now move this Court for final approval of this Class Settlement. The Settlement, which establishes a Settlement Fund for the benefit of the Class, is in the total amount of $95,000.  The Settlement Fund will provide refunds for Class Members who have timely submitted claims of 75% of the PLF fees/interest/charges paid by such claimant for the PLF advance (exclusive of the principal amount of the advance).

This Settlement easily satisfies the requirements for final approval set forth in *Reed v. General Motors*, 703 F.2d 170, 172 (5th Cir. 1983).  First, this Court has already found that the Settlement was "fair, reasonable and adequate, as negotiated and entered into at arm's length, in good faith, and free of collusion to the detriment of the Settlement Class . . . ."[2] (Prelim. Approv. Order at 2, May 17, 2013, ECF No. 64411).  Second, the

---

[2]  The fact that this Court preliminarily approved the Settlement creates a strong presumption that the proposed Settlement is reasonable and should be finally approved. *Ass'n for Disabled Ams. v. Amoco Oil Co.*, 211 F.R.D. 457, 467 (S.D. Fla. 2002) ("[W]here, as here, the consent

Settlement is strongly endorsed by competent and experienced counsel after extensive discovery on the Class Members' claims. Third, with sufficient documentation of a Class Member's damages, the Settlement provides guaranteed recovery without the enormous expense, uncertainty, risk and delay of a trial and subsequent appeals.  Fourth, after an extensive notice program, there are no opt-outs from the Settlement and no objections have been filed.  In short, given the complexity of the litigation, the stage of the proceedings, the risks of establishing liability and damages, and the Class Members' reception of the Settlement, the Parties submit that the Settlement is fair, reasonable, and adequate and urge that it be finally approved.

## PROCEDURAL BACKGROUND

Plaintiff Verie Poole is the sister of Catherine Hunt, who died in 2001 as a result of taking the drug Vioxx.  Plaintiff, on behalf of her sister's estate, employed Defendant TELF in 2004 to assert all available claims against the manufacturer of Vioxx, which were consolidated in this Court as MDL 1657.  Defendant TELF associated the law firm of Gary, Williams, Parenti, Watson & Gary, P.L. ("the Gary Firm") in Florida to assist with prosecuting its Vioxx cases.  After several years of litigation, Plaintiff was informed by the Gary Firm in February 2009 that her sister's estate had been awarded a settlement of $1,155,281.20, although the timing of the settlement payment was unclear.

---

decree previously has been preliminarily approved, the decree is 'presumptively reasonable,' and an objector must overcome a 'heavy burden' to prove the settlement is unreasonable.").

- 3 -

Plaintiff contends that, prior to receiving any settlement funds, Plaintiff was contacted by agents or employees of Defendant TELF and informed of the availability of a lender who could provide Plaintiff with an advance of a portion of the anticipated Vioxx settlement funds.  Plaintiff contends that at the time she was contacted by Defendant TELF about an advance, she was not told that payment of the Vioxx settlement funds was eminent.  Plaintiff further contends that she ultimately agreed on March 23, 2009 to accept an advance of $20,000 based, in part, upon her belief that receipt of the settlement funds might not occur for quite some time.  Plaintiff also asserts that she was not informed of the close familial and business relationship between the agents and employees of Defendant TELF and Defendant PLF, from whom she received the advance.  Plaintiff received her initial installment of the Vioxx settlement a few weeks later and repaid her advance to Defendant PLF, along with $3,500 in interest and/or fees.

Plaintiff subsequently filed a class action lawsuit against Defendants in the Southern District of Georgia on June 6, 2011.  Plaintiff, individually and on behalf of all other Vioxx clients of Defendant TELF who accepted advances from Defendant PLF, asserted claims of fraud, breach of fiduciary duty, usury, and violation of the federal RICO statute.  In addition to compensatory damages, Plaintiff and the putative class sought punitive damages and attorneys' fees.  The action was subsequently transferred to this Court as part of MDL 1657.  Defendants filed a motion to remand this case back to

the Southern District of Georgia, which motion was denied by the Court on November 23, 2011.

Defendants answered Plaintiff's complaint and have denied any wrongdoing. Specifically, TELF has denied that it solicited its clients (or anyone else) to obtain advances from PLF. Defendants further assert that the familial relationship of the respective owners of the companies was expressly disclosed in writing to Plaintiff and each Class Member prior to their obtaining any advance from PLF and that all fees and charges associated with such advances also were fully disclosed by PLF. Defendants deny that the companies were not operated independently and have specifically denied that any proceeds or profits of PLF were shared with TELF. Defendant TELF further denies that it ever made any misrepresentation to Plaintiff or any other Class Member regarding the timing of the payment of any Vioxx settlement. In short, Defendants assert that Plaintiff and the Class Members obtained the benefit of advances against settlement funds (which were to be paid at some undetermined time in the future) and paid to PLF the bargained-for consideration for receiving that benefit.

The parties have engaged in extensive discovery in this matter. The parties have exchanged paper discovery and have obtained documents from the Gary Firm in Florida. The parties have reviewed the files from Defendant TELF pertaining to that firm's approximately 200 Vioxx clients. Plaintiff's deposition was conducted on November 16, 2012 and Plaintiff's expert was deposed on January 17, 2013. Two non-party witnesses

- 5 -

and former employees of Defendant TELF involved in the Vioxx cases were deposed on January 16, 2013.  Plaintiff conducted the deposition of the owner of Defendant PLF on January 21, 2013.

As a result of the information obtained during discovery, the Parties subsequently engaged in substantive settlement discussions at the end of January 2013.  During these discussions it was determined and agreed that the total number of Settlement Class Members is 25 (the names of these individuals are listed in Exhibit 1 to the Settlement Agreement).  It was further agreed that the total amount of all fees and charges paid to PLF by these Settlement Class Members in connection with their advances was $75,369.53.   The core terms of a proposed settlement were subsequently agreed upon and the Parties notified the Court via letter dated February 19, 2013.

