## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **IN RE: VIOXX PRODUCTS** | MDL No. 1657 |
| **LIABILITY LITIGATION** | Section: L |

**This document applies to:**
*Poole v. Eichholz Law Firm, P.C., et al.*　　　Judge Eldon E. Fallon
*E.D. La., Case No. 2:11-cv-1546*　　　　　　Mag. Judge Knowles

## MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF COSTS, AND INCENTIVE PAYMENT AND MEMORANDUM IN SUPPORT THEREOF

**COME NOW** Class Counsel Mark A. Tate, C. Dorian Britt and Tate Law Group, LLC (collectively "Class Counsel"), who submit the following Motion for Award of Attorneys' Fees, Reimbursement of Costs, and Incentive Payment and Memorandum in Support Thereof. No class member or other party has objected to this request or any term of the settlement. In addition, no person has requested to appear at the Fairness Hearing.

## I. INTRODUCTION

On May 17, 2013, this Court granted preliminary approval to the class action settlement between Defendants The Eichholz Law Firm, P.C. ("TELF") and Pacific Legal Funding, LLC ("PLF"), and the Class. (Prelim. Approval Order at 2, May 17, 2013, ECF No. 64411). Pursuant to the Order preliminarily approving the Settlement Agreement and Fed. R. Civ. P. 23(h), Plaintiff is required to petition the Court for an award of attorneys'

fees and costs and an incentive payment to the class representative.

Class Counsel seeks an award of $43,867.43 in attorneys' fees and reimbursement of costs for their efforts in this class action proceeding.  In the Parties' Joint Motion for Preliminary Approval of Class Settlement, Defendants agreed not to oppose an award by this Court of 33.3% of the gross settlement fund ($95,000.00) for attorneys' fees and expenses.  Consistent with the Court's Preliminary Approval Order, the Class Notice specified the deadline of July 22, 2013 (60 days after the mailing of Notice) for any potential class member to submit a claim.  To date, 17 of the 25 members of the proposed class timely submitted claim forms to TELF's counsel or to Plaintiff's counsel.  No claim forms were received after the July 22, 2013 claim deadline.  If the Class Settlement is approved, the total amount to be paid to such claimants (constituting 75% of the PLF fees/interest/charges paid by them) is $45,354.35.  Thus, $49,645.65 would remain to cover attorneys' fees, reimbursement of litigation costs, and an incentive award for the Class Representative.

In light of this, Class Counsel requests that they be permitted to recover their reasonable expenses associated with case of $12,201.08 in addition to a one-third fee of $31,666.35.  Such a change would have no impact on the amounts that the Class Members who filed claim forms will receive in settlement.  All potential Class Members were already made aware via the Notice that was mailed that Class Counsel would seek an amount of 1/3 of the gross settlement to pay for attorneys' fees and expenses.  No Class Member has objected to that requested fee.  In accordance with Rule 23(h), Class

Counsel is mailing a copy of this motion with exhibits, via overnight delivery, to all Class Members who submitted a claim form. A cover letter in substantially the same form as Exhibit *"A"* attached hereto will accompany the copy of this motion sent to the Class Member who submitted a claim form. Such mailing is being sent as of the date of the filing of this motion to the addresses provided by the Class Members on their returned claim forms.

This modified fee is not significantly greater than what was originally requested. There is no reason to believe that any of the seventeen (17) Class Members who returned claim forms would have any objection to this modified fee and cost request. Class Counsel has discussed this revised fee and cost request with defense counsel. Counsel for TELF and PLF have stated that their clients doe not consent to such a request and reserve the right to object thereto.

This case was actively litigated for several years, during which motions and briefs were filed, thousands of documents were produced by defendants and were exhaustively analyzed and catalogued, and substantial preparation was required for the numerous depositions taken in the matter. These efforts fully support the attorney fee and cost award, whether analyzed under a common benefit percentage or blended approach.

The requested fee award is fair and reasonable as it comprises 33% of the total settlement value of this case of $95,000, which is well within the range of acceptable percentage-of-recovery in this Circuit. Such an amount is substantially similar to the 32% fee cap placed by this Court on all plaintiffs' counsel involved in the underlying Vioxx

litigation.[1]  Benefits obtained by the settlement are the monetary payment to 17 members

of the class in a total amount of $45,354.35, which represents 75% of the PLF

fees/interest/charges paid by them.  Approval of the fee and cost award should be granted

given the relief afforded to the class members and the amount of work undertaken to

achieve these results.  Class Counsel also seeks $1,000 for an incentive award to the class

representative, Verie Poole, for her time and efforts in assisting with this case.


