IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | ) | MDL NO. 1657 |
| | ) | |
| PRODUCTS LIABILITY LITIGATION | ) | SECTION: L |
| | ) | |
| | ) | JUDGE FALLON |
| THIS DOCUMENT RELATES TO: | ) | |
| *Ratliff v. Merck & Co., Inc.*, | ) | |
| No. 04-CI-01493 (Pike Cir. Ct.) | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO STAY VIOXX-RELATED CONSUMER-PROTECTION CLAIMS IN KENTUCKY STATE COURT AND ENJOIN FURTHER PROSECUTION OF SUCH CLAIMS**

James Ratliff is pursuing a single-state class action in Kentucky state court that overlaps with the nationwide settlement class that this Court has preliminarily approved.  Although the proposed MDL settlement provides substantial relief to Kentucky consumers – and includes a broader group of Kentucky consumers than Mr. Ratliff's competing case – Mr. Ratliff's counsel has repeatedly sought to undermine the MDL settlement with one goal in mind:  securing hefty attorneys' fees from his competing state-court action.

To date, Mr. Ratliff's counsel has sought to intercede in the notice process, delay the notice period and intervene in the suit in order to challenge the settlement.  This conduct is interfering with the MDL settlement, which is the product of years of litigation before this Court, and would resolve all remaining consumer-protection class actions involving Vioxx.  The Court has patiently addressed each of Mr. Ratliff's counsel's efforts to undermine the MDL settlement, but if he continues to pursue his state-court case and engages in publicity efforts to destabilize the MDL settlement, the Court's efforts to oversee a global resolution will be compromised.  For these reasons, the Court should stay Mr. Ratliff's case pending final approval of the MDL

settlement, just as it did under similar circumstances in *In re Chinese-Manufactured Drywall Products Liability Litigation*, MDL No. 2047, 2011 U.S. Dist. LEXIS 62222 (E.D. La. June 9, 2011).  It should also enjoin Mr. Ratliff's counsel from further attempts to prosecute the case.

## BACKGROUND

### A. Mr. Ratliff

James Ratliff – a former user of Vioxx – brought suit in Kentucky state court on behalf of himself and a proposed class of Kentucky residents who purchased Vioxx, alleging that he suffered economic losses in purchasing the drug because Merck failed to disclose its alleged cardiovascular risks.  (*See, e.g.*, Am. Compl. ¶ 30 ("*Ratliff* Compl."), *Ratliff v. Merck & Co.*, No. 04-CI-01493 (Pike Cir. Ct. Ky.) (attached as Ex. 1).)  Ratliff asserted multiple causes of action, including a claim for violation of the Kentucky Consumer Protection Act ("KCPA").  (*Id.* ¶¶ 28-33.)

On February 10, 2012, a unanimous Kentucky Court of Appeals panel issued an order reversing the trial court's class-certification order and remanding the case to Pike Circuit Court for further proceedings.  (*See* Op. Reversing & Remanding, *Merck & Co. v. Ratliff*, No. 2011-CA-000234-MR (Ky. Ct. App. Feb. 10, 2012) (attached as Ex. 2).)  Mr. Ratliff subsequently sought discretionary review by the Kentucky Supreme Court, which was granted.  (*See* Order Granting Discretionary Review, *Ratliff v. Merck & Co.*, No. 2012-SC-000162-D (Ky. Nov. 14, 2012) (attached as Ex. 3).)  Mr. Ratliff's appeal is pending before that court.

### B. The MDL Proposed Settlement

Counsel for the parties in this MDL proceeding have engaged in extensive pretrial preparations during which "[m]illions of documents were discovered and collated," "[t]housands of depositions were taken and at least 1,000 discovery motions were argued."  *In re Vioxx Prods. Liab. Litig.*, 869 F. Supp. 2d 719, 721 (E.D. La. 2012) ("*Plubell*").  The Court conducted six

bellwether trials, resulting in one verdict for a plaintiff, one hung jury, and four verdicts for Merck. *Id.* Ultimately, after more than a year of effort comprising more than fifty meetings between counsel for Merck and Court-designated negotiating counsel for plaintiffs, the parties reached an agreement to settle most of the pending personal-injury cases, ultimately resolving almost 50,000 cases. *Id.* at 721-22. Other settlements followed from the efforts of the parties and under the Court's guidance, including resolution of economic-loss claims asserted by private and governmental third-party payors. *See, e.g.*, *id.* at 722-23.

