UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: VIOXX <br> PRODUCTS LIABILITY LITIGATION | MDL No. 1657 <br><br> SECTION L |
| THIS DOCUMENT RELATES TO: | JUDGE FALLON |
| SHERILL HERKE, individually and on behalf of a proposed class of those similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> MERCK & CO., INC., <br><br> Defendant. | No. 2:09-cv-07218 |

**CLASS COUNSEL'S MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION FOR AN ORDER ENJOINING JAMES RATLIFF, HIS COUNSEL,
AND ANY OTHER CLASS MEMBER FROM PROSECUTING A COMPETING
AND OVERLAPPING CONSUMER CLASS ACTION AND INTERFERING
WITH THIS COURT'S CONTINUING JURISDICTION OVER THIS
LITIGATION AND THE NATIONWIDE VIOXX CONSUMER CLASS
SETTLEMENT PRELIMINARILY APPROVED BY THIS COURT**

I.      **INTRODUCTION**

On August 2, 2013, this Court preliminarily approved a nationwide global class

settlement of economic injury claims related to the purchase of Vioxx in this country.  In

connection with its approval of the settlement, the Court conditionally certified a settlement class

of "[a]ll individual consumer purchasers of Vioxx in the United States … through September 30,

2004, when Vioxx was removed from the market."  Preliminary Approval Order at p. 4 (Rec.

Doc. 64526).  The proposed settlement provides an opportunity for class members in every state

except Missouri[1] to recover their out-of-pocket costs for their Vioxx use, including some of the

costs of their medical consultations with physicians.  *Id.*  These Vioxx consumer class members

have waited more than nine years for relief.  The aggregate settlement amount of $23 million

will enable class members to make claims for significant amounts of reimbursement:  up to $75

for their out-of-pocket costs and losses in connection with a post-withdrawal medical

consultation related to Vioxx use; and their documented actual out-of-pocket expenditures for the

purchase of Vioxx, or a one-time payment of up to $50 with proof of Vioxx prescription.

Settlement, Section 2 (Rec. Doc. 64526-4 at pp. 5-6).

The Court has appointed Class Counsel to represent and protect the interests of all Vioxx

consumers in the class, including Kentucky residents, who are eligible to partake from the

settlement fund.  Preliminary Approval Order at 7.  The Court has ordered that class members be

notified of this settlement and be given an opportunity to object to or opt out from the settlement

on or before November 9, 2014.  *Id*. at 7-9.  In addition, the Court has scheduled a fairness

hearing on December 13, 2014 to determine whether the proposed settlement is fair, reasonable,

and adequate.  *Id*. at 8-9.

In connection with the preliminary approval of this settlement, the Court denied James

Ratliff's Motion to Stay Dissemination of Notice and Modify Dates Contained in the Proposed

Class Notice (Rec. Doc. 64521).  The Court also denied without prejudice James Ratliff's motion

to intervene for purposes of objecting to the settlement (Rec. Doc. 64525).  Mr. Ratliff is a

member of the Vioxx settlement class certified by this Court.  However, he has filed a competing

and overlapping putative class action in Kentucky alleging Vioxx consumer claims on behalf of

---

[1] In Missouri, a certified state class action was resolved shortly before the class trial.  *See Plubell
v. Merck*, 289 S.W.3d 707 (Mo. Ct. App. 2009).  Accordingly, the Vioxx settlement class
certified by this Court expressly excludes "members of the [Missouri *Plubell*] class."  *Id*.

Kentucky residents only, which is not certified but is currently before the Kentucky Supreme

Court on Ratliff's motion for class certification.  *See* Rec. Doc. 64524-2.  This Court is fully

familiar with the procedural background and history of the Kentucky state court action.  Given

Ratliff's public efforts to derail this nationwide settlement, Class Counsel respectfully requests

that the Court issue an order pursuant to the All Writs Act enjoining Mr. Ratliff, his counsel, and

any other class member from prosecuting the Kentucky state court action or any other competing

and overlapping consumer action, and from interfering with the nationwide class settlement

approval process before this Court, especially during the critical notice period.

