UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX® | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY | * | SECTION L |
| LITIGATION | * | |
| | * | JUDGE FALLON |
| This Document Relates to | * | |
| Cases Listed on Exhibit A | | |
| | * | MAG. JUDGE KNOWLES |
| * * * * * * * * * * * * * * * * | * | |

### VTE PLAINTIFFS' SUR REPLY IN OPPOSITION TO MERCK'S MOTION FOR RECONSIDERATION OF THE COURT'S APRIL 9, 2013 ORDER

Merck's Reply[1] improperly shifts the burden from it, the party moving for reconsideration, to the VTE Plaintiffs. The VTE Plaintiffs have already extensively briefed the effect that Vioxx had on venous thromboembolism events ("VTE"), and argued the issue extensively before the Court. There have been countless pages of *Daubert* briefings and careful consideration by the Court at oral argument, and in its Opinion and Order of April 9, 2013. As the party moving for reconsideration, after full briefing and complete arguments, and after the Court has taken the time to address the issues in a comprehensive Opinion and Order, Merck bears the burden of showing a change in law or fact, or establishing clear error or manifest injustice. Merck cannot meet its burden as to any element. It is Merck's burden to prove reconsideration is necessary to correct

---

[1] Merck's Reply Memorandum in Support of Motion for Reconsideration of April 9, 2013 Order and Reasons [Rec. Doc. 64528].

clear error or avoid manifest injustice, and after such careful consideration of the issues over the last eight-plus months, neither could very likely exist.

Two issues raised by Merck in its Reply are addressed here. First, in its Reply, Merck asks for relief not specifically requested in its Motion for Reconsideration.[2] Second, Merck suggests that the Court's reconsideration of a procedural ruling back in 2005 offers some persuasive guidance as to what should happen here in its Motion to reconsider the *Daubert* ruling. Merck is wrong on both counts.

**I.      Merck's Reply Requests R not Addressed in Merck's
         Motion or Tendered Order.**

In its Reply, and for the first time, Merck asks the Court to limit the admissibility of the multipliers established by Dr. Spyropoulos and used by Drs. Zambelli-Weiner and Brooks in their Pooled Analysis to those cases where the plaintiff alleges a deep venous thrombosis ("DVT") injury, as opposed to a pulmonary embolus ("PE") injury. Merck's Reply at 8. However, Merck's tendered Order [Rec. Doc. 64435-2] does not specify this relief, and Merck has submitted no other orders. To the extent that Merck's Reply asks for new relief, Plaintiffs object and incorporate all arguments made in their Opposition to Reconsideration,[3] as well as in Plaintiffs' previous *Daubert* briefings.

---

[2] Motion for Reconsideration of the Court's April 9, 2013 Order and Reasons and Incorporated Memorandum of Law [Rec. Doc. 64435].

[3] VTE Plaintiffs' Memorandum in Opposition to Merck's Motion for Reconsideration of the Court's April 9, 2013 Order [Rec. Doc. 64483].

2

In both his Report[4] and in his deposition, Dr. Spyropoulos provides sound expert support for using the multiplier for **both** DVT and PE.  Merck uses selective sound bites from their counsel's cross-examination of Dr. Spyropoulos, but that cannot negate his Report nor the balance of his testimony.[5]  Indeed, Dr. Spyropoulos' deposition is 311 pages long and he consistently holds true to the principles outlined in his Report, including that the multiplier can and should be applied to both DVT and PE. The Court, or Merck for that matter, need only read his deposition to understand the ultimate point behind Dr. Spyropoulos' testimony:

> What I set off to do was to review the Vioxx clinical program as it pertained to my area of expertise, which is VTE, and I found enough aspects of the capture of outcomes which led me to my conclusions with respect to, again, the probable underestimation of these VTE events, and the fact that if you add a multiplier, and we talked about the multiplier of anywhere from 2 to 1 to 30 to 1, with a reasonable estimate being 10 to 1 of looking at asymptomatic versus symptomatic events, there appears to be a signal with an increased risk of symptomatic VTE in the entire program.

Spyropoulos Depo. at 291:11-24.

Dr. Spyropoulos expressly stated that the multiplier should be applied to PE:

> Q: In order to accurately assess the presence of pulmonary embolism in an underpowered study, does there or does there not need to be some kind of multiplier?
>
> A: Yes, there should be.

---

[4] *See generally* Declaration and Report of Alex C. Spyropoulos ("Spyropoulos Rep."), [Rec. Doc. 64087].

[5] Deposition of Alex Spyropoulos ("Spyropoulos Depo."), [Rec. Doc. 64211-4].

*Id*. at 299:20-300:1.

