**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **IN RE: VIOXX** | **MDL NO. 1657** |
| **PRODUCTS LIABILITY LITIGATION** | **SECTION L** |
| | **JUDGE FALLON** |
| | **MAG. JUDGE KNOWLES** |

**THIS DOCUMENT RELATES TO:**       *Poole v. Eichholz Law Firm, P.C., et al.*
                                    **No.11-1546**

**FINAL ORDER AND JUDGMENT APPROVING CLASS**
**SETTLEMENT WITH DEFENDANTS|**

Before the Court is the Joint Motion for Final Approval of Class Settlement. (Rec. Doc.

64529). The Court heard oral arguments from counsel at a final Fairness Hearing[1] on August 27,

2013, and, having considered those arguments and the parties' submissions, now issues this

Order and Judgment.

**I.      BACKGROUND**

To put this matter in perspective, a brief review of this litigation is appropriate. This

multidistrict products liability litigation involves the prescription drug Vioxx, known generically

as Rofecoxib. Merck, a New Jersey corporation, researched, designed, manufactured, marketed,

and distributed Vioxx to relieve pain and inflammation resulting from osteoarthritis, rheumatoid

arthritis, menstrual pain, and migraine headaches. On May 20, 1999, the Food and Drug

Administration approved Vioxx for sale in the United States.

Vioxx remained publicly available until September 30, 2004, when Merck withdrew it

from the market after data from a clinical trial known as APPROVe indicated that the use of

Vioxx increased the risk of cardiovascular thrombotic events, such as myocardial infarction and

---

[1] Participants were permitted to appear by telephone. (Rec. Doc. 64551).

ischemic stroke. Thereafter, thousands of individual suits and numerous class actions were filed against Merck in state and federal courts throughout the country alleging various products liability, tort, fraud, and warranty claims. It is estimated that 105 million prescriptions for Vioxx were written in the United States between May 20, 1999, and September 30, 2004. Based on this estimate, it is thought that approximately 20 million patients have taken Vioxx in the United States. On February 16, 2005, the Judicial Panel on Multidistrict Litigation ("JPML") conferred multidistrict litigation ("MDL") status on Vioxx lawsuits filed in various federal courts throughout the country and transferred all such cases to this Court to coordinate discovery and to consolidate pretrial matters pursuant to 28 U.S.C. § 1407. *See In re Vioxx Prods. Liab. Litig.*, 360 F. Supp. 2d 1352 (J.P.M.L. 2005).

Following transfer, one of the first acts taken by this Court was to appoint and organize a Plaintiffs' Steering Committee ("PSC"), which was charged with coordinating and conducting extensive discovery, investigating potential claims, and marshaling supporting evidence. Ultimately, the PSC decided to pursue claims based on heart attacks and strokes, and developed trial packages for those claims. After multiple bellwether trials in this MDL and several trials in state court, the parties negotiated a comprehensive settlement program for claims of myocardial infarction, stroke, and sudden cardiac death. The overwhelming majority of claimants alleging these injuries chose to participate in that settlement program.

Plaintiff Verie Poole is the sister of Catherine Hunt, who died in 2001 as a result of taking the drug Vioxx. The Plaintiff, on behalf of her sister's estate, employed Defendant The Eichholz Law Firm, P.C., ("TELF") in 2004 to assert all available claims against the manufacturer of Vioxx, which were consolidated in this Court. Defendant TELF associated the

2

law firm of Gary, Williams, Parenti, Watson & Gary, P.L., ("the Gary Firm") in Florida to assist with prosecuting its Vioxx cases. After several years of litigation, Plaintiff was informed by the Gary Firm in that her sister's estate had been awarded a settlement of $1,155,281.20, although the timing of the settlement payment was unclear.

The Plaintiff contends that prior to receiving any settlement funds, she was contacted by agents or employees of Defendant TELF and informed of the availability of a lender who could provide her with an advance of a portion of the anticipated Vioxx settlement funds. The Plaintiff contends that at the time she was contacted by Defendant TELF about an advance, she was not told that payment of the Vioxx settlement funds was eminent. Plaintiff further contends that , on March 23, 2009, she ultimately agreed to accept an advance of $20,000 based, in part, upon her belief that receipt of the settlement funds might not occur for quite some time. The Plaintiff also asserts that she was not informed of the close familial and business relationship between the agents and employees of Defendant TELF and Defendant Pacific Legal Funding, LLC, ("PLF"), from whom she received the advance. The Plaintiff received her initial installment of the Vioxx settlement a few weeks later and repaid her advance to Defendant PLF, along with $3,500 in interest and/or fees.

