UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| In re:  VIOXX | * | MDL No. 1657 |
|      Products Liability Litigation | * | |
| | * | |
| This Document Relates to: | * | SECTION L |
| | * | |
| *State of Alaska v. Merck & Co., Inc.,* | * | JUDGE ELDON E. FALLON |
| 3:06-CV-00018 | * | MAGISTRATE JUDGE KNOWLES |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## <u>STATE OF ALASKA RENEWED MOTION TO REMAND</u>

Michael C. Geraghty
Attorney General

Clyde E. Sniffen, Jr.
Senior Assistant Attorney General
Alaska Law Department
1031 West 4th Avenue #200
Anchorage, Alaska 99501
Telephone: 907/269-5100

Scott A. Powell, Esquire
Don McKenna, Esquire
Matthew C. Minner, Esquire
Brian M. Vines, Esquire
Hare, Wynn, Newell and Newton, LLP
2025 3rd Avenue North; Suite 800
Birmingham, Alabama 35203
Telephone: 205/328-5330

James E. Fosler, Esquire
Fosler Law Group, Inc.
737 West 5th Avenue; Suite 205
Anchorage, Alaska  99501
Telephone: 907/277-1557

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................ 2

STATEMENT OF THE CASE ......................................................................................... 2

STANDARD OF REVIEW .............................................................................................. 4

ARGUMENT ................................................................................................................... 5

    A.  No Federal Issues are "Necessary" to the Resolution of the Alaska UTPA Claim ............ 5

        1.  The FDCA is Not "Necessary" to Alaska's UTPA Claim ..................................... 7

        2.  The Medicaid Statute is Not "Necessary" to Alaska's UTPA Claim .................... 8

            a.  The Medicaid statute is Not "Implicated" by Alaska's UTPA Claim ........ 9

            b.  The Medicaid Statute is Not "Necessary" to Alaska's UTPA Claim ....... 10

    B.  Merck Cannot Satisfy the Other *Gunn* Factors Based on "Implicated" Issues with the FDCA and Medicaid Statute .................................................................................... 13

        1.  According to Supreme Court Precedent, FDCA Issues Cannot Confer Federal-Question Jurisdiction over Alaska's UTPA Claim ................................................ 14

        2.  *Grable & Sons* and Other Supreme Court Precedent Provide No Support for Federal-Question Jurisdiction based on the Medicaid Statute ............................. 16

    C.  District Courts Across the Country Have Rejected Similar Arguments for Federal-Question Jurisdiction ..................................................................................................... 17

    D.  Alaska's Amended Complaint Provides Further Support for Remand ........................... 20

CONCLUSION ............................................................................................................... 22

The State of Alaska ("Alaska") files this Renewed Motion to Remand its claim under the Alaska Unfair Trade Practices and Consumer Protection Act ("Alaska UTPA") to the Superior Court for the State of Alaska, Third Judicial District at Anchorage.

## INTRODUCTION

Alaska's state-law claim is due to be remanded because no federal issue is "necessary" to the claim asserted in its Original or Amended Complaints.  Merck's liability in this case depends only on whether its conduct violated Alaska law.  Furthermore, even if federal issues were somehow "implicated," as Merck argues, these issues would not be substantial enough to confer federal jurisdiction and would upset the balance between state and federal courts.  Federal jurisdiction based on allegations of "implied" federal issues would turn Merck's burden for establishing federal jurisdiction on its head.

Based on recent Supreme Court precedent, numerous courts across the country have rejected the argument that sovereign states' claims can be removed to federal court based on allegations of mere "implications" of federal law.  Given the hesitance with which courts must consider federal jurisdiction over a sovereign state's claims, this Court should join with the others and reject Merck's attempt to establish federal jurisdiction on such a tenuous basis.

## STATEMENT OF THE CASE

Alaska filed its Original Complaint alleging violations of the "Unfair Trade Practice and Consumer Protection Act," AS 45.50.471 *et seq*. (UTPA), in the Third Judicial District in Anchorage.  (Ex. A, Complaint of the State of Alaska ("Original Complaint") ¶¶ 12-20).  In its Original Complaint, filed on December 23, 2005, "the State of Alaska" brought this action related to Merck's repeated violations of the UTPA related to its promotion and sale of Vioxx in Alaska.  (*Id.* at ¶¶ 12-24, p. 8).  The UTPA declares "unlawful" any conduct by Merck that was

2

an "unfair method[] of competition" or an "unfair or deceptive act or practice."   AS §
45.50.471(a).  Alaska need only establish that "the acts and practices [of Merck] were capable of
being interpreted in a misleading way."  *Odom v. Fairbanks Memorial Hosp.*, 999 P.2d 123, 132
(Ak. 2000).  That is, the "act or practice is deceptive or unfair if it has the capacity or tendency to
deceive."  *Id.*  Accordingly, Alaska need not establish reliance by, or injury to, any particular
Alaskan Healthcare Provider or consumer.

Alaska's Original Complaint details Merck's conduct in Alaska that violated Alaska law.
Alaska alleged that Merck made misrepresentations in Alaska that Vioxx was "safe and
effective" when Merck was aware of the hazards associated with Vioxx.  (*Id.* at ¶¶ 8-11).
Alaska's Original Complaint provides specific details of how Merck's conduct in Alaska
violated the UTPA.  (*Id.* at ¶¶ 12-20).  Included in the allegations in the Original Complaint are
that Merck "induced the State of Alaska to authorize expenditures of Medicaid fund for the
purchase of Vioxx."  (*Id.* at ¶¶ 19 & 22).  In its Original Complaint, Alaska sought restitution,
pursuant to section 45.50.501(b), to recover "the value of all payments that the State of Alaska
made for Vioxx prescriptions."  (*Id.* at p. 8).  In its Amended Complaint, Alaska seeks only
injunctive relief, civil penalties, costs and attorneys fees, as well as pre and post judgment
interest.  (Ex. B, First Amended Complaint of the State of Alaska ("Amended Complaint") at p.
21).

