# Exhibit A

W. Mark Lanier (*pro hac vice* application pending)
Richard Meadow (*pro hac vice* application pending)
Lawrence P. Wilson (*pro hac vice* application pending)
The Lanier Law Firm
6810 FM 1960 West
Houston, Texas 77069
Telephone: (713) 659-5200
Fax: (713) 659-2204

James E. Fosler
Fosler Law Group, Inc.
737 West Fifth Ave., Suite 205
Anchorage, Alaska 99501
Telephone: (907) 277-1557
Fax: (907) 277-1657

Attorneys for Plaintiff

COPY
Original Received
DEC 2 3 2005
Clerk of the Trial Court

## IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

## THIRD JUDICIAL DISTRICT AT ANCHORAGE

| | |
|---|---|
| STATE OF ALASKA, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> MERCK & CO., INC., ) <br> ) <br> Defendant. ) <br> ) | <br><br><br><br><br><br><br><br><br>Case No: 3AN-05- |

### COMPLAINT
(AS 45.50.471, AS 45.50.501, AS 45.50.551)

The State of Alaska, Plaintiff herein, by and through its counsel, brings this Complaint against Merck & Co., Inc. ("Defendant") pursuant to the Unfair Trade Practices and Consumer Protection Act, AS 45.50.471 *et seq.*

## DEFENDANT

1. Defendant is an American pharmaceutical company incorporated under the laws and statutes of the State of New Jersey. Defendant can be served with process by serving its registered agent, CT Corporation System, 801 W. 10th Street, Suite 300, Juneau, Alaska 99801.

## JURISDICTION AND VENUE

2. At all times material to this civil action, Defendant transacted business in Alaska by, among other things, advertising, soliciting, selling, and distributing the pharmaceutical product known as Vioxx to purchasers in Alaska. Therefore, this court has personal jurisdiction over Defendant.

3. This court has subject-matter jurisdiction based upon AS 45.50.501 and 45.50.551, which provide remedies to redress Defendant's conduct and authorize the State of Alaska to bring this action.

4. Because the State of Alaska is not a citizen for purposes of diversity jurisdiction, no federal court can exercise subject-matter jurisdiction over this case by virtue of diversity of citizenship. *State of Alaska v. K&L Distributors, Inc.*, 318 F.2d 498, 498 (9th Cir. 1963); *Tex. Dept. of Hous. & Cmty. Affairs v. Verex Assurance, Inc.*, 68 F.3d 922, 926 (5th Cir. 1995).

5. Venue is proper in this judicial district pursuant to Section 45.50.501 of the Alaska Statutes and Rule 3 of the Alaska Rules of Civil Procedure because some of

Defendant's unlawful acts and practices that give rise to this Complaint arose in this judicial district and the Defendant is doing business in this judicial district.

## DEFENDANT'S CONDUCT

6.  All practices, acts, and omissions alleged herein to have been committed by Defendant were committed by Defendant's officers, directors, employees, or agents, who, at all times, acted on behalf of Defendant and whose practices, acts, and omissions were authorized and/or ratified by Defendant. Accordingly, Defendant is liable under the doctrines of vice-principal, respondeat superior and agency as those terms are defined and applied under the laws and statutes of Alaska.

7.  Defendant began marketing Vioxx (generic name Rofecoxib) in May 1999, following a short clinical trial period. Vioxx was initially approved for osteoarthritis, the management of acute pain in adults, and the treatment of primary dysmenorrhea. Furthermore, in requesting that Vioxx be placed on the Alaska Medicaid Program's list of drugs subject to reimbursement, the Defendant represented that Vioxx was at least as safe as other drugs of a similar class and/or type used for the same purposes. Ultimately, Defendant withdrew Vioxx from the market on September 30, 2004, because it was unsafe. Research and clinical experience has revealed that Vioxx significantly increases the risk of heart attack and other serious cardiovascular and cerebrovascular medical complications.

8.  From the time Defendant started developing Vioxx, through the date of its withdrawal from the market on September 30, 2004, Defendant engaged in knowing

misrepresentations, including, but not limited to, direct representations to the Alaska Medicaid Program that Vioxx was safe and effective and advertising and promotional campaigns to Alaskans that falsely represented the safety of Vioxx. The Defendant misrepresented and suppressed evidence concerning the significant health hazards of Vioxx.

9. Defendant was aware that Vioxx caused serious and significant health hazards even before Defendant promoted Vioxx to physicians and to the State of Alaska and provided Vioxx to Alaskans. Defendant knew that cerebrovascular and cardiovascular problems occurred more frequently in patients receiving Vioxx than in patients receiving placebos or other medicines. Defendant's internal memos and e-mails, dating back to at least 1996, show that Defendant knew "how" and "why" Vioxx would cause significantly higher rates of cardiovascular problems in patients taking Vioxx, as compared to a control group.

