Exhibit C

Jahna M. Lindemuth, ABA #9711068
DORSEY & WHITNEY LLP
1031 West Fourth Avenue
Suite 600
Anchorage, AK 99501-5907
(907) 276-4557

Attorneys for
MERCK & CO., INC.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| STATE OF ALASKA, | Case No. _____ |
| Plaintiff, | |
| vs. | |
| MERCK & CO., INC. | |
| Defendant | |

## <u>NOTICE OF REMOVAL OF DEFENDANT MERCK & CO., INC.</u>

PLEASE TAKE NOTICE that defendant Merck & Co., Inc. ("Merck"), through undersigned counsel, hereby removes the above-captioned action from the Superior Court for the State of Alaska, Third Judicial District at Anchorage to the United States District Court for the District of Alaska, pursuant to 28 U.S.C. §§ 1331 and 1441. In support of its removal, defendant respectfully states as follows:

1.     This action involves allegations regarding the prescription drug Vioxx®. An MDL proceeding has been established in the United States District Court for the Eastern District of Louisiana (Fallon, J.) for coordinated pretrial proceedings of Vioxx-related actions under 28 U.S.C. § 1407. Two other suits filed by the state attorneys

**DORSEY &
WHITNEY LLP**
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

NOTICE OF REMOVAL
Page 1

STATE OF ALASKA V. MERCK & CO., INC.
Case No. _____

general of Louisiana and Mississippi alleging similar claims against Merck are already

pending in that MDL proceeding,[1] and Merck intends to seek the transfer of this action

to that MDL proceeding as well.

2.      On December 23, 2005, the State of Alaska ("the State") commenced this

action in the Superior Court for the State of Alaska, Third Judicial District at Anchorage,

against Merck, captioned State of Alaska v. Merck & Co., Inc., No. 3AN-05-14292 CI.

3.      Merck was served with a copy of the Complaint ("Compl") on December

27, 2005. Accordingly, this Notice of Removal is timely filed pursuant to 28 U.S.C. §

1446(b). Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings and orders

served on or by Merck in the state court action are attached hereto as composite **Exhibit**

**A.**

4.      Venue is proper in this Court pursuant to 28 U.S.C. § 89(c), because it is

the "district and division embracing the place where such action is pending." See 28

U.S.C. § 1441(a).

5.      No previous application has been made for the relief requested herein.

6.      Merck will promptly (a) file a true and correct copy of this Notice of

Removal with the Clerk of Court for the Superior Court for the State of Alaska, Third

Judicial District at Anchorage, in accordance with 28 U.S.C. § 1446(d); and (b) serve

plaintiff's counsel with a true and correct copy of this Notice of Removal, in accordance

---

[1] The two state attorney general actions are *Foti v. Merck* (Louisiana) (E.D. La. 05-3700), and *Hood v. Merck* (Mississippi) (E.D. La. 05-6755).

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

NOTICE OF REMOVAL                                 STATE OF ALASKA V. MERCK & CO., INC.
Page 2                                            Case No. _____

with 28 U.S.C. § 1446(d).

## I.    ALLEGATIONS AND REQUESTED RELIEF

7.    Plaintiff's complaint alleges that Merck violated the Alaska Unfair Trade Practices and Consumer Protection Act ("UTPCA"), AS 45.50.471, by misrepresenting the safety of Vioxx to the State, which paid for Vioxx on behalf of Medicaid participants. (See Compl. 12-18.)  The State also alleges that Merck knowingly made claims under the Alaska Medicaid Program for a product that was substantially inadequate.  (Compl. 19). The State seeks compensatory damages, restitution for the value of all payments that the State of Alaska made for Vioxx prescriptions under its Medicaid program, civil penalties of $5,000 for each separate violation of the UTPCPA, treble damages, punitive damages, attorneys' fees and costs, and prejudgment and postjudgment interest. (Compl. Prayer for Relief.)

## II.   FEDERAL QUESTION JURISDICTION

8.    This Court has federal question jurisdiction over this matter pursuant to 28 U.S.C. § 1331, because the State's claims directly implicate two areas of federal law: the Food, Drug & Cosmetic Act ("FDCA"), 21 U.S.C. § 301 et seq., which regulates prescription drug manufacturers' public and promotional statements about prescription drugs; and federal Medicaid law, which determines both which drugs a state must cover under its Medicaid program and the limited circumstances under which it can decline to pay for such drugs.  See 42 U.S.C. §§ 1396r-8(d)(1)(B), (d)(4).  Thus, this action may be removed to this Court pursuant to 28 U.S.C. § 1441.

DORSEY &
WHITNEY LLP
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

NOTICE OF REMOVAL
Page 3

STATE OF ALASKA V. MERCK & CO., INC.
Case No. _____

9.     The Supreme Court has recognized that federal question jurisdiction exists over claims that are asserted under state law if the state law claims implicate substantial federal questions. *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 125 S. Ct. 2363, 2369 (2005). *See also Hopkins v. Walker*, 244 U.S. 486, 490-491 (1917); *County of Santa Clara v. Astra USA, Inc.*, No. C 05-03740 (WHA), 2005 U.S. Dist. LEXIS 34453 (N.D. Cal. Dec. 2, 2005) (attached hereto).

10.     As the Supreme Court explained in *Grable*, the test for whether a federal court should hear a case under this doctrine is not whether the federal statute provides a parallel private right of action , but whether the "state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state responsibilities." 125 S. Ct. at 2368.   In *Grable*, the Supreme Court concluded that federal question jurisdiction existed because the plaintiff's state law claim was premised on the failure of a government agency to fulfill its responsibilities as defined by federal law.  Thus, federal question jurisdiction existed because the meaning of the federal law was an essential element of the state law claim.  *Id.*   The same is true here.

11.     First, the claims in this case are implicitly premised upon alleged violations of the federal Food, Drug & Cosmetic Act ("FDCA") – namely that Merck illegally promoted an unsafe drug for public use and failed to warn adequately doctors, state regulators, and consumers of risks in violation of FDCA rules and regulations.

12.     Under the FDCA, the FDA is tasked with approving drugs for human use

**DORSEY &
WHITNEY LLP**
1031 West 4th Avenue,
Suite 600
Anchorage, AK  99501
(907) 276-4557

and determining the necessary warnings manufacturers must include with their products. 21 U.S.C. §393(b)(1). The FDCA charges the FDA to ensure that "drugs are safe and effective" for their intended uses, 21 U.S.C. § 393(b)(2)(B), in part by "promptly and officially reviewing clinical research and taking appropriate action on the marketing of regulated products." 21 U.S.C. § 393(b)(1). The FDA is vested with the authority to promulgate regulations to enforce the FDCA, which are codified in the Code of Federal Regulations, 21 C.F.R. § 200 et. seq. 21 U.S.C. § 371(a).

13. To accomplish this mandate, the FDA maintains a Center for Drug Evaluation and Research ("CDER"). The CDER oversees the drug companies' development, testing and research, and manufacture of drugs. The staff of approximately 1,800 examines clinical and other testing data generated by drug companies to assess a drug's benefits against its risks and to make an approval decision. The CDER also regulates prescription drug advertising, including the Package Inserts that outline benefit and risk information, and monitors marketed drugs for unexpected health risks that may require public notification, a change in labeling, or removal of the product from the market. Under federal law, even claims in promotional labeling or advertising must be consistent with approved labeling. 21 C.F.R. § 202.1(e)(4)(2005). Indeed, as plaintiff's pleading points out, as part of its oversight of drug marketing, the FDA sent a letter to Merck specifically regarding the contents of its marketing materials for VIOXX. (Compl. 10.)

14. Accordingly, plaintiff's claims that Merck violated Alaska's UTPCPA in

DORSEY &
WHITNEY LLP
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

NOTICE OF REMOVAL
Page 5

STATE OF ALASKA V. MERCK & CO., INC.
Case No. _____

marketing and making communications regarding the safety of Vioxx will necessarily require the Court to interpret the meaning of the FDCA and its attendant regulations.

15.     Second, plaintiff's claims implicate substantial questions of federal law under the federal Medicaid statute because they depend on the interpretation and application of federal statutory provisions that govern what can be included in or rejected from State Medicaid formularies, including Alaska's, and because federal funds comprise the majority of Alaska Medicaid Program's funds – the money at issue in this lawsuit.

16.     The federal Medicaid program authorizes federal money grants to states to provide medical assistance to low-income individuals.  42 U.S.C. § 1396, et seq.; 42 C.F.R. § 430.10, et seq.  "Although participation in the program is voluntary, participating States must comply with certain requirements imposed by the Act and regulations promulgated by the Secretary of Health and Human Services."  *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 502 (1990).  In Alaska, the Medicaid program is administered by the Department of Health and Social Services.  *See* http://www.hss.state.ak.us/dhcs; 42 C.F.R. § 431.10(b)(1) (requiring states to designate "a single State agency . . . to administer or supervise the administration of the [Medicaid] plan").

17.     Federal law expressly requires states, subject to certain narrow exceptions, to reimburse FDA-approved prescription drugs of any manufacturer that has entered into and complies with a rebate agreement with the Secretary of Health and Human Services.  42 U.S.C. § 1396r-8(d)(4)(B).  Thus, Alaska is required under federal law to reimburse

**DORSEY &
WHITNEY LLP**
1031 West 4th Avenue,
Suite 600
Anchorage, AK  99501
(907) 276-4557

NOTICE OF REMOVAL
Page 6

STATE OF ALASKA V. MERCK & CO., INC.
Case No. _____

companies for drugs, such as Vioxx, if the manufacturer complies with federal requirements.

18.     The only time a state can exclude from its formulary a covered outpatient drug subject to a rebate agreement is "with respect to the treatment of a specific disease or condition for an identified population . . . if, based on the drug's labeling . . . the excluded drug does not have a significant clinically meaningful therapeutic advantage in terms of safety, effectiveness or clinical outcome of such treatment for such population over other drugs included in the formulary and there is a written explanation (available to the public) of the basis for the exclusion." 42 U.S.C. § 1396r-8(d)(4)(C).  But even in such a situation, a state cannot deny coverage altogether; rather, it must condition such reimbursement on prior authorization, meaning that the state may require that it approve the drug's dispensation before it is dispensed.  42 U.S.C. § 1396r-8(d)(4)(D).  And even a decision to require prior authorization must satisfy federally mandated requirements.  42 U.S.C. §§ 1396r-8(d)(4)(E), (d)(5).  Thus, every step a state takes with regard to coverage of an FDA-approved drug is subject to strict federal mandates.

