UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| | * | |
| In re:  VIOXX | * | MDL No. 1657 |
| Products Liability Litigation | * | |
| | * | |
| This Document Relates to: | * | SECTION L |
| | * | |
| *State of Montana v. Merck & Co., Inc.,* | * | JUDGE ELDON E. FALLON |
| 2:06-CV-04302 | * | MAGISTRATE JUDGE KNOWLES |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * *

## STATE OF MONTANA RENEWED MOTION TO REMAND

Tim Fox
Attorney General
State of Montana

Kelley L. Hubbard, Esquire
Assistant Attorney General
Post Office Box 201401
Helena, Montana 59620-1401
Telephone: 406/444-2026

Scott A. Powell, Esquire
Don McKenna, Esquire
Matthew C. Minner, Esquire
Brian M. Vines, Esquire
Hare, Wynn, Newell and Newton, LLP
2025 3rd Avenue North; Suite 800
Birmingham, Alabama 35203
Telephone: 205/328-5330

William A. Rossbach, Esquire
Rossbach Hart, PC
401 North Washington Street
Missoula, Montana 59807
Telephone: 406/543-5156

## TABLE OF CONTENTS

INTRODUCTION ......................................................................................................... 2

STATEMENT OF THE CASE........................................................................................ 2

STANDARD OF REVIEW ............................................................................................ 3

ARGUMENT .................................................................................................................. 4

    A. No Federal Issues are "Necessary" to the Resolution of the Montana's State-Law Claims5

        1. The FDCA is Not "Necessary" to Montana's State-Law Claims ......................... 7

        2. The Medicaid Statute is Not "Necessary" to Montana's State-Law Claims .......... 8

    B. Merck Cannot Satisfy the Other *Gunn* Factors Based on "Implicated" Issues with the FDCA and Medicaid Statute ......................................................................................... 12

        1. According to Supreme Court Precedent, FDCA Issues Cannot Confer Federal-Question Jurisdiction over Montana's State-Law Claims .................................... 13

        2. *Grable & Sons* and Other Supreme Court Precedent Provide No Support for Federal-Question Jurisdiction based on the Medicaid Statute ............................. 15

    C. District Courts Across the Country Have Rejected Similar Arguments for Federal-Question Jurisdiction ................................................................................................. 16

    D. Montana's Amended Complaint Provides Further Support for Remand........................ 19

CONCLUSION.............................................................................................................. 21

1

The State of Montana ("Montana") files this Renewed Motion to Remand its claim under the Montana Unfair Trade Practices and Consumer Protection Act ("CPA") to the First Judicial Court, Lewis & Clark County. In furtherance thereof, Montana argues as follows:

## INTRODUCTION

Montana's state-law claim is due to be remanded because no federal issue is "necessary" to the claims asserted in its Original or Amended Complaints. Merck's liability in this case depends only on whether its conduct violated Montana law. Furthermore, even if federal issues were somehow "implicated," as Merck argues, these issues would not be substantial enough to confer federal jurisdiction and would upset the balance between state and federal courts. Federal jurisdiction based on allegations of "implied" federal issues would turn Merck's burden for establishing federal jurisdiction on its head.

Based on recent Supreme Court precedent, numerous courts across the country have rejected the argument that sovereign states' claims can be removed to federal court based on allegations of mere "implications" of federal law. Given the hesitance with which courts must consider federal jurisdiction over a sovereign state's claims, this Court should join with the others and reject Merck's attempt to establish federal jurisdiction on such a tenuous basis.

## STATEMENT OF THE CASE

Montana asserted its claims against Merck for violations of Montana law in the Montana First Judicial District Court, Lewis & Clark County. (Ex. A, Complaint of the State of Montana ("Original Complaint") p. 1). In its Original Complaint, Montana brought numerous state-law claims based on Merck's false and misleading conduct related to its promotion of Vioxx in Montana. (*Id.* at p. 15-18). Montana sought, among other things, an order "restoring to that state . . . all monies acquired by Merck by means of its unlawful practices," "restitution" related to

2

Merck's "false representations and over promotion of Vioxx," and an order that "Merck . . . disgorge all unjust profits from the sale of Vioxx." [1]  (*Id.*)   In its Amended Complaint, the Attorney General of Montana, like the Attorney General of Kentucky, seeks only penalties for Merck's conduct that violated the Montana CPA, § 30-14-103, and a permanent injunction against Merck from further acts in violation of this statute. (Ex. B, First Amended Complaint of the State of Montana ("Amended Complaint") at 33).  Montana seeks civil penalties of $10,000 for each separate violation of section 30-14-103. (Ex. B, Amended Complaint at 33).  Montana also seeks attorneys' fees. (*Id.*).  Finally, in deference to the inherent power of the Court, the State also requested all other relief that the Court deems "just, necessary, and appropriate." (*Id.*).

## STANDARD OF REVIEW

As this Court recognized, Merck bears the burden of establishing federal jurisdiction.  *In re Vioxx Products Liability Litigation,* 843 F. Supp. 2d 654, 656 (E.D.La. January 3, 2012). When considering whether a complaint gives rise to federal jurisdiction, courts must "strictly construe removal jurisdiction." *Willy v. Coastal Corp.*, 855 F.2d 1160, 1164 (5th Cir. 1988). In furtherance of this principle, the Fifth Circuit requires "removal statutes [] to be construed strictly against removal and for remand." *Eastus v. Blue Bell Creameries, LP*, 97 F.3d 100, 106 (5th Cir. 1996). The basis for jurisdiction "must affirmatively and distinctly appear and cannot be helped by presumptions or by argumentative inferences drawn from the pleadings." *Norton v. Larney*, 266 U.S. 511, 516 (1925).

