

**COUNSEL FINANCIAL SERVICES, L.L.C., Appellant, v. DAVID McQUADE LEIBOWITZ AND DAVID McQUADE LEIBOWITZ, P.C., Appellees.**

**NUMBER 13-12-00103-CV**

**COURT OF APPEALS OF TEXAS, THIRTEENTH DISTRICT, CORPUS CHRISTI - EDINBURG**

***2013 Tex. App. LEXIS 9252***

**July 25, 2013, Delivered**
**July 25, 2013, Filed**

**SUBSEQUENT HISTORY:** Writ of mandamus granted *In re Counsel Fin. Servs., 2013 Tex. App. LEXIS 9255 (Tex. App. Corpus Christi, July 25, 2013)*

**PRIOR HISTORY: [*1]**
On appeal from the 370th District Court of Hidalgo County, Texas.
*Counsel Fin. Servs., L.L.C. v. Leibowitz, 2011 Tex. App. LEXIS 5079 (Tex. App. Corpus Christi, July 1, 2011)*

**COUNSEL:** FOR APPELLANT: Ellen B. Mitchell, Melanie L. Fry, Cox Smith Matthews Incorporated, San Antonio, TX; Elliott S. Cappuccio, Lance H. Beshara, Pulman, Cappuccio, Pullen, San Antonio, TX.

FOR APPELLEE: Peter J. Stanton, Attorney at Law, San Antonio, TX; Deborah G. Hankinson, Ryan Clinton, Rick Thompson, Carl Cecere, Hankinson LLP, Dallas, TX; Fernando G. Mancias, Law Office of Fernando G. Mancias, Edinburg, TX.

**JUDGES:** Before Chief Justice Valdez and Justices Benavides and Perkes. Memorandum Opinion by Justice Benavides.

**OPINION BY:** GINA M. BENAVIDES

**OPINION**

**MEMORANDUM OPINION**

**Memorandum Opinion by Justice Benavides**

Appellant, Counsel Financial Services, L.L.C. ("Counsel Financial"), appeals two orders granting summary judgment in favor of appellees David McQuade Leibowitz, P.C. and David McQuade Leibowitz, individually, and further appeals the denial of its motion to dismiss on the basis of forum selection clauses in contracts between the parties. The summary judgments granted relief in favor of appellees on their usury claims against Counsel Financial and also declared a security agreement unenforceable. We reverse and remand, in part, and dismiss, in part.

## I. BACKGROUND

The parties to this case have engaged in extensive litigation and the factual underpinnings of their relationship have been explained in several different opinions by this Court and others.[1] In short, Counsel Financial loaned the law firm of David McQuade Leibowitz, P.C. more than five million dollars. The loan was secured by David McQuade Leibowitz, P.C. and David McQuade Leibowitz individually **[*2]** (collectively "Leibowitz"). The promissory note evidencing the loan was secured by an agreement and guaranty executed by Leibowitz in his individual capacity. The note and security agreement were modified several times by the agreement of the parties over the course of several years. These documents provided Counsel Financial with a security interest in Leibowitz's legal fees, accounts, and intangibles in the event of a default under the loan.

1 *See generally Counsel Fin. Servs., L.L.C. v. Leibowitz, No. 13-10-00693-CV, 2011 Tex. App. LEXIS 5078, at *1* (Tex. App.--Corpus Christi

July 1, 2011, pet. denied) (mem. op.) (dismissing Counsel Financial's appeal of the denial of its motion to transfer venue for want of jurisdiction); *Counsel Fin. Servs., L.L.C. v. Leibowitz, No. 13-10-00200-CV, 2011 Tex. App. LEXIS 5079, at *1* (Tex. App.--Corpus Christi June 30, 2011, pet. denied) (mem. op.) (reversing and remanding a temporary injunction which prevented Counsel Financial from instituting legal proceedings to enforce a security agreement and collecting on a judgment in its favor); *In re Counsel Fin. Servs., L.L.C., No. 13-10-00157-CV, 2010 Tex. App. LEXIS 3112, at **2-3* (Tex. App.--Corpus Christi **[*3]** Apr. 27, 2010, orig. proceeding) (denying mandamus as premature because the trial court had not ruled on Counsel Financial's motion to transfer venue); *Counsel Financial Services, L.L.C., v. Leibowitz, P.C., 311 S.W.3d 45 (Tex. App.--San Antonio 2010, pet. denied)* (rendering judgment that a New York judgment rendered against Leibowitz and in favor of Counsel Financial is entitled to full faith and credit and is fully enforceable in Texas); *In re Counsel Fin. Servs., L.L.C., No. 04-09-00081-CV, 2009 Tex. App. LEXIS 8456, at **2-3* (Tex. App.--San Antonio Nov. 4, 2009, orig. proceeding) (per curiam) (mem. op.) (dismissing mandamus regarding relief from New York judgment on grounds that Counsel Financial had an adequate remedy by appeal); *see also Counsel Fin. Servs., LLC v. Leibowitz, No. 09-CV-1025S, 2012 U.S. Dist. LEXIS 42215 (W.D.N.Y. Mar. 26, 2012)* (denying Counsel Financial's motion for a preliminary injunction and Leibowitz's motion to dismiss or abate); *Counsel Fin. Servs., LLC v. David McQuade Leibowitz, P.C., 81 A.D.3d 1421, 916 N.Y.S.2d 879, 2011 N.Y. App. Div. LEXIS 1157, 2011 NY Slip Op 1172 (N.Y. App. Div. 4th Dep't 2011)* (affirming an order denying Leibowitz's motion seeking **[*4]** to vacate a default order and judgment entered against them because they failed to establish a reasonable excuse for their default and a meritorious defense to the action); *Counsel Fin. Servs., LLC v. Leibowitz, No. 09-CV-1025S, 2010 U.S. Dist. LEXIS 25532 (W.D.N.Y. Mar. 18, 2010)* (denying Counsel Financial's motion for a temporary restraining order); *Counsel Fin. Servs., LLC v. David McQuade Leibowitz, P.C., 67 A.D.3d 1483, 889 N.Y.S.2d 811, 2009 N.Y. App. Div. LEXIS 8506 (N.Y. App. Div. 4th Dep't, 2009)* (affirming a default order and judgment in favor of Counsel Financial and ordering Leibowitz to pay a specified amount due on a promissory note executed by Leibowitz, P.C. and personally guaranteed by defendant). Counsel Financial has one additional original proceeding pending in this Court, which is being disposed of concomitantly with this appeal. *See In re Counsel Fin. Servs., No. 13-12-00151-CV, 2013 Tex. App. LEXIS 9255 (Tex. App.--Corpus Christi July 25, 2013, orig. proceeding)* (mem. op.).

