**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| In Re: **VIOXX**<br>**PRODUCTS LIABILITY LITIGATION**<br><br>**This Document Relates to:**<br><br>***Sherrill Herke, individually and on behalf***<br>***of a proposed class of those similarly***<br>***situated v. Merck & Co., Inc.***; **Case No.**<br>**2:09-cv-07218** | **MDL NO. 1657**<br><br>**SECTION "L"**<br><br>**JUDGE FALLON**<br><br>**MAGISTRATE JUDGE KNOWLES** |

**CLASS COUNSEL'S OPPOSITION TO JAMES RATLIFF'S**
**MOTION AND AMENDED MOTION TO STAY PENDING APPEAL**

**INTRODUCTION**

Vioxx MDL Consumer Settlement Class Member James Ratliff, who is also the named

plaintiff in a putative (but uncertified) state court action, has moved, again, to stay this Court's

ongoing class action settlement approval process, including the ongoing notice program and the

filing of claims, to the detriment of all members of the settlement class, and has also filed a

Notice of Appeal with the Fifth Circuit seeking review of this Court's recent order denying

Ratliff's Motion to Intervene.[1]

The settlement notice and claim process is well underway. Mailed notice has been sent,

the settlement website is up and running, broadcast notice is airing and published notice is

appearing in print nationwide, and hundreds of class members have begun the registration and

claim process, including settlement class members from Kentucky. As of September 16, 2013 the

Claims Administrator reports the following claimant activity:  1651 registered portal users,

including 18 settlement class members from Kentucky; 169 electronic claim forms in progress;

---

[1] This Opposition responds to Docs. 64570, 64576, and 64576-1.

168 submitted electronic claim forms, including 3 from settlement class members from Kentucky; 1 submitted paper claim form; and 1107 requests for paper claim forms, including from 8 settlement class members from Kentucky.  The vast majority of the claims to date have been submitted electronically at www.vioxxsettlement.com.  The number of claims submitted grows daily.

Ratliff has demonstrated the willingness to do anything and everything to disrupt, delay, and distract the Court and the parties from the Rule 23(e) settlement approval process in this Court—except to exercise the rights and options that Rule 23 gives him, and all other members of the settlement class:  to exclude himself from the settlement ("opt-out"); or to object, at the appropriate time, and in the appropriate matter, as specified in this Court's Preliminary Approval Order and Class Notice.[2]

Ratliff contends his appeal from the denial of intervention would be rendered futile absent a stay; but intervention is unnecessary, and hence futile, from the start.[3]  Intervention under Rule 24 would not have enhanced or increased Ratliff's rights as a class member, and intervention under Rule 24 is not necessary in order for his exercise of those rights.  Ratliff is apparently not interested in exercising his rights and opportunities as a class member; rather, he is interested in pursuing a quest, both inside and outside of this Court, for a separate settlement for a non-existent Kentucky class, and in essentially holding an existing settlement class

_____

[2] Counsel for Ratliff often mentions that the Ratliff case was the first filed for Kentucky consumers.  There is no "first filed" rule that would give Kentucky exclusive or priority jurisdiction.  Moreover, the factual assertion is incorrect.  The Ratliff action was neither the first nor the only complaint styled as a class action asserting claims for Kentucky consumers.  The New Jersey action (IUOOE Local #68 welfare Fund v. Merck & Co. Inc., docket number ATL-L-3015-03 MT) filed by Seeger Weiss on October 30, 2003 was the first action to seek class treatments for consumers from all states.  Cases asserting Kentucky claims were filed in federal court in 2004, transferred to this district, and included in the MDL Master Complaint filed in 2005.

