UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Vioxx | * | MDL Case No. 1657 |
| | * | |
| PRODUCTS LIABILITY | * | SECTION L |
| LITIGATION | * | |
| | * | JUDGE FALLON |
| *This document relates to* | * | |
| | * | MAGISTRATE JUDGE |
| *Dennis R. Harrison v. Merck Sharp & Dohme Corp.,* | * | KNOWLES |
| 2:07-cv-00905-EEF-DEK | * | |
| | * | |

*****************************************************************************

**DEFENDANT MERCK SHARP & DOHME CORP.'S
OPPOSITION TO PLAINTIFF'S MOTION TO AMEND COMPLAINT**

More than *seven years* after the filing of his lawsuit, many months after the deadlines for fact and expert discovery set by this Court expired, and in the face of Merck's pending motion for summary judgment, Plaintiff Dennis Harrison seeks to recast his case. With the filing of his Motion to Amend his Complaint, there now appear to be at least three different versions of Mr. Harrison's alleged injuries, each advanced by Mr. Harrison at different times:

- He broke his femur when he slipped on ice outside his home, as he reported to medical personnel at the time of the injury. *See* Mot. For Summ. J. [Rec. Doc. 64510] at 8-9.

- Fosamax (a different Merck medication) caused his femur to break spontaneously, and Vioxx then caused him to experience "inadequate bone healing" following the fracture, as set forth in his Fosamax and Vioxx Complaints, in his Plaintiff Profile Form, and in his deposition testimony. *See* Vioxx Compl. (Ex. 1 to Mot. for Summ. J.) at ¶¶ 26-27; N.J. Fosamax Compl. (attached hereto at Ex. A) ¶31; Pl. Profile Form (Ex. 2 to Mot. for Summ. J.) at 7; Harrison Dep. Tr. (Ex. 6 to Mot. for Summ. J.) at 201:9-204:11.

- And (as now advanced in his Motion to Amend), Vioxx caused his femur to break in 2003 by first causing his spinal fusion surgery in January 2001 to "fail," which thereupon caused the "[i]nterruption of signals normally transmitted between Plaintiff's brain and his extremities," which, in turn, caused him to "have a diminished ability to walk," which ultimately led him to fall and break his femur. Mot. to Amend ¶110.

Merck respectfully submits that the Court should deny the Motion to Amend for three reasons: First, the new allegations made by Plaintiff relating to the chain of events leading to his 2003 femur fracture are (among other inconsistencies) directly contrary to the claims he makes in his pending lawsuit against Merck in the Fosamax litigation, where he alleges that his use of Fosamax was the direct and proximate cause of his femur fracture. Plaintiff's attempt to save his Vioxx lawsuit by belatedly asserting these new and contradictory allegations against Merck in this action should be rejected. Second, Plaintiff's motion is grossly untimely. Permitting Plaintiff to fundamentally alter his injury allegations seven years into the case and after the close of fact and expert discovery would unduly prejudice Merck by causing case-specific discovery and briefing to be re-opened. Moreover, his new legal and factual theories were not recently discovered, but were available to Plaintiff at the time he filed his 2006 Complaint, and he offers no explanation or justification for the ensuing delay. Lastly, Plaintiff's proposed amendments would be futile because the new injury he asserts *pre-dates* the injury alleged in his original Complaint that is already barred by the statute of limitations.

## LEGAL STANDARDS

The standards governing the amendment of pleadings are well-settled. Federal Rule of Civil Procedure 15(a) provides that after a responsive pleading, "a party may amend its pleading only with the opposing party's written consent or the court's leave." While leave "shall be freely given when justice so requires," Fed. R. Civ. P. 15(a), "it is by no means automatic," *Addington v. Farmer's Elevator Mut. Ins. Co.*, 650 F.2d 663, 666 (5th Cir. 1981) (citing *Layfield v. Bill Heard Chevrolet Co.*, 607 F.2d 1097, 1099 (5th Cir. 1979)). Leave may be denied on account of undue delay, bad faith, dilatory motive, undue prejudice to the opposing party, or futility. *See*

