The Lanier Law Firm, PLLC
126 East 56th Street, 6th Floor
New York, NY 10022
(212) 421-2800 telephone
(212) 421-2878 facsimile
Attorneys for Plaintiff

| | |
|---|---|
| **DENNIS HARRISON,**<br><br>   **Plaintiff,**<br><br>v.<br><br>**MERCK SHARP & DOHME CORP.**<br><br>   **Defendant.** | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION: ATLANTIC COUNTY<br><br>DOCKET NO.:<br>Case No. 282<br><br>CIVIL ACTION<br><br>COMPLAINT &<br>JURY TRIAL DEMANDED |

Plaintiff, Dennis Harrison, by and through her attorneys, alleges the following upon information and belief (including an investigation made by and through Plaintiff's counsel), except those allegations that pertain to Plaintiff, which are based on personal knowledge.

## BACKGROUND

1. This is an action for damages suffered by Plaintiff, Dennis Harrison, as a direct and proximate result of the Defendant's negligent and wrongful conduct in connection with the design, development, manufacture, testing, packaging, promoting, marketing, distribution, labeling, and/or sale of the pharmaceutical product known as Fosamax (hereinafter referred to as "Fosamax" or "the subject product").

2. At all times material hereto, Fosamax was designed, developed, manufactured, tested, packaged, promoted, marketed, distributed, labeled, and/or sold by Defendant.

## JURISDICTION AND VENUE

3. This is an action for damages that exceed the jurisdictional minimum of this Court.

4. Venue is proper in this County pursuant to Rule 4:3-2 in that Defendant, MERCK & CO., INC. (hereinafter referred to as MERCK), does business in Atlantic County, New Jersey.

5. This suit is brought under the New Jersey Products Liability Act, N.J.S.A. 2A:58C-1, *et seq.* ("Products Liability Act"), and the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, *et seq.* ("Consumer Fraud Act"), to recover damages and other relief, including the costs of suit and reasonable attorneys' and expert fees, for the injuries Plaintiff has sustained as a result of Defendant's acts and omissions in violation of New Jersey's Products Liability Act and Consumer Fraud Act.

## PARTIES

6. Plaintiff, Dennis Harrison, is a resident of Iron Mountain, MI, though at the time of his femur fracture he was a resident of Kingston, NY.

7. The Defendant, MERCK, is a New Jersey corporation, which has its principal place of business at One Merck Drive, P.O. Box 100, Whitehouse Station, New Jersey 08889-0100 and does business in Atlantic County.

8. At all times material hereto, the Defendant, Merck & Co., Inc. was engaged in the business of designing, developing, manufacturing, testing, packaging, promoting, marketing, distributing, labeling, and/or selling Fosamax.

9. Upon information and belief, decisions and conduct concerning the research, design, manufacture, marketing, advertisement and promotion of Fosamax were centralized in Defendant's New Jersey offices. Accordingly, the acts and omissions complained of herein emanated from New Jersey.

## FACTUAL ALLEGATIONS

10. Defendant knew of the significant risk of dental and oral complications caused by ingestion of Fosamax, but Defendant did not adequately and sufficiently warn consumers, including Plaintiff, or the medical community, of such risks.

11. Consumers, including Plaintiff, Dennis Harrison, who have used Fosamax for treatment of osteoporosis and osteopenia, have several alternative safer products available to treat this condition.

12. As a result of Defendant's actions, Plaintiff, Dennis Harrison, and her prescribing physicians were unaware, and could not have reasonably known or have learned through reasonable diligence, that Plaintiff had been exposed to the risks identified in this complaint, and that those risks were the direct and proximate result of Defendant's acts, omissions, and misrepresentations.

13. As a direct result, Plaintiff, Dennis Harrison, was prescribed and ingested Fosamax and has been permanently and severely injured. Plaintiff, Dennis Harrison, requires and will require ongoing medical care and treatment.

## Defendant's Development and Marketing of Fosamax

14. Alendronate sodium and alendronate sodium/cholecalciferol were designed, formulated, patented, marketed, sold and distributed by the Defendant under the brand names "Fosamax" and "Fosamax Plus D."

15. At all relevant times Defendant was responsible for, or involved in, designing, manufacturing, marketing, advertising, distributing, and selling Fosamax.

