UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: VIOXX<br>PRODUCTS LIABILITY LITIGATION | MDL NO. 1657<br><br>SECTION L<br><br>JUDGE FALLON<br>MAG. JUDGE KNOWLES |

THIS DOCUMENT RELATES TO:   *Poole v. Eichholz Law Firm, P.C., et al.,*
                            *No. 11-1546*

## ORDER & REASONS

Before the Court is Class Counsel's Motion for Award of Attorneys' Fees, Reimbursement of Costs, and Incentive Payment. (Rec. Doc. 64531). The Court has reviewed the parties' memorandum and the applicable law, heard oral argument, and now issues this order.

### I. BACKGROUND

On August 27, 2013, the Court entered a Final Order and Judgment Approving Class Settlement with Defendants (Rec. Doc. 64561) in *Poole v. Eichholz Law Firm, P.C.*, 11-1546. The background of the litigation was summarized in that order. At the final Fairness Hearing, the Court deferred resolution of the attorneys' fees issue and scheduled a separate hearing on September 3, 2013. (Rec. Doc. 64562).

### II. PRESENT MOTION

Class Counsel Mark Tate, Dorian Britt, and Tate Law Group (collectively "Class Counsel") move for the award of attorneys' fees, reimbursement of costs, and award of an incentive payment. (Rec. Doc. 64531). Specifically, Class Counsel assert that an award of $43,867.43 in attorneys' fees and costs is both fair and reasonable and that Class Representative

1

Verie Poole should receive an incentive award of $1,000 for the time and effort she spent on the case.

### III.     LAW & ANALYSIS

#### A.     Procedure

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." FED. R. CIV. P. 23(h). First, "[a] claim for an award must be made by motion under Rule 54(d)(2), [and n]otice of the motion must be served on all parties and . . . directed to class members in a reasonable manner." FED. R. CIV. P. 23(h)(1). Second, Rule 54 requires that such a motion

> (i)   be filed no later than 14 days after the entry of judgment;
> (ii)  specify the judgment and the statute, rule, or other grounds entitling the movant to the award;
> (iii) state the amount sought or provide a fair estimate of it; and
> (iv)  disclose, if the court so orders, the terms of any agreement about fees for the services for which the claim is made.

FED. R. CIV. P. 54(b). Third, Rule 54 further requires that "[s]ubject to Rule 23(h), the court must, on a party's request, give an opportunity for adversary submissions on the motion in accordance with Rule 43(c) or 78." FED. R. CIV. P. 54(d)(2)(c).

Here, the procedural requirements are met. First, Class Counsel state that notice of the motion was delivered to all Class Members who submitted a claim form. Second, Class Counsel's motion was timely, it referenced the applicable grounds for the award, it provided the amount sought, and it described the applicable contractual terms. Third, the Court has not received any opposition to the motion, even though the motion was filed on August 9, 2013, nearly a month prior to the September 3, 2013, hearing.

B.       **Fairness, Reasonableness, & Adequacy**

Attorneys' fees and costs, authorized by law or the parties' agreement, must be reasonable. FED. R. CIV. P. 23(h). "The decision of an award of attorney fees in a common-fund case is committed to the sound discretion of the trial court, which must consider the unique contours of the case." MANUAL FOR COMPLEX LITIGATION § 14.121 (4th ed. 2004).

As this Court has previously noted:

