**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In re: VIOXX | * | |
|      Products Liability Litigation | * | |
| | * | |
| This Document Relates to: | * | MDL No. 1657 |
| | * | |
| JIM HOOD, ATTORNEY GENERAL *ex rel.* | * | SECTION L |
|   STATE OF MISSISSIPPI, | * | |
| | * | JUDGE ELDON E. FALLON |
|                  Plaintiff, | * | |
| | * | MAGISTRATE JUDGE |
|    versus | * | KNOWLES |
| | * | |
| MERCK & CO., INC., | * | |
| | * | |
|                Defendant. | * | |
| | * | |
| Case No. 2:05-md-06755 | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**DEFENDANT'S OPPOSITION TO**
**PLAINTIFF'S RENEWED MOTION TO REMAND**

      Plaintiff's third motion to remand, just like the two that preceded it, is premised on the mistaken assumption that this lawsuit belongs in state court simply because it does not assert a federal cause of action.  But the touchstone of substantial federal question jurisdiction, as elucidated by the Supreme Court in *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005), is not whether a complaint asserts a federal cause of action. Rather, the critical inquiry is whether Plaintiff's state-law claims "necessarily" raise "disputed" and "substantial" questions of federal law.

      Clearly, they do.  The operative complaint for purposes of assessing federal jurisdiction seeks to recoup Medicaid dollars the State spent in covering Vioxx prescriptions on behalf of Mississippi Medicaid beneficiaries.  As the Court is aware, the federal rules governing Medicaid coverage of prescription medications are highly complex and tremendously important to the

proper functioning of the federal Medicaid system.  Federal Medicaid rules govern whether and when *any* state – not just Mississippi – may limit or bar coverage of FDA-approved drugs like Vioxx, and the formularies (if any) that are adopted under these rules must be approved by the Centers for Medicare and Medicaid Services ("CMS") before they can be put into effect.  Thus, the requirements of federal Medicaid law play a very substantial role in the State's theories of causation and injury.  This was the conclusion reached by Judge Jack Weinstein in several decisions in the *Zyprexa* litigation denying remand of similar cases brought by other governmental entities.  *See, e.g.*, *New Mexico v. Eli Lilly & Co.*, Nos. 04-MD-1596, 07-CV-01749 (JBW/RLM), 2009 U.S. Dist. LEXIS 20768, at \*67-68 (E.D.N.Y. Mar. 11, 2009); *Montana ex rel. McGrath v. Eli Lilly & Co.*, Nos. 04-MD-1596, 07-CV-1933 (JBW), 2008 U.S. Dist. LEXIS 10355, at \*8-10 (E.D.N.Y. Feb. 12, 2008); *West Virginia ex rel. McGraw v. Eli Lilly & Co.*, 476 F. Supp. 2d 230, 234 (E.D.N.Y. 2007).  It is also the conclusion suggested by this Court in a recent order involving the Pennsylvania AG suit, which noted that "[t]he presence of" claims seeking the recovery of "'costs allegedly incurred by [a] [state's] Medicaid program'" in a state's complaint "could be sufficient to confer subject matter jurisdiction."  (Order & Reasons ("*Pennsylvania* Order"), *Commonwealth of Pennsylvania v. Merck & Co.*, MDL No. 1657, ECF No. 64364, at 9 n.3 (Apr. 30, 2013) (quoting *In re Vioxx Prods. Liab. Litig.*, 843 F. Supp. 2d 654, 669 (E.D. La. 2012)).)

The fact that Plaintiff has attempted to avoid federal jurisdiction by dismissing its claim for recovery of dollars spent by the State does not alter the result.  Jurisdiction is determined based on the operative complaint at the time of removal, and federal law expressly provides for supplemental jurisdiction over state-law claims if federal jurisdiction exists over any claim in a suit – even if the claim giving rise to federal jurisdiction is later dismissed.  *See* 28 U.S.C. §

1138290v1

1367(a).  Although Plaintiff argues that the Court has discretion to remand the case, the factors

set forth in the statute – most notably efficiency and uniformity – weigh heavily in favor of

retaining jurisdiction where, as here, the cases at issue are part of an MDL proceeding and the

federal Court has developed expertise regarding the claims at issue.  Indeed, Judge Weinstein

exercised supplemental jurisdiction in virtually identical circumstances in the *Zyprexa* MDL

proceeding on these very grounds.

　　　　For these reasons, discussed further below, Plaintiff's motion to remand should be

denied.[1]

## BACKGROUND

### A.　　The Federal Medicaid Regime

　　　　In 1990, Congress overhauled the Medicaid prescription drug program, adopting two key

features of the federal Medicaid statute that are relevant here.

　　　　First, the 1990 legislation required that states participating in the Medicaid prescription

drug program generally cover all on-label prescriptions for drugs subject to a rebate agreement

with the Secretary of the Department of Health & Human Services.  *See* Omnibus Budget

Reconciliation Act of 1990, Pub. L. No. 101-508, § 4401(a), 104 Stat. 1388 (1990).  As the

House Committee Report makes clear, the requirement that participating states cover on-label

prescriptions was enacted out of a "concern[] that Medicaid beneficiaries have access to the same

range of drugs that the private patients of their physicians enjoy."  *See* H.R. Rep. No. 101-881, at

96-97 (1990), *reprinted in* 1990 U.S.C.C.A.N. 2017, 2108-09.  Congress did grant states "the

option of imposing prior authorization requirements with respect to covered prescription drugs,"

---

[1]　　　While Merck also removed this case on the ground that Plaintiff's lawsuit raises substantial questions related to the federal Food, Drug & Cosmetic Act ("FDCA") (*see* Notice of Removal ¶ 7), Merck does not address that ground for removal because the Court rejected a similar argument in the Kentucky AG case, *In re Vioxx*, 843 F. Supp. 2d at 669.

but it barred them from using prior authorization as a back-door means to "prevent[] competent physicians from prescribing in accordance with their medical judgment." *Id.* at 98, 1990 U.S.C.C.A.N. at 2110; *see also Edmonds v. Levine*, 417 F. Supp. 2d 1323, 1329 (S.D. Fla. 2006) (noting that, under a prior-authorization regime, "the state may try to persuade a doctor to use an alternative drug, but ultimately the doctor retains the final word on use of the drug"). According to the House Committee Report, the prior-authorization regime gave states a role in the prescribing process, but denied them the power to "exclud[e] coverage of prescription drugs of manufacturers with agreements," because exclusion would undermine the goal of "assuring access." H.R. Rep. 101-881, at 98, 1990 U.S.C.C.A.N. at 2110.

