## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | |
|     Products Liability Litigation | * | |
| | * | |
| This Document Relates to: | * | MDL No. 1657 |
| | * | |
| *State of Montana v. Merck & Co., Inc.* | * | SECTION L |
| No. 2:06-CV-04302 | * | |
| | * | JUDGE ELDON E. FALLON |
| | * | |
| | * | MAGISTRATE JUDGE |
| | * | KNOWLES |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### DEFENDANT'S OPPOSITION TO
### PLAINTIFF'S RENEWED MOTION TO REMAND

Plaintiff's motion for remand contends that this case never had anything to do with Medicaid, noting that the complaint does not contain "a single reference to" the Medicaid program. But the original complaint expressly asserted that the State was entitled to "***all*** monies acquired by Merck by means of" its allegedly unlawful promotion of Vioxx. (Orig. Compl. ¶ 6 (emphasis added).) This allegation necessarily encompassed monies expended on Vioxx through Montana's Medicaid program, as Plaintiff subsequently confirmed by admitting, before retaining private counsel, that it was seeking "recovery of funds paid by the Medicaid program." (*See, e.g.*, Pl.'s Resp. to Def.'s Interrog. No. 28, Aug. 3, 2009 ("Interrog. Resps.") (attached as Ex. 1).)

Montana cannot obtain remand by rewriting history. The State's original request for restitution of Medicaid expenditures necessarily presents a federal issue that is substantial. As the Court is aware, the federal rules governing Medicaid coverage of prescription medications are highly complex and critical to the proper functioning of the federal Medicaid system. Federal Medicaid rules govern whether and when ***any*** state – not just Montana – may limit or bar coverage of FDA-approved drugs like Vioxx, and the formularies (if any) that are adopted under

these rules must be approved by the Centers for Medicare and Medicaid Services ("CMS")
before they can be put into effect.  Thus, the requirements of federal Medicaid law play a very
substantial role in the State's theories of causation and injury.

This conclusion is hardly novel; nor does it "herald an unprecedented expansion of
federal jurisdiction over sovereign states' claims," as prophesied in Plaintiff's brief.  (Mot. at 22.)
This was the conclusion reached by Judge Jack Weinstein in several decisions in the *Zyprexa*
litigation denying remand of similar cases brought by other governmental entities.  *See, e.g., New
Mexico v. Eli Lilly & Co.*, Nos. 04-MD-1596, 07-CV-01749 (JBW/RLM), 2009 U.S. Dist.
LEXIS 20768, at *67-68 (E.D.N.Y. Mar. 11, 2009); *Montana ex rel. McGrath v. Eli Lilly & Co.*,
Nos. 04-MD-1596, 07-CV-1933 (JBW), 2008 U.S. Dist. LEXIS 10355, at *8-10 (E.D.N.Y. Feb.
12, 2008); *West Virginia ex rel. McGraw v. Eli Lilly & Co.*, 476 F. Supp. 2d 230, 234 (E.D.N.Y.
2007).  It is also the conclusion suggested by this Court in a recent order involving the
Pennsylvania AG suit, which noted that "[t]he presence of" claims seeking the recovery of
"'costs allegedly incurred by [a] [state's] Medicaid program[]'" in a state's complaint "could be
sufficient to confer subject matter jurisdiction."  (Order & Reasons ("*Pennsylvania* Order") at 9
n.3, *Pennsylvania v. Merck & Co.*, MDL No. 1657, ECF No. 64,364 (filed Apr. 30, 2013)
(quoting *In re Vioxx Prods. Liab. Litig.*, 843 F. Supp. 2d 654, 669 (E.D. La. 2012)).)

The fact that Plaintiff has attempted to avoid federal jurisdiction by dismissing its claim
for recovery of dollars spent by the State does not alter the result.  Jurisdiction is determined
based on the operative complaint at the time of removal, and federal law expressly provides for
supplemental jurisdiction over state-law claims if federal jurisdiction exists over any claim in a
suit – even if the claim giving rise to federal jurisdiction is later dismissed.  *See* 28 U.S.C. §
1367(a).  Although Plaintiff argues that the Court has discretion to remand the case, the factors

2

set forth in the statute – most notably efficiency and uniformity – weigh heavily in favor of

retaining jurisdiction where, as here, the cases at issue are part of an MDL proceeding and the

federal Court has developed expertise regarding the claims at issue.  Indeed, Judge Weinstein

exercised supplemental jurisdiction in virtually identical circumstances in the *Zyprexa* MDL

proceeding on these very grounds.

For these reasons, discussed further below, Plaintiff's motion to remand should be

denied.[1]

## BACKGROUND

### A.    The Federal Medicaid Regime

In 1990, Congress overhauled the Medicaid prescription drug program, adopting two key

features of the federal Medicaid statute that are relevant here.

First, the 1990 legislation required that states participating in the Medicaid prescription

drug program generally cover all on-label prescriptions for drugs subject to a rebate agreement

with the Secretary of the Department of Health & Human Services.  *See* Omnibus Budget

Reconciliation Act of 1990, Pub. L. No. 101-508, § 4401(a), 104 Stat. 1388 (1990).  As the

House Committee Report makes clear, the requirement that participating States cover on-label

prescriptions was enacted out of a "concern[] that Medicaid beneficiaries have access to the same

range of drugs that the private patients of their physicians enjoy."  *See* H.R. Rep. No. 101-881, at

96-97 (1990), *reprinted in* 1990 U.S.C.C.A.N. 2017, 2108-09.  Congress did grant states "the

option of imposing prior authorization requirements with respect to covered prescription drugs,"

but it barred them from using prior authorization as a back-door means to "prevent[] competent

---

[1]     While Merck also removed this case on the ground that Plaintiff's lawsuit raises substantial questions related to the federal Food, Drug & Cosmetic Act (*see* Notice of Removal ¶¶ 12-15), Merck does not address that ground for removal because the Court rejected a similar argument in the Kentucky AG case, *In re Vioxx*, 843 F. Supp. 2d at 669.

1138292v1

physicians from prescribing in accordance with their medical judgment." *Id.* at 98, 1990 U.S.C.C.A.N. at 2110; *see also Edmonds v. Levine*, 417 F. Supp. 2d 1323, 1329 (S.D. Fla. 2006) (noting that, under a prior-authorization regime, "the state may try to persuade a doctor to use an alternative drug, but ultimately the doctor retains the final word on use of the drug").  According to the House Committee Report, the prior-authorization regime gave states a role in the prescribing process, but denied them the power to "exclud[e] coverage of prescription drugs of manufacturers with agreements," because exclusion would undermine the goal of "assuring access."  H.R. Rep. No. 101-881, at 98, 1990 U.S.C.C.A.N. at 2110.

Second, Congress also mandated that federal Medicaid funds would generally be unavailable to help cover drugs that were not subject to a rebate agreement.  *See id.* at 97, 1990 U.S.C.C.A.N. at 2109.  The rebate requirement was intended to ensure that Medicaid would have "the benefit of the best price for which a manufacturer sells a prescription drug."  *See id.* at 96, 1990 U.S.C.C.A.N. at 2108.

