UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | |
|     Products Liability Litigation | * | |
| | * | |
| | * | MDL No. 1657 |
| | * | |
| This Document Relates to: | * | SECTION L |
| | * | |
|    State of Utah v. Merck, et al. | * | JUDGE ELDON E. FALLON |
|    Civil Action no. 2:09-cv-09336 | * | |
| | * | MAGISTRATE JUDGE |
| | * | KNOWLES |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * *

DEFENDANT'S OPPOSITION TO
PLAINTIFF'S RENEWED MOTION TO REMAND

Plaintiff's third motion to remand – and its recent supplement to that motion – are premised on the mistaken assumption that this lawsuit belongs in state court simply because it does not assert a federal cause of action. But the touchstone of substantial federal question jurisdiction, as elucidated by the U.S. Supreme Court in *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005), is not whether a complaint asserts a federal cause of action. Rather, the critical inquiry is whether Plaintiff's state-law claims "necessarily" raise "disputed" and "substantial" questions of federal law.

Clearly, they do. Utah alleges that it "allowed the purchase of Vioxx for Utah Medicaid recipients based upon" alleged misrepresentations by Merck "to the State . . . that Vioxx was safe and efficacious." As the Court is aware, the federal rules governing Medicaid coverage of prescription medications are highly complex and tremendously important to the proper functioning of the federal Medicaid system. Federal Medicaid rules govern whether and when *any* state – not just Utah – may limit or bar coverage of FDA-approved drugs like Vioxx, and the formularies (if any) that are adopted under these rules must be approved by the Centers for

Medicare and Medicaid Services ("CMS") before they can be put into effect.  Thus, the requirements of federal Medicaid law play a very substantial role in the State's theories of causation and injury.  This was the conclusion reached by Judge Jack Weinstein in several decisions in the *Zyprexa* litigation denying remand of similar cases brought by other governmental entities.  *See, e.g.*, *New Mexico v. Eli Lilly & Co.*, Nos. 04-MD-1596, 07-CV-01749 (JBW/RLM), 2009 U.S. Dist. LEXIS 20768, at *67-68 (E.D.N.Y. Mar. 11, 2009); *Montana ex rel. McGrath v. Eli Lilly & Co.*, Nos. 04-MD-1596, 07-CV-1933 (JBW), 2008 U.S. Dist. LEXIS 10355, at *8-10 (E.D.N.Y. Feb. 12, 2008); *West Virginia ex rel. McGraw v. Eli Lilly & Co.*, 476 F. Supp. 2d 230, 234 (E.D.N.Y. 2007).  It is also the conclusion suggested by this Court in a recent order involving the Pennsylvania AG suit, which noted that "[t]he presence of" claims seeking the recovery of "'costs allegedly incurred by [a] [state's] Medicaid program[]'" in a state's complaint "could be sufficient to confer subject matter jurisdiction." (Order & Reasons ("*Pennsylvania* Order") at 9 n.3, *Pennsylvania v. Merck & Co.*, MDL No. 1657, ECF No. 64,364 (filed Apr. 30, 2013) (quoting *In re Vioxx Prods. Liab. Litig.*, 843 F. Supp. 2d 654, 669 (E.D. La. 2012)).)

For these reasons, discussed further below, Plaintiff's motion to remand should be denied.[1]

## BACKGROUND

### A.      The Federal Medicaid Regime

In 1990, Congress overhauled the Medicaid prescription drug program, adopting two key features of the federal Medicaid statute that are relevant here.

---

[1]      While Merck also removed this case on the ground that Plaintiff's lawsuit raises substantial questions related to the federal Food, Drug & Cosmetic Act (*see* Notice of Removal ¶ 11), Merck does not address that ground for removal because the Court rejected a similar argument in the Kentucky AG case, *In re Vioxx*, 843 F. Supp. 2d at 669.

1138293v1

First, the 1990 legislation required that states participating in the Medicaid prescription drug program generally cover all on-label prescriptions for drugs subject to a rebate agreement with the Secretary of the Department of Health & Human Services. *See* Omnibus Budget Reconciliation Act of 1990, Pub. L. No. 101-508, § 4401(a), 104 Stat. 1388 (1990). As the House Committee Report makes clear, the requirement that participating States cover on-label prescriptions was enacted out of a "concern[] that Medicaid beneficiaries have access to the same range of drugs that the private patients of their physicians enjoy." *See* H.R. Rep. No. 101-881, at 96-97 (1990), *reprinted in* 1990 U.S.C.C.A.N. 2017, 2108-09. Congress did grant states "the option of imposing prior authorization requirements with respect to covered prescription drugs," but it barred them from using prior authorization as a back-door means to "prevent[] competent physicians from prescribing in accordance with their medical judgment." *Id.* at 98, 1990 U.S.C.C.A.N. at 2110; *see also Edmonds v. Levine*, 417 F. Supp. 2d 1323, 1329 (S.D. Fla. 2006) (noting that, under a prior-authorization regime, "the state may try to persuade a doctor to use an alternative drug, but ultimately the doctor retains the final word on use of the drug"). According to the House Committee Report, the prior-authorization regime gave states a role in the prescribing process, but denied them the power to "exclud[e] coverage of prescription drugs of manufacturers with agreements," because exclusion would undermine the goal of "assuring access." H.R. Rep. No. 101-881, at 98, 1990 U.S.C.C.A.N. at 2110.

Second, Congress also mandated that federal Medicaid funds would generally be unavailable to help cover drugs that were not subject to a rebate agreement. *See id.* at 97, 1990 U.S.C.C.A.N. at 2109. The rebate requirement was intended to ensure that Medicaid would have "the benefit of the best price for which a manufacturer sells a prescription drug." *See id.* at 96, 1990 U.S.C.C.A.N. at 2108.

1138293v1

Congress continued to refine Medicaid to better implement its goals over the next several years.  Most notably, in 1993, Congress amended the statute to give states some authority to exclude specific prescription drugs from Medicaid coverage, while placing tight restrictions on that authority.  *See* Omnibus Budget Reconciliation Act of 1993, Pub. L. No. 103-66, § 13602(d), 107 Stat. 312 (1993).  As the House Committee Report explains, "[t]he purpose of this provision [was] to permit the States to reduce Medicaid spending on prescription drugs while not diminishing the medical care of Medicaid patients."  H.R. Rep. No. 103-111, at 205 (1993), *reprinted in* 1993 U.S.C.C.A.N. 378, 532.

