## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Vioxx | * | MDL Docket No. 1657 |
| | * | |
| PRODUCT LIABILITY | * | SECTION L |
| LITIGATION | * | |
| | * | |
| This Document relates to: | * | HONORABLE JUDGE  FALLON |
| | * | |
| Dennis Harrison | * | MAGISTRATE JUDGE KNOWLES |
| Pro Se 2:07-cv-00905-EEF-DEK | * | |

**************************************************************************

## PLAINTIFF'S ANSWER TO DEFENDANT'S OPPOSITION TO
## PLAINTIFF'S MOTION TO AMEND COMPLAINT

More than 10 years and seven months after Defendant Merck injured Plaintiff Defendant Merck Pled guilty to fraud for the marketing and distribution and promotion for unapproved use of its drug Vioxx in the treatment of rheumatoid arthritis.

Plaintiff knew that Defendant Merck had injured him by committing fraud, although he did not know exactly how, but never the less Plaintiff complained of fraud in the caption and made reference to the elements of fraud in his original complaint in June 26, 2006.

By Defendant's Asserting the issue of the Statute of Limitation in its motion for Summary Judgment, it appeared likely that Defendant had overlooked the issue of fraud contained in the original complaint, and caused Plaintiff to check the statutes pertaining to the statutory limits for filing the complaint and realized that eventually those issues had to be addressed with some specific knowledge. See *FRCP 15(b) (1) and (2)*.

TENDERED FOR FILING

SEP 24 2013

U.S. DISTRICT COURT
Eastern District of Louisiana
Deputy Clerk

2

The "some specific knowledge" knowledge is briefly stated in the amendment but in the original complaint it could not be stated as clearly as, that's the very nature of fraud in that it is hidden and takes time to be revealed.

Initially, all the necessary facts are concealed by confidentiality, and then copyright protected. Thenan in Cameron investigation by the FDA and the issuance of an FDA Warning Letter with announcements being given in broad strokes with very little detail.

The FBI or DOJ inquiries are rarely commented on other than by reference to on going investigations and Grand Jury Investigations which apparently were ongoing for a significant time, and they had even more secrecy surrounding them. All these concealments would have combined to make the fraud unknown to plaintiffs generally, with relation to statutory limits and most likely saved the Defendant Billions of Dollars, and that is after all how they would like to control cost factors for the public, so the laws have allowed this sort of fraud, but still at least frowns at fraud, although normally making it difficult to prove.

You would think that, with the sizeable fines levied against the conspirators, $420,000 on the research author, $2.3 Billion on the Co-Sponsor of the research, and nearly $1 Billion on Defendant Merck, the public would be outraged, but no, those who stood accused and convicted set about to convince the victims that what was bad actually is the result of doing good.

If Plaintiff and Defendant were in a public court, instead of just a summary motion, the issue that Defendant here raises would be more laughable because Defendant has been clearly accused of fraud and should defend that, an act most foul, but instead Defendant is pleading it has been harmed by "undue Delay and Prejudice to Merck", Defendant's words not mine.

Plaintiff would like to remind Merck that we are not in England; the truth does count in the United States. But the summary motion itself is a form of trial, differing from full trial in the lack of oral argument, but as *FRCP 15(a)* has been brought up by Defendant, Plaintiff encourages it to also look *at 15(b)*.

The Defendant's Counsel must defend the case as it is, not how counsel would like it to be, and the amendment of the complaint in itself was filed as a courtesy several weeks before the filing of Plaintiff's answer to the pending summary motion is required, there should be no delay necessary as defense had already maneuvered to defend with an experts declaration rather than the FDA Acts bars to evidence sufficiency because they knew the fraud conviction itself would have barred them from doing so, a major risk is that. Defendant should have been prepared to defend on fraud all along, however that it may have been needed to be stated more clearly in the allegations comes up only with regards to Defendants charge relating to the statutes of limitation as will be shown by the following:

Plaintiff, in his original complaint, alleges the following as quoted here and identified by the paragraph that they appeared in, the elements of fraud contained therein:

Please and note: The words in parenthesis have been added to increase readers understanding.

