UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS

IN RE:    VIOXX PRODUCTS            Case No. 05-1657 "L"
LIABILITY LITIGATION

                                   Wednesday, August 14, 2013


                                   8:58 A.M.


TRANSCRIPT OF STATUS CONFERENCE
BEFORE THE HONORABLE ELDON E. FALLON
UNITED STATES DISTRICT JUDGE


APPEARANCES:


FOR THE PLAINTIFF:            HERMAN, HERMAN & KATZ, LLC
                             BY:  RUSS HERMAN and
                                  LEONARD A. DAVIS
                             820 O'Keefe Avenue
                             New Orleans, Louisiana 70113
                             Telephone:    (504) 581-4892


                             BY:  ANN B. OLDFATHER
                             1330 South Third Street
                             Louisville, KY  40208
                             Telephone:    (502) 637-3999


FOR THE PSC:                 BARRIOS, KINGSDORF & CASTEIX LLP
                             BY:  DAWN M. BARRIOS
                             701 Poydras Street, Ste. 3650
                             New Orleans, LA  70139
                             Telephone:    (504) 524-3300


                             LIEFF, HEIMANN & BERNSTEIN LLP
                             BY:  ELIZABETH CABRASER
                             Embarcadero Center West
                             275 Battery Street, 30th Floor
                             San Francisco, CA 94111
                             Telephone:    (425) 956-1000


FOR THE STATE OF KENTUCKY:   (VIA TELEPHONE)
                             GETTY LAW FIRM
                             BY:  RICHARD A. GETTY
                             250 West Main Street
                             1900 Lexington Financial Center
                             Lexington, KY  40507
                             Telephone:    (859) 259-1909

```
FOR MERCK:                    SKADDEN, ARPS, SLATE MEAGHER
                                 & FLOM LLP
                              BY:  JOHN H. BEISNER
                              1440 New York Avenue NW
                              Washington, DC  20005
                              Telephone:    (202) 371-7410


                              WILLIAMS & CONNOLLY
                              BY:  DOUGLAS MARVIN
                              725 12th Street, NW
                              Washington, DC 20005
                              Telephone:    (202) 434-5000


FOR DEFENDANT:                STONE, PIGMANN, WALTHER, WITTMANN
                              BY:  DOROTHY WIMBERLY
                              546 Carondelet Street
                              New Orleans, LA  70130
                              Telephone:    (504) 581-3200
```

```
REPORTED BY:                  David A. Zarek
                              Hale Boggs Building
                              500 Poydras Street, Room 406
                              New Orleans, Louisiana 70130
                              Telephone:    (504) 523-6062
```

Proceedings recorded by mechanical stenography.
Transcript produced by computer-aided transcription.

**P R O C E E D I N G S**

**MORNING SESSION**

**(WEDNESDAY, AUGUST 14, 2013)**

(Court convened at 8:58 a.m.)

THE COURT:    Be seated, please.  Good morning, Ladies and Gentlemen.  Call the case.

CASE MANAGER OSER:  MDL Number 1657, In Re Vioxx Products Liability Litigation.  Counsel, make your appearances for the record.

MR. MARVIN:    May it please the Court, good morning.  Doug Marvin for Merck.

MR. HERMAN:    May it please the Court, good morning, Your Honor.  Russ Herman for the PLC, and Class Counsel.

THE COURT:    All right, I understand that we have several people on the phone, one of whom is Richard Getty, who has a matter, a response to a motion that was made.  So I asked him to be prepared to at least alert the Court as to his position on that.

So the first item on the agenda is the third party payor.

MR. HERMAN:    I assume the first matter on the docket is --

THE COURT:    Class Actions.

MR. HERMAN:    The consumer preliminary settlement that's been reached that Mr. Getty wishes to respond to.

THE COURT:    By way of background, the consumer individuals are those individuals who bought Vioxx and presumably

1  took Vioxx but did not have any adverse reaction to Vioxx.  But

2  they take the position that had they known that there were

3  problems with Vioxx, had it been put on the label or properly on

4  the label, they would not have purchased the Vioxx.  And so they

5  feel that either they want their funds back that they purchased

6  Vioxx, or they want to access the various state laws that are

7  applicable to them, which give them certain other benefits.

8       The case was argued by the parties, discovered by the

9  parties, universally fought by the parties through motions.  They

10 were not dismissed, and the case was then after discovery, after

11 motions filed, the parties entered into some settlement

12 discussions with Merck, and they reached a settlement of the

13 cases.

14      The Court preliminarily approved the settlement.  Kentucky

15 has also filed a state court class action.  It went through the

16 state proceedings with dismissal, granting dismissal.  And then

17 before Supreme Court, the State Supreme Court, and they are

18 expecting a hearing or a judgment I should say.  They have argued

19 the case, expecting a judgment sometime in the latter part of

20 this month.

21      Meanwhile, Merck has filed a motion under the All Writs Act

22 to stop the proceeding in State Court in Kentucky.  Kentucky has

23 responded to that motion and also feels that the motion, which is

24 tentatively set for the 21st, or to at least be delayed so that

25 it can be more thoroughly briefed as I understand Kentucky's

1    position.  But with that background, let me hear from Mr. Richard

2    Getty.  Richard?

3         MR. GETTY:    (On the telephone)  Thank you again, Your

4    Honor, for letting us participate by telephone.

5         THE COURT:    Sure.

6         MR. GETTY:    (By telephone)  Just to clarify a couple of

7    things, our case was never dismissed in Kentucky.  It proceeded

8    through the trial court and was certified as a class action, both

9    the fraud claims and the consumer claims.

