1

2                    IN THE UNITED STATES DISTRICT COURT FOR

3                      THE EASTERN DISTRICT OF LOUISIANA

4                              AT NEW ORLEANS

5

6    IN RE:  VIOXX PRODUCTS              ) Case No. 05-1657 "L"
     LIABILITY LITIGATION                ) July 24, 2013
7                                        ) Plaintiff's Motion for
     _____) Preliminary Approval of
8                                          Class Settlement

9

10                         TRANSCRIPT OF PROCEEDINGS

11                  BEFORE THE HONORABLE ELDON E. FALLON

12                      UNITED STATES DISTRICT JUDGE

13

14

15

16

17

18

19

20   SUSAN A. ZIELIE, RPR, FCRR
     Official Court Reporter
21   HB 406
     500 Poydras Street
22   New Orleans, Louisiana 70130
     susan_zielie@laed.uscourts.gov
23   504.589.7781

24   Proceedings Recorded by Computer-aided Stenography.

25

```
 1    APPEARANCES:

 2

 3    For the PSC:          ELIZABETH J. CABRASER, ESQ.
                            Lieff Cabraser Heimann & Bernstein LLP
 4                          275 Battery Street, 29th Floor
                            San Francisco CA 94111-3339
 5

 6                          DAWN M. BARRIOS, ESQ.
                            Barrios Kingsdorf & Casteix LLP
 7                          One Shell Square
                            701 Poydras Street, Suite 3650
 8                          New Orleans LA 70139-3650
                            barrios@bkc-law.com
 9                          504.524.3300

10                          JAMES R. DUGAN, II, ESQ.
                            One Canal Place
11                          Suite 1000
                            365 Canal Street
12                          New Orleans LA 70130

13

14    For Kentucky:         RICHARD A. GETTY, ESQ.
                            The Getty Law Group
15                          1900 Lexington Financial Center
                            250 West Main Street
16                          Lexington KY 40507
                            rgetty@gettylawgroup.com
17                          859,259.1909

18

19    For Merck:            JOHN H. BEISNER, ESQ.
                            Skadden Arps Slate Meagher & Flom LLP
20                          1440 New York Avenue NW
                            Washington DC 20005
21                          john.beisner@skadden.com
                            202.371.7410

22

23    Appearing Telephonically:          RUSS HERMAN, ESQ.
                                          LEONARD DAVIS, ESQ.
24                                        ARNOLD LEVINE, ESQ.
                                          KENNETH JOHNSON, ESQ.
25                                        ORRAN BROWN, ESQ.
```

```
 1                NEW ORLEANS, LOUISIANA; WEDNESDAY, JULY 24, 2013        08:55:1

 2                              9:02 A.M.                                08:55:3

 3           THE CLERK:  MDL No. 05-1657, in re:  VIOXX Products         09:02:2

 4   Liability Litigation.                                              09:02:3

 5           THE COURT:  Counsel make their appearances for the         09:02:3

 6   record, please.                                                    09:02:3

 7           MS. CABRASER:  Good morning, Your Honor.  Elizabeth        09:02:3

 8   Cabraser for the PSC.                                              09:02:3

 9           MS. BARRIOS:  Dawn Barrios for the plaintiffs.             09:02:4

10           MR. GETTY:  Good morning, Your Honor.  Richard Getty on    09:02:4

11   behalf of Mr. Ratliff.                                             09:02:4

12           MR. DUGAN:  Good morning, Your Honor.  James Dugan on      09:02:4

13   behalf of plaintiffs.                                              09:02:5

14           THE COURT:  I understand we have some people on the        09:02:5

15   phone also on behalf of plaintiffs; is that right?                09:02:5

16           PERSON ON TELEPHONE:  That's correct, Your Honor.          09:02:5

17           THE COURT:  Who is on the phone?                           09:02:5

18           MR. HERMAN:  Russ Herman for the PSC and Plaintiffs'       09:03:0

19   Steering Committee.                                                09:03:0

20           MR. DAVIS:  Also, Your Honor, Leonard Davis.               09:03:1

21           MR. JOHNSON:  Good morning, Your Honor.  This is           09:03:1

22   Kenneth Johnson from Johnson Perkins in Vermont.                  09:03:2

23           MR. LEVINE:  Arnold Levine on behalf of Plaintiffs'        09:03:2

24   Purchase Claims Committee and plaintiffs.                         09:03:2

25           MR. BROWN:  Good morning, Your Honor.  This is Orran       09:03:3
```

1    Brown, Junior, with BrownGreer, PLC.                          09:03:3

2              THE COURT:  For the defendants.                     09:03:3

3              MR. BEISNER:  Good morning, Your Honor, John Beisner on   09:03:3

4    behalf of defendant Merck.                                    09:03:4

5              MR. MARVIN:  Doug Marvin.                           09:03:4

6              THE COURT:  Anyone on the phone for the defendants?  09:03:4

7                   (No response.)                                 09:03:4

8              THE COURT:  This is a motion for a preliminary approval   09:03:4

9    of a class settlement.  I'll let the movant first speak, who is   09:03:5

10   supporting this position.                                     09:04:0

11             MS. CABRASER:  Good morning, Your Honor.  Elizabeth   09:04:0

12   Cabraser for the PSC on the motion for preliminary approval of   09:04:1

13   the $23 million consumer class settlement.                    09:04:1

14             Your Honor, I'm not going to spend the Court's      09:04:2

15   time this morning going over the details of the settlement.  I   09:04:2

16   know you're familiar with the terms of the settlement and with   09:04:2

17   the documents themselves, as we have reported in to you on a   09:04:3

18   regular basis as the settlement discussions and negotiations   09:04:3

19   have advanced.                                                09:04:4

20             We have now submitted to the Court the final       09:04:4

21   signed version of the settlement agreement reflecting the $23   09:04:4

22   million, the declaration of Dr. Shannon Wheatman regarding the   09:04:4

23   comprehensive multimedia notice plan that has been developed to   09:04:5

24   give notice to the proposed settlement class of the settlement   09:04:5

25   and to enable them to make claims, as well as a proposed order   09:05:0

1   of preliminary settlement approval, which includes the class

2   definition, the scope of the release, the proposed findings that

3   the settlement class meets for settlement purposes, the

4   requisite criteria under Rule 23(a) and Rule 23(b)(3) for

5   purposes of conditional class certification for settlement

6   purposes under Rule 23(e).

7            We would note that at this time that the

8   settlement reflects essentially 18 months of ongoing discussion

9   and negotiation, informed by bellwether trials of both personal

10  injury wrongful-death and purchase claims, the attorney general

11  trial, substantial discovery, intimate awareness on the part of

12  the negotiating counsel on both sides, the legal issues, the

13  factual issues in this case and the Folsom factual record.  It

14  has also been informed by Your Honor's findings and rulings

15  throughout the course of these proceedings as the MDL judge and

16  as trial judge in the bellwether cases, as well as the decisions

17  of all of the other state courts that have had occasion to look

18  at the VIOXX consumer claims.

19           We submit that this settlement merits preliminary

20  approval notice for the class because it resolves, after a

21  substantial period of time, on a very common-sense practical and

22  substantial basis, actual out-of-pocket claims.  For consumers

23  who actually spent money to buy VIOXX, this settlement offers

24  them monetary relief.  For consumers who spent money seeing

25  doctors after the withdrawal of VIOXX from the market because

1    they were concerned about alternative medications, they also

2    have the opportunity to claim up to $75 of their out-of-pocket

3    costs.

4              And, very importantly, given the passage of time

5    since the 2004 withdrawal of VIOXX from the market, the

6    settlement, after very intensive arm's length and I would say

7    heated negotiation, provides four alternative means by which

8    those who don't have all their document records can make a claim

9    and receive a payment of up to $50 by either providing:  A

10   medical record; a doctor's letter; a prescription bottle; or

11   simply a sworn statement that they paid for VIOXX and that other

12   forms of proof are not available.

13             The purpose here is to enable people who spent

14   money and lost money to recover a substantial portion of that

15   money without awaiting the additional years it would take to go

16   through the process of seeking contested class certification in

17   this and other courts, prevailing and surviving the inevitable

18   appeals and then years hence coming back to this Court or other

19   courts to request essentially the same relief.  That is not in

20   the interests, we believe, of class members who have waited a

21   long time.

22             This is the appropriate time to move forward with

23   the settlement.  This is a fair amount of settlement.  Great

24   pains and efforts have been taken to make sure that the notice

25   program is both cost-effective and comprehensive.  It will reach

1    81.1 of all the adults 58 years of age or over at least 2.5    09:08:4

2    times each.  That is the expert opinion of Dr. Shannon Wheatman,    09:08:4

3    the preeminent notice program expert in this country, one who is    09:08:4

4    well familiar to this Court.    09:08:5

5              The claim form has been designed to be both simple    09:08:5

6    to use, a reasonable screening for inappropriate claims, but not    09:09:0

7    interposing inappropriate or onerous obstacles to the class    09:09:1

8    members that spent money who should be making claims and    09:09:1

9    recovering their money.    09:09:2

10             This will involve at least 60 days after notice    09:09:2

11   starts for class members to object or opt-out.    09:09:2

12             The claims period will run from nine months from    09:09:3

13   the notice commencement date.  Your Honor, if the Court grants    09:09:3

14   preliminary approval to the settlement today, we have been told    09:09:4

15   that the notice program can commence by August 23rd.  Which    09:09:4

16   means that the opt-out or objection deadline, postmark deadline,    09:09:5

17   would be November 9th.  This Court could set a final approval    09:10:0

18   hearing, a formal fairness hearing, later in November or in    09:10:0

19   December of this year.  And, under that chronology, claims could    09:10:0

20   be made up until April 23rd, 2014.    09:10:1

21             As you know, Your Honor, the plaintiffs' liaison    09:10:1

22   counsel Russ Herman and co-lead counsel Chris Seeger and Andy    09:10:2

23   Birchfield, together with members of the PSC who are well    09:10:2

24   experienced and experts in consumer class actions, including    09:10:3

25   Arnold Levine, Leonard Davis and the members of the Purchase    09:10:3

1  Claims Committee that have been active in prosecuting these

2  claims and defending them against dismissal, those are counsel

3  who are on the phone today, Dawn Barrios, who has been

4  instrumental and indispensable in terms of the settlement

5  documentation, the notice program itself and keeping us all

6  together, which is her unique area of expertise.  And I wanted

7  to make sure that, because I just happen to be the one here

8  today arguing this, to thank those who were instrumental in

9  getting us to this point in the settlement.  Which is a point

10  which we believe where the claims of the consumer class members

11  can be resolved on a fair, adequate and reasonable basis

12  pursuant to the best practical notice and claim form that has

13  been designed to facilitate meritorious claims.

14          Your Honor, we're here to answer any questions you

15  may have.

16      THE COURT:  Just two areas of inquiry.  The scope of

17  your proposed settlement class, is it the nation as a whole?

18      MS. CABRASER:  It is the nation as a whole, excluding

19  those who purchased VIOXX in Missouri.  Because that class has

20  entered -- that certified class has entered into its own

21  settlement.  And notice has been sent.

22      THE COURT:  And Kentucky is in the process of dealing

23  with a state class action also; is that correct?

24      MS. CABRASER:  That is correct.

25          That class has not been certified, and Kentucky

1   residents are included in this settlement class.                        09:12:2

2        THE COURT:  There have been some cases during the                  09:12:2

3   course of this litigation dealing with the purchaser consumer           09:12:3

4   classes, and those courts that have dealt with it both in New           09:12:3

5   Jersey and also in California have concluded, and I think this          09:12:4

6   Court looked at the issue early on, too, and concluded that it          09:12:4

7   wasn't a class certifiable when it was presented by the                 09:12:5

8   plaintiffs because of the difference in the claimants themselves        09:13:0

9   and from the standpoint of a national class action from the            09:13:0

10  various differences in the state laws.  And so those                    09:13:1

11  opportunities for class certification that were urged by the            09:13:1

12  plaintiffs failed.  How does that impact this class                     09:13:2

13  certification request from a settlement class?  Do you see any          09:13:2

14  problem there?                                                          09:13:3

15       MS. CABRASER:  Your Honor, we see that as a point in               09:13:3

16  favor of certification of this 49-state settlement class, as           09:13:3

17  well as inclusion of residents of states in which class                 09:13:4

18  certification by the state courts has been denied.                      09:13:4

19            I would cite for Your Honor the recent Third                  09:13:4

20  Circuit decision in *Sullivan vs. DB Investments*, 667 F.3d 273,        09:13:5

21  Third Circuit en banc decision from 2011, cert was denied.  That       09:13:5

22  is the Third Circuit's second look and affirming look at a             09:14:0

23  nationwide class settlement, which arguably included class             09:14:1

24  members who either did not have a claim under their own state's        09:14:1

25  laws or whose claims had been rejected.  But, as the Third             09:14:1

1    Circuit noted, for settlement purposes, what matters with

2    respect to predominance is that the defendants' conduct is

3    alleged to have been common with respect to the entire class.

4    That's the first stage of what Your Honor found in your *Walker*

5    decision.  And that there is a fair means of allocation.

6                And that the defendant has also agreed that it is

7    an appropriate resolution of claims which could otherwise be

8    continued.  And we note that we could continue these class

9    claims in many states.  We could arguably continue the quest.  I

10   think it would be an endless quest for a nationwide class under

11   the circumstances of the court decisions we already have.

12               And I think Merck recognizes that, too.  Which is

13   why you see a substantial amount of money being offered to

14   settle these claims on a comprehensive basis, and you don't see

15   the defendant attempting to pick and choose and to allocate

16   different amounts or different remedies to members of different

17   states.  That was the objection in *Sullivan* and the Third

18   Circuit overruled that.  Said everybody gets the same for the

19   purposes of a nationwide class settlement.

