1        IN THE UNITED STATES DISTRICT COURT FOR

2             THE EASTERN DISTRICT OF LOUISIANA

3                      AT NEW ORLEANS

4

5   IN RE:  VIOXX PRODUCTS              ) Case No. MDL 1657 "L"
        LIABILITY LITIGATION               ) September 11, 2013
6                                          )
    _____) Motions
7

8

9

                          TRANSCRIPT OF PROCEEDINGS
10
                 BEFORE THE HONORABLE ELDON E. FALLON
11
                    UNITED STATES DISTRICT JUDGE
12

13

14

15

16

17

18

19   SUSAN A. ZIELIE, RPR, RMR, FCRR
     Official Court Reporter
20   HB 406
     500 Poydras Street
21   New Orleans, Louisiana 70130
     susan_zielie@laed.uscourts.gov
22   laedcourtreporter@gmail.com
     504.589.7781
23

24   Proceedings Recorded by Computer-aided Stenography.

25

```
 1    APPEARANCES:

 2

 3    For the PSC:          RUSS HERMAN, ESQ.
                            LEONARD A. DAVIS, ESQ.
 4                          Herman Herman Katz, LLC
                            820 O'Keefe Avenue
 5                          New Orleans LA 70113
                            504.581.4892
 6                          rwesternfeld@hhkc.com
                            ldavis@hhkc.com
 7
                            ELIZABETH J. CABRASER, ESQ.
 8                          Lieff Cabraser Heimann & Bernstein LLP
                            275 Battery Street
 9                          29th Floor
                            San Francisco CA 94111-3339
10
      For the AG:           DAWN M. BARRIOS, ESQ.
11                          Barrios Kingsdorf & Casteix LLP
                            One Shell Square
12                          701 Poydras Street, Suite 3650
                            New Orleans LA 70139-3650
13                          barrios@bkc-law.com
                            504.524.3300
14
      For Merck:            JOHN H. BEISNER, ESQ.
15                          Skadden Arps Slate Meagher & Flom, LLP
                            1440 New York Avenue NW
16                          Washington DC 20005
                            john.beisner@skadden.com
17                          202.371.7410

18    For Kentucky:         RICHARD A. GETTY, ESQ.
                            The Getty Law Group
19                          1900 Lexington Financial Center
                            250 West Main Street
20                          Lexington KY 40507
                            rgetty@gettylawgroup.com
21                          859.259.1909

22

23

24

25
```

```
 1              NEW ORLEANS, LOUISIANA; WEDNESDAY, SEPTEMBER 11, 2013      15:23:3

 2                            3:30 P.M.                                    15:23:3

 3              THE COURT:  Be seated, please.                            15:28:3

 4                   Let's call the case, please.                         15:28:3

 5              THE CLERK:  MDL 1657, in re:  VIOXX Products Liability     15:28:3

 6    Litigation.                                                         15:28:4

 7              THE COURT:  Counsel, please state your appearances for    15:28:4

 8    the record.                                                         15:28:4

 9              MR. GETTY:  Richard A. Getty and Jessica Case on behalf   15:28:5

10    of Kentucky plaintiffs.                                            15:28:5

11              MR. HERMAN:  May it please the Court, good afternoon,     15:28:5

12    Your Honor.  Russ Herman, co-class counsel, with Elizabeth         15:29:0

13    Cabraser, Dawn Barrios and Lenny Davis.                            15:29:0

14                   Ms. Cabraser -- first of all, Your Honor, it's      15:29:0

15    sort of embarrassing when you have these papers that the real      15:29:1

16    person doesn't get credit.  And I want to put on the record and    15:29:1

17    let the Court know, although on our side we've all had input,      15:29:1

18    Elizabeth has done the yowomen's job, and she will be carrying     15:29:2

19    the major argument for our side.                                   15:29:3

20              MR. BEISNER:  Good afternoon, Your Honor.  John          15:29:3

21    Beisner.  I'll be speaking on behalf of Merck.                     15:29:3

22              THE COURT:  All right.  We're back again.  Not much      15:29:4

23    has changed since the last time we were here.                      15:29:4

24                   Let me set the record, make some comments by way    15:29:4

25    of background.                                                     15:29:5
```

1           This is a situation where we are sort of at the

2    intersection of the MDL and state action.  Which we're seeing a

3    lot these days because many MDL's are going in the same

4    direction, meaning at the same time as state actions and MDL

5    actions.

6           The state action in this case is a Kentucky

7    action.  Mr. James Ratliff is a resident of Kentucky.  He was

8    diagnosed with chronic osteoarthritis at an early age, and he

9    was taking VIOXX daily for that condition.  I assume it helped

10   him because he didn't have any claims in the personal injury

11   aspect of the case.

12          In any event, after VIOXX was removed from the

13   market, Mr. Ratliff brought a case in Kentucky state court on

14   behalf of himself and all Kentucky residents who had purchased

15   or taken VIOXX.  He wanted his money back and whatever other

16   relief, if any, the Kentucky state laws gave him.

17          His action was filed prior to the MDL being filed.

18   When the MDL was filed, or perhaps even before, Merck, who is

19   the defendant in the Kentucky case, removed the case to the

20   federal district court in that jurisdiction, and the judge

21   remanded the case to Kentucky state court.

22          Since then, it's had an up-and-down history.  The

23   state court granted class certification.  The appellate court

24   reversed the state and took away the class certification.  It

25   went to the supreme court of Kentucky, where it was briefed and

1   argued, and the Kentucky state court is considering the matter.   15:32:0

2                   During this whole process, the MDL was created and   15:32:0

3   moved to this court.  It proceeded with dispatch, and cases were   15:32:1

4   tried.  Beginning the first four or five months out, six cases   15:32:2

5   were bellwethered.  Eventually, the personal injury, heart   15:32:2

6   attack, strokes and so forth were settled, some 50,000 cases.   15:32:3

7   They came from all states in the country, 50 states, and even   15:32:4

8   some territories.  And, of course, also some foreign countries   15:32:4

9   have filed lawsuits.  But, in any event, those cases were   15:32:5

10  resolved.   15:32:5

11                  And then the Court had other matters involving the   15:32:5

12  VIOXX related incidents, attorney generals, various other types   15:33:0

13  of cases.  And one of them, of course, which we're here today,   15:33:0

14  is the consumer cases.   15:33:1

15                  The consumer cases proceeded in this court under   15:33:1

16  the MDL, headed by a committee for that purpose, and vigorously   15:33:2

17  pursued.   15:33:3

18                  Eventually, the parties met and tried to look at a   15:33:3

19  global resolution of the case.  They were able to come up with   15:33:3

20  figures, with a procedure that they felt was appropriate for   15:33:4

21  their respective clients.  The Court was asked to approve   15:33:4

22  preliminarily the class action settlement of the MDL, which   15:33:5

23  included all states with the exception of -- I think Minnesota;   15:34:0

24  was it?   15:34:0

25              MR. BEISNER:  Missouri.   15:34:0

1        THE COURT:  Missouri, right.                          15:34:0

2              And the Court granted preliminary approval on that  15:34:1

3    case.                                                     15:34:1

4              Kentucky feels that they filed an objection in the  15:34:1

5    proceeding.  I listened to the objection, understood the  15:34:2

6    objection, and I felt that it had some merit; and, perhaps at a  15:34:3

7    later date, it might be more appropriately made.  So I granted  15:34:3

8    preliminary approval.                                     15:34:4

9              Got the notice, approved the notice.  The notices  15:34:4

10   were sent out to everyone in the country.                 15:34:5

11             The MDL class settlement includes all states    15:34:5

12   except Missouri.  And the census of that litigation involves  15:35:0

13   people who purchased VIOXX, used VIOXX and seek to get their  15:35:1

14   money back, or other remedies.  They don't have any illness from  15:35:2

15   VIOXX.  I assume that VIOXX helped them, otherwise they wouldn't  15:35:2

16   have taken it.  Most of them who made claims took it more than  15:35:3

17   once because of the money involved, and some of them over a  15:35:3

18   period of time.  So I assume it did help them.  But,        15:35:3

19   notwithstanding that, they feel that they're entitled to get  15:35:4

20   their money back because the drug had certain potential problems  15:35:4

21   that, had they known, they would not have purchased it.    15:35:5

22             The Kentucky case takes the position that their  15:36:0

23   claimants are more like the Missouri claimants, that they have a  15:36:0

24   better potential for recovery or a larger amount potential for  15:36:1

25   recovery if they are certified, and they feel that they should  15:36:2

1    be excluded from the settlement.                             15:36:2

2              The cases are proceeding, the MDL is proceeding,    15:36:3

3    and Kentucky at one time had asked that I stop the MDL.  I see 15:36:3

4    in their briefs they suggest that.  I don't know whether I have 15:36:4

5    a motion for me at this point.                              15:36:4

6              The MDL takes the position that I should enjoin    15:36:4

7    the state court because there's some overlapping and there's  15:36:5

8    some potential problem for creating difficulty with the MDL, the 15:36:5

9    class actions, and could derail the settlement for the other 48 15:37:0

10   states.  And this was brought up a couple weeks ago when     15:37:1

11   Kentucky asked that it be continued for a couple of weeks to  15:37:2

12   give the state supreme court an opportunity and also to give him 15:37:3

13   an opportunity to prepare to respond to the motion because he 15:37:3

14   had just gotten it somewhat recently.  I did so, and we're here 15:37:3

15   today, and the Kentucky supreme court has not acted.  And so the 15:37:4

16   situation is pretty much as it was before.  But I'll hear from 15:37:4

17   counsel.                                                     15:37:5

18              Elizabeth, either one.                            15:38:0

19        MS. CABRASER:  Thank you, Your Honor.  Elizabeth        15:38:0

20   Cabraser for the consumer, the VIOXX consumer settlement class. 15:38:0

21              Mr. Ratliff has indeed filed an amended motion to  15:38:1

22   stay these proceedings.  We'll be opposing that.  That       15:38:2

23   opposition is not due for a little while.                    15:38:2

24              And I would note, at the outset, that when this   15:38:3

25   Court was asked to entertain preliminary settlement approval in 15:38:3

1  this matter, the order requested didn't contain a provision that                15:38:4

2  is so common as to have been boilerplate in the past, and that                  15:38:4

3  is the All Writs Act provision.                                                  15:38:5

4          Back in the day before the enactment of the Class                       15:38:5

5  Action Fairness Act, back in the 20th century, which now seems a                 15:38:5

6  long time ago, it was a matter of course and well established                    15:39:0

7  that a preliminary approval order would contain a provision,                     15:39:0

8  typically a paragraph, that would enjoin members of the                          15:39:0

9  settlement class from interfering with or prosecuting state                      15:39:1

10 court actions.  And that was an aid of the federal court's                       15:39:1

11 jurisdiction and exclusive supervision over the class action                     15:39:2

12 settlement approval process to avoid disruption.                                 15:39:2

13         In all of the cases, with which I know Your                              15:39:2

14 Honor's quite familiar, the *Hanlon* case, the *Baldwin-United*                  15:39:3

15 class, the *Diet Drugs* case belonged to that era.  So this all                  15:39:3

16 has been well established.  Nothing in the supreme court has                      15:39:4

17 changed it.                                                                      15:39:4

18         MDL courts and non-MDL courts alike treat complex                        15:39:4

19 litigation, and particularly proposed class action settlements,                  15:39:5

20 as the functional equivalent of arrest for purposes of clary                     15:39:5

21 jurisdiction, including *in rem* jurisdiction.  They have                         15:40:0

22 unquestioned jurisdiction over all of the members of the                         15:40:0

23 proposed settlement class during the settlement approval                         15:40:0

24 process.  And so there is nothing novel at all about this                        15:40:0

25 request.                                                                         15:40:1

1        THE COURT:  What about in this case, does the fact that

2    the case was filed in state court before the MDL was created,

3    does that do anything?

4            And, also, does the remand do anything?  It was

5    brought before a federal court and remanded back to the state

6    court.  Does that distinguish this case from others?

7        MS. CABRASER:  Not at all, Your Honor.  In fact, that

8    story is quite similar to the narrative of *Hanlon vs. Chrysler*

9    *Motors Corp.*  And all of those -- all of the chronology as set

10   forth in the published decision -- I know it intimately because

11   it was my case.  But, in *Hanlon*, after the *Hanlon* action was

12   filed but before an MDL was created, and long before there were

13   any settlement discussions, a Georgia state court case was filed

14   as a class action.  Essentially, a Georgia subset of the various

15   classes that ultimately converged in the *Hanlon* case.

16           When a settlement was reached in Hanlon, there was

17   a preliminary approval order that did contain one of these All

18   Writs Act paragraphs.  As for example, the drywall preliminary

19   approval orders that Your Honor signed, do.  But it was ignored.

20   It was ignored by Georgia counsel who said things like:  You

21   don't have jurisdiction over me, I filed before an MDL, I filed

22   before a settlement and I'm going to get my class certified.

23   And, indeed, he got an order from the Georgia courts certifying

24   the class.

25           At that point, the setting parties in *Hanlon* went

1    back before the Court, got a new order.                      15:42:0

2                At that point, the Georgia plaintiffs said:  You   15:42:0

3    don't have jurisdiction over me because I have my own class now,   15:42:1

4    it's certified, and I've opted-out everybody in the Georgia   15:42:1

5    class.                                                        15:42:2

6                The Ninth Circuit ultimately held that the        15:42:2

7    district court was entirely correct to enforce the All Writs Act   15:42:2

8    injunction against that objection.  And while obtaining a     15:42:2

9    Georgia class certification order might have operated to remove   15:42:3

10   the named plaintiff from the federal class, it didn't remove him   15:42:3

11   from the federal court's jurisdiction.  And it certainly did not   15:42:4

12   remove the Georgia class from the federal class because every   15:42:4

13   member of that federally-certified class had the individual    15:42:4

14   right to determine for themselves whether they wanted to be in   15:42:5

15   the settlement class or whether they wanted to be in the Georgia   15:42:5

16   class.                                                        15:43:0

17               So I would say that the *Hanlon* case is as close to   15:43:0

18   all fours to this one as we're likely going to get.  And it was   15:43:0

19   actually a better case for the objector because the objector had   15:43:0

20   managed to get an operative class certification order from the   15:43:1

21   Georgia state court.  Something that Mr. Ratliff does not have.   15:43:1

22   So that did not disrupt the jurisdiction of the federal court.   15:43:2

23               This was someone who was within the court's       15:43:2

24   jurisdiction while they were a potential member of a defined   15:43:3

25   class.  And, being on notice of the order of course even after   15:43:3

```
 1    purportedly opting out, was still subject to its decree.    15:43:4

 2              The long and short of it, Your Honor, is that the    15:43:4

 3    Georgia proceedings were stayed pending the completion of the    15:43:5

 4    federal settlement approval process.  The settlement was    15:43:5

 5    approved.  It was affirmed on appeal by the Ninth Circuit.  And    15:43:5

 6    the only persons from Georgia who were not members of the    15:44:0

 7    federal settlement class were those who had individually opted    15:44:0

 8    out themselves from the federal class action.  I believe there    15:44:1

 9    were 27 of them at the end of the process.    15:44:1

10         THE COURT:  Counsel brings to the Court's attention the    15:44:1

11    fact that he says that there's no class that has been certified;    15:44:2

12    in fact the class has been decertified by the appellate court,    15:44:2

13    so there's nothing to enjoin at this point.    15:44:3

14         MS. CABRASER:  I think, Your Honor, that that    15:44:3

15    misapprehends the nature of class counsel's motion.  Our motion    15:44:3

16    is for an order enjoining James Ratliff, his counsel and any    15:44:4

17    other class member from prosecuting a competing and overlapping    15:44:4

18    consumer class action and enjoining them from interfering with    15:44:5

19    this Court's continuing jurisdiction over the litigation.    15:44:5

20              So we don't know from day-to-day what Mr. Ratliff    15:44:5

21    or his counsel may do.  They seem to be filing a repetitive    15:45:0

22    series of motions in this court, for example.  And an All Writs    15:45:0

23    Act injunction can't stop them from doing that.  Your Honor can    15:45:1

24    rule on those motions.    15:45:1

25              But an All Writs Act injunction can maintain a    15:45:1
```

```
 1    basic order in the process, just as it had to do repeatedly in      15:45:2
 2    the pre-CAFA days.  So that this Court going forward with notice     15:45:2
 3    and approval and objections and opt-outs and hearings, does not      15:45:3
 4    need to worry about what may or may not be going on from             15:45:3
 5    day-to-day in connection with a punitive Kentucky action, either     15:45:4
 6    the Ratliff action or a new action.                                  15:45:5
 7              For example, Mr. Ratliff is the focus of this              15:45:5
 8    motion because Mr. Ratliff is the one engaging in activity.  But     15:45:5
 9    an order like this is normally part of a preliminary approval        15:46:0
10    order, and it operates with respect to all members of the            15:46:0
11    defined settlement class so that none of them commences or           15:46:1
12    continues to prosecute or engage in activity that would              15:46:1
13    interfere with the Court's ongoing jurisdiction over the             15:46:1
14    settlement approval process.                                         15:46:2
15              And, Your Honor, we did mention that the notice            15:46:2
16    program is under way, and I just wanted to report to you briefly     15:46:3
17    on that, because I think it is pertinent.  The internet campaign     15:46:3
18    began on September 2nd.  The official settlement website is up       15:46:3
19    and running.  It's vioxxconsumersettlement.com.  It has Your         15:46:4
20    Honor's orders, the agreement, the claim form, the Frequently        15:46:4
21    Asked Questions.  The press release has gone out on August 8th.      15:46:5
22    The direct mail notice campaign went out.  All of the law firms      15:46:5
23    that represent named plaintiffs in all of the MDL-related            15:47:0
24    consumer actions were sent notice.  And the publication schedule     15:47:0
25    runs between September 15th and September 23rd.  So, Parade USA      15:47:1
```

