# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX Products Liability Litigation | * | MDL No. 1657 |
| | * | |
| This Document Relates to: | * | SECTION L |
| | * | |
| State of Utah v. Merck, et al. | * | JUDGE ELDON E. FALLON |
| | * | |
| | * | MAGISTRATE JUDGE |
| | * | KNOWLES |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S RENEWED MOTION TO REMAND

**Introduction**

This matter involves Plaintiff, State of Utah's [hereinafter, "Plaintiff" or "Utah"] Complaint against Defendant, Merck Sharp & Dohme & Co. [hereinafter, "Defendant" or "Merck"] under the Utah False Claims Act ("UFCA"), only, as Utah has dismissed all other claims for relief. As set forth in prior pleadings, Utah has twice filed to remand this case and has supplemented the remand on other occasions. On September19, 2013, Merck filed an Opposition to Utah's Motion to Remand [hereinafter, the "Response"]. This document is Utah's Reply to the Response. This matter is set for oral argument on October 2, 2013.

Merck opens its brief with background on "the federal Medicaid regime." *See*, Response, at 2. Therein, Merck explains that this "Court devoted seven pages to analyze whether Louisiana had the authority to deny coverage of Vioxx under federal Medicaid law." *Id.*, at 4. In that case, Louisiana alleged that it would not have paid for Vioxx as it had the ability to establish an

1

exclusive formulary that would have excluded the drug. *See, e.g., In re Vioxx Prods. Liab. Litig.*, MDL No. 1657, 2010 U.S. Dist. LEXIS 64388, at *27-31 (E.D. La. June 29, 2010).

In our case, on the other hand, Utah does not dispute that it was required to pay for Vioxx and could not deny coverage. Once Merck had obtained FDA approval and negotiated a rebate agreement, Utah had to pay for Vioxx. Utah did not have an exclusive formulary at any time that Vioxx was on the market nor did it have a preferred drug list as there was no legislative authority for it. Therefore, unlike Louisiana, Utah never preferred Vioxx to any other drug, COX-2, or any other NSAID and the central contention of the Louisiana case is not at issue here.

Utah did place Vioxx on prior approval, which means that a prescriber was required to establish the medical necessity of Vioxx due to its high cost relative to other pharmaceutical pain relief alternatives. *See*, Deposition of Duane Parke [hereinafter, "Parke Depo."], at 199 – 200, attached hereto as Exhibit A. The primary purpose of the prior authorization was to limit the use of COX-2 drugs to individuals with gastrointestinal problems. *Id.*, at 202.

Merck also argues that this case somehow raises a substantial federal issue because Utah seeks costs incurred by the Medicaid system. Any doubt that this issue fails to raise a substantial federal issue was removed with the United States Supreme Court decision in *Gunn v. Minton*, 133 S.Ct. 1059 (2013). In *Gunn*, the Court instructed that there is no substantial federal issue where the federal issue necessarily litigated only affects the parties to the litigation. Here, Utah's dispute with Merck over the drug Vioxx is precisely the sort of backward-looking, fact-specific litigation which belongs in state court.

**Argument**

Utah agrees with Merck that federal jurisdiction may arise from state law claims that

implicate significant federal issues. *See*, Response, at 8. Utah also agrees that such jurisdiction exists only if (1) the claim necessarily raises a federal issue; (2) the federal issue is actually disputed; (3) the federal issue is substantial, and (4) the exercise of federal jurisdiction over that issue will not unsettle the federal-state balance of judicial power that Congress sought to create. *Id*. But Merck is mistaken in its assertion that Utah's claims under the UFCA satisfy this stringent test. *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 308; 125 S.Ct. 2364 (2005) (arising under jurisdiction is a "slim category" and "it takes more than a federal element to open the 'arising under' door.").

