**EXHIBIT A**

Duane Parke

Page 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In Re: VIOXX Products       )
Liability Litigation        )
                            )   MDL No. 1657
This Document Relates to:   )
                            )   Videotaped
STATE OF UTAH               )   Deposition of:
                            )
v.                          )   DUANE PARKE
MERCK SHARP & DOHME CORP.   )
                            )
Case No. 09-9336            )

November 9, 2012
9:35 a.m.

Location:  Steele and Biggs
5664 South Green Street
Salt Lake City, UT  84123

Reporter:  Teri Hansen Cronenwett
Certified Realtime Reporter, Registered Merit Reporter

Golkow Technologies, Inc.

877.370.3377 ph/917.591.5672 fax

deps@golkow.com

Duane Parke

Page 198

1  benefit of the provider community?
2      A.  Correct.
3      Q.  Did it have any other purpose?
4      A.  It's available to anybody that wants, wants a
5  copy.  This is just the working -- legally working
6  document that defines policy.
7      Q.  Did you help prepare Exhibit 16?
8      A.  I usually are involved in, in preparing the,
9  the pharmacy part of, of this product.
10     Q.  So for the pharmacy component to the Medicaid
11  Information Bulletin, you either directly prepared it or
12  had some supervisory role in preparing that section?
13     A.  Yeah.  I will say that RaeDell loved to be in
14  charge of MIB.
15     Q.  Would you also --
16     A.  Couldn't type, but she loved to be in charge.
17     Q.  Would you be familiar with the information in
18  the bulletins as they were being put together and
19  disseminated to providers?
20     A.  Yes.
21     Q.  And these were prepared and maintained in the
22  ordinary course of the business for the Medicaid folks
23  at Utah?
24     A.  Yes.
25     Q.  If you turn to page 9, sir.  By the way, is

Page 199

1  this the document that was provided you in -- 10 times
2  by counsel before the meeting?
3      A.  Well, yeah.  You know, it -- this comes out
4  every quarter.  I think I got the next 10 quarters.  And
5  once it's in here, I mean, it's cut in stone.  So it was
6  a little redundancy again.
7      Q.  So the Medicaid Information Bulletins came out
8  quarterly and wouldn't be just what's new.  It would
9  also keep the ongoing list of --
10     A.  That's correct.
11     Q.  -- clinical criteria?  Okay.  And so do you
12  recognize July 2003 as the first time the Cox-2 agents
13  received any prior approval criteria?
14     A.  Let me get on the right page.
15     Q.  Page 9 of 18.
16     A.  That's what it states.  I have no reason to
17  argue with it.
18     Q.  It says, "Cox-2 agents to be placed on prior
19  approval," with three exclamation points.  It's meant to
20  draw your attention to that, right?
21     A.  Yeah.  We want, want people to take up -- take
22  notice.
23     Q.  Okay.  So from 1999 when Vioxx was approved by
24  the FDA, it became automatically reimbursed by Utah
25  Medicaid, correct?

Page 200

1      A.  Correct.
2      Q.  And the only restriction on its use was 60
3  tablets within 30 -- every 30 day period, correct?
4      A.  Correct.
5      Q.  And all Vioxx claims that -- and, and that
6  criteria would be reviewed and accepted at real time
7  when the prescribed -- when the provider -- when the --
8      A.  Yeah.
9      Q.  -- beneficiary goes to the pharmacy?
10     A.  Point of sale, you're correct.
11     Q.  Point of sale.  So for every Vioxx claim
12  approved and reimbursed from May '99 right up through
13  July 2003, those are all valid claims establishing
14  medical necessity for the purposes of Utah Medicaid,
15  correct?
16     A.  They're all valid claims, yes.
17     Q.  There was no attempt to go back and try to
18  pierce through the Vioxx claims submitted to, to
19  disagree with the prescriber's decision to prescribe
20  Vioxx to any of those beneficiaries, correct?
21     A.  Certainly not by me.
22     Q.  And you're not aware of any such review?
23     A.  No.
24     Q.  There would be -- there was no mechanism for
25  Utah Medicaid to do so, was there?

Page 201

1      A.  There was.  The, the medical group could have
2  made it an issue if they so decided.  But I'm not aware
3  of that happening.
4      Q.  Ever for any drug?
5      A.  For any drug.
6      Q.  All right.  So going forward as of July 2003,
7  these are the prior approvals that need to be
8  established point of sale for a claim to be approved,
9  correct?
10     A.  Correct.
11     Q.  And just to briefly review, we have -- the age
12  would be an automatic prior approval, correct?
13     A.  Yes.
14     Q.  So if the patient Medicaid beneficiary's
15  profile established their age, boom, they get approved,
16  right?
17     A.  If they're 65 or over, yes.
18     Q.  And then for those under age 65, there would
19  be approval -- a claim would be granted if, and then
20  there's options for establishing prior approval,
21  correct?
22     A.  Correct.
23     Q.  One of which is the, the physician calls
24  telephonically and accept -- asks for prior approval?
25     A.  That would be the pharmacy actually.

**EXHIBIT B**

Westlaw.

843 F.Supp.2d 654
**(Cite as: 843 F.Supp.2d 654)**

**H**

United States District Court,
E.D. Louisiana.
In re VIOXX PRODUCTS LIABILITY LITIGA-
TION
This Document Relates to: Case No. 10–1115.

MDL No. 1657.
Jan. 3, 2012.

**Background:** State attorney general filed state court
action against prescription drug manufacturer to re-
cover civil penalties and injunctive relief pursuant to
Kentucky Consumer Protection Act (KCPA). After
removal and transfer by Judicial Panel on Multidistrict
Litigation, state moved to remand.

**Holdings:** The District Court, Eldon C. Fallon, J., held
that:
(1) action was not subject to removal pursuant to Class
Action Fairness Act (CAFA);
(2) state was real party in interest; and
(3) action did not raise substantial federal question.

Motion granted.

West Headnotes

**[1] Removal of Cases 334 ⛭107(7)**

334 Removal of Cases
    334VII Remand or Dismissal of Case
        334k107 Proceedings for Remand and Review
Thereof
            334k107(7) k. Evidence. Most Cited Cases

Removing party has burden of establishing fed-
eral jurisdiction.

**[2] Removal of Cases 334 ⛭2**

334 Removal of Cases
    334I Power to Remove and Right of Removal in
General
        334k2 k. Constitutional and statutory provi-
sions. Most Cited Cases

Removal jurisdiction raises significant federalism
concerns, and is strictly construed.

**[3] Removal of Cases 334 ⛭25(1)**

334 Removal of Cases
    334II Origin, Nature, and Subject of Controversy
        334k25 Allegations in Pleadings
            334k25(1) k. In general. Most Cited Cases

In addressing motion to remand for lack of federal
question jurisdiction, court applies "well-pleaded
complaint" rule and searches for federal question
presented on face of complaint. 28 U.S.C.A. § 1331.

**[4] Removal of Cases 334 ⛭15**

334 Removal of Cases
    334I Power to Remove and Right of Removal in
General
        334k15 k. Condition of case. Most Cited Cases

Court looks to claims in state court complaint at
time of removal to assess diversity jurisdiction. 28
U.S.C.A. § 1332(d).

**[5] Removal of Cases 334 ⛭2**

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

843 F.Supp.2d 654
**(Cite as: 843 F.Supp.2d 654)**

334 Removal of Cases
   334I Power to Remove and Right of Removal in General
      334k2 k. Constitutional and statutory provisions. Most Cited Cases

   Parens patriae action filed by state attorney general against prescription drug manufacturer to recover civil penalties and injunctive relief pursuant to Kentucky Consumer Protection Act (KCPA) was not class action, and thus was not subject to removal pursuant to Class Action Fairness Act (CAFA); KCPA provision permitting attorney general actions did not require any showing of commonality, typicality, numerosity, or adequacy of representation, and did not provide notice or opt-out rights to Kentucky citizens or bind them to adverse judgment. 28 U.S.C.A. § 1332(d); KRS 367.190.

**[6] Federal Courts 170B ⬅⬅283**

170B Federal Courts
   170BIV Citizenship, Residence or Character of Parties, Jurisdiction Dependent on
      170BIV(B) Controversies Between Citizens of Different States
         170Bk283 k. Governmental bodies and officers. Most Cited Cases

   State is not "citizen" for purposes of diversity jurisdiction. 28 U.S.C.A. § 1332(d)(2)(A).

**[7] Removal of Cases 334 ⬅⬅2**

334 Removal of Cases
   334I Power to Remove and Right of Removal in General
      334k2 k. Constitutional and statutory provisions. Most Cited Cases

**Removal of Cases 334 ⬅⬅29**

334 Removal of Cases
   334III Citizenship or Alienage of Parties
      334k28 Diversity of Citizenship of Coplaintiffs and Codefendants
         334k29 k. In general. Most Cited Cases

   State, rather than its individual citizens, was real party in interest in parens patriae action filed by state attorney general against prescription drug manufacturer to recover civil penalties and injunctive relief pursuant to Kentucky Consumer Protection Act (KCPA), and thus lack of diversity of citizenship barred removal pursuant to Class Action Fairness Act (CAFA), even though state asserted claim for declaratory judgment, where action was filed pursuant to statute giving attorney general express authority to seek "restraining order or temporary or permanent injunction to prohibit" KCPA violations, suit sought civil penalties, and request for declaratory judgment did not measurably change case. 28 U.S.C.A. § 1332(d)(2)(A); KRS 367.190.

**[8] Federal Courts 170B ⬅⬅241**

170B Federal Courts
   170BIII Federal Question Jurisdiction
      170BIII(D) Pleading
         170Bk241 k. Allegations in pleadings in general. Most Cited Cases

   Federal question exists only in those cases in which well-pleaded complaint establishes either that federal law creates cause of action or that plaintiff's right to relief necessarily depends on resolution of substantial question of federal law. 28 U.S.C.A. § 1331.

**[9] Federal Courts 170B ⬅⬅161**

170B Federal Courts
   170BIII Federal Question Jurisdiction
      170BIII(A) In General

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

843 F.Supp.2d 654
**(Cite as: 843 F.Supp.2d 654)**

170Bk161 k. Federal question jurisdiction in general. Most Cited Cases

Federal question jurisdiction exists where (1) resolving federal issue is necessary to resolution of state law claim; (2) federal issue is actually disputed; (3) federal issue is substantial; and (4) federal jurisdiction will not disturb balance of federal and state judicial responsibilities. 28 U.S.C.A. § 1331.

**[10] Removal of Cases 334 ⇌19(1)**

334 Removal of Cases
    334II Origin, Nature, and Subject of Controversy
        334k19 Cases Arising Under Laws of United States
            334k19(1) k. In general. Most Cited Cases

**Removal of Cases 334 ⇌25(1)**

334 Removal of Cases
    334II Origin, Nature, and Subject of Controversy
        334k25 Allegations in Pleadings
            334k25(1) k. In general. Most Cited Cases

State's action against prescription drug manufacturer to recover civil penalties and injunctive relief pursuant to Kentucky Consumer Protection Act (KCPA) did not raise substantial federal question, and thus was not removable on basis of federal question jurisdiction, even though complaint alleged that manufacturer failed to comply with Food and Drug Administration (FDA) disclosure regulations, where federal issues were not essential to state's claims, and state sought civil penalties only under KCPA. 28 U.S.C.A. § 1331; KRS 367.190.

**\*655** Orran L. Brown, BrownGreer PLC, Richmond, VA, for Plaintiff.

Eric Michael Liddick, Harry Simms Hardin, III, Madeleine Fischer, Jones Walker, New Orleans, LA,

for Defendant.

