UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | MDL No. 1657 |
|     Products Liability Litigation | * | |
| This Document Relates to: | * | SECTION L |
| *State of Alaska v. Merck & Co., Inc.,* | * | JUDGE ELDON E. FALLON |
| 3:06-CV-00018 | * | MAGISTRATE JUDGE KNOWLES |

* * * * * * * * * * * * * * * * * * * * * * * * *

## STATE OF ALASKA REPLY IN SUPPORT OF ITS MOTION TO REMAND

Michael C. Geraghty
Attorney General

Clyde E. Sniffen, Jr.
Senior Assistant Attorney General
Alaska Law Department
1031 West 4th Avenue #200
Anchorage, Alaska 99501
Telephone: 907/269-5100

Scott A. Powell, Esquire
Don McKenna, Esquire
Matthew C. Minner, Esquire
Brian M. Vines, Esquire
Hare, Wynn, Newell and Newton, LLP
2025 3rd Avenue North; Suite 800
Birmingham, Alabama 35203
Telephone: 205/328-5330

James E. Fosler, Esquire
Fosler Law Group, Inc.
737 West 5th Avenue; Suite 205
Anchorage, Alaska 99501
Telephone: 907/277-1557

**TABLE OF CONTENTS**

MERCK CANNOT SATISFY THE REQUIREMENTS FOR FEDERAL-QUESTION JURISDICTION ................................................................................................................. 1

    A.    Under a Fair Reading of the Original Complaint, No Federal Issue is "Necessary" to the Alaska UTPA Claim ........................................................................................ 1

        1.    The Original Complaint Does Not Depend on a Federal Issue ............... 2

        2.    Merck's Attempt to Manufacture a Federal Issues in its Opposition Must Fail ........................................................................................................... 3

        3.    This Court's Decision in the *Louisiana Vioxx* Has Minimal Relevance to the Issues Presented in Alaska's Motion to Remand ............................... 5

    B.    Under *Howery*, Binding Fifth Circuit Precedent, Federal Law is not "Necessary" to Alaska's Claim................................................................................................... 6

    C.    Merck's Alleged Federal Issue is Undisputed ........................................... 8

    D.    Merck's Alleged Federal Issue is Not Substantial..................................... 8

    E.    Exercising Federal Jurisdiction in this Case would Alter the Balance Between State and Federal Courts ...................................................................................... 10

    F.    The Courts that Have Rejected Federal Jurisdiction in Similar Cases are Well-Reasoned and More Persuasive than the *Zyprexa Cases* Especially Given the Developments in Supreme Court Precedent and Fifth Circuit Law ......................... 11

THIS COURT IS WELL WITHIN ITS DISCRETION TO DECLINE TO EXERCISE SUPPLEMENTAL JURIDICTION............................................................................................ 14

There is no federal-question jurisdiction over Alaska's Original Complaint. Instead of focusing on the allegations that appear "affirmatively and distinctly" in the Original Complaint, *Norton v. Larney*, 266 U.S. 511, 516 (1925), Merck's Opposition ("Opp.") proffers a manufactured federal issue in the hope of satisfying its burden. Such "presumptions" and "argumentative inferences" are insufficient to carry Merck's heavy burden for establishing federal jurisdiction over Alaska's, a sovereign state, claim. *Id.*; (Alaska's Motion ("Mot.") 3-4). In addition, Merck continues to cling to the *Zyprexa* cases but fails to explain how those cases are consistent with Fifth Circuit law and recent Supreme Court precedent. A fair reading of Alaska's complaint combined with Supreme Court and Fifth Circuit precedent confirms that Merck has not and cannot satisfy its burden.

## MERCK CANNOT SATISFY THE REQUIREMENTS FOR FEDERAL-QUESTION JURISDICTION

Merck must establish that Alaska's Original Complaint contains a federal issue that is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress."[1] *Gunn v. Minton*, 133 S. Ct. 1059, 1065 (Jan. 3, 2012). Neither Merck's Notice of Removal, nor its Opposition, satisfies one, much less all four of these requirements for the Original Complaint.

