RECEIVED
SEP 16 2013
CHAMBERS OF
U.S. DISTRICT JUDGE
ELDON E. FALLON

Sep. 14, 2013

Your Honor,

This is Mary Turner once again.

Enclosed is the letter the Lanier Law firm sent me. They are liars. How can a lien be placed on me for 673,296 unless I was recieving over 600,000 dollars. My hospital Bill was only $6,000. This has been going on since 2006. They told me on one occasion that I wasn't getting anything. I don't believe that my settlement was 24,000 and I only got 12,000. Tell me something is wrong.

Thank you,
Mary J. Turner

MARY J. TURNER
2012 TAYLOR ST.
Detroit, Mi. 48206

METROPLEX MI 480
2 SEP 2013 PM 15 L

RECEIVED
SEP 16 2013
CHAMBERS OF
U.S. DISTRICT JUDGE
ELDON E. FALLON

U.S. MARSHALS

Hon. Eldon Fallon
United States District Court Eastern District
500 Poydras St. Room C-456
New Orleans, La. 70130

7013 0730 0315

July 22, 2013



**A Professional Corporation**

**HOUSTON**
The Lanier Law Firm, PC
6810 FM 1960 West
Houston, TX 77069
Post Office Box 691448
Houston, TX 77269
(713) 659-5200
Fax (713) 659-2204

**LOS ANGELES**
The Lanier Law Firm, PC
2049 Century Park East
Suite 1940
Los Angeles, CA 90067
(310) 277-5100
Fax (310) 277-5103

**NEW YORK**
The Lanier Law Firm, PLLC
Tower 56
126 East 56th Street
6th Floor
New York, NY 10022
(212) 421-2800
Fax (212) 421-2878

lanierlawfirm.com

Mary J. Turner
2012 Taylor Street
Detroit, MI 48206

Dear Ms. Turner:

On July 15, 2013, Judge Fallon entered an Order requesting that Plaintiffs' Liaison Counsel review your June 19, 2013 letter that was transmitted to the Court to address your Vioxx settlement, and to take appropriate action, if any. In response to Judge Fallon's Order, Plaintiffs' Liaison Counsel, Leonard A. Davis, Esq., (copied herein) requested that The Lanier Law Firm ("LLF") advise its position regarding the statements contained in your letter to the Court. This letter is written and transmitted to respond to your letter to Judge Fallon.

As you are aware, LLF has been holding in escrow $8,223.49 concerning your recovery from your Vioxx personal injury settlement. The escrowed funds have been held pursuant to a claimed lien letter that was served upon LLF on May 7, 2010, by Rawlings & Associates PLLC, the attorneys for your private health care insurance provider, Blue Cross Blue Shield ("BCBS"). As you know, your private health care insurance provider had filed a lawsuit against our law firm as the trustee of settlement funds in your case, and in other cases, seeking reimbursement for $673,296.34 in medical expenses that BCBS, and its attorneys, claim to have been provided as a result of your alleged Vioxx-related injuries. As you also know, at the time that the claimed lien letter was served upon LLF, our law firm had already paid your first installment of your Vioxx settlement – which payment was made in the complete absence of any claimed lien against your lawsuit recovery. Thus, when we received the claimed lien letter from the attorneys for BCBS on May 10, 2010, our law firm was only in the position to withhold the remaining $8,223.49 from further distribution to you.

On December 5, 2012, Judge Eldon Fallon dismissed the lawsuit brought by your private health care insurance provider against our law firm and other law firms. The dismissal of that lawsuit was primarily based upon the fact that the MDL Court that oversaw the Vioxx litigation felt it would be inappropriate to maintain jurisdiction over claims by private insurance companies seeking healthcare reimbursement against citizens from different states and law firms from different states within Judge Fallon's federal court. Judge Fallon specifically addressed how his MDL court had been vested with authority from the Judicial Panel on Multidistrict Litigation to oversee the Vioxx *personal injury* actions, and that Judge Fallon's court was not the appropriate forum to litigate the subject insurance reimbursement actions. Since that lawsuit was dismissed more than 7 months ago by Judge Fallon, our law firm acted diligently and responsibly to maintain your remaining withheld settlement proceeds in escrow in order to secure those funds in the event that your private health care insurance provider would seek to file an individual lawsuit against you and/or our law firm, seeking to recover insurance payments it made on your behalf. However, during the past 7 months since Judge Fallon's decision, we have not heard one word from your insurance provider. No letters were sent and no further litigation was commenced concerning BCBS's claimed lien against your Vioxx settlement proceeds. We believe that given the passage of time, and the years you have waited for your second installment of your personal injury recovery, both the

interests of justice and fairness collectively require that our law firm must release the funds to you at this time.

