UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Vioxx | * | MDL Docket No. 1657 |
| **PRODUCT LIABILITY LITIGATION** | * | SECTION L |
| This Document relates to: | * | HONORABLE JUDGE FALLON |
| Dennis Harrison Pro Se 2:07-cv-00905-EEF-DEK | * | MAGISTRATE JUDGE KNOWLES |

*********************************************************************

## PLAINTIFF DENNIS R. HARRISON'S LR56.2 STATEMENT REGARDING DEFENDANT'S MATERIAL FACTS

PLAINTIFF DENNIS R. HARRISON'S STATEMENT
REGARDING DEFENDANT'S MATERIAL FACTS INCLUDES EXCERPTS FROM
OPPOSITION MOTION EXHIBITS AND **EXCERPTS FROM
PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT**

1. **Plaintiff Ex. A.** *Warning Letter Sept. 17, 2001.* This letter is a material fact in this case because by issuing this letter, the **FDA informed Defendant Merck of specific violations it was conducting**. Defendant Merck had the duty to correct these violations immediately, but chose to litigate them instead. By so doing, the FDA eventually sent the same violations over to the Department of Justice for further investigation and prosecution because the FDA has no other means to attain enforcement. As this document is the official finding of the FDA which has Jurisdiction of drugs under 21 U.S.C. 355 (the "Act"), Plaintiff believes the Letter and the Material Facts that it contains are not in dispute.

2. **Plaintiff Ex. E.** *Plaintiff's Pharmacy Record from the CVS Pharmacy* record was obtained by Defendant subsequent to Plaintiff's authorization to do so after filing his PPF. The record contains the prescriptions taken by Plaintiff in the year of 2000 which is prior to the Spinal Fusion Surgery he underwent in 2001. This document establishes that **Plaintiff was taking 50 mg dosage daily of Vioxx** and Plaintiff believes this Material Fact is not in dispute.

3. **Plaintiff Ex. F.** *Plaintiff's Medical Record, July 25, 2001, consists of a report filed by Dr. James Trice.* This document was obtained by Defendant Merck subsequent to authorization by Plaintiff following his filing of the PPF report. The significance of this document is that it **supports the diagnosis of rheumatoid arthritis** in the section IMPRESSION 2). It is believed that the fact that rheumatoid arthritis is present and gives support to a later conclusion of the

2

diagnosis for rheumatoid arthritis contained in Dr Blavatsky's Declaration in paragraph 12, and therefore Plaintiff believes this Material Fact is not in dispute.

4. **Plaintiff Ex. G.** *Plaintiff's Medical Record, March 28, 2002, consists of a report signed by Dr. Ronald J. Faille.* This document was obtained by Defendant Merck subsequent to authorization by Plaintiff following his filing of the PPF report. The significance of this document is that in the section Past Medical History is also significant for rheumatoid it **supports the diagnosis of rheumatoid arthritis** ... It is believed that the fact that rheumatoid arthritis is present and gives support to a later conclusion of the diagnosis for rheumatoid arthritis contained in Dr Blavatsky's Declaration in paragraph 12, and therefore Plaintiff believes this Material Fact is not in dispute.

5. **Plaintiff Ex. J.** *AAOS Now Journal articles in re Massive Fraud;* consists of two articles published in an authoritative Medical Journal which is the official publication of an organization that Dr. Blavatsky, **"Massive Fraud revelations stun Orthopedics, and the Letter from the publisher titled "Reuben guilty of fraud"** were published to notify medical practitioners in the practice of Orthopedic Surgery, Defendant Merck's Expert Witness , is a member of ant the article from AAOS Now titled, "Massive Fraud revelations stun Orthopedics, and the Letter from the publisher titled "Reuben guilty of fraud" were published to notify medical practitioners in the practice of Orthopedic Surgery, which Dr. Blavatsky Defendant Merck's Expert Witness, is one of, therefore these articles present the Material Fact that Dr. Reuben has been found to be a fraud, a should have raised considerable doubt into Dr. Blavatsky's mind as to whether or not to rely on Dr. Reuben's opinions before basing his own opinions on Reuben et al.'s research, and Plaintiff believes this is a material Fact and is not in dispute.

