UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Vioxx | * | MDL Docket No. 1657 |
| PRODUCT LIABILITY LITIGATION | * | SECTION L |
| This Document relates to: | * | HONORABLE JUDGE FALLON |
| Dennis Harrison Pro Se 2:07-cv-00905-EEF-DEK | * | MAGISTRATE JUDGE KNOWLES |

**PLAINTIFF'S MOTION IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - THE MOVING PARTY MUST FOLLOW THE FEDERAL RULES OF CIVIL PROCEDURE FOR SUMMARY JUDGMENT, RULE 56, AND DEFENDANT MERCK HAS FAILED TO DO SO**

a. **IDENTIFYING EACH CLAIM OR DEFENSE.** Defendant Merck, the movant, must state its defense that its product is safe. The normal standard of safety is by document approved by the FDA which would state the approved use, and then Movant would only be obliged to show that the use for which the product was used was approved or that the non-approved use was not prescribed by the movant, Defendant Merck. However, the movant has chosen to declare that its product was safe by means of expert witness declaration which Plaintiff now challenges. See, Defendant's statement of Material Facts Not In Dispute, paragraphs 75 & 76 which is also **Plaintiff's Ex. WW**, Defendant has claimed that the CRUX of Plaintiff's Allegations is the injury to plaintiff's femur while overlooking the failure of Plaintiff's Spinal Fusion injury entirely, and Plaintiff has presented that issue through Dr. Wise, and plaintiff's Allegations and his Amended complaint; and, the Defendant has called issue to Statute of Limitations which has been answered by Plaintiff by amending the original complaint so that Defendant can know that that issue is a real issue that it should investigate and defend, and by doing so clearly the

2

NYS statutory limit based on Fraud is 6 to 8 years and plaintiff's filing qualifies because it was filed under the 6 year rule, and needs to argue it no further.

b. **TIME TO FILE A MOTION.** The non-movant, Plaintiff, is not herein challenging this issue.

c. **PROCEDURES**:

   (1) A party asserting that a fact cannot be or is genuinely disputed <u>must</u> assert the assertion by:

   (A) citing particular(s).... <u>(by) declarations</u>, admissions, or other materials; or

   (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

   (2) <u>Objection That a Fact Is Not Supported by Admissible Evidence</u>. A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.

   (3) Materials Not Cited The Court may consider only cited materials, but it may consider other materials in the record.

   (4) Declarations and Affidavits.

The movant, Defendant Merck, has failed to follow FRCP 56(c)(1) (A)&(B). The approval or disapproval of a drug entering interstate commerce <u>must</u> be approved for the use it is intended for by the FDA. This requirement has been thrown into dispute by the mere issuance of the FDA Warning letter issued September 17, 2001, see **Plaintiff's Exhibit A**, and that the warning is a significant fact in that the Department of Justice (DOJ) opened an investigation, see **Plaintiff Exhibit B,** and that the investigation led to an Information, see **Plaintiff Exhibit C,** to which Defendant Plead Guilty to the charge that Defendant Merck did promote the use of Vioxx for the unapproved use for the treatment of rheumatoid arthritis; and Defendant Merck is subject to a plea agreement that prohibits Defendant from asserting that it did not promote the off-label use of Vioxx for treatment of rheumatoid arthritis, as that would be a

3

false statement, so instead, Defendant Merck is offering evidence that using Vioxx in Post-Orthopedic Surgery is safe, even thought that also is an unapproved use, and it failed to gain approval for that application in its original application filed on or about November 23, 1998 at NDA 21-042, as evidenced by its non-inclusion in the 1999 label, see **Plaintiffs Exhibit T**, or in a subsequent application filed on or about April 2001, see **Plaintiff's Exhibit O**, which specifically referred to "Background Package- PeriOperative Analgesia" on Form FDA 1571 (10/99) and by its non-inclusion in the 2002 label, see **Plaintiff's Exhibits EE and FF**.

