UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: Vioxx | * MDL Case No. 1657 |
| | * |
| PRODUCTS LIABILITY | * SECTION L |
| LITIGATION | * |
| | * JUDGE FALLON |
| *This document relates to* | * |
| | * MAGISTRATE JUDGE |
| *Bill Black et al. v. Merck Sharp & Dohme Corp.*, No. | * KNOWLES |
| 2:05-cv-04452-EEF-DEK | * |
| (Plaintiff Elizabeth Garner) | * |

*********************************************************************

**DEFENDANT MERCK, SHARP & DOHME'S MOTION FOR SUMMARY
JUDGMENT AND INCORPORATED MEMORANDUM OF LAW**

Plaintiff Elizabeth Garner filed her lawsuit on September 29, 2005. In connection with enrolling in the Vioxx Resolution Program on June 25, 2008, Plaintiff submitted a Claims Form and Claims Package alleging that she had suffered a myocardial infarction ("MI"), commonly referred to as a heart attack, on October 8, 2004. Because Plaintiff failed to provide any evidence that she suffered the heart attack she alleged, her claims were rejected by the Vioxx Resolution Program's Claims Administrator, and, rather than appeal to the Program's Special Master, Plaintiff elected to enter a Future Evidence Stipulation pursuant to Section 2.7.3 of the Settlement Agreement and return to Court to pursue her claim.

In section A of Plaintiff's Future Evidence Stipulation, Plaintiff again claimed a single injury—heart attack, or MI. Plaintiff also stipulated and affirmed that she would "not attempt to introduce in any court of law or tribunal any evidence contrary to, or in addition to, the allegations, facts or records that were presented to the Program's Claims

1

Administrator . . . <u>or allege an injury connected with Vioxx other than the injury or injuries [she] claimed through the Program, which is/are reflected in Section A of this Stipulation</u>." Ex. A (emphasis added).

Since exiting the Settlement Program and returning to this Court, however, Plaintiff seeks to pursue an entirely different injury than what she alleged in the Vioxx Resolution Program. Now, she claims that her injury is a deep vein thrombosis ("DVT"). Because pursuit of that claim violates the explicit terms of her Future Evidence Stipulation, and because Plaintiff has failed to adduce any evidence whatsoever in support of her allegation that she experienced an MI, or make a *prima facie* showing that Vioxx caused her any other injury, her claims must be dismissed.

## LEGAL STANDARD

Summary judgment should be entered where the record shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(b)(2). A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Judwin Props., Inc., v. U.S. Fire Ins. Co.*, 973 F.2d 432, 435 (5th Cir. 1992).

## FACTUAL BACKGROUND

I. **Brief Summary of this Litigation**

On May 20, 1999, the U.S. Food and Drug Administration approved Vioxx for sale in the United States. Vioxx remained publicly available until September 30, 2004, when Merck voluntarily withdrew it from the market after preliminary data from a

2

clinical trial known as APPROVe showed an increased incidence of heart attacks in study participants using Vioxx for eighteen months or more compared to study participants taking placebo.

On November 9, 2007, after extensive discovery, pretrial proceedings, and a number of bellwether trials, the parties announced a Master Settlement Agreement that resolved over 99 percent of Vioxx claims. The requirements of that Program were set out in the Master Settlement Agreement ("Agreement" or "MSA") (attached as Ex. B). By submitting an Enrollment Form, claimants and their enrolling counsel agreed to be bound by all of the terms and conditions of the Agreement. *See* MSA § 1.2.4. Submission of an Enrollment Form was irrevocable, and a claimant could not, other than as specifically provided for under the Agreement, withdraw an Enrollment Form, request the return of her Release or Stipulation for Dismissal With Prejudice or otherwise unilaterally exit the Program. *See* MSA § 1.2.3.

As part of the settlement process, claimants submitted to the Claims Administrator complete Claims Packages, including key pharmacy records and medical records. *See* MSA §§ 1.3.1, 1.2.2.1.

In order to be eligible for payment, claimants had to meet certain criteria regarding their alleged injury, their duration of Vioxx usage, and proximity of Vioxx usage to the injury alleged. The Claims Administrator made the initial determination as to whether the requisite gate criteria had been satisfied. *See* MSA §§ 2.1, 2.2, 2.3. If the Claims Administrator determined that a claimant did not meet the requisite gate requirements, the Gate Committee conducted an additional review. *See* MSA § 2.5. If the Gate

3

Committee also determined that a claimant was not eligible, the claimant could appeal the Gate Committee's determination to the Special Master as set forth in the MSA. *See* MSA § 2.6. The Special Master's decision on claimant eligibility was binding, final, and non-appealable. *See* MSA § 2.6.3.

