UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: Vioxx | * MDL Case No. 1657 |
| | * |
| PRODUCTS LIABILITY | * SECTION L |
| LITIGATION | * |
| | * JUDGE FALLON |
| *This document relates to* | * |
| | * MAGISTRATE JUDGE |
| *Bill Black et al. v. Merck Sharp & Dohme Corp.*, No. | * KNOWLES |
| 2:05-cv-04452-EEF-DEK | * |
| **(Plaintiff Lynell Major)** | * |

**************************************************************************

# DEFENDANT MERCK SHARP & DOHME CORP.'S MOTION FOR SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW

Plaintiff Lynell Major filed her lawsuit on September 29, 2005. In connection with enrolling in the Vioxx Resolution Program on June 23, 2008, Plaintiff submitted a Claims Form and Claims Package alleging that she had suffered an ischemic stroke ("IS") on June 8, 2001. Because Plaintiff failed to provide any evidence that she suffered the ischemic stroke she alleged, her claims were rejected by the Vioxx Resolution Program's Claims Administrator, and, rather than appeal to the Program's Special Master, Plaintiff elected to enter a Future Evidence Stipulation pursuant to Section 2.7.3 of the Settlement Agreement and return to Court to pursue her claim.

In section A of Plaintiff's Future Evidence Stipulation, Plaintiff again claimed a single injury—an ischemic stroke. Plaintiff also stipulated and affirmed that she would "not attempt to introduce in any court of law or tribunal any evidence contrary to, or in addition to, the allegations, facts or records that were presented to the Program's Claims Administrator . . . <u>or allege an injury connected with Vioxx other than the injury or</u>

1

injuries [she] claimed through the Program, which is/are reflected in Section A of this Stipulation." Ex. A (emphasis added).

Since exiting the Settlement Program and returning to this Court, however, Plaintiff seeks to pursue an entirely different injury than what she alleged in the Vioxx Resolution Program. Now, she claims to have suffered a deep vein thrombosis ("DVT"). Because pursuit of that claim violates the explicit terms of her Future Evidence Stipulation, and because Plaintiff has failed to adduce any evidence whatsoever in support of her allegation that she experienced an ischemic stroke, or make a *prima facie* showing that Vioxx caused her any other injury, her claims must be dismissed.

## LEGAL STANDARD

Summary judgment should be entered where the record shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(b)(2). A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Judwin Props., Inc., v. U.S. Fire Ins. Co.*, 973 F.2d 432, 435 (5th Cir. 1992).

## FACTUAL BACKGROUND

### I.  Brief Summary of this Litigation

On May 20, 1999, the U.S. Food and Drug Administration approved Vioxx for sale in the United States. Vioxx remained publicly available until September 30, 2004, when Merck voluntarily withdrew it from the market after preliminary data from a clinical trial known as APPROVe showed an increased incidence of heart attacks in study

participants using Vioxx for eighteen months or more compared to study participants taking placebo.

On November 9, 2007, after extensive discovery, pretrial proceedings, and a number of bellwether trials, the parties announced a Master Settlement Agreement that resolved over 99 percent of Vioxx claims. The requirements of that Program were set out in the Master Settlement Agreement ("Agreement" or "MSA") (attached as Ex. B). By submitting an Enrollment Form, claimants and their enrolling counsel agreed to be bound by all of the terms and conditions of the Agreement. *See* MSA § 1.2.4. Submission of an Enrollment Form was irrevocable, and a claimant could not, other than as specifically provided for under the Agreement, withdraw an Enrollment Form, request the return of her Release or Stipulation for Dismissal With Prejudice or otherwise unilaterally exit the Program. *See* MSA § 1.2.3.

As part of the settlement process, claimants submitted to the Claims Administrator complete Claims Packages, including key pharmacy records and medical records. *See* MSA §§ 1.3.1, 1.2.2.1.

In order to be eligible for payment, claimants had to meet certain criteria regarding their alleged injury, their duration of Vioxx usage, and proximity of Vioxx usage to the injury alleged. The Claims Administrator made the initial determination as to whether the requisite gate criteria had been satisfied. *See* MSA §§ 2.1, 2.2, 2.3. If the Claims Administrator determined that a claimant did not meet the requisite gate requirements, the Gate Committee conducted an additional review. *See* MSA § 2.5. If the Gate Committee also determined that a claimant was not eligible, the claimant could appeal the

Gate Committee's determination to the Special Master as set forth in the MSA. *See* MSA § 2.6. The Special Master's decision on claimant eligibility was binding, final, and non-appealable. *See* MSA § 2.6.3.

