UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Vioxx | * | MDL Case No. 1657 |
| | * | |
| PRODUCTS LIABILITY | * | SECTION L |
| LITIGATION | * | |
| | * | JUDGE FALLON |
| *This document relates to* | * | |
| | * | MAGISTRATE JUDGE |
| *Bill Black et al. v. Merck Sharp & Dohme Corp.*, No. | * | KNOWLES |
| 2:05-cv-04452-EEF-DEK | * | |
| (Plaintiff Lynell Major) | * | |

**********************************************************************

**DEFENDANT MERCK SHARP & DOHME CORP.'S STATEMENT OF
MATERIAL FACTS AS TO WHICH THERE IS NO DISPUTE**

Pursuant to L.R. 56.1, Defendant Merck Sharp & Dohme Corp. ("Merck"), by undersigned counsel, hereby submits the following statement of material facts as to which there is no genuine issue to accompany its Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56:

1.      On November 9, 2007, after extensive discovery, pretrial proceedings, and a number of bellwether trials, the parties announced a Master Settlement Agreement that resolved over 99 percent of Vioxx claims. The requirements of that Program were set out in the Master Settlement Agreement ("Agreement" or "MSA") (attached as Ex. B). By submitting an Enrollment Form, claimants and their enrolling counsel agreed to be bound by all of the terms and conditions of the Agreement. *See* MSA § 1.2.4. Submission of an Enrollment Form was irrevocable, and a claimant could not, other than as specifically provided for under the Agreement, withdraw an Enrollment Form, request the return of

her Release or Stipulation for Dismissal With Prejudice or otherwise unilaterally exit the Program.  *See* MSA § 1.2.3.

2. As part of the settlement process, claimants submitted to the Claims Administrator complete Claims Packages, including key pharmacy records and medical records.  *See* MSA §§ 1.3.1, 1.2.2.1.

3. In order to be eligible for payment, claimants had to meet certain criteria regarding their alleged injury, their duration of Vioxx usage, and proximity of Vioxx usage to the injury alleged.  The Claims Administrator made the initial determination as to whether the requisite gate criteria had been satisfied.  *See* MSA §§ 2.1, 2.2, 2.3.  If the Claims Administrator determined that a claimant did not meet the requisite gate requirements, the Gate Committee conducted an additional review.  *See* MSA § 2.5.  If the Gate Committee also determined that a claimant was not eligible, the claimant could appeal the Gate Committee's determination to the Special Master as set forth in the MSA.  *See* MSA § 2.6.  The Special Master's decision on claimant eligibility was binding, final, and non-appealable.  *See* MSA § 2.6.3.

4. Alternatively, program claimants who chose not to appeal the Gate Committee's determination of ineligibility could exit the Resolution Program and obtain return of their release and stipulation of dismissal by properly executing and delivering a Future Evidence Stipulation within thirty days of the Claims Administrator's notice to the claimant or their counsel of the notice of ineligibility.  See MSA § 2.7.3.  If the FES was not executed and delivered within thirty days, the MSA directed the Claims Administer to

Case 2:05-md-01657-EEF-DEK   Document 64660-1   Filed 10/24/13   Page 3 of 6

deliver such Program claimants' Stipulations for Dismissal With Prejudice and Releases to Merck.  *See* MSA § 2.7.2.

5. Plaintiff elected to enroll in the Vioxx Resolution Program, and her counsel submitted a Claims Form on his behalf on June 23, 2008.  In that Claims Form, Plaintiff stated that her alleged injury was an ischemic stroke that she had suffered on June 8, 2001.  *See* Ex. C.

6. On September 4, 2009, the Claims Administrator issued a Notice of Ineligibility on Plaintiff's claim based on insufficient proof for all three Gates—Injury, Duration, and Proximity—and Plaintiff was given an opportunity to submit additional evidence.  *See* Ex. D.  Upon a second review by the Gate Committee, Plaintiff's claims again were deemed ineligible for failure to provide proof of her alleged injury.  *See* Ex. E.

7. Rather than appeal the denial of her claim, Plaintiff elected to execute a Future Evidence Stipulation pursuant to the MSA.  On February 18, 2010, she provided an executed and notarized Future Evidence Stipulation.  *See* Ex. A.

8. In section A of Plaintiff's Future Evidence Stipulation, Plaintiff claimed a single injury—an ischemic stroke.  Moreover, in the same document, Plaintiff stipulated to and affirmed the following:

> I stipulate that I will not attempt to introduce in any court of law or tribunal any evidence contrary to, or in addition to, the allegations, facts or records that were presented to the Program's Claims Administrator, as set forth in or appended to my Claims Package, <u>or allege an injury connected with Product other than the injury I claimed through the Program which is/are reflected in Section A of this Stipulation</u>.

3

1141491v1

*See id*. ¶ 6 (emphasis added).  Again, MI is the only injury alleged in section A of Plaintiff's Stipulation.  *Id.*  Plaintiff did not identify a secondary injury.  *Id.*

9. At no time has Plaintiff been able to produce any *prima facie* evidence establishing that she experienced a stroke in June 2001.  Indeed, she admits that she did not suffer a stroke in 2001.  Major Dep. Tr. 163:1–2 (attached as Ex. F).

10. This Court's PTO No. 43 places certain production requirements on FES claimants, including the provision of a *Lone Pine* report establishing a *prima face* showing of causation as between a plaintiff's alleged Vioxx usage and the alleged injury.  In an effort to satisfy that requirement, Plaintiff submitted a letter from Dr. Christopher Ingram on January 30, 2010.  Ex. G.

11. Dr. Ingram's letter states that Plaintiff developed a deep vein thrombosis ("DVT") of the right lower extremity on June 8, 2001, not a stroke.  Ex. G.  Dr. Ingram's letter also notes that Plaintiff received a 10-day supply—20 pills to be taken twice per day—of Vioxx on April 3, 2001, more than two months prior to Plaintiff's DVT.  *Id.*  In spite of this gap in time, Dr. Ingram opines that Vioxx may have caused Plaintiff's DVT because, in his mind, Vioxx is "usually taken as needed for lower extremity and arthritic pain," rather than daily or as prescribed.  *Id.*  In this case, however, Plaintiff testified that she took Vioxx *exactly* as it had been prescribed—two pills per day for ten days, meaning that she took her last pill of Vioxx on April 12, 2001, approximately two months prior to Plaintiff's DVT.  Major Dep. Tr. 93:16–96:23.

Dated:  October 24, 2013               Respectfully submitted,


                                       By: */s/ Dorothy H. Wimberly*
                                           Phillip A. Wittmann, 13625
                                           Dorothy H. Wimberly, 18509
                                           STONE PIGMAN WALTHER
                                           WITTMANN L.L.C.
                                           546 Carondelet Street
                                           New Orleans, Louisiana 70130
                                           Phone: 504-581-3200
                                           Fax:    504-581-3361

                                           Defendants' Liaison Counsel

                                            —and—

                                            Douglas R. Marvin
                                           Eva Petko Esber
                                           M. Elaine Horn
                                           WILLIAMS & CONNOLLY LLP
                                           725 Twelfth Street, N.W.
                                           Washington, D.C. 20005
                                           Phone: 202-434-5000
                                           Fax:    202-434-5029

                                           *Attorneys for Merck Sharp & Dohme Corp.*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Statement of Material Facts As to Which There Is No Dispute has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail, upon Liaison Counsel Ann Oldfather by e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8C, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 24th day of October, 2013.

/s/ Dorothy H. Wimberly
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361
dwimberly@stonepigman.com

Defendants' Liaison Counsel

1141491v1