UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  VIOXX® | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| *This document relates to* | * | JUDGE FALLON |
| | * | |
| *Joe Levitt v. Merck & Co., Inc.* | * | MAGISTRATE JUDGE KNOWLES |
| 2:06-cv-09757-EEF-DEK | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

### SUGGESTIONS IN SUPPORT OF PLAINTIFF'S MOTION TO MODIFY SCHEDULING ORDER

Plaintiff, through her counsel of record, respectfully submits the following Suggestions in Support of Plaintiff's Motion to Modify the Scheduling Order in this case.

### BACKGROUND

On July 16, 2013 the law firm of Humphrey Farrington & McClain, P.C. (HFM) filed its Entry of Appearance in the above-captioned case.  (Rec. Doc. 64482)  At that time, discovery had already closed in Plaintiff's case and she had not yet identified or produced her expert reports which were due by June 27, 2013.

On July 19, 2013, Plaintiff filed an unopposed motion to modify the scheduling order.  (Rec. Doc. 64495).  In pertinent part, Plaintiff requested that this court amend the Scheduling Order and allow Plaintiff additional time to designate and submit written expert reports.  Plaintiff did not ask that the Court re-open discovery at this time.  The Motion was unopposed and the relevant due dates were agreed-upon by defense counsel.

Upon information and belief, Plaintiff's counsel has not received notification of a ruling from the Court via CM/ECF or LexisNexis File & Serve ("LNFS") concerning the Motion to Amend.

Over the course of the last few months, Plaintiff's counsel **has** received random notifications via File and Serve regarding some activity from the Master Case and a few affiliated cases. Upon information and belief, however, there have been **no** such notifications from the CM/ECF system. Likewise, Plaintiff's counsel has not received any LNFS notifications specific to Plaintiff's case.

Plaintiff counsel's administrative assistant has placed several calls over the last couple of months out of concern that pleadings and orders may be going unnoticed. Based on these phone calls, counsel's administrative assistant believed that the electronic notification issues had been resolved. To be clear, Plaintiff is not placing blame on any other entity for the notification difficulties. Unfortunately, there appears to be a misunderstanding and/or technical procedure that still needs to be addressed in order for counsel to receive notifications on this file.[1]

In early October of 2013 , Plaintiff's counsel again grew concerned due to the lack of notifications on any of the cases, including Ms. Levitt's. At this time, Plaintiff counsel's administrative assistant called the Court's office directly. On October 3, 2013, Plaintiff counsel's administrative assistant was informed by one of the judicial clerks that the Court had entered an Order approving Plaintiff's Motion to Modify the Scheduling Order. (Rec. Doc. 64565). A copy of the Order was emailed to plaintiff counsel's administrative assistant at 4:21 PM . (**Exhibit A**).

Pursuant to the Court's Order, Plaintiff was given until September 16, 2013 to designate and submit expert reports. (Rec. Doc. 64565). Due to the technical and administrative complications noted above, however, Plaintiff's counsel was not aware that the Court had even granted Plaintiff's Motion to Modify. As a result, Plaintiff did not file her expert reports by September 16, 2013.

---

[1] Plaintiff's counsel has read PTO 8 and believes he complied with subsection (B) around the same time he entered his appearance in this case.

On Friday, October 4, 2013, the day after learning of the missed order, Plaintiff's counsel sent an email to defense counsel notifying him of the situation. **(Exhibit B)**. Defense counsel sent a responsive email the following business day, Monday, October 7, 2013. (**Exhibit C**). Unfortunately, Plaintiff's counsel was out of the office due to personal illness for the first half of that business week. Upon his return to the office, Plaintiff's counsel sent a follow-up email to defense counsel indicating that he would prepare a Motion for Extension for Defense counsel to review. **(Exhibit D)**. Defense counsel responded that he would review the Motion. **(Exhibit E)**

Later that same day, on October 10, 2013, Plaintiff's counsel sent a draft Motion for Extension to Defense counsel for review. **(Exhibit F)**. On Friday, October 11, 2013, Defense counsel sent an email stating "Thanks for sending your proposed motion. We intend to oppose your request." **(Exhibit G)**. Defense counsel provided no other explanation for Defendant's position or alternative proposals.

Later that same day, October 11, 2013, a brief follow up email was sent by Plaintiff's counsel to inquire as to whether Defendant objected to Plaintiff's proposal in all regards. **(Exhibit H)** On Monday, October 14, 2013, Defense counsel responded:

> I'm not quite sure what you mean by "on all counts." We don't think it's appropriate to go through discovery all over again with a fact discovery deadline set early next year and deadline for you to provide expert reports in the spring. Your proposal extends well beyond the original request to which we agreed and which the court ordered -- about two months to allow you to furnish expert reports, with no reopening of discovery -- and would result in nearly a year's delay since you entered the case. We don't see any reason for such a change.

