# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Vioxx | * | MDL Case No. 1657 |
| | * | |
| PRODUCTS LIABILITY | * | SECTION L |
| LITIGATION | * | |
| | * | JUDGE FALLON |
| *This document relates to* | * | |
| | * | MAGISTRATE JUDGE |
| *Dennis R. Harrison v. Merck Sharp & Dohme Corp.,* | * | KNOWLES |
| **2:07-cv-00905-EEF-DEK** | * | |
| | * | |

**************************************************************************

### DEFENDANT MERCK SHARP & DOHME CORP.'S REPLY IN SUPPORT
### OF ITS MOTION FOR SUMMARY JUDGMENT AND
### <u>OPPOSITION TO PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT</u>

In its Motion for Summary Judgment ("Mot. for Summ. J.") [Rec. Doc. 64510], Merck raised three separate and independently dispositive arguments as to why, as a matter of law, Mr. Harrison would be unable to carry his burden of proof at trial, and thus, why summary judgment should be granted in Merck's favor. Specifically, Merck argued that (1) there is no evidence that Mr. Harrison actually suffered the injury that he alleged in his Complaint—insufficient healing of his femur—and that he has continued to assert for the past seven years; (2) there is no scientific evidence that Vioxx interferes with an individual's bone healing; and (3) his claims are time-barred by the New York statute of limitations that applies in his case. Merck also pointed out that because Mr. Harrison had failed to designate an expert witness to support his claims, he would be unable to meet his burden of establishing medical causation at trial, and that summary judgment is warranted on that basis alone. *See* Mot. for Summ. J. at 15-16 n.11.

In his numerous pleadings filed in response to Merck's Motion for Summary Judgment,[1] Mr. Harrison essentially ignores the first and third of Merck's arguments, and apparently misunderstands the second, arguing incorrectly that it is *Merck's* burden for purposes of summary judgment to establish the safety of Vioxx for use after spinal surgery (which is not the injury alleged in his Complaint), and that it has not done so. *See, e.g.*, Rec. Doc. 64641 (Pl.'s Mot. in Opp'n) at 1, 6, 12; Rec. Doc. 64639 (Pl.'s Cross Motion to Hoist) at 11-12. Mr. Harrison also argues, contrary to established case law, that expert testimony is not required to support his claims at trial, but that in any event Merck should be required to identify and to pay for an expert

---

[1] Over the course of several weeks, Mr. Harrison submitted six discrete pleadings in response to Merck's Motion for Summary Judgment, as follows: (1) Memorandum of Law in Support of Plaintiff's Opposition to Defendant's Summary Motion Part 1 [Rec. Doc. 64640 at 1] ("Pl.'s 1st Mem. of Law"); (2) Memorandum of Law in Support of Plaintiff's Opposition to Defendant's Summary Motion Part 2 [Rec. Doc. 64640 at 53] ("Pl.'s 2d Mem. of Law"); (3) Plaintiff's Motion in Opposition to Defendant's Motion for Summary Judgment – The Moving Party Must Follow the Federal Rules of Civil Procedure for Summary Judgment, Rule 56, And Defendant Merck Has Failed To Do So [Rec. Doc. 64641] ("Pl.'s Mot. in Opp'n"); (4) Plaintiff Dennis R. Harrison's LR56.2 Statement Regarding Defendant's Material Facts [Rec. Doc. 64640-1] ("Pl.'s Opp'n to Stmt. of Undisputed Facts"); (5) Plaintiff's Cross Motion for Summary Judgment Against Defendant Merck et al. Designed To Hoist Defendant Upon Its Own Petard & Denude It Of All Defenses [Rec. Doc. 64639] ("Pl.'s Cross Motion to Hoist"); and (6) Plaintiff Dennis R. Harrison's Statement Regarding Defendant's Material Facts Includes Excerpts From Opposition Motion Exhibits and Excerpts From Plaintiff's Cross Motion For Summary Judgment [Rec. Doc. 64639-1] ("Pl.'s Stmt. of Undisputed Facts"). (For ease of reference, this Reply will refer to these pleadings by abbreviated titles and their ECF docket numbers and ECF-stamped page numbers). Though the Court, after allowing several extensions, set the final deadline for Mr. Harrison's response to Merck's motion as October 4, 2013, *see* Sept. 23, 2013 Order [Rec. Doc. 64611], the last four of these six filings were submitted on October 8, 2013. On October 22, 2013, Mr. Harrison submitted to the Court a seven-page "amendment" to his earlier summary judgment pleadings plus additional exhibits [Rec. Doc. 64666] ("Pl.'s Amendment to Opp'n"), and he advised the Court on that date that his summary judgment-related filings were then complete.

