UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: Vioxx | * MDL Case No. 1657 |
| | * |
| PRODUCTS LIABILITY | * SECTION L |
| LITIGATION | * |
| | * JUDGE FALLON |
| *This document relates to* | * |
| | * MAGISTRATE JUDGE |
| *Jo Levitt v. Merck Sharp & Dohme Corp.*, | * KNOWLES |
| 2:06-cv-09757-EEF-DEK | * |
| | * |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### DEFENDANT MERCK SHARP & DOHME CORP.'S OPPOSITION TO PLAINTIFF'S MOTION TO MODIFY SCHEDULING ORDER

When Plaintiff's third counsel in this case entered an appearance this summer and requested an extension of time to produce an expert report, Merck did not oppose the request and this Court set the date that Plaintiff proposed for her expert report. Instead of producing an expert report on that date, Plaintiff asked Merck for another extension, without explaining why she was unable to produce on the date she herself proposed other than to say that she did not realize she was under the gun of a Court Order. This time, Plaintiff coupled her request for more time with a request to re-open discovery, despite the fact that Plaintiff was well aware of each deposition, had received proper notice, and intentionally chose not to attend the depositions. What is apparent is that Plaintiff's new Counsel—and her "potential" expert—doesn't like the testimony and wants a do-over. But, dissatisfaction with testimony is not a basis for re-opening discovery or re-taking depositions, not even when the Plaintiff was acting *pro se* at the time. *Pro se* claimants must abide by discovery cut-offs just like any other litigant, and declining to

show up for depositions cannot be an excuse for imposing on a witness—and opposing counsel—to start over again.[1]

## ARGUMENT

"It is well established that '*pro se* litigants are not exempt from compliance with the relevant rules of procedure . . . .'" *Finley v. Fla. Parish Juvenile Detention Ctr.*, Civ. A. No. 12-726, 2013 WL 4710404, at *3 (E.D. La. Aug. 30, 2013) (citations and internal quotation marks omitted); *Trahan v. Lowe's Inc.*, Civ. A. No. 01-3243, 2002 WL 1560272, at *5 (E.D. La. July 12, 2002) (plaintiff's "*pro se* status and her lack of knowledge of the law do not excuse her failure to act diligently"). This Court has already explained that, aside from its previous appointment of a Pro Se Curator, "it would be both inappropriate and unfeasible for the Court to offer further assistance to individual pro se claimants." Rec. Doc. 64276 (declining to appoint an expert to assist Ms. Levitt).

To show good cause to modify a scheduling order, the proponent must show that "deadlines cannot reasonably be met despite the diligence of the party needing the extension." *Puig v. Citibank, N.A.*, 514 F. App'x 483, 487–88 (5th Cir. 2013). *See also Rosario v. Livaditis*, 963 F.2d 1013, 1019 (7th Cir. 1992) ("A party who fails to pursue discovery in the face of a court ordered cut-off cannot plead prejudice from his own inaction."). This rule applies with equal force to *pro se* litigants. Courts within the Fifth Circuit have repeatedly denied requests for discovery extensions from *pro se* plaintiffs who were less than diligent. *Puig*, 514 F. App'x at 487–88 (affirming denial of discovery extension to plaintiffs who conducted no discovery

---

[1] Plaintiff insinuates that Merck filed its motion to beat Plaintiff to the Court's door. Merck had to file its motion because there was a Court Order in effect setting a deadline for filing defense expert reports, and Merck sought clarification of the schedule for expert reports in light of the Plaintiff's failure to submit an expert report. To be timely, Merck's motion needed to be filed prior to that deadline lapsing.

during the six-month period during which they were *pro se*); *Bilbe v. Belsom*, 530 F.3d 314, 317 (5th Cir. 2008) (affirming district court's refusal to amend scheduling order where *pro se* plaintiff "repeatedly demonstrated a lack of diligence").[2]  Plaintiff cannot meet that standard here.[3]

Plaintiff's motion claims that she "did all that she could under the circumstances to try to keep her case moving and compliant with the Court's orders." Pl. Mem. at 7.  It is unclear, however, how "circumstances" prevented Plaintiff from participating in discovery in the years since her case was filed.  Ms. Levitt was provided every opportunity to participate in discovery, but chose not to do so.  To the extent that Plaintiff's motion suggests that Plaintiff may not have known about the depositions, *see* Pl. Mem. at 8 n.7, the actual facts are to the contrary.  The record clearly demonstrates that Plaintiff received notice and understood that depositions were taking place.  For example, as to her prescriber's deposition, Plaintiff replied to the email transmitting the notice of the deposition, inquiring about the logistical details of the deposition.

