## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

|  |  |
|---|---|
| In re:  VIOXX PRODUCTS LIABILITY LITIGATION | MDL NO. 1657 |
| | SECTION: L |
| THIS DOCUMENT RELATES TO: | JUDGE FALLON |
| SHERRILL HERKE, individually and on behalf of a proposed class of those similarly situated, Plaintiffs, | No. 2:09-cv-07218 |
| | Hearing Date:    December 13, 2013 |
| v. | Time:               8:30 a.m. |
| MERCK & CO., INC., Defendant. | |

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF VIOXX CONSUMER CLASS SETTLEMENT

Commencing in or about 2004, purchasers of Merck's prescription pain reliever Vioxx began consumer Class actions, in federal and state courts, to recover their out-of-pocket costs for the drug in the wake of its removal from the market.  At first, Merck provided refunds; this program was discontinued and many Vioxx consumers went unreimbursed.  Over the years, efforts at prosecuting consumer Class actions coalesced in these federal MDL proceedings, coordinated with similar state court proceedings in New Jersey and California.  The tale of the Vioxx litigation has been told many times in the decisions of this Court.[1]  Now, the story of the consumer claims comes to a positive resolution, and, with the requested final approval, a happy ending.

---

[1] *See, e.g., In re Vioxx Prods. Liab. Litig.*, (*Poole v. Eichholz Law Firm, P.C.*), 2013 U.S. Dist. LEXIS 133462 (E.D. La. 2013); *In re Vioxx Prods. Liab. Litig.*, 874 F. Supp. 2d 599 (E.D. La. 2012); 843 F. Supp. 2d 654 (E.D. La. 2012); 802 F. Supp. 2d 740 (E.D. La. 2011); 650 F. Supp. 2d 549 (E.D. La. 2010); 574 F. Supp. 2d 606 (E.D. La. 2008); 501 F. Supp. 2d 776 (E.D. La. 2007).  These are just a few of dozens of significant procedural and substantive decisions in the Vioxx MDL No. 1657 proceedings.

More than eight years of hard-fought litigation regarding the prescription pain reliever Vioxx—including the negotiation of various settlements to resolve personal injury and other claims stemming from Merck's decision to withdraw the drug from the market—have culminated in the parties' agreement to settle a Class action brought on behalf of Vioxx purchasers nationwide who allege economic loss as a result of Merck's alleged misrepresentations regarding the risks of the drug.[2]

Under the terms of the Class settlement, Merck has agreed to pay up to $23 million into a common fund to resolve claims made for out-of-pocket expenditures by members of the settlement Class, and certain other payment obligations, such as costs of notice and claims administration.

In summary, each Class member who qualifies for payment may obtain recovery of either:  (1) his/her out-of- pocket expenditures for the purchase of Vioxx for personal or family use, and up to seventy-five dollars ($75.00) for his/her other out-of-pocket costs and losses in connection with a post-withdrawal medical consultation related to Vioxx use as defined in the Settlement Agreement; or (2) a one-time payment of up to fifty dollars ($50.00) with proof of Vioxx prescription.  In addition, the common fund will pay, subject to the $23 million aggregate, all costs of Class notice and settlement administration and Court-awarded attorneys' fees and expenses.   This settlement—reached as a result of substantial, informed, arms-length negotiations between the parties—fairly and adequately resolves the claims alleged against Merck by Vioxx purchasers nationwide.

---

[2] The Settlement, as described in the settlement agreement, preliminary approval order, class notice, and other documents posted on the official settlement website, www.voxxsettlement.com, does not include any consumer who purchased Vioxx for personal or family use before October 1, 2004 while living in Missouri.

Pre-eminent notice expert/notice provider Kinsella Media was authorized and directed to implement a comprehensive Class notice program, providing settlement, claim, opt-out and objection information to potential Class members around the country, advising them of key terms of the settlement, Class members' rights and options, deadlines for claims, exclusions, and objections, and the date, time and place of the final approval hearing.  Thousands have indicated interest and commenced the claims process, while only three have opted-out, and only three have expressed any criticism of the settlement.[3]  The settlement has won the overwhelming support of the Class, and the Settlement Administrator, Brown Greer, has begun the work of amassing claims for reimbursement.

Accordingly, Vioxx consumer Class representative plaintiff Sherill Herke, on behalf of herself and the Class, hereby moves for final approval, to be heard on December 13, 2013 at 8:30 a.m. in the Courtroom of the Hon. Eldon E. Fallon, and requests that the Court confirm the certification, under Rule 23(a)(1)-(4), 23(b)(3), and 23(e), of the Class for settlement purposes, and grant final approval to the Class Settlement.

## BACKGROUND

### A.    The Vioxx Litigation

Merck voluntarily withdrew Vioxx from the market in September 2004 after interim data from a placebo-controlled clinical trial showed a statistically significantly higher rate of heart attacks in the Vioxx arm of the study after 18 months of continuous use.  *See Dier v. Merck & Co.*, 388 Fed. Appx. 391, 393 (5th Cir. 2010).  Substantial litigation followed, leading to the establishment of a multidistrict litigation ("MDL") proceeding in this Court.  The proceeding ultimately included tens of thousands of cases.  While most sounded in personal injury, the MDL

---

[3] As will be discussed below, although 3 writings have been generated by the Notice and settlement information, one of the 3 letters expresses no objection to the settlement or any of its terms ( Exhibit B, the Schisler letter).

encompassed a range of other claims as well, including third-party payor cases, governmental payor cases, and consumer-protection cases. *See, e.g., Plunkett v. Merck & Co.*, 401 F. Supp. 2d 565, 570-72 (E.D. La. 2005); *In re Vioxx Prods. Liab. Litig.*, 869 F. Supp. 2d 719, 720-23 (E.D. La. 2012).

The Court considered applications and appointed attorneys to serve on the Plaintiffs' Steering Committee ("PSC") and Defendant's Steering Committee and has held monthly status conferences to review the progress of the litigation since its inception. *In re Vioxx Prods. Liab. Litig.*, 574 F. Supp. 2d 606, 608 n.3 (E.D. La. 2008), *reconsideration granted in part and denied in part on other grounds*, 650 F. Supp. 2d 549, 608 (E.D. La. 2009). Massive discovery commenced—and is still ongoing—which to date has included the production of millions of documents, thousands of depositions, and argument on at least 1,000 discovery and pre-trial motions. *In re Vioxx*, 574 F. Supp. 2d at 608-09.

