**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| _____ ) | | |
| In re: VIOXX ) | **MDL NO. 1657** | |
| PRODUCTS LIABILITY LITIGATION ) | | |
| ) | **SECTION: L** | |
| ) | | |
| THIS DOCUMENT RELATES TO: ) | **JUDGE FALLON** | |
| ) | | |
| SHERRILL HERKE, individually and on ) | **No. 2:09-cv-07218** | |
| behalf of a proposed class of those ) | | |
| similarly situated, ) | | |
| Plaintiffs, ) | | |
| ) | | |
| v. ) | | |
| ) | | |
| MERCK & CO., INC., ) | | |
| Defendant. ) | | |
| ) | | |
| ) | | |
| _____ ) | | |

**MERCK'S STATEMENT IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL
APPROVAL OF CLASS SETTLEMENT**

## TABLE OF CONTENTS

BACKGROUND ................................................................................................................2

    A.    The Vioxx Litigation.........................................................................................2

    B.    Litigation Of Vioxx Economic-Loss Claims ....................................................3

    C.    The Settlement Negotiations And Resulting Agreement....................................6

    D.    The Court's Preliminary Approval Of The Settlement And Subsequent
        Developments ..................................................................................................7

ARGUMENT ...................................................................................................................8

I.     THE COURT SHOULD GRANT FINAL APPROVAL TO THE SETTLEMENT
      AS FAIR, REASONABLE AND ADEQUATE. ................................................8

    A.    The Settlement Is Free Of Fraud Or Collusion....................................................9

    B.    Litigation Of Plaintiffs' Claims Would Be Complex, Expensive And
        Lengthy. ..........................................................................................................10

    C.    The State Of This Proceeding Supports Settlement.............................................12

    D.    Plaintiffs Face Serious Risks On The Merits......................................................13

    E.    The Settlement Benefits Are Generous Given The Range of Possible
        Recovery Through Litigation.............................................................................15

    F.    The Opinions Of Class Counsel, Class Representatives And Absent Class
        Members Favor Settlement................................................................................17

II.    CERTIFICATION OF THE CLASS IS APPROPRIATE FOR SETTLEMENT
      PURPOSES.....................................................................................................19

    A.    Numerosity......................................................................................................19

    B.    Commonality....................................................................................................19

    C.    Typicality........................................................................................................20

    D.    Adequacy Of Representation ............................................................................21

    E.    Common Questions Of Law And Fact Predominate ...........................................21

III.   THE FORM AND METHOD OF CLASS NOTICE SATISFY RULE 23 AND
      DUE PROCESS................................................................................................23

IV.   THE OBJECTIONS TO THE SETTLEMENT ARE WITHOUT MERIT......................26

CONCLUSION................................................................................................................30

i

## <u>TABLE OF AUTHORITIES</u>

### FEDERAL CASES

*Amchem Products Inc. v. Windsor*,
   521 U.S. 591 (1997) ...............................................................................19, 21, 22

*Ayers v. Thompson*,
   358 F.3d 356 (5th Cir. 2004) ...........................................................................12

*In re Bridgestone/Firestone, Inc., Tires Products Liability Litigation*,
   288 F.3d 1012 (7th Cir. 2002) ..........................................................................5

*Burford v. Cargill, Inc.*,
   No. 05-0283, 2012 U.S. Dist. LEXIS 161292 (W.D. La. Nov. 8, 2012) .........13, 24

*Bynum v. District of Columbia*,
   412 F. Supp. 2d 73 (D.D.C. 2006)................................................................27, 28

*In re Chinese-Manufactured Drywall Products Liability Litigation*,
   MDL No. 2047, 2012 WL 92498 (E.D. La. Jan. 10, 2012).....................................24

*Collins v. Sanderson Farms, Inc.*,
   568 F. Supp. 2d 714 (E.D. La. 2008) ................................................................8, 9

*In re Combustion, Inc.*,
   968 F. Supp. 1116 (W.D. La. 1997) ..................................................................15

*In re Compact Disc Minimum Advertised Price Antitrust Litigation*,
   216 F.R.D. 197 (D. Me. 2003) ..........................................................................29

*In re Compact Disc Minimum Advertised Price Antitrust Litigation*,
   MDL No. 1361, 2003 U.S. Dist. LEXIS 12663 (D. Me. July 9, 2003)..................30

*In re Corrugated Container Antitrust Litigation*,
   659 F.2d 1322 (5th Cir. 1981) ..........................................................................13

*Cotton v. Hinton*,
   559 F.2d 1326 (5th Cir. 1977) ..................................................................8, 15, 18

*DeHoyos v. Allstate Corp.*,
   240 F.R.D. 269 (W.D. Tex. 2007)..........................................................14, 17, 26

*In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Products Liability
   Litigation*,
   MDL No. 1203, 2000 U.S. Dist. LEXIS 12275 (E.D. Pa. 2000) ...........................16

1143948v1

*Domingue v. Sun Electrical & Instrumentation, Inc.*,
 No. 09-682, 2010 WL 1688793 (M.D. La. Apr. 26, 2010) ...................................................9

*In re Educational Testing Service Praxis Principles of Learning & Teaching: Grades 7-
 12 Litigation*,
 447 F. Supp. 2d 612 (E.D. La. 2006) .............................................................................12, 13

*Faircloth v. Certified Finance Inc.*,
 No. 99-3097, 2001 WL 527489 (E.D. La. May 16, 2001) .....................................................11

*In re FEMA Trailer Formaldehyde Product Liability Litigation*,
 No. 2:07-MD-1873, 2012 U.S. Dist. LEXIS 146679 (E.D. La. Sept. 27, 2012)....................14

*Garza v. Sporting Goods Properties, Inc.*,
 No. SA-93-CA-1082, 1996 U.S. Dist. LEXIS 2009 (W.D. Tex. Feb. 6, 1996).....................10

*General Telephone Co. of Southwest v. Falcon*,
 457 U.S. 147 (1982) ..............................................................................................................20

*Granada Investments, Inc. v. DWG Corp.*,
 962 F.2d 1203 (6th Cir. 1992)...................................................................................................9

*Hammon v. Barry*,
 752 F. Supp. 1087 (D.D.C. 1990).............................................................................................18

*Hanan v. Dataproducts Corp.*,
 976 F.2d 497 (9th Cir. 1992) .....................................................................................................20

*Hanlon v. Chrysler Corp.*,
 150 F.3d 1011 (9th Cir. 1998) ...................................................................................................19

*In re Heartland Payment Systems, Inc. Customer Data Security Breach Litigation*
 851 F. Supp. 2d 1040 (S.D. Tex. 2012)..............................................................13, 14, 15, 17

*Initial Public Offering Securities Litigation*,
 243 F.R.D. 79 (S.D.N.Y. 2007).................................................................................................13

*IUE-CWA v. General Motors Corp.*,
 238 F.R.D. 583 (E.D. Mich. 2006) ...................................................................................26, 27

*Kelly v. Phiten USA, Inc.*,
 277 F.R.D. 564 (S.D. Iowa 2011)......................................................................................27, 28

*Klein v. O'Neil, Inc.*,
 705 F. Supp. 2d 632 (N.D. Tex. 2010) .....................................................................................11

1143948v1

*In re Lupron® Marketing & Sales Practices Litigation*,
  228 F.R.D. 75 (D. Mass. 2005) ...................................................................................16, 17

*Moore v. Verizon Communications, Inc.*,
  No. C 09-1823, 2013 U.S. Dist. LEXIS 122901 (N.D. Cal. Aug. 28, 2013) .........................27

*Mullane v. Central Hanover Bank & Trust Co.*,
  339 U.S. 306 (1950) ..............................................................................................................26

*Neff v. Via Metropolitan Transit Authority*,
  179 F.R.D. 185 (W.D. Tex. 1998).........................................................................................12

*Nigh v. Humphreys Pharmacal, Inc.*,
  No. 12cv2714-MMA-DHB, 2013 U.S. Dist. LEXIS 161215
  (S.D. Cal. Oct. 23, 2013)......................................................................................................16

*Parker v. Anderson*,
  667 F.2d 1204 (5th Cir. 1982) ................................................................................................8

*In re Philips/Magnavox Television Litigation*,
  No. 09-3072 (CCC), 2012 U.S. Dist. LEXIS 67287 (D.N.J. May 14, 2012).........................28

