# EXHIBIT XX

# FDA UNRESOLVED SAFETY CONCERNS

For use in:

**PLAINTIFF'S MOTION IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - THE MOVING PARTY MUST FOLLOW THE FEDERAL RULES OF CIVIL PROCEDURE FOR SUMMARY JUDGMENT, RULE 56, AND DEFENDANT MERCK HAS FAILED TO DO SO**

**PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANT MERCK et al. DESIGNED TO HOIST DEFENDANT UPON ITS OWN PETARD & DENUDE IT OF ALL DEFENSES**

Refers to:

MEDICAL OFFICER REVIEW

DIVISION OF ANTI-INFLAMMATORY, ANALGESIC AND OPTHALMIC DRUG PRODUCTS—HFD-550

sNDA #21042/s012

| | |
|---|---|
| Submission date: | 2/28/2001 |
| Submission type: | NDA supplement |
| Review date: | 12/15/2001 |
| Drug name: | rofecoxib (Vioxx) |
| Applicant: | Merck |
| Pharmacologic category: | anti-inflammatory |
| Proposed indications: | signs and symptoms of RA |
| Dosage form and route: | oral tablets, 25mg, daily |

Opposition To Defendant's Motion For Summary Judgment

With regards to the issue of causation of the femur fracture.

Plaintiff broke his femur while walking his daughter to the school bus one wintery morning. Plaintiff knows that his spinal fusion was in the process of collapsing, as described in Plaintiff's Ex. NN and MM, and Plaintiff now believes that he miss stepped due to a lessoned ability to walk properly at that time, and that has been his experience since that time as well; however, Plaintiff also believes that his taking of Vioxx also contributed to the fracture, and that the fracture had occurred due to the adverse effect Vioxx had been damaged the integrity of his bones, even in the absence of the fall, and the fracture took place simply due to the weight of his body bearing down on the femur.

The scientific evidence of this causation is contained in a document found on the FDA web site, and is now submitted as Plaintiff's Ex. YY, and on page 10, in the last paragraph it states as follows:

2

> **"A second area of concern is that there were more fractures in the rofecoxib 50 mg group as compared to naproxen in this data set, and this is consistent with the VIGOR study (also in a population of patients with RA) in which there were 41 (1%) and 29 (0.7%) fractures (all sites) in the rofecoxib and naproxen groups, respectively. The RA population is at high risk of osteoporosis because of the chronic use of steroids. The background fracture rate for this population is unknown. A recent study from Finland suggests that the risk of hip fracture is increased by three fold in patients with RA, as compared with that of non-RA patients. Since COX-2 is involved in regulation of bone metabolism, concerns have been raised regarding the long term bone effects of COX-2 inhibitors"**\*

\* _page 11 - Unresolved safety issue;_ **CENTER FOR DRUG EVALUATION AND RESEARCH; APPLICATION NUMBER: 21-042/S-007, S-008, S-010, S-012, S-013, S-014 and 21-052/S-004, S-005, S-006, S007, S-008, S-009**

This statement clearly shows that Vioxx increased the risk of fracture by in patients with rheumatoid arthritis by a factor of 41% in patients who had taken Vioxx for approximately one year. Plaintiff had rheumatoid arthritis and had been taking Vioxx for approx. 2 .65 years (32 months) at the time of his fracture. These material facts stand in stark contrast with Dr. Blavatsky's conclusions his declaration, see Defendant's Ex. 7 at paragraph 29, and had no reliance whatsoever on questionable or inadmissible evidence.

The fraud comes into play because Defendant Merck had marketed Vioxx for the unapproved use of treatment of rheumatoid arthritis (RA) which Plaintiff has, even before the Vigor study had been completed in or about March of 2000, and prior to the data of the Vigor study being made available to the FDA on or about March 27, 2001, and before even the review of the clinical study for safety had been submitted to the FDA on or about December 2001, and prior to the new label in or about April 2002; and defendant Merck gave no warning to the patients who had been taking Vioxx while being treated for Rheumatoid Arthritis (RA) even though the FDA had sent them a Warning Letter, see Plaintiff's Ex. A., and the material fact that taking Vioxx had shown a dramatic increase in fractures when taking Vioxx as compared to the standard treatment with naproxen, and thereby endangering the Plaintiff with the increased risk of fracture which he did suffer in or about January of 2003., but the reference also contained in the review that "Since COX-2 is involved in regulation of bone metabolism, concerns have been raised regarding the long term bone effects of COX-2 inhibitors, it gives further strength to Plaintiff's argue ment that the presumption that Vioxx is not safe in Post-Orthopedic Surgery based on the previously cited rat studies, is much more than a scintilla's worth of proof.

3