UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Vioxx | * | MDL Case No. 1657 |
| | * | |
| PRODUCTS LIABILITY | * | SECTION L |
| LITIGATION | * | |
| | * | JUDGE FALLON |
| *This document relates to* | * | |
| | * | MAGISTRATE JUDGE |
| *Maurice Robinson v. Merck & Co., Inc.*, | * | KNOWLES |
| 2:08-cv-01406-EEF-DEK | * | |
| | * | |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**DEFENDANT MERCK SHARP & DOHME CORP.'S MOTION TO DISMISS,
OPPOSITION TO PLAINTIFF'S MOTION TO AMEND, AND INCORPORATED
<u>OMNIBUS SUPPORTING MEMORANDUM</u>**

This Court dismissed Plaintiff Maurice Robinson's claims against Defendant Merck Sharp & Dohme Corp. ("Merck") with prejudice in 2009 after he failed to produce the case-specific expert report required by Pretrial Order No. 29 ("PTO 29"). Due to a clerical error, however, Mr. Robinson's case apparently remained open on the clerk's docket. The Court informed Mr. Robinson of that fact in 2010 when he contacted the court seeking appointment of an attorney. Notwithstanding receiving another, unexpected, opportunity to correct his deficiencies, Mr. Robinson did not produce the required expert report at that time, nor has he done so in the intervening years. Moreover, Mr. Robinson filed his lawsuit in 2008 alleging injuries that occurred in 1999 through 2003. That filing date falls well outside the applicable two-year Kansas statute of limitations. Accordingly, Plaintiff's claims should be dismissed with prejudice for failure to comply with PTO 29, as this Court originally concluded, and also because the claims are time-barred.

Nearly six years after the filing of his lawsuit, and almost four years after the Court informed Mr. Robinson that he had another opportunity to comply with the Court's outstanding orders, Mr. Robinson now seeks to amend his Complaint to allege new facts and injuries. *See* Pl.'s Mot. for Leave to File Supp. and Am. Compl. [Rec. Doc. 64681]. His proposed amendment, however, would be futile. The new injuries he alleges (like the injuries alleged in his original Complaint) also fall well outside of the applicable limitations period. Moreover, given its extreme delay, Plaintiff's proposed amendment is grossly untimely, and, if allowed, would unduly prejudice Merck. Plaintiff's motion for leave to amend should be denied.

## BACKGROUND

Plaintiff Maurice Robinson commenced this action *pro se* on February 12, 2008, by filing his Complaint in the United States District Court for the District of Kansas. The case was transferred into this multidistrict litigation ("MDL") by issuance of a conditional transfer order from the Judicial Panel on Multidistrict Litigation ("JPML") dated April 1, 2008. *See* Conditional Transfer Order (attached hereto as Ex. 1). In his Complaint, Mr. Robinson alleged that his late wife, Bobbie Robinson, took Vioxx from 1999 to 2001, and that her use of Vioxx caused her to experience shortness of breath. Compl. (attached hereto as Ex. 2) at 3. Mr. Robinson's Complaint also stated that Mrs. Robinson passed away in 2003 (two years after her alleged use of Vioxx), but it did not allege that Vioxx was the cause of her death. *Id*.

Because Mr. Robinson filed his case after November 9, 2007, PTO 29 applied to his claims. *See* PTO 29 at 1. Section II of PTO 29 required that, within forty-five (45) days of his case arriving in the MDL, Mr. Robinson produce a case-specific *Lone Pine* expert report and

