# EXHIBIT "E"

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: VIOXX PRODUCTS LIABILITY LITIGATION | ) ) ) MDL No. 1657 |
| THIS DOCUMENT RELATES TO: | ) Section: L ) Judge Fallon |
| SHERRILL HERKE, individually and on behalf of a proposed class of those similarly situated, Plaintiffs, | ) ) No. 2:09-cv-07218 ) ) ) DECLARATION OF SHANNON |
| v. | ) WHEATMAN, PH.D. ON ) IMPLEMENTATION OF ) SETTLEMENT NOTICE |
| MERCK & CO., INC., Defendant. | ) PROGRAM ) ) |

I, Shannon R. Wheatman, declare:

1.  I am a Senior Vice President of Kinsella Media, LLC ("KM"), an advertising and notification firm in Washington, D.C. specializing in the design and implementation of class action and bankruptcy notification programs. My business address is 2120 L Street, NW, Suite 860, Washington, D.C. 20037. My telephone number is 202.686.4111.

2.  In the above referenced matter, *In re Vioxx Products Liability Litigation*, I was asked to design Notices and a Notice Program to inform class members about their rights in the proposed Settlement. In the "Declaration of Shannon Wheatman" dated July 22, 2013, and submitted along with my C.V., I detailed my class action notice experience, expertise in the form and content of class action notice, and publications on notice and due process. I also provided my educational and professional experience relating to class action notice programs and ability to render opinions on the overall adequacy of the notice program.

3.  This report will detail all of the completed notice activities that were undertaken, provide "proofs of performance," and explain how and why the Notice Program was adequate to satisfy due process requirements.

## SUMMARY OF CONCLUSIONS

4. The Court-approved Notice Program, designed and implemented for this case, achieved each of the planned objectives:

    a. Each element of the Notice Program approved by the Court was implemented.

    b. The Notice Program, as implemented, reached approximately 81.64% of potential Class Members through Published Notice, and

    c. The Court-approved Notices were noticeable, clear, concise, substantive, and informative. No significant or required information was missing.

5. In my view, the Notice Program provided the best notice practicable under the circumstances of this case and satisfied due process.

6. The details of the Notice Program and basis for my opinion on its adequacy are outlined below.

## NOTICE PROGRAM OVERVIEW

7. In developing the Notice Plan, it was determined that it would not be possible to mail notice to Class Members, and a paid media notice program targeted at unidentified Class Members would be necessary ("Notice Program"). The objective of the Court-approved Notice Plan was to provide Class Members adequate notice of the Settlement.

8. To achieve this objective, the following three-part Notice Plan was designed and implemented by KM, as described in more detail below:

    a. Direct mail notice to all counsel in the MDL for the putative consumer classes;

    b. Paid media through publication in consumer magazines and newspaper supplements and television and Internet advertising;

    c. Comprehensive earned media campaign.

## **NOTICE PROGRAM IMPLEMENTATION**

### *Direct Notice*

9.  The Settlement Administrator Status Report provides details on the direct notice. The Detailed Notice was mailed to all MDL counsel for the putative consumer classes.

### *Paid Media Advertising*

10. Pursuant to the Notice Program, as approved by the Court, KM placed insertions in the following media to reach potential Class Members:[1]

| National Consumer Magazines | Circulation |
|---|---|
| *Jet* | 900,000 |
| *National Geographic* | 4,000,000 |
| | |
| **Newspaper Supplements** | **Circulation** |
| *Parade* | 32,500,000 |
| *USA Weekend* | 22,250,000 |
| | |
| **Online Media** | **Delivered Impressions** |
| AOL Media Network | 11,113,171 |
| AARP Online | 11,500,305 |
| Google Display Network | 2,245,838 |
| | |
| **Broadcast Media** | **Delivered GRPs**[2] |
| National Network and Cable TV | 135 |

11. An Implementation Report for the Notice Program is attached as **Exhibit 1** and confirms that the Court-approved Notice Program was implemented. The report details each

---

[1] These publications, broadcast, and online media also reached Class Members in New Mexico and all other states. For example, the following circulation/impressions were obtained in New Mexico: *USA Weekend* - 170,594 circulation; *Parade* - 143,487 circulation; *National Geographic* - 30,114 circulation; *Jet* - 1,130 circulation; AOL Media Network - 74,121 impressions; and AARP online - 76,376 impressions. The GRPs for the Broadcast Media and the impressions on the Google Display Network cannot be broken down by state.

