# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re:  VIOXX® PRODUCTS LIABILITY LITIGATION | MDL 1657<br>SECTION L<br>JUDGE FALLON<br>MAG. JUDGE KNOWLES |
| THIS DOCUMENT RELATES TO: | **Case Number:  2:05-cv-04130-EEF-DEK** |
| **Allen Atkinson et al.** | PLAINTIFFS |
| **Only with regard to:**<br>**Todd Jelden and Lynette Jelden (h/w)**<br>**v.** | |
| **Merck & Co., Inc.** | DEFENDANTS |

### PLAINTIFF TODD JELDEN'S MEMORANDUM IN OPPOSITION TO DEFENDANT MERCK, SHARP & DOHME CORP.'S MOTION FOR SUMMARY JUDGMENT

*********

On October 24, 2013, Defendants Merck, Sharp & Dohme Corp. ("Merck") filed a Motion for Summary Judgment and Incorporated Memorandum of Law ("Motion") in Plaintiff's case. Merck's Motion alleges that because Plaintiff claimed a myocardial infarction ("MI") in his Future Evidence Stipulation ("FES"), he cannot prove he suffered a pulmonary embolism, and that the Court should dismiss him from the litigation. For multiple reasons, as set forth herein, the FES is not enforceable, and the Court should not grant summary judgment.

**FACTS**

Todd Jelden first took Vioxx on October 16, 2000. *See* JeldenT-CPME-00494-495, attached at TAB A. On January 5, 2001, Mr. Jelden suffered a pulmonary embolism. *See* JeldenT-CPME-00347-348, attached at TAB B. On August 24, 2005, Plaintiff filed his complaint, alleging strict liability (failure to warn), negligence, breach of implied warranty, breach of express warranty, deceit by concealment, negligent misrepresentation, and loss of consortium. *See* Complaint, filed at TAB C. Plaintiff filed directly into the MDL. *Id*. Notably, his complaint does not allege a heart attack.

On June 30, 2008, Plaintiff was enrolled in the Vioxx Resolution Program ("the Resolution Program)". As part of entering the Resolution Program, Plaintiff submitted numerous medical records as part of his claims package. These records show that Plaintiff suffered a PE. *See* JeldenT-CPME-00347-348, at TAB B.

In order to enter any client into the Resolution Program, the enrolling attorney had to enter 100% of her clients into to the program, or withdraw from representing those clients (MSA §1.2.8). As a result, attorneys who represented more than one client, or clients with different types of injuries (i.e., one client suffered an MI and another client suffered a PE), were put in an ethical dilemma that pitted the interest of one client against the other – put all of your clients into the settlement program, knowing that your clients not alleging a heart attack, stroke, or sudden cardiac death would not qualify for resolution and face dismissal; or withdraw from representing those clients that did not suffer a heart attack, stroke, or sudden cardiac death; or put none of your clients in the Resolution Program. Most attorneys chose to withdraw from further representation of all clients who did not suffer a heart attack or stroke, or who would not allege a heart attack or stroke.  However, some attorneys, like Plaintiff's prior counsel, entered their

2

clients into the settlement program, and many of those facially ineligible clients received settlements due to the open filters that seemed to be applied to many claims.

Plaintiff was found to be not eligible through the Vioxx Resolution Program. From that, he had two options – to appeal to a Special Master, or to execute a Future Evidence Stipulation in which case the release and the stipulation of dismissal he signed when entering the Resolution Program would be returned to him. MSA § 2.6.3 and § 2.7.3. Plaintiff was deemed ineligible for an award on May 19, 2009, declined to appeal to a special master, and signed an FES on July 22, 2009. *See* Merck's Motion at 4-5, and the FES, attached as Exhibit A to Merck's Motion.

On April 26, 2010, Plaintiff filed a case-specific expert report, wherein Dr. David Changaris states that Vioxx was a substantial factor in causing Plaintiff's pulmonary embolism, to a reasonable degree of medical probability. *See* Lone Pine Report, attached at TAB D. Merck took Plaintiff's deposition on January 9, 2012. During the deposition, Plaintiff testified about his PE. *See generally* Deposition of Todd Jelden, attached at TAB E.

