# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re:  VIOXX® PRODUCTS LIABILITY LITIGATION | MDL 1657<br>SECTION L<br>JUDGE FALLON<br>MAG. JUDGE KNOWLES |
| THIS DOCUMENT RELATES TO: | <u>Case Number:  2:05-cv-01768-EEF-DEK</u> |
| | PLAINTIFFS |
| **Val Silva** | |
| v. | |
| Merck & Co., Inc. | DEFENDANTS |

## PLAINTIFF VAL SILVA'S MEMORANDUM IN OPPOSITION TO DEFENDANT MERCK, SHARP & DOHME CORP.'S MOTION FOR SUMMARY JUDGMENT

*********

On October 24, 2013, Defendants Merck, Sharp & Dohme Corp. ("Merck") filed a Motion for Summary Judgment and Incorporated Memorandum of Law ("Motion") in Plaintiff's case. Merck's Motion alleges that because Plaintiff claimed a myocardial infarction ("MI") in her Future Evidence Stipulation ("FES"), she cannot prove she suffered a pulmonary embolism, and that the Court should dismiss her from the litigation. For multiple reasons, as set forth herein, the FES is not enforceable, and the Court should not grant summary judgment.

## **FACTS**

Val Silva first took Vioxx in April 2004. *See* Complaint at Count VII, attached at TAB A. On August 6, 2004, Ms. Silva suffered a pulmonary embolism. On February 15, 2005, Plaintiff filed her complaint in the First District of Idaho, alleging products liability (strict liability and failure to warn), breach of warranty, and negligence. *See generally* Complaint. Plaintiff's Complaint specifically alleges that Ms. Silva "suffered an acute massive pulmonary embolism in August of 2004 along with other cardiovascular problems." *Id*. at Count VII.

Ms. Silva filed a Plaintiff Profile Form and an Amended Plaintiff Profile Form in 2005 and 2006, respectively. *See,* TAB D. She alleged in both that she suffered a pulmonary embolism. *Id.,* at 2.

On December 8, 2008, Plaintiff was enrolled in the Vioxx Resolution Program ("the Resolution Program)". Merck's Motion at 4. Plaintiff submitted numerous medical records as part of her claims package. These records show that Plaintiff suffered a PE. *See* SilvaV-CPME-00002-00023, attached as TAB B.

In order to enter any client into the Resolution Program, the enrolling attorney had to enter 100% of her clients into the program, or withdraw from representing those clients (MSA §1.2.8). As a result, attorneys who represented more than one client, or clients with different types of injuries (i.e., one client suffered an MI and another client suffered a PE), were put in an ethical dilemma that pitted the interest of one client against the other – put all of your clients into the settlement program, knowing that your clients not alleging a heart attack, stroke, or sudden cardiac death would not qualify for resolution and face dismissal; or withdraw from representing those clients that did not suffer a heart attack, stroke, or sudden cardiac death; or put none of your clients in the Resolution Program. Most attorneys chose to withdraw from further

representation of all clients who did not suffer a heart attack or stroke, or who would not allege a heart attack or stroke.  However, some attorneys, like Plaintiff's prior counsel, entered their clients into the settlement program, and many of those facially ineligible clients received settlements due to the open filters that seemed to be applied to many claims.

Plaintiff was found to be not eligible through the Vioxx Resolution Program. From that, she had two options – to appeal to a Special Master, or to execute a Future Evidence Stipulation in which case the release and stipulation of dismissal she signed when entering the Resolution Program would be returned to her. MSA § 2.6.3 and § 2.7.3.  Plaintiff was deemed ineligible for an award on March 30, 2009 and July 6, 2009, declined to appeal to a special master, and signed an FES on July 30, 2009.[1]

On August 20, 2009, Plaintiff filed a case-specific expert report, wherein Dr. Peter Gailiunas, Jr. states that Plaintiff's pulmonary embolism was directly due to and casually related to her Vioxx usage, to a reasonable degree of medical probability. *See Lone Pine* Report, attached at TAB C. On August 24, 2009, Plaintiff signed off on her third Plaintiff Profile Form ("PPF"), wherein she stated her injury as "pulmonary embolism, bilateral." *See* 2009 Plaintiff Profile Form, attached at TAB E.

Merck took Plaintiff's deposition on July 12, 2011. During the deposition, Plaintiff testified about her PE injury. When asked about her PPF, she testified that the injury she was alleging in the litigation is a PE. *See* Val Silva Deposition at 13:12-14:2, attached at TAB G.

