IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: VIOXX <br> PRODUCTS LIABILITY LITIGATION | MDL NO. 1657 <br><br> SECTION: L |
| THIS DOCUMENT RELATES TO: | JUDGE FALLON |
| SHERRILL HERKE, individually and on behalf of a proposed class of those similarly situated, <br> Plaintiffs, <br><br> v. <br><br> MERCK & CO., INC., <br> Defendant. | No. 2:09-cv-07218 <br><br> Hearing Date:  December 13, 2013 <br><br> Time:  8:30 a.m. |

NEW MEXICO CLASS MEMBER OBJECTIONS TO PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF VIOXX CONSUMER CLASS SETTLEMENT

COME NOW Plaintiffs Patricia Archuleta and Debbie Pace, Individually and on behalf of all similarly situated New Mexico Residents who were prescribed and/or purchased Vioxx from April 1, 2000, through the present (MDL Docket Nos. 05-3159 and 05-1078; United States District Court for the District Of New Mexico Nos. 05-388 and 04-1356), and offer the following as their objections to the Memorandum In Support of the Motion for final approval of Vioxx Consumer Class Settlement (Doc. No. 64703-3).

These Plaintiffs represent the effected group of New Mexico class members who suffered damages as a result of Defendant's scheme to defraud consumers by concealing the extensive dangers posed by Vioxx.  As the Court well knows, after the scheme was revealed, Defendant did

not withdraw Vioxx from the United States market until September 30, 2004, many years after the true dangers of this medication were well known to the Defendant.

These cases were initiated in New Mexico State Court in 2004 and 2005. The cases were removed to the United States District Court for the District of New Mexico on December 3, 2004 and April 6, 2005, respectively. Plaintiffs sought remand for lack of subject matter jurisdiction on December 7, 2004 and April 12, 2005 before the United States District Court for the District of New Mexico. These cases were then transferred to this Court before the subject matter jurisdiction issue could be resolved. To this date Plaintiffs' subject matter jurisdiction challenges have never been resolved.

Since this case was transferred, counsel for the New Mexico Plaintiffs has had little success in attempting to contact or communicate with Plaintiffs' liaison counsel. During the entire pendency of this litigation, this attorney has received two (2) communications from Plaintiffs' liaison counsel. The first, was in March, 2008, when Plaintiffs' liaison counsel held a telephone conference call asking for basic information regarding the nature of the New Mexico claims and the pendency of outstanding motions. During the intervening five (5) years, counsel for the New Mexico Class received no communications or information from Plaintiffs' liaison counsel until September, 2013 when liaison counsel sent a letter purportedly containing a CD "with all settlement pleadings and post-settlement pleadings" regarding consumer related activity.

**GENERAL FAIRNESS OBJECTIONS:**

As of October 17, 2013, counsel for the New Mexico Class had not received any notice regarding a conference call. The Settlement Package received contains many areas of concern.

The first has to do with the "Notice Plan" to be sent to class members. (Document No. 64487-2, Page 10, Paragraph 5.2)   The Notice Plan specifies that it should be mailed by direct mailing by those "requesting it", but doesn't specify or even attempt to define individuals to whom notice should be mailed.  Given that New Mexico is, percentage wise, a highly rural State, it is doubtful that the other proposed forms of notice (publication and internet ads) will be useful or successful in identifying and notifying New Mexico class members.

The fairness of the proposed settlement is also challenged because the New Mexico Class Members and Class Counsel were never involved at any stage with Plaintiffs' Liaison Counsel in any negotiations.  The proposed Notice to be sent to the undisclosed and unidentified New Mexico class members specifies that claim members can receive either Fifty Dollars ($50.00) in cash or reimbursement for actual out-of-pocket expenses paid for Vioxx up to Seventy-Five Dollars ($75.00).  This is a paltry amount in light of the actual out-of-pocket expenditures paid by most of the New Mexico class members.   Ms. Pace, for example, paid approximately One Thousand Two Hundred Dollars ($1,200.00) in out-of-pocket expenses for Vioxx.   The fairness of the proposed settlement is highly questionable in light of the fact that New Mexico consumers, by in large, will receive only a small fraction of their actual damages, and will receive only fifty percent (50%) of the minimum amount of damages permitted under New Mexico's Unfair Practices Act (§57-12-10 NMSA 1978), and only a fraction of the Three Hundred Dollar ($300.00) recovery set for willful misconduct under the Act.

