UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Vioxx | * | MDL Case No. 1657 |
| | * | |
| PRODUCTS LIABILITY | * | SECTION L |
| LITIGATION | * | |
| | * | JUDGE FALLON |
| *This document relates to* | * | |
| | * | MAGISTRATE JUDGE |
| *Maurice Robinson v. Merck & Co., Inc.*, | * | KNOWLES |
| 2:08-cv-01406-EEF-DEK | * | |
| | * | |
| | * | |

**DEFENDANT MERCK SHARP & DOHME CORP.'S
REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS**

Both Plaintiff Maurice Robinson and Merck have competing motions pending regarding the status of Mr. Robinson's Complaint. Mr. Robinson seeks to amend his Complaint while Merck seeks complete dismissal of the case. Merck submits this Reply Memorandum in further support of its own motion [Rec. Doc. 64716] and in opposition to Robinson's motion [Rec. Doc. 64681].

**I.   Despite Having Five Years to Do So, Mr. Robinson Fails to Produce the *Prima Facie* Evidence of Injury, Usage and Causation Required By PTO 29.**

In 2009, this Court dismissed, with prejudice, the claims that Plaintiff Robinson asserted against Merck arising from his deceased wife's use of Vioxx. This Court ruled that the Robinson claims must be dismissed because Plaintiff had failed to produce a case-specific expert report required by PTO 29. For unknown reasons, the signed dismissal order was never entered on Mr. Robinson's individual case docket, and Mr. Robinson's case has apparently remained open since that time due to a clerical error. In 2010, Mr. Robinson was informed that his case remained open and that he should act to comply with PTO 29. But notwithstanding this additional lengthy

1145584v1

opportunity to correct his discovery deficiencies, Mr. Robinson has never produced the required expert report (also known as a "Lone Pine" report) in the almost five years since his case was initially dismissed. Merck raised this issue in its current motion to dismiss and argued that the continued failure to comply with PTO 29 warrants dismissal of the suit. Mr. Robinson makes no effort to address his PTO 29 deficiency in his opposition brief. Not one word. This complete silence and continued non-action warrants dismissal of this case—again.

II.     **All Claims That Mr. Robinson Attempts to Assert on Behalf of Himself, His Wife's Estate, and His Daughter are Time-Barred.**

In addition to failing to meet the threshold requirements established by PTO 29, Mr. Robinson's claims should be dismissed because they were asserted outside any applicable statute of limitations. In Kansas, the two-year statute of limitations for personal injury and products liability actions begins to run when "the act giving rise to the cause of action first causes substantial injury," or when "the fact of injury becomes reasonably ascertainable to the injured party." Kan. Stat. Ann. §60-513(b). Mr. Robinson filed his lawsuit in 2008, and he alleges injuries to his late wife occurring in 1999 through her death in 2003 that he believes were caused by Vioxx. Even if Mr. Robinson had not known of his potential claims against Merck at the time of his wife's death, the "avalanche of media coverage" following the 2004 withdrawal of Vioxx from the market was sufficient to provide notice of a potential link between Vioxx and his wife's injuries, and the two-year statute of limitations for Mr. Robinson's claims therefore expired no later than September 2006—a year and a half before he filed his lawsuit. *See In re Vioxx Prods. Liab. Litig.*, 522 F. Supp. 2d 799, 803, 808 (E.D. La. 2007).

Mr. Robinson makes two arguments in response: First, as to the claims he brings on his own behalf and on behalf of his wife's estate, he argues that the Kansas ten-year statute of repose should apply rather than a two-year statute of limitations. He claims that although he was

prompted to investigate the connection between Vioxx and his wife's medical conditions following the 2004 withdrawal, he nonetheless "had no knowledge" that the use of Vioxx could have been reasonably connected to her death or other injuries. Opp'n at 5. Second, with respect to the claims he alleges on behalf of Danielle Robinson, his disabled daughter, he argues that the statute of limitations for those claims was tolled by Kansas law due to Miss Robinson's disability. Therefore, he argues, even if his own claims are time-barred, his claims on behalf of his daughter may be timely filed at any point within eight years of Mrs. Robinson's death. *See* Opp'n at 2-3. Neither of these arguments can withstand any meaningful scrutiny, and the Court should reject them both.

