```
------------------------------------------------------------  x
INTERNATIONAL UNION OF OPERATING                              :
ENGINEERS LOCAL NO. 68 WELFARE                                :    SUPERIOR COURT OF NEW JERSEY
FUND, individually and on behalf of all others               :    LAW DIVISION: ATLANTIC COUNTY
similarly situated,                                           :
                                                              :    DOCKET NO. ATL-L-3015 MT-03
                                      Plaintiff,              :
                                                              :
                      v.                                      :
                                                              :
MERCK & CO., INC,                                             :
                                                              :
                                      Defendant.              :
                                                              :
------------------------------------------------------------  x
```

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
## DEFENDANT'S MOTION TO DISMISS THE COMPLAINT


SEEGER WEISS LLP
550 Broad Street, Suite 920
Newark, New Jersey  07102-4573
Tel. (973) 639-9100
Fax (973) 639-9393


OF COUNSEL:

Christopher A. Seeger
David R. Buchanan
SEEGER WEISS LLP
550 Broad Street, Suite 920
Newark, New Jersey  07102-4573
Tel. (973) 639-9100
Fax (973) 639-9393

## TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………………………………..ii

PRELIMINARY STATEMENT………………………………………………....…..……1

ARGUMENT………………………………………………………………………………...3

I.      PLAINTIFF HAS STANDING TO ASSERT ITS CFA CLAIM………………...3

      A. The Express Statutory Language of the Act Vests
         Plaintiff with Standing to Pursue Its Claim…………………………...…4

      B. Plaintiff Is a Consumer and Suffered Losses in Consumer
         Transactions………………………………………………………………..6

II.     PLAINTIFF HAS PROPERLY PLEADED A CLAIM FOR FRAUD………….11

      A. Plaintiff Has Specifically Alleged Defendant's
         Misrepresentations and Omissions…………………………………...…11

      B. Plaintiff Has Pleaded Reliance On Defendant's
         Numerous Misrepresentations……………………………………….....15

CONCLUSION……………………………………………………………………………..17

i

# TABLE OF AUTHORITIES

## CASES

Arc Networks, Inc. v. Gold Phone Card Co., Inc., 333 N.J. Super. 587
(Law Div. 2000) ..................................................................................................... 6,7,8

Cannon v. Cherry Hill Toyoda, Inc., 161 F. Supp. 2d 362 (D.N.J. 2001) ........................ 16

Channel Cos., Inc. v. Britton, 167 N.J. Super. 417 (App. Div. 1979) ................................. 3

City Check Cashing, Inc. v. National State Bank, 244 N.J. Super. 304
(App. Div. 1990) ...................................................................................................... 6,7,8

Cox v. Sears Roebuck & Co., 138 N.J. 2 (1994) ................................................................ 4

Desiano v. Warner Lambert Co., 326 F.3d 339 (2d Cir. 2003) ..................................... 9,10

Dreier Co., Inc. v. Unitronix Corp., 218 N.J. Super. 260 (App. Div. 1986) ..................... 11

Gennari v. Weichert Co. Realtors, 148 N.J. 582 (1997) ..................................................... 3

Hampton Hospital v. Bresan, 288 N.J. Super. 372 (App. Div. 1996) ................................. 4

Hundred East Credit Corp. v. Eric Schuster Corp., 212 Super. 350 (App. Div. 1986) ....... 6

Hyland v. Kirkman, 157 N.J. Super. 565 (Ch. Div. 1978) ................................................. 13

J & R Ice Cream Corp. v. California Smoothie Licensing Corp., 31 F.3d 1259
(3d Cir. 1994) ............................................................................................................... 8

Kadison v. Horton, 142 N.J. Eq. 223 (Err. & App. 1948) ................................................. 15

Kavky v. Herbalife International of America, 359 N.J. Super. 497
(App. Div. 2003) ......................................................................................................... 5,8

Lettenmaier v. Lube Connection, Inc., 162 N.J.134 (1999) ............................................... 5

Lemelledo v. Beneficial Mgmt. Corp. of America 150 N.J. 255 (1997) ....................... 3,5

Morgan v. Air Brook Limousine, Inc., 211 N.J. Super. 84 (Law Div. 1986) ..................... 5

New Mea Construction Corporation v. Harper, 203 N.J. Super. 486
(App. Div. 1985) ........................................................................................................... 4

Perez v. Wyeth Laboratories, Inc., 161 N.J. 1 (1999) ...................................................... 14

Rebish v. Great Gorge, 224 N.J. Super. 619 (App. Div. 1988)........................................ 16

Rego Industries, Inc. v. American Modern Metals Corp., 91 N.J. Super. 447
    (App. Div. 1966) ...................................................................................... 15

In re Rezulin Products Liability Litigation, 171 F. Supp. 2d 299 (S.D.N.Y. 2001) ......... 10

