# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re:  VIOXX®PRODUCTS LIABILITY LITIGATION | MDL 1657<br>SECTION L<br>JUDGE FALLON<br>MAG. JUDGE KNOWLES |
| THIS DOCUMENT RELATES TO: | Case No: 2:09 CV024:30EEF-DEK |
| **Catherine Singleton,**<br>**Sandra Hammack, obo the Estate of Velma Dunn**<br>v.<br><br>**Merck & Co., Inc.** | PLAINTIFF<br><br><br><br>DEFENDANTS |

### PLAINTIFF, SANDRA HAMMACK, OBO THE ESTATE OF VELMA DUNN'S MEMORANDUM IN OPPOSITION TO DEFENDANT MERCK, SHARP & DOHME CORP.'S MOTION FOR SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW

On October 24, 2013, Defendants Merck, Sharp & Dohme Corp. ("Merck") filed a Motion for Summary Judgment and Incorporated Memorandum of Law ("Motion") in Plaintiff's case. Merck's Motion alleges that because Plaintiff claimed a myorcardia infarction in her Future Evidence Stipulation ("FES"), she cannot claim she suffered a pulmonary emolism as well as other injuries that she suffered, such as a congestive heart failure, kidney failure, and thromboembolic pulmonary hypertension, and that the Court should dismiss her from the litigation. For multiple reasons, as set forth herein, the FES is not enforceable, and the Court should not grant summary judgment against Plaintiff's claims.

1

**FACTS**

Velma Dunn was taking Vioxx as early as October and November of 2000. She took Vioxx consistently from October and November 2000 until she passed away on or about October 6, 2001.

She took Vioxx 25 mg tablets until within a few days of passing away. Plaintiff's representative filed her complaint, alleging strict liability, failure to warn, negligence, breach of express warranty, and breach of warranty of fitness for a particular purpose.

Plaintiff was enrolled in the Vioxx Resolution Program ("the Resolution Program"). As part of entering the Resolution Program, Plaintiff submitted numerous medical records as part of her claims package. These records show that Plaintiff suffered a pulmonary embolism as well as other injuries such as kidney failure, congestive heart failure, and thromboembolic pulmonary hypertension, etc.

In order to enter any client into the Resolution Program, the enrolling attorney had to enter 100% of their clients into the program, or withdraw from representing those clients (MSA §1.2.8). As a result, attorneys that represented more than one client, or clients with different types of injuries (i.e., one client suffered an MI and another client suffered a PE), were put in an ethical dilemma that pitted the interest of one client against the other –put all of your clients into the settlement program, knowing that your clients not alleging a heart attack, stroke, or sudden cardiac death would not qualify for resolution and face dismissal; or withdraw from representing those clients that did not suffer a heart attack, stroke, or sudden cardiac death; or put none of your clients in the Resolution Program, with the knowledge that Merck would not settle any case outside of the Resolution Program, as it claimed at the time. Attorneys were put in a quandary – to which client did the attorney owe the duty of representation, the client that suffered from a

heart attack or the client that did not? Some attorneys withdrew as counsel from further representation of all clients who did not suffer a heart attack or stroke, or who would not allege a heart attack or stroke.  However, some attorneys, like Plaintiff's counsel herein, entered their clients into the settlement program, and some of those facially ineligible clients received settlements.

Plaintiff was not found to be eligible for a settlement through the Vioxx Resolution Program. From there, she had two options – to appeal to a Special Master, or to execute a Future Evidence Stipulation in return for her release and stipulation of dismissal she signed when entering the Program. MSA § 2.6.3 and § 2.7.3. Plaintiff was deemed ineligible for an award of monetary funds. She declined to appeal to a special master, and signed an FES.

Plaintiff filed a case-specific expert report, wherein Dr. Dwight Dishmon states that Vioxx was a substantial factor in causing Plaintiff's injuries and death, to a reasonable degree of medical certainty based on reasonable medical probability.

Merck took Plaintiff's representative's deposition on or about July 28, 2011. The Complaint was filed in this case on or about the 21st day of September, 2007 and it was transferred to MDL US. District Court in Louisiana on or about February 04, 2009. During all of this time there was never any move to dismiss the claim.

On October 24, 2013, more than four years after Plaintiff signed the FES, Merck moved for summary judgment in Plaintiff's case, on the basis that Plaintiff's FES states she suffered a myocardial infarction, a FES injury, and arguing that only that injury can now be claimed.

