UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: VIOXX | * | MDL NO. 1657 |
| | * | |
| PRODUCTS LIABILITY | * | SECTION  L |
| LITIGATION | * | |
| | * | JUDGE FALLON |
| THIS DOCUMENT RELATES TO: | * | |
| THIRD PARTY PAYOR COMMON | * | SPECIAL MASTER JUNEAU |
| BENEFIT FEES | * | |
| | * | |
| FILER: Robert E. Arceneaux/Margaret Woodward/ | * | December 20, 2013 |
| Pascal F. Calogero, Jr. | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**ERIC H. WEINBERG'S OBJECTION TO THE TPP FAC'S
REVISED PROPOSED ALLOCATION AWARDS
AND REPLY TO ITS RESPONSE
TO HIS OBJECTION TO THE SPECIAL MASTER'S
REPORT AND RECOMMENDATION REGARDING
<u>THIRD PARTY PAYOR  COMMON BENEFIT AWARDS</u>**

MAY IT PLEASE THE COURT:

     Before this Court are two related recommendations for the award of common benefit fees and costs in the private Third Party Payor ("TPP") litigation: 1) a partial recommendation by the Special Master, which relates only to the applications of the Law Offices of Eric H. Weinberg ("Weinberg")  and two of the four Central States firms; and 2) the revised recommendation of the TPP Fee Allocation Committee (FAC) for an allocation to all remaining applicants for common benefit awards. In this memorandum, Weinberg replies to the FAC's opposition to his objection to the Special Master's Report, and objects to the FAC's revised proposed allocation.

     **I. Summary of the Argument**

     Weinberg and the FAC agree on one central point: that lodestar is an essential component of the allocation determination, which ought not to be adjusted absent specific evidence.  TPP FAC Response to Objections ("FAC Response"), Rec. Doc. 64752-2, pp. 10, 20, *citing La. Power & Light v. Kellstrom,* 50 F. 3d 319, 329 (5th Cir. 1995), *et al.*

     Over the course of this objection process, Weinberg has shown, in specific and documented

detail, widespread and profound defects in the lodestar data provided by many FAC members and a favored additional few. The defects include broad swaths of entries duplicated with other firms (*e.g.,* Dugan and Murray), duplicated within a firm (*e.g.,* Herman), duplicated with time compensated in the personal injury litigation (*e.g.,* Levin), unrelated to the private TPP litigation (*e.g.,* Dugan), and patently fictitious entries (*e.g.,* Dugan).

These defects are particularly pertinent to the allocation of a limited fund which the FAC contends is inadequate to the claims made against it. The FAC contends, "[a]lthough Weinberg recognizes that the total combined lodestar of all TPP counsel far exceeds the $15 million dollar fund available to pay these counsel, he demands 100% compensation for *all* the time he submitted." FAC Response, p. 20. Weinberg's application, we first note, is a respectful submission rather than a "demand." What he has done is to demonstrate, conclusively, that to the extent that any other firm in this litigation is entitled to receive its lodestar, he is equally entitled. If this produces a shortfall in the fund, Weinberg understands that it is up to the Court to make appropriate adjustments, so long as the ultimate allocation is *relatively* fair with each slice of the pie fair in comparison to each other slice, as the Fifth Circuit has ordained in *In re High Sulfur*. The solution to a shortfall is not to buzz cut some, give a close shave to others, and grossly overcompensate others. But, the truth is that there is no shortfall. Weinberg has shown that if the defective lodestar data were eliminated, the fund would be more than adequate to satisfy not only 100% of *his* entirely legitimate claim, but 100% of *every* applicant's legitimate claim.

The FAC has never satisfactorily responded to Weinberg's detailed showings, except by expressions of indignation which seem to heighten in inverse proportion to the availability of reasoned rebuttal. For example, it calls Weinberg's criticisms "specious. . .canards." FAC Response, pp. 13, 21. A talented turn of phrase is no substitute for evidence, however. Neither here nor in its prior submissions has the FAC persuasively defended the time records on which its recommendations depend.

