# EXHIBIT B

MIDDLESEX COUNTY SUPERIOR COURT
MIDDLESEX COUNTY COURT
ONE JOHN F KENNEDY SQUARE
NEW BRUNSWICK   NJ 08903

COURT TELEPHONE NO. (732) 981-3061
COURT HOURS                                    TRACK ASSIGNMENT NOTICE

                         DATE: JANUARY 16, 2003
                         RE: FLONDER VS VIOXX STEPHEN HARDER PHARM.
                         DOCKET: MID L -000857 02

    THE ABOVE CASE HAS BEEN ASSIGNED TO:   TRACK 4.

    DISCOVERY IS PRESUMPTIVELY 450 DAYS BUT MAY BE ENLARGED OR SHORTENED BY THE
JUDGE AND RUNS FROM THE FIRST ANSWER OR 90 DAYS FROM SERVICE ON THE FIRST
DEFENDANT, WHICHEVER COMES FIRST.

    THE MANAGING JUDGE ASSIGNED IS:  HON JAMES P. HURLEY

    IF YOU HAVE ANY QUESTIONS, CONTACT TEAM      005
AT:  (732) 981-2622

    IF YOU BELIEVE THAT THE TRACK IS INAPPROPRIATE YOU MUST FILE A
CERTIFICATION OF GOOD CAUSE WITHIN 30 DAYS OF THE FILING OF YOUR PLEADING.
    PLAINTIFF MUST SERVE COPIES OF THIS FORM ON ALL OTHER PARTIES IN ACCORDANCE
WITH  R.4:5A-2.
                         ATTENTION:

                              ATT: CHRIS SEEGER
                              SEEGER WEISS LLP
                              550 BROAD STREET
                              SUITE 1200
                              NEWARK             NJ 07102

JUMPE



# CIVIL CASE INFORMATION STATEMENT
## (CIS)

Use for initial Law Division - Civil Part pleadings (not motions) under Rule 4:5-1.
**Pleading will be rejected for filing, under Rule 1:5-6(c), if information above the black bar is not completed or if attorney's signature is not affixed.**

| FOR USE BY CLERK'S OFFICE ONLY |
| --- |
| PAYMENT TYPE:  CK     CG     CA |
| CHG / CK NO. |
| AMOUNT: |
| OVERPAYMENT: |
| BATCH NUMBER: |

| ATTORNEY / PRO SE NAME | TELEPHONE NUMBER | COUNTY OF VENUE |
| --- | --- | --- |
| Christopher A. Seeger | ( 973  )639-9100 | **MIDDLESEX** |

| FIRM NAME (If applicable) | DOCKET NUMBER (When available) |
| --- | --- |
| SEEGER WEISS LLP | L- 857-02 |

| OFFICE ADDRESS | DOCUMENT TYPE |
| --- | --- |
| 550 Broad Street Suite 1200 Newark, New Jersey 07102 | COMPLAINT |
|  | JURY DEMAND  ☒ YES   ☐ NO |

| NAME OF PARTY (e.g. John Doe, Plaintiff) | CAPTION |
| --- | --- |
| Plumbers and Pipefitters Local 572 Health and Welfare Fund, J.W. Gamble, Claude Brawner, and Evelyn Weems as trustees of the joint union-employer trust fund,  et. al. | Plumbers and Pipefitters Local 572 Health and Welfare Fund, et. al.<br>Plaintiffs,<br>v.<br>MERCK & CO., INC.<br>Defendant. |

| CASE TYPE NUMBER (See reverse side for listing)    508 | IS THIS A PROFESSIONAL MALPRACTICE CASE?  ☐ YES  ☒ NO<br>IF YOU HAVE CHECKED "YES," SEE N.J.S.A. 2A:53A-27 AND APPLICABLE CASE LAW REGARDING YOUR OBLIGATION TO FILE AN AFFIDAVIT OF MERIT. |
| --- | --- |

| RELATED CASES PENDING?  ☐ YES  ☒ NO | IF YES, LIST DOCKET NUMBERS |
| --- | --- |

| DO YOU ANTICIPATE ADDING ANY PARTIES (arising out of same transaction or occurrence)?  ☐ YES  ☒ NO | NAME OF DEFENDANT'S PRIMARY INSURANCE COMPANY, IF KNOWN<br>☐ NONE  ☒ UNKNOWN |
| --- | --- |

**THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE.**

CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

A.  DO PARTIES HAVE A CURRENT, PAST OR RECURRENT RELATIONSHIP?  ☒ YES  ☐ NO

IF YES, IS THAT RELATIONSHIP  ☐ EMPLOYER - EMPLOYEE   ☐ FRIEND / NEIGHBOR   ☒ OTHER (explain) Purchase Seller
☐ FAMILIAL   ☐ BUSINESS

B.  DOES THE STATUTE GOVERNING THIS CASE PROVIDE FOR PAYMENT OF FEES BY THE LOSING PARTY?  ☐ YES  ☐ NO

USE THIS SPACE TO ALERT THE COURT TO ANY SPECIAL CASE CHARACTERISTICS THAT MAY WARRANT INDIVIDUAL MANAGEMENT OR ACCELERATED DISPOSITION:

CLASS ACTION LAWSUIT

DO YOU OR YOUR CLIENT NEED ANY DISABILITY ACCOMMODATIONS?  ☐ YES  ☒ NO   IF YES, PLEASE IDENTIFY THE REQUESTED ACCOMMODATION:

WILL AN INTERPRETER BE NEEDED?  ☐ YES  ☒ NO   IF YES, FOR WHAT LANGUAGE:

ATTORNEY SIGNATURE

Revised July 2001

| SIDE 2 |  | **CIVIL CASE INFORMATION STATEMENT**<br>**(CIS)**<br>Use for initial pleadings (not motions) under Rule 4:5-1 |
|---|---|---|

**CASE TYPES** (Choose one and enter number of case type in appropriate space on the reverse side.)

### Track I -- 150 days' discovery

| | |
|---|---|
| 151 | NAME CHANGE |
| 175 | FORFEITURE |
| 302 | TENANCY |
| 399 | REAL PROPERTY |
| 502 | BOOK ACCOUNT |
| 503 | COMMERCIAL TRANSACTION |
| 505 | OTHER INSURANCE CLAIM (INCLUDING DECLARATORY JUDGMENT ACTIONS) |
| 506 | PIP COVERAGE |
| 510 | UM or UIM CLAIM |
| 511 | ACTION ON NEGOTIABLE INSTRUMENT |
| 599 | CONTRACT |
| 801 | SUMMARY ACTION |

### Track II -- 300 days' discovery

| | |
|---|---|
| 305 | CONSTRUCTION |
| 509 | EMPLOYMENT (other than CEPA or LAD) |
| 602 | ASSAULT AND BATTERY |
| 603 | AUTO NEGLIGENCE - PERSONAL INJURY |
| 605 | PERSONAL INJURY |
| 610 | AUTO NEGLIGENCE - PROPERTY DAMAGE |
| 699 | TORT - OTHER |

### Track III -- 450 days' discovery

| | |
|---|---|
| 005 | CIVIL RIGHTS |
| 301 | CONDEMNATION |
| 604 | MEDICAL MALPRACTICE |
| 606 | PRODUCT LIABILITY |
| 607 | PROFESSIONAL MALPRACTICE |
| 608 | TOXIC TORT |
| 609 | DEFAMATION |
| 616 | WHISTLEBLOWER / CONSCIENTIOUS EMPLOYEE PROTECTION ACT (CEPA) CASES |
| 617 | INVERSE CONDEMNATION |
| 618 | LAW AGAINST DISCRIMINATION (LAD) CASES |

### Track IV -- Active Case Management by Individual Judge / 450 days' discovery

| | |
|---|---|
| 156 | ENVIRONMENTAL COVERAGE LITIGATION |
| 234 | FRT PLYWOOD LITIGATION |
| 245 | ACTIONS UNDER FEDERAL Y2K ACT |
| 303 | MT. LAUREL |
| 508 | COMPLEX COMMERCIAL |
| 613 | REPETITIVE STRESS SYNDROME |
| 701 | ACTIONS IN LIEU OF PREROGATIVE WRIT |

