



**NOT FOR PUBLICATION WITHOUT THE APPROVAL OF THE COMMITTEE ON OPINIONS**

**CAROL E. HIGBEE, J.S.C.**   1201 Bacharach Boulevard
Atlantic City, NJ 08401-4527
(609) 343-2190

MEMORANDUM OF DECISION ON MOTION
Pursuant to Rule 1:6-2(f)

| | |
|---|---|
| *CASE:* | International Union of Operating Engineers Local No. 68 Welfare Fund, Individually and on behalf of all others similarly situated v. Merck & Co., Inc. |
| *DOCKET #:* | ATL-L-3015-04 |
| *DATE:* | July 8, 2004 |
| *MOTION:* | Defendant's Motion for Summary Judgment |
| *ATTORNE☐S:* | Wilfred P. Coronato, Esq. ☐Attorney for Defendant<br>Christopher A. Seeger, Esq. ☐Attorney for Plaintiff |

Having carefully reviewed the papers submitted and oral arguments presented, I have ruled on the above Motion as follows:

The plaintiff, International Union of Operating Engineers Local No. 68 Welfare Fund (the Fund or the plaintiff) is a joint union-employer trust fund which pays for prescription drugs purchased by its members for their consumption. Such "third party payor" funds are common today as most prescription drugs are purchased through prescription plans.

The Fund filed a two-count class action complaint against the defendant Merck & Co., Inc. (Merck) who is the manufacturer of the prescription drug VIOXX®. Merck is a New Jersey corporation. The Fund is organized and operating in New Jersey. The complaint was filed in New Jersey on behalf of "all third party payors in the United States" who have paid for the prescription drug VIOXX®. The issue of class certification is not presently before the Court.


E-SERVED
07/08/04
04:16 PM ET
Vioxx (NJ)

The Fund alleges that Merck's marketing and advertising of the drug VIOXX® was fraudulent and misrepresented the safety and efficacy of the drug.

The Fund alleges specifically that VIOXX® is a cox-2 specific inhibitor used in the treatment of inflammation and pain and is among the class of drugs known as NSAIDs. Merck introduced VIOXX® and sold it initially at a cost of $72.00 for a monthly supply. In contrast NSAIDs on the market already sold for $9.00 or less for the same supply. Traditional NASIDs inhibit both cox-1 and cox-2 enzymes. Cox–1 enzyme is believed to have a protective effect on the gastrointestinal system and the traditional NASIDs were known to pose a risk of ulcer and other gastrointestinal problems. The Fund alleges that Merck misrepresented that VIOXX® had a significantly reduced risk of these side effects. The Fund alleges VIOXX® was promoted and marketed by Merck as much safer and more effective than the much cheaper NASIDs already on the market. The Fund states that in reliance on these claims by Merck, they approved, as did other third party payors, inclusion of VIOXX® as a preferred prescription drug and agreed to pay for use of VIOXX® by their members.

The Fund specifically alleges that Merck initially misrepresented the safety of the drug to get it on drug formularies so they could get a large share of the market for these types of drugs. In the year 2000, the Fund states that sales of VIOXX® exceeded two billion dollars and VIOXX® acquired 23% of the NASIDs market despite the significantly higher cost.

The plaintiff alleges that the representation by Merck that VIOXX® was safer than traditional NASIDs was false. The plaintiff alleges that VIOXX® also poses a risk of ulcers and gastrointestinal side effects and that its marketing and promotion as a safer alternative was false. In addition, the Fund alleges that VIOXX® produced a high rate of cardiovascular events,



E-SERVED
07/08/04
04:16 PM ET
Vioxx (NJ)

including heart attacks.  They allege that the defendant intentionally failed to disclose the level of risk of cardiovascular events caused by the drug.

In the complaint, plaintiffs refer to specific FDA warning letters sent to the defendant. The complaint references a letter sent by the FDA on July 16, 1999 warning defendant that its advertisements failed to provide adequate risk information.  It also references a December 1999 FDA letter to defendant that warns them that some of its promotional pieces were "false & misleading."  An additional letter issued to defendant on September 17, 2001 includes statements that Merck had minimized "potentially serious cardiovascular findings" from a VIOXX® study.

The complaint asks for economic damages because the Fund was mislead into paying higher prices for VIOXX® than for traditional NASIDs.  The Fund claims it relied on the false statements and the suppression of information from Merck in order to approve VIOXX® as a preferred drug for its members because it had more benefits and less risks to its members than much cheaper NASIDs on the market.  The complaint states two causes of action, one for common law fraud and misrepresentation and one for fraud under the New Jersey Consumer Fraud Act (N.J.S.A. 56:8-1, et seq.).

