# Supreme Court of New Jersey

### Dkt. No. 59588

-------------------------------------------------- x
                                                   :
INTERNATIONAL UNION OF OPERATING                   :   Civil Action
ENGINEERS LOCAL #68 WELFARE FUND,                  :
individually and on behalf of all others similarly :   ON APPEAL FROM AN
situated,                                          :   INTERLOCUTORY DECISION OF THE
                                                   :   SUPERIOR COURT OF NEW JERSEY,
                                                   :   APPELLATE DIVISION, DOCKET NO.
                    Plaintiff-Respondent,          :   A-0450-05T1
                                                   :
          v.                                       :
                                                   :   Sat Below:
MERCK & CO., INC.,                                 :
                                                   :   HON. STEVEN L. LEFELT
                    Defendant-Appellant.           :   HON. RUDY B. COLEMAN
                                                   :   HON. GEORGE L. SELTZER
                                                   :
                                                   :
-------------------------------------------------- x

---

**PLAINTIFF-RESPONDENT'S BRIEF AND APPENDIX IN OPPOSITION TO
MOTION OF DEFENDANT-APPELLANT FOR LEAVE TO FILE REPLY
BRIEF IN SUPPORT OF ITS MOTION TO APPEAL INTERLOCUTORY
DECISION UNANIMOUSLY AFFIRMING DISCRETIONARY CLASS
CERTIFICATION ORDER OF THE HON. CAROL E. HIGBEE**

---

Christopher A. Seeger
David R. Buchanan
SEEGER WEISS LLP
550 Broad Street, Suite 920
Newark, NJ 07102-4573
Telephone: (973) 639-9100

John E. Keefe, Jr.
LYNCH KEEFE BARTELS LLC
830 Broad Street
Shrewsbury, NJ 07702
Telephone: (732) 224-9400

*(Additional counsel on signature page of brief)*

*Attorneys for Plaintiff-Respondent International Union of Operating
Engineers Local #68 Welfare Fund*

## TABLE OF CONTENTS

Page

Preliminary Statement . . . . . . . . . . . . . . . . . . . 1

Statement of Facts . . . . . . . . . . . . . . . . . . . 1

Argument . . . . . . . . . . . . . . . . . . . . . . . . 2

    THE COURT SHOULD DENY DEFENDANT LEAVE TO FILE A
REPLY BRIEF . . . . . . . . . . . . . . . . . . . . . . 2

    I.  Defendant Fails To Demonstrate "Good Cause" . . . . 2

    II.  Defendant Improperly Seeks to Rehabilitate
Its Moving Brief and to Raise New Arguments . . . . 4

Conclusion . . . . . . . . . . . . . . . . . . . . . . . 9

Appendix . . . . . . . . . . . . . . . . . . . . . . . . 1a

i

## TABLE OF AUTHORITIES

**Cases**                                                                      **Page(s)**

A.D. v. Morris County Bd. of Soc. Servs.,
353 N.J. Super. 26 (App. Div. 2002) . . . . . . . . . . . . . 5

Blue Cross/Blue Shield of Ala. v. Wyeth Pharms., Inc.,
No. 2003-6046-RSV, 2006 WL 1241019
(Ala. Cir. Ct. Feb. 27, 2006) . . . . . . . . . . . 8, 1a-19a

Castano v. Am. Tobacco Co., 84 F.3d 734 (5th Cir. 1996) . . . 5

Cotracom Commodity Trading Co. v. Seaboard Corp.,
189 F.R.D. 655 (D. Kan. 1999) . . . . . . . . . . . . . . . 3, 4

Gantes v. Kason Corp., 145 N.J. 478 (1996) . . . . . . . . . 9

In re Cadillac V8-6-4 Class Action, 93 N.J. 412 (1983) . 4, 7-8

In re Harrington, 392 F.2d 653 (C.C.P.A. 1968) . . . . . . . 3

In re Pennsylvania Baycol Third-Party Payor Litig.,
No. 1874 SEPT. TERM 2001, 2005 WL 852135 (Pa. Com.
Pl. Apr. 4, 2005) . . . . . . . . . . . . . . . . 8, 20a-35a

In re Rhone-Poulenc Rorer, Inc., 51 F.3d 1293
(7th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . 5

Int'l Union of Operating Eng'rs Local No. 68 Wel. Fund
v. Merck & Co., 384 N.J. Super. 275 (App. Div. 2006) . . . . 9

Klay v. Humana, Inc., 382 F.3d 1241 (11th Cir. 2004),
cert. denied, 543 U.S. 1081 (2005). . . . . . . . . . . . . 8

Milk Drivers & Dairy Employees, Local 680 v. Shore
Dairies, Inc., 8 N.J. 32 (1951) . . . . . . . . . . . . . . 5

Newton Mem'l Hosp. v. Lacy, 186 N.J. 4 (2005) . . . . . . . 3

Olive v. Graceland Sales Corp., 61 N.J. 182 (1972) . . . . . 4

Riley v. New Rapids Carpet Ctr., 61 N.J. 218 (1972) . . . . . 4

Rowe v. Hoffman-La Roche, Inc., 383 N.J. Super. 442
(App. Div. 2006) . . . . . . . . . . . . . . . . . . . . 8, 9

State v. Reldan, 100 N.J. 187 (1985) . . . . . . . . . . . . 6

Strawn v. Canuso, 140 N.J. 43 (1995)  . . . . . . . . . . .  4

United Food & Commercial Workers Union v. Albertson's,
207 F.3d 1193 (10th Cir. 2000)  . . . . . . . . . . . . . .  5

Webster v. Fall, 266 U.S. 507 (1925)  . . . . . . . . . . .  5


**Rules**

New Jersey Rules of Court 2:2-2(b)  . . . . . . . . . . . .  8

New Jersey Rules of Court 2:8-1 . . . . . . . . . . . . . .  1

New Jersey Rules of Court 2:12-4  . . . . . . . . . . . . .  8

## PRELIMINARY STATEMENT

Plaintiff-Respondent International Union of Operating Engineers Local No. 68 Welfare Fund ("Plaintiff") respectfully submits this brief in opposition to the motion of Defendant-Appellant Merck & Co., Inc. ("Defendant") for leave to file a reply brief in further support of its motion for leave to appeal the Appellate Division's March 31, 2006 decision.

Defendant does not even acknowledge, let alone make a showing of, "good cause" for leave to file a reply brief. Rather, Defendant's proposed reply is a transparent attempt to simply get in the last word on its motion, which R. 2:8-1 does not ordinarily contemplate, and to do so after 114 pages of runaway briefing have already been submitted in support of its motion for leave to appeal, including by six supporting amici.

The Court should also deny Defendant's motion because Defendant: (1) improperly attempts to rehabilitate its brief in support of its motion for leave to appeal; (2) raises new arguments that Defendant failed to present in its moving brief; and (3) fails, once again, to demonstrate the requisite irreparable harm and exceptional or extraordinary circumstances for granting leave to appeal.

## STATEMENT OF FACTS

On May 8, 2006, Defendant filed its motion for leave to appeal the Appellate Division's March 31, 2006 decision, and a 25-page brief in support thereof. Subsequently, several organizations, two of whom the Appellate Division had granted

leave to appear amicus curiae on Defendant's behalf, and others of whom are currently seeking such status, submitted five briefs, totaling 89 pages, in support of Defendant's motion.[1] Thus, a total of 114 pages of briefs have already been submitted in support of Defendant's motion for leave to appeal. On June 16, 2006, two weeks after Plaintiff filed its brief in opposition to Defendant's motion for leave to appeal, Defendant filed the instant motion for leave to file a reply brief, along with a 9-page supporting brief—the seventh brief submitted in support of Defendant's motion for leave to appeal.

## ARGUMENT

### THE COURT SHOULD DENY DEFENDANT LEAVE TO FILE A REPLY BRIEF

### I.   Defendant Fails To Demonstrate "Good Cause"

Defendant fails to state any grounds warranting the granting of leave to file a reply brief. Instead, Defendant, without even making an attempt to justify the filing of a reply, simply launches into a rehabilitation of deficient arguments made in its moving brief, and attacks the merits of arguments made by Plaintiff in its opposition brief. See Defendant's Proposed Reply Brief ("Drb"), at 1-2 (arguing "why the Court

---

[1] Two organizations that were accorded amicus curiae status below on behalf of Defendant, the Pharmaceutical Research and Manufacturers of America and the Product Liability Advisory Council, have filed briefs in support of Defendant's motion for leave to appeal. In addition, two motions seeking amicus curiae status in support of Defendant have been filed in this Court. One motion was filed by the Commerce and Industry Association of New Jersey, the Somerset County Business Partnership, and the Chemistry Council of New Jersey; the other by the HealthCare Institute of New Jersey. Plaintiff has opposed both motions.

may" and "should" hear appeal) (emphasis deleted); id. at 2-8.

The filing of a reply brief, however, is not appropriate merely because a movant would like one more "bite at the apple" (as Defendant does here).[2]   Rather, leave to file a reply is warranted where there is "good cause" for such a filing.   See Newton Mem'l Hosp. v. Lacy, 186 N.J. 4, 4 (2005) (granting motion for leave to file reply brief upon finding of "good cause").[3]   That should be especially the case where the underlying motion is for leave to appeal an interlocutory order, because such motions are disfavored and sparingly granted.   See Pb6 & n.8 (discussing New Jersey's "strong policy" against piecemeal adjudication of interlocutory orders).

Thus, because Defendant's proposed reply lacks any showing

---

[2] In this case, it is not simply a second "bite at the apple" that Defendant seeks, but, rather, in light of the 114 pages and six briefs collectively submitted by Defendant and its amici to date, it is essentially a seventh bite at the apple. The Court should not condone this "piling-on" strategy. At some point in briefing a motion, enough is enough. Here, Defendant and its amici are well past that point.

[3] See also In re Harrington, 392 F.2d 653, 655 (C.C.P.A. 1968) ("[c]ompliance with [rule requiring 'good cause' for leave to file reply] is necessary to regulate the business before the court in an orderly, expeditious and fair manner and to facilitate the prompt disposition of cases pending before the court"); cf. Cotracom Commodity Trading Co. v. Seaboard Corp., 189 F.R.D. 655, 659 (D. Kan. 1999) ("Generally the court grants leave [to file an additional brief] only in 'rare circumstances,' such as when a party raises new arguments in its reply brief."); id. (rule against additional briefing "fairly and reasonably assists 'the court in defining when briefed matters are finally submitted and in minimizing battles over which side should have the last word'") (citation omitted).

of "good cause," such as the need to respond to a new argument raised for the first time in Plaintiff's opposition brief, the Court should deny its motion. <u>Cf.</u> <u>Cotracom Commodity Trading Co.</u>, 189 <u>F.R.D.</u> at 659 (no "good cause" to file sur-reply where movant failed to show that plaintiffs had raised new arguments and "merely expand[ed] upon already existing arguments").

## II. Defendant Improperly Seeks to Rehabilitate Its Moving Brief and to Raise New Arguments

Defendant argues that this Court "has repeatedly granted motions seeking review of class certification orders," Drb2, and cites several decisions of this Court[4] in support of its claim that the Court has established a "consistent practice" of automatically granting interlocutory review of class certification orders, Drb2. Defendant, however, <u>failed</u> to mention or discuss these decisions or to present this argument in its moving brief, <u>see</u> Db1-25,[5] whereas it was Plaintiff who explicitly acknowledged and addressed this line of authority in its June 2d opposition brief, noting that these cases do not address whether interlocutory review of a class certification

---

[4] <u>See</u> Drb2 (citing <u>Strawn v. Canuso</u>, 140 <u>N.J.</u> 43, 53 (1995); <u>In re Cadillac V8-6-4 Class Action</u>, 93 <u>N.J.</u> 412, 420 (1983); <u>Olive v. Graceland Sales Corp.</u>, 61 <u>N.J.</u> 182, 185 (1972); <u>Riley v. New Rapids Carpet Ctr.</u>, 61 <u>N.J.</u> 218, 221 (1972)).

