UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Vioxx<br><br>PRODUCTS LIABILITY LITIGATION<br><br>*This document relates to*<br><br>*Valerie A. Silva v. Merck Sharp & Dohme Corp.*, No. 2:05-cv-01768-EEF-DEK | **********  | MDL Case No. 1657<br><br>SECTION L<br><br>JUDGE FALLON<br><br>MAGISTRATE JUDGE KNOWLES |
| ************************************************************************ | | |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT
MERCK SHARP & DOHME CORP.'S MOTION FOR SUMMARY JUDGMENT**

There can be no serious dispute that Plaintiff Valerie Silva enrolled her claim in the Vioxx Resolution Program as a myocardial infarction ("MI") claim, and in no way alleged a pulmonary embolism ("PE"). Plaintiff's Claim Form, submitted by her counsel, indicated she was seeking compensation for an MI. *See* Defendant Merck, Sharp & Dohme Corp.'s Motion for Summary Judgment and Incorporated Memorandum of Law ("Merck's MSJ Motion"), Ex. C. Likewise, there can be no dispute that, upon being advised by the Claims Administrator that her claim did not pass the Program's "gates" for an eligible injury, Ms. Silva personally signed a Future Evidence Stipulation ("FES"/ the "Stipulation") indicating that the claim she had made in the Program was for an MI and that, if she sought to pursue a claim outside the Program, it would be for an MI. *See* Merck's MSJ Motion, Ex. A (FES) & Ex. F (Jelden Dep.).

Now, Plaintiff offers a "throw everything at the wall and see if something sticks" approach to contending that she should not be bound by her stipulation, and should be permitted to seek damages for an alleged pulmonary embolism instead. None of those arguments has merit. Because Plaintiff is bound by her FES, and there is no evidence to support Plaintiff's claim that she suffered an MI, summary judgment should be granted for Merck.

**ARGUMENT**

**I.    Ineligible Claims Were Never Required To Be Enrolled in the Vioxx Resolution Program.**

- Plaintiff's counsel contends that Ms. Silva would never have had to sign a FES if she had not been entrapped in an "ethical dilemma" of counsel that led to her enrollment in the Vioxx Resolution Program. Specifically, Plaintiff's Counsel argues:

    > In order to enter any client into the Resolution Program, the enrolling attorney had to enter 100% of her clients into the program, or withdraw from representing those clients (MSA §1.2.8). As a result, attorneys who represented more than one client, or clients with different types of injuries (i.e., one client suffered an MI and another client suffered a PE), were put

>   in an ethical dilemma that pitted the interest of one client against the other—put all of your clients into the settlement program, knowing that your clients not alleging a heart attack, stroke, or sudden cardiac death would not qualify for resolution and face dismissal; or withdraw from representing those clients that did not suffer a heart attack, stroke, or sudden cardiac death; or put none of your clients in the Resolution Program.

Pl. Opp'n 2.  The suggestion follows (without support) that Ms. Silva's claim was enrolled even though it was ineligible because her then-counsel wished to enroll other eligible claims and was stuck in this ethical dilemma.  *Id*. at 2–3.

- The problem with this excuse is—everything.  It is utterly, completely, and 100 percent false.  Not one word in the Master Settlement Agreement ("MSA"/ the "Agreement") for the Vioxx Resolution Program required, much less encouraged—directly or indirectly, explicitly or implicitly—the enrollment of ineligible claims.  The MSA plainly and repeatedly indicated that only eligible claims—clearly defined as myocardial infarctions ("MI") and ischemic strokes ("IS")—could participate in the Program.  It is just plain wrong that a lawyer with one or more clients who had an MI or IS and one or more clients alleging other injuries faced an ethical dilemma encouraging her to enroll all of the claimants, regardless of the nature of the injury.  The MSA specifically prohibited that situation. There was no ethical dilemma.  *See, e.g*., Merck's MSJ Motion, Ex. B (MSA) at § 2.2.1.  Thus, the fact that this claim was enrolled in the Resolution Program only strengthens the fact that it was regarded as an MI claim at that time, not a PE claim.

