## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

IN RE: VIOXX
PRODUCTS LIABILITY LITIGATION

MDL NO. 1657

SECTION L

JUDGE FALLON
MAG. JUDGE KNOWLES

THIS DOCUMENT RELATES TO:           *TPP Cases*

## ORDER & REASONS

This Court has before it the task of allocating a capped common benefit fee fund among

counsel who performed common benefit work which produced a successful result in the third

party payor ("TPP") claims asserted in the *Vioxx* litigation. To put this matter in perspective, a

brief review of this litigation is appropriate.

## I.      BACKGROUND

This multidistrict, products liability litigation involves the prescription drug Vioxx,

known generically, as Rofecoxib. Merck, a New Jersey corporation, researched, designed,

manufactured, marketed, and distributed Vioxx to relieve pain and inflammation resulting from

osteoarthritis, rheumatoid arthritis, menstrual pain, and migraine headaches. On May 20, 1999,

the Food Drug Administration approved Vioxx for sale in the United States. Vioxx remained

publicly available until September 20, 2004 when Merck withdrew it from the market after data

from a clinical trial known as APPROVe indicated that the use of Vioxx increased the risk of

cardiovascular thrombotic events such as myocardial infarction (heart attack) and ischemic

stroke.

Thereafter, thousands of individual lawsuits and numerous class actions were filed

against Merck in state and federal courts throughout the country alleging various products

liability, tort, fraud, and warranty claims. In addition to those claims, at least 48 private health benefit providers (that is, the TPPs) filed claims seeking to recover the sums they paid to reimburse thousands of their members for the damages the members sustained from their purchase of Vioxx. It is estimated that 105 million prescriptions for Vioxx were written in the United States between May 20, 1999, and September 30, 2004. Based on this estimate, it is thought that approximately 20 million patients have taken Vioxx in the United States.

On February 16, 2005, the Judicial Panel on Multidistrict Litigation ("JPML") conferred multidistrict litigation ("MDL") status on *Vioxx*-related lawsuits filed in various federal courts throughout the country and transferred all such cases to this Court to coordinate discovery and to consolidate pretrial matters pursuant to 28 U.S.C. § 1407. *See In re Vioxx Prods. Liab. Litig.*, 360 F. Supp. 2d 1352 (J.P.M.L. 2005). Because of the large number of cases, the initial focus of the litigation was placed on the individual personal injury claims. Committees were established, scheduling orders were crafted, cutoff dates were fixed and a trial plan was formulated.

After considerable discovery, consisting of over 100 depositions, hundreds of discovery motions, the production of over nine million documents, and six bellwether trials, over 99% of the individual cases opted into a non-class settlement totaling some $4,353,152,064.00. The funds were distributed to some 32,886 claimants and a common benefit fund was set at 6.5% of the settlement amount and distributed to over 100 attorneys who performed common benefit work. The 6.5% common benefit fee came out of the fee of primary counsel (the counsel who had a retainer with the client) and was not an additional charge to the litigant.

The Court then focused on the TPP claims, the subject matter of this order and reasons. While the Court undertook substantive proceedings over the years regarding the TPP claims

originally filed in various federal courts and later transferred to this Court, two other venues, New Jersey and California, also dealt substantively with the TPP cases filed in their state courts.

Counsel filed the first TPP action in New Jersey state court in 2002. Other TPP actions were later filed and centralized before the Judge Carol E. Higbee. *International Union of Operating Engineers Local No. 68 Welfare Fund v. Merck & Co.*, became the lead TPP case in New Jersey state court. No. ATL-L-3015-03, 2005 WL 2205341 (N.J. Super. Ct. Law Div. July 29, 2005). This case was filed before Congress had enacted the Class Action Fairness Act ("CAFA") so this class was not removed to a federal court and transferred to this Court by the MDL Court. Counsel aggressively litigated this case for several years, defeating a motion to dismiss, winning a motion for class-certification, engaging in extensive class discovery, retaining experts and briefing, and arguing multiple appeals. Merck appealed the class certification order all the way to the New Jersey Supreme Court, which eventually reversed and vacated the class certification. The TPP cases in New Jersey state court then continued on a non-class basis for about two more years.

In 2004, about one year before this MDL was created, counsel filed a claim in a California state court on behalf of a proposed class of TPPs and consumers seeking reimbursement of overpayments made for Vioxx. Multiple class action cases were consolidated as part of a California Judicial Council Coordinated Proceeding. This case also predated CAFA and remained in California state court. Counsel in California aggressively litigated on behalf of the putative class members for several years. The California state court refused to certify a class, and the cases proceeded in the California state court as single independent cases.

While the state TPP cases were proceeding in those forums, the TPP cases filed in the various federal courts were transferred to this Court as part of the MDL. The Court met with

counsel for the interested parties and issued Pretrial Order 38, which established deadlines for the production of documents, the taking of depositions, the filing of motions, and the selection of cases for bellwether trials. In early 2009, after a period of significant discovery and motion practice, the parties entered into settlement discussions. Over the next nine months, Chris Seeger, of Seeger Weiss, and Thomas Sobol, of Hagens Berman Sobol & Shapiro, negotiated a non-class settlement between the litigating TPP claims (pending in both state and federal courts) and Merck. On September 14, 2009 Merck and counsel for the private TPPs executed a settlement agreement that provided for payment by Merck of an aggregate amount of $65 million to the identified settling TPP litigants in state and federal cases and $15 million as common benefit attorneys' fees and expenses to be distributed by this Court to the appropriate counsel. *See* Common Benefit Settlement Agreement, §§ 4.1, 4.1.3-.4. Counsel spent considerable time implementing the settlement. A significant effort was made to enroll all litigating TPPs and, at Merck's request, counsel reached out to select other TPPs that Merck believed intended to pursue individual claims. The amounts reserved for the litigants have been distributed to them. It is now appropriate to distribute the common benefit attorneys' fund. In order to accomplish this task in a fair and transparent way, it is first necessary to review the information collected from the procedures that were established for recording, organizing, and evaluating the data reflecting which attorneys did common benefit work and the type or nature of this work that was done.

