## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**IN RE: VIOXX**
     **PRODUCTS LIABILITY LITIGATION**

MDL NO. 1657

SECTION L

JUDGE FALLON
MAG. JUDGE KNOWLES

THIS DOCUMENT RELATES TO:     *Sherrill Herke, individually and on behalf of a proposed class of those similarly situated*

## FINAL ORDER AND JUDGMENT CERTIFYING THE CLASS FOR PURPOSES OF SETTLEMENT, APPROVING OF CLASS ACTION SETTLEMENT, & DISMISSING THE ACTIONS WITH PREJUDICE

Before the Court is the motion for final approval of the Vioxx consumer Class Settlement by Class Representative Sherrill Herke, individually and on behalf of a proposed Class of those similarly situated, (Rec. Docs. 64719, 64728, 64735), and supported by Defendant Merck, Sharp & Dohme, Corp., formerly known as Merck & Co., Inc., ("Merck"). The Court has reviewed and considered the parties' memoranda and oral argument, the objections (Rec. Docs. 64700, 64710, 64712, 64714), the claims report (Rec. Doc. 64729), the record, and the law, including the requirements of Federal Rule of Civil Procedure 23, and now issues this order.

## I.    BACKGROUND

To put this matter in perspective, a brief overview of this litigation is appropriate. This multidistrict litigation ("MDL") involves the prescription drug Vioxx, known generically as Rofecoxib. Merck, a New Jersey corporation, researched, designed, manufactured, marketed, and distributed Vioxx to relieve pain and inflammation resulting from osteoarthritis, rheumatoid arthritis, menstrual pain, and migraine headaches. On May 20, 1999, the Food and Drug Administration ("FDA") approved Vioxx for sale in the United States. Vioxx remained publicly

available until September 30, 2004, when Merck withdrew it from the market after data from a clinical trial known as APPROVe indicated that the use of Vioxx increased the risk of cardiovascular thrombotic events such as myocardial infarctions (heart attacks) and ischemic strokes. Thereafter, thousands of individual suits and numerous class actions were filed against Merck in state and federal courts throughout the country alleging various products liability, tort, fraud, and warranty claims. It is estimated that 105 million prescriptions for Vioxx were written in the United States between May 20, 1999, and September 30, 2004. Based on this estimate, it was thought that approximately 20 million patients have taken Vioxx in the United States.

On February 16, 2005, the Judicial Panel on Multidistrict Litigation ("JPML") conferred MDL status on Vioxx lawsuits filed in federal court and transferred all such cases to this Court to coordinate discovery and to consolidate pretrial matters pursuant to 28 U.S.C. § 1407. *See In re Vioxx Prods. Liab. Litig.,* 360 F. Supp. 2d 1352 (J.P.M.L. 2005). One month later, on March 18, 2005, this Court held the first status conference in the Vioxx MDL to consider strategies for moving forward with the proceedings. Shortly thereafter, the Court appointed a Plaintiffs' Steering Committee ("PSC") and Defendant's Steering Committee to represent the parties and to meet with the Court once every month or two to review the status of the litigation.

On August 2, 2005, the PSC filed a Purchase Claims Master Class Action Complaint ("Purchase Claims Complaint"), naming individual consumers who purchased Vioxx for themselves. (Rec. Doc. 790). Class Representative Herke was among those. (*Id.*). The Purchase Claims Complaint states:

> 2. . . . Merck intentionally, recklessly, and/or negligently concealed, suppressed, omitted, and misrepresented the dangers, defects, and disadvantages of Vioxx, and advertised, promoted,

2

marketed, sold, and distributed Vioxx as a safe prescription medication when, in fact, Merck had reason to know and did know that Vioxx was not safe for its intended purposes . . . .

. . . .

9. In an elaborate and sophisticated manner, Merck aggressively marketed Vioxx directly to consumers . . . . Merck's marketing campaign specifically targeted third party payors, physicians, and consumers, and was designed to convince them of both the therapeutic and economic value of Vioxx.

. . . .

11. Vioxx possessed dangerous and concealed or undisclosed side effects, including the increased risk of serious cardiovascular events, such as heart attacks, unstable angina, cardiac clotting, deep vein thrombosis, hypertension, and cerebrovascular events, such as strokes. In addition, Vioxx was no more effective than traditional and less expensive NSAIDs . . . .

12. . . . . Merck's omission, suppression, and concealment of this important information enabled Vioxx to be sold to, and purchased, or paid for by, the End-Payors at a grossly inflated price.

(*Id.* at 3-6). The Purchase Claims Complaint sought relief under a myriad of laws, including state consumer protection statutes. (*Id.* at 60-75).

On November 7, 2005, Merck filed a motion to dismiss, and a hearing was held on February 2, 2006. This Court withheld a ruling until a decision on class certification in the coordinated state court proceedings in New Jersey and California had been made. Class certification was denied in those proceedings in early 2009. Following those denials, Merck moved this Court to strike the Purchase Claims Complaint's class allegations. Merck also moved for judgment on the pleadings, in part on the basis that the economic-loss claims did not allege any cognizable injuries. (*See* Rec. Doc. 45869-3 at 1-2, 16-20). These motions remain pending. In 2012, Merck moved for judgment on the pleadings in a similar consumer protection claim. (Rec. Doc. 63656-1). The Court dismissed the claim and the PSC moved for reconsideration. The

Court, however, withheld consideration on the motion for reconsideration after the parties informed it that settlement discussions had begun.

