# EXHIBIT B

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| In re: VIOXX Products Liability Litigation | * | MDL No. 1657 |
|  | * |  |
| This Document Relates to: | * | SECTION L |
|  | * |  |
| State of Utah v. Merck, et al. | * | JUDGE ELDON E. FALLON |
|  | * |  |
|  | * | MAGISTRATE JUDGE |
|  | * | KNOWLES |
|  | * |  |
|  | * |  |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

### AFFIDAVIT OF DAVID R. STALLARD

COUNTY OF  _SALT LAKE_    )
                                              )SS:
STATE OF UTAH                   )

David R. Stallard, being first duly cautioned and sworn, deposes and says on personal

knowledge:

1.  I am a lawyer with bar membership in both Texas and Utah.  I am also a CPA in both

states.

2.  I have personal knowledge of the matters hereinafter stated.

3.  In the summer of 2005, I was the Budget Director and Chief of the Administration

Division for the Utah Attorney General's office.  In that capacity, I reported directly to the

Attorney General, Mark Shurtleff.

4.  I was the first person in the Utah Attorney General's office or the health department

1

to report to Attorney General Shurtleff the possibility of falsity in the submissions of claims to Utah Medicaid by Merck & Co. for the pharmaceutical Vioxx.

5. My information arose out of press reports of the State of Texas filing suit against Merck alleging false advertisement and other actions indicating fraudulent behavior. These press reports were in early or mid July 2005.

6. I took that information to Attorney General Shurtleff. He authorized me to investigate the possibility of fraudulent behavior. This was a task beyond my duties as Budget Director and Administration Division Chief, and I could not devote full time to the investigation. The only actions I had time to do were monitoring what other states were doing and alleging. I did not have the time to do further investigations of Merck activities or statements.

7. In July 2005, I obtained a copy of the Texas complaint. It did allege indications of fraudulent behavior by Merck. I brought those concerns to the attention of Attorney General Shurtleff.

8. At that point, no one in the Utah Attorney General's office knew what causes of action the State might have arising out of the Merck conduct. My notes reflect that the first suggestion of a Utah False Claims Act action was on September 21, 2005. At that time, we did not know if the Utah Consumer Protection Act would also cover this conduct.

9. No one at the Attorney General's office had ever prosecuted a civil pharmaceutical claim on the scale of Vioxx. No one in the institutional memory of the office had ever brought a civil false claims action other than indirectly through NAMFCU multi-state "global" cases. At that time, there was only one attorney in the Medicaid Fraud Control Unit and his background and focus were in criminal prosecutions.

10. It was obvious that if there was a cause of action, the matter was too large for the Attorney General's office to handle.  Beginning in mid-August 2005 and continuing through December 2005, the Attorney General's office interviewed a number of law firms with pharmaceutical expertise.

11. Based upon my notes, on December 4, 2005, we met with prospective counsel Mike Gallagher of Texas.  Mr. Gallagher informed the Attorney General's office of the New England Journal of Medicine article placed by Merck in 2002.  Mr. Gallagher informed us that the Journal was to publish a retraction or clarification of the prior study as Merck had knowingly failed to report three additional heart attacks.  This was the first notice of falsity to the Utah Attorney General's office of Merck's knowing misrepresentations as to the VIGOR study.

12. Based primarily upon the Gallagher information, counsel was retained the first week in January 2006 with suit filed in April 2006.

Further affiant sayeth naught.

_David R. Stallard_

David R. Stallard

SUBSCRIBED AND SWORN TO before me on this _6th_ day of _May_, 2013.

_NOTARY PUBLIC_

NOTARY PUBLIC

My Commission Expires:
_5/11/16_

Notary Public
BONNIE LARSEN
Commission #655881
My Commission Expires
May 11, 2016
State of Utah

3

EXHIBIT C

Randy Baker

Page 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  VIOXX | ) | MDL No. 1657 |
|    Products Liability | ) | |
|    Litigation | ) | SECTION L |
| | ) | |
| | ) | JUDGE ELDON E. FALLOW |
| This Document Relates to: | ) | |
| | ) | MAGISTRATE JUDGE |
|    STATE OF UTAH, | ) | KNOWLES |
| | ) | |
|       Plaintiff, | ) | |
| | ) | |
|    vs. | ) | |
| | ) | |
| MERCK SHARP & DOHME CORP., | ) | |
| | ) | |
|       Defendant. | ) | |
| | ) | |
|    Case No. 09-9336 | ) | |

October 29, 2012

Videotaped deposition of RANDY BAKER, held
in the offices of Steele & Biggs, LLC, 5664 South
Green Street, Salt Lake City, Utah, commencing at
9:22 a.m. on the above date, before Tamera Stephens.

Randy Baker

Page 188

1    things in here that tells me it's not mine.

2        Q    Okay.  Do you know who prepared Exhibit 19, or

3    those portions that you don't recognize?

4        A    Well, the first thing, that all these recipient

5    ID numbers have leading zeros because it is supposed to

6    be, I think, a 10-digit number.  And -- I can't remember

7    whether it's a 10- or 12-digit number, but I know a lot

8    of them have it.  And whenever I do analysis like this,

9    I make sure that it has -- that that leading zero is

10   always taken care of.

11          The second thing that tells me it is not mine

12   is that the diagnosis code is also a text field, and

13   that should be left justified.

14          And the other thing that tells me it is not

15   mine is the provider category service.  Any analysis I

16   did, that's a two-digit field in there with a leading

17   zero.  And there are no leading zeros in there.

18       Q    Do you know --

19       A    And the third thing -- or the next thing that

20   tells me it's not mine is that I never did analysis with

21   a final claim indicator like this.

22       Q    All right.  Do you -- would you have expected

23   that you would have been the person who would have

24   provided the data that would go into Exhibit 19?

25       A    There are others on my staff that could have

Randy Baker

Page 189

1    done it.

2        Q    Now, in December -- you mentioned you had some

3    meetings in '05.  This is December 16, '04.  Could it

4    have been in late December '04 that you were having

5    those meetings?

6        A    I don't recall the dates of those meetings.

7    I'd have to go back and check my calendar.

8        Q    Okay.  You have a calendar that goes back to

9    that time frame?

10       A    I'm not sure how far back my calendar goes,

11   but, you know, if it's there...

12       Q    Okay.

13       A    Probably not, now that I think about it.

14   Because I switched over calendar programs about a year

15   and a half ago, and when I did that --

16       Q    Would you have a -- did you have an electronic

17   or hard calendar back in '04?  Or both?

18       A    It was electronic.

19       Q    In what system?

20       A    I think it was just my own.

21       Q    What type of device did you keep it on?

22       A    An earlier generation of a smartphone.

23       Q    What you are saying is you don't know whether

24   or not you did meet in December of '04?

25       A    Right.

Randy Baker

Page 190

1     Q    You could have?

2     A    I don't know.

3     Q    All right.  I'm asking you, can you rule out

4  that you met with the Attorney General's office in '04?

5          MR. BIGGS:  Objection.  It calls for

6  speculation.

7          Go ahead.

8          THE WITNESS:  I -- without trying to re -- go

9  back and examine my calendar, I don't know that I could

10 say.

11    Q    (BY MR. SALES)  The information contained in

12 Exhibit 19 would have had to come from your office,

13 correct?

14    A    Not necessarily.

15    Q    Okay.  Where else would it come from?

16    A    Well, there are several other people in the

17 Department of Health that had access to the same data.

18    Q    Okay.  Maybe my question was too limiting.

19 When I said "your office," the Medicaid department of

20 the Department of Health --

21    A    Well, there's other people.

22    Q    Okay.  Who else at the Department of Health --

23    A    The Medicaid fraud unit.  They are not part of

24 the Medicaid.  They are part of the state Attorney

25 General's office, but they have access to the entire

Randy Baker

Page 191

1   data warehouse.

