# REVIEW CRITERIA MANUAL FOR THE VIOXX EXTRAORDINARY INJURY PROGRAM

## TABLE OF CONTENTS

**Page**

Introduction ....................................................................................................................1

I.      Summary of Applicable Settlement Agreement Provisions................................1

        A.      MI EI Payments................................................................................1

        B.      IS EI Payments .................................................................................2

        C.      General Provisions ...........................................................................3

II.     The Four Primary Analytical Steps in EI Claims Review .................................4

        A.      MI EI Payments................................................................................4

        B.      IS EI Payments .................................................................................5

III.    Evaluation of Medical Expenses Claims..........................................................6

        A.      General Rules ...................................................................................6

        B.      What Constitutes Medical Expenses? .................................................7

        C.      Past Medical Expenses of the Claimant Not Reimbursed by Others ...................10

        D.      Past Medical Expenses as a Result of the Claimant's Eligible Event(s)...............11

        E.      Required Documentation of Past Medical Expenses .............................................11

        F.      Fix the Medical Expenses Past Measurement Period.............................................12

        G.      Determine the Claimant's Past Medical Expenses Paid and/or
                Due for Each Medical Service ...............................................................................13

        H.      Presumption Used during Evaluation of Past Medical Expenses Claims .............14

        I.      Liens for Medical Expenses. .................................................................................14

        J.      Calculate the Past Medical Expenses Amount ......................................................14

        K.      Process for Explanation of Required Medical Expenses Information ...................15

**Page**

L.    Calculate the AED Medical Expenses Amount ....................................16

IV.   Evaluation of Lost Wages/Income Claims..........................................17

A.    General Rules .........................................................................17

B.    Fix the LWI Past Measurement Period ...................................18

C.    Determine the Claimant's Pre-Event and Post-Event Earnings............................20

D.    Determine Claimant's Disability Level after the Eligible Event ...........................23

E.    Determine if Required Documentation Has Been Provided ...................24

F.    Calculate the Past Lost Wages/Income Amount ....................................28

G.    Calculation of AED LWI ........................................................29

V.    Special Medical Injury Claims...........................................................30

A.    Exclusions from the Special Medical Injury Category ........................30

B.    The Types of Injuries Potentially Compensable as Special Medical Injuries........31

C.    Valuation of Special Medical Injury Claims....................................38

VI.   RPV Adjustment .................................................................................39

A.    The Issue Presented.................................................................39

B.    Relative Points Value Adjustment Formula..........................................39

VII.  Processing of EI Claims .....................................................................40

A.    Claims Administrator Determinations of EI Payments........................40

B.    Second Review by the Claims Administrator ......................................41

C.    EI Appeal to the Special Master.............................................41

VIII. Payment of Individual EI Amounts.....................................................45

**Page**

A.     Timing of EI Payments ...........................................................................................45

B.     Payment Processes ...................................................................................................45

C.     Liens.........................................................................................................................45

ATTACHMENT 1:  REQUIRED DOCUMENTATION

## INTRODUCTION

The Claims Administrator prepared this Review Criteria Manual to inform you of the basic criteria adopted to determine the eligibility of Claimants for Extraordinary Injury Payments and the valuation of those claims.  These criteria will evolve over time as claims are reviewed. The Claims Administrator has discretion to modify these criteria and to apply them as warranted by the particular circumstances of a claim or group of claims, instructions from the Parties to the Vioxx Settlement Agreement, Court Orders and directions, and any events necessitating change to or departure from provisions in the Manual.  Because the criteria can change over time, make sure that you are using the current version of this document as posted on the general Vioxx Settlement website, www.browngreer.com/vioxxsettlement under the Extraordinary Injury Program.  It is also posted on the Extraordinary Injury section of a Primary Counsel's Vioxx Portal.  In addition, the Claims Administrator regularly receives questions about the details of the Extraordinary Injury Program and posts answers to them in the Frequently Asked Questions section of your secure Vioxx Portal or on the general Vioxx Settlement website under the Extraordinary Injury Program.  Please check there for any question not covered in the Manual itself.  If you still have questions, contact the Claims Administrator at claimsadmin @browngreer.com or call 1-866-866-1729.

## I.     SUMMARY OF APPLICABLE SETTLEMENT AGREEMENT PROVISIONS

**A.    MI EI Payments.**

    **1.    Who Can Seek EI Benefits?**

        § 4.2.1:  MI Qualifying Program Claimants may apply to receive MI EI Payments.

    **2.    Cap Amount.**

        § 4.2.2:  MI EI Payments Cap Amount: $195,000,000.

    **3.    Threshold Eligibility.**

        § 4.2.5:  To be eligible to be considered for an MI EI Payment, an MI Qualifying Program Claimant must have a Pre-Special Review Points award in excess of the Special Review Marker (*i.e.*, of 10 points or more; §17.1.84) and:

        (a)    Have Specified Economic Damages of not less than $250,000:

            § 4.2.6.1:  Specified Economic Damages:

            (1)    Vioxx User's Past Medical Expenses to the extent such expenses are:

                (x)  A result of such Vioxx User's Eligible Event(s);

(y)  Documented; and

(z)  Have neither been reimbursed nor are eligible for reimbursement.

AND

(2)     Vioxx User's Past Lost Wages/Income to the extent such lost wages/income are:

(x) A result of such Vioxx User's Eligible Event(s);

(y) Documented; and

(z) Have neither been reimbursed nor are eligible for reimbursement.

OR

(b)     Submit PME Records reflecting an injury that is not adequately reflected by MI injury levels as defined in Ex.3.2.1.

**B.**     **IS EI Payments**.

**1.**     **Who Can Seek EI Benefits?**

§ 4.2.1:  IS Qualifying Program Claimants may apply to receive IS EI Payments.

**2.**     **Cap Amount**.

§ 4.2.3:  IS EI Payments Cap Amount: $105,000,000.

**3.**     **Threshold Eligibility**.

§ 4.2.5:  To be eligible to be considered for an IS EI Payment, an IS Qualifying Program Claimant must have a Pre-Special Review Points Award in excess of the Special Review Marker (*i.e.*, of 2 points or more; §17.1.84) and:

(a)     Have Specified Economic Damages of not less than $250,000 [same § 4.2.6.1 definition as in Section I.A.3.a above];

OR

(b)     Submit PME Records reflecting an injury that is not adequately reflected by the Basic Activities of Daily Living or Instrumental Activities of Daily Living as defined in Ex. 3.2.1.

C.    **General Provisions.**

1.    **Burden of Proof.**

§ 4.2.4:  Each Qualifying Program Claimant shall have the burden of proving to the Claims Administrator's satisfaction such QPC's Specified Economic Damages and, in that connection, may be required by the Claims Administrator to produce further documentation.

2.    **EI Payment Criteria.**

§ 4.2.6:  Each QPC that is eligible for and properly and timely applies for an EI Payment shall (subject to § 4.2.8) receive an EI Payment according to criteria to be determined by the Claims Administrator.

3.    **Relation to Underlying Payments.**

§ 4.2.6:  EI Payments are in addition to § 4.3 Final Settlement Payments.

4.    **Definition of Documented.**

§ 4.2.6.2:  Documented means Medical Records, billing records, tax returns, social security earnings statements, or any other documentation or evidence requested or otherwise found acceptable by the Claims Administrator.

5.    **EI Payment Process.**

§ 4.2.7:

(a)    All determinations on eligibility for an EI Payment and the amount of an EI Payment shall be made by the Claims Administrator.

(b)    The Claims Administrator shall promptly notify each QPC, Merck and the NPC of such QPC's EI Payment determination.

(c)    All EI Payment determinations of the Claims Administrator shall be made according to guidelines to be established by the Claims Administrator in consultation with Merck and the NPC.  EI Payment determinations of the Claims Administrator shall be reviewable or appealable only pursuant to Section VII of this Manual.

6. **Valuation.**

§ 4.2.8:

(a)     The Claims Administrator shall determine EI Payment awards in the first instance without regard to the MI EI Payments Cap Amount or IS EI Payments Cap Amount.

(b)     No EI Payments shall be made until all possible MI EI or IS EI Payment eligibility and awards determinations have been made.

(c)     If the aggregate MI EI Payments or aggregate IS EI Payments exceed the MI Payments Cap Amount or IS Payments Cap Amount, then all EI awards shall be reduced pro rata to the extent necessary so that such aggregate MI EI Payment awards or IS EI Payment awards exactly equal the MI EI Payments Cap Amount or IS EI Payments Cap Amount.

(d)     After completion of the entire process, the Claims Administrator shall pay MI EI Payments and IS EI Payments in accordance with Article 5.

## II.     THE FOUR PRIMARY ANALYTICAL STEPS IN EI CLAIMS REVIEW

A.     **MI EI Payments.**

1.     **Basic Eligibility.**

(a)     An MI Qualifying Program Claimant; with

(b)     Pre-Special Review Points Award of ten Points or more.

(c)     A Claimant will be classified as an MI EI Claimant if the Claimant's Primary Injury on the Claimant's underlying Points Award was an MI Injury.

2.     **Threshold Eligibility.**

(a)     Documented Unreimbursed Past Medical Expenses ≥ $250,000; or

(b)     Documented Unreimbursed Past Lost Wages/Income ≥ $250,000; or

(c)     Combined Documented Unreimbursed Past Medical Expenses *and* Documented Unreimbursed Past Lost Wages/Income ≥ $250,000; or

(d)     Special MI Medical Injury:  PME Records reflecting an injury that is not adequately reflected by the MI Injury Levels.

3.     **EI Valuation**.

This step requires the determination of the Claimant's MI EI Assessment, without regard to the MI EI Payments Cap Amount.

4.     **Pro Rata Adjustment**.

If the total awarded amounts should exceed the MI EI Payment Cap Amount, this step would require the allocation of the MI EI Payments Cap Amount on a pro rata basis among all qualifying MI EI Assessments to determine the Claimant's Individual MI EI Payment Amount.

B.     **IS EI Payments**.

1.     **Basic Eligibility**.

(a)     An IS Qualifying Program Claimant; with

(b)     Pre-Special Review Points Award of two Points or more.

(c)     A Claimant will be classified as an IS EI Claimant if the Claimant's Primary Injury on the Claimant's underlying Points Award was an IS Injury.

2.     **Threshold Eligibility**.

(a)     Documented Unreimbursed Past Medical Expenses ≥ $250,000; or

(b)     Documented Unreimbursed Past Lost Wages/Income ≥ $250,000; or

(c)     Combined Documented Unreimbursed Past Medical Expenses *and* Documented Unreimbursed Past Lost Wages/Income ≥ $250,000; or

(d)     Special IS Medical Injury:  PME Records reflect an injury not adequately reflected by BADL or IADL as defined in Ex. 3.2.1.

3.     **EI Valuation**.

This step requires the determination of the Claimant's IS EI Assessment, without regard to the IS EI Payments Cap Amount.

4.      **Pro Rata Adjustment**.

If the total awarded amounts should exceed the IS EI Payment Cap Amount, this step would require the allocation of the IS EI Payment Cap Amount on a pro rata basis among all qualifying IS EI Assessments to determine the Claimant's Individual IS EI Payment Amount.

