UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX PRODUCTS LIABILITY LITIGATION | * | MDL Case No. 1657 |
| | * | |
| | * | SECTION L |
| This document relates to: | * | |
| | * | JUDGE FALLON |
| *Linda Isner, Executrix of the Estate of Jeffrey Isner, M.D., v. Seeger Weiss, LLP, et al.*, | * | |
| | * | MAGISTRATE JUDGE KNOWLES |
| | * | |
| 2:12-cv-02406-EEF-DEK | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**DEFENDANTS HUGHES HUBBARD & REED LLP AND TED MAYER'S MOTION FOR SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW**

Plaintiff Linda Isner enrolled in the Vioxx Resolution Program (the "Program" or "Resolution Program") in 2008, and she ultimately received the highest award of all of the awards issued through that Program. She received full payment of her multi-million dollar award in 2010. She subsequently filed suit against numerous participants in the settlement process, including Merck's legal counsel—the law firm of Hughes Hubbard & Reed LLP ("HHR") and attorney Theodore ("Ted") Mayer (collectively, "HHR Defendants")—alleging that she was wrongfully induced to enroll in the Program by misrepresentations made by the defendants as to the amount of money she would recover. In addition to the HHR Defendants, she also sued the Claims Administrator for the settlement—BrownGreer PLC and Orran L. Brown (a member of BrownGreer PLC) (collectively, "BrownGreer Defendants"), and attorney Christopher Seeger (who had a leadership role on behalf of all plaintiffs in negotiating the settlement) and his law firm, Seeger Weiss.

The claims against the HHR Defendants fail for many of the same reasons set forth in the motion for summary judgment filed concurrently herewith by the BrownGreer Defendants. Therefore, as noted more specifically below, where the legal arguments are largely duplicative, a

1150459v1

brief summary of supporting points will be made here and the more fulsome argument contained in the brief filed by the BrownGreer Defendants ("BG Brief") is expressly incorporated herein by reference [Rec. Doc. 64823].  All of the claims that Ms. Isner attempts to assert against the HHR Defendants fail as a matter of law and should be dismissed.

## BACKGROUND

The BG Brief provides a factual summary regarding the history of the Vioxx litigation, the Vioxx Resolution Program (including the claims evaluation process and the Extraordinary Injury ("EI") Program), the circumstances of Ms. Isner's enrollment in the Program, and the evaluation and payment of her claim.  *See* BG Brief at 3-14.  That summary is incorporated herein by reference.

## ARGUMENT

Ms. Isner asserts three separate claims against the HHR Defendants:  negligent misrepresentation; fraudulent misrepresentation; and a statutory claim under Chapter 93A of the Massachusetts General Laws (the Massachusetts consumer protection act).  All of these claims fail as a matter of law for the following reasons.

First, the Release that Ms. Isner executed in connection with her settlement bars any claims whatsoever against the HHR Defendants because the scope of parties covered by the Release includes Merck's attorneys.  *See* Part I, *infra.*

Second, the Release that Ms. Isner executed also contains express disclaimers stating: (1) that she was enrolling in the program "without relying on any representation or other statement made by or on behalf of, Merck or any other person"; and (2) that she acknowledged that "there is no guarantee that I will receive any settlement payment or, if any settlement payment is made,

2

1150459v1

the amount thereof." Such disclaimers preclude Ms. Isner's claims of misrepresentation. *See* Part II, *infra;* BG Brief, Part I.B (pp. 18–20).

Third, Ms. Isner's claims for negligent and fraudulent misrepresentation must fail because no actionable misrepresentation of any kind occurred. Statements of a promissory nature and predictions regarding future events that are not false when made are not actionable. *See* Part III, *infra*; BG Brief, Parts II.A and II.B (pp. 20–23).

Fourth, by her conduct, Ms. Isner waived any right to challenge the award yielded by the procedures of the Vioxx Resolution Program when she decided to accept and retain the $6.9 million award. *See* Part IV, *infra*; BG Brief, Part III (pp. 24–27).

Fifth, the alleged "dollar for dollar" recovery that Ms. Isner now seeks actually exceeds (by a substantial measure) the compensatory damages recoverable under Massachusetts law. *See* Part V, *infra*; BG Brief, Part IV (pp. 27–31).

Finally, Ms. Isner cannot establish a statutory claim under Chapter 93A because the transaction at issue here is not commercial in nature, and because she cannot establish that any underlying tort occurred. *See* Part VI, *infra*; BG Brief, Part V (pp. 31–32).

