**EXHIBIT C**



Ned P. Siegfried
Mitchell R. Jensen*
Michael A. Katz
Brad L. Anderson
Randal G. Payne*
Kenneth D. Lougee††
Mark R. Taylor†
Steven Jensen
Brian C. Stewart
Steven J. Johnson
C. Ryan Christensen‡
Taylor R. North
Lauren E. Channell
Todd A. Bradford

# SIEGFRIED & JENSEN

OF COUNSEL
Steele & Biggs

Joseph W. Steele*
David C. Biggs*

OF COUNSEL
Parker & McConkie

Bradley H. Parker
James W. McConkie II
Alex Evans

*Also admitted in California
††Also admitted in Alaska
‡Also admitted in Arizona
†Also admitted in Idaho

October 3, 2013

Travis Sales  *Via E-Mail*
BAKER & BOTT
One Shell Plaza
910 Louisiana Street
Houston, Texas 77002-4995

RE: *The State of Utah v. Vioxx*
Rule 30(b)(6) Deposition of Alex Yei

Dear Mr. Sales:

The State of Utah responds to your letter of September 23, 2013 concerning the deposition of Alex Yei. The State believes that it has satisfied the requirements of Federal Rules of Civil Procedure Rule 30(b)(6). That Rule provides in pertinent portion that the person designated "must testify as to information known or reasonably available to the organization." As discussed below we have conducted additional investigation, but first I would like to discuss the appropriate and reasonable steps we had already taken leading up to the designation of Alex Yei as the 30(b)(6) deponent.

Long ago, we told Merck that we believed Brenda Strain, who is now deceased, made the data runs. We produced Alex Yei, no longer a state employee, but supervisor of Brenda at the time in question. Mr. Yei had much information as to the type of the report, the contents of the report, and how many of these reports Utah Medicaid ran per week. The answer was many reports. That information was not of interest to Merck. Rather Merck sought information as to the state of mind of a deceased person. Merck claimed that Mr. Yei had done insufficient investigation to answer Merck's questions. The facts are otherwise.

For example, you repeatedly ask if the State had done usage analysis for drugs that were off the market. The question that you did not ask was if the State did usage analysis of a class of drugs when one of those drugs went off the market midway through the study period. It is beyond dispute that Vioxx was on the market during the third quarter of 2004 and thus was not off the market during the study period. You were uninterested in that information.

1

You were uninterested in the historical context of the computer runs. Merck removed the drug from the Market on September 30, 2004. Merck informed the FDA and the public that it had discovered cardiovascular dangers revealed in the APPROVe study. Merck said that this was the first time it knew of cardiovascular risk. At that time, neither the State nor the public had any information that would lead them to suspect that Merck was not candid. Merck's CEO, Ray Gilmartin testified before the Senate in November 2004 that the APPROVe study was the first inkling Merck had of cardiovascular problems with Vioxx. Again, the State had no inkling that this testimony was not the complete truth. Again, you were not interested in such testimony.

The earliest that the computer run could have occurred was December 16, 2004. Merck and Mr. Gilmartin had told the public that there was a cardiovascular problem with Vioxx. Utah had never confirmed or eliminated that possibility. Mr. Yei was prepared to testify that it would not have been unusual to try to confirm or deny the information Merck gave the public as to the existence of cardiovascular problems in the COX-2 inhibitors. Mr. Yei was further prepared to testify that there is nothing on the computer runs that either indicates an increased rate of cardiovascular problems (there was no comparator group) or that would indicate Merck's falsity.

If you wish testimony as to when the Utah Attorney General obtained information as to Merck's falsity, we refer you to the affidavit of David Stallard filed with Utah's Motion for Summary Judgment. If Mr. Stallard testified, he would indicate that the Utah Attorney General was not given the information on the printout and would have had insufficient information from the printout to warrant further investigation. There was only one attorney in the Medicaid Fraud Control Unit, Wade Farraway. Mr. Stallard has asked Wade Farraway if he had knowledge of the printout or otherwise had knowledge of Vioxx or misrepresentations of Merck before the late summer of 2005. Mr. Stallard asked Mr. Farraway if he requested the printouts from Brenda Strain. If called to testify, Mr. Farraway will state that his first knowledge of any problems with Vioxx came when either he or Mr. Stallard contacted Pat O'Connell of the Texas Medicaid Fraud Control Unit to inquire as to the contents of the Texas complaint. Mr. Farraway did not request the Brenda Strain computer print-out.

