UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re:  VIOXX Products Liability Litigation | MDL No. 1657 |
| This Document Relates to: | SECTION L |
| State of Utah v. Merck, et al. | JUDGE ELDON E. FALLON |
| | MAGISTRATE JUDGE KNOWLES |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO MOTION FOR PROTECTIVE ORDER**

Merck continues to ignore the facts, and misrepresent the testimony.  Utah does not say that it knows nothing about the documents.  Utah has put up a series of witnesses, including Duane Parke, Tim Morley, Randy Baker, Brenda Bryant and Alex Yei who can testify as to the contents of the documents.   Utah can also provide evidence that Duane Parke created the documents, that they were not printed, and there is no evidence that they were forwarded to anyone.  *See* Exhibits A and B.

Merck did not raise metadata showing creation by Duane in its original moving papers as if the subject could be ignored.  Merck faulted the State for failing to produce a witness that could testify as to why and how Duane created the documents.  Merck faults the State's investigation for failing to know about the screenshots earlier.  The State's investigation was reasonable since it did not know about the screenshot. Certainly, Alex Yei would not have tried to explain the work of the deceased Brenda Strain had he known of the screenshots showing

1

Duane to be the author. However, all of Mr. Yei's explanations demonstrate that these documents were not created to investigate or initiate litigation by the State. Those explanations are consistent with Baker's affidavit that this document was a "data dump." It is also consistent with Mr. Parke's deposition testimony that it was a query on the data warehouse. "I don't know what – to what end this, is, is, other, than a basically numerical listing of clients."

The State knew that it had three employees capable of doing a pharmaceutical data run. The most knowledgeable data person, Randy Baker, denied doing the spreadsheets. The person, who did the spreadsheets, Duane Parke, had forgotten them. The fact that Duane forgot them is, in human experience, not unusual. The intervening time between creation of the two documents and deposition was 7 years 11 months and 7 years and 7 months, respectively. The metadata shows that Duane created the initial spreadsheet on December 16, 2004 and revised it on December 20, 2004. The calendar, attached as Exhibit C, discloses that December 16, 2004 was a Thursday and December 20 was a Monday. The creation time equates to four days including a weekend. Duane did nothing else to the spreadsheet thereafter and neither did any other person. Duane created the April document before work hours on April 5, 2005 at 7:02 a.m. Duane revised the document also before work hours on April 7, 2005 at 7:14 a.m. No one else did anything to the document. Essentially, Merck faults the State for not knowing what Duane did on four workdays, eight years prior to his deposition.

The court may read the opposition in its entirety. Merck never mentions the fact that the spreadsheets were never printed. It is as if Merck expects the court to ignore this central fact, which demonstrates beyond dispute that Utah Medicaid was not contemplating a Utah False Claims Action in December 2004. Along these lines, there are no other documents such as

emails or memos between Parke and anyone else at the State concerning 2004 litigation.

Contrary to Merck's representations, the position of the state has been consistent. No one knew about Duane's spreadsheets.   The State did an extensive investigation and could not find a witness who knew anything about the spreadsheets.  He never printed his work.  *See* Exhibit A and B.  These facts are also completely consistent with Duane's testimony that no one asked him to do the runs.  Page 222, lines 22 – Page 223, line 1. The fact that the spreadsheets were never printed is consistent with Duane's testimony that he was not supposed to look at provider data. Page 224, line 24 – Page 225, line 2.

Every party is entitled to discovery.  Every party is entitled to know the facts of the case. Nevertheless, a party is not entitled to make up its own facts.  "A strong policy underlying the modern rule of discovery together with pre-trial procedures makes a trial loss a game of Blindman's Bluff and more a fair contest with the basic issues and facts disclosed to the fullest extent possible."  *Glacier Land Company LLC vs. Claudia Klane & Associates,* 154 P.3d 852 (UT App. 2006) The metadata establishes beyond reasonable debate that the spreadsheets were never printed.  Yet Merck persists in ignoring the following facts.  Should the court wish a stipulation to these facts, the State will agree.

1.   Duane created a spreadsheet on Thursday, December 16, 2004.  He revised the spreadsheet on Monday, December 20, 2004.  Neither Duane nor any other person thereafter revised the spreadsheet.  The Spreadsheet was never printed.  At his November 2012 deposition, Duane did not remember creating the spreadsheet.

2.   Duane testified that no one told him to do an evaluation of claims against any of the COX-2 manufacturers.  He does not remember anyone discussing such a project.

3. Duane testified that he knew of no fraud committed by Merck or its employees.

4. Duane created a second spreadsheet on April 5, 2005. Duane created this spreadsheet before working hours. Duane last revised this spreadsheet on April 7, 2005. This spreadsheet, like the earlier one, was never printed.

5. No employee of the Utah Medicaid Department saw the unprinted spreadsheets prior to the depositions in 2012. Duane testified that he never heard anyone talk about the possibility of a lawsuit against Merck.

6. At all times prior to October 2013, the State did not know of the metadata. Given the testimony of Baker and Parke, the only other possible data puller was the deceased Brenda Strain.

7. Brenda Strain's supervisor was Alex Yei. Mr. Yei was prepared to testify as to the contents of the spreadsheets and the manner in which Ms. Strain performed her duties. This information was the total knowledge of the Utah Medicaid department prior to discovery of the metadata.

