**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| In re:  VIOXX ) | **MDL NO. 1657** |
| **PRODUCTS LIABILITY LITIGATION** ) | |
| ) | **SECTION: L** |
| **THIS DOCUMENT RELATES TO:** ) | |
| ) | **JUDGE FALLON** |
| **SHERRILL HERKE, individually and** ) | |
| **on No. 2:09-cv-07218** ) | |
| **behalf of a proposed class of those** ) | |
| **similarly situated,** ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | |
| ) | |
| **MERCK & CO., INC.,** ) | |
| **Defendant.** ) | |
| ) | |

**MERCK'S OPPOSITION TO INTERESTED PARTY JAMES RATLIFF'S MOTION TO
APPROVE DIRECT MAIL NOTICE TO CLASS MEMBERS, TO REQUIRE MERCK
TO PAY COSTS ASSOCIATED WITH SUCH ADDITIONAL NOTICE, AND TO
EXTEND CLAIMS PERIOD BY NINETY DAYS**

Defendant Merck Sharp & Dohme Corp. ("Merck") respectfully requests that the Court

deny James Ratliff's motion to approve direct mail notice to class members, to require Merck to

pay costs associated with such additional notice, and to extend the claims period by 90 days.

Merck has already spent over $1.6 million on notice in this case – and has voluntarily

agreed to incur an additional $126,000 as part of a supplemental claims reminder program to

maximize participation in the consumer class settlement previously approved by the Court.

Nonetheless, and despite this Court's unequivocal determination that "the multipronged notice

strategy implemented" "constitut[es] the best practicable notice and satisf[ies] due process," Mr.

Ratliff now seeks to upend the notice plan based on a low claims rate.  In the main, Mr. Ratliff

contends that the low percentage of class members that have submitted claims justifies direct

mail notice and an extension of the claims deadline.  However, Mr. Ratliff's request was not

brought until after the Court granted final approval to the consumer settlement and after concerns regarding the amount of attorneys' fees available in this case set in.  Because the motion was filed long after the deadline for raising challenges to the consumer settlement (including notice) had expired, Mr. Ratliff's motion is untimely and should be rejected for this reason alone.  But even if it were timely, Mr. Ratliff's motion fails on the merits because:  (1) the $1.6 million, "multipronged" notice plan implemented in this case easily satisfied the minimal requirements imposed by Rule 23 and due process; and (2) the Court lacks the authority to modify the claims deadline, a bargained-for term of the Settlement Agreement.

## FACTUAL BACKGROUND

This Court granted final approval to the Vioxx consumer class settlement on January 3, 2014, following a Fairness Hearing that was held on December 13, 2013.  (Dkt. 64,784.)  One of the terms of the settlement is a fixed, nine-month claims period that was a product of negotiations between the Plaintiffs' Steering Committee ("PSC") and Merck.  (*See* Settlement Agreement, Section 5.12.)

As part of its ruling finally approving the settlement, the Court resolved that "the Notice and Notice plan as carried out satisfy the requirements of Rule 23(e) and due process. . . . [T]he multipronged notice strategy implemented has successfully reached the putative Class, thus constituting the best practicable notice and satisfying due process."  (Dkt. 64,784, at 25.)  The Notice Program endorsed by the Court was designed in large part by notice expert firm Kinsella Media, LLC ("KM").  The PSC and Merck worked to ensure maximum exposure among class members to the notice materials.  Dr. Shannon Wheatman, a Senior Vice President of KM, scrutinized the Notice Program in this case and concluded that it was "designed to reach the greatest practicable number of Class Members."  (*See* July 22, 2013 Decl. of Dr. Shannon R.

