UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

Case No. 05-MD-01657
MDL Docket No. 1657

| | |
|---|---|
| In Re:  VIOXX<br>PRODUCTS LIABILITY LITIGATION | *<br>*    SECTION "L"<br>*<br>*    JUDGE FALLON<br>*<br>*    MAGISTRATE JUDGE KNOWLES<br>*<br>* |

**INTERESTED PARTY JAMES RATLIFF'S REPLY IN SUPPORT OF
MOTION TO APPROVE DIRECT MAIL NOTICE TO CLASS MEMBERS,
TO REQUIRE MERCK TO PAY COSTS ASSOCIATED WITH SUCH
ADDITIONAL NOTICE, AND TO EXTEND CLAIMS PERIOD BY NINETY DAYS**

James Ratliff, on behalf of himself and all others similarly situated ("Ratliff"), by and through counsel, in further support of his Motion to Approve Direct Mail Notice to Class Members, To Require Merck To Pay Costs Associated With Such Additional Notice, And To Extend Claims Period By Ninety Days, respectfully states as follows:

**INTRODUCTION**

The Motion now before this Court requests four distinct rulings from the Court.  First, Ratliff requests the Court to approve the reminder notice campaign developed by his counsel for Kentucky consumers.  This reminder notice campaign includes direct notice to identifiable purchasers, additional publication of notice in all Kentucky newspapers, posting of reminder notice materials in health departments, distribution of these materials through health services networks, and multiple radio spots regarding the settlement.  Second, Ratliff requests the Court to direct Merck to pay for the Kentucky reminder notice campaign, the projected cost of which is minimal – $15,000.  It is important to note that if the Court does not direct Merck to pay the costs associated with this additional notice to Kentucky consumers, counsel for Ratliff is

prepared to bear that expense.  <u>Third</u>, Ratliff requests the Court to require Merck to pay for direct notice to identifiable purchasers of Vioxx nationwide, at a projected cost of $243,000.  <u>Fourth</u>, Ratliff requests the Court to extend the claims period to permit the dissemination of the reminder notice.

This Court retains full jurisdiction over the settlement and the parties, and has the authority to order the requested relief.  The claims rate in this case is still, despite some improvement, abysmally low, a fact that the Court has acknowledged and expressed concern over on multiple occasions.  Recent reports submitted by Claims Administrator Brown Greer do not demonstrate any sharp increase in the claims rate, and this Court should take action to ensure that the members of this nationwide settlement class receive proper notice that their rights will be affected by the settlement finally approved by this Court on January 3, 2014.

## **ARGUMENT**

**I.      THE CLAIMS RATE DEMONSTRATES THAT NOTICE HAS NOT BEEN EFFECTIVE AND MERCK HAS NOT PROVIDED ANY JUSTIFIABLE BASIS FOR DENYING RATLIFF'S REQUEST FOR APPROVAL OF THE KENTUCKY REMINDER NOTICE CAMPAIGN.**

Under Rule 23, "the court must direct to class members the best notice that is practicable under the circumstances, <u>including individual notice to all members who can be identified through reasonable effort</u>."  Fed. R. Civ. P. 23(c)(2)(B) (emphasis added).  The March 24, 2014 Claimant Activity Report of Brown Greer reflects that only 4,866 claims have been submitted nationwide, including just 54 in Kentucky.  Although the parties have not provided the Court with any information regarding the total possible number of class members nationwide, or with any extrapolated calculations regarding what percentage of class members have actually submitted claims, some estimates can be generated with the limited amount of information available to Ratliff.  Upon information and belief, there are more than 200,000 class members in

Kentucky.  Assuming that the 48 other states participating in this nationwide class action settlement have similar numbers of class members (and most states likely have more based on population variances alone), there are at least 10 million class members.  The claims rate in this settlement is currently at .04%.

