**EASTERN DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **In Re: Vioxx Marketing, Sales Practices** | ) | |
| **And Products Liability Litigation** | ) | MDL Case No. 1657 |
| | ) | |
| | ) | SECTION L |
| THIS DOCUMENT RELATES TO: | ) | |
| | ) | JUDGE FALLON |
| <u>Linda Isner, Executrix of the Estate of</u> | ) | |
| <u>Jeffrey Isner, M.D</u>, Plaintiff | ) | MAGISTRATE JUDGE KNOWLES |
| | ) | |
| v. | ) | |
| | ) | |
| <u>Seeger Weiss, LLP et al,</u> Defendants | ) | |
| | ) | |
| 2:12-cv-02406-EEF-DEK | ) | |

**OPPOSITION OF THE PLAINTIFF, LINDA ISNER, EXECUTRIX OF THE ESTATE**
**OF JEFFREY ISNER, M.D, TO THE MOTION FOR SUMMARY JUDGMENT**
**OF THE DEFENDANTS, BROWNGREER PLC AND ORRAN L. BROWN**
**AND MEMORANDUM OF LAW**

**I.      INTRODUCTION**

The plaintiff, Linda Isner, Executrix of the Estate of Jeffrey Isner, M.D. (Isner),

submits this Memorandum of Law in opposition to the Motion for Summary Judgment

(Motion) filed by the defendants, BrownGreer PLC and Orran L. Brown (collectively,

hereafter, BrownGreer Defendants). The BrownGreer Defendants have failed to demonstrate

the absence of a genuine issue of material fact and that they entitled to judgment as a matter

of law. For the reasons set forth below, the Motion is factually and legally unsupported and

must be denied.

The Motion is prefaced by a baseless and offensive mischaracterization of the factual

basis and legal grounds for Isner's claims. (*See* Motion at p. 1, ¶1)  First, the BrownGreer

defendants seek to trivialize Isner's claims, in an apparent effort to justify or excuse their

own wrongful conduct, by citing the specific dollar amount of the award that Isner received in the Vioxx Resolution Program (Program), and asserting that the damages awarded to her allegedly exceeded amounts awarded to other claimants. (Id.) In essence, these defendants contend that because Isner received a significant sum under the Program, she should be satisfied with that sum and, as a matter of law, has no remedy for their tortious misconduct. This argument is meritless. The size of the award that Isner received under the Program evidences the tremendous loss that she and her three minor children suffered as a result of the wrongful death of her fifty-three year husband, Jeffrey Isner, M.D., a cardiologist and medical researcher with a documented, substantial earning capacity. Neither the size of that award, nor any comparison to awards granted to other, unidentified claimants, has any relevance to, or bearing on, Isner's entitlement to compensation from the defendants in this action for the misrepresentations that they made to her in order to induce her participation in the Program.

Second, the BrownGreer Defendants claim, without factual basis or legal support, that the award to Isner "exceeds any award of compensatory damages that she could have lawfully received if she had proceeded to trial in her own state of Massachusetts…" (Id.) There is absolutely no basis for these defendants to state that Isner and her children have been made whole for the loss of Dr. Isner by the sum paid to her under the Program. The amount of a jury award under the Massachusetts Wrongful Death statute, M.G.L. c. 229, would have encompassed a number of elements in addition to the loss of reasonably expected net income, including compensation for the loss of companionship, society and support suffered by Dr. Isner's wife and children, and the potential also existed for an award of punitive damages. Isner's participation in the Program eliminated Merck's potential exposure to a verdict that could have been far in excess of both the sum that Isner received under the

Program and the sum that the defendants represented she would receive if she agreed to enter the Program. Furthermore, the BrownGreer Defendants expressly acknowledge that the amount paid to Isner under the Program for the loss of Dr. Isner's future earnings reflected the application of a "Standard Discount of 50%". (Id., pp. 21-22)   In view of the application of this substantial "discount", it is entirely illogical for the BrownGreer Defendants to assert that Isner not only received full compensation for the loss of Dr. Isner's anticipated future earnings, but indeed was fully compensated under the Program for all legally compensable damages arising out of Dr. Isner's wrongful death.

As grounds for their Motion, the BrownGreer Defendants advance the following arguments: (1) the Release executed by Isner expressly bars this action; (2) the Release language precludes any claims by Isner that she relied upon the representations made to her by these defendants; (3) no factual misrepresentations were made to Isner; (4) the defendants' alleged misrepresentations are not actionable as a matter of law; (5) the plaintiff's claims are barred by a theory of ratification; (6) the plaintiff cannot prove any compensable damages; and (7) the plaintiff's claims under M.G.L. Chapter 93A are barred as a matter of law.  For the reasons set forth below, the BrownGreer defendants have failed to demonstrate that the undisputed facts establish, as a matter of law, that they are entitled judgment in their favor on any of these grounds. Accordingly, the Motion must be denied.

## II.    PROCEDURAL BACKGROUND AND MATERIAL FACTS

### A.    Procedural Background.

Isner commenced this action on May 9, 2012 by filing her Complaint in Middlesex Superior Court, Middlesex County, Commonwealth of Massachusetts.  The defendants are Seeger Weiss, LLP, Christopher A. Seeger (Seeger), Hughes Hubbard & Reed, LLP, Theodore V.H. Mayer (Mayer), BrownGreer PLC, and Orran L. Brown (Brown).   The

Complaint seeks money damages sustained by Isner as a direct and foreseeable consequence of the negligent and/or intentional misrepresentations made to Isner and/or to her attorney, Joseph L. Doherty, Jr. (Doherty), by the defendants, Seeger, Mayer and Brown, in connection with the settlement of a wrongful death action initially brought by Isner against Merck & Co., Inc. (Merck) and Kimberly Hendricks in Middlesex Superior Court (the Isner Vioxx Action). In the Isner Vioxx Action, Isner sought an award of damages from Merck and Hendricks under the Massachusetts Wrongful Death Statute, M.G.L. Chapter 229, §§2 and 6. The damages demanded in her Complaint included both the full and fair compensatory damages suffered by Isner and her three minor children, and punitive damages for the willful, wanton, reckless conduct and gross negligence of the defendants. (*See* Complaint, Exhibit A to the Affidavit of Attorney Joseph L. Doherty, Jr. dated March 27, 2014, attached hereto as Exhibit 1) (hereafter, "Ex. 1"). Merck removed the Isner Vioxx Action to the United States District for the District of Massachusetts pursuant to 28 U.S.C. §§1332, 1441, and 1446. The Isner Vioxx Action subsequently was transferred by the Judicial Panel on Multidistrict Litigation ("Panel") to MDL 1657. (Ex. 1, ¶4)

