EASTERN DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: Vioxx Marketing, Sales Practices And Products Liability Litigation | MDL Case No. 1657 |
| | SECTION L |
| THIS DOCUMENT RELATES TO: | JUDGE FALLON |
| Linda Isner, Executrix of the Estate of Jeffrey Isner, M.D, Plaintiff | MAGISTRATE JUDGE KNOWLES |
| v. | |
| Seeger Weiss, LLP et al, Defendants | |
| 2:12-cv-02406-EEF-DEK | |

## AFFIDAVIT OF ATTORNEY JOSEPH L. DOHERTY, JR.

Joseph L. Doherty, Jr., being duly sworn, deposes and states as follows:

1. I have been an attorney in good standing in the Commonwealth of Massachusetts since December 17, 1978. I make this affidavit on personal knowledge of the facts set forth herein.

2. I represented the plaintiff, Linda Isner, Executrix of the Estate of Jeffrey Isner, M.D. (Ms. Isner), in a wrongful death action arising out of the death of her husband, Dr. Jeffrey Isner. At the time of his death, Dr. Isner was survived by his wife and by three minor children.

3. On October 29, 2004, I commenced a wrongful death civil action on behalf of Ms. Isner in Middlesex Superior Court against Merck & Co., Inc. (Merck) and Kimberly Hendricks in Middlesex Superior Court (the Isner Vioxx Action). A true copy of the Complaint in the Isner Vioxx Action is attached hereto as Exhibit A. In the Vioxx Action, Ms. Isner sought an award of damages from the defendants under the

Massachusetts Wrongful Death Statute, M.G.L. Chapter 229, §§2 and 6. The damages demanded in her Complaint included both the full and fair compensatory damages suffered by Ms. Isner and her three minor children, and punitive damages for the willful, wanton, reckless conduct and gross negligence of the defendants.

4. Merck removed the Isner Vioxx Action to the United States District for the District of Massachusetts pursuant to 28 U.S.C. §§1332, 1441, and 1446. The Isner Vioxx Action subsequently was transferred by the Judicial Panel on Multidistrict Litigation ("Panel") to MDL 1657.

5. Theodore V.H. Mayer and Hughes Hubbard & Reed, LLP, represented Merck in the MDL Action. Orran L. Brown (Brown) and BrownGreer LLC, served as Settlement Administrator with respect to the settlement of the Vioxx Claims. Christopher A. Seeger (Seeger), a partner in the law firm of Seeger Weiss, LLP, applied to and was appointed by the Court to the Plaintiffs' Steering Committee ("PSC").

6. When the initial settlement proposal was presented, I was concerned that the language of the proposal would not provide payment of any damages for future lost earnings, which was a substantial component of Ms. Isner's claims, in view of the fact that her husband was a 54 year old physician with significant yearly earnings. I expressed these concerns to Attorney Mayer of Hughes Hubbard & Reed, LLP, who advised that the language of the proposal would include recovery of such future damages.

7. On October 20, 2008, Ms. Isner and I attended a settlement meeting with Judge Corodemus in New York City. At the conference with Judge Corodemus, both Mayer and Seeger stated unequivocally to me that Ms. Isner would be entitled to full recovery of Dr. Isner's lost earnings, both prior to the date of the settlement and thereafter, through to the end of Dr. Isner's work-life expectancy.

8. On October 20, 2008 Mayer and Seeger made express oral representations directly to Ms. Isner and to me that the only two contingencies that could potentially reduce that full recovery were a "global cap" and the fact that Dr. Isner's work-life expectancy could be capped at age 65.

9. On October 21, 2008, I sent an e-mail to Mayer requesting specific written confirmation of the assurances made to me and Ms. Isner the prior day, and of the fact that Mrs. Isner would be entitled to EI damages for all of her husband's lost earnings, "dollar for dollar", subject only to the global cap and the age cap on work-life expectancy. A true copy of the text of that e-mail, together with true copies of the texts of all other e-mails referenced in this Affidavit, is attached hereto as Exhibit B.

10. I also sent an e-mail to Seeger on October 21, 2008, confirming the conversation that Ms. Isner and I had with him outside of the courthouse after the conference, at which time Seeger had again assured Ms. Isner and me that if Ms. Isner entered the settlement, she would be entitled to *all* past and future lost earnings through to the end of Dr. Isner's work-life expectancy.

