EASTERN DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **In Re: Vioxx Marketing, Sales Practices And Products Liability Litigation** | ) ) ) MDL Case No. 1657 ) ) SECTION L ) ) JUDGE FALLON ) ) MAGISTRATE JUDGE KNOWLES ) ) ) ) ) ) |
| THIS DOCUMENT RELATES TO: | |
| <u>Linda Isner, Executrix of the Estate of Jeffrey Isner, M.D</u>, Plaintiff | |
| v. | |
| <u>Seeger Weiss, LLP et al,</u> Defendants | |
| 2:12-cv-02406-EEF-DEK | |

**LOCAL RULE 56.2 STATEMENT OF MATERIAL FACTS OF THE PLAINTIFF, LINDA ISNER, EXECUTRIX OF THE ESTATE OF JEFFREY ISNER, M.D, IN RESPONSE TO THE MOTIONS FOR SUMMARY JUDGMENT OF THE DEFENDANTS, BROWNGREER PLC AND ORRAN L. BROWN AND THE DEFENDANTS HUGHES HUBBARD & REED, LLP AND TED MAYER**

Pursuant to Local Rule 56.2, the plaintiff, Linda Isner, Executrix of the Estate of Jeffrey Isner, M.D. (Isner), submits this statement of material facts in opposition to the Motion for Summary Judgment filed by the defendants, BrownGreer PLC and Orran L. Brown and the Motion for Summary Judgment filed by the defendants, Hughes Hubbard & Reed, LLP and Ted Mayer (collectively, Motions).

1. Attorney Joseph L. Doherty, Jr. (Doherty) represented the plaintiff, Linda Isner, Executrix of the Estate of Jeffrey Isner, M.D. (Ms. Isner), in a wrongful death action arising out of the death of her husband, Dr. Jeffrey Isner. At the time of his death, Dr. Isner was survived by his wife and by three minor children. (Affidavit of Joseph L. Doherty, Jr., submitted in opposition to the Defendants' Motions, ¶¶ 1, 2)(Exhibit 1)

2. On October 29, 2004, Doherty commenced a wrongful death civil action on behalf of Ms. Isner in Middlesex Superior Court against Merck & Co., Inc. (Merck) and Kimberly Hendricks in Middlesex Superior Court (the Isner Vioxx Action). A true copy of the Complaint in the Isner Vioxx Action is attached to the Doherty Affidavit as Exhibit A.  In the Vioxx Action, Ms. Isner sought an award of damages from the defendants under the Massachusetts Wrongful Death Statute, M.G.L. Chapter 229, §§2 and 6.  The damages demanded in her Complaint included both the full and fair compensatory damages suffered by Ms. Isner and her three minor children, and punitive damages for the willful, wanton, reckless conduct and gross negligence of the defendants. (Ex. 1, ¶¶ 2-3)

3. Merck removed the Isner Vioxx Action to the United States District for the District of Massachusetts pursuant to 28 U.S.C. §§1332, 1441, and 1446.  The Isner Vioxx Action subsequently was transferred by the Judicial Panel on Multidistrict Litigation ("Panel") to MDL 1657. (Ex. 1, ¶4)

4. Theodore V.H. Mayer and Hughes Hubbard & Reed, LLP, represented Merck in the MDL Action.  Orran L. Brown (Brown) and BrownGreer LLC, served as Settlement Administrator with respect to the settlement of the Vioxx Claims.  Christopher A. Seeger (Seeger), a partner in the law firm of Seeger Weiss, LLP, applied to and was appointed by the Court to the Plaintiffs' Steering Committee ("PSC"). (Ex. 1, ¶5)

5. When the initial settlement proposal was presented, Doherty was concerned that the language of the proposal would not provide payment of any damages for future lost earnings, which was a substantial component of Ms. Isner's claims, in view of the fact that her husband was a 54 year old physician with significant yearly earnings. Doherty expressed these concerns to Attorney Mayer of Hughes Hubbard & Reed,

LLP, who advised that the language of the proposal would include recovery of such future damages. (Ex. 1, ¶6)

6. On October 20, 2008, Ms. Isner and Doherty attended a settlement meeting with Judge Corodemus in New York City. At the conference with Judge Corodemus, both Mayer and Seeger stated unequivocally to Doherty that Ms. Isner would be entitled to full recovery of Dr. Isner's lost earnings, both prior to the date of the settlement and thereafter, through to the end of Dr. Isner's work-life expectancy. (Ex. 1, ¶7)

7. On October 20, 2008 Mayer and Seeger made express oral representations directly to Ms. Isner and to Doherty that the only two contingencies that could potentially reduce that full recovery were a "global cap" and the fact that Dr. Isner's work-life expectancy could be capped at age 65. (Ex. 1, ¶8)

8. On October 21, 2008, Doherty sent an e-mail to Mayer requesting specific written confirmation of the assurances made to me and Ms. Isner the prior day, and of the fact that Mrs. Isner would be entitled to EI damages for all of her husband's lost earnings, "dollar for dollar", subject only to the global cap and the age cap on work-life expectancy. A true copy of the text of that e-mail, together with true copies of the texts of all other e-mails referenced in this Affidavit, are attached to the Doherty Affidavit as Exhibit B. (Ex. 1, ¶9)

9. Doherty also sent an e-mail to Seeger on October 21, 2008, confirming the conversation that Ms. Isner and Doherty had with him outside of the courthouse after the conference, at which time Seeger had again assured Ms. Isner and Doherty that if Ms. Isner entered the settlement, she would be entitled to *all* past and future lost earnings through to the end of Dr. Isner's work-life expectancy. (Ex. 1, ¶10)

