UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX PRODUCTS LIABILITY LITIGATION | * | MDL Case No. 1657 |
| | * | |
| | * | SECTION L |
| This document relates to: | * | |
| | * | JUDGE FALLON |
| *Linda Isner, Executrix of the Estate of Jeffrey Isner, M.D., v. Seeger Weiss, LLP, et al.*, | * | |
| | * | MAGISTRATE JUDGE KNOWLES |
| | * | |
| 2:12-cv-02406-EEF-DEK | * | |

**************************************************************************

**OMNIBUS REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS BROWNGREER PLC, ORRAN L. BROWN, HUGHES HUBBARD & REED, LLP AND <u>TED MAYER'S MOTION FOR SUMMARY JUDGMENT</u>**

Ms. Isner entered the Vioxx Resolution Program on precisely the same terms as all of the other tens of thousands of claimants who enrolled in the Program—she agreed that she would share in a large fixed settlement fund on the same basis as all other qualifying claimants, and her claims received the same neutral evaluation and assessment as did all other qualifying claimants. Ms. Isner's settlement included an Extraordinary Injury ("EI") claim that was assessed using the same valuation principles that the Claims Administrator developed and applied uniformly to *all* EI claims awards; Plaintiff pursued an appeal of her EI award to a Special Master through the Program, and the appeal was denied. At the end of the claims process, Ms. Isner received a sizeable award that turned out to be the largest share of the fund distributed to any single claimant by a substantial margin, and she did so without undergoing the substantial risks, expenses, time, and delayed recovery associated with litigating through to a full trial. She received exactly what she bargained for, and she has no legally sustainable basis for now seeking more.

In their respective motions for summary judgment, both the BrownGreer Defendants and the HHR Defendants set forth a number of legally dispositive grounds that warrant summary

judgment in their favor on all of Ms. Isner's claims. These grounds included that: (1) Ms. Isner executed a release that bars all of the claims that she now attempts to assert against the Claims Administrator and Merck's counsel; (2) the executed release contained express disclaimers that she was relying on representations made by other persons; (3) the executed release contained an express acknowledgment that she had not been guaranteed a certain amount in settlement funds, nor any guarantee that she would receive any settlement funds at all; (4) the alleged "dollar for dollar" recovery that Ms. Isner claims she was promised is belied by the underlying contemporaneous documents; (5) any alleged statements regarding future plans for the EI Program are not actionable as a matter of law because they were predictions about the future that were not false when made; (6) Ms. Isner waived any right to challenge the amount of her award or the method of its calculation when she decided to accept and retain the $6.9 million award that she was allocated from the fixed settlement fund; (7) Ms. Isner cannot recover additional tort damages where the amount she actually received through the program exceeded the corresponding amount of compensatory damages that are permissible under Massachusetts law; and (8) the Massachusetts consumer protection act does not apply to the transaction at issue here because it is not commercial in nature.

In her Opposition to the HHR and BrownGreer Defendants' motions for summary judgment,[1] plaintiff does not proffer any evidence that creates a factual dispute on a material issue related to the points above. Ms. Isner's Opposition instead centers on (1) urging this Court

---

[1] Defendants Hughes Hubbard & Reed LLP ("HHR") and Theodore ("Ted") Mayer (the "HHR Defendants") filed a motion for summary judgment as to the claims against them contemporaneously with the motion filed by Defendants BrownGreer PLC and Orran L. Brown (the "BrownGreer Defendants"). [Rec. Doc. 64825.] Plaintiff's Opposition in response to the BrownGreer Defendants' motion for summary judgment [Rec. Doc. 64882] also serves as her Opposition to the summary judgment motion filed by the HHR Defendants. [*See* Rec. Doc. 64883.] This Omnibus Reply supports all of defendants' motions.

to ignore the unambiguous terms of the Settlement Agreement and Release, under which she collected and retained her $6.9 million settlement payment through the Resolution Program for the final resolution of all her Vioxx-related claims; and (2) persisting in mischaracterizing statements attributed to the Claims Administrator for the Settlement Program (the BrownGreer Defendants) and Merck's legal counsel in the Vioxx litigation (the HHR Defendants) in an attempt to construct some type of misrepresentation claim.

