UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: VIOXX
   PRODUCTS LIABILITY LITIGATION

MDL NO. 1657

SECTION L

JUDGE FALLON
MAG. JUDGE KNOWLES

THIS DOCUMENT RELATES TO:  *Pending VTE Cases*

## ORDER & REASONS

The Court has pending before it Defendant Merck's motion for reconsideration (Rec. Doc. 64528), which relates to this Court's April 9, 2013, order. (Rec. Doc. 64341). The Court has reviewed the memoranda and the applicable law and now issues this order.

### I.  BACKGROUND

To put this matter in perspective, a brief review of this litigation is appropriate. This multidistrict litigation ("MDL") involves the prescription drug Vioxx, known generically as Rofecoxib. Merck, a New Jersey corporation, researched, designed, manufactured, marketed, and distributed Vioxx to relieve pain and inflammation resulting from osteoarthritis, rheumatoid arthritis, menstrual pain, and migraine headaches. On May 20, 1999, the Food and Drug Administration ("FDA") approved Vioxx for sale in the United States.

Vioxx remained publicly available until September 30, 2004, when Merck withdrew it from the market after data from a clinical trial known as APPROVe indicated that the use of Vioxx increased the risk of cardiovascular thrombotic events, such as myocardial infarction (heart attack) and ischemic stroke. Thereafter, thousands of individual suits and numerous class actions were filed against Merck in state and federal courts throughout the country alleging

various products liability, tort, fraud, and warranty claims. It is estimated that 105 million prescriptions for Vioxx were written in the United States between May 20, 1999, and September 30, 2004. Based on this estimate, it is thought that approximately 20 million patients have taken Vioxx in the United States. On February 16, 2005, the Judicial Panel on Multidistrict Litigation ("JPML") conferred MDL status on Vioxx lawsuits filed in various federal courts throughout the country and transferred all such cases to this Court to coordinate discovery and to consolidate pretrial matters pursuant to 28 U.S.C. § 1407. *See In re Vioxx Prods. Liab. Litig.*, 360 F. Supp. 2d 1352 (J.P.M.L. 2005).

Following transfer, one of the first acts taken by this Court was to appoint and organize a Plaintiffs' Steering Committee ("PSC"), which was charged with coordinating and conducting extensive discovery, investigating potential claims, and marshaling supporting evidence. Ultimately, the PSC decided to pursue claims based on heart attacks and strokes, and developed trial packages for those claims. After multiple bellwether trials in this MDL and several trials in state court, the parties negotiated a comprehensive settlement program for claims of myocardial infarction, stroke, and sudden cardiac death. The overwhelming majority of claimants alleging these injuries chose to participate in that settlement program.

The PSC chose not to pursue a different subset of claims: those involving injuries of pulmonary embolism ("PE") and deep vein thrombosis ("DVT"), collectively known as venous thrombotic events ("VTEs"). In April 2009, the Court appointed a separate liaison counsel to coordinate injuries other than heart attack and stroke, including VTEs, and subsequently organized a second Plaintiffs' Steering Committee ("PSC II") for those claims. A few months later, the Court held a case management conference for those cases. At the request of the PSC II's

lead counsel, the Court agreed to defer case-specific discovery in the individual cases held by the PSC II in order to allow the investigation of general causation in the VTE cases.

On November 2, 2011, Merck filed a motion for summary judgment in the VTE cases. (Rec. Doc. 63539). Merck argued that, in the two years since the appointment of the PSC II, the PSC II had not succeeded at marshalling evidence that Vioxx can cause VTEs. In response, the VTE plaintiffs filed a motion to strike Merck's motion for summary judgment in VTE cases. (Rec. Doc. 63603). The VTE plaintiffs argued that Merck's motion for summary judgment was, in fact, a premature *Daubert* motion, but that regardless, a motion for summary judgment was premature because the parties had not yet completed discovery.

