UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: VIOXX<br>    PRODUCTS LIABILITY LITIGATION | MDL NO. 1657<br><br>SECTION L<br><br>JUDGE FALLON<br>MAG. JUDGE KNOWLES |

**THIS DOCUMENT RELATES TO:**   *Rosemary Holobosky, et al. v. Merck Sharp & Dohme Corp.*, 05-1091 (Plaintiffs AnnMarie and Joseph Mannino)

## ORDER & REASONS

Before the Court is Defendant Merck's motion for summary judgment. (Rec. Doc. 64514). Having considered the memoranda from Merck (Rec. Docs. 64514, 64631) and correspondence from *pro se* Plaintiffs AnnMarie and Joseph Mannino (Rec. Doc. 64630), as well as the applicable law, this Court now issues this decision.

### I.   UNCONTESTED FACTS

This action arises out of injuries Mrs. Mannino allegedly suffered as a result of taking Vioxx. On February 4, 2004, Mrs. Mannino filled a single, ten-pill prescription for Vioxx and, at some point, may have received samples of the drug, although she does not recall when or how many. Nearly two months later, on March 29, 2004, Mrs. Mannino experienced disorientation and numbness in her face. After seeing a physician, she was diagnosed as having had a transient ischemic attack ("TIA"). Mrs. Mannino possessed several risk factors for a TIA, including hypertension, a genetic mutation associated with elevated homocystine levels, hyperlipidemia, and difficulty with weight management. Further, she does not recall whether she ingested Vioxx within a week of the TIA. Although she discontinued using Vioxx after the TIA, it appears that Mrs. Mannino may have experienced similar symptoms in following years (although she was

never diagnosed with another TIA). For instance, in 2006, as in 2004, she had temporarily discontinued her antihypertensive medication prior to the onset of symptoms. Mrs. Mannino suggests that this was at the request of her physician.

On November 28, 2004, Mr. and Mrs. Mannino brought this action against Merck in state court in New York alleging that Mrs. Manniono's use of the prescription drug Vioxx caused her TIA. Specifically, Mrs. Mannino asserted claims for negligence and gross negligence, strict liability, misrepresentation an failure to warn, breach of express and implied warranties, and certain statutory violations under New York law. Mr. Mannino asserted a claim for loss of consortium. Merck removed this case to the United States District Court for the Southern District of New York. On April 19, 2005, the case was transferred to this Court for inclusion in this multidistrict litigation ("MDL").

On May 15, 2012, this Court issued Pre-Trial Order 58, which governs all discovery obligations in the remaining cases. (Rec. Doc. 63842). Specifically, it required Mr. and Mrs. Mannino to designate experts and submit those experts' written reports on or before February 18, 2013. Merck scheduled a deposition of Mr. and Mrs. Mannino in January 2013, but they failed to appear. As a result, their claims were dismissed (Rec. Doc. 64277), but then reinstated at Mr. and Mrs. Mannino's request (Rec. Doc. 64323). The expert designation and report deadline was then extended until June 17, 2013. (Rec. Doc. 64332). Mr. and Mrs. Mannino let this deadline come and go without submitting either designations or reports.

## II.    PRESENT MOTION

Merck now moves for summary judgment. (Rec. Doc. 64514). Specifically, it argues that "[u]nder New York law, regardless of which theories the Manninos pursue, they must prove that Vioxx caused Ms. Mannino's TIA" and that causation must be proven with the testimony of an

expert. (*Id*. at 6-7). It notes that, despite their many opportunities to submit designations and reports, they have failed to do so. (*Id*. at 7).

Mrs. Mannino responds via correspondence to the Court. (Rec. Doc. 64630). Ms. Mannino states that she has "sought to find an attorney to represent [her] . . . and that was an unaffordable option for [her] family." (*Id*. at 4). As a result, "she has been "bombarded with legal terminology constantly, legal matters, letters, emails . . . none of which I could understand." (*Id*.). She then requests that she be provided with a transcript of any conversation counsel for Merck had with her physician and any findings of Merck's expert.[1]

She states:

> Is Merck asking me to hire an expert medical professional to put before a jury? Do they think with four kids, working two jobs that I could afford to hire a medical expert, but not an attorney . . . ? I was never asked to hire a medical expert? I hired my doctors that took care of me . . . where [are their] deposition[s]?

