

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: VIOXX® PRODUCTS LIABILITY LITIGATION | MDL 1657<br>SECTION L<br>JUDGE FALLON<br>MAG. JUDGE KNOWLES |
| THIS DOCUMENT RELATES TO: | Case Number: **2:05-cv-4452** |
| **Elizabeth Garner**<br>v.<br>**Merck & Co., Inc.** | PLAINTIFFS<br><br>DEFENDANTS |

### PLAINTIFF ELIZABETH GARNER'S MEMORANDUM IN OPPOSITION TO DEFENDANT MERCK, SHARP & DOHME CORP.'S MOTION FOR SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW

*********

On October 24, 2013, Defendants Merck, Sharp & Dohme Corp. ("Merck") filed a Motion for Summary Judgment and Incorporated Memorandum of Law ("Motion") in Plaintiff's case. Merck's Motion alleges that because Plaintiff claimed a myocardial infarction "MI" in her Future Evidence Stipulation ("FES"), she cannot claim she suffered a blood clot, and that the Court should dismiss her from the litigation. For multiple reasons, as set forth herein, the FES is not enforceable, and the Court should not grant summary judgment against Plaintiff's claims.

### A.

### RELEVANT FACTS

Elizabeth Garner was first given Vioxx on July 15, 20014, for arthritis pain in her left shoulder. She took Vioxx 25 mg consistently. *See* Defendant's Exhibit "I," at pg. 74, ln. 8-15. On October 8, 2004, Mrs. Garner presented at Dr. Hamid Hussein's Office at LSUHSC Bogalusa Medical Center with severe pain and swelling of the leg. *See* Plaintiff's Claim Package, Hamid

Hussein, attached as Exhibit "B." On October 11, 2004, she was discharged with a diagnosis of acute deep venous thrombosis, right leg. *See* Exhibit "B."

On September 29, 2005, Plaintiff filed her complaint, alleging strict liability (failure to warn), unreasonably dangerous design (under the Louisiana Products Liability Act "L.P.L.A."), failure to warn (under the L.P.L.A.), violation of Louisiana Unfair Trade Practices and Consumer Protection Act "L.U.T.P.A." and fraudulent misrepresentation (under L.U.T.P.A.). *See* Plaintiff's Complaint, attached as Exhibit "A."

On November 9, 2007, Merck and Negotiating Plaintiff's Counsel entered into a Settlement Agreement ("MSA"). *See* Defendant's Exhibit "B."

On June 25, 2008, Plaintiff was enrolled in the Vioxx Resolution Program ("the Resolution Program"). As part of entering the Resolution Program, Plaintiff submitted numerous medical records as part of her Claims Package. *See* Exhibit "B." These records show that Plaintiff suffered blood clots, including DVT. *See* Exhibit "B."

In order to enter any client into the Resolution Program, the enrolling attorney had to enter 100% of his clients into to the program, or withdraw from representing those clients. *See* Defendant's Exhibit "B," at §1.2.8. As a result, attorneys that represented more than one client, or clients with different types of injuries (i.e., one client suffered an MI and another client suffered a DVT), were put in an ethical dilemma that pitted the interest of one client against the other –put all of your clients into the settlement program, knowing that your clients not alleging a heart attack, stroke, or sudden cardiac death would not qualify for resolution and face dismissal; or withdraw from representing those clients that did not suffer a heart attack, stroke, or sudden cardiac death; or put none of your clients in the Resolution Program, with the knowledge that Merck would not settle any case outside of the Resolution Program, as it claimed at the time.

Attorneys were put in a quandary – to which client did the attorney owe the duty of representation, the client that suffered from a heart attack or the client that did not? Most attorneys withdrew as counsel from further representation of all clients who did not suffer a heart attack or stroke, or who would not allege a heart attack or stroke.  However, some attorneys, like Plaintiff's counsel, entered their clients into the settlement program, and many of those facially ineligible clients received settlements as open filters seemed to be applied to many claims.

Plaintiff was found ineligible for a settlement through the Vioxx Resolution Program. *See* Defendant's Exhibit "D" and "E." From there, she had two options – to appeal to a Special Master, or to execute a Future Evidence Stipulation in return for her release and stipulation of dismissal she signed when entering the Program.  *See* Defendant's Exhibit "B," at § 2.6.3 and § 2.7.3. Plaintiff was deemed ineligible for an award on May 28, 2009 (*see* Defendant's Exhibit "D"), declined to appeal to a special master, and submitted an FES on June 30, 2009.  *See* Defendant's Exhibit "A."

