

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2005 SEP 29  PH 5: 07

LORETTA G. WHYTE
CLERK

BILL BLACK, ET AL,

                              Plaintiffs,                  Civil No.

v.

**MERCK & CO., INC.,**

Serve:  Registered Agent
        C. T. Corporation System
        8550 United Plaza Boulevard
        Baton Rouge, Louisiana 70809,

                              Defendant.

05-4452
SECT. L MAG. 5

**JURY TRIAL DEMANDED**

PETITION

NOW INTO COURT, through undersigned counsel come Bill Black, et al, a person of the

full age of majority who resides in Tangipahoa Parish, Louisiana who with respect represents the

following:

1.      This is a proceeding brought by Plaintiffs, Bill Black, et al, seeking damages for

personal injuries or wrongful death and economic damages suffered as a result of defective and

dangerous pharmaceutical product Vioxx® (rofecoxib) ("Vioxx") which was manufactured,

marketed, distributed and/or sold by defendant, Merck & Co., Inc. ("Merck") to the general public.

THE PARTIES

2.      Plaintiff, Debra Adams, is a person of the full age of majority and resident of the State

of Louisiana, who was prescribed Vioxx, and took it from 2001 through 2002, and suffered a stroke

and blood clot in 2002 as a result of his (or her) use of Vioxx.

3.      Plaintiff, Johnny Alford, is a person of the full age of majority and resident of the

State of Louisiana, who was prescribed Vioxx, and took it from February of 2002 through June of

Fee $250⁰⁰
___ Process_____
_X_ Dktd_____
___ CtRmDep_____
___ Doc. No _____

2004, and suffered significant heart problems in March of 2004 as a result of his (or her) use of Vioxx.

4.      Plaintiff, Princenola Allen, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from 1999 through 2004, and suffered significant heart problems in November or December of 2003 as a result of his (or her) use of Vioxx.

5.      Plaintiff, Karen Anderson, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from 2000 through October of 2004, and suffered significant heart problems and a blood clot in February of 2004 as a result of his (or her) use of Vioxx.

6.      Plaintiff, Bethel Anzalone, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from 1999 through September of 2004, and suffered significant heart problems in 2002 as a result of his (or her) use of Vioxx.

7.      Plaintiff, Michel Arnaud, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from 2002 through April of 2004, and suffered significant heart problems in April of 2004 as a result of his (or her) use of Vioxx.

8.      Plaintiff, Shirley Arvie, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from 1999 through 2004, and suffered significant heart problems and a stroke, respectively on December 18, 2002 and August 23, 2004 as a result of his (or her) use of Vioxx.

9.      Plaintiff, Calvin Bagwell, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from 2002 through October of 2004, and suffered significant heart problems in August of 2004 as a result of his (or her) use of Vioxx.

10.     Plaintiff, Gwen Barbo, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from 2000 through 2003, and suffered significant heart problems on July 2, 2003 as a result of his (or her) use of Vioxx.

11.     Plaintiff, Priscilla Beal, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from 2000 through 2004, and suffered significant heart problems and kidney failure, respectively in 2003 and 2004 as a result of his (or her) use of Vioxx.

12.     Plaintiff, Yves Bernard, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from May of 2001 through April of 2003, and suffered stomach bleeding in April of 2002 as a result of his (or her) use of Vioxx.

13.     Plaintiff, Joseph Berry, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from 2003 through 2004, and suffered a stroke in August of 2004 as a result of his (or her) use of Vioxx.

14.     Plaintiff, Alma Bethea, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from 1999 through 2001, and suffered significant heart problems in 2001 as a result of his (or her) use of Vioxx.

15.     Plaintiff, Glenda Bibbins, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from 2002 through 2003, and suffered significant heart problems in March or April of 2003 as a result of his (or her) use of Vioxx.

16.     Plaintiff, Dr. Bill Black, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from 2000 through September 30, 2004, and suffered significant heart problems and blood clots in November of 2000 and July of 2002 as a

result of his (or her) use of Vioxx.

17.    Plaintiff, Michael Bourgeois, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from 2002 through September 22, 2004, and suffered significant heart problems in 2004 as a result of his (or her) use of Vioxx.

18.    Plaintiff, Ethelean Bradshaw, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from May of 2001 through November of 2001, and suffered a stroke in August of 2001 as a result of his (or her) use of Vioxx.

19.    Plaintiff, Harold Brandenburg, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from 2000 through February of 2004, and suffered significant heart problems sometime during that period as a result of his (or her) use of Vioxx.

20.    Plaintiff, Dottie Breedlove, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from October 7, 2003 through 2004, and suffered significant heart problems in January of 2004 as a result of his (or her) use of Vioxx.

21.    Plaintiff, Robert Bremer, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from 2000 through October of 2004, and suffered significant heart problems in 2004 as a result of his (or her) use of Vioxx.

22.    Plaintiff, Carol Brignac, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from May 30, 2003 through October of 2004, and suffered significant heart problems in 2003 or 2004 as a result of his (or her) use of Vioxx.

23.    Plaintiff, Lewis Brinkley, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from April of 2001 through September of

2004, and suffered a stroke in November of 2001 as a result of his (or her) use of Vioxx.

24.     Plaintiff, Floyd Brister, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from 2001 through April 15, 2001, and suffered a stroke on April 15, 2001 as a result of his (or her) use of Vioxx.

25.     Plaintiff, Patricia Brooks, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from 2002 through 2004, and suffered significant heart problems and a blood clot in August of 2004 as a result of his (or her) use of Vioxx.

26.     Plaintiff, Peggy M. Broussard, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from July 16, 1999 through June 3, 2001, and suffered a stroke on March 8, 2001 as a result of his (or her) use of Vioxx.

27.     Plaintiff, Ernestine Campbell, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from 2001 through 2004, and suffered significant heart problems in 2002 and 2004 as a result of his (or her) use of Vioxx.

28.     Plaintiff, Jean Campbell, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from November of 2002 through February of 2003, and suffered a stroke in February of 2003 as a result of his (or her) use of Vioxx.

29.     Plaintiff, David Campbell, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from 2003 through 2004, and suffered significant heart problems in February of 2004 as a result of his (or her) use of Vioxx.

30.     Plaintiff, Daniel Cirulli, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from early 2004 through late 2004, and suffered significant heart problems on July 10, 2004 as a result of his (or her) use of Vioxx.

31.     Plaintiff, Eva Claunch, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from early 1999 through late 1999, and suffered significant heart problems in 1999 as a result of his (or her) use of Vioxx.

32.     Plaintiff, Deborah Collier, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from November 24, 1999 through March 24, 2004, and suffered a stroke on June 20, 2002 as a result of his (or her) use of Vioxx.

33.     Plaintiff, Joseph Cornelius, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from February 5, 2004 through December 9, 2004, and suffered a stroke on March 4, 2004 as a result of his (or her) use of Vioxx.

34.     Plaintiff, Willie Credit, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from February of 2003 through September of 2003, and suffered a stroke in September of 2003 as a result of his (or her) use of Vioxx.

35.     Plaintiff, Herman Crier, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from 2003 through August or September of 2004, and suffered significant heart problems and a stroke, respectively in 2003 and September of 2004 as a result of his (or her) use of Vioxx.

36.     Plaintiff, Geneva Crowe, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from 2002 through 2004, and suffered significant heart problems in 2004 as a result of his (or her) use of Vioxx.

37.     Plaintiff, Emily Cryer, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from 2000 through October of 2004, and suffered a stroke in September of 2002 as a result of his (or her) use of Vioxx.

38.     Plaintiff, Cheryl Cunningham, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from 2003 through 2004, and suffered significant heart problems on August 27, 2003 as a result of his (or her) use of Vioxx.

39.     Plaintiff, Jerry Curtis, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from September of 2000 through October of 2004, and suffered significant heart problems on January 16, 2004 as a result of his (or her) use of Vioxx.

40.     Plaintiff, Kenneth Davis, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from November of 2003 through November of 2004, and suffered significant heart problems in October of 2004 as a result of his (or her) use of Vioxx.

41.     Plaintiff, Lewis C. Dean, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from 2002 through 2003, and suffered significant heart problems in 2002 as a result of his (or her) use of Vioxx.

42.     Plaintiff, Ervin Dixon, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from early 2001 through late 2001, and suffered significant heart problems in 2001 as a result of his (or her) use of Vioxx.

43.     Plaintiff, Albert Doucet, Jr., is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from 2002 through 2003, and suffered significant heart problems in 2002 or 2003 as a result of his (or her) use of Vioxx.

