UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: Vioxx | * MDL Case No. 1657 |
| | * |
| PRODUCTS LIABILITY | * SECTION L |
| LITIGATION | * |
| | * JUDGE FALLON |
| *This document relates to* | * |
| | * MAGISTRATE JUDGE |
| *Jo Levitt v. Merck Sharp & Dohme Corp.*, | * KNOWLES |
| 2:06-cv-09757-EEF-DEK | * |
| | * |

*******************************************************************************

**DEFENDANT MERCK SHARP & DOHME CORP.'S
<u>REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT</u>**

Plaintiff Jo Levitt does not dispute that:

- She only alleged a "heart attack" as the claimed injury in her Complaint;

- She must produce expert evidence to prove her claim that Vioxx caused her to have her alleged heart attack;

- She retained and disclosed (on December 13, 2013) a cardiologist, Dr. Jay Schapira, who opined that Vioxx caused her to have an "acute myocardial infarction," to meet her evidentiary burden on specific causation; and

- Following her abrupt withdrawal of Dr. Schapira as an expert two days after cancelling his deposition, she has no other expert evidence to support her claim that Vioxx caused her to have a heart attack.

Under the applicable law that Merck identified in its opening brief, that should be dispositive of her claims.

Ms. Levitt now claims that Merck simply got her alleged injuries wrong. The injuries for which she is suing Merck are not the heart attacks identified in her Complaint, but rather other

1158799v1

(amorphous) injuries that relate to coronary artery disease. Prior to the submission of her opposition brief, however, Ms. Levitt had repeatedly contended during the past seven-plus years that she had experienced a heart attack caused by Vioxx. Specifically:

- She filed a complaint on September 29, 2006 alleging that Vioxx caused her heart attacks, Compl. ¶ 34;

- On November 12, 2006, she signed, under penalty of perjury, a profile form identifying her injuries as heart attacks, Merck MSJ, Ex. E;

- On February 18, 2013, she asked the Court to appoint a specific causation expert on her behalf or to require "Merck [to] confirm that Vioxx was more likely than not the cause of my MI" (Rec. Doc. 64276-1, at 2);

- On December 13, 2013, she designated Dr. Jay Schapira, a cardiologist, to testify that Vioxx caused her to have an "acute myocardial infarction," Merck MSJ, Ex. I;

- On December 13, 2014, she provided reports from two experts, Terry Cordray and John Ward, on damages opining on the damages resulting from her alleged "heart attacks," *see, e.g.*, Excerpt of Cordray Report (attached hereto as Ex. A) (characterizing Ms. Levitt's injuries as heart attacks twice on the first page).[1]

Until May 19, 2014, when the opposition brief was filed, this case was, and always had been, a case about Vioxx allegedly causing Ms. Levitt to have heart attacks. It is a plaintiff's obligation to provide "fair notice of what the . . . claim is" in the complaint, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (ellipses in original) (quoting *Conley v. Gibson*, 355 U.S. 41,

---

[1] Even the unsigned and unsworn Amended and Supplemental Plaintiff Profile Form ("ASPPF") submitted in September 2009 and now relied upon to oppose summary judgment continues to reference an injury of "ACS/MI" and its resulting sequelae; certainly nothing remotely suggesting that she was abandoning her heart attack claim.

2

1158799v1

47 (1957)), and the only kind of injury alleged in Ms. Levitt's Complaint is a heart attack. Compl. ¶ 36. Ms. Levitt has had more than seven years to amend her Complaint's allegation that Vioxx caused her to have a heart attack, but she has not. During that time, this Court has treated her claim as a heart attack claim, without any objection from Ms. Levitt or counsel. *See, e.g.*, PTO 56 (listing Ms. Levitt's claim as a heart attack claim). Discovery has proceeded on that basis, and Merck's decisions regarding discovery and its own designation of experts was based on that fundamental premise. To be clear, this is not an issue of a *pro se* plaintiff being uncertain about the procedural steps to take to change her alleged injury. Ms. Levitt was represented by counsel in December 2013, when she designated Dr. Scharpira, a cardiologist, to testify that Vioxx caused her to have heart attacks in 2000.[2] With that designation, Ms. Levitt and her counsel could not have provided any clearer signal that Ms. Levitt still claimed that Vioxx caused her to have heart attacks, as she alleged in her Complaint. If Ms. Levitt had desired to allege a different injury, she could have, and should have, filed a motion under Rule 15, allowing the parties and the Court to consider the propriety of such an amendment in light of the relevant factors.

