# EXHIBIT D

Date:       September 6, 2006

To:         Interested Parties

From:       William G. Bowen, Chairman of the Special Committee of
            Merck & Co., Inc.

Subject:    Report Concerning the Conduct of Senior Management in the
            Development and Marketing of Vioxx

---

In December 2004, a Special Committee of the Board of Directors of Merck & Co., Inc. retained The Honorable John S. Martin, Jr. of Debevoise & Plimpton LLP to undertake a thorough review of the conduct of senior management in connection with the development and marketing of Vioxx. Judge Martin and a team of lawyers from Debevoise have recently concluded an intensive and comprehensive 20-month investigation, during the course of which they interviewed 115 witnesses (including 100 present and former employees of Merck), reviewed millions of pages of documents and thousands of pages of deposition and trial testimony, and worked closely with a number of independent consultants. Judge Martin presented his findings to the full Board and, at the recommendation of the Special Committee, the Board has accepted Judge Martin's Report and has agreed that the full Report (including its 20 detailed Appendices comprising over 1400 pages) be made public.

The Board is reassured by the fact that, in reviewing numerous allegations of wrongdoing, the Martin Report concludes that management acted with integrity and had legitimate reasons for making the decisions that it made, in light of the knowledge available at the time.

Consistent with the Board's decision to publish the Martin Report, the Report and its Appendices will be available on the Debevoise & Plimpton and Merck Web sites beginning today at 5:00 p.m. We commend Judge Martin and his colleagues on the comprehensiveness and clarity of the Report, and we encourage interested parties to review in detail not only the Report itself but also the 20 Appendices that set out the facts supporting the conclusions that Judge Martin reached.

This entire experience is a reminder of the importance (as well as the difficulty) of balancing considerations of risk and benefit when developing new medicines intended to advance the health and well-being of people worldwide.

William G. Bowen

# EXHIBIT E

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX® | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| This document relates to | * | |
| All Government Actions and | * | MAG. JUDGE KNOWLES |
| All Private Third-Party Payor | * | |
| Cases | * | |
| | * | |

'* * * * * * * * * * * * * * * * * * * * *

PRETRIAL ORDER NO. 13C
(HIGHLY CONFIDENTIAL INFORMATION)

WHEREAS, certain documents and information have been and may be sought, produced or exhibited by and among the parties to the above-styled proceeding (the "Action") which relate to the parties' confidential and proprietary information that may be subject to protection under Fed. R. Civ. P. 26(c); and

WHEREAS, the parties have provided and will provide a significant amount of discovery materials in this Action and the parties agree that a protective order will facilitate a timely and efficient discovery process;

IT IS HEREBY STIPULATED AND AGREED, AND FOR GOOD CAUSE SHOWN, ORDERED THAT:

**Scope of Order**

1.     This Supplemental Protective Order shall govern all actions asserting Vioxx-related, private third-party payor claims and actions filed by or on behalf of any state, county, city, and/or other government entity (collectively, the "Action") and is intended to supplement this Court's Pretrial Order No. 13, entered May 24, 2005, and

Pretrial Order No. 13A, entered January 30, 2009, where discovery implicates "highly confidential" information as described herein.

2.     This Supplemental Protective Order applies to all documents, the information contained therein, and all other information produced or disclosed during these consolidated proceedings (the   "Action") whether revealed in a document, deposition, other testimony, discovery response or otherwise, by any party in this Action (the "Supplying Party") to any other party or parties (the "Receiving Party").

3.     Third parties who so elect may, by written notice to the parties in this Action, avail themselves of, and agree to be bound by, the terms and conditions of this Protective Order, and thereby become a Supplying Party for purposes of this Supplemental Protective Order.

4.     The entry of this Protective Order does not prevent any party from seeking a further order of this Court pursuant to Fed. R. Civ. P. 26(c).

5.     Nothing herein shall be construed to affect in any manner the admissibility at trial or any other court proceeding of any document, testimony, or other evidence.

**Highly Confidential Information**

6.     "Highly Confidential Information" as used herein means any information that the Supplying Party believes in good faith constitutes, reflects, discloses, or contains information subject to protection under Fed. R. Civ. P. 26(c), whether it is a document, information contained in a document, information revealed during a deposition or other testimony, information revealed in an interrogatory response, or information otherwise

2

revealed, and that contains highly sensitive and competitive information, the disclosure of which to persons other than those designated in this Supplemental Protective Order would pose a substantial risk of serious harm, economic or otherwise, to the Supplying Party. In designating discovery materials as Highly Confidential Information, the Supplying Party shall do so in good faith consistent with the provisions of this Supplemental Protective Order and the rulings of the Court.

