1  BRIAN KABATECK, ESQ., SBN 152054
   RICHARD KELLNER, ESQ., SBN 171416
2  KABATECK BROWN KELLNER LLP
   350 S. Grand Ave., 39th Floor
3  Los Angeles, CA 90071
   Telephone:    (213) 217-5000
4  Facsimile:     (213) 217-5010
   email:  bsk@kbklawyers.com
5
   SHAWN KHORRAMI, ESQ., SBN 180411
6  BAHAR DEJBAN, ESQ., SBN 240135
   LAW OFFICES OF SHAWN KHORRAMI
7  14550 Haynes Street, Third Floor
   Van Nuys, CA  91411
8  Telephone:    (818) 947-5111
   Facsimile:     (818) 947-5121
9  email:  skhorrami@khorrami.com

10

11 Attorneys for Plaintiffs

12

13 **SUPERIOR COURT FOR THE STATE OF CALIFORNIA**
   **COUNTY OF LOS ANGELES**

14 Coordination Proceeding
   Special Title (Rule 1550(b))
15
   VIOXX® CASES
16 _____

17 SHELLY ARNOLD, an individual; DONALD        )   Case No.  **BC358531**
   AURELL, an individual; JOHN L. BABCOCK      )
18 Jr., an individual; JERRI BARNES, an        )   **COMPLAINT FOR DAMAGES**
   individual; STEPHEN BARNES, an individual;  )
19 ROBERT WADE BUCHANAN, an individual;        )   1.   **NEGLIGENCE**
   WILLIAM BURG, an individual; JEANNE         )   2.   **STRICT PRODUCT LIABILITY -**
20 CALHOUN, an individual; LOUIS               )        **FAILURE TO WARN**
   CHOINIERE, an individual; CHARLOTTE         )   3.   **BREACH OF EXPRESS**
21 COSTLEY, an individual; ROBERT              )        **WARRANTY**
   CRAWFORD, an individual; JIMMY DAVIS,       )   4.   **BREACH OF IMPLIED**
22 an individual; MOZZIZ DEWALT, an            )        **WARRANTY**
   individual; JOY DUBLIN, an individual; OPAL )   5.   **NEGLIGENT**
23 EDMISTEN, an individual; BOBBY E.           )        **MISREPRESENTATION**
   FINCH, an individual; LAIRD GAYLOR, an      )   6.   **FRAUD**
24 individual; RICK GILLEAN, an individual;    )
   FRANCISCA GONZALEZ, an individual;          )
25 PATRICIA GRIMALDI, an individual;           )
   DEBORAH HALL, an individual; JAMSHID        )   **DEMAND FOR JURY TRIAL**
26 HEKMAT, an individual; ARTURO               )
   HERNANDEZ, an individual; BARBARA           )
27 HICKMAN, an individual; JOHNNIE ANN         )
   HOLLINS-BURKE, an individual; EDWARD        )
28 HOLLOWAY, an individual; CECIL              )

_____

COMPLAINT FOR DAMAGES

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

SEP 1 4 2006

John A. Clarke, Executive Officer/Clerk
By_____ Deputy

WCS&R

SEP 1 9 2006

RECEIVED

| | | |
|---|---|---|
| 1 | HUGHES, an individual; ROBERT HUGHES, an individual; MARITI JONES, an individual; | ) |
| 2 | STEPHANIE JONES, an individual; KEN KINARED, an individual; KATE KING, an | ) |
| 3 | individual; PEGGY LORCH, an individual; DARRYL LYLE, an individual; DAVID | ) |
| 4 | MCNEAL, an individual; ADAM MCTEER, an individual; EDWARD MISENER, an individual; | ) |
| 5 | JUANITA MOSHER, an individual; MARY NEUBAUER, an individual; JEREMIAH | ) |
| 6 | NGENGI, an individual; ANTHONY ORFANIDES, an individual; SCOTT | ) |
| 7 | PATTERSON, an individual; NECTOR RIOS, an individual; PAT ROBINSON, an individual; | ) |
| 8 | ELLA SCOTT, an individual; DICK SMITH, an individual; WILLIAM T. SMITH, an | ) |
| 9 | individual; WILLIAM STRIBLING, an individual; JANICE TAPLEY, an individual; | ) |
| 10 | DARRELL TURNER, an individual; EDGAR CHARLES WALL JR., an individual; | ) |
| 11 | CHRISTINE WINSTON, an individual; | ) |

| | | |
|---|---|---|
| 12 | Plaintiffs | ) |
| 13 | v. | ) |
| 14 | MERCK & CO., INC., a New Jersey Corporation; MCKESSON CORP., and | ) |
| 15 | DOES 1 through 500, inclusive, | ) |
| 16 | | ) |
| | Defendants | ) |
| 17 | | ) |

18    / / /

19    / / /

20    / / /

21    / / /

22    / / /

23    / / /

24    / / /

25    / / /

26    / / /

27    / / /

28

2

COMPLAINT FOR DAMAGES

M009B01806

1  Plaintiffs make the following allegations to support this complaint:

2  **INTRODUCTION**

3       1.       Plaintiffs are all individuals who have consumed Defendant Merck's prescription

4  drug, Vioxx.  Each Plaintiff herein has suffered injuries, including, heart attack and heart failure,

5  chest pains, stroke, blood clots, ulcers, kidney damage and or liver damage, among other

6  injuries, that they allege on information and belief were caused by Defendant's product.

7       2.       Defendant MERCK & CO. INC., (hereinafter "Merck") fraudulently induced

8  consumers to purchase its pharmaceutical Vioxx (also known as Rofecoxib) by advertising

9  nonexistent benefits and concealing and trivializing known deadly and life altering risks.

10      3.       Defendant McKesson Corp. (hereinafter "McKesson") distributed and sold

11  Vioxx in and throughout the State of California, including Los Angeles County.

12      4.       Vioxx is a selective cox-2 inhibitor, a non-steroidal anti-inflammatory drug

13  (NSAID), that is not in the class of "life saving" drugs.  Instead it is a so called "super aspirin"

14  intended to treat chronic pain associated with osteoarthritis, and general short term pain.  In

15  May of 1999, the FDA approved Vioxx to provide treatment of chronic and short term pain.

16  After its approval, clinical trials showed that Vioxx could cause serious side effects unknown to

17  most consumers and physicians.  However, not until September 30, 2004, did Merck take any

18  action to inform or warn consumers or physicians – and only then, it did so by taking Vioxx off

19  the market.

20      5.       Merck used overly aggressive marketing tactics in order to exaggerate Vioxx's

21  benefits.  In heavy competition with the then recently FDA approved "Celebrex," Merck rushed

22  through clinical trials to get Vioxx onto the market.  Merck ignored flaws in the original clinical

23  studies in hopes to gain FDA approval.  Merck saturated the market with false, deceptive and

24  fraudulent information about Vioxx.

25      6.       In April 2002, the Food and Drug Administration ordered Merck to change its

26  labeling information to include warnings of the potential and serious side effects of Vioxx.  At this

27  point, Merck had continued to market the drug Vioxx as being free of the side effects usually

28  associated with non-steroidal anti-inflammatory medications.  Many clinical studies conducted

3

---

COMPLAINT FOR DAMAGES

1  after Vioxx was put on the market indicated otherwise. Side effects such as cardiovascular

2  events, myocardial infarctions, stomach disorders, intestinal bleeding and liver and kidney

3  problems are just a few of the more serious side effects associated with the consumption of

4  Vioxx. More disconcerting is the fact that these side effects become more probable with long

5  term consumption of the drug and can occur without any warning whatsoever.

6        7. On or about September 30, 2004, Defendant pulled Vioxx from the market

7  after a safety monitoring board overseeing a study of the drug recommended that the study be

8  halted because of an increased risk of serious cardiovascular events, including heart attacks and

9  strokes, among study patients taking Vioxx compared to patients receiving placebo. Defendant

10 is currently being criminally investigated by the Justice Department relating to its handling of

11 Vioxx.

12                               **JURISDICTION AND VENUE**

13       8. The California Superior Court has jurisdiction over this action pursuant to

14 California Constitution Article VI, Section 10, which grants the Superior Court "original

15 jurisdiction in all causes except those given by statute to other trial courts." The Statutes under

16 which this action is brought do not specify any other basis for jurisdiction.

17       9. The California Superior Court has jurisdiction over all Defendants because,

18 based on information and belief, each is a corporation and/or entity and/or person organized

19 under the laws of the State of California, a foreign corporation or association authorized to do

20 business in California and registered with the California Secretary of State or that has sufficient

21 minimum contacts in California, is a citizen of California, does sufficient business in California, or

22 otherwise intentionally avails itself of the California market so as to render the exercise of

23 jurisdiction over it by the California courts consistent with traditional notions of fair play and

24 substantial justice.

25       10. Venue is proper in this court pursuant to California Code of Civil Procedure

26 section 395 in that the case concerns acts that have taken place within the County of Los

27 Angeles and one or more Plaintiffs are residents of Los Angeles County.

28       11. Furthermore Defendants Merck and McKesson have purposefully availed

4

COMPLAINT FOR DAMAGES

M009B01808

themselves of the benefits and the protections of the laws within the State of California and within Los Angeles County.  Defendant McKesson has its principal place of business within the state.  Defendants Merck and McKesson have had sufficient contact such that the exercise of jurisdiction would be consistent with traditional notions of fair play and substantial justice.

12.     Plaintiffs each individually seek relief that is within the jurisdictional limits of this court.

## THE PARTIES

## PLAINTIFFS

13.     Plaintiff SHELLY ARNOLD  is a resident of Tampa, Florida, who was prescribed Vioxx and was severely injured as a result.

14.     Plaintiff DONALD AURELL is a resident of Saint Charles, Missouri, who was prescribed Vioxx and was severely injured as a result.

15.     Plaintiff JOHN L. BABCOCK Jr. is a resident of Colton, California, who was prescribed Vioxx and was severely injured as a result.

16.     Plaintiff JERRI BARNES is a resident of Chicago, Illinois, who was prescribed Vioxx and was severely injured as a result.

17.     Plaintiff STEPHEN BARNES is a resident of North Fork, California, who was prescribed Vioxx and was severely injured as a result.

18.     Plaintiff ROBERT WADE BUCHANAN is a resident of Rancho Mirage, California, who was prescribed Vioxx and was severely injured as a result.

19.     Plaintiff WILLIAM BURG, is a resident of Levittown, Pennsylvania, who was prescribed Vioxx and was severely injured as a result.

20.     Plaintiff JEANNE CALHOUN is a resident of Kerrville, Texas, who was prescribed Vioxx and was severely injured as a result.

21.     Plaintiff LOUIS CHOINIERE is a resident of Chicopee, Massachusetts, who was prescribed Vioxx and was severely injured as a result.

22.     Plaintiff CHARLOTTE COSTLEY is a resident of Mart, Texas, who was prescribed Vioxx and was severely injured as a result.

5

23. Plaintiff ROBERT CRAWFORD is a resident of Hudson, Florida, who was prescribed Vioxx and was severely injured as a result.

24. Plaintiff JIMMY DAVIS is a resident of Azle, Texas, who was prescribed Vioxx and was severely injured as a result.

25. Plaintiff MOZZIZ DEWALT is a resident of Louisville, Kentucky, who was prescribed Vioxx and was severely injured as a result.

26. Plaintiff JOY DUBLIN is a resident of Albany, New York, who was prescribed Vioxx and was severely injured as a result.

