IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | ) | MDL NO. 1657 |
| | ) | |
| PRODUCTS LIABILITY LITIGATION | ) | SECTION: L |
| | ) | |
| | ) | JUDGE FALLON |
| THIS DOCUMENT RELATES TO: | ) | |
| *Com. of Kentucky v. Merck & Co., Inc.*, | ) | |
| No. 09-CI-1671 (Franklin Cir. Ct.) | ) | |
| | ) | |
| And formerly No. 2:10-cv-1115 (E.D. La.) | ) | |

### MEMORANDUM OF LAW IN SUPPORT OF MOTION TO ENJOIN DR. DAVID EGILMAN AND HIS COUNSEL FROM PURSUING AN ORDER FROM KENTUCKY STATE COURT THAT WOULD DECLARE PROTECTED DOCUMENTS NON-CONFIDENTIAL

By virtue of his status as an expert who agreed to be bound by the protective orders in this MDL proceeding, Dr. David Egilman has gained access to several thousand confidential documents over the course of many years and several bellwether trials. In the past few months, however, Dr. Egilman has sought to strip those documents of their protections under this Court's orders in an entirely different forum – the Circuit Court of Franklin County, Kentucky. The ostensible basis for this maneuver is that the documents were also produced in that court in connection with the proceedings in *Kentucky ex rel. Conway v. Merck & Co.* But only a tiny fraction of the **12,000** documents Dr. Egilman has attacked in Kentucky were formally requested and produced there; the vast majority were originally produced in this MDL proceeding and are connected to the Kentucky proceeding only because Dr. Egilman brought them to his Kentucky deposition, where they were collectively marked as two exhibits. Dr. Egilman has now made clear that he seeks an order that would: (1) de-designate the documents as confidential under the Kentucky state protective order (even though they were never designated under the Kentucky

1159382v1

order in the first place); and (2) publish the documents, thereby abrogating any protection afforded by this Court's orders.

This Court can and should act to protect its jurisdiction and enforce its judgments by enjoining Dr. Egilman and his counsel from any further pursuit of de-designation or publication of MDL-produced confidential documents in Kentucky. The Court's orders and prior pronouncements make it clear that the confidential status of documents produced under its protective orders are to be finally decided by this Court – not by Dr. Egilman and his lawyers in a state-court proceeding. Nevertheless, Dr. Egilman's campaign – if successful – would destroy the Court's ability to make those decisions because the documents would already be in the public domain. The Court should act to protect its discovery orders and enjoin Dr. Egilman and his counsel from continuing to pursue public release of the documents in Kentucky.

## BACKGROUND

The parties in this MDL proceeding have engaged in extensive pretrial preparations, during which "[m]illions of documents were discovered and collated," "[t]housands of depositions were taken and at least 1,000 discovery motions were argued." *In re Vioxx Prods. Liab. Litig. ("Plubell")*, 869 F. Supp. 2d 719, 721 (E.D. La. 2012). The Court conducted six bellwether trials, resulting in one verdict for a plaintiff, one hung jury, and four verdicts for Merck. *Id.* Ultimately, after more than a year of effort comprising more than fifty meetings between counsel for Merck and Court-designated negotiating counsel for plaintiffs, the parties reached an agreement to settle most of the pending personal-injury cases, ultimately resolving almost 50,000 cases. *Id.* at 721-22. Other settlements followed from the efforts of the parties and under the Court's guidance, including resolution of economic-loss claims asserted by private and governmental third-party payors. *See, e.g., id.* at 722-23. Nevertheless, litigation remains ongoing, with suits brought by certain states and certain individuals still pending.

