# EXHIBIT 5

# Garmer & Prather, PLLC

ATTORNEYS AT LAW

141 NORTH BROADWAY
LEXINGTON, KENTUCKY 40507
(859) 254-9351 • Fax (859) 233-9769
www.garmerprather.com

WILLIAM R. GARMER
JEROME P. PRATHER
SEAN E. MOYNAHAN

E-mail: bgarmer@garmerprather.com
jprather@garmerprather.com
smoynahan@garmerprather.com

August 1, 2011

VIA EMAIL: Joseph_Escandon@laed.uscourts.gov
The Honorable Eldon E. Fallon
United States District Court
Eastern District of Louisiana
500 Poydras Street, Room C-456
New Orleans, Louisiana 70130

     RE:    **In Re: Vioxx Products Liability Litigation**, MDL 1657

Dear Judge Fallon:

     The purpose of this letter is to provide the Court with the Commonwealth's proposed scheduling order. The parties were unable to provide a joint-proposal to the Court. Instead, we agreed to provide our individual proposals today and respectfully request that these issues be addressed at the August 4, 2011, Status Conference.

     The centerpiece of the Commonwealth's proposal is a request for this Court to quickly consider and rule on the Commonwealth's motion to remand. Recent events confirm that this issue is ripe for determination. First, an agreement in principle has been reached with the Plaintiffs' Steering Committee regarding access to the trial package and the common-benefit fee for the Commonwealth's CPA claim. Second, Merck's actions confirm that there is no chance for global settlement in the MDL and the Commonwealth has formally rejected the NAMFCU settlement.

     As this Court recognized in February 2010, when "we get to the point where there is no more to be gained from a joint discovery and no more to be gained from an opportunity to globally resolve the matter, then it's time to make a decision on" the "serious" motions to remand. (2/3/2010 Status Conference Transcript, 11:1-8). Respectfully, we have reached that point. Rather than work with the Commonwealth towards resolution, Merck has used the false promise of settlement to delay and now asks this Court to consider dispositive issues prematurely. The only discovery remaining for the Commonwealth is specific to Kentucky and can easily be dealt with in Kentucky state court. Whether Merck improvidently removed this case to federal court should now be decided.

     The Commonwealth's proposal is attached as Exhibit A. Although the proposal provides dates for discovery in this Court, the Commonwealth's desire is for this case to be remanded to

M015D26076

state court as soon as possible. Below, I provide a detailed explanation of why considering remand is the appropriate next step.

### A. Remand is Appropriate Because the Joint Discovery Benefit of the MDL Has Been Exhausted by the Commonwealth.

The Commonwealth has exhausted the avenues for common discovery in the MDL. The Commonwealth heeded the advice of this Court and has reached an agreement in principle with the PSC regarding the trial package. The Commonwealth has also taken advantage of the document repository during the extended stay of these proceedings. Accordingly, the Commonwealth has received the full benefit of the lengthy and voluminous discovery that this Court has overseen for the past six years.

The only discovery remaining for the Commonwealth's CPA claim is Kentucky specific. As laid out in detail in the Commonwealth's letter to the Court on May 31, 2011, the Commonwealth needs discovery only on the specific requests discussed in the letter as well as "Merck's sampling practice in the Commonwealth, specific marketing practices of Merck, the total number of prescriptions provided to citizens of the Commonwealth, and third-party productions related to the circulation of Merck advertisements in the Commonwealth." This Kentucky-specific discovery is not joint-discovery and need not take place in the MDL.

### B. Remand is Appropriate Before Dispositive Issues are Considered

Merck cannot dispute that this Court should consider whether federal jurisdiction exists before resolving dispositive issues. As the Supreme Court has stated, "[w]hether the complaint states a cause of action on which relief could be granted is a question of law and just as issues of fact it must be decided after and not before the court has assumed jurisdiction over the controversy." *Bell v. Hood*, 327 U.S. 678, 682 (1946); *see also, United States ex rel. Settlemire v. District of Columbia*, 198 F.3d 913, 920 (D.C. Cir. 1999) (stating that Rule 12(b)(1) jurisdictional challenges should be addressed before Rule 12(b)(6) challenges); *Sledge v. United States*, 723 F.Supp. 2d 87, 91-92 (D.D.C. 2009) ("[I]f a court is uncertain as to whether jurisdiction exists, it cannot proceed to consider the merits of the case."). Despite this black-letter law, Merck's proposal insists that the statute of limitations issue should be decided before this Court has considered remand.

The only proposal provided by Merck to the Commonwealth includes a schedule for briefing that would address "Merck's contention that further discovery is inappropriate because the Commonwealth's claims are not legally cognizable." (Merck Proposal p. 3) (attached hereto as Exhibit B). During our meet and confer, Merck's counsel confirmed that they consider the statute of limitations issue relevant to the "scope" of discovery. The Commonwealth asks this Court to consider that requested briefing for what it is–a motion to dismiss.[1]

---

[1] The Commonwealth presumes that if Merck were successful in its proposed motion for a "protective order," their position would be that the Commonwealth's claim could not proceed on the evidence the Commonwealth already possesses. In other words, that motion is about the ultimate merit of the Commonwealth's claim, not the scope of future discovery.

