# EXHIBIT 8

**Page 1**

COMMONWEALTH OF KENTUCKY
FRANKLIN CIRCUIT COURT
DIVISION I
CIVIL ACTION NO. 09-CI-1671

COMMONWEALTH OF KENTUCKY, EX REL.
JACK CONWAY, ATTORNEY GENERAL        PLAINTIFF

vs.

MERCK & CO., INC, n/k/a
MERCK SHARP & DOHME CORP.        DEFENDANT

HEARING HELD MARCH 5, 2014
BEFORE THE HONORABLE PHILLIP J. SHEPHERD

COUNSEL FOR PLAINTIFF:
Elizabeth U. Natter
William R. Garmer
LeeAnne E. Applegate

COUNSEL FOR DEFENDANT:
Ben Barnett
Susan J. Pope

THE OLDFATHER LAW FIRM:
Michael R. Hasken

PRESENT BY SPEAKERPHONE:
Dr. David Egilman

ACTION COURT REPORTERS
116 Mechanic Street
Lexington, Kentucky 40507
859.252.4004

**Page 2**

1  THE COURT: ...on Wednesday, March the
2  5th for a hearing on some post-judgment matters in the
3  case of Commonwealth of Kentucky vs. Merck, which is
4  No. 09-CI-1671.
5      And this hearing is prompted by a request from
6  Dr. Egilman, who is an -- served as an expert witness
7  in the case, for the de-designation of a number of
8  documents that have been designated as confidential
9  during the discovery in this case, and there has been
10 quite a bit of exchange of correspondence with regard
11 to that.
12     And then, finally, we had a preliminary
13 hearing on it a couple of weeks ago and -- or a week or
14 so ago, and now we're going to have a hearing just to
15 hear out all parties on that request to de-designate
16 these documents.
17     And we've got a motion in support of
18 Dr. Egilman's request that has been filed by the Ann
19 Oldfather Law Firm, and I think -- and the -- Merck, as
20 defendants, are contesting the standing of both
21 Dr. Egilman and the Oldfather Law Firm to seek
22 de-designation of these documents under the protective
23 order that was entered by the Court.
24     So with that background, why don't we -- let's
25 do this for the record before -- we will call

**Page 3**

1  Dr. Egilman here in just a minute. We had told him
2  that he could appear by telephone.
3      And let's go ahead, though, before we do that
4  and get the entry of appearances for all parties who
5  are represented here today; so...
6      MR. HASKEN: Good afternoon, Your Honor.
7  My name's Michael Hasken. I'm here on behalf of Ann
8  Oldfather and the Oldfather Law Firm.
9      THE COURT: Okay. And we've got
10 representatives of the Commonwealth, who I understand
11 are -- you all are not taking a position; is that
12 right? We have Ms. Natter and Mr. Garmer and
13 Ms. Applegate.
14     MS. NATTER: Your Honor, we are here to
15 assist the Court. As Your Honor knows, in our letter
16 we said it was our impression that Dr. Egilman was a
17 proper party for the purpose of standing, although
18 we're not taking a position as to the redesignation of
19 documents.
20     THE COURT: Correct. Okay. All right.
21 So, again, we do have representatives of the attorney
22 general's office who are the -- representing the
23 Commonwealth in the matter. And then we've also got
24 counsel for Merck; so...
25     MR. BARNETT: Good afternoon, Your Honor.

