# EXHIBIT 16

FRANKLIN CIRCUIT COURT
DIVISION I
CASE NUMBER 09-CI-01671

COMMONWEALTH OF KENTUCKY                    PLAINTIFF

and

DAVID EGILMAN, M.D., M.P.H.                    MOVANT

vs.                    **NOTICE-MOTION-ORDER**

MERCK & CO., INC.                    DEFENDANT

\* \* \* \* \* \* \* \*

**NOTICE**

Please take notice that the undersigned will on Wednesday, May 7, 2014, at the hour of 9:00 a.m., in the Courtroom of the above Court, make the Motion and tender the Order set out below.

**MOVANT'S MOTION and SUPPORTING MEMORANDUM
TO DECLARE DOCUMENTS NON-CONFIDENTIAL DUE TO MERCK'S
NON-COMPLIANCE WITH COURT'S ORDER**

For several months now, Movant, Dr. Egilman, has patiently sought to engage in dialogue with Merck Sharp & Dohme Corp. ("Merck") regarding the confidential status of corporate documents that formed the basis of Dr. Egilman's expert opinion rendered in this action.  On October 29, 2013, following the procedures set out in the governing protective order, *see* Agreed Protective Order Regarding Confidential Information (entered Feb. 20, 2013), Dr. Egilman provided Merck with a list of documents that he requested be de-designated.  Merck initially refused even to discuss any of the documents with Dr. Egilman, asserting that he

lacked standing to challenge their de-designation.  Even after this Court rejected Merck's standing argument and ordered Merck to negotiate with Dr. Egilman, Merck failed to abide by this Court's direction, instead seeking additional time to respond to Dr. Egilman's requests.  Finally, after this Court ordered Merck to provide a document-by-document response to Dr. Egilman's requests, including any basis for maintaining the confidentiality of those documents, Merck provided responses on April 17 and April 21, 2014.  Unfortunately, Merck's responses are almost entirely uninformative, demonstrating an attempt to evade this Court's jurisdiction over the confidential status of documents that were relied upon and relevant to the litigation that this Court supervised.

The extent of Merck's evasion is all the more reprehensible given how inadequate its response is in light of this Court's prior orders.  The only fair reading of this Court's direction was that Merck was required to either provide a basis for asserting confidentiality or concede that the documents are not confidential.  As to eleven of more than 12,000 documents, Merck has articulated a basis for maintaining confidentiality.[1]  Merck also has agreed that some 5,000 or so of the documents identified by Dr. Egilman are not confidential at all.[2]  But as to the

---

[1]  As the governing protective order contemplates, Dr. Egilman will engage in negotiations regarding these eleven documents and they are not the subject of this motion.

[2]  Both the total number of documents and the total number given designations by Merck are likely overstated, because many of the documents appear to be duplicates.  At this point, however, because Merck has refused to provide the native data files that were used to generate the Adobe tables submitted to the undersigned, a precise number cannot be stated.

2

majority of documents identified by Dr. Egilman, Merck has unilaterally chosen ***not*** to either indicate that the document is non-confidential or to provide a basis for the confidentiality claim,[3] but has instead hidden behind the already-overruled argument that it is not obligated to do so because those documents were not "produced" in Kentucky.  *See* April 17, 2014, Letter from Susan J. Pope to the Court, at 1.  This argument was previously raised and rejected by this Court at the March 5, 2014, hearing regarding Dr. Egilman's original request for de-designation.  Thus, Merck has simply ignored the obligations that this Court and the governing confidentiality order have imposed.

In scorning the Court's Order Merck has declared itself to be a law unto itself, bound by no obligations other than those it agrees to.  While sovereigns may have this authority, corporations do not.  Under these circumstances, the only result must be that these documents are de-designated and presumptively public.  Dr. Egilman recognizes that the governing protective order contemplates that, after a period of negotiation over the basis for any confidentiality designation, Merck would be required to move this Court to defend its confidentiality designations.  However, given that as to thousands of documents Merck has refused to provide any justification for keeping thousands of documents confidential, Dr. Egilman is compelled to make this motion or else be complicit in Merck's contumacious conduct.  Therefore, Movant respectfully requests that this Court declare that to the

---

[3]  Merck reflected its choice of non-compliance by using a "not applicable" designation.

extent Merck has refused to provide any basis under Kentucky law for substantiating the confidentiality of documents identified by Dr. Egilman in his prior requests, such documents be declared presumptively public and open to disclosure. Dr. Egilman additionally requests that Merck be required to file the documents with the Court in an accessible electronic form with the objective data and OCR versions as they appear in the Merck document data base to enhance the public's access to them. Finally, Dr. Egilman requests that an appropriate sanction be issued to address Merck's continued refusal to comply with this Court's orders.

