# EXHIBIT 17

COMMONWEALTH OF KENTUCKY
FRANKLIN CIRCUIT COURT
DIVISION I
CIVIL ACTION NO. 09-CI-1671

COMMONWEALTH OF KENTUCKY, EX REL.
JACK CONWAY, ATTORNEY GENERAL, and
DAVID EGILMAN                                                    PLAINTIFF,

      v.

MERCK & CO., INC.,
n/k/a MERCK SHARP & DOHME CORP.

                                              DEFENDANT.

## MERCK'S OPPOSITION TO DR. EGILMAN'S MOTION TO DECLARE DOCUMENTS NON-CONFIDENTIAL

Dr. David Egilman's motion to declare documents non-confidential and impose an "appropriate sanction" on Merck is based on a fundamental misreading of the protective order and the recent orders this Court has entered in connection with this dispute. Dr. Egilman contends that Merck violated the Court's orders by choosing not to rebut his assertion that certain documents should be de-designated as confidential under this Court's protective order. But the Court's orders do not place any affirmative obligation on Merck to resist de-designation. Instead, they simply provide that confidential designations are removed unless the parties reach an agreement or a motion is filed to uphold the confidential designation. Merck decided not to file a motion to uphold confidential designations in this Court for any documents that are also covered under protective orders issued by other federal and state courts because it does not benefit anyone – Merck, Dr. Egilman or the Court – to litigate matters here that would still need to be litigated again elsewhere.

Dr. Egilman's suggestion that Merck's decision not to file a motion over these documents somehow makes them "public" fails to understand that this Court's order added an additional

layer of protection to documents that were produced in other proceedings; it did not supplant the independent protective power of the federal multidistrict litigation ("MDL") or other applicable orders. Thus, while Merck has chosen not to move to preserve protection in this Court, the documents at issue are still subject to the protective orders in the MDL and other courts and are not "public" by any means.

Finally, Dr. Egilman's half-hearted request for civil and criminal contempt sanctions is frivolous. Dr. Egilman cannot possibly show that Merck violated an order of the Court, let alone make that showing by clear and convincing evidence or beyond a reasonable doubt. In any event, the law makes clear that Merck would be entitled to the full panoply of due-process protections before such an order could be entered.

For all of these reasons, Dr. Egilman's motion should be denied.

## BACKGROUND

On February 20, 2013, the Court issued a protective order (the "Kentucky Protective Order") to "facilitate a timely and efficient discovery process" in this case while addressing the confidentiality concerns of all parties. (Ky. Protective Order (attached as Ex. 1).) The Protective Order "govern[s] all information produced or disclosed during this Action" in "document[s], deposition[s], other testimony, discovery response[s] or otherwise, by any party in this Action . . . to any other party or parties[.]" (*Id.* ¶ 1.) Under this order, "[a] party . . . may designate as Confidential Information any document or information produced by or testimony given by any other person or entity that the party reasonably believes qualifies as such party's Confidential Information[.]" (*Id.* ¶ 9.) The Kentucky Protective Order provides a mechanism for de-designating confidential information and raising challenges to de-designation of such information. (*Id.* ¶ 22.) "If the Objecting Party and the Supplying Party are . . . unable to agree

2

upon the terms and conditions of disclosure for the material[] . . . the document will have its designation removed unless within thirty . . . days after written notice that the parties' negotiations are ended, the Supplying Party moves the Court for an order upholding the designation." (*Id.*)

The Kentucky Protective Order is not the only protective order governing confidential Vioxx documents. Years prior to its adoption, on May 24, 2005, Judge Eldon Fallon issued a virtually identical protective order in the federal Vioxx MDL proceeding. (*See* PTO 13 ("MDL Protective Order") (attached as Ex. 2).) The MDL Protective Order "govern[s] all documents, the information contained therein, and all other information produced or disclosed during th[e] [MDL] Action whether revealed in a document, deposition, other testimony, discovery response or otherwise, by any party in this Action[.]" (*Id.* ¶ 1.) Under the MDL Protective Order, "[a] party . . . may designate as Confidential Information any document or information produced by or testimony given by any other person or entity that the party reasonably believes qualifies as such party's Confidential Information pursuant to th[e] Protective Order." (*Id.* ¶ 9.) The MDL order continues to protect documents even if they are used in other litigation as well. (*See id.* ¶ 10(f).) Like the Kentucky Protective Order, the MDL Protective Order provides a process for seeking de-designation of confidential information and mounting challenges to de-designation in that court. (*See id.* ¶ 22.)[1]