The Parties presented this Court with a proposed Class Action Settlement on March 26, 2013.  By Order dated May 17, 2013, this Court granted preliminary approval of the proposed Settlement between the Parties, conditionally certifying the Settlement Class, ordering notice to potential Class Members, and providing potential Class Members with an opportunity either to exclude themselves from the Class or to object to the proposed Settlement. The Court also provisionally approved the procedure for giving notice and the forms of notice, and set a final Fairness Hearing to take place on August 27, 2013. (Prelim. Approv. Order, May 17, 2013, ECF No. 64411).

Since this Court's preliminary approval of the Settlement, Defendants have duly provided notice to all known putative Class Members by first-class mail to their current (if known) or their last known address(es), such last known address(es) as determined and/or confirmed by searches of three separate database search engines.  Where the searches produced different addresses for a particular potential class member, a separate Class Notice was mailed to each address for that potential class member.  In addition, notice of the Class Settlement was posted on this Court's Vioxx Products Liability MDL website.  (Declaration of Joseph Coomes ("Coomes Decl."), ¶¶ 3-4, 6, attached hereto as Exhibit **"B"**.)

**SUMMARY OF PROPOSED CLASS SETTLEMENT**

The proposed Settlement now before the Court for final approval will resolve the Action and all claims related thereto.  To implement this resolution, the Settlement Agreement establishes the following Settlement Class:

> All persons who entered into a litigation funding transaction with Pacific Legal Funding, LLC whereby such person received an advance relative to a Vioxx settlement obtained by a client or clients of Defendant TELF and, further, where such person paid to PLF (by a disbursement from the Vioxx settlement proceeds) some fee, interest or other charges, exclusive of the repayment of the principal amount of the advance.  Excluded from the Settlement Class are Defendants and any person, firm, trust, corporation, or other entity related or affiliated with Defendants including, without limitation, persons who are officers, directors, employees, associates or partners of the Defendants.

In consideration for the Class Settlement and release of all claims against the Released Parties, Defendants will establish the Settlement Fund outlined above.   The Settlement Amount will be paid into an Escrow Account as follows: $16,000.00 for the first month and $15,800.00 per month for the following five (5) months, the first payment to be made no later than thirty (30) days following the final approval of this Settlement.

In addition, Defendants have agreed to bear all costs associated with administering the Settlement, including the cost of Class Notice, the Escrow Agent, and the Escrow Account.  If an award for attorneys' fees and costs is approved by the Court pursuant to Federal Rule of Civil Procedure 23(h), the Settlement Fund will be the sole source for payment of any such Court-approved fees and costs incurred in prosecuting the Action. In light of the fact that the Settlement Fund of $95,000 is approximately $20,000 greater than <u>100%</u> of the PLF fees/interest/charges paid by <u>all</u> Class Members, there should be ample funds to apply towards the reasonable fees and expenses of Plaintiff's counsel.

SUMMARY OF NOTICE PROVIDED

Pursuant to the Preliminary Approval Order approving the form and method of dissemination of Class Notice, counsel for TELF arranged to provide copies of the approved Class Notice to the 25 potential members of the class in this case.  (Coomes Decl., ¶ 3.)

To effect such notice, TELF conducted searches for the current (or last known) addresses of the 25 potential members of the class using three separate database search

engines: Accurint, Intelius and PeopleSmart.  A spreadsheet reflecting the results of those

searches is attached to the Coomes Declaration as Exhibit A.  (*Id.*, ¶ 3.)  On May 23,

2013, TELF's counsel sent the approved Class Notice (which included the approved

claim form) by first class United States Mail to each of the complete addresses reflected

in Exhibit A.  (A true and correct copy of the Class Notice, with claim form, as mailed, is

attached to the Coomes Declaration as Exhibit B.) That is, where the searches produced

different addresses for a particular potential class member, a separate notice was sent to

each address for that potential class member.  (*Id.*, ¶ 4.)

As an additional form of notice, on or about May 20, 2013, this Court posted on its

Vioxx Product Liability MDL website the Preliminary Approval Order and Class

Settlement Agreement, as well as an announcement that a Fairness Hearing was

scheduled for August 27, 2013 at 9:00 a.m.  (*Id.*, ¶ 6.)

On April 4, 2013, counsel for the Defendants also provided notice of the class

settlement in conformance with 28 U.S.C. § 1715(a) and (b) of the Class Action Fairness

Act to the U.S. Attorney General, as well as the respective Attorneys General for the

states of Georgia, Kentucky, Louisiana, South Carolina and North Carolina, comprising

the states in which the potential class members reside. (*Id.*, ¶ 8.) Such notice letters were

sent by first class, certified United States Mail, return receipt requested. (A copy of the

notice letter sent to the U.S. Attorney General (omitting exhibits), which is identical in all

material respects to the letters sent to the state Attorneys General, is attached to the

Coomes Declaration as Exhibit D.)  TELF's counsel has received no responses or objections from any of these offices.  (*Id.*)

## SUMMARY OF CLAIMS

Consistent with the Court's Preliminary Approval Order, the Class Notice specified the deadline of July 22, 2013 (60 days after the mailing of Notice) for any potential class member to submit a claim, assert an objection to the class settlement, or submit a request to opt out of the settlement.  (Coomes Decl., ¶ 5.)

Subsequent to the Class Notice being sent, 17 of the 25 members of the proposed class timely submitted claim forms to TELF's counsel or to Plaintiff's counsel.  (A list of these class members is attached to the Coomes Declaration as Exhibit C.)  No claim forms were received after the July 22, 2013 claim deadline. (*Id.*, ¶ 7.) If the Class Settlement is approved, the total amount to be paid to such claimants (constituting 75% of the PLF fees/interest/charges paid by them) is $45,354.35.