## II.    PROCEDURAL HISTORY AND FACTUAL BACKGROUND

Plaintiff Verie Poole is the sister of Catherine Hunt, who died in 2001 as a result of

taking the drug Vioxx.  Plaintiff, on behalf of her sister's estate, employed Defendant

TELF in 2004 to assert all available claims against the manufacturer of Vioxx, which

were consolidated in this Court as MDL 1657.  Defendant TELF associated the law firm

of Gary, Williams, Parenti, Watson & Gary, P.L. ("the Gary Firm") in Florida to assist

with prosecuting its Vioxx cases.  After several years of litigation, Plaintiff was informed

by the Gary Firm in February 2009 that her sister's estate had been awarded a settlement

of $1,155,281.20, although the timing of the settlement payment was unclear.

Plaintiff contends that, prior to receiving any settlement funds, Plaintiff was

contacted by agents or employees of Defendant TELF and informed of the availability of

a lender who could provide Plaintiff with an advance of a portion of the anticipated Vioxx

---

[1]  See Order & Reasons, dated August 27, 2008.

settlement funds.  Plaintiff contends that at the time she was contacted by Defendant TELF about an advance, she was not told that payment of the Vioxx settlement funds was eminent.  Plaintiff further contends that she ultimately agreed on March 23, 2009 to accept an advance of $20,000 based, in part, upon her belief that receipt of the settlement funds might not occur for quite some time.  Plaintiff also asserts that she was not informed of the close familial and business relationship between the agents and employees of Defendant TELF and Defendant PLF, from whom she received the advance.  Plaintiff received her initial installment of the Vioxx settlement a few weeks later and repaid her advance to Defendant PLF, along with $3,500 in interest and/or fees.

Plaintiff subsequently filed a class action lawsuit against Defendants in the Southern District of Georgia on June 6, 2011.  Plaintiff, individually and on behalf of all other Vioxx clients of Defendant TELF who accepted advances from Defendant PLF, asserted claims of fraud, breach of fiduciary duty, usury, and violation of the federal RICO statute.  In addition to compensatory damages, Plaintiff and the putative class sought punitive damages and attorneys' fees.  The action was subsequently transferred to this Court as part of MDL 1657.  Defendants filed a motion to remand this case back to the Southern District of Georgia, which motion was denied by the Court on November 23, 2011.

Defendants answered Plaintiff's complaint and have denied any wrongdoing. Specifically, TELF has denied that it solicited its clients (or anyone else) to obtain advances from PLF.  Defendants further assert that the familial relationship of the

respective owners of the companies was expressly disclosed in writing to Plaintiff and each Class Member prior to their obtaining any advance from PLF and that all fees and charges associated with such advances also were fully disclosed by PLF. Defendants deny that the companies were not operated independently and have specifically denied that any proceeds or profits of PLF were shared with TELF. Defendant TELF further denies that it ever made any misrepresentation to Plaintiff or any other Class Member regarding the timing of the payment of any Vioxx settlement. In short, Defendants assert that Plaintiff and the Class Members obtained the benefit of advances against settlement funds (which were to be paid at some undetermined time in the future) and paid to PLF the bargained-for consideration for receiving that benefit.

The parties have engaged in extensive discovery in this matter. The parties have exchanged paper discovery and have obtained documents from the Gary Firm in Florida. The parties have reviewed the files from Defendant TELF pertaining to that firm's approximately 200 Vioxx clients. Plaintiff's deposition was conducted on November 16, 2012 and Plaintiff's expert was deposed on January 17, 2013. Two non-party witnesses and former employees of Defendant TELF involved in the Vioxx cases were deposed on January 16, 2013. Plaintiff conducted the deposition of the owner of Defendant PLF on January 21, 2013.

As a result of the information obtained during discovery, the Parties subsequently engaged in substantive settlement discussions at the end of January 2013. During these discussions it was determined and agreed that the total number of Settlement Class

Members is 25 (the names of these individuals are listed in Exhibit 1 to the Settlement Agreement).  It was further agreed that the total amount of all fees and charges paid to PLF by these Settlement Class Members in connection with their advances was $75,369.53.   The core terms of a proposed settlement were subsequently agreed upon and the Parties notified the Court via letter dated February 19, 2013.