Building on these prior efforts, counsel for Merck and the Plaintiffs' Steering Committee reached a nationwide class action settlement with respect to consumer-fraud claims asserted on behalf of purchasers of Vioxx in February 2013. The settlement provides that any class member who does not opt out of the class will release "all known or unknown economic injury claims . . . under any theory or statute whatsoever . . . arising out of or in any way connected with the purchase of Vioxx in the United States." (*In re Vioxx* MDL Settlement Agreement Related To Consumer Class Actions ("*In re Vioxx* Settlement Agreement"), §§ 1.17, 5.9, July 23, 2013 (attached as Ex. 4).)

Counsel for Mr. Ratliff has repeatedly sought to scuttle the settlement. First, he proposed that the parties insert notice language that would confuse Kentucky consumers and encourage them to abandon the MDL settlement in favor of a state-court case that may never yield any benefits for the class members. (*See* Notice of Proposed Changes to Class Notice, Dkt. No. 64513, July 26, 2013.) Then, he sought to stay dissemination of class notice, in the hopes that the Kentucky Supreme Court would find his class certifiable and he could bring a renewed challenge to the final settlement invoking that ruling. (*See* Mot. to Stay Dissemination of Notice and Modify Dates Contained in the Proposed Class Notice, Dkt. No. 64521, Aug. 1, 2013.) And

finally, he sought to intervene in the case, ostensibly so that he could obtain discovery that might support his efforts to undermine the MDL settlement. (*See* Mot. to Intervene, Dkt. No. 64520, Aug. 1, 2013.)

To date, the Court has rejected each of these efforts, and last week, the Court gave preliminary approval to the proposed settlement. (*See* Orders, Dkt. Nos. 64525, 64526, Aug. 2, 2013 (attached collectively as Ex. 5).)

## ARGUMENT

Pursuant to the All Writs Act, federal courts possess broad authority to "issue all writs necessary or appropriate in aid of their respective jurisdictions." 28 U.S.C. § 1651. Such "writs" include injunctions against or stays of conflicting state-court proceedings, *see, e.g.*, *Newby v. Enron Corp.*, 338 F.3d 467, 473-74 (5th Cir. 2003); *In re Corrugated Container Antitrust Litig.*, 659 F.2d 1332, 1334 (5th Cir. 1981), including state-court appellate proceedings, *see, e.g.*, *In re SDDS, Inc.*, 97 F.3d 1030, 1039, 1041 (8th Cir. 1996) (because "[t]he issues which the Defendants . . . wish[ed] to relitigate in the [South Dakota Supreme Court] were . . . actually and finally decided by" the Court of Appeals, an injunction under the All Writs Act was proper).[1] It is well settled that such orders may be directed at either the parties or the state court itself. *See Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 287 (1970); *In re Diet*

---

[1] Indeed, a number of federal courts have exercised their power under the All Writs Act to enjoin parallel state-court proceedings pending before state supreme courts. *See, e.g.*, *Ne. Ohio Coalition for the Homeless v. Husted*, No. 2:06-CV-896, 2012 U.S. Dist. LEXIS 66111, at *20-21 (S.D. Ohio May 11, 2012) (enjoining mandamus action filed in state supreme court because "[t]he practical effect of the Relators' action is to frustrate this Court's final judgment from being carried out"); *Wallace v. Conahan*, No. 3:09-cv-286, 2010 U.S. Dist. LEXIS 57470, at *29 (M.D. Pa. June 9, 2010) (enjoining juvenile expungement orders by Pennsylvania Supreme Court; "the interaction between the Pennsylvania Supreme Court's preservation and expungement orders unintentionally undermines this Court's ability to manage the present action.").