Pursuant to the Preliminary Approval Order, all class members, including Kentucky state

residents and Mr. Ratliff, will have a meaningful opportunity to consider the Vioxx consumer

settlement, make claims under the settlement, opt-out of the settlement, or object thereto and be

heard in connection with its final judicial approval.  If Mr. Ratliff and his counsel (or any other

class member) continue to interfere with that process, this Court's jurisdiction over the Vioxx

consumer settlement and all class members encompassed thereby will be impaired.

Mr. Ratliff has "predicted" that the Kentucky Supreme Court will render a decision

within two months that will revive the prospects for certification of his Kentucky class.  Mr.

Ratliff's prediction, however, is pure conjecture, and in any event, the putative Kentucky class

and the claims asserted in that action compete with and overlap with the nationwide class

conditionally certified by this Court.  Therefore, in order to preserve the integrity of this Court's

jurisdiction over the Vioxx consumer class settlement, Mr. Ratliff and his counsel, and any other

class member, should be enjoined from interfering with this Court's process of notifying class

members of their rights in conjunction with the final approval of the settlement.

II.     **ARGUMENT**

A.      **This MDL Court May Properly Enjoin the State Court Proceedings in Kentucky as Necessary in Aid of its Jurisdiction Over this Complex Litigation.**

The MDL Court's fundamental authority vis-à-vis state courts derives from the Supremacy Clause of the United States Constitution, which provides that: "This Constitution, and the laws of the United States which shall be made in Pursuance thereof. . .shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. Art. VI, cl. 2. Congress has since provided statutory constructs delimiting the ability of the federal district courts to protect their authority over competing state court rulings.

Pursuant to the All Writs Act, 28 U.S.C. § 1651, the MDL Court has the authority to "issue all writs necessary or appropriate in aid of [its] jurisdiction[] and agreeable to the usages and principles of law." Under the All Writs Act, the MDL Court has the power to protect its continuing jurisdiction over complex litigation and ongoing global settlement efforts from competing state court litigation that threatens to derail the achievements of the Court and that infringes upon the rights of class members before the Court.

The Anti-Injunction Act, 28 U.S.C. §2283, a complement to the All Writs Act, also empowers the MDL Court to enjoin state court proceedings where "necessary in aid of its jurisdiction, or to protect or effectuate its judgments." Courts liberally invoke the "necessary in aid of its jurisdiction" exception "to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case." *Atlantic Coast Line R.R. v. Brotherhood of Locomotive Eng'rs*, 398 U.S. 281, 295 (1970); In *re Baldwin-United Corp.*, 770 F.2d 328, 337 (2nd Cir. 1985) (same); *In re Corrugated Container Antitrust Litigation*, 659 F.2d 1332, 1334 (5th Cir. 1981),

*cert. denied*, 456 U.S. 936 (1982) (same); *In re Joint E. & S. Dist. Asbestos Litig.*, 134 F.R.D. 32, 37 (E.&S.D.N.Y. 1990) (same); Martin H. Redish, *The Anti-Injunction Statute Reconsidered*, 44 U. CHI. L. REV. 717, 754 (1977) ("necessary in aid of jurisdiction" exception should be construed "to empower the federal court to enjoin a concurrent state proceeding that might render the exercise of the federal court's jurisdiction nugatory."); *In re Diet Drugs*, 282 F.3d 220, 235 (3rd Cir. 2002) (recognizing "a category of federal cases for which state court actions present a special threat to the jurisdiction of the federal court" – namely, where "a federal court [is] entertaining complex litigation, especially when it involves a substantial class of persons from multiple states, or represents a consolidation of cases from multiple districts....").