Dr. Spyropoulos further stated that DVT and PE are subcomponents of the same disease, and that he is comfortable applying the same ratio to both components of the disease. *Id*. at 228:20-229:16. Dr. Spyropoulos noted an "imbedding of VTE within a vascular component" and "imbedding of data" which lead to a "potential of misdiagnosis" and thus, "underreporting of VTE," all of which justifies a multiplier. *Id*. at 287:17-21.[6]

Further, it is not Merck's experts, Drs. Crowther or Kress, who take aim at the application of the same multiplier to both the PE and the DVT branches of VTEs – it is Merck's attorneys who do so. Merck could hire any and as many experts as they wished, and instead of developing expert proof to support what they urge the Court to do, they hyper-parse Dr. Spyropoulos' testimony to make a scientific point that their experts never once address. One must wonder why?

Critically, Merck's studies were considerably underpowered to detect a VTE signal,[7] as noted by peer-reviewed medical literature and by experts

---

[6] For more details on under-powering, *see* Spyropoulos Depo. At 250:15-252:7, and *see generally* Spyropoulos Rep.

[7] Criticism of Merck's clinical trial data is well documented in peer-reviewed literature as skewed towards finding no association between Vioxx and any disease outcome, a methodological error known as "bias towards the null." *See generally* "Cardiovascular Safety of Non-Steroidal Anti-Inflammatory Drugs: Network Meta-Analysis." Trelle S, Reichenbach S, Wandel S et al. *British Medical Journal*. 2011; 342:7086. The article states, ". . . [T]he quality of our analysis is limited by the quality of the underlying data. Although the methodological quality of included trials was generally satisfactory, the quality of reporting was often less than optimal and we found discrepancies in the reported number of events between different sources of information for major

produced by the Attorneys General who are still pursuing this litigation against Merck. Dr. Douglas Zipes (disclosed by the State of Utah) noted that Merck's clinical studies were significantly underpowered to detect a signal.[8] Given the ample proof of under-powering of Merck's clinical trials, it is not only appropriate but necessary to apply a multiplier to correct for Merck's error.

Finally, use of a multiplier to correct for under-powering is common in peer-reviewed literature, and does not change the relative risk ratio of the causation testimony, only the power of the results.

---

trials including ADVANTAGE, VIGOR, and APPROVe. Several trials lacked independent adjudication of events, therefore bias in either direction cannot be excluded, including bias towards the null owing to non-differential misclassification of events or assessor bias in trials without independent adjudication."

[8] *See generally* Expert Report of Dr. Douglas P. Zipes [Rec. Doc. 64508-2]. At 19, Dr. Zipes states, "[t]he ability of a study to answer the question is determined by its "power," and while predictions of power can be made, ultimately it is a function of the number of endpoints occurring in the study, which is determined in large part by the number of subjects in the study. The less common an event, the harder it is to test, and the greater number of trial participants necessary to achieve statistical significance. Many studies end with the conclusion of "no significant effect" of a drug due to the trial being underpowered. Conversely, if an underpowered study still shows a drug effect, particularly if it is confirmed by an adequately-powered study, that can be a very important observation lending credence to the interpretation of the adequately-powered study. The absence of a safety signal in an underpowered study cannot be used to establish safety because the absence of evidence is not the same as evidence of absence. No study specifically designed and powered to detect Vioxx's cardiovascular risk as its primary endpoint was ever performed."

## II.   This Court's Prior Ruling in 2005 Does Not Help Merck.

In its Reply, Merck directs the Court to *In re: Vioxx Products Liability Litigation*, 230 F.R.D. 473 (E.D. La. 2005)[9] for support for its argument that this Court has not always required an intervening change in law or fact when ruling on motions for reconsideration. VTE Plaintiffs would point out to Merck the arguments it made when opposing that motion, arguments it runs from here as fast as it can.  This case is indeed illuminating when applied to the facts at hand.

Interestingly, in *In re: Vioxx Prods. Liab. Litig.*, Merck opposed modification, claiming that the motion was used to "rehash previous arguments." *Id*. at 474-75. Indeed, in opposing the motion, Merck stated that

> "[A] motion to reconsider is not to re-debate the merits of a particular motion. If a party is allowed to address a court's reasons as to why a motion was or was not granted, it would render the entire briefing process irrelevant and lead to endless motions to reconsider." In seeking reconsideration of the Court's order . . . plaintiffs . . . rehash arguments already rejected by the Court. Plaintiffs do not point to any change in controlling law, do not provide any new evidence, and do not demonstrate that the Court's ruling was a clear error of law.[10]

The VTE Plaintiffs couldn't agree more. VTE Plaintiffs make this exact argument against Merck's present Motion, which offers nothing new and rehashes the same law and facts from its previous briefing. It is Merck who

---

[9] This case dealt with modification of an order that limited all parties' ability to contact treating physicians, one that the Court ultimately modified. *See Id*.