The Plaintiff subsequently filed a class action lawsuit against Defendants in the Southern District of Georgia. The Plaintiff, individually and on behalf of all other Vioxx clients of Defendant TELF who accepted advances from Defendant PLF, asserted claims of fraud, breach of fiduciary duty, usury, and violation of the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"). In addition to compensatory damages, Plaintiff and the putative

3

class sought punitive damages and attorneys' fees. Subsequently, the JPML transferred the case to this Court. The Defendants motion to remand was denied.

The Defendants answered the Plaintiff's complaint and have denied any wrongdoing. Specifically, TELF has denied that it solicited its clients (or anyone else) to obtain advances from PLF. The Defendants further assert that the familial relationship among the respective owners of the companies was expressly disclosed in writing to the Plaintiff and each Settlement Class Member prior to their obtaining any advance from PLF and that all fees and charges associated with such advances also were fully disclosed by PLF. The Defendants deny the allegation that the companies were not operated independently and have specifically and that any proceeds or profits of PLF were shared with TELF. Defendant TELF further denies the allegation that it made misrepresentations to the Plaintiff or any other Settlement Class Member regarding the timing of the payment of any Vioxx settlement. In short, the Defendants assert that the Plaintiff and the Settlement Class Members both obtained the benefit of advances against settlement funds, which were to be paid at some undetermined time, and paid the bargained-for consideration to PLF for that benefit.

The parties indicate that they have engaged in extensive discovery in this matter. As a result of the information obtained during discovery, the parties state that they subsequently engaged in substantive settlement discussions in early 2013. The parties filed a proposed Class Settlement on March 26, 2013. On May 17, 2013, this Court preliminary approved the proposed Class Settlement, conditionally certified the Settlement Class, ordered notice to potential Settlement Class Members, and provided potential Settlement Class Members with an opportunity either to exclude themselves from the Class or to object to the proposed Settlement.

The Court also provisionally approved the procedure and form of notice, and set a final Fairness

Hearing to take place on August, 27, 2013. (Rec. Doc. 64411).

Since this Court's preliminary approval of the Settlement, the Defendants indicate that

they have duly provided notice to all known putative Settlement Class Members by first-class

mail to their current (if known) or their last known address or addresses. In addition, notice of

the Class Settlement was posted on this Court's website.

## II.    LAW & ANALYSIS

### A.    Final Fairness Evaluation

Pursuant to Federal Rule of Civil Procedure 23, governing class actions, "[r]eview of a

proposed class action settlement generally involves two hearings," the first of which is a

"preliminary fairness evaluation" made by the Court. Manual for Complex Litigation (Fourth) §

21.632 (2004). Indeed, within the Fifth Circuit it is routine to conduct a preliminary fairness

evaluation prior to the issuance of notice. *See, e.g.*, *Cope v. Duggins*, 2001 WL 333102, at *1

(E.D. La. Apr. 4, 2011); *In re Shell Oil Refinery*, 155 F.R.D. 552, 555 (E.D. La. 1997); *see also*

Manual for Complex Litigation § 21.6 (4th ed. 2004) ("The two-step process for evaluation of

proposed settlements has been widely embraced by the trial and appellate courts."). During this

evaluation, the Court "should make a preliminary determination that the proposed class satisfies

the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b)." *Id.*

Additionally, the Court "must make a preliminary determination on the fairness, reasonableness,

and adequacy of the settlement terms and must direct the preparation of notice of the

certification, proposed settlement, and date of the final fairness hearing." *Id.* After having

granted preliminary approval and allowed the notice process to move forward, the Court

conducts a more thorough and rigorous analysis of the same factors in order to determine the appropriateness of granting final approval.  Manual for Complex Litigation § 21.6; *see also In re OCA, Inc. Securities & Derivative Litig.*, 2008 WL 4681369, at *11 (E.D. La. Oct. 17, 2008). "Counsel for the class and the other settling parties bear the burden of persuasion that the proposed settlement is fair, reasonable, and adequate." Manual for Complex Litigation (Fourth) § 21.631 (2004); *In re Vioxx Prods. Liab. Litig.*, 239 F.R.D. 450, 459 (E.D. La. 2006).