Alaska seeks civil penalties of $25,000 for each separate violation of section 45.50.471.
(Amended Complaint p. 21). Alaska Statute 45.50.551 provides that "the Attorney General . . .
may recover, on behalf of the state, a civil penalty" for each violation of AS 45.50.471.  In
deference to the inherent power of the Court, Alaska also requested all other relief that the Court
deems "just and equitable." (*Id.*).

## STANDARD OF REVIEW

As this Court recognized, Merck bears the burden of establishing federal jurisdiction. *In re Vioxx Products Liability Litigation,* 843 F. Supp. 2d 654, 656 (E.D.La. January 3, 2012). When considering whether a complaint gives rise to federal jurisdiction, courts must "strictly construe removal jurisdiction." *Willy v. Coastal Corp.*, 855 F.2d 1160, 1164 (5th Cir. 1988). In furtherance of this principle, the Fifth Circuit requires "removal statutes [] to be construed strictly against removal and for remand." *Eastus v. Blue Bell Creameries, LP*, 97 F.3d 100, 106 (5th Cir. 1996). The basis for jurisdiction "must affirmatively and distinctly appear and cannot be helped by presumptions or by argumentative inferences drawn from the pleadings." *Norton v. Larney*, 266 U.S. 511, 516 (1925).

Merck must also overcome significant federalism concerns to establish federal jurisdiction in this case.  The Supreme Court has counseled that federal courts should be "reluctant to snatch cases which a State has brought from the courts of that State, unless some clear rule demands it." *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for So. Cal.*, 463 U.S. 1, 22 (1983). As many courts have recognized, removal "raises significant federalism concerns."  *In re Vioxx*, 843 F. Supp. 2d at 657 (quoting *Willy*, 855 F.2d at 1164). "Due regard for the rightful independence of state governments . . . requires that [federal courts] scrupulously confine their own jurisdiction to the precise limits which the statute has defined." *Healy v. Ratta*, 292 U.S. 263, 270 (1934).  Accordingly, "[d]oubts regarding jurisdiction should be resolved against exercising jurisdiction." *In re Vioxx*, 843 F. Supp. 2d. at 657 (citing *Acuna v. Brown & Root Inc.*, 200 F.3d 335, 339 (5th Cir. 2000)).

## ARGUMENT

Courts across the country have rejected defendants' attempts to remove sovereign states' claims based on defendants' assertions of "implicated" federal issues.  Because Merck does not contend "federal law creates [Alaska's] cause of action," the only issue for this Court to consider is whether Alaska's "right to relief necessarily depends on resolution of a substantial question of federal law." *In re Vioxx*, 843 F. Supp. 2d at 668.  The Supreme Court recently distilled its prior case law on this issue into the following four factors: a federal issue must be "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress" to support federal-question jurisdiction.[1] *Gunn v. Minton*, 133 S. Ct. 1059, 1065 (Jan. 3, 2012).

Under this precedent, Merck cannot satisfy its burden based on allegations that Alaska's complaint is "implicity premised" on violations of the Food, Drug & Cosmetic Act ("FDCA") and "implicates" the Medicaid statute. (Ex. C, Notice of Removal ¶¶ 11-15).  As explained below, decisions from the Supreme Court, including *Grable & Sons Metal Prods. v. Darue Eng'g*, 545 U.S. 308 (2005), the Fifth Circuit, and district courts across the country confirm that Merck cannot satisfy the first, much less all four, of the Supreme Court's requirements.

### A.     No Federal Issues are "Necessary" to the Resolution of the Alaska UTPA Claim

Based on Supreme Court and Fifth Circuit precedent, numerous district courts have found that neither the FDCA nor Medicaid laws or regulations are "necessary" to state-law claims like Alaska's.  A federal issue is "necessary" only if the Plaintiff's claims, as alleged in the complaint, depend on the resolution of a disputed issue of federal law.  For example, in *Grable & Sons* the plaintiff could succeed only if it prevailed on its proffered interpretation of the federal

---

[1] The Fifth Circuit has nearly identical factors for considering when a federal issue is sufficient to justify federal-question jurisdiction.  *Singh v. Duane Morris, LLP*, 538 F.3d 334, 338 (5th Cir.2008).

statute governing the notice required before the IRS seized property.  545 U.S. at 314-15.  In that case, the Court considered whether a state quiet-title action was subject to federal jurisdiction where the case hinged on whether a delinquent taxpayer was properly served.  The Supreme Court recognized that "[w]hether Grable was given notice within the meaning of the federal statute [was] an essential element of" its state law claim.  *Id.*; *see also*, *In re Vioxx*, 843 F. Supp. 2d at 668 (noting the interpretation of the federal statute in *Grable & Sons* was "dispositive").  Similarly, in *Gunn*, where the Court held that federal-question jurisdiction did not exist over a state legal malpractice claim, the Court found federal law was "necessary" because "to prevail" the plaintiff's case would have "necessarily require[d] application of [federal] patent law to the facts of" the plaintiff's case.[2]  133 S. Ct. at 1065.  In other words, in both *Grable & Sons* and *Gunn*, the plaintiffs could prevail on the claims alleged in their complaints only if a federal issue was resolved in the plaintiff's favor.