10. Before Defendant began marketing Vioxx to the public in May 1999, Defendant knew clinical research, including its own, showed that Vioxx increased the risk of heart attack and adverse cardiovascular and cerebrovascular problems. However, Defendant did not disclose this prior knowledge, nor the additional knowledge Defendant obtained after it started successfully selling Vioxx to the public. Instead, the Defendant misrepresented and mischaracterized the data and information concerning Vioxx. Moreover, the Defendant launched an expensive, promotional advertising campaign to convince lay people to request Vioxx from their healthcare professionals for the treatment of their pain, and to promote, as safe, the use of Vioxx, even though the Defendant's own medical research confirmed its harmful effects. The Defendant also launched an aggressive campaign of intimidation against

COMPLAINT
*State of Alaska v. Merck & Co., Inc.*, 3AN-_____CI

researchers and physicians who questioned the safety of Vioxx. The Defendant's deceptive and misleading representations were later recognized by the FDA in a letter to the Defendant wherein the FDA labeled the Defendant's promotional sales marketing and materials as "lacking in pure balance," "false," and "misleading." In recent months, investigators have learned that the Defendant deliberately removed data of some adverse cardiovascular and cerebrovascular events from data supplied to those outside the company.

11.  It was not until September 30, 2004, that the Defendant finally admitted that Vioxx was not safe and posed such an unreasonable risk of harm to the public that it should be withdrawn from the market.

## VIOLATIONS OF THE UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION ACT

12.  Defendant's acts and practices were unlawful as that term is described in AS 45.50.471(a) in that Defendant used unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce.

13.  Defendant represented to the State, to physicians in Alaska, and to the public in Alaska that Vioxx had characteristics, uses, and benefits that it did not have. AS 45.50.471(b)(4).

14.  Defendant advertised Vioxx with an intent not to sell it as advertised. AS 45.50.471(b)(8).

15.  Defendant engaged in conduct creating a likelihood of confusion or of misunderstanding and which misled, deceived, or damaged buyers of Vioxx, including the

COMPLAINT
*State of Alaska v. Merck & Co., Inc.*, 3AN-_____CI

State of Alaska, healthcare providers in Alaska, and Alaskans in general. AS 45.50.471(b)(11).

16. Defendant used and employed deception, fraud, and misrepresentation to further the sales of Vioxx. Defendant knowingly concealed, suppressed, and omitted one or more material facts with the intent that others rely on the concealment, suppression, and omission in connection with the sale and advertisement of Vioxx. AS 45.50.471(b)(12).

17. Defendant knowingly or intentionally concealed or failed to disclose evidence that revealed the truth concerning the significant increased risk of heart attack and other cardiovascular problems caused by Vioxx. In addition, Defendant knowingly or intentionally set out on a course of concealing this evidence by misrepresenting the data in published literature and in advertising campaigns, and by threatening and attempting to coerce those who chose to criticize Defendant, to warn the public and the health care community, and to tell the truth about the significant risks posed by Vioxx. This conduct violates the Unfair Trade Practices and Consumer Protection Act.

18. Defendant knowingly or intentionally made, caused to be made, induced, or sought to induce the making of false statements or misrepresentations of material fact concerning the safety, or lack thereof, of Vioxx, which is information required to be provided by state law, rule, regulation, and/or provider agreement to the Alaska Medicaid Program. This conduct violates the Unfair Trade Practices and Consumer Protection Act.

19. Defendant knowingly and intentionally made claims under the Alaska Medicaid Program for a product that is substantially inadequate or inappropriate when compared to

COMPLAINT
*State of Alaska v. Merck & Co., Inc.*, 3AN-_____CI

generally recognized standards within the health care industry or for a product that is otherwise inappropriate. This conduct violates the Unfair Trade Practices and Consumer Protection Act.

20. Defendant's knowing or intentional acts and omissions constitute repeated violations of the Alaskan statutory laws. Defendant has now admitted that Vioxx is unsafe and has taken it off the market.

## CAUSATION OF DAMAGES

21. Defendant's unlawful acts and practices induced a great many Alaskans to purchase Vioxx.

22. Defendant's unlawful acts and practices induced the State of Alaska to authorize expenditure of Medicaid funds for the purchase of Vioxx.

23. Defendant's unlawful acts and practices resulted in the expenditure of millions of dollars of state funds or state controlled funds on Vioxx.

24. Defendant's unlawful acts and practices were a cause-in-fact, producing cause, and proximate cause of the purchase and expenditures described in paragraphs 21 thru 23 and have necessitated this action.

/ / / /

/ / / /

/ / / /

## PRAYER FOR RELIEF

WHEREFORE, the State of Alaska demands judgment as follows:

1. For money damages in an amount that far exceeds the $100,000 minimum jurisdictional limit of this court;

2. For restitution damages for the value of all payments that the State of Alaska made for Vioxx prescriptions;

3. For treble damages;

4. For civil penalties of $5,000 for each separate violation of the Unfair Trade Practices and Consumer Protection Act;

5. For punitive damages;

6. For costs and attorneys' fees;

7. For prejudgment interest;

8. For post judgment interest;

9. For all other relief deemed just and equitable by the Court.

DATED: December 23, 2005.

Respectfully submitted,

FOSLER LAW GROUP, INC.

JAMES E. FOSLER
Alaska Bar No.: 9711055

COMPLAINT
*State of Alaska v. Merck & Co., Inc.*, 3AN-_____CI