19.     In short, because the Alaska Medicaid program operates within this overarching federal regulatory framework, plaintiff's claims alleging that Vioxx should not have been a part of that program necessarily implicate and turn on questions of federal Medicaid law.

20.     Other courts have applied *Grable* and recognized that federal jurisdiction exists over actions, like this one, in which plaintiffs' state law claims are premised on

DORSEY &
WHITNEY LLP
1031 West 4th Avenue,
Suite 600
Anchorage, AK  99501
(907) 276-4557

NOTICE OF REMOVAL
Page 7

STATE OF ALASKA V. MERCK & CO., INC.
Case No. _____

violations of the FDCA and its rules and regulations. For example, in *In re Zyprexa Products Liability Litigation*, 375 F. Supp. 2d 170 (E.D.N.Y. 2005), the court asserted federal question jurisdiction over state-law claims involving a manufacturer's marketing of a prescription drug and the state of Louisiana's payments for that drug under Medicaid. The court found that references in the complaint to federal funding provisions and laws demonstrated "a core of substantial issues [that were] federally oriented." *Id.* at 172-73.

21.  Similarly, in a recent case involving Medicaid drug pricing, the court in *County of Santa Clara v. Astra USA, Inc.*, No. C 05-03740 (WHA), 2005 U.S. Dist. LEXIS 34453 (N.D. Cal. Dec. 2, 2005) (attached hereto), held that federal jurisdiction was proper under *Grable* because the plaintiff's state law claims against pharmaceutical manufacturers for allegedly overcharging plaintiff for Medicaid drugs presented substantial questions of federal law. In concluding that the Medicaid drug pricing issues merited federal jurisdiction, the court observed that one measure of evaluating substantiality is "the importance of the federal issue." The court noted that "[u]nder this approach, the following issues have been found to be substantial: those that directly affect the functioning of the federal government, those in an area reserved for exclusive federal jurisdiction, and those that impact a complex federal regulatory scheme." *Astra USA*, 2005 U.S. Dist. LEXIS 34453, at *16. In this case, plaintiff's claims involve two complex federal regulatory schemes: Medicaid and the FDCA.

22.  Because plaintiff's claims here, like those in *Grable*, *Zyprexa*, and *Astra*

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

NOTICE OF REMOVAL
Page 8

STATE OF ALASKA V. MERCK & CO., INC.
Case No. _____

*USA*, will necessarily involve substantial questions of law under federal drug and Medicaid statues and regulations, this Court has federal question jurisdiction over plaintiff's claims.

WHEREFORE, Defendant prays that the above numbered and entitled cause on the docket of the Superior Court for the State of Alaska, Third Judicial District at Anchorage be removed from that court to the docket of the United States District Court for the District of Alaska, in accordance with 28 U.S.C. § 1441.

DATED this 17th day of January, 2006, at Anchorage, Alaska.

DORSEY & WHITNEY LLP

By:_____/s/ Jahna M. Lindemuth
Jahna M. Lindemuth, ABA #9711068
DORSEY & WHITNEY LLP
1031 West Fourth Avenue, Ste. 600
Anchorage, AK 99501-5907
(907) 276-4557
lindemuth.jahna@dorsey.com

CERTIFICATE OF SERVICE
The undersigned hereby certifies that on
the 17th day of January, 2006, a true and correct
copy of this document was served on:

James E. Fosler
Fosler Law Group, Inc.
737 West Fifth Avenue, Suite 205
Anchorage, Alaska 99501

W. Mark Lanier
Richard Meadow
Lawrence P. Wilson
The Lanier Law Firm
6810 FM 1960 West
Houston, Texas 77069

by electronic means through the ECF system
as indicated on the Notice of Electronic Filing,
or if not confirmed by ECF, by first class regular mail.

_____/s/ Jahna M. Lindemuth
Jahna M. Lindemuth, ABA #9711068
Dorsey & Whitney, LLP

**DORSEY &
WHITNEY LLP**
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

NOTICE OF REMOVAL
Page 9

STATE OF ALASKA V. MERCK & CO., INC.
Case No. _____

**APPENDIX OF UNPUBLISHED AUTHORITIES**

<u>CASE</u>

<u>County of Santa Clara v. Astra USA, Inc.,</u>
      No. C 05-03740 (WHA)
2005 U.S. Dist. LEXIS 34453 (N.D. Cal. Dec. 2, 2005

2005 U.S. Dist. LEXIS 34453, *

LEXSEE

**COUNTY OF SANTA CLARA, on behalf of itself and all others similarly situated, Plaintiff, v. ASTRA USA, INC., ASTRAZENECA PHARMACEUTICALS LP, AVENTIS PHARMACEUTICALS, INC., BAYER CORP., BRISTOL-MYERS SQUIBB CO., BURROUGHS WELLCOME CO., GLAXO WELLCOME, INC., PFIZER, INC., SCHERING-PLOUGH CORP., TAP PHARMACEUTICAL PRODUCTS, INC., WYETH-AYERST LABORATORIES, INC., ZENECA, INC., ZLB BEHRING LLC, and DOES 1 through 100, inclusive, Defendants.**

**No. C 05-03740 WHA**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**2005 U.S. Dist. LEXIS 34453**

**December 2, 2005, Decided**
**December 2, 2005, Filed**

**CORE TERMS:** distributors, joinder, federal jurisdiction, federal law, federal-question, judicial notice, federal issue, discount, removal, federal statute, accounting, overcharge, medications, price-control, complete relief, manufacturer, health-care, lawsuit, federal government, unfair-competition, substantiality, unfair, unjust enrichment, federal interest, ceiling price, state law, pharmaceutical, insubstantial, fraudulently, calculate

**COUNSEL:** [*1] For The County of Santa Clara, On Behalf of Itself and All Others Similarly Situated, Plaintiff: Jacqueline E. Mottek, Lerach Coughlin Stoia Geller Rudman & Robbins LLP, San Francisco, CA; Aelish M. Baig, Lerach Coughlin Stoia Geller Rudman & Robbins LLP, San Francisco, CA; Ann Miller Ravel, Office of the County Counsel, San Jose, CA; Cheryl A. Stevens, County of Santa Clara, San Jose, CA; Jennie Lee Anderson, Lerach Coughlin Stoia Geller Rudman & Robbins LLP, San Francisco, CA; Patrick J. Coughlin, Lerach Coughlin Stoia Geller Rudman & Robbins LLP, San Francisco, CA.

For Astra USA, Inc, AstraZeneca Pharmaceuticals LP, Defendants: Paul Jeffrey Riehle, Esq., Matthew A. Fischer, Sedgwick Detert Moran & Arnold LLP, San Francisco, CA; Sharon Douglass Mayo, Jeffrey Lawrence Handwerker, Robert S. Litt, Arnold & Porter LLP, Washington, DC.

For Aventis Pharmaceuticals Inc., Defendant: Alicia J. Donahue, Shook Hardy & Bacon LLP, San Francisco, CA; Paul Jeffrey Riehle, Esq., Matthew A. Fischer, Sedgwick Detert Moran & Arnold LLP, San Francisco,

CA; Sara J. Romano, Shook, Hardy & Bacon, L.L.P., San Francisco, CA.

For Bayer Corporation, Defendant: Jaime L.M. Jones, Sidley Austin [*2] Brown & Wood LLP, Chicago, IL; Paul Jeffrey Riehle, Esq., Matthew A. Fischer, Sedgwick Detert Moran & Arnold LLP, San Francisco, CA; Richard Raskin, Sidley Austin Brown & Wood, Chicago, IL; Timothy T. Scott, Paul Lionel Yanosy, Jr, Sidley Austin Brown & Wood LLP, San Francisco, CA.

For Bristol-Myers Squibb Company, Defendant: Lyndon M. Tretter, Hogan & Hartson, L.L.P., New York, NY; Paul Jeffrey Riehle, Esq., Matthew A. Fischer, Sedgwick Detert Moran & Arnold LLP, San Francisco, CA; Steven M. Edwards, Hogan & Hartson, L.L.P., New York, NY.

For Burroughs Wellcome Co, Glaxo Wellcome Inc., Defendants: Paul Jeffrey Riehle, Esq., Matthew A. Fischer, Sedgwick Detert Moran & Arnold LLP, San Francisco, CA.

For Pfizer Inc., Defendant: Molly Moriarty Lane, Morgan Lewis & Bockius LLP, San Francisco, CA; Paul Jeffrey Riehle, Esq., Matthew A. Fischer, Sedgwick Detert Moran & Arnold LLP, San Francisco, CA; Brian W. Shaffer, Jennifer B. Jordan, Morgan, Lewis & Bockius LLP, Philadelphia, PA.

For Schering-Plough Corporation, Defendant: Paul Jeffrey Riehle, Esq., Matthew A. Fischer, Sedgwick Detert Moran & Arnold LLP, San Francisco, CA; Brien T. O'Connor, Justin J. Wolosz, Ropes [*3] & Gray LLP,

Boston, MA; Colin T. Kemp, Kirke M. Hasson, Pillsbury Winthrop Shaw Pittman LLP, San Francisco, CA.

For Tap Pharmaceutical Products Inc, Defendant: Paul Jeffrey Riehle, Esq., Matthew A. Fischer, Sedgwick Detert Moran & Arnold LLP, San Francisco, CA; Peter Nels Larson, Jones Day, San Francisco, CA.

For Wyeth-Ayerst Laboratories, Inc, Defendant: Fletcher C. Alford, Gordon & Rees LLP, San Francisco, CA; Paul Jeffrey Riehle, Esq., Matthew A. Fischer, Sedgwick Detert Moran & Arnold LLP, San Francisco, CA; Kelly Jeanne Davidson, Stephen Craig Holden, Ober, Kaler, Grimes & Shriver, Baltimore, MD.

For Zeneca Inc, Defendant: Paul Jeffrey Riehle, Esq., Matthew A. Fischer, Sedgwick Detert Moran & Arnold LLP, San Francisco, CA; Sharon Douglass Mayo, Arnold & Porter LLP, Los Angeles, CA; Jeffrey Lawrence Handwerker, Robert S. Litt, Arnold & Porter LLP, Washington, DC.