Merck must also overcome significant federalism concerns to establish federal jurisdiction in this case brought by a sovereign state.  The Supreme Court has counseled that federal courts should be "reluctant to snatch cases which a State has brought from the courts of

---

[1] Notably, Montana's Amended Complaint, like Kentucky's Complaint, does not seek reimbursement for Medicaid or any other State expenditures, but only penalties and injunctive relief under state law.  (Ex. B, Amended Complaint at 32-33).

that State, unless some clear rule demands it." *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for So. Cal.*, 463 U.S. 1, 22 (1983). As many courts have recognized, removal "raises significant federalism concerns." *In re Vioxx*, 843 F. Supp. 2d at 657 (quoting *Willy*, 855 F.2d at 1164). "Due regard for the rightful independence of state governments . . . requires that [federal courts] scrupulously confine their own jurisdiction to the precise limits which the statute has defined." *Healy v. Ratta*, 292 U.S. 263, 270 (1934). Accordingly, "[d]oubts regarding jurisdiction should be resolved against exercising jurisdiction." *In re Vioxx*, 843 F. Supp. 2d. at 657 (citing *Acuna v. Brown & Root Inc.*, 200 F.3d 335, 339 (5th Cir. 2000)).

## <u>ARGUMENT</u>

Courts across the country have rejected defendants' attempts to remove sovereign states' claims based on defendants' assertions of "implicated" federal issues. Because Merck does not contend "federal law creates [Montana's] cause of action," the only issue for this Court to consider is whether Montana's "right to relief necessarily depends on resolution of a substantial question of federal law." *In re Vioxx*, 843 F. Supp. 2d at 668. The Supreme Court recently distilled its prior case law on this issue into the following four factors: a federal issue must be "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress" to support federal-question jurisdiction.[2] *Gunn v. Minton*, 133 S. Ct. 1059, 1065 (Jan. 3, 2012).

Under this precedent, Merck cannot satisfy its burden based on allegations that Montana's complaint "implicate[s]" the Food, Drug & Cosmetic Act ("FDCA") and "federal Medicaid law."(Ex. C, Notice of Removal ¶ 9). As explained below, decisions from the Supreme Court, including *Grable & Sons Metal Prods. v. Darue Eng'g*, 545 U.S. 308 (2005), the

---

[2] The Fifth Circuit has nearly identical factors for considering when a federal issue is sufficient to justify federal-question jurisdiction. *Singh v. Duane Morris, LLP*, 538 F.3d 334, 338 (5th Cir.2008).

Fifth Circuit, and district courts across the country confirm that Merck cannot satisfy the first, much less all four, of the Supreme Court's requirements.

> **A.      No Federal Issues are "Necessary" to the Resolution of the Montana's State-Law Claims**

Based on Supreme Court and Fifth Circuit precedent, numerous district courts have found that neither the FDCA nor Medicaid laws or regulations are "necessary" to state-law claims like Montana's.   A federal issue is "necessary" only if the Plaintiff's claims, as alleged in the complaint, depend on the resolution of a disputed issue of federal law.   For example, in *Grable & Sons* the plaintiff could succeed only if it prevailed on its proffered interpretation of the federal statute governing the notice required before the IRS seized property.   545 U.S. at 314-15.   In *Grable & Sons*, the Court considered whether a state quiet-title action was subject to federal jurisdiction where the case hinged on whether a delinquent taxpayer was properly served.   The Supreme Court recognized that "[w]hether Grable was given notice within the meaning of the federal statute [was] an essential element of" its state law claim.   *Id.*; *see also*, *In re Vioxx*, 843 F. Supp. 2d at 668 (noting the interpretation of the federal statute in *Grable & Sons* was "dispositive").   Similarly, in *Gunn*, where the Court held that federal-question jurisdiction did not exist over a state legal malpractice claim, the Court found federal law was "necessary" because "to prevail" the plaintiff's case would have "necessarily require[d] application of [federal] patent law to the facts of" the plaintiff's case.[3]   133 S. Ct. at 1065.   In other words, in both *Grable & Sons* and G*unn*, the plaintiffs could prevail on the claims alleged in their complaints only if a federal issue was resolved in their favor.

The Fifth Circuit also recognizes that a federal issue is "necessary" only if the federal issue must be resolved for the plaintiff to succeed on its claim.   In *Howery v. Allstate Insurance*

---

[3] The Court went on to conclude that the federal issue was not "substantial" enough to satisfy the requirements of *Grable & Sons*.  *Gunn*, 133 S. Ct. at 1066-68.

*Company*, the Fifth Circuit held that even an explicit allegation of violations of federal law did not create a "necessary" federal issue where the plaintiff's claim did not depend on the alleged violations of federal law.  243 F.3d at 912, 918 (5th Cir. 2001).  The plaintiff alleged that the defendant's conduct violated "the Federal Trade Commission rules, regulations, and statutes" in support of a claim under Texas law. *Id.* at 915. The Texas law in *Howery*, like the Montana CPA, "forbid[] a wide range of conduct, prohibiting '[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce.'" *Id.* at 918 (quoting Tex. Bus. & Com. Code § 17.46(a)).