Leibowitz failed to make payments due under the loan, and Counsel Financial obtained a default summary judgment against Leibowitz on the note and security agreement in the New York state **[*5]** court system. Leibowitz unsuccessfully appealed that judgment through the New York appellate courts.

Counsel Financial domesticated the New York judgment in Texas under the Uniform Enforcement of Foreign Judgments Act. *See* TEX. CIV. PRAC. & REM. CODE ANN. *§§ 35.001-.008* (West 2008 & Supp. 2011). On appeal, the San Antonio Court of Appeals held that the New York judgment is entitled to full faith and credit and is fully enforceable in Texas.

In separate trial court proceedings, which underlie this appeal, Leibowitz represented Maria Alma Anzaldua in a personal injury lawsuit against Kmart Corporation ("Kmart") in the 370th District Court of Hidalgo County. Upon learning that the parties had reached a settlement in the personal injury lawsuit, Counsel Financial filed a plea in intervention in that suit on grounds that Leibowitz had refused to pay the New York debt and judgment. In this intervention, Counsel Financial sought "an order from the Court directing all Parties to pay directly to [Counsel Financial] all funds (up to the amount of CFS's lien) to which Leibowitz and the Law Firm may be entitled to as a result of this case and the settlement." Counsel Financial expressly stated that **[*6]** it "[did] not seek to disturb the proposed settlement agreement in the Lawsuit" and likewise "[did] not seek to disturb the rights of Plaintiff to receive the portion of the settlement that is rightfully hers, or the release of Defendant from the Lawsuit."

On October 9, 2009, in response to Counsel Financial's intervention, Leibowitz also intervened in the Hidalgo County suit and asserted claims for affirmative relief against Counsel Financial, including claims for declaratory and temporary injunctive relief and damage claims for tortious interference and business disparagement. By his first amended pleading, Leibowitz sought an anti-suit injunction and an anti-execution injunction attempting to restrain Counsel Financial from enforcing either the security agreement or the domesticated judgment. According to Leibowitz's pleadings, Counsel Financial claimed that it was entitled to his portion of the settlement funds based either on "a foreign default judgment which is not now enforceable under Texas law, or a

Security Agreement which [Counsel Financial] has itself breached."

Counsel Financial filed, inter alia, motions to transfer venue, a plea to the jurisdiction, and a motion to dismiss **[*7]** based on forum selection clauses in the loan documents. Leibowitz filed two partial motions for summary judgment on usury claims. On January 20, 2012, the trial court granted both motions and severed them into a separate cause number. That same day, the trial court denied Counsel Financial's motion to dismiss based on the forum selection clauses in its documents. Counsel Financial thus brought this appeal and subsequently filed a separate petition for writ of mandamus on the forum selection clause. We first address the motions for summary judgment.

### II. STANDARD OF REVIEW FOR SUMMARY JUDGMENT

We review a grant of summary judgment de novo. *Exxon Corp. v. Emerald Oil & Gas Co., L.C., 331 S.W.3d 419, 422 (Tex. 2010)*. When the trial court does not specify the grounds for its ruling, a summary judgment will be affirmed if any of the grounds advanced by the motion are meritorious. *FM Props. Operating Co. v. City of Austin, 22 S.W.3d 868, 87273 (Tex. 2000)*. A party moving for traditional summary judgment has the burden to prove that there is no genuine issue of material fact and it is entitled to judgment as a matter of law. *See TEX. R. CIV. P. 166a(c)*; *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding, 289 S.W.3d 844, 848 (Tex. 2009)*. **[*8]** The non-movant has no burden to respond to or present evidence regarding the motion until the movant has carried its burden to conclusively establish the cause of action or defense on which its motion is based. *M.D. Anderson Hosp. & Tumor Inst. v. Willrich, 28 S.W.3d 22, 23 (Tex. 2000)* (per curiam).