[3] Ratliff's attempt to stay the settlement is a not-so-veiled effort to clear the way for his appeal from this Court's denial of his motion for intervention.  But that appeal itself is due to be dismissed, and a motion to dismiss it has been filed in the Fifth Circuit, so that this Court may proceed with its exclusive authority over the settlement approval process, and Ratliff (and all others) may exercise their rights as class members (to file claims, to object or to seek exclusion from the settlement) unimpeded.

hostage—to increase leverage for himself in an attempt to broker a separate settlement with Merck.  To date, this Court has not interfered with Ratliff's Kentucky proceedings or any informal discussions between the parties; and has in fact encouraged conversations between the parties. Likewise, the PSC has reached out to counsel for Ratliff in an attempt to include Ratliff in the preliminarily approved settlement.  Ratliff's stated goal of having a Kentucky state wide class excluded from the MDL has not occurred, and will not occur.  Rather, the global settlement is going forward, with benefits for Vioxx consumers in all states (except the previously-certified *Plubell* Missouri consumer class, which was proceeding to trial as a certified class, having been affirmed on appeal, when the *Plubell* plaintiffs and Merck reached a separate statewide class settlement ).

### RATLIFF FAILS EACH OF THE PREVAILING REQUIREMENTS FOR A STAY

Ratliff has repeatedly sought stays and delays of the Vioxx MDL settlement approval proceedings, hoping that a ruling by the Kentucky Supreme Court will enable him to start, again, on the road to class certification—a road previously rejected by Kentucky's Appellate Court.[4] He requests a stay to place the nationwide class on hold, indefinitely, pending further developments in Kentucky.  He failed to persuade this Court to delay the commencement of the preliminary approval and class notice process.  Class notice is now underway, and still he wants the process halted.  After eight years of Vioxx MDL proceedings, extensive discovery, and numerous trials, the Vioxx consumers who did not suffer personal injury or death resulting from Vioxx finally have an opportunity, through the settlement, to obtain refunds for their out-of-pocket expenses.  This opportunity has been long in coming, and it should not further be delayed, particularly not in deference to state proceedings whose outcome is uncertain, and will take

---

[4] Ratliff anticipated a Kentucky Supreme Court ruling in late August, but it has not yet occurred.

many months (or more likely, years) to play out.  Even if Ratliff were to receive a positive signal from the Kentucky high court, and even if he were ultimately successful in obtaining statewide certification on the limited claims he has plead, his cause does not offer the prospects of any additional relief for Vioxx class members in Kentucky.[5]  The Kentucky consumer will likely receive more types of benefits in the MDL settlement than s/he will in the non-existent consumer class based on its proposed class definition.  Ratliff's continued pleas and legal demands actually harm the Kentucky consumer as the MDL settlement is wider in scope and presently available.

The Ratliff Amended Motion To Stay Pending Appeal is a *non sequitur*, unmoored to class action approval procedure.  The class notice program has commenced, substantial money has been spent on notice and claims administration, and, like any other class member (including all other Kentucky residents), Mr. Ratliff may opt-out or object.  He says he wants and needs to intervene to take discovery to determine whether the settlement is fair, but whether he is entitled to such discovery[6] has nothing whatsoever to do with intervention:  intervention itself does not result in class member discovery rights, and the federal courts do not require class members to intervene in order to seek discovery, or to exercise their other rights or options as class members.  Mr. Ratliff's activities to date, in his ongoing efforts to disrupt and delay the class action settlement approval process, reveal a profound misapprehension (or disregard) for established class action settlement certification and approval procedures under Rule 23(e).  Granting a stay to Mr. Ratliff holds no prospect for enhancing the recoveries, protecting the rights, or advancing

---

[5] Kentucky Vioxx payors have always been included in the consumer class allegations of the Vioxx MDL <u>Purchase Claims Master Class Action Complaint</u>, filed in Fall 2005.

[6] As explained below under the *Hilton* factors, objectors have no "absolute right to discovery."  4 Newberg on Class Actions (Fourth Edition) § 11:57.  Many courts do not allow discovery into confidential class action settlement negotiations by potential objectors; discovery that does not assist the court in making its own independent assessment of the settlement will be disallowed.  The more comprehensive the existing record, the higher the burden on the objector to demonstrate the need for more.  *Id.*  Here, after eight years of active litigation, a completed purchase claims trial, and the exhaustive briefing on the issue, the record is mature and fully developed.

the interests, of the members of the settlement class, including the Kentucky consumers.  The delay wrought by a stay would interfere with their rights to make claims for settlement benefits and to finally obtain reimbursement for their Vioxx costs.