*United States ex rel. Willard v. Humana Health Plan*, 336 F.3d 375, 386 (5th Cir. 2003) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

## ARGUMENT

I.  **Plaintiff's New Allegations About His Femur Fracture Contradict His Sworn Testimony, His *Lone Pine* Report and His Fosamax Complaint, and They Evidence a Dilatory Motive to Avoid Summary Judgment.**

In Plaintiff's original Complaint, he alleged that he broke his right femur in January 2003, but he did not allege that Vioxx was the cause of that injury—rather, he alleged that Vioxx caused him to experience "inadequate bone healing" following the fracture. *See* Compl. (Ex. 1 to Mot. for Summ. J.) ¶¶26, 27, 32. There was no suggestion in that Complaint that Vioxx somehow triggered a cascade of events beginning in 2001 when he had spinal surgery and leading to his femur fracture two years later. Nor was there any such suggestion in his Plaintiff Profile Form or deposition taken in this case. There, he explained that "**Fosamax was responsible for breaking the femur, and Vioxx was primarily responsible for the lack of healing.**" *See* Pl. Profile Form (Ex. 2 to Mot. for Summ. J.) at 7 (emphasis in original)); Harrison Dep. Tr. (Ex. 6 to Mot. for Summ. J.) at 201:9-204:11.[1] Mr. Harrison reiterated that view in a separate lawsuit he filed against Merck, alleging that his 2003 femur fracture was the direct and proximate result of using Fosamax, and that case is currently pending in New Jersey state court. N.J. Compl. (attached hereto at Ex. A) ¶31. And, finally, in the report of his *Lone Pine* expert submitted pursuant to Pretrial Order No. 28—a report that Mr. Harrison admits he wrote himself—there is no mention of any link between his 2001 spinal fusion surgery, or any interruption of signals from his brain, and his 2003 femur fracture.

---

[1]    As noted above, the contemporaneous medical records indicate that Mr. Harrison reported to his healthcare providers that he sustained the fracture after slipping on ice outside his home. *See* Mot. for Summ. J. at 8-9.

3

Yet, seven years into his case and after discovery has closed and a motion for summary judgment has been filed, Mr. Harrison throws aside the allegations that have driven his lawsuit up to this point and comes up with an entirely new set of facts: In his proposed amendments, he alleges that instead of slipping on the ice (as he originally told his healthcare providers), and instead of Fosamax causing his femur to break (as he has more recently claimed in his Plaintiff Profile Form, his deposition testimony, and in his other lawsuit against Merck), in fact it was Vioxx that caused his broken femur in the first place, through a long and tenuous chain of events. In short, Mr. Harrison seeks a "do-over."

Mr. Harrison has not attempted to justify or explain the reasons for his attempt to amend his Complaint or the delay inherent in that attempt, and there is nothing to indicate why his new allegations could not have been raised in his original Complaint. Nothing has changed in his medical records.[2] So, what has occurred in the last several months to motivate such a change in his story? The only development is that Merck has filed a motion for summary judgment. At this late stage in the litigation, Mr. Harrison should not be permitted to play fast and loose with the courts in this fashion, changing his story to suit the exigencies of the moment—in this instance, to save his lawsuit from summary judgment.[3] *C.f. In re Coastal Plains, Inc.*, 179 F.3d

---

[2] Indeed, a*ll* of the amendments proposed by Mr. Harrison appear to be based on facts known (or knowable) to him at the time he filed his initial Complaint. In addition to the inclusion of his new alleged injury theory, Mr. Harrison's proposed amendments primarily relate to the Warning Letter sent to Merck by the FDA in September 2001. *See* Mot. to Amend at ¶¶100, 101 (alleging "fraud" based on the 2001 Warning Letter); *id.* ¶¶106, 107, 108 (alleging "gross negligence" based on the 2001 Warning Letter). But the 2001 Warning Letter was available to Mr. Harrison at the time he filed his initial Complaint; it was widely publicized in 2001, and has been a frequent topic in the Vioxx multidistrict litigation since that time.