16. In September 1995, Fosamax was approved for marketing and sale in the treatment of osteoporosis and Paget's disease.

17. Fosamax falls within a class of drugs known as bisphosphonates. Bisphosphonates are used for treating bone conditions such as osteoporosis and Paget's disease. Other drugs within this class such as Aredia and Zometa are also used as an adjunct to chemotherapy but are not indicated for use in non-cancerous conditions such as osteoporosis.

18. There are two classes of bisphosphonates: the N-containing (nitrogenous) and non-N-containing (non-nitrogenous) bisphosphonates. The nitrogenous bisphophonates include the following: pamidronate (Aredia); ibandronate (Bondronat); and alendronate (Fosamax). The non-nitrogenous bisphosphonates include the following: etridonate (Didronel); clodronate (Bonefos and Loron); and tiludronate (Skelid). Alendronate, like the others, contains a nitrogen atom, whereas etridonate, clodronate, and tiludronate do not. The PDR for Fosamax confirms that the molecule contains a nitrogen atom.

19. Recent studies report the frequent and common occurrence of osteonecrosis of the jaw within the nitrogenous bisphosphonates used for chemotherapy. As with its reported and acknowledged side effects concerning irritation, erosion, and inflammation of the upper

gastrointestinal tract, Merck knew or should have know that Fosamax, as a nitrogenous bisphosphonate, shared a similar adverse event profile to the other nitrogenous bisphosphonates.

20. Merck knew and or should have known that bisphosphonates, including Fosamax, inhibit endothelial cell function. Similarly, Merck knew or should have known that bisphosponates also inhibit vascularization of the affected area and induce ischemic changes specific to patients' mandibles (lower jaws) and maxillae (upper jaws) and that these ischemic changes appear to be cumulative in nature.

21. Merck also knew or should have known that these factors combine to create a compromised vascular supply in the affected area. As a result, a minor injury or disease can develop into a non-healing wound. That in turn can progress to widespread necrosis (bone death) and osteomyelitis (inflammation of bone marrow).

22. Dentists are now being advised by state dental associations to refrain from using any invasive procedure (such as drilling a cavity) for any patient taking Fosamax.

23. While Fosamax might help bone density in some people, experts now say its benefits for preventing bone fracture are minimal, and if taken over long periods of time, the drug can make bones more brittle and increase the risk of fracture.

24. Fosamax remains in the body for years after ingestion.

25. Shortly after Defendant began selling Fosamax, reports of osteonecrosis of the jaw and other dental complications among users began surfacing, indicating that Fosamax shared the class effects of the other nitrogenous bisphosphonates. Despite this knowledge, Defendant failed to implement further study of the risk of osteonecrosis of the jaw relative to Fosamax. Rather than evaluating and verifying the safety of Fosamax with respect to

osteonecrosis of the jaw, Defendant proposed further uses of Fosamax, such as Fosamax -D, and sought to extend the exclusivity period of Fosamax through 2018.

26.    Rather than warn patients and the medical community, and despite knowledge by Defendant of increased risk of osteonecrosis of the jaw on patients using Fosamax, Defendant continued and continues to defend and aggressively market Fosamax, while downplaying any unfavorable findings and overstating its benefits.

27.    Fosamax is the world's top-selling bisphosphonate and Defendant's second-best selling drug, with more than 22 million prescriptions in 2005 amounting to $3.2 billion in sales.

### Plaintiff's Use Of Fosamax

28. Plaintiff, Dennis Harrison, was prescribed and took Fosamax from on or about January, 1998 and used Fosamax continuously up to and including the date of her injury.

29. Plaintiff, Dennis Harrison, used Fosamax as prescribed and in a foreseeable manner.

30. Plaintiff, Dennis Harrison, used Fosamax that had been provided to her in a condition that was substantially the same as the condition in which it was manufactured and sold.

31. As a direct and proximate result of using Fosamax, Plaintiff was diagnosed with a femur fracture of the right leg on or about January 11, 2003.

32. Plaintiff, Dennis Harrison, as a direct and proximate result of using Fosamax, suffered severe mental and physical pain and suffering and has sustained permanent injuries and emotional distress.