> In reaction to the difficulties with the lodestar method, courts turned to awarding a percentage of the recovered common benefit fund as attorneys' fees. The popularity of this method gained momentum following the publication of the aforementioned Third Circuit Task Force report in 1985. Recognizing the "contingent risk of nonpayment" in such cases, courts have found that class or lead counsel ought to be compensated "both for services rendered and for risk of loss or nonpayment assumed by carrying through with the case." *In re Combustion, Inc.*, 968 F. Supp. 1116, 1132 (W.D. La.1997) (summarizing the various methods used to calculate attorneys' fees); *see* [*In re Cabletron Sys., Inc. Sec. Litig.*, 239 F.R.D. 30, 37 (D.N.H. 2006)] (stating that the percentage method "allows courts to award fees from the fund in a manner that rewards counsel for success and penalizes it for failure") (quotation omitted); *see also* Samuel R. Berger, *Court Awarded Attorneys' Fees: What is 'Reasonable'?*, 126 U. PA. L. REV. 281 (1977). Moreover, courts find that the percentage method provides more predictability to attorneys and class members or plaintiffs, encourages settlement, and avoids protracted litigation for the sake of racking up hours, thereby reducing the time consumed by the court and the attorneys. *See* [Vaughn R. Walker & Ben Horwich, *The Ethical Imperative of a Lodestar Cross–Check: Judicial Misgivings About "Reasonable Percentage" Fees in Common Fund Cases*, 18 GEO. J. LEGAL ETHICS 1453, 1456–57 (2005)] (citing *In re Activision Sec. Litig.*, 723 F.Supp. 1373, 1378 (N.D. Cal.1989)); *accord* [*In re Diet Drugs*, 582 F.3d 524, 540 (3d Cir. 2009)].
>         While the United States Supreme Court has approved the percentage method in common fund cases, it has never formally adopted the lodestar method in common fund cases. *See Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 773–74 (11th Cir.1991) (reading *Blum v. Stenson*, 465 U.S. 886, 900 n. 16, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984), as the Supreme Court's "acknowledgment" of the percentage method in common fund cases); *In re*

> *Prudential–Bache Energy Income P'ships Sec. Litig.*, MDL No.
> 888, 1994 WL 150742, (E.D. La. Apr. 13, 1994) (tracing the
> history of the various methods). Conversely, the Fifth Circuit
> appears to be the only Court of Appeals that has not explicitly
> endorsed the percentage method. [MANUAL FOR COMPLEX
> LITIGATION § 14.121 (4th ed. 2004)]. However, neither has the
> Fifth Circuit "explicitly disapproved of the percentage method of
> calculating fees in common fund cases." *In re OCA, Inc. Sec. &
> Derivative Litig.*, No. 05–2165, 2009 WL 512081, at *18 (E.D. La.
> Mar. 2, 2009) (emphasis added). Therefore, the Fifth Circuit
> appears to tolerate the percentage method, so long as the *Johnson*
> framework is utilized to ensure that the fee awarded is reasonable.
> *See id.*; *Strong v. BellSouth Telecomms., Inc.*, 137 F.3d 844, 851–
> 52 & n. 5 (5th Cir.1998); *Forbush v. J.C Penney Co.*, 98 F.3d 817,
> 823–25 (5th Cir.1996).
>
> Accordingly, numerous district courts in this Circuit have
> applied a "blended" percentage method to determine a reasonable
> fee award, while staying within the *Johnson* framework. *See, e.g.,
> In re OCA,* 2009 WL 512081, at *19; *In re Enron Corp. Sec.,
> Derivative & ERISA Litig.,* 586 F.Supp.2d 732, 766, 778 (S.D.
> Tex.2008); *Turner v. Murphy Oil USA, Inc.,* 472 F. Supp. 2d 830,
> 859–61 (E.D. La.2007); *In re Bayou Sorrel Class Action,* No. 04–
> 1101, 2006 WL 3230771, at *3 (W.D. La. Oct. 31, 2006); *In re
> Educ. Testing Serv. Praxis Principles of Learning & Teaching:
> Grades 7–12 Litig.,* 447 F. Supp. 2d 612, 628–29 (E.D. La.2006);
> *Batchelder v. Kerr–McGee Corp.,* 246 F.Supp.2d 525, 531 (N.D.
> Miss.2003); *In re Combustion, Inc.,* 968 F. Supp. at 1135–36; *In re
> Catfish Antitrust Litig.,* 939 F. Supp. 493, 499–501 (N.D.
> Miss.1996).