Second, Congress also mandated that federal Medicaid funds would generally be unavailable to help cover drugs that were not subject to a rebate agreement. *See id.* at 97, 1990 U.S.C.C.A.N. at 2109. The rebate requirement was intended to ensure that Medicaid would have "the benefit of the best price for which a manufacturer sells a prescription drug." *See id.* at 96, 1990 U.S.C.C.A.N. at 2108.

Congress continued to refine Medicaid to better implement its goals over the next several years. Most notably, in 1993, Congress amended the statute to give states some authority to exclude specific prescription drugs from Medicaid coverage, while placing tight restrictions on that authority. *See* Omnibus Budget Reconciliation Act of 1993, Pub. L. No. 103-66, § 13602(d), 107 Stat. 312 (1993). As the House Committee Report explains, "[t]he purpose of this provision [was] to permit the States to reduce Medicaid spending on prescription drugs while not diminishing the medical care of Medicaid patients." H.R. Rep. No. 103-111, at 205 (1993), *reprinted in* 1993 U.S.C.C.A.N. 378, 532.

This Court recognized the complexity of federal Medicaid law in the Louisiana AG proceeding involving Vioxx.  In its ruling on Merck's motion for summary judgment in that case, the Court devoted seven pages to analyzing whether Louisiana had the authority to deny coverage of Vioxx under federal Medicaid law.  *See In re Vioxx Prods. Liab. Litig.*, MDL No. 1657, No. 05-3700, 2010 U.S. Dist. LEXIS 142767, at *12-21 (E.D. La. Mar. 31, 2010).  As the Court explained:

- Pursuant to Medicaid regulations, a state must "reimburse any use for a covered outpatient drug which is either (1) approved by the Federal Drug and Food administration ('FDA') or (2) supported by one or more citations in any congressionally-recognized compendia."  *Id.* at *14 (internal quotation marks and citation omitted).

- Under 42 U.S.C. § 1396r-8(d)(1)(B), a state may deny coverage for outpatient drugs in only four limited circumstances:  "1) if the prescribed use for the drug is not for a medically accepted indication (i.e. the FDA has not approved the drug for the use prescribed); 2) if the drug is listed in § 1396r-8(d)(2), or is subsequently determined by the Secretary of the U.S. Department of Health and Human Services (DHH) to be subject to clinical abuse or misuse; 3) if an agreement between the state and the drug manufacturer restricts use of the drug; or 4) if the drug has been excluded by a state-established restrictive (or exclusive) formulary."  *Id.*

- Under the applicable facts, the only section of 42 U.S.C. § 1396r-8(d)(1)(B) that could potentially have applied to the Louisiana AG's claims was the provision that a state may deny Vioxx coverage through a restrictive formulary.  *Id.* at *16.

- Under 42 U.S.C. § 1396r-8(d)(4), a Medicaid formulary "must include the covered outpatient drugs of any manufacturer which has entered into and complies with a rebate agreement," but even if "a rebate agreement exists," a drug may be excluded "with respect to the treatment of a specific disease or condition for an identified population" if "the excluded drug does not have a significant, clinically meaningful therapeutic advantage in terms of safety, effectiveness, or clinical outcome of such treatment for such population over other drugs included in the formulary and there is a written explanation (available to the public) of the basis for the exclusion."  *Id.* at *16-17 (internal quotation marks and citation omitted).

- Further, 42 U.S.C. § 1396r-8(d)(4)(D) provides that a state choosing to exclude a drug using this provision "must establish a prior authorization program which will provide an opportunity for physicians to obtain coverage for excluded drugs at the discretion of the state."  *Id.* at *17.

5

1138290v1

- Thus, "whether Louisiana has discretion to deny coverage for Vioxx" under federal Medicaid regulations ***depends on whether the state Medicaid program complies with these federal provisions***. *Id*. at *18.

The Court's Findings of Fact & Conclusions of Law included a similarly detailed analysis of these same federal Medicaid requirements, as well as whether Louisiana had proven at trial that it ***could*** and ***would*** have established an exclusive formulary that denied coverage to Vioxx if more information about the drug had been revealed. *See In re Vioxx Prods. Liab. Litig.*, MDL No. 1657, 2010 U.S. Dist. LEXIS 64388, at *27-31, *58-61 (E.D. La. June 29, 2010). In that decision, the Court found that there are a number of federal requirements that must be met before a state can adopt an exclusive formulary. For example, federal law requires that an exclusive formulary be developed by a Pharmacy & Therapeutics committee appointed by the Governor, *id.* at *39-40 (citing 42 U.S.C. § 1396r-8(d)(4)(A)), and that states adopting exclusive formularies file amended state plans and seek approval from CMS, *id.* at *40 (citing 42 C.F.R. § 430.12(c)). The Court ultimately concluded that the Louisiana Attorney General could not prove that Louisiana would have adopted an exclusive formulary in compliance with these and other federal requirements. *Id.* at *58-61.

## B.   The Present Lawsuit

Plaintiff filed the present suit on October 4, 2005, seeking to recover economic losses allegedly incurred by the State's Medicaid and other health insurance programs in paying for Vioxx. (*See* Orig. Compl. ¶ 7.) According to Plaintiff, Merck "defrauded the State of Mississippi, its agencies and instrumentalities, by knowingly issuing false and misleading statements in order to induce the State, its agencies and instrumentalities to purchase its drug VIOXX®." (*Id.* ¶ 1.) Plaintiff's original complaint alleges that Merck "knowingly made, or caused to be made, false or misleading statements or representations ***in order to obtain payments*** for its pharmaceutical drug, VIOXX® . . . under Mississippi's Medicaid program." (Orig.

6

Compl. ¶ 92 (emphasis added); *see also id.* ¶ 6 ("Expenditures by the State . . . have increased dramatically . . . as a result of Defendant's marketing schemes."); *id.* ¶ 9 ("Numerous pharmaceuticals are sold by Merck and reimbursed by the State under Mississippi's Medicaid program, and these drugs included VIOXX®.").)  Based on these allegations, Plaintiff initially asserted nine causes of action:  (1) fraud; (2) violation of the Mississippi Consumer Protection Act ("MCPA"); (3) untrue, deceptive and misleading advertising; (4) Medicaid fraud; (5) restitution/unjust enrichment; (6) negligence; (7) indemnity; (8) violation of the Mississippi Products Liability Act; and (9) injunctive relief.  (*See id.* ¶¶ 81-120.)  Among the relief sought in Plaintiff's original complaint is "an amount equal to the full amount [Merck] received as a result of payments made by Mississippi Medicaid for its drug, VIOXX®, plus an additional civil penalty equal to triple the full amount received by Defendant on account of these payments."  (*Id.* ¶ 93.)