Congress continued to refine Medicaid to better implement its goals over the next several years.  Most notably, in 1993, Congress amended the statute to give states some authority to exclude specific prescription drugs from Medicaid coverage, while placing tight restrictions on that authority.  *See* Omnibus Budget Reconciliation Act of 1993, Pub. L. No. 103-66, § 13602(d), 107 Stat. 312 (1993).  As the House Committee Report explains, "[t]he purpose of this provision [was] to permit the States to reduce Medicaid spending on prescription drugs while not diminishing the medical care of Medicaid patients."  H.R. Rep. No. 103-111, at 205 (1993), *reprinted in* 1993 U.S.C.C.A.N. 378, 532.

This Court recognized the complexity of federal Medicaid law in the Louisiana AG proceeding involving Vioxx.  In its ruling on Merck's motion for summary judgment in that case,

the Court devoted seven pages to analyzing whether Louisiana had the authority to deny coverage of Vioxx under federal Medicaid law. *See In re Vioxx Prods. Liab. Litig.*, MDL No. 1657, No. 05-3700, 2010 U.S. Dist. LEXIS 142767, at *12-21 (E.D. La. Mar. 31, 2010). As the Court explained:

- Pursuant to Medicaid regulations, a state must "reimburse any use for a covered outpatient drug which is either (1) approved by the Federal Drug and Food administration ('FDA') or (2) supported by one or more citations in any congressionally-recognized compendia." *Id.* at *14 (internal quotation marks and citation omitted).

- Under 42 U.S.C. § 1396r-8(d)(1)(B), a state may deny coverage for outpatient drugs in only four limited circumstances: "1) if the prescribed use for the drug is not for a medically accepted indication (i.e. the FDA has not approved the drug for the use prescribed); 2) if the drug is listed in § 1396r-8(d)(2), or is subsequently determined by the Secretary of the U.S. Department of Health and Human Services (DHH) to be subject to clinical abuse or misuse; 3) if an agreement between the state and the drug manufacturer restricts use of the drug; or 4) if the drug has been excluded by a state-established restrictive (or exclusive) formulary." *Id.*

- Under the applicable facts, the only section of 42 U.S.C. § 1396r-8(d)(1)(B) that could potentially have applied to the Louisiana AG's claims was the provision that a state may deny Vioxx coverage through a restrictive formulary. *Id.* at *16.

- Under 42 U.S.C. § 1396r-8(d)(4), a Medicaid formulary "must include the covered outpatient drugs of any manufacturer which has entered into and complies with a rebate agreement," but even if "a rebate agreement exists," a drug may be excluded "with respect to the treatment of a specific disease or condition for an identified population" if "the excluded drug does not have a significant, clinically meaningful therapeutic advantage in terms of safety, effectiveness, or clinical outcome of such treatment for such population over other drugs included in the formulary and there is a written explanation (available to the public) of the basis for the exclusion." *Id.* at *16-17 (internal quotation marks and citations omitted).

- Further, 42 U.S.C. § 1396r-8(d)(4)(D) provides that a state choosing to exclude a drug using this provision "must establish a prior authorization program which will provide an opportunity for physicians to obtain coverage for excluded drugs at the discretion of the state." *Id.* at *17.

- Thus, "whether Louisiana has discretion to deny coverage for Vioxx" under federal Medicaid regulations ***depends on whether the state Medicaid program complies with these federal provisions***. *Id.* at *18.

5

The Court's Findings of Fact & Conclusions of Law included a similarly detailed analysis of these same federal Medicaid requirements, as well as whether Louisiana had proven at trial that it **could** and **would** have established an exclusive formulary that denied coverage to Vioxx if more information about the drug had been revealed.  *See In re Vioxx Prods. Liab. Litig.*, MDL No. 1657, 2010 U.S. Dist. LEXIS 64388, at *27-31, *58-61 (E.D. La. June 29, 2010).  In that decision, the Court found that there are a number of federal requirements that must be met before a state can adopt an exclusive formulary.  For example, federal law requires that an exclusive formulary be developed by a Pharmacy & Therapeutics committee appointed by the Governor, *id.* at *39-40 (citing 42 U.S.C. § 1396r-8(d)(4)(A)), and that states adopting exclusive formularies file amended state plans and seek approval from CMS, *id.* at *40 (citing 42 C.F.R. § 430.12(c)).  The Court ultimately concluded that the Louisiana Attorney General could not prove that Louisiana would have adopted an exclusive formulary in compliance with these and other federal requirements.  *Id.* at *58-61.

### B.      The Present Lawsuit

Plaintiff filed the present suit on December 28, 2005, asserting causes of action for violation of the Montana Food, Drug, and Cosmetic Act, deceit, violation of the Unfair Trade Practices and Consumer Protection Act ("CPA"), and unjust enrichment and restitution.  (*See* Orig. Compl. ¶¶ 64-86.)  According to Plaintiff, Merck knowingly "misrepresented the effectiveness of Vioxx in comparison to other non-steroidal anti-inflammatory drugs and misrepresented and over-promoted its use when it was not medically justified."  (*See id.* Section I.)  The original Complaint alleges that this conduct "induced the State of Montana . . . to purchase Vioxx in many instances where it provided no benefit over other less risky and less expensive drugs."  (*Id.* ¶ 60; *see also id.*, Section I ("As a consequence of Merck's false advertising, promotion, and marketing of Vioxx and other misrepresentations, the State of

6

Montana . . . [was] caused to spend money on Vioxx that was not medically justified.").)  As such, Plaintiff seeks, *inter alia*, "an order restoring to the State . . . all monies acquired by Merck by means of its unlawful practices" and an order requiring "Merck to pay restitution which would restore the State of Montana [to] . . . the financial position that [it] would have enjoyed absent Merck's false representations and over-promotion."  (*Id.*, Prayer for Relief.)

On March 1, 2006, Merck removed the case to federal court, citing the existence of federal question jurisdiction because, *inter alia*, Plaintiff's claims rested on the interpretation of federal Medicaid law.  Merck explained that Plaintiff's claim for recovery of monies spent on Vioxx prescriptions raises important federal questions related to the federal Medicaid statute and its underlying regulations.  (Notice of Removal ¶¶ 16-23.)  Plaintiff immediately filed a motion to remand, Merck filed an opposition brief on March 21, 2006, and the State filed its reply brief on March 24, 2006.  The case was transferred to this Court in August 2006.  Prior to transfer, the district court in Montana granted Merck's motion to stay the case pending MDL transfer.

Plaintiff filed an amended complaint on June 13, 2012, retaining only a cause of action under the Montana CPA, eliminating its request for restitution, and limiting its prayer for relief to civil penalties, an injunction, costs, and attorneys' fees.  (*See generally* First Am. Compl.) Merck filed a motion for judgment on the pleadings with respect to these claims on May 3, 2013.  (*See* MDL ECF No. 64,374.)  Rather than respond to Merck's dispositive motion, Plaintiff wrote a letter to the Court requesting a stay of briefing on Merck's motion (*see* Letter from Scott A. Powell to Judge Fallon, May 29, 2013 (attached as Ex. 2)), and filed a motion to remand before this Court on September 3, 2013, and a supplement to that motion on September 9, 2013 (*see* MDL ECF Nos. 64,574, 64,583).