This Court recognized the complexity of federal Medicaid law in the Louisiana AG proceeding involving Vioxx.  In its ruling on Merck's motion for summary judgment in that case, the Court devoted seven pages to analyzing whether Louisiana had the authority to deny coverage of Vioxx under federal Medicaid law.  *See In re Vioxx Prods. Liab. Litig.*, MDL No. 1657, No. 05-3700, 2010 U.S. Dist. LEXIS 142767, at *12-21 (E.D. La. Mar. 31, 2010).  As the Court explained:

- Pursuant to Medicaid regulations, a state must "reimburse any use for a covered outpatient drug which is either (1) approved by the Federal Drug and Food administration ('FDA') or (2) supported by one or more citations in any congressionally-recognized compendia."  *Id.* at *14 (internal quotation marks and citation omitted).

- Under 42 U.S.C. § 1396r-8(d)(1)(B), a state may deny coverage for outpatient drugs in only four limited circumstances:  "1) if the prescribed use for the drug is not for a medically accepted indication (i.e. the FDA has not approved the drug for the use prescribed); 2) if the drug is listed in § 1396r-8(d)(2), or is subsequently determined by the Secretary of the U.S. Department of Health and Human Services (DHH) to be subject to clinical abuse or misuse; 3) if an agreement between the state and the drug manufacturer restricts use of the drug; or 4) if the drug has been excluded by a state-established restrictive (or exclusive) formulary."  *Id.*

- Under the applicable facts, the only section of 42 U.S.C. § 1396r-8(d)(1)(B) that could potentially have applied to the Louisiana AG's claims was the provision that a state may deny Vioxx coverage through a restrictive formulary.  *Id.* at *16.

4

- Under 42 U.S.C. § 1396r-8(d)(4), a Medicaid formulary "must include the covered outpatient drugs of any manufacturer which has entered into and complies with a rebate agreement," but even if "a rebate agreement exists," a drug may be excluded "with respect to the treatment of a specific disease or condition for an identified population" if "the excluded drug does not have a significant, clinically meaningful therapeutic advantage in terms of safety, effectiveness, or clinical outcome of such treatment for such population over other drugs included in the formulary and there is a written explanation (available to the public) of the basis for the exclusion." *Id*. at *16-17 (internal quotation marks and citations omitted).

- Further, 42 U.S.C. § 1396r-8(d)(4)(D) provides that a state choosing to exclude a drug using this provision "must establish a prior authorization program which will provide an opportunity for physicians to obtain coverage for excluded drugs at the discretion of the state." *Id*. at *17.

- Thus, "whether Louisiana has discretion to deny coverage for Vioxx" under federal Medicaid regulations ***depends on whether the state Medicaid program complies with these federal provisions***. *Id*. at *18.

The Court's Findings of Fact & Conclusions of Law included a similarly detailed analysis of these same federal Medicaid requirements, as well as whether Louisiana had proven at trial that it ***could*** and ***would*** have established an exclusive formulary that denied coverage to Vioxx if more information about the drug had been revealed. *See In re Vioxx Prods. Liab. Litig.*, MDL No. 1657, 2010 U.S. Dist. LEXIS 64388, at *27-31, *58-61 (E.D. La. June 29, 2010). In that decision, the Court found that there are a number of federal requirements that must be met before a state can adopt an exclusive formulary. For example, federal law requires that an exclusive formulary be developed by a Pharmacy & Therapeutics committee appointed by the Governor, *id.* at *39-40 (citing 42 U.S.C. § 1396r-8(d)(4)(A)), and that states adopting exclusive formularies file amended state plans and seek approval from CMS, *id.* at *40 (citing 42 C.F.R. § 430.12(c)). The Court ultimately concluded that the Louisiana Attorney General could not prove that Louisiana would have adopted an exclusive formulary in compliance with these and other federal requirements. *Id.* at *58-61.

5

B.        **The Present Lawsuit**

The State of Utah commenced this lawsuit on April 28, 2006, asserting causes of action for strict liability, negligence, negligence per se, fraud, breach of warranty and violations of the Utah False Claims Act ("UFCA").  (Orig. Compl. ¶¶ 21-69.)  The original complaint alleged that Merck "knowingly misrepresented to the State, as well as to physicians and the general public that Vioxx was safe and efficacious" and that the "State of Utah allowed the purchase of Vioxx for Utah Medicaid recipients based upon such representations."  (*Id.* ¶ 18.)  In addition to alleging that Merck's conduct caused the State to cover Vioxx prescriptions on behalf of Utah Medicaid beneficiaries, the original complaint also alleged that Merck's conduct caused the State to "suffer additional financial loss in the care of those Medicaid recipients who consumed prescriptions which were ineffective, unsafe and actively harmful."  (*Id.* ¶ 19.)

On May 18, 2006, Merck removed the case to federal court, citing the existence of federal question jurisdiction because Plaintiff's claims rested on the interpretation of federal Medicaid law and federal regulations promulgated under the Food, Drug and Cosmetic Act ("FDCA").  With respect to the first basis for jurisdiction, Merck explained that Utah's claims for recovery of monies spent on Vioxx prescriptions "implicate[] federal laws and regulations related to Medicaid because [they] depend[] on the interpretation and application of federal statutory provisions that govern what can be included in or rejected from state Medicaid formularies, including Utah's."  (Notice of Removal ¶ 15.)[2]  The State filed a motion to remand on May 24, 2006, Merck filed an opposition brief on June 8, 2006, and the State filed its reply brief on June 19, 2006.  (*Utah v. Merck & Co.*, No. 2:06CV00406, ECF Nos. 6, 12, 15.)  No ruling issued, and the case was ultimately transferred to this Court in November 2006.  (*Utah v.*

---

[2]        Merck also explained that resolution of Plaintiff's claims implicates the FDCA because the law is tightly

*(cont'd)*

1138293v1

*Merck & Co.*, No. 2:06-cv-9336, ECF No. 1.)  The State filed another motion to remand with this Court on October 18, 2007 (*see* MDL ECF No. 12,658), and the Court stayed matters related to remand shortly thereafter.