¶ 1.   "Plaintiff also alleges that Defendant & Co. had knowledge of the problem (non union of bone) but was negligent, deceitful and fraudulent in order to protect its lucrative drug."

¶ 10.   "... Defendant designed, researched, developed, tested, redeveloped, studied, investigated, manufactured, created, sterilized, packaged, distributed, supplied and sold, placed into the stream of commerce, labeled, described, marketed, advertised...and assuaged concerns about their pharmaceutical Vioxx."

¶ 12. "Plaintiff was NEVER aware, nor was any of his physicians, or surgeons, that it (Vioxx)... That it (Defendant) put each orthopedic operation at great risk."

¶ 14. "no-one suspected that the cause of inadequate bone repair (non-union) was Vioxx".

¶ 24. "...Lumbar (surgery) which also failed because of inadequate bone repair (non-union of bone)." And,

"Another surgery to correct the (failed) Lumbar was in the planning stage (see, Carl preoperative notes) and (at that time) the leg was considered (to be) just a nuisance (causing a delay in time before the Lumbar could be addressed)."

"However," ... the Lumbar revision surgery was... critical for a decent way of life."

¶ 25. "Defendant in choosing to hide, deceive and fraudulently sell Vioxx caused (injury)... and damaged Plaintiff's Life."

¶ 27. "that VIOXX prevents proper bone/spine healing, especially becoming a problem in the 3rd and 4th weeks, as well as longer-term recovery and use of Vioxx."

Defendant... "deceitfully suppressed this problem (caused by Vioxx)."

¶ 32. "The inadequate bone healing (non-union of bone) was, in fact, the result of a severe problem, (as) yet not warned of by Defendant."

"IN Fact Defendant chose to ignore many independent test warnings, and warning by its own paid consultant and wariness of NAIADS including COX 2 Drugs (which Vioxx is one of)."

¶ 33. "Defendant fraudulently induced (Plaintiff to) purchase Vioxx... by (claiming) (yet) unproven benefits and concealing and trivializing known and deadly and life altering risks, of which inadequate bone healing (non-union of bone) was one."

¶ 34. "Vioxx is... intended to treat chronic pain. In May of 1999, the FDA approved VIOXX to provide treatment of chronic and short term pain."

"Independent Testing showed that VIOXX could cause serious side effects... including inadequate bone/spine repair."

"Defendant (never undertook to)... inform or warn consumers or physicians of the bone/spine repair issue (non-union of bone)."

"This litigation (alleges)... Defendant... (refused) to credibly investigate and disclose Vioxx's dangers of inadequate bone repair before putting it on the market, nor following through after it was on the market."

¶ 35. "Defendant used overly aggressive marketing tactics in order to exaggerate Vioxx's benefits... overall assurance... (of) Vioxx's great safety... (in order to)... to suppress a growing evidence of safety issues."

"Defendant rushed through clinical trials. Defendant ignored several credible warnings, and its own general suspicions... general industry wariness of Cox-1 and Cox-2 inhibitors... (in order to)... maintain the issue below the "radar" of the FDA as long as possible, ... (and thereby) delaying further (warnings) to physicians and consumers."

"Defendant also ignored flaws in the original clinical studies in hopes to gain FDA approval."

"Defendant developed a scorch the earth policy (placing) profit over reasonable public safety in order to get their most likely profitable drug, Vioxx, to market."

¶ 36.   "In April 2002, the FDA ordered Defendant to change their labeling information to include warnings of the potential and serious side effects of VIOXX."

Plaintiff has continued to allege that the non-union of bone caused injury to him with regards to the bone fracture, so that part of Defendant's work still applies, whether or not it will be successful is another issue; and as Defendant should have been prepared to defend that non bone healing is not a consequence of Vioxx, the complication that there are now two injuries involving non bone healing, should prove to be not much of an extra burden; Defendant will still be free to argue that it was one of their products and not the other that was either not a factor or more likely to have been a factor to the jury and argue contributory negligence of the one being a fraud and the other being innocent, that is its choice, but Plaintiff must warn Defendant that prior good acts is no defense to fraud.