10        It went up to the Court of Appeals.  The Court of Appeals

11   reversed the certification of the class action in the opinion,

12   which the Court is now I'm sure fully familiar with.

13        THE COURT:    Yes.

14        MR. GETTY:    (On the telephone)  And the discretionary

15   review was then taken by our Supreme Court, been fully briefed,

16   fully argued, and is now before our Kentucky Supreme Court.

17        Merck did file a motion for summary judgment, which was

18   denied; and at the same time it was denied, the Court initially

19   certified the class action.  So the claims have at all times

20   survived and there is no final order as of yet, because the

21   matter is before the Supreme Court on the class certification

22   issue.

23        As I said earlier, our case was filed before the MDL

24   Consolidated Proceedings were created.  We filed in October 2004,

25   and we have never been before the MDL until Merck's effort to

1   include us during the latter part of the settlement discussions

2   with the plaintiff's liaison counsel.

3         We filed the case; Merck removed it to federal court, and

4   Judge Hood remanded it.  And we have been in state court ever

5   since.

6         As I said on the record or off the record, when we had our

7   informal conference, we have never wanted to be tangled up in

8   these proceedings.  And one of the things that has been most

9   troubling to us is the fact that we are proceeding with a notice

10  that will go out to potential class members with no explanation

11  that there is a second potential class action proceeding pending

12  in Kentucky that has been there for some time.  And I have

13  constantly said before the Court and through other counsel that I

14  think that the issuance of an August 23rd notice really creates a

15  lot of serious problems which could be avoided.  We tried our

16  best to make some suggestions.  We wanted to have some

17  discussions.  We suggested that that notice be pushed back into

18  early September or mid-September.  We were unsuccessful in being

19  heard.  We believe the Kentucky Supreme Court may well rule

20  either on August 29th when they issue their next opinions or

21  shortly thereafter.

22        Now, we are faced with the possibility of having to be

23  embroiled even further in these proceedings, and we really don't

24  want to be tangled up in them.  We are now if you recall at the

25  last hearing that we physically appeared in front of you, Your

Honor, I asked you at that hearing, I said will you consider an

order preventing or directing Merck to take no action to try to

interfere with the Kentucky proceedings?  And your comment at

that point was, well, something to the effect that I can't enjoin

State proceedings.  I said, No, no, Your Honor.  What I said was

I want you to enjoin Mr. Beisner and Mr. Marvin, because that's

the next move that I can see them making.  And I hate to be

prophetic, but that's exactly what has happened.

And I would urge, I would like to have some discussion with

particularly plaintiffs' liaison counsel on whether we can agree

to defer this notice and avoid the battles that we are going to

have to fight.  We don't want to fight them, but if we have to,

we will.

But what presently has come up is they moved for expedited

consideration.  I guess it was Merck that actually moved for

expedited consideration.  We actually filed a response to the

expedition motion, not on the merits, the one motion to stay and

the motion to enjoin.  One is set for next Wednesday.  That's the

motion to stay, I believe.  The motion to enjoin is set for one

week hence.

And what we would like to do is get more time.  My

suggestion was going to be partly because we have two motions

that we simply set one hearing date.  I was going to suggest

September 11th, give us until October 28th to respond to both of

them and then allow either Merck or the plaintiffs' liaison

1    counsel until September 4th.   We simply just believe we need more

2    time to respond to these, unless the Court is going to look at

3    them and say that in this proceeding we are not going to

4    entertain these motions until the Supreme Court rules.

5        So what they are trying to do here is after nine years they

6    are trying to terminate, our proceedings there, and I don't think

7    that's what the Court, this Court ever contemplated.   We have

8    talked about and all had anticipated a wait.   And have been

9    waiting for a ruling by the Kentucky Supreme Court, which I

10   believe will have a significant impact.   And that's basically

11   where we are.

12       It is unfortunate that at the outset when I first, when Mr.

13   Herman first contacted me and said, Guess what?  Merck has wanted

14   to include you in this settlement down here.   My understanding or

15   my misunderstanding was that Merck was going to be told the

16   Kentucky case be excluded because of the stage of the proceedings

17   before the Kentucky Supreme court.   That didn't happen.   So I

18   guess it is going to be up to this Court to make a determination

19   ultimately whether we should or should not be excluded.

20       I believe since we filed to include us and if we weren't

21   included, we were remanded.   I just don't believe we should be in

22   it.   But we are now, because these motions put in a position

23   where we are going to have to brief these issues and frankly may

24   well have to file an appeal with respect to certain of these

25   issues, none of which, Your Honor, we have ever wanted to do and

1    at this moment do not want to do.

2         THE COURT:    Let me hear from Merck at this time.  I got

3    your position.  I understand it.

4         MR. HERMAN:    Your Honor, I'm co-class counsel of the

5    putative class in which you granted preliminary certification.

6    It excluded the State of Missouri.  Other than that, I will refer

7    to it as a national class.

8         First of all, I am going to try to do this quickly.  I know

9    Your Honor has pressing matters.  Number one, our obligation as

10   class counsel, co-class counsel, is to protect the opportunity of

11   all claimants to participate in a settlement.  It is different

12   than Mr. Getty's obligation.  We don't have the same obligations,

13   even though the putative class takes care of in a sense the

14   opportunity of Kentucky.  And that's why we are in a different

15   ethical as well as procedural and professional basis.