20               I'd also cite to Your Honor the *in re:  Warfarin*

21   *Sodium Antitrust* litigation decision of the Third Circuit, 391

22   F.3d 516 from 2004, which was again a comprehensive

23   multi-state -- nationwide, in fact -- antitrust settlement.  The

24   same arguments.  Some members of some states might or might not

25   have stronger claims than others.  The courts might do different

1    things on class certification.  And class certification might          09:16:0

2    not be sustainable on litigation basis.  And so the *Warfarin*          09:16:0

3    decision cited the Third Circuit's Girsh factors to say that, in          09:16:1

4    fact, the risk of prevailing on maintaining class certification          09:16:1

5    through trial is a factor to be taken into consideration by the          09:16:2

6    court, both in terms of preliminary and final approval, to          09:16:2

7    determine whether a settlement is the better course for class          09:16:3

8    members than continued litigation.          09:16:3

9              So I think the difficulties with -- the          09:16:3

10   demonstrable difficulties with sustaining nationwide class or          09:16:3

11   even a state-wide class through trial and appeal in this case          09:16:4

12   weigh heavily in favor of approval of the class settlement.          09:16:4

13             And, finally, under the Fifth Circuit's Reed          09:16:5

14   factors, which were most recently recited I think by Judge          09:16:5

15   Higginbotham in *Union Asset Management vs. Dell,* 669 F.3d 632, a          09:17:0

16   Fifth Circuit decision from last year, the risk of prevailing on          09:17:0

17   the merits and frankly these days class certification for          09:17:1

18   purposes of trial is inextricably intertwined with the merits.          09:17:1

19             It's all about the facts of the case.  We have          09:17:2

20   very strong arguments under consumer law for class certification          09:17:2

21   of these claims on a nationwide or state-wide basis.  Your          09:17:2

22   Honor's heard them and read them before.  And, absent          09:17:3

23   settlement, you and many other courts perhaps would be hearing          09:17:3

24   them and reading them again.  But those legal arguments, which          09:17:3

25   may be compelling in a different fact scenario, must be made in          09:17:4

1   connection with the facts scenario that has developed in this          09:17:4

2   case.  And, while that fact scenario has proved favorable to           09:17:5

3   plaintiffs in wrongful-death and personal injury claims, it has        09:17:5

4   proven more challenging to date for the plaintiffs on their            09:17:5

5   consumer claims.                                                       09:18:0

6            And that is why, looking at the prospects of class            09:18:0

7   certification on a state-wide or nationwide basis, looking at          09:18:0

8   the prospects of prevailing on the merits and generating a            09:18:0

9   greater net recovery, when all the years have passed and all the      09:18:1

10  hours have been spent, leads us to say that a comprehensive            09:18:1

11  class now for this settlement amount now is the better and more        09:18:2

12  responsible course in light of the interests of the class.             09:18:2

13           THE COURT:  One thing different in this particular case       09:18:2

14  that I've found with the purchasing consumer class is that            09:18:3

15  there's some states that focus on the conduct of the defendant        09:18:3

16  more than the resulting damages sustained by the plaintiff.           09:18:4

17  Missouri was one that simply focused on whether or not the            09:18:4

18  conduct was misleading and didn't focus on the specifics of the       09:18:5

19  ills claimed by the plaintiff.  And so there was more                 09:19:0

20  opportunity for commonality and preponderance in those states.        09:19:0

21           I think Kentucky takes the position that they are            09:19:1

22  like Missouri, and therefore their opportunities to prevail may       09:19:1

23  be more like Missouri than in those states where the focus is on      09:19:2

24  both the conduct of the defendant as well as the resulting            09:19:3

25  damage or claims sustained or allegedly sustained by the              09:19:3

1    plaintiffs.                                                      09:19:4

2              How do you answer Kentucky when they say it may be     09:19:4

3    fair for Louisiana or Mississippi but it's not fair for the     09:19:4

4    Kentucky people?                                                09:19:5

5              MS. CABRASER:  Your Honor, I would answer this way.    09:19:5

6    Prior to 2009, I would have said that California and New Jersey  09:19:5

7    were also much more like Missouri.  And the courts, including    09:20:0

8    the supreme court in New Jersey and the court of appeals in      09:20:0

9    California, said no.                                             09:20:1

10             I think the problem with trying to predict            09:20:1

11   outcomes in consumer class actions is that the law on the books 09:20:1

12   in a particular state, both the statute books and the case law  09:20:2

13   books, may appear to be very strong and it may be implemented    09:20:2

14   and upheld in that strong way by a particular court, including a 09:20:3

15   particular appeals panel or a particular supreme court at a      09:20:3

16   given time that looks at that law, or it may not.  And that, as  09:20:4

17   I mentioned earlier, partly depends on the way courts view the   09:20:4

18   facts and how developed the factual record has become.          09:20:5

19             And it also depends, frankly, on the fact that        09:20:5

20   different courts view the application of the same legal and      09:20:5

21   statutory principles differently at different times under       09:21:0

22   different circumstances.                                        09:21:0

23             So we, from California, for example, like to think    09:21:0

24   that we have among the strongest consumer laws in the nation.   09:21:1

25   And, often, our courts back us up on that; but not always.  And 09:21:1

1    not in the case of VIOXX.

2              And so, when we look at a responsible course of

3    prosecuting and playing out the answer to this class

4    certification for trial purposes question and indeed the

5    question of whether the claimants each have a claim they can

6    state under the statutes in the remaining 47 states, it is not a

7    prospect that appears to us to be a course that's going to yield

8    a better outcome predictably for the claimants of any of these

9    states regardless of how strong their laws are, much less the

10   prospects of all class members.

11             So we're not choosing some benefit for a

12   nationwide class as an alternative or to the exclusion of

13   benefits for a particular state.  We're simply recognizing that,

14   at this point in time, nine years, in the very active litigation

15   of all the claims in this litigation, in both the federal and

16   state courts, we see the prospects for actual in-the-pocket

17   class recovery in a reasonable period of time to be much better

18   served by the settlement than by continued litigation in any of

19   the states, including the settlement class.

20             THE COURT:  Thank you very much.

21             I know we have Kentucky here.  Does anybody want

22   to speak again in favor of this position, Merck or anybody?

23             MR. BEISNER:  Nothing at this time, Your Honor.

24             THE COURT:  All right.  Let me hear from Kentucky.

25             MR. GETTY:  Thank you, Your Honor.  Richard Getty on

1  behalf of the Kentucky class, the James Ratliff litigation.                    09:23:0

2            I think you in your comment earlier accurately                       09:23:0

3  summarized our position.  We think it would be inherently unfair              09:23:0

4  to include Kentucky, the Kentucky case.  There is not a final                 09:23:1

5  order because the case is now before the supreme court of                     09:23:1

6  Kentucky on what's called a discretionary review.  The next                   09:23:2

7  opinion day is August 29th.  Our court takes the month of July                09:23:2

8  off for writing and vacations, et cetera, et cetera.  So we                   09:23:3

9  expect, we're hopeful that maybe we'll get an opinion at that                 09:23:3

10 time or some time during the month of September.                              09:23:4

11           But I think you've put your finger on it.  Our                      09:23:4

12 statute is, to use the language of our court of appeals in the                09:23:4

13 court of appeals' opinion, it says:  A Missouri court analyzing               09:23:5

14 a consumer protection statute nearly identical to our own -- and             09:23:5

15 that's the *Plubell* case -- found that the statute required that            09:24:0

16 the plaintiff's economic loss resulted from Merck's unlawful                  09:24:0

17 practices but did not require the plaintiff's purchase of VIOXX               09:24:0

18 to be caused by the unlawful practice.                                        09:24:1

19           Neither statute requires proof of reliance.  And,                   09:24:1

20 in fact, our supreme court, I think in an earlier case which we               09:24:2

21 cited to you involving a college called XL College, did direct               09:24:2

22 the certification of a class using generalized proof of fraud.                09:24:3

23           What's also before our supreme court is the issue                   09:24:3

24 of not just the consumer protection statute which does not                    09:24:4

25 require reliance but also the issue of an in common law fraud                 09:24:4

1    claim.  In Kentucky, where you have a consistent course of

2    conduct by someone like Merck in using deceptive practices or

3    not disclosing the true facts about the dangers of a product,

4    where if that's the case, can you have generalized proof of

5    fraud.  In the case involving XL College, our court, our supreme

6    court said, yes, you can.  And that issue is also before our

7    supreme court.

8              So our case is drastically different from a case

9    in Louisiana or a case in New Jersey.

10              The other thing I'd point out is the claimant in

11    the other two cases -- our case is one of two cases that has

12    been certified as a class action in the United States.  *Plubell*

13    is the other.  Our case was certified in 2010.  We've been

14    litigating this case for nine years.

15              And I compliment Mr. Beisner and Skadden Arps,

16    they have thrown everything but Rommel's last panzer division on

17    us from the trial court on up to the current stages.  But we've

18    weathered the storm.  And the court of appeals' opinion reversed

19    the class certification.

20              But, if you read it with respect to the consumer

21    claim, our statutory claim being nearly identical to Missouri's,

22    I believe it will be certified.

23              The other reason that I think we should be

24    excluded -- and I've asked the Court to do that, and I would ask

25    you today to at least provisionally -- at the very least to

1   exclude us if you don't feel confident enough to do that today.    09:26:3

2   I think we've proven to you that we really ought to be excluded,    09:26:3

3   and we ought to be excluded now.    09:26:3

4            But, in any event, our case is vastly different    09:26:4

5   because of the addition of common law fraud counts and the fact    09:26:4

6   that Kentucky in an earlier case has recognized generalized    09:26:5

7   proof may be sufficient where you have a consistent course of    09:26:5

8   conduct involving a product or a service.  There, it was the    09:27:0

9   misrepresentations concerning accreditation of college courses.    09:27:0

10  It was a junior college called XL College in I think Corbin,    09:27:1

11  Kentucky.  But think that's a very important distinction here.    09:27:1

12           THE COURT:  Wouldn't you have to do some individual    09:27:1

13  proof of damages, though?  Your class?    09:27:2

14           MS. CABRASER:  Not really.  Not really.  Because the    09:27:2

15  trial court addressed that.  And I think the way we would deal    09:27:2

16  with it would be with a special master.    09:27:3

17           Because what we're really -- the only difference    09:27:3

18  -- and that was a question that was put to both Mr. Beisner and    09:27:3

19  to me in front of the supreme court.    09:27:4

20           And, just as a footnote, I didn't realize it the    09:27:4

21  day we argued it, but it's on television.  And a number of -- I    09:27:4

22  did a couple of mock panels with former supreme court of    09:27:5

23  Kentucky justices and two other prominent lawyers -- I actually    09:28:0

24  did two, which helped tremendously.  But they were all watching    09:28:0

25  it.  It was on TV, close-circuit.  But nobody taped it.  And I    09:28:0

1   didn't know that it was even on TV.  I wish it would have been

2   taped.  Because, you know, one of the points that was drawn out

3   in the oral argument was, really, the only difference between

4   the fraud claim and the consumer claim is punitive damages.

5   That's it.  But, in terms of the proof of damages, if you prove

6   generalized proof of fraud or deception in effect for that block

7   or period of time, you have a claim.  You've established claim.

8   The only difference is do you get punitives because of a fraud

9   claim, or do you simply have economic damages, which is the

10  refund.

11          And, you know, here, we're looking at, if you take

12  Mr. Ratliff around $300 is what he expended, three to 350, we

13  have over 200,000 consumers in the state of Kentucky.  We've

14  established that through some databanks that we've had access

15  to.  And, at $300, that's a lot of money, Your Honor.

16          I think it's not in the interest of the citizens

17  of the Commonwealth of Kentucky to be included here.  I think

18  we're nearly identical to the Missouri case.

19          The only quirk of fate that befell us is that we

20  went to the court of appeals, I guess that was the third time.

21  We had two mandamus proceedings, two attempts to -- appeals from

22  the court of appeals denial mandamus.  And on the third -- once

23  we changed our rules to allow an immediate appeal for class

24  certification like the federal rules -- we didn't do that

25  before -- and, once they did that, Merck went up to the court of

1   appeals, and the court of appeals reversed the class                09:29:5

2   certification.                                                      09:29:5

3          But you've read the opinion.  I think they did               09:29:5

4   everything but say that the consumer claim should be certified.     09:30:0

5   I believe that's what our supreme court's going to do, and I        09:30:0

6   believe we have at least a 50/50 chance that they're going to       09:30:1

7   say that the fraud claim should be certified and the generalized    09:30:1

8   proof of fraud is usable in Kentucky.                               09:30:1

9          It's really an important case from the standpoint            09:30:2

10  of Kentucky practice, both from the standpoint of the statute       09:30:2

11  and the standpoint of the issue of did they mean what they said     09:30:2

12  in the earlier case involving the XL College.                       09:30:3

13         So I would ask you that you exclude us from this.            09:30:3

14  If I'm not correct, then I suppose there could be some effort to    09:30:4

15  bring us back in.                                                   09:30:5

16    THE COURT:  If you're wrong, then you're going to move            09:30:5

17  to get back in to this class?                                       09:30:5

18         The thing that's before me now, though, is just              09:30:5

19  the preliminary approval.  I've had situations where preliminary    09:31:0

20  approval is given and the notice goes out.  And at that point,      09:31:1

21  really, when it's final approval, is where the objectors are        09:31:1

22  able to really focus on it.                                         09:31:2

23         My concern at this stage is that there may be                09:31:3

24  other states also in your position.  I don't make any decision      09:31:3

25  on preliminary approval that I'm bound by in final approval.        09:31:3

```
 1            The concern that I have is that, without      09:31:4
 2   preliminary approval, you can't even get a notice out.  And  09:31:4
 3   that's the -- I'm not quite sure that's a good situation with  09:31:5
 4   class actions, because it costs so much to put out a notice,  09:31:5
 5   that it's one of those things that -- but it's necessary before  09:32:0
 6   you can even find out who has objections and what's the nature  09:32:1
 7   of their objections.                                  09:32:1
 8            MR. GETTY:  I agree with everything you say.  09:32:1
 9            THE COURT:  And that's a real problem.      09:32:2
10            MR. GETTY:  I understand; I agree.          09:32:2
11            THE COURT:  My concern is, I wouldn't put a preliminary  09:32:2
12   notice out and then within a month do a final hearing.  I don't  09:32:2
13   think that's fair.                                   09:32:3
14            If we put it far enough out to give your court an  09:32:3
15   opportunity to focus on this and also for you to think about it  09:32:3
16   or whatever, and for the Court to see how many other states if,  09:32:4
17   there are any, that have similar positions.           09:32:4
18            MR. GETTY:  We cited you the cases.  We actually in our  09:32:5
19   response I think pointed out those that do not require reliance.  09:32:5
20   There are a few others.                              09:32:5
21            THE COURT:  Yes.  I haven't heard anything from those.  09:32:5
22   But I understand your position.                      09:33:0
23            Let me give Merck an opportunity.           09:33:0
24            MR. GETTY:  If I could, Your Honor?         09:33:0
25            THE COURT:  Sure.                            09:33:0
```

```
1        MR. GETTY:  My only concern about the notice is to the        09:33:0

2   confusion to residents of my state.  If a notice goes out from     09:33:1

3   Kentucky from this, and the supreme court says my class is         09:33:1

4   certifiable, again, you know, I don't know how to deal with that   09:33:1

5   confusion.                                                         09:33:2

6        I would also add that, you gave us a pretty strict           09:33:2

7   admonition that we should deal with each other, Mr. Beisner and    09:33:2

8   me and Doug Marvin directly.  And we did.  We met in Washington.   09:33:3

9   And we had further discussions.                                    09:33:3

10       But, to this moment, there has not been any offer            09:33:4

11  of settlement to my Kentucky class forthcoming from Merck.  I      09:33:4

12  proceeded and will continue to proceed in good faith to try and    09:33:5

13  get a resolution so that the Kentucky case is dealt with.  But     09:33:5

14  it's been very difficult if not impossible up to this point.       09:34:0

15  Which is another reason I think we have no choice but to ask        09:34:0

16  this Court ultimately to exclude us.                               09:34:0

17       THE COURT:  Okay.  All right.  Thank you.                     09:34:1

18       MR. GETTY:  Thank you, Your Honor.  I appreciate your         09:34:1

19  indulgence.                                                        09:34:1

20       THE COURT:  Thanks very much for coming over.                 09:34:1

21       MR. GETTY:  Good to see you.                                  09:34:1

22       THE COURT:  Good to see you.                                  09:34:2

23       MR. BEISNER:  Your Honor, just a few points to make on        09:34:2

24  this.                                                              09:34:2

25       One of the things I think the Court has                      09:34:2
```

 1    recognized, but just to be clear about this, I think that what          09:34:2

 2    is before the Court is a yes or no proposition on what has been         09:34:3

 3    proposed here.  We have an agreement to do a 49-state, including        09:34:3

 4    DC, settlement, and what's before the Court is to preliminarily        09:34:4

 5    approve that or not.                                                   09:34:4

 6              I don't think it's subject -- our agreement                   09:34:4

 7    doesn't provide for carving anything out or changing anything.         09:34:5

 8    So, to be clear, it's a yes/no proposition on this.                    09:34:5

 9              And, Your Honor, the point you raised earlier                 09:35:0

10    about the emphasis of the state consumer protection statutes on        09:35:0

11    conduct versus conduct in effect, I did want to make the point,        09:35:1

12    and I think you were recognizing the point earlier, that a key         09:35:1

13    consideration there is at the end of the day you have to look at       09:35:2

14    effect.  I think Mr. Getty is exactly correct that some states         09:35:2

15    say there has to be reliance.  Others, like Kentucky, have a           09:35:2

16    causation requirement, which is something different from               09:35:3

17    reliance.  But, at the end of the day, from a due process              09:35:3

18    standpoint, there has to be a connection between the conduct and       09:35:4

19    the injury that is compensated.  The statutes don't say the            09:35:4

20    consumer gets X dollars if there's been a violation.  They talk        09:35:5

21    in terms of getting relief for injury caused as a result of the       09:35:5

22    wrongdoing that is alleged in the case.  And so, as you pointed        09:36:0

23    out, at the end of the day, there's got to be a damages analysis      09:36:0

24    that links up to the alleged wrongdoing.  The claimant doesn't        09:36:1

25    come into the court and say:  You sold me VIOXX so I get a new        09:36:1

 1   car.  I mean, it's there's got to be, from a due process

 2   standpoint, a causal relationship.