1  Weekend, National Geographic, et cetera, that publication has          15:47:2
2  already been placed and it will be seen in print within the next       15:47:2
3  week or so.                                                            15:47:3
4             More than that, Your Honor, there's been claims             15:47:3
5  activity.  So people are registering with the claims                   15:47:3
6  administrator.  More than 350 have registered.  Another 150 plus       15:47:3
7  have asked for claim forms by phone.                                   15:47:4
8             THE COURT:  Is that in Kentucky only, or throughout the     15:47:4
9  country?                                                               15:47:5
10            MS. CABRASER:  No.  There are Kentucky registrants, but     15:47:5
11 this is nationwide.  It's very early days.                             15:47:5
12            The website has been up and running for a matter           15:47:5
13 of days.  But this level of interest at the very beginning of a        15:47:5
14 multi-month claim program is indicative that there is class            15:48:0
15 member interest in seeing this process move forward and people         15:48:0
16 are interested in the claims program and are beginning to do the       15:48:0
17 necessary documentation and paperwork to file their claims.            15:48:1
18            We note that this is a process that Mr. Ratliff            15:48:2
19 apparently still wants to stop, given his motion for stay              15:48:2
20 pending appeal.  I'm not going to argue that motion because we         15:48:3
21 haven't filed our opposition.  That's a matter for another day.        15:48:3
22            I think the matter for today, at least from class          15:48:4
23 counsel's perspective, is to learn from this scenario, to make         15:48:4
24 sure that it does not continue to occur and that it does not           15:48:5
25 recur with respect to any other settlement class member.  And,        15:48:5

```
 1    to put in place what is an established matter of routine in most    15:49:0

 2    class action settlements, and that is an All Writs Act order.       15:49:0

 3              We submitted a form of order to Your Honor for            15:49:0

 4    your consideration.  Merck submitted a slightly different form.     15:49:1

 5    And I would note that the standard form is included, for            15:49:1

 6    example, as paragraph 19 of the I think most recent Chinese         15:49:2

 7    Drywall order.                                                      15:49:2

 8              Mr. Herman, who is involved in that litigation at         15:49:2

 9    the highest level, can speak to the All Writs Act experience in     15:49:3

10    Chinese Drywall.  I would only state that, after having read        15:49:3

11    Your Honor's Orders and Reasons on the All Writs Act, with its      15:49:4

12    comprehensive analysis of all the jurisdictional issues, the        15:49:4

13    history and practice of All Writs in the federal courts and MDL     15:49:5

14    courts, I don't have anything to add to that.  It's                 15:49:5

15    comprehensive.  It's contemporary.  Other courts have cited it.    15:49:5

16    And it is a matter that is beyond preventure at this point as an    15:50:0

17    appropriate exercise in this Court's discretion in the             15:50:1

18    jurisdiction over the process and the class.                        15:50:1

19              THE COURT:  The issue always in these questions is the    15:50:1

20    question of what's the basis of it.  And, in the past, there was    15:50:2

21    some issue as to whether or not it could be done.                   15:50:2

22              I think that the literature, as well as the               15:50:3

23    opinions, some of which are mine, have recognized sort of an        15:50:3

24    admiralty concept, at least.  And the issue often times is where    15:50:4

25    is the *res* fully established, is it an embryo or a viable human.  15:50:4
```

1    And that's sometimes the issue that comes up.                    15:50:5

2              Suppose that the classes continue, sort of              15:51:0

3    competing class actions, what's the issue with that?  If they    15:51:1

4    continue on as a Kentucky class action and a multi-district      15:51:2

5    litigation action?                                               15:51:2

6              MS. CABRASER:  Your Honor, at this point, it's not      15:51:3

7    highly likely that there would be a head-to-head competition.    15:51:3

8    The settlement approval process is underway for the VIOXX        15:51:4

9    consumer class.  We will know shortly after, we hope, the        15:51:4

10   December 13th hearing whether or not we have final settlement    15:51:5

11   approval.  People will go ahead to make their opt-out or         15:51:5

12   objection choices.  People have until next May to make claim     15:51:5

13   forms.  Those who do not timely opt-out will be bound by that    15:52:0

14   class from whatever state they come.  And so the situation will  15:52:0

15   be as it was in the *Hanlon* case.  Which is, at the end of the  15:52:1

16   process, if the settlement is approved, the only potential       15:52:1

17   members of say a Kentucky class action, if such could ever be    15:52:1

18   revived at this point in the state of Kentucky, would be a       15:52:2

19   membership of those who had timely opted out of the settlement.  15:52:2

20   In the *Hanlon* case, that was a grand total of 27 Georgians.    15:52:3

21             I think what actually happened in that case --         15:52:3

22   although, I don't see it reflected in the published decision --  15:52:3

23   is that they asked to come back in the class, and were allowed   15:52:4

24   to do so to get the benefit, which was the installation of the   15:52:4

25   new safety latch for their vehicles.  Obviously, they wanted     15:52:4

```
 1    that.                                                    15:52:5

 2              Here, we don't think that any new class or revived   15:52:5

 3    Kentucky class, were that even possible, would be up and running  15:53:0

 4    such as that it could be given notice and confusing class   15:53:0

 5    members in that sense.                                     15:53:1

 6              But, having such activity proceed, particularly   15:53:1

 7    when it's no longer timely, particularly when it's an exercise  15:53:1

 8    in futility, is a waste of the resources of the settling   15:53:2

 9    parties.  It's a waste of the resources of class counsel.  It   15:53:2

10    uses the resources of this Court to try to deal with it out of  15:53:3

11    your peripheral vision.  And it does have the potential to   15:53:3

12    confuse and mislead class members.                         15:53:3

13              Your Honor, I know that in an earlier hearing, you   15:53:4

14    suggested that perhaps some language could be used in the notice   15:53:4

15    to deal with the status of the Kentucky proceeding.  I have to   15:53:5

16    say, I spent many hours trying to write a fair, objective,   15:53:5

17    factual summary.  It wouldn't write.  It's pure speculation.  It   15:54:0

18    was not possible to put in a court-approved notice under any of   15:54:0

19    the federal guidelines of the Manual For Complex Litigation.  So   15:54:1

20    that's the situation.                                      15:54:1

21              We have something that is speculative, it's   15:54:1

22    inchoate.  To the extent there was a class action in Kentucky,   15:54:2

23    it is gone.  Like Arthur, it may yet come again in a future age.   15:54:2

24    But it shouldn't be allowed to disrupt real proceedings going on   15:54:2

25    now to provide real dollar value relief to people within the   15:54:3
```

```
 1    next few months.  Thank you.                              15:54:3

 2            THE COURT:  Thank you.                             15:54:4

 3            MR. HERMAN:  Your Honor, I'm not going to -- try not to  15:54:4

 4    cover the same ground.  I do have a couple of comments.   15:54:5

 5            Looking around, I know my colleagues are trained  15:54:5

 6    in civility, but I may be the only civilian lawyer that is going  15:54:5

 7    to address this.  And I appreciate always an opportunity, and  15:55:0

 8    there are a number of judges in this courthouse that allow us,  15:55:0

 9    for oral argument.  I think it's a great learning experience for  15:55:1

10    the lawyers.                                               15:55:1

11            I want to address a concept that comes out of your  15:55:2

12    opinion in Drywall because it has to do and relates to the  15:55:2

13    entire issue of whether this Court has jurisdiction, has the  15:55:3

14    power to issue an order under the All Writs Act.          15:55:4

15            Essentially, the question to me is, is there a     15:55:5

16    res.  And, in MDL 2047, in your opinion at 2011 West Law 231866,  15:55:5

17    there was a concept in which Your Honor related conceptual res.  15:56:0

18            Now, in Roman law and in its progeny, there is a   15:56:1

19    distinction somewhat different than the common law when we talk  15:56:2

20    about incorporeals incorporeals.  And, after thinking about it,  15:56:3

21    I felt that the whole idea of a conceptual res somehow is  15:56:4

22    related, when we say conceptual, to an incorporeal.  And, when  15:56:4

23    that incorporeal, when does it become corporealized?  When is it  15:56:5

24    no longer just conceptual?                                15:57:0

25            In this case, Your Honor, I have a strong belief,  15:57:0
```

1   and I've argued to Your Honor and my colleagues, that we were at         15:57:1

2   the threshold of a conceptual *res* which has now been                   15:57:1

3   comporealized.  C.                                                        15:57:2

4              When we have a matter in which there have been                 15:57:3

5   numerous trials on various issues, a trial plan, a trial                  15:57:4

6   practice brief, literally hundreds and hundreds of thousands of           15:57:4

7   discovery in this MDL, many, many, many depositions, and we              15:57:5

8   approach in a consumer framework which cannot be divorced from            15:58:0

9   all of the work product that has led up to a settlement, and              15:58:1

10  when there are settlement discussions, ongoing settlement                 15:58:2

11  discussions, and the Court is in effect not only aware of those           15:58:2

12  discussions but encourages those discussions, we could say,               15:58:3

13  perhaps as Your Honor did in drywall before there was actually a          15:58:4

14  meeting of the minds, that there was a *res* and it was                   15:58:4

15  conceptual.                                                               15:58:5

16             But at the point where there is a meeting of the               15:58:5

17  minds, at the point where briefs are filed, there's preliminary           15:58:5

18  approval given, notices have gone out, as my co-counsel and               15:59:0

19  colleague has pointed out, and even the notices were negotiated,          15:59:1

20  and as we approach a hearing on certification, we are much                15:59:2

21  farther along than a mere -- and I don't want to diminish that            15:59:2

22  because I think it's important -- but just a corporeal *res*.             15:59:3

23  There is a *res* here.  There have been QSFs approved by the              15:59:4

24  Court, funds to be deposited while this process is ongoing.  And          15:59:4

25  that gives this Court the jurisdiction, the power to issue an             15:59:5

1    order under the All Writs Act if Your Honor feels disposed to do          16:00:0

2    so.  So I don't think the question of your power to do this is            16:00:0

3    really in question.                                                        16:00:1

4              Now, I only want to address two other issues that              16:00:1

5    Your Honor raised and I want to comment on one of the answers            16:00:2

6    that my colleague, Ms. Cabraser, gave.                                    16:00:3

7              First of all, Your Honor, in terms of a case being            16:00:3

8    remanded in Kentucky, it's not the same case.  It's not the same          16:00:5

9    case because you don't have the same parties.  You don't have            16:00:5

10   the same clients.  You've got a speculation, according to                16:00:5

11   learned counsel opposite, Mr. Getty, who has said over and over          16:01:0

12   in oral argument there are 200,000 class members.  Well, if they          16:01:0

13   are, they're my clients.  Because I'm co-class counsel with Ms.          16:01:1

14   Cabraser, and it's our obligation, they are our obligation,              16:01:1

15   because at the present time they are punitive members of this            16:01:2

16   class that we superintend in this court's features, I guess              16:01:2

17   until they opt-out or they opt-in.  And it's pure speculation as          16:01:3

18   to what is going to happen.                                               16:01:3

19             Now, I respect learned counsel Getty very much.                16:01:4

20   He's practiced in Kentucky, he's got an excellent reputation.            16:01:4

21   He has made prediction after prediction, both in writing and            16:01:5

22   oral argument, that the Kentucky supreme court will reverse and          16:01:5

23   send the case back and it will be certified.  I can't argue with          16:02:0

24   that.  I'd be arguing with a phantom.  I don't have any contrary          16:02:0

25   argument, except to say:  Well, if it's sent back, then doesn't          16:02:1

 1    notice have to issued?  Kentucky has certain rules that would          16:02:1

 2    have to be in play.  They just can't be leaped over.  So, even         16:02:2

 3    that's speculation, because what's the trial court going to do         16:02:3

 4    now?  I don't know.  No one knows.                                     16:02:3

 5              So, for the PSC and Ms. Cabraser and myself, if             16:02:3

 6    we're to protect the punitive class, we can't deal with the           16:02:4

 7    speculation.                                                          16:02:5

 8              Now, Your Honor indicates, well, suppose we have            16:02:5

 9    two punitive classes.  Well, I suppose what happens, in order         16:03:0

10    for that to take place, you'd have to have folks receive notice,      16:03:0

11    a new notice in Kentucky under whatever a district court in           16:03:2

12    Kentucky directs or a court of appeal, and maybe Merck will say       16:03:2

13    they'll appeal the notice.  I don't know.  I don't know what's        16:03:2

14    going to happen.  But folks in -- who are my punitive clients         16:03:3

15    that I'm responsible for right now, along with Ms. Cabraser,          16:03:3

16    would have to opt-out of the MDL settlement.  And then what           16:03:4

17    happens if the Kentucky settlement collapses?  They're left out       16:03:4

18    in the cold.                                                          16:03:5

19              But, here, we at least have the certainty that              16:03:5

20    those who elect to stay in are going to have an opportunity to        16:04:0

21    recover.  And it's not speculative.  The only thing speculative       16:04:0

22    about it -- and, with all due respect, it's Your Honor's             16:04:0

23    decision as to whether the class is certified -- but, in the         16:04:1

24    event it's certified, it's no longer speculative.  People that       16:04:2

25    are left in here are going to have an opportunity.                    16:04:2

1    So I think the question Your Honor asked is

2    certainly raised by matters in Kentucky and matters in this MDL

3    proceeding.  But I honestly believe that the way that all folks,

4    all folks can be protected, is through the MDL settlement, which

5    has been appropriately noticed.

6         There's just one other comment.  It's a question

7    at least in my mind, not supported by law, and it's an equitable

8    principle.  And that principle is this.  Should many numbers --

9    and we know they are at least 20,000 that could be affected

10   because of the history of VIOXX litigation in the MDL.  What

11   percentage, I don't know.  But, potentially, 50 percent of

12   those.  Who knows?  But a large number.  Should every potential

13   claimant in the United States with an opportunity to recover

14   have a situation in which violence is done to their opportunity

15   to recover on behalf of -- and I'll use Mr. Getty's figure --

16   200,000 phantom perhaps punitive claimants?

17        And I say that equity, Your Honor, should allow

18   where Your Honor has the power to issue an order that prohibits

19   not a class representative, just a claimant, Ms. Ratliff, from

20   proceeding?  Because she's not a class rep right now.  She may

21   be but she is not now.

22        Thank you, Your Honor.

23   THE COURT:  Thank you.

24   MR. BEISNER:  Thank you, Your Honor.  John Beisner for

25   defendant Merck.  I'll be brief.  I've just three or four points

```
 1    to make here.                                                16:07:2

 2              Your Honor, one point that I wanted to make is, it  16:07:2

 3    seems to me that the gist of what Mr. Ratliff is arguing here  16:07:2

 4    is:  Give me a chance; I have my case in Kentucky and I want you  16:07:3

 5    to let this play out.                                        16:07:3

 6              And the point I wanted to make here, Your Honor,   16:07:4

 7    is, that's the argument that's either explicit or implicit in  16:07:4

 8    all of these many cases that Ms. Cabraser referenced earlier.  16:07:4

 9    And I think, in our briefs, there is 40 or 50 of these cases,  16:07:5

10    your own among them.  That's the gist of all of those cases:  16:07:5

11    Let me go off in state court, I'll do better than this       16:08:0

12    settlement that has been proposed.                           16:08:0

13              But, invariably, the federal courts have said no.   16:08:0

14    Everyone's seen Annie, the sun will come up tomorrow and we'll  16:08:1

15    be in better shape.  But that is not a basis to say no in this  16:08:2

16    circumstance.  Because, if that were a basis for saying no,   16:08:2

17    that's not how all these other decisions would have come out.  16:08:2

18              Your Honor asked about conflict, is there a        16:08:3

19    conflict here.  And I would note, Your Honor, that I think the  16:08:3

20    cases are quite clear that the identification of an actual    16:08:4

21    conflict in this five minutes isn't necessary to the Court's  16:08:4

22    authority here, or to the advisability.                      16:08:5

23              In the *Diet Drugs* case, the Third Circuit noted   16:08:5

24    that the mere existence of a parallel class action is conflict.  16:09:0

25    The case is going on, it's being litigated.                  16:09:0
```

1    The Eighth Circuit in the *Liles vs. Del Campo* case    16:09:0

2    said you exercise this jurisdiction to eliminate the risk of    16:09:1

3    conflict.  And here, of course, Your Honor, the risk of conflict    16:09:1

4    is quite palpable.  This case is being litigated -- whenever a    16:09:2

5    decision were to come out from the Kentucky supreme court,    16:09:2

6    there's going to be publicity.  And there's going to be instant    16:09:3

7    confusion, what does this mean, whether Merck prevails or    16:09:3

8    plaintiffs prevail.  And so I think that it's the authority is    16:09:4

9    there and the wisdom of enjoining it is there.    16:09:4

10    Your Honor, another point I would make on this is    16:09:5

11    the importance of MDL courts protecting their jurisdiction in    16:09:5

12    these circumstances.  Your Honor faced this issue earlier in the    16:10:0

13    *Plubell* case before the court here.  And, admittedly, those were    16:10:0

14    somewhat different circumstances.  But the Court went to some    16:10:1

15    length to note that it's important, when settlements are    16:10:1

16    reached, to protect them.  Otherwise, the MDL courts will lose    16:10:2

17    the ability to craft and encourage those settlements.    16:10:2

18    And that's what's been so important about the very    16:10:3

19    consistent patterns that Ms. Cabraser alluded to earlier of the    16:10:3

20    issuance of these injunctions to stay parallel state court    16:10:4

21    proceedings.  What's the point of doing a global settlement if    16:10:4

22    you're continuing to litigate all over the place?    16:10:4

23    And, to be clear, what we're asking for is here is    16:10:5

24    a time-out.  We're not saying that the case in Kentucky won't    16:10:5

25    necessarily proceed.  That's not the relief that's being asked    16:11:0

1    here.  The relief that's being asked is:  Give us an

2    opportunity, everyone, to present before the Court the facts

3    about the settlement that is being presented.  If the Court says

4    this doesn't pass muster under Rule 23, the curtain is lifted,

5    all litigation proceeds.