### A. This Case Does not necessarily raise disputed issues of federal law.

Utah did not address the first and second elements of the *Grable* test in its Renewed Motion to Remand, but does so now. To the extent Utah may be required to prove its case by establishing that the FDA would not have approved Vioxx, as Merck asserts, then this Court's decision in the Kentucky AG case is on point. In that case Merck argued that Kentucky's case was premised "on a failure to report matters to the FDA." *In re Vioxx Prods. Liab. Litigation*, 843 F.Supp.2d 654, 668 (E.D. La. Jan. 3, 2012), attached hereto as Exhibit B. This Court's response was that "even if Kentucky did attempt to prove that Merck failed to comply with FDA disclosure regulations, that federal question would be resolved in the context of…a violation of *Kentucky* law." (emphasis, *sic*). This Court has thus decided that when a State is reviewing claimed violations of FDA rules or regulations within the context of that particular State's law, there is no federal jurisdiction.

Next, as Judge Weinstein is the only Judge to find subject matter jurisdiction on these grounds, Merck predictably asks this Court to follow his reasoning. As discussed below, the

issues facing Judge Weinstein in the Zyprexa litigation render his decision inapplicable here. Moreover, even if this Court somehow finds the issues analogous, Utah notes again that every other Judge who considered the issue reached a contrary result, including a Judge interpreting the Utah False Claims Act at issue here. *State of Utah v. Eli Lilly and Company,* 509 F.Supp.2d 1016, 1022-24 (D. Utah 2007) (holding no actually disputed, substantial federal question was presented in the State of Utah's Medicaid reimbursement action against drug manufacturer), attached hereto as Exhibit C.

     Merck asserts that Utah is incorrect in its assertion that Judge Weinstein's reasoning in the Zyprexa cases is distinguishable since those cases dealt with "off label" promotion. However, as Utah previously noted, this Court has already determined that the "off label" promotion did distinguish those cases from the one *sub judice*. *Vioxx*, *supra*, 843 F.Supp.2d at 669. This point is also made clear in Judge Weinstein's decision denying remand in the Montana AG action. *In re Zyprexa Prods. Liab. Litigation*, Case Nos. 04-MD-1596, 07-CV-1933 (JBW), 2008 WL 398378 (E.D. N.Y. Feb. 12, 2008). There, Judge Weinstein emphasized that the States' claims turned on the narrow issue of submission of a claim for a "non-medically accepted indication." *Id.*, at *5. This raises a potential legal issue of *law*, as opposed to one of fact. To wit, whether off-label promotion in and of itself gives rise to a claim for damages. Moreover, Judge Weinstein noted there is "no state law equivalent of 'off-label,'…(as) [t]he concept is entirely federal." *Id.* This narrow issue of law based on a non-medically accepted indication is not present here and distinguishes the Zyprexa cases from the Vioxx litigation.

     In spite of this, Merck seems to claim that Judge Weinstein's decision did not turn on "off-label" promotion. *See*, Response, at 11. Instead, according to Merck, the decision turned

4

on the state's obligation to reimburse its insureds. *Id.* What Merck conspicuously omits is that Judge Weinstein found that the Zyprexa case turned on the state's obligation to reimburse its insureds *in light of the off-label promotion.* It is this off-label promotion that was determinative and it was "[c]entral to plaintiff's complaint." *See, New Mexico v. Eli Lily* (March 11, 2009- E.D. N.Y.). Judge Weinstein also noted that New Mexico and West Virginia's statutes were "explicitly related to federal laws...," further differentiating those cases from the one here. *Id.*

Merck's position that every case arising out of Medicaid implicates Federal Jurisdiction is not supported by Judge Weinstein. "Unconvincing is Lilly's argument that subject matter jurisdiction over Montana's claim lies in Federal Court because federal law and FDA regulations have pre-empted State law claims."