***ORDER & REASONS***

ELDON C. FALLON, District Judge.

Currently pending before the Court is the Commonwealth of Kentucky's Motion to Remand (Rec. Doc. 63194). The Court has reviewed the briefs and the applicable law and heard oral argument on the motion and is now prepared to rule.

**I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

To put this matter in perspective, a brief review of this litigation is appropriate. This multidistrict products liability litigation involves the prescription drug Vioxx, known generically as Rofecoxib. Merck, a New Jersey corporation, researched, designed, manufactured, marketed and distributed Vioxx to relieve pain and inflammation resulting from osteoarthritis, rheumatoid arthritis, menstrual pain, and migraine headaches. On May 20, 1999, the Food and Drug Administration approved Vioxx for sale in the United States. Vioxx remained publicly available until September 20, 2004, when Merck withdrew it from the market after data from a clinical trial known as APPROVe indicated that the use of Vioxx increased the risk of cardiovascular thrombotic events such as myocardial infarction (heart attack) and ischemic stroke. Thereafter, thousands of individual suits and numerous class actions were filed against Merck **\*656** in state and federal courts throughout the country alleging various products liability, tort, fraud, and warranty claims. It is estimated that 105 million prescriptions for Vioxx were written in the United States between May 20, 1999 and September 30, 2004. Based on this estimate, it is thought that approximately 20 million patients have taken Vioxx in the United States. [FN1]

> FN1. For a more detailed factual background describing the events that took place before the inception of this multidistrict litigation, see In re Vioxx Prods. Liab. Litig., 401 F.Supp.2d 565 (E.D.La.2005) (resolving

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

843 F.Supp.2d 654
**(Cite as: 843 F.Supp.2d 654)**

*Daubert* challenges to a number of expert witnesses).

California was the first state to institute a consolidated state court proceeding on October 30, 2002. New Jersey and Texas soon followed suit, on May 20, 2003 and September 6, 2005, respectively. On February 16, 2005, the Judicial Panel on Multidistrict Litigation ("MDL") conferred MDL status on <u>Vioxx</u> lawsuits filed in various federal courts throughout the country and transferred all such cases to this Court to coordinate discovery and to consolidate pretrial matters pursuant to <u>28 U.S.C. § 1407</u>. *See In re Vioxx Prods. Liab. Litig.,* 360 F.Supp.2d 1352 (J.P.M.L.2005). Additionally, a number of state and local governments filed suits against Merck seeking to recover amounts paid for <u>Vioxx</u> prescriptions on behalf of their citizens or civil penalties pursuant to state consumer protection statutes.

The Commonwealth of Kentucky, through Attorney General Jack Conway, filed one such action against Merck in the Circuit Court of Franklin County, Kentucky on September 28, 2009. Merck removed the case to the United States District Court for the Eastern District of Kentucky, asserting federal question jurisdiction under <u>28 U.S.C. § 1331</u> and diversity jurisdiction pursuant to the Class Action Fairness Act ("CAFA"), <u>28 U.S.C. § 1332(d)</u>. The case was transferred to this Court by the JPML on April 15, 2010.

On June 29, 2010, the Court issued Pretrial Order 39A and set a schedule for coordinated discovery in the pending Governmental actions, including Kentucky's suit. The Court stayed discovery in the governmental cases on November 22, 2010 so that the parties could explore global resolution of the governmental actions. During the stay, counsel for the Commonwealth of Kentucky raised the issue of a briefing schedule on a motion to remand or transfer its case to Kentucky state court. At a status conference on August 4, 2011, the Court set a briefing schedule.

## II. PRESENT MOTION

Kentucky has filed a motion to remand the case to Kentucky state court for lack of subject matter jurisdiction. With respect to diversity jurisdiction, the Commonwealth contends that the case is not a class action for the purposes of CAFA and that minimal diversity is lacking because Kentucky, the only named plaintiff, is not a citizen of itself. With respect to federal question jurisdiction, it argues that no federal question appears on the face of the complaint.

Merck opposes remand. It argues the case is functionally a class action for the purposes of CAFA jurisdiction and that the citizens of Kentucky supply the requisite diverse citizenship because they are the real parties in interest to some of the relief sought in the Complaint. Merck also argues that the Court has federal question jurisdiction over the case because the complaint implicates federal pharmaceutical laws and regulations.

## III. LAW AND ANALYSIS

### A. Standard on Motions to Remand

[1][2] As the removing party, Merck has the burden of establishing federal jurisdiction.**\*657** *Howery v. Allstate Ins. Co.,* 243 F.3d 912, 916 (5th Cir.2001). Removal jurisdiction "raises significant federalism concerns" and is strictly construed. *Willy v. Coastal Corp.,* 855 F.2d 1160, 1164 (5th Cir.1988). Doubts regarding jurisdiction should be resolved against exercising jurisdiction. *Acuna v. Brown & Root, Inc.,* 200 F.3d 335, 339 (5th Cir.2000).

[3][4] The parties dispute whether the Court has either federal question jurisdiction pursuant to <u>28 U.S.C. § 1331</u> or diversity jurisdiction pursuant to <u>28 U.S.C. § 1332(d)</u>. In addressing a motion to remand for lack of federal question jurisdiction, the Court applies the " 'well-pleaded complaint' rule and

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

843 F.Supp.2d 654
**(Cite as: 843 F.Supp.2d 654)**

searches for a federal question presented on the face of the complaint." *PCI Transp., Inc. v. Forth Worth & W. R.R. Co., 418 F.3d 535, 543 (5th Cir.2005).*[FN2] Likewise, the Court looks to the claims in the state court complaint at the time of removal to assess diversity jurisdiction. *Manguno v. Prudential Prop. & Cas. Ins. Co., 276 F.3d 720, 723 (5th Cir.2002).*

> FN2. The parties dispute the extent to which the Court can look beyond the face of Kentucky's complaint to assess jurisdiction. "It is well-established that in determining whether there is jurisdiction, federal courts look to the substance of the action and not only at the labels that the parties may attach." *Louisiana ex rel. Caldwell v. Allstate Ins. Co., 536 F.3d 418, 424 (5th Cir.2008).* The Fifth Circuit "has recognized that 'defendants may pierce the pleadings to show that the ... claim has been fraudulently pleaded to prevent removal.' " *Id.* at 424–25 (quoting *Burchett v. Cargill, Inc., 48 F.3d 173, 175 (5th Cir.1995)).*

> In *Caldwell,* the district court found it appropriate "to look to the substance of the complaint—to pierce the pleadings—and to determine the real nature of the claim asserted." 536 F.3d at 423. The Fifth Circuit stated that it "review[s] a district court's decision to pierce the pleadings as well as the procedure for doing so for abuse of discretion," but found the issue waived because the Defendants did not object at the district court level. *Id.* at 425.

> Kentucky argues that Merck has not given the Court a reason to pierce the pleadings and look past the plain language of the complaint, which on its face is a claim only by the Commonwealth of Kentucky against Merck pursuant to Kentucky law. As will be explained below, the Court need

not pierce the pleadings to determine that the case cannot be a "class action" governed by CAFA. However, with respect to whether any citizen of Kentucky is a real party in interest to the suit, even if the Court were to pierce the pleadings, remand would be required.

First, the Court will first set forth the allegations in the Commonwealth's complaint which frame the jurisdictional arguments. Then, the Court will discuss why there is no diversity jurisdiction because this case is not a class action within the meaning of CAFA. Finally, the Court will discuss why no federal question appears on the face of the complaint.

**B. The Commonwealth of Kentucky's Complaint**

The jurisdictional issues are framed by the allegations in Kentucky's complaint. The complaint alleges a single count pursuant to the Kentucky Consumer Protection Act ("KCPA"). The KCPA announces that it is "a strong and effective consumer protection program to protect the public interest and the well-being of both the consumer public and the ethical sellers of goods and services." Ky.Rev.Stat. Ann. § 367.120. Thus, the Act prohibits "[u]nfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce." *Id.* § 367.170.

Section 367.170 of the KCPA can be enforced in two ways. First, § 367.190 creates a cause of action for the Kentucky Attorney General. The Kentucky Attorney General may file suit and seek a temporary or permanent injunction against an unlawful practice:

> **\*658** (1) Whenever the Attorney General has reason to believe that any person is using, has used, or is about to use any method, act or practice declared by KRS 367.170 to be unlawful, and that proceedings would be in the public interest, he may immediately move in the name of the Commonwealth in a Circuit Court for a restraining order or temporary or per-

843 F.Supp.2d 654
**(Cite as: 843 F.Supp.2d 654)**

manent injunction to prohibit the use of such method, act or practice....

*Id.* § 367.190(1). The Attorney General also has a right to recover civil penalties for willful violations of the KCPA:

(2) In any action brought under KRS 367.190, if the court finds that a person is willfully using or has willfully used a method, act, or practice declared unlawful by KRS 367.170, the Attorney General, upon petition to the court, may recover, on behalf of the Commonwealth, a civil penalty of not more than two thousand dollars ($2,000) per violation, or where the defendant's conduct is directed at a person aged sixty (60) or older, a civil penalty of not more than ten thousand dollars ($10,000) per violation, if the trier of fact determines that the defendant knew or should have known that the person aged sixty (60) or older is substantially more vulnerable than other members of the public.

*Id.* § 367.990(2). Thus, the KCPA expressly grants to the Attorney General the right to seek injunctive relief and civil penalties. The statute does not require the joinder of any Kentucky citizens as named or unnamed plaintiffs. The KCPA does not provide an express basis for pursuing declaratory relief that a defendant has violated the Act; however, a generic civil procedure statute allows a plaintiff to seek a declaratory judgment. *Id.* § 418.040.

Second, § 367.220 of the KCPA creates a private right of action for a Kentucky citizen to pursue actual damages and attorney's fees and costs, and possibly some forms of equitable relief for violations of the KCPA:

(1) Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property ... as a result of the use or employment by another person of a method, act or practice declared unlawful by KRS 367.170, may bring an action ... to recover **actual damages.** The court may, in its discretion, award actual damages and may provide **such equitable relief as it deems necessary or proper.** Nothing in this subsection shall be construed to limit a person's right to seek punitive damages where appropriate.

(2) Upon commencement of any action brought under subsection (1) of this section, the clerk of the court shall mail a copy of the complaint or other initial pleading to the Attorney General and, upon entry of any judgment or decree in the action, shall mail a copy of such judgment or decree to the Attorney General.

(3) In any action brought by a person under this section, the court may award, to the prevailing party, in addition to the relief provided in this section, **reasonable attorney's fees** and costs.

(4) Any permanent injunction, judgment or order of the court made under KRS 367.190 shall be prima facie evidence in an action brought under this section that the respondent used or employed a method, act or practice declared unlawful by KRS 367.170.

(5) Any person bringing an action under this section must bring such action within one (1) year after any action of the Attorney General has been terminated **\*659** or within two (2) years after the violation of KRS 367.170, whichever is later.

*Id.* § 367.220 (emphasis added).

Pursuant to a separate generic statute, any Kentucky plaintiff may seek declaratory relief. *Id.* § 418.040. Thus, the KCPA allows a private citizen to obtain actual damages, appropriate equitable relief, and attorneys' fees. Additionally, a permanent injunction obtained in a prior suit by the Kentucky Attorney General is prima facie evidence in a subsequent citizen

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

843 F.Supp.2d 654
**(Cite as: 843 F.Supp.2d 654)**

suit.