### A. Under a Fair Reading of the Original Complaint, No Federal Issue is "Necessary" to the Alaska UTPA Claim

According to the Supreme Court and Fifth Circuit, "[a] federal issue is 'necessary' only if the Plaintiff's claims, as alleged in the complaint, depend on the resolution of a disputed issue of federal law." (Mot. 5-7) (analyzing the applicable law). A fair reading of the Original Complaint reveals no "necessary" federal issue. At its best, Merck's Opposition has offered one

---

[1] This reply focuses on why the Original Complaint does not give rise to federal-question jurisdiction. Merck appears to have conceded that the Amended Complaint does not create federal jurisdiction. Accordingly, it is undisputed that no federal issue remains in this case.

1

of several readings of the Original Complaint.  However, given Merck's burden, its attempt to create a federal issue through interpretation and argumentative inferences must fail.

### 1. The Original Complaint Does Not Depend on a Federal Issue

Alaska's Original Complaint required only that Merck's "unlawful" conduct caused Alaska to spend money on Vioxx to recover damages and restitution.  (Mot. 2) The Original Complaint provides numerous factual allegations that Merck's conduct was "unlawful" and that Alaska is entitled to relief.  None of which require that Alaska "could have denied Vioxx coverage under Medicaid"—Merck's proffered federal issue. *See e.g.* (Opp. 13).

Alaska alleged that Merck made representations in Alaska "that Vioxx was" safe, that Merck's "advertising and promotional campaigns to Alaskans [] falsely represented the safety of Vioxx," and Merck instituted a "promotional advertising campaign to convince lay people to request Vioxx" despite Merck's knowledge of its harmful effects.  (Orig. Compl. ¶¶ 7, 8, 10). Alaska then outlined how Merck's conduct towards "the State of Alaska, healthcare providers in Alaska, and Alaskans in general" was "unlawful" pursuant to section 45.50.471(a).  *Id.* at ¶¶ 12-20.  Specifically, Alaska alleged that Merck "mislead, deceived or damaged . . . the State of Alaska, healthcare providers in Alaska, and Alaskans in general."  *Id* at ¶ 15.  Finally, Alaska alleged that Merck "induced a great many Alaskans to purchase Vioxx," that Merck "induced the State of Alaska to authorize expenditure of Medicaid funds for the purchase of Vioxx," and that Merck's "unlawful" conduct resulted in the "expenditure of millions of dollars of state funds or state controlled funds." *Id.* at ¶¶ 21-24.  Not once did Alaska allege that Alaska Medicaid could have or would have denied claims for Vioxx.

In fact, contrary to Merck's repeated assertion, *see e.g.* (Opp. 16), Alaska does not dispute that, at the time Vioxx was on the market, Alaska had no mechanism to remove or

2

restrict Vioxx from its Medicaid program. *Infra* at 8. Alaska did allege, however, that Merck was the "cause-in-fact, producing cause, and proximate cause" of the "purchase and expenditures" of Vioxx. (Orig. Compl. ¶ 24). In other words, Alaska's Original Complaint alleged that Merck induced Alaskans to request, and Alaska physicians to write, prescriptions for Vioxx which Alaska Medicaid paid for.[2] Accordingly, Alaska was entitled to damages for its "loss of money" from Merck's "unlawful" acts and restitution for "any money . . . which may have been acquired by" Merck's "unlawful" acts. AS §§ 45.50.531(a); 45.50.501(b). Based on a fair reading of the Original Complaint, the only necessary issue was whether Merck's "unlawful" conduct caused prescriptions to be written that the Alaska Medicaid program paid for.

2. Merck's Attempt to Manufacture a Federal Issue Must Fail

Instead of focusing on Alaska's allegations, Merck's Opposition scatters numerous unsupported assertions that the Original Complaint required Alaska to establish that Alaska Medicaid would have restricted Vioxx. In support of this claim, Merck insinuates that the Original Complaint is similar to *Louisiana ex rel. Caldwell v. Merck* ("*Louisiana Vioxx*") while ignoring significant differences between these cases. Neither the Original Complaint, Alaska law, nor this Court's *Louisiana Vioxx* decisions support Merck's argument.

Boiled down to its essence, Merck's argument for a "necessary" federal issue depends on its theory that, hidden somewhere within the Original Complaint, is a requirement that Alaska Medicaid would have restricted Vioxx—Merck's "Alaska Medicaid Theory." Without citations to the Original Complaint or Alaska law, Merck claims that "the requirements of federal Medicaid law play a very substantial role in [Alaska's] theories of causation and injury." (Opp.