Having set forth the procedural background, this letter now additionally confirms that you have again asked that our law firm release the withheld funds to you in the amount of $4,884.17. As addressed immediately above, LLF will agree to release the withheld funds to you. However, our law firm cannot release the withheld funds without recognizing and addressing with you that Judge Fallon's dismissal of the prior action <u>was not a dismissal of the action on the merits</u>. This means that your health care provider could, potentially, still seek to file an action to recover reimbursement of medical expenses it paid on your behalf, allegedly as a result of your Vioxx-related injury. It is specifically because of that concern, that our law firm has acted to safeguard your remaining settlement proceeds during the preceding 7 months since Judge Fallon dismissed the subject lawsuit brought by BCBS.

In closing, we ask that you countersign this letter acknowledging your awareness that your private health care insurance provider, BCBS, may still seek to be reimbursed for medical payments it claims you owe out of your Vioxx personal injury settlement, regardless of the fact that the lien it asserted could never potentially be satisfied by the limited funds LLF was in a position to withhold as of May 7, 2010. This means that by signing this letter, you appreciate that BCBS may seek to file an individual lawsuit against you and/or LLF seeking to recover any or all of the claimed $673,296.34 in liens that were belatedly asserted against you as of May 7, 2010, after the majority of your injury settlement had been disbursed. Additionally, by signing this letter you also acknowledge that you retained our law firm to only represent you in a personal injury litigation. Therefore, if BCBS does, in fact, file a lawsuit against you seeking to recover proceeds from your Vioxx personal injury settlement, you hereby acknowledge that LLF has not been retained to represent you in such an action, and you understand that LLF will not be serving as your counsel in such a lawsuit.

Respectfully,

*Richard D. Meadow*

Richard D. Meadow


Countersigned and acknowledged by Mary Turner on July __, 2013:

_____


cc: Leonard A. Davis, Esq. (without attachments)

*Confidential Information*

| V4201 | IS PAYMENT SUMMARY (Data as of: 10/4/13 ) | | | |
|---|---|---|---|---|
| **I. CLAIMANT INFORMATION** | | | | |
| Claimant Name | Turner, Mary J. | | VCN | 1038226 |
| Law Firm | Lanier Law Firm, PC | | Enrollment Status | IP Enrolled |
| Primary Injury: IS | Date of Injury: 8/20/03 | Secondary Injury: | | Date of Injury: |

**II. PAYMENT SUMMARY**

This is an official communication from the Vioxx Claims Administrator that provides a summary of all Payments and withholdings regarding the claim you filed in the Vioxx Settlement Program. The Final IS Point Value that forms the basis of the gross settlement payment is $1,833.32 per point. The following accounting provides a breakdown of all payments and withholdings.

**A. Final Award**

| 13.21 Points x $1,833.32 per Point | $24,218.16 |
|---|---|

**B. Payments Issued to Claimant**

| | | | |
|---|---|---|---|
| 1. | IS Interim | $9,564.04 | 11/25/09 |
| 2. | IS Final | $8,223.49 | 6/14/10 |

*Refunds*

| 4. | 8% Common Benefit Fees - Refund | $363.27 | 12/8/10 |
|---|---|---|---|

**C. Deductions from Final Award**

This section provides the status of any liens or court-ordered amounts withheld at the time the Final payment was issued.

| 1. | Federal Medicare Lien - Withheld | | |
|---|---|---|---|
| 2. | State Medicaid Lien - Withheld | | |
| 3. | Other Govt Lien - Withheld | | |
| 4. | PLRP Lien - Withheld | | |
| 5. | 1% Common Benefit Costs Withheld | $242.18 | 6/4/10 |
| 6. | 8% Common Benefit Fees Withheld | $1,574.18 | 6/4/10 |
| 7. | PTO 50 - Withheld | | |
| 8. | Other Private Lien - Withheld | | |

| 1. | Federal Medicare Lien - Paid | $4,251.00 | 6/4/10 |
|---|---|---|---|

**D. Current Status of LRA Lien Withholdings**

*Confidential Information*

| | | | | |
|---|---|---|---|---|
| 1. | Federal Medicare | $4,251.00 | COMPLETE | |
| 2. | State Medicaid | $0.00 | N/A | |
| 3. | "Other Government" Liens | $0.00 | N/A | |
| 4. | Private Lien Resolution Program ("PLRP") Liens | $0.00 | N/A | |

### III. EXPLANATION OF DEDUCTIONS AND LIEN WITHHOLDINGS

The data in Section II.D reflects current LRA data as of the date of this Payment Summary report. "Complete" means that the lien has been finalized, and the amount listed is what is being paid to satisfy the obligation. "Pending" or "TBD" means that the lien amount has not been finalized and may be reduced. If it is reduced, the Claims Administrator will instruct the Escrow Agent to issue a payment to you for the difference between the amount withheld and the amount due. "N/A" means that there is no lien associated with your claim for that specific program.