6. **Plaintiff Ex. K.** *Consists of a New York Times article, published March 10, 2009,* and which is freely available on the internet, authored by Gardiner Harris, titled "Doctors *Pain Studies Were Fabricated,* Hospital Says. This article was published by The New York Times, which is believed by many as the newspaper of record because it faithfully reports corrections and the article with all corrections is published on the internet. This article deals with the then breaking news **that Dr. Reuben's research was flawed. Thusly anyone doing due diligence on research authored by Dr. Reuben should have been put on notice to inquire still further,** and this notice is a Material Fact in this case because Dr. Reuben's research has been hoisted up before this Court as proof of safety of Vioxx, and Plaintiff believes the fact of this notice is not in dispute.

7. **Plaintiff Ex. L.** *Consists of The Federal Register article, dated November 1, 2011 permanently bars Scott S. Reuben, M.D.,* the author of the research report hoisted before this Court as "Reuben et al." by both Dr. Blavatsky, as his Exhibit C, and in paragraph 29 of his Declaration ; and by Defendant Merck in its undisputed facts #75, and elsewhere in its Motion For Summary Judgment Against Plaintiff in this case, who **authored "High dose nonsteroidal anti-inflammatory drugs compromise spinal fusion" (see, Plaintiff's Ex. HH), by announcing in the SUMMARY ...permanently debarring Scott S. Reuben , M.D. from .providing services in any capacity to a person that has an approved or pending drug product application.** Plaintiff believes that this notice does apply to Defendant Merck and Plaintiff believes this is a Material Fact that is not in dispute, and that the same prohibition bars Dr. Blavatsky ,an

3

independent Expert Witness contracted by Defendant Merck, from expressing opinions of Dr. Reuben in this case, and also from basing any and all his opinions whether in part or in whole on any research authored by Dr. Reuben, and that if such opinions or impressions are proffered to the Court, they should be ignored from consideration and that this is a material fact that is not in dispute.

8. **Plaintiff Ex. M.** *Consists of the Notice of Initiation Of Disqualification Proceedings* and Opportunity To Explain, and that notice states that he has already plead guilty to one count, but then goes on and states "Based on our evaluation of information obtained by the Agency (FDA) we believe that **you have repeatedly or deliberately violated regulations governing the proper conduct of clinical studies** involving investigational products, as published under Title 21 CFR, part 312.70. " and proceeds to state that Dr. Reuben will not contest his disqualification. Plaintiff believes the forgoing are Material facts not in dispute.

9. **Plaintiff Ex. N.** *Consists of a document published by Department Appeals Board concerning Scott S. Reuben* (O.I. File No. : 1-09-40105-9), Petitioner v The Inspector General Doc No. C-11-664, Decision No. CR2481, Dated January 6, 2012, which concludes with the statement " For these reasons, I conclude that **the I.G. properly excluded Petitioner from participation in Medicare, Medicaid and all federal health care programs, and I sustain the five-year exclusion**. Plaintiff believes this is a Material Fact not in dispute.

10. **Plaintiff Ex. Q.** Consists of a document found on the MDL data Base as a Clinical Documentation, Potential Risks Based upon Specific Cyclooxygenase-2 Inhibition. Taken from the NDA 21-046 application, and identified as page E-36, E-37, and E-38. The potential risks are based on a **previous study Defendant Merck performed in 1995 (see Exhibit DD) which discovered these risks and which are** herein stating the potential risks that Vioxx had to overcome to prove its Safety. Plaintiff believes these risks were Material Facts in Plaintiff's case and the document that states those risks was presented to the FDA panel supporting Defendant's application for Post- Surgical use of Vioxx but that the tests allegedly supporting proof that Vioxx was safe in that use had not overcome the presumption that these risks were in fact very dangerous and the tests had not overcome the presumption that they were, and those tests were withdrawn from the application and the **application was approved without attaining approval for the use in Post Orthopedic Surgery**, and that this Material fact is not in dispute.

11. **Plaintiff Ex. V.** *Consists of a document Vioxx: A Scientific Review, by Edward M. Scenic*, M.D. and employee of Defendant Merck who heads Defendant's Merck Research Labs, and who played a very great part in showing that **Merck had actually merged Scientific research into a Marketing Tool and thereby reveals how inseparable the goals of marketing became the goals of its research department**, but that is a Material Fact is shown on page 4 paragraph 4 with the statement " Merck was competing well and gaining market share... "And this is a material fact that is not in dispute.