For this to be relevant and significant in the case at hand, the non-movant, has called attention to Plaintiff's diagnosis of having rheumatoid arthritis by quoting from the declaration made by defendant's expert witness which did assert that plaintiff suffered from rheumatoid arthritis and also that diagnosis is stated in Plaintiff's Ex. **F and G** and thereby it is a proved and undisputed material fact that the non-movant has rheumatoid arthritis.

That Plaintiff's diagnosis for rheumatoid is relevant is also supported by the statements made by Dr. Carl who examined Plaintiff just after his spinal fusion collapse by a letter referring him for diagnosis of rheumatoid arthritis, see **Plaintiff's Exhibit W**.

It is also not possible for the movant to assert that the intended use of Vioxx was either not promoted by Defendant, nor that such promotion was for an approved use for treatment of rheumatoid arthritis, nor that the intended use of promoting Vioxx for treatment of rheumatoid arthritis played no significant role in injuring Plaintiff based on the specific need to investigate his full diagnosis of rheumatoid arthritis as part of the surgeons investigation of the cause of the collapse of Plaintiff's Spinal Fusion which at the time of the surgeon's

investigation for corrective surgery he took on the investigation of possible causes and at that time the scientific information relating to treatment of rheumatoid arthritis, see **Plaintiffs Exhibit W**, was not contained in the FDA approved label, see **Plaintiff's Exhibit T**, because even the treatment of rheumatoid arthritis had not been approved at that time because its consideration had been withdraw from consideration in the initial NDA 21-046 application, see **Plaintiff's Exhibit GG**, even though the scientific studies at the time, see **Plaintiff's Exhibits P and V** page 2 and 5, showed that for chronic use for rheumatoid arthritis the dosage should have been no more than 12.5mg,these facts had not been disclosed even though it could have been disclosed by a public statement of warning which the Defendant was obliged to issue by law, see memorandum of law; because Defendant has plead guilty to that charge, see **Plaintiff's Ex. C**, and may be restricted by its plead agreement with DOJ as it is on probation until on or about March of 2017, and that presumption is one that can only be overcome by a formal letter from the probation department, and that has not been offered by Defendant.

Plaintiff also argues that as the Perioperative use of Vioxx was submitted in the IND 46-897 as Background, see **Plaintiff's Exhibit O**, and as Plaintiff's searches of the MDA database using PeriOperative and Analgesia and Reuben in a variety of combinations was unsuccessful, or not available to be searched for the previous two weeks as the database has been closed to Plaintiff at a critical time leading to filing this very document, that Plaintiff's presumption is that as Defendant was under formal investigation after at least February 24, 2006 by the Department of Justice, see **Plaintiff's Exhibit B**, at a time prior to Defendant Merck's massive download of documents into the MDL database, this document referred to as Background Package – PeriOperative Analgesia which may directly tie Dr. Reuben's research

papers to that very application and thereby support the argument that those papers did not lend enough support to Defendant's applied for and rejected use for Post-Orthopedic Surgery, and the additional fact that such study has been discredited, has possibly been misplaced by Defendant Merck, and therefore and thereby presents an issue of material fact that Plaintiff will require more time to investigate and that Defendant can, possibly explain and then produce the Background Package PeriOperative Analgesia to clear up that issue, if it desires to do so, but at this point it should be considered as FRCP 56 (d) addresses as "When FACTS Are Unavailable To The nonmovant,... the court may: (1), (2), or (3).