Alternatively, program claimants who chose not to appeal the Gate Committee's determination of ineligibility could exit the Resolution Program and obtain return of their release and stipulation of dismissal by properly executing and delivering a Future Evidence Stipulation within thirty days of the Claims Administrator's notice to the claimant or their counsel of the notice of ineligibility. See MSA § 2.7.3. If the FES was not executed and delivered within thirty days, the MSA directed the Claims Administer to deliver such Program claimants' Stipulations for Dismissal With Prejudice and Releases to Merck. *See* MSA § 2.7.2.

**II.     Plaintiff Enrolled in the Resolution Program Alleging that Vioxx Caused Her to Experience a Myocardial Infarction, But Her Claims Were Deemed Ineligible For Lack of Evidence.**

Plaintiff elected to enroll in the Vioxx Resolution Program, and her counsel submitted a Claims Form on her behalf on June 25, 2008. In that Claims Form, Plaintiff stated that the alleged injury was a myocardial infarction that she suffered on October 8, 2004. *See* Ex. C.

On December 15, 2008, the Claims Administrator issued a Notice of Ineligibility on Plaintiff's claim based on insufficient proof for the Injury and Proximity Gates, and Plaintiff was given an opportunity to submit additional evidence. *See* Ex. D. Upon a

second review by the Gate Committee, Plaintiff's claims again were deemed ineligible on May 28, 2009 for failure to provide proof of her alleged injury. *See* Ex. E.

Rather than appeal the denial of her claim, Plaintiff elected to execute a Future Evidence Stipulation pursuant to the MSA. On June 30, 2009, she provided an executed and notarized Future Evidence Stipulation. *See* Ex. A.

In section A of Plaintiff's Future Evidence Stipulation, Plaintiff claimed a single injury—heart attack, or MI. Moreover, in the same document, Plaintiff stipulated to and affirmed the following:

> I stipulate that I will not attempt to introduce in any court of law or tribunal any evidence contrary to, or in addition to, the allegations, facts or records that were presented to the Program's Claims Administrator, as set forth in or appended to my Claims Package, <u>or allege an injury connected with Product other than the injury I claimed through the Program which is/are reflected in Section A of this Stipulation</u>.

*See id* (FES) at ¶ 6 (emphasis added). Again, MI is the only injury alleged in section A of Plaintiff's Stipulation. *Id.* Plaintiff did not identify a secondary injury. *Id.*

### III. Plaintiff Has Failed to Produce Evidence of Having Experienced a Myocardial Infarction.

At no time has Plaintiff been able to produce any *prima facie* evidence establishing that she experienced an MI. No doctor has diagnosed her with such an injury, nor does her *Lone Pine* expert conclude that Plaintiff suffered an MI.

This Court's PTO No. 43 places certain production requirements on FES claimants, including the provision of a *Lone Pine* report establishing a *prima face* showing of causation as between a plaintiff's alleged Vioxx usage and the alleged injury.

5

In an effort to satisfy that requirement, Plaintiff submitted a letter from Dr. Christopher Ingram on September 21, 2009.  Ex. F.

Dr. Ingram's letter states that Plaintiff "developed a deep vein thrombosis ("DVT") of the right lower extremity on October 8, 2004," not a myocardial infarction. Ex. F.  In addition, Dr. Ingram's letter does not state that Vioxx caused Plaintiff's DVT. Instead, noting that Plaintiff's only Vioxx prescription was issued more than two months prior to her event, Dr. Ingram indicates that this case should be revisited after there was evidence to determine whether Plaintiff had "taken Vioxx within 14 days of the acute thrombotic event in her right lower leg."  Dr. Ingram further explained "that *if the patient had taken Vioxx with closer proximity of the above acute thrombotic event*, . . . it *may* in fact be associated with the patient's Vioxx/COX-2 inhibition."

Undisputed evidence on that subject has since emerged.  Plaintiff has confirmed—both in her PFS and during her deposition—that she stopped using Vioxx well shy of the 14-day-period that Dr. Ingram identifies in his letter.  Plaintiff filled her only Vioxx prescription for 30 pills on August 4, 2004.  Ex. G.  In her PPF, Plaintiff stated that she took Vioxx once a day "continuously," in which case she would have run out of Vioxx 30 days later, on September 4, 2004.  Ex. H, at 5.  During her deposition, Plaintiff claimed that she may have forgotten to take her Vioxx on five to seven occasions but still made clear that she last ingested Vioxx in "early September," well over 14 days before her DVT.  Garner Dep. Tr. 74:2–76:3, 78:3–20 (attached as Ex. I).

6

**ARGUMENT**

**I.      PLAINTIFF IS BOUND BY HER FUTURE EVIDENCE STIPULATION.**

Plaintiff has stipulated that the only claims she will raise in this litigation concern her alleged MI.  Plaintiff, after being deemed ineligible for the Resolution Program for lack of evidence, has returned to this Court to litigate her claims pursuant to her Future Evidence Stipulation that she signed on June 25, 2009.  Pursuant to that Stipulation, Plaintiff agreed that, upon returning to this Court, her alleged claims would be strictly limited to the injury she presented for evaluation to the Resolution Program—namely, myocardial infarction.  *See* Ex. A § B.6.