Alternatively, program claimants who chose not to appeal the Gate Committee's determination of ineligibility could exit the Resolution Program and obtain return of their release and stipulation of dismissal by properly executing and delivering a Future Evidence Stipulation within thirty days of the Claims Administrator's notice to the claimant or their counsel of the notice of ineligibility. See MSA § 2.7.3. If the FES was not executed and delivered within thirty days, the MSA directed the Claims Administer to deliver such Program claimants' Stipulations for Dismissal With Prejudice and Releases to Merck. *See* MSA § 2.7.2.

## II.     Plaintiff Enrolled in the Resolution Program Alleging that Vioxx Caused Her to Experience an Ischemic Stroke, But Her Claims Were Deemed Ineligible For Lack of Evidence.

Plaintiff elected to enroll in the Vioxx Resolution Program, and her counsel submitted a Claims Form on his behalf on June 23, 2008. In that Claims Form, Plaintiff stated that her alleged injury was an ischemic stroke that she had suffered on June 8, 2001. *See* Ex. C.

On September 4, 2009, the Claims Administrator issued a Notice of Ineligibility on Plaintiff's claim based on insufficient proof for all three Gates—Injury, Duration, and Proximity—and Plaintiff was given an opportunity to submit additional evidence. *See* Ex. D. Upon a second review by the Gate Committee, Plaintiff's claims again were deemed ineligible for failure to provide proof of her alleged injury. *See* Ex. E.

Rather than appeal the denial of her claim, Plaintiff elected to execute a Future Evidence Stipulation pursuant to the MSA. On February 18, 2010, she provided an executed and notarized Future Evidence Stipulation. *See* Ex. A.

In section A of Plaintiff's Future Evidence Stipulation, Plaintiff claimed a single injury—an ischemic stroke. Moreover, in the same document, Plaintiff stipulated to and affirmed the following:

> I stipulate that I will not attempt to introduce in any court of law or tribunal any evidence contrary to, or in addition to, the allegations, facts or records that were presented to the Program's Claims Administrator, as set forth in or appended to my Claims Package, <u>or allege an injury connected with Product other than the injury I claimed through the Program which is/are reflected in Section A of this Stipulation</u>.

*See id.* ¶ 6 (emphasis added). Again, ischemic stroke is the only injury alleged in section A of Plaintiff's Stipulation. *Id.* Plaintiff did not identify a secondary injury. *Id.*

### III. Plaintiff Has Failed to Produce Evidence of Having Experienced a Stroke.

At no time has Plaintiff been able to produce any *prima facie* evidence establishing that she experienced a stroke in June 2001. Indeed, she admits that she did not suffer a stroke in 2001. Major Dep. Tr. 163:1–2 (attached as Ex. F).

This Court's PTO No. 43 places certain production requirements on FES claimants, including the provision of a *Lone Pine* report establishing a *prima face* showing of causation as between a plaintiff's alleged Vioxx usage and the alleged injury. In an effort to satisfy that requirement, Plaintiff submitted a letter from Dr. Christopher Ingram on January 30, 2010. Ex. G.

Dr. Ingram's letter states that Plaintiff developed a deep vein thrombosis ("DVT") of the right lower extremity on June 8, 2001, not a stroke.  Ex. G.  Dr. Ingram's letter also notes that Plaintiff received a 10-day supply—20 pills to be taken twice per day—of Vioxx on April 3, 2001, more than two months prior to Plaintiff's DVT.  *Id.*  In spite of this gap in time, Dr. Ingram opines that Vioxx may have caused Plaintiff's DVT based on the presumption that, in his mind, Vioxx is "usually taken as needed for lower extremity and arthritic pain," rather than daily or as prescribed.  *Id.*  In this case, however, Plaintiff testified that she took Vioxx *exactly* as it had been prescribed—two pills per day for ten days, meaning that she took her last pill of Vioxx on April 12, 2001, approximately two months prior to Plaintiff's DVT.  Major Dep. Tr. 93:16–96:23.