**(Exhibit I)**

In an effort to continue the dialogue, and reach a mutual agreement if possible, Plaintiff's counsel sent another email to Defense counsel reiterating the basis for the request and addressing any perceived lack of clarification, to wit:

> We have two issues. 1) I still don't understand why we aren't receiving ECF notifications. So, I didn't even realize that the Court had granted the motion. On the other end I've been touch with experts who are trying to put together reports. In one case the expert is reviewing depositions of doctors that were deposed ex parte. I don't blame Merck for that in any way. But in light of the technical and scientific nature of these claims I would be remiss if I didn't try to give my client and (sic) opportunity to re-open discovery. From a tactical perspective I understand Merck's unwillingness to agree. From a fairness perspective however I believe that the Court will strongly consider this request and hopefully grant it. I haven't been dragging my feet or anything on this. I've been ordering and reviewing records with a flurry ever since I entered my appearance. I just feel like there will be bigger issues to fight over later down the line than moving a scheduling order. Merck has had the advantage of being in this for almost 10 years. I've been on this case for 3 months.

(**Exhibit J**).

Plaintiff's counsel concluded his email by asking "Should I go ahead and file my motion or do you want to have another conversation with your client?" On Tuesday, October 15, 2013, Defense counsel sent another email which simply reiterated Merck's objection to re-opening discovery. (**Exhibit K**).

On Friday, October 18, 2013, without Plaintiff's knowledge or input, Defendant filed its own motion to modify the scheduling order.[2] Plaintiff assumes this was Defendant's attempt to "beat Plaintiff to the courthouse" as if to gain some sort of strategic advantage. (Rec. Doc. 64643). Knowing that Plaintiff's counsel was still not receiving notifications, Defense counsel forwarded

---

[2] For reasons unknown, Defendant titled its motion as a "Motion for Clarification of Expert Deadlines". (Rec. Doc. 64643).

Defendant's Motion the following Monday, October 21, 2013 at 5:13 P.M. (**Exhibit L**).[3]

Plaintiff has fulfilled her good faith obligations to try and reach an agreement prior to filing any pleadings with this Court. Unfortunately, the parties appear unable to resolve this dispute. As such, Plaintiff seeks judicial intervention and requests this Court enter an Order approving Plaintiff's Motion to Modify.

### ARGUMENT AND ANALYSIS

This Court has the discretion to grant an enlargement of time if good cause and excusable neglect exist. Fed. R. Civ. Proc. 6(b)(1)(B). In this situation, both factors are present. A scheduling order, in particular, may be modified for good cause and with the Court's consent. Fed. R. Civ. P. 16(b)(4). Likewise, reopening of discovery is permissible upon a showing of good cause. *U.S. ex rel. Pogue v. Diabetes Treatment Ctrs. Of Am.*, 576 F.Supp.2d 128, 133 (D.D.C.2008). "What constitutes good cause . . . necessarily varies with the circumstances of each case." 6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1522.2 (3d ed. 2010). Good cause can be shown, "[i]n general, if the party seeking relief can show that the deadlines cannot reasonably be met despite the party's diligence." *Id.*

Courts have considered multiple factors when determining whether to grant motions to reopen discovery. Such factors include: "(1) whether trial is imminent; (2) whether the request opposed; (3) whether the non-moving party would be prejudiced; (4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court; (5) the foreseeability

---

[3] Plaintiff directs the Court's attention to the statements made by Defense counsel in the email marked as **Exhibit L**. Defense counsel appears to have personally inquired and verified that Plaintiff's counsel was not on the recipient list for Plaintiff's case on LNFS. As noted above, Plaintiff's counsel did register with LNFS and entered his appearance as counsel of record for Plaintiff Levitt when he entered his appearance. For reasons unknown, Plaintiff's counsel was still not receiving filings for Plaintiff's case as of October 21, 2013, the date that Defendant filed its Motion for "Clarification".

of the need for additional discovery in light of the time allotted by the district court; and (6) the likelihood that the discovery will lead to relevant evidence." *Childers v. Slater*, 197 F.R.D. 185, 188 (D.D.C 2000). "Whether to . . . reopen discovery is committed to the sound discretion of the trial court." *Id.*

All of the above factors, coupled with the parameters of Fed. R. Civ. Proc. 6 and 16, support Plaintiff's Motion to Modify the Scheduling Order and to Reopen Discovery.