Mr. Harrison has also filed a motion seeking to amend his Complaint to include some of the same arguments that are the focus of his summary judgment pleadings, which Merck has opposed as untimely, prejudicial, futile and directly contrary to the allegations raised in his separate lawsuit against Merck relating to Fosamax. *See* Rec. Docs. 64598, 64599, 64613 ("Mot. to Amend"). The Court has not yet ruled on this motion.

1142274v1

witness to testify on his behalf, *see* Rec. Doc. 64639 (Pl.'s Cross Motion to Hoist) at 18-19; Rec. Doc. 64641(Pl.'s Mot. in Opp'n) at 11-12—an untenable request that was recently rejected by this Court in this litigation. *See Levitt v. Merck & Co., Inc.*, Case No. 06-9757, Feb. 27, 2013 Order [Rec. Doc.  64276] (denying plaintiff's request that the Court order Merck to hire an expert for plaintiff, noting that it would be "inappropriate for the Court to require Merck to assist an opposing party in preparing her case").

Rather than responding to the arguments raised in Merck's motion, Mr. Harrison instead attempts to rewrite history, putting forth brand new theories (again with no expert support) regarding the nature of his injuries and medical causation, contradicting his sworn deposition testimony, and ignoring the claims and factual assertions alleged in his own Complaint.  In doing so, Mr. Harrison also focuses largely on topics that are not relevant to his claims against Merck—in particular, the issue of the off-label promotion of Vioxx for rheumatoid arthritis, a medical condition with which Mr. Harrison has never been diagnosed (and, accordingly, not the condition for which Mr. Harrison was prescribed Vioxx by his physicians).  Mr. Harrison has also filed what he has styled as a "cross motion" for summary judgment against Merck that primarily focuses on these same irrelevant issues.

Mr. Harrison lacks any evidentiary support for his claims against Merck, and therefore cannot meet his burden of proof at trial.  It is clearly his burden to demonstrate that he suffered the injury he alleged—a burden he cannot meet because he has never produced evidence of such a diagnosis.  It is also his burden to prove that Vioxx interferes with healing of bones—another burden he cannot meet.  And, in any event, his claims are barred as a matter of law by the New York statute of limitations.  Merck respectfully requests that this Court enter summary judgment

1142274v1

in Merck's favor and dismiss Mr. Harrison's claims with prejudice.  For the same reasons, Mr.

Harrison's cross motion for summary judgment should be denied.

## ARGUMENT

I.      **There is No Evidence of "Inadequate" Healing of Mr. Harrison's Femur Fracture—the Injury Alleged in His Complaint and *Lone Pine* Report.**

For the past seven years, this lawsuit has been about the alleged failure of Mr. Harrison's

femur to heal properly following its fracture in January 2003.  That is the injury Mr. Harrison

alleged in his Complaint.  *See, e.g.*, Compl. (Ex. 1 to Mot. for Summ. J.) ¶46 ("This litigation

concerns [Mr. Harrison's] broken right leg 'femur' which did not heal correctly because of

inadequate bone repair (from the use of VIOXX) . . . .").  It is also the injury that was discussed

in the *Lone Pine* report that Mr. Harrison authored and asked his physician to sign.  *See* Ex. 25 to

Mot. for Summ. J. at 24 (referencing "lack of sufficient femur healing").  Mr. Harrison has the

burden of proof to establish that he actually suffered the injury he alleges—an essential element

of his claims against Merck.  *See, e.g., Luna v. Am. Airlines,* 676 F .Supp. 2d 192, 198-99

(S.D.N.Y. 2009).  Yet nothing in Mr. Harrison's medical records, in his *Lone Pine* report, or in

the various responses he has submitted to Merck's summary judgment motion support Mr.

Harrison's contention that he actually experienced any delayed or insufficient bone healing

following the femur fracture.