---

[2]  *See also Finley*, 2013 WL 4170404, at *4 ("Plaintiff's *pro se* status did *not* excuse him from pursuing his case by engaging in discovery, filing motions to seek extensions of time, taking advantage of procedural rules or hiring an attorney during the nine months that his case was pending before he decided to retain counsel.  Any time pressure that Finley's lawyer experienced after the court granted his motion to extend the deadlines and trial date was the result of plaintiff's own actions or inaction for the nine preceding months." (citations omitted; emphasis in original)).

[3]  Although Plaintiff's counsel seems to suggest that Ms. Levitt was somehow taken advantage of or otherwise confused by the legal process, any such suggestion ignores the fact that Ms. Levitt and her husband were extremely sophisticated business persons. They jointly owned and operated a multinational manufacturing and retail business that specialized in upscale children's clothing, generating substantial revenues and annual net profits to the Levitts exceeding $1 million.  They also had other business endeavors including a large hotel in Lincoln, Nebraska.  Furthermore, Mr. Levitt was previously actively involved in running a bank and sat on its Board of Directors.

Ex. A.[4] Following her psychiatrist Dr. Mittelman's deposition, Plaintiff asked for contact information for the court reporter, noting that she "remember[ed] the Arizona Inn," the deposition location, "as delightful." Ex. C. Plaintiff's longtime employee, Robert Bazan, whom Merck deposed in January, testified that Plaintiff's husband had contacted him to discuss Mr. Bazan's upcoming deposition the week before. Ex. D.

Merck provided notice of every deposition in this case to Plaintiff, by e-mail, as she requested. For each of those depositions, Plaintiff made the decision to waive her right to attend. Four of the five depositions occurred in the Kansas City metropolitan area, near Plaintiff's home. Plaintiff never suggested that the deposition times or locations were inconvenient for her. Nor, as to the Tucson deposition, did Plaintiff make any complaints prior to the deposition or request an opportunity to participate by phone. The only action Plaintiff undertook to obtain discovery was a single set of requests that either called for information irrelevant to her case (*e.g.*, whether Merck's former CEO, Raymond Gilmartin, took a specific ethics class at Harvard), or already provided by the Case Profile Form. *See* Pl. Mem. at 6–7 & Ex. M. Plaintiff's new counsel may now regret Ms. Levitt's decisions regarding discovery, but that hindsight assessment does not warrant essentially starting the whole process over.[5]

---

[4] Plaintiff's brief contains a perplexing suggestion that the "second" day of Dr. Katz's deposition was improper. *See* Pl. Mem. at 8 n.6. Dr. Katz had scheduling restrictions that required conducting his deposition over more than one day. It did not exceed seven hours. Moreover, because the continuation of the deposition could not be scheduled within the then-existing discovery deadline, Merck filed a motion seeking to extend that deadline expressly for the purpose of continuing the Katz deposition. Merck's counsel consulted with Ms. Levitt prior to filing the motion; moreover, the motion was approved by this Court. Rec. Doc. 64333. And, when the actual continuation took place, it was learned that Ms. Levitt had contacted Dr. Katz's office to tell him that he might be deposed again and to express remorse about the burden the discovery process was placing on him. *See* Ex. B.

[5] Plaintiff's brief states that Plaintiff's absence resulted in a defense examination devoid of any "input, objection, observations or cross examination" on Plaintiff's behalf. The brief

4

Contrary to Plaintiff's assertion, Plaintiff's request will plainly prejudice Merck.  Merck will incur additional expenses in sending counsel to depositions of witnesses Merck has already deposed.  Moreover, as previously noted by this Court, extended delays are inherently prejudicial.  They result in faded memories, lost witnesses and evidence, and increased burden on the judicial system.  *See, e.g.*, PTO 24.  Plaintiff's proposed schedule would significantly delay resolution of this case; under her proposed schedule, fact discovery would not conclude until  February 2014, and expert discovery would extend to August 1, 2014.