### B. Litigation Of Vioxx Economic-Loss Claims

On August 2, 2005, the PSC filed several master complaints, including a Purchase Claims Master Class Action Complaint. (Rec. Doc. 790) It named a number of individual consumers who bought Vioxx for themselves, including Sherrill Herke. (*See id.* ¶¶ 21-41.) The Purchase Claims Complaint alleged that Merck "intentionally, recklessly, and/or negligently concealed, suppressed, omitted, and misrepresented the dangers, defects, and disadvantages of Vioxx." (*Id.* ¶ 2.) Plaintiffs further claimed that Merck engaged in a "marketing campaign [that] specifically targeted third party payors, physicians, and consumers, and was designed to convince them of both the therapeutic and economic value of Vioxx." (*Id.* ¶ 9.) The Purchase Claims Complaint alleged that despite Merck's representations, Vioxx "was no more effective than traditional and less expensive NSAIDs." (*Id.* ¶ 11.) Plaintiffs further alleged that, as a result of Merck's "omission, suppression, and concealment of this important information," Vioxx was "sold to, and

purchased, or paid for by, the End-Payors at a grossly inflated price." (*Id.* ¶ 12.)  The Purchase Claims Complaint sought relief under state consumer- protection laws as well as other causes of action.  (*See id.* ¶¶ 199-324.)

Merck moved to dismiss the Master Complaint on November 7, 2005.  (Rec. Doc. 1352.) This Court held oral argument on that motion on February 2, 2006, but did not issue a ruling. Instead, the Court stated on several occasions that it wanted to give Judges Higbee and Chaney an opportunity to rule on the Class certification motions pending in the economic-loss Class actions in the New Jersey and California state court coordinated proceedings.  (*See, e.g.*, Tr. 20:10-21:11, Mar. 5, 2009.)

The New Jersey and California courts issued rulings denying Class treatment of economic-loss claims in 2009, citing the manageability problems that would preclude resolution of the Class claims in a trial.  In the New Jersey action (*Martin/Kleinman*), Judge Higbee denied plaintiffs' motion for Class certification on March 17, 2009, concluding that plaintiffs' claims turn on highly individualized proof that precluded findings of predominance, superiority and typicality.  *See* 8 A.3d 851, 862-63 (N.J. Super. Law Div. 2009).   In the California Vioxx actions, Judge Chaney similarly declined to certify a proposed Class of all California Vioxx consumers and TPPs in April 2009.  In her order denying Class certification, Judge Chaney noted that in order to prevail on their claims under California law, "each class member must demonstrate . . . that the misrepresentation or nondisclosure influenced [his or her] prescription decision making."  *In re Vioxx Consol. Class Action*, No. JCCP 4247, slip op. at 9-11 (Cal. Super. Ct. Los Angeles County Apr. 30, 2009).   Both of these decisions ultimately survived appellate review.   Merck thereafter moved to strike the Purchase Claims Complaint's Class allegations in 2010, contending that the rulings established the unsuitability of such claims for

resolution in a trial setting.  (*E.g.*, Rec. Doc.45, 869-3, at 1-2.)[4]  Merck also moved for judgment on the pleadings, arguing, among other things, that the economic-loss claims did not allege cognizable injuries.  (*Id.* at 16-20.)  Plaintiffs, through the PSC, filed briefs and submitted argument, or opposition to these efforts.  No ruling has been made.

While the Court has not dismissed most of the statewide consumer claims before it— claims now included in the Class settlement—it has addressed one jurisdiction's statute.  In 2012, Merck moved for judgment on the pleadings with respect to the consumer- protection claim in *District of Columbia ex rel. Walker v. Merck & Co., Inc.* (Rec. Doc.63,656-1.)  Like the claims in the Purchase Claims Complaint, the *Walker* case disclaimed physical injury from Vioxx, but nevertheless claimed entitlement to recover economic losses as a result of Merck's alleged misrepresentations regarding the alleged cardiovascular risks of Vioxx.  (*See id.* at 3.)  Merck again argued (among other things) that no cognizable injury had been pled, citing *Rivera* and other cases.  (*See id.* at 5-7.)  The Court granted this motion, finding "little to support Plaintiff's theory of economic injury" because "Plaintiff thought he was purchasing a medication that would relieve his pain without causing him personal injury . . . and that is what he received." (Rec. Doc. 63,924, at 11.)  In this context, the Court held, "[t]here is no obvious, quantifiable pecuniary loss that Plaintiff incurred from purchasing a drug that worked for him and did not cause him any harm."  (*Id.*)  With nothing to "distinguish this case from *Rivera*," the Court concluded that judgment as a matter of law was appropriate.  (*Id.*)  The plaintiff moved for reconsideration, and at that time, the parties began to focus their efforts on resolving all pending consumer suits alleging economic-loss injuries.

---

[4] Class certification was approved by a Missouri state court and upheld by a court of appeals in *Plubell v. Merck & Co.*, 289 S.W.3d 707 (Mo. Ct. App. 2009); class certification was reversed by the Kentucky Court of Appeals in *Ratliff v. Merck & Co.*, No. 2011-CA-000234-MR, 2012 Ky. App. LEXIS 31 (Ky. Ct. App. Feb. 10, 2012), which is now pending before the Supreme Court of Kentucky, *Ratliff v. Merck & Co.*, No. 2012-SC 000162.

### C.    The Settlement Negotiations And Resulting Agreement

Over the course of 2012-2013, the parties engaged in extensive negotiations to resolve the consumer suits.   The attorneys involved in the negotiations have been engaged in the MDL proceeding since its initiation:  Russ Herman, the PSC Chair, and Plaintiffs' Liaison Counsel, Elizabeth Cabraser and Dawn Barrios on behalf of the purchase claims committee on the plaintiffs' side; and Doug Marvin and John Beisner on behalf of Merck.   The negotiations spanned nine months and involved occasional consultation with Judge Fallon.

The resulting agreement provides for a common-fund settlement with a payment by Merck of up to $23 million for qualifying claims made for out-of-pocket expenditures by members of the Class.   Claimants can recover either:  (1) out-of-pocket costs for purchasing Vioxx and up to $75 in connection with a post-withdrawal medical consultation related to Vioxx use, as defined in the Settlement Agreement; or (2) a one-time payment of up to $50 with proof of Vioxx prescription.   These amounts are subject to a pro rata reduction in the event that the combined value of all claims, as well as administrative and notice costs, exceed the $23 million cap.   Recoveries are also subject to reduction for attorneys' fees determined by the Court, which are to be paid out of (not in addition to) the common fund.