*Phillips Petroleum Co. v. Shutts*,
  472 U.S. 797 (1985) ..............................................................................................................23

*Radosti v. Envision EMI, LLC*,
  760 F. Supp. 2d 73 (D.D.C. 2011).........................................................................................28

*Reed v. General Motors Corp.*,
  703 F.2d 170 (5th Cir. 1983) ............................................................................................9, 13

*Rivera v. Wyeth-Ayerst Laboratories*,
  283 F.3d 315 (5th Cir. 2002) ..................................................................................................5

*Salinas v. Roadway Express, Inc.*,
  802 F.2d 787 (5th Cir. 1986) ................................................................................................12

*Schwartz v. TXU Corp.*,
  Nos. 3:02-CV-2243-K et al., 2005 U.S. Dist. LEXIS 27077 (N.D. Tex. Nov. 8, 2005).........12

*Sewell v. Bovis Lend Lease, Inc.*,
  No. 09-cv-6548 (RLE), 2012 U.S. Dist. LEXIS 53556 (S.D.N.Y. Apr. 16, 2012)................19

*In re Shell Oil Refinery*,
  155 F.R.D. 552 (E.D. La. 1993) ......................................................................................10, 18

iv

*In re Skechers Toning Shoe Products Liability Litigation*,
   MDL No. 2308, 2013 U.S. Dist. LEXIS 67441 (W.D. Ky. May 13, 2013)...........................28

*Smith v. Crystian*,
   91 F. App'x 952 (5th Cir. 2004) .........................................................................................8

*Spillman v. RPM Pizza, LLC*,
   No. 10-349-BAJ-SCR, 2013 U.S. Dist. LEXIS 72947 (M.D. La. May 23, 2013).................15

*Sullivan v. DB Investments, Inc.*,
   667 F.3d 273 (3d Cir. 2011) ...............................................................................................8

*In re Train Derailment Near Amite Louisiana*,
   MDL No. 1531, 2006 WL 1561470 (E.D. La. May 24, 2006).................................................9

*Turner v. Murphy Oil USA, Inc.*,
   472 F. Supp. 2d 830 (E.D. La. 2007) ............................................................................8, 17

*In re U.S. Oil & Gas Litigation*,
   967 F.2d 489 (11th Cir. 1992) ..........................................................................................10

*In re Vioxx Products Liability Litigation*,
   401 F. Supp. 2d 565 (E.D. La. 2005) ...................................................................................2

*In re Vioxx Products Liability Litigation*,
   574 F. Supp. 2d 606 (E.D. La. 2008) ...................................................................................2

*In re Vioxx Products Liability Litigation*,
   388 F. App'x 391 (5th Cir. 2010) .........................................................................................2

*In re Vioxx Products Liability Litigation*,
   869 F. Supp. 2d 719 (E.D. La. 2012) ..............................................................................2, 16

*In re Vioxx Products Liability Litigation*,
   MDL No. 1657, 2013 U.S. Dist. LEXIS 134362 (E.D. La. Aug. 27, 2013) ...........................19

*In re VMS Securities Litigation*,
   No. 89 C 9448, 1992 U.S. Dist. LEXIS 12141 (N.D. Ill. Aug. 11, 1992) ..............................25

*Weinberger v. Thornton*,
   114 F.R.D. 599 (S.D. Cal. 1986) .........................................................................................20

1143948v1

**STATE CASES**

*Kleinman v. Merck & Co.,*
    8 A.3d 851 (N.J. Super. Ct. Law Div. 2009) ................................................................4, 11, 14

*Merck & Co. v. Ratliff,*
    No. 2011-CA-000234-MR, 2012 Ky. App. LEXIS 31 (Ky. Ct. App. Feb. 10, 2012) .............4

*Plubell v. Merck & Co.,*
    289 S.W.3d 707 (Mo. Ct. App. 2009) ......................................................................................4

*In re Vioxx Class Cases,*
    180 Cal. App. 4th 116 (2009) ....................................................................................4, 11, 14

**FEDERAL RULES**

Fed. R. Civ. P. 23(a)(1) .....................................................................................................................19

Fed. R. Civ. P. 23(b)(2)(B) ...............................................................................................................24

Fed. R. Civ. P. 23(b)(3)(A)-(D) ........................................................................................................22

Fed. R. Civ. P. 23(c)(2)(B) ...............................................................................................................23

Fed. R. Civ. P. 23(e) ...........................................................................................................................2

Fed. R. Civ. P. 23(e)(1) .....................................................................................................................26

**OTHER AUTHORITIES**

1 Newberg on Class Actions § 3:13 (4th ed. 2002) .........................................................................20

1 Newberg on Class Actions § 3:21 (4th ed. 2002) .........................................................................21

2 Newberg on Class Actions § 4:25 (4th ed. 2002) .........................................................................21

2 Newberg on Class Actions § 11.47 (2d ed. 1985) .........................................................................18

1143948v1

**<u>MERCK'S STATEMENT IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL
APPROVAL OF CLASS SETTLEMENT</u>**

Defendant Merck Sharp & Dohme Corp. ("Merck") respectfully submits this statement in
support of plaintiffs' motion for final approval of the consumer class settlement agreement.

After more than eight years of hard-fought litigation regarding the prescription pain
reliever Vioxx – including the negotiation of various settlements to resolve personal injury and
other claims stemming from Merck's decision to withdraw the drug from the market – the parties
have agreed to settle a class action brought on behalf of all Vioxx purchasers nationwide who
allege economic loss as a result of Merck's alleged misrepresentations regarding the risks of the
drug.

Under the terms of the settlement reached by the parties, Merck has agreed to pay up to
$23 million into a common fund to resolve claims made for out-of-pocket expenditures by
members of the settlement class and certain other payment obligations.  Each member of the
settlement class who qualifies for payment may obtain recovery of either:  (1) his/her out-of-
pocket expenditures for the purchase of Vioxx for personal or family use and up to seventy-five
dollars ($75.00) for his/her other out-of-pocket costs and losses in connection with a post-
withdrawal medical consultation related to Vioxx use as defined in the Settlement Agreement; or
(2) a one-time payment of up to fifty dollars ($50.00) with proof of Vioxx prescription.  In
addition, the common fund will pay, subject to the $23 million aggregate cap, all costs of class
notice and settlement administration, and will pay Court-awarded attorneys' fees and expenses.

This settlement – reached as a result of substantial, informed, arms-length negotiations
between the parties – fairly and adequately resolves the claims alleged against Merck by Vioxx
purchasers nationwide.  This Court recognized as much when it preliminarily approved the
settlement and conditionally certified the class on August 2, 2013.  (*See* D.64,526.)  The ensuing

1

three months have only confirmed the fairness, reasonableness and adequacy of the settlement agreement.  Therefore, pursuant to Federal Rule of Civil Procedure 23(e), Merck requests that the Court grant plaintiffs' motion for final approval of the settlement agreement in this case.

## BACKGROUND

### A.     The Vioxx Litigation

Merck voluntarily withdrew Vioxx from the market in September 2004 after interim data from a placebo-controlled clinical trial showed a statistically significantly higher rate of heart attacks in the Vioxx arm of the study after 18 months of continuous use.  *See In re Vioxx Prods. Liab. Litig.*, 388 F. App'x 391, 393 (5th Cir. 2010).  Substantial litigation followed, leading to the establishment of a multidistrict litigation ("MDL") proceeding in this Court.  The proceeding ultimately included tens of thousands of cases.  Most sounded in personal injury, but the MDL encompassed a range of other claims as well, including third-party payor ("TPP") cases; governmental payor cases; and consumer-protection cases.  *See, e.g.*, *In re Vioxx Prods. Liab. Litig.*, 401 F. Supp. 2d 565, 570-72 (E.D. La. 2005); *In re Vioxx Prods. Liab. Litig.*, 869 F. Supp. 2d 719, 720-23 (E.D. La. 2012).

The Court appointed attorneys to serve on the Plaintiffs' Steering Committee ("PSC") and Defendant's Steering Committee and held monthly status conferences to review the progress of the litigation.  *In re Vioxx Prods. Liab. Litig.*, 574 F. Supp. 2d 606, 608 n.3 (E.D. La. 2008), *reconsideration granted in part and denied in part on other grounds*, 650 F. Supp. 2d 549 (E.D. La. 2009).  Massive discovery commenced – and is still ongoing – and to date has included the production of millions of documents, the conduct of thousands of depositions, and argument on at least 1,000 discovery motions.  *In re Vioxx*, 574 F. Supp. 2d at 608-09.