2

other key discovery materials.[1]  Mr. Robinson's PTO 29 discovery materials were due in May, 2008.  Mr. Robinson did not meet that deadline.  Merck's counsel notified Mr. Robinson of his deficiencies on December 8, 2008, pursuant to PTO 29, and explained that it would seek dismissal of his case if he did not provide the case-specific expert report required by PTO 29 within thirty days.  *See* Dec. 8, 2008 Letter from E. Esber (attached hereto as Ex. 3).  No expert report was provided, and on January 20, 2009, Merck filed a Motion to Show Cause why the claims of Mr. Robinson and several other plaintiffs should not be dismissed [Rec. Doc 17639].  This Court issued the Order to Show Cause on January 30, 2009 [Rec. Doc. 17698], and Merck's counsel served a copy of the Order on Mr. Robinson and also provided him with the contact information for the *Pro Se* Curator at that time.  *See* Feb. 6, 2009 Letter from D. Wimberly (attached hereto as Ex. 4).  Mr. Robinson made no response to the Court's Order to Show Cause; nor did he attempt to communicate with anyone else associated with the MDL.  Thus, on April 30, 2009, the Court issued an Order dismissing Mr. Robinson's claims with prejudice for failure to comply with PTO 29.  *See* Apr. 30, 2009 Order [Rec. Doc. 18599] (attached hereto as Ex. 5).

Seven months later, in December 2009, Mr. Robinson submitted to the Court a one-page request not to dismiss his claims, along with a motion requesting the appointment of counsel. *See* Motion Not To Dismiss My Case [Rec. Doc. 31206]; Motion for Appointment of Counsel [Rec. Doc. 31205].  The Court denied Mr. Robinson's motion to appoint an attorney, and further explained that although Mr. Robinson's case had previously appeared on an order to show cause, his case still remained open at that time "due to clerical error."[2]  *See* Jan. 7, 2010 Order [Rec.

---

[1]  The required additional materials included pharmacy and medical records, an Amended and Supplemental Plaintiff Profile Form, and answers to interrogatories.

[2]  The April 30, 2009 dismissal order disposed of the claims of two plaintiffs in two different actions:  Mr. Robinson and Plaintiff Debra Pitts (*Debra Pitts v. Merck & Co., Inc.*, Case No. 2:08-cv-04560).  It appears that the dismissal order was entered on the

3

Doc. 31207]. The Court advised Mr. Robinson to work with the *Pro Se* Coordinator to be sure that he complied with all applicable pre-trial orders to avoid dismissal. *Id.* Shortly thereafter, Mr. Robinson submitted a Plaintiff Profile Form and authorizations for the collection of medical records in the forms required by PTO 29. *See* Am. and Suppl. Pl. Profile Form ("PPF") (attached hereto as Ex. 6). To this day, however, he has never submitted any of the other discovery material required by Section II of PTO 29, including the case-specific expert report that was the subject of Merck's 2009 Motion to Show Cause.

The case remained dormant for the following three years, until August, 2013 when Attorney Justin I. Woods, on an *ex parte* basis, sought and received from this Court permission to enter an appearance. [Rec. Docs. 64530 and 64544.] On November 6, 2013, Attorney Woods filed the pending motion on Plaintiff's behalf seeking leave to file a "supplemental and amended complaint."[3] *See* Mot. to Amend at 2.

Notably, Plaintiff's proposed amendment substantially departs from the allegations that previously formed the basis of Mr. Robinson's claims. Mr. Robinson's initial Complaint alleged that his wife Bobbie Robinson took Vioxx from 1999 to 2001, and that her use of Vioxx caused her to experience shortness of breath. Compl. (Ex. 2) at 3. In his PPF submitted in January 2010, Mr. Robinson identified a number of additional bodily injuries that he believes resulted from Mrs. Robinson's use of Vioxx: fainting episodes, complex heart disease, hypertension, obesity and fibroids, as well as a worsening of preexisting asthma. *See* PPF (Ex. 6) at 3. The

---

main docket of the Vioxx MDL and on the individual docket of the *Pitts* action (thereby closing that case), but it does not appear to have been entered on the individual docket of Mr. Robinson's case. *See* Case No. 2:08-cv-04560, Rec. Doc. 2; Case No. 2:05-md-01657, Rec. Doc. 18599.