[2] Gross Rating Points (GRPs) represent the sum of all ratings delivered by the media vehicles in a schedule. A rating is the percentage of households or persons in the target audience who have been exposed to the media vehicles in the schedule.

print publication and the date and page number upon which the Publication Notice appeared. The report confirms that KM received a true and correct copy of the advertisement or "tearsheet," from each publication. The report also details the delivered gross impressions for the Internet advertisements and GRPs for the television advertisement.

12. For the purpose of evaluating the strength and efficiency of the media, the national newspaper supplement, national consumer magazine, television, and Internet banner advertising were measured against the target audience to establish the estimated *reach*[3] of the media program and the estimated *frequency*[4] of exposure to the media vehicles. At least 81.64% of Adults 50+ were reached through the Notice Program an average of 2.8 times.

### *Earned Media*

13. The Earned Media campaign in this case consisted of a national multimedia news release ("MNR"), which was extensively distributed to reporters and consumers. Distribution included sending an alert of the MNR to major broadcast outlets nationally, disseminating photos and videos, targeting the MNR to a custom blog list, and posting the MNR on social networks. Attached as **Exhibit 2** is a report detailing some of the stories that were published as a result of the MNR.

### *Online Media*

14. On August 6, 2013, a website with additional information about the Settlement was established at www.VioxxSettlement.com. The secure claims portal, allowing Class Members to submit online claims, was launched on September 1, 2013. The website address was prominently included in the Publication Notice and television advertising.

---

[3] Reach is the estimated percentage of a target audience reached through a specific media vehicle or combination of media vehicles.
[4] Frequency is the estimated average number of opportunities an audience member has to see the notice.

*Continuing Notice*

15. The official Settlement website remains active, and includes notice of the Settlement and is updated with important briefs and information.

16. The MNR will remain available to reporters and consumers online through the claims deadline.

17. The online news stories that have already been generated from the press release and media pitching will continue to be available online and elsewhere for months to come.

18. In my experience, even after the implementation of a notice program is complete, claims will continue to come in, often spiking as the deadline nears. Indeed, in my experience, upon final approval of a class settlement and the attendant publicity that accompanies final approval, there usually is an increase in claims.

## PERFORMANCE AND DESIGN OF NOTICE PROGRAM

19. **The Objectives Were Met.** The primary objective of the Settlement Notice effort in this case was to effectively reach the greatest practicable number of Class Members with a "noticeable" Notice of the Settlement and provide Class Members with every reasonable opportunity to understand that their legal rights are affected - that they have a right to be heard, to object to, and request exclusion from the Settlement. This objective was met.

20. **Notice Effectively Reached Class Members.** Our calculations indicate that the media program reached approximately 81.64% of potential Class Members. Although not included in the reach percentage above, the Settlement website further enhanced coverage among the Class. In my experience, this reach meets the level achieved in many other court-approved notice programs. Based on our calculations, I can confidently state that the Class was adequately reached with the Settlement Notice.

21. **Plenty Of Time And Opportunity To React To The Notice.** The final appearance of the Publication Notice was on September 25, 2013, which allowed plenty of time for Class Members to see the Notice and respond accordingly before the November 9, 2013,

exclusion and objection deadlines. With 46 days from the last Notice appearance until the exclusion and objection deadlines, 80 days until the fairness hearing, and 224 days until the claims deadline, Class Members were allotted more than adequate time to act on their rights.

22. **Notices Were Designed To Increase Noticeability And Comprehension.** The Summary Notice was designed to capture Class Members' attention with clear, concise, plain language. It directed readers to the case website for more information. The plain language text provided important information regarding the subject of the litigation, Class definition, and legal rights available to Class Members. This Notice stated all required information, without omitting significant facts that Class Members need to understand their rights. The Summary Notice also referred readers to the Long Form Notice which was available to those who call or visit the website.

23. **The Long Form Notice Was Available At The Website Or By Calling The Toll-Free Number.** The Long Form Notice provided substantial information, including all specific instructions Class Members need to follow to properly exercise their rights and background on the issues in the case. It was designed to encourage readership and understanding in a well-organized and reader-friendly format.

24. **Notice Standards.** When preparing the Notices in this Settlement, I employed communications methods that are well-established in my field. In addition, I embraced the high standards embodied in the Advisory Committee's notes accompanying the 2003 changes to Rule 23(c)(2): the direction that the class-certification notice be couched in plain, easily understood language is added as a reminder of the need to work unremittingly at the difficult task of communicating with Class Members.

## CONCLUSIONS

25. It is my opinion that the Notices and Notice Program provided members of the Class the best notice practicable under the circumstances.

26. The Court-approved Notices and Notice Plan also comport with Rule 23 of the

Federal Rules of Civil Procedure and the guidance for effective notice articulated in the FJC's *Manual for Complex Litigation, 4th*.