For the four-plus years since he signed the FES, Todd Jelden has believed that his claim will be addressed on the merits. He has complied with all Pre-Trial Orders, including the provisions of PTO 43. He has retained new counsel. He has worked with them in preparing his case. He has readied himself for his deposition. He has complied with Merck's subpoena *duces tecum*, and produced additional materials when requested. He has patiently waited for his turn. His counsel have also worked to advance Mr. Jelden's claim. They have invested time, effort and money on his behalf. They have responded to all applicable PTOs and discovery requests. They have marshalled and presented a *Daubert*-surviving general causation case.

On October 24, 2013, more than four years after Plaintiff signed the FES and more than eight years after Plaintiff filed his complaint, Merck moved for summary judgment in Plaintiff's

3

case, based solely on Plaintiff's FES, making arguments that, if viable, should have been made as soon as Plaintiff filed his *Lone Pine* Report, which was three and one-half years earlier. .

## ARGUMENT

### I. THE APPLICABLE STANDARD OF REVIEW.

Summary judgment is only proper where "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." "More important for present purposes, summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)

Here, there is certainly a genuine dispute as to import of the FES. It is internally inconsistent, with terms in one place that help Plaintiff and terms in another place which Merck argues helps it. There is a legitimate interpretation of the FES that at best for Merck, it only restricts Mr. Jelden's testimony, not that of other witnesses. There is a legitimate dispute about whether this dependent clause "[other than the injury or injuries I claimed through the Program], which is/are reflected in Section A of this Stipulation" is or is not restrictive to only those injuries in Section A, or whether Section A is simply an example of injuries claimed through the Program (and this would be the truthful interpretation).

Plaintiff's medical records, expert reports, and testimony evidence that he had a PE. Merck attempts to restrict Plaintiff to alleging an MI and an MI only, yet the FES foes not unequivocally say that. There are genuine disputes of material fact.

### II. PLAINTIFF'S COMPLAINT CONTROLS HIS CLAIMS.

Plaintiff's complaint sets out his causes of action. Plaintiff's complaint alleges strict liability (failure to warn), negligence, breach of implied warranty, breach of express warranty, deceit by concealment, negligent misrepresentation, and loss of consortium. It does *not* claim an

4

MI, nor does it limit Plaintiff's claim to an MI. Each claim is still pending before the Court. Merck argues that the FES is tantamount to an agreed dismissal, but Merck did not make require a dismissal as a condition of return to the litigation. It was not Plaintiff's intent to dismiss his claims at the time exercised his right to return to the litigation. The Future Evidence Stipulation is, at best, just that – a stipulation as to evidence. It should not act as a dismissal of anything.

As stated in *Surowitz v. Hilton Hotels Corp.,* 383 U.S. 363, 373 (1966), Plaintiff's complaint should be adjudicated by the courts:

> [The basic purpose of the Federal Rules is to administer justice through fair trials, not through summary dismissals as necessary as they may be on occasion. These rules were designed in large part to get away from some of the old procedural booby traps which common-law pleaders could set to prevent unsophisticated litigants from ever having their day in court. If rules of procedure work as they should in an honest and fair judicial system, they not only permit, but should as nearly as possible guarantee that bona fide complaints be carried to an adjudication on the merits.

The federal rules were written to "further, not defeat the ends of justice." *Id.* Mr. Jelden filed a bona fide complaint over eight years ago. Granting summary judgment in his case would be a harsh, inequitable result, one that does not afford him an adjudication on the merits.

### III.  THE FES IS NOT ENFORCEABLE.

The Court is not bound by a stipulation made by the parties nor required to enforce it. Merck attempts to use Plaintiff's evidence stipulation as a waiver of even claims made in the Resolution Program, but this is contrary to the intent of the document. Further, the FES is subject to multiple constructions. The federal courts recognize several scenarios where a stipulation is not enforceable: when parties stipulate to facts that do not exist; when evidence contrary to the stipulation is substantial; when enforcing the stipulation would be manifestly unjust; and when a

stipulation regards questions of law.  Under no scenario is Plaintiff's FES enforceable for the purpose as described by Merck's Motion.