For the four-plus years since she signed the FES, Val Silva has believed that her claim will be addressed on the merits.  She has complied with all Pre-Trial Orders, including the

---

[1] Merck's Motion at 4-5. Although Merck's Motion states that Plaintiff signed her FES on August 6, 2009 (Merck's Motion at p. 5), her FES was actually signed on July 30, 2009 (*see generally* FES, attached to Merck's Motion as Exhibit A).

3

provisions of PTO 43. She has retained new counsel. She has worked with them in preparing her case. She has readied herself for her deposition. She has complied with Merck's subpoena *duces tecum*, and produced additional materials when requested. She has patiently waited for her turn. Her counsel have also worked to advance Ms. Silva's claim. They have invested time, effort and money on her behalf. They have responded to all applicable PTOs and discovery requests. They have marshalled and presented a *Daubert*-surviving general causation case.

On October 24, 2013, more than four years after Plaintiff made it clear that she was pursuing a claim based on PE, Merck moved for summary judgment, based solely on Plaintiff's FES, making arguments that, if viable, should have been made as soon as Plaintiff filed her *Lone Pine* Report and her 2009 PPF, both of which were filed in mid-2009, four years earlier.

## ARGUMENT

### I. THE APPLICABLE STANDARD OF REVIEW.

Summary judgment is only proper where "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." "More important for present purposes, summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)

Here, there is certainly a genuine dispute as to import of the FES. It is internally inconsistent, with terms in one place that help Plaintiff and terms in another place which Merck argues helps it. There is a legitimate interpretation of the FES that at best, for Merck, it only restricts Ms. Silva's testimony, not that of other witnesses. There is a legitimate dispute about whether this dependent clause "[other than the injury or injuries I claimed through the Program], which is/are reflected in Section A of this Stipulation" is or is not restrictive to only those

injuries in Section A, or whether Section A is simply an example of injuries claimed through the Program (and this would be the truthful interpretation).

Plaintiff's Complaint, medical records, PPFs, expert reports, and testimony evidence that she had a PE. Merck attempts to restrict Plaintiff to alleging an MI and an MI only, yet the FES does not unequivocally say that. There are genuine disputes of material fact.

## II. PLAINTIFF'S COMPLAINT CONTROLS HER CLAIMS.

Plaintiff's complaint sets out her causes of action. Plaintiff's complaint alleges products liability (strict liability and failure to warn), breach of warranty, and negligence, *all as a result of suffering a PE*. It does *not* claim an MI, nor does it limit Plaintiff's claim to an MI. Each claim is still pending before the Court. Merck argues that the FES is tantamount to an agreed dismissal, but Merck did not require a dismissal as a condition of return to the litigation. It was not Plaintiff's intent to dismiss her claims at the time she exercised her right to return to the litigation. The Future Evidence Stipulation is, at best, just that – a stipulation as to evidence. It should not act as a dismissal of anything.

As stated in *Surowitz v. Hilton Hotels Corp.,* 383 U.S. 363, 373 (1966), Plaintiff's complaint should be adjudicated by the courts:

> The basic purpose of the Federal Rules is to administer justice through fair trials, not through summary dismissals as necessary as they may be on occasion. These rules were designed in large part to get away from some of the old procedural booby traps which common-law pleaders could set to prevent unsophisticated litigants from ever having their day in court. If rules of procedure work as they should in an honest and fair judicial system, they not only permit, but should as nearly as possible guarantee that bona fide complaints be carried to an adjudication on the merits.

The federal rules were written to "further, not defeat the ends of justice." *Id*. Ms. Silva filed a bona fide complaint over eight years ago. Granting summary judgment in

5

Ms. Silva's case would be a harsh, inequitable result, one that does not afford her an adjudication on the merits.