**UNANSWERED QUESTIONS:**

The Motion To Establish The Qualified Settlement Fund, Document No. 64543-1, had attached to it as Exhibit A (Document No. 64543-2), an exhibit purporting to set forth the terms

and conditions of how the settlement fund will be administered. The first concern is that the depository bank, Esquire Bank, is entitled to recover "fees" but the amount and calculation of how these fees will be determined is not specified. On top of this, the Trust administrator, Brown Greer, is also entitled to collect fees but, once again, the amount and method by which these fees will be determined is not specified.

Additional concerns are raised by the provision of the proposed agreement which allows Esquire Bank to "invest" the Twenty-Three Million Dollars ($23,000,000.00) of the settlement fund at its discretion. No provision is made for how any profits from this investment will benefit any Class members. Even more concerning is that Esquire has no responsibility for any investment losses and, instead, according to Paragraph 6b of this document, will be allowed to charge all investment losses against the settlement fund. If investment proceeds are not going to be redistributed among Class members, but all potential investment losses will be paid by the Class members, then the provision for settlement investment simply makes no sense.

The next concern deals with who is responsible for taxes paid out of the settlement fund. Paragraph 7 of the Agreement says that "Class counsel shall cause Brown Greer" to timely file income tax and other tax return statements on behalf of the Fund and to "cause" Esquire Bank to timely pay all taxes required to be paid out of the settlement fund "(providing that all such payments shall be made out of the Vioxx Consumer Settlement Fund and neither Brown Greer nor the depository bank shall have individual responsibility for the payment of such taxes)". This provision makes no sense. The amounts repaid should not be taxable under any interpretation of Section 1.468B-1 of the IRC Treasury Regulations. If there is any tax liability out of the settlement to class members, then the individual members need to be notified of their potential

tax liability. In other words, the proposed settlement does not specify how New Mexico consumers will be taxed for, and will be required to pay for, any proceeds they may receive from the settlement.

The next concern relates to Paragraph 7(b) which authorizes Brown Greer to hire an "unrelated party" to prepare tax returns and statements. Brown Greer, according to the terms of the agreement, is charged as the Trust Administrator and, as mentioned above, is required to file tax and other returns and statements. Brown Greer is being paid an unspecified amount to fulfill this function, nebulous as it may be, and now is authorized to hire an "unrelated party" at additional cost to the Class members to deal with this issue. Of course, the fees for the "unrelated party" are not specified, just as the fees to be charged by Brown Greer are not specified. This is another needless use of the settlement funds for the Class.

The next concern is that Esquire Bank is given free rein to invest the funds at its discretion but is absolved of any potential liability for investment losses or mismanagement of the investment funds absent "gross negligence or willful misconduct". (Paragraph 8b and 8c) Even more concerning is that Esquire Bank is granted indemnification out of the settlement funds for any consequences of its mismanagement or negligence in handling these "investments". (Paragraph 9c) On top of this, Esquire Bank is automatically entitled to recover all costs and attorney's fees, once again from the settlement fund, it incurs <u>regardless of outcome</u> in connection with any dispute over its management of the settlement fund. (Paragraph 10)

In the State of New Mexico, all monies held in trust pending settlement must be held in an IOLTA account. As the Court well knows, IOLTA stands for the Interest on Lawyer's Trust Accounts. IOLTA programs are a joint effort between the National Association of IOLTA

Programs and the American Bar Association Commission on IOLTA. It is unconscionable that this Twenty-Three Million Dollar ($23,000,000.00) fund can be "invested" by Esquire at no risk to itself, with no IOLTA funds to be paid and where Esquire has the opportunity and the right to withdraw any investment losses at the expense of the Fund.