### A. Mr. Robinson's Claims On Behalf of Himself and His Late Wife

Mr. Robinson argues that the two-year Kansas statute of limitations should not bar his personal claims, nor any survivor claims on behalf of his wife, because he "had no knowledge" that Vioxx could have caused her injuries. Opp'n at 5. But actual knowledge is not required to trigger Kansas's statute of limitations. Rather, the statute of limitations begins to run when the "fact of injury" becomes "reasonably ascertainable." *See* Kan. Stat. Ann. §60-513(b); *Davidson v. Denning*, 914 P.2d 936, 948 (Kan. 1996) ("'Reasonably ascertainable' does not mean 'actual knowledge.'"). "Reasonably ascertainable" is an objective standard, and "a plaintiff has the obligation to reasonably investigate available sources that contain the facts of the [injury] and its wrongful causation." *Kelley v. Barnett*, 932 P.2d 471, 474 (Kan. Ct. App. 1997); *see also Bonura v. Sifers*, 181 P.3d 1277, 1282 (Kan. Ct. App. 2008). Therefore, with respect to its statutes of limitation, "Kansas law is clear that a plaintiff is charged with constructive knowledge of information that is available through a reasonable investigation of sources that contain the facts of the injury and its causation." *Lawson v. Ryder Truck Rental, Inc.*, No. 09-CV- 10139, 2012 WL 6649362, at §C (D. Kan. Apr. 27, 2012) (citing *Davidson*).

Vioxx was voluntarily withdrawn from the market on September 30, 2004 after data from a clinical trial showed an increased number of heart attacks (the type of injury now alleged by Mr. Robinson) in the Vioxx arm as compared to the placebo arm of the study. *In re Vioxx*, 522 F. Supp. 2d at 802. This withdrawal, and the accompanying "onslaught" of media coverage, were sufficient to put an objectively reasonable person on notice of a potential link between Vioxx and the injuries Mr. Robinson alleges, and therefore triggered the two-year statute of limitations for Mr. Robinson's claims on September 30, 2004.[1] *See id.* at 808, 810, 814 (holding that statutes of limitations for Vioxx claims began to run on date of market withdrawal, under the discovery rules of Illinois, Pennsylvania and Puerto Rico).

Mr. Robinson's original Complaint alleges only "shortness of breath" as Mrs. Robinson's injury caused by Vioxx. He explains that through his proposed amendments, he is "now attempting to assert claims for the wrongful death of his wife," which he now alleges was caused by cardiac arrest. Opp'n at 4. Mr. Robinson argues that although at the time of the 2004 withdrawal he "considered that his wife's shortness of breath, fainting spells and other maladies were related to her ingestion of Vioxx," he "had no idea that his wife's death could potentially be related to her ingestion of Vioxx" because he "only recently learned that the ingestion of Vioxx has been related to more serious injuries." Opp'n at 5. But even the claims for shortness of breath alleged in his *initial* Complaint (filed in 2008) were not timely under the two-year statute

---

[1]   Mr. Robinson's attempt to relay on Kansas's ten-year statute of repose reflects a misunderstanding of that law. Section 60-513(b) of the Kansas Statutes provides that while the period of limitations commences under Kansas law when "fact of injury becomes reasonably ascertainable . . ., in no event shall an action be commenced more than 10 years beyond the time of the act giving rise to the cause of action." Kan. Stat. Ann. § 60-513(b). Under the objective standard set forth by Kansas law, Mr. Robinson's claims were reasonably ascertainable at the time of the Vioxx withdrawal in 2004, and the limitations period expired in 2006. The ten-year statute of repose, therefore, has no bearing on his claims.