Strawn v. Canuso, 271 N.J. Super. 88 (App. Div. 1994) .................................................. 14

Talalai v. Cooper Tire & Rubber Co., 360 N.J. Super. 547 (Law Div. 2001) ............ 14, 16

Tobin v. Paparone Construction Co., 137 N.J. Super. 518 (Law Div. 1975).................... 14

Van Dam Egg Co. v. Allendale Farms, Inc., 199 N.J. Super. 452
    (App. Div. 1985) ...................................................................................... 11

Varacallo v. Mass. Mutual Life Insurance Co., 332 N.J. Super. 31
    (App. Div. 2000) ...................................................................................... 16

Zorba Contractors, Inc. v. Housing Authority of City of Newark, 282 N.J. Super.
    430 (App. Div. 1995) ......................................................................... 5,7,8,10

## STATUTES and RULES

N.J. STAT. ANN.  § 56:8-1 ............................................................................... 1,5

N.J. STAT. ANN.  § 56:8-19 ............................................................................ 4,5

N.J. STAT. ANN. § 56:11-1 ................................................................................ 5

N.J. STAT. ANN. §56:12-1 ................................................................................. 5

N.J. STAT. ANN. §56:12-15 ............................................................................... 5

N.J. STAT. ANN. §56:18-21 ............................................................................... 5

N.J. LOCAL RULE. 4:5-8(a) .......................................................................... 2,11,13

Plaintiff International Union of Operating Engineers Local No. 68 Welfare Fund ("Plaintiff," or "Local 68"), submits this memorandum of law in opposition to defendant's motion to dismiss Plaintiff's Complaint ("Complaint" or "Compl.").

## PRELIMINARY STATEMENT

This lawsuit arises from injuries sustained by Plaintiff in connection with its many purchases of Vioxx. In connection with Merck's misrepresentations and omissions concerning the safety and efficacy of Vioxx, Plaintiff included and thereafter kept Vioxx on the list of drugs that it would purchase for its members under their prescription medication plan. As a result, Plaintiff approved and paid for purchases of Vioxx for its members at a cost 800% greater than that of equally efficacious and safer NSAIDs. Plaintiff, as a third-party payor, suffered tremendous economic damages due to defendant's misconduct in connection with the marketing and sale of Vioxx.

Plaintiff seeks recovery of the losses resulting from defendant's actions in its claims for violation of the New Jersey Consumer Fraud Act ("CFA" or the "Act"), N.J.S.A. § 56:8-1, et seq. (Compl. ¶¶ 48-57), and common law fraud (id. ¶¶ 38-47).

Attempting to evade liability under the CFA, defendant contends that Plaintiff is not a "consumer," and thus not competent to bring suit under the CFA.[1] Def. Mem. at 3-5. In making its argument, Merck avoids any citation to the express statutory language of the CFA. The reason is clear: the word "consumer" appears nowhere in the statutory provisions of the CFA. Indeed, under the plain language of the statute, Merck has no argument — Plaintiff is a "person" with standing to bring its CFA claim in this Court.

---

[1] Significantly, defendant has highlighted no legal or pleading infirmity with respect to any other aspect of plaintiff's claim under the CFA — i.e., that plaintiff has failed to adequately plead that (i) it suffered an ascertainable loss as a result of the challenged conduct, or (ii) the challenged conduct constitutes an unlawful act or practice under the Act.

Thus, to support its challenge, Merck latches onto a judicially engrafted consumer requirement that it contends Plaintiff cannot satisfy. But in the cases defendant cites for such a requirement, the conclusions that plaintiffs lacked consumer standing turned on plaintiffs' status as distributors — distributors bringing suit against wholesalers for products that the plaintiffs intended to resell. Defendant does not contend (because it cannot) that Plaintiff here fits that mold. Following Plaintiff's purchase of Vioxx, no other sale of the purchased product was contemplated or occurred. Plaintiff is not a distributor or pharmacy, buying drugs for resale. Rather, Plaintiff purchased Vioxx for the use, benefit, and consumption of its members. Even under defendant's authorities, plaintiff is a consumer.

Moreover, the many cases *not* cited by defendant amplify Plaintiff's standing to pursue claims under the Act. Last year, for example, the Second Circuit addressed third-party payor standing under New Jersey law in connection with a claim against Warner Lambert. The court there held that the third-party payor had a claim under the CFA for payments made by it in connection with the purchase of drugs for its members. Defendant offers no explanation why the same result is not compelled here.

Defendant separately challenges the specificity of plaintiff's allegations of fraud, claiming that Plaintiff has failed to plead the particulars of fraud in accordance with R. 4:5-8(a). Yet even a cursory review of the Complaint reveals that the details of defendant's fraudulent conduct are spelled out with great specificity, as far as is practicable. The specificity Merck seeks is well beyond that which the law requires.