## ARGUMENT

### I. THE APPLICABLE STANDARD OF REVIEW.

Summary judgment is only proper where "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." "More important for present

3

purposes, summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)

Here, there is certainly a genuine dispute as to whether Plaintiff suffered an injury, a pulmonary embolism and other injuries such as kidney failure, congestive heart failure, etc. Plaintiff has produced *prima facie* evidence that she suffered an injury. Plaintiff's medical records, expert reports, and testimony evidence that she had the foregoing injuries. Merck attempts to bind Plaintiff to alleging a myocardial infarction. The Court should not grant Merck's Motion, given that Plaintiff has established she had suffered injuries and because the FES is unenforceable.

## II.     PLAINTIFF'S COMPLAINT CONTROLS HER CLAIMS.

Plaintiff's complaint sets out her causes of action. Plaintiff's complaint alleges strict liability, negligence, failure to warn, breach of express warranty of merchantability, and breach of warranty for a particular purpose. It further states that because of the actions or inaction of the Defendants, Plaintiff was damaged. It does *not* claim a [FES injury], nor does it limit Plaintiff's claim to heart attack or stroke. Each claim is still pending before the Court. Plaintiff has entered into no agreements or stipulations limiting her claims, nor has the Court dismissed any of Plaintiff's causes of action against Merck. Merck argues that the FES is tantamount to a dismissal, but Merck did not make dismissal a condition of return to the litigation. It was not Plaintiff's intent to dismiss her claims at the time she exercised her right to return to the litigation. The Future Evidence Stipulation is just that – a stipulation as to evidence. It should not act as a limitation on Plaintiff's complaint.

As stated in *Surowitz v. Hilton Hotels Corp.,* 383 U.S. 363, 373 (1966), Plaintiff's complaint should be adjudicated by the courts:

> [t]he basic purpose of the Federal Rules is to administer justice through fair trials, not through summary dismissals as necessary as they may be on occasion . . . . [i]f rules of procedure work as they should in an honest and fair judicial system, they not only permit, but should as nearly as possible guarantee that bona fide complaints be carried to an adjudication on the merits.

### III.     THE FES IS NOT ENFORCEABLE.

The Court is not bound by the stipulation nor required to enforce it. The federal courts recognize several scenarios where a stipulation is not enforceable: when parties stipulate to facts that do not exist; when evidence contrary to the stipulation is substantial; when enforcing the stipulation would be manifestly unjust; and when a stipulation regards questions of law.  Under no scenario is Plaintiff's FES enforceable for the purpose as described by Merck's Motion.

> a. Merck selectively emphasizes one clause contrary to the intent of the entire document.

If one reads the FES it is directed to proof that can be used to make the case. No more Vioxx usage, no new medical records. It limits Plaintiff to injury shown in those records. Then, at the very end, it adds a clause that "I will not allege an injury other than I claimed though the Program, which is reflected in Section A". This is contradictory. Plaintiff alleges injuries by the records she filed. Those are different than the conclusion of a lawyer in a claims form-- that is contradictory

> b. The FES is not enforceable because it stipulates to facts that do not exist.

irst, "the parties cannot create a case by stipulating to facts that do not exist." *See Sinicropi v. Milone,* 915 F.2d 66, 68 (2d Cir.1990); *PPX Enterprises, Inc. v. Audiofidelity, Inc.*, 746 F.2d 120, 123 (2d Cir. 1984);  *In re Kriss*, 217 B.R. 147, 154 (Bankr. S.D.N.Y. 1998); *Brown v. Stone*, 66 F. Supp. 2d 412, 428 (E.D.N.Y. 1999); *In re Roland*, 294 B.R. 244, 250 (Bankr. S.D.N.Y. 2003).

Merck alleges that Plaintiff stipulated to a myocardial infarction in her FES, and that she is prohibited from pursuing any other injury. By definition the stipulation exists for the express purpose of un-making Plaintiff's case by a conclusory binding to facts that do not exist. The evidence in Plaintiff's claims package at the time she entered the Resolution Program and at the

time she signed her FES proves she suffered an injury or injuries. It is nonsensical to enforce a stipulation that "pretends" the Plaintiff suffered an injury. Here, enforcing the future evidence stipulation would be the equivalent of enforcing a stipulation to facts that do not exist. The Court is not bound to accept the parties stipulation to facts that do not exist.