To the contrary, the FAC has grudgingly acknowledged that at least some of Weinberg's criticisms have merit. For example, in a prior brief, the Herman firm made a $250,000 "correction" to its time submissions. But then, for every error found by Weinberg, the firm allegedly found an error that counteracted it, so that its lodestar, and more importantly, the FAC's recommendations to pay the lodestar never changed– until the latest recommendation *increased them*. As we read Herman's submission, which is difficult to comprehend, it suggested that time had been erroneously omitted, and further, that it was entitled to a rate hike. Rec. Doc. 64235-3, pp. 3, 10. The additional increases to allocations for the Seeger, Dugan, Lieff, Cabraser and Hagens firms have not been explained. In testimony before the Special Master, Mr. Seeger testified that certain other errors had been brought to its attention and "corrected." Tr., p. 83. Mr. Seeger further invited the Special Master to make further adjustments, *i.e.*, cuts, for the acknowledged "gotcha moments" in Weinberg's briefs. *Id.* But as noted in Weinberg's objection to the Special Master's Report, such adjustment was outside the master's charge, which confined his attention to the claims of Weinberg and the Central States objectors. Rec. Doc.64721, pp. 3, 45-46.

Incredibly, the FAC's Revised Allocation Recommendation *makes no adjustment whatsoever for the proven, and in some instances **acknowledged** errors in the lodestar data.* Its only revisions were to accept the Special Master's recommendations for three of the objectors, *increase* its recommendations for the Herman, Seeger, and Dugan firms, and then make across-the-board *pro rata* adjustments– to legitimate and illegitimate claims alike– in order to fund the proposed increases. Rec. Doc. 64752-23.

The FAC urges this Court to accept without question its recommendations, notwithstanding the wild aberrations in the lodestar data on which those recommendations were supposedly premised, and the visibly flawed conclusion which the FAC embraces, namely that the fund is inadequate to the claims against it. The FAC further urges the Court to accept the Special Master's recommendations, which rely upon the FAC's keystone premise of an inadequate fund,

notwithstanding that the master did not examine that doubtful premise because it was outside his limited charge. The FAC further urges the Court to accept the master's conclusion that 85% of Weinberg's time was not related to the private TPP litigation, notwithstanding the fact that the master's conclusion was based on Mr. Seeger's demonstrably erroneous testimony on the point.

The FAC supports an 85% reduction of Weinberg's time by completely ignoring both his time records and the newly-presented evidence in rebuttal of Mr. Seeger's testimony. Instead of answering the serious questions raised by this evidence, the FAC pretends that the evidence simply does not exist and urges this Court likewise to ignore Weinberg's evidence, on the ground that it has not been timely submitted. The time records were submitted years ago. And the newly-submitted evidence has been properly presented for this Court's review because this objection offers the first opportunity for Weinberg's rebuttal of testimony he could not have anticipated. Essentially, the FAC urges this Court to function as the rubber-stamp the Court has always refused to be.

Interestingly, although the FAC urges adoption of the Special Master's recommendations in full, it notes without comment that the master completely overlooked two of the four Central States objectors, making no reference to them nor recommendation for them. For these two firms, the FAC simply offers its own prior allocation recommendation. This quiet acknowledgment of a rather serious mistake in the master's recommendation works powerfully against the FAC's argument that the master's recommendations are unassailably correct.

Equally significant to this Court's analysis is the fact that neither the FAC nor the Special Master have conducted the comparative review required by Fifth Circuit and this Court's precedent. A comparative review will show that Weinberg's contributions to the TPP common benefit warrant full compensation of his lodestar and costs from a fund which is adequate to his and every other legitimate claim.

## II. Argument

### A. Standard of review

The FAC properly notes that the standard by which this Court is to review the Special Master's findings and recommendations is *de novo*. FAC Response, p. 10. It goes on to argue, however, that this Court should adopt the master's exact recommendations for each of the objectors, except, of course, the two firms the Master overlooked, in which cases it should adopt the FAC's unexamined recommendations.