**Mass Tort (Track IV)**

| | |
|---|---|
| 240 | DIET DRUG |
| 241 | TOBACCO |
| 243 | LATEX |
| 246 | REZULIN |
| 601 | ASBESTOS |
| 611 | BREAST IMPLANT CASES |
| 612 | BLOOD-CLOTTING SERUM |

| | |
|---|---|
| 999 | OTHER (Briefly describe nature of action) _____ |
| | _____ |

**If you believe this case requires a track other than that provided above, please indicate the reason on Side 1, in the space under "Case Characteristics."**

Chris Seeger, Esq.
David Buchanan, Esq.
Seeger Weiss, L.L.P.
550 Broad Street
Newark, NJ 07102
Telephone:  (973) 639-9100

**Attorneys for Plaintiffs**

| | |
|---|---|
| PLUMBERS & PIPEFITTERS LOCAL 572 HEALTH AND WELFARE FUND, J.W. GAMBLE, CLAUDE BRAWNER, AND EVELYN WEEMS as trustees of the joint union-employer trust fund, individually and on behalf of all others similarly situated, | ) **SUPERIOR COURT OF NEW JERSEY** <br> ) **LAW DIVISION** <br> ) **MIDDLESEX COUNTY** <br> ) **DOCKET NO. _____** <br> ) <br> ) $L- 857-02$ <br> ) <br> ) |
| Plaintiffs, | ) <br> ) |
| v. | ) <br> ) |
| MERCK & CO., INC., | ) **CLASS ACTION COMPLAINT** <br> ) |
| Defendant. | ) <br> ) |

Plaintiffs, Plumbers & Pipefitters Local 572 Health and Welfare Fund, J.W. Gamble, Claude Brawner, and Evelyn Weems, individually and on behalf of all others similarly situated, by their attorneys, and for their causes of action against defendant, referenced herein, allege as follows:

<u>**Parties, Jurisdiction and Venue**</u>

1.  Plaintiff Plumbers & Pipefitters Local 572 Health and Welfare Fund is a joint union-employer Taft-Hartley trust fund, organized and operating in the state of Tennessee. At all times relevant hereto, said plaintiff has been a party to a contract, issuer of a policy, or sponsor of a plan, which contract, policy or plan provides prescription drug coverage to natural persons. Plaintiff has incurred, pursuant to such contract, policy or plan, full or partial purchase/reimbursement costs for Vioxx

prescriptions dispensed to natural persons covered by such contract, policy, or plan.

2. Plaintiffs J.W. Gamble, Claude Brawner, and Evelyn Weems are the trustees of the Plumbers & Pipefitters Local 572 Health and Welfare Fund. Said plaintiffs reside in Tennessee and are named plaintiffs in their representative capacities as Trustees only.

3. Defendant Merck & Co., Inc. is a New Jersey Corporation. At all relevant times herein, defendant was in the business of manufacturing, marketing, distributing, advertising, sampling and/or selling the prescription drug rofecoxib under the brand name Vioxx in New Jersey and throughout the United States. Defendant's registered agent for service of process, Corporation Trust Company, is located at 820 Bear Tavern Road, Trenton, Mercer County, New Jersey. Defendant Merck does business in Middlesex County, New Jersey, and venue is therefore appropriate in this court.

4. On information and belief, the research, design, manufacture, distribution, marketing and advertisement for Vioxx was centralized in defendant's New Jersey offices, and accordingly the acts and omissions complained of herein all took place in New Jersey.

### Introduction

5. This Class Action Complaint arises from defendant's marketing, advertising, promotion and sale of the prescription drug Vioxx, an anti-inflammatory drug and pain reliever containing rofecoxib. Plaintiffs allege violations of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 *et seq.* (New Jersey CFA), breach of warranty and unjust enrichment.

6. Defendant misrepresented and concealed safety information from end-users, physicians and third party payors, including plaintiffs, regarding the cardiovascular and gastrointestinal risks associated with Vioxx. Additionally, defendant made false and intentionally misleading representations, and omitted material facts, regarding the comparative safety and efficacy of Vioxx as compared to traditional non-steroidal anti-inflammatory drugs (NSAIDs). The purpose of these misrepresentations and omissions,

2

in combination with defendant's aggressive marketing and promotion schemes, was to justify the enormous price disparity between Vioxx and traditional NSAIDs.