Merck moves to strike both counts of the complaint.  Merck states the first count is deficient because the complaint is not specific enough for a fraud count.  In order to make a valid claim for fraud, plaintiff must allege a material misrepresentation and reasonable reliance thereon.  See Gennari v. Weichert Co. Realtors, 148 N.J. 582, 610 (1997).  The allegations of misrepresentation must be pled with particularity under Rule 4:5-8(a) which states in "all allegations of misrepresentation, fraud . . . particulars of the wrong, with dates and items if necessary, shall be stated insofar as practicable."



This is a motion to dismiss a complaint. Discovery is still in process. Over a million pages of documents, including advertising and marketing materials and drug studies have been provided by defendant to plaintiff. Depositions have started but most are still ahead.

Defendants cite to several federal cases that were dismissed for failure to plead with particularity under Fed. R. Civ. P. 9(b). In this case, the complaint does not simply make a general allegation of fraud. The complaint describes the misrepresentations that VIOXX® was more safe and more effective than other NASIDs on the market as being the heart of the misrepresentation. The complaint states with even more particularity that representations that VIOXX® caused less gastrointestinal side effects than other NASIDs on the market and the omission or minimizing of known dangers of cardiovascular side effects are the basis of the claim of misrepresentation. These are specific misrepresentations. It is not "practicable" in a case such as this to allege each and every specific statement made and the date and place in the complaint.

There has to be a balance between the need for specificity so the defendant understands exactly what is being alleged as fraud and the practical ability of the plaintiff to specify each individual misstatement before discovery is completed in a case that involves billions of dollars of sales.

The Federal Rules and the New Jersey Rules on pleading of fraud are similar but the State Rule addresses practicality. The purpose is the same. In the case of <u>Seville Industrial Machinery Corp. v. Southmost Machinery Corp.</u>, 742 <u>F.</u>2d 786 (1984) the U. S. Third Circuit Court reversed a decision of the U.S. District Court of New Jersey where plaintiff's complaint had been dismissed for failing to plead the underlying acts of fraud with sufficient particularity.



The U.S. Third Circuit Court states that the U.S. District Court confused what must be "pleaded with what must be proved".  The decision states:

> Rule 9(b) requires plaintiffs to plead with particularity the "circumstances" of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior.  It is certainly true that allegations of "date, place or time" fulfill these functions, but nothing in the rule requires them.  Plaintiffs are free to use alternative means of injecting precision and some measure of substantiation into their allegations of fraud.

The VIOXX® complaint identifies with specificity the nature of the misrepresentations.  The specific FDA warning letters referenced in the complaint add both more precision and some measure of substantiation to the allegations.

The allegations are just that.  They remain unproven but are sufficiently specific to allow the defendant to understand what they must defend against.  In Florian Greenhouse v. Cardinal IG Corp., 11 F.Supp.2d 521 (U.S. Dist.Ct. N.J. 1998) the Court stated "the most basic consideration in judging the sufficiency of a pleading is whether it provides adequate notice to an adverse party to enable it to prepare a responsive pleading."

In In re The Prudential Insurance Company of American Sales Practices Litigation 975 F.Supp. 584, in an opinion dealing with complex insurance fraud allegations, the U.S. District Court of N.J. held:

> Nor, under these circumstances, is plaintiffs' failure to attach specific documents to which the complaint refers, or to quote from them verbatim, fatal to their claims.  Cf. In re VMS Secs. Lit., 752 F.Supp. 1373, 1386 (N.D.Ill.1990).  In complex corporate fraud case such as this one, "a description of the nature and subject matter" of the alleged misrepresentations or omissions may be sufficient "even absent allegations with respect to the exact factual context or words constituting the misrepresentation."  In re Midlantic Corp. Shareholder Lit., 758 F.Supp. 226, 231 (D.N.J.1990), citing Commodity Futures Trading Com'n v. American Metal Exchange Corp., 693 F. Supp. 168, 190-91 (D.N.J.1988).


E-SERVED
07/08/04
04:16 PM ET
Vioxx (NJ)

The Court finds that the complaint alleges fraud with sufficient particularity to fulfill the purpose of the Rules.