[5] Defendant cited the <u>Riley</u> and <u>Olive</u> cases in its moving brief, but only for the limited purpose of suggesting that the Court's class certification decisions were stale. <u>See</u> Db8 n.1.

order is necessary to prevent irreparable harm, see Pb7 n.7.[6]

Indeed, contrary to Defendant's contention that these decisions reflect a per se rule that class certification orders presumptively cause irreparable harm and automatically warrant interlocutory review, Drb2, the Court in those cases nowhere addressed this issue, see Pb7 n.9. Because the Court announced no such rule in these cases, Defendant's argument is meritless.[7] To accept Defendant's reasoning would mean that the Court in

---

[6] Defendant's assertion that the Court established a "presumptive irreparable harm" rule for class certification orders, Drb2, not only tries to extract a nonexistent precedent from these decisions, but is also another argument that Defendant never raised before.  In this respect, Defendant failed in its moving brief to make this "presumptive irreparable harm" argument that it now belatedly raises, based on these cases and others that it now cites for the first time, Drb2-3 (citing In re Rhone-Poulenc Rorer, Inc., 51 F.3d 1293, 1297-99 (7th Cir. 1995); Castano v. Am. Tobacco Co., 84 F.3d 734, 746 (5th Cir. 1996)).  See Pb9 (noting Defendant's failure to raise this argument in its moving brief).  The Court should thus deny the instant motion for this reason as well.  See A.D. v. Morris County Bd. of Soc. Servs., 353 N.J. Super. 26, 30 (App. Div. 2002) ("It is improper to raise an argument for the first time in a reply brief.") (collecting cases); Pb9 & n.15.

[7] See United Food & Commercial Workers Union v. Albertson's, 207 F.3d 1193, 1199-1200 (10th Cir. 2000) (stare decisis effect applies to issues that must have been actually decided by court) (citing authorities); see also Webster v. Fall, 266 U.S. 507, 511 (1925) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided so as to constitute precedents.").  Indeed, while Defendant argues for a per se rule for interlocutory review of class certification orders, this Court has rejected this type of argument as perversely "turning a rule designed to expedite litigation into a rule that would inevitably have the effect of prolonging it." Milk Drivers & Dairy Employees, Local 680 v. Shore Dairies, Inc., 8 N.J. 32, 38 (1951).

those decisions <u>sub silentio</u> (1) abrogated the defined standard requiring a showing of "irreparable harm" and "extraordinary" or "exceptional" circumstances for review of interlocutory orders, <u>see</u> Pb6-7; and (2) surrendered its discretion to consider motions for interlocutory appeal on a case-by-case basis, <u>see</u> <u>State v. Reldan</u>, 100 <u>N.J.</u> 187, 205 (1985) ("grant of leave to appeal an interlocutory order is itself highly discretionary").

Defendant mischaracterizes Plaintiff's brief as suggesting that the Court lacks "jurisdiction[]" or "power" to review interlocutory class certification orders.  Drb2, 4.  Plaintiff suggested no such thing.  Rather, Plaintiff noted that "whether the standards for interlocutory review <u>were met</u> [in this Court's earlier decisions] did not appear to be in dispute in those cases since it was not discussed." Pb7 n.9 (emphasis added). By contrast, it is Defendant that ignored or overlooked these decisions in its moving papers and now self-servingly misconstrues them.  <u>See supra</u> at 4-5.  At any rate, Defendant's belated "presumptive irreparable harm" argument is unavailing for the reasons previously noted.  <u>See</u> Pb9-10 & nn.14-16.

The last five pages of Defendant's proposed reply brief do not cite <u>any</u> supporting authority or recognize the applicable standard for interlocutory review (<u>i.e.</u>, "irreparable harm" and "exceptional" or "extraordinary" circumstances).  <u>See</u> Drb5-9.[8]

---

[8] Ironically, while claiming an urgent need for interlocutory review, Defendant fails to mention or address <u>any</u> of this Court's numerous controlling choice-of-law decisions, <u>see</u> Pb11 n.17, 12 n.22, 16 n.27, despite its contention in its moving

Instead, Defendant argues for such review on grounds not cognizable here.[9]   None of these grounds is relevant to the requisite high standard for interlocutory appeal.  See Pb6-11.

Nor is there any merit to these asserted reasons.  As previously discussed, incidental expenses of litigation incurred as part of class certification proceedings, Drb6-7, do not constitute irreparable harm.  See Pb8 & n.12.  On the contrary, this Court has recognized that "[class] certification can aid the efficient administration of justice by avoiding the expense, in both time and money, of relitigating similar claims."

---

brief that the choice-of-law question is the centerpiece of its motion for leave to appeal, Db1-2, 6-19.  This is perhaps because those decisions are fatal to Defendant's choice-of-law arguments.  See Pb11 n.17, 12-13 & n.22, 16-17 & n.27.  Indeed, although Defendant inaccurately claims that Plaintiff has argued for the application of the "state's law [that] is most favorable to the plaintiff," Drb1 n.1 (emphasis in original), Plaintiff has properly and accurately construed this Court's choice-of-law precedent as holding that the law of the state with the greater deterrence and compensation interests and qualitative contacts should apply, see Pb11 n.17, 12-13 & n.22, 16 & n.27—precedent that compels the application of the Consumer Fraud Act here (see Pb16-17), and which Defendant fails to refute.

[9] E.g., Drb5 ("very real need for immediate guidance" on "unresolved issue of fundamental importance"); Drb5 ("costs of granting Merck's motion will be substantially lower"); Drb5-6 (suggesting that Court should grant review merely because "[t]his case is already on interlocutory appeal" and "the Appellate Division has already rendered a decision") (emphasis in original); Drb6 ("this case involves a virtually unprecedented nationwide class certification order"); Drb6-7 ("investment of unrecoupable time, effort, and expense"); Drb7-8 (case should be heard in tandem with other case currently on appeal as of right).

Cadillac, 93 N.J. at 435.[10]  Defendant's hyperbolic description
of this case as "unprecedented," Db6, is refuted by decisions
certifying nationwide classes, including similar payor classes.[11]

Defendant's argument that this case should be heard in
tandem with Rowe v. Hoffman-La Roche, Inc., 383 N.J. Super. 442
(App. Div. 2006), is disingenuous because (1) Defendant below
strenuously disavowed Rowe as inapposite, see Pa769-70; and (2)
the standard for interlocutory review here (R. 2:2-2(b)) is not
concerned with whether there is a case before the Court
presenting a similar question—a basis for certification of
appeals from final judgments, see R. 2:12-4.

_____

[10] Indeed, Defendant's argument that a single class trial will be
"enormously prejudicial," Drb6, rings hollow because its real
aim is to upset the even playing field between the parties by
fragmenting this litigation into a multitude of individual
third-party payor ("payor") actions nationwide or, barring that,
separate statewide classes, where, armed with its vast, superior
resources, Defendant will be much better positioned to wage its
avowed campaign of attrition to litigate Vioxx cases "one by one
over many years."  Pb8 n.12.  Class certification denies
Defendant that overwhelming strategic advantage and places the
adjudication of these claims on a level playing field.  See
generally Klay v. Humana, Inc., 382 F.3d 1241, 1271 (11th Cir.
2004) (superiority of class treatment "is especially true when
the defendants are corporate behemoths with a demonstrated
willingness and proclivity for drawing out legal proceedings for
as long as humanly possible and burying their opponents in
paperwork and filings"), cert. denied, 543 U.S. 1081 (2005).

[11] E.g., Blue Cross/Blue Shield of Ala. v. Wyeth Pharms., Inc.,
No. 2003-6046-RSV, 2006 WL 1241019 (Ala. Cir. Ct. Feb. 27, 2006)
(certifying nationwide class of payors who paid for pain drug
Duract); In re Pennsylvania Baycol Third-Party Payor Litig., No.
1874 SEPT. TERM 2001, 2005 WL 852135 (Pa. Com. Pl. Apr. 4, 2005)
(certifying nationwide class of payors who paid for cholesterol-
lowering drug Baycol); see also Pb9 n.13 (collecting cases
certifying nationwide classes).

At any rate, Defendant's assertion that "the Appellate Division's analysis drew heavily on <u>Rowe</u>," Drb8, is a gross overstatement. In rejecting Defendant's argument that New Jersey's deterrence interests are outweighed by the compensation interests of absent class members' home states, the Appellate Division noted how this Court had held to the contrary in <u>Gantes v. Kason Corp.</u>, 145 <u>N.J.</u> 478 (1996). <u>Int'l Union of Operating Eng'rs Local No. 68 Wel. Fund v. Merck & Co.</u>, 384 <u>N.J. Super.</u> 275, 300 (App. Div. 2006) (<u>reprinted in</u> Da120). The Appellate Division merely cited <u>Rowe</u> as an example of how <u>that</u> court "ha[d] recently followed <u>Gantes</u> in another products liability action." <u>Id.</u> at 301 (<u>reprinted in</u> Da122-23). Thus, Defendant's suggestion that this case should be coupled to the appeal being heard <u>as of right</u> in <u>Rowe</u> has nothing to commend it.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendant's motion for leave to file a reply brief.

Dated:  June 23, 2006          Respectfully submitted,

SEEGER WEISS LLP

By: _Christopher A. Seeger_
Christopher A. Seeger
David R. Buchanan
550 Broad Street, Suite 920
Newark, NJ   07102
Telephone: (973) 639-9100
**Attorneys for Plaintiff-Respondent**

*Of Counsel:*

Diogenes P. Kekatos
James A. O'Brien III
**SEEGER WEISS LLP**
One William Street, 10th Floor
New York, NY  10004
Telephone:  (212) 584-0700

John E. Keefe, Jr.
**LYNCH KEEFE BARTELS LLC**
830 Broad Street
Shrewsbury, NJ  07702
Telephone:  (732) 224-9400

Thomas R. Kline
**KLINE & SPECTER, P.C.**
The Nineteenth Floor
1525 Locust Street
Philadelphia, PA 19102
Telephone: (215) 772-1000

Arnold Levin
Fredrick S. Longer
**LEVIN, FISHBEIN, SEDRAN & BERMAN**
510 Walnut Street
Suite 500
Philadelphia, PA  19106-3697
Telephone:  (215) 592-1500

Elizabeth J. Cabraser
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
Embarcadero Center West
275 Battery Street, Suite 3000
San Francisco, CA  94111-3339
Telephone: (415) 956-1000

Jonathan Shub
**SHELLER, LUDWIG & BADEY, P.C.**
One Greentree Centre, Suite 201
Route 73 & Greentree Road
Marlton, NJ  08053
Telephone: (856) 988-5590

Shelly Sanford
**GOFORTH LEWIS SANFORD LLP**
1111 Bagby, Suite 2200
Houston, TX  77071
Telephone:  (713) 650-0022

Dennis Reich
**REICH & BINSTOCK**
4265 San Felipe, Suite 1000
Houston, TX  77027
Telephone:  (713) 622-7271

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in So.2d
Not Reported in So.2d, 2006 WL 1241019 (Ala.Cir.Ct.)
**(Cite as: 2006 WL 1241019 (Ala.Cir.Ct.))**

Only the Westlaw citation is currently available.