**II.    Plaintiff's Complaint Does Not Preclude Enforcement of the Stipulation.**

- Plaintiff next contends that Merck's motion should be denied because (i) her Complaint controls her claim, (ii) her complaint does not allege an MI or limit her claim to an MI, and (iii) the FES, as an evidentiary stipulation, should not be construed "as a dismissal of anything" or "tantamount to an agreed dismissal."  Pl. Opp'n 5–6.
- Plaintiff's argument is nothing but a straw man.  Merck is not arguing that the FES should be construed as a dismissal, as a matter of law.  Merck agrees that, as a stipulation, applicability of the FES must be assessed with regard to the facts and circumstances of each case.  In this instance, the stipulation addresses what *claims* that may be pursued, and what *evidence* may be offered, like any other stipulation between parties on the evidence that may be elicited.  It is for that reason that Merck has moved here for summary judgment, based on the application of the stipulation as to the facts of Ms. Silva's case, not dismissal of the Complaint.  There is no applicable doctrine or rule that precludes such a stipulation from being entered into after the filing of a Complaint to govern the assertion of claims or the admission of evidence.  *See, e.g*., *Aldrup v. Caldera*, 274 F.3d 282, 287–88 & n.25 (5th Cir. 2001) (acknowledging and enforcing parties' pretrial stipulation to limit the claims in the case); *United States v. McKinney*, 758 F.2d 1036, 1046–47 (5th Cir. 1985) (upholding parties' pretrial agreement to forgo the presentation of certain otherwise admissible evidence).  Here, the plaintiff stipulated that she would only pursue a MI claim but, now, contrary to that stipulation, she is attempting to pursue a completely different injury.  Plaintiff simply cannot unilaterally disregard the stipulation and seek damages for an injury that she agreed not to pursue.  In short, Merck is not seeking dismissal of the complaint or arguing that the stipulation leads to the automatic dismissal of the case.  Instead, Merck's argument is that Plaintiff stipulated that

she would pursue only a claim for an MI injury, that Plaintiff offers no evidence that she suffered an MI, and that, for that reason, summary judgment should be granted in favor of Merck. Nothing in Plaintiff's response contradicts this basic point.

### III. The Stipulation's Plain Language Precludes Plaintiff's Pulmonary Embolism Claim.

- Plaintiff also claims that the FES cannot be enforced as to Ms. Silva because it is subject to multiple constructions. Pl. Opp'n 6–10. Plaintiff premises this argument on a tortured comparison of Paragraphs 4 and 6 of the FES.
- Paragraph 4 of the FES provides:

I further understand and specifically acknowledge and stipulate that if I should decide to pursue the claim outside of the Program, I may not make any allegations or introduce any evidence regarding: (a) Vioxx usage, including but not limited to the dose, duration, consistency of Vioxx usage, and/or alleged proximity of use of Vioxx to the date of alleged injury; (b) medical history; and/or (c) alleged injury, other than as were made and included in the Program through the Claims Package associated with my claim.

See Merck's MSJ Motion, Ex. A. Paragraph 6 of the FES reads:

> I stipulate that I will not attempt to introduce in any court of law or tribunal any evidence contrary to, or in addition to, the allegations, facts or records that were presented to the Program's Claims Administrator, as set forth in or appended to my Claims Package, or allege an injury connected with Product <u>other than the injury I claimed through the Program which is/ are reflected in Section A of this Stipulation.</u>

See Merck's MSJ Motion, Ex. A.

- As to Paragraph 6, Plaintiff cannot and does not dispute that there is only one alleged injury referenced in Section A of the FES for Ms. Silva—an MI. *Id*. Instead, Plaintiff makes the far-fetched argument that Paragraph 6 is ambiguous, and that is unclear whether the language in Paragraph 6 should be read to limit Plaintiff to "only those injuries in Section A" or whether it is "simply an example of injuries claimed through the Program." Pl. Opp'n 4. There is no reasonable interpretation of Section A, however, as calling for "an example" of the Plaintiff's alleged injuries. "Mere assertion by one that contract language means something to him, where it is otherwise clear, unequivocal and understandable when read in connection with the whole contract, is not in and of itself enough to raise a triable issue of fact." *Unisys Corp. v. Hercules Inc.*, 638 N.Y.S. 2d 461, 463 (N.Y. App. Div. 1996) (citing *Federal Deposit Ins. Corp. v. Herald Sq. Fabrics Corp.*, 439 N.Y.S.2d 944, 952 (N.Y. App. Div. 1996)).

- Plaintiff also argues that Paragraph 6 is more restrictive than, and not consistent with Paragraph 4 of the FES. Plaintiff argues that Paragraph 4 limits her to her alleged injury "included in the Program through the Claims Package associated with my claim." Plaintiff contends that this language allows her pulmonary embolism claim because (i) her Claim Package included her medical records, and (ii) her medical records include proof of a pulmonary embolism. Pl. Opp'n 7.
- Paragraph 4 is not at all at odds with Paragraph 6, however, and both preclude Ms. Silva's pulmonary embolism claim. Both paragraphs address (i) what claim a plaintiff may assert, and (ii) what evidence may be submitted in support of that claim. The parties are not in dispute here about whether the medical records from Ms. Silva's Claims Package

- can be introduced in evidence at a trial—they can. The issue is what injury Plaintiff may attempt to prove with her evidence. In fact, Paragraph 4 clearly states, "I will not make any allegations . . . regarding . . . alleged injury, other than as were made and included in the Program through the Claims Package associated with my claim." The alleged injury in Ms. Silva's Claims Package was plainly stated on the very first page of that Claims Package. Her Claims Form, just like Section A of her FES form, specified only "MI" as her alleged injury. *See* Merck's MSJ Motion, Ex. C.
- Rather than creating ambiguity, Paragraph 6 of the FES reinforced the fact that a plaintiff could pursue only the injury that he, himself, identified as the injury throughout the claims process. By putting that information on the face of the FES document that Ms. Silva signed, avoiding any need for cross referencing to another document, Paragraph 6 *avoided* any ambiguity and inconsistency and served as confirmation that Plaintiff was aware of the injury alleged in the Claims Package on the Claims Form submitted by counsel.