## II.   PROCEDURES FOR PERFORMING AND DOCUMENTING COMMON BENEFIT WORK

### A.   Pre-Settlement Procedures

At the very beginning of this MDL and before any settlement agreement was announced, or even contemplated steps were taken to create a fair and open environment for all interested attorneys to perform work for the common benefit of the Vioxx claimants and to create a

transparent factual record for the eventual applications for common benefit fees. All interested attorneys, including those in state court proceedings, were encouraged to coordinate their work with the Plaintiffs' Steering Committee ("PSC") so as to avoid duplication, minimize expense, and obtain maximum efficiency. Over 108 attorneys performed common benefit work in the personal injury portion of this litigation and applied for common benefit fees. In the TPP aspect of this case, some 33 firms or attorneys availed themselves of the opportunity to perform common benefit work and apply for common benefit fees. All of the attorneys doing common benefit work were advised to keep records of the time and expense incurred in their common benefit endeavors.

To receive and vet the records of the time spent and expenses incurred by the attorneys performing common benefit work, the Court appointed a certified public accountant ("CPA"). Those doing common benefit work and incurring common benefit expenses were ordered to report their hours and expenses contemporaneously to the Court-appointed CPA, who reviewed and reported them to the Court. Time and expense guidelines were established and posted to govern "all activities performed and expenses incurred by counsel that relate to matters common to all claimants in MDL 1657." (Rec. Doc. 245).

### B.      Post-Settlement Procedure

After a settlement or resolution of an MDL, it usually becomes necessary to determine the appropriate amount of the common benefit fund as well as the appropriate distribution of this common benefit fund. This was done with regard to the individual personal injury claims settlement aspect of this case. In that portion of the case, before a distribution of fees could be made, it was first necessary to determine the total amount of the common benefit fund to be distributed. This Court utilized a blended approach to determine the amount of the fund. Such an approach seeks to determine the amount of the fund by reviewing similar cases, then modifying

the result upwards or downwards by considering the *Johnson* factors, and finally, testing the result through a lodestar crosscheck. *See In re Vioxx Products Liab. Litig.*, 760 F. Supp 2d 640 (E.D. La. 2011). With regard to this TPP settlement, however, it is not necessary to determine the appropriate amount of the common benefit fund because the parties have already agreed to the amount, namely $15 million, to cover both common benefit fees and common benefit costs.[1] Therefore, it is only necessary to determine the proper distribution of this common benefit fee and cost fund among the attorneys who performed common benefit work. The Court recognizes at the outset that this is a fixed amount and must be apportioned among appropriate counsel. It may not, and probably will not, satisfy the expectations of all, and maybe none, of those who applied for a common benefit fee. The time spent by all of the attorneys who performed common benefit work may have justified a greater total fee, but this amount was agreed upon by counsel as part of the settlement and they are limited to this amount. So the issue is who gets what portion of this fixed amount. As mentioned, the common benefit settlement agreement gave this Court the authority and duty to set and distribute the common benefit fees.[2] *See* Common Benefit Settlement Agreement, §§ 4.1.1, 4.1.3-.4, 4.1.6.

---

[1] The Common Benefit Settlement Agreement provides:

> 1.6 "Common Benefit Fees and Expenses Payment" shall mean the amount of FIFTEEN MILLION DOLLARS ($15,000,000) that shall be paid by Merck for the resolution of common benefit fees and expenses that are the subject of this agreement.

Common Benefit Settlement Agreement, § 1.5.

[2] It also provides:

> 4.1.1 This is a private agreement. At the request of the Parties, The Honorable Eldon E. Fallon has agreed to preside over the award and disbursement of the Common Benefit Fees and Expenses as specified by this agreement.
>
> . . . .
>
> 4.13 Common Benefit Attorneys and their respective third party provider/payer clients agree that authority over the process for administering the award and disbursement of common benefit fees and common benefit expenses contemplated by the Agreement resides with The Honorable Eldon E. Fallon to exercise that authority, as such authority is specified in this Agreement.

To create a process for determining the appropriate distribution of this fee the Court entered Pretial Order 57. In accordance with that order, the Court appointed a TPP Fee Allocation Committee. The purpose of this Committee was to give the Court the "insider's" view. That is to say, the view of those who were closely involved in doing, planning, or coordinating the work which produced the settlement. Membership of this Committee was comprised of both those on the PSC who did work in this portion of the case and those not on the PSC but who also did TPP work in either state or federal courts. This Committee was charged with the task of receiving and collecting applications with supporting documentation and material from all counsel seeking common benefit fees earned and costs incurred in protecting and advancing the common interest of the private TPPs. The Committee was also instructed to make recommendations regarding the appropriate distribution of the common benefit fee and cost fund among the applicants and advise each applicant of its recommendation.