After substantial settlement negotiations spanning several years, the parties reached a compromise earlier this year. The proposed Settlement allocates up to $23 million, from which Class Members may seek recovery for their out-of-pocket costs for purchasing Vioxx and up to $75.00 in connection with post-withdrawal medical consultation related to Vioxx use or a one-time payment of $50.00 with proof of a Vioxx prescription. Those amounts, however, are subject to a *pro rata* reduction if all claims, administrative, attorneys' fees, and other costs exceed the $23 million cap.

On July 17, 2013, the Plaintiffs filed a motion for the preliminary approval of the Class Settlement (Rec. Doc. 64487), and a Preliminary Fairness Hearing was held on July 24, 2013 (Rec. Doc. 64511). On August 2, 2013, the Court issued order preliminarily certifying a Class for the purpose of the Class Settlement and preliminary approving Class Settlement, the Class Notice, and addressing other matters ("Preliminary Order"). (Rec. Doc. 69526). The claims period then began. Objections were due on November 9, 2013. On December 13, 2013, it held a Final Fairness Hearing. (Rec. Doc. 64750). Claims will be accepted until May 6, 2014, after which the Court will address the issue of attorneys' fees and costs.

## II.   PRESENT MOTION

### A.   Movant

The proposed Settlement proponents seek the certification of the Settlement Class and approval of the Class Settlement. (Rec. Doc. 64729). They argue that the Class Settlement is fair, reasonable, and adequate, that public policy favors the Class Settlement, that the *Reed* factors

4

suggest the appropriateness of the Class Settlement, that the Class Settlement meets the requirements of Rule 23, that the Notice satisfies the dictates of Rule 23 and due process, and that the few objections are without merit. (Rec. Doc. 64719-1).

### B.    Objectors

### 1.    James Ratliff

James Ratliff is a resident of Kentucky who was diagnosed with chronic osteoarthritis in 1994 at the age of 37. In January of 2000, Mr. Ratliff began taking Vioxx twice daily. After Vioxx was removed from the market in 2004, Mr. Ratliff brought a case in Kentucky state court on behalf of all Kentucky residents who had purchased and taken Vioxx and who, upon the recommendation and advice of the Food and Drug Administration ("FDA") and Merck, had contacted or will contact their physicians to seek advice regarding their use of Vioxx. The complaint seeks reimbursement for medical consultations, including the costs of any recommended diagnostic testing, for lost income and related expenses incurred while undergoing such examinations and procedures, and for the cost of the Vioxx purchased.

Mr. Ratliff's action predates the creation of this multidistrict litigation. Although Merck attempted to remove the case, a federal district judge in Kentucky remanded it to state court instead of retaining jurisdiction and transferring it to this Court. Since then, it has proceeded within the Kentucky courts. Without going into the full procedural history of the case, it is important to note that the state trial court had previously certified a state class, which Merck appealed, and the intermediate court of appeals in Kentucky reversed. Mr. Ratliff has since sought, and obtained, discretionary review of reversal by the Kentucky Supreme Court. While that court has heard oral argument, it has not yet issued an opinion.

During the pendency of Mr. Ratliff's state court action, this MDL has been proceeding simultaneously. On February 26, 2013, the possibility of a consumer class settlement was mentioned during the Vioxx monthly status conference (Rec. Doc. 64275), and several days later on March 4, 2013, Mr. Ratliff filed a preliminary notice of objection into the record (Rec. Doc. 63289), to which Merck briefly responded (Rec. Doc 64290). The Court did not consider the notice at that time because a proposed class settlement was not before it. It did, however, encourage the parties to the potential class settlement to include Mr. Ratliff in their discussions.

As noted above, on July 17, 2013, a motion for preliminary approval (Rec. Doc. 64486) and a memorandum in support by Merck (Rec. Doc. 64488) were filed, laying out the proposed Class Settlement for Vioxx consumers, which is now before the Court. The Court scheduled the Preliminary Fairness Hearing on the Class Settlement for July 24, 2013, and set an abbreviated briefing schedule. (Rec. Doc. 64491). The Court also made note of Mr. Ratliff's preliminary notice of objection that had been filed on March 4, 2013, and ordered that Merck and the PSC respond to it. (Rec. Doc. 64494).

Soon thereafter, Mr. Ratliff filed a response to the motion for preliminary approval of the Class Settlement, in which he objected to the proposed Class Settlement and requested that he and other Kentucky consumers be excluded from it. (Rec. Doc. 64496). Merck and the PSC both filed responses to Mr. Ratliff's preliminary notice of objection, as the Court had instructed. (Rec. Docs. 64497, 64499). Merck further replied to Mr. Ratliff's newly filed response, objection, and request for exclusion. (Rec. Doc. 64500).

On July 24, 2013, the Court held a preliminary fairness hearing on the proposed consumer Class Settlement as scheduled. In its minute entry, the Court ordered counsel for the

PSC and for Mr. Ratliff to meet and confer to set dates within the proposed order. It also made it clear that if they were unable to agree to those dates, the Court would set them itself. (Rec. Doc. 64511). Pursuant to the Court's instructions, Mr. Ratliff submitted proposed dates (Rec. Doc. 64513). Both Merck and the PSC responded in opposition to those dates. (Rec. Docs. 64518, 64519).

On August 1, 2013, Ratliff filed a motion to intervene (Rec. Doc. 64520) and a separate motion to stay dissemination of the Notice pending the Kentucky Supreme Court's decision regarding state class certification (Rec. Doc. 64521). Merck and the PSC responded in opposition. (Rec. Docs. 64522, 64523, 64524). On August 2, 2013, the Court denied Mr. Ratliff's motion to intervene, noting that his objections should and would be heard by the Court at the December 13, 2013, Final Fairness Hearing. (Rec. Doc. 64525). Mr. Ratliff appealed the Court's August 2, 2013, order denying intervention (Rec. Doc. 64569), and requested another stay of the proceedings in this Court pending the Fifth Circuit's decision (Rec. Doc. 64576). On December 18, 2013, this appeal was dismissed at the request of Mr. Ratliff. (Rec. Doc. 64754).