2        Q    All right.  I think we are being too fine here.

3   What I'm asking is, the data contained in Exhibit 19

4   would have had to come from the Medicaid database of

5   Utah, correct?

6        A    Yes.

7        Q    All right.  Whether that was somebody in your

8   office or somebody in the Medicaid fraud office or

9   somebody else in the Department of Health, they would

10  have had access to this information in Exhibit 19?

11       A    Correct.  Correct.

12       Q    And what we do know, this is a document that's

13  been produced by Utah Department of Health.  Do you see

14  that in the lower right-hand corner?

15       A    Yes.

16       Q    All right.  That in December of '04 analysis

17  was being done with regard to Vioxx, Celebrex, Bextra

18  potential claims for Medicaid, correct?

19       A    Uh-huh (affirmative).

20       Q    Is that correct?

21       A    Yes.

22       Q    And as you sit here today, you just don't

23  remember whether or not you had input directly into this

24  document or indirectly in this document, correct?

25       A    Correct.  But I tell you for four reasons I did

Randy Baker

Page 192

1   not produce it.

2       Q    That you didn't actually prepare the document

3   you are saying.

4       A    Correct.  Because this is not my reporting

5   format.

6       Q    Right.  But as you sit here today, do you know

7   who did prepare it?

8       A    No.

9       Q    Who else was in your department in December of

10  '04?

11      A    I believe Scott Ellis and John Bromberger --

12      Q    And they were both actuaries?

13      A    -- and Vance Eggers.  People on that

14  organization chart.

15      Q    That reported to you?

16      A    Yes.

17      Q    All right.  Do you know whether or not they had

18  input with the Attorney General's office in December of

19  '04 putting together this information?

20      A    Scott Ellis was being used by the people in

21  pharmacy under the Bureau of Coverage and Reimbursement

22  Policy to assist them with some of the technical things.

23  Whether or not he actually worked on this, I don't know.

24           I'm sorry.  I don't even recall the --

25      Q    Hold on a second.  Time out.  There's not a

Randy Baker

Page 194

1   Attorney General's office, okay?

2       A    Okay.

3       Q    And we will have to take up Mr. Ellis' with

4   counsel.

5            Do you know on Exhibit 19 who selected these

6   diagnosis codes?

7       A    I do not.

8       Q    It says that the search or the query is,

9   "Clients had either Vioxx or Celebrex and had CPT hits

10  for predetermined ICD>9 codes."

11           Do you see that, sir?

12      A    Yes.

13      Q    What does that mean?

14      A    To me what it says is that a previous query had

15  been done to determine who had taken Vioxx or Cel --

16      Q    Celebrex.

17      A    -- Celebrex.  And that they took that list of

18  recipients and queried it against their claim that their

19  diagnosis -- the records related to their diagnosis

20  related to their claims, and anybody who had greater

21  than nine diagnoses, they did a query on that.  And then

22  they matched the two lists.

23      Q    And what does CPT stand for?

24      A    It stands for current physician terminology.

25      Q    Stands for what, I'm sorry?

Randy Baker

Page 197

1           MR. BIGGS:  Objection.  Calls for -- well, it
2    lacks foundation.  And the witness at this particular
3    time has indicated he doesn't know who produced this
4    Exhibit 19.
5           But go ahead.  And you can answer the question.
6           THE WITNESS:  Please ask it again.
7    Q    (BY MR. SALES)  Yes, sir.  You can't tell from
8    Exhibit 19 whether or not someone had some event that
9    was causally related to taking a particular drug based
10   upon the data in Exhibit 19, correct?
11   A    I cannot just look at this table and make any
12   of those conclusions.
13   Q    Have you ever -- do you recall having
14   discussions or being asked to query the database for
15   certain diagnosis codes related to cardiovascular
16   events?
17   A    Yes.
18   Q    By whom?
19   A    It was done under several things.  I do
20   remember once that -- well, several times.  We did it in
21   relation to pricing of DRG hospital inpatient things
22   because that's where the large cardiovascular cases end
23   up is in the hospital, which is your, you know, large
24   dollars being paid out.  So we were looking --
25   Q    All right.  Let me clarify my question.  I

Randy Baker

Page 207

1    indicates how many units were provided in the

2    prescription, and it's just adding them up.

3        Q    What is -- do you have any understanding as to

4    what HICL sequence number is?

5        A    That is a number found in the drug master.  And

6    the HICL sequence number means -- I don't understand the

7    whole numbering system, but I know what it's supposed to

8    do.  It's representing that the drugs have the same kind

9    of chemical in them.  So all the drugs that have the

10   same HICL number, you know, are of the same drug class,

11   same chemical elements in them, and so forth.

12       Q    Do you know why the State of Utah Department of

13   Health and/or subdivision of Medicaid wanted Exhibits 19

14   and 20 prepared?

15       A    I do not.

16       Q    And do you know who all they were provided to?

17       A    I do not.  Do not know who prepared them, why

18   they were prepared, or who they were prepared for.

19       Q    But you do know that they were produced by the

20   Department of Health of Utah and were dated in December

21   of '04 and April 5 of 2005 respectively?

22       A    Based upon the assumption that only those

23   people who have access to those data are those people

24   who are privileged to by the department.

25       Q    But you talked about the data was available in

EXHIBIT D

Parke, Duane

Page 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

_____

In Re:  VIOXX Products          )
Liability Litigation            )
                                )   MDL No. 1657
This Document Relates to:       )
                                )   Videotaped
STATE OF UTAH                   )   Deposition of:
                                )
v.                              )   DUANE PARKE
MERCK SHARP & DOHME CORP.       )
                                )
Case No. 09-9336                )
_____

November 9, 2012
9:35 a.m.

Location:  Steele and Biggs
5664 South Green Street
Salt Lake City, UT  84123

Reporter:  Teri Hansen Cronenwett
Certified Realtime Reporter, Registered Merit Reporter

Golkow Technologies, Inc.

877.370.3377 ph/917.591.5672 fax

deps@golkow.com

Parke, Duane

Page 226

1        Q.   All right.

2        A.   So that was -- that's not a column that I'm

3    really good at.

4        Q.   Okay.  So even having looked at Exhibit 20

5    today and having visited with counsel for the State

6    about Exhibit 20 earlier this week, it doesn't trigger

7    any recollection from you as to how this report was

8    generated, whether you were involved, what the data

9    mean, et cetera?

10       A.   No.  And then the -- you know, the line No. 1

11   includes all the Coxes, and line No. 6 specifies just

12   Celebrex.  So, you know, the -- there's a conflict right

13   there before you get to any data.

14       Q.   Well, even given your experience with the data

15   warehouse in your time at Department of Health, you

16   would need more information before you could unpack

17   what's in part of Exhibit 20, correct?

18       A.   Yeah.  I told -- I don't know what -- to what

19   end this is, is, other, other than a basically numerical

20   listing of clients.

21            (Deposition Exhibit No. 21 was marked.)

22       Q.   (By Mr. Ismail)  Do you recognize Exhibit 21,

23   sir?

24       A.   I ought to.  It's the layout that I use, but I

25   don't recognize it.

EXHIBIT E

## Josephson, Richard

| | |
|---|---|
| **From:** | Josephson, Richard |
| **Sent:** | Friday, February 08, 2013 2:20 PM |
| **To:** | 'jwsteele5@att.net' |
| **Cc:** | 'Kenneth Lougee'; Kay Hanson; Lewis, Elizabeth |
| **Subject:** | FW: Utah v. Merck:  30(b)(6) notice |

Attached please find a draft 30(b)(6) notice.  Please provide me with available dates for a witness who can testify regarding the topics set forth in the notice.