## III.  EVALUATION OF MEDICAL EXPENSES CLAIMS

A.      **General Rules**.

1.      **What Constitutes Medical Expenses?**

Medical services and treatments incurred during the Medical Expenses Past or AED Measurement Period as a result of the Claimant's first Eligible Event can qualify as compensable Past Medical Expenses or AED Medical Expenses.

2.      **Required Documentation**.

Claimants must submit documentation such as medical bills, canceled checks, and explanations of benefits which establish that the Claimant has paid or owes Medical Expenses that will not be reimbursed by a third party such as a health insurance provider.

3.      **Fix the Medical Expenses Past Measurement Period**.

The Medical Expenses Past Measurement Period is the period of loss for which Past Medical Expenses claims will be calculated.  The Medical Expenses Past Measurement Period is the period of time from the *later* of the date of the Claimant's first Eligible Event or from the period of loss Start Date identified on the EI Claim Form through 11/9/07 (the Settlement Agreement Execution Date).

4.      **Calculation of Past Medical Expenses Amount**.

The Past Medical Expenses Amount will be calculated by totaling each Allowed Past Medical Expenses entry submitted on the EI Claim Form.  In general, Past Medical Expenses entries will be deemed Allowed if they occurred during the Medical Expenses Past Measurement Period and are reasonably related to the Claimant's first Eligible Event.

5.      **Unreviewable Claims and Required Explanation**.

If the Claims Administrator cannot determine what expenses are being claimed as related to the Claimant's Eligible Event(s), the Claimant's Past Medical Expenses will be considered unreviewable.  The Claims Administrator will notify Primary

Counsel that further explanation of the Past Medical Expenses claim is required. Primary Counsel will be directed to their secure Vioxx Portal to provide the required information.  The explanation must set forth in detail when the Medical Expenses were incurred, for what reason, and where we can find this established in the Claimant's Required Documentation submission.  The Claims Administrator will follow a similar process with a Pro Se Claimant.

      **6.**      **Calculation of AED Medical Expenses Amount.**

If a Claimant qualifies for EI Payments based on Specified Economic Damages of $250,000 or more, such Claimant may assert a claim for additional losses that occurred after the Past Measurement Period.  These additional damages are called Additional Extraordinary Damages ("AED").  The only Medical Expenses that will qualify as AED are those that occur during the AED Measurement Period, which is 11/10/07 (the day after the Settlement Agreement Execution Date) to 9/1/09 (the EI Claim Form Submission Deadline Date).  The AED Medical Expenses Amount will be calculated in the same manner as the Past Medical Expenses Amount.

**B.**      **What Constitutes Medical Expenses?**

      **1.**      **Items Included as Medical Expenses.**

The costs of the following, if proven by Required Documentation, will be included in the calculation of Medical Expenses:

      (1)      Ambulance travel.

      (2)      Emergency room care.

      (3)      Hospital services on an in-patient or out-patient basis from a hospital facility licensed to provide care and treatment for the Eligible Event injury and its consequences (without regard to private room or semi-private room status).

      (4)      Physician charges from a duly licensed practitioner who is recognized by the law of the state in which treatment occurred as qualified to treat the Eligible Event injury and its consequences (other than the Claimant or a member of the Claimant's immediate family).

      (5)      Diagnostic tests (radiology; ultrasound; nuclear medicine; laboratory and pathology services or tests; diagnostic EKGs, EEGs, MRIs, and other scans).

(6)     Medical equipment acquisition, repair and replacement, for equipment with solely a therapeutic purpose (*e.g.*, hospital-type beds; wheelchairs; traction equipment; walkers; crutches).

(7)     Medical devices fitting, adjustment, acquisition, repair and replacement for devices or appliances when prescribed for the activities of daily living (*e.g.*, orthopedic braces; leg, arm, back and neck braces; head halters; catheters and related supplies; orthotics; splints).

(8)     Medical supplies (*e.g.*, oxygen; hypodermic needles and syringes).

(9)     Prescription drugs received through a pharmacy, a physician's office, or a hospital.

(10)    Home health care, consisting of medical and non-medical services provided in the Claimant's residence, if:  (i) prescribed by and provided under the supervision of a physician and (ii) rendered by a licensed home health care provider who is not a member of the Claimant's immediate family.  Home health care does not include homemaker, companion and home delivered meals services.

(11)    Hospice care, consisting of a program of care which coordinates the special needs of a person with a terminal illness or disability, if:  (i) prescribed by and provided under the supervision of a physician and (ii) rendered by a licensed hospice care provider who is not a member of the Claimant's immediate family.

(12)    Rehabilitative therapy, including physical, occupational, speech and cardiac rehabilitative therapy, provided in a rehabilitative facility or by a provider, licensed in the state in which the care was provided to render rehabilitation services, therapy or retraining to enable a patient to walk, communicate, and/or function as a member of society, or for the process of restoring and maintaining the physiological, social and vocational capabilities of the person.

(13)    Infusion therapy, consisting of treatment by placing therapeutic agents into the vein, including intravenous feeding.

(14)    Skilled nursing care in a skilled nursing home facility licensed by the state in which it is operating to provide care that: (i) requires the training and skills of a registered nurse; and (ii) is prescribed by a physician.

(15)    Vision care and services, on an IS EI Payments claim.

(16)   Any other treatment or procedures deemed by the Claims Administrator to be reasonably necessary for the treatment of the Eligible Event and its consequences.

2.   **Exclusions from Medical Expenses.**

The costs of the following will not be included in the calculation of Medical Expenses:

(1)   Funeral expenses.

(2)   Dental services or oral surgery.

(3)   Increases in health and/or life insurance premiums.

(4)   Vision care and services, on an MI EI Payments claim.

(5)   Child care.

(6)   Acupuncture.

(7)   Biofeedback therapy.

(8)   Chiropractic services.

(9)   Over-the-counter medications, convenience, or hygienic items.

(10)   Cosmetic surgery or procedures.

(11)   Education services or examinations that are not part of rehabilitative therapy.

(12)   Experimental procedures.

(13)   Family planning services.

(14)   Maternity services.

(15)   Foot care.

(16)   Hearing services that are not part of rehabilitative therapy.

(17)   Medical equipment, appliances or supplies that have both a non-therapeutic and therapeutic use, such as a telephone or exercise machine.

(18)   Mental heath services that are not part of rehabilitative therapy.

(19)   Substance abuse services.

(20)   Nutrition counseling.

(21)   Obesity care.

(22)   Smoking cessation.

(23)   Sex transformation or sexual dysfunction treatment.

(24)   Diabetic supplies, equipment, and treatment.

(25)    Chemotherapy.

(26)    Wellness services (periodic health assessments, routine laboratory and radiological services, immunizations, and cancer screenings).

(27)    Travel, lodging, or meal expenses incurred while obtaining medical treatment, *except that* travel costs up to $.20 per mile (the IRS rate in effect in 2007 to determine deductibility of medical expenses) can be claimed if explained in the documents submitted as *Past Medical Expenses* documentation.

(28)    Any procedures deemed by the Claims Administrator not to be reasonably necessary for the treatment of the Eligible Event and its consequences.

## C.    Past Medical Expenses of the Claimant Not Reimbursed by Others.

### 1.    Proof by the Claimant Required.

The Claimant must establish: (1) proof of payment by the Claimant of the amounts claimed as Past Medical Expenses; and/or (2) proof of Past Medical Expenses that remain due but have not been paid by the Claimant or a third party. The amounts actually paid and/or due by the Claimant will form the basis of the calculation of the Past Medical Expenses Amount.  If not paid, the amounts claimed must be currently due and owing to be asserted as part of an EI claim. No Claimant may seek EI Payments for any Medical Expenses that the Claimant will not pay or will have no legal obligation to pay.

### 2.    Exclusions from Past Medical Expenses for Amounts Paid by Others.

Past Medical Expenses cannot include any amounts paid by Other Coverage.  The following constitute Other Coverage:

(1)    Private health insurance.

(2)    Employee benefit plans (ERISA).

(3)    Union health plans.

(4)    Medicare.

(5)    Medicaid.

(6)    Other governmental agencies or programs.

(7)    Other third parties (family members or friends; charities) or any source determined by the Claims Administrator to have paid for or reimbursed Claimant for health care expenses.

**D.**     **Past Medical Expenses as a Result of the Claimant's Eligible Event(s).**

    **1.**     **General Causation Requirement.**

        A Claimant can be awarded Past Medical Expenses as Specified Economic Damages only if they resulted from medical care during the Medical Expenses Past Measurement Period for cardiac or stroke-related care.

    **2.**     **Claims Administrator Review.**

        The Claims Administrator will review the claim submissions to assess whether it is more likely than not that the expenses claimed resulted from medical care during the Medical Expenses Past Measurement Period for conditions relating to the Claimant's Eligible Event(s).  The Claims Administrator will exclude from the EI calculation any Medical Expenses that the Claims Administrator determines do not meet this standard.

**E.**     **Required Documentation of Past Medical Expenses.**

    **1.**     **Required Submissions.**

        (a)     **To show the amount of the expenses and why they were incurred:** Billing statements or invoices from health care providers showing the charges claimed and the nature of the service or treatment giving rise to the charge.  If these statements do not sufficiently describe the service or treatment to establish that they resulted from the Vioxx User's Eligible Event(s), the Claimant shall submit office notes, hospital records, or other Medical Records showing the nature of the service or treatment giving rise to the expenses claimed.  Claimants were required to label these documents:  *Past Medical Expenses.*

        (b)     **To establish that payment was made by the Claimant for the expenses claimed:**  Canceled checks, credit card statements, and/or billing statements or invoices from health care providers marked PAID, or other documents showing the payment of the expenses claimed.  Claimants were required to label these documents:  *Medical Expenses Paid.*

        (c)     **To establish that the expenses remain due but have not been paid by the Claimant or a third party:**  A current statement or invoice issued by any health care provider detailing Medical Expenses that remain due and owing but have not been paid, and any documents reflecting any payments made on such expenses not appearing in the current statement or invoice, such as amounts collected through garnishment proceedings or other collections activity.  Claimants were required to label these documents:  *Medical Expenses Due But Unpaid.*

(d)     **To establish what was paid by third parties:**  If the documents submitted under (a), (b) or (c) do not establish what the Claimant paid or is required to pay as Medical Expenses as opposed to what an insurance carrier or other third party paid or reimbursed the Claimant for such expenses, then the Claimant shall also submit copies of explanations of benefits or other documents issued by any insurance carrier or any other documents showing the payments and/or reimbursements or payments by third parties.  Claimants were required to label these documents:  *Third Party Medical Expense Payments.*

2.      **Submission Protocols.**

(a)     For every type of Required Documentation, Claimants were required to submit copies of the documents and not originals.  The best method to submit such documents was to upload them as PDFs through Primary Counsel's Vioxx Portal.  They could also be emailed as PDFs to <u>vioxxclaimsadministrator@browngreer.com</u>.  If submitted in hard copy, the documents should have been separated into the groups described above and bundled together (by clip or rubber band) with a cover sheet containing the label required for each set, and then mailed or delivered to the Claims Administrator by 9/1/09.

(b)     Claimants were required to submit the Required Documentation in each of the required categories in support of a Past Medical Expenses claim, regardless of whether they had been submitted in connection with the Claimant's underlying MI or IS claim, or whether they were being submitted in support of another type of Extraordinary Injury claim.