The arguments set forth in Parts I, II, III, IV, and V of the BG Brief are herein incorporated by reference, and the HHR Defendants rely upon those arguments to support their motion for judgment as a matter of law in their favor.

**I.      Ms. Isner Executed a Release That Bars Any Suit Against the HHR Defendants.**

When Ms. Isner decided to enroll in the Program, as part of her enrollment package, she provided a Release that she executed on October 30, 2008. *See* Ex. F (Oct. 30, 2008 Release of

Claimant Linda Isner).[1]  It contained the following provisions that directly relate to her present claims:

- "[I]n consideration for Merck's agreement to establish the Program, the significant expenses being incurred by Merck in connection with the Program, Merck's waiver of defenses (except as reflected in the Program criteria themselves) solely in the context of the application of the Program, and the opportunity to submit my claim into the Program, I hereby give and make the following releases, waivers, acknowledgements and agreements for the benefit of the Released Parties (this 'Release')."  *Id.* at 1.

- Under the third paragraph of page one, titled "Releases," plaintiff agreed to "knowingly and voluntarily release, remise, acquit and forever discharge the Released Parties from" any and all Claims and any and all Liabilities "*to any extent, or in any way, arising out of, relating to, resulting from and/or connected with VIOXX* and/or with an injury I (and/or any other Releasing Party) have ever claimed, or may at any time hereafter claim, VIOXX caused in whole or in part." *Id.* at 1 (emphasis added).

- "The term 'Released Parties' means all the parties, past, present and/or future, in any way and/or at any time connected with Vioxx and/or with any injury I (or any other Releasing Party) have ever claimed, or hereafter claim, VIOXX caused in whole or in part, Merck . . . an all those who may have acted in concert with Merck, together with their respective insurers. . . . These parties . . . also include, but are not limited to, . . . the respective past, present and/or future . . . *managers, principals, employees, consultants, advisors, attorneys, agents, servants, representatives, heirs, trustees, executors, estate administrators and personal representatives (or the equivalent thereto) of the parties referred to in this paragraph*." *Id.* at 1–2, ¶ (b) (emphasis added).

- "I acknowledge and agree that the releases set forth in this Release are irrevocable and unconditional, inure to the benefit of each Released Party, and *are intended to be as broad as can possibly be created*." *Id.* at 3, ¶ (e) (emphasis added).

Thus, under the terms of the Release, Ms. Isner agreed to release any claim that *in any way* arose out of, related to, resulted from or was in any way connected to Vioxx or any injury

---

[1]  All exhibits referenced herein are attached to the BrownGreer Defendants' Statement of Material Facts As To Which There Is No Dispute, filed contemporaneously with this Motion.

4

1150459v1

allegedly connected to Vioxx.  Moreover, she agreed that her Release should be interpreted "as broad as can possibly be created." *Id.*  Yet, the crux of her present claims are that she did not receive as much money as she should have received for settling her Vioxx personal injury claims.  A dispute, such a this one, regarding how a claim has been compromised, has an obvious connection to the existence of the underlying claim, and thus falls squarely within the scope of this Release.

Ms. Isner also agreed that the parties covered by the Release included Merck and any of Merck's attorneys, agents, or representatives.  *Id.* at 1–2, ¶ (b).  Defendant Ted Mayer was a member of the legal team that negotiated the settlement agreement on behalf of Merck.  Mr. Mayer was also one of Merck's representatives to the Gate Committee constituted under the Master Settlement Agreement.  His law firm, Defendant Hughes Hubbard & Reed LLP, has represented Merck throughout all of the Vioxx litigation, including with respect to the Resolution Program.  Thus, both Mr. Mayer and his law firm fall within the scope of persons covered by the Release.

In sum, all of the claims that Ms. Isner asserts against the HHR Defendants are barred by the Release that she voluntarily provided when she enrolled in the Resolution Program.  Accordingly, all of the claims that Ms. Isner asserts against the HHR Defendants should be dismissed.

**II.    The Specific Disclaimer Clauses Contained in Ms. Isner's Release Bar Any Claim That She Relied Upon Representations of the HHR Defendants.**

All of the alleged misrepresentations of which Ms. Isner complains took place prior to her execution of the Release she tendered upon enrolling into the Resolution Program.  The Release contains express language that belies any claim that she relied on any representations regarding the amount of any award that she would receive, including any representations

allegedly made by the HHR Defendants.  The arguments and authorities supporting this conclusion are set forth in full in the BG Brief at Part I.B (pp. 18–20), and are incorporated herein by reference.