You criticized Mr. Yei for not calling others in the Health Department to inquire as to any knowledge they might have gained as to the computer printouts that he did not personally know. The question could only be understood in the context of the small number of individuals who would have knowledge of such printouts. You deposed Mr. Randy Baker, who handled such requests. You deposed the state pharmacists, Duane Parke and Tim Morley, who would have been likely candidates for information. We refer you to their depositions for their testimony. Mr. Yei would have learned nothing more from those sources.

Nonetheless, we have conducted further investigation consistent with your request. In Alex Yei's deposition, he was asked if he spoke to a Scott Ellis, Vance Eggers, or John Bronburger. John Bronburger (actually spelled John D. Bromberger)

2

immigrated to Utah from South Africa in 2007 and started work for the State in 2008. He worked with nursing homes and not pharmaceuticals. He did not know the deceased Brenda Strain. Asking Mr. Bromberger about pharmaceutical events in 2004 would be fruitless.

You also asked about Mr. Vance Eggers. Mr. Eggers died thirteen months ago. Speaking with Mr. Eggers would not only have been fruitless but impossible. You asked about Mr. Scott Ellis. Mr. Ellis worked for the children's health insurance program (CHIP.) Mr. Baker hired Mr. Ellis as Mr. Baker's assistant in approximately 2007-2008. It is not likely that he would have information concerning events in December 2004. He did not create the data run and would have no information as to why the run was made. Nonetheless, we are in the process of trying to locate him and will let you know if he says anything different.

We reviewed the depositions of Mr. Parke, Mr. Morley and Mr. Yei and ran across two other names: Colleen Hilton and John Curtis. Colleen Hilton (actually spelled Kylene Hilton) retired from the State of Utah last December. She was between Alex and Brenda in the chain of command. She did not get involved in Brenda's data pulls because Brenda was the expert. She thinks we have covered the likely basis for who might have given her work, i.e., Parke, Morely, Yei or Farraway. She suggested that we check with the Office of Inspector General, which we have done as discussed below. John Curtis (actually spelled John Curless) is out of the office until October 15, and we can speak to him then.

In your letter you asked for "metadata associated with the two documents…from whose computer they were retrieved, whose custodial files they came from, and any drafts or transmittals of the documents." We have been unable to locate an electronic copy of this file, and therefore we have not been able to find any metadata and we do not know from whose computer the documents came. We believe these documents were most likely in Duane Parke's custodial file, but we are not certain. We believe Duane's testimony to be the best source of information on that subject. We do not have any drafts or transmittals of the documents. As for these issues, though, we have contacted the Office of Inspector General to see if they can find any more information on these points. Nolene Warrick, of that department, is addressing the matter and will contact us when she completes her investigation.

During the deposition, Mr. Yei was also asked who may have asked for the document to be produced. Brenda Strain worked independently, but it most likely would have possibly been Duane Parke or Wade Farraway who is in the Medicaid Fraud Control Unit. You have already deposed Mr. Parke. Mr. Farraway said he did not do so and that he did not know anything about Vioxx until 2005 after the Texas AG filed its lawsuit.

Simply put, the individuals that worked with data believe that the deceased Brenda Strain created the data runs. You have deposed her boss and the pharmacists. You have deposed the individual in charge of data. We do not know anyone else that would have knowledge about the computer run. The State does not have any more

3

information and we have made available all parties that would have had dealings with Ms. Strain. We think we have turned all stones. That is all that we are required to do.

The rule only requires us to provide information within the State's control or that the State could reasonably obtain.

Sincerely,

/S/
Stephen D. Behnke
Richard Schulte
*Attorneys for the State of Utah*

SDB/kh
cc:   Dawn Barrios