8. At no time, prior to October 2013, did anyone working for or with Utah Medicaid know that Duane created both spreadsheets. This is consistent with the testimony of Baker, Morley and Yei that no one knew anything about Duane's spreadsheets. No personal investigation by Alex Yei would have turned up evidence of anyone seeing the unprinted spreadsheets.

9. In summary, Duane Parke created the spreadsheets on no more than 4 days, 8 years prior to his deposition. The spreadsheets were never printed.

Should Merck find it necessary to have testimony that the dates on the spreadsheet were

accurate and that the documents were never printed, the State will provide such a witness.  To wit, the State will produce Randy Baker, the person most knowledgeable as to Medicaid computing practices, to testify as to the stored electronic copies of these documents and the metadata connected to them.  It is, however, impossible to read Duane Parke's mind as to the precise reason he created the two spreadsheets when he did so on four days eight years prior to his deposition, though Mr. Parke can testify generally as to why he created such documents.  As can be told from the affidavit of Randy Baker, Baker's deposition, Parke's deposition and Alex Yei's deposition, the state actually knows a great deal from the face of the documents.  They know that the large spreadsheet was a document dump from the data warehouse without analysis.  They know that the second was a quarterly comparison of the COX-2 drugs.  Whenever Merck has listened, the state employees told the same story.

Merck claims "it would be extraordinarily unfair to permit Utah to offer an explanation or position regarding the documents at trial when it could not do so during discovery" and Utah should be precluded from providing any evidence or position regarding the documents in further pretrial motions or at trial.  Reply to Utah's Response to Motion to Compel, at 4.  As stated above, Utah is able to explain the contents of the spreadsheets from their face.  Duane Parke, for instance, testified at length about the first spreadsheet stating, *inter alia*, "it was clearly done at the data warehouse," that it was for the time period July 2003 through December 2004, "clearly this is patient specific,"  and "it's just a plain and simple enumeration of client, diagnosis, category of service, and they're—whether they had a claim or not."  *See*, Deposition of Duane Parke, at 221-224.

The State also has ample evidence that no one requested this document since the State

has evidence it was not printed or forwarded to anyone in written form.  Since the State's employees would create and/or review data queries, they are competent to testify as to the contents of one, even if they did not create it (or remember creating it).  The State of Utah should be permitted to take a position concerning the documents that is consistent with the evidence discussed above, such as the State's employees who can discuss what the spreadsheets represent from their face as well as the electronically stored evidence about whether it was printed, among other things.  On the other hand, Merck should not be permitted to posit an imagined scenario concerning these documents based on nothing more than speculation.

*QBE Ins. Corp. v. Jorda Enter., Inc.*, 277 F.R.D. 676 (S.D. Fla. 2012), cited by Merck, is not applicable.  As discussed above, Utah is not, and has never, said it has no knowledge or position as to the two spreadsheets.  Instead, it has extensive knowledge based on the face of the spreadsheets combined with years of running similar types of queries and Duane Parke's work routines, in addition to the metadata which establishes certain facts about the creation and non-transmittal of them.  Utah has already given deposition testimony and documentary evidence supporting these facts and "opinions."

Perhaps the state might have avoided this controversy had the state known of the metadata sooner.  However, the testimony of the state employees is consistent with the discovered metadata facts.  No state employee testified that he had seen the spreadsheets.  No state employee speculated about a Medicaid investigation into Merck's fraud in December 2004.  As stated, it is impossible to find a person other than Mr. Parke to testify as to documents that Mr. Parke never printed.  Under Federal Rule 26(e)(1)(A) the State complied with its obligation of timely correction of the information previously believed. i.e., Brenda Strain was the likely

creator of the documents. The State's supplementation of the record with respect to Duane

Parke's creation of the document was made as soon as it was discovered. The rule is timely

supplementation. The State met that rule.

Merck has known for five months that Mr. Parke created the documents. It is

unreasonable to wait until Remand to bring this motion.

Those are the facts that Merck cannot conger away. Since Mr. Parke has been deposed

and the documents were never printed, it is impossible for the State to produce a witness other

than Mr. Parke with knowledge. Mr. Parke has no memory of the documents and no one else

saw them. Merck has had a theory of the case. Unfortunately, that theory holds no water. When

the theory held no water, Merck tried for discovery sanctions. Compelling discovery of non-

existent witnesses provides no admissible evidence.

The motion for protective order should be granted.

DATED this 5th day of March, 2014.


_/S/_ _____
Joseph W. Steele
Kenneth D. Lougee
SIEGFRIED & JENSEN
5664 South Green Street
Salt Lake City, UT  84123


_/S/_ _____
Richard W. Schulte
812 E. National Road, Suite A
Vandalia, OH  45377

_/S/_____

Eric H. Weinberg
THE LAW OFFICES OF ERIC H. WEINBERG
149 Livingston Avenue
New Brunswick, NJ  08901

*Attorneys for Plaintiff*


## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing **PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO MOTION FOR PROTECTIVE ORDER** has been served on Liaison Counsel, Russ Herman, Phillip Wittmann and Ann Oldfather, by U.S. Mail and e-mail or by hand delivery and e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8(B), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 5th day of March, 2014.

_/S/_____