1154420v1

Wheatman ¶ 15, Dkt. 64,502-3.)  Dr. Wheatman "first determined that it would not be possible to mail notice to Class Members"; thus, a "paid media notice program" was devised.  (*Id.* ¶ 10.) Dr. Wheatman, who has given expert testimony regarding class notice in numerous class actions and even helped develop "model" notice forms for the Federal Judicial Center, explained that the Notice Program in this case would "effectively reach at [least] 80% of Adults 50+ . . . deliver a Notice that will capture settlement Class Members' attention, and provide them with the information necessary to understand their rights and options."  (*Id.* ¶¶ 4-7, 38.)  This included publication in consumer magazines (*Jet* and *National Geographic*), newspaper supplements (*Parade* and *USA Weekend*), national network and cable TV advertising, and Internet banner advertising (AARP Online, AOL Media Network, Google Display Network, and Keyword Search Campaign), as well as a dedicated website, www.vioxxsettlement.com.  (*Id.* ¶¶ 22-29.) An earned media outreach program was also created, which included a multimedia press release with a post on various social networks; custom blogger outreach; alerts sent to major broadcast outlets, and photo and video distribution.  (*Id.* ¶ 29.)

In advance of the Fairness Hearing, Dr. Wheatman submitted another declaration detailing the successful implementation of the Notice Program.  (Decl. of Dr. Shannon R. Wheatman on Implementation of Settlement Notice Program ("Wheatman Implementation Decl.") ¶ 18, Dkt. 64,728-2.)  In that declaration, Dr. Wheatman stated that the Notice Program "reached approximately 81.64% of potential Class Members through Published Notice"; the materials were "noticeable, clear, concise, substantive, and informative"; and "the Notice Program provided the best notice practicable under the circumstances."  (*Id.* ¶¶ 4b-5.)  With respect to the paid media notice, Dr. Wheatman explained that the circulation of the national consumer magazines featuring the published notice ranged from 900,000 to 4,000,000, while the

1154420v1

circulation of the newspaper supplements disseminating the notice had circulations ranging from 22,250,000 to 32,500,000.  (*Id.* ¶ 10.)

The paid media component of the Notice Program ended on September 25, 2013.  (*Id.* ¶ 21.)  Certain features of the Notice Plan are ongoing, however, including the official Vioxx settlement website, which includes notice of the settlement and is periodically updated.  (*Id.* ¶ 15.)  In addition, the national multimedia news release ("MNR") remains available to reporters and consumers online through the claims deadline.

Even though the Court endorsed this comprehensive Notice Program and granted final approval to the class settlement, Merck has voluntarily agreed to finance a limited $126,000 Claims Reminder Program designed to encourage greater participation in the settlement, particularly in Kentucky and New Mexico.  (*See* Decl. of Dr. Shannon R. Wheatman on Claims Reminder Program (attached as Ex. 1).)  The Reminder Program, which goes above and beyond what was provided for in the Notice Program approved by the Court, includes quarter-page ads in five Kentucky periodicals and quarter-page ads in four Hispanic newspapers in New Mexico, as well as sixty-second radio spots that will run on Hispanic radio for two weeks in New Mexico.  (*Id.* ¶¶ 6, 7.)  The Reminder Program also includes the following nationwide components:  (1) a single banner ad to be included in the AARP eNewsletter that is sent to approximately 3,000,000 subscribers; (2) a full-page ad in *Arthritis Today*; and (3) continuing the keyword search campaign until the claims filing deadline.  (*Id.* ¶ 8.)

In addition, as previously reported to the Court, Merck will be paying voluntarily for a number of claims-reminder efforts that BrownGreer is undertaking, including:  (1) sending reminder letters to personal injury settlement program claimants who may not have released economic loss claims; (2) sending e-mails to attorneys who participated in the Vioxx personal

1154420v1

injury settlement program asking them to remind clients who may have claims; (3) sending reminder e-mails to class members who have begun (but not completed) an on-line claim form; (4) sending reminder e-mails to class members who have registered for portal access to the claims website but have not yet begun a claims form; and (5) sending letters to class members who have requested claims documents but have not yet submitted a claims form.  (Settlement Administration Status Report No. 2, at 1-2, Dkt. 64,857 (filed Mar. 19, 2014).)  These efforts appear to have prompted an increase in claims in recent weeks.