And despite Merck's protestations that claims rates are typically low in consumer cases, even the cases cited by Merck demonstrate that the claims rate in this case is in fact much lower than those in cases in which class settlements have been finally approved.  See, e.g., Spillman v. RPM Pizza, LLC, 2013 U.S. Dist. LEXIS 72947, at *8 (M.D. La. May 23, 2013) (0.27% claims rate for $15 max claim); In re Livingsocial Mktg. & Sales Practice Litig., 2013 U.S. Dist. LEXIS 40059 (D.D.C. Mar. 22, 2013) (.25% claims rate); Pearson v. NBTY, Inc., 2014 U.S. Dist. LEXIS 357, 20-22 (N.D. Ill. Jan. 3, 2014) (0.25% claims rate).

Despite the existence of multiple databases containing the names and mailing addresses of thousands of Vioxx purchasers, there has been no direct mail notice in this matter to consumers not previously associated with the Vioxx litigation.  In fact, the paid Notice portion of the Notice plan approved in this case ended on September 25, 2013 – six months ago.  In the interim both the deadline for opting out of the class and the final approval of the class settlement have occurred.  Class members have until May 6, 2014 to file claims, yet have received no word regarding the proposed settlement, or its final approval, since September 2013.  This Court has recently been informed of a reminder notice campaign developed by Class Counsel for the Plaintiffs, and additional administrative services being offered by Brown Greer, all of which are designed to hopefully increase the claims rate in this case.  It is not a point of contention that the claims rate has been low, or that additional efforts are necessary to ensure the class receives adequate notice.  In Ratliff's view, all notice efforts are positive steps in this direction.

And it should not be forgotten that the Federal Rules <u>require</u> direct notice to class members who are reasonably identifiable. Ratliff has requested the Court to approve direct mailing notice to thousands of Vioxx consumers who can be identified and contacted simply by purchasing a datebase containing this information. Ratliff is not arguing, as Merck suggests, that the parties are required to exhaust all possible avenues for providing Notice to the class. On the other hand, where, as here, direct notice can be provided to a portion of the class that is readily identifiable, such Notice is in fact <u>required</u> by the Rules.[1] The reminder notice campaign proposed by Ratliff for Kentucky includes a direct mail notice to thousands of Vioxx purchasers, which can be achieved at minimal cost – $8,074. A similar direct mail notice to consumers nationwide can be achieved for approximately $200,000. Given that the class members are readily identifiable and the costs of the direct mail notice are not astronomical, direct mail notice should be required by the Court.

And Ratliff's proposed reminder campaign does not end with direct notice to identifiable Vioxx consumers. In much the same way that Plaintiffs' Class Counsel has been creative in their approach to a nationwide reminder notice – even going so far as to develop an online video – counsel for Ratliff has devised a comprehensive, creative, and <u>low-cost plan</u> for reminder notice in Kentucky. The plan Ratliff seeks this Court to approve includes the dissemination of various notice materials previously approved by Merck, Plaintiffs' Class Counsel, and this Court. The cover letter from Ratliff's counsel referenced in Ratliff's Motion is attached for this Court's reference as <u>Exhibit A</u>. In fact, Merck's Response to the instant Motion does not advance any

---

[1] At pages 13-14 of its Response to the instant Motion [DE 64866], Merck raises several challenges to the propriety of the use of the databases suggested by Ratliff for the dissemination of direct mail Notice to class members. Ratliff has been consulting with Epiq Systems, a Notice firm on par with Kinsella, in developing the reminder notice campaign for Kentucky. Cameron Azari of Epiq Systems informed Ratliff of the existence and costs of obtaining this datebase information. Ratliff is in the process of obtaining an Affidavit from Mr. Azari regarding the reliability of this database information and addressing the HIPPA concerns raised by Merck. This Affidavit will be provided to the Court as soon as possible.

grounds for denying Ratliff's request that this additional notice to Kentucky consumers be approved by the Court.  At the very least, Ratliff requests the Court to grant his request to move forward with this proposed reminder notice at once.  Furthermore, and although nationwide direct notice is substantially more expensive, Ratliff requests that the Court consider his request that Merck be directed to provide direct mail notice to those consumers nationwide who can be easily identified and contacted through the use of consumer databases, as set forth in Ratliff's brief in support of the instant Motion.