Isner seeks damages from the defendants under the common law tort theories of negligent misrepresentation and intentional misrepresentation/deceit. (Complaint, ¶¶39-50) In addition, the plaintiff alleges that the conduct of each of the defendants constituted unfair and/or deceptive acts or practices in violation of Massachusetts General Laws Chapter 93A, §9, and she seeks damages under that statute. (Complaint, ¶¶51-58) On May 21, 2012, defendants Hughes Hubbard & Reed, LLP and Mayer removed this action to the United States District Court for the District of Massachusetts pursuant to 28 U.S.C. §1332, on the grounds of diversity of citizenship. This action subsequently was transferred to MDL 1657.

### B.        Undisputed Material Facts

Mayer and Hughes Hubbard & Reed, LLP represented Merck in the MDL Action. (Ex. 1, ¶ 5)  Brown and BrownGreer LLC, served as Settlement Administrator with respect to the settlement of the Vioxx Claims. (Ex. A, ¶5)  Seeger, a partner in the law firm of Seeger Weiss, LLP, applied to and was appointed by the Court to the Plaintiffs' Steering Committee ("PSC"). (Ex. 1, ¶5)  In or about October of 2008, the defendants, Mayer, Brown, and Seeger, made specific representations and assurances to, and agreements with, Isner and her attorney that under the global settlement proposal made by Merck in connection with the Vioxx Claims pending in MDL 1657, Isner would receive a "dollar for dollar" payment in settlement of her Extraordinary Injury Damages ("EI damages"). (Ex. 1, ¶ 8-13)  Mayer and Seeger expressly and unambiguously represented to Isner and Doherty that Isner would be entitled to full recovery of her decedent's lost earnings, both prior to the date of the settlement and thereafter, through to the end of Dr. Isner's work-life expectancy. (Id.)  Brown confirmed the accuracy of the information provided by Mayer and Seeger. (Ex. 1, ¶13)

More specifically, when the initial settlement proposal was presented, Doherty was concerned that the language of the proposal would not provide payment of any damages for future lost earnings, which was a substantial component of Isner's claims, in view of the fact that Dr. Isner was a 54 year old physician with significant yearly earnings.  He expressed these concerns to Mayer, who advised that the language of the proposal would include recovery of such future damages. (Ex. 1, ¶6)  On October 20, 2008, Isner and Doherty attended a settlement meeting with Judge Corodemus in New York City. At the conference with Judge Corodemus, both Mayer and Seeger stated unequivocally that Isner would be entitled to full recovery of Dr. Isner's lost earnings, both prior to the date of the settlement

and thereafter, through to the end of Dr. Isner's work-life expectancy.[1] (Ex. 1, ¶7)  Mayer and Seeger made express oral representations directly to Isner and Doherty that the only two contingencies that could potentially reduce that full recovery were a "global cap" and the possibility that Dr. Isner's work-life expectancy could be capped at age 65. (Ex. 1, ¶8)

On October 21, 2008 Doherty sent an e-mail to Mayer requesting specific written confirmation of the assurances made the prior day, and of the fact that Mrs. Isner would be entitled to EI damages for <u>all</u> of her husband's lost earnings, "<u>dollar for dollar</u>", subject only to the global cap and the age cap on work-life expectancy. (Ex. 1, ¶9)  Doherty sent an e-mail to Seeger on the same date, confirming their conversation outside of the courthouse after the conference when Seeger again assured Isner and Doherty that Isner would be entitled to <u>*all*</u> past and future lost earnings through to the end of Dr. Isner's work-life expectancy. (Ex. 1, ¶10)

On October 22, 2008, Mayer confirmed the assurances made to Isner and Doherty in an e-mail transmitted to Doherty.  In that e-mail, Mayer specifically represented as follows: "…there is no individual cap on awards, nor are awards for qualifying claims limited to past lost earnings.  The <u>only</u> cap on awards is the aggregate cap referred to in Section 4.2.8, which provides for proration in the event the aggregation of individual MI EI awards exceeds the MI EI Payment Cap Amount of $195 million.  I have confirmed with BrownGreer that it agrees with this interpretation." (Ex. 1, ¶11)  Mayer further represented as follows:  "As you know, BrownGreer has not yet established all the criteria for EI awards.  What can be said <u>with certainty</u> is that for an otherwise qualifying claim, future earnings will be awarded <u>without a cap</u>, up to an age cutoff (which they have told me will be no lower than 65).  <u>The</u>

---

[1] In accordance with the EI Damages Manual from BrownGreer, which incorporated the Social Security Retirement Statistics at page 19, (IV-B-4), BrownGreer assigned a retirement age of 66 to Dr. Isner, because he was born between 1943 and 1957.

<u>awards will be dollar for dollar</u> subject to 1) disability benefits, which would not apply in a death case such as this, 2) I believe, discount to present value as of the payment date (i.e., the assumed date for final payments under the Program) for that portion of the award that is attributable to the period after that assumed payment date, and 3) any proration that may prove necessary under Section 4.2.8." (Emphasis supplied.) (Ex. 1, ¶11)

At no point did Mayer suggest that he was unable to provide the requested information to Isner and Doherty, or that he was not authorized to make statements regarding the recovery that Isner would receive under the proposed settlement program.  Instead, he stated in his e-mail: "I hope that this is helpful to you and provides comfort that Mrs. Isner will be fairly treated in the Program.  The process does not allow prediction of the recovery amount with precision, but certainly provides <u>vastly more certainty</u>, more speed, and less stress than a return to the tort system with all elements of the claim at issue." (Emphasis supplied.) (Ex. 1, ¶12)   By virtue of Mayer's position as counsel for Merck, Doherty considered Mayer to have reliable knowledge concerning the payments to be made under the Program, and considered Mayer to be in a position to have superior knowledge than himself with respect to the matters for which he sought, and received, specific information and unqualified assurances from Mayer. (Ex. 1, ¶15)