11. On October 22, 2008, Mayer confirmed the assurances made to Isner and me in an e-mail transmitted to me. In that e-mail, Mayer specifically represented as follows: "…there is no individual cap on awards, nor are awards for qualifying claims limited to past lost earnings. The only cap on awards is the aggregate cap referred to in Section 4.2.8, which provides for proration in the event the aggregation of individual MI EI awards exceeds the MI EI Payment Cap Amount of $195 million. I have confirmed with Brown Greer that it agrees with this interpretation." Mayer further represented as follows: "As you know, Brown Greer has not yet established all the criteria for EI awards. What can be said with certainty is that for an otherwise

qualifying claim, future earnings will be awarded <u>without a cap</u>, up to an age cutoff (which they have told me will be no lower than 65). <u>The awards will be dollar for dollar</u> subject to 1) disability benefits, which would not apply in a death case such as this, 2) I believe, discount to present value as of the payment date (i.e., the assumed date for final payments under the Program) for that portion of the award that is attributable to the period after that assumed payment date, and 3) any proration that may prove necessary under Section 4.2.8." (Emphasis supplied.)

12. At no point did Mayer suggest that he was unable to provide the requested information to Ms. Isner and myself, or that he was not authorized to make statements regarding the recovery that Ms. Isner would receive under the proposed settlement program. Instead, he stated in his e-mail: "I hope that this is helpful to you and provides comfort that Ms. Isner will be fairly treated in the Program. The process does not allow prediction of the recovery amount with precision, but certainly provides <u>vastly more certainty</u>, more speed, and less stress than a return to the tort system with all elements of the claim at issue." (Emphasis supplied.)

13. On October 22, 2008, I telephoned Brown to discuss and confirm the assurances made to me by Mayer and Seeger. During that conversation, Brown confirmed to me that Ms. Isner would be entitled to "dollar for dollar" recovery, subject only to the two contingencies of the global cap and the potential age/work-life expectancy cap. Brown stated as follows: "You have Merck saying 'that is the way it is to be read'. You have the plaintiffs' team saying 'that is the way it is to be read'. And you have BrownGreer saying 'that is the way it is to be read'. That's all you need."

14. At no point during our telephone conversation on October 22, 2008, nor at any other time, did Brown suggest to me or to Ms. Isner that any other potential contingencies

existed, or that a possibility existed for other types of reductions or deductions to be made to Isner's recovery. Brown never indicated that he was not authorized to make these representations. Brown never informed me that Ms. Isner and I should not, or could not, rely upon the information and assurances that he was providing to us.

15. By virtue of his position as counsel for Merck, I considered Mayer to have reliable knowledge concerning the payments to be made under the Program, and considered him to be in a position to have superior knowledge than I with respect to the matters for which I sought, and received, specific information and unqualified assurances from him.

16. By virtue of his position as Settlement Administrator, I considered Brown to have reliable knowledge concerning the payments to be made under the Program, and considered him to be in a position to have superior knowledge than I with respect to the matters for which I sought, and received, specific information and unqualified assurances from him.

17. The defendants' representations, assurances and agreements were the basis for Ms. Isner's decision to enter into the proposed settlement. In reliance upon those representations, assurances and agreement, she agreed to enter into the proposed settlement on October 31, 2008.

18. BrownGreer issued the EI damage award figure to Isner in January of 2010. Brown Greer awarded Ms. Isner $700,000.00 per year in lost earnings, and Dr. Isner was assigned a retirement age of 66.

19. Contrary to the defendants' express and unambiguous representations, the total EI damage award made to Ms. Isner was $5,359,316.74. Her EI damages were reduced

by 15.625%, to 84.375% of the total amount of damages. In addition, BrownGreer arbitrarily reduced the future damage portion of Ms. Isner's EI award by 50%.

20. After these deductions were applied, the sum awarded to Isner was $3,131,619.19 less than the total amount she was entitled to receive.

Signed under the pains and penalties of perjury this 27th day of March, 2014.

_____
Joseph L. Doherty, Jr.

Commonwealth of Massachusetts

Middlesex, SS

On this 27th day of March, 2014, before me, the undersigned notary public, personally appeared Joseph L. Doherty, Jr., proved to me through satisfactory evidence of identification, which was a Massachusetts Drivers License, to be the person who signed the attached Affidavit in my presence, and who swore or affirmed to me that the contents of the document are truthful and accurate to the best of his knowledge and belief.

_____
Notary Public

My Commission Expires: 07-01-2016