10. On October 22, 2008, Mayer confirmed the assurances made to Isner and Doherty in an e-mail transmitted to Doherty. In that e-mail, Mayer specifically represented as follows: "…there is no individual cap on awards, nor are awards for qualifying claims limited to past lost earnings.  The only cap on awards is the aggregate cap referred to in Section 4.2.8, which provides for proration in the event the aggregation of individual MI EI awards exceeds the MI EI Payment Cap Amount of $195 million.  I have confirmed with Brown Greer that it agrees with this interpretation."  Mayer further represented as follows:  "As you know, Brown Greer has not yet established all the criteria for EI awards.  What can be said with certainty is that for an otherwise qualifying claim, future earnings will be awarded without a cap, up to an age cutoff (which they have told me will be no lower than 65).  The awards will be dollar for dollar subject to 1) disability benefits, which would not apply in a death case such as this, 2) I believe, discount to present value as of the payment date (i.e., the assumed date for final payments under the Program) for that portion of the award that is attributable to the period after that assumed payment date, and 3) any proration that may prove necessary under Section 4.2.8." (Emphasis supplied.) (Ex. 1, ¶11)

11. At no point did Mayer suggest that he was unable to provide the requested information to Ms. Isner and Doherty, or that he was not authorized to make statements regarding the recovery that Ms. Isner would receive under the proposed settlement program. Instead, he stated in his e-mail: "I hope that this is helpful to you and provides comfort that Ms. Isner will be fairly treated in the Program.  The process does not allow prediction of the recovery amount with precision, but certainly provides vastly more certainty, more speed, and less stress than a return to the tort system with all elements of the claim at issue." (Emphasis supplied.)(Ex. 1, ¶12)

12. On October 22, 2008, Doherty telephoned Brown to discuss and confirm the assurances made to him by Mayer and Seeger. During that conversation, Brown confirmed to Doherty that Ms. Isner would be entitled to "dollar for dollar" recovery, subject only to the two contingencies of the global cap and the potential age/work-life expectancy cap. Brown stated as follows: "You have Merck saying 'that is the way it is to be read'. You have the plaintiffs' team saying 'that is the way it is to be read'. And you have BrownGreer saying 'that is the way it is to be read'. That's all you need." (Ex. 1, ¶13)

13. At no point during the telephone conversation on October 22, 2008, nor at any other time, did Brown suggest to Doherty or to Ms. Isner that any other potential contingencies existed, or that a possibility existed for other types of reductions or deductions to be made to Isner's recovery. Brown never indicated that he was not authorized to make these representations. Brown never informed Doherty that Ms. Isner and he should not, or could not, rely upon the information and assurances that he was providing to them. (Ex. 1, ¶14)

14. By virtue of his position as counsel for Merck, Doherty considered Mayer to have reliable knowledge concerning the payments to be made under the Program, and considered him to be in a position to have superior knowledge than him with respect to the matters for which Doherty sought, and received, specific information and unqualified assurances from him. (Ex. 1, ¶15)

15. By virtue of his position as Settlement Administrator, Doherty considered Brown to have reliable knowledge concerning the payments to be made under the Program, and considered him to be in a position to have superior knowledge than him with respect

        to the matters for which Doherty sought, and received, specific information and unqualified assurances from him. (Ex. 1, ¶16)

16. The defendants' representations, assurances and agreements were the basis for Ms. Isner's decision to enter into the proposed settlement. In reliance upon those representations, assurances and agreement, she agreed to enter into the proposed settlement on October 31, 2008. (Ex. 1, ¶17)

17. BrownGreer issued the EI damage award figure to Isner in January of 2010. Brown Greer awarded Ms. Isner $700,000.00 per year in lost earnings, and Dr. Isner was assigned a retirement age of 66. (Ex. 1, ¶18)

18. Contrary to the defendants' express and unambiguous representations, the total EI damage award made to Ms. Isner was $5,359,316.74. Her EI damages were reduced by 15.625%, to 84.375% of the total amount of damages. In addition, BrownGreer arbitrarily reduced the future damage portion of Ms. Isner's EI award by 50%. (Ex. 1, ¶19)

19. After these deductions were applied, the sum awarded to Isner was $3,131,619.19 less than the total amount she was entitled to receive. (Ex. 1, ¶20)

7

Respectfully submitted,


/s/Philip E. Murray, Jr.
Philip E. Murray, Jr.


/s/ Carol Ann Kelly
Carol Ann Kelly
Murray, Kelly & Bertrand, P.C.
300 Trade Center, Suite 2700
Woburn, Massachusetts 01801
Telephone No. (781) 569-0020
Fax No. (781) 569-0022
Email:  ckelly@mkblegal.com
Counsel for the Plaintiff,
Linda Isner, Executrix of the Estate
Of Jeffrey Isner, M.D.

Dated:  March 28, 2014

CERTIFICATE OF SERVICE

      I hereby certify that the above and foregoing Local Rule 56.2 Statement Of Material Facts Of The Plaintiff, Linda Isner, Executrix Of The Estate Of Jeffrey Isner, M.D, In Response To The Motions For Summary Judgment Of The Defendants, Browngreer PLC and Orran L. Brown and The Defendants Hughes Hubbard & Reed, LLP and Ted Mayer has been served on Liaison Counsel, Russ Herman, Ann B. Oldfather, and Phillip Wittmann, by U.S. Mail and email or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8(B), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 28th day of March, 2014.

      /s/ Carol Ann Kelly_____
      Carol Ann Kelly
      Murray, Kelly & Bertrand, P.C.
      300 Trade Center, Suite 2700
      Woburn, Massachusetts 01801
      Telephone No. (781) 569-0020
      Fax No. (781) 569-0022
      Email: ckelly@mkblegal.com
      Counsel for the Plaintiff,
      Linda Isner, Executrix of the Estate
      Of Jeffrey Isner, M.D.