Rather than reiterate each of the numerous arguments that warrant immediate judgment for defendants (most of which were not adequately addressed in plaintiff's Opposition, if at all), this Reply Memorandum will focus on three of the primary flaws advanced in Ms. Isner's Opposition brief that defeat her claims as a matter of law:

First and foremost, plaintiff's claims against the BrownGreer and HHR Defendants are barred by the plain language of the Settlement Agreement and her Release—indeed her agreement to release **all** Vioxx-related claims was the consideration required for her participation in the settlement.[2]  Plaintiff cannot retain all the benefits she has received through the Program, while at the same time ignoring her side of the bargain.

Second, the alleged statements on which plaintiff bases her claims are not legally actionable misrepresentations of fact—rather, at best they constitute predictions about future events that were not false when made.

---

[2]   The breadth of this Release cannot be overstated.  It covered every person or entity that could conceivably be implicated in any claim arguably related to Vioxx, including, for instance, claims against other third party pharmaceutical companies who manufactured competing medications.  Indeed, the Release specifically stated it was *"intended to be as broad as can possibly be created."*  In other words, the $4.85 billion settlement fund would be the exclusive source of recovery for the Vioxx-related claims of any enrolled claimant.  Thus, a claimant could not subsequently become dissatisfied with the recovery allocated through the Program and attempt to seek additional recovery from other sources—as Ms. Isner attempts to do here.

Lastly, as a matter of law, plaintiff could not have reasonably relied on the alleged misrepresentations when she decided to enter the Vioxx Resolution Program: any such reliance would be patently unreasonable given the clear and unambiguous language in her Release that she was not "**RELYING ON ANY REPRESENTATION OR OTHER STATEMENT MADE BY OR ON BEHALF OF, MERCK OR ANY OTHER PERSON**," and her acknowledgement that "**THERE IS NO GUARANTEE THAT I WILL RECEIVE ANY SETTLEMENT PAYMENT OR, IF ANY SETTLEMENT PAYMENT IS MADE, THE AMOUNT THEREOF**." See Ex. F (Oct. 30, 2008 Release of Claimant Linda Isner) at 7 (original emphasis).[3] Moreover, plaintiff could not have reasonably relied on the alleged statements to form a belief that she would receive a so-called "dollar for dollar" recovery of all of her husband's purported future earnings with no discounting applied, as she now contends, because such contention is flatly contradicted by the very statements on which she claims to rely, and the contemporaneous statements of her own counsel. Each of these points is discussed below.

**I.     Plaintiff's Claims Against the BrownGreer and HHR Defendants are Barred By the Unambiguous Terms of the Release and Incorporated Settlement Agreement.**

As explained in the opening briefs, the Release that Ms. Isner executed bars her claims against both the HHR Defendants and the BrownGreer Defendants. *See* HHR Mot. for Summ. J. at 3–5; BrownGreer Mot. for Summ. J. at 16–17. As to the BrownGreer Defendants, the Release expressly incorporates the MSA which states that enrolled program claimants such as Ms. Isner cannot "institute any proceeding, judicial or otherwise" against the Claims Administrator "to enforce, or otherwise with respect to, this Agreement." MSA § 16.9.2 (Ex. A). In response, Ms.

---

[3]     All exhibits referenced herein are attached to the BrownGreer Defendants' LR56.1 Statement of Material Facts As To Which There Is No Dispute [Rec. Doc. 64823-1], filed contemporaneously with the BrownGreer Defendants' Motion for Summary Judgment.

1156495v1

Isner asserts that her claims do not have anything to do with the Agreement, rather her claims relate to the "tortuous and wrongful conduct and misrepresentations that induced her to enter into the Program." Pl.'s Opp'n at 14.  But all of the alleged misrepresentations to which plaintiff points relate to how the Agreement would be applied and interpreted as to the EI Program.  Nevertheless, plaintiff baldly asserts, without any additional explanation, that alleged misrepresentations concerning the interpretation and application of the Agreement have no connection to the Agreement.  She likewise asserts that "Isner's claims are not premised upon 'the criteria for the EI program that were ultimately developed by the Claims Administrator.'" *Id*.