On January 5, 2012, this Court issued an order (Rec. Doc. 63623) denying the plaintiffs' motion to strike Merck's motion, but continuing the submission of Merck's motion for summary judgment and setting a deadline of May 7, 2012, for the production of expert reports on general causation in the VTE cases. Subsequently, in Pretrial Order 58, the Court extended that deadline and also set deadlines for rebuttal reports, depositions of expert motions, and *Daubert* motions. At the present time, all those deadlines, as extended by later motions and orders, have passed; both the plaintiffs and Merck have since produced their expert and rebuttal reports, and conducted depositions of expert witnesses.

On April 9, 2013, this Court ruled on *Daubert* motions filed by the plaintiffs and Merck. (Rec. Doc. 64341). Specifically, Merck moved to exclude all five of the plaintiffs' expert witnesses, bringing no challenge to each witness's qualifications, but rather arguing that methodological flaws were present in each witness's analysis. (Rec. Doc. 64211). The majority of its motion focused on April Zambelli-Weiner and Elizabeth Brooks, who conducted a "pooled analysis" of certain data from the Vioxx clinical trials and concluded that Vioxx increases the

3

risk of VTEs. Merck argued that the pooled analysis was flawed for several reasons: because it excluded some placebo studies in favor of comparator studies, because it was inconsistent with respect to which data it choose to exclude, because it used unadjudicated data even where adjudicated data was available, because it involved statistically insignificant findings, and because it had not been subjected to peer review. Merck also argued that summary judgment was appropriate and that because plaintiffs' experts could not withstand the *Daubert* challenges, no genuine issue of material fact remained.

In opposition to Merck's motion (Rec. Doc. 64232), the VTE plaintiffs argued that Drs. Zambelli-Weiner and Brooks had followed acceptable methods and standards in epidemiology, and provided more specific justification for each of the alleged flaws discussed by Merck. More generally, the plaintiffs argued that Merck's arguments were grounds for cross-examination at trial, rather than grounds for exclusion under *Daubert*. Further, in a separate motion, the plaintiffs asked that the Court delay any decision on Merck's motion for summary judgment until resolving the *Daubert* motions. (Rec. Doc. 64233). In addition to Merck's *Daubert* motion, the April 9, 2013, order also addressed the VTE plaintiffs *Daubert* motion (Rec. Doc. 64201), for which reconsideration has not been sought. In its 34-page order, the Court considered and responded to each of these arguments. (Rec. Doc. 64341).

## II.    PRESENT MOTIONS

Merck now moves for reconsideration of the Court's April 9, 2013, order. (Rec. Doc. 64435). First, it argues that the Court should reconsider its decision that Drs. Zambelli-Weiner and Brooks appropriately used a multiplier to achieve statistical significance in their pooled analysis. Merck suggests that the multiplier was appropriately applied to DVTs, but inappropriately applied to PEs. Further, it argues that the multiplier was derived from data

4

relating to patients in hospitals, who are more susceptible to VTEs than other patients, and thus the multiplier was inappropriately applied to data pertaining to those patients not in hospitals. Second, Merck argues that the Court should reconsider its decision that Drs. Zambelli-Weiner and Brooks reliably excluded data from placebo-controlled trials in their pooled analysis. It suggests that the Court disregarded Drs. Zambelli-Weiner and Brooks' failure to demonstrate that they had used *a priori* criteria in selecting studies and also disregarded their failure to provide any scientific justification for excluding certain studies, such as APPROVe, on the basis that those studies were prematurely terminated.

      The VTE plaintiffs respond. (Rec. Doc. 64483). First, they argue that Merck cannot meet the standard for reconsideration because it has not presented any new facts or law and because it has not established that there is a need to correct some error or injustice. Second, they argue that Merck's motion is untimely because it was filed 55 days after the Court issued its order. Third, the VTE plaintiffs state that, because Merck has merely reasserted the same arguments it has previously made, it would be redundant to respond to the substance of Merck's motion. With that caveat, they do seek to clarify what they consider to be misrepresentations by Merck. Specifically, misrepresentations about Dr. Spyropoulous' testimony on the multiplier and Dr. Zambelli-Weiner's testimony regarding the *a priori* criteria used for the pooled analysis. Fourth, the VTE plaintiffs suggest that the only new evidence—data provided by the State of Utah— "found a statistically significant association between Vioxx and VTE." (*Id*. at 13).