(*Id*. at 5). Mrs. Mannino goes on to state that she "would prefer taking the stand and telling the Judge and jury myself my side" instead of hiring an expert, which "is unaffordable to me." (*Id*.). In addition, Mrs. Mannino describes the broader circumstances of her situation in great depth.

Merck then replies. (rec. Doc. 64631). In particular, it argues that "[n]either Ms. Mannino's personal commentary nor her personal testimony can provide the necessary evidence to prove medical causation," and that even those proceeding *pro se* are required to provide causation through the testimony of an expert. (*Id*. at 1-2). Merck also clarifies that it has not deposed Mrs. Mannino's physician.

---

[1] In its memorandum in support, Merck notes that it has retained an expert, but has not sered Mr. and Mrs. Mannino with that expert's report because they bear the burden of proof. (Rec. Doc. 64514 at 2).

3

### III.     LAW & ANALYSIS

#### A.     Standard

Summary judgment is appropriate if the moving party can show "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Under Federal Rule of Civil Procedure 56(c), the moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). When the moving party has met its Rule 56(c) burden, the non-movant cannot survive a motion for summary judgment by resting on the mere allegations of its pleadings. *See Prejean v. Foster,* 227 F.3d 504, 508 (5th Cir. 2000). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 253 (1986). Furthermore, "[t]he non-movant cannot avoid summary judgment . . . by merely making 'conclusory allegations' or 'unsubstantiated assertions.'" *Calbillo v. Cavender Oldsmobile, Inc.,* 288 F.3d 721, 725 (5th Cir. 2002) (quoting *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994)). In deciding a summary judgment motion, the court reviews the facts drawing all reasonable inferences in the light most favorable to the non-movant. *Id.* at 255. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery . . . , against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

**B.     Analysis**

Mr. and Mrs. Mannino's complaint was originally filed in New York, therefore New York's choice-of-law rules apply. *See Ferens v. John Deere Co.*, 494 U.S. 516, 519 (1990). Those rules dictate that New York law governs because Mrs. Mannino purchased Vioxx and was allegedly injured in that state. *See In re Grand Theft Auto Video Game Consumer Litig.*, 251 F.R.D. 139, 149 (S.D.N.Y. 2008). Under New York law, "it is a consumer's burden to show that a defect in the product was a substantial factor in causing the injury." *Tardella v. RJR Nabisco, Inc.*, 576 N.Y.S.2d 965, 966 (App. Div. 1991). In instances that are outside the common knowledge or observation of a layperson, the consumer must establish medical causation through the testimony of an expert. *See Fane v. Zimmer, Inc.*, 927 F.2d 124, 131 (2d Cir. 1991) (quoting *Meiselman v. Crown Heights Hosp.*, 34 N.E.2d 367, 370 ( N.Y. 1941)).

Here, Mr. and Mrs. Mannino are unable to demonstrate the causal connection between Mrs. Mannino's ingestion of Vioxx and her TIA without the testimony of an expert. Stated differently, this is a complex, medical issue that is not within the common knowledge and observation of a layperson. Without an expert designation or report, Mr. and Mrs. Mannino's case may not—as a matter of law—be presented to a judge or jury. Although this requirement often presents a hurdle for individuals proceeding *pro se*, the law remains equally applicable to all parties, whether or not they are represented by an attorney. Their claims would not be viable at trial without the testimony of an expert, and are likewise not viable now without the designation and report of that expert. Mr. and Mrs. Mannino have been provided ample opportunity to meet this obligation, yet have they have not done so. The deadline to meet this obligation is now long-passed and this Court has no alternative but to dismiss their claims.

### IV.      CONCLUSION

For these reasons, **IT IS ORDERED** that Merck's motion for summary judgment (Rec. Doc. 64514) is **GRANTED** and that Mr. and Mrs. Mannino's claims against it are **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, this 12th day of May, 2014.

_____
UNITED STATES DISTRICT JUDGE