On or about September 21, 2009, Plaintiff filed a case-specific expert report, wherein Dr. Christopher L. Ingram, M.D. states that Vioxx was a substantial factor in causing Plaintiff's blood clot/DVT, to a reasonable degree of medical probability.  *See* Defendant's Exhibit "F."

Merck took Plaintiff's deposition on August 19, 2011.  *See* Defendant's Exhibit "I."

On October 24, 2013, over four (4) years after Plaintiff submitted her FES, Merck moved for summary judgment in Plaintiff's case, on the basis that Plaintiff's FES form states that she suffered an MI, and arguing that is the only that injury can now be claimed.  Defendant additionally argues the Plaintiff's expert report does not constitute a prima facie showing of causation with respect to any injury.

**B.**

## PLAINTIFF'S SUMMARY JUDGMENT EVIDENCE

Pursuant to Federal Rule of Civil Procedure 56, Plaintiff intends to rely on all materials in the Record, including:

1. Exhibit "A" –    Plaintiff's Complaint;

2. Exhibit "B" –    Plaintiff's Claim Package;

3. Exhibit "C" –    Meriam-webster.com – "Or";

4. Exhibit "D"—    MSA Exhibit 2.7.3 - Original Future Evidence; and

5. Exhibit "E"—    Plaintiff's Complete Deposition Transcript

### C.

### SUMMARY OF ARGUMENT

First, the plain language of the FES taken as a whole demonstrates that the parties never intended to limit the injuries solely to the injury or injuries reflected in Section A of the FES. Rather, Paragraph 4 of the FES plainly states that the Plaintiff may introduce evidence regarding any injury or injuries that were "made and included in the Program through the Claims Package." Moreover, Paragraph 6 of the FES plainly states that a Plaintiff will not introduce any evidence contrary to, or in addition to, the allegations, facts or records that were presented in the Plaintiff's Claim Package **_OR_** allege an injury connected with Vioxx other than the injury or injuries, which is/are reflected in Section A of FES. As long as injuries were presented in the Claims Package, which Plaintiff's DVT was, Plaintiff is not prohibited by the FES from introducing evidence regarding those injuries or alleging those injuries in this litigation.

4

Alternatively, Paragraphs 4 and 6 are inconsistent and the Court should interpret these provisions to give effect to both paragraphs.

Second, and assuming *arguendo* the Court finds that the FES limits Plaintiff to asserting only those injuries listed in Section A of the FES, the FES is not enforceable because the FES contains facts that do not exist; evidence contrary to the stipulation is substantial; enforcing the stipulation would be manifestly unjust; and the stipulation regards questions of law.

Third, the FES is not supported by valid legal cause; and therefore, is null and void as a matter of law.

Fourth, the FES is not a waiver of Plaintiff's claims was never intended to act as such.

Fifth, the FES executed by Plaintiff is an adhesion contract signed in error and is unconscionable

Sixth, Merck has waived the fees in the Vioxx litigation.
Seventh, the FES executed by Plaintiff is an adhesion contract signed in error and is unconscionable.

Eighth, Plaintiff has produced *prima facie* evidence she suffered a blood clot or DVT as a direct result of ingesting Vioxx. *See* Exhibit "B," Defendant's Exhibit "F." Plaintiff's medical records, expert reports, and testimony evidence conclusively that Vioxx contributed to Mrs. Garner's blood clot or DVT. Merck attaches no expert evidence contradicting Plaintiff's expert's opinions regarding the fact Plaintiff suffered a blood clot or DVT or regarding causation.