44.     Plaintiff, Stephan Douet, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from 1998 through 2001, and suffered

significant heart problems in 2000 as a result of his (or her) use of Vioxx.

45.     Plaintiff, Richard Dunham II, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from early 2002 through late 2002, and suffered a stroke in October of 2002 as a result of his (or her) use of Vioxx.

46.     Plaintiff, Wanda Dunn, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from 2001 through August of 2004, and suffered kidney failure in 2003 as a result of his (or her) use of Vioxx.

47.     Plaintiff, Ronnie Edwards, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from May 20, 2003 through April of 2004, and suffered significant heart problems in April of 2004 as a result of his (or her) use of Vioxx.

48.     Plaintiff, Mildred Efferson, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from 1999 through September of 2004, and suffered significant heart problems on September 11, 2001 as a result of his (or her) use of Vioxx.

49.     Plaintiff, Barry Entremont, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from 1999 through 2003, and suffered a stroke and significant heart problems, respectively in 1999 and 2001 as a result of his (or her) use of Vioxx.

50.     Plaintiff, Thomas Evans, Sr., is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from 1998 through 2002, and suffered a stroke in July or August of 2000 as a result of his (or her) use of Vioxx.

51.     Plaintiff, Sharon Everett, is a person of the full age of majority and resident of the

State of Louisiana, who was prescribed Vioxx, and took it from April of 2004 through September of 2004, and suffered a stroke in 2004 as a result of his (or her) use of Vioxx.

52.     Plaintiff, Edna Ford, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from 2002 through September of 2004, and suffered a blood clot in August of 2004 as a result of his (or her) use of Vioxx.

53.     Plaintiff, Francis Gardiner, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from early 2003 through late 2003, and suffered significant heart problems in 2003 as a result of his (or her) use of Vioxx.

54.     Plaintiff, Robert Garner, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from April of 2000 through April of 2002, and suffered significant heart problems in 2002 as a result of his (or her) use of Vioxx.

55.     Plaintiff, Elizabeth Garner, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from early 2004 through late 2004, and suffered significant heart problems and a blood clot in October of 2004 as a result of his (or her) use of Vioxx.

56.     Plaintiff, Inez Gibson, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from 1999 through February 1, 2005, and suffered significant heart problems and a stroke, respectively in July of 2003 and August of 2004 as a result of his (or her) use of Vioxx.

57.     Plaintiff, Dorthie Gillis, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from 2001 through 2003, and suffered significant heart problems and kidney failure in 2003 as a result of his (or her) use of Vioxx.

58.     Plaintiff, Marlene Gobin, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from January 27, 2001 through August 9, 2004, and suffered significant heart problems and a stroke in 2002 as a result of his (or her) use of Vioxx.

59.     Plaintiff, Evelyn Green, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from early 2003 through late 2003, and suffered significant heart problems and strokes in November of 2003 as a result of his (or her) use of Vioxx.

60.     Plaintiff, Abby Hammett, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from 1999 through 2000, and suffered significant heart problems on September 8, 2000 as a result of his (or her) use of Vioxx.

61.     Plaintiff, Eileen Harkins, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from June of 2000 through June of 2002, and suffered a stroke and a blood clot in 2002 as a result of his (or her) use of Vioxx.

62.     Plaintiff, Mary Harmon, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from February of 2002 through October of 2004, and suffered a stroke in 2002 as a result of his (or her) use of Vioxx.

63.     Plaintiff, Bennie Harrison, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from 1998 through 2000, and suffered a blood clot in 1999 as a result of his (or her) use of Vioxx.

64.     Plaintiff, Paulette Harrison, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from 2000 through 2003, and suffered a stroke in 2001 as a result of his (or her) use of Vioxx.

65.     Plaintiff, Frank Harvey, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from May 10, 2002 through May 19, 2002, and suffered a stroke on May 19, 2002 as a result of his (or her) use of Vioxx.

66.     Plaintiff, Leatha Hawkins, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from 2000 through July of 2001, and suffered significant heart problems in Summer of 2001 as a result of his (or her) use of Vioxx.

67.     Plaintiff, John Hay, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from early 2002 through late 2002, and suffered a blood clot in 2002 as a result of his (or her) use of Vioxx.

68.     Plaintiff, Nancy Hill, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from 1998 through August of 2002, and suffered a stroke and significant heart problems, respectively in 1999 and 2002 as a result of his (or her) use of Vioxx.

69.     Plaintiff, Roxanne Hoffman, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from early 2000 through late 2000, and suffered kidney failure in June of 2000 as a result of his (or her) use of Vioxx.

70.     Plaintiff, Charlotte Hollis, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from 1998 through 2004, and suffered a stroke and significant heart problems, respectively in 1998, 1999, and 2003 as a result of his (or her) use of Vioxx.

71.     Plaintiff, Nina Huffman, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from January of 2000 through August of

2004, and suffered significant heart problems in 2000, and the Fall of 2004 as a result of his (or her) use of Vioxx.

72.     Plaintiff, Robert Hurst, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from early 2002 through late 2002, and suffered significant heart problems in 2002 as a result of his (or her) use of Vioxx.

73.     Plaintiff, Druecilla Ivy, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from 2002 through September of 2004, and suffered a stroke in July of 2004 as a result of his (or her) use of Vioxx.

74.     Plaintiff, Breelin Johnson, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from January of 2001 through October of 2004, and suffered significant heart problems on September 25, 2004 as a result of his (or her) use of Vioxx.

75.     Plaintiff, Arabella Jones, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from 2000 through 2001, and suffered significant heart problems in 2001 as a result of his (or her) use of Vioxx.

76.     Plaintiff, Floyd Jones, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from 1999 through 2004, and suffered a stroke on January 3, 2000 as a result of his (or her) use of Vioxx.

77.     Plaintiff, Elton Jones, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from 1998 through 2003, and suffered significant heart problems and a stroke on September 3, 2003 as a result of his (or her) use of Vioxx.

78.     Plaintiff, Larry Keel, Sr., is a person of the full age of majority and resident of the

State of Louisiana, who was prescribed Vioxx, and took it from February 2, 2001 through December

of 2003, and suffered significant heart problems in November 13, 2003 as a result of his (or her) use

of Vioxx.

79.     Plaintiff, Johnnie Kellum, is a person of the full age of majority and resident of the

State of Louisiana, who was prescribed Vioxx, and took it from 2003 through 2004, and suffered

significant heart problems in 2003 as a result of his (or her) use of Vioxx.

80.     Plaintiff, Glenda Kelly, is a person of the full age of majority and resident of the State

of Louisiana, who was prescribed Vioxx, and took it from March of 2001 through April of 2001, and

suffered a stroke in the Spring 2001 as a result of his (or her) use of Vioxx.

81.     Plaintiff, Jerrlyn Knotts, is a person of the full age of majority and resident of the

State of Louisiana, who was prescribed Vioxx, and took it from April 16, 2001 through July 14,

2004, and suffered a stroke on February 20, 2002 as a result of his (or her) use of Vioxx.

82.     Plaintiff, John LaCaze, is a person of the full age of majority and resident of the State

of Louisiana, who was prescribed Vioxx, and took it from 1999 through October of 2004, and

suffered significant heart problems and stroke in January of 2004 as a result of his (or her) use of

Vioxx.

83.     Plaintiff, Mary Lachney, is a person of the full age of majority and resident of the

State of Louisiana, who was prescribed Vioxx, and took it from 1999 through 2003, and suffered

significant heart problems and a blood clots, respectively in 2000 or 2001; April of 2002 and May of

2003 as a result of his (or her) use of Vioxx.

84.     Plaintiff, Clarence LaFleur, is a person of the full age of majority and resident of the

State of Louisiana, who was prescribed Vioxx, and took it from 2002 through 2004, and suffered a

blood clot and two (2) strokes in 2002 and 2004 as a result of his (or her) use of Vioxx.

85.     Plaintiff, Johnny Lamb, Jr., is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from January of 2000 through June of 2000, and suffered significant heart problems in June of 2000 as a result of his (or her) use of Vioxx.

86.     Plaintiff, Clarence Lanclos, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from 1999 through May of 2004, and suffered significant heart problems in 2001 as a result of his (or her) use of Vioxx.

87.     Plaintiff, Maude Landry, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from March of 2000 through 2002, and suffered significant heart problems in August of 2002 as a result of his (or her) use of Vioxx.

88.     Plaintiff, Joyce Landry, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from 2003 through 2004, and suffered significant heart problems in August of 2004 as a result of his (or her) use of Vioxx.