Rather than adhere to the clear procedures set out in the Federal Rules, she has waited until facing a motion for summary judgment to argue that her injury is something different from the one she claimed in her Complaint. "A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court." *Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005); *see also De Franceschi v. BAC Home Loans Servicing, L.P.*, 477 F. App'x 200, 204 (5th Cir. 2012) (refusing

---

[2]    Ms. Levitt was also represented by counsel when she filed her Complaint and submitted her Plaintiff Profile Form, and she was again represented by counsel from March 2010 until January 2012. (Rec. Docs. 37496, 63618.)

3

to consider theories that "were not described with any particularity in the complaint"); *Offshore Marine Contractors, Inc. v. Palm Energy Offshore, LLC*, Civ. A. No. 10-4151, 2012 WL 6161937, at *3 (E.D. La. Dec. 11, 2012) (Vance, J.) (refusing to allow new injury to be specified in opposition to summary judgment).

This is not a case where Merck has impliedly consented to the addition of coronary artery disease as an injury. *See* Fed. R. Civ. P. 15(b). Implied consent under Rule 15(b) "is not lightly to be inferred," as it implicates concerns of fair notice and procedural due process. *Triad Elec. & Controls, Inc. v. Power Sys. Eng'g, Inc.*, 117 F.3d 180, 193–94 (5th Cir. 1997).[3] Here, Merck's motion for summary judgment based on the absence of any expert evidence that Vioxx caused Ms. Levitt to have a heart attack makes clear that it has not impliedly consented to the inclusion of different injuries in this action. Nor does the record contain any evidence that Merck knew that Ms. Levitt intended to abandon her heart attack claim, much less consented to such a change. On the contrary, following Ms. Levitt's withdrawal of Dr. Schapira, Merck's counsel repeatedly inquired how Ms. Levitt intended to prove causation without Dr. Schapira's testimony, inquiries that plaintiff's counsel simply ignored while insisting that expert discovery should continue. Merck MSJ at 7 n.7. And before that, Merck designated an expert, Dr. Craig M. Pratt, to refute Ms. Levitt's heart attack claim.

Ms. Levitt's opposition papers include three documents provided in discovery that she contends should have alerted Merck that her claimed injuries had changed: her ASPPF (unsigned), two paragraphs of Dr. David Egilman's 50-page expert report, and a 2009 *Lone Pine*

---

[3] Although Rule 15(b) by its terms applies only to amendments during and after trial, implied consent may exist at the summary judgment stage if *both parties* have "squarely litigated" an issue in summary judgment briefing. *Kelly v. Huzella*, 71 F.3d 878, 1995 WL 726544, at *3 n.4 (5th Cir. Nov. 16, 1995) (finding implied amendment when "parties squarely litigated [an issue] in their cross-motions for summary judgment").

report from a cardiologist who treated her from 2000 until 2002, Dr. Thomas Rosamond. Not surprisingly, Ms. Levitt cites no authority for her position that these documents modify the scope of her claim. Her argument ignores the rule that documents produced in discovery and other evidence cannot be the basis for amendment by consent until the defendant fails to object to their admission at trial, and even then "failing to object to evidence when the evidence is relevant to pleaded issues in the case" does not show consent. *Moody v. FMC Corp.*, 995 F. 3d 305, 995 F.2d 63, 66 (5th Cir. 1993). Moreover, Ms. Levitt makes no attempt to explain how any of the documents on which she relies are inconsistent with a continued pursuit of her alleged heart attack claim. For instance, the ASPPF specifically continues to assert MI as a primary injury and appears to elaborate on that claim by identifying certain procedures that resulted from that alleged event—stents and a CABG—procedures that are commonly associated with post-MI treatment. Accordingly, Ms. Levitt falls far short of the standard required to show amendment by implied consent.

At this very late stage of the proceedings Ms. Levitt cannot unilaterally amend her complaint. Since she has failed to adduce any of the required expert evidence to support her heart attack claim, summary judgment should be granted in Merck's favor.

Even if this Court were to allow Ms. Levitt to re-cast her claim to one of generic cardiovascular disease ("CAD"), Ms. Levitt has nonetheless still failed to produce the required expert evidence on specific causation. First, as to her former cardiologist Dr. Rosamond, he has not been properly designated on that point under the applicable provision of the Federal Rules, and thus he cannot offer opinions proffered here—opinions formed outside of the course of treating Ms. Levitt, seven years after her last appointment. Second, as to Dr. Egilman, the two conclusory paragraphs regarding CAD—out of a lengthy 230-paragraph, 50-page report

addressing broader issues of general causation, company conduct and business ethics—does not pass muster.[4]