7.    Specific documents and discovery responses produced by a Supplying Party shall be designated as Highly Confidential Information by marking the pages of the document that contain Confidential Information as follows: "HIGHLY CONFIDENTIAL — SUBJECT TO PROTECTIVE ORDER." Except as provided in Paragraphs 9 and 22, documents that do not bear the foregoing designation are not "Highly Confidential Information" as that term is used in this Order.

8.    Information, other than .tiff images, produced in electronic form (including but not limited to electronic files, databases, programs, tapes, discs or other electronic information) ("Electronic Material") not physically marked as otherwise required under Paragraphs 6 and 7 above, may be designated as Highly Confidential Information by marking the outside of the storage medium on which the information is produced or by making the designation in writing. The Receiving Party shall mark any hard copy print-outs and the storage medium of any permissible copies of Electronic Material designated as Highly Confidential Information with the appropriate "HIGHLY CONFIDENTIAL—SUBJECT TO PROTECTIVE ORDER" legend.

3

9.      Information disclosed at a deposition taken in connection with this Action may be designated as Highly Confidential Information by:

(a)      designating on the record during the taking of the deposition that the deposition, or some part of it, constitutes Highly Confidential Information and subsequently complying with the provisions of paragraph 9(b) of this Order; or

(b)      designating the portions of the transcript in a letter to be served on the court reporter and opposing counsel within thirty (30) calendar days of the Supplying Party's receipt of the transcript of a deposition.  The letter shall direct the court reporter to indicate the portions designated as Highly Confidential Information and segregate them as appropriate.  Designations of transcripts will apply to audio, video, or other recordings of the testimony.   For any deposition previously identified as containing Highly Confidential Information under Paragraph 9(a), the court reporter shall clearly mark any transcript released prior to the expiration of the 30-day period as "Highly Confidential-Subject to Further Confidentiality Review."  Such transcripts will be treated as Highly Confidential Information and shall be fully subject to this Supplemental Protective Order, until the expiration of the 30-days after the transcript was circulated by the court reporter.  If the Supplying Party does not serve a designation letter within the 30-day period, then the entire transcript will be deemed not to contain Highly Confidential Information.

10.      A party in this Action may designate as Highly Confidential Information any document or information produced, or testimony given, by any other person or entity that the party reasonably believes qualifies as such party's Highly Confidential

4

Information pursuant to this Supplemental Protective Order.  If any third party produces information that any party in good faith believes constitutes Highly Confidential Information, the party claiming confidentiality shall designate the information as such within thirty (30) days of its receipt of such information.   Any party receiving information from a third party shall treat such information as Highly Confidential Information pursuant to this Supplemental Protective Order during this 30-day period while all parties have an opportunity to review the information and determine if it should be designated as Highly Confidential.  Any party designating third party information as Highly Confidential shall have the same rights as a Supplying Party under this Order with respect to such information.

**Permissible Disclosure of Highly Confidential Information**

11.    The Receiving Party may disclose Highly Confidential Information  only to the following people:

(a)    Outside Counsel for Plaintiffs in the Action subject to this Order, including attorneys, paralegals, stenographic and clerical staff employed by such counsel who are working on the Action under the direction of such counsel and to whom it is necessary that the Highly Confidential Information be disclosed for purposes of the Action;

(b)    In-house attorneys for Plaintiffs who are primarily responsible for the litigation and prosecution of the Action.  In-house attorneys for Plaintiffs who are not responsible for the litigation and prosecution of the Action, including any in-house attorneys with business relationships with any Plaintiff or Merck or with any other day-

5

to-day interactions with any Plaintiff or Merck shall not have access to Highly Confidential Documents outside of those produced by the individual Plaintiff;

(c)     Outside counsel for Defendant Merck & Co., Inc. ("Merck"), including attorneys, paralegals, stenographic and clerical staff employed by such counsel who are working on the Action under the direction of such counsel and to whom it is necessary that the Highly Confidential Information be disclosed for purposes of the Action;