27. Plaintiff OPAL EDMISTEN is a resident of Baltimore, Maryland, who was prescribed Vioxx and was severely injured as a result.

28. Plaintiff BOBBY E. FINCH is a resident of Victorville, California, who was prescribed Vioxx and was severely injured as a result.

29. Plaintiff LAIRD GAYLOR is a resident of Cicero, Indiana, who was prescribed Vioxx and was severely injured as a result.

30. Plaintiff RICK GILLEAN is a resident of Oklahoma City, Oklahoma, who was prescribed Vioxx and was severely injured as a result.

31. Plaintiff FRANCISCA GONZALEZ is a resident of New York, New York, who was prescribed Vioxx and was severely injured as a result.

32. Plaintiff PATRICIA GRIMALDI, is a resident of Brooklyn, New York, who was prescribed Vioxx and was severely injured as a result.

33. Plaintiff DEBORAH HALL is a resident of Paso Robles, California, who was prescribed Vioxx and was severely injured as a result.

34. Plaintiff JAMSHID HEKMAT is a resident of Los Angeles, California, who was prescribed Vioxx and was severely injured as a result.

35. Plaintiff ARTURO HERNANDEZ is a resident of Ecorse, Michigan, who was prescribed Vioxx and was severely injured as a result.

36. Plaintiff BARBARA HICKMAN is a resident of Lodi, California, who was prescribed Vioxx and was severely injured as a result.

6

COMPLAINT FOR DAMAGES

37.     Plaintiff JOHNNIE ANN HOLLINS-BURKE is a resident of Austell, Georgia, who was prescribed Vioxx and was severely injured as a result.

38.     Plaintiff EDWARD HOLLOWAY is a resident of Little Rock, Arkansas, who was prescribed Vioxx and was severely injured as a result.

39.     Plaintiff CECIL HUGHES is a resident of Elwood, Indiana, who was prescribed Vioxx and was severely injured as a result.

40.     Plaintiff ROBERT HUGHES is a resident of Russellville, Arkansas, who was prescribed Vioxx and was severely injured as a result.

41.     Plaintiff MARITI JONES is a resident of Killeen, Texas, who was prescribed Vioxx and was severely injured as a result.

42.     Plaintiff STEPHANIE JONES is a resident of Tampa, Florida, who was prescribed Vioxx and was severely injured as a result.

43.     Plaintiff KEN KINARED is a resident of Oro Valley, Arizona, who was prescribed Vioxx and was severely injured as a result.

44.     Plaintiff KATE KING is a resident of Yorktown, Texas, who was prescribed Vioxx and was severely injured as a result.

45.     Plaintiff PEGGY LORCH is a resident of El Cajon, California, who was prescribed Vioxx and was severely injured as a result.

46.     Plaintiff DARRYL LYLE is a resident of Gainesville, Georgia, who was prescribed Vioxx and was severely injured as a result.

47.     Plaintiff DAVID MCNEAL is a resident of Pittsburgh, Pennsylvania, who was prescribed Vioxx and was severely injured as a result.

48.     Plaintiff ADAM MCTEER is a resident of Sumter, South Carolina, who was prescribed Vioxx and was severely injured as a result.

49.     Plaintiff EDWARD MISENER is a resident of Flint, Michigan, who was prescribed Vioxx and was severely injured as a result.

50.     Plaintiff JUANITA MOSHER is a resident of Asheville, North Carolina, who was prescribed Vioxx and was severely injured as a result.

7

COMPLAINT FOR DAMAGES

1    51.    Plaintiff MARY NEUBAUER is a resident of Milwaukee, Wisconsin, who was
2  prescribed Vioxx and was severely injured as a result.

3    52.    Plaintiff JEREMIAH NGENGI is a resident of Des Moines, Iowa, who was
4  prescribed Vioxx and was severely injured as a result.

5    53.    Plaintiff ANTHONY ORFANIDES is a resident of Brick, New Jersey, who
6  was prescribed Vioxx and was severely injured as a result.

7    54.    Plaintiff SCOTT PATTERSON is a resident of Livingston, Texas, who was
8  prescribed Vioxx and was severely injured as a result.

9    55.    Plaintiff NECTOR RIOS is a resident of New York, New York,  who was
10  prescribed Vioxx and was severely injured as a result.

11    56.    Plaintiff PAT ROBINSON is a resident of Lehigh Acres, Florida, who was
12  prescribed Vioxx and was severely injured as a result.

13    57.    Plaintiff ELLA SCOTT is a resident of Birmingham, Alabama, who was
14  prescribed Vioxx and was severely injured as a result.

15    58.    Plaintiff DICK SMITH is a resident of Wichita Falls, Texas, who was
16  prescribed Vioxx and was severely injured as a result.

17    59.    Plaintiff WILLIAM T. SMITH is a resident of Orlando, Florida, who was
18  prescribed Vioxx and was severely injured as a result.

19    60.    Plaintiff WILLIAM STRIBLING  is a resident of Ada, Oklahoma, who was
20  prescribed Vioxx and was severely injured as a result.

21    61.    Plaintiff JANICE TAPLEY is a resident of Alexander City, Alabama, who was
22  prescribed Vioxx and was severely injured as a result.

23    62.    Plaintiff DARRELL TURNER is a resident of Dallas, Texas, who was
24  prescribed Vioxx and was severely injured as a result.

25    63.    Plaintiff EDGAR CHARLES WALL JR. is a resident of Goleta, California, who
26  was prescribed Vioxx and was severely injured as a result.

27    64.    Plaintiff CHRISTINE WINSTON is a resident of Canton, MIssissippi, who
28  was prescribed Vioxx and was severely injured as a result.

8

COMPLAINT FOR DAMAGES

**DEFENDANTS'**

65.     Defendant Merck & Co., Inc., is, and at all times material to this action was, a corporation organized, existing and doing business under and by virtue of the laws of the State of New Jersey, with its principal office located at One Merck Drive, Whitehouse Station, New Jersey.  Merck is, and at all times material to this action was, authorized to do business, and was engaged in substantial commerce and business under the laws of the State of California, County of Los Angeles.

66.     Merck & Co., Inc. Includes any and all parents, subsidiaries, affiliates, divisions, franchises, partners, joint venturers and organizational units of any kind, their predecessors, successors and assigns and their present officers, directors, employees, agents, representatives and other persons acting on their behalf.

67.     Plaintiffs are informed and believe, and based thereon allege, that in committing the acts alleged herein, each and every managing agent, agent, representative and/or employee of the defendant was working within the course and scope of said agency, representation and/or employment with the knowledge, consent, ratification and authorization of the Defendant and its directors, officers and/or managing agents.

68.     At all times material to this action, Defendant Merck designed, researched, developed, tested, redeveloped, studied, investigated, manufactured, created, sterilized, packaged, distributed, supplied, sold, placed into the stream of commerce, labeled, described, marketed, advertised, promoted and purported to warn or to inform users regarding the risks pertaining to, and assuaged concerns about their pharmaceutical Vioxx.

69.     Defendant McKesson Corporation is, and at all times material to this action was, a corporation organized, existing and doing business under and by virtue of the laws of the State of Delaware, with its principal place of business in San Francisco, California.  McKesson is, and at all times material to this action was, authorized to do business, and was engaged in substantial commerce and business under the laws of the State of California, County of Los Angeles.

70.     Defendant McKesson includes any and all parents, subsidiaries, affiliates,

9

1  divisions, franchises, partners, joint venturers and organizational units of any kind, their

2  predecessors, successors and assigns and their present officers, directors, employees, agents,

3  representatives and other persons acting on their behalf.

4      71.    Plaintiffs are informed and believe, and based thereon allege, that in committing

5  the acts alleged herein, each and every managing agent, agent, representative and/or employee

6  of Defendant McKesson was working within the course and scope of said agency,

7  representation and/or employment with the knowledge, consent, ratification and authorization of

8  the defendant and its directors, officers and/or managing agents.

9      72.    At all times material to this action, Defendant McKesson packaged, distributed,

10 supplied, sold, placed into the stream of commerce, labeled, described, marketed, advertised,

11 promoted and purported to warn or to inform users regarding the risks pertaining to, and

12 assuaged concerns about the pharmaceutical Vioxx.

13     73.    The true names and capacities, whether individual, corporate, associate, or

14 otherwise, of Defendants named herein as DOES 1 through 500, and each of them, are

15 unknown to Plaintiffs, who therefore, sues said Defendants by such fictitious names.

16     74.    Plaintiffs will ask leave to amend this Complaint to state said Defendants' true

17 identities and capacities when the same have been ascertained.

18     75.    Plaintiffs are informed and believe and based thereupon allege that each of the

19 Defendants designated herein as DOE took part in and participated with the Defendants in all

20 matters referred to herein and was in some manner responsible for the injuries and losses

21 suffered by Plaintiff.

22     76.    Plaintiffs are informed and believe and based thereupon allege that at all times

23 herein mentioned each of the Defendants was the agent, servant and/or employee or occupied

24 other relationships with each of the other named Defendants and at all times herein mentioned

25 acted within the course and scope of said agency and/or employment and/or other relationship

26 and each other Defendant has ratified, consented to, and approved the acts of his agents,

27 employees, and representatives, and that each actively participated in, aided and abetted, or

28 assisted one another in the commission of the wrongdoing alleged in this Complaint.

10

COMPLAINT FOR DAMAGES

**GENERAL ALLEGATIONS APPLICABLE
TO ALL CAUSES OF ACTION**

**Background of "NSAIDs"**

77.     The pharmaceutical drug at issue in this litigation is "Vioxx," a brand name for the drug's primary component Rofecoxib.  Defined chemically, Rofecoxib is methylsulfonyl, phenyl and furanone.  As a drug Vioxx is a non-steroidal anti-inflammatory drug, or NSAID.

78.     Although NSAIDs as a group are common drugs, Vioxx was a new type of NSAID, and was only the second approved version in a class of these drugs commonly referred to as "Cox-2 inhibitors."  Normal NSAIDs work to relieve pain by blocking the body's production of prostaglandins, chemicals which are believed to be associated with the pain and inflammation of injuries and immune reactions.  The enzyme cyclo-oxygenase, is needed for the production of these prostaglandins.  The human body produces two such enzymes, cyclo-oxygenase 1 and cyclo-oxygenase 2, commonly referred to as Cox 1 and Cox 2.

79.     While traditional NSAIDs, like ibuprofen, inhibit both of these enzymes, drugs like Vioxx were unique as they inhibited only the second enzyme, Cox 2.  Merck, through advertising and direct to consumer promotion, systematically touted that because of this change, Vioxx would have a lower incidence of side effects than other NSAIDS, while still providing treatment that was just as effective.

**Competition in the NSAID Market**

80.     Vioxx was approved for use by the FDA in 1999, a full year after its main competitor drug, "Celebrex," was approved for use.  Although the makers of these drugs originally contemplated competing with other NSAIDs, such as aspirin or Alleve, the similarities between the two drugs pushed the makers to compete with each other rather than other products on the market.

81.     To combat the competition Merck was especially aggressive in its advertising campaign for Vioxx.  Through direct to consumer advertisements, press releases, promotional conference calls, sales pitches, and traditional advertisements, Merck and McKesson manipulated the information given to physicians to exaggerate Vioxx's benefits and to conceal its deadly risks.  Merck and McKesson reiterated Vioxx's health benefit claims to the medical

11

1  community, but it did so without scientific justification.  Merck conducted pseudo-scientific

2  studies intended to deceptively justify Vioxx as safely providing the advertised benefits.