One early and significant undertaking by the parties in the MDL proceeding concerned the treatment of confidential information sought in discovery.  On May 24, 2005, the Court issued a protective order to "facilitate a timely and efficient discovery process" in this litigation, while addressing the confidentiality concerns of all parties.  (*See* PTO 13 ("MDL Protective Order") (attached as Ex. 1).)  The MDL Protective Order "govern[s] all documents, the information contained therein, and all other information produced or disclosed during th[e] [MDL] Action whether revealed in a document, deposition, other testimony, discovery response or otherwise, by any party in this Action[.]"  (*Id.* ¶ 1.)  The MDL Protective Order binds not only the parties but also the experts and consultants who receive confidential information by virtue of their participation in Vioxx proceedings – including Dr. Egilman.  (*Id.* ¶¶ 10(e), 12.)  It achieves this binding effect by requiring experts and others to sign a certification, which provides, among other things, that the signatory "agree[s] to be bound by the Stipulation and Protective Order" and "to submit to the jurisdiction of this Court for purposes of enforcing the Stipulation and Protective Order," and that he or she "understand[s] that the Court may impose sanctions on [the signatory] for any violation of the Stipulation and Protective Order."  (*Id.* Ex. A, at 1.)  The order is to "continue in force until amended or superseded by express order of the Court," and it "survive[s] any final judgment or settlement" in the MDL action.  (PTO 13 ¶ 29.)

Under the MDL Protective Order, "[a] party . . . may designate as Confidential Information any document or information produced by or testimony given by any other person or entity that the party reasonably believes qualifies as such party's Confidential Information pursuant to th[e] Protective Order."  (*Id.* ¶ 9.)  Designated documents are protected when used in the MDL proceeding and retain their protection under the MDL order even if they are used in other litigation as well.  (*See id.* ¶ 10(f).)  To the extent there is any disagreement among the

- 3 -

parties about the confidential nature of a particular document, the MDL Protective Order provides a process for seeking de-designation of confidential information and mounting challenges to de-designation in this Court.  (*See id.* ¶ 22.)

More than four years after the MDL Protective Order was entered, the Commonwealth of Kentucky filed suit against Merck on September 28, 2009, asserting a single claim for alleged violations of the Kentucky Consumer Protection Act ("KCPA").  (*See generally* Compl., ECF No. 1, *Kentucky ex rel. Conway v. Merck & Co., Inc.*, No. 2:10-cv-1115 (E.D. La.).)[1]  The gravamen of the suit was that "Merck materially misrepresented the cardiovascular safety of Vioxx®" and "misstated, overstated or exaggerated the efficacy of Vioxx® in comparison to similar medications."  (*Id.* ¶¶ 21-22.)  Based on these allegations, the Commonwealth sought injunctive relief and civil penalties.  (*Id.*, Prayer for Relief.)  Merck subsequently removed the Kentucky case to federal court, and on April 15, 2010, the case was transferred to this Court as part of the Vioxx MDL proceeding.  Following the case's transfer to this Court, significant discovery was conducted in that case and in the other AG cases that were pending in the MDL proceeding.  (*See generally* Pretrial Order No. 39 at 2, Dkt. No. 18,584, May 1, 2009 (attached as Ex. 2); Pretrial Order No. 39A at 2, Dkt. No. 45,738, June 29, 2010 (attached as Ex. 3); Pretrial Order No. 39B at 1-2, Dkt. No. 63,895, June 5, 2012 (attached as Ex. 4).)  As counsel for the Commonwealth told the Court prior to remand, Kentucky received "the full benefit of the lengthy and voluminous discovery that this Court has overseen for the past six years" by virtue of its participation in the MDL proceeding.  (Letter from William R. Garmer to Hon. Eldon E. Fallon at 1-2, Aug. 1, 2011 (attached as Ex. 5).)  The case was ultimately remanded to Kentucky state court on January 3, 2012, and the parties settled the case before it went to trial, in mid-2013.

---

[1]  Merck removed the action to federal court, after which it was transferred to this Court.