To be sure, the Commonwealth is not opposed to resolving the statute of limitations' issue, but that issue should be resolved in Kentucky state court. First, as discussed above, the question of federal jurisdiction is precedent. Second, as the Commonwealth described in its March 29, 2011, letter to the Court, the discovery rule is "alive and well" in the Commonwealth and its application is an issue of state law that should be decided by a state court. *Wilson v. Paine*, 288 S.W.3d 284, 285-86 (Ky. 2009). Finally, the question of when the statute of limitations accrued will be one of fact to be ultimately resolved by a jury. *See e.g., Sapp v. CSX Transport, Inc.*, 300 S.W.3d 219, 221 (Ky. Ct. App. 2009).

Merck wants to have its cake and eat it too. Merck's proposed scheduling order would have this Court resolve a dispositive issue that should be resolved at a later date and in a different forum, while delaying the Commonwealth's motion to remand. If Merck insists that this issue be resolved, it should be resolved after this Court determines whether Merck improvidently removed this case.

### C. Merck's Recalcitrance and Delay Make Remand the Only Viable Option for Progress.

On November 22, 2010, almost nine months ago, Mr. Beisner proposed a 30-day stay because, in his words, "we may have an avenue to achieve resolution of this litigation." (11/22/10 Status Conference Transcript 11:11-25). Rather than resolution, it appears Merck's only goal has been to delay the MDL and the Commonwealth's claim. At status conference after status conference, we heard that Merck was making progress, but no results were presented. Every time this Court permitted the Commonwealth to move forward, it was met by Merck's delay. Finally, the opportunity to seriously discuss settlement was squandered by Merck's intractable position that the Commonwealth's CPA claim has no value.

#### 1. *Merck Manipulated the NAMFCU Process to Preclude Non-Medicaid Claims.*

As this Court is aware, throughout the winter, spring, and early summer, Merck was unable to reach an agreement regarding the NAMFCU settlement—leading to an ever-extending stay of these proceedings. It is the Commonwealth's understanding that the delay was related to Merck's desire to use the NAMFCU settlement documents to preclude all claims a state may have against Merck. Now that the information has been disseminated to the states, it is clear that acceptance of the NAMFCU settlement precludes all Vioxx-related claims. Although the DOJ and NAMFCU personnel disclaimed any ability to release such claims, Merck has successfully used the NAMFCU process to do just that.

#### 2. *Merck Did Not Respect the July Mediation.*

Arguably, the culmination of this nine-month process was the mediation. The stated purpose of that mediation was to discuss the global settlement of all of the states' claims. During the July 1, 2010, telephonic conference, Mr. Beisner "endorse[d]" Ms. Barrios's idea of a mediation that would attempt to globally resolve all of the states' claims. (7/1/11 Transcript 9:11-10:3, 12:14-25, 13:3-16). The purpose of the mediation was confirmed by the instruction given to the states to come prepared to "discuss amounts, to come to a tentative agreement, and

to recommend it to the AG." (7/12/11 D. Barrios Email). The given to the states to come prepared to "discuss amounts, to come to a tentative agreement, and to recommend it to the AG." (7/12/11 D. Barrios Email). The mediation was to be one with a "high level of discussion" and no "games were to be played." (*Id.*). It is the Commonwealth's understanding that the same instructions were given to Merck.

In accordance with those instructions, the Commonwealth's lawyers briefed the Attorney General's office on the status of the litigation, received settlement authority, and prepared documents and a position statement to facilitate serious negotiations with Merck. In addition to the Commonwealth, every state went to these lengths and traveled from all over the country, at great expense, to attend the mediation.

Unfortunately, Merck was unwilling to discuss settlement of the states' claims. Merck's position was that the only money available for settlement was the money available through the NAMFCU process (the same amounts available to the non-litigating states). Needless to say, it was not necessary for the states' to travel to New Orleans to learn that Merck was not going to negotiate non-Medicaid claims. After nine months of delaying the Commonwealth's CPA claim, Merck's position appears to be NAMFCU or nothing.

### 3. *Merck Has Delayed Kentucky-Specific Discovery at Every Turn.*

Merck has repeatedly and consistently delayed the Commonwealth's Court-approved attempts to pursue Kentucky specific discovery. As we pointed out to the Court in the Commonwealth's May 31, 2011, letter, it took almost two months for the Commonwealth to understand Merck's position on the specific discovery requests we provided to Merck on April 11, 2011.

More recently, Merck has delayed the joint scheduling order for over a month. Although an agreement was reached, and confirmed, that the parties would provide the Court with a joint proposal roughly two weeks after the June 22 status conference, Merck waited until July 20 to provide the Commonwealth with a response to the Commonwealth's initial proposal. During the mediation, the Commonwealth was informed that Merck unilaterally decided to postpone negotiations on a joint proposal until after the mediation. Of course, given Merck's position that it would offer no more money than NAMFCU, the Commonwealth is at a loss for how Merck's "preparations" for mediation impeded our joint proposal negotiations.