**Page 4**

1  Ben Barnett on behalf of Merck, and I'm joined by my
2  colleague, Susan Pope, on behalf of Merck as well.
3      THE COURT: Okay. Okay. Well, why don't
4  we go ahead and let's see if we can get Dr. Egilman.
5      Let me ask, before we do that, are there any
6  preliminary matters we ought to address before we get
7  Dr. Egilman on the phone?
8      MR. HASKEN: Your Honor, I just want to
9  state that I'm here on behalf of Ms. Oldfather because
10 she is currently in trial. I do want to let you know
11 that I'm still making myself comfortable with the Vioxx
12 litigation. I kind of got thrown in here. I'm here
13 kind of pinch-hitting.
14     THE COURT: Okay.
15     MR. HASKEN: So I just wanted to let you
16 know that beforehand, that I'm here to help
17 Ms. Oldfather the best I can.
18     THE COURT: Okay. And I guess -- and
19 it's your -- Mr. Deskins was another associate of
20 Ms. Oldfather who filed the pleading, so you're --
21 you're really...
22     MR. HASKEN: I'm down the totem pole.
23     THE COURT: You're being thrown -- you've
24 been thrown in at the -- into the mix here maybe, as
25 often happens in a small law office, as being the

```
 1  be de-designated by Dr. Egilman are related to the
 2  opinions he was examined about or that he offered
 3  testimony about, that he has standing to request their
 4  de-designation.
 5       And I'm going to provide for a time period for
 6  Merck to confer with Dr. Egilman to see if they can
 7  reach an agreement on the scope of the documents that
 8  would be subject to his request, and if he would be
 9  willing to narrow that request in some respects, or if
10  you all can reach an agreement on it, and I think if
11  you can't, then we're going to have to have a hearing
12  with regard to the existence of good cause.
13       We've got some -- you know, we've got some
14  fairly -- we've got some very recent case law in
15  Kentucky.  The Court of Appeals decided a case just a
16  couple of weeks ago, the Paxton Media case, that dealt
17  with a request for de-designation, essentially, of a --
18  of discovery material that was produced in a lawsuit
19  involving a public agency and an employee.
20       And the Court of Appeals, in that case that
21  was decided just a couple of weeks ago, very strongly
22  reiterated the requirement that -- that -- you know,
23  that blanket designations of discovery material as
24  confidential can't withstand a request by a party with
25  standing to challenge that unless there's a very
                                                       41
```

```
 1  specific demonstration of good cause that is supported
 2  in the record.
 3       So, you know, I think the case law in Kentucky
 4  is -- at this point is certainly very -- puts a burden
 5  on the party seeking confidentiality of discovery
 6  materials that are related to a dispute involving a
 7  public agency.  So that's the framework in which I'm
 8  ruling in this case.
 9       But I don't think I'm in a position to rule on
10  the merits of confidentiality yet.  I'm going to
11  require the parties to follow the procedure that is set
12  forth in the protective order with -- and I know that's
13  kind of been short-circuited by the -- Merck's
14  argument, which is, you know, a legitimate argument to
15  make, I think, with regard to Dr. Egilman, but I think
16  it's erroneous.
17       I think he does have standing.  And so having
18  decided that he has standing, I'm going to require the
19  parties to meet and confer to see if they can reach an
20  agreement with regard to the documents he's requested.
21  And if they can't, then I think we'll have to schedule
22  a hearing on the merits of those that he is -- that
23  they can't reach agreement on.
24       And I will say with regard to any documents
25  that were within the scope of his request that were
                                                       42
```

```
 1  designated as confidential in other litigation that
 2  Dr. Egilman had access to because of his participation
 3  in the other litigation, that this Court in no way,
 4  shape, or form intends to supersede the orders of the
 5  originating courts.
 6       So I don't -- but I think that to the extent
 7  that those documents were used and the subject of
 8  Dr. Egilman's deposition in this Court, you know, this
 9  Court, I think, will have an obligation to rule on the
10  application of this Court's protective order with
11  regard to those -- those kinds of documents, but I'm
12  not going to attempt to supersede any other court's
13  orders that may be in effect.
14       And, you know, I certainly don't have any
15  opinion about whether those courts -- you know, I think
16  that what those courts do is a matter that's up to the
17  courts that originated those protective orders; so...
18       That may not be the best guidance, but I think
19  that's all I can give you all today.  And then I'll
20  enter an order that will set forth the parameters of
21  the steps that I expect the parties to take to try to
22  resolve the dispute, and if they can't resolve the
23  dispute, to bring it back before the Court for hearing
24  on any specific claims of privileges that Merck wants
25  to assert.
                                                       43
```

```
 1       MS. NATTER:  Judge.
 2       MR. BARNETT:  Your Honor.
 3       THE COURT:  Uh-huh.  Let me ask
 4  Mr. Barnett to go first.
 5       MR. BARNETT:  Thank you, Your Honor.
 6       Just two questions for you.  Some of the
 7  largest exhibits that Dr. Egilman seeks to de-designate
 8  with his deposition were not actually used in his
 9  deposition, they were merely marked for identification
10  purposes.  Is it the Court's view that those were --
11  are fair game in terms of having been brought into the
12  litigation if they were not actually discussed at the
13  deposition, were merely marked for identification
14  purposes only?
15       MS. NATTER:  Your Honor, I believe that
16  Merck had a subpoena for that deposition that required
17  Dr. Egilman to bring all the documents he was relying
18  on.
19       THE COURT:  Well, I think I'll just --
20  you know, I can't really tell you that.  I think that's
21  going to depend a lot on context.
22       And, again, you know, I think that with regard
23  to the scope of Dr. Egilman's standing here, you know,
24  it is significant to the Court that he -- you know, he
25  was retained as an expert witness by the Commonwealth
                                                       44
```