## STATEMENT OF FACTS

Because the history of this litigation is somewhat complex, we summarize it here. On October 29, 2013, Dr. Egilman first approached Merck, pursuant to the provisions of the protective order in place in Kentucky, and sought to confer regarding the confidentiality of certain documents that had been designated confidential by Merck. Merck refused to discuss the matter with Dr. Egilman, and instead asked this Court to find that Dr. Egilman did not have standing to make such a request. On March 5, 2014, this Court held a hearing regarding Dr. Egilman's request, and found that he had standing to request the de-designation of any document that formed the basis for his expert opinion in the underlying litigation.

At the March 5 hearing, Merck repeatedly requested that this Court narrow the scope of documents that were properly subject to Dr. Egilman's request for de-designation. For instance, Merck argued multiple times that Dr. Egilman had

4

improperly sought to de-designate documents that had been produced and subject to confidentiality orders in other Vioxx litigation.  *See*, *e.g.*, Transcript of March 5, 2014, Hearing ("Tr."), attached hereto as Exhibit A, at 18 ("But what Dr. Egilman has done here – what he's seeking to de-designate is not limited to documents produced in Kentucky."); Tr. 22 ("The question is why, in this closed, resolved matter, would the Court take on reviewing some unknown universe of documents which are subject to another court's protective order. We don't think that's appropriate.").

This Court rejected Merck's proposed limitation at a number of points in the hearing.  For instance, in response to Merck's argument, this Court stated "to the extent that there are documents that were designated as confidential in other cases that were brought into this ligation by virtue of the expert testimony of Dr. Egilman and formed the bases of his opinions that were testified to under oath in this case, that there is some, you know, again, legitimate interest in – in having some means of public access or public discussion or public scrutiny of that testimony."  Tr. at 37-38.  Making this reasoning explicit, this Court repeated "to the extent that the documents that have been requested to be de-designated by Dr. Egilman are related to the opinions he was examined about or that he offered testimony about, that he has standing to request their de-designation."  Tr. 40-41.  Finally, the following colloquy between Merck's counsel and the Court makes clear the scope of the Order entered by the Court:

> Mr. Barnett:  Some of the largest exhibits that Dr. Egilman seeks to de-designate with his deposition were not actually used

in his deposition, they were merely marked for identification purposes. Is it the Court's view that those were -- are fair game in terms of having been brought into the litigation if they were not actually discussed at the deposition, were merely marked for identification purposes only?

\*   \*   \*   \*

The Court:  Well, I think I'll just -- you know, I can't really tell you that. I think that's going to depend a lot on context. And, again, you know, I think that with regard to the scope of Dr. Egilman's standing here, you know, it is significant to the Court that he -- you know, he was retained as an expert witness by the Commonwealth and he gave testimony, and I think to the extent that the documents at issue are documents that he reviewed in preparation for his deposition and may have formed the bases of the opinions he was expressing, that those -- that those kinds of documents, you know, are fair game for his request.

Tr. 44-45.

On March 10, 2014, this Court entered an Order confirming the decisions rendered at the March 5 hearing, stating that "[t]he public has an interest in evaluating Dr. Egilman's opinions and the documents on which they were based." *See* March 10, 2014, Order on Standing ("Standing Order") at 1.  That Order determined that in response to Dr. Egilman's request for de-designation, Merck must specify on a document-by-document basis its reasons for designating any document confidential.  *See id.* at 2; *see also* April 10, 2014, Order at 1.  In addition, the Court resolved the status of all of the allegedly confidential documents that were identified as Kentucky documents.  *See* Standing Order at 2.  For other documents, presumably including those that were not specifically marked as "Kentucky documents," Merck was obliged both to state the basis for which there is continued protection under the protective order and also state whether the

6

documents are subject to protective order in any other case, with the requirement that Merck provide copies of those protective orders. *Id.* at 3. Thus, this Court's March 10, 2014 order clearly contemplated that the universe of documents subject to Dr. Egilman's challenge included documents produced in other Vioxx litigation but relied upon by Dr. Egilman for his expert opinions.