On October 29, 2013, long after the parties had settled this case, Dr. Egilman requested de-designation of thousands of confidential documents pursuant to the Kentucky Protective Order. During the ensuing months, Dr. Egilman sought de-designation of an ever-shifting range of documents, many of which Dr. Egilman has refused to identify with specificity – i.e., by Bates

---

[1] There are other protective orders implicated as well. Specifically, Dr. Egilman challenges documents that are covered under protective orders in the New Jersey coordinated proceedings, the *Plubell* case in Missouri, the Vioxx securities litigation, and in other individual cases.

numbers. Many of the documents for which Dr. Egilman seeks de-designation were originally produced in the MDL proceeding and are thus subject to the MDL Protective Order. Indeed, the vast majority of these documents were never formally produced in Kentucky, and Merck did not understand (or ever intend) them to be covered by the Kentucky Protective Order. Merck brought Dr. Egilman's efforts to the MDL court's attention, leading to a hearing before that court on February 28, 2014. At that hearing, Judge Fallon made clear that the MDL court would not interfere with Dr. Egilman's efforts in Kentucky, but any information designated as confidential in the MDL proceeding cannot be disclosed unless and until Judge Fallon determines that such information is not confidential. (Hr'g Tr. ("MDL Hr'g Tr.") 18:3-20:10, Feb. 28, 2014 (attached as Ex. 3).)

On March 5, this Court held a hearing to address Dr. Egilman's requests and echoed Judge Fallon in recognizing that any confidentiality ruling in Kentucky cannot "supersede any other court's orders that may be in effect." (Hr'g Tr. ("Mar. 5 Tr.") 43:6-13, Mar. 5, 2014 (attached as Ex. 4).) Shortly after conducting that hearing, the Court issued an order stating, *inter alia*: "If the parties are unable to agree on the terms and conditions for designation, then the document will have its designation removed, unless Merck, within 30 days (by April 9, 2014), moves the Court for an order upholding the designation. If Merck files such a motion, it shall have the burden of proving that the material is subject to protection under CR 26.03(g)." (Order ¶ 2, Mar. 10, 2014 ("Mar. 10 Order") (attached as Ex. 5).) Given the lack of clarity surrounding the documents implicated by Dr. Egilman's requests, Merck requested and was granted more time to respond to Dr. Egilman's challenges after it advised the Court that it could not ascertain the documents Dr. Egilman had targeted. (*See* Order, Mar. 20, 2014 (attached as Ex. 6).) After several additional rounds of correspondence, in which Dr. Egilman failed to

4

clarify the scope of his requests, the Court issued another order on April 10, 2014, asking Merck

to "respond to Dr. Egilman's October 29, 2013 request for documents," as well as "new

requests" made by Dr. Egilman.  (Order, Apr. 10, 2014 (attached as Ex. 7).)

Merck complied with this order, which entailed a significant undertaking.  Dr. Egilman's

requests for de-designation had swollen to encompass approximately 12,000 documents

(including duplicates).  This number is far greater than the 400 to 450 documents that Dr.

Egilman asserted were in play at the March 5 hearing (Mar. 5 Tr. 11:1-8), or the 196 documents

that Dr. Egilman's counsel largely identified by Bates number in her letter to the Court dated

April 9, 2014.[2]  And Dr. Egilman's continued refusal to identify documents by Bates number

(beyond those set forth in his counsel's April 9 letter) meant that Merck's counsel had to piece

together the list of implicated documents on their own, requiring a significant investment of time

and effort.

On April 17, Merck sent a letter to the Court explaining that it "does not plan to file a

motion seeking to defend the confidentiality designation of any documents sought by Dr.

Egilman that were only produced in other proceedings." (Letter from S. Pope to Hon. Phillip

Shepherd, Apr. 17, 2014 (attached as Ex. 8).)  Merck also reiterated that it had previously

indicated, on a document-by-document basis, the confidential status of the few documents

identified in Dr. Egilman's requests that had been produced or disclosed in the Kentucky action.