## SUMMARY OF OPT-OUTS AND OBJECTIONS

As clearly described in the Class Notice, potential Class Members had the opportunity to exclude themselves from the Settlement (*i.e.*, "opt out") by mailing written requests for exclusion. A potential Class Member who opted out would not have received any benefits from the Settlement, but could have sued or continued to sue Defendants in the future. No Class Members opted out of the Settlement.   (Coomes Decl., ¶ 7.)

Class Members also had the chance to object and indicate a desire to express their opinions regarding the Settlement Agreement at the Fairness Hearing. The objections process allowed Class Members to inform the Court that they did not agree with the Settlement or some part of it.  To the extent any objecting Class Member desired to be heard at the Fairness Hearing, they were required to provide notice of that intention to appear and the basis of their objection.  (Prelim. Approv. Order, at 5-7.)  No Class Members objected to the Settlement and no Class Members have provided the required notice of an intention to appear at the Fairness Hearing for the purpose of objecting to the Settlement. (Coomes Decl., ¶ 7.)

## ARGUMENT

### A.    Pretrial Settlements of Class Actions Are Favored

Federal Rule of Civil Procedure 23(e) requires court approval for any compromise of a class action.  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997); *Evans v. Jeff D.*, 475 U.S. 717, 726 (1986). In determining whether to approve the Settlement, the Court should be guided by the strong judicial policy favoring pretrial settlement of class action lawsuits. *See, e.g.*, *Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982); *Smith v. Crystian*, 91 Fed. App'x 952, 955 (5th Cir. 2004); *Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983); *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977); *Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 843 (E.D. La. 2007); *Braud v. Transp. Serv. Co. of Illinois*, 2010 WL 3283398, at *3 (E.D. La. Aug. 17, 2010); *Airline Stewards*

- 11 -

*& Stewardesses Ass'n Local 550 v. Trans World Airlines, Inc.*, 630 F.2d 1164, 1166-67

(7th Cir. 1980) ("Federal Courts look with great favor upon the voluntary resolution of

litigation through settlement. . . . This rule has particular force regarding class action

lawsuits.").  This is, in part, because of the complexity and size of class actions:

> Particularly in class action suits, there is an overriding public interest
> in favor of settlement. . . . It is common knowledge that class action
> suits have a well-deserved reputation as being most complex. The
> requirement that counsel for the class be experienced attests to the
> complexity of the class action. . . . In these days of increasing
> congestion within the federal court system, settlements contribute
> greatly to the efficient utilization of our scarce judicial resources.

*Cotton*, 559 F.2d at 1331 (citation omitted); *see also Murphy Oil*, 472 F. Supp. 2d at 843.

Citing these principles, courts long have recognized that certification of a class for

settlement purposes is beneficial in resolving major class action disputes. *In re Beef*

*Indus. Antitrust Litig.*, 607 F.2d 167, 173-77 (5th Cir. 1979).

### B.    Standards for Approval of Class Settlements

Determining the fairness of class settlements is left to the sound discretion of the

district court, and an appellate court will not overturn the district court's decision absent a

clear showing of abuse of that discretion. *See Reed*, 703 F.2d at 172; *In re Chicken*

*Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. 1982); *Parker*, 667 F.2d at 1209;

*In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 218 (5th Cir. 1981); *Pettway v.*

*Am. Cast Iron Pipe Co.*, 576 F.2d 1157, 1214 (5th Cir. 1978); *Cotton*, 559 F.2d at 1331;

*Young v. Katz*, 447 F.2d 431, 432 (5th Cir. 1971); *see also In re U.S. Oil & Gas Litig.*,

- 12 -

967 F.2d 489, 493-94 (11th Cir. 1992). The Fifth Circuit has consistently held that, as a result of their highly-favored status, settlements "will be upheld whenever possible because they are a means of amicably resolving doubts and preventing lawsuits." *Miller v. Republic Nat'l Life Ins. Co.*, 559 F.2d 426, 428 (5th Cir. 1977).  Moreover, because settlements of class actions are particularly favored, they are not to be lightly rejected. *See Maher*, 714 F.2d at 455; *see also Cotton*, 559 F.2d at 1331; *Murphy Oil*, 472 F. Supp. 2d at 843.

"[T]he proponents of the [class] settlement bear the burden of demonstrating that the settlement is fair, reasonable, and adequate." *Murphy Oil*, 472 F. Supp. 2d at 844. However, in the absence of contrary evidence, there is a presumption "in favor of the settlement's fairness." *Id.* at 843; *see also United States v. Tex. Educ. Agency*, 679 F.2d 1104, 1108 (5th Cir. 1982); *Camp v. The Progressive Group*, 2004 WL 2149079, at *7 (E.D. La. Sept. 23, 2004) ("[A] court may presume that a proposed settlement is fair and reasonable when it is the result of arm's length negotiations.").

Applying these principles, a court should not engage in a trial on the merits when considering the propriety of a settlement:

> It cannot be overemphasized that neither the trial court in approving the settlement nor [the appellate court] in reviewing that approval have the right or the duty to reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute.

*Cotton*, 559 F.2d at 1330; *see also Murphy Oil*, 472 F. Supp. 2d at 843 ("The Court may not resolve contested issues of fact or law, but instead is concerned with the overall

fairness, reasonableness, and adequacy of the proposed settlement as compared to the alternative of litigation."). The trial court is not required to decide the merits of the action or substitute a different view of the merits for that of the parties or counsel. *Maher*, 714 F.2d at 455 n.31 ("In other words, in determining the fairness, reasonableness, and adequacy of a proposed settlement, neither the district court nor the appellate court on review, should reach ultimate conclusions on the issues of fact and law underlying the dispute."); *Tex. Educ. Agency*, 679 F.2d at 1108 (in approving a class settlement "we do not thereby reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute, as we recognize that normally a settlement is a process of compromise in which, in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with the litigation, . . . rather than an attempt to precisely delineate legal rights") (internal quotations and citations omitted).