The Parties presented this Court with a proposed Class Action Settlement on March 26, 2013.  By Order dated May 17, 2013, this Court granted preliminary approval of the proposed Settlement between the Parties, conditionally certifying the Settlement Class, ordering notice to potential Class Members, and providing potential Class Members with an opportunity either to exclude themselves from the Class or to object to the proposed Settlement. The Court also provisionally approved the procedure for giving notice and the forms of notice, and set a final Fairness Hearing to take place on August 27, 2013. (Prelim. Approv. Order, May 17, 2013, ECF No. 64411).

## III.    VALUE OF THE SETTLEMENT

Essential to this Court's determination of the appropriate amount of attorneys' fees is an analysis of the value of the settlement. A careful analysis of the settlement, comprised of total value of $95,000.00, supports the conservative conclusion that the value of this settlement is significant, thereby justifying the requested attorneys' fees and costs.

This settlement calls for the creation of a Settlement Fun totaling $95,000.00.

The Settlement Amount will be paid into an Escrow Account as follows: $16,000.00 for the first month and $15,800.00 per month for the following five (5) months, the first payment to be made no later than thirty (30) days following the final approval of this Settlement.  Those 17 Class Members who returned claim forms will receive reimbursement of 75% of the PLF fees/interest/charges paid by them, for a total of $45,354.35.  Defendants agreed to pay, separate from the Settlement Fund, the cost of disseminating notice, administering the settlement, and paying claims.

## IV.  ATTORNEYS' FEES AND COST ANALYSIS

Class Counsel seeks $43,867.43 in attorneys' fees and reimbursement of expenses incurred in the litigation of this case.  Whether under the percentage of benefit, lodestar, or blended method of compensation, this amount is reasonable and should be awarded by the Court. The settlement resulted in no objections and no opt-outs.  Class Counsel respectfully asks the Court to grant the requested fee and cost award.

A.   The Requested Fee is Reasonable Under the Common Benefit
     Percentage of  Recovery Analysis

An award based on the percentage of the common fund serves important policy goals in addition to providing access to our legal system for many who would otherwise be unable to finance today's expensive litigation.  The nature of the contingency fee system permits greater recovery for successful cases, thereby offsetting the losses from unsuccessful ones. Use of the percentage fee award furthermore favors prompt resolution

of litigation.  The requested fee of 33%, plus reimbursement of reasonable costs, is

extremely reasonable, given the size of the class and the benefits received by the class

members.

### 1.    Common Benefit Doctrine

Under the "common benefit" doctrine, first articulated by the Supreme Court over

a century ago, counsel whose efforts obtain, protect, preserve or make available

substantial benefits to a class of persons are entitled to attorneys' fee based upon the

worth of the benefit to the class. *Newberg on Class Actions*, §14.01 (3rd ed. 1992);

*Trustees v. Greenough*, 105 U.S. 527, 26 L.Ed. 1157 (1881).   It has long been recognized

that a person who maintains a suit that results in the creation of a benefit in which others

have a common interest may obtain fees from that common benefit.  *Boeing Co. v. Van*

*Gemert*, 444 U.S. 472, 478 (1980) ("a litigant or a lawyer who recovers a common fund

for the benefit of persons other than himself or his client is entitled to a reasonable

attorneys' fee from the fund as a whole.").  The Fifth Circuit, as well as other federal

circuits, hold similarly.  *See, e.g., Barton v. Drummond Co.*, 636 F.2d 978, 982 (5th Cir.

1981) ("it is well-settled that the 'common benefit' or 'common fund' equitable doctrine

allows for the assessment of attorneys' fees against a common fund created by the

attorneys' efforts"); *In re Diet Drugs*, 582 F.3d 524, 540-41 (3rd Cir.)