*Drugs Prods. Liab. Litig.*, 282 F.3d 220, 233 (3d Cir. 2002) (affirming injunction aimed at counsel rather than the state court).[2]

Under the Anti-Injunction Act, a complement to the All Writs Act, a federal court is authorized to stay state-court proceedings or enjoin parties to such proceedings where doing so is necessary: (1) to protect or effectuate its judgments; or (2) to aid the court's jurisdiction. 28 U.S.C. § 2283.[3]

This Court recently stayed related state-court proceedings in order to aid its jurisdiction over a preliminarily approved class-action settlement in the *In re Chinese-Manufactured Drywall* litigation. 2011 U.S. Dist. LEXIS 62222, at *18-19. There, the parties entered into a comprehensive class-action settlement agreement after years of litigation involving extensive discovery and depositions, along with the scheduling of a class-certification hearing. *Id.* at *2. After reviewing numerous briefs and hearing oral argument, this Court issued an order preliminarily approving the settlement agreement and staying related state-court proceedings. *Id.* at *2-4. In so doing, the Court cited its power under the All Writs Act and emphasized the importance of protecting settlements in multidistrict proceedings after substantial investments by the Court and the parties in the litigation over several years:

---

[2] It is of no import that the Kentucky action was filed prior to the creation of the MDL proceeding in this case. The "relative timing of the competing actions is not determinative" if the state-court proceedings "will have the practical, even if perhaps unintended, effect of interfering with [the federal] court's administration of the settlement." *In re Cmty. Bank of N. Va. & Guar. Bank Second Mortg. Litig.*, MDL No. 1674, 2008 U.S. Dist. LEXIS 27684, at *19-20 (W.D. Pa. Mar. 27, 2008) (enjoining state-court proceedings and stating that the "chronological order in which the cases were filed does not prevent us from entering an injunction to the extent it is otherwise appropriate and necessary").

[3] In considering the interaction between the All Writs Act and Anti-Injunction Act, courts have made it clear that the parallel "necessary in aid of jurisdiction" language is construed similarly in both acts. *See In re Diet Drugs*, 282 F.3d at 239 (internal quotation marks and citation omitted); *In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 261 F.3d 355, 365 (3d Cir. 2001); *In re Baldwin-United Corp. (Single Premium Deferred Annuities Ins. Litig.)*, 770 F.2d 328, 335 (2d Cir. 1985). Thus, "a finding that an injunction is 'necessary in aid' of jurisdiction for purposes of one [of] these statutes implies its necessity for purposes of the other." *In re Diet Drugs*, 282 F.3d at 239.

> [A] conceptional *res* has been created in this MDL litigation, as evidenced by the complexity of the proceedings and claims, the fact the litigation has been underway for almost two years, and the substantial amount of effort and expense put into the litigation by the parties and Court alike.  The MDL litigation, as it more specifically pertains to the present Motion [to reconsider the injunction of the state-court proceedings], is sufficiently progressed:  the parties have engaged in extensive discovery and depositions, a motion for class certification seeking to create a class with claims against [one of the defendants] was filed and set for hearing . . . , and most importantly, the . . . Settlement Agreement is a class action settlement agreement of the [type of claim to be litigated in the state court proceeding].

*Id.* at *18-19.

The Court's order in *In re Chinese-Manufactured Drywall* was rooted in well-established law.  The U.S. Supreme Court has expressly recognized that "some federal injunctive relief may be necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case."  *Atl. Coast Line R.R. Co.*, 398 U.S. at 295.

Traditionally, this power to grant injunctions or stays in aid of jurisdiction has been conceptualized as the power to protect the court's control over *in rem* proceedings.  *See, e.g.*, *In re Chinese-Manufactured Drywall*, 2011 U.S. Dist. LEXIS 62222, at *10; *In re Diet Drugs*, 282 F.3d at 234.  Thus, for example, where a federal court has jurisdiction over a *res* and a state court exercises jurisdiction over that same *res*, the federal court may enjoin the parties from proceeding in state court.  *Kline v. Burke Constr. Co.*, 260 U.S. 226, 229 (1922).