An injunction against competing state court proceedings is appropriate to allow the federal court to "legitimately assert comprehensive control over complex litigation," *United States v. International Brotherhood of Teamsters*, 907 F.2d 277, 281 (2nd Cir. 1990), especially "where a federal court is on the verge of settling a complex matter, and state court proceedings undermine its ability to achieve that objective," *Standard Microsystems Corp. v. Texas Instruments Inc.*, 916 F.2d 58, 60 (2nd Cir. 1990).  *See Carlough v. Amchem Prods., Inc.*, 10 F.3d 189, 204 (3rd Cir. 1993) (in complex class action that was also an MDL where the court had expended substantial time and resources and global settlement was imminent, injunction prohibiting the prosecution of a competing state class action was affirmed, noting that foreign action "would be disruptive to the district court's ongoing settlement management[,]" "would jeopardize the settlement's fruition[,]" and would "present[] a likelihood that [class] members ... [would] be confused as to their membership status in the dueling law suits."); *Diet Drugs*, 282 F.3d at 235 (finding "the complexity of the case to be a substantial factor in justifying the injunction"); *Corrugated Container*, 659 F.2d at 1334 (upholding validity of injunction issued by

district court overseeing multidistrict litigation against actions by same plaintiffs in state court, as necessary in aid of district court's jurisdiction); *Newbe v. Enron Corp.*, 338 F.3d 467, 474-75 (5th Cir. 2003) (where "injunctions sought in state court threatened to interfere with the federal court's orderly handling of the massive federal litigation," All Writs Act properly invoked); *Winkler v. Eli Lilly & Co.*, 101 F.3d 1196, 1202 (7th Cir. 1996) (to protect its discovery orders, federal court has "power under the All Writs Act" to enjoin state court litigation and "'to issue such commands ... as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction'"), *quoting United States v. New York Telephone*, 434 U.S. 159, 173 (1977); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir.), *cert. denied*, 506 U.S. 953 (1992) (approving settlement barring competing actions in state court alleging claims similar to those in the federal action); *White v. National Football League*, 41 F.3d 402, 409 (8th Cir. 1994) ("the ability to facilitate ... settlement by enjoining related suits of absent class members is ancillary to jurisdiction over the class action itself"), *cert. denied*, 515 U.S.1137 (1995); *James v. Bellotti*, 733 F.2d 989, 994 (1st Cir. 1984) (provisionally approved settlement justifies injunction against competing state court cases); *In re Granada Partnership Sec. Litig.*, 803 F. Supp. 1236, 1246 (S.D. Tex. 1992) (enjoining "commencement, continuance and/or prosecution of any and all proceedings in federal or state court" by class members in connection with preliminary and final approval of class settlement); *Joint E. & S. Dist. Asbestos Litig.*, 134 F.R.D. at 37 ("An injunction of all proceedings is necessary to implement the terms of the settlement and to protect the court's jurisdiction over the class action.").

In *Baldwin-United*, a consolidated, multidistrict, class action involving more than 100 federal lawsuits, the Second Circuit upheld an injunction issued by the MDL court that prohibited any person with knowledge of the court's order from "commencing any action or

proceeding" against any of the defendants in the MDL that might "in any way affect the right of

any plaintiff or purported class member in any proceeding under" the MDL. *Baldwin-United*,

770 F.2d at 331. Competing state actions were found to "frustrate the district court's efforts to

craft a settlement" in that litigation. *Id*. at 337. Thus, in recognition of the "utility of the

multidistrict forum [as] ideally suited to resolving ... broad claims," and in order to protect its

ability to settle complex litigation, the court held that the All-Writs Act empowers an MDL court

to issue an injunction against actions in state court "even before a federal judgment is reached...."

*Id*. at 335, 337 & 338. *See also In re School Asbestos Litig.*, 1991 WL 61156, *1-*2 (E.D. Pa.

Apr. 16, 1991), *aff'd mem.*, 950 F.2d 723 (3rd Cir. 1991) ("[W]here the potential for resolution is

gaining momentum ... this court's ability to oversee a possible settlement would be 'seriously

impaired' by the continuing litigation of parallel state actions....").

Courts have recognized that the jurisdiction of a multidistrict court or a class action

proceeding is "analogous to in rem actions given their magnitude and complexity." *Joint E. & S.