[10] Defendants' Opposition to Plaintiffs' Motion to Modify June 6, 2005 Order Regarding Physician Contact [Rec. Doc. 475] at 2 (internal citations omitted). Merck quoted from *Freeport-McMoran Sulphur LLC v. Mike Mullen Energy Equip. Res., Inc.*, 2004 WL 1488665 (E.D. La. June 30, 2004)**.**

6

carries the burden of proving its motion for reconsideration is justified under this standard, a standard it cannot meet.

In its 2005 Opinion, this Court articulated a high standard to justify reconsideration, stating that:

> [a] motion to reconsider should be granted only where the movant demonstrates: (1) intervening change in controlling law, (2) the availability of new evidence not previously available, or (3) the need to correct a clear error of law or to prevent injustice. Reconsideration of an order is an extraordinary remedy which courts should use sparingly. Further, motions for reconsideration are not to be used to redebate the merits of a particular motion.

*In re: Vioxx Prods. Liab. Litig.*, 230 F.R.D. at 474-75 (internal citations omitted).

In the 2005 Opinion, the Court underscored that any attempt to modify a court order with respect to *substantive issues* must be scrutinized closely, and expressly limited its holding in scope. The Court did this first by treating plaintiffs' motion as a one to modify as to discovery issues only, after commenting that the "the plaintiffs have not taken issue with the Court's reasoning." *Id*. at 475.  The Court stressed that the important factor in the decision to modify, in this instance, was that the Court's order did not deal with any substantive issues: "[i]t is important to recognize that the current issue is a discovery issue and not a substantive one . . . " *Id*.  Neither factor, of course, is true here, since Merck attacks the Court's reasoning, and on a substantive issue at that.

Merck's last-ditch effort to attach itself to the coattails of the 2005 Opinion is despite that the Court allowed the modification to prevent injustice,

*not* to correct clear error, as Merck implies in its Reply. Compare *Vioxx Prods. Liab. Litig*. 230 F.R.D. at 475 (". . . the plaintiffs have claimed that the Court's order should be modified to prevent injustice.") to Merck's Reply at 3, ftn. 5. Indeed, Merck has made no argument as to injustice. The Court did not allow reconsideration of its 2005 Opinion to cure clear error, because none was shown, just as Merck cannot show any here. While Merck argues that its Motion should be granted to correct clear error, it has shown no error as to fact or law made by this Court.

Finally, although Merck argues that a party may file a motion for reconsideration without any temporal restriction, VTE Plaintiffs would note that the debated order that was the subject of the 2005 Opinion was issued on June 6, 2005, and that plaintiffs' motion to modify was made on June 15, 2005, *nine days* later. *In re: Vioxx Prods. Liab. Litig.*, 230 F.R.D. at 474 and *see generally* Motion to Modify June 6, 2005 Order [Rec. Doc. 492].[11] Contrast that to the *fifty-six* days that Merck waited here. There, the motion to modify was timely filed; here, Merck's Motion is not. The same principles argued by Merck in 2005, and the same analysis used then by the Court, fully justify denial of Merck's Motion for Reconsideration on procedural grounds alone.

---

[11] **In the 2005 Opinion,** the Court was able to issue its ruling on July 22, 2005, about a month-and-a-half after the debated order was issued. *Vioxx Prods. Liab. Litig*, 230 F.R.D. at 474. Merck's Motion for Reconsideration was filed nearly two months after the Court's April 9, 2013 Order, and the parties have lost nearly five months since then briefing Merck's Motion for Reconsideration.

8

## CONCLUSION

For the forgoing reasons, Defendant Merck's Motion for Reconsideration should be denied.

Respectfully submitted,

/s /*Ann B. Oldfather*
Ann B. Oldfather
KBA Bar #52553
Liaison Counsel/Lead Counsel
OLDFATHER LAW FIRM
1330 S. Third Street
Louisville, KY   40208
502.637.7200
502.637.3999  (fax)
aoldfather@oldfather.com
*Counsel for Certain Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing VTE Plaintiffs' Sur-Reply In Opposition to Merck's Motion for Reconsideration of the Court's April 9, 2013 Order has been served upon Liaison Counsel, Phillip Wittmann and Russ Herman, by U.S. Mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8(C), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 26th day of August, 2013.

/s/ *Ann B. Oldfather*
Ann B. Oldfather