### B.        Class Action Settlement Prior to Class Certification

"Before an initial class ruling, a proposed class settlement may be effectuated by stipulation of the parties agreeing to a temporary settlement class for purposes of settlement only." William B. Rubinstein, Alba Conte, and Herbert B. Newberg, 4 Newberg on Class Actions § 11:22 (4th ed. 2010). "[A]pproval of a classwide settlement invokes the requirements of Rule 23(e)." *Id.* Rule 23(e) provides that "[t]he claims . . . of a certified class may be settled . . . or compromised only with the court's approval." Fed. R. Civ. P. 23(e); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997). "Settlement classes—cases certified as class actions solely for settlement—can provide significant benefits to class members and enable the defendants to achieve final resolution of multiple suits." Manual for Complex Litigation § 21.612. However, "[c]ourts have held that approval of settlement class actions under Rule 23(e) requires closer judicial scrutiny than approval of settlements reached only after class certification has been litigated through the adversary process." *Id.*

Although "[s]ettlement is relevant to a class certification," as mentioned above, the criteria of Rule 23, particularly that found in subsections (a) and (b), must still be satisfied. *Amchem*, 521 U.S. at 619-20. "Together subsection (a) and (b) requirements insure that a

6

proposed class has 'sufficient unity so that the absent class members can fairly be bound by decisions of the class representatives.'" *In re FEMA Trailer*, 2008 WL 5423488, at *3 (quoting *Amchem*, 521 U.S. 591 (1997)). All of the requirements of Rule 23(a) must be met:

One or more members of a class may sue or be sued as representative parties on behalf of all members only if:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). As this Court has previously recognized,

> The first two requirements focus on the characteristics of the class; the second two focus instead on the desired characteristics of the class representatives. The rule is designed 'to assure that courts will identify the common interests of class members and evaluate the named plaintiffs' and class counsel's ability to fairly and adequately protect class interests.'

*In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 2008 WL 5423488, at *3 (E.D. La. Dec. 29, 2008) (quoting *In re Lease Oil Antitrust Litig.*, 186 F.R.D. 403, 419 (S.D. Tex. 1999)).

Additionally, for class certification, at least one of the subsections of Rule 23(b) must be met. To satisfy this requirement, the Movants urge the Court to find subsection (b)(3) is satisfied by the pending settlements. This subsection provides,

> A class action may be maintained if Rule 23(a) is satisfied and if:
> ****
> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the

controversy. The matters pertinent to these findings include:
(A) the class members' interests in individually controlling the
prosecution or defense or separate actions;
(B) the extent and nature of any litigation concerning the
controversy already begun by or against class members;
(C) the desirability or undesirability of concentrating the litigation
of the claims in the particular forum; and
(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b).

"To succeed under Rule 23(b)(3), Plaintiffs must sufficiently demonstrate both predominance of common class issues and that the class action mechanism is the superior method of adjudicating the case." *In re FEMA Trailer*, 2008 WL 5423488, at *3 (citing *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 623-24 (5th Cir. 1999)).

### C. Rule 23 Criteria

#### 1. Numerosity

As cited above, Rule 23(a)(1) provides that a class action is maintainable only if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "To demonstrate numerosity, the [Movants] must establish that joinder is impracticable through 'some evidence or reasonable estimate of the number of purported class members.'" *In re Vioxx Prods. Liab. Litig.*, 239 F.R.D. 450, 459 (E.D. La. 2006) (quoting *Pederson v. La. State Univ.*, 213 F.3d 858, 868 (5th Cir. 2000)). Rule 23 does not provide a clear formula for determining whether the numerosity requirement has been met; thus, the Court must evaluate numerosity based upon the facts, circumstances, and context of the case. 1 Newberg on Class Actions § 3:3 (4th ed. 2010). Indeed, "[t]here is enormous disparity among the decisions as to the threshold size of the class that will satisfy the Rule 23(a)(1) prerequisites." *Id.* Although plaintiffs bear the

8

burden of showing joinder is impracticable, "a good-faith estimate should be sufficient when the number of class members is not readily ascertainable," and the numerosity requirement "ordinarily receives only summary treatment . . . and has often gone uncontested." *Id.*

The Movants argue that the Settlement Class satisfies the numerosity requirement because the Settlement Class contains 25 individuals located in multiple states who all have small claims of about $3,000. The Court agrees that the numerosity requirement is satisfied in this case.