The Fifth Circuit also recognizes that a federal issue is "necessary" only if the federal issue must be resolved for the plaintiff to succeed on its claim.  In *Howery v. Allstate Insurance Company*, the Fifth Circuit held that even an explicit allegation of violations of federal law did not create a "necessary" federal issue where the plaintiff's claim did not depend on the alleged violations of federal law.  243 F.3d at 912, 918 (5th Cir. 2001).  The plaintiff alleged that the defendant's conduct violated "the Federal Trade Commission rules, regulations, and statutes" in support of a claim under Texas law. *Id.* at 915. The Texas law in *Howery*, like the Alaska UTPA, "forbid[] a wide range of conduct, prohibiting '[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce.'" *Id*. at 918 (quoting Tex. Bus. & Com. Code § 17.46(a)).

---

[2] The Court went on to conclude that the federal issue was not "substantial" enough to satisfy the requirements of *Grable & Sons*.  *Gunn*, 133 S. Ct. at 1066-68.

The Fifth Circuit rejected the defendant's contention that alleging violations of federal law in support of the state-law claim created federal jurisdiction. The Court noted that although violations of federal law "could possibly fall within the broad scope of" the Texas law, the federal violations were not "an element of the [state law claim]." *Id*. Because "no federal right [was] an element of" the plaintiff's claim, "interpretation of a federal right [was] **not necessary**" to the resolution of the state-law claim. *Id*. (empashis added). The Fifth Circuit went on to say that "even if" violations of federal law were an element of the plaintiff's state law claim, "[a]s an alternate theory supporting a single-claim, the federal question [was] **not a necessary** element of the state claim, and thus [did] not create federal question jurisdiction." *Id.* (emphasis added). Because the plaintiff in *Howrey* could succeed on its claim whether or not the federal issues were resolved in his favor, the Fifth Circuit concluded the federal issues were not "necessary."

When this precedent is applied to Alaska's claim stated in its Original Complaint, neither the FDCA nor Medicaid statute are "necessary." Even more so, Alaska's Amended Complaint contains no "necessary" federal issues.

1.      The FDCA is Not "Necessary" to Alaska's UTPA Claim

First, Merck does not and cannot provide any support for its assertion that the claim asserted in Alaska's Original Complaint "is implicitly premised upon alleged violations" of the FDCA. (Ex. C, Notice of Removal, ¶ 11). Not a single paragraph in Alaska's Original or Amended Complaint alleges a violation of the FDCA. Further, the Alaska UTPA requires no FDCA violations. The only issue "necessary to resolution" of the claims asserted in Alaska's Original and Amended Complaint  is whether Merck's conduct was "unfair or deceptive" as defined by Alaska law. AS §§ 45.50.471(a).  Accordingly, on the face of Alaska's well-pled Original and Amended Complaints, no federal issue is "necessary to resolution" of the Alaska

UTPA claim, and, therefore, no basis for federal-question jurisdiction exists. *Gunn*, 133 S.Ct. at 1065; *Singh*, 538 F.3d at 338. This fact alone is sufficient to reject Merck's argument that the FDCA creates federal-question jurisdiction.

For the sake of argument, even if the FDCA is somehow "implicated" by Alaska's Original or Amended Complaints, Alaska's state-law claim does not involve a federal issue "necessary to [its] resolution" as required by *Gunn*, 133 S.Ct. at 1065 and *Singh*, 538 F.3d at 338. Alaska can succeed on the claim alleged in its Original and Amended Complaints without establishing a violation of federal law. As this Court recognized when addressing a nearly identical argument, the FDCA "issues flagged by Merck may not be necessary to resolution of [a state's] claim." *In re Vioxx*, 843 F. Supp. 2d at 669. Even if Merck's conduct as alleged in Alaska's Original and Amended Complaints also happen to be a "violation of the FDCA rules and regulations," (Notice of Removal ¶¶ 11-14), such a violation is not required to establish a violation of the Alaska UTPA. *See Howery*, 243 F.3d at 918. At most, Merck's attempt to read violations of the FDCA into Alaska's Original and Amended Complaints is an alternate theory that does not give rise to federal jurisdiction. *See Id.*

The Fifth Circuit's analysis in *Howery* effectively forecloses Merck's FDCA argument. If *explicit* allegation of violations of federal law are not "necessary" to a similar state law claim, 243 F.3d at 918, Merck cannot claim that it's alleged "implicated" federal issues are sufficient to establish federal jurisdiction.

### 2. The Medicaid Statute is Not "Necessary" to Alaska's UTPA Claim

Merck's argument that Medicaid regulations and law somehow create federal jurisdiction is equally unavailing. It is true that Alaska's Original Complaint mentions that Vioxx was a drug covered by Alaska's Medicaid program, alleges that Merck made representations regarding

Vioxx related to Alaska's Medicaid program, and alleges that Merck's conduct caused Alaska's Medicaid program to spend money.  (Ex. A, Complaint ¶¶ 7, 8, 19, & 22). Alaska also requested restitution "of all payments that the State of Alaska made for Vioxx prescriptions." (*Id.* at p. 8). However, these statements do not create a federal cause of action nor do they raise a "necessary" federal issue.

>    a.    *The Medicaid statute is Not "Implicated" by Alaska's UTPA Claim*

First, Merck's Medicaid argument must go far beyond the "face of the complaint" to "implicate" this federal issue.  *See In re Vioxx*, 843 F. Supp. 2d at 657.  Merck cannot point to a single issue in Alaska's Original Complaint related to Medicaid that must be resolved for Alaska to prevail. Merck notes that federal law governs what drugs can be included in states' formularies and that states, using some federal money, must reimburse pharmaceutical companies for purchases except for in certain situations, (Ex. C, Notice of Removal at ¶¶ 15-18) but never explains how these non-controversial facts are federal issues "necessary" to Alaska's UTPA claim.