For ZLB Behring, LLC, Defendant: Alicia J. Donahue, Shook Hardy & Bacon LLP, San Francisco, CA; Paul Jeffrey Riehle, Esq., Matthew A. Fischer, Sedgwick Detert Moran & Arnold LLP, San Francisco, CA; Sara J. Romano, Shook, Hardy & Bacon, L.L.P., San Francisco, CA.

For Smithkline Beecham Corp., Defendant: [*4] Valerie M. Wagner, Dechert, LLP, Palo Alto, CA.

JUDGES: WILLIAM ALSUP, UNITED STATES DISTRICT JUDGE.

OPINIONBY: WILLIAM ALSUP

OPINION:

ORDER (1) DENYING MOTION FOR REMAND OR DISMISSAL, (2) GRANTING REQUESTS FOR JUDICIAL NOTICE AND (3) DENYING MOTION FOR RULE 19(a) JOINDER

INTRODUCTION

Asserting four state-law claims, plaintiff County of Santa Clara moves for joinder of additional defendants and, based on such joinder, for remand to state court for lack of subject-matter jurisdiction. As an alternative to remand, it moves for dismissal due to lack of jurisdiction. Santa Clara and the defendants, all pharmaceutical manufacturers, separately have requested judicial notice of certain facts. The requests for judicial notice are unopposed and are GRANTED. The motion for remand or dismissal is DENIED; this Court has federal-question

subject-matter jurisdiction. The Rule 19(a) motion for joinder is DENIED.

STATEMENT

Defendants make pharmaceuticals, including common medicines such as Turns, Excederin and the antibiotic, Zithromax (Compl. PP 19-21). n1 They provide these medications to distributors who sell them to public hospitals and health-care clinics (Br. 2). As [*5] required by state law, Santa Clara County pays the cost of drugs given to many indigent and other patients at such medical facilities, including the Santa Clara Valley Medical Center. See Cal. Welf. & Inst. Code § 17000. In 2004, the county spent more than $ 30 million on prescription and over-the-counter medications given to outpatients at such facilities (Compl. PP 1, 3, 7).

n1 For purposes of this order, all factual allegations in the complaint are deemed true. Defendants have not in any way responded to those allegations; a formal answer is not yet required.

The federal government sets maximum prices at which such medications can be sold to public health-care institutions for use in outpatient treatment (Compl. PP 26-27). 42 U.S.C. 256b. Santa Clara sued defendants in Alameda County Superior Court, claiming they had bled the county's finances with overcharges for these medicines. Santa Clara asserted four claims on behalf of itself and similarly afflicted [*6] California counties: violations of the state's unfair-competition law and false-claims act, for an accounting that would reflect the amount of overcharges and for unjust enrichment (Compl. PP 68-87). Defendants removed the action here claiming diversity and federal-question jurisdiction (Notice of Removal of Action 1). Santa Clara made a timely motion for remand.

ANALYSIS

1. JUDICIAL NOTICE.

Santa Clara requested judicial notice of a publication in the Federal Register describing federal price limitations on prescription medications (Pl.'s Req. 1). Defendants requested judicial notice of six different matters: a description of the price-control regime on a Department of Health and Human Services web site; a report by the same department; the Pharmaceutical Pricing Agreement (the standard drug-pricing contract between the government and drug makers participating in the price-control program); complaints filed in two federal lawsuits; and a list of California cities by the League of California Cities (Defs.' Req. 1-3).

2005 U.S. Dist. LEXIS 34453, *

Under Federal Rule of Evidence 201, a court must take judicial notice of adjudicative facts if a party requests it to, [*7] if it supplies the necessary information to decide the request and if the facts are "not subject to reasonable dispute" because they are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

The time has passed for parties to object to the requests. They have not done so. Both sides have met their Rule 201 requirements. This order takes notice of the requested matters.

## 2. FEDERAL-QUESTION JURISDICTION.

District courts have jurisdiction over civil cases arising under the Constitution, laws and treaties of the United States. 28 U.S.C. 1331. When such a case is filed in state court, defendants may remove it to federal court. 28 U.S.C. 1441(b). Federal courts must construe the removal statute strictly. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09, 61 S. Ct. 868, 85 L. Ed. 1214 (1941).

Federal-question jurisdiction arises most obviously for rights of action conferred by a federal statute or constitutional provision. Section 1331 also confers jurisdiction when an issue of federal law undergirds a claim otherwise based on state law. Such a claim, however, may only be removed [*8] to federal court if it meets certain conditions: (1) it must raise a stated federal legal issue, (2) determination of the federal issue must be necessary to resolution of the claim, (3) the federal issue must be actually disputed, (4) the federal issue must be substantial, and (5) the federal court must be able to entertain the claim "without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, U.S. , 125 S.Ct. 2363, 2366-68, 162 L. Ed. 2d 257 (2005). If only one of several state claims satisfies the requirements for removal on federal-question grounds, then any other purely state claims in the same complaint may also be determined by the federal court under its supplemental jurisdiction. 28 U.S.C. 1441(c). This order now analyzes whether the *Grable and Sons* requirements are met here.

The instant case raises two stated federal legal issues: one contractual and one statutory. All the claims asserted by Santa Clara explicitly involve allegations that it was victimized by drug prices in excess of those allowed under a federal statute, 42 U.S.C. 256b, [*9] and under the Pharmaceutical Pricing Agreement, a contract between the federal government and the manufacturers (*see* Compl. PP 2, 7, 34; Defs.' Req. for Judicial Notice, Exh. B). n2 The contract, by its own terms, must be "construed in accordance with Federal common law" (Pharmaceutical Pricing Agreement at § VII(g), Defs.'

Req. for Judicial Notice, Exh. B). Both violations of the federal statute and breaches of the federal contract raise obviously federal issues. *See Boyle v. United Techs. Corp.*, 487 U.S. 500, 504, 108 S. Ct. 2510, 101 L. Ed. 2d 442 (1988) ("[O]bligations to and rights of the United States under its contracts are governed exclusively by federal law."); *Illinois v. City of Milwaukee, Wis.*, 406 U.S. 91, 100, 92 S. Ct. 1385, 31 L. Ed. 2d 712 (1972) ("[Section] 1331 jurisdiction will support claims founded upon federal common law as well as those of a statutory origin.").

n2 Santa Clara states that its claim for violation of the California False Claims Act does not mention any violations of federal law (Reply 4, n.5). This is misleading. The claim incorporates all 80 of the preceding paragraphs of the complaint "as through set forth in full herein" (Comp. P 81). Those 80 paragraphs provide a rash of allegations that defendants trampled federal laws.

[*10]

Contrary to Santa Clara's assertions at the hearing, determination of at least one of the stated federal issues is necessary. The alleged misconduct undergirding Santa Clara's claims distills to this: defendants purported to sell drugs in accordance with the federal-government's price prescriptions yet actually charged more. This conduct injured Santa Clara because it was obligated for those overcharges under state law. *See* Cal. Welf. & Inst. Code § 17000 (counties responsible for indigent medical care). For this case to be resolved on its merits, at least one of the federal issues embedded in the complaint must be addressed. There is simply no other way.

The necessity of determining the federal issues was hotly disputed by the parties in the briefs and at the hearing. This order therefore carefully examines each claim, demonstrating why it requires determination of at least one federal issue. Again, even if only one of the claims falls under federal-question jurisdiction, all may be heard here. *See* 28 U.S.C. 1441(c).

*First*, Santa Clara claims that it is entitled to an accounting. It wants this remedy so it may determine [*11] whether it paid more than allowed under the federal price-control statute and the Pharmaceutical Pricing Agreement (Compl. P 74). An essential element of a claim for accounting is that there is a balance due from the defendant that can only be ascertained by an accounting. *St. James Church of Christ Holiness v. Super. Ct. in and for L.A. County*, 135 Cal. App. 2d 352, 359, 287 P.2d 387 (Cal. Ct. App. 1955). The only way in which Santa Clara claims that a balance is due is by asserting that defendants charged in excess of the amount required

by federal statute and contract. The only methods to determine the proper price are to construe or interpret the relevant federal statutes and contract. The accounting claim therefore requires determination of a federal issue.

*Second,* Santa Clara claims that defendants engaged in "an unfair, unlawful, and deceptive scheme to collect inflated charges that exceed the . . . ceiling price . . . and unlawfully and fraudulently charged . . . substantially more than the . . . ceiling price." Plaintiff claims this violated the state unfair-competition law (Compl. P 77). *See* Cal. Bus. & Prof. Code § 17200. An unfair-competition [*12] claim is made out if the alleged conduct was either unfair, fraudulent or unlawful. An allegation that defendants violated Section 17200 by *unlawful* conduct obviously requires determination of whether they violated the federal price-control statute or contract. An allegation that they acted fraudulently or unfairly also requires determination of a federal issue because it boils down to claims that defendants said they were providing the federally mandated discounts but did not (*see* Compl. PP 76-79).

Santa Clara asserts that its allegations of unfair and fraudulent conduct provide theories of liability independent of any federal-law issue (Br. 13-14; Reply 4). It claims that defendants acted unfairly and fraudulently when they allegedly "misrepresented and failed to disclose . . . the true facts regarding their prices" (Reply 4). Liability under the unfair and fraudulent prongs of Section 17200 does not always require violation of a separate law. *Cel-Tech Communications, Inc. v. L.A. Cellular Tel. Co.,* 20 Cal. 4th 163, 180, 83 Cal. Rptr. 2d 548, 973 P.2d 527 (1999). If, for example, Santa Clara had alleged that defendants were *not* required to provide the discounts yet falsely claimed to be [*13] providing them nevertheless, its claim of unfair or fraudulent acts would not have turned on a federal issue. Santa Clara, however, did not assert any such thing. The only reasons it has given for believing that defendants behaved unfairly or fraudulently were that they failed to give *required* discounts. The Section 17200 claim therefore requires determination of whether defendants violated any federal statutory or federal contractual obligation to provide the discounts and, if they did, by how much they overcharged.

*Third,* Santa Clara asserted a violation of the state False Claims Act. *See* Cal. Gov't Code § 12651. The county alleges that defendants did one or more of the following: (1) falsely billed in excess of the amount owed for medications, (2) made false records to support such claims, (3) falsely sought to avoid obligations to pay money back to Santa Clara or (4) benefitted from inadvertent false billings for drug payments, discovered their falsity and yet failed to rectify the errors (Compl. P 82). In theory, perhaps, such a claim could be made out

independent of any federal issue. For instance, Santa Clara could have alleged that defendants [*14] were *not* required to provide the discounts yet nevertheless falsely claimed to have done so. The county, however, has not made any such accusation. In fact, it repeatedly stated that discounts were required. The only basis on which it claims the billings were false are that the manufacturers were required by federal law and contract to provide lower prices. If there was a false billing that did not turn on the federal price limits, Santa Clara may seek leave to amend its claim. Until it does so, there is no way around the federal issues.