The Fifth Circuit rejected the defendant's contention that alleging violations of federal law in support of the state-law claim created federal jurisdiction.  The Court noted that although violations of federal law "could possibly fall within the broad scope of" the Texas law, the federal violations were not "an element of the [state law claim]." *Id.*  Because "no federal right [was] an element of" the plaintiff's claim, "interpretation of a federal right [was] **not necessary**" to the resolution of the state-law claim. *Id.*  (empahsis added).  The Fifth Circuit went on to say that "even if" violations of federal law were an element of the plaintiff's state law claim, "[a]s an alternate theory supporting a single-claim, the federal question [was] **not a necessary** element of the state claim, and thus [did] not create federal question jurisdiction." *Id.* (emphasis added). Because the plaintiff in *Howrey* could succeed on its claim whether or not the federal issues were resolved in his favor, the Fifth Circuit concluded the federal issues were not "necessary."

When this precedent is applied to Montana's claims asserted in Montana's Original Complaint, neither the FDCA nor Medicaid statute are "necessary."  Even more so, Montana's Amended Complaint contains no "necessary" federal issues.

1.   <u>The FDCA is Not "Necessary" to Montana's State-Law Claims</u>

First, Merck does not and cannot provide any support for its assertion that the claim in Montana's Original Complaint are "implicitly premised upon alleged violations" of the FDCA. (Ex. C, Notice of Removal, ¶ 12). Not a single paragraph in Montana's Original Complaint or Amended Complaint alleges a violation of the FDCA. Further, none of the Montana state-law claims require FDCA violations. The only issue "necessary to resolution" of the Original and Amended Complaint's claims is whether Merck's conduct violated Montana law.  Every form of relief requested was tied to allegation of Merck's conduct violating Montana law.  Accordingly, on the face of Montana's well-pled Original and Amended Complaints, no federal issue is "necessary to resolution" of Montana's claims, and, therefore, no basis for federal-question jurisdiction exists. *Gunn*, 133 S.Ct. at 1065; *Singh*, 538 F.3d at 338. This fact alone is sufficient to reject Merck's argument that the FDCA creates federal-question jurisdiction.

For the sake of argument, even if the FDCA is somehow "implicated" by Montana's Original or Amended Complaints, Montana's state-law claims do not involve a federal issue "necessary to [its] resolution" as required by *Gunn*, 133 S.Ct. at 1065 and *Singh*, 538 F.3d at 338.  Montana can succeed on the claims alleged in its Original and Amended Complaints without establishing a violation of federal law.  As this Court recognized when addressing a nearly identical argument, the FDCA "issues flagged by Merck may not be necessary to resolution of [a state's] claim." *In re Vioxx*, 843 F. Supp. 2d at 669.  Even if Merck's conduct as alleged in Montana's Original and Amended Complaints also happen to be a "violation of the FDCA rules and regulations," (Notice of Removal ¶¶ 11-14), such a violation is not required to establish a violation of  Montana law. *See Howery*, 243 F.3d at 918.  At most, Merck's attempt

to read violations of the FDCA into Montana's Original and Amended Complaints are an alternate theory that does not give rise to federal jurisdiction. *See Id.*

The Fifth Circuit's analysis in *Howery* effectively forecloses Merck's FDCA argument. If *explicit* allegations of violations of federal law are not "necessary" to a similar state law claim, 243 F.3d at 918, Merck cannot claim that it's alleged "implicated" federal issues are sufficient to establish federal jurisdiction.

2. <u>The Medicaid Statute is Not "Necessary" to Montana's State-Law Claims</u>

Merck's argument that Medicaid regulations and law somehow create federal jurisdiction is equally unavailing. First, Merck's Medicaid argument must go far beyond the "face of the complaint" to "implicate" this federal issue. *See In re Vioxx*, 843 F. Supp. 2d at 657. Merck cannot point to a single reference to Medicaid in Montana's Original and Amended Complaints. Merck notes that federal law governs what drugs are on states' formularies and that states, using some federal money, must reimburse pharmaceutical companies for purchases except for in certain situations, (Ex. C, Notice of Removal at ¶¶ 15-18), but never explains how these non-controversial facts are federal issues "necessary" to Montana's claims. Merck mentions the "regulatory framework" and baldly asserts that Montana's claims for relief related to expenditures for Vioxx "necessarily turns on substantial questions of federal law," but fails to provide any reasoning or support for this conclusion. (*Id.* at ¶ 21).

Merck cannot base federal jurisdiction on incanted federal issues in the Original or Amended Complaints. As noted above, the basis for federal jurisdiction "must affirmatively and distinctly appear and cannot be helped by presumptions or by argumentative inferences drawn from the pleadings." *Norton*, 266 U.S. at 516. A fair reading of Montana's Original or

8

Amended Complaints do not support Merck's contention that the Medicaid statute is "implicated."

Even if the Medicaid statute were somehow "implicated," it is not a federal issue "necessary" to the resolution of Montana's claim.  Based on Montana's Original Complaint, it could  obtain relief related to Montana's expenditures on Vioxx without any interpretation of the Medicaid statute.  Certainly, Montana can obtain the penalities and injunctive relief in its Amended Complaint without reference to the Medicaid statute.  At most, whatever allegations Merck claims are related to Medicaid "merely served to describe types of conduct that violated [Montana law]," these allegations do not create a federal issue "necessary" to Montana's claim. *Howery*, 243 F.3d at 918.  Even assuming arguendo that Montana claimed violations of the Medicaid statute (which it does not), those allegations would be "an alternate theory supporting a single-claim" and would be insufficient to confer federal-question jurisdiction.  *Id.*  "[T]he federal question [would] not [be] a necessary element of the state claim, and thus [would] not create federal question jurisdiction." *Id*

Furthermore, numerous district courts have considered this exact issue and held that the Medicaid statute is not "necessary" even when a state specifically seeks damages related to expenditures for drugs because those allegations simply support a state-law claim and do not depend on interpretations of federal law. *See infra* 16-19.   For example, in *Mississippi ex rel Hood v. Astrazeneca*, the court rejected the defendant's contention that a federal issue was present where Mississippi claimed the defendant made false statements "for use in determining rights to a Medicaid benefit."  744 F. Supp. 2d 590, 594, 601 (N.D. Miss. 2010).  The defendant removed Mississippi's complaint on a theory of federal-question jurisdiction arguing that issues related to the FDCA and the Medicaid statute were implied in the complaint. *Id.* at 599.