### III. FIRST MOTION FOR PARTIAL SUMMARY JUDGMENT ALLEGING USURY UNDER THE TEXAS FINANCE CODE

Counsel Financial's first issue on appeal attacks the trial court's order granting summary judgment on the usury claims against it. Leibowitz filed a motion for partial summary judgment seeking judgment against Counsel Financial on Leibowitz's claims under the Texas Finance Code. According to the motion, the default judgment against Leibowitz was subject to the New York post-judgment interest statute at a rate of 9%. The motion alleged that, under both Texas and New York Law, pursuant to the doctrines of merger and bar, the note was merged into the default judgment. From the date of the default judgment through August 2010, Counsel Financial sent invoices to Leibowitz which included amounts for interest. According to Leibowitz, if the 9% post-judgment rate is applied, the amount of interest payable **[*9]** on $5,506,800.96 from November 25, 2008 through March 31, 2010 is $670,321.00. However, according to an affidavit provided by Leibowitz, the amount of interest, fees and charges for the use of money from the date of the default judgment through March 31, 2010, which is stated in the invoices, is $2,139,133.00. The motion for summary judgment also further contended that Counsel Financial was attempting to collect money which was not set out in the default judgment. As grounds for summary judgment, Leibowitz alleged violations of *sections 305.003*[2] and *305.004*[3] of the Texas Finance Code. In short, the basis of the motion is that, applying the New York statutory rate of interest on judgments (9%) to invoices sent by Counsel Financial to Leibowitz, the interest charged in the invoices is usurious under the Texas statutes. Leibowitz contends that Counsel Financial breached the finance code by sending invoices which included interest "at a time that no interest was accruing on the Note." Leibowitz calculated that the amount of interest that Counsel Financial charged was $2,139,133.00; however, the amount of interest allowed by law was $670,321.00, thus he was entitled three times the amount **[*10]** computed by subtracting the interest allowed by law from the total interest received, which is $4,406,436.00. Leibowitz sought judgment in the amount of $5,519,992.72, or, in the alternative, $4,406,436.00, or alternatively, a declaration of the amount of interest and fees Counsel Financial is entitled to collect under the domesticated New York judgment.

2 *Section 305.003 of the Texas Finance Code*, entitled "Liability for Usurious Legal Interest," provides:

> (a) A creditor who charges or receives legal interest that is greater than the amount authorized by this subtitle is liable to the obligor for an amount that is equal to the greater of:
>
> > (1) three times the amount computed by subtracting the amount of legal interest allowed by law from the total amount of interest charged or received; or
> >
> > (2) $2,000 or 20 percent of the amount of the principal, whichever is less.

(b) This section applies only to a transaction subject to this subtitle.

*TEX. FIN. CODE ANN. § 305.003* (West 2006).

3 *Section 305.004 of the Texas Finance Code*, entitled "Additional Liability for More Than Twice Authorized Rate of Legal Interest" provides:

(a) In addition to the amount determined under *Section 305.003*, a creditor who **[*11]** charges and receives legal interest that is greater than twice the amount authorized by this subtitle is liable to the obligor for:

(1) the principal amount on which the interest is charged and received; and

(2) the interest and all other amounts charged and received.

(b) This section applies only to a transaction subject to this subtitle.

*TEX. FIN. CODE ANN. § 305.004* (West 2006).

Counsel Financial filed a response to the motion including various objections to the motion, including a specific objection that the motion to dismiss on forum selection grounds should be addressed prior to any decision on the merits. The response also contended, inter alia, that: (1) the usury claims fail under New York law; (2) the usury claims fail under Texas law; and (3) the declaratory judgment claims fail on factual and legal grounds.

On January 20, 2012, the trial court granted Leibowitz's motion and rendered an "Order Granting Motion for Partial Summary Judgment and Order of Severance" which reads in part as follows:

IT IS THEREFORE ORDERED ADJUDGED AND DECREED that DAVID MCQUADE LEIBOWITZ, P.C. shall have partial summary judgment over and against COUNSEL FINANCIAL SERVICES, LLC forfeiting the amount of **[*12]** principle upon which interest was received in the amount in $5,005,845.45, and for the interest received thereon in the amount of $514,147.28 for a total judgment over and against COUNSEL FINANCIAL SERVICES, LLC in the amount of $5,519,992.72.

. . . .

IT IS FURTHER ORDERED ADJUDGED, AND DECREED, that the amounts awarded herein shall offset any amounts claimed by COUNSEL FINANCIAL SERVICES, LLC [I]n its Plea In Intervention filed herein, and shall offset any amounts alleged to be subject to the lien claimed by COUNSEL FINANCIAL SERVICES, LLC. In the Plea In Intervention filed in this case, COUNSEL FINANCIAL SERVICES, LLC requested the Court to determine the total amount of the lien it claims pursuant to the Security Agreement attached to the Plea In Intervention. Accordingly, upon the conclusion of the trial of the merits of this cause the Court will grant the relief requested by COUNSEL FINANCIAL SERVICES, LLC and determine the total amount of its lien, if any such lien is found to exist.

By its first issue, Counsel Financial contends generally that the trial court erred in granting Leibowitz's first motion for partial summary judgment. In sub-issues, Counsel Financial argues that: (1) **[*13]** Leibowitz did not conclusively establish that Counsel Financial violated the Texas Finance Code; (2) Leibowitz did not conclusively establish that Counsel Financial violated any New York usury law; (3) Leibowitz and the trial court employed an improper combination of New York and Texas law; (4) the trial court erroneously granted excess relief by ordering that any amount sought by Counsel Financial on its lien be offset by the amount forfeited; and (5) the declaration sought by Leibowitz, which constitutes a collateral attack on the New York judgment, is not authorized by law.