## RATLIFF FLUNKS THE *HILTON* FOUR-FACTOR TEST

Ratliff recites the following factors that this Court must assess in exercising its discretion whether to stay one of its orders pending an appeal:  (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.[7]  Here, even a cursory analysis proves that Ratliff's motion for stay should be denied.

*First*, Ratliff has made no showing that he is likely to succeed on the merits of his appeal from this Court's order denying intervention.  Why?  Because intervention would gain him nothing in the context of the class action settlement approval process.  Intervention is not a prerequisite to participation as an objector in the process; nor is it a prerequisite to an appeal from an order granting final approval of the settlement; nor is it a prerequisite to opt out.  As the United States Supreme Court held in *Devlin v. Scardelletti*, 536 U.S. 1 (2002), an absent class member who has timely objected to the final approval of a proposed class action settlement may appeal such approval without the necessity of a motion to intervene.  Thus, absent any legitimate purpose for the intervention, the motion to appeal denial of intervention is also without merit.  It is surplusage, a multiplication of motions and a distraction from the class action settlement approval process itself, which the United States Supreme Court has determined to be sufficient, without intervention, to protect the rights of absent class members as objectors.  *Id.  See also*, *In*

---

[7] Ratliff cites *Hilton v. Braunskill*, 418 U.S. 770, 776 (1987) for these factors.  The Fifth Circuit has adopted this four-factor test.  *See Weingarten Realty Investors v. Miller*, 661 F.3d 904, 910 (5th Cir. 2011) (applying *Hilton* four-factor test and affirming the denial of a stay pending appeal).

*re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 169 (3d Cir. 2013); and *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 639 (5th Cir. 2012).

*Second*, no irreparable injury to Ratliff will occur absent a stay.  Absent a stay, the settlement approval process will go forward as scheduled, Ratliff and all other class members will have the right to opt-out, to object, to appeal any final order of approval, and/or to participate in the settlement approval process under highly evolved, long established procedures, as set forth in this Court's preliminary approval order, which follows the *Manual for Complex Litigation, Fourth*.  Intervention would not enhance those rights, or change those procedures, while a delay in those procedures, pending a futile and unnecessary appeal, would injure many others by denying them timely payments under the MDL settlement.  Mr. Ratliff wants to intervene to take discovery, and fears that by the time his appeal is determined, it will be too late to do so.  But intervention is not a prerequisite to a request for discovery.  Rather, discovery into settlement negotiations is governed by free-standing jurisprudence that has developed specifically within the class action settlement approval process.  Intervention is irrelevant to the standards and principles that govern whether, and to what extent, a class member-objector may conduct such discovery.[8]

The Federal Judicial Center's *Manual for Complex Litigation*, *Fourth* (Federal Judicial Center 2004) summarizes and recommends the best practices that have evolved over decades of federal judicial experience with the conduct of the class action settlement approval process through which proposed class action settlements are judicially evaluated for fairness, reasonableness, and adequacy under Fed. R. Civ. P. 23(e).  Two cardinal rules have been

---

[8] Indeed, were discovery allowed, it would likely be discovery by Class Counsel into Mr. Ratliff's status as a class member (standing), whether and when he authorized counsel to make the various motions that have sought to delay or derail the settlement approval process, and the included damages (if any) he has incurred which justify these efforts.

established that control the rights and options of class members. Neither is premised on formal intervention. Class members are <u>already</u> part of the settlement approval process, <u>only</u> the settling defendants and class have standing in this process, and <u>all</u> class members are equal in this process.

The first rule is that settlement class members who have not opted out may object. As the *MCL* 4th states the rule:

> *Who may object*? Any class member who does not opt out may object to settlement, voluntary dismissal, or compromise that would bind the class. Any party to the settlement may also object (for example, a shareholder of a corporation involved in the settlement).[9]

The second rule, assuming standing, is that such participation by class members only rarely extends to the taking of formal discovery; as the purpose and function of the approval process is to enable the court to reach an independent, informed and reasoned decision on the fairness, adequacy, and reasonableness of the settlement. Objectors with standing may be heard with respect to such issues, typically via briefs and argument at the formal fairness hearing, but courts have consistently declined the invitation to transform the settlement approval process into its own litigation. Accordingly, they limit discovery to what is essential "to aid the court in reaching an independent determination of fairness." *MCL* 4th, § 21.643 n. 990, quoting *In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 24, 26 (D.D.C. 2001): "Class members who object to a class action settlement do not have an absolute right to discovery; the court may in its discretion allow discovery if it will help the court determine whether the settlement is fair, reasonable, and adequate." To assist courts in making the determination as to whether to allow