[3] Putting aside whether Mr. Harrison's new version of events makes any rational sense, the bad faith in maintaining his new and contradictory allegations regarding his femur fracture is apparent: he is either being dishonest with this Court or he is being dishonest with the New Jersey court overseeing his pending Fosamax suit.

197, 205 (5th Cir. 1999) (in the context of the judicial estoppel doctrine, noting the goal of protecting "'the integrity of the judicial process'[] by 'prevent[ing] parties from playing fast and loose with the courts to suit the exigencies of self interest'" (quoting *Brandon v. Interfirst Corp.*, 858 F.2d 266, 268 (5th Cir. 1988))).  Leave to amend should be denied where, as here, there is no explanation for the proposed amendment other than a dilatory motive to avoid summary judgment.  *See Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 140-42 (5th Cir. 1993) (upholding the denial of leave to amend where plaintiffs knew of the facts underlying their amendment before the action commenced, but "did not present those claims until summary judgment was imminent"); *Mitsubishi Aircraft Int'l, Inc. v. Brady*, 780 F.2d 1199, 1203 (5th Cir. 1986) (stating that failure to urge a claim which is "usually apparent at the outset of a case . . . strongly suggests either a lack of diligence . . . or a lack of sincerity"); *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 599 (5th Cir. 1981) (noting that in a case "where the movant first presents a theory difficult to establish but favorable and, only after that fails, a less favorable theory, denial of leave to amend on the grounds of bad faith may be appropriate").

**II.     The Motion Should Be Denied for Undue Delay and Prejudice to Merck.**

Even if there were no evidence of bad faith or dilatory motive, leave to amend the Complaint should be denied based on undue delay and prejudice.  Here, the delay of seven years from the initiation of the lawsuit is extreme, unnecessary, unexplained, and (if amendment is permitted) highly prejudicial to Merck, as it would require specific causation discovery to start all over again.

Mr. Harrison's request to amend comes after all discovery deadlines have passed in his case.  Pursuant to the schedule set by the Court, Merck has taken the depositions of Mr. Harrison and his physician, and has retained a medical expert who has conducted an extensive review of Mr. Harrison's records and submitted a report relating to Mr. Harrison's current injury claims.

Allowing Mr. Harrison to amend his Complaint at this late stage, and in particular to make the drastic changes that he proposes to his alleged injuries and theories of medical causation, would therefore substantially prejudice Merck, and would likely necessitate significant additional deposition discovery and expert work, with the concomitant time and expense.[4] *See Smith v. EMC Corp.*, 393 F.3d 590, 596 (5th Cir. 2004) ("A defendant is prejudiced if an added claim would require the defendant 'to reopen discovery and prepare a defense for a claim different from the [one] . . . that was before the court.'" (quoting *Duggins v. Steak'N Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999))); *Mayeaux v. La. Health Serv. & Indem. Co.*, 376 F.3d 420, 427 (5th Cir. 2004) ("'[W]hen late tendered amendments involve new theories of recovery and impose additional discovery requirements, courts [of appeals] are less likely to find an abuse of discretion due to the prejudice involved.'" (quoting *Bell v. Allstate Life Ins. Co.*, 160 F.3d 452, 454 (8th Cir. 1998))).

Moreover, although Rule 15(a) does not impose a time limit for permissive amendment, courts in this circuit have observed that "at some point, time delay on the part of a plaintiff can be procedurally fatal." *Whitaker v. City of Houston*, 963 F.2d 831, 836 (5th Cir. 1992) (quoting *Gregory v. Mitchell*, 634 F.2d 199, 203 (5th Cir. 1981)). In such a situation, the plaintiff bears the burden of showing the delay to be "'due to oversight, inadvertence, or excusable neglect,'" *id.* (quoting Gregory, 634 F.2d at 203) —a burden that Mr. Harrison does not even attempt to meet.[5] Given such extreme delay and the inherent prejudice to Merck, the amendments should be rejected.

---

[4] The prejudice to Merck is amplified by the fact that the new injuries alleged by Mr. Harrison occurred in 2001 through 2003—over a decade ago. As time elapses, the memories of medical witnesses fade and records are often lost or destroyed.