33. Plaintiff, Dennis Harrison, would not have used Fosamax had Defendant properly disclosed the risks associated with the drug.

### COUNT I
### Products Liability Act – Failure to Warn

34. The foregoing paragraphs of this Complaint are realleged and incorporated by reference.

35. Defendant designed, tested, manufactured, marketed, sold and/or distributed Fosamax. As such, it had a duty to warn the using public, including Plaintiff, of the health risks associated with using the subject product.

36. The subject product was under the exclusive control of Defendant and was unaccompanied by appropriate warnings regarding the health risks associated with its use, including spontaneous femur fracture. The warnings given did not accurately reflect the risk, incidence, symptoms, scope or severity of such injury to the consumer. The promotional activities of Defendant further diluted or minimized the warnings given with the product.

37. The subject product was defective and unreasonably dangerous when it left the possession of the Defendant in that it contained warnings insufficient to alert Plaintiff to the dangerous risks and reactions associated with it, including, but not limited to spontaneous femur fracture. Even though Defendant knew or should have known of the risks and reactions associated with the subject product, it still failed to provide warnings that accurately reflected the signs, symptoms, incidence, scope, or severity of these risks.

38. Plaintiff, Dennis Harrison, used the subject product for its intended purpose, i.e. for the prevention or treatment of osteoporosis.

39. Plaintiff, Dennis Harrison, could not have discovered any defect in the subject product through the exercise of reasonable care.

40. Defendant, as a manufacturer of pharmaceutical drugs, is held to the level of knowledge of an expert in the field, and further, Defendant had knowledge of the dangerous risks and side effects of the subject product.

41. Plaintiff, Dennis Harrison, did not have the same knowledge as Defendant and no adequate warning was communicated to her.

42. Defendant had a continuing duty to warn consumers, including Plaintiff, of the dangers associated with the subject product. By negligently and/or wantonly failing to adequately warn of the dangers of use of the subject product, Defendant breached its duty.

43. Although Defendant knew of the defective nature of the subject product, they continued to design, manufacture, market, and sell it without providing accurate, adequate, and complete warnings concerning its use so as to maximize sales and profits at the expense of the public health and safety, in knowing, conscious, and deliberate disregard of the foreseeable harm caused by the subject product.

44. As a direct and proximate result of the Defendant's failure to adequately warn or other wrongdoing and actions of Defendant described herein, Plaintiff, Dennis Harrison, has sustained serious and permanent injuries, and will continue to suffer injury, harm, and economic loss.

WHEREFORE, Plaintiff, Dennis Harrison, demands judgment against Defendant for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

## COUNT II
### Products Liability Act – Defective Design

45. The foregoing paragraphs of this Complaint are realleged and incorporated by reference.

46. Defendant is the manufacturer, seller, distributor, marketer, and/or supplier of the subject product, which is defective and unreasonably dangerous to consumers.

47. The subject product was designed, manufactured, sold, distributed, supplied, marketed, and/or promoted by Defendant, and was expected to reach and did reach consumers, including Plaintiff, without substantial change in the condition in which it was manufactured and sold by Defendant.

48. The subject product was defective in its design and was unreasonably dangerous in that its foreseeable risks exceeded the benefits associated with its design or formulation.

49. Although Defendant actually knew of the defective nature of the subject product, it continued to design, manufacture, market, and sell it so as to maximize sales and profits at the expense of the public health and safety, in knowing, conscious and deliberate disregard of the foreseeable harm caused by the subject product.

50. As a direct and proximate result of the design defects of the subject product, Plaintiff, Dennis Harrison, has sustained serious and permanent injuries, and will continue to suffer, injury, harm, and economic loss.

WHEREFORE, Plaintiff, Dennis Harrison, demands judgment against Defendant for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

### COUNT III
### Products Liability Act – Breach of Implied Warranty

51. The foregoing paragraphs of this Complaint are realleged and incorporated by reference.

52. Defendant manufactured, marketed, sold, and distributed the subject product specifically for the prevention of osteoporosis.

53. At the time Defendant marketed, sold, and distributed the subject product for use by Plaintiff, Defendant knew of the purpose for which it was intended and

impliedly warranted the subject product to be of merchantable quality and safe and fit for such use.