*In re Vioxx Prods. Liab. Litig.*, 760 F. Supp. 2d 640, 651-52 (E.D. La. 2010). As it did in *In re Vioxx Products Liability Litigation*, quoted above, the Court finds that the blended percentage approach for calculating reasonable common benefit attorneys' fees is appropriate here, as well. In doing so, the Court will (1) "determine the valuation of the benefit received by the claimants and then select an initial benchmark percentage," (2) "determine whether the benchmark should be adjusted based on the application of the *Johnson* factors to the particular circumstances of this case," and (3) "conduct a rough lodestar analysis to cross-check the reasonableness of the percentage fee award," however it must also note that "[t]he lodestar analysis is not undertaken

4

to calculate a specific fee, but only to provide a broad cross check on the reasonableness of the fee arrived at by the percentage method." *Id.* at 652.

### 1.     Value of Benefit & Benchmark Percentage

As an initial matter, the Court must determine the value of the benefit received by the claimants. Here, the Class Settlement created a $95,000 benefit. The Court finds that this is the appropriate amount for calculation of a reasonable percentage of common benefit fees.

The Court must then determine an initial benchmark percentage. The Court must not simply rubber-stamp the proposed figure, but instead attempt to arrive at an independent and justified reasonable percentage that is appropriate under the specific circumstances presented in each case. Courts routinely use empirical studies of attorneys' fees in class action settlements when computing the appropriate benchmark percentage. *See Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 863 (E.D. La. 2007). One such study noted:

> [D]istrict courts awarded fees over a broad range when they used the percentage-of-the-settlement method . . . with or without a lodestar cross-check and the fee percentages were ascertainable. These fee awards are exclusive of awards for expenses whenever the awards could be separated by examining either the district court's order or counsel's motion for fees and expenses (which was 96 percent of the time). The awards ranged from 3 percent of the settlement to 47 percent of the settlement. The average award was 25.4 percent and the median was 25 percent. Most fee awards were between 25 percent and 35 percent, with almost no awards more than 35 percent.

Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Award*, 7 J. EMPIRICAL LEGAL STUD. 811, 833 (2010) . The *Manual for Complex Litigation* states that a fee of 25% of a common fund "represents a typical benchmark." *See* MANUAL FOR COMPLEX LITIGATION § 14.121. However, scholars note that "a scaling effect exists, with fees constituting a lower percent of the client's recovery as the client's recovery increases." Theodore Eisenberg &

Geoffrey P. Miller, *Attorney Fees in Class Action Settlements: An Empirical Study,* 1 J. EMPIRICAL LEGAL STUD. 27, 28 (2004). In other words, the lower the recovery, the higher the percentage. Here, Class Counsel has requested fees of 33% of the settlement fund. Given the low amount of recovery, the Court finds that this is an appropriate benchmark.

### 2.     Consideration of the *Johnson* Factors

In awarding attorneys' fees and costs, the Court must employ the *Johnson* framework as the basis of its analysis, it must not proceed in a summary fashion, and it must set an amount that "can be said to be just compensation." *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 642 (5th Cir. 2012). The *Johnson* factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill required to perform the legal service adequately; (4) the preclusion of other employment by the attorney because he accepted this case; (5) the customary fee for similar work in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 642 n.25 (5th Cir. 2012) (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir.1974), *overruled on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 103 L.Ed.2d 67 (1989)).