        On November 1, 2005, Merck removed the case to federal court, citing the existence of federal question jurisdiction because Plaintiff's claims rested on the interpretation of federal Medicaid law and federal regulations promulgated under the FDCA.  With respect to the first basis for jurisdiction, Merck explained that Plaintiff's claims for recovery of monies spent on Vioxx prescriptions "raise important federal questions related to the federal Medicaid statute and its underlying regulations."  (Notice of Removal ¶ 6.)  Plaintiff filed a motion to remand on November 22, 2005, Merck filed an opposition brief on December 7, 2005, and the State filed its reply brief on December 27, 2005.  The case was transferred to this Court in February 2006, before any ruling was issued by the federal court in Mississippi.  No decision on Plaintiff's motion has been rendered by the Court.

1138290v1

Plaintiff filed an amended complaint on June 25, 2012, jettisoning several of its claims, including the Medicaid fraud claim, but retaining the causes of action under the MCPA and for injunctive relief; untrue, deceptive and misleading advertising; fraud; unjust enrichment; and negligence. (*See* First Am. Compl. ¶¶ 75-114.) Merck filed a motion for judgment on the pleadings with respect to these claims on May 3, 2013. (*See* MDL ECF No. 64,373.) Rather than respond to Merck's dispositive motion, Plaintiff filed a supplemental motion to remand with this Court on May 31, 2013. (*See* MDL ECF No. 64,430.) Plaintiff then proceeded to file a second amended complaint on June 4, 2013, retaining only the claim under the MCPA. (*See* Second Am. Compl.) Plaintiff recently filed a second supplemental motion to remand on August 26, 2013. (*See* MDL ECF No. 64,559.) This opposition brief responds to all of Plaintiff's remand positions as set forth in the AG's several filings.

## ARGUMENT

## I.   PLAINTIFF'S ORIGINAL COMPLAINT SATISFIES THE TEST FOR SUBSTANTIAL FEDERAL QUESTION JURISDICTION UNDER *GRABLE*.

The Court has subject-matter jurisdiction over this case under the Supreme Court's decision in *Grable*, 545 U.S. 308, which recognizes the presence of substantial federal question jurisdiction in cases involving state-law claims that depend on the resolution of complex federal issues. This is such a case because Plaintiff's original bid to recover Medicaid dollars the State spent in covering Vioxx prescriptions depends in large part on the interpretation of federal Medicaid law, which determines both the drugs a state must cover under its Medicaid program and the limited circumstances under which it can decline to pay for such drugs.

In *Grable*, the Supreme Court unanimously reiterated its "longstanding" recognition that federal question jurisdiction is not limited to federal questions that arise on the face of a complaint, but also extends to "state-law claims that ***implicate*** significant federal issues." *Id.* at

8

312 (emphasis added).  As the Court explained, federal question jurisdiction exists if a state-law claim "necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities."  *Id.* at 314.  Thus, under *Grable*, substantial federal question jurisdiction exists over a state-law claim if four requirements are satisfied:  (1) the claim "necessarily" raises a federal issue; (2) the federal issue is actually disputed; (3) the federal issue is "substantial"; and (4) the exercise of federal jurisdiction over that issue will not unsettle the federal-state balance of judicial power that Congress sought to create.  *See id.*  As set forth below, this case satisfies all four requirements.

A.     <u>This Case "Necessarily" Raises Issues Of Federal Medicaid Law.</u>

First, Plaintiff's allegations "necessarily" raise a federal issue.  Plaintiff's original complaint alleges that Merck "knowingly made, or caused to be made, false or misleading statements or representations ***in order to obtain payments*** for . . . VIOXX® . . . under Mississippi's Medicaid program."  (Orig. Compl. ¶ 92 (emphasis added).)  The complaint further states that a pharmaceutical company's "false and misleading information" regarding its drugs "result[s] in drug reimbursement payments . . . for drugs which should not have been approved for prescription by medical providers."  (*Id.* ¶ 13.)  With respect to Vioxx, Plaintiff's initial complaint alleges that the "State, its agencies and instrumentalities obtained" false "information from Defendant, directly and indirectly, and reasonably relied on this information in determining the State's pharmacy benefits relative to VIOXX®."  (*Id.* ¶ 17.)  In other words, Mississippi alleged that the State would have refused to cover Vioxx prescriptions under its Medicaid program if Merck had provided different information about the drug.

But the question of Mississippi's authority to limit coverage of drugs under Medicaid is a complicated one of federal law, as this Court has already recognized.  *See In re Vioxx*, 2010 U.S.

9

Dist. LEXIS 142767, at *18 ("whether Louisiana has discretion to deny coverage for Vioxx" under federal Medicaid regulations ***depends on whether the state Medicaid program complies with these federal provisions***).  A federal question is therefore necessarily presented.

Judge Weinstein's ruling in *McGraw* is directly on point.  There, West Virginia brought Medicaid-related claims in state court against Eli Lilly, the manufacturer of the prescription drug Zyprexa, alleging that Lilly had fraudulently promoted Zyprexa, causing damages to the state's Medicaid program.  *See* 476 F. Supp. 2d at 233.  Lilly removed the case on substantial federal question grounds, and the case was transferred to the *Zyprexa* MDL proceeding.  West Virginia moved to remand, arguing that the *Grable* requirements were not met.  Judge Weinstein denied the motion, however, holding that whether the state was obligated to cover Zyprexa "using funds largely provided by the federal government" was a federal question that was "essential" to the plaintiff's theory of recovery.  *Id.*  As Judge Weinstein explained, "[e]xcept in certain narrowly defined situations, states participating in the Medicaid program must cover drugs that are subject to an agreement between the manufacturer and the federal government."  *Id.*  Thus, the plaintiff's claims could not be evaluated without careful consideration of the federal statutory scheme.

So too here.  Just as in *McGraw*, Plaintiff cannot recover at trial without proving that it had discretion under federal Medicaid law to exclude or restrict Vioxx from its reimbursement scheme.[2]  As *McGraw* makes clear, this is a "necessary" federal question.

---

[2]     Plaintiff thus mischaracterizes the issue in arguing that "Merck cannot manufacture federal question jurisdiction . . . by merely citing that 'federal funds comprise the majority of Mississippi Medicaid funds' and 'the vast majority of the money the State seeks to recoup through this lawsuit is federal money.'"  (First Supp'l Mot. at 11 (quoting Notice of Removal ¶ 10).)  Merck's jurisdictional argument is ***not*** based solely on the fact that the majority of recovery sought by Plaintiff in the original complaint is federal money.  Rather, as set forth in Merck's Notice of Removal, "the State's claims raise important federal questions related to the federal Medicaid statute and its underlying regulations."  (Notice of Removal ¶ 6.)