1138292v1

## ARGUMENT

I.  **PLAINTIFF'S ORIGINAL COMPLAINT SATISFIES THE REQUIREMENTS FOR SUBSTANTIAL FEDERAL JURISDICTION UNDER *GRABLE*.**

The Court has subject-matter jurisdiction over this case under the Supreme Court's decision in *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005), which recognizes the presence of substantial federal question jurisdiction in cases involving state-law claims that depend on the resolution of complex federal issues.  This is such a case because Plaintiff's original bid to recover Medicaid dollars the State spent in covering Vioxx prescriptions depends in large part on the interpretation of federal Medicaid law, which determines both the drugs a state must cover under its Medicaid program and the limited circumstances under which it can decline to pay for such drug.

In *Grable*, the Supreme Court unanimously reiterated its "longstanding" recognition that federal question jurisdiction is not limited to federal questions that arise on the face of a complaint, but also extends to "state-law claims that ***implicate*** significant federal issues."  *Id.* at 312 (emphasis added).[2]  As the Court explained, federal question jurisdiction exists if a state-law claim "necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities."  *Id.* at 314.  Thus, under *Grable*, substantial federal question jurisdiction exists over a state-law claim if four requirements are satisfied:  (1) the claim "necessarily" raises a federal issue; (2) the federal issue is actually disputed; (3) the federal issue is "substantial"; and (4) the exercise of federal jurisdiction over that issue will not unsettle the

---

[2]      Throughout its brief, Plaintiff employs quotation marks around the word "implicates," in an apparent attempt to argue that "mere 'implications' of federal law" are insufficient to confer federal jurisdiction. (*E.g.*, Mot. at 2.)  This suggestion is meritless.  "[I]mplicate" is the Supreme Court's term, not Merck's.  *Grable*, 545 U.S. at 312 (jurisdiction arises when "state-law claims implicate significant federal issues").

1138292v1

federal-state balance of judicial power that Congress sought to create.  *See id.*  As set forth below, each of these requirements is satisfied.

A.    **This Case "Necessarily" Raises Issues Of Federal Medicaid Law.**

First, Plaintiff's allegations "necessarily" raise a federal issue.  In its original Complaint, Montana claims that Merck's alleged "false advertising, promotion, and marketing of Vioxx and other misrepresentations" "induced the State of Montana . . . to purchase Vioxx."  (*See* Orig. Compl., Section I; *id.* ¶ 60.)  That core allegation presupposes that Montana had the authority to refuse to cover or limit Vioxx prescriptions as a matter of law.  However, the question of Montana's authority to limit coverage of drugs under Medicaid is a complicated one of federal law, as this Court has already recognized.  *See In re Vioxx*, 2010 U.S. Dist. LEXIS 142767, at *18 ("whether Louisiana has discretion to deny coverage for Vioxx" under federal Medicaid regulations **depends on whether the state Medicaid program complies with these federal provisions**).  A federal question is therefore necessarily presented.

Judge Weinstein's ruling in *McGraw* is directly on point.  There, West Virginia brought Medicaid-related claims in state court against Eli Lilly, the manufacturer of the prescription drug Zyprexa, alleging that Lilly had fraudulently promoted Zyprexa, causing damages to the state's Medicaid program.  *See* 476 F. Supp. 2d at 233.  Lilly removed the case on substantial federal question grounds, and the case was transferred to the *Zyprexa* MDL proceeding.  West Virginia moved to remand, arguing that the *Grable* requirements were not met.  Judge Weinstein denied the motion, however, holding that whether the state was obligated to cover Zyprexa "using funds largely provided by the federal government" was a federal question that was "essential" to the plaintiff's theory of recovery.  *Id.*  As Judge Weinstein explained, "[e]xcept in certain narrowly defined situations, states participating in the Medicaid program must cover drugs that are subject

9

to an agreement between the manufacturer and the federal government."  *Id.*  Thus, plaintiff's claims could not be evaluated without careful consideration of the federal statutory scheme.

So too here.  In order for Plaintiff to prove that Merck's alleged conduct caused the State to cover Vioxx prescriptions on behalf of its Medicaid recipients, it must establish that Montana Medicaid had discretion under some provision of federal law to exclude or restrict Vioxx from its reimbursement scheme.  This is a "necessary" federal question.

Plaintiff attempts to distinguish Judge Weinstein's remand rulings in *Zyprexa* on the ground that they dealt with "off-label" promotion (Mot. at 18), but this effort fails.  *McGraw* made clear that the jurisdictional issue in those cases did not turn on the off-label nature of the alleged promotion.  Rather, as in this case, "[r]esolution of the question of the state's obligation to reimburse its insureds for Zyprexa, using funds largely provided by the federal government, [was] essential to the state's theory of damages and present[ed] a substantial and disputed federal issue under *Grable*."  476 F. Supp. 2d at 233.  Plaintiff also contends that Judge Weinstein's rulings should be given little weight because the court "provided little explanation of how claims for damages related to Medicaid expenditures raised these issues."  (Mot. at 18.)  To the contrary, Judge Weinstein penned lengthy, thorough opinions outlining the parameters of the federal Medicaid framework and applying it to the state's claim for damages.  *See, e.g.*, *McGraw*, 476 F. Supp. 2d at 233-34 (devoting four paragraphs to distilling the federal Medicaid framework implicated by the state's suit).  This stands in stark contrast to Plaintiff's cited authority, which is utterly bereft of analysis.  *See, e.g.*, *Alaska v. Eli Lilly*, No. 3:06-CV-88 TMB, 2006 WL 2168831, at *3 (D. Alaska July 28, 2006) (Mot. at 17); *McGraw*, 476 F. Supp. 2d at 234 (criticizing *Alaska* for failing to "discuss the federal Medicaid issues presented in sufficient detail for [a] court to be able to analyze them").

1138292v1

Plaintiff also argues that "Merck's Medicaid argument" cannot provide a basis for federal jurisdiction because there is not "a single reference to Medicaid" in the original Complaint and the issue therefore does not "affirmatively" appear in the pleadings.  (Mot. at 8.)  But the test under *Grable* is not whether the complaint affirmatively identifies the federal law at issue in the case.  If that were the case, *Grable* jurisdiction would be easily avoided.  Rather, the test is whether the asserted state-law claims implicate federal issues (regardless of whether those federal issues are explicitly identified in the complaint).  *See, e.g.*, *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 922 F. Supp. 2d 475, 484-85 (S.D.N.Y. 2013) (finding substantial federal question jurisdiction despite the plaintiff's argument that her complaint only set forth a negligence claim "under New York state law" "without any references to the federal securities laws," because plaintiff's claims would require interpretation of the rules and regulations promulgated by the U.S. Securities and Exchange Commission under the Exchange Act, even though they were not mentioned in the complaint); *Patriot Universal Holding, LLC v. McConnell*, No. 12-C-0907, 2012 U.S. Dist. LEXIS 162628, at *8-10 (E.D. Wis. Nov. 13, 2012) (even though plaintiff did not reference patent law, his "classic state-law claim" for malpractice required resolution of substantial questions of federal patent law).  Here, while Plaintiff assiduously avoided using the word "Medicaid" in its Complaint, the Complaint nevertheless expressly requested reimbursement of ***all funds*** spent by the State for Vioxx prescriptions (*see, e.g.*, Orig. Compl., Section I & Prayer for Relief), which inherently includes a request for recovery of Medicaid funds, as other state attorney generals' similar complaints readily admit.[3]

---

[3]     The fact that Plaintiff's original Complaint sought recovery of Medicaid funds is further confirmed by Plaintiff's discovery responses that state:  "Montana seeks recovery of funds paid by the Medicaid Program, and said funds were contributed at the local, state and federal levels of government pursuant to applicable statutes and regulations."  (*See, e.g.*, Interrog. Resps.)  Notably, this more recent statement on the issue contradicts the State's prior position in its March 2006 motion to remand that it was only seeking reimbursement for payments "the State itself has made on behalf of state employees, and not for Medicaid recipients."  (*See* Pl.'s Br. in Supp. of Mot. to

*(cont'd)*

1138292v1

As such, the "fair reading" Plaintiff asks for (Mot. at 8-9) ineluctably leads to the conclusion that Montana's original Complaint implicates a federal issue.