On June 13, 2012, Plaintiff filed an amended complaint jettisoning most of its claims, but retaining its claims under the UFCA and for negligence.  (*See* Am. Compl. ¶¶ 224-44.)  Plaintiff subsequently abandoned its negligence claim, leaving only its cause of action under the UFCA.  (*See* Mem. in Supp. of Mot. to Dismiss Sixth Cause of Action, MDL ECF No. 64,253 (filed Feb. 18, 2013).)  Plaintiff's Amended Complaint continues to advance the theory that Merck's conduct constituted "false claims that caused the State of Utah, by and through its employees and agents to pay for Vioxx prescriptions[.]"  (Am. Compl. ¶ 218.)  Plaintiff further alleges that "Utah Medicaid was required to pay for Vioxx pursuant to its terms with the federal government in establishing the pharmaceutical component of its Medicaid plan" and that "[w]hen Utah Medicaid discovered perceived problems with the safety and efficacy profile of Vioxx in the Summer of 2003, the Drug and Utilization Board put Vioxx on prior approval."  (*Id.* ¶ 220.)  According to Plaintiff, "[t]his meant that a physician was required to get approval from Utah Medicaid before a prescription of Vioxx would be reimbursed."  (*Id.*)

Merck filed a motion for judgment on the pleadings with respect to Plaintiff's sole remaining cause of action on May 3, 2013.  (*See* MDL ECF No. 64,375.)  Rather than respond to Merck's dispositive motion, Plaintiff sought a stay of briefing on Merck's motion (*see* MDL ECF No. 64,383) and filed its third motion to remand the case to state court on May 8, 2013 (*see* MDL ECF No. 64,382).  Plaintiff recently filed a supplement to its third motion to remand on September 3, 2013, offering a handful of recent cases that supposedly support the arguments set

_____

*(cont'd from previous page)*

linked to "the highly regulated representations at issue in the case."  (Notice of Removal ¶ 14.)

forth in its prior briefing.  (*See* MDL ECF No. 64,575.)  This opposition brief is intended to be a complete response to Utah's remand position as set forth in its several filings.

## ARGUMENT

The Court has subject-matter jurisdiction over this case under the Supreme Court's decision in *Grable*, 545 U.S. 308, which recognizes the presence of substantial federal question jurisdiction in cases involving state-law claims that depend on the resolution of complex federal issues.  This is such a case because the viability and merit of Plaintiff's theory – that Merck's alleged misrepresentations regarding Vioxx caused the State to reimburse Medicaid beneficiaries for the drug – will depend in part on the interpretation of federal Medicaid law, which determines both the drugs a state must cover under its Medicaid program and the limited circumstances under which it can decline to pay for such drugs.

In *Grable*, the Supreme Court unanimously reiterated its "longstanding" recognition that federal question jurisdiction is not limited to federal questions that arise on the face of a complaint, but also extends to "state-law claims that implicate significant federal issues."  *Id.* at 312.  As the Court explained, federal question jurisdiction exists if a state-law claim "necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities."  *Id.* at 314.  Thus, under *Grable*, substantial federal question jurisdiction exists over a state-law claim if four requirements are satisfied:  (1) the claim "necessarily" raises a federal issue; (2) the federal issue is actually disputed; (3) the federal issue is "substantial"; and (4) the exercise of federal jurisdiction over that issue will not unsettle the federal-state balance of judicial power that Congress sought to create.  *See id.*  As set forth below, each of these requirements is satisfied here.

A. **This Case "Necessarily" Raises Issues Of Federal Medicaid Law.**

First, Plaintiff's allegations "necessarily" raise a federal issue. Plaintiff alleges that if Utah Medicaid had known the alleged "truth" about Vioxx, it would have refused to cover Vioxx prescriptions. (*See, e.g.*, Orig. Compl. ¶¶ 18-19; *see also* Am. Compl. ¶¶ 218-20.) That core allegation presupposes that Utah had the authority to refuse to cover or limit Vioxx prescriptions as a matter of law. But the question of Utah's authority to limit coverage of drugs under Medicaid is one of federal law, as acknowledged in Plaintiff's amended complaint. (*See* Am. Compl. ¶ 220 (alleging that "Utah Medicaid was required to pay for Vioxx pursuant to its terms with the federal government in establishing the pharmaceutical component of its Medicaid plan" and that, "[w]hen Utah Medicaid discovered perceived problems with the safety and efficacy profile of Vioxx in the Summer of 2003, the Drug and Utilization Board put Vioxx on prior approval," meaning "that a physician was required to get approval from Utah Medicaid before a prescription of Vioxx would be reimbursed").)

Judge Weinstein's ruling in *McGraw* is directly on point. There, West Virginia brought Medicaid-related claims in state court against Eli Lilly, the manufacturer of the prescription drug Zyprexa, alleging that Lilly had fraudulently promoted Zyprexa, causing damages to the state's Medicaid program. *See* 476 F. Supp. 2d at 233. Lilly removed the case on substantial federal question grounds, and the case was transferred to the *Zyprexa* MDL proceeding. West Virginia moved to remand, arguing that the *Grable* requirements were not met. But Judge Weinstein denied the motion, holding that whether the state was obligated to cover Zyprexa "using funds largely provided by the federal government" was a federal question that was "essential" to the plaintiff's theory of recovery. *Id.* As Judge Weinstein explained, "[e]xcept in certain narrowly defined situations, states participating in the Medicaid program must cover drugs that are subject

9

to an agreement between the manufacturer and the federal government."  *Id.*  Thus, the plaintiff's claims could not be evaluated without careful consideration of the federal statutory scheme.[3]

So too here.  In order for Plaintiff to prove that Merck's alleged conduct caused Utah to cover Vioxx prescriptions on behalf of its Medicaid recipients, it must establish that Utah Medicaid had discretion under some provision of federal law to exclude or restrict Vioxx from its reimbursement scheme.[4]  This is a "necessary" federal question.