**Now here is the crux.**

Plaintiff has qualified under the statute of limitations most certainly because he filed well before the limit began tolling from the initial injury ,see Dr. Rand's notes, and that fact is well known to Defendant Merck, when the first rod dislodged due to non-union of bone. Furthermore, the disruption of signals through impingement of the spinal cord was discussed in Dr. Carl's notes and further supported by a specific reference to the need of a device like a

6

tortoise shell to protect Plaintiff's spine. But if Plaintiff had not filed in time for that specific injury, Plaintiff may not have received monetary damages for that specific injury, thus possibly saving defendant hundreds of millions of dollars potential damages and the cost of Plaintiffs case, not to mention the potential triple damages for gross negligence; however, the act of fraud would still stand, and that allows all the injuries which followed to still flow from the fraud.

## PLAINTIFF HAS FOLLOWED FRCP *15(b)(1) and (2)*

(b) AMENDMENTS DURING AND AFTER TRIAL.

   (1) *Based on an Objection at Trial.* If, at trial, a party objects that evidence is not within the issues raised in the pleadings, the court may permit the pleadings to be amended. The court should freely permit an amendment when doing so will aid in presenting the merits and the objecting party fails to satisfy the court that the evidence would prejudice that party's action or defense on the merits. The court may grant a continuance to enable the objecting party to meet the evidence.

   (2) *For Issues Tried by Consent.* When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings. A party may move—at any time, even after judgment—to amend the pleadings to conform them to the evidence and to raise an unleaded issue. But failure to amend does not affect the result of the trial of that issue.

### PLAINTIFF ALL ALONG HAS KNOWN THAT HIS CASE IS COMPLEX; PLAINTIFF HAS ALL ALONG ASKED FOR EVIDENCE THAT NON-UNION OF BONE WAS SAFE ON WHAT GROUNDS AS IT PERTAINS TO VIOXX;

And in Defendants Motion for Summary Judgment it defends against plaintiff's injuries as merely a trip and fall case, something that Plaintiff should have sought compensation for by suing some homeowner's insurance company, not the Defendant Merck.

Plaintiff believes Defendant took a great risk by doing so, as the EMS workers are supposed to have reported that, do not seem to be presented in evidence at this time, and their statements, if ever made, also not presented at this time, could only have been based

7

on utterances made by Plaintiff who had made those utterances under duress of pain, as he had just having been injured, and at the time, his only thoughts were to get treatment for his injured leg, and those EMS statements are usually inadmissible at trial, but that was a choice Defendant rushed into even though the case was not ripe;

Defendant should also take note that many documents that Plaintiff submitted were submitted under duress and with out the knowledge that only Defendant and the DOJ possessed that it was facing charges of fraud which did not become known publicly until on or about April of 2012 whereas the Lone Pine Witness requirement was demanded in 2008 while Defendant was still negotiating , in bad faith as far as Plaintiff is concerned, with the details of its plea bargain at that time; facts it wants to ignore here, and instead argue that Plaintiff mitigated his claims with statements that he was forced to make at a deposition which occurred before he had time to examine all the facts contained in his medical file, which he was not asked to review before the deposition and even if he had, he was not presented the specific documents at that time to refresh his recollections and he has not perfected that document referred or as a transcript with his signing, but he intends to do that before too long but was doing so at his leisure and had not done  due to surgeries and other complications that keep on cropping up with complications stemming from having taken Vioxx and having been placed in circumstances caused by defendant Merck's commission of fraud, which Defendant Merck  is now claiming as a defense for having filed its Motion for Summary Judgment on a case that was not ripe for such a motion merely because it thinks that somehow pre-trial issues come late in the litigation process;

Defendant chose to file its Motion for Summary Judgment , whereas it should have been more concerned with its dirty laundry which through circumstances of the commission of the fraud,

8

the investigation by the FDA and DOJ and the associated discussions assuredly well informed them that would inevitably be disclosed, but know it now if not before now that clearly Plaintiff Harrison absolutely knows you have committed fraud and harmed him immeasurably, and continue to harm him immeasurably because every day that goes by, his investigation into the circumstances of this case will continue to go on and as you can see now, as your FDA defenses have been stripped away already and even your mere defense of safety is here now being stripped away, and that plaintiff now only needs two scintillas to oppose the Motion for Summary Judgment and it has a hand containing a Straight Royal Flush wile defendant is holding only Ace's and Eights (you don't know how long I've been waiting to play this game even though I've given you many tells) you are defending a Dead Man's Hand.