16        It took two years to negotiate this.  It initiated in March

17   2011, and at that initial conference was Andy Birchfield, Chris

18   Seeger and myself and Doug Marvin and John Beisner on behalf of

19   Merck.  And we proceeded as we are often directed to try and

20   reach some resolution.

21        And what the plaintiffs have is a very difficult case as

22   Your Honor has pointed out in addition to briefing.

23        Secondly, don't intend to file any more briefs.   We have

24   Mr. Getty's positions.  They have been stated many times.

25        Thirdly, we did not file a joint motion with Merck.  Merck

1    asked for proceedings to be stayed.  We asked that Mr. Ratliff,

2    his attorney, and putative class members be stayed.  So there is

3    somewhat difference in relief that we have asked for.

4         As far as meeting, I can assure the Court we have met

5    numerous times.  We met face to face.  The last face-to-face

6    meeting both co-class counsel, Liz Cabraser, and Ms. Barrios were

7    in Court.  Prior to that the last face-to-face meeting took place

8    actually here in Court and in my home with learned counsel.  And

9    I'm certain that we have met numerous time.  We have been able to

10   resolve at least our dilemma for what we believe is a

11   professional and fiduciary duty to protect the class.

12        I do want to alert the Court and all present, Mr. Getty,

13   that notice is on the Court's website.  It has been mailed to all

14   counsel.  The TV spots and magazine articles have already been

15   bought, purchased.  The consella was contracted after the Court

16   was advised.  The Court issued an order.  We believe that they

17   are absolutely in the top providers of notice issues.  Actually

18   notice was negotiated, and debated among Merck's representatives,

19   co-class counsel, Ms. Barrios, BrownGreer to some extent and

20   several consella folks, and we are certain that the notices are

21   at this juncture provide the type of notice and protection.

22        As far as Kentucky not being advised, I believe there is an

23   exhibit -- in fact, I'm fairly certain of it -- that sets forth

24   the Kentucky pending application, which the Kentucky Supreme

25   Court has under consideration.

1        As far as delays are concerned, Your Honor, this is not,

2   this is a rather transparent situation.  I mean class counsel,

3   and I can only speak for co-class counsel, believes that all writ

4   injunction by this Court should proceed before the Kentucky

5   Supreme Court rules, and I believe their next rule day is August

6   29th.

7        On the other hand, Mr. Getty would like to postpone any

8   hearings past that date in the expectation or as we say in

9   Louisiana, it may be a hope, it may be more than a hope, an

10  expectation at any rate that he may get a positive ruling.  So I

11  don't think that this matter is cloaked in mystery.  And I do

12  think that without an injunction, what I call the nationwide

13  global relief for an opportunity for consumers, will be placed in

14  jeopardy.  Because at that point there is no settlement or

15  agreement between the PSC, co-class counsel, the negotiators, et

16  cetera, on both sides.  So this is not a matter of us against Mr.

17  Getty at all.  It is a question of us fulfilling our professional

18  duties, and I think I have spoken too long, and I think Your

19  Honor is now familiar with what I have to say.

20       THE COURT:     Let me hear from Merck, and I will.  I ask

21  for Getty's response.

22       MR. MARVIN:     Your Honor, I will be brief about this.  I

23  think we need to be very clear about where we are as a matter of

24  law at this point.

25       We have two class actions pending.  One is the nationwide

1  class that is before Your Honor here in the MDL Proceedings.

2  There is the state class in Kentucky, the <u>Ratliff</u> case which is

3  pending in State Court in Kentucky.   Two independent actions that

4  are there.

5       And what has happened is that as Mr. Herman has described we

6  have managed to negotiate a settlement of the case that is in the

7  MDL proceeding, the nationwide class.   Counsel, Mr. Herman and

8  his colleagues, represent all of the members of this class

9  nationwide including the residents of Kentucky.   And Mr. Getty

10  represents the subset of that group of certain users of Vioxx in

11  Kentucky.   And you have two counsel, sets of counsel, purported

12  to represent the same individuals.

13       Here we have a settlement in the MDL proceeding.   And pretty

14  much the standard operating procedure when you have a settlement

15  of this sort in the MDL proceeding where you have got counsel

16  basically in some way competing to represent the same class

17  members is to say we are going to stay the State Court

18  proceedings, because the federal court has before it now a res, a

19  proposed settlement, that should be considered without conflict

20  of the State Court cases.   And that's what Your Honor has ordered

21  in other cases, and that is what we are asking to do here to

22  avoid the conflict between the two, to stay the State Court

23  proceedings so the Court can step back and consider the adequacy

24  of the settlement that has been proposed in the MDL proceeding.

25       Everyone including Mr. Getty, anyone else who wants to can

1    comment on that settlement.  If Your Honor ultimately rejects it,

2    the litigation everywhere goes on.  And if it is accepted, then

3    an assessment is made of that.

4         THE COURT:     Mr. Getty says why not delay it until he can

5    get his notice out too and then there is either non-confusion, or

6    at least he has his notice also.