 3            And I think a key element of this, as Ms. Cabraser

 4   pointed out earlier, especially with the passage of time, the

 5   difficulty if you litigate these in the end in Kentucky or

 6   wherever you are of class members being able muster that

 7   evidence.  It's an issue for the named plaintiff in Kentucky who

 8   says:  Well, I'm owed some money because I went to a doctor

 9   after VIOXX was withdrawn.  But, in deposition, he couldn't

10   remember what doctor, he couldn't remember where he had the

11   examination; he remembers what he paid for it, he contends, but

12   he's got no documentation to demonstrate it.

13            It's going to be extremely difficult for anyone in

14   any state to litigate these to a satisfactory conclusion from

15   the claimant's perspective.  And that's why, regardless of what

16   jurisdiction we're talking about, as Ms. Cabraser pointed out, a

17   settlement here is important.

18            One other thing I did want to note, Your Honor,

19   that hasn't been mentioned here this morning, is that one of the

20   major issues here is that the class that has been proposed in

21   the Ratliff case in Kentucky is substantially narrower than what

22   is being proposed in terms of coverage of Kentucky residents

23   here.  The class that has been proposed for settlement here

24   includes anyone who has bought VIOXX.

25            The class that was proposed in Kentucky that the

```
 1   trial court certified, which was then reversed by the appellant      09:38:1

 2   court but this is the proposed class, is Kentucky residents who       09:38:1

 3   purchased and took VIOXX during a specified period.  But the          09:38:2

 4   definition goes on to say, quote:  And who, upon recommendation       09:38:2

 5   and advice of the FDA and Merck, have or will contact physicians      09:38:3

 6   to seek advice regarding their VIOXX use.  It's in the               09:38:3

 7   conjunctive, it's an And.  And so the class there is                 09:38:4

 8   dramatically limited versus the all-consumer class which we're       09:38:4

 9   talking about here.  Because, to be a member of that class,          09:38:5

10   you're going to have to demonstrate that there was some contact      09:39:0

11   with the physician.  It does say:  Will contact physicians.          09:39:0

12   But, the product's been off the market for so long now, if you       09:39:0

13   haven't done that, I'm not sure that that part of it is              09:39:1

14   meaningful.                                                          09:39:1

15            Mr. Getty talks about in terms of 200 thousand             09:39:1

16   persons in Kentucky.  Well, I believe the statistic that he is       09:39:1

17   citing there -- and I'm not concurring in that number -- but I       09:39:2

18   think the basis for it is number of users.  But that's not the       09:39:2

19   class in Kentucky.  And so, if I am someone who used VIOXX early     09:39:2

20   in the period, had no problem with it, chances are I didn't go       09:39:3

21   see a physician when the withdraw occurred, there would be no        09:39:3

22   reason for me to do that.  But we don't know how many people may     09:39:4

23   or may not have seen a physician.  But, to be in the class in        09:39:4

24   Kentucky under the definition I just read, you have to have gone     09:39:4

25   -- the element of that is the:  Contact physician to seek advice     09:39:5
```

```
 1    regarding the VIOXX use.  That is a prerequisite for being in       09:39:5

 2    the class.                                                          09:40:0

 3              And so what is being proposed there is what could         09:40:0

 4    be a substantially narrower group of Kentuckians, whereas the       09:40:0

 5    settlement that is proposed here covers all Kentuckians who used    09:40:1

 6    the product or who bought the product.                              09:40:1

 7         THE COURT:  How do you deal with his concern about             09:40:2

 8    confusion?  He says, when you send your notice out, and then he     09:40:2

 9    sends his notice out subsequently when his court approves them,     09:40:2

10    as he says it will, how do you deal with the confusion?            09:40:3

11         MR. BEISNER:  Well, Your Honor, one of the difficulties        09:40:4

12    I think that we have here is -- the position that seems to be       09:40:4

13    taken, the objection on paper, is that somehow a state class, if    09:40:5

14    one is certified in Kentucky, would trump what is going on in       09:40:5

15    the MDL proceeding.                                                 09:41:0

16              That's simply not the case.  We've cited the case         09:41:0

17    law indicating that there are many cases in which MDL courts        09:41:0

18    facing that situation in the interest of achieving finality in      09:41:0

19    the controversy and of course with the fairness of it has           09:41:1

20    concluded that it should proceed in that circumstance.             09:41:1

21              But this is not a situation where there is any            09:41:2

22    proprietary interest in a separate class in Kentucky.  A lawsuit    09:41:2

23    is pending before this Court, proposing a class, including          09:41:3

24    Kentucky residents.  Which, as I just pointed out, is much          09:41:3

25    broader than what has been proposed in the Kentucky court.  And     09:41:3
```

```
1    this Court is free to proceed.                              09:41:4

2            And I think the proposal is being made here and     09:41:4

3    Court will have before it a judgment to make later about whether  09:41:5

4    a notice going out in Kentucky would in fact interfere with the   09:41:5

5    proposal that is before this Court and will have to make a   09:41:5

6    judgment about that at that point.                          09:42:0

7            But it seems to me, Your Honor, that in looking at  09:42:0

8    it right now, what's proposed here is a class settlement.  As  09:42:0

9    Ms. Cabraser stated earlier, that if you've got your documents  09:42:1

10   and you can present them to the claims administrator, under the  09:42:2

11   terms of that settlement, you get your out-of-pocket       09:42:2

12   expenditures back, which is what you'd get if you went to trial  09:42:3

13   on it, if you want to present the documentation, as you have to  09:42:3

14   before the Court.                                          09:42:3

15           And I think, to worry about this what-if          09:42:4

16   confusion, just isn't a fair consideration here.  This Court's  09:42:4

17   got the case, it's got to deal with it.  And, if you're going to  09:42:4

18   wait for anything else that may happen, it seems to me that you  09:42:5

19   never will get this matter resolved.                       09:42:5

20       MR. GETTY:  Your Honor, could I just briefly follow up?  09:42:5

21   I'll assume that Mr. Beisner was confused, because I know we  09:43:0

22   both have an obligation of candor to the Court.            09:43:0

23           It's been awhile, it's been three years since we  09:43:0

24   certified the class in the Pike Circuit Court, and we actually  09:43:1

25   went through a formal notice to try to get a notice approved.  09:43:1
```

1    And I think John should remember that -- to say that our class          09:43:2

2    is different or narrower is not true.  Because, as the class was        09:43:2

3    certified, you could submit a claim for what you paid for VIOXX;        09:43:2

4    and then, in addition, you could also submit a claim if you went        09:43:3

5    to a doctor and could establish proof that you incurred                 09:43:3

6    additional costs.  In effect, a Class A, Class B or subclass.           09:43:4

7              So hopefully he'll go back and look at the notice             09:43:5

8    -- or maybe I'm confused.  I don't think I am.  But it's not as         09:43:5

9    represented, I think, accurately here today.                           09:43:5

10             The other thing that really concerns me, other               09:44:0

11   than the confusion is -- and I was sitting here thinking of it,        09:44:0

12   so it's just come to me.  And, you will have to forgive me, it         09:44:0

13   hit me just this moment.                                              09:44:1

14             I would like the Court to consider entering an              09:44:1

15   order precluding Mr. Beisner's client Merck from taking any           09:44:1

16   action in front of the supreme court.  We were whipsawed             09:44:2

17   tremendously in the trial court, because the trial court entered     09:44:2

18   findings certifying class, they filed a mandamus proceeding and      09:44:3

19   they argued at the court of appeals that what the trial court        09:44:3

20   had done was not adequate.                                           09:44:3

21             So then, we went back to the circuit court, and           09:44:4

22   the circuit court supplemented and amended its findings and         09:44:4

23   certified the class with further findings.                          09:44:5

24             And then they went to the court of appeals and           09:44:5

25   said that he had done something improper.  I mean, basically       09:44:5

```
 1    attacked our trial judge.  At least twice.                  09:44:5

 2              And I want an order or I'd like you to have some   09:45:0

 3    consideration to an order precluding them, until the supreme 09:45:0

 4    court rules, from going to the supreme court and saying to my 09:45:1

 5    Kentucky supreme court:  You can't do anything; dismiss this, 09:45:1

 6    abate it, just get rid of it, because now we have a class    09:45:1

 7    certified down in Louisiana.                                 09:45:2

 8              And, with all due respect to the Mr. Marvin and    09:45:2

 9    Mr. Beisner, I fully believe they would consider doing it, based 09:45:2

10    on what's happened in the past.  And I would like that to be not 09:45:3

11    a problem for me and the people in Kentucky as we move down the 09:45:3

12    road.  So I would like you to give some consideration to that, 09:45:3

13    Your Honor.                                                  09:45:4

14         THE COURT:  You know, I know you know that federal      09:45:4

15    courts have a lot of power, but I don't know whether I have the 09:45:4

16    power to tell a state court not to entertain a motion.       09:45:4

17         MR. GETTY:  I'm not asking you to say anything to the   09:45:5

18    state court.  I'm asking you to say something to Mr. Beisner and 09:45:5

19    Mr. Marvin.                                                  09:46:0

20              We can deal with it later if that problem comes    09:46:0

21    up, I suppose.                                               09:46:0

22         THE COURT:  Elizabeth, you had an issue.  And then I'll 09:46:0

23    let John Beisner speak.                                      09:46:0

24         MS. CABRASER:  I know we're getting very fine-grained   09:46:1

25    here, but it's an important point that was raised about the  09:46:1
```

1    potential for confusion of the class members.                          09:46:1

2              I think it's important to remember here that --              09:46:2

3    and I'm sure both sides will correct me if I'm wrong on this --        09:46:2

4    that a class notice was not disseminated to members of a               09:46:3

5    punitive class in Kentucky.  So, from the standpoint of the            09:46:3

6    Kentucky VIOXX members themselves, they are not in possession of       09:46:3

7    a class notice.  They're not aware of either side's version of         09:46:4

8    the status and progress of the Kentucky proceedings, and the           09:46:4

9    notice that they receive under the authority of this Court in          09:46:5

10   connection with this proposed settlement will be the first            09:46:5

11   notice that is given to them regarding the litigation.                 09:47:0

12             We've been very careful to include everything that          09:47:0

13   Rule 23 says we should include in the notice so that people have      09:47:1

14   a reliable source of information.  It's up to Your Honor to           09:47:1

15   govern what goes on the notice website and in the notice itself.      09:47:2

16   And so you will be in charge of the information that all class        09:47:2

17   members have with respect to the settlement terms and benefits       09:47:2

18   and their rights and responsibilities and the procedure for          09:47:3

19   opting out.  Anybody in Kentucky, anyone anywhere else has the       09:47:3

20   right and the individual opportunity to opt out.  Under the          09:47:4

21   *Hanlon* decision which we've cited to you, that is an individual    09:47:4

22   decision.  It doesn't interfere with any other certified class       09:47:5

23   that's operative today.                                               09:47:5

24             And, above and beyond that, we can't make                   09:48:0

25   predictions.  But we know we're not interfering with the             09:48:0

1    Missouri notice process, which is nearly complete.  We've
2    checked in with class counsel on that.  And, to our knowledge,
3    there is no existing class that has received notice anywhere
4    else in the country other than this one.
5            This will be very good news to anyone in New
6    Jersey or California, who have at one time may have heard the
7    possibility of class certification in those states but was later
8    denied.  So, it will be good news, but we don't think it will be
9    confusing news to anyone.
10           THE COURT:  Okay.  Yes.
11           MR. BEISNER:  Your Honor, just a very brief point
12   regarding the observation Mr. Getty made.
13           I'd refer the Court to Exhibit A on the Ratliff
14   submission to the Court, page 17.  And that's the order that the
15   trial court in the Ratliff case issued certifying the class.
16           My recollection is that Mr. Getty drafted this
17   order, gave it to the court and it was signed.
18           And my point was not about the relief that was
19   available to the class, which I believe is what Mr. Getty was
20   referencing.  But, rather, to the definition of who is in the
21   class.  And that order defines the class as, quote:  Being
22   comprised of all Kentucky residents who have purchased and taken
23   VIOXX during the period of May 1999 through September 30, 2004,
24   and who upon recommendation and advice of the FDA and Merck have
25   or will contact physicians to seek advice regarding their VIOXX

1    use.  That is how the trial court from the pen of plaintiff's

2    counsel in that case defined the class.

3              That is narrower because of the requirement that,

4    to be in the class, you had to contact a physician.  And that

5    makes that class significantly narrower than what we're talking

6    about as the proposed settlement class, at least with respect to

7    Kentucky residents.

8              THE COURT:  Okay.

9              MR. GETTY:  Your Honor, one question.

10             THE COURT:  Sure.

11             MR. GETTY:  I beg your indulgence.  I apologize.

12             Would it be possible to put something on the

13   website or something in the notice alerting anyone in Kentucky

14   that there is an action pending?  I mean, I would have no

15   problem with that.  That way, they would know that this is not

16   their sole means of relief.

17             My concern is the confusion that, if they see

18   this, this is their only opportunity to ever get anything

19   because of what went on and what they purchased.  I would just

20   like them to be able to know that the Ratliff case is pending,

21   it's before the supreme court, and there may be a class,

22   separate class certified in Kentucky.