6              It's a time-out, that's what we're basically

7    asking for here.  And I think it's reasonable to do that to

8    avoid conflict, confusion, while the settlement process is

9    proceeding.  And Your Honor has the burden of deciding whether

10   the settlement should be approved; and, if so, things will move

11   on.

12        THE COURT:  There are some overlaps obviously in the

13   description of the class, but there are some differences, too.

14   How do you see that as being a factor?

15        MR. BEISNER:  Your Honor, the differences here are

16   quite minor and are irrelevant under the case law in any event.

17   Fundamentally, the complaint, the master complaint in this case,

18   asserts claims under the Kentucky consumer protection statute.

19   Factual allegations are very similar.  Plaintiffs there may have

20   added some additional claims.

21             But Your Honor need only go back and look at sort

22   of the seminal decision in this line, the *Corrugated Container*

23   case from the Fifth Circuit back in 1981, where the Court said

24   all you need to do is see if the claims are substantially

25   similar.  And, in that case, there were allegations:  Oh, we can

```
 1    get more relief out of the state court action, we've made       16:12:5
 2    demands for this, we've made demands for that.  And the Fifth    16:12:5
 3    Circuit said:  No, the relief here is appropriate.  And that's   16:12:5
 4    our situation here.  And we don't have, I think, Your Honor,     16:13:0
 5    anything like you had in Corrugated Container.  I think there's  16:13:0
 6    very little daylight between what the settlement class that's    16:13:1
 7    being proposed here and what is being argued in Kentucky.        16:13:1
 8              One last thing I wanted to note, Your Honor,           16:13:2
 9    because Ms. Cabraser alluded to this earlier.  There is a minor  16:13:2
10    difference between our respective motions.  Merck has asked for  16:13:2
11    both a stay of the proceedings and an injunction of counsel.     16:13:3
12    The PSC has asked for an injunction of counsel.  I would note    16:13:3
13    the Court's authority is there in both instances.  Your Honor    16:13:4
14    has exercised both.  And, in the Drywall case, it was a stay of  16:13:4
15    proceedings.  I think that has been fairly standard in the sorts 16:13:5
16    of orders that Ms. Cabraser talked about a few moments ago, but  16:13:5
17    I did want to point out that distinction just to avoid any       16:14:0
18    confusion.                                                       16:14:0
19              Thank you, Your Honor.                                 16:14:0
20         THE COURT:  Thank you very much.                            16:14:0
21              You're up.                                             16:14:1
22         MR. GETTY:  Thank you, Your Honor.  As the Court            16:14:1
23    knows --                                                         16:14:1
24         THE COURT:  Getting triple teamed here.                     16:14:1
25         MR. GETTY:  I was going to say, the Court has always        16:14:2
```

```
1   been told by me that I'm a reluctant participate here.  But,      16:14:2
2   today, I sort of feel like Sidney Poitier in Look Who's Coming     16:14:2
3   to Dinner.  But I have confidence that the Court can exercise      16:14:3
4   its discretion here appropriately and deny these motions.  And    16:14:3
5   I'd like to sort of, as briefly as I can, follow the same track,   16:14:4
6   starting with Ms. Cabraser's comments, moving to Mr. Herman's      16:14:4
7   and finishing with Mr. Beisner.  And I appreciate his brevity      16:14:5
8   today.                                                             16:14:5
9              First of all, you have the right -- you have           16:14:5
10  articulated a conceptual res where you have a settlement fund in   16:15:0
11  the Chinese Drywall.  And I don't argue with that concept          16:15:1
12  necessarily.  In the context of today's kind of litigation, it    16:15:1
13  makes sense.  But what the Court, I think, has to focus on here    16:15:1
14  are, if it were to exercise that kind of discretion with respect   16:15:2
15  to this conceptual res, would be it be fair to my clients?  And    16:15:3
16  it clearly would not be.                                           16:15:3
17             Let's start with the Anti-injunction Act.  Ms.         16:15:4
18  Cabraser says that there was always a provision for an All Writs   16:15:4
19  clause in the orders.  Well, the Anti-injunction Act was passed    16:15:4
20  to end this practice.                                              16:15:5
21             The Fifth Circuit itself in Corrugated said -- and     16:15:5
22  I can quote.  They basically said:  In all instances, the most    16:15:5
23  narrow grounds possible should be applied or utilized.  That,     16:16:0
24  you should exercise equitable principle so as to not do           16:16:1
25  something that would harm litigants who have legitimate rights    16:16:1
```

```
 1    who should be vindicated.                                    16:16:2
 2              Here, that's exactly the case.  I mean, I stand    16:16:2
 3    here before the Court and I can look at you and say:  What have  16:16:2
 4    we done that needs to be enjoined?  What have we set?  We've  16:16:3
 5    done nothing but reluctantly be sucked into these proceedings.  16:16:3
 6    I've never wanted to be here, even though I've enjoyed immensely  16:16:3
 7    appearing in front of Your Honor, and will continue to do so up  16:16:4
 8    to the point that, hopefully, we will be excluded and I will go  16:16:4
 9    back to Kentucky.  But we've done nothing here to justify this  16:16:5
10    kind of extraordinary relief.                                16:16:5
11              You know, injunctive relief in and of itself       16:16:5
12    generally requires a present danger or a present harm.  There's  16:17:0
13    been no step taken in the trial court.  Nothing has been filed  16:17:0
14    there.  We're simply waiting for the supreme court to rule.  I  16:17:1
15    had hoped that it would be by the end of August.  It didn't   16:17:1
16    happen.  They rendered another major, major decision involving  16:17:1
17    the Phen-Fen cases and the two lawyers that were convicted    16:17:2
18    criminally and have been pursued civilly.  It's about a 50 plus  16:17:3
19    page opinion, and I guess that had to be worked on first.  I'm  16:17:3
20    hopeful that, at the earliest possible time, they will rule.  16:17:4
21    I'm sure that they will rule and I still have confidence that  16:17:4
22    our consumer claim and possibly the fraud claim will in fact be  16:17:4
23    certified.                                                   16:17:5
24              But, in the meantime, I have to do what I have to  16:17:5
25    do to protect my clients or my class, punitive class of Kentucky  16:17:5
```

```
 1   consumers, the best I can.                                  16:18:0

 2                Ms. Cabraser pointed to the *Hanlon* case.  That was   16:18:0

 3   a Georgia class.  But, in actuality, that case or that class   16:18:1

 4   wasn't certified until after there was an MDL settlement.    16:18:1

 5                And the equities here strongly militate in favor   16:18:2

 6   of not granting this extraordinary relief.  We have litigated   16:18:2

 7   this case for nine years.  At every turn, we have prevailed, up   16:18:2

 8   until the court of appeals.  Merck filed a motion for summary   16:18:3

 9   judgment, they lost.  It was denied.  We filed a motion to     16:18:3

10   certify the class.  It was granted.  Merck took this to the    16:18:4

11   court of appeals on a mandamus not once but twice.  It went to  16:18:4

12   the supreme court once on the mandamus.  So it has a long and   16:18:5

13   extensive history of litigation.                               16:18:5

14                And the most important thing I think the Court    16:18:5

15   must consider is that this is not like the cases -- if you look 16:19:0

16   at every other case where an All Writs order has been issued,  16:19:0

17   there's been some inappropriate conduct on the part of the     16:19:1

18   attorneys.  You know, the one case involving I think it was the 16:19:1

19   drywall, the lawyer filed a proceeding in Orleans Parish and    16:19:2

20   moved for summary judgment.  Totally inappropriate, given the   16:19:2

21   status of those proceedings.                                   16:19:3

22                Here, our case has been pending.  We've had it    16:19:3

23   certified for two years.  It is one of two cases in this country 16:19:3

24   in the consumer claim area that has been certified, was        16:19:4

25   certified and continued to be certified for two years.  Until  16:19:4
```

```
 1    the court of appeals writes an opinion that in my -- I don't see      16:19:4

 2    how you can read that opinion -- the Court's done it.  It's           16:19:5

 3    clearly ambiguous as to the consumer claim because they compare       16:19:5

 4    it and its efficacy to the Plubell Missouri claim.                    16:20:0

 5              But what's even worse here, in my opinion, with             16:20:0

 6    respect to our situation, is that I sort of predicted this.  You      16:20:1

 7    know, I stood before this Court and I said:  Don't let us move        16:20:1

 8    forward.  It took them two years to negotiate a settlement.  I        16:20:2

 9    argued the fact that there was going to be confusion.  And I          16:20:3

10    know this Court has total recall about what went on here.             16:20:3

11    Everybody on this side of the table and everybody on this side        16:20:3

12    of the table said:  Oh, no confusion, we can handle that.  What       16:20:4

13    have you heard here today?  Well, they're going to be confused.       16:20:4

14    You know, if we don't stop this, they're going to be confused         16:20:4

15    because there's going to be two competing classes here.  It's         16:20:5

16    exactly what -- I hate to say it, but it's exactly what I said        16:20:5

17    was going to be the problem.                                          16:21:0

18              And the worst part of it, the worst part of it is,          16:21:0

19    is that they stood here and argued no confusion.  When I tried        16:21:0

20    to do something about the notice, to say something about the          16:21:0

21    Kentucky action and how it was also pending, we got no                16:21:1

22    cooperation whatsoever from plaintiffs' liaison counsel.  They        16:21:1

23    ignored every suggestion.  They sent it over here exactly as          16:21:2

24    they had drafted it, and we had no input.  I don't think that         16:21:2

25    was right.                                                            16:21:3
```

1    Frankly -- well, frankly, I would never have

2    entered into this settlement.  I don't think, under the

3    circumstances, it's appropriate.  I understand the Court has a

4    view of the fact that these are not personal injury claims.  I

5    mean, with Mr. Ratliff's situation, he had severe chest pains.

6    He didn't file a personal injury claim because he didn't have

7    sufficient evidence of personal injury.  But not everybody that

8    took this had a perfect, positive experience where it helped

9    them.  Mr. Ratliff is actually an example of that.

10    But, here, an injunction would be totally

11    inappropriate because there's no present harm.  The settlement

12    here is not a final settlement.  It's only been preliminary

13    approved by Your Honor.  And I think we have a legitimate right

14    to question and raise any legitimate questions that we think

15    exist.

16    I don't want, never wanted to be in a position

17    where I've had to do that.  But I've got to tell that you I

18    would not -- with *Plubell* having been settled for a $39 million

19    initial fund payment, and claims up to over $100 million, I

20    would not have agreed to this.  I would -- I mean -- everybody

21    has to look out for their interest or what they think their

22    class interest is, but I would not have agreed to it.  And I

23    would rather be out there on my own, pursuing my claim like the

24    Missouri claim, where I don't have to be tangled up in these

25    proceedings.

1             So --                                                    16:23:1

2        THE COURT:  Of course, you can make those arguments at        16:23:1

3   the final fairness hearing, which is probably when is the          16:23:2

4   appropriate time to make them.                                     16:23:2

5             Let me ask you this.  What's your view of having         16:23:3

6   them both moving at the same time?                                 16:23:3

7        MR. GETTY:  Well, my view, right or wrong, given the          16:23:3

8   appearances that I've made before this Court, is that I thought    16:23:4

9   that we were basically waiting to see what the Kentucky Supreme    16:23:4

10  Court would do and that there's a possibility of our being         16:23:5

11  excluded.                                                          16:23:5

12            I don't know how you deal with it at this point          16:23:5

13  because of -- I sort of feel -- I don't want to use the word --    16:23:5

14  I don't want to use the word deceived or cheated.  But, you        16:24:0

15  know, when this first came up, I thought there was going to be a   16:24:1

16  recommendation that we'd be excluded, quite frankly.  And I        16:24:1

17  understand Russ Herman's position.  He feels as though,            16:24:2

18  ethically, he has to represent the whole class.                    16:24:2

19            But the real problem here is that Merck took a           16:24:2

20  position that basically strong-armed the MDL liaison counsel.      16:24:3

21  They said:  If we don't have Kentucky in this, then we don't       16:24:3

22  have a settlement.  And, frankly, I wouldn't have blinked.  I      16:24:4

23  would have said:  Okay, we don't, when do we try the first         16:24:4

24  consumer case?                                                     16:24:5

25            Not one consumer case past has been tried.  There        16:24:5

1    have been bellwether cases, six of them.  There have been                16:24:5
2    personal injury cases that may have had a personal injury claim          16:24:5
3    in them.  Nobody's tried a personal injury claim.  None.  So we          16:25:0
4    don't know what the result might be, particularly under a state          16:25:0
5    that has had a statute like Kentucky's where no reliance is              16:25:0
6    necessary in terms of the proof.                                         16:25:1

7                     But, in this instance, my class or my plaintiff,        16:25:1
8    Mr. Ratliff and the Kentucky punitive class, is now in a                 16:25:2
9    position where, because we weren't excluded upfront, I've had to         16:25:2
10   come into these proceedings and participate fully, or tried to           16:25:3
11   participate fully, including possibly having to object to this           16:25:4
12   settlement.  I don't want to do that.  And I think there are             16:25:4
13   legitimate reasons why I should never have been in this                  16:25:4
14   situation.  I think this Court has the power and the discretion          16:25:5
15   to say:  I'm excluding Kentucky.                                         16:25:5

16                     I know, until we see what the Supreme Court of         16:26:0
17   Kentucky does, the Court's probably not in a position to                 16:26:0
18   exercise that discretion or make that decision.  But I think,            16:26:0
19   unless I'm excluded, there are horrendous problems that have             16:26:0
20   been created by everyone forging ahead, which equitably is to            16:26:1
21   the clear detriment of my case in Kentucky and the people that I         16:26:1
22   purport to represent.  I'm in a situation, to use the Court's            16:26:2
23   word, where I may have a better situation, I may have a stronger         16:26:2
24   claim.  I clearly have a fraud claim that's in addition.  The            16:26:3
25   main issue before the Kentucky Supreme Court that they took              16:26:3

1   discretionary review on is whether I can use generalized proof           16:26:3

2   of fraud where you have a product like VIOXX that is through a            16:26:4

3   consistent relevant period of time.  In a general sense, the             16:26:4

4   same misrepresentations or the same omissions have occurred with         16:26:5

5   respect to that product.  They have adopted that position, Your          16:26:5

6   Honor, in the *Wylie* case involving that Excel College in Corbin,       16:27:0

7   Kentucky.  So they've done it once and they certified a class            16:27:0

8   there.  So I feel pretty strongly that I have a good chance that         16:27:1

9   that may occur.                                                          16:27:1

10          What's being done here, is, despite what I was              16:27:2

11  told at the outset, you should be excluded, now we've gone ahead         16:27:2

12  and we've sent out this notice.  They're advertising this                16:27:3

13  settlement in Kentucky.  My secretary told me she'd seen an ad           16:27:3

14  on TV this week.  Another lawyer told me they'd seen one last            16:27:3

15  week.  I want to stand up here and say maybe I should file a             16:27:4

16  motion asking you to enjoin them from advertising anything in            16:27:5

17  Kentucky.  But, you know -- I'm in a quandary.  I think the              16:27:5

18  Court can tell that.                                                     16:27:5

19          But you have the discretion here, obviously in my          16:28:0

20  opinion, based on your *Chinese Drywall* case and the other cases       16:28:0

21  that I've seen, to exercise that discretion and issue an All             16:28:1

22  Writs Act.  The equities here say don't do it because what              16:28:1

23  they're asking for is severe injunctive relief, which                    16:28:1

24  essentially would drive a stake in the heart of my litigation.          16:28:2