Utah will not rehash the reasoning of the many Judges who have disagreed with Judge Weinstein except to note that Merck takes exception with some such cases but does not even address other cases that wholly refute federal jurisdiction. For instance, in *Pennsylvania v. Eli Lilly*, the Court considered, and rejected, the defense argument that implication of the duty to pay for a prescription under federal law warranted jurisdiction since the focus at trial would be on violation of the state's tort law: "Even though "medically accepted indication" is defined by federal law, liability under the state law claims presented here nonetheless does not depend on the violation of any federal standard or statute." 511 F.Supp.2d 576, 581 (E.D. Pa. June 27, 2007). The court noted that "no violation of federal law is asserted in the Complaint as a basis for liability." *Id.*

Merck's analysis is similarly flawed as to *Utah v. Eli Lilly*, which is important here in that it rejected federal jurisdiction under the same UFCA at issue in our case, among other

5

claims. Merck somehow claims that the Court did not consider all theories of liability. To the contrary the Court found that "Plaintiff's causes of action are not solely hinged on federal issues, and, by their nature, are necessarily fact-bound." *Id.*, at 1023. The Court, therefore, considered the entire complaint and found federal subject matter jurisdiction lacking.

At most, Merck can claim that there may be a federal standard embedded in the state law cause of action. The Court in *Utah v. Eli Lilly* and *Pennsylvania v. Eli Lilly*, citing *Grable,* noted that reference to a federal standard does not give rise to federal jurisdiction.

Utah concedes that Merck's burden to establish that Utah's claim "necessarily" raises a federal issue is much lower than its burden to establish that the federal issue is "substantial." Indeed, most cases rise and fall on the latter issue. As set forth in the next section, even if this Court finds that a federal issue is necessarily raised and disputed, any such issue is not substantial.

B. **This Case Does not raise a substantial issue of federal law**

Merck apparently argues that to the extent Utah seeks recovery for costs incurred by the Utah Medicaid system, such argument raises a substantial issue of federal law[1]. Utah has addressed this issue in some detail in the preceding section. Merck's claims that they are substantial, or affect Medicaid globally, do not make it so. As explained in *South Carolina v. Eli Lilly*, the dispute in our case will be factual and not a question central to the operation of the Medicaid system-rather they are 'incidental.' C.A. No. 7:07-1875, 2007 WL 2261693 (D.S.C. Aug. 3, 2007). ("Here the central question is whether the Defendants' advertising and

---

[1] Merck also argues that there is a federal issue concerning whether Utah's system of Medicaid could deny payment for Vioxx. As discussed above, this is not at issue in this case and it distinguishes our case from the remand issue in Louisiana. Utah does not dispute that it did not have the ability to deny payment for Vioxx. *See,* discussion, *supra.*

6

promotion methods violate [South Carolina] tort law, not what is or is not a medically accepted indication or medically necessary use."). In our case, the jury will not be asked the meaning of a federal law or whether certain activity violates federal law in all cases. Instead, the jury will need to determine whether Merck's "advertising and promotion," under these *particular* circumstances violated the UFCA-exactly the sort of backward-looking, fact-specific analysis warranting remand under *Gunn* and *Grable*. *See, e.g., Gunn, supra* (denying federal jurisdiction even though resolution of the patent law standard was the "central point of dispute."). It is hardly likely, or possible, that a court would see a recurrence of the exact set of circumstances present in our case, as was the concern in *Grable, supra*, at 315 ("the ability of the IRS to satisfy its claims from the property of delinquents requires clear terms of notice to allow buyers **like Darue** to satisfy themselves that the Service has touched the bases necessary for good title.") (emphasis added).

      Merck also argues that Utah's Complaint is subject to removal because the State seeks recovery of costs incurred by the federal government. Merck claims that this Court has somehow hinted at, or implied, that subject matter jurisdiction may exist because of a statement in an MDL assessment order concerning the State of Pennsylvania. This Court noted in its decision granting Kentucky's Motion for remand that it has not reached this issue. *In re Vioxx Prods. Liab. Litigation*, 843 F.Supp.2d 654 at 669 (fn 12). As discussed above, Utah asserts that Judge Weinstein was not drawing such a distinction between the issue raised by a claim for costs and one for off-label promotion. Instead, Judge Weinstein's concern was a claim for costs in the context of off-label promotion. Thus, Judge Weinstein actually viewed the issue as raising one question. That question, in turn, is unrelated to this litigation as discussed above.