The Complaint alleges a single count pursuant to § 367.190, the attorney-general cause of action. According to the complaint, Merck marketed and sold Vioxx despite its knowledge of the drug's cardiac risks, and "engaged in representations and omissions which are material, and which have the tendency or capacity, or which are likely, to mislead prescribers, purchasers and recipients of Vioxx." (Complt., ¶ 33). On the basis of that violative conduct, Kentucky seeks the following relief: "entry of a judgment against the Defendant, Merck, finding that it committed repeated violations of KRS 367.170"; "an Order permanently enjoining Merck from further acts in violation of KRS 367.170"; "an award of civil penalties in the amount of two thousand dollars ($2,000) for each violation of KRS 367.170, and ten thousand dollars ($10,000) for each violation targeted to consumers over the age of 65, pursuant to KRS 367.990"; and "an award [of] reasonable attorney's fees and costs to Plaintiff." (Complt. ¶ 34).

**C. Diversity Jurisdiction Under the Class Action Fairness Act**

Under CAFA, federal district courts have diversity jurisdiction over a civil action "in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and which is a class action in which ... any member of a class of plaintiffs is a citizen of a State different from any defendant" and the class has at least 100 members. 28 U.S.C. § 1332(d)(2), (d)(5). If there is minimal diversity, a class of 100 members or more, and more than $5,000,000 in controversy, a class action filed in state court is properly removable. The party removing to federal court has the burden of establishing jurisdiction under CAFA. *Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc.,* 485 F.3d 793, 797 (5th Cir.2007).

The parties dispute two of those jurisdictional elements: whether the Kentucky lawsuit is a "class action" and whether there is minimal diversity of citizenship.

**1) Is the Kentucky Suit a "Class Action" Removable Under CAFA?**

Courts are beginning to address the interaction between CAFA and *parens patriae* lawsuits brought by state Attorneys General. The doctrine of *parens patriae* is broad, but it encompasses a sovereign state's right to enforce its sovereign or quasi-sovereign interests in court, as opposed to its proprietary interests or the interest of individual private citizens. *See Louisiana ex rel. Caldwell v. Allstate Insurance Co., 536 F.3d at 425–27. Parens patriae* authority may exist as a common law right to enforce some law, or it may be expressly granted through state statutory law. *See* Dwight D. Carswell, Comment, *CAFA and Parens Patriae Actions, 78 U. Chi. L. Rev. 345, 347–48 (2011).* The parties agree that the KCPA right of action granted to the Kentucky Attorney General is a *parens patriae*-type claim.

CAFA only permits removal from state court if a case is a class action. 28 U.S.C. § 1332(d)(1); 28 U.S.C. § 1453. The statute defines a "class action" as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing*660 an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B).

The issue is whether CAFA's definition of "class action" is broad enough to include a *parens patriae* suit such as this one. The Fifth Circuit has alluded to this issue, although the parties dispute the extent to which it provided an answer or at least guidance. In *Louisiana ex rel. Caldwell v. Allstate Insurance Co.,* the Louisiana Attorney General filed a *parens patriae* suit against a variety of insurers alleging violations of the state Monopolies Act seeking treble damages on behalf of policyholders as well as injunctive relief. *See* 536 F.3d at 422–23. The defendants removed on the basis of CAFA jurisdiction and argued "that although

843 F.Supp.2d 654
**(Cite as: 843 F.Supp.2d 654)**

labeled *parens patriae,* this case is in substance and fact a 'class action' *or* a 'mass action' as those terms are used in CAFA." *Id.* at 423 (emphasis added). The district court denied a motion to remand and the Fifth Circuit affirmed. The Circuit concluded that because damages on behalf of policyholders were sought, the policyholders were real parties in interest as to that relief. *See id.* at 429–30.[FN3] Because the policyholders were real parties in interest as to some of the relief, the case satisfied the requirements for a "mass action" under CAFA. *See id.* at 430 (citing 28 U.S.C. § 1332(d)(11)(B)(i)).[FN4]

> FN3. The Fifth Circuit's reasoning on this point will be discussed in greater detail below.

> FN4. CAFA applies to "mass actions":

> (A) For purposes of this subsection and section 1453 [governing removal of class actions] a mass action shall be deemed to be a class action removable under paragraphs (2) through (10) if it otherwise meets the provisions of those paragraphs.

> (B) (i) As used in subparagraph (A), the term "mass action" means any civil action (except a civil action within the scope of section 1711(2) [which defines class actions] ) in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact, except that jurisdiction shall exist only over those plaintiffs whose claims in a mass action satisfy the jurisdictional amount requirements under subsection (a).

> ...

> (C) Any action(s) removed to Federal court pursuant to this subsection shall not thereafter be transferred to any other court pursuant to section 1407, or the rules promulgated thereunder, unless a majority of the plaintiffs in the action request transfer pursuant to section 1407.

28 U.S.C. § 1332(d)(11). "Mass actions" do not include "any civil action in which ... all of the claims in the action are asserted on behalf of the general public (and not on behalf of individual claimants or members of a purported class) pursuant to a State statute specifically authorizing such action." 28 U.S.C. § 1332(d)(11)(B)(ii)(I). Both class actions and mass actions are removable pursuant to CAFA, but a mass action may not be transferred to an MDL without consent of the parties. Merck removed this case as a "class action," not a "mass action," and does not now take the position that the case is a "mass action."

Thus, the Fifth Circuit's precise holding in *Caldwell* is limited to the CAFA definition of mass actions, not class actions. The court expressly declined to decide whether the *parens patriae* lawsuit could also proceed as a class action on remand:

> Since we have concluded that this case was properly removed under CAFA's "mass action" provision, we need not address whether this lawsuit could, following further proceedings on remand, properly proceed as a class action under CAFA.

*Id.* Essentially, the Fifth Circuit looked past the *parens patriae* label on the suit, concluded that individual Louisiana insurance policyholders were being represented and should be added to the suit, and that their inclusion would make the case a removable "mass action." *See id.* at 429–30 ("We leave to the

843 F.Supp.2d 654
**(Cite as: 843 F.Supp.2d 654)**

district judge's capable *661 hands the manner by which the individual policyholders are to be added to this action."). But strictly speaking, the Fifth Circuit did not address the breadth of the definition of "class action" for the purposes of CAFA removal.[FN5]

> FN5. *Caldwell* was a split decision on this point. *Id.* at 432 (Southwick, J., dissenting). Although not concerned with whether the case was expressly labeled as a "class action," the dissent nonetheless concluded that, as pleaded, it was not filed under the requisite type of rule or statute required by CAFA:
>
>> The definitive aspect of CAFA-removable "class action" is a statute or rule of procedure that authorizes a representative action as a class action, that is, a state equivalent of Rule 23. The Louisiana Monopolies Act appears to be no such statute. Nowhere does the Act authorize a representative action. To be sure, the Act empowers the Attorney General to enforce its provisions. But this provision does not cast the Attorney General in the role of a Rule 23 class representative every time he seeks to enforce the Act. Further, the Attorney General has neither joined additional parties nor invoked Louisiana class-action procedures. "CAFA's 'class action' provision is not meant to confer federal jurisdiction any time the removing party asserts that the plaintiff must act in a representative capacity."
>
> *Id.* at 434–35 (Southwick, J., dissenting) (citation omitted); *see also* Alexander Lemann, Note, *Sheep in Wolves' Clothing: Removing Parens Patriae Suits Under the Class Action Fairness Act,* 111 Colum. L.Rev. 121 (2011).

On the other hand, the Fourth, Seventh, and Ninth Circuit Courts of Appeal have expressly held that *parens patriae* suits brought by state Attorneys General are not "class actions" removable under CAFA. *Washington v. Chimei Innolux Corp.,* 659 F.3d 842 (9th Cir.2011); *West Virginia ex rel. McGraw v. CVS Pharmacy, Inc.,* 646 F.3d 169 (4th Cir.2011), *cert. denied,* —— U.S. ——, 132 S.Ct. 761, 181 L.Ed.2d 484 (2011); *LG Display Co., Ltd. v. Madigan,* 665 F.3d 768 (7th Cir.2011).

In *CVS Pharmacy,* the West Virginia Attorney General filed suit against five pharmacies for violating the West Virginia Consumer Credit Protection Act and state pharmacy regulations, pursuant to state statutes expressly authorizing enforcement actions. *See* 646 F.3d at 171. The defendants removed and the district court remanded, concluding that the case was not filed under a state statute similar to Rule 23 and therefore was not a class action removable under CAFA. *Id.* On appeal, the Fourth Circuit considered the question to be a matter of "straightforward statutory analysis of CAFA." *Id.* at 174. The court analyzed the "essence" of Rule 23 and concluded that to be "like Rule 23 in substance or in essentials," a state statute must include criteria for numerosity, commonality, typicality, and adequacy of representation and:

> at a minimum, provide a procedure by which a member of a class whose claim is typical of all members of the class can bring an action not only on his own behalf, but also on behalf of all others in the class, such that it would not be unfair to bind all class members to the judgment entered for or against the representative party.

*See id.* at 174–75. The West Virginia Attorney General suit was filed under statutes that contained no numerosity, commonality, typicality, or adequacy of representation criteria and permitted the Attorney General to file suit as representative of the State and not as a member of a class of plaintiffs with a typical

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

843 F.Supp.2d 654
**(Cite as: 843 F.Supp.2d 654)**

claim. *See id.* at 175–77. Therefore, the suit was not filed under a state Rule–23 analogue and was not a class action subject to CAFA.[FN6]

> FN6. *CVS Pharmacy* was a split decision. *See id.* at 179 (Gilman, J., dissenting). The dissent opined that the "essence of the action" was that of a class action because the Attorney General was representing the interests of a large group. *See id.* at 179–80 (Gilman, J., dissenting). The dissent concluded that "the elements of numerosity, commonality, typicality, and adequacy of representation" were " 'bells and whistles' whose absence in the pleadings do not prevent the Attorney General's suit from being considered a class action under CAFA." *Id.* at 179 (Gilman, J., dissenting).

**\*662** The Ninth Circuit recently reached the same conclusion. In *Washington v. Chimei Innolux Corp.*, a group of state Attorneys General filed *parens patriae* actions against LCD panel manufacturers alleging price-fixing in violation of state antitrust laws. 659 F.3d at 846. The complaints sought declaratory and injunctive relief, civil penalties, and damages and restitution to state agencies and consumers. *See id.* The defendants removed the cases to federal court, and district courts remanded the cases on the basis that the *parens patriae* actions were not class actions removable under CAFA. *See id.* The Ninth Circuit agreed. Starting with the statutory definition of "class action," the court held that CAFA unambiguously requires a "class action" be "brought under a state statute or rule similar to Rule 23 that authorizes an action 'as a class action.' " *Id.* at 848 (citing 28 U.S.C. § 1332(d)(1)(B)). The court particularly emphasized the requirement that the state statute or rule authorize an action as a class action, which incorporates "the typical class action requirements of showing numerosity, commonality, typicality, or adequacy of representation." *Id.* The attorney general suits were brought pursuant to state statutes authorizing the attorneys

general to bring suit as representatives, but without those class action mechanics; thus, they were not class actions and were not removable under CAFA. *See id.*

Finally, the Seventh Circuit recently joined the Fourth and Ninth in concluding that *parens patriae* actions do not fall within CAFA jurisdiction. *LG Display Co., Ltd. v. Madigan,* 665 F.3d at 770–71.[FN7] The Attorney General of Illinois filed suit pursuant to a *parens patriae* provision of the Illinois Antitrust Act. *Id.* at 770–71. Citing *CVS Pharmacy* and *Chimei Innolux,* the court held that the *parens patriae* claim was not a class action for the purposes of CAFA because the authorizing statute "does not impose any of the familiar Rule 23 constraints." *Id.* at 772.