---

[2] Merck even recognizes that Alaska's Complaint can be understood to make this allegation. (Opp. 12 n. 3). Its arguments that Alaska's Original Complaint cannot be read this way is not consistent with the Original Complaint or Merck's burden. Given that all "[d]oubts regarding jurisdiction should be resolved against exercising jurisdiction," *In re Vioxx*, 843 F. Supp. 2d at 657, it is inappropriate for Merck to suggest such a cramped reading of Alaska's Original Complaint.

3

1).  Merck also contends, without explanation or support, that the "Plaintiff's original bid to recover Medicaid dollars it spent covering Vioxx prescriptions depends in large part on the interpretation of federal Medicaid law."  (Opp. 8).  Besides these broad statements, the only explanation offered in support of federal jurisdiction is Merck's Alaska Medicaid Theory.

For example, Merck repeatedly contends that "the essence of Alaska's theory of recovery is that it would not have covered Vioxx prescriptions if Merck had adequately disclosed the drug's risks."  (Opp. 9); *see also*, *id.* at 12 (contending that Alaska must "prove that it would not have paid for the drug had the drug's full risks been disclosed."); *id.* at 16 (arguing that Alaska's Original Complaint included "a theory that [Alaska] would have denied coverage of a drug in its Medicaid program"); *id.* at 13, 14, 15, 17 (same).  However, the Original Complaint contains no such allegation, *see supra 2-3*, nor does the Alaska UTPA require such a showing.

Merck's "theory of causation" argument also depends on Merck's Alaska Medicaid Theory.  Merck claims that in order to establish that Merck's "conduct caused [Alaska] to cover Vioxx prescriptions on behalf of its Medicaid recipients" Alaska must show that Alaska "had discretion under some provision of federal law to exclude or restrict Vioxx from its reimbursement scheme."  (Opp. 10); *see also*, *id.* at 11-12 (claiming that Alaska's causal theory includes a claim that "Merck caused Alaska to cover Vioxx, leading to the authorization of payments for Vioxx that the State allegedly would not otherwise have made); *id.* at 12 (arguing that Alaska's allegation that Merck "caused damage to Alaska by inducing it to cover Vioxx . . . plainly depends on federal law); *id.* at 13 (suggesting that Alaska's Original Complaint, like Louisiana's, required proof that Alaska "could have denied Vioxx coverage under Medicaid"); *id.* at 15 (referencing the alleged "only causal theory").  This argument ignores Alaska's Original Complaint and depends on faulty logic.

4

Merck offers neither a citation to the Original Complaint nor an explanation for how the Alaska UTPA would require a showing that Alaska Medicaid would have restricted Vioxx to establish causation. Furthermore, Merck ignores the fact that the Original Complaint contains numerous allegations of Merck's false and misleading promotional campaign for Vioxx. *See e.g.* (Orig. Compl. ¶ 10). These alleged facts support Alaska's causal allegation that Merck was the cause of the public and private "purchase[s] and expenditures" of Vioxx. (Orig. Compl. ¶ 24). Merck's causal Alaska Medicaid Theory is neither alleged nor required.

Finally, Merck's "causation" argument is a *non sequitur*. Alaska need not have shown that it "had some discretion under some provision of federal law to exclude or restrict Vioxx from its reimbursement scheme," (Opp. 10), to establish that Merck's "unlawful acts and practices induced the State of Alaska to authorize expenditure[s] of Medicaid funds for the purchase of Vioxx," (Orig. Compl. ¶ 22). The latter simply does not depend on the former.

> 3. This Court's Decision in the *Louisiana Vioxx* Has Minimal Relevance to the Issues Presented in Alaska's Motion to Remand

Merck also references this Court's orders in *Louisiana Vioxx* in support of its Alaska Medicaid Theory, (Opp. 9, 13), but those decisions have little relevance as to whether Merck can satisfy its burden. First, Merck claims that the *Louisiana Vioxx* Summary Judgment Order confirms that whether Alaska could "limit coverage of drugs under Medicaid" is a complicated question of federal law. (Opp. 9). As will be discussed below, that Order confirms this is a question of state-law and state politics. *Infra* 8-10. Merck also claims that the *Louisiana Vioxx* Final Order supports its claim that Alaska's theory of causation necessitates that Alaska must establish that Alaska Medicaid could restrict Vioxx. (Opp. 12-13). This assertion ignores that this Court relied on **Louisiana state-law** to reach that conclusion. Only after carefully reviewing the requirement of Louisiana law did this Court conclude that Louisiana's redhibition claim