### IV. COMMON BENEFIT FEES AND ATTORNEYS' FEES

The Points award displayed in Section II.A above has been assessed an 8% deduction for Common Benefit Fees pursuant to Section 9.2.1 of the Settlement Agreement. The Claims Administrator set aside the 8% before remitting payment to your attorney on your behalf. Because the Court has ordered that the total for attorneys' fees cannot exceed 32%, your attorney may only withhold another 24% from your award, even if your individual retainer agreement was greater than or equal to 32%. If the retainer agreement was less than 32% your attorney may only withhold the difference between that percentage and 8%. Fixed Payment claims will not be assessed the 8%

### V. COMMON BENEFIT COSTS

The Points award displayed in Section II.A above has been assessed a 1% deduction for Common Benefit expenses pursuant to Section 9.2.2 of the Settlement Agreement and Pretrial Order 51. The Claims Administrator set aside the 1% before remitting payment to your attorney on your behalf. Unlike the 8% Common Benefit Fee that comes out of your individual attorneys' fees, the 1% deduction for reimbursement of the Common Benefit Attorneys'

### VI. DELIVERY OF RELEASE AND STIPULATION OF DISMISSAL TO MERCK

As provided in Section 7.3 of the Settlement Agreement, the Claims Administrator will deliver the Release and the Stipulation of Dismissal with Prejudice, if applicable, that you submitted when you Enrolled in the Settlement Program. Merck shall be free to file or cause to be filed such Stipulation of Dismissal with Prejudiced and/or Release in any relevant action or proceeding.



**Lanier Law Firm**

A Professional Corporation

**HOUSTON**
The Lanier Law Firm, PC
6810 FM 1960 West
Houston, TX 77069
Post Office Box 691448
Houston, TX 77269
(713) 659-5200
Fax (713) 659-2204

**LOS ANGELES**
The Lanier Law Firm, PC
2049 Century Park East
Suite 1940
Los Angeles, CA 90067
(310) 277-5100
Fax (310) 277-5103

**NEW YORK**
The Lanier Law Firm, PLLC
Tower 56
126 East 56th Street
6th Floor
New York, NY 10022
(212) 421-2800
Fax (212) 421-2878

lanierlawfirm.com

September 13, 2013

Ms. Mary J. Turner
2012 Taylor Street
Detroit, MI 48206

Re: Your letter to Judge Fallon dated August 26, 2013

Dear Ms. Turner:

I received a copy of the letter you sent to Judge Fallon dated August 26, 2013. Your letter asked Judge Fallon to investigate why you were sent a total of $4,884.00, when, in fact, you attached a document to your letter which set forth an amount associated with your name totaling $671,082.83. Unfortunately, there appears to be a very significant misunderstanding that we need to clear up. The $671,082.83 is the amount of money associated with health insurance payments made on your behalf by Blue Cross and Blue Shield ("BCBS"), which BCBS had claimed you owed to BCBS – to be paid from your Vioxx settlement. Therefore, the document that you attached to your letter to Judge Fallon was nothing more than a grid created by your private healthcare insurance company, when BCBS sought to get paid for its healthcare expenses made on your behalf. Our law firm attached that document to your letter for informational purposes only. We did so to show you a listing of the alleged liens that BlueCross BlueShield was trying to collect from you.

In 2009, you were made aware that your total Vioxx settlement amounted to 13.21 points under the Vioxx national settlement grid. You later understood that amounted to $24,218.16 under the conditions of the settlement agreement. We have understood for many years that you were quite aware of the total amount that you settled for. As you can see, your total settlement in the Vioxx proceedings of $24,218.16, was a mere fraction of the total amount that your private insurance company sought to

recover from you in the amount of $671,082.83. In this regard, you should consider the $671,082.83 as an attempt by BCBS to essentially *bill* you for that amount (by purportedly asserting a lien for that amount), rather than as your personal injury recovery in the Vioxx litigation. As you know, our prior letter addressed the lien issue with you, and we will refer you back to that correspondence for the history of the lien dispute with BCBS, including why we held the limited remaining funds from your settlement that had not been released to you until recently.