12. **Plaintiff Ex. DD.** *Consists of a document obtained from the MDL Database presented in the Journal of Orthopedic Trauma*, Vol. 9, No. 5, pp. 392-400 titled "Effect of nonsteroidal anti-

4

inflammatory drugs on/Fracture healing a laboratory study in rats". As this study closely presents the basis for the "Potential Risks" stated in the NDA 21-046 application stating on page E-36 (see, Plaintiff Ex Q.) and states in conclusion on page 11, which is supplied from the database as page MRK- NJO152122 and it states the following: "Despite the fact that the effect is nearly fully reversed when the anti-inflammatory drug is discontinued, **the use of these agents in patients with acute fractures should be limited. " This conclusion, that NSAIDs should be limited when fracture healing is required**, is a material fact and Vioxx is an NSAID, and this research is believed by Plaintiff to not be in dispute.

13. **Plaintiff Ex. GG..**  *Consists of MK-0966 E-20 Page, General Safety Overview, 1.2.4 Other Studies-Rheumatoid Arthritis* ... (3) rheumatoid arthritis will be filed as a new application at a later date. The material fact that **rheumatoid arthritis was withdrawn from the NDA 21-046 application on 26 October 1998 and therefore was not an approved use when the label was approved in or about April 1999** is a fact that is not in dispute.

14. **Plaintiff Ex. HH.**  *This document was supplied to Plaintiff as Exhibit C attached to the Dr. Blavatsky Declaration and elsewhere identified as "Reuben et al."* in Defendant's Motion for summary Judgment Against Plaintiff and it features the article, "High dose nonsteroidal anti-inflammatory drugs compromise spinal fusion." This article is one of many articles that Dr. Reuben produced and presented in authoritative medical journals , but are now totally discredited because they contain false data, the author has been permanently debarred by the FDA and his name appears on the persons to be excluded list published by the Office of The Inspector General which is maintained so that Corporate Integrity Agreement governing Defendant Merck's Probation can be carefully checked by Defendant before employing consultants or researchers so as they do not stray in the course of business, and Plaintiff believes that this material fact is not in dispute.

15. **Plaintiff Ex. MM.** Consists of a document from Plaintiff's Medical Record which was obtained by Defendant Merck in consequence of Plaintiff's authorization to do so pursuant to the PPF document Plaintiff submitted. The Rehabilitation Hospital of the Cape and Islands (RHCI created this document at the time of Plaintiff's admittance on 2/3/01, The significance of this document is that it documented Plaintiff's physical stature and condition just before and after his Spinal Fusion Surgery performed on or about January 29, 2001 and thusly provides a baseline to measure the success of the surgery and the resulting collapse of the Spinal Fusion. Plaintiff believes these Material facts are not in dispute.

16. **Plaintiff Ex. NN.** Consisting of a medical report of Dr. Frank F. Rand dated 4/3/01,, and an X-ray exam also taken on 4/3/01, and an exam by Dr. Carl dated September 20, 2002 and these are Plaintiff's Medical Records obtained by Defendant Merck in consequence of Plaintiff's authorization to do so pursuant to the PPF document Plaintiff submitted. The three documents are present the material fact that Plaintiff's Spinal Fusion failed starting with the 4/3/01 exams and

5

ending with the September 20, 2002 exam. Plaintiff believes this to be material facts not in dispute.

17. **Plaintiff Ex. OO.**  Document consisting of the Settlement Agreement between United States of America vs. Merck and Co., and presently known in this case as Defendant Merck, Dated on or about 11/22, 2011, beginning on page 2 section E. are detailed the charges plead guilty to by defendant Merck. Plaintiff believes this document cannot be disputed by Defendant Merck, and is not in dispute.

18. **Plaintiff Ex. PP.**  Consists of a document obtained from www.oig.hhs.gov.  Scott Reuben, Exclusion Authorities, US Dept. H&H Services. And this presents the material fact that Dr. Reuben is a mandatory Excluded Person, a material fact that is not in dispute.