The movant, Defendant Merck, has failed to overcome FRCP 56(c)(2). <u>Objection That a Fact Is Not Supported by Admissible Evidence.</u> Although Defendant Merck paid a great deal of attention to PTO58 with regards to Expert Witness, the movant, Defendant Merck paid no heed to the fact that it is the application of and use of Expert Witness testimony or declaration which actually causes the need for an expert witness in the first place. In this case the movant, Defendant Merck, presented information based on and contained in Dr. Blavatsky's Declaration, See Blavatsky Declaration **Ex. C**, and Defendant Merck's Statement of Material Facts Not in Dispute, **Plaintiff Ex. WW** at paragraph 75 to attest to the issue that Vioxx was safe to use in Spinal Fusion Surgery. Plaintiff Challenges and Objects to That Fact Because it is Not Supported by Admissible Evidence, because the very support for Blavatsky's conclusion is based on the research papers authored by Dr. Scott S. Reuben and have been called into question by the following supporting documents listed by their Plaintiff's Exhibit numbers, as follows:

    **P. Ex. D.** A list of articles based on "fabricated data", authored by Dr Scott S. Reuben that have been retracted;

    **P. Ex. J.** Medical Journal discusses "Massive Fraud" of Dr. Scott S. Reuben;

6

**P. Ex. K.** New York Times article "Doctor's Pain Studies Were Fabricated, Hospital Says", regarding Dr. Scott S. Reuben and Baystate Medical Center;

**P. Ex. L.** FDA announcement of Dr Scott s. Reuben's Debarment Order, dated 11/16/2011;

**P. Ex. M.** FDA Notice of Initiation Of Disqualification Proceedings, dated 3/17/10 sent to Dr. Scott S. Reuben

**P. Ex. N.** United States Inspector General Denies Dr. Scott S. Reuben's appeal;

Plaintiff now raises this issue that if Dr. Blavatsky, had he done due diligence with regards to Dr. Scott S. Reuben, the author he relied on, he would have discovered these documents, any one of which would have alerted him to the fact, that he should not base any opinions of his opinions on Dr. Scott S. Reuben's research, but of course, Dr. Scott S. Reuben's guilty plea for criminal felony pertaining to falsified data really puts the icing on that cake, but as he is not a party in this dispute, why drag his name through the mud, when we have Dr. Blavatsky, Defendant Merck's declarant to blame.

Plaintiff argues that the article Declarant presented to the Defendant, or Defendant's Counsel presented to the Declarant, Dr. Blavatsky, is inadmissible evidence, because the author had plead guilty to falsely creating the data that is contained in the article, and the FDA has Disbarred him, and that these facts were all published in appropriate medical journals and in the New York Times, and should have been known to Declarant and should have been known by Defendant's counsel and should have been known to Defendant Merck, the moving party in this preceding. See, Blavatsky Declaration, page 2 Paragraph 8, and **Exhibit C,** and which he used as follows:

7

Plaintiff argues that the article Declarant presented to the Defendant, or Defendant's Counsel presented to the Declarant, Dr. Blavatsky, is inadmissible evidence, because the author had plead guilty to falsely creating the data that is contained in the article, and the FDA has Disbarred him, and that these facts were all published in appropriate medical journals and in the New York Times, and should have been known to Declarant and should have been known by Defendant's counsel and should have been known to Defendant Merck, the moving party in this preceding. See, Blavatsky Declaration, page 2 Paragraph 8, and Exhibit C, and which he used as follows:

> Plaintiff now objects to Declaring Blavatsky's inclusion of Exhibit C in his Declaration because the author of that article, referred to as "Reuben et al.", has been discredited for having false data and so the very facts and conclusions contained therein are inadmissible as evidence.
>
> Plaintiff now objects to the entry into evidence of the Declaration of Blavatsky because not only did it contain inadmissible evidence, but it contained conclusions and opinions he had formed based on that false data in whole or in part, whether directly or tangentially, or by reference or elimination in considering the contributory factors, to such degree that in a 40 paragraph declaration, 20 paragraphs have been called into question because they were tainted by inadmissible evidence, and the whole declaration should be given no weight such that, Defendant Merck has not presented an adequate and acceptable expert witness.
>
> Plaintiff now objects to the inclusion in Defendant's Motion for Summary Judgment of evidence which is inadmissible. Clearly Defendant's motion hinges on the material fact of safety Plaintiff can point to item 75 in the discussion of Material facts as one material fact where "Reuben et al" entered into the material facts'.