As this Court is aware, the Resolution Program was designed in part to ensure that plaintiffs could not take more than "one bite at the apple."  In other words, the Program was structured so that, if a plaintiff decided to enroll in the Resolution Program and pursue resolution of his claims according to its terms, he could not later pursue a claim against Merck for entirely different injuries related to his consumption of Vioxx.  Here, during the entire time that Plaintiff's claim travelled through the various stages of the Resolution Program, MI was the only alleged injury she asserted, including in Section A of Plaintiff's Future Evidence Stipulation, where she expressly agreed not attempt to "allege an injury connected with Vioxx other than the injury or injuries [she] claimed through the Program, which is/are reflected in Section A of this Stipulation." Ex. A.

Plaintiff can proffer no evidence that she suffered an MI in October 2004 or at any other time.  No doctor, including her own Lone Pine expert, has ever determined that Plaintiff has, and Plaintiff's failure to produce *prima facie* evidence that she actually

suffered the injury she alleges warrants summary judgment. And, because Plaintiff stipulated that she would not pursue any injury other than an MI, she cannot switch horses in mid-stream and now pursue a different claim for some other injury.

## II. PLAINTIFF'S *LONE PINE* REPORT DOES NOT CONSTITUTE A *PRIMA FACIE* SHOWING OF CAUSATION WITH RESPECT TO ANY INJURY.

This Court's PTO No. 43 requires plaintiffs to provide a *Lone Pine* report establishing a *prima face* showing of causation as between the plaintiff's alleged Vioxx usage and the alleged injury. The *Lone Pine* letter that Plaintiff submitted to this Court in response to PTO 43 does not, based on the undisputed facts of this case, allow for the *possibility* of a causal connection between Vioxx and Plaintiff's DVT, much less constitute the required *prima facie* showing of causation.

Dr. Ingram's letter states that "***if*** [Plaintiff] had taken the Vioxx in closer proximity" to her DVT—a period of time that Dr. Ingram defines as within 14 days—then her use of Vioxx "***may***" have been associated with her DVT. Here, Plaintiff herself confirmed that she stopped using Vioxx more than a month prior to her DVT. *See supra* p. 6.

Moreover, even if Plaintiff had used Vioxx in closer proximity to her DVT than the evidence establishes she did, this Court has made it clear that "allow[ing] for the 'conceivable' possibility of a connection . . . . is not enough to constitute the prima facie showing of causation required in a Lone Pine report." *In re Vioxx Prods. Liab. Litig.*, MDL No. 1657, 2012 WL 3267541, at *3 (E.D. La. Aug. 8, 2012). This Court has explained that, at a minimum, plaintiffs must submit a report that says "they have a

condition, and the condition is caused by Vioxx." *Id.* (quoting May 28, 2008 Tr., Rec. Doc. 63919–5 at 109, 113) (alterations removed).  The report submitted by Plaintiff does not meet this standard.  Dr. Ingram allows for nothing more than the *possibility* of a causal association—subject to the counter-factual hypothetical that Plaintiff used Vioxx "in closer proximity" to her DVT—but he does not express the opinion that, even assuming "closer proximity," Vioxx did in fact cause the event.  Accordingly, no genuine issue of material fact remains as to whether Plaintiff is entitled to relief.

## CONCLUSION

For the foregoing reasons, Merck moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.


Dated:  October 24, 2013                              Respectfully submitted,


                                                  By: */s/ Dorothy H. Wimberly*
                                                  Phillip A. Wittmann, 13625
                                                  Dorothy H. Wimberly, 18509
                                                  STONE PIGMAN WALTHER
                                                  WITTMANN L.L.C.
                                                  546 Carondelet Street
                                                  New Orleans, Louisiana 70130
                                                  Phone: 504-581-3200
                                                  Fax:    504-581-3361

                                                  Defendants' Liaison Counsel

                                                    —and—

1141484v1

Douglas R. Marvin
Eva Petko Esber
M. Elaine Horn
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Phone: 202-434-5000
Fax:    202-434-5029

*Attorneys for Merck, Sharp & Dohme Corp.*

1141484v1

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Motion for Summary Judgment has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail, upon Liaison Counsel Ann Oldfather by e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8C, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 24th day of October, 2013.

                /s/ Dorothy H. Wimberly
                Dorothy H. Wimberly, 18509
                STONE PIGMAN WALTHER WITTMANN L.L.C.
                546 Carondelet Street
                New Orleans, Louisiana  70130
                Phone:  504-581-3200
                Fax:     504-581-3361
                dwimberly@stonepigman.com

                Defendants' Liaison Counsel

1141484v1