## ARGUMENT

### I. PLAINTIFF IS BOUND BY HER FUTURE EVIDENCE STIPULATION.

Plaintiff has stipulated that the only claims she will raise in this litigation concern her alleged stroke.  Plaintiff, after being deemed ineligible for the Resolution Program for lack of evidence, has returned to this Court to litigate her claims pursuant to her Future Evidence Stipulation that she signed on February 10, 2010.  Pursuant to that Stipulation, Plaintiff agreed that, upon returning to this Court, her alleged claims would be strictly limited to the injury she presented for evaluation to the Resolution Program—namely, ischemic stroke.  *See* Ex. A § B.6.

As this Court is aware, the Resolution Program was designed in part to ensure that plaintiffs could not take more than "one bite at the apple."  In other words, the Program was structured so that, if a plaintiff decided to enroll in the Resolution Program and

pursue resolution of his claims according to its terms, he could not later pursue a claim against Merck for entirely different injuries related to his consumption of Vioxx.  Here, during the entire time that Plaintiff's claim travelled through the various stages of the Resolution Program, ischemic stroke was the only alleged injury she asserted, including in Section A of Plaintiff's Future Evidence Stipulation, where she expressly agreed not attempt to "allege an injury connected with Vioxx other than the injury or injuries [she] claimed through the Program, which is/are reflected in Section A of this Stipulation." Ex. A.

Plaintiff can proffer no evidence that she suffered a stroke in February 2003 or at any other time.  No doctor, including her own Lone Pine expert, has ever determined that Plaintiff has, and Plaintiff's failure to produce *prima facie* evidence that she actually suffered the injury she alleges warrants summary judgment.  And, because Plaintiff stipulated that she would not pursue any injury other than a stroke, she cannot switch horses in mid-stream and now pursue a different claim for some other injury.

## II. PLAINTIFF'S *LONE PINE* REPORT DOES NOT CONSTITUTE A *PRIMA FACIE* SHOWING OF CAUSATION WITH RESPECT TO ANY INJURY.

This Court's PTO No. 43 requires plaintiffs to provide a *Lone Pine* report establishing a *prima face* showing of causation as between the plaintiff's alleged Vioxx usage and the alleged injury.  The *Lone Pine* letter that Plaintiff submitted to this Court in response to PTO 43 does not, based on the undisputed facts of this case, constitute the required *prima facie* showing of causation.

Dr. Ingram's January 30, 2010 letter assumes, without any evidence in support, that Plaintiff used Vioxx this prescription "as needed," rather than as prescribed, which theoretically would have allowed for the possibility Plaintiff used Vioxx in closer proximity to her DVT. Any possible confusion on this subject, however, was cleared up during Plaintiff's July 21, 2011 deposition, where Plaintiff testified that she used Vioxx for ten days, as prescribed, and took her last pill on April 12, 2001, approximately two months prior to her DVT. Major Dep. Tr. 93:16–96:23. Accordingly, no genuine issue of material fact remains as to whether Plaintiff is entitled to relief.

## CONCLUSION

For the foregoing reasons, Merck moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

Dated:  October 24, 2013                    Respectfully submitted,

By: */s/ Dorothy H. Wimberly*
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana 70130
Phone: 504-581-3200
Fax:    504-581-3361

Defendants' Liaison Counsel

—and—

1141490v1

Douglas R. Marvin
Eva Petko Esber
M. Elaine Horn
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Phone: 202-434-5000
Fax:    202-434-5029

*Attorneys for Merck, Sharp & Dohme Corp.*

1141490v1

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Motion for Summary Judgment has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail, upon Liaison Counsel Ann Oldfather by e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8C, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 24th day of October, 2013.

                                                    */s/ Dorothy H. Wimberly*
                                                  Dorothy H. Wimberly, 18509
                                                  STONE PIGMAN WALTHER
                                                  WITTMANN L.L.C.
                                                  546 Carondelet Street
                                                  New Orleans, Louisiana  70130
                                                  Phone:  504-581-3200
                                                  Fax:     504-581-3361
                                                  dwimberly@stonepigman.com

                                                  Defendants' Liaison Counsel

1141490v1