A.     **Plaintiff Has Acted In Good Faith And Been Diligent In Trying To Adhere To This Court's Scheduling Order**.

Since January of 2012, Plaintiff has been litigating her case on a *pro se* basis.[4] (Rec. Doc. 63618).[5] During that time, Plaintiff made contact with numerous individuals in an attempt to retain expert witnesses in this case. Unfortunately, due to her lack of financial means and legal expertise, Plaintiff was unable to retain qualified industry experts who could adequately conduct the necessary research, offer admissible opinions, and submit proper Rule 26 reports.

Though acting *pro se*, Plaintiff also attempted to engage in written discovery. In March of 2013, Defendant filed Objections and "Responses" to Interrogatories that were submitted by *Pro Se* Plaintiff Levitt. **(Exhibit M)**. Before even responding to the substance of the questions posed,

---

[4]     Plaintiff was also acting *pro se* from July of 2008 through March of 2010 because her original attorneys had to withdraw from her case as a result of Plaintiff's choice to opt out of the Master Settlement. (Rec. Doc. 15658, Order Granting Motion to Withdraw, and Rec. Doc. 37496, Notice of Entry of Appearance).

[5]     Plaintiff directs the Court to another anomaly that has further complicated Ms. Levitt's case procedurally. In looking through the docket reports on LNFS andCM/ECF, Plaintiff is unable to find a ruling from the Court granting Attorney Oldfather's Motion to Withdraw as Counsel of Record. (Rec. Doc. 63618). If no such order was entered, then for all intents and purposes, Attorney Oldfather was Plaintiff's counsel of record when discovery was exchanged, depositions were taken and the germane deadlines elapsed. Plaintiff does not know if Attorney Oldfather received notifications regarding any of these depositions or what her involvement was regarding discovery.

Defendant asserted twelve numbered paragraphs of extensive objections couched as "General Statements and Objections." *Id.*  Defendant then went on to object to every one of Plaintiff's interrogatories and refused to answer virtually all of them as well. *Id.*

Defendant will likely argue that their objections to Plaintiff's Interrogatories were well placed.  Such an argument would only prove that though Plaintiff tried to draft appropriate discovery requests on her own, she simply lacked the legal training and expertise to engage in such a technical process with Defendant's legal team of high powered pharmaceutical specialists.  On the other hand, if Defendant's objections were merely improper, boilerplate stall tactics, then the fact that Plaintiff did not know she could seek judicial intervention likewise buttresses the reality that Plaintiff lacked the legal acumen to engage in a meaningful discovery process against this Defendant.

Plaintiff also directs the Court's attention to the correspondence Plaintiff submitted to this Court over the last few years wherein she tried to explain the efforts she has undertaken in an attempt to comply with the Court's Scheduling Order. (Rec. Docs. 17717, 28143 and 64276).  To be sure, this Plaintiff did all that she could under the circumstances to try to keep her case moving and compliant with the Court's Orders.

**B.      Additional Discovery Is Needed**

Plaintiff's claims present complex issues of medicine, law and science. Some of the potential experts plaintiff's counsel has contacted have indicated that they need more time to prepare an appropriate report for a case that has been pending as long as Plaintiff's.  At least one of these potential experts has indicated that he would prefer that Plaintiff be allowed to conduct some individual discovery before a final report is required.

Discovery closed in this case on May 15, 2013. Prior to that, Defendant deposed Plaintiff and her husband/co-Plaintiff, James Levitt, their business associate, Robert Bazan, and two of Plaintiff's treating physicians, Dr. Arnold L. Katz and Dr. Frederick S. Mittleman. Dr. Katz, Plaintiff's rheumatologist who initially prescribed Vioxx to her, was actually deposed twice due to some scheduling restrictions.[6] Dr. Mittleman, Plaintiff's former psychiatrist, was actually deposed in Tucson, Arizona where he had relocated since treating Plaintiff back in Prairie Village, Kansas.

At the time that these depositions were conducted Plaintiff was still acting *pro se*. Plaintiff was not present at any of the depositions of her treating physicians. As a result, Defendants' questioning of these witnesses was conducted without any input, objections, observations or cross examination by anybody on Plaintiff's behalf.[7] Even if Plaintiff had been able to participate in the depositions, her ability to identify and object to improper questions or conduct any meaningful and admissible cross-examination is extremely limited. Likewise the expense and logistics associated with traveling to Arizona for the deposition of Dr. Middleton made this deposition cost prohibitive for Plaintiff.

As such, Plaintiff requests that she be allowed to depose the above medical witnesses, as well as any other witnesses whose deposition may be required for Plaintiff's experts' reports and/or the rightful prosecution of Plaintiff's case.

---

[6] Upon information and belief, Plaintiff did not stipulate to a second deposition of Dr. Katz and Defendant did not obtain leave of court to conduct a second deposition of Dr. Katz pursuant to Fed. R. Civ. Pro. 30(a)(2)(A)(ii).