### A.      There Is No Evidence Of Inadequate Femur Healing in the Medical Records.

In its Motion for Summary Judgment, Merck argued that the voluminous medical records

collected in this case do not reflect any evidence that the healing of his femur after the 2003

fracture was inadequate or unduly prolonged, and therefore that Mr. Harrison would be unable to

carry his burden of proof at trial to establish that he actually suffered the injury he alleges.  *See*

Mot. for Summ. J. at 17-23.

4

In his responses to Merck's motion, Mr. Harrison has not pointed to any medical record reflecting any diagnosis of such an injury or, indeed, to *any* evidence supporting the insufficient healing of his femur, as he must do to avoid summary judgment.   *See, e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1987) (explaining that on a motion for summary judgment once the moving party has demonstrated an absence of evidence relating to an essential element of the nonmoving party's claim, the burden of production shifts to the nonmoving party to introduce specific facts showing there is a genuine issue for trial).  Instead, he apparently concedes Merck's argument, essentially abandoning the insufficient bone healing claims relating to his femur in favor of his new theory that Vioxx actually caused his spinal fusion surgery in 2001 to "fail," which thereupon caused him to fall in 2003, breaking his femur.  *See* Rec. Doc. 64598 (Mot. to Amend) ¶ 110.  Indeed, the word "femur" appears to be mentioned only *once* in his opposition to Merck's motion, where he suggests that Merck is somehow overly focused on the femur injury (the only injury alleged in his Complaint).  *See* Rec. Doc. 64641 (Pl.'s Mot. in Opp'n) at 1.

  **B.**  **The *Lone Pine* Report Does Not Support Plaintiff's Claims of Inadequate Femur Healing.**

As noted in Merck's motion, *see* Mot. for Summ. J. at 19-20, the *Lone Pine* report submitted by Mr. Harrison pursuant to Pretrial Order 28 also presents no evidence of the existence of the alleged femur healing injury.  Mr. Harrison authored this document, which was ultimately signed by his rheumatologist, Dr. Wise.  *See* Ex. 25 to Mot. for Summ. J.; Harrison Tr. (Ex. 6 to Mot. for Summ. J.) at 262:4-264:2.  Dr. Wise did not treat Mr. Harrison for his femur fracture and did not review any medical records relating to Mr. Harrison's treatment following the fracture.  *See* Wise Tr. (Ex. 24 to Mot. for Summ. J.) at 33:8-34:14; 24:16-25:17.  Not surprisingly, therefore, Dr. Wise did not express any opinion as to whether Mr. Harrison ***had***

*actually experienced* any insufficient bone healing in his femur.  *See* Wise Tr. at 48:17-49:6.

Instead, he acknowledged at his deposition that his understanding of Mr. Harrison's alleged

femur healing injury was based entirely on Mr. Harrison's own representations.  *Id.*  Moreover,

Dr. Wise's own treatment notes, which generally reference the history of the 2003 femur

fracture, subsequent infection and related surgeries, do not mention any lack of bone healing, and

he did not remember any specific instances when Mr. Harrison discussed any inadequate bone

healing with him.[2]  *Id.* at 49:7-50:1.

   While all inferences are to be drawn in a plaintiff's favor at the summary judgment stage,

"[]for a reasonable inference to be drawn, . . . the summary judgment record must contain some

sort of evidentiary basis to support the inference."  *Congress Square Ltd. P'ship v. Polk*, Civ.

Action No. 10–317, 2011 WL 83714, at *13 (E.D. La. Mar. 4, 2011).  Here, there is simply no

evidence whatsoever in the record of insufficient femur healing upon which any such inferences

could be reasonably drawn.  Because Mr. Harrison cannot adduce any medical evidence that he

actually experienced the femur healing injury he alleged in his Complaint and, because he has

now apparently abandoned his claim that his femur failed to heal adequately, summary judgment

should be granted in favor of Merck for failure to elicit any evidence of the injury he alleged.