Plaintiff advances no legitimate reasons for re-taking depositions that Plaintiff declined to attend or opening  up discovery for some other yet unidentified depositions.   Plaintiff only briefly notes that her counsel has talked with some "potential" experts who have indicated they would need more time to create a report, and that  one such potential expert "would prefer" that Plaintiff obtain additional discovery.[6]  Merck has made available to Plaintiff (and her potential experts) voluminous medical records Merck collected at its expense during this case, including

---

also notes that even if Ms. Levitt had attended, "her ability to identify and object to improper questions" was extremely limited.  Pl. Mem. at 8.  These hypothetical concerns are significantly overstated.  Under the relevant Federal Rules and this Court's PTO 9 (Amended), the ability to inject oneself into another's examination has been significantly curtailed.  While one can make objections to form, no other commentary is proper.  Moreover, everything other than basic form objections is preserved and can be asserted later.  *See id.* § II.I, at 6–7.

[6] The repeated vague references to "potential" experts are quite striking.  Although Plaintiff's counsel has presumably been searching for experts at least since July, when the first request for an extension was made, it would appear that none have yet been retained.  An absence of actual retained experts strongly supports the idea that this request for additional time for unrestricted discovery is a fishing expedition.

Moreover, other than to say that she wants to depose the witnesses whose depositions have already been taken, Plaintiff does not identify any other witness that she wants to depose.  Instead,  she seeks to depose "any other witnesses whose deposition may be required for . . . the rightful Prosecution of Plaintiff's case."  Pl. Mem. at 8.  The inability to identify additional witnesses belies any suggestion that the case has been moving diligently forward over the last several months.

5

the records related to Plaintiff's alleged injuries, along with information required by the Merck Case Profile Form.  In short, without any legitimate reason to re-take depositions that have already been taken or to re-open discovery to allow depositions of some unnamed witnesses, discovery should remain closed and a date by which Plaintiff must submit an expert report should be set so that this case can move toward some resolution.  In this instance, as in *Robinson v. Babin*, "[a]ny prejudice caused by the Court's refusal to extend the discovery deadline . . . is a product of Plaintiff's own making." Civ. A. No. 12-629-BAJ-RLB, 2013 WL 4499111, at *3 (M.D. La. Aug. 4, 2013).

## CONCLUSION

For the foregoing reasons, this Court should deny Plaintiff's motion, other than providing another additional (limited) opportunity to produce an expert report.   Specifically, Merck requests an order that adopts the dates in Merck's Motion for Clarification of Expert Deadlines.

Dated:  November 13, 2013

Respectfully submitted,

By: */s/ Dorothy H. Wimberly*
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana 70130
Phone: 504-581-3200
Fax:    504-581-3361

Defendants' Liaison Counsel

—and—

1143204v1

Douglas R. Marvin
M. Elaine Horn
Jonathan L. Williams
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Phone: 202-434-5000
Fax:    202-434-5029

Attorneys for Merck Sharp & Dohme Corp.

1143204v1

Case 2:05-md-01657-EEF-DEK   Document 64685   Filed 11/13/13   Page 8 of 8

**CERTIFICATE OF SERVICE**

      I hereby certify that the above and foregoing Opposition to Plaintiff's Motion to Modify Scheduling Order has been served on Liaison Counsel Russ Herman, Ann B. Oldfather, and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8(B), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 13th day of November, 2013.

                                                       */s/ Dorothy H. Wimberly*
                                                       Dorothy H. Wimberly, 18509
                                                       STONE PIGMAN WALTHER
                                                       WITTMANN L.L.C.
                                                       546 Carondelet Street
                                                       New Orleans, Louisiana  70130
                                                       Phone:  504-581-3200
                                                       Fax:     504-581-3361
                                                       dwimberly@stonepigman.com

                                                       Defendants' Liaison Counsel

8

1143204v1