### D.    Preliminary Approval of Settlement Class

On August 2, 2013, the Court issued its Order for Preliminary Certification of a Class For Purposes of Settlement and Preliminary Approval of Class Settlement, Class Notice, and Related Matters ("Preliminary Approval Order") (Rec. Doc. 64526).   The Preliminary Approval Order defined the Vioxx consumer class as follows:

> "Class" or "Settlement Class"
>
> All individual consumer purchasers of Vioxx in the United States (except members of the class previously certified by the Circuit Court of Jackson County, Missouri in the *Plubell* case with respect to purchases made while a resident of the State of Missouri) (the "Settlement Class"), except that

the Settlement Class shall include only individuals who purchased Vioxx (by paying all or part of the purchase price) through September 30, 2004, when Vioxx was removed from the market.  For sake of clarity, the Settlement Class defined in the foregoing sentence includes, but is not limited to, all persons referenced in the foregoing sentence who also received a Post-Withdrawal Medical Consultation as defined below in Paragraph 1.13.  All other Vioxx purchasers (including any private or governmental third-party payors that may have paid all or part of the purchase price of Vioxx for use by individual consumers) are excluded.  Also excluded are (a) all persons who have previously settled Vioxx-related claims, including all participants in the Vioxx Resolution Program, (b) any of Merck's directors, officers, employees, or agents, (c) the Court, the judge's immediate family members, and the staff of the Court assigned to work on MDL 1657, and (d) those individuals who timely and validly exclude themselves from the Class by means of the Opt Out Procedure.

Specifically, the Court preliminarily found, for settlement purposes only, that the proposed Class described above satisfies the following factors of Rule 23(a) and Rule 23(b)(3):

a.   <u>Numerosity</u>:  In this case, many thousands of individuals have asserted claims or have potential claims. Thus, the Rule 23(a)(1) numerosity requirement has been met.

b.   <u>Commonality</u>:  Plaintiffs' claims are common in that they allege that Vioxx was overpriced because Merck allegedly failed to disclose its alleged cardiovascular risks.

c.   <u>Typicality</u>:  The proposed Class representative's claim arises from the same course of conduct and shares the substantially same legal theory, as do the claims of the putative Class members. Furthermore, the proposed Class representative will advance the interests of all Class members.  The individual Class representative alleges various causes of action for recovery of alleged economic harms arising from the purchase of Vioxx®.  The proposed Class representative's claims are typical of those of the proposed Class and satisfy Rule 23(a)(3).

d.   <u>Adequacy</u>:  The proposed Class representative asserts claims representative of the claims of the entire Class. As such, even though the claims may not be identical to every claim of every putative Class member, the proposed Class representative can adequately represent the putative Class.

The adequacy factor also considers Class Counsel.  In this case, Class Counsel regularly engage in complex litigation similar to the present case and have dedicated substantial resources to the prosecution of this matter.  The adequacy requirement is satisfied.

e.   <u>Predominance</u>:  There is predominance. Common issues include: (a) whether Vioxx® carries a risk of cardiovascular disease, and (b) whether Merck adequately disclosed the risks of Vioxx. The resolution of these questions is relevant to essential elements of every Class member's claims.

f.   <u>Superiority</u>:  A settlement class that will determine the issues common to all Class members and fix compensation for alleged economic injury is superior to thousands of trials that would risk disparate results for similarly situated people and entities.

(Rec. Doc. 64526)

The Court thus preliminarily approved the settlement as being fair, reasonable and adequate, entered into in good faith, free of collusion, and within the range of possible judicial approval, such that the terms and conditions should be considered by the putative members of the Class via the dissemination of Class notice which references the settlement website, the Preliminary Approval Order, and the settlement documents and exhibits.   The Class representative now moves the Court to confirm its preliminary findings regarding the Class certification requirements of Rule 23(a) and Rule 23(b)(3), and to consider and grant final Certification at the December 23, 2013 fairness hearing.

## **ARGUMENT**

## I.   **THE CONSUMER SETTLEMENT AGREEMENT MERITS FINAL APPROVAL AS FAIR, REASONABLE AND ADEQUATE**

The undersigned Co-Lead Class Counsel, on behalf of the Class representative, consumer plaintiffs and the PSC, respectfully submit that this settlement is a fair, efficient and reasonable resolution of the disputed Vioxx consumer claims.   Class counsel believe in the merits of the economic-loss claims against Merck; they also acknowledge the barriers to proceeding in this case.   The Court has not yet certified a Class, and adverse rulings in other jurisdictions have cast doubt on the suitability of economic-loss claims for resolution at a Class trial.   Even if a Class were certified for litigation, precedent presents a significant hurdle for the theory of injury

advanced in these cases, and there is a substantial possibility that Class certification would be reversed.   Of course, even an ultimately successful lawsuit would entail substantial additional litigation, both as to Class certification and pretrial dispositive motions and in preparing for and trying the case or cases.   Based on these facts, and on the experience of counsel on both sides in litigating a range of Vioxx-related cases over the past several years, the settlement is a fair and appropriate one.   The settlement provides Vioxx consumers with what the law affords them: recovery of their own Vioxx costs.   It does so via a claims program that is designed to be easy to use, balancing the need for integrity in the distribution of the funds with the reasonable convenience of the claimants:   the effort is proportionate to the reward, and it comes, in the form of settlement relief, far sooner than it would were the litigation to continue in its uncertain and long-delayed advance toward adversary adjudication.

## II.   Public Policy Favors Class Settlement

As this Court has recognized, "there is a strong judicial policy favoring the resolution of disputes through settlement."   *Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 843 (E.D. La. 2007) (internal quotation marks omitted); *see also, e.g.*, *Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982) (same).   As stated in *Turner*, 472 F. Supp. 2d at 843:   "The public interest favoring settlement is especially apparent in the class action context where claims are complex and may involve a large number of parties, which otherwise could lead to years of protracted litigation and sky-rocketing expenses."

This policy is long-established in the Fifth Circuit, and elsewhere.   As articulated in *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977), "Particularly in class action suits, there is an overriding public interest in favor of settlement."   As the Third Circuit recently observed in *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 311 (3d Cir. 2011), "This presumption [in favor of voluntary settlement agreements] is especially strong in class actions and other complex

- 10 -

cases . . . because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by the federal courts."   Precisely because "settlement is the preferred means of resolving [class action] litigation," the courts have endorsed a "strong presumption in favor of finding [such] a settlement fair."   *Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 2d 714, 720 (E.D. La. 2008) (internal quotation marks and citation omitted).  As this Court noted in *Turner*, 472 F. Supp. 2d at 843, "a presumption is made in favor of the settlement's fairness, absent contrary evidence."