**B.      Litigation Of Vioxx Economic-Loss Claims**

On August 2, 2005, the PSC filed several master complaints, including a Purchase Claims Master Class Action Complaint.  (Compl., D.790.)  The Purchase Claims Complaint alleged that Merck "intentionally, recklessly, and/or negligently concealed, suppressed, omitted, and misrepresented the risks, dangers, defects, and disadvantages of Vioxx."  (*Id.* ¶ 2.)  Plaintiffs further claimed that Merck engaged in a "marketing campaign [that] specifically targeted third party payors, physicians, and consumers, and was designed to convince them of both the therapeutic and economic value of Vioxx."  (*Id.* ¶ 9.)  The Purchase Claims Complaint alleged that despite Merck's representations, Vioxx "was no more effective than traditional and less expensive NSAIDs."  (*Id.* ¶ 11.)  Plaintiffs further alleged that, as a result of Merck's "omission, suppression, and concealment of this important information," Vioxx was "sold to, and purchased, or paid for by, the End-Payors at a grossly inflated price."  (*Id.* ¶ 12.)  The Purchase Claims Complaint sought relief under state consumer-protection laws as well as other causes of action. (*See id.* ¶¶ 199-324.)

Merck moved to dismiss the Purchase Claims Complaint on November 7, 2005. (D.1352.)  This Court held oral argument on that motion on February 2, 2006, but did not issue a ruling.  Instead, the Court stated on several occasions that it wanted to give Judges Carol Higbee and Victoria Chaney an opportunity to rule on the class certification motions pending in the economic-loss class actions in the New Jersey and California state court coordinated proceedings.  (*See, e.g.*, Tr. 20:10-21:11, Mar. 5, 2009 (attached as Ex. 1).)

The California and New Jersey courts issued rulings denying class treatment of economic-loss claims in 2009, citing the manageability problems that would preclude resolution of the class claims in a trial.  In the New Jersey action (*Martin/Kleinman*), Judge Higbee denied plaintiffs' motion for class certification on March 17, 2009, concluding that plaintiffs' claims

turn on highly individualized proof that precludes findings of predominance, superiority and typicality.  *See Kleinman v. Merck & Co.*, 8 A.3d 851, 862-63 (N.J. Super. Ct. Law Div. 2009). In the California Vioxx actions, Judge Chaney similarly refused to certify a proposed class of all California Vioxx consumers and TPPs in April 2009.  In her order denying class certification, Judge Chaney noted that in order to prevail on plaintiffs' claims under California law, "each class member must demonstrate . . . that the misrepresentation or nondisclosure influenced [his or her] prescription decisionmaking."  *In re Vioxx Consol. Class Action*, No. JCCP 4247, slip op. at 9 (Cal. Super. Ct. L.A. Cnty. Apr. 30, 2009) (attached as Ex. 2).  The court found that a trial could not possibly be conducted on a classwide basis because of the myriad, patient-specific factors that influenced physicians to prescribe Vioxx.  *Id.* at 10-11.  Both of these decisions survived appellate review; the New Jersey appellate courts denied leave to appeal, and the California Court of Appeal affirmed Judge Chaney's ruling denying class treatment.  *See In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 127-34 (2009), *petition for review & depublication denied*, No. S179699, 2010 Cal. LEXIS 3194, at *1 (Cal. Mar. 30, 2010); Order, No. AM-11-09T3 (N.J. Super. Ct. App. Div. Sept. 29, 2009); Order, No. M-504 (N.J. Jan. 14, 2010).  Citing these decisions, Merck moved to strike the Purchase Claims Complaint's class allegations in 2010, contending that the rulings established the unsuitability of such claims for resolution in a trial setting.  (*E.g.*, D.45,869-3, at 1-2.)[1]

Merck also moved in the same motion for judgment on the pleadings, arguing, among other things, that the economic-loss plaintiffs did not allege cognizable injuries.  (*Id.* at 16-20.)

---

[1]        Class certification was approved by a Missouri state court and upheld by a court of appeals in *Plubell v. Merck & Co.*, 289 S.W.3d 707 (Mo. Ct. App. 2009); class certification was reversed by the Kentucky Court of Appeals in *Merck & Co. v. Ratliff*, No. 2011-CA-000234-MR, 2012 Ky. App. LEXIS 31 (Ky. Ct. App. Feb. 10, 2012).  The *Ratliff* case was appealed to the Kentucky Supreme Court, but was voluntarily dismissed before that court issued any decision.

In its motion, Merck noted the general proposition that "[n]o injury, no tort, is an ingredient of every state's law," *In re Bridgestone/Firestone, Inc., Tires Products Liability Litigation*, 288 F.3d 1012, 1017 (7th Cir. 2002), and highlighted the ruling of the U.S. Court of Appeals for the Fifth Circuit in *Rivera v. Wyeth-Ayerst Laboratories*, 283 F.3d 315 (5th Cir. 2002).  *Rivera*, like other cases, rejected the notion that consumers who purchased a drug, received its benefit, and avoided allegedly undisclosed side effects could claim injury, explaining that the plaintiffs were really complaining about conduct that harmed others and were not themselves "among the injured."   283 F.3d at 320.  (*See* D.45,869-3, at 17-20 (citing *Rivera* and other similar decisions).)  The Court did not issue a ruling on the motion.

In 2012, Merck moved for judgment on the pleadings with respect to the consumer-protection claim in *District of Columbia ex rel. Walker v. Merck & Co.*  (D.63,656-1.)  Like the claims in the Purchase Claims Complaint, the *Walker* case disclaimed physical injury from Vioxx but nevertheless claimed entitlement to recover economic losses resulting from Merck's alleged misrepresentations regarding the alleged cardiovascular risks of Vioxx.  (*See id.* at 3.)  Merck again argued (among other things) that no cognizable injury had been pled, citing *Rivera* and other cases.  (*See id.* at 5-7.)  The Court granted this motion, finding "little to support Plaintiff's theory of economic injury" because "Plaintiff thought he was purchasing a medication that would relieve his pain without causing him personal injury . . . and that is what he received." (D.63,924, at 11.)  In this context, the Court held, "[t]here is no obvious, quantifiable pecuniary loss that Plaintiff incurred from purchasing a drug that worked for him and did not cause him any harm."  (*Id.*)  With nothing to "distinguish this case from *Rivera*," the Court concluded that judgment as a matter of law was appropriate.  (*Id.*)  The plaintiff moved for reconsideration, and

5

at that time, the parties began to focus their efforts on resolving all pending consumer suits alleging economic-loss injuries.

### C.    The Settlement Negotiations And Resulting Agreement

Over the next year, the parties engaged in extensive negotiations to resolve the consumer suits.  The attorneys involved in the negotiations have been engaged in the MDL proceeding since its initiation:  Russ Herman, the PSC chair; Elizabeth Cabraser and Dawn Barrios as heads of the consumer litigation committee on the plaintiffs' side; and Doug Marvin and John Beisner on behalf of Merck.  The negotiations spanned nine months and involved occasional consultation with Judge Fallon.

Under the resulting agreement, the parties have agreed to a common-fund settlement with a payment by Merck of up to $23 million for qualifying claims made for out-of-pocket expenditures by members of the Class.  Claimants can recover either:  (1) out-of-pocket costs for purchasing Vioxx and up to $75 in connection with a post-withdrawal medical consultation related to Vioxx use as defined in the Settlement Agreement; or (2) a one-time payment of up to $50 with proof of Vioxx prescription.  These amounts are subject to a pro rata reduction in the event that the combined value of all claims, as well as administrative and notice costs, exceeds the $23 million cap.  Recoveries are also subject to reduction for attorneys' fees, which are to be paid out of (not in addition to) the common fund.

This settlement is a fair, efficient and reasonable resolution of the disputed claims. Adverse rulings in other jurisdictions cast doubt on the suitability of economic-loss claims for resolution in a single class trial.  Even if a class were certified, binding Circuit precedent presents a significant hurdle for the theory of injury advanced in these cases, and there is a substantial possibility that class certification would be reversed.  Based on these facts, and on the experience

6

of counsel on all sides in litigating a range of Vioxx-related cases over the past several years, the settlement is appropriate.