[3] Merck was unaware that the Court's 2009 Order dismissing this case with prejudice had not been properly entered on the docket until counsel was contacted by Mr. Robinson seeking consent to his motion to amend.

PPF also noted that Mrs. Robinson had colon cancer, and was involved in a clinical trial through Memorial Sloan-Kettering Cancer Center at some point in time. *Id.* at 4, 30.  Neither the Complaint nor the PPF allege that Vioxx was the cause of Mrs. Robinson's death.

In contrast, the newly proposed amendment alleges that Mrs. Robinson ingested Vioxx until 2003 (not 2001, as initially alleged),[4] and further alleges that "[o]n April 10, 2003, Bobbie Jean Robinson suffered a full cardiac arrest which resulted in her death." *See* Pl.'s Proposed First Supplemental and Amended Complaint [Rec. Doc. 64681-2] at 2.  The proposed amended complaint also seeks to add derivative claims on behalf of Danielle Robinson, Mrs. Robinson's minor daughter.

## ARGUMENT

I.  **This Court Should Once Again Dismiss Plaintiff's Case For His Continued Failure To Comply With His *Lone Pine* Requirements.**

The reasons that this Court previously dismissed Mr. Robinson's claims with prejudice in 2009 still remain true in 2013:  Mr. Robinson has never submitted the required expert report, despite having now had almost six years to do so.  The express terms of PTO 29 provide that failure to "fully comply with the requirements of this Order" after ample opportunity to cure "shall lead to the dismissal of the claim with prejudice."  PTO 29 ¶ II.D.  Moreover, Federal Rules of Civil Procedure 16(f), 37(b)(2)(c), and 41(b) contemplate the dismissal of a party's claims as an appropriate sanction for failing to comply with a court order.  *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1486 (5th Cir. 1990) (citation omitted)*; see also* Fed. R. Civ. P. 16(f), 37(b)(2)(c), and 41(b).  Accordingly, this Court should again dismiss the

---

[4]   The initial Complaint attached pages from a prescription history for Mrs. Robinson for the date range of January 1, 1999 through October 20, 2004; those pages show some prescriptions for Vioxx in 1999, 2000, 2001 and 2002.  Compl. (Ex. 2) at 6-8.

5

claims of the Plaintiff Maurice Robinson with prejudice, pursuant to PTO 29 and Federal Rules 16(f), 37(b)(2)(c), and 41(b), for failure to comply with PTO 29's discovery requirements.

On numerous occasions, this Court has reviewed the propriety and importance of the discovery requirements set forth in PTO 28 and PTO 29—particularly the requirement for *Lone Pine* expert reports.  *See, e.g., In re Vioxx Prods. Liab. Litig.*, 557 F. Supp. 2d 741, 743 (E.D. La. 2008) (citing *Lore v. Lone Pine Corp.*, 1986 WL 637507 (N.J. Super. Nov. 18, 1986)).  "*Lone Pine* orders have been routinely used by courts to manage mass tort cases," and serve "to identify and cull potentially meritless claims and streamline litigation." *Id.* (citations and internal quotation marks omitted).  This Court has concluded that "it is not too much to ask a Plaintiff to provide some kind of evidence to support their claim that Vioxx caused them personal injury," and there must be some "minimal showing consistent with Rule 26 that there is some kind of scientific basis that Vioxx could cause the alleged injury." *Id.* at 744-45.

Here, over five years after his PTO 29 expert report was due, Plaintiff Robinson has failed to make the minimal required showing of causation.  Indeed, he has made no showing *at all*, even after facing the dismissal of his claims with prejudice and after being specifically advised by this Court to comply with all applicable pretrial orders.  Accordingly, his claims should be dismissed with prejudice.  *See Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 340 (5th Cir. 2000) (affirming dismissal of the claims of 1,600 plaintiffs for their failure to provide basic *Lone Pine* information).