27.   I will be on the telephone during the hearing in the event the Court or counsel have any questions.

I declare under penalty of perjury and the laws of the United States and the District of Columbia that the foregoing is true and correct and this declaration was executed on December 5, 2013, in Washington, D.C.

_____
SHANNON R. WHEATMAN

# EXHIBIT 1

# Notice Program Implementation Report
*In re Vioxx Products Liability Litigation*



## Paid Media Components

| Print Media | Unit Type/Size | Date Ad(s) Ran | Page # of Ad | Tearsheet Received? |
|---|---|---|---|---|
| **Magazine(s)** | | | | |
| *Jet* | Full Page (4.625" x 6.875") | 9/23/2013 | 39 | Yes |
| *National Geographic* | Full Page (5.75" x 9") | 9/25/2013 | 169 | Yes |
| **Newspaper Supplement(s)** | | | | |
| *Parade* | 2/5 Page (5.25" x 6.375") | 9/15/2013 | 12 | Yes |
| *USA Weekend* | Digest Page (5" x 6.4375") | 9/15/2013 | 26 | Yes |

| Broadcast Media | Spot Length | Ordered GRPs | Delivered GRPs | Spots Ran? |
|---|---|---|---|---|
| **TV** | | | | |
| *National Network & Cable TV* | :30 | 113 | 135 | Confirmed |

| Online Media | Ad Type/Size | Ordered Impressions | Delivered Impressions | Ads Ran? |
|---|---|---|---|---|
| **Web** | | | | |
| *AOL Media Network* | 728x90, 300x250, 160x600 | 11,100,000 | 11,113,171 | Confirmed |
| *AARP Online* | 728x90 ; 300x250 | 11,500,000 | 11,500,305 | Confirmed |
| *Google Display Network* | (Targeted Video Placement) | N/A | 2,245,838 | Confirmed |

# EXHIBIT 2



# $23 Million Settlement Reached with Manufacturer of Vioxx

$23 Million Settlement Reached with Manufacturer of Vioxx

Consumers Could Get Up to $50 or More

PR Newswire

NEW ORLEANS, Sept. 9, 2013

NEW ORLEANS, Sept. 9, 2013 /PRNewswire/ -- The following is being released by
the law firms of Herman, Herman & Katz, LLC and Leiff Cabraser Heimann & Bernstein.

To view the multimedia content associated with this release, please click:
http://www.multivu.com/players/English/63015-vioxx-settlement/

(Photo: http://photos.prnewswire.com/prnh/20130909/MM68979)

Merck Sharp & Dohme Corp. ("Merck") has agreed to pay up to $23 million to settle a class action lawsuit involving the prescription anti-inflammatory drug Vioxx.  The lawsuit claims Merck falsely advertised Vioxx as having greater benefits than less expensive medicines contradicting FDA approved labeling.  Merck denies these claims but has agreed to a settlement.

Consumers who  paid for all or part of the cost of Vioxx before October 1,

2004 are included in the settlement.  Consumers who settled a Vioxx personal
injury claim or were a Missouri resident at the time of purchase are not included in the settlement.

What Consumers Get:

Consumers who submit valid claims can get:

 1. Up to $50 in cash, or
 2. Reimbursement for up to the actual out-of-pocket expenses paid for Vioxx
    and up to $75 for certain other costs and losses.

Payment amounts will vary based on several factors such as the number of claims submitted, the amounts claimed, the proof submitted, and other adjustments and deductions.  Attorneys' fees, costs, and other fees and expenses will be deducted from the settlement before distribution to consumers.

File A Claim:

  o To get a payment from the settlement, consumers must submit a claim form
     by May 6, 2014.
  o The claim form can be submitted online or by mail.
  o The claim form is available at www.VioxxSettlement.com or by calling
     1-866-439-6932.

Important Deadlines:

  o Consumers who do not want to be included in the settlement or want to keep

    the right to sue Merck for claims related to the lawsuit must exclude
    themselves by November 9, 2013.
- Consumers who do nothing will not get a payment and give up the right to
  sue Merck.
- Consumers who stay in the settlement may object it by November 9, 2013,
  but will be bound by the settlement if approved by the Court.
- The Court will hold a hearing on December 13, 2013 to consider whether to
  approve the settlement and attorneys' fees and expenses up to 32% of the
  maximum $23 million settlement or up to $7.36 million.  Consumers can
  attend the hearing, but it isn't required.  Consumers can hire their own
  attorney, at their own expense, to appear or speak at the hearing.

For more information or to download a claim form, visit
www.VioxxSettlement.com or call: 1-866-439-6932.