      a.   <u>The plain language of the FES allows proof that Plaintiff had a PE.</u>

The FES in Paragraph 4 says that Plaintiff will not make allegations or introduce evidence contrary to the medical proof in his Claims Package. He is not doing so, and has not done so.  The Claims Package contains abundant proof of a PE, which is why the claim was denied.  Paragraph 6 has two disjunctive clauses.  The first is, again, not being contravened by Plaintiff, since proof of a PE was in the Claims Package.  It is only the disjunctive clause "… or allege an injury connected with Vioxx other than the injury or injuries I claimed through the Program, which is/are reflected in Section A of this Stipulation" that Merck can point to, and that does it no good for two reasons.  First, Mr. Jelden claimed many injuries through the program and only one of those is offered by example in Section A, and second, it is not Mr. Jelden who will present the proof of his injury since he is not competent to do so.

Leaving aside the implications of the ",which" grammatical choice, Merck attempts to single out one clause of the FES that runs contrary to the document's intent. A plain reading of the FES makes clear that its intent is directed to proof that can be used by Plaintiff to make his case. The title of the document suggests this, and Plaintiff is limited to evidence of when and how he used Vioxx, and to the medical records in his claims package. The FES also limits Plaintiff's injury to that shown in his medical records and also contained in his claims package, as stated in Paragraph 4:

> I further understand and specifically acknowledge and stipulate that if I should decide to pursue the claim outside of the Program, I may not make any allegations or introduce any evidence regarding: (a) Vioxx usage, including but not limited to the dose, duration, consistency of Vioxx usage, and/or alleged proximity of use of Vioxx to the date of alleged injury; (b) medical history; and/or (c) alleged injury, other than as were made and included in the Program through the Claims Package

associated with my claim. I have reviewed the contents of the Claims Package associated with my claim and have certified its contents.

Paragraph 4 makes clear that Plaintiff may allege injuries based on the records filed as part of the Claims Package, and that is exactly what Plaintiff is doing.

However, at the very end of the stipulation, the FES states that at Paragraph 6:

I stipulate that I will not attempt to introduce in any court of law or tribunal any evidence contrary to, or in addition to, the allegations, facts or records that were presented to the Program's Claims Administrators, as contained in my Claims Package, or allege an injury connected with Vioxx other than the injury or injuries claimed through the program, which is/are reflected in Section A of this stipulation.

Paragraph 6 mixes apples with oranges, and is contradictory to the intent of the document and to Paragraph 4. According to the FES, Plaintiff is allowed by the FES to allege injuries based on the records he filed. Evidence of Plaintiff's pulmonary embolism is contained in the claims package, in the CPME medical records originally collected by Merck.  Thus, his claims package *does* contain evidence of his PE. If those records are different than the conclusion of a lawyer in a claim form – the Exhibit A – that renders the clause contradictory and unenforceable.

Further, the FES is unenforceable because it is ambiguous and unclear as to what injury Plaintiff may pursue. It contains provisions which cannot be read together. "A court interpreting a contract must first determine as a matter of law whether the contract is ambiguous . . . a contract is ambiguous when a word, phrase, or provision in the contract has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings. . . . when a court has determined that ambiguity exists in a document, an interpretative meaning for the ambiguous word, phrase, or provision in the document is a question of fact for the fact finder." *Davenport*

*Ltd. P'ship v. 75th & Dodge I, L.P.*, 279 Neb. 615, 621-22, 780 N.W.2d 416, 422 (2010).[1] When it comes to Plaintiff's claims, does the more restrictive Paragraph 6 control, or does Paragraph 4 control, since they ultimately both deal with exiting the Resolution Program and the presentation of evidence to the Court? And for that matter, what about the fact that the FES as it existed when Plaintiff entered the Resolution Program, is different from the one that Plaintiff was required to sign to exit the Program?[2]

"A contract is viewed as a whole in order to construe it. Whatever the construction of a particular clause of a contract, standing alone, may be, it must be read in connection with other clauses, and all writings forming part of the same transaction are interpreted together." *Davenport Ltd. P'ship v. 75th & Dodge I, L.P.*, 279 Neb. at 629. Given that the intent of the FES was to allow Plaintiff to return to the litigation, it strongly suggests that Merck distorts the FES's