### III.   THE FES IS NOT ENFORCEABLE.

The Court is not bound by a stipulation made by the parties nor required to enforce it. Merck attempts to use Plaintiff's evidence stipulation as a waiver of even claims made in the Resolution Program, but this is contrary to the intent of the document. Further, the FES is subject to multiple constructions.  The federal courts recognize several scenarios where a stipulation is not enforceable: when parties stipulate to facts that do not exist; when evidence contrary to the stipulation is substantial; when enforcing the stipulation would be manifestly unjust; and when a stipulation regards questions of law.  Under no scenario is Plaintiff's FES enforceable for the purpose as described by Merck's Motion.

a. <u>The plain language of the FES allows proof that Plaintiff had a PE.</u>

The FES in Paragraph 4 says that Plaintiff will not make allegations or introduce evidence contrary to the medical proof in her Claims Package. She is not doing so, and has not done so.  The Claims Package contains abundant proof of a PE, which is why the claim was denied.  Paragraph 6 has two disjunctive clauses.  The first is, again, not being contravened by Plaintiff, since proof of a PE was in the Claims Package.  It is only the disjunctive clause "… or allege an injury connected with Vioxx other than the injury or injuries I claimed through the Program, which is/are reflected in Section A of this Stipulation" that Merck can point to, and that does it no good for two reasons.  First, Ms. Silva claimed many injuries through the program and only one of those is offered by example in Section A, and second, it is not Ms. Silva who will present the proof of her injury since she is not competent to do so.

Leaving aside the implications of the ", which" grammatical choice, Merck attempts to single out one clause of the FES that runs contrary to the document's intent. A plain reading of the FES makes clear that its intent is directed to proof that can be used by Plaintiff to make her case. The title of the document suggests this, and Plaintiff is limited to evidence of when and how she used Vioxx, and to the medical records in her claims package. The FES also limits Plaintiff's injury to that shown in her medical records and also contained in her claims package, as stated in Paragraph 4:

> I further understand and specifically acknowledge and stipulate that if I should decide to pursue the claim outside of the Program, I may not make any allegations or introduce any evidence regarding: (a) Vioxx usage, including but not limited to the dose, duration, consistency of Vioxx usage, and/or alleged proximity of use of Vioxx to the date of alleged injury; (b) medical history; and/or (c) alleged injury, other than as were made and included in the Program through the Claims Package associated with my claim. I have reviewed the contents of the Claims Package associated with my claim and have certified its contents.

Paragraph 4 makes clear that Plaintiff may allege injuries based on the records filed as part of the Claims Package, and that is exactly what Plaintiff is doing.

> However, at the very end of the stipulation, the FES states that at Paragraph 6:
>
> I stipulate that I will not attempt to introduce in any court of law or tribunal any evidence contrary to, or in addition to, the allegations, facts or records that were presented to the Program's Claims Administrators, as contained in my Claims Package, or allege an injury connected with Vioxx other than the injury or injuries I claimed through the program, which is/are reflected in Section A of the stipulation.

Paragraph 6 mixes apples with oranges, and is contradictory to the intent of the document and to Paragraph 4. According to the FES, Plaintiff is allowed by the FES to allege injuries based on the records she filed. Evidence of Plaintiff's pulmonary embolism is contained in the claims package, in the CPME medical records originally collected by Merck, and in her PPF. Thus, her claims package *does* contain evidence of her PE. If those records are different than the

7

conclusion of a lawyer in a claim form – the Exhibit A to the FES– that renders the clause contradictory and unenforceable.

Further, the FES is unenforceable because it is ambiguous and unclear as to what injury Plaintiff may pursue. It contains provisions which cannot be read together. "The purpose of interpreting a contract is to determine the intent of the contracting parties at the time the contract was entered. In determining the intent of the parties, this Court must view the contract as a whole. If a contract is found ambiguous, its interpretation is a question of fact. Whether a contract is ambiguous is a question of law. A contract is ambiguous if it is reasonably subject to conflicting interpretations." *Bakker v. Thunder Spring-Wareham, LLC*, 141 Idaho 185, 190 (2005), quoting *Lamprecht v. Jordan, LLC*, 139 Idaho 182, 185–86 (2003).[2] When it comes to Plaintiff's claims, does the more restrictive Paragraph 6 control, or does Paragraph 4 control, since they ultimately both deal with exiting the Resolution Program and the presentation of evidence to the Court?[3] And for that matter, what about the fact that the FES as it existed when