The purported members of the New Mexico "Settlement Class" described in Paragraph 14b of the Agreement are not defined. The Agreement also does not provide for notices to be disseminated in English and Spanish. Many of the affected New Mexico Class members are non-English speakers and no effective notice can be delivered unless it is sent in both languages.

**LEGAL CHALLENGES:**

As noted by the Motion To Remand filed before this case was removed and inserted within the multi-district litigation, Plaintiffs assert that this Court lacks subject matter jurisdiction. Federal courts possess "only that power authorized by the Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. Of America,* 511 U.S. 375, 377 (1994). Even where subject matter jurisdiction is satisfied in the original action, enforcement of a final settlement order "requires its own basis for jurisdiction" before the federal court may "interpret and apply its own judgment to the future conduct contemplated by the judgment." *Flanigan v. Arneiz,* 143 F.3d 540, 544-45 (9th Cir. 1998). While the proponents of this settlement rely heavily on the All Rites Act, the Act is barred by the Anti-Injunction Act, which prevents a federal court from enjoining proceedings in a state court except as expressly authorized by Congress or where necessary to aid of jurisdiction or to protect or effectuate its judgments. 28 U.S.C.§2283. The Anti-Injunction Act is designed to prevent friction between federal and state courts by barring federal intervention in all "but the narrowest of circumstances." *Alton Box Bd. Co. v. Esprit de Corp,*

682 F.2d 1267, 1271 (9th Cir. 1982). "Any doubts as to propriety of a federal injunction against state proceedings [will] be resolved in favor of permitting the state courts to proceed." *Atlantic Coast Line Railroad Co. v. Brotherhood of Locomotive Eng'rs*, 398 U.S. 281, 287 (1970).

The proponents of the settlement will certainly argue that the second exception to the Anti-Injunction Act authorizes injunctive relief "to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide the case." *Atlantic Coast Line,* 398 U.S. at 295. This exception arises "from the settled rule that if an action is *in rem*, the court **first obtaining jurisdiction over the *res*** may proceed without interference from actions in other courts involving the same *res*." *Alton Box Bd. Co.,* 682 F.2d at 1272. As this Court does not have jurisdiction over the *res* of the money owing to New Mexico Class members, and the same has not been established, the second exception to the Anti-Injunction Act cannot apply here.

**CLASS ACTION FAIRNESS ACT CONCERNS:**

There is no indication that the parties advancing this proposed settlement have complied with the applicable provisions of the Class Action Fairness Act, specifically, §28 U.S.C. 1715(b). This portion of the Act requires that within ten (10) days of a proposed settlement of a federal court class action, each defendant shall "serve upon the appropriate State official of each State in which a class member resides, and the appropriate Federal official, a notice of the proposed settlement ...." The notice must include notice of scheduling hearings, proposed and final notification to class members including the member's right to request exclusion and the proposed class settlement. The notice must also include the settlement agreement between class counsel and counsel for the defendants. Plaintiffs' Liaison Counsel has not provided notice that these

provisions of the Act have been met.  This is especially important given New Mexico's special interest in protecting its Class members as fully and completely as can be done given the circumstances of this settlement.

      WHEREFORE the New Mexico Class Representatives respectfully request that this Court order that the proposed final settlement be suspended and/or disapproved until and unless all of the questions addressed above can be answered on behalf of the New Mexico class members, and for such further relief as the Court deems just and proper.

      Respectfully submitted,

LAW OFFICES OF JAMES P. LYLE, P.C.

/s/   James P. Lyle, Attorney At Law
James P. Lyle
1116 2nd Street, N.W.
Albuquerque, New Mexico   87102
(505) 843-8000   /   (505) 843-8043 - Facsimile

***Attorney for New Mexico Class Representatives and New Mexico Class Members***

I hereby certify that a true copy of the foregoing
pleading was served upon all counsel of record
in this matter via CM/ECF filing of this pleading
with the United States District Court For the Eastern
District Of Louisiana this 9th day of December, 2013.

/s/   James P. Lyle, Attorney At Law
James P. Lyle