of limitations.  Moreover, Vioxx was voluntarily withdrawn from the market based on study data showing an increased rate of heart attacks—the very injury Mr. Robinson now alleges—and thousands of plaintiffs filed claims against Merck alleging cardiovascular injuries caused by Vioxx following the withdrawal.  Under any objective standard, it is inconceivable that a 2004 investigation of potential claims triggered by the withdrawal of Vioxx—based on alleged increased risk of heart attacks—would lead a reasonable person to overlook a potential connection between his wife's fatal heart attack and her Vioxx usage, yet simultaneously reach the conclusion that Vioxx may have been responsible for her shortness of breath and "other maladies."[2]  Opp'n at 4-5.  Any investigation at all into Vioxx following the 2004 withdrawal would have revealed to an objectively reasonable person the basis for the claims that Mr. Robinson asserts against Merck.  Accordingly, any claims alleged by Mr. Robinson in his 2008 Complaint and 2013 proposed amendments, whether brought on his own behalf or as the representative of his late wife, are time-barred by the applicable two-year statute of limitations and should be dismissed with prejudice.

### B. Mr. Robinson's Claims On Behalf Of His Daughter

Mr. Robinson also states that he is attempting to bring a wrongful death claim on behalf of his daughter (and daughter of the decedent), Danielle Robinson, who was born with Down's

---

[2] Mr. Robinson states cryptically in his Opposition that he "may be able to sustain a finding of fact that the cause of death of his deceased wife was inaccurate."  Opp'n at 5.  Given the publicity surrounding the 2004 Vioxx withdrawal, and Mr. Robinson's acknowledgement that he began looking into a connection between Vioxx and his wife's "maladies" at that time, Mr. Robinson surely had all the information available to him in 2004 that would allow a reasonable person to ascertain a potential claim against Merck relating to her death.  "A plaintiff has the obligation to reasonably investigate available sources that contain the facts of the [injury] and its wrongful causation."  *Kelley*, 932 P.2d at 474.  A reasonable person would have been on notice in 2004 of the alleged connection between Vioxx and cardiac arrest.  If there was uncertainty surrounding the cause of Mrs. Robinson's death, Mr. Robinson had the obligation to investigate the cause at that time.

syndrome.[3]  Mr. Robinson argues that because Miss Robinson is under a permanent legal disability, Section 60-515 of the Kansas Statutes tolls the statute of limitations and allows a wrongful death claim to be brought on Miss Robinson's behalf at any time within eight years after her mother's death—*i.e.*, on or before April 10, 2011.  *See* Opp'n at 3.  He further states that "[t]he original complaint [filed in 2008] serves as an interruption of the prescriptive period that may be applicable to Miss Robinson."[4]  *Id.*  Therefore, he argues, even if the claims alleged by Mr. Robinson on behalf of himself and his late wife are time-barred, the wrongful death claim he asserts on behalf of Miss Robinson is not.[5]  *Id.*  This argument should be rejected for at least two reasons.

First, under Kansas law, a party seeking to take advantage of the tolling provisions provided by Section 60-515 "must assert the facts justifying its application ***in his complaint***." *Gardner v. Toyota Motor Sales, USA, Inc.*, 793 F. Supp. 287, 289-90 (D. Kan. 1992) (emphasis added); *see also Seymour v. Lofgreen*, 495 P.2d 969, 974 (Kan. 1972) ("Where the injured party does not assert legal incapacity as a cause for delay in commencing an action in court, such injured party stands in the position of a person possessing the attributes of a person with legal

---

[3] The proposed amendments, however, do not actually plead a cause of action for wrongful death.  Instead, they simply allege that Mrs. Robinson "suffered a full cardiac arrest which resulted in her death" on April 11, 2003. *See* Pl.'s Proposed First Supplemental and Amended Complaint [Rec. Doc. 64681-2] at 2.

[4] Presumably, Plaintiff intends to argue that Miss Robinson's claims were either inherent it, or relate back to, the 2008 Complaint.