While Merck attempts to liken Plaintiff's Complaint to the earlier-filed, but since-dismissed complaint in Plumbers & Pipefitters Local 572 Health & Welfare Fund v. Merck &

Co., Inc., Docket No. ATL-L-1705-03-MT ("Plumbers"),[2] the instant Complaint goes well beyond the Plumbers complaint in specifying defendant's fraudulent scheme and how defendant's fraud caused Plaintiff's damages. See Compl. ¶¶ 24-33. Moreover, unlike the Plumbers complaint, the Complaint here describes defendant's improper conduct targeted at Plaintiff and similarly situated third-party payors. Compl. ¶¶ 24-27. Simply put, there is ample detail in the Complaint delineating the acts and omissions giving rise to Plaintiff's fraud claim. Nothing more is required.

Defendant's challenge to both of Plaintiff's claims is legally unfounded. Defendant's motion should be denied.

## ARGUMENT

## I.    PLAINTIFF HAS STANDING TO ASSERT ITS CFA CLAIM

As defendant concedes, the purpose of the CFA is the "protection of consumers by eliminating sharp practices and dealings in the marketing of merchandise ...." Channel Cos., Inc. v. Britton, 167 N.J. Super. 417, 418 (App. Div. 1979); see Def. Mem. at 3 (citing Lemelledo v. Beneficial Mgmt. Corp. of America, 150 N.J. 255, 263 (1997)). To achieve those ends — as New Jersey courts have reminded with great consistency — the Act must be interpreted broadly to encompass a wide range of consumer fraud. See Gennari v. Weichert Co. Realtors, 148 N.J. 582, 604 (1997) ("The history of the Act is one of constant expansion of consumer protection."); Hampton Hosp. v. Bresan, 288 N.J. Super. 372, 378 (App. Div. 1996) ("The remedial goal of the Act is to protect consumers and the Act is liberally construed to serve that end."); New Mea

---

[2]    The Plumbers action was dismissed on consent of the parties following the filing of the instant action. Buchanan Cert. Exh. 1 (Consent Order). The class definition in the instant Complaint encompasses the putative class in Plumbers.

Construction Corporation v. Harper, 203 <u>N.J. Super</u>. 486, 501-02 (App. Div. 1985) ("We deem it our responsibility to construe the [CFA] broadly, not in a crabbed fashion.").

Against the backdrop of liberal construction to which CFA claims are afforded, defendant asks this Court to deny standing to a party who, as a result of defendant's improper conduct, parted with dollars for merchandise it purchased for its beneficiaries.  In so doing, Merck seeks to gut what was intended to be "one of the strongest consumer protection laws in the nation.'" <u>Cox v. Sears Roebuck & Co.</u>, 138 N.J. 2, 15 (1994) (<u>citing</u> <u>Governor's Press Release for Assembly Bill No. 2402</u>, at 1 (Apr. 19, 1971)).  That is an invitation to error that this Court should refuse to accept.

### A.   The Express Statutory Language of the Act Vests Plaintiff with Standing to Pursue Its Claim

In order to protect consumers and deter underhanded business practices, the Legislature gave the CFA teeth, creating a private right of action for any "person" victimized by deceptive business practices.  There is no statutory limitation, as defendant suggests, restricting that private right of action to any particularized group.  Quite the reverse.

The Legislature provided that any person or entity that suffers a loss as a result of an unlawful practice or act may maintain a claim, <u>e.g.</u>:

> ***Any person*** who suffers an ascertainable loss of moneys or property, real or personal, as a result of ... any method, act, or practice declared unlawful by this act ... may bring an action ... in any court of competent jurisdiction.

<u>N.J.S.A.</u> §56:8-19 (emphasis added).

Defendant has not argued, nor could it, that Local 68 is not a "person" under the Act.  A "person" under the CFA encompasses both natural and legal entities, "including" any "corporation, company, trust, business entity, or association."  <u>N.J.S.A.</u> §56:8-1(d); <u>see also</u> <u>Zorba Contractors, Inc. v. Housing Auth. of City of Newark</u>, 282 N.J. Super. 430, 434 (App.

Div. 1995) ("'includes' is usually a term of enlargement, not of limitation.  It conveys the conclusion that there are other items includable, though not specifically enumerated.").  Rather, Merck contends that Plaintiff is not a "consumer" (Def. Mem. at 3-4) — a requirement and term defined nowhere in the Act.  Kavky v. Herbalife Int'l of America, 359 N.J. Super. 497, 508 (App. Div. 2003) ("Although the Act is entitled 'An Act concerning consumer fraud, prevention, and providing penalties therefore,' … it contains no definition of consumer.") (citation omitted).