It is worth emphasizing that Merck is not trying to enforce a stipulation as to the Vioxx used, or the records which exist. Instead, it is seeking to enforce a conclusion about a **medical event**, a circumstance not within the purview of Plaintiff's knowledge. And it is seeking to use that event to get dismissal, an outcome for which it could have but did not negotiate as part of the return to the litigation. The FES is unenforceable for the purpose sought by Merck.

    c. The FES is not enforceable because the evidence contrary to the stipulation is substantial.

The court is not bound by a stipulation if evidence contrary to the stipulation is substantial. *In re Roland*, 294 B.R. at 244; *Sinicropi v. Milone,* 915 F.2d at 68; *PPX Enters., Inc. v. Audiofidelity, Inc.,* 746 F.2d at 123; *Epstein v. Kalvin–Miller Int'l, Inc.,* 100 F.Supp.2d 222, 225 (S.D.N.Y.2000); *Loftin and Woodard, Inc. v. United States*, 577 F.2d 1206, 1232 (5th Cir. 1978). "[T]he trial court has not only the right but the duty to relieve a party from a pretrial stipulation where necessary to avoid manifest injustice . . . where there is substantial evidence contrary to the stipulation." *Rathborne Land Co., L.L.C. v. Ascent Energy, Inc.*, 610 F.3d 249, 262-63 (5th Cir. 2010) quoting *Coastal States Mktg., Inc. v. Hunt,* 694 F.2d 1358, 1369 (5th Cir.1983).

Here, substantial evidence exists that is contrary to the FES. Plaintiff's medical records show that she had an injury or injuries–pulmonary embolism, kidney failure, congestive heart failure, etc. In Plaintiff's case specific expert report, Dr. Dan Dishmon stated that Vioxx was a substantial factor in causing Plaintiff's injury or injuries. Plaintiff's representative testified about

Velma Dunn's injury or injuries in the deposition. All of the evidence supports Plaintiff's claims of injuries, contrary to the [FES injury] which is noted in her FES. Thus, the FES is unenforceable.

    d. The FES is not enforceable because its enforcement would be manifestly unjust.

The trial court "has not only the right but the duty to relieve a party from a pretrial stipulation where necessary to avoid manifest injustice . . ." *United States v. State of Tex.*, 680 F.2d 356, 370 (5th Cir. 1982); *Central Distributors, Inc. v. M.E.T., Inc.,* 403 F.2d 943, 945 (5th Cir.1968), *Coastal States Mktg., Inc. v. Hunt*, 694 F.2d at 1369; *Rathborne Land Co., L.L.C. v. Ascent Energy, Inc.*, 610 F.3d at 262-63 (5th Cir. 2010).[1]

It would be an extreme injustice to bar Plaintiff's claims simply because she did not have a FES injury-stroke or heart attack, as listed in her FES. As the Court knows, many plaintiffs who did not have a heart attack or stroke were placed in the Vioxx Resolution Program. These plaintiffs were not afforded a remedy through the Program, and Merck repeatedly stated it would not settle one case outside of the Program. Plaintiff, in essence, would be punished for having other injuries rather than a FES stroke or heart attack. Plaintiff filed her lawsuit more than six years ago and deserves her day in Court. Dismissing Plaintiff's case because her FES stipulated that she had a FES injury would be an injustice.

    e. The FES is not enforceable because it seeks to control questions of law.

Finally, a court is not required to accept a stipulation regarding a question of law. *Estate of Sanford v. Commissioner of Internal Revenue,* 308 U.S. 39, 51 (1939), *In re Roland*, 294 B.R. at 244, *United States v. John J. Felin & Co.,* 334 U.S. 624, 640 (1948); *Swift & Co. v. Hocking*

---

[1] *See also In re Roland*, 294 B.R. at 244; *Sinicropi v. Milone,* 915 F.2d at 68; *PPX Enters., Inc. v. Audiofidelity, Inc.,* 746 F.2d at 123; *Epstein v. Kalvin–Miller Int'l, Inc.,* 100 F.Supp.2d at 225; *Loftin and Woodard, Inc. v. U.S.*, 577 F.2d at 1232.