Such deference to the master's recommendations would be fundamentally inconsistent with the concept of *de novo* review, which has an accepted meaning in the law. It means an independent determination of a controversy that accords no deference to any prior resolution of the same controversy. Thus, in *Renegotiation Board v. Bannercraft Clothing Co.*, 415 U.S. 1, 23, 94 S.Ct. 1028, 1040, 39 L.Ed.2d 123, the Court had occasion to define "*de novo* proceeding" as a review that was "unfettered by any prejudice from the [prior tribunal's] proceeding and free from any claim that the [prior tribunal's] determination is supported by substantial evidence." And, in *United States v. First City National Bank*, 386 U.S. 361, 368, 87 S.Ct. 1088, 1093, 18 L.Ed.2d 151, the Court observed that "review *de novo*" means "that the court should make an independent determination of the issues" and should "not . . . give any special weight to the [prior] determination of" the [prior tribunal].

Rather, as this Court has repeatedly observed, the Special Master's recommendations are but one more part of the record which may inform this Court's independent analysis. As Weinberg stated in his objection, several factors work against this Court's according any deference to the master's conclusions: 1) he did not have the benefit of a proportionate analysis integral to proper allocation; 2) he made serious errors of fact which undercut the reliability of his conclusions; and 3) many of the master's errors of fact derived in turn from errors in the testimony of the FAC's witness, Chris Seeger.

To correct the factual errors made by the Special Master, Weinberg introduced a substantial record for consideration in this Court's *de novo* review. The FAC contends that this Court should

ignore the new evidence because "Mr. Weinberg improperly and unfairly attempts to augment the record *after* the Special Master has already ruled, *after* Mr. Weinberg had ample opportunity to present all available and relevant evidence to the Special Master, and all of this *after* Mr. Weinberg had originally agreed to rest on his papers. . ." FAC Response, p. 11.

The FAC's argument misrepresents the procedural circumstances. Weinberg and the FAC mutually agreed to rest on their papers. Had the submission gone forward as agreed by the parties, there would not have been a scintilla of evidence in the record to support any reduction in Weinberg's lodestar, because the FAC had produced none, despite the Special Master's specific instructions to the FAC to produce any evidence on which it relied in making its recommendations. However, on June 10, 2013, two weeks after the parties' submission on briefs, the master entered a revised scheduling protocol, fixing a hearing on June 20, 2013 for the sole purpose of the parties' responding to questions from the master. At the outset of that hearing, the master reiterated what he had previously told the parties, *viz.,* that this was not a true evidentiary hearing, and that there would be no examination or cross-examination of the witnesses by anyone but him. Tr., p. 2. The parties then responded to the master's questions in the order established by the master, with Weinberg testifying first and Mr Seeger last.

The FAC's contention that Weinberg had "ample opportunity to present all available and relevant evidence to the Special Master" suggests one of two possibilities: 1) that Weinberg had the opportunity to cross-examine or rebut Mr. Seeger's testimony, which the master made clear he did not; or 2) that Weinberg should have anticipated and countered Mr. Seeger's yet-unheard allegations in his testimony, which preceded Mr. Seeger's. Two factors prevented such prescient rebuttal-in-advance: 1) the FAC, at that late date in the preceding and contrary to the master's instructions, had produced no evidence of the factual basis for its rejection of Weinberg's lodestar; and 2) Mr. Seeger's testimony was contrary to the facts of Weinberg's actual involvement in the TPP litigation, which made it particularly difficult for Weinberg to anticipate.

This objection phase, then, provided the first and only opportunity Weinberg has had to rebut the startling and erroneous testimony offered by Mr. Seeger, on which the master's recommendations rely. Moreover, the lateness of the submission is attributable to the FAC's eleventh-hour revelation of the basis for its case, rather than to any dilatoriness on Weinberg's part. Also, the new evidence does not visit any undue prejudice on the FAC, as it consists almost entirely of interactions between Weinberg and either Mr. Seeger directly, members of his firm, or other members of the team Mr. Seeger had assembled to work on the New Jersey TPP litigation.

Under such circumstances, the law clearly establishes the appropriateness of the submission of new evidence. This much is evident from the sole case cited by the FAC on this point. *Commisariat À L'Energie Atomique v. Samsung Electronics Co.,* 245 F.R.D. 177, 179-180 (D. Del. 2007)("*De novo* review . . .does not necessarily mean a review that includes the submission of new evidence, particularly when evidentiary proceedings previously occurred before the Special Master."). Other cases have clarified that "limiting the scope [of the record] is contrary to the concept of *de novo* review," and that "the reviewing court is not confined to the . . .[prior] record, but may pursue whatever further inquiry it finds necessary or proper to the exercise of the court's independent judgment." *Luby v. Teamsters Health, Welfare, and Pension Trust Funds,* 944 F. 2d 1176, 1184 (3rd Cir. 1991); *Patton v. MFS/Sun Life Financial Distributors, Inc.,* 480 F. 3d 478, 491 (7th Cir. 2007)(involving *de novo* review of administrative record under ERISA).