7. As a result of defendant's misconduct in misrepresenting the benefits and risks of Vioxx, the drug was widely prescribed by physicians and requested by end-users, securing Merck's position in the NSAID market and earning Merck enormous financial gain. Defendant's scheme caused end-users and third-party payors, including plaintiffs, to vastly overpay for Vioxx -- approximately 800% more than equally efficacious and safer NSAIDs, such as naproxen.

8. Plaintiffs seek actual damages in the form of refunds, disgorgement of profits, punitive damages, treble damages, attorney's fees, prejudgment interest, costs of suit and all other relief available to a class of Third Party Payors, including any non-governmental entity that is (a) a party to a contract, issuer of a policy, or sponsor of a plan, which contract, policy or plan provides prescription drug coverage to natural persons, and (b) has incurred, pursuant to such contract, policy or plan, full or partial purchase/reimbursement costs for Vioxx prescriptions dispensed to natural persons covered by such contract, policy, or plan.

### Defendant's Scheme

9. Defendant obtained Food and Drug Administration (FDA) approval for Vioxx on a fast-track basis in or about May 1999, and began its distribution and sale throughout the United States immediately thereafter.

10. Vioxx is a cox-2 specific inhibitor used in the treatment of inflammation and pain, particularly for arthritis patients, and is among the class of drugs known as NSAIDs.

11. Defendant introduced Vioxx at a wholesale cost of approximately $72.00 for a 30-day supply, compared to a wholesale cost of approximately $9.00 or less for traditional NSAIDs.

3

12. To justify this enormous disparity, defendant Merck marketed Vioxx as a safer alternative to traditional NSAIDs because of its inhibition of the cox-2 enzyme only, which is believed to directly work at sites of inflammation in the human body. Traditional NSAIDs inhibit both cox-1 and cox-2 enzymes. Because the cox-1 enzyme is believed to have a gastrointestinal protective effect, traditional NSAIDs pose a risk of ulcer and other gastrointestinal problems. Vioxx also poses a risk of ulcer and gastrointestinal problems, and the FDA has therefore required defendant to include such warnings on the Vioxx label and inserts.

13. Nevertheless, defendant has repeatedly promoted Vioxx as safer than traditional NSAIDs, representing that Vioxx posed a significantly reduced risk of gastrointestinal problems than other NSAIDs, with equally efficacious results as an anti-inflammatory and pain reliever. As set forth below, these representations were not true.

14. For example, the FDA issued a Warning Letter to defendant on July 16, 1999, just two months after receiving FDA approval for Vioxx, warning that its advertisements failed to provide adequate information regarding Vioxx's approved indication and usage, failed to include risk information and failed to present necessary information related to side affects, contraindications, and effectiveness, or to provide adequate provision for the dissemination of full product labeling in connection with its advertisement.

15. On December 16, 1999, the FDA again issued a letter to defendant advising that its promotional pieces were "false and misleading because they contain misrepresentations of Vioxx's safety profile, unsubstantiated comparative claims, and are lacking in fair balance." Defendant's promotional materials misrepresented the gastrointestinal risks associated with Vioxx, in contradiction to the warnings contained in its package label, and made broad superiority claims not only over "the class of NSAIDs, of which it is a member, but to all analgesic and anti-inflammatory therapies available for the management of pain." According to the FDA, "this global superiority claim has not been demonstrated by substantial evidence, and therefore, is false and misleading." Not

4

only were these materials false and misleading, but also defendant did not submit the materials to the FDA as required by federal regulation.