This Court notes that in Shapo v. O'Shaughnessy, 246 F.Supp.2d 935 (U.S. Dist. Ct. Ill. 2002) it was recognized that although the Third Circuit and Eighth Circuit have looked to the purpose of Rule 9(b) and don't require that every complaint contain "who, what, when, where and how" in complete detail, the Seventh Circuit does usually still require all such details. The decision points out, however, that even the Seventh Circuit recognizes that these requirements are loosened upon a showing a plaintiff needs discovery to obtain particulars of fraudulent scheme where the scheme itself is alleged with particularity. This reasoning would also support the Court's decision to decline to dismiss plaintiff's complaint for failure to properly plead their fraud claim. Discovery is necessary to flesh out the misrepresentations cited in the FDA warning letters.

The defendant Merck also argues that plaintiff's allegations of fraudulent omissions are defective because there was no fiduciary relationship between plaintiff and the defendant and therefore no duty to disclose information to plaintiffs. Pharmaceutical companies have a duty to disclose information to the public including to those who directly purchase their drugs. See Perez v. Wyeth Labs, 161 N.J. 1 (1999), at 20-21, in which the Court stated:

> It is one thing not to inform a patient about the potential side effects of a product; it is another thing to misinform the patient by deliberately withholding potential side effects while marketing the product as a efficacious solution to a serious health problem.

This Court sees no reason why the duty to be honest about the safety and usefulness of a drug when marketing it as a product for sale should not extend to the third party payors who actually pay for the purchase of drugs for members.



The complaint alleges that the plaintiff relied upon the misrepresentations of defendant Merck when approving VIOXX® for purchase by its members.  It alleges plaintiff paid an excessive price to buy VIOXX® at a substantial premium over other drugs on the market because of these misrepresentations.  The defendants argue that there really was no reliance.  The claim is pled appropriately.  The issue of whether there actually was reliance is a fact issue left for another day.

Consumer Fraud Act

The defendant also moves to strike Count II of the complaint which makes a claim against the defendant based on violations of the Consumer Fraud Act (N.J.S.A. 56:8-1, *et.seq.*).  The defendant Merck maintains that the plaintiff as a third party payor for its members is not a "consumer" under the statute and therefore not entitled to the protection offered by the statute.

There can be no disagreement that the purpose of the Consumer Fraud Act is the "protection of consumers by eliminating sharp practices and dealings in the marketing of merchandise."  Channel Cos., Inc. v. Britton, 167 N.J.Super. 417, 417 (App.Div. 1979).  Because it is a remedial act, it should be liberally construed to serve that goal.  New Mea Const. Corp. v. Hayer, 203 N.J.Super. 486, 501-02 (App. Div. 1985).  As the Supreme Court has stated "the history of the Act is one of constant expansion of consumer protection."  Gennari v. Weichert Co. Realtors, 148 N.J. 582, 604 (1997).

N.J.S.A. 56:18-9 actually uses the word "person" not "consumer."  The Act states that "any person who suffers an ascertainable loss of moneys or property, real or personal" may bring an action if the loss was caused by an unlawful practice or method.  There is no dispute the word "person" is not limited to individuals or to those who purchase personal or household items.  The word "consumer" is used with much more limited connotations in other acts.  Both the Consumer



Credit Transaction Act, N.J.S.A. 56:11-1 and the Consumer Contract Act N.J.S.A. 56:12-1 limit the definition of "consumer" to an individual.  The Consumer Fraud Act however uses the word "person" and includes business entities such as the plaintiff in this case.

In Marascio v. Campanella, 298 N.J.Super. 491 (App. Div. 1997), the Court held that a corporation purchasing goods or services generally sold to the public is a consumer entitled to the protection of the Act.

In Kavky v. Herbalife Intern. of America, 359 N.J.Super. 497 (App. Div. 2003), the Appellate Court applied the Act to the purchase of a franchise.  The Court stated not to interpret the Act broadly would deny protection from "pyramid schemes and similar mass public frauds." Id. at 501

Although Kavky dealt with the meaning of the word "merchandise" under the Act, the Appellate panel in Kavky, supra, states they accept the definition of "consumer" set forth in Neveroski v. Blair, 141 N.J.Super. 365, 378 (App. Div. 1976).  The Neveroski decision defined consumers as those who:

> "purchase products from retail sellers of merchandise consisting of personal property of all kinds or contract for services of various types brought to their attention by advertising or sales techniques."

In this case, the plaintiff paid for the purchase of the product from retail sellers.  The plaintiff sustained the economic cost of the higher price for VIOXX®.  The individual members retain their own individual claims for personal injury and the plaintiff doesn't seek compensation for that.  The plaintiff seeks the added cost to the plaintiff that resulted from their reliance on alleged misrepresentations by the defendant.  If their claim is true, then the plaintiff has suffered an ascertainable loss by paying for a retail product based on false advertising and "sharp practices" of the defendant.  Certainly, this should be covered by the statute.