Circuit Court of Alabama.
BLUE CROSS/BLUE SHIELD OF ALABAMA, Plaintiffs,
v.
WYETH PHARMACEUTICALS, INC., et al, Defendants.
No. Civ.A.2003-6046-RSV.

Feb. 27, 2006.

*CLASS CERTIFICATION ORDER*

VANCE, J.

**\*1** Pending is a motion for class certification filed by the named plaintiff, Blue Cross/Blue Shield of Alabama (hereafter "BCBSAL"), which seeks to represent a class in asserting an unjust enrichment claim against the defendants. Because this motion is opposed, a hearing was conducted pursuant to *Ala, Code §* 6-5-641. In connection with this hearing, the parties were provided the opportunity to conduct discovery pertaining to class Issues and to submit evidence in support of, or in opposition to, the pending motion. This order comes after full consideration of the evidence and arguments provided by the parties.

In considering the pending motion, this Court is mindful of its obligations as defined by the Supreme Court of Alabama:

The trial Judge is directed to conduct such proceedings as he deems necessary to determine whether the proponents of class certification have met their burden of proving each of the four elements of Rule 23(a) and at least one element of Rule 23(b). Any future order of the trial court certifying a class must identify each of the four elements of Rule 23(a), Ala. R. Civ. P., and must provide a written rigorous analysis of how the proponents of class certification have met their burden of proving these elements. A certification order must also include a written rigorous analysis of how the proponents of class certification have met their burden of proving one of those elements of Rule 23(b), Ala. R. Civ. P.

*Ex parte Mayflower Nat. Life Ins. Co.,* 771 So.2d 459, 462 (Ala.2000).

*Facts*

The defendants designed, manufactured, marketed, sold and distributed bromfenac sodium capsules under the brand name Duract from about July 15, 1997 until June 22, 1998. Duract was a non-steroidal, anti-inflammatory, short term pain management drug. Based on its labeling, a patient was to take Duract on an as-needed basis to manage pain--one to two capsules every 6 to 8 hours. Duract's labeling restricted its use to 10 days or less.

Duract was recalled on June 22, 1998, because of safety concerns in the wake of reports of adverse liver events, including 12 reported deaths and liver transplants. The defendants instructed the medical community and the public to immediately cease prescribing and taking Duract as of that day.

BCBSAL and members of the putative class paid for the purchase of Duract on behalf of their members, insureds, and beneficiaries during the time that it was marketed, and in accordance with the terms of the prescription drug coverage in their health insurance plans. Upon the defendants' withdrawing Duract from the market and directing that it no longer be used, the insureds and beneficiaries possessed Duract capsules that had been paid for but that was now unusable and valueless.

Recognizing this problem, the defendants attempted to rectify the situation by refunding the retail customers for the remaining, unusable Duract. This refund program did not include TPPs, however.

The defendants refunded consumers, pharmacies, pharmaceutical wholesalers, and other trade accounts, recognizing that it was not fair for its customers to have to bear the costs associated with remaining, unusable Duract. On this point, the defendants' designated corporate representative, Dennis Markle, testified:

*2 VELEZIS: What was the reason Wyeth chose to pay the consumers for the unused drug?
MARKLE: Thought it was the right thing to do.
VELEZIS: Did Wyeth think it was fair to reimburse the consumers for Duract that they could not use after the recall date?
MARKLE: Yes.
...
MARKLE: ... And the fact that they had unused product, compensated them for what they hadn't used.
VELEZIS: Because it was the right thing to do?
MARKLE: That's correct.
(Markle Depo. at 32, 33)

Under the defendants' refund program, consumers, pharmacies, pharmaceutical wholesalers, and other trade groups (but not TPPs), were

2a

allowed to return unused Duract and receive a fixed sum from Wyeth based on the amount of Duract returned, Consumers were paid $1 .15 for each capsule of Duract returned, with a minimum of $5.00 refunded regardless of how many pills were returned. Even in circumstances where consumers had thrown away their Duract the defendants paid them refunds "in good will." In connection with refunding pharmacies, distributors, wholesalers and other trade groups, the defendants used a different formula to calculate the amount of the refunds.

Other than those TPPs that had entered into a direct contractual relationship regarding Duract, the defendants refused to refund BCBSAL or other TPPs. Why the defendants chose to refund all of its customers except TPPs is unknown. Interestingly, Mr. Markle testified that the issue of refunding TPPs never arose. Kevin Cancelliere, Wyeth's Senior Product Manager for Duract, confirmed that no such discussion occurred. Ironically, Mr. Cancelliere conceded that TPPs were the "audience" to which the defendants marketed Duract for sale. The defendants knew that TPPs were purchasers of Duract. In pertinent part, Mr. Markle stated:

VELEZIS: ... My question is in the stream of commerce, who are the ultimate purchasers, meaning who pays for Duract? We've got consumers, wholesalers and pharmacies. Is it fair to say that third-party payors, insurance companies, also pay for Duract?
MARKLE: Yes. Depending on the program.
(Markle Dep. 50.)

Moreover, in order to increase sales, the defendants marketed extensively to TPPs and strongly urged TPPs to place Duract on their "formularies"--preferred drug lists. The putative class members were thus extremely important to Duract's sales success, and the defendants knew that fact. For this reason, the defendants monitored and tracked, on at least a monthly basis, the class members' formulary status for Duract. For example, a monthly TPP report, entitled "Managed-Care Formulary Report," dated August 1997, reflected the formulary status of about 600 to 700 "top volume" TPPs located throughout the United States.

Despite the fact that TPPs paid substantial sums of money for Duract that could never be used due to the recall, TPPs were the only entitles in Duract's chain of distribution that the defendants refused to refund.

*Analysis*

**\*3** The class sought here is pursuant to Rule 23(b)(3), meaning that certification is proper only if the

plaintiff meets its burden of showing that each of the four elements of Rule 23(a), and those of Rule 23(b)(3), apply. BCBSAL's burden is met only if it produces "substantial evidence satisfying the requirements of Rule 23." *Mayflower Nat. Life Ins. Co. v. Thomas,* 894 So.2d 637, 640 (Ala.2004), citing *Ex parte Green Tree Fin. Corp.,* 684 So.2d 1302 (Ala.1996). The Court therefore proceeds to analyze whether BCBSAL has met its burden with regard to each of these elements.

### Rule 23(a)--Requirement of Numerosity

The first requirement under Rule 23(a) is numerosity. More specifically, there must be substantial evidence that the class is "so numerous that joinder of all members is impracticable." For purposes of Rule 23(a)(1), impracticability does not require a showing of impossibility, but instead relates to the difficulty or Inconvenience in joining all class members. See *Cheminova America Corp. v. Corker,* 779 So.2d 1175, 1179 (Ala.2000)(quoting and approving trial court's certification order).

The numerosity requirement imposes no absolute minimum number, but is subject to examination of the specific facts of each case. Id., quoting, inter alia, *General Tel. Company of the Northwest, Inc. v. EEOC,* 446 U.S.

318, 100 S.Ct. 1698, 64 L.Ed .2d 319 (1980).

BCBSAL estimates that there are thousands of TPPs in the United States. The defendants' internal documents reflect 600-700 "top volume" TPPs throughout the nation. The proposed class thus has the potential to include thousands of members. The defendants do not contest this conclusion, moreover.

This Court therefore concludes that BCBSAL has readily met its burden with respect to the numerosity requirement.

### Rule 23(a) --Requirement of Commonality

Commonality is the second requirement under Rule 23, which means that BCBSAL must show that there exist common issues of law or of fact. The Alabama Supreme Court has recognized that a "common nucleus of operative facts is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." *Cheminova,* 779 So.2d at 1180. Where, as here, "the complaint alleges that the Defendants have engaged in a standardized course of conduct that affects all class members, the commonality requirement will generally be met." *In re Terazosin Hydrochloride Antitrust Litigation,* 220 F.R.D. 672, 685 (S.D.Fla.2004), citing *Roper v.*

*Consurve, Inc.,* 578 F.2d 1106, 1113 (5th Cir.1978); see also *In re Synthroid Marketing Litigation,* 188 F.R.D. 287, 291 (N. D.Ill.1999)("(t)he allegations Involve standardized conduct by the defendants toward the potential class members, and in such a situation, courts have readily found a common nucleus of operative facts") (citations omitted). [FN1]

> FN1. When Interpreting Rule 23 of the Alabama Rules of Civil Procedure, the Alabama Supreme Court has specifically stated that "Alabama's Rule 23 and the corresponding federal rule (Rule 23, Fed . R.Civ.P.) are virtually Identical, and federal authorities are persuasive when a court is interpreting the Alabama Rules of Civil Procedure." *Mitchell v. H & R Block, Inc.,* 783 So.2d 812, 816 (Ala.2000); see also *Cutler v. Orkin Exterminating Co., Inc.,* 770 So.2d 67, 70 & n.2 (Ala.2000) ("(b)ecause the Alabama Rules of Civil Procedure were patterned after the Federal Rules of Civil Procedure, cases construing the federal rules are considered authority in construing the Alabama rules.")

The Court finds that there are several questions of fact and law common to the Class In this case, Including the following:

**\*4** . Whether the defendants received a benefit as a result of payments made by class members on behalf of, or in reimbursement to, their insureds for the purchase of Duract;

. Whether the retention of any benefit conferred by the class members on the defendants is unjust in light of the devaluation of the product; and

. Whether the class members are entitled to reimbursement from the defendants of their expenditures for the cost of Duract rendered unusable because of its withdrawal from the market.

These are central questions that are common to all members of the proposed class. See *Cheminova,* 779 So.2d at 1180 (identifying one question central to litigation). Proof of these common questions will advance the claims of all class members, and combined treatment will allow the questions to be answered in a uniform manner such that class treatment will result in a substantial benefit in terms of judicial economy.

In *In re Pennsylvania Baycol Third-Party Payor Litigation,* ___ A.2d ___, 2005 WL 852135 (Pa. Ct. Com. Pl., April 4, 2005), the Pennsylvania Court of Common Pleas

certified a nationwide class of TPPs asserting unjust enrichment claims for Baycol rendered unusable after the drug was withdrawn from the market. After an extensive analysis of the commonality and predominance/manageability factors, especially the possible variation of unjust enrichment laws among the states, the court concluded that any variations would not preclude commonality or make the case unmanageable. *Id.* at *6-8. The court found that, as in this case, the "common issue is the liability to a third party payor for the costs of medication sold to consumers who were subsequently advised it was unsafe to use ...," *Id.* at *5. This common issue exists here. Because all of the present class members share questions of law and fact in common, the commonality requirement is satisfied.

### Rule 23(a) --Requirement of Typicality

Typicality, the third requirement under Rule 23(a), "focuses on the interests of the class representatives." *Ex parte Government Employees Ins. Co.,* 729 So.2d 299, 304 (Ala.1999). "If the party advancing the class can establish that the same unlawful conduct was directed at or affected both the class representatives and the class itself, then the typicality requirement is usually met irrespective of varying fact patterns

which underlie the individual claims." *Terazosin,* 220 F.R.D. at 686 (citation omitted); accord *Cheminova,* 779 So.2d at 1181. In other words, "a plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *In re Cardizem CD Antitrust Litigation,* 200 F.R.D. 297, 304 (E.D.Mich.2001) (citation omitted); see also *Warehouse Home Furnishing Distributors, Inc. v. Whitson,* 709 So.2d 1144, 1149 (Ala.1997)( "(t)ypicallty exists when a plaintiff/class representative's injury arises from or is directly related to a wrong to a class and that wrong to the class includes the wrong to the plaintiff").