### IV. The Stipulation Is Soundly Premised in Fact and Is not "Manifestly Unjust" to Enforce.

- Plaintiff next argues that the FES is not enforceable because it (i) "stipulates to facts that do not exist," (ii) the "evidence contrary to the stipulations is substantial," and (iii) enforcement of the stipulation would, therefore, be "manifestly unjust." Pl. Opp'n 10–13. But the facts pertinent to the enforcement of the stipulation are that, throughout the time Ms. Silva's claim travelled through the Vioxx Resolution Program, she *alleged* that she had suffered an MI. *She* is the one who made the claim she suffered an MI and *she* is the one who signed the form attesting that the injury she alleged was the one for which she was seeking compensation. Plaintiff has already been afforded two bites at the apple. She first sought compensation through the Resolution Program for an MI. Significant resources in time and money were devoted to the claim in evaluating it, not only by the Claims Administrator, at Merck's expense, but also by counsel for Merck and the PSC in reviewing the claim a second time when it failed to pass the gate established to verify the injury. Then, after failing the gate, Plaintiff was given a second bite at the apple, this time to pursue her claim for the injury she alleged outside of the Resolution Program. After considerable time and expense was spent by the Claims Administrator, Merck and the PSC in evaluating her claim, she simply should not be allowed to change horses in mid-stream and pursue a completely different claim.
- As this Court is aware, the Resolution Program was designed in part to allow plaintiffs to elect to pursue the injury for which they sought compensation and, once the election was made, not to continue taking bites at the apple. Given that Plaintiff now readily admits she never had an MI, despite having so claimed in the Resolution Program, there is certainly no manifest injustice in enforcing the FES against Ms. Silva. Indeed, it would be manifestly unjust to allow Ms. Silva to disavow the representations she made and the agreement that she struck.

### V. The Doctrine of Laches Has No Applicability to Enforcement of the Stipulation.

- Finally, Plaintiff contends that she should not be bound by her Stipulation under the doctrine of laches. Plaintiff premises this argument on the fact that she exited the Settlement Program by executing her FES in July 2009 and Merck's motion for summary judgment was filed in October 2013.
- First, the doctrine of laches simply has no applicability. Laches is "an *inexcusable* delay

- that results in prejudice *to the defendant*." *See, e.g.*, *Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 205 (5th Cir. 1998) (emphasis added). It is an equitable *affirmative defense* to claims *by* the plaintiff. *Capstar Radio Operating Co. v. Lawrence*, 283 P.3d 728, 741 (Idaho 2012) (evaluating "defense of laches"); *Thomas v. Arkoosh Produce, Inc.*, 48 P.3d 1241, 1248 (Idaho 2002) ("laches is an affirmative defense"). The doctrine of laches, therefore, is not available to Plaintiff in support of *her own* claims.

- Even if laches were arguable, Ms. Silva can hardly claim that Merck inexcusably delayed seeking summary judgment in this case. As this Court is well aware, this MDL has involved tens of thousands of claims alleging Vioxx-related injuries. Until relatively recently, this Court has focused almost entirely on MI and IS injuries, which constituted the vast majority of claims in this proceeding. Accordingly, so has Merck. Indeed, PTO 58, issued on May 15, 2012, did not address case-specific discovery in VTE cases at all. The only deadlines concerned general causation issues. Merck was hardly unreasonable in focusing on non-VTE cases first. Merck's motion for summary judgment is timely under the applicable scheduling order, and that is enough. Plaintiff does not cite a single case in which a court held that a motion for summary judgment filed before the motions deadline was untimely.

**CONCLUSION**

For the foregoing reasons, summary judgment should be entered for Merck pursuant to Rule 56 of the Federal Rules of Civil Procedure.

Dated: January 3, 2014                                    Respectfully submitted,

By: */s/ Dorothy H. Wimberly*
    Phillip A. Wittmann, 13625
    Dorothy H. Wimberly, 18509
    STONE PIGMAN WALTHER
    WITTMANN L.L.C.
    546 Carondelet Street
    New Orleans, Louisiana 70130
    Phone: 504-581-3200
    Fax:    504-581-3361

Defendants' Liaison Counsel

  —and—

         Douglas R. Marvin
    Eva Petko Esber
    M. Elaine Horn
    WILLIAMS & CONNOLLY LLP
    725 Twelfth Street, N.W.
    Washington, D.C. 20005
    Phone: 202-434-5000
    Fax:    202-434-5029

*Attorneys for Merck Sharp & Dohme Corp.*

CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Reply Memorandum has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail, upon Liaison Counsel Ann Oldfather by e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 3rd day of January, 2014.

/s/ *Dorothy H. Wimberly*
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361
dwimberly@stonepigman.com

Defendants' Liaison Counsel