Applications for TTP common benefit fees and costs were due by September 16, 2011. The Committee received 26 timely initial submissions on behalf of 30 firms. On October 3, the Committee received a late application from Kline Specter PC. The Committee received additional material in response to its request. The additional material was submitted in a supplemental form which asked applicants to (1) exclude any client-specific work from their claimed TPP common benefit activities; (2) categorize and describe their common benefit

---

4.1.4 Any decision of The Honorable Eldon E. Fallon with regard to the award and disbursement of Common Benefit Fees and Expenses shall be final and Non-Appealable and binding on the Parties and (without limitation of the forgoing) the Parties shall take all actions required in order to implement such decision.

. . . .

4.1.6 The Honorable Eldon E. Fallon may create administrative procedures, supplementary to (and not inconsistent with) those specified herein, that provide further specific details about how Common Benefit Fees and Expenses are determined and paid; provided, however, that such procedures comply with the terms of this agreement.

Common Benefit Settlement Agreement, §§ 4.1.1, 4.1.3-.4, 4.1.6.

activities; (3) identify their unreimbursed costs, and (4) indicate which portion of the claimed TPP common benefit, if any, was previously submitted in conjunction with the Court's earlier common benefit payment for the personal injury claims. After consultation with the applicants and discussion among themselves, the Committee issued its report setting forth its recommendations and stating its reasons for the recommendations. (Rec. Doc. 63928). The Court posted the Allocation Committee's recommendations on its *Vioxx* website and invited any comments and or objections. Two objections were received. They were from the Central States Law Firms (Rec. Doc. 64046) and the Law Offices of Eric H. Weinberg (Rec. Doc. 64044).

The Court then appointed attorney Patrick Juneau as a special master to evaluate the recommended distribution and objections. This was done to give the Court an "outsider's" or neutral view. That is to say, a view from someone who was not a party or attorney involved in the work for which common benefit fees were requested.

After his appointment, Special Master Juneau issued a scheduling protocol for TPP claimants for common benefit fees. This protocol requested that memoranda be presented by the Fee Allocation Committee and the objectors by May 15, 2013, and also set a hearing for May 23, 2013. (Rec. Doc. 64361). By agreement of the parties, the hearing was cancelled with the understanding that the matter would be submitted on the papers. After reviewing the documents presented, however, the Special Master determined that he would need to question witnesses and thus issued a revised scheduling protocol for TPP common benefit fees, and he set an evidentiary hearing for June 20. 2013.(Rec. Doc. 64439). At the hearing, the Special Master heard testimony from Eric Weinberg, Robert Dassow, David Buchanan, and Chris Seeger. Thereafter, the Special Master issued his report and recommendations. (Rec. Doc. 64682).

With regard to the objection of Mr. Weinberg, the Special Master found as a matter of fact that a significant portion of Mr. Weinberg's time was expended in working with experts selected by him to participate, at his election, in litigation that was pending in Australia and in preparation of an article on Alzheimer's disease, and work related to bone density. Mr. Seeger, who was coordinating the TPP litigation, testified that none of the work by Mr. Weinberg was done at the request of liaison counsel or counsel directing this part of the *Vioxx* litigation. Moreover, Mr. Seeger testified that none of Mr. Weinberg's work product was of any benefit or use in the prosecution and ultimate resolution of the TPP litigation. The Special Master reports that Mr. Weinberg's timesheets were hard to decipher because they did not reflect any detail regarding the time devoted to any particular task. The Special Master indicated that he, nevertheless, totaled all of Mr. Weinberg's timesheets, including the grouped time entries, and concluded that his total time for work performed on the TPP cases was 166 hours. Bases on his study of the records and the testimony received, the Special Master suggested that a fair fee for Mr. Weinberg was $135,292.00.

With regard to the claim for common benefit work submitted by Hoyde Dassow & Deets, the Special Master reports that the Committee did not question the work performed or the significance of this work. The work of this firm was largely performed in New Jersey. There was some concern expressed regarding the number of firms performing work in the New Jersey litigation and whether the total of the firms should be used to evaluate the fairness of the fee for this work since there is a limited fund from which all fees must be fairly allotted. In any event, considering the amount suggested by the Committee for the work performed by the Audet firm, another firm that did work in New Jersey, the Special Master concluded that a fair fee for Hoyde Dassow & Deets would be $425,152.00.

9

With regard to the Lanier Law Firm, the Special Master reported that the timesheets reflected that Richard Meadows from that firm performed 238.6 hours of work and Evan Janush performed 154.6. Since these hours were performed along with the other firms performing work in the New Jersey litigation and there is a limited fund available for this work, the Special Master concluded that a fair fee for the Lanier Law Firm would be $75,000.00. The Special Master 's report was posted on the Court's website and a date was set for any objections or comments. The same counsel who objected to the Committee's recommendations objected to the recommendations of the Special Master. (Rec. Docs. 64721, 64722).