Also on August 2, 2013, the Court preliminarily certified the Settlement Class and preliminarily approved the Class Settlement itself, as well as the proposed Notice. (Rec. Doc. 64526). In the same order, it denied Mr. Ratliff's motion to stay the Notice and adopted the dates suggested by the PSC and Merck, finding that they were adequate.

On August 12, 2013, Merck filed a motion to stay and enjoin the Kentucky state court proceedings (Rec. Doc. 64537), and Class Counsel filed a separate motion seeking to enjoin Mr. Ratliff from prosecuting any related claims (Rec. Doc. 64539). The parties discussed these motions during the Vioxx monthly status conference on August 14, 2013, and the Court heard

7

oral argument on September 11, 2013. (Rec. Doc. 64547). The Court was informed that the parties' had entered discussions, and it withheld its ruling on these motions. The Court then held a status conference with the parties on September 18, 2013. (Rec. Doc. 64607). On November 7, 2013, the Court received a letter from counsel for Mr. Ratliff, counsel for Merck, and the PSC stating "it is in the best interest of the Kentucky putative class not to object to the proposed MDL settlement," effectively withdrawing Mr. Ratliff's objection. The same was communicated by the parties at a December 9, 2013, telephone status conference with the Court. (Rec. Doc. 64738). Accordingly, Mr. Ratliff's objection is rendered moot.

### 2. Geneva Meloy

On November 7, 2013, Geneva Meloy filed a notice of objection. Specifically, she objects to the amount of attorneys' fees and note that "there may be other things [she] may find objectionable about the settlement." (Rec. Doc 64712 at 1). However, the Court received no further objection from Ms. Meloy and she did not participate at the Final Fairness Hearing on December 13, 2013. Further, the Court notes that the effect of this proposed Class Settlement is to limit, rather than guarantee, the amount of attorneys' fees. At an appropriate time and after hearing from all interested parties and Ms. Meloy, the Court will make a determination as to the appropriate amount and allocation of attorneys' fees.

### 3. Debbie Pace and Patricia Archuleta

On November 8, 2013, the Court received a notice of objection from Debbie Pace and Patricia Archuleta, on behalf of themselves and all New Mexican purchasers and consumers of Vioxx. (Rec. Docs. 64709, 64710). Ms. Pace and Ms. Archuleta filed their cases in New Mexico state court on October 14, 2004, and February 17, 2005, respectively, and Merck removed them

8

shortly thereafter. Ms. Pace and Ms. Archuleta then filed motions to remand, which remained pending when the cases were transferred from the United States District Court for the District of New Mexico to this Court as part of the MDL consolidation process. The notice of objection states that the Plaintiffs' Liaison Counsel ("PLC") has only communicated with their counsel on a few occasions, most recently when the PLC supplied information about the proposed Settlement (they assert that that information was deficient because it did not include a copy of the proposed Settlement itself and other documents). The notice of objection also asks that the Court address the pending motions to remand.

On December 9, 2013, Ms. Pace and Ms. Archuleta filed their objection itself. (Rec. Doc. 64739). First, they note that the Notice does not attempt to define the individuals to whom the Notice should be mailed and that its reliance on print and Internet advertisements is inadequate for Class Members in New Mexico, which is a highly rural state. Second, Ms. Pace and Ms. Archuleta note that "either Fifty Dollars ($50.00) in cash or reimbursement for actual out-of-pocket expenses paid for Vioxx up to Seventy-Five Dollars ($75.00)" is "paltry . . . in light of the actual out-of-pocket expenses paid for Vioxx by most of the New Mexico class members." (*Id.* at 3). Third, they address several concerns about the administration of the Settlement Fund. Fourth, they express concern that the Notice does not require dissemination in Spanish, as well as in English. Fifth, they argue that this Court does not have subject matter jurisdiction over their claims. Sixth, they argue that the parties advancing the proposed Settlement have failed to comply with the requirements of the Class Action Fairness Act ("CAFA") by allegedly failing to serve Notice of the proposed Settlement on the State of New Mexico.

Counsel for Ms. Pace and Ms. Archuleta participated at the Final Fairness Hearing on December 13, 2013, at which point the objections were withdrawn. Nonetheless, the Court briefly addresses each here. As noted below, the Court finds that the Notice satisfies the constitutional due process requirements, as well as those imposed by statute. However, Class Counsel and counsel for Merck indicated their amenability to supplementing the Notice to meet the concerns of Ms. Pace and Ms. Archuleta. With regard to the amount each Class Member may claim, the Court notes that the limits are not as they have been described by Ms. Pace and Ms. Archuleta. Class Members may receive reimbursement for any and all qualifying purchases of Vioxx, provided they submit the necessary documentation. Only if they are unable to submit documentation will they be limited to reimbursement of $50. Their questions regarding the administration of the Settlement Fund have been answered and their objections withdrawn. The Court notes that the Settlement Fund has already been established pursuant to order of this Court. Last, Ms. Pace and Ms. Archuleta have withdrawn their objection relating to compliance with CAFA, having been informed by the State of New Mexico that Notice was served in accordance with the statute.