Thanks,

Richard



EXHIBIT F

## Josephson, Richard

| | |
|---|---|
| **From:** | Josephson, Richard |
| **Sent:** | Friday, March 22, 2013 10:08 AM |
| **To:** | 'jwsteele5@att.net' |
| **Cc:** | Kenneth Lougee; Lewis, Elizabeth |
| **Subject:** | Utah v. Merck:  30(b)(6) notice |
| **Attachments:** | Utah- 30(b)(6) deposition notice HOU02 1266708 1.DOC |

Joe,

I write to follow up on the status of dates for a 30(b)(6) witness.  On February 8, I originally requested dates for a 30(b)(6) witness.  I provided you more information regarding this issue on February 20.  Now, over a month later, I still have not received dates for this 30(b)(6) witness' deposition.

As a reminder, I attach a copy of the 30(b)(6) notice.

Please provide me with dates as soon as possible or I will be forced to notice the deposition.

Thanks,

Richard

---

**From:** Baumgartner, Linda **On Behalf Of** Josephson, Richard
**Sent:** Wednesday, February 20, 2013 12:57 PM
**To:** 'jwsteele5@att.net'
**Cc:** 'kennethlougee@att.net'; 'kay@sjatty.com'; Lewis, Elizabeth
**Subject:** FW: Utah v. Merck: 30(b)(6) notice

Please find Mr. Josephson's e-mail and attachments which were previously returned because of size limitations.

---

**From:** Josephson, Richard
**Sent:** Wednesday, February 20, 2013 9:09 AM
**To:** 'jwsteele5@att.net'
**Cc:** 'Kenneth Lougee'; Kay Hanson; Lewis, Elizabeth
**Subject:** FW: Utah v. Merck: 30(b)(6) notice

Joe,

Attached are the documents referenced in the 30(b)(6) notice, which were produced by the State of Utah to Merck.

We previously asked both Randy Baker and Tim Morley about these documents, during their depositions, but neither witness expressed much familiarity with the documents.  We simply are looking for a witness who can testify about these documents, including about the creation or drafting of these documents, the reason and timeframe for creating the documents, and any communications, meetings, discussions, or correspondence related to these documents, as set forth in more detail in the notice.

I look forward to hearing from you regarding dates for a witness on the topics set forth in the notice.

Thanks,

Richard

---

**From:** jwsteele5@att.net [mailto:jwsteele5@att.net]
**Sent:** Friday, February 08, 2013 4:13 PM
**To:** Josephson, Richard
**Subject:** Re: Utah v. Merck: 30(b)(6) notice

## Richard--if it's not too much trouble, can you tell me in English what you are looking for wisdom on?

## Joseph W Steele V

## Steele & Biggs

---

**From:** "Richard.Josephson@bakerbotts.com" <Richard.Josephson@bakerbotts.com>
**To:** jwsteele5@att.net
**Cc:** kennethlougee@att.net; kay@sjatty.com; elizabeth.lewis@bakerbotts.com
**Sent:** Fri, February 8, 2013 1:20:06 PM
**Subject:** FW: Utah v. Merck: 30(b)(6) notice

Attached please find a draft 30(b)(6) notice.  Please provide me with available dates for a witness who can testify regarding the topics set forth in the notice.

Thanks,

Richard

**Confidentiality Notice:** The information contained in this email and any attachments is intended only for the recipient[s] listed above and may be privileged and confidential. Any dissemination, copying, or use of or reliance upon such information by or to anyone other than the recipient[s] listed above is prohibited. If you have received this message in error, please notify the sender immediately at the email address above and destroy any and all copies of this message.

EXHIBIT G



E-SERVICE
52225867
May 10 2013
11:53AM
File & ServeXpress

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

|  |  |
|---|---|
| * | |
| * | |
| In re: VIOXX Products Liability Litigation * | MDL No. 1657 |
| * | |
| This Document Relates to: * | SECTION  L |
| * | |
| STATE OF UTAH * | JUDGE ELDON E. FALLON |
| * | |
| v. * | MAGISTRATE JUDGE KNOWLES |
| * | |
| MERCK SHARP & DOHME CORP. * | |
| * | |
| * | |
| Case No. 09-9336 * | |

* * * * * * * * * * * * * * * * * * * * * * * *

## NOTICE OF INTENTION TO TAKE ORAL AND VIDEOTAPED DEPOSITION

Please take notice that pursuant to Federal Rule of Civil Procedure 30(b)(6), Merck Sharp & Dohme Corp. will take the deposition of the corporate representative of the State of Utah concerning each of the matters identified in Exhibit A, which is attached hereto.  The deposition will be taken on May 21, 2013 beginning at 9:30 a.m., and will continue until completion.  The deposition will be taken before a certified court reporter and may be videotaped.  The deposition will take place at the offices of Steele and Biggs, 5664 South Green Street, Salt Lake City, Utah 84123.

Respectfully submitted,

BAKER BOTTS L.L.P.

By:   /s/Richard L. Josephson
      _____

Richard L. Josephson
State Bar No. 11031500
Federal Bar No. 04614
910 Louisiana Street
Houston, Texas 77002
Telephone:  (713) 229-1234
Facsimile:  (713) 229-1522

ATTORNEYS FOR MERCK SHARP &
DOHME CORP.


/s/ Dorothy H. Wimberly
_____
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
Stone Pigman Walther Wittmann L.L.C.
546 Carondelet Street
New Orleans, LA 70130
Telephone:  (504) 581-3200
Facsimile: (504) 581-3361

DEFENDANTS' LIAISON COUNSEL

2

## <u>CERTIFICATE OF SERVICE</u>

I further certify that the above and foregoing has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail, upon Liaison Counsel Ann Oldfather by e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8C, on this 10th day of May, 2013.

<u>*/s/ Dorothy H. Wimberly*</u>
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:      504-581-3361
dwimberly@stonepigman.com

Defendants' Liaison Counsel

3

**EXHIBIT "A"**

**TOPICS FOR 30(B)(6) WITNESS**

1.  The creation or drafting of UDOH0163240-UDOH0163349, including identifying all individuals involved in creating or drafting UDOH0163240-UDOH0163349, the reason for creating or drafting UDOH0163240-UDOH0163349, all communications, meetings, discussions, or correspondence related to UDOH0163240-UDOH0163349, and the timeframe for the creation or drafting of UDOH0163240-UDOH0163349.

2.  The person most knowledgeable regarding the contents of UDOH0163240-UDOH0163349.

3.  The creation or drafting of UDOH0163350 including identifying all individuals involved in creating or drafting UDOH0163350, the reason for creating or drafting UDOH0163350, all communications, meetings, discussions, or correspondence related to UDOH0163350, and the timeframe for the creation or drafting of UDOH0163350.

4.  The person most knowledgeable regarding the contents of UDOH0163350.

EXHIBIT H

**Josephson, Richard**

| | |
|---|---|
| **From:** | Stephen Behnke <sbehnke@legaldayton.com> |
| **Sent:** | Thursday, May 16, 2013 1:33 PM |
| **To:** | Josephson, Richard |
| **Cc:** | Joe Steele |
| **Subject:** | 30(b)(6) Deposition |

We are in receipt of your notice of intention to take deposition pursuant to FRCP 30(b)(6), filed on May 10, 2013, concerning the person with most knowledge of certain documents identified in Exhibit A to the Notice.

The State has conducted an exhaustive review and spoken with numerous people.  We have determined that the only person who has any knowledge about this matter is named Brenda Strain, who died last July.  In reality, the living person with the most knowledge is Duane Parke, and he knows very little, if anything, about these documents as he previously testified.