(c)     Other than the information in the EI Claim Form, the Claims Administrator will not rely upon any Medical Records or documents relating to health care that were not created at or near the time of the events recorded.

F.      **Fix the Medical Expenses Past Measurement Period.**

1.      **Medical Expenses Past Measurement Period Defined.**

The Medical Expenses Past Measurement Period is the period of loss for which a claim for Past Medical Expenses will be calculated.  The beginning of the Medical Expenses Past Measurement Period is called the Start Date.  The end of the Medical Expenses Past Measurement Period is called the End Date.

2.      **Start Date**.

The Start Date of the Medical Expenses Past Measurement Period is the *later* of the following:

(a)      The Claimant's first Eligible Event.  (An Eligible Event is an event on which the Claimant was issued a Notice of Points Award.)

(b)      The period of loss Start Date identified on the EI Claim Form.

3.      **End Date**.

The End Date of the Medical Expenses Past Measurement Period is 11/9/07 (the Settlement Agreement Execution Date).

G.      **Determine the Claimant's Past Medical Expenses Paid and/or Due for Each Medical Service.**

1.      The Claims Administrator will use the Medical Expenses Detail entries listed in Section III of the EI Claim Form as a reference.  Only entries listed on the EI Claim Form will be considered during the review of EI Past Medical Expenses claims.

2.      For each entry listed on the EI Claim Form, the Claims Administrator will identify the following:

(1)      the Provider;

(2)      the Dates of Service; and

(3)      the Total Amount Charged and/or Due from or Paid by the Claimant.

3.      For each entry listed on the EI Claim Form, the Claims Administrator will determine whether the service is an Allowed or Not Allowed EI Past Medical Expense.  In determining whether an entry is Allowed or Not Allowed, the following will be considered:

(1)      Has the Required Past Medical Expenses Documentation been submitted for each Provider and/or Date of Service listed on the EI Claim Form?

(2)      Does the Past Medical Expenses Documentation show the Date(s) of Service and/or Provider listed on the EI Claim Form?

(3)     Does the Past Medical Expenses Documentation show that the claimed service or treatment occurred within the Medical Expenses Past Measurement Period?

(4)     Does the Past Medical Expenses Documentation show services or treatments that constitute Medical Expenses?

(5)     Does the Past Medical Expenses Documentations show services or treatments that constitute Medical Expenses incurred by the Vioxx User?

(6)     Does the Past Medical Expenses Documentation sufficiently describe the service or treatment to establish that they more likely than not resulted from the Vioxx User's Eligible Event(s)?

(7)     Does the Past Medical Expenses Documentation show the amount Paid and/or Owed by the Claimant for the Past Medical Expenses claimed on the EI Claim Form?

(8)     Is the Required Past Medical Expenses Documentation submission complete (meaning they are not missing pages, are not redacted, and have otherwise not been altered)?

(9)     Miscellaneous.

If any of the above questions is answered "No," then the entry in question will be evaluated as Not Allowed.  The Claims Administrator has discretion to deem any Past Medical Expenses entry a Not Allowed entry.

**H.     Presumption Used during Evaluation of Past Medical Expenses Claims.**

Although the Claims Administrator has the discretion to deem any Past Medical Expenses entry a Not Allowed entry, the Claims Administrator will presume that a service or treatment was related to the Claimant's first Eligible Event if the Required Documentation establishes the service or treatment was for cardiac or stroke-related care.

**I.     Liens for Medical Expenses.**

Any amounts paid by a Claimant or deducted from the Claimant's MI Final Payment or IS Final Payment on a lien or claim by a Governmental Authority or private Third Party Provider/Payor for Medical Expenses relating to the Claimant's Eligible Event(s) will be considered to be out-of pocket amounts paid by the Claimant in the review of a Medical Expenses claim.

**J.**     **Calculate the Past Medical Expenses Amount.**

The sum total of each of the Claimant's Allowed Past Medical Expenses entries will be the Claimant's Past Medical Expenses Amount, which will be multiplied by the Relative Points Value Adjustment.  The resulting amount is the Assessed Past Medical Expenses Amount, and this will be the amount included in the Claimant's EI Assessment as compensable.

**K.**     **Process for Explanation of Required Medical Expenses Information.**

**1.**     **Unreviewable Medical Expenses Entries.**

If the Claims Administrator determines that the Medical Expenses Detail entries listed in Section III of the EI Claim Form are unreviewable (*i.e.*, because of lack of information), the Claims Administrator will issue to Primary Counsel or a Pro Se Claimant) a Request for Explanation of Required Medical Expenses Information.  This Explanation of the Required Medical Expenses Information is required to perform a review of the EI Past Medical Expenses claim.

**2.**     **Submission and Explanation.**

Once notified, Primary Counsel will have 20 days to complete the Explanation of Required Medical Expenses Information Form online using the Explanation of Required Medical Expenses Information function in the Extraordinary Injury section of Primary Counsel's Vioxx Portal.  Pro Se Claimants shall submit the Explanation of Required Medical Expenses Information in hard copy using the Form provided by the Claims Administrator.

**3.**     **Information Required.**

The Explanation of Required Medical Expenses Information will include the following fields that must be completed:

(1)     Provider (list the name of the doctor, hospital, pharmacy, etc. that provided the medical service; not the name of the insurance provider, other third party, or the Claimant).

(2)     Date(s) of Service.

(a)     For a Past Medical Expenses claim, each Date of Service must be on or after the date of the Vioxx User's first Eligible Event and on or before 11/9/07.

(b)     For an AED Medical Expenses claim, each Date of Service must be on or after 11/1/0/07 and on or before 9/1/09.

(3)     Amount Paid or Owed by Claimant for Service or Medicine (do not list amount billed or amount paid by a third party).

(4)     Description of Service Provided or Name of Medicine.

(a)     Multiple medical services or treatments performed during a single hospital visit may be listed as one entry by a single Provider.

(b)     Each prescription should be listed separately by Provider.

(5)     Connection to Eligible Event (describe how service or medicine provided is related to Claimant's Eligible Event(s)).

(6)     Description of Documentation Submitted (include page number and location on page where description of service or medicine provided can be found).

**4.      Limitation to EI Claim Form.**

The Explanation of Required Medical Expenses Information is not an opportunity for Primary Counsel or a Pro Se Claimant to make an additional claim.  Only Medical Expenses entries listed on the EI Claim Form will be considered during the review of the EI Past Medical Expenses claim.

**5.      Further Review.**

If Primary Counsel or a Pro Se Claimant submits a complete and timely Explanation of Required Medical Expenses Information, the entries will be evaluated in the manner described above.  If Primary Counsel or a Pro Se Claimant fails to submit a complete and timely Explanation of Required Medical Expenses Information, the Medical Expenses Detail entries listed in Section III of the EI Claim Form will be considered Not Allowed.

**L.      Calculate the AED Medical Expenses Amount.**

**1.      Fix the AED Measurement Period.**

The Claims Administrator will attribute a Start Date and an End Date to each AED Medical Expenses claim.

(a)     **Start Date.**

The AED Medical Expenses Measurement Period begins on 11/10/07, which is the day after the Settlement Agreement Execution Date.

(b)     **End Date**.

The AED Medical Expenses Measurement Period ends on 9/1/09, which is the EI Claim Form Submission Deadline Date.  The Claims Administrator had to establish an End Date for AED Medical Expenses.  Such expenses are inherently speculative, because rarely can it be predicted with reasonable certainty what medical care will be needed for the future, what it will cost, what the Claimant's unreimbursed share will be, and for how long the Claimant will need the care.  The uncertainty normally prevents the consideration of any appeal of future medical costs as an award in an administrative claims program.  Because of the 11/9/07 Settlement Agreement date, anything after that date is considered to be future Medical Expenses.  To avoid the uncertainty inherent in any effort to project future medical costs, while still allowing some recovery for medical costs after 11/9/07, the Claims Administrator in its discretion established 9/1/09, the EI Claim Form Submission Deadline Date, as the End Date for AED Medical Expenses.  Doing so will allow the calculation of such payments to the same degree of confidence as achieved with Past Medical Expenses.

2.     **Evaluation of AED Medical Expenses Claims**.

If a Claimant qualifies for AED by having Specified Economic Damages of $250,000 or more, such Claimant's AED Medical Expenses claim will be evaluated in the same manner as the Past Medical Expenses claim as described in Section III above.  If the Claims Administrator determines that the AED Medical Expenses claim is unreviewable, the Claims Administrator will notify Primary Counsel that an Explanation of the Required Medical Expenses Information is needed to perform a review of the AED Medical Expenses claim and the same process as described in Section J above will apply.  As with Past Medical Expenses claims, the sum total of each of the Claimant's Allowed AED Medical Expenses entries will be the Claimant's AED Medical Expenses Amount, which will be multiplied by the Relative Points Value Adjustment.  The resulting amount is the Assessed AED Medical Expenses Amount, and this will be the amount included in the Claimant's EI Assessment as compensable.

## IV.     EVALUATION OF LOST WAGES/INCOME CLAIMS

A.     **General Rules**.

1.     **Fix the LWI Past Measurement Period**.

The LWI Past Measurement Period is the period of loss for which a claim for LWI will be calculated.

2.      **Determine Claimant's Pre-Event and Post-Event Earnings.**

The Claims Administrator will determine the Claimant's earnings at the Start Date of the LWI Past Measurement Period.  These earnings are the Claimant's Pre-Event Earnings.  The Claims Administrator will determine the Claimant's earnings for each year of the LWI Past Measurement Period.  These Post-Event Earnings will be used in the calculation of the Claimant's Net Loss for each year in the LWI Past Measurement Period.

3.      **Determine Claimant's Disability Level after Event.**

Claims for Past LWI will be allowed only for Claimants whose Eligible Event(s) caused the Claimant to suffer either Total Disability or Partial Disability for some period of time, whether temporary or permanent.  Claimants without any disability for any period of time will not be eligible to recover Past LWI, for any lost income could not have resulted from the Vioxx User's Eligible Event.

4.      **Calculate the Past Lost Wages/Income Amount.**

The Claims Administrator will calculate the Past LWI by subtracting the Post-Event Earnings for each year in the LWI Past Measurement Period from the Claimant's Anticipated Earnings and then adjusting the result as required by the rules and policies set out in this Manual.

5.      **Determine if Required Documentation Has Been Provided.**

The Claims Administrator will determine if all Required Documentation has been provided to prove the Claimant's EI claim.  If all Required Documentation has not been provided, the Claims Administrator will determine the effect of the missing documentation on the EI claim.

6.      **Additional Extraordinary Damages.**

If a Claimant qualifies for EI Payments based on Specified Economic Damages of $250,000 or more, such Claimant may assert a claim for additional losses that occurred after the Past Measurement Period.  These additional damages are called Additional Extraordinary Damages ("AED").  The only LWI damages that will qualify as AED are wages/income that a Claimant can show will be lost after the LWI Past Measurement Period.

B.      **Fix the LWI Past Measurement Period.**

1.      **Definition of the LWI Past Measurement Period.**

The LWI Past Measurement Period is the period of loss for which a claim for LWI will be calculated.  The beginning of the LWI Past Measurement Period is

called the Start Date.  The end of the LWI Past Measurement Period is called the End Date.

2.    **Start Date**.