In brief, Ms. Isner's Release contained express disclaimers that she had executed the Release "**WITHOUT RELYING ON ANY REPRESENTATION OR OTHER STATEMENT MADE BY OR ON BEHALF OF, MERCK OR ANY OTHER PERSON**," and that she acknowledged that "**THERE IS NO GUARANTEE THAT I WILL RECEIVE ANY SETTLEMENT PAYMENT OR, IF ANY SETTLEMENT PAYMENT IS MADE, THE AMOUNT THEREOF.**"  Isner Release (Ex. F) at 7 (original emphasis).  Because of these express disclaimers, Ms. Isner cannot assert a claim that she relied upon misrepresentations when she agreed to enter the settlement program.  *See, e.g., Danann Realty Corp. v. Harris*, 157 N.E.2d 597, 599 (N.Y. 1959) (plaintiff could not assert reliance on defendants' misrepresentations regarding operating expenses where sales contract denied that any such representations were made); *JMC Ne. Corp. v. Porcelli*, 954 N.Y.S.2d 521, 522 (App. Div. 2012) (internal quotation marks omitted) ("The specificity of the disclaimer destroys the allegations that plaintiff entered into the agreement in reliance on defendants' contrary representations."); *Capstone Enters. v. Cnty. of Westchester*, 691 N.Y.S.2d 574, 575  (App. Div. 1999) (Where an agreement "contains a clear disclaimer of reliance on oral representations a party is precluded from making subsequent assertions of fraudulent inducement based on oral representations.").

**III.    The Allegations as to the HHR Defendants Fail to State a Valid Claim for Intentional or Negligent Misrepresentation.**

Ms. Isner bases this lawsuit on her belief that she was allegedly promised a "dollar for dollar" recovery, but did not receive one.  But none of the communications that plaintiff identifies in her Complaint make any such promises.  Rather, as explained more fully in the BG

6

Brief, the comments purportedly made by Mr. Mayer were, on their face, predictions—not promises—and those predictions were stated with several significant caveats. For example, Mr. Mayer's October 22, 2008 e-mail, on which plaintiff bases these claims, clearly states that the future earnings award would be subject to some kind of discounting—the specific amount not stated. And, there was indeed a discount rate applied that accounted for future versus present value, as well as uncertainties about future earnings. Only statements of a factual nature that are false when made give rise to a cause of action; statements of a promissory nature or predictions about the future cannot support a claim for false or negligent misrepresentation. *See Robert E. Ricciardelli Carpet Serv. v. Home Depot U.S.A.*, 679 F. Supp. 2d 192, 208 (D. Mass. 2010); *see also Hallmark Inst. of Photography, Inc. v. CollegeBound Network*, 518 F. Supp. 2d 328, 332 (D. Mass. 2007) ("Defendant may not be held liable if the representation concerned a matter of opinion, estimate or judgment, which was not susceptible of actual knowledge at the time of its utterance." (internal quotation marks omitted)). In short, the statements attributed to Mr. Mayer in Paragraphs 27 and 28 of the Complaint were not false. The arguments and authorities supporting this conclusion are set forth in full in the BG Brief at Parts II.A and II.B (pp. 20–23), and are incorporated herein by reference.

**IV.     By Accepting and Retaining the $6.9 Million Settlement Award Issued by the Resolution Program, Ms. Isner Has Waived Any Right to Press the Claims She Now Asserts.**

The thrust of Ms. Isner's claims is that she relied on alleged misrepresentations when she enrolled in the Resolution Program. But, by her conduct, she ratified the terms of the Master Settlement Agreement and its implementation. In the context of contractual relationships, a party can waive her right to take action based on alleged fraud or other wrongful acts if her own conduct evidences a ratification of the underlying agreement. *Cabot Corp. v. AVX Corp.*, 863 N.E.2d 503, 515 (Mass. 2007). A party ratifies an otherwise voidable agreement "by