James Ratliff, a member of the class who was also the named plaintiff in a Vioxx-related consumer-fraud class action against Merck in Kentucky state court, initially opposed the MDL consumer settlement.  However, the parties resolved the concerns expressed by Mr. Ratliff, and his objections were withdrawn in a joint letter to the Court on November 7, 2013 from counsel for Mr. Ratliff, counsel for Merck and the PSC.  (*See* Dkt. 64,784, at 8.)  When Mr. Ratliff withdrew his opposition to the settlement, the details of the settlement, the Notice Program and its implementation were within the public domain and known to him and his counsel.  However, Mr. Ratliff chose not to assert any objections to the settlement by November 9, 2013, the deadline for objecting to the consumer settlement.  Mr. Ratliff also failed to raise any objections at the Fairness Hearing, and he did not appeal the Court's ruling.[1]  Further, counsel for Mr. Ratliff was advised about the proposed content of the Claims Reminder Program, and his input was considered by the PSC and Merck.

Now, more than four months after the deadline for objecting to the consumer settlement expired – and more than two months after the Court's final approval of the settlement – Mr.

---

[1]  One objector has appealed the Court's ruling to the Fifth Circuit, but her objections are based on attorneys' fees, not notice.  Merck has moved to dismiss the appeal as premature since the issue of fees has not been finally decided.

5

Ratliff has brought the instant motion requesting, *inter alia*, direct mail notice to an unspecified subset of settlement class members; that Merck pay for the additional notice; and that the claims period, which is scheduled to close on May 6, 2014, be extended for an additional ninety days.

## ARGUMENT

The Court should deny Mr. Ratliff's motion for three reasons.  ***First***, his request, which challenges the Notice Plan already approved by the Court in its final judgment, is untimely.  ***Second***, Mr. Ratliff's motion fails on the merits because the robust Notice Plan implemented by the parties in this case went above and beyond what is required by Rule 23 and due process.  ***Third***, Rule 23 does not authorize the Court to grant the relief sought by Mr. Ratliff because it would essentially rewrite terms of the Settlement Agreement.  And ***finally***, even if additional notice were proper (and it is not), there is no basis for requiring Merck to pay for it.

## I.   MR. RATLIFF'S REQUEST IS UNTIMELY.

Mr. Ratliff's request should be denied first and foremost because it is untimely.  The Court made clear in its preliminary approval order that all objections had to be served on counsel "on or before November 9, 2013."  (Dkt. 64,526, at 8.)  The Court further warned that "[o]bjections will be deemed waived if the procedures for objecting to the Proposed Settlement are not followed."  (*Id.* at 9.)  As other courts have appropriately recognized, objections that do not satisfy basic procedural requirements imposed in a preliminary approval order – including those that are untimely – should be rejected.  *See, e.g.*, *Moore v. Verizon Commc'ns, Inc.*, No. C 09-1823 SBA, 2013 U.S. Dist. LEXIS 122901, at *44 (N.D. Cal. Aug. 28, 2013) ("Ms. Nelson's objection is OVERRULED because it is untimely[.]"); *Stetson v. West Publ'g Corp.*, No. CV-08-00810 R (Ex), 2013 U.S. Dist. LEXIS 178408, at *4 (C.D. Cal. Sept. 20, 2013) ("Mr. Brown's objection was untimely and is overruled on that separate ground as well."); *Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143 (ENV)(RER), 2011 U.S. Dist. LEXIS 21102, at *10 (E.D.N.Y. Feb. 18,

2011) ("The Court also finds that the untimely objections are overruled . . . because they are untimely[.]"); *see also, e.g.*, *Kelly v. Phiten USA, Inc.*, 277 F.R.D. 564, 570-71 & n.8 (S.D. Iowa 2011) (granting final approval and refusing to "consider Mr. Kohlhagen's objection, as he failed to comply with the July 11 Order by failing to file a Notice of Intent to Object"); *Bynum v. Dist. of Columbia*, 412 F. Supp. 2d 73, 76-77 (D.D.C. 2006) ("Letters complaining about aspects of the settlement generally that did not comply with the procedure for making objections to the Bynum Settlement Agreement provided in ¶ 15 of the Class Notice will not be treated as objections.").