## II.     RATLIFF'S REQUEST IS TIMELY AND MERCK SHOULD BE DIRECTED TO PAY ALL COSTS ASSOCIATED WITH ADDITIONAL NOTICE.

First, Ratliff's request for additional Notice is not untimely.  Counsel for Ratliff worked with Plaintiffs' Class Counsel to develop a comprehensive nationwide reminder notice campaign.  In so doing, Counsel for Ratliff requested that the campaign include multiple publications of <u>full page Notice advertisements in Kentucky papers</u>.  Plaintiffs Class Counsel did not seek approval of this request, and instead only sought one-time publication of much smaller ads in a handful of Kentucky papers.  Counsel for Ratliff was not aware of the limited nature of the reminder Notice finally agreed to by the parties until approximately a month ago.  At that point, it was a <u>fait accompli</u>.  Since that time, counsel for Ratliff has been diligently developing a campaign for Kentucky that complements the reminder Notice plan.  Ratliff's request for approval of this plan was in fact filed within the same time frame as the Court was informed of the reminder notice campaign developed by Class Counsel for the Plaintiffs, for which Merck agreed to pay.  The nationwide reminder notice campaign is scheduled to take place during April, 2014, and the reminder notice proposed by Ratliff for the state of Kentucky is scheduled to take place during the same time period.  Ratliff has clearly been dilatory in seeking the requested additional Notice.

Second, Ratliff's request that Merck be directed to pay costs associated with the Kentucky reminder notice campaign is guided by the Settlement Agreement. The Settlement Agreement approved by this Court provided that reasonable costs associated with the administration of the Settlement and with Notice to class members would be paid out of the "Common Fund" established under the Agreement. The Agreement gives this Court authority to approve or disprove costs associated with both the administration of the Settlement and Notice. See Settlement Agreement, §§5.14; 10.5. The Court is therefore well within its authority to direct Merck to pay costs associated with additional Notice deemed necessary by this Court from the Common Fund.

The "Common Fund" called for by the Settlement in this matter was initially funded by a contribution of $6 million. Merck complains that it has already paid $1.6 million in Notice costs associated with this Settlement, and has recently agreed to pay $126,000 in additional expenses associated with the reminder campaign. But these expenses can be borne by the Common Fund under the Settlement Agreement. Even after all submitted claims, and all Notice costs associated with the Settlement are considered, almost $4 million should remain in the Fund with which the costs of the additional Notice requested by Ratliff can be paid. In short, Merck will not be forced to make an additional contribution to the Common Fund to pay for the additional Notice requested by Ratliff. It bears noting that under the Settlement Agreement finally approved by this Court, Merck has settled the claims of an entire nation of consumers for less than a tenth of what Merck previously agreed to pay in settlement of identical claims raised by consumers in a single state. What these figures demonstrate is that the $15,000 Ratliff now requests to fund the additional reminder Notice in Kentucky, and the $200,000 that it would cost to provide direct mail notice to thousands of Vioxx purchasers nationwide, is miniscule in the face of monies that have been spent in the pursuit of the settlement of the consumer claims. In fact, it is likely that

Merck will have spent more in legal fees opposing Ratliff's request than it would pay in funding the additional requested Notice.

Further, if Merck agreed to fund the reminder notice requested by Class Counsel for Plaintiffs, why would Merck object to a comparatively nominal amount requested by counsel for Ratliff to supply Kentucky consumers with additional notice? Merck's motivations for objecting to Ratliff's request should be questioned.  And of course, it is not difficult to see that Merck benefits from a low claims rate in this case.