On October 22, 2008, Doherty telephoned Brown to discuss and confirm the assurances made to him by Mayer and Seeger.  During that conversation, Brown confirmed to Doherty that Isner would be entitled to "dollar for dollar" recovery, subject only to the two contingencies of the global cap and the potential age/work-life expectancy cap. (Ex. 1, ¶13) Brown stated as follows:  "You have Merck saying 'that is the way it is to be read'.  You have the plaintiffs' team saying 'that is the way it is to be read'.  And you have BrownGreer saying 'that is the way it is to be read'.  That's all you need." (Ex. 1, ¶14)  At no point during

their telephone conversation on October 22, 2008, nor at any other time, did Brown suggest to Doherty or to Isner that any other potential contingencies existed, or that any possibility existed for other types of reductions or deductions to be made to Isner's recovery. (Ex. 1, ¶14)   Brown never indicated that he was not authorized to make these representations. Brown never informed Doherty that he and Isner should not, or could not, rely upon the information and assurances that Brown provided to them. (Ex. 1, ¶14)  By virtue of Brown's position as Settlement Administrator, Doherty considered Brown to have reliable knowledge concerning the payments to be made under the Program, and considered him to be in a position to have superior knowledge than himself with respect to the matters for which Doherty sought, and received, specific information and unqualified assurances. (Ex. 1, ¶16)

The defendants' representations, assurances and agreements were the basis for Isner's decision to enter into the proposed settlement.   In reliance upon those representations, assurances and agreement, Isner agreed to enter into the proposed settlement on October 31, 2008.  (Ex. 1, ¶17)

BrownGreer issued the EI damage award figure to Isner in January of 2010. Brown Greer awarded Mrs. Isner $700,000.00 per year in lost earnings, and Dr. Isner was assigned a retirement age of 66. (Ex. 1, ¶18)  Based upon BrownGreer's assessment of yearly income in the amount of $700,000.00, past lost earnings, from the date of Dr. Isner's death through the date of the settlement (10-31-01 through 11-09-07 = 6 years and 9 days), total past damages amount to $4,217,260.20.   Thereafter, Dr. Isner's future lost earnings, from the date of the settlement through his 66th birthday (11-09-2007 through 12-17-2013 = 6 years, 1 month and 8 days), amount to $4,273,675.73. The plaintiff alleges that the global cap was never reached, and the BrownGreer Defendants do not contend otherwise.   Accordingly, Mrs. Isner is entitled to recover "<u>dollar for dollar</u>" EI damages from the date of her husband's death

through his 66th birthday, in the amount of $8,490,935.93. (Id.) Contrary to the defendants'
express and unambiguous representations, Isner was not awarded "dollar for dollar" EI
damages; rather, the total EI damage award made to Isner was reduced to $5,359,316.74.
(Ex. 1, ¶19)  Her past EI damages were reduced by 15.625%, to 84.375% of the total amount
of past lost earnings. (Ex. 1, ¶19)  In addition, BrownGreer arbitrarily reduced the future
damage portion of Isner's EI award by 50%. (Ex. 1, ¶19) After these deductions were
applied, the sum awarded to Isner was $3,131,619.19 less than the total amount she was
entitled to receive pursuant to the express representations made by the defendants. (Ex. 1,
¶20)

## III.  ARGUMENT

### The BrownGreer Defendants Have Failed To Demonstrate That The Undisputed Facts Establish, As A Matter of Law, That They Are Entitled To Judgment On The Claims Against Them In This Action.

#### A.  Standard of Review.

The standard of review to be applied by the Court in considering a motion for
summary judgment is well-established. Summary judgment is appropriate when "there is no
genuine issue as to any material fact and . . . the moving party is entitled to judgment as a
matter of law." Fed. R. Civ. P. 56(c). "A 'genuine' issue is one that could be resolved in favor
of either party, and a 'material fact' is one that has the potential of affecting the outcome of
the case." Calero-Carats v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004), *citing*
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-250 (1986).

#### B.  Choice of Law

The BrownGreer Defendants expressly acknowledge that because this action was
originally filed in Massachusetts, this Court must apply Massachusetts choice of law
principles to the choice of law issues presented by this diversity action. (Motion at p. 15,

*citing* In re Vioxx Prods. Liab. Litig., 522 F.Supp.2d 799, 813 (E.D. La. 2007)).  They further concede that application of Massachusetts choice of law principles requires this Court to apply the substantive law of Massachusetts to Isner's "tort claims related to the contract." (Motion at p. 15, *citing* Stagecoach Transp., Inc. v. Shuttle, Inc., 50 Mass. App. Ct. 812, 817, 741 N.E.2d 862, 867 (2001)).   The plaintiff agrees that Massachusetts law governs her common law tort claims against the BrownGreer Defendants, and further states that Massachusetts law also governs her claim for damages pursuant to Massachusetts General Laws Chapter 93A.  This is so because the Chapter 93A claims are premised upon unfair or deceptive conduct that sounds in tort (misrepresentations and deceit) and do not allege breach of contract, or otherwise seek a remedy under, or the enforcement of, the provisions of any contract.  (Complaint, ¶¶51-57).  *See* Kitner v. CTW Transport, Inc., 53 Mass. App. Ct. 742, 746-747 (2002)("if a particular defendant's unfair conduct with respect to a contract sounds in tort, c. 93A will apply to that contract notwithstanding a contract provision that states that contractual claims will be interpreted under another state's law.").  See also Crellin Tech., Inc. v. Equipmentlease Corp., 18 F.3d 1, 11 (1st Cir. 1994)(holding that "when a chapter 93A claim and the requested remedy are highly analogous to a tort claim and remedy, the chapter 93A claim should be considered as a tort for choice-of-law purposes.")