Ms. Isner's claims go to the very heart of the deal that she struck when she voluntarily entered into the Vioxx Resolution Program.  In exchange for tendering broad releases, she received the right to participate in a fixed settlement fund, along with other qualifying claimants, that would be distributed based on principles set out in the Settlement Agreement.  Pursuant to the terms of the Agreement, and as confirmed by the statements she now cites in support of her present claims, the ultimate amount of any awards, and the precise method for the calculation of the EI awards in particular, were "un-knowable" at the time she entered into the Agreement.  *See* E-mail from J. Doherty to T. Mayer, Oct. 22, 2008 (included in Ex. E).  Rather, the precise amount of any award to a particular participant, including Ms. Isner, could not be determined until the Claims Administrator had assessed all claims in the program.  *See* MSA Ex. 1.2.2.3 at 6–7 ("THERE IS NO GUARANTEE THAT I WILL RECEIVE ANY SETTLEMENT PAYMENT OR, IF ANY SETTLEMENT PAYMENT IS MADE, THE AMOUNT THEREOF." (original emphasis)) (included in Ex. A at 78–90).

As an essential term of this Agreement, plaintiff agreed that she would not have any "right to institute any proceeding, judicial or otherwise, against Merck, the NPC o*r any Administrator* to enforce, *or otherwise with respect to, this Agreement*." MSA § 16.9.2 (Ex. A). The Release, which incorporates the MSA by reference, also makes clear that the releases contained therein "***are intended to be as broad as can possibly be created***." Ex. F (Isner Release) at 3 (emphasis added). In other words, as consideration to enter the Vioxx Resolution Program, and in exchange for the consideration plaintiff received through the Program, plaintiff unequivocally agreed to extinguish all of her Vioxx-related claims, including any alleged claims that she might have relating to the Vioxx Resolution Program. Ms. Isner's claims unquestionably relate to her dissatisfaction with how the Program was applied to her claim and the amount of the resulting award. These claims fall squarely within the scope of her Release.

Notably, plaintiff does not contend that the misrepresentations she alleges invalidate the Release that she signed. Indeed, plaintiff confirms in her Opposition that she is not attempting to repudiate or rescind the Settlement Agreement or the Release. *See* Pl.'s Opp'n at 23. She fully intends to keep all the proceeds she received through her participation in the Resolution Program, and the benefit of having collected her recovery without the risk or expense of trial. Yet, contrary to the terms of the deal she struck, she now seeks an end-run around the measure of compensation provided to her in the Resolution Program by seeking to recover what she perceives as a deficiency in the amount of her settlement payment from the BrownGreer and HHR Defendants. The unambiguous language of the Agreement and Release should be enforced as intended to bar these claims.

Ms. Isner's Release contained express language whereby she agreed to release any conceivable claim against Merck's attorneys, including the HHR Defendants, that ***in any way***

arose out of, related to, resulted from or was in any way connected to Vioxx or any injury allegedly connected to Vioxx.  *See* HHR Mot. for Summ. J. at 4–5; Ex. F (Isner Release) at 1–2.  Ms. Isner also agreed in her Release that she would "never . . . institute or participate in any new legal action against any Released Party to any extent, or in any way, arising out of, relating to, resulting from and/or connected with VIOXX and/or with any injury I . . . have ever claimed, or may at any time hereafter claim, VIOXX caused in whole or in part. *Id.* at 4.  These Release provisions alone are dispositive of all of plaintiff's claims against the HHR defendants, and plaintiff proffers no contrary argument.