      Merck then replies, asserting that there are "[f]our things wrong" with the VTE plaintiffs' response. (Rec. Doc. 64528 at 1). First, it argues that Dr. Spyropoulous "stoutly defends the reliability of the scientific data supporting the use of a multiplier in connection with [DVTs, b]ut he cannot, and does not, say the same for the data regarding [PEs]." (*Id*.). Second, it re-argues

that "the extrapolation of data from a hospitalized population to the non-hospitalized general population is biased and unreliable." (*Id.* at 2). Third, Merck argues that the VTE plaintiffs' justification for the exclusion of APPROVe, as asserted in their response, is not valid. Fourth, it argues that its motion was timely because it seeks reconsideration of an interlocutory order. It also suggests that this Court has previously held that reconsideration is appropriate even where there has not been an intervening change in law or fact.

The VTE plaintiffs reply, again. (Rec. Doc. 64558). First, they argue that, prior to its response, Merck had not previously sought to limit use of the multipliers. They refute the assertion that the use of the multiplier is improper and remark that "it is not Merck's experts . . . who take aim at the application of the same multiplier to both the PE and the DVT branches of VTEs—it is Merck's attorneys who do so." (*Id.* at 4). Further, the VTE plaintiffs note that the "use of a multiplier to correct for under-powering is common in peer-reviewed literature, and does not change the relative risk ratio of the causation testimony, only the power of the results." (*Id.* at 5). Second, they suggest that the Court's previous holding that reconsideration is appropriate without an intervening change in the law or fact is limited to instances in which a non-substantive modification of a prior order is at issue (and where such a modification is necessary to correct an injustice, not clear error).

Merck then responds to the VTE plaintiffs' sur-reply. (Rec. Doc. 64577). First, Merck argues that it had sought to limit the application of the multipliers at issue in its memorandum in support, not merely in its response. Second, it argues that the VTE plaintiffs have themselves misrepresented Dr. Spyropoulos testimony, ignoring his "many concessions, hesitations, caveats,

and obvious overall discomfort . . . about applying the DVT-based multipliers to PEs." (*Id*. at 2). Third, it again argues that its motion was filed timely.[1]

### III.   LAW & ANALYSIS

#### A.   Law

Federal Rule of Civil Procedure 54(b) provides that "any order . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." FED. R. CIV. P. 54(b). As the United States Court of Appeals for the Fifth Circuit has observed, a district court "possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient." *Melancon v. Texaco, Inc.*, 659 F.2d 551, 553 (5th Cir. 1981). The custom in the Eastern District of Louisiana "has been to evaluate motions to reconsider interlocutory orders under the same standards that govern Rule 59(e) motions to alter or amend a final judgment." *Castrillo v. Am. Home Mortg. Servicing, Inc.*, No. 09–4369, 2010 WL 1424398, at *4, (E.D. La. Apr. 5, 2010) (Vance, J.); *see, e.g.*, *In re Gulf States Long Term Acute Care of Covington, L.L.C.*, Nos. 11–1659, 13–508, 2014 WL 1365950, at *1 (E.D. La. Apr. 7, 2014) (Milazzo, J.); *Higgins v. NMI Enters., Inc.*, No. 09–6594, 2014 WL 28858, at *7 (E.D. La. Jan. 2, 2014) (Brown, J.).

A Rule 59(e) motion "is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of [the interlocutory order]." *Templet v. HydroChem Inc*., 367 F.3d 473, 479 (5th Cir. 2004) (citing *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990)). Rather, a Rule 59(e) motion serves the narrow purpose of correcting manifest errors of law or fact, or presenting newly discovered evidence. *Lavespere v.*

---

[1] Merck also requests that, if its motion for reconsideration is not granted, the order be certified for interlocutory appeal to the United States Court of Appeals for the Fifth Circuit, pursuant to 28 U.S.C. § 1292(b).