**D.**

**ARGUMENT & AUTHORITIES**

**I.    THE APPLICABLE STANDARD OF REVIEW.**

Summary judgment is only proper where "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." "More important for present purposes, summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict. The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

**II.   THE FES UNAMBIGUOUSLY PERMITS PLAINTIFF TO ALLEGE AND INTRODUCE INTO EVIDENCE ANY INJURIES INCLUDED IN THE PLAINTIFF'S CLAIM PACKAGE.**

Defendant relies on the FES that Plaintiff executed under the terms of the MSA. *See* Exhibit "B," at § 2.7.3 and referring to Exhibit 2.7.3. Accordingly, the FES is part of the parties' settlement agreement; and therefore, contract construction principles apply. Under the terms of the MSA, the MSA is governed by "the law of New York without regard to any choice-of-law rules that would require the application of any other jurisdiction." *Id.* at § 16.3. For purposes of this Motion only, Plaintiff assumes *arguendo* that New York applies to the contract,[1] With

---

[1]   Plaintiff reserves the right to argue Louisiana law applies to the MSA or that certain provisions are void and unenforceable under Louisiana law.

regard to contract construction principles, Louisiana and New York law are similar and the result would not be different.

<u>Under New York law</u>, the court's role in interpreting a contract is to ascertain the parties' intent at the time they entered into their contract. *Evans v. Famous Music Corp.*, 1807 N.E.2d 869, 872 (N.Y. 2004). If that intent can be discerned from the plain meaning of the contract language, there is no need for the court to look further. *Id.* When interpreting a contract, words and phrases used by the parties should be given their plain meaning. *DDS Partners, LLC v. Celenza*, 775 N.Y.S.2d 319, 321 (N.Y. 1 Dept. 2004). Clear and unambiguous terms should be understood in their plain, ordinary, popular, and non-technical meaning. *Id.* In according contract language its plain meaning, a court also should give due consideration to the surrounding circumstances and the parties' purpose. *Thompson v. Gjivoje,* 896 F.2d 716, 721 (2d Cir. 1990) (citing New York law). Interpretation of the plain meaning of language requires that the language be considered within the context in which the parties wrote it. *In re Dalow Industries, Inc.*, 333 B.R. 640, 642, 45 Bankr. Ct. Dec. (CRR) 180 (Bankr. E.D. N.Y. 2005). *William C. Atwater & Co. v. Panama R. Co.*, 159 N.E. 418, 419 (1927).

Louisiana applies similar contract interpretation principles in that contracts are interpreted to determine the parties' intent, and words of a contract must be given their generally prevailing meaning. *See* La. C.C.P. art. 2045, *et. seq*.

Here, Defendant latches on to one clause in the FES Plaintiff executed in accordance with Section 2.7.3 of the Master Settlement Agreement. *See* Defendant's Exhibit "B." If Plaintiff did not execute the FES, Merck could have sought dismissal of her claim. *Id.* at § 2.7.3.2. In Section "A" of the executed FES, Plaintiff designated her "Primary Injury Claimed" as IS. *See* Defendant's Exhibit "A." The Stipulation Terms in the executed FES set forth in Section "B" reads, in relevant part, as follows:

> \* \* \*
>
> 4. I further understand and specifically acknowledge and stipulate that if I should decide to pursue the claim outside of the program, I may not make any allegations or introduce any evidence regarding: (a) Vioxx usage, including but not limited to the dose, duration, consistency of Vioxx usage, and / or alleged proximity of the use of Vioxx to the date of the alleged injury; (b) medical history; and / or (c) ***alleged injury, other than as were made and included in the Program through the Claims Package associated with my claim***. I have reviewed the contents of the Claims Package associated with the Claim and have certified its contents.
>
> \* \* \*
>
> 6. I stipulate that I will not attempt to introduce in any court of law or tribunal any evidence contrary to, or in addition to, ***the allegations, facts or records that were presented to the Program's Claims Administrator, as contained in my Claims Package, or*** allege an injury connected with Vioxx other than the injury or injuries, which is/are reflected in Section A of this Stipulation.

*See* Defendant's Exhibit "A." The MSA specifically defines a "Claims Package" as "the Claims Form, all Supplementary Claims Forms, all required PME Records, all Additional Claims Information Requested by the Claims Administrator, all Profile Forms and any such other PME Records as such Enrolled Claimant in its discretion may submit." *See* MSA § 17.1.13.