89.     Plaintiff, Leroy Langlois, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from 2002 through 2004, and suffered significant heart problems and a blood clot in 2003 as a result of his (or her) use of Vioxx.

90.     Plaintiff, Ravis Lavergne, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from early 2001 through late 2001, and suffered a stroke in March of 2001 as a result of his (or her) use of Vioxx.

91.     Plaintiff, Sabrina Leathers, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from November of 2000 through September of 2004, and suffered significant heart problems and severe kidney problems in June of

2003 as a result of his (or her) use of Vioxx.

92.     Plaintiff, Percy Leger, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from 2001 through 2004, and suffered a stroke in 2002 as a result of his (or her) use of Vioxx.

93.     Plaintiff, Deborah Lewis, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from 2001 through 2004, and suffered blood clots in 2002, 2003 and 2004 as a result of his (or her) use of Vioxx.

94.     Plaintiff, Betty Linder, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from 1998 through 2002, and suffered a stroke and significant heart problems in 2002 as a result of his (or her) use of Vioxx.

95.     Plaintiff, Pearl S. Lockett, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from 1998 through 2001, and suffered a stroke in 2001 as a result of his (or her) use of Vioxx.

96.     Plaintiff, Carolyn Long, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from 2001 through 2002, and suffered two (2) strokes in 2001 as a result of his (or her) use of Vioxx.

97.     Plaintiff, Lynell Major, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from April 3, 2001 through 2001, and suffered a blood clot in June 8, 2001 as a result of his (or her) use of Vioxx.

98.     Plaintiff, Clara Martin, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from February 16, 2004 through September 30, 2004, and suffered significant heart problems on September 29, 2004 as a result of his (or her) use of

Vioxx.

99.     Plaintiff, David Mason, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from 2003 through August of 2004, and suffered significant heart problems in 2004 as a result of his (or her) use of Vioxx.

100.     Plaintiff, Mary McCall, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from 2000 through 2004, and suffered a stroke in July of 2001 as a result of his (or her) use of Vioxx.

101.     Plaintiff, Juanita McDowell, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from December 9, 2003 through 2004, and suffered a stroke in July of 2004 as a result of his (or her) use of Vioxx.

102.     Plaintiff, Donald McLeod, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from 2000 through October of 2004, and suffered kidney problems and significant heart problems, respectively in 2003 and 2004 as a result of his (or her) use of Vioxx.

103.     Plaintiff, Lynda McVea, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from December of 2003 through August of 2004, and suffered a blood clot in August of 2004 as a result of his (or her) use of Vioxx.

104.     Plaintiff, Alphonse Metoyer, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from April of 2004 through September of 2004, and suffered significant heart problems in September of 2004 as a result of his (or her) use of Vioxx.

105.     Plaintiff, Florence Minter, is a person of the full age of majority and resident of the

Page 16 of 49

State of Louisiana, who was prescribed Vioxx, and took it from 2002 through 2004, and suffered a

blood clot and significant heart problems, respectively in 2003 and 2004 as a result of his (or her) use

of Vioxx.

106.    Plaintiff, Clenis Monette, is a person of the full age of majority and resident of the

State of Louisiana, who was prescribed Vioxx, and took it from October of 2003 through December

of 2003, and suffered significant heart problems in December of 2003 as a result of his (or her) use

of Vioxx.

107.    Plaintiff, Arthur Newton, is a person of the full age of majority and resident of the

State of Louisiana, who was prescribed Vioxx, and took it from 1999 through October of 2003, and

suffered significant heart problems on June 11, 2003 as a result of his (or her) use of Vioxx.

108.    Plaintiff, Wilbert Nini, Jr., is a person of the full age of majority and resident of the

State of Louisiana, who was prescribed Vioxx, and took it from January of 2004 through August of

2004, and suffered a stroke in March of 2004 as a result of his (or her) use of Vioxx.

109.    Plaintiff, Patrick Nolan, is a person of the full age of majority and resident of the State

of Louisiana, who was prescribed Vioxx, and took it from 2003 through September of 2004, and

suffered a stroke in September of 2004 as a result of his (or her) use of Vioxx.

110.    Plaintiff, Ruby Ohler, is a person of the full age of majority and resident of the State

of Louisiana, who was prescribed Vioxx, and took it from November 30, 2001 through September of

2004, and suffered a stroke on May 1, 2003 as a result of his (or her) use of Vioxx.

111.    Plaintiff, Frank Oreather, is a person of the full age of majority and resident of the

State of Louisiana, who was prescribed Vioxx, and took it from 1999 through 2002, and suffered a

stroke in 2002 as a result of his (or her) use of Vioxx.

112.    Plaintiff, Kenneth Palmer, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from December 15, 1999 through February 17, 2003, and suffered significant heart problems in 2002 as a result of his (or her) use of Vioxx.

113.    Plaintiff, Guy Patterson, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from May of 2000 through October of 2004, and suffered significant heart problems in 2004 as a result of his (or her) use of Vioxx.

114.    Plaintiff, Marjorie Persilver, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from March 13, 2002 through January 6, 2004, and suffered significant heart problems in June of 2002 as a result of his (or her) use of Vioxx.

115.    Plaintiff, William Powers, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from January of 2001 through 2002, and suffered significant heart problems in October of 2002 as a result of his (or her) use of Vioxx.

116.    Plaintiff, Charlie Presley, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from April 9, 2003 through July of 2003, and suffered significant heart problems in 2003 as a result of his (or her) use of Vioxx.

117.    Plaintiff, Helen Pullins, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from 2001 through 2003, and suffered a stroke in 2002 or 2003 as a result of his (or her) use of Vioxx.

118.    Plaintiff, Annie Rawls, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from November of 1999 through May of 2004, and suffered significant heart problems on April 14, 2001 as a result of his (or her) use of Vioxx.

119.    Plaintiff, Ronald Reed, Sr., is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from 1999 through 2002, and suffered significant heart problems in 1999 and 2001 as a result of his (or her) use of Vioxx.

120.    Plaintiff, Dwain Richardson, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from 1998 through September of 2004, and suffered a stroke in 2002 as a result of his (or her) use of Vioxx.

121.    Plaintiff, Rickey Robertson, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from April 20, 2000 through July of 2004, and suffered significant heart problems on December 13, 2000 and April 17, 2001 as a result of his (or her) use of Vioxx.

122.    Plaintiff, Brenetha Robinson, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from April 3, 1999 through July of 2001, and suffered a stroke in May of 2001 as a result of his (or her) use of Vioxx.

123.    Plaintiff, Lera Rogers, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from 2002 through September of 2004, and suffered significant heart problems and a stroke in 2003 as a result of his (or her) use of Vioxx.

124.    Plaintiff, Ester Ross, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from August 10, 2001 through August 19, 2001, and suffered significant heart problems on August 19, 2001 as a result of his (or her) use of Vioxx.

125.    Plaintiff, Emile Russell, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from 2000 through 2003, and suffered significant heart problems in 2001 as a result of his (or her) use of Vioxx.

126. Plaintiff, Mark Santorelli, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from August of 2003 through October of 2004, and suffered a stroke in October of 2003 as a result of his (or her) use of Vioxx.

127. Plaintiff, Mary Helen Schexnayder, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from 2000 through 2004, and suffered significant heart problems and a stroke, respectively in 2001 and 2004 as a result of his (or her) use of Vioxx.

128. Plaintiff, Aline Schexneider, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from 2002 through 2004, and suffered kidney failure in September of 2004 as a result of his (or her) use of Vioxx.

129. Plaintiff, Lynelle Scoggins, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from January 1, 2001 through September of 2004, and suffered a stroke in November of 2002 as a result of his (or her) use of Vioxx.

130. Plaintiff, Willie Scott, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from 1999 through October of 2004, and suffered a blood clot and significant heart problems in 2002 as a result of his (or her) use of Vioxx.

131. Plaintiff, Norris Sellers, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from 2000 through 2002, and suffered significant heart problems in 2001 as a result of his (or her) use of Vioxx.

132. Plaintiff, Robert Sept, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from 2003 through 2004, and suffered significant heart problems and a stroke in August of 2004 as a result of his (or her) use of Vioxx.

133.     Plaintiff, Ruth Sessions, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from August of 1999 through October of 2004, and suffered significant heart problems in December of 2002 as a result of his (or her) use of Vioxx.

134.     Plaintiff, Janice Simmons, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from 1998 through September of 2004, and suffered significant heart problems in 1999, 2001, and 2002 as a result of his (or her) use of Vioxx.

135.     Plaintiff, Huey Small, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from early 2002 through late 2002, and suffered significant heart problems in 2002 as a result of his (or her) use of Vioxx.