Ms. Levitt's reliance in her Opposition on Dr. Rosamond's 2009 *Lone Pine* report is particularly surprising in light of her plain statement in her 2013 expert disclosure that any trial testimony from Dr. Rosamond would not be based on any report, and that Dr. Rosamond would provide "testimony consistent with [his] records." Pl. Opp'n, Ex. E, at 2.[5] Dr. Rosamond is the fifth physician listed under the heading bolded and underlined heading, "Experts for Whom Written Reports Have Not Been, And Will Not Be, Filed." *Id.* Because the 2009 letter makes clear that Dr. Rosamond's Vioxx opinion relies on facts other than those "known to the physician during the course of the care and treatment of the patient," Ms. Levitt can rely on his opinion only if Dr. Rosamond provides a formal report that complies with Rule 26(a)(2)(b).[6] *Benoit v. Nintendo of Am., Inc.*, Civ. A. No. 01-675, 2001 WL 1524510, at *2 (E.D. La. Nov. 28, 2001) (excluding opinion of treating physician insofar as it reached beyond those boundaries).[7]

---

[4] This Reply highlights some of the most glaring failures of the cited experts. Should this case survive Merck's motion for summary judgment, Merck will assert full *Daubert* challenges at the appropriate time.

[5] The *Lone Pine* "case-specific expert report is not a *Daubert* report. Rather, it is intended to be only a preliminary showing that a case potentially has merit . . . ." *In re Vioxx Prods. Liab. Litig.*, MDL No. 1657, 2012 WL 1398622, at *4 (E.D. La. Apr. 23, 2012).

[6] Ms. Levitt apparently assumes that Missouri state procedural rules govern the admissibility of Dr. Rosamond's opinions. Pl. Opp'n at 9–10. This is incorrect; federal law applies. *Simpson v. James*, 903 F.2d 372, 378 n.20 (5th Cir. 1990) (rejecting plaintiff's argument that Texas, rather than federal, procedural rules applied); *see also Brooks v. Am. Broad. Co.*, 999 F.2d 167, 173 (6th Cir. 1993) ("The admissibility of expert testimony is a matter of federal, rather than state, procedure."). Federal summary judgment standards also apply. *E.g.*, *Rosero v. Fuentes*, Civ. A. Nos. 1-10-85, 1-10-51, 2011 WL 4017871, at *2 (S.D. Tex. Sept. 8, 2011). Indeed, state procedural rules have never applied to this case, which was filed in federal court.

[7] *See also Cooper v. Wal-Mart Tansp., LLC*, Civ. A. No. H-08-0085, 2009 WL 290447, at *1 (S.D. Tex. Feb. 5, 2009) (Rosenthal, J.) ([D]istrict courts in this circuit agree that the

According to the 2009 letter, Dr. Rosamond's causation opinion was based in part on "what we *now* know *in retrospect* about Vioxx." Pl. Opp'n, Ex. D, at 1 (emphasis added). Dr. Rosamond's letter makes clear however, that Ms. Levitt was not a patient of Dr. Rosamond in 2009 when he rendered his opinion; the last time anyone in Dr. Rosamond's office had seen Ms. Levitt for an appointment was 2002. *Id.* at 2 ("It should be noted that we have not seen Ms. Levitt in followup since the year 2002 . . . ."). Thus, any opinion based on information obtained after treatment cannot be properly characterized as a treating physician opinion. *See, e.g.*, *Mohney v. USA Hockey, Inc.*, 138 F. App'x 804, 811 (6th Cir. 2005) (excluding non-retained treating physician's causation opinion when there was "no evidence that [he] reached the same conclusions regarding causation at the time he treated [the plaintiff]"). Neither the *Lone Pine* letter, nor the records obtained from Dr. Rosamond's office, Mid-America Cardiology, contain any hint that he believed when he was treating Ms. Levitt that her cardiovascular difficulties were related to her Vioxx use.[8]

---

treating-physician exception to the expert report requirement applies only when the treating physician's opinion testimony is based on personal knowledge obtained from examining and treating an individual. If the physician's opinion testimony is based on information learned outside the course of treatment, a written report is required."); *Kim v. Time Ins. Co.*, 267 F.R.D. 499, 502 (S.D. Tex. 2008) (Ellison, J.) ("[W]here a treating physician has prepared his opinions in anticipation of litigation or relies on sources other than those utilized in treatment, courts have found that the treating physician acts more like a retained expert . . . .").

[8]  Dr. Rosamond's 2009 opinion suffers from the additional flaw that it does not actually satisfy the applicable evidentiary burden. Ms. Levitt argues that Dr. Rosamond need only testify that it is "more likely than not" that Vioxx injured Ms. Levitt, rather than testify to "a reasonable degree of medical certainty." Pl. Opp'n at 10. But regardless of which standard applies, Dr. Rosamond's letter does not satisfy either one. His letter states only that it is "likely . . . that Vioxx likely contributed to her aggressive coronary artery presentation." Pl. Opp'n, Ex. D, at 1.