(d)     In-house attorneys for Merck who are primarily responsible for the litigation and defense of the Action.   In-house attorneys for Merck who are not responsible for the litigation and defense of the Action, including any in-house attorneys with business relationships with any Plaintiff or with any other day-to-day interactions with any Plaintiff shall not have access to Highly Confidential Documents outside of those produced by Merck;

(e)     The Court, provided that the Highly Confidential Information is filed under seal as set forth in Paragraph 26 below;

(f)     Stenographic employees and court reporters recording or transcribing testimony in this Action;

(g)     Any outside consultant or expert that has signed the certification described in Paragraph 14 and subject to Paragraph 15;

(h)     Any witness during a deposition, provided that such witness is provided with a copy of this Supplemental Protective Order and agrees on the record that

he or she is bound by the terms of this Order. Where a witness is a current or former employee, consultant to, or agent of another plaintiff or third party that engages in the same or substantially similar business activities to the entity to which the Highly Confidential Information relates, the parties shall meet and confer on an appropriate deposition protocol that protects Highly Confidential information.

12. Subject to the restrictions imposed by Paragraph 11(h), if after a deposition is noticed, the Supplying Party objects to Highly Confidential Information being shown to that witness during a deposition, the Supplying Party shall attempt to confer with counsel to resolve the issue. If counsel are unable to resolve the issue themselves, counsel may seek an order from the Court prohibiting or limiting such use or for other relief. Where Highly Confidential Information is shown to a deponent during a deposition, such document(s) or information will remain Highly Confidential and the deposition transcript will be designated accordingly.

13. Before disclosing any Highly Confidential Information to any person as permitted by this Order (other than the Court and its staff), such person shall be provided with a copy of this Supplemental Protective Order, which he or she shall read. Upon reading this Order, such person shall sign a Certification, in the form annexed hereto as Exhibit A, acknowledging that he or she has read this Supplemental Protective Order and shall abide by its terms. These certifications are strictly confidential. Counsel for each party shall maintain the certifications without giving copies to the other side. The parties expressly agree, and it is hereby ordered that, except in the event of a violation of this Order, they will make no attempt to seek copies of the certifications or to determine the identities of persons signing them. If the Court finds that any disclosure is necessary to

7

investigate a violation of this Order, the disclosure will be limited to outside counsel only and outside counsel shall not disclose any information to their clients that could tend to identify any certification signatory unless and until there is specific evidence that a particular signatory may have violated the Order, in which case limited disclosure may be made with respect to that signatory.   Persons who come into contact with Highly Confidential Information for clerical or administrative purposes, and who do not retain copies or extracts thereof, are not required to execute Certifications.

14.   Before disclosing Highly Confidential Information to any person who is not enumerated in ¶11(a)-(h), the party wishing to make such disclosure shall give at least ten (10) days advance notice in writing to the counsel for the party who designated such information as Highly Confidential, providing the counsel who designated such information as Highly Confidential with information concerning the proposed recipient that does not identify the proposed recipient but is sufficient to permit an informed decision to be made with respect to any potential objection. If there is no consent to the disclosure within ten (10) days, the party wishing to make the disclosure may submit the information to the Court for a determination of whether the disclosure may be made. The objecting party will have opportunities to (1) request that the Court direct the party wishing to make disclosure to produce additional information about the proposed recipient and (2) submit such papers and argument as it may feel necessary to allow the Court to make an informed decision.  If a motion is filed objecting to the proposed disclosure, the designated document or item shall not be disclosed unless and until ten days have elapsed after the appeal period from a Court order denying the motion. Because only the party seeking to make the disclosure may know who the proposed

8

recipient is, it is the responsibility of the party seeking to make the disclosure to determine prior to making any disclosure whether the proposed recipient is a person described in this Paragraph.

15.    Disclosure of Highly Confidential Information beyond the terms of this Supplemental Protective Order may be made only if the Supplying Party designating the material as Highly Confidential Information consents in writing to such disclosure, or if the Court, after reasonable notice to all affected parties, orders such disclosure.

### Use of Highly Confidential Information

16.    The Receiving Party, and any other persons having knowledge of Highly Confidential Information by virtue of their participation in this Action, or by virtue of obtaining documents produced or disclosed in this Action pursuant to this Supplemental Protective Order, shall use such Highly Confidential Information only as permitted herein.