3        82.    To increase sales and promote brand name recognition of Vioxx Merck and

4  McKesson launched a large-scale *direct-to-consumer* advertising campaign for the COX-2 in

5  1999.  Merck was the first pharmaceutical company to run a full-length television spot including

6  both brand name and indication in it.  In fact the cost of the advertisements were astronomical

7  and Vioxx had approximately $160.8 million worth of direct-to-consumer advertising in 2000.

8  The drug's tagline was "Vioxx.  For everyday victories."  Like their other marketing strategies,

9  Merck underplayed known side-effects and completely disregarded warnings of potentially

10  serious complications in these commercials.

11        83.    Despite specific studies showing that Vioxx could increase the risk of

12  cardiovascular events and  myocardial infarctions more so than other NSAIDs, Merck stated

13  that these tests were wrong and quickly discounted them.  Merck proposed an explanation for

14  these tests, with no research behind it– basically that because Vioxx did not have the heart

15  protective properties of aspirin, this was the reason for the increase.  When Merck stated this

16  explanation to doctors, it never explained that it was *just a hypothetical* with no scientific

17  authority.

18        84.    Merck went further in promoting the drug by making unsubstantiated superiority

19  claims against other NSAIDs on the market and minimizing potentially fatal drug interaction

20  warnings.

21        85.    Merck also sponsored publications by researchers and physicians extolling the

22  numerous untested benefits of Vioxx.  Merck represented that Vioxx was potentially helpful in

23  treating several different symptoms and diseases, despite the fact that Vioxx had never been

24  tested in those areas.  Merck been pushed Vioxx for unapproved uses including the prevention

25  of cancer, and the treatment of Alzheimer's disease and gout.  In short, Merck and McKesson

26  concealed, manipulated and misrepresented material information bearing on Vioxx's safety and

27  efficacy for the *off-label* uses it marketed.

28        86.    In 2001, the United States Food and Drug Administration (FDA), prompted by

12

COMPLAINT FOR DAMAGES

M00B0181C

1   Merck's aggressive marketing campaign, wrote a very explicit warning letter to Merck

2   regarding Vioxx.  In that letter the FDA stated that Merck had engaged in an advertising

3   campaign that "minimize[d] potentially serious cardiovascular findings...."  The FDA further

4   stated that Merck's advertisements were promoting Vioxx for "unapproved uses and

5   unapproved dosing regimen[s]."  The letter went on to state that Merck was "minimizing the

6   potential risks and misrepresenting the safety profile for Vioxx. ..." Finally, the FDA stated that

7   Merck's misrepresentations were "particularly troublesome," because the FDA had already

8   warned Merck in an untitled letter to cease misrepresenting the safety profile of Vioxx.  The

9   FDA concluded that Merck's promotional activities and materials were in violation of the

10  Federal Food, Drug, and Cosmetic Act and applicable regulations.

11          87.     Both Vioxx and its competitor were marketed as being free from side effects

12  that were commonly associated with other NSAIDs.  However, the studies performed after

13  Vioxx was on the market (in and around 2000 and 2001) showed that many of the side effects

14  commonly associated with other NSAIDs were also associated with Vioxx.  These side effects

15  could occur without warning and the chances of occurrence increased with the length of time a

16  patient took the drug.

17          88.     Despite these indications from later research, the competition in the marketplace

18  remained strong.  Again, without regard for the new research, Merck did not change the labeling

19  to include the scientific conclusions.  Finally, in April 2002 the FDA ordered Merck to change

20  the Vioxx labeling to include these new warnings.  Specifically the FDA forced Merck to include

21  warnings regarding stomach ulcers, liver and kidney damage.

22          89.     Merck's desire and will to promote Vioxx is evidenced in annual reports

23  declaring the financial success, and marketing costs of the drug.  In the 2000 Annual Report

24  Merck claims a growth that year of 16% in Merck's "human health products" market, and a

25  15% growth in 1999.  Vioxx, is one of the five drugs in that market that Merck credits for the

26  growth increase.  In that report Merck states that Vioxx, barely a year after its approval, is

27  already Merck's second largest selling product.  The report goes on to state that Vioxx

28  accounted for 50% of new prescriptions in the Cox 2 class, despite the fact that Vioxx was

13

M009B01817

1 | second on the market.

2 |       90.    The 2000 Annual Report also shows how heavily Merck was advertising Vioxx.

3 | In that report Merck stated that its marketing and administrative expenses rose 19% in the year

4 | 2000. Merck primarily attributes 13% of this increase to supporting product launches including

5 | the 1999 launch of Vioxx.

6 |       91.    At the same time the 2000 report shows Merck's blatant disregard for the

7 | safety of Vioxx. In that report Merck acknowledged that the "FDA Arthritis Committee

8 | recommended that the gastrointestinal study results, as well as the data on certain cardiovascular

9 | events be included in the labeling" of Vioxx. However, Merck's comment to this

10 | recommendation was simply that "the FDA is not obligated to accept the recommendations of

11 | its advisory committees." Again, despite studies and recommendations, Merck was not inclined

12 | to promote the safe use of its product through truthful labeling.

13 |       92.    In the 2001 annual report, the importance of Vioxx to Merck's financial success

14 | becomes even more clear. Again, Merck touts Vioxx as its second largest selling product, and

15 | it went on to state that Vioxx is was the product leader that year for Cox 2 inhibitors (surpassing

16 | Celebrex in the marketplace). Merck went on in that report to state that Vioxx "exceeded the

17 | $2 billion dollar sales mark faster than any other product in Merck's history," and that the drug

18 | was now available in 68 markets around the world.

19 | **Side Effects of Vioxx**

20 |       93.    Despite Merck's blatant mislabeling and false advertising, there have been

21 | numerous adverse event reports and studies into side effects of Vioxx. As is clear from the

22 | FDA letters, these side effects have been consistently disregarded and  minimized to both

23 | doctors and consumers, like Plaintiffs. Merck's desire to promote the growth of its number two

24 | product, combined with market competition in the area fostered the lack of information about

25 | Vioxx.

26 |       94.    The Vioxx Gastrointestinal Outcomes Research (VIGOR) study was funded by

27 | Merck to look at upper gastrointestinal events. That study included approximately 4000

28 | patients per treatment arm who were treated for a median of 9 months at a time. In that study

14

M005B01818

1  some patients were given Vioxx while others were treated with naxopren, an older NSAID.

2  95.  The VIGOR study found unexpected findings that Vioxx caused potentially

3  serious cardiovascular problems in users. **Serious cardiovascular events occurred in 101**

4  **users in the Vioxx group, two times the amount that were suffered in the naxopren**

5  **group.** Further this study showed a four or five fold increase in myocardial infarctions for Vioxx

6  users as compared to naxopren. Research published in the Journal of the American Medical

7  Association backed up this study and concluded that Vioxx may increase the risk of heart

8  attacks. Despite this no warnings were given by Merck to the patients using the drug.

9  96.  Heart issues were not the only problems associated with Vioxx. In March

10  2002, the FDA reported a link between Vioxx and five cases of non-bacterial meningitis (an

11  inflammation of the membrane coverings of the brain). According to the FDA, several patients

12  developed aseptic meningitis while using the drug. Since that time Vioxx has been linked to

13  several other cases of this disease. In May of 2002, a report published in the Journal of Bone

14  and Mineral Research revealed that Vioxx may also impede bone repair. That study states that

15  Vioxx, and other Cox 2 inhibitors, reportedly assist bone forming stem cells in the healing

16  process.

17  97.  Other research has found significant side effects of Vioxx to include serious

18  stomach problems such as intestinal bleeding, serious allergic reactions, serious kidney problems

19  and severe liver problems. Further, and most alarmingly, this research concludes that the longer

20  a patient takes Vioxx, the more likely some of these side effects are to develop.

21  98.  On or about September 30, 2004, Defendant pulled Vioxx from the market

22  after a safety monitoring board overseeing a study of the drug recommended that the study be

23  halted because of an increased risk of serious cardiovascular events, including heart attacks and

24  strokes, among study patients taking Vioxx compared to patients receiving placebo. As stated

25  above, Defendant is now being investigated by the Justice Department relating to the company's

26  research, marketing and selling activities for Vioxx.

27  **FRAUDULENT CONCEALMENT**

28  99.  Any applicable statutes of limitations have been tolled by the knowing and active

15

COMPLAINT FOR DAMAGES

1   concealment and denial of the facts as alleged herein by the Defendants.  Plaintiffs have been

2   kept in ignorance of vital information essential to the pursuit of these claims, without any fault or

3   lack of diligence on their part.  Plaintiffs could not reasonably have discovered the dangerous

4   nature of and unreasonable adverse side effects associated with Vioxx prior to September 30,

5   2004, at the earliest.

6       100.    Defendants are and were under a continuing duty to disclose the true character,

7   quality, and nature of their drug to the Plaintiffs.  Because of their concealment of the true

8   character, quality and nature of their hormone therapy drugs, Defendants are estopped from

9   relying on any statute of limitations defense.

10                      **FIRST CAUSE OF ACTION**
                            *Negligence*
11                (Against Defendants Merck & McKesson)

12      101.    Plaintiffs incorporate by reference the allegations in all preceding paragraphs of

13  this Complaint as though fully set forth in this paragraph.

14      102.    Defendants had a duty to exercise reasonable care in the manufacture, sale,

15  research, development, inspection, labeling, promoting, marketing and/or distribution of Vioxx

16  into the stream of commerce, including a duty to assure that this drug did not cause users to

17  suffer from unreasonable, dangerous side-effects.  Defendants failed to exercise ordinary care in

18  the manufacture, sale, testing, quality assurance, quality control, marketing and/or distribution

19  into interstate commerce of Vioxx, in that Defendants knew or should have known that this drug

20  created a high risk of unreasonable, dangerous side-effects, some of which are fatal or can only

21  be alleviated by major, invasive, life-threatening procedures.

22      103.    Defendants Merck and McKesson breached their duty to Plaintiffs and were

23  negligent in the licensing, testing, design, manufacture, packaging, warning, advertising,

24  promotion, distribution and a sale of Vioxx, in that Defendants:

25          A.    Failed to use ordinary care in designing and manufacturing the Vioxx so

26              as to avoid the aforementioned risks to Plaintiffs;

27          B.    Failed to accompany Vioxx with proper warnings regarding the possible

28              adverse side effects associated with the use of those drugs and the

16

M009B01820

comparative severity and duration of such adverse effects, i.e., the warnings given did not accurately reflect the symptoms, scope or severity of the side effects;

C. Failed to conduct adequate pre-clinical testing and post-marketing surveillance to determine the safety and side effects of Vioxx;

D. Failed to provide adequate training to medical care providers for appropriate use of Vioxx;

E. Failed to warn Plaintiffs, either directly or indirectly, orally or in writing, about the following:

    (I) The need for comprehensive, regular monitoring to ensure early discovery of potentially serious side effects like cardiovascular disease; and

    (ii) The possibility of becoming injured, disabled or die as a result of using Vioxx.

F. Failed to adequately test and/or warn about the serious side effects of Vioxx;

G. Failed to include adequate warnings with Vioxx that would alert Plaintiffs, physicians, hospitals, and clinics, to the potential risks and the nature, scope, severity, and duration of any serious side-effects of Vioxx;

H. Continued to promote the efficacy and safety of Vioxx, while providing little or no warnings, and downplaying any risks, even after Defendants knew of the risks of serious injury and/or death;

I. Delayed warnings of, and then failed to provide adequate warnings about the serious injuries and/or death, which may have dissuaded medical providers from prescribing Vioxx and depriving medical providers from weighing the true risks against the benefits of prescribing Vioxx; and

17

M009B01821

J.      Were otherwise careless or negligent.

104.    Although Defendants knew or should have known Vioxx caused unreasonably dangerous side effects which many users, like Plaintiffs, would be unable to remedy by any means, Defendants continued to market Vioxx to consumers, including Plaintiffs and their doctors when there were safer alternative methods for the treatment of pain.