Even though Kentucky and Merck resolved the Commonwealth's case, Dr. Egilman has been crusading to obtain de-designation of thousands of confidential documents in that state-court proceeding. Dr. Egilman's choice of venue was odd because the vast majority of the documents for which Dr. Egilman seeks de-designation were originally produced in the MDL proceeding and thus were never "designated" in Kentucky in the first place. Only a tiny fraction were ever formally produced in Kentucky, and Merck did not understand (or ever intend) them to be covered by the protective order entered in the Kentucky state proceeding, which did not even exist until eight years after this Court issued the MDL Protective Order. Specifically, of the more than 12,000 documents (including duplicates) that Dr. Egilman challenges, only 225 documents were produced or reproduced directly in the Kentucky matter.[2] The only reason the remaining documents have any connection to the Kentucky case is that Dr. Egilman brought them to his deposition as part of a collection of documents on which he claims to have relied and they were marked as exhibits at the close of the deposition. (*See* Egilman Dep. 302, 308-09, May 24, 2013 (attached as Ex. 6).)

Merck raised its concerns about Dr. Egilman's de-designation efforts in a letter to this Court, leading to a telephonic hearing on February 28, 2014. At that hearing, the Court made clear that, regardless of what transpired in Kentucky, any information designated as confidential in the MDL proceeding cannot be disclosed unless and until the Court determines that such information is not confidential. (Hr'g Tr. ("MDL Hr'g Tr.") 18:3-20:10, Feb. 28, 2014 (attached as Ex. 7).) On March 5, the Kentucky state court held a hearing to address Dr. Egilman's requests. Dr. Egilman represented to the court that his requests implicated only 400-450

---

[2] Most, but not all, of the remaining documents were originally produced in this MDL proceeding. But there are other protective orders implicated as well. Dr. Egilman challenges documents that are covered under protective orders in the New Jersey coordinated proceedings, the *Plubell* case in Missouri, the Vioxx securities litigation and in other individual cases.

documents. The Kentucky state court echoed this Court in recognizing that any confidentiality ruling in Kentucky cannot "supersede any other court's orders that may be in effect." (Hr'g Tr. 43:6-13, Mar. 5, 2014 (attached as Ex. 8).) Shortly after conducting that hearing, the Kentucky court issued an order stating, *inter alia*: "If the parties are unable to agree on the terms and conditions for designation, then the document will have its designation removed, unless Merck, within 30 days (by April 9, 2014), moves the Court for an order upholding the designation. If Merck files such a motion, it shall have the burden of proving that the material is subject to protection under CR 26.03(g)." (Order ¶ 2, Mar. 10, 2014 (attached as Ex. 9).) Given the lack of clarity surrounding the documents implicated by Dr. Egilman's requests, which Dr. Egilman refused to clarify by adding references to Bates numbers, Merck requested and was granted more time to respond to Dr. Egilman's challenges. (*See* Order, Mar. 20, 2014 (attached as Ex. 10).)

On March 26, Ed Silverman of the *Wall Street Journal* posted an article on the newspaper's website featuring direct quotations in which Dr. Egilman purported to describe the content of confidential Vioxx documents. *See* Ed Silverman, More Disclosure Coming in Merck's Decade-Long Vioxx Nightmare, Mar. 26, 2014, http://blogs.wsj.com/corporate-intelligence/2014/03/26/more-disclosure-coming-in-mercks-decade-long-vioxx-nightmare (attached as Ex. 11). Upon learning of the article, Merck filed a motion for sanctions against Dr. Egilman in this Court on April 4. (*See* Mot. for Sanctions Against Dr. David Egilman, Dkt. No. 64,894, Apr. 4, 2014 (attached as Ex. 12).) Rather than respond to the motion, counsel for Dr. Egilman informed the Court that he was unavailable to attend a hearing on Merck's motion until June. Pursuant to his request, the Court issued an order setting a hearing date for June, making Dr. Egilman's response due May 29, 2014. In the same order, the Court expressly directed that

Dr. Egilman "strictly comply with the [confidentiality] requirements imposed by Pretrial Orders 13, 13A, and 13B."  (Order, Dkt. No. 64,900, Apr. 14, 2014 (attached as Ex. 13).)