### 4. *Merck's Current Proposal is Another Example of Its Desire to Delay; the Commonwealth's Proposal is a Reasonable Alternative*

Having strung the Commonwealth along for nine months only to value the Commonwealth's CPA claim at zero in mediation, the Commonwealth is frustrated that Merck's proposed schedule could drag this litigation far into 2012. First, as the Court can determine for itself, it is difficult to understand what dates Merck is proposing because its proposal fails to

M015D26079

include a single date. Instead, it is an inter-connected web of contingent dates and "trigger dates."[2]

Based on the Commonwealth's best estimate and interpretation of Merck's proposed schedule, if this Court ruled on every question presented to it within *one week* of the completion of briefing, the Commonwealth could file its motion to remand sometime in July 2012. Needless to say, given the burden of this Court's caseload, that is an aggressive estimate. The Commonwealth believes this case should be ready for trial in July of 2012. Merck's proposal makes that impossible.

Merck also proposes to delay Kentucky-specific discovery by making it contingent on a determination by this Court that the Commonwealth's response to earlier discovery was "appropriate." (Merck Proposal p. 5). The Commonwealth sees no need to inject an inevitable future dispute as another "stay" mechanism to delay this litigation. If Merck has issues with the Commonwealth's discovery responses, we can use the method detailed in the Commonwealth's proposal to present the issue to the Court. In short, Merck's proposal is a confusing, contingent schedule that will inevitably delay the Commonwealth's claim well into 2012, and likely 2013.

The Commonwealth's proposal speaks for itself, but we consider it to be a reasonable proposal for moving this litigation forward. The Commonwealth has patiently waited for Merck to negotiate the NAMFCU settlement and has recently been disappointed that Merck was not willing to seriously discuss settlement of all of the Commonwealth's claims. Accordingly, if this Court determines that it should delay consideration of the Commonwealth's motion to remand, we ask that a schedule similar to the one the Commonwealth proposed be adopted.

### D. This Case was Improvidently Removed and Should Be Remanded.

The Commonwealth requests this Court to consider its argument that Merck improvidently removed this case to federal court. Importantly, neither this Court nor the Eastern District of Kentucky has considered whether Merck improvidently removed this case. At this point, the Commonwealth's claim is in federal court based only on Merck's notice of removal. That notice asserts two bases for federal jurisdiction, both of which are, quite simply, a stretch.

First, Merck argues the Commonwealth's claim "implicates" issues related to the FDCA. (Merck Notice of Removal ¶ 8). Setting aside the inaccuracy of that assertion, *Merrell Dow Pharmaceuticals v. Thompson*, 478 US 804 (1986), as affirmed by *Grables & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005), held that even explicit FDCA issues are insufficient to confer federal jurisdiction. Next, Merck suggests there is diversity under CAFA because "it can be inferred" that the Attorney General "intends" to seek restitution on behalf of Kentucky consumers. (Merck Notice of Removal ¶ 20). Merck's reliance on the Commonwealth's request for "such other relief as the Court deems appropriate" to support this assertion is tenuous at best. (*Id.*). It is "well accepted that a state is the real party in interest when it brings a claim for civil penalties because such awards add only to the state's

---

[2] Besides Merck's insistence to resolve the statute of limitations issue, the other sticking point in our joint-proposal negotiations was Merck's unwillingness to provide hard dates in the proposal.

M015D26080

coffers rather than any individual's bank account." *West Virginia ex rel. Graw v. Comcast Corp.*, 705 F.Supp.2d 441, 447 (E.D. Pa. 2010). Accordingly, the Commonwealth is the only plaintiff and there is no CAFA jurisdiction.

The Commonwealth is confident that once these issues are presented to the Court, it will be clear that Merck's notice of removal is insufficient to establish federal jurisdiction. Given the work the Commonwealth has completed in the MDL, the agreement regarding the trial package with the PSC, and Merck's failure to seriously work towards resolution of this claim, it is appropriate for this Court to consider this issue as soon as possible.

We apologize for the length of this letter, but were compelled to explain to the Court the basis of the Commonwealth's request that remand be quickly considered. Under the scheduling order entered by this Court on June 28, 2010, the Commonwealth's motion to remand would be set for hearing sometime after June 11, 2011. Needless to say, that date has come and gone and the Commonwealth is no closer to having these issues considered.

Thank you for your consideration of these issues.

Very truly yours,

William R. Garmer

Wrg/kng
Cc: Patrick A. Juneau, (via E-mail)
    John Beisner, (via E-mail)
    Ben Barnett, (via E-mail)
    Richard Josephson, (via E-mail)
    Dawn M. Barrios, (via E-mail)
    Andy D. Birchfield, Jr., (via-E-mail)
    Scott Powell, (via E-mail)
    Matt Minner, (via E-mail)
    Don McKenna, (via E-mail)
    Brian Vines, (via E-mail)