Subsequent to this Court's March 10 Order, Dr. Egilman propounded additional requests for de-designation to Merck, including documents that were not originally produced in the Kentucky litigation, but that he relied upon in arriving at his opinion in the Kentucky case. Merck subsequently sought recourse again before this Court, requesting an extension of time and asking that Dr. Egilman be required to produce a single list of documents, to better facilitate their response to his requests. *See generally* Merck's Motion for Extension of Time Under Court's March 10, 2014 Order, And For Other Relief. Notably, Merck did not request in that motion that Dr. Egilman be limited in his requests solely to those documents originally produced in the Kentucky litigation. After several additional rounds of correspondence, and the appearance of counsel on Dr. Egilman's behalf, this Court entered an Order on April 10, 2014, requiring Merck to "respond to Dr. Egilman's October 29, 2013 request for documents within five (5) days," noting that this request involved 450 documents, and to respond to his "new requests" within ten days, pursuant to the protective order.[4] *See* April 10, 2014, Order at 1.

---

[4]  On April 9, 2014, counsel for Dr. Egilman submitted a single, shortened list for de-designation, in an attempt to meet some of the objections raised by Merck in its Motion for Extension of Time. This Court issued an Order the following day,

On April 17 and 21, 2014, Merck provided its "response" to Dr. Egilman's requests.  In those submissions, Merck blatantly disregarded the obligations this Court spelled out in its prior orders, deciding for itself that ignoring those obligations will "substantially simplify the task facing this Court."  See April 17, 2014, Letter from Susan Pope to Court at 1.  Most importantly, Merck did not, as the Court ordered and as the governing confidentiality order requires, provide a document-by-document response to Dr. Egilman's request for de-designation.  Instead, Merck unilaterally decided that it need not provide any basis for maintaining the confidentiality of any document that was originally produced in other Vioxx litigation, even if it was relied upon by Dr. Egilman in this underlying matter.[5]

## ARGUMENT

This Court's prior orders and the governing protective order support three propositions: (1) the scope of documents that are subject to challenge by Dr. Egilman include, at the very least, those documents that formed the basis of his opinion in the Kentucky litigation; (2) as to those documents, Merck was obliged to either provide a basis for maintaining their confidentiality under Kentucky law or

---

making clear that the relevant lists of documents for de-designation included all of the documents identified by Dr. Egilman, not just the shortened list.  Merck's response also takes this as a given, because it purports to provide a response to all of the documents identified, not simply the shortened list submitted by counsel on April 9.

[5] Nor did Merck provide a copy of the protective orders allegedly in force in other jurisdictions, although this failure pales in comparison to the principal way in which Merck has not complied with this Court's March 10 and April 10 Orders.

concede that they are not confidential; and (3) Merck's failure to respond to an identifiable request for de-designation would result in a waiver of any claim to confidentiality. Given these basic propositions, Dr. Egilman respectfully requests that any identifiable document for which Merck has failed to provide a basis for confidentiality be declared presumptively public and unprotected by the governing confidentiality order.

Merck's April 17 and 21, 2014, submissions make no argument that the documents identified by Dr. Egilman fall outside the universe this Court found relevant, namely those documents that Dr. Egilman "reviewed in preparation for his deposition and may have formed the bases of the opinions he was expressing." Tr. 44-45. As Merck is aware, in response to its own deposition subpoena, Dr. Egilman brought to his deposition all of the documents that he possessed and that formed the basis of his expert opinion. *See* Tr. 44; *see also* Merck Re-Notice of Videotaped Deposition of David Egilman, M.D., May 15, 2013 (attached hereto as Exhibit B), at Ex. A ¶ 9, (demanding "*[a]ll documents* evidencing, relating or pertaining to facts or data (including scientific literature or treatises) considered by the witness in forming his opinions in this matter brought by the Kentucky Attorney General, including any prepared lists of such materials") (emphasis added); *id.* ¶ 13 (demanding "[a]ll documents evidencing, relating or pertaining to assumptions that counsel provided and that the Witness relied on in forming his opinions"). Merck marked many of these documents as exhibits to Dr. Egilman's deposition. Dr. Egilman brought additional boxes of reliance materials to his