(*Id.*)  At the same time, Merck sent Dr. Egilman a chart consisting of more than 2,500 documents

implicated by his first request.  In the cover letter, Merck noted the difficulties in compiling the

chart as a result of Dr. Egilman's refusal to identify documents by Bates number.  It also referred

to Merck's plan not to address many of Dr. Egilman's challenges in light of the fact that "[m]any

---

[2]      The April 9, 2014 letter appeared to reflect an effort by Dr. Egilman to narrow the issues, but it was
promptly rescinded upon issuance of the Court's April 10 order.

of these documents were designated as, and remain, confidential under other protective orders issued by other courts." (Letter from S. Pope to A. Oldfather, Apr. 17, 2014 (attached as Ex. 9).) Four days later and pursuant to the Court's order, Merck sent Dr. Egilman four additional charts, each addressing a separate request from Dr. Egilman in March 2014 for the de-designation of documents. All told, these latter four requests sought the de-designation of another approximately 9,400 documents. (*See* Letter from S. Pope to A. Oldfather, Apr. 21, 2014 (attached as Ex. 10).)

On March 26, Ed Silverman of the *Wall Street Journal* posted an article on the newspaper's website featuring direct quotes from Dr. Egilman purporting to describe confidential Vioxx documents. *See* Ed Silverman, More Disclosure Coming in Merck's Decade-Long Vioxx Nightmare, Mar. 26, 2014, http://blogs.wsj.com/corporate-intelligence/2014/03/26/more-disclosure-coming-in-mercks-decade-long-vioxx-nightmare (attached as Ex. 11). Upon learning of the article, Merck filed a motion for sanctions against Dr. Egilman in the MDL court. (*See* Mot. for Sanctions Against Dr. David Egilman, MDL ECF No. 64,894, Apr. 4, 2014 (attached as Ex. 12).) That motion is still pending.

Shortly after Merck filed its motion for sanctions in federal court, Dr. Egilman filed the subject motion, seeking sanctions from this Court.

## ARGUMENT

Dr. Egilman's motion should be denied for two fundamental reasons. ***First***, there is no truth to Dr. Egilman's assertion that Merck "fail[ed] to comply with the Court's prior orders." (Mot. at 11.) To the contrary, Merck fully complied with the Court's orders, including the Kentucky Protective Order in force in this case, by ultimately deciding not to challenge de-designation under the Kentucky Protective Order. The effect of Merck's decision not to move is

simply that those documents lose whatever protection they might have enjoyed under the Kentucky Protective Order.  They do not become de-designated as confidential under other courts' protective orders, as this Court and the MDL court have already expressly stated. ***Second***, there is no basis in law for finding Merck in contempt of court – either civilly or criminally – because Dr. Egilman has not established entitlement to these severe sanctions under well-established Kentucky law.

## I.        MERCK COMPLIED WITH THE COURT'S PRIOR ORDERS.

Dr. Egilman contends that Merck has denied this Court's jurisdiction to decide confidentiality issues because none of the documents at issue was produced here.  (*See, e.g.,* Mot. at 3.)  That is a complete misunderstanding of Merck's position.[3]  Merck readily agrees that any document covered by the Kentucky Protective Order will lose its protection ***under that order*** unless the parties agree otherwise or Merck makes a motion.  (*See* Mar. 10 Order ¶ 2; Ky. Protective Order ¶ 22.)  Merck has simply determined that it would not be efficient to defend its confidentiality designations before this Court because even if they are de-designated in Kentucky, they will still retain their confidential status in the MDL proceeding.