### C.   **The Settlement Is Fair, Adequate, And Reasonable**

In evaluating proposed class action settlements under the principles set forth above, the Fifth Circuit has established a six-factor test for determining the fairness, adequacy, and reasonableness of a class settlement:

(1)   whether evidence exists that the settlement was obtained by fraud or collusion;

(2)   the complexity, expense, and likely duration of the litigation;

(3)   the stage of the litigation and available discovery;

- 14 -

(4)     the probability that plaintiffs will prevail on the merits;

(5)     the range of possible recovery and certainty of damages; and

(6)     the opinions of class counsel, class representatives, and absent class members.

*Newby v. Enron Corp.*, 394 F.3d 296, 301 (5th Cir. 2004) (citing *Reed*, 703 F.2d at 172). When considering the six *Reed* factors, "the court should keep in mind the strong presumption in favor of finding a settlement fair." *Purdie v. Ace Cash Express, Inc.*, No. 301CV1754L, 2003 WL 22976611, at *4 (N.D. Tex. Dec. 11, 2003). Courts in the Fifth Circuit should adhere to this fairness presumption "especially when doing so will result in significant economies of judicial resources — absent evidence weighing against approval." *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 650 (N.D. Tex. 2010). As discussed below, each of the six *Reed* factors favors final approval of the Settlement.

### 1.     <u>No Fraud or Collusion Exists</u>

In the absence of any evidence of actual fraud or collusion between class counsel and defense counsel, a court may presume that no fraud or collusion occurred. *Murphy Oil*, 472 F. Supp. 2d at 846; *Klein*, 705 F. Supp. 2d at 651; *Camp*, 2004 WL 2149079, at *7. "A strong presumption exists in favor of settlement if the district court determines that the settlement resulted from arms-length negotiations between experienced counsel and was not tainted by fraud or collusion." *Murphy Oil*, 472 F. Supp. 2d at 844.

This Court has already found that the proposed Settlement Agreement was "fair, reasonable and adequate, as negotiated and entered into at arm's length, in good faith, and free of collusion to the detriment of the Settlement Class . . ."[3] (Prelim. Approv. Order at 2, May 17, 2013, ECF No. 64411). This finding was based on evidence regarding the course of conduct between the Parties, which clearly demonstrated that the Settlement Agreement is the product of hard-fought litigation, not fraud or collusion, and on proof that all counsel vigorously represented their respective clients' interests throughout this litigation, including the negotiation process. (Declaration of Mark A. Tate ("Tate Decl."), ¶ 22 , attached hereto as Exhibit **"C"**; Coomes Decl., ¶ 9.) Given the evidence of arm's length negotiations and the lack of evidence of any impropriety, the Court may presume that the proposed Settlement is fair and reasonable. *See Camp*, 2004 WL 2149079, at *7.

## 2.    Continued Litigation Would Be Complex and Protracted

"In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *See* 4 NEWBERG ON CLASS ACTIONS § 11.50 (4th ed.). Where, as here, it is apparent that continuing the litigation will require a substantial financial and time commitment from

---

[3]  The fact that this Court preliminarily approved the Settlement creates a strong presumption that the proposed Settlement is reasonable and should be finally approved. *Ass'n for Disabled Ams. v. Amoco Oil Co.*, 211 F.R.D. 457, 467 (S.D. Fla. 2002) ("[W]here, as here, the consent decree previously has been preliminarily approved, the decree is 'presumptively reasonable,' and an objector must overcome a 'heavy burden' to prove the settlement is unreasonable.").

the parties, the reasonableness of approving a negotiated settlement is heightened. *See Klein*, 705 F. Supp. 2d at 651. "The public interest favoring settlement is especially apparent in the class action context where claims are complex and may involve a large number of parties, which otherwise could lead to years of protracted litigation and sky-rocketing expenses." *Murphy Oil*, 472 F. Supp. 2d at 843.

Notwithstanding the extensive discovery already completed in this matter, significant hurdles remain before the Parties would have any finality. Given the number of potential plaintiffs, this litigation could go on for years if not settled. Such litigation would undoubtedly require significant resources and time for all parties. In addition, both sides of this case would likely have appealed any class certification decision, as well as an unfavorable trial outcome, thereby prolonging the time and expense of this litigation. (Tate Decl. at ¶ 16; Coomes Decl., ¶ 10.) Accordingly, even if the plaintiffs ultimately prevailed, that success would come only after years of proceedings and an outlay of considerable money by all parties. In contrast, approval of this Settlement will provide Class Members with a recovery much sooner than would be possible following an uncertain and protracted trial and appellate process. When judged against the alternative—expensive and protracted litigation—it is clear that this Settlement satisfies this prong of the *Reed* test.

### 3.    The Stage of Proceedings is Appropriate for Evaluating Settlement

In applying this factor, courts ask "whether the parties have obtained sufficient information 'to evaluate the merits of the competing positions' . . . [and] whether the parties have obtained sufficient information about the strengths and weaknesses of their respective cases to make a reasoned judgment about the desirability of settling the case on the terms proposed . . . ." *In re Educ. Testing Servs.*, 447 F. Supp. 2d 612, 620-21 (E.D. La. 2006). Formal discovery need not be complete in order for the parties to be in a position to accurately evaluate the fairness of a class settlement. *Newby*, 394 F.3d at 306; *Murphy Oil*, 472 F. Supp. 2d at 847. The Fifth Circuit has held that discovery is not necessary for final approval, provided that the interests of the class have not been prejudiced by the settlement negotiations, and that substantial factual bases exist on which to premise settlement. *Newby*, 394 F.3d at 306; *cf. Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 639 (5th Cir. 2012) (upholding approval of class settlement even though no formal discovery had been taken).

In light of the extensive amount of discovery that has been completed—including numerous depositions; multiple sets of written interrogatories and requests for production; and expert work, the Court may presume that the Parties possess "sufficient information about the strengths and weaknesses of their respective cases to make a reasoned judgment about the desirability of settling the case on the terms proposed," *In re Educ. Testing Servs.*, 447 F. Supp. 2d at 620-21, and that the Settlement represents an

- 18 -

informed, educated, and fair resolution of this dispute, *see Murphy Oil*, 472 F. Supp. 2d

at 847. In cases such as this—where discovery is virtually complete at the time the Parties

reach a negotiated resolution—this third prong of the *Reed* test is easily satisfied.