### 2.    Percentage of Common Benefit Approach is Favored Across the Nation

The Supreme Court has consistently held that the percentage of recovery approach

is an appropriate methodology for awarding Class Counsel's fees in a common fund case.
*See, e.g., Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) ("under the 'common fund doctrine,' . . . a reasonable fee is based on a percentage of the fund bestowed on the class"); *see also The Manual of Complex Litigation* § 14.121 (4 ed. 2004) (reporting that "the vast majority of courts of appeals now permit or direct district courts to use the percentage method in common-fund cases").  The common fund method has been preferred to the lodestar method by Courts in this Circuit and throughout the country[2], as well as legal commentators.[3]  While the United States Supreme Court has approved the percentage method in common fund cases, it has never formally adopted the lodestar method in common fund cases. *See Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 773–74 (11th Cir.1991) (reading *Blum v. Stenson*, 465 U.S. 886, 900 n. 16, 104 S.Ct.

---

[2]  *See e.g. In re Combustion*, 968 F.Supp. 1116, 1132 (W.D. La. 1997); *In re Cabletron*, 239 F.R.D. 30, 37 (D.N.H. 2006) (stating that the percentage method "allows courts to award fees from the fund in a manner that rewards counsel for success and penalizes it for failure"); *In re Activision Sec. Litig.*, 723 F.Supp. 1373, 1378 (N.D.Cal.1989).

[3]  The lodestar method of fee award has been roundly criticized by scholars and repudiated by most commentators. *See e.g., Macey & Miller, the Plaintiffs' Attorney Role in Class Action and Derivative Litigation: Economic Analysis and Recommendations for Reform*, 58 U.CHI.L.REV. 1, 4, 59-61 (1991) (identifying problems associated with applying the lodestar and recognizing the percentage of recovery method as superior); Coffee, *Understanding the Plaintiff's Attorney: The Implications of Economic Theory for Private Enforcement of Law Though Class and Derivative Actions*, 86 Col.l. Rev. 669, 691, 724-25 (1986); Miller, *Attorneys Fees in Class Actions*, (Federal Judicial Center 1980); Coffee, *Rescuing the Private Attorney General: Why the Model of Lawyer as Bounty Hunter is Not Working*, 42 Md. L. Rev. 215 (1983); *Court Awarded Attorney Fees, Report of the Third Circuit Task Force*, 108 F.R.D. 237 (1985) (Lodestar method referred to as a "cumbersome, enervating and often surrealistic process of preparing and evaluating fee Petitions."). Beginning in 1885 with the Supreme Court's decision in *Central R,.R. Co. v. Pettus*, 113 U.S. 116, 127-28 (1885), for over 100 years the overwhelming weight of authority has approved the use of a percentage method in computing fees in common fund cases.

1541, 79 L.Ed.2d 891 (1984), as the Supreme Court's "acknowledgment" of the

percentage method in common fund cases).

A task force formed of judges and lawyers in the U.S. Third Circuit identified the

following as the most salient of the problems inherent in the lodestar analysis: 1) increase

in the "workload of an already overtaxed judicial system;" 2) elements used in the

Lodestar process are "insufficiently objective and produce results that are far from

homogeneous;" 3) "confusion and a lack of predictability" in its administration; and 4)

the Lodestar method creates a disincentive for the early settlement of cases; rather, it

gives attorneys an incentive to accumulate hours spent on the case, often at the expense of

the interests of the plaintiff class. *Task Force Report*, 108 F.R.D. 237, at 246–49. The task

force concluded that fee awards in common fund cases should be based on some

percentage of the fund. *Task Force Report*, 108 F.R.D. at 255.

These same problems are recognized by courts in this circuit. *In In re Harrah's

Entertainment, Inc. Sec. Litig.*, 1998 WL 832574, at *4 (E.D. La., Nov. 25, 1998), the

district court judge noted:

> "The Court will apply the percentage fee method in accordance with the
> request of counsel. The Court does not believe that application of the
> lodestar method would result in a more reasonable award of fees.
> Moreover, application of the lodestar method would be unduly
> burdensome."

   3.    *The Fifth Circuit Has Never Reversed a Percentage Fee Award*

Although the clear trend of the majority of courts in common fund cases is to use

the percentage method, the Fifth Circuit has not expressly adopted this approach. 4

*Newberg on Class Actions* § 14:10.  Nevertheless, numerous district courts within the Fifth Circuit continue to use the percentage method for evaluating attorneys' fees in common fund cases.  Nor has the Fifth Circuit "reversed a district court's application of the percentage method." *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 586 F. Supp. 2d 732, 748 (S.D. Tex. 2008), quoting *Shaw v. Toshiba America Information Sys.*, 91 F.Supp.2d 942, 967, n. 15 (E.D.Tex. 2000).