This principle has been extended to multidistrict, class-action litigation, in which such proceedings themselves are regarded as the necessary *res* to justify injunctions or stays under the All Writs Act.  As this Court recently explained in enjoining another Vioxx state-court proceeding, "complex litigation cases are sufficiently similar to *in rem* proceedings as to permit injunctions on cases actually *in personam* in nature."  *Plubell*, 869 F. Supp. 2d at 726 (granting motion for injunction under All Writs Act).  In particular, multidistrict class-action proceedings

are large and complex, and, particularly in their later stages, they come to "embody an enormous amount of time and expenditure of resources." *In re Diet Drugs*, 282 F.3d at 236. As such, like a traditional *in rem* proceeding, the investment of effort in mature MDL class-action proceedings takes on the character of property that may become "vulnerable to parallel state actions." *Id.*; *see also, e.g.*, *In re Corrugated Container*, 659 F.2d at 1334-35 (affirming injunction in MDL proceeding under the court's in-aid-of-jurisdiction power in part because "[t]his complicated antitrust action has required a great deal of the district court's time and [has] necessitate[d that it] maintain a flexible approach in resolving the various claims of the many parties").

An MDL court's power to act in aid of its jurisdiction is at its apex when the litigation has matured to the point of settlement. As this Court has recognized, a stay under the All Writs Act is appropriate "in the MDL or complex litigation context when settlement is complete or imminent in the federal court, and often after preliminary or final certification of a class." *In re Chinese-Manufactured Drywall*, 2011 U.S. Dist. LEXIS 62222, at *13, *18-19. By this time, "the MDL court and parties presumably have expended substantial time and resources, and the final resolution of the case is at stake." *Id.* at *14. Accordingly, a parallel state-court proceeding that threatens a preliminarily approved class-action settlement strikes at the core of an MDL court's "ability to dispose of the broader action pending before it." *In re Corrugated Container*, 659 F.2d at 1335 (upholding injunction against state-court suit after class had been certified and two settlements had been approved by the court).

For this reason, MDL courts have repeatedly exercised jurisdiction under the All Writs Act to bar plaintiffs from taking action in furtherance of parallel state-court class actions that could interfere with their administration of a preliminarily approved class-action settlement. *See, e.g.*, *In re Chinese-Manufactured Drywall*, 2011 U.S. Dist. LEXIS 62222, at *18-19 (staying

1135096v1

related class-action proceedings in state court because "most importantly, the InEx Settlement Agreement is a class action settlement agreement" that has been "preliminarily approved" by this Court); *In re Zurn Pex Plumbing Prods. Liab. Litig.*, No. 08-MDL-1958 ADM/AJB, 2012 U.S. Dist. LEXIS 149738, at *34-35 (D. Minn. Oct. 18, 2012) ("the Court hereby orders that any actions or proceedings pending in any court in the United States involving F1807 Fittings . . . are stayed pending the final fairness hearing and the issuance of a final order and judgment"); *In re Skechers Toning Shoe Prods. Liab. Litig.*, MDL No. 2308, 2012 U.S. Dist. LEXIS 113641, at *36 (W.D. Ky. Aug. 13, 2012) (enjoining parallel state-court proceedings upon preliminarily approving nationwide class action settlement in MDL proceeding). Such orders have also received repeated approval from federal appellate courts. *See, e.g.*, *In re Diet Drugs*, 282 F.3d at 239 ("The District Court's order clearly falls under the 'necessary in aid of its jurisdiction' exception" given "[t]he complexity of this multidistrict class action" "with a provisionally certified class and preliminarily approved settlement" that "require[s] flexibility to bring the case to judgment"); *Liles v. Del Campo*, 350 F.3d 742, 746-47 (8th Cir. 2003) (affirming injunction directed at parallel state-court proceedings to ensure enforceability of preliminarily approved nationwide class-action settlement). As one of these courts explained, "[i]n complex cases where certification or settlement has received conditional approval . . . the challenges facing the overseeing court are such that it is likely that almost *any* parallel litigation in other fora presents a genuine threat to the jurisdiction of the federal court." *In re Diet Drugs*, 282 F.3d at 236 (emphasis added).[4]

---

[4] Although a number of the decisions cited in this brief address injunctions, it is clear that the same analysis applies to the request for a stay like the one issued by this Court in *In re Chinese-Manufactured Drywall* and those issued by a number of other courts in the context of multidistrict proceedings. *See, e.g.*, *In re Joint E. & S. Dist. Asbestos Litig.*, 134 F.R.D. 32, 38 (E.D.N.Y. 1990) (staying state-court proceedings in asbestos suit where a federal class-action settlement was being negotiated); *In re Columbia/HCA Healthcare Corp. Billing Practices Litig.*, 93 F. Supp. 2d 876, 879, 881 (M.D. Tenn. 2000) (staying state-court proceedings in litigation against health-services