Dist. Asbestos*, 134 F.R.D. at 38; *Baldwin-United*, 770 F.2d at 337 (class action proceeding was

"so far advanced that it was the virtual equivalent of a res over which the district judge required

full control."); *Battle v. Liberty National Life Ins. Co.*, 877 F.2d 877, 882 (11th Cir. 1989)

("makes sense to consider this case, involving years of litigation and mountains of paperwork, as

similar to a res to be administered"); *Corrugated Container*, 659 F.2d at 1334-35 (injunction

proper because "complicated antitrust action ... required a great deal of the district court's time

and necessitate[d] its ability to maintain a flexible approach in resolving the various claims of the

many parties."). Under these circumstances, an injunction against parallel or conflicting state

court proceedings would be proper, "because the 'exercise by the state court of jurisdiction over

the same res necessarily impairs, and may defeat, the jurisdiction of the federal court already

attached,' [and] the federal court is empowered to enjoin any state court proceeding affecting

that res." *Baldwin-United*, 770 F.2d at 336, *quoting Kline v. Burke Construction Co.*, 260 U.S.

226, 229 (1922).

In the *Chinese Drywall* MDL 2047 proceedings, this Court entered several orders staying

related state court litigation in order to protect the complex series of inter-related class action

settlements reached in the MDL.  *See*, *e.g.*, *In re Chinese-Manufactured Drywall Prod. Liab.*

*Litig.*, 2011 WL 2313866, *5 (E.D. La. Jun. 9, 2011) (recognizing that "at the point when

settlement is imminent, the MDL court and parties presumably have expended substantial time

and resources, and the final resolution of the case is at stake.").  Upon preliminary approval of a

global class settlement in the *Chinese Drywall* litigation and the dissemination of notice to the

class, this Court stayed all related state court Chinese Drywall litigation, finding that:  "a

conceptional *res* has been created in this MDL litigation, as evidenced by the complexity of the

proceedings and claims, the fact the litigation has been underway for almost two years, and the

substantial amount of effort and expense put into the litigation by the parties and Court alike."

*Id*. at *7.

This Vioxx litigation has been ongoing for more than four years and the Plaintiffs have

been waiting more than nine years to recover their costs of Vioxx use.  A stay of the Kentucky

proceedings is appropriate and warranted under these circumstances.

**B.** **This MDL Court Has a Duty to Act as Efficiently as Possible and Prohibit Duplicative Efforts That Impede the Court's Management of the Litigation.**

In consideration of the fact that the districts court's power to control multidistrict

litigation is derived by statute, 28 U.S.C. § 1407, courts have held that "with that power comes

the duty to exercise it as efficiently as possible."  *Winkler*, 101 F.3d at 1202; *Marrese v.*

*American Academy of Orthopaedic Surgeons*, 726 F.2d 1150, 1161 (7th Cir. 1984) (en banc),

*rev'd in part on other grounds*, 470 U.S. 373 (1985). "Indeed, an express purpose of consolidating multidistrict litigation for discovery is to conserve judicial resources by avoiding duplicative rulings." *Winkler*, 101 F.3d at 1202; *Matter of Orthopedic Bone Screw Prod. Liab. Litig.*, 79 F.3d 46, 48 (7th Cir. 1996). Thus, "[w]here a litigant's success in a parallel state court action would make a nullity of the district court's ruling[s], and render ineffective its efforts effectively to manage the complex litigation at hand, injunctive relief is proper." *Winkler*, 101 F.3d at 1202.

**C.    In the Context of a Class Action the Court has Authority to Enjoin Parties Before it.**

In the context of a class action, the Court also has authority under Fed.R.Civ.P. 23(d)(2) to enjoin parties before it from proceeding with actions that are in derogation of the Court's orders. "A district court has both the duty and broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and the parties." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981). The operative consideration in issuing Rule 23(d)(2) corrective and injunctive orders is the Court's unique fiduciary role to protect the legal rights and interests of class members, and its institutional interest in controlling "the fair conduct of the action." For example, in *Kleiner v. First Nat'l Bank*, 751 F.2d 1193 (11th Cir. 1985), the court approved the restriction on defendant's telephone campaign to solicit opt-outs. In *Impervious Paint Indus. Inc. v. Ashland Oil*, 508 F. Supp. 720 (W.D. Ky. 1981), *appeal dismissed without op.*, 659 F.2d 1081 (6th Cir. 1981), defendant's efforts to sabotage the class notice through direct communications with class members were held to be precisely the "exceptional circumstances" which would justify the imposition of a prior restraint on communications with class members.