### 2.    Commonality

The commonality requirement under Rule 23(a)(2) requires for maintenance of a class action that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality "does not require that all questions of law or fact raised in the litigation be common. The test or standard . . . is qualitative rather than quantitative." Rubinstein, 1 Newberg on Class Actions § 3:10; *see also In re FEMA Trailer*, 2008 WL 5423488, at *6. Indeed, "[t]he commonality requirement is satisfied if at least one issue's resolution will affect all or a significant number of class members." *In re Vioxx*, 239 F.R.D. at 459 (citing *James v. City of Dallas*, 254 F.3d 551, 570 (5th Cir. 2001)). The Rule 23(a)(2) commonality "requirement is easily met in most cases." *Id.*

Movants argue that the Settlement Class satisfies the commonality requirement because the proposed Settlement Class Members allege injuries and damages that all arise out of the advance of funds by PLF to clients of TELF with Vioxx-related claims. The Court agrees that the Settlement Class satisfies the commonality requirement.

9

### 3.    Typicality

Rule 23(a)(3) provides that a class action may be maintained only if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The typicality criterion focuses on whether there exists a relationship between the plaintiff's claims and the claims alleged on behalf of the class." Rubinstein, 1 Newberg on Class Actions § 3:13. "Thus, a plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims or other claims members, and if his or her claims are based on the same legal theory. When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of varying fact patterns which underlie individual claims. However, this is not a foregone conclusion." *Id.*

Movants argue that the Settlement Class satisfies the typicality requirement because the Plaintiff advances substantially the same theory of liability as all other Settlement Class Members. The Court agrees that the Class Settlement satisfies the typicality requirement.

### 4.    Adequacy of Representation

Rule 23(a)(4) requires for maintenance of a class action that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The purpose of this requirement is to protect the legal rights of absent class members. First, the representatives must not possess interests . . . antagonistic to the interests of the class. Second, the representatives' counsel must be qualified, experienced, and generally able to conduct the litigation." Rubinstein, 1 Newberg on Class Actions § 3:21; *see also Gen. Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 157 n.13 (1982) ("[T]he adequacy of representation

10

requirement . . . also raises concerns about the competency of class counsel and conflicts of interest."). With regard to the former, a court is to "look at the circumstances of the plaintiff individually to determine if the plaintiff has any conflict with class members." Rubinstein, 1 Newberg on Class Actions § 3:23. "Only those material conflicts pertaining to the issues common to the class will bar a class action." *Id.* As to the latter requirement, "courts consider the competence and experience of class counsel, attributes which will most often be presumed in the absence of proof to the contrary." *Id.* at § 24.

Movants argue that the Settlement Class satisfies the adequacy of representation requirement because the interests of the Class Representative are sufficiently aligned with those of the Class, and the Class Representative has vigorously pursued the litigation on behalf of the other Settlement Class Members. Movants also argue that Class Counsel easily meet the adequacy requirement because the Plaintiff's counsel are competent and experienced in class actions and in complex litigation. The Court agrees that the Class Settlement satisfies the adequacy of representation requirement.

### 5.     Common Questions of Law & Fact Predominate

Rule 23(b)(3) provides that a class action is maintainable if all the prerequisites of subsection (a) are satisfied and "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). Factors for the Court to consider in its determination include:

11

> (A) the class members' interests in individually controlling the
> prosecution or defense or separate actions;
> (B) the extent and nature of any litigation concerning the
> controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation
> of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b).

There is "considerable overlap" between commonality and the predominance of common questions of law and fact, resulting in many courts handling both issues together. Rubinstein, et al., 2 Newberg on Class Actions § 4:22. However, "the predominance test is 'far more demanding' than the commonality test." *In re FEMA Trailer*, 2008 WL 5423488, at *12 (quoting *Unger v. Amedisys, Inc.*, 401 F.3d 316, 320 (5th Cir. 2005)). "To predominate, common issues must form a significant part of individual cases." *In re Vioxx*, 239 F.R.D. 450, 460 (E.D. La. 2006) (citing *Mullen*, 186 F.3d at 626). "Judicial economy factors and advantages over other methods for handling the litigation as a practical matter underlie the predominance and superiority requirements for class actions certified under Rule 23(b)(3)." Rubinstein, et al., 2 Newberg on Class Actions § 4:24.