Merck mentions the "regulatory framework" but does not, and cannot, explain how regulatory issues must "necessarily" be resolved for Alaska to prevail on its Alaska UTPA claim. (Ex. C, Notice of Removal ¶ 19).  Next, Merck baldly asserts that Alaska "alleg[ed] Vioxx should not have been a part of [the Medicaid] program," *id.*, but nowhere in the Original Complaint does Alaska actually make that allegation nor does Alaska's UTPA violation depend on such an allegation.

Merck cannot base federal jurisdiction on incanted federal issues in the Original Complaint.  Merck failed to provide a single citation to Alaska's Original Complaint when alleging that Alaska's claims depend on the Medicaid statute. *See* (Notice of Removal ¶¶ 8, 15-

19).  As noted above, the basis for federal jurisdiction "must affirmatively and distinctly appear and cannot be helped by presumptions or by argumentative inferences drawn from the pleadings."  *Norton*, 266 U.S. at 516.  A fair reading of Alaska's Original Complaint does not support Merck's contention that the Medicaid statute is "implicated."

> b.      *The Medicaid Statute is Not "Necessary" to Alaska's UTPA Claim*

Even if the Medicaid statute were somehow "implicated," it is not a federal issue "necessary" to the resolution of Alaska's claim.  Based on Alaska's Original Complaint, it could obtain relief related to Alaska's expenditures on Vioxx without any interpretation of the Medicaid statute.  Certainly, Alaska can also obtain the penalties and injunctive relief sought in the Amended Complaint without reference to the Medicaid statute.   At most, whatever allegations Merck claims are related to Medicaid "merely served to describe types of conduct that violated [Alaska law]," these allegations do not create a federal issue "necessary" to Alaska's claim.  *Howery*, 243 F.3d at 918.  Even if Alaska claimed violations of the Medicaid statute (which it does not), those allegations would be "an alternate theory supporting a single-claim" and would be insufficient to confer federal-question jurisdiction.  *Id.*  "[T]he federal question [would] not [be] a necessary element of the state claim, and thus [would] not create federal question jurisdiction." *Id*

Furthermore, numerous district courts have considered this exact issue and held that the Medicaid statute is not "necessary" when a state specifically seeks damages related to expenditures for drugs because those allegations simply support a state-law claim and do not depend on interpretations of federal law.  *See infra* 17-20.   For example, in *Mississippi ex rel Hood v. Astrazeneca*, the court rejected the defendant's contention that a federal issue was present where Mississippi claimed the defendant made false statements "for use in determining

rights to a Medicaid benefit."  744 F. Supp. 2d 590, 594, 601 (N.D. Miss. 2010). The defendant removed Mississippi's complaint on a theory of federal-question jurisdiction arguing that issues related to the FDCA and the Medicaid statute were implied in the complaint. *Id.* at 599. Describing as "gestalt" the notion that a federal issue was present simply because "Medicaid is largely a complex federal program," the Court recognized that the "defendants' liability will depend upon its breach of duties as defined and created by state law." *Id.*  Federal jurisdiction was not present because Mississippi law, not federal law, was "essential" to the resolution of Mississippi's claim.  *Id.* (citing *Grable & Sons*, 545 U.S. at 315).

In *Louisiana ex rel Caldwell v. Bristol Myers-Squibb*, the court affirmed a Magistrate Judge's lengthy opinion rejecting arguments nearly identical to Merck's in this case.  2012 WL 3866493, at *3 (E.D. La. Sept. 4, 2012).  After reviewing the Supreme Court's decisions in *Empire Healthchoice Assurance Inc. v. McVeigh,* 547 U.S. 677 (2006), and *Grable & Sons*, the Magistrate concluded that federal Medicaid law was not "necessary" to the state's claims for damages for monies spent in the Louisiana Medicaid program for Plavix.  *Louisiana ex rel Caldwell v. Bristol Myers-Squibb*, 2012 WL 3862454, at *9 (E.D. La. June 12, 2012).  The court reasoned that, if the defendant argued that Louisiana was not entitled to damages because of the federal Medicaid law, the issue was "at best, a defense that cannot be relied upon as a basis for finding federal-question jurisdiction over this action."  *Id.* at *10.

In another opinion that Judge Weinstein described as "excellent," *New Mexico v. Eli Lilly*, 2009 WL 691942, at *3 (E.D.N.Y. 2009), when the District of New Mexico concluded that New Mexico's claims for damages related to the defendants' promotion of Risperdal did not create a "necessary" federal issue, *New Mexico ex rel. King v. Ortho-McNeil-Janssen*, No. Civ. 08-0779 (Dist. N.M. Jan. 26, 2009) (attached hereto as Ex. D).  Although the defendants'

communications related to Medicaid were relevant to New Mexico's claim, "the state [was] not attempting to claim that it ha[d] no legal obligation under the federal Medicaid statute to pay for" prescriptions, but that the defendants "fraudulently induced physicians to issue those prescriptions." *New Mexico,* slip op. at 3-4. The court astutely reasoned that "[c]laiming the Defendants wrongly triggered the State's obligation to pay for [a drug] is completely different than claiming that the State should not have such an obligation as a matter of law, despite the requirements of the federal Medicaid statute." *Id.* at 4. Rather than require "any construction of the Medicaid statute," New Mexico's claim "merely required an examination of the facts surrounding Defendants' conduct to determine whether the State's claims, brought under state law, have merit." *Id.*

The exact same reasoning from these cases applies to Alaska's Original Complaint. Alaska made payments for Vioxx and, according to Alaska law, is entitled to relief for those payments because of Merck's conduct. Merck may argue that the Medicaid statute provides it some defense to relief sought in Alaska's Original Complaint, but the Medicaid statute is irrelevant to Alaska's affirmative case.[3]

Although this Court has not addressed whether a sovereign state's claim for relief related to expenditures on a drug is sufficient to establish federal jurisdiction, *In re Vioxx*, 843 F. Supp. 2d at 669 n. 12, when Alaska's Original Complaint is viewed in light of the Supreme Court and Fifth Circuit precedent discussed above, Merck cannot establish federal jurisdiction. At the end of the day, neither the FDCA nor the Medicaid statute are "necessary" to Alaska's claim in its Original and Amended Complaints and, therefore, cannot support Merck's burden for establishing federal jurisdiction. Merck clearly fails to meet the first requirement of *Gunn* and

---

[3] Federal defenses are insufficient to establish federal-question jurisdiction. *See e.g.*, *Elam v. Kansas City Southern Ry. Co.*, 635 F.3d 796, 803 (5th Cir. 2011).