*Fourth,* Santa Clara alleges unjust enrichment. Unjust enrichment requires that the defendant improperly obtained a benefit. Recovery consists of restitution of the ill-gotten gains to the party who rightfully should have them. *See Kossian v. Am. Nat'l Ins. Co.,* 254 Cal. App. 2d 647, 649-51, 62 Cal. Rptr. 225 (Cal. Ct. App. 1967); *see also* 1 B.E. Witkin, *Summary of Cal. Law* § 1013 (10th ed. 2005). In alleging unjust enrichment, Santa Clara claims defendants "agreed to supply drugs . . . at prices no greater than the . . . ceiling price . . . [yet] failed and refused to comply with that agreement[] and[,] as a result[,] defendants [*15] have retained monies to which they are not entitled" (Compl. P 85). Whether they failed to comply with the agreement requires a determination of (1) the price limits and (2) whether defendants had any federal statutory or contractual obligation to comply with them. There is simply no way to ignore federal law.

The stated federal issues are disputed in the instant case. Defendants claim to dispute plaintiff's interpretations of "average manufacturer price" and "best price," terms used to determine the proper drug prices (Opp. 5, *see* Pharmaceutical Pricing Agreement 1(a)-(b) (defining both terms), Defs.' Req. for Judicial Notice, Exh. B). *See also* 42 U.S.C. 1396r-8(k)(1) (definition of average manufacturer price); 42 U.S.C. 1396r-8(c)(1)(C)(i)-(ii) (definition of best price). Defendants also claim that they disagree with Santa Clara over the proper interpretation of the statute dictating how to calculate maximum prices, 42 U.S.C. 1396r-8.

The pricing issues in the instant case are substantial questions of federal law. There are two ways to judge the substantiality of a federal issue. First, if it [*16] has legal substance and some prospect of success, it survives. *Hagans v. Lavine,* 415 U.S. 528, 536-38, 94 S. Ct. 1372, 39 L. Ed. 2d 577 (1974) (holding that constitutional claims are insubstantial "only if its unsoundness so clearly results from the previous decisions of this court as to foreclose the subject and leave no room for the inference that the questions sought to be raised can be the subject of controversy"). The *Hagans* rule also applies to purely statutory cases. *See Mackey v. Pioneer Nat'l Bank,*

2005 U.S. Dist. LEXIS 34453, *

867 F.2d 520, 523 (9th Cir. 1989) (addressing the 1986 Comprehensive Omnibus Budget Reconciliation Act).

Courts have fashioned an alternative way to evaluate substantiality: the importance of the federal issue. Under this approach, the following issues have been found to be substantial: those that directly affect the functioning of the federal government, those in an area reserved for exclusive federal jurisdiction, and those that impact a complex federal regulatory scheme. *Grable & Sons*, 125 S.Ct. at 2368 (holding that construction of IRS notice requirements were substantial because they would have a direct impact on tax collection); *Hunter Douglas, Inc.* v. *Harmonic Design, Inc.*, 153 F.3d 1318, 1329 (Fed. Cir. 1998) [*17] (holding that the validity and enforceability of patents, under exclusive federal jurisdiction, are substantial enough to warrant federal-question jurisdiction over a state-law tort claim); *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 195 (2d Cir. 2005) (holding that interpretation of complex federal cable-television-rate statutes was substantial).

This order next examines the merit of the arguments in the instant case that are based on federal law. Then, it determines the likely impact of resolving the federal issues.

There is no decision directly deciding whether defendants' statutory-construction and contractual-interpretation arguments are substantial. This order finds, however, that defendants raise sufficiently plausible issues to withstand remand. In fact, a substantial amount of judicial ink already has been spilled over the meaning of a term that may be significant in the instant case. *See Pharm. Research & Mfrs. of Am. v. Thompson*, 346 U.S. App. D.C. 158, 251 F.3d 219, 224-26 (D.C. Cir. 2001) (addressing meaning of "payment" in Medicaid statute). The Medicaid statute considered by the District of Columbia Circuit and the Medicaid statute now before this court [*18] apparently use "payment" in the same way. The definition of this term could be significant in the instant case because the only drugs that are covered by the discount program are those "purchased by the [health-care provider] for which *payment* is made by the State under the State plan for medical assistance under [the Medicaid statute]." 42 U.S.C. 256b(a)(3) (emphasis added). If a drug is not one "for which payment is made by the State" then it presumably is not subject to the price-control statute. Whether or not a drug used in Santa Clara's public health-care facilities is subject to the price controls could determine both liability and damages. Construction of the statute is therefore a substantial issue. Another heavily litigated federal case makes clear that there are significant disputes over how to determine the maximum price. *See, generally, In re Pharm. Indus. Average Wholesale Price Litig.*, 230 F.R.D. 61 (D. Mass. 2005).

Interpreting the federal statute and contract at issue here may significantly affect federal interests. Determination of the federal issues in this case could heal or injure the complex regulatory scheme [*19] of distributing outpatient medications to the poor and other disadvantaged people. Although the instant case currently is confined to the claims of just one county, it is a putative statewide class action and the federal issues have the potential to affect many people: approximately 12,000 healthcare providers participated in the price-control program in 2003, spending $ 3.4 billion for outpatient drugs (Dep't of Health and Human Services, Office of Inspector Gen., Deficiencies in the Oversight of the 340B Drug Pricing Program at I (Oct. 2005), Defs.' Req. for Judicial Notice, Exh. C).

Santa Clara claims the issues are insubstantial. It argues that, if it wins the instant lawsuit, Medicaid reimbursements would not change. This argument is not lethal to defendants' removal. The important federal interest in price controls involves much more than the administration and amount of Medicaid reimbursements. They involve the broader issue of who should pay for indigent medical care in a nation hobbled by the lowest rate of health insurance coverage in the Western world. Santa Clara urged this Court to adapt a ruling by the District Court of Minnesota, claiming the decision bolstered its [*20] argument that the issues are insubstantial (Reply 7). *See Minnesota v. Pharmacia Corp.*, 2005 U.S. Dist. LEXIS 27638, No. 05-1394, 2005 WL 2739297 at *4 (D. Minn. Oct. 24, 2005)). Santa Clara mistakenly cites the case for the proposition that the Medicare issues in that case were insubstantial (Reply 7). In fact, the district court in the portion of *Pharmacia* quoted by Santa Clara was addressing the proper "balance of federal and state judicial responsibilities." *See Pharmacia*, 2005 U.S. Dist. LEXIS 27638, 2005 WL 2739297 at *4.

The substantiality of the federal issues in this case is driven home by conflict within the federal government itself over how to calculate the ceiling price. These calculations evidently involve more than mechanical and undisputable interpretations of federal law (*see* Deficiencies in the Oversight of the 340B Drug Pricing Program at ii ("[O]versight of the program is . . . hindered by the lack of detailed, written procedures for calculating 340B ceiling prices. Consequently, the 340B ceiling prices calculated by [the Centers for Medicare & Medicaid Services] . . . yielded incorrect ceiling prices."), Defs.' Req. for Judicial Notice, Exh. C).

The final sub-issue relevant [*21] to federal-question jurisdiction is whether hearing this lawsuit would disturb "any congressionally approved balance of federal and state judicial responsibilities." *See Grable & Sons* at 2368. This Court might pause before finding federal-question jurisdiction here if unfair-competition cases

previously had been heard only in state court. Such Section 17200 cases, however, are already endemic in federal court, as Santa Clara effectively concedes (Reply 10 ("U[nfair-competition law] claims are often predicated on federal law.")). *See, e.g., Lockyer v. Dynegy, Inc.*, 375 F.3d 831, 841 (9th Cir. 2004) (unfair-competition claim predicated on federal issues subject to exclusive federal jurisdiction; holding unaffected by subsequent amendment at 387 F.3d 966, 968 (9th Cir 2004)); *Nat'l Credit Reporting Ass'n v. Experian Info. Solutions, Inc.*, No. C 04-01661 WHA, 2004 U.S. Dist. LEXIS 17303 at *10 (N.D. Cal. July 21, 2004) (denying remand of Section 17200 claim).

Santa Clara nevertheless argues that "shifting" cases to federal court premised on pharmaceutical companies' overcharges would disrupt a proper federal-state balance (Reply 10). [*22] *See Grable & Sons*, 125 S.Ct. at 2368. There is, however, no congressionally approved balance of judicial responsibilities in this arena. During the approximately 13 years that the price controls have been in place, both state and federal courts have heard cases related to the statutes directly governing them. *See, e.g., Univ. Med. Ctr. of S. Nev. v. Shalala*, 335 U.S. App. D.C. 322, 173 F.3d 438 (D.C. Cir. 1999) (on whether plaintiff had standing to sue over its eligibility for discounts); *Pharmacia Corp.*, 2005 U.S. Dist. LEXIS 27638, 2005 WL 2739297 at *4 (motion to remand granted in dispute about overcharges); *Wisconsin v. Abbott Labs.*, 390 F. Supp. 2d 815, 825 (W.D. Wis. 2005) (same); *Montana v. Abbot Labs.*, 266 F. Supp. 2d 250, 263 (D. Mass. 2003) (remanding two overcharge cases and retaining federal jurisdiction over two others); and, generally, *In re Pharm. Indus. Average Wholesale Price Litig.*, 230 F.R.D. 61 (heard under federal jurisdiction). n3

> n3 Although the decision from the District Court of Massachusetts is captioned with the defendant name Abbot Laboratories, the corporation is actually named Abbott Laboratories (with two t's), after its home base in Abbott, Illinois. The decision of the District Court of Wisconsin is correctly captioned.