Describing as "gestalt" the notion that a federal issue was present simply because "Medicaid is largely a complex federal program," the Court recognized that the "defendants' liability will depend upon its breach of duties as defined and created by state law." *Id.* Federal jurisdiction was not present because Mississippi law, not federal law, was "essential" to the resolution of Mississippi's claim. *Id.* (citing *Grable & Sons*, 545 U.S. at 315).

In *Louisiana ex rel Caldwell v. Bristol Myers-Squibb*, the court affirmed a Magistrate Judge's lengthy opinion rejecting arguments nearly identical to Merck's in this case. 2012 WL 3866493, at *3 (E.D. La. Sept. 4, 2012). After reviewing the Supreme Court's decisions in *Empire Healthchoice Assurance Inc. v. McVeigh,* 547 U.S. 677 (2006), and *Grable & Sons*, the Magistrate concluded that federal Medicaid law was not "necessary" to the state's claims for damages for monies spent in the Louisiana Medicaid program for Plavix. *Louisiana ex rel Caldwell v. Bristol Myers-Squibb*, 2012 WL 3862454, at *9 (E.D. La. June 12, 2012). The court reasoned that, if the defendant argued that Louisiana was not entitled to damages because of the federal Medicaid law, the issue was "at best, a defense that cannot be relied upon as a basis for finding federal-question jurisdiction over this action." *Id.* at *10.

In another opinion that Judge Weinstein described as "excellent," *New Mexico v. Eli Lilly*, 2009 WL 691942, at *3 (E.D.N.Y. 2009), the District of New Mexico concluded that New Mexico's claims for damages related to the defendants' promotion of Risperdal did not create a "necessary" federal issue, *New Mexico ex rel. King v. Ortho-McNeil-Janssen*, No. Civ. 08-0779 (Dist. N.M. Jan. 26, 2009) (attached hereto as Ex. D). Although the defendants' communications related to Medicaid were relevant to New Mexico's claim, "the state [was] not attempting to claim that it ha[d] no legal obligation under the federal Medicaid statute to pay for" prescriptions, but that the defendants "fraudulently induced physicians to issue those

prescriptions." *New Mexico,* slip op. at 3-4.  The court  reasoned that "[c]laiming the Defendants wrongly triggered the State's obligation to pay for [a drug] is completely different than claiming that the State should not have such an obligation as a matter of law, despite the requirements of the federal Medicaid statute."  *Id.* at 4.  Rather than require "any construction of the Medicaid statute," New Mexico's claim "merely required an examination of the facts surrounding Defendants' conduct to determine whether the State's claims, brought under state law, have merit."  *Id.*

The exact same reasoning from these cases applies to Montana's Original Complaint. Montana sought several forms of relief for expenditures for Vioxx that, under Montana law, Montana is entitled to because of Merck's conduct. Merck may argue that the Medicaid statute provides it some defense to relief sought in Montana's Original Complaint, but the Medicaid statute is irrelevant to Montana's affirmative case in its Original Complaint.[4]

Although this Court has not addressed whether a sovereign state's claim for relief related to expenditures on a drug is sufficient to establish federal jurisdiction, *In re Vioxx*, 843 F. Supp. 2d at 669 n. 12, when Montana's Original Complaint is viewed in light of the Supreme Court and Fifth Circuit precedent discussed above, it is apparent that Merck cannot establish federal jurisdiction.  At the end of the day, neither the FDCA nor the Medicaid statute are "necessary" to Montana's claim in its Original or Amended Complaints and, therefore, cannot support Merck's burden for establishing federal jurisdiction.  Merck clearly fails to meet the first requirement of *Gunn* and *Singh* and the case is due to be remanded.  Moreover, as will be discussed below, Merck's reliance on "implications" of the FDCA and Medicaid statute cannot satisfy the other

---

[4] Federal defenses are insufficient to establish federal-question jurisdiction.  *See e.g.*, *Elam v. Kansas City Southern Ry. Co.*, 635 F.3d 796, 803 (5th Cir. 2011).

requirements of Supreme Court and Fifth Circuit precedent.   The failure to satisfy these additional requirements of federal jurisdiction provides further ground for remand.

### B.   Merck Cannot Satisfy the Other *Gunn* Factors Based on "Implicated" Issues with the FDCA and Medicaid Statute

Even if the FDCA or Medicaid statute were "necessary" to the claims in Montana's Original or Amended Complaint, these alleged issues would not give rise to federal jurisdiction because they would not be "substantial" enough to justify federal jurisdiction and would greatly alter the "federal-state balance approved by Congress."  *Gunn*, 133 S. Ct. at 1065; *Singh*, 538 F.3d at 338.  Since *Grable & Sons*, the Supreme Court has confirmed that federal-question jurisdiction is a "slim category" of jurisdiction that Merck cannot fit Montana's claims into.  *See Empire*, 547 U.S. at 701.