Usury is any charged interest, "in excess of the amount allowed by law." *First Bank v. Tony's Tortilla Factory, Inc., 877 S.W.2d 285, 287 (Tex. 1994)*. Contracts for usurious interest are contrary to public policy and prohibited by the Texas Constitution and Texas Finance Code. *See TEX. CONST. art. XVI, § 11*; *TEX. FIN.*

*CODE ANN. §§ 302.001(b), 305.001-.008* (West 2011); *Williams v. Bell, No. No. 14-12-00691-CV, 2013 Tex. App. LEXIS 3208, at *14 (Tex. App.--Houston [14th Dist.] Mar. 26, 2013, no pet. h.)*; *Sturm v. Muens, 224 S.W.3d 758, 761 (Tex. App.--Houston [14th Dist.] 2007, no pet.)*. To prevail on a claim of usury, **[*14]** a party must prove: (1) a loan of money; (2) an absolute obligation to repay the principal; and (3) the exaction of greater compensation than is allowed by law for the borrower's use of the money. *Williams, 2013 Tex. App. LEXIS 3208, at *14*; *Sturm, 224 S.W.3d at 761*. A "loan" is an advance of money made to or on behalf of an obligor, "the principal amount of which the obligor has an obligation to pay the creditor." *TEX. FIN. CODE ANN. § 301.002(a)(10)* (West 2006). "Interest" is compensation for the use, forbearance, or detention of money. *Id. § 301.002(a)(4)*. "Usurious interest" is interest that exceeds the applicable maximum amount allowed by law. *Id. § 301.002(a)(17)*.

The usury statutes are penal in nature and, accordingly, must be strictly construed in such a way as to give the lender the benefit of the doubt. *See Lagow v. Hamon, 384 S.W.3d 411, 416 (Tex. App.--Dallas 2012, no pet.)*; *Bair Chase Prop. Co, L.L.C. v. S&K Dev. Co., Inc., 260 S.W.3d 133, 142 (Tex. App.--Austin 2008, pet. denied)*; *First State Bank v. Dorst, 843 S.W.2d 790, 794 (Tex. App.--Austin 1992, writ denied)*; *see also Steves Sash & Door Co., Inc. v. Ceco Corp., 751 S.W.2d 473, 476 (Tex. 1988)*. The Texas usury statutes **[*15]** impose often draconian penalties on those creditors who violate them. *See Lagow, 384 S.W.3d at 416*; *Sotelo v. Interstate Fin. Corp., 224 S.W.3d 517, 522 n.7 (Tex. App.--El Paso 2007, no pet.)*. The Legislature's purpose behind such penalties was presumably not to award unwarranted "windfalls" to fortuitous debtors or to unfairly penalize well-intentioned creditors for careless or unknowing mistakes, but to dissuade unscrupulous creditors from charging usurious rates in the first instance. *Lagow, 384 S.W.3d at 416*; *Sotelo, 224 S.W.3d at 522 n.7*. By enacting the provisions that allow creditors to correct a violation, the Legislature has encouraged creditors to amend usurious contracts in the debtor's favor. *See Lagow, 384 S.W.3d at 416*; *Bair Chase, 260 S.W.3d at 144*; *Sotelo, 224 S.W.3d at 522*.

Statutory construction is a legal question we review de novo. *City of Rockwall v. Hughes, 246 S.W.3d 621, 625 (Tex. 2008)*. In construing statutes, we ascertain and give effect to the Legislature's intent as expressed by the language of the statute. *See State v. Shumake, 199 S.W.3d 279, 284 (Tex. 2006)*; *Lagow, 384 S.W.3d at 416*; *Sotelo, 224 S.W.3d at 522*; *Jones v. State, 175 S.W.3d 927, 930 (Tex. App.--Dallas 2005, no pet.)*. **[*16]** When we interpret a code enacted by the legislature, we read words and phrases in context and construe them according to the rules of grammar and common usage. *TEX. GOV'T CODE ANN. § 311.011(a)* (West 2005); *see Lagow, 384 S.W.3d at 416*; *Jones, 175 S.W.3d at 930*. Words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, are construed accordingly. *TEX. GOV'T CODE ANN. § 311.011 (b)*; *In re Allen, 366 S.W.3d 696, 706 (Tex. 2012)*; *City of Rockwall v. Hughes, 246 S.W.3d 621, 625 (Tex. 2008)*.

*Section 302.001(b) of the Texas Finance Code* states that the "maximum rate or amount of interest is 10 percent a year except as otherwise provided by law" and "[a] greater rate of interest than 10 percent a year is usurious unless otherwise provided by law." *TEX. FIN. CODE ANN. § 302.001(b)*; *see also Threlkeld v. Urech, 329 S.W.3d 84 (Tex. App.--Dallas 2010, pet. denied)*. We note that Texas law, including the usury statute, provides for a greater rate of interest for various transactions. *See, e.g., TEX. FIN. CODE ANN. § 303.009* (providing that the amount of the minimum and maximum optional rate ceilings depend on whether the loan is a consumer **[*17]** loan, which entails a minimum interest rate ceiling of eighteen percent and a maximum interest rate ceiling of twenty-four percent, or a loan concerning a "business, commercial, investment, or similar purpose," for which the maximum ceiling is twenty-eight percent); *see also All Seasons Window and Door Mfg., Inc. v. Red Dot Corp., 181 S.W.3d 490, 498 (Tex. App.--Texarkana 2005, no pet.)*.