---

[9] *MCL* 4th, § 21.643, citing 4 Conte & Newberg, *Newberg on Class Actions*, § 11:55.

discovery (assuming those who request it have standing to object), the *MCL* 4th articulates these overarching principles:

> Discovery should be minimal and conditioned on a showing of need, because it will delay settlement, introduce uncertainty, and might be undertaken primarily to justify an award of attorney fees to the objector's counsel.  A court should monitor post-settlement discovery by objectors and limit it to providing objectors with information central to the fairness of the proposed settlement.  *A court should not allow discovery into the settlement-negotiation process unless the objector makes a preliminary showing of collusion or other improper behavior.*[10]

The Fifth Circuit has reaffirmed these principles in *Newby v. Enron Corp.*, 394 F.3d 296 (5th Cir. 2004), citing the cases relied upon by the *MCL* 4th and more recent authorities, to require the party seeking discovery to first lay a foundation and demonstrate fraud, collusion or other improper behavior, a showing Ratliff has not alleged, much less made, and which intervention would not enhance, to warrant his quest.

In *Newby v. Enron, Corp.*, 394 F.3d at 306, the Fifth Circuit endorsed the prevalent view that objector discovery regarding class action settlement negotiations can only be justified following a showing of collusion or fraud; "formal discovery is not necessary as long as (1) the interests of the class are not prejudiced by the settlement negotiations and (2) there are substantial factual bases on which to premise settlement."  *Id.  See In re Corrugated Container Antitrust Litig.,* 643 F.2d 195, 211 (5th Cir. 1981) ("Formal discovery [is not] a necessary ticket to the bargaining table.").  *See also Vollmer v. Publishers Clearing House,* 248 F.3d 698, 708 (7th Cir. 2001)("The temptation to convert a settlement hearing into a full trial on the merits must be resisted."); *In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 24, 27–28 (D.D.C. 2001) (citing with approval cases limiting objector discovery to cases where objectors

---

[10] *MCL* 4th, § 21.643, citing *Bowling v. Pfizer*, 143 F.R.D. 141, 153 and n. 10 (S.D. Ohio 1992). [emphasis supplied]

make showing of collusion; nevertheless permitting limited discovery of documents of which parties already had possession, ensuring negligible delay); *Bowling v. Pfizer, Inc.,* 102 F.3d 777, 780–81 (6th Cir. Ohio 1996) (affirming district court's refusal to allow discovery regarding attorney fee agreements); *Duhaime v. John Hancock Mut. Life Ins. Co.*, 183 F.3d 1, 4 (1st Cir. 1999) (holding objector discovery of side agreements is limited only to situations where there is evidence of fraud); *Mars Steel Corp. v. Continental Illinois Nat'l Bank & Trust Co.*, 834 F.2d 677, 684–85 (7th Cir. 1987) (Posner, J.) (holding discovery of settlement negotiations is proper only where the party seeking it lays a foundation by adducing from other sources evidence indicating that the settlement may be collusive).

In addition to maintaining a formidable bar for discovery in connection with settlement approval, Fifth Circuit jurisprudence makes clear that there must be a nexus between the discovery sought and a type of information the court is lacking. Broad-based discovery will rarely, if ever, be permitted, and discovery regarding irrelevant subjects will never be permitted. *See, e.g.*, *Newby*; *MCL* 4th*, § 21.643. Here, the Court has guided the MDL for almost a decade, has presided over numerous trials, issued hundreds of rulings, oversaw the personal injury and wrongful death settlement, and was apprised of the settlement negotiations of this consumer settlement while they were ongoing. There is no information this Court lacks. Thus, Ratliff cannot show that it is either the denial of intervention, or the progress of the settlement approval process pending an unnecessary appeal, that threatens any harm, whether slight or irreparable, to him at all. Rather, like all other class members, he has the obligation and opportunity to play by the rules and exercise his opportunities and options under the settlement approval process in this Court. In fact, his multiple motions constitute objections, made early and often, before any of the other class members have had that opportunity.