[5] The Fifth Circuit has also "emphasized" that "the fact that a defendant has filed a motion for summary judgment is significant in the determination whether a plaintiff's subsequent

6

**III.     The Motion Should Be Denied as Futile.**

Lastly, Plaintiff's belated request to amend his Complaint should be denied as futile.  As Merck has set forth in its pending motion for summary judgment, under New York law, product liability causes of action are subject to a three-year statute of limitations, which begins to run "from the date of discovery of the injury by the plaintiff or from the date when through the exercise of reasonable diligence such injury should have been discovered by the plaintiff, whichever is earlier."  N.Y. C.P.L.R. §§214-c, 214-c(2); Mot. for Summ. J. at 24-28.[6]  In its motion, Merck argued that Mr. Harrison's alleged inadequate bone healing (the injury alleged in his original Complaint) was, or should through reasonable diligence have been, discovered by the end of February 2003, and thus the limitations period for his claims expired at the end of February 2006—four months before Mr. Harrison initiated this action.  *See* Mot. for Summ. J. at 26-27.

Mr. Harrison's proposed amendments do nothing to remedy the untimeliness of his claims.  Instead, the new injury theories alleged by Mr. Harrison in his proposed amendments *pre-date* the already-untimely insufficient bone healing claim raised in his original Complaint.  *See* Mot. to Amend at ¶110 (now alleging Vioxx caused his spinal surgery in 2001 to fail, causing interruption of signals from his brain to extremities and diminished ability to walk and carry himself, which allegedly caused the January 2003 femur fracture).  If Mr. Harrison's spinal surgery failed, causing interruption of brain signals to his extremities, he surely would have

---

motion to amend is timely."  *Little v. Liquid Air Corp.*, 952 F.2d 841, 846 n.2 (5th Cir. 1992) (citing *Shivangi v. Dean Witter Reynolds, Inc.*, 825 F.2d 885, 890 (5th Cir. 1987) and *Addington*, 650 F.2d at 667).

[6]  As New York law makes clear, it is the discovery of the alleged injury that triggers the statute of limitations, not the discovery of the alleged cause of the injury.  *See Matter of N.Y. Cnty. DES Litig.*, 678 N.E.2d 474, 478 (N.Y. 1997); Mot. for Summ. J. at 24-25.

discovered that injury well before his femur fracture in January 2003, if not because of reports from his doctors, by his allegedly unsteady gait. In short, such an injury would have triggered the limitations period to commence *before* the already time-barred inadequate bone healing following the January 2003 femur fracture. Because Mr. Harrison's proposed amendments would be futile in the face of the applicable statute of limitations, his motion should be denied. *See Whitt v. Stephens County*, 529 F.3d 278, 282 (5th Cir. 2008) (upholding denial of leave to amend where "that the statute of limitations rendered amendment of the complaint futile").

## CONCLUSION

For the foregoing reasons, Merck respectfully submits that the proposed amendments should be denied.

Dated: September 18, 2013

Respectfully submitted,

By: */s/ Dorothy H. Wimberly*
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana 70130
Phone: 504-581-3200
Fax:    504-581-3361

Defendants' Liaison Counsel

—and—

Douglas R. Marvin
M. Elaine Horn
Emily Renshaw Pistilli
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Phone: 202-434-5000
Fax:    202-434-5029

Attorneys for Merck Sharp & Dohme Corp.

1138197v1

## **CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Opposition has been served on Plaintiff Dennis Harrison by email and by Federal Express at:

>601 W. Brown Street
>Iron Mountain, MA 49801

I also hereby certify that the above and foregoing Opposition has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail, upon Liaison Counsel Ann Oldfather by e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 18th day of September, 2013.

>*/s/ Dorothy H. Wimberly*
>Dorothy H. Wimberly, 18509
>STONE PIGMAN WALTHER
>WITTMANN L.L.C.
>546 Carondelet Street
>New Orleans, Louisiana  70130
>Phone:  504-581-3200
>Fax:     504-581-3361
>dwimberly@stonepigman.com
>
>Defendants' Liaison Counsel

1138197v1