54. Contrary to such implied warranty, the subject product was not of merchantable quality and was not safe or fit for its intended use.

55. Plaintiff purchased and used the subject product for the prevention of osteoporosis.

56. Plaintiff reasonably relied on the skill, superior knowledge, and judgment of Defendant as to whether the subject product was of merchantable quality and safe and fit for its intended use.

57. Due to Defendant's wrongful conduct as alleged herein, Plaintiff could not have known about the risks and side effects associated with the subject product until after Plaintiff used it.

58. As a direct and proximate result of Defendant's breach of implied warranty, Plaintiff has sustained serious and permanent injuries, and will continue to suffer, injury, harm, and economic loss.

WHEREFORE, Plaintiff demands judgment against each Defendant, individually, jointly and severally for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

## COUNT IV
### Breach of Express Warranty

59. The foregoing paragraphs of this Complaint are realleged and incorporated by reference.

60. Defendant expressly represented to Plaintiff, other consumers and the medical community that Fosamax was safe and fit for its intended purposes, that it was of merchantable quality, that it did not produce any dangerous side effects, and that it was adequately tested.

61. Fosamax does not conform to Defendant's express representations because it is not safe, has numerous and serious side effects, and causes severe and permanent injuries.

62. At all relevant times Fosamax did not perform as safely as an ordinary consumer would expect, when used as intended or in a reasonably foreseeable manner.

63. Plaintiff, Dennis Harrison, other consumers and the medical community relied upon Defendant's express warranties.

64. As a direct and proximate result of Defendant's express warranties of the subject product, Plaintiff, Dennis Harrison, has sustained serious and permanent injuries, and will continue to suffer, injury, harm, and economic loss.

65. WHEREFORE, Plaintiff, Dennis Harrison, demands judgment against Defendant for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

## COUNT V
### Punitive Damages Under Common Law and Products Liability Act

66. The foregoing paragraphs of this Complaint are realleged and incorporated by reference.

67. Although Defendant knew or recklessly disregarded the fact that the subject product causes debilitating and potentially lethal side effects, Defendant continued to market

the subject product to consumers, including Plaintiff, Dennis Harrison, without disclosing these side effects.

68. Defendant knew of the subject product's defective nature, as set forth herein, but continued to design, manufacture, market, and sell it so as to maximize sales and profits at the expense of the health and safety of the public, including Plaintiff, in conscious and/or negligent disregard of the foreseeable harm caused by the subject product.

69. Defendant intentionally concealed or recklessly failed to disclose to the public, including Plaintiff, the potentially life-threatening side effects of the subject product to ensure their continued and increased sales. This intentional and/or reckless failure to disclose information deprived Plaintiff, Dennis Harrison, of the information necessary for her to weigh the true risks of using the subject product against the benefits.

70. Defendant's aforementioned conduct was committed with knowing, conscious, and deliberate disregard for the rights and safety of consumers such as Plaintiff, thereby entitling Plaintiff to punitive damages in an amount appropriate to punish Defendant and it from similar conduct in the future.

WHEREFORE, Plaintiff, Dennis Harrison, demands judgment against Defendant for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

## COUNT VI
### Violations of New Jersey Consumer Fraud Act

71. The foregoing paragraphs of this Complaint are realleged and incorporated by reference.

72.     The subject product is "merchandise" as that term is defined by N.J.S.A. 56:8-1(c).

73.     Defendant is the manufacturer, marketer, and/or distributor of the subject product.

74.     Unfair methods of competition and unfair or deceptive acts or practices are defined and declared unlawful in N.J.S.A. 56:8-1, *et seq.*:

**56:8-2. Fraud, etc., in connection with sale or advertisement of merchandise or real estate as unlawful practice.**

The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice.

75.     Defendant knew or should have known that the use of the subject product causes serious and potentially life-threatening side effects.

76.     Defendant's promotion of the subject product, which included misrepresentations and the active concealment of information about its defects and dangers, created or reinforced a false impression as to its safety and placed all users of the subject product at risk for serious and potentially lethal side effects.

77.     Defendant's misrepresentations and active concealment of information about the defects and dangers of the subject product were undertaken with the intent that the general public, including Plaintiff, would rely on such misrepresentations and omissions.