The Court finds that the *Johnson* factors support the requested fee in this instance. First, the amount of time and labor required was significant in light of the relatively low recovery possible for each of the Class Members. Second, while hardly novel, the rules that govern short-term loans and attorney-client relationships are sufficiently complex. Third, considerable skill was required of counsel in this case, both in coordinating the litigation and negotiating an adequate settlement. Fourth, the number of potential class members was uncertain at the time this

action was filed, requiring counsel to remain unencumbered by other obligations. Fifth, the fee here, as noted above, is commensurate with the fees in other similar actions. Sixth, the fee is contingency-based, and counsel risked the possibility of no recovery whatsoever. Seventh, time limitations do not appear to be a relevant factor, and neither militate for or against the proposed fee. Eighth, the amount involved was relatively low and there was a possibility that no recovery would be obtained. Ninth, the attorneys here had significant experience, strong reputations, and adequate ability. Tenth, the relatively low amounts involved and uncertain class size made the case relatively undesirable. Eleventh, counsel was actively engaged with the Class Representative throughout the litigation and, to a lesser extent, also engaged with the other Class Members. Twelfth, the award allows claimants to recover approximately 75% of their loss. Based on its analysis of the *Johnson* factors, the Court concludes that any adjustment, either upward or downward, to the benchmark percentage of 33% is not appropriate here.

### 3. Lodestar Cross Check

The Court must next conduct a lodestar cross check to determine the appropriateness of the benchmark percentage in this case. "In recognition of the noted disadvantages of the lodestar method as the principle means for determining attorneys' fees, such as the taxing of judicial resources by examining every time entry and billing rate for each attorney, a lodestar analysis which is rough and more abbreviated is appropriate for a cross check." *Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 867 (E.D. La. 2007).

Class Counsel attests that it routinely charges the following rates for legal work: $400 per hour for partners, $250 per hour for senior associates, $175 per hour for junior associates, and $75 per hour for paralegals and assistants. (Rec. Doc. 64531-2 at 2). While the firm "did not maintain hourly records of the time its employees spent working on this case," the following

7

have been estimated: 30 hours spent by partners, 60 hours spent by senior associates, 20 hours spent by junior associates, and 25 hours spent by paralegals and assistants. *Id*. at 2-3. The Court, accepting these rates and these time estimates, calculates a combined hourly fee of $32,375. Thus, a fee of 33%, or $31,350, appears to be reasonable.

### C. Expenses

In addition to the proposed attorneys' fees, Class Counsel seeks reimbursement for $12,201.08 in expenses. *Id*. at 5. The Court has reviewed the materials submitted, and finds an adequate basis for the reimbursement of $8,493.08 of these expenses, excluding the costs of experts, a pilot, and a car service.

### D. Incentive Payment

As this Court has previously noted:

> Courts "commonly permit payments to class representatives above those received in settlement by class members generally." *Smith v. Tower Loan of Miss., Inc.*, 216 F.R.D. 338, 367-68 (S.D. Miss. 2003); *see In re Catfish Antitrust Litig.*, 939 F.Supp. at 503-04. [Scholars] have also performed an empirical study of incentive payments to class representatives and have identified several justifications. *See* Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action Plaintiffs: An Empirical Study*, 53 UCLA L. REV. 1303 (2006). Class representatives must be familiar with the case in order to be adequate representatives and are often deposed.

*Turner*, 472 F. Supp. 2d at 870. As in *Turner v. Murphy Oil USA, Inc.*, it is clear to the Court that the Class Representative in this case was actively engaged in the litigation. In fact, the Class Representative, seems largely responsible for the success of this Class Settlement.

## IV.  CONCLUSION

For the foregoing reasons, Class Counsel's Motion for Award of Attorneys' Fees, Reimbursement of Costs, and Incentive Payment (Rec. Doc. 64531) is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS ORDERED** that Class Counsel is awarded a attorneys' fees of $31,350, or 33% of the $95,000 settlement fund, and expenses of $8,493.08, and the Class Representative is awarded a  $1,000 incentive payment.

**IT IS FURTHER ORDERED** that any funds remaining after payment of attorneys' fees, the incentive award, and the claims themselves are to be disbursed, *pro rata*, to claimants until they have been fully compensated for the fees, interest, and charges they were charged by Defendant Pacific Legal Funding, LLC, and whatever funds further remains are to be disbursed as envisioned by the Settlement Agreement itself.

New Orleans, Louisiana, this 17th day of September, 2013.

_____
UNITED STATES DISTRICT JUDGE