1138290v1

Plaintiff's contrary arguments do nothing to undermine this conclusion.  Plaintiff argues, for example, that no federal issue is "necessarily raised" because the State has never asserted any *federal* causes of action in its complaints.  (*See* Second Supp'l Mot. at 3.)  But as *Grable* makes clear, the substantial federal question doctrine applies in that precise circumstance – i.e., where there is no *federal* cause of action.  *See Grable*, 545 U.S. at 314 (the focus is on whether "a *state-law* claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities") (emphasis added).  In *Grable*, for example, Congress did not intend to create general federal jurisdiction over quiet title actions; nonetheless, the Supreme Court unanimously held that the quiet title action in that case was removable because the plaintiff's theory of relief necessarily raised disputed and substantial issues of federal law.  *See* 545 U.S. at 319-20.[3]

Plaintiff also relies on this Court's ruling remanding the Kentucky AG suit to state court. (First Supp'l Mot. at 11.)  But the Kentucky suit did ***not*** involve a ***single*** question of federal Medicaid law.  Rather, Merck removed that case to federal court on the ground that Kentucky's allegations regarding compliance with FDA regulations gave rise to substantial federal question jurisdiction because they would entail analysis of the FDCA and supporting regulations.  *In re*

---

[3]       For this reason, the cases decided by two federal judges in South Carolina involving suits brought by the South Carolina AG against various pharmaceutical companies should not influence the Court's ruling here.  Each of those cases proceeded on the flawed premise that the absence of a federal cause of action for Medicaid fraud is "compelling evidence that a finding of federal jurisdiction . . . would not be 'consistent with congressional judgment about the sound division of labor between state and federal courts.'"  *South Carolina ex rel. McMaster v. Eli Lilly & Co.*, No. 7:07-1875-HMH, 2007 U.S. Dist. LEXIS 56847, at *8-9 (D.S.C. Aug. 3, 2007) (citation omitted) (First Supp'l Mot. at 10); *South Carolina ex rel. McMaster v. Janssen Pharmaceutica, Inc.*, No. 7:07-1452-HMH, 2007 U.S. Dist. LEXIS 49904, at *8 (D.S.C. July 10, 2007) (First Supp'l Mot. at 10) (same); *South Carolina ex rel. McMaster v. AstraZeneca Pharm. LP*, No. 7:09-387-HFF, 2009 U.S. Dist. LEXIS 39174, at *15 (D.S.C. May 5, 2009) (First Supp'l Mot. at 10) (same).  The other South Carolina case cited by Plaintiff, *South Carolina ex rel. Wilson v. GlaxoSmithKline, LLC*, No. 7:11-cv-01475-GRA, 2011 U.S. Dist. LEXIS 80522, at *5-7 (D.S.C. July 22, 2011) (First Supp'l Mot. at 9), relied on these three prior cases, rendering its conclusions equally erroneous.

1138290v1

*Vioxx*, 843 F. Supp. 2d at 668.[4]  In rejecting this basis for jurisdiction, the Court distinguished Judge Weinstein's rulings in the *Zyprexa* MDL proceeding, recognizing that in contrast to those cases, "Kentucky seeks civil penalties pursuant to the KCPA and **not** federally-funded Medicaid reimbursement payments."  *Id.* at 669 (emphasis added).  Just recently, in a ruling related to the Pennsylvania AG case, the Court similarly noted that in contrast to the Kentucky case, "[t]he presence of" claims seeking the recovery of "'costs allegedly incurred by [a] [state's] Medicaid program'" in Pennsylvania's complaint "could be sufficient to confer subject matter jurisdiction."  (*Pennsylvania* Order at 9 n.3 (quoting *In re Vioxx*, 843 F. Supp. 2d at 669).)  Because Plaintiff's original complaint seeks such costs – and therefore raises substantial federal questions of federal Medicaid law – the Kentucky case offers Plaintiff no help.

Plaintiff's last argument – that other federal cases purportedly hold that federal question jurisdiction is lacking "where, as here, a State raises state law causes of action to rectify improper costs and trade practices arising from prescription drug sales and/or Medicaid payments" (First Supp'l Mot. at 9-10 (citing cases) (emphasis omitted)) – is no more persuasive.  For one thing, many of these cases are bereft of any analysis.  *See, e.g.*, *Michigan ex rel. Gurganus v. CVS Caremark Corp.*, No. 1:09-cv-776, 2009 U.S. Dist. LEXIS 124567 (W.D. Mich. Nov. 24, 2009) (Judge Jonker) (First Supp'l Mot. at 10) (remanding cases in summary order without any discussion); *City of Lansing v. Rite Aid of Mich., Inc.*, No. 1:09-CV-777, 2009 U.S. Dist. LEXIS 124565 (W.D. Mich. Nov. 24, 2009) (Judge Jonker) (First Supp'l Mot. at 10) (same); *Arkansas ex rel. McDaniel v. Janssen Pharmaceutica*, No. 4:07-CV-001210-WRW, 2008 U.S. Dist. LEXIS 107769 (E.D. Ark. Mar. 25, 2008) (First Supp'l Mot. at 10) (remanding case in summary order without any analysis); *Arkansas ex rel. McDaniel v. AstraZeneca Pharm.*,

---

[4]     Merck also removed on the basis that jurisdiction existed on diversity grounds.  *See* 843 F. Supp. 2d at 656.

*LP*, No. 4:08CV00601 BSM, 2008 U.S. Dist. LEXIS 67306 (E.D. Ark. Aug. 25, 2008) (First

Supp'l Mot. at 10) (similar); *Texas v. Merck & Co.*, 385 F. Supp. 2d 604, 608 (W.D. Tex. 2005)

(First Supp'l Mot. at 11) (asserting simply that substantial federal question jurisdiction was

lacking because the Medicaid program was a state program and thus failing to appreciate the

extent to which federal law constrains the discretion of a state Medicaid agency).  As Judge

Weinstein explained in criticizing a case similarly short on analysis, authorities addressing the

question of substantial federal question jurisdiction in the federal Medicaid context that "do[] not

discuss the federal Medicaid issues presented in sufficient detail for [a] court to be able to

analyze them" lack persuasive weight.  *McGraw*, 476 F. Supp. 2d at 234.  By contrast, Judge

Weinstein's rulings in the *Zyprexa* MDL proceeding are fulsome, well-reasoned and recognize

the implications that AG suits seeking recovery of Medicaid dollars have for the broader

Medicaid system.  *See, e.g.*, *id.* at 233-34 (devoting four paragraphs to distilling the federal

Medicaid framework implicated by the state's suit).