Next, Plaintiff asserts that other cases have rejected substantial federal question jurisdiction in similar circumstances and that any Medicaid issue presented in this case is, at most, simply an alternative theory supporting recovery.  (Mot. at 9-11.)  Plaintiff is wrong. Plaintiff first cites *Mississippi ex rel. Hood v. AstraZeneca Pharm., LP*, 744 F. Supp. 2d 590 (N.D. Miss. 2010), for the proposition that a merely "gestalt" notion that Medicaid is implicated by the complaint does not suffice to create jurisdiction.  (Mot. at 9-10.)  In *Hood*, the court concluded that Medicaid was merely background; it did not identify any specific argument by the defendant that the State's causation theory turned on resolving whether Medicaid would have allowed the State to deny coverage.  *See* 744 F. Supp. 2d at 600-01.  No such "gestalt" theory is advanced by Merck here.  Rather, as elaborated above, the complaint in this case expressly alleges that Merck caused Montana to spend money on Vioxx.  Accordingly, *Hood* is inapposite.

Plaintiff also cites *Louisiana ex rel. Caldwell v. Bristol Myers-Squibb Sanofi Holding P'ship*, No. 2:12-cv-443, 2012 WL 3866493 (W.D. La. Sept. 4, 2012) (Mot. at 10), arguing that the court there rejected "nearly identical" arguments.  But *Caldwell* is inapposite too.  Unlike this case, the allegations and claims in *Caldwell* did not require Louisiana to prove that it would not have paid for the drug had the drug's full risks been disclosed.  2012 WL 3866493, at *3. Instead, the AG had alleged the causal theory that the defendant's conduct "caused physicians to write prescriptions they would not have written had they known all of the facts."  *Id*.  Indeed, the court specifically distinguished this Court's decision in the Louisiana AG proceeding involving

_____

*(cont'd from previous page)*
Remand at 5-6, *State of Montana, ex rel Mike McGrath v. Merck & Co.*, No. 6:06-cv-00007-DWM, ECF No. 7 (Mar. 7, 2006).)

1138292v1

Vioxx on that basis.  *Id*. (holding that *Vioxx* was "not controlling on this case" because the AG in the instant case did not need to prove "that he would not have bought [the drug] had he known of the defect") (internal quotation marks and citation omitted).  Here, by contrast, the Complaint expressly pleads that Merck caused damage to Montana by inducing it to cover Vioxx in the first place – a theory that plainly depends on federal law.[4]

Nor does *Caldwell* support the suggestion that the Medicaid issue presented here is merely a "defense."  Because the State's original Complaint asserts a right to restitution under the CPA, it undertook the burden of alleging and proving causation.  *See* Mont. Code Ann. § 30-14-131(1) ("The court may enter orders or judgments necessary to restore to a person any money or property, real or personal, that may have been ***acquired by means of*** any practice in this part declared to be unlawful.") (emphasis added).  As this Court held in the Louisiana case, this entails an affirmative burden on the Plaintiff to prove that it could have denied Vioxx coverage under Medicaid.  *See In re Vioxx*, 2010 U.S. Dist. LEXIS 64388, at *38 ("The State of Louisiana did not meet their burden of showing that they could and would have established an exclusive formulary and excluded Vioxx from it had the State known different information about the drug."); *id*. at *43-44 ("Apart from the question of whether LDHH *could* have instituted an exclusive formulary while Vioxx was on the market, Plaintiff did not carry its burden that, had the State possessed different clinical information about Vioxx, it *would* have sought to restrict Vioxx Medicaid reimbursements entirely.").

---

[4]      To the extent Plaintiff also alleges that Merck's alleged conduct caused damage by inducing doctors to write prescriptions for Vioxx, such an allegation would not change the analysis.  There was no allegation in the *Caldwell* complaint that the state would have banned Plavix from its Medicaid formulary (*see generally* Pet., ECF No. 1-1, *Caldwell v. Bristol Myers Squibb Sanofi Pharm. Holding P'ship*, No. 6:12-cv-443 (W.D. La. filed Feb. 15, 2012)); thus, the "necessity" issue was resolved in the AG's favor because it "presumably [could] prove [causation] by merely showing that the defendants' false or misleading advertising caused physicians to write prescriptions." 2012 WL 3866493, at *3.  The court did not consider a complaint, like the one here, that expressly alleges a causal theory requiring the State to prove that it could have denied coverage of an FDA-approved drug.

1138292v1

Plaintiff's next case, *New Mexico ex rel. King v. Ortho-McNeil-Janssen Pharms., Inc.*, No. CIV 08-0779 BB/WDS, 2009 U.S. Dist. LEXIS 116524 (D.N.M. Jan. 26, 2009) (Mot. at 10-11), supports removal here, rather than undermining it.  In *King*, "the State claim[ed] that [d]efendants fraudulently caused physicians to prescribe an expensive and unsafe medication, thereby triggering the State's obligation under Medicaid to pay for this expensive and unsafe medication." *King*, 2009 U.S. Dist. LEXIS 116524, at *7.  Such an allegation is fundamentally different from the one Montana asserts here.  Montana did not allege that its "obligation under Medicaid" led it to pay for Vioxx that was prescribed by doctors as a result of Merck's misconduct; rather, Montana alleged that Merck's conduct "induced the State of Montana . . . to purchase Vioxx."  (*See* Orig. Compl., Section I; *id.* ¶ 60.)  As the *King* court suggested, "[c]laiming that [d]efendants wrongly triggered the State's obligation to pay for [a drug] is completely different" from claiming, as Montana does here, that the State did not have such an obligation as a matter of law, despite the requirements of the federal Medicaid statute.  *King*, 2009 U.S. Dist. LEXIS 116524, at *7.  In fact, the court stated that "[i]f Defendants' characterization of the State's complaint were accurate" – specifically, that "the State's complaint is an effort, at least in part, to obtain reimbursement from Defendants for payments it has made for Risperdal prescriptions, even though such payment is required by federal law" – "it is possible a substantial federal question might be present in this case." *Id.* at *6.