The Medicaid issues raised by Plaintiff's suit make the Kentucky AG suit relied on by Plaintiff (Mot. at 4) utterly inapposite.  After all, the Kentucky lawsuit did not involve a ***single*** question of federal Medicaid law.  Rather, Merck removed that case to federal court on the ground that Kentucky's allegations regarding compliance with FDA regulations gave rise to substantial federal question jurisdiction because they would entail resolution of the Food, Drug

---

[3]      Plaintiff contends that the reasoning used by Judge Weinstein in *McGraw* and other cases "is not correct for the reasons stated by every other United States District Court Judge who has reached a contrary result" (Mot. at 4), but most of the decisions plaintiff cites are themselves bereft of analysis, *see, e.g.*, *Texas v. Merck & Co.*, 385 F. Supp. 2d 604, 608 (W.D. Tex. 2005) (Mot. at 3) (asserting simply that substantial federal question jurisdiction was lacking because the Medicaid program was a state program and failing to appreciate the extent to which federal law constrains the discretion of a state Medicaid agency); *Alaska v. Eli Lilly & Co.*, No. 3:06-CV-88 TMB, 2006 WL 2168831, at *3 (D. Alaska July 28, 2006) (Mot. at 3) (asserting, without analysis, that "[t]he Court finds no substantial federal question in this matter at this time"); *see also McGraw*, 476 F. Supp. 2d at 234 (noting that *Alaska* "does not discuss the federal Medicaid issues presented in sufficient detail for [a] court to be able to analyze them").  Plaintiff's other cases are no more persuasive because they do not involve comparable allegations.  For example, *Missouri ex rel. Nixon v. Mylan Laboratories, Inc.*, No. 4:06CV603 HEA, 2006 WL 1459772, at *3 (E.D. Mo. May 23, 2006) (Mot. at 4), dealt solely with allegations of misrepresentations of average wholesale prices ("AWPs") and wholesale acquisition costs, which only "tangentially" relate to federal Medicaid law.  *See McGraw*, 476 F. Supp. 2d at 234 (expressly distinguishing AWP cases as addressing "a single federal statutory term" rather than an entire regulatory regime).  And *West Virginia ex rel. McGraw v. Rite Aid of West Virginia, Inc.*, No. 2:09-0956, 2010 WL 454488, at *1 (S.D. W. Va. Feb. 1, 2010) (Mot. at 4), centered on the allegation that pharmacies violated West Virginia law by failing to pass on generic drug cost savings to purchasers.  While federal Medicaid law sets the maximum price that may be charged for drugs for reimbursement under Medicaid, the court found no substantial federal question jurisdiction because, unlike the cases decided by Judge Weinstein (in which federal Medicaid law required the states "to cover Zyprexa under their individual state Medicaid programs"), "plaintiff's claims [in *Rite Aid*] d[id] not involve a similar federal mandate."  *Rite Aid*, 2010 WL 454488, at *4.

[4]      The State cannot escape this showing by pointing to the prior-approval program it adopted in 2003.  As this Court previously recognized, "[w]hile the prior approval procedure creates an incentive for physicians to prescribe drugs on the preferred drug list, authorization for a drug not on the list cannot be withheld."  *In re Vioxx*, 2010 U.S. Dist. LEXIS 64388, at *60.  In other words, even with the changes to Utah Medicaid's treatment of Vioxx in the Summer of 2003, the State could not deny coverage of Vioxx pursuant to federal Medicaid law.  *See id.*

10

and Cosmetic Act and supporting regulations.  *In re Vioxx*, 843 F. Supp. 2d at 668.[5]  In rejecting

this basis for jurisdiction, the Court distinguished Judge Weinstein's rulings in the *Zyprexa* MDL

proceeding, recognizing that in contrast to those cases, "Kentucky seeks civil penalties pursuant

to the KCPA and ***not*** federally-funded Medicaid reimbursement payments."  *Id.* at 669

(emphasis added).  Just recently, in a ruling related to the Pennsylvania AG case, the Court

similarly noted that in contrast to the Kentucky case, "[t]he presence of" claims seeking the

recovery of "'costs allegedly incurred by [a] [state's] Medicaid program[]'" in Pennsylvania's

complaint "could be sufficient to confer subject matter jurisdiction."  (*Pennsylvania* Order at 9

n.3 (quoting *In re Vioxx*, 843 F. Supp. 2d at 669).)  Because Utah's lawsuit seeks such costs –

and therefore necessarily raises substantial federal questions of federal Medicaid law – the

Kentucky case offers Plaintiff no help.

Plaintiff's related argument that this Court's Kentucky decision distinguished Judge

Weinstein's remand rulings on the ground that the litigation there dealt with "off-label"

promotion (Mot. at 4 (citing *In re Vioxx*, 843 F. Supp. 2d 654)) also fails.  As made clear in the

*McGraw* ruling, the jurisdictional issue in those cases did not turn on the off-label nature of the

promotion alleged.  Rather, just like this case, "[r]esolution of the question of the state's

obligation to reimburse its insureds for Zyprexa, using funds largely provided by the federal

government, [was] essential to the state's theory of damages and present[ed] a substantial and

disputed federal issue under *Grable*."  476 F. Supp. 2d at 233.

Plaintiff also cites *Utah v. Eli Lilly & Co.*, 509 F. Supp. 2d 1016 (D. Utah 2007) (*see*

Mot. at 3), which concluded that substantial federal question jurisdiction did not exist in part

because the State was pursuing three theories of liability, some of which did not rest on the

---

[5]        Merck also removed on the basis that jurisdiction existed on diversity grounds.  *See* 843 F. Supp. 2d at 656.