## **CONCLUSION**

For the foregoing reasons, Dennis R. Harrison respectfully submits that the Defendants Motion has no merit and Plaintiff's motion for amending the complaint should now be allowed and given leave to be entered.

# CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing:

**MOTION TO AMEND ORIGINAL COMPLAINT TO INCORPORATE ADDITIONAL ALLEGATIONS, NEW FINDINGS OF FACT, CLARIFY COMPLAINT AND INCLUDE ADDITIONAL INJURIES**

has been served on Defense Liaison Counsel (DLC) Dorothy H. Wimberley by electronic email as PDF attachment, Emily Pistille of Merck by electronic email as PDF attachment, and Doug Marvin of Merck by electronic email as PDF attachment on this 23rd day of September, 2013.

Further I hereby note utilizing the same electronic PDF method to Plaintiff Steering Committee PSC-I Russ Herman and Leonard Davis, and Plaintiff Steering Committee PSC-II Ann B. Oldfather and Megan Hastings.

I have also sent the above and the foregoing to the Clerk of Court of the United States District Court for the Eastern District of Louisiana via the same electronic email/PDF method and hard copy, on this 23rd day of September, 2013.

/s/Dennis R. Harrison
Dennis R. Harrison
Plaintiff
601 W. Brown Street
Iron Mountain, MI 49801
Phone: Cell 906-221-5906
badbonehealing@gmail.com

10

Dennis R. Harrison
601 W. Brown Street
Iron Mountain, MI   49801
906-221-5906

**Via Electronic mail/PDF**                                           September 23, 2013

*DOROTHY H. WIMBERLEY*
A PROFESSIONAL CORPORATION
DIRECT DIAL:  (504) 593-0849
DIRECT FAX:   (504) 596-0849
E-MAIL: DWIMBERLEY@STONEPIGMAN.COM

STONE PIGMAN WALTHER WITTMANN 11C.
COUNSELORS AT LAW
546 CARONDELET STREET NEW ORLEANS
LOUISIANA   70130-358S

Re:  In Re Vioxx Products Liability Litigation, MDL No. 1657
     ***Dennis R. Harrison v. Merck Sharp & Dohme Corp.*, 2:07-cv-00905-EEF-DEK**

Dear Dorothy:

          In reply to Merck:

              **DEFENDANT MERCK SHARP & DOHME CORP.'S OPPOSITION TO
              PLAINTIFF'S MOTION TO AMEND COMPLAINT**

          Please find a copy of the:

              **PLAINTIFF'S ANSWER TO DEFENDANT'S OPPOSITION TO
              PLAINTIFF'S MOTION TO AMEND COMPLAINT**

Sincerely,

Dennis Richard Harrison

MBA/BGS

DHW/cr Enclosures

cc:    all via email/PDF
       D. Marvin, E. Pistilli, A. Oldfather, M. Hastings, R. Herman, L. Davis, J. Duggan

via email/PDF and hard copy
Clerk of Court of the United States District Court for the Eastern District of Louisiana

TENDERED FOR FILING

SEP 24 2013

U.S. DISTRICT COURT
Eastern District of Louisiana
Deputy Clerk

1

Dennis R Harrison
2:07-CV-00905-EEF-DEK

In reply to Merck:

**DEFENDANT MERCK SHRP & DOHME CORP.'S OPPOSITION**
**TO**
**PLAINTIFF'S MOTON TO AMEND COMPLAINT**

Please find a copy of the:

**PLAINTIFF'S ANSWER TO DEFENDANT'S**
**OPPOSITION TO**
**PLAINTIFF'S MOTON TO AMEND COMPLAINT**