7         MR. MARVIN:     What Mr. Getty is asking, Your Honor, is to

8    reject the MDL settlement right now without a full hearing on

9    that.  He has said repeatedly what he wants to do is opt Kentucky

10   out of this settlement.  Well, the settlement is what it is.  The

11   Court needs to either approve or reject it as it stands.  And

12   what he is saying is just reject it out of hand now because the

13   Kentucky class is more important.  He is effectively saying, I

14   don't care what happens to those individuals in the other 48

15   states and their claims and just opt out.  And it is an either/or

16   proposition.

17        And again the established procedure on this is you consider

18   the settlement before the Court.  The Court has given preliminary

19   approval and set those wheels in motion.  And the end game here

20   he is saying, I want to opt Kentucky out.  Well, implicitly that

21   means let's reject the settlement.  That's the road we are going

22   down.  And I think we have had this debate when the Court

23   preliminarily approved the settlement.  That is what he is asking

24   is to throw out the settlement before the MDL Court.

25        One other thing I just wanted to mention, Your Honor,

1  briefly is this notion that Kentucky has proceeded entirely

2  separate from the MDL proceeding, and I think it is important to

3  note that case is a class which is a subset of the same

4  individuals that the PSC represents here.  But it really is just

5  a satellite of what has been done, the efforts of the PSC in this

6  proceeding.  And in that regard, Your Honor, I would note there

7  is a point in the Ratliff case in State Court in Kentucky in

8  which the State Court went to dismiss it, issued an order to show

9  cause to dismiss it for lack of prosecution, because nothing was

10 happening in that case.  And in responding to that order, Mr.

11 Getty's firm basically said there, Oh, there is nothing happening

12 in this case because everything is going on in the MDL

13 proceeding.  That's the center of the universe here.  To quote

14 the brief that Mr. Getty filed or his firm filed "The MDL is

15 designed to reduce discovery costs by providing uniform discovery

16 to the parties to each action for personal injury filed against

17 Merck related to its product Vioxx.  Uniform discovery being

18 taken in that action will provide additional evidence which will

19 benefit the Court and the litigants in this matter", that is, the

20 Ratliff case.  "Counsel for the plaintiff in this action, the

21 Ratliff case, are also involved in the multi-district litigation,

22 and evidence developed in those proceedings is highly relevant to

23 certain of the issues joined herein.  Thus, the lack of activity

24 indicated in the record herein", that is, Your Honor, in the

25 Ratliff case, "does not accurately depict the development of

1    discovery by plaintiff in support of his claim."

2        It goes on to say, "Accordingly, the motion to dismiss for

3    lack of prosecution would be inappropriate, because everything is

4    happening in the MDL proceeding."  And so in essence what you

5    have here is an objector in this over-all litigation saying, we

6    should bring everything to a halt because my case in Kentucky is

7    more important.  And I think that's just not consistent with the

8    record here, as is that case really is just the satellite of what

9    has been going on here.

10       We have a settlement of the claims here that include

11   Kentucky.  The Court should go ahead and give those

12   consideration.  If the settlement is approved, it is.  If it is

13   rejected, then the rest of the world can go on as it is.

14       THE COURT:    Okay, let me hear from Mr. Getty.  Richard,

15   any response?

16       MR. GETTY:    Absolutely.  Part of what I heard is really

17   the only word I can use is surreal.  We were removed to federal

18   court and there was a period of time before we were remanded for

19   obviously nothing was done until Judge Hood ruled on the remand.

20   And once he did, we engaged in extensive discovery.  If Mr.

21   Marvin, who has not been involved and is not a counsel of record

22   in that case, would have talked to the local counsel with Frost,

23   Brown Todd here, he would know and understand that we had an

24   agreement with them that they would produce essentially the same

25   discovery box after box after box of documentation concerning the

1   product and the advertisements, et cetera, et cetera, that they

2   have produced or were producing in the MDL.   In other words, we

3   agreed to tailor our discovery to save Merck time and effort so

4   that we would get that discovery first and then follow up, which

5   we did with more specific requests for discovery.   So that that

6   is a totally surreal, and frankly disingenuous characterization

7   of what went on in our proceeding.

8        We are not trying in any way, shape or form to sidetrack or

9   interfere with this settlement.   We have been litigating our

10  cases for nine years.   Mr. Herman said it took them two years,

11  two years to negotiate this settlement.   And at the very back

12  end we get thrown in because Merck obviously fears the result

13  here in Kentucky.   They have come down there and tried to

14  basically, and I hate to use the phrase but I think it is

15  appropriate, back door us into this litigation.   What is the

16  hurry?   Why if we can wait two years and negotiate this

17  settlement, why are we hurrying?   And the reason is very obvious.

18  Merck wants to drive a stake in our heart, the heart of our

19  litigation in Kentucky.   And the liaison counsel have gotten to

20  the point where they are going along with it.   They want the

21  litigation over, because when the litigation is over and it is

22  settled, certain things happen.

23       Well, it's prejudicial to the people here in Kentucky, the

24  200,000 consumers who have never participated in the MDL

25  proceedings, who were remanded.   And technically I think the

1    argument exists that there is a question I think that is serious

2    over whether because of the remand and the timing of this issue

3    whether the MDL proceedings have jurisdiction over the Kentucky

4    class.