23             THE COURT:  Let's assume they don't do anything.  Let's

24   assume, first of all, that they opt-out of this class, if it's

25   certified.  That doesn't preclude them from joining your class.

```
 1    If they do nothing.                                          09:51:1

 2               I haven't really certified the class yet.  And    09:51:2

 3    then, you notice them after and they do nothing for yours, that  09:51:2

 4    may be significant when or if we get to the point where I have   09:51:3

 5    to look at this finally.                                    09:51:3

 6               Seems to me, you're in better shape by having a   09:51:3

 7    preliminary with a long tail than you are with a denial of  09:51:4

 8    preliminary and scuttling the whole thing.                  09:51:5

 9         MR. GETTY:  Right.  And I have no interest in doing     09:51:5

10    that.  That's why we've asked simply exclude us at this point.  09:52:0

11         THE COURT:  The problem with excluding at least at this 09:52:0

12    point is that it aborts any notice.  Kills probably, at this 09:52:0

13    stage, any settlement for 48 of the states and maybe 49     09:52:2

14    including Kentucky if things don't go the way you hope they do.  09:52:3

15               So I'm sensitive to your concern.  I don't know   09:52:3

16    whether confusion is a problem.  But I would take a look and 09:52:4

17    give you an opportunity to speak on the notice and maybe even 09:52:5

18    meet with the parties to discuss it, and I would be sensitive to 09:52:5

19    looking at the notice more closely with confusion in mind.  I 09:53:0

20    haven't looked at it from that standpoint.  But I don't,     09:53:0

21    offhand, see confusion.                                     09:53:1

22               Anybody on the phone wishes to speak?            09:53:1

23         MR. HERMAN:  Yes, Your Honor.  This is Russ Herman.     09:53:1

24    May it please the Court, I just need to make two comments for 09:53:1

25    the record, Your Honor.                                     09:53:2
```

1    It was an Indiana case pending.  Counsel in that

2 case has reviewed the documents and indicated that he has no

3 objection.

4    There's also an Illinois case pending.  I've been

5 in communication with the attorney.  That case not only has a

6 consumer element, it also has -- in the nature of a stockholder

7 suit.  And I'm in communication on that.

8    The other thing I want to indicate for the record

9 is that, the negotiation was very difficult and hard-fought.

10 And, in every session, the difficulties became apparent.

11    Primarily, the comment I want to make is that, it

12 is a capped fund that, in connection with negotiating with the

13 dollar amount, the fact is that the capped fund be presented.

14 And we were aware of and looked at the participation rates in

15 other settlements which have a consumer aspect.  And, at this

16 point, we feel that, based upon difficulties, based upon the

17 participation rates, that the figure we reached would be fair,

18 adequate and reasonable to compensate those consumers that are

19 critical in reaching agreement at this preliminary stage.

20    Both Doug Marvin and John Beisner representing

21 Merck are very firm and professional; and, at each stage, the

22 consumer committees were advised, as well as the executive

23 committee of Chris Seeger, Andy Birchfield, Elizabeth Cabraser

24 and Dawn Barrios.  Jim Dugan is also on the committee.

25 Elizabeth and Dawn worked on this matter religiously.

1    And I feel certain that, at least from the PSC                09:56:2

2    side, that the quality of representation that went into this   09:56:2

3    settlement from our side was more than sufficient to protect the 09:56:3

4    rights of the consumers nationally with whom we're charged to  09:56:4

5    represent.                                                     09:56:5

6         THE COURT:  Okay.  I understand the position of all the  09:56:5

7    parties.                                                       09:57:0

8              I'd just remind you that, while the Federal Rules    09:57:0

9    of Civil Procedure, Rule 23, we're talking about that governs  09:57:0

10   class actions doesn't expressly provide for any preliminary    09:57:1

11   fairness evaluation the courts do suggest and the Manual For   09:57:1

12   Complex Litigation, 21.632, 2004, provisions of that draft of  09:57:2

13   manual suggest -- it's a two-step process -- and the evaluation 09:57:3

14   that the Court makes at the preliminary hearing is simpler.  The 09:57:4

15   Court is not expected to and it's probably not even wise to look 09:57:4

16   at the specifics of the objection if there be any objection.   09:57:5

17             This observation made by Kentucky is not really an   09:57:5

18   objection to the concept.  They're in the process of developing 09:58:0

19   and hoping to develop a certified class action in the state of 09:58:1

20   Kentucky, and if that comes to fruition, they feel that that   09:58:1

21   opportunity is better for Kentucky citizens than the overall   09:58:2

22   nationwide settlement.  But, they're not certain about it, so  09:58:3

23   they don't want to jettison the concept.  And they don't have  09:58:3

24   any problem with it being applied to other states other than   09:58:4

25   Kentucky.  And they would hope that it would also apply to     09:58:5

1    Kentucky if there is something that interferes with their                    09:58:5

2    resulting hope of class certification.  So it's really not an                09:59:0

3    objection but it's a suggested objection unless things do not go             09:59:0

4    well.                                                                        09:59:1

5                    I take that seriously.  I think that counsel makes           09:59:1

6    significant observations that could focus us, this Court, on the             09:59:1

7    fairness or adequacy of the Kentucky recovery if there is a                  09:59:2

8    certification state-wide.  But I don't think I need to focus on              09:59:3

9    that on this stage.  I would like to see if there are other                  09:59:4

10   states that feel similar to Kentucky or join Kentucky's view, or             09:59:5

11   whether there are a substantial number of objections for any                 09:59:5

12   reason that have to be focused on and looked at.  But I won't                10:00:0

13   know that until the class certification notice goes out.                     10:00:0

14                   I would like to see the notice when it's                     10:00:1

15   submitted, and give Kentucky at least an opportunity to look at              10:00:1

16   it.  But I will preliminarily certify this to start the ball                 10:00:2

17   rolling and see where we are.                                               10:00:2

18                   I don't think it's going to be confusing to                  10:00:3

19   Kentucky residents because it doesn't call upon them to do                   10:00:3

20   anything on either side.  And, if they get more than one notice,            10:00:3

21   they get more than one notice.  But they don't have to do                    10:00:4

22   anything, other than object.  And, if they do object to the                  10:00:4

23   class certification nationwide and then a certification is                   10:00:5

24   granted in Kentucky, they have two bites at the apple.  They can             10:01:0

25   not object to that certification or object to it if they wish.               10:01:0

1   If they don't object to that and they objected to the national,   10:01:1

2   perhaps they're in that one.   10:01:1

3              I don't know at this point because I don't have   10:01:2

4   the two in front of me.  But I do have to move on with this   10:01:2

5   litigation.  I've been having it now since February of 2005.   10:01:2

6   It's older than some of my grand kids.  And every litigation has   10:01:3

7   a beginning, generally a muddle, and an end.  And we're through   10:01:4

8   the muddle, hopefully we're getting to the end.  So I'll   10:01:4

9   conditionally certify it.   10:01:5

10             But I need to tell the parties that this isn't any   10:01:5

11  indication that I'm not concerned about Kentucky or will not   10:01:5

12  take them seriously.  When and if we get to the point of final   10:02:0

13  certification, I'll look at that, as well as any other   10:02:1

14  objections, with the scrutiny that I put on that stage of the   10:02:1

15  case.  But I will take this opportunity to announce that I will   10:02:1

16  conditionally certify it and view it again with greater   10:02:2

17  specificity at a later date.   10:02:3

18             Thank you very much, all of you all.  It's been   10:02:3

19  very helpful to me.   10:02:4

20             Court stands in recess.   10:02:4

21      MS. CABRASER:  Your Honor, just a housekeeping.  I   10:02:4

22  apologize.   10:02:4

23             The long and short form notices are submitted to   10:02:4

24  the Court as attachments to the declaration of Dr. Shannon   10:02:5

25  Wheatman which came in earlier this week, as well as the   10:02:5

1  settlement agreement, as well as proposed order.  We'd like to    10:02:5

2  be able to fill in dates for the proposed order and resubmit    10:03:0

3  that to you.  They need to go in the notice as well.    10:03:0

4      THE COURT:  Why don't you do that.  And meet with    10:03:0

5  Richard, Elizabeth, get his input.  See if there is such a    10:03:1

6  notice that can be fashioned that satisfies his concern about    10:03:1

7  confusion.  If not, then give me the two notices and I'll pick    10:03:2

8  the one.    10:03:2

9      MS. CABRASER:  We'll do that, Your Honor.  We just want    10:03:2

10  to make sure it's objective and nonpartisan.  It can't be a    10:03:3

11  brief or an opt-in piece, and we want to make sure we follow    10:03:3

12  those rules.    10:03:3

13      THE COURT:  All right.  Thank you very much.    10:03:3

14      Court stands in recess for five minutes.  I've got    10:03:4

15  another matter.    10:03:4

16      (10:03 a.m., proceedings concluded.)    10:03:4

17

18

19                    CERTIFICATE

20

21

22      I, Susan A. Zielie, Official Court Reporter, do hereby
    certify that the foregoing transcript is correct.

23

24

25                    /S/ SUSAN A. ZIELIE, FCRR
                    _____
                        Susan A. Zielie, FCRR

## $

**$23** [2] - 4:13, 4:21
**$300** [2] - 18:12, 18:15
**$50** [1] - 6:9
**$75** [1] - 6:2

## /

**/S** [1] - 37:24

## 0

**05-1657** [2] - 1:6, 3:3

## 1

**1000** [1] - 2:11
**10:03** [1] - 37:16
**1440** [1] - 2:20
**17** [1] - 30:14
**18** [1] - 5:8
**1900** [1] - 2:15
**1999** [1] - 30:23

## 2

**2.5** [1] - 7:1
**200** [1] - 24:15
**200,000** [1] - 18:13
**20005** [1] - 2:20
**2004** [4] - 6:5, 10:22, 30:23, 34:12
**2005** [1] - 36:5
**2009** [1] - 13:6
**2010** [1] - 16:13
**2011** [1] - 9:21
**2013** [2] - 1:6, 3:1
**2014** [1] - 7:20
**202.371.7410** [1] - 2:21
**21.632** [1] - 34:12
**23** [2] - 29:13, 34:9
**23(a** [1] - 5:4
**23(b)(3** [1] - 5:4
**23(e)** [1] - 5:6
**23rd** [2] - 7:15, 7:20
**24** [2] - 1:6, 3:1
**250** [1] - 2:15
**273** [1] - 9:20
**275** [1] - 2:4
**29th** [2] - 2:4, 15:7

## 3

**30** [1] - 30:23
**350** [1] - 18:12
**365** [1] - 2:11
**3650** [1] - 2:7
**391** [1] - 10:21

## 4

**40507** [1] - 2:16
**406** [1] - 1:21
**47** [1] - 14:6
**48** [1] - 32:13
**49** [1] - 32:13
**49-state** [2] - 9:16, 22:3

## 5

**50/50** [1] - 19:6
**500** [1] - 1:21
**504.524.3300** [1] - 2:9
**504.589.7781** [1] - 1:23
**516** [1] - 10:22
**58** [1] - 7:1

## 6

**60** [1] - 7:10
**632** [1] - 11:15
**667** [1] - 9:20
**669** [1] - 11:15

## 7

**701** [1] - 2:7
**70130** [2] - 1:22, 2:12
**70139-3650** [1] - 2:8

## 8

**81.1** [1] - 7:1
**859,259.1909** [1] - 2:17

## 9

**94111-3339** [1] - 2:4
**9:02** [1] - 3:2
**9th** [1] - 7:17

## A

**a.m** [1] - 37:16
**A.M** [1] - 3:2
**abate** [1] - 28:6
**able** [4] - 19:22, 23:6, 31:20, 37:2
**aborts** [1] - 32:12
**absent** [1] - 11:22
**access** [1] - 18:14
**accreditation** [1] - 17:9
**accurately** [2] - 15:2, 27:9
**achieving** [1] - 25:18
**action** [6] - 8:23, 9:9, 16:12, 27:16, 31:14, 34:19
**actions** [4] - 7:24, 13:11, 20:4, 34:10
**active** [2] - 8:1, 14:14
**actual** [2] - 5:22, 14:16
**add** [1] - 21:6
**addition** [2] - 17:5, 27:4
**additional** [2] - 6:15, 27:6
**addressed** [1] - 17:15
**adequacy** [1] - 35:7
**adequate** [3] - 8:11, 27:20, 33:18
**administrator** [1] - 26:10
**admonition** [1] - 21:7
**adults** [1] - 7:1
**advanced** [1] - 4:19
**advice** [5] - 24:5, 24:6, 24:25, 30:24, 30:25
**advised** [1] - 33:22
**affirming** [1] - 9:22
**age** [1] - 7:1
**agree** [2] - 20:8, 20:10
**agreed** [1] - 10:6
**agreement** [5] - 4:21, 22:3, 22:6, 33:19, 37:1
**aided** [1] - 1:24
**alerting** [1] - 31:13
**all-consumer** [1] - 24:8
**alleged** [3] - 10:3, 22:22, 22:24
**allegedly** [1] - 12:25
**allocate** [1] - 10:15
**allocation** [1] - 10:5
**allow** [1] - 18:23
**alternative** [3] - 6:1, 6:7, 14:12
**amended** [1] - 27:22
**amount** [4] - 6:23, 10:13, 12:11, 33:13
**amounts** [1] - 10:16
**analysis** [1] - 22:23
**analyzing** [1] - 15:13
**Andy** [2] - 7:22, 33:23
**announce** [1] - 36:15
**answer** [4] - 8:14, 13:2, 13:5, 14:3
**Antitrust** [1] - 10:24
**antitrust** [1] - 10:23
**apologize** [2] - 31:11, 36:22
**apparent** [1] - 33:10
**appeal** [2] - 11:11,
18:23
**appeals** [11] - 6:18, 13:8, 13:15, 15:12, 18:20, 18:21, 18:22, 19:1, 27:19, 27:24
**appeals'** [2] - 15:13, 16:18
**appear** [1] - 13:13
**APPEARANCES** [1] - 2:1
**appearances** [1] - 3:5
**appearing** [1] - 2:23
**appellant** [1] - 24:1
**apple** [1] - 35:24
**application** [1] - 13:20
**applied** [1] - 34:24
**apply** [1] - 34:25
**appreciate** [1] - 21:18
**appropriate** [2] - 6:22, 10:7
**approval** [14] - 4:8, 4:12, 5:1, 5:20, 7:14, 7:17, 11:6, 11:12, 19:19, 19:20, 19:21, 19:25, 20:2
**Approval** [1] - 1:7
**approve** [1] - 22:5
**approved** [1] - 26:25
**approves** [1] - 25:9
**April** [1] - 7:20
**area** [1] - 8:6
**areas** [1] - 8:16
**arguably** [2] - 9:23, 10:9
**argued** [2] - 17:21, 27:19
**arguing** [1] - 8:8
**argument** [1] - 18:3
**arguments** [3] - 10:24, 11:20, 11:24
**arm's** [1] - 6:6
**ARNOLD** [1] - 2:24
**Arnold** [2] - 3:23, 7:25
**Arps** [2] - 2:19, 16:15
**aspect** [1] - 33:15
**Asset** [1] - 11:15
**assume** [3] - 26:21, 31:23, 31:24
**AT** [1] - 1:4
**attachments** [1] - 36:24
**attacked** [1] - 28:1
**attempting** [1] - 10:15
**attempts** [1] - 18:21
**attorney** [2] - 5:10, 33:5
**August** [2] - 7:15, 15:7
**authority** [1] - 29:9
**available** [2] - 6:12,
30:19
**Avenue** [1] - 2:20
**awaiting** [1] - 6:15
**aware** [2] - 29:7, 33:14
**awareness** [1] - 5:11
**awhile** [1] - 26:23