25  All I'm asking for is let's see.  You know.                              16:28:2

```
 1        And Mr. Beisner made the point, he said:  Well,    16:28:3

 2   you know, this has been done before, it's all speculative,  16:28:3

 3   everybody always says in these cases just give me a chance.  16:28:3

 4   That's not our case.  I've done better.  I litigated for nine  16:28:4

 5   years with them.  I defeated their summary judgment motion.  I  16:28:4

 6   got the class certified.  It was in place for two years.  And  16:28:5

 7   now I simply want to be able to pursue the litigation that in  16:28:5

 8   the first instance Judge Hood remanded back to the state court.  16:29:0

 9        One of our arguments here is that does this Court  16:29:0

10   have jurisdiction given those circumstances.  I mean, I'm not  16:29:1

11   aware of any other case with facts like ours where any kind of  16:29:1

12   extraordinary relief like this has been entered.  And we're  16:29:1

13   here, I understand we're here only for this issue, on this  16:29:2

14   narrow issue, which is should an order staying or enjoining me  16:29:3

15   or my client or the Kentucky litigation be issued.  16:29:3

16        I think, when you balance the equities and you  16:29:3

17   look at the real facts here, there's absolutely no grounds,  16:29:4

18   there's no present action being taken.  The trial court  16:29:4

19   proceedings are dormant.  We're simply waiting to hear from the  16:29:5

20   supreme court, which may cast a different light on this case and  16:29:5

21   hopefully cause this Court to look at this situation and say:  16:29:5

22   They are like Missouri, maybe even more, given the fraud claim,  16:30:0

23   and they ought to be excluded.  16:30:0

24        And I feel like -- and I guess I really haven't  16:30:1

25   answered your question.  You asked me what implications are  16:30:1
```

```
 1   there with two of these cases proceeding.  I think there are      16:30:1

 2   means that we can take if the Kentucky case is -- if the          16:30:2

 3   Kentucky Supreme Court certifies the class and remands it for     16:30:3

 4   further proceedings, consistent with that ruling, then I think    16:30:3

 5   that gives this Court the grounds to go ahead and exclude us.     16:30:4

 6   And we simply at that point have -- well, at that point, perhaps  16:30:4

 7   Merck will actually make me the first offer to settle this case,  16:30:5

 8   none of which has taken place.  But, at that point, I think       16:30:5

 9   there are mechanisms or steps that we can take to deal with the   16:31:0

10   Kentucky case separates from these proceedings.                   16:31:0

11            In fact, I think potentially the fact that certain       16:31:1

12   Kentucky plaintiffs may have responded is potentially helpful.    16:31:1

13   Because that locates a group of individuals where we can -- they  16:31:2

14   can simply be asked:  Do you want to proceed here or do you want  16:31:2

15   to proceed there?  There's no reason not to do something like     16:31:3

16   that.                                                             16:31:3

17            THE COURT:  Okay.  All right.  Thank you very much.      16:31:3

18            Any response?                                            16:31:3

19       MR. HERMAN:  I have a very brief rebuttal.  And               16:31:3

20   ordinarily, Your Honor, I wouldn't even rise, but there are two   16:31:4

21   issues raised by learned counsel that are going to be on the      16:31:4

22   record and could possibly affect certification of this class.     16:31:5

23            And, I admit, I'm not the sharpest thorn on the          16:32:0

24   bush, but I don't think I've ever been strong-armed by my         16:32:0

25   colleagues at any time.  I have been strong-armed by legal        16:32:0
```

```
 1   decisions that don't go my way, and I've learned to live with        16:32:1
 2   those, including the issues of reliance, individual proof of         16:32:1
 3   loss and quantification, which has been the basis essentially        16:32:2
 4   for all consumer type cases failing in the recent past.  And it      16:32:2
 5   is one of the reasons why I guess it's my fault if I found it so      16:32:3
 6   difficult to negotiate any settlement over the two years period.     16:32:4
 7   Because I always assume that the attorneys on the other side of      16:32:5
 8   an issue know what I know, and I assume that they're brighter        16:32:5
 9   than I am, I just try to outwork them, and I hope I do.  But my      16:33:0
10   colleagues on the other side knew the law as to why consumer         16:33:0
11   cases were failing.  And I think that, when it comes to             16:33:1
12   certification, I will be able to make a substantial presence in      16:33:1
13   argument on behalf of consumers as to why the settlement that        16:33:2
14   was negotiated is a sound settlement.                                16:33:3
15            Secondly, there has been raised the issue of no            16:33:4
16   cooperation from liaison counsel regarding notice.  And, my          16:33:5
17   memory may be in error, but I'm not in doubt.  Your Honor            16:34:0
18   directed that -- and there's a transcript of it -- that we try       16:34:0
19   to get together on notice.  And we did.  Repeatedly.  But            16:34:1
20   learned counsel Getty's idea of notice and mine, for example --      16:34:1
21   in fact, the expert's idea of what a proper notice would be and      16:34:2
22   counsel for Merck's idea of what a proper notice would be            16:34:3
23   differs substantially from Mr. Getty.                                16:34:4
24            Mr. Getty's idea of notice was to argue his                16:34:4
25   Kentucky case in a notice.  It was not to give folks notice.        16:34:5
```

1    And, when Ms. Cabraser says, very honestly, we had a difficult

2    time dealing with notice, the negotiations lasted several weeks

3    on all issues, and we still did not get from Mr. Getty proper

4    language that could have been included in the notice.  And,

5    eventually, all the others of us agreed, including the expert,

6    as to what proper notice would be.  And I also believe -- and I

7    may be wrong about this -- but Your Honor was advised while we

8    were going through this process of notice.  So, for any failure

9    to cooperate with Counsel Getty the notice, I am liaison

10   counsel, I take responsibility for it.

11          If the settlement that took two years -- and it

12   did take two years and I don't think that I missed a single

13   negotiation session -- if it's not a good settlement, I'm sure

14   that that will come out.  But I'll say this:  I think that the

15   PSC did the best it could under prevailing law.

16          And I thank you, Your Honor.

17          THE COURT:  Thank you very much.

18          MR. GETTY:  Just briefly.

19          THE COURT:  Go ahead.  I'll give you an opportunity;

20   you came all the way from Kentucky.

21          MR. GETTY:  I appreciate it, Your Honor.  I always

22   appreciate you indulging me.

23          You asked the question, I think more than once

24   today, what's wrong in effect with letting these proceed

25   accordingly.  And we were the first filed action.  Federalism

1    contemplates parallel federal and state proceedings.  That's one                    16:36:5

2    of the things that is noted in the *Corrugated* case and other                      16:37:0

3    cases that deal with this thorny issue of an *all writs* order.                      16:37:0

4    That's exactly what we should do here.                                              16:37:0

5              We're focusing on, right now, what has been done,                         16:37:0

6    what harm has taken place to jeopardize this MDL settlement.                         16:37:1

7    None.  I've filed no objection.  I don't have to get to that                         16:37:2

8    point, if ever, unless I'm still in these proceedings and I                          16:37:2

9    haven't been excluded.  I haven't taken one step in the trial                        16:37:2

10   court.  All we're doing is waiting.  There's no present harm.                        16:37:3

11   An injunctive relief, this kind of extraordinary injunctive                          16:37:3

12   relief, requires that there has been some step, some evidence,                       16:37:4

13   like the lawyers who took inappropriate action in filing summary                     16:37:4

14   judgment motions or certifying a class.  My class was certified                      16:37:5

15   a long time ago, and it has been a longstanding case.  And at                        16:37:5

16   this point we should not do anything to interfere with the                           16:37:5

17   status quo.  The status quo, just as it is, should be                                16:38:0

18   maintained.  There should be no steps to interfere with what's                       16:38:0

19   going on in Kentucky, awaiting that decision from the supreme                        16:38:0

20   court.                                                                               16:38:1

21             And I have the greatest respect for Russ.  Of                             16:38:1

22   anybody that I've dealt with, I've spent most of my time dealing                     16:38:1

23   with him.  I have a disagreement, a point of disagreement with                       16:38:2

24   respect to the settlement.  That doesn't mean to say that I'm                        16:38:2

25   right.  He may be right in the end, you know, as these                               16:38:2

```
 1   proceedings play out.  And I want the Court to know that we
 2   simply have a -- lawyers have different views at times.  But
 3   he's always been a gentleman to me, and I've always tried to be
 4   a gentleman to him.
 5              Finally, with respect to the notice, we attempted
 6   in good faith to make some proposals.  We made them.  My
 7   recollection of what went on was, honestly, that we submitted a
 8   proposal.  We never really got any feedback other than:  No, we
 9   can't do that.  I wish we'd have had more dialog on that; maybe
10   we would have avoided some of where we are today.
11              THE COURT:  Anybody want to respond, I'll give you an
12   opportunity.
13              MS. CABRASER:  Your Honor, just briefly.  I'm sorry to
14   make this point.
15              First of all, this may seem like a unique
16   situation from Mr. Getty's perspective.  It is a recurring
17   scenario and it's been dealt with through the All Writs Act in
18   the *Diet Drugs* case.  Which, I didn't mention before, there was
19   a similar scenario.  There were, before the MDL were formed,
20   Washington state court-certified state court classes.  I
21   represented the Washington class.  Texas, New Jersey -- there
22   were six in all.  I don't remember the names of the others.  But
23   the most active were Washington, Texas and New Jersey.  And they
24   were actively proceeding.  They went through class
25   certification.  They were never decertified, unlike the Kentucky
```

1    action, and they were proceeding in parallel up until the

2    federal settlement was reached.  There was a litigation class

3    certified by Judge Bechtle for medical laundering; and, because

4    it wasn't a settlement class, he carved out those states.  This

5    was federalism in action.  But, when the settlement occurred, in

6    order to work, it had to be a nationwide settlement, and those

7    previously certified and still certified state classes had to be

8    included.  And, they were included; some willingly, some not so

9    willingly.  New Jersey, Washington, no problem, happy to be

10   there.  Texas, not so much.  Texas went up to the Third Circuit.

11   And, you know the outcome of that, the All Writs Act injunction

12   was affirmed.

13           So this is a scenario that has happened many times

14   before.  It happened regularly before CAFA, and VIOXX was on the

15   cusp of CAFA.  I remember Judge Higbee saying, when she was

16   deciding in favor of the class certification of the consumer

17   class:  This may be the last class certification opinion I ever

18   write.  So, in those days, the federal courts didn't assume they

19   had jurisdiction; they assumed they had no jurisdiction, the

20   cases couldn't be brought.  If they were removed, they were

21   remanded.  Similar to Kentucky.  But yet, when it came time for

22   the settlement approval process that had to be a multi-state or

23   nationwide process in order to work, this is what the courts

24   did.

25           And, unlike *Diet Drugs*, Kentucky has been no

1   stranger to the MDL.  Kentucky consumer act claims were included          16:41:3

2   in the purchase claims master class action complaint, document            16:41:3

3   790.  It was filed in the fall of 2005.  When we defended those           16:41:4

4   claims against motions to dismiss and motions to strike class             16:41:4

5   allegations, we were defending the Kentucky claims.                       16:41:5

6            When we were asking this Court to consider the                   16:41:5

7   idea of common questions or common issues, bellwethers for                16:41:5

8   consumer classes, we were talking about all of the states,                16:42:0

9   including Kentucky.  We were going to pick some states.                    16:42:0

10           When we look at what happened at the appellate                    16:42:0

11  courts to the VIOXX claims in no reliance states like Florida              16:42:1

12  and New Jersey, we see that those appellate courts, like                   16:42:1

13  Kentucky, have not been receptive to those classes.                        16:42:2

14           So, in light of all this that we literally are                    16:42:2

15  today, we are in a textbook situation for the application of the           16:42:2

16  All Writs Act to this case in this Court's discretion, if you              16:42:3

17  decide, Your Honor, that that is the better way to assist you in           16:42:3

18  aid of your jurisdiction to preside over an orderly process and            16:42:3

19  an orderly conclusion to the settlement approval process now               16:42:4

20  underway.                                                                  16:42:4

21           THE COURT:  All right.  Thanks.  I really have                    16:42:4

22  understood everything that's been said, folks.                            16:42:5

23           MR. BEISNER:  Your Honor, I was just going to say --              16:42:5

24           THE COURT:  I've been here awhile.  I saw it with                 16:42:5

25  Propulsid a whole generation ago.                                         16:42:5

1        MR. BEISNER:  I was going to say, Ms. Cabraser said          16:43:0

2    everything I was planning to say much better than I could.  So    16:43:0

3    thank you.                                                        16:43:0

4        THE COURT:  Thank you very much.                             16:43:0

5            (4:43 p.m., proceedings concluded.)                      16:43:0

6

7

8                        CERTIFICATE

9

10

11    I, Susan A. Zielie, Official Court Reporter, do hereby
     certify that the foregoing transcript is correct.

12

13                        /S/ SUSAN A. ZIELIE, FCRR

14                        _____

15                            Susan A. Zielie, FCRR

16

17

18

19

20

21

22

23

24

25

**$**

**$100** [1] - 30:19
**$39** [1] - 30:18

**/**

**/S** [1] - 42:13

**1**

**11** [2] - 1:5, 3:1
**13th** [1] - 15:10
**1440** [1] - 2:15
**150** [1] - 13:6
**15th** [1] - 12:25
**1657** [2] - 1:5, 3:5
**19** [1] - 14:6
**1900** [1] - 2:19
**1981** [1] - 24:23

**2**

**20,000** [1] - 21:9
**200,000** [2] - 19:12, 21:16
**20005** [1] - 2:16
**2005** [1] - 41:3
**2011** [1] - 17:16
**2013** [2] - 1:5, 3:1
**202.371.7410** [1] - 2:17
**2047** [1] - 17:16
**20th** [1] - 8:5
**23** [1] - 24:4
**231866** [1] - 17:16
**23rd** [1] - 12:25
**250** [1] - 2:19
**27** [2] - 11:9, 15:20
**275** [1] - 2:8
**29th** [1] - 2:9
**2nd** [1] - 12:18

**3**

**350** [1] - 13:6
**3650** [1] - 2:12
**3:30** [1] - 3:2

**4**

**40** [1] - 22:9
**40507** [1] - 2:20
**406** [1] - 1:20
**48** [1] - 7:9
**4:43** [1] - 42:5

**5**

**50** [4] - 5:7, 21:11,

22:9, 27:18
**50,000** [1] - 5:6
**500** [1] - 1:20
**504.524.3300** [1] - 2:13
**504.581.4892** [1] - 2:5
**504.589.7781** [1] - 1:22

**7**

**701** [1] - 2:12
**70113** [1] - 2:5
**70130** [1] - 1:21
**70139-3650** [1] - 2:12
**790** [1] - 41:3

**8**

**820** [1] - 2:4
**859.259.1909** [1] - 2:21
**8th** [1] - 12:21

**9**

**94111-3339** [1] - 2:9

**A**

**ability** [1] - 23:17
**able** [3] - 5:19, 34:7, 36:12
**absolutely** [1] - 34:17
**according** [1] - 19:10
**accordingly** [1] - 37:25
**act** [1] - 41:1
**Act** [17] - 8:3, 8:5, 9:18, 10:7, 11:23, 11:25, 14:2, 14:9, 14:11, 17:14, 19:1, 26:17, 26:19, 33:22, 39:17, 40:11, 41:16
**acted** [1] - 7:15
**action** [28] - 4:2, 4:6, 4:7, 4:17, 5:22, 8:11, 8:19, 9:11, 9:14, 11:8, 11:18, 12:5, 12:6, 14:2, 15:4, 15:5, 15:17, 16:22, 22:24, 25:1, 29:21, 34:18, 37:25, 38:13, 40:1, 40:5, 41:2
**Action** [1] - 8:5
**actions** [6] - 4:4, 4:5, 7:9, 8:10, 12:24, 15:3
**active** [1] - 39:23
**actively** [1] - 39:24

**activity** [4] - 12:8, 12:12, 13:5, 16:6
**actual** [1] - 22:20
**actuality** [1] - 28:3
**ad** [1] - 33:13
**add** [1] - 14:14
**added** [1] - 24:20
**addition** [1] - 32:24
**additional** [1] - 24:20
**address** [3] - 17:7, 17:11, 19:4
**administrator** [1] - 13:6
**admiralty** [1] - 14:24
**admit** [1] - 35:23
**admittedly** [1] - 23:13
**adopted** [1] - 33:5
**advertising** [2] - 33:12, 33:16
**advisability** [1] - 22:22
**advised** [1] - 37:7
**affect** [1] - 35:22
**affected** [1] - 21:9
**affirmed** [2] - 11:5, 40:12
**afternoon** [2] - 3:11, 3:20
**AG** [1] - 2:10
**age** [2] - 4:8, 16:23
**ago** [5] - 7:10, 8:6, 25:16, 38:15, 41:25
**agreed** [3] - 30:20, 30:22, 37:5
**agreement** [1] - 12:20
**ahead** [5] - 15:11, 32:20, 33:11, 35:5, 37:19
**aid** [2] - 8:10, 41:18
**aided** [1] - 1:24
**alike** [1] - 8:18
**allegations** [2] - 24:19, 24:25, 41:5
**allow** [2] - 17:8, 21:17
**allowed** [2] - 15:23, 16:24
**alluded** [2] - 23:19, 25:9
**ambiguous** [1] - 29:3
**amended** [1] - 7:21
**amount** [1] - 6:24
**analysis** [1] - 14:12
**Annie** [1] - 22:14
**answered** [1] - 34:25
**answers** [1] - 19:5
**Anti** [2] - 26:17, 26:19
**Anti-injunction** [2] - 26:17, 26:19
**appeal** [4] - 11:5, 13:20, 20:12, 20:13