In turn, even if Judge Weinstein did deny remand on this issue, he is the only Judge who did so. It is also doubtful that Judge Weinstein's reasoning would survive *Gunn*, decided after the various Zyprexa remand cases. Merck is incorrect that *Gunn*'s reasoning is limited due to its consideration of a patent issue. The Court made clear that the "arising under" standard is identical for cases arising under patent law via 28 U.S.C. § 1338, as it is for those arising in any other civil litigation via 28 U.S.C. § 1331 as the Court applies the precedents under both statutes "interchangeably." *Id.*, at 1065. *Gunn* teaches that federal question jurisdiction does not depend upon the importance to the parties but to the federal system at large. Here, a Utah Medicaid False Claims action is brought under Utah specific law. As discussed above, this dispute will have no effect upon the Medicaid system of any other state or on the federal Medicaid/Medicare system.

### C. Exercising federal jurisdiction will disturb the Congressionally approved balance of federal and state judicial responsibilities.

It is relevant that Congress provided for no federal cause of action for a state to enforce its various systems of Medicaid and not only because this fact defeats the fourth element of the *Grable* test. Congress clearly intends that state Courts hear Medicaid enforcement litigation, since it could easily provide for a federal cause of action if it desired such an option for the cases. The Court in *South Carolina v. Eli Lilly* makes this clear as it notes that the absence of a federal cause of action may not be dispositive, but it is "compelling" evidence that congress intended the states to hear such cases. *Id.*, at *3. Finally, this Court also noted, in granting remand of the Kentucky AG action, that allowing these types of cases to be heard in federal court "would have an exponentially greater effect on the federal-state division of labor than the unusual

circumstance in *Grable*. *Vioxx, supra*, 843 F.Supp.2d at 669. "For these reasons, the Court must also find that Merck fails the fourth element of the *Grable* test.

The State of Utah is not an ordinary litigant. It is a sovereign state. It is responsible to its citizens and taxpayers to jealously guard state financial resources. A sovereign state is not to be haled into federal court for actions arising out of state law lightly. Such actions offend the notion of federalism under which States have residual sovereignty. *See Va. Office for Protection & Advocacy v. Stewart*, 131 S. Ct. 1632, 1645 (2011) (Roberts, C.J., dissenting) (observing that "any time a State is haled into federal court against its will, 'the dignity and respect afforded that State . . . are placed in jeopardy'" (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 268 (1997))); *Alden v. Maine*, 527 U.S. 706, 715-18, 119 S. Ct. 2240, 2247-50, 144 L. Ed. 2d 636 (1999) (explaining history of federalism and sovereign immunity).

This case is governed by *Grable* as interpreted by Gunn. All four factors must be demonstrated to sustain federal question jurisdiction. If any of the four factors are missing, there is no federal jurisdiction. As demonstrated in this brief and the State's opening brief, none of the factors exist. There is no substantial federal question of law as in *Grable*. The federal system will continue to function perfectly regardless of a decision in this case. Most important, Congress told the states to pursue these cases. The states were to use state statutes and authority. There is little doubt as to where Congress intended these cases to be tried.

The authorities require the removing party to demonstrate federal jurisdiction from the face of the State's complaint. Raising federal defenses in Merck's answer will not support jurisdiction. Any doubt is to be resolved in favor of remand. This is doubly important when the litigant is a sovereign state, enforcing its statute and protecting scarce public funds.

Accordingly, this case must be remanded to the courts of the state of Utah.

DATED this 30th day of September, 2013.

___/S/_____
Joseph W. Steele
Kenneth D. Lougee
STEELE & BIGGS
5664 South Green Street
Salt Lake City, UT  84123


___/S/_____
Eric H. Weinberg
The Law Offices of Eric H. Weinberg
149 Livingston Avenue
New Brunswick, NJ  08901


___/S/_____
Richard W. Schulte (Ohio Bar No. 0066031)
812 E. National Road, Suite A
Vandalia, Ohio 45377
(937) 435-7500

***Attorneys for Plaintiff***

## CERTIFICATE OF SERVICE

     I hereby certify that the above and foregoing document has been served upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8, on this 30th day of September, 2013.

                                                      /S/_____
                                                     Joseph W. Steele