> FN7. In *Madigan,* the Seventh Circuit was presented with a petition to take an appeal from the district court's remand order, pursuant to 28 U.S.C. § 1453(c). The circuit court concluded that the proper outcome was to deny the petition for appeal for lack of jurisdiction, rather than grant the appeal and affirm the remand order. 665 F.3d at 770–71. However, the Court noted that although its approach was "technically different from what the Ninth and Fourth Circuits have done in similar cases," those "discussions of the relationship between *parens patriae* actions and CAFA [are] helpful and persuasive." *Id.*

Other district courts have also concluded that attorney general *parens patriae* actions are not "class actions" removable under CAFA. *See Illinois v. AU Optronics Corp.,* 794 F.Supp.2d 845, 857–58 (N.D.Ill.2011); *Arizona ex rel. Horne v. Countrywide Fin. Corp.,* No. CV–11–131–PHX–FJM, 2011 WL 995963, at \*3 (D.Ariz. Mar. 21, 2011); *Missouri ex rel. Koster v. Portfolio Recovery Assocs., Inc.,* 686 F.Supp.2d 942, 944–47 (E.D.Mo.2010); *see also West Virginia ex rel. McGraw v. Comcast Corp.,* 705 F.Supp.2d 441, 452–54 (E.D.Pa.2010) (holding that suit brought by state attorney general pursuant to

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

843 F.Supp.2d 654
**(Cite as: 843 F.Supp.2d 654)**

statute which provided for adequate representation and notice and opt-out rights for represented state citizens was sufficiently similar to *663 Rule 23 and counted as a "class action" for CAFA purposes).[FN8]

> FN8. Collectively, these opinions have thoroughly dissected the relevant legislative history; suffice it to say that the guidance is inconclusive. *See Caldwell,* 536 F.3d at 424 & n. 4 (noting that Congress "considered and rejected an amendment that would have exempted class actions filed by state attorneys general from removal under CAFA" but that it "appears that some Senators rejected the amendment because they thought it was unnecessary") (citations omitted); *see also CVS Pharmacy,* 646 F.3d at 177 (summarizing legislative history, identifying conflicts in testimony, and giving little weight to Senate Report published after CAFA was signed into law).

Here, Kentucky argues that pursuant to the reasoning in *CVS Pharmacy, Chimei Innolux,* and *LG Display,* the present lawsuit is not a class action subject to CAFA. As explained above, the KCPA creates separate causes of action for the Attorney General and for private citizens with different available remedies. The KCPA section creating the Attorney General cause of action does not require any showing of commonality, typicality, numerosity, or adequacy of representation, nor does it provide notice or opt-out rights to Kentucky citizens or, indeed, bind them to an adverse judgment. Thus, Kentucky argues, the suit is not brought pursuant to a "State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons *as a class action.*" 28 U.S.C. § 1332(d)(1)(B) (emphasis added). If it is not a class action, then it is not subject to CAFA and was improperly removed to federal court. 28 U.S.C. § 1332(d)(2); 28 U.S.C. § 1453.

Merck responds that *CVS Pharmacy* and *Chimei*

*Innolux* are wrongly decided because they are "based on an extremely formalistic assumption—that the state rule authorizing the representative action must be 'similar' to Rule 23." (Rec. Doc. 63309 at 4; Rec. Doc. 63477 at 1–2). Rather, Merck urges that the Court must follow *Caldwell* and read the CAFA definition of "class action" expansively to include this lawsuit and to retain jurisdiction.[FN9] Merck also argues that the flexibility demonstrated in *Caldwell* is inconsistent with the reasoning *CVS Pharmacy* and *Chimei Innolux.* According to Merck, "[a]s *Caldwell* explained, CAFA's jurisdictional provisions focus on the substance of a case, rather than the use of magic words in the pertinent complaint." (Rec. Doc. 63309 at 3). Therefore, "this case too is a 'class action' within the meaning of CAFA because it is a 'representative' action—i.e., Kentucky consumers (in addition to the Commonwealth itself) are the real parties in interest." (*Id.* at 4). Merck argues that *Chimei Innolux* and *CVS Pharmacy,* on the other hand, are examples of "precisely the *664 sort of formalistic reasoning that the Fifth Circuit *did* expressly reject in *Caldwell.*" (Rec. Doc. 63477) (emphasis in original).

> FN9. Merck also relies on *College of Dental Surgeons v. Connecticut General Life Insurance Co.,* 585 F.3d 33 (1st Cir.2009). In *College of Dental Surgeons,* a professional organization representing Puerto Rican dentists filed suit against a variety of insurance companies and HMOs; the complaint "plainly invoked Puerto Rico's class action rules." *Id.* at 37, 41. The defendants removed on the basis of CAFA and the district court remanded because it "thought itself without subject matter jurisdiction because the complaint did not *sufficiently* define the plaintiff class." *Id.* at 39 (emphasis added). The First Circuit reversed, concluding that the court did have CAFA jurisdiction because the critical inquiry was whether the case was *filed* as a class action, not whether it could be successfully certified as pleaded. *Id.* at

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

843 F.Supp.2d 654
(Cite as: 843 F.Supp.2d 654)

39–40. _College of Dental Surgeons_ did not address whether a complaint not expressly designated a class action can nonetheless be a class action for CAFA purposes, and thus the opinion is not on point. _See New Jersey Dental Assoc. v. Metro. Life Ins. Co.,_ 2010 WL 3811305, at *3 (D.N.J.2010) (holding that _College of Dental Surgeons_ is irrelevant to determining whether complaint that "does not invoke any state or federal class action rules" is a class action for purposes of CAFA).

[5] The Court is not persuaded. First, _Caldwell_ did not directly address the issue and is not in conflict with the opinions of the Fourth, Seventh, and Ninth Circuits. The Fifth Circuit did not hold that "CAFA is satisfied by a representative action" in all cases, as Merck suggests (Rec. Doc. 63309 at 3). Rather, _Caldwell_ relied on the "mass action" provision and expressly reserved the question of whether the case might _also_ proceed as a class action on remand. _See_ 536 F.3d at 430. _Caldwell_ is entirely compatible with _CVS Pharmacy, Chimei Innolux,_ and _LG Display._

The reasoning in these cases is supported by the plain language of CAFA. Congress chose to define "class action" not in terms of joinder of individual claims or by representative relief in general, but in terms of the statute or rule the case is filed under. 28 U.S.C. § 1332(d)(1)(B). This is a statutory requirement; no amount of piercing the pleadings will change the statute or rule under which the case is filed. _Cf. In re Katrina Canal Litig. Breaches,_ 524 F.3d 700, 705 (5th Cir.2008) ("CAFA only requires that the action be brought under Rule 23 or a state statute that _authorizes_ class actions to be brought by a person.") (emphasis in original). If this is a formalistic outcome, it is a formalism dictated by Congress. Moreover, it is an understandable bright-line rule.

Certainly, the Fifth Circuit in _Caldwell_ cited legislative history for the proposition that "Congress

emphasized that the term 'class action' should be defined broadly to prevent 'jurisdictional games-manship.' " _Caldwell,_ 536 F.3d at 424 (quoting S.Rep. No. 109–14, at 35 (2005), U.S.Code Cong. & Admin. News 2005, p. 3.). But the Court cannot stretch that definition beyond the limits set by Congress, and Congress tied the scope of CAFA to Federal Rule of Civil Procedure 23. Merck reads _Caldwell_ too broadly for the proposition that CAFA applied in that case, and should apply here, "because the state's claims, in substance, advanced the interests of the state's citizens." (Rec. Doc. 63477). Such a reading would greatly expand the scope of CAFA because a state can hardly ever be said to take any action that does not advance the interest of its citizens.

The plain reading of the statutory definition of "class action" necessarily excludes this case. CAFA does not apply and the case was improperly removed from state court. The Court lacks diversity jurisdiction on that basis alone but the Court will address the matter further.

### 2) Is Minimal Diversity of Citizenship Present?

The parties also dispute whether minimal diversity of citizenship is present. The Court must remand because the case is not a class action for CAFA purposes, and perhaps the Court need not reach this issue. Nonetheless, considering the possibility that an appeal from this Order and Reasons might be pursued, _see_ 28 U.S.C. § 1453(c), the Court will address why it appears that minimal diversity of citizenship is also lacking.[FN10]

> FN10. Kentucky argues in its reply brief that Merck has conceded the absence of minimal diversity because Merck has retreated from a specific argument asserted in its notice of removal. Courts frequently hold that a party cannot remove a case to federal court on one jurisdictional theory and then later oppose a motion to remand on a different theory. However, those cases involve a defendant

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

843 F.Supp.2d 654
**(Cite as: 843 F.Supp.2d 654)**

removing on one statutory jurisdictional basis and asserting an entirely different statutory basis for jurisdiction in opposing remand, or removing on the basis of diversity jurisdiction and arguing fraudulent joinder for the first time in opposition to a motion to remand. *See Blakeley v. United Cable Sys., 105 F.Supp.2d 574, 579 (S.D.Miss.2000)* (party removed on the basis of bankruptcy jurisdiction and only argued federal-question jurisdiction in opposition to motion to remand); *Phillips v. BJ's Wholesale Club, Inc., 591 F.Supp.2d 822, 825–26 (E.D.Va.2008)* (party removed on the basis of diversity jurisdiction and later attempted to argue that one defendant was fraudulently joined); *UMLIC Cons., Inc. v. Spectrum Fin. Servs. Corp., 665 F.Supp.2d 528, 533 (W.D.N.C.2009)* (party removed on the basis of diversity jurisdiction and only later argued that non-diverse plaintiff was not a real party in interest).

Merck articulated CAFA as a basis for jurisdiction when it removed the case to federal court. Although the nuances of the argument may have changed slightly, Merck has not relied on an entirely new theory of jurisdiction to oppose the motion to remand. Accordingly, Merck has not waived any of the arguments for jurisdiction it now presents.

**\*665** [6] "The law is settled that in an action where a state is a party ... a state is not a citizen for purposes of diversity jurisdiction." *Melder v. Allstate Corp., 404 F.3d 328, 335 (5th Cir.2005)*. The Commonwealth of Kentucky is the sole plaintiff named in the complaint and has no citizenship for the purposes of diversity. Thus, on the face of the complaint there is no "member of a class of plaintiffs [that] is a citizen of a State," and minimal diversity is lacking. *28 U.S.C. § 1332(d)(2)(A)*. Merck argues that Kentucky citizens

are real parties in interest as to some of the relief sought and that their citizenship provides the requisite minimal diversity.