5

required Louisiana to establish that it "could and would have created a restrictive formulary from which it excluded Vioxx." *Louisiana Vioxx*, 2010 U.S. Dist. LEXIS 64388, at 21-22, 29 (E.D.La. June 29, 2010). The Original Complaint contains no redhibition claim and Merck offers no explanation for why the same would be true of a claim for restitution under the Alaska UTPA. *See e.g., Caldwell ex rel. Louisiana v. Bristol Myers-Squibb Sanofi Pharm. Holding Partnership*, No. 2:12-CV-00442, 2012 WL 3866493 (W.D. La. Sept. 4, 2012) (distinguishing a UTPA claim from *Louisiana Vioxx* because that case involved redhibition).

Merck's Alaska Medicaid Theory does not appear in the Original Complaint, is not required by Alaska law, and cannot support its claim for federal jurisdiction. Once this theory is discarded, Merck has no support for its claim of federal jurisdiction.

> **B.    Under *Howery*, Binding Fifth Circuit Precedent, Merck's Proffered Federal Issue is not "Necessary" to Alaska's Claim**

Merck cannot escape the holding of *Howery*. Merck does not dispute that the Fifth Circuit held that "a federal right is not necessary to [a] case" when "no federal right is an element of [the Plaintiff's] state claim." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 918 (5th Cir. 2001). Merck does not dispute that the Fifth Circuit went on to hold that even if a federal right is an element of a Plaintiff's state-law claim, it is not "necessary" if it is only "an alternate theory supporting a single claim." *Id.* Nor does Merck dispute that a federal claim must be "necessary" to establish federal jurisdiction. *Gunn*, 133 S.Ct. at 1065. As explained in Alaska's Motion, *Howery* alone dictates that the Medicaid statute is not necessary to Alaska's claim. (Mot. 10). Merck's Opposition fails to provide a valid reason why *Howery* does not dictate remand.

In fact, the second holding of *Howery* completely sinks Merck's argument for federal jurisdiction. Even if Merck's Alaska Medicaid Theory were correct—that Alaska must establish that Alaska Medicaid would have denied coverage for Vioxx—that would at most be "an

6

alternate theory supporting" Alaska's UTPA claim.  Alaska's complaint contains numerous other allegations that support both its causal allegations and claims for damages under the Alaska UTPA.  *Supra* 1-3.  Under *Howery*, Merck's Medicaid Theory, even if true, is not a "necessary" federal issue sufficient to create federal jurisdiction.[3]

Merck's Opposition fails to address the substance of *Howery*.  Merck argues that Alaska's "case is nothing like *Howery*" only because the federal issue in *Howery* was not raised until the "tenth" amended complaint.  (Opp. 14-15).  In Merck's words, the federal issue in *Howery* was only "an afterthought."  (*Id.* at 14).  Of course, a case can be removed at any time if a federal question is raised through an "amended pleading."  28 U.S.C. § 1446 (b)(3).  Alaska is unaware of, and Merck has failed to provide, an "afterthought" exception to 28 U.S.C. §§ 1331 or 1446(b)(3).  *Howery* is binding precedent regarding when a federal issue is "necessary" for purposes of removal regardless of when the federal issue was raised.  Merck cannot side-step binding Fifth Circuit precedent on such a superficial basis.

Finally, Merck misunderstands *Howery* when it suggests in a footnote that the Fifth Circuit committed "legal error."  (Opp. 15 n.4).  Merck's citation to cases noting that "a federal question raised by only one of several <u>claims</u>" can support federal-question jurisdiction over other claims is inapposite.  (*Id.*) (emphasis added).  Merck conflates the difference between a federal claim and an allegation related to federal law alleged in support of a state-law claim—the procedural facts at issue in *Howery*.  The Fifth Circuit did not overlook supplemental jurisdiction as Merck suggests, rather it found federal allegations did not create federal jurisdiction over the

---

[3] Although, *Howery* was decided before the Supreme Court further articulated its standard for federal-question jurisdiction, its resolution of the question of when a federal issue is "necessary" is consistent with all of the subsequent case law.  In *Howery*, the Fifth Circuit held that federal jurisdiction was appropriate if the federal issue was (1) an essential element; (2) necessary to resolve the case, and (3) substantial.  *Howery*, 243 F.3d at 917.  That standard is, of course, nearly identical to the standard articulate in *Grable & Sons* and clarified in *Empire* and *Gunn*. In addition, the Fifth Circuit recently relied on *Howery* for the proposition that when a federal issue is just one of multiple theories of relief, the federal issue is not "necessary."  *Broussard v. Basaldua*, 410 Fed. Appx. 838, 839 n. 1 (5th Cir. 2011).

one state-law claim raised in the case.  There was no "federal" claim to give rise to supplemental jurisdiction.