We assume that your concern that our law firm made more money than you was based upon your misunderstanding that our firm collected $671,082.83 on your behalf. Since we have addressed that you misread that the $671,082.83 was credited to you, instead of reading that amount as being sought from you by BCBS, we hope that your inquiry is satisfied. Nevertheless, we want to clarify a few points to you:

First, you retained our law firm on October 16, 2005. Our retainer (contract) with you permitted our firm to receive 33-1/3% of your gross recovery for the first $500,000. We never received any more than the 33-1/3% you agreed to pay our law firm.

Secondly, your Vioxx settlement was paid (pursuant to the national settlement program), in two installments. The first approximately 40% of your allocated settlement was submitted to our law firm for distribution to you toward the end of 2009. Upon receipt, we deducted some case expenses and less than your contracted attorneys' fees (as Judge Fallon reduced the total attorneys' fees recoverable to our firm) and distributed the remaining funds to you on or about December 10, 2009. We received the second and last portion (approximately 60%) of your allocated settlement money toward the end of June in 2010. At about that same time, we became aware of an assertion of two private insurance liens by two BCBS companies. As your attorneys, we, The Lanier Law Firm, were sued to keep us from distributing that second payment to you. As you know from our last letter to you dated July 22, 2013, we diligently defended ourselves and your money and in the end,

more than two years later, the lawsuit was dismissed by Judge Fallon. Although we have no way of knowing if BCBS will again try to obtain money from you, after you last wrote to Judge Fallon, our law firm distributed the last of the funds we received on your behalf to you.

Third, as you can see from your Distribution of Settlement Proceeds, which I am attaching to this letter, your last settlement portion totaled $14,654.12. A Medicare lien ($4251.00), as well as common benefit costs ($242.18) were deducted by order of the Court prior to receipt of the money by our law firm. We then deducted attorneys' fees and remaining expenses, giving you a net distribution of $4884.17.

As we hope you can see, The Lanier Law Firm did not receive more money than you did, as you incorrectly suggested to Judge Fallon. Our attorneys' fees totaled less than 30% of the settlement, and you received, after fees, expenses and your personal medicare lien, more than did our firm. Our actions were and remain transparent. Every cent of your settlement is accounted for in the attachment to this letter.

Please do not hesitate to contact me if you have any additional questions, and I will be happy to explain it to you personally.

Sincerely,

*Maura Kolb*

Maura Kolb


cc:   Honorable Eldon E. Fallon
      Leonard A. Davis

## The Lanier Law Firm
Distribution of Settlement Proceeds
### VIOXX

Client Name: **Turner, Mary J.**

Case # **1026-4015**

Gross Settlement Value: **$24,218.16**

| Date Of Payment | 12/10/2009 | 6/28/2010 | TOTAL | Fee% |
|---|---|---|---|---|
| Check No. | 67056 | | | |
| Settlement Amount | $9,564.04 | $14,654.12 | $24,218.16 | |
| Total Attorney's Fees | $2,709.58 | $4,412.87 | $7,122.45 | 32% |
| **Expenses** | | | | |
| Lanier Law Firm, P.L.L.C. | $1,096.58 | $863.90 | $1,960.48 | |
| Michael B. Serling, P. C. | | | | |
| Burrell, Regenstreich & Booker | | | | |
| Total Expenses | $1,096.58 | $863.90 | $1,960.48 | |
| **Loans/Liens/Assessment** | | | | |
| Federal Medicare Reimbursement | | $4,251.00 | $4,251.00 | |
| Common Benefit Costs (1%) | | $242.18 | $242.18 | |
| Total : | $0.00 | $4,493.18 | $4,493.18 | |
| Net Due to Client | $5,757.88 | $4,884.17 | $10,642.05 | |

**Client's Agreement**

This payment, the monies being withheld, and the amount I am to receive have been fully and satisfactorily explained to me and I completely agree with the way monies are being disbursed and with the amount I am receiving. I affirm that I have no bankruptcy proceeding pending nor have I filed bankruptcy since the commencement of this litigation. I also affirm that neither these proceeds nor the amount I am receiving is subject to any attachment or claim by any bankruptcy court, any bankruptcy trust, any secured creditor, lien holder or the Internal Revenue Service other than those listed above.

I also acknowledge that any liens, whether known or unknown, or any unpaid medical bills, are my sole responsibility and The Lanier Law Firm is in no way responsible for same. I have not informed The Lanier Law Firm of any liens with regard to my Vioxx claim.

I have had the opportunity to ask questions about my settlement and to ask questions about the above distribution of my settlement funds. My questions have been answered to my satisfaction.

Mary J. Turner     _[signature]_

The Lanier Law Firm