19. **Plaintiff Ex. QQ.** Consists of pages taken from the Corporate Integrity Agreement which is part of the probation  agreed to by Defendant Merck  and is a Disclosure Program, which defines "Ineligible Person" and Dr. Reuben is one such person and Plaintiff believes this Material Fact is not in dispute.

20. **Plaintiff Ex. RR.** Consisting of a document referred to as an Obstacle Response Guide Example, referring to pages MRK-EAL0058960 and MRK-EAL0058961,  but is in the form of a letter from Merck to Physicians who asked questions that were too sensitive for sales personal to answer directly. The II. Pre-emptive Analgesia in Spinal Fusion  was authored by Reuben et al. and it shows here that Defendant Merck was using Reuben as early as August 2001 in their promotion of Vioxx; and item IV, on page MRK-EAL0058962, authored by Reicin et al, titled Post-operative Analgesia in Post-orthopedic Surgery, were used to promote the use of Vioxx in Post Orthopedic Surgery, an application that failed on the grounds of safety and thereby became an  FDA unapproved use , and that use never was approved by the FDA and Plaintiff believes is a material fact that caused his injuries and these facts are not in dispute.

21. **Plaintiff Ex. UU.**   which has tables on pages 3 and 4 stating *Consisting of the Government's Sentencing Memorandum/ Scott Reuben, Criminal No.  10-CR-30002-MAP* specific articles authored by Dr. Reuben and also the Pharmaceutical Companies that paid him to publish them. Plaintiff believes this document presents material facts that are not in dispute.

22. **Plaintiff Ex. VV.**  *Consists of a file that is Defendant's Exhibit 7 and that is the Declaration of Nicholas Blavatsky, Defendant's Expert Witness*, with all of his Exhibits, and that is a material fact not in dispute, *although the conclusions he arrived at are certainly disputed by Plaintiff in so far as he has hoisted a convicted fraudster as a reliable source of research to the Court.*

23. **Plaintiff Ex. WW.** *Consists of two items, 75 &76, taken from Defendant's statement of Material Facts Not In Dispute*, paragraphs 75 & 76, which defendant used to demonstrate the safety of Vioxx, both of which were proposed as proving the safety of Vioxx by Dr. Blavatsky in the Declaration, see Plaintiff Exhibit UU, paragraphs 29 and 30, both of which relied in part or in whole of the safety of Vioxx as presented in "Reuben et al." a research paper that has been totally

6

discredited and that was used to present material facts in this case based on inadmissible evidence and that fact is believed by Plaintiff to no longer in dispute.

## PLAINTIFF DENNIS R. HARRISON'S STATEMENT REGARDING DEFENDANT'S MATERIAL FACTS INCLUDES EXCERPTS FROM OPPOSITION MOTION EXHIBITS AND **EXCERPTS FROM PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT**

- Plaintiff Exhibit A. Warning Letter Sept. 17, 2001. This letter is a material fact in this case because by issuing this letter, the FDA informed Defendant Merck of specific violations it was conducting. Defendant Merck had the duty to correct these violations immediately, but chose to litigate them instead. By so doing, the FDA eventually sent the same violations over to the Department of Justice for further investigation and prosecution because the FDA has no other means to attain enforcement. As this document is the official finding of the FDA which has Jurisdiction of drugs under 21 U.S.C. 355 (the "Act"), Plaintiff believes the Letter and the Material Facts that it contains are not in dispute .
- Plaintiff Exhibit B. Consists of a letter concerning a tolling agreement relating to an investigation into criminal and civil charges dated February 24, 2006 from the U.S. Department of Justice ("DOJ"), regarding the marketing and promotion of the misbranded drug Vioxx, a product of Defendant Merck. Plaintiff believes that this formal letter from the DOJ represents the formal initiation of the investigation by the U.S. Attorney General office into matters first raised in the Warning Letter (see, Plaintiff Ex. A.) and charges referred by the FDA for enforcement by the U.S. Attorney, and Plaintiff believes this Material Fact is not in dispute.