Plaintiff now calls attention to the motioning instrument.

8

The arguments in Defendant's Motion itself that were affected by Blavatsky's conclusions that in part or in whole, whether directly or tangentially were contaminated by, reference or elimination in considering the contributory factors were as follows:

On page 5, starting from the utterance "In addition to his surgeries... and ending at the end of that paragraph on page 6; Then on page 6, paragraph 2 starting with " In connection...and then paragraph 3; Then on page 8 Paragraphs 1, 2, 3; Then on page 9 paragraph 1; Then on page 10 paragraph 2; Then on page 18 the paragraph starting with the phrase "No medical professional... " which then continues into page 19 ending with the phrase ." ... inexplicably prolonged."; and,

The entire argument on page 22, ". B.  There Is No Scientific Evidence That Vioxx Interferes with Bone Healing in Humans, and ending on page 24; all of the preceding arguments called out by specific paragraphs are contaminated by the conclusion, opinions of Dr. Blavatsky which were based on inadmissible evidence and they have contaminated the Defendant Merck's very arguments because they have been built on a foundation of false data which is inadmissible.

The Section A. General Medical History on pages 2 and 3 and paragraph 1 of page 4 were merely effected by the Declaration of Blavatsky due to Blavatsky being used merely to introduce facts but to some degree they may have to be further examined closely for contamination when Defendant they are used to support defendant's arguments elsewhere, as the were misapplied.

FRCP 56 (c)(4) *Affidavits or Declarations.* An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, <u>set out facts that would be admissible in evidence</u>, and show that the affiant or declarant is competent to testify on the matters stated.

Dr. Blavatsky, although a respected medical practioneer, by either knowingly or unknowingly using evidence that is inadmissible in evidence failed to fulfill the requirements of FRCP 56 (c)(4).

9

FRCP 56 (h) **AFFIDAVIT OR DECLARATION SUBMITTED IN BAD FAITH.** If satisfied that an affidavit or declaration under this rule is submitted in bad faith or solely for delay, the court — after notice and a reasonable time to respond — may order the submitting party to pay the other party the reasonable expenses, including attorney's fees, it incurred as a result. An offending party or attorney may also be held in contempt or subjected to other appropriate sanctions.

Plaintiff has formed the belief on prima facia examination of this document that it supports claims that the statement made in Blavatsky's Declaration on page 2, paragraph 8, which asserts in part the following: "I have reviewed the medical records and other information provided to me by counsel regarding Mr. Dennis Richard Harrison...", may entitle Plaintiff to receive reasonable expenses, and attorney's fees that Plaintiff has incurred as a result of defending a Summary motion based on inadmissible evidence of the central material fact pertaining to the case; and therefore Plaintiff asks the court to issue such an order , and to open an inquiry or any other process necessary for it to determine if an offending party or attorney may also be held in contempt or subject to other appropriate sanctions.

FRCP 56(d) **WHEN FACTS ARE UNAVAILABLE TO THE NONMOVANT.** If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:

    (1) defer considering the motion or deny it;

    (2) allow time to obtain affidavits or declarations or to take discovery; or

    (3) issue any other appropriate order.

Plaintiff now believes that because of all of the pervasive and deeply penetrating fraud in this case, he has been unable to obtain or gain knowledge of affidavits and declarations needed to assert his claim appropriately, this is a common dilemma that both Plaintiff and Defendant now share, in that neither has come forth with an expert witness, Plaintiff for reasons in part as previously stated, Defendant for reasons Plaintiff can only guess or deduce from the facts Defendant has presented, or more accurately expressed, inadmissible evidentiary issues; Plaintiff has discovered through investigation two studies which should adequately support his claim that taking Vioxx injured plaintiff and a rebuttal argument authored by Dr. Reuben, that exposes the fallacy of the studies he authored, and the impossibility that Defendant Merck will sufficiently ever overcome the presumption that taking Vioxx in Post-Orthopedic Surgery to Spinal Fusion is unsafe, will ever be overcome. The studies are herein presented as Plaintiff's Exhibits as follows:

> **Ex. AA.** Taken from Journal of Spinal Disorders, 1998 Dec; 11(6): 459-64, authored by Deguchi M, Rapoff AJ, Zdeblick TA, titled "Posterolateral fusion for isthmic spondylolisthesis in adults: analysis of fusion rate and clinical results";
>
> **EX. BB.** Taken from the Journal Orthopedic, 2005 Mar 28(3): 299-303:quiz 304-5, authored by Thaller J., Walker M, Kline AJ, Andersonn DG, titled "The effect of nonsteroidal anti-inflammatory agents on spinal fusion";
>
> **Ex CC.** A letter in response to a previous letter from a subscriber of a medical blog which Dr. Reuben penned, and in which he expressed his knowledge of the long-term negative effects of NSAIDs post-operative to Spinal Fusion and concluded that even restarting of nsaid treatment after waiting 90 days post surgery resulted in a 20% drop in the success of fusion as compared to not taking NSAIDs, and therefore as a matter of ethics, or so he stated, his tests were limited to 5 days post-operative;

It is Plaintiff's intention to send the full medical record of Plaintiff's Spinal Fusion Surgery which is consisted of the reports, studies, radiographic opinions for diagnostics and referrals and medical opinions conducted by Dr's Rand and Carl, which truly set the stage for an expert

to express his/her opinion fully, and interpret the three documents herein referred to as exhibits **AA, BB, CC.**

And since these documents and studies will go to the Courts determination of future success, and in no way, are needed to overturn the Summary Motion per se' on an issue of material fact, see, Notes Of Advisory Committee On Rulles-1963 Amendment, following Subdivision (e ), in the 5th paragraph of that discussion it states "Where the evidentiary matter in support of the motion does not establish the genuine issue, summary must be denied even if the opposing evidentiary matter is not presented.", Plaintiff believes its request should be granted, if both Plaintiff and Defendant (presumed) need for expert witness testimony should arise or for whatever other reason the court should determine to issue an order following FRCP 56 (d) (1) or (2) or (3),and or (e ) (4) and or (e)(3).

The general theory for the following resolution is that as Plaintiff has previously objected to the inadequacy of the PSC on the grounds that it has given him no due voice; now within the motion for summary judgment, and under the direct supervision of the Court, a PSC can now be formed which shall negotiate between the parties a file that can be handed to a prospective expert witness for their consideration based on his/her experience and learning which can be supplemented by the potential expert own due diligence and training, such that the Court here and now may determine based on the merits and the expert witness testimony, the validity of the arguments placed before the Court in relating to Safety and Causation of injury based on the exposure or lack of exposure to damages that based on issues stemming from Defendants lack of FDA approved uses i.e. <u>treatment of Rheumatoid Arthritis</u>, and or the use of Vioxx for <u>Post-Orthopedic Surgery use</u>; and, Defendant Merck will fund this PSC procedure and search

12

for an expert witness just as it has previously done so with regards to CV cases previously; and, or the Plaintiff and Defendant may come to a settlement conference and workout a financial settlement with the next thirty days, where the settlement offers be made in good faith fully realizing the extensive damage that any spinal injury may cause; the financial settlement offer and negotiation may only be considered for a period of two weeks, unless a continuance is applied for and agreed by both parties and thence the PSC meeting must proceed and a record of that meeting created such that it can be reviewed for the purpose of equity and a full report can be submitted of that PSC conformance to this Court; and the PCS conference and its proceedings shall be funded by Defendant Merck.

    d. **FAILING TO PROPERLY SUPPORT OR ADDRESS A FACT.** If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: In view of the fact that Defendant Merck has not obtained Expert Witness testimony based on admissible evidence with regards to a fact which it had claimed was a material fact the Court must DENY Defendant's Summary Motion, or

        (1) defer considering the motion or deny it;

        (2) allow time to obtain affidavits or declarations or to take disclosure;

        (3) issue any other appropriate order.