[7] Plaintiff does not accuse Defendant of impropriety because depositions were taken without Plaintiff's presence. Plaintiff's counsel presumes that the depositions were properly noticed. In light of the difficulty Plaintiff's counsel has personally experienced regarding notifications from LNFS, however, Plaintiff's counsel has not been able to verify if Plaintiff actually received notification of all of these depositions.

C. **Defendant Will Not Be Prejudiced By This Transitional Delay.**

The dates identified in Plaintiff's proposal will not cause a significant or unreasonable impact on the judicial proceedings in this case. This case is not, nor has it ever been, set for trial. Plaintiff's counsel has only been involved in this case for three (3) months. Defense counsel has been involved in this litigation for almost ten (10) years. Likewise, Defendant's team of experts have likely been retained for years. The amount of time requested to conduct discovery and fairly prepare expert reports is not unreasonable under the circumstances.

Defendant does **not** even oppose modifying the scheduling order to extend the deadline to produce expert reports. (Rec. Doc. 64643). Though not specifically stated in any of the emails noted above, Defendant apparently objects to Plaintiff's plea to re-open discovery as prejudicial. The reality is, however, that Defendant will not be prejudiced if Plaintiff's motion is granted. Even if Defendant were to be prejudiced, keyword "if", such prejudice would pale in comparison to the injustice plaintiff will suffer if her Motion is denied.

This case has been sitting in the MDL for years. The only justification for opposing Plaintiff's request is to maintain the tactical advantage gained by conducting discovery and litigating this case against a pro se plaintiff. Defendant will not have to spend anymore money than it otherwise would have if Plaintiff had been represented by counsel throughout the course of discovery. Though Plaintiff may seek to depose witnesses who were previously deposed by Defendant, Plaintiff will not ask that admissible portions of the depositions taken by Defendant be stricken.

If discovery was still open, Plaintiff would arguably be within her rights to seek leave of Court to go back and continue these depositions. *See* Fed. R. Civ. Pro. 30. None of the depositions exceeded 7 hours. Because she was not there, Plaintiff did not ask any questions of the witnesses.

And since she took no depositions of her own, she I still well within the 10 deposition guideposts pursuant to the Federal Rules.

## CONCLUSION

Plaintiff does not lightly submit her request to re-open discovery. The magnitude and complexity of the claims, however, require additional time for Plaintiff's counsel and Plaintiff's experts to adequately prepare this case for presentation to this Court. Plaintiff's counsel has been working diligently to learn the extensive procedural and evidentiary history of this litigation. As of this filing, there are still electronic notification difficulties that remain. As of Friday, October 25, 2013, Plaintiff began receiving LNFS notifications in other Vioxx related cases.

The length of delay and impact on the judicial proceedings of this case is minimal. Plaintiff has acted in good faith in an attempt to retain experts and comply with the Court's scheduling orders. Likewise, the oversights related to electronic notifications were also excusable and plaintiff has acted in good faith to address the problem before and after the filing deadlines.

Plaintiff understands the importance of maintaining court-ordered deadlines. Her failure to identify experts thus far is not due to a lack of due diligence or merit. Likewise, her failure to conduct discovery or take depositions is also not a result of lack of diligence. In the interest of fairness, Due Process and resolving this claim on the merits, Plaintiff respectfully requests this Court to enter an Order approving the proposed Amendment to the Scheduling Order.

WHEREFORE, for the reasons set forth above, Plaintiff respectfully requests this Court to enter an Order GRANTING Plaintiff's Motion to Modify the Scheduling Order and extending the deadlines noted therein.

Respectfully submitted,

**HUMPHREY**, **FARRINGTON** & **McCLAIN, P.C.**

/s/ Daniel A. Thomas
Kenneth B. McClain           MO #32430
Daniel A. Thomas             MO #52030
221 West Lexington, Suite 400
P.O. Box 900
Independence, MO 64051
(816) 836-5050 Telephone
(816) 836-8966 Facsimile

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing **Suggestions in Support of Plaintiff's Motion to Modify Scheduling Order** has been served on Defense Counsel, Jonathan Williams, and Defendant Liaison Counsel, Dorothy H. Wimberly, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 30th day of October, 2013.

/s/ Daniel A. Thomas

| | |
|---|---|
| Kenneth B. McClain | MO #32430 |
| Daniel A. Thomas | MO #52030 |

HUMPHREY, FARRINGTON & McCLAIN, P.C.
221 West Lexington, Suite 400
P.O. Box 900
Independence, MO 64051
(816) 836-5050 Telephone
(816) 836-8966 Facsimile

**ATTORNEYS FOR PLAINTIFFS**