## II.    Mr. Harrison's Claims are Time-Barred by New York's Three-Year Statute of Limitations.

   New York law bars Mr. Harrison's claims because his Complaint was not timely filed

under the applicable three-year statute of limitations period for product liability actions.  *See*

Mot. for Summ. J. at 24-28.  Under New York law, the statute of limitations for Mr. Harrison's

claim regarding his alleged inadequate bone healing following his femur fracture on January 9,

---

[2]    Dr. Wise also did not express any opinion about the other alleged injuries Mr. Harrison
has recently advanced, *e.g.*, the "failure" of his 2001 spinal surgery.  *See id.* at 56:12-57:4.

1142274v1

2003 began to run by February 28, 2003 at the latest, when he discovered that his femur had supposedly not healed and broke again, and therefore expired on February 28, 2006, about four months before he filed his Complaint.[3]  *See id.* at 27.  In response to Merck's argument that his claim is time-barred, Mr. Harrison states briefly that he has "answered" that issue by amending his original Complaint.  *See* Rec. Doc. 64641 (Pl.'s Mot. in Opp'n) at 1-2.  Presumably, he mistakenly believes that he can avoid the applicable three-year statute of limitations by amending his Complaint to allege fraud claims, which are typically governed by a six-year statute of limitations.  *Id.* at 2.

Setting aside the fact that Mr. Harrison's proposed amendment has not been accepted by the Court, that his motion to amend alleges an injury even older than the one alleged in his original Complaint, and that he has not properly stated a claim for fraud in either his original Complaint or his proposed amendment, New York's three-year statute of limitations continues to govern his claims, notwithstanding his allegations of fraud.  New York law is clear that "[w]here the allegations of fraud are only incidental to another cause of action, the fraud Statute of Limitations cannot be invoked."  *New York Seven-Up Bottling Co. v Dow Chem. Co.*, 466 N.Y.S.2d 478, 478 (N.Y. App. 1983).  In *New York Seven-Up Bottling Co.*, the plaintiff brought strict liability and fraud claims arising out of the failure of a styrofoam roofing insulation system manufactured by Dow Chemical.  The appellate court held that the plaintiff's strict liability claims were time-barred, and therefore that "its cause of action sounding in fraud must likewise be dismissed."  *Id.* at 480.  The court reasoned that where "the genesis of plaintiff's claim is that

---

[3]     The new alleged injuries on which Mr. Harrison has now focused his attention relating to the alleged "failure" of his spinal surgery occurred even earlier—in 2001 and 2002, according to Mr. Harrison's pleadings.  *See* Rec. Doc. 64639 (Pl.'s Cross Motion to Hoist) at 13-14.  Claims based on those injuries therefore would also be time-barred, even if they had been asserted in his original Complaint.

it was injured by a defective product," the plaintiff "cannot, by adding an allegation of *scienter*, invoke the longer period of limitations." *Id.* In other words, the six-year statute of limitations for fraud is only applicable "when there would be no injury but for the fraud." *Id.* Similarly, in *Fisher v. APP Pharms., LLC*, 783 F. Supp. 2d 424, 429 (S.D.N.Y. 2011), the plaintiff alleged personal injury tort claims stemming from his use of the blood thinner heparin, as well as related fraud claims based on the drug manufacturer's alleged failure to properly warn of heparin's side effects. The *Fisher* court held that where the plaintiff's claims were "based on an injury by a defective product," the alleged fraud perpetrated by the drug's manufacturer "consist[ing] of their failure to disclose the side effects of heparin" were "only incidental to Plaintiff's cause of action sounding in products liability," and therefore that the three-year product liability limitations period also governed the fraud claims. *Id.* at 429; *see also Fathi v. Pfizer Inc.*, 901 N.Y.S.2d 899, 899 (N.Y. Sup. Ct. 2009) (holding, in an action where plaintiff alleged injuries caused by the medication Lipitor, that "[s]ince we find that plaintiff's strict products liability action is time barred, its cause of action sounding in fraud must likewise be dismissed").

Here, the genesis of Mr. Harrison's claims is his alleged injury from his use of Vioxx, which he alleges was an unsafe medication. *See, e.g.*, Compl. ¶42. This is not a case, then where "there would be no injury but for the fraud," *New York Seven-Up Bottling*, 466 N.Y.S.2d at 478—his product liability claims stand on their own, and represent an alleged injury separate and distinct from any allegations of fraud. Where, as here, a plaintiff alleges an injury caused "first and foremost by the alleged defects in the product, . . . the additional allegation that defendant knew its product was defective does not entitle plaintiff to the longer limitations period." *St. Patrick's Home for Aged & Infirm v. Laticrete Int'l, Inc.*, 696 N.Y.S.2d 117, 121 (N.Y. App. Div. 1999). Accordingly, and as further explained in Merck's Motion for Summary

Judgment, Mr. Harrison's claims are time-barred as a matter of law because he filed his case more than three years—the applicable limitations period—after the date of his injury, and summary judgment should be granted in Merck's favor on that basis alone.