## III.   The Consumer Class Settlement Satisfies The Fifth Circuit's Six *Reed* Factors

While public policy favors class resolutions, Rule 23(e) calls upon the district court to exercise its independent discretion to evaluate whether a proposed Class settlement merits final approval as fair, adequate and reasonable with respect to the Class as a whole.  Courts within the Fifth Circuit have been instructed to apply the following six factors to assist them in determining whether to grant final approval to a Class action settlement:

> (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and absent class members.

*See Reed v. General Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983); *Union Asset Management Holding A.G. v. Dell*, 669 F.3d 632, 639 (5th Cir. 2012).  Here, all six of these "*Reed*" factors support final approval of the consumer Class settlement.

### 1.   The Settlement is Free of Fraud or Collusion.

The first *Reed* factor queries whether the settlement was procured through fraud or collusion between the parties.  The Court "may presume that no fraud or collusion occurred between counsel in the absence of any evidence to the contrary."  *Collins*, 568 F. Supp. 2d at 725.  There is no evidence of fraud or collusion between the parties in reaching the Vioxx

consumer settlement.  To the contrary, the settlement was negotiated at arm's length over an extended period of time by experienced counsel at the Court's urging.  During these discussions, the parties considered multiple proposals before reaching the agreement that this Court has already preliminarily approved.  Throughout the course of negotiations, the parties reported regularly to the Court on settlement status, progress, and issues.  Such a negotiation process, which is undertaken during the course of contested litigation, and occurs with the knowledge and under the general supervision of the Court, is strong evidence that the settlement is fair and satisfies the requirements of Rule 23.  *See In re Train Derailment Near Amite La.*, MDL No. 1531, 2006 WL 1561470, at *19 (E.D. La. May 24, 2006) ("The fact that a class action settlement is reached after arms' length negotiations by experienced counsel generally gives rise to a presumption that the settlement is fair, reasonable, and adequate"); *see also Domingue v. Sun Elec. & Instrumentation*, No. 09-682, 2010 WL 1688793, at *1 (M.D. La. Apr. 26, 2010) ("[T]hat this settlement is the negotiated result of an adversarial proceeding is an indication of its fairness").  The first *Reed* factor is fully satisfied by the utter absence or allegation of collusion.

### 2.   The Complexity, Expenses, and Likely Duration of the Litigation

This *Reed* factor requires the Court to assess the complexity, expense and duration of litigation should the case proceed to trial.  Courts "consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation."  *In re Shell Oil Refinery*, 155 F.R.D. 552, 563 (E.D. La. 1993) (finding that this factor weighed in favor of final approval given the "voluminous record," the "over 240,000 hours of attorney and staff time and over 13 million dollars in expenses" incurred therein).  This factor weighs in favor of granting final approval to a settlement where the case involves complex legal and factual claims, necessitating drawn-out legal proceedings.  *See id.* at 559 ("There is no dispute that this case is

one of the most procedurally complex, expensive, and potentially lengthy cases in this district."); *see also In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) ("Complex litigation . . . can occupy a court's docket for years on end, depleting the resources of the parties and the taxpayers while rendering meaningful relief increasingly elusive.").

As to the Vioxx consumer claims, the "vagaries of litigation" are significant and compare favorably to the prospects for immediate relief.  Considerable work would be required before the present action could proceed to trial.  For one thing, the parties would be forced to devote significant additional time and resources to briefing complex issues regarding the suitability of trying consumer-fraud claims under different states' laws in a single Class proceeding.  *See Garza v. Sporting Goods Properties*, No. SA-93-CA-1082, 1996 U.S. Dist. LEXIS 2009, at *45 (W.D. Tex. Feb. 6, 1996) (granting final approval to Class settlement, recognizing that "class certification would become a major battleground before the Court could even consider the various issues concerning the merits of the case and the incorporation of products liability/warranty laws from all fifty states").

The jurisprudence in the consumer Class action area is volatile and evolving, and the prospects for multistate certification, while by no means impossible to achieve were this litigation writing on a clean slate, could not be guaranteed.  And the purpose of such a continued investment, as well as risks, must be considered—what does it gain the Class to prolong the struggle, when recovery is available now, through settlement.  *See Klein v. O'Neil, Inc.*, 705 F. Supp. 2d 632, 651 (N.D. Tex. 2010) ("When the prospect of ongoing litigation threatens to impose high costs of time and money on the parties, the reasonableness of approving a mutually-agreeable settlement is strengthened.").

As one court phrased it, "contentious motion practice on behalf of virtually all parties

involved" in this case "would undoubtedly continue on a protracted litigation path absent approval of the proposed settlement agreement."  *Faircloth v. Certified Fin. Inc.*, No. 99-3097, 2001 WL 527489, at *4 (E.D. La. May 16, 2001) (granting final approval to settlement, reasoning that "should this complex litigation continue on towards trial, it is most likely that the case would last several more years and cost this Court and the parties involved an enormous amount of money").

Because many of "the most controversial and hard-fought of all the issues in this case" have yet to be litigated, *Salinas v. Roadway Express, Inc.*, 802 F.2d 787, 790 (5th Cir. 1986), the settlement "eliminates the transaction costs that further proceedings would impose" and "provides relief for the class sooner than continued litigation would," *Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir. 2004).  And the Vioxx litigation is already at a mature stage, having seen trials and settlements in personal injury, purchase claims, and AG claims.  This *Reed* factor thus supports final approval.

3.   __The Stage of the Proceedings and the Amount of Discovery Completed__

The third *Reed* factor, "the stage of the proceedings and the amount of discovery completed," *Reed*, 703 F.2d at 172; *Union Asset*, 669 F.3d at 639, considers "whether the parties have obtained sufficient information to evaluate the merits of the competing positions."  *In re Educ. Testing Serv. Praxis Principles of Learning & Teaching: Grades 7-12 Litig.*, 447 F. Supp. 2d 612, 620 (E.D. La. 2006) (internal quotation marks and citation omitted).  This factor gauges the maturity of the litigation:  both counsel and Court are better able to assess the benefits of a settlement when they have gained sufficient experience with the issues presented by the case by living and litigating it.  This is a qualitative consideration.  "Thus, the question is not whether the parties have completed a particular amount of discovery, but whether the parties have obtained sufficient information about the strengths and weaknesses of their respective cases to

- 14 -

make a reasoned judgment about the desirability of settling the case on the terms proposed."  *Id.* at 620-21.[5]  To this end, "a court may consider information available to the parties which was developed in prior or related proceedings" in assessing whether the parties are in a position to execute a settlement.  *Neff v. Via Metro. Transit Auth.*, 179 F.R.D. 185, 209-10 (W.D. Tex. 1998).  Thus, the overall experience gained with Vioxx consumer claims not only in the MDL, but in various state proceedings, combines to enable a knowledgeable assessment of a mature case.