      **D.**     **The Court's Preliminary Approval Of The Settlement And Subsequent Developments**

      This Court gave preliminary approval to the settlement on August 2, 2013.  (*See* D.64,526.)  It did so over the initial objections of James Ratliff, a member of the conditionally certified class who was also the named plaintiff in a Vioxx-related consumer-fraud class action against Merck in Kentucky state court.  (*See id.* at 2.)  Recently, the parties resolved the concerns expressed by Mr. Ratliff, prompting him to withdraw his objections to the MDL settlement.  Mr. Ratliff thereafter dismissed his Kentucky state-court case against Merck, *see* Stipulation and Agreed Order of Dismissal, *Ratliff v. Merck & Co.*, No. 04-CI-01493 (Pike Cir. Ct., Nov. 14, 2013) (attached as Ex. 3), and expressed his intent to participate in the settlement preliminarily approved by this Court.  In the months following the Court's preliminary approval of the settlement, three other purported objections have been lodged against the class settlement.  (*See* Letter from Patricia Schisler to Douglas Marvin ("Schisler Objection"), Oct. 28, 2013 (attached as Ex. 4); Notice of Objection to Class Settlement and Motion for Attorney's Fees by Geneva Meloy ("Meloy Objection") (attached as Ex. 5); Notice of Objection to Proposed Purchase Claims and Consumer Claims Settlement by Debbie Pace and Patricia Archuleta ("Pace and Archuleta Objection") (attached as Ex. 6).)  In addition, three individuals have opted out.  (*See* Letter from Sheila Martin to Vioxx Consumer Claims Administrator, Nov. 9, 2013 (attached as Ex. 7); Letter from Henrietta Morris, Sept. 24, 2013 (attached as Ex. 8); Letter from Wardell Harris Jr., Sept. 25, 2013 (attached as Ex. 9).)

## ARGUMENT

### I.   THE COURT SHOULD GRANT FINAL APPROVAL TO THE SETTLEMENT AS FAIR, REASONABLE AND ADEQUATE.

As this Court has recognized, "there is a 'strong judicial policy favoring the resolution of disputes through settlement.'"  *Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 843 (E.D. La. 2007) (quoting *Smith v. Crystian*, 91 F. App'x 952, 955 (5th Cir. 2004)); *see also, e.g.*, *Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982) (same).  This policy is particularly acute in class actions and other complex, aggregate mass tort cases, which threaten protracted litigation and the expenditure of enormous judicial resources.  *See Turner*, 472 F. Supp. 2d at 843 ("The public interest favoring settlement is especially apparent in the class action context where claims are complex and may involve a large number of parties, which otherwise could lead to years of protracted litigation and sky-rocketing expenses."); *accord Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) ("Particularly in class action suits, there is an overriding public interest in favor of settlement."); *see also Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 311 (3d Cir. 2011) ("This presumption [in favor of voluntary settlement agreements] is especially strong in class actions and other complex cases . . . because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by the federal courts.") (internal quotation marks and citation omitted), *cert. denied*, 132 S. Ct. 1876 (2012).  Because "settlement is the preferred means of resolving [class action] litigation," there is a "strong presumption in favor of finding [such] a settlement fair."  *Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 2d 714, 720 (E.D. La. 2008) (internal quotation marks and citation omitted); *see also Turner*, 472 F. Supp. 2d at 843 ("a presumption is made in favor of the settlement's fairness, absent contrary evidence").

8

Courts within the Fifth Circuit apply the following six factors in determining whether to grant final approval to a class action settlement:

> (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and absent class members.

See Reed v. Gen. Motors Corp., 703 F.2d 170, 172 (5th Cir. 1983).  As set forth more fully below, all six of these factors support final approval of the class settlement.

### A.      The Settlement Is Free Of Fraud Or Collusion.

Under the first *Reed* factor, the Court must determine whether the settlement was procured through fraud or collusion between the parties.  The Court "may presume that no fraud or collusion occurred between counsel[] in the absence of any evidence to the contrary."  *Collins*, 568 F. Supp. 2d at 725; *see also Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992) ("Absent evidence of fraud or collusion, such settlements are not to be trifled with."). Here, there is zero evidence of fraud or collusion between the parties in reaching the settlement. To the contrary, the settlement was negotiated at arm's length over an extended period of time by experienced counsel at the Court's urging.  During these discussions, the parties considered multiple proposals before reaching the agreement that this Court has already preliminarily approved.  Such a negotiation process, which is undertaken during the course of contested litigation, is strong evidence that the settlement is fair and satisfies the requirements of Rule 23. *See In re Train Derailment Near Amite La.*, MDL No. 1531, 2006 WL 1561470, at *19 (E.D. La. May 24, 2006) ("The fact that a class action settlement is reached after arms' length negotiations by experienced counsel generally gives rise to a presumption that the settlement is fair, reasonable, and adequate."); *see also Domingue v. Sun Elec. & Instrumentation, Inc.*, No. 09-682, 2010 WL 1688793, at *1 (M.D. La. Apr. 26, 2010) ("[T]hat this settlement is the negotiated

9

result of an adversarial proceeding is an indication of its fairness.").  Thus, the first *Reed* factor

weighs in favor of granting final approval to the settlement.

      **B.**     **Litigation Of Plaintiffs' Claims Would Be Complex, Expensive And Lengthy.**

      The second *Reed* factor requires the Court to assess the complexity, expense and duration

of litigation should the case proceed to trial.  In assessing this factor, courts should "consider the

vagaries of litigation and compare the significance of immediate recovery by way of the

compromise to the mere possibility of relief in the future, after protracted and expensive

litigation."  *In re Shell Oil Refinery*, 155 F.R.D. 552, 559-60 (E.D. La. 1993) (finding that this

factor weighed in favor of final approval given the "voluminous record," the "over 240,000

hours of attorney and staff time and over 13 million dollars in expenses" incurred to date)

(internal quotation marks and citation omitted).  This factor weighs in favor of granting final

approval to a settlement where the case involves complex legal and factual claims, necessitating

drawn-out legal proceedings.  *See id.* at 559 ("There is no dispute that this case is one of the most

procedurally complex, expensive, and potentially lengthy cases in this district."); *see also In re*

*U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) ("Complex litigation . . . can occupy a

court's docket for years on end, depleting the resources of the parties and the taxpayers while

rendering meaningful relief increasingly elusive.").

      Here, there can be no dispute that the "vagaries of litigation" are significant and compare

unfavorably to the prospects for immediate relief.  After all, considerable work would be

required before the present action could proceed to trial.  For one thing, the parties would be

forced to devote significant time and resources to briefing complex issues regarding the

suitability of trying consumer-fraud claims under different states' laws in a single class

proceeding.  *See Garza v. Sporting Goods Props., Inc.*, No. SA-93-CA-1082, 1996 U.S. Dist.

LEXIS 2009, at *45 (W.D. Tex. Feb. 6, 1996) (granting final approval to class settlement; "class

certification would become a major battleground before the Court could even consider the various issues concerning the merits of the Case and the incorporation of products liability/warranty laws from all fifty states"). In addition, the parties would have to grapple with highly individualized evidence regarding causation – a fundamental element of each plaintiff's consumer-fraud claims. *See, e.g.*, *Kleinman*, 8 A.3d at 862-63 ("individualized determination would be required for each plaintiff to reveal whether the concealment of the [cardiovascular] risk information had a causal relationship to the patient or doctor's decision whether or not to use or prescribe Vioxx"); *In re Vioxx*, No. JCCP 4247, slip op. at 11 (finding that "plaintiffs' and their physicians' reliance on defendant's representations or nondisclosures [were] not subject to common proof"), *aff'd*, 180 Cal. App. 4th at 133-34 (upholding trial court's order denying class certification because, *inter alia*, different Vioxx users and their doctors placed different levels of importance on risk information depending on the user's particular medical needs). In other words, significantly more time would be required before any individual class member could potentially obtain any recovery. *See Klein v. O'Neil, Inc.*, 705 F. Supp. 2d 632, 651 (N.D. Tex. 2010) ("When the prospect of ongoing litigation threatens to impose high costs of time and money on the parties, the reasonableness of approving a mutually-agreeable settlement is strengthened."). In short, "contentious motion practice on behalf of virtually all parties involved" in this case "would undoubtedly continue on a protracted litigation path absent approval of the proposed settlement agreement." *Faircloth v. Certified Fin. Inc.*, No. 99-3097, 2001 WL 527489, at *4 (E.D. La. May 16, 2001) (granting final approval to settlement, reasoning that "should this complex litigation continue on towards trial, it is most likely that the case would last several more years and cost this Court and the parties involved an enormous amount of money"). Because many of "the most controversial and hard-fought of all the issues

in this case" have yet to be litigated, *Salinas v. Roadway Express, Inc.*, 802 F.2d 787, 790 (5th Cir. 1986), the settlement "eliminates the transaction costs that further proceedings would impose" and "provides relief for the class sooner than continued litigation would," *Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir. 2004).  Accordingly, this factor too supports final approval.