## II.     Plaintiff's Claims Are Untimely Under Kansas Law.

Plaintiff Robinson's claims should also be dismissed for the independent reason that they are time-barred:  Each of Plaintiff's alleged injuries—as set forth in the initial Complaint, the

PPF, and now in his proposed amended complaint—fall well outside of the applicable Kansas statute of limitations.[5]

Kansas observes a two-year statute of limitations for products liability claims. *See* Kan. Stat. Ann. §§ 60-3302, 60-3303(c), 60-513(a); *see also Fennesy v. LBI Mgt., Inc.*, 847 P.2d 1350, 1355 (Kan. Ct. App. 1993) ("The [Kansas Product Liability Act] provides a two-year statute of limitations for a product liability claim, unless exceptions stated or referenced within the Act apply.")[6] Actions for these claims must be brought within two years of their accrual, but "if the fact of the injury is not reasonably ascertainable until sometime after the initial act, then the period of limitation shall not commence until the fact of injury becomes reasonably ascertainable to the injured party." Kan. Stat. Ann. §60-513(b). This "fact of the injury" language is, in essence, a discovery rule, which "postpones the running of the limitations period until the time the plaintiff is able to determine that [his] injury may be caused by some act of the defendant." *Benne v. Int'l Bus. Machines Corp.*, 87 F.3d 419, 427 (10th Cir. 1996). This provision does not require that a plaintiff have knowledge of the "the exact scientific nature" of his or her injuries to trigger the statute of limitations, but rather, the statute of limitations begins to run from the time that a plaintiff is aware or should through reasonable investigation be aware of the possibility

---

[5] Plaintiff is a Kansas resident who filed his lawsuit in the United States District Court for the District of Kansas. An MDL court applies the choice-of-law rules of the transferor forum in determining the applicable statutes of limitations. *See In re Vioxx Prods. Liab. Litig.*, 478 F. Supp. 2d 897, 903 (E.D. La. 2007). Kansas choice-of-law rules apply the law of the forum as to statutes of limitation unless there is an exception provided in the statute. *Brauer v. Republic Steel Corp.*, 460 F.2d 801, 803 (10th Cir. 1972); *see also F.J. Joseph, Inc. v. Lida Adver., Inc.*, 2 F. Supp. 2d 1425, 1427 n.3 (D. Kan. 1998) (Kansas applies law of forum state); *Menne v. Celotex Corp.*, 722 F. Supp. 662, 663 (D. Kan. 1989) (same); *Green v. Kensinger*, 429 P.2d 95, 98 (Kan. 1967) (same). Under this analysis, the Kansas statutes of limitations govern Mr. Robinson's claims.

[6] To the extent that Mr. Robinson's new allegations about his wife's death are intended as a claim for wrongful death, such claims are also subject to a two-year statute of limitations in Kansas. *See* Kan. Stat. Ann. § 60-513(a).

1144122v1

that his injuries could have been caused by the defendant's actions. *See id.* at 427 (citing *Gilger v. Lee Constr. Inc.*, 820 P.2d 390, 400 (Kan. 1991)); *Davidson v. Denning*, 914 P.2d 936, 948 (Kan. 1996)). Moreover, the "plaintiff has the obligation to reasonably investigate available sources that contain the facts of the [injury] and its wrongful causation." *Davidson*, 914 P.2d at 948.