SOURCE Herman, Herman & Katz, LLC and Leiff Cabraser Heimann & Bernstein

Contact: Plaintiffs: Elizabeth Cabraser, Leiff Cabraser Heimann & Bernstein,
415.956.1000, ecabraser@lchb.com; Russ Herman, Herman, Herman & Katz, LLC,
504.581.4892, 504.400.5699; Defendant: Lainie Keller, Merck Global
Communications, lainie_keller@merck.com



# Settlement Reached In Vioxx Lawsuit

By multivu  |  Posted September 9, 2013

The following is being released by the law firms of Herman, Herman & Katz, LLC and Leiff Cabraser Heimann & Bernstein.

Merck Sharp & Dohme Corp. ("Merck") has agreed to pay up to $23 million to settle a class action lawsuit involving the prescription anti-inflammatory drug Vioxx. The lawsuit claims Merck falsely advertised Vioxx as having greater benefits than less expensive medicines contradicting FDA approved labeling. Merck denies these claims but has agreed to a settlement.

Consumers who paid for all or part of the cost of Vioxx before October 1, 2004 are included in the settlement.

To view Multimedia News Release, go to
http://www.multivu.com/players/English/63015-vioxx-settlement/

**FiercePharma**

# ViiV releases more data supporting HIV drug Tivicay; Merck settles another Vioxx suit;

> A $23 million settlement by Merck ($MRK) in a class action settlement over Vioxx, the pain drug it pulled from the market years ago, may allow patients who bought the drug before Oct. 1, 2004, to get a $50 settlement or reimbursement for out-of-pocket expenses. Release (PDF)

**Practice Management**

# Vioxx Maker Settles False Advertising Suit

Published: Sep 13, 2013

By Peggy Peck, Editor-in-Chief, MedPage Today

NEW ORLEANS -- Almost a decade after the maker of rofecoxib (Vioxx) pulled the once-blockbuster pain killer from the market, the company settled a class action suit charging it with overselling the benefits of the Cox-2 inhibitor.

It was Merck that pulled Vioxx from drugstore shelves on Sept. 30, 2004, but it was Merck Sharp & Dohme that settled this latest suit in the U.S. District Court for the Eastern District of Louisiana for $23 million, which will come to about $50 for each patient included in the class.

That settlement is a pittance compared with the settlement in the first Vioxx case -- $253 million awarded by a jury to the family of man who died in his sleep after taking the drug for 8 months.

But the class action suit didn't claim that the drug was responsible for death or disability, simply that the drugmaker "falsely advertised Vioxx as having greater benefits than less expensive medicines contradicting FDA-approved labeling." Although it agreed to the settlement, the drugmaker denied those claims.

Consumers included in the "class" are those who "paid for all or part of the cost of Vioxx before Oct. 1, 2004."

Vioxx users who have claimed injury are excluded from the class, as are those who lived in Missouri when they bought the drug.

# World Health

## Have you used the anti-inflammatory drug Vioxx?

SEPTEMBER 16, 2013 HEALTH

The manufacturer of Vioxx has agreed to settle a class action lawsuit involving the anti-inflammatory drug. Vioxx is a nonsteroidal anti-inflammatory drug that according to papers reduce substances that cause inflammation, fever and pain the body, a drug that was withdrawn by the manufacturer from the market in 2004 over safety concerns. It used to be available on prescription.

If you used the drug and paid for it yourself in part or in full before October 1, 2004, you can file a claim to receive a payment from the settlement in the sum of up to $50 in cash or reimbursement for up to the actual out-of-pocket expenses you have paid for Vioxx.

The class action lawsuit claims that the manufacturer falsely advertised Vioxx as if it had greater benefits than cheaper medicines. Even though the manufacturer Merck Sharp & Dohme Corp. denies the claims, they have agreed to settle the lawsuit for $23 million.
To file a claim, please go to www.VioxxSettlement.com or call 1-866-439-6932. You have until May 6, 2014 to do that. Or if you want to exclude yourself from the settlement, you need to do that by November 9, 2013. For more information about it all, visit the settlement website.

# The Boomer Blogs

## Did You Take Vioxx?

Health and Medicine, Of Interest to Boomers, Well Being Comments Off

Here is some important information:

Patients who paid for Vioxx before October 1, 2004, could be entitled to a cash payment or reimbursement for actual out-of-pocket expenses. The court will hold a hearing on December 13, 2013, to consider whether to approve the settlement. Consumers will have until May 6, 2014, to submit a claim form to receive payment. The claim form and more information about the settlement can be found here: www.vioxxsettlement.com.