---

[1] Procedurally, Plaintiff finds himself in jurisdictional anomaly. Plaintiff filed directly into the MDL, despite that he is a resident of Nebraska. Because this case sits in diversity, we apply the substantive law of the underlying forum state. *See generally Erie Railroad v. Tompkins,* 304 U.S. 64 (1938). "As the Court is sitting in diversity, the threshold question of the choice of law is to be resolved by reference to the conflict-of-law rules of Louisiana. *See Houston N. Hosp. Prop. v. Telco Leasing, Inc.,* 680 F.2d 19, 21 (5th Cir.1982). Under those rules, if the injured person was not domiciled in Louisiana at the time of the alleged injury, the state whose law is applicable is determined by evaluating the "pertinent contacts" of the states whose policies might be implicated by the case. *See* La. Civ.Code art. 3542. Here, it is undisputed that Plaintiff's claims against Radiator arise out of the decedent's work as a mechanic in Alabama during the 1970s. It is also undisputed that at that time, the decedent was a resident of Alabama. The parties are correct in suggesting that Alabama law applies to Plaintiff's claims against Radiator. *Wagoner v. Exxon Mobil Corp.*, No. 09–7257, 2011 WL 3759499." (E.D. La. 2011) (Fallon J.). At the time of his injury, plaintiff resided in Nebraska, saw doctors in Nebraska and was injured in Nebraska. Here, all the pertinent contacts point to applying Nebraska law to Plaintiff's claims. For that reason, Nebraska precedent is cited herein.

[2] Paragraph 6 of the original FES, as contained in the Settlement Agreement, reads differently than the one signed by Plaintiff. It does not contain a Section A that the Plaintiff signed. . Instead, the original Paragraph 6 reads: "I stipulate that I will not attempt to introduce in any court of law or tribunal any evidence contrary to, or in addition to, the allegations, facts or records that were presented to the Program's Claims Administrator, as set forth in or appended to my Claims Package, or allege an injury connected with Product other than the injury I claimed through the Program." *See* Exhibit 2.7.3, Original Future Evidence Stipulation attached at TAB F.

true purpose in its Motion. Because the FES contains contradicting clauses and Merck's interpretation contravenes the true intent of the FES, it cannot be enforced for the purpose sought by Merck.  If it is to be enforced, it is only after a fact finder has resolved the issues of disputed fact as to the mutual intent of the parties upon entry into the Program and at execution of the FES.

The FES was never meant to act as a waiver. It's not called a waiver; the parties did not negotiate for a waiver; and the document is not drafted as a waiver. Indeed, the intent of the FES is to allow Plaintiff to *continue with the litigation*, subject to certain limitations on medical records and Vioxx usage. The FES is not a waiver of Plaintiff's right to pursue an injury other than an MI, and Merck does not make that argument in its brief.  Waiver is the "intentional relinquishment of a known right." *United States v. Olano,* 507 U.S. 725, (1993), quoting *Johnson v. Zerbst,* 304 U.S. 458, 464 (1938). The elements of waiver are 1) a right must exist at the time of the waiver; 2) the party who is accused of waiver must have constructive or actual knowledge of the right in question; and 3) the party intended to relinquish its right. *Broad. Satellite Int'l, Inc. v. Nat'l Digital Television Ctr., Inc.,* 323 F.3d 339, 345 (5th Cir. 2003). Here, Plaintiff did not intend to relinquish his right to pursue his PE injury. After he was rejected from the Program, he secured new counsel and continued to comply with the Court's scheduling order. Merck is represented (and was, at the time the Settlement Agreement was drafted) by an army of competent counsel. Merck could have but did not bargain with Plaintiff to obtain a waiver of Plaintiff's right to pursue his PE injury. Now Merck argues a "back door" waiver of the entirety of Plaintiff's claims. Plaintiff did not waive his right to pursue his claims against Merck, and the FES – a limitation on evidence – is not enforceable as a waiver.

Because the FES is contradictory and ambiguous it should not be enforced.

b.  <u>The FES is not enforceable because it stipulates to facts that do not exist.</u>

"[T]he parties cannot create a case by stipulating to facts that do not exist." *See Sinicropi v. Milone,* 915 F.2d 66, 68 (2d Cir.1990); *PPX Enterprises, Inc. v. Audiofidelity, Inc.*, 746 F.2d 120, 123 (2d Cir. 1984); *In re Kriss*, 217 B.R. 147, 154 (Bankr. S.D.N.Y. 1998); *Brown v. Stone*, 66 F. Supp. 2d 412, 428 (E.D.N.Y. 1999); *In re Roland*, 294 B.R. 244, 250 (Bankr. S.D.N.Y. 2003).