---

[2] Because this case sits in diversity, we apply the substantive law of the underlying forum state. *See generally Erie Railroad v. Tompkins,* 304 U.S. 64 (1938). "As the Court is sitting in diversity, the threshold question of the choice of law is to be resolved by reference to the conflict-of-law rules of Louisiana. *See Houston N. Hosp. Prop. v. Telco Leasing, Inc.,* 680 F.2d 19, 21 (5th Cir. 1982). Under those rules, if the injured person was not domiciled in Louisiana at the time of the alleged injury, the state whose law is applicable is determined by evaluating the "pertinent contacts" of the states whose policies might be implicated by the case. *See* La. Civ.Code art. 3542. Here, it is undisputed that Plaintiff's claims against Radiator arise out of the decedent's work as a mechanic in Alabama during the 1970s. It is also undisputed that at that time, the decedent was a resident of Alabama. The parties are correct in suggesting that Alabama law applies to Plaintiff's claims against Radiator. *Wagoner v. Exxon Mobil Corp.*, No. 09–7257, 2011 WL 3759499." (E.D. La. 2011) (Fallon J.). Here, all the pertinent contacts point to applying Idaho law to Plaintiff's claims. For that reason, Idaho precedent is cited herein.

[3] Further, Paragraph 6 of the original FES, as contained in the Settlement Agreement, reads differently than the one signed by Plaintiff. It does not contain a Section A that the Plaintiff signed off on. Instead, Paragraph 6 reads: "I stipulate that I will not attempt to introduce in any court of law or tribunal any evidence contrary to, or in addition to, the allegations, facts or records that were presented to the Program's Claims Administrator, as set forth in or appended to my Claims Package, or allege an injury connected with Product other than the injury I claimed

Plaintiff entered the Resolution Program, is different from the one that Plaintiff was required to sign to exit the Program?[4] Given that the intent of the FES was to allow Plaintiff to return to the litigation, it strongly suggests that Merck distorts the FES's true purpose in its Motion. Because the FES contains contradicting clauses and Merck's interpretation contravenes the true intent of the FES, it cannot be enforced for the purpose sought by Merck. If it is to be enforced, it is only after a fact finder has resolved the issues of disputed fact as to the mutual intent of the parties upon entry into the Program and at execution of the FES.

The FES was never meant to act as a waiver. It's not called a waiver; the parties did not negotiate for a waiver; and the document is not drafted as a waiver. Indeed, the intent of the FES is to allow Plaintiff to *continue with the litigation*, subject to certain limitations on medical records and evidence of Vioxx usage. The FES is not a waiver of Plaintiff's right to pursue an injury other than an MI, and Merck does not make that argument in its brief. Waiver is the "intentional relinquishment of a known right." *United States v. Olano,* 507 U.S. 725, (1993), quoting *Johnson v. Zerbst,* 304 U.S. 458, 464 (1938). The elements of waiver are 1) a right must exist at the time of the waiver; 2) the party who is accused of waiver must have constructive or actual knowledge of the right in question; and 3) the party intended to relinquish its right. *Broad. Satellite Int'l, Inc. v. Nat'l Digital Television Ctr., Inc.*, 323 F.3d 339, 345 (5th Cir. 2003). Here, Plaintiff did not intend to relinquish her right to pursue her PE injury. After she was rejected

---

through the Program." *See* Exhibit 2.7.3, Original Future Evidence Stipulation, attached at TAB F.

[4] Paragraph 6 of the original FES, as contained in the Settlement Agreement, reads differently than the one signed by Plaintiff. It does not contain a Section A that the Plaintiff signed. Instead, the original Paragraph 6 reads: "I stipulate that I will not attempt to introduce in any court of law or tribunal any evidence contrary to, or in addition to, the allegations, facts or records that were presented to the Program's Claims Administrator, as set forth in or appended to my Claims Package, or allege an injury connected with Product other than the injury I claimed through the Program." *See* Exhibit 2.7.3, Original Future Evidence Stipulation attached at TAB F.

9

from the Resolution Program, she continued to comply with the Court's scheduling order. Merck is represented (and was, at the time the Settlement Agreement was drafted) by an army of competent counsel. Merck could have but did not bargain with Plaintiff to obtain a waiver of Plaintiff's right to pursue her PE injury. Now Merck argues a "back door" waiver of the entirety of Plaintiff's claims. Plaintiff did not waive her right to pursue her claims against Merck, and the FES – a limitation on evidence – is not enforceable as a waiver.

Because the FES is contradictory and ambiguous, it should not be enforced.