[5] Plaintiff's Opposition takes issue with Merck's characterization of Miss Robinson's claims as "derivative," stating that her wrongful death claim is not derivative of her father's claims.  Opp'n at 2.  However, any wrongful death claim brought on behalf of Miss Robinson is indeed derivative of *her mother's* right to recover for personal injury. *See, e.g.*, *Mason v. Gerin Corp.*, 647 P.2d 1340, 1345 (Kan. 1982) (holding that the Kansas wrongful death statute requires the existence of a right of action in the decedent at the time of his death as a condition precedent to the existence of a right of action in the wrongful death plaintiff).

capacity, when confronted with the two-year statute of limitations in a negligence action."); *Storts v. Hardee's Food Sys., Inc.*, 919 F. Supp. 1513, 1522 (D. Kan. 1996) (same). Miss Robinson's disability was not alleged in the original 2008 Complaint, and the filing of that Complaint therefore could not have tolled the limitations period applicable to her claims. Indeed, Miss Robinson's disability was not even alleged in the recent proposed amendments in 2013. Rather, it was raised for the first time by Plaintiff's counsel in the opposition to Merck's motion to dismiss. Plaintiff cannot avoid dismissal by raising his daughter's disability two years ***after*** the eight-year maximum available tolling period has passed. *See Reindl v. City of Leavenworth*, 361 F. Supp. 2d 1294, 1300-1301 (D. Kan. 2005) (rejecting plaintiff's attempt to rely on the tolling provisions of Section 60-515 by alleging a disability for the first time in his response to a motion to dismiss, and noting that because they had not been pled in the complaint, "[t]hese additional allegations may not be considered on a motion to dismiss").

Second, any claims alleged by Mr. Robinson on behalf of this daughter are also subject to dismissal for failure to provide the required Lone Pine report, as discussed above. While Plaintiff's proposed amendments purport to formalize the claims of Miss Robinson, her father has been alleging claims on her behalf since the filing of the original Complaint, where he asserted that he "would like the Court to award Mr. Robinson & my daughter a million dollar[s]" for Mrs. Robinson's injuries. Compl. at 4. At all times, however, the only person acting to bring claims relating to Mrs. Robinson's death has been Mr. Robinson, whether in his own capacity or as representative of his deceased wife and/or his daughter. Mr. Robinson (and through him, Miss Robinson) have been on notice of PTO 29's Lone Pine requirement since the time he filed this lawsuit in 2008, and in 2010 he was specifically directed by this Court to comply with PTO 29 to avoid dismissal. *See* Jan. 7, 2010 Order [Rec. Doc. 31207]. Yet, over five years since the PTO

7

29 expert report was due, none has ever been submitted. Accordingly, any claims purportedly brought on behalf of Miss Robinson, like Mr. Robinson's other claims, should be dismissed with prejudice for failure to comply with PTO 29's discovery requirements.

## CONCLUSION

For the foregoing reasons, as well as the reasons set forth in its Motion to Dismiss and Opposition to Plaintiff's Motion to Amend, Merck respectfully asks the Court to enter an order dismissing Plaintiff Robinson's claims with prejudice, and denying Plaintiff's Motion For Leave To Amend.

Dated:  December 16, 2013                                    Respectfully submitted,


                                                              By: */s/ Dorothy H. Wimberly*
                                                                   Phillip A. Wittmann, 13625
                                                                   Dorothy H. Wimberly, 18509
                                                                   STONE PIGMAN WALTHER
                                                                   WITTMANN L.L.C.
                                                                   546 Carondelet Street
                                                                   New Orleans, Louisiana 70130
                                                                   Phone: 504-581-3200
                                                                   Fax:    504-581-3361

                                                                   Defendants' Liaison Counsel

                                                                    —and—

                                                                   Douglas R. Marvin
                                                                   M. Elaine Horn
                                                                   Emily Renshaw Pistilli
                                                                   WILLIAMS & CONNOLLY LLP
                                                                   725 Twelfth Street, N.W.
                                                                   Washington, D.C. 20005
                                                                   Phone: 202-434-5000
                                                                   Fax:    202-434-5029

                                                                   Attorneys for Merck Sharp & Dohme Corp.

1145584v1

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Reply Memorandum has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail, upon Liaison Counsel Ann Oldfather by e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8C, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 16th day of December, 2013.

/s/ Dorothy H. Wimberly
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361
dwimberly@stonepigman.com

Defendants' Liaison Counsel

1145584v1