The presence of a broad definition of "person," and, in contrast, the absence of a definition of "consumer" or "consumer transaction" within the CFA cannot be attributed merely to legislative oversight.  When the Legislature has elsewhere intended to limit the application of a particular statute to "consumers," it has expressly done so.  See Kavky, 359 N.J. Super. at 505 ("After observing that the Act contains no definition of 'consumer,' [the court in Morgan] also noted that when the Legislature wanted that word to have a more limited meaning it did so, as in the Unit Price Disclosure Act, N.J.S.A. 56:8-21 to –25.") (citing Morgan v. Air Brook Limousine, Inc., 211 N.J. Super. 84, 92-93 (Law Div. 1986)).[3]

In the absence of express legislative restrictions excluding purchases such as those here at issue, the Court should deny defendant's attempt to narrow the Act's breadth and thus elude liability.  See Lettenmaier v. Lube Connection, Inc., 162 N.J. 134, 139 (1999) (to further the Act's "remedial" purpose, it must be "construed liberally in favor of the consumer to accomplish its deterrent and protective purposes.").  Plaintiff, fitting squarely within the definition of an injured person under the CFA, should be permitted to pursue its claim.

---

[3]      See also Consumer Credit Transaction Act, N.J.S.A. §56:11-1 et seq. (defining consumer as a natural person); Consumer Contract Act, N.J.S.A. §56:12-1 et seq. (defining a consumer contract as one with an individual); Truth-in-Consumer for a Contract, Warranty, and Notice Act, N.J.S.A. §56:12-15 (defining consumer as one who acquires property or service which is primarily personal, family, or household purposes).

**B.**     **Plaintiff Is a Consumer and Suffered Losses in Consumer Transactions**

Citing a "consumer" definition described in disparate cases, defendant contends that

Plaintiff is not a "consumer" protected by the CFA because it does not use or diminish the value

of Vioxx.[4]  See Def. Mem. at 4.  Merck's argument, however, crumbles upon examination of (i)

the facts on which those decisions turned, and (ii) the many contrary decisions astutely omitted

from Defendant's Memorandum.

*Plaintiff Is Not a Wholesaler.*  In City Check Cashing, Inc. v. Nat'l State Bank, 244 N.J.

Super. 304 (App. Div. 1990), the first of defendant's authorities where a plaintiff was denied

"consumer" status under the Act, a check cashing service brought a CFA claim against the bank

(with which it had a contractual relationship) that froze its accounts.  The plaintiff was not a

consumer because it "essentially was buying cash from defendant at wholesale *to sell to its*

*check-cashing customers at retail.*"  Id. at 309 (emphasis added).

Similarly, in Arc Networks, Inc. v. Gold Phone Card Co., Inc., 333 N.J. Super. 587 (Law

Div. 2000), Gold Phone Card, a distributor of pre-paid phone cards to retailers, charged Arc

Networks with violation of the Act.  Arc Networks, a provider of telephone switching and billing

services to Gold Phone Card, provided no products or services to the public at large.  Id. at 589

("Arc's services are not available to the general public.").  The court thus held that Gold Phone

was not a consumer competent to bring a claim under the Act because "Gold Phone's purpose in

---

[4]     The definition of consumer that is the foundation of defendant's attack — "one who uses (economic) goods, and so diminishes or destroys their utilities," Def. Mem. at 4 — is that which appears in Webster's New International Dictionary, 2d ed.  Ironically, and in sharp contrast to defendant's use of that definition here, the Appellate Division first cited that definition of "consumer" in Hundred East Credit Corp. v. Eric Schuster Corp., 212 N.J. Super. 350 (App. Div. 1986), wherein the Court used that definition expansively to extend the Act's reach to businesses.  Id. at 355-56 ("a business entity can be, and frequently is, a consumer in the ordinary meaning of that term…. Since a business entity is also a 'person' entitled to recover under the Act, there is no sound reason to deny it the protection of the Act.") (citations omitted).

contracting Arc's services was *to resell those services to purchasers of its phone cards.*" Id. at 592 (emphasis added).

In both City Check Cashing and Arc Networks, the plaintiffs purchased services at wholesale in order to resell them at retail. The facts of those cases are a far cry from those here at issue. Plaintiff does not purchase Vioxx at wholesale from defendant and resell it at retail to its members. Local 68 does not have a pharmacy and, indeed, it provides no pharmacy services. Plaintiff and the putative class purchase Vioxx for the benefit of their end-user members (Compl. ¶¶ 24-33) — there is no further sale or distribution of the drug that occurs after the purchase transaction. Not even a deep squint can obscure the impropriety of extending the holdings of City Check Cashing and Arc Networks to the instant facts.