*Valley Ry. Co.,* 243 U.S. 281, 289–90, (1917); *Sinicropi v. Milone,* 915 F.2d at 68; *Fisher v. First Stamford Bank & Trust Co.,* 751 F.2d 519, 523 (2d Cir. 1984).

The FES is a stipulation as to conclusion, not as to a fact. As discussed *supra*, the FES stipulates to a conclusion that is not supported by the actual evidence, hence it is comparable to asking a party to stipulate the law. Those stipulations should not be enforced by the Court.

To the extent the FES seeks to control the evidence that Plaintiff may submit it presents different issues, not addressed by Merck's motion. By doing so, it serves as a prohibition on further discovery and on F.R.C.P. 26, and on Plaintiff's complaint and the legal theories that Plaintiff may present to the Court. The FES is an improper limitation on Plaintiff's cause of action against Merck to pursue her claims as referenced above as set out in her Complaint. For all the above stated reasons, the Court has a duty to not enforce the FES.

**IV.** The FES is not supported by valid consideration.

Under Mississippi law, the FES is not supported by consideration. Plaintiff received no consideration for entering into the FES. In order to form an agreement under Mississippi law, a contract must have offer, acceptance, and consideration. Any act or forbearance which is of benefit to the promisor or of detriment to the promisee is consideration. Further, the promise must induce the detriment, and the detriment must induce the promise. See *Marshall Durbin Food Corporation vs. Baker 909 So2d 1267 at 1269, 1270 (Miss. App 2005).*

Here, Plaintiff did not receive the benefit of the bargain. The benefit of resolving her claims – which was the inducement to enter into the Resolution Program – was always illusory, and was not a benefit to Plaintiff, but to other plaintiffs represented by Plaintiff's attorney who suffered a heart attack or stroke. What did Plaintiff receive as a result of entering the Resolution Program? Nothing. Plaintiff received no benefit from entering into the Resolution Program.

8

There was never a promise that Plaintiff's claims would be resolved through the Program. Merck, on the other hand, was not required to resolve Plaintiff's claims but got the "free" benefit of having Plaintiff sign the FES. This was a one-sided deal.. *See Rotenberry v. Hooker, 864 So2d 266, 270 para 13 (Miss 2003) and as well see City of Starkville v. 4-County Electric Power Association, 819 So2d 1216, 1220, para 10 (Miss 2002).*

**V.**     The FES Does Not Limit Plaintiff to Alleging an MI and is ambiguous.

The FES does not limit Plaintiff to alleging a heart attack. Plaintiff's FES states the following:

> I stipulate that I will not attempt to introduce in any court of law or tribunal any evidence contrary to, or in addition to, the allegations, facts or records that were presented to the Program's Claims Administrators, as contained in my Claims Package, or allege an injury connected with Vioxx other than the injury or injuries I claimed through the program, which is/are reflected in Section A of this stipulation. FES, Paragraph 6.

What Merck fails to mention is that evidence of Plaintiff's pulmonary embolism is contained inside her claims package, in the medical records originally collected by Merck. *See* documents that show Dunn had a PE and other injuries. Thus, her claims package does contain evidence of her PE, kidney failure, congestive heart failure, etc.

Further, the FES is ambiguous and contradictory. It contains two clauses that more or less serve the same purpose, Paragraphs 4 and 6. In addition to Paragraph 6, above, the FES states:

> I further understand and specifically acknowledge and stipulate that if I should decide to pursue the claim outside of the Program, I may not make any allegations or introduce any evidence regarding: (a) Vioxx usage, including but not limited to the dose, duration, consistency of Vioxx usage, and/or alleged proximity of use of Vioxx to the date of alleged injury; (b) medical history; and/or (c) alleged injury, other than as were made and included in the Program through the Claims Package associated with my claim. I have reviewed the contents of the Claims Package associated with my claim and have certified its contents.

9

FES, Paragraph 4.

Paragraph 4 serves the same essential purpose as Paragraph 6 – to limit a plaintiff to evidence contained within her claims package. As to alleged injury, the plaintiff is limited to claims "made and included in the Program through the Claims Package associated with my claim." Again, Plaintiff's Claims Package contains evidence of her PE, kidney failure, congestive heart failure, etc. However, unlike Part 6, Part 2 does not limit the plaintiff to the injury reflected in Section A. When it comes to Plaintiff's claims, does the more restrictive Part 6 control or does Part 2 control, since they ultimately both deal with exiting the Resolution Program?[2]

Because multiple versions of the FES exist, and because the FES is contradictory, it should not be enforced.