As the Special Master explicitly said, there was no evidentiary hearing below and no opportunity to correct Mr. Seeger's factual misstatements. Thus, the FAC's argument for exclusion of Weinberg's evidence suggests that this Court exercise its "independent" judgment without regard for the accuracy of the record before it.

> **B. The Special Master's recommendation for Weinberg should be given no weight because the evidence upon which it was purportedly based is unreliable and not credible.**

Having argued against this Court's consideration of Weinberg's evidence, the FAC proceeds

to defend the Special Master's findings on the basis of the record before the him. It restates arguments it made in prior submissions, *see,* Rec. Doc. 64425, and makes no response to the evidence showing that its alleged facts are unfounded. Ignoring the truth will not make it go away, any more than repeating lies over and over will give them veracity.

At pages 32-33 of his Objection memorandum, Weinberg refuted the FAC's contention that 85% of his time was spent on work with two experts. At pages 33-34, he refuted the FAC's contention that his work was not new, and further showed the significance of the work to the private TPP cases. At pages 23-32, Weinberg rebutted, mostly on the bases of exchanges between and among him, Mr. Seeger, Mr. Seeger's firm, and the other members of the Seeger-assembled team, Mr. Seeger's hearing testimony that the work was unauthorized and valueless. Only some of the latter material is new. All of the arguments were presented to the Special Master in the May, 2013 submissions, *see,* Rec. Docs. 64396, 64422, including a response to the FAC's misbegotten and eminently forgettable note 4, FAC Response, p.5, which it has restated despite the fact that the Special Master showed no interest in it. *See* , Rec. Doc. 64422, p. 2, n.1. While the arguments are not new, Mr. Seeger's evidence was, and the master's report indicated that Mr. Seeger's testimony carried the day. That testimony, as the Objection has shown, based on a thoroughly-documented record, was simply not credible.

Weinberg's memorandum in support of his objection has also shown that the master's recommendation was unreliable because he did not have the benefit of a comparative record and because he did not conduct an insightful or reasoned review of Weinberg's time records. Objection, pp.35-37. The FAC has not responded to these arguments, and therefore no reply is warranted.

**C. The FAC's defense of its own recommendations is incomplete and unpersuasive.**

Pages 37-46 of Weinberg's Objection memorandum summarize some of the gross errors and deficiencies in the time records– principally of FAC members– which undercut the factual basis for

its allocation recommendations. In brief to this Court, the FAC asserts that Weinberg's arguments are "unjustified, misplaced, or just plain wrong." Response, p. 20. For most of the errors Weinberg has delineated– with specific references to the time records at issue– this is the sum total of the FAC's response.

The FAC then proceeds to defend a mere two of the challenged submissions, Levin Fishbein's and Seeger's. With regard to Levin's, the FAC maintains that "Mr. Weinberg repeats almost verbatim the same specious verbiage," despite the FAC's having allegedly "exposed, refuted, and disposed of" Weinberg's every contention in a prior response. FAC Response, p. 21, referring to its December 20, 2012 Response, R. Doc. 64235. Weinberg will return to the Levin submission in a moment. First, however, let us put aside the suggestion that all of Weinberg's arguments are reiterations of arguments the FAC has "exposed, refuted, and disposed of" in prior briefs. This is far from the case. Weinberg has reiterated his contentions precisely because the FAC has *not* made any persuasive response.