16. Another FDA Warning Letter was issued to defendant on September 17, 2001, stating that defendant's "promotional activities and materials . . . are false, lacking in fair balance, or otherwise misleading in violation of the Federal Food, Drug, and Cosmetic Act (the Act) and applicable regulations." The FDA stated that defendant's campaign minimized "potentially serious cardiovascular findings" from a Vioxx study and misrepresented Vioxx's "safety profile." Defendant made "unsubstantiated superiority claims against other NSAIDs" and failed "to present the gastrointestinal (GI) warning about the possibility of serious GI toxicity such as bleeding, ulceration, or perforation in patients taking Vioxx." Defendant's promotional materials, in fact, affirmatively misrepresented the efficacy and safety information of Vioxx and its competitors. The FDA stated that defendant's "minimizing these potential risks and misrepresenting the safety profile for Vioxx raise significant public health and safety concerns. Your misrepresentations of the safety profile for Vioxx is particularly troublesome because we have previously, in an untitled letter, objected to promotional materials for Vioxx that also misrepresented Vioxx's safety profile." The FDA concluded that defendant's claim that "Vioxx has a 'favorable safety profile' is simply incomprehensible, given the rate of MI [myocardial infarction] and serious cardiovascular events compared to naproxen." (emphasis added). Among other things, the FDA ordered defendant to issue a "Dear Healthcare provider" letter "to correct false or misleading impressions and information."

17. Defendant knew or should have known that any purported gastrointestinal benefits of Vioxx, if any, were limited to patients diagnosed with osteoarthritis, who had one or more gastrointestinal risk factors, such as ulcers or hemorrhage, and who concurrently used an anticoagulant.

18. Furthermore, defendant concealed material information that its cox-2 specific inhibitor, Vioxx, was less safe than traditional NSAIDs against which it was

5

studied in general, and in particular when used in conjunction with aspirin to protect against known or potential cerebrovascular or cardiovascular events.

19. Defendant suppressed and/or failed to act upon medical and scientific information showing Vioxx is associated with significant and dangerous adverse cardiovascular effects, independently and compared to traditional NSAIDs, and was no more efficacious than traditional NSAIDs including, without limitation, the drug naproxen.

20. Defendant knew of the increased risk of hypertension and cardiac factors requiring aspirin or anti-coagulant use in rofecoxib users, thereby discounting any alleged safety benefit as compared to traditional NSAIDs. Defendant knew of the increased risk of stroke and myocardial infarctions in Vioxx users over naproxen users, but suppressed such information.

21. In November of 2000, defendant caused the publication of a study in the New England Journal of Medicine and knowingly withheld from this publication the severity of cardiovascular risks associated with Vioxx consumption over naproxen consumption. This very same data, when finally presented to the FDA in 2001, resulted in a determination by the FDA medical reviewer that "[t]here is an increased rate of [myocardial infarction] and stroke in the rofecoxib group compared with naproxen . . . this analysis could lead one to conclude that naproxen, with a 51% risk reduction compared to rofecoxib, would be the <u>preferred</u> drug." (emphasis in original).

22. Merck spent more than twice its entire research and development budget for Vioxx on this marketing and advertising campaign. Merck then engaged in a massive direct-to-consumer (DTC) advertising blitz to induce end-users to request Vioxx. Defendant further added at least 700 new sales representatives to its team and engaged in a massive sampling program to physicians. Defendant manipulated and controlled information and knowledge regarding the indications, directions, usage, efficacy, safety and warnings of Vioxx through its DTC advertising, aggressive sampling to physicians

6

and the uniform suppression of the gastrointestinal and cardiovascular risks associated with Vioxx. Defendant's DTC marketing strategies, in conjunction with its extreme sampling program to physicians, was intended to and did induce end-users to request and use Vioxx over traditional NSAIDs that defendant knew, or should have known, were equally efficacious and safer than Vioxx.

23. As a result, defendant gained a significant share of the NSAID market that it would not have gained if it had not suppressed information about Vioxx and/or made false representations about its superiority, safety and efficacy. After Vioxx's introduction, domestic sales of anti-inflammatory pain relievers, including cox-2 drugs, rose 65% in one year, to $4.5 billion; before the cox-2 marketing frenzy, sales for anti-inflammatory drugs had been in decline. In the year 2000 alone, Merck realized more than $2 billion in sales of Vioxx and acquired approximately 23% of the NSAID market share.

24. Merck's affirmatively false statements in connection with the marketing, promotion, and pricing of Vioxx, together with negative undisclosed information concerning the safety, efficacy, and benefits of the drug, was and is unconscionable. Indeed, defendant's representations regarding the efficacy, safety, and benefits of Vioxx were and are false, misleading, and deceptive.