The defendants rely on City Check Cashing, Inc. v. Nat. State Bank, 244 N.J.Super. 304 (App. .Div. 1990) and Arc Networks v. Gold Phone Card Co., 333 N.J.Super.L. 587 (Law Div. 2000). In these cases, the plaintiffs were found not to be entitled to protection of the Consumer Fraud Act. Both these cases are distinguishable because they involve buyers of wholesale services to resell at retail. In the cases cited by the defendant the services purchased were not available to the general public which is completely different from the VIOXX® which was being marketed to the public by the defendant.

In the case of Zorba Contractors v. Housing Authority of Newark v. Georgia-Pacific Corporation, 282 N.J. Super. 430 (App. Div. 1995), the Court notes that the New Jersey statute is one of the strongest consumer protection laws in the country. The Court found the Housing Authority of Newark was unquestionably a consumer under the Act even when purchasing merchandise with public funds.

The issue of remoteness of proximate cause would be relevant only if the plaintiffs were claiming for cost of treating members for personal injuries caused by taking VIOXX®. In this case, this issue is not relevant. In fact, this plaintiff is the proper party to claim for the cost of paying an increased price because of the alleged misrepresentations that VIOXX® was safer and more effective than cheaper drugs on the market.

In the case of Desiano v. Warner Lambert, 326 F.3d 339 the U.S. Court of Appeals for the Southern District of New York found the New Jersey consumer Fraud Act did protect insurers who paid for the drug Resulin at a higher price than diabetes drugs on the market based on false advertising. The District Court had dismissed the claim based on proximate cause issues citing to Holmes v. Securities Investor Protection Corp., 503 U.S. 258 (1992) and Laborers Local 17 Health & Benefit Funds v. Phillip Morris, 191 F.3d 229 (2d Cir. 1999). These cases


E-SERVED
07/08/04
04:16 PM ET
Vioxx (NJ)

dismissed actions based on lack of direct relationship between the injurious conduct and the injury.  The Circuit Court in Disiano, supra, found these cases were distinguishable because they were RICO claims and because the plaintiff's damages were entirely derivative of injuries to their insured.  In Disiano, supra, as in this case now before the Court, the claim is for direct financial losses sustained by the plaintiff as a result of the increased cost paid for the drug.

The Court in Desiano, supra, pointed out that if the plaintiff had paid substantially more for a drug falsely advertised as safer than Drug A when it was really identical to Drug A and just sold under a different name, there would be direct losses to the "person" or entity paying for the drug as a result of the false ads even if no person was actually injured by the drug.

The defendant focuses on a definition of consumer from the case of Hundred East Credit Corp. v. Eric Shuster Corp., 212 N.J.Super. 350 (App. Div. 1986).  In that case, the Court described a consumer as "one who uses goods and so diminishes or destroys their utilities."  This definition is quoted in City Check Cashing Inc. v. National State Bank, supra.  In the Hundred East Credit Corp v. Shuster, supra, opinion, the Appellate Division rejected a narrow interpretation of "consumer."  In that opinion, the language relied upon by defendants is taken from the Webster's Dictionary and does not express the outer limits of who is covered by the Act.  In fact, the Court states:

> Nothing in that statutory language suggests that the Act is inapplicable to the sale of merchandise for use in business operations.  To the contrary, the language on its face makes the Act applicable to all sales of 'merchandise' without regard to its intended use or the nature of the buyer.  212 N.J.Super. 350, at 355.

The Court finds that the limit placed by the defendants that a "person" under the Act must be the one who actually takes the medication or uses the product is too simplistic.  The focus should be on a misrepresentation causing a "person" to pay for something they otherwise would not have been willing to pay for because of the higher cost.  This fits the purpose of the Act.  If,

E-SERVED
07/08/04
04:16 PM ET
Vioxx (NJ)

for example, a "person" buys a gift for a third party based on false advertising, it does not matter that the person who is duped into making the purchase does not personally use the product.

    The Court finds that the motion to dismiss the claim under the Consumer Fraud Act must be denied.


DATE OF DECISION:  07/09/04          __/s/ Carol E. Higbee_____
                                                     CAROL E. HIGBEE, J.S.C.


<u>XXXX</u>    Order is attached.

This decision will be posted on the judiciary website and can be viewed at
http://www.judiciary.state.nj.us/decisions.htm for a period of six weeks from the
motion return period.