**\*5** BCBSAL has allegedly been Injured in the same manner and by the same conduct as the class it seeks to represent. The claims of BCBSAL and the class arise out of the same conduct by the defendants--the retention of money paid by TPPs for Duract that became valueless upon the recall. In actions regarding the recall, the refund program that excluded TPPs, the retention of a benefit from TPPs, and the nationwide failure to pay TPPs for the Duract, the defendants treated BCBSAL and all class members in the same manner. This alone is

sufficient to satisfy the typicality requirement. See *Terazosin,* 220 F.R.D. at 687 (finding typicality satisfied in class where "Indirect Purchaser Plaintiffs allege that the same unlawful conduct affected both the class representatives (including BCBSAL) and the class itself" and that the claims of the class representatives were "not only typical of the claims of all class members, they are virtually Identical in nature, not withstanding variations in the amount of damages"); *Synthroid,* 188 F.R.D. at 291.

The claims of BCBSAL and the proposed class are based on the same legal theory--unjust enrichment. As discussed below, unjust enrichment is recognized in a virtually Identical fashion in every jurisdiction in the United States. *Baycol,* 2005 WL 852135, at *7; *Terazosin,* 220 F.R.D. at 697 n.40; *Cardizem,* 218 F.R.D. at 518; *Singer,* 185 F.R.D. at 692 ("prevailing case law holds that at least two of Singer's state claims, breach of contract and unjust enrichment, are universally recognized causes of action that are materially the same throughout the United States"). BCBSAL's claim for unjust enrichment is thus typical of every other class member's.

The defendants suggest that typicality is not met where various class members paid different amounts for Duract prescriptions, whether due to coverage rules, their contracts with retail pharmacies, or rebate agreements from Wyeth. Such an argument goes only to the issue of individual class members' damages, however. That all class members paid for Duract rendered unusable as of the drug's withdrawal is what matters for this element of Rule 23(a).

In *Cardizem,* the defendants challenged the plaintiffs' ability to satisfy the typicality requirement, arguing that each class member's ability to prove its claim will depend on the unique facts surrounding that member's payment for prescriptions for the drug at issue there. The court rejected the argument, recognizing that the claims of the named representatives and the claims of the class members arose from the same events, involved the same legal theory, and contained the same elements of proof. In finding that the challenges to the typicality of plaintiffs' claims were unpersuasive, the *Cardizem* court declared that "(d)ifferences in the damages sustained by individual class members does not preclude a showing of typicality, nor defeat class certification." 200 F.R.D. at 305, quoting *In re Playmobil Antitrust Litig.,* 35 F.Supp.2d 231, 242 (E.D.N.Y.1998).

**\*6** The court in *In re Lupron*

*Marketing & Sales Practices Litigation,* 228 F.R.D. 75 (D.Mass.2005), relied on established precedent to hold similarly:

"A sufficient nexus Is established (to show typicality) if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory." *In re Terazosin Hydrochloride Antitrust Litig.,* 220 F.R.D. 672, 686 (S.D.Fla.2004)(finding that representatives were typical of plaintiffs subject to an overcharge for a prescription drug despite the fact that class members paid for the overcharge in different ways) (*quoting Kornberg v. Carnival Cruise Lines, Inc.,* 741 F.2d 1332, 1337 (11th Cir.1984). "Although (the plaintiffs) may not have suffered identical damages, that is of little consequence to the typicality determination when the common issue of liability is shared." *In re Lorazepam & Clorazepate Antitrust Litig.,* 202 F.R.D. 12, 28 (D.D.C.2001) (finding representatives' claims typical despite the fact that some class members bought prescription drugs directly while others bought from agents or wholesalers at various rates).
228 F.R.D. at 89.

In certifying an unjust enrichment class with BCBSAL as the class representative, the *Terazosin* court rejected the same argument of the defendants there. 220 F.R.D. at 687; see also *Baycol,* 2005 WL 852135, at *8 (finding typicality when both class representative and class members suffered monetary loss for unused portion of drug recalled).

This Court holds likewise and finds that the requisite element of typicality is present here.

*Rule 23(a)--Requirement of Adequacy*
The Alabama Supreme Court has explained the "adequacy-of-representation" requirement of Rule 23(a) as follows:
The adequacy-of-representation requirement "is typically construed to foreclose the class action where there is a conflict of interest between the named plaintiff and the members of the putative class." *General Tel. Co. v. EEOC,* 446 U.S. at 331, 100 S.Ct. 1698. It also involves questions regarding whether the attorneys representing the class are "qualified, experienced, and generally able to conduct the proposed litigation." *Griffin v. Carlin,* 755 F.2d 1516, 1533 (11th Cir.1985), Adequacy of representation requires that the class representative "have common interests with unnamed members of the class" and that the representative "will vigorously prosecute the interests of the class through

qualified counsel." *American Med. Sys.*, 75 F.3d at 1083 (*quoting Senter v. General Motors Corp.*, 532 F.2d 511, 525 (6th Cir.1976)); *see also General Tel. Co. v. Falcon*, 457 U.S. at 157, 102 S.Ct. 2364. *Cutler v. Orkin Exterminating Co., Inc.*, 770 So.2d 67, 71 (Ala.2000).

In other cases, BCBSAL has been found to be an adequate national class representative for TPPs, *Synthroid*, 188 F.R.D. at 287, and an adequate class representative for an unjust enrichment class, *Terazosin*, 220 F.R.D. at 693. This Court finds that BCBSAL is an appropriate class representative here.

**\*7** From the evidence filed by BCBSAL, moreover, the Court concludes that counsel for BCBSAL possess substantial experience with regard to TPP mass tort and pharmaceutical class action litigation over the past twenty years. Recently, BCBSAL's counsel has been appointed and serves as co-lead class counsel on behalf of TPPs in one such nationwide class. *Terazosin*, 220 F.R.D. at 702. The Court further concludes from the evidence that counsel for BCBSAL would be appropriate counsel for the class in this case.

The plaintiff has met the burden of showing that adequacy exists here.

## Rule 23(b)(3) --Requirement of Predominance

In addition to satisfying the prerequisites of Rule 23(a), a class must also satisfy one of the provisions of Rule 23(b). BCBSAL requests class certification pursuant to Rule 23(b)(3), which requires that this Court find that common questions of law or fact predominate over individual questions, and that a class action is superior to other available methods of adjudication. The Alabama Supreme Court has described the requirements of Rule 23(b)(3) as follows:

... Rule 23(b)(3) requires a finding that questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. This requirement tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.... In making this determination, courts examine the substantive law applicable to the claims and determine whether the plaintiffs presented sufficient proof that common questions of law or fact predominate over individual claims. *University Federal Credit Union v. Grayson*, 878 So.2d 280, 286 (Ala.2003) (citations omitted).

"The predominance requirement is met if there is a common nucleus of operative facts relevant to the dispute and those common questions represent a significant aspect of the case which can be resolved for all members of the class in a single adjudication." *Avis Rent-A-Car Systems, Inc. v. Hellman,* 876 So.2d 1111, 1120 (Ala.2003), citing, *inter alia, Cheminova,* 779 So.2d 1175. Class certification under Rule 23(b)(3) is appropriate where there is a commonality of substantive law applicable to all class members. See *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 821-23 (1985).

Considering this aspect of the plaintiff's burden requires scrutiny of the cause of action it has asserted here. The defendants argue that an unjust enrichment claim may not support class treatment. The premise of this contention is that an unjust enrichment claim would require each class member to establish that it paid for Duract under a mistake of fact or in reliance of a fraudulent representation. BCBSAL does not claim a confidential relationship with the defendants, or an equitable lien or constructive trust on traceable funds or assets of the defendants.

**\*8** An unjust enrichment claim need not depend on proof of mistake or fraud, however. As stated by the Alabama Supreme Court, to prevail on an unjust enrichment claim, a plaintiffs must establish *either* that the defendant hold money that, in equity and good conscience, belongs to the plaintiff, *or* that the defendant holds money that was improperly paid because of mistake or fraud. See *Avis Rent-A-Car Systems, Inc.,* 876 So.2d at 1123. In other words, an unjust enrichment claim need not include fraud or mistake-of-fact as an essential element. Rather, the gravamen of an unjust enrichment can simply be that a defendant holds money that "in equity and good conscience belongs to plaintiffs." *Mitchell v. H & R Block, Inc.,* 783 So.2d 812, 817 (Ala.2000), quoting *Hancock-Hazlett Gen. Constr. Co. v. Trane Co.,* 499 So.2d 1385, 1387 (Ala.1986).

An example of this first kind of unjust enrichment claim--not requiring proof of mistake or fraud--is found in the *Cheminova* case. The Supreme Court there affirmed the certification of a national class of consumers seeking "restitution of the purchase price paid by the plaintiffs" for a medical skin cream that was withdrawn from the market because it was unsafe. 779 So.2d at 1178. The *Cheminova* court found the predominance and superiority requirements for class certification were met:

Where, as here, a common course of conduct has been alleged arising out

of a common nucleus of operative facts, common questions predominate. Jury findings on common questions of fact and Court rulings on common issues of law will significantly advance the resolution of identical or substantially similar questions and issues which would require resolution in connection with individual claims.

\* \* \*

[T]here should not be any insurmountable difficulty encountered in the management of this class action. The central issues involved will be the conduct of the Defendants, uniformly applied across the class. While there will be issues which arise which may require subclasses, and separate treatment for certain segments of the class action, by far the common issues predominate over any of these individual issues.

779 So.2d at 1181, 1182. The claims here, seeking refunds for a product unusable due to a safety recall, are virtually identical to those in *Cheminova*. The Court in *Cheminova* upheld the certification of a class on a claim of restitution/unjust enrichment, and *Cheminova* remains good law in Alabama.

In arguing to the contrary, the defendants cite *Reynolds Metals Company v. Hill,* 825 So.2d 100

(Ala.2002); *Avis Rent-A-Car Systems v. Heilman,* supra; *Funliner of Alabama, L.L.C., v. Pickard,* 873 So.2d 198 (Ala.2003); *Voyager Insurance Companies v. Whitson,* 867 So.2d 1065 (Ala.2003), and *Smart Professional Photocopy Corp. v. Childers-Sims,* 850 So.2d 1245 (Ala.2002). All these cases involve the second variety of unjust enrichment, premised on allegations of fraud or mistake.

**\*9** In *Reynolds Metals,* the Court found that individualized inquiries as to plaintiffs' state of mind involved in claims of ambiguity as to the terms of their employer's offer precluded certification:

(A)s to the plaintiff employees' unjust-enrichment claim, the trial court noted that the kind of proof necessary to establish liability for such a claim would be the same as that presented in the breach-of-contract and fraud claims. Having found that individual issues of proof predominate in those claims, we find that individual issues of proof would predominate in the plaintiff employees' unjust-enrichment claim as well.

825 So.2d at 107. Justice Johnstone concurred in part and dissented in part, while expressing "no opinion on the propriety of class certification for the unjust enrichment claim." *Id.* at 109.

*Avis,* like *Reynolds,* involved an unjust enrichment claim under the second prong, payment made by mistake or fraud, resulting from ambiguities in rental car contracts between corporate and consumer plaintiffs and the rental car agencies. Finding that common issues predominated as to the individual renters' breach of contract claims and upholding class certification on that ground, the Court found that payment by mistake "would require an individualized inquiry into the subjective 'state of mind' of each class plaintiff." Relying on *Reynolds,* the Court reversed certification on that claim. 876 So.2d at 1123. As in *Reynolds,* Justice Johnstone's separate opinion expressed no opinion on the holding that "the trial court erred in certifying the unjust-enrichment claim for class action resolution." *Id.* at 1125.