As with the fee allocation process utilized in the personal injury phase of this case, this lengthy fee allocation procedure has been transparent and has provided an opportunity for common benefit fee applicants to review the Committee's recommendations and the Special Master 's recommendations as they pertain to all applicants. It also afforded interested parties an opportunity to object to or comment on those recommendations. In some instances there has been dialogue between the Committee, or the Special Master, and the applicants which has resolved objections and produced consensus. Some might criticize any negotiation between the Committee or the Special Master and the applicants as "horse trading" or "side deals." This Court recognizes that this ongoing development is an expected part of the allocation process. These mega cases, which often involve thousands of claimants and require significant expenditures of time and resources, usually attract very experienced and well-qualified counsel, many of whom have previously handled similar cases. When such a high-powered group of plaintiff's attorneys assemble to work together to achieve a common objective, the egos of some cause them to over evaluate the significance of their work effort in producing the end result, and it takes some "discussion" with more experienced counsel to encourage them to be more realistic. The

effectiveness of this process in this phase of the case is supported by the fact that only 2 out of 33 common fee applicants continue to maintain their objection.

The Court now has before it the recommendations of the Committee and the Special Master as well as the objectors' positions and the briefs supporting these positions and, in some instances, the Committee's response to the objectors' positions. The Court also has reports from the Court-appointed CPA compiling the time and expenses of the common benefit applicants. With regard to the time logged it is important to recognize that in a case of this type, not all kinds of work should be treated equally. Hours spent taking depositions, participating in hearings, preparing for trials, actively participating in the development of the appropriate litigation strategies and tactics, drafting briefs, actively participating in Court conferences, arguing motions, negotiating with opposing counsel to reach a settlement, implementing the settlement , dealing with the various liens , and actively managing and organizing the administrative aspects of the case are some of the more significant types of work that a case of this sort requires and thus the types that deserve the most recognition. This, of course, is not the only type of work that such a case requires. Documents must be reviewed, categorized, and analyzed; e-mails must be read and responded to; claimants must be kept advised; meetings must be attended and in general the litigation must be monitored. This work, while necessary and often time- consuming, does not deserve equal treatment when allotting fees. In short, there is a hierarchy of value that is based upon whether a type of work tends to have a greater impact on the litigation and generates more common benefit. This is not unique concept. It is a common practice in the legal profession to bill certain work or to bill work done by a more experienced attorney at a higher or different rate. Moreover, mechanically calculating hours and allocating fees solely on that basis would incentivize padded timesheets and diminish the work that truly moved the litigation toward a

successful conclusion. A lodestar calculation is helpful in establishing the total amount of a common benefit fund, as it was in the personal injury phase of the case. But here, the fund has already been established by agreement of the parties. The task at hand is to determine an appropriate method for equitably distributing this fund. In carrying out this task, the loadstar concept is not as useful. It can be helpful in comparing the relative contribution of attorneys doing the same kind of work, and it can also be an important check to ensure that the spread between compensation for attorneys doing more and less significant types of work is not grossly unfair, but it is not the be all end all of allocating fees in an MDL case. When the focus is on the allocation of the common benefit fund and not on the creation of the fund, the loadstar analysis is incomplete because it is necessary to drill down on the hours and prioritize them in a manner consistent with the facts of each MDL.

Admittedly, this analysis contains an element of subjectivity. It is this Court's view that some subjectivity is unavoidable in allotting common benefit fees. The nature of the work, the skill and experience of the party doing the work and the result achieved all factor into the appropriate allocation. How these factors are weighed injects an unavoidable amount of subjectivity into the analysis. In assuring the validity of the analysis, the best that can be done is to base the subjectivity quotient on sufficient facts, data and experience and to invite input from those affected. This Court has attempted to do this through a tedious and long drawn out process.

After reviewing the documents compiled in the fee allocation process described above, consulting with the Judge Higbee, the very experienced and highly qualified New Jersey state court judge who handled the *Vioxx* litigation in New Jersey, drawing on this Court's experience in this case accumulated during the course of over eight years, and having considered the applicable law, the Court makes the following allocation of the common benefit fees.

### C.      Allocation of Fees

The Court will address each common benefit applicant in alphabetical order, setting forth the amount of the allocation and the factual basis underlying the Court's conclusion.

### 1.      Audet & Partners

Audet & Partners reported $49,264.00 in unreimbursed costs. They did not submit any time accounting. They were awarded $1.45 million for common benefit work in connection with the personal injury phase of the *Vioxx* litigation. They received some $5,669.31 in fees from their personal clients in the TPP phase of the case. This fee was apparently shared with five other firms for their work in connection with these claims. Their work in connection with the TPP claims was performed primarily in the New Jersey state court litigation, where they contributed to the discovery and motion practice and assisted with the trial work in that litigation. A fair award for their common benefit work is $240,000.00.

### 2.      Barrios Kingsdorf & Casteix

Barrios Kingsdorf & Casteix did not receive any fees from private TPP claimants. Dawn Barrios of this firm was appointed to the TPP bellwether trial committee and assisted in the selection of bellwether trials for the MDL litigation. She created spreadsheets tracking the TPP cases in the MDL litigation and reported in open court status conferences regarding the progress of all TPP cases in state and federal court. A fair allocation for this firm for their common benefit work in this portion of the case is $20,000.00.

### 3.      Bossier & Associates

Bossier & Associates reported no costs and a total of about 26 hours spent on common benefit work. This firm did some common benefit work in the personal injury portion of this MDL litigation and received $20,000.00. They do not distinguish between the work previously

done and the common benefit work in this phase of the case. A fair allocation for their work in this portion of the case is $10,000.00.

### 4. Cafferty Faucher

Cafferty Faucher reported that they incurred $10,900.68 in unreimbursed costs and logged about 499 hours in this litigation. This firm performed legal research and analysis in connection with the preparation of the master TPP complaint, served on the purchase claims committee and economic claims subcommittee. They drafted and revised responses and objections to interrogatories and document requests. Their work was mainly supportive but was helpful to the common objective. A fair amount to compensate them for their common benefit work and costs is $180,000.00.