### 4.    Patricia Schisler

On October 28, 2013, Patricia Schisler sent correspondence to counsel for Merck regarding the proposed Settlement. (Rec. Doc. 65700-1). The correspondence was filed into the record by Class Counsel on November 21, 2013. In her correspondence, Ms. Schisler stated:

> If I could speak at the final fairness hearing I would say this. I had no trouble with my heart until I took Vioxx. Now, I have to keep nitrostat on hands [*sic*] for chest pain as needed.
> Merck should be held responsible in these cases. I know the Lord is going to hold these people accountable, that seat in high

10

places for their actions. I pray that this is done right for the people.
Our lives has [*sic*] changed because of Vioxx.

(*Id.* at 2). Ms. Schisler did not participate at the Final Fairness Hearing. The Court notes that this proposed Settlement relates only to economic loss claims, and not to those involving personal injury. The vast majority of the personal injury claims in this MDL were resolved through an earlier settlement process. Having addressed the objections, the Court now turns to the substance of the motion to approve the Class Settlement.

## III.   LAW & ANALYSIS

### A.   Final Fairness Evaluation

Pursuant to Rule 23, governing class actions, "[r]eview of a proposed class action settlement generally involves two hearings," the first of which is a "preliminary fairness evaluation" made by the Court. MANUAL FOR COMPLEX LITIGATION § 21.632 (4th ed. 2004). Indeed, within the Fifth Circuit it is routine to conduct a preliminary fairness evaluation prior to the issuance of notice. *See, e.g.*, *Cope v. Duggins*, 2001 WL 333102, at *1 (E.D. La. Apr. 4, 2011); *In re Shell Oil Refinery*, 155 F.R.D. 552, 555 (E.D. La. 1997); *see also* MANUAL FOR COMPLEX LITIGATION § 21.6 ("The two-step process for evaluation of proposed settlements has been widely embraced by the trial and appellate courts."). The purpose of this two-step process is to cull out spurious claims and avoid the unnecessary expense of notice for such claims. During this preliminary evaluation, the Court "should make a preliminary determination that the proposed class satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b)." *Id.* Additionally, the Court "must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of

the certification, proposed settlement, and date of the final fairness hearing." *Id.* After having granted preliminary approval and allowed the notice process to move forward, the Court conducts a more thorough and rigorous analysis of the same factors in order to determine the appropriateness of granting final approval. MANUAL FOR COMPLEX LITIGATION § 21.6; *see also In re OCA, Inc. Secs. & Derivative Litig.*, 2008 WL 4681369, at *11 (E.D. La. Oct. 17, 2008). "Counsel for the class and the other settling parties bear the burden of persuasion that the proposed settlement is fair, reasonable, and adequate." MANUAL FOR COMPLEX LITIGATION § 21.631; *In re Vioxx Prods. Liab. Litig.*, 239 F.R.D. 450, 459 (E.D. La. 2006).

### B.     Class Action Settlement Prior to Class Certification

"Before an initial class ruling, a proposed class settlement may be effectuated by stipulation of the parties agreeing to a temporary settlement class for purposes of settlement only." *William B. Rubinstein, Alba Conte, & Herbert B. Newberg*, 4 NEWBERG ON CLASS ACTIONS § 11:22 (4th ed. 2010). "[A]pproval of a classwide settlement invokes the requirements of Rule 23(e)." *Id.* Rule 23(e) provides that "[t]he claims . . . of a certified class may be settled . . . or compromised only with the court's approval." FED. R. CIV. P. 23(e); *see Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997). "Settlement classes—cases certified as class actions solely for settlement—can provide significant benefits to class members and enable the defendants to achieve final resolution of multiple suits." MANUAL FOR COMPLEX LITIGATION § 21.612. However, "[c]ourts have held that approval of settlement class actions under Rule 23(e) requires closer judicial scrutiny than approval of settlements reached only after class certification has been litigated through the adversary process." *Id.*

Although "[s]ettlement is relevant to a class certification," as mentioned above, the criteria of Rule 23, particularly that found in subsections (a) and (b), must still be satisfied. *Amchem*, 521 U.S. at 619-20. "Together subsection (a) and (b) requirements insure that a proposed class has 'sufficient unity so that the absent class members can fairly be bound by decisions of the class representatives.'" *In re FEMA Trailer*, 2008 WL 5423488, at *3 (quoting *Amchem*, 521 U.S. 591). All of the requirements of Rule 23(a) must be met:

One or more members of a class may sue or be sued as representative parties on behalf of all members only if:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

FED. R. CIV. P. 23(a).

As this Court has previously recognized:

> The first two requirements focus on the characteristics of the class; the second two focus instead on the desired characteristics of the class representatives. The rule is designed "to assure that courts will identify the common interests of class members and evaluate the named plaintiffs' and class counsel's ability to fairly and adequately protect class interests."

*In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 2008 WL 5423488, at *3 (E.D. La. Dec. 29, 2008) (quoting *In re Lease Oil Antitrust Litig.*, 186 F.R.D. 403, 419 (S.D. Tex. 1999)).

Additionally, for class certification, at least one of the subsections of Rule 23(b) must be met. To satisfy this requirement, the Movants urge the Court to find subsection (b)(3) is satisfied by the pending settlements. This subsection provides:

> A class action may be maintained if Rule 23(a) is satisfied and if:
>  . . . .
> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
> (A) the class members' interests in individually controlling the prosecution or defense or separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

FED. R. CIV. P. 23(b).

"To succeed under Rule 23(b)(3), Plaintiffs must sufficiently demonstrate both predominance of common class issues and that the class action mechanism is the superior method of adjudicating the case." *In re FEMA Trailer*, 2008 WL 5423488, at *3 (citing *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 623-24 (5th Cir. 1999)).