As you know, Duane Parke already testified at great length about any and all information he has regarding this issue.  In essence, then, you have already completed your Rule 30(b)(6) deposition.  We are also willing to execute a stipulation that Parke's testimony was given as if he was testifying as a 30(b)(6) deponent concerning the documents stated in Exhibit A to your Notice of Intention,  With that, we have complied with our duty to investigate to determine the proper person to produce in response to your Rule 30(b)(6) notice.  We have also complied with the notice since that person has already testified to the issues set forth in the Notice.

Please let us know if you are willing to withdraw your Rule 30(b)(6) deposition.  If not, we will file a Motion for Protective Order.

Thank you,

Steve Behnke


Stephen D. Behnke
Wright & Schulte, LLC
812 East National Road, Suite A
Vandalia, Ohio  45377
(937) 435-7500
(937) 435-7511 (fax)
sbehnke@legaldayton.com

EXHIBIT I

Alex Yei

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

_____
                                )
In Re: VIOXX Products           )MDL No.1657
Liability Litigation            )
                                )SECTION L
This Document Relates to:       )
                                )JUDGE ELDON E. FALLON
STATE OF UTAH                   )
                                )MAGISTRATE JUDGE KNOWLES
            v.                  )
                                )Videotaped 30(b)(6)
MERCK SHARP & DOHME CORP.       )Deposition of:
                                )State of Utah
Case No. 09-9336                )with representative
_____)ALEX YEI

September 11, 2013
4:32 p.m.

Location: Steele and Biggs
5664 South Green Street
Salt Lake City, Utah 84123
Reporter:  Susan S. Sprouse

Alex Yei

Page 29

1      Q.   Who requested her or anybody else to your

2   knowledge to prepare the document?

3      A.   That I could not tell you.

4      Q.   Have you done anything to investigate or to

5   inquire of any people at the Department of Health or the

6   Attorney General's Office to be able to answer the

7   question as to who created or drafted Exhibit 2?

8      A.   No, I have not.

9      Q.   You understand that you've been designated as

10   the person knowledgeable to be able to answer that

11   question?

12      A.   Correct.

13      Q.   But you can't answer that question?

14      A.   No, I cannot answer that question because

15   unfortunately the document does not have -- is not

16   attached to any person.  It doesn't have any heading that

17   would have allowed it to list the author of the report and

18   so I cannot give you anything but speculation as to who

19   actually ordered that.

20      Q.   Were you provided prior testimony about this

21   document?

22           MR. SCHULTE:  Objection.  Go ahead and answer.

23      A.   In reference to?

24      Q.   Mr. Baker, for example.  You were not provided

25   his deposition?

Alex Yei

Page 31

1        Q.   You see the title of this document as

2   "Vioxx/Celebrex/Bextra Potential Claim for Medicaid"?

3        A.   Correct.  Yes.

4        Q.   Have you ever prepared a document about with a

5   drug name and it says, "Potential claim for Medicaid

6   before"?

7        A.   We've looked at utilization review of Medicaid

8   services and I have asked for reports.  I had asked for

9   reports.  I do not recall seeing this exact combination.

10  But as part of our job requirements, we do look at

11  utilization and review of services.

12       Q.   Objection.  Nonresponsive.  Have you ever

13  prepared a document that was titled a drug and then says

14  "Potential claim for Medicaid"?

15       A.   I have not prepared it personally.

16            MR. LOUGEE:  Here David.

17       Q.   Do you know who would have prepared -- who would

18  have requested an analysis of a potential claim for

19  Medicaid for Vioxx, Celebrex and Bextra?

20       A.   A list of potential people or individuals who

21  may have asked for information, or are you asking for a

22  specific person?

23       Q.   I'm asking you, do you know as the 30(b)(6)

24  person supposedly knowledgeable about this topic, doing

25  whatever investigation is necessary to be able to answer

Alex Yei

Page 32

1    these topics, do you know who requested a report be done

2    titled "Vioxx/Celebrex/Bextra Potential Claim for

3    Medicaid"?

4         A.   No.

5              MR. SCHULTE:  Objection.  Go ahead and answer

6    the question.  I think you've reminded him four times that

7    he's the person most knowledgeable.  I think he

8    understands that by now.

9              MR. SALES:  Well, he may understand it, but he's

10   not knowledgeable about the documents.

11             MR. SCHULTE:  Well, you're asking him for

12   something from 2004.

13             MR. SALES:  It's a 30(b)(6) reg.  You know it.

14             MR. SCHULTE:  Yeah.

15        Q.   Mr. Yei, answer my question, please.

16        A.   It could have come from a variety of individuals

17   within the Medicaid area:  Program and drug utilization

18   review or any type of review for Medicaid services.  It's

19   an issue that can be brought up by our Medicaid -- the

20   Medicaid operations area.  It could be brought up by drug

21   utilization review panels.  It could be brought up by

22   prior authorization areas.

23             So for this specific report, which is not listed

24   as to date and time when the report was created, and the

25   information provided, it's limited information on this

Alex Yei

Page 39

1    reason.  It is for utilization review of services.  And

2    that's what it is for.

3         Q.   I thought you just said it would be total

4    speculation since you don't know who prepared it --

5         A.   You asked why this was created.  Now those are

6    two different questions that you are asking.  If you asked

7    the reasons for creating these types of reports, which is,

8    you can't say specifically on this exact report, but if

9    you are asking me as a person that has knowledge on these

10   reports, I can clearly answer that question if you would

11   allow me to answer it.  However, if you do not want me to

12   answer that question related to the reason why reports

13   like this are created, then, of course, I'm -- I'm -- I

14   won't answer it because you don't want me to, but --

15        Q.   I want you to answer the question simply about

16   what we are here about, and that is Exhibit 2, yes or no,

17   you know the reason this document was requested to be

18   prepared and was prepared?

19        A.   No, I do not know the exact reason why this

20   report was created.

21        Q.   One of the reasons that you could use this

22   report or this report could be requested, would be for

23   purposes of litigation, correct?

24        A.   That I cannot answer.  It would be speculative

25   to say that you could use it for litigation.

Alex Yei

Page 71

1        Q.   Looking at topic three, it says, "You are to

2   testify on behalf of the State of Utah as to the creation

3   or drafting of," and it gives the Bates No. 163350 who is

4   Exhibit 2 -- three to your deposition, correct?

5        A.   Correct.

6        Q.   Do you know who created or drafted Exhibit 3?

7        A.   No, I do not.

8        Q.   Do you know who requested that Exhibit 3 be

9   prepared?

10       A.   No, I do not.

11       Q.   It also asked for the reason for creating a

12   draft in Exhibit 3.  Do you know the reason that Exhibit 3

13   was created or drafted?

14       A.   No, I do not.

15       Q.   It asked for all communications, meetings,

16   discussions or correspondence related to Exhibit 3.  Have

17   you determined and are you knowledgeable about the

18   communications, meetings, discussions, or correspondence

19   that relate to Exhibit 3?

20       A.   No, I do not.

21       Q.   It finally asks about the timeframe for the

22   creation of the drafting of Exhibit 3.  Do you have any

23   information about that?

24       A.   No, I do not.

25       Q.   Other than reading Exhibit 3, did you do any

Alex Yei

Page 72

1    investigation to be able to answer those topics?

2         A.   I do not recognize this document, nor could I

3    determine where it came from or who created it, or the

4    reason behind it.  This was not something that came out of

5    my area.  So I was unable to identify it.

6         Q.   So is the -- other than looking at it and not

7    being able to identify it, did you do any investigation to

8    be able to knowledgeably testify under oath about it?

9         A.   I did not have access to any type of

10   information.  I did look at it, but have no access to any

11   information that would support any reasoning behind this.