The Start Date of the LWI Past Measurement Period is the *later* of the following:

(a)    The Claimant's first Eligible Event (an Eligible Event is an event on which the Claimant was issued a Notice of Points Award); or

(b)    The period of loss Start Date identified on the EI Claim Form.

3.    **End Date**.

The End Date of the LWI Past Measurement Period is the *earlier* of the following:

(a)    11/9/07 (the Settlement Agreement Execution Date);

(b)    The date the Claimant reaches Social Security Retirement Age (calculated as set forth below);

(c)    The period of loss End Date identified on the EI Claim Form;

(d)    The date of the Claimant's unemployment or underemployment for any reason other than the Claimant's Eligible Event; or

(e)    The date of the Claimant's death, where the death is unrelated to the Claimant's Eligible Event.

4.    **Social Security Retirement Age**.

The Social Security Retirement Age is determined by the Social Security Administration based on the Claimant's year of birth as show in the following Table 1:

| Table 1 | Year of Birth | Full Retirement Age |
|---|---|---|
| | 1937 or earlier | 65 |
| | 1938 | 65 and 2 months |
| | 1939 | 65 and 4 months |
| | 1940 | 65 and 6 months |
| | 1941 | 65 and 8 months |
| | 1942 | 65 and 10 months |
| | 1943-1954 | 66 |
| | 1955 | 66 and 2 months |

| Table 1 | Year of Birth | Full Retirement Age |
|---|---|---|
| | 1956 | 66 and 4 months |
| | 1957 | 66 and 6 months |
| | 1958 | 66 and 8 months |
| | 1959 | 66 and 10 months |
| | 1960 and later | 67 |

5.   **Specific Issues Relating to the End Date of the LWI Past Measurement Period.**

(a)   If a Claimant reaches Social Security Retirement Age prior to the Claimant's first Eligible Event, then there is no LWI Past Measurement Period for which a Past LWI Amount can be calculated.  A Past LWI claim is unavailable for this Claimant.

(b)   If a Claimant reaches Social Security Retirement Age after the Claimant's first Eligible Event but before 11/9/07 (the Settlement Agreement Execution Date), then Past LWI will be calculated for the period from the Claimant's first Eligible Event through the Claimant's Social Security Retirement Age.

(c)   If a Claimant identified on the Claimant's EI Claim Form an End Date earlier than 11/9/07 (the Settlement Agreement Execution Date) or became unemployed or underemployed for any reason other than the Claimant's Eligible Event, or died as a result of circumstances unrelated to the Claimant's Eligible Event, then Past LWI will be calculated for the period from the Claimant's first Eligible Event through this earlier End Date.

C.   **Determine the Claimant's Pre-Event and Post-Event Earnings.**

1.   **Determine the Claimant's Pre-Event Earnings.**

The Claims Administrator will determine the Claimant's earnings at the Start Date of the LWI Past Measurement Period.  These earnings are the Claimant's Pre-Event Earnings.  These Pre-Event Earnings are also the earnings the Claimant anticipated earning after the Eligible Event ("Anticipated Earnings").  The Anticipated Earnings will be used in the calculation of the Claimant's Net Loss for each year in the LWI Past Measurement Period.

2.   **Determine the Claimant's Post-Event Earnings for Each Year of the LWI Past Measurement Period.**

The Claims Administrator will determine the Claimant's earnings for each year of the LWI Past Measurement Period.  These earnings are the Claimant's Post-Event

Earnings.  These Post-Event Earnings will be used in the calculation of the Claimant's Net Loss for each year in the LWI Past Measurement Period.

3.  **Income Included in Pre-Event and Post-Event Earnings.**

(a)  **Salary and Hourly Wages.**  The amount earned by the Claimant at the LWI Start Date will be included in the Claimant's Pre-Event Earnings. The Claims Administrator will determine the amount the Claimant was being paid on the LWI Start Date based upon a review of the Claimant's employment files, employee pay records, tax records for the year of the LWI Start Date, and tax records for the two years prior to the LWI Start Date.

(b)  **Self-Employment Income.**  The amount earned by the Claimant as self-employment income at the LWI Start Date will be included in the Claimant's Pre-Event Earnings.  To calculate the amount of the Claimant's self-employment income at the LWI Start Date, the Claims Administrator will average the net income earned for the year of the LWI Start Date and the preceding two years (Self-Employed Base Period).  If the resulting average is a negative amount, the Claims Administrator will not consider the Claimant's self-employment income as Pre-Event Earnings.

(c)  **Disability Benefits.**  Disability income (*i.e.*, payments in lieu of income because of inability to work) from the Social Security Administration or from a private or other disability source at the LWI Start Date will be included in the Claimant's Pre-Event Earnings.  This income is included to avoid penalizing Claimants for disability income they were receiving at the time of their Eligible Event and continue to receive after the Eligible Event, for disability income after the Eligible Event is deducted from LWI.  This also permits Claimants who no longer receive that disability income after the Eligible Event, such as for example, a deceased Claimant, and whose lost income thus includes lost disability income payments, to count that lost disability income as part of the Claimant's LWI.  The Claimant (or Representative Claimant) must provide documentation showing the amount of disability income being received at the LWI Start Date and that being received afterwards during the LWI Past Measurement Period.  Subject to the discretion of the Claims Administrator, the lost disability income will be considered in the calculation of the Claimant's LWI.

(d)  **Retirement Benefits.**  Subject to the exclusions set forth below, the retirement benefits a Claimant was receiving at the LWI Start Date will be included in the Claimant's Pre-Event Earnings.  This income will be included to avoid penalizing Claimants for retirement income they were receiving at the time of their Eligible Event and continue to receive after

the Eligible Event, for retirement income after the Eligible Event is deducted from LWI.  This also permits Claimants who no longer receive that retirement income after the Eligible Event, such as for example, a deceased Claimant, and whose lost income thus includes lost retirement income, to count that lost retirement income as part of the Claimant's LWI.  The Claimant (or Representative Claimant) must provide documentation showing the amount of retirement income being received at the LWI Start Date and that being received afterwards during the LWI Past Measurement Period.  Subject to the discretion of the Claims Administrator, the lost retirement income will be considered in the calculation of the Claimant's LWI.

4.     **Income Excluded from Pre-Event and Post-Event Earnings.**

The LWI calculation will not include any amounts for these items, if any, not received or that might have been received during the LWI Past Measurement Period.  Accordingly, amounts from these sources are excluded from Pre-Event and Post-Event Earnings:

(1)      The value of health or other insurance benefits.

(2)      Anticipated increases in salary or income, from advancement, CPI/inflation increases, or business development.

(3)      Anticipated bonuses contingent upon performance or profitability, unless such bonuses were guaranteed to occur or were a fixed part of a self-employed person's compensation plan.

(4)      Stock options, stock ownership plans, or other opportunities to purchase equity in a business.

(5)      401(k) or other retirement plan contributions, pension plans, deferred compensation plans, profit-sharing plans, or tax-sheltered annuities.

(6)      Payments in lieu of personal time off.

(7)      Lost business opportunities or loss of good will.

(8)      Commissions that were not a normal and regular part of the Vioxx User's income.

(9)      Any type of income deemed by the Claims Administrator not to be reasonably related to the Claimant's Eligible Event and its consequences or that cannot be determined or calculated with reasonable certainty.

**D.     Determine the Claimant's Disability Level after the Eligible Event.**

    **1.     Disability Caused by Eligible Event.**

        Claims for Past Lost Wages/Income will be allowed for Claimants whose Eligible Event(s) caused the Claimant to suffer either Total Disability or Partial Disability for some period of time, whether temporary or permanent.  Claimants whose Eligible Event(s) did not produce any level of disability that impairs the ability to work will not be considered to have compensable Lost Wages/Income as a result of the Eligible Event(s).

    **2.     Total Disability and Partial Disability.**

       (a)     **Total Disability**:  A Claimant will be considered to be Totally Disabled if the Eligible Event(s) prevented the Claimant from performing the work that the Claimant performed before the Eligible Event(s) and the Claimant could not adjust to perform other work because of his/her medical condition(s).

       (b)     **Partial Disability**:  A Claimant will be considered to be Partially Disabled if the Eligible Event(s), either temporarily or permanently, reduced the Claimant's ability to function, but still permitted the Claimant to perform some work of some kind, even if not the vocation of the Claimant at the time of the Eligible Event(s).

       (c)     **Presumptions**.

           (1)     MI Claimants who qualified on Level 1 (death) and IS Claimants who qualified on Level 1 (death) or Level 2 (disability requiring Full Time Care) will be presumed to be Total Disability claims. Such Claimants do not have to submit additional documentation to show disability level.  No other Claimants will be presumed to be Total Disability claims.

           (2)     IS Claimants who qualified on Level 3 or Level 4 will be presumed to be Partial Disability claims.  Claimants on these levels do not have to submit additional documentation to show Partial Disability.  IS Claimants on these levels who seek Lost Wages/Income for periods of Total Disability resulting from an Eligible Event must provide documentation to prove their disability.

           (3)     IS Claimants who qualified on Level 5 and MI Claimants who qualified on Levels 2-6 can seek Lost Wages/Income for periods of disability resulting from an Eligible Event and shall establish the

level of Disability by timely submitted Disability Proof Records. Such a Claimant with no timely submitted Disability Proof Records ("No Disability Proof Claimant") can still recover Lost Wages/Income, but will be presumed to have been able to continue to earn 50% of the Claimant's Anticipated Earnings for any year after the Eligible Event, for purposes of the calculation of the Claimant's Net Lost Wages/Income.

3.      **Claims Administrator Discretion Regarding Other Income.**

The Claims Administrator has discretion to reduce the LWI award of any Claimant whose records suggest an ability to earn income and an election not to attempt to do so during any period for which a loss is claimed.