7

intentionally accepting benefits under the contract" or "by . . . acquiescing in the contract for a period of time after he has the opportunity to avoid it." *Id.* at 515 (internal quotation marks omitted); *see also Deren v. Digital Equip. Corp.*, 61 F.3d 1, 2–3 (1st Cir. 1995) (collecting cases finding that retaining benefits for a substantial period of time constitutes ratification). More specifically, to avoid having her claims barred by a ratification or waiver defense, plaintiff could not retain the monies that were given to her pursuant to the terms of the agreement that she claims she was fraudulently induced to enter. *See Seward v. B.O.C. Div. of G.M.C.*, 805 F. Supp. 623, 633 (N.D. Ill. 1992) (where plaintiff retained money received in exchange for release and continued to receive additional benefits while simultaneously pursuing lawsuit, he attempted "to have his cake and eat it too," and could not avoid a ratification defense); *Nat'l Am. Corp. v Fed. Rep. of Nigeria*, 448 F. Supp. 622, 645 (S.D.N.Y. 1978) ("Instead of objecting and possibly seeking rescission, plaintiff retained the money . . . conduct unequivocally ratifying the Agreements."), *aff'd*, 597 F.2d 314 (2d Cir. 1979). Ms. Isner cannot now attempt to base a tort claim on circumstances surrounding a contract that she has ratified. The arguments and authorities supporting this conclusion are set forth in full in the BG Brief BG Brief, Part III (pp. 24–27), and are incorporated herein by reference.

V. **Where the Settlement Award Plaintiff Ultimately Received Exceeded the Amount Permitted Under Massachusetts Law, She Cannot State Any Cognizable Tort Claim.**

Damages constitute an essential element of any tort claim. *See, e.g.*, *Van Brode Grp., Inc. v. Bowditch & Dewey*, 633 N.E.2d 424, 429 (Mass. App. Ct. 1994) (it is "fundamental that a tort action cannot be sustained without proof of damages"). In this case, the question of whether plaintiff was damaged must be evaluated from the standpoint of what position plaintiff would have been in had she not entered the Program. Ms. Isner cannot prove that she would have recovered more compensatory damages than what she actually received—an award for which she

8

did not have to incur the substantial expenses of trial and expert witnesses, nor the substantial delay inherent in waiting for a trial date the subsequent exhaustion of appeals.  The arguments and authorities supporting this conclusion are set forth in full in the BG Brief at Part IV (pp. 27–31), and are incorporated herein by reference.

**VI.	Ms. Isner's Allegations Fail to State a Valid Claim Under Massachusetts Consumer Protection Law.**

Ms. Isner has asserted a claim under the Massachusetts consumer protection statute—specifically, Massachusetts General Laws Chapter 93A, Section 9.  The allegations that Ms. Isner makes, however, fall outside the scope of Chapter 93A, which by its terms only applies to transactions that occur in trade or commerce.  The arguments and authorities supporting this conclusion are set forth in full in the BG Brief at BG Brief, Part V (pp. 31–32), and are incorporated herein by reference.

## CONCLUSION

For the reasons set forth above, the motion of the HHR Defendants should be granted.

Dated:  February 10, 2014

        Respectfully submitted,

        */s/ Dorothy H. Wimberly*
        Dorothy H. Wimberly, 18509
        STONE PIGMAN WALTHER
        WITTMANN L.L.C.
        546 Carondelet Street
        New Orleans, LA 70130
        Phone: 504-581-3200
        Fax:    504-581-3361

        *Defendants' Liaison Counsel*

Douglas R. Marvin
Eva Petko Esber
M. Elaine Horn
WILLIAMS & CONNOLLY LLP
725 Twelfth Street N.W.
Washington, DC  20005
Phone: 202-434-5000

John H. Beisner
Skadden, Arps, Slate, Meagher & Flom LLP
1440 New York Avenue, N.W.
Washington, DC 20005
Phone: 202-371-7000

*Counsel for Defendants BrownGreer PLC, Orran L. Brown, Hughes Hubbard & Reed LLP, and Theodore Mayer*

**CERTIFICATE OF SERVICE**

      I hereby certify that the above and foregoing Motion for Summary Judgment and Incorporated Memorandum of Law has been served on Liaison Counsel, Russ Herman, Ann B. Oldfather, and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8(C), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 10th day of February, 2014.

                                                              /s/ Dorothy H. Wimberly
                                                              Dorothy H. Wimberly, 18509
                                                              STONE PIGMAN WALTHER
                                                              WITTMANN L.L.C.
                                                              546 Carondelet Street
                                                              New Orleans, Louisiana  70130
                                                              Phone:  504-581-3200
                                                             Fax:     504-581-3361
                                                             dwimberly@stonepigman.com

                                                             Defendants' Liaison Counsel

1150459v1