Here, Mr. Ratliff's challenge to the notice program previously endorsed by the Court comes more than four months after the deadline for lodging a challenge to this notice expired, and more than two months after the Court granted final approval of the consumer class settlement. The time for appealing the Court's final judgment has also passed. While Mr. Ratliff initially opposed the parties' motion for preliminary approval of the class settlement, his objections were later withdrawn at a point when the parameters of the notice plan and the settlement agreement were a matter of public record. Mr. Ratliff chose not to raise any challenge to the notice plan by November 9, 2013, the deadline for objecting to the consumer settlement. Nor did Mr. Ratliff assert such a challenge at the Fairness Hearing, when the Court ruled that the "notice strategy implemented has successfully reached the putative Class, thus constituting the best practicable notice and satisfying due process." (Dkt. 64,784, at 25.) The hearing was conducted with the benefit of a declaration by Shannon Wheatman, which outlined the particulars surrounding the implementation of the notice plan. This document was also filed with the Court and generated no response by Mr. Ratliff. In short, when Mr. Ratliff withdrew his

7

opposition to the consumer settlement back in November 2013, he did not register a single objection to the notice in this case.

Equitable considerations weigh strongly in favor of adhering to these deadlines and denying Mr. Ratliff's untimely request. The parties' position has been clear from the outset that direct mail notice is not feasible. An entire notice plan was built and executed on that undisputed conclusion. Mr. Ratliff offers no explanation for his sudden discovery that direct mail notice is possible. Certainly, if he knew that direct mail notice was ostensibly feasible or could have discovered that fact at the time of the fairness hearing, he should have made his objection then and saved everyone substantial resources.

In reality, circumstances strongly suggest that Mr. Ratliff's request is motivated not by any perceived inadequacies in the notice program but by the possible effect of what he perceives to be a low claims rate on his counsel's fee. This concern is reflected in a three-paragraph, half-page footnote in the motion bemoaning the low claims rate and the prospect that Mr. Ratliff's counsel may not receive the "$2.25 million of the common benefit fund" to which Merck agreed not to object. (*See* Mot. at 3 n.2.)[2] Unsurprisingly, Mr. Ratliff does not cite any authority for the proposition that untimely objections to notice are an appropriate method for counsel to try to stir up additional claims in the hopes of bolstering the record to support a submission for attorneys' fees.

---

[2]     According to Mr. Ratliff's motion, "[t]he agreement of Plaintiffs' Counsel and counsel for Merck not to object to a fee petition from Ratliff's counsel of up to that amount may . . . be an illusory promise that provides no consideration to Ratliff's agreement to settle." (Mot. at 3 n.2.) Mr. Ratliff's counsel misreads the purpose of the provision he invokes. In fact, as the Court explained in its order granting final approval of the class settlement, the "effect of th[e] [settlement] is to limit, rather than guarantee, the amount of attorneys' fees." (Dkt. 64,784, at 8.) For this reason, the Court determined that it would not resolve the issue of attorneys' fees until all claims have been submitted. (*Id.*; *see also* Fairness Hearing Tr., Dec. 13, 2013, 20:14-16 ("I have not set it yet. And I will do so after all the claims are in so that I can take a look at what the situation is.") (attached as Ex. 2).) There is also no truth to Mr. Ratliff's assertion that his counsel was "misinformed" about aspects of the settlement. (Mot. at 3 n.2.) Counsel for Mr. Ratliff had copies of the settlement agreement and the papers pertaining to the agreement, all of which were a matter of public record.

In short, allowing Mr. Ratliff to lodge a new objection at this late stage would disrupt the settled expectations of all the parties and the Court and would set a precedent for future class settlements in which objection deadlines would become meaningless.  It would also confer an unfair benefit on Mr. Ratliff, to whom concessions were already made by the parties at the objection stage as well as after in the form of additional notice efforts in Kentucky.  Because the relief sought by Mr. Ratliff is untimely, the motion should be denied.

## II.      THE NOTICE DISSEMINATED IN THIS CASE WAS THE BEST PRACTICABLE UNDER THE CIRCUMSTANCES, AND NO FURTHER COMMUNICATION WITH THE CLASS IS REQUIRED.

Even if Mr. Ratliff's challenge had been timely raised, it would still be meritless.  The notice disseminated in this case satisfied the dictates of both Rule 23(c)(2) and due process.  The Court previously recognized as much, declaring that "the multipronged notice strategy implemented has successfully reached the putative Class, thus constituting the best practicable notice and satisfying due process."  (Dkt. 64,784, at 25.)