### III.  THE COURT RETAINS JURISDICTION OVER THE SETTLEMENT AND MAY EXERCISE ITS EQUITABLE POWERS TO EXTEND THE CLAIMS PERIOD.

The record relative to the administration of the Settlement finally approved by the Court in this matter establishes that there has been overarching concern from the Court and counsel for Plaintiffs regarding the low claims rate.  While Class Counsel for Plaintiffs and Counsel for Ratliff have engaged in substantial efforts to devise reminder notice plans that have a likelihood of increasing class members' awareness of the settlement, and therefore also increasing the claims rate, it has taken months for these plans to be fully developed and agreed to.  As such, the reminder notice campaign proposed by Class Counsel, which Merck has agreed to pay for, is not scheduled to commence until April – less than a month from the current claims filing deadline.  That is simply not enough time given the poor level of responses from claimants to date.

The plan now proposed by Ratliff will likewise take place during this time frame.  Surely, neither Class Counsel nor Merck can in good faith represent to the Court that class members will have sufficient time to obtain and register the information provided by the reminder Notice, and then file and complete claims before the claims deadline.  Ratliff has therefore requested a common sense, minimal extension of the claims filing deadline to permit the dissemination of

the reminder notice and to facilitate the ability of the class members to actually capitalize on that reminder notice by filing claims.

While Merck argues in its Response to the instant Motion that the Court has no authority to extend the claims period as requested by Ratliff, the Settlement Agreement, at Section 13.1, provides that the Court "Court shall retain jurisdiction over this Case, the Claims Administrator, the Common Fund, the Common Fund Escrow Agreement, the Preliminary Settlement Agreement, the Notice Agent, the Final Order and Judgment, the Class Members, the Plaintiff, and Merck for the purpose of administering, supervising, construing and enforcing the Settlement Agreement and the Final Order and Judgment." Therefore, to the extent that the Court believes an extension of the Notice period is necessary to give class members a full and fair opportunity in which to participate in the Settlement, the Court has been granted explicit authority by the Settlement Agreement itself to make such an Order.

The Court furthermore has the authority, pursuant to its equitable powers, to make such modifications as the Court deems necessary for the administration of justice. Settlement administration in a complex class action often requires courts to use their equitable powers under Rule 23 to manage the disparate interests competing over a finite pool of assets with which to satisfy the class. As stated in the Manual for Complex Litigation, "the equitable powers of the court may be invoked to deal with other problems that commonly arise during administration of the settlement." Manual for Complex Litigation (Third) § 30.47 (1995) (the "Manual"). These equitable powers are retained by the court until the settlement fund is actually distributed. See Zients v. LaMorte, 459 F.2d 628, 630 (2d Cir. 1972). A primary use of these equitable powers is balancing the goals of expedient settlement distribution and the consideration due to late-arriving class members. Manual § 30.47 ("Adequate time should be allowed for late claims before any refund or other disposition of settlement funds occurs."). Integral to this balancing is the court's

8

responsibility and "inherent power and duty to protect unnamed, but interested persons." <u>Zients</u>, 459 F.2d at 630. The Second Circuit in <u>Zients</u> likened those claimants excluded from recovery in a class action to "wards of the court." <u>Id</u>. The court "plays the important role of protector of the absentees' interests, in a sort of fiduciary capacity." <u>In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.</u>, 55 F.3d 768, 783 (3d Cir.) <u>cert.</u> <u>denied</u>, 499 U.S. 921 (1991)).