Although the BrownGreer Defendants stipulate that Massachusetts law governs Isner's tort claims, they contend that "under Massachusetts choice-of-law principles, New York law governs the interpretation and enforcement of plaintiff's Release and agreement to settle." (Motion, p. 15 et seq.)  This argument is without merit, because the only claims that Isner has asserted in this action are common law tort claims and Chapter 93A claims premised upon unfair or deceptive conduct that sounds in tort (misrepresentation and deceit), all of which must be considered under Massachusetts law.   More specifically, Isner alleges that the

defendants' wrongful conduct induced her to enter into the Program.  Accordingly, her claim cannot be categorized as one asserting rights or obligations under the Release. Therefore, these claims fall outside the scope of the choice-of-law provision contained within the Release, which states only that "This Release shall be governed by and construed in accordance with the substantive law of New York, without regard to any choice-of-law rule that would require the application of the law of another jurisdiction."  (Release, Ex. F to Motion, p. 7)

The BrownGreer Defendants do not cite any authority for their apparent contention that New York law applies with respect to the analysis of an affirmative defense that they have raised in response to Isner's tort based claims; that is, their claim that exculpatory language contained in the Release and Master Settlement Agreement operates to bar Isner's tort claims under New York law.  (Motion, pp. 15-20)  They cite only to Kitner and Stagecoach in support of their argument that this Court should look to New York to determine the viability of their affirmative defenses. Neither case supports this contention. In the Stagecoach case, the Massachusetts Appeals Court held that the choice of law provision contained in a contract did not apply, explaining that the provision did not purport to encompass the entire relationship of the parties, and that the claims at issue, which were akin to a tort action of deceit, did not arise under the contract. Stagecoach, 50 Mass. App. Ct. at 818.  In Kitner, the Massachusetts Appeals Court similarly ruled that a choice of law provision did not apply to "tortious conduct or unfair acts inducing a breach of the contract", where the choice of law clause at issue governed only "the identity, construction, enforcement, and interpretation of the contract." Kitner, 53 Mass. App. Ct. at 746.

In addition, their argument in this regard fails to acknowledge that New York also holds that a contractual choice of law provision governs only a cause of action sounding in

contract – it does not govern a cause of action sounding in tort.  Rosenberg v. Pillsbury Co., 718 F.Supp. 1146, 1150 (S.D.N.Y.1989) ("While [a choice-of-law] provision is effective as to breach of contract claims, it does not apply to fraud claims, which sound in tort."); Klock v. Lehman Brothers Kuhn Loeb Inc., 584 F.Supp. 210, 215 (S.D.N.Y. 1984).  Thus, it is clear that Massachusetts law applies to both the plaintiff's claims and the defendants' affirmative defenses in this action.

As discussed more fully below, it is well-established under Massachusetts law that "a party to a contract cannot claim shelter by a contractual device, such as an exculpatory or merger provision, against claims of deceit." Greenleaf Arms Realty Trust I, LLC, v. New Boston Fund, Inc., 81 Mass. App. Ct. 282 (2012). *See also*  Granlund v. Saraf, 263 Mass. 76, 79 (1928)("It is a fundamental principle of law, as it is of morals, public policy and fair dealing, that a party cannot contract against liability for his own fraud.")  In light of this well established principle which implicates public policy concerns, the plaintiff submits that a Massachusetts court would apply Massachusetts law to determine the potential applicability of the clause at issue.

However, even if this Court were to consider the application of New York law to the purported "contract" issues identified by the BrownGreer Defendants, the Motion must be denied.  Exculpatory provisions are not enforceable under New York law where, as is in the case before the Court, the conduct at issue constitutes reckless indifference or intentional wrongdoing.  Abacus Fed. Savings Bank v. ADT Sec. Servs, Inc., 967 N.E.2d 666, 670 (N.Y. 2012). Under New York law, when the allegedly misrepresented facts are peculiarly within the knowledge of the party invoking the disclaimer, even an explicit waiver will not be given effect. United States v. Numisgroup Intern. Corp., 170 F.Supp.2d 340, 352  (E.D.N.Y. 2001) citing Warner Theatre Assocs. Ltd. v. Metropolitan Life Ins. Co., 149 F.3d 134 (2d Cir.

1998); and <u>Banque Arabe Et Internationale v. Md. Nat. Bank</u>, 57 F.3d 146, 155 (2d Cir. 1995). Moreover, "such disclaimers do not shield a seller from liability for fraudulent misrepresentations designed to induce the buyer to enter into a contract." <u>Numisgroup</u>, 170 F.Supp.2d at 352, *citing* <u>Hitachi Credit America Corp. v. Signet Bank</u>, 166 F.3d 614, 630-31 (4th Cir. 1999) ("[A] a buyer can recover for fraudulent inducement not only where the contract contains a general disclaimer of warranties and liabilities, but also where the contract contains specific disclaimers that do not cover the allegedly fraudulent contract-inducing representations."); *and* <u>Woodling v. Garrett Corp.</u>, 813 F.2d 543 (2d Cir. 1987) (an integration clause in contract is no bar to a claim that its acceptance had been procured by fraud). Accordingly, for the reasons set forth more fully below, resolution of the choice of law issue is not outcome determinative, because the Release executed by Isner does not bar her claims against these defendants under either Massachusetts or New York law.

**C**. **The Motion Is Not Premised Upon Undisputed Material Facts.**

In opposition to the Motion, the Plaintiff relies upon, and incorporates herein by reference, its responses to BrownGreer's Statement of Material Facts, her statement of undisputed Material Facts, the Affidavit of Joseph L. Doherty, Jr. dated March 27, 2014 (Doherty Affidavit) and the documents attached to the Doherty Affidavit. For the reasons set forth therein, and as discussed more fully below, the Plaintiff states that the Motion is not premised upon undisputed material facts and must be denied.

**D.   The Release Executed By Isner Does Not Bar Her Claims
      Against The BrownGreer Defendants.**

In support of their Motion, the BrownGreer Defendants argue that Isner's claims against them are barred, in their entirety, by language contained within the Release signed by Isner, and the Master Settlement Agreement (Agreement).  (Motion, pp. 16-17)   As an initial matter, this argument must be rejected because the claims at issue do not fall within the

language of the Release or the Agreement.  The Release states only that "the terms of the Agreement govern <u>the resolution of my claim</u>." (cite)(Emphasis supplied).  This language cannot reasonably be read to encompass a claim that the defendants' tortious and wrongful conduct induced Isner to enter into the Program.  The Agreement provided for the process by which Vioxx claims would be considered for resolution under the Program, and the mechanism by which claims that were accepted into the Program would be evaluated.  Isner's acknowledgement that the terms of the Agreement would govern the resolution of her claim under the Program did not extend further, and therefore does not encompass her tort claims arising out of the wrongful conduct of the defendants that induced her to sign the Release, and to accept that the terms of the Agreement would govern the process by which her claim was considered for entry in the Program and, if accepted, evaluated for payment.