**II.     The Alleged Statements On Which Plaintiff Bases Her Claims Are Not Actionable Misrepresentations of Fact.**

Under Massachusetts law, only statements of a factual nature that are false when made may give rise to a cause of action.  *Robert E. Ricciardelli Carpet Serv. v. Home Depot U.S.A.*, 679 F. Supp. 2d 192, 208 (D. Mass. 2010).  Statements of "opinion, or conditions to exist in the future, or matters promissory in nature" are therefore not actionable.  *Stolzoff v. Waste Sys. Intern., Inc.*, 792 N.E.2d 1031, 1041 (Mass. App. Ct. 2003) (citing *Yerid v. Mason*, 170 N.E.2d 718 (Mass. 1960)).  The very statements on which plaintiff relies to plead her claims, including plaintiffs' counsel's own e-mail sent at the time of her consideration of the Settlement Agreement, confirm that plaintiff was never promised a so-called "dollar for dollar" calculation of her husband's future lost wages without adjustments of any kind, as she now contends.  These communications also make clear that the statements plaintiff now says she relied upon were not false when made, and could at best be understood as incomplete predictions involving largely "un-knowable" future events.

In cannot be disputed that the precise terms and criteria used to evaluate and allocate EI claims had not been established as of the time all eligible claimants, including Ms. Isner, enrolled

1156495v1

in the Program, but were to be established at some future date by the Claims Administrator. This was stated in the MSA. MSA § 4.2.7 (Ex. A) ("All EI Payment determinations of the Claims Administrator shall be made according to the guidelines to be established by the Claims Administrator in consultation with Merck and the NPC, and (in any event) shall be final, binding and Non-Appealable."). This was stated in Mr. Mayer's response to questions from Ms. Isner's counsel. E-mail from T. Mayer to J. Doherty, Oct. 22, 2008 (included in Ex. E) ("As you know, BrownGreer has not yet established all the criteria for EI awards."). This was stated in a contemporaneous e-mail written by Ms. Isner's counsel. E-mail from J. Doherty to T. Mayer, Oct. 22, 2008 (included in Ex. E) ("[T]he complete criteria for allocating EI damages has not as yet been finalized . . . .").

First, as to Mr. Mayer, plaintiff's counsel sought from him confirmation that future lost earnings claims would not be cut off at the date of the Settlement Agreement. Plaintiff's claims most heavily rely on Mr. Mayer's response to that inquiry, in which he states that although "BrownGreer has not yet established all the criteria for EI awards," future earnings would not be cut off at the date of the Settlement Agreement, but would be "dollar for dollar" through the end of work-life expectancy, subject to deductions for, at least, disability benefits, reduction to present value, and potential proration if the settlement cap was reached. E-mail from T. Mayer to J. Doherty, Oct. 22, 2008 (included in Ex. E); *see* BrownGreer Mot. for Summ. J. at 20–22. The focus of plaintiff's current claims is that Mr. Mayer did not at that time make reference to the flat 50% discount rate that BrownGreer ultimately decided to apply to all claimants, regardless of state of residence, to account for reduction to present value as well as uncertainties about future earnings. But, in the reproduced quotation, Mr. Mayer did not purport to recite a conclusive and final list of all reductions that might be applied—rather, he confirmed that

BrownGreer had not yet established the necessary EI criteria.  And his language also noted his uncertainty even as to the specifics of those predicted deductions he did communicate (*e.g.*, "I believe").  *Id.*  Thus, the statement attributed to Mr. Mayer can only be interpreted as an incomplete prediction of conditions to exist in the future, not a comprehensive description of the EI criteria that BrownGreer had not even yet established.[4]

Indeed, plaintiff's counsel's own response to this e-mail confirms that he understood the only "conclusively established" fact at the time of Mr. Mayer's quoted e-mail point was that EI payments would take into account work-life expectancy that extended beyond the date of the settlement—and that other considerations governing the calculation of such payments were "un-knowable" at that time:

> I had a long telephone conference with Orran Brown this afternoon.  We resolved several issues, ***but we acknowledged that there were also many issues that involved "un-knowable" factors***, at this time, which will not be resolved prior to October 30th. . . .  Orran confirmed, (as you similarly confirmed in your e-mail today), that . . . EI damages will include ***all*** lost earnings/lost earning capacity throughout Dr. Isner's full work-life expectancy, (rather than from the date of his death up to the date of the settlement agreement).  Orran stated that although ***the complete criteria for allocating EI damages has not as yet been finalized*** or reduced to writing, ***this specific criteria, governing past as well as future lost earning capacity, has been conclusively established***, in view of the fact that Merck, the Plaintiffs' committee and BrownGreer all agree that the language of Section 4.2.6 mandates such an interpretation.  As Orran stated succinctly today:  "You have Merck saying 'that is the way it is to be read'.  You have the Plaintiffs' team saying 'that is the way it is to be read'.  And you