*Niagra Mach. & Tool Works, Inc.*, 910 F.2d 167, 174 (5th Cir. 1990); *Templet*, 367 F.3d at 479 (quoting *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989)). "'Manifest error' is one that 'is plain and indisputable, and that amounts to a complete disregard of the controlling law.'" *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004) (quoting *Venegas-Hernandez v. Sonolux Records*, 370 F.3d 183, 195 (1st Cir. 2004)). The Fifth Circuit has noted that altering, amending, or reconsidering an interlocutory order under Rule 59(e) "is an extraordinary remedy that should be used sparingly." *Templet*, 367 F.3d at 479 (citing *Clancy v. Empl'rs Health Ins. Co.*, 101 F. Supp. 2d 463, 465 (E.D. La. 2000)). "A Rule 59(e) motion should not be used to re-litigate prior matters that . . . simply have been resolved to the movant's dissatisfaction." *Voisin v. Tetra Techs., Inc.*, No. 08–1302, 2010 WL 3943522, at *2 (E.D. La. Oct. 6, 2010) (Roby, M.J.). District courts have "considerable discretion in deciding whether to grant or deny [such] a motion." *Hale v. Townley*, 45 F.3d 914, 921 (5th Cir. 1995). Yet, the Rule 59(e) standard largely "favor[s] the denial of motions to alter or amend." *S. Constructors Grp, Inc. v. Dynalectric Co.*, 2 F.3d 606, 611 (5th Cir. 1993).

### B. Analysis

Prior to issuing its order on Merck's motion, this Court closely considered the applicable law, the memoranda of the parties, and the relevant portions of the record, including the 311-page transcript of Dr. Spyropolous' deposition, the 348-page transcript of Dr. Zambelli-Weiner's deposition, and the 164-page transcript of Dr. Brooks' deposition, as well as hundreds—if not thousands—of pages of documentation submitted in support and opposition. In its 34-page order, this Court concluded:

> The Court believes that the admissibility of Dr. Zambelli-Weiner and Dr. Brooks' testimony may be a close question, particularly if all five factors cited by Merck are looked at in

8

>combination with one another. However, as this Court has stated above, Dr. Zambelli-Weiner and Dr. Brooks (as well as Dr. Spyropoulos) are clearly highly qualified. While some of their methodological decisions may depart from entrenched norms, they offer facially reasonable explanations for those departures. The methodology they use may be different from the methodology used by the Defendant's expert, but their methodology appears to be grounded in scientific principles and recognized protocols. The Court will not put itself in the position of second-guessing their expertise. Merck has certainly laid out several grounds for aggressive cross-examination of Dr. Zambelli-Weiner and Dr. Brooks at trial. However, the Court concludes that trial is, in fact, the appropriate stage of the proceedings for the resolution of these issues.
>
>>Because Plaintiffs have offered testimony justifying each of the potential problems highlighted by Merck, the ultimate resolution of the question general causation will likely come down to determinations of credibility. Such determinations are most appropriately made by the jury, rather than this Court.

(Rec. Doc. 64341 at 20-21).

In its motion for reconsideration, Merck has not presented new evidence, nor has it identified anything approaching a plain or indisputable error of law or fact. In fact, it merely appears to seek to re-litigate issues that this Court—and these parties—have already resolved after lengthy and careful deliberation.

## IV.   CONCLUSION

For these reasons, **IT IS ORDERED** that Merck's motion for reconsideration (Rec. Doc. 64341) is **DENIED**.[2]

New Orleans, Louisiana, this 23rd day of April, 2014.

*[signature]*
UNITED STATES DISTRICT JUDGE

---

[2] In the margin of its memorandum in support, Merck requests that the April 9, 2013, order be certified for interlocutory appeal if the motion for reconsideration of it is denied. (Rec. Doc. 64435 at 19 n.40). Provided it still seeks such a certification, it may move for such relief separately.