As is made clear by the plain, ordinary language of the FES taken as a whole, the parties never intended to limit the injuries solely to the injury or injuries reflected in Section A of the FES. Rather, Paragraph 4 of the FES plainly states that the Plaintiff may introduce evidence regarding any injury or injuries that were "made and included in the Program through the Claims Package." *See* Defendant's Exhibit "A," at ¶ 4. The Claims Package, attached hereto as Exhibit "B," includes medical records from Dr. Hamid Hussein at LSUHSC Bogalusa Medical Center demonstrating that Plaintiff suffered a DVT. *See* Exhibit "B," at GarnerE-HusseinHamid-0187 and GarnerE-LakeviewRegMC-0002. Accordingly, the DVT injuries were included in Claims Package submitted to the Program's Claims Administrator.

Paragraph 6 of the FES plainly states that a Plaintiff will not introduce any evidence contrary to, or in addition to, the allegations, facts or records that were presented in the Plaintiff's Claim Package **OR** allege an injury connected with Vioxx other than the injury or injuries, which is/are reflected in Section A of FES. "Or" is a conjunction "used to indicate an alternative." *See* http://www.merriam-webster.com/dictionary/or (last visited 12.3.2013), attached as Exhibit "C." According to the plain, ordinary, language, Plaintiff stipulated that she would not introduce any evidence contrary to, or in addition to, the allegations, facts, or records presented in the Claim Package or injuries listed in Section A of the FES. The DVT are both included in the allegations, facts, and records presented in Plaintiff's Claim Package. *See* Exhibit "B." If the parties intended that the injury must also be designated in Section A of the FES, the parties could have easily used the "and" conjunctive, which would have obligated Plaintiff to present the DVT injury in her Claims Package *and* list these as injuries in Section A of the FES in order for Plaintiff to introduce evidence regarding the DVT injuries. However, the FES uses the term "or," which indicates alternative choices only one of which must be satisfied.

9

Interpreting the contract as a whole in the context of the MSA and pursuant to the ordinary meaning of terms used, the FES in no way limits Plaintiff from submitting evidence regarding the DVT included in the Claims Package just because these injuries were not designated in Section A of the FES.

Additionally, the executed FES is substantially different from the Original FES attached to the MSA at Exhibit 2.7.3.  *See* Original FES, attached as Exhibit "D."  Notably absent in Exhibit 2.7.3 is any Section A.  *Compare* Defendant's Exhibit "A" *with* Exhibit "D."  Moreover, the language of Paragraph 6 in Exhibit 2.7.3 reads:

> I stipulate that I will not attempt to introduce in any court of law or tribunal any evidence contrary to, or in addition to, the allegations, facts or records that were presented to the Program's Claims Administrator, <u>as set forth in or appended to my Claims Package</u>, or allege an injury connected with Product other than the injury I claimed through the Program."

*See* Exhibit "D."  Exhibit 2.7.3 reflects that the Plaintiff was limited to introducing evidence either presented to the Program's Claims Administrator, as set forth or appended to the Claims Package *or* alleging an injury other than an injury claimed through the "Program."  As stated *supra*, Plaintiff included medical records of the DVT in her Claims Package through the Program.  If the parties intended Exhibit 2.7.3 to limit the injuries a Plaintiff may allege to a MI or IS, then Exhibit 2.7.3 should have been written to reflect that intent by using "and" and, for example, limiting the injuries to only those checked on the Claim Form.  Because the parties used the term "or," and chose the word "Program" instead of a more specific, limiting language, the parties did not intend that Exhibit 2.7.3 would bar Plaintiff from alleging her DVT injuries in this lawsuit.

Alternatively, Paragraphs 4 and 6 are inconsistent. Under general cannons of contract construction, when two conflicting provisions can be reconciled, a court is required to do so and give effect to both. *Seabury Const. Corp. v. Jeffrey Chain Corp.*, 289 F.3d 63, 69 (2d Cir. 2002). Paragraph 4 serves the same essential purpose as Paragraph 6 – to limit a plaintiff to evidence contained within her Claims Package. As to alleged injury pursuant to Paragraph 4, a plaintiff is limited to claims "made and included in the Program through the Claims Package associated with my claim and does not limit a plaintiff to introducing evidence of injuries only listed in Section A of the FES. *See* Defendant's Exhibit "B," at ¶ 4. Assuming *arguendo* that Paragraph 6 limits Plaintiff to only introducing evidence of injuries designated in Section A of the FES, Paragraphs 4 –which permits the Plaintiff to introduce any alleged injures made and included through the Claims Package—and Paragraph 6 are wholly inconsistent. Therefore, the Court must give meaning to both clauses rather than prefer one to the exclusion of the other. *Allendale Mut. Ins. Co. v. Excess Ins. Co., Ltd.*, 992 F. Supp. 271, 274 (S.D.N.Y. 1997). Holding otherwise would leave Paragraph 4 without force or effect. *Sunrise Mall Associates v. Imp. Alley of Sunrise Mall, Inc.*, 621 N.Y.S.2d 662, 663 (N.Y. 2d Dept. 1995) (stating the rule that a "court should not adopt an interpretation that would leave any provision without force and effect.").