136.     Plaintiff, Roy Smith Rushing, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from October 29, 2001 through February of 2004, and suffered significant heart problems in September of 2003 as a result of his (or her) use of Vioxx.

137.     Plaintiff, Katherine Straub, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from October of 2003 through October of 2004, and suffered significant heart problems in August of 2004 as a result of his (or her) use of Vioxx.

138.     Plaintiff, Verde Sylvester, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from 2003 through 2004, and suffered a stroke on July 25, 2004 as a result of his (or her) use of Vioxx.

139.    Plaintiff, Archie Tatum, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from 1999 through 2002, and suffered significant heart problems on August 13, 2000 and in February of 2002 as a result of his (or her) use of Vioxx.

140.    Plaintiff, Rodney Teal, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from 2003 through October of 2004, and suffered two (2) strokes in 2004 as a result of his (or her) use of Vioxx.

141.    Plaintiff, Sherman Thibodeaux, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from 1999 through April 22, 2004, and suffered significant heart problems in 2004 as a result of his (or her) use of Vioxx.

142.    Plaintiff, Clayton Thomas, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from July 27, 2001 through October of 2004, and suffered a stroke on December 26, 2003 as a result of his (or her) use of Vioxx.

143.    Plaintiff, Regina Vice, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from 1999 through September of 2003, and suffered a stroke and significant heart problems in October of 2003 as a result of his (or her) use of Vioxx.

144.    Plaintiff, Larry Walker, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from January 6, 2003 through May of 2004, and suffered a peptic ulcer in November of 2004 as a result of his (or her) use of Vioxx.

145.    Plaintiff, Cora Warren, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from 2001 through August of 2004, and

suffered a stroke in 2002 as a result of his (or her) use of Vioxx.

146.    Plaintiff, Dorothy Washington, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from 1999 through June of 2002, and suffered a stroke in 2002 as a result of his (or her) use of Vioxx.

147.    Plaintiff, John Watkins, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from 2000 through 2002, and suffered significant heart problems in 2002 as a result of his (or her) use of Vioxx.

148.    Plaintiff, Doris Wellbrock, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from February of 2002 through 2003, and suffered significant heart problems on March 7, 2003 as a result of his (or her) use of Vioxx.

149.    Plaintiff, Amos West, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from February of 2004 through July of 2004, and suffered a stroke in June of 2004 as a result of his (or her) use of Vioxx.

150.    Plaintiff, Annie White, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from July of 2002 through June of 2004, and suffered significant heart problems in 2003 as a result of his (or her) use of Vioxx.

151.    Plaintiff, Mc Arthur White Sr., is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from May 3, 2001 through May of 2002, and suffered significant heart problems and a stroke, respectively in 2001 and May 2002 as a result of his (or her) use of Vioxx.

152.    Plaintiff, David White Sr., is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from December of 2000 through February

Page 23 of 49

of 2001, and suffered significant heart problems in January of 2001 as a result of his (or her) use of Vioxx.

153.    Plaintiff, Hazel Wiley, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from 2001 through 2004, and suffered a stroke and a blood clot in May of 2003 or 2004 as a result of his (or her) use of Vioxx.

154.    Plaintiff, Sylvia Williams, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from 2002 through September of 2004, and suffered a stroke on July 14, 2004 as a result of his (or her) use of Vioxx.

155.    Plaintiff, Patsy Williams, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from December 13, 2001 through March 12, 2002, and suffered a stroke in August of 2001 as a result of his (or her) use of Vioxx.

156.    Plaintiff, Douglas Williams, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from 2001 through October of 2004, and suffered two strokes and significant heart problem, respectively on October 11, 2002 and in January of 2003 and November of 2002 as a result of his (or her) use of Vioxx.

157.    Plaintiff, Linda Williams, is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from October of 2003 through December of 2003, and suffered significant heart problems in December of 2003 as a result of his (or her) use of Vioxx.

158.    Plaintiff, Michael Williams, Sr., is a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from March of 2000 through January of 2001, and suffered significant heart problems in June of 2000 as a result of his (or her) use of

Vioxx.

159.    Plaintiff, Arthur Worzel, is a person of the full age of majority and resident of the

State of Louisiana, who was prescribed Vioxx, and took it from 2001 through October of 2002, and

suffered kidney failure on October 16, 2002 as a result of his (or her) use of Vioxx.

160.    Plaintiffs, Barbara Andrews, William C. Andrews and Mary Andrews, show that the

decedent, George Andrews Jr., was a person of the full age of majority and resident of the State of

Louisiana, who was prescribed Vioxx, and took it from 1998 through March 14, 2004, and suffered

significant heart problems and a stroke and died in Rapides Parish on March 14, 2004 as a result of

his (or her) use of Vioxx.

161.    Barbara Andrews, surviving spouse, and William C. Andrews and Mary Andrews,

surviving children, are the lawful and legal heirs under the Louisiana Wrongful Death Statute.

162.    Plaintiffs, Thomas N. Arnold, Deborah A. Holden, Patricia A. Corley, Robert D.

Arnold, and Ronald A. Arnold, show that the decedent, Wanda Moore Arnold, was a person of the

full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it

from 2003 through February 23, 2004, and suffered significant heart problems and died in Vernon

Parish on February 23, 2000 as a result of his (or her) use of Vioxx.

163.    Thomas N. Arnold, Deborah A. Holden, Patricia A. Corley, Robert D. Arnold, and

Ronald A. Arnold, surviving children, are the lawful and legal heirs under the Louisiana Wrongful

Death Statute.

164.    Plaintiffs, Wilson J. Shello, Jr. and Emma Fusilier, show that the decedent, Naomi

Bonnet, was a person of the full age of majority and resident of the State of Louisiana, who was

prescribed Vioxx, and took it from 2002 through August 19, 2003, and suffered significant heart

problems and died in Iberia Parish in August 19, 2003 as a result of his (or her) use of Vioxx.

165.    Wilson J. Shello, Jr., surviving child, and Emma Fusilier, surviving sister, are the lawful and legal heirs under the Louisiana Wrongful Death Statute.

166.    Plaintiff, Laura E. Crouch, shows that the decedent, George Crouch, was a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from 2000 through September 2, 2003, and suffered significant heart problems and died in Rapides Parish on September 2, 2003 as a result of his (or her) use of Vioxx.

167.    Laura E. Crouch, surviving spouse, is the lawful and legal heir under the Louisiana Wrongful Death Statute.

168.    Plaintiff, Martha Sales, shows that the decedent, Rondle Sales, was a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from 2001 through March 27, 2002, and suffered significant heart problems and died in Bossier Parish on March 27, 2002 as a result of his (or her) use of Vioxx.

169.    Martha Sales, surviving spouse, is the lawful and legal heir under the Louisiana Wrongful Death Statute.

170.    Plaintiffs, Fred R. Scarbrough, Jessica Scarbrough Willis, Kasi Erin Corley, and Christi Scarbrough Hall, show that the decedent, Katherine Scarbrough, was a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from 2002 through October 8, 2003, and suffered significant heart problems in Bossier Parish in April of 2002 and on her date of death, October 8, 2003 as a result of his (or her) use of Vioxx.

171.    Fred R. Scarbrough, surviving spouse, and Jessica Scarbrough Willis, Kasi Erin Corley, and Christi Scarbrough Hall, surviving children are the lawful and legal heirs under the

Louisiana Wrongful Death Statute.

172.    Plaintiff, Jennie Stephens, shows that the decedent, Beverly Wells, was a person of the full age of majority and resident of the State of Louisiana, who was prescribed Vioxx, and took it from 1999 or 2000 through December 11, 2001, and suffered significant heart problems and died in Tangipahoa Parish on December 11, 2001 as a result of his (or her) use of Vioxx.

173.    Jennie Stephens, surviving child, is the lawful and legal heir under the Louisiana Wrongful Death Statute.

174.    Plaintiffs maintain that Vioxx is defective, dangerous to human health, and lacked proper warnings as to the dangers associated with its use.

175.    Defendant, Merck & Co., Inc. (hereinafter, "Merck"), is a corporation organized and existing under the laws of the State of New Jersey, with its principal place of business at One Merck Drive, White House Station, New Jersey 08889, who may be served through their registered agent for service of process: C.T. Corporation System at 8550 United Plaza Boulevard, Baton Rouge, Louisiana 70809.

176.    At all times relevant hereto, Defendant Merck engaged in the business of testing, developing, manufacturing, distributing, licensing, labeling and marketing, either directly or indirectly through third parties or related entities, the pharmaceutical drug, Vioxx, in the state of Louisiana, and throughout the United States.