As to Dr. Egilman,[9] his two-paragraph causation statement falls well short of the requirement that his report contain a "complete statement of all opinions . . . and the basis and reasons for them," including "the facts or data considered by the witness in forming them." Fed. R. Civ. P. 26(a)(2)(B).[10] Dr. Egilman's report claims that both "Ms. Levitt's previous history of ASCVD and Vioxx contributed to the heart disease she suffered after taking Vioxx." Pl. Opp'n, Ex. F, at 11. However, his report does not disclose a proper methodology to reach this conclusion. For example, a valid methodology should not only *rule in* Vioxx as a potential cause of Ms. Levitt's injury; it must also *rule out* other causes. *Wagoner v. Exxon Mobil Corp.*, 813 F. Supp. 2d 771, 804 (E.D. La. 2011). Dr. Egilman's report purports to rule in the possibility that Vioxx caused Ms. Levitt by elevating her 10-year risk of heart disease, but his report does nothing to rule out other potential causes. His report acknowledges risk factors such as age, elevated cholesterol, and elevated blood pressure, but the report does not suggest that he ruled those risks out on the way to concluding that Vioxx contributed to Ms. Levitt's heart disease. Moreover, the report glosses over her 2-pack-per-day smoking history of 25 years (calling her a "non-current smoker"), *see contra* Merck MSJ at 3 n.2 (noting up to 22 percent increased risk to former smokers), and entirely ignores the family history of coronary artery disease, which Dr. Rosamond previously described, outside the context of litigation, as "widespread," Merck MSJ

---

[9]     Ms. Levitt does not dispute that Dr. Egilman offers no opinion that Vioxx caused her to have a heart attack.

[10]    In addition to his deficient report, it is clear that Dr. Egilman is testifying outside his field of expertise. Dr. Egilman's report and *curriculum vitae* disclose that he is an internist, not a cardiologist, with residencies in occupational health and internal medicine, but they disclose no previous experience treating patients with cardiovascular issues, much less assessing the cause of such issues. *See* Pl. Opp'n, Ex. F, at 1, 74; *Mable v. Navasota Indep. Sch. Dist.*, Civ. No. 4:09-cv-123, 2010 WL 2990951, at *3 (S.D. Tex. July 27, 2010) ("[T]estimony that goes beyond the scope of a treating physician's area of expertise does not meet the *Daubert* test for reliability and may be properly excluded.").

at 3. Dr. Egilman's failure to claim that he has ruled out these factors, much less explain how he has done so, renders his opinion unreliable.[11] To the extent that the plaintiff suggests that Merck could depose Dr. Egilman to find out if and how out he excluded these well-known risk factors or get other details supporting his opinion, that suggestion completely ignores the Federal Rules regarding expert reports. Dr. Egilman was obliged to furnish that information in his report, and his failure to do so renders his opinion inadmissible.[12]

---

[11] *See Guinn v. AstraZeneca Pharms. LP*, 602 F.3d 1245, 1253 (11th Cir. 2010) ("Although a reliable differential diagnosis need not rule out all possible alternative causes, it must at least consider other factors that could have been the sole cause of the plaintiff's injury."); *Best v. Lowe's Home Ctrs., Inc.*, 563 F.3d 171, 179 (6th Cir. 2009) (expert "must provide a reasonable explanation as to why he or she has concluded that any alternative cause suggested by the defense was not the sole cause" (alterations and internal quotation marks omitted)); *Lauzon v. Senco Prods., Inc.*, 270 F.3d 681, 694 (8th Cir. 2001) (stating an expert must "be able to explain why other conceivable causes are excludable"); *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 758 (3d Cir. 1994) ("[W]here a defendant points to a plausible alternative cause and the doctor offers no explanation for why he or she has concluded that was not the sole cause, that doctor's methodology is unreliable."); *In re Trasylol Prods. Liab. Litig.*, No. 08-MD-1928, 2013 WL 3353833, at *11 (S.D. Fla. July 3, 2013) (excluding plaintiff's expert who provided no "explanation for why he concluded that [the plaintiff's] various risk factors other than exposure to Trasylol were not the sole cause of his injuries").