17.    This Supplemental Protective Order does not address the offering of Highly Confidential Information in evidence at trial or any court hearing, but nothing contained in this Order shall preclude any party from moving the Court at an appropriate time for an order that the evidence be received *in camera* or under other conditions to prevent unnecessary disclosure

18.    Nothing contained in this Supplemental Protective Order shall preclude any party from using its own Highly Confidential Information in any manner it sees fit, without prior consent of any party or the Court.

**Protection of Highly Confidential Information**

19.    Counsel shall take all reasonable and necessary steps to assure the security of any Highly Confidential Information and limit access to those persons authorized by this Order.

20.    Any party that is served with a subpoena or other notice compelling the production of discovery materials produced by another party must immediately give written notice of such subpoena or other notice to the original Supplying Party. Upon receiving such notice, the original Supplying Party shall bear the burden of opposing, if it deems appropriate, the subpoena on grounds of confidentiality.

21.    If a Receiving Party learns of any unauthorized disclosure of Highly Confidential Information, it shall immediately upon learning of such disclosure (a) inform the Supplying Party in writing of all pertinent facts relating to such disclosure; (b) make all reasonable efforts to prevent disclosure by each unauthorized person who received such information; and (c) make its best efforts to retrieve copies of the Highly Confidential Information.

22.    Upon the conclusion of any attorney's last case in this Action, including any appeals related thereto, at the written request and option of the Supplying Party, all discovery materials produced by the Supplying Party and any and all copies, summaries, notes, compilations (electronic or otherwise), and memoranda related thereto, shall be returned within thirty (30) calendar days to the Supplying Party, provided, however, that counsel may retain their privileged communications, work product, certifications pursuant to Paragraph 13, and all court-filed documents even though they contain

10

discovery materials produced by the Supplying Party, but such retained privileged communications and work product and court-filed documents shall remain subject to the terms of this Supplemental Protective Order. At the written request of the Supplying Party, any person or entity having custody or control of recordings, notes, memoranda, summaries or other written materials, and all copies thereof, relating to or containing discovery materials produced by the Supplying Party shall deliver to the Supplying Party an affidavit certifying that reasonable efforts have been made to assure that all such discovery materials produced by the Supplying Party and any copies thereof, any and all records, notes, memoranda, summaries, or other written material regarding the discovery materials produced by the Supplying Party (except for privileged communications, work product and court-filed documents as stated above) have been delivered to the Supplying Party in accordance with the terms of this Supplemental Protective Order.

### Changes in Designation of Information

23.     Inadvertent production of any document or information without a designation of confidentiality will not be deemed to waive a later claim to its Highly Confidential nature or preclude the Supplying Party from designating such document or information as Highly Confidential Information at a later date.

24.     Any Supplying Party may designate as Highly Confidential Information, or withdraw a such a designation from, any material that it has produced. Such re-designation shall be accomplished by notifying counsel for each party in writing of such re-designation and simultaneously producing a re-designated copy of such material. Upon receipt of any re-designation that designates material as Highly Confidential Information, the Receiving Party shall: (a) treat such material in accordance with this

11

Order; (b) take reasonable steps to notify any persons known to have possession of any such material of the re-designation under this Supplemental Protective Order; and (c) promptly endeavor to retrieve all copies of such material from any persons known to have possession of such material who are not authorized to receive it under this Order.

25.     Any party may object to the propriety of the designation (or re-designation) of specific material as Highly Confidential Information by serving a written objection upon the Supplying Party's counsel.  The Supplying Party or its counsel shall thereafter, within ten (10) calendar days, respond (by hand-delivery or facsimile transmission) to such objection in writing by either:   (i) agreeing to remove the designation; or (ii) stating the reasons for such designation.  If the Objecting Party and the Supplying Party are subsequently unable to agree upon the terms and conditions of disclosure for the material(s) in issue, the document will have its designation removed unless within thirty (30) days after written notice that the parties' negotiations are ended, the Supplying Party moves the Court for an order upholding the designation.  Counsel may agree to reasonable extensions of the thirty (30) day period, if necessary.  On such a motion, the Supplying Party shall have the burden of proving that the material is entitled to protection as Highly Confidential Information under applicable law.  The material(s) in issue shall continue to be treated in the manner as designated by the Supplying Party until the Court orders otherwise.  A Receiving Party does not waive its right to challenge a Highly Confidential Information designation by electing not to raise a challenge promptly after the original designation is disclosed and may challenge a designation at such time as the Receiving Party deems appropriate.