105.    Defendants knew or should have known that consumers such as Plaintiffs would suffer injury as a result of Defendants' failure to exercise ordinary care as described above.

106.    Plaintiffs are entitled to punitive damages because the Defendants' failure to warn was reckless and without regard for the public's safety and welfare.  The Defendants misled both the medical community and the public at large, including Plaintiffs, by making false representations about the safety of Vioxx.  The Defendants downplayed, understated, and disregarded their knowledge of the serious and permanent side effects associated with the use of Vioxx despite available information demonstrating that their products were likely to cause serious and potentially fatal side effects to users like Plaintiffs.

107.    As a direct, proximate and legal result of the negligence, carelessness, other wrongdoing and actions of Defendants described herein, Plaintiffs have been injured as described above.

108.    Based upon information and belief, Defendants actually knew of Vioxx's defective nature, as set forth herein, but continued to design, manufacture, market, and sell the drug so as to maximize sales and profits at the expense of the health and safety of the public, including Plaintiffs, in conscious disregard of the foreseeable harm caused by the drug.

109.    Defendants' conduct in the license, design, manufacturing, assembly, packaging, warning, marketing, advertising, promotion, distribution and sale of, including, but not limited to:

A.      Aggressively marketing and promoting Vioxx, knowing the high risks posed by failing to conduct sufficient pre-clinical and clinical testing and adequate post-marketing surveillance;

B.      Failing to provide complete literature, instructions, and training to health care professionals indicating the proper use of Vioxx, and the need for

18

COMPLAINT FOR DAMAGES

1    monitoring patients while on it;

2    C.    Failing to include adequate warnings with Vioxx that would alert

3           consumers, physicians, hospitals, clinics, and other users to the potential

4           risks and the nature, scope, severity, and duration of any serious

5           side-effects of the drug, particularly, the risks of heart disease/attack,

6           chest pains, ulcers, stroke, kidney and liver failure, blood clots and/or

7           death;

8    D.    Continuing to promote the efficacy and safety of the drug, while

9           providing little or no warnings, and downplaying any risks, even after

10          Defendants knew of the increased risks associated with use of Vioxx;

11   E.    Delaying warnings of, and then failing to provide adequate warnings

12          about the dangerous side effects which may have dissuaded medical

13          providers from prescribing Vioxx so freely, and depriving medical

14          providers from weighing the true risks against the benefits of prescribing

15          these drugs, was fraudulent, knowing misconduct, and/or conduct

16          undertaken recklessly and with conscious disregard for the safety of

17          consumers such as the Plaintiffs, such as to constitute despicable

18          conduct, and oppression, fraud and malice, and such conduct was at all

19          times relevant ratified by the corporate Defendants herein, thereby

20          entitling Plaintiffs punitive damages in an amount appropriate to punish

21          and set an example of Defendant.

22   110.    As a result of Merck and McKesson's conduct, Plaintiffs suffered injuries and

23   damages as specified herein.

24          WHEREFORE, Plaintiffs pray judgment against Defendants, and each of them, as set

25   forth herein below.

### SECOND CAUSE OF ACTION
*Strict Product Liability - Failure to Warn*
(Against Defendants Merck and McKesson)

26

27

28   111.    Plaintiffs incorporate by reference the allegations in all preceding paragraphs of
this Complaint as though fully set forth in this paragraph.

19

M009B01823

112.    Defendants Merck and McKesson are the manufacturer and/or supplier of Vioxx.

113.    Vioxx manufactured and/or supplied by Defendants Merck and McKesson was unaccompanied by proper warnings regarding all possible side effects associated with their use and the comparative severity, incidence, and duration of such adverse effects, i.e., the warnings given did not accurately reflect the signs, symptoms, incidence, scope or severity of the side effects.

114.    Defendants failed to perform adequate testing that would have shown that Vioxx possessed serious potential side effects with respect to which full and proper warnings accurately and fully reflecting symptoms, scope and severity should have been made, both with respect to the use of this drug.

115.    Vioxx manufactured and/or supplied by Defendants was defective due to inadequate post-marketing warnings or instructions because, after the manufacturer knew or should have known of the risks of injury from Vioxx, they failed to provide adequate warnings to users or consumers of the drug and continued to aggressively promote Vioxx.

116.    As a direct, proximate and legal result of the negligence, carelessness, other wrongdoing and actions of Defendants described herein, Plaintiffs have been injured as described above.

117.    Based upon information and belief, Defendants actually knew of Vioxx defective nature, as set forth herein, but continued to design, manufacture, market, and sell Vioxx so as to maximize sales and profits at the expense of the health and safety of the public, including Plaintiffs, in conscious disregard of the foreseeable harm caused by Vioxx.

118.    Defendants' conduct in the license, design, manufacturing, assembly, packaging, warning, marketing, advertising, promotion, distribution and sale of Vioxx, including, but not limited to:

        A.    Aggressively marketing and promoting Vioxx, knowing the high risks posed by failing to conduct sufficient pre-clinical and clinical testing and adequate post-marketing surveillance;

20

B.   Failing to provide complete literature, instructions, and training to health care professionals indicating the proper use of Vioxx, and the need for monitoring patients while on it;

C.   Failing to include adequate warnings with Vioxx that would alert consumers, physicians, hospitals, clinics, and other users to the potential risks and the nature, scope, severity, and duration of any serious side-effects of the drug, particularly, the risks of heart disease/attack, chest pains, ulcers, stroke, kidney and liver failure, blood clots and/or death;

D.   Continuing to promote the efficacy and safety of the drug, while providing little or no warnings, and downplaying any risks, even after Defendants knew of the increased risks associated with use of Vioxx;

E.   Delaying warnings of, and then failing to provide adequate warnings about the dangerous side effects which may have dissuaded medical providers from prescribing Vioxx so freely especially to patients with heart related problems like Plaintiffs and depriving medical providers from weighing the true risks against the benefits of prescribing the drug, was fraudulent, knowing misconduct, and/or conduct undertaken recklessly and with conscious disregard for the safety of consumers such as the Plaintiffs, such as to constitute despicable conduct, and oppression, fraud and malice, and such conduct was at all times relevant ratified by the corporate Defendants herein, thereby entitling Plaintiffs to punitive damages in an amount appropriate to punish and set an example of Defendant.

119.   Defendants' actions, as described above, were performed willfully, intentionally, and with reckless disregard for the rights of Plaintiffs and the public.

120.   As a result of Defendants' conduct, Plaintiffs have sustained injuries described above.

21

M009B01825

121.    Accordingly, Plaintiffs seek and are entitled to compensatory and punitive damages in an amount to be determined at trial.

WHEREFORE, Plaintiffs prays judgment against Defendants, and each of them, as set forth herein below.

### THIRD CAUSE OF ACTION
#### *Breach of Express Warranty*
(Against Defendants Merck and McKesson)

122.    Plaintiffs incorporate by reference the allegations in all preceding paragraphs of this Complaint as though fully set forth in this paragraph.

123.    Defendants, Merck and McKesson through description, affirmation of fact, and promise relating to Vioxx, to the FDA, prescribing physicians, and the general public, including Plaintiffs, expressly warranted that Vioxx was safe and well-accepted by patient studies.

124.    These warranties came in the form of: (I) publicly-made written and verbal assurances of the safety and efficacy of Vioxx by Merck, (ii) press releases, interviews and dissemination via the media of promotional information, the sole purpose of which was to create and increase demand for Vioxx, which utterly failed to warn of the risks inherent to the drug; (iii) verbal assurances made by Defendants regarding Vioxx, and the downplaying of any risk associated with the drug; (iv) false and misleading written information, supplied by Defendants, and published in the *Physicians Desk Reference* on an annual basis, upon which physicians were forced to rely on in prescribing Vioxx during the period of Plaintiffs' ingestion of the drug, including, but not limited to information relating the recommended duration of the use of the drug; (v) promotional pamphlets and brochures published and distributed by Defendants and directed to consumers; and (vi) advertisements.  The documents referred to in this paragraph were created by and at the direction of the Merck and McKesson Defendants and, therefore, are in the their possession and control.

125.    At the time of these express warranties, the Defendants had knowledge of the purpose for which Vioxx was to be used and warranted it to be in all aspects safe, effective, and proper for such purpose.

126.    Defendant Merck's drug did not conform to these express representations in

22

M009B01826

1   that it is neither safe nor effective and its use produces serious adverse side effects, including

2   death.

3          127.    As such, Defendants' product was neither in conformity to the promises,

4   descriptions or affirmations of fact made about the drug nor adequately contained, packaged,

5   labeled or fit for the ordinary purposes for which such goods are used.

6          128.    Defendants thereafter breached their express warranties to Plaintiffs in violation

7   of the applicable provisions of the Uniform Commercial Code in California by: (I) manufacturing,

8   marketing, packaging, labeling, and selling Vioxx to Plaintiffs in such a way that misstated the

9   risks of injury, without warning or disclosure thereof by package and label of such risks to

10  Plaintiffs or their prescribing physicians or pharmacists, or without so modifying or excluding

11  such express warranties; (ii) manufacturing, marketing, packaging, labeling, and selling Vioxx to

12  Plaintiffs, which failed to counteract his symptoms in a safe and permanent manner and without

13  injury; and (iii) manufacturing, marketing, packaging, labeling, and selling Vioxx to Plaintiffs,

14  thereby causing injury to each.

15         129.    As a direct and proximate result of Defendant's conduct, Plaintiffs have

16  sustained injuries described above.

17         130.    Plaintiffs are entitled to punitive damages because of Defendants' failure to warn

18  was reckless and without regard their welfare.  Defendants misled both the medical community

19  and the public at large, including Plaintiffs, by making false representations about the safety of

20  their product.  Defendants downplayed, understated, and disregarded their knowledge of the

21  serious and permanent side effects associated with the use of Vioxx, despite available

22  information demonstrating that it was likely to cause serious and sometimes fatal side effects to

23  users.

24         WHEREFORE, Plaintiffs pray judgment against Defendants, and each of them, as set

25  forth herein below.

26  / / /

27  / / /

28  / / /

23

COMPLAINT FOR DAMAGES

## FOURTH CAUSE OF ACTION
### *Breach of Implied Warranty*
(Against Defendants Merck and McKesson)

131.    Plaintiffs incorporate by reference the allegations in all preceding paragraphs of this Complaint as though fully set forth in this paragraph.

132.    At the time Defendants Merck and McKesson marketed, sold, and distributed Vioxx, for use by Plaintiffs, Defendants knew of the use for which Vioxx was intended and impliedly warranted the drug to be of merchantable quality and safe and fit for its intended use.

133.    Plaintiffs relied upon the skill and judgment of Defendants as to whether Vioxx was of merchantable quality and safe and fit for its intended use.

134.    Contrary to such implied warranty, Vioxx was not of merchantable quality or safe or fit for its intended use, because it was unreasonably dangerous and unfit for the ordinary purposes for which it was used, as described above.