Over the course of this dispute, the scope of Dr. Egilman's requests has expanded dramatically, *from 400-450 documents to 12,000*.  Given the exploding volume of documents at issue, nearly all of which originated from the MDL proceeding, and seeing no reason why the confidential designations of 12,000 documents should be litigated twice, Merck sent a letter to the Kentucky state court explaining that it "does not plan to file a motion seeking to defend the confidentiality designation of any documents sought by Dr. Egilman that were only produced in other proceedings."  (Letter from S. Pope to Hon. Phillip Shepherd at 1, Apr. 17, 2014 ("4/17 Shepherd Ltr.") (attached as Ex. 14); *see also* Letter from S. Pope to A. Oldfather at 1, Apr. 17, 2014 ("[m]any of these documents were designated as, and remain, confidential under other protective orders issued by other courts") (attached as Ex. 15).)  With respect to the few documents identified in Dr. Egilman's requests that were actually produced in the Kentucky action, Merck plans to file a motion in Kentucky to protect some of the confidentiality designations and to withdraw its designations as to others.

Dr. Egilman's counsel responded to Merck's letter to the Kentucky state court by filing a motion for sanctions.  The gravamen of Dr. Egilman's motion is that Merck purportedly violated Judge Shepherd's orders by failing to challenge the de-designation of documents under the Kentucky protective order if those documents were produced in other proceedings.  (*See* Dr. Egilman's Mot. to Declare Documents Non-Confidential, Apr. 28, 2014 ("Egilman Sanctions Motion) (attached as Ex. 16).)  Merck opposed the motion, explaining that Judge Shepherd's orders do not place any affirmative obligation on Merck to resist de-designation.  (*See* Merck's Opp'n to Dr. Egilman's Mot. to Declare Documents Non-Confidential at 7-8, May 12, 2014

(attached as Ex. 17).) Instead, they simply provide that confidential designations are removed unless the parties reach an agreement or a motion is filed to uphold the confidential designation. (*See id.*) As Merck further explained in its opposition, it does not benefit anyone – Merck, Dr. Egilman or the Kentucky court – to litigate matters in Kentucky that would still need to be litigated again in this Court.

Notably, Dr. Egilman's motion requests not only de-designation but **publication** of thousands of documents, the overwhelming majority of which were not produced in the Kentucky proceeding, as explained above. The basis for Dr. Egilman's motion was his contention that de-designating a document in Kentucky renders it "**presumptively public**," notwithstanding the protections provided by the MDL protective orders and this Court's express statement that the documents would remain confidential under the MDL order even if they are de-designated in Kentucky. (*See* Egilman Sanctions Mot. at 3 (emphasis added); *see also id.* at 13 (asserting that a "document loses its protection once any jurisdiction has declared it to be unprotected, making it **presumptively public**") (emphasis added).)

The parties recently participated in a hearing before Judge Shepherd regarding Dr. Egilman's motion. During that hearing, Dr. Egilman reiterated that he is seeking the actual publication of these documents and not merely de-designation in the Kentucky proceeding. (Hr'g Tr. 42:12-18, May 14, 2014 (attached as Ex. 18) ("[T]he next step of our relief . . . is that these documents be made public in some way, either by being on a CD and filed in the court record . . . or the clerk can charge for a copy of the DVD[.]").)

## ARGUMENT

Pursuant to the All Writs Act, federal courts possess broad authority to "issue all writs necessary or appropriate in aid of their respective jurisdictions." 28 U.S.C. § 1651. A court's proper use of its power to issue writs under the All Writs Act is defined by the Anti-Injunction

Act, a complement to the All Writs Act, which provides that a federal court is authorized to stay state-court proceedings or enjoin parties to such proceedings where doing so is necessary to: (1) aid the court's jurisdiction; or (2) protect or effectuate its judgments. 28 U.S.C. § 2283.[3]

Applying these exceptions, appellate courts have approved the use of the writ power to enjoin or stay conflicting state-court proceedings, *see, e.g.*, *Newby v. Enron Corp.*, 338 F.3d 467, 473-74 (5th Cir. 2003); *In re Corrugated Container Antitrust Litig.*, 659 F.2d 1332, 1334 (5th Cir. 1981), including the issuance of "injunction[s] to protect the integrity of . . . discovery order[s]," *Winkler v. Eli Lilly & Co.*, 101 F.3d 1196, 1202 (7th Cir. 1996). It is well settled that such orders may be directed at the parties, their counsel or the state court itself. *See Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 287 (1970); *In re Diet Drugs*, 282 F.3d 220, 233 (3d Cir. 2002) (affirming injunction aimed at counsel rather than the state court).