deposition which Merck chose not to mark.  In addition, in response to questions Merck put to him at his deposition relating to the scope of materials Dr. Egilman relied on, he referenced the MDL computer data base three times. (*See* Letter From Dr. Egilman to the Court April 3, 2014 (identifying deposition excerpts).  The requests for de-designation made by Dr. Egilman are encompassed by the universe of documents Dr. Egilman produced at his deposition, in compliance with Merck's deposition subpoena.  All of the documents in Dr. Egilman's requests were produced, marked,  identified, or referenced at his Kentucky deposition and therefore fall within the universe of documents this Court found relevant and "fair game" for Movant's requests for de-designation."

For the reasons explained above, the Court also determined that if a de-designation request falls within this universe of documents, Merck must respond and specify on a document-by-document basis its reasons for categorizing any document confidential.  *See* Standing Order at 2; April 10, 2014, Order at 1. Based on its April 17, 2104 letter to the Court it is clear that Merck never intended to respond to any requests beyond the scope of its unilateral interpretation of the "applicability" of the Court's order.[6]  Merck's claim that its interpretation of the

---

[6] It also appears that Merck reflexively designated many documents as confidential under the governing protective order without initially even considering in good-faith whether such a designation was appropriate.  This is evident when one considers that Merck originally designated many documents as confidential under Kentucky's protective order, only to change that designation when challenged by Dr. Egilman. It is self-evident that the contents of the challenged documents have not changed since Merck produced them in the Kentucky litigation.  Therefore, it appears that Merck only considered the validity of their confidentiality designation in response to

Court's order is based on a desire to "substantially simplify the task facing this Court" is disingenuous.  Merck has sought to delay these proceedings based on the premise of needing additional time to respond to Dr. Egilman's voluminous requests.  Ultimately, however, Merck's response is simply a transparent attempt to evade this Court's jurisdiction over the confidential status of documents that were relied upon and relevant to the litigation that took place in this Court.  After all if Merck only intended to respond to requests to de-designate "Kentucky" documents, there was no reason for Merck waste the Court's time arguing about the scope of production when in the end they never intended to comply with the Court's order unless it adopted Merck's arguments.  Merck's attempt to "simplify" matters in fact undermines the fundamental purpose of this Court's orders, which was to ensure that the Kentucky public has an opportunity to meaningfully exercise its right to understand, analyze, and evaluate this important litigation.

Merck's justification for its failure to comply with the Court's prior orders appears to be that, if the document was produced in another Vioxx case subject to protective order there, but also relied upon by Dr. Egilman in the Kentucky litigation, it has not been "produced" in Kentucky and therefore is not subject to this Court's protective order.  This is strange reasoning indeed.  First and foremost, it has already been raised by Merck and apparently rejected by this Court, as outlined above.  Second, Merck itself demanded the production of the subject documents when it issued such a broad subpoena to Dr. Egilman for his Kentucky deposition.

---

Dr. Egilman's request and not when they originally designated them confidential, as required by the governing protective order.

Indeed, as the Attorney General for Kentucky has confirmed, the common discovery available in the MDL proceeding was "part of our case." Tr. 36. Third, the protective order in this case specifically contemplates that material may be designated as confidential both under this Court's protective order and protective orders in other Vioxx litigation. *See* Agreed Protective Order Regarding Confidential Information (entered Feb. 20, 2013) ¶ 23. Relatedly, Merck's reasoning appears to rest on a misreading of the words "produced or disclosed during this action". *See id.* ¶ 1. Under Merck's reading, that language only refers to information *originally* produced or disclosed in the Kentucky litigation. But had that language been intended, it would have been used and Paragraph 23 would have been surplusage.[7]

It is important to remember that Merck took advantage of the MDL procedures to obtain the protection of coordination before one federal court for the vast bulk of claims made against it, which for some time included the claims made here on behalf of the Commonwealth of Kentucky. But the principal purpose of providing access to the MDL court is to facilitate the efficient management of discovery. *See, e.g., In re Zimmer NexGen Knee Implant Products Liability Litigation* 890 F. Supp. 2d 896, 904 (N.D.Ill.,2012); *see also* 28 U.S.C. § 1407(a) (authorizing MDL litigation "for the convenience of parties and witnesses" and to

---

[7]   The Order Clarifying Effect of Agreed Protective Order is not in conflict with this outcome. It simply provides that the Agreed Protective Order does not impose additional obligations on persons who have access to subject documents from "other sources." The Clarifying Order does not alter the fact that once a document is covered by the Agreed Protective Order, it may also be de-designated under the procedures contemplated by the Agreed Protective Order.