Dr. Egilman's suggestion that Merck has acted inappropriately in "unilaterally" deciding not to move to defend its confidentiality designations and by seeking extra time in an initial attempt to engage Dr. Egilman in his requests (Mot. at 11) makes no sense.  By design, this Court's orders leave it to Merck to decide whether to litigate the confidentiality designations of

---

[3]        Merck preserves its position that a number of the documents at issue were never produced in Kentucky and therefore are not covered by the Kentucky Protective Order.  To take one example, Dr. Egilman came to his deposition with thousands of documents that were never used during the deposition but were marked as two exhibits after its conclusion.  These exhibits were marked solely for identification purposes and consisted of two large file folders and twelve binders totaling 7,287 pages and a series of file folders totaling 3,013 pages.  (*See* Egilman Dep. 302, 308-09, May 24, 2013 (attached as Ex. 13).)  The vast majority of these documents were never produced in this litigation; nor is there any plausible basis to conclude that Dr. Egilman relied on all of these documents in formulating his opinions in this matter.  Nevertheless, Merck's opposition to the motion does not turn on that issue.

documents once they are challenged under the Kentucky Protective Order – Dr. Egilman has no right to *force* Merck to move to sustain the designations.  Nor was Merck's request for more time to decide how to respond to Dr. Egilman's requests inappropriate.  Rather, in light of Dr. Egilman's steadfast refusals to clarify the scope of his requests, Merck needed the additional time to evaluate his challenge and decide how to respond.  During that period, the cost to Merck of simply identifying the documents subject to his challenge was enormous, suggesting that the costs of litigating each document would likewise be excessive.  This calculation weighed into Merck's decision – not lightly reached – to abandon the additional layer of protection afforded these documents under the Kentucky Protective Order.  So too did the fact that Dr. Egilman clearly intends to continue to litigate his position with respect to these designations, meaning that more litigation in other forums with respect to these documents is inevitable, regardless of what happens in this Court.[4]  In an attempt to reduce the costs inherent in such duplicative litigation, Merck simply decided to give up the duplicative protections of this Court's order.

Dr. Egilman also argues that the net result of this approach is that all documents must be stripped of their confidential status and be declared "presumptively public" notwithstanding the protections of any other court's protective order.  (Mot. at 3; *see also id.* at 13 (asserting that a "document loses its protection once *any* jurisdiction has declared it to be unprotected, making it presumptively public") (emphasis added).)  This argument is clearly wrong as well, as this Court and the MDL court have both recognized.  (*See, e.g.*, Mar. 5 Tr. 43:6-13 (any confidentiality ruling in Kentucky cannot "supersede any other court's orders that may be in effect").)

---

[4]      Notably, Merck did attempt to meet and confer with Dr. Egilman regarding eleven documents that were produced only in Kentucky, but no agreement was reached.  Dr. Egilman tersely stated that he was unable to agree with any of Merck's bases for confidentiality and immediately terminated negotiations.  This course of conduct strongly undermines the representation in his motion that he "will work to resolve any differences of opinion with Merck" with respect to documents for which Merck has identified a basis for its objections. (Mot. at 17.)  Rather, it appears that Dr. Egilman would oppose *any and every* designation by Merck.

Dr. Egilman suggests that this Court's earlier pronouncement was wrong because the federal Constitution "require[s]" that a document become "presumptively public" whenever "any jurisdiction has declared it to be unprotected." (Mot. at 13.)  But the sole authority on which Dr. Egilman relies – *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33-34 (1984) – is not on point. There, the Supreme Court upheld a protective order that barred the dissemination of information obtained during pre-trial discovery.  *See id.* at 34.  As part of its analysis, the Court noted that the protective order was sufficiently limited – i.e., it did not restrict the publication of information "gained through means ***independent*** of the court's processes."  *Id.* (emphasis added).  That reasoning clearly has no application here.  The information that Dr. Egilman seeks to make public was "gained through" the ***MDL court's processes*** (or those of other courts) – not some other mechanism.  *Id.*  And as Judge Fallon made clear earlier this year in rejecting the same argument advanced by Dr. Egilman now, any information designated as confidential in the MDL proceeding cannot be disclosed unless and until that court determines that such information is not confidential – ***regardless of what transpires in Kentucky***.  (MDL Hr'g Tr. 18:3-20:10); *see also Schlafly v. Caro-Kann Corp.*, No. 98-1005, 1998 U.S. App. LEXIS 8250, at *9-10 (Fed. Cir. Apr. 29, 1998) (affirming denial of motion to compel production of "'every single piece of paper that's been produced in four other litigations plus an arbitration, many of which – in fact, all of which have protective orders in those cases, issued by other courts and judges'") (citation omitted).  Thus, Dr. Egilman is wrong to argue that the Constitution requires the Court to conclude that de-designation under the Kentucky Protective Order makes a de-designated document "presumptively public."