### 4.     The Probabilities of Success Favor Approval of Settlement

Under this prong of the *Reed* test, the Court compares the settlement terms "with

the likely rewards the class would have received following a successful trial of the case."

*Reed*, 703 F.2d at 172.  Careful to avoid "try[ing] the case in the settlement hearing[],"

*id.*, the Court must "compare the terms of the compromise with the likely rewards of

litigation," *In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 83 (S.D.N.Y. 2007).

Through discovery, the Parties have evaluated the strengths and weaknesses of

their claims and defenses. There can be little doubt that neither side can expect a

complete victory at trial that would not be subject to the potential risk and delay of

appeal. *See*, *e.g.*, *Murphy Oil*, 472 F. Supp. 2d. at 848-49 (even where it was clear that oil

was on plaintiffs' properties, legal and factual obstacles of establishing both

negligence/fault/liability and the amount of damages weighed in favor of settlement); *In

re Dell, Inc.*, No. A-06-CA-726-SS, 2010 WL 2371834, at *6 (W.D. Tex. June 11, 2010)

(approving class settlement and noting that the plaintiffs "fac[ed] a significant risk the

class members would recover nothing at all"). In addition to the challenges borne by

Plaintiff, Defendants face a long, expensive battle, the uncertainties inherent in jury trials,

and the risk of punitive damages being presented at such trials. Finally, even if the cases

against the Defendants were to proceed to trial, both Parties would appeal any unfavorable judgment, further draining resources available for recovery to Class Members. Accordingly, this *Reed* factor favors final approval of the proposed Class Settlement. *See Dell*, 2010 WL 2371834, at *6.

### 5.    The Range of Possible Recovery Favors Settlement

The fifth *Reed* factor requires a court to determine "the value of the settlement in light of the potential for recovery." *In re Shell Oil Refinery*, 155 F.R.D. 552, 563 (E.D. La. 1993). To assess the fairness of a class settlement, a court should consider "whether the settlement's terms fall within a reasonable range of recovery, given the likelihood of the plaintiffs' success on the merits." *Murphy Oil*, 472 F. Supp. 2d at 849-50. When considering the possible range of recovery, a court should keep in mind that "[c]ompromise is the essence of settlement." *Id.* At 850 (quoting *Cotton*, 559 F.2d at 1330)). "[I]nherent in compromise is a yielding of absolutes and an abandoning of highest hopes." *Klein*, 705 F. Supp. 2d at 649 (citing *Cotton*, 559 F.2d at 1330). Thus, "[a] proposed settlement need not obtain the largest conceivable recovery for the class to be worthy of approval; it must simply be fair and adequate considering all the relevant circumstances." *Id.*; *see also Pettway*, 576 F.2d at 1214 n.69 ("[C]ompromise is the essence of settlement, and the settlement need not accord the plaintiff class every benefit that might have been gained after full trial.").

- 20 -

As this Court explained in *In re Educational Testing*, 447 F. Supp. 2d 612 (E.D. La. 2006):

> In considering the range of possible recovery, the Court need not consider recoveries that are beyond the range of the most minimal probability. Thus, engaging in an exercise that posits on the high end a recovery in which all class members would recover significant . . . damages is too unrealistic to be useful.

*Id.* at 622. More recently, this Court noted that "[w]hile the individual payments contemplated under the Settlement Agreement are potentially modest, they avoid the need for any further litigation . . . by individual class members." *Ridgely v. F.E.M.A.*, No. 07-2146, 2010 WL 5140833, at *2 (E.D. La. Dec. 13, 2010).

The Settlement proposed here is valued at $95,000. Individuals will receive 75% of the PLF fees/interest/charges paid by such claimant for the PLF advance (exclusive of the principal amount of the advance).  The Settlement before the Court provides significant benefits and relief to the Class Members who, even if successful in Court, would possibly have to wait years for any recovery. The value of the proposed Settlement is fair and reasonable in light of the strong possibility of limited recovery, great expense and delay, and the risks of proceeding to trial. (Tate Decl. at  ¶ 20.)

### 6.   The Opinions of Class Counsel Favor Settlement

The Parties' counsel are the court's main source of information about the fairness, adequacy, and reasonableness of a class settlement. *Murphy Oil*, 472 F. Supp. 2d at 852. As a result, "[t]he Fifth Circuit has repeatedly stated that the opinion of class counsel

should be accorded great weight." *Klein*, 705 F. Supp. 2d at 649; *see also Newby*, 394 F.3d at 309 ("[T]he weight the district court attached to the opinions of class counsel, relative to those of the [] Objectors, was justified in light of their superior sophistication."); *Cotton*, 559 F.2d at 1330 ("[T]he trial court is entitled to rely upon the judgment of experienced counsel for the parties."). Class counsel's opinion "should be presumed reasonable because they are in the best position to evaluate fairness due to an intimate familiarity with the lawsuit." *Murphy Oil*, 472 F. Supp.2d at 852.

Plaintiff's counsel are experienced class action attorneys, with substantial experience both litigating and settling class actions, and are thoroughly familiar with the factual and legal questions at issue. (Tate Decl. at ¶s 6-14.)  This litigation, including the extensive discovery, has been ongoing for almost two years, affording the parties the opportunity to apprise themselves fully of the strengths and weakness of the claims and defenses and obtain "an adequate appreciation of the merits of the case before negotiating" the Settlement. *In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 813 (3d Cir. 1995). After exchanging thousands of documents, taking numerous depositions, engaging in motion practice, and participating in an arms-length and adversarial negotiation process, Plaintiff's counsel has concluded that the proposed Settlement is fair, adequate, and reasonable for the Class. (Tate Decl. at ¶ 20). Plaintiff's counsel's determination that the Settlement is in the best interest of the Class "must be accorded great weight." *Pettway*, 576 F.2d at 1216.