4.      *The Requested Common Benefit Fee Percentage is Reasonable*

Class Counsel's requested fee of one-third, plus reimbursement of reasonable costs, is virtually identical to the fee approved by this Court in the underlying Vioxx litigation, and therefore is fair and reasonable. Other district courts in this state have determined that fee award of one-third is fair and reasonable in a class action context. *See e.g. Dominion Motor Cars v. Satellink Paging, LLC*, Case No. 03-173 (M.D. La.) (33.3% of the maximum settlement value); *Accounting Outsourcing, LLC v. Monroe Systems for Business*, Case No. 03-755 (M.D. La.) (33.3% of the maximum settlement value); *Accounting Outsourcing, LLC v. Bridge 21, Inc.*, Case No. 03-824 (M.D. La.) (33.3% of the maximum settlement value); *Accounting Outsourcing, LLC v. Clear Channel Communications*, Case No. 03-847 (M.D. La.) (33.3% of the maximum settlement value); *Survey Communications v. Corporate Express, Inc.*, Case No. 05-40 (M.D. La.) (33.3% of the maximum settlement value).

**B.**     **The Blended Approach, Comparing the Benchmark Percentage to the Twelve *Johnson* Factors, Further Supports the Requested Award**

Class Counsel submits that the common benefit percentage method is the most acceptable method for determining the appropriate fee award in this case.  However, even under a blended approach used by some courts within this Circuit (and this Court in the underlying Vioxx litigation), the attorneys' fees and costs award is reasonable and should be approved.

As mentioned above, the blended approach was used by this Court in *In re Vioxx Products Liability Litigation*, 760 F.Supp. 2d 640 (E.D. La. 2010).  It involves the following three-step analysis: 1) determining the value of the benefit received by the claimants and selecting an initial benchmark percentage; 2) determining whether the benchmark should be adjusted based on the application of the *Johnson* factors[4]; and 3) conducting a rough lodestar analysis to cross-check the reasonableness of the percentage fee award. *Id*. at 652.  This analysis further affirms the reasonableness of the attorney fee sought in this matter.

_____

[4]  The *Johnson* factors are: 1) the time and labor required; 2) the novelty and difficulty of the questions; 3) the skill requisite to perform the legal service properly; 4) the preclusion of other employment by the attorney due to acceptance of the case; 5) the customary fee; 6) whether the fee is fixed or contingent; 7) time limitations imposed by the client or the circumstances; 8) the amount involved and the results obtained; 9) the experience, reputation, and ability of the attorneys; 10) the "undesirability" of the case; 11) the nature and length of the professional relationship with the client; and 12) awards in similar cases. *Id*. at 717-19.

*1.      Value of the Benefit/Selecting Benchmark Percentage*

The total settlement value is $95,000.00. As the jurisprudence cited in the preceding section reflects, federal courts in this circuit have routinely accepted a benchmark percentage of 33.3%.  Class counsel's requested fee of 33.3% is well within this accepted benchmark.

*2.      The Johnson Factors Support the Requested Fee Award or Justify an Increased Fee*

Each of the applicable *Johnson* factors support the requested fee award.

a.      <u>"Time and labor; undesirability of the case; novelty and difficulty of the question involved, and the skill required to perform the legal services properly"</u>

The complex rules and regulations surrounding short-term loans, coupled with the involvement of a law firm's duties and obligations to its clients, requires specialized skill and experience to navigate, particularly in the context of a class action.   Substantial skill was required to navigate the litigation to a successful conclusion.

The likely outcome of the case was unclear at the time it was filed. The number of class members that would be involved was unknown and the time and cost associated with the litigating the matter could not be estimated. Nevertheless, Class Counsel filed this action, knowing the possibility existed that they would not obtain any recovery for the class. The risk assumed by Class Counsel in handling the case on a contingency basis is substantially significant, especially when viewed in light of the strong defenses asserted by Defendants at every stage in this proceeding.