*(cont'd)*

In *In re Corrugated Container*, for example, the U.S. Court of Appeals for the Fifth Circuit affirmed an injunction against state-court proceedings on the ground that it was necessary in aid of the district court's jurisdiction where a class settlement had been approved in multidistrict litigation in federal court. 659 F.2d at 1333-34. In that case, the Judicial Panel on Multidistrict Litigation had coordinated fifty private actions brought on behalf of all purchasers of corrugated containers and sheets against various manufacturers in the United States District Court for the Southern District of Texas. Within the context of the ensuing MDL proceedings, an "enormous class action" was brought and the parties reached two settlements, which the MDL court approved. *Id.* at 1333. Thereafter, certain individuals who were members of the MDL class action filed a complaint in South Carolina state court similar to the complaint filed in the MDL, but seeking recovery under state-law causes of action. *Id.* at 1333-34. The district court enjoined the proceedings, and the Fifth Circuit affirmed the injunction. The Fifth Circuit explained that the "complicated" multidistrict proceedings "required a great deal of the district court's time and necessitate[d] its ability to maintain a flexible approach in resolving the various claims of the many parties." *Id.* at 1334-35. Thus, the court found that the actions of the South Carolina plaintiffs in pursuing "substantially similar" claims in state court constituted a threat to the Court's jurisdiction and would "interfere with the multidistrict court's ability to dispose of the broader action pending before it," even though the court had already approved two settlements and the entry of final judgment was imminent when the injunction issued. *Id.*

Similarly, in *In re Diet Drugs*, which involved "competing mass tort class actions in federal and state courts," the Third Circuit upheld an injunction issued by the MDL court

---

*(cont'd from previous page)*
provider that had been coordinated in a federal MDL action); *see also Prudential*, 314 F.3d at 104-05 (equating the remedial concepts by explaining that an injunction under the All Writs Act "has the effect of staying the state court proceeding").

overseeing the settlement of a nationwide class action involving the sale and effects of appetite suppressants.  282 F.3d at 225.  There, the defendant and plaintiffs from the federal proceeding ("the *Brown* case") reached a global settlement, which was preliminarily approved by the MDL court.  *Id.* at 226.  Several months later – before the MDL court issued its order giving final approval to the settlement – the plaintiffs in a parallel class action pending in Texas state court ("the *Gonzalez* case") sought (and successfully obtained) an order from that court opting out all of the unnamed members of the state class action from the nationwide class.  *Id.* at 227.  In response, the defendant filed a motion for an injunction with the MDL court seeking to invalidate the state court's order.  *Id.*[5]  The MDL court granted the motion, enjoining counsel for the plaintiffs in the parallel Texas case from taking any action to obtain the opt-outs from the class action settlement that the MDL court had preliminarily approved.  *Id.*  The MDL court also invalidated the order issued by the Texas state court.  *Id.*

       The Third Circuit affirmed the MDL court's ruling under the All Writs Act, recognizing that "[t]he threat to the federal court's jurisdiction posed by parallel state actions is particularly significant where there are conditional class certifications and impending settlements in federal actions."  *Id.* at 236.  As the Court of Appeals explained, "there [was] no doubt the motion requesting the Texas court to opt *Gonzalez* class members out of the *Brown* class was a preemptive strike" against the conditionally-certified nationwide class action.  *Id.* at 238.  And in addition to "declar[ing] what the [MDL] court should and should not do with respect to the federal settlement," *id.* at 237 (internal quotation marks and citation omitted), the "Texas order would have created confusion among those who were members of both the federal and the state

---

[5]     The defendant also removed the state-court action to federal court on diversity grounds.  *Id.*

classes." *Id.* at 237-38.  "Under these circumstances," the appellate court concluded, "the District Court's injunction [was] well within its 'sound discretion.'"  *Id.* at 239 (citation omitted).