Thus, this Court has ample authority to properly prohibit Mr. Ratliff and his counsel from undertaking any effort to improperly interfere with this Court's supervision over the Vioxx consumer settlement.  *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 810-813 (1985) (due process rights of class members include "the right to intelligently and individually choose whether to continue in a suit as class members"); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1024 (9th Cir. 1998) ("the right to participate, or to opt-out, is an individual one and should not be made by the class representative or the class counsel"); *Berry Petroleum Co. v. Adams & Peck*, 518 F.2d 402, 412 (2nd Cir. 1975) ("opting out of the class, like the decision to participate in it, must be an individual decision").  *See also* William B. Rubenstein, Alba Conte and Herbert B. Newberg, 5 NEWBERG ON CLASS ACTIONS, §16.16 (4th ed.) ("The decision to exercise the right of exclusion in a Rule 23(b)(3) action is an individual decision on each class member and may not be usurped by the class representative or class counsel.").

As this Court is aware, James Ratliff and his counsel have made it their mission to derail this settlement so that they may solely represent Kentucky Plaintiffs in their putative Kentucky class action.  This "satellite" litigation interferes with this MDL Court's disposition of the Vioxx consumer litigation, and this Court, therefore, has more than ample authority to act.  *See Arjomand v. Metropolitan Life Ins. Co.*, 77 Fed. Appx. 121, 122, 2003 WL 22300867, *1 (3rd Cir. Oct. 8, 2003); *Newbe v. Enron*, 338 F.3d at 473-74 (All Writs Acts applied to proceedings, including ex parte state court proceedings, that threatened to interfere with federal court's pretrial orders or determinations in multidistrict securities fraud action).

## III.   CONCLUSION

Class Counsel's limited request to enjoin James Ratliff and his counsel, and any other class member, from prosecuting the competing and overlapping Kentucky state court action, or any other competing consumer action, is warranted and well-established under the law.  The

facts supporting the request are beyond dispute.  The Kentucky Plaintiffs are included in the

global settlement before this Court, and Mr. Ratliff's state court action interferes with this MDL

Court's supervision over these proceedings.  As such, this Court must invoke its authority under

the All Writs Act and enjoin James Ratliff, his counsel, and any other class member from

prosecuting the Kentucky action or any other competing consumer action.

Respectfully submitted,

Dated: August 12, 2013

/s/ Russ M. Herman
Russ M. Herman, Esquire
Leonard A. Davis, Esquire
HERMAN, HERMAN & KATZ, L.L.C.
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
ldavis@hhklawfirm.com
*Plaintiffs' Liaison Counsel*
*MDL 1657 and*
*Co-Lead Class Settlement Counsel*

Elizabeth J. Cabraser, Esquire
LIEFF CABRASER HEIMANN & BERNSTEIN, L.L.P.
275 Battery Street, 29th Floor
San Francisco, CA 94111
Phone:  (415) 956-1000
Fax:  (415) 956-1008
ecabraser@lchb.com
*Co-Lead Class Settlement Counsel*

Arnold Levin (On the Brief)
Sandra L. Duggan (On the Brief)
LEVIN, FISHBEIN, SEDRAN AND BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA  19106
Phone:  (215) 592-1500
Fax:  (215) 592-4663
alevin@lfsblaw.com
*Plaintiffs' Steering Committee*

1123021.1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing has been served on Liaison Counsel, Ann B. Oldfather, and Phillip Wittmann, and on Richard Getty (counsel for James Ratliff) by U.S. mail and/or e-mail or by hand delivery and/or e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pretrial Order No. 8(B), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 12th day of August, 2013.

/s/ *Leonard A. Davis*
Leonard A. Davis