Movants argue that common questions of law and fact predominate because the claims of each Settlement Class Member arise out of the alleged common behavior of the Defendants, and therefore, there is one duty and breach question applicable to all claims: whether the Defendants' acted improperly in their dealings with Settlement Class Members with respect to the advances of funds. The Court finds that common questions of law and fact exist and predominate.

6.      **Fairness, Reasonableness, & Adequacy**

The Court is also required to render a determination on the fairness, reasonableness, and adequacy of the Class Settlement. The Movants state that they have conducted extensive discovery, which has provided a sufficient factual basis to evaluate the underlying claims and defenses. They further assert that the Class Settlement will allow the parties to avoid unnecessary expenditures, provide immediate relief, and result in judicial efficiency. After considering the documents presented, the arguments of counsel, and the law applicable to this matter, the Court agrees with the settlement proponents.  Accordingly, the Court finds that the proposed Class Settlement is fair, reasonable, and adequate in its entirety.

## IV.    CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that the Joint Motion for Final Approval of Class Settlement (Rec. Doc. 64529) is **GRANTED**.

**IT IS FURTHER ORDERED** that**:**

1.      <u>**Jurisdiction of the Court**</u>. The Court has personal jurisdiction over all Settlement Class Members because adequate notice has been provided to them and because they have been provided the opportunity to exclude themselves from the Action. The Court has subject matter jurisdiction over this Action, including, without limitation, jurisdiction to approve the Settlement Agreement and to dismiss the Action on the merits and with prejudice.

2.      <u>**Incorporation of Documents.**</u> This Final Order and Judgment incorporates herein and makes a part hereof (i) the Settlement Agreement (a copy of which, without exhibits, is appended hereto as Exhibit 1); (ii) the Class Notice (a copy of which is appended hereto as Exhibit 2); and (iii) the CAFA service list (appended hereto as Exhibit 3). The definitions of

13

terms set forth in the Settlement Agreement are incorporated hereby as though fully set forth in this Judgment.

3.    **Final Certification of the Class for Settlement Purposes.** A class for settlement purposes is hereby finally certified consisting of all persons who entered into a litigation funding transaction with PLF whereby such person received an advance relative to a Vioxx settlement obtained by a client or clients of Defendant TELF and, further, where such person paid to PLF (by a disbursement from the Vioxx settlement proceeds) some fee, interest or other charges, exclusive of the repayment of the principal amount of the advance. Excluded from the Settlement Class are Defendants and any person, firm, trust, corporation, or other entity related or affiliated with Defendants including, without limitation, persons who are officers, directors, employees, associates or partners of the Defendants. None of the 25 potential Settlement Class Members have timely and validly excluded themselves from the Settlement Class, and therefore all 25 members of the Settlement Class shall be bound by this Final Order and Judgment and the terms of the Settlement Agreement.

4.    **Class Findings.** For purposes of the Settlement of the Action (without an adjudication on the merits), the requirements of due process and the Federal Rules of Civil Procedure and the Rules of the Court have been met in that:

The members of the Settlement Class are so numerous that it is impracticable to bring all members of the Settlement Class before the Court.

There is a well-defined community of interest among members of the Settlement Class in certain questions of law or fact that are common to the Settlement Class, are substantially similar, and predominate over any individual questions of fact and law. Plaintiff claims that all of

the members of the Class have been harmed in a similar fashion as a result of a pattern of conduct by Defendants. Specifically, it is contended that all the members of the Class were not advised of the timing of their Vioxx settlement payments, nor were they adequately informed of the relationship between the Defendants. Thus, common questions include whether: (i) Defendant PLF's conduct was improper toward each Settlement Class Member and, (ii) Defendant TELF's conduct fell below the duty of care owed by it to the Settlement Class. These common questions are central to each Settlement Class Member's claim and predominate over questions affecting only individual members of the Settlement Class.

The claims of the Class Representative, Verie Poole, are typical of the claims of the Settlement Class, and the Class Representative will fairly and adequately protect the interests of the Class, in that: (i) the interests of the Class Representative and the nature of her alleged claims are consistent with those of the Settlement Class; (ii) there are no conflicts between or among the Class Representative and Settlement Class Members; (iii) the Class Representative has been and is capable of continuing to be an active participant in both the prosecution of, and the settlement negotiations of, the Action; and (iv) the Class Representative and the Settlement Class Members are represented by qualified, reputable counsel who are experienced in preparing and prosecuting class actions, including those involving the sort of practices alleged by Plaintiff Verie Poole in this Action.