*Singh* and the case is due to be remanded.  Moreover, as will be discussed below, Merck's reliance on "implications" of the FDCA and Medicaid statute cannot satisfy the other requirements of Supreme Court and Fifth Circuit precedent.  The failure to satisfy these additional requirements of federal jurisdiction provides further ground for remand.

     **B.**     **Merck Cannot Satisfy the Other *Gunn* Factors Based on "Implicated" Issues with the FDCA and Medicaid Statute**

Even if the FDCA or Medicaid statute were "necessary" to Alaska's claim, these alleged issues would not give rise to federal jurisdiction because they would not be "substantial" enough to justify federal jurisdiction and would greatly alter the "federal-state balance approved by Congress."  *Gunn*, 133 S. Ct. at 1065; *Singh*, 538 F.3d at 338.  Since *Grable & Sons*, the Supreme Court has confirmed that federal-question jurisdiction is a "slim category" of jurisdiction that Merck cannot fit Alaska's claims into.  *See Empire*, 547 U.S. at 701.

In a subsequent opinion, the Court clarified that *Grable & Sons* created a "special and small category" of federal-question jurisdiction of state-law claims that exists when a federal issue is "both dispositive of the case and would be controlling in numerous other cases." *Id*. at 699-700.  In *Grable & Sons*, the federal issue at stake was "substantial" because it governed the federal government's ability to "satisfy its claims from the property of delinquent" taxpayers. 545 U.S. at 315.  After all, the federal government "has a strong interest in the 'prompt and certain collection of delinquent taxes.'"  *Id.* (quoting *United States v. Rodgers*, 461 U.S. 677, 709 (1983)).  The Court went on to conclude that federal jurisdiction would have a "microscopic effect on the federal-state division of labor" because "it will be the rare state title case" that raises a federal issue. 545 U.S. at 315.

*Empire* confirms jurisdiction under *Grable & Sons* is not appropriate when federal law is simply implicated by assertions of the defendant and the state law at issue depends heavily on

factual issues. 547 U.S. at 699-700.  In *Empire*, the Supreme Court refused to extend jurisdiction over a state-law claim where a federal issue was merely tangential and fact-bound. *Id.* at 700-01. The plaintiff, a provider of health benefits for federal employees, sued in federal court on a subrogation interest it had in a state-law tort settlement. *Id.* at 687-88. The United States argued that federal-question jurisdiction was appropriate under *Grable & Sons* because of the broad statutory and regulatory scheme that governed the insurance of federal employees. *Id.* at 682-87, 699.  The Supreme Court quickly rejected the comparison. *Id.* at 699-700.

The Court held that the facts of *Empire* were "poles apart from *Grable*."  *Empire*, 547 U.S. at 700.  Unlike *Grable & Sons*, the issue in *Empire* arose from a "personal injury action launched in state court" rather than "the action of [a] federal department."  *Id.*  In addition, the issue in *Grable* was a "pure issue of law" that was "both dispositive of the case and would be controlling in numerous other cases." *Id.* "In contrast," the state-law claim at issue in *Empire*, was "fact-bound and situation-specific." *Id.*

Finally, the Court in *Gunn* reaffirmed *Empire's* narrow reading of *Grable & Sons*.  133 S. Ct. at 1064-65 (noting that *Grable & Sons* created a "special and small category" of arising-under jurisdiction).  There, the Supreme Court rejected the argument that issues of federal patent law in a state legal-malpractice case were substantial enough to confer federal jurisdiction.  *Id.* When Merck's argument is measured against Supreme Court precedent, it is clear that Merck "cannot [] squeeze [Alaska's case] into the slim category *Grable* [*& Sons*] exemplifies." *Empire*, 547 U.S. at 701.

    1. <u>According to Supreme Court Precedent, FDCA Issues Cannot Confer Federal-Question Jurisdiction over Alaska's UTPA Claim</u>

Application of this precedent confirms any possible FDCA issue would still not be "substantial" enough to confer federal-question jurisdiction. *Gunn*, 133 S. Ct. at 1065; *Singh*, 538

F.3d at 338. Contrary to Merck's repeated reliance on *Grable & Sons* in support of federal-question jurisdiction, (Merck Notice of Removal ¶¶ 10-11), that opinion and others confirm the opposite. As held in *Merrell Dow Pharmaceuticals v. Thompson*, 478 U.S. 804 (1986), and affirmed in *Grable & Sons*, state-law claims that depend on violations of the FDCA are insufficient to confer federal jurisdiction. 478 U.S. at 814; 545 U.S. at 318-19. Even more so, Alaska's Original and Amended Complaints that, at most, "implicate[s]" the FDCA, but  not depend on a violation of the FDCA in anyway, are far short of the Supreme Court's requirements for federal-question jurisdiction.

In *Merrell Dow*, the Supreme Court held that even a state-law claim that actually depended on violations of the FDCA did not support federal-question jurisdiction. 478 U.S. at 805-06. The defendants argued that, because the plaintiff needed to establish a violation of the FDCA to succeed on his state-law claim, federal jurisdiction was appropriate. *Id.* at 813. The Supreme Court rejected that argument, holding that any federal issues related to violations of the FDCA "as an element of a state cause of action [was] insufficiently 'substantial' to confer federal question jurisdiction." *Id.* at 814.