[*23]

Santa Clara argued in its briefs that *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 817, 106 S. Ct. 3229, 92 L. Ed. 2d 650 (1986), requires a different result here. At hearing, counsel for Santa Clara also cited three of the decisions named immediately above: *Montana v. Abbot Laboratories, Pharmacia Corp.* (a later decision in the *Montana* case), and *Wisconsin v. Abbott Laboratories.*

In *Merrell Dow*, the Supreme Court held that there was no federal jurisdiction over state tort claims merely because they borrowed a duty of care from a federal statute. The federal statute at issue in *Merrell Dow* conferred no independent right of action and had not preempted state law. Counsel here notes that, as in *Merrell Dow*, there is no independent right of action under the drug price-control statute and that it did not preempt state regulation. *Merrell Dow* did not, however, bar federal jurisdiction over state claims in the absence of preemption or a federal cause of action. It merely held that there is no "welcome mat" inviting federal jurisdiction for such cases. *Grable & Sons*, 125 S.Ct. at 2370. What barred federal jurisdiction in *Merrell Dow* was that [*24] it would have attracted a "horde of original filings and removal cases" to federal court. Such a stampede would have bruised federal comity. *Ibid.* The *Montana* decision to remand Minnesota's case to state court was issued before *Grable and Sons* and rested on the once-common interpretation of *Merrell Dow* that it barred federal jurisdiction over state-law claims that used, as a standard, a federal law for which Congress had not provided a right of action. *Montana*, 266 F. Supp. 2d at 257. The *Grable and Sons* Court held that interpretation incorrect. For this reason, the *Montana* court's ruling is not persuasive.

Counsel for Santa Clara also argued that *Pharmacia* and *Wisconsin* persuasively found that federalizing a case such as this one would upset the proper balance of judicial responsibilities. n4 This order disagrees. The *Wisconsin* court's first rationale was that the state had as much of an interest in Medicaid drug prices as did the federal government. This analysis confounds two aspects of the *Grable and Sons* analysis: judicial balance and the substantiality of the federal interest. Whether the federal interest is strong is [*25] a question for the substantiality analysis, not the balance analysis. The instant case is also distinct: it involves a federal contract whereas none was at issue in *Wisconsin*. The instant case therefore has a higher quotient of federal interest. The *Wisconsin* court's second rationale was that allowing federal jurisdiction would disrupt the balance of judicial responsibilities to a degree more akin to that feared in *Merrell Dow* than that feared in *Grable and Sons*. Like *Merrell Dow*, the instant case uses a federal standard to measure violation of state-law statutory and common law. But, unlike *Merrell Dow*, the instant cases may involve interpretation of a federal contract under federal common law, the type of task that already falls to federal courts. The *Wisconsin* court also reasoned that, although many drug-pricing cases already were in federal court, this did not reflect the proper balance because those removals took place before *Grable and Sons*. This proves little because, if *Grable and Sons* actually changed the law to deprive those courts of jurisdiction, they could have remanded them to state court *sua sponte. See, e.g., Csibi v. Fustos*, 670 F.2d 134, 136

& n.3 (9th Cir. 1982) [*26] ("[L]ack of subject matter jurisdiction can be raised by a court's own motion at any time. . . . [I]t is the duty of the federal courts to assure themselves that their jurisdiction is not being exceeded."); *White v. Gittens*, 121 F.3d 803, 806 (1st Cir. 1997) ("[A] court has an obligation to inquire *sua sponte* into its subject matter jurisdiction, and to proceed no further if such jurisdiction is wanting."). They have not, so far as counsel have identified, done so. This order also disagrees with the *Wisconsin* court's suggestion that moving all state cases involving drug pricing to federal court would work a disruption akin to that feared by the *Merrell Dow* Court. *See Wisconsin*, 390 F. Supp. 2d at 823-24. In *Merrell Dow*, the plaintiffs claimed negligence, breach of warranty, strict liability, fraud and gross negligence. 478 U.S. at 805. For some of these claims, violation of a statute often proves both duty and breach. Allowing such a slim connection to federal law to create Section 1331 jurisdiction would have moved many garden-variety tort claims from state to federal court. The same can hardly be said in the instant [*27] case. Violation of federal law will rarely be a presumptively conclusive element of claims for accounting, unjust enrichment, false claims or unfair competition. The instant drug-pricing case probably falls somewhere between *Grable and Sons*, on the one hand, and *Merrell Dow*, on the other.

n4 *Pharmacia* quoted *Wisconsin* but added no new analysis. *See* 2005 U.S. Dist. LEXIS 27638, 2005 WL 2739297 at *4. All references to the analysis of *Wisconsin* apply equally to *Pharmacia*.

As a final matter, this Court notes that the federal-question decisions in *Wisconsin* and *Pharmacia* were not essential in granting the motions for remand. In each case, removal had been procedurally defective and provided an independent and adequate reason to remand to state court. *Wisconsin*, 390 F. Supp. 2d at 824; *Pharmacia*, 2005 U.S. Dist. LEXIS 27638, 2005 WL 2739297 at *2.

There is no reason to believe that allowing federal jurisdiction over cases such as the instant one would tip the balance of federal-state judicial [*28] responsibilities. As noted above, such cases already have been heard in both federal and state fora. Furthermore, complaints such as the instant one tend to be class actions, reducing any increase in the number of additional cases such jurisdiction would put into federal courts.

Finally, this order's determination that there is federal jurisdiction comports with the requirement that the removal statute be construed strictly. *Shamrock Oil &*

*Gas*, 313 U.S. at 108-09; *see Duncan v. Stuetzle*, 76 F.3d 1480, 1484-91 (9th Cir. 1996) (analysis identical to this order's consideration of the necessity of the federal issue).

In summary, this order diagnoses the instant action as terminally federal in nature. The district court has federal-question jurisdiction over the complaint.

### 3. MOTION FOR JOINDER

Santa Clara moves for necessary joinder of three medical distributors under Federal Rule of Civil Procedure 19(a).

It seems obvious that this Rule 19(a) argument is a tactic in Santa Clara's larger remand strategy. By deeming the wholesalers part of this case, in a sort of *nunc pro tunc* way, the county hopes [*29] to defeat the diversity basis for removal (*see* Br. 6 ("[T]he propriety of the Court's jurisdiction based upon diversity of citizenship is ordinarily determined at the time the Complaint is filed, *unless* the joinder of a party would defeat diversity jurisdiction, in which event the action must be remanded or dismissed."). That strategy would fail, in all events, for the reason that federal-question removal jurisdiction is sufficient without regard to diversity. A separate stand-alone motion for joinder has been made, however. This order therefore must address it.

The heart of Rule 19(a) is a disjunctive analysis. If either of two prongs is satisfied, joinder is mandatory. First, if complete relief cannot be had between the parties, joinder is required. Second, the court must join the non-party if it has a legally protected interest in the subject of the action and disposition in its absence would either (1) impede or destroy its ability to protect that interest or (2) leave the parties subject to a "substantial risk" of multiple or inconsistent obligations. FRCP 19(a).

Santa Clara seeks to join McKesson Corp., AmerisourceBergen [*30] Corp. and Cardinal Health, Inc. These wholesalers contract with the counties to provide defendants' medications. They allegedly failed to pass on the requisite discounts (Br. 2, 9).

Joinder of the distributors is not required to accord complete relief among Santa Clara and defendants. Santa Clara claims that it needs the Court to order the distributors to sell pharmaceuticals at discounted prices (Br. 11-12). This Court's inability to issue such orders absent joinder does not preclude complete relief among the parties already present. It only prevents complete relief as between Santa Clara and the wholesale distributors. This argument therefore collapses.

Santa Clara also claims that complete relief would require a constructive trust to be imposed upon the distributors so that they would not dissipate the overcharges

Santa Clara paid to them. Even assuming that a constructive trust is a proper remedy here, imposition of one would not be necessary. Defendants have more than enough assets to satisfy any judgment in this case.

Santa Clara also claimed at the hearing that full relief is impossible without joinder because the distributors' non-party status would hamper its discovery [*31] efforts (see also Reply 15). Santa Clara did not back up this claim with any example of the discovery that (1) is so important that without it complete relief cannot be afforded and (2) the distributors would be more likely to give up if they were joined. This argument borders on the frivolous.

Plaintiff argues that its request for an accounting cannot be accomplished without joinder (Br. 8). An accounting is an equitable remedy by which a party opens its books so that the other side may calculate amounts owed. In the instant case, the amount owed, if any, to Santa Clara by defendants can be determined in two steps. First, calculate the proper price of the drugs using defendants' sales records and price calculations prescribed by federal statute and contract. Second, determine for which purchases the health-care providers sought reimbursement. All of this information is held either by Santa Clara, its health-care providers or defendants. There is no need to pry into distributors' books outside of normal civil discovery. Santa Clara's accounting-remedy argument therefore does not justify joinder under Rule 19.

The county additionally claims that, without joinder, it would have [*32] no way to determine whether defendants met their purported obligation to "ensure that distributors pass along the discounts" (Br. 8). Why not? Santa Clara made no persuasive effort to explain. Again, normal civil discovery seems likely to solve this problem. Furthermore, this alleged problem could not present a difficulty in according relief. It merely would make it more difficult for Santa Clara to prove liability. This argument is therefore rejected.

Santa Clara also argues that joinder is necessary to protect the distributors because of the scope of discovery to which they will be subjected: "[b]ecause the distributors will have the burden of producing all of the relevant evidence[,] they must also have the ability to defend themselves afforded to litigants" (Reply 14). It is silly to suggest that the distributors will have the burden of producing "all of the relevant evidence." Furthermore, Santa Clara can point to no way in which these discovery issues would impact the distributors' interests implicit in this litigation, namely their contracts with Santa Clara and defendants. This argument fails.

Santa Clara additionally claimed at the hearing and in its briefs that, if [*33] the distributors are not joined,

disposition of the action will impair their ability to protect the interests they have in contracts with Santa Clara due to the effects of collateral estoppel (Br. 10-11). These arguments were dead on arrival.

The collateral estoppel doctrine stands for the principle that when a final judgment has determined an ultimate issue of fact, it is conclusive in any subsequent lawsuit based on different claims but involving a party to the prior litigation. Ashe v. Swenson, 397 U.S. 436, 443, 90 S. Ct. 1189, 25 L. Ed. 2d 469 (1970); Montana v. United States, 440 U.S. 147, 153, 99 S. Ct. 970, 59 L. Ed. 2d 210 (1979). Even some entities that were not party to the original litigation may be bound by it. This generally applies, however, only when they effectively were represented in the first litigation and had interests closely aligned with the actual party. See, e.g., Sea-Land Servs., Inc. v. Gaudet, 414 U.S. 573, 593-94, 94 S. Ct. 806, 39 L. Ed. 2d 9 (1974) ("[B]eneficiaries are bound by the judgment with respect to the interest which was the subject of the fiduciary relationship.") (internal citation omitted).