In a subsequent opinion, the Court clarified that *Grable & Sons* created a "special and small category" of federal-question jurisdiction of state-law claims that exists when a federal issue is "both dispositive of the case and would be controlling in numerous other cases." *Id.* at 699-700.  In *Grable & Sons*, the federal issue at stake was "substantial" because it governed the federal government's ability to "satisfy its claims from the property of delinquent" taxpayers. 545 U.S. at 315.  After all, the federal government "has a strong interest in the 'prompt and certain collection of delinquent taxes.'"  *Id.* (quoting *United States v. Rodgers*, 461 U.S. 677, 709 (1983)).  The Court went on to conclude that federal jurisdiction would have a "microscopic effect on the federal-state division of labor" because "it will be the rare state title case" that raises a federal issue. 545 U.S. at 315.

*Empire* confirms jurisdiction under *Grable & Sons* is not appropriate when federal law is simply implicated by assertions of the defendant and the state law at issue depends heavily on factual issues. 547 U.S. at 699-700.  In *Empire*, the Supreme Court refused to extend jurisdiction

over a state-law claim where a federal issue was merely tangential and fact-bound. *Id.* at 700-01. The plaintiff, a provider of health benefits for federal employees, sued in federal court on a subrogation interest it had in a state-law tort settlement. *Id.* at 687-88. The United States argued that federal-question jurisdiction was appropriate under *Grable & Sons* because of the broad statutory and regulatory scheme that governed the insurance of federal employees. *Id.* at 682-87, 699.  The Supreme Court quickly rejected the comparison. *Id.* at 699-700.

The Court held that the facts of *Empire* were "poles apart from *Grable*." *Empire*, 547 U.S. at 700.  Unlike *Grable & Sons*, the issue in *Empire* arose from a "personal injury action launched in state court" rather than "the action of [a] federal department." *Id.*  In addition, the issue in *Grable* was a "pure issue of law" that was "both dispositive of the case and would be controlling in numerous other cases." *Id.* "In contrast," the state-law claim at issue in *Empire*, was "fact-bound and situation-specific." *Id.*

Finally, the Court in *Gunn* reaffirmed *Empire's* narrow reading of *Grable & Sons*.  133 S. Ct. at 1064-65 (noting that *Grable & Sons* created a "special and small category" of arising-under jurisdiction).  There, the Supreme Court rejected the argument that issues of federal patent law in a state legal-malpractice case were substantial enough to confer federal jurisdiction. *Id.* When Merck's argument is measured against Supreme Court precedent, it is clear that Merck "cannot [] squeeze [Montana's case] into the slim category *Grable* [*& Sons*] exemplifies." *Empire*, 547 U.S. at 701.

    1.    <u>According to Supreme Court Precedent, FDCA Issues Cannot Confer</u>
                  <u>Federal-Question Jurisdiction over Montana's State-Law Claims</u>

Application of this precedent confirms any possible FDCA issue would still not be "substantial" enough to confer federal-question jurisdiction. *Gunn*, 133 S. Ct. at 1065; *Singh*, 538 F.3d at 338. Contrary to Merck's repeated reliance on *Grable & Sons* in support of federal-

question jurisdiction, (Merck Notice of Removal ¶¶ 10-11), that opinion and others confirm the opposite. As held in *Merrell Dow Pharmaceuticals v. Thompson*, 478 U.S. 804 (1986), and affirmed in *Grable & Sons*, state-law claims that depend on violations of the FDCA are insufficient to confer federal jurisdiction. 478 U.S. at 814; 545 U.S. at 318-19. Even more so, Montana's Original and Amended Complaints that, at most, "implicate[s]" the FDCA, but do not depend on a violation of the FDCA in anyway, are far short of the Supreme Court's requirements for federal-question jurisdiction.

In *Merrell Dow*, the Supreme Court held that a state-law claim that actually depended on violations of the FDCA did not support federal-question jurisdiction. 478 U.S. at 805-06. The defendants argued that, because the plaintiff needed to establish a violation of the FDCA to succeed on his state-law claim, federal jurisdiction was appropriate. *Id.* at 813. The Supreme Court rejected that argument, holding that any federal issues related to violations of the FDCA "as an element of a state cause of action [was] insufficiently 'substantial' to confer federal question jurisdiction." *Id.* at 814.

*Grable & Sons*, relied on by Merck, reaffirmed *Merrell Dow*'s holding regarding the FDCA. 545 U.S. at 318-19. The Court affirmed *Merrell Dow*'s conclusion that Congress did not intend to confer federal jurisdiction over state-law claims "solely because the violation" of the federal statute was an element to the state-law claim. *Id.* at 320 (quoting *Merrell Dow*, 478 U.S. at 811-12). Significant to this conclusion was the Court's recognition of the enormous effect conferring jurisdiction in *Merrell Dow* would have on the balance between federal and state judicial responsibilities. The Court recognized that "if the federal labeling standard without a federal cause of action could get a state claim into federal court, so could any other federal standard without a federal cause of action." *Id.* at 318. "Such a standard would . . . herald[] a

14

potentially enormous shift of traditionally state cases into federal court" and frustrate the policy of federal courts being courts of limited jurisdiction. *Id*. at 319. Quite simply, *Merrell Dow* as affirmed in *Grable & Sons*, applies in spades to Montana's claim where a violation of the FDCA is not even an element of liability of Montana's state-law claims.