We turn our attention to the summary judgment at issue. Leibowitz's motion for summary judgment asserts that the debt was subject to the post-judgment rate of interest established by New York law but that the interest charged was usurious under the Texas Finance Code. The motion is thus premised on a chimera of Texas and New York Law. Leibowitz asserts no argument or authority explaining the motion for summary judgment's hybrid approach to the applicable law. We conclude that Leibowitz's motion for partial summary judgment does not carry its burden to conclusively establish his cause of action for usury insofar as it attempts to meld claims based on the laws of two different states without argument or authority regarding the applicability of either. Moreover, even had Leibowitz carried his burden, we **[*18]** would conclude that Counsel Financial's response has raised a material issue of fact regarding the usury claims. In response to the motion for summary judgment, Counsel Financial asserts, among other issues, that Leibowitz's claims are governed by New York law and (1) the Texas Finance Code does not apply under New York law; (2) New York law does not permit corporations or guarantors of a corporate debt to sue for usury; and (3) New York law exempts loans exceeding $2.5 million from its usury laws. Counsel Financial states that

the note and the security agreement nominate New York as the governing law:

> GOVERNING LAW. This note shall be governed by and construed, interpreted and enforced in accordance with the internal laws of the State of New York and, to the extent applicable, the federal law of the United States, without regard to the law of any other jurisdiction.

Counsel Financial further asserts that Leibowitz has no claim for usury under New York law because, inter alia, New York law bars both corporations and the individual guarantors for the debt of corporations from asserting usury claims. "A corporation is prohibited from asserting the defense of civil usury," and "[a]n individual **[*19]** guarantor of a corporate obligation is also precluded from raising such a defense." *Arbuzova v. Skalet, 92 A.D.3d 816, 816, 938 N.Y.S.2d 811 (N.Y. App. Div. 2d Dep't 2012)*; *see N.Y. GEN. OBLIG. LAW. § 5-521*; *Schneider v. Phelps, 41 N.Y.2d 238, 242, 359 N.E.2d 1361, 391 N.Y.S.2d 568 (1977)*; *Pepin v. Jani, 101 A.D.3d 694, 695, 955 N.Y.S.2d 371*; *101 A.D.3d 694, 955 N.Y.S.2d 371, 373 (N.Y. App. Div. 2d Dep't 2012)*; *Tower Funding v. Berry Realty, 302 A.D.2d 513, 514, 755 N.Y.S.2d 413 (N.Y. App. Div. 2d Dep't 2003)*. Further, New York exempts loans exceeding $2.5 million from its usury laws: *section 5-501(6)(b)* of the applicable statute provides that penal usury laws do not apply where loans in excess of $2.5 million are issued in one or more installments pursuant to a written agreement. *AJW Partners LLC v. Itronics Inc., 68 A.D.3d 567, 568, 892 N.Y.S.2d 46 (N.Y. App. Div. 1st Dep't 2009)*; *see N.Y. GEN. OBLIG. LAW. § 5-501(6)(b)*.

Based on the foregoing, we conclude that the trial court erred in granting Leibowitz's motion for partial summary judgment regarding the usury claims under the Texas Finance Code. We sustain Counsel Financial's first issue and its first three sub-issues.

We next address Counsel Financial's fourth sub-issue **[*20]** contending that the trial court erroneously granted excess relief by ordering that any amount sought by Counsel Financial on its lien be offset by the amount forfeited. The motion for summary judgment must state the grounds on which it is made. *See TEX. R. CIV. P. 166a(c)*, *McConnell v. Southside ISD, 858 S.W.2d 337, 341 (Tex. 1993)*. The trial court cannot grant a summary judgment on grounds not presented in the motion. *G&H Towing Co. v. Magee, 347 S.W.3d 293, 297 (Tex. 2011)*. The right of offset is an affirmative defense; the burden of pleading offset and proving facts necessary to support this defense is on the party making the assertion. *Brown v. Am. Transfer & Storage Co., 601 S.W.2d 931, 936 (Tex. 1980)*; *see also ERI Consulting Eng'rs, Inc. v. Swinnea, 318 S.W.3d 867 (Tex. 2010)*. The motion for partial summary judgment did not seek offset. Accordingly, the trial court's determination of offset in the summary judgment was error. We sustain Counsel Financial's fourth sub-issue.

Finally, in its fifth sub-issue, Counsel Financial contends the declaration sought by Leibowitz, which constitutes a collateral attack on the New York judgment, is not authorized by law. In his motion for partial **[*21]** summary judgment, Leibowitz sought affirmative relief on his claims for usury, or "alternatively, a declaration of the amount of interest and fees Counsel Financial is entitled to collect under the domesticated New York judgment." The order at issue grants the substantive relief requested and does not include a declaration of the amount and fees Counsel Financial is entitled to collect under the judgment. Accordingly, we overrule Counsel Financial's fifth sub-issue.

### IV. SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT ALLEGING UNENFORCEABILITY OF THE SECURITY AGREEMENT

By its second issue, Counsel Financial contends generally that the trial court erred in granting Leibowitz's second motion for partial summary judgment. In sub-issues, Counsel Financial argues that (1) the security agreement cannot be rendered unenforceable by Counsel Financial by disciplinary rules that do not apply to it; (2) Leibowitz did not conclusively establish that the security agreement violates any disciplinary rule; and (3) Leibowitz did not conclusively establish that the entire agreement is unenforceable.