*Third*, issuance of the stay <u>will</u> visit substantial injury upon the other parties interested in the proceeding: these parties include many thousands of members of the Vioxx consumer settlement class. These interests will be harmed by the delay of a stay: "A district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981). Mr. Ratliff does not merit an exemption from this court's authority, much less an entitlement to disrupt or delay it to the detriment of the other parties — the class and the settling defendant.

Mr. Ratliff purports to be proceeding on behalf of what he styles a "Kentucky Class," but there is no such class. The only certified class relevant to these proceedings is the certified settlement class created in this Court's Preliminary Approval Order, and it includes Kentucky residents as class members. This Court, not Mr. Ratliff, is authorized to protect their interests: "Fed. R. Civ. P. Rule 23(d) vests a district court with the authority and discretion to protect the interests and rights of class members and to ensure its control over the integrity of the settlement approval process." *Harlon v. Chrysler Corp.*, 150 F.3d 1011, 2025 (9th Cir. 1998).

*Fourth*, the public interest lies in protecting the undisrupted, uninterrupted completion of the Court-directed class action settlement approval process. Under this process, all class members have equal rights to participate, to make claims, to opt-out, to object, or to do nothing. None of them has the right, individually or purportedly on behalf of others, to disrupt or delay the proceedings for leverage, for the sake of disruption or to create other advantage. *Hanlon*, *id.* at 1025.

## **RATLIFF'S APPEAL TO THE FIFTH CIRCUIT**

On September 30, 2013, Ratliff filed a Notice of Appeal with this Court complaining of this Court's August 2, 2013 denial of his Motion to Intervene. Doc. 64487. On September 9,

2013, Merck filed a Motion to Dismiss for Lack of Appellate Jurisdiction or in the Alternative for Summary Affirmance in the Fifth Circuit urging that the Court lacks jurisdiction, but if jurisdiction was found, that the Court nevertheless affirm Your Honor's ruling. Merck's Motion to dismiss is attached as Exhibit A. Class Counsel intends to join in Merck's Motion.

## THIS COURT MAY IMPOSE AN APPEAL BOND

One order this Court may consider issuing is not an appeal stay, but an appeal bond: a bonding order under F.R.A.P. 7, in light of Mr. Ratliff's intention to pursue an appeal from the denial of his unnecessary motion to intervene. Responding to Mr. Ratliff's various motions imposes costs on Merck, Class Counsel, and indirectly on the settlement class. Under such circumstances, courts may impose, as numerous district courts have imposed, an appeal bond as a condition for the pursuit of class settlement-related appeals by objectors. F.R.A.P. 7 states, "in a civil case, the district court may require an appellant to file a bond or provide other security in any form or amount necessary to ensure payment of costs on appeal." The bond and its amount are a matter of the district court's discretion. For example, on August 28, 2013, in the *Deepwater Horizon* litigation, MDL No. 2179, Judge Barbier of this district imposed a $50,000 F.R.A.P. 7 appeal bond on the sole objector (with dubious standing) to the *Deepwater Horizon* medical class action settlement. Case 2:10-md-02179-CJB-SS Doc. 11174. *See also*, *Barnes v. FleetBoston Fin. Corp.*, 2006 U.S. Dist. LEXIS 71072, at *3-4 (D. Mass. Aug. 22, 2006); *In re Uponor, Inc.*, 2012 U.S. Dist. LEXIS 130140, at *16 (D. Minn. Sept. 11, 2012) (bond of $125,000 "reflects that the appeal will result in a significant delay of the claims process and ultimate payment to class members. Courts have approved much higher Rule 7 bonds in the class settlement context."); *In re Checking Account Overdraft Litig.*, 2012 U.S. Dist. LEXIS 18384, at *46 (S.D. Fla. Feb. 14, 2012) (requiring serial objectors to post a bond of $616,338 in

light of the "highly detrimental impact of an appeal as to the entire class").  This Court, likewise, has the discretion to require a bond be posted here.[11]  Class Counsel can compile the costs expended to date just on the notice and the additional costs which may be incurred to stay the notice should the Court so request to decide an appropriate amount of the bond.