14

78. Plaintiff was prescribed and used the subject product primarily for personal, family, or household purposes and suffered an ascertainable loss of money as a result of Defendant's use or employment of the methods, acts, or practices alleged herein.

79. The aforesaid promotion of the subject product by Defendant constitutes an unconscionable commercial practice, deception, false pretense, misrepresentation, and/or the knowing concealment, suppression, or omission of material facts with the intent that others rely upon such concealment, suppression, or omission in connection with the sale or advertisement of merchandise or services by Defendant, in violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, *et seq.*

80. Defendant knew of the growing public acceptance of the misinformation, or incomplete information, and misrepresentations regarding the safety and efficacy of the subject product, but remained silent due to the large profits being earned.

81. As a direct and proximate cause of Defendant's acts of consumer fraud, Plaintiff, Dennis Harrison, has suffered ascertainable loss — economic loss that includes the purchase price of the subject product and other out-of-pocket healthcare related costs — for which Defendant is liable to Plaintiff for treble her actual damages.

WHEREFORE, Plaintiff, Dennis Harrison, demands judgment against Defendant for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

## RELIEF REQUESTED

WHEREFORE, Plaintiff prays for judgment as follows:

a. Awarding actual damages to Plaintiff incidental to her purchase and ingestion of the subject products in an amount to be determined at trial;

b. Awarding treble and/or punitive damages to Plaintiff;

c. Awarding pre-judgment and post-judgment interest to Plaintiff;

d. Awarding the costs and expenses of this litigation to Plaintiff;

e. Awarding reasonable attorneys' fees and costs to Plaintiff as provided by law; and

f. Granting such other relief as the Court deems necessary, just and proper.

## JURY TRIAL DEMANDED

The Plaintiff demands a trial by jury on all issues.

Dated: February 22, 2012

                                          **THE LANIER LAW FIRM, PLLC**

                                          By: *Richard Meadow*
                                               Mark Lanier (#11934600)
                                               Rick Meadow (#1963578)
                                               Catherine Heacox (#2971455)
                                               126 E. 56th Street, 6th Floor
                                               New York, New York 10022
                                               Telephone: (212) 421-2800

                                          **Attorneys for Plaintiff**

## CERTIFICATION PURSUANT TO R. 4:5-1

Plaintiff, by her attorneys, hereby certifies that the matter in controversy is not the subject of any other pending or contemplated judicial or arbitration proceedings. Plaintiff is not currently aware of any other parties that should be joined in this particular action. In addition, Plaintiff recognizes her continuing obligation to file and serve on all parties and the Court an amended certification if there is a change in the facts stated in this original certification.

**Dated:** February 22, 2012

THE LANIER LAW FIRM, PLLC

By: *Richard I Meadow*
Mark Lanier (#11934600)
Rick Meadow (#1963578)
Catherine Heacox (#2971455)
126 E. 56th Street, 6th Floor
New York, New York 10022
Telephone: (212) 421-2800
**Attorneys for Plaintiff**

## DESIGNATION OF TRIAL COUNSEL

Pursuant to R. 4:25-4, Richard Meadow is hereby designated as trial counsel in this matter.

Dated: February 22, 2012

THE LANIER LAW FIRM, PLLC

By: *Richard Meadow* (signature)

Mark Lanier (#11934600)
Rick Meadow (#1963578)
Catherine Heacox (#2971455)
126 E. 56th Street, 6th Floor
New York, New York 10022
Telephone: (212) 421-2800

**Attorneys for Plaintiff**

## CERTIFICATION OF NOTICE

Pursuant to N.J.S.A. 56:8-20, Plaintiff is mailing a copy of this Complaint and Jury Demand to the Office of the Attorney General, CN-006, Trenton, New Jersey, within ten (10) days of the filing of this Complaint and Jury Demand.

Dated: February 22, 2012

THE LANIER LAW FIRM, PLLC

By: *Richard P Meadow*
Mark Lanier (#11934600)
Rick Meadow (#1963578)
Catherine Heacox (#2971455)
126 E. 56th Street, 6th Floor
New York, New York 10022
Telephone: (212) 421-2800

**Attorneys for Plaintiff**