Plaintiff's other cases are no more persuasive because they do not involve allegations

comparable to those underlying Plaintiff's suit here.  For example, four of Plaintiff's cases

(*Missouri ex rel. Nixon v. Mylan Labs., Inc.*, No. 4:06CV603 HEA, 2006 WL 1459772 (E.D. Mo.

May 23, 2006); *Wisconsin v. Abbott Labs.*, 390 F. Supp. 2d 815 (W.D. Wis. 2005); *Minnesota v.*

*Pharmacia Corp.*, No. 05-1394, 2005 U.S. Dist. LEXIS 27638 (D. Minn. Oct. 22, 2005), and

*Hawaii v. Abbott Labs., Inc.*, 469 F. Supp. 2d 842 (D. Haw. 2006)), dealt solely with allegations

of misrepresentations of average wholesale prices ("AWPs") and wholesale acquisition costs.

The *McGraw* court expressly distinguished such cases, explaining that these sorts of allegations

only implicate "the definition of a single federal statutory term," rather than the "broad range of

federal regulatory and funding provisions" at issue in a suit like this one – and that in any event,

13

another court had found even the more limited federal question in the AWP cases sufficiently substantial to justify federal jurisdiction. *See McGraw*, 476 F. Supp. 2d at 234. And *West Virginia ex rel. McGraw v. Rite Aid of West Virginia, Inc.*, No. 2:09-0956, 2010 U.S. Dist. LEXIS 8041, at *1 (S.D. W. Va. Feb. 1, 2010) (First Supp'l Mot. at 9), centered on the allegation that pharmacies violated West Virginia law by failing to pass on generic-drug cost savings to purchasers. While federal Medicaid law sets the maximum price that may be charged for drugs for reimbursement under Medicaid, the court found no substantial federal question jurisdiction because, unlike the cases decided by Judge Weinstein (in which federal Medicaid law required the states "to cover Zyprexa under their individual state Medicaid programs"), "plaintiff's claims [in Rite Aid] d[id] not involve a similar federal mandate." *Rite Aid*, 2010 U.S. Dist. LEXIS 8041, at *11-12.[5]

In short, Plaintiff's cases are either inapposite or unpersuasive. As Judge Weinstein held in a case just like this one, Plaintiff's Medicaid allegations necessarily present a federal issue because the State's theory of causation – that it would have denied coverage of an FDA-approved drug – depends on an interpretation of federal Medicaid law. For all of these reasons, Plaintiff's claims easily satisfy the first *Grable* requirement.

---

[5]   Plaintiff's Second Supplemental Motion to Remand cites two additional cases rejecting substantial federal question jurisdiction, but these cases are even further afield. The first, *Urata v. Canare Electric Co.*, No. 12-5704 (JLL), 2013 U.S. Dist. LEXIS 76820 (D.N.J. May 10, 2013) (Second Supp'l Mot. at 4), involved claims that were "not predicated on any federal issues" at all. *Id.* at *16. "Rather," the federal issue in question arose only by way of a proposed "affirmative defense" based on a treaty. *Id.* As that court explicitly recognized, "a potential federal defense is not enough to create federal jurisdiction under § 1331." *Id.* at *19 (internal quotation marks and citation omitted). That is not the case here; the federal question arises on the face of the Complaint for the reasons explained above. Plaintiff's other case, *Bollea v. Clem*, No. 8:13-cv-00001-T-27AEP, 2013 U.S. Dist. LEXIS 44625, at *13 (M.D. Fla. Mar. 27, 2013) (Second Supp'l Mot. at 4), involved state-law allegations that the defendants had violated the plaintiff's privacy rights by videotaping him having sex and then publishing the recording. There, the defendants' theory of removal was that litigants with privacy complaints in a prior unrelated case against a governmental entity had expressly invoked the U.S. Constitution. *Id.* at *15. The court found this insufficient because state-law privacy claims under the facts of the case before it had nothing to do with the Constitution, *see id.* at *16-17, which is unsurprising since constitutional rights generally protect only against governmental intrusions, and no governmental defendant was named in the case.

14

**B.      The Federal Medicaid Issue Is "Disputed" Because Merck Disagrees That Mississippi Could Deny Coverage Of Vioxx.**

*Grable*'s second requirement – that the federal issues raised by the case be actually "disputed" – is also satisfied here, and Plaintiff does not appear to contend otherwise.  In order to prove that Mississippi Medicaid would have excluded or restricted Vioxx from Medicaid coverage, Plaintiff must show that the State had the authority to do so under federal law – a showing Merck maintains cannot be made.  Thus, the second element of the *Grable* test is easily met.

**C.      The Federal Medicaid Issues Are "Substantial" Because They Implicate Medicaid's Congressionally Calibrated Prescription Drug Scheme, Which Applies Nationwide.**

*Grable*'s third requirement is also satisfied because the federal questions necessarily raised in this case are not only disputed but "substantial."  Plaintiff disagrees, arguing that the "availability and prescription of Vioxx within the State's Medicaid program does [not] give rise to an issue important enough [to] give rise to federal question jurisdiction."  (Second Supp'l Mot. at 4.)  Plaintiff is mistaken.

As Judge Weinstein explained, a state that wishes to pursue a theory that it would have denied coverage of a drug under its Medicaid program must prove that it could do so within the context of complex federal Medicaid laws.  Moreover, "[t]he federal questions presented by" such a "suit extend beyond the definition of a single federal statutory term to encompass a broad range of federal regulatory and funding provisions."  *McGraw*, 476 F. Supp. 2d at 234.  The interpretation of those provisions, in turn, has implications far beyond the parties in a civil suit; after all, they form essential components of Congress's overarching Medicaid policy of ensuring that Medicaid-eligible patients have access to beneficial medicines, while keeping the costs of that access under control.  *See Edmonds*, 417 F. Supp. 2d at 1330-31 ("The statutory scheme is

15

carefully constructed in such a way to precisely circumscribe the only methods by which a state may remove a Medicaid-eligible drug from coverage and prevent it from either arbitrarily removing a drug or adopting its own *ad hoc* procedure for removing a drug from coverage.").  In this case, for example, Mississippi's original theory that it could deny or restrict Medicaid coverage of an FDA-approved drug for an FDA-approved indication is in significant tension with Congress's goal that Medicaid participants have access to the same drugs as do the beneficiaries of private insurance plans.  Thus, the broader federal interests are clear, and the requirement that the federal question raised be "substantial" is satisfied.