Plaintiff's related contention that the Medicaid issues are at most relevant to one "alternative" form of relief because they relate only to restitution and not to penalties or injunctive relief (Mot. at 9) is also wrong.  Plaintiff's argument relies primarily on *Howery v. Allstate Insurance Co.*, 243 F.3d 912 (5th Cir. 2001) (Mot. at 9), but that case involved a situation where the federal issue was an afterthought, not a central aspect of the plaintiff's

14

allegations.  In *Howery*, the plaintiff homeowner filed a claim with the defendant insurance company after his townhome burned down.  *Id*. at 914.  When the defendant refused to pay because it determined that the plaintiff had committed arson, the plaintiff filed suit in Texas state court, asserting that the defendant engaged in various false, misleading and deceptive acts in violation of the Texas Deceptive Trade Practices Act ("DTPA").  *Id*. at 915.  Over the next two and a half years, the plaintiff filed ten amended complaints.  *Id*.  Only in the tenth edition was there any reference to federal law; specifically, the plaintiff asserted for the first time that the defendant "further violat[ed]" the DTPA by also violating Federal Trade Commission rules and regulations.  *Id*. (internal quotation marks and citation omitted).  The defendant removed the case to federal court on the basis of substantial federal question jurisdiction, and the plaintiff moved for remand.  *Id*.  The court determined that the plaintiff's allegation that the defendant "further violat[ed] [ ] the Texas Deceptive Trade Practices Act" by also violating Federal Trade Commission rules was not enough to confer federal jurisdiction because that allegation was merely an "alternate grounds for finding a violation of the DTPA" and was therefore "not a *necessary* element of the state claim."  *Id.* at 918 (internal quotation marks and citation omitted).  This case is nothing like *Howery*.  After all, the allegation presenting a federal issue here was not added as an afterthought to Montana's complaint.  Rather, the only causal theory alleged to support restitution under the CPA is the theory that Merck induced Montana to expend money on Vioxx.  Accordingly, *Howery* is inapposite.[5]

---

[5]    *Howery* also apparently gave no consideration to the possibility of supplemental jurisdiction and should be limited in light of that oversight.  As long as one issue implicated a substantial federal question, that is enough; substantial federal question jurisdiction does not require that every claim for relief turn exclusively on federal law. *See McGrath*, 2008 U.S. Dist. LEXIS 10355, at *13 ("Federal jurisdiction, however, can rest on a federal question raised by only one of several claims that the plaintiff asserts.").  Indeed, because Congress has expressly provided for supplemental federal jurisdiction over state-law claims, the notion that every claim in a suit must present a federal question is simply legal error.  *See* 28 U.S.C. § 1367(a); *see also Davis v. GMAC Mortg. LLC*, No. 4:11-CV-95 (CDL), 2012 U.S. Dist. LEXIS 33351, at *8 n.3 (M.D. Ga. Mar. 13, 2012) ("[T]he Court finds a substantial

*(cont'd)*

1138292v1

In short, Plaintiff's cases are either inapposite or unpersuasive. As Judge Weinstein held in a case just like this one, Plaintiff's allegations necessarily present a federal issue because the State's theory of causation – that it would have denied coverage of an FDA-approved drug – depends on an interpretation of federal Medicaid law. For all of these reasons, Plaintiff's claims easily satisfy the first *Grable* requirement.

**B.     The Federal Medicaid Issue Is "Disputed" Because Merck Disagrees That Montana Could Deny Coverage Of Vioxx.**

*Grable*'s second requirement – that the federal issues raised by the case be actually "disputed" – is also satisfied here, and Plaintiff does not appear to contend otherwise. In order to prove that Montana Medicaid would have excluded or restricted Vioxx from Medicaid coverage, Plaintiff must show that the State had the authority to do so under federal law – a showing Merck maintains cannot be made. Thus, the second element of the *Grable* test is easily met.

**C.     The Federal Medicaid Issues Are "Substantial" Because They Implicate Medicaid's Congressionally Calibrated Prescription Drug Scheme, Which Applies Nationwide.**

*Grable*'s third requirement is also satisfied because the federal questions necessarily raised in this case are not only disputed but "substantial." Plaintiff disagrees, arguing that "any Medicaid issue in this case would [not] be an 'important issue to the federal system as a whole,'"

_____

*(cont'd from previous page)*

federal question exists with respect to Plaintiffs' breach of contract claims, and the Court has supplemental jurisdiction over Plaintiffs' claims for breach of the implied duty of good faith and fair dealing to the extent that any such claims are separate from the breach of contract claims."). Two of Plaintiff's other cases, *Pennsylvania v. Eli Lilly & Co.*, 511 F. Supp. 2d 576, 581 (E.D. Pa. 2007) (Mot. at 17), and *Utah v. Eli Lilly & Co.*, 509 F. Supp. 2d 1016 (D. Utah 2007) (Mot. at 17), were premised on the same flawed reasoning and should not influence the Court's ruling here either. *See Pennsylvania*, 511 F. Supp. 2d at 581 (granting motion to remand because, *inter alia*, "'liability may proceed on entirely non-federal grounds'") (citation omitted); *Utah*, 509 F. Supp. 2d at 1024-25 (substantial federal question jurisdiction did not exist where two out of three theories did not raise federal issues); *see also* Jennifer E. Fairbairn, *Keeping Grable Slim: Federal Question Jurisdiction and the Centrality Test*, 58 Emory L.J. 977, 1006-08 (2009) (criticizing *Utah v. Eli Lilly* court's conclusion that "the federal issue must always be the only disputed issue" as "problematic" and unjustified by *Grable*).

16

but rather a fact-bound, situation-specific inquiry.  (Mot. at 15 (quoting *Gunn v. Minton*, 133 S.
Ct. 1059, 1066 (2013)).)  Plaintiff is mistaken.

As Judge Weinstein explained, a state that wishes to pursue a theory that it would have
denied coverage of a drug in its Medicaid program must prove that it could do so within the
context of complex federal Medicaid laws.  Moreover, "[t]he federal questions presented by"
such a "suit extend beyond the definition of a single federal statutory term to encompass a broad
range of federal regulatory and funding provisions." *McGraw*, 476 F. Supp. 2d at 234.  The
interpretation of those provisions, in turn, has implications far beyond the parties in a civil suit;
after all, they form essential components of Congress's overarching Medicaid policy of ensuring
that Medicaid-eligible patients have access to beneficial medicines, while keeping the costs of
that access under control. *See Edmonds*, 417 F. Supp. 2d at 1330-31 ("The statutory scheme is
carefully constructed in such a way to precisely circumscribe the only methods by which a state
may remove a Medicaid-eligible drug from coverage and prevent it from either arbitrarily
removing a drug or adopting its own *ad hoc* procedure for removing a drug from coverage.").  In
this case, for example, Montana's theory that it would not have paid for an FDA-approved drug
for an FDA-approved indication is in significant tension with Congress's goal that Medicaid
participants have access to the same drugs as do the beneficiaries of private insurance plans.
Thus, the broader federal interests are clear, and the requirement that the federal question raised
be "substantial" is satisfied.