resolution of a federal question.  According to the court, the fact that two theories did not raise federal issues meant that the federal issue was not "essential" to resolving the State's claims.  *See id.* at 1024-25.  This reasoning was erroneous.  The State sought relief on all three theories of liability in that case, and the fact that one implicated a substantial federal question was enough; substantial federal question jurisdiction does not require that every claim for relief turn exclusively on federal law.  *See McGrath*, 2008 U.S. Dist. LEXIS 10355, at *13 ("Federal jurisdiction, however, can rest on a federal question raised by only one of several claims that the plaintiff asserts.").  Indeed, because Congress has expressly provided for supplemental federal jurisdiction over state-law claims, the notion that every claim in a suit must present a federal question is simply legal error.  *See* 28 U.S.C. § 1367(a); *see also Davis v. GMAC Mortg. LLC*, No. 4:11-CV-95 (CDL), 2012 U.S. Dist. LEXIS 33351, at *8 n.3 (M.D. Ga. Mar. 13, 2012) ("[T]he Court finds a substantial federal question exists with respect to Plaintiffs' breach of contract claims, and the Court has supplemental jurisdiction over Plaintiffs' claims for breach of the implied duty of good faith and fair dealing to the extent that any such claims are separate from the breach of contract claims."); *see also* Jennifer E. Fairbairn, *Keeping Grable Slim: Federal Question Jurisdiction and the Centrality Test*, 58 Emory L.J. 977, 1006-08 (2009) (criticizing *Utah v. Eli Lilly* court's conclusion that "the federal issue must always be the only disputed issue" as "problematic" and unjustified by *Grable*).[6]  In any event, Utah only alleges one cause of action under the UFCA, and all of its theories of relief turn on the allegation that Merck wrongfully caused the State to make Medicaid payments for costs related to Vioxx.

> For all of these reasons, Plaintiff's claims easily satisfy the first *Grable* requirement.

---

[6]        Another one of Plaintiff's cases, *Pennsylvania v. Eli Lilly & Co.*, 511 F. Supp. 2d 576, 581 (E.D. Pa. 2007) (Mot. at 3), was premised on the same flawed reasoning and should therefore not influence the Court's ruling here.

*(cont'd)*

**B.    The Federal Medicaid Issue Is "Disputed" Because Merck Disagrees That Utah Could Deny Coverage Of Vioxx.**

*Grable*'s second requirement – that the federal issues raised by the case be actually "disputed" – is also satisfied here, and Plaintiff does not contend otherwise.  In order to prove that Utah Medicaid would have excluded or restricted Vioxx from Medicaid coverage, Plaintiff must show that it had the authority to do so under federal law – a showing Merck maintains cannot be made.  Thus, the second element of the *Grable* test is easily met.

**C.    The Federal Medicaid Issues Are "Substantial" Because They Implicate Medicaid's Congressionally Calibrated Prescription Drug Scheme, Which Applies Nationwide.**

*Grable*'s third requirement is also satisfied because the federal questions necessarily raised in this case are not only disputed but "substantial."  Plaintiff disagrees, arguing that the federal issues are only "significant to the particular parties" in this case.  (Mot. at 6 (internal quotation marks and citation omitted).)  Plaintiff is mistaken.

As Judge Weinstein explained, a state that wishes to pursue a theory that it would have denied coverage of a drug in its Medicaid program must prove that it could do so within the context of complex federal Medicaid laws.  Moreover, "[t]he federal questions presented by" such a "suit extend beyond the definition of a single federal statutory term to encompass a broad range of federal regulatory and funding provisions."  *McGraw*, 476 F. Supp. 2d at 234.  The interpretation of those provisions, in turn, has implications far beyond the parties in a civil suit; after all, they form essential components of Congress's overarching Medicaid policy of ensuring that Medicaid-eligible patients have access to beneficial medicines, while keeping the costs of that access under control.  *See Edmonds*, 417 F. Supp. 2d at 1330-31 ("The statutory scheme is

---

*(cont'd from previous page)*
*See* 511 F. Supp. 2d at 581 (granting motion to remand because, *inter alia*, "'liability may proceed on entirely non-federal grounds'") (citation omitted).

1138293v1

carefully constructed in such a way to precisely circumscribe the only methods by which a state

may remove a Medicaid-eligible drug from coverage and prevent it from either arbitrarily

removing a drug or adopting its own *ad hoc* procedure for removing a drug from coverage.").  In

this case, for example, Utah's theory that it could deny or restrict Medicaid coverage of an FDA-

approved drug for an FDA-approved indication is in significant tension with Congress's goal that

Medicaid participants have access to the same drugs as do the beneficiaries of private insurance

plans.  Thus, the broader federal interests are clear, and the requirement that the federal question

raised be "substantial" is satisfied.[7]

Plaintiff's contrary contention rests primarily on *Gunn v. Minton*, 133 S. Ct. 1059 (2013)

(*see* Mot. at 6) – a case that involved a federal patent issue with no implications for the broader

federal system.  There, the plaintiff brought a legal malpractice claim in state court against his

former attorneys arising out of a failed patent infringement suit that had been litigated in state

court.  133 S. Ct. at 1062-63.  The plaintiff contended that the attorneys committed legal

malpractice by failing to raise an experimental-use argument at the outset of the underlying

patent case, which ultimately led to the invalidation of the plaintiff's patent for his computer

program and telecommunications network.  *Id.* at 1063.  The trial court in the malpractice action

found in favor of the attorneys, reasoning that the patent infringement claims would have failed

even if the experimental-use argument had been timely raised.  *Id.*  Thereafter, the plaintiff

appealed to the Texas Court of Appeals, claiming, for the first time, that "[b]ecause his legal

malpractice claim was based on an alleged error in a patent case, it 'aris[es] under' federal patent

law for purposes of 28 U.S.C. § 1338(a)."  *Id.* (citation omitted).  The plaintiff further reasoned

---

[7]        For this reason, Plaintiff's suggestion in a footnote that the federal government lacks any interest in the
present litigation because it has already resolved Medicaid-related claims with Merck is frivolous.  (*See* Mot. at 4
n.1.)  The federal government's resolution of those claims does not in any way diminish the federal interest in the

*(cont'd)*

that because, under section 1338(a), "[n]o State court shall have jurisdiction over any claim for relief arising under any Act of Congress relating to patents," the Texas trial court in which the malpractice suit was brought lacked jurisdiction.  *Id.* (internal quotation marks and citation omitted).  As such, the plaintiff argued, the trial court's order should be invalidated, allowing him to bring suit in federal court.  *Id.*  The Texas Court of Appeals rejected the plaintiff's argument, finding that substantial federal question jurisdiction did not extend to the plaintiff's malpractice claim, but the Texas Supreme Court sided with the plaintiff.  *Id.*[8]

The U.S. Supreme Court reversed, holding that no substantial federal question was presented.  Although the Court agreed that the plaintiff's claims "may necessarily raise disputed questions of patent law, those cases are by their nature unlikely to have the sort of significance for the federal system necessary to establish jurisdiction."  *Id.* at 1065.  Rather, the issue was highly important only to "plaintiff's case and to the parties before it," *id.* at 1066; there was no such significance to the "federal system as a whole," *id.*  This was so, the Court explained, because of "the backward-looking nature of a legal malpractice claim."  *Id.* at 1066-67.  "No matter how the state courts resolve that hypothetical 'case within a case,' it will not change the real-world result of the prior federal patent litigation," and plaintiff's "patent will remain invalid."  *Id.* at 1067.