5           You know, Plubell was in the same position as our case.

6    They filed before the MDL proceedings were consolidated, and they

7    remained in State Court.  We actually got remanded, which

8    probably is even a stronger argument for us staying in State

9    Court.

10          What we are asking presently, Your Honor, is we want some

11   time to address these issues.  I mean what's the rush to judgment

12   here?  I mean, you know, this is exactly what I predicted.  I

13   think it is entirely inappropriate for them to now come in here

14   and seek to have this litigation stayed.  We believe that the

15   Kentucky Supreme Court is going to rule adverse to Merck based on

16   the tone and tenor and the questions at the oral argument, and I

17   think Merck knows that.  And this is the exact effort that I said

18   would happen.  My only disappointment is there is a separate

19   motion asking for similar if not identical relief has been filed

20   by the plaintiffs' liaison counsel, which my understanding is

21   that I am not allowed to talk to anyone other than Russ Herman.

22   I tried to set up a conference and tried to have some rational

23   discussion about can't we just agree to move this notice into

24   September so that we don't have any kind of issues here that we

25   are going to have to take steps to protect the interest of the

1    Kentucky class that could be avoided.  Basically they filed a

2    motion, moved to expedite and want us to brief these issues in

3    less than a week on a critical essential motion that I hope when

4    the Court reviews it and addresses it will deny it.  And I'm

5    sorry for being animated, but I just do not understand.  I mean I

6    sat in your chambers and watched you say to Mr. Marvin and Mr.

7    Beisner, Mr. Getty has a stake in this.  He is a major player,

8    and you need to speak to him directly and try and settle this

9    issue.  I have never received the first offer of settlement from

10   Merck of any sort, period.  And they have done everything they

11   can to back door our litigation into the MDL, down there and now

12   prophetically I hate to say they are doing exactly what I

13   predicted they would do, because they suspect they are going to

14   lose up here in Kentucky.  And it is wrong, and it shouldn't

15   occur.  And all we have ever asked for is let's just not rush

16   forward here.  Let's put this notice off until September and not

17   have competing notices, not having us be forced into the position

18   to file an effort to appeal or stay or get involved in further

19   protracted proceedings.

20       This is solely the result of Merck coming down there at the

21   last minute and trying to suck us into this settlement.

22       MS. CABRASER:  Your Honor, Elizabeth Cabraser by phone.  I'm

23   sorry I have to --

24       THE COURT:    Go ahead, Elizabeth.

25       MS. CABRASER:  (Via telephone)  To interpose on the

19

jurisdictional point raised by Mr. Ratliff's counsel, as Your

Honor is aware, consumers in Kentucky were included as part of

the class defined and proposed in the purchase claims master

complaint which was filed in the MDL proceedings pursuant to

Court order in the fall of 2005.  So the class allegations have

been pending on behalf of consumers in Kentucky since that time.

   We have been defending that claim against Merck's repeated

efforts to dismiss both the substantive claims and the class

allegations.  Thus far we have survived the point of settlement.

So I just wanted to make that point clear that those claims have

been part of the MDL and the proposed class including Kentucky

consumers has been part of the MDL for the past nine years.

   MR. HERMAN:    Your Honor, since this is on the record, I

know we have other things.  First of all, my arguments have been

called unreal before.  This is the first time they have been

characterized as a Salvador Dali painting.  But nevertheless, we

have an obligation as class counsel.  We had an obligation as a

PSC.  The prior litigation in other cases on consumer issues in

this Court and in other Courts have not faired well for

plaintiffs.  So we were not, we did not come easily to a

negotiation or a resolution under those circumstances.  And we

have no, no, no agreements.  There have been no perpetuation of

this settlement in the event that the preliminary certification

is stayed, continued and there is a competing certification

somewhere else.  It would be different as plaintiffs' counsel if

1    plaintiffs' counsel ignored the two hundred thousand potential

2    putative class members in Kentucky.  We would have to take a

3    different view.  But that is not what has happened here as co-

4    class counsel has explained.

5         And my arguments may be surreal, but I don't think I'm a

6    pushover for Mr. Marvin or Mr. Beisner or anyone else.  I think

7    that this is a very, very serious matter for maybe 55,000

8    national potential class members.

9         THE COURT:     All right, I do understand the issue.  I just

10   got this motion last night.  So I haven't had an opportunity to

11   think about it.  And as Mr. Getty says, it is a serious matter.

12   So I am not going to rule from the bench on this.  But I will

13   deal with it in the immediate future.  I have to move on.

14        MR. GETTY:     If I could briefly, well, first of all, I

15   think Russ has gotten animated.  My comments about a surreal

16   argument were not directed at Russ Herman; they were directed

17   directly at Mr. Marvin and the arguments about the discovery, et

18   cetera, et cetera.

19        What I would like to know before we conclude is I had

20   suggested that we combine these responses and respond by

21   September 11th.  We are subjected to the expedition that's been

22   requested by Merck.  I guess where are we on that or how do we

23   deal with the briefing schedule I guess?

24        THE COURT:     I hear both sides of it.  I really do think

25   that from your standpoint you have the high side of at least

1   moving it from the present time to September the 11th.  So I will

2   do that.  I will make the motions by September the 11th, and I

3   will work out a briefing schedule based on that.

4        I am not going to deal with it next week, folks, from that

5   standpoint.  I'm just not going to be able to do that.  I don't

6   think that's fair to you.

7        MR. GETTY:    We will try to talk to Russ and to the Merck

8   lawyers to see if we can come to some sort of agreement.  If I

9   could get somebody to talk to me, I would be appreciative.  And I

10  certainly apologize to Russ.  Those comments were not directed at

11  Mr. Herman.  He has been great in this whole situation.  I know

12  he is anxious to get this settlement concluded.  I think we have

13  some arguments that really ought to be considered.