## B

**ball** [1] - 35:16
**banc** [1] - 9:21
**BARRIOS** [2] - 2:6, 3:9
**Barrios** [4] - 2:6, 3:9, 8:3, 33:24
**barrios@bkc** [1] - 2:8
**barrios@bkc-law.
com** [1] - 2:8
**based** [3] - 28:9, 33:16
**basis** [8] - 4:18, 5:22, 8:11, 10:14, 11:2, 11:21, 12:7, 24:18
**Battery** [1] - 2:4
**became** [1] - 33:10
**become** [1] - 13:18
**befell** [1] - 18:19
**BEFORE** [1] - 1:11
**beg** [1] - 31:11
**beginning** [1] - 36:7
**behalf** [6] - 3:11, 3:13, 3:15, 3:23, 4:4, 15:1
**BEISNER** [6] - 2:19, 4:3, 14:23, 21:23, 25:11, 30:11
**Beisner** [9] - 4:3, 16:15, 17:18, 21:7, 26:21, 28:9, 28:18, 28:23, 33:20
**Beisner's** [1] - 27:15
**bellwether** [2] - 5:9, 5:16
**benefit** [1] - 14:11
**benefits** [2] - 14:13, 29:17
**Bernstein** [1] - 2:3
**best** [1] - 8:12
**better** [6] - 11:7, 12:11, 14:8, 14:17, 32:6, 34:21
**between** [2] - 18:3, 22:18
**beyond** [1] - 29:24
**Birchfield** [2] - 7:23, 33:23
**bites** [1] - 35:24
**block** [1] - 18:6
**books** [3] - 13:11, 13:12, 13:13
**bottle** [1] - 6:10
**bought** [2] - 23:24,

25:6
**bound** [1] - 19:25
**brief** [2] - 30:11, 37:11
**briefly** [1] - 26:20
**bring** [1] - 19:15
**broader** [1] - 25:25
**BROWN** [2] - 2:25, 3:25
**Brown** [1] - 4:1
**BrownGreer** [1] - 4:1
**buy** [1] - 5:23

## C

**CA** [1] - 2:4
**CABRASER** [11] - 2:3, 3:7, 4:11, 8:18, 8:24, 9:15, 13:5, 17:14, 28:24, 36:21, 37:9
**Cabraser** [7] - 2:3, 3:8, 4:12, 23:3, 23:16, 26:9, 33:23
**California** [5] - 9:5, 13:6, 13:9, 13:23, 30:6
**Canal** [2] - 2:10, 2:11
**candor** [1] - 26:22
**capped** [2] - 33:12, 33:13
**car** [1] - 23:1
**careful** [1] - 29:12
**carving** [1] - 22:7
**Case** [1] - 1:6
**case** [38] - 5:13, 11:11, 11:19, 12:2, 12:13, 13:12, 14:1, 15:4, 15:5, 15:15, 15:20, 16:4, 16:5, 16:8, 16:9, 16:11, 16:13, 16:14, 17:4, 17:6, 18:18, 19:9, 19:12, 21:13, 22:22, 23:21, 25:16, 26:17, 30:15, 31:2, 31:20, 33:1, 33:2, 33:4, 33:5, 36:15
**cases** [6] - 5:16, 9:2, 16:11, 20:18, 25:17
**Casteix** [1] - 2:6
**causal** [1] - 23:2
**causation** [1] - 22:16
**caused** [2] - 15:18, 22:21
**Center** [1] - 2:15
**cert** [1] - 9:21
**certain** [2] - 34:1, 34:22
**certifiable** [2] - 9:7, 21:4
**CERTIFICATE** [1] -

37:19
**certification** [25] - 5:5, 6:16, 9:11, 9:13, 9:16, 9:18, 11:1, 11:4, 11:17, 11:20, 12:7, 14:4, 15:22, 16:19, 18:24, 19:2, 30:7, 35:2, 35:8, 35:13, 35:23, 35:25, 36:13
**certified** [18] - 8:20, 8:25, 16:12, 16:13, 16:22, 19:4, 19:7, 24:1, 25:14, 26:24, 27:3, 27:23, 28:7, 29:22, 31:22, 31:25, 32:2, 34:19
**certify** [4] - 35:16, 36:9, 36:16, 37:22
**certifying** [2] - 27:18, 30:15
**cetera** [2] - 15:8
**challenging** [1] - 12:4
**chance** [1] - 19:6
**chances** [1] - 24:20
**changed** [1] - 18:23
**changing** [1] - 22:7
**charge** [1] - 29:16
**charged** [1] - 34:4
**checked** [1] - 30:2
**choice** [1] - 21:15
**choose** [1] - 10:15
**choosing** [1] - 14:11
**Chris** [2] - 7:22, 33:23
**chronology** [1] - 7:19
**circuit** [3] - 17:25, 27:21, 27:22
**Circuit** [7] - 9:20, 9:21, 10:1, 10:18, 10:21, 11:16, 26:24
**Circuit's** [2] - 9:22, 11:3, 11:13
**circumstance** [1] - 15:20
**circumstances** [2] - 10:11, 13:22
**cite** [2] - 9:19, 10:20
**cited** [5] - 11:3, 15:21, 20:18, 25:16, 29:21
**citing** [1] - 24:17
**citizens** [2] - 18:16, 34:21
**Civil** [1] - 34:9
**claim** [18] - 6:2, 6:8, 7:5, 8:12, 9:24, 14:5, 16:1, 16:21, 18:4, 18:7, 18:9, 19:4, 19:7, 27:3, 27:4
**claimant** [2] - 16:10, 22:24

**claimant's** [1] - 23:15
**claimants** [3] - 9:8, 14:5, 14:8
**claimed** [1] - 12:19
**Claims** [2] - 3:24, 8:1
**claims** [22] - 4:25, 5:10, 5:18, 5:22, 7:6, 7:8, 7:12, 7:19, 8:2, 8:10, 8:13, 9:25, 10:7, 10:9, 10:14, 10:25, 11:21, 12:3, 12:5, 12:25, 14:15, 26:10
**Class** [3] - 1:8, 27:6
**class** [110] - 4:9, 4:13, 4:24, 5:1, 5:3, 5:5, 5:20, 6:16, 6:20, 7:7, 7:11, 7:24, 8:10, 8:17, 8:19, 8:20, 8:23, 8:25, 9:1, 9:7, 9:9, 9:11, 9:12, 9:13, 9:16, 9:17, 9:23, 10:3, 10:8, 10:10, 10:19, 11:1, 11:4, 11:7, 11:10, 11:11, 11:12, 11:17, 11:20, 12:6, 12:11, 12:12, 12:14, 13:11, 14:3, 14:10, 14:12, 14:17, 14:19, 15:1, 15:22, 16:12, 16:19, 17:13, 18:23, 19:1, 19:17, 20:4, 21:3, 21:11, 23:6, 23:20, 23:23, 23:25, 24:2, 24:7, 24:8, 24:9, 24:19, 24:23, 25:2, 25:13, 25:22, 25:23, 26:8, 26:24, 27:1, 27:2, 27:18, 27:23, 28:6, 29:1, 29:4, 29:5, 29:7, 29:16, 29:22, 30:2, 30:3, 30:7, 30:15, 30:19, 30:21, 31:2, 31:4, 31:5, 31:6, 31:21, 31:22, 31:24, 31:25, 32:2, 34:10, 34:19, 35:2, 35:13, 35:23
**classes** [1] - 9:4
**clear** [2] - 22:1, 22:8
**CLERK** [1] - 3:3
**client** [1] - 27:15
**close** [1] - 17:25
**close-circuit** [1] - 17:25
**closely** [1] - 32:19
**co** [1] - 7:22
**co-lead** [1] - 7:22
**college** [3] - 15:21,

17:9, 17:10
**College** [4] - 15:21, 16:5, 17:10, 19:12
**coming** [2] - 6:18, 21:20
**commence** [1] - 7:15
**commencement** [1] - 7:13
**comment** [2] - 15:2, 33:11
**comments** [1] - 32:24
**Committee** [3] - 3:19, 3:24, 8:1
**committee** [2] - 33:23, 33:24
**committees** [1] - 33:22
**common** [4] - 5:21, 10:3, 15:25, 17:5
**common-sense** [1] - 5:21
**commonality** [1] - 12:20
**Commonwealth** [1] - 18:17
**communication** [2] - 33:5, 33:7
**compelling** [1] - 11:25
**compensate** [1] - 33:18
**compensated** [1] - 22:19
**complete** [1] - 30:1
**Complex** [1] - 34:12
**compliment** [1] - 16:15
**comprehensive** [5] - 4:23, 6:25, 10:14, 10:22, 12:10
**comprised** [1] - 30:22
**Computer** [1] - 1:24
**Computer-aided** [1] - 1:24
**concept** [2] - 34:18, 34:23
**concern** [8] - 19:23, 20:1, 20:11, 21:1, 25:7, 31:17, 32:15, 37:6
**concerned** [2] - 6:1, 36:11
**concerning** [1] - 17:9
**concerns** [1] - 27:10
**concluded** [4] - 9:5, 9:6, 25:20, 37:16
**conclusion** [1] - 23:14
**concurring** [1] - 24:17
**conditional** [1] - 5:5
**conditionally** [2] - 36:9, 36:16

**conduct** [9] - 10:2, 12:15, 12:18, 12:24, 16:2, 17:8, 22:11, 22:18
**confident** [1] - 17:1
**confused** [2] - 26:21, 27:8
**confusing** [2] - 30:9, 35:18
**confusion** [12] - 21:2, 21:5, 25:8, 25:10, 26:16, 27:11, 29:1, 31:17, 32:16, 32:19, 32:21, 37:7
**conjunctive** [1] - 24:7
**connection** [4] - 12:1, 22:18, 29:10, 33:12
**consider** [2] - 27:14, 28:9
**consideration** [5] - 11:5, 22:13, 26:16, 28:3, 28:12
**consistent** [2] - 16:1, 17:7
**consumer** [21] - 4:13, 5:18, 7:24, 8:10, 9:3, 11:20, 12:5, 12:14, 13:11, 13:24, 15:14, 15:24, 16:20, 18:4, 19:4, 22:10, 22:20, 24:8, 33:6, 33:15, 33:22
**consumers** [5] - 5:22, 5:24, 18:13, 33:18, 34:4
**contact** [6] - 24:5, 24:10, 24:11, 24:25, 30:25, 31:4
**contends** [1] - 23:11
**contested** [1] - 6:16
**continue** [3] - 10:8, 10:9, 21:12
**continued** [3] - 10:8, 11:8, 14:18
**controversy** [1] - 25:19
**Corbin** [1] - 17:10
**correct** [7] - 3:16, 8:23, 8:24, 19:14, 22:14, 29:3, 37:22
**cost** [1] - 6:25
**cost-effective** [1] - 6:25
**costs** [3] - 6:3, 20:4, 27:6
**counsel** [9] - 3:5, 5:12, 7:22, 8:2, 30:2, 31:2, 33:1, 35:5
**country** [2] - 7:3, 30:4
**counts** [1] - 17:5

**couple** [1] - 17:22
**course** [9] - 5:15, 9:3, 11:7, 12:12, 14:2, 14:7, 16:1, 17:7, 25:19
**courses** [1] - 17:9
**court** [51] - 10:11, 11:6, 13:8, 13:14, 13:15, 15:5, 15:7, 15:12, 15:13, 15:20, 15:23, 16:5, 16:6, 16:7, 16:17, 16:18, 17:15, 17:19, 17:22, 18:20, 18:22, 18:25, 19:1, 20:14, 21:3, 22:25, 24:1, 24:2, 25:9, 25:25, 27:16, 27:17, 27:19, 27:21, 27:22, 27:24, 28:4, 28:5, 28:16, 28:18, 30:15, 30:17, 31:1, 31:21, 36:20, 37:14
**COURT** [33] - 1:2, 3:5, 3:14, 3:17, 4:2, 4:6, 4:8, 8:16, 8:22, 9:2, 12:13, 14:20, 14:24, 17:12, 19:16, 20:9, 20:11, 20:21, 20:25, 21:17, 21:20, 21:22, 25:7, 28:14, 28:22, 30:10, 31:8, 31:10, 31:23, 32:11, 34:6, 37:4, 37:13
**Court** [30] - 1:20, 4:20, 6:18, 7:4, 7:13, 7:17, 9:6, 16:24, 20:16, 21:16, 21:25, 22:2, 22:4, 25:23, 26:1, 26:3, 26:5, 26:14, 26:22, 26:24, 27:14, 29:9, 30:13, 30:14, 32:24, 34:14, 34:15, 35:6, 36:24, 37:21
**Court's** [2] - 4:14, 26:16
**court's** [1] - 19:5
**courts** [15] - 5:17, 6:17, 6:19, 9:4, 9:18, 10:25, 11:23, 13:7, 13:17, 13:20, 13:25, 14:16, 25:17, 28:15, 34:11
**coverage** [1] - 23:22
**covers** [1] - 25:5
**criteria** [1] - 5:4
**critical** [1] - 33:19
**current** [1] - 16:17

# D

**damage** [1] - 12:25
**damages** [6] - 12:16, 17:13, 18:4, 18:5, 18:9, 22:23
**dangers** [1] - 16:3
**databanks** [1] - 18:14
**date** [3] - 7:13, 12:4, 36:17
**dates** [1] - 37:2
**DAVIS** [2] - 2:23, 3:20
**Davis** [1] - 3:20, 7:25
**DAWN** [1] - 2:6
**Dawn** [4] - 3:9, 8:3, 33:24, 33:25
**days** [2] - 7:10, 11:17
**DB** [1] - 9:20
**DC** [2] - 2:20, 22:4
**deadline** [2] - 7:16
**deal** [7] - 17:15, 21:4, 21:7, 25:7, 25:10, 26:17, 28:20
**dealing** [2] - 8:22, 9:3
**dealt** [2] - 9:4, 21:13
**death** [2] - 5:10, 12:3
**December** [1] - 7:19
**deception** [1] - 18:6
**deceptive** [1] - 16:2
**decision** [9] - 9:20, 9:21, 10:5, 10:21, 11:3, 11:16, 19:24, 29:21, 29:22
**decisions** [2] - 5:16, 10:11
**declaration** [2] - 4:22, 36:24
**defendant** [5] - 4:4, 10:6, 10:15, 12:15, 12:24
**defendants** [2] - 4:2, 4:6
**defendants'** [1] - 10:2
**defending** [1] - 8:2
**defined** [1] - 31:2
**defines** [1] - 30:21
**definition** [4] - 5:2, 24:4, 24:24, 30:20
**Dell** [1] - 11:15
**demonstrable** [1] - 11:10
**demonstrate** [2] - 23:12, 24:10
**denial** [2] - 18:22, 32:7
**denied** [3] - 9:18, 9:21, 30:8
**deposition** [1] - 23:9
**designed** [2] - 7:5, 8:13

**details** [1] - 4:15
**determine** [1] - 11:7
**develop** [1] - 34:19
**developed** [3] - 4:23, 12:1, 13:18
**developing** [1] - 34:18
**difference** [4] - 9:8, 17:17, 18:3, 18:8
**differences** [1] - 9:10
**different** [13] - 10:16, 10:25, 11:25, 12:13, 13:20, 13:21, 13:22, 16:8, 17:4, 22:16, 27:2
**differently** [1] - 13:21
**difficult** [3] - 21:14, 23:13, 33:9
**difficulties** [5] - 11:9, 11:10, 25:11, 33:10, 33:16
**difficulty** [1] - 23:5
**direct** [1] - 15:21
**directly** [1] - 21:8
**disclosing** [1] - 16:3
**discovery** [1] - 5:11
**discretionary** [1] - 15:6
**discuss** [1] - 32:18
**discussion** [1] - 5:8
**discussions** [2] - 4:18, 21:9
**dismiss** [1] - 28:5
**dismissal** [1] - 8:2
**disseminated** [1] - 29:4
**distinction** [1] - 17:11
**DISTRICT** [3] - 1:2, 1:3, 1:12
**division** [1] - 16:16
**doctor** [3] - 23:8, 23:10, 27:5
**doctor's** [1] - 6:10
**doctors** [1] - 5:25
**document** [1] - 6:8
**documentation** [3] - 8:5, 23:12, 26:13
**documents** [4] - 4:17, 26:9, 33:2
**dollar** [1] - 33:13
**dollars** [1] - 22:20
**done** [3] - 24:13, 27:20, 27:25
**Doug** [3] - 4:5, 21:8, 33:20
**down** [2] - 28:7, 28:11
**Dr** [3] - 4:22, 7:2, 36:24
**draft** [1] - 34:12
**drafted** [1] - 30:16