**appeals** [3] - 28:8, 28:11, 29:1
**APPEARANCES** [1] - 2:1
**appearances** [2] - 3:7, 31:8
**appearing** [1] - 27:7
**appellate** [4] - 4:23, 11:12, 41:10, 41:12
**application** [1] - 41:15
**applied** [1] - 26:23
**appreciate** [4] - 17:7, 26:7, 37:21, 37:22
**approach** [2] - 18:8, 18:20
**appropriate** [5] - 5:20, 14:17, 25:3, 30:3, 31:4
**appropriately** [3] - 6:7, 21:5, 26:4
**approval** [17] - 6:2, 6:8, 7:25, 8:7, 8:12, 8:23, 9:17, 9:19, 11:4, 12:3, 12:9, 12:14, 15:8, 15:11, 18:18, 40:22, 41:19
**approve** [1] - 5:21
**approved** [7] - 6:9, 11:5, 15:16, 16:18, 18:23, 24:10, 30:13
**area** [1] - 28:24
**argue** [1] - 13:20, 19:23, 26:11, 36:24
**argued** [5] - 5:1, 18:1, 25:7, 29:9, 29:19
**arguing** [2] - 19:24, 22:3
**argument** [7] - 3:19, 17:9, 19:12, 19:22, 19:25, 22:7, 36:13
**arguments** [2] - 31:2, 34:9
**armed** [1] - 31:20, 35:24, 35:25
**Arps** [1] - 2:15
**arrest** [1] - 8:20
**Arthur** [1] - 16:23
**articulated** [1] - 26:10
**aspect** [1] - 4:11
**asserts** [1] - 24:18
**assist** [1] - 41:17
**assume** [6] - 4:9, 6:15, 6:18, 36:7, 36:8, 40:18
**assumed** [1] - 40:19
**AT** [1] - 1:3
**attack** [1] - 5:6
**attempted** [1] - 39:5
**attention** [1] - 11:10
**attorney** [1] - 5:12

**attorneys** [2] - 28:18, 36:7
**August** [2] - 12:21, 27:15
**authority** [3] - 22:22, 23:8, 25:13
**Avenue** [2] - 2:4, 2:15
**avoid** [3] - 8:12, 24:8, 25:17
**avoided** [1] - 39:10
**awaiting** [1] - 38:19
**aware** [2] - 18:11, 34:11
**awhile** [1] - 41:24

**B**

**background** [1] - 3:25
**balance** [1] - 34:16
**Baldwin** [1] - 8:14
**Baldwin-United** [1] - 8:14
**BARRIOS** [1] - 2:10
**Barrios** [2] - 2:11, 3:13
**barrios@bkc** [1] - 2:13
**barrios@bkc-law. com** [1] - 2:13
**based** [1] - 33:20
**basic** [1] - 12:1
**basis** [4] - 14:20, 22:15, 22:16, 36:3
**Battery** [1] - 2:8
**Bechtle** [1] - 40:3
**become** [1] - 17:23
**BEFORE** [1] - 1:10
**began** [1] - 12:18
**beginning** [3] - 5:4, 13:13, 13:16
**behalf** [5] - 3:9, 3:21, 4:14, 21:15, 36:13
**BEISNER** [7] - 2:14, 3:20, 5:25, 21:24, 24:15, 41:23, 42:1
**Beisner** [4] - 3:21, 21:24, 26:7, 34:1
**belief** [1] - 17:25
**bellwether** [1] - 32:1
**bellwethered** [1] - 5:5
**bellwethers** [1] - 41:7
**belonged** [1] - 8:15
**benefit** [1] - 15:24
**Bernstein** [1] - 2:8
**best** [2] - 28:1, 37:15
**better** [6] - 6:24, 10:19, 22:11, 22:15, 32:23, 34:4, 41:17, 42:2
**between** [3] - 12:25,

25:6, 25:10
**beyond** [1] - 14:16
**blinked** [1] - 31:22
**boilerplate** [1] - 8:2
**bound** [1] - 15:13
**brevity** [1] - 26:7
**brief** [3] - 18:6, 21:25, 35:19
**briefed** [1] - 4:25
**briefly** [4] - 12:16, 26:5, 37:18, 39:13
**briefs** [3] - 7:4, 18:17, 22:9
**brighter** [1] - 36:8
**brings** [1] - 11:10
**brought** [4] - 4:13, 7:10, 9:5, 40:20
**burden** [1] - 24:9
**bush** [1] - 35:24

**C**

**CA** [1] - 2:9
**CABRASER** [7] - 2:7, 7:19, 9:7, 11:14, 13:10, 15:6, 39:13
**Cabraser** [16] - 2:8, 3:13, 3:14, 7:20, 19:6, 19:14, 20:5, 20:15, 22:8, 23:19, 25:9, 25:16, 26:18, 28:2, 37:1, 42:1
**Cabraser's** [1] - 26:6
**CAFA** [3] - 12:2, 40:14, 40:15
**campaign** [2] - 12:17, 12:22
**Campo** [1] - 23:1
**cannot** [1] - 18:8
**carrying** [1] - 3:18
**carved** [1] - 40:4
**Case** [2] - 1:5, 3:9
**case** [63] - 3:4, 4:6, 4:11, 4:13, 4:19, 4:21, 5:19, 6:3, 6:22, 8:14, 8:15, 9:1, 9:2, 9:6, 9:11, 9:13, 9:15, 10:17, 10:19, 15:15, 15:20, 15:21, 17:25, 19:7, 19:8, 19:9, 19:23, 22:4, 22:23, 22:25, 23:1, 23:4, 23:13, 23:24, 24:16, 24:17, 24:23, 24:25, 25:14, 27:2, 28:2, 28:3, 28:7, 28:16, 28:18, 28:22, 31:24, 31:25, 32:21, 33:6, 33:20, 34:4, 34:11, 34:20, 35:2, 35:7,

35:10, 36:25, 38:2, 38:15, 39:18, 41:16
**cases** [25] - 5:3, 5:4, 5:6, 5:9, 5:13, 5:14, 5:15, 7:2, 8:13, 22:8, 22:9, 22:10, 22:20, 27:17, 28:15, 28:23, 32:1, 32:2, 33:20, 34:3, 35:1, 36:4, 36:11, 38:3, 40:20
**cast** [1] - 34:20
**Casteix** [1] - 2:11
**census** [1] - 6:12
**Center** [1] - 2:19
**century** [1] - 8:5
**certain** [3] - 6:20, 20:1, 35:11
**certainly** [2] - 10:11, 21:2
**certainty** [1] - 20:19
**CERTIFICATE** [1] - 42:8
**certification** [10] - 4:23, 4:24, 10:9, 10:20, 18:20, 35:22, 36:12, 39:25, 40:16, 40:17
**certified** [21] - 6:25, 9:22, 10:4, 10:13, 11:11, 19:23, 20:23, 20:24, 27:23, 28:4, 28:23, 28:24, 28:25, 33:7, 34:6, 38:14, 39:20, 40:3, 40:7
**certifies** [1] - 35:3
**certify** [2] - 28:10, 42:11
**certifying** [2] - 9:23, 38:14
**cetera** [1] - 13:1
**chance** [3] - 22:4, 33:8, 34:3
**changed** [2] - 3:23, 8:17
**cheated** [1] - 31:14
**chest** [1] - 30:5
**Chinese** [3] - 14:6, 14:10, 26:11, 33:20
**choices** [1] - 15:12
**chronic** [1] - 4:8
**chronology** [1] - 9:9
**Chrysler** [1] - 9:8
**Circuit** [8] - 10:6, 11:5, 22:23, 23:1, 24:23, 25:3, 26:21, 40:10
**circumstance** [1] - 22:16
**circumstances** [4] - 23:12, 23:14, 30:3, 34:10

**cited** [1] - 14:15
**civilian** [1] - 17:6
**civility** [1] - 27:6
**civilly** [1] - 27:18
**claim** [17] - 12:20, 13:7, 13:14, 15:12, 17:22, 28:24, 29:3, 29:4, 30:6, 30:23, 30:24, 32:2, 32:3, 32:24, 34:22
**claimant** [2] - 21:13, 21:19
**claimants** [3] - 6:23, 21:16
**claims** [16] - 4:10, 6:16, 13:4, 13:5, 13:16, 13:17, 24:18, 24:20, 24:24, 30:4, 30:19, 41:1, 41:2, 41:4, 41:5, 41:11
**clary** [1] - 8:20
**Class** [1] - 8:4
**class** [85] - 3:12, 4:23, 4:24, 5:22, 6:11, 7:9, 7:20, 8:9, 8:11, 8:15, 8:19, 8:23, 9:14, 9:22, 9:24, 10:3, 10:5, 10:9, 10:10, 10:12, 10:13, 10:15, 10:16, 10:20, 10:25, 11:7, 11:8, 11:11, 11:12, 11:15, 11:17, 11:18, 12:11, 13:14, 13:22, 13:25, 14:2, 14:18, 15:3, 15:4, 15:9, 15:14, 15:17, 15:23, 16:2, 16:3, 16:4, 16:9, 16:12, 16:22, 19:12, 19:13, 19:16, 20:6, 20:23, 21:19, 21:20, 22:24, 24:13, 25:6, 27:25, 28:3, 28:10, 30:22, 31:18, 32:7, 32:8, 33:7, 34:6, 35:3, 35:22, 38:14, 39:21, 39:24, 40:2, 40:4, 40:16, 40:17, 41:2, 41:4
**classes** [8] - 9:15, 15:2, 20:9, 29:15, 39:20, 40:7, 41:8, 41:13
**clause** [1] - 26:19
**clear** [3] - 22:20, 23:23, 32:21
**clearly** [3] - 26:16, 29:3, 32:24
**CLERK** [1] - 3:5
**client** [1] - 34:15

**clients** [6] - 5:21, 19:10, 19:13, 20:14, 26:15, 27:25
**close** [1] - 10:17
**co** [3] - 3:12, 18:18, 19:13
**co-class** [2] - 3:12, 19:13
**co-counsel** [1] - 18:18
**cold** [1] - 20:18
**collapses** [1] - 20:17
**colleague** [2] - 18:19, 19:6
**colleagues** [4] - 17:5, 18:1, 35:25, 36:10
**College** [1] - 33:6
**Coming** [1] - 26:2
**commences** [1] - 12:11
**comment** [2] - 19:5, 21:6
**comments** [3] - 3:24, 17:4, 26:6
**committee** [1] - 5:16
**common** [4] - 8:2, 17:19, 41:7
**compare** [1] - 29:3
**competing** [3] - 11:17, 15:3, 29:15
**competition** [1] - 15:7
**complaint** [3] - 24:17, 41:2
**completion** [1] - 11:3
**complex** [1] - 8:18
**Complex** [1] - 16:19
**comporealized** [1] - 18:3
**comprehensive** [2] - 14:12, 14:15
**Computer** [1] - 1:24
**Computer-aided** [1] - 1:24
**concept** [4] - 14:24, 17:11, 17:17, 26:11
**conceptual** [8] - 17:17, 17:21, 17:22, 17:24, 18:2, 18:15, 26:10, 26:15
**concluded** [1] - 42:5
**conclusion** [1] - 41:19
**condition** [1] - 4:9
**conduct** [1] - 28:17
**confidence** [2] - 26:3, 27:21
**conflict** [7] - 22:18, 22:19, 22:21, 22:24, 23:3, 24:8
**confuse** [1] - 16:12
**confused** [2] - 29:13, 29:14

**confusing** [1] - 16:4
**confusion** [6] - 23:7, 24:8, 25:18, 29:9, 29:12, 29:19
**connection** [1] - 12:5
**consider** [2] - 28:15, 41:6
**consideration** [1] - 14:4
**considering** [1] - 5:1
**consistent** [3] - 23:19, 33:3, 35:4
**consumer** [5] - 5:14, 5:15, 7:20, 11:18, 12:24, 15:9, 18:8, 24:18, 27:22, 28:24, 29:3, 31:24, 31:25, 36:4, 36:10, 40:16, 41:1, 41:8
**consumers** [2] - 28:1, 36:13
**contain** [3] - 8:1, 8:7, 9:17
**Container** [2] - 24:22, 25:5
**contemplates** [1] - 38:1
**contemporary** [1] - 14:15
**context** [1] - 26:12
**continue** [4] - 13:24, 15:2, 15:4, 27:7
**continued** [2] - 7:11, 28:25
**continues** [1] - 12:12
**continuing** [2] - 11:19, 23:22
**contrary** [1] - 19:24
**converged** [1] - 9:15
**convicted** [1] - 27:17
**cooperate** [1] - 37:9
**cooperation** [2] - 29:22, 36:16
**Corbin** [1] - 33:6
**Corp** [1] - 9:9
**corporeal** [1] - 18:22
**corporealized** [1] - 17:23
**correct** [2] - 10:7, 42:11
**Corrugated** [4] - 24:22, 25:5, 26:21, 38:2
**Counsel** [2] - 3:7, 37:9
**counsel** [20] - 3:12, 7:17, 9:20, 11:10, 11:16, 11:21, 16:9, 18:18, 19:11, 19:13, 19:19, 25:11, 25:12, 29:22, 31:20, 35:21,

36:16, 36:20, 36:22, 37:10
**counsel's** [2] - 11:15, 13:23
**countries** [1] - 5:8
**country** [4] - 5:7, 6:10, 13:9, 28:23
**couple** [3] - 7:10, 7:11, 17:4
**course** [6] - 5:8, 5:13, 8:6, 10:25, 23:3, 31:2
**court** [46] - 4:13, 4:20, 4:21, 4:23, 4:25, 5:1, 5:3, 5:15, 7:7, 7:12, 7:15, 8:10, 8:16, 9:2, 9:5, 9:6, 9:13, 10:7, 10:21, 10:22, 11:12, 11:22, 16:18, 19:22, 20:3, 20:11, 20:12, 22:11, 23:5, 23:13, 23:20, 25:1, 27:13, 27:14, 28:8, 28:11, 28:12, 29:1, 34:8, 34:18, 34:20, 38:10, 38:20, 39:20
**COURT** [22] - 1:1, 3:3, 3:7, 3:22, 6:1, 9:1, 11:10, 13:8, 14:19, 17:2, 21:23, 24:12, 25:20, 25:24, 31:2, 35:17, 37:17, 37:19, 39:11, 41:21, 41:24, 42:4
**Court** [40] - 1:19, 3:16, 3:17, 5:11, 5:21, 6:2, 7:25, 10:1, 12:2, 16:10, 17:13, 18:11, 18:24, 18:25, 23:14, 24:2, 24:3, 24:23, 25:22, 25:25, 26:3, 26:13, 27:3, 28:14, 29:7, 29:10, 30:3, 31:8, 31:10, 32:14, 32:16, 32:25, 33:18, 34:9, 34:21, 35:3, 35:5, 39:1, 41:6, 42:10
**court's** [4] - 8:10, 10:11, 10:23, 19:16
**Court's** [10] - 11:10, 11:19, 12:13, 14:17, 22:21, 25:13, 29:2, 32:17, 32:22, 41:16
**court-approved** [1] - 16:18
**court-certified** [1] - 39:20
**courthouse** [1] - 17:8
**courts** [13] - 8:18,

9:23, 14:13, 14:14, 14:15, 22:13, 23:11, 23:16, 40:18, 40:23, 41:11, 41:12
**cover** [1] - 17:4
**craft** [1] - 23:17
**created** [4] - 5:2, 9:2, 9:12, 32:20
**creating** [1] - 7:8
**credit** [1] - 3:16
**criminally** [1] - 27:18
**curtain** [1] - 24:4
**cusp** [1] - 40:15

## D

**daily** [1] - 4:9
**danger** [1] - 27:12
**date** [1] - 6:7
**Davis** [1] - 3:13
**DAVIS** [1] - 2:3
**Dawn** [1] - 3:13
**DAWN** [1] - 2:10
**day-to-day** [2] - 11:20, 12:5
**daylight** [1] - 25:6
**days** [5] - 4:3, 12:2, 13:11, 13:13, 40:18
**DC** [1] - 2:16
**deal** [6] - 16:10, 16:15, 20:6, 31:12, 35:9, 38:3
**dealing** [2] - 37:2, 38:22
**dealt** [2] - 38:22, 39:17
**deceived** [1] - 31:14
**December** [1] - 15:10
**decertified** [2] - 11:12, 39:25
**decide** [1] - 41:17
**deciding** [2] - 24:9, 40:16
**decision** [8] - 9:10, 15:22, 20:23, 23:5, 24:22, 27:16, 32:18, 38:19
**decisions** [2] - 22:17, 36:1
**decree** [1] - 11:1
**defeated** [1] - 34:5
**defendant** [2] - 4:19, 21:25
**defended** [1] - 41:3
**defending** [1] - 41:5
**defined** [2] - 10:24, 12:11
**Del** [1] - 23:1
**demands** [2] - 25:2
**denied** [1] - 28:9
**deny** [1] - 26:4