*Caldwell* is the guiding Fifth Circuit case on this question. First, *Caldwell* analyzed the real party in interest on a claim-by-claim basis, rather than looking at the lawsuit as a whole. *See id., 536 F.3d at 429–30.* That is, the Fifth Circuit considers whether a state plaintiff or its citizens are the real parties in interest with respect to each type of relief sought. *See id.* Under this analysis, the Court would have CAFA jurisdiction over any claims in which citizens of Kentucky are the real parties in interest as to the particular relief sought, as well as discretion to retain jurisdiction over the entire case or to sever and remand the claims as to which Kentucky is the only real party in interest. *See id. at 430.* The Fifth Circuit is evidently in the minority in this approach; other courts addressing attorney general *parens patriae* suits look to the complaint and suit as a whole to determine whether or not the state is the real party in interest as to the totality of the claims. *See Ohio v. GMAC Mortg., LLC, 760 F.Supp.2d 741, 745 (N.D.Ohio 2011).*

In *Caldwell,* as explained above, the Louisiana Attorney General filed suit against a host of insurance companies and related entities seeking two kinds of relief: injunctive relief and treble damages on behalf of the policyholders allegedly injured by the conduct. *See id. at 422, 429–30.* The Fifth Circuit explained that "[g]enerally speaking, a party is a real party in interest when it is 'directly and personally concerned in the outcome of the litigation to the extent that his participation therein will insure a genuine adversary issue between the parties.' " *Caldwell, 536 at 428* (quoting *Land O'Lakes Creameries v. La. State Bd. of Health, 160 F.Supp. 387, 388 (E.D.La.1958)*). " 'Such an interest is lacking when a state undertakes to sue for the particular benefit of a limited number of citizens.... The State must show a direct interest of its own....' " *Id.* (quoting *Land O'Lakes Creameries, 160 F.Supp. at 388).* The Fifth Circuit also cited another court for the

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

843 F.Supp.2d 654
**(Cite as: 843 F.Supp.2d 654)**

proposition that, "[i]n the context of *parens patriae* actions ... 'The state is the real party in interest when an action concerns a type of 'injury' that the state *666 either has addressed or would likely attempt to address through its laws to further the "well-being of its populace." ' " *Id.* (quoting *Harvey v. Blockbuster,* 384 F.Supp.2d 749, 755 (D.N.J.2005)).

In *Caldwell,* Louisiana citizens were the real parties in interest with respect to the treble damages claims because the statute creating the right "plainly states that 'any *person* who is injured in his business or property' under the Monopolies Act" shall recover treble damages. *Id.* at 429 (emphasis added). Therefore, because "individuals have the right to enforce this provision," the individual policyholders were the real parties in interest with respect to that claim for relief. *See id.* Because the policyholders were real parties in interest as to part of the claim, their citizenship was considered for CAFA "mass action" jurisdiction. *See id.* at 430.

On the other hand, Louisiana was the real party in interest with respect to its claim for injunctive relief:

> We are mindful that in this action Louisiana is also seeking the remedy of injunctive relief. If Louisiana were only seeking that remedy, *which is clearly on behalf of the State,* its argument that it is the only real party in interest would be much more compelling.

536 F.3d at 430 (emphasis added). The Monopolies Act at issue in *Caldwell* grants express authority for the Louisiana Attorney General to "institute proceedings to prevent and restrain violations of the Act." La.Rev.Stat. § 51:128.

Here, Kentucky seeks four forms of relief pursuant to the KCPA: injunctive relief, declaratory relief, civil penalties, and attorneys' fees. The parties do not dispute that Kentucky is the real party in interest as

to the claim for civil penalties, which only the Attorney General can recover under the KCPA. And it is implausible that any citizen of Kentucky would be the real party in interest to a claim for attorneys' fees incurred by the Attorney General or affiliated counsel in litigating this suit. Thus, the issue is who is the real party in interest with respect to the claims for injunctive relief and declaratory relief.

[7] As to the claim for injunctive relief, Kentucky is in the same position as Louisiana in *Caldwell.* Kentucky filed suit pursuant to a state statute giving the Attorney General express authority to seek "a restraining order or temporary or permanent injunction to prohibit" violations of the Act. Ky.Rev.Stat. Ann. § 367.190(1). A very similar grant of authority led the Fifth Circuit to conclude that the state is the real party in interest to that kind of injunctive relief. *See Caldwell,* 536 F.3d at 430. Thus, the Commonwealth is the real party in interest to the claim for injunctive relief.

That leaves only the claim for declaratory relief. Kentucky seeks "entry of a judgment against the Defendant, Merck, finding that it committed repeated violations of [§ ] 367.170." (Complt. at p. 7). But the Complaint also seeks civil penalties for each violation of § 367.170. (*Id.* at p. 8). The civil penalties claim necessarily entails finding that Merck violated the Act, and thus the declaratory judgment claim seems duplicative and redundant. *Cf. Narvaez v. Wilshire Credit Corp.,* 757 F.Supp.2d 621, 636 (N.D.Tex.2010) (dismissing declaratory judgment claim as "duplicative" of breach of contract claim); *Amari v. Radio Spirits, Inc.,* 219 F.Supp.2d 942, 944 (N.D.Ill.2002) ("Where the substantive suit would resolve the issues raised by the declaratory judgment action, the declaratory judgment action serves no useful purpose ....") (quotation and alteration omitted). Certainly it would not have altered the case in any material manner if Kentucky had omitted *667 that request for a declaration; Kentucky still would have to prove that violations occurred to succeed on the civil penalties claim.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

843 F.Supp.2d 654
**(Cite as: 843 F.Supp.2d 654)**

Nor would omission of the declaratory judgment claim have had any apparent effect on any citizens of Kentucky. The private right of action for citizens requires them to prove their actual damages, and thus the declaratory judgment would not automatically entitle them to relief.[FN11] Kentucky is undoubtedly the real party in interest as to the claim for civil penalties for violations of § 367.170, and the request for a declaratory judgment does not seem to measurably change the case. It would be a strange outcome if there was federal jurisdiction with the declaratory judgment claim but no federal jurisdiction without it.

> FN11. Merck and Kentucky vigorously dispute the extent to which the Attorney General must prove reliance by any party on the allegedly deceptive representations to recover for violations of the KCPA. The Court need not and does not reach that question.

Nonetheless, Merck argues that Kentucky citizens have the "substantive right sought to be enforced" and that they are the real parties in interest as to the declaratory relief. In a very broad sense, Merck is correct; if there were no citizens of Kentucky to be deceived then there could be no deceptive statements. But that does not imply that the citizens of Kentucky are necessarily the real parties in interest to any claim brought pursuant to the KCPA, which sets forth separate legal remedies for citizens and for the Commonwealth itself. As *Caldwell* noted, it was not just the injury to the policyholders but "the right to enforce" the treble damages provision that made them the real parties in interest to those claims. *See* 536 F.3d at 429. Here, Kentucky has the right to enforce the KCPA through civil penalties, and the declaratory judgment claim is derivative of that right.

Merck also cites a pair of recent cases out of the Ninth Circuit. *Department of Fair Employment and Housing v. Lucent Technologies, Inc.*, 642 F.3d 728 (9th Cir.2011); *Nevada v. Bank of America Corp.*, No. 3:11–cv–00135–RCJ–RAM, 2011 WL 2633641

(D.Nev. July 5, 2011). In *Lucent*, a California state agency filed suit on behalf of a single employee against his employer alleging wrongful termination and seeking equitable relief such as reform of the employer's practices. *See id.* at 735, 738–40. In *Bank of America*, the Nevada AG filed suit under the Deceptive Trade Practices Act "on behalf of potentially thousands of individual Nevadans" against banks for their mortgage modification practices. 2011 WL 2633641, at *1. In both cases, the courts reasoned that a state could not be a real party in interest to any relief if individual citizens could also pursue that relief. *See Lucent*, 642 F.3d at 737; *Bank of America*, 2011 WL 2633641 at *3–4, *12.

The Court will follow *Caldwell*, not *Lucent* or *Bank of America*. First, the Fifth Circuit's analysis in *Caldwell* depended on who had the legal remedy, not whether a private citizen *also* had a legal remedy granted to the state. Second, *Lucent* involved a state agency filing suit on behalf of a single terminated employee, 642 F.3d at 735, and the complaint in *Bank of America* expressly stated that the claims were brought on behalf of "thousands of Nevada consumers," 2011 WL 26336411 at *1, *4. Here, Kentucky is pursuing a cause of action that only the Kentucky Attorney General may enforce. *Lucent* and *Bank of America* do not seem precisely on point and the Court feels bound by *Caldwell* on this issue.

Accordingly, although the fact that this case is not a "class action" within the meaning of CAFA is sufficient reason to *668 defeat diversity jurisdiction, it also appears that under *Caldwell*, Kentucky is the real party in interest as to all relief sought in the Complaint. In the absence of any citizen of a state being involved in the case as either a named plaintiff or a real party in interest, there is no minimal diversity and the Court lacks diversity jurisdiction for that additional reason.

**D. Federal Question Jurisdiction**

[8] The parties also dispute the existence of fed-

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

843 F.Supp.2d 654
**(Cite as: 843 F.Supp.2d 654)**

eral question jurisdiction. "A federal question exists only in those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." _Singh v. Duane Morris LLP,_ 538 F.3d 334, 337–38 (5th Cir.2008) (quotation and alteration omitted). On its face, the Complaint asserts only one state-law cause of action for violation of the KCPA. Merck argued in its notice of removal that the Complaint necessarily depends on a substantial federal question because it invokes conduct regulated by the federal Food, Drug & Cosmetic Act. In its opposition to the motion to remand, Merck renews the argument for federal question jurisdiction but relegates it to a footnote. (Opp. at 13 n. 3).

[9] The "necessary-resolution language should be read as part of a carefully nuanced standard rather than a broad and simplistic rule." _Singh,_ 538 F.3d at 338. Accordingly, "federal question jurisdiction exists where (1) resolving a federal issue is necessary to resolution of the state-law claim; (2) the federal issue is actually disputed; (3) the federal issue is substantial; and (4) federal jurisdiction will not disturb the balance of federal and state judicial responsibilities." _Id._ In particular, the Supreme Court has held that "where Congress has provided no private remedy for the violation of a federal drug regulatory statute, the fact that violation of the statute is an element of a state tort claim is insufficient to establish a substantial federal interest." _Singh,_ 538 F.3d at 338–39 (citing _Merrell Dow Pharms., Inc. v. Thompson,_ 478 U.S. 804, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986)).

[10] Here, the complaint contains lengthy and detailed factual allegations regarding Merck's conduct in developing, testing, and marketing Vioxx as well as concealing the risks of the drug. (Complt., ¶¶ 5–30). Included are factual allegations that certain study results "were not disclosed to the FDA or the public at the time of the product launch" and that Merck gave misleading testimony at a public hearing before the

FDA. (_Id._ at ¶¶ 15, 19).

Merck argues that this is an attempt to premise liability on a failure to report matters to the FDA, which is a necessary and substantial federal question that warrants exercise of jurisdiction. It cites two authorities for that proposition. First, Merck relies on the Supreme Court opinion in _Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing,_ 545 U.S. 308, 125 S.Ct. 2363, 162 L.Ed.2d 257 (2005). _Grable & Sons_ involved a landowner seeking to quiet title to his property on the basis that the IRS did not give him adequate notice prior to selling the property at a tax sale. _See id._ at 311, 125 S.Ct. 2363. The Supreme Court found that federal question jurisdiction was appropriate, even in the absence of an express federal right of action, because the question of service pursuant to a federal statute was dispositive and because the Government had "a direct interest in the availability of a federal forum to vindicate its own administrative action, and buyers (as well as tax delinquents) may find it valuable to come before judges used to *669 federal tax matters." _See id._ at 314–15, 125 S.Ct. 2363. In particular, a limited expansion of jurisdiction over that case would have had "only a microscopic effect on the federal-state division of labor." _Id._ The Supreme Court subsequently characterized _Grable_ as representing only a "slim category" of cases. _See Empire Healthchoice Assur., Inc. v. McVeigh,_ 547 U.S. 677, 701, 126 S.Ct. 2121, 165 L.Ed.2d 131 (2006).