### C. Merck's Proffered Federal Issue is Undisputed

Quite simply, Alaska has never contended, alleged, and now concedes, that at the time Vioxx was on the market, it was unable to place restrictions on prescriptions for Vioxx.  Merck's assertion that its Alaska Medicaid Theory is "actually 'disputed,'" and that Alaska does not "appear to contend otherwise," (Opp. 16), is false.  The only reason Alaska did not clearly concede this issue in its Motion is because it was unaware of exactly what "federal" issue Merck claimed.  *See* (Mot. 16).  Merck having now clarified its argument, Alaska willingly concedes that Alaska Medicaid could not and would not restrict Vioxx from its formulary.  This concession, of course, has no bearing on whether Merck was entitled to damages and restitution under its Original Complaint and certainly has no bearing on whether Alaska is entitled to penalties under its Amended Complaint.

### D. Merck's Alleged Federal Issue is Not Substantial

Even if the Original Complaint required a showing that Alaska Medicaid would have restricted Vioxx, which it does not, that is not a "substantial" federal issue.  As outlined in Alaska's Motion, the Supreme Court has clarified that *Grable & Sons* created a "special and small category" of federal jurisdiction. (Brief 13) (quoting *Empire*, 547 U.S. at 699-700). Where a federal issue in a state-law claim is "fact-bound and situation-specific," as is the question of the specifics of a state Medicaid program, federal jurisdiction is not appropriate.  (Opp. 14) (quoting *Empire*, 547 U.S. at 700).  As argued in Alaska's Motion, and confirmed by *Louisiana Vioxx*, considering whether a state Medicaid can restrict a specific drug is a "fact-bound," "situation-specific," state-law, and state-politic specific inquiry that is not a substantial federal issue.

8

This Court's analysis in *Louisiana Vioxx* is instructive as to the minor role federal law plays in answering the question posed by Merck's proffered federal issue. In evaluating Merck's Motion for Summary Judgment in *Louisiana Vioxx*, this Court concluded that "whether Louisiana has discretion to deny coverage for Vioxx . . . hinged upon the choices that the Louisiana legislators made." *Louisiana Vioxx*, 2010 U.S. Dist. LEXIS 142767, at *18 (E.D. La. Mar. 31, 2010); *see also*, *id.* (noting that "[p]rior to 2001, there is little doubt that Louisiana was prohibited from adopting a formulary by its own statutory scheme" (i.e. **Louisiana law**)). Only after conducting a "fact-bound and situation-specific" analysis into Louisiana law and politics, *c.f., Empire*, 547 U.S. at 700, did this Court conclude that "[g]iven the [**Louisiana**] political opposition to restricting Medicaid recipients . . . it is not plausible to conclude by a preponderance of the evidence that . . . [**Louisiana**] could have garnered the necessary legislative approval" to alter **Louisiana law** such that Louisiana Medicaid could limit Vioxx. *Louisiana Vioxx*, 2010 U.S. Dist. LEXIS 64388, at *43 (E.D.La. June 29, 2012). (emphasis added). In other words, whether Louisiana could deny coverage for Vioxx *depended* on questions of **Louisiana law** and **Louisiana politics**.[4] There was no dispute regarding the applicable federal standards, there was only a dispute as to whether Louisiana would have complied with those standards.

At the end of the day, it appears that questions of state law and factual questions about state politics are much more "substantial" then Merck's proffered federal issue. Merck's Opposition does not offer a compelling argument to the contrary. Merck does not explain what federal statutes and regulations will need to be interpreted and, more importantly, if their

---

[4] It is true this Court reviewed the requirements of the Medicaid statute and regulations, *Louisiana Vioxx*, 2010 U.S. Dist. LEXIS 64388, at *27-31, but then quickly turned its attention to the specifics of Louisiana law, *id.* at *31-39. Only after analyzing Louisiana law, did this Court conclude which reimbursement exception was applicable to Louisiana's claim. *Id.* at 38.