- Plaintiff Exhibit C. Consists of the PRELIMINARY ALLEGATIONS charges, concluding with the following statement "MERCK SHARP & DOHME CORP. did introduce and cause the introduction , and did deliver for introduction and cause for delivery for introduction into interstate commerce, quantities of Vioxx, a drug within the meaning of the Federal Fodd, Drug and Cosmetic Act 21 U.S.C. 321 (g), for an unapproved use, namely the treatment of rheumatoid arthritis, which drug was misbranded within the meaning of 21 U.S.C. 352 (f)(1), in that Vioxx's labeling lacked adequate direction for use; All in violation of 21 U.S.C. subsections 331(a), 333(a)(1), and 352 (f) (1). Plaintiff believes that this document presents material facts to this case and its contents are not in dispute, as they were plead guilty to by Defendant Merck..

- Plaintiff Exhibit G. Plaintiff's Medical Record, March 28, 2002, consists of a report signed by Dr. Ronald J. Faille. This document was obtained by Defendant Merck subsequent to authorization by Plaintiff following his filing of the PPF report. The significance of this document is that it supports the diagnosis of rheumatoid arthritis in the section Past Medical History is also significant for rheumatoid arthritis... . It is believed that the fact that rheumatoid arthritis is present and gives support to a later conclusion of the diagnosis for

7

rheumatoid arthritis contained in Dr Blavatsy's Declaration in paragraph 12, and therefore Plaintiff believes this Material Fact is not in dispute.

- Plaintiff Exhibit O. This document consists of the IND 46-894/7 application for expedited review of Defendant Merck's drug Vioxx for the purposes of adding the use of rheumatoid arthritis and Peri Operative Analgesia, hated April 20, 2001, which Plaintiff believes presents Material facts which are not in dispute.

- Plaintiff Exhibit P This document was authored by Alan S. Nies M.D., Clinical Sciences, Merck Research Laboratories,, MRK-ABC0024673, and at chart 22 it specifies changes in the recommended dosage of Vioxx for both OA and RA and that is 12.5mg for Chronic Pain and 25 mg for Acute Pain. This summary is believed to have been produced after the Vigor tests were completed in or about March 2000, and may have been presented to the FDA as early as March 27, 2000, but they were certainly presented for inclusion in the label change that was release in or about April 2002. Plaintiff believes this material fact of the dosage change is not in dispute

- Plaintiff Exhibit T. This consists of the Draft label submitted to the FDA by Merck for the NDA 21-046 application and was obtained from the MDL database as MRK-AAFOOO2011 through MRK-AAF0002029, 20 pages in total, and page 7 , on lines 228 to236 the Indications and usage that were approved are given as follows: 1) For relief of signs and symptoms of osteoarthritis. 2) For the short-term management of acute pain in adults. 3) For the management of primary dysmenorrhea. Plaintiff believes this label is a material fact and believes this is not in dispute.

- Plaintiff Exhibit V. Consists of a document Vioxx: A Scientific Review, by Edward M. Scolnick, M.D.and employye of Defendant Merck who heads Defendant's Merck Research Labs, and who played a very great part in showing that Merck had actually merged Scientific rResearch into a Marketing Tool and thereby reveals how inseparable the goals of marketing became the goals of its research department, but that is a Material Fact is shown on page 4 paragraph 4 with the statement " Merck was competing well and gaining market share… ", and this is a material fact that is not in dispute.

- Plaintiff Exhibit W. Consists of a document relating to Plaintiff's medical history obtained by Defendant Merck in consequence of obtaining Plaintiff's signining release to do so subsequent to his filing of the PPF, from Dr. Carl, and it is his referral to the Department of Rheumatology for further evaluation . Plaintiff believes this is a material fact and it is not in dispute.

- Plaintiff Exhibit AA. Consists of a research paper studying spinal fusions and illustrating that the success rate when no NSAIDS were used was between 74% to 82%, but fell to 44% to 37% when NSAIDs were given. The author of this study was Deguchi M. and the article was published in the Joint Spinal Disord in 1998 Dec; 11 (6): 459-64. Plaintiff believes this document was available to Dr. Blavatsky to review at the time he was formulating his opinions and is a material fact that is not in dispute.