With regards to FRCP 56(e)(3), Plaintiff believes that when and if the Court Denies Defendant's Motion For summary Motion, that the Court may consider ordering a finding that (1) Defendant Merck has not presented any facts to suggest that Vioxx had FDA approval for treatment of rheumatoid arthritis and that is a material fact in this case; (2) A finding that Defendant Merck did present inadmissible evidence to support its defense that Vioxx was safe to use in Post-Surgical Surgery by presenting research authored by Scott S. Reuben; and, (3) A finding use both the treatment of rheumatoid arthritis and post-Orthopedic Surgery were unapproved by the FDA in this case as per the FDA approved label issued in 1999, and the

13

label issued in 2002; and order (4) that Defendant Merck has not presented an Expert Witness that is acceptable to this Court and it must now do so to comply with previous orders; (5) Plaintiff has made a sufficient showing of material facts which Plaintiff needs to present by Expert Witness and that those facts, if properly admitted, could lead to a likelihood of success and orders that Defendant Merck negotiate a reasonable procedure so that Merck can pay the expense of Plaintiff obtaining his Expert Witness as it has done for Plaintiff's through other PSCs and orders Plaintiff to submit the names, specialties and expert witness credentials within the next 30 days so that this Court can verify both Defendant's as well as Plaintiff's compliance; and or order (5) Plaintiff is entitled, see FRCP 56(h), to reimbursements, for his expenses in opposing Defendant's Motion For Summary Judgment in the amount of $25,000, without submitting details of those expense.

- (f) JUDGMENT INDEPENDENT OF THE MOTION. After giving notice and a reasonable time to respond, the court may:

    (1) grant summary judgment for a nonmovant;

    (2) grant the motion on grounds not raised by a party; or

    (3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute.

- (g) FAILING TO GRANT ALL THE REQUESTED RELIEF. If the court does not grant all the relief requested by the motion, it may enter an order stating any material fact — including an item of damages or other relief — that is not genuinely in dispute and treating the fact as established in the case.

- (h) AFFIDAVIT OR DECLARATION SUBMITTED IN BAD FAITH. If satisfied that an affidavit or declaration under this rule is submitted in bad faith or solely for delay, the court — after notice and a reasonable time to respond — may order the submitting party to pay the other party the reasonable expenses, including attorney's fees, it incurred as a result. An offending party or attorney may also be held in contempt or subjected to other appropriate sanctions.

## **CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing:

**PLAINTIFF'S MOTION IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - THE MOVING PARTY MUST FOLLOW THE FEDERAL RULES OF CIVIL PROCEDURE FOR SUMMARY JUDGMENT, RULE 56, AND DEFENDANT MERCK HAS FAILED TO DO SO**

has been served on Defense Liaison Counsel (DLC) Dorothy H. Wimberley by electronic email as PDF attachment, Emily Pistille of Merck by electronic email as PDF attachment, and Doug Marvin of Merck by electronic email as PDF attachment also on this 8th day of October, 2013.

Further I hereby note utilizing the same electronic PDF method to Plaintiff Steering Committee PSC-I Russ Herman and Leonard Davis, and Plaintiff Steering Committee PSC-II Ann B. Oldfather and Megan Hastings also on this 8th day of October, 2013. .

I have also sent the above and the foregoing to the Clerk of Court of the United States District Court for the Eastern District of Louisiana via the same electronic email/PDF method and hard copy, also on this 8th day of October, 2013.

Respectfully submitted,

/s/*Dennis R. Harrison*
Dennis R. Harrison
Plaintiff Pro Se
601 W. Brown Street
Iron Mountain, MI 49801
Phone: Cell 906-221-5906
badbonehealing@gmail.com

15