### III.   There Is No Scientific Evidence That Vioxx Causes a Person's Bones to Heal Improperly.

In its motion, Merck argued (with support from its medical expert, Dr. Blavatsky) that the scientific literature does not support a conclusion that Vioxx interferes with bone healing in humans.  Mot. for Summ. J. at 22-24.  There have been two human studies conducted that relate to this question, and neither of these two studies support Mr. Harrison's claims.  *Id.*  Merck therefore argued that based on the existing body of scientific knowledge on this topic, Mr. Harrison is unable to adduce reliable scientific support for his argument that Vioxx interfered with the healing of this femur fracture, and thus that he would be unable to meet his burden of proof at trial.  *Id.* at 24.  In response, Mr. Harrison incorrectly asserts that it is *Merck's* burden for purposes of summary judgment to conclusively establish that Vioxx does not hamper bone healing, and that Merck has not met this burden.  *See, e.g.*, Rec. Doc. 64641 (Pl.'s Mot. in Opp'n) at 1 ("Defendant Merck, the movant, must state its defense that its product is safe"); *id.* at 12 ("Defendant Merck did present inadmissible evidence to support its defense that Vioxx was safe to use in Post-Surgical Surgery"); Rec. Doc. 64639 (Pl.'s Cross Motion to Hoist) at 11-12 ("Defendant finds itself without proof of safety . . . ."); Rec. Doc. 64666-1 (Pl.'s Amendment to Opp'n) at 3 ("[Merck] must now prove the safety of Vioxx, to a standard of a preponderance of evidence . . . .").

These arguments reflect a misunderstanding regarding burdens of proof, both on a motion for summary judgment and at trial:  To prevail on his claims against Merck, it is *Mr. Harrison's* burden to establish that Vioxx was the cause of his alleged injuries.  *See, e.g., Nealy v. U.S.*

*Surgical Corp.*, 587. F. Supp. 2d 579, 583-86 (S.D.N.Y. 2009) (granting summary judgment in favor of defendant where plaintiff could not establish the requisite causation for her personal injury claims).  On a motion for summary judgment, if the burden of proof at trial rests on the non-movant, the movant (in this case, Merck) "must merely demonstrate an absence of evidentiary support in the record for the non-movant's case."[4]  *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000).

In this instance, Merck has submitted a declaration from a medical expert opining that there is no scientific evidence to support general causation, that is, no evidence that Vioxx causes broken bones to heal improperly in humans.  The burden is on Mr. Harrison to produce competent evidence supporting his claim that Vioxx *does* cause bones to heal insufficiently.

---

[4] In mistakenly arguing that Merck has failed to establish the safety of Vioxx in its motion, Mr. Harrison focuses his attention on one article cited by Merck's expert, Dr. Blavatsky, in his Rule 26(a) report, cited as "Reuben *et al.* 2005."  One of the authors of that article, Scott Reuben, M.D., apparently has recently pleaded guilty to conducting fraudulent research in other clinical trials, not related to the article cited by Dr. Blavatsky.  Mr. Harrison asserts that because Dr. Reuben has pled guilty to fraud relating to medical research, and because some of his published articles have been retracted by medical journals, the Court should not rely on Dr. Reuben's study as proof of the safety of Vioxx for bone healing.  *See, e.g.*, Rec. Doc. 64641 (Pl.'s Mot. in Opp'n) at 5-14; Rec. Doc. 64639 (Pl.'s Cross Motion to Hoist) at 14-16.