This "maturity" factor is thus clearly satisfied here, given the parties' years of involvement in this MDL, in New Jersey and in California, and participation in other Vioxx-related cases.  The history of this MDL is well known to this Court.

### 4.    The Probability of Success on the Merits

As recently noted by a highly regarded district judge, "(T)he probability of success on the merits is the most important *Reed* factor."  *In re Heartland Payment Sys.*, 851 F. Supp. 2d 1040, 1065 (S.D. Tex. 2012) ("*In re Heartland*").  Under this factor, courts compare the settlement terms with the likely rewards the Class would receive at trial.  *Reed*, 703 F.2d at 172; *see also Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 83 (S.D.N.Y. 2007) ("the court must compare the terms of the compromise with the likely rewards of litigation.") (internal quotation marks and citation omitted).

If the parties continued with this litigation, plaintiffs would face significant factual and legal hurdles with respect to Class certification, liability and damages.  After all, as described above, plaintiffs pursuing Vioxx-related economic-loss claims similar to those at issue here lost

---

[5] *See also Schwartz v. TXU Corp.*, Nos. 3:02-CV-2243-K *et al.*, 2005 U.S. Dist. LEXIS 27077, at *64 (N.D. Tex. Nov. 8, 2005) (reminding us that "Formal discovery is not a prerequisite to settlement.").

on class certification in New Jersey and California state court, two large jurisdictions with solid consumer laws.[6]  Class certification outside the settlement context would be fraught with even greater uncertainties, as it involves consumer-fraud "claims under the laws of the fifty states and the District of Columbia."  *In re Heartland Payment Sys.*, 851 F. Supp. 2d 1040, 1066 (S.D. Tex. 2012).  "Absent settlement, the state-law variations would have to be analyzed carefully to be sure they did not make trial unmanageable . . . present[ing] 'a . . . significant challenge to certifying the class.'"  *Id.* (quoting *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 290 (W.D. Tex. 2007)).  Finally, this Court has previously articulated its skepticism regarding the consumer Class in the *Walker* (District of Columbia) case, observing:  "[t]here is no obvious, quantifiable pecuniary loss that [a plaintiff] incur[s] from purchasing a drug that worked for him and did not cause him any harm."  (Rec. Doc. 63,924, at 11.)  Each of these obstacles demonstrates the challenges faced by plaintiffs attempting to prevail through litigation, further demonstrating that the settlement is fair and adequate.  The settlement replaces these risks with the "concrete benefits" of the proposed consumer settlement.  *See In re Heartland*, 851 F. Supp. 2d at 1066.

### 5.     The Range of Possible Recovery

The fifth *Reed* factor asks whether a settlement represents a fair, reasonable and adequate estimation of the value of the specific case the parties propose to resolve.  *In re Combustion, Inc.*, 968 F. Supp. 1116, 1129 (W.D. La. 1997).  In applying this factor, the Fifth Circuit reminds us that "inherent in compromise is a yielding of absolutes and an abandoning of highest hopes."  *Cotton*, 559 F.2d at 1330 (internal quotation marks and citation omitted).

This Class settlement provides Class members with reimbursement of all Vioxx out of

---

[6]  The settlement class includes New Jersey and California residents, and provides them with a recovery notwithstanding class defeats in these states.  For them, the settlement is a clear victory snatched from defeat.

pocket costs they can prove, without any ceiling or cap on the amount to be recovered.  This feature is more generous than many other consumer Class settlements reimbursing for the cost of a drug.  Caps of the amount a Class member may obtain as reimbursement have been imposed in recent settlements.  See, e.g., In re Diet Drugs Prods, Liab. Litig., No. 1203, 2000 U.S, Dist. Lexis 12275, at* 69 (E.D. Pa. 2000) ($500 cap for each Class member); Nigh v. Humphreys Pharmacal, Inc., No. 12 cv2714-MMA-DHB, 2013 U.S. Dist. LEXIS 161215, at *7-8 (S.D. Cal. 2013) ($100 cap for each household).  The absence of any limitation on what a Class member can recover under the settlement clearly demonstrates a fair, reasonable and adequate estimation of the Vioxx consumer claims.

In addition, much effort was made to ensure that the documentation requirements for obtaining full out-of-pocket refunds are fair and reasonable.  There are a number of different ways in which a Class member can qualify, including submitting a receipt, cancelled check, or credit card showing out-of-pocket expenditures on the drug, or submitting pharmacy records showing that Vioxx was prescribed to the Class member and at what cost.  (*See* Class Settlement ¶ 11.2.)  Those Class members who are unable to furnish this information are still eligible to receive a one-time payment of up to fifty dollars with proof of a Vioxx prescription.  (*Id.* ¶ 11.2.1.)

6.    **The Opinions of Class Counsel, Class Representatives and Absent Class Members**

In evaluating a proposed class settlement, the Fifth Circuit teaches that Courts should rely both on counsel, who know the strengths and weaknesses of their cases, as well as the absent Class members, to aid its independent assessment of settlement fairness.  As this Court has recognized, "counsel's opinion should be presumed reasonable because they are in the best position to evaluate fairness due to an intimate familiarity with the lawsuit."  *Turner*, 472 F.

- 17 -

Supp. 2d at 852.   And reliance on these individuals' views regarding the fairness and reasonableness of a Class action settlement is particularly appropriate where—as here—"counsel for both parties have significant experience in litigating and negotiating settlement of class actions."  *DeHoyos*, 240 F.R.D. at 287 (internal quotation marks and citation omitted); *see also Cotton*, 559 F.2d at 1330 ("the trial court is entitled to rely upon the judgment of experienced counsel for the parties").

Class counsel and Merck's counsel are intimately familiar with the factual and legal aspects of this case, and have substantial experience litigating and settling other Vioxx cases. Their views that the settlement is fair, reasonable and adequate are thus entitled to substantial weight, weighing strongly in favor of final approval.

While thousands of Class members have visited the settlement website and initiated the claims process, only three objections or comments to final approval have been received, and just three persons have submitted requests to opt out.[7]  "While the fact that a relatively small percentage of the Class Members objects to a proposed settlement is not dispositive, '[c]ourts have taken the position that one indication of the fairness of a settlement is the lack or small number of objections.'"  *Hammon v. Barry*, 752 F. Supp. 1087, 1092-93 (D.D.C. 1990) (citing 2 Newberg on Class Actions § 11.47 (2d ed.) at 463); *In re Shell Oil*, 155 F.R.D. at 566-67 (small number of objections and opt outs provided indicia of fairness and adequacy of the settlement).  Further, the number of individuals who have registered or requested information to make claims (over 11,500) and who have already filed claims seeking the benefits of the settlement (over 2,200 to date) demonstrates widespread approval of the settlement.  This number will likely increase significantly, as Class members have until May 6, 2014, to file a

---

[7] Wardell Harris, Jr., Henrietta Morris, and Sheila Martin each mailed an opt out.

claim to recover under the Settlement Agreement.   The views of these absent Class members, who have voted affirmatively in favor of the settlement by taking steps to obtain its benefits, should also be taken into account, further justifying final approval of the settlement.