**C.**     **The State Of This Proceeding Supports Settlement.**

The third factor considers "whether the parties have obtained sufficient information to evaluate the merits of the competing positions."  *In re Educ. Testing Serv. Praxis Principles of Learning & Teaching: Grades 7-12 Litig.*, 447 F. Supp. 2d 612, 620 (E.D. La. 2006) (internal quotation marks and citation omitted).  "Thus, the question is not whether the parties have completed a particular amount of discovery, but whether the parties have obtained sufficient information about the strengths and weaknesses of their respective cases to make a reasoned judgment about the desirability of settling the case on the terms proposed."  *Id.* at 620-21; *see also Schwartz v. TXU Corp.*, Nos. 3:02-CV-2243-K et al., 2005 U.S. Dist. LEXIS 27077, at *64 (N.D. Tex. Nov. 8, 2005) ("Formal discovery is not a prerequisite to settlement.").  To this end, "a court may consider information available to the parties which was developed in prior or related proceedings" in assessing whether the parties are in a position to execute a settlement. *Neff v. VIA Metro. Transit Auth.*, 179 F.R.D. 185, 209-10 (W.D. Tex. (1998).

This factor is clearly satisfied here, given the parties' years of involvement in this litigation and participation in other Vioxx-related cases.  The parties have engaged in extensive discovery; tried multiple cases; and, after much effort on the part of both the Court and the parties, resolved tens of thousands of cases in multiple Vioxx-related settlements.  The most recent of such settlements is the nationwide purchaser class-action settlement that has been preliminarily approved by this Court.  The negotiations that resulted in this settlement were

12

informed by the knowledge of counsel gained by years of involvement in the Vioxx MDL proceeding.  In light of counsel's unique familiarity with the relevant factual and legal issues with respect to claims pertaining to Vioxx (including those for economic losses), the parties unquestionably "have obtained sufficient information about the strengths and weaknesses of their respective cases to make a reasoned judgment about the desirability of settling the case on the terms proposed."  *In re Educ. Testing*, 447 F. Supp. 2d at 620.  Thus, this factor too supports final approval of the settlement.

### D.  Plaintiffs Face Serious Risks On The Merits.

"The probability of success on the merits is the most important *Reed* factor."  *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1065 (S.D. Tex. 2012).  Under this factor, courts compare the settlement terms with the likely rewards the class would receive at trial.  *Reed*, 703 F.2d at 172; *see also Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 83 (S.D.N.Y. 2007) ("the court must compare the terms of the compromise with the likely rewards of litigation") (internal quotation marks and citation omitted).  Where – as here – both certification of a litigation class and the merits of plaintiffs' underlying claims are "hotly contested," the outcome of continued litigation is "highly uncertain" such that the benefit of settlement far outweighs the potential recovery class members may obtain at trial.  *See Burford v. Cargill, Inc.*, No. 05-0283, 2012 U.S. Dist. LEXIS 161292, at *15 (W.D. La. Nov. 8, 2012) (granting final approval to settlement; "The outcome both as to certification of a litigation class and as to the merits is highly uncertain and proceeding in this matter would be time-consuming, costly, and risky for all parties involved. Viewed through this prism, the proposed settlement is highly beneficial to the settlement class[.]"); *see also, e.g., In re Corrugated Container Antitrust Litig.*, 659 F.2d 1322, 1326-27 (5th Cir. 1981) (affirming district court's finding that this factor favored approving the settlement when the class faced major obstacles in

13

establishing proof of liability and damages); *In re FEMA Trailer Formaldehyde Prod. Liab. Litig.*, No. 2:07-MD-1873, 2012 U.S. Dist. LEXIS 146679, at *6 (E.D. La. Sept. 27, 2012) ("Class Members have a low individual likelihood of success on the merits given the fact that the three bellwether trials conducted have all resulted in complete defense verdicts[.]").

If the parties proceeded to litigation, plaintiffs would face significant factual and legal hurdles, including with respect to class certification, liability and damages.  After all, as described above, plaintiffs pursuing Vioxx-related economic-loss claims similar to those at issue here lost on class certification in New Jersey and California state court.  Class certification outside the settlement context would be fraught with even greater uncertainties, as it involves consumer-fraud "claims under the laws of the fifty states and the District of Columbia."  *In re Heartland*, 851 F. Supp. 2d at 1066.  "Absent settlement, the state-law variations would have to be analyzed carefully to be sure they did not make trial unmanageable . . . present[ing] 'a . . . significant challenge to certifying the class.'"  *Id.* (quoting *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 290 (W.D. Tex. 2007)).  Further, plaintiffs would have serious difficulties certifying a litigation class of consumer-fraud claims in light of the highly individualized evidence regarding causation, as illustrated in the New Jersey and California cases in *Kleinman* and *In re Vioxx*.  As Judge Higbee explained, the "[t]he decision of whether to prescribe a medication is made upon a host of ***individualized*** factors, including other risk factors the plaintiffs possessed and whether other drugs were effective in relieving [each] plaintiff['s] pain."  *Kleinman*, 8 A.3d at 862 (emphasis added).  Thus, an "individualized determination would be required for each plaintiff to reveal whether the concealment of the [cardiovascular] risk information had a causal relationship to the patient or doctor's decision whether or not to use or prescribe Vioxx."  *Id.* at 862-63.  The California Court of Appeal reached the same result in a similar case in *In re Vioxx*,

holding that "individual [causal] issues prevailed over common issues, [which] justif[ied] denial of class certification."  180 Cal. App. 4th at 134.  Finally, as this Court previously recognized in the *Walker* case, whether class members in the present case have any cognizable injury is dubious at best:  "[t]here is no obvious, quantifiable pecuniary loss that [a plaintiff] incur[s] from purchasing a drug that worked for him and did not cause him any harm."  (D.63,924, at 11.)  Each of these obstacles calls into serious doubt plaintiffs' ability to prevail through litigation, further demonstrating that the settlement is proper.  *See In re Heartland*, 851 F. Supp. 2d at 1066 ("Against these risks are the concrete benefits that the proposed settlement provides the Consumer Plaintiffs.").

E.    **The Settlement Benefits Are Generous Given The Range of Possible Recovery Through Litigation.**

The fifth relevant factor considers whether a settlement represents a fair, reasonable and adequate estimation of the value of a particular case.  *In re Combustion, Inc.*, 968 F. Supp. 1116, 1129 (W.D. La. 1997).  In applying this factor, the "trial court should not make a proponent of a proposed settlement justify each term of [the] settlement against a hypothetical or speculative measure of what concessions might have been gained; inherent in compromise is a yielding of absolutes and an abandoning of highest hopes."  *Cotton*, 559 F.2d at 1330 (internal quotation marks and citation omitted).  Rather, all that is required is that the "settlement's terms fall within *a reasonable range of recovery*, given the likelihood of the plaintiffs' success on the merits."  *In re Heartland*, 851 F. Supp. 2d at 1067 (internal quotation marks and citation omitted).  Thus, this factor is satisfied where the benefits provided by the settlement are in line with the range of possible recoveries in similar cases.  *See Spillman v. RPM Pizza, LLC*, No. 10-349-BAJ-SCR, 2013 U.S. Dist. LEXIS 72947, at *17 (M.D. La. May 23, 2013) ("The settlement reached is also within the range of possible recoveries and court approvals when compared to other TCPA cases

15

which have had settlements approved by the courts in this and other districts.").  As part of its

analysis, "'the evaluating court must . . . guard against demanding too large a settlement based

on its view of the merits of the litigation; after all, settlement is a compromise, a yielding of the

highest hopes in exchange for certainty and resolution.'"  *In re Lupron® Mktg. & Sales Practices*

*Litig.*, 228 F.R.D. 75, 98 (D. Mass. 2005) (citation omitted).