According to Mr. Robinson, his wife passed away in 2003. Compl. (Ex. 2) at 3. All of the injuries Mr. Robinson alleges on her behalf, whether in his initial Complaint, his PFS, or his proposed amended complaint, occurred at or prior to her death in 2003 at the latest. *See id.*; PPF (Ex. 6) at 3; Pl.'s Proposed First Supp. and Am. Compl. at 2. Even if Mr. Robinson were not aware of the possibility of bringing claims against Merck for Mrs. Robinson's alleged injuries at the time they occurred, under the Kansas discovery rule, any cause of action based on these alleged injuries would have accrued, at the latest, at the time of the withdrawal of Vioxx from the market in September of 2004. As this Court has previously noted, "[t]he withdrawal of Vioxx from the market was arguably the largest and most-publicized prescription drug withdrawal in this country's history." *See In re Vioxx Prods. Liab. Litig.*, 522 F. Supp. 2d 799, 803 (E.D. La. 2007). National print, television and radio news outlets began to cover Vioxx's withdrawal the morning of September 30, 2004, immediately after Merck decided to withdraw the drug. *Id.* (citing sources). "This avalanche of media coverage penetrated into local markets as well, with local television stations and newspapers across the country running similar reports . . . ." *Id.* Accordingly, this Court has previously held with respect to other Vioxx personal injury claims that "[b]oth the national and local media coverage of the withdrawal of Vioxx from the market were sufficient to put the plaintiffs on notice of a potential link between their alleged injuries and the use of Vioxx." *Id.* at 808, 810, 814 (holding that statutes of limitations for Vioxx claims

8

began to run on September 30, 2004, at the latest, under the discovery rules of Illinois, Pennsylvania and Puerto Rico).

Moreover, Plaintiff Robinson averred in his Complaint that he in fact "started looking at this and Mrs. Robinson['s] medical record after Merck pulled Vioxx off the market." Compl. (Ex. 2) at 5. In other words, he was aware of the Vioxx withdrawal at the time it occurred and began to investigate his potential claims against Merck at that time in light of the withdrawal. Thus, there can be no question that Mr. Robinson was aware or should through reasonable diligence have been aware at the time of the Vioxx withdrawal in 2004 that the injuries he alleges on behalf of Mrs. Robinson may have been "caused by some act of the defendant." *Benne*, 87 F.3d at 427. The two-year statute of limitation applicable to Mr. Robinson's claims therefore began to run in September of 2004 at the latest, and expired in September of 2006. Yet Mr. Robinson did not file his lawsuit until February, 2008—approximately fourteen months after the limitations period expired. As a result, Plaintiff's suit is time-barred, and should be dismissed with prejudice.

### III. Plaintiff's Untimely Motion For Leave To Amend The Complaint Should Be Denied As Futile.

Federal Rule of Civil Procedure 15(a)(2) provides that after a responsive pleading, "a party may amend its pleading only with the opposing party's written consent or the court's leave." While leave "shall be freely given when justice so requires," Fed. R. Civ. P. 15(a)(2), "it is by no means automatic," *Addington v. Farmer's Elevator Mut. Ins. Co.*, 650 F.2d 663, 666 (5th Cir. 1981) (citing *Layfield v. Bill Heard Chevrolet Co.*, 607 F.2d 1097, 1099 (5th Cir. 1979)). Leave may be denied on account of undue delay, bad faith, dilatory motive, undue prejudice to the opposing party, or futility. *See United States ex rel. Willard v. Humana Health Plan*, 336 F.3d 375, 386 (5th Cir. 2003) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Mr.

Robinson's proposed amendment should be rejected as unnecessarily (and extremely) delayed, because it is futile in the face of the two-year statute of limitations applicable to his claims.

***First***, Mr. Robinson's request to amend his Complaint comes almost six years after the initiation of his lawsuit.  This delay is extreme, unnecessary, and unexplained.  Permitting the proposed significant substantive changes regarding the scope and factual underpinnings of the claims at this late date would be highly prejudicial.  Mr. Robinson's proposed amendment would (i) expand the duration of alleged Vioxx usage by two years, (ii) add the new, never-before-referenced alleged injury of a fatal heart attack, and (iii) add a new additional plaintiff.  *See* Pl.'s Proposed First Suppl. and Am. Compl. at 2.  All of these proposed amendments appear to be based on facts known (or knowable) to him at the time he filed his initial Complaint, and he provides no explanation whatsoever as to what has prevented him from raising these allegations for the past six years of this litigation.