Merck alleges that Plaintiff stipulated to a heart attack in his FES, and that he is prohibited from pursuing any other injury. Yet, Plaintiff and Merck agree that Plaintiff did not have a heart attack, so by definition the stipulation exists for the express purpose of un-making Plaintiff's case by a conclusory binding to facts that do not exist. The evidence in Plaintiff's claims package at the time he entered the Resolution Program and at the time he signed his FES proves he suffered a PE. He alleged a PE in his case-specific expert report and in his deposition. It is nonsensical to enforce a stipulation that "pretends" Plaintiff suffered an MI. To enforce the future evidence stipulation for this purpose is to stipulate to facts that do not exist, and the Court is not bound to accept it.

It is worth emphasizing that Merck is not trying to enforce a stipulation as to the Vioxx used, or the records which exist. Instead, it is seeking to enforce a **conclusion** about a **medical event**, a circumstance not within the purview of Plaintiff's knowledge. And it is seeking to use that event to get dismissal, an outcome for which it could have but did not negotiate as part of the return to the litigation. The FES is unenforceable for the purpose sought by Merck.

c.  <u>The FES is not enforceable because the evidence contrary to the stipulation is substantial.</u>

A court is not bound by a stipulation if evidence contrary to the stipulation is substantial. *In re Roland*, 294 B.R. at 244; *Sinicropi v. Milone,* 915 F.2d at 68; *PPX Enters., Inc. v.*

*Audiofidelity, Inc.,* 746 F.2d at 123; *Epstein v. Kalvin–Miller Int'l, Inc.,* 100 F.Supp.2d 222, 225 (S.D.N.Y.2000); *Loftin and Woodard, Inc. v. United States*, 577 F.2d 1206, 1232 (5th Cir. 1978). "[T]he trial court has not only the right but the duty to relieve a party from a pretrial stipulation . . . where there is substantial evidence contrary to the stipulation." *Rathborne Land Co., L.L.C. v. Ascent Energy, Inc*., 610 F.3d 249, 262-63 (5th Cir. 2010) quoting *Coastal States Mktg., Inc. v. Hunt,* 694 F.2d 1358, 1369 (5th Cir.1983).

Here, substantial evidence exists that is contrary to the FES. Plaintiff's medical records contain in his Claims Package show that he had a PE. In Plaintiff's case specific expert report, Dr.Changaris stated that Vioxx was a substantial factor in causing Plaintiff's PE. Plaintiff testified about his PE injury in his deposition. All of the evidence supports Plaintiff's claims of a PE, contrary to the heart attack which is noted in his FES. Thus, the FES is unenforceable.

        d. <u>The FES is not enforceable because its enforcement would be manifestly unjust.</u>

The trial court "has not only the right but the duty to relieve a party from a pretrial stipulation where necessary to avoid manifest injustice . . ." *United States v. State of Tex*., 680 F.2d 356, 370 (5th Cir. 1982); *Central Distributors, Inc. v. M.E.T., Inc.,* 403 F.2d 943, 945 (5th Cir.1968), *Coastal States Mktg., Inc. v. Hunt*, 694 F.2d at 1369; *Rathborne Land Co., L.L.C. v. Ascent Energy, Inc*., 610 F.3d at 262-63 (5th Cir. 2010).[3]

It would be an extreme injustice to bar Plaintiff's claims simply because he did not have a heart attack. Many plaintiffs who did not have a heart attack or stroke were placed in, and paid through, the Vioxx Resolution Program. Plaintiff, in essence, would be punished for having a PE

---

[3] *See also In re Roland*, 294 B.R. at 244; *Sinicropi v. Milone,* 915 F.2d at 68; *PPX Enters., Inc. v. Audiofidelity, Inc.,* 746 F.2d at 123; *Epstein v. Kalvin–Miller Int'l, Inc.,* 100 F.Supp.2d at 225; *Loftin and Woodard, Inc. v. U.S.*, 577 F.2d at 1232.