### b. The FES is not enforceable because it stipulates to facts that do not exist.

"[T]he parties cannot create a case by stipulating to facts that do not exist." *See Sinicropi v. Milone,* 915 F.2d 66, 68 (2d Cir.1990); *PPX Enterprises, Inc. v. Audiofidelity, Inc.*, 746 F.2d 120, 123 (2d Cir. 1984);  *In re Kriss*, 217 B.R. 147, 154 (Bankr. S.D.N.Y. 1998); *Brown v. Stone*, 66 F. Supp. 2d 412, 428 (E.D.N.Y. 1999); *In re Roland*, 294 B.R. 244, 250 (Bankr. S.D.N.Y. 2003).

Merck alleges that Plaintiff stipulated to a heart attack in her FES, and that she is prohibited from pursuing any other injury. Yet, Plaintiff and Merck agree that Plaintiff did not have a heart attack, so by definition the stipulation exists for the express purpose of un-making Plaintiff's case by a conclusory binding to facts that do not exist. The evidence in Plaintiff's claims package at the time she entered the Resolution Program and at the time she signed her FES proves she suffered a PE. She alleged a PE in her Complaint, in her PPF, in her case-specific expert report, and in her deposition. It is nonsensical to enforce a stipulation that "pretends" the Plaintiff suffered an MI. To enforce the future evidence stipulation for this purpose is to stipulate to facts that do not exist, and the Court is not bound to accept it.

10

It is worth emphasizing that Merck is not trying to enforce a stipulation as to the amount of duration of Vioxx used, or the records which exist. Instead, it is seeking to enforce a **conclusion** about a **medical event**, a circumstance not within the purview of Plaintiff's knowledge. And it is seeking to use that event to get dismissal, an outcome for which it could have but did not negotiate as part of the return to the litigation. The FES is unenforceable for the purpose sought by Merck.

> c. The FES is not enforceable because the evidence contrary to the stipulation is substantial.

A court is not bound by a stipulation if evidence contrary to the stipulation is substantial. *In re Roland*, 294 B.R. at 250; *Sinicropi v. Milone,* 915 F.2d at 68; *PPX Enters., Inc. v. Audiofidelity, Inc.,* 746 F.2d at 123; *Epstein v. Kalvin–Miller Int'l, Inc.,* 100 F.Supp.2d 222, 225 (S.D.N.Y.2000); *Loftin and Woodard, Inc. v. United States*, 577 F.2d 1206, 1232 (5th Cir. 1978). "[T]he trial court has not only the right but the duty to relieve a party from a pretrial stipulation . . . where there is substantial evidence contrary to the stipulation." *Rathborne Land Co., L.L.C. v. Ascent Energy, Inc*., 610 F.3d 249, 262-63 (5th Cir. 2010) quoting *Coastal States Mktg., Inc. v. Hunt,* 694 F.2d 1358, 1369 (5th Cir.1983).

Here, substantial evidence exists that is contrary to the FES. Plaintiff's medical records, contained in her claims package, show that she had a PE. In Plaintiff's case specific expert report, Dr. Gailiunas stated that Vioxx was a substantial factor in causing Plaintiff's PE. Plaintiff testified about her PE injury in her deposition. Plaintiff's complaint and PPF note her PE. All of the evidence consistently supports Plaintiff's claims of a PE, contrary to the heart attack which is noted in her FES. Thus, the FES is unenforceable.

      d.   <u>The FES is not enforceable because its enforcement would be manifestly unjust.</u>

The trial court "has not only the right but the duty to relieve a party from a pretrial stipulation where necessary to avoid manifest injustice . . ." *United States v. State of Tex.*, 680 F.2d 356, 370 (5th Cir. 1982); *Central Distributors, Inc. v. M.E.T., Inc.,* 403 F.2d 943, 945 (5th Cir.1968), *Coastal States Mktg., Inc. v. Hunt*, 694 F.2d at 1369; *Rathborne Land Co., L.L.C. v. Ascent Energy, Inc.*, 610 F.3d at 262-63 (5th Cir. 2010).[5]

It would be an extreme injustice to bar Plaintiff's claims simply because she did not have a heart attack. Many plaintiffs who did not have a heart attack or stroke were placed in, and paid through, the Vioxx Resolution Program. Plaintiff, in essence, would be punished for having a PE rather than a heart attack. Plaintiff filed her lawsuit over eight years ago and deserves her day in Court. The FES is not enforceable because it is manifestly unjust for the purpose sought by Merck.

      e.   <u>The FES is not enforceable because it seeks to control questions of law.</u>

Finally, a court is not required to accept a stipulation regarding a question of law. *Estate of Sanford v. Commissioner of Internal Revenue,* 308 U.S. 39, 51 (1939), *In re Roland*, 294 B.R. at 244, *United States v. John J. Felin & Co.,* 334 U.S. 624, 640 (1948); *Swift & Co. v. Hocking Valley Ry. Co.,* 243 U.S. 281, 289–90, (1917); *Sinicropi v. Milone,* 915 F.2d at 68; *Fissher v. First Stamford Bank & Trust Co.,* 751 F.2d 519, 523 (2d Cir. 1984).