*Persons Purchasing for the Benefit of Others Are Consumers.* Contrary to defendant's contention, Def. Mem. at 4, the CFA allows recovery of damages by parties who purchased, but were not end-users of, deceptively marketed products. In Zorba, 282 N.J. Super. 430, a case tellingly absent from Defendant's Memorandum, the Housing Authority brought a claim under the Act against suppliers to recover the costs of repairing or replacing defective roofs at three housing projects. After quoting the very definition of "consumer" that Merck presses here, the Appellate Division held that "[t]he Authority is unquestionably a consumer, purchasing merchandise with public funds for the benefit of a segment of the population." Id., at 435. In so doing, the Appellate Division rejected the suppliers' claim that the Housing Authority did not have "consumer" standing under the Act.

No different than the Housing Authority's purchases of supplies for use by housing complex residents in Zorba, Local 68 purchased Vioxx for use by members of its prescription plan. Compl. ¶ 33. Plaintiff here sits in the same capacity and, even under defendant's

7

definition of "consumer," is competent to bring a CFA claim.

**Purported "Consumer" Test Undermined.**  Setting aside that the definition of "consumer" urged by defendant (i) arises in contexts factually dissimilar from the instant case, and (ii) does not comport with either the text of the CFA or the liberal interpretation of the Act, the vitality of that definition has been seriously undermined.  Just last year, the Appellate Division in Kavky highlighted the limitations of the City Check Cashing/Arc Networks "consumer" definition:

> Although we have occasionally referred to a dictionary definition of consumer as "one who uses (economic) goods and so diminishes or destroys their utilities," [citing City Check Cashing], as [J & R Ice Cream Corp. v. California Smoothie Licensing Corp., 31 F.3d 1259, 1274 n.14 (3d Cir. 1994)] recognized, "some consumer goods may not be diminished or destroyed through use...." Consequently, we agree with J & R's statement that *the result should not turn on "the acceptance of [that] definition."*

Id. at 504-05 (emphasis added; citations omitted).  Rather, the Kavky court held that, in assessing whether a challenged practice is actionable under the Act, the test is whether the product or service at issue was the subject of "mass-marketing" or "was generally made available to the public."  359 N.J. Super. at 506; cf. id. ("[t]hat is not to say that only mass-marketing is within the Act.").[5]

On the facts alleged in the Complaint, it cannot be disputed that defendant's marketing of Vioxx — both generally to the public and specifically to third-party payors — fits that description.  Defendant engaged in a massive direct-to-consumer marketing campaign with this

---

[5]      As Kavky acknowledged, application of the City Check Cashing/Arc Networks "consumer" definition leads to results contrary to the Legislature's objectives.  There is little doubt that a standard requiring that a plaintiff "use" or "diminish in value" the subject property (Def. Mem. at 4) excludes claims that are plainly consumer in nature.  For example, one who purchases an item at retail based on mass marketing (later discovered to be false), who then gives that item to another person would have no claim under defendant's test.  That is so whether defendant's misconduct caused the purchaser to pay more then she otherwise would have, or if it caused a purchase that would not have happened at all.  Similarly, the defendant there would no doubt claim that the recipient or "giftee" of the consumer goods would have no claim since it suffered no ascertainable loss as a result of the challenged misconduct.  In short, Merck advocates a test that facilitates its retention of ill-gotten proceeds — a result that directly conflicts with the Legislature's intent.

drug (e.g., Compl. ¶ 23), and specifically targeted third-party payors, knowing that they controlled the purse strings and thus were essential to the drug's success (e.g., Compl. ¶¶ 30-33).

Under Kavky, defendant's conduct — directed to the public at large and causing, as it did, Plaintiff's loss — gives rise to liability under the Act.

**_Third Party Payor Cases Elsewhere Are in Accord._** In a decision last year addressing the claims of third-party payors, the Second Circuit allowed claims under the CFA — claims virtually identical to those of Plaintiff — to proceed. In Desiano v. Warner Lambert Co., 326 F. 3d 339 (2d Cir. 2003), plaintiff third-party payors brought claims under the CFA, alleging that defendants' misrepresentations concerning the safety of the diabetes drug Rezulin "directly caused economic loss to them as purchasers, since they would not have bought defendants' product, rather than available cheaper alternatives, had they not been misled by defendants' misrepresentations." Id. at 349. Reversing the district court's dismissal of the CFA claim and remanding the case for further proceedings, the Second Circuit held that if plaintiffs established defendants' misrepresentations, then they could recover under the Act, as they were direct purchasers of the drug and would have suffered direct losses by paying for the drug. See id., 326 F.3d at 350 ("Plaintiffs point out that this and other courts have long recognized the right of HBPs to recover from drug companies amounts that were overpaid due to illegal or deceptive marketing practices."). Desiano specifically affirms the viability of the CFA claim that Plaintiff presses here.