### VI. The FES is not a waiver of Plaintiff's claims was never intended to act as such.

The FES is not a waiver of Plaintiff's right to pursue an injury other than an MI. Waiver is the "intentional relinquishment of a known right." *United States v. Olano,* 507 U.S. 725, (1993), quoting *Johnson v. Zerbst,* 304 U.S. 458, 464 (1938). The elements of waiver are 1) a right must exist at the time of the waiver; 2) the party who is accused of waiver must have constructive or actual knowledge of the right in question; and 3) the party intended to relinquish its right. *Broad. Satellite Int'l, Inc. v. Nat'l Digital Television Ctr., Inc.,* 323 F.3d 339, 345 (5th Cir. 2003). Here, Plaintiff did not intend to relinquish her right to pursue her PE injury. After she was rejected from the Program, she has continued to comply with the Court's scheduling order.

---

[2] Further, Paragraph 6 of the original FES, as contained in the Settlement Agreement, reads differently than the one signed by Plaintiff. It does not contain a Section A that the Plaintiff signed off on. Instead, Paragraph 6 reads: "I stipulate that I will not attempt to introduce in any court of law or tribunal any evidence contrary to, or in addition to, the allegations, facts or records that were presented to the Program's Claims Administrator, as set forth in or appended to my Claims Package, or allege an injury connected with Product other than the injury I claimed through the Program." *See* Exhibit 2.7.3, Original Future Evidence Stipulation.

VII. The FES is an Adhesion Contract and is unconscionable.

As the Court knows, many Plaintiffs who did not have a myocardial infarction, ischemic stroke or sudden cardiac death were entered into the Vioxx Resolution Program. Simply, there was no recourse for Plaintiff, and she was forced into the Vioxx Resolution Program despite that it was not in her interest to do so. *See Sanderson Farms v. Gatlin 848 So2d 828 (Miss 2003) and Cleveland v. Mann, et al, 942 So2d 108 (Miss 2006).*

An agreement is unconscionable when it is so one sided that it shocks the conscience or is so manifestly unjust that it should not be enforced.

VII. Merck Has Waived The FES in the Vioxx Litigation.

Moreover Merck has requested medical records in my clients case despite that an FES exists. Therefore Merck has waived the right to proceed with a Motion For Summary Judgment.

VIII. Laches

Plaintiff signed her FES in August of 2009. Accordingly, Merck's Motion is barred by laches. Under Mississippi law, laches acts as a bar to Merck's filing of it's Motion For Summary Judgment on or about October 24, 2013. See *Grant v. State 686 So2d 1078, 1089. (Miss 1996) and Bailey and Lapp v. The Estate of Kemp, et al. 955 So2d 777, 780-782 (Miss 2007).*

## **CONCLUSION**

For the aforementioned reasons, Merck's Motion for Summary Judgment should be denied.

This the 19th day of December, 2013.

Respectfully submitted

SANDRA HAMMACK

OBO ESTATE OF VELMA DUNN, (D)

/s/ Bennie L Jones, Jr

BENNIE L JONES, JR, MSB#3185

OF COUNSEL:

BENNIE L JONES, JR, ESQ.,

B.L. JONES., JR & ASSOCIATES

P O BOX 357

206 COURT STREET

WEST POINT, MS 39773

662.494.1024

CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Plaintiff, Sandra Hammack, obo Estate of Velma Dunn's Memorandum in Opposition to Merck. Sharpe & Dohme Corp's Motion For Summary Judgment has been electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system via electronic filing to:   Hon. Phillip Wittman

Stone Pigman Walther & Wittman, LIC

546 Carondelet Street

New Orleans, LA 70130

Hon. Douglas R. Marvin

Williams & Connolly, LLP

725 Twelfth Street, NW

Washington, DC 20005

Hon. Ann B. Oldfather

Oldfather Law Firm

1330 S. Third Street

Louisville, KY 40208

Hon. Russ M. Herman

Herman, Herman, Katz & Cotlar, LLP

820 O'Keefe Avenue

New Orleans, LA 70113

This the 19th day of December, 2013.

/s/ Bennie L. Jones, Jr.
Bennie L. Jones, Jr.

13