For example, with respect to the Dugan firm, in whose submissions Weinberg identified a million dollars or more of inflated or duplicated time, the FAC rested on Mr. Dugan's bald representations that the time was accurate and unduplicative. *See,* R. Doc. 64424, p. 9. In response to Weinberg's observation that both Dugan and Murray had charged *for enormous blocks of the same time, for the same employees, who were in fact **Murray's** employees (including Mr. Dugan) for much of the operative time but for whom Dugan charged a **higher rate than their employer did,*** Mr. Dugan had this to say: "as to the Murray issue, at the time of filing prior submissions Murray and Dugan were involved in heated litigation. Since that time, arbitration has resolved most of those issues." *Id.* at 10. This offers no explanation for how the FAC could recommend *full allocations to **both** firms for the same time, and approve Dugan's boosting of the hourly rates*– although it certainly explains how the two firms resolved their differences.   And as noted in Weinberg's

objection memorandum, Mr. Dugan also "explained"– incredibly– how he "mistakenly" charged 27.5 hours in a single day, which the FAC said would have no impact on its recommendation. *Id.* Mr. Dugan did not even attempt to explain how the TPP litigation benefitted from the multiple entries in its submission for the review of *Local 68* pleadings *months after the TPP case had been settled.* So yes, Weinberg reiterates his unanswered objections, without apology.

The FAC's response, in its latest allocation recommendation, is to *increase* its recommendation for Dugan by some $80,000, so that even after the pro rata reduction is applied, Dugan would still receive more than previously recommended. Likewise, Herman and Seeger are to receive more, even after the pro rata reductions. Not only has the FAC not satisfactorily explained its first recommendations to these firms, it has offered no explanation at all for the increases. In a single paragraph on page 27 of its response, it suggests that the revisions were necessitated by the Special Master's recommendations to the objectors. However, the FAC's unexplained increases to its members' awards *exceed* the allowances newly made for the objectors.

Perhaps the increases are meant to compensate the three firms for their efforts in defending against the objections, *i.e.*, $80,000 for the paragraph Mr. Dugan wrote for Rec. Doc. 64425 and attendance at the various hearings. But in this effort, these firms are not acting as members of the fee allocation committee, but simply as lawyers attempting to defend their own claims in a fee dispute, which is largely of their own making.[1]

That such increases are to be funded by a pro rata reduction in every award save the three recommended by the Master demonstrates a self-interest incompatible with compensation from the common benefit fund. It is incomprehensible why the Sobol or Barrios firms, for example, who

---

[1] As noted at p. 47 of Weinberg's Objection memorandum, the point of this protracted and unseemly dispute appears to be punishment of the objectors. Soon after the objections had been lodged, undersigned counsel wrote to Mr. Herman, expressing confidence that the parties could resolve their disputes by negotiation. Mr. Herman's immediate response was to withdraw the FAC's prior recommendation to this Court that Weinberg's work was worth $450,000. *See*, R. Doc. 64423, Exh. A.

accepted the FAC's recommendations on the promise of prompt payment and whose submissions have never been challenged by anyone, should have to pay for the FAC's efforts to claim inflated awards for it's members.

Undersigned counsel's fees in the captioned matter, for attorney time billed at rates below some of the FAC's paralegals, currently exceed the amount recommended by the Special Master and the FAC for Weinberg's years of work on the TPP litigation. This cost-ineffectiveness has doubtless been a large part of the point of the FAC's truculence. But it is a stratagem the FAC has employed on the expectation that it will be compensated for its fee-litigation work, while the objectors will have to pay counsel. In fairness, this Court should not countenance such behavior, and certainly should not reward it at the expense of awards to legitimate, long-suffering applicants.

Returning to the only two challenged submissions which the FAC has chosen to defend, the FAC has created strawmen with which to shadowbox. Contrary to the FAC's statements, Weinberg has not denigrated the work of his colleagues, *see* FAC Response, p. 13, 20, despite considerable provocation by the FAC which has mounted unwarranted and unsubstantiated *ad hominem* attacks against him, *see, e.g., id.* at 15 ("he rode along in a sidecar."). As with Dugan, it is true that Weinberg has reiterated his challenge, but as with Dugan, he has done so because the FAC has never made adequate response. This Court has only to examine Levin's original submission to see that his lodestar did in fact derive from time entries all but 35 hours of which had nothing to do with TPP. After Weinberg pointed out this extraordinary defect in the Levin submission, Levin sought to add 2130 hours of work previously submitted – and compensated – in the personal injury action. *See,* R. Doc. 64235-5, at 2. According to Levin, the FAC recognized that this work contributed to the TPP settlement and so made its recommendation of compensation almost entirely duplicating the award in the prior case. *Id.,* at 2-3. Once again, the FAC lambasts Weinberg for complaining of the duplicative recommendation: "Refusing to let facts get in the way of his argument, Mr.