25. Defendant concealed this information from end-users for financial gain. Defendant knowingly chose to place its financial gain over the health of end-users, and intentionally deceived and defrauded end-users and third-party payors, including plaintiffs, into purchasing Vioxx despite its knowledge that Vioxx was no more efficacious and less safe than less expensive NSAIDs.

26. Defendant's concealments and misrepresentations induced plaintiffs and the Class to pay for or reimburse others for the purchase of Vioxx.

27. Plaintiffs, as third-party payors, allege that Merck's misrepresentations and suppression of important safety information constituted an unlawful practice under NJSA

7

§56:8-1 *et seq.*

28. Plaintiffs, as third party payors, allege that the marketing strategies of defendant targeted and induced end-users to purchase Vioxx, and that defendant intended end-users and physicians to rely on their marketing, advertisements, promotional efforts and misrepresentations to the detriment of third-party payors.

29. Plaintiffs, as third party payors, seek a refund of those funds spent for Vioxx over and above the cost end-users would have paid for traditional NSAIDs, or, alternatively, disgorgement of profits made by defendant owing to its misrepresentations and failure to disclose complete and accurate safety and efficacy information concerning Vioxx.

### Class Action Allegations

30. Pursuant to Rule 4:32-1 *et seq.* of the New Jersey Court Rules, plaintiffs seek class certification, in that (a) the class is so numerous that joinder of all members is impracticable; (b) there are questions of law or fact common to the class; (c) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (d) the representative parties will fairly and adequately protect the interests of the class.

The common questions of law or fact, among others, include:

   a.  Whether the general risks of Vioxx outweighed the benefits of its usage;

   b.  Whether defendant concealed material information from end-users, physicians and third-party payors to the financial detriment of third-party payors regarding the safety and efficacy of Vioxx;

   c.  Whether defendant affirmatively misrepresented the safety and efficacy of Vioxx to end-users, physicians, and third-party payors to the financial detriment of third party payors;

   d.  Whether defendant targeted specific end-users through DTC advertising and extreme sampling to induce individuals to purchase and consume

8

Vioxx over other NSAIDs, and to induce third party payors to reimburse or purchase Vioxx;

e.   Whether defendant failed to adequately warn of the adverse effects of Vioxx in connection with its aggressive marketing;

f.   Whether, as a result of defendant's misrepresentations and failure to disclose material information regarding the safety and efficacy of Vioxx, plaintiffs and the Class were harmed;

g.   Whether as a result of defendant's misrepresentations and failure to disclose material information regarding the safety and efficacy of Vioxx, defendant was unjustly enriched;

h.   Whether defendant's conduct constitutes deceptive and/or unconscionable acts in violation of the New Jersey CFA, N.J.S.A. 56:8-1, *et seq.*;

i.   Whether defendant breached the express and implied warranties regarding the safety and efficacy of Vioxx;

j.   The appropriate scope, extent and measure of damages and equitable relief that should be awarded;

k.   Whether defendant's actions were sufficiently wrongful to entitle plaintiffs and the Class to punitive and/or treble damages; and/or

l.   Whether defendant's actions were sufficiently wrongful to entitle plaintiffs and the Class to attorneys' fees, prejudgment interest and costs of suit.

31. Plaintiffs will fairly and adequately represent the interests of the members of the class. Plaintiffs' interests are the same as, and not in conflict with, the other members of the proposed class. Plaintiffs' counsel is experienced in class action and complex litigation.

32. Plaintiffs request that this Court certify the following Class pursuant to Rule 4:32-1(b)(1), (2) and/or (3) of the New Jersey Court Rules as appropriate:

All third-party payors in the United States of America, who have paid or

reimbursed any person or entity for the purchase of the prescription drug Vioxx (rofecoxib) since May 1, 1999. Third- party payors include any non-governmental entity that is (i) a party to a contract, issuer of a policy, or sponsor of a plan, which contract, policy or plan provides prescription drug coverage to natural persons, and is also (ii) at risk, pursuant to such contract, policy or plan to pay or reimburse all or part of the cost of prescription drugs dispensed to natural persons covered by such contract, policy, or plan. Excluded from the Class are (1) employees of defendant, including their officers or directors; (2) plaintiffs' counsel; and (3) the Judge of the Court to which this case is assigned.