In *Funliner,* the plaintiffs brought claims against the owners of video-gaming machines on various theories. Addressing their unjust enrichment claim under Rule 23(b)(3), the Court found that "this theory of recovery ... requires individualized inquiry into the state of mind of each plaintiff. For example, In order to determine whether each putative member of the plaintiff class paid money by mistake or fraud, the trial court will have to determine whether he or she believed

that the gaming activities were illegal and, if so, whether he or she intended to engage in an illegal activity," 873 So.2d at 211. Justice Johnstone's separate opinion again clarifies the nature of the decision:

... I do not agree that a claim for "unjust enrichment or money had and received" based solely on the alternative theory "that the defendants hold money that, in equity and good conscience, belongs to the plaintiffs," "requires individualized inquiry into the state of mind of each plaintiff," as suggested by the main opinion. 873 So.2d at 211. This particular alternative, as distinguished from the "fraud or mistake" alternative for a claim for unjust enrichment or money had and received, would not necessarily require individualized inquiry into the putative class plaintiffs' respective states of mind, if the plaintiffs were pursuing this theory.

* * *

**\*10** In the case before us ... the plaintiffs do not allege any claim based solely on the theory "that the defendants hold money that, in equity and good conscience, belongs to the plaintiffs." Thus the potential suitability of such a claim for class certification does not avail these plaintiffs. Rather, these plaintiffs rely on the fraud-or-mistake alternative for a

claim for unjust enrichment or money had and received, which is not suitable for class certification, as the main opinion explains.
Id. at 219-220.

In *Smart Professional Photocopy Corp.*, the plaintiffs--whose attorneys had paid more than the statutory rate for medical records--were seeking recovery of the excess payments. Class certification was deemed Improper because the claims were premised on alleged mistakes of fact:

> The issue whether a payment made by mistake can, as a matter of law, under proper facts, allow recovery under the customers' equitable claims, is a common question of law suitable for class action. This question of law can be answered one time for all members of the class, thus satisfying the Rule 23(b)(3) predominance requirement. However, the issue whether any class members in fact paid Smart by mistake, as the customers contended, presents individual questions of fact.
> 850 So.2d at 1249.

In *Voyager*, the Court addressed plaintiffs' claims arising from the calculation of premiums on credit life and credit property insurance policies which are governed by the provisions of the Mini-Code. Plaintiffs there contended that the defendant insurer misrepresented that the rates had been legally calculated. The majority opinion analyzed plaintiffs' claim for unjust enrichment as involving payment under either a mistake of fact or law, disagreeing with Justice Johnstone's dissent:

> The dissenting opinion contends that the common question presented here is the legal interpretation of the insurance regulations and the Alabama Mini-Code ..., and that individual mental states or operations are therefore not presented. This is the equivalent of an assertion of mistake of law as a ground of recovery. However, as previously noted, the complaint expressly refers to mistake of fact, not law.

\* \* \*

> In this case, each class member would have to prove that he or she purchased Voyager credit-life or credit-property insurance under a mistake of fact or as a result of a fraudulent suppression with respect to how the premiums were calculated. Class members would be required to demonstrate mistake of fact on an individual basis. The knowledge and sophistication of customers varies from individual to individual.

\* \* \*

> As was the case in *Smart,* the customers here cannot satisfy their burden of proof as to each class

member's purchase by mistake without individual inquiries. The same lack of commonality of reliance previously addressed in connection with the claim for negligent or wanting hiring and supervision permeates the customers' claim of unjust enrichment grounded in fraudulent suppression. We conclude that individual issues of fact predominate over the customers' unjust-enrichment claims.
*11 *Id.* at 1076-77.

Unlike the cases on which the defendants rely, no claim is made here that any payment was based on any class member's mistake of fact or on fraud resulting from an ambiguity in any contract, nor is there a claim that payment was in mistaken contravention of a statutory scheme or in an amount in excess of that permitted by law. This case is much more akin to the situation presented in *Cheminova.* The type of claim asserted by BCBSAL seems particularly suited to treatment on a classwide basis.

That does not end the analysis, however; rather, this Court must now consider how the nationwide scope of the putative class affects the plaintiff's ability to meet the requirements of Rule 23(b)(3). As BCBSAL has shown, unjust enrichment laws do not vary

significantly among the states. Proving the requirements of unjust enrichment focuses primarily on the defendants' conduct and will involve predominantly common proofs. Section 1 of the Restatement (First) of Restitution provides that "(a) person who has been unjustly enriched at the expense of another is required to make restitution to the other." Under Comment (a) to Section 1, the Restatement further explains: "(a) person is enriched if he has received a benefit. A person is unjustly enriched if the retention of the benefit would be unjust." Comment (b) further provides that "(a) person confers a benefit upon another if he gives to the other possession of or some interest in money, land, chattels, or choses in action, performs services beneficial to or at the request of the other, satisfies a debt or a duty of the other, or in any way adds to the other's security or advantage."

In effect, under the Restatement, a claim for unjust enrichment involves a four-part test: (1) the unjust (2) retention of (3) a benefit received (4) at the expense of another, Generalized evidence of these four elements will prove the elements of unjust enrichment on a simultaneous, class-wide basis.

The law of the various states with regard to unjust enrichment has been found by our Supreme Court to be

similar enough to warrant certification of a nationwide class of end payers, which, like the class here, seeks restitution for payments wrongfully made for a withdrawn medical product. See *Cheminova*, 779 So.2d at 1182 ("[i]n this case the law will be supplied by the Uniform Commercial Code and basic contract and equity principles. The variations of state laws, if any, will not overcome the common nature of this action"). This finding is in accord with the cases from other jurisdictions that have found that the law of unjust enrichment is sufficiently similar among the states to allow certification of nationwide class actions asserting claims for unjust enrichment. See, e.g., *Terazosin*, 220 F.R.D. at 697 n.40; *Cardizem*, 218 F.R.D. at 518; *Singer*, 185 F.R.D. at 692. As the court stated in *Baycol*, similarities in unjust enrichment law among the states make the claim suitable for classwide treatment:

**\*12** All state laws commonly find unjust enrichment when a defendant wrongfully retains the money received from a sale when the defendant thereafter advises the consumer not to use the product because it may be unsafe. Essentially, the law everywhere requires proof that the defendant has kept what a plaintiff paid for a product under circumstances in which retention is inequitable. 2005 WL 852135, at \*7. Any

variations among state unjust enrichment laws are not so significant as to necessitate individual inquiries that would overwhelm the questions of fact and law common to the proposed class. Rather, such variations may be handled by methods such as sub-classes, a common tool in complex litigation, and would not render the case unmanageable. *Id.*, at \*6.

Regardless of possible variations in state law, no significant inquiries into the individual claim of any class member will be required. All class members' claims relate to a single course of conduct by the defendants that impacted the class in a uniform way. The class members seek a refund of money that they claim the defendants have unjustly retained. The fact of their damages may be proved and determined by common evidence reflected in records kept in a uniform manner by all TPPs, and pursuant to a straightforward methodology agreed to by the parties' experts. The defendants' corporate representative, Mr. Dennis Markle, testified that Wyeth treated all wholesalers and consumers the same way. Likewise, the defendants decided not to refund any TPPs for money paid for unused Duract. Accordingly, the evidence shows that the defendants' conduct complained of here was standardized with respect to the members of the proposed class.

As the prerequisites for unjust enrichment focus primarily on the defendants' conduct and will involve predominantly common proofs, there are no individual inquiries here to defeat the predominance requirement.

Nor does the existence of individualized damage inquiries alter this analysis. In deciding whether the predominance requirement is met, courts focus on liability rather than damages, because the existence of individual issues relating to damages are normally no bar to certification. See *Hardy v. City Optical Inc.,* 39 F.3d 765, 771 (7th Cir.1994). Individual issues relating to damages are rarely insurmountable, and there are methods to manage any damages issue that may arise, including permitting the jury to render an aggregate damage award to be allocated later by a special master, calculating damages by reliable formula, or other means. *In re Alexander Grant & Co. Litig.,* 110 F.R.D. 528, 534 (S.D.Fla.1986); *In re Commercial Tissue Prods.,* 183 F.R.D. 589, 596 (N.D.Fla.1998); *In re Unerboard Antitrust Litigation,* 203 F.R.D. 197, 214 (E.D.Pa.2001)("[t]he courts have repeatedly focused on the liability issues, in contrast to damage questions, and, if they found issues were common to the class, have held that Rule 23(b)(3) was satisfied"), *quoting* 4 Newberg on Class Actions, §§ 18-26. [FN2]

FN2.   See also *Sikes v. Teleline, Inc.,* 281 F.3d 1350, 1365 n.40 (11th Cir.2002)("[I]n cases Involving damages that may be calculated by a reliable formula--such as overcharge or usury cases--damages are not much of a hurdle at all to certification").

**\*13** The Alabama Supreme Court recognized in *Cheminova* that "(i)ndividual damages issues also do not destroy predominance, since the claims based on the amount paid for the product may be confirmed by a special master, or some other device which will lessen the burden on the court." 779 So.2d at 1182 (quoting and approving trial court's certification order); accord *Synthroid,* 118 F.R.D. at 293; *Baycol,* 2005 WL 852135, at \*9 (finding that any such difficulties in management would not be accorded much weight and the court would rely on counsel to control such problems). Any variation with regard to the amount of restitution to which the class members will be entitled does not work against class certification. In other words, the fact of injury should not be confused with the quantum of injury. *In re Screws Antitrust Litig.,* 91 F.R.D. 52, 56 (D.Mass.1981) (holding that because fact of injury was a "distinct question" from quantum of injury, common proof could establish

classwide injury even though amount of damage to each plaintiff was uncertain).

The U.S. Court of Appeals for the Eleventh Circuit has recognized this fact:

In assessing whether to certify a class, the Court's inquiry is limited to whether or not the proposed methods for computing damages are so insubstantial as to amount to no method at all.... Plaintiffs need only come forward with plausible statistical or economic methodologies to demonstrate impact on a class-wide basis.... Particularly where damages can be computed according to some formula, statistical analysis, or other easy or essentially mechanical methods, the fact that damages must be calculated on an individual basis is no impediment to class certification.

*Klay v. Humana, Inc.,* 382 F.3d 1241, 1259-60 (11th Cir.2004) (citations omitted).

BCBSAL has put forward plausible, straightforward methodologies by which injury and damages may be established on a class-wide basis. The data required to apply this methodology are also routinely kept by all TPPs in exactly the same way, and are reported on the global aggregate level by national marketing research firms such as Verispan and IMS. BCBSAL's data reflecting adjudication of claims and payment for Duract are representative and in fact the same as that kept by all TPPs. Testimony from both the plaintiff's expert and the defendants' representative demonstrates how simple the determination of injury and the formulation of damage methodologies on a class-wide basis could be in this case.

In sum, the predominance requirement of Rule 23(b)(3) is satisfied.

### Rule 23(b)(3) --Requirement of Superiority

Rule 23(b)(3) requires that the Court determine that the class action device is superior to other available methods for the fair and efficient adjudication of these controversies. In undertaking this duty, this Court must decide whether proceeding on a class-wide basis here will serve the goals of promoting the economies of time, effort and expense by preventing the re-litigation of the same issues in multiple proceedings. See *Cheminova,* 779 So.2d at 1182.