### 5. Charfoos & Christensen

Charfoos & Christensen reported logging about 310 hours in this portion of the litigation. The firm engaged in PSC telephone conferences, attended meetings both in and out of court, reviewed *Vioxx* litigation TPP documents, and researched Michigan drug product liability law, as well as related state and federal statutes. They drafted memoranda on Michigan state law that informed the selection of bellwether trials and benefitted all TPP cases in the MDL. A fair allocation of the common benefit fund is $75,000.00.

### 6. Cohen Placitella & Roth

Cohen Placitella & Roth reports logging about 139 hours in performing common benefit work. They also report incurring some $52,382.00 in unreimbursed costs. They received $789,766.54 in fees from their TPP clients. It is not clear whether the costs overlapped between their clients and their common benefit work. They report that they spent considerable time in developing a damage model that would have been useful if the bellwether TPP cases in the MDL

had proceeded to trial. They report active participation in preparing expert witnesses and discovery. A fair allocation for their common benefit work is $122,000.00.

### 7.     Dugan Law Firm

The Dugan Law Firm reports that they have expended $105,795.74 in unreimbursed costs. They have logged 2,995 hours on this portion of the case. This firm did not receive any common benefit fees in the personal injury portion of the *Vioxx* case and they have not received any fees from personal TPP clients. The firm reports being involved in all aspects of the private TPP cases from the filing of the first private TPP case in the MDL, *Blue Cross-Blue Shield of Louisiana*, to the implementation of the final settlement. The firm argued motions in court, prepared the TPP discovery responses, hired experts including Johns Abramson, David Kessler, Terry Leach, Neil Julie, and Jeffrey Harris, and participated in the implementation program. James Dugan was appointed vice chair of the MDL purchase claims committee, co-chair of the private TPP bellwether discovery committee, and made significant contributions to the litigation of the TPP claims in the MDL. To compensate this firm for their expenditure of cost and common benefit work a fair amount is $1,200,000.00. This amount includes the time and work done by Mr. Dugan during the period he was a member of the Murray Law Firm.

### 8.     Ewing McMillin & Willis

Ewing McMillin & Willis reports that they have logged 371 hours in performing common benefit work. They had private TPP clients in the New Jersey litigation and received $5,669.31 in fees from those clients. To compensate this firm for its common benefit work and reimburse it for its expenditure for common benefit costs, a fair amount is $100,000.00.

### 9.     Favre Law Firm

The Favre Law Firm reports that they spent about 10 hours on TPP work and incurred $366.00 in unreimbursed costs. The records indicate that the Favre Law Firm did not represent

any TPP clients. They filed a case on behalf of consumers asserting claims for economic loss in Illinois and that case was later consolidated and coordinated with the TPP and consumer loss claims in the MDL. There are no supporting documents indicating that the Favre Law Firm did any common benefit work on the TPP claims. Therefore, no fees or cost are awarded to this firm.

### 10.     Gary L. Franke & Co.

Gary L. Franke & Co. reported that Gary Franke incurred $9,522.52 in unreimbursed costs and logged about 270 hours on common benefit work. He was a member of the group of attorneys referred to as the Central States Law Firms. His work was done in the New Jersey litigation together with Hovde Dassow & Deets and the Lanier Law Firm and involved participation in the trial preparation of cases. To some extent, but to a lesser extent than some other Central State lawyers, he did supervise some of the work in the New Jersey litigation. He was involved in the discovery and trial preparation of this litigation. To compensate him for his common benefit work and to reimburse him for his common benefit costs, a fair amount is $80,000.00.

### 11.     Freese & Gross

Freese & Gross report that they have incurred $6,000.00 in unreimbursed costs and logged some 900 hours doing common benefit work. They received $75,000.00 in fees from working on their TPP personal clients. They do not segregate their common benefit time from the time spent on servicing their personal clients. They did, however, participate in the drafting of the Master Purchase Claim complaint and was a member of the purchase claims committee and did work in the discovery phase, which inured to the common benefit of the claimants in this portion of the case. To reimburse this firm for the costs and time spent in common benefit work, a fair amount of the common benefit fee is $180,000.00.

### 12.    Hagens Berman Sobol Shapiro

Hagens Beman Sobol Shapiro reports incurring $491,316.07 in unreimbursed costs and logging 7,248 hours in doing common benefit work in the TPP portion of the case. This firm did not receive any fee from private clients. This firm actively litigated TPP claims in three forums: the MDL, California, and New Jersey. In California, the firm led the litigation on behalf of proposed classes of TPPs and consumers in consolidated proceedings and appealed the trial court's denial of class certification all the way to the California Supreme Court. In the MDL this firm was a member of the purchase claims committee and was heavily involved in drafting the master complaint regarding class action cases. Mr. Sobol was co-chair of the TPP bellwether committee and served on the TPP discovery, expert, law and briefing committees. This firm also represented about 80 TPP's in negotiation regarding a mutually beneficial lien resolution program. Mr Sobol, along with Mr. Seeger, carried the laboring oar in negotiating a cross-venue settlement and common benefit agreement. This firm, particularly Mr. Sobol, contributed significantly to the MDL and state TPP litigation, and they created and implemented the private lien resolution program, which benefited several hundred TPPs. To compensate this firm for its cost and common benefit work, a fair amount is $3,000,000.00.