## C.    Rule 23 Criteria

### 1.    Numerosity

As cited above, Rule 23(a) (1) provides that a class action is maintainable only if "the class is so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a) (1). "To demonstrate numerosity, the [Movants] must establish that joinder is impracticable through 'some evidence or reasonable estimate of the number of purported class members.'" *In re Vioxx*

14

*Prods. Liab. Litig*., 239 F.R.D. 450, 459 (E.D. La. 2006) (quoting *Pederson v. La. State Univ*., 213 F.3d 858, 868 (5th Cir. 2000)). Rule 23 does not provide a clear formula for determining whether the numerosity requirement has been met, thus Courts are to evaluate numerosity based upon the facts, circumstances, and context of the case. 1 NEWBERG ON CLASS ACTIONS § 3:3 (4th ed. 2010). Indeed, "[t]here is enormous disparity among the decisions as to the threshold size of the class that will satisfy the Rule 23(a) (1) prerequisites." *Id.* Although the plaintiff bears the burden of showing joinder is impracticable, "a good-faith estimate should be sufficient when the number of class members is not readily ascertainable," and the numerosity requirement "ordinarily receives only summary treatment . . .and has often gone uncontested." *Id*. Plaintiffs must also satisfy numerosity for each proposed sub-class. *See In re FEMA Trailer*, 2008 WL 5423488, at *5. Here, there are many thousands of individuals who have purchased Vioxx, asserted claims, or have potential claims. Thus, Rule 23(a)(1)'s numerosity requirement has been met by virtue of the Class definition.

      **2.**      **Commonality**

      As cited above, the commonality requirement under Rule 23(a) (2) requires for maintenance of a class action that there be "questions of law or fact common to the class." FED. R. CIV. P. 23(a) (2). Commonality "does not require that all questions of law or fact raised in the litigation be common. The test or standard . . . is qualitative rather than quantitative." *Rubinstein*, 1 NEWBERG ON CLASS ACTIONS § 3:10; *see also In re FEMA Trailer*, 2008 WL 5423488, at *6. Indeed, "[t]he commonality requirement is satisfied if at least one issue's resolution will affect all or a significant number of class members." *In re Vioxx,* 239 F.R.D. at 459 (citing *James v. City of Dallas*, 254 F.3d 551, 570 (5th Cir. 2001)). The Rule 23(a) (2) commonality "requirement is

easily met in most cases." *Id*. Here, Class Members' claims are common in that they allege that Vioxx was overpriced because Merck allegedly failed to disclose its alleged cardiovascular risks in violation of state consumer laws.

### 3.   Typicality

Rule 23(a) (3) provides that a class action may be maintained only if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." FED. R. CIV. P. 23(a) (3). "The typicality criterion focuses on whether there exists a relationship between the plaintiff's claims and the claims alleged on behalf of the class." *Rubinstein*, 1 NEWBERG ON CLASS ACTIONS § 3:13.

> Thus, a plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims or other claims members, and if his or her claims are based on the same legal theory. When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of varying fact patterns which underlie individual claims. However, this is not a foregone conclusion.

*Id*. Here, the proposed Class Representative's claims arise from the same course of conduct and share the substantially same legal theory as those of the Class Members. Furthermore, the proposed Class Representative will advance the interests of all Class Members. The individual Class Representative alleges various causes of action for recovery of alleged economic loss arising from the purchase of Vioxx. These have been set forth in the Purchase Claims Complaint. The proposed Class Representative is typical of the proposed Class Members and satisfies Rule 23(a)(3).

16

4.       **Adequacy of Representation**

Rule 23(a) (4) requires for maintenance of a class action, that "the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a) (4). "The purpose of this requirement is to protect the legal rights of absent class members. First, the representatives must not possess interests which are antagonistic to the interests of the class. Second, the representatives' counsel must be qualified, experienced, and generally able to conduct the litigation." *Rubinstein*, 1 NEWBERG ON CLASS ACTIONS § 3:21; *see Gen. Telephone Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982) ("[T]he adequacy of representation requirement . . . also raises concerns about the competency of class counsel and conflicts of interest."). With regard to the former, a court is to "look at the circumstances of the plaintiff individually to determine if the plaintiff has any conflict with class members." *Rubinstein*, 1 NEWBERG ON CLASS ACTIONS § 3:23. "Only those material conflicts pertaining to the issues common to the class will bar a class action." *Id*. As to the latter requirement, "courts consider the competence and experience of class counsel, attributes which will most often be presumed in the absence of proof to the contrary." *Id*. at § 24. Here, the proposed Class Representative asserts claims representative of the claims of the entire Class. Even though the claims may not be identical to every claim of every putative Class Member, the proposed Class Representative is capable of adequately representing the putative Class. The adequacy factor also considers Class Counsel. In this case, Class Counsel is very experienced and has engaged regularly in complex litigation similar to that here. They have dedicated substantial resources to the prosecution of this matter. Accordingly, the adequacy requirement of Rule 23(a)(4) is satisfied.

5.       **Common Questions of Law & Fact Predominate**

Rule 23(b) (3) provides that a class action is maintainable if all the prerequisites of subsection (a) are satisfied and "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." FED. R. CIV. P. 23(b)(3). The factors a Court should consider include:

> (A) the class members' interests in individually controlling the prosecution or defense or separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

FED. R. CIV. P. 23(b).