12        Q.   Did you ask for any such background information

13   to be able to testify about it?

14        A.   No, because I had no idea where it came from.

15        Q.   Did you interview any witnesses, read any

16   depositions, conduct any investigation with or without

17   assistance of counsel to be able to knowledgeably testify

18   about topic three?

19        A.   No.

20        Q.   Do you know anything about Exhibit 3?

21        A.   No, I do not.

22        Q.   Do you know why you were designated to talk, to

23   discuss topic three?

24        A.   Um, I can't explain the reason.  I mean, I was

25   asked to look at this document, and I looked at the

EXHIBIT J

# BAKER BOTTS LLP

| | | |
|---|---|---|
| ONE SHELL PLAZA | ABU DHABI | **HOUSTON** |
| 910 LOUISIANA | AUSTIN | LONDON |
| HOUSTON, TEXAS | BEIJING | MOSCOW |
| 77002-4995 | BRUSSELS | NEW YORK |
| | DALLAS | PALO ALTO |
| TEL  +1 713.229.1234 | DUBAI | RIO DE JANEIRO |
| FAX +1 713.229.1522 | HONG KONG | RIYADH |
| BakerBotts.com | | WASHINGTON |

September 23, 2013

Travis Sales
TEL +1713.229.1378
FAX +1 713.229.7878
travis.sales@bakerbotts.com

BY E-MAIL

Richard W. Schulte
Wright & Schulte, LLC
812 E. National Road
Vandalia, Ohio 45337
rschulte@yourlegalhelp.com

Kenneth M. Lougee
Steele & Biggs L.L.C
5664 South Green Street
Salt Lake City, Utah 84123

Re:   Inadequate Rule 30(b)(6) Deposition Given by Mr. Alex Yei

*State of Utah v. Merck Sharp & Dohme Corp.*, MDL Docket No. 1657, Case No. 06-432, In the United States District Court for the Eastern District of Louisiana.

Dear Rick & Ken:

This letter is in follow-up to the 30(b)(6) deposition of the State of Utah we took on September 11, 2013. As you know, Merck had been trying to schedule this important deposition for many months and consented to move the date to accommodate the schedule of Utah's selected witness, Alex Yei. The deposition notice called for a government representative to answer basic questions about only two documents that had been produced by Utah with Utah Department of Health bates numbers (UDOH0163240-UDOH0163349 and UDOH0163350). Specifically, the 30(b)(6) deposition notice obligated the State of Utah to present a witness who could answer based upon information reasonably available to the State as to who requested the preparation of the documents, who actually prepared them, their purpose, the information contained therein, as well as the communications and meetings related to the documents.

Despite Merck's patience in waiting for this deposition to occur and the fees and expense Merck incurred in traveling to take it, Utah completely failed to produce an informed witness who had conducted the necessary investigation pursuant to Federal Rule of Civil Procedure 30(b)(6). Mr. Yei testified that he had no personal knowledge as to either document. He testified that he did no investigation whatsoever to be able to answer the questions posed by the notice. Indeed, Mr. Yei testified that he spent a grand total of one hour reading the two documents themselves and did not talk to any Utah fact witnesses about them. Thus, unsurprisingly, Mr. Yei testified he would be speculating as to the first document but assumed it was some type of utilization report, and that he could not even speculate about the nature of the second document.

**BAKER BOTTS** LLP

- 2 -                                                    September 23, 2013


        Before seeking Court intervention for Utah's failure to comply with its
obligations under Rule 30(b)(6), Merck is willing to give Utah one more chance to provide basic
information about these documents that were produced among Utah's own files.  Please let us
know as soon as possible if you will produce the metadata associated with the two documents,
including from whose computer they were retrieved, whose custodial files they came from, and
any drafts or transmittals of the documents.   Based upon that information, we can discuss
whether another deposition is needed to address the documents or whether we can avoid a
deposition by obtaining the necessary information in the form of stipulations or sworn discovery
responses.

        If we do not hear from you by September 27, 2013, we will have no choice but to
seek court intervention.

        Thank you for your prompt attention.


                        Sincerely,

                        Travis J. Sales

                        Travis J. Sales


cc:     Andy Goldman

EXHIBIT K

Ned P. Siegfried
Mitchell R. Jensen*
Michael A. Katz
Brad L. Anderson
Randal G. Payne*
Kenneth D. Lougee††
Mark R. Taylor†
Steven Jensen
Brian C. Stewart
Steven J. Johnson
C. Ryan Christensen‡
Taylor R. North
Lauren E. Channell
Todd A. Bradford



# SIEGFRIED & JENSEN

OF COUNSEL
Steele & Biggs

Joseph W. Steele*
David C. Biggs*

OF COUNSEL
Parker & McConkie

Bradley H. Parker
James W. McConkie II
Alex Evans

*Also admitted in California
††Also admitted in Alaska
‡Also admitted in Arizona
†Also admitted in Idaho

October 9, 2013

Travis Sales                                    *Via E-Mail*
BAKER & BOTT
One Shell Plaza
910 Louisiana Street
Houston, Texas 77002-4995

      RE:   *The State of Utah v. Vioxx*
            Rule 30(b)(6) Deposition of Alex Yei

Dear Mr. Sales:

    I am writing to again to follow up concerning the two documents that are subject to your Rule 30(B)(6) deposition. We prepared an earlier letter in response to your request to fully investigate the activities and associates of the deceased Brenda Strain. At the time we believed Brenda Strain to be the most likely author of both documents. We asked the Office of the Inspector General to research information concerning these documents. We also asked the State Pharmacist's Office to check again, and this Office just located the electronic copy of the first of the two documents (the one marked as Exhibit 2 to Alex Yei's deposition). None of the attorneys' offices ever had an electronic copy of this document so this is also our first knowledge of the existence of the electronic copy.

    We have checked the metadata on these documents, and determined that it was created by Duane Parke. If you wish, we can send the electronic document and you can review the underlying metadata as well. The metadata indicates the following about the documents:

        File name: [V.ioxx+Potential+Claim+For+Medicaid - Morley (00324046).XLS]
        a.  Originally created by: Duane Parke
        b.  Date created: 12/16/2004

    Just this morning we were also able to locate an electronic copy of the second document (the one marked as Exhibit 3 to Alex Yei's deposition). As before, none of the

Travis Sales
October 9, 2013

Page 2

attorneys ever had an electronic copy.  This document was created by Duane Parke on April 5, 2005.

    As far as we can tell from the metadata, these documents were never transferred to anyone.  If you wish, we can send the electronic document and you can review the underlying metadata as well.

    You have already deposed Duane Parke and asked him questions about the documents that are the subject of the Rule 30(B)(6) deposition.  With that, then, we hope this matter has resolved to your satisfaction.  However, please do not hesitate to contact me if you require anything else.

                        Sincerely,


                        _____/S/_____
                        Stephen D. Behnke
                        Richard Schulte
                        *Attorneys for the State of Utah*


SDB/kh
cc:    Dawn Barrios

EXHIBIT L

Ned P. Siegfried
Mitchell R. Jensen*
Michael A. Katz
Brad L. Anderson
Randal G. Payne*
Kenneth D. Lougee††
Mark R. Taylor†
Steven Jensen
Brian C. Stewart
Steven J. Johnson
C. Ryan Christensen‡
Taylor R. North
Lauren E. Channell
Todd A. Bradford



# SIEGFRIED & JENSEN

OF COUNSEL
Steele & Biggs

Joseph W. Steele*
David C. Biggs*

OF COUNSEL
Parker & McConkie

Bradley H. Parker
James W. McConkie II
Alex Evans

*Also admitted in California
††Also admitted in Alaska
‡Also admitted in Arizona
†Also admitted in Idaho

October 28, 2013

Travis J. Sales
BAKER BOTTS, LLP
One Shell Plaza
910 Louisiana Street
Houston, TX 77002

      Re:    Vioxx (State of Utah v. Merck)
               Deposition of Alex Yei – September 11, 2013

Dear Mr. Sales:

      Enclosed is a document titled "Corrections to the Deposition of Mathew Alex Yei."