E.      **Determine if Required Documentation Has Been Provided.**

1.      **Required Submissions.**

(a)     **Tax Records for the LWI Past Measurement Period.**  US Form 1040 or Form 1040EZ, with all attachments, for the Vioxx User for the LWI Past Measurement Period.  The attachments must include the Vioxx User's W-2 Forms, 1099 Forms, and the K-1, Schedule C or other form reporting on self-employment income, for those years.  If the Vioxx User filed a joint tax return with his or her spouse, then all the attachments to the return pertaining to the spouse must also be submitted for the Past Measurement Period.  Claimants were required to label these:  *Tax Records for Past Measurement Period.*

(b)     **Tax Records for the Two Years Prior to the LWI Past Measurement Period.**  US Form 1040 or Form 1040EZ, with all attachments, for the Vioxx User for the two years immediately before the year of the Vioxx User's first Eligible Event.  The attachments must include the Vioxx User's W-2 Forms, 1099 Forms, and the K-1, Schedule C or other form reporting on self-employment income, for those years.  If the Vioxx User filed a joint tax return with his or her spouse, then all the attachments to the return pertaining to the spouse must also be submitted for the two years prior to the Past Measurement Period.  Claimants were required to label these:  *Tax Records for Two Prior Years.*

(c)     **Employee Claims – Pay Rate for the LWI Past Measurement Period.**  If the Extraordinary Injury claim seeks Past Lost Wages/Income for a Vioxx User who was an employee for any period of loss, documents, such as paycheck stubs, showing the rate of pay and pay period for the Vioxx User for the LWI Past Measurement Period. Claimants were required to label these:  *Employee Pay Records for Past Measurement Period.*

(d)    **Employee Claims – Employment Records for the LWI Past Measurement Period.**  If the Extraordinary Injury claim seeks Past Lost Wages/Income for a Vioxx User who was an employee for any period of loss, the personnel file for the Vioxx User at each employer for the LWI Past Measurement Period. Claimants were required to label these: *Employment File for Past Measurement Period.*

(e)    **Employee Claims – Employment Records for the Two Years Prior to the LWI Past Measurement Period.**  If the Extraordinary Injury claim seeks Past Lost Wages/Income for a Vioxx User who was an employee for any period of loss, the personnel file for the Vioxx User at each employer for the two years immediately before the year of the Vioxx User's first Eligible Event.  Claimants were required to label these:  *Employment File for Two Prior Years.*

(f)    **Self-Employed Claims – Financial Statements for the LWI Past Measurement Period.**  If the Extraordinary Injury claim seeks Past Lost Income for a Vioxx User who was self-employed for any period of loss, a financial (profit and loss) statement of the business for each year included in the LWI Past Measurement Period.  Claimants were required to label these:  *Self-Employment Records for Past Measurement Period.*

(g)    **Self-Employed Claims – Financial Statements for the Two Years Prior to the Past Measurement Period.**  If the Extraordinary Injury claim seeks Past Lost Income for a Vioxx User who was self-employed for any period of loss, a financial (profit and loss) statement of the business for the two years immediately before the year of the Vioxx User's first Eligible Event.  Claimants were required to label these:  *Self-Employment Records for Two Prior Years.*

(h)    **MI Claimants Asserting Disability – Establishing the Disability.**  MI Claimants asserting Total or Partial Disability during any portion of the LWI Past Measurement Period resulting from the Vioxx User's Eligible Event(s), were required to submit documentation to establish such disability, consisting of:

    (1)    Determination(s) by the Social Security Administration or private disability plan administrators that establishes the Vioxx User's disability and that such disability resulted from the Vioxx User's Eligible Event(s); or

    (2)    If no such determination is submitted for any period in which Lost Wages/Income are claimed, Medical Records including office notes or records from office visits or in-patient care, for medical care relating to the conditions that caused the disability and showing the nature, cause and extent of the Vioxx User's

disability.  Physician opinions or declarations not created contemporaneously in the course of medical care (and thus not appearing in the Vioxx User's Medical Records) will not be considered.

Claimants were required to label these documents: *Disability Proof Records.*  (NOTE:  IS Claimants who qualified on Levels 2, 3, or 4 do not have to submit these records, for the Injury Level found on the IS Claimant's underlying claim will control the disability finding.)

(i)     **Earned Income from Any Sources.**  Documents showing the amount of gross earned income received by the Vioxx User from any sources during the LWI Past Measurement Period. Claimants were required to label these: *Records of Other Income During Past Measurement Period.*  Claimants are not required to submit documents relating to unearned income received, such as dividends, interest payments, or other passive income from investments.  But if the Vioxx User earned income as an employee or from any self-employment business or activity during the LWI Past Measurement Period, the gross amounts of those wages or income (before deductions for taxes or benefits) will reduce the Claimant's Past Lost Wages/Income during the LWI Past Measurement Period.

(j)     **Third Party Payments.**  Documents showing payments from Disability Insurer(s) or Other Third Party Payor(s), such as Social Security benefit statements, explanation of benefit forms or other documents showing the amounts the Vioxx User received from any third party as disability insurance payments or other benefits in lieu of earned income at the time of the Claimant's first Eligible Event and/or during the LWI Past Measurement Period.  Claimants were required to label these:  *Third Party Income Payment Records.*

## 2.     The Effect of Missing Documentation.

The Claims Administrator will determine if a Claimant submitted all Required Documentation for an EI claim.  If a Claimant did not submit all Required Documentation, the Claims Administrator will take one of the following actions:

(a)     If the missing documentation does not affect the Claims Administrator's ability to evaluate the EI claim, the Claims Administrator will process the EI claim without the Required Documentation.

(b)     If the missing documentation prevents the Claims Administrator from calculating any amount of LWI (*i.e.* no documentation was submitted to establish the Claimant's Pre-Event Earnings), then the Claims Administrator will award no LWI for the Claimant.  The Claimant will

have the opportunity to request a Second Review of a claim and to submit the missing Required Documentation at that time.

(c)     If the missing documentation affects the Claims Administrator's ability to evaluate properly some, but not all, of the Claimant's LWI, the Claims Administrator will award the LWI based on the documents submitted and in a manner that avoids potentially overpaying the Claimant's LWI. The Claimant will have the opportunity to request a Second Review of a claim and to submit the missing Required Documentation at that time.

**Example:** If a Claimant submits a joint tax return for any year during the LWI Past Measurement Period but has submitted only the Claimant's W-2 Forms and not the spouse's W-2 Forms, the Claims Administrator will assume that all income shown on the tax return belongs to the Claimant when calculating the Claimant's Post-Event Income, as illustrated in the following Table 2:

| Table 2 | | Spouse's W-2 Forms Not Submitted | Spouse's W-2 Forms Submitted |
|---|---|---|---|
| **1.** | Claimant's Anticipated Earnings | **$200,000** | **$200,000** |
| **2.** | Total Income Shown on Line 7 of Tax Return | $100,000 | $100,000 |
| **3.** | Claimant's W-2 Forms Submitted | **$50,000** | **$50,000** |
| **4.** | Spouse's W-2 Forms Submitted | None | $50,000 |
| **5.** | Total Income Imputed to Claimant because of Missing W-2 Forms | **$50,000** | None |
| **6.** | LWI Calculation | **$200,000 - $50,000 - $50,000** | **$200,000 - $50,000** |
| **7.** | **Amount of LWI** | **$100,000** | **$150,000** |

3.     **Submission Protocols.**

(a)     For every type of Required Documentation, Claimants were required to submit copies of the documents and not originals. The best method to submit such documents was to upload them as PDFs through Primary Counsel's Vioxx Portal. They could also be emailed as PDFs to vioxxclaimsadministrator@browngreer.com. If submitted in hard copy, the documents should have been separated into the groups described above

and bundled together (by clip or rubber band) with a cover sheet containing the label required for each set, and then mailed or delivered to the Claims Administrator by 9/1/09.

(b)     Claimants were required to submit the Required Documentation in each of the required categories in support of a Past Lost Wages/Income claim, regardless of whether they had been submitted in connection with the Claimant's underlying MI or IS claim, or whether they were submitted in support of another type of Extraordinary Injury claim.

(c)     Other than the information in the EI Claim Form, the Claims Administrator will not rely upon any documents that were not created at or near the time of the events recorded.

**F.     Calculate the Past Lost Wages/Income Amount.**

1.     Calculate the Net Loss for each year in the LWI Past Measurement Period by subtracting the Claimant's Post-Event Earnings for a year from the Claimant's Anticipated Earnings.

(a)     A Claimant's Net Loss for a year in the LWI Past Measurement Period cannot exceed Anticipated Earnings. If the Post-Event Earnings for one or more years in the LWI Past Measurement Period totals less than $0, the Post-Event Earnings for the affected years will be set to $0, so that the Net Loss does not exceed the Anticipated Earnings.

(b)     A Total Disability Claimant's Net Loss for the affected year will be calculated by subtracting the Claimant's Post-Event Earnings for the year from the Claimant's Anticipated Earnings, if any.

(c)     A Partial Disability Claimant's Net Loss for an affected year shall be calculated as follows:

(1)  If the Claimant has Post-Event Earnings for a given year, the Net Loss for the affected year will be calculated by subtracting the Claimant's Post-Event Earnings for the year from the Claimant's Anticipated Earnings.

(2)  If the Claimant has no Post-Event Earnings for a given year, the Net Loss for the affected year will be 50% of the Claimant's Anticipated Earnings for that year.

(d)     A No Disability Proof Claimant's Net Loss for an affected year will be calculated by subtracting the Claimant's Post-Event Earnings, if any, for the year from the Claimant's Anticipated Earnings for the year, up to a

maximum Net Loss of 50% of the Claimant's Anticipated Earnings for such year.

2.      Calculate the total Past Lost Wages/Income Amount for the Claimant by adding the Net Loss for each year in the LWI Past Measurement Period.

**NOTE:**  To be eligible for an EI Payment, the Claimant's Specified Economic Damages (the sum of the Past Lost Wages/Income Amount and the Past Medical Expenses Amount) must be greater than or equal to $250,000.

3.      Multiply the Total Net Loss by the Relative Points Value Adjustment.

4.      The resulting amount is the Assessed Past Lost Wages/Income Amount, and this will be the amount included in the Claimant's EI Assessment as compensable.

**G.      Calculation of AED LWI.**

1.      **AED LWI Measurement Period.**

(a)      The beginning of the AED LWI Measurement Period is 11/10/07, the day after the Settlement Agreement Execution Date.  Thus, AED is not available for Claimants whose LWI End Date is on or before the Settlement Agreement Execution Date.  If the Claimant's LWI End Date is on or before the Settlement Agreement Execution Date then the Claimant does not have any LWI that is not compensated in the Past LWI claim.

(b)      Just as with Past LWI, the end of the AED LWI Measurement Period is the *earlier* of:  (i) the Date the Claimant reaches Social Security Retirement Age; (ii) the period of loss End Date identified on the EI Claim Form; (iii) the date of the Claimant's unemployment or underemployment for any reason other than the Claimant's Eligible Event; or (iv) the date of the Claimant's death, where the death is unrelated to the Claimant's Eligible Event.

2.      **Calculation of AED LWI Amount.**

(a)      AED LWI is calculated based upon the Claimant's Daily Loss on the Past LWI End Date.  This Daily Loss is calculated by dividing the Claimant's LWI Loss in 2007 by 313 (the number of days from 1/1/07 to 11/9/07 which is the number of days for which LWI was awarded in 2007).

(b)      The AED LWI Amount is calculated by multiplying the Claimant's Daily Loss by the number of days from 11/10/07, the beginning of the AED LWI Measurement Period, through the end date of the AED LWI Measurement Period.

3.      **Standard Discount for Future Uncertainty and to Present Value**.

The total AED LWI Amount calculated in the manner described above, will be discounted to account for:  (i) the uncertainty that the Claimant would have worked until the end of the AED LWI Measurement Period; (ii) the uncertainty that the Claimant would have earned the same wages until the end of the AED LWI Measurement Period; and (iii) the present day value of the AED LWI.  The Standard Discount will be a percentage applied to all awards of AED LWI.  The Standard Discount will be 50% applied to the AED LWI Amount.  The resulting amount is the Discounted AED LWI Amount.

4.      **Calculate the Assessed AED LWI Amount**

Once the Discounted AED LWI Amount has been calculated, this amount will be multiplied by the Relative Points Value Adjustment.  The resulting amount is the Assessed AED Lost Wages/Income Amount, and this will be the amount included in the Claimant's EI Assessment as compensable.

## V.  SPECIAL MEDICAL INJURY CLAIMS

A.      **Exclusions from the Special Medical Injury Category**.

1.      **Qualifying Program Claimant Requirement**.