Mr. Ratliff has not demonstrated otherwise.  He asserts in his motion that "the dismal claims rate in this case demonstrates the need for direct mail notice to Vioxx purchasers."  (Mot. at 4.)  But he cites nothing to support his conclusion that the claims rate has been "dismal" in comparison to other cases, and the authority on point is to the contrary.  "[A] very low claims rate" is a common characteristic of consumer class actions.  *Pearson v. NBTY, Inc.*, No. 11 CV 7972, 2014 U.S. Dist. LEXIS 357, at *21 (N.D. Ill. Jan. 3, 2014) (approving class action and noting that "settlement resulted in a very low claims rate" just "like other consumer class actions"); *see also Spillman v. RPM Pizza, LLC*, No. 10-349-BAJ-SCR, 2013 U.S. Dist. LEXIS 72947, at *8 (M.D. La. May 23, 2013) (granting final approval to consumer class settlement involving claims rate of less than one percent); *In re LivingSocial Mktg. & Sales Practice Litig.*, MDL 2254, 2013 U.S. Dist. LEXIS 40059, at *52 (D.D.C. Mar. 22, 2013) (approving consumer

9

class action involving the sale of deal vouchers with expiration dates, even though claims rate was only .25 percent).  Thus, a low claims rate in this case does not equal a finding that the notice implemented was somehow defective or ineffective.

The alternative explanation ignored by Mr. Ratliff is that only a limited number of consumers are interested in participating.  As the Court noted during the Fairness Hearing, some class members are "very happy" about their experiences with Vioxx "and, therefore, probably don't feel like they should claim anything."  (Fairness Hearing Tr. 24:17-18.)  Further, the claims process has not yet closed, and it is likely that there will be a significant uptick in the number of claims filed as the deadline of May 6, 2014 approaches.  (*See id.* 17:25-18:3 ("[W]e are very used to seeing most claims by far come in the last month or even the last weeks before the deadline.  And we expect that we will see the same thing here.")); *see also Spillman*, 2013 U.S. Dist. LEXIS 72947, at *8 (granting motion for final approval of class settlement, even though less than one percent of the total class has filed claims because, *inter alia*, "the claims process is still going on").  Dr. Wheatman, the expert who designed and implemented the Notice Plan in the present case, explained that "even after the implementation of a notice program is complete, claims will continue to come in, often spiking as the deadline nears."  (Wheatman Implementation Decl. ¶ 18.)  Accordingly, the number of claims filed to date is not a proper basis for discrediting the notice implemented in this case.

Moreover, Mr. Ratliff's request for direct mail notice to some unidentified subset of class members misperceives the applicable law.  "'Rule 23 does not require the parties to exhaust every conceivable method of identifying the individual class members.'"  *Burford v. Cargill, Inc.*, No. 05-0283, 2012 U.S. Dist. LEXIS 161292, at *19 (W.D. La. Nov. 8, 2012) (granting motion for final approval of class settlement) (quoting Newberg on Class Actions § 11.53 (4th

ed. 2002)); *see also In re Beef Indus. Antitrust Litig.*, 607 F.2d 167, 179 (5th Cir. 1979) ("'Obviously the word reasonable cannot be ignored. In every case, reasonableness [in the context of class notice] is a function of anticipated results, costs and amount involved.'") (citation omitted). Consistent with this principle, direct mail notice is ***not*** required in cases where – as here – such notice is not "feasib[le]" or would not "provide adequate direct notice to class members." *Spillman*, 2013 U.S. Dist. LEXIS 72947, at *5 (finding that direct mail notice was not "feasib[le]" and would not be "reliable"); *see also, e.g., Hanlon v. Aramark Sports, LLC*, No. 09-465, 2010 U.S. Dist. LEXIS 9029, at *15 (W.D. Pa. Feb. 3, 2010) (direct mail notice was not required because, *inter alia*, "it would be extremely difficult to obtain mailing address[es] for the thousands of putative class members implicated by the settlement"); *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 296 (W.D. Tex. 2007) ("Individual notice is not required when there is no reasonable way to sufficiently identify the class members."); *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1061 (S.D. Tex. 2012) (lack of individual notice was not a bar to final approval of class settlement where defendant "did not have the names and addresses of those affected by the data breach and could not reasonably request this information for . . . [the] accounts from the issuer banks."). Rather, in these types of cases, "notice by publication" suffices provided it is targeted to reach a significant majority of the class members. *Spillman*, 2013 U.S. Dist. LEXIS 72947, at *5; *see also Hanlon*, 2010 U.S. Dist. LEXIS 9029, at *15-17 (notice by publication that directed class members to settlement website met the requirements of Rule 23 and due process); *DeHoyos*, 240 F.R.D. at 296 ("where class members cannot be identified, as here, notice by publication is sufficient").