Acting in its fiduciary capacity, if this Court determines that an extension of the claims period is necessary to ensure class members an adequate opportunity to participate in the Settlement, then ordering an extension is within the range of the equitable powers of the Court. <u>See, e.g.</u>, <u>In re Crazy Eddie Securities Litigation</u>, 906 F. Supp. 840, 843-44 (E.D.N.Y. 1995) (extending deadline for filing proofs of claim based on equitable considerations); <u>Welch & Forbes, Inc. v. Cendant Corp. (In re Cendant Corp. Prides Litig.)</u>, 233 F.3d 188, 193 (3d Cir. 2000) (permitting the extension of the deadline for filing claims against a settlement fund because the defendant would not be prejudiced ); <u>Zients</u>, 459 F.2d at 630 (permitting late claims because "allowing these five claims would result in only a minuscule reduction in recovery by timely plaintiffs."); <u>In re Agent Orange Product Liability Litigation</u>, 689 F. Supp. 1250, 1261-63 (E.D.N.Y. 1988) (utilizing equitable powers to allow late claims and permit class members who had previously opted-out to make claims on the settlement fund).

## **CONCLUSION**

Based on the foregoing, Ratliff respectfully requests the Court to grant the instant Motion to Approve Direct Mail Notice to Class Members, To Require Merck To Pay Costs Associated With Such Additional Notice, And To Extend Claims Period By Ninety Days.

9

Respectfully submitted,

/s/ Richard A. Getty
RICHARD A. GETTY
    and
JESSICA K. WINTERS

THE GETTY LAW GROUP, PLLC
1900 Lexington Financial Center
250 West Main Street
Lexington, Kentucky  40507
Telephone:  (859) 259-1900
Facsimile:   (859) 259-1909

COUNSEL FOR JAMES RATLIFF,
ON BEHALF OF HIMSELF AND ALL
OTHERS SIMILARLY SITUATED

**CERTIFICATE OF SERVICE**

      I hereby certify that the foregoing Interested Party James Ratliff's Reply In Support Of Motion To Approve Direct Mail Notice to Class Members, To Require Merck To Pay Costs Associated With Such Additional Notice, And To Extend Claims Period By Ninety Days has been served upon all parties by e-mailing to the individuals listed below, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this the 26th day of March, 2014.

Russ M. Herman, Esq. (Bar No. 6819)
    and
Leonard A. Davis, Esq. (Bar No. 14190)
Herman, Herman & Katz, L.L.C.
820 O'Keefe Avenue
New Orleans, Louisiana  70113
E-Mail:  rherman@hhklawfirm.com
E-Mail:  ldavis@hhklawfirm.com
Plaintiffs' Liaison Counsel

Phillip A. Wittmann, Esq. (Bar No. 13625)
    and
Dorothy H. Wimberly, Esq. (Bar No. 18509)
Stone Pigman Walther Wittmann, L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130-3588
E-Mail:  pwittmann@stonepigman.com
E-Mail:  dwimberly@stonepigman.com
Defendants' Liaison Counsel

Ann B. Oldfather, Esq. (KY Bar No. 52553)
Oldfather Law Firm
1330 South Third Street
Louisville, Kentucky  40208
E-Mail:  aoldfather@oldfather.com
Liaison And Lead Counsel For Ineligible
Or Non-Enrolled Cases And Certain
Other Remaining PI Claims

John H. Beisner, Esq.
Skadden Arps Slate Meagher & Flom, LLP
1440 New York Avenue, N.W.
Washington, D.C.  20005
E-Mail:  John.Beisner@skadden.com
Counsel for Merck & Co., Inc.

Dawn M. Barrios, Esq.
Barrios, Kingsdorf & Casteix, LLP
701 Poydras Street, Suite 3650
New Orleans, Louisiana  70139
E-Mail:  barrios@bkc-law.com
Government Action Liaison Counsel

Elizabeth J. Cabraser, Esq.
Lieff Cabraser Heimann & Bernstein
275 Battery Street, 29th Floor
San Francisco, California  94111-3339
E-Mail:  ecabraser@lchb.com
Co-Lead Class Settlement Counsel

                /s/ Richard A. Getty
              COUNSEL FOR JAMES RATLIFF, ET AL.

jkcpld0805