Moreover, the terms of the Agreement do not bar Isner's suit against BrownGreer. The language set forth in §16.9.2 of the Agreement only applies to "any proceeding, judicial or otherwise, against Merck, the NPC or any Administrator to enforce or otherwise <u>with respect to this Agreement</u>."  Contrary to the BrownGreer Defendants' assertion, Isner's claims are not premised upon "the criteria for the EI program that were ultimately developed by the Claims Administrator". (Motion, p. 17)  For the reasons explained above, the disputed issues in this action do not arise out of either the administration of the Program or the Agreement; instead, Isner seeks damages for the defendants' tortious and wrongful conduct and misrepresentations that induced her to enter into the Program.

In any event, even if the exculpatory language of the Release and Agreement could be read to encompass the claims at issue in this action, it is well-settled Massachusetts law that a party cannot rely upon such a clause as protection against claims based upon fraud or deceit. <u>Sound Tech. Inc. v. Hoffman</u>, 50 Mass. App. Ct. 425, 430 (2000) *citing* <u>Bates v. Southgate</u>,

308 Mass. 170, 182-183 (1941); McEvoy Travel Bureau, Inc. v. Norton Co., 408 Mass. 704, 712-713 (1990); Sheehy v. Lipton Indus., 24 Mass.App.Ct. 188, 193 (1987).   "This established rule is an exception to the basic principles concerning the freedom to contract and is grounded upon public policy concerns." Sound Tech., 50 Mass. App. Ct. at 429.  In Bates, the Massachusetts Supreme Judicial Court explained the public policy concerns upon which this rule is based, which encompasses exculpatory, integration and merger clauses, as follows:

> "As a matter of principle it is necessary to weigh the advantages of certainty in contractual relations against the harm and injustice that result from fraud. In obedience to the demands of a larger public policy the law long ago abandoned the position that a contract must be held sacred regardless of the fraud of one of the parties in procuring it. No one advocates a return to outworn conceptions. The same public policy that in general sanctions the avoidance of a promise obtained by deceit strikes down all attempts to circumvent that policy by means of contractual devices. In the realm of fact it is entirely possible for a party knowingly to agree that no representations have been made to him, while at the same time believing and relying upon representations which in fact have been made and in fact are false but for which he would not have made the agreement. To deny this possibility is to ignore the frequent instances in everyday experience where parties accept, often without critical examination, and act upon agreements containing somewhere within their four corners exculpatory clauses in one form or another, but where they do so, nevertheless, in reliance upon the honesty of supposed friends, the plausible and disarming statements of salesmen, or the customary course of business. To refuse relief would result in opening the door to a multitude of frauds and in thwarting the general policy of the law."

Bates, 308 Mass. at 182.

In sum, Massachusetts law precludes the BrownGreer Defendants from relying upon the exculpatory language cited in the Motion as a defense to Isner's claims alleging deceit.

Without waiving her position that Massachusetts law governs all disputed issues in this action, Isner further submits that the BrownGreer Defendants have failed to establish that they are entitled to judgment as a matter of New York law on the basis of the exculpatory language cited in their Motion. The cases cited in their Motion do not hold that exculpatory provisions are enforceable under New York law under any and all circumstances. Instead, the

cases hold expressly that such clauses are <u>not</u> enforceable where the conduct at issue constitutes reckless indifference or intentional wrongdoing. <u>Abacus Fed. Savings Bank v. ADT Sec. Servs, Inc</u>., 967 N.E.2d 666, 670 (N.Y. 2012).   In this case, Isner does allege intentional wrongdoing (deceit) on the part of the BrownGreer Defendants. Alternatively, the undisputed material facts would warrant a determination by a fact-finder that the conduct at issue constituted, at a minimum, "reckless indifference".   In this regard, Isner notes that the Motion is not supported by any affidavits or other materials that contradict her factual assertions with respect to the statements made to her and to Attorney Doherty that induced her to enter the Program. Accordingly, based upon the undisputed material facts before this Court, a genuine issue of material fact exists with respect to whether the conduct of the BrownGreer Defendants constituted either intentional wrongdoing or reckless indifference that would preclude their reliance upon the exculpatory clauses. This is an issue for the trier of fact, and cannot be resolved by summary judgment. Therefore, BrownGreer Defendants have failed to demonstrate that the undisputed facts establish, as a matter of New York law, that Isner's claims are be barred by the exculpatory language upon which their Motion is premised.

**E.   The Release Language Does Not Preclude Isner's Claims That She Relied Upon The Misrepresentations Made To Her By The BrownGreer Defendants.**

The BrownGreer Defendants argue that Isner's claims against them are barred, in their entirety, by language contained within the Release signed by Isner which constitutes a merger clause or integration clause. (Motion, pp. 18-20)  This argument must be rejected because, as explained above, it is well-established under Massachusetts law that "a contracting party may not rely upon such a clause as protection against claims based upon fraud or deceit." <u>Sound Tech</u>., 50 Mass. App. Ct. at 430.   To the contrary, "it is the

established policy of the Commonwealth to refuse to enforce a merger clause for purposes of protecting a party from liability on account of his own fraud and deceit." Id.

For the reasons set forth above, New York law does not apply to the tort claims asserted by Isner; accordingly, the BrownGreer Defendants' reliance upon New York law relative to "disclaimer clauses" as an affirmative defense to tort claims governed by Massachusetts law is misplaced and unavailing. Without waiving this position, Isner submits that even if New York law applied to this issue, the BrownGreer Defendants have not established that they are entitled to summary judgment.  In support of their argument, the BrownGreer Defendants cite Danann Realty Corp. v. Harris, 5 N.Y.2d 317, 184 N.Y.S.2d 599, 157 N.E.2d 597, 599 (1959) for the proposition that under New York law, specific disclaimers "preclude lawsuits, like this one, that are based on allegations that contradict the disclaimers."  (Motion, p. 18) This argument is without merit, because Isner does not allege, as the BrownGreer Defendants contend, that she relied upon the defendants' representations as to the total settlement payment she would receive under the Program.  Instead, she asserts that the misrepresentations pertained to the manner in which the elements of her claim would be evaluated and compensated under the Program; i.e., that her claims for Dr. Isner's past lost wages and future lost earning capacity would be compensated on a "dollar for dollar" basis. Accordingly, Isner did not specifically disclaim reliance upon the misrepresentations at issue in this action.