---

[4]   Furthermore, in advocating for her desired total recovery of her husband's lost earnings in the amount of $8,490,935.93, plaintiff's Opposition flatly ignores Mr. Mayer's quoted assertion that he believed there would be a discount applied to reduce future earnings amounts to present value.  Plaintiff's $8,490,935.93 figure is calculated without any reduction to present value.  *See* Pl.'s Opp'n at 8–9.  Moreover, Mr. Mayer's statement makes no reference as to whether "dollar for dollar" are gross dollars or net after-tax dollars.  As a personal injury lawyer, Mr. Doherty would have been aware at the time that Massachusetts law requires the use of net after-tax dollars.

> have BrownGreer saying 'that is the way it is to be read.' That's all you need." . . . I apologize if you felt I was being critical in my last e-mail, concerning the fact that we had a misunderstanding as to whether EI damages were or were not capped as of the date of the settlement.

E-mail from J. Doherty to T. Mayer, Oct. 22, 2008 (included in Ex. E) (some emphases added).

This October 22, 2008 e-mail from plaintiff's counsel to Mr. Mayer is also the source of the purported misrepresentation attributed to Mr. Brown by plaintiff. But it is clear from plaintiff's counsel's own characterization of his conversation with Mr. Brown that Mr. Brown, like Mr. Mayer, confirmed that "the complete criteria for allocating EI damages **has not as yet been finalized**," and that the only element that has been "conclusively established" was that past as well as future lost earning capacity would be recoverable. *Id.* Nowhere in either of these statements is there any suggestion that Mr. Mayer or Mr. Brown purported to inform plaintiff's counsel of all the criteria governing the calculation of EI payments, including all the deductions and discounts that could be applied, and nowhere did either defendant state that no such deductions and discounts would be applied to plaintiff's claim.[5] Instead, plaintiff was repeatedly

---

[5] Plaintiff's counsel's statements in his affidavit, created six years later for purposes of litigation, that are flatly contradicted by his contemporaneous communications should be disregarded for purposes of summary judgment. *See Sierra v. Ocwen Loan Serv.*, LLC, No. H–10–4984, 2012 WL 527940, at *5 (S.D. Tex. Feb. 16, 2012) ("self-serving and after-the-fact affidavits" that were "contradicted by numerous" contemporaneous documents did not create a disputed issue of fact on summary judgment) (citing *Tyler v. Cedar Hill Indep. Sch. Dist.*, 426 Fed. Appx. 306, 309 (5th Cir. 2011) ("We have repeatedly held that self-serving affidavits without more, will not defeat a motion for summary judgment.")). In the affidavit submitted with plaintiff's Opposition, her attorney Joseph Doherty states that on October 22, 2008, Defendant Orran Brown "confirmed" to him that plaintiff would be entitled to "dollar for dollar" recover subject only the contingencies of the global settlement cap and the age/work-life expectancy cap. Doherty Aff. ¶13. But it is clear from the contemporaneous e-mails compiled by plaintiff's counsel that the only statement he attributed to Orran Brown at the time was not the "dollar for dollar" language, but the comment that Merck, plaintiffs' counsel and BrownGreer all said "that"—with the antecedent of "that" not quoted— "is the way it is to be read." E-mail from J. Doherty to T. Mayer, Oct. 22, 2008 (included in Ex. E). Similarly, the Doherty affidavit states that Mr. Mayer made "express oral representations" directly to plaintiff and her counsel that "the only two contingencies that could potentially reduce . . . full recovery were a 'global

informed, and her counsel expressly acknowledged, that all of the criteria had not yet been established.