Additionally, nothing in Section A of the FES indicates that the injuries listed are the sole injuries a plaintiff is claiming as a result of ingesting Vioxx. *See* Defendant's Exhibit "A." Section A on the claim form lists "Primary Injury Claimed" and "Secondary Injury Claimed." *See* Defendant's Exhibit "A." Section A does not require Plaintiff to list all injuries or each and every injury. If the parties intended Section A to be an exclusive list of injuries as a result of ingesting Vioxx, the parties certainly could have worded Section A in such a way to indicate that Section A listed each and every injury as a result of ingesting Vioxx. Moreover, Section A of the

executed FES was not part of the negotiated MSA or Exhibit 2.7.3. Therefore, this Court should not consider Section "A" as limiting any evidence or injuries that a Plaintiff may introduce or allege in support of this lawsuit.

## III. PLAINTIFF'S COMPLAINT CONTROLS HER CLAIMS.

Plaintiff's Complaint sets out her causes of action. Plaintiff's Complaint alleges significant heart problems and a blood clot. *See* Exhibit "A." It does *not* claim an MI, nor does it limit Plaintiff's claim to a heart attack. Each claim is still pending before the Court. Plaintiff has entered into no agreements or stipulations limiting her claims, nor has the Court dismissed any of Plaintiff's causes of action against Merck. Merck argues that the FES is tantamount to a dismissal, but Merck did not make dismissal a condition of return to the litigation. It was not Plaintiff's intent to dismiss her claims at the time she exercised her right to return to the litigation.

The FES is just that – a stipulation as to evidence. It should not act as a limitation on Plaintiff's Complaint.

As stated in *Surowitz v. Hilton Hotels Corp.,* 383 U.S. 363, 373 (1966), Plaintiff's Complaint should be adjudicated by the courts:

> [t]he basic purpose of the Federal Rules is to administer justice through fair trials, not through summary dismissals as necessary as they may be on occasion . . . . [i]f rules of procedure work as they should in an honest and fair judicial system, they not only permit, but should as nearly as possible guarantee that bona fide complaints be carried to an adjudication on the merits.

## IV. THE FES IS NOT ENFORCEABLE.

Plaintiff vehemently disagrees with Defendant's contention that Section A of the FES is a stipulation at all much less a binding stipulation regarding her sole injuries caused by Vioxx. Assuming *arguendo* the Court determines this is a stipulation, the Court is not bound by the

stipulation nor required to enforce it. The federal courts recognize several scenarios where a stipulation is not enforceable: when parties stipulate to facts that do not exist; when evidence contrary to the stipulation is substantial; when enforcing the stipulation would be manifestly unjust; and when a stipulation regards questions of law. Under no scenario is Plaintiff's FES enforceable for the purpose as described by Merck's Motion.

### a. The FES is not enforceable because it stipulates to facts that do not exist.

First, "the parties cannot create a case by stipulating to facts that do not exist." *See Sinicropi v. Milone,* 915 F.2d 66, 68 (2d Cir.1990); *PPX Enterprises, Inc. v. Audiofidelity, Inc.*, 746 F.2d 120, 123 (2d Cir. 1984); *In re Kriss*, 217 B.R. 147, 154 (Bankr. S.D.N.Y. 1998); *Brown v. Stone*, 66 F. Supp. 2d 412, 428 (E.D.N.Y. 1999); *In re Roland*, 294 B.R. 244, 250 (Bankr. S.D.N.Y. 2003).