177.    In doing so, they engaged in tortuous conduct by failing to disclose and/or affirmatively misrepresenting the safety of Vioxx with regard to heart attacks, strokes, and other cardiovascular events to promote the sale and distribution of Vioxx to individuals including the Plaintiffs herein. These actions included providing samples to doctors and hospitals throughout the

State of Louisiana, entering into formulary agreements, etc., as well as providing misleading and false material representations and omitting to disclose material facts as alleged below.

178.     Furthermore, the above referenced tortuous conduct occurred in the State of Louisiana.

## FACTS COMMON TO ALL COUNTS

179.     Vioxx is the brand name of rofecoxib, one of a class of drugs called "prostaglandins," which work to reduce inflammation and pain by providing analgesic and anti-inflammatory benefits to persons with, among other conditions, arthritis and muscle pain. Prostaglandins are COX (cyclooxygenase) inhibitors; COX enzymes metabolize arachidonic acid to produce prostaglandins.

180.     Vioxx is a COX-2 inhibitor, which is designed to produce prostaglandins at inflammatory sites, and to produce prostacyclin, a vasodilator and an inhibitor of platelet aggregation.

181.     Defendant Merck submitted an Application to Market a New Drug for Human Use ("NDA") for rofecoxib to the United States Food and Drug Administration ("FDA") on November 23, 1998, for tablets, at doses of 12.5 mg and 25 mg, for relief of the signs and symptoms of osteoarthritis, the management of acute pain, and the treatment of primary dysmenorrhea. This application was denoted NDA 21-042 by the FDA.

182.     Defendant Merck also submitted an Application to Market a New Drug for Human Use ("NDA") for rofecoxib to the United States Food and Drug Administration ("FDA") on November 23, 1998, for oral suspension, at doses of 12.5 mg/mL and 25 mg/mL, for relief of the signs and symptoms of osteoarthritis, the management of acute pain, and the treatment of primary dysmenorrhea. This application was denoted NDA 21-052 by the FDA.

183.    On or about May 20, 1999, the FDA approved NDA 21-042 and NDA 21-052 (hereinafter the "NDA") for rofecoxib, for relief of the signs and symptoms of osteoarthritis, the management of acute pain, and the treatment of primary dysmenorrhea.

184.    At the time the drug was approved by the FDA the labeling for rofecoxib stated, in the section entitled "Special Studies -- Upper Endoscopy in Patients with Osteoarthritis," "Treatment with VIOXX 25 mg daily or 50 mg daily was associated with a significantly lower percentage of patients with endoscopic gastroduodenal ulcers than treatment with ibuprofen 2400 mg daily. However, the studies cannot rule out at least some increase in the rate of endoscopic gastroduodenal ulcers when comparing VIOXX to placebo."

185.    The "Warnings" section of the labeling for rofecoxib, at the time the drug was approved by the FDA, contains a section, "Gastrointestinal (GI) Effects -- Risk of GI Ulceration, Bleeding, and Perforation."

186.    Defendant Merck submitted NDA-007 with the goal of establishing a gastrointestinal ("GI") safety claim for rofecoxib. In conjunction with the NDA, Defendant Merck performed the Vioxx GI Outcomes Research (VIGOR) Protocol, No. 088-04, entitled "A Double-Blind, Randomized, Stratified, Parallel-Group Study to Assess the Incidence of PUBs During Chronic Treatment With MK-0966 or Naproxen in Patients With Rheumatoid Arthritis: U.S. Cohort." The VIGOR study was performed from January 6, 1999 through March 17, 2000.

187.    The objectives of the VIGOR study were to (1) "determine the relative risk of confirmed PUB (Perforation, Ulcers, Bleeding) in patients taking MK-0966 50 mg daily compared to patients in the group taking naproxen 1000 mg/day," and (2) "study the safety and tolerability of MK-0966 in patients with rheumatoid arthritis."

188.     In March, 2000, the VIGOR study found Vioxx patients had double the rate of serious cardiovascular problems than those on Naproxen, an older nonsteroidal anti-inflammatory drug (NSAID). The VIGOR data revealed that: (a) patients on Vioxx were five times more likely to suffer a heart attack as compared to patients on Naproxen; and (b) patients on Vioxx were 2.3 times more likely to suffer serious cardiovascular disease (including heart attacks, ischemic stroke, unstable angina and sudden unexplained death) as compared to patients on Naproxen.

189.     On March 27, 2000, Merck issued a press release leading off with the find that Vioxx caused fewer digestive tract problems than Naproxen. Merck continued to assert that it was not that Vioxx caused cardiovascular problems, but that Naproxen protected against them.

190.     In June of 2000, in industry-sponsored studies presented at the European United League Against Rheumatism (EULAR), an organization in which Merck is a member and corporate sponsor, it was shown that Vioxx use resulted in a statistically significant increase in hypertension, myocardial infarction and stroke. Not only did Merck do nothing to further accurately publish these studies, or warn consumers, but in August 2000, it denied the results with respect to hypertension in the official publication of the American Pharmaceutical Association, *Pharmacy Today*.

191.     From March 2000 - September 2004, Merck continued to deny the ill health effects associated with Vioxx while at the same time reaping profits obtained through its non-disclosure and concealment. Merck engaged in a massive advertising and sampling program and gained continued increases in the market share, which enhanced Merck's financial stability to the detriment of its consumers. As a result of Merck's scheme, it reaped more than $2 billion in profit in the year 2000 alone, and appropriated approximately 23 percent share of the market.

192.     Merck continued to profit by withholding information from Plaintiffs, the consuming

public, and the health care industry.

193.    In November of 2000, *The New England Journal of Medicine* published the VIGOR

study (VIGOR = Vioxx Gastrointestinal Outcomes Research) and Merck responded by knowingly

downplaying and/or withholding the severity of cardiovascular risks associated with Vioxx

consumption over Naproxen consumption.

194.    Further, in its January 23, 2001 8-K filing with the Securities and Exchange

Commission, Defendant fails to mention the cardiac and cardiothrombotic findings of the VIGOR

study:

> "Our results reflect the strength of our growth strategy," Mr. Gilmartin said. "Our five
> key products, **VIOXX**, ZOCOR, COZAAR/HYZAAR*, FOSAMAX and
> SINGULAIR, drove Merck's performance for the year and created a powerful
> platform for growth." These products accounted for 57% of Merck's worldwide
> human health sales for 2000 and 61% for the fourth quarter.
>
> "Each of the five medicines offers unique competitive advantages," Mr. Gilmartin
> said. **VIOXX**, a once-a-day medicine, is the only COX-2 indicated in the United
> States both for osteoarthritis and acute pain. Since its extraordinarily successful 1999
> launch, **VIOXX** has become the world's fastest growing branded prescription arthritis
> medicine, and it is already Merck's second largest-selling medicine. In the United
> States, **VIOXX** now accounts for approximately 50 percent of new prescriptions in
> the COX-2 class, despite being second to market in this class in the United States.
> **VIOXX** achieved $2.2 billion in sales for the full year 2000, with $700 million in the
> fourth quarter.
>
> A Food and Drug Administration (FDA) Advisory Committee meeting is scheduled
> for Feb. 8 to review labeling changes Merck has requested based on the strong results
> of the VIGOR Study. This 8,000-patient gastrointestinal outcomes research study, in
> which **VIOXX** reduced the risk of serious gastrointestinal complications by half
> compared to the NSAID naproxen, was published in November in THE NEW
> ENGLAND JOURNAL OF MEDICINE. Another study, presented in November,
> showed that **VIOXX** significantly reduced moderate-to-severe acute pain after dental
> surgery to a greater degree compared to codeine combined with acetaminophen.

195.    In February 2001, an FDA Advisory Panel recommended the FDA require a label

warning on Vioxx for its possible link to cardiovascular problems. In documents dated February 8,

2001, according to the FDA Advisory Committee Briefing Document, in the VIGOR study the

potential advantage of decreasing the risk of complicated gastrointestinal side effects was paralleled by the increased risk of developing cardiovascular thrombotic events.

196.    On May 22, 2001 Merck issued a press release through the *PR Newswire* that stated, "In response to news and analyst reports of data the Company first released a year ago, Merck & Co., Inc. today reconfirmed the favorable cardiovascular safety profile of Vioxx".

197.    On August 22, 2001, Drs. Eric Topol and Steven Nessen's article "Risk of Cardiovascular Evens Associated with Selective Cox-2 Inhibitors" was published in the *Journal of the American Medical Association* (*JAMA*) and reported findings of the Cleveland Clinic's study that "current data would suggest that use of these so called Cox-2 Inhibitors might lead to increased cardiovascular events".