[12] *See Bolton v. WJV Miss., Inc.*, No. 08-0310-WS-M, 2011 WL 206171, at *4 (S.D. Ala. Jan. 20, 2011) ("[T]he defendant argues that any harm to the plaintiff is its own fault, because he did not demand a supplemental report or depose Dr. Graham. The defendant would shift the responsibility for an inadequate report from itself to the plaintiff, forcing the plaintiff to ferret out what the defendant, in violating Rule 26(a)(2), failed to provide and penalizing the plaintiff for not rescuing the defendant from the consequences of its omission."); *New Colt Holding Corp. v. RJG Holdings of Fla., Inc.*, No. 3:02cv173 (PCD), 2003 WL 23508131, *1 n.2, (D. Conn. Aug. 11, 2003) ("As [expert] reports may obviate the need to depose the expert, defendant's standing argument, i.e., that plaintiffs may not move to exclude unless proposed experts are first deposed, is without merit"); *Bonesmo v. Nemours Found.*, 253 F. Supp. 2d 801, 811 (D. Del. 2003) ("Contrary to plaintiffs' argument, the opposing party is not required to depose the expert to develop what his opinion is or the reasons for it"); *SEC v. Lipson*, 46 F. Supp. 2d 758, 763 n.3 (N.D. Ill. 1999) ("One of the purposes of the expanded disclosure requirement for expert reports . . . was to provide in substance the expert's direct testimony at trial. This was intended to allow the opposing party, if he or she so chose, to dispense with the expert's deposition").

The remainder of Ms. Levitt's Opposition consists of attacks on Ms. Levitt's rheumatologist, Dr. Arnold Katz, and Merck's decisions about whom to depose in this case. These portions of her Opposition are irrelevant to the issue at hand: whether Ms. Levitt has come forth with sufficient evidence that Vioxx caused her to have heart attacks to survive summary judgment.  As to Dr. Katz, looking beyond the baseless, inflammatory accusations, his importance to the case is obvious.  Merck deposed Dr. Katz because he was the prescribing physician during almost the entire period when Ms. Levitt was taking Vioxx, including when she alleges she had heart attacks in 2000.[13]  Somewhat astonishingly, Ms. Levitt claims that Merck improperly deposed Dr. Katz twice without obtaining leave of court.  Pl. Opp'n at 5.  As the Court's Order extending discovery to allow for the continuation of Dr. Katz's deposition makes clear, the Court was informed "that the deposition of Dr. Arnold Katz . . . was begun, but will not be completed prior to the April 1 discovery deadline due to the doctor's scheduling constraints." (Rec. Doc. 64333, at 1.)  Not only was the Court aware that Merck had begun its deposition in one session and intended to continue the deposition in a second session, the Court granted an extension of the discovery deadline specifically to allow the continuation.  There is simply no basis for Ms. Levitt's allegation of misconduct, and tellingly, her Opposition does not even attempt to provide one.

Finally, Ms. Levitt's assertion that Merck's omission of some treating physicians from its deposition discovery should preclude summary judgment lacks any factual or legal basis.  *See* Pl. Opp'n at 11 (arguing that Merck's failure to conduct additional depositions should not lead to summary judgment because "Plaintiffs cardiologists and surgeons likely had opinions on her injuries.").  This argument is nothing more than an attempt to shift the burden of proof from

---

[13] The record also clearly shows that Dr. Katz made the independent decision to re-start Ms. Levitt on Vioxx.  But any such factual dispute is not material to this motion.

10

1158799v1

herself to Merck.  It is Ms. Levitt's obligation to show that expert evidence supports her claim.  Merck bears no burden to offer evidence at this stage; rather, its burden is satisfied "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Merck's motion for summary judgment pointed out that there is no expert evidence to support Ms. Levitt's claim that Vioxx caused her to have a heart attack.  Her Opposition points to no evidence to the contrary.  Accordingly, Merck is entitled to summary judgment on all claims.

Dated:  May 16, 2014                    Respectfully submitted,

By: */s/ Dorothy H. Wimberly*
    Phillip A. Wittmann, 13625
    Dorothy H. Wimberly, 18509
    STONE PIGMAN WALTHER
    WITTMANN L.L.C.
    546 Carondelet Street
    New Orleans, Louisiana 70130
    Phone: 504-581-3200
    Fax:    504-581-3361

Defendants' Liaison Counsel

—and—

Douglas R. Marvin
M. Elaine Horn
Jonathan L. Williams
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Phone: 202-434-5000
Fax:    202-434-5029

Attorneys for Merck Sharp & Dohme Corp.

1158799v1

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Reply in Support of Motion for Summary Judgment has been served on Liaison Counsel, Russ Herman, Ann B. Oldfather, and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8(B), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 16th day of May, 2014.

*/s/ Dorothy H. Wimberly*
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361
dwimberly@stonepigman.com

Defendants' Liaison Counsel

1158799v1