**Filing Papers in Court Records**

26.     The Parties will use the following procedure for submitting to the Court papers consisting of, relating to, containing, incorporating, reflecting, describing, or attaching Highly Confidential Information: any such material shall be filed in a sealed envelope, labeled with the case name, case number, the motion to which the documents relate, and a listing of the titles of the documents in the envelope (such titles not to reveal Highly Confidential Information), and shall bear the legend:   THIS DOCUMENT CONTAINS HIGHLY CONFIDENTIAL INFORMATION COVERED BY A PROTECTIVE ORDER OF THE COURT AND IS SUBMITTED UNDER SEAL PURSUANT TO THAT PROTECTIVE ORDER.  THE CONFIDENTIAL CONTENTS OF THIS DOCUMENT MAY NOT BE DISCLOSED WITHOUT EXPRESS ORDER OF THE COURT.  Such material shall be kept under seal until further order of the Court; however, such materials shall be available to the Court, and to all persons entitled to receive such information under the terms of this Order.  The parties shall take reasonable steps to minimize such sealing.

27.     When submitting Highly Confidential Information pursuant to the previous Paragraph, the submitting party shall submit, to the extent reasonably possible, only those pages of the deposition transcript, document, or other matter containing Highly Confidential Information that are cited, referred to, or relied on by the submitting party.

28.     Use of Highly Confidential Information at trial shall be determined by subsequent agreement of the parties or order of this Court.

**Miscellaneous Provisions**

29.     It is expressly understood by and between the parties that in producing Highly Confidential Information in this litigation, the parties shall be relying upon the terms and conditions of this Supplemental Protective Order.

30.     No provisions of this Supplemental Protective Order shall restrict any party's counsel from rendering advice to its clients with respect to this Action and, in the course thereof, relying upon Highly Confidential Information, provided that in rendering such advise, counsel shall not disclose any other party's Highly Confidential Information other than in a manner provided for in this Supplemental Protective Order.

31.     By written agreement of the parties, or upon motion and order of the Court, the terms of this Supplemental Protective Order may be amended or modified. This Order shall continue in force until amended or superseded by express order of the Court, and shall survive any final judgment or settlement in this Action.

32.     Highly Confidential Information shall not be disclosed to anyone except as provided herein, and the contents thereof shall not be used for any regulatory, business, commercial or competitive purpose.   Any use of Highly Confidential Information other than as permitted herein will be deemed a violation of this Supplemental Protective Order, and may be subject to sanctions or other applicable penalties under the law.

14

33.    Defendants shall produce a confidentiality log or logs consistent with this

order and Paragraph 26 of Pretrial Order No. 13.

New Orleans, Louisiana, this 19th day of May, 2009.

_____
Honorable Eldon E. Fallon
United States District Court Judge

15

EXHIBIT A

## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX® | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| This document relates to | * | |
| All Government Actions and | * | MAG. JUDGE KNOWLES |
| All Private Third-Party Payor | * | |
| Cases | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### CERTIFICATION

I hereby certify that I have read the Supplemental Protective Order entered in the above captioned action and that I understand the terms thereof.

I agree to be bound by the Supplemental Protective Order.

I further agree to submit to the jurisdiction of this Court for the purposes of enforcing the Supplemental Protective Order, and I understand that the Court may impose sanctions on me for any violation of the Supplemental Protective Order.

I understand that these certifications are strictly confidential, that counsel for each party are maintaining the certifications without giving copies to the other side, and that the parties expressly agreed and the Court ordered that, except in the event of a violation of this order, the parties will make no attempt to seek copies of the certifications or to

determine the identities of the persons signing them. I further understand that if the Court finds that any disclosure is necessary to investigate a violation of this Order, the disclosure will be limited to outside counsel only and outside counsel shall not disclose any information to their client that could tend to identify any certification signatory unless and until there is specific evidence that a particular signatory may have violated the Order, in which case limited disclosure may be made with respect to that signatory.