135.    Defendants' conduct in the license, design, manufacturing, assembly, packaging, warning, marketing, advertising, promotion, distribution and sale of Vioxx, including, but not limited to:

A.    Marketing and promoting aggressively the products, knowing the high risks posed by failing to conduct sufficient pre-clinical and clinical testing and adequate post-marketing surveillance;

B.    Failing to provide complete literature, instructions, and training to health care professionals indicating the proper use of Vioxx, and the need for monitoring patients while on the product;

C.    Failing to include adequate warnings with Vioxx that would alert consumers, physicians, hospitals, clinics, and other users to the potential risks and the nature, scope, severity, and duration of any serious side-effects of the drug, particularly, the risks of heart disease/attack, chest pains, ulcers, stroke, kidney and liver failure, blood clots and/or death;

D.    Continuing to promote the efficacy and safety of Vioxx, while providing

24

M009B01828

1     little or no warnings, and downplaying any risks, even after Defendants

2     knew of the increased risks associated with use of the product;

3     E.     Delaying warnings of, and then failing to provide adequate warnings

4     about the dangerous side effects which may have dissuaded medical

5     providers from prescribing Vioxx so freely, and depriving medical

6     providers from weighing the true risks against the benefits of prescribing

7     the product, was fraudulent, knowing misconduct, and/or conduct

8     undertaken recklessly and with conscious disregard for the safety of

9     consumers like Plaintiffs, such as to constitute despicable conduct, and

10     oppression, fraud and malice, and such conduct was at all times relevant

11     ratified by the corporate Defendants herein, thereby entitling Plaintiffs to

12     punitive damages in an amount appropriate to punish and set an example

13     of Defendants.

14     136.     As a direct, proximate and legal result of the negligence, carelessness, other

15 wrongdoing and actions of Defendants described herein, Plaintiffs have sustained injuries as

16 described above.

17     137.     Based upon information and belief, Defendants actually knew of the Vioxx's

18 defective nature, as set forth herein, but continued to design, manufacture, market, and sell

19 Vioxx to maximize sales and profits at the expense of the health and safety of the public,

20 including Plaintiffs in conscious disregard of the foreseeable harm caused by the drug.

21     WHEREFORE, Plaintiffs pray judgment against Defendants, and each of them, as set

22 forth herein below.

23

### FIFTH CAUSE OF ACTION
*Negligent Misrepresentation*
(Against Defendants Merck and McKesson)

24

25

26     138.     Plaintiffs incorporate by reference the allegations in all preceding paragraphs of

27 this Complaint as though fully set forth in this paragraph.

28     139.     Defendants Merck and McKesson, having undertaken to prepare, design,

25

COMPLAINT FOR DAMAGES

M009B01829

1   research, develop, manufacture, inspect, label, market, promote, and sell Vioxx, owed a duty to

2   provide accurate and complete information regarding these products.

3        140.   The Defendants' advertising program, by containing affirmative

4   misrepresentations and omissions, falsely and deceptively sought to create the image and

5   impression that the use of Vioxx was safe for human use, had no unacceptable side effects, and

6   would not interfere with daily life.

7        141.   On information and belief, Plaintiffs aver that the Defendants failed to disclose,

8   misstated, downplayed, and understated the health hazards and risks associated with the use of

9   Vioxx, with no reasonable grounds for believing these statements to be true.  Defendants,

10  through promotional literature, deceived potential users and prescribers of the drug by relaying

11  only allegedly positive information, while concealing, misstating, and downplaying the known

12  adverse and serious health effects.  Defendants deceptively kept relevant information from

13  potential Vioxx users and minimized prescriber concerns regarding the safety and efficacy of

14  their drug.

15       142.   Defendants made numerous misrepresentations regarding their drug, Vioxx,

16  including:

17       A.    The presence and adequacy of the testing of Vioxx, both pre-and post-

18             marketing; and,

19       B.    The severity and frequency of adverse health effects caused by Vioxx.

20       143.   Plaintiffs and their doctors justifiably relied to their detriment upon Defendants'

21  positive misrepresentations concerning Vioxx.

22       144.   The Defendants were or should have been in possession of evidence

23  demonstrating that their product caused serious side effects.  Nevertheless, they continued to

24  market Vioxx by providing false and misleading information with regard to its safety and efficacy

25  with no reasonable grounds for believing these statements to be true.

26       145.   As a result of the Defendants conduct, Plaintiffs have sustained injuries as

27  described above.

28       146.   Accordingly, Plaintiffs seek and are entitled to compensatory and punitive

COMPLAINT FOR DAMAGES

M009B01830

1  damages in an amount to be determined at trial.

2      WHEREFORE, Plaintiffs pray judgment against Defendants, and each of them, as set

3  forth herein below.

4

5                            **SIXTH CAUSE OF ACTION**
                                  *Fraud*
6                    (Against Defendants Merck and McKesson)

7

8      147.    Plaintiffs incorporate by reference the allegations in all preceding paragraphs of

   this Complaint as though fully set forth in this paragraph.
9

10     148.    Merck and McKesson, having undertaken to prepare, design, research,

   develop, manufacture, inspect, label, market, promote, and sell their Vioxx, owed a duty to
11

   provide accurate and complete information regarding these products.
12

13     149.    The Defendants' advertising program, by containing affirmative

   misrepresentations and omissions, falsely and deceptively sought to create the image and
14

   impression that the use of Vioxx was safe for human use, had no unacceptable side effects, and
15

16 would not interfere with daily life.

17     150.    The Defendants intentionally encouraged consumers and Plaintiffs to take Vioxx

   rather than other NSAID's on the market and that it was safe and effective to remain on their
18

19 drug.

20     151.    On information and belief, Plaintiffs aver that the Defendants purposefully

   concealed, failed to disclose, misstated, downplayed, and understated the health hazards and
21

   risks associated with the use of Vioxx.  Defendants, through promotional literature, deceived
22

23 potential users and prescribers of the drug by relaying only allegedly positive information, while

   concealing, misstating, and downplaying the known adverse and serious health effects.
24

   Defendants falsely and deceptively kept relevant information from potential Vioxx users and
25

26 minimized prescriber concerns regarding the safety and efficacy of their drug.

27     152.    Plaintiffs and their doctors justifiably relied to their detriment upon the

   Defendants' intentional misrepresentations concerning Vioxx.
28

       153.    In particular, in the materials disseminated by the Defendants, they falsely and

                                       27

---

M009B01831

1  deceptively misrepresented or omitted a number of material facts regarding Vioxx including, but

2  not limited to, the following:

3          A.      The presence and adequacy of the testing of Vioxx, both pre-and post-

4                  marketing; and,

5          B.      The severity and frequency of adverse health effects caused by Vioxx.

6      154.    Plaintiffs are entitled to punitive damages because the failure of the Defendants

7  to warn was reckless and without regard for the public's safety and welfare.  Defendants misled

8  both the medical community and the public at large, including Plaintiffs, by making false

9  representations about the safety Vioxx.

10     155.    The Defendants were or should have been in possession of evidence

11 demonstrating that their product caused serious side effects.  Nevertheless, they continued to

12 market Vioxx by providing false and misleading information with regard to its safety and

13 efficacy.

14     156.    The Defendants' actions, as described above, were performed willfully,

15 intentionally, and with reckless disregard for the rights of Plaintiffs and the public.

16     157.    As a result of the Defendants conduct, Plaintiffs have sustained injuries as

17 described above.

18     158.    Accordingly, Plaintiffs seek and are entitled to compensatory and punitive

19 damages in an amount to be determined at trial.

20         WHEREFORE, Plaintiffs pray judgment against Defendants, and each of them, as set

21 forth herein below.

22 / / /

23 / / /

24 / / /

25 / / /

26 / / /

27 / / /

28 / / /

COMPLAINT FOR DAMAGES

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows for:

    a.    Costs of suit incurred herein;

    b.    Special damages according to proof;

    c.    General damages according to proof;

    e.    Prejudgment interest on these losses;

    f.    For such other and further relief as to Court deems just.

DATED: September    2006        KABATECK BROWN KELLNER LLP

By: _____
        RICHARD KELLNER, ESQ.
        Attorney for Plaintiffs

## DEMAND FOR JURY TRIAL

The above Plaintiffs hereby demand a trial by jury in this action.

DATED: September    2006        KABATECK BROWN KELLNER LLP

By: _____
        RICHARD KELLNER, ESQ.
        Attorney for Plaintiffs

MDO9B01833

918-06
930 AM

# SUMMONS
## *(CITACION JUDICIAL)*

SUM-100

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

MERCK & CO., INC., a New Jersey Corporation; MCKESSON CORP.,
and DOES 1 through 500, inclusive,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
SHELLY ARNOLD, an individual; DONALD AURELL, an individual;
JOHN L. BABCOCK Jr., an individual; JERRI BARNES, an individual;
["Additional Parties Attachment form is attached"]

CON____COPY
FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)
OF ORIGINAL FILED
Los Angeles Superior Court

SEP 1 4 2006

John A. Clarke, Executive Officer/Clerk

By_____ Deputy
E. Giles

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff.  A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case.  There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you.  If you cannot pay the filing fee, ask the court clerk for a fee waiver form.  If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.
  There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante.  Una carta o una llamada telefónica no lo protegen.  Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte.  Es posible que haya un formulario que usted pueda usar para su respuesta.  Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca.  Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas.  Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.
  Hay otros requisitos legales.  Es recomendable que llame a un abogado inmediatamente.  Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados.  Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro.  Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

| The name and address of the court is: <br> *(El nombre y dirección de la corte es):* | CASE NUMBER: <br> *(Número del Caso):* BC358531 |
|---|---|

Superior Court of the State of California - County of Los Angeles
111 North Hill Street
Los Angeles, CA  90012

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
KABATECK BROWN KELLNER LLP, 350 So. Grand Ave., 39th Floor, Los Angeles, CA  90071
Telephone: (213) 217-5000 / Fax: (213) 217-5010

| DATE: SEP 1 4 2006 <br> *(Fecha)* | A. Clarke | Clerk, by DERKAN GILES <br> *(Secretario)* | , Deputy <br> *(Adjunto)* |
|---|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

SEP 1 4 2006

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):* MERCK & CO., INC.

   under: ☒ CCP 416.10 (corporation)        ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
American LegalNet, Inc. | www.USCourtForms.com

MOO9B01834

| SHORT TITLE: Shelly Arnold, et al. vs. Merck & Co., Inc., et al. | CASE NUMBER: |
|---|---|

## INSTRUCTIONS FOR USE

➡ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

➡ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party):*

[✓] Plaintiff    [ ] Defendant    [ ] Cross-Complainant    [ ] Cross-Defendant

STEPHEN BARNES, an individual; ROBERT WADE BUCHANAN, an individual; WILLIAM BURG, an individual; JEANNE CALHOUN, an individual; LOUIS CHOINIERE, an individual; CHARLOTTE COSTLEY, an individual; ROBERT CRAWFORD, an individual; JIMMY DAVIS, an individual; MOZZIZ DEWALT, an individual; JOY DUBLIN, an individual; OPAL EDMISTEN, an individual; BOBBY E. FINCH, an individual; LAIRD GAYLOR, an individual; RICK GILLEAN, an individual; FRANCISCA GONZALEZ, an individual; PATRICIA GRIMALDI, an individual; DEBORAH HALL, an individual; JAMSHID HEKMAT, an individual; ARTURO HERNANDEZ, an individual; BARBARA HICKMAN, an individual; JOHNNIE ANN HOLLINS-BURKE, an individual; EDWARD HOLLOWAY, an individual; CECIL HUGHES, an individual; ROBERT HUGHES, an individual; MARITI JONES, an individual; STEPHANIE JONES, an individual; KEN KINARED, an individual; KATE KING, an individual; PEGGY LORCH, an individual; DARRYL LYLE, an individual; DAVID MCNEAL, an individual; ADAM MCTEER, an individual; EDWARD MISENER, an individual; JUANITA MOSHER, an individual; MARY NEUBAUER, an individual; JEREMIAH NGENGI, an individual; ANTHONY ORFANIDES, an individual; SCOTT PATTERSON, an individual; NECTOR RIOS, an individual; PAT ROBINSON, an individual; ELLA SCOTT, an individual; DICK SMITH, an individual; WILLIAM T. SMITH, an individual; WILLIAM STRIBLING, an individual; JANICE TAPLEY, an individual; DARRELL TURNER, an individual; EDGAR CHARLES WALL JR., an individual; CHRISTINE WINSTON, an individual;