Here an injunction against Dr. Egilman and his counsel is justified under both categories of the Anti-Injunction Act. **First**, an order enjoining Dr. Egilman and his counsel from seeking de-designation or publication of confidential MDL information in Kentucky state court would aid the Court's jurisdiction over the Vioxx MDL proceeding generally and over its discovery process specifically. **Second**, such an injunction would protect and effectuate the MDL Protective Order entered by this Court. For either of these reasons, this Court should issue an injunction.

---

[3] In considering the interaction between the All Writs Act and Anti-Injunction Act, courts have made it clear that the parallel "necessary in aid of jurisdiction" language is construed similarly in both acts. *See Diet Drugs*, 282 F.3d at 239 (internal quotation marks and citation omitted); *In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 261 F.3d 355, 365 (3d Cir. 2001); *In re Baldwin-United Corp. (Single Premium Deferred Annuities Ins. Litig.)*, 770 F.2d 328, 335 (2d Cir. 1985). Thus, "a finding that an injunction is 'necessary in aid' of jurisdiction for purposes of one [of] these statutes implies its necessity for purposes of the other." *Diet Drugs*, 282 F.3d at 239.

I.     **THE COURT SHOULD ENTER AN INJUNCTION IN AID OF ITS JURISDICTION.**

First, an injunction barring Dr. Egilman and his counsel from seeking disclosure of confidential information protected by the MDL Protective Order in Kentucky state court is necessary in aid of this Court's jurisdiction. In construing the "necessary in aid of its jurisdiction" prescription of the All Writs and Anti-Injunction Acts, the U.S. Supreme Court has expressly recognized that "some federal injunctive relief may be necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case." *Atl. Coast Line R.R. Co.*, 398 U.S. at 295.

Traditionally, the power to grant injunctions or stays in aid of jurisdiction has been conceptualized as the power to protect the court's control over *in rem* proceedings. *See, e.g.*, *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, MDL No. 2047, 2011 U.S. Dist. LEXIS 62222, at *10 (E.D. La. June 9, 2011); *Diet Drugs*, 282 F.3d at 234. Thus, for example, where a federal court has jurisdiction over a *res* and a state court exercises jurisdiction over that same *res*, the federal court may enjoin the parties from proceeding in state court. *Kline v. Burke Constr. Co.*, 260 U.S. 226, 229 (1922).

This principle has been extended to multidistrict litigation, in which such proceedings themselves are regarded as the necessary *res* to justify injunctions or stays under the All Writs Act. As the Court recently explained in enjoining another Vioxx state-court proceeding, "complex litigation cases are sufficiently similar to *in rem* proceedings as to permit injunctions on cases actually *in personam* in nature." *Plubell*, 869 F. Supp. 2d at 726 (granting motion for injunction under All Writs Act). This is because multidistrict proceedings are large and complex, and, particularly in their later stages, they come to "embody an enormous amount of

time and expenditure of resources." *Diet Drugs*, 282 F.3d at 236.  As such, like a traditional *in rem* proceeding, the investment of effort in mature MDL proceedings takes on the character of property that may become "vulnerable to parallel state actions."  *Id.*; *see also In re Corrugated Container*, 659 F.2d at 1334-35 (affirming injunction in MDL proceeding under the court's in-aid-of-jurisdiction power in part because "[t]his complicated antitrust action has required a great deal of the district court's time and [has] necessitate[d that it] maintain a flexible approach in resolving the various claims of the many parties").