"promote the just and efficient conduct of such actions").   Merck is now attempting to take the procedural innovation offered by the MDL and use it to deprive Kentucky citizens of their substantive right to review and evaluate the conduct of the important litigation that was filed and resolved in this Court.  This is inconsistent with the purpose of the MDL proceeding.

Moreover, Merck's argument turns the premise underlying protective orders on its head.  By definition, a document that has been produced in discovery is considered non-confidential, unless a protective order in that jurisdiction prohibits its disclosure.  This is why every protective order includes a provision that denies protection to material that becomes publicly available through other means, including by de-designation in another jurisdiction.  *See* Agreed Protective Order Regarding Confidential Information (entered Feb. 20, 2013) ¶ 23.  It is not, as Merck would have it, that a document retains protection until its designation has been successfully challenged in every jurisdiction in which it has been produced confidentially; rather, it is that a document loses its protection once any jurisdiction has declared it to be unprotected, making it presumptively public.  This language is included in protective orders for many reasons, not the least of which that it is constitutionally required.  *See Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33-34 (1984) (observing that protective orders are permissible, so long as the order leaves a party free to "disseminate the identical information covered by the protective order as long as the information is gained through means independent of the court's processes.").  This observation is perfectly consistent with this Court's recognition

that it may not declare a particular document to be unprotected under another protective order; as a practical matter, however, if a particular document is publicly available in Kentucky, it cannot be prohibited from disclosure elsewhere.

Finally, Merck's assertion that the confidentiality of documents produced in other litigation may be addressed only in those jurisdictions obscures some fundamental truths.  First, Merck has argued vociferously in other jurisdictions, including the Vioxx MDL, that Dr. Egilman lacks standing to challenge the confidentiality of documents produced there.  It is doubtful that Merck intends to retreat from this position.  Moreover, as for many of the other jurisdictions in which Merck claims it has produced documents that remain subject to confidentiality orders, Merck is aware that there are no proceedings pending in New Jersey, Guerra, and Plubell, making it quite unlikely that anyone will be able to successfully challenge Merck's designations.  Indeed, Dr. Egilman had no involvement in the Guerra case and never signed a confidentiality order in that case.  Under these circumstances, the Kentucky protective order is the only order that governs the "confidential status" of the documents produced in that case and relied upon by Dr. Egilman in Kentucky. In truth, Merck's goal is to prevent these documents from ever seeing the light of day, and "simplify[ing]" this Court's burdens is Merck-speak to avoid having to justify *in any court* the confidentiality of the subject documents.

In this vein, it is instructive to note that even as to those documents that Merck claims remain confidential under *other* protective orders, they appear to have

14

some difficulty keeping their facts straight.  For instance, Merck's April 17 and April 21, 2014 submissions continue to maintain that the MERCK-ZAA documents are confidential under the protective order entered in the New Jersey Vioxx MDL. *See* Merck Response to Dr. Egilman October 29, 2013 De-Designation Request, attached hereto as Exhibit C, at 1-2, 63-64 (designating New Jersey ZAA files as confidential); Merck Response to Dr. Egilman March 10, 2014 De-Designation Request, attached hereto as Exhibit D (designating 55 pages of ZAA files as confidential pursuant to New Jersey protective order); Merck Response to Dr. Egilman April 3, 2014 De-Designation Request, attached hereto as Exhibit E, at 1-2, 4, 6, 84 (designating New Jersey ZAA files as confidential); Merck Response to Dr. Egilman April 9, 2014 De-Designation Request, attached hereto as Exhibit F, at 1-3 (designating New Jersey ZAA files as confidential).  Yet, as we indicated to the Court in prior correspondence, more than seven years ago those same documents were found to be unprotected for the purpose of "analysis, tabulation, and/or summary" by Dr. Richard Kronmal.  *See* Exhibit A to April 9, 2014, Letter from Ann Oldfather to Court.