In truth, it is Dr. Egilman's position that is constitutionally problematic.  A central purpose of the MDL regime is to coordinate discovery in complex proceedings.  But if Dr.

9

Egilman's position were correct, state courts presiding over parallel litigation could issue discovery rulings on confidentiality that would automatically trump an MDL court's own authority to decide the issue as to the same documents. Such an approach would subvert the efficiencies of the MDL process and impermissibly "interfere with [an MDL] court's orderly handling of . . . massive federal litigation," in violation of the Supremacy Clause. *Newby v. Enron Corp.*, 338 F.3d 467, 474 (5th Cir. 2003) (affirming stay of discovery in state court by federal MDL court pursuant to the All Writs Act).

Dr. Egilman finally contends that the prospect of resolution in the MDL is illusory because he lacks standing to challenge Merck's confidentiality arguments in the MDL court. (Mot. at 14.) But whatever barriers Dr. Egilman foresees in the MDL proceeding will remain whether he litigates the confidentiality of documents in this Court or not. As already explained, a confidentiality ruling issued in this Court will have no bearing on the confidential status of documents under the MDL Protective Order. Therefore, whatever the outcome of any confidentiality dispute in this Court, Dr. Egilman will still have to attempt to take his case to Judge Fallon if he wishes to make the thousands of documents implicated by his requests public.[5]

---

[5]       Dr. Egilman also makes a number of other incorrect assertions about Merck's conduct. He argues, for example, that Merck's de-designation of certain documents amounts to a concession that the initial designations lacked a good-faith basis. (Mot. at 10 n.6.) Not so. As explained in Merck's cover letters of April 17 and 21, the designations were based on the presence in those documents of personal identifying information. While Merck continues to view such documents as confidential, Merck has de-designated the documents in accordance with the Court's April 10, 2014 Order and has communicated to Dr. Egilman Merck's expectation that he will redact or otherwise take the necessary steps to safeguard such information prior to publication. Dr. Egilman also contends that certain documents were previously deemed not confidential for purposes of tabulation by Dr. Kronmal. (Mot. at 15.) But the order in question, issued by Judge Higbee in New Jersey, did not deem those files non-confidential as to everyone and for all purposes. Rather, the order permitted Dr. Kronmal to disclose SAS files solely for purposes of peer review of a publication. Moreover, although Judge Higbee later ruled that the SAS files were no longer confidential, she vacated that Order on August 30, 2007. (*See* 1/13/06 & 8/30/07 Orders (attached as Ex. 14).) Finally, Dr. Egilman claims that Merck has intentionally designated documents confidential that it previously told Dr. Egilman were not confidential. (Mot. at 15-16.) This, too, is wrong. As to the Cinquegrana letter, it was Dr. Egilman who included the letter in a list of purportedly confidential documents; Merck simply misidentified it due to erroneous coding in its database. And as to the Mayer letters, Dr. Egilman is confusing two documents. Dr. Egilman never challenged the confidentiality of the informed consent form referenced in the e-mail he mentions in his motion. Instead, he challenged the confidentiality of an informed consent form produced in Kentucky, which is a different document.

10

Because Merck has honored and abided by the Court's prior orders and because Dr. Egilman is essentially asking this Court to abrogate a protective order issued by a federal judge, Dr. Egilman's motion should be denied.

## II.   THERE IS NO BASIS FOR IMPOSING SANCTIONS ON MERCK.

Presumably upset that Merck moved for sanctions against him in the Vioxx MDL proceeding, Dr. Egilman also tacks on a request for sanctions at the end of his brief. (*See* Mot. at 18-19.) Dr. Egilman's request for civil and criminal sanctions has no basis in law and should be rejected.