7. **The Reaction of the Class Supports Approval of The Settlement Agreement**

Although the Class Members' reception of the Settlement is not a formal consideration enumerated by *Reed*, numerous courts have observed that "[a] favorable reception by the Class constitutes 'strong evidence' of the fairness of a proposed settlement and supports judicial approval." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y.), *aff'd*, 117 F.3d 721 (2d Cir. 1997); *see also Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1378 (9th Cir. 1993); *In re Mid-Atl. Toyota Antitrust Litig.*, 605 F. Supp. 440, 444 (D. Md. 1984). Courts often view the existence of a small number of objections as indicative of the adequacy of the settlement. *See*, *e.g.*, *Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1313 (3d Cir. 1993) ("Less than 30 of approximately 1.1 million shareholders objected. This is an infinitesimal number."); *Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 118-19 (3d Cir. 1990) (twenty-nine objections out of 281 member class "strongly favors settlement").

The Class in this case has reacted very favorably to the Settlement. Pursuant to this Court's Order, direct notice was sent to all 25 potential Class Members and notice of the proposed Settlement was posted on this Court's Vioxx Litigation website. No Class Members opted out. (Coomes Decl., ¶ 7). No Class Members have objected to the Settlement, nor have any Class Members provided notice of their intention to appear at the Fairness Hearing. (*Id.*) As this Court has explained, "[t]he absence or small number of objections may provide a helpful indication that the settlement is fair, reasonable, and

- 23 -

adequate." *Murphy Oil*, 472 F. Supp. 2d at 852 (affirming settlement where 93% of the class accepted the settlement by not opting out or excluding themselves); *see also In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at *10 (C.D. Cal. 2005) ("It is established that the absence of a large number of objectors to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members."). Accordingly, the reaction of the Class to the Settlement weighs heavily in favor of final approval.

The above-cited circumstances support final approval of the Settlement. The Settlement will provide significant benefits and relief to the Class Members. As the Court in *In re Shell Refinery*, 155 F.R.D. 552 (E.D. La. 1993), aptly pointed out:

> The Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, it has been held proper to take the bird in hand instead of a prospective flock in the bush.

*Id.* at 560 (citation omitted).

### D.   Certification of the Settlement Class is Proper

This Court has already conditionally certified the proposed Settlement Class. (Prelim. Approv. Order at 2, May 17, 2013, ECF No. 64411.) Certifying the Settlement Class now in connection with the final approval of the Settlement is consistent with other recent Eastern District of Louisiana decisions explaining that "[s]ettlement class—cases certified as class actions solely for settlement—can provide significant benefits to class

- 24 -

members and enable the defendants to achieve final resolution of multiple suits." *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, MDL No. 2047, 2012 WL 92498, at *8 (E.D. La. Jan. 10, 2012).

In connection with final approval of this Settlement, the Parties seek certification of the Settlement Class pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3). Rule 23(a) requires that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims and defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members" and that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." In applying these principles, the Supreme Court has cautioned that when "[c]onfronted with a request for a settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems." *Amchem*, 521 U.S. at 619-20.

### 1.    The Settlement Class Fulfills Rule 23(a)'s Criteria For Class Certification

#### a.    The Numerosity Requirement is Satisfied

Rule 23(a)(1) requires that members of a class be so numerous that it would be impracticable to join them individually. *Pederson v. La. State Univ.*, 213 F.3d 858, 868

(5th Cir. 2000); *In re Vioxx Prods. Liab. Litig.*, 239 F.R.D. 450, 459 (E.D. La. 2006). The term "impracticable" does not mean impossible. *Robidoux v Celani*, 987 F.2d 931, 935 (2d Cir. 1993); *Harris v. Palm Springs Alpine Estates, Inc.,* 329 F.2d 909 (9th Cir. 1964). Impracticability itself depends on an examination of the specific facts of each case and imposes no absolute numerical limitations. *See General Tel. Co. of Northwest, Inc. v. EEOC*, 446 U.S. 318, 329 (1980); *see also Gurmankin v. Costanzo*, 626 F.2d 1132, 1135 (3d Cir. 1980) ("We believe that the numerosity requirement must be evaluated in the context of the particular setting . . .").

The number of plaintiffs in the class is one factor, but not the exclusive consideration of the court with respect to the issue of numerosity. If geographic or other practical concerns preclude joinder as a realistic matter, this criteria is met. In *Ansari v. New York University,* 179 F.R.D. 112, 114 - 15 (S.D. NY 1998), the court stated other factors that may be considered include:

> (1) the judicial economy that will arise from avoiding multiple actions; (2) the geographic dispersion of members of the proposed class; (3) the financial resources of those members; (4) the ability of the members to file individual suits; and (5) requests for prospective relief that may have an effect on future class members. *See Robidoux v. Celani,* 987 F.2d 931, 936 (2d Cir. 1993).

A factor pointing towards certification arises when the potential class members do not reside in the same judicial district. *See Riordan v. Smith Barney*, 113 F.R.D. 60, 62 (N.D. Ill. 1986) (joinder impracticable where the twenty-nine proposed class members resided

in nine states; *Markham v. White,* 171 F.R.D. 217, 221 (N.D. Ill. 1997) (class of 35 to 40 plaintiffs sufficient to satisfy numerosity where class members resided in different states).

In this case, numerosity is satisfied.  The Class is comprised of a readily identifiable group – those individuals who paid some fee or charge to Defendant PLF to receive an advance from PLF with respect to a Vioxx settlement received by a client of Defendant TELF.  There are 25 such individuals, none of whom has opted out of the Settlement Class.  (*See* Coomes Decl., ¶ 7.) These individuals are located in several different states (including, Georgia, Florida, South Carolina, North Carolina and Louisiana) and the average claim amount for each such individual is approximately $3,000.  Given this number of members, their geographic dispersion and the relatively small size of their claims when compared to the prohibitive cost of pursuing individual litigation, the numerosity factor specified in Rule 23(a)(1) is satisfied.