Class Counsel have satisfactorily performed all duties and responsibilities delegated to them by the Court in a highly capable manner for the best interests of the Class. The requisite effort necessary to achieve a favorable result in this action are self-evident and fully supported by the record.  Class Counsel submits its expense detail pertaining to this case as Exhibit 1 to the Declaration of M. Tate, attached hereto as Exhibit *"B"*.

        b.    <u>"Likelihood of preclusion of other employment; Time limitations imposed by the client or the circumstances"</u>

Class Counsel spent many hours litigating this case. As the record reflects, substantial time commitment was necessary to properly prosecute this case that, at times, affected their ability to perform work on other cases.  Several attorneys with Plaintiff's law firm were involved in this litigation, who but for their dedication to this case, could have worked on other matters.

        c.    <u>"The customary fee for similar work in the community; whether the fee is fixed or contingent; the experience, reputation, and ability of the attorneys"</u>

In typical plaintiff cases, a contingency attorney's fee of 40% is usual, customary, and reasonable.  Accordingly, the requested fee is well within the range of customary fees for this type and amount of work, particularly given the favorable result obtained. The fee requested in this matter is contingent and subject to the Court's final assessment and approval. Class Counsel have handled numerous class action cases over the past decade in several states and forums.  This experience makes Class Counsel qualified to handle this

class action case and justifies the fees sought.

          d.    <u>"The amount involved and the results obtained; comparable awards in similar cases"</u>

Class Counsel negotiated a reimbursement of 75% of the PLF fees/interest/charges paid by class members.  The settlement in this case provide significant benefits to class members.  Most of the Class Members who filed claim forms will receive more than $1,000.  This is an exceptional result given the various liability issues presented in the case.  Under these circumstances, it was possible that class members could have been left with no recovery; instead, real benefits were obtained through Class Counsel's efforts.

          e.    <u>"The nature and length of the professional relationship with the client"</u>

Plaintiff Verie Poole, as the class representative, was very involved in this litigation since its commencement.  Ms. Poole was periodically apprised of the status of the proceedings throughout the litigation, and continues to receive updates about the case. Several meetings were conducted with Ms. Poole, including one for the purpose of preparing her for her deposition.  Identities of other class members was not possible at the outset of this litigation such that communication with them was not possible.  However, Class Counsel was involved with the design of the publication notice to ensure each of them was apprised of the settlement and had the opportunity to participate in the settlement.

### 3. A "Rough" Lodestar Cross-Check Confirms the Fee Award is Appropriate

The lodestar method is used in the Fifth Circuit solely to confirm the reasonableness of fees. Given the consistent criticism of the lodestar method, it is not used to calculate a specific fee, but only to provide a "broad" or "rough" cross check on the reasonableness of the fee arrived at by the percentage method." *In re Vioxx*, 760 F.Supp.2d at 652. In fact, the analysis need entail "neither mathematical precision nor bean counting" and the Court "need not scrutinize each time entry; reliance on representations by class counsel as to total hours may be sufficient." *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306 (3d Cir. 2005).

To perform a lodestar cross-check, courts first look at the number of hours spent by counsel on the case. The Court multiplies the reasonable hours worked by reasonable billing rates to calculate a time-fee value for the common benefit work performed; it then divides the percentage-fee value by the time-fee value to determine a lodestar multiplier and to test whether the percentage fee value represents an unreasonable award or "windfall" over the reasonable value of the work performed. *In re Vioxx Products Liab. Litig.*, 760 F. Supp. 2d at 658. The following lodestar crosscheck supports the conclusion that the requested attorney fee award is fair and reasonable and should be approved.

### a. Plaintiffs' Counsel Devoted a Reasonable Number of Hours to This Litigation

To effectively prosecute this class action, Class Counsel had to commit a significant amount of time, personnel and expenses to this litigation on a contingency

basis with absolutely no guarantee of compensation.  (Tate Decl. at ¶ 11).  These efforts

included, but were certainly not limited to: 1) investigating the factual and legal claims

and filing this action; 2) responding to a motion to remand; 3) propounding and

responding to discovery; 4) extensive document review; 5) preparing for and attending

multiple depositions; 6) engaging in hard-fought settlement negotiations with Defendants;

and 7) negotiating the Settlement Agreement and the exhibits.

To date, Class Counsel has expended approximately 135 hours in litigating this

matter (including attorney and paralegal time), and have incurred $12,201.08 in expenses

prosecuting this action for the benefit of the Settlement Class. (See Tate Decl., ¶s 10-11).