The same logic applies here.  This MDL proceeding, which has been ongoing for more than seven years, is more than sufficiently advanced to constitute a conceptual *res*.  As in *In re Corrugated Container*, the Vioxx MDL proceeding is one that "has required a great deal of the . . . [C]ourt's time and [has] necessitate[d that it] maintain a flexible approach in resolving the various claims of the many parties."  659 F.2d at 1334-35.  This Court has already recognized as much, explaining that the Vioxx MDL proceeding is sufficiently "developed" to warrant application of the necessary-in-aid-of-jurisdiction exception outside the *in rem* context.  *Plubell*, 869 F. Supp. 2d at 728.  Specifically, the parties have engaged in extensive discovery; tried multiple cases; and, after much effort on the part of both the Court and the parties, resolved tens of thousands of cases in multiple settlements that released Merck from future Vioxx-related claims.

The most recent of such settlements is the nationwide purchaser class-action settlement that has now been preliminarily approved by this Court.  Counsel for Mr. Ratliff has made it clear – through several filings and sometimes intemperate conversations with the PSC and defense counsel – that his goal is to scuttle the MDL settlement.  Among other things, Mr. Ratliff has sought to revise the notice language to encourage Kentucky consumers to opt out of the settlement and to delay finalization of the MDL settlement both through his motion to stay and his motion to intervene.  Absent a stay of the state-court case, counsel for Mr. Ratliff will continue his efforts to undermine the MDL settlement, whether through further motions or efforts to achieve mass opt-outs by Kentucky consumers.  "Permitting" what is essentially a "collateral attack[]" on the preliminarily approved settlement "would undermine 'Congress's

purposes underlying diversity jurisdiction and the Multidistrict Litigation Act, 28 U.S.C. § 1407, an application of Congress's constitutional power to regulate interstate commerce.'" *In re Zurn Pex*, 2012 U.S. Dist. LEXIS 149738, at *41 (citation omitted).

In addition, Mr. Ratliff's case, if permitted to proceed, would pose a serious threat of confusion to Kentucky class members.  The overlap between the nationwide proceeding and Mr. Ratliff's action is unmistakable:  both present economic-loss claims arising out of the purchase of Vioxx, and both assert entitlement to relief on behalf of Kentucky residents under the KCPA (although the MDL class is defined more broadly).  Because all members of the putative *Ratliff* class action are also members of the provisionally certified nationwide consumer-fraud class action, a state-court decision in Mr. Ratliff's favor would create a "competing class[], subjecting class members to dueling class action notices." *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, MDL 1559, 2003 U.S. Dist. LEXIS 26070, at *16 (W.D. Mo. Dec. 22, 2003); *In re Cmty. Bank of N. Va. & Guar. Bank Second Mortg. Litig.*, 2008 U.S. Dist. LEXIS 27684, at *19 ("members of both the nationwide class and the North Carolina class will be confused as to whether their claims have been settled, or not," which "would directly, and greatly, interfere with the federal action").  Indeed, Mr. Ratliff's own counsel has raised concerns about class member "confusion" in light of the two overlapping class proceedings.  (*See, e.g.*, Ratliff Mot. to Stay Dissemination of Class Notice at 5, Dkt. No. 64521, Aug. 1, 2013.)  The risk of confusion is all the greater because the MDL settlement class is broader than the certified state-court class, creating the concern that some Kentucky consumers will opt out and then find themselves in no class at all.[6]  "The potential for [such] confusion and chaos is great enough that this Court need

---

[6] Mr. Ratliff's proposed class is limited to those Vioxx purchasers who claim to have sought a medical consultation related to Vioxx after its withdrawal – or intend to do so in the future. (*See Ratliff* Compl. ¶ 3; Am. Order Certifying Class Action at 6, *Ratliff v. Merck & Co.*, No. 04-CI-01493 (Pike Cir. Ct. Jan. 27, 2011) (attached
*(cont'd)*

not wait for it to happen before enjoining the possibility." *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 2003 U.S. Dist. LEXIS 26070, at *16; *see also Liles*, 350 F.3d at 746-47 (lower court properly "enjoined proceedings in related litigation to . . . eliminate the risk of inconsistent or varying adjudications that would" undermine nationwide class settlement and "to avoid confusion among the class members").