A resolution of the Action in the manner proposed by the Settlement Agreement is superior to other available methods for a fair and efficient adjudication of the Action. In making these findings, the Court has considered, among other factors: (i) the interest of Settlement Class Members in individually controlling the prosecution or defense of separate actions; (ii) the

impracticability or inefficiency of prosecuting or defending separate actions; (iii) the extent and nature of any litigation concerning these claims already commenced; and (iv) the desirability of concentrating the litigation of the claims in a particular forum.

5. **Satisfaction of Due Process**. The Court finds that the mailing of the Class Notice and the publishing of the Class Notice on the Court's website as provided for by, and undertaken pursuant to, the Preliminary Approval Order (i) constituted the best practicable notice to members of the Settlement Class under the circumstances, (ii) constituted notice that was reasonably calculated, under the circumstances, to apprise members of the Settlement Class of the pendency of the Action and of the terms of the Settlement Agreement and their rights thereunder, including their rights to object to those terms or to exclude themselves from the proposed Settlement and to appear at the Fairness Hearing, (iii) was reasonable and constituted due, adequate and sufficient notice to all persons entitled to be provided with notice, and (iv) fully complied with the requirements of the United States Constitution, the Federal Rules of Civil Procedure and the Rules of the Court.

6. **CAFA Notice**. The Court finds that service of the Settlement Agreement together with the materials specified in 28 U.S.C. § 1715(b), upon the entities and individuals listed in Exhibit 3 hereto on April 4,, 2013 constituted sufficient and adequate notice to the appropriate federal and state officials as required by the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715.

7. **Adequate Representation.** Settlement Class Counsel and the Class Representative have adequately represented the Settlement Class throughout this Action. Therefore, the Court finds that Mark A. Tate and C. Dorian Britt of Tate Law Group, LLC shall

16

be appointed as Settlement Class Counsel and Verie Poole shall be appointed Settlement Class Representative.

8.      **Final Approval.** The terms and provisions of the Settlement Agreement have been entered into in good faith and are hereby fully and finally approved as fair, reasonable and adequate as to, and in the best interests of, Defendants and the Settlement Class Members and in full compliance with all applicable requirements of law, including constitutional due process. Defendants and Settlement Class Members are hereby directed to implement and consummate the Settlement Agreement according to its terms and provisions.

9.      **Claims Released.** The Release set forth in Section 5.1.1 of the Settlement Agreement is expressly incorporated in this Final Order and Judgment in all respects (and also is set forth in its entirety, below) and is effective as of the date of this Final Order and Judgment, such that Defendants and the Released Parties are forever discharged from the claims or liabilities that are the subject of the Release. Defendants and the Released Parties shall be completely released, acquitted and forever discharged from any and all claims, demands, judgments, actions, suits, or causes of action, known or unknown, whether class, individual or otherwise (whether or not any member of the Settlement Class has objected to the Settlement or makes a claim upon or participates in the Settlement Fund, whether directly, representatively, derivatively, or in any other capacity) that members of the Settlement Class ever had, have now or hereafter can, shall, or may have on account of, arising out of, or relating to any act or omission of Defendants or the Released Parties concerning the subject matter of the Action, including but not limited to, any conduct alleged and causes of action asserted in the Action, or that could have been asserted or alleged in the Action and that arise out of the facts alleged in the

17

Action (collectively the "Released Claims"). The Settlement Class Members shall not, after the Execution Date, seek to establish liability in the Action against Defendants or the Released Parties based, in whole or in part, upon any of these Released Claims or conduct at issue in the Released Claims.

10.     **Permanent Injunction.** All Settlement Class Members who have not been excluded from the Settlement Class (and all persons acting on behalf of Settlement Class Members who have not been excluded from the Settlement Class) and any individual or entity who has not properly opted out are hereby permanently and forever barred and enjoined from maintaining, continuing, prosecuting, and/or commencing the Action or any and all claims or actions, pending or future, against Defendants that arise from, concern or otherwise relate, directly or indirectly, to the subject matter of the Action. The Court finds that entry of this permanent injunction is necessary and appropriate to aid the Court's jurisdiction over the Action and to protect and effectuate the Settlement Agreement and this Final Order and Judgment.