*Grable & Sons*, relied on by Merck, reaffirmed *Merrell Dow*'s holding regarding the FDCA. 545 U.S. at 318-19. The Court affirmed *Merrell Dow*'s conclusion that Congress did not intend to confer federal jurisdiction over state-law claims "solely because the violation" of the federal statute was an element to the state-law claim. *Id.* at 320 (quoting *Merrell Dow*, 478 U.S. at 811-12). Significant to this conclusion was the Court's recognition of the enormous effect conferring jurisdiction in *Merrell Dow* would have on the balance between federal and state judicial responsibilities. The Court recognized that "if the federal labeling standard without a federal cause of action could get a state claim into federal court, so could any other federal

standard without a federal cause of action." *Id*. at 318. "Such a standard would . . . herald[] a potentially enormous shift of traditionally state cases into federal court" and frustrate the policy of federal courts being courts of limited jurisdiction. *Id*. at 319.  Here a violation of the FDCA is not even an element of liability of Alaska UTPA, and no federal jurisdiction can be supported.

2.    <u>*Grable & Sons* and Other Supreme Court Precedent Provide No Support</u>
      <u>for Federal-Question Jurisdiction based on the Medicaid Statute</u>

*Grable & Sons*, *Empire*, and *Gunn* also confirm that Merck's allegations of federal issues related to the Medicaid statute are insufficient to support federal jurisdiction.  Although Merck's Notice of Removal is vague regarding what supposed issues from the Medicaid statute it claims create federal jurisdiction, it is clear no possible issue would satisfy the Supreme Court's requirement for a "substantial" issue.

Unlike Merck's allegation of an "implicated" Medicaid issue, the federal issue in *Grable & Sons* was "an essential element" of the state-law claim and "appear[ed] to be the only . . . issue contested in the case." *Empire*, 547 U.S. at 700.  Furthermore, Merck cannot explain how any Medicaid issue in this case would be an "important issue to the federal system as a whole." *Gunn*, 133 S. Ct. at 1066.  Alaska's claim in its Original Complaint that Merck misled Alaska Medicaid and physicians regarding the safety and efficacy of Vioxx would be "fact-bound and situation-specific." *Empire*, 547 U.S. at 700.  Instead of developing binding case-law for the federal system, as was done in *Grable & Sons*, the resolution of any potential federal issues in Alaska's case would be tied to the specific facts regarding the promotion of Vioxx in Alaska.

In *Mississippi*, the Court also addressed this issue and concluded that the FDCA and Medicaid issues were not substantial enough to justify federal jurisdiction.  The Court understood that the issues in the case would "be fact-bound and situation-specific *under Mississippi law*." *Mississippi*, 744 F. Supp. 2d at 601 (emphasis in original).  The Court

16

concluded that Mississippi's claim more closely resembled the claims at issue in *Empire* as compared to those in *Grable & Sons*. *Id*. at 601.  The Court went on to note that "[e]ven if Defendants could demonstrate the existence of a federal question," federal jurisdiction in the instant case would not be "consistent with congressional judgment about the sound division of labor between state and federal courts." *Id*.; *see also*, *Caldwell v. Bristol Myers Squibb Sonofi Pharms. Holding P'ship*, 2012 WL 3862454 (W.D. La. 2012); *Caldwell*, 2012 WL 3862454 at * 11 (concluding even if there were issues related to Medicaid, federal jurisdiction would disturb the balance of federal and state courts).  If any state claim that "implicat[ed] provisions of the Federal Medicaid Act and its accompanying regulations" created federal jurisdiction, it could "'attract [] a horde of original filings and removal cases raising other state claims with embedded federal issues.'"  *Mississippi*, 744 F. Supp. 2d at 601 (quoting *Grable & Sons*, 545 U.S. at 318).

The same reasoning applies to Alaska's UTPA claim.  Alaska's state-law claim will depend heavily on specific facts related to the promotion of Vioxx in Alaska.  In addition, permitting federal jurisdiction where the FDCA and Medicaid statutes are simply implicated would permit almost every case involving a pharmaceutical product to be removed to federal court based on federal-question jurisdiction.  This would represent a significant shift in the division of labor between state and federal courts.

## C.   District Courts Across the Country Have Rejected Similar Arguments for Federal-Question Jurisdiction

The lack of federal-question jurisdiction over Alaska's claim is confirmed by opinions across the country. Pharmaceutical companies' attempts to remove complaints filed by sovereign states based on alleged implications of the federal Medicaid statute and the FDCA have been routinely rejected. *See, e.g., Mississippi*, 744 F. Supp. 2d at 601-02 (remanding Medicaid fraud, consumer protection, and common law tort claims related to the sale of Seroquel); *Hood v.*

*Ortho-McNeil-Janssen Pharms., Inc.*, 2009 WL 561575 (N.D. Miss. 2009) (remanding Medicaid fraud and consumer protection claims and rejecting arguments from *In re Zyprexa* that the Medicaid Act or FDCA conferred federal jurisdiction); *New Mexico ex rel. King v. Ortho-McNeil-Janssen*, No. Civ. 08-0779 (Remand Order, Jan. 26, 2009) (remanding state's Medicaid fraud and misrepresentation claims related to Risperdal and rejecting argument that Medicaid statute or FDCA created federal jurisdiction); *Utah v. Eli Lilly & Co.*, 509 F. Supp. 2d 1016, 1022-25 (D. Utah 2007) (relying on *Grable & Sons*, *Merrell Dow*, and *Empire* to remand state's Medicaid fraud claims related to *Zyprexa*); *South Carolina v. Eli Lilly & Co.*, 2007 WL 2261693, at *3 (D.S.C. 2007) (remanding state's Medicaid fraud and consumer protection claims related to *Zyprexa*); *Pennsylvania v. Eli Lilly & Co.*, 511 F. Supp. 2d 576, 584-86 (E.D. Pa. 2007) (relying on *Grable & Sons*, *Merrell Dow*, and *Empire* to remand state Medicaid fraud claims related to *Zyprexa*); *Alaska v. Eli Lilly & Co.*, 2006 WL 2168831, *2-3 (D. Ak. 2006) (remanding state's claims for Medicaid reimbursement, misrepresentations, and restitution related to *Zyprexa*).