Santa Clara has presented no facts to suggest that the instant case could have any [*34] collateral-estoppel effect on the distributors. The distributors do not have a representative and closely aligned relationship with defendants in the context of this litigation. Their interests actually might be antagonistic to one another, given the possibility that each might blame the other for any alleged overcharges. Furthermore, Santa Clara wants it both ways: in one sentence, it asserts that the distributors would be bound by preclusion and -- in the very next sentence -- it asserts that they must be protected because defendants would not properly represent their interests (Br. 11). Like a fatal drug interaction, the combination of these arguments mortally wounds this motion for joinder. n5

n5 Because there is no possibility that collateral estoppel would prevent the distributors from fully litigating any separate disputes with Santa Clara, its reliance upon Takeda v. Northwestern National Life Insurance Co., 765 F.2d 815 (9th Cir. 1985), and Aguilar v. Los Angeles County, 751 F.2d 1089 (9th Cir. 1985) is misplaced. See Takeda 765 F.2d at 821 (premising joinder of a party on the possibility that it might be collaterally estopped from litigating the same issues in future litigation) and Aguilar, 751 F.2d at 1092-94 (same).

[*35]

Santa Clara pretends to worry about defendants, asserting that they may be subject to a substantial risk of

2005 U.S. Dist. LEXIS 34453, *

inconsistent judgments if the distributors must be sued in a separate lawsuit. It does not specify, however, how any judgments would be inconsistent. Presumably, the judgment in any action solely against distributors would be binding only upon the distributors and would not require any remedy necessitating action on the part of the manufacturers.

Plaintiff also argues that, if it is not granted its Rule 19 motion for joinder, it will be "required" to file a second action against the distributors. Not so. Rule 19 is not the only procedure to get distributors into the case. Rule 20 is another way to do so. Santa Clara is free to file a motion under the more permissive standards of Rule 20. Santa Clara is always free to bring a normal motion to amend. The accompanying case management order will invite Santa Clara to do so.

Santa Clara has not made a sufficient showing that joinder is necessary to force distributors into this lawsuit. The Rule 19(a) motion is therefore denied.

**CONCLUSION**

This order holds that the instant case is removable because there is federal-question [*36] jurisdiction. It therefore has no need to address diversity-jurisdiction issues raised by both sides. The motions for remand and, in the alternative, for dismissal are **DENIED** for the reasons stated above. Joinder is unnecessary so the Rule 19(a) motion also is **DENIED.**

**IT IS SO ORDERED.**

Dated: December 2, 2005

WILLIAM ALSUP

UNITED STATES DISTRICT JUDGE

W. Mark Lanier (*pro hac vice* application pending)
Richard Meadow (*pro hac vice* application pending)
Lawrence P. Wilson (*pro hac vice* application pending)
The Lanier Law Firm
6810 FM 1960 West
Houston, Texas 77069
Telephone: (713) 659-5200
Fax: (713) 659-2204

James E. Fosler
Fosler Law Group, Inc.
737 West Fifth Ave., Suite 205
Anchorage, Alaska 99501
Telephone: (907) 277-1557
Fax: (907) 277-1657

Attorneys for Plaintiff

## IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

## THIRD JUDICIAL DISTRICT AT ANCHORAGE

| | |
|---|---|
| STATE OF ALASKA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| MERCK & CO., INC., | ) |
| | ) |
| Defendant. | ) |
| | ) Case No: 3AN-05- 14 292 ci |

## COMPLAINT
### (AS 45.50.471, AS 45.50.501, AS 45.50.551)

The State of Alaska, Plaintiff herein, by and through its counsel, brings this Complaint against Merck & Co., Inc. ("Defendant") pursuant to the Unfair Trade Practices and Consumer Protection Act, AS 45.50.471 *et seq.*

A
1 28

## DEFENDANT

1.      Defendant is an American pharmaceutical company incorporated under the laws and statutes of the State of New Jersey.  Defendant can be served with process by serving its registered agent, CT Corporation System, 801 W. 10th Street, Suite 300, Juneau, Alaska 99801.

## JURISDICTION AND VENUE

2.      At all times material to this civil action, Defendant transacted business in Alaska by, among other things, advertising, soliciting, selling, and distributing the pharmaceutical product known as Vioxx to purchasers in Alaska.  Therefore, this court has personal jurisdiction over Defendant.

3.      This court has subject-matter jurisdiction based upon AS 45.50.501 and 45.50.551, which provide remedies to redress Defendant's conduct and authorize the State of Alaska to bring this action.

4.      Because the State of Alaska is not a citizen for purposes of diversity jurisdiction, no federal court can exercise subject-matter jurisdiction over this case by virtue of diversity of citizenship.  *State of Alaska v. K&L Distributors, Inc.*, 318 F.2d 498, 498 (9th Cir. 1963); *Tex. Dept. of Hous. & Cmty. Affairs v. Verex Assurance, Inc.*, 68 F.3d 922, 926 (5th Cir. 1995).

5.      Venue is proper in this judicial district pursuant to Section 45.50.501 of the Alaska Statutes and Rule 3 of the Alaska Rules of Civil Procedure because some of

COMPLAINT
*State of Alaska v. Merck & Co., Inc.*, 3AN-_____CI









Defendant's unlawful acts and practices that give rise to this Complaint arose in this judicial district and the Defendant is doing business in this judicial district.

## DEFENDANT'S CONDUCT

6.      All practices, acts, and omissions alleged herein to have been committed by Defendant were committed by Defendant's officers, directors, employees, or agents, who, at all times, acted on behalf of Defendant and whose practices, acts, and omissions were authorized and/or ratified by Defendant.  Accordingly, Defendant is liable under the doctrines of vice-principal, respondeat superior and agency as those terms are defined and applied under the laws and statutes of Alaska.

7.      Defendant began marketing Vioxx (generic name Rofecoxib) in May 1999, following a short clinical trial period.  Vioxx was initially approved for osteoarthritis, the management of acute pain in adults, and the treatment of primary dysmenorrhea. Furthermore, in requesting that Vioxx be placed on the Alaska Medicaid Program's list of drugs subject to reimbursement, the Defendant represented that Vioxx was at least as safe as other drugs of a similar class and/or type used for the same purposes.  Ultimately, Defendant withdrew Vioxx from the market on September 30, 2004, because it was unsafe.  Research and clinical experience has revealed that Vioxx significantly increases the risk of heart attack and other serious cardiovascular and cerebrovascular medical complications.

8.      From the time Defendant started developing Vioxx, through the date of its withdrawal from the market on September 30, 2004, Defendant engaged in knowing

COMPLAINT
*State of Alaska v. Merck & Co., Inc.,* 3AN-_____ CI

3 28

misrepresentations, including, but not limited to, direct representations to the Alaska Medicaid Program that Vioxx was safe and effective and advertising and promotional campaigns to Alaskans that falsely represented the safety of Vioxx. The Defendant misrepresented and suppressed evidence concerning the significant health hazards of Vioxx.

9.    Defendant was aware that Vioxx caused serious and significant health hazards even before Defendant promoted Vioxx to physicians and to the State of Alaska and provided Vioxx to Alaskans. Defendant knew that cerebrovascular and cardiovascular problems occurred more frequently in patients receiving Vioxx than in patients receiving placebos or other medicines. Defendant's internal memos and e-mails, dating back to at least 1996, show that Defendant knew "how" and "why" Vioxx would cause significantly higher rates of cardiovascular problems in patients taking Vioxx, as compared to a control group.

10.   Before Defendant began marketing Vioxx to the public in May 1999, Defendant knew clinical research, including its own, showed that Vioxx increased the risk of heart attack and adverse cardiovascular and cerebrovascular problems. However, Defendant did not disclose this prior knowledge, nor the additional knowledge Defendant obtained after it started successfully selling Vioxx to the public. Instead, the Defendant misrepresented and mischaracterized the data and information concerning Vioxx. Moreover, the Defendant launched an expensive, promotional advertising campaign to convince lay people to request Vioxx from their healthcare professionals for the treatment of their pain, and to promote, as safe, the use of Vioxx, even though the Defendant's own medical research confirmed its harmful effects. The Defendant also launched an aggressive campaign of intimidation against

COMPLAINT
*State of Alaska v. Merck & Co., Inc.*, 3AN-_____CI

researchers and physicians who questioned the safety of Vioxx. The Defendant's deceptive and misleading representations were later recognized by the FDA in a letter to the Defendant wherein the FDA labeled the Defendant's promotional sales marketing and materials as "lacking in pure balance," "false," and "misleading." In recent months, investigators have learned that the Defendant deliberately removed data of some adverse cardiovascular and cerebrovascular events from data supplied to those outside the company.

11.     It was not until September 30, 2004, that the Defendant finally admitted that Vioxx was not safe and posed such an unreasonable risk of harm to the public that it should be withdrawn from the market.

## VIOLATIONS OF THE UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION ACT

12.     Defendant's acts and practices were unlawful as that term is described in AS 45.50.471(a) in that Defendant used unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce.

13.     Defendant represented to the State, to physicians in Alaska, and to the public in Alaska that Vioxx had characteristics, uses, and benefits that it did not have.  AS 45.50.471(b)(4).

14.     Defendant advertised Vioxx with an intent not to sell it as advertised.  AS 45.50.471(b)(8).

15.     Defendant engaged in conduct creating a likelihood of confusion or of misunderstanding and which misled, deceived, or damaged buyers of Vioxx, including the

COMPLAINT
*State of Alaska v. Merck & Co., Inc.*, 3AN-_____CI

A
5    28



State of Alaska, healthcare providers in Alaska, and Alaskans in general. AS 45.50.471(b)(11).

16.   Defendant used and employed deception, fraud, and misrepresentation to further the sales of Vioxx. Defendant knowingly concealed, suppressed, and omitted one or more material facts with the intent that others rely on the concealment, suppression, and omission in connection with the sale and advertisement of Vioxx. AS 45.50.471(b)(12).

17.   Defendant knowingly or intentionally concealed or failed to disclose evidence that revealed the truth concerning the significant increased risk of heart attack and other cardiovascular problems caused by Vioxx. In addition, Defendant knowingly or intentionally set out on a course of concealing this evidence by misrepresenting the data in published literature and in advertising campaigns, and by threatening and attempting to coerce those who chose to criticize Defendant, to warn the public and the health care community, and to tell the truth about the significant risks posed by Vioxx. This conduct violates the Unfair Trade Practices and Consumer Protection Act.