        2.     <u>*Grable & Sons* and Other Supreme Court Precedent Provide No Support</u>
                  <u>for Federal-Question Jurisdiction based on the Medicaid Statute</u>

*Grable & Sons*, *Empire*, and *Gunn* also confirm that Merck's allegations of federal issues related to the Medicaid statute are insufficient to support federal jurisdiction. Although Merck's Notice of Removal is vague regarding what supposed issues from the Medicaid statute it claims create federal jurisdiction, it is clear no possible issue would satisfy the Supreme Court's requirement for a "substantial" issue.

Unlike Merck's allegation of an "implicated" Medicaid issue, the federal issue in *Grable & Sons* was "an essential element" of the state-law claim and "appear[ed] to be the only . . . issue contested in the case." *Empire*, 547 U.S. at 700. Furthermore, Merck cannot explain how any Medicaid issue in this case would be an "important issue to the federal system as a whole." *Gunn*, 133 S. Ct. at 1066. Montana's claim in its Original Complaint that Merck misled individuals regarding the safety and efficacy of Vioxx would be "fact-bound and situation-specific." *Empire*, 547 U.S. at 700. Instead of developing binding case-law for the federal system, as was done in *Grable & Sons*, the resolution of any potential federal issues in Montana's case would be tied to the specific facts regarding the promotion of Vioxx in Montana.

In *Mississippi*, the Court also addressed this issue and concluded that the FDCA and Medicaid issues were not substantial enough to justify federal jurisdiction. The Court understood that the issues in the case would "be fact-bound and situation-specific *under Mississippi law*." *Mississippi*, 744 F. Supp. 2d at 601 (emphasis in original). The Court

concluded that Mississippi's claim more closely resembled the claims at issue in *Empire* as compared to those in *Grable & Sons*. *Id*. at 601.  The Court went on to note that "[e]ven if Defendants could demonstrate the existence of a federal question," federal jurisdiction in the instant case would not be "consistent with congressional judgment about the sound division of labor between state and federal courts." *Id*.; *see also*, *Caldwell v. Bristol Myers Squibb Sonofi Pharms. Holding P'ship*, 2012 WL 3862454 (W.D. La. 2012); *Caldwell*, 2012 WL 3862454 at * 11 (concluding even if there were issues related to Medicaid, federal jurisdiction would disturb the balance of federal and state courts).  If any state claim that "implicat[ed] provisions of the Federal Medicaid Act and its accompanying regulations" created federal jurisdiction, it could "'attract [] a horde of original filings and removal cases raising other state claims with embedded federal issues.'"  *Mississippi*, 744 F. Supp. 2d at 601 (quoting *Grable & Sons*, 545 U.S. at 318).

The same reasoning applies to Montana's state-law claims.  Montana's state-law claims will depend heavily on specific facts related to the promotion of Vioxx in Montana.  In addition, permitting federal jurisdiction where the FDCA and Medicaid statutes are simply implicated would permit almost every case involving a pharmaceutical product to be removed to federal court based on federal-question jurisdiction.  This would represent a significant shift in the division of labor between state and federal courts.

### C.      District Courts Across the Country Have Rejected Similar Arguments for Federal-Question Jurisdiction

The lack of federal-question jurisdiction over Montana's claim is confirmed by opinions across the country. Pharmaceutical companies' attempts to remove complaints filed by sovereign states based on alleged implications of the federal Medicaid statute and the FDCA have been routinely rejected. *See, e.g., Mississippi*, 744 F. Supp. 2d at 601-02 (remanding Medicaid fraud, consumer protection, and common law tort claims related to the sale of Seroquel); *Montana ex*

*rel McGrath v. Janssen, LP*, No 6:09-CV-0058-CLL (D. Mt. Nov. 30, 2009) (remanding claims similar to the Original Complaint to state court); *Hood v. Ortho-McNeil-Janssen Pharms., Inc.*, 2009 WL 561575 (N.D. Miss. 2009) (remanding Medicaid fraud and consumer protection claims and rejecting arguments from *In re Zyprexa* that the Medicaid Act or FDCA conferred federal jurisdiction); *New Mexico ex rel. King v. Ortho-McNeil-Janssen*, No. Civ. 08-0779 (Remand Order, Jan. 26, 2009) (remanding state's Medicaid fraud and misrepresentation claims related to Risperdal and rejecting argument that Medicaid statute or FDCA created federal jurisdiction); *Utah v. Eli Lilly & Co.*, 509 F. Supp. 2d 1016, 1022-25 (D. Utah 2007) (relying on *Grable & Sons*, *Merrell Dow*, and *Empire* to remand state's Medicaid fraud claims related to *Zyprexa*); *South Carolina v. Eli Lilly & Co.*, 2007 WL 2261693, at *3 (D.S.C. 2007) (remanding state's Medicaid fraud and consumer protection claims related to *Zyprexa*); *Pennsylvania v. Eli Lilly & Co.*, 511 F. Supp. 2d 576, 584-86 (E.D. Pa. 2007) (relying on *Grable & Sons*, *Merrell Dow*, and *Empire* to remand state Medicaid fraud claims related to *Zyprexa*); *Alaska v. Eli Lilly & Co.*, 2006 WL 2168831, *2-3 (D. Ak. 2006) (remanding state's claims for Medicaid reimbursement, misrepresentations, and restitution related to *Zyprexa*).