Leibowitz's second motion for partial summary judgment asserted that Counsel Financial "did not obtain, and could **[*22]** not have, a security interest in Leibowitz's contingency attorney fees." Leibowitz contended that a contingency fee legal contract between an attorney and client is not a commodity which can be traded like any other account under the Texas Business and Commerce Code. As grounds for the motion, Leibowitz contended that the security agreement violated: (1) Rule 5.04 of the Texas Disciplinary Rules of Professional Conduct[4] ("Disciplinary Rules"), (2) *Rule 1.05 of the Disciplinary* Rules,[5] and (3) *Rule 2.01 of the Disciplinary* Rules regarding his duty of utmost fidelity to his clients.[6] In conclusion, the motion asserts that the "agreement to pay a portion of attorneys fees to a non-lawyer, the transfer of the right to receive those fees by assignment, the required release of confidential information, and the wholesale interference with the attorney-client relationship, renders the Security Agreement in violation of Texas public policy."

4 Rule 5.04 of the Texas Disciplinary Rules of Professional Conduct, entitled "Professional Independence of a Lawyer" provides generally that "[a] lawyer or law firm shall not share or promise to share legal fees with a non-lawyer." *See TEX. DISCIPLINARY R. PROF'L CONDUCT 5.04(a),* **[*23]** *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. A (West Supp. 2011).

5 *Rule 1.05(a) of the Texas Disciplinary* Rules of Professional Conduct, entitled "Confidentiality of Information," provides in relevant part that a lawyer shall not knowingly reveal confidential information of a client or a former client to anyone else, other than the client, the client's representatives, or the members, associates, or employees of the lawyer's law firm. *See TEX. DISCIPLINARY R. PROF'L CONDUCT 1.05(a), reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. A (West Supp. 2011).

6 *Rule 2.01 of the Texas Disciplinary* Rules of Professional Conduct, entitled "Advisor," provides that "In advising or otherwise representing a client, a lawyer shall exercise independent professional judgment and render candid advice." *See TEX. DISCIPLINARY R. PROF'L CONDUCT 2.01, reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. A (West Supp. 2011).

After reviewing the applicable law, we conclude that Leibowitz did not meet his burden to prove that there is no genuine issue of material fact and he is entitled to judgment as a matter of law. *See TEX. R. CIV. P. 166a(c)*; *Mann Frankfort Stein & Lipp Advisors, Inc., 289 S.W.3d at 848*. **[*24]** Leibowitz's motion for summary judgment is premised on alleged violations of the Disciplinary Rules. The preamble to the current Disciplinary Rules states, in part, that "[t]hese rules do not undertake to define standards of civil liability of lawyers for professional conduct. Violation of a rule does not give rise to a private cause of action nor does it create any presumption that a legal duty to a client has been breached." TEX. DISCIPLINARY RULE PROF'L CONDUCT preamble P 15, *reprinted in* TEX. GOV'T CODE ANN., tit.2, subtit. G app. A (West Supp. 2011).

Texas cases have consistently held that the Texas Disciplinary Rules of Professional Conduct do not define standards for civil liability and do not give rise to private claims. *Garcia v. Garza, 311 S.W.3d 28, 43-44 (Tex. App.--San Antonio 2010, pet. denied)*; *Dardas v. Fleming, Hovenkamp & Grayson, P.C., 194 S.W.3d 603, 613 (Tex. App.--Houston [14th Dist.] 2006, pet. denied)*. Thus, any alleged violation of the Disciplinary Rules does not necessarily establish a cause of action "nor does it void an otherwise valid contract executed outside of the attorney-client relationship." *Wright v. Sydow, 173 S.W.3d 534, 549 (Tex. App.--Houston [14th Dist.] 2004, pet. denied)*; **[*25]** *see Cruse v. O'Quinn, 273 S.W.3d 766, 775 (Tex. App.--Houston [14th Dist.] 2008, pet. denied)*; *Cuyler v. Minns, 60 S.W.3d 209, 214 (Tex. App.--Houston [14th Dist.] 2001, pet. denied)*.

Second, assuming without deciding that the singular mention of public policy in the conclusion to the motion for summary judgment adequately pleads that ground for summary judgment,[7] we note that a court may deem the disciplinary rules to be an expression of public policy, so that a contract violating them is unenforceable as against public policy. *Garcia, 311 S.W.3d at 43*; *Cruse, 273 S.W.3d at 775*; *Dardas, 194 S.W.3d at 613*. In this regard, we note that there are several cases in which Texas courts have concluded that agreements violating the Disciplinary Rules were unenforceable and void as against public policy. *See, e.g., Johnson v. Brewer & Pritchard, P.C., 73 S.W.3d 193, 205 (Tex. 2002)* ("A fee sharing agreement between lawyers who are not in the same firm violates public policy and is unenforceable unless the client is advised of and consents to the sharing arrangement."); *Lemond v. Jamail, 763 S.W.2d 910, 914 (Tex. App.--Houston [1st Dist.] 1988, writ denied)* (holding that a referral agreement was **[*26]** void and unenforceable as being against public policy because the client was never informed of the fee-splitting agreement); *Quintero v. Jim Walter Homes, Inc., 709 S.W.2d 225, 229-30 (Tex. App.--Corpus Christi 1986, writ ref'd n.r.e.)* (holding a settlement agreement was void and unenforceable because the clients were not informed of the nature and amounts of all the claims involved in the aggregate settlement as required by rules); *Fleming v. Campbell, 537 S.W.2d 118, 119 (Tex. Civ. App.--Houston [14th Dist.] 1976, writ ref'd n.r.e.)* (holding an attorney's referral fee contract was void because it was against the public policy expressed in the rules).