## CONCLUSION

Based upon the foregoing, on the pleadings, briefs, motions, and orders to date relating to the class claims of Vioxx consumers, and the resulting Vioxx consumer class settlement, Class Counsel respectfully urge that this Court deny the Ratliff Motion and Amended Motion For A Stay Pending Appeal; and that this Court consider, in the exercise of its independent discretion, whether the procedural morass Ratliff attempts to create, apparently for reasons outside the procedural requisites of Rule 23, warrants the imposition of a Rule 7 appeal bond.

---

[11] *See, e.g.*, *In re Pharm. Indus. Average Wholesale Price Litig.*, 520 F. Supp. 2d 274, 279 (D. Mass. 2007) (requiring an appealing objector to post a $61,000 bond for estimated administrative costs the class would incur as a result of delay in distribution of settlement fund); *In re Wal-Mart Wage & Hour Empl. Practices Litig.*, 2010 U.S. Dist. LEXIS 21466, at *18 (D. Nev. Mar. 8, 2010) (requiring each of four appealing objectors to post a $500,000 bond in light of administrative costs and interest the class would lose as a result of the delay in compensation and injunctive relief provided under a settlement agreement); *Dennings v. Clearwire Corp.*, 2013 U.S. Dist. LEXIS 34274, at *6-7 (W.D. Wash. Mar. 11, 2013) (appeal bond included $39,150 for increased settlement administration costs).  *Fleury v. Richemont North Am., Inc.*, 2008 U.S. Dist. LEXIS 88166, at *19 (N.D. Cal. Oct. 21, 2008) ("[W]hether the appellant has shown bad faith or vexatious conduct" is pertinent); *Berry v. Deutsche Bank Trust Co. Ams.*, 632 F. Supp. 2d 300, 307 (S.D.N.Y. 2009) (same); *Dennings*, 2013 U.S. Dist. LEXIS 34274, at *4-5 (same); *In re Nutella Mktg. & Sales Practices*, 2012 U.S. Dist. LEXIS 172006, at *5 (D.N.J. Nov. 20, 2012) ; *In re Flonase Antitrust Litig.*, No. 2:08-cv-03301-AB, Dkt. No. 607 (E.D. Pa. June 20, 2013); *In re Uponor, Inc.*, 2012 U.S. Dist. LEXIS 130140, at *16 (D. Minn. Sept. 11, 2012) (bond of $125,000 "reflects that the appeal will result in a significant delay of the claims process and ultimate payment to class members.  Courts have approved much higher Rule 7 bonds in the class settlement context."); *In re Checking Account Overdraft Litig.*, 2012 U.S. Dist. LEXIS 18384, at *46 (S.D. Fla. Feb. 14, 2012) (requiring serial objectors to post a bond of $616,338 in light of the "highly detrimental impact of an appeal as to the entire class").

DATED:  September 17, 2013                    Respectfully submitted,


                                              By: */s/ Russ M. Herman*
                                              Russ M. Herman, Esquire
                                              Leonard A. Davis, Esquire
                                              HERMAN, HERMAN & KATZ, LLC
                                              820 O'Keefe Avenue
                                              New Orleans, LA  70113
                                              Phone: (504) 581-4892
                                              Fax:  (504) 561-6024
                                              ldavis@hhklawfirm.com
                                              *Plaintiffs' Liaison Counsel*
                                              *MDL 1657*
                                              *Co-Lead Class Settlement Counsel*


                                              Elizabeth J. Cabraser, Esquire
                                              LIEFF CABRASER HEIMANN &
                                                BERNSTEIN, LLP
                                              Embarcadero Center West
                                              275 Battery Street, 30th Floor
                                              San Francisco, CA  94111
                                              Phone: (415) 956-1000
                                              Fax:  (415) 956-1008
                                              *Co-Lead Class Settlement Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing has been served on Liaison Counsel, Ann B. Oldfather, and Phillip Wittmann, by U.S. mail and e-mail or by hand delivery and e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pretrial Order No. 8(B), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 17th day of September, 2013.


/s/ Leonard A. Davis
Leonard A. Davis