Plaintiff's contrary contention rests primarily on *Gunn v. Minton*, 133 S. Ct. 1059 (2013) (*see* Second Supp'l Mot. at 3-4) – a case that involved a federal patent issue with no implications for the broader federal system.  There, the plaintiff brought a legal malpractice claim in state court against his former attorneys arising out of a failed patent infringement suit that had been litigated in state court.  133 S. Ct. at 1062-63.  The plaintiff contended that the attorneys engaged in legal malpractice by failing to raise an experimental-use argument at the outset of the underlying patent case, which ultimately led to the invalidation of the plaintiff's patent for his computer program and telecommunications network.  *Id.* at 1063.  The trial court in the malpractice action found in favor of the attorneys, reasoning that the patent infringement claims would have failed even if the experimental-use argument had been timely raised.  *Id.*  Thereafter, the plaintiff appealed to the Texas Court of Appeals, claiming, for the first time, that "[b]ecause his legal malpractice claim was based on an alleged error in a patent case, it 'aris[es] under' federal patent law for purposes of 28 U.S.C. § 1338(a)." *Id.* (citation omitted).  The plaintiff further reasoned that because, under section 1338(a), "[n]o State court shall have jurisdiction over any claim for relief arising under any Act of Congress relating to patents," the Texas trial

16

court in which the malpractice suit was brought lacked jurisdiction.  *Id.* (internal quotation marks and citation omitted).  As such, the plaintiff argued, the trial court's order should be invalidated, allowing him to bring suit in federal court.  *Id.*  The Texas Court of Appeals rejected the plaintiff's argument, finding that substantial federal question jurisdiction did not extend to the plaintiff's malpractice claim, but the Texas Supreme Court sided with the plaintiff.  *Id.*[6]

The U.S. Supreme Court reversed, holding that no substantial federal question was presented.  Although the Court agreed that the plaintiff's claims "may necessarily raise disputed questions of patent law, those cases are by their nature unlikely to have the sort of significance for the federal system necessary to establish jurisdiction."  *Id.* at 1065.  Rather, the issue was highly important only to the "plaintiff's case and to the parties before it," *id.* at 1066; there was no such significance to the "federal system as a whole," *id.*  This was so, the Court explained, because of "the backward-looking nature of a legal malpractice claim."  *Id.* at 1066-67.  "No matter how the state courts resolve that hypothetical 'case within a case,' it will not change the real-world result of the prior federal patent litigation," and the plaintiff's "patent will remain invalid."  *Id.* at 1067.

The present case bears no resemblance to *Gunn*.  Unlike "the backward-looking nature of a legal malpractice claim" that would not even have affected the patent at issue in that specific case, the issues disputed here directly implicate the scope of Mississippi's authority to deny coverage of drugs through its Medicaid program.  The scope of that authority is important to Medicaid beneficiaries throughout Mississippi and, potentially, the entire country.  *Cf. Manning v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 12-4466 (JLL), 2013 WL 1164838, at *6

---

[6]     Although the plaintiff's argument was premised on the "arising under" language set forth in 28 U.S.C. § 1338, rather than § 1331, the Texas Supreme Court relied on the analogous *Grable* factors in finding federal jurisdiction.  133 S. Ct. at 1064.

(D.N.J. Mar. 20, 2013) ("[T]he instant case[,which involves a type of short-selling practice deemed illegal by federal securities law,] [is] distinguishable from the backward looking malpractice 'case within a case' at issue in *Gunn*.").

Plaintiff also cites *Municipality of Mayaguez v. Corporacion Para El Desarrollo Del Oeste, Inc.*, No. 11-2241, 2013 U.S. App. LEXIS 16333, at *13-15 (1st Cir. Aug. 7, 2013) (applying *Gunn*), for the proposition that Plaintiff's case does not implicate substantial issues of federal law.  (*See* Second Supp'l Mot. at 4-5.)  But like the *Gunn* case, *Mayaguez* is inapposite. In *Mayaguez*, a municipality brought a breach-of-contract suit against a local development corporation alleging that it breached the parties' contract by failing to comply with certain regulations issued by the Department of Housing and Urban Development ("HUD").  *Mayaguez*, 2013 U.S. App. LEXIS 16333, at *1-2.  Relying on *Gunn*, the First Circuit held that substantial federal question jurisdiction was lacking because the federal issue presented by the case – i.e., whether the development company's violation of HUD regulations amounted to a breach of contract – was not "substantial."  *Id.* at *15.  In its ruling, the Court of Appeals reasoned that the suit did not actually implicate the meaning of the HUD regulations, but rather focused on "the disputes between the parties [that] were overwhelmingly factual."  *Id.*  In addition, the appellate court did not find that the federal issue raised in the case posed significant implications for the federal government at large.  *Id.* at *16 ("the outcome in this case could not call into question thousands of other actions undertaken by a federal agency").  In short, there was "simply no [] risk [] to any federal program."  *Id.* at *18.

Here, by contrast, one of Plaintiff's original theories of liability – i.e., that Merck's alleged conduct caused the State to expend Medicaid dollars on Vioxx prescriptions – does in fact turn on the interpretation of complex federal Medicaid laws.  While resolution of this theory

1138290v1

of liability requires assessment of various facts with regard to the Mississippi Medicaid program, there can be no dispute that the ultimate determination is one of law – not fact. *See In re Vioxx*, 2010 U.S. Dist. LEXIS 142767, at *12-21 (engaging in extensive legal analysis to determine whether Louisiana could have restricted Vioxx coverage consistent with federal Medicaid laws). Moreover, the resolution of this question would likely have a significant "impact on the development of federal law," *Mayaguez*, 2013 U.S. App. LEXIS 16333, at *15, since this is just one of numerous suits that have been filed in recent years by AGs seeking recovery of Medicaid dollars on the theory that the state would not have paid for a drug but for the allegedly unlawful conduct of its manufacturer.  As one legal commentator has noted, "[w]ithout doubt, tort suits by states against pharmaceutical manufacturers to recover states' Medicaid reimbursements to pharmacies, based upon manufacturers' marketing and sales of their products, are on the increase."  Scott Smith, *The Escalation of Tort Claims by States Against Drug Companies for Medicaid Reimbursement*, Nuisance Law, Feb. 12, 2010, *available at* http://www.nuisancelaw.com/articles/thars-no-gold-them-thar-pills-contingent-fee-driven-lawsuits.  Thus, unlike *Mayaguez*, the federal issue raised by Plaintiff's original complaint has significance not only for the parties here, but for the federal Medicaid scheme at large.[7]

      For all of these reasons, the federal issues presented are "substantial."