Plaintiff's contrary contention rests primarily on *Hood v. AstraZeneca*, which concluded
that Medicaid issues "would 'be fact-bound and situation-specific *under Mississippi law*.'"  (Mot.
at 15-16 (quoting 744 F. Supp. 2d at 601).)  But *Hood* involved different proposed Medicaid
questions – whether a state is allowed to seek reimbursement for drugs covered through

Medicaid and whether Medicaid preempts the State's claims.  744 F. Supp. 2d at 599.

Particularly because the defendants had couched the Medicaid issue in terms of preemption, the

*Hood* court viewed the federal issues arising predominantly as a defense – which cannot give rise

to federal jurisdiction.  *See id.* at 602-05.  Thus, the court concluded that the "central question" in

the case before it was "whether the Defendants' advertising and promotion methods violate

[Mississippi] tort law."  *Id.* at 601 (internal quotation marks and citation omitted).  Here, by

contrast, the federal Medicaid issue would be central to resolving the causation element of the

tort at issue because it governs the question whether Montana could have denied coverage of

Vioxx consistent with Medicaid's requirements.

　　　Moreover, unlike the "fact-bound and situation-specific" issues central to the resolution

of the state's claims in *Hood*, it is clear that resolution of the causation question in this case

would turn largely on a construction of federal law.  *See In re Vioxx*, 2010 U.S. Dist. LEXIS

142767, at *12-21 (engaging in extensive legal analysis to determine whether Louisiana could

have restricted Vioxx coverage consistent with federal Medicaid laws).  The resolution of this

question also would likely have a significant impact on the development of federal law, since

numerous similar suits have been filed in recent years by AGs seeking to recover Medicaid

dollars on the theory that the state would not have paid for a drug but for the allegedly unlawful

conduct of its manufacturer.  As one legal commentator has noted, "[w]ithout doubt, tort suits by

states against pharmaceutical manufacturers to recover states' Medicaid reimbursements to

pharmacies, based upon manufacturers' marketing and sales of their products, are on the

increase."  Scott Smith, *The Escalation of Tort Claims by States Against Drug Companies for*

*Medicaid Reimbursement*, Nuisance Law, Feb. 12, 2010, *available at*

http://www.nuisancelaw.com/articles/thars-no-gold-them-thar-pills-contingent-fee-driven-

lawsuits.  Thus, in contrast to *Hood*, the federal issue raised by Plaintiff's complaint has

significance not only for the parties here, but for the federal Medicaid scheme at large.

Plaintiff also relies on *Gunn*, 133 S. Ct. 1059 (*see* Mot. at 16) – but that case involved a

federal patent issue with no implications for the broader federal system and is thus not analogous

to the instant case.  In *Gunn*, the plaintiff brought a legal malpractice claim in state court against

his former attorneys arising out of a failed patent infringement suit that had been litigated in state

court.  133 S. Ct. at 1062-63.  The plaintiff contended that the attorneys committed legal

malpractice by failing to raise an experimental-use argument at the outset of the underlying

patent case, which ultimately led to the invalidation of the plaintiff's patent for his computer

program and telecommunications network.  *Id.* at 1063.  The trial court in the malpractice action

found in favor of the attorneys, reasoning that the patent infringement claims would have failed

even if the experimental-use argument had been timely raised.  *Id.*  Thereafter, the plaintiff

appealed to the Texas Court of Appeals, claiming, for the first time, that "[b]ecause his legal

malpractice claim was based on an alleged error in a patent case, it 'aris[es] under' federal patent

law for purposes of 28 U.S.C. § 1338(a)."  *Id.* (citation omitted).  The plaintiff further reasoned

that because, under section 1338(a), "[n]o State court shall have jurisdiction over any claim for

relief arising under any Act of Congress relating to patents," the Texas trial court in which the

malpractice suit was brought lacked jurisdiction.  *Id.* (internal quotation marks and citation

omitted).  As such, the plaintiff argued, the trial court's order should be invalidated, allowing

him to bring suit in federal court.  *Id.*  The Texas Court of Appeals rejected the plaintiff's

argument, finding that substantial federal question jurisdiction did not extend to the plaintiff's

malpractice claim, but the Texas Supreme Court sided with the plaintiff.  *Id.*[6]

---

[6]      Although plaintiff's argument was premised on the "arising under" language set forth in 28 U.S.C. § 1338,
*(cont'd)*

1138292v1

The U.S. Supreme Court reversed, holding that no substantial federal question was presented.  Although the Court agreed that the plaintiff's claims "may necessarily raise disputed questions of patent law, those cases are by their nature unlikely to have the sort of significance for the federal system necessary to establish jurisdiction."  *Id.* at 1065.  Rather, the issue was highly important only to "plaintiff's case and to the parties [in the case]," *id.* at 1066; there was no such significance to the "federal system as a whole," *id.*  This was so, the Court explained, because of "the backward-looking nature of a legal malpractice claim."  *Id.*  "No matter how the state courts resolve that hypothetical 'case within a case,' it will not change the real-world result of the prior federal patent litigation," and the plaintiff's "patent will remain invalid."  *Id.* at 1067.

The present case bears no resemblance to *Gunn*.  Unlike "the backward-looking nature of a legal malpractice claim" that would not have even affected the patent at issue in that specific case, the issues disputed here directly implicate the ***federal*** Medicaid laws that delineate the requirements for restricting or excluding coverage of FDA-approved drugs.  *Cf. Manning v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 12-4466 (JLL), 2013 WL 1164838, at *6 (D.N.J. Mar. 20, 2013) ("[T]he instant case[,which involves a type of short-selling practice deemed illegal by federal securities law,] [is] distinguishable from the backward looking malpractice 'case within a case' at issue in *Gunn*.").  The scope of that authority is important to Medicaid beneficiaries throughout Montana and potentially, the entire country.[7]

For all of these reasons, the federal issues presented are "substantial."

_____

*(cont'd from previous page)*
the Texas Supreme Court relied on the analogous *Grable* factors in finding federal jurisdiction.  133 S. Ct. at 1064.

[7]      For this reason, Plaintiff's other arguments to the effect that the federal issue presented here is "'fact-bound and situation-specific'" (Mot. at 15 (quoting *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 701 (2006))) are misplaced.  Here, the federal issue is front and center, and its resolution would guide future cases, unlike the issue in the Supreme Court's *Empire* decision, which involved fact-bound claims about one deceased federal employee's health benefits.  *See* 547 U.S. at 700.

**D.    Exercising Federal Jurisdiction Will Not Disturb The "Congressionally Approved Balance Of Federal And State Judicial Responsibilities."**

Finally, the fourth requirement of *Grable* is satisfied because exercising jurisdiction will not "disturb[] any congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314; *see also id.* at 318-20 (suggesting that recognition of jurisdiction should "not materially affect, or threaten to affect, the normal currents of litigation").