The present case bears no resemblance to *Gunn*.  Unlike "the backward-looking nature of a legal malpractice claim" that would not have even affected the patent at issue in that specific case, the issues disputed here directly implicate the scope of Utah's authority to deny coverage of

_____

(*cont'd from previous page*)
interpretation of federal Medicaid law.

[8]      Although the plaintiff's argument was premised on the "arising under" language set forth in 28 U.S.C. § 1338, rather than § 1331, the Texas Supreme Court relied on the analogous *Grable* factors in finding federal jurisdiction.  133 S. Ct. at 1064.

1138293v1

drugs through its Medicaid program.  The scope of that authority is important to Medicaid beneficiaries throughout Utah and, potentially, the entire country.

Plaintiff's recent submission cites several cases construing *Gunn* (*see* Supp'l Mot. at 3-8), but none of those cases is analogous.  Specifically, none of Plaintiff's cases involved substantial issues of federal Medicaid law that implicate the ***federal*** policy of expanding affordable coverage of FDA-approved drugs for Medicaid recipients.  For example, in *Municipality of Mayaguez v. Corporacion Para el Desarrollo del Oeste, Inc.*, No. 11-2241, 2013 U.S. App. LEXIS 16333, at *13-15 (1st Cir. Aug. 7, 2013) (Supp'l Mot. at 3), a municipality brought a breach-of-contract suit against a local development corporation alleging that it breached the parties' contract by failing to comply with certain regulations issued by the Department of Housing and Urban Development ("HUD").  2013 U.S. App. LEXIS 16333, at *1-2.  Relying on *Gunn*, the First Circuit held that substantial federal question jurisdiction was lacking because the federal issue presented by the case – i.e., whether the development company's violation of HUD regulations amounted to a breach of contract – was not "substantial."  *Id.* at *15.  In its ruling, the Court of Appeals reasoned that the suit did not actually implicate the meaning of the HUD regulations, but instead focused on "the disputes between the parties [that] were overwhelmingly factual."  *Id.*  In addition, the appellate court did not find that the federal issue raised in the case posed significant implications for the federal government at large.  *Id.* at *16 ("the outcome in this case could not call into question thousands of other actions undertaken by a federal agency").  In short, there was "simply no [] risk [] to any federal program."  *Id.* at *18.

Here, by contrast, Plaintiff's theory of liability – i.e., that Merck's alleged conduct caused the State to expend Medicaid dollars on Vioxx prescriptions – does in fact turn on the interpretation of complex federal Medicaid laws.  While resolution of this theory of liability

requires assessment of various facts with regard to the Utah Medicaid program, there can be no dispute that the ultimate determination is one of law – not fact. *See In re Vioxx*, 2010 U.S. Dist. LEXIS 142767, at *12-21 (engaging in extensive legal analysis to determine whether Louisiana could have restricted Vioxx coverage consistent with federal Medicaid laws). Moreover, the resolution of this question would likely have a significant "impact on the development of federal law," *Mayaguez*, 2013 U.S. App. LEXIS 16333, at *15, since numerous similar suits have been filed in recent years by AGs seeking to recover Medicaid dollars on the theory that the state would not have paid for a drug but for the allegedly unlawful conduct of its manufacturer. As one legal commentator has noted, "[w]ithout doubt, tort suits by states against pharmaceutical manufacturers to recover states' Medicaid reimbursements to pharmacies, based upon manufacturers' marketing and sales of their products, are on the increase." Scott Smith, *The Escalation of Tort Claims by States Against Drug Companies for Medicaid Reimbursement*, Nuisance Law, Feb. 12, 2010, *available at* http://www.nuisancelaw.com/articles/thars-no-gold-them-thar-pills-contingent-fee-driven-lawsuits. Thus, in contrast to *Mayaguez*, the federal issue raised by Plaintiff's complaint has significance not only for the parties here, but for the federal Medicaid scheme at large.[9]

---

[9]     Plaintiff's other authorities are similarly inapposite. Most, like *Gunn* and *Mayaguez*, plainly had no implications for future litigation. *See, e.g., Merced Irrigation Dist. v. Cnty. of Mariposa*, No. 1:12-cv-01645-LJO-SKO, 2013 U.S. Dist. LEXIS 58208, at *22-26 (E.D. Cal. Apr. 23, 2013) (Supp'l Mot. at 7) (removal based on possibility that claim would require interpretation of federal statute was "unlikely to have broad application to litigants everywhere"); *MDS (Canada), Inc. v. Rad Souce Techs., Inc.*, 720 F.3d 833, 842 (11th Cir. 2013) (Supp'l Mot. at 4) (discrete issue of patent law was "unlikely to control any future cases"); *West Virginia ex rel. Morrisey v. Pfizer, Inc.*, No. 3:13-2546, 2013 WL 3927833, at *7 (S.D. W. Va. May 13, 2013) (Supp'l Mot. at 4-5) ("the state court's resolution of the patent issues here" will not "have real-world effects on potential future patent infringement actions") (internal quotation marks and citation omitted); *Mirowski Family Ventures, LLC v. Boston Scientific Corp.*, No. 1:11-cv-736-WTL-DKL, 2013 WL 788214, at *8  (S.D. Ind. July 29, 2013)  (Supp'l Mot. at 7) (patent infringement suit did not raise substantial enough issues of federal patent law because the patent at issue had already expired and "any ruling in this case cannot have any effect on any future events; it can only resolve [the parties'] obligations for events that occurred in the past."); *Haith ex rel. Accretive Health, Inc. v. Bronfman*, Nos. 12 C 6781, 12 C 6798, 2013 WL 3895246, at *16 (N.D. Ill. Mar. 1, 2013) (Supp'l Mot. at 7) (shareholder derivative lawsuits raised insubstantial issues of federal law, the resolution of which "will not have effects beyond the parties to these