14       THE COURT:    Well, the problem that obviously is faced

15  from the other side of it, meaning the other the plaintiffs, is

16  that this type of situation when you think about it the Courts

17  throughout the country have been very hard on these types of

18  claims, substantive-wise.  These are individuals who bought Vioxx

19  and in effect profited from it.  Vioxx is a drug that does do a

20  lot of good things for people who have musculo-skeletal problems.

21  It was adverse to a certain group of people, and the evidence in

22  some of the cases indicated that there was some problem with the

23  proper warning.  But this group of individuals are people who

24  bought Vioxx once, twice, three times, however many times they

25  bought it.  And if they bought it more than once, the chances are

1    it was helping them.  And if it was helping them and didn't have

2    any adverse effect -- if they had an adverse effect, they settled

3    in the personal injury, in the personal injury section.  So these

4    are individuals who bought the drug and did not have any adverse

5    effect and presumably had a positive effect.  And now they want

6    their money back for buying the drug.

7         Other cases that have come before other Courts, as well as

8    this Court, those cases were not successful for various reasons.

9    And so that's an issue that the plaintiffs, I would imagine

10   throughout the country, are concerned about.  And so they were

11   able to settle the case, and that is something that also has to

12   be taken into consideration for the 48 other states.

13        But I understand the issues.  I just have to move on.  You

14   can stay with us, Mr. Getty, or you can hang up, either way.

15        MR. GETTY:    We appreciate Your Honor allowing us to

16   participate, Your Honor.

17        MR. HERMAN:    Your calendar -- I'm sorry -- I apologize,

18   for September 11th, may it please the Court, with regard to

19   Government actions, Ms. Barrios will address the Court.  I do

20   point out that the Kentucky Supreme Court's next rule day is

21   August 29th.  So it may be that we will have a different type of

22   argument and briefing should that occur.

23        MR. BARRIOS:    Good morning, Your Honor.  Dawn Barrios,

24   liaison counsel for the Attorney General.  You have four states

25   before you in this Court, and according to the pretrial order

1    number 39©, the Court will set a hearing for the remand sometime

2    after September 30th.  And so we are asking you to set those

3    dates at your convenience.  And if you want them all in the same

4    day, that would be, of course, your judgment call with just the

5    notation that the Attorney General of Mississippi's, counsel is

6    unavailable October 7th through October 11th.

7         THE COURT:    All right, I will set those.  We have had

8    about 26 states Attorneys General.  They have been discovering

9    this matter thoroughly and also discussing settlement.  All but

10   four have been able to resolve it, but we are coming to the point

11   where the discovery should be completed.  And the parties should

12   have gotten the benefit out of joint discovery and joint

13   expenses.  So it is time for me now to resolve them and send them

14   back and let the state courts or the federal courts in those

15   areas deal with it.

16        Third-party payor, anything?

17        MR. HERMAN:    May it please the Court, Your Honor, Mr.

18   Juneau, the special master, has the matter under consideration.

19   We await his recommendation to the Court.

20        THE COURT:    My procedure as I mentioned several times he

21   has not made his recommendation.  After he makes his

22   recommendation, I will post it on my website.  If anybody wants

23   to respond to it, they can do so.  And then I am going to take

24   the matter under advisement, and at that point I will have the

25   committee's recommendation, the special master's recommendation,

1   all of the reports of the CPA as well as all of the documents

2   that have been filed into the record.  I will confer with my

3   colleagues and come up with a decision.

4       MR. HERMAN:    May it please the Court, Ms. Oldfather will

5   address Roman Numeral IV.

6       THE COURT:     Personal injury cases?

7       MR. HERMAN:    Yes, and I think at the same time, Your

8   Honor, Ms. Oldfather also may have a report regarding Roman

9   Numeral V, pending motions and matters.

10      THE COURT:     Oh, okay.  You want to speak?

11      MS. OLDFATHER: May it please the Court and counsel and

12  parties on the telephone, I have three things to address.  I

13  don't know if this includes what Mr. Herman was referencing.  But

14  first of all on Merck's motion to reconsider the Court's ruling

15  allowing plaintiffs' VTE experts to survive their Daubert

16  challenge, we discussed that in the pre-hearing conference.

17  Merck has filed a reply, filed a reply last week.  We have asked

18  for an opportunity to review that and file a sur-reply.  And I

19  have discussed with Mr. Marvin that we will target doing that

20  on/or before August 26th.

21      THE COURT:     Okay.

22      MS. OLDFATHER: The parties have agreed that the matter can

23  then be submitted to Your Honor without the necessity for further

24  argument.

25      THE COURT:     All right.

1     MS. OLDFATHER: You want to address that now?

2     MR. MARVIN:     Your Honor, we have had no -- I wouldn't want

3  to foreclose Ms. Oldfather in making any arguments.  I have had

4  no success in doing that in the past.  And so we have no

5  objection to her filing an additional pleading if that's

6  acceptable to the Court.  At that point we would like to take a

7  look at it and see what it is.

8     THE COURT:     Sure.

9     MR. MARVIN:     Before it be foreclosed.

10     THE COURT:     I understand.  Same way if you need time, if

11  you need to respond, you need to respond.  Both lawyers I have

12  respect for, and if you have something to say, then that means I

13  have something to listen to.  You let me know.