**dramatically** [1] - 24:8
**drastically** [1] - 16:8
**drawn** [1] - 18:2
**due** [3] - 22:17, 23:1, 28:8
**Dugan** [2] - 3:12, 33:24
**DUGAN** [2] - 2:10, 3:12
**during** [4] - 9:2, 15:10, 24:3, 30:23

# E

**early** [2] - 9:6, 24:19
**EASTERN** [1] - 1:3
**economic** [2] - 15:16, 18:9
**effect** [4] - 18:6, 22:11, 22:14, 27:6
**effective** [1] - 6:25
**effort** [1] - 19:14
**efforts** [1] - 6:24
**either** [4] - 6:9, 9:24, 29:7, 35:20
**ELDON** [1] - 1:11
**element** [1] - 23:3, 24:25, 33:6
**ELIZABETH** [1] - 2:3
**Elizabeth** [6] - 3:7, 4:11, 28:22, 33:23, 33:25, 37:5
**emphasis** [1] - 22:10
**en** [1] - 9:21
**enable** [2] - 4:25, 6:13
**end** [6] - 22:13, 22:17, 22:23, 23:5, 36:7, 36:8
**endless** [1] - 10:10
**entered** [3] - 8:20, 27:17
**entering** [1] - 27:14
**entertain** [1] - 28:16
**entire** [1] - 10:3
**especially** [1] - 23:4
**ESQ** [10] - 2:3, 2:6, 2:10, 2:14, 2:19, 2:23, 2:23, 2:24, 2:24, 2:25
**essentially** [2] - 5:8, 6:19
**establish** [1] - 27:5
**established** [2] - 18:7, 18:14
**et** [2] - 15:8
**evaluation** [2] - 34:11, 34:13
**event** [1] - 17:4
**evidence** [1] - 23:7
**exactly** [1] - 22:14

**examination** [1] - 23:11
**example** [1] - 13:23
**exclude** [4] - 17:1, 19:13, 21:16, 32:10
**excluded** [1] - 16:24, 17:2, 17:3
**excluding** [2] - 8:18, 32:11
**exclusion** [1] - 14:12
**executive** [1] - 33:22
**Exhibit** [1] - 30:13
**existing** [1] - 30:3
**expect** [1] - 15:9
**expected** [1] - 34:15
**expended** [1] - 18:12
**expenditures** [1] - 26:12
**experienced** [1] - 7:24
**expert** [2] - 7:2, 7:3
**expertise** [1] - 8:6
**experts** [1] - 7:24
**expressly** [1] - 34:10
**extremely** [1] - 23:13

# F

**F.3d** [3] - 9:20, 10:22, 11:15
**facilitate** [1] - 8:13
**facing** [1] - 25:18
**fact** [9] - 10:23, 11:4, 11:25, 12:2, 13:19, 15:20, 17:5, 26:4, 33:13
**factor** [1] - 11:5
**factors** [2] - 11:3, 11:14
**facts** [4] - 11:19, 12:1, 13:18, 16:3
**factual** [2] - 5:13, 13:18
**failed** [1] - 9:12
**fair** [8] - 6:23, 8:11, 10:5, 13:3, 20:13, 26:16, 33:17
**fairness** [4] - 7:18, 25:19, 34:11, 35:7
**faith** [1] - 21:12
**FALLON** [1] - 1:11
**familiar** [2] - 4:16, 7:4
**far** [1] - 20:14
**fashioned** [1] - 37:6
**fate** [1] - 18:19
**favor** [3] - 9:16, 11:12, 14:22
**favorable** [1] - 12:2
**FCRR** [3] - 1:20, 37:24, 37:25
**FDA** [2] - 24:5, 30:24

**February** [1] - 36:5
**federal** [3] - 14:15, 18:24, 28:14
**Federal** [1] - 34:8
**few** [2] - 20:20, 21:23
**Fifth** [2] - 11:13, 11:16
**figure** [1] - 33:17
**filed** [1] - 27:18
**fill** [1] - 37:2
**final** [8] - 4:20, 7:17, 11:6, 15:4, 19:21, 19:25, 20:12, 36:12
**finality** [1] - 25:18
**finally** [2] - 11:13, 32:5
**Financial** [1] - 2:15
**findings** [5] - 5:2, 5:14, 27:18, 27:22, 27:23
**fine** [1] - 28:24
**fine-grained** [1] - 28:24
**finger** [1] - 15:11
**firm** [1] - 33:21
**first** [4] - 4:9, 10:4, 29:10, 31:24
**five** [1] - 37:14
**Flom** [1] - 2:19
**Floor** [1] - 2:4
**focus** [7] - 12:15, 12:18, 12:23, 19:22, 20:15, 35:6, 35:8
**focused** [2] - 12:17, 35:12
**follow** [2] - 26:20, 37:11
**Folsom** [1] - 5:13
**footnote** [1] - 17:20
**FOR** [1] - 1:2
**foregoing** [1] - 37:22
**forgive** [1] - 27:12
**form** [3] - 7:5, 8:12, 36:23
**formal** [2] - 7:18, 26:25
**former** [1] - 17:22
**forms** [1] - 6:12
**forthcoming** [1] - 21:11
**forward** [1] - 6:22
**fought** [1] - 33:9
**four** [1] - 6:7
**Francisco** [1] - 2:4
**frankly** [2] - 11:17, 13:19
**fraud** [9] - 15:22, 15:25, 16:5, 17:5, 18:4, 18:6, 18:8, 19:7, 19:8
**free** [1] - 26:1

**front** [3] - 17:19, 27:16, 36:4
**fruition** [1] - 34:20
**fully** [1] - 28:9
**fund** [2] - 33:12, 33:13

**G**

**general** [1] - 5:10
**generalized** [5] - 15:22, 16:4, 17:6, 18:6, 19:7
**generally** [1] - 36:7
**generating** [1] - 12:8
**GETTY** [15] - 2:14, 3:10, 14:25, 20:8, 20:10, 20:18, 20:24, 21:1, 21:18, 21:21, 26:20, 28:17, 31:9, 31:11, 32:9
**Getty** [8] - 2:14, 3:10, 14:25, 22:14, 24:15, 30:12, 30:16, 30:19
**Girsh** [1] - 11:3
**given** [4] - 6:4, 13:16, 19:20, 29:11
**govern** [1] - 29:15
**governs** [1] - 34:9
**grained** [1] - 28:24
**grand** [1] - 36:6
**granted** [1] - 35:24
**grants** [1] - 7:13
**great** [1] - 6:23
**greater** [2] - 12:9, 36:16
**Group** [1] - 2:14
**group** [1] - 25:4
**guess** [1] - 18:20

**H**

**Hanlon** [1] - 29:21
**hard** [1] - 33:9
**hard-fought** [1] - 33:9
**HB** [1] - 1:21
**hear** [1] - 14:24
**heard** [3] - 11:22, 20:21, 30:6
**hearing** [5] - 7:18, 11:23, 20:12, 34:14
**heated** [1] - 6:7
**heavily** [1] - 11:12
**Heimann** [1] - 2:3
**helped** [1] - 17:24
**helpful** [1] - 36:19
**hence** [1] - 6:18
**hereby** [1] - 37:21
**HERMAN** [3] - 2:23, 3:18, 32:23
**Herman** [3] - 3:18,

7:22, 32:23
**Higginbotham** [1] - 11:15
**hit** [1] - 27:13
**Honor** [37] - 3:7, 3:10, 3:12, 3:16, 3:20, 3:21, 3:25, 4:3, 4:11, 4:14, 7:13, 7:21, 8:14, 9:15, 9:19, 10:4, 10:20, 13:5, 14:23, 14:25, 18:15, 20:24, 21:18, 21:23, 22:9, 23:18, 25:11, 26:7, 26:20, 28:13, 29:14, 30:11, 31:9, 32:23, 32:25, 36:21, 37:9
**Honor's** [2] - 5:14, 11:22
**HONORABLE** [1] - 1:11
**hope** [3] - 32:14, 34:25, 35:2
**hopeful** [1] - 15:9
**hopefully** [2] - 27:7, 36:8
**hoping** [1] - 34:19
**hours** [1] - 12:10
**housekeeping** [1] - 36:21

**I**

**identical** [3] - 15:14, 16:21, 18:18
**II** [1] - 2:10
**Illinois** [1] - 33:4
**ills** [1] - 12:19
**immediate** [1] - 18:23
**impact** [1] - 9:12
**implemented** [1] - 13:13
**important** [5] - 17:11, 19:9, 23:17, 28:25, 29:2
**importantly** [1] - 6:4
**impossible** [1] - 21:14
**improper** [1] - 27:25
**IN** [2] - 1:2, 1:6
**in-the-pocket** [1] - 14:16
**inappropriate** [2] - 7:6, 7:7
**include** [3] - 15:4, 29:12, 29:13
**included** [3] - 9:1, 9:23, 18:17
**includes** [2] - 5:1, 23:24
**including** [7] - 7:24,

13:7, 13:14, 14:19, 22:3, 25:23, 32:14
**inclusion** [1] - 9:17
**incurred** [1] - 27:5
**indeed** [1] - 14:4
**Indiana** [1] - 33:1
**indicate** [1] - 33:8
**indicated** [1] - 33:2
**indicating** [1] - 25:17
**indication** [1] - 36:11
**indispensable** [1] - 8:4
**individual** [3] - 17:12, 29:20, 29:21
**indulgence** [2] - 21:19, 31:11
**inevitable** [1] - 6:17
**inextricably** [1] - 11:18
**information** [2] - 29:14, 29:16
**informed** [2] - 5:9, 5:14
**inherently** [1] - 15:3
**injury** [4] - 5:10, 12:3, 22:19, 22:21
**input** [1] - 37:5
**inquiry** [1] - 8:16
**instrumental** [2] - 8:4, 8:8
**intensive** [1] - 6:6
**interest** [4] - 18:16, 25:18, 25:22, 32:9
**interests** [2] - 6:20, 12:12
**interfere** [2] - 26:4, 29:22
**interferes** [1] - 35:1
**interfering** [1] - 29:25
**interposing** [1] - 7:7
**intertwined** [1] - 11:18
**intimate** [1] - 5:11
**Investments** [1] - 9:20
**involve** [1] - 7:10
**involving** [4] - 15:21, 16:5, 17:8, 19:12
**issue** [7] - 9:6, 15:23, 15:25, 16:6, 19:11, 23:7, 28:22
**issued** [1] - 30:15
**issues** [3] - 5:12, 5:13, 23:20
**itself** [2] - 8:5, 29:15

**J**

**James** [2] - 3:12, 15:1
**JAMES** [1] - 2:10
**Jersey** [5] - 9:5, 13:6, 13:8, 16:9, 30:6

**jettison** [1] - 34:23
**Jim** [1] - 33:24
**JOHN** [1] - 2:19
**John** [4] - 4:3, 27:1, 28:23, 33:20
**john.beisner@ skadden.com** [1] - 2:21
**JOHNSON** [2] - 2:24, 3:21
**Johnson** [2] - 3:22
**join** [1] - 35:10
**joining** [1] - 31:25
**judge** [3] - 5:15, 5:16, 28:1
**Judge** [1] - 11:14
**JUDGE** [1] - 1:12
**judgment** [2] - 26:3, 26:6
**JULY** [1] - 3:1
**July** [2] - 1:6, 15:7
**Junior** [1] - 4:1
**junior** [1] - 17:10
**jurisdiction** [1] - 23:16
**justices** [1] - 17:23

**K**

**keeping** [1] - 8:5
**KENNETH** [1] - 2:24
**Kenneth** [1] - 3:22
**Kentuckians** [2] - 25:4, 25:5
**Kentucky** [60] - 2:14, 8:22, 8:25, 12:21, 13:2, 13:4, 14:21, 14:24, 15:1, 15:4, 15:6, 16:1, 17:6, 17:11, 17:23, 18:13, 18:17, 19:8, 19:10, 21:3, 21:11, 21:13, 22:15, 23:5, 23:7, 23:21, 23:22, 23:25, 24:2, 24:16, 24:19, 24:24, 25:14, 25:22, 25:24, 25:25, 26:4, 28:5, 28:11, 29:5, 29:6, 29:8, 29:19, 30:22, 31:7, 31:13, 31:22, 32:14, 34:17, 34:20, 34:21, 34:25, 35:1, 35:7, 35:10, 35:15, 35:19, 35:24, 36:11
**Kentucky's** [1] - 35:10
**key** [2] - 22:12, 23:3
**kids** [1] - 36:6
**kills** [1] - 32:12
**Kingsdorf** [1] - 2:6
**knowledge** [1] - 30:2

**KY** [1] - 2:16

**L**

**LA** [2] - 2:8, 2:12
**language** [1] - 15:12
**last** [2] - 11:16, 16:16
**law** [7] - 11:20, 13:11,
13:12, 13:16, 15:25,
17:5, 25:17
**Law** [1] - 2:14
**law.com** [1] - 2:8
**laws** [4] - 9:10, 9:25,
13:24, 14:9
**lawsuit** [1] - 25:22
**lawyers** [1] - 17:23
**lead** [1] - 7:22
**leads** [1] - 12:10
**least** [10] - 7:1, 7:10,
16:25, 19:6, 28:1,
31:6, 32:11, 34:1,
35:15
**legal** [3] - 5:12, 11:24,
13:20
**length** [1] - 6:6
**LEONARD** [1] - 2:23
**Leonard** [2] - 3:20,
7:25
**less** [1] - 14:9
**letter** [1] - 6:10
**LEVINE** [2] - 2:24,
3:23
**Levine** [2] - 3:23, 7:25
**Lexington** [2] - 2:15,
2:16
**LIABILITY** [1] - 1:6
**Liability** [1] - 3:4
**liaison** [1] - 7:21
**Lieff** [1] - 2:3
**light** [1] - 12:12
**limited** [1] - 24:8
**links** [1] - 22:24
**litigate** [2] - 23:5,
23:14
**litigating** [1] - 16:14
**LITIGATION** [1] - 1:6
**litigation** [11] - 9:3,
10:21, 11:2, 11:8,
14:14, 14:15, 14:18,
15:1, 29:11, 36:5,
36:6
**Litigation** [2] - 3:4,
34:12
**LLP** [3] - 2:3, 2:6, 2:19
**look** [11] - 5:17, 9:22,
14:2, 22:13, 27:7,
32:5, 32:16, 34:15,
35:15, 36:13
**looked** [4] - 9:6,
32:20, 33:14, 35:12

**looking** [5] - 12:6,
12:7, 18:11, 26:7,
32:19
**looks** [1] - 13:16
**loss** [1] - 15:16
**lost** [1] - 6:14
**LOUISIANA** [2] - 1:3,
3:1
**Louisiana** [4] - 1:22,
13:3, 16:9, 28:7