**deposited** [1] - 18:24
**depositions** [1] - 18:7
**derail** [1] - 7:9
**description** [2] - 24:13
**despite** [1] - 33:10
**determine** [1] - 10:14
**detriment** [1] - 32:21
**diagnosed** [1] - 4:8
**dialog** [1] - 39:9
**Diet** [4] - 8:15, 22:23, 39:18, 40:25
**difference** [1] - 25:10
**differences** [2] - 24:13, 24:15
**different** [5] - 14:4, 17:19, 23:14, 34:20, 39:2
**differs** [1] - 36:23
**difficult** [2] - 36:6, 37:1
**difficulty** [1] - 7:8
**diminish** [1] - 18:21
**Dinner** [1] - 26:3
**direct** [1] - 12:22
**directed** [1] - 36:18
**direction** [1] - 4:4
**directs** [1] - 20:12
**disagreement** [2] - 38:23
**discovery** [1] - 18:7
**discretion** [8] - 14:17, 26:4, 26:14, 32:14, 32:18, 33:19, 33:21, 41:16
**discretionary** [1] - 33:1
**discussions** [5] - 9:13, 18:10, 18:11, 18:12
**dismiss** [1] - 41:4
**dispatch** [1] - 5:3
**disposed** [1] - 19:1
**disrupt** [2] - 10:22, 16:24
**disruption** [1] - 8:12
**distinction** [2] - 17:19, 25:17
**distinguish** [1] - 9:6
**DISTRICT** [3] - 1:1, 1:2, 1:11
**district** [4] - 4:20, 10:7, 15:4, 20:11
**divorced** [1] - 18:8
**document** [1] - 41:2
**documentation** [1] - 13:17
**dollar** [1] - 16:25
**done** [12] - 3:18, 14:21, 21:14, 27:4,

27:5, 27:9, 29:2, 33:7, 33:10, 34:2, 34:4, 38:5
**dormant** [1] - 34:19
**doubt** [1] - 36:17
**down** [1] - 4:22
**drafted** [1] - 29:24
**drive** [1] - 33:24
**drug** [1] - 6:20
**Drugs** [4] - 8:15, 22:23, 39:18, 40:25
**drywall** [1] - 9:18, 18:13, 28:19
**Drywall** [6] - 14:7, 14:10, 17:12, 25:14, 26:11, 33:20
**due** [2] - 7:23, 20:22
**during** [2] - 5:2, 8:23

## E

**earliest** [1] - 27:20
**early** [2] - 4:8, 13:11
**EASTERN** [1] - 1:2
**effect** [2] - 18:11, 37:24
**efficacy** [1] - 29:4
**Eighth** [1] - 23:1
**either** [3] - 7:18, 12:5, 22:7
**ELDON** [1] - 1:10
**elect** [1] - 20:20
**eliminate** [1] - 23:2
**Elizabeth** [4] - 3:12, 3:18, 7:18, 7:19
**ELIZABETH** [1] - 2:7
**embarrassing** [1] - 3:15
**embryo** [1] - 14:25
**enactment** [1] - 8:4
**encourage** [1] - 23:17
**encourages** [1] - 18:12
**end** [5] - 11:9, 15:15, 26:20, 27:15, 38:25
**enforce** [1] - 10:7
**engage** [1] - 12:12
**engaging** [1] - 12:8
**enjoin** [4] - 7:6, 8:8, 11:13, 33:16
**enjoined** [1] - 27:4
**enjoining** [4] - 11:16, 11:18, 23:9, 34:14
**enjoyed** [1] - 27:6
**entered** [2] - 30:2, 34:12
**entertain** [1] - 7:25
**entire** [1] - 17:13
**entirely** [1] - 10:7
**entitled** [1] - 6:19

**equitable** [2] - 21:7, 26:24
**equitably** [1] - 32:20
**equities** [3] - 28:5, 33:22, 34:16
**equity** [1] - 21:17
**equivalent** [1] - 8:20
**era** [1] - 8:15
**error** [1] - 36:17
**ESQ** [6] - 2:3, 2:3, 2:7, 2:10, 2:14, 2:18
**essentially** [4] - 9:14, 17:15, 33:24, 36:3
**established** [4] - 8:6, 8:16, 14:1, 14:25
**et** [1] - 13:1
**ethically** [1] - 31:18
**event** [4] - 4:12, 5:9, 20:24, 24:16
**eventually** [3] - 5:5, 5:18, 37:5
**evidence** [2] - 30:7, 38:12
**exactly** [5] - 27:2, 29:16, 29:23, 38:4
**example** [6] - 9:18, 11:22, 12:7, 14:6, 30:9, 36:20
**Excel** [1] - 33:6
**excellent** [1] - 19:20
**except** [2] - 6:12, 19:25
**exception** [1] - 5:23
**exclude** [1] - 35:5
**excluded** [9] - 7:1, 27:8, 31:11, 31:16, 32:9, 32:19, 33:11, 34:23, 38:9
**excluding** [1] - 32:15
**exclusive** [1] - 8:11
**exercise** [8] - 14:17, 16:7, 23:2, 26:3, 26:14, 26:24, 32:18, 33:21
**exercised** [1] - 25:14
**exist** [1] - 30:15
**existence** [1] - 22:24
**experience** [3] - 14:9, 17:9, 30:8
**expert** [1] - 37:5
**expert's** [1] - 36:21
**explicit** [1] - 22:7
**extensive** [1] - 28:13
**extent** [1] - 16:22
**extraordinary** [4] - 27:10, 28:6, 34:12, 38:11

## F

faced [1] - 23:12
fact [10] - 9:1, 9:7, 11:11, 11:12, 27:22, 29:9, 30:4, 35:11, 36:21
factor [1] - 24:14
facts [3] - 24:2, 34:11, 34:17
factual [2] - 16:17, 24:19
failing [2] - 36:4, 36:11
failure [1] - 37:8
fair [2] - 16:16, 26:15
fairly [1] - 25:15
Fairness [1] - 8:5
fairness [1] - 31:3
faith [1] - 39:6
fall [1] - 41:3
FALLON [1] - 1:10
familiar [1] - 8:14
fault [1] - 36:5
favor [2] - 28:5, 40:16
FCRR [3] - 1:19, 42:13, 42:14
features [1] - 19:16
federal [16] - 4:20, 8:10, 9:5, 10:10, 10:11, 10:12, 10:22, 11:4, 11:7, 11:8, 14:13, 16:19, 22:13, 38:1, 40:2, 40:18
federalism [2] - 37:25, 40:5
federally [1] - 10:13
federally-certified [1] - 10:13
feedback [1] - 39:8
felt [3] - 5:20, 6:6, 17:21
Fen [1] - 27:17
few [2] - 17:1, 25:16
Fifth [3] - 24:23, 25:2, 26:21
figure [1] - 21:15
figures [1] - 5:20
file [3] - 13:17, 30:6, 33:15
filed [20] - 4:17, 4:18, 5:9, 6:4, 7:21, 9:2, 9:12, 9:13, 9:21, 13:21, 18:17, 27:13, 28:8, 28:9, 28:19, 37:25, 38:7, 41:3
filing [2] - 11:21, 38:13
final [3] - 15:10, 30:12, 31:3

finally [1] - 39:5
Financial [1] - 2:19
finishing [1] - 26:7
firms [1] - 12:22
first [11] - 3:14, 5:4, 19:7, 26:9, 27:19, 31:15, 31:23, 34:8, 35:7, 37:25, 39:15
five [2] - 5:4, 22:21
Flom [1] - 2:15
Floor [1] - 2:9
Florida [1] - 41:11
focus [2] - 12:7, 26:13
focusing [1] - 38:5
folks [6] - 20:10, 20:14, 21:3, 21:4, 36:25, 41:22
follow [1] - 26:5
FOR [1] - 1:1
foregoing [1] - 42:11
foreign [1] - 5:8
forging [1] - 32:20
form [4] - 12:20, 14:3, 14:4, 14:5
formed [1] - 39:19
forms [2] - 13:7, 15:13
forth [2] - 5:6, 9:10
forward [3] - 12:2, 13:15, 29:8
four [2] - 5:4, 21:25
fours [1] - 10:18
framework [1] - 18:8
Francisco [1] - 2:9
frankly [4] - 30:1, 31:16, 31:22
fraud [4] - 27:22, 32:24, 33:2, 34:22
Frequently [1] - 12:20
front [1] - 27:7
fully [3] - 14:25, 32:10, 32:11
functional [1] - 8:20
fund [2] - 26:10, 30:19
fundamentally [1] - 24:17
funds [1] - 18:24
futility [1] - 16:8
future [1] - 16:23

## G

general [1] - 33:3
generalized [1] - 33:1
generally [1] - 27:12
generals [1] - 5:12
generation [1] - 41:25
gentleman [2] - 39:3, 39:4
Geographic [1] - 13:1

Georgia [13] - 9:13, 9:14, 9:20, 9:23, 10:2, 10:4, 10:9, 10:12, 10:15, 10:21, 11:3, 11:6, 28:3
Georgians [1] - 15:20
Getty [7] - 2:18, 3:9, 19:11, 19:19, 36:23, 37:3, 37:9
GETTY [7] - 2:18, 3:9, 25:22, 25:25, 31:7, 37:18, 37:21
Getty's [4] - 21:15, 36:20, 36:24, 39:16
gist [2] - 22:3, 22:10
given [7] - 13:19, 16:4, 18:18, 28:20, 31:7, 34:10, 34:22
global [2] - 5:19, 23:21
grand [1] - 15:20
granted [4] - 4:23, 6:2, 6:7, 28:10
granting [1] - 28:6
great [1] - 17:9
greatest [1] - 38:21
ground [1] - 17:4
grounds [3] - 26:23, 34:17, 35:5
group [1] - 35:13
Group [1] - 2:18
guess [4] - 19:16, 27:19, 34:24, 36:5
guidelines [1] - 16:19

## H

handle [1] - 29:12
Hanlon [11] - 8:14, 9:8, 9:11, 9:15, 9:16, 9:25, 10:17, 15:15, 15:20, 28:2
happy [1] - 40:9
harm [5] - 26:25, 27:12, 30:11, 38:6, 38:10
hate [1] - 29:16
HB [1] - 1:20
head [2] - 15:7
head-to-head [1] - 15:7
headed [1] - 5:16
hear [2] - 7:16, 34:19
heard [1] - 29:13
hearing [4] - 15:10, 16:13, 18:20, 31:3
hearings [1] - 12:3
heart [2] - 5:5, 33:24
Heimann [1] - 2:8
held [1] - 10:6

help [1] - 6:18
helped [3] - 4:9, 6:15, 30:8
helpful [1] - 35:12
hereby [1] - 42:10
HERMAN [4] - 2:3, 3:11, 17:3, 35:19
herman [1] - 2:4
Herman [3] - 2:4, 3:12, 14:8
Herman's [2] - 26:6, 31:17
Higbee [1] - 40:15
highest [1] - 14:9
highly [1] - 15:7
himself [1] - 4:14
history [4] - 4:22, 14:13, 21:10, 28:13
honestly [3] - 21:3, 37:1, 39:7
Honor [54] - 3:12, 3:14, 3:20, 7:19, 9:7, 9:19, 11:2, 11:14, 11:23, 12:15, 13:4, 14:3, 15:6, 16:13, 17:3, 17:17, 17:25, 18:1, 18:13, 19:1, 19:5, 19:7, 20:8, 21:1, 21:17, 21:18, 21:22, 21:24, 22:2, 22:6, 22:18, 22:19, 23:3, 23:10, 23:12, 24:9, 24:15, 24:21, 25:4, 25:8, 25:13, 25:19, 25:22, 27:7, 30:13, 33:6, 35:20, 36:17, 37:7, 37:16, 37:21, 39:13, 41:17, 41:23
Honor's [4] - 8:14, 12:20, 14:11, 20:22
HONORABLE [1] - 1:10
Hood [1] - 34:8
hope [2] - 15:9, 36:9
hoped [1] - 27:15
hopeful [1] - 27:20
hopefully [2] - 27:8, 34:21
horrendous [1] - 32:19
hours [1] - 16:16
human [1] - 14:25
hundreds [2] - 18:6

## I

idea [6] - 17:21, 36:20, 36:21, 36:22, 36:24, 41:7

identification [1] - 22:20
ignored [2] - 9:19, 9:20, 29:23
illness [1] - 6:14
immensely [1] - 27:6
implications [1] - 34:25
implicit [1] - 22:7
importance [1] - 23:11
important [4] - 18:22, 23:15, 23:18, 28:14
IN [2] - 1:1, 1:5
inappropriate [4] - 28:17, 28:20, 30:11, 38:13
inchoate [1] - 16:22
incidents [1] - 5:12
included [6] - 5:23, 14:5, 37:4, 40:8, 41:1
includes [1] - 6:11
including [5] - 8:21, 32:11, 36:2, 37:5, 41:9
incorporeal [2] - 17:22, 17:23
incorporeals [2] - 17:20
indeed [2] - 7:21, 9:23
indicates [1] - 20:8
indicative [1] - 13:14
individual [2] - 10:13, 36:2
individually [1] - 11:7
individuals [1] - 35:13
indulging [1] - 37:22
initial [1] - 30:19
injunction [2] - 10:8, 11:23, 11:25, 25:11, 25:12, 26:17, 26:19, 30:10, 40:11
injunctions [1] - 23:20
injunctive [4] - 27:11, 33:23, 38:11
injury [8] - 4:10, 5:5, 30:4, 30:6, 30:7, 32:2, 32:3
input [2] - 3:17, 29:24
installation [1] - 15:24
instance [2] - 32:7, 34:8
instances [2] - 25:13, 26:22
instant [1] - 23:6
interest [4] - 13:13, 13:15, 30:21, 30:22
interested [1] - 13:16
interfere [3] - 12:13, 38:16, 38:18

**interfering** [2] - 8:9, 11:18
**internet** [1] - 12:17
**intersection** [1] - 4:2
**intimately** [1] - 9:10
**invariably** [1] - 22:13
**involved** [2] - 6:17, 14:8
**involves** [1] - 6:12
**involving** [4] - 5:11, 27:16, 28:18, 33:6
**irrelevant** [1] - 24:16
**issuance** [1] - 23:20
**issue** [17] - 14:19, 14:21, 14:24, 15:1, 15:3, 17:13, 17:14, 18:25, 21:18, 23:12, 32:25, 33:21, 34:13, 34:14, 36:8, 36:15, 38:3
**issued** [3] - 20:1, 28:16, 34:15
**issues** [7] - 14:12, 18:5, 19:4, 35:21, 36:2, 37:3, 41:7
**itself** [2] - 26:21, 27:11

**J**

**James** [2] - 4:7, 11:16
**jeopardize** [1] - 38:6
**Jersey** [4] - 39:21, 39:23, 40:9, 41:12
**Jessica** [1] - 3:9
**job** [1] - 3:18
**JOHN** [1] - 2:14
**John** [1] - 3:20
**john** [1] - 21:24
**john.beisner@ skadden.com** [1] - 2:16
**Judge** [3] - 34:8, 40:3, 40:15
**judge** [1] - 4:20
**JUDGE** [1] - 1:11
**judges** [1] - 17:8
**judgment** [4] - 28:9, 28:20, 34:5, 38:14
**jurisdiction** [21] - 4:20, 8:11, 8:21, 8:22, 9:21, 10:3, 10:11, 10:22, 10:24, 11:19, 12:13, 14:18, 17:13, 18:25, 23:2, 23:11, 34:10, 40:19, 41:18
**jurisdictional** [1] - 14:12
**justify** [1] - 27:9

**K**

**Katz** [1] - 2:4
**Kentucky** [66] - 2:18, 3:10, 4:6, 4:7, 4:13, 4:14, 4:16, 4:19, 4:21, 4:25, 5:1, 6:4, 6:22, 7:3, 7:11, 7:15, 12:5, 13:8, 13:10, 15:4, 15:17, 15:18, 16:3, 16:15, 16:22, 19:8, 19:20, 19:22, 20:1, 20:11, 20:12, 20:17, 21:2, 22:4, 23:5, 23:24, 24:18, 25:7, 27:9, 27:25, 29:21, 31:9, 31:21, 32:8, 32:15, 32:17, 32:21, 32:25, 33:7, 33:13, 33:17, 34:15, 35:2, 35:3, 35:10, 35:12, 36:25, 37:20, 38:19, 39:25, 40:21, 40:25, 41:1, 41:5, 41:9, 41:13
**Kentucky's** [1] - 32:5
**kind** [5] - 26:12, 26:14, 27:10, 34:11, 38:11
**Kingsdorf** [1] - 2:11
**known** [1] - 6:21
**knows** [3] - 20:4, 21:12, 25:23
**KY** [1] - 2:20

**L**

**LA** [2] - 2:5, 2:12
**laedcourtreporter@ gmail.com** [1] - 1:22
**language** [2] - 16:14, 37:4
**large** [1] - 21:12
**larger** [1] - 6:24
**last** [4] - 3:23, 25:8, 33:14, 40:17
**lasted** [1] - 37:2
**latch** [1] - 15:25
**laundering** [1] - 40:3
**Law** [2] - 2:18, 17:16
**law** [7] - 12:22, 17:18, 17:19, 21:7, 24:16, 36:10, 37:15
**law.com** [1] - 2:13
**laws** [1] - 4:16
**lawsuits** [1] - 5:9
**lawyer** [3] - 17:6, 28:19, 33:14
**lawyers** [4] - 17:10, 27:17, 38:13, 39:2
**ldavis@hhkc.com** [1]