This case does not fall within the "slim category" defined by _Grable._ The complaint alleges facts regarding Merck's conduct _vis a vis_ the FDA, but those facts are only some allegations among many. For example, the complaint alleges that Merck failed to disclose matters "to the FDA _or the public._" (Complt. at ¶ 15) (emphasis added). Thus, the federal issues flagged by Merck may not be necessary to resolution of Kentucky's claims. _See Singh,_ 538 F.3d at 338. But even if Kentucky did attempt to prove that Merck failed to comply with FDA disclosure regulations, that

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

843 F.Supp.2d 654
**(Cite as: 843 F.Supp.2d 654)**

federal question would be resolved in the context of whether that conduct constituted a violation of *Kentucky* law; thus, it is hardly a substantial question of federal law. *See Merrell Dow,* 478 U.S. at 814, 106 S.Ct. 3229. Moreover, expanding federal-question jurisdiction to encompass this case would have an exponentially greater effect on the federal-state division of labor than the unusual circumstance in *Grable.*

Second, Merck cites orders from the *In re Zyprexa* MDL denying remand of a number of Attorney General cases. For example, that court denied a motion to remand a suit filed by the Montana Attorney General against a pharmaceutical manufacturer alleging violations of the Montana Consumer Protection Act, among other state-law causes of action, premised on inadequate labeling and the defendant's efforts to promote off-label use. *In re Zyprexa Prods. Liab. Litig.,* No. 04–MD–1596, 2008 WL 398378, at *1–2 (E.D.N.Y. Feb. 12, 2008). The court noted that the suit "sought to recover costs allegedly incurred by the states' Medicaid programs" and therefore "the question of the state's obligation to reimburse its insureds for Zyprexa, using funds largely provided by the federal government, is essential to the states' theory of damages and presents a substantial and disputed federal issue." *Id.* at *3. Likewise, the allegations of "off-label" promotion "necessarily raise substantial federal questions by requiring the court to interpret the meaning of the FDCA and its implementing regulations." *Id.* at *5. But in this case, Kentucky seeks civil penalties pursuant to the KCPA and not federally-funded Medicaid reimbursement payments. There are also no issues of off-label promotion of Vioxx. Thus, the specific federal dimensions present in *Zyprexa* that weighed against remand are lacking in Kentucky's complaint.[FN12]

> FN12. A different governmental complaint with different causes of action and different allegations may warrant a different outcome. The Court recognizes that there is a split in authority regarding whether cases with alle-

gations such as those in *Zyprexa* should be remanded or whether jurisdiction should be retained. *See In re Zyprexa,* 2008 WL 398378, at *4–5 (addressing contrary authority); *see also West Virginia ex rel. McGraw v. Rite Aid of West Virginia, Inc.,* 2010 WL 454488, at *3–4 (S.D.W.Va. Feb. 1, 2010). Because the present case is distinguishable from cases on both sides of that split of authority, the Court does not reach the issue and expresses no opinion regarding the presence or absence of federal question jurisdiction over any other governmental actions pending before the Court.

The Court concludes that the claims in the complaint do not depend on necessary resolution of a substantial federal question. Although Merck's alleged conduct may be assessed against the backdrop of federal *670 regulation, the gravamen of the complaint is whether Merck's conduct independently violated Kentucky law. To the extent that FDA regulations are implicated, compliance or lack thereof is, at most, an element of that state-law cause of action, which the Supreme Court has held does not create federal question jurisdiction. Accordingly, jurisdiction is lacking on this basis as well.

**IV. CONCLUSION**

For the foregoing reasons, IT IS ORDERED that the Commonwealth of Kentucky's motion to remand is GRANTED. The remand will be stayed for ten days from the entry of this Order, at which time, if no party has applied to the Fifth Circuit Court of Appeals to appeal, the case will be remanded to the Circuit Court of Franklin County, Commonwealth of Kentucky.

E.D.La.,2012.
In re Vioxx Products Liability Litigation
843 F.Supp.2d 654

END OF DOCUMENT

843 F.Supp.2d 654
**(Cite as: 843 F.Supp.2d 654)**

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

**EXHIBIT C**

Utah v. Eli Lilly and Co., 509 F.Supp.2d 1016 (2007)

509 F.Supp.2d 1016
United States District Court,
**D. Utah,**
Central Division.

State of **UTAH**, Plaintiff,
v.
**ELI LILLY** AND COMPANY, Defendant.

No. 2:07–CV–380 TS. | Sept. 4, 2007.

**Synopsis**
**Background:** State of **Utah** brought state-court action against drug manufacturer alleging that manufacturer's actions had led to improper Medicaid payments for off-label prescriptions for drug, and asserting claims under state's False Claims Act as well as common-law claims including product liability, fraud and breach of warranty. Manufacturer removed action on federal-question grounds, and sought stay pending its request for transfer and consolidation with existing multidistrict litigation. State moved for remand.

**Holdings:** The District Court, Ted Stewart, J., held that:

[1] stay was inappropriate;

[2] no substantial federal question was presented;

[3] exercise of federal jurisdiction would disturb congressionally approved balance of federal and state judicial responsibilities; and

[4] federal preemption-based removal was not warranted.

State's motion granted; manufacturer's motion denied.

West Headnotes (9)

[1]     **Federal Courts**
        ⬥Multi–District Litigation;  Transfer for
        Pre–Trial Proceedings
        **Removal of Cases**
        ⬥Forms and Rules of Procedure in General

In state's Medicaid reimbursement action against drug manufacturer, removed by manufacturer on federal-question grounds, stay pending manufacturer's request for transfer and consolidation with existing multidistrict litigation (MDL) was inappropriate, and state's remand motion took priority; case was not yet MDL, but merely proposed as MDL, rules of procedure for Judicial Panel on MDL specifically allowed for resolution of jurisdictional issues in district court, and stay would essentially decide jurisdictional issue against state. 28 U.S.C.A. §§ 1407(a), 1447; Social Security Act, § 1902(a)(25), 42 U.S.C.A. § 1396a(a)(25).

2 Cases that cite this headnote

[2]     **Action**
        ⬥Stay of Proceedings

District court has power to stay proceedings pending before it and to control its docket for purpose of economy of time and effort for itself, for counsel and for litigants.

20 Cases that cite this headnote

[3]     **Removal of Cases**
        ⬥Evidence

Doubt as to whether federal district court has jurisdiction over removed action is resolved in favor of remand. 28 U.S.C.A. § 1447(c).

[4]     **Removal of Cases**
        ⬥Allegations in Pleadings

Case arises under federal law, permitting removal on federal-question grounds, if well-pleaded complaint establishes either that federal law creates cause of action or that plaintiff's right to relief necessarily depends on

resolution of substantial question of federal law. 28 U.S.C.A. §§ 1331, 1441.

3 Cases that cite this headnote

[5]     **Removal of Cases**
        ◎⸗Allegations in Pleadings

Removal is warranted, under complete preemption doctrine, of complaints that, although not presenting federal questions on their face, nonetheless present state-law claims that are preempted by federal law. 28 U.S.C.A. §§ 1331, 1441.

[6]     **Removal of Cases**
        ◎⸗Allegations in Pleadings

Removability of state-law action on substantial-federal-question grounds depends on whether state-law claim necessarily raises stated federal issue, actually disputed and substantial, that federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities. 28 U.S.C.A. §§ 1331, 1441.

3 Cases that cite this headnote

[7]     **Removal of Cases**
        ◎⸗Cases Arising Under Laws of United States
        **Removal of Cases**
        ◎⸗Allegations in Pleadings

No actually disputed, substantial federal question was presented in State of **Utah's** Medicaid reimbursement action against drug manufacturer, so as to warrant removal on that ground; federal issues were not essential to adjudication of state's claims, grounded on its False Claims Act and common law, manufacturer's raising of federal question was inadequate to confer federal jurisdiction, mere presence of federal standards such as "medically

accepted indications" did not confer jurisdiction absent federal remedy, and Congress had specifically required states to seek reimbursement from liable third parties without providing such remedy. 28 U.S.C.A. §§ 1331, 1441; Social Security Act, §§ 1902(a)(25), 1927(k)(3), 42 U.S.C.A. §§ 1396a(a)(25), 1396r-8(k)(3); West's U.C.A. § 26-20-1 et seq.

3 Cases that cite this headnote

[8]     **Removal of Cases**
        ◎⸗Cases Arising Under Laws of United States
        **Removal of Cases**
        ◎⸗Allegations in Pleadings

Exercise of federal jurisdiction in State of **Utah's** Medicaid reimbursement action against drug manufacturer, which manufacturer had removed from state court on federal-question grounds, would disturb congressionally approved balance of federal and state judicial responsibilities, requiring grant of state's remand motion, even though exercise of federal jurisdiction would not attract horde of original filings; no actually disputed, substantial federal question was presented, federal preemption did not apply, and no clear rule existed justifying removal of state Medicaid reimbursement actions. 28 U.S.C.A. §§ 1331, 1441; Social Security Act, § 1902(a)(25), 42 U.S.C.A. § 1396a(a)(25); West's U.C.A. § 26-20-1 et seq.

2 Cases that cite this headnote

[9]     **Removal of Cases**
        ◎⸗Allegations in Pleadings

Federal preemption-based removal was not warranted in State of **Utah's** Medicaid reimbursement action against drug manufacturer, alleging, e.g., promotion of off-label uses and failure to warn of side effects; manufacturer's citation of Food and Drug Administration (FDA) rule, which indicated preemption of state-law claims related to adequacy of prescription drug warnings, was insufficient to overcome strong presumption against federal preemption of fields of health

and safety regulation, traditionally occupied by states. 28 U.S.C.A. §§ 1331, 1441; Social Security Act, § 1902(a)(25), 42 U.S.C.A. §§ 1396a(a)(25).

**Attorneys and Law Firms**

*1018 David R. Stallard, Utah Attorney General's Office, Joseph W. Steele, Kenneth D. Lougee, Siegfried & Jensen, Murray, UT, for Plaintiff.

John W. MacKay, Rick L. Rose, Ray Quinney & Nebeker, Salt Lake City, UT, for Defendant.

Opinion

**MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S MOTION TO STAY AND GRANTING PLAINTIFF'S MOTION TO REMAND**

TED STEWART, District Judge.

This matter is before the Court on Defendant's Motion to Stay[1] and Plaintiff's Motion to Remand.[2]

**I. INTRODUCTION**

This action is based on allegations by the State of **Utah** ("Plaintiff") that, as a result of actions and inactions by **Eli Lilly** & Co. ("Defendant"), Medicaid funds were improperly dispersed to **Utah** Medicaid participants and suppliers for the use of Defendant's drug, **Zyprexa**. This action was originally filed in the Third Judicial District Court of the State of **Utah** on May 29, 2007, and subsequently removed to this Court on June 11, 2007.

Plaintiff specifically alleges that it has paid for inappropriate, unnecessary, and unauthorized off-label prescriptions for **Zyprexa**. Plaintiff seeks to recover these amounts under **Utah** law, according to 42 U.S.C. § 1396a(a)(25), which mandates states to take such actions. Plaintiff also seeks to recover the future costs of care for Medicaid recipients allegedly rendered chronically ill or injured by **Zyprexa's** undisclosed side effects. Plaintiff brings a claim under the **Utah** False Claims Act,[3] and several claims based on theories of product liability, fraud and negligent misrepresentation, negligence, breach of warranty, and pattern of unlawful activity under **Utah** Code Ann. §§ 76–10–1601 et seq.

Defendant states that it will request that the Judicial Panel on Multidistrict Litigation ("JPML") transfer this case to an *1019 already-established **Zyprexa** Multidistrict Litigation ("MDL") pursuant to 28 U.S.C. § 1407(a). Defendant moves for this Court to stay the case pending its transfer to the JPML. Plaintiff opposes such a stay, and argues that there is no federal subject matter jurisdiction for this action. Accordingly, Plaintiff moves for remand.