interpretation would be disputed. Merck provides no details on how denying access to a drug consistent with Medicaid's rules would "clear[ly]" raise "broad[] federal interests." (Opp. 17). Merck points to *West Virginia ex rel. McGraw v. Eli Lilly & Co.*, but Judge Weinstein offers very little guidance as to exactly what federal issues are raised by seeking damages related to Medicaid. 476 F. Supp. 2d 230, 234 (E.D.N.Y. 2007). Finally, Merck states that the resolution of its proffered federal issue would "have a significant impact on the development of federal law," (Opp. 18), but it is difficult to see how an analysis, like the one this Court did in *Louisiana Vioxx*, would be "controlling in numerous other cases" as the issue was in *Grable & Sons*, *Empire*, 547 U.S. at 700.

At best, Merck's argument boils down to the contention that there may be a question of whether Alaska law satisfies some undisputed federal requirements for restricting drugs on a state formulary. However, courts have noted that just because a state's claim "may incorporate a federal standard, they do not require the construction or interpretation of a disputed issue of federal law." *Pennsylvania v. Eli Lilly & Co.*, 511 F. Supp. 2d 576, 583 (E.D. Pa. 2007). Although Merck Opposition spends several pages discussing the facts of *Gunn*, (Opp. 18-20), it spends no time addressing the Supreme Court's clear jurisprudence that it takes much more than "a federal element to 'open the 'arising under' door.'"[5] *Empire*, 547 U.S. at 701 (quoting *Grable & Sons*, 545 U.S. at 313). Merck's proffered federal issue is exactly the kind of "fact-bound and situation-specific" issue that does not satisfy the requirements of *Grable & Sons*.

### E. Exercising Federal Jurisdiction in this Case would Alter the Balance Between State and Federal Courts

---

[5] Merck's three page argument distinguishing *Gunn* is tilting at windmills. Alaska briefly cited *Gunn* for its statement of the law regarding when a federal issue is "necessary" and noting that the federal issues must be important to the federal system as a whole. (Brief 6, 17). Alaska recognizes that *Gunn* involved a case with a unique procedural posture.

Merck asserts a broad notion of federal jurisdiction in this case that would alter the balance between state and federal courts. In essence, Merck claims that if one potential reading of a party's complaint "implicates" a federal standard—such as whether a state Medicaid program can restrict a drug—there is federal-question jurisdiction. In today's complicated world of federal regulations, Merck's argument would lead to federal jurisdiction over numerous state-law claims. Merck's Opposition focuses only on this type of case, and ignores the broader implications of its broad notion of federal-question jurisdiction.

Furthermore, Merck speaks out of both-sides of its mouth in its Opposition. When it supports Merck's argument that this case involves important federal issues, Merck suggests that claims like Alaska's are on the rise. (Opp. 18). However, when Merck needs to argue this case will not increase the case-load on federal courts, it contends that suits like Alaska's are "a small sliver" of pharmaceutical litigation. (Opp. 21-22). Merck cannot have it both ways.

### F. The Courts that Have Rejected Federal Jurisdiction in Similar Cases are Well-Reasoned and More Persuasive than the *Zyprexa Cases* Especially Given the Developments in Supreme Court Precedent and Fifth Circuit Law

Court's rejecting federal jurisdiction over state claims where damages related to the Medicaid program are the only basis for federal jurisdiction are consistent with the Fifth Circuit's holding in *Howery* and the Supreme Court's continued narrowing of *Grable & Sons*. *See* (Mot. 17-19). Contrary to Merck's contention that the cases relied on by Alaska are "bereft of analysis," (Opp. 11), these Courts carefully considered whether federal jurisdiction would be appropriate when a sovereign state seeks damages, under state-law, for Medicaid expenditures.[6] *See e.g.*, *Pennsylvania*, 511 F.Supp 2d at 580-87 (devoting eight pages to rejecting federal-

---

[6] Not that the number of pages of analysis is an accurate measure of persuasiveness, but it should be noted that after praising Judge Weinstein's "four paragraphs" devoted to the "federal Medicaid framework," Merck cites only one district court case relied on by Alaska. (Opp.11). A quick comparison of the cases cited by Alaska and the *Zyprexa* cases suggests that Alaska has the better side of the "length of analysis" argument.