8

- Plaintiff Exhibit BB  This exhibit consists of and Abstract and the full research paper titled " The effect of nonsteroidal ant-inflammatory agents on spinal fusion. Published in the medical journal Orthopedisc, 2005 March, authored by Thaller J et al. This research paper appears to have been available to Dr. Blavatsky to consider when he was forming his opinion that Vioxx could not have cause injury tp Plaintiff, but he did not give it any consideration, and that the lack of professionalism on the part of an Expert Witness is a material Fact in this case and Plaintiff believes this is not in dispute.

- Plaintiff Exhibit CC. This is a document which has been reported to have been sent to a medical Journal as a letter in response to comments published in that journal relating to the Deguchi Study (see, Plaintiff Exhibit AA) was allegedly authored by Dr. Scott S. Reuben and in his response he acknowledges a Dr. Matsumura opinion regarding the study and further states that is would be unethical to test any NSAID in such surgery for 3 months, and that is why he limited his studies to 5 days.   Plaintiff has not been able to speak with Dr. Scott S. Reuben and would have even more trouble relying on what he might now say in this proceeding, but a a refrance to his spinal fusion studies, it should have been given some consideration by Dr. Blavatsky whose professionalism is a material fact in this case and is a fact not in dispute.

- Plaintiff Exhibit EE. This document consists of the  response to media inquiries and is dated 4/11/02 and was obtained from the MDL database as document MRK-ADSoooo216 to MRK-ADS0000233, and it in part states "... a new use of Vioxx 25mg in adult rheumatoid arthritis". This announcement illustrates that Defendant Merck acknowledges tha rheumatoid arthritis was a new use as of on or about April 2002. Plalaintiff believes this is a material fact not in dispute.

- Plaintiff Exhibit FF.   Consists of the label approved in or about April 2002 where on page 11 under the title Indications and usage rheumatoid arthritis appears for the first time, but post operative surgery, post orthopedic surgery, spinal fusion surgery, fracture healing still are not approved uses of Vioxx and Plaintiff believes these are material facts not in dispute.

- Plaintiff Exhibit GG. .   Consists of MK-0966 E-20 Page , General Safety Overview, 1.2.4 Other Studies-Rheumatoid Arthritis ... (3) rheumatoid arthritis will be filed as a new application at a later date. The material fact that rheumatoid arthritis was withdrawn from the NDA 21-046 application on 26 October 1998 and therefore was not an approved use when the label was approved in or about April 1999 is a fact that is not in dispute

- Plaintiff Exhibit HH. This document was supplied to Plaintiff as Exhibit C attached to the Dr. Blavatsky Declaration  and elsewhere identified as "Reuben et al." in Defendant's Motion for summary Judgment Against Plaintiff and it features the rrticle, "High dose nonsteroidal anti-inflammatory drugs compromise spinal fusion."  This article is one of many articles that Dr. Reuben produced and presented in authoritative medical journals , but are now totally discredited because they contain false data, the author has been permanently debarred by the FDA a,d his name appears on the persons  to be excluded list published by the Office of The Inspecyor General  which is maintained so that Corporat Integrity Agreement governing

9

Defendant Merck's Probation can be carefully checked by Defendant before employing consultants or researchers so as they do not stray in the course of business, and Plaintiff believes that this material fact is not in dispute.

## **CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing:

## **PLAINTIFF DENNIS R. HARRISON'S LR56.2 STATEMENT REGARDING DEFENDANT'S MATERIAL FACTS**

has been served on Defense Liaison Counsel (DLC) Dorothy H. Wimberley by electronic email/PDF attachment, Emily Pistille of Merck by electronic email/PDF attachment, and Doug Marvin of Merck by electronic email/PDF attachment also on this 9th day of October, 2013.

Further I hereby note utilizing the same electronic email/PDF method for the Plaintiff Steering Committee PSC-I Russ Herman and Leonard Davis, and Plaintiff Steering Committee PSC-II Ann B. Oldfather and Megan Hastings, also on this 9th day of October, 2013.

I have also sent the above and the foregoing to the Clerk of Court of the United States District Court for the Eastern District of Louisiana via the same electronic email/PDF method and hard copy, also on this 9th day of October, 2013.

Respectfully submitted,

/s/Dennis R. Harrison
Dennis R. Harrison
Plaintiff
601 W. Brown Street
Iron Mountain, MI 49801
Phone: Cell 906-221-5906
badbonehealing@gmail.com

11