Merck's counsel was not previously aware of the accusations that Mr. Harrison has brought forth regarding the author of this article.  However, article cited by Dr. Blavatsky, which was published in the Canadian Journal of Anesthesia, has two co-authors (David Ablett and Rachael Kaye), each from different institutions, whose work product has not been impugned.  Furthermore, the Canadian Journal of Anesthesia article cited by Dr. Blavatsky has not been retracted by its journal.  *See* Pl.'s Ex. C [Rec. Doc. 64639-2] at 19-21 (2005 Canadian Journal of Anesthesia article not listed).  Indeed, it is currently available on the widely used medical research databases PubMed and Springer Link with no indication of any retraction.  *See* PubMed and Springer Link web results (dated Oct. 22, 2013), attached as Ex. A hereto.

Moreover, even if one completely ignores the Canadian Journal of Anesthesia article for purposes of this motion, the thrust of Merck's argument for summary judgment remains exactly the same:  the scientific literature addressing the issue of bone healing in relation to NSAIDs or selective Cox-2 inhibitors does not support a conclusion that Vioxx interferes with an individual's bone healing.

1142274v1

Nowhere does he do so.  Accordingly, summary judgment should be granted because Mr. Harrison cannot meet his burden of proof at trial to establish that Vioxx caused the bone healing injury he alleges.[5]

## IV. Plaintiff Cannot Avoid Summary Judgment By Rewriting History.

After largely ignoring Merck's arguments for summary judgment and abandoning the femur claims that have been the center of this case for seven years, Mr. Harrison instead asserts new theories of his injuries and medical causation relating to his 2001 spinal surgery, and he raises an assortment of irrelevant new arguments that bear no relation to his claims.  In doing so, Mr. Harrison contradicts his sworn deposition testimony and ignores the allegations set forth in his own Complaint.  These diversionary tactics cannot avoid summary judgment.

Among other digressions, Mr. Harrison's responses to Merck's motion focus heavily on the medical condition of rheumatoid arthritis and Merck's promotion of Vioxx for use in rheumatoid arthritis treatment prior to the FDA's 2002 approval of the medication for that indication.  The gist of Mr. Harrison's new arguments seems to be that he was taking Vioxx for an unapproved indication or indications, and therefore Merck is automatically liable for his alleged injuries.  *See, e.g.*, Rec. Doc. 64640 (Pl.'s 1st Mem. of Law) at 2, 57-59; Rec. Doc. 64641 (Pl.'s Mot. in Opp'n) at 2-4; Rec. Doc. 64639 (Pl.'s Cross Motion to Hoist) at 5-6, 19.

---

[5]    Summary judgment is particularly appropriate here, where Mr. Harrison has failed to produce the opinion of any medical expert who would support his claims regarding either injury or causation at trial.  Expert testimony is required for Mr. Harrison to meet his burden of proving medical causation in this case.  *See, e.g.*, *Nealy*, 587. F. Supp. 2d at 586 (granting summary judgment where personal injury plaintiff did not produce expert medical testimony demonstrating causation, and noting that "[e]xpert medical opinion evidence is usually required to show the cause of an injury or disease because the medical effect on the human system of the infliction of injuries is generally not within the sphere of the common knowledge of the lay person" (internal quotation marks omitted)); *see also In re Propulsid Prods. Liab. Litig.*, 261 F. Supp. 2d 603, 616-18 (E.D. La. 2003) (granting summary judgment where plaintiff's experts were excluded because with that exclusion, the plaintiff "lack[ed] an essential element of proof").

11

First, Mr. Harrison's new theories about off-label usage have no bearing on Merck's arguments that there is no evidence of the injury he alleges, that there is no scientific evidence that Vioxx causes such an injury, and that his claim is time-barred.

Second, Mr. Harrison's newly proffered arguments rest on a misunderstanding of the legal landscape regarding "off-label" usage and prescription medications. Although the Food, Drug and Cosmetic Act and related FDA regulations prohibit manufacturers from marketing their medications for non-FDA-approved indications, there is nothing improper about a doctor exercising his or her own medical judgment to prescribe a medication for a use not indicated in the labeling. *See, e.g., United States v. Evers*, 453 F. Supp. 1141, 1149-50 (M.D. Ala. 1978) (noting that "Congress did not intend the Food and Drug Administration to interfere with medical practice" and a "physician may, as part of the practice of medicine, lawfully prescribe a different dosage [of a prescription drug] for his patient or may otherwise vary the conditions of use from those approved in the package insert without informing or obtaining the approval of the Food and Drug Administration"), *aff'd*, 643 F.2d 1043, 1052-53 (5th Cir. 1981); *cf. Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 350-51 (2001) (similarly discussing the "off-label" use of medical devices). More importantly, Mr. Harrison has stated that he was prescribed Vioxx for treatment of his ankylosing spondylitis. Harrison Dep. Trans. at 174:3-11 (attached hereto as Ex. B). There is no evidence in the record to even suggest any alleged off-label promotion of Vioxx to Mr. Harrison's prescribing physicians for that condition.