## IV.   CONFIRMATION OF SETTLEMENT CLASS UNDER RULE 23(a)(1)-(4); 23(b)(3)

It is an established, fundamental tenet of Class action jurisprudence that when a Court is "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems." *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591,620 (1997).   Nonetheless, "the criteria of Rule 23, particularly th[ose] found in subsections (a) and (b), must still be satisfied." *In re Vioxx Prods. Liab. Litig.*, MDL No. 1657, 2013 U.S. Dist. LEXIS 134362, at *11 (E.D. La. Aug. 27, 2013) (granting final approval to Class settlement) (citation omitted); *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 2008 U.S. Dist. LEXIS 107688 (E.D. La. 2008).

Here, all of the relevant requirements of Rule 23(a)(1)-(4) and Rule 23(b)(3) are met for purposes of certifying a settlement Class.

### A.   Numerosity

Under Rule 23(a), the class must be sufficiently numerous to make joinder impracticable. *See* Fed. R. Civ. P. 23(a)(1).   There is no question that numerosity is satisfied here.   The settlement Class encompasses all purchasers of Vioxx nationwide, which would include many thousands of individuals.

### B.   Commonality

The commonality requirement of Rule 23(a)(2) is also met in this case for purposes of this multi-state consumer settlement. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) (certifying settlement Class and noting that the "existence of shared legal issues with

- 19 -

divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class."); *Sewell v. Bovis Lend Lease, Inc.*, No. 09-cv-6548 (RLE), 2012 U.S. Dist. LEXIS 53556, at *9-10 (S.D.N.Y. Apr. 16, 2012) ("[s]ettlement itself provides an answer to the common issues raised by all class members, regardless of the specific type of injury" they may have sustained); *Sullivan v. DB Invs., Inc.*, 667 F.3d 273 (3d Cir. 2012), *cert. denied*, 2012 U.S. LEXIS 2656 (commonality focuses on the defendants' conduct, especially in the settlement context).

In this case, plaintiffs allege that Merck made material misstatements and omissions regarding the alleged risks of Vioxx to all purchasers of the drug nationwide.  As a result, there is a common question as to whether Merck's statements about the drug were accurate, making certification appropriate for settlement purposes.  "The commonality requirement is satisfied if at least one issue's resolution will affect all or a significant number of class members."  *In re Vioxx*, 239 F.R.D. at 459; *James v. City of Dallas*, 254 F.3d 551, 570 (5th Cir. 2001).

### C.   <u>Typicality</u>

The typicality requirement of Rule 23(a)(3) "'refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought.'" Newberg on Class Actions § 3:13 (quoting *Weinberger v. Thornton*, 114 F.R.D. 599, 603 (S.D. Cal. 1986)).  In other words, courts must determine "'whether other [class] members have the same or similar injury, whether the action is based on conduct which is not unique to the named class members, and whether other class members have been injured by the same conduct.'"  *Id.* "The typicality criterion focuses on whether there exists a relationship between the plaintiffs' claims and the claims alleged on behalf of the Class." *Hanen v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). The measure of typicality is whether the nature of the plaintiff's claims, judged from both a factual and a legal perspective, are such that in litigating his or her personal

claims he or she reasonably can be expected to advance the interests of absent Class members. *See, e.g., Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156-57 (1982).  This is true with respect to Vioxx consumer settlement Class representative Sherrill Herke:  she spent her own money to purchase Vioxx, claims to have been misled about its safety and efficacy, asserts her rights as a consumer to be told the truth about products affecting her health and safety, and has fought to get her—and her fellow Vioxx purchasers—their money back:  relief the settlement provides to all Vioxx consumers except those who already benefited in other, earlier settlements, such as the MDL injury settlement and the Missouri settlement.

Here, plaintiffs claim that Merck made misrepresentations about the safety of Vioxx and that, as a result of those alleged misstatements, they lost money in purchasing Vioxx.  Thus, the named Class representative claims that she was harmed in a manner similar to the proposed Class.  Additionally, the Class representative has not asserted any claims different from, or antagonistic to, those of the proposed Class she seeks to represent for purposes of settlement. Accordingly, her claim is typical of the proposed Class members for settlement purposes.

### D.    Adequacy Of Representation

Rule 23(a)(4) requires that the named Class representative "not possess interests which are antagonistic to the interests of the class."  Rubenstein, 1 *Newberg on Class Actions* § 3:21. In addition, the named Class representative's counsel "must be qualified, experienced, and generally able to conduct the litigation."  *Id*; *see also Amchem*, 521 U.S. at 625-626 ("[A] class representative must be part of the class and possess the same interest and suffer the same injury as the class members.") (internal quotation marks and citation omitted).  There is nothing to suggest that this requirement has not been met.  The named Class representative is a member of the settlement Class she seeks to represent and does not possess any interests antagonistic to the Class with respect to their claims against Merck.  As noted above, her economic interests are

- 21 -

fully aligned with those of the Class.

Class counsel is also adequate.  Class counsel have been involved in the management of numerous complex Class action cases, including years of coordinating plaintiffs' claims in this MDL proceeding.  Accordingly, Class counsel possess adequate information concerning the strengths and weaknesses of the claims against Merck to advocate on behalf of the entire Class, and the adequacy of representation requirement is readily satisfied for purposes of certifying the settlement Class.

### E.  Common Questions of Law and Fact Predominate

Rule 23(b)(3)'s predominance requirement "asks whether a class suit for the unitary adjudication of common issues is economical and efficient in the context of all the issues in the suit."  Rubenstein, 1 *Newberg on Class Actions* § 4:25; *see also Amchem*, 521 U.S. at 623 ("The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation").  *See also Vioxx*, 239 F.R.D. 450, 460 (E.D. La. 2006); *In re Vioxx*, 2013 U.S. Dist LEXIS 134362 (E.D. La. 2013).  In the settlement context, judicial economy, efficiency, and practicality emerge as factors favoring Class settlement whether expressed as a matter of predominance, or of superiority.  *See* Rubenstein, 1 *Newberg on Class Actions* § 4.24.  In this case, it is most efficient to resolve the claims of all Class members through a nationwide class settlement.  As set forth above, each Class member alleges that Merck made misrepresentations about the risks of Vioxx and that those misrepresentations caused purchasers of the drug to lose money.  Accordingly, it makes good sense to resolve all of their claims via a nationwide settlement agreement that ensures that funds are available to compensate them for their alleged damages.