 Under the terms of the settlement, each member of the settlement class who qualifies for

payment may obtain recovery of either:  (1) his/her out-of-pocket expenditures for the purchase

of Vioxx for personal or family use and up to seventy-five dollars for his/her other out-of-pocket

costs and losses in connection with a post-withdrawal medical consultation related to Vioxx; or

(2) a one-time payment of up to fifty dollars with proof of Vioxx prescription.  In other words,

class members who qualify are entitled to a full refund of their out-of-pocket expenditures on

Vioxx, yielding potentially thousands of dollars depending on one's duration of usage of Vioxx.[2]

The payments provided for in the settlement exceed those in other consumer-fraud settlements

seeking economic losses in connection with pharmaceutical drugs.  *See, e.g.*, *In re Diet Drugs*

*(Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig.*, MDL No. 1203, 2000 U.S.

Dist. LEXIS 12275, at *69 (E.D. Pa. Aug. 28, 2000) (granting final approval to settlement

providing refunds to consumer class members who purchased drugs subject to $500 cap); *Nigh v.*

*Humphreys Pharmacal, Inc.*, No. 12cv2714-MMA-DHB, 2013 U.S. Dist. LEXIS 161215, at *7-

8, *22 (S.D. Cal. Oct. 23, 2013) ("the Settlement amount" in consumer-fraud case involving

alleged fraudulent marketing of drugs was "fair and reasonable" where it provided class

members a refund up to $10 for each drug purchased subject to a cap of $100 per household); *In*

---

[2] Class members with prescription drug coverage are limited to what they spent on prescriptions – i.e., co-pays – because third-party payors have already been compensated in a separate settlement program, as this Court has previously recognized.  *In re Vioxx*, 869 F. Supp. 2d at 729-30.

*re Lupron*®, 228 F.R.D. at 87 (approving consumer-fraud settlement involving allegedly inflated drug prices that entitled consumers to recover up to "30 percent of their total out-of-pocket payments for Lupron®, or $100, whichever is greater").

In addition, the documentation requirements for obtaining full out-of-pocket refunds are fair and reasonable.  There are a number of different ways in which a class member can qualify, including submitting a receipt, cancelled check, or credit card showing out-of-pocket expenditures on the drug, or submitting pharmacy records showing that Vioxx was prescribed to the class member and at what cost.  (*See* Vioxx MDL Consumer Settlement Agreement ¶ 11.2.) And even those class members who are unable to furnish this information are still eligible to receive a one-time payment of up to fifty dollars with proof of a Vioxx prescription.  (*Id.* ¶ 11.2.1.)

In short, the benefits to class members in this case are substantial, particularly in light of the fact that "the lower band of the [class members'] range of recovery is zero:  a nationwide or multistate class perhaps could not be certified under Rule 23, or a judge or jury could conclude that [Merck] was not liable."  *In re Heartland*, 851 F. Supp. 2d at 1067.

**F.**     **The Opinions Of Class Counsel, Class Representatives And Absent Class Members Favor Settlement.**

 Finally, in evaluating a proposed class settlement, the Court should rely both on counsel, who know the strengths and weaknesses of their cases, as well as the absent class members.  As this Court has recognized, "counsel's opinion should be presumed reasonable because they are in the best position to evaluate fairness due to an intimate familiarity with the lawsuit."  *Turner*, 472 F. Supp. 2d at 852.  And reliance on these individuals' views regarding the fairness and reasonableness of a class action settlement is particularly appropriate where – as here – "counsel for both parties have significant experience in litigating and negotiating settlement of class

17

actions." *DeHoyos*, 240 F.R.D. at 287 (internal quotation marks and citation omitted); *see also*

*Cotton*, 559 F.2d at 1330 ("the trial court is entitled to rely upon the judgment of experienced

counsel for the parties").  Class counsel and counsel for Merck are intimately familiar with the

factual and legal aspects of this case, and have substantial experience litigating and settling other

Vioxx cases.  Therefore, their views that the settlement is fair, reasonable and adequate are

entitled to substantial weight, weighing strongly in favor of final approval.

As noted above, only three objections to final approval have been received,[3] and just

three persons have submitted requests to opt out.  "While the fact that a relatively small

percentage of the class members objects to a proposed settlement is not dispositive, '[c]ourts

have taken the position that one indication of the fairness of a settlement is the lack or small

number of objections.'"  *Hammon v. Barry*, 752 F. Supp. 1087, 1092-93 (D.D.C. 1990) (quoting

2 Newberg on Class Actions § 11.47, at 463 (2d ed. 1985)); *In re Shell Oil*, 155 F.R.D. at 566-67

(small number of objections and opt outs provided indicia of fairness and adequacy of the

settlement).  Further, the number of individuals who have already filed claims seeking the

benefits of the settlement (nearly 2,200 to date) demonstrates widespread approval of the

settlement.  (*See* Status of Claimant Activity, Nov. 11, 2013 (attached as Ex. 10).)[4]  The views of

these absent class members should also be taken into account, further justifying final approval of

the settlement.

In sum, each of the six factors identified by the Fifth Circuit as bearing on the fairness,

reasonableness and adequacy of a preliminarily approved class settlement counsels in favor of

granting final approval to the settlement in this litigation.

---

[3]     As previously explained, while a fourth objection was filed, it has since been withdrawn.

[4]     This number will likely increase significantly, as class members have until May 6, 2014, to file a claim to
recover under the Settlement Agreement.

## II.   CERTIFICATION OF THE CLASS IS APPROPRIATE FOR SETTLEMENT PURPOSES.

When a court is "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems." *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997).  Nonetheless, "the criteria of Rule 23, particularly th[ose] found in subsections (a) and (b), must still be satisfied." *In re Vioxx Prods. Liab. Litig.*, MDL No. 1657, 2013 U.S. Dist. LEXIS 134362, at *11 (E.D. La. Aug. 27, 2013) (granting final approval to class settlement).

Here, all of the relevant requirements of Rule 23 are met for purposes of certifying a settlement class.[5]

### A.   Numerosity

Under Rule 23(a), the class must be sufficiently numerous to make joinder impracticable. *See* Fed. R. Civ. P. 23(a)(1).  There is no question that numerosity is satisfied here.  The settlement class encompasses all purchasers of Vioxx nationwide, which would include many thousands of individuals.

### B.   Commonality

The commonality requirement of Rule 23(a)(2) is also met in this case for purposes of this settlement.  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) (certifying settlement class and noting that the "existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class"); *Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548 (RLE), 2012 U.S. Dist. LEXIS 53556, at *9-10 (S.D.N.Y. Apr. 16, 2012) ("[s]ettlement" itself "provides an

---

[5]      Merck does not waive the right to object to class certification de novo in the event the proposed settlement is terminated for any reason.

answer to the common issues raised by all class members, regardless of [the] specific type of injury" they may have sustained).

In this case, plaintiffs allege that Merck made misstatements regarding the alleged risks of Vioxx to all purchasers of the drug nationwide.  As a result, there is a common question as to whether Merck's statements about the drug were accurate, making certification appropriate for settlement purposes.

C.   **Typicality**

The typicality requirement of Rule 23(a)(3) "'refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought.'" 1 Newberg on Class Actions § 3:13 (4th ed. 2002) (quoting *Weinberger v. Thornton*, 114 F.R.D. 599, 603 (S.D. Cal. 1986).  In other words, courts must determine "'whether other [class] members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same conduct.'"  *Id.*  (quoting *Hanan v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)). The measure of whether a plaintiff's claims are typical is whether the nature of the plaintiff's claims, judged from both a factual and a legal perspective, are such that in litigating his or her personal claims he or she reasonably can be expected to advance the interests of absent class members. *See, e.g.*, *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156-57 (1982).

Here, plaintiffs claim that Merck made misrepresentations about the safety of Vioxx and that, as a result of those alleged misstatements, they lost money in purchasing Vioxx.  Thus, the named plaintiffs claim that they were harmed in a manner similar to the proposed class. Additionally, the named plaintiffs have not asserted any claims different from, or antagonistic to, those of the proposed class they seek to represent for purposes of settlement.  Accordingly, their claims are typical of the proposed class members for settlement purposes.