Although Rule 15(a) does not impose a time limit for permissive amendment, courts in this circuit have observed that "at some point, time delay on the part of a plaintiff can be procedurally fatal." *Whitaker v. City of Houston*, 963 F.2d 831, 836 (5th Cir. 1992) (quoting *Gregory v. Mitchell*, 634 F.2d 199, 203 (5th Cir. 1981)).  In such a situation, the plaintiff bears the burden of showing the delay to be "'due to oversight, inadvertence, or excusable neglect.'" *Id.* (quoting Gregory, 634 F.2d at 203).  Where the delay is unnecessary, as it is here, and the proposed amendments could have been raised in the initial complaint, courts are even more hostile to these late-filed motions. *See Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 140-42 (5th Cir. 1993) (upholding the denial of leave to amend where plaintiffs knew of the facts underlying their amendment before the action commenced, "did not present those claims until summary judgment was imminent"); *Mitsubishi Aircraft Int'l, Inc. v. Brady*, 780 F.2d 1199, 1203 (5th Cir. 1986)

(stating that failure to urge a claim which is "usually apparent at the outset of a case ... strongly suggests either a lack of diligence ... or a lack of sincerity"); *Layfield*, 607 F.2d at 1099 (upholding denial of leave to amend, although bad faith and dilatory motive not found, where "all of the facts relevant to the proposed amendment were known to the [movant] at the time she filed her original complaint").

Mr. Robinson has not provided any justification or explanation of the delay in seeking to amend his Complaint, and there is nothing to indicate why his new allegations could not have been raised in his original Complaint. Clearly, Merck would be prejudiced by the inclusion of Mr. Robinson's new injury claims over *ten years* after such injuries allegedly occurred. In particular, Merck's ability to gather the medical evidence pertaining to Mrs. Robinson's death would undoubtedly be severely hampered, for as time elapses, the memories of medical witnesses fade and records are often lost or destroyed. Given such extreme delay, the lack of any explanation for such delay, and the prejudice to Merck, the amendments should be rejected.

**Second**, Plaintiff's as amendment would be futile. As discussed above, under Kansas law, Mr. Robinson's various claims for injuries occurring prior to his wife's 2003 death are subject to a two-year statute of limitations that began to run by September 30, 2004 at the latest. Likewise, any claim based on his wife's 2003 death would also be subject to a two-year limitations period that would have expired by September 2006 (assuming, hypothetically, that this amendment could relate back to Mr. Robinson's 2008 Complaint). This limitations period renders the proposed amendments futile, and the motion should be denied. *See Whitt v. Stephens County*, 529 F.3d 278, 282 (5th Cir. 2008) (denial of leave to amend proper based on limitations period).

11

## CONCLUSION

For the foregoing reasons, Merck respectfully asks the Court to enter an order dismissing Plaintiff Robinson's claims with prejudice, and denying Plaintiff's Motion For Leave to Amend.

Dated: November 26, 2013

                                      Respectfully submitted,

By: */s/ Dorothy H. Wimberly*
    Phillip A. Wittmann, 13625
    Dorothy H. Wimberly, 18509
    STONE PIGMAN WALTHER
    WITTMANN L.L.C.
    546 Carondelet Street
    New Orleans, Louisiana 70130
    Phone: 504-581-3200
    Fax:    504-581-3361

    Defendants' Liaison Counsel

    —and—

    Douglas R. Marvin
    M. Elaine Horn
    Emily Renshaw Pistilli
    WILLIAMS & CONNOLLY LLP
    725 Twelfth Street, N.W.
    Washington, D.C. 20005
    Phone: 202-434-5000
    Fax:    202-434-5029

    Attorneys for Merck Sharp & Dohme Corp.

1144122v1

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Motion to Dismiss and Opposition to Plaintiff's Motion to Amend has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail, upon Liaison Counsel Ann Oldfather by e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 26th day of November, 2013.

/s/ Dorothy H. Wimberly
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361
dwimberly@stonepigman.com

Defendants' Liaison Counsel

1144122v1