rather than a heart attack. Plaintiff filed his lawsuit over eight years ago and deserves his day in Court. The FES is not enforceable because it is manifestly unjust for the purpose sought by Merck.

      e.  <u>The FES is not enforceable because it seeks to control questions of law.</u>

Finally, a court is not required to accept a stipulation regarding a question of law. *Estate of Sanford v. Commissioner of Internal Revenue,* 308 U.S. 39, 51 (1939), *In re Roland*, 294 B.R. at 244, *United States v. John J. Felin & Co.,* 334 U.S. 624, 640 (1948); *Swift & Co. v. Hocking Valley Ry. Co.,* 243 U.S. 281, 289–90, (1917); *Sinicropi v. Milone,* 915 F.2d at 68; *Fisher v. First Stamford Bank & Trust Co.,* 751 F.2d 519, 523 (2d Cir. 1984).

The FES is a stipulation as to conclusion, not as to a fact. As discussed *supra*, the FES stipulates to a conclusion that is not supported by the actual evidence, hence it is comparable to asking a party to stipulate the law. Such stipulations should not be enforced by the Court.

The FES serves as a prohibition on further discovery and on F.R.C.P. 26, and on Plaintiff's complaint and the legal theories that Plaintiff may present to the Court. The FES is an improper limitation on Plaintiff's cause of action against Merck to pursue his claims of failure to warn, negligence, breach of implied warranty, breach of express warranty, deceit by concealment, negligent misrepresentation, and loss of consortium. The extent to which the FES controls the evidence that Plaintiff may submit is a separate issue, not addressed by Merck's motion. For all the above stated reasons, the Court has a duty to not enforce the FES.

  **IV.**    **Laches**

Plaintiff signed his FES on July 22, 2009, but Merck did not bring its Motion until October 24, 2013. Merck's Motion is and should be barred by the doctrine of laches. The bar of laches applies when, as here, there has been an unreasonable delay in pursuing a right or claim so

as to prejudice the party against whom relief is sought.[4] Laches is available where a litigant has been guilty of inexcusable neglect in enforcing a right to the prejudice of his adversary. *Vanice v. Oehm*, 255 Neb. 166, 171, 582 N.W.2d 615, 619 (1998). The elements of laches generally consist of 1) inexcusable neglect by a party and 2) prejudice resulting from such neglect. *Id*. "The doctrine of laches . . . is an instance to the exercise of the reserved power of equity to withhold relief otherwise regularly given where in the particular case the granting of such relief would be unfair or unjust."[5]

Here, Merck delayed unreasonably – Merck waited three and a half years after seeing Plaintiff's *Lone Pine* Report to move for summary judgment against Plaintiff based on his FES. In the intervening time, Merck subjected Plaintiff to further discovery, allowed him to believe his claim was progressing, subjected Plaintiff to the defense of a summary judgment based on general causation, at a cost of thousands and thousands of dollars. Plaintiff has continued to prosecute his claims against Merck, and has appeared for his deposition, developed expert proof and continued to litigate his case. Merck elected not to bring this Motion for three-plus years, and the Court should bar Merck from doing so now.

## CONCLUSION

For the aforementioned reasons, Merck's Motion for Summary Judgment should be denied.

---

[4] *Black's Law Dictionary*, Garner, Bryan, Eight Edition.

[5] William F. Walsh, *A Treatise on Equity* 472 (1930).

Respectfully submitted,

/s/ *Ann B. Oldfather*

Ann B. Oldfather
KBA Bar #52553
Liaison Counsel/Lead Counsel for Certain Plaintiffs
OLDFATHER LAW FIRM
1330 S. Third Street
Louisville, KY   40208
502.637.7200
502.636.0066  (fax)
aoldfather@oldfather.com
*Counsel for Certain Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that Plaintiff's Memorandum in Opposition to Merck, Sharpe & Dohme Corp.'s Motion for Summary Judgment has been served upon Liaison Counsel, Phillip A. Wittmann and Russ Herman, by U.S. mail and email and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8(C), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 6th  day December, 2013.

/s/ *Ann B. Oldfather*

Ann B. Oldfather