---

[5] *See also In re Roland*, 294 B.R. at 244; *Sinicropi v. Milone,* 915 F.2d at 68; *PPX Enters., Inc. v. Audiofidelity, Inc.,* 746 F.2d at 123; *Epstein v. Kalvin–Miller Int'l, Inc.,* 100 F.Supp.2d at 225; *Loftin and Woodard, Inc. v. U.S.*, 577 F.2d at 1232.

The FES is a stipulation as to *conclusion*, not as to a fact.  As discussed *supra*, the FES stipulates to a conclusion that is not supported by the actual evidence, hence it is comparable to asking a party to stipulate the law.  Such stipulations should not be enforced by the Court.

The FES serves as a prohibition on further discovery and on F.R.C.P. 26, and on Plaintiff's complaint and the legal theories that Plaintiff may present to the Court. The FES is an improper limitation on Plaintiff's cause of action against Merck to pursue her claims of products liability (strict liability and failure to warn), breach of warranty, and negligence. The extent to which the FES controls the evidence that Plaintiff may submit is a separate issue, not addressed by Merck's motion. For all the above stated reasons, the Court has a duty to not enforce the FES.

### IV.    Laches

Plaintiff signed her FES on July 30, 2009.  She signed her last PPF and filed it on September 2, 2009.  She submitted her *Lone Pine* Report on August 20, 2009.  Yet, Merck did not bring this Motion until October 24, 2013. Merck's Motion is and should be barred by the doctrine of laches. The bar of laches applies when, as here, there has been an unreasonable delay in pursuing a right or claim so as to prejudice the party against whom relief is sought.[6] Because the doctrine of laches is founded in equity, in determining whether the doctrine applies, consideration must be given to all surrounding circumstances and acts of the parties. *Thomas v. Arkoosh Produce, Inc.*, 137 Idaho 352, 359 (2002). "The doctrine of laches . . . is an instance to the exercise of the reserved power of equity to withhold relief otherwise regularly given where in the particular case the granting of such relief would be unfair or unjust."[7]

Here, Merck delayed unreasonably – Merck waited more than four years after seeing Plaintiff's *Lone Pine* Report and amended post-FES Plaintiff Profile Form to move for summary

---

[6] *Black's Law Dictionary*, Garner, Bryan, Eight Edition.

[7] William F. Walsh, *A Treatise on Equity* 472 (1930).

13

judgment against Plaintiff based on her FES.  In the intervening time, Merck subjected Plaintiff to further discovery, allowed her to believe her claim was progressing, and subjected Plaintiff to the defense of a summary judgment based on general causation, at a cost of thousands and thousands of dollars. Plaintiff has continued to prosecute her claims against Merck, and has appeared for her deposition, developed expert proof and continued to litigate her case. Merck elected not to bring this Motion for three-plus years, and the Court should bar Merck from doing so now.

## **CONCLUSION**

For the aforementioned reasons, Merck's Motion for Summary Judgment should be denied.

                                              Respectfully submitted,

                                              /s/ Ann B. Oldfather

                                              Ann B. Oldfather
                                              KBA Bar #52553
                                              Liaison Counsel/Lead Counsel
                                              OLDFATHER LAW FIRM
                                              1330 S. Third Street
                                              Louisville, KY   40208
                                              502.637.7200
                                              502.637.3999  (fax)
                                              aoldfather@oldfather.com
                                              *Counsel for Certain Plaintiffs*

**CERTIFICATE OF SERVICE**

      I hereby certify that Plaintiff Val Silva's Memorandum in Opposition to Merck, Sharpe & Dohme Corp.'s Motion for Summary Judgment has been served upon Liaison Counsel, Phillip A. Wittmann and Russ Sherman, by U.S. mail and email and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8(C), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 6th day December, 2013.

                                                */s/ Ann B. Oldfather*
                                                Ann B. Oldfather