Sidestepping any reference to Desiano, defendant cites Judge Waugh's Statement of Reasons in the Plumbers & Pipefitters Local 572 Health & Welfare Fund v. Merck & Co., Inc., Docket No. MID-L.857-02 action and suggests that analysis controls here. Def. Mem. at 4. Defendant, however, fails to acknowledge that Judge Waugh's prior decision rested heavily on

the district court decision in <u>In re Rezulin Products Liability Litig.</u>, 171 F. Supp. 2d 299

(S.D.N.Y. 2001) that <u>Desiano</u> reversed. Buchanan Cert. Exh. 2 at 8-11 (quoting the analysis and

reasoning of the district court in <u>Rezulin</u>). Indeed, the language from the <u>Plumbers</u>' decision that

defendant quotes — "[s]omeone who buys for the use of another does not qualify as a

'consumer,'" Def. Mem. at 4 — is contrary to the holding in <u>Desiano</u>, which permitted third-

party payor claims such as plaintiff's to proceed.[6]

     In the end, Plaintiff, misled by defendant's false statements and omissions regarding the

safety and efficacy of Vioxx, agreed to purchase — and did, in fact, purchase — Vioxx for its

plan members. The fact that Plaintiff purchased Vioxx for its plan members as part of its

prescription benefit plan does not render it any less a "person" or "consumer" to prosecute a

claim under the Act. To accept the narrow construction defendant urges would eviscerate the

deterrence the Legislature sought to foster with the enactment of the CFA. Accordingly,

defendant's CFA challenge should be denied.

---

[6]     As discussed in detail above, the test employed by Judge Waugh is similarly contrary to the standard espoused more recently by the Appellate Division in <u>Kavky</u>, <u>supra</u>, and in its earlier decision in <u>Zorba</u>, <u>supra</u>.

## II.   PLAINTIFF HAS PROPERLY PLEADED A CLAIM FOR FRAUD

The elements of the common law tort of fraud include: (1) a materially false representation or omission; (2) made with knowledge of its falsity (3) with the intention that the other party rely; (4) justifiable reliance; and (5) damage.  See Van Dam Egg Co. v. Allendale Farms, Inc., 199 N.J. Super. 452, 456-57 (App. Div. 1985).  Further, R. 4:5-8 provides:

> In all allegations of . . . fraud . . . particulars of the wrong, with
> dates and items if necessary, shall be stated insofar as practicable.
> Malice, intent, knowledge, and other condition of mind of a person
> may be alleged generally.

Plaintiff has properly pleaded all elements of its fraud claim, and defendant's motion to dismiss the class action complaint should be denied.

### A.   Plaintiff Has Specifically Alleged Defendant's Misrepresentations and Omissions

Defendant claims that Plaintiff failed to plead specific misrepresentations made by the defendant.  Def. Mem. at 6-8.  While New Jersey Civil Court Rules require parties to plead fraud with greater specificity than required for other causes of action, they only require specificity in so far as it is "practicable."  See, e.g., Dreier Co., Inc. v. Unitronix Corp., 218 N.J. Super. 260, 274 (App. Div. 1986).  In Dreier, the court held that the plaintiff stated the necessary elements of common law fraud where plaintiff simply alleged that "defendant knowingly and fraudulently represented that [a] computer system would satisfy plaintiff's business needs when in fact it could not, and that plaintiff relied upon the false representations by paying the contract purchase price."  Id.  The court refused to require plaintiffs to plead more information than they could reasonably acquire prior to discovery.

Plaintiff at bar, however, has provided sufficient detail of defendant's material misrepresentations and omissions regarding Vioxx to meet even the highest pleading standard.

11

A review of the Complaint shows that Plaintiff included numerous, specific allegations of defendant's misrepresentations. Plaintiff alleges that:

- defendant's marketing campaign minimized potentially serious cardiovascular findings from a Vioxx study and misrepresented Vioxx's safety profile (see Complaint at ¶¶ 20-21). The FDA sent a warning letter on July 16, 1999 warning defendant that Vioxx advertisements failed to include risk information and failed to present a brief summary of necessary information related to side effects, contraindications, and effectiveness, or to provide adequate provision for the dissemination of full product labeling in connection with its advertisement. (see id. at ¶ 15);

- the FDA sent a warning letter on December 16, 1999 warning defendant that Vioxx advertisements were "false and misleading because they contain misrepresentations of Vioxx's safety profile, unsubstantiated comparative claims, and are lacking in fair balance." Id. at ¶ 16. The FDA letter stated that while defendant's advertisements stated that Vioxx was safer than other NSAIDs, "this global superiority claim has not been demonstrated by substantial evidence, and therefore, is false and misleading." Id.

- the FDA sent another warning letter to defendant on September 17, 2001, stating that defendant's "promotional activities and materials . . . are false, lacking in fair balance, or otherwise misleading in violation of the Federal Food, Drug, and Cosmetic Act and applicable regulations. Id. at ¶ 16. The FDA specifically noted that defendant's claim that Vioxx has a "favorable safety profile" compared to other NSAIDs is "simply incomprehensible given the rate of [myocardial infarction] and serious cardiovascular events compared to naproxen." Id. at ¶ 17.