Weinberg hews to his original misunderstanding." FAC Response, p. 21. It is for this Court now to determine whether it will accept Levin's "precise" explanation that it is entitled to be paid twice.

With respect to Seeger's submissions, Weinberg has never criticized the quality of the work. He has merely questioned whether claims that were lost conferred a *nine million dollar common benefit* to the TPP litigation, to which another several million must be added for the work of other applicants which allegedly contributed to or reviewed those lost causes. The FAC properly observes that this Court's orders, in compliance with precedent, require consideration of "the extent to which each common benefit firm made a contribution to the outcome of the litigation." PTO No. 6(D) at 4. Thus it is appropriate for Weinberg, and now this Court, to consider whether a couple of failed actions– no matter how hard-fought by so many– should command the lion's share of the available fund, to the exclusion of awards to others, including Weinberg, for years of subsequent effort.

## CONCLUSION

Mr. Seeger testified on June 20, 2013 that he established a working relationship with Chris Placitella and that Mr. Weinberg simply came along for the ride, making no contribution that anyone was aware of, except to "attend some meetings." Tr., pp. 67, 83, 84. This testimony cannot be squared with Mr. Seeger's 2008 email to Weinberg, "Eric, *we already have a working group of which you're a part. . .us, Placitella's firm, and you.* In my view, we don't need others but I don't rule out working and cooperating with others." Objection memorandum, Exh. A, p. 6. The "others" whose inclusion Mr. Seeger rejected, were Lieff Cabraser, for whom the FAC recommends an allocation of $1,450,000, at least part of which derives from the review of Weinberg's work.

Weinberg properly noted at the hearing that if Seeger was unhappy with his work, of which Seeger was fully apprised, it had an obligation to stop or redirect him. Tr., p. 22. The FAC argues it had no obligation to stop him as it never *started* him. FAC Response, p. 15. But this argument is made without reference to the above-quoted email, and many others from Liaison Counsel in New

Jersey, acknowledging Weinberg's place on the team, then thanking and commending Weinberg for his work.  The FAC has not responded to those emails except to argue for their exclusion.  But the FAC, which refused to disclose the factual basis for its argument until Mr. Seeger's end-of-hearing ambush, cannot pretend that the last word of testimony is an appropriate substitute for the truth.

While Weinberg is sorry that the heavy burden of allocation of the TPP fees has fallen on the Court, and that the parties were not able to resolve it amicably, he is glad that the long road to this point is over, and that the matter is in the hands of your Honor, who can now thoroughly review all the facts, consult with Judge Higbee, and make a full and fair allocation that complies with *In re High Sulfur*'s admonition that any allocation must be relatively and comparatively fair. Unfortunately, in its *de novo* review, the Court will discover that neither the FAC nor the Special Master have offered much assistance to its analysis.  Weinberg, however, has defended his submissions of time and costs with great care, justifying the award to him of no less than $1,138,500 in fees and $27,392.61 in costs.

Respectfully submitted:

/s/ Robert E. Arceneaux                                            /s/ Margaret E. Woodward
_____                 _____
Robert E. Arceneaux, La Bar No. 01199             MARGARET E. WOODWARD, La. Bar
ROBERT E. ARCENEAUX LLC                            No.13677
47 Beverly Garden Drive                                      3701 Canal Street, Suite C
Metairie, LA 70001                                               New Orleans, Louisiana  70119
(504) 833-7533 office                                          (504) 301-4333 office
(504) 833-7612 fax                                             (504) 301-4365 fax
rea7001@cox.net                                                mewno@aol.com

/s/ Pascal F. Calogero, Jr.

Pascal F. Calogero, Jr., La. Bar No. 03802

AJUBITA, LEFTWICH & SALZER, L.L.C.
1100 Poydras Street
New Orleans LA 70163-1950
(504) 582-2300 office
(504) 582-2310 fax
pcalogero@alsfirm.com

Attorneys for Law Offices of Eric Weinberg

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Memorandum has been served on Russ Herman by e-mail, and by upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pre Trial Order No.8, on this date, December 20, 2013.

s/Margaret Woodward
_____