## COUNT I

### Violations of New Jersey Consumer Fraud Act (N.J.S.A. § 56:8-1 *et seq.*)

33. Plaintiffs repeat and reallege the allegations set forth above as if fully contained herein.

34. Plaintiffs, the Class Members, and defendant are "persons" within the meaning of N.J.S.A. 56:8-1.

35. Plaintiffs and the Class members are "consumers" within the meaning of the New Jersey CFA.

36. Plaintiffs and the Class members purchased or reimbursed, in whole or in part, Vioxx from defendant, directly or indirectly, on behalf of individual end-users. Pursuant to the relationship between the end-users that were prescribed Vioxx and plaintiffs, and other members of the Class, plaintiffs and the Class hold the right and authority to raise claims against third parties, such as defendant, to seek reimbursement for payment made on behalf of end-users. Plaintiffs and the Class, standing in the place of end-users as a matter of law, are entitled to assert claims on behalf of such individuals.

37. At all relevant times material hereto, defendant conducted trade and commerce within the meaning of the New Jersey CFA.

10

38. The New Jersey CFA is, by its terms, a cumulative remedy such that remedies under its provisions can be awarded in addition to those provided under separate statutory scheme. N.J.S.A. 56:8-2.13.

39. Section 56:8-2 of the New Jersey CFA provides that unconscionable and deceptive conduct in connection with the sale or marketing of a product is unlawful, e.g.:

"The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice..."

40. The practices of the defendant violate the New Jersey CFA for, *inter alia*, one or more of the following reasons:

a. Defendant concealed from plaintiffs, the Putative Class Members and physicians, truthful and complete efficacy and safety information regarding Vioxx, particularly comparative information between Vioxx and traditional NSAIDs;

b. Defendant provided, disseminated, marketed, and otherwise distributed DTC advertising and other information to end-users, physicians and third-party payors, that omitted adequate warnings and suppressed material medical information regarding the use of Vioxx that would have resulted in denial of coverage by third-party payors;

c. Defendant affirmatively misrepresented the safety and efficacy of Vioxx in its advertising, promotional, and safety materials and information

11

disseminated to end-users, physicians, and third party payors; and/or

       d. Defendant engaged in unconscionable commercial practices in promoting Vioxx as a drug with a greater safety and efficacy profile as compared to its NSAID competitors to create a market for the drug (and to justify the 800% premium sought for the drug) when the purported safety and efficacy benefits were unfounded.

      41. Defendant's unlawful conduct arose, was directed and emanated from New Jersey to the detriment and injury of class members in New Jersey and the United States.

      42. The foregoing acts, omissions and practices proximately caused the plaintiffs, and Putative Class Members, to suffer ascertainable losses in that they paid for and/or reimbursed others for the purchase of Vioxx without knowing the true and complete risks and benefits of Vioxx, in general and specifically in comparison to alternative, and significantly less expensive, NSAIDs.

      43. Defendant intended that plaintiffs and the Putative Class Members rely on their misrepresentations and omissions, so that they would pay for and/or reimburse others for the purchase of Vioxx.

      44. Plaintiffs and the Putative Class Members would not have paid for or reimbursed others for the purchase of Vioxx had they known the true and complete risks and benefits of Vioxx, in general and specifically in comparison to alternative, and significantly less expensive, NSAIDs.

## COUNT II

### Breach of Warranty

      45. Plaintiffs repeat and reallege the allegations set forth above as if fully contained herein.

      46. For each purchase of rofecoxib paid for or reimbursed by plaintiffs, defendant expressly and impliedly warranted, through its studies, marketing, direct to consumer advertising, promotions and other representations, that Vioxx was equally or more

efficacious and safe than traditional NSAIDs or a placebo.

47. Defendant breached its warranties in that Vioxx was not, and is not, as safe as traditional NSAIDs or placebos, and defendant knew, or should have known, this fact prior to making such warranties.

48. As a direct and proximate result of defendant's breach of warranties, plaintiffs and other members of the Class have suffered actual damages in amounts yet to be determined, but which exceed the jurisdictional limits of this Court.