**\*14** A class action is the superior method for fair and efficient adjudication of the controversy when it is necessary to "permit the plaintiffs to pool claims which would be uneconomical to litigate individually." *Shutts,* 472 U.S. at 809;

17a

accord *Terazosin,* 220 F.R.D. at 700. The U.S. Supreme Court has commented:

> The aggregation of individual claims in the context of a classwide suit is an evolutionary response to the existence of injuries unremedied by the regulatory action of government. Where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class action device.

*Deposit Guaranty Nat'l Bank v. Roper,* 445 U.S. 326, 339, 100 S .Ct. 1166, ____ (1980). In this case, the claims of class members are of this type as evidenced by the fact that the claims of BCBSAL--a very large TPP--are less than $75,000.

Difficulties in management of class actions are significant only if they make the class action less fair and efficient than other available methods of adjudication. *In re Domestic Air Transp. Antitrust Litig.,* 137 F.R.D. 677, 693 (N.D.Ga.1991). As one court has stated, "the size of a class militates in favor, not against, certification" because "defendants should not be permitted to avoid responsibility for the magnitude of their alleged conspiracy." *In re NASDAQ Market-Maker Antitrust Litig.,* 169 F.R.D. 493, 528-29

(S.D.N.Y., 1996); accord *Domestic Air Transp. Antitrust Litig.,* 137 F.R.D. at 694.

Considerations of judicial economy and access to justice underscore the superiority of the class action as a preferred form of adjudication in this case. Members of the Class have relatively small individual claims when measured against the prohibitive cost of prosecution of this type of complex litigation, and a class action stands as the only practical method by which the vast majority of class members can litigate their claims against Wyeth. Abandonment of these claims would leave Wyeth in possession of unlawful profits. In sum, as all of the elements have been met, class treatment is superior to other available methods for the fair and efficient adjudication of this action.

BCBSAL has thus met its burden arising under Rule 23(b)(3).

### Conclusion and Order

The Court finds that the named plaintiff, BCBSAL, has met its burden of showing that all the prerequisites of certification under Rule 23(a) and Rule 23(b)(3) have been met. The putative class may therefore be certified.

The following shall constitute the nationwide class so certified by this

order:

All insurers, health maintenance organizations ("HMOs") and other managed care providers, insurance companies, third-party health care coverage providers, other health care coverage collectives such as union health and welfare plans, self-insured employers and their coverage plans, and other third-party payors who paid for the prescription drug Duract that was not used as of the date of its withdrawal from the market on June 22, 1998, because the prescribed course of Duract for which payment was made did not expire until after its withdrawal from the market.

**15** Excluded from the class are the defendants; their officers and directors; their direct and indirect parent and subsidiary corporations; the officers and directors of those direct and indirect parent and subsidiary corporations; government entities such as Medicare and Medicaid; entitles that purchased Duract to the extent of such purchases for resale; and direct purchasers of Duract from the Defendants, to the extent of such direct purchases.

It is further ordered that attorneys Kimberly R. West and Michael J. Velezis, and their law firm of Wallace, Jordan, Ratliff & Brandt, L.L.C., be hereby approved and appointed to serve as counsel for the class so certified.

Class counsel are ordered to file and serve--by April 14, 2006--proposed forms of notice for both mailing and publication, along with a proposed plan for dissemination of class notice and a proposed notice order. If plaintiffs contend that any or all of the costs of notice should be borne by the defendants, they shall file and serve, along with their proposed notice materials, a motion and supporting brief, also by April 14, 2006. If plaintiffs file such a motion, the defendants shall have until April 28, 2006, in which to respond.

The next *status conference* is hereby scheduled for Friday, May 5, 2006, at 1:30 p.m. At this conference, the Court will address issues concerning notice to members of the class hereby certified.

DONE and ORDERED.

Not Reported in So.2d, 2006 WL 1241019 (Ala.Cir.Ct.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
Not Reported in A.2d, 2005 WL 852135 (Pa.Com.Pl.)
**(Cite as: 2005 WL 852135 (Pa.Com.Pl.))**
<KeyCite History>
Only the Westlaw citation is currently available.

Court of Common Pleas of
Pennsylvania, Philadelphia County..
In re: PENNSYLVANIA BAYCOL
THIRD-PARTY PAYOR
LITIGATION
No. 1874 SEPT.TERM 2001.

April 4, 2005.

MEMORANDUM OPINION

BERNSTEIN, J.

**\*1** Presently before this court is plaintiffs' motion for class certification arising from the defendants' decision on August 8, 2001 to cease distribution of Baycol, also known as Cervistatin, and advise all known users to immediately cease using Baycol. This action is brought on behalf of all third-party payors ("TTP's") nationwide who purchased or paid for Baycol on behalf of users. Plaintiffs assert claims for breach of warranty and unjust enrichment only. Plaintiffs' claim for damages is all sums paid for Baycol by class members which pursuant to manufacturer instruction should not have been used, together with medical costs associated with transfering patients to a different cholesterol reducing drug.

FINDINGS OF FACT
1. Plaintiffs are third party payors who paid defendants on behalf of their subscribers for Baycol prescribed and purchased before August 2001.

2. Defendant individually or as part of joint marketing efforts engaged in the business of testing, manufacturing, labeling, licensing, marketing, distributing, promoting and selling Baycol also known as Cervistatin.

3. Cerivastatin was originally approved by the FDA for sale on June 26, 1997.

4. Baycol is a statin drug. Statin drugs are cholesterol lowering drugs that operate by blocking a liver enzyme involved in the synthesis of cholesterol.

5. Defendants marketed Baycol to physicians and directly to class member TPP's requesting that the

medication be listed upon insurance company formulary in order to encourage physicians to prescribe Baycol.

5. Approximately 700,000 consumers have used Baycol.

7. The use of Baycol and particularly the change in medication to a different statin medication requires careful medical monitoring and repeat physician visits and lipid, liver function and CPK tests.

8. A pharmaceutical company which markets a medication approved by the FDA warrants that the medication should be used.

9. On August 8, 2001 defendants voluntarily and without any FDA requirement withdrew Baycol from the market and informed physicians:

"Effective Immediately Bayer has discontinued the marketing and distribution of all dosage strengths of Baycol. Patients who are currently taking Baycol should have their Baycol discontinued and be switched to an alternative therapy."

10. The purpose and intent of this notification and other activity subsequent to August 8, 2001 was to stop all further patient use of the medication, including the use of already purchased Baycol.

11. Patients who had unused Baycol were refunded out of pocket costs to the full extent of any co-pay requirements.

12. Defendant has refused and continues to refuse to refund TPPs the purchase price paid for Baycol rendered unusable by defendant's voluntary actions and advice.

13. Defendant has refused and continues to refuse to refund TPPs for increased costs rendered medically necessary in order to safely switch patients to a different medication.

14. Plaintiffs filed this class action on behalf of the following proposed classes: "All Third-Party Payors, throughout Pennsylvania and the United States (excluding all governmental entities, Defendant and Defendant's respective subsidiaries and affiliates) who have purchased Baycol, or reimbursed their beneficiaries/insureds for their purchases of Baycol, that is unusable and/or have incurred additional expenses associated with Baycol's withdrawal."

*2 15. The Class brings claims for breach of warranty and unjust enrichment.

16. The class meets all the requirements for certification as more

fully set forth below.

## DISCUSSION

The sole issue before this court is whether the prerequisites for certification as stated in Pa. R.C.P. 1702 are satisfied. The purpose behind class action suits is "to provide a means by which the claims of many individuals could be resolved at one time, thereby eliminating the possibility of repetitious litigation and providing small claimants with a method to seek compensation for claims that would otherwise be too small to litigate". *DiLucido v. Terminix Intern., Inc.,* 450 Pa.Super. 393, 397, 676 A.2d 1237, 1239 (Pa.Super.1996). For a suit to proceed as a class action, Rule 1702 of the Pennsylvania Rules of Civil Procedure requires that five criteria be met:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class;

(4) the representative parties will fairly and adequately assert and protect the interests of the class under the criteria set forth in Rule 1709;

(5) a class action provides a fair and efficient method for adjudication of the controversy under the criteria set forth in Rule 1708.

Rule 1708 of the Pennsylvania Rules of Civil Procedure requires:

In determining whether a class action is a fair and efficient method of adjudicating the controversy, the court shall consider among other matters the criteria set forth [below]

a) Where monetary recovery alone is sought, the court shall consider

(1) whether common questions of law or fact predominate over any question affecting only individual members;

(2) the size of the class and the difficulties likely to be encountered in the management of the action as a class action;

(3) whether the prosecution of separate actions by or against individual members of the class would create a risk of

(i) inconsistent or varying adjudications with respect to individual members of the class which would confront the party opposing the class with incompatible standards of conduct;

22a

(ii) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of other members not parties to the adjudications or substantially impair or impede their ability to protect their interests;

(4) the extent and nature of any litigation already commenced by or against members of the class involving any of the same issues;

(5) whether the particular forum is appropriate for the litigation of the claims of the entire class;

(6) whether in view of the complexities of the issues or the expenses of litigation the separate claims of individual class members are insufficient in amount to support separate actions;

(7) whether it is likely that the amount which may be recovered by individual class members will be so small in relation to the expense and effort of administering the action as not to justify a class action.

**\*3** (b) Where equitable or declaratory relief alone is sought, the court shall consider

(1) the criteria set forth in subsections (1) through (5) of

subdivision (a), and

(2) whether the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making final equitable or declaratory relief appropriate with respect to the class.

(c) Where both monetary and other relief is sought, the court shall consider all the criteria in both subdivisions (a) and (b).

The burden of showing each of the elements in Rule 1702 is initially on the moving party. This burden "is not heavy and is thus consistent with the policy that decisions in favor of maintaining a class action should be liberally made." *Cambanis v. Nationwide Ins. Co.,* 348 Pa.Super. 41, 45, 501 A.2d 635, 637 (Pa.Super.1986). The moving party need only present evidence sufficient to make out a *prima facie* case "from which the court can conclude that the five class certification requirements are met." *Debbs v. Chrysler Corp.,* 2002 Pa.Super. 326, 810 A.2d 137, 153-154 (2002)(quoting *Janicik v. Prudential Ins. Co.,* 305 Pa.Super. 120, 451 A.2d 451, 455 (Pa.Super.1982).

In other contexts, the *prima facie* burden has been construed to mean "some evidence," "a colorable claim," "substantial evidence," or evidence

that creates a rebuttable presumption that requires the opponent to rebut demonstrated elements. In the criminal law context, "the *prima facie* standard requires evidence of the existence of each and every element." *Commonwealth v. Martin,* 727 A.2d 1136, 1142 (Pa.Super.1999), *alloc. denied,* 560 Pa. 722, 745 A.2d 1220 (1999). However, "The weight and credibility of the evidence are not factors at this stage ." *Commonwealth v. Marti,* 779 A.2d 1177, 1180 (Pa.Super.2001).

In the family law context, the term " 'prima facie* right to custody' means only that the party has a colorable claim to custody of the child." *McDonel v. Sohn,* 762 A.2d 1101, 1107 (Pa.Super.2000). Similarly, in the context of employment law, the Commonwealth Court has opined that a *prima facie* case can be established by "substantial evidence" requiring the opposing party to affirmatively rebut that evidence. *See, e.g., Williamsburg Community School District v. Com., Pennsylvania Human Rights Comm.,* 99 Pa.Cmwlth. 206, 512 A.2d 1339 (Pa.Commw.1986).