### 13.    Herman Herman Katz & Cotlar

Herman Herman Katz & Cotlar reported that they incurred $17,011.64 in unreimbursed costs and spent 1,320 hours performing common benefit work on this portion of the case. Russ Herman, of this firm, serves as Plaintiffs' Liaison Counsel ("PLC") in the MDL and has been involved in all aspects of the MDL proceedings including coordinating and participating in TPP discovery and trial preparation. This firm actively participated in TPP motions, conferences and hearings, and discovery matters. The firm also participated in the lien resolution program, working closely with the lien administrator and the claims administrator. They also worked on

class certification issues and scheduled exemplar cases for trial. To compensate this firm for its cost and common benefit work, a fair amount is $913,000.00.

### 14.    Hovde Dassow & Deets

Hovde Dassow & Deets reported that they have incurred $105,573.54 in unreimbursed costs and logged about 1,554 hours in performing common benefit work. They received about $5,669.00 in fees from their TPP clients. This firm performed work in the New Jersey litigation and participated in expedited discovery and trial preparation. This firm was a member of the group of attorneys referred to as the Central States Law Firms. Hovde Dassow & Deets was a leader of that group and coordinated the group's efforts. The first case filed in New Jersey was the *Local 68* case, discussed above. It became the lead case in the New Jersey litigation and a great deal of work and costs were expended during the class certification phase of the New Jersey litigation. *Local 68* was not scheduled for trial as an individual bellwether case primarily because its class representatives were indicted on corruption charges. After that occurrence, the Central States Law Firms' attorneys, and particularly Hove Dassow & Deets, moved to the forefront of the New Jersey litigation. To compensate this firm for its common benefit work and reimburse them for their common benefit costs, a fair amount is $800,000.00.

### 15.    Keefe Bartels

Keefe Bartels reported that they have incurred $15,327.00 in unreimbursed costs and logged 1,761 hours doing common benefit work. They did not receive any fees from personal TPP clients. This firm represented the plaintiffs in the *Local 68* case. They believe they were "key players" in the New Jersey consortium of attorneys who developed theories for claims against Merck and designed a litigation plan and who participated in a voluminous document review, all of which the firm feels helped the MDL litigation and all other TPP claims. To

reimburse this firm for the cost expended and the time spent in performing common benefit work, a fair amount is $420,000.00.

### 16.    Kline & Specter

Kline & Specter did not report any TPP common benefit work or indicate that they incurred any unreimbursed common benefit expense. They did do common benefit work in the personal injury aspect of this case and received $15,000,000.00 in common benefit compensation for this work. There is no justification to award additional compensation since there is no basis to support an award for common benefit work for TPP claims. Accordingly, no award will be made.

### 17.    Labaton Sucharow

Labaton Sucharow reported that they incurred $22,996.06 in unreimbursed costs and logged 1,640 hours performing common benefit work. They were a member of the purchase claims committee and the private TPP bellwether trial committee. The firm believes they were involved in the first post-recall class action seeking TPP economic damages filed in the country. They participated as part of a subgroup to discuss key issues for the upcoming oral argument on Merck's motion to dismiss, which was argued by Elizabeth Cabraser. They also did some research and prepared a memorandum concerning ascertainable loss and cognizable injury. Their work inured to the common benefit was largely supportive to those who presented the arguments. To compensate them for their common benefit work and cost expended, a fair amount is $280,000.00.

### 18.    Lanier Law Firm

Lanier Law Firm has no unreimbursed costs. They report that they have logged 393 hours in performing common benefit work on the TPP cases. This firm played a major role in the personal injury litigation and tried cases in New Jersey, Texas, and other areas. Its trial successes played a significant part in encouraging a successful settlement in the personal injury phase of

the case. Accordingly, the firm received $27,000,000.00 in compensation for their work in that portion of the case. In the TPP aspect of this case there were no trials and this firm was not as active. Nevertheless, it did do some common benefit work. Members of the firm, particularly Evan Janush and Mark Lanier, often attended telephonic and in-person meetings in New Jersey, discussed and participated in developing strategies for discovery, as well as selecting and locating expert witnesses. To compensate this firm for their common benefit work in the TPP portion, a fair fee is $100,000.00.

### 19.    Levin Fishbein Sedran & Berman

Levin Fishbein Sedran & Berman reports incurring some $20,110.00 in unreimbursed costs and logging 2,164 hours doing common benefit work. They assisted in the development and implementation of the notice program in the *Local 68* action in the New Jersey litigation. They were involved in extensive discovery against Merck in the TPP claims and participated in legal research and writing in connection with the briefs in the New Jersey Appellate Division and before the New Jersey Supreme Court. The firm was also active in the MDL aspect of the TPP claims and coordinated the actions and activities in the state and federal jurisdictions. To compensate them for their common benefit work, and reimburse them for their common benefit costs, a fair amount is $430,000.00.

### 20.    Levy Phillips & Konigsberg

Levy Phillips & Konigsberg reported no unreimbursed costs. They logged 433 hours doing common benefit work. They did some work in preparing experts for the bellwether trials and prepared for and handled follow-up work in connection with the deposition of Merck's 30(b)(6) witness, Janet Tavs. They prepared for and defended a custodian of records and contributed to reviewing documents in the Seeger Weiss depository. To compensate this firm for its common benefit work, a fair amount is $50,000.00.