There is "considerable overlap" between commonality and the predominance of common questions of law and fact, resulting in many courts handling both issues together. *Rubinstein* , 2 NEWBERG ON CLASS ACTIONS § 4:22. However, "the predominance test is 'far more demanding' than the commonality test." *In re FEMA Trailer*, 2008 WL 5423488, at *12 (quoting *Unger v. Amedisys, Inc*., 401 F.3d 316, 320 (5th Cir. 2005)). "To predominate, common issues must form a significant part of individual cases." *In re Vioxx Prods. Liab. Litig.*, 239 F.R.D. 450, 460 (E.D. La. 2006) (citing *Mullen*, 186 F.3d at 626). "Judicial economy factors and advantages over other methods for handling the litigation as a practical matter underlie the predominance and superiority requirements for class actions certified under Rule 23(b) (3)." *Rubinstein*, 2 NEWBERG ON CLASS ACTIONS § 4:24. Here, there is a predominance of common questions of law and fact. Common issues include whether Vioxx carries a risk of cardiovascular disease, whether Merck adequately disclosed the risks of Vioxx, and whether Vioxx was inappropriately

18

marketed. The resolution of these questions is relevant to essential elements of every Class Members' claims under Rule 23(b)(3). Further, a proposed Settlement that will determine the issues common to all Class Members and fix compensation for alleged economic injury is superior to thousands of trials that would risk disparate results for similarly situated people and entities. Accordingly, the requirements of Rule 23(b)(3) are met.

### D.    Fairness, Reasonableness, & Adequacy

The Court is also required to render a determination on the fairness, reasonableness, and adequacy of the Class Settlement. The Court finds that the proposed Class Settlement is fair and adequate. The fairness and adequacy factors concern whether there has been arm's-length bargaining. Courts in the Fifth Circuit consider the following six factors: "(1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, Class Representatives, and absent Class Members." *See, e.g., Reed v. General Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983). The Court will address each of these factors in turn. First, the facts and circumstances of the negotiations set forth in the proponents' affidavits and memoranda demonstrate that there has been considerable arm's-length negotiations. Here, there is no evidence that the parties engaged in anything other than arm's-length negotiations through qualified counsel. Moreover, the Court is also satisfied that Class Counsel was sufficiently informed to vigorously advocate on the Class' behalf and that it actually did so. Therefore, the Court finds this factor supports the proposed Settlement's fairness, reasonableness, and adequacy.

Second, the complexity, length, and expense of further litigation weigh heavily in favor of the proposed Settlement. There is no doubt that the time and expense of continuing the litigation would be substantial. Avoiding that unnecessary and unwarranted expenditure of resources and time would benefit all parties and the Court, and militates toward the fairness, reasonableness, and adequacy of the proposed Settlement.

Third, the extent of the proceedings and discovery that has been completed in this MDL, which has progressed for nearly a decade, weighs heavily in favor of the proposed Settlement's fairness, reasonableness, and adequacy.

Fourth, the Class Members face significant difficulties in proving the substance of their claims, including that they sustained actual economic harm as a result of Merck's alleged conduct. This difficulty, balanced against the relatively assured compensation under the proposed Settlement, weighs in favor of the fairness, reasonableness, and adequacy of the compromise. Class Members' ability to prevail on the merits of this litigation, as in all contested matters, is uncertain. The proposed Settlement, however, confers relatively assured and substantial benefits for Class Members who have adequate proof of their Vioxx purchases. These Class Members' claims would require substantial evidence and expert testimony to prove liability, causation, and damages. The proposed Settlement and its claims procedure simplifies what is required of Class Members to make a claim. The proposed Settlement offers relatively assured, prompt, and fair compensation. Thus, in considering the balance between the uncertainty of the litigated claims and the assuredness of settled claims, the Court finds that this factor supports the fairness, reasonableness, and adequacy of the proposed Settlement.

20

Fifth, the Court finds that the proposed Settlement provides adequate compensation. The proposed Settlement essentially provides for full reimbursement of Class Members' out-of-pocket expenditures for their Vioxx purchases, subject to a potential proportionate reduction depending on the number of participating Class Members. Moreover, the Court finds it significant that the proposed Settlement also provides a level of compensation for those Class Members who cannot submit proof of their purchases, but only of their prescriptions. Accordingly, this factor supports the proposed Settlement's fairness, reasonableness, and adequacy. It must be recognized that these Class Members largely include those who have sustained no adverse effects from Vioxx and continued to receive satisfactory benefits for their muscular complaints. This proposed Settlement completely reimburses these individuals for the costs they expended on a drug that helped them; it is a good deal for them.

Last, the opinions of Class Counsel, the Class Representative, and absent Class Members favors a determination that the proposed Settlement is fair, reasonable, and adequate. There were few objections to the proposed Settlement, and as noted above, all but a few of which have been withdrawn. The Court has reviewed each of the objections on their merits, but finds that none disrupts the overwhelming fairness, reasonableness, and adequacy of the proposed Settlement.

## IV.    CONCLUSION

For the forgoing reasons, **IT IS ORDERED** that motion for final approval of the Vioxx consumer Class Settlement by Class Representative Herke (Rec. Docs. 64719, 64728, 64735) is **GRANTED.**

21

**IT IS FURTHER ORDERED** that Merck's motion to stay and enjoin the Kentucky state court proceedings (Rec. Doc. 64537) and Class Counsel's motion to enjoin Mr. Ratliff from prosecuting any related claims (Rec. Doc. 64539) are **DENIED** as moot.