               Sincerely,

               SIEGFRIED & JENSEN

               Sheryl A. Healy
               Paralegal

Enclosure

Corrections to the Deposition of Mathew Alex Yei

1. I have seen the screen shots of the Department of Health concerning the documents I was questioned about at deposition.

2. Those screen shots showed that the author of both documents was Duane Parke, the state Medicaid pharmacist.

3. Duane would have been the logical person to have created those excels spreadsheets.

4. I was informed that Duane at deposition did not recall creating the spreadsheets.

5. The logical person had Duane not created the spreadsheets would have been the deceased Brenda Strain.

6. I was Brenda Strain's supervisor and the logical person to have known of her activities. There was and is no other person at Utah Health Department who would have had greater knowledge than me concerning Brenda's work.

7. I stand by my testimony that the spreadsheets show only a concern about usage.

8. Since Duane created the spreadsheets, I cannot speculate as to any other motives.

9. I note that the spreadsheets were never printed. I stand by my previous testimony that I did not know of any distribution of the spreadsheets.

Signed

Mathew Alex Yei



GLOBAL LITIGATION SERVICES

September 25, 2013

Kenneth D. Lougee, Esquire
SIEGFRIED & JENSEN
5664 South Green Street
Salt Lake City, Utah 84123

      Re:    Vioxx (State of Utah v. Merck)
               Deposition of Alex Yei – September 11, 2013

Dear Mr. Lougee,

Enclosed please find a copy of the deposition transcript in the above-referenced matter. Kindly have the witness review the copy, note any corrections on the errata sheet provided within the transcript, and sign the acknowledgment page.

Please forward the transcript, errata sheet and the acknowledgement page within 30 days from receipt of this letter directly to:

      Travis J. Sales, Esquire
      BAKER BOTTS, LLP
      One Shell Plaza
      910 Louisiana Street
      Houston, Texas 77002

Please also provide a copy of the signed acknowledgment page and errata sheet to our attention for our records.

If you should have any questions, please do not hesitate to contact us.

Sincerely,

Production Department
production@golkow.com

cc:    Travis J. Sales, Esquire

www.golkow.com | 877.370.DEPS (3377)

OFFICES: Philadelphia (Headquarters) | New York City | Boston | Chicago | San Francisco | Los Angeles
Houston | Miami | New Orleans | Wilmington  Washington, DC | Baltimore

EXHIBIT M

# BAKER BOTTS LLP

| | | |
|---|---|---|
| ONE SHELL PLAZA | ABU DHABI | **HOUSTON** |
| 910 LOUISIANA | AUSTIN | LONDON |
| HOUSTON, TEXAS | BEIJING | MOSCOW |
| 77002-4995 | BRUSSELS | NEW YORK |
| | DALLAS | PALO ALTO |
| TEL  +1 713.229.1234 | DUBAI | RIO DE JANEIRO |
| FAX  +1 713.229.1522 | HONG KONG | RIYADH |
| BakerBotts.com | | WASHINGTON |

December 3, 2013

Travis Sales
TEL +1713.229.1378
FAX +1 713.229.7878
travis.sales@bakerbotts.com

BY E-MAIL

Stephen D. Behnke
Richard W. Schulte
Wright & Schulte, LLC
812 E. National Road
Vandalia, Ohio 45337

Kenneth M. Lougee
Steele & Biggs L.L.C
5664 South Green Street
Salt Lake City, Utah 84123

Re:   October 9 and 18, 2013 Correspondence

*State of Utah v. Merck Sharp & Dohme Corp.*, MDL Docket No. 1657, Case No. 06-432, In the United States District Court for the Eastern District of Louisiana.

Dear Gentlemen:

This letter is in response to your letters dated October 9 and October 18 regarding the Exhibits 2 and 3 to the Yei Deposition. In your correspondence, you claim these documents were created by Duane Parke and that "no attorney or outside counsel ever received or was aware of the contents of either of these documents prior to their production by the State of Utah in this litigation." Your correspondence also claims the "Attorney General lawyers, David Stallard and Wade Farraway, did not know anything about Vioxx until the filing of the Texas AG lawsuit." Given the different responses we have received from the State of Utah about this issue in the deposition of Mr. Parke, the deposition of Mr. Yei, and your recent correspondence, we are requesting the deposition of David Stallard. Please provide dates and times when Mr. Stallard is available for deposition in the coming weeks.

Also, over a year ago we requested the State of Utah provide us with certain documents from Randy Baker. On November 16, 2012 and on January 14, 2013, we requested the State produce Mr. Baker's calendars from 2004 and 2005. I am attaching a copy of our January 14, 2013 correspondence for your review. We have not received an adequate response to this request. Mr. Baker agreed to produce these documents during his deposition. Please provide Mr. Baker's calendars from this time period by December 13.

**BAKER BOTTS** LLP

- 2 -                                                    December 3, 2013

   Meantime, please contact me if you would like to discuss these requests further. Thank you for your prompt attention.

    Sincerely,

    Travis J. Sales

cc: Andy Goldman

EXHIBIT N



# WRIGHT & SCHULTE, LLC

*Law Offices*

**812 E. NATIONAL ROAD**
**SUITE A**
**VANDALIA, OHIO 45377**
**(937) 435-7500**
**FAX (937) 435-7511**
**www.legaldayton.com**

**130 W. 2nd. STREET**
**SUITE 1600**
**DAYTON, OHIO 45402**
**(937) 222-7477**
**FAX (937) 222-7911**
**www.yourohiolegalhelp.com**

**MICHAEL L. WRIGHT +**
**RICHARD W. SCHULTE ***
**STEPHEN D. BEHNKE ***
**JONATHAN C. TURNER**
**LAURA J. MARTIN**
**SHIREEN J. HEBERT ***
**NATHAN J. STUCKEY**
**COREY J. ARTIM**
**DAVID J. SMITH**
**ERIK R. BLAINE*****

* Also admitted in California
** Also admitted in Iowa
*** Also admitted in Kentucky
+ Also admitted in Alabama
+ Also admitted in Florida
+ Also admitted in Georgia
+ United States Patent and
   Trademark Office

December 12, 2013

Travis Sales
Baker Botts, LLP
One Shell Plaza
910 Louisiana
Houston, Texas  77002-4995
VIA ELECTRONIC MAIL ONLY

RE:  October 9 and 18, 2013 Correspondence

*State of Utah v. Merck Sharp & Dohme Corp.*, MDL Docket 1657

Dear Travis:

This letter is in response to your letter of December 3, 2013 in response to our letters of October 9 and 18, 2013. In your first paragraph, you claim that you require the deposition of David Stallard because you have received "different responses from the State of Utah (and deponents) about this issue." I am not clear what "different responses" you have received. I think the testimony, and our letters, have been very consistent that no one remembers anything about these documents. The only item we have been able to clarify through looking at the metadata is that the documents were created by Duane Parke. This fact does not constitute a "different response" and you have not identified any. I only raise this point because the State's attorneys are continuing to expend great time and effort as a consequence of the Defendant's repeated efforts to find something that we have repeatedly stated does not exist.

Next, you have asked for Randy Baker's 2004 and 2005 calendars. My co-counsel reports that they have informed you before that Mr. Baker has no timesheets for his activities in 2004 and 2005. Nonetheless, we again confirmed in writing with Mr. Baker that he has no such documents.