An EI Claimant must be a Qualifying Program Claimant under § 2.1 and/or § 2.9, meaning that each EI Claimant must have had an Eligible Event under § 2.2.1.1 or be deemed to have an Eligible Event under Article 2.  Thus each EI Claimant who seeks any sort of Extraordinary Injury Payments, including Special Medical Injury Payments, must have been found eligible for an MI Settlement Payment or an IS Settlement Payment at a level above the Special Marker level.

2.      **Underlying Claim Injuries**.

The injuries or medical conditions that constituted the Claimant's Eligible Event for which the Claimant received a Points Award cannot be the basis for an Extraordinary Injury claim.

3.      **Second Eligible Events**.

The injuries or medical conditions that constituted the basis for a Second Eligible Event for which the Claimant was awarded additional MI Points or IS Points under § 3.5 of the Settlement Agreement cannot be the basis for an Extraordinary Injury claim.

**B.**   **The Types of Injuries Potentially Compensable as Special Medical Injuries.**

    **1.**   **Summary of Applicable Settlement Agreement Provisions.**

        (a)   To qualify for an EI Payment as an MI Special Medical Injury, the Settlement Agreement directs that a Qualifying Program Claimant must submit PME Records reflecting an injury that is not adequately reflected by MI injury levels as defined in Ex.3.2.1.  To qualify for payment as an IS Special Medical Injury, the Settlement Agreement requires that a Qualifying Program Claimant must submit PME Records reflecting an injury that is not adequately reflected by the Basic Activities of Daily Living or Instrumental Activities of Daily Living as defined in Ex.3.2.1.

        (b)   The Settlement Agreement provides that all determinations concerning a Qualifying Program Claimant's eligibility for an EI Payment, and the amount thereof, shall be made by the Claims Administrator according to the guidelines established by the Claims Administrator in consultation with Merck and the NPC.  The guidelines established by the Claims Administrator are final, binding, and Non-Appealable.

    **2.**   **Eligibility Guidelines for Special Medical Injury Claims.**

        (a)   **Basic Principle 1: The injury must be suffered by the Vioxx User to qualify as a Special Medical Injury.**

            (1)   **Premise:**  The EI Program is intended to compensate a Vioxx User who has been deemed a Qualifying Program Claimant.  An injury must be an injury to a Vioxx User to be considered for compensation as a Special Medical Injury.

            (2)   **Application:**  An injury suffered by someone other than the Vioxx User will not qualify as a Special Medical Injury.  For example, claims for loss of companionship or other injuries to family members will not qualify as Special Medical Injuries.

        (b)   **Basic Principle 2**: **The injury must be a physical injury to qualify as a Special Medical Injury.**

            (1)   **Premise**: The EI Program was intended to compensate for injuries that are physical in nature.

            (2)   **Application**:

                a.   **Economic Injuries.**  An economic injury will not qualify as a Special Medical Injury.

    b.    **Medication Use.**  Medication use will not qualify as a Special Medical Injury.

    c.    **Mental Health Disorders.**  An injury that is emotional in nature or relates to mental health will not qualify as a Special Medical Injury.

    d.    **Reduction in Quality of Life.**  An assertion of a decrease in the satisfaction or enjoyment of life will not qualify as a Special Medical Injury.

(c)    **Basic Principle 3: The injury must have been specifically identified by the Claimant by 9/1/09 to qualify as a Special Medical Injury.**

    (1)    **Premise:** The deadline for all EI Program submissions was 9/1/09. The injury must have been submitted and described with sufficient specificity by that deadline to allow the Claims Administrator to perform a meaningful analysis of the claim.

    (2)    **Application:**

        a.    **Inadequate Description.**  An injury that was not identified with sufficient specificity by 9/1/09 will not qualify as a Special Medical Injury.

        b.    **Second Review**.  An injury specifically alleged for the first time in response to a Notice of EI Assessment will not qualify as a Special Medical Injury.

(d)    **Basic Principle 4:  An injury reflected by the MI or IS Injury Levels in Exhibit 3.2.1 does not qualify as a Special Medical Injury.**

    (1)    **Premise:**  The EI Program is intended to compensate for injuries that are not reflected by the Injury Level Grid. The EI Program will not compensate for an injury that is reflected by the Grid Injury Levels, regardless of whether that injury was paid on the underlying claim.  For example, if an injury is based on conditions reflected by the MI Injury Level Grid such as Death, Ejection Fraction, or CABG, it will not qualify as a Special Medical Injury. If an injury is based on conditions reflected by the BADLs or IADLs, it will not qualify as a Special Medical Injury.

    (2)    **Application.**

        a.    **Injury Not Payable by Underlying Injury Level.**  An injury that is reflected by the Injury Level Grid which was

not payable by the Injury Level Grid will not qualify as a Special Medical Injury.  For example, a stent plus restenosis, which occurred more than six months after the Eligible Event, will not qualify as a Special Medical Injury.

b.    **No Appeals of Underlying Points Awards.**  An injury that is reflected by the Injury Level Grid and could have been paid on the underlying claim will not be compensated as a Special Medical Injury.  The EI Program is not a substitute for a timely appeal of the underlying Points Award.

c.    **Previously Compensated.**  An injury that is reflected by the Injury Level Grid that has been previously compensated for at the applicable Injury Level or at a higher value Injury Level will not qualify as a Special Medical Injury.

(e)    **Basic Principle 5:   An injury reflected by the Exhibit 2.2.1.1 Injury Gate Criteria does not qualify as a Special Medical Injury.**

(1)    **Premise:** The EI Program was not intended to circumvent the Eligibility requirements established by the Settlement Agreement for injuries reflected by Gates Eligibility criteria.  The EI Program will not compensate for injuries reflected by Gates Eligibility criteria regardless of whether that injury was paid on the underlying claim.  As a result, any claims for injuries referenced in the Gates Eligibility criteria such as an MI, MI fatal, MI symptoms, angina, IS, IS fatal, hemorrhagic stroke, or TIA will not qualify as a Special Medical Injury.

(2)    **Application:**

a.    **Failure to Claim/Appeal an Eligible Event.**  An injury that may have served as a Secondary Injury on the underlying claim will not qualify as a Special Medical Injury.

b.    **Ineligible Event.**  An injury that is reflected by Injury Gates criteria and that failed or would have failed one or more of the Gates Eligibility criteria (Injury, Proximity, or Duration Gates), will not be considered for compensation as a Special Medical Injury.  This includes any injuries that are specifically excluded from compensation by Injury Gate criteria, such as angina or a TIA.

c.    **Previously Compensated.**  An injury that is a restatement of an underlying Eligible Event will not qualify as a Special Medical Injury.  In addition, an injury based on the same

condition or procedure that was the basis for a Gate Committee or Merck Pass for the Injury Gate on the underlying Eligible Event will not qualify as a Special Medical Injury.

(3)     **Exception**: **Third Eligible Event**.  An injury will qualify as a Special Medical Injury if the injury meets the following criteria: (i) the injury must pass all three of the Gates Eligibility criteria set forth in the Settlement Agreement (Injury, Proximity and Duration Gates) as evidenced by contemporaneous, objective Medical Records; (ii) the injury must be alleged by a Claimant with two underlying Eligible Events; (iii) the Secondary Eligible Event on the underlying claim must have been valued at less than 30% of the primary Eligible Event on the Notice of Points Award; and (iv) the claimed event must be a distinct Event.  An injury that satisfies the criteria for a Third Eligible Event will be presumed to meet the requirements of Basic Principles 7, 8 and 9.

(f)     **Basic Principle 6:  A physical injury to the Vioxx User not reflected by the Injury Levels or the Injury Gate Criteria that was specifically identified by the Claimant by 9/1/09 may be compensable as a Special Medical Injury.**

(1)     **Premise:**  The EI Program will consider for compensation as a Special Medical Injury any injury that the Claims Administrator determines are not excluded from compensation by the requirements of Basic Principles 1-5.  For any such injury the Claimant must also meet the requirements set forth in Basic Principles 7-10.

(2)     **Application:**  An injury that is not reflected by the Injury Levels or Eligibility Grid criteria yet fails any one of Basic Principles 7-10 will not qualify as a Special Medical Injury.

(g)     **Basic Principle 7**: **The injury must have resulted from the underlying Eligible Event(s) to qualify as a Special Medical Injury.**

(1)     **Premise:**  The EI Program was intended to compensate injuries that were caused by the underlying Eligible Event(s).  The EI Program will only consider for compensation an injury that the Claimant has proved, to the Claims Administrator's satisfaction, was caused by the underlying Eligible Event(s).

(2) **Application:**

     a. **Injury Prior to Eligible Events.** An injury that occurred prior to the Eligible Event(s) will not be compensated as a Special Medical Injury.

     b. **Uninterrupted Causal Chain**. If the injury was caused by medical conditions or circumstances other than the Eligible Event, the injury will not qualify as a Special Medical Injury. For example, an injury caused by medical conditions or circumstances not directly resulting from the Eligible Event, such as underlying coronary artery disease or cerebrovascular disease, or caused by some intervening event, such as medical negligence, will not qualify as a Special Medical Injury.

     c. **Documentation.** Contemporaneous, objective Medical Records must indicate to the Claims Administrator's satisfaction that injury was caused by the Eligible Event(s).

(h) **Basic Principle 8**: **The injury must be severe in nature to qualify as a Special Medical Injury.**

(1) **Premise:** The injury must be of a sufficient severity to be considered for eligibility as a Special Medical Injury.

(2) **Application:**

     a. **Sufficient Severity**. The injury must involve an operation requiring general anesthesia, result in a hospitalization separate from an Eligible Event hospitalization of at least 10 days, result in permanent disability requiring assistance with BADLs, or otherwise severely impact the Claimant by objective determination.

     b. **Documentation**. Contemporaneous, objective Medical Records must indicate to the Claims Administrator's satisfaction that injury was severe in nature.

(i) **Basic Principle 9: The injury must be atypical to qualify as a Special Medical Injury.**

(1) **Premise**: The EI Program will not compensate for injuries which have been adequately compensated for by the underlying Points Award. The injury must be atypical when viewed in the context of

the underlying Eligible Event's Injury Level.  The EI Program will not compensate for injuries associated with the Eligible Event, even if severe in nature, if the injury is typically associated with the Eligible Event and/or the Injury Level awarded on the underlying Claim.

    (2)    **Application**:

        a.    **Typically Associated with Eligible Event and /or Injury Level.**  If the injury is typically associated with the treatment or the nature of the underlying Eligible Event, or with the procedure or condition which serves as the basis for the Injury Level awarded on the underlying claim, the injury will not qualify as a Special Medical Injury.

        b.    **Documentation**. Contemporaneous, objective Medical Records must indicate to the Claims Administrator's satisfaction that injury was atypical in nature.

    (j)    **Basic Principle 10: The injury must be documented by contemporaneous, objective Medical Records to qualify as a Special Medical Injury.**

    (1)    **Premise:**  Section 4.2.5 of the Settlement Agreement requires that Claimants who assert a Special Medical Injury must submit PME records which reflect the injury.

    (2)    **Application:** All required proof for a Special Medical Injury claim must be documented in contemporaneous, objective Medical Records submitted with the EI Claim Form labeled as *Special Medical Injury Records.*

    3.    <u>**Flowchart Summary of Special Medical Injury Eligibility Approach.**</u>

The flowchart on the following page illustrates the analysis of injuries presented on SMI claims.