For example, in *Spillman*, plaintiff commenced a putative class action against defendant pizza companies, alleging that they violated the Telephone Consumer Protection Act by sending

11

automated telephone calls ("robo-calls") to various cellular phone numbers.  2013 U.S. Dist. LEXIS 72947, at *2.  The majority of the class members had cell phone numbers with area codes originating from Louisiana, Alabama and Mississippi.  *Id.* at *3-4.  In granting the motion for final approval of the class settlement, Judge Riedlinger found that the notice plan – which was designed by the same notice expert retained by the PSC and Merck in this case and closely resembled the plan employed in this case – was more than adequate to satisfy the requirements of Rule 23 and due process.  *Id.* at *5-8.  In reaching this conclusion, the court relied on Dr. Wheatman's view that it would not be "feasib[le]" to provide direct mail notice given the "cost[]" and difficulty of using cell phone numbers to identify the names and addresses of individuals associated with the numbers.  *Id.* at *5 & n.8.  The court also accepted Dr. Wheatman's judgment that cell phone numbers would not produce "enough reliable, accurate and useable data to provide adequate direct notice to class members" because many class members lived in states with area codes that were not the same as their cell phone area codes.  *Id.* at *6 & n.9.  For these reasons, the notice designed and implemented in the case consisted of a comprehensive "publication plan," encompassing "print publication, internet, the settlement website and press releases."  *Id.* at *5-6.  According to the court, the notice designed and implemented by Dr. Wheatman was "effective[ ]" for a number of reasons.  *Id.* at *7.  In particular, internet banner ads on Facebook appeared over 66 million times; close to 400 national media outlets publicized the press release on the settlement; the settlement website received tens of thousands of "hits"; and the overall reach of the notice plan was 74-76 percent.  *Id.*

The notice plan designed and implemented in this case closely mirrored the one deemed adequate by Judge Riedlinger above and satisfied the requirements of Rule 23 and due process for the same reasons.  As in *Spillman*, "it was determined that it would not be possible to mail

notice to Class Members[.]"  (Wheatman Implementation Decl. ¶ 7.)  There was simply no way to determine the names and current addresses of individuals who purchased Vioxx more than ten years ago.  After all, "[t]here is no single repository of the names and addresses of each potential class member."  *Hanlon*, 2010 U.S. Dist. LEXIS 9029, at *15.  Instead, a broad paid media notice just like the one approved in *Spillman* was adopted, costing over $1.6 million.  Even beyond this, the parties also undertook additional notice efforts in Kentucky and New Mexico. Substantial claims have resulted and continue to come in.

Mr. Ratliff now contends that limited direct mail notice is possible because he can obtain a list of 5,439 Vioxx purchasers in Kentucky.  (*See* Mot. at 4.)  But there is no evidence that this list exists; it is not attached to Mr. Ratliff's motion, and no affidavit attesting to its existence is attached either.  In addition, the motion fails to provide any details regarding the supposed list – it does not identify the source of the document, the date of its preparation, or the method by which it was compiled.  Nor does he have any explanation as to whether the addresses on this theoretical list are up to date.  In other words, there is no contention (much less demonstration) that Mr. Ratliff's proposal would produce "reliable, accurate and useable data to provide adequate direct notice to class members."  *Spillman*, 2013 U.S. Dist. LEXIS 72947, at *5.