Moreover, the Motion fails to acknowledge that "[t]here is one long-recognized exception to this rule--the peculiar-knowledge exception. That exception holds that if the allegedly misrepresented facts are peculiarly within the misrepresenting party's knowledge, even a specific disclaimer will not undermine another party's allegation of reasonable reliance on the misrepresentations." Warner Theatre Associates Ltd. Partnership v. Metropolitan Life

Ins. Co., 149 F.3d 134 (2nd Cir. 1998) *citing* Yurish v. Sportini, 123 A.D.2d 760, 507 N.Y.S.2d 234, 235 (App.Div.1986); *and* Danann, 184 N.Y.S.2d 599, 157 N.E.2d at 600 (recognizing and preserving this exception).   As established by the Doherty Affidavit, the undisputed material facts are that Brown directly and unambiguously responded to inquiries regarding the damages to be awarded under the Program, and that Brown, as Claims Administrator, was in a position to have superior knowledge regarding the matters at issue. (Ex. 1, ¶¶14, 15) At a minimum, a genuine issue of material fact exists that would preclude entry of summary judgment on this defense; that is, whether Isner reasonably relied on these misrepresentations, thereby precluding Brown from relying on the disclaimer language contained in the Agreement and Release.

### F.   The BrownGreer Defendants Made Factual Misrepresentations To Isner That Are Actionable Under Massachusetts Law.

As grounds for their Motion, the BrownGreer defendants assert that "no factual misrepresentations were made" to Isner. (Motion, p. 20-21)   This argument is unavailing because the undisputed material facts do not support a finding, as a matter of law, that no actionable promises were made to Isner with respect to her recovery of her husband's future earning capacity on a "dollar for dollar" basis. Of note, the Motion is not supported by an affidavit from Brown, Mayer and/or any other individual that contradicts the facts as alleged by the plaintiff in her Complaint.   Moreover, the Doherty Affidavit establishes, as a matter of undisputed material fact, that Brown did make specific representations to him in this regard during a telephone call on October 22, 2008:   "During that conversation, Brown confirmed to me that Ms. Isner would be entitled to "dollar for dollar" recovery, subject only to the two contingencies of the global cap and the potential age/work-life expectancy cap.   Brown stated as follows:   "You have Merck saying 'that is the way it is to be read'.   You have the

plaintiffs' team saying 'that is the way it is to be read'.  And you have Brown Greer saying 'that is the way it is to be read'.  That's all you need."  (Ex. 1, ¶ 13)

The BrownGreer Defendants' argument relies upon an e-mail from Mayer to Doherty that specifically references "with certainty" "dollar for dollar" recovery of future earnings, and also indicates that this "dollar for dollar" recovery would be subject to certain specific contingencies that are not relevant to this claim.  Their reliance upon the contents of this e-mail is unavailing. Mayer only indicated that the "dollar for dollar" award could be subject to (1) the work-life cap; (2) disability benefits, which he specifically stated would not apply to the Isner death claim; (3) discount to present value; and (4) proration that might be necessary if the global cap is reached.   (Ex. 1, ¶11)  The BrownGreer Defendants do not suggest that any of these specific contingencies resulted in the reduction of the damages awarded to Isner; to the contrary, they acknowledge that Isner's EI award for future lost earning capacity instead was subjected to a "flat" 50% discount. (Motion, p. 21)  This discount has no relation to any of the possible contingencies referenced in the Mayer e-mail, and renders his representations false.   Accordingly, the BrownGreer Defendants' contention that "[t]his prediction of how Mr. Mayer thought future earnings would be calculated for EI purposes in the future turned out to be largely correct" (Motion, p. 21) is wholly without basis. Mayer did not, as the BrownGreer Defendants suggest, state that "future earnings award would be subject to some kind of discounting – the specific amount not stated."  (Id.)  Instead, he stated that the "dollar for dollar" award would potentially be subject to specific kinds of discounting, none of which included a flat rate discount of any amount or a discount based upon "uncertainties about future earnings". (Motion, p. 21)  If Mayer and Brown had intended to convey to Isner that the amount of her EI future earnings award could also be subject to a flat rate discount, or a discount that would reflect some uncertainty about her

decedent's future earnings, they could have so stated.  They did not.  The record is clear that Isner was not informed about the potential for additional reductions to her damage award, and that she relied upon the representations made to her in deciding to enter the Program. (Ex. 1, ¶14, 17) Accordingly, any qualifications contained in the Mayer e-mail are irrelevant to the plaintiff's claims, and do not warrant a conclusion, as a matter of law, that no factual misrepresentations were made to Isner by the BrownGreer Defendants.

    **G.**    **The Factual Misrepresentations Made To Isner By The BrownGreer Defendants Are Actionable.**

The BrownGreer Defendants argue that the plaintiff's claims must fail as a matter of law because the representations at issue constitute "predictions" that are not actionable. (Motion, pp. 22- 23) This argument is not supported by Massachusetts law, and therefore the Motion must be denied. Under Massachusetts law, representations about future events may be actionable where one party to a transaction had, or was in a position where he or she should have had, superior knowledge about the matters to which the misrepresentations related. Gopen v. Am. Supply Co., 10 Mass. App. Ct. 342, 345 (1980). The Doherty Affidavit establishes that both Mayer and Brown were in a position to have superior knowledge about the matters to which their representations related, and the Motion in not supported by any evidence to the contrary.  (Ex. 1, ¶¶15, 16)  Moreover, the only reasonable inference to be drawn from the record before this Court is that both Brown and Mayer knew that Isner and Doherty were looking to them, in their respective roles, for important information that Isner needed in order to make an informed and intelligent decision as to whether to enter the Program, and to release her substantial claims against Merck in exchange for an award of damages under the Program. Accordingly, any "predictive" element to the representations does not bar Isner's claims under Massachusetts law.