In response to the straightforward Massachusetts doctrine limiting claims for misrepresentation to statements of a factual nature that are false when made, plaintiff asserts only that the defendants' alleged predictive statements should be actionable because Mr. Brown and Mr. Mayer should have had "superior knowledge about the matters to which the misrepresentations related." Pl.'s Opp'n at 20. This assertion may well be true as to statements regarding facts that actually exist, but it has no applicability as to statements about facts that are not yet in existence and are not yet known by anyone. There is no evidence of any kind that suggests that, contrary to the statements made by Mr. Mayer and Mr. Brown and contained in the MSA itself, the EI criteria, including the reductions that would ultimately be applied to future earnings, were established and known at the time of the alleged representations. To the contrary, all of the contemporaneous documentary evidence confirm that those criteria were *not* yet established at that time. Indeed, the EI criteria were not released until over a year after the alleged statements on which plaintiff purportedly relied. *See* BrownGreer Mot. for Summ. J. at 7-8; *see also* Review Criteria Manual for the Vioxx Extraordinary Injury Program, Published Version 1 (Dec. 1, 2009), *available at* http://vioxx.laed.uscourts.gov/Forms/Manual%20Used%20by%20Claims%20Administrator.pdf. Thus, as plaintiffs' counsel recognized, these criteria were still "un-knowable" in October 2008. For purposes of misrepresentation claims, a fact is defined as something "susceptible of knowledge." *Zimmerman v. Kent*, 575 N.E.2d 70, 75

---

cap' and the fact that Dr. Isner's work-life expectancy could be capped at age 65." Doherty Aff. ¶ 8. Yet the email from Mr. Mayer that forms the basis for plaintiff's present claims states that the EI amount attributable to lost earnings would be subject to, at minimum, a reduction to present value. E-mail from T. Mayer to J. Doherty, Oct. 22, 2008 (included in Ex. E).

(Mass. App. Ct. 1991). Yet-to-be established criteria to be developed at a future time plainly cannot meet this definition.

### III. As a Matter of Law, Plaintiff Could Not Have Reasonably Relied on The Alleged Misrepresentations in Her Decision to Enter the Vioxx Resolution Program.

Even assuming that the alleged statements could be construed as actionable misrepresentations of fact, which they cannot, the plaintiff must show also that her "reliance on any such representation was reasonable and justifiable." *Cumis Ins. Society, Inc. v. BJ's Wholesale Club, Inc.*, 918 N.E.2d 36, 50 (Mass. 2009) (citing *Kuwaiti Danish Computer Co. v. Digital Equip. Corp.*, 781 N.E.2d 787, 795 (Mass. 2003); *see also Saxon Theatre Corp. of Boston v. Sage*, 200 N.E.2d 241, 244-45 (Mass. 1964). "[W]hether the plaintiffs' reliance was reasonable and justifiable can be a question of law where the undisputed facts permit only one conclusion." *Cumis*, 918 N.E.2d at 50 (citing *Fox v. F & J Gattozzi Corp.*, 672 N.E.2d 547, 551 (Mass. 1996)).

In an attempt to meet this pleading requirement, plaintiff argues that she did reasonably and justifiably rely on the alleged statements of Mr. Brown and Mr. Mayer in formulating her alleged belief that she was entitled to what she calls a "dollar for dollar" recovery of her husband's lost wages, not subject to any reduction for taxes, present value, or on any other basis, in the amount of $8,490,935.93. *See, e.g.,* Pl.'s Opp'n at 8 (asserting that Mr. Brown never informed her or her counsel that they "should not, or could not, rely upon the information and assurances" that he provided to them). But any such reliance would be objectively unreasonable in the face of plaintiff's counsel's own admission, at the time of the alleged misrepresentations, that "the complete criteria for allocating EI damages ***has not as yet been finalized***," and that the only element that has been "conclusively established" was that past as well as future lost earning

1156495v1

capacity would be recoverable. E-mail from J. Doherty to T. Mayer, Oct. 22, 2008 (included in Ex. E).