Merck alleges that Plaintiff stipulated to an MI in her FES, and that she is prohibited from pursuing any other injury. Yet, Plaintiff and Merck agree that Plaintiff did not have an MI, so by definition the stipulation exists for the express purpose of un-making Plaintiff's case by a conclusory binding to facts that do not exist. The evidence in Plaintiff's Claims Package at the time she entered the Resolution Program and at the time she signed her FES proves she suffered a blood clot or DVT. It is nonsensical to enforce a stipulation that "pretends" the Plaintiff suffered an MI. Here, enforcing the FES would be the equivalent of enforcing a stipulation to facts that do not exist. The Court is not bound to accept the parties' stipulation to facts that do not exist.

It is worth emphasizing that Merck is not trying to enforce a stipulation as to the Vioxx used, or the records which exist. Instead, it is seeking to enforce a conclusion about a **medical event**, a circumstance not within the purview of Plaintiff's knowledge. Moreover, it is seeking to

use that event to get dismissal, an outcome for which it could have but did not negotiate as part of the return to the litigation. The FES is unenforceable for the purpose sought by Merck.

### b. The FES is not enforceable because the evidence contrary to the stipulation is substantial.

The court is not bound by a stipulation if evidence contrary to the stipulation is substantial. *In re Roland*, 294 B.R. at 244; *Sinicropi v. Milone,* 915 F.2d at 68; *PPX Enters., Inc. v. Audiofidelity, Inc.,* 746 F.2d at 123; *Epstein v. Kalvin–Miller Int'l, Inc.,* 100 F.Supp.2d 222, 225 (S.D.N.Y.2000); *Loftin and Woodard, Inc. v. United States*, 577 F.2d 1206, 1232 (5th Cir. 1978). "[T]he trial court has not only the right but the duty to relieve a party from a pretrial stipulation where necessary to avoid manifest injustice . . . where there is substantial evidence contrary to the stipulation." *Rathborne Land Co., L.L.C. v. Ascent Energy, Inc*., 610 F.3d 249, 262-63 (5th Cir. 2010) quoting *Coastal States Mktg., Inc. v. Hunt,* 694 F.2d 1358, 1369 (5th Cir.1983).

Here, substantial evidence exists that is contrary to the FES. Plaintiff's medical records show that she had a blood clot or DVT. In Plaintiff's case specific expert report, Dr. Christopher L. Ingram, M.D. stated that Vioxx was a substantial factor in causing Plaintiff's blood clot or DVT. Plaintiff testified about her injury in her deposition. All of the evidence supports Plaintiff's claims of a blood clot or DVT, contrary to the MI which is noted in her FES. Thus, the FES is unenforceable.

### c. The FES is not enforceable because its enforcement would be manifestly unjust.

The trial court "has not only the right but the duty to relieve a party from a pretrial stipulation where necessary to avoid manifest injustice . . ." *United States v. State of Tex*., 680 F.2d 356, 370 (5th Cir. 1982); *Central Distributors, Inc. v. M.E.T., Inc.,* 403 F.2d 943, 945 (5th

Cir.1968), *Coastal States Mktg., Inc. v. Hunt*, 694 F.2d at 1369; *Rathborne Land Co., L.L.C. v. Ascent Energy, Inc.*, 610 F.3d at 262-63 (5th Cir. 2010).[2]

It would be an extreme injustice to bar Plaintiff's claims simply because she did not have an MI, as listed on her FES. As the Court knows, many plaintiffs who did not have a heart attack or stroke were placed in the Vioxx Resolution Program. These plaintiffs were not afforded a remedy through the Program, and Merck repeatedly stated it would not settle one case outside of the Program. Plaintiff, in essence, would be punished for having a blood clot or DVT rather than an MI. Plaintiff filed her lawsuit over eight (8) years ago and deserves her day in Court. Dismissing Plaintiff because the primary and secondary injury in Section A of the FES only listed an MI would be an injustice.

### d.  The FES is not enforceable because it seeks to control questions of law.

Finally, a court is not required to accept a stipulation regarding a question of law. *Estate of Sanford v. Commissioner of Internal Revenue,* 308 U.S. 39, 51 (1939), *In re Roland*, 294 B.R. at 244, *United States v. John J. Felin & Co.,* 334 U.S. 624, 640 (1948); *Swift & Co. v. Hocking Valley Ry. Co.,* 243 U.S. 281, 289–90, (1917); *Sinicropi v. Milone,* 915 F.2d at 68; *Fisher v. First Stamford Bank & Trust Co.,* 751 F.2d 519, 523 (2d Cir. 1984).