198.    On August 21, 2001, the day before the *JAMA* article was published, Merck commented in a published report in *Bloomberg News* that "We have additional data beyond what they (Topol and Nessen) cite, and the findings are very, very reassuring, Vioxx does not result in any increase in cardiovascular events compared to placebo".

199.    On August 23, 2001, Merck stated in a press release that "the Company stands behind the overall and cardiovascular safety profile...of Vioxx".

200.    On September 17, 2001, Thomas W. Abrams, Director of the FDA Division of Drug Marketing, Advertising, and Communications, issued a "Warning Letter" to Raymond V. Gilmartin, President and CEO of Defendant Merck, relating to "promotional activities and materials for the marketing of Vioxx (rofecoxib) tablets."

201.    The Warning Letter stated that Defendant Merck had "engaged in a promotional campaign for Vioxx that minimizes the potentially serious cardiovascular findings that were

observed in the Vioxx Gastrointestinal Outcomes Research (VIGOR) study, and thus, misrepresents

the safety profile for Vioxx." The letter further states:

> Specifically, your promotional campaign discounts the fact that in the VIGOR study, patients on Vioxx were observed to have a four to five fold increase in myocardial infarctions (MIs) compared to patients on the comparator non-steroidal anti-inflammatory drug (NSAID), Naprosyn (naproxen).

202.    The eight (8) page Warning Letter outlines, in detail, the conduct of Defendant

Merck that supports the FDA's issuance of the Warning Letter, and makes the following

**"Conclusions and Requested Actions:"**

> The promotional activities and materials described above minimize the potentially serious Cardiovascular findings that were observed in the VIGOR study, minimize the Vioxx / Coumadin drug interaction, omit crucial risk information associated with Vioxx therapy, contain unsubstantiated comparative claims, and promote unapproved uses. On December 16, 1999, we also objected to your dissemination of promotional materials for Vioxx that misrepresented Vioxx's safety profile, contained unsubstantiated comparative claims, and lacked fair balance.

> Due to the seriousness of these violations, and the fact that your violative promotion of Vioxx has continued despite our prior written notification regarding similar violations, we request that you provide a detailed response to the issues raised in this Warning Letter on or before October 1, 2001.

> This response should contain an action plan that includes a comprehensive plan to disseminate corrective messages about the issues discussed in this letter to the audiences that received these misleading messages. This corrective action plan should also include:

> 1.  Immediately ceasing all violative promotional activities, and the dissemination of violative promotional materials for Vioxx.

> 2.  Issuing a "Dear Healthcare provider" letter to correct false or misleading impressions and information. This proposed letter should be submitted to us for review prior to its release. After agreement is reached on the content and audience, the letter should be disseminated by direct mail to all healthcare providers who were, or may have been exposed to the violative promotion.

> 3.  A written statement of your intent to comply with "1" and "2" above.

203.    Merck was also aware at this time of the increased risks of thrombotic (blood clotting) adverse effects such as strokes and blood clots in the legs, hypertension, and altered kidney function. However, Vioxx was by then a blockbuster moneymaker and Merck decided to protect its "cash cow" at all costs though the continued false and misleading claims to the general public and treating physicians of the general public, including Plaintiffs, through direct to consumer advertising and through its agents, servants and employees.

204.    On January 12, 2002, Dr. Wayne A. Ray, a Professor of Preventive Medicine at Vanderbilt University, and others, reported in an article published in *The Lancet* that Naproxen did not have significant protective cardiovascular effect and that Vioxx, when taken at higher doses that had become common, of which Merck had become aware and anticipated, posed an increased risk of heart-related problems.

205.    On April 11, 2002, the FDA approved a supplemental application for the use of Vioxx (rofecoxib) for rheumatoid arthritis, adding this indication to the previously approved indications for osteoarthritis and pain. The FDA also approved new labeling, a "Dear Doctor" letter, and a new patient package insert. The labeling and the "Dear Doctor" letter contained information concerning the results of the VIGOR study.

206.    The revised labeling further states that the administration of Vioxx 50 mg was associated with a higher incidence of gastrointestinal symptoms.

207.    Further, the "Dear Doctor" letter, approved in conjunction with the revisions to the Vioxx labeling, outlines the changes to the Vioxx labeling.

208.    The revised "Patient Information" sheet does not add any information about the results of the VIGOR study."

209.     The "Patient Information" sheet is the only written document that is provided to a patient for whom Vioxx is prescribed.

210.     Both the initial labeling and the revised labeling are ineffective because they do not properly advise physicians and patients of the potential cardiovascular side effects and hazards of Vioxx.

211.     In 2002, Merck was spending more than $100 million a year in direct-to-consumer advertising.  Such advertising was used as direct representations by Merck that Vioxx was safe, which clearly underestimated the risks of cardiovascular events.  In addition, Merck continued to aggressively promote Vioxx to the medical community by encouraging its sales representatives to deliver large amounts of free samples to the medical community, including the treating doctors of Plaintiffs, and encourage them to give away free samples to their patients.

212.     In 2002 and 2003 Merck refused requests from the American Heart Association, the National Stroke Association and the Arthritis Foundation that it conduct additional safety studies, claiming that Vioxx was safe and that it did not plan to conduct any such study.

213.     On October 30, 2003, an article in *The Wallstreet Journal* reported that another study sponsored by Merck and presented at the annual meeting of the American College of Rheumatology confirmed an increased risk of heart attacks in patients taking Vioxx.  According to *The Wallstreet Journal*, within the first 30 days of taking Vioxx the risk of a heart attack was increased by 30% as compared to Celebrex® ("Celebrex").  This study looked at the records of 54,475 Medicare patients, all of whom were over 65, and was described by Dr. Eric Topol as "the best study to date".

214.     In 2003, Dr. Jerry Avorn, a Divisional Director at Brigham and Women's Hospital in Boston and colleague, Dr. Daniel H. Solomon, reported on a Merck financed study based on a survey

of patient records that found Vioxx, even at some moderate dosages, increased cardiovascular risk.

215. Merck disputed the findings of the Avorn-Solomon study, and the name of the Company epidemiologist who had worked on it was removed from the report before it was published in a medical journal.

216. In 2003 worldwide sales of Vioxx totaled $2.5 billion.

217. To further increase the appeal of Vioxx to the general public through Merck's direct to consumer advertising, from 1999 through 2004, it used Olympic gold medalists Dorothy Hamill and Bruce Jenner to promote it.

218. From January through June, 2004, Merck spent an estimated $45 million in advertising Vioxx.

219. In May 2004, the results of a study funded by the Canadian government were published in *The Lancet*. The study reviewed data from 1.3 million elderly patients (66 and older) taking Vioxx vs. Celebrex vs. a common arthritis pain pill (NSAID) vs. no medication. The records from approximately 130,000 persons randomly reviewed from the population base found that persons taking Vioxx had an 80% increase in hospital admissions for congestive heart failure within one year of taking Vioxx when compared to persons taking NSAIDS.

220. On August 25, 2004, Dr. David Graham, Associate Director for Science in the FDA's Office of Drug Safety, presented results of a database analysis of 1.4 million patients that showed Vioxx users are more likely to suffer a heart attack or sudden cardiac death than those taking Celebrex or an older NSAID.

221. Despite the foregoing, on August 26, 2004, Merck continued to represent to consumers that Vioxx is safe, and that any cardiovascular and/or cardiothrombotic side effects are

not associated with the drug. Merck stated in a press release that "Merck stands behind the efficacy, overall safety and cardiovascular safety of Vioxx".

222.    On September 30, 2004, Merck finally withdrew Vioxx from the United States and more than 80 other countries, after obtaining additional information from its own studies, which had been instigated by Merck to determine if it could claim Vioxx protects against the recurrence of colon polyps, which can become cancerous, that the group in the study taking Vioxx after 18 months had twice as high a risk of developing cardiovascular disease as the placebo group.

223.    Up to and including September 30, 2004, Defendant Merck continued to represent to consumers of Vioxx that it was safe, and that any cardiovascular and/or cardiothrombotic side effects are not associated with the drug. The Defendant downplayed any potential gastrointestinal side effects of Vioxx, promoting it as safer and more efficacious than other medications approved for treatment of similar conditions.

224.    Pursuant to direct to consumer advertising and prescriptions received from their treating physicians, Plaintiffs regularly purchased and ingested Vioxx for various periods of time. Plaintiffs now suffers from heart attacks, strokes, TIAs, coronary artery disease, althersclerosis, blood clots, and other diseases caused by the use of Vioxx.