Date: 3/13/12

_____
(Signature)

Name: J.W. Steele
_____
(Typed or Printed)

2

# EXHIBIT F

Report of John S. Martin, Jr. to the Special Committee
of the Board of Directors of Merck & Co., Inc.
Concerning the Conduct of Senior Management
in the Development and Marketing of Vioxx

September 5, 2006
Debevoise & Plimpton LLP

## **INTRODUCTION**

This Report arises from Merck's announcement on September 30, 2004 that it
was voluntarily withdrawing Vioxx from the market in light of new data from a Merck-
sponsored clinical trial suggesting that Vioxx increased patients' relative risk of
cardiovascular adverse events (such as heart attacks and strokes) after 18 months of
continuous use.  Merck's voluntary withdrawal of Vioxx – a widely used prescription
pain medication – triggered immediate, extensive and often negative comments in the
media and in personal injury cases against the Company suggesting that members of the
Company's senior management were aware that Vioxx posed serious cardiovascular risks
to patients and deliberately hid this fact from the public.

As described below, a Special Committee of the Board of Directors of Merck
commissioned The Honorable John S. Martin, Jr., Of Counsel to Debevoise & Plimpton
LLP, to conduct an independent investigation of senior management's conduct with
respect to the cardiovascular safety profile of Vioxx during the period that Vioxx was
developed and marketed.[1]  Judge Martin and a team of lawyers and paralegals from
Debevoise (collectively "Debevoise") spent over 53,000 hours conducting the
investigation over a period of approximately twenty months.

In attempting to present the results of the investigation in a manner that is both
concise and comprehensive, we have determined that it is best to limit the body of this

---

[1]     Prior to joining the litigation department of Debevoise in 2003, Judge Martin, among various other
positions, served for thirteen years as a United States District Judge for the Southern District of New
York and for three years as the United States Attorney for the Southern District of New York.

# EXHIBIT G

 **MERCK**

# Statement

### Merck & Co., Inc. Statement regarding the Martin Report

WHITEHOUSE STATION, N.J., Sept. 6, 2006 – We commend the Special Committee and Judge Martin for conducting a comprehensive, independent and objective investigation of the development and marketing of Vioxx. Throughout the entire process, we have cooperated fully with Judge Martin and his team.

After an exhaustive review, the final report confirms what we at Merck have always believed—that there is no basis for the claim that Merck knowingly put patients at risk of cardiovascular events. The report also concludes that no member of Merck's senior management, including the senior scientists at Merck Research Labs, believed that Vioxx was prothrombotic or attempted to mislead the public. In short, Judge Martin found the Merck scientists to be highly skilled and dedicated professionals who acted in good faith.

It is to be expected that such an intense evaluation of events that took place over many years would lead to some criticisms. Some we have already addressed. For others, we will consider carefully the criticism and the facts underlying it and determine whether action is appropriate to address it.

Merck has a proud legacy of both scientific excellence and adherence to high ethical standards. We are committed to acting ethically, responsibly and, above all, with integrity.

**About Merck**

Merck & Co., Inc. is a global research-driven pharmaceutical company dedicated to putting patients first. Established in 1891, Merck currently discovers, develops, manufactures and markets vaccines and medicines to address unmet medical needs. The Company devotes extensive efforts to increase access to medicines through far-reaching programs that not only donate Merck medicines but help deliver them to the people who need them. Merck also publishes unbiased health information as a not-for-profit service. For more information, visit www.merck.com.

- more -

**Forward-Looking Statement**

This statement contains "forward-looking statements" as that term is defined in the Private Securities Litigation Reform Act of 1995. These statements are based on management's current expectations and involve risks and uncertainties, which may cause results to differ materially from those set forth in the statements. The forward-looking statements may include statements regarding product development, product potential or financial performance. No forward-looking statement can be guaranteed, and actual results may differ materially from those projected. Merck undertakes no obligation to publicly update any forward-looking statement, whether as a result of new information, future events, or otherwise. Forward-looking statements in this statement should be evaluated together with the many uncertainties that affect Merck's business, particularly those mentioned in the cautionary statements in Item 1 of Merck's Form 10-K for the year ended Dec. 31, 2005, and in its periodic reports on Form 10-Q and Form 8-K, which the Company incorporates by reference.