Form Adopted by Rule 982(a)(9)(A)
Judicial Council of California
982(a)(9)(A) [New January 1, 1993]

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

American LegalNet, Inc.
www.USCourtForms.com

MO09B01835

**CM-010**

| | |
|---|---|
| **ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, State Bar number, and address):*<br>Brian S. Kabateck, Esq. / Bar #152054 / Richard L. Kellner, Esq. / Bar #171416<br>KABATECK BROWN KELLNER LLP<br>350 S. Grand Ave., 39th Flr., Los Angeles, CA 90071<br>TELEPHONE NO.: (213) 217-5000     FAX NO.: (213) 217-5010<br>ATTORNEY FOR *(Name):* Plaintiffs | **FOR COURT USE ONLY** |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** Los Angeles
STREET ADDRESS: 111 North Hill Street
MAILING ADDRESS:
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: Central District

SEP 1 4 2006

**CASE NAME:**
Shelly Arnold, et al. vs. Merck & Co., Inc., et al.

| **CIVIL CASE COVER SHEET** | **Complex Case Designation** | **CASE NUMBER:** BC358531 |
|---|---|---|
| [✓] Unlimited (Amount demanded exceeds $25,000)   [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter   [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 1811) | JUDGE:<br>DEPT: |

*Items 1–5 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[✓] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 1800–1812)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [✓] is [ ] is not complex under rule 1800 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [✓] Large number of separately represented parties
   b. [✓] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [✓] Substantial amount of documentary evidence
   d. [✓] Large number of witnesses
   e. [✓] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Type of remedies sought *(check all that apply):*
   a. [✓] monetary   b. [✓] nonmonetary; declaratory or injunctive relief   c. [✓] punitive

4. Number of causes of action *(specify):* 6

5. This case [ ] is [ ] is not a class action suit.

6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: September ___, 2006

BRIAN S. KABATECK, ESQ.
_____ (TYPE OR PRINT NAME)

_____ (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 201.8.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 1800 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on **all** other parties to the action or proceeding.
- Unless this is a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| | |
|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. January 1, 2006] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 201.8, 1800–1812;<br>Standards of Judicial Administration, § 19<br>www.courtinfo.ca.gov |

American LegalNet, Inc.
www.USCourtForms.com

M009B01836

| SHORT TITLE: Shelly Arnold, et al. vs. Merck & Co., Inc., et al. | CASE NUMBER BC358531 |
|---|---|

## CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION
### (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

This form is required pursuant to LASC Local Rule 2.0 in all new civil case filings in the Los Angeles Superior Court.

Item I.  Check the types of hearing and fill in the estimated length of hearing expected for this case:

JURY TRIAL? ☑ YES   CLASS ACTION? ☐YES   LIMITED CASE? ☐YES   TIME ESTIMATED FOR TRIAL 40   ☐ HOURS/☑ DAYS.

Item II. Select the correct district and courthouse location (4 steps – If you checked "Limited Case", skip to Item III, Pg. 4):

**Step 1:** After first completing the Civil Case Cover Sheet Form, find the main civil case cover sheet heading for your case in the left margin below, and, to the right in Column **A**, the Civil Case Cover Sheet case type you selected.

**Step 2:** Check **one** Superior Court type of action in Column **B** below which best describes the nature of this case.

**Step 3:** In Column **C**, circle the reason for the court location choice that applies to the type of action you have checked. For any exception to the court location, see Los Angeles Superior Court Local Rule 2.0.

### Applicable Reasons for Choosing Courthouse Location (see Column C below)

1. Class Actions must be filed in the County Courthouse, Central District.
2. May be filed in Central (Other county, or no Bodily Injury/Property Damage).
3. Location where cause of action arose.
4. Location where bodily injury, death or damage occurred.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office.

**Step 4:** Fill in the information requested on page 4 in Item III; complete Item IV.  Sign the declaration.

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Auto Tort** | Auto (22) | ☐ A7100   Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |
| | Uninsured Motorist (46) | ☐ A7110   Personal Injury/Property Damage/Wrongful Death -- Uninsured Motorist | 1., 2., 4. |
| **Other Personal Injury/Property Damage/Wrongful Death Tort** | Asbestos  (04) | ☐ A6070   Asbestos Property Damage | 2. |
| | | ☐ A7221   Asbestos - Personal Injury/Wrongful Death | 2. |
| | Product Liability (24) | ☑ A7260   Product Liability (not asbestos or toxic/environmental) | 1., 2., 3., 4., 8. |
| | Medical Malpractice (45) | ☐ A7210   Medical Malpractice - Physicians & Surgeons | 1., 2., 4. |
| | | ☐ A7240   Other Professional Health Care Malpractice | 1., 2., 4. |
| | Other<br>Personal Injury<br>Property Damage<br>Wrongful Death<br>(23) | ☐ A7250   Premises Liability (e.g., slip and fall) | 1., 2., 4. |
| | | ☐ A7230   Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1., 2., 4. |
| | | ☐ A7270   Intentional Infliction of Emotional Distress | 1., 2., 3. |
| | | ☐ A7220   Other Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |
| **Non-Personal Injury/Property** | Business Tort  (07) | ☐ A6029   Other Commercial/Business Tort (not fraud/breach of contract) | 1., 2., 3. |
| | Civil Rights (08) | ☐ A6005   Civil Rights/Discrimination | 1., 2., 3. |
| | Defamation (13) | ☐ A6010   Defamation (slander/libel) | 1., 2., 3. |
| | Fraud (16) | ☐ A6013   Fraud (no contract) | 1., 2., 3. |
| | Intellectual Property (19) | ☐ A6016   Intellectual Property | 2., 3. |

M009B01837

**Non-Personal Injury/Property Damage/ Wrongful Death Tort (Cont'd.)**

| SHORT TITLE: | CASE NUMBER |
|---|---|
| Shelly Arnold, et al. vs. Merck & Co., Inc., et al. | |

| A<br>Civil Case Cover Sheet Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons<br>-See Step 3 Above |
|---|---|---|
| Professional Negligence (25) | ☐ A6017  Legal Malpractice | 1., 2., 3. |
| | ☐ A6050  Other Professional Malpractice (not medical or legal) | 1., 2., 3. |
| Other (35) | ☐ A6025  Other Non-Personal Injury/Property Damage tort | 2.,3. |

**Employment**

| | | |
|---|---|---|
| Wrongful Termination (36) | ☐ A6037  Wrongful Termination | 1., 2., 3. |
| Other Employment (15) | ☐ A6024  Other Employment Complaint Case | 1., 2., 3. |
| | ☐ A6109  Labor Commissioner Appeals | 10. |

**Contract**

| | | |
|---|---|---|
| Breach of Contract/ Warranty (06) (not insurance) | ☐ A6004  Breach of Rental/Lease Contract (not Unlawful Detainer or wrongful eviction) | 2., 5. |
| | ☐ A6008  Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2., 5. |
| | ☐ A6019  Negligent Breach of Contract/Warranty (no fraud) | 1., 2., 5. |
| | ☐ A6028  Other Breach of Contract/Warranty (not fraud or negligence) | 1., 2., 5. |
| Collections (09) | ☐ A6002  Collections Case-Seller Plaintiff | 2., 5., 6. |
| | ☐ A6012  Other Promissory Note/Collections Case | 2., 5. |
| Insurance Coverage (18) | ☐ A6015  Insurance Coverage (not complex) | 1., 2., 5., 8. |
| Other Contract (37) | ☐ A6009  Contractual Fraud | 1., 2., 3., 5. |
| | ☐ A6031  Tortious Interference | 1., 2., 3., 5. |
| | ☐ A6027  Other Contract Dispute(not breach/insurance/fraud/negligence) | 1., 2., 3., 8. |

**Real Property**

| | | |
|---|---|---|
| Eminent Domain/Inverse Condemnation (14) | ☐ A7300  Eminent Domain/Condemnation        Number of parcels_____ | 2. |
| Wrongful Eviction (33) | ☐ A6023  Wrongful Eviction Case | 2., 6. |
| Other Real Property (26) | ☐ A6018  Mortgage Foreclosure | 2., 6. |
| | ☐ A6032  Quiet Title | 2., 6. |
| | ☐ A6060  Other Real Property(not eminent domain, landlord/tenant, foreclosure) | 2., 6. |

**Judicial Review Unlawful Detainer**

| | | |
|---|---|---|
| Unlawful Detainer-Commercial (31) | ☐ A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 2., 6. |
| Unlawful Detainer-Residential (32) | ☐ A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | 2., 6. |
| Unlawful Detainer-Drugs (38) | ☐ A6022  Unlawful Detainer-Drugs | 2., 6. |
| Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2., 6. |
| Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2., 5. |

CIV 109 03-04 (Rev. 03/06)

LASC Approved

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

LASC, rule 2.0

Page 2 of 4

M009B01838

| SHORT TITLE:                                    | CASE NUMBER |
|-------------------------------------------------|-------------|
| Shelly Arnold, et al. vs. Merck & Co., Inc., et al. |             |

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Judicial Review (Cont'd.)** | Writ of Mandate<br><br>(02) | ☐ A6151  Writ - Administrative Mandamus | 2., 8. |
| | | ☐ A6152  Writ - Mandamus on Limited Court Case Matter | 2. |
| | | ☐ A6153  Writ - Other Limited Court Case Review | 2. |
| | Other Judicial Review<br>(39) | ☐ A6150  Other Writ /Judicial Review | 2., 8. |
| **Provisionally Complex Litigation** | Antitrust/Trade<br>Regulation (03) | ☐ A6003  Antitrust/Trade Regulation | 1., 2., 8. |
| | Construction Defect (10) | ☐ A6007  Construction defect | 1., 2., 3. |
| | Claims Involving Mass<br>Tort (40) | ☐ A6006  Claims Involving Mass Tort | 1., 2., 8. |
| | Securities Litigation (28) | ☐ A6035  Securities Litigation Case | 1., 2., 8. |
| | Toxic Tort<br>Environmental  (30) | ☐ A6036  Toxic Tort/Environmental | 1., 2., 3., 8. |
| | Insurance Coverage<br>Claims from Complex<br>Case (41) | ☐ A6014  Insurance Coverage/Subrogation (complex case only) | 1., 2., 5., 8 |
| **Enforcement of Judgment** | Enforcement<br>of Judgment<br><br>(20) | ☐ A6141  Sister State Judgment | 2., 9. |
| | | ☐ A6160  Abstract of Judgment | 2., 6. |
| | | ☐ A6107  Confession of Judgment (non-domestic relations) | 2., 9. |
| | | ☐ A6140  Administrative Agency Award (not unpaid taxes) | 2., 8. |
| | | ☐ A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax | 2., 8. |
| | | ☐ A6112  Other Enforcement of Judgment Case | 2., 8., 9. |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033  Racketeering (RICO) Case | 1., 2., 8. |
| | Other Complaints<br>(Not Specified Above)<br><br>(42) | ☐ A6030  Declaratory Relief Only | 1., 2., 8. |
| | | ☐ A6040  Injunctive Relief Only (not domestic/harassment) | 2., 8. |
| | | ☐ A6011  Other Commercial Complaint Case (non-tort/non-complex) | 1., 2., 8. |
| | | ☐ A6000  Other Civil Complaint (non-tort/non-complex) | 1., 2., 8. |
| **Miscellaneous Civil Petitions** | Partnership Corporation<br>Governance(21) | ☐ A6113  Partnership and Corporate Governance Case | 2., 8. |
| | Other Petitions<br>(Not Specified Above)<br><br>(43) | ☐ A6121  Civil Harassment | 2., 3., 9. |
| | | ☐ A6123  Workplace Harassment | 2., 3., 9. |
| | | ☐ A6124  Elder/Dependent Adult Abuse Case | 2., 3., 9. |
| | | ☐ A6190  Election Contest | 2. |
| | | ☐ A6110  Petition for Change of Name | 2., 7. |
| | | ☐ A6170  Petition for Relief from Late Claim Law | 2., 3., 4., 8. |
| | | ☐ A6100  Other Civil Petition | 2., 9. |