Consistent with these principles, MDL courts have exercised jurisdiction under the All Writs Act to bar individuals or their counsel from taking action in parallel state-court actions that could interfere with the court's ability to efficiently manage the MDL proceeding.  In particular, because "[a] court's power to guide discovery is concomitant with its duty to provide effective management of complex litigation," federal courts have issued injunctions or stays under the All Writs Act "to protect the integrity of a discovery order."  *Winkler*, 101 F.3d at 1201-02; *see also Sperry Rand Corp. v. Rothlein*, 288 F.2d 245, 248 (2d Cir. 1961) (affirming district court's order "enjoining any use of or reference to information or materials first divulged in the course of federal discovery" by state-court plaintiffs under the All Writs Act).

In *Newby*, for example, the U.S. Court of Appeals for the Fifth Circuit affirmed an injunction against state-court proceedings on the ground that it was necessary in aid of the district court's jurisdiction over the MDL proceeding of all Enron-related litigation.  338 F.3d 467.  In that case, "[d]iscovery in all cases ha[d] been coordinated," and the district court had ordered the parties to establish a document depository, established a pre-trial scheduling order, directed the defendant Arthur Andersen LLP to segregate, preserve, and protect all writings and other materials relating to Enron, and denied a motion by the plaintiffs to freeze the defendants'

1159382v1

assets. *Id.* at 469.  Thereafter, individuals filed a securities-related lawsuit in Texas state court against many of the same defendants as in the case before the MDL court. *Id.* at 470.  Pursuant to the state-court plaintiffs' request, the state court "allowed immediate discovery, rejected a request by the Defendants to coordinate discovery with the *Newby* litigation and set a schedule that would result in a trial in state court before the trial in the federal court." *Id.*  The state-court plaintiffs sought another order directing Andersen to preserve documents and "also sought a hearing on a request for [a] temporary injunction to freeze Defendants' assets." *Id.* at 470, 473.  The defendants sought emergency relief in the federal MDL court under the All Writs Act with respect to the plaintiffs' requests in the state court for an order directing Andersen to preserve documents and an order freezing the defendants' assets. *See id.*  The MDL court granted the defendants' request, enjoining the state-court plaintiffs from "seeking any injunctive relief in state court without prior leave from the federal district court." *Id.*

The Fifth Circuit affirmed, explaining that "the injunctions sought in state court threatened to interfere with the federal court's determinations as to whether or not injunctions should issue." *Id*. at 475.  Specifically, the request for another order directing Andersen to preserve documents "duplicated relief granted by the federal court and thus collaterally attacked the district court's ruling." *Id.*  And the request for an injunction freezing the defendants' assets was "virtually identical to temporary injunctive relief sought" and denied in federal court. *Id.*  The Fifth Circuit further noted the district court's conclusion that the state-court counsel's actions "appeared to be . . . designed to taunt the parties and the Court and to flaunt the Court's jurisdiction." *Id.* (internal quotation marks and citation omitted).  Thus, because it was clear that the "injunctions sought in state court threatened to interfere with the federal court's orderly handling of the massive federal litigation," the district court's decision to enjoin state-court

plaintiffs was proper. *Id.* at 474, 476; *see also Winkler*, 101 F.3d at 1202 ("We agree that the 'necessary in aid of jurisdiction' exception should be construed 'to empower the federal court to enjoin a concurrent state proceeding that might render the exercise of the federal court's jurisdiction nugatory.'") (citation omitted).