More problematically, Merck now asserts that some documents are confidential even though it told Dr. Egilman in separate correspondence through counsel that those same documents were not confidential.  Specifically, on April 3, 2012, Merck's counsel reviewed a list of documents submitted by Dr. Egilman and indicated that many of them were ***not*** considered confidential by Merck.  *See* Email correspondence from R.J. Cinquegrana to David Egilman dated April 3, 2012,

attached hereto as Exhibit G.   Of those non-confidential documents, at least seven

of them are claimed to be confidential by Merck in its April 17 and 20 submissions.

*Compare id.* (declaring following documents confidential: MRK-01420115559;

MRK-AAA0007702; MRK-AAD0048884; MRK-ABY0002041; MRK-ACV0020639;

MRK-AJA0092876; MRK-NJ0347581) *with* Merck Response to Dr. Egilman April 3,

2014 De-Designation Request at 12, 16, 20, 29, 32, 43, 60, attached as Ex. E

(declaring identical documents to be confidential).   Along the same lines, at oral

argument Merck told the Court that the Informed Consent form used in the

Advantage clinical trial was confidential.   *See* Tr. 25-26 (Mr. Barnett explaining

that Merck did not attach informed consent form to its hearing brief because "that

form is designated confidential").   However in April 2007 Merck counsel sent Dr.

Egilman an email that specifically de-designated this document. *See* Email from

Ted Mayer to David Egilman, April 9, 2007, at 3, attached hereto as Ex. H. Merck's

continued misrepresentation of the confidential status of several documents to this

Court amplifies the need for this Court to hold Merck accountable for its failure to

provide any basis under Kentucky law for maintaining the confidentiality of the

documents identified by Dr. Egilman.[8]

---

[8] Even as to the designations Merck has made in the charts responding to Dr.
Egilman, there are several inconsistencies.  For instance, there are at least two sets
of documents that Merck claims in one spreadsheet as confidential and in another
spreadsheet as not confidential.  *Compare* Merck Response to Dr. Egilman April 9,
2014 De-Designation Request, attached hereto as Exhibit F, at 4 (designating as
confidential MRK-NJ0089972 - MRK-NJ0090021) *with* Merck Response to Dr.
Egilman October 29, 2013 De-Designation Request, attached hereto as Exhibit C, at
45 (designating same documents as not confidential); *compare* Merck Response to
Dr. Egilman October 29, 2013 De-Designation Request, attached hereto as Exhibit

Merck's goal is to prevent anyone from challenging its confidentiality claims and any court from adjudicating the confidentiality of the subject documents. This is evident from its actions. After Merck failed in its "standing" argument here, it charged Dr. Egilman with contempt in the MDL. Merck claims that Dr. Egilman violated the MDL's protective order when, in discussing the Kentucky proceedings with the Wall Street Journal, Dr. Egilman made background comments that were even less detailed than the opinions disclosed in Dr. Egilman's publicly-available expert reports. Merck's decision to bring its contempt action in the MDL rather than in this Court, when Dr. Egilman's comments pertained to these proceedings, is telling.

Accordingly, to the extent that Merck has identified a basis for its objections to disclosing the material sought to be de-designated by Dr. Egilman (i.e., eleven documents), we will work to resolve any differences of opinion with Merck, as the protective order contemplates. But, as to all other documents, since Merck has failed to provide any basis for designating material confidential, whether originally produced in Kentucky or elsewhere, we respectfully request that this Court find that such material is not confidential and is presumptively public information that Dr. Egilman is free to use or disclose. Moreover, we respectfully request that the Court order Merck to file the subject documents in an accessible electronic format

---

C, at 45 (designating as confidential MRK-NJ0120240 - MRK-NJ0120245) *with* Merck Response to Dr. Egilman April 9, 2014 De-Designation Request, attached hereto as Exhibit F, at 4 (designating same documents as not confidential)

with the Court, thus ensuring the full public access that underlies the Court's orders in this matter.

Finally, given Merck's conduct in this litigation, we respectfully request that it be sanctioned for its refusal to comply with this Court's orders.   A court has "nearly unlimited discretion" to exercise its contempt power. *Meyers v. Petrie*, 233 S.W. 3d 212, 215 (Ky. App. 2007).  Movant submits that a finding of civil contempt is appropriate here, given Merck's blatant noncompliance.  To establish civil contempt, Movant need only demonstrate by clear and convincing evidence that Merck violated a valid court order. *See Commonwealth, Cabinet for Health and Family Services v. Ivy*, 353 S.W. 3d 324, 332 (Ky. 2011).  Based on the foregoing, Movant has easily met this burden.  Merck was ordered to provide a document-by-document response to Dr. Egilman's requests for de-designation, including offering reasons that a document should remain confidential under the governing protective order.  Merck failed to do so, substituting its judgment for this Court's, even after Merck's arguments for limiting the scope of Dr. Egilman's requests had been explicitly rejected.