For starters, Dr. Egilman misconstrues the controlling legal principles. "Contempt sanctions are classified as either criminal or civil depending on whether they are meant to punish the contemnor's noncompliance with the court's order and to vindicate the court's authority and dignity, or are meant to benefit an adverse party either by coercing compliance with the order or by compensating for losses the noncompliance occasioned." *Commonwealth v. Ivy*, 353 S.W.3d 324, 332 (Ky. 2011). The former category of sanctions are criminal, while the latter are civil. *See id.*; *see also Ky. River Cmty. Care, Inc. v. Stallard*, 294 S.W.3d 29, 31-32 (Ky. Ct. App. 2008) ("The purpose of holding one in civil contempt is to compel some action. By contrast . . . '[i]f the court's purpose is to punish, the sanction is criminal contempt.'") (citations omitted). The burden of proof on a motion for either kind of sanction is high. In a civil contempt proceeding, the "burden is on the party seeking sanctions to show by ***clear and convincing*** evidence that the alleged contemnor has violated a valid court order." *Ivy*, 353 S.W.3d at 332 (emphasis added). Put another way, it is the movant's "burden to prove contempt, not [the other's] burden to disprove it." *Hayse v. Bd. of Trs. of Univ. of Ky.*, No. 2007-CA-000284-MR, 2008 Ky. App. Unpub. LEXIS 732, at *24 (Ky. Ct. App. Aug. 8, 2008) (affirming order denying motion for contempt sanctions). "[I]n the case of criminal contempt, all elements, including

11

willful disobedience, must be proven ***beyond a reasonable doubt***." *Buddenberg v. Buddenberg*,

304 S.W.3d 717, 722 (Ky. Ct. App. 2010) (emphasis added); *see also Laswell v. Laswell*, No.

2010-CA-002070-MR, 2012 Ky. App. Unpub. LEXIS 457, at *7 (Ky. Ct. App. July 6, 2012)

("criminal contempt cases require that all the elements be proven beyond a reasonable doubt").

Moreover, an individual facing criminal contempt sanctions is "entitled to the full panoply of

Constitutional rights," including those afforded by due process. *Burge v. Commonwealth*, No.

90-CA-002233-MR, 1992 Ky. App. LEXIS 65, at *10 n.6 (Ky. Ct. App. Mar. 27, 1992).[6]

Obviously, a finding of contempt – civil or criminal – is inappropriate absent a finding

that there has been a violation of a court order. *See Smith v. Miller*, 127 S.W.3d 644, 647 (Ky.

2004) ("Appellant did not violate Appellee's directive.  Accordingly, Appellee erred in finding

Appellant in contempt."); *Ritman v. Ritman*, No. 2009-CA-000361-MR, 2010 Ky. App. Unpub.

LEXIS 423, at *3-6 (Ky. Ct. App. May 21, 2010) (affirming order denying motion for contempt

sanctions because individual "'failed to sustain his burden that [Karen] is in willful disregard of

the Court's order'") (citation omitted); *Buddenberg*, 304 S.W.3d at 723 ("Without such evidence,

the trial court could not find beyond a reasonable doubt that Everett willfully violated the terms

of the [court order.]").  For all the reasons just explained, Merck has not violated a court order.

Accordingly, Dr. Egilman's request must be denied.

---

[6]    Dr. Egilman asserts that Merck is not entitled to basic due-process protections that ordinarily accompany criminal contempt proceedings because Merck's so-called violation of the Court's prior order was "direct" – i.e., it "occur[ed] in the Court's presence." (Mot. at 18-19.) However, the complained-of conduct – namely, failing to file a motion in this Court challenging de-designation of documents under the Kentucky Protective Order – is not the type of "direct" conduct encompassed by the rule Dr. Egilman invokes. Rather, as Kentucky caselaw makes clear, such conduct is not deemed to have taken place in "the presence of the court." *Ky. River*, 294 S.W.3d at 32 (failure to file certification of authority to settle case with court "occurred outside the presence of the court. Thus, the order was equivalent to a citation for ***indirect*** criminal contempt.") (emphasis added). Indeed, the one case Dr. Egilman cites for this claim also involved "indirect" criminal contempt – in particular, the intentional violation of domestic violence and restraining orders – and therefore does not support his argument. *See Commonwealth v. Burge*, 947 S.W.2d 805, 808 (Ky. 1996) (cited in Mot. at 18-19). Accordingly, Merck is entitled to the full "panoply" of due-process protections that attach to criminal contempt sanctions, including the right to a judicial hearing and the beyond-a-reasonable-doubt standard. *See Burge*, 947 S.W.2d at 808; *Ky. River*, 294 S.W.3d at 32 ("due process compelled that KRCC be entitled to a jury trial" on the question of whether it was guilty of criminal contempt).