### b.      The Commonality Requirement is Satisfied

The commonality requirement of Rule 23(a)(2) is not a demanding test for a settlement class, and is "easily met in most cases." *In re Chinese-Manufactured Drywall*, 2012 WL 92498, at *10. Commonality is fulfilled when the resolution of at least one issue will affect all or substantially all of the putative class members. *Mullen*, 186 F.3d at 625; *Vioxx*, 239 F.R.D. at 459; *see In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 227 F.R.D. 553, 561 (W.D. Wa. 2004) ("*PPA*") ("This [commonality] requirement can be satisfied, where class members' claims have divergent facts, by the existence of a shared

legal issue, or it can be satisfied where there are disparate legal remedies available to the claimants, but where there is a common core of salient facts."). In *PPA*, the district court held that commonality was met for settlement purposes in part because "[a]ll members of the Class allege[d] injuries from the ingestion of a Dexatrim product containing *PPA*." *Id.*

Similarly, here, members of the proposed Class allege injury and damages arising out of a common nucleus of operative facts—the advance of settlement funds by PLF to clients and family of clients of TELF with Vioxx-related claims. Because analysis of these facts will affect all or substantially all of the putative Class Members, the commonality requirement of Rule 23(a)(2) is satisfied.

### c.     The Typicality Requirement is Satisfied

Like commonality, the typicality requirement of Rule 23(a)(3) is not demanding for a class settlement. *Mullen*, 186 F.3d at 625. A class representative's claims are typical of the proposed class when his or her claims and legal theories arise from a singular nucleus of operative facts as the claims and legal theories of absent class members. *Id.* "Typicality does not require that the claims of the class representatives be identical to those of the other class members." *PPA*, 227 F.R.D. at 561 (citing *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003)). In fact, representative claims are "typical if they are reasonably co-extensive" with those of other class members. *Id.* (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)).

- 28 -

Here, the class representative's claims are typical of the Class because Plaintiff advances substantially the same theory of liability. Additionally, all claims in this case require proof of breach of a legal duty arising from the advancement of Vioxx settlement funds (*i.e.*, all claims share the same standard of care).  Accordingly, the typicality prong of Rule 23(a) is satisfied.

### d.      The Adequacy of Representation Requirement is Satisfied

Rule 23(a)(4)'s adequacy requirement requires a court to consider: (1) whether the class representatives have interests that conflict with the class, (2) whether the class representatives will vigorously pursue the litigation on behalf of the class, and (3) whether class counsel are competent, qualified, experienced and able to conduct the litigation. *Mullen*, 186 F.3d at 625.

In this case, the interests of the class representative are sufficiently aligned with those of the Class, and the class representative has vigorously pursued this litigation on the Class Members' behalf. (Tate Decl. at ¶ 18.) The class representative is a member of the Settlement Class and avers that she has sustained injuries representative of the class as a whole.  Accordingly, the class representative's interests are not antagonistic to those of other Class Members.

Furthermore, class counsel easily meets the adequacy requirement. Counsel for Plaintiff the Class are competent and experienced class action and complex litigation attorneys, who have an extensive track record of successful litigation throughout the

United States. (Tate Decl. at ¶ 6-13.)  They have taken on various roles in numerous mass tort class actions and multi-district litigation and have wide-ranging expertise in the resolution of matters that have proven beneficial to class members. (*See id.*) Accordingly, the adequacy of representation requirement is satisfied.

### 2.    The Settlement Class Meets The Requirements of Rule 23(b)(3)

A class may be certified as a Rule 23(b)(3) class if the court finds that (1) questions of law or fact common to the class predominate over individualized questions, and (2) a class action is superior to other available methods for the fair and efficient adjudication of the dispute. Fed. R. Civ. P. 23(b)(3). Unlike a litigated class, a settlement class does not require consideration of manageability. *See Amchem*, 521 U.S. at 620 ("[A] district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial" (internal citation omitted)).

### a.    The Predominance Requirement Is Satisfied

The predominance inquiry tests whether a proposed class is cohesive enough to warrant adjudication by representation. *Amchem*, 521 U.S. at 623; *In re Serzone Products Liab.*, 231 F.R.D. 221, 239 (S.D. W. Va. 2005) ("*Serzone*"). "To predominate, common issues must form a significant part of individual cases." *Vioxx*, 239 F.R.D. at 460 (citing *Mullen*, 186 F.3d at 626); *see In re Fibreboard Corp.*, 893 F.2d 706, 712 (5th Cir. 1990). Because there is no trial of a settlement class, individualized questions, such as causation

or the application of different state laws to class members from different states, do not destroy class cohesion and thus are not barriers to class certification. *Klein*, 705 F. Supp. 2d at 668-69; *Serzone*, 231 F.R.D. at 240; *PPA*, 227 F.R.D. at 562-63. Accordingly, in assessing whether common questions predominate, courts have adopted a pragmatic approach that emphasizes the efficiencies of class treatment for settlement. *See Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 297 (3d Cir. 2011) (explaining that predominance tests whether the class action would "achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated").

Here, the common issues plainly represent a significant part of all Class Members' claims in the context of the Settlement. Fundamentally, the claims of each member of the Class arise out of alleged common behavior by the Defendants. Accordingly, there is one duty and breach question applicable to all claims, namely whether Defendants' acted improperly in their dealings with the Class Members with respect to advances of Vioxx settlement funds. For a settlement of a tort action such as this, predominance is more easily satisfied because, quite obviously, the Defendants allegedly caused plaintiffs' harm through a single course of conduct common to all class members.