The hours spent by Class Counsel on this litigation may be significant, but are

appropriately and reasonably incurred, given the nature of the claims asserted, the

hard-fought and lengthy nature of the settlement negotiations, the discovery that the

parties engaged in, and the number of parties and law firms involved.

b.     *Class Counsel's Hourly Rates Are Reasonable*

Class Counsel claim hourly rates ranging from $400 per hour for lead counsel,

$250 per hour for senior associates, $175 per hour for junior associates, and $75 per hour

for paralegal/assistants.  (See Tate Decl. at ¶ 8).  These hourly rates "reasonably reflect

the prevailing [billable time] rates in this jurisdiction."[5]   An attorney's requested hourly

---

[5] *See Altier, Id.* at 22 (awarding $150-400 per hour for attorneys, and $95-105 for
paralegals) *Turner v. Murphy Oil USA, Inc.*, 472 F.Supp. 2d 830, 868-69 (E.D. La. 2007)
(awarding $300-400 per hour for PSC members, $100-200 for associate attorneys, and $50-80
for paralegal time); *In re Educational Testing Services*, 447 F.Supp. 2d at 633 (awarding $350
per hour for partners and $150 for associates).

rate is prima facie reasonable when he requests that the lodestar be computed at his or her customary billing rate, the rate is within the range of prevailing market rates and the rate is not contested. *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 328 (5th Cir. 1995). Class Counsel's hourly rates, which are on par with the prevailing market rates of attorneys in this Circuit, are reasonable, particularly given counsel's demonstrated skill, experience and reputation in the area of complex class action litigation.

c.  *Applicable Multiplier Confirms Reasonableness of Attorney Fee and Costs Request*

The use of multipliers is acceptable in a common fund case and multipliers in the range of 2.17 or higher are regularly awarded. See *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 n. 6 (9th Cir.2002) (citing *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 341 (3d Cir.1998). In the present case, the approximate hourly fees generated by Class Counsel total $32,375. (See Tate Decl. at ¶ 12). Using a multiplier of only 2.0, it is apparent Plaintiff's total award of fees and reimbursement of costs is well within reasonable bounds of the lodestar method.

## V. INCENTIVE AWARD TO CLASS REPRESENTATIVE IS APPROPRIATE

Class Counsel respectfully requests that the Court approve an incentive award in the amount of $1,000 to the class representative, Verie Poole. Incentive awards for class representatives are routinely provided to encourage individuals to undertake the responsibilities of representing the class and recognize the time and effort spent in the case. Courts "commonly permit payments to class representatives above those received in

settlement byclass members generally." *Smith v. Tower Loan of Miss., Inc.*, 216 F.R.D. 338, 367-68 (S.D.Miss.2003); *see also In re Catfish Antitrust Litig.*, 939 F.Supp. 493, at 503-4.  These incentive payments compensate them for their additional time and efforts spent in assisting counsel to prosecute these actions, which benefitted the classes as a whole. *Camp v. Progressive Corp.*, 2004 WL 2149079 (E.D. La. 2004).

Ms. Poole has dedicated a significant amount of her time assisting in the litigation of this suit. Among other things, she assisted Class Counsel in: (1) providing evidence and gathering facts for this case, as well as assisting in the preparation of the Complaint that was filed; (2) collecting her documents, and providing responses to Defendants' discovery requests; (3) meeting with Class Counsel in preparation for her deposition; (4) appearing for deposition for over four hours; and (5) staying abreast of the litigation and settlement negotiations. (Tate Decl. at ¶ 13).  Ms. Poole's efforts and time should not go unrecognized. Thus, Class Counsel respectfully requests that the Court approve the modest incentive award of $1,000 for the class representative.

## VI.    CONCLUSION

Class Counsel's request for an award of $43,867.43 in attorneys' fees and costs is fair and reasonable, regardless of the manner it is analyzed, given the substantial relief afforded to the class members and the amount of work undertaken to achieve these results.  Class counsel request that their requested fee and cost award, together with the $1,000 incentive award to the class representative for her time and efforts in assisting

with this case, be approved by this Court.

Dated:   August 6, 2013.

Respectfully submitted,

  /s/ *Mark A. Tate*
Mark A. Tate
Georgia Bar No. 698820
C. Dorian Britt
Georgia Bar No. 083259
Counsel for Plaintiff Verie Poole and the
settlement class

**TATE LAW GROUP, LLC**
2 East Bryan Street
Suite 600
Savannah, Georgia  31401
Tel: (912) 234-3030
Fax: (912) 234-9700
Email: marktate@tatelawgroup.com