Finally, continued prosecution of Mr. Ratliff's suit is fundamentally incompatible with the terms of the provisionally approved settlement. The MDL settlement includes all members of the putative *Ratliff* class, and by the settlement's terms those members must release "all known or unknown economic injury claims . . . under any theory or statute whatsoever . . . arising out of or in any way connected with the purchase of Vioxx in the United States" (*In re Vioxx* Settlement Agreement §§ 1.17, 5.9) – a release foreclosing the continued pursuit of relief in Kentucky state court. "[A]s th[e] [nationwide] settlement agreement moves toward final approval[,] it is increasingly possible that the [Kentucky state courts] could order or enjoin conduct that would prevent the Settling Parties in this case from reaching a final resolution." *In re Skechers*, 2012 U.S. Dist. LEXIS 113641, at *36. Such a result would not only "disrupt the [nationwide class settlement]" that this Court, Merck and others have worked so hard to achieve, *In re Chinese-Manufactured Drywall*, 2011 U.S. Dist. LEXIS 62222, at *19, but would also "have a chilling effect on future settlements and interfere with the ability of this Court and others to foster efficient global resolutions in complex multidistrict litigation," *Plubell*, 869 F. Supp. 2d at 728; *see also In re Baldwin-United Corp.*, 770 F.2d at 337 ("If . . . others could derivatively

---

*(cont'd from previous page)*
as Ex. 6) (defining class as "all Kentucky residents who have purchased and taken Vioxx and who, upon the recommendation and advice of the FDA and Merck, have or will contact their physicians to seek advice regarding their use of Vioxx").) By contrast, the federal settlement class includes ***all*** qualified Kentucky Vioxx users, regardless of whether they sought or will seek a post-withdrawal medical consultation.

assert the same claims on behalf of the same class . . . there could be no certainty about the finality of any federal settlement.").

In short, because the efforts by Mr. Ratliff and his counsel directly "interfere" with this Court's "ability to dispose of the broader action pending before it," *see In re Corrugated Container*, 659 F.2d at 1335, staying his case and enjoining Mr. Ratliff's counsel from further efforts to prosecute his case pending final approval of the MDL settlement are necessary to preserve the Court's ability to protect its jurisdiction and resolve this complex litigation.[7]

## CONCLUSION

For the foregoing reasons, the Court should enter an Order staying further proceedings in Mr. Ratliff's case and enjoining further efforts by Mr. Ratliff's counsel to prosecute his case pending final approval of the MDL settlement.

---

[7] No further showing is required. Although traditional, permanent injunctions require proof of: (1) success on the merits of an underlying cause of action, (2) irreparable injury absent the injunction, and (3) a net benefit to the injunction based on the balance of harms, *see, e.g.*, *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1097 (11th Cir. 2004), these factors do not play any role in determining the propriety of an injunction under the All Writs Act, *see generally id.* at 1100-04. This is so because, "[w]hereas traditional injunctions are predicated upon some cause of action, an All Writs Act injunction is predicated upon some other matter upon which a district court has jurisdiction." *Id.* at 1100. "[A] court's traditional power to protect its jurisdiction, codified by the Act, is grounded in entirely separate concerns" than those that justify traditional injunctions. *Id.* at 1100-01 (collecting authority, including *Teas v. Twentieth Century-Fox Film Corp.*, 413 F.2d 1263, 1266-67 (5th Cir. 1969)); *see also In re Chinese-Manufactured Drywall*, 2011 U.S. Dist. LEXIS 62222, at *21-24 (same).

Dated:  August 12, 2013 Respectfully submitted,

   /s/ Dorothy H. Wimberly
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana 70130
Phone: 504-581-3200
Fax:    504-581-3361

Defendants' Liaison Counsel

  —and—
Douglas R. Marvin
M. Elaine Horn
Jonathan L. Williams
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Phone: 202-434-5000
Fax:    202-434-5029

John H. Beisner
Jessica Davidson Miller
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
1440 New York Avenue, N.W.
Washington, DC 20005

   ATTORNEYS FOR MERCK SHARP & DOHME CORP.

1135096v1