11.     **Binding Effect.** The terms of the Settlement Agreement and of this Final Order and Judgment, including all exhibits thereto, shall be forever binding on the Class Representative, Settlement Class Members, and Defendants, as well as their heirs, executors and administrators, successors and assigns, and those terms shall have *res judicata* and other preclusive effect in all pending and future claims, lawsuits or other proceedings that assert claims that are encompassed within the Released Claims set forth in Section 5.1.1 of the Settlement Agreement.

12.     **No Admissions.** Neither this Final Order and Judgment nor the Settlement Agreement (nor any document referred to herein or any action taken to carry out this Final Order

18

and Judgment) is, may be construed as, or may be used as any evidence, admission or concession by or against Defendants of the validity of any claim or any actual or potential fault, wrongdoing or liability whatsoever. Entering into or carrying out the Settlement Agreement, and any negotiations or proceedings related thereto shall not in any event be construed as, or deemed to be evidence of, an admission or concession with regard to the denials or defenses by any of the Defendants and shall not be offered or received in evidence in any action or proceeding against any of them in any court, administrative agency or other tribunal for any purpose whatsoever other than as evidence of the settlement or to enforce the provisions of this Final Order and Judgment and the Settlement Agreement; provided however, that this Final Order and Judgment and the Settlement Agreement may be filed in any action against or by any of the Defendants to support a defense of *res judicata*, collateral estoppel, release, waiver, good faith settlement, covenant not to sue, accord and satisfaction, judgment bar or reduction, full faith and credit, or any theory of claim preclusion or issue preclusion or similar defense or counterclaim.

13. **Enforcement of Settlement Agreement.** Nothing in this Final Order and Judgment shall preclude any action to enforce its terms or the terms of the Settlement Agreement, including, without limitation, the releases and permanent injunction.

14. **Severability of Attorneys' Fees and Expenses Award.** Notwithstanding anything herein to the contrary, this Final Order and Judgment shall be entirely severable from, and not subject to appeal on the basis of, any award of attorneys' fees and expenses or costs to be made to Settlement Class Counsel and any such award of attorneys' fees and expenses or costs shall have no effect on the finality or effectiveness of this Final Order and Judgment.

19

15.      **Retention of Jurisdiction.** The Court has jurisdiction to enter this Final Order and Judgment. Without affecting the finality of this Judgment in any way, this Court hereby retains continuing and exclusive jurisdiction over: (a) implementation of this Settlement and any distribution to Settlement Class Members pursuant to further orders of this Court; (b) disposition of the Settlement Fund pursuant to further orders of this Court; (c) hearing and determining an application for attorneys' fees, costs, expenses, and interest; (d) Defendants until the final judgment contemplated herein has become effective and each and every act agreed to be performed by the Settling Parties all have been performed pursuant to the Settlement Agreement; (e) hearing and ruling on any matters relating to the plan of distribution of Settlement proceeds; and (f) all parties, including the Settlement Class Members, for the purpose of enforcing and administering the Settlement Agreement and Exhibits thereto and the mutual releases and other documents contemplated by, or executed in connection with, the Settlement Agreement.

16.      **Plan of Distribution**. The plan of distribution of the Settlement Fund as set forth in Section 2.3 of the Settlement Agreement is hereby approved and incorporated by reference in this Final Order and Judgment. The Settlement Fund and plan of distribution shall provide redress and satisfaction of all claims by the Settlement Class Members related to the subject matter of the Action. In no event, with the exception of reasonable costs of notice and claims administration as set forth in Section 12.1 of the Settlement Agreement, shall Defendants have any further responsibility, financial obligation, or liability whatsoever to the Settlement Class Members.

17.      **Dismissal with Prejudice**. This Action, including all claims and counterclaims asserted in it and/or resolved herein, is hereby dismissed on the merits and with prejudice against

20

the Class Representative and all other Settlement Class Members (with respect to the claims they

have asserted) and Defendants (with respect to claims made against them, and/or any

counterclaims they may have asserted as Defendants), without fees or costs to any party except

as otherwise provided in this Final Order and Judgment or any separate order concerning

attorneys' fees and expenses.

New Orleans, Louisiana, this 27th day of August, 2013.

UNITED STATES DISTRICT JUDGE