The only similar case cited by Merck in support of federal-question jurisdiction under *Grable & Sons* is Judge Weinstein's first opinion in the Zyprexa MDL.[4] (Ex. C, Notice of Removal ¶ 9). As this Court noted, "there is a split in authority regarding whether cases with allegations such as those in *Zyprexa* should be remanded." *In re Vioxx*, 843 F. Supp. 2d. at 669 n.12. In light of the Supreme Court precedent and Fifth Circuit precedent discussed above, this Court should conclude, as every court to consider the issue except for Judge Weinstein has concluded, that such claims do not create federal jurisdiction.

---

[4] Merck also cites to *County of Santa Clara v. Astra USA, Inc.*, 401 F. Supp. 2d 1022 (N.D. Cal. 2005), but that case involved a completely different cause of action and factual scenario. (Ex. C, Notice of Removal ¶ 23). The County of Santa Clara claimed that the defendant charged prices for drugs that were in excess of the amounts they were allowed to charge under federal law. *Santa Clara*, 401 F. Supp. 2d at 1026. The only way to determine whether the defendant was liable was by interpreting the federal statute. As discussed throughout this brief, Merck's liability depends only on state law.

As an initial matter, Alaska's claim is distinguishable from the claims at issue in Judge Weinstein's Zyprexa opinions.   Unlike all of those cases, Alaska's claim does not involve allegations of off-label use which was central to Judge Weinstein's reasoning. *New Mexico ex rel. Madrid v. Eli Lilly & Co.*, 2009 WL 691942, at *3 (E.D.N.Y. 2009); *Montana ex rel. McGrath v. Eli Lilly & Co.*, 2008 WL 398378, at *1 (E.D.N.Y. 2008); *West Virginia ex rel. McGraw v. Eli Lilly & Co.*, 476 F. Supp. 2d 230, 233 (E.D.N.Y. 2007); *Louisiana ex rel. Foti v. Eli Lilly & Co.*, 375 F. Supp. 2d 170, 172-73 (E.D.N.Y. 2005) (hereinafter, "*Zyprexa* cases").   In addition, Alaska's Amended Complaint no longer seeks relief related to expenditures of Vioxx in Alaska.   Although that relief did not create federal jurisdiction, its removal through the Amended Complaint further distinguishes this case from the *Zyprexa* cases.

In addition, in the light of the Supreme Court's decisions in *Empire* and *Gunn* and the Fifth Circuit's decision in *Howrey* and *Singh*, the reasoning of the *Zyprexa* cases is not persuasive.   In the *Zyprexa* cases, the Court quickly concluded that "the question of the state's obligation to reimburse its insureds for Zyprexa . . . is essential to the state's theory of damages and presents a substantial and disputed federal issue under *Grable*."   *West Virginia*, 476 F. Supp. 2d at 233; *see also*, *Louisiana*, 375 F. Supp. 2d at 172; *Montana*, 2008 WL 398378 at *4; *New Mexico*, 2009 WL 691942 at *3.   The court provided little explanation of how claims for damages related to Medicaid expenditures raised these issues or how the issues were "necessary" and "substantial" under *Grable & Sons*. The court did not consider whether the Medicaid statute would only be applicable as a defense.   The court also provided no analysis of how exercising federal jurisdiction in these cases would affect the balance between federal and state courts as required by *Grable & Sons*.

Finally, the *Zyprexa* cases did not have the instruction of the Fifth Circuit's opinions in *Howrey* or *Singh*, nor was the court provided with the Supreme Court's clarification of the *Grable & Sons'* holding in *Gunn*.  It is unlikely, given the clarity of the Fifth Circuit's law on this issue and recent Supreme Court precedent, that the *Zyprexa* cases would have reached the same conclusions today in the Fifth Circuit.

### D.    Alaska's Amended Complaint Provides Further Support for Remand

Alaska's amended complaint makes no reference to Medicaid and does not seek relief for expenditures by Alaska for Vioxx.  In essence, Merck argues that these references and relief create a "federal" claim, but that alleged "federal" claim does not exist in the Amended Complaint.  Alaska amended its complaint to "conform to the evidence" and to "narrow the scope of relief."  (Ex. E, Motion to Amend Complaint at 2).  On June 22, 2012, this Court granted Alaska's Motion to Amend and Merck filed its Amended Answer on July 2, 2012.  As noted above, the Amended Complaint seeks only civil penalties and injunctive relief. Accordingly, Merck's argument that the Medicaid statute is somehow "implicated" in the Amended Complaint is even weaker then Merck's argument related to the Original Complaint.

This Court should consider an amended complaint when determining whether federal jurisdiction is appropriate.  *See e.g.*, *Enochs v. Lampass County*, 641 F.3d 155, 159 (5th Cir. 2011). This Court may decline to exercise jurisdiction over state-law claims where the state-law claim "(1) raises a novel of complex issue of State law, (2) the claim substantially predominates [over the federal claims], (3) the district court dismissed all of the [federal claim], or (4) in exceptional circumstances."  28 U.S.C. § 1367(c).  These factors weigh heavily in favor of this Court declining to exercise jurisdiction even if it concluded that Alaska's references to Medicaid and request for relief in the Original Complaint created federal-question jurisdiction.