18.   Defendant knowingly or intentionally made, caused to be made, induced, or sought to induce the making of false statements or misrepresentations of material fact concerning the safety, or lack thereof, of Vioxx, which is information required to be provided by state law, rule, regulation, and/or provider agreement to the Alaska Medicaid Program. This conduct violates the Unfair Trade Practices and Consumer Protection Act.

19.   Defendant knowingly and intentionally made claims under the Alaska Medicaid Program for a product that is substantially inadequate or inappropriate when compared to

COMPLAINT
*State of Alaska v. Merck & Co., Inc.*, 3AN-_____CI

generally recognized standards within the health care industry or for a product that is otherwise inappropriate. This conduct violates the Unfair Trade Practices and Consumer Protection Act.

20.    Defendant's knowing or intentional acts and omissions constitute repeated violations of the Alaskan statutory laws.  Defendant has now admitted that Vioxx is unsafe and has taken it off the market.

## CAUSATION OF DAMAGES

21.    Defendant's unlawful acts and practices induced a great many Alaskans to purchase Vioxx.

22.    Defendant's unlawful acts and practices induced the State of Alaska to authorize expenditure of Medicaid funds for the purchase of Vioxx.

23.    Defendant's unlawful acts and practices resulted in the expenditure of millions of dollars of state funds or state controlled funds on Vioxx.

24.    Defendant's unlawful acts and practices were a cause-in-fact, producing cause, and proximate cause of the purchase and expenditures described in paragraphs 21 thru 23 and have necessitated this action.

/ / / /

/ / / /

/ / / /

COMPLAINT
*State of Alaska v. Merck & Co., Inc.*, 3AN-_____CI

Page 7 of 8

A
7   28

## PRAYER FOR RELIEF

WHEREFORE, the State of Alaska demands judgment as follows:

1.     For money damages in an amount that far exceeds the $100,000 minimum jurisdictional limit of this court;

2.     For restitution damages for the value of all payments that the State of Alaska made for Vioxx prescriptions;

3.     For treble damages;

4.     For civil penalties of $5,000 for each separate violation of the Unfair Trade Practices and Consumer Protection Act;

5.     For punitive damages;

6.     For costs and attorneys' fees;

7.     For prejudgment interest;

8.     For post judgment interest;

9.     For all other relief deemed just and equitable by the Court.

DATED: December 23, 2005.

Respectfully submitted,

FOSLER LAW GROUP, INC.

JAMES E. FOSLER
Alaska Bar No.: 9711055

COMPLAINT
*State of Alaska v. Merck & Co., Inc.*, 3AN-_____CI

Page 8 of 8



SUPERIOR COURT FOR THE STATE OF ALASKA
AT ANCHORAGE

State of Alaska )
                                    )
                    Plaintiff(s),   )
                                    )
    vs.                             )
                                    )
                                    )
Merck & Co., Inc.                   )
                                    )
                    Defendant(s).   )     CASE NO. 3AN- 05- 14292CI
                                    )
                                          SUMMONS
                                          AND
                                          NOTICE TO BOTH PARTIES
                                          OF JUDICIAL ASSIGNMENT

To Defendant:  Merck & Co., Inc.

You are hereby summoned and required to file with the court a written answer to the complaint which
accompanies this summons. Your answer must be filed with the court at 825 W. 4th Ave., Anchorage,
Alaska 99501 within 20 days* after the day you receive this summons. In addition, a copy of your
answer must be sent to the plaintiff's attorney, James Fosler
whose address is: 737 West Fifth Ave., Suite 205, Anchorage, AK 99501

If you fail to file your answer within the required time, a default judgment may be entered against
you for the relief demanded in the complaint.

NOTICE OF JUDICIAL ASSIGNMENT

TO:  Plaintiff and Defendant

You are hereby given notice that:

[X]  This case has been assigned to Superior Court Judge _Hopwood_

[ ]  This case has been assigned to District Court Judge _____

CLERK OF COURT

_Dec. 23, 05_          By: _M. Lumpkin_
Date                        Deputy Clerk

* The State or a state officer or agency named as a defendant has 40 days to file its answer.

CIV-100 ANCH (6/99)(st.3)                              Civil Rules 4, 5, 12, 55
SUMMONS

9 A 28

W. Mark Lanier (*pro hac vice* application pending)
Richard Meadow (*pro hac vice* application pending)
Lawrence P. Wilson (*pro hac vice* application pending)
The Lanier Law Firm
6810 FM 1960 West
Houston, Texas 77069
Telephone: (713) 659-5200
Fax: (713) 659-2204

James E. Fosler
Fosler Law Group, Inc.
737 West Fifth Ave., Suite 205
Anchorage, Alaska 99501
Telephone: (907) 277-1557
Fax: (907) 277-1657

Attorneys for Plaintiff

## IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

## THIRD JUDICIAL DISTRICT AT ANCHORAGE

| | |
|---|---|
| STATE OF ALASKA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| MERCK & CO., INC., | ) |
| | ) |
| Defendant. | ) |
| | ) Case No: 3AN-05- |

## JURY DEMAND

The State of Alaska, by and through counsel, pursuant to Alaska Civil Rule 38, demands a trial by jury.

////

A
10  28

DATED: December 23, 2005.

Respectfully submitted,

FOSLER LAW GROUP, INC.

JAMES E. FOSLER
Alaska Bar No.: 9711055

JURY DEMAND
*State of Alaska v. Merck & Co., Inc.*, 3AN-_____CI

Page 2 of 2

11  28

W. Mark Lanier (*pro hac vice* application pending)
Richard Meadow (*pro hac vice* application pending)
Lawrence P. Wilson (*pro hac vice* application pending)
The Lanier Law Firm
6810 FM 1960 West
Houston, Texas 77069
Telephone: (713) 659-5200
Fax: (713) 659-2204

James E. Fosler
Fosler Law Group, Inc.
737 West Fifth Ave., Suite 205
Anchorage, Alaska 99501
Telephone: (907) 277-1557
Fax: (907) 277-1657

Attorneys for Plaintiff

## IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

## THIRD JUDICIAL DISTRICT AT ANCHORAGE

| | |
|---|---|
| STATE OF ALASKA, )<br> )<br>                    Plaintiff, )<br> )<br>        vs.          )<br> )<br>MERCK & CO., INC.,   )<br> )<br>                    Defendant. )<br>————————————————— ) | <br><br><br><br><br><br><br>Case No: 3AN-05-14292 CI |

## <u>PROOF OF SERVICE</u>

Plaintiff State of Alaska files, pursuant to Alaska Civil Rule 4(f), the attached "Return Receipt" indicating that the defendant was serviced with the summons, complaint, and jury demand on December 27, 2005.

Exhibit  A
Page  12  of  28

DATED: December 30, 2005.

Respectfully submitted,

FOSLER LAW GROUP, INC.

_____
JAMES E. FOSLER
Alaska Bar No.:  9711055

PROOF OF SERVICE
*State of Alaska v. Merck & Co., Inc.*, 3AN-05-14292 CI

Page 2 of 2

Exhibit ____A____
Page _13_ of _28_

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

CT Corporation System
801 W. 10th Street #300
Juneau, AK 99801

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _Lear_          ☐ Agent
                   ☐ Addressee

B. Received by ( Printed Name )      C. Date of Delivery
_Lear_                                12/27

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
☒ Certified Mail      ☐ Express Mail
☐ Registered          ☒ Return Receipt for Merchandise
☐ Insured Mail        ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
   (Transfer from service label)

7004 1160 0002 0763 6357

PS Form 3811, February 2004        Domestic Return Receipt        102595-02-M-1540

Exhibit A
Page 14 of 28

W. Mark Lanier (*pro hac vice* application pending)
Richard Meadow (*pro hac vice* application pending)
Lawrence P. Wilson (*pro hac vice* application pending)
The Lanier Law Firm
6810 FM 1960 West
Houston, Texas 77069
Telephone:  (713) 659-5200
Fax:  (713) 659-2204

James E. Fosler
Fosler Law Group, Inc.
737 West Fifth Ave., Suite 205
Anchorage, Alaska  99501
Telephone:  (907) 277-1557
Fax:  (907) 277-1657

Attorneys for Plaintiff

## IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

## THIRD JUDICIAL DISTRICT AT ANCHORAGE

| | |
|---|---|
| STATE OF ALASKA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| MERCK & CO., INC., | ) |
| | ) |
| Defendant. | ) |
| | ) |   Case No: 3AN-05-14292 CI |

## MOTION TO APPEAR *PRO HAC VICE* ON BEHALF OF PLAINTIFF

The undersigned, W. Mark Lanier, Richard Meadow and Lawrence Wilson, move pursuant to Rule 81(a)(2) of the Alaska Rules of Civil Procedure, for leave to appear *pro hac*

*vice* as co-counsel for plaintiff and to participate in this lawsuit in all respects permitted by the rules.

In support of this motion, the undersigned represent that, as a lawyer with The Lanier Law Firm, they are counsel for the plaintiff. They further represent that W. Mark Lanier was admitted to the Bar of the State of Texas in 1985, that Richard Meadow was admitted to the Bar of New York in 1985 and that Lawrence P. Wilson was admitted to the State Bar of Texas in 1987. Attached in support of this motion are the following documents:

1.  Certificates of good standing from the Texas State Bar Association for W. Mark Lanier and Lawrence P. Wilson and from the Supreme Court of Pennsylvania, The State of New York Supreme Court, Appellate Division and the Supreme Court of New Jersey for Richard Meadow; and

2.  The original proof of payment of the required fee to the Alaska Bar Association.

Alaska counsel with whom the undersigned will be associated in this litigation, who is authorized to practice in the courts of the state, is James E. Fosler, Fosler Law Group, Inc., 737 W. 5th Ave., Suite 205, Anchorage, Alaska 99501.

MOTION TO APPEAR PRO HAC VICE ON BEHALF OF PLAINTIFF
*State of Alaska v. Merck & Co., Inc.*, 3AN-05-14292 CI

The undersigned respectfully requests that the Court grant this motion. A proposed order is attached.

DATED: December 30, 2005.

Respectfully submitted,

THE LANIER LAW FIRM

W. Mark Lanier
TSB No.: 11934600
Richard Meadow
New York Bar No.: 1963578
Lawrence P. Wilson
TSB No.: 21704100

## CONSENT OF ALASKA COUNSEL

I hereby consent to this motion.