The only similar case cited by Merck in support of federal-question jurisdiction under *Grable & Sons* is Judge Weinstein's first opinion in the Zyprexa MDL.[5] (Ex. C, Notice of Removal ¶ 9). As this Court noted, "there is a split in authority regarding whether cases with allegations such as those in *Zyprexa* should be remanded." *In re Vioxx*, 843 F. Supp. 2d. at 669 n.12. In light of the Supreme Court precedent and Fifth Circuit precedent discussed above, this

---

[5] Merck also cites to *County of Santa Clara v. Astra USA, Inc.*, 401 F. Supp. 2d 1022 (N.D. Cal. 2005), but that case involved a completely different cause of action and factual scenario. (Ex. C, Notice of Removal ¶ 23). The County of Santa Clara claimed that the defendant charged prices for drugs that were in excess of the amounts they were allowed to charge under federal law. *Santa Clara*, 401 F. Supp. 2d at 1026. The only way to determine whether the defendant was liable was by interpreting the federal statute. As discussed throughout this brief, Merck's liability depends only on state law.

Court should conclude, as every court to consider the issue except for Judge Weinstein has concluded, that such claims do not create federal jurisdiction.

As an initial matter, Montana's claim is distinguishable from the claims at issue in Judge Weinstein's Zyprexa opinions.  Unlike all of those cases, Montana's claims do not involve allegations of off-label use nor does Montana's Original or Amended Complaint reference Medicaid which was central to Judge Weinstein's reasoning. *New Mexico ex rel. Madrid v. Eli Lilly & Co.*, 2009 WL 691942, at *3 (E.D.N.Y. 2009); *Montana ex rel. McGrath v. Eli Lilly & Co.*, 2008 WL 398378, at *1 (E.D.N.Y. 2008); *West Virginia ex rel. McGraw v. Eli Lilly & Co.*, 476 F. Supp. 2d 230, 233 (E.D.N.Y. 2007); *Louisiana ex rel. Foti v. Eli Lilly & Co.*, 375 F. Supp. 2d 170, 172-73 (E.D.N.Y. 2005) (hereinafter, "*Zyprexa* cases").  In addition, Montana's Amended Complaint no longer seeks relief related to purchases of Vioxx in Montana.  Although that relief did not create federal jurisdiction, its removal through the Amended Complaint further distinguishes this case from the *Zyprexa* cases.

In addition, in the light of the Supreme Court's decisions in *Empire* and *Gunn* and the Fifth Circuit's decision in *Howrey* and *Singh*, the reasoning of the *Zyprexa* cases is not persuasive.  In the *Zyprexa* cases, the Court quickly concluded that "the question of the state's obligation to reimburse its insureds for Zyprexa . . . is essential to the state's theory of damages and presents a substantial and disputed federal issue under *Grable*."  *West Virginia*, 476 F. Supp. 2d at 233; *see also*, *Louisiana*, 375 F. Supp. 2d at 172; *Montana*, 2008 WL 398378 at *4; *New Mexico*, 2009 WL 691942 at *3.   The court provided little explanation of how claims for damages related to Medicaid expenditures raised these issues or how these issues were "necessary" and "substantial" under *Grable & Sons*. The court did not consider whether the Medicaid statute would only be applicable as a defense.  The court also provided no analysis of

how exercising federal jurisdiction in these cases would affect the balance between federal and state courts as required by *Grable & Sons*.

Finally, the *Zyprexa* cases did not have the instruction of the Fifth Circuit's opinions in *Howrey* or *Singh*, nor was the court provided with the Supreme Court's clarification of the *Grable & Sons'* holding in *Gunn*. It is unlikely, given the clarity of the Fifth Circuit's law on this issue and recent Supreme Court precedent, that the *Zyprexa* cases would have reached the same conclusions today in the Fifth Circuit.

### D.   Montana's Amended Complaint Provides Further Support for Remand

Neither Montana's Original Complaint nor its Amended Complaint make any reference to Medicaid and the Amended Complaint does not seek relief for any state expenditures for Vioxx. Nevertheless, Merck argues that somehow Medicaid was implicated by the Original Complaint and that the requested relief created a "federal" claim. However, even that implication is now moot as that alleged "federal" claim does not exist in the Amended Complaint. Montana amended its complaint to "narrow the scope of this action. (Ex. E, Motion to Amend Complaint at 2). On June 13, 2012, this Court granted Montana's Motion to Amend and Merck filed its Amended Answer on June 22, 2012. As noted above, the Amended Complaint seeks only civil penalties and injunctive relief. Accordingly, any argument Merck may make that the Medicaid statute is somehow "implicated" in the Amended Complaint is even weaker then Merck's argument related to the Original Complaint.

This Court should consider an amended complaint when determining whether federal jurisdiction is appropriate. *See e.g.*, *Enochs v. Lampass County*, 641 F.3d 155, 159 (5th Cir. 2011). This Court may decline to exercise jurisdiction over state-law claims where the state-law claim "(1) raises a novel of complex issue of State law, (2) the claim substantially predominates

19

[over the federal claims], (3) the district court dismissed all of the [federal claim], or (4) in exceptional circumstances."  28 U.S.C. § 1367(c).  These factors weigh heavily in favor of this Court declining to exercise jurisdiction even if it concluded that Montana's request for relief in the Original Complaint created federal-question jurisdiction.