7 If the grounds for summary judgment are not clear, the general rule is that the nonmovant must specially except to preserve error. *See Harwell v. State Farm Mut. Auto. Ins. Co., 896 S.W.2d 170, 175 (Tex.1995)* (citing *McConnell v. Southside ISD, 858 S.W.2d 337, 342 (Tex. 1993))*. However, the nonmovant need not object if the grounds for summary judgment are not expressly presented in the motion itself, rendering the motion insufficient as a matter of law. *See McConnell, 858 S.W.2d at 342*. Grounds are sufficiently specific if they give "fair **[*27]** notice" to the nonmovant. *Beaver Properties, L.L.C. v. Jerry Huffman Custom Builder, L.L.C., 355 S.W.3d 878, 889 (Tex. App.--Dallas 2011, no pet.)*; *E.B.S. Enters., Inc. v. City of El Paso, 347 S.W.3d 404, 409 (Tex. App.--El Paso 2011, pet. denied)*; *City*

> *of Roanoke v. Town of Westlake, 111 S.W.3d 617, 633 (Tex App.--Fort Worth 2003, pet. denied)*; *Dear v. City of Irving, 902 S.W.2d 731, 734 (Tex. App.--Austin 1995, writ denied)*.

The motion asserts that the security agreement violates public policy insofar as it involves an "agreement to pay a portion of attorneys fees to a non-lawyer" and "the transfer of the right to receive those fees by assignment." The main thrust of Leibowitz's argument is that loans such as those at issue in this case fundamentally violate public policy as articulated in the disciplinary rules, which as a general rule prohibit lawyers from sharing legal fees with non-lawyers. However, Texas case law allows an attorney to assign accounts receivable, consisting of current or future, earned or unearned, attorney fees as property securing a transaction. *See Hennigan v. Hennigan, 666 S.W.2d 322, 325 (Tex. App.--Houston [14th Dist.] 1984, writ ref'd n.r.e.)* (concluding that **[*28]** future attorney's fees constitute "accounts" under *section 9.106* of the Uniform Commercial Code).[8] Moreover, as previously stated by this Court, there is a significant difference between sharing legal fees with a non-lawyer and paying a debt with legal fees. *See State Bar of Tex. v. Tinning, 875 S.W.2d 403, 410 (Tex. App.--Corpus Christi 1994, writ denied)*. In a case where the appellant contended that the disciplinary rules were unconstitutionally vague because they make no distinction between giving a predetermined percentage of a legal fee to a non-lawyer and paying an employee's hourly salary from monies generated by fees paid by clients for the lawyer's services, we stated, inter alia, that:

> [C]ommon use and understanding of "sharing fees" does not include the type of permissible behavior [appellant] complains may be confused with proscribed behavior. Our national economy comprises a multitudinous system of payments from one party to another, who in turn settle debts with third parties, who continue the stream of payments ad infinitum. One does not ordinarily consider paying a pre-existing debt with sums earned by fees generated from rendering services as sharing those fees. A wage **[*29]** earner does not "share" his salary with a landlord by virtue of paying rent, nor do the State of Texas or the United States "share" tax revenue with their employees. According to common use and understanding of the phrase "share legal fees," a lawyer does not "share legal fees" by paying a salary to his employees or by using money generated by legal fees to pay the lawyer's debts to employees or others.

*Id*. Accordingly, we conclude that Leibowitz failed to show as a matter of law that the security agreement violated public policy as an alleged violation of the fee-sharing prohibition contained in the Disciplinary Rules.

> 8 Other jurisdictions also interpret the Uniform Commercial Code ("UCC") definition of "account" as encompassing contracts for legal fees, including fees in pending contingency fee cases. *See, e.g., Cadle Co. v. Schlichtmann, 267 F.3d 14, 18 (1st Cir. 2001)* (concluding that amounts to be paid under contingency fee agreements are accounts under Article 9 of UCC); *U.S. Claims, Inc. v. Yehuda Smolar, P.C., 602 F.Supp. 2d 590, 597-600 (E.D. Pa. 2009)* (holding that the assignment of amounts owed under contingency fee agreement governed by Article 9 of the UCC); *U.S. Claims, Inc. v. Flomenhaft & Cannata, LLC, 519 F. Supp. 2d 515, 521 (E.D. Pa. 2006)* **[*30]** (finding that fee contracts created rights to receive payment for services to be rendered by the law firm on behalf of its clients and thus fell squarely within definition of account); *see also ACF 2006 Corp. v. Merritt, No. CIV-12-161, 2013 U.S. Dist. LEXIS 16609, at *11 (W.D. Okla. Feb. 7, 2013)*; *PNC Bank, Del. v. Berg, No. 94C-09-208-WTQ, 1997 Del. Super. LEXIS 19, at *27, 45 U.C.C. Rep. Serv. 2d (Callaghan) 27 (Del. Jan. 31, 1997)* (concluding that an unmatured contingency fee contract is an account under Article 9 of the UCC); *Core Funding Group v. McDonald, No. L-05-1291, 2006 Ohio 1625, 2006 Ohio App. LEXIS 1523, at *22 (Ohio App. Mar. 31, 2006)* (concluding that contingent fee contracts of a law firm-debtor are subject to Article 9).

The motion for summary judgment also asserts that the security agreement violates public policy insofar as it mandates the required release of confidential information and causes wholesale interference with the attorney-client relationship. Leibowitz contends that the language of the security agreement requires the release of confidential client information insofar as it, inter alia, gives Counsel Financial the right to inspect his records and requires **[*31]** him to notify Counsel Financial of any event which might have a material adverse effect on the value of his contingency fee contracts. Leibowitz also contends that the security agreement violates his duty of fidelity to his clients because, among other things, it purports to prevent him from giving up any rights or

remedies relating to his client contracts and prohibits him from modifying his client contracts.