---

[7]     For this reason, Plaintiff's other arguments to the effect that substantial federal question jurisdiction is inappropriate where "federal law is simply implicated and the state law claim depends heavily on factual issues" (First Supp'l Mot. at 6-7 (citing *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677 (2006))) is misplaced.  Here the federal issue is front and center, and its resolution would guide future cases, unlike the issue in the Supreme Court's *Empire* decision, which involved fact-bound claims about one deceased federal employee's health benefits.  *See* 547 U.S. at 700.  *Merced Irrigation District v. County of Mariposa*, No. 1:12-cv-01645-LJO-SKO, 2013 U.S. Dist. LEXIS 58208, at *22-26 (E.D. Cal. Apr. 23, 2013) (Second Supp'l Mot. at 5), is inapposite for the same reason.  *Merced* involved a contractual dispute where the implication of a federal issue was speculative and in any event "unlikely to have broad application to litigants everywhere" because its resolution would depend on the particulars of an implied covenant between the parties.  2013 U.S. Dist. LEXIS 58208, at *22-23.  That is not the case here, where Mississippi's original theory that it could deny or restrict Medicaid coverage of an FDA-approved drug for an FDA-approved indication poses a significant challenge to the federal Medicaid system itself.

**D.    Exercising Federal Jurisdiction Will Not Disturb The "Congressionally Approved Balance Of Federal And State Judicial Responsibilities."**

Finally, the fourth requirement of *Grable* is satisfied because exercising jurisdiction will not "disturb[] any congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314; *see also id.* at 318-20 (suggesting that recognition of jurisdiction should "not materially affect, or threaten to affect, the normal currents of litigation").

As Judge Weinstein concluded in *McGraw*, exercising federal jurisdiction over a state-initiated suit to recover all Medicaid payments for a prescription drug "will not attract 'a horde of original filings and removal cases raising other state claims with embedded federal issues.'" *McGraw*, 476 F. Supp. 2d at 234 (citation omitted).  After all, suits like this one do not involve the interpretation of broad federal standards that may apply in a range of cases, but rather "an intricate federal regulatory scheme including detailed federal funding provisions" that are only implicated in a narrow group of state-law cases.  *Id.*

Plaintiff cites one case that addresses this prong of the substantial-federal-question standard (*see* First Supp'l Mot. at 11 (citing *Hood ex rel. Miss. v. AstraZeneca Pharm., LP*, 744 F. Supp. 2d 590 (N.D. Miss. 2010))) – but *Hood*'s analysis is deeply flawed.  In *Hood*, the AG sued defendant pharmaceutical companies, seeking to recover Medicaid funds the State spent in covering prescriptions as a result of defendants' alleged fraudulent representations and omissions. *Hood*, 744 F. Supp. 2d at 594.  The court remanded the suit to state court, in large part based on its speculative finding that sustaining federal jurisdiction over cases implicating federal Medicaid laws "could 'attract . . . a horde of original filings and removal cases raising other state claims with embedded federal issues.'"  *Id.* at 601 (citation omitted).  "Under these circumstances," the court determined, "the fact that Congress provided no private right of action in the Federal Medicaid Act presents compelling evidence that a finding of federal jurisdiction in the instant

20

case would not be 'consistent with congressional judgment about the sound division of labor between state and federal courts.'" *Id.* (citation omitted).

But the court's prediction of a horde of federal litigation had no basis in fact and has not been borne out by experience. Indeed, *McGraw* was decided over six years ago, yet there has been no "'horde of original filings'" or "'removal cases raising other state claims with embedded federal issues.'" *Id.* at 601 (citation omitted). While Medicaid-based AG suits are growing, they remain a small sliver of the overall universe of prescription-drug litigation, and there is no evidence that *McGraw*'s holding has encouraged federal filings or removals in any other category of Medicaid-related suits. Moreover, the logic underlying *Hood*'s reasoning was fundamentally flawed. After all, *Hood* emphasized Congress's failure to provide a federal cause of action in the Medicaid statute, but the absence of an express federal cause of action is a necessary predicate for substantial federal question jurisdiction, which, by definition, covers cases in which there is no federal cause of action. Thus, as *Grable* expressly clarifies, Congress's decision not to create a federal cause of action cannot be dispositive. *See* 545 U.S. at 318-20.

In short, Judge Weinstein's logic in *McGraw* was unassailable; exercising jurisdiction over the State of Mississippi's claim does not pose any threat that swarms of state-law Medicaid-related claims will overtake the federal court system. Accordingly, the *Hood* court's ruling should be rejected. *See id.* at 318-20 (suggesting that recognition of jurisdiction should "not materially affect, or threaten to affect, the normal currents of litigation").

## II.     THE COURT SHOULD EXERCISE SUPPLEMENTAL JURISDICTION OVER PLAINTIFF'S CASE.

In an effort to boost its remand prospects, Plaintiff has now amended its complaint twice to excise all Medicaid-related causes of action. According to Plaintiff, even if the case was ever

1138290v1

subject to federal jurisdiction, it should be remanded pursuant to 28 U.S.C. § 1367(c) because the "remaining state law [consumer-protection] claim[] do[es] not require . . . resolution of any . . . 'substantial federal question.'"  (First Supp'l Mot. at 12 (citation omitted).)  This last-ditch argument should be rejected too.

Federal law expressly provides for supplemental jurisdiction over state-law claims if federal jurisdiction exists over any claim in a suit.  *See* 28 U.S.C. § 1367(a); *see also Davis v. GMAC Mortg. LLC*, No. 4:11-CV-95 (CDL), 2012 U.S. Dist. LEXIS 33351, at *8 n.3 (M.D. Ga. Mar. 13, 2012) ("[T]he Court finds a substantial federal question exists with respect to Plaintiffs' breach of contract claims, and the Court has supplemental jurisdiction over Plaintiffs' claims for breach of the implied duty of good faith and fair dealing to the extent that any such claims are separate from the breach of contract claims."); Jennifer E. Fairbairn, *Keeping Grable Slim: Federal Question Jurisdiction and the Centrality Test*, 58 Emory L.J. 977, 1006-08 (2009) (criticizing one court's conclusion that "the federal issue must always be the only disputed issue" as "problematic" and unjustified by *Grable*).[8]  Such jurisdiction remains if the claim giving rise to federal jurisdiction is dismissed.  *Brown v. Sw. Bell Tel. Co.*, 901 F.2d 1250, 1254 (5th Cir. 1990) ("[W]hen there is a subsequent narrowing of the issues such that the federal claims are eliminated and only pendent state claims remain, federal jurisdiction is not extinguished."). While Plaintiff is correct that a court **may** decline to exercise supplemental jurisdiction where the claims giving rise to federal jurisdiction have been dismissed (*see* First Supp'l Mot. at 12), the factors set forth in 28 U.S.C. § 1367 weigh heavily in favor of exercising supplemental jurisdiction here.