As Judge Weinstein concluded in *McGraw*, exercising federal jurisdiction over a state-initiated suit to recover all Medicaid payments for a prescription drug "will not attract 'a horde of original filings and removal cases raising other state claims with embedded federal issues.'" *McGraw*, 476 F. Supp. 2d at 234 (citation omitted). After all, suits like this one do not involve the interpretation of broad federal standards that may apply in a range of cases, but rather "an intricate federal regulatory scheme including detailed federal funding provisions" that are only implicated in a narrow group of state-law cases. *Id.*

Plaintiff appears to have overlooked this part of *McGraw* in arguing that Judge Weinstein failed to explain "how exercising federal jurisdiction in these cases would affect the balance between federal and state courts" (Mot. at 18-19) – a contention that is plainly erroneous. Plaintiff's alternative contention – that the Court should again look to *Hood v. AstraZeneca* (*id.* at 15-16) – is no more persuasive. Citing *Hood*, Plaintiff argues that "permitting federal jurisdiction" whenever the "Medicaid statutes are simply implicated would permit almost every case involving a pharmaceutical product to be removed to federal court based on federal-question jurisdiction." (Mot. at 16.) *Hood*'s analysis is deeply flawed. In *Hood*, the AG sued defendant pharmaceutical companies, seeking to recover Medicaid funds the State spent in covering prescriptions as a result of defendants' alleged fraudulent representations and omissions. *Hood*, 744 F. Supp. 2d at 594. The court remanded the suit to state court, in large part based on

21

its speculative finding that sustaining federal jurisdiction over cases implicating federal Medicaid laws "could 'attract . . . a horde of original filings and removal cases raising other state claims with embedded federal issues.'"  *Id.* at 601 (citation omitted).  "Under these circumstances," the court determined, "the fact that Congress provided no private right of action in the Federal Medicaid Act presents compelling evidence that a finding of federal jurisdiction in the instant case would not be 'consistent with congressional judgment about the sound division of labor between state and federal courts.'"  *Id.* (citation omitted).

But the court's prediction of a horde of federal litigation had no basis in fact and has not been borne out by experience.  *McGraw* was decided over six years ago; yet there has been no "'horde of original filings'" or "'removal cases raising other state claims with embedded federal issues.'"  *Id.* at 601 (citation omitted).  While Medicaid-based AG suits are growing, they remain a small sliver of the overall universe of prescription-drug litigation, and there is no evidence that *McGraw*'s holding has encouraged federal filings or removals in any other category of Medicaid-related suits.  Moreover, the logic underlying *Hood*'s reasoning was fundamentally flawed.  After all, *Hood* emphasized Congress's failure to provide a federal cause of action in the Medicaid statute, but the absence of an express federal cause of action is a necessary predicate for substantial federal question jurisdiction, which, by definition, covers cases in which there is no federal cause of action.  Thus, as *Grable* expressly clarifies, Congress's decision not to create a federal cause of action cannot be dispositive.  *See* 545 U.S. at 318-20.[8]

---

[8]      *South Carolina ex rel. McMaster v. Eli Lilly & Co.*, No. 7:07-1875-HMH, 2007 WL 2261693, at *3 (D.S.C. Aug. 3, 2007) (Mot. at 17), also cited in Plaintiff's brief, embraces the same flawed reasoning, rendering Plaintiff's reliance on it misplaced as well.

In short, Judge Weinstein's logic was unassailable; exercising jurisdiction over the State of Montana's claim does not pose any threat that swarms of state-law Medicaid-related claims will overtake the federal court system. Accordingly, the *Hood* court's ruling should be rejected.

## II.    THE COURT SHOULD NOT REMAND PLAINTIFF'S SUIT IF IT CORRECTLY FINDS THAT THE ORIGINAL COMPLAINT CREATED FEDERAL QUESTION JURISDICTION.

In an effort to boost its remand prospects, Plaintiff has now amended its complaint to excise all Medicaid-related allegations. According to Plaintiff, even if the case was ever subject to federal jurisdiction, it should be remanded pursuant to 28 U.S.C. 1367(c) because the amended Complaint does not "seek relief for any state expenditures for Vioxx." (Mot. at 19.) This last-ditch argument should be rejected too.

Federal law expressly provides for supplemental jurisdiction over state-law claims if federal jurisdiction exists over any claim in a suit. *See* 28 U.S.C. § 1367(a); *see also Davis*, 2012 U.S. Dist. LEXIS 33351, at *8 n.3 ("[T]he Court finds a substantial federal question exists with respect to Plaintiffs' breach of contract claims, and the Court has supplemental jurisdiction over Plaintiffs' claims for breach of the implied duty of good faith and fair dealing to the extent that any such claims are separate from the breach of contract claims."); Fairbairn, 58 Emory L.J. at 1006-08 (criticizing one court's conclusion that "the federal issue must always be the only disputed issue" as "problematic" and unjustified by *Grable*).[9] Such jurisdiction still exists if the claim giving rise to federal jurisdiction is dismissed. *Brown v. Sw. Bell Tel. Co.*, 901 F.2d 1250, 1254 (5th Cir. 1990) ("[W]hen there is a subsequent narrowing of the issues such that the federal claims are eliminated and only pendent state claims remain, federal jurisdiction is not

---

[9]        Another one of Plaintiff's cases, *Pennsylvania*, 511 F. Supp. 2d at 581 (Mot. at 17), was premised on the same flawed reasoning and should therefore not influence the Court's ruling here. *See Pennsylvania*, 511 F. Supp. 2d at 581 (granting remand because, *inter alia*, "'liability may proceed on entirely non-federal grounds'") (citation *(cont'd)*

1138292v1

extinguished.").  While Plaintiff is correct that a court *may* decline to exercise supplemental jurisdiction where the claims giving rise to federal jurisdiction have been dismissed (*see* Mot. at 20-21), the factors set forth in 28 U.S.C. § 1367 weigh heavily in favor of exercising supplemental jurisdiction here.

In deciding whether to exercise supplemental jurisdiction, a court must consider whether: "(1) the claim raises a novel or complex issue of State law (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction (3) the district court has dismissed all claims over which it has original jurisdiction or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction."  28 U.S.C. § 1367(c)(3).  Further, courts have recognized that, even if one or more of these factors is present, a court should nonetheless exercise supplemental jurisdiction if "considerations of judicial economy, convenience, fairness, and comity" warrant doing so.  *Mendoza v. Murphy*, 532 F.3d 342, 346 (5th Cir. 2008).  In the MDL context, these factors generally justify the exercise of jurisdiction over non-dismissed claims because they "parallel the factors considered by the MDL panel in its decision to transfer the case to th[e] [MDL] court" in the first place.  *In re New England Mut. Life Ins. Co. Sales Practices Litig.*, MDL-1105, 2003 U.S. Dist. LEXIS 25664, at *8-9 (D. Mass. May 20, 2003) (the factors that supported transfer of the action to the MDL court " also weigh in favor of this court's retaining supplemental jurisdiction over the . . . plaintiffs' remaining state-law claims."), *aff'd*, 358 F.3d 16 (1st Cir. 2004); *see also, e.g.*, *W. Va. ex rel. McGraw v. Eli Lilly & Co.*, No. 06-CV-5826, 2008 U.S. Dist. LEXIS 79625, at *7 (E.D.N.Y. Sept. 26, 2008) (retaining jurisdiction over non-dismissed claims in *Zyprexa* MDL litigation to ensure a "degree of national uniformity" with respect to claims against the

_____

*(cont'd from previous page)*
omitted).