*(cont'd)*

1138293v1

Plaintiff also devotes a portion of its supplement to highlighting that only two cases applying *Gunn* have found substantial federal question jurisdiction to be satisfied.  (*See* Supp'l Mot. at 8-9 (citing *Manning v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 12-4466 (JLL), 2013 WL 1164838 (D.N.J. Mar. 20, 2013); *One & Ken Valley Housing Grp. v. Maine State Housing Auth.*, 716 F.3d 218 (1st Cir. 2013)).)  To the extent Plaintiff intends to suggest that substantial federal question jurisdiction is rare after *Gunn*, Plaintiff is mistaken, since there are at least two other such cases.  *See, e.g., Rosenfeld v. N. Kingstown Sch. Dep't*, No. 13-222S, 2013 U.S. Dist. LEXIS 112516, at *23 (D.R.I. Apr. 30, 2013) ("Application of th[e *Gunn*] test to the Petition confirms the existence of federal jurisdiction."), *report and recommendation adopted by* 2013 U.S. Dist. LEXIS 112513 (D.R.I. Aug. 9, 2013); *Camillus Clean Air Coalition v. Honeywell Int'l*, No. 5:13-CV-365 (FJS/DEP), 2013 U.S. Dist. LEXIS 125843, at *5-6 (N.D.N.Y. Sept. 4, 2013) (state-law causes of action based on defendant's alleged violation of a federal consent decree satisfied dictates of *Gunn*); (*see also* Supp'l Mot. at 8-9 (citing cases).)  In any event, jurisdictional scorekeeping of ***other*** unrelated cases proves nothing about ***this*** case.  *Gunn* did not change the law governing substantial federal question jurisdiction, and none of the cases distinguishing *Gunn* to date is even remotely analogous to Plaintiff's suit here.  Thus, notwithstanding *Gunn*, the *Zyprexa* line of cases relied on by Merck remains good law and dictates a denial of Plaintiff's motion.  This is particularly so because, contrary to Plaintiff's assertion, *Manning* and *One & Ken Valley* are more analogous to this case than the other post-*Gunn* cases cited by Plaintiff:  like Plaintiff's case here, they both involved substantial issues of

_____

*(cont'd from previous page)*
suits and certainly could not pose a threat to the workings of the federal system as a whole").  In one other case, the federal issue presented was not necessary to the resolution of ***any*** cause of action.  *Andrews v. Daughtry*, No. 1:2012cv00441, 2013 WL 664564, at *8 (M.D.N.C. Feb. 22, 2013) (Supp'l Mot. at 7) (while contract-based action raised issues of federal Copyright law, the claims did not ***require*** resolution of federal law because each cause of action was based on multiple non-federal theories of liability).

18

federal law with significance to the federal system at large.  *See Manning*, 2013 WL 1164838, at

*5 (resolution of whether naked short selling was illegal was substantial because it would "also

impact subsequent lawsuits" and implicated "the entire federal system for short selling")

(internal quotation marks and citation omitted); *One & Ken Valley*, 716 F.3d at 225 (suit brought

by Section 8 landlords satisfied substantial federal question jurisdiction because, *inter alia*,

"other Section 8 landlords have brought almost identical actions elsewhere," and the federal

issue was "important to the success of the [Section 8] program") (internal quotation marks and

citation omitted).

In short, the federal issue presented is "substantial" – i.e., its resolution has consequences

that extend beyond the parties to the instant civil suit, potentially frustrating Congress's federal

policy of encouraging affordable access to FDA-approved drugs and influencing the outcome of

other lawsuits by state AGs seeking to recover Medicaid funds spent on allegedly defective

pharmaceutical products.  Accordingly, the third requirement of *Grable* is satisfied.

### D.    Exercising Federal Jurisdiction Will Not Disturb The "Congressionally Approved Balance Of Federal And State Judicial Responsibilities."

Finally, the fourth requirement of *Grable* is satisfied because exercising jurisdiction will

not "disturb[] any congressionally approved balance of federal and state judicial

responsibilities."  *Grable*, 545 U.S. at 314; *see also id.* at 318-20 (suggesting that recognition of

jurisdiction should "not materially affect, or threaten to affect, the normal currents of litigation").

Plaintiff contends that this consideration is not met because the federal government intended for

Medicaid reimbursements to be sought under state law.  (Mot. at 6.)  According to Plaintiff,

asserting federal jurisdiction over this case will result in federal jurisdiction "every time the

Attorney General seeks to enforce the Utah False Claims Act."  (*Id*.)  This argument, too, should

be rejected.

19

Applying this factor in *McGraw*, Judge Weinstein concluded that exercising federal jurisdiction over a state-initiated suit to recover all Medicaid payments for a prescription drug "will not attract 'a horde of original filings and removal cases raising other state claims with embedded federal issues.'" *McGraw*, 476 F. Supp. 2d at 234 (citation omitted).  As Judge Weinstein explained, suits like this one do not involve the interpretation of broad federal standards that may apply in a range of cases, but rather "an intricate federal regulatory scheme including detailed federal funding provisions" that are only implicated in a narrow group of state-law cases.  *Id.*  Judge Weinstein's logic was unassailable; exercising jurisdiction over the State of Utah's claims does not pose any threat that swarms of state-law Medicaid-related claims will overtake the federal court system.

Plaintiff's contrary argument makes no sense.  In the main, Plaintiff finds it significant that Congress did not create a federal cause of action to seek Medicaid reimbursements (*see* Mot. at 7), but that is so in every case of substantial federal question jurisdiction, which by definition covers those cases in which there is no federal cause of action.  Thus, as *Grable* expressly clarifies, Congress's decision not to create a federal cause of action cannot be dispositive.  *See* 545 U.S. at 318-20.