14     MS. OLDFATHER: I thank you for that compliment.  So we will

15  wait to hear from Mr. Marvin after we submit our sur-reply as to

16  the process.

17     The second item is our case census which we presented to the

18  Court and to counsel this morning.  And there are 36 personal

19  injury claims left.  With the settlement of another heart attack

20  case, there are two in the heart attack category, and one of

21  those, Ligowski, is subject to a motion for summary judgment that

22  has been filed by Merck.

23     There are four cases left in the stroke category, and one of

24  those, Ms. Mannino and her husband's case is subject to a summary

25  judgment that has been filed by Merck.

1    There are the 29 VTE cases.  There is Ms. Harrison who has

2    probably always been the only bone injury plaintiff who has been

3    identified in this litigation.  I don't know of any others that

4    were developed despite the pretty extensive literature out there

5    on this type of injury associated with Vioxx.

6         And that brings me to my third point, which is Mr. Harrison.

7    He has asked me to specifically underscore his requests to be

8    heard individually by the Court.  He has some significant

9    concerns about the discovery process in his case and his own

10   challenges in being able to deal with the matters given some

11   physical disabilities that he is dealing with that are very

12   significant.

13        THE COURT:     I received Mr. Harrison's request to speak at

14   this conference, and I think in fairness to him we ought to have

15   a separate conference for Mr. Harrison.  And I have e-mailed him.

16   Hopefully next week or the following week we can have a

17   conference at which Mr. Harrison can speak, and also you can be

18   present or at least on the phone, and Merck can be there, and I

19   will hear any issues that Mr. Harrison has to raise.  I

20   understand he fell recently and has sustained additional

21   injuries.  So it would be easier for him to be on the phone with

22   us.  The last time Mr. Harrison came, it took him three days by

23   bus to get here, and it was difficult on his part.  So I will

24   deal with him on the phone.

25        MS. OLDFATHER: And that's all I have, Your Honor.  I think

1   Mr. Herman was referring to matters in Section V that are under

2   submission.

3        THE COURT:     One thing I have got to get with the parties

4   when we finish with the summary judgment motions and the

5   rehearing or requests for rehearing, the reconsideration motion,

6   I should say.  I have got to get with you all to talk about some

7   method that we deal with these cases so that we can -- I'm

8   interested in your thoughts.  We have got to first decide who is

9   willing to be here and who wants to stay in their own briar

10  patch.  And then I will deal with those.  And if we have a number

11  of them that are here either because they have been filed here or

12  because they are willing to be tried here, then we need to think

13  about how to go about that.

14       MS. OLDFATHER: In looking forward to that, Your Honor, we

15  have been working through those Lexicon issues with all of the

16  VTE plaintiffs.  So once we know where we stand, we will be

17  prepared to do that.  We look forward to it.  Thank you, Your

18  Honor.

19       THE COURT:     Okay.  Any appeals?

20       MR. HERMAN:     If it please the Court, one other pending

21  motion before Your Honor.  We submitted a motion requested order

22  regarding a QSF in connection with this.

23       THE COURT:     I just got it, so I will be reading it

24  tonight, and I will rule on it.

25       MR. HERMAN:     There are no further comments as to appeals.

1    As to the pro ses, they did file some appeals.  Mr. Johnston

2    sent a report as to pro ses in to Your Honor.  And I want to tie

3    up one loose end.  I have been in contact with Robert Chellis,

4    the attorney, and I will be communicating with him this

5    afternoon.  And lastly, I want to thank Mr. Getty.  I am now no

6    longer animated.  I am contemplative.  Mr. Marvin, you are now

7    Salvador Dali, and you, Mr. Beisner, who throws scattered paint

8    over everything, are Jackson Pollack.  And me with my customary

9    humility will return to being Rembrandt.

10    THE COURT:    All right, with that I will see you all next

11    on October the 9th.  We have with us today a litigant or a

12    relative of a litigant.

13    MR. DENSON:    Anthony Denson, pro se claimant for Antonio

14    Denson's estate.  Sir, since I spoke last at the status

15    conference, which is about a year ago, and you had sent out your

16    condolences and they were heartfelt and even through the phone

17    and I thank you again for that --

18    THE COURT:    I'm awfully sorry to hear about your

19    brother's demise.

20    MR. DENSON:    I appreciate your condolences and all of the

21    help that was rendered from Ms. Oldfather.  Sir, I just I have

22    several things today in reference to that matter.  Back then,

23    which was August the 16th status conference, you referred the

24    case back to State Court in New Jersey to the Honorable Judge

25    Carol Higbee.  And since then I have had several phone

1  conversations with Judge Higbee in relation to that matter.  And

2  I will allude to them a little bit later as to what it was.

3      But today what I would like to do is the Court had a problem

4  with the jurisdiction, and I would like to see, amend that

5  complaint against Merck to reflect wrongful death.  And basically

6  it will be for several counts, which would be consumer product,

7  defective product, breach of express warranty and punitive

8  damages, sir, which would be basically a part of the complaint.

9      And I would like you to know that Antonio was a citizen of

10  New Orleans for a long while and with two years prior to his

11  demise, I came and sought help and treatment from Ochsner Health

12  Care Center for his heart-related illnesses.  And it was

13  Ochsner's understanding that possibly they could have done

14  something if, in fact, they were warned a little bit earlier

15  about his condition.