**M**

**Main** [1] - 2:15
**maintaining** [1] - 11:4
**major** [1] - 23:20
**Management** [1] -
11:15
**mandamus** [3] -
18:21, 18:22, 27:18
**Manual** [1] - 34:11
**manual** [1] - 34:13
**market** [3] - 5:25, 6:5,
24:12
**MARVIN** [1] - 4:5
**Marvin** [5] - 4:5, 21:8,
28:8, 28:19, 33:20
**master** [1] - 17:16
**matter** [3] - 26:19,
33:25, 37:15
**matters** [1] - 10:1
**MDL** [4] - 3:3, 5:15,
25:15, 25:17
**Meagher** [1] - 2:19
**mean** [4] - 19:11, 23:1,
27:25, 31:14
**meaningful** [1] - 24:14
**means** [4] - 6:7, 7:16,
10:5, 31:16
**medical** [1] - 6:10
**medications** [1] - 6:1
**meet** [2] - 32:18, 37:4
**meets** [1] - 5:3
**member** [1] - 24:9
**members** [16] - 6:20,
7:8, 7:11, 7:23, 7:25,
8:10, 9:24, 10:16,
10:24, 11:8, 14:10,
23:6, 29:1, 29:4,
29:6, 29:17
**mentioned** [2] - 13:17,
23:19
**Merck** [12] - 2:19, 4:4,
10:12, 14:22, 16:2,
18:25, 20:23, 21:11,
24:5, 27:15, 30:24,
33:21
**Merck's** [1] - 15:16
**meritorious** [1] - 8:13
**merits** [4] - 5:19,

11:17, 11:18, 12:8
**met** [1] - 21:8
**might** [4] - 10:24,
10:25, 11:1
**million** [2] - 4:13, 4:22
**mind** [1] - 32:19
**minutes** [1] - 37:14
**misleading** [1] - 12:18
**misrepresentations**
[1] - 17:9
**Mississippi** [1] - 13:3
**Missouri** [8] - 8:19,
12:17, 12:22, 12:23,
13:7, 15:13, 18:18,
30:1
**Missouri's** [1] - 16:21
**mock** [1] - 17:22
**moment** [2] - 21:10,
27:13
**monetary** [1] - 5:24
**money** [10] - 5:23,
5:24, 6:14, 6:15, 7:8,
7:9, 10:13, 18:15,
23:8
**month** [3] - 15:7,
15:10, 20:12
**months** [2] - 5:8, 7:12
**morning** [9] - 3:7,
3:10, 3:12, 3:21,
3:25, 4:3, 4:11, 4:15,
23:19
**most** [1] - 11:14
**Motion** [1] - 1:7
**motion** [4] - 4:8, 4:12,
28:16
**movant** [1] - 4:9
**move** [4] - 6:22, 19:16,
28:11, 36:4
**MR** [27] - 3:10, 3:12,
3:18, 3:20, 3:21,
3:23, 3:25, 4:3, 4:5,
14:23, 14:25, 20:8,
20:10, 20:18, 20:24,
21:1, 21:18, 21:21,
21:23, 25:11, 26:20,
28:17, 30:11, 31:9,
31:11, 32:9, 32:23
**MS** [11] - 3:7, 3:9,
4:11, 8:18, 8:24,
9:15, 13:5, 17:14,
28:24, 36:21, 37:9
**muddle** [2] - 36:7,
36:8
**multi** [1] - 10:23
**multi-state** [1] - 10:23
**multimedia** [1] - 4:23
**must** [1] - 11:25
**muster** [1] - 23:6

**N**

**named** [1] - 23:7
**narrower** [5] - 23:21,
25:4, 27:2, 31:3,
31:5
**nation** [3] - 8:17, 8:18,
13:24
**national** [2] - 9:9, 36:1
**nationally** [1] - 34:4
**nationwide** [11] - 9:23,
10:10, 10:19, 10:23,
11:10, 11:21, 12:7,
14:12, 34:22, 35:23
**nature** [2] - 20:6, 33:6
**nearly** [4] - 15:14,
16:21, 18:18, 30:1
**necessary** [1] - 20:5
**need** [4] - 32:24, 35:8,
36:10, 37:3
**negotiating** [2] - 5:12,
33:12
**negotiation** [3] - 5:9,
6:7, 33:9
**negotiations** [1] - 4:18
**net** [1] - 12:9
**never** [1] - 26:19
**new** [1] - 22:25
**NEW** [2] - 1:4, 3:1
**New** [9] - 1:22, 2:8,
2:12, 2:20, 9:4, 13:6,
13:8, 16:9, 30:5
**news** [3] - 30:5, 30:8,
30:9
**next** [1] - 15:6
**nine** [3] - 7:12, 14:14,
16:14
**nobody** [1] - 17:25
**nonpartisan** [1] -
37:10
**note** [3] - 5:7, 10:8,
23:18
**noted** [1] - 10:1
**nothing** [3] - 14:23,
32:1, 32:3
**notice** [43] - 4:23,
4:24, 5:20, 6:24, 7:3,
7:10, 7:13, 7:15, 8:5,
8:12, 8:21, 19:20,
20:2, 20:4, 20:12,
21:1, 21:2, 25:8,
25:9, 26:4, 26:25,
27:7, 29:4, 29:7,
29:9, 29:11, 29:13,
29:15, 30:1, 30:3,
31:13, 32:3, 32:12,
32:17, 32:19, 35:13,
35:14, 35:20, 35:21,
37:3, 37:6
**notices** [2] - 36:23,

37:7
**November** [2] - 7:17,
7:18
**number** [4] - 17:21,
24:17, 24:18, 35:11
**NW** [1] - 2:20

**O**

**object** [6] - 7:11,
35:22, 35:25, 36:1
**objected** [1] - 36:1
**objection** [9] - 7:16,
10:17, 25:13, 33:3,
34:16, 34:18, 35:3
**objections** [4] - 20:6,
20:7, 35:11, 36:14
**objective** [1] - 37:10
**objectors** [1] - 19:21
**obligation** [1] - 26:22
**observation** [2] -
30:12, 34:17
**observations** [1] -
35:6
**obstacles** [1] - 7:7
**occasion** [1] - 5:17
**occurred** [1] - 24:21
**OF** [2] - 1:3, 1:10
**offer** [1] - 21:10
**offered** [1] - 10:13
**offers** [1] - 5:23
**offhand** [1] - 32:21
**Official** [2] - 1:20,
37:21
**often** [1] - 13:25
**older** [1] - 36:6
**ON** [1] - 3:16
**once** [2] - 18:22, 18:25
**one** [19] - 7:3, 8:7,
12:13, 12:17, 16:11,
18:2, 20:5, 21:25,
23:18, 23:19, 25:11,
25:14, 30:4, 30:6,
31:9, 35:20, 35:21,
36:2, 37:8
**One** [2] - 2:7, 2:10
**onerous** [1] - 7:7
**ongoing** [1] - 5:8
**operative** [1] - 29:23
**opinion** [6] - 7:2, 15:7,
15:9, 15:13, 16:18,
19:3
**opportunities** [2] -
9:11, 12:22
**opportunity** [10] - 6:2,
12:20, 20:15, 20:23,
29:20, 31:18, 32:17,
34:21, 35:15, 36:15
**opt** [5] - 7:11, 7:16,
29:20, 31:24, 37:11

**opt-in** [1] - 37:11
**opt-out** [3] - 7:11,
7:16, 31:24
**opting** [1] - 29:19
**oral** [1] - 18:3
**order** [4] - 4:25, 15:5,
27:15, 28:2, 28:3,
30:14, 30:17, 30:21,
37:1, 37:2
**ORLEANS** [2] - 1:4,
3:1
**Orleans** [3] - 1:22, 2:8,
2:12
**ORRAN** [1] - 2:25
**Orran** [1] - 3:25
**otherwise** [1] - 10:7
**ought** [2] - 17:2, 17:3
**out-of-pocket** [3] -
5:22, 6:2, 26:11
**outcome** [1] - 14:8
**outcomes** [1] - 13:11
**overall** [1] - 34:21
**overruled** [1] - 10:18
**owed** [1] - 23:8
**own** [3] - 8:20, 9:24,
15:14

**P**

**page** [1] - 30:14
**paid** [3] - 6:11, 23:11,
27:3
**pains** [1] - 6:24
**panel** [1] - 13:15
**panels** [1] - 17:22
**panzer** [1] - 16:16
**paper** [1] - 25:13
**part** [2] - 5:11, 24:13
**participation** [2] -
33:14, 33:17
**particular** [6] - 12:13,
13:12, 13:14, 13:15,
14:13
**parties** [3] - 32:18,
34:7, 36:10
**partly** [1] - 13:17
**passage** [2] - 6:4, 23:4
**passed** [1] - 12:9
**past** [1] - 28:10
**payment** [1] - 6:9
**pen** [1] - 31:1
**pending** [5] - 25:23,
31:14, 31:20, 33:1,
33:4
**people** [6] - 3:14,
6:13, 13:4, 24:22,
28:11, 29:13
**perhaps** [2] - 11:23,
36:2
**period** [7] - 5:21, 7:12,

14:17, 18:7, 24:3,
24:20, 30:23
**Perkins** [1] - 3:22
**PERSON** [1] - 3:16
**personal** [2] - 5:9,
12:3
**persons** [1] - 24:16
**perspective** [1] -
23:15
**phone** [5] - 3:15, 3:17,
4:6, 8:3, 32:22
**physician** [5] - 24:11,
24:21, 24:23, 24:25,
31:4
**physicians** [3] - 24:5,
24:11, 30:25
**pick** [2] - 10:15, 37:7
**piece** [1] - 37:11
**Pike** [1] - 26:24
**Place** [1] - 2:10
**plaintiff** [3] - 12:16,
12:19, 23:7
**Plaintiff's** [1] - 1:7
**plaintiff's** [3] - 15:16,
15:17, 31:1
**plaintiffs** [9] - 3:9,
3:13, 3:15, 3:24, 9:8,
9:12, 12:3, 12:4,
13:1
**plaintiffs'** [1] - 7:21
**Plaintiffs'** [2] - 3:18,
3:23
**plan** [1] - 4:23
**playing** [1] - 14:3
**PLC** [1] - 4:1
**Plubell** [2] - 15:15,
16:12
**pocket** [4] - 5:22, 6:2,
14:16, 26:11
**point** [20] - 8:9, 9:15,
14:14, 16:10, 19:20,
21:14, 22:9, 22:11,
22:12, 26:6, 28:25,
30:11, 30:18, 32:4,
32:10, 32:12, 33:16,
36:3, 36:12
**pointed** [2] - 20:19,
22:22, 23:4, 23:16,
25:24
**points** [2] - 18:2,
21:23
**portion** [1] - 6:14
**position** [8] - 4:10,
12:21, 14:22, 15:3,
19:24, 20:22, 25:12,
34:6
**positions** [1] - 20:17
**possession** [1] - 29:6
**possibility** [1] - 30:7
**possible** [1] - 31:12

**postmark** [1] - 7:16
**potential** [1] - 29:1
**power** [2] - 28:15,
28:16
**Poydras** [1] - 1:21, 2:7
**practical** [2] - 5:21,
8:12
**practice** [2] - 15:18,
19:10
**practices** [2] - 15:17,
16:2
**preclude** [1] - 31:25
**precluding** [2] - 27:15,
28:3
**predict** [1] - 13:10
**predictably** [1] - 14:8
**predictions** [1] - 29:25
**predominance** [1] -
10:2
**preeminent** [1] - 7:3
**preliminarily** [2] -
22:4, 35:16
**preliminary** [16] - 4:8,
4:12, 5:1, 5:19, 7:14,
11:6, 19:19, 19:25,
20:2, 20:11, 32:7,
32:8, 33:19, 34:10,
34:14
**Preliminary** [1] - 1:7
**preponderance** [1] -
12:20
**prerequisite** [1] - 25:1
**prescription** [1] - 6:10
**present** [2] - 26:10,
26:13
**presented** [2] - 9:7,
33:13
**pretty** [1] - 21:6
**prevail** [1] - 12:22
**prevailing** [4] - 6:17,
11:4, 11:16, 12:8
**primarily** [1] - 33:11
**principles** [1] - 13:21
**problem** [10] - 9:14,
13:10, 20:9, 24:20,
28:11, 28:20, 31:15,
32:11, 32:16, 34:24
**procedure** [1] - 29:18
**Procedure** [1] - 34:9
**proceed** [3] - 21:12,
25:20, 26:1
**proceeded** [1] - 21:12
**proceeding** [2] -
25:15, 27:18
**PROCEEDINGS** [1] -
1:10
**proceedings** [4] -
5:15, 18:21, 29:8,
37:16
**Proceedings** [1] -

1:24
**process** [7] - 6:16,
8:22, 22:17, 23:1,
30:1, 34:13, 34:18
**product** [4] - 16:3,
17:8, 25:6
**product's** [1] - 24:12
**PRODUCTS** [1] - 1:6
**Products** [1] - 3:3
**professional** [1] -
33:21
**program** [4] - 6:25,
7:3, 7:15, 8:5
**progress** [1] - 29:8
**prominent** [1] - 17:23
**proof** [10] - 6:12,
15:19, 15:22, 16:4,
17:7, 17:13, 18:5,
18:6, 19:8, 27:5
**proposal** [2] - 26:2,
26:5
**proposed** [18] - 4:24,
4:25, 5:2, 8:17, 22:3,
23:20, 23:22, 23:23,
23:25, 24:2, 25:3,
25:5, 25:25, 26:8,
29:10, 31:6, 37:1,
37:2
**proposing** [1] - 25:23
**proposition** [2] - 22:2,
22:8
**proprietary** [1] - 25:22
**prosecuting** [2] - 8:1,
14:3
**prospect** [1] - 14:7
**prospects** [4] - 12:6,
12:8, 14:10, 14:16
**protect** [1] - 34:3
**protection** [3] - 15:14,
15:24, 22:10
**prove** [1] - 18:5
**proved** [1] - 12:2
**proven** [2] - 12:4, 17:2
**provide** [2] - 22:7,
34:10
**provides** [1] - 6:7
**providing** [1] - 6:9
**provisionally** [1] -
16:25
**provisions** [1] - 34:12
**PSC** [6] - 2:3, 3:8,
3:18, 4:12, 7:23,
34:1
**punitive** [2] - 18:4,
29:5
**punitives** [1] - 18:8
**purchase** [2] - 5:10,
15:17
**Purchase** [2] - 3:24,
7:25

**purchased** [4] - 8:19,
24:3, 30:22, 31:19
**purchaser** [1] - 9:3
**purchasing** [1] - 12:14
**purpose** [1] - 6:13
**purposes** [7] - 5:3,
5:5, 5:6, 10:1, 10:19,
11:18, 14:4
**pursuant** [1] - 8:12
**put** [7] - 15:11, 17:18,
20:4, 20:11, 20:14,
31:12, 36:14

**Q**

**quality** [1] - 34:2
**quest** [2] - 10:9, 10:10
**questions** [1] - 8:14
**quirk** [1] - 18:19
**quite** [1] - 20:3
**quote** [2] - 24:4, 30:21