- 2:6
**leaped** [1] - 20:2
**learn** [1] - 13:23
**learned** [5] - 19:11, 19:19, 35:21, 36:1, 36:20
**learning** [1] - 17:9
**least** [5] - 13:22, 14:24, 20:19, 21:7, 21:9
**led** [1] - 18:9
**left** [2] - 20:17, 20:25
**legal** [1] - 35:25
**legitimate** [4] - 26:25, 30:13, 30:14, 32:13
**length** [1] - 23:15
**Lenny** [1] - 3:13
**LEONARD** [1] - 2:3
**letting** [1] - 37:24
**level** [2] - 13:13, 14:9
**Lexington** [2] - 2:19, 2:20
**LIABILITY** [1] - 1:5
**Liability** [1] - 3:5
**liaison** [4] - 29:22, 31:20, 36:16, 37:9
**Lieff** [1] - 2:8
**lifted** [1] - 24:4
**light** [2] - 34:20, 41:14
**likely** [2] - 10:18, 15:7
**Liles** [1] - 23:1
**line** [1] - 24:22
**listened** [1] - 6:5
**literally** [2] - 18:6, 41:14
**literature** [1] - 14:22
**litigants** [1] - 26:25
**litigate** [1] - 23:22
**litigated** [4] - 22:25, 23:4, 28:6, 34:4
**Litigation** [2] - 3:6, 16:19
**LITIGATION** [1] - 1:5
**litigation** [13] - 6:12, 8:19, 11:19, 14:8, 15:5, 21:10, 24:5, 26:12, 28:13, 33:24, 34:7, 34:15, 40:2
**live** [1] - 36:1
**LLC** [1] - 2:4
**LLP** [3] - 2:8, 2:11, 2:15
**locates** [1] - 35:13
**longstanding** [1] - 38:15
**look** [8] - 5:18, 24:21, 27:3, 28:15, 30:21, 34:17, 34:21, 41:10
**Look** [1] - 26:2

**looking** [1] - 17:5
**lose** [1] - 23:16
**loss** [1] - 36:3
**lost** [1] - 28:9
**LOUISIANA** [2] - 1:2, 3:1
**Louisiana** [1] - 1:21

**M**

**mail** [1] - 12:22
**main** [1] - 32:25
**Main** [1] - 2:19
**maintain** [1] - 11:25
**maintained** [1] - 38:18
**major** [3] - 3:19, 27:16
**managed** [1] - 10:20
**mandamus** [2] - 28:11, 28:12
**Manual** [1] - 16:19
**market** [1] - 4:13
**master** [2] - 24:17, 41:2
**matter** [9] - 5:1, 8:1, 8:6, 13:12, 13:21, 13:22, 14:1, 14:16, 18:4
**matters** [3] - 5:11, 21:2
**MDL** [34] - 1:5, 3:5, 4:2, 4:4, 4:17, 4:18, 5:2, 5:16, 5:22, 6:11, 7:2, 7:3, 7:6, 7:8, 8:18, 9:2, 9:12, 9:21, 12:23, 14:13, 17:16, 18:7, 20:16, 21:2, 21:4, 21:10, 23:11, 23:16, 28:4, 31:20, 38:6, 39:19, 41:1
**MDL's** [1] - 4:3
**MDL-related** [1] - 12:23
**Meagher** [1] - 2:15
**mean** [6] - 23:7, 27:2, 30:5, 30:20, 34:10, 38:24
**meaning** [1] - 4:4
**means** [1] - 35:2
**meantime** [1] - 27:24
**mechanisms** [1] - 35:9
**medical** [1] - 40:3
**meeting** [2] - 18:14, 18:16
**member** [5] - 10:13, 10:24, 11:17, 13:15, 13:25
**members** [9] - 8:8, 8:22, 11:6, 12:10, 15:17, 16:5, 16:12,

19:12, 19:15
**membership** [1] - 15:19
**memory** [1] - 36:17
**mention** [2] - 12:15, 39:18
**Merck** [12] - 2:14, 3:21, 4:18, 14:4, 20:12, 21:25, 23:7, 25:10, 28:8, 28:10, 31:19, 35:7
**Merck's** [1] - 36:22
**mere** [2] - 18:21, 22:24
**merit** [1] - 6:6
**met** [1] - 5:18
**might** [3] - 6:7, 10:9, 32:4
**militate** [1] - 28:5
**million** [2] - 30:18, 30:19
**mind** [1] - 21:7
**minds** [2] - 18:14, 18:17
**mine** [1] - 14:23, 36:20
**Minnesota** [1] - 5:23
**minor** [2] - 24:16, 25:9
**minutes** [1] - 22:21
**misapprehends** [1] - 11:15
**mislead** [1] - 16:12
**misrepresentations** [1] - 33:4
**missed** [1] - 37:12
**Missouri** [7] - 5:25, 6:1, 6:12, 6:23, 29:4, 30:24, 34:22
**moments** [1] - 25:16
**money** [4] - 4:15, 6:14, 6:17, 6:20
**month** [1] - 13:14
**months** [2] - 5:4, 17:1
**most** [7] - 6:16, 14:1, 14:6, 26:22, 28:14, 38:22, 39:23
**motion** [12] - 7:5, 7:13, 7:21, 11:15, 12:8, 13:19, 13:20, 28:8, 28:9, 33:16, 34:5
**motions** [7] - 11:22, 11:24, 25:10, 26:4, 38:14, 41:4
**Motions** [1] - 1:6
**Motors** [1] - 9:9
**move** [3] - 13:15, 24:10, 29:7
**moved** [2] - 5:3, 28:20
**moving** [2] - 26:6, 31:6
**MR** [15] - 3:9, 3:11,

3:20, 5:25, 17:3,
21:24, 24:15, 25:22,
25:25, 31:7, 35:19,
37:18, 37:21, 41:23,
42:1
**MS** [6] - 7:19, 9:7,
11:14, 13:10, 15:6,
39:13
**multi** [3] - 13:14, 15:4,
40:22
**multi-district** [1] -
15:4
**multi-month** [1] -
13:14
**multi-state** [1] - 40:22
**must** [1] - 28:15
**muster** [1] - 24:4

## N

**named** [2] - 10:10,
12:23
**names** [1] - 39:22
**narrative** [1] - 9:8
**narrow** [2] - 26:23,
34:14
**National** [1] - 13:1
**nationwide** [3] -
13:11, 40:6, 40:23
**nature** [1] - 11:15
**necessarily** [2] -
23:25, 26:12
**necessary** [3] - 13:17,
22:21, 32:6
**need** [3] - 12:4, 24:21,
24:24
**needs** [1] - 27:4
**negotiate** [2] - 29:8,
36:6
**negotiated** [2] - 18:19,
36:14
**negotiation** [1] - 37:13
**negotiations** [1] - 37:2
**never** [6] - 27:6, 30:1,
30:16, 32:13, 39:8,
39:25
**NEW** [2] - 1:3, 3:1
**new** [5] - 10:1, 12:6,
15:25, 16:2, 20:11
**New** [8] - 1:21, 2:5,
2:12, 2:15, 39:21,
39:23, 40:9, 41:12
**next** [3] - 13:2, 15:12,
17:1
**nine** [2] - 28:7, 34:4
**Ninth** [2] - 10:6, 11:5
**nobody's** [1] - 32:3
**non** [1] - 8:18
**non-MDL** [1] - 8:18
**none** [4] - 12:11, 32:3,

35:8, 38:7
**normally** [1] - 12:9
**note** [7] - 7:24, 13:18,
14:5, 22:19, 23:15,
25:8, 25:12
**noted** [2] - 22:23, 38:2
**nothing** [6] - 8:16,
8:24, 11:13, 27:5,
27:9, 27:13
**notice** [30] - 6:9,
10:25, 12:2, 12:15,
12:22, 12:24, 16:4,
16:14, 16:18, 20:1,
20:10, 20:11, 20:13,
29:20, 33:12, 36:16,
36:19, 36:20, 36:21,
36:22, 36:24, 36:25,
37:2, 37:4, 37:6,
37:8, 37:9, 39:5
**noticed** [1] - 21:5
**notices** [3] - 6:9,
18:18, 18:19
**notwithstanding** [1] -
6:19
**novel** [1] - 8:24
**number** [2] - 17:8,
21:12
**numbers** [1] - 21:8
**numerous** [1] - 18:5
**NW** [1] - 2:15

## O

**O'Keefe** [1] - 2:4
**object** [1] - 32:11
**objection** [6] - 6:4,
6:5, 6:6, 10:8, 15:12,
38:7
**objections** [1] - 12:3
**objective** [1] - 16:16
**objector** [2] - 10:19
**obligation** [2] - 19:14
**obtaining** [1] - 10:8
**obviously** [3] - 15:25,
24:12, 33:19
**occur** [2] - 13:24, 33:9
**occurred** [2] - 33:4,
40:5
**OF** [2] - 1:2, 1:9
**offer** [1] - 35:7
**official** [1] - 12:18
**Official** [2] - 1:19,
42:10
**often** [1] - 14:24
**omissions** [1] - 33:4
**once** [5] - 6:17, 28:11,
28:12, 33:7, 37:23
**one** [19] - 5:13, 7:3,
7:18, 9:17, 10:18,
12:8, 19:5, 20:4,

21:6, 22:2, 25:8,
28:18, 28:23, 31:25,
33:14, 34:9, 36:5,
38:1, 38:9
**One** [1] - 2:11
**ongoing** [2] - 12:13,
18:10, 18:24
**operated** [1] - 10:9
**operates** [1] - 12:10
**operative** [1] - 10:20
**opinion** [8] - 17:12,
17:16, 27:19, 29:1,
29:2, 29:5, 33:20,
40:17
**opinions** [1] - 14:23
**opportunity** [10] -
7:12, 7:13, 17:7,
20:20, 20:25, 21:13,
21:14, 24:2, 37:19,
39:12
**opposing** [1] - 7:22
**opposite** [1] - 19:11
**opposition** [2] - 7:23,
13:21
**opt** [6] - 12:3, 15:11,
15:13, 19:17, 20:16
**opt-in** [1] - 19:17
**opt-out** [4] - 15:11,
15:13, 19:17, 20:16
**opt-outs** [1] - 12:3
**opted** [3] - 10:4, 11:7,
15:19
**opted-out** [1] - 10:4
**opting** [1] - 11:1
**oral** [3] - 17:9, 19:12,
19:22
**order** [24] - 8:1, 8:7,
9:17, 9:23, 10:1,
10:9, 10:20, 10:25,
11:16, 12:1, 12:9,
12:10, 14:2, 14:3,
14:7, 17:14, 19:1,
20:9, 21:18, 28:16,
34:14, 38:3, 40:6,
40:23
**orderly** [2] - 41:18,
41:19
**orders** [4] - 9:19,
12:20, 25:16, 26:19
**Orders** [1] - 14:11
**ordinarily** [1] - 35:20
**ORLEANS** [2] - 1:3,
3:1
**Orleans** [4] - 1:21, 2:5,
2:12, 28:19
**osteoarthritis** [1] - 4:8
**otherwise** [2] - 6:15,
23:16
**ought** [1] - 34:23
**outcome** [1] - 40:11

**outs** [1] - 12:3
**outset** [2] - 7:24,
33:11
**outwork** [1] - 36:9
**overlapping** [2] - 7:7,
11:17
**overlaps** [1] - 24:12
**own** [3] - 10:3, 22:10,
30:23

## P

**P.M** [1] - 3:2
**p.m** [1] - 42:5
**page** [1] - 27:19
**pains** [1] - 30:5
**palpable** [1] - 23:4
**papers** [1] - 3:15
**paperwork** [1] - 13:17
**Parade** [1] - 12:25
**paragraph** [2] - 8:8,
14:6
**paragraphs** [1] - 9:18
**parallel** [4] - 22:24,
23:20, 38:1, 40:1
**Parish** [1] - 19:7
**part** [4] - 12:9, 28:17,
29:18
**participate** [3] - 26:1,
32:10, 32:11
**particularly** [4] - 8:19,
16:6, 16:7, 32:4
**parties** [4] - 5:18,
9:25, 16:9, 19:9
**pass** [1] - 24:4
**passed** [1] - 26:19
**past** [4] - 8:2, 14:20,
31:25, 36:4
**patterns** [1] - 23:19
**payment** [1] - 30:19
**pending** [4] - 11:3,
13:20, 28:22, 29:21
**people** [8] - 6:13,
13:5, 13:15, 15:11,
15:12, 16:25, 20:24,
32:21
**percent** [1] - 21:11
**percentage** [1] - 21:11
**perfect** [1] - 30:8
**perhaps** [6] - 4:18,
6:6, 16:14, 18:13,
21:16, 35:6
**period** [6] - 6:18, 33:3,
36:6
**peripheral** [1] - 16:11
**person** [1] - 3:16
**personal** [8] - 4:10,
5:5, 30:4, 30:6, 30:7,
32:2, 32:3
**persons** [1] - 11:6

**perspective** [2] -
13:23, 39:16
**pertinent** [1] - 12:17
**phantom** [2] - 19:24,
21:16
**Phen** [1] - 27:17
**Phen-Fen** [1] - 27:17
**phone** [1] - 13:7
**pick** [1] - 41:9
**place** [6] - 14:1, 20:10,
23:22, 34:6, 35:8,
38:6
**placed** [1] - 13:2
**plaintiff** [2] - 10:10,
32:7
**plaintiffs** [6] - 3:10,
10:2, 12:23, 23:8,
24:19, 35:12
**plaintiffs'** [1] - 29:22
**plan** [1] - 18:5
**planning** [1] - 42:2
**play** [3] - 20:2, 22:5,
39:1
**Plubell** [3] - 23:13,
29:4, 30:18
**plus** [2] - 13:6, 27:18
**point** [24] - 7:5, 9:25,
10:2, 11:13, 14:16,
15:6, 15:18, 18:16,
18:17, 22:2, 22:6,
23:10, 23:21, 25:17,
27:8, 31:12, 34:1,
35:6, 35:8, 38:8,
38:16, 38:23, 39:14
**pointed** [2] - 18:19,
28:2
**points** [1] - 21:25
**Poitier** [1] - 26:2
**position** [8] - 6:22,
7:6, 30:16, 31:17,
31:20, 32:9, 32:17,
33:5
**positive** [1] - 30:8
**possibility** [1] - 31:10
**possible** [4] - 16:3,
16:18, 26:23, 27:20
**possibly** [3] - 27:22,
32:11, 35:22
**potential** [6] - 6:20,
6:24, 7:8, 10:24,
15:16, 16:11, 21:12
**potentially** [3] - 21:11,
35:11, 35:12
**power** [5] - 17:14,
18:25, 19:2, 21:18,
32:14
**Poydras** [2] - 1:20,
2:12
**practice** [3] - 14:13,
18:6, 26:20

**practiced** [1] - 19:20
**pre** [1] - 12:2
**pre-CAFA** [1] - 12:2
**predicted** [1] - 29:6
**prediction** [2] - 19:21
**preliminarily** [1] - 5:22
**preliminary** [9] - 6:2, 6:8, 7:25, 8:7, 9:17, 9:18, 12:9, 18:17, 30:12
**prepare** [1] - 7:13
**presence** [1] - 36:12
**present** [7] - 19:15, 24:2, 27:12, 30:11, 34:18, 38:10
**presented** [1] - 24:3
**preside** [1] - 41:18
**press** [1] - 12:21
**pretty** [2] - 7:16, 33:8
**prevail** [1] - 23:8
**prevailed** [1] - 28:7
**prevailing** [1] - 37:15
**prevails** [1] - 23:7
**preventure** [1] - 14:16
**previously** [1] - 40:7
**principle** [3] - 21:8, 26:24
**print** [1] - 13:2
**problem** [4] - 7:8, 29:17, 31:19, 40:9
**problems** [2] - 6:20, 32:19
**procedure** [1] - 5:20
**proceed** [5] - 16:6, 23:25, 35:14, 35:15, 37:24
**proceeded** [2] - 5:3, 5:15
**proceeding** [11] - 6:5, 7:2, 16:15, 21:3, 21:20, 24:9, 28:19, 35:1, 39:24, 40:1
**proceedings** [17] - 7:22, 11:3, 16:24, 23:21, 25:11, 25:15, 27:5, 28:21, 30:25, 32:10, 34:19, 35:4, 35:10, 38:1, 38:8, 39:1, 42:5
**PROCEEDINGS** [1] - 1:9
**Proceedings** [1] - 1:24
**proceeds** [1] - 24:5
**process** [19] - 5:2, 8:12, 8:24, 11:4, 11:9, 12:1, 12:14, 13:15, 13:18, 14:18, 15:8, 15:16, 18:24, 24:8, 37:8, 40:22,

40:23, 41:18, 41:19
**product** [3] - 18:9, 33:2, 33:5
**Products** [1] - 3:5
**PRODUCTS** [1] - 1:5
**progeny** [1] - 17:18
**program** [3] - 12:16, 13:14, 13:16
**prohibits** [1] - 21:18
**proof** [3] - 32:6, 33:1, 36:2
**proper** [4] - 36:21, 36:22, 37:3, 37:6
**proposal** [1] - 39:8
**proposals** [1] - 39:6
**proposed** [4] - 8:19, 8:23, 22:12, 25:7
**Propulsid** [1] - 41:25
**prosecute** [1] - 12:12
**prosecuting** [2] - 8:9, 11:17
**protect** [3] - 20:6, 23:16, 27:25
**protected** [1] - 21:4
**protecting** [1] - 23:11
**protection** [1] - 24:18
**provide** [1] - 16:25
**provision** [4] - 8:1, 8:3, 8:7, 26:18
**PSC** [4] - 2:3, 20:5, 25:12, 37:15
**publication** [2] - 12:24, 13:1
**publicity** [1] - 23:6
**published** [2] - 9:10, 15:22
**punitive** [8] - 12:5, 19:15, 20:6, 20:9, 20:14, 21:16, 27:25, 32:8
**purchase** [1] - 41:2
**purchased** [3] - 4:14, 6:13, 6:21
**pure** [2] - 16:17, 19:17
**purport** [1] - 32:22
**purportedly** [1] - 11:1
**purpose** [1] - 5:16
**purposes** [1] - 8:20
**pursue** [1] - 34:7
**pursued** [2] - 5:17, 27:18
**pursuing** [1] - 30:23
**put** [3] - 3:16, 14:1, 16:18