**II. DISCUSSION**

*A. Defendant's Motion to Stay*
[1] Defendant generally argues that a stay would promote judicial efficiency by facilitating global resolution of issues by the MDL, as opposed to the potential result of disparate rulings among various jurisdictions on identical issues. Defendant further argues that hardship would result to it if it were required to litigate similar issues in separate forums.

[2] Plaintiff argues that judicial efficiency is best promoted by promptly resolving the jurisdictional issue raised by its Motion to Remand. Plaintiff also argues that the risk of inconsistent rulings is a non-issue because a number of inconsistent rulings already exist as to identical jurisdictional issues in similar cases.[4]

> It is well settled that the district court has the power to stay proceedings pending before it and to control its docket for the purpose of "economy of time and effort for itself, for counsel, and for litigants." The granting of the stay ordinarily lies within the discretion of the district court.[5]

Also, "[i]n exercising its judgment, the Court must weigh competing interests and consider the effects of the stay on the Court's docket, on counsel, and on the litigants."[6]

The Court is persuaded that Defendant's Motion to Stay should be denied and that the jurisdictional issue raised by Plaintiff takes priority, and should be addressed for several reasons. First, and foremost, "[i]t is a principle of first importance that the federal courts are courts of limited jurisdiction." The Court acknowledges that some authority indicates that "[t]he general rule is for federal

courts to defer ruling on pending motions to remand in MDL litigation until after the JPMDL has transferred the case to the MDL panel."[8] However, the Court notes that, as of now, this action is not properly characterized as MDL litigation, but merely *proposed* as potential MDL litigation.[9] Even if it were properly characterized as MDL litigation, there are instances where federal courts have applied a rule contrary to the so-called general rule, and more importantly, this has happened in at least one case with *1020 issues nearly identical those before the Court in this action.[10]

Second, the Rules of Procedure for the JPML specifically allow for the resolution of jurisdictional issues such as this one in the district court even where motions for the action are already pending before the MDL Panel.[11] Addressing Plaintiff's Motion to Remand is even more justified here, where the case is not yet properly MDL litigation and nothing from the case is pending before the MDL.

Third, the Court notes that staying this action and allowing transfer, for all intents and purposes, decides the jurisdictional issue against Plaintiff, whereas a growing number of federal district courts are fording that subject matter jurisdiction does not exist in a case such as this.[12] Given such circumstances, the Court finds that addressing the jurisdictional question is the more appropriate course of action.

For the foregoing reasons, and after having considered the competing interests and effects of a stay on the Court's docket, on counsel, and on the litigants, the Court will deny Defendant's Motion to Stay and address Plaintiff's Motion to Remand.

### B. Plaintiff's Motion to Remand
Defendant removed this action by asserting two grounds for federal subject matter jurisdiction: (1) substantial federal question jurisdiction under 28 U.S.C. § 1331 and (2) preemption. Plaintiff argues that subject matter jurisdiction does not exist under either ground.

[3] "Federal courts are courts of limited jurisdiction and, as such, must have a statutory basis to exercise jurisdiction. The burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction."[13] "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."[14] Importantly, "doubtful cases must be resolved in favor of remand."[15]

[4] [5] A case arises under federal law if "a well-pleaded

complaint establishes either that the federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law."[16] The parties here focus their arguments on whether there is a substantial question of federal law. Also, "[u]nder the 'complete *1021 preemption doctrine,' federal courts may exercise federal question jurisdiction over complaints that, although not presenting federal questions on their face, nonetheless present state law claims that are preempted by federal law."[17]

#### 1. Substantial Question of Federal Law
[6] Defendant asserts, and Plaintiff disputes, that this action involves substantial questions of federal law. "The Supreme Court has long recognized that in certain cases federal question jurisdiction will lie over state-law claims that implicate significant federal issues or 'turn on substantial questions of federal law.' "[18] However, this is a "slim category" and "it takes more than a federal element to open the 'arising under' door."[19] "[E]ven when the state action discloses a contested and substantial federal question, the exercise of federal jurisdiction is subject to a possible veto" if federal jurisdiction is not "consistent with congressional judgment about the sound division of labor between state and federal courts."[20] Ultimately, "the question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities."[21]

The Court notes that the Supreme Court cases *Merrell Dow Pharmaceuticals Inc. v. Thompson,*[22] *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing,*[23] and *Empire Healthchoice Assur., Inc., v. McVeigh,*[24] as well as the federal court decisions from **Zyprexa**-related litigation following these cases,[25] form the relevant backdrop for addressing the jurisdictional question. The Court finds, as discussed below, that there is no federal question jurisdiction in this case. In doing so, the Court notes a split of authority on this issue, and agrees, in part, with the reasoning of the *Pennsylvania v. Eli Lilly & Co., Inc.*[26] and *South Carolina v. Eli Lilly & Co.*[27] cases which have found there to be no federal question jurisdiction in cases nearly identical to this one.

#### i. Actually Disputed and Substantial Federal Question
[7] Defendant argues that a substantial question of federal law exists because Plaintiff's claims, especially that under **Utah's** False Claims Act, depend on the interpretation

and application of federal Medicaid law. Defendant also argues that Plaintiff's Complaint makes violation of the Food Drug and Cosmetic Act ("FDCA") and Food and Drug Administration ("FDA") regulations critical elements of its claims.

**\*1022** Plaintiff responds that the **Utah** law merely incorporates federal law and that such incorporation of a federal standard in a state law action does not implicate the substantial federal question doctrine. Plaintiff emphasizes that the allegations and causes of action in its Amended Complaint are centered in state law. Plaintiff also argues that Congress has instructed the states to pursue violations of Medicaid programs without providing a federal cause of action, thus intending such claims to be resolved under state law.

In order for a federal question to be significant or substantial, the federal issue must be "actually disputed, and essential to the adjudication of the plaintiff's claim."[28] For example, in the *Grable* case, the interpretation of a federal tax statute's notice provision was essential to the adjudication of the plaintiff's quiet title claim brought subsequent to an Internal Revenue Service ("IRS") property seizure to satisfy a federal tax delinquency.[29] Also, "[t]he absence of any federal cause of action ... is worth some consideration in the assessment of [and is evidence relevant to] substantiality."[30]

The Court finds that the Plaintiff's Complaint does not raise significant federal issues or turn on substantial questions of federal law. First, the Court finds that, to the extent a federal issue exists, it is not essential to the adjudication of the plaintiff's claims, particularly those focused upon by Defendant. For example, Plaintiff grounds its False Claims Act cause of action upon the following: (1) Defendant's facilitation of Medicaid claims that were not "medically necessary" in violation of UAC R414–1–2(18) (as defined under **Utah** law); (2) Defendant's facilitation of claims for non-"medically accepted indications" per 42 U.S.C.A. § 1396r–8(k)(3) (as defined under Federal law); and (3) Defendant's facilitation of claims for "experimental, investigational, and unproven medical practices" in violation of UAC R414–1A–3 (as defined under **Utah** law).[31] Given these multiple bases, resolution of this claim does not hinge solely on a federal question. Inasmuch as Defendant attempts to establish that Plaintiff was, and continues to be, solely responsible for the amounts underlying the Medicaid claims at issue, Defendant asserts a defense which raises a federal question, and such is inadequate to confer federal jurisdiction.[32]

Second, and relevant to all of the claims which Defendant addresses, "the mere presence of a federal standard embedded in a state law cause of action is not sufficient to warrant federal subject matter jurisdiction where there is no federal remedy for a violation of the federal statute."[33] The law set forth by the *Merrell Dow* case in this respect was specifically affirmed by the Supreme Court in the *Grable* case.[34]

**\*1023** Third, the Court finds that congressional intent as to the relevant statutes is important here, and indicates that an exercise of federal jurisdiction would not be proper in this action.[35] The *Grable* case clarified that the absence of a federal remedy was relevant evidence as to, but not dispositive of, judgments of congressional intent relevant to ascertaining jurisdiction, especially where a the state law cause of action was unlikely to find its way to the federal courts in the future, and where there was precedent for the exercise of federal jurisdiction over the specific claim.[36] The *Empire* case, declining to extend *Grable*, reaffirmed the importance of a federal court's responsibility to look for some indication that Congress intended the exercise of federal jurisdiction over claims "ordinarily resolved in state courts," and specifically noted that the category established by *Grable* was "slim."[37]

> As the Supreme Court emphasized in *Empire,* "[f]ederal courts should await a clear signal from Congress before treating such auxiliary claims as 'arising under' the laws of the United States." There is no meaningful indication that Congress intended to confer federal jurisdiction over state law causes of actions implicating the federal statutes involved here, namely, the FDCA and Title XIX of the Social Security Act ... which is the federal legislation establishing the Medicaid program.[38]

The absence of any signal by Congress is especially important here where Congress has specifically required states to seek reimbursement from legally liable third parties,[39] but has provided no federal cause of action to do so.

The Court further notes that this action is distinguishable from *Grable* in several respects, as highlighted by the *Empire* case. In the *Empire* case, a health insurance carrier for federal employees brought suit seeking reimbursement of benefits on the ground that the enrollee had recovered damages for his injuries in a state court action.[40] There, in finding a lack of subject matter jurisdiction, the Court distinguished *Grable,* and stated that the federal issue in *Grable* was the only contested issue in that case, that the claim in *Empire* was not triggered by a federal agency's action, and that *Grable* involved a nearly pure issue of law, and not a fact-bound

Utah v. Eli Lilly and Co., 509 F.Supp.2d 1016 (2007)

and situation-specific scenario.[41] The Court notes that this action is similarly distinguishable from the *Grable* case on the same, or similar grounds. For example, Plaintiff's causes of action are not solely hinged on federal issues, and, by their nature, are necessarily fact-bound. Additionally, there is no federal agency action here and "the fact that a federally created program, Medicaid, serves as the initial source of the funds [Plaintiff] seeks to recover does not, without more, confer federal jurisdiction."[42]

**\*1024** Finally, the Court acknowledges the recent Tenth Circuit case of *Nicodemus v. Union Pacific Corp.,*[43] which found that a substantial federal question jurisdiction existed under *Grable,* where at least one of Plaintiff's causes of action hinged on the resolution of a federal issue, namely, federal railroad rights-of-way and land grants. However, in that case, the Tenth Circuit specifically noted that a considerable federal interest existed in that the underlying statutes were designed to " 'secure the safe and speedy transportation of the mails, troops, munitions of war, and the public stores' to the West," and that the absence of a federal cause of action was not dispositive, "especially since Congress did not grant to federal courts original jurisdiction over federal-question cases until 1875."[44]

This case is distinguishable from *Nicodemus.* As discussed above, no causes of action here hinge entirely on the resolution of a federal issue. Moreover, the State's interest in obtaining reimbursements for Medicaid payments is not tantamount to the federal government's interest as stated in *Nicodemus.* Finally, the importance of the absence of a federal cause of action, or other signal from Congress which would indicate to the Court an intent for federal courts to exercise jurisdiction over this type of claim, is greater here where the Medicaid-related statutes are considerably more recent than the statutes addressed in *Nicodemus.*

### ii. Disturbance of Congressionally Approved Balance of Federal and State Judicial Responsibilities

[8] Defendant argues that federal jurisdiction here would not upset the balance of federal and state judicial responsibilities. Defendant emphasizes that a specific federal right of action is not required for a finding of federal jurisdiction. Defendant also argues that a federal suit by only one of fifty states does not open the door to a horde of lawsuits which would work a major change in the federal-state division of judicial labor.