11

question jurisdiction in a similar case); *Utah v. Eli Lilly & Co.*, 509 F. Supp. 2d 1016, 1020-25 (D. Utah 2007) (devoting six pages to rejecting federal jurisdiction in a similar case); *Mississippi ex rel. Hood v. Astrazeneca Pharm.*, 744 F. Supp. 2d 590, 599-602 (N.D. Miss. 2010) (devoting four pages to rejecting federal jurisdiction in a similar case). Merck cannot avoid these courts' analysis by citing **one of seven** cases Alaska relied on and ignoring the careful and thorough analysis of the six other cases.

Furthermore, Merck cannot escape the similarities between Alaska's cases and those analyzed in Alaska's Motion. As an initial matter, for the reasons explained above, Merck's attempt to distinguish each case based on its "Alaska Medicaid Theory"—that Alaska must establish that Alaska Medicaid would have restricted Vioxx—fails. *See e.g.* (Opp. 11-12, 17) (arguing that *Mississippi* is "inapposite" based on Merck's Alaska Medicaid Theory); *id.* at 12 (arguing that *Caldwell* is inapposite based on Merck's Alaska Medicaid Theory); *id.* at 13 (arguing that *New Mexico ex rel. King v. Ortho-McNeil-Janssen*, No. Civ. 08-0779 (Dist. N.M. Jan 26, 2009), is inapposite based on Merck's Alaska Medicaid Theory). Alaska did not allege and is not required to establish that Alaska Medicaid would have restricted Vioxx. The reasoning of these cases applies equally to Alaska's case, as it did Mississippi's, New Mexico's, and Louisiana's—where a state seeks damages for Medicaid expenditures based on a state-law claim, there is no basis for federal jurisdiction.

Merck's attempt to substantively distinguish these cases also fails. Merck claims the *Mississippi* court provided "little analysis," while ignoring the court's application of *Grable & Sons* and *Empire*. *Compare* (Opp. at 11-12) *with Mississippi,* 744 F. Supp. 2d at 600-01. Merck suggests that *Caldwell* is distinguishable because that court distinguished the *Louisiana Vioxx* cases, (Opp. 12), but fails to acknowledge that the court found *Louisiana Vioxx* "distinguishable

12

because it involved a claim for redhibition," *Caldwell*, 2012 WL 3866493; *see also*, *supra* 5-6 (explaining the differences between *Louisiana Vioxx's* redhibition claim and Alaska's UTPA claim).[7] Merck's attempt to distinguish *New Mexico* fails for similar reasons. Contrary to Merck's insistence, Alaska, like New Mexico, is "not attempting to claim that it ha[d] no legal obligation under the federal Medicaid statute to pay for" Vioxx, but that Merck "fraudulently induced physicians to issue those prescriptions."[8] *New Mexico*, slip op. at 3-4.

As this Court recognized, "there is a split in authority regarding whether cases with allegations such as those in *Zyprexa*," that seek to recover Medicaid expenditures, should be remanded. *In re Vioxx*, 843 F. Supp. 2d at 669 & n. 12. Respectfully, the courts that have disagreed with Judge Weinstein's reasoning in the *Zyprexa* cases present a more compelling analysis of whether claims such as those contained in Alaska's Original Complaint give rise to federal jurisdiction. Although Merck claims Judge Weinstein's logic is "unassailable," (Opp. 22), Judge Weinstein himself recognized that "well-reasoned opinions" could reach a "differen[t]" conclusion on this issue.[9] *Montana ex rel. McGrath v. Eli Lilly & Co.*, 2008 WL 398378, at *4 (E.D.N.Y. 2008).

In a case such as this, where Merck bears the burden of establishing federal jurisdiction over a sovereign states' claim, many inferences and assumptions related to Alaska's allegations

---

[7] In addition, Merck cannot side-step *Caldwell's* reasoning that, at best, Merck's argument depends on a federal defense by pointing to its Alaska Medicaid Theory. Just like Louisiana, Alaska "does not have to prove that it could actually have avoided paying for [Vioxx] prescriptions; it only has to prove that [Vioxx] was marketed in ways that violated" Alaska's UTPA. See *Caldwell*, 2012 WL 3862454, at *10. Merck's reference to Alaska's claim for restitution has no bearing on the logic of the *Caldwell* court that Merck's argument is a federal defense insufficient to support federal jurisdiction.