Third, Mr. Harrison's new focus on rheumatoid arthritis is particularly perplexing in light of the fact that he has never been diagnosed with rheumatoid arthritis. Mr. Harrison was asked about rheumatoid arthritis in his deposition approximately one year ago, and gave the following sworn testimony:

Q.   Okay.  And you had mentioned rheumatoid arthritis.  Is that something that you had ever been diagnosed with?

A.   What did you say, rheumatoid?

Q.   Yes, rheumatoid arthritis.

A.   No, I've never been diagnosed with. And, in fact, a couple of times doctors tried to say it was rheumatoid arthritis but they said it doesn't look like rheumatoid.  So, you know, they actively tried to but they...

Q.   Okay.

A.   And ankylosing spondylitis wasn't – was approved by the FDA after rheumatoid and towards the end I think of Vioxx's life. So, you know, what happened in Boston and I kind of wonder if there is an issue there of criminality.

Q.   So, the rheumatoid arthritis, as far as you know, is not something that you've ever been diagnosed with?

A.   No.  They tried.

Q.   Okay.

A.   And they can't.

Harrison Dep. Trans. at 78:8-79:6 (attached hereto as Ex. B).[6]

Mr. Harrison has also indicated, in his response to Merck's LR 56.1 Statement of Material Facts, that he believes that he can deny the sworn testimony that he gave at his deposition because he has not signed the deposition transcript.  *See* Rec. Doc. 64640-1 (Pl.'s Opp'n to Stmt. Of Undisputed Facts) ¶¶5, 13, 14, 26, 33, 34, 36, 54, 67- 72.  Mr. Harrison gave this testimony under oath, he has been given a copy of the transcript for his review, and the transcript has been certified by the court reporter pursuant to Federal Rule of Civil Procedure 30(f).  Mr. Harrison's signature is not required to validate the transcript.  *See generally* Fed. R.

---

[6]      The medical records cited by Mr. Harrison to suggest that he was actually diagnosed with rheumatoid arthritis (contrary to his unequivocal deposition testimony), do not reflect any diagnosis of that condition.  *See* Harrison Exs. F and G [Rec. Doc. 64639-2 at 33-35].

1142274v1

Civ. Pr. 32.  The deposition was also videotaped pursuant to Federal Rule of Civil Procedure 30(b)(3)(A).  If there is any uncertainty about the accuracy of any portion of the deposition transcript, Merck can provide the video recording of the deposition to the Court for review.[7] Moreover, it is well established that a non-movant cannot avoid summary judgment by contradicting, without explanation, his previous sworn testimony in an attempt to manufacture a disputed material fact issue.  *Albertson v. T.J. Stevenson & Co.*, 749 F.2d 223 (5th Cir. 1984); *see also Bank Leumi Le-Israel, B.M. v. Lee*, 928 F.2d 232, 236-37 (7th Cir. 1991) ("We have consistently held that a genuine issue of material fact cannot be established by a party contradicting his own earlier statements unless there is a plausible explanation for the incongruity."); *Price v. Worldvision Enters., Inc.*, 455 F. Supp. 252, 260 (S.D.N.Y. 1978) (rejecting, on a motion for summary judgment, affidavit testimony that departs "so markedly from the prior deposition of defendants' key witness, . . . as to brand as bogus the factual issues sought to be raised").

In short, Mr. Harrison's attempts to deflect Merck's dispositive arguments and rewrite the history of this case with respect to his alleged injury, his medical conditions, his legal theories, and even his own sworn deposition testimony cannot defeat a meritorious motion for summary judgment.