In addition to the predominance requirement, Rule 23(b)(3) requires that the Class action device be superior to other methods of adjudication.  Factors the Court may consider include:

(a) the interest of members of the Class in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the Class; (c) the desirability or undesirability of concentrating the litigation of the Claims in the particular forum; and (d) the difficulties likely to be encountered in the management of a class action.   Fed. R. Civ. P. 23(b)(3)(A)-(D). Consideration of each of these factors weighs in favor of certification of the proposed Settlement Class.

As a practical matter, the interest of individuals in controlling this litigation is limited. The damages allegedly suffered by the settlement Class members are not sufficient to warrant individual litigation, since the amount spent by individual Class members on Vioxx is slight when compared to the cost of litigating consumer-fraud claims in federal court.  *See Amchem*, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.  A class action solves this problem by aggregating the relatively paltry recoveries into something worth someone's (usually an attorney's) labor.").  *See also Hughes v. Kore of Indiana Enterprise, Inc.*, 2013 U.S. App. LEXIS 18873 (7th Cir. 2013). Importantly, settlement Class members who do wish to pursue their own individual lawsuits can request exclusion from the class.

The other superiority factors also weigh in favor of Class certification for settlement purposes.  For example, it is clearly desirable to concentrate the litigation in this forum simply because this Court has presided over the ongoing, massive Vioxx MDL proceeding for many years and is thoroughly familiar with the claims and issues.  The proposed settlement also resolves the substantial manageability problems that would arise from attempting to try

- 23 -

thousands of Vioxx purchasers' claims in a single action before a single jury.  The settlement will permit settlement Class members to achieve individual relief without burdening the parties and the judicial system with a complicated and expensive Class action trial.

**V.      THE CLASS NOTICE AND CLASS NOTICE PROGRAM SATISFY RULE 23 AND DUE PROCESS**

In its Preliminary Approval Order, the Court found that the "proposed notice plan will provide the best practicable notice to the putative Class under the circumstances, satisfying the requirements of Rule 23 and due process."  (Rec. Doc. 64526, at 3.)  This finding has been confirmed in action.

The notice program, including the notice language, pass muster under Rule 23(c)(2). The notice to Class members must be the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.  Fed. R. Civ. P. 23(c)(2)(B). Here, the Notice Expert appointed by the Court, Kinsella Media, LLC, satisfied all legal requirements regarding notice.  Plain, easily understood language was used describing the litigation, the class membership, the class claims, how to opt out, what occurs if no steps are taken by the Class member, how to object, the right to appear at the Fairness Hearing, with or without counsel, the date and time of the Fairness Hearing, and how to make a claim and the requirements necessary for a successful claim.

This information is contained in both the Long Form Notice (Exhibit E to Vioxx MDL Consumer Settlement Agreement) and the Short Form Notice (Exhibit D to Vioxx MDL Consumer Settlement Agreement).

Both the Notice Provider and the Settlement Administrator will report to the Court with updated information on the implementation and completion of the notice programs, and the status of the claims program, in written reports prior to the December 13, 2013 final approval

hearing, and will be available to answer any further questions the Court may have regarding either the implementation of the Class Notice program, or the claims process at the Fairness Hearing.

## VI.    THE FEW OBJECTIONS TO THE SETTLEMENT ARE WITHOUT MERIT

"A court should not withhold approval of a settlement merely because some class members object." *IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 600 (E.D. Mich. 2006) (granting final approval to settlement over several objections) (internal quotation marks and citation omitted).   Because a settlement is presumptively reasonable once it has been preliminarily approved, "an individual who objects has a heavy burden of demonstrating the settlement is unreasonable." *DeHoyos*, 240 F.R.D. at 293 (granting final approval to Class action settlement over objections) (citation omitted).   This principle is rooted in the Court's "obligation to protect the interests of the silent class majority, despite . . . opposition by a vocal minority to the settlement." *IUE-CWA*, 238 F.R.D. at 600 (internal quotation marks and citation omitted).

The Class action settlement approval process is not a plebiscite.   Neither may objectors filibuster to thwart and derail the process.   Objectors who are not actually Class members are without standing to object and accordingly Class Counsel are taking steps to determine whether they are in fact Vioxx consumers within the Class definition.   The initial review of the 3 objections/correspondence demonstrates that none of the three timely sent their objection to the correct parties, as directed by the Preliminary Approval Order, which is posted on the settlement website, www.vioxxsettlement.com.   The Declaration of Dawn M. Barrios, attached as Exhibit A contains a chart indicating whether each objection/correspondence procedurally adhered to the requirements for an objection. Even if the Court were to excuse these procedural deficiencies and proceed to consider the objections on their merits as an aid to its independent evaluation of the

settlement, the objections should still be overruled.

The first "objection," more accurately a comment by Patricia Schisler[8], failed to comply with the procedural requirements for objecting to the settlement agreement that were expressly detailed in the Court's Preliminary Approval Order, which is posted on the settlement website. This objection was not received by Co- Class Counsel, Mr. Russ Herman or even filed with the Clerk of the Court—a basic requirement for objecting to the Settlement Agreement.  (Rec Doc. 64526, at 8.)  According to the Court, "[o]bjections will be deemed waived if the procedures for objecting to the Proposed Settlement are not followed."  (*Id.*)  As other courts have recognized, objections that do not satisfy the procedural requirements imposed in a preliminary approval order need not be considered.  *See, e.g.*, *Kelly v. Phiten USA, Inc.*, 277 F.R.D. 564, 571 n.8 (S.D. Iowa 2011) (granting final approval and refusing to "consider Mr. Kohlhagen's objection, as he failed to comply with the July 11 Order by failing to file a Notice of Intent to Object"); *Bynum v. Dist. of Columbia*, 412 F. Supp. 2d 73, 76-77 (D.D.C. 2006) ("Letters complaining about aspects of the settlement generally that did not comply with the procedure for making objections to the Bynum Settlement Agreement provided in P15 of the Class Notice will not be treated as objections.").  For this procedural reason and the absence of any objection to the settlement made in Ms. Schisler's comment, the "objection" should be dismissed.