20

**D.**     **Adequacy Of Representation**

Rule 23(a)(4) requires that the named class representative "not possess interests which are antagonistic to the interests of the class."  1 Newberg on Class Actions § 3:21 (4th ed. 2002).  In addition, the named class representative's counsel "must be qualified, experienced, and generally able to conduct the litigation."  *Id.*; *see also Amchem*, 521 U.S. at 625-26 ("[A] class representative must be part of the class and possess the same interest and suffer the same injury as the class members.") (internal quotation marks and citation omitted).  There is nothing to suggest that this requirement has not been met.  The named class representatives are members of the settlement class they seek to represent and do not possess any interests antagonistic to the class with respect to their claims against Merck.

Class counsel is also adequate.  Class counsel have been involved in the management of numerous complex class action cases, including years of coordinating plaintiffs' claims in this MDL proceeding.  Accordingly, class counsel possess adequate information concerning the strengths and weaknesses of the claims against Merck to advocate on behalf of the entire class.  As a result, the adequacy-of-representation requirement is readily satisfied for purposes of certifying the settlement class.

**E.**     **Common Questions Of Law And Fact Predominate**

Rule 23(b)(3)'s predominance requirement "asks whether a class suit for the unitary adjudication of common issues is economical and efficient in the context of all the issues in the suit."  2 Newberg on Class Actions § 4:25 (4th ed. 2002); *see also Amchem*, 521 U.S. at 623 ("The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.").  In this case, it is most efficient to resolve the claims of all class members through a nationwide class settlement.  As set forth above, each class member alleges that Merck made misrepresentations about the risks of Vioxx and that those

21

misrepresentations caused purchasers of the drug to lose money.  Accordingly, it makes good sense to resolve all of their claims via a nationwide settlement agreement that ensures that funds are available to compensate them for their alleged damages.

In addition to the predominance requirement, Rule 23(b)(3) requires that the class action device be superior to other methods of adjudication.  Factors the Court may consider include:  (a) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (d) the difficulties likely to be encountered in the management of a class action.  Fed. R. Civ. P. 23(b)(3)(A)-(D).  Consideration of each of these factors weighs in favor of certification of the proposed settlement class.

As an initial matter, the interest of individuals in controlling this litigation is limited.  The damages allegedly suffered by the settlement class members are not sufficient to warrant individual litigation, since the amount spent by individual class members on Vioxx is slight when compared to the cost of litigating consumer-fraud claims in federal court.  *See Amchem*, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.  A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.") (internal quotation marks and citation omitted).  Importantly, settlement class members who wish to pursue their own individual lawsuits can request exclusion from the class.

The other superiority factors also weigh in favor of class certification for settlement purposes.  For example, it is clearly desirable to concentrate the litigation in this forum because this Court has presided over the ongoing, massive Vioxx MDL proceeding for many years.  In addition, the proposed settlement resolves the substantial manageability problems that would arise from attempting to try thousands of Vioxx purchasers' claims in a single action before a single jury.  The settlement will permit settlement class members to achieve individual relief without burdening the parties and the judicial system with a complicated and expensive class action trial.

For all of these reasons, the settlement class meets the requirements for certification under Rule 23.

## III.   THE FORM AND METHOD OF CLASS NOTICE SATISFY RULE 23 AND DUE PROCESS.

In the Preliminary Approval Order, the Court found that the "proposed notice plan will provide the best practicable notice to the putative Class under the circumstances, satisfying the requirements of Rule 23 and due process."  (D.64,526, at 3.)  Indeed, the comprehensive Notice Program approved by the Court and implemented by the Class Notice Agent easily satisfies the requirements of Rule 23 and due process.

*First*, the notice distribution method and notice content satisfy Rule 23(c)(2).  In any action certified under Rule 23(b)(3) – including those for settlement purposes only – "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *see also Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985).  "'[T]he notice must clearly and concisely state in plain, easily understood language:  (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or

23

defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members . . . .'" *Burford*, 2012 U.S. Dist. LEXIS 161292, at *18-19 (quoting Fed. R. Civ. P. 23(b)(2)(B)).

Here, the notice disseminated to class members clearly and concisely apprises class members of their rights and how to exercise them under the proposed settlement agreement. The notice materials clearly and concisely inform class members of the relevant aspects of the litigation and the settlement, including:  (i) the definition of who is a class member; (ii) the history of the litigation; (iii) the terms of the settlement; (iv) the binding effect of any judgment for those persons who are class members; (v) the right of class members to request exclusion (opt out) from the class and the procedures and deadlines for doing so; (vi) the right of class members to object to any aspect of the settlement and/or to appear at the Fairness Hearing and the procedures and deadlines for doing so; (vii) the date and time of the Fairness Hearing; (viii) how to obtain additional information; (ix) how to make a claim; and (x) information on Class Counsel's fees and expenses.  (*See* Long Form Notice, Exhibit E to Vioxx MDL Consumer Settlement Agreement; *see also* Short Form Notice, Exhibit D to Vioxx MDL Consumer Settlement Agreement.)  Further, the notice materials are written and formatted to communicate this information in a manner that would be understood by members of the class who, presumably, are not lawyers.  *See, e.g.*, *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, MDL No. 2047, 2012 WL 92498, at *13 (E.D. La. Jan. 10, 2012) (approving notice "written in plain and straightforward language" that "objectively and neutrally apprise[] all Class Members [of] the nature of the action, the definition of Class . . . and relevant deadlines and restrictions, as

24

well as the date and location of the final Fairness Hearing"); *In re VMS Sec. Litig.*, No. 89 C 9448, 1992 U.S. Dist. LEXIS 12141, at *15 (N.D. Ill. Aug. 11, 1992) (class notice sufficient where it "'may be understood by the average class member'") (citation omitted).

Moreover, in consultation with a notice expert firm, Kinsella Media, LLC ("KM"), counsel have worked to ensure maximum exposure among class members to the notice materials. Dr. Shannon Wheatman, a Senior Vice President of KM, scrutinized the Notice Program in this case and concluded that it was "designed to reach the greatest practicable number of Class Members."  (*See* Decl. of Dr. Shannon R. Wheatman ¶ 15 (attached as Ex. 11).)  Dr. Wheatman, who has given expert testimony regarding class notice in numerous class actions and even helped develop "model" notice forms for the Federal Judicial Center, explained that the Notice Program in this case would "effectively reach 80% of Adults 50+ . . . deliver a Notice that will capture settlement Class Members' attention, and provide them with the information necessary to understand their rights and options."  (*Id.* ¶¶ 4-7, 38.)  This includes notice placements in consumer magazines (*Jet* and *National Geographic*), newspaper supplements (*Parade* and *USA Weekend*), national network and cable TV advertising, and Internet banner advertising (AARP Online, AOL Media Network, Google Display Network, and Keyword Search Campaign), as well as a dedicated website, www.vioxxsettlement.com.  The paid and online media efforts have been amplified with an earned media outreach program, which included a multimedia press release with a post on various social networks; custom blogger outreach; alerts sent to major broadcast outlets, and photo and video distribution.  For all of these reasons, the Notice Plan, which is being faithfully implemented by the Notice Agent, complies with the requirements of Rule 23(c)(2)(B).

1143948v1

**Second**, the notice also satisfies Rule 23(e) and due process.  Rule 23(e) requires only that the Court "direct notice in a ***reasonable manner*** to all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1) (emphasis added).  Under this provision, subject to the minimum requirements of due process, the Court has complete discretion over the form and manner of notice.  *See DeHoyos*, 240 F.R.D. at 300-01 (granting final approval to settlement and noting that "the district court has virtually complete discretion as to the manner of giving notice to class members") (internal quotation marks and citation omitted).  Due process imposes a minimal requirement in this context – i.e., that notice be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the [settlement] and afford them an opportunity to present their objections."  *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).  That requirement is easily satisfied here given the use of a robust Notice Program that includes an easy-to-read website and widespread dissemination in multiple print and online media.  Accordingly, notice of the preliminarily approved class settlement is "reasonably calculated" to inform class members of the pendency of the settlement, as well as their right and opportunity to opt out of the agreement.

In sum, the form and content of the notice, coupled with the widespread dissemination of it under the Notice Plan, are reasonably calculated to reach all class members and therefore satisfied the dictates of both Rule 23 and due process.