- defendant concealed material information that its cox-2 specific inhibitor, Vioxx, was less safe than traditional NSAIDs against which it was studied (see id. at ¶ 19);

- defendant failed to disclose medical and scientific information that showed that Vioxx is associated with significant and dangerous adverse cardiovascular events (see id. at ¶ 20);

- defendant made material misrepresentations and omissions regarding Vioxx's safety and efficacy (including its value and benefits)—the two most fundamental characteristics of a pharmaceutical product (see id. at ¶¶ 5-6, 13-22);

- defendant's promotional misrepresented the gastrointestinal risks of Vioxx and made broad superiority claims over other NSAIDs (see id. at ¶ 14);

- defendant failed to disclose the increased risk of hypertension and cardiac factors requiring aspirin or anti-coagulant use in rofecoxib users, and the increased risk of

stroke and myocardial infarctions in Vioxx users over naproxen users (see id. at ¶ 22);

- defendant caused to be published a study in the New England Journal of Medicine that omitted data regarding the severity of the cardiovascular risks associated with Vioxx (see id. at ¶ 22);

- the misrepresentations were made by defendant to Plaintiff (third-party payor) through defendant's "massive direct-to-consumer (DTC) advertising blitz" (see id. ¶ 23). Defendant also added hundreds of additional sales representatives and engaged in an aggressive sampling program to further spread the misrepresentations regarding Vioxx (see id.);

- defendant, motivated by their own economic self-interest (see id. ¶ 34), acted with the intent to induce Plaintiff to rely on their misrepresentations (see id. ¶ 44); and

- Plaintiff in fact was induced to and in fact relied upon defendant's misrepresentations and omissions (see id. ¶¶ 33, 43, 45).

Plaintiff has alleged with particularity that defendant misrepresented and omitted material facts regarding the safety and efficacy of Vioxx (specifically with regard to the potential for severe cardiovascular events and stroke) and that, in reliance upon those false and continuous representations and omissions, Plaintiff paid defendant an excessively high price for Vioxx. See also Hyland v. Kirkman, 157 N.J. Super. 565, 584 (Ch. Div. 1978) (holding Plaintiff adequately pleaded fraud and denying defendant' request for more definite statement where Plaintiff alleged that land was conveyed to heirs based on representation by defendant that title was good, that the representations were false, that defendant knew or should have know the representations were false and the representations were relied upon by heirs and damaged thereby). Plaintiff has further alleged where those misrepresentations were made—in marketing, promotional, pricing, and television advertisements.

Defendant complains that Plaintiff failed to state what was false or misleading about defendant's misrepresentations, or how defendant knew that the statements were false. The repeated FDA admonishments to defendant—on these very statements—show specifically what

13

was erroneous in defendant's representations and how and when, at the latest, defendant was notified that their statements were false. See Compl. ¶¶15-17. Moreover, the particulars that defendant claims should be pleaded exceed any reasonable pleading standard and involve matters that will be addressed in discovery. See, e.g., Talalai v. Cooper Tire & Rubber Co., 360 N.J. 547, 564-65 (Law Div. 2001) (rejecting claim that Plaintiffs failed to plead fraud with particularity under R. 4:5-8 because Plaintiffs failed to plead specific transactions and dates). At this juncture, it simply is not "practicable" to specify each and every representation, with particularity, that was made by defendant regarding Vioxx. Nevertheless, the repeated citations by the FDA of defendant's misrepresentations establish that defendant issued false statements regarding the safety and efficacy of Vioxx.

Defendant also argues that they did not owe Plaintiff any duty to disclose the omitted information to it and, therefore, Plaintiff cannot maintain a claim for omission of material facts. Defendant's argument, though, ignores prevailing case law. In general, pharmaceutical companies owe broad duties of disclosure to the public. See generally Perez v. Wyeth Labs., Inc., 161 N.J. 1, 29 (1999) ("On balance, we believe that the patient's interest in reliable information predominates over a policy that would insulate manufacturers."). Moreover, and more generally, even if a party owed no duty to speak on an issue, once it does speak, it must speak truthfully without omitting material information. See Strawn v. Canuso, 271 N.J. Super. 88, 105 (App. Div. 1994) (recognizing that "[e]ven where no duty to speak exists, one who elects to speak must tell the truth when it is apparent that another may reasonably rely on the statements made."); Tobin v. Paparone Constr. Co., 137 N.J. Super. 518, 524-25 (Law Div. 1975) ("Although a vendor may be under no obligation to speak concerning the thing he would sell, yet if he undertakes to do so he is bound not only to speak the truth in all he says but is

equally obliged to tell every material fact within his knowledge which might materially qualify such statements as he may have made."). There is no question that defendant here is alleged to have repeatedly and continuously spoken regarding both the efficacy and safety of Vioxx and, therefore, owed Plaintiff a duty to speak completely and truthfully. See, e.g., Compl. ¶¶ 21-24. Furthermore, these material omissions were pleaded with the same requisite particularity as defendant's misrepresentations. See id. Plaintiff has pleaded numerous material misrepresentations and omissions made by defendant, and therefore leave no ground for dismissal of Plaintiff's complaint.