## COUNT III

### Unjust Enrichment for Constructive Trust and Disgorgement

49. Plaintiffs repeat and reallege the allegations set forth above as if fully contained herein.

50. As a direct and proximate result of defendant's misconduct as set forth above, defendant has been unjustly enriched.

51. Specifically, defendant's knowing misrepresentations, omissions, suppression and/or concealment of material facts in connection with the advertising, marketing, promotion and sale of Vioxx has resulted in defendant's wrongful receipt of profits. Accordingly, defendant will be unjustly enriched unless it is ordered to disgorge those profits and the profits are deemed to be held in constructive trust for the benefit of plaintiffs and the Class.

### Prayer For Relief

WHEREFORE, Plaintiffs pray:

a. That this matter be certified as a class action with the Class defined as set forth above, and that the plaintiffs be appointed Class Representatives, and their attorneys be appointed Class counsel;

b. That judgment be entered against defendant Merck & Co. Inc., in an undetermined amount, upon the First Claim for Relief, for violation of the New Jersey Consumer Fraud Act, including reimbursement of monies paid by plaintiffs and the class

13

for the purchase of or reimbursement for Vioxx, treble and/or punitive damages, prejudgment interest, and costs of suit, including attorney's fees;

c. That judgment be entered against defendant Merck & Co. Inc. in an undetermined amount upon the Breach of Warranty claims, including reimbursement of monies paid by Plaintiffs and the class for the purchase of or reimbursement for Vioxx;

d. That judgment be entered against defendant Merck & Co. Inc. in an amount undetermined for Unjust Enrichment, including disgorgement of profits received by defendant as a result of said reimbursements or purchases, appropriate equitable relief and costs of suit including attorney's fees; and

e. For such other damages, equitable relief and pre- and post-judgment interest as the Court may deem just and proper.

## NOTICE TO ATTORNEY GENERAL

Plaintiffs will serve a copy of this Complaint upon the Office of the Attorney General for the State of New Jersey, as required by statute, within ten (10) days of the filing of this complaint.

14

Seeger Weiss
Attorneys For Plaintiffs

Chris Seeger, Esq.
David Buchanan, Esq.
David Krugler, Esq.
Seeger Weiss, L.L.P.
550 Broad Street
Newark, NJ 07102
Telephone: (973) 639-9100
Facsimile: (973) 639-9393

**Of Counsel:**

Joe R. Whatley, Jr., Esq.
ASB 1222-469J
Whatley Drake, L.L.C.
2323 2nd Avenue North
Birmingham, AL 35203
Telephone: (205) 328-9576
Facsimile: (205) 328-9669

Dennis Reich, Esq.
Reich & Binstock
4265 San Felipe
Suite 1000
Houston, TX 77027
Telephone: (713) 622-7271
Facsimile: (713) 439-0727

Carlene Rhodes Lewis, Esq.
TBN 21566850
Shelly A. Sanford, Esq.
TBN 00784904
Goforth Lewis LLP
2200 Texaco Heritage Plaza
1111 Bagby
Houston, Texas 77002
Telephone: (713) 650-0022
Facsimile: (713) 650-1669

15

James G. Stranch, III, Esq.
Branstetter, Kilgore, Stranch & Jennings
227 Second Avenue North
Fourth Floor
Nashville, TN 37201-1631
Telephone:  (615) 254-8801
Facsimile:  (615) 255-5419

Brad N. Friedman, Esq.
Milberg Weiss Bershard Hynes & Lerach
One Pennsylvania Plaza
New York, New York 10119
Telephone: (212) 594.5300
Fax: (212) 868.1229

**DATED:** 1/10/02

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury as to all issues.

_____
Chris Seeger, Esq.

## DESIGNATION OF TRIAL COUNSEL

Christopher A. Seeger, Esq. is designated as trial counsel in this matter.

_____
Chris Seeger, Esq.

**DATED:** 1/10/02

## CERTIFICATION PURSUANT TO R. 4:5-1

I certify that the matters in controversy in this action are not the subject of any other action pending in any other court or of a pending arbitration proceeding, and that no other action or arbitration proceeding is contemplated.

_____
Chris Seeger, Esq.

**DATED:** 1/10/02

16