Courts have consistently interpreted the phrase "substantial evidence" to mean "more than a mere scintilla," but evidence "which a reasonable mind might accept as adequate to support a conclusion." *SSEN, Inc., v.*

*Borough Council of Eddystone,* 810 A.2d 200, 207 (Pa.Commw.2002). In *Grakelow v. Nash,* 98 Pa.Super. 316 (Pa.Super.1929), a tax case, the Superior Court said: "To ordain that a certain act or acts shall be *prima facie* evidence of a fact means merely that from proof of the act or acts, a rebuttable presumption of the fact shall be made; ... it attributes a specified value to certain evidence but does not make it conclusive proof of the fact in question."

**\*4** Class certification is a mixed question of fact and law. *Debbs v. Chrysler Corp.,* 2002 Pa.Super. 326, 810 A.2d, 137 (Pa.Super.2002). The court must consider all the relevant testimony, depositions and other evidence pursuant to Rule 1707(c). In determining whether the prerequisites of Rule 1702 have been met, the court is only to decide who shall be the parties to the action and nothing more. The merits of the action and the plaintiffs' right to recover are excluded from consideration. 1977 Explanatory Comment to Pa. R. Civ. P. 1707. Where evidence conflicts, doubt should be resolved in favor of class certification. In making a certification decision, "courts in class certification proceedings regularly and properly employ reasonable inferences, presumptions, and judicial notice." *Janicik,* 451 A.2d at 454, 455. Accordingly, this court must refrain from ruling on plaintiff's

ultimate right to achieve any recovery, the credibility of the witnesses and the substantive merits of defenses raised.

"The burden of proof to establish the five prerequisites to class certification lies with the class proponent; however, since the hearing on class certification is akin to a preliminary hearing, it is not a heavy burden." *Professional Flooring Co. v. Bushar Corp.,* 61 Pa. D & C 4th 147, 153, 2003 WL 21802073 (Pa.Com.Pl.Montgo.Cty. Apr. 14, 2003), (citing *Debbs v. Chrysler Corp.,* 810 A.2d 137, 153-54 (Pa.Super.2002); *Janicik v. Prudential Inc. Co. of America,* 305 Pa.Super. 120, 451 A.2d 451, 455 (Pa.Super.1982)); *See also Baldassarl v. Suburban Cable TV Co.,* 808 A.2d 184, 189 (Pa.Super.2002); *Cambenis v. Nationwide Insurance Co.,* 348 Pa.Super. 41, 501 A.2d 635 (Pa.Super.1985). The *prima facie* burden of proof standard at the class certification stage is met by a qualitative "substantial evidence" test.

Our Superior Court has instructed that it is a strong and off-repeated policy of this Commonwealth that decisions applying the rules for class certification should be made liberally and in favor of maintaining a class action. *Weismer by Weismer v. Beech-Nut Nutrition Corp.,* 419 Pa.Super. 403, 615 A.2d 428, 431

(Pa.Super.1992). *See also Janicik,* 451 A.2d at 454, *citing and quoting Esplin v. Hirschi,* 402 F.2d 94, 101 (10th Cir.1968) ("in a doubtful case ... any error should be committed in favor of allowing the class action").

Likewise, the Commonwealth Court has held that "in doubtful cases any error should be committed in favor of allowing class certification." *Foust v. Septa,* 756 A.2d 112, 118 (Pa.Commw.2000). This philosophy is further supported by the consideration that "[t]he court may alter, modify, or revoke the certification if later developments in the litigation reveal that some prerequisite to certification is not satisfied." *Janicik,* 451 A.2d at 454

Within this context, the court will examine the requisite factors for class certification.

I. Numerosity

To be eligible for certification, plaintiffs must demonstrate that the class is "so numerous that joinder of all members is impracticable." *Pa.R.C.P. 1702(1).* A class is sufficiently numerous when "the number of potential individual plaintiffs would pose a grave imposition on the resources of the court and an unnecessary drain on the energies and resources of the litigants should plaintiffs sue individually."

*Temple University v. Pa. Dept. of Public Welfare,* 30 Pa.Cmwith. 595, 30 Pa.Cmwlth. 595, 374 A.2d 991, 996 (1977) (123 members sufficient); *ABC Sewer Cleaning Co. v. Bell of Pa.,* 293 Pa.Super. 219, 438 A.2d 616 (1981) (250 members sufficient); *Ablin, Inc. v. Bell Tel. Co. of Pa.,* 291 Pa.Super. 40, 435 A.2d 208 (1981) (204 plaintiffs sufficiently numerous). Plaintiffs need not plead or prove the actual number of class members, so long as they are able to "define the class with some precision" and provide "sufficient indicia to the court that more members exist than it would be practicable to join." *Janicik, 451 A.2d at 456.*

**\*5**    Approximately    700,000 consumers have ingested Baycol, 10.6 million new and refilled prescriptions were dispensed in the year 2000. Many if not most of these prescriptions were paid by TPP's. Defendant does not contest numerosity.

The plaintiffs have satisfied the numerosity requirement for class certification of all proposed classes.

II. Commonality

The second prerequisite for class certification is that "there are questions of law or fact common to the class." Pa. R. Civ. P. 1702(2). Common questions exist "if the class

members' legal grievances arise out of the 'same practice or course of conduct on the part of the class opponent." ' *Janicik,* supra. 133, 451 A.2d at 457. Thus, it is necessary to establish that "the facts surrounding each plaintiff's claim must be substantially the same so that proof as to one claimant would be proof as to all." *Weismer by Weismer v. Beechnut Nutrition Corp.,* 419 Pa.Super. 403, 615 A.2d 428 (Pa.Super.1992)). However, where the challenged conduct affects the potential class members in divergent ways, commonality may not exist. *Janicik,* supra. 457 fn. 5

"While the existence of individual questions is not necessarily fatal, it is essential that there be a predominance of common issues shared by all class members which can be justly resolved in a single proceeding." *D'Amello v. Blue Cross of Lehigh Valley,* 414 Pa.Super. 310, 606 A.2d 1215 (Pa.Super.1992). In examining the commonality of the class' claims, a court should focus on the cause of injury and not the amount of alleged damages. "Once a common source of liability has been clearly identified, varying amounts of damages among the plaintiffs will not preclude class certification." See *Weismer by Weismer v. Beech-Nut Nutrition Corp.,* 419 Pa.Super. 403, 409, 615 A.2d 428, 431 (Pa.Super.). Where there exists intervening and possibly

superseding causes of damage however, liability cannot be determined on a class-wide basis. *Cook v. Highland Water and Sewer Authority,* 108 Pa. Cmwith. 222, 231, 108 Pa.Cmwlth. 222, 530 A.2d 499, 504 (Pa.Cmwith.1987).

Plaintiffs argue that questions of law and fact common to the class exist. Defendants claim that individual issues of law and fact exist and predominate. After reviewing the class action record created at the certification hearing in this matter, the court finds that the claims presented by the Class do satisfy the commonality requirement of Rule 1702(a)(2). The common issue is the liability to a third party payor for the costs of medication sold to consumers who were subsequently advised it was unsafe to use and the attendant costs for a patient to safely switch medications.

Defendants argue a conflict of law exists as to plaintiffs' claims for unjust enrichment precluding commonality. Defendants do not claim any conflict with respect to the claim of a breach of the implied warranty of usability. Plaintiffs' warranty claim arises under section 2-314(3) of the Uniform Commercial Code which has been adopted in forty-nine states and the District of Columbia. The one remaining state, Louisiana, has a similar provision.

Defendants raise the issue of privity of contract, however no state has expressly extended this requirement to a breach of an implied warranty under the U.C.C. "[I]f there is no pertinent decision or statute, or if there is a very substantial doubt about the law of a sister state, the law of a common law sister state in such a situation and at the time in question is presumed to be the same as that of this Commonwealth." *In Re: Trust of Pennington,* 421 Pa. 334, 219 A.2d 353 (1966). Herein, defendants specifically told purchasers to stop using the purchased product and took affirmative and reasonable steps including refund of all individual out of pocket costs, to insure that their product was not used. The law of every state, in one form or another, clearly requires any seller of a product to warrant that the product should be used.

**\*6** Additionally, even if minor variations of law do exist it is neither inequitable nor improper under the facts of this case to apply Pennsylvania law to all claims. Defendants maintain their principle places of business in Pennsylvania. They directed and controlled their national sales strategies with regard to TPP's from within Pennsylvania. Their refund policy was designed or coordinated within Pennsylvania. The Commonwealth of Pennsylvania has a strong interest in the conduct of the

27a

execution of contract rights and the business expectations in the uniformity of interpretation in commercial and insurance reimbursement contracts controlled from within the state.

As to the alternative claim of unjust enrichment, Plaintiffs' claim no significant conflict of law exists or if a conflict does exist, the Pennsylvania choice of law analysis requires this court to apply Pennsylvania law. As discussed below no significant conflict of law is relevant to the fair adjudication of this case as a class action. If indeed the defense persists in it's contention that relevant differences do exist, the Court is confident that the "ingenuity of counsel" can craft specific subclasses which allow for the easy management of trial while preserving all claims for appellate review.

Pennsylvania choice of law analysis entails a determination of whether the laws of the competing states actually differ. If the laws of the competing states do not differ, no further analysis is necessary. If a conflict is present, Pennsylvania courts utilize the approach set forth in the Restatement (Second) of Conflicts Section 145. *Troxel v. A.I. duPont Institute.,* 431 Pa.Super. 464, 468, 636 A.2d 1179, 1181 (1994). The relevant inquiry under this standard is not the number of contacts each litigant has with a state but the extent to which one state rather than another has demonstrated by reason of its policies and their connection and relevance to the matter in dispute a priority of interest in the application of its rule of law. The following factors may be considered in the analysis: 1) the place where the injury occurred; 2) the place where the conduct causing the injury occurred; 3) domicile, residence, nationality, place of incorporation, and place of business of the parties; 4) and the place where the relationship between the parties is centered. *Laconis v. Burlington County Bridge,* 400 Pa.Super. 483, 492, 583 A.2d 1218, 1222-23 (1990). The conflicting interests of each state must be analyzed within the context of the specific facts at issue in a particular case. Additionally, the weight of a particular state's contact must be measured on a qualitative rather than a quantitative scale. *Cipolla v. Shaposka,* 439 Pa. 563, 566, 267 A.2d 854 (1970).

The law of unjust enrichment does vary from state to state. See *Clay v. American Tobacco Co.,* 188 F.R.D. 483, 500 (S.D.Ill.1999). A conflict of law exists for plaintiffs' national claim for unjust enrichment but the conflict is not relevant to this lawsuit. All state laws commonly find unjust enrichment when a defendant wrongfully retains the money

received from a sale when the defendant thereafter advises the consumer not to use the product because it may be unsafe. Essentially, the law everywhere requires proof that the defendant has kept what a plaintiff paid for a product under circumstances in which retention is inequitable.

*7 As Judge Charles B. Kommann of the District Court for the District of South Dakota, Northern Division said in *Schumacher v. Tyson Fresh Meats, Inc.,* 2004 DSD 5, 221 F.R.D. 605, 2004 U.S. Dist. Lexis 11666:

"Certification of the unjust enrichment claims is more complicated. Defendants contend that class certification of the pendent state law claims for unjust enrichment should be denied because these claims involve varying state common law standards of liability."

In looking at claims for unjust enrichment, we must keep in mind that the very nature of such claims requires a focus on the gains of the defendants, not the losses of the plaintiffs. That is a universal thread throughout all common law causes of action for unjust enrichment. What is the practical difference between a practice that is "unfair" and a practice that results in "unjust enrichment"? What is the difference between "unfair" and "unjust"? The answers

are probably very little."

"Failure to certify the claims for unjust enrichment would or could result in class members having to file virtually thousands of individual suits wherein the discovery and factual issues would be nearly identical."