### 21.     Lieff Cabraser Heimann & Bernstein

Lieff Cabraser Heimann & Bernstein reported logging 2,553 hours doing common benefit work. The firm has no unreimbursed costs. This firm, particularly Ms. Cabraser, contributed significantly in the TPP efforts in the MDL. Ms. Cabraser was chair of the purchase claims committee and co-chair of the private TPP bellwether trial committee. She convened and presided over regular meetings of the committee, during which discussions occurred concerning the master complaint, discovery, and the selection of potential bellwether plaintiffs for trials. She was primarily responsible for the brief in opposition to Merck's motion to dismiss and argued the motion to dismiss. In New Jersey, this firm assisted with class certification including briefing at the appellate level. They assisted with class notice and discovery, and they worked on medical and scientific expert issues. To compensate this firm for their common benefit work a fair amount is $1,300,000.00.

### 22.     Murray Law Firm

Murray Law Firm participation in the TPP claims was performed mostly by the work of their then-member Mr. Dugan, who served as co-lead counsel for the TPP claims in the MDL. Mr. Dugan's contributions have been previously described and his efforts and expended costs have already been accounted for. Therefore, an amount of $50,000 is appropriate for the work performed by others in the firm.

### 23.     Price Waicukauski & Riley

Price Waicukauski & Riley reported incurring $20,004.68 in unreimbursed costs and they have logged about 2,800 hours in performing common benefit work on the TPP claims. This firm reports that they participated in the MDL proceedings and were appointed to the purchase claims committee. They conducted research and extensive document review at the Seeger Weiss office. They researched the use of Racketeer Influenced and Corrupt Organizations Act ("RICO") as an

21

allegation in the litigation and provided significant research for the purchase claims committee

on consumer protection statutes. Their work was significant but was largely supportive in nature.

To compensate this firm and reimburse them for the costs expended, a fair amount is

$300,000.00.

### 24.    Sadin Law Firm

Sandin Law Firm reported expending $2,035.38 in unreimbursed costs and logged 214

hours in performing common benefit work on the TPP portion of the case. This firm indicates

that it participated in organizing the purchase claims subgroup and helped set up the TPP

structure. They attended regular conferences and worked in the depository and on discovery. To

compensate this firm and reimburse them for the cost expended, a fair amount is $80,000.00.

### 25.    Scott Yung

Scott Yung reports logging about 373 hours in performing common benefit work. He has

no unreimbursed costs. The firm represented a number of TPP and received $281,591.00 in fees

from these clients. Andrew Yung of the firm was appointed to the MDL private TPP bellwether

trial committee. The firm worked with the steering committee to investigate and make

recommendations on experts and conducted discovery and served as a resource for the TPP

steering committee. This firm worked mostly on their clients' cases but did do meaningful

common benefit work, primarily of a supportive and advisory nature. To compensate the firm for

their common benefit work, a fair amount is $80,000.00.

### 26.    Seeger Weiss

Seeger Weiss incurred $20,005.05 in unreimbursed costs. They logged 8,748 hours doing

common benefit work on this phase of the case. The firm filed the first TPP case against Merck,

representing *Local 68*. They conducted extensive class discovery, including the review of tens of

thousands of pages of documents, achieved certification of a nationwide class of TPPs, and in the

New Jersey state court, planned a class notice program and defended against Merck's motion to the New Jersey Appellate Division and ultimately the New Jersey Supreme Court. With regard to the TPP settlement, Mr. Seeger of this firm was a lead negotiator (along with Mr. Sobol) in settlement discussions with Merck, which eventually resulted in the resolution of all state and MDL TTP claims. Seeger also led negotiations concerning the creation of a common benefit fund to compensate those who performed common benefit services and incurred common benefit expense. He served as co-lead counsel in the MDL proceedings and was very active in the personal injury aspect of that litigation and received $36,000,000.00 for his work in that portion of the litigation. He continued to stay active in the TPP litigation in both the MDL and the New Jersey litigation, where he made significant common benefit contributions. To compensate this firm for its services in the TPP portion of this litigation and reimburse them for the outstanding costs, a fair amount is $3,500,000.00.

### 27.    Sheller P.C.

Sheller P.C. incurred no unreimbursed costs. The firm indicates it logged about 6,276 hours in common benefit work. This firm did common benefit work in the personal injury aspect of the *Vioxx* litigation and it is not clear from the time submissions whether any of the logged time was done in connection with that phase of the litigation. In any event, the firm filed the first TPP action in New Jersey representing, along with others, Local 68. They report having assisted the Seeger Weiss firm with the document review in the New York depository, worked on several of the bellwether cases by preparing and organizing the exhibits for trial and working with the trial attorneys on witness and exhibit outlines. They indicate that they became one of the leading firms, if not the leading firm, in managing the document review and depository. Their work was mainly in a supportive role and was beneficial to TPP portion of this litigation. To compensate this firm for its common benefit work a fair amount is $550,000.00.

### 28.    Slate Carter Comer

Slate Carter Comer did not have any unreimbursed costs. They report that they have logged 251 hours doing common benefit work on the TPP portion of the case. The firm reports that they worked extensively with the Hagens Berman Firm and the Dugan Firm in drafting discovery to Merck, preparing their TPP plaintiff response to Merck's discovery. They represented a number of TPP claimants and report that the firm earned $671,596.00 in fees from their TPP clients. A member of their firm was appointed as co-chair of the MDL bellwether discovery committee and a member of the expert committee. A fair amount to compensate this firm for its work is $75,000.00.