**IT IS FURTHER ORDERED:**

1.     The Court has jurisdiction over the subject matter and parties to this proceeding pursuant to 28 U.S.C. § 1332.

2.     Venue is proper in this district.

3.     The Court finds, for settlement purposes only, that the applicable Rule 23 factors are present and that certification of the proposed Class, as defined and set forth below, which was preliminarily approved by this Court previously, is appropriate under Rule 23(a)(1)-(4) and Rule 23(b)(3). "Class" or "Settlement Class" means:

> All individual consumer purchasers of Vioxx in the United States (except members of the class previously certified by the Circuit Court of Jackson County, Missouri in the *Plubell* case with respect to purchases made while a resident of the State of Missouri) (the "Settlement Class"), except that the Settlement Class shall include only individuals who purchased Vioxx (by paying all or part of the purchase price) through September 30, 2004, when Vioxx was removed from the market. For sake of clarity, the Settlement Class defined in the foregoing sentence includes, but is not limited to, all persons referenced in the foregoing sentence who also received a Post-Withdrawal Medical Consultation as defined below in Paragraph 1.13. All other Vioxx purchasers (including any private or governmental third-party payors that may have paid all or part of the purchase price of Vioxx for use by individual consumers) are excluded. Also excluded are (a) all persons who have previously settled Vioxx-related claims, including all participants in the Vioxx Resolution Program, (b) any of Merck's directors, officers, employees, or agents, (c) the Court, the judge's immediate family members, and the staff of the Court assigned to work on MDL 1657, and (d)

22

those individuals who timely and validly exclude themselves from the Class by means of the Opt Out Procedure.

     4.    The following are the "Released Claims" as defined in the Settlement Agreement as well as the related definition of "Post-Withdrawal Medical Consultation":

    "Released Claim" means any and all known or unknown economic injury claims, demands, actions, suits, causes of action, damages whenever incurred whether compensatory or exemplary, liabilities of any nature or under any theory or statute whatsoever, including costs, expenses, penalties and attorneys' fees, in law or equity, that any Class Members who has not timely excluded themselves from the Class, whether or not they object to the settlement, ever had or now has, directly, representatively, derivatively or in any capacity, arising out of or in any way connected with the purchase of Vioxx in the United States (except for purchases made while a resident of the State of Missouri covered by the class previously certified by the Circuit Court of Jackson County, Missouri in the *Plubell* case), including, but not limited to, (i) any and all expenditures of, or costs and losses incurred by, the Class Members in connection with a Post-Withdrawal Medical Consultation, including but not limited to, the costs of such medical consultation and Vioxx-related diagnostic testing, and (ii) the allegations contained in the MDL 1657 Purchase Claims Master Class Action Complaint dated August 1, 2005 and all Related Actions. The Released Claims do not include any claims for personal injury or death or claims derivative of such claims, nor does this Settlement revive any such claims.

    "Post-Withdrawal Medical Consultation" means any office visit to a licensed physician to obtain advice regarding the Class Members' own use of Vioxx and/or to discuss discontinuing the use of Vioxx and possible alternative treatments for that Class Members and that occurred following September 30, 2004, which is when Vioxx was withdrawn from the market, and prior to November 30, 2004. Further, the term Post-Withdrawal Medical Consultation includes any reasonable and necessary diagnostic testing that is solely the result of the Class Members' use of Vioxx and recommended by the Class Members' physician at the Post-Withdrawal Medical Consultation, performed as a result of such recommendation, and occurred after September 30, 2004 but prior to November 30, 2004 ("Vioxx-related diagnostic testing"). However, the definition of Post Withdrawal Medical Consultation

23

does not include any office visits or diagnostic testing occurring during the period from September 30, 2004 through November 30, 2004 that had been scheduled or recommended by the Class Members' physician or licensed prescriber prior to September 30, 2004.

5.     The capitalized terms used above and elsewhere in this order and judgment shall have the following meanings:

"Class Members" or "Settlement Class Members" means all natural persons (or, in the case of minority, death or incapacity, their legal guardians or representatives) in the Class who do not exclude themselves from the Class by the Opt Out Procedure (as defined below) in accordance with FED. R. CIV. P. 23(c)(2) and the procedures set forth in the Notice.

"Opt Out Procedure" shall mean the process for all natural persons (or, in the case of minority, death or incapacity, their legal guardians or representatives) to exercise their right to exclude themselves from the Class in accordance with FED. R. CIV. P. 23(c)(2) and the procedures set forth in the Notice.

"Opt Outs" shall mean those natural persons (or, in the case of minority, death or incapacity, their legal guardians or representatives) included in the Class definition, but who have timely and properly exercised their right to exclude themselves from the Class under the Opt Out Procedure, and therefore are no longer Class Members.

"United States" means the United States of America including the fifty States of the United States, the District of Columbia, and the territories, possessions, and commonwealths of the United States.

6.     Specifically, the Court finds, for settlement purposes only, that the Class described above satisfies the following factors of Rule 23(a) and Rule 23(b)(3).

7.     In the interest of clarity, the Court reiterates that it makes the above findings set forth above regarding certification of the Class only for the purposes of settlement under Rule 23(e).

8.     The Court reconfirms the appointment of the Class Representative Sherrill Herke.

24

9.      The Court grants final approval under Rule 23(e) to the proposed Settlement Agreement dated July 22, 2013 (Rec. Doc. 64501-3), as fair, adequate, and reasonable and in the best interests of the Class, satisfying Rule 23(e) and the fairness and adequacy factors of the Fifth Circuit, as discussed at length above.

10.     Only four objections to the settlement were submitted. The Court has reviewed and considered them on the merits, as an aid to its independent evaluation, and the Court finds that the substance of the few objections to the proposed Settlement are without merit in light of the substantial evidence of the fairness, adequacy, and reasonableness of the proposed Settlement. Additionally, there were only three timely opt-outs. Those opting out were Class Members Wardell Harris, Jr., Henrietta Morris, and Sheila Martin.