We note that fact discovery has closed. We submitted an affidavit of David Stallard (which is attached) in support of our Motion for Summary Judgment on



**WRIGHT & SCHULTE,LLC**

Travis Sales
Page 2
December 12, 2013

Judicial Estoppel back in mid-May of 2013.  We would note that you closed fact discovery as of May 31, 2013 with the exception of fact witness already noticed and pending, when we asserted it should have continued until the end of June.  You knew of David Stallard before the close of fact witness discovery and chose not to depose him.   Therefore, we are unwilling to produce him for deposition.

      Thank you.

Sincerely,

Stephen D.  Behnke

Attachment

EXHIBIT O

# BAKER BOTTS LLP

|  |  |
|---|---|
| ONE SHELL PLAZA | ABU DHABI  **HOUSTON** |
| 910 LOUISIANA | AUSTIN  LONDON |
| HOUSTON, TEXAS | BEIJING  MOSCOW |
| 77002-4995 | BRUSSELS  NEW YORK |
|  | DALLAS  PALO ALTO |
| TEL  +1 713.229.1234 | DUBAI  RIO DE JANEIRO |
| FAX  +1 713.229.1522 | HONG KONG  RIYADH |
| BakerBotts.com |  WASHINGTON |

January 23, 2014

BY E-MAIL

Travis Sales
TEL +1 713.229.1378
FAX +1 713.229.7878
travis.sales@bakerbotts.com

Stephen D. Behnke
Richard W. Schulte
Wright & Schulte, LLC
812 E. National Road
Vandalia, Ohio 45337

Kenneth M. Lougee
Steele & Biggs L.L.C
5664 South Green Street
Salt Lake City, Utah 84123

Re:     Corporate Representative Deposition

*State of Utah v. Merck Sharp & Dohme Corp.*, MDL Docket No. 1657, Case No.
06-432, In the United States District Court for the Eastern District of Louisiana.

Dear Gentlemen:

This letter is in response to your December correspondence claiming that the State
of Utah is unwilling to produce David Stallard for deposition.  As is clear from our on-going
correspondence, the State is yet to produce a witness to answer the most basic questions
regarding the two documents at issue (Exhibits 2 and 3 to Yei Deposition).  Instead, the State
continues to claim that no one has any knowledge regarding these two documents produced by
the State.  Accordingly, if the State is unwilling to produce Mr. Stallard for deposition, we again
ask that the State present a proper 30(b)(6) witness who has knowledge to answer questions
regarding the two documents produced by Utah and the Utah Department of Health.

As you know, the Court compelled the State to provide a witness on this topic.
The State completely failed to satisfy the Court's order through its designation of Mr. Yei as its
representative on these topics given that (a) Mr. Yei plainly had no information about the
documents at issue, and (b) the State later recanted most of Mr. Yei's testimony on these topics.
Please let me know by close of business on January 27 whether the State will provide such a
witness.  If you are unwilling to produce a proper 30(b)(6) witness, we will have no option but to
compel the Court to again compel such a witness.

Active 14966497.1

**BAKER BOTTS** LLP

- 2 -                                                                January 23, 2014

        Please contact me if you would like to discuss these requests further.  Thank you for your prompt attention.

                      Sincerely,

                      Travis J. Sales

cc:    Andy Goldman

Active 14966497.1

EXHIBIT P

**Cancienne, Michael**

| | |
|---|---|
| **From:** | Stephen Behnke <sbehnke@legaldayton.com> |
| **Sent:** | Monday, January 27, 2014 10:33 AM |
| **To:** | Cancienne, Michael; Kenneth@sjatty.com; rschulte@legaldayton.com; 'Eric Weinberg'; 'Joe Steele External' |
| **Cc:** | AGoldman@goldmanismail.com; Josephson, Richard; Sales, Travis |
| **Subject:** | RE: Utah v. Merck - Correspondence regarding 30(b)(6) deposition |
| **Attachments:** | 1 27 14--Sales.pdf; 2013.10.16 Duane File Screen (00325902).pdf; Duane file image 2.pdf |

Please see attached.

Steve Behnke


Stephen D. Behnke
Wright & Schulte, LLC
812 East National Road, Suite A
Vandalia, Ohio  45377
(937) 435-7500
(937) 435-7511 (fax)


The information contained in this electronic message may contain attorney privileged and confidential information and protected from disclosure. If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution printing or copying of this communication is strictly prohibited. If you have received this communication in error, please erase all copies of this message and its attachments and notify us immediately by replying to the message and deleting it from your computer. Thank you.

**From:** michael.cancienne@bakerbotts.com [mailto:michael.cancienne@bakerbotts.com]
**Sent:** Thursday, January 23, 2014 5:17 PM
**To:** Kenneth@sjatty.com; rschulte@legaldayton.com; sbehnke@legaldayton.com
**Cc:** AGoldman@goldmanismail.com; Richard.Josephson@bakerbotts.com; Travis.Sales@bakerbotts.com
**Subject:** RE: Utah v. Merck - Correspondence regarding 30(b)(6) deposition

Gentlemen,

Please see the attached.

Michael Cancienne
Baker Botts L.L.P.
713.229.6200


**Confidentiality Notice:** The information contained in this email and any attachments is intended only for the recipient[s] listed above and may be privileged and confidential. Any dissemination, copying, or use of or reliance upon such information by or to anyone other than the recipient[s] listed above is prohibited. If you have received this message in error, please notify the sender immediately at the email address above and destroy any and all copies of this message.

December 12, 2013


Travis Sales
Baker Botts, LLP
One Shell Plaza
910 Louisiana
Houston, Texas  77002-4995
VIA ELECTRONIC MAIL ONLY

       RE:     October 9 and 18, 2013 Correspondence
              *State of Utah v. Merck Sharp & Dohme Corp.*, MDL Docket 1657

Dear Travis:

       I am writing this letter in response to your letter dated January 23, 2014.  This is not complicated.  No one has knowledge of these two documents because they are simply not relevant to Utah's claims, as Merck asserts.  Needless to say, entities such as the State of Utah generate many thousands of documents per year.  It is not likely that you will find someone who can testify at great length concerning every single document created, especially if they are not relevant, as here.

       We have already told you that Duane Parke created the documents. We would also remind you that you already deposed Duane Parke and he does not even remember creating the documents.  Merck introduced the documents as Exhibits 20 and 21 to his deposition, where Merck already asked Mr. Parke extensive questions about the documents, as follows:

                         221
5  (By Mr. Ismail)  Mr. Parke, Exhibit 20 is a
 6  printout of some sort that was produced by State of Utah
 7  to Merck in this litigation.  And across the top it
 8  says, "Vioxx, Celebrex, Bextra, potential claim for
 9  Medicaid."  And this particular data run is December
10  16th, 2004.  Do you see that?
11     A.  Yeah.
12     Q.  Do you recognize this document?
13     A.  It was given to me here a -- when they -- a
14  few days ago.
15     Q.  When you met with counsel for the State?
16     A.  Yes, uh-huh.

17     Q.   Prior to your meeting with the State's
18   lawyers, had you seen Exhibit 20 before?
19     A.   I don't recall it.  And it looks like
20   something I would have done.  But, you know, it was
21   clearly done on the data warehouse.
22     Q.   Why do you say it looks like something you
23   would have done?
24     A.   Well, it's the layout that I would typically
25   put, put into a document.