**SMI ELIGIBILITY APPROACH**

C.    **Valuation of Special Medical Injury Claims.**

1.    **Tier Levels.**  Each qualifying Special Medical Injury will be classified by the Claims Administrator according to the level of severity of the Special Medical Injury. The Tier Levels will range from Tier 1 to Tier 3, with Tier 1 representing the most severe types of Special Medical Injuries.  The Tier ranking provides a mechanism for valuing similarly situated injuries consistently.  The value assigned to each Tier level is shown in Table 3:

| Table 3 | VALUATION OF SMI INJURIES | |
|---|---|---|
| **TIER LEVEL** | | **VALUE** |
| **TIER 1** | | **$1,000,000** |
| **TIER 2** | | **$750,000** |
| **TIER 3** | | **$500,000** |

2.    **Tier Value and RPV Adjustment.**  The Tier Value will be the Special Medical Injury Amount.  The RPV adjustment will then be applied to that Amount determine the Assessed Special Medical Injury Amount, as follows:

| SMI Tier Value | **X** | RPV Adjustment | **=** | Assessed SMI Amount |
|---|---|---|---|---|

3.    **Exception to Tier Valuation.**  The Tier valuation will be used to value all Special Medical Injury claims except for those Special Medical Injuries which are Third Eligible Events by the Gates Criteria under the Settlement Agreement.  For all Third Injury claims, the SMI Amount will be the amount necessary to elevate the Secondary Injury to maximum value, which is a value equal to 30% of the Primary Injury Award.

| Maximum Secondary Points | **–** | Actual Secondary Points | **=** | Third Injury Points |
|---|---|---|---|---|



| Third Injury Points | **X** | Final Point Value | **=** | Assessed SMI Amount for Third Injury |

## VI.    RPV ADJUSTMENT

**A.    <u>The Issue Presented</u>.**

The underlying Points Awards of each Claimant seeking EI Payments will vary, depending upon Injury Level, Duration of Use, Age at Eligibility Event(s), Label and Consistency Adjustments, and Risk Factor Adjustments.  The EI Payment awards for these Claimants will preserve that relative standing among the Claimants.  The Relative Points Value Adjustment ("RPV Adjustment") will be applied to each Claimant's Specified Economic Damages (Past Medical Expenses Amount and/or Past LWI Amount), Additional Extraordinary Damages (AED Medical Expenses Amount and/or Discounted AED LWI Amount, if applicable), and Special Medical Injury Amount (for Special Medical Injuries that are not Third Eligible Injuries).

**B.    <u>Relative Points Value Adjustment Formula</u>.**

1.    The underlying point score positions of the Claimants who qualify for EI Payment will be preserved by:  (1) multiplying each Claimant's underlying Points Award relative to the total points available on an MI or IS claim (1,000 points) times the Claimant's Specified Economic Damages to derive the Claimant's *Assessed Past Medical Expenses Amount and/or Assessed Past LWI Amount*; and (2) multiplying each Claimant's underlying Points Award relative to the total points available on an MI or IS claim (1,000 points) times the Claimant's Additional Extraordinary Damages (if any) to derive the Claimant's *Assessed AED Medical Expenses Amount and/or Assessed LWI Amount*, in this manner:

| $\dfrac{\text{Claimant's Underlying Points Award}}{1,000}$ | **X** | Claimant's Past Med or Past LWI Amount | **=** | Claimant's Assessed Med or Assessed LWI Amount |

| $\dfrac{\text{Claimant's Underlying Points Award}}{1,000}$ | **X** | Claimant's AED Med or Discounted AED LWI Amount | **=** | Claimant's Assessed Med or Assessed LWI Amount |

| $\dfrac{\text{Claimant's Underlying Points Award}}{1,000}$ | **X** | Claimant's SMI Amount (other than Third Eligible Injury) | **=** | Claimant's Assessed SMI Amount (other than Third Eligible Injury) |

2.      The Relative Points Value Adjustment Formula thus will value EI Payments for these types of EI damages of Claimants on the same ratio to each other as their underlying Points Awards bore to each other.

## VII.   PROCESSING OF EI CLAIMS

A.      **Claims Administrator Determinations of EI Payments.**

1.      **EI Assessment.**

The Claims Administrator will review the EI Claim Form and Required Documentation submitted and determine, pursuant to the EI Review Criteria:  (a) whether the Claimant has shown $250,000 or more in Past Medical Expenses and/or Past Lost Wages/Income and, if so, the amount established; (b) whether the Claimant has shown any Additional Extraordinary Damages and if so, the amount established; (c) whether the Claimant has shown a Special Medical Injury and its value; (d) the Relative Points Value Adjustment as applied to each aspect of a potential award; and (e) the Claimant's resulting EI Assessment.

2.      **Notice of EI Assessment and Request for Second Review.**

(a)      After conclusion of such review, the Claims Administrator will issue to the Claimant a Notice of EI Assessment specifying the EI Assessment amount on the claim and explaining how the Assessment was determined and how any missing documentation affected the Assessment.

(b)      The Notice of EI Assessment will give the Claimant the opportunity, within 20 days after the date of the Notice, to:  (a) make a Second Review Request to have the Claims Administrator perform a Second Review of the claim; (b) specify the aspects of the EI Assessment on which the Claimant requests a Second Review; and (c) submit any additional documentation the Claimant wishes the Claims Administrator to consider in the Second Review.

**NOTE:**  If a Claimant has failed to submit *any* timely Required Documentation for the EI claim, the claim will be Closed without opportunity for Second Review.

(c)      If no timely Second Review Request is made, the EI Assessment shall become the Final EI Assessment on the claim and shall not be subject to appeal.

(d)      Claimants represented by Primary Counsel shall submit a Second Review Request on line using the Second Review Request function in the Extraordinary Injury section of the Primary Counsel's Vioxx Portal,

following the instructions on the Portal.  This function will permit Primary Counsel to indicate the specific determinations on the claim identified in the Notice of EI Assessment on which a Second Review is requested and to state the grounds for each such specific re-review.  Unrepresented Claimants shall submit a Second Review Request in hard copy form using a Second Review Request Form provided by the Claims Administrator.

(e)     Primary Counsel will upload using their Vioxx Portal any additional Required Documentation that Primary Counsel wishes the Claims Administrator to consider in the Second Review.  Unrepresented Claimants will mail or deliver any additional Required Documentation in hard copy form.  All such documents must be uploaded or postmarked no later than midnight local sender's time on the 20th day following the Notice of EI Assessment.  No documents received after that deadline will be considered.

**B.     Second Review by the Claims Administrator.**

**1.     Second Review EI Assessment.**

If a timely Second Review Request is made by a Claimant, the Claims Administrator will re-review the claim and determine the Claimant's Second Review EI Assessment.  In a Second Review, the Claimant's EI Assessment may increase, decrease, or stay the same.  In addition, the reasons for denial of a claim may change following Second Review, depending upon the circumstances of the claim on the record in Second Review and aspects of the claim review of which may not have been necessary on the record of the claim during the original review.

**2.     Notice of Second Review EI Assessment and Right of Appeal after Second Review.**

After a Second Review, the Claims Administrator will issue a Notice of Second Review EI Assessment to explain the determinations made in the Second Review.  This Notice will give the Claimant the opportunity, within 20 days after the date of the Notice, to appeal the Second Review EI Assessment to the Special Master by submitting to the Claims Administrator a Notice of EI Appeal.  If no timely Notice of EI Appeal is made, the Second Review EI Assessment shall become the Final EI Assessment on the claim and shall not be subject to appeal.

**C.     EI Appeal to the Special Master.**

**1.     Notice of EI Appeal.**

(a)     The Claimant may appeal the Second Review EI Assessment to the Special Master by submitting to the Claims Administrator a Notice of EI

Appeal within 20 days after the date of the Notice of Second Review EI Assessment.  The Claimant must specify in the Notice of EI Appeal the determinations of the Claims Administrator in applying the EI Review Criteria to the EI claim presented by the Claimant that are being appealed and as to which the Claimant seeks review by the Special Master.

(b)     Claimants represented by Primary Counsel shall submit a Notice of EI Appeal on line using the EI Appeal function in the Extraordinary Injury section of the Primary Counsel's Vioxx Portal, following the instructions on the Portal.  This function will permit Primary Counsel to indicate the specific determinations on the claim identified in the Notice of Second Review EI Assessment being appealed and to state the grounds for each such specific appeal.  Unrepresented Claimants shall submit a Notice of EI Appeal in hard copy form using a Notice of EI Appeal Form provided by the Claims Administrator.

(c)     A Claimant may submit a Statement of Issues on Appeal, if the Claimant chooses to do so.  Any such Statement must be submitted with the Notice of EI Appeal no later than 20 days after the date of the Notice of Second Review EI Assessment.

(d)     No additional documentation of any kind may be submitted on an EI Appeal.  An EI Appeal shall be decided on the record before the Claims Administrator at the time of the Second Review.  If no timely Notice of EI Appeal is made, the Second Review EI Assessment shall become the Final EI Assessment on the claim and shall not be subject to appeal.

**2.      EI Appeal Fee.**

A Claimant submitting a Notice of EI Appeal shall submit with such Notice payment by wire or cashier's check payable to the Claims Administrator an EI Appeal Fee of $700 to defray the costs of review by the Special Master and other costs associated with the appeal process.  The EI Appeal Fee is non-refundable.  If this EI Appeal Fee is not timely paid, the EI Appeal shall not proceed and the Second Review EI Assessment on the claim shall become the Final EI Assessment on the claim and shall not be subject to appeal.

**3.      The Record on an EI Appeal.**

(a)     The record of the claim on an EI Appeal shall consist of:

(1)     The Claimant's EI Claim Form;

(2)     All Required Documentation timely submitted by the Claimant on the claim through the time of the Second Review Request;

(3)      The Claims Administrator's Notice of Second Review EI Assessment;

(4)      The reasons noted by the Claimant for the appeal at the time the Notice of EI Appeal was submitted;

(5)      A Statement of Issues on Appeal by the Claimant, if submitted;

(6)      The database entries by the Claims Administrator relating to the claim; and

(7)      A Summary of Claims Administrator's Determinations, if requested by the Special Master.

(b)      No other documents or materials will be part of the record of the claim on an EI Appeal.

**4.**      **The Scope of an EI Appeal.**

(a)      An EI Claimant may appeal and the Special Master may review on appeal the Claims Administrator's application of the EI Review Criteria to the EI claim presented by an EI Claimant.

(b)      These matters are not appealable and will not be reviewed on an EI Appeal:

(1)      Denial of an EI claim as Untimely.

(2)      Denial of an EI claim of a Claimant not meeting the Basic Eligibility Requirements for the EI Program.

(3)      Determinations of the Claims Administrator as to the timeliness of any submission relating to an EI claim.

(4)      The terms of any of the EI Review Criteria.

(5)      An injury already placed in Tier 1 after the Claimant's Second Review EI Assessment.

(6)      The dollar value assigned by the Claims Administrator to the SMI Tier Levels.

(7)      Claims Administrator valuation of Third Eligible Events.