Finally, Merck is also concerned that disclosure of the information contained in the list – to the extent it exists – would run afoul of the Health Insurance Portability and Accountability Act ("HIPAA").  "Under HIPAA, the filing of a lawsuit does not waive the confidentiality of health information, unless the patient gives written consent or enters into an agreement . . . or counsel may obtain a court order."  *Soto v. ABX Air, Inc.*, No. 07-11035, 2010 U.S. Dist. LEXIS 117116, at *3 (E.D. Mich. Nov. 3, 2010).  Because there has been no showing that these requirements have been followed in this case, there is little doubt that identifying Vioxx class

13

members by name and address would not be feasible, thereby undermining Mr. Ratliff's request for direct mail notice to class members.[3]

In sum, the Notice Plan already implemented in this case was reasonably calculated to reach all class members and therefore satisfied the dictates of both Rule 23 and due process. Nonetheless, Merck has graciously agreed to finance a limited Claims Reminder Program to encourage greater participation in the consumer settlement.  For all of these reasons, Mr. Ratliff's request for direct mail notice is unfounded, and there is no basis for extending the claims period.

## III.   THE COURT LACKS THE AUTHORITY TO EXTEND THE CLAIMS DEADLINE.

Finally, even if there were some merit to Mr. Ratliff's challenges, the Court lacks the authority to modify the claims deadline because it is a bargained-for term of the Settlement Agreement.

The Fifth Circuit has explained that, "[b]ecause a district court's authority to administer a class-action settlement derives from Rule 23, the court cannot modify the bargained-for terms of the settlement agreement.  That is, while the settlement agreement must gain the approval of the district judge, once approved its terms must be followed by the court and the parties alike." *Klier v. Elf Atochem N. Am., Inc.*, 658 F.3d 468, 475 (5th Cir. 2011) (footnotes omitted) (reversing district court's order distributing unused medical-monitoring funds to third-party charities); *see also DeHoyos*, 240 F.R.D. at 286 ("'the court cannot modify the terms of the proposed settlement'") (citation omitted).  Therefore, accepting late-filed proofs of claims would be the equivalent to rewriting the settlement agreement, "a result that substantially modifies the

---

[3]     Mr. Ratliff's proposal to send letters "to a database listing of all Kentucky physicians" (Mot. at 4) makes even less sense.  It is not the job of physicians to encourage participation in lawsuits, and there is no reason to believe or expect that physicians will take the trouble to determine which of their patients took Vioxx and contact them to encourage participation in the settlement.

1154420v1

understanding negotiated between Plaintiffs and Defendants." *In re ML-Lee Acquisition Fund II, L.P.*, No. 92-60-JJF, 1999 U.S. Dist. LEXIS 4084, at *7-8 (D. Del. Mar. 22, 1999); *see also Dahingo v. Royal Caribbean Cruises, Ltd.*, 312 F. Supp. 2d 440, 447 (S.D.N.Y. 2004) (refusing to extend the filing deadline to allow inclusion of late claims; the deadline was "the subject of negotiation and compromise by counsel," and the court therefore could not disturb it).

Here, the parties agreed that the Claims Deadline would be nine months from the Notice Commencement Date, which is May 6, 2014.  (*See* Settlement Agreement, Section 5.12.)[4] Because "the [C]ourt cannot modify th[is] bargained-for term[] of the settlement agreement," *Klier*, 658 F.3d at 475, Mr. Ratliff's request for an extension of the claims deadline should be rejected.  Further, without an extension of the fast-approaching claims deadline, additional notice would not generate any meaningful additional participation in the settlement.  In short, not only does the Court lack authority to alter the operative claims deadline, but this lack of authority renders any additional notice pointless – particularly in light of the hefty price tag for Mr.