Moreover, Massachusetts law permits a plaintiff to recover damages for intentional misrepresentation/deceit upon a showing "that the defendant made a false representation of material fact with knowledge of its falsity for the purpose of inducing the plaintiff to act thereon, and that the plaintiff relied on such representation as true and acted on it to his damage." Barrett Assocs., Inc. v. Aronson, 346 Mass. 150, 152 (1963). A party to a transaction who chooses to either volunteer information or respond to a request for particular information is obligated to speak honestly and to divulge all material facts within his or her knowledge. Kannavos v. Annino, 356 Mass. 42, 48, 50 (1969). The statement on which liability for misrepresentation may be based must be one of fact—that is, something "susceptible of knowledge." Zimmerman v. Kent, 31 Mass. App. Ct. 72, 77 (1991). Furthermore, a statement of present intention as to a future act is a statement of fact that may form the basis for a misrepresentation claim. Barrett Assocs., Inc. v. Aronson, 346 Mass. 150, 152 (1963). In order to recover damages for deceit under Massachusetts law, a plaintiff need not prove that the maker knew that the statement was false. Powell v. Rasmussen, 355 Mass. 117, 118 (1969); Zimmerman v. Kent, 31 Mass. App. Ct. 72, 81 (1991). *See* Acushnet Fed. Credit Union v. Roderick, 26 Mass. App. Ct. 604, 605 n.1 (1988) (knowledge of falsity not required where accurate facts reasonably available to speaker). In this case, it is clear at a minimum that the defendants made statements about the methodology by which the payments would be calculated that they did not know to be true, and that were false. As such, those are actionable.

The speaker need not know that the statement is false if the truth is reasonably susceptible of actual knowledge; that is, "if, through a modicum of diligence, accurate facts are available to the speaker." Acushnet Fed. Credit Union, 26 Mass. App. Ct. at 605 n.1. Where the plaintiff proves "a statement made, as of the party's own knowledge, which is

false, provided the thing stated is not merely a matter of opinion, estimate, or judgment, but is susceptible of actual knowledge[,] . . . it is not necessary to make any further proof of an actual intent to deceive." Snyder v. Sperry & Hutchinson Co., 368 Mass. 433, 444 (1975). Furthermore, the plaintiff in a fraudulent misrepresentation case is not necessarily required to show that a misstatement was made with the specific purpose of inducing his or her reliance. Reisman v. KPMG Peat Marwick LLP, 57 Mass. App. Ct. 100, 109 (2003) (citing Restatement (Second) of Torts § 531 (1977) ("One who makes a fraudulent misrepresentation is subject to liability to the persons or class of persons whom he intends or has reason to expect to act or to refrain from action in reliance upon the misrepresentation, for pecuniary loss suffered by them through their justifiable reliance in the type of transaction in which he intends or has reason to expect their conduct to be influenced."); *see also* Int'l Totalizing Sys. v. PepsiCo, Inc., 29 Mass. App. Ct. 424, 431 n.12 (1990).

The issue of whether a false statement was made with intent to induce reliance generally is a question of fact. *See* Yorke v. Taylor, 332 Mass. 368, 371 (1955); Rousseau v. Gelinas, 24 Mass. App. Ct. 154, 157 (1987). For example, in Zimmerman v. Kent, 31 Mass. App. Ct. 72 (1991), and Snyder v. Sperry & Hutchinson Co., 368 Mass. 433, 444–45 (1975), the Massachusetts Appeals Court analyzed the particular circumstances under which the representations at issue were made and concluded that the facts warranted a finding of such intent. In each case, the plaintiff purchased property from a defendant whose statements were made in such a way as to lull the buyer into trusting and placing confidence in the seller's representations. Snyder v. Sperry & Hutchinson Co., 368 Mass. at 444–45; Zimmerman v. Kent, 31 Mass. App. Ct. at 80.

Application of these principles to the facts of this case requires denial of the Motion. At a minimum, genuine issues of material fact exist as to whether the BrownGreer Defendants made a false statement to Isner with the intent to induce her reliance.

### H.   The Affirmative Defense Of "Ratification" Has No Application To Plaintiff's Claims.

The BrownGreer Defendants argue that Isner's tort claims against them are barred, as a matter of law, under the doctrine of ratification. (Motion, p. 24-28).  This argument is founded upon a contention that she cannot pursue her tort claims against them because she did not seek to rescind or repudiate the Release that she signed and the Master Settlement Agreement. (Motion, p. 24-25)  Contrary to the BrownGreer Defendants' assertions, Isner is not seeking to challenge the amount of the award that she received under the Program. (Motion, p. 25) She is not seeking relief from the operative effect of the Release that she signed, and does not claim that she is entitled to receive additional proceeds to be paid under the Program. Instead, Isner seeks tort damages from the BrownGreer Defendants for the loss she sustained as a consequence of their wrongful conduct and deceit that induced her to enter the Program. Therefore, the doctrines of rescission and repudiation have no bearing on this action.

The BrownGreer Defendants do not cite any legal authority in support of their contention that Isner has "waived the right to bring any claims on alleged misrepresentations that purportedly induced her to enter into that Agreement". (Motion, p. 27)  None of the cases cited in the Motion support the argument that Ms. Isner cannot recover damages from the BrownGreer Defendants, who are not parties to the Release or Agreement, without repudiating her Agreement to participate in the Program.   This argument must be rejected.