In addition, there can be no question that plaintiff *was* informed that she could not and should not rely on any assertions made outside of the contract itself when deciding to enter the settlement agreement: The Release that she executed to enter into the Program acknowledged, in bold capital letters, that she was "**ENTERING INTO THIS RELEASE FREELY AND VOLUNTARILY, WITHOUT BEING INDUCED, PRESSURED OR INFLUENCED BY, AND WITHOUT RELYING ON ANY REPRESENTATION OR OTHER STATEMENT MADE BY OR ON BEHALF OF, MERCK OR ANY OTHER PERSON.**" Ex. F (Isner Release) at 7 (original emphasis). This Release was based on a template that was attached to the MSA as an exhibit. Thus, Ms. Isner and her counsel knew, or should have known, at the time that the communications at issue here took place that any purported representations outside the settlement documentation itself should not be relied upon as a basis for entering the Program. Thus, any reliance on representations outside of the written contract documents was not reasonable.

In response to this argument, plaintiff contends that this language in the Release must be disregarded for purposes of summary judgment because of her allegations of intentional wrongdoing.[6] *See, e.g.*, Pl.'s Opp'n at 16. However, under Massachusetts law,[7] "reliance on

---

[6] Plaintiff's Opposition makes numerous references to alleged "wrongful conduct" and "deceit" on the part of defendants. Plaintiff does not, however, point to a single fact that supports an inference of fraudulent conduct. She simply asserts that the statements were wrong. First, as demonstrated above the actual statements that Plaintiff relies on are not false. Second, the undisputed facts establish that the final criteria for the awards were not established until a year after the statements were made, and there are no facts to support an allegation that defendants had knowledge of the final criteria that would be applied. *See* Compl. (Case No. 2:12-cv-02406-EEF-DEK, Rec. Doc. 1-2) ¶ 48.

supposed misrepresentations that contradict the terms of the parties' agreement is unreasonable as a matter of law and so cannot support a fraudulent-inducement claim." *HSBC Realty Credit Corp. v. O'Neill*, --- F.3d ----, 2014 WL 486529, at *4 (1st Cir. Feb. 7, 2014) (citing *Starr v. Fordham*, 648 N.E.2d 1261, 1268 (Mass. 1995)); *see also Turner v. Johnson & Johnson*, 809 F.2d 90, 97 (1st Cir. 1986) (If "the contract was fully negotiated and voluntarily signed, [then] plaintiffs may not raise as fraudulent any prior oral assertion inconsistent with a contract provision that specifically addressed the particular point at issue."); *Masingill v. EMC Corp.*, 870 N.E.2d 81, 89 (Mass. 2007) (calling this "a rule of long standing").[8]

Here, plaintiff asserts that she relied on representations by Mr. Brown and Mr. Mayer to form her belief that she was entitled to a "dollar for dollar" recover of her husband's lost wages, not subject to any discount or reduction, in the amount of $8,490,935.93. *See* Pl.'s Opp'n at 8–9 (contending that "the sum awarded to Isner was $3,131,619.19 less than the total amount she was entitled to receive pursuant to the express representations made by the defendants"). To the extent she was relying on any of the defendants' statements, as she claims, to establish that she was entitled to a particular dollar amount for lost wages, or even a particular measure of calculating lost wages, such reliance was not reasonable as a matter of law because it is directly

---

[7]   Because plaintiff argues that her claims do not relate to the Settlement Agreement or her Release, she asserts in her Opposition that New York law does not apply. *See* Pl.'s Opp'n at 9–12. Defendants maintain, as set forth in the motions for summary judgment, that New York law governs the interpretation and enforcement of plaintiff's Release and agreement to settle. But, as explained herein, plaintiff's claims also fail under Massachusetts law in any event.

[8]   This doctrine exists alongside the cases cited by plaintiff, which note that "[a]n integration clause in a contract does not insulate *automatically* a party from liability where he induced another person to enter into a contract by misrepresentation." *HSBC Realty*, 2014 WL 486529, at *4 (citing *Bates v. Southgate*, 31 N.E.2d 551 (Mass. 1941)). The *HSBC Realty* Court, for example, found that such rule did not "hold sway" when the reliance alleged is upon "supposed misrepresentations that contradict the terms of the parties' agreement." *Id.*

contradicted by the terms of the Settlement Agreement and executed Release.  Specifically, the Release that she executed stated:

> **I FURTHER ACKNOWLEDGE THAT I UNDERSTAND THIS RELEASE AND THE AGREEMENT AND THAT THERE IS NO GUARANTEE THAT I WILL RECEIVE ANY SETTLEMENT PAYMENT OR, IF ANY SETTLEMENT PAYMENT IS MADE, THE AMOUNT THEREOF.**

And likewise stated:

> By signing this Release, both I and any such Derivative Claimant understand and acknowledge that there is no assurance as to the amount, if any, of payment to be made to any claimant under the Program, and this fact shall in no way affect the validity or effect of this Release.