The FES, as Defendant is attempting to use it, is a stipulation as to conclusion, not as to a fact. As discussed *supra*, the FES stipulates to a conclusion that is not supported by the actual evidence, hence it is comparable to asking a party to stipulate the law. Those stipulations should not be enforced by the Court.

---

[2] *See also In re Roland*, 294 B.R. at 244; *Sinicropi v. Milone,* 915 F.2d at 68; *PPX Enters., Inc. v. Audiofidelity, Inc.,* 746 F.2d at 123; *Epstein v. Kalvin–Miller Int'l, Inc.,* 100 F.Supp.2d at 225; *Loftin and Woodard, Inc. v. U.S.*, 577 F.2d at 1232.

To the extent the FES seeks to control the evidence that Plaintiff may submit it presents different issues, not addressed by Merck's motion. By doing so, it serves as a prohibition on further discovery and on F.R.C.P. 26, and on Plaintiff's complaint and the legal theories that Plaintiff may present to the Court. The FES is an improper limitation on Plaintiff's cause of action against Merck to pursue her claims for a blood clot or DVT. For all the above stated reasons, the Court has a duty to not enforce the FES.

## V.   THE FES IS NULL AND VOID BECAUSE IT IS NOT SUPPORTED BY VALID CAUSE.

Under Louisiana law,[3] the FES is not supported by cause. LA. C.C. art. 1966 and 1967. Plaintiff received no consideration for entering into the FES. In order to form an agreement under Louisiana law, a contract must have offer, acceptance, and cause. Cause is defined as the reason for making the contract. *Louisiana Land and Exploration Co. v. Pennzoil Exploration and Production Co.,* 962 F.Supp. 908 (E.D.La.1997). A contract is null when the requirements of formation have not been met. LA. C.C. art. 2029.

Here, Plaintiff did not receive the benefit of the bargain. The benefit of resolving her claims – which was the inducement to enter into the Resolution Program – was always illusory, and was not a benefit to Plaintiff, but to other plaintiffs represented by Plaintiff's attorney who suffered a heart attack or stroke. What did Plaintiff receive as a result of entering the Resolution Program? Nothing. Plaintiff received no benefit from entering into the Resolution Program. There was never a promise that Plaintiff's claims would be resolved through the Program.

---

[3] Because this case is a diversity action, we apply state law to substantive claims. *Hanna v. Plumer*, 380 U.S. 460, 465 (1965)

Merck, on the other hand, was not required to resolve Plaintiff's claims but got the "free" benefit of having Plaintiff sign the FES. This was a one-sided deal.

## VI.   THE FES IS NOT A WAIVER OF PLAINTIFF'S CLAIMS WAS NEVER INTENDED TO ACT AS SUCH.

Defendant effectively argues that the FES waives Plaintiff's right to litigate her claim for her DVT injuries caused by Vioxx.  The FES is not a waiver of Plaintiff's right to pursue an injury other than an MI.  Waiver is the "intentional relinquishment of a known right." *United States v. Olano,* 507 U.S. 725, (1993), quoting *Johnson v. Zerbst,* 304 U.S. 458, 464 (1938). The elements of waiver are 1) a right must exist at the time of the waiver; 2) the party who is accused of waiver must have constructive or actual knowledge of the right in question; and 3) the party intended to relinquish its right. *Broad. Satellite Int'l, Inc. v. Nat'l Digital Television Ctr., Inc.*, 323 F.3d 339, 345 (5th Cir. 2003); *see also Michel v. Efferson*, 65 So. 2d 115, 119 (1952).

Voluntary choice is of the very essence of waiver.  *Michel,*  65 So. 2d at 119.  For the reasons stated above, Plaintiff did not voluntarily waiver her right to claim her DVT injuries in this lawsuit.

## VII.   THE FES EXECUTED BY PLAINTIFF IS AN ADHESION CONTRACT SIGNED IN ERROR AND IS UNCONSCIONABLE.

As the Court knows, many Plaintiffs who did not have a myocardial infarction, ischemic stroke or sudden cardiac death were entered into the Vioxx Resolution Program. Simply, there was no recourse for Plaintiff, and she was forced into the Vioxx Resolution Program despite that it was not in her interest to do so.