225.    Vioxx is primarily prescribed to reduce pain from inflammation. However, the Defendant Merck failed to conduct sufficient research in manufacturing and marketing Vioxx to determine the severity of the drugs' potential side effects. Defendant withheld adverse reports, or gave incorrect information about such reports, they had received about side effects such as heart attacks and strokes. As a result of the Defendant's failure and the undisclosed defects of Vioxx, Plaintiffs has sustained heart attacks, strokes, TIAs, coronary artery disease, althersclerosis, blood

clots and/or other ill-effects.

226.    Defendant Merck conducts business in the State of Louisiana, and at all times relevant

hereto, developed, manufactured, advertised and sold the pharmaceutical drug Vioxx in the State of

Louisiana.

### JURISDICTION AND VENUE

227.    Venue is proper in this Court pursuant to 28 U.S.C. § 1332 in that the parties are

citizens of different states and the amount in controversy exceeds $75,000.

228.    Venue is proper in this Court, pursuant to 2 U.S.C. § 1391, as significant portion of

the events giving rise to Plaintiffs' claim occurred, in most part, in the State of Louisiana, and

pursuant to Judge Fallon's Order, all new Louisiana Vioxx claims may be filed in the Eastern

District of Louisiana.

### COUNT I - DEFECTIVE DESIGN AGAINST MERCK

Come now Plaintiffs and for Count I of their petition against Defendant Merck and state the

following:

229.    Plaintiffs incorporate all allegations in the preceding paragraphs as if fully set forth in

this Count.

230.    Defendant Merck designed, produced, manufactured and injected into the stream of

commerce, in the regular course of its business, the pharmaceutical drug Vioxx which it knew would

be used by Plaintiffs and others.

231.    At the time the Vioxx was manufactured and sold to Plaintiffs by Merck, it was in a

defective condition and unreasonably dangerous when put to its reasonably anticipated use, and

subjected its users to increased risks of heart attacks, strokes, and other illnesses which exceeded its

benefits, and for which other safer products were available.

232. Alternatively, when Vioxx was manufactured and sold to Plaintiffs by Defendant, it was defective in design and formulation, making use of it more dangerous than other drugs for pain relief.

233. The Vioxx sold to Plaintiffs reached Plaintiffs without substantial change. Plaintiffs were unaware of the dangerousness of the products until after their use and the development of heart attacks, strokes, and other related illnesses. Plaintiffs ingested the Vioxx without making any changes or alterations and used it in a manner reasonably anticipated by Merck.

234. As a direct and proximate result of the defective and dangerous design of Vioxx, Plaintiffs has been damaged.

235. Merck's conduct, as described herein, knowing the defective condition and danger of Vioxx, yet continuing to advertise, market, distribute and sell it to Plaintiffs and the general public showed complete indifference to or conscious disregard for the safety of users of Vioxx, including Plaintiffs.

## COUNT II - FAILURE TO WARN AGAINST MERCK

Come now Plaintiffs and for Count II of their petition against Defendant Merck and state the following:

236. Plaintiffs incorporate all allegations in the preceding paragraphs as if fully set forth in this Count.

237. At the time the Vioxx was manufactured and sold to Plaintiffs by Merck, in the course of its business, it was in a defective condition and unreasonably dangerous when put to its reasonably anticipated use, and subjected its users to increased risks of heart attacks, strokes, and other illnesses

Page 39 of 49

which exceeded its benefits, and for which other safer products were available.

238. The users of Vioxx, including Plaintiffs, did not have knowledge of its defective and unreasonably dangerous condition, which subjected them to increased risks of heart attacks, strokes, and other illnesses which exceeded its benefits, and for which other safer products were available.

239. The Vioxx manufactured and supplied by Merck was unaccompanied by proper and adequate warnings regarding all possible adverse side effects associated with the use of Vioxx, and the comparative severity and duration of the adverse effects. The warnings given by Merck did not accurately reflect the symptoms, type, scope or severity of the side effects.

240. In addition, Merck failed to warn Plaintiffs based on its VIGOR study. Such adequate warnings of the VIGOR study results would have shown that Vioxx possessed serious potential side effects, and full and proper warnings, including types of symptoms, scope and severity of illness, should have been given to Plaintiffs with respect to their use of Vioxx.

241. Merck also failed to adequately warn Plaintiffs of the adverse reports it received about Vioxx from third parties.

242. Furthermore, Merck failed to effectively warn users and physicians that numerous other methods of pain relievers, including Ibuprofen, Naproxen, Mobic, and/or potentially Celebrex were a safer alternative.

243. Finally, Merck failed to give adequate post-marketing warnings or instructions for the use of Vioxx because after it knew or should have known of the risk of injury from Vioxx use, it still failed to provide adequate warnings to users or consumers of Vioxx, including Plaintiffs, and continued to aggressively promote the product to doctors, hospitals, and directly to consumers, including Plaintiffs.

244.    Plaintiffs used Vioxx in a manner reasonably anticipated by Merck.

245.    As a direct and proximate result of Merck's failure to warn of the potentially severe side effects of the Vioxx products, Plaintiffs has been damaged.

246.    Merck's conduct, as described herein, knowing of the defective condition and danger of Vioxx, yet continuing to advertise, market, distribute and sell it to the general public, including Plaintiffs, without issuing proper warnings, showed complete indifference to or conscious disregard for the safety of users of Vioxx, including Plaintiffs.

## COUNT III –UNREASONABLY DANGEROUS DESIGN AGAINST MERCK UNDER THE LOUISIANA PRODUCTS LIABILITY ACT

Come now Plaintiffs and for Count III of their petition against Defendant Merck and state the following:

247.    Plaintiffs incorporate all allegations in the preceding paragraphs as if fully set forth in this Count.

248.    Plaintiffs brings this action pursuant to La. Rev. Stat. 9:2800.56 under the Louisiana Products Liability Act (or "LPLA") in that Defendant Merck designed, produced, manufactured and injected Vioxx into the stream of commerce, in the regular course of its business, which it knew would be used by Plaintiffs and others.

249.    More specifically, at the time the Vioxx was manufactured and sold to Plaintiffs by Merck, it was defective in design in that it subjected users to increased risks of heart attacks, strokes, and other illnesses which exceeded its benefits, and for which other safer products were available.

250.    Alternatively, when Vioxx was manufactured and sold to Plaintiffs by Merck, it was defective in design and formulation in that it subjected users to increased risks of heart attacks,

strokes and other illnesses, which made use of the Vioxx more dangerous than other drugs for pain relief.

251. Merck failed to use ordinary care to manufacture and/or design Vioxx to be reasonably safe in that it increased the users' risks of heart attacks, strokes and other illnesses which exceeded its benefits and for which other safer products were available.

252. In addition, Merck failed to use ordinary care by performing adequate testing and study or properly analyzing the findings of the VIGOR study. Such adequate testing, study or analysis of the VIGOR would have shown that Vioxx possessed serious potential side effects of Vioxx and its dangerous and defective design and condition, which would have allowed Merck to remove Vioxx from the market, months, if not years before its recall on September 30, 2004, which delay caused increased risk of injuries and damages to Vioxx users, including the Plaintiffs.

253. Finally, Merck failed to use ordinary care by acting properly on adverse reports it received about Vioxx, and failed to properly study Vioxx pre-market and analyze and follow up on its studies as well as other studies regarding the dangerous and defects of Vioxx.

254. As a direct and proximate result of the defective and dangerous design of the Vioxx, Plaintiffs has been damaged.

255. Merck's conduct, as described herein, knowing of the defective condition and danger of Vioxx, yet continuing to advertise, market, distribute and sell it to the general public, including Plaintiffs, showed complete indifference to or conscious disregard for the safety of users of Vioxx, including Plaintiffs.

## COUNT IV - FAILURE TO WARN AGAINST DEFENDANT MERCK UNDER THE LOUISIANA PRODUCTS LIABILITY ACT

Come now Plaintiffs and for Count IV of their petition against Defendant Merck and state the following:

256.    Plaintiffs incorporate all allegations in the preceding paragraphs as is fully set forth in this Count.

257.    Plaintiffs brings this action pursuant to La. Rev. Stat. 9:2800.57 under the LPLA in that Defendant owed a duty to users of Vioxx, including Plaintiffs, to warn of any dangerous defects or side effects, including unreasonable and dangerous risks, reactions, and illnesses, as well as a duty to provide adequate post market warnings as it learned of Vioxx's substantial defects and dangers, including a users increased risks of heart attacks, strokes and other serious illnesses.