# # #

# EXHIBIT H

Confidential - Subject to Protective Order

Page 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In re:  VIOXX Products          )
   Liability Litigation         )
                                )   MDL No. 1657
This Document Relates to:       )   Section L
                                )
   State of Alaska v.           )   Deposition of:
   Merck & Co., Inc.,           )
   3:06-CV-00018                )   RICHARD B.
                                )   GREMILLION, M.D.
   State of Montana v.          )
   Merck & Co., Inc.,           )   CONFIDENTIAL
   2:06-CV-04302                )

January 23, 2014
9:08 a.m.

Location:  Parr Brown Gee & Loveless
185 South State Street, Suite 800
Salt Lake City, UT  84111

Reporter:  Teri Hansen Cronenwett
Certified Realtime Reporter, Registered Merit Reporter

Confidential - Subject to Protective Order

Page 150

1    A.  Same month.
2    Q.  Thank you.  Now, do you think Dr. Petrono,
3  Dr. Petrono, actually held that belief?
4    MR. TOMASELLI:  Object to form.
5    A.  Not knowing him, I, I wouldn't be able to say
6  if he's an honest man or not.  But we have to assume
7  that he's putting his beliefs in this statement that he
8  has made.
9    Q.  (By Mr. Lougee)  Okay.  We are going to --
10  let's see, hand you Exhibit 61.  Is that 61 and 62
11  there?  Okay.  Can you read those for -- read those so
12  you can --
13    A.  You would like me to read both 61 and 62.
14    Q.  Right, just to save us a little time.
15    MR. TOMASELLI:  Just for the record, Exhibit
16  61 appears to be a document with a few e-mails on it,
17  the top one dated March 28 of 2000.  Exhibit 62 appears
18  to be an e-mail with a date of June 20, 2000.
19    Q.  (By Mr. Lougee)  And also bear the markings of
20  the Merck New Jersey production, Merck-NJ 0189508 and
21  Merck ADL 00545591.
22    A.  Okay.
23    MR. LOUGEE:  Okay.  I note for the court
24  reporter that I believe these two e-mails are still
25  subject to a confidentiality order.  And so, you know,

Page 151

1  if you would...
2    MR. TOMASELLI:  Well, I think the whole
3  deposition is under confidentiality order.
4    MR. LOUGEE:  I would agree with that.  But I,
5  I just want to make sure I, I mean, I don't think we
6  have done anything else that has the confidentiality
7  stamps on it so...
8    MR. TOMASELLI:  I mean, I was under the -- I
9  think we all are under the understanding that the
10  deposition is confidential.  So we'll just go with that.
11    MR. LOUGEE:  Okay.
12    MR. TOMASELLI:  Yeah.
13    MR. LOUGEE:  That's fine.
14    Q.  (By Mr. Lougee)  Looking at Exhibit 61, and we
15  don't have to, to go through the e-mail string.  Let's
16  just look at the bottom one.  It's from a fellow in
17  Italy whose name I would not attempt to pronounce, but
18  it's sent to, among other people, Alise Reicin.  Do you
19  see that, Doctor?
20    A.  Yes.
21    Q.  Okay.  And it's a -- it recounts -- this, this
22  document was produced by Merck in prior litigation, and
23  you can see the stamps on that.  But I -- he's
24  recounting a conversation with Carlo -- Carlo Petrono,
25  Dr. Petrono, and the essence of the conversation, I

Page 152

1  think, is in the second paragraph.
2    And after you have read that second paragraph,
3  would -- if this is an accurate representation of the
4  conversation, it would appear that Dr. Petrono doesn't
5  believe in the naproxen theory.  Is that correct or is
6  that your understanding?
7    MR. TOMASELLI:  Object to form, multiple
8  questions, calls for speculation.
9    A.  After reading this, it seems to me like
10  Dr. Petrono really doesn't have an opinion as to how
11  this could have happened because it mentions that a few
12  things that he thinks aren't possibilities, but nothing
13  that he thinks is something that could be proven.
14    Q.  (By Mr. Lougee)  Okay.  He said he does not
15  think the CV effect that we observed can be attributed
16  to naproxen for a couple of good reasons.  He's talking
17  about naproxen, is he not?
18    MR. TOMASELLI:  Object to form, calls for
19  speculation.
20    A.  In this e-mail he is writing about naproxen,
21  yes.
22    Q.  (By Mr. Lougee)  Okay.  "First there is a weak
23  pharmacological basis and no epidemiological evidence."
24  He says that about naproxen?
25    A.  That's what he says, yes.