CIV 109 03-04 (Rev. 03/06)        **CIVIL CASE COVER SHEET ADDENDUM**        LASC, rule 2.0
LASC Approved                      **AND STATEMENT OF LOCATION**             Page 3 of 4

M009B01839

| SHORT TITLE | CASE NUMBER |
|---|---|
| Shelly Arnold, et al. vs. Merck & Co., Inc., et al. | |

Item III. Statement of Location: Enter the address of the accident, party's residence or place of business, performance, or other circumstance indicated in Item II., **Step 3** on Page 1, as the proper reason for filing in the court location you selected.

| REASON: CHECK THE NUMBER UNDER COLUMN C WHICH APPLIES IN THIS CASE<br><br>☐1.☐2.☑3.☐4.☐5.☐6.☐7.☐8.☐9.☐10. | ADDRESS:<br>350 So. Grand Ave. |
|---|---|
| CITY:<br>Los Angeles    STATE:<br>CA    ZIP CODE:<br>90071 | |

Item IV. *Declaration of Assignment*: I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that the above-entitled matter is properly filed for assignment to the <u>Main</u> courthouse in the <u>Central</u> District of the Los Angeles Superior Court (Code Civ. Proc., § 392 et seq., and LASC Local Rule 2.0, subds. (b), (c) and (d)).

Dated: <u>September   , 2006</u>

_____
(SIGNATURE OF ATTORNEY/FILING PARTY)

---

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet form CM-010.

4. Complete Addendum to Civil Case Cover Sheet form LASC Approved CIV 109 03-04 (Rev. 03/06).

5. Payment in full of the filing fee, unless fees have been waived.

6. Signed order appointing the Guardian ad Litem, JC form 982(a)(27), if the plaintiff or petitioner is a minor under 18 years of age, or if required by Court.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

---

M009B01840

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## NOTICE OF CASE ASSIGNMENT - UNLIMITED CIVIL CASE

Case Number _____

BC358531

## THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT

Your case is assigned for all purposes to the judicial officer indicated below.

| ASSIGNED JUDGE | DEPT | ROOM | ASSIGNED JUDGE | DEPT | ROOM | |
|---|---|---|---|---|---|---|
| Hon. Gregory Alarcon | 36 | 410 | Hon. William F. Highberger | 32 | 406 | |
| Hon. Alice E. Altoon | 28 | 318 | Hon. Ernest M. Hiroshige | 54 | 512 | |
| Hon. Conrad Aragon | 49 | 509 | Hon. Jane L. Johnson | 56 | 514 | |
| Hon. Helen I. Bendix | 18 | 308 | Hon. Morris B. Jones | 48 | 506 | |
| Hon. Elihu M. Berle | 42 | 416 | Hon. Malcolm H. Mackey | 55 | 515 | |
| Hon. Tricia Ann Bigelow | 23 | 315 | Hon. Jon M. Mayeda | 72 | 731 | |
| Hon. Soussan G. Bruguera | 71 | 729 | Hon. Rita Miller | 16 | 306 | |
| Hon. Susan Bryant-Deason | 52 | 510 | Hon. David L. Minning | 61 | 632 | |
| Hon. James C. Chalfant | 13 | 630 | Hon. Aurelio Munoz | 47 | 507 | |
| Hon. Victoria Chaney* | 324 | CCW | Hon. Mary Ann Murphy | 25 | 317 | |
| Hon. Judith C. Chirlin | 89 | 532 | Hon. Joanne O'Donnell | 37 | 413 | |
| Hon. Ralph W. Dau | 57 | 517 | Hon. Victor H. Person | 39 | 415 | |
| Hon. Maureen Duffy-Lewis | 38 | 412 | Hon. Mel Red Recana | 45 | 529 | |
| Hon. James R. Dunn | 26 | 316 | Hon. Andria K. Richey | 31 | 407 | |
| Hon. Lee Edmon | 68 | 617 | Hon. Teresa Sanchez-Gordon | 74 | 735 | |
| Hon. William F. Fahey | 78 | 730 | Hon. James E. Satt | 40 | 414 | |
| Hon. Irving S. Feffer | 51 | 511 | Hon. John P. Shook | 53 | 513 | |
| Hon. Edward A. Ferns | 69 | 621 | Hon. Ronald M. Sohigian | 41 | 417 | |
| Hon. Kenneth R. Freeman | 64 | 601 | Hon. Michael L. Stern | 62 | 600 | |
| Hon. Haley J. Fromholz | 20 | 310 | Hon. Mary Thornton House | 17 | 309 | |
| Hon. Richard Fruin | 15 | 307 | Hon. Rolf M. Treu | 58 | 516 | |
| Hon. Terry A. Green | 14 | 300 | Hon. John Shepard Wiley Jr. | 50 | 508 | |
| Hon. Elizabeth A. Grimes | 30 | 400 | Hon. David A. Workman | 19 | 311 | |
| Hon. Paul Gutman | 34 | 408 | Hon. George Wu | 33 | 409 | |
| Hon. Robert L. Hess | 24 | 314 | | 35 | 411 | |
| | 3 | 224 | Other | | | |

*Class Actions

Given to the Plaintiff/Cross-Complainant/Attorney of Record on _____   JOHN A. CLARKE, Executive Officer/Clerk

By _____, Deputy Clerk

CIV CCH 190 05-06 (Rev. 07/06)   **NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**

M008B01841



*from the*
## LOS ANGELES SUPERIOR COURT
### ADR DEPARTMENT

If you have a general jurisdiction case involving one of these 6 subject matter areas:

- commercial
- employment
- medical malpractice

- real estate
- trade secrets
- unfair competition

### *Your case may be eligible for the court's pilot Early Neutral Evaluation (ENE) program.*

♦ **ENE can reduce litigation time and costs and promote settlement.**

♦ ENE is an informal process that offers a non-binding evaluation by an experienced neutral lawyer with expertise in the subject matter of the case. After counsel present their claims and defenses, the neutral evaluates the case based on the law and the evidence.

♦ **ENE is voluntary and confidential.**

♦ The benefits of ENE include helping to clarify, narrow or eliminate issues, identify areas of agreement, offer case-planning suggestions and, if requested by the parties, assist in settlement.

♦ **The first three (3) hours of the ENE session are free of charge.**

See back for a list of participating pilot courthouses and departments.

*For additional ENE information, visit the Court's web site at www.lasuperiorcourt.org/adr*

M009B01842

# PARTICIPATING PILOT COURTHOUSES:

**(General Jurisdiction Case Only)**

- **Chatsworth**
- **Pomona**
- **Santa Monica**
- **Van Nuys**
- **Stanley Mosk** (Departments listed below only.)

  Department 15

  Department 16

  Department 28

  Department 30

  Department 31

  Department 32

  Department 38

  Department 42

  Department 47

  Department 50

  Department 52

  Department 55

  Department 56

  Department 68

  Department 71

  Department 89

M009B01843

# LOS ANGELES SUPERIOR COURT
## CIVIL ALTERNATIVE DISPUTE RESOLUTION (ADR) PROGRAMS
[CRC 201.9(c) Information about Alternative Dispute Resolution]

The plaintiff shall serve a copy of the ADR Information package on each defendant along with the complaint.

## ADR PROGRAMS

"Alternative Dispute Resolution (ADR)" is the term used to describe all the other options available for settling a dispute which once had to be settled in court.  ADR processes such as arbitration, mediation, early neutral evaluation (ENE), and settlement conferences, are less formal than court and provide opportunities for litigants to reach an agreement using a problem-solving approach rather than the more adversarial approach of litigation.

**MEDIATION**     A neutral third party called a "mediator" helps participants in the dispute create their own resolution.  The mediator helps facilitate a discussion in which the parties reach a mutually agreed upon settlement.  Therefore, mediation allows for more creative resolutions to disputes than other ADR processes.

The Court Mediation Program is governed by Code of Civil Procedure sections 1775-1775.15, California Rules of Court, Rules 1620-1622 and 1630-1639, Evidence Code sections 1115-1128, and Los Angeles Superior Court Rules, Chapter 12.

**ARBITRATION**   A neutral third party called an "arbitrator" listens to each side in the dispute present its case.  The arbitrator, who is an attorney, issues a decision based on the evidence.  Although evidence is presented, arbitration is a less formal process than litigation.  The decision is non-binding unless the parties agree in writing to binding arbitration.

The Court Arbitration Program is governed by Code of Civil Procedure sections 1141.10-1141.31, California Rules of Court, Rules 1600-1618, and Los Angeles Superior Court Rules, Chapter 12.

**ENE**           A neutral third party called an "evaluator" will provide the parties and their counsel, on a voluntary basis and in a confidential session, the opportunity to make summary presentations of their claims and defenses, including key evidence.  After hearing the presentations, the evaluator, who is an experienced lawyer with subject-matter expertise, offers a non-binding evaluation.

The evaluator will also help clarify, narrow or eliminate issues, identify areas of agreement, offer case-planning suggestions, and, if requested by parties, settlement assistance.  Although settlement is not the primary goal of ENE, the ENE process can reduce litigation time and costs and promote settlement.

The Court ENE Program is governed by Los Angeles Superior Court Rules, Chapter 12.

**SETTLEMENT CONFERENCE**   A neutral third party called a "settlement officer," who is also a retired judge, assists the parties in negotiating their own settlement and may evaluate the strengths and weaknesses of the case.

## JURISDICTIONAL LIMITATIONS

**MEDIATION, ARBITRATION & ENE**   Any case in which the amount in dispute is between $25,000-$50,000 per plaintiff, and was not previously referred to the Court ADR Program, can be sent to the Court ADR Program for mediation, arbitration, or ENE by stipulation, election by plaintiff or order of the court.

Parties may *voluntarily* request or initiate a mediation or arbitration proceeding, regardless of the amount in dispute.

**SETTLEMENT CONFERENCE**   Any case, regardless of the amount in dispute, may be ordered to a settlement conference. There is no monetary limit.

## REFERRAL  INFORMATION

After the Court determines the suitability of a case for ADR, the Court directs the parties to the ADR Department to initiate the ADR process.  Once the parties have completed the ADR intake forms, a Neutral may be selected.