The same logic applies here. This MDL proceeding, which has been ongoing for more than nine years, is more than sufficiently advanced to constitute a conceptual *res*. This Court has already recognized as much, explaining that the Vioxx MDL proceeding is sufficiently "developed" to warrant application of the necessary-in-aid-of-jurisdiction exception outside the *in rem* context. *Plubell*, 869 F. Supp. 2d at 728. That holding continues to be apt in the context of discovery, the coordination of which has been a core function of this proceeding since its inception. *See Newby*, 338 F.3d at 469 (affirming injunction against state-court plaintiffs that threatened to interfere with the MDL proceeding in which the court had already "ruled on numerous motions" and had "been heavily engaged in the considerable task of managing th[e] complex litigation" with respect to discovery). Dr. Egilman's campaign in parallel state proceedings intrudes on this Court's jurisdiction over the conceptual *res*. As a preliminary matter, his insistence that the Kentucky court treat the many thousands of documents produced in the MDL proceeding as falling within the scope of its protective order itself intruded upon this Court's jurisdiction because it "duplicated relief granted by the federal court and thus collaterally attacked the district court's ruling." *Id.* at 475. And his continued pursuit of a state-court order to de-designate and publish confidential documents that were produced in the MDL proceeding (and never actually designated in Kentucky) obviously "threaten[s] to interfere with [this] [C]ourt's determinations as to whether" those documents are confidential under the MDL Protective Order. *Id.* In short, because efforts by Dr. Egilman and his counsel in the Kentucky

- 13 -

state proceeding "might render the exercise of the federal court's jurisdiction nugatory," *Winkler*, 101 F.3d at 1202 (internal quotation marks and citation omitted), an injunction is necessary to preserve this Court's jurisdiction.[4]

## II. THE COURT SHOULD ENTER AN INJUNCTION TO PROTECT AND EFFECTUATE ITS JUDGMENT.

The Court should also enter an injunction "to protect [and] effectuate its judgments." 28 U.S.C. § 2283. The Supreme Court "has repeatedly recognized the power of a federal court to issue [an injunction] under the All Writs Act as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued." *United States v. N.Y. Tel. Co.*, 434 U.S. 159, 172 (1977). Thus, injunctive relief is proper "to preserve the court's ability to effectively rule on matters presently before it, to order meaningful relief with respect to motions pending before it, and to prevent abuse of the justice system." *Newby v. Enron Corp.*, No. H-01-3624, 2002 U.S. Dist. LEXIS 3949, at *22-23 (S.D. Tex. Feb. 15, 2002) (internal quotation marks and citation omitted), *aff'd in relevant part*, 338 F.3d 467 (5th Cir. 2003); *see also Sperry Rand*, 288 F.2d at 249 ("[W]hen, as in this case, the court believes that suit is being brought elsewhere to undermine a decision already made by the court, an injunction is proper.").

In *ONBANCorp, Inc. v. Holtzman*, for example, a corporation brought a federal action against Seymour Holtzman alleging that he violated securities laws by improperly soliciting proxies. No. 96-CV-17000 (RSP/DNH), 1997 U.S. Dist. LEXIS 9502, at *2 (N.D.N.Y. June 27,

---

[4] No further showing is required. Although traditional, permanent injunctions require proof of: (1) success on the merits of an underlying cause of action, (2) irreparable injury absent the injunction, and (3) a net benefit to the injunction based on the balance of harms, *see, e.g.*, *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1097 (11th Cir. 2004), these factors do not play any role in determining the propriety of an injunction under the All Writs Act, *see generally id.* at 1100-04. This is so because, "[w]hereas traditional injunctions are predicated upon some cause of action, an All Writs Act injunction is predicated upon some other matter upon which a district court has jurisdiction." *Id.* at 1100. "[A] court's traditional power to protect its jurisdiction, codified by the Act, is grounded in entirely separate concerns" than those that justify traditional injunctions. *Id.* at 1100-01 (collecting authority, including *Teas v. Twentieth Century-Fox Film Corp.*, 413 F.2d 1263, 1266-67 (5th Cir. 1969)); *see also In re Chinese-Manufactured Drywall*, 2011 U.S. Dist. LEXIS 62222, at *21-24 (same).