Indeed, in this situation, Movant respectfully submits that a finding of criminal contempt, justifying a punitive sanction rather than a remedial order, is also appropriate.  When a party "has shown disrespect for the court's procedures or has obstructed the administration of justice," a finding of criminal contempt is warranted.  *Meyers*, 233 S.W. 3d at 215.  Typically, a finding of criminal contempt requires ample due process protections, including finding beyond a reasonable

doubt that the conduct demonstrated "willful disobedience toward, or open disrespect for, the rules or orders of a court." *Commonwealth v. Burge*, 947 S.W. 2d 805, 808 (Ky. 1996). But when so-called "direct" contempt occurs in the Court's presence, there is no need for fact-finding or a hearing because "all the elements of the offense are matters within the personal knowledge of the court." *Commonwealth v. Burge*, 947 S.W. 2d 805, 808 (Ky. 1996) (citations omitted). Importantly, a finding of malice or disrespect is unnecessary in order to find criminal contempt. *Poindexter v. Commonwealth*, 389 S.W. 3d 112, 118 (Ky. 2012). Movant submits that a finding of criminal or civil contempt is appropriate here because all of the relevant conduct – Merck's failed arguments to limit the universe of documents subject to de-designation and its conscious decision to ignore this Court's direction and substitute its own judgment as to what would "simplify" matters – occurred in the Court's presence, either at the March 5 hearing or in Merck's written submissions to this Court. Moreover, the conduct was in direct violation of this Court's orders and operated to delay these proceedings unnecessarily. Under these circumstances, Movant respectfully requests that this Court find that Merck's behavior is sanctionable as either civil or criminal contempt of court. We defer to the Court as to an appropriate sanction, but we note that Merck has delayed these proceedings for several months for no apparent purpose.

Respectfully submitted,

/s/ Ann B. Oldfather
Ann B. Oldfather
Megan J. Hastings
OLDFATHER LAW FIRM
1330 South Third Street
Louisville, Kentucky  40208
(502) 637-7200
aoldfather@oldfather.com
mhastings@oldfather.com
cms@oldfather.com
mlc@oldfather.com
*Co- Counsel for Movant David Egilman,*
*M.D., M.P.H.*

*and*

Alexander A. Reinert (NY 3046331)
c/o Benjamin N. Cardozo School of Law
55 Fifth Avenue, Room 938
New York, NY 10003
(212) 790-0403
areinert@yu.edu
*Co- Counsel for Movant David Egilman,*
*M.D., M.P.H.*

## <u>CERTIFICATE OF SERVICE</u>

The above signature certifies that a true and correct copy hereof was served via e-mail as designated below on **April 28, 2014**, to:

Scott A. Powell
Don McKenna
Matthew C. Minner
Brian Vines
Hare, Wynn, Newell and Newton, LLP
2025 Third Avenue North; Suite 800
Birmingham, AL 35203
scott@hwnn.com
matt@hwnn.com

Todd Leatherman
Maryellen B. Mynear
Elizabeth Ungar Natter
Office of Consumer Protection
Office of the Attorney General
1024 Capital Center Drive; Suite 200
Frankfort, KY 40601
liz.natter@ag.ky.gov

William R. Garmer
Jay Prather
Garmer & Prather, PLLC
Opera House Building
141 North Broadway
Lexington, KY 40504
BGarmer@garmerprather.com

John H. Beisner
Skadden, Arps, Slate Meager & Flom, LLP
1440 New York Avenue Northwest
Washington, DC 20005-2111
John.Beisner@skadden.com

Tarek Ismail
Goldman Ismail Tomaselli Brennan & Baum, LLP
564 West Randolph Street, Suite 400
Chicago, IL 60661
TIsmail@goldmanismail.com

Richard L. Josephson
Baker Botts, LLP
One Shell Plaza
910 Louisiana Street
Houston, TX 77002-4995
richard.josephson@bakerbotts.com

Susan J. Pope
Frost Brown Todd, LLC
250 West Main Street; Suite 2800
Lexington, KY 40507-1749
spope@fbtlaw.com

Ms. Julia Taylor
Chambers of Hon. Phillip J. Shepherd
Franklin Circuit Court
222 St. Clair Street
Frankfort, Kentucky 40601
juliataylor@kycourts.net

FRANKLIN CIRCUIT COURT
DIVISION I
CASE NUMBER 09-CI-01671

COMMONWEALTH OF KENTUCKY                                    PLAINTIFF

and

DAVID EGILMAN, M.D., M.P.H.                                    MOVANT

vs.                              **<u>ORDER</u>**

MERCK & CO., INC.                                          DEFENDANT

* * * * * * * *

This matter having come before the Court on Movant's Motion to Declare Documents Non-Confidential Due to Merck's Non-Compliance With Court's Order, the parties having been heard and the Court being sufficiently advised,

IT IS HEREBY ORDERED that all documents listed in Merck's four spreadsheets, attached as Exhibits C (67 pages), D (55) pages, E (87 pages), and F (6 pages), shall be declared public and open to disclosure.  Merck shall file the documents with the Court in an accessible electronic form with the objective data and OCR versions as they appear in the Merck document data base to enhance the public's access to them. This Order does not include the eleven (11) documents for which Merck did provide the basis for a claim of confidentiality, and which are subject to further orders of the Court, specifically:

| | |
|---|---|
| 1 | MRK-KYAAK0000433 - MRK-KYAAK0001013 |
| 2 | MRK-KYAAK0001295 - MRK-KYAAK0001838 |
| 3 | MRK-KYAAK0001839 - MRK-KYAAK0002458 |
| 4 | MRK-KYAAK0002807 - MRK-KYAAK0003169 |

| 5  | MRK-KYAAK0003170 - MRK-KYAAK0003633 |
|----|--------------------------------------|
| 6  | MRK-KYAAK0005545 - MRK-KYAAK0006145 |
| 7  | MRK-KYAAK0014536 - MRK-KYAAK0014928 |
| 8  | MRK-KYAAK0019614 - MRK-KYAAK0020103 |
| 9  | MRK-KYAAK0024589 - MRK-KYAAK0024800 |
| 10 | MRK-KYAAK0024854 - MRK-KYAAK0024955 |
| 11 | MRK-KYAAK0028455 - MRK-KYAAK0028918 |

IT IS FURTHER ORDERED that the Court shall set a hearing on

_____ in order to establish the appropriate

sanction due to Merck's continued refusal to comply with this Court's orders.

SO ORDERED this _____ day of May, 2014.


_____
PHILLIP J. SHEPHERD, JUDGE
Franklin Circuit Court, Division 1


DISTRIBUTION:


Scott A. Powell
Don McKenna
Matthew C. Minner
Brian Vines
Hare, Wynn, Newell and Newton, LLP
2025 Third Avenue North; Suite 800
Birmingham, AL 35203

Todd Leatherman
Maryellen B. Mynear
Elizabeth Ungar Natter
Office of Consumer Protection
Office of the Attorney General
1024 Capital Center Drive; Suite 200
Frankfort, KY 40601


William R. Garmer
Jay Prather
Garmer & Prather, PLLC
Opera House Building
141 North Broadway
Lexington, KY 40504

John H. Beisner
Skadden, Arps, Slate Meager & Flom, LLP
1440 New York Avenue Northwest
Washington, DC 20005-2111


23

Tarek Ismail
Goldman Ismail Tomaselli Brennan &
Baum, LLP
564 West Randolph Street, Suite 400
Chicago, IL 60661

Richard L. Josephson
Baker Botts, LLP
One Shell Plaza
910 Louisiana Street
Houston, TX 77002-4995

Susan J. Pope
Frost Brown Todd, LLC
250 West Main Street; Suite 2800
Lexington, KY 40507-1749

Ann B. Oldfather
Megan J. Hastings
OLDFATHER LAW FIRM
1330 South Third Street
Louisville, Kentucky  40208
(502) 637-7200

Alexander A. Reinert (NY 3046331)
c/o Benjamin N. Cardozo School of Law
55 Fifth Avenue, Room 938
New York, NY 10003
(212) 790-0403