The cases cited by Dr. Egilman do not change this result.  Each involved either "willful[]" "disobedience" of court orders, *see Meyers v. Petrie*, 233 S.W.3d 212, 215-16 (Ky. Ct. App. 2007) (cited in Mot. at 18) (individual committed civil and criminal contempt by "willfully" violating domestic violence order requiring counseling where he "defiantly" failed to show up for counseling); *Burge*, 947 S.W.2d at 808 (individuals in consolidated cases were guilty of criminal contempt where they violated domestic violence and restraining orders); *Poindexter v. Commonwealth*, 389 S.W.3d 112, 118 (Ky. 2012) (attorney was guilty of criminal contempt because he "intentionally—i.e., **willfully—disobeyed** this order" to appear on behalf of his client at an arraignment), or a scenario where a contempt finding was actually reversed, *see Ivy*, 353 S.W.3d at 341 (reversing finding of contempt in case involving parent's failure to pay child support).  Here, by contrast, Merck never violated or "disobeyed" any order issued by this Court.  As already explained, Merck has chosen to forgo its right to defend the confidential status of documents under the Kentucky Protective Order in this Court in order to avoid litigating contentious confidentiality disputes in multiple forums.  Merck's approach, which is expressly contemplated by the Court's orders, is perfectly lawful.  Accordingly, Dr. Egilman's request for civil and/or criminal sanctions is frivolous and should be denied.

## CONCLUSION

For the foregoing reasons, Merck respectfully requests that the Court deny Dr. Egilman's motion to declare documents non-confidential.

Respectfully submitted,

Susan J. Pope
Frost Brown Todd LLC
250 West Main Street, Suite 2800
Lexington, KY 40507-1749
Spope@fbtlaw.com

13

and

John H. Beisner
Skadden, Arps, Slate Meagher & Flom LLP
1440 New York Avenue, NW
Washington, DC  20005-2111
John.Beisner@skadden.com

and

Tarek Ismail
Goldman Ismail Tomaselli Brennan &Baum LLP
1 North Franklin Street, Suite 625
Chicago, IL 60606
TIsmail@goldmanismail.com

and

Benjamin R. Barnett
Dechert LLP
Circa Centre
2929 Arch Street
Philadelphia, PA 19104
Ben.Barnett@dechert.com

and

Richard L. Josephson
Baker Botts L.L.P.
910 Louisiana St.
Houston, TX 77002
Richard.Josephson@bakerbotts.com

*Counsel for Defendant Merck Sharp & Dohme
Corp., f/k/a Merck & Co., Inc.*

14

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was sent via e-mail on this the 12th day of May, 2014, to the following:

William R. Garmer
Garmer & Prather, LLC
141 N. Broadway
Lexington, KY 40507
BGarmer@garmerprather.com

Scott A Powell
Don McKenna
Matthew C. Minner
Brian M. Vines
Hare, Wynn, Newell and Newton
2025 Third Avenue North, Suite 800
Birmingham, AL 35203
don@hwnn.com
scott@hwnn.com
Matt@hwnn.com
bvines@hwnn.com

Robyn R. Bender
Office of Kentucky Attorney General
700 Capitol Ave., Suite 118
Frankfort, KY 40601
Robyn.Bender@ag.ky.gov

LeeAnne Applegate
Office of Kentucky Attorney General
1024 Capital Center Drive, Suite 200
Frankfort, KY 40601-8204
LeeAnne.Applegate@ag.ky.gov

Elizabeth U. Natter
Office of the Kentucky Attorney General
Office of Consumer Protection
1024 Capitol Center Drive
Frankfort, KY 40601
liz.natter@ag.ky.gov

Ann B. Oldfather
Megan J. Hastings
Oldfather Law Firm
1330 South Third St.
Louisville, KY 40208
aoldfather@oldfather.com
mhastings@oldfather.com

Alexander A. Reinert
c/o Benjamin N. Cardozo School of Law
55 Fifth Avenue, Room 938
New York, NY 10003
areinert@yu.edu


_____
*Counsel for Defendant Merck Sharp & Dohme*
*Corp., f/k/a Merck & Co., Inc.*

LEXLibrary 0106603.0570801  615447v1

3