### b. The Superiority Requirement is Satisfied

The superiority inquiry tests whether resolving a dispute on a class basis will "achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about

other undesirable results." *Serzone*, 231 F.R.D. at 240 (quoting *Amchem*, 521 U.S. at 615). Settling this case as a class action will achieve significant economies of time, effort, and expense for the Class and for the Court. *See id.*

The Parties have conducted numerous depositions and reviewed thousands of pages of document production, and Plaintiff has advanced significant expenses in prosecuting this litigation. (Tate Decl. at ¶ 16.) Trials for each of the putative Class Members, if tried individually, would logically cause the costs of litigation to increase exponentially for all Parties. (*Id.*)

Approving this Settlement will end unnecessary expenditures by all parties in this litigation that has already revealed facts sufficient to evaluate both the relative strength of the claims of plaintiffs and the strength of the corresponding defenses. Distribution of the Settlement Funds will give Class Members some immediate relief in lieu of the potential for years of litigation. *See PPA*, 227 F.R.D. at 563-64 (in approving class action settlement, court noted that several defense verdicts had been reached in state court *PPA* cases, that "mass tort litigation places an unusual strain on court dockets," and that each individual claim, "absent the Settlement, could result in costly, time-consuming proceedings").

### E. The Notice Given Satisfies the Due Process Requirements Governing Notice of Class Actions

This Court has previously approved the form and content of the Notice to Class Members. (Prelim. Approv. Order at 2, May 17, 2013, ECF No. 64411.)  In doing so, the

Court found that the form and content of the Notice, as well as the manner of providing notice to the Settlement Class as outlined in the Class Settlement Agreement, constituted "the best notice practicable under the circumstances and allows Class Members a full and fair opportunity to consider the proposed Settlement." (*Id.*) To satisfy Rule 23's due process prerequisites, both notices were written in plain English and explained (1) the deadlines to exercise various legal options; (2) who is included in the Settlement; (3) the Settlement benefits, including the types of claims eligible for compensation; (4) how to receive a payment; (5) what Class Members give up by receiving a payment: (6) the consequences for failing to act; and (7) how to obtain additional information regarding the Settlement.

The law is clear that the direct mailed notice to known putative Class Members provided in this case is sufficient to satisfy due process. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-77 (1974); *see also In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1097 (5th Cir. 1977). The Class Notice is written in plain and straightforward language consistent with Rules 23(c)(2)(B) and 23(e)(1). The Notice objectively and neutrally apprised all Class Members of the nature of the action, the definition of the Class sought to be certified for purposes of the Settlement, the Class claims and issues, that Class Members may enter an appearance through an attorney if they so desire, that the Court will exclude from the Class any Class Member who opts out, the procedures and deadlines for opting out, and

the binding effect of a class judgment on Class Members under Rule 23(c)(3)(B). The Notice additionally disclosed the date, time and location of the Fairness Hearing and the procedures and deadlines for the submission of objections to any aspect of the Settlement. The Notice provided clear instructions to Class Members regarding their options under the Settlement Agreement. Therefore, the Notice for this proposed Class Settlement, as set forth in the Class Settlement Agreement, is the "best notice that is practicable under the circumstances," *see* Fed. R. Civ. P. 23(c)(2)(B), and unquestionably satisfies due process considerations.

For the foregoing reasons, the method of Notice was more than adequate under the circumstances. Notice is only required to be the best practicable, "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Phillips Petroleum Co.*, 472 U.S. at 812. The form and content of the Notice, together with the manner of dissemination set forth above, was reasonably calculated to reach all Class Members and was the best form of notice available under the circumstances, in satisfaction of federal law and due process. No Class Member made any objections with respect to the content, adequacy or method of dissemination of the Notice. Accordingly, the due process requirements for personal jurisdiction over all Class Members have been satisfied.

## CONCLUSION

The proposed Settlement is fair, adequate and reasonable to the Plaintiff and the Settlement Class, and complies with the applicable requirements of Rule 23. The Settlement brings comprehensive closure to a category of claims which, both legally and practically, would be difficult to resolve through the alternative mechanism of multiple trials. For these reasons, the Parties respectfully request that the Court give final approval to the Settlement, consistent with the evidence and supporting law. The Parties further request that the Court enter the Final Order and Judgment attached to this memorandum of law as Exhibit **"D."**

Dated:   August ___, 2013.

Respectfully submitted,

   /s/ *Mark A. Tate*
Mark A. Tate
Georgia Bar No. 698820
C. Dorian Britt
Georgia Bar No. 083259
Counsel for Plaintiff Verie Poole and the putative class

**TATE LAW GROUP, LLC**
2 East Bryan Street
Suite 600
Savannah, Georgia  31401
Tel: (912) 234-3030
Fax: (912) 234-9700
Email: marktate@tatelawgroup.com

- 35 -

  /s/ *Joseph Coomes*

Joseph Coomes
Georgia Bar No. 184999
Counsel for Defendant The Eichholz Law Firm, P.C.

**MCCONNELL & SNEED, LLC**
990 Hammond Drive
Suite 840
Atlanta, Georgia 30328
Tel: (404) 220-9994
Fax: (404) 665-3476
Email: ajc@mcconnellsneed.com

  /s/ *Jonah Flynn*

Jonah Flynn
Georgia Bar No. 266555
Counsel for Defendant Pacific Legal Funding, Inc.

**FLYNN LAW FIRM, LLC**
945 East Paces Ferry Road
Suite 2525
Atlanta, GA 30326
Tel: (404) 835-9660
Fax: (404) 835-6005

CERTIFICATE OF SERVICE

I hereby certify that on August 6, 2013, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

This 6th day of August, 2013.

*/s/ Mark A. Tate*
Mark A. Tate
Georgia Bar No. 698820
C. Dorian Britt
Georgia Bar No. 083259
Counsel for Plaintiff Verie Poole and the putative class

**TATE LAW GROUP, LLC**
2 East Bryan Street
Suite 600
Savannah, Georgia  31401
Tel: (912) 234-3030
Fax: (912) 234-9700
Email: marktate@tatelawgroup.com

- 37 -