In *Enochs*, the Fifth Circuit held that a plaintiff's claim was due to be remanded after an amended complaint "delete[d] all federal claims." 641 F.3d at 157, 162. The Fifth Circuit analyzed the factors from section 1367(c) as well as the common law factors of "judicial economy, convenience, fairness, and comity" to conclude that the district court should have remanded the case back to state court. *Id.* at 163. When these factors are applied to Alaska's claim, it is clear that even if this Court concluded that federal-question jurisdiction was appropriate under the Original Complaint, the Amended Complaint should be remanded to state court.

First, this case may present unique questions related to Alaska law. 28 U.S.C. § 1367(c)(1). For example, a brief review of Merck's Motion for Judgment on the Pleadings reveals that it raises numerous issues related to the interpretation of Alaska Law. Second, the Alaska state law claims "predominate over the non-existent federal claims." *Enochs*, 641 F.3d at 159. Finally, the amended complaint "dismissed" what small allegations and claims for relief supported Merck's argument for federal-question jurisdiction. *Id.* Because there is only a state-law claim in the Amended Complaint, even if the Original Complaint created federal jurisdiction, this Court is soundly within its discretion to decline jurisdiction pursuant to section 1367(c).

In addition, the relevant common law factors support remand. Although this Court has expended immeasurable judicial resources in the Vioxx litigation, remand to state court should not place a heavy burden on the state court because all of the common discovery has been completed. It would not be "inconvenient" to remand the case to state court as all that is left is state-specific expert discovery and the trial. "Third, it is certainly fair to have had the purely

[Alaska] state law claims heard in [Alaska] state court, and there is nothing to indicate that either party would [be] prejudiced by a remand to [Alaska] state court." *Enochs*, 641 F.3d at 160.

Finally, "comity" weighs heavily in favor of remand.  "[C]omity demands that the 'important interests of federalism and comity' be respected by federal courts, which are courts of limited jurisdiction and 'not as well equipped for determinations of state law as are state courts.'" *Id.* (quoting *Parker & Parsley Petroleum Co. v. Dresser Industries*, 972 F.2d 580, 588-89 (5th Cir. 1992)).  In addition, because this case involves claims of a sovereign state, issues of federalism and comity are heightened.  *See e.g.*, *Franchise Tax*, 463 U.S. at 22.

## CONCLUSION

For the reasons stated above, Alaska's Original Complaint does not give rise to federal-question jurisdiction.  This Court has already determined that, in a similar complaint, issues related to the FDCA are insufficient to establish federal-question jurisdiction.  *In re Vioxx*, 843 F. Supp. 2d at 668-70.  In addition, Alaska's references to Medicaid and request for relief in its Original Complaint are insufficient to establish federal-question jurisdiction.  *Supra* 8-13. However, even if the Original Complaint's requests for relief were sufficient to establish federal jurisdiction, the Amended Complaint does not contain those alleged issues and should be remanded.

At its best, Merck's argument is that federal question jurisdiction exists because facts alleged by Alaska could possibly support a violation of the FDCA and the Medicaid statute might be relevant as a potential defense. Quite simply, this attenuated argument is insufficient to carry Merck's burden.  It takes much more than "a federal element 'to open the 'arising under' door.'" *Empire*, 547 U.S. at 701 (quoting *Grable & Sons*, 545 U.S. at 313). Cases from the Supreme Court, Fifth Circuit, and district courts across the country confirm no federal-question

jurisdiction exists in this case.  Furthermore, the reasoning of the *Zyprexa* decisions have little application in the Fifth Circuit.  Try as it might, Merck "cannot [] squeeze [Alaska's case] into the slim category *Grable* [*& Sons*] exemplifies." *Id.*

If Merck's argument for removal is successful, it will herald an unprecedented expansion of federal jurisdiction over sovereign states' claims.  Such a result would hardly be consistent with the important federalism concerns that govern a federal court's exercise of jurisdiction over sovereign states' claims.  This brief raised numerous doubts regarding Merck's argument for federal jurisdiction and those doubts "should be resolved against exercising jurisdiction."  *In re Vioxx*, 843 F. Supp. 2d at 657 (citing *Acuna v. Brown & Roof, Inc.*, 200 F.3d 335, 339 (5th Cir. 2000)).

Based on the forgoing arguments, Alaska respectfully requests this Court grant its motion to remand its claim back to the Superior Court for the State of Alaska, Third Judicial District of Anchorage.

Respectfully submitted this 3rd day of September, 2013.

/s/ Brian M. Vines
Brian M. Vines
Attorney for Plaintiff

OF COUNSEL:

Scott A. Powell, Esquire
Don McKenna, Esquire
Matthew C. Minner, Esquire
Brian M. Vines, Esquire
Hare, Wynn, Newell and Newton, LLP
2025 3rd Avenue North; Suite 800
Birmingham, Alabama 35203
Telephone: 205/328-5330

James E. Fosler, Esquire
Fosler Law Group, Inc.

23

737 West 5th Avenue; Suite 205
Anchorage, Alaska  99501
Telephone: 907-277-1557

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Plaintiff's, State of Alaska, Renewed Motion to Remand has been served upon Liaison Counsel, Russ Herman, Phillip Wittmann and Ann Oldfather, by U.S. mail and e-mail or by hand delivery and e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8(C), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accordance with the procedures established in MDL 1657, on this 3rd day of September, 2013.

/s/ Brian M. Vines
Brian M. Vines
ASB-4419-R77V
Attorney for Plaintiff
Hare, Wynn, Newell & Newton, LLP
2025 3rd Avenue North; Suite 800
Birmingham, Alabama  35203
Telephone: 205/328-5330
Facsimile: 205/324-2165
bvines@hwnn.com