DATED: Jan 3, 2006.

FOSLER LAW GROUP, INC.

JAMES E. FOSLER
Alaska Bar No.: 9711055

MOTION TO APPEAR PRO HAC VICE ON BEHALF OF PLAINTIFF
*State of Alaska v. Merck & Co., Inc.*, 3AN-05-14292 CI

CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was ☒ ☐
hand delivered ( ) faxed (☑) mailed on
1/4/06 ____ to:

Merck & Co., Inc.
c/o CT Corporation Systems
801 W. 10th Street, Suite 300
Juneau, AK 99801


_____
James E. Fosler

MOTION TO APPEAR PRO HAC VICE ON BEHALF OF PLAINTIFF
*State of Alaska v. Merck & Co., Inc.*, 3AN-05-14292 CI

A
18 of 28

## ALASKA BAR ASSOCIATION
P.O. Box 100279   (907) 272-7469
Anchorage, Alaska 99510-0279

| Customer's Order No. | | | Phone No. 277-1557 | | Date 1-04-06 | |
|---|---|---|---|---|---|---|
| **Sold to** Fosler Law Group, Inc. | | | | | | |
| **Address** 737 W. 5th Ave, Ste 205 | | | | | | |
| **City** Anch, AK 99501 | | | | | | |

| Sold By | Cash | C.O.D. | Charge | On Acct. | Mdse. Retd. | Paid Out. |
|---|---|---|---|---|---|---|
| | | | | | | |

| Qty. | Description | | Price | Amount | |
|---|---|---|---|---|---|
| | Rule 81 | | | 350 | 00 |
| | Richard Meadow NA | | | | |
| | Assoc. W/ James E. Fosler | | | | |
| | 9711055 | | | | |
| | Case #3AN-05-14292 | | | | |
| | Check # 0-36240 | | | | |
| | 2006 | | | | |

| All claims and returned goods MUST be accompanied by this bill. | | Tax | | |
|---|---|---|---|---|
| Rec'd. By   Charissa Feltman | | Total | 350 | 00 |

026288          *Thank You!*

Item# G3R
®Executive Greetings, Inc., 1980
Printed in U.S.A.

A
page 19 of 28

**ALASKA BAR ASSOCIATION**
P.O. Box 100279   (907) 272-7469
Anchorage, Alaska 99510-0279

| Customer's Order No. | | Phone No. 272-1557 | | | Date 1-04-06 | |
|---|---|---|---|---|---|---|
| Sold to | Foster Law Group, Inc. | | | | | |
| Address | 737 W. 5th Ave., Ste 205 | | | | | |
| City | Anch, AK 99501 | | | | | |

| Sold By | Cash | C.O.D. | Charge | On Acct. | Mdse. Retd. | Paid Out |
|---|---|---|---|---|---|---|

| Qty. | Description | Price | Amount |
|---|---|---|---|
| | Rule 81 | | 550 00 |
| | Lawrence P. Wilson NA | | |
| | Assoc. W/James E Foster | | |
| | 9711055 | | |
| | Case #3AN-05-14292 | | |
| | Check #0-36 240 | | |
| | 2006 | | |

All claims and returned goods MUST be accompanied by this bill.

| Rec'd. By Chariss afe Hman | Tax | |
|---|---|---|
| | Total | 550 00 |

026290        *Thank You!*

Item# G3R
©Executive Greetings, Inc., 1980
Printed in U.S.A.

A
Pg 20 of 28

## ALASKA BAR ASSOCIATION
P.O. Box 100279   (907) 272-7469
Anchorage, Alaska 99510-0279

| Customer's Order No. | Phone No. 277-1557 | Date 1-04-06 |
|---|---|---|

Sold to: Foster Law Group, Inc.
Address: 737 W. 5th Av, Ste 205
City: Anch, AK 99501

| Sold By | Cash | C.O.D. | Charge | On Acct. | Mdse. Ret'd | Paid Out | |
|---|---|---|---|---|---|---|---|

| Qty. | Description | Price | Amount |
|---|---|---|---|
| | Rule 81 | | 550 | 00 |
| | W. Mark Lanier NA | | |
| | Assoc. w/ James E. Foster | | |
| | 9711055 | | |
| | Case # 3AN-05-14292 | | |
| | Check # 0-36240 | | |
| | 2006 | | |

All claims and returned goods MUST be accompanied by this bill.

| | Tax | |
|---|---|---|
| Rec'd By Charissa Feltman | Total | 550 00 |

Item# G3R
©Executive Greetings, Inc., 1980
Printed in U.S.A.

026289   *Thank You!*

A
21 of 28



# STATE BAR OF TEXAS

**Office of The Chief Disciplinary Counsel**

December 20, 2005

RE:  **Mr. W. Mark Lanier**
      State Bar Number - **11934600**

To Whom it May Concern:

This is to certify that Mr. W. Mark Lanier was licensed to practice law in Texas on May 10, 1985 and is an active member in good standing with the State Bar of Texas.

Good Standing means that the attorney is current on payment of Bar dues and attorney occupation tax; has met Minimum Continuing Legal Education requirements; and is not presently under either administrative or disciplinary suspension.

No disciplinary action involving professional misconduct has been taken against the attorney's law license. This certification expires 30 days from this date, unless sooner revoked or rendered invalid by operation of rule or law.

John A. Neal
Chief Disciplinary Counsel

JN/as



A
22 of 28

P.O. Box 12487, Capitol Station, Austin, Texas 78711, 512-463-1463 or 1-800-204-2222



Supreme Court of Pennsylvania

# CERTIFICATE OF GOOD STANDING

### *Richard Daniel Meadow, Esq.*

DATE OF ADMISSION

*June 15, 1993*

The above named attorney was duly admitted to the bar of the Commonwealth of Pennsylvania, and is now a qualified member in good standing.



**Witness my hand and official seal**
**Dated:  September 13, 2004**

Patricia A. Nicola
Chief Clerk

A

23 of 28



*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

*I, Michael J. Novack, Clerk of the Appellate Division of the Supreme Court of the State of New York, Third Judicial Department, do hereby certify that*

## Richard Daniel Meadow

*having taken and subscribed the Constitutional Oath of Office as prescribed by law, was duly licensed and admitted to practice by this Court as an Attorney and Counselor at Law in all courts of the State of New York on the 30th day of January, 1985, is currently in good standing and is registered with the Administrative Office of the Courts as required by section four hundred sixty-eight-a of the Judiciary Law.*

*In Witness Whereof, I have hereunto set my hand and affixed the Seal of said Court, at the City of Albany, this 15th day of September, 2004.*



*Clerk*

Page 24 of 28



# Supreme Court of New Jersey

# Certificate of Good Standing

This is to certify that **RICHARD D MEADOW**
(No. **034541984** ) was constituted and appointed an Attorney at Law of New Jersey on **December 20, 1984** and, as such, has been admitted to practice before the Supreme Court and all other courts of this State as an Attorney at Law, according to its laws, rules, and customs.

I further certify that as of this date, the above-named is an Attorney at Law in Good Standing. For the purpose of this Certificate, an attorney is in "Good Standing" if the Court's records reflect that the attorney: 1) is current with all assessments imposed as a part of the filing of the annual Attorney Registration Statement, including, but not limited to, all obligations to the New Jersey Lawyers' Fund for Client Protection; 2) is not suspended or disbarred from the practice of law; 3) has not resigned from the Bar of this State; and 4) has not been transferred to Disability Inactive status pursuant to Rule 1:20-12.

Please note that this Certificate does not constitute confirmation of an attorney's satisfaction of the administrative requirements of Rule 1:21-1(a) for eligibility to practice law in this State.



In testimony whereof, I have hereunto set my hand and affixed the Seal of the Supreme Court, at Trenton, this **16TH** day of **September** , 20**04**

Clerk of the Supreme Court



# STATE BAR OF TEXAS

**Office of The Chief Disciplinary Counsel**

December 20, 2005

RE:  **Mr. Lawrence P. Wilson**
State Bar Number - **21704100**

To Whom it May Concern:

This is to certify that Mr. Lawrence P. Wilson was licensed to practice law in Texas on November 06, 1987 and is an active member in good standing with the State Bar of Texas.

Good Standing means that the attorney is current on payment of Bar dues and attorney occupation tax; has met Minimum Continuing Legal Education requirements; and is not presently under either administrative or disciplinary suspension.

No disciplinary action involving professional misconduct has been taken against the attorney's law license. This certification expires 30 days from this date, unless sooner revoked or rendered invalid by operation of rule or law.

John A. Neal
Chief Disciplinary Counsel

JN/as



A
26   28

**P.O. Box 12487, Capitol Station, Austin, Texas 78711, 512-463-1463 or 1-800-204-2222**

W. Mark Lanier (*pro hac vice* application pending)
Richard Meadow (*pro hac vice* application pending)
Lawrence P. Wilson (*pro hac vice* application pending)
The Lanier Law Firm
6810 FM 1960 West
Houston, Texas 77069
Telephone: (713) 659-5200
Fax: (713) 659-2204

James E. Fosler
Fosler Law Group, Inc.
737 West Fifth Ave., Suite 205
Anchorage, Alaska 99501
Telephone: (907) 277-1557
Fax: (907) 277-1657

Attorneys for Plaintiff

## IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

## THIRD JUDICIAL DISTRICT AT ANCHORAGE

| | |
|---|---|
| STATE OF ALASKA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| MERCK & CO., INC., | ) |
| | ) |
| Defendant. | ) |
| | ) Case No: 3AN-05-14292 CI |

JAN 0 4 2006

## ORDER GRANTING MOTION TO APPEAR *PRO HAC VICE*

The Court, having considered plaintiff's motion that W. Mark Lanier, Richard

Meadow, and Lawrence Wilson be permitted to appear *pro hac vice*, and having considered

any opposition,

A
27   28

IT IS ORDERED that the motion is GRANTED.

DATED this _____ day of _____ 2006.

_____
HON. PATRICK J. McKAY
Superior Court Judge

CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was ( )
hand delivered ( ) faxed ( ) mailed on
1/4/06 to:

Merck & Co., Inc.
c/o CT Corporation Systems
801 W. 10th Street, Suite 300
Juneau, AK 99801

_____
James E. Fosler

ORDER GRANTING PLAINTIFF'S MOTION RE PRO HAC VICE
State of Alaska v. Merck & Co., Inc., 3AN-05-14292 CI

Page 2 of 2