In *Enochs*, the Fifth Circuit held that a plaintiff's claim was due to be remanded after an amended complaint "delete[d] all federal claims."  641 F.3d at 157, 162.  The Fifth Circuit analyzed the factors from section 1367(c) as well as the common law factors of "judicial economy, convenience, fairness, and comity" to conclude that the district court should have remanded the case back to state court.  *Id.* at 163.  When these factors are applied to Montana's claim, it is clear that even if this Court concluded that federal-question jurisdiction was appropriate under the Original Complaint, the Amended Complaint should be remanded to state court.

First, this case may present unique questions related to Montana law.  28 U.S.C. § 1367(c)(1).  For example, a brief review of Merck's Motion for Judgment on the Pleadings reveals that it raises numerous issues related to the interpretation of Montana Law.  Second, the Montana state law claims "predominate over the non-existent federal claims."  *Enochs*, 641 F.3d at 159.  Finally, the amended complaint "dismissed" what claims for relief supported Merck's argument for federal-question jurisdiction.  *Id.*  Because there is only a state-law claim in the Amended Complaint, even if the Original Complaint created federal jurisdiction, this Court is soundly within its discretion to decline jurisdiction pursuant to section 1367(c).

In addition, the relevant common law factors support remand.  Although this Court has expended immeasurable judicial resources in the Vioxx litigation, remand to state court should not place a heavy burden on the state court because all of the common discovery has been

completed.  It would not be "inconvenient" to remand the case to state court as all that is left is state-specific expert discovery and the trial.  "Third, it is certainly fair to have had the purely [Montana] state law claims heard in [Montana] state court, and there is nothing to indicate that either party would [be] prejudiced by a remand to [Montana] state court."  *Enochs*, 641 F.3d at 160.

Finally, "comity" weighs heavily in favor of remand.  "[C]omity demands that the 'important interests of federalism and comity' be respected by federal courts, which are courts of limited jurisdiction and 'not as well equipped for determinations of state law as are state courts.'"  *Id.* (quoting *Parker & Parsley Petroleum Co. v. Dresser Industries*, 972 F.2d 580, 588-89 (5th Cir. 1992)).  In addition, because this case involves claims of a sovereign state, issues of federalism and comity are heightened.  *See e.g.*, *Franchise Tax*, 463 U.S. at 22.

## CONCLUSION

For the reasons stated above, Montana's Original Complaint does not give rise to federal-question jurisdiction.  This Court has already determined that, in a similar complaint, issues related to the FDCA are insufficient to establish federal-question jurisdiction.  *In re Vioxx*, 843 F. Supp. 2d at 668-70.  Montana's requests for relief in its Original Complaint are insufficient to establish federal-question jurisdiction.  *Supra* 8-12.  However, even if the Original Complaint's requests for relief were sufficient to establish federal jurisdiction, the Amended Complaint does not contain those alleged issues and should be remanded.

At its best, Merck's argument is that federal question jurisdiction exists because facts alleged by Montana could possibly support a violation of the FDCA and the Medicaid statute might be relevant as a potential defense. Quite simply, this attenuated argument is insufficient to carry Merck's burden.  It takes much more than "a federal element 'to open the 'arising under'

door.'" *Empire*, 547 U.S. at 701 (quoting *Grable & Sons*, 545 U.S. at 313). Cases from the Supreme Court, Fifth Circuit, and district courts across the country confirm no federal-question jurisdiction exists in this case. Furthermore, the reasoning of the *Zyprexa* decisions have little application in the Fifth Circuit. Try as it might, Merck "cannot [] squeeze [Montana's case] into the slim category *Grable* [*& Sons*] exemplifies." *Id.*

If Merck's argument for removal is successful, it will herald an unprecedented expansion of federal jurisdiction over sovereign states' claims. Such a result would hardly be consistent with the important federalism concerns that govern a federal court's exercise of jurisdiction over sovereign states' claims. This brief raised numerous doubts regarding Merck's argument for federal jurisdiction and those doubts "should be resolved against exercising jurisdiction." *In re Vioxx*, 843 F. Supp. 2d at 657 (citing *Acuna v. Brown & Roof, Inc.*, 200 F.3d 335, 339 (5th Cir. 2000)).

Based on the forgoing arguments, Montana respectfully requests this Court grant its motion to remand its claim back to the First Judicial District Court of Lewis and Clark County.

Respectfully submitted this 3rd day of September, 2013.


/s/ Brian M. Vines
Brian M. Vines
Attorney for Plaintiff


OF COUNSEL:

Kelley L. Hubbard, Esquire
Assistant Attorney General
Post Office Box 201401
Helena, Montana 59620-1401
Telephone: 406/444-2026

Scott A. Powell, Esquire
Don McKenna, Esquire

Matthew C. Minner, Esquire
Brian M. Vines, Esquire
Hare, Wynn, Newell and Newton, LLP
2025 3rd Avenue North; Suite 800
Birmingham, Alabama 35203
Telephone: 205/328-5330

William A. Rossbach, Esquire
Rossbach Hart, PC
401 North Washington Street
Missoula, Montana 59807
Telephone: 406/543-5156

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Plaintiff's, State of Montana, Renewed Motion to Remand has been served upon Liaison Counsel, Russ Herman, Phillip Wittmann and Ann Oldfather, by U.S. mail and e-mail or by hand delivery and e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8(C), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accordance with the procedures established in MDL 1657, on this 3rd day of September, 2013.

/s/ Brian M. Vines
Brian M. Vines
ASB-4419-R77V
Attorney for Plaintiff
Hare, Wynn, Newell & Newton, LLP
2025 3rd Avenue North; Suite 800
Birmingham, Alabama  35203
Telephone: 205/328-5330
Facsimile: 205/324-2165
bvines@hwnn.com