Assuming without deciding that these provisions might lead to potential violations of the disciplinary rules, Counsel Financial contends that the security agreement itself expressly protects Leibowitz from violating any disciplinary rules. The security agreement contains the following clauses:

> Each such right and remedy may be exercised only to the extent that the exercise thereof does not (i) violate applicable law, or (ii) if requiring the Debtor to take any action, require the Debtor [to] violate any ethical or disciplinary rule, regulation or law governing non-disclosure of confidential information by an attorney or prohibiting the unauthorized practice of law.
>
> . . .
>
> Whenever possible, each provision of this Agreement shall be interpreted in such a manner as to be effective and **[*32]** valid under applicable law. If however, any such provision shall be prohibited by or invalid under such law, it shall be deemed modified to conform to the minimum requirements of such law, or, if for any reason it is not deemed so modified, it shall be prohibited or invalid only to the extent of such prohibition or invalidity without the remainder thereof or any other such provision being prohibited or invalid.

Under contract principles, a court is generally authorized to sever an illegal or an unenforceable provision from a contract and enforce the remainder of the contract. *Williams v. Williams, 569 S.W.2d 867, 871 (Tex. 1978)*; *see also In re Poly-America, L.P., 262 S.W.3d 337 (Tex. 2008)* (orig. proceeding); *Hoover Slovacek LLP v. Walton, 206 S.W.3d 557, 565 (Tex. 2006)*; *Rogers v. Wolfson, 763 S.W.2d 922, 925 (Tex. App.--Dallas 1989, writ denied)*. An illegal or unconscionable provision may generally be severed so long as it does not constitute the essential purpose of the agreement. *See Williams, 569 S.W.2d at 871*; *Sec. Serv. Fed. Credit Union v. Sanders, 264 S.W.3d 292, 300 (Tex. App.--San Antonio 2008, no pet.)*; *City of Brownsville v. Golden Spread Elec. Coop., Inc., 192 S.W.3d 876 (Tex. App.--Dallas 2006, pet. denied)*. **[*33]** Severability is determined by the intent of the parties as evidenced by the language of the contract. *In re Kasschau, 11 S.W.3d 305, 313 (Tex. App.--Houston [14th Dist.] 1999, orig. proceeding)*; *Montgomery, 930 S.W.2d at 778-79*.

In the instant case, the portions of the security agreement which allegedly violate the disciplinary rules are tangential to the main or essential purpose of the agreement, which is the pledge of collateral to secure the loan. Accordingly, Leibowitz has not met his burden to show that he is entitled to judgment as a matter of law on grounds that the security agreement is unenforceable due to alleged violations of the disciplinary rules. *See id*. We sustain Counsel Financial's second issue. In so holding, we note that that the preamble itself says that the purpose of the rules can be abused when they are invoked by opposing parties as procedural weapons. It appears to this Court that the purpose of the rules can similarly be abused when an attorney enters into a contract with a non-lawyer and then seeks to avoid the contract on grounds it violates the Disciplinary Rules.

### V. MOTION TO DISMISS

In its third and final issue, Counsel Financial contends that the trial **[*34]** court abused its discretion by denying Counsel Financial's motion to dismiss based on forum selection clauses in the loan documents. As a threshold matter, we note that Counsel Financial objected to the trial court's failure to rule on its motion to dismiss prior to ruling on the substantive motions for summary judgment herein. Specifically, the motion to dismiss was filed on March 19, 2010, the first motion for partial summary judgment was filed on August 30, 2010, and the second motion for partial summary judgment was filed on October 13, 2011. The trial court entered orders on the motion to dismiss and both motions for partial summary judgment on the same day, January 20, 2012. A trial court abuses its discretion when addressing substantive matters without first ruling on a motion to dismiss based on a forum selection clause. *See In re AutoNation, 228 S.W.3d 663, 667-70 (Tex. 2007)* (orig. proceeding); *In re MetroPCS Communs., Inc., 391 S.W.3d 329, 340 (Tex. App.--Dallas 2013, orig. proceeding)* (holding that the trial court abused its discretion by granting injunctive relief without first ruling on relators' motions respecting a forum selection clause); *In re Boehme, 256 S.W.3d 878, 880 (Tex. App.--Houston [14th Dist.] 2008, orig. proceeding)* **[*35]** (mandamus relief granted to overturn temporary injunction order and dismiss case based on forum selection clause). Nevertheless, we do not reach this issue because the order denying the motion to dismiss was not severed and made final and accordingly, is not subject to review in this appeal. Counsel Financial also attacked this ruling by petition for writ of mandamus in our cause 13-12-00151-CV, and we address this issue therein.

**VI. CONCLUSION**

In sum, we reverse and remand in part, and we dismiss in part. Specifically, we reverse and remand both orders granting summary judgment. We dismiss Counsel Financial's appeal of the order denying its motion to dismiss on forum selection grounds and address that issue by separate opinion in the related original proceeding. *See In re Counsel Fin. Servs., LLC, No. 13-12-00151-CV, 2013 Tex. App. LEXIS 9255 (Tex. App.--Corpus Christi July 25, 2013, orig. proceeding)* (mem. op.).

GINA M. BENAVIDES,

Justice

Delivered and filed the
25th day of July, 2013.