---

[8]      Another one of Plaintiff's cases, *Pennsylvania v. Eli Lilly & Co.*, 511 F. Supp. 2d 576, 581 (E.D. Pa. 2007) (First Supp'l Mot. at 10), was premised on the same flawed reasoning and should therefore not influence the Court's

*(cont'd)*

In deciding whether to exercise supplemental jurisdiction, a court must consider whether: "(1) the claim raises a novel or complex issue of State law (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction (3) the district court has dismissed all claims over which it has original jurisdiction or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c). Further, courts have recognized that, even if one or more of these factors is present, a court should nonetheless exercise supplemental jurisdiction if "considerations of judicial economy, convenience, fairness, and comity" warrant doing so. *Mendoza v. Murphy*, 532 F.3d 342, 346 (5th Cir. 2008). In the MDL context, these factors generally justify the exercise of jurisdiction over non-dismissed claims because they "parallel the factors considered by the MDL panel in its decision to transfer the case to th[e] [MDL] court" in the first place. *In re New England Mut. Life Ins. Co. Sales Practices Litig.*, MDL No. 1105, 2003 U.S. Dist. LEXIS 25664, at *8-9 (D. Mass. May 20, 2003) (the factors that supported transfer of the action to the MDL court " also weigh in favor of this court's retaining supplemental jurisdiction over the . . . plaintiffs' remaining state-law claims."), *aff'd*, 358 F.3d 16 (1st Cir. 2004); *see also, e.g.*, *W. Va. ex rel. McGraw v. Eli Lilly & Co.*, No. 06-CV-5826, 2008 U.S. Dist. LEXIS 79625, at *7 (E.D.N.Y. Sept. 26, 2008) (retaining jurisdiction over non-dismissed claims in *Zyprexa* MDL litigation to ensure a "degree of national uniformity" with respect to claims against the pharmaceutical company in the MDL proceeding); *In re Nat'l Century Fin. Enters., Inc. Inv. Litig.*, 580 F. Supp. 2d 630, 644 (S.D. Ohio 2008) ("declin[ing] to exercise supplemental jurisdiction over the remainder of the claims . . . would defeat the goal of judicial economy for

_____

*(cont'd from previous page)*
ruling here. *See Pennsylvania*, 511 F. Supp. 2d at 581 (granting remand because, *inter alia*, "'liability may proceed on entirely non-federal grounds'") (citation omitted).

which the action filed by [plaintiff] was consolidated into this multidistrict litigation."); *In re JetBlue Airways Corp. Privacy Litig.*, 379 F. Supp. 2d 299, 311 (E.D.N.Y. 2005) ("the objectives underlying multi-district litigation[] make it appropriate to exercise supplemental jurisdiction in this case" where federal claim had been dismissed).

For this reason, Judge Weinstein exercised supplemental jurisdiction over state-law claims alleged by the West Virginia Attorney General in the *Zyprexa* MDL proceeding, even after the Medicaid claims in that case were dismissed. *See McGraw*, 2008 U.S. Dist. LEXIS 79625, at *9. According to Judge Weinstein, "values of judicial economy, convenience, fairness, and comity" weighed in favor of trying the case in federal court because there were "[m]any states with claims against Lilly involving alleged unfair, deceptive, and fraudulent acts" in the *Zyprexa* MDL proceeding, and a "degree of national uniformity is desirable as these states' claims proceed." *Id.* at *7, *9. Judge Weinstein also noted that substantial discovery related to Zyprexa cases had already been conducted in the MDL proceeding, making the MDL court "well positioned to oversee the remaining discovery, ensuring that there is adequate consistency and fairness through the discovery process." *Id.* at *8. Finally, the court noted that the "exercise of federal jurisdiction over this action . . . does not pose any threat [of] a significant rise in the caseload of the federal courts." *Id.* at *8-9 (citation omitted).

This case calls for the same result. As in *McGraw*, the Court is currently presiding over all of the litigating AGs' claims and therefore can ensure "national uniformity" in the treatment of these actions. *Id.* at *7. In addition, the MDL Court has overseen substantial discovery with regard to the Vioxx litigation and can best ensure that the remaining AG discovery is completed efficiently and fairly. Indeed, the Court has already overseen extensive discovery in this case and has even resolved discovery motions that required it to interpret Mississippi state law. (*See*

Order, ECF No. 64,279 (Feb. 28, 2013).)  Moreover, the fact that the Court has already tried the claims of one state AG and is familiar with the facts and law that are generally at issue in these cases makes it all the more appropriate to exercise supplemental jurisdiction over this matter. Nor is there any risk that exercising supplemental jurisdiction in the Mississippi case (along with the handful of other AG cases that remain) will significantly increase the federal caseload.

Finally, retaining supplemental jurisdiction over Plaintiff's case is all the more appropriate because "what has happened is not that the district court has dismissed the federal claim, but that the [P]laintiff[] ha[s] voluntarily deleted the federal predicate from [his] complaint." *In re New England*, 2003 U.S. Dist. LEXIS 25664, at *6.  As one MDL court explained, such "behavior [should be taken] into account in determining whether the balance of factors to be considered under the pendent jurisdiction doctrine support a remand in the case." *Id.* at *7 (internal quotation marks and citation omitted).

Plaintiff argues that a Mississippi state court would be well equipped to interpret Mississippi's consumer-protection statute, while this Court has little relevant experience in light of the "very little 'state-specific' litigation [that] has taken place in this case." (First Supp'l Mot. at 12-13.)  Not so.  The Court has already developed a wealth of relevant experience with respect to the MCPA, this case and AG claims generally that far surpasses that of any state court.  (*See, e.g.*, Order at 2, ECF No. 64,279 (Feb. 28, 2013) (construing the penalties provision of the MCPA).)  In short, Plaintiff's arguments against applying supplemental jurisdiction make little sense in light of the maturity of the Vioxx MDL litigation and this Court's extensive familiarity with the particulars of this case and the Vioxx AG litigation generally.

1138290v1

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should deny the renewed motion to remand.

Dated:  September 19, 2013

Respectfully submitted,

<u>/s/ Dorothy H. Wimberly</u>
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, LA 70130

Douglas R. Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth St., N.W.
Washington, DC 20005

John H. Beisner
Jessica Davidson Miller
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
1440 New York Avenue, N.W.
Washington, DC 20005

ATTORNEYS FOR MERCK SHARP &
DOHME CORP.

1138290v1

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Opposition to Plaintiff's Renewed Motion to Remand  has been served on Liaison Counsel, Russ Herman, Phillip Wittmann and Ann Oldfather, by U.S. Mail and e-mail or by hand delivery and e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8C, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 19th day of September, 2013.

*/s/ Dorothy H. Wimberly*
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, LA  70130
Phone:  504-581-3200
Fax:     504-581-3361
dwimberly@stonepigman.com

Defendants' Liaison Counsel

1138290v1