24

pharmaceutical company in the MDL proceeding); *In re Nat'l Century Fin. Enters.*, 580 F. Supp. 2d 630, 644 (S.D. Ohio 2008) ("declin[ing] to exercise supplemental jurisdiction over the remainder of the claims . . . would defeat the goal of judicial economy for which the action filed by [plaintiff] was consolidated into this multidistrict litigation"); *In re JetBlue Airways Corp. Privacy Litig.*, 379 F. Supp. 2d 299, 311 (E.D.N.Y. 2005) ("the objectives underlying multi-district litigation[] make it appropriate to exercise supplemental jurisdiction in this case" where federal claim had been dismissed).

For this reason, Judge Weinstein exercised supplemental jurisdiction over state-law claims alleged by the West Virginia Attorney General in the *Zyprexa* MDL proceeding, even after the Medicaid claims in that case were dismissed. *See McGraw*, 2008 U.S. Dist. LEXIS 79625, at *9. According to Judge Weinstein, "values of judicial economy, convenience, fairness, and comity" weighed in favor of trying the case in federal court because there were "[m]any states with claims against Lilly involving alleged unfair, deceptive, and fraudulent acts" in the *Zyprexa* MDL proceeding, and a "degree of national uniformity is desirable as these states' claims proceed." *Id.* at *7, *9. Judge Weinstein also noted that substantial discovery related to Zyprexa cases had already been conducted in the MDL proceeding, making the MDL court "well positioned to oversee the remaining discovery, ensuring that there is adequate consistency and fairness through the discovery process." *Id.* at *8. Finally, the court noted that the "exercise of federal jurisdiction over this action . . . does not pose any threat [of] a significant rise in the caseload of the federal courts." *Id.* at *8-9.

The situation here is no different. As in *McGraw*, the Court is currently presiding over all of the litigating AGs' claims and therefore can ensure "national uniformity" in the treatment of these actions. 2008 U.S. Dist. LEXIS 79625, at *7. In addition, the MDL Court has overseen

25

substantial discovery with regard to the Vioxx litigation and can best ensure that the remaining AG discovery is completed efficiently and fairly.  (*See, e.g.*, Order, ECF No. 64,279 (Feb. 28, 2013).)  Moreover, the fact that the Court has already tried the claims of one state AG and is familiar with the general facts and law that are at issue in these cases makes it all the more appropriate to exercise supplemental jurisdiction over this matter.  Nor is there any risk that exercising supplemental jurisdiction in the Montana case (along with the handful of other AG cases that remain) will significantly increase the federal caseload.

Finally, retaining supplemental jurisdiction over Plaintiff's case is all the more appropriate because "what has happened is not that the district court has dismissed the federal claim, but that the [P]laintiff[] ha[s] voluntarily deleted the federal predicate from [his] complaint."  *In re New England*, 2003 U.S. Dist. LEXIS 25664, at *6.  As one MDL court explained, such "behavior [should be taken] into account in determining whether the balance of factors to be considered under the pendent jurisdiction doctrine support a remand in the case."  *Id.* at *7 (internal quotation marks and citation omitted).

Plaintiff's contrary arguments do not undermine this conclusion.  Plaintiff first contends that remand is appropriate here because "this case may present unique questions related to Montana law."  (Mot. at 20.)  But "[i]t is within the very nature of coordinated or consolidated pretrial proceedings in multidistrict litigation for the transferee judge to be called upon to apply the law of more than one state."  *In re Armored Car Antitrust Litig.*, 462 F. Supp. 394, 396 (J.P.M.L. 1978); *see also In re Glaceau VitaminWater Mktg. & Sales Practices Litig. (No. II)*, 764 F. Supp. 2d 1349, 1351 (J.P.M.L. 2011) (federal courts "routinely apply the laws of one or more jurisdictions" as part of their duties).  The Court has already done just that, developing a

26

wealth of experience regarding this case and AG claims generally that far surpasses that of any state court.

Analogizing to *Enochs v. Lampasas County*, 641 F.3d 155, 162 (5th Cir. 2011), Plaintiff also argues that remand would not create a heavy burden on the state court or inconvenience the parties.  (Mot. at 20-21.)  Unlike Plaintiff's case, however, in *Enochs*, the case "was still in its infancy" at the relevant time – "less than three months old" – and therefore "no discovery had occurred" and "no hearings or trial dates had been scheduled."  641 F.3d at 162.  Thus, "hardly any federal judicial resources, let alone a significant amount of resources, had been devoted to the district court's consideration of the [ ] state law claims (or to any claims)."  *Id*. at 159.  Indeed, "the district court was not even moderately familiar with any of the [ ] state law issues."  *Id*. at 162.  Under these circumstances, the court held that "no financial or other inconvenience would have occurred, and no prejudice would have arisen" by remanding the case.  *Id*.  By contrast, this Court has expended "immeasurable judicial resources" already, as Plaintiff admits.  (Mot. at 20.)  Given the maturity of the Vioxx MDL proceeding, and the Court's investment and extensive familiarity with this litigation, Plaintiff's reliance on *Enochs* is utterly unpersuasive.[10]

Finally, Plaintiff asserts that comity weighs heavily in favor of remand because "this case involves claims of a sovereign state."  (Mot. at 21.)  But as Judge Weinstein stated in *McGrath*, the potential for inconsistent determinations makes it "difficult to accept the proposition that the federal judicial system cannot provide a single integrated practice in these cases by the Attorneys General."  2008 U.S. Dist. LEXIS 10355, at *18.  Otherwise, "[p]otentially fifty states and the

---

[10]      For the same reasons, Plaintiff's insistence that remand would not burden or inconvenience the state court (Mot. at 20-21) is absurd.  Plaintiff would have the state court learn the legal and factual issues afresh and in doing so, repeat much of the work this Court has already done in presiding over Vioxx litigation generally and Vioxx AG cases specifically.

Commonwealth of Puerto Rico can independently sue in their respective jurisdictions," meaning that "local courts can potentially deliver at least fifty-one different results." *Id.*

## **CONCLUSION**

For the foregoing reasons, the Court should deny the renewed motion to remand.

Dated:  September 19, 2013                    Respectfully submitted,

                                               */s/ Dorothy H. Wimberly*
                                               Phillip A. Wittmann, 13625
                                               Dorothy H. Wimberly, 18509
                                               STONE PIGMAN WALTHER
                                               WITTMANN L.L.C.
                                               546 Carondelet Street
                                               New Orleans, LA 70130

                                               Douglas R. Marvin
                                               WILLIAMS & CONNOLLY LLP
                                               725 Twelfth St., N.W.
                                               Washington, DC 20005

                                               John H. Beisner
                                               Jessica Davidson Miller
                                               SKADDEN, ARPS, SLATE, MEAGHER &
                                               FLOM LLP
                                               1440 New York Avenue, N.W.
                                               Washington, DC 20005

                                               ATTORNEYS FOR MERCK SHARP &
                                               DOHME CORP.

1138292v1

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Opposition to Plaintiff's Renewed Motion to Remand has been served on Liaison Counsel, Russ Herman, Phillip Wittmann and Ann Oldfather, by U.S. Mail and e-mail or by hand delivery and e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8C, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 19th day of September, 2013.

/s/ Dorothy H. Wimberly
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, LA  70130
Phone:  504-581-3200
Fax:      504-581-3361
dwimberly@stonepigman.com

Defendants' Liaison Counsel

1138292v1