*Utah v. Eli Lilly* is flawed for this reason as well.  In that case, the court placed undue emphasis on the absence of a federal cause of action for Medicaid fraud, finding that the lack of a federal cause of action was "especially important" because "Congress has specifically required states to seek reimbursement from legally liable third parties, but has provided no federal cause of action to do so."  *See* 509 F. Supp. 2d at 1023 (footnote omitted).  Thus, the court reasoned, Congress must have contemplated that Medicaid fraud claims could proceed in state court.  *See id.*  But it does not follow that **no** Medicaid-based claims are removable under section 1331.  For

20

example, Congress did not intend to create general federal jurisdiction over quiet title actions;

yet, the Supreme Court unanimously held that the quiet title action in *Grable* was removable

because the plaintiff's theory of relief necessarily raised disputed and substantial issues of

federal law.  *See* 545 U.S. at 319-20.  Several of Plaintiff's other authorities embraced the same

flawed reasoning, rendering Plaintiff's reliance on those cases misplaced as well.  *See, e.g.*,

*South Carolina ex rel. McMaster v. Eli Lilly & Co.*, No. 7:07-1875-HMH, 2007 WL 2261693, at

\*3 (D.S.C. Aug. 3, 2007) (Mot. at 3) ("[T]he fact that Congress provided no private right of

action in the Federal Medicaid Act presents compelling evidence that a finding of federal

jurisdiction in the instant case would not be 'consistent with congressional judgment about the

sound division of labor between state and federal courts.'") (citation omitted); *Marcus v. Med.*

*Initiatives, Inc.*, No. 8:12-cv-2864-T-24 TGW, 2013 WL 718630, at \*1, \*6 (M.D. Fla. Feb. 27,

2013) (Supp'l Mot. at 5-6) (finding that consumer-fraud case alleging that pharmaceutical

company duped consumers into believing that they were purchasing a brand-name drug did not

trigger substantial federal question jurisdiction given "[t]he absence of a federal cause of action

for FDCA violations"); *Van Vactor v. Wells Fargo Bank, N.A.*, No. CV 12-2310-CAS (PJWx),

2013 WL 3053014, at \*2 (C.D. Cal. June 14, 2003) (Supp'l Mot. at 7) (suit involving claim that

defendant improperly denied request for assistance under Home Affordable Mortgage Program

did not satisfy substantial federal question jurisdiction in large part because "HAMP does not

provide a private, federal right of action").

   Plaintiff also argues that recognizing federal jurisdiction here would justify such

jurisdiction in all UFCA cases (*see* Mot. at 6), but this argument misconstrues the basis of federal

jurisdiction in this case.  Utah appears to believe that jurisdiction is claimed to rest on the federal

requirement that states seek recovery for Medicaid overpayments through state-law causes of

1138293v1

action.  (*See* Mot. at 3 (citing *Ark. Dep't of Health & Human Servs. v. Ahlborn*, 547 U.S. 268

(2006), which discusses that requirement).)  But that requirement is not in dispute in this case.

Rather, it is the necessity of resolving complex Medicaid regulations governing the State's

authority to restrict or deny coverage of prescription drugs that gives rise to a substantial federal

question.  Such questions are not present in the run-of-the-mill UFCA case, such as the

hypothetical suit against a doctor for overcharging the State's Medicaid program set forth in

Plaintiff's brief.  (*See* Mot. at 6-7.)

　　　　For this reason too, each of the *Grable* elements is satisfied in this case, and Plaintiff's

renewed motion to remand should be denied.[10]

## CONCLUSION

　　　　For the foregoing reasons, the Court should deny the renewed motion to remand.

Dated:  September 19, 2013　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　*/s/ Dorothy H. Wimberly*
　　　　　　　　　　　　　　　　　　　　Phillip A. Wittmann, 13625
　　　　　　　　　　　　　　　　　　　　Dorothy H. Wimberly, 18509
　　　　　　　　　　　　　　　　　　　　STONE PIGMAN WALTHER
　　　　　　　　　　　　　　　　　　　　WITTMANN L.L.C.
　　　　　　　　　　　　　　　　　　　　546 Carondelet Street
　　　　　　　　　　　　　　　　　　　　New Orleans, LA 70130

---

[10]　　　Plaintiff's final argument that "the status of pre-trial proceedings, including discovery, further weigh[s] in favor of remand" (Mot. at 8-9) is nonsensical.  The status of pretrial proceedings has no effect on the jurisdictional analysis.  In any event, as explained in correspondence from Merck's counsel to the Court, PTO 39C contemplates that non-damages expert depositions are to be completed before the Court considers the issue of remand.  (*See* Letter from John Beisner to Judge Fallon, Aug. 30, 2013 (attached as Ex. 1).)  Thus, Plaintiff's claim that the Court's supervision over pretrial proceedings is no longer required is simply not true.  (*See* Supp'l Mot. at 10.)  Nor does the presence of state-law issues, such as those related to the statute of limitations under the FCA (*see* Mot. at 8) support remand.  In fact, "[i]t is within the very nature of coordinated or consolidated pretrial proceedings in multidistrict litigation for the transferee judge to be called upon to apply the law of more than one state." *In re Armored Car Antitrust Litig.*, 462 F. Supp. 394, 396 (J.P.M.L. 1978); *see also In re Glaceau VitaminWater Mktg. & Sales Practices Litig. (No. II)*, 764 F. Supp. 2d 1349, 1351 (J.P.M.L. 2011) (federal courts "routinely apply the laws of one or more jurisdictions" as part of their duties).

1138293v1

Douglas R. Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth St., N.W.
Washington, DC 20005

John H. Beisner
Jessica Davidson Miller
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
1440 New York Avenue, N.W.
Washington, DC 20005

ATTORNEYS FOR MERCK SHARP &
DOHME CORP.

1138293v1

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Opposition to Plaintiff's Renewed Motion to Remand has been served on Liaison Counsel, Russ Herman, Phillip Wittmann and Ann Oldfather, by U.S. Mail and e-mail or by hand delivery and e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8C, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 19th day of September, 2013.

> /s/ Dorothy H. Wimberly
> Dorothy H. Wimberly, 18509
> STONE PIGMAN WALTHER
> WITTMANN L.L.C.
> 546 Carondelet Street
> New Orleans, LA  70130
> Phone:  504-581-3200
> Fax:     504-581-3361
> dwimberly@stonepigman.com
>
> Defendants' Liaison Counsel

1138293v1