16      And it is my understanding through the hospitalization with

17  my brother that basically the Vioxx that he ingested caused the

18  muscles of his heart to deteriorate over time.  So he lasted a

19  long enough time to come before yourself, and I think he made an

20  attempt to go to New Jersey, but he wasn't able to meet with the

21  Honorable Judge Higbee.

22      But nevertheless, I would like the Court to in essence amend

23  the previous complaint against Merck to reflect wrongful death,

24  and we want, we want to ask the Court for a hundred million

25  dollars by no means basically what we would ask for is the same

1   amount that was allotted to another individual who was to my

2   understanding, in fact, at work and he received a substantial

3   amount for his injuries.  And I think that would be under case

4   number <u>Howison v. Merck</u> that was in the New Jersey Court also

5   under Judge Carol Higbee presided over that matter.  I think

6   Marc, Seeger Weiss was representing my brother also, and Mr.

7   Howison.

8         And sir, I would just say that if the Court did decide to

9   render a decree judgment in the summary judgment in an expedited

10  manner, I would appreciate it.

11        And also I would like to say that if the Court would

12  consider these requests, if the Court decides that it is not in

13  its interest to do this, and I pray it is not, that the Court

14  would actually order the attorneys who basically filed those

15  cases in New Jersey such as Christopher Seeger, Stephen Strauss

16  and Charles Cohen to come before the Court and explain just what

17  happened in the stipulated dismissal as to the case of <u>Antonio</u>

18  <u>Denson v. Merck</u>.  It was case code number 619.  The docket number

19  is ATL-LI0471-06-MT.  It was a stipulation of dismissal with

20  prejudice as to all defendants.  And it is my understanding from

21  the Court that there was no case open for the judge to go back to

22  is my understanding.  But what I am asking the Court to do, sir,

23  is to subpoena these people that I just mentioned to the Court to

24  come and visit you, take them to dinner someday, sir.  They love

25  you up there.  And I just, take you, Judge Higbee I know they

1    think the world of you.  They think you are the best thing

2    Clinton did putting you on the bench.  So, nevertheless, I wish

3    the Court would some kind of way find a way to decree some

4    portion of the 4.5 billion, the 4.8 billion of the money set

5    aside for stroke and death and what have you to compensate my

6    brother for his injuries as a result of ingesting that medicine.

7        Now, I know you're real pressed and you got a big trial

8    coming up, and I appreciate that you probably got your thinking

9    cap on today.  But nevertheless, I wish, I don't want to go back

10   to New Jersey which Judge Higbee invited me to come back up there

11   and have a, do something and say Hi to her.  But I probably would

12   if the Saints go the Super Bowl, and I'll go to New Jersey.  But

13   if the Court can render a judgment, expedited summary judgment in

14   the matter in lieu of information that was submitted by liaison

15   counsel for certain cases, Ms. Oldfather and there was Mr. Dean

16   Ochsner has 16 files from Antonio related to this matter that's

17   presently in this Court, which was basically sued this matter as

18   relates to the wrongful death of Antonio Denson.  And sir, we

19   want to ask for a hundred million dollars.  We would ask for the

20   same amount we previously asked in different filings for the

21   Court to consider.

22       THE COURT:    All right, Mr. Denson, let me look at it.

23   But I think that what I have done already in this case is sent it

24   back to New Jersey.  So I don't think  I have it before me.  But

25   let me look at it.  I appreciate your being here.  I always

1    appreciate your --

2         MR. DENSON:    Sir, but what I'm saying is that I don't want

3    this case to go back to New Jersey.  I want since he was a

4    citizen here and he died here, for the Court to consider

5    jurisdiction and follow up on the wrongful death aspect of

6    Antonio Denson as it relates to the estate of Antonio Denson.

7         THE COURT:    Okay, all right.

8         MR. DENSON:    Thank you.  Can I turn this into the Court?

9         THE COURT:    Just leave it with me.

10        MR. HERMAN:    May it please the Court, co-class counsel,

11   Elizabeth Cabraser, I will consult with.  I'm not the only one

12   Mr. Getty can speak with, because we are now co-class counsel.

13   We will try to set something up next Wednesday, Thursday or

14   Friday at Mr. Getty's convenience either in person here or

15   conference call to discuss that issue.  And Your Honor, God

16   willing and the voters willing maybe we will have another Clinton

17   making appointments to the federal bench, you having performed as

18   the gentleman indicated.

19        THE COURT:    All right, so I will see you all then on

20   October the 19th.  Court will stand in recess.

21        MR. GETTY:    I will call Russ sometime today and see if we

22   can set something up.  The only thing I would like to say is that

23   I just hope that either the Court or Mr. Herman thinks that I'm

24   Vincent Van Goh.

25        THE COURT:    Okay.

1    MR. HERMAN:     Well, you only have one ear so far.

2    MR. GETTY:      My name is Getty.

3    THE COURT:      Okay, thank you very much.

4    (Status concludes at 9:48 a.m.)

<u>REPORTER'S CERTIFICATE</u>

         The undersigned certificates, in his capacity as

Official Court Reporter, United States District Court, Eastern

District of Louisiana, the foregoing to be a true and accurate

transcription of his stenograph notes on the  14th  day of August

2013.

         New Orleans, Louisiana this   23rd   day of August 2013.


                              /S/ DAVID A. ZAREK
                              _____
                              DAVID A. ZAREK
                              OFFICIAL COURT REPORTER