**R**

**raised** [2] - 22:9,
28:25
**rates** [2] - 33:14, 33:17
**rather** [1] - 30:20
**Ratliff** [7] - 3:11, 15:1,
18:12, 23:21, 30:13,
30:15, 31:20
**RE** [1] - 1:6
**re** [2] - 3:3, 10:20
**reach** [1] - 6:25
**reached** [1] - 33:17
**reaching** [1] - 33:19
**read** [4] - 11:22,
16:20, 19:3, 24:24
**reading** [1] - 11:24
**real** [1] - 20:9
**realize** [1] - 17:20
**really** [12] - 17:2,
17:14, 17:17, 18:3,
19:9, 19:21, 19:22,
27:10, 32:2, 34:17,
35:2
**reason** [4] - 16:23,
21:15, 24:22, 35:12
**reasonable** [4] - 7:6,
8:11, 14:17, 33:18
**receive** [2] - 6:9, 29:9
**received** [1] - 30:3
**recent** [1] - 9:19
**recently** [1] - 11:14
**recess** [2] - 36:20,
37:14
**recited** [1] - 11:14
**recognized** [2] - 17:6,
22:1
**recognizes** [1] - 10:12

**recognizing** [2] - 14:13, 22:12
**recollection** [1] - 30:16
**recommendation** [2] - 24:4, 30:24
**record** [6] - 3:6, 5:13, 6:10, 13:18, 32:25, 33:8
**Recorded** [1] - 1:24
**records** [1] - 6:8
**recover** [1] - 6:14
**recovering** [1] - 7:9
**recovery** [3] - 12:9, 14:17, 35:7
**Reed** [1] - 11:13
**refer** [1] - 30:13
**referencing** [1] - 30:20
**reflecting** [1] - 4:21
**reflects** [1] - 5:8
**refund** [1] - 18:10
**regarding** [6] - 4:22, 24:6, 25:1, 29:11, 30:12, 30:25
**regardless** [2] - 14:9, 23:15
**regular** [1] - 4:18
**rejected** [1] - 9:25
**relationship** [1] - 23:2
**release** [1] - 5:2
**reliable** [1] - 29:14
**reliance** [5] - 15:19, 15:25, 20:19, 22:15, 22:17
**relief** [5] - 5:24, 6:19, 22:21, 30:18, 31:16
**religiously** [1] - 33:25
**remaining** [1] - 14:6
**remedies** [1] - 10:16
**remember** [4] - 23:10, 27:1, 29:2
**remembers** [1] - 23:11
**remind** [1] - 34:8
**reported** [1] - 4:17
**Reporter** [2] - 1:20, 37:21
**represent** [1] - 34:5
**representation** [1] - 34:2
**represented** [1] - 27:9
**representing** [1] - 33:20
**request** [2] - 6:19, 9:13
**require** [3] - 15:17, 15:25, 20:19
**required** [1] - 15:15
**requirement** [2] - 22:16, 31:3

**requires** [1] - 15:19
**requisite** [1] - 5:4
**residents** [9] - 9:1, 9:17, 21:2, 23:22, 24:2, 25:24, 30:22, 31:7, 35:19
**resolution** [2] - 10:7, 21:13
**resolved** [2] - 8:11, 26:19
**resolves** [1] - 5:20
**respect** [6] - 10:2, 10:3, 16:20, 28:8, 29:17, 31:6
**response** [2] - 4:7, 20:19
**responsibilities** [1] - 29:18
**responsible** [2] - 12:12, 14:2
**resubmit** [1] - 37:2
**result** [1] - 22:21
**resulted** [1] - 15:16
**resulting** [3] - 12:16, 12:24, 35:2
**reversed** [3] - 16:18, 19:1, 24:1
**review** [1] - 15:6
**reviewed** [1] - 33:2
rgetty@
gettylawgroup.com [1] - 2:16
**Richard** [3] - 3:10, 14:25, 37:5
**RICHARD** [1] - 2:14
**rid** [1] - 28:6
**rights** [2] - 29:18, 34:4
**risk** [2] - 11:4, 11:16
**road** [1] - 28:12
**rolling** [1] - 35:17
**Rommel's** [1] - 16:16
**RPR** [1] - 1:20
**Rule** [5] - 5:4, 5:6, 29:13, 34:9
**Rules** [1] - 34:8
**rules** [4] - 18:23, 18:24, 28:4, 37:12
**rulings** [1] - 5:14
**run** [1] - 7:12
**RUSS** [1] - 2:23
**Russ** [3] - 3:18, 7:22, 32:23

**S**

**San** [1] - 2:4
**satisfactory** [1] - 23:14
**satisfies** [1] - 37:6
**scenario** [3] - 11:25,

12:1, 12:2
**scope** [2] - 5:2, 8:16
**screening** [1] - 7:6
**scrutiny** [1] - 36:14
**scuttling** [1] - 32:8
**second** [1] - 9:22
**see** [15] - 9:13, 9:15, 10:13, 10:14, 14:16, 20:16, 21:21, 21:22, 24:21, 31:17, 32:21, 35:9, 35:14, 35:17, 37:5
**Seeger** [2] - 7:22, 33:23
**seeing** [1] - 5:24
**seek** [3] - 24:6, 24:25, 30:25
**seeking** [1] - 6:16
**send** [1] - 25:8
**sends** [1] - 25:9
**sense** [1] - 5:21
**sensitive** [2] - 32:15, 32:18
**sent** [1] - 8:21
**separate** [2] - 25:22, 31:22
**September** [2] - 15:10, 10:23
**seriously** [2] - 35:5, 36:12
**served** [1] - 14:18
**service** [1] - 17:8
**session** [1] - 33:10
**set** [1] - 7:17
**settle** [1] - 10:14
**settlement** [50] - 4:9, 4:13, 4:15, 4:16, 4:18, 4:21, 4:24, 5:1, 5:3, 5:5, 5:8, 5:19, 5:23, 6:6, 6:23, 7:14, 8:4, 8:9, 8:17, 8:21, 9:1, 9:13, 9:16, 9:23, 10:1, 10:19, 10:23, 11:7, 11:12, 11:23, 12:11, 14:18, 14:19, 21:11, 22:4, 23:17, 23:23, 25:5, 26:8, 26:11, 29:10, 29:17, 31:6, 32:13, 34:3, 34:22, 37:1
**Settlement** [1] - 1:8
**settlements** [1] - 33:15
**Shannon** [3] - 4:22, 7:2, 36:24
**shape** [1] - 32:6
**Shell** [1] - 2:7
**short** [1] - 36:23
**side** [3] - 34:2, 34:3, 35:20

**side's** [1] - 29:7
**sides** [2] - 5:12, 29:3
**signed** [2] - 4:21, 30:17
**significant** [2] - 32:4, 35:6
**significantly** [1] - 31:5
**similar** [2] - 20:17, 35:10
**simple** [1] - 7:5
**simpler** [1] - 34:14
**simply** [6] - 6:11, 12:17, 14:13, 18:9, 25:16, 32:10
**sitting** [1] - 27:11
**situation** [2] - 20:3, 25:18, 25:21
**situations** [1] - 19:19
**Skadden** [2] - 2:19, 16:15
**Slate** [1] - 2:19
**Sodium** [1] - 10:21
**sold** [1] - 22:25
**sole** [1] - 31:16
**someone** [2] - 16:2, 24:19
**source** [1] - 29:14
**special** [1] - 17:16
**specificity** [1] - 36:17
**specifics** [2] - 12:18, 34:16
**specified** [1] - 24:3
**spend** [1] - 4:14
**spent** [5] - 5:23, 5:24, 6:13, 7:8, 12:10
**Square** [1] - 2:7
**stage** [7] - 10:4, 19:23, 32:13, 33:19, 33:21, 35:9, 36:14
**stages** [1] - 16:17
**standpoint** [8] - 9:9, 19:9, 19:10, 19:11, 22:18, 23:2, 29:5, 32:20
**stands** [2] - 36:20, 37:14
**start** [1] - 35:16
**starts** [1] - 7:11
**state** [21] - 5:17, 8:23, 9:10, 9:18, 10:23, 11:11, 11:21, 12:7, 13:12, 14:6, 14:13, 14:16, 18:13, 21:2, 22:10, 23:14, 25:13, 28:16, 28:18, 34:19, 35:8
**state's** [1] - 9:24
**state-wide** [4] - 11:11, 11:21, 12:7, 35:8
**statement** [1] - 6:11

**States** [1] - 16:12
**states** [17] - 9:17, 10:9, 10:17, 10:24, 12:15, 12:20, 12:23, 14:6, 14:9, 14:19, 19:24, 20:16, 22:14, 30:7, 32:13, 34:24, 35:10
**STATES** [2] - 1:2, 1:12
**statistic** [1] - 24:16
**status** [1] - 29:8
**statute** [7] - 13:12, 15:12, 15:14, 15:15, 15:19, 15:24, 19:10
**statutes** [3] - 14:6, 22:10, 22:19
**statutory** [2] - 13:21, 16:21
**Steering** [1] - 3:19
**Stenography** [1] - 1:24
**step** [1] - 34:13
**stockholder** [1] - 33:6
**storm** [1] - 16:18
**Street** [5] - 1:21, 2:4, 2:7, 2:11, 2:15
**strict** [1] - 21:6
**strong** [4] - 11:20, 13:13, 13:14, 14:9
**stronger** [1] - 10:25
**strongest** [1] - 13:24
**subclass** [1] - 27:6
**subject** [1] - 22:6
**submission** [1] - 30:14
**submit** [3] - 5:19, 27:3, 27:4
**submitted** [3] - 4:20, 35:15, 36:23
**subsequently** [1] - 25:9
**substantial** [6] - 5:11, 5:21, 5:22, 6:14, 10:13, 35:11
**substantially** [2] - 23:21, 25:4
**sufficient** [2] - 17:7, 34:3
**suggest** [2] - 34:11, 34:13
**suggested** [1] - 35:3
**suit** [1] - 33:7
**Suite** [2] - 2:7, 2:11
**Sullivan** [2] - 9:20, 10:17
**summarized** [1] - 15:3
**supplemented** [1] - 27:22
**supporting** [1] - 4:10
**suppose** [2] - 19:14,

28:21
**supreme** [16] - 13:8, 13:15, 15:5, 15:20, 15:23, 16:5, 16:7, 17:19, 17:22, 19:5, 21:3, 27:16, 28:3, 28:4, 28:5, 31:21
**surviving** [1] - 6:17
**Susan** [2] - 37:21, 37:25
**SUSAN** [2] - 1:20, 37:24
**susan_zielie@laed. uscourts.gov** [1] - 1:22
**sustainable** [1] - 11:2
**sustained** [3] - 12:16, 12:25
**sustaining** [1] - 11:10
**sworn** [1] - 6:11

## T

**tail** [1] - 32:7
**talks** [1] - 24:15
**taped** [2] - 17:25, 18:2
**TELEPHONE** [1] - 3:16
**Telephonically** [1] - 2:23
**television** [1] - 17:21
**terms** [9] - 4:16, 8:4, 11:6, 18:5, 22:21, 23:22, 24:15, 26:11, 29:17
**THE** [36] - 1:2, 1:3, 1:11, 3:3, 3:5, 3:14, 3:17, 4:2, 4:6, 4:8, 8:16, 8:22, 9:2, 12:13, 14:20, 14:24, 17:12, 19:16, 20:9, 20:11, 20:21, 20:25, 21:17, 21:20, 21:22, 25:7, 28:14, 28:22, 30:10, 31:8, 31:10, 31:23, 32:11, 34:6, 37:4, 37:13
**themselves** [3] - 4:17, 9:8, 29:6
**therefore** [1] - 12:22
**thinking** [1] - 27:11
**third** [2] - 18:20, 18:22
**Third** [7] - 9:19, 9:21, 9:22, 9:25, 10:17, 10:21, 11:3
**thousand** [1] - 24:15
**three** [2] - 18:12, 26:23
**throughout** [1] - 5:15
**thrown** [1] - 16:16

**today** [7] - 7:14, 8:3, 8:8, 16:25, 17:1, 27:9, 29:23
**together** [2] - 7:23, 8:6
**took** [1] - 24:3
**transcript** [1] - 37:22
**TRANSCRIPT** [1] - 1:10
**tremendously** [2] - 17:24, 27:17
**trial** [16] - 5:11, 5:16, 11:5, 11:11, 11:18, 14:4, 16:17, 17:15, 24:1, 26:12, 27:17, 27:19, 28:1, 30:15, 31:1
**trials** [1] - 5:9
**true** [2] - 16:3, 27:2
**trump** [1] - 25:14
**try** [2] - 21:12, 26:25
**trying** [1] - 13:10
**TV** [2] - 17:25, 18:1
**twice** [1] - 28:1
**two** [12] - 8:16, 16:11, 17:23, 17:24, 18:21, 32:24, 34:13, 35:24, 36:4, 37:7
**two-step** [1] - 34:13

## U

**ultimately** [1] - 21:16
**under** [13] - 5:4, 5:6, 7:19, 9:24, 10:10, 11:13, 11:20, 13:21, 14:6, 24:24, 26:10, 29:9, 29:20
**unfair** [1] - 15:3
**Union** [1] - 11:15
**unique** [1] - 8:6
**UNITED** [2] - 1:2, 1:12
**United** [1] - 16:12
**unlawful** [2] - 15:16, 15:18
**unless** [1] - 35:3
**up** [11] - 6:2, 6:9, 7:20, 13:25, 16:17, 18:25, 21:14, 22:24, 26:20, 28:21, 29:14
**upheld** [1] - 13:14
**urged** [1] - 9:11
**usable** [1] - 19:8
**users** [1] - 24:18

## V

**vacations** [1] - 15:8
**various** [1] - 9:10
**vastly** [1] - 17:4
**Vermont** [1] - 3:22

**version** [2] - 4:21, 29:7
**versus** [2] - 22:11, 24:8
**view** [4] - 13:17, 13:20, 35:10, 36:16
**violation** [1] - 22:20
**VIOXX** [21] - 1:6, 3:3, 5:18, 5:23, 5:25, 6:5, 6:11, 8:19, 14:1, 15:17, 22:25, 23:9, 23:24, 24:3, 24:6, 24:19, 25:1, 27:3, 29:6, 30:23, 30:25
**vs** [2] - 9:20, 11:15

## W

**wait** [1] - 26:18
**waited** [1] - 6:20
**Walker** [1] - 10:4
**Warfarin** [2] - 10:20, 11:2
**Washington** [2] - 2:20, 21:8
**watching** [1] - 17:24
**weathered** [1] - 16:18
**website** [2] - 29:15, 31:13
**WEDNESDAY** [1] - 3:1
**week** [1] - 36:25
**weigh** [1] - 11:12
**West** [1] - 2:15
**what-if** [1] - 26:15
**Wheatman** [3] - 4:22, 7:2, 36:25
**whereas** [1] - 25:4
**whipsawed** [1] - 27:16
**whole** [3] - 8:17, 8:18, 32:8
**wide** [4] - 11:11, 11:21, 12:7, 35:8
**wise** [1] - 34:15
**wish** [2] - 18:1, 35:25
**wishes** [1] - 32:22
**withdraw** [1] - 24:21
**withdrawal** [2] - 5:25, 6:5
**withdrawn** [1] - 23:9
**worry** [1] - 26:15
**writing** [1] - 15:8
**wrongdoing** [2] - 22:22, 22:24
**wrongful** [2] - 5:10, 12:3
**wrongful-death** [2] - 5:10, 12:3

## X

**XL** [4] - 15:21, 16:5, 17:10, 19:12

## Y

**year** [2] - 7:19, 11:16
**years** [7] - 6:15, 6:18, 7:1, 12:9, 14:14, 16:14, 26:23
**yes/no** [1] - 22:8
**yield** [1] - 14:7
**York** [1] - 2:20

## Z

**ZIELIE** [2] - 1:20, 37:24
**Zielie** [2] - 37:21, 37:25