### Q

**QSFs** [1] - 18:23
**quandary** [1] - 33:17
**quantification** [1] -

36:3
**questions** [3] - 14:19, 30:14, 41:7
**Questions** [1] - 12:21
**quite** [6] - 8:14, 9:8, 22:20, 23:4, 24:16, 31:16
**quo** [2] - 38:17
**quote** [1] - 26:22

### R

**raise** [1] - 30:14
**raised** [4] - 19:5, 21:2, 35:21, 36:15
**rather** [1] - 30:23
**Ratliff** [14] - 4:7, 4:13, 7:21, 10:21, 11:16, 11:20, 12:6, 12:7, 12:8, 13:18, 21:19, 22:3, 30:9, 32:8
**Ratliff's** [1] - 30:5
**RE** [1] - 1:5
**re** [1] - 3:5
**reached** [3] - 9:16, 23:16, 40:2
**read** [2] - 14:10, 29:2
**real** [5] - 3:15, 16:24, 16:25, 31:19, 34:17
**really** [4] - 19:3, 34:24, 39:8, 41:21
**reason** [1] - 35:15
**reasonable** [1] - 24:7
**reasons** [2] - 32:13, 36:5
**Reasons** [1] - 14:11
**rebuttal** [1] - 35:19
**receive** [1] - 20:10
**recent** [2] - 14:6, 36:4
**recently** [1] - 7:14
**receptive** [1] - 41:13
**recognized** [1] - 14:23
**recollection** [1] - 39:7
**recommendation** [1] - 31:16
**record** [4] - 3:8, 3:16, 3:24, 35:22
**Recorded** [1] - 1:24
**recover** [3] - 20:21, 21:13, 21:15
**recovery** [2] - 6:24, 6:25
**recur** [1] - 13:25
**recurring** [1] - 39:16
**referenced** [1] - 22:8
**reflected** [1] - 5:10
**regarding** [1] - 36:16
**registered** [1] - 13:6
**registering** [1] - 13:5
**registrants** [1] - 13:10

**regularly** [1] - 40:14
**related** [4] - 5:12, 12:23, 17:17, 17:22
**relates** [1] - 17:12
**release** [1] - 12:21
**relevant** [1] - 33:3
**reliance** [3] - 32:5, 36:2, 41:11
**relief** [13] - 4:16, 16:25, 23:25, 24:1, 25:1, 25:3, 27:10, 27:11, 28:6, 33:23, 34:12, 38:11, 38:12
**reluctant** [1] - 26:1
**reluctantly** [1] - 27:5
**rem** [1] - 8:21
**remand** [1] - 9:4
**remanded** [5] - 4:21, 9:5, 19:8, 34:8, 40:21
**remands** [1] - 35:3
**remedies** [1] - 6:14
**remember** [2] - 39:22, 40:15
**remove** [3] - 10:9, 10:10, 10:12
**removed** [3] - 4:12, 4:19, 40:20
**rendered** [1] - 27:16
**rep** [1] - 21:20
**repeatedly** [2] - 12:1, 36:19
**repetitive** [1] - 11:21
**report** [1] - 12:16
**Reporter** [2] - 1:19, 42:10
**represent** [3] - 12:23, 31:18, 32:22
**representative** [1] - 21:19
**represented** [1] - 39:21
**reputation** [1] - 19:20
**request** [1] - 8:25
**requested** [1] - 8:1
**requires** [2] - 27:12, 38:12
**res** [10] - 14:25, 17:16, 17:17, 17:21, 18:2, 18:14, 18:22, 18:23, 26:10, 26:15
**resident** [1] - 4:7
**residents** [1] - 4:14
**resolution** [1] - 5:19
**resolved** [1] - 5:10
**resources** [3] - 16:8, 16:9, 16:10
**respect** [10] - 12:10, 13:25, 19:19, 20:22, 26:14, 29:6, 33:5,

38:21, 38:24, 39:5
**respective** [2] - 5:21, 25:10
**respond** [2] - 7:13, 39:11
**responded** [1] - 35:12
**response** [1] - 35:18
**responsibility** [1] - 37:10
**responsible** [1] - 20:15
**result** [1] - 32:4
**reverse** [1] - 19:22
**reversed** [1] - 4:24
**review** [1] - 33:1
**revived** [2] - 15:18, 16:2
**rgetty@**
  **gettylawgroup.com**
  [1] - 2:20
**RICHARD** [1] - 2:18
**Richard** [1] - 3:9
**rights** [1] - 26:25
**rise** [1] - 35:20
**risk** [2] - 23:2, 23:3
**RMR** [1] - 1:19
**Roman** [1] - 17:18
**routine** [1] - 14:1
**RPR** [1] - 1:19
**Rule** [1] - 24:4
**rule** [4] - 11:24, 27:14, 27:20, 27:21
**rules** [1] - 20:1
**ruling** [1] - 35:4
**running** [3] - 12:19, 13:12, 16:3
**runs** [1] - 12:25
**RUSS** [1] - 2:3
**Russ** [3] - 3:12, 31:17, 38:21
**rwesternfeld@hhkc.**
  **com** [1] - 2:6

### S

**safety** [1] - 15:25
**San** [1] - 2:9
**saw** [1] - 41:24
**scenario** [4] - 13:23, 39:17, 39:19, 40:13
**schedule** [1] - 12:24
**seated** [1] - 3:3
**secondly** [1] - 36:15
**secretary** [1] - 33:13
**see** [9] - 7:3, 15:22, 24:14, 24:24, 29:1, 31:9, 32:16, 33:25, 41:12
**seeing** [2] - 4:2, 13:15
**seek** [1] - 6:13

**seem** [2] - 11:21, 39:15
**seminal** [1] - 44:22
**send** [1] - 19:23
**sense** [3] - 16:5, 26:13, 33:3
**sent** [5] - 6:10, 12:24, 19:25, 29:23, 33:12
**separates** [1] - 35:10
**SEPTEMBER** [1] - 3:1
**September** [4] - 1:5, 12:18, 12:25
**series** [1] - 11:22
**session** [1] - 37:13
**set** [3] - 3:24, 9:9, 27:4
**setting** [1] - 9:15
**settle** [1] - 35:7
**settled** [2] - 5:6, 30:18
**settlement** [59] - 5:22, 6:11, 7:1, 7:9, 7:20, 7:25, 8:9, 8:12, 8:23, 9:13, 9:16, 9:22, 10:15, 11:4, 11:7, 12:11, 12:14, 12:18, 13:25, 15:8, 15:10, 15:16, 15:19, 18:9, 18:10, 20:16, 20:17, 21:4, 22:12, 23:21, 24:3, 24:8, 24:10, 25:6, 26:10, 28:4, 29:8, 30:2, 30:11, 30:12, 31:22, 32:12, 33:13, 36:6, 36:13, 36:14, 37:11, 37:13, 38:6, 38:24, 40:2, 40:4, 40:5, 40:6, 40:22, 41:19
**settlements** [4] - 8:19, 14:2, 23:15, 23:17
**settling** [1] - 16:8
**several** [1] - 37:2
**severe** [2] - 30:5, 33:23
**shape** [1] - 22:15
**sharpest** [1] - 35:23
**Shell** [1] - 2:11
**short** [1] - 11:2
**shortly** [1] - 15:9
**side** [6] - 3:17, 3:19, 29:11, 36:7, 36:10
**Sidney** [1] - 26:2
**signed** [1] - 9:19
**similar** [5] - 9:8, 24:19, 24:25, 39:19, 40:21
**simply** [6] - 27:14, 34:7, 34:19, 35:6, 35:14, 39:2
**single** [1] - 37:12
**situation** [14] - 4:1,

7:16, 15:14, 16:20, 21:14, 25:4, 29:6, 30:5, 32:14, 32:22, 32:23, 34:21, 39:16, 41:15
**six** [3] - 5:4, 32:1, 39:22
**Skadden** [1] - 2:15
**Slate** [1] - 2:15
**slightly** [1] - 14:4
**someone** [1] - 10:23
**sometimes** [1] - 15:1
**somewhat** [3] - 7:14, 17:19, 23:14
**sorry** [1] - 39:13
**sort** [9] - 3:15, 4:1, 14:23, 15:2, 24:21, 26:2, 26:5, 29:6, 31:13
**sorts** [1] - 25:15
**sound** [1] - 36:14
**speaking** [1] - 3:21
**speculation** [5] - 16:17, 19:10, 19:17, 20:3, 20:7
**speculative** [5] - 16:21, 20:21, 20:24, 34:2
**spent** [2] - 16:16, 38:22
**Square** [1] - 2:11
**stake** [1] - 33:24
**stand** [2] - 27:2, 33:15
**standard** [2] - 14:5, 25:15
**start** [1] - 26:17
**starting** [1] - 26:6
**state** [30] - 3:7, 4:2, 4:4, 4:6, 4:13, 4:16, 4:21, 4:23, 4:24, 5:1, 7:7, 7:12, 8:9, 9:2, 9:5, 9:13, 10:21, 14:10, 15:14, 15:18, 22:11, 23:20, 25:1, 32:4, 34:8, 38:1, 39:20, 40:7, 40:22
**STATES** [2] - 1:1, 1:11
**States** [1] - 21:13
**states** [9] - 5:7, 5:23, 6:11, 7:10, 40:4, 41:8, 41:9, 41:11
**status** [4] - 16:15, 28:21, 38:17
**statute** [2] - 24:18, 32:5
**stay** [6] - 7:22, 13:19, 20:20, 23:20, 25:11, 25:14
**stayed** [1] - 11:3
**staying** [1] - 34:14

**Stenography** [1] - 1:24
**step** [3] - 27:13, 38:9, 38:12
**steps** [2] - 35:9, 38:18
**still** [6] - 11:1, 13:19, 27:21, 37:3, 38:8, 40:7
**stood** [2] - 29:7, 29:19
**stop** [4] - 7:3, 11:23, 13:19, 29:14
**story** [1] - 9:8
**stranger** [1] - 41:1
**Street** [4] - 1:20, 2:8, 2:12, 2:19
**strike** [1] - 41:4
**strokes** [1] - 5:6
**strong** [4] - 17:25, 31:20, 35:24, 35:25
**strong-armed** [3] - 31:20, 35:24, 35:25
**stronger** [1] - 32:23
**strongly** [2] - 28:5, 33:8
**subject** [1] - 11:1
**submitted** [3] - 14:3, 14:4, 39:7
**subset** [1] - 9:14
**substantial** [1] - 36:12
**substantially** [2] - 24:24, 36:23
**sucked** [1] - 27:5
**sufficient** [1] - 30:7
**suggest** [1] - 7:4
**suggested** [1] - 16:14
**suggestion** [1] - 29:23
**Suite** [1] - 2:12
**summary** [5] - 16:17, 28:8, 28:20, 34:5, 38:13
**sun** [1] - 22:14
**superintend** [1] - 19:16
**supervision** [1] - 8:11
**supported** [1] - 21:7
**suppose** [3] - 15:2, 20:8, 20:9
**supreme** [10] - 4:25, 7:12, 7:15, 8:16, 19:22, 23:5, 27:14, 28:12, 34:20, 38:19
**Supreme** [4] - 31:9, 32:16, 32:25, 35:3
**SUSAN** [1] - 1:19, 42:13
**Susan** [2] - 42:10, 42:14
**susan_zielie@laed. uscourts.gov** [1] - 1:21

**T**

**table** [2] - 29:11, 29:12
**tangled** [1] - 30:24
**teamed** [1] - 25:24
**terms** [2] - 19:7, 32:6
**territories** [1] - 5:8
**Texas** [4] - 39:21, 39:23, 40:10
**textbook** [1] - 41:15
**THE** [25] - 1:1, 1:2, 1:10, 3:3, 3:5, 3:7, 3:22, 6:1, 9:1, 11:10, 13:8, 14:19, 17:2, 21:23, 24:12, 25:20, 25:24, 31:2, 35:17, 37:17, 37:19, 39:11, 41:21, 41:24, 42:4
**themselves** [2] - 10:14, 11:8
**they've** [1] - 33:7
**thinking** [1] - 17:20
**Third** [2] - 22:23, 40:10
**thorn** [1] - 35:23
**thorny** [1] - 38:3
**thousands** [1] - 18:6
**three** [1] - 21:25
**threshold** [1] - 18:2
**throughout** [1] - 13:8
**time-out** [2] - 23:24, 24:6
**timely** [3] - 15:13, 15:19, 16:7
**today** [9] - 5:13, 7:15, 13:22, 26:2, 26:8, 29:13, 37:24, 39:10, 41:15
**today's** [1] - 26:12
**together** [1] - 36:19
**tomorrow** [1] - 22:14
**took** [9] - 4:24, 6:16, 28:10, 29:8, 30:8, 31:19, 32:25, 37:11, 38:13
**total** [2] - 15:20, 29:10
**totally** [2] - 28:20, 30:10
**track** [1] - 26:5
**trained** [1] - 17:5
**transcript** [2] - 36:18, 42:11
**TRANSCRIPT** [1] - 1:9
**treat** [1] - 8:18
**trial** [6] - 18:5, 20:3, 27:13, 34:18, 38:9
**trials** [1] - 18:5
**tried** [7] - 5:4, 5:18, 29:19, 31:25, 32:3, 32:10, 39:3

**triple** [1] - 25:24
**try** [5] - 16:10, 17:3, 31:23, 36:9, 36:18
**trying** [1] - 16:16
**turn** [1] - 28:7
**TV** [1] - 33:14
**twice** [1] - 28:11
**two** [14] - 19:4, 20:9, 27:17, 28:23, 28:25, 29:8, 29:15, 34:6, 35:1, 35:20, 36:6, 37:11, 37:12
**type** [1] - 36:4
**types** [1] - 5:12
**typically** [1] - 8:8

**U**

**ultimately** [2] - 9:15, 10:6
**under** [12] - 5:15, 12:16, 16:18, 17:14, 19:1, 20:11, 24:4, 24:16, 24:18, 30:2, 32:4, 37:15
**understood** [2] - 6:5, 41:22
**underway** [2] - 15:8, 41:20
**unique** [1] - 39:15
**United** [2] - 8:14, 21:13
**UNITED** [1] - 1:1, 1:11
**unless** [2] - 32:19, 38:8
**unlike** [2] - 39:25, 40:25
**unquestioned** [1] - 8:22
**up** [18] - 4:22, 5:19, 7:10, 12:18, 13:12, 15:1, 16:3, 18:9, 22:14, 25:21, 27:7, 28:7, 30:19, 30:24, 31:15, 33:15, 40:1, 40:10
**up-and-down** [1] - 4:22
**upfront** [1] - 32:9
**USA** [1] - 12:25
**uses** [1] - 16:10
**utilized** [1] - 26:23

**V**

**value** [1] - 16:25
**various** [3] - 5:12, 9:14, 18:5
**vehicles** [1] - 15:25
**viable** [1] - 14:25

**view** [3] - 30:4, 31:5, 31:7
**views** [1] - 39:2
**vigorously** [1] - 5:16
**vindicated** [1] - 27:1
**violence** [1] - 21:14
**VIOXX** [16] - 1:5, 3:5, 4:9, 4:12, 4:15, 5:12, 6:13, 6:15, 7:20, 15:8, 21:10, 33:2, 40:14, 41:11
**vioxxconsumersettl ement.com** [1] - 12:19
**vision** [1] - 16:11
**vs** [2] - 9:8, 23:1

## W

**waiting** [4] - 27:14, 31:9, 34:19, 38:10
**wants** [1] - 13:19
**Washington** [5] - 2:16, 39:20, 39:21, 39:23, 40:9
**waste** [2] - 16:8, 16:9
**website** [2] - 12:18, 13:12
**WEDNESDAY** [1] - 3:1
**week** [3] - 13:3, 33:14, 33:15
**Weekend** [1] - 13:1
**weeks** [3] - 7:10, 7:11, 37:2
**West** [2] - 2:19, 17:16
**whatsoever** [1] - 29:22
**whole** [4] - 5:2, 17:21, 31:18, 41:25
**willingly** [2] - 40:8, 40:9
**wisdom** [1] - 23:9
**wish** [1] - 39:9
**word** [3] - 31:13, 31:14, 32:23
**worry** [1] - 12:4
**worse** [1] - 29:5
**worst** [2] - 29:18
**write** [3] - 16:16, 16:17, 40:18
**writes** [1] - 29:1
**writing** [1] - 19:21
**Writs** [17] - 8:3, 9:18, 10:7, 11:22, 11:25, 14:2, 14:9, 14:11, 14:13, 17:14, 19:1, 26:18, 28:16, 33:22, 39:17, 40:11, 41:16
**writs** [1] - 38:3
**Wylie** [1] - 33:6

## Y

**years** [9] - 28:7, 28:23, 28:25, 29:8, 34:5, 34:6, 36:6, 37:11, 37:12
**York** [1] - 2:15
**yowomen's** [1] - 3:18

## Z

**Zielie** [2] - 42:10, 42:14
**ZIELIE** [2] - 1:19, 42:13