Plaintiff argues that removal upsets the balance of federal and state judicial responsibilities, in part, because

Congress has instructed the states to pursue violations of Medicaid programs without providing a federal cause of action, and thus intended that such claims be resolved under state law.

> Because arising-under jurisdiction to hear a state-law claim always raises the possibility of upsetting the state-federal line drawn (or at least assumed) by Congress, the presence of a disputed federal issue and the ostensible importance of a federal forum are never necessarily dispositive; there must always be an assessment of any disruptive portent in exercising federal jurisdiction.[45]

The Court finds that an exercise of federal jurisdiction here would disturb the congressionally approved balance of federal and state judicial responsibilities. This conclusion is supported by the above finding addressing the significance of the absence of a federal cause of action in this case, and other indications of congressional intent as to the relevant statutes, as well as the lack of preemption of state remedies, discussed below.[46] The Court also acknowledges that jurisdiction here would not, as the *Grable* and *Merrell Dow* cases found significant, attract a "horde" of original filings.[47] However, other considerations **\*1025** support that finding jurisdiction would upset the congressionally approved balance of federal and state judicial responsibilities. For example, it is presumed that Congress is thoroughly familiar with federal court precedents, and that it expects its enactments to be interpreted in conformity with them.[48] Significantly, the Supreme Court itself has stated that "considerations of comity make us reluctant to snatch cases which a State has brought from the courts of that State, unless some clear rule demands it."[49] No such clear rule exists here in the context of recovery of Medicaid funds.

Finally, the Court notes that, in addition to the above findings, the split of authority on the issue of federal question jurisdiction in this type of action is itself is sufficient to establish a "doubtful case" which requires this Court to remand in the absence of some other ground for exercise of jurisdiction.

### 2. Preemption

[9] Defendant argues that Plaintiff's allegations of off-label promotion and failure to warn are preempted by FDA regulation. Defendant cites to a new FDA rule which indicates that it preempts most state law claims related to the adequacy of prescription drug warnings.[50] Defendant

Utah v. Eli Lilly and Co., 509 F.Supp.2d 1016 (2007)

cites no case law in support of its argument.

Plaintiff correctly cites authority establishing that the FDA's rule is not proper authority on the issue of preemption,[51] and that the FDCA does not preempt state common law causes of action here.[52]

"In fields traditionally occupied by the states, such as health and safety regulation, there is a strong presumption against federal preemption."[53] Defendant has not overcome this strong presumption and the Court finds that federal question jurisdiction does not lie based on preemption. Absent any other basis for asserting subject matter jurisdiction in this action, the Court will grant Plaintiff's Motion to Remand.

### III. CONCLUSION

For the foregoing reasons, it is therefore

ORDERED that Defendant's Motion to Stay (Docket No. 2) is DENIED. It is further

ORDERED that Plaintiff's Motion to Remand (Docket No. 6) is GRANTED. The Clerk of the Court shall remand this action and close this case forthwith.

Footnotes

1    Docket No. 2.

2    Docket No. 6.

3    **Utah** Code Ann. §§ 26–20–1 et seq.

4    *See infra* note 12.

5    *Pet Milk Co. v. Ritter,* 323 F.2d 586, 588 (10th Cir.1963) (quoting *Landis v. N. Am. Co.,* 299 U.S. 248, 254, 57 S.Ct. 163, 81 L.Ed. 153 (1936)); *see also Mediware Info Sys., Inc. v. McKesson Info. Solutions, LLC,* No. 06–2391, 2007 WL 473700 (D.Kan. Feb.9, 2007) (same; citing *Pet Milk Co.,* 323 F.2d at 588).

6    *Crown Cent. Petroleum Corp. v. Dept. of Energy,* 102 F.R.D. 95, 98–99 (D.Md.1984). (citing *Landis,* 299 U.S. at 254–55, 57 S.Ct. 163).

7    *13 Charles A. Wright, Arthur R. Miller and Edward H. Cooper, Federal Practice and Procedure § 3522.*

8    *North v. Merck & Co.,* No. 05–CV–6475L, 2005 WL 2921638, at *1 (W.D.N.Y. Nov.4, 2005) (quoting *Jackson v. Johnson & Johnson, Inc.,* No. 01–2113 DA, 2001 WL 34048067, at *6 (W.D.Tenn. Apr.3, 2001) (citing *In re Ivy,* 901 F.2d 7 (2d Cir.1990))).

9    The Court notes the absence in the docket of any request by Defendant to the JPML. *See* 28 U.S.C. § 1407(c)(ii) and R.P. JPML 5.12 (requiring filing of any MDL paper with the district court).

10   *E.g. Pennsylvania v. **Eli Lilly** & Co., Inc.,* 511 F.Supp.2d 576, 578–79, 2007 WL 1876531, at *1 (E.D. Pa.2007); *see also Johnson v. Micron Technology, Inc.,* 354 F.Supp.2d 736, 739 (E.D.Mich.2005) (adopting contrary rule and quoting *Tortola Restaurants, L.P. v. Kimberly–Clark Corp.,* 987 F.Supp. 1186, 1189 (N.D.Cal.1997)) (same and quoting *Spitzfaden v. Dow Corning Corp.,* No. 95–2578, 1995 WL 662663, at *4 n. 1 (E.D.La. Nov.8, 1995)).

11   R.P. JPML 1.5.

12   *Compare South Carolina v. **Eli Lilly** & Co.,* No. 7:07–1875–HMH, Docket No. 16, at 5–6 (unpublished Order); *Pennsylvania,* No. 07–1083, 2007 WL 1876531, at *9; *Alaska v. **Eli Lilly** & Co.,* No. 3:06–CV–88 TMB, 2006 WL 2168831, at *4 (D.Alaska July 28, 2006); *and Texas v. Merck & Co., Inc.,* 385 F.Supp.2d 604, 608 (W.D.Texas 2005) (finding lack of subject matter jurisdiction) *with In re **Zyprexa** Products Liability Litigation II,* Nos. 04–MD–1596, 07–CV–645, 2007 WL 1601482, at *1 (E.D.N.Y. June 5, 2007); *West Virginia v. **Eli Lilly** & Co.,* 476 F.Supp.2d 230, 234 (E.D.N.Y.2007); *and In re **Zyprexa** Products Liability Litigation I,* 375 F.Supp.2d 170, 173 (E.D.N.Y.2005) (finding subject matter jurisdiction).

Utah v. Eli Lilly and Co., 509 F.Supp.2d 1016 (2007)

13    *Montoya v. Chao,* 296 F.3d 952, 955 (10th Cir.2002).

14    28 U.S.C. 1447(c).

15    *Archuleta v. Lacuesta,* 131 F.3d 1359, 1370 (10th Cir.1997).

16    *Empire Healthchoice Assurance, Inc., v. McVeigh,* ——U.S. ——, 126 S.Ct. 2121, 2131, 165 L.Ed.2d 131 (2006).

17    *Garley v. Sandia Corp.,* 236 F.3d 1200, 1207 (10th Cir.2001).

18    *Pennsylvania,* 511 F.Supp.2d at 579, 2007 WL 1876531, at *2 (citing *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.,* 545 U.S. 308, 312, 125 S.Ct. 2363, 162 L.Ed.2d 257 (2005)).

19    *Empire,* 126 S.Ct. at 2137.

20    *Grable,* 545 U.S. at 308, 125 S.Ct. 2363.

21    *Id.* at 314, 125 S.Ct. 2363.

22    478 U.S. 804, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986).

23    545 U.S. 308, 125 S.Ct. 2363, 162 L.Ed.2d 257.

24    —— U.S. ——, 126 S.Ct. 2121, 165 L.Ed.2d 131.

25    *See supra,* note 12.

26    *Pennsylvania,* 511 F.Supp.2d 576, 2007 WL 1876531.

27    *South Carolina,* No. 7:07–1875–HMH, Docket No. 16 (unpublished Order).

28    *Pennsylvania,* 511 F.Supp.2d at 580, 2007 WL 1876531, at *3 (citing *Grable,* 545 U.S. at 313, 125 S.Ct. 2363).

29    *Grable,* 545 U.S. at 315, 125 S.Ct. 2363.

30    *Id.* at 318, 125 S.Ct. 2363.

31    Amended Complaint, at 3–4.

32    *Merrell Dow,* 478 U.S. at 808, 106 S.Ct. 3229.

33    *Pennsylvania,* 511 F.Supp.2d at 584–85, 2007 WL 1876531, at *7 (citing *Merrell Dow,* 478 at 810–14, 106 S.Ct. 3229); *see also Grable,* 545 U.S. at 318, 125 S.Ct. 2363.

34    *Id.* (citing *Grable,* 545 U.S. at 318, 125 S.Ct. 2363 *("Merrell Dow"* should be read in its entirety as treating the absence of a federal private right of action as evidence relevant to, but not dispositive of, the "sensitive judgments about congressional intent" that § 1331 requires.... The Court saw the missing cause of action not as a missing federal door key, always required, but as a

missing welcome mat, required in the circumstances, when exercising federal jurisdiction over a state misbranding action would have attracted a horde of original filings and removal cases raising other state claims with embedded federal issues. For if the federal labeling standard without a federal cause of action could get a state claim into federal court, so could any other federal standard without a federal cause of action.)).

35   *See Grable,* 545 U.S. at 318, 125 S.Ct. 2363 (noting overlap between substantiality and congressional intent).

36   *Id.* at 318–20, 125 S.Ct. 2363.

37   *Empire,* 126 S.Ct. at 2137.

38   *Pennsylvania,* 511 F.Supp.2d at 585, 2007 WL 1876531, at *7.

39   *See* 42 U.S.C. § 1396a(a)(25).

40   *Empire,* 126 S.Ct. at 2137.

41   *Id.*

42   *Pennsylvania,* 511 F.Supp.2d at 585, 2007 WL 1876531, at *7 (citing *Commonwealth of Massachusetts v. Philip Morris, Inc.,* 942 F.Supp. 690, 694 (D.Mass.1996) and *Gingerich v. White Pigeon Comty. Sch.,* 736 F.Supp. 147 (W.D.Mich.1990)).

43   440 F.3d 1227, 1233 (10th Cir.2006).

44   *Id.* at 1236–37.

45   *Grable,* 545 U.S. at 314, 125 S.Ct. 2363.

46   *See id.* (noting importance of finding of absence of federal action in connection with absence of preemption).

47   *See id.* at 318–20, 125 S.Ct. 2363 (discussing *Merrell Dow* ).

48   *E.g., Chambers v. NASCO, Inc.,* 501 U.S. 32, 47, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991).

49   *Franchise Tax Bd of State of Cal. v. Constr. Laborers Vacation,* 463 U.S. 1, 22 n. 22, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983).

50   *Requirements on Content and Format of Labeling for Human Prescription Drug and Biologic Products,* 71 Fed.Reg. 3922, 3934–35 (2006).

51   *In re Vioxx Products Liability Litig.,* 501 F.Supp.2d 776, 786–87 (E.D.La.2007).

52   *See* Docket No. 16, at 9–10 (listing authority determining that FDCA does not pre-empt state law claims).

53   *In re Zyprexa Prods. Liab. Litig.,* 489 F.Supp.2d 230, 272 (E.D.N.Y.2007).

**Utah v. Eli Lilly and Co., 509 F.Supp.2d 1016 (2007)**

End of Document

© 2013 Thomson Reuters. No claim to original U.S. Government Works.