[8] Merck also selectively quotes from the *New Mexico* decision when Merck contends it supports an argument for federal jurisdiction based solely on the contention that the state seeks reimbursement. (Opp. at 14). Linking two separate paragraphs together, Merck failed to inform this Court that the *New Mexico* court listed 4 contentions in support of the defendant's argument for remand—one of which was that the "State's complaint requires an examination of the extent of the State's obligation under the federal Medicaid statute with regard to payment for prescriptions of covered outpatient drugs." *New Mexico*, slip. Op. at 3. The *New Mexico* court never suggested a claim for Medicaid reimbursement is sufficient for federal jurisdiction.

[9] Merck claims that "off-label" promotion was not important to the *Zyprexa* case, (Opp. 10), but Judge Weinstein clearly found it important in *Montana*, 2005 WL 398378, at *5.

and potential federal issues are required to reach Merck's conclusion that Alaska's Original Complaint raises a "substantial" federal issue. In addition, as noted in Alaska's Motion, Judge Weinstein was not bound by decisions of the Fifth Circuit and issued his first *Zyprexa* opinion in 2005, before the Supreme Court's decision in *Empire*. Since the first *Zyprexa* case, the Supreme Court has reaffirmed that *Grable & Sons* created a narrow category of "arising under" jurisdiction. Given the Supreme Court and Fifth Circuit precedent, Judge Weinstein's reasoning should not govern whether federal jurisdiction exists over Alaska's Original Complaint.

### THIS COURT IS WELL WITHIN ITS DISCRETION TO DECLINE TO EXERCISE SUPPLEMENTAL JURIDICTION

As explained in its brief, this Court would be well within its discretion to decline to exercise supplemental jurisdiction over the state-law claim that is remaining in Alaska's Amended Complaint. (Mot. 20-22). Merck does not dispute this point. (Opp. 23). At this point, the question of whether Alaska's Original Complaint gives rise to federal-question jurisdiction is a theoretical exercise, Merck does not dispute that the Amended Complaint provides no basis for federal jurisdiction.

Merck focuses on the MDL context in opposition to Alaska's argument, but that overlooks the fact that this Court has nearly completed the Vioxx MDL. (Opp. 24-25). The Remaining States have benefited from the judicial economy and common discovery created by the MDL, but are entitled to complete their cases in the appropriate jurisdiction. Furthermore, Merck is wrong to suggest that Alaska amended its Complaint to avoid federal jurisdiction. (Opp. 25). Alaska amended its Complaint to conform the complaint to the evidence and simplify its claims for relief. (Mot. 20). Merck's argument to the contrary is purely speculative.

### CONCLUSION

14

Merck has asked this Court to assert federal jurisdiction over this case even though there is no dispute federal jurisdiction does not exist over the Amended Complaint and it takes several inferences and assumptions to locate the proffered federal issue Merck's argument depends on. Merck's request does not comport with the Supreme Court's command that federal courts should "scrupulously confine their own jurisdiction to the precise limits" under the law to give "due regard for the rightful independence of state governments." *Healy v. Ratta*, 292 U.S. 263, 270 (1934). Alaska asserted no federal issue, the claim in its Original Complaint depends on no federal issue, and its Amended Complaint contains no federal issue. Accordingly, the State of Alaska respectfully requests that this Court remand this case to Alaska State Court.

/s/ Brian M. Vines_____
Brian M. Vines
Attorney for Plaintiff

OF COUNSEL:

Scott A. Powell, Esquire
Don McKenna, Esquire
Matthew C. Minner, Esquire
Brian M. Vines, Esquire
Hare, Wynn, Newell and Newton, LLP
2025 3rd Avenue North; Suite 800
Birmingham, Alabama 35203
Telephone: 205/328-5330

James E. Fosler, Esquire
Fosler Law Group, Inc.
737 West 5th Avenue; Suite 205
Anchorage, Alaska 99501
Telephone: 907-277-1557

**CERTIFICATE OF SERVICE**

      I hereby certify that the above and foregoing Plaintiff's, State of Alaska, Reply in Support of its Motion to Remand has been served upon Liaison Counsel, Russ Herman, Phillip Wittmann and Ann Oldfather, by U.S. mail and e-mail or by hand delivery and e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8(C), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accordance with the procedures established in MDL 1657, on this 30th day of September, 2013.

    /s/ Brian M. Vines
    Brian M. Vines
    ASB-4419-R77V
    Attorney for Plaintiff
    Hare, Wynn, Newell & Newton, LLP
    2025 3rd Avenue North; Suite 800
    Birmingham, Alabama  35203
    Telephone: 205/328-5330
    Facsimile: 205/324-2165
    bvines@hwnn.com