---

[7]     Mr. Harrison also disputes his deposition testimony because he was not provided with Merck's deposition exhibits in advance of his deposition.  *See, e.g.*, Rec. Doc. 64640-1 (Pl.'s Opp'n to Stmt. Of Undisputed Facts) ¶5.  All of Mr. Harrison's medical records collected by Merck have been available to him throughout this litigation through Merck's records collection vendor pursuant to Pretrial Order 18B, and Merck was under no obligation to provide Mr. Harrison in advance with the specific medical records it planned to use as exhibits in his deposition.

1142274v1

**V.**     **Plaintiff's Cross Motion For Summary Judgment Should Be Denied.**

Lastly, Mr. Harrison has filed what he has styled as a "Cross Motion" for summary
judgment.  *See* Rec. Doc. 64639 (Pl.'s Cross Motion to Hoist).  On a motion for summary
judgment brought by the party who bears the burden of proof at trial (in this case, Mr. Harrison),
the movant must establish as to every element of each of his claims that there is no disputed issue
of material fact and that he is entitled to judgment as a matter of law.  *See* Fed. R. Civ. Pr. 56(a);
*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).  Rather than setting forth the undisputed
facts that he believes support each element of his claims, Mr. Harrison's purported cross motion
mainly reiterates the irrelevant points discussed at length in his other pleadings relating to off-
label promotion for rheumatoid arthritis, unrelated misconduct of a study author, and Mr.
Harrison's 2001 spinal fusion surgery.  None of these alleged facts are material to proving the
claims asserted by Mr. Harrison.  None of them establish that he personally suffered an injury
that was caused by Vioxx.

In short, Mr. Harrison's cross motion for summary judgment should be denied for the
same reasons raised in Merck's motion for summary judgment.  He has failed to present
evidence that he incurred the injury he alleges or that Vioxx even causes such an injury, and his
claims are time-barred.  *See Lloyd v. Lawrence*, 472 F.2d 313, 318 (5th Cir. 1973) ("[T]he
moving party must offer evidence sufficient to support a finding upon every element of his claim
for relief . . . . A plaintiff seeking summary judgment who has failed to produce such evidence on
one or more essential elements of his cause of action is no more 'entitled to a judgment' . . . than
is a plaintiff who has fully tried his case and who has neglected to offer evidence sufficient to
support a finding on a material issue upon which he bears the burden of proof . . . .  In either
situation there is a failure of proof." (quoting *United States v. Dibble*, 429 F.2d 598 (9th Cir.
1970))).

**CONCLUSION**

For the foregoing reasons, as well as the reasons stated in Merck's Motion for Summary Judgment, summary judgment should be granted in Merck's favor, and Plaintiff Harrison's claims dismissed with prejudice. Plaintiff Harrison's Cross Motion for Summary Judgment should also be denied.

Dated:  November 4, 2013

Respectfully submitted,

By: */s/ Dorothy H. Wimberly*
    Phillip A. Wittmann, 13625
    Dorothy H. Wimberly, 18509
    STONE PIGMAN WALTHER
    WITTMANN L.L.C.
    546 Carondelet Street
    New Orleans, Louisiana 70130
    Phone: 504-581-3200
    Fax:    504-581-3361

Defendants' Liaison Counsel

  —and—

    Douglas R. Marvin
    M. Elaine Horn
    Emily Renshaw Pistilli
    WILLIAMS & CONNOLLY LLP
    725 Twelfth Street, N.W.
    Washington, D.C. 20005
    Phone: 202-434-5000
    Fax:    202-434-5029

Attorneys for Merck Sharp & Dohme Corp.

1142274v1

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Reply In Support of Merck's Motion for Summary Judgment and Opposition to Plaintiff's Cross Motion for Summary Judgment has been served on Plaintiff Dennis Harrison by email and by Federal Express at:

> 601 W. Brown Street
> Iron Mountain, MA 49801

I also hereby certify that the above and foregoing Reply and Opposition has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail, upon Liaison Counsel Ann Oldfather by e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 4th day of November, 2013.

> /s/ Dorothy H. Wimberly
> Dorothy H. Wimberly, 18509
> STONE PIGMAN WALTHER
> WITTMANN L.L.C.
> 546 Carondelet Street
> New Orleans, Louisiana  70130
> Phone:  504-581-3200
> Fax:      504-581-3361
> dwimberly@stonepigman.com
>
> Defendants' Liaison Counsel

17

1142274v1