The second objection, by Geneva Meloy, was not received by Merck, through Mr. Doug Marvin timely.[9]  It, too, may also be rejected as procedurally deficient as failing to comply with the Court's requirements for objecting.  *See, e.g.*, *Kelly*, 277 F.R.D. at 571 n.8; *Bynum*, 412 F. Supp. 2d at 76-77.  More to the point, the Meloy objection lacks substantive merit.  The

---

[8] Exhibit B (Rec. Doc. 64700-1 )

[9] Exhibit C.

objection is directed solely at the proposed fees provided for in the settlement agreement.[10]   But Ms. Meloy "offers no reason for objecting to the Settlement" based on the proposed fees.   *See Moore v. Verizon Communications, Inc.*, No. C 09-1823, 2013 U.S. Dist. LEXIS 122901, at *38 (N.D. Cal. Aug. 28, 2013) ("Irene Nelson objects to Class Counsel's request for attorneys' fees and expenses and Class Representative incentive awards.  However, Ms. Nelson offers no reason for objecting to the Settlement other than wanting 'the best for [her] in monetary settlement.' Therefore, Ms. Nelson's objection is overruled.").   Ms. Meloy offered no explanation why she objected to the attorneys' fees; the Settlement Agreement provides direct substantial benefits to class members.   *See Radosti v. Envision EMI, LLC*, 760 F. Supp. 2d 73, 78 (D.D.C. 2011) (rejecting objection to "the size of the fee award" because the "settlement provides substantial benefits to the class members"); *see also In re Skechers Toning Shoe Prods. Liab. Litig.*, MDL No. 2308, 2013 U.S. Dist. LEXIS 67441, at *45 (W.D. Ky. May 13, 2013) (granting final approval to Class settlement; the "award is reasonable in light of the substantial benefits counsel for Grabowski conferred on the class").   Because the settlement provides a substantial payout to Class members, the proposed fees (32% of the benefits available to class members) which will be set by the Court are more than reasonable.   *See In re Philips/Magnavox TV Litig.*, No. 09-3072, 2012 U.S. Dist. LEXIS 67287, at *49 (D.N.J. May 14, 2012) ("Fee awards ranging from 19 percent to 45 percent of the fund are considered reasonable. . . .").   Ms. Meloy's objection should therefore be rejected.[11]

---

[10] This Court is not being asked to allocate or award fees to any counsel at the final approval hearing.  Rather, the Court is being asked to approve the settlement stricture, which provides for common benefit fees, if, as, and when the Court determines to conduct its process of considering such awards, such a process would be conducted under Rule 23(h).

[11] Since Ms. Meloy's objection states that she is a pro se, this Court's pro se Curator tried to contact Ms. Meloy, but has not reached her.

The third objection, by Debbie Pace and Patricia Archuleta, on behalf of New Mexico purchasers of Vioxx, is similarly flawed—both procedurally and substantively.[12]   In the first place, the objection was sent to Brown Greer, which received it on November 12, 2013.  Even if Brown Greer were named as a proper party to serve an objection on, it is not timely.  Moreover, it was not sent to either Mr. Herman or Mr. Marvin, as required by Court order.  As made clear by the Court in its Preliminary Approval Order, all objections had to be served on counsel "on or before November 9, 2013."  (Rec. Doc. 64526, at 8.)  In addition, as with the other objections, it does not appear that this objection was filed with the Clerk of the Court, which is further ground for rejecting it.  (*See id.*)  *See also, e.g.*, *Kelly*, 277 F.R.D. at 571 n.8; *Bynum*, 412 F. Supp. 2d at 76-77.  Rather, it was faxed to Chambers.

The Pace/Archuleta objection primarily challenges communications between the PSC and counsel for the New Mexico "class members".  It is important to note that according to the objection, the case was removed and transferred to the MDL before any proceedings could be undertaken, thus contradicting the assertion that Ms. Pace and Ms. Archuleta are class representatives and that there is a "class".  Nonetheless, they claim that the "settlement package did not contain a list of putative New Mexico class members to whom notice was being sent, did not contain the proposed settlement agreement and exhibits, and did not provide the class certification exhibits attached to the Order granting preliminary class certification."    (*See* Exhibit D, ¶ 6.)   This challenge is frivolous; the Vioxx consumer settlement website, www.vioxxsettlement.com, contains all the material requested with the exception of the New Mexico class members to whom Notice was being sent.  The Notice Program did not have an aspect of direct notice to any state's residents, thus, the request was impossible to fulfill as such a

---

[12] Exhibit D

list doesn't exist, and was totally irrelevant. The Class notice refers interested persons to the website and the advertising has been used to reinforce awareness of the site which contains all the relevant settlement information.

And while the objectors also complain that they were not provided with exhibits attached to the Order preliminary approving the Settlement Agreement, the Court's ruling was never accompanied by any such exhibits.   (Rec. Doc. 64526.) This objection should be disregarded.

For all the reasons asserted above, Co-Lead Class Counsel respectfully requests that the Court grant its motion and grant final approval of the consumer Class settlement.

## VII.   <u>CONCLUSION</u>

For the foregoing reasons, the Court should confirm Class certification and grant final approval of the settlement

DATED:  November 22, 2013                    Respectfully submitted,


*/s/ Russ M. Herman*_____          */s/ Elizabeth J. Cabraser*_____
Russ M. Herman, Esquire                      Elizabeth J. Cabraser, Esquire
Leonard A. Davis, Esquire                    LIEFF, CABRASER, HEIMANN &
HERMAN, HERMAN & KATZ, L.L.C.                 BERNSTEIN, LLP
820 O'Keefe Avenue                           275 Battery Street, 30th Floor
New Orleans, Louisiana 70113                 San Francisco, CA  94111-3339
Phone: (504) 581-4892                        Telephone:  (415) 956-1000
Fax: (504) 561-6024                          Facsimile:  (415) 956-1008
ldavis@hhklawfirm.com                        ecabraser@lchb.com

*Settlement Class Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing has been served on Liaison Counsel, Ann B. Oldfather, and Phillip Wittmann, by U.S. mail and e-mail or by hand delivery and e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pretrial Order No. 8(B), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 22nd day of November, 2013.

I hereby further certify that copies have been forwarded to the following via U.S. Mail, postage pre-paid and properly addressed:

1.  Patricia A. Schisler
    523 W. Adams Street
    Greenview, IL  62642

2.  Geneva Meloy
    c/o Endeman, Lincoln, Turek & Heater
    600 B Street
    #2400
    San Diego, CA  92101

3.  James P. Lyle, Esq.
    1116 Second Street, NW
    Albuquerque, NM  87102

    /s/ Leonard A. Davis
    LEONARD A. DAVIS