## IV.    THE OBJECTIONS TO THE SETTLEMENT ARE WITHOUT MERIT.

"'A court should not withhold approval of a settlement merely because some class members object.'"  *IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 600 (E.D. Mich. 2006) (citation omitted) (granting final approval to settlement over several objections).  Rather, because a preliminarily approved settlement is presumptively reasonable, "'an individual who objects has a heavy burden of demonstrating that the settlement is unreasonable.'"  *DeHoyos*, 240 F.R.D. at

26

293 (citation omitted) (granting final approval to class action settlement over objections).  This principle is rooted in the Court's "obligation to protect the interests of the silent class majority, despite . . . opposition by a vocal minority to the settlement."  *IUE-CWA*, 238 F.R.D. at 600 (internal quotation marks and citation omitted).  Accordingly, the objectors in this case bear a "heavy burden" of demonstrating that the Court's preliminary approval order was erroneous.  As discussed below, none of the objectors comes anywhere close to meeting that burden.

The first objection, by Patricia Schisler, is in fact no objection at all.  Instead, the statement by Ms. Schisler is nothing more than an ad hominem attack on Merck, stating that "Mer[c]k should be held responsible in these cases.  I know the Lord is going to hold these people accountable . . . ."  (*See* Schisler Objection.)  Because Ms. Schisler does not actually purport to object to the settlement agreement, her statement should not weigh into the Court's assessment of Merck's motion.[6]

The objection by Geneva Meloy should also be rejected.  The objection is directed solely at the proposed fees provided for in the settlement agreement.  (*See* Meloy Objection.)  But Ms. Meloy "offers no reason for objecting to the Settlement" based on the proposed fees.  *See Moore v. Verizon Commc'ns, Inc.*, No. C 09-1823 SBA, 2013 U.S. Dist. LEXIS 122901, at *38 (N.D. Cal. Aug. 28, 2013) ("Irene Nelson objects to Class Counsel's request for attorneys' fees and

---

[6]     Ms. Schisler also failed to comply with the procedural requirements for objecting to the settlement agreement, as set forth in the Court's preliminary approval order.  This is so because the objection was not even filed with the Clerk of the Court – a basic requirement for objecting to the settlement agreement.  (D.64,526, at 9.)  Ms. Schisler also did not serve her objection on Mr. Herman, as required by the Court's Order.  (*Id.*)  According to the Court, "[o]bjections will be deemed waived if the procedures for objecting to the Proposed Settlement are not followed."  (*Id.*)  As other courts have recognized, objections that do not satisfy the procedural requirements imposed in a preliminary approval order need not be considered.  *See, e.g.*, *Kelly v. Phiten USA, Inc.*, 277 F.R.D. 564, 570 n.8 (S.D. Iowa 2011) (granting final approval and  refusing to "consider Mr. Kohlhagen's objection, as he failed to comply with the July 11 Order by failing to file a Notice of Intent to Object"); *Bynum v. Dist. of Columbia*, 412 F. Supp. 2d 73, 76-77 (D.D.C. 2006) ("Letters complaining about aspects of the settlement generally that did not comply with the procedure for making objections to the Bynum Settlement Agreement provided in ¶ 15 of the Class Notice will not be treated as objections.").  For this reason too, Ms. Schisler's objection should be disregarded.

1143948v1

expenses and Class Representative incentive awards.  However, Ms. Nelson offers no reason for objecting to the Settlement other than wanting 'the best for [her] in monetary settlement.' Therefore, Ms. Nelson's objection is OVERRULED.").  Nor could she, as the settlement agreement provides ***direct*** and ***substantial*** benefits to class members.  *See Radosti v. Envision EMI, LLC*, 760 F. Supp. 2d 73, 78 (D.D.C. 2011) (rejecting objection to "the size of the fee award" because the "settlement provides substantial benefits to the class members"); *see also In re Skechers Toning Shoe Prods. Liab. Litig.*, MDL No. 2308, 2013 U.S. Dist. LEXIS 67441, at *45 (W.D. Ky. May 10, 2013) (granting final approval to class settlement; the "award is reasonable in light of the substantial benefits counsel for *Grabowski* conferred on the class"). Because the settlement provides a substantial payout to class members, the proposed fees (32% of the benefits available to class members) are more than reasonable.  *See In re Philips/Magnavox Television Litig.*, No. 09-3072 (CCC), 2012 U.S. Dist. LEXIS 67287, at *49 (D.N.J. May 14, 2012) ("Fee awards ranging from 19 percent to 45 percent of the fund are considered reasonable. . . . The requested $1,575,000 fee and expense award is 39 percent of the $4 million cash fund[, which is reasonable.]") (citation omitted).  Ms. Meloy's objection should therefore be rejected.[7]

The third objection, by Debbie Pace and Patricia Archuleta, on behalf of New Mexico purchasers of Vioxx, is similarly flawed.  First, the objection primarily challenges communications between the PSC and counsel for the New Mexico class members, claiming that the "settlement package did not contain a list of putative New Mexico class members to whom notice was being sent, did not contain the proposed settlement agreement and exhibits, and did

---

[7]     Ms. Meloy's objection is also procedurally defective, as she did not serve the objection on Mr. Herman until two days after the deadline set by the Court.  (D.64,526, at 9.)  For this reason as well, the objection should be rejected.  *See, e.g.*, *Kelly*, 277 F.R.D. at 571 n.8; *Bynum*, 412 F. Supp. 2d at 76-77.

not provide the class certification exhibits attached to the Order granting preliminary class

certification." (*See* Pace and Archuleta Objection ¶ 6.)  This challenge is frivolous; the Vioxx

consumer settlement website, http://www.vioxxsettlement.com, contains the majority of these

documents.  The only piece of information not publicly available on the Vioxx settlement

website – a list of putative New Mexico class members to whom notice is being sent – does not

exist.  After all, notice in this case is not effected through direct mail to class members.  Rather,

the Notice Program endorsed by the Court envisioned a paid media notice program targeted at

unidentified class members.  And while the objectors also complain that they were not provided

with exhibits attached to the Order preliminarily approving the settlement agreement, the Court's

ruling was never accompanied by any such exhibits.  (*See* D.64,526.)

Second, these objectors also contend that the settlement agreement does not provide New

Mexico class members with enough money.  (*See* Pace and Archuleta Objection ¶ 8.)

Specifically, these individuals assert that New Mexico class members are only eligible to receive

up to $95,000 in the aggregate under the settlement agreement.  (*Id.*)  But there is no state-

specific cap imposed by the settlement agreement.  To the extent the New Mexico objectors are

complaining that their state will receive a smaller share of the settlement because it is less

populous than other states and is home to fewer class members, that is not a proper basis for

challenging the agreement.  *See In re Compact Disc Minimum Advertised Price Antitrust Litig.*,

216 F.R.D. 197, 200 (D. Me. 2003) (granting preliminary approval to settlement in which "5.6

million CDs (1,960 carefully selected titles) will be distributed on a *pro rata* basis by population

to the various States, Commonwealths and Territories for public use and enjoyment"), *final*

*approval granted*, *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, MDL No. 1361, 2003 U.S. Dist. LEXIS 12663 (D. Me. July 9, 2003).[8]

For these reasons too, the Court should grant plaintiffs' motion for final approval of the settlement agreement.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should grant plaintiffs' motion for final approval of the settlement agreement in this action**.**

Dated:   November 22, 2103                    Respectfully submitted,


                                              /s/ Dorothy H. Wimberly
                                              Phillip A. Wittmann, 13625
                                              Dorothy H. Wimberly, 18509
                                              STONE PIGMAN WALTHER
                                              WITTMANN L.L.C.
                                              546 Carondelet Street
                                              New Orleans, LA 70130

                                              Douglas R. Marvin
                                              WILLIAMS & CONNOLLY LLP
                                              725 Twelfth St., N.W.
                                              Washington, DC 20005

                                              John H. Beisner
                                              Jessica Davidson Miller
                                              SKADDEN, ARPS, SLATE, MEAGHER &
                                              FLOM LLP
                                              1440 New York Avenue, N.W.
                                              Washington, DC 20005

                                              ATTORNEYS FOR MERCK SHARP &
                                              DOHME CORP.

---

[8]     The objection is also procedurally deficient because counsel did not receive it until November 12, 2013, making it untimely.  As made clear by the Court in its preliminary approval order, all objections had to be served on counsel "on or before November 9, 2013."  (D.64,526, at 8.)

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Memorandum has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail, upon Liaison Counsel Ann Oldfather by e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8C, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 22nd day of November, 2013.

*/s/ Dorothy H. Wimberly*
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361
dwimberly@stonepigman.com

Defendants' Liaison Counsel

31

1143948v1