### B.   Plaintiff Has Pleaded Reliance On Defendant's Numerous Misrepresentations

In addition to fully pleading defendant's ongoing misrepresentations, Plaintiff also properly pleaded its reliance on defendant's misrepresentations and omissions. Defendant misinterprets New Jersey law in arguing that Plaintiff has a "burden of pleading reliance with particularity." Def. Mem. at 8. Contrary to defendant's contention, it is the misrepresentations, not reliance, that must be pleaded with particularity by a Plaintiff asserting a fraud claim. See Rego Indust., Inc. v. American Modern Metals Corp., 91 N.J. Super. 447, 456 (App. Div. 1966) ("[A] pleading averring fraud must set out *the particulars of the wrong*, in as great detail as practicable.") (emphasis added); Kadison v. Horton, 142 N.J. Eq. 223, 225 (Err. & App. 1948) ("The pleadings must state *the facts which are relied on* as constituting the fraud.") (emphasis added).

Plaintiff has met its burden of pleading reasonable reliance on defendant's numerous fraudulent statements. Plaintiff set forth in great detail the system by which it decided to include Vioxx in its prescription plan. See Compl. ¶¶ 24-33. Defendant engaged in a fraudulent scheme of misrepresenting relevant facts about Vioxx in order to induce third-party payors, such as

15

Plaintiff, to purchase defendant's drug. See id. Defendant took an active role in portraying

Vioxx as superior to similar, less expensive drugs, which ultimately convinced Plaintiff to

authorize the purchase of Vioxx for its members. See id. In unambiguous terms, the Complaint

sets forth Plaintiff's reliance: "Had the significant negative undisclosed information concerning

the safety, efficacy, and benefits of Vioxx been disclosed in connection with defendant's

marketing efforts, plaintiff and other Third-Party Payors would not have purchased the drug, or

would not have done so on the terms they did." Compl. ¶ 33. The Complaint satisfies the

standard for pleading reliance in a fraud action.

Even had Plaintiff not pleaded specific reliance, it is still entitled to a presumption of

reliance because of defendant's numerous omissions of material facts about the safety and

efficacy of Vioxx. See Varacallo v. Mass. Mut. Life Ins. Co., 332 N.J. Super. 31, 49-50 (App.

Div. 2000) (holding that there is a presumption of reliance under New Jersey law where Plaintiff

has shown knowing omission by defendant); Cannon v. Cherry Hill Toyoda, Inc., 161 F. Supp.

2d 362, 374-75 (D.N.J. 2001) (same). Plaintiff cannot plead that they relied on statements that

defendant never made, and thus the law creates the presumption of reliance in omissions cases

such as this one. Plaintiff has fully pleaded that it relied, to its detriment, on defendant's

misrepresentations, and defendant's motion to dismiss should be denied.[7]

---

[7]        Should the court conclude that Plaintiff have failed to plead fraud with sufficient specificity, Plaintiff
respectfully requests that the Court permit Plaintiff the opportunity to replead. See Talalai, 360 N.J. Super. at 554;
Rebish v. Great Gorge, 224 N.J. Super. 619 (App. Div. 1988) (recognizing Plaintiff should be given opportunity to
replead to meet dicates of R. 4:5-8 and remanding case to trial court so that Plaintiff could do so).

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss Plaintiff's class action

complaint should be denied.

Dated:  February 16, 2004

Respectfully submitted,

SEEGER-WEISS LLP

By: _____
    Christopher A. Seeger, Esq.
    David R. Buchanan, Esq.
    550 Broad Street, Suite 920
    Newark, New Jersey  07102-4573
    Tel. (973) 639-9100
    Fax (973) 639-9393

    John E. Keefe, Jr.
    Sharon McCloskey
    Lynch Martin
    830 Broad Street
    Shrewsbury, New Jersey 07702
    Tel. (732) 224-9400
    Fax (732) 224-9494

    **Co-Counsel and on the Brief**

    Joe R. Whatley, Jr., Esq.
    ASB 1222-469J
    Whatley Drake, L.L.C.
    2323 2nd Avenue North
    Birmingham, AL 35203
    Telephone: (205) 328-9576
    Facsimile:  (205) 328-9669

    Dennis Reich, Esq.
    Reich & Binstock
    4265 San Felipe
    Suite 1000
    Houston, TX  77027
    Telephone:  (713) 622-7271

Facsimile:  (713) 439-0727

**Attorneys for Plaintiff**

18