"There are some differences between or among the states. There are also many states where the common law is the same. Sub-classes can be identified, if necessary, to group residents of various states with identical common law requirements into subclasses. In other words, the problems are manageable.... The claims for unjust enrichment should also be certified."
    *Id.*

Unjust Enrichment is essentially an equitable doctrine. The elements of unjust enrichment are "benefits conferred on defendant by plaintiff, appreciation of such benefits by defendant and acceptance and retention of such circumstances that it would be inequitable for defendant to retain the benefit without payment of value." *AmeriPro Search, Inc. v. Fleming Steel Co.,* 2001 Pa.Super. 325, 787 A.2d 988 (2001) (citing *Schenck v. K.E. David. Ltd .,* 446 Pa.Super. 94, 666 A.2d 327, 328 (Pa.Super.1995). The application of this doctrine in this matter does not depend on the particular factual

circumstances of the case at issue. An unjust enrichment class requires answers to the following common questions of fact: (1) did plaintiffs confer a benefit upon defendants, (2) did the defendants appreciate the benefit. These questions must be answered in the affirmative since the plaintiffs' present a claim only to the extent that they paid defendants for Baycol which the company thereafter strongly urged consumers not to use. An unjust enrichment claim further requires proof of (3) whether the defendant accepted and retained the benefits under the circumstances that would make it inequitable for the defendant to retain the benefit without payment for value. The response to this remaining factual question will be uniform as to every class member. Determination of the equitable claim of unjust enrichment will not require any individualized determination, all class members stand in precisely the same relation to defendant. Either it would be inequitable for defendants to retain the payments made to them by TPPs while refunding the deductible or co-pay for the same purchase or it is acceptable. No individualized issues are significantly involved in the unjust enrichment claim.

**\*8** Plaintiffs have sustained their burden of demonstrating that common issues of fact and law exist to satisfy the requirement of commonality.

## III. Typicality

The third step in the certification test requires the plaintiff to show that the class action claims and defenses are typical of the entire class. The purpose behind this requirement is to determine whether the class representatives' overall position on the common issues is sufficiently aligned with that of the absent class members, to ensure that pursuit of their interests will advance those of the proposed class members. *DiLucido v. Terminix Intern., Inc.*, 450 Pa.Super. 393, 404, 676 A.2d 1237, 1242 (Pa.Super.1996).

The named plaintiffs are typical of those class claimants for both the warranty and unjust enrichment claims since they made payments on behalf of individuals who purchased Baycol but were advised by the defendant on August 8, 2001 to cease taking the medication and have incurred additional, otherwise unnecessary costs, when their insureds were told not to use the medication. Clearly class members suffered monetary loss for unused Baycol purchased prior to August 8, 2001. The fact that different class members may have different damage claims does not defeat the typicality of the class representative. The requirement of typicality has been met.

IV. Adequacy of Representation

For the class to be certified, this court must also conclude that the plaintiffs "will fairly and adequately assert and protect the interests of the class." Pa. R. Civ. P. 1702(4). In determining whether the representative parties will fairly and adequately represent the interests of the class, the court shall consider the following:

"(1) whether the attorney for the representative parties will adequately represent the interests of the class,

(2) Whether the representative parties have a conflict of interest in the maintenance of the class action, and

(3) Whether the representative parties have or can acquire financial resources to assure that the interests of the class will not be harmed."
Rule 1709.

"Until the contrary is demonstrated, courts will assume that members of the bar are skilled in their profession." *Janicik,* 305 Pa.Super. at 136, 451 A.2d at 458. Here, defendants do not challenge plaintiffs' counsels' skill and therefore, the court presumes that counsel is skilled in their profession.

"Courts have generally presumed that no conflict of interest exists unless otherwise demonstrated, and have relied upon the adversary system and the court's supervisory powers to expose and mitigate any conflict." *Janicik,* 305 Pa.Super. at 136, 451 A.2d at 458. Defendants argue that the interests of the named plaintiffs conflict with the interests of other class members. This Court concludes that the named class representatives' interests do not conflict with those of the proposed putative class even though some class members may have additional monetary claims. All claims derive from the same liability and are attendant together. Accordingly, the court finds that no conflict of interest exists and the adequacy of representation has been demonstrated.

V. Fair and Efficient Method of Adjudication

**\*9** The final criteria under Pa. R. Civ. P. 1702 is a determination of whether a class action provides a fair and efficient method for adjudication of the controversy under the criteria set forth in Rule 1708. Since the court has determined that the claims satisfy the requirements of Pa. R. Civ. P. 1702 and no form of equitable relief is requested, it is not necessary to consider both subdivisions (a) and (b) of Rule 1708.

1. Predominance of Common Questions of Law and Fact

The most important requirement in determining whether a class should be certified under 1702(a)(5) and 1708(a)(1) is whether common questions of law and fact predominate over any question affecting only individual members. In addition to the existence of common questions of law and fact, plaintiffs must also establish that the common issues predominate. The analysis of predominance under Rule 1708(a)(1) is closely related to that of commonality under Rule 1702(2). *Janick,* supra. 451 A.2d at 461. The court adopts and incorporates its analysis of commonality and concludes that the requirement of predominance has been satisfied.

2.   The Existence of Serious Management Difficulties

Under Pa. R. Civ. P. 1708(2), a court must also consider the size of the class and the difficulties likely to be encountered in the management of the action as a class action. While a court must consider the potential difficulties in managing the class action, any such difficulties generally are not accorded much weight. Problems of administration alone ordinarily should not justify the denial of an otherwise appropriate class action for to do so would contradict the policies underlying this device. *Yaffe v. Powers,* 454 F.2d

1362 (1st Cir.1972). Rather, the court should rely on the ingenuity and aid of counsel and upon its plenary authority to control the action to solve whatever management problems the litigation may bring. *Id* (citing *Buchanan v. Brentwood Federal Sav. and Loan Ass'n,* 457 Pa. 135, 320 A.2d 117, 131 (Pa.1974)). The Court sees no serious management difficulties in the trial of this case.

Whatever management problems remain, this court will rely upon the ingenuity and aid of counsel and upon the court's plenary authority to control the action. *Janicik,* 305 Pa.Super. at 142, 451 A.2d 462.

3.   Potential for Inconsistent Adjudications

Pennsylvania Rule 1708(a)(3) also requires a court to evaluate whether the prosecution of separate actions by or against individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class. In considering the separate effect of actions, the precedential effect of a decision is to be considered as well as the parties' circumstances and respective ability to pursue separate actions.

While there is no significant risk of inconsistent adjudications herein because of the straightforward nature

of the issues and facts involved, as a single certified class one case will determine liability and one verdict will establish all obligations. Any possibility for inconsistent verdicts is eliminated by certification.

4. Extent and Nature of any Preexisting Litigation and the Appropriateness of this Forum

**\*10** Under Pa. R. Civ. P. 1708(a)(4) and (a)(5), a court should consider the extent and nature of any litigation already commenced by or against members of the class involving any of the same issues. The Court is advised that numerous claims of the type presented herein by former class members have already been amIcably resolved. The Court is aware of no litigation which would conflict with this case. This court finds that this forum is appropriate to litigate the class claims. This Court has a demonstrated record of excellence in managing Complex Litigation and Class Action Litigation.

5. The Separate Claims of the Individual Plaintiffs are Insufficient in Amount to Support Separate Claims or their Likely Recovery.

Rule 1708 also requires the court to consider the amount of damages sought by the individual plaintiffs in determining the fairness and efficiency of a class action. Thus, a court must analyze whether in view of the complexities of the issues or the expenses of litigation the separate claims of individual class members are insufficient in amount to support separate actions. Pa. R. Civ. P. 1706(a)(6). Alternatively, the rules ask the court to analyze whether it is likely that the amounts which may be recovered by individual class members will be so small in relation to the expense and effort of administering the action as not to justify a class a action. Pa. R. Civ. P. 1708(a)(7). This criteria is rarely used to disqualify an otherwise valid class action claim. See *Kelly v. County of Allegheny,* 519 Pa. 213, 215, 546 A.2d 608, 609 (Pa.1988)(Trial court erred in refusing to certify a class on the grounds that the class members' average claim was too small in comparison to the expenses incurred.). However, in *Klusman v. Bucks County Court of Common Pleas,* 128 Pa. Cmwith. 616, 128 Pa.Cmwlth. 616, 564 A.2d 526 (1989) the Court said: "Where the issue of damages does not lend itself to a mechanical calculation, but requires separate minI-trials of a large number of individual claims, courts have found that the staggering problem of logistics make the damage aspect of the case predominate and renders the class unmanageable as a class action." *State of Alabama v. Blue Bird Body Co., Inc.,* 573 F.2d 309 (5 th Cir.1978).

While the amounts of recovery may vary widely by individual class members, none are likely to be so small as to dissuade class treatment. Plaintiffs have prima facie demonstrated that damages can be calculated and tried on a class basis. The plaintiffs' herein have satisfied the criteria for class under Pa. R. Civ. P. 1702(a) (6) and (7).

CONCLUSIONS OF LAW
1. The class is sufficiently numerous that joinder of all its members would be impracticable.
2. There are questions of law and fact common to the Class.
3. Plaintiffs will fairly and adequately assert and protect the interests of the Class under the criteria set forth in Pa. R. Civ. P. 1709.
4. A class action provides a fair and efficient method for adjudication of the criteria set forth in Pa. R. Civ. P. 1708.

CONCLUSION
*11 For these reasons, this court grants Plaintiffs' Motion for Class Certification as follows:

1. A Class is hereby certified and defined as follows: "All Third-Party Payors, throughout Pennsylvania and the United States (excluding all governmental entities, Defendants and Defendants' respective subsidiaries and affiliates) who have purchased Baycol, or reimbursed their beneficiarles/Insureds for their purchases of Baycol, that is unusable and/or have incurred additional expenses associated with Baycol's withdrawal."

2. Philadelphia Firefighters Local 22 Health Fund, AFL-CIO District Council 47, and the National Conference of Fireman and Oilers Local 1201 Fund are designated as class representatives.

3. Plaintiffs counsel are appointed as counsel for the Class.

4. The parties shall submit proposals for a notification procedure and proposed forms of notice for class members within thirty days from the date of this Order.

A contemporaneous order consistent with this Opinion is filed.

ORDER AND MEMORANDUM
AND NOW, this 4th of April, 2005, upon consideration of Plaintiffs' Motion for Class Certification, all responses in opposition, the respective memoranda, all matters of record, and in accordance with the contemporaneous Memorandum Opinion, it hereby is ORDERED and DECREED as follows:

1. Plaintiffs Motion for Class

Certification is GRANTED,

2. A Class is hereby certified and defined as follows: "All Third-Party Payors, throughout Pennsylvania and the United States (excluding all governmental entities, Defendants and Defendants' respective subsidiaries and affilietes) who have purchased Baycol, or reimbursed their beneficiaries/insureds for their purchases of Baycol, that is unusable and/or have incurred additional expenses associated with Baycol's withdrawal."

3. Philadelphia Firefighters Local 22 Health Fund, AFL-CIO District Council 47, and the National Conference of Fireman and Oilers Local 1201 Fund are the class representatives.

4. Plaintiffs counsel is appointed as counsel for the Class.

5. The parties shall submit proposals for a notification procedure and proposed forms of notice for class members within thirty days from the date of this Order. Discovery for trial, if needed, shall commence. All discovery shall be completed not later than August 1, 2005.

Not Reported in A.2d, 2005 WL 852135 (Pa.Com.Pl.)

END OF DOCUMENT