### 29.    Sommers & Schwartz and Jason Thompson & Associates

This firm reports logging 290 hours of common benefit work performed their current employee, Jason Thompson. The firm incurred $1,226.00 in unreimbursed costs. The firm reports being involved in the New Jersey and MDL litigation from the very beginning. They report that their common benefit work included completing and overseeing discovery, reviewing *Vioxx* TPP documents produced by the Merck, and researching Michigan's drug products liability laws and doing substantial work on the lien resolution program. A fair amount to compensate this firm for its common benefit work and costs expended is $100,000.00.

### 30.    Saltzer Law Firm

The Saltzer Law Firm reports having $8.00 of un reimbursed costs and logging about 41 hours doing common benefit work. There are no records to justify a fee for this firm. Therefore, no amount will be awarded to this firm for common benefit work.

### 31.    Wallace Jordan Ratliff & Brandt

This firm reports logging 269 hours in common benefit time and having no unreimbursed costs. They had a number of personal TPP clients and report receiving $671,596.00 from these

clients. Their common benefit work includes participating in discovery, objecting to Merck's 30(b)6 motion, discussing bellwether strategy, reviewing and analyzing New Jersey cases and reviewing and commenting on the trial strategy. It appears that most of this firm's work was done in connection with the firm's personal clients. While their work did have some rippling beneficial effect on the litigation as a whole, it was mostly helpful to the firm's personal clients. A fair amount to compensate this firm for its common benefit work is $95,000.00.

### 32.    Law Offices of Eric Weinberg

This firm reports having incurred $27,392.00 in unreimbursed costs and logging 1,518 hours doing common benefit work. Eric Weinberg of that firm indicates that he was a de facto leader in organizing the plaintiffs' counsel in the New Jersey consolidated private TPP litigation. He reports having conducted extensive research into Merck's documents and medication and scientific information related to Vioxx. He developed and shared with all plaintiffs' counsel a database of information regarding the adverse bone mineral density effects of Vioxx, analyzed Merck's Alzheimer's studies, and acted as co-counsel to the Australian firm Slater Gordon in a successful personal injury class action in Melborne, Australia. He reports that he attended numerous case management conferences in Atlantic City and organized, led, or attended major coordinating and strategic sessions and other various meetings. A significant portion of this firm's common benefit time was logged in working with expert witnesses. Some of this time, however, has already been compensated for by the common benefit allocation made in connection with the personal injury phase of this case. This firm received $3.5 million for its common benefit work during that portion of this case which included a portion of time spent with the same experts. A fair amount to compensate this firm for its common benefit work and reimburse it for their common benefit costs in connection with the TPP claims is $650,000.00.

### 33.    Young Law Group

The Young Group reports that they have incurred $318.00 in unreimbursed costs and has spent 59 hours on common benefit work. This firm's work was spent in preparing for a bellwether trial before the case settled. To compensate for this firm's common benefit work, a fee of $20,000.00 is appropriate.

## III.    CONCLUSION

Although this allocation process is tedious and time-consuming, the Court finds that such an exercise assures a thorough and transparent analysis and affords full opportunity to all interested attorneys to express their views. This process is also helpful to achieve a reasoned and appropriate result. For the foregoing reasons, the common benefit fund for the TPP claims shall be allocated to the following parties in the following amounts:

| | |
|---|---|
| Audet & Partners: | $ 240,000.00 |
| Barrios Kingsdorf & Casteix: | $ 20,000.00 |
| Bossier & Associates: | $ 10,000.00 |
| Cafferty Faucher | $ 180,000.00 |
| Charfoos & Christensen | $ 75,000.00 |
| Cohen Placitella & Roth | $ 122,000.00 |
| Dugan Law Firm | $ 1,200,000.00 |
| Ewing McMillin & Willis | $ 100,000.00 |
| Favre Law Firm | $ — |
| Gary L. Franke & Co. | $ 80,000.00 |
| Freese & Gross | $ 180,000.00 |
| Hagens Berman Sobol Shapiro | $ 3,000,000.00 |
| Herman Herman Katz & Cotlar | $ 913,000.00 |
| Hovde Dassow & Deets | $ 800,000.00 |
| Keefe Bartels | $ 420,000.00 |
| Kline & Specter | $ — |
| Labaton Sucharow | $ 280,000.00 |
| Lanier Law Firm | $ 100,000.00 |
| Levin Fishbein Sedran & Berman | $ 430,000.00 |
| Levy Phillips & Konigsberg | $ 50,000.00 |
| Lieff Cabraser Heimann & Bernstein | $ 1,300,000.00 |
| Murray Law Firm | $ 50,000.00 |
| Price Waicukauski & Riley | $ 300,000.00 |
| Sadin Law Firm | $ 80,000.00 |

| | |
|---|---|
| Scott Yung | $ 80,000.00 |
| Seeger Weiss | $ 3,500,000.00 |
| Sheller P.C. | $ 550,000.00 |
| Slate Carter Comer | $ 75,000.00 |
| Sommers & Schwartz and Jason Thompson & Associates | $ 100,000.00 |
| Saltzer Law Firm | $ — |
| Wallace Jordan Ratliff & Brandt | $ 95,000.00 |
| Law Offices of Eric Weinberg | $ 650,000.00 |
| Young Law Group | $ 20,000.00 |

New Orleans, Louisiana, this 3rd day of January, 2014.

UNITED STATES DISTRICT JUDGE