11.     The Court holds that the Notice and Notice plan as carried out satisfy the requirements of Rule 23(e) and due process. This Court has previously held the Notice and Notice plan to be the best practicable under the circumstances. (Rec. Doc. 64526). The Court finds that the multipronged notice strategy implemented has successfully reached the putative Class, thus constituting the best practicable notice and satisfying due process.

12.     The Court holds that the notice provisions set forth under the CAFA, 28 U.S.C. § 1715, were complied with in this case.

13.     The Court reconfirms the appointment of Russ Herman, of Herman, Herman & Katz, LLC, and Elizabeth J. Cabraser, of Lieff Cabraser Heimann & Bernstein, as co-lead Class Counsel for the putative Class and are appointed as Class Counsel for the Settlement Class.

14.     The Court reconfirms the appointment of the Claims Administrator.

15.     The "Released Claims, as defined below, of any and all Class Members are

**HEREBY DISMISSED** with prejudice against all "Released Persons," as defined below:

"Released Claims" means any and all known or unknown
economic injury claims, demands, actions, suits, causes of action,
damages whenever incurred whether compensatory or exemplary,
liabilities of any nature or under any theory or statute whatsoever,
including costs, expenses, penalties and attorneys' fees, in law or
equity, that any Class Members who has not timely excluded
themselves from the Class, whether or not they object to the
settlement, ever had or now has, directly, representatively,
derivatively or in any capacity, arising out of or in any way
connected with the purchase of Vioxx in the United States (except
for purchases made while a resident of the State of Missouri
covered by the class previously certified by the Circuit Court of
Jackson County, Missouri in the *Plubell* case), including, but not
limited to, (i) any and all expenditures of, or costs and losses
incurred by, the Class Members in connection with a Post-
Withdrawal Medical Consultation, including but not limited to, the
costs of such medical consultation and Vioxx-related diagnostic
testing (all as defined below), and (ii) the allegations contained in
the MDL 1657 Purchase Claims Master Class Action Complaint
dated August 1, 2005 and all Related Actions. The Released
Claims do not include any claims for personal injury or death or
claims derivative of such claims, nor does this Settlement revive
any such claims.

"Released Persons" means Merck, Sharp & Dohme, Corp.
f/k/a Merck & Co., Inc. ("Merck"), its parent companies, affiliate
companies, subsidiary companies, and the past, present and future
officers, directors, shareholders, employees, predecessors, parents,
subsidiaries, insurers, agents, servants, successors, trustees,
representatives, heirs, executors, and assigns of all of the foregoing
Persons and entities, including all suppliers, distributors,
wholesalers, and retailers of Vioxx, as well as any physicians,
medical facilities, and pharmacists who were in any way involved
in, or within the chain of distribution of, the purchase of Vioxx by
a Representative Plaintiff or Settlement Class Members.

"Post-Withdrawal Medical Consultation" means any office
visit to a licensed physician to obtain advice regarding the Class
Members' own use of Vioxx and/or to discuss discontinuing the
use of Vioxx and possible alternative treatments for that Class
Members and that occurred following September 30, 2004, which

26

is when Vioxx was withdrawn from the market, and prior to November 30, 2004. Further, the term Post-Withdrawal Medical Consultation includes any reasonable and necessary diagnostic testing that is solely the result of the Class Members' use of Vioxx and recommended by the Class Members' physician at the Post Withdrawal Medical Consultation, performed as a result of such recommendation, and occurred after September 30, 2004 but prior to November 30, 2004 ("Vioxx related diagnostic testing"). However, the definition of Post Withdrawal Medical Consultation does not include any office visits or diagnostic testing occurring during the period from September 30, 2004 through November 30, 2004 that had been scheduled or recommended by the Class Member's physician or licensed prescriber prior to September 30, 2004.

16.     By entry of this final order and judgment, each Class Member, and all other persons and entities claiming by, through, or on behalf of a Class Member, are hereby forever barred and enjoined from commencing, filing, initiating, instituting, prosecuting, maintaining, or consenting to any action against the Released Parties with respect to the Released Claims and forever discharge and hold harmless the Released Parties of and from any and all Released Claims which the Class Member has or may hereafter have.

17.     This final order and judgment notwithstanding, this Court retains continuing jurisdiction over the case, the proposed Settlement, this final order and judgment, the Class Representative, the Class Members, the Claims Administrator, the Common Fund escrow account, the Plaintiffs, and Merck for the purpose of administering, supervising, construing and enforcing this Settlement Agreement and final order and judgment, and supervising the management and disbursement of the Common Fund under the Settlement Agreement.

18.     Pursuant to the All Writs Act, 28 U.S.C. §1651, this Court will retain the authority to issue any order necessary to protect its jurisdiction from any action, whether in state or federal court, that threatens to undermine the settlement in this case and this final order and judgment.

19.     The Court also finds that the negotiated fees set forth in the Settlement Agreement for common benefit attorneys will not exceed 32% of the maximum, with an aggregate maximum amount that shall not exceed $7,360,000, and further that the actual award of fees and litigation expenses to counsel will be made by the Court following an open and transparent process. (*See* Rec. Doc 64501-3).

20.     **FINAL JUDGMENT** is hereby **ENTERED** dismissing with prejudice all Released Claims of the Class against all Released Persons as herein described.

21.     Pursuant to Rule 54(b), the Court determines that there is no just cause for delay and expressly **DIRECTS** the **ENTRY OF JUDGMENT** on all issues contained in this final order and judgment.

New Orleans, Louisiana, this 2nd day of January, 2014.

UNITED STATES DISTRICT JUDGE

28