222

1     Q.   What's the data source for Exhibit 20?
2     A.   It would have been the Medicaid data
3   warehouse.
4     Q.   Be the historical claims data for Utah
5   Medicaid?
6     A.   For that time period that's noted.
7     Q.   So the time period here is July 2003 through
8   December 2004, correct?
9     A.   Yes.
10     Q.   And would this cover -- well, do you have
11   firsthand knowledge or personal knowledge of what's
12   contained in Exhibit 20?
13     A.   I have just simply no recollection whatsoever,
14   even though I might have done it.  But I, I thought I
15   was gone by December of '04.  But I don't have a
16   recollection of when I retired the first time either.
17   Just walked out the door and never came back until they
18   hired me back.
19     Q.   I take it you can't tell me the purpose for
20   which Exhibit 20 was prepared?
21     A.   No.
22     Q.   Who requested it or commissioned this
23   analysis?
24     A.   Well, let's look on the last page and see if
25   there's anything there that -- I have no, no clue where

223

1   this is going.
2     Q.   Do you have any knowledge as to how Exhibit 20
3   was put together?
4     A.   Well, any time you did a query on, on the data
5   warehouse, it was -- at least any time I did a query on
6   the data warehouse, it was always on an Excel
7   spreadsheet.  You'd, you'd -- you just could list across
8   the top and what -- down the side what you wanted.  And

9   clearly this is patient specific.
10          And then they've gone out -- after that is the
11   primary sort.  They've gone in and, and -- well, let me
12   say they, they qualified it by looking at Cox-2s.
13      Q.  Can you tell what the search criteria is that
14   got this data run from this document?
15      A.  I don't understand the question.
16      Q.  Well, this is obviously some printout from the
17   larger data warehouse, correct?  Can you determine what
18   query was made to the data warehouse to get this
19   downloaded data?
20      A.  You know, anybody who's proficient in the data
21   warehouse can sit down and put -- ask this query and
22   have it in five minutes.
23      Q.  But what --
24      A.  Whether this is part of a bigger query or not,
25   I don't know.

224

1      Q.  And that's what I'm asking.  What is the query
2   that's reflected?  Can you tell what the query is?
3      A.  It just looks to me like it's just a plain and
4   simple enumeration of client, diagnosis, category of
5   service, and they're -- whether they had a claim or not.
6      Q.  By looking at this document, can you tell what
7   was specifically keyed into the system to get this
8   printout?
9      A.  Well, first off, they would have had to start
10   off by identifying the, the drugs that were under
11   consideration.  And they would have used, I think the
12   HICL, which would give you the -- one HICL gives you
13   all, all of Vioxx.  Another HICL, six-digit code, gives
14   you all the Celebrex.  You can -- you go down, you can
15   step down another and get strengths if you want, but
16   that's a different number entirely.
17          But you -- it looks to me like you would have
18   used three HICLs to identify the drugs under
19   consideration.  And then you would just gone and say,
20   list all patients that had a hit for this time period
21   for these HICLs and their diagnosis and their cat --
22   provider ID or category of service.
23          And then the final claim indicator, yes or no,
24   whether it's paid or not.  I'm not really proficient on
25   going in and getting provider category of service

225

1    because I was told not to go there.  So I don't think
2    this is my document.
3        Q.   All right.  So from what you can glean from
4    Exhibit 20, you don't think you participated in the
5    preparation of this --
6        A.   Huh-uh.
7        Q.   -- correct?
8        A.   Yeah.  Although like I said, until you get
9    down to there, the top part looks like something I'd lay
10   out.  Just -- that's just the way of it.  That's just
11   almost the way everybody would lay it out.
12       Q.   Okay.  But particular columns that are
13   reflected here, those aren't columns that you typically
14   access?
15       A.   I would always typically access the patient ID
16   number on -- if that's what I'm looking for.
17       Q.   Specifically Column C, provider categories?
18       A.   Column A.
19       Q.   Right.  But provider -- Column C is something
20   you typically wouldn't do, right?
21       A.   Yeah.  I'm very uncomfortable with that one,
22   because I've tried to get drugs approved, some of these
23   high tech drugs, by category.  For instance, cancer
24   drugs, you know, should be covered only by oncologists.
25   I got stomped all over by the UMA on that one.  So --

226

1        Q.   All right.
2        A.   So that was -- that's not a column that I'm
3    really good at.
4        Q.   Okay.  So even having looked at Exhibit 20
5    today and having visited with counsel for the State
6    about Exhibit 20 earlier this week, it doesn't trigger
7    any recollection from you as to how this report was
8    generated, whether you were involved, what the data
9    mean, et cetera?
10       A.   No.  And then the -- you know, the line No. 1
11   includes all the Coxes, and line No. 6 specifies just
12   Celebrex.  So, you know, the -- there's a conflict right
13   there before you get to any data.
14       Q.   Well, even given your experience with the data
15   warehouse in your time at Department of Health, you
16   would need more information before you could unpack
17   what's in part of Exhibit 20, correct?
18       A.   Yeah.  I told -- I don't know what -- to what
19   end this is, is, other, other than a basically numerical

20  listing of clients.
21       (Deposition Exhibit No. 21 was marked.)
22    Q.  (By Mr. Ismail)  Do you recognize Exhibit 21,
23  sir?
24    A.  I ought to.  It's the layout that I use, but I
25  don't recognize it.

227
1     Q.  It says Cox-2 Study, April 5, 2005.  Do you
2  see that at the top?
3     A.  Yeah.
4     Q.  Were you still employed by the Department of
5  Health?
6     A.  I don't think so.
7     Q.  Did you review this document in preparation
8  for today?
9     A.  No.
10    Q.  Do you recall ever seeing it before today?
11    A.  No.
12    Q.  Do you have any idea what is reflected on
13  Exhibit 21?
14    A.  Well, it looks like two different quarters a
15  year apart.
16    Q.  Let me ask a different question.  Withdrawn.
17  Do you know how Exhibit 21 was put together?
18    A.  Off the data warehouse.
19    Q.  That's surmising based on the columns here?
20    A.  Yes.
21    Q.  Do you have any personal knowledge about what
22  analysis or study was done to create Exhibit 21?
23    A.  Well, it correlates pretty well with this
24  study here in that this, this does happen to look at
25  Bextra and Vioxx as well as Celebrex, giving you the

228
1  final claim indicator and the total charge for those
2  quarters.
3     Q.  All right.  My question is a little different,
4  not sitting here today and reading it, can you surmise
5  what various columns mean.  My question is whether you
6  recall or have any personal knowledge as to how Exhibit
7  21 was put together.
8     A.  No.  No, I can't.  I'm sorry.
9     Q.  Do you know -- and I take it you can't help us
10  figure out who put Exhibit 21 together or for what
11  purpose?

12      A.   I have no clue right at the moment.
13      Q.   Did anyone ever ask you to run any analyses
14   about claims relating to Vioxx for the purpose of the
15   State's lawsuit against Merck?
16      A.   No.
17      Q.   Remember any conversations about someone else
18   doing that data run?
19      A.   No.

If no one knows anything about a topic than it is not possible to produce the person with the most knowledge.  We cannot do the impossible.  We have asked numerous people about these documents, and no one knows anything about them.  This is not surprising since, as stated in our October 18, 2013 letter, the metadata indicates that these documents were neither printed nor forwarded so no one would have seen them.  (See, copies of screenshots attached with October 18, 2013 letter).

Arguably, Duane Parke would have the most knowledge about these documents because he has created them.  The bottom line is that no one knows anything about these documents, Duane Parke created them, and his deposition would not generate any information not sought in your previous deposition of him.  If you file a Motion to Compel, we will file a Motion for Protective Order outlining all of this.

Thank you.

Sincerely,


Stephen D. Behnke

cc:      Via Electronic Mail Only to:
         Joe Steele, Ken Lougee, Eric Weinberg, Richard W. Schulte
         Michael Cancienne, Andrew Goldman, Richard Josephson