5.      **Determinations of the Special Master on an EI Appeal.**

(a)     The Special Master shall review the Claims Administrator's application of the EI Review Criteria to the determinations of the Claims Administrator on which the Claimant noted a timely appeal to determine whether the Claims Administrator in such determinations abused its discretion in the application of the EI Review Criteria to the Claimant.  If the Special Master concludes that the Claims Administrator abused its discretion in the application of the EI Review Criteria to the Claimant, the Special Master shall determine the proper application of the EI Review Criteria to the Claimant and issue a replacement determination on the issue appealed. If the Special Master concludes that the Claims Administrator did not abuse its discretion in the application of the EI Review Criteria to the Claimant, the Special Master shall affirm the determination of the Claims Administrator.

(b)     The findings of the Special Master on an EI Appeal may cause the Claimant's Final EI Assessment to increase, decrease, or remain the same as the Claimant's Second Review EI Assessment.

6.      **Claims Administrator Determinations after a Special Master Decision on an EI Appeal.**

(a)     After receipt of a decision by the Special Master on an EI Appeal, the Claims Administrator shall:  (1) review the decision of the Special Master and seek clarification from the Special Master of aspects of the decision, if any, on which the Claims Administrator determines clarification is needed; (2) make such adjustment in the Claimant's EI Assessment as is necessary pursuant to the decision of the Special Master; and (3) have discretion to make comparable adjustments in the Final EI Assessments of other EI Claimants as are necessary to implement the Special Master's decision that causes an increase in an EI Assessment, in a manner consistent with the circumstances of similarly situated Claimants.

(b)     The EI Assessment determined by the Claims Administrator pursuant to Section VII.C.6(a) shall be the Final EI Assessment for any Claimant subject to re-issuance of an EI Assessment as a result of an EI Appeal. Such Final EI Assessments shall not be subject to any further appeal.

(c)     The Claims Administrator shall issue a Notice of EI Appeal Assessment to the appealing Claimant and a Notice of Adjustment to EI Assessment to any other Claimants affected by the outcome of any EI Appeal.

## VIII.   PAYMENT OF INDIVIDUAL EI AMOUNTS

A.   **Timing of EI Payments.**

    1.   **Relative to Underlying Payments.**

        Threshold Eligibility for EI Payments cannot be determined until the Claimant has been found to be a Qualifying Program Claimant on the underlying MI or IS claim.  In addition, the Relative Points Value Adjustment cannot be applied until the Claimant's Points Award on the Claimant's underlying claim is final (by Claimant's acceptance or Special Master decision).

    2.   **Pro Rata Payment Process.**

        As a general rule, EI Payments cannot be made until all EI Assessment determinations have been made, because those awards are necessary to apply the Pro Rata Adjustment, if necessary.  However, if the Claims Administrator is able to project with reasonable certainty that not all the available funds will be necessary to pay all EI Assessments of eligible Claimants, the Claims Administrator has discretion to make EI Payments as the Assessments become final.

    3.   **Interim Payments.**

        No Interim Payments will be made on EI Assessments.

B.   **Payment Processes.**

    The processes of the Escrow Agent used for MI and IS Payments will apply to EI Payments, including the Payees on checks/wires.

C.   **Liens.**

    1.   **Private Liens.**

        (a)   The Claimants and their counsel will be reminded of their obligation to satisfy and discharge private liens under Section 12.1 of the Settlement Agreement.

        (b)   The Claims Administrator will observe any applicable Claims Administration Procedure for the handling of private lien notices as observed in the payment of MI and IS Extraordinary Injury Payments.

2.      **Government Liens.**

EI Payments based upon Economic Damages will not be subject to any further processes of the Lien Resolution Administrator or deductions for Medicare, Medicaid, or other Governmental Liens.  EI Payments based on Special Medical Injuries, however, could give rise to additional deductions to satisfy Medicare, Medicaid or other Governmental Liens, depending upon the nature of the medical injury found compensable.  The amounts withheld from payments on a Claimant's principal MI or IS claim were specific to the injuries on which that principal claim was based.  If the Special Medical Injury rests on injuries as to which Medicare, Medicaid or another Governmental entity made payments for medical care distinct from payments for the MI or IS injuries of the principal claim, a further lien may exist that the Lien Resolution Administrator will satisfy from amounts withheld from an EI Award.

| ATTACHMENT 1 – REQUIRED DOCUMENTATION | | |
|---|---|---|
| **Table A. Medical Expenses Required Documentation** | | |
| **No.** | **Document Type** | **Document Description** |
| **1.** | **Past Medical Expenses** | Billing statements or invoices showing the charges listed in this Form and the nature of the service or treatment giving rise to the charge. If the billing statements or invoices above do not sufficiently describe the service or treatment to establish that they resulted from the Claimant's Eligible Event(s), submit office notes, hospital records, or other documents showing the medical services rendered on the Date(s) of Service listed in this Form. |
| **2.** | **Medical Expenses Paid** | Canceled Checks, credit card statements, billing statements marked as PAID or other documents showing the payment of the Medical Expenses claimed in this Form by the Claimant. |
| **3.** | **Medical Expenses Due But Unpaid** | A current statement or invoice issued by any healthcare provider detailing medical expenses that remain due and owing but have not been paid and documents reflecting any payments made on such expenses not appearing in the current statement or invoice, such as amounts collected through garnishment proceedings or other collections activity. |
| **4.** | **Third Party Medical Expense Payments** | If the documents submitted above do not establish what the Claimant paid as Medical Expenses as opposed to what an insurance carrier or other third party paid or reimbursed the Claimant for such expenses, then also submit copies of explanations of benefits or other documents issued by any insurance carrier showing the reimbursements or payments by third parties. |

| **Table B. Lost Wages/Income Required Documentation** | | |
|---|---|---|
| **No.** | **Document Type** | **Document Description** |
| **1.** | **Tax Records for Past Measurement Period** | US Form 1040 or Form 1040EZ, with all attachments, for the Vioxx User for the Past Measurement Period (date of first Eligible Event through 11/9/07). The attachments must include the Vioxx User's W-2 Forms, 1099 Forms, and the K-1, Schedule C or other form reporting on self-employment income, for those years.  If the Vioxx User filed a joint tax return with his or her spouse, then all these tax records for the spouse, including all W-2 Forms and attachments to the return, must also be submitted for the LWI Past Measurement Period. |
| **2.** | **Tax Records for Two Prior Years** | US Form 1040 or Form 1040EZ, with all attachments, for the Vioxx User for the two years immediately before the year of the Vioxx User's first Eligible Event. The attachments must include the Vioxx User's W-2 Forms, 1099 Forms, and the K-1, Schedule C or other form reporting on self-employment income, for those years.  If the Vioxx User filed a joint tax return with his or her spouse, then all these tax records for the spouse, including all W-2 Forms and other attachments to the return, must also be submitted for the two years before the LWI Past Measurement Period. |

| No. | Document Type | Document Description |
|---|---|---|
| **Table B. Lost Wages/Income Required Documentation** | | |
| **3.** | **Employee Pay Records for Past Measurement Period** | If the Extraordinary Injury claim seeks Lost Wages/Income for a Vioxx User who was an employee for any period of loss, documents, such as paycheck stubs, showing the rate of pay and pay period for the Vioxx User for the LWI Past Measurement Period (date of first Eligible Event through 11/9/07). |
| **4.** | **Employee Pay Records for Two Prior Years** | If the Extraordinary Injury claim seeks Lost Wages/Income for a Vioxx User who was an employee for any period of loss, documents, such as paycheck stubs, showing the rate of pay and pay period for the Vioxx User for the two years immediately before the year of the Vioxx User's first Eligible Event. |
| **5.** | **Employment File for Past Measurement Period** | If the Extraordinary Injury claim seeks Lost Wages/Income for a Vioxx User who was an employee for any period of loss, the personnel file for the Vioxx User at each employer for the LWI Past Measurement Period (date of first Eligible Event through 11/9/07). |
| **6.** | **Employment File for Two Prior Years** | If the Extraordinary Injury claim seeks Lost Wages/Income for a Vioxx User who was an employee for any period of loss, the personnel file for the Vioxx User at each employer for the two years immediately before the year of the Vioxx User's first Eligible Event. |
| **7.** | **Self-Employment Records for Past Measurement Period** | If the Extraordinary Injury claim seeks Lost Income for a Vioxx User who was self-employed for any period of loss, a financial (profit and loss) statement of the business for each year included in the LWI Past Measurement Period (date of first Eligible Event through 11/9/07). |
| **8.** | **Self-Employment Records for Two Prior Years** | If the Extraordinary Injury claim seeks Lost Income for a Vioxx User who was self-employed for any period of loss, a financial (profit and loss) statement of the business for the two years immediately before the year of the Vioxx User's first Eligible Event. |
| **9.** | **Disability Proof Records** | If the Extraordinary Injury claim is made by an MI Vioxx User (*i.e.*, whose Primary Injury was an MI) seeking Past Lost Wages/Income based upon a Total or Partial Disability during any portion of the LWI Past Measurement Period resulting from the Vioxx User's Eligible Event(s), documentation to establish such Disability, consisting of: <br><br>1) Determination(s) by the Social Security Administration or private disability plan administrators that establishes the Vioxx User's Disability and that such Disability resulted from the Vioxx User's Eligible Event(s); or <br><br>2) If no such determination is submitted for any period in which Lost Wages/Income are claimed, Medical Records including office notes or records from office visits or in-patient care, for medical care relating to the conditions that caused the Disability and showing the nature, cause and extent of the Vioxx User's Disability.  Physician opinions or declarations not created contemporaneously in the course of medical care (and thus not appearing in the Vioxx User's Medical Records) will not be considered. <br><br>NOTE: IS Claimants do not have to submit these records, for the Injury Level found on the IS Claimant's underlying claim will control the disability finding. |

| Table B. Lost Wages/Income Required Documentation | | |
|---|---|---|
| **No.** | **Document Type** | **Document Description** |
| 10. | **Records of Earned Income During Past Measurement Period** | Documents showing the amount of gross earned income received from any Sources during the LWI Past Measurement Period. |
| 11. | **Third Party Income Payment Records** | Documents showing payments from Disability Insurer(s) or Other Third Party Payor(s), such as Social Security benefit statements, explanation of benefit forms or other documents showing the amounts the Vioxx User received from any third party as disability insurance payments or other benefits in lieu of earned income at the time of the Vioxx User's first Eligible Event and/or during the LWI Past Measurement Period. |

| Table C. Special Medical Injury Required Documentation | |
|---|---|
| **Document Type** | **Document Description** |
| **Special Medical Injury Records** | Medical Records substantiating the injury on which the Special Medical Injury claim is based and any other documentation which support the claim for Special Medical Injury. |

| Table D. Additional Extraordinary Damages Required Documentation | |
|---|---|
| **Document Type** | **Document Description** |
| **Additional Extraordinary Damages** | All Medical Records, financial records, and other materials that support the claim for Additional Extraordinary Damages.  If such Additional Extraordinary Damages are sought for future Medical Expenses and/or future Lost Wages/Income, or for any economic losses resulting from a claim for a Special Medical Injury, then the same type of documentation required in this Form for Past damages of that kind, including a list or table containing the information required by this Form for each Date of Service for Medical Expenses and each Source of Income for Lost Wages/Income, must be submitted.  *Label these:  Additional Extraordinary Damages.* |