---

[4]    It bears emphasizing that this bargained-for nine-month claims period is longer than that in most other consumer class settlements.  *See, e.g.*, Nutella Consumer Class Action Settlements, Class Action Settlement Agreement, *In re Nutella Mktg. & Sales Practices Litig.*, No. 3:11-cv-01086-FLW-DEA (D.N.J. Jan. 10, 2012), *available at* https://nutellaclassactionsettlement.com/Portals/0/Documents/Settlement%20Agreement%20w%20exhibits.pdf (90-day claims period); *Pappas v. Naked Juice Co. of Glendora, Inc.* Settlement Website, Stipulation of Settlement, *Pappas v. Naked Juice Co. of Glendora, Inc.*, No. 2:11-cv-08276-JAK-PLA (C.D. Cal. July 2, 2013), *available at* https://www.nakedjuiceclass.com/pdf/StipulationofSettlement.pdf (120-day claims period); Glucosamine Settlement, Settlement Agreement and General Release, No. 1:11-cv-07972 (N.D. Ill. Apr. 15, 2013), *available at* http://www.glucosaminesettlement.com/documents/settlement-agreement.pdf (90-day claims period); Duracell Ultra Batteries Case Settlement Website, Class Action Settlement Agreement, *Poertner v. Gillette Co.*, No. 6:12-CV-00803-GAP-DAB (M.D. Fla. Sept. 13, 2013), *available at* **Error! Hyperlink reference not valid.** (120-day claims period); FitFlop Settlement, Stipulation of Settlement, *Rosales v. FitFlop USA, LLC*, No. 11:cv-0973-W (KSC) (S.D. Cal. May 5, 2011), *available at* http://www.fitflopsettlement.com/docs/ss.pdf (60-day claims period); Live Nation Settlement, Amended Class Settlement Agreement and Release, *Katz v. Live Nation Worldwide, Inc.*, No. 09-cv-003740 (MLC)(DEA) (D.N.J. Dec. 18, 2013), *available at* https://eclaim.kccllc.net/caclaimforms/TLK/Documents/TLK_Settlement_Agreement_[signed].pdf?2 (120-day claims period).

Ratliff's proposed plan.  (*See* Mot. at 4-6 (estimating costs of notice programs in Kentucky and nationwide).)[5]  Moreover, the Claims Reminder Program that is already being implemented is designed to remind class members that the deadline for filing a claim is near, with the goal of motivating the filing of all outstanding claims.  As noted above, settlement claimants tend to wait until the deadline is approaching before submitting their claims.  A change to the deadline now would counteract the motivating force of the approaching date and thereby undermine the purpose of the Reminder Program.  For these reasons too, Mr. Ratliff's motion should be denied.

IV.     **IF RATLIFF'S COUNSEL SEEKS TO ENCOURAGE MORE PARTICIPATION AMONG KENTUCKY RESIDENTS, HE SHOULD BEAR THE COSTS OF THAT EFFORT.**

Beyond the direct notice letters discussed above, Mr. Ratliff's counsel also seeks additional claims reminder efforts in Kentucky newspapers and on Kentucky radio stations.

As set forth above, Merck has already spent more than $1.6 million in notice costs related to this settlement and has agreed to spend $126,000 more on a reminder program, part of which is specifically targeted at Kentucky.  That is beyond its obligations under the notice plan negotiated by the parties and approved by the Court, (*see* Exhibits D and E to Settlement Agreement (attached as Ex. 3)), and enough is enough.  If Mr. Ratliff's counsel wants to try yet again to drum up interest in the settlement among Kentucky residents, and if the content of any messaging he seeks to disseminate is approved by the Court, he is free to take steps to encourage additional claims.  But Merck's contractual obligations to finance communications with the class have been fulfilled – and Merck has already exceeded those obligations to finance additional efforts to publicize the claims process, including significant additional advertising in Kentucky.

---

[5]     The scope of Mr. Ratliff's proposed notice plan is unclear.  A substantial portion of the motion is devoted to proposed notice in Kentucky, but on the last page of the brief, Mr. Ratliff also estimates the cost of mailing notice nationwide.

## **CONCLUSION**

For the foregoing reasons, the Court should deny Mr. Ratliff's motion.

Respectfully submitted,


*/s/Dorothy H. Wimberly*
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, LA 70130

John H. Beisner
Jessica Davidson Miller
Geoffrey M. Wyatt
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
1440 New York Avenue, N.W.
Washington, DC 20005

Douglas R. Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth St., N.W.
Washington, DC 20005

ATTORNEYS FOR MERCK SHARP &
DOHME CORP.

17

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Opposition has been served on Liaison Counsel, Russ Herman, Phillip Wittmann and Ann Oldfather, by U.S. Mail and e-mail or by hand delivery and e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8C, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 25th day of February, 2014.

/s/ Dorothy H. Wimberly
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, LA 70130
Phone: 504-581-3200
Fax:    504-581-3361
dwimberly@stonepigman.com

Defendants' Liaison Counsel

1154420v1