### I.   The Plaintiff Has Sustained Compensable Damages.

The BrownGreer Defendants argue that they are entitled to judgment as a matter of law because Isner cannot establish that she sustained compensable damages. (Motion, pp. 27-31)

The BrownGreer Defendants' argument is premised upon an assertion that "the question of whether Ms. Isner was damaged must be evaluated from the standpoint of what position she would have been in had she not entered the Program." (Motion, p. 28)  No case law is cited in support of this proposition, which is contrary to controlling and well-established principles of Massachusetts law governing the proper measure of damages in a misrepresentation action. The measure of damages for intentional misrepresentation under Massachusetts law is the "benefit of the bargain." GTE Prods. Corp. v. Broadway Elec. Supply Co., 42 Mass. App. Ct. 293, 296 (1997). That is, the plaintiff is entitled to recover "the difference between the value of what he has received and the actual value of what he would have received if the representations had been true." Rice v. Price, 340 Mass. 502, 507 (1960). Benefit of the bargain damages must be proved with reasonable certainty. Id. at 510; see also Restatement (Second) of Torts § 549(2) (1977)(applying benefit-of-the-bargain recovery to parties in business transactions where damages are proved with reasonable certainty). The plaintiff in an action for negligent misrepresentation is entitled to recover damages in the amount necessary to compensate her for the pecuniary loss caused by the misrepresentation. Zimmerman v. Kent, 31 Mass. App. Ct. 72, 82 (1991); Danca v. Taunton Sav. Bank, 385 Mass. 1, 9 (1982). Here, the plaintiff can establish, with certainty, the difference between the amount of damages that she was awarded, and the value of what she would have received if the representations made to her had been true.

Because the BrownGreer Defendants' argument is premised upon an erroneous legal argument with respect to the proper measure of damages under Massachusetts law, their further claim that "she cannot prove that she is 'worse off' today than she would have been had she gone to trial and prevailed" (Motion, p. 31) is misplaced and irrelevant.  In addition, this argument lacks any factual foundation.  In support of their argument, the  BrownGreer Defendants purport to evaluate the amount of damages that Ms. Isner would have been entitled

to receive for Dr. Isner's lost income under the Massachusetts Wrongful Death Statute. (Motion, p. 29-30)  This argument is not supported by undisputed facts before the Court, relies wholly upon unsubstantiated speculation, and for these reasons alone must be rejected. Furthermore, this argument focuses on only one of the many elements of damages at issue in the Isner Vioxx Action, and ignores the undisputed fact that her wrongful death claim included other items of damages recoverable under Massachusetts law to compensate herself and her three minor children for the loss of the companionship, society and support of her husband and their father.  In addition, Isner asserted a claim for punitive damages under M.G.L. Chapter 229. By agreeing to participate in the Program, Isner agreed to a compromise of her claims and specifically agreed that to release her claim for punitive damages.  Viewed in this context, the BrownGreer defendants' purported calculation of only one of the elements of damages sought in the Isner Vioxx Action is entirely misplaced. In sum, there is no absolutely no factual or legal basis for the BrownGreer Defendants' position that the undisputed facts establish, as a matter of law, that  Isner cannot prove a right to recover damages in this action.

### J. The Plaintiff's Claims Under M.G.L. Chapter 93A Are Not Barred As A Matter Of Law.

The BrownGreer Defendants contend that they are entitled to judgment as a matter of law on the plaintiff's claims under Chapter 93A because Isner's claims for misrepresentation and deceit fail as a matter of law.  (Motion, p. 31)  It is well-established under Massachusetts law that a valid common law claim for misrepresentation ordinarily furnishes a basis for liability under Chapter 93A. Levings v. Forbes & Wallace, Inc., 8 Mass.App.Ct. 498, 504 (1979).   For the reasons set forth above, the BrownGreer Defendants have failed to demonstrate that the undisputed facts establish, as a matter of law, that they are entitled to

summary judgment on Isner's tort claims against them alleging misrepresentation and deceit. Accordingly, they are not entitled to summary judgment on the Chapter 93A.

The BrownGreer Defendants further contend that Isner's claims "fall outside the scope of Chapter 93A" because the conduct at issue did not occur in "trade or commerce".   Chapter 93A prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Engaging in "trade or commerce" requires that a party act "in a business context", as opposed to engaging in a purely private transaction.  Peabody N.E., Inc. v. Marshfield, 426 Mass. 436, 439 (1998), citing Lantner v. Carson, 374 Mass. 606, 611 (1978). Resolution of the question whether a party is acting in a business context depends on particular circumstances, "such as the nature of the transaction, the character of the parties involved, and [their] activities . . . and whether the transaction [was] motivated by business or personal reasons." Begelfer v. Najarian, 381 Mass. 177 , 190-191 (1980).

The BrownGreer Defendants' unsupported assertion that "[n]o commercial relationship ever existed between BrownGreer and Ms. Isner" (Motion, p. 32) is insufficient to support their contention that the undisputed facts establish, as a matter of law, that they are entitled to summary judgment on the plaintiffs' claims under Chapter 93A.  To the contrary, the undisputed facts of this matter establish that the BrownGreer Defendants were, in fact, acting in a business context when they engaged in the conduct at issue.  There is simply no basis for the BrownGreer Defendants to claim that it was motivated by personal reasons, or engaged in purely private transactions, while they were serving as Claims Administrator in the Vioxx litigation. Therefore, their Motion must be denied.

### III.    CONCLUSION

For the reasons set forth above, the Plaintiff submits that the Motion must be denied.

Respectfully submitted,


/s/Philip E. Murray, Jr.
Philip E. Murray, Jr.

/s/ Carol Ann Kelly
Carol Ann Kelly
Murray, Kelly & Bertrand, P.C.
300 Trade Center, Suite 2700
Woburn, Massachusetts 01801
Telephone No. (781) 569-0020
Fax No. (781) 569-0022
Email:  ckelly@mkblegal.com
Counsel for the Plaintiff,
Linda Isner, Executrix of the Estate
Of Jeffrey Isner, M.D.

Dated:  March 28, 2014

28

CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Opposition Of The Plaintiff, Linda Isner, Executrix of the Estate of Jeffrey Isner, M.D., To The Motion For Summary Judgment Of The Defendants, BrownGreer PLC And Oran L. Brown, and Memorandum of Law  has been served on Liaison Counsel, Russ Herman, Ann B. Oldfather, and Phillip Wittmann, by U.S. Mail and email or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8(B), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 28th day of March, 2014.

/s/ Carol Ann Kelly_____
Carol Ann Kelly
Murray, Kelly & Bertrand, P.C.
300 Trade Center, Suite 2700
Woburn, Massachusetts 01801
Telephone No. (781) 569-0020
Fax No. (781) 569-0022
Email:  ckelly@mkblegal.com
Counsel for the Plaintiff,
Linda Isner, Executrix of the Estate
Of Jeffrey Isner, M.D.