*Id.* at 2, 7 (original emphasis).  Moreover, though the MSA by its terms charged the Claims Administrator with establishing the process and criteria for evaluating EI claims, at the time of the enrollment period, the Claims Administrator had not yet created any criteria or protocols to govern the EI process (and plaintiff chose to enter the Agreement despite this uncertainty).  *See* MSA § 4.2.7 (Ex. A); BrownGreer Mot. for Summ. J. at 7–8.  Given these terms of the Agreement she voluntarily entered, it was "unreasonable as a matter of law" for plaintiff to rely on alleged prior representations relating to the amount or calculation criteria of her ultimate settlement award "that [we]re (as a matter of fact) specifically contradicted by the terms of [the] written contract."  *Masingill*, 870 N.E.2d at 89.  Accordingly, plaintiffs' claims fail as a matter of law.[9]

---

[9]  Furthermore, as previously noted, the alleged representations on their face do not support the interpretation that plaintiff places on them.  She could not have reasonably relied on such statements to form her purported belief that she would receive a so-called "dollar for dollar" recovery for the gross amount of $8,490,935.93 with no discount of any kind applied.  Mr. Mayer's e-mail expressly noted his expectation that, at a minimum, calculations based on lost future wages would be discounted to present value.  *See* E-mail from T. Mayer to J. Doherty, Oct. 22, 2008 (included in Ex. E) (noting that EI awards would be "subject to . . . I believe

## CONCLUSION

For the foregoing reasons, as well as the reasons set forth in the summary judgment motions filed by the BrownGreer Defendants and the HHR Defendants, summary judgment should be granted in favor of the BrownGreer Defendants and the HHR Defendants on all of plaintiff's claims.

Dated: April 15, 2014

                                              Respectfully submitted,

                                              */s/ Dorothy H. Wimberly*
                                              Dorothy H. Wimberly, 18509
                                              STONE PIGMAN WALTHER WITTMANN L.L.C.
                                              546 Carondelet Street
                                              New Orleans, LA 70130
                                              Phone: 504-581-3200
                                              Fax:    504-581-3361

                                              *Defendants' Liaison Counsel*

                                              Douglas R. Marvin
                                              Eva Petko Esber
                                              M. Elaine Horn
                                              WILLIAMS & CONNOLLY LLP
                                              725 Twelfth Street N.W.
                                              Washington, DC  20005
                                              Phone: 202-434-5000

                                              John H. Beisner
                                              Skadden, Arps, Slate, Meagher & Flom LLP
                                              1440 New York Avenue, N.W.
                                              Washington, DC 20005
                                              Phone: 202-371-7000

                                              *Counsel for Defendants BrownGreer PLC, Orran L. Brown, Hughes Hubbard & Reed LLP, and Theodore Mayer*

---

**discount to present value as of the payment date** (*i.e.*, the assumed date for final payments under the Program) for that portion of the award that is attributable to the period after that assumed payment date") (emphasis added)).

## CERTIFICATE OF SERVICE

      I hereby certify that the above and foregoing Reply has been served on Liaison Counsel, Russ Herman, Ann B. Oldfather, and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8(C), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 15th day of April, 2014.

                                              */s/ Dorothy H. Wimberly*
                                              Dorothy H. Wimberly, 18509
                                              STONE PIGMAN WALTHER WITTMANN L.L.C.
                                              546 Carondelet Street
                                              New Orleans, Louisiana  70130
                                              Phone:  504-581-3200
                                              Fax:     504-581-3361
                                              dwimberly@stonepigman.com

                                              Defendants' Liaison Counsel