The FES was a pre-printed form and did not permit Plaintiff to make any changes.  *See* Defendant's Exhibit "A."   A contract is one of adhesion when its form, print, or unequal terms call into question the consent of the non-drafting party and it is demonstrated that the contract is

17

unenforceable, due to lack of consent or error, which vitiates consent. *Aguillard v. Auction Mgmt. Corp.*, 2004-2804 (La. 6/29/05), 908 So. 2d 1, 10-11.

### VIII. MERCK HAS WAIVED THE FES IN THE VIOXX LITIGATION.

Here, the FES presented as part of the Claims Program was substantially different than the FES agreed upon in the MSA; therefore, Plaintiff did not consent to the FES as worded. *See* LA. C.C. art. 1949. Plaintiff, in good faith, relied on the FES being in the agreed-upon form. LA. C.C. art. 1950. Since it was not, and now Defendant is attempting to bind Plaintiff pursuant to clauses, phrases, and sections not in the agreed upon FES, this Court should not enforce the FES since the error vitiates Plaintiff's consent.

Additionally, Merck has continued to prosecute Plaintiff's claims for her DVT and PE injuries despite Plaintiff's execution of the FES in January 2010. Specifically, Plaintiff has produced an expert report, and Merck took Plaintiff's deposition *after* she signed the FES in 2010. At this stage, Merck should be estopped from arguing the FES as precluding Plaintiff from introducing evidence regarding these injuries or otherwise pursuing her claims for DVT injuries and should be treated as havening waived the FES since Merck.

### IX. THE EVIDENCE RAISES A GENUINE ISSUE OF MATERIAL FACT REGARDING WHETHER THE DVT WAS PROXIMATELY CAUSED BY VIOXX.

Here, there is certainly a genuine dispute as to whether Plaintiff suffered a blood clot or DVT caused by her ingestion of Vioxx. Plaintiff has produced *prima facie* evidence she suffered a blood clot or DVT as a direct result of ingesting Vioxx. *See* Exhibit "B," Defendant's Exhibit "F;" Exhibit "E," at pg. 191, lns.17-19. Plaintiff's medical records, expert reports, and testimony evidence conclusively that Vioxx contributed to Mrs. Garner's blood clot or DVT. Merck attaches no expert evidence contradicting Plaintiff's expert's opinions regarding the fact Plaintiff

suffered a blood clot or DVT or regarding causation. Instead, it relies solely on Plaintiff's deposition testimony that she may have last taken Vioxx from the prescription, to the best of her knowledge, on August 4, 2004. But her deposition testimony also states that she received samples from her physician. *See* Exhibit "E," at pg. 69, lns. 5-6. This fact, however, does nothing to conclusively negate causation. Defendant, therefore, has not met its burden to conclusively establish there is no genuine issue of material fact whether the Plaintiff's Vioxx ingestion proximately caused the blood clot or DVT.

## X. PLAINTIFF'S INCORPORATE BY REFERENCE OTHER PLAINTIFFS' MEMORANDUM IN OPPOSITION OF DEFENDANT'S SUMMARY JUDGMENT.

Pursuant to Rule 10 of the Federal Rules of Civil Procedure, Plaintiff adopts and incorporates by reference other Plaintiffs' Memorandum in Opposition to Defendant's Motion for Summary Judgment regarding the FES.

## CONCLUSION

For the aforementioned reasons, Merck's Motion for Summary Judgment should be denied.

Respectfully submitted,

BY:  /s/Lisa Causey-Streete
Robert L. Salim
Lisa Causey-Streete
SALIM-BEASLEY, LLC
1901 TEXAS STREET
NATCHITOCHES, LA 71457
PHONE: (318) 352-5999
FAX: (318) 352-5998
Email: robertsalim@cp-tel.net
Email: lcausey@salim-beasley.com

## **CERTIFICATE OF SERVICE**

      I hereby certify that Plaintiff, Elizabeth Garner's Memorandum in Opposition to Merck, Sharpe & Dohme Corp.'s Motion for Summary Judgment has been served upon Liaison Counsels, Phillip A. Wittmann, Russ Herman, and Ann B. Oldfather, by U.S. mail and email and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8(C), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 6th day December, 2013.

      /s/Lisa Causey-Streete