258.    Defendant breached their duty of reasonable care owed to Plaintiffs in that Defendant failed to:

> a)    Conduct sufficient testing which, if properly performed, would have shown that Vioxx had serious side effects, including heart attacks, strokes, hypertension, althersclorosis, blood clots, and other serious illnesses, and warn users of those risks; and/or
>
> b)    Include adequate warnings with the marketing, distribution, and sale of Vioxx that would alert users to the potential risks and serious side effects of the drugs; and/or
>
> c)    Warn Plaintiffs that use of Vioxx carried increased risks of death or permanent disability from heart attacks, strokes, blood clots, and other cardiovascular disorders and other serious side effects; and/or
>
> d)    Advise the FDA, the health care industry, and the public about the adverse reports it had received regarding Vioxx from third parties as well as its own studies; and/or
>
> e)    Warn physicians and hospitals treating Plaintiffs that prescribing Vioxx to Plaintiffs carried increased risks of death or permanent

disability from heart attacks, strokes, blood clots, and other cardiovascular disorders and other serious side effects; and/or

f)      Issue other appropriate warnings to Plaintiffs and the health care industry in general.

259.    Defendant knew or by using ordinary care should have known that Vioxx caused unreasonably dangerous risks and serious side effects of which the general public would not be aware. Defendant nevertheless advertised, marketed and promoted their products to the general public, the health care industry and Plaintiffs, knowing there were safer methods and products for pain control without warning the general public, health care industry and Plaintiffs, of the dangerous condition of Vioxx.

260.    As a direct and proximate result of Defendant's negligence and breaches of their duty of reasonable care, Plaintiffs has been damaged.

261.    Defendant's conduct, as described herein, knowing of the defective condition and danger of Vioxx, yet continuing to advertise, market, distribute and sell it to the general public, including Plaintiffs, without issuing proper warnings, showed complete indifference to or conscious disregard for the safety of users of Vioxx, including Plaintiffs.

## COUNT V - LOUISIANA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION ACT - AGAINST DEFENDANT MERCK

Come now Plaintiffs and for Count V of their petition against Defendant Merck and state the following:

262.    Plaintiffs incorporate all allegations in the preceding paragraphs as if fully set forth in this Count.

263.    Plaintiffs bring this action pursuant to La.R.S. 51:1405 and La.R.S. 51:1409, under

the Louisiana Unfair Trade Practices and Consumer Protection Act ("LUTPA") in that they

purchased and used Vioxx for their personal use and thereby suffered ascertainable loss as a result of

Defendant's actions in violation of the Louisiana consumer protection statutes, the tort of which

occurred in part in the State of Louisiana.

264.    According to LUTPA, and more specifically, to La.R.S. 51:1405: "Unfair methods of

competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are

hereby declared unlawful." LUTPA grants any individual who "suffers any ascertainable loss of

money or movable property, corporeal or incorporeal" a specific right of action for actual damages

resulting from unfair trade practices, in addition to court costs and attorney fees, pursuant to La.R.S.

51:1409.

265.    Defendant violated LUTPA by their use of false and misleading misrepresentations or

omissions of material fact in connection with the sale of Vioxx. Defendant communicated the

purported benefits of Vioxx, while failing to disclose the serious and dangerous side effects related

to the use of Defendant's products, and in fact actually attempting to dodge or conceal issues of

cardiovascular concern raised by health care providers regarding the adverse cardiovascular effects of

Vioxx.

266.    Defendant actively participated in a scheme with its sales representatives, titled

"Dodge Ball Vioxx" in which their sales representatives were trained to intentionally omit material

information of known cardiovascular side effects of Vioxx from treating physicians and health care

providers when meeting with them in an attempt to market, promote and sell Vioxx to the general

public, including Plaintiffs' treating physicians and health care providers.

267.    As a direct and proximate result of violating LUTPA, Defendant is liable to Plaintiffs

for actual damages, including the cost of the Vioxx, medical bills and costs associated with his (or her) consumption of the Vioxx, costs and reasonable attorneys' fees, and for such additional relief as the Court may deem appropriate.

268.    Defendant's conduct, as described herein, knowing of the defective condition and danger of Vioxx, yet continuing to advertise, market, distribute and sell it to the general public, including Plaintiffs, in an intentional and willful violation of LUTPA was outrageous and showed complete indifference to or conscious disregard for the safety of users of Vioxx, including Plaintiffs.

## COUNT VI - FRAUDULENT MISREPRESENTATION AGAINST DEFENDANT MERCK UNDER THE LOUISIANA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION ACT

Come now Plaintiffs and for Count VI of their petition against Defendant Merck, state the following:

269.    Plaintiffs reallege the allegations in the preceding paragraphs as if fully set out herein.

270.    Plaintiffs bring this action pursuant to La.R.S. 51:1409, under LUTPA in that Defendant misrepresented a number of facts to the general public through direct to consumer advertising, including Plaintiffs and/or treating physicians of Plaintiffs, including: the potential serious cardiovascular findings that were observed in the VIGOR study; the Vioxx/Coumadin drug interaction; crucial risk information associated with Vioxx; the Vioxx safety profile; studies from third parties regarding the risks and dangers of Vioxx; and the safety of Vioxx, including that any cardiovascular and/or cardio thrombotic side effects were not associated with the drug.

271.    These representations were false and made by Defendant with knowledge of their falsity or ignorance of their truth or falsity.

272.    These representations were material to Plaintiffs and/or their treating physicians to

prescribe, request, ingest and /or maintain Plaintiffs' prescriptions of Vioxx.

273.    The Defendant intended for Plaintiffs and/or their treating physicians, to rely upon the material misrepresentations to induce Plaintiffs to request Vioxx from their treating physicians and/or for Plaintiffs' treating physicians to initially prescribe Vioxx and continue to have Plaintiffs take it.

274.    Defendant further intended that the health care industry, including Plaintiffs' treating physicians would prescribe Vioxx to Plaintiffs and furthermore that they would discuss Defendant's representations with other heath care providers in the industry, who would in turn prescribe Vioxx to their patients in reliance on the false and material representations of Defendant.

275.    Plaintiffs, his (or her) treating physicians and other health care providers, who prescribed Vioxx to the general public, including Plaintiffs, were ignorant of the falsity of Defendant's representations as described above and Plaintiffs relied upon them in requesting prescriptions of Vioxx from his (or her) treating physicians, and/or Plaintiffs' treating physicians prescribing Vioxx to Plaintiffs, and/or Plaintiffs' treating physicians discussing the benefits of Vioxx with other health care providers, who in turn prescribed Vioxx for their patients, including Plaintiffs.

276.    Plaintiffs, his (or her) treating physicians, and other health care providers who prescribed Vioxx to the general public, including Plaintiffs, had a right to rely on the truthfulness of Defendant's representations regarding Vioxx, as described above, as they were made by the manufacturer of the drug, and its sales representatives, who have the most knowledge of the benefits and risks of taking and prescribing Vioxx, as they are directly employed by Defendant Merck and are allegedly privy to all studies and information about it.

277.    As a direct result of Defendant's fraudulent misrepresentations, Plaintiffs has

sustained personal injuries and actual damages in an amount to be proved at trial.

278.    Defendant's conduct, as described herein, knowing of the defective condition and danger of Vioxx, yet making fraudulent misrepresentations to Plaintiffs and/or Plaintiffs' treating physicians was outrageous because of Defendant's evil motive or a reckless indifference to the safety of users of Vioxx, including Plaintiffs.

WHEREFORE, Plaintiffs, Bill Black, et al pray for a judgment against Defendant Merck for:

A.    Actual and compensatory pecuniary damages in an amount to be proved at trial;

B.    Costs of suit;

C.    Pre and post judgment interest;

D.    A trial by jury;

E.    Attorneys' fees pursuant to La.R.S. 51:1409; and

F.    Such other and further relief as the Court deems just and proper under the circumstances.

RESPECTFULLY SUBMITTED,

By: _____

Robert L. Salim (#11663)
1762 Texas Street
Post Office Box 2069
Natchitoches, Louisiana 71457
Phone: (318) 352-5999; Fax: (318) 352-5998

Ronald E. Corkern (#4403)
Post Office Box 1036
Natchitoches, Louisiana 71458
Phone: (318) 352-2302; Fax: (318) 352-7458

Kenneth T. Fibich (#06952600)
1401 McKinney, Suite 1800
Houston, Texas 77010
Phone: (713) 751-0025 ; Fax: (713) 751-0030
ATTORNEYS FOR PLAINTIFFS