Page 153

1    Q.  Yeah, and continuing that sentence, "For CV
2  protection associated with conventional NSAIDs."  That's
3  what he says; is it not?
4    A.  Yes.
5    Q.  Let's see.  "Additionally the magnitude of the
6  effect would not be plausible."  That's what he says,
7  doesn't he?
8    A.  That's what he says.
9    Q.  "Even if the comparator had been aspirin."
10  That's what he says?
11    A.  That's what he says, yes.
12    Q.  And I think that's all I want to do with that.
13  Let me go back to -- do you have the Baron article?  You
14  had it there earlier.
15    A.  So we're now done with 62 as well?
16    Q.  Yes, 61 and 62 we're done with.
17    MR. TOMASELLI:  Baron was?
18    MR. LOUGEE:  No. 10.
19    MR. TOMASELLI:  10, okay.  Yes.
20    Q.  (By Mr. Lougee)  No. 10.  After having
21  reviewed that, does Dr. Baron express the opinion that
22  the effects of Vioxx linger after one year?
23    MR. TOMASELLI:  Object to form.  It's vague.
24    A.  Well, really what I conclude from this is that
25  after one year there was a nonsignificant increase in

Golkow Technologies, Inc. - 1.877.370.DEPS

cca31db-2b72-4fa4-a7f3-91026493edee

# EXHIBIT I




Restricted
Confidential
Limited access
Public Health Service

**DEPARTMENT OF HEALTH & HUMAN SERVICES**

Food and Drug Administration
Rockville, MD  20857

IND 59,222

**FULL CLINCIAL HOLD**

Merck Research Laboratories
Attention: Dennis M. Erb, Ph.D.
Executive Director, Regulatory Affairs
Merck Research Laboratories
P.O. Box 4, BLA-20
Sumneytown Pike
West Point, PA  19486

DENNIS M. ERB

OCT    2004

REGULATORY AFFAIRS

Dear Dr. Erb:

Please refer to your Investigational New Drug Application (IND) submitted November 5, 1999, received November 8, 1999, under section 505(i) of the Federal Food, Drug, and Cosmetic Act for Vioxx (rofecoxib) Tablets.

We also refer to the meeting between representatives of Merck and representatives of the FDA on September 28, 2004 during which you indicated that you would remove Vioxx from the market worldwide and that you would withdraw all IND studies involving Vioxx due to thrombotic adverse events including Myocardial Infarction and Stroke, seen in patients enrolled in a clinical trial under this IND. At that meeting you were notified that the IND studies you are conducting with Vioxx are on clinical hold under 21 CFR 312.42(b) and may not progress. The following are the specific deficiencies.

There are unreasonable and significant risks of illness or injury to human subjects. Specifically, your data indicate that there is a two-fold increase in cardiovascular adverse events in patients receiving Vioxx under protocol #122 titled, "A Multicenter, Randomized, Parallel Group, Placebo-Controlled, Double-Blind Study with In-House Blinding to Determine the effect of 156 weeks of treatment with Rofecoxib on the Recurrence of Neoplastic Polyps of the Large Bowel in Patients with a History of Colorectal Adenoma". Therefore, you may not legally conduct clinical studies under this IND.

Correspondence to this IND can be sent to the following address:

U.S. Postal Service/Courier/Overnight Mail:
Food and Drug Administration
Center for Drug Evaluation and Research
Division of Gastrointestinal & Coagulation Drug Products, HFD-180
Attention:  Division Document Room, 8B-45
5600 Fishers Lane
Rockville, Maryland  20857

MRK-AID0007283

IND 59,222
Page 2



Restricted
Confidential
limited access

If you have any questions, call Monika Houstoun, Regulatory Project Manager, at
(301) 827-9333.

Sincerely,

*[See appended electronic signature page]*

Joyce Korvick, M.D., M.P.H.
Acting Director
Division of Gastrointestinal and
 Coagulation Drug Products
Office of Drug Evaluation III
Center for Drug Evaluation and Research

MRK-AID0007284



Restricted
Confidential
limited access

---

This is a representation of an electronic record that was signed electronically and
this page is the manifestation of the electronic signature.

---

/s/
---------------------
Joyce Korvick
10/1/04 05:45:22 PM

MRK-AID0007285