## NEUTRAL SELECTION

Parties may select a mediator or arbitrator from the Court Party Pay Panel or Pro Bono Panel or may hire someone privately, at their discretion.  Parties are assigned to a settlement officer by court staff.

## COURT ADR PANELS

**PARTY PAY PANEL**   The Party Pay Panel consists of mediators and arbitrators who have achieved a specified level of experience in court-connected cases.  The parties (collectively) may be charged $150.00 per hour for the first three hours of hearing time.  Thereafter, the parties may be charged for additional hearing time on an hourly basis at rates established by the mediator or arbitrator if the parties consent in writing.

**PRO BONO PANEL**   The Pro Bono Panel consists of trained mediators and arbitrators who have not yet gained the experience to qualify for the Party Pay Panel and experienced mediators and arbitrators who make themselves available pro bono.  Mediators and arbitrators donate their time to the courts as a way of supporting the judicial system.  It is the policy of the Court that all pro bono volunteer mediators and arbitrators provide three hours hearing time per case.  Thereafter, the parties may be charged for additional hearing time on an hourly basis at rates established by the mediator or arbitrator if the parties consent in writing.

**ENE**   The Court ENE Panel consists of experienced lawyers who have been trained to serve as neutral evaluators.  The evaluators provide preparation time and three hours hearing time per case at no charge.  Thereafter, the parties may be charged for additional hearing time on an hourly basis at rates established by the evaluator if the parties consent in writing.

**PRIVATE NEUTRAL**   The market rate for private neutrals can range from $200-$1,000 per hour.

For additional information, visit the Court ADR web application at **www.lasuperiorcourt.org** (click on ADR).

Partially Funded by the Los Angeles County Dispute Resolution Program

ADR 005 10-03
LASC Approved
(Rev. 03-06)

M009B01845

# LOS ANGELES COUNTY
## DISPUTE RESOLUTION PROGRAMS ACT (DRPA) CONTRACTORS

The following organizations provide mediation services under contract with the Los Angeles County Department of Community & Senior Services. Services are provided to parties in any civil case filed in the Los Angeles County Superior Court. Services are not provided under this program to family, probate, traffic, criminal, appellate, mental health, unlawful detainer/eviction or juvenile court cases.

### Asian-Pacific American Dispute Resolution Center
**(213) 250-8190**
(Spanish & Asian languages capability)

### California Academy of Mediation Professionals
**(818) 377-7250**

### Center for Conflict Resolution
**(818) 380-1840**

### Inland Valleys Justice Center
**(909) 397-5780**
(Spanish language capability)

### Office of the Los Angeles City Attorney Dispute Resolution Program
**(213) 485-8324**
(Spanish language capability)

### Los Angeles County Bar Association Dispute Resolution Services
**toll free number 1-877-4Resolve (737-6583) or (213) 896-6533**
(Spanish language capability)

### Los Angeles County Department of Consumer Affairs
**(213) 974-0825**
(Spanish language capability)

### The Loyola Law School Center for Conflict Resolution
**(213) 736-1145**
(Spanish language capability)

### Martin Luther King Legacy Association Dispute Resolution Center
**(323) 290-4132**
(Spanish language capability)

### City of Norwalk
**(562) 929-5603**

---

**DRPA Contractors do not provide legal advice or assistance, including help with responding to summonses. Accessing these services does not negate any responsibility you have to respond to a summons or appear at any set court date. See the reverse side of this sheet for information on the mediation process and obtaining legal advice.**

---

## THIS IS A TWO-SIDED DOCUMENT.

**What is the goal of mediation?**

The goal is to assist the parties in reaching a mutually acceptable agreement or understanding on some or all of the issues. The parties jointly become the primary decision maker in how to resolve the issues as opposed to the traditional judge and/or jury system.

**Do I need an attorney for this?**

While it is recommended to have an attorney and/or receive legal advice before the mediation starts, you are not required to have representation. If you do have an attorney, they may participate in the mediation with you.

**How long does it take?**

Face-to-face mediations generally last one to three hours. Telephone conciliations, in which the parties do not meet face to face, vary from a few days to several weeks. Much depends on the number of parties involved and the complexities of the issues. When the mediation takes place depends on parties scheduling availability.

| **A Mediator helps parties. . .** | A Mediator does not… |
|---|---|
| ♦ Have productive discussions | ♦ Provide advice or opinions |
| ♦ Avoid or break impasses | ♦ Offer legal information |
| ♦ Defuse controversy | ♦ Make decisions for parties |
| ♦ Generate options that have potential for mutual gain | ♦ Represent or advocate for either side |
| ♦ Better understand each other's concerns and goals | ♦ Judge or evaluate anyone or anything |
| ♦ Focus on their interests rather than their positions | ♦ Conduct research |
| | ♦ "Take Sides" |

**What does it cost?**

The first three hours of any mediation are free. Thereafter, charges are based on income or revenue. All fees are waived for low-income individuals.

**Legal Advice/Information**

**If you want to retain an attorney,** a list of state certified referral services is at courtinfo.ca.gov which also has an on-line self help legal center.

**Self-Help Legal Access Centers** are at the Inglewood, Palmdale, Pomona, and Van Nuys courthouses.  nls-la.org and lafla.org

**What is the difference between the contractors listed and the Superior Court ADR Office?**

The services offered by the contractors listed may be accessed immediately. Those offered by the Superior Court ADR Office, also a DRPA contractor, may not be accessed by parties until a court appearance, or at the directive of the judge assigned to the case.

**Court Personnel** can answer non-legal questions (forms, fees, fee waivers).  lasuperiorcourt.org

**Low-income individuals** may qualify for help from non-profit legal organizations. Court Personnel and DRPA contractors have such listings.

**Dispute Resolution Programs Act (DRPA) Grants Administration Office**
**(213) 738-2621**
**(The DRP Office is not a Superior Court Office.  Consult your phone directory to locate the number of the Court Office on your summons.)**

## THIS IS A TWO-SIDED DOCUMENT.

ADR 007 07-04
LASC Approved

M009B01847

| NAME, ADDRESS, AND TELEPHONE NUMBER OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | *Reserved for Clerk's File Stamp* |
|---|---|---|

ATTORNEY FOR (Name):

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| **STIPULATION TO PARTICIPATE IN ALTERNATIVE DISPUTE RESOLUTION (ADR)** | CASE NUMBER: |
|---|---|

The undersigned parties stipulate to participate in an Alternative Dispute Resolution (ADR) process in the above-entitled action, as follows:

- ☐ Mediation
- ☐ Non-Binding Arbitration
- ☐ Binding Arbitration
- ☐ Early Neutral Evaluation
- ☐ Settlement Conference
- ☐ Other ADR Process *(describe)*: _____

Dated: _____

| Name of Stipulating Party<br>☐ Plaintiff ☐ Defendant ☐ Cross-defendant | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
|---|---|---|
| Name of Stipulating Party<br>☐ Plaintiff ☐ Defendant ☐ Cross-defendant | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
| Name of Stipulating Party<br>☐ Plaintiff ☐ Defendant ☐ Cross-defendant | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
| Name of Stipulating Party<br>☐ Plaintiff ☐ Defendant ☐ Cross-defendant | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |

☐ **Additional signature(s) on reverse**

ADR 001 10-04
LASC Approved
(Rev. 03-06)

**STIPULATION TO PARTICIPATE IN ALTERNATIVE DISPUTE RESOLUTION (ADR)**

Cal. Rules of Court, rule 201.9
Page 1 of 2

M00980184B

| Short Title | Case Number |
|---|---|
| | |

Name of Stipulating Party
☐ Plaintiff ☐ Defendant ☐ Cross-defendant

Name of Party or Attorney Executing Stipulation

Signature of Party or Attorney

Name of Stipulating Party
☐ Plaintiff ☐ Defendant ☐ Cross-defendant

Name of Party or Attorney Executing Stipulation

Signature of Party or Attorney

Name of Stipulating Party
☐ Plaintiff ☐ Defendant ☐ Cross-defendant

Name of Party or Attorney Executing Stipulation

Signature of Party or Attorney

Name of Stipulating Party
☐ Plaintiff ☐ Defendant ☐ Cross-defendant

Name of Party or Attorney Executing Stipulation

Signature of Party or Attorney

Name of Stipulating Party
☐ Plaintiff ☐ Defendant ☐ Cross-defendant

Name of Party or Attorney Executing Stipulation

Signature of Party or Attorney

Name of Stipulating Party
☐ Plaintiff ☐ Defendant ☐ Cross-defendant

Name of Party or Attorney Executing Stipulation

Signature of Party or Attorney

Name of Stipulating Party
☐ Plaintiff ☐ Defendant ☐ Cross-defendant

Name of Party or Attorney Executing Stipulation

Signature of Party or Attorney

Name of Stipulating Party
☐ Plaintiff ☐ Defendant ☐ Cross-defendant

Name of Party or Attorney Executing Stipulation

Signature of Party or Attorney

Name of Stipulating Party
☐ Plaintiff ☐ Defendant ☐ Cross-defendant

Name of Party or Attorney Executing Stipulation

Signature of Party or Attorney

Name of Stipulating Party
☐ Plaintiff ☐ Defendant ☐ Cross-defendant

Name of Party or Attorney Executing Stipulation

Signature of Party or Attorney

ADR 001 10-04
LASC Approved
(Rev. 03-06)

**STIPULATION TO PARTICIPATE IN
ALTERNATIVE DISPUTE RESOLUTION (ADR)**

Cal. Rules of Court, rule 201.9
Page 2 of 2

M009B01849

**CT** CORPORATION
A WoltersKluwer Company

**Service of Process
Transmittal**
09/18/2006
Log Number 511483905

TO: Ellen Gregg
Womble Carlyle Sandridge & Rice, PLLC
301 North Main Street, Suite 300
Winston-Salem, NC, 27101

RE: **Process Served in California**

FOR: Merck & Co., Inc. (Domestic State: NJ)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| TITLE OF ACTION: | Shelly Arnold, et al., Pltfs. vs. Merck & Co., Inc., et al., Dfts. |
| DOCUMENT(S) SERVED: | Summons, Complaint, Cover Sheet(s), Notice, Attachments, Proposed Stipulation |
| COURT/AGENCY: | Los Angeles County, Los Angeles, Superior Court, CA Case # BC358531 |
| NATURE OF ACTION: | Product Liability Litigation - Drug Litigation - Vioxx |
| ON WHOM PROCESS WAS SERVED: | C T Corporation System, Los Angeles, CA |
| DATE AND HOUR OF SERVICE: | By Process Server on 09/18/2006 at 09:30 |
| APPEARANCE OR ANSWER DUE: | 30 Days |
| ATTORNEY(S) / SENDER(S): | Brian Kabateck Kabateck Brown Kellner LLP 350 S. Grand Ave 39th Floor Los Angeles, CA, 90071 213-217-5000 |
| ACTION ITEMS: | SOP Papers with Transmittal, via Fed Ex Priority Overnight, 798500466588 Email Notification, Debra A Bollwage DEBRA_BOLLWAGE@MERCK.COM Email Notification, Kristin L. Sunderman kristin_sunderman@merck.com |
| SIGNED: | C T Corporation System |
| PER: | Dianne Christman |
| ADDRESS: | 818 West Seventh Street Los Angeles, CA, 90017 |
| TELEPHONE: | 213-337-4615 |



Page 1 of 1 / GA

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of the package only, not of its contents.

M009B01850