1997). While the federal action was still pending, Holtzman and his wife filed an action in state court against the corporation and others, pleading claims of intentional infliction of emotional distress and defamation. *Id.* at *2-3. Along with their state-court complaint, the Holtzmans served discovery demands on the defendants in state court. *Id.* at *3. A protective order governing discovery had been entered in the federal action that: (1) specified that certain categories of information could be designated as confidential; (2) described the mechanics of making such a designation; and (3) set forth a procedure for challenging designation of discovery as confidential. *Id.* at *7. The parties had initially agreed that the protective order would govern both proceedings, but the Holtzmans' attorney refused to enter the order in the state-court proceeding. *See id.* at *4-10. With depositions in the state-court proceeding looming, the corporation sought an injunction under the All Writs Act barring "Holtzman and anyone acting on his behalf from seeking any discovery in the state action." *Id.* at *9-13. The corporation argued that, because "there is a substantial overlap between the discovery sought in the federal and state actions and therefore the same documents will be produced in both actions," allowing discovery to proceed in state court "without adher[ence] to the [federal] Confidentiality Order will render the protection of that order illusory." *Id.* at *20. The court agreed and granted the corporation's request. *Id.* at *26 ("If using the [state] process, Holtzman can get the same documents without confidentiality protections, [the Confidentiality Order] is illusory.").

Here, too, Dr. Egilman's actions threaten to "render the protection of [the MDL Confidentiality Order] illusory." *Id.* at *20. Although the state court here does have its own protective order, Dr. Egilman is attempting to use the processes contemplated under that order to divest this Court of any power to decide the confidentiality of documents originally produced under the auspices of MDL discovery orders. The Court has already made clear that it did not

- 15 -

1159382v1

intend to permit this result when it expressly stated that any information designated as confidential in this MDL proceeding cannot be disclosed unless and until it determines that such information is not confidential. (MDL Hr'g Tr. 18:3-20:10.) Notwithstanding this unambiguous pronouncement, Dr. Egilman appears to be resorting to Kentucky court specifically to evade and subvert the MDL Protective Order.[5] Accordingly, injunctive relief is necessary "to effectuate and prevent the frustration of orders [this Court] has previously issued." *N.Y. Tel. Co.*, 434 U.S. at 172.

## CONCLUSION

For the foregoing reasons, the Court should enter an Order enjoining Dr. Egilman and his counsel from seeking de-designation or publication of documents marked as confidential under the MDL Protective Order in Kentucky state court.

Dated: May 27, 2014

Respectfully submitted,

*/s/ Dorothy H. Wimberly*
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, LA 70130

Douglas R. Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth St., N.W.
Washington, DC 20005

---

[5]  Notably, in such a case, an injunction would "not so much interfere with the state court proceeding as prevent state court interference with the federal proceeding." *Diet Drugs*, 282 F.3d at 239; *see also Winkler*, 101 F.3d at 1203 ("Litigants who engage in forum-shopping, or otherwise take advantage of our dual court system for the specific purpose of evading the authority of a federal court, have the potential 'to seriously impair the federal court's flexibility and authority to decide that case.' Indeed, although an injunction is extraordinary relief, where such abuses exist, failure to issue an injunction may create the very 'needless friction between state and federal courts' which the Anti-Injunction Act was designed to prevent.") (citations omitted).

1159382v1

                    John H. Beisner
                    Jessica Davidson Miller
                    SKADDEN, ARPS, SLATE, MEAGHER &
                    FLOM LLP
                    1440 New York Avenue, N.W.
                    Washington, DC 20005

                    ATTORNEYS FOR MERCK SHARP &
                    DOHME CORP.

1159382v1

**CERTIFICATE OF SERVICE**

      I hereby certify that the above and foregoing supporting memorandum has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail, upon Liaison Counsel Ann Oldfather by e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8C, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 27th day of May, 2014.

          */s/ Dorothy H. Wimberly*
          Dorothy H. Wimberly, 18509
          STONE PIGMAN WALTHER WITTMANN L.L.C.
          546 Carondelet Street
          New Orleans